UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                     )   Chapter 9
                                           )
CITY OF DETROIT, MICHIGAN,                 )   Case No. 13-53846
                                           )
                        Debtor.            )   Hon. Steven W. Rhodes
                                           )

**LOCAL 3308 AND LOCAL 917 OF THE AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES' OBJECTION AND BRIEF REGARDING THE CLASSIFICATION OF 36TH DISTRICT COURT IN THE CITY'S PROPOSED PLAN OF ADJUSTMENT**

Local 3308 of the American Federation of State County and Municipal Employees ("Local 3308") is the exclusive bargaining agent for most of the non-supervisory personnel of 36th District Court and Local 917 of the American Federation of State County and Municipal Employees ("Local 917") is the exclusive bargaining agent for the Bailiffs and Court Officers employed by 36th District Court, which through their Counsel, Robert D. Fetter of Miller Cohen P.L.C. submit their Objection regarding the Plan of Adjustment of Debts dated February 21, 2014 (Doc. 2708) (the "Plan") filed by the City of Detroit, Michigan (the "City" or "Debtor"). Specifically, Local 3308 and Local 917 (collectively "Local Creditors") object to the Plan's characterization of the funding structure of 36th District Court ("36th District").

I.  **SUMMARY OF OBJECTION**

There is no dispute that 36th District Court is part of the State government. Additionally, there is no dispute that it is the duty of the City to provide operational funding for 36th District. However, in its Plan and Disclosure, the City limits its analysis to its requirement to provide funding for 36th District and ignores constitutional safeguards and law that assure the 36th

District will continue functioning adequately when the City is unable to meet its responsibility. It also ignores the issue as to what entity—the City, the State, or both—could be obligated to provide funding for judgments against the Court. The nature of the City's funding obligation of judgments against the 36th District is one of indemnification to the State, not direct funding. Although the State may have issues with obtaining such indemnification from a bankrupt funding unit, it does not affect the judgment creditors of 36th District Court.

Pursuant to Public Act 236 of 1961, the Revised Judicature Act, MCL §§ 600.101 *et seq.* ("Judicature Act"), the City is responsible for maintaining and financing the operations of 36th District Court except as to certain expenses expressly excluded by the Judicature Act. *Disclosure at III.B.7.* In its Disclosure, the City states it has the responsibility under State law to fund the operations of 36th District. *Disclosure at III.B.7.* However, this is where the City's provided analysis stops. As demonstrated further herein, the responsibility falls upon the State to ultimately assure that its courts remain fully funded. Thus, in the event that 36th District is unable to maintain its operations after paying its creditors, it is the constitutional responsibility of the State to adequately fund 36th District.

It is extremely unusual for the protections of bankruptcy to be extended to a third party. See ***Sala v. Bank of America***, 472 B.R. 415, 421 (Bankr. S.D. Ohio 2010). Notably, the Sixth Circuit utilizes a seven factor test to determine whether there are "unusual circumstances" which would allow a third party to become part of a plan within a bankruptcy action. ***In re Dow Corning Corp.,*** 280 F.3d 648 (6th Cir. 2002). The City is unable to satisfy the requirement provided in ***In re Dow Corning Corp.*** to place 36th District Court as part of the Plan. Thus, the rights of the Local Creditors should not be infringed in this proceeding.

## II. IT IS THE RESPONSIBILITY OF THE STATE TO ASSURE 36TH DISTRICT IS FULLY FUNDED IN THE EVENT THAT THE CITY CANNOT FULLY FUND MONETARY CLAIMS AGAINST 36TH DISTRICT.

The City is "responsible for certain duties and costs relating to the 36th District Court, a unit of the judicial branch of the State." *Disclosure at III.A.2* However, the City's responsibilities regarding 36th District Court are extremely limited. The Sixth Circuit has held that these statutes do not establish whether the State would have to ultimately pay for any judgment against a Michigan trial court; "the Michigan statutes cited by Appellants establish that [the municipality] provides operational financing for the 41B District Court, they do not conclusively state who will ultimately pay for any judgment against the state district court." *Barachkov v. 41B District Court*, 311 Fed.Appx. 863, 867 (6th Cir. 2009).

A correct analysis of 36th District's funding acknowledges that the responsibility to fund the state court system originates with the State of Michigan, not the City. Therefore, when the State has delegated its funding obligation to a local funding unit and the local funding unit becomes unable to pay, the funding obligation would revert back to the State. The debts of a State trial court are not the same as a debt of the funding unit. Notably, the City merely allots funds to 36th District Court and is not allowed to control its operations. Rather, the Michigan Supreme Court maintains "general superintending control over all courts." Mich. Const. Art. VI § 4. The Michigan Supreme Court has held, "the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch [of the State of Michigan]." *Judicial Attorneys Ass'n v. State,* 459 Mich. 291, 298 (1998).

The City avoids intricate analysis of the overall financial structure of 36th District within its Plan and in doing so the City vastly overstates its relationship with 36th District Court

categorizing it as simply another municipal service. *Disclosure at III.A.2.* Indeed, the City only has the authority to make a lump sum, general appropriation for the court's effective operation. ***Ottawa County Controller v. Ottowa Probate Judge***, 401 N.W.2d 869, 873 (Mich.App. 1986) The City cannot make decisions regarding how the money is spent.

Based on information and belief, the City and 36th District Court maintain a funding mechanism that is in violation of the Michigan Constitution. In essence, when 36th District Court gets a bill, it sends it to the City of Detroit for payment. This provides the City with an unconstitutional veto power over all operational decisions of 36th District. As stated above, the City of Detroit cannot make any decisions regarding the administration or operations of the Court. The only decision that the City of Detroit can make is the amount of the lump sum annual appropriation. Once that appropriation is transferred to the Court, it is the Court's assets.

Part of the difficulty of this case is that the City of Detroit treats 36th District Court like another City department for funding purposes instead of a separate branch of government. If the City of Detroit adhered to the Michigan Constitution and merely provided a lump sum appropriation, the only dispute would be in regard to the City's payment to 36th District Court. Indeed, the issue would not involve the creditors of 36th District Court.

If the City cannot meet its obligation to fund its portion of the state court system, the obligation falls back upon the State under the traditional separation of powers doctrine which mandates that the State provide adequate funding for the Court. There is no doubt that the State has delegated its obligation to fund the trial courts to the local funding units. Under normal situations the local funding unit is obligated by statute to provide operational funding. Indeed, the Michigan Supreme Court has been very clear that it is a state obligation to fund the courts which has been merely passed onto local funding units; "the expenses of justice are incurred for

4

the benefit of the State and only charged against the [local funding units] in accordance with old usage, as a proper method of distributing the burden." *Grand Traverse County v. State*, 450 Mich. 457, 477 (1995). Further, the Court has found that a claim for monies in excess of a funding unit's limited appropriations is not barred when the money is necessary to fulfill a function by the Legislature. *Employees and Judge of Second Judicial Dist. Court, Second Div. v. Hillsdale County*, 423 Mich. 705, 720 (1985). The Michigan Supreme Court reasoned "[t]o hold otherwise would be to permit a legislative directive to be frustrated by the funding units' failure to provide necessary funds." *Id.*

Notably, it is the responsibility of the Michigan Legislature to ensure that the judiciary has sufficient funding to function serviceably as a co-equal branch of government. *46th Circuit Trial Court v. Crawford County*, 476 Mich. 131, 145 (2006) The judiciary's inherent power to compel funding is an extraordinary power and is derived from the separation of governmental powers set forth in the provisions of the Michigan Constitution relating to the authorities of the legislative, executive, and judicial branches of government. *46th Circuit Trial Court v. Crawford County*, 476 Mich. 131, 140 (2006). "The Judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities." *Id.*, 476 Mich. at 145. It is unconstitutional for the legislature to render a court inoperative by refusing to provide financial support. *Id.*

The question that must be answered in this objection is: What happens to the funding of a trial court when its sole funding unit is insolvent and cannot pay? The answer to that question must be that the State continues with an obligation to fund the court. If the debts of the trial court result in a funding level insufficient for it to carry out its constitutional duties, it cannot be rendered inoperative and the State must find another funding source.

The obligation of assuring 36th District is fully funded ultimately remains with the State. Thus, even if paying the Local Creditors in full were to completely drain the allotted funding from the funding unit, the State must step in and fund the court to maintain its operations when the local funding unit is unable to do so. Notably, the State is not protected under the stay in bankruptcy. Thus, it serves no financial purpose to fractionalize the claims of Local Creditors to minimize the financial impact which would be suffered by the State.

Admittedly, no state court decision has had to deal with the situation presented here, which is what happens to the funding of a trial court or judgments against it when the local funding unit is in bankruptcy? However, this question has been addressed most closely in the federal courts in determining whether a Michigan trial court is entitled to sovereign immunity.

The first factor in a sovereign immunity analysis is whether the State could be potentially liable for any judgment against the entity. *Pucci v. Nineteenth District Court*, 628 F.3d 752, 760 (6th Cir. 2010). A line of Sixth Circuit cases and Eastern District of Michigan cases examined whether the State of Michigan could be a potential source of funding for judgments against Michigan trial courts regarding employment issues.

The result of this line of cases is a firm "maybe." The Sixth Circuit found that it is unclear whether the local funding unit would bear any ultimate responsibility to pay any cost of a judgment against a local district court. *Pucci*, 628 F.3d at 761 FN 8, citing *Barachkov*, 311 Fed.Appx. at 867-868 and *Dolan v. City of Ann Arbor*, 666 F.Supp.2d 754, 760-763 (E.D. Mich. 2009).

These cases analyze *Cameron v. Monroe County Probate Court*, 457 Mich. 423, 579 N.W.2d 859 (1998). In *Cameron*, pursuant to an agreement, a $25,000 judgment was entered against a probate court in a civil rights action brought by a group of the court's employees. The

6

State of Michigan paid the judgment. The Probate Court filed a third party complaint seeking indemnification from the local funding unit. The Michigan Supreme Court held that the probate court was not entitled to indemnification because the State, not the court, paid the judgment at no cost to the court. *Cameron*, 579 N.W.2d at 862. However, the Michigan Supreme Court also held that had the State not paid, the local funding unit would be liable for any judgment against the court as a matter of law. *Id.*

The Sixth Circuit held that this case stands for the proposition that a local funding unit must indemnify the State for any judgments that it pays against a Michigan trial court. *Barachkov*, 311 Fed.Appx. at 868.

The *Dolan* Court perhaps best framed this issue and its uncertainty:

> In short, despite the apparent abundance of statutory provisions and state and federal court rulings that have some arguable bearing upon the first "arm of the State" factor, it is no easy feat to determine whether the State of Michigan faces potential liability for any judgment Plaintiff might obtain against the Fifteenth District Court in this case. On the one hand, the City of Ann Arbor plainly is obligated to cover the day-to-day costs of maintaining and operating the Fifteenth District Court, and, as a practical matter at least, any judgment obtained by Plaintiff against the court is likely to be paid out of the Fifteenth District Court budget (funded by the City) or other funds furnished by the City. Yet, on the other hand, the City is quite correct in observing that it is the Fifteenth District Court, and not the City, that would be "legally obligated to pay any judgment against it," with the City bearing only the more indirect responsibility to provide the funds to satisfy such a judgment.

*Id.* at 762. The Court concluded: "it cannot be said with any degree of confidence that the State of Michigan bears no potential legal liability for any judgment Plaintiff might obtain against the Fifteenth District Court." *Id.*

Accordingly, the City, or the State, cannot say with any certainty that only the City would be ultimately responsible to provide funding to 36th District Court to pay any judgment that it has

against it. Therefore, it would be improper to discharge any of debts against 36th District Court in this bankruptcy proceeding.

### III. THE CLAIMS AGAINST 36TH DISTRICT COURT ARE NOT SIMILAR TO THE CLAIMS AGAINST THE CITY.

Both Local 3308 and Local 917 have several pending claims against 36th District. Many of these claims are a result of horrific mismanagement in the past that are repeated and continued under the current management. 36th District Court has filed a proof of claim in this bankruptcy action. It has targeted AFSCME and its members. The only debts that it has included in its proof of claim are debts owed to AFSCME or its members. 36th District Court certainly has hundreds of other creditors but is only seeking to diminish those claims held by AFSCME or its members. Therefore, there is a priority treatment given to all other creditors of 36th District Court over the Local Creditors. The City is looking to continue 36th District's unfair treatment of the Local Creditors by choosing to pay them a fraction of their damages under the misleading guise of withholding money to fund the court when the obligation to ultimately assure the courts are funded lies with the State . The City's affirmative act of placing these claims beside other unsecured creditors to allegedly ensure the 36th District has sufficient funds to function is contrary to the goals of the City's Plan.

In describing the Plan, the Disclosure states "[t]he adjustment of the City's debts pursuant to the Plan will provide the greatest recovery for creditors of the City, while simultaneously allowing for meaningful and necessary investment in the City." *Disclosure at II. A.1* Yet, as demonstrated above, the creditors of the 36th District can be paid in full directly from the City's allotment from 36th District and 36th District will remain fully funded through the purse of the State if 36th District Court is barred from seeking additional funding from the City. The State is

8

13-53846-tjt    Doc 4552    Filed 05/09/14    Entered 05/09/14 10:31:44    Page 8 of 14

obligated to fully fund 36th District Court by law. Therefore, it is improper for the City to fractionalize the amounts owed to 36th District's creditors because 36th District Court will remain fully funded even if all of the City's allotted funding is disbursed to 36th District's creditors.

Local Creditors object to the City's proposed payout on the monetary obligations of 36th District Court. Notably, the Plan consolidates monetary awards and pending litigation against 36th District Court as an "other unsecured creditor" with all litigation against the City which does not specifically relate to retirement benefits or litigation regarding the City's handling of municipal bonds. *See Plan at I.149 and II.B.3.w*. In total, the City has budgeted merely an initial $360 million issued pro-rata to cover the entirety of claims by its "other unsecured creditors." *Plan at I.A, II.B.3.w and Disclosure at VI.A.1*. The funding will be generated by the new unsecured notes known as "B Notes." *Plan at Plan at II.B.3.w*. Additionally, the City will issue "C Notes" which will allegedly pay "other unsecured creditors" from "incremental recurring gross specified tax receipts, as (and if) the City recovers such receipts over the next thirty years." *Disclosure at VI.A.2*. However, the Disclosure estimates that "other unsecured creditors" are only estimated to recover 20% of the full amount of their claim. *Disclosure at II.B*.

Thus, by blending 36th District's monetary claims with the City's "other unsecured creditors," the Plan provides that creditors with monetary claims against 36th District Court will likely only recover 20% of the full amount of their claim—despite the fact that 36th District, unlike the City, is assured full funding by the State. Indeed, 36th District would be funded and there would be zero additional financial impact on the City even if the claims against it are paid in full. Thus, Local Creditors' claims against 36th District are clearly distinguishable from those of the other "other unsecured creditors."

9

13-53846-tjt    Doc 4552    Filed 05/09/14    Entered 05/09/14 10:31:44    Page 9 of 14

Section 1122(a) of the Bankruptcy Code prohibits placing different claims in the same class under a plan of adjustment or providing different treatment for claims in the same class. Section 1122(a) provides that "a plan may place a claim ... in a particular class only if such claim ... is substantially similar to the other claims ... in such class." The claims against 36th District are distinguishable from claims against the City due to 36th District's guaranteed funding. Therefore, these claims should not be contained within the same class. Grouping them together prejudices Local Creditors in that, as demonstrated above, they should receive a larger share of their claim due to 36th District's funding scheme. Moreover, the priority treatment of all other 36th District Court creditors or substantially similar claims is improper. These claims are being paid at 100%. Because Local Creditors should receive materially different treatment under the Plan from other creditors similarly classified, the Plan cannot be confirmed.

## IV. THE DEBTOR HAS NOT ESTABLISHED THAT THE EXTREME REMEDY OF EXTENDING BANKRUPTCY PROTECTIONS TO A NON-DEBTOR THIRD PARTY IS APPROPRIATE.

Local Creditors object to the Plan's Injunctive Relief Provisions in Plan Article III.D.5.a and Article III.D.5.b. The City's Plan defines "Indirect 36th District Court Claims" as "means any claim arising in connection with a Cause of Action against the 36th District Court, solely to the extent that (a) the 36th District Court is entitled to receive funding from the City to satisfy any such claim and (b) any Claim for such funding by the 36th District Court is resolved pursuant to the Plan and the treatment accorded to any Allowed Other Unsecured Claims held by the 36th District Court pursuant to Section II.B.3.w."

Article III, D. 5.a.1. of the City's Plan imposes an injunction against the holders of "Indirect 36th District Court Claims" from "commencing, conducting or continuing in any

manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including…Indirect 36th District Court Claims.)"

It is well established that seeking to extend bankruptcy protections to benefit a non-debtor third party is an "extreme remedy" and is "exceedingly rare." *Saleh v. Bank of America*, 427 B.R. 415, 421 (Bankr. S.D. Ohio 2010). It permits a third party to obtain the benefits of the bankruptcy process without being subjected to any of its burdens and safeguards. *Id.*

The Sixth Circuit uses a seven factor test to determine whether there are "unusual circumstances" which would allow a third party to become part of a plan within a bankruptcy action. *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002). Notably, these factors require that the creditor of the third party has an opportunity to recover in full. *Id.* at 658. In *In re Dow Corning Corp.*, the court determined that a bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor when the following factors exist:

> (1) there is an identity of interests between debtor and third party, usually an indemnity relationship, such that a suit against non-debtor is, in essence, a suit against debtor or will deplete estate assets, (2) non-debtor has contributed substantial assets to the reorganization, (3) injunction is essential to reorganization, namely, reorganization hinges on debtor being free from indirect suits against parties who would have indemnity or contribution claims against debtor, (4) impacted class, or classes, has overwhelmingly voted to accept plan, (5) plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction, (6) plan provides an opportunity for those claimants who choose not to settle to recover in full and, (7) court made a record of specific factual findings that support its conclusions.

*Id.*; *See also* 11 U.S.C.A. § 1123(b)(6).

Here, these factors do not exist. First, the identity between the City and 36th District is not a relationship, in essence, in which a suit against 36th District is a suit against the City. Indeed, it is undisputed by the parties that 36th District is an entity of the State in which the City merely has the responsibility to indemnify the State for the expenses involved with operating 36th

11

District. 36th District is not a department of the City. Further, the City does not have any control or authority over the administration or 36th District or how it uses the allotted funds. Indeed, 36th District is a separate and distinct legal entity. If a suit is filed against 36th District, the State would be responsible for paying any judgment of 36th District in the event that the City cannot.

Further, the City cannot satisfy its burden regarding the other *In re Dow Corning Corp* factors. Indeed, 36th District has not contributed substantial assets to the reorganization. Nor is the inclusion of 36th District "essential" to the reorganization. Since AFSCME was selected as the only creditor to whom this would apply, the only reason for inclusion is to be punitive toward the largest union at 36th District Court, not for any essential reason. Notably, the *In re Dow Corning Corp* factors require that the impacted classes overwhelmingly vote to accept the City's Plan. Although no official vote has happened, it is no secret that a significant number of impacted classes have or plan to file objections to the City's Plan due to the draconian cuts which they are facing.

Finally, and most notably, the plan does not come close to providing a mechanism to pay for all of the claims by each class affected by the placement of the third party in the bankruptcy. As noted herein, the City's Plan estimates that creditors of 36th District will ultimately receive only 20% of the amount of their claims. As for those who chose not to settle, the City's plan states that all claims presently against the City will be dismissed with the approval of the Plan. Regardless of whether the individual creditors approve the plan or not, they will be bound by its terms.

### V. STATES CAN NOT FILE FOR BANKRUPTCY

Only a "municipality" may file for relief under chapter 9. 11 U.S.C. § 109(c). The term "municipality" is defined in the Bankruptcy Code as a "political subdivision or public agency or

instrumentality of a State." 11 U.S.C. § 101(40). In defining "municipality" as a "political subdivision or public agency or instrumentality of a State," the statute intentionally omits states themselves. "Chapter 9 passed constitutional muster on the basis that the federal bankruptcy power be exercised at the request of, but not at the expense of, the sovereign state in an exercise of cooperation among sovereigns." *In re City of Stockton*, 478 B.R. 8, 20 (E.D. Cal. 2012) citing *United States v. Bekins*, 304 U.S. 27, 51-53 (1938).

It is well established that 36th District is itself a state entity. As a state entity, 36th District is treated as the State, thus, cannot be afforded the protection of bankruptcy. Notably, states enjoy sovereign immunity pursuant to the 11th Amendment. The Creditor's claims against 36th District Court are claims against the State of Michigan, not a municipality. Therefore, the Claims should not be adjusted, disposed or enjoined as part of this Chapter 9 proceeding.

Wherefore and for the reasons state above, AFSCME Local 3308 and Local 917 respectfully request the relief sought by the City be denied, and that this Objection be sustained.

Respectfully submitted,

MILLER COHEN, P.L.C.

By:/s/ Robert D. Fetter
Robert D. Fetter (P68816)
Attorney for Defendant AFSCME
    Local 3308 and 917
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454

Dated: May 9, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

**PROOF OF SERVICE**

The undersigned certifies that on May 9, 2014, the American Federation of State, County and Municipal Employees Local 3308 and Local 917's Objection and Brief Regarding the Classifications of 36th District Court in the City's Proposed Plan of Adjustment was electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

Respectfully submitted,

**MILLER COHEN, P.L.C.**

By: /s/ Robert D. Fetter
Robert D. Fetter (P68816)
Attorney for Defendant AFSCME 25
600 W. Lafayette Blvd., 4th Floor
Detroit, Michigan 48226
(313) 964-4454

Dated: May 9, 2014