# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion (the "Motion to Compel") to compel the production of documents from the City of Detroit.[1] In support of its motion, Syncora respectfully states as follows:

## INTRODUCTION

1. In this Bankruptcy case — the largest Chapter 9 proceeding in history — the City has the burden of proving that its Plan of Adjustment meets the multiple, fact-intensive requirements of 11 U.S.C. § 1129. To that end, Syncora requested documents from City that are highly relevant to the issues in dispute,

---

[1] In accordance with the Court's *Order Regarding Hearing on Outstanding Objections to Written Discovery* [Doc. No. 4508], Syncora intends to provide the Court with a written list during the hearing identifying (a) the specific requests on which Syncora seeks a ruling; (b) the City's objections to those requests; and (c) Syncora's responses to the City's objections. Syncora is of the view, however, that the City's responses are so fundamentally problematic that there is a threshold issue surrounding what information the City refuses to provide and why.

without which Syncora (and ultimately the Court) will be unable to fairly test whether the City can carry its burden under the statute.

2. The City's responses to Syncora's discovery requests are improper and thwart, rather than serve, the purposes of discovery allowed by Federal Rule of Civil Procedure 26, of which transparency and avoidance of unfair surprise are foremost. The City's Objections are improper because:

- The City refuses to produce crucial documents and data related to the City's 10-year projections and revenue forecasts, despite the centrality of those forecasts to the City's Plan of Adjustment and despite the fact that the City must have gathered most or all of the requested documents and data in the process of generating its forecasts and projections.

- The City refuses to state what it is producing and what it is withholding, and instead larded its response with repetitive, boilerplate objections (which courts widely reject as improper) and opaque statements about producing documents "reasonably responsive" to Syncora's requests "as the City understands" them, without ever saying what "reasonable" limits has placed on the requests or how it understands them.

- The City cannot avoid its responsibility to produce documents relating to the DIA by making reference to the subpoena directed to the DIA. The City has engaged in independent judgment regarding the art collection and the DIA, including in making the decision to enter the so-called Grand Bargain, and it must produce the documents it relied upon in making that decision.

- The City asserts multiple privileges and states it will not produce documents protected by those privileges, but has not agreed to produce a privilege log identifying the documents it is withholding on subjects that are highly relevant to the confirmation trial, as it is required to do.

3. For these reasons, Syncora moves the Court to disregard the City's improper objections and to compel production of documents responsive to

Syncora's requests. To the extent the City withholds documents it contends are privileged, Syncora moves to compel production of a privilege log relating to its decision not to sell the art and instead enter into the "Grand Bargain," and reserves its right to ask for privilege logs on targeted issues as the case proceeds.

## BACKGROUND

4. The Court set the discovery schedule in this case after a hearing on March 5, 2014, during which certain creditors suggested alterations to the Court's and the City's proposed schedule governing the confirmation of the Plan of Adjustment (the "Plan"). (Third Amended Scheduling Order, Doc. No. 3632.) Pursuant to that Order, Syncora served the City with its Requests for Production on March 28, 2014 [Doc. No. 3316]. After certain adjustments were proposed to the schedule by the City on April 17, 2014, the Court entered the Fourth Amended Order Establishing Procedures, Dates, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 4202] (the "Scheduling Order"). On May 6, pursuant to the Scheduling Order, the City filed its Objections and Responses to Syncora's First Request for the Production of Documents (the "City Objections") [Doc. No. 4479]. On May 6, 2014 the City also sent Syncora a hard drive with the documents it was producing. This hard drive contained roughly 260,000 unlabeled and uncategorized pages of documents, and the City did not provide an index describing the documents.

3

5.     On May 8, 2014, counsel for the City and counsel for Syncora met and conferred telephonically regarding Syncora's Requests for Production. During the meet-and-confer, counsel for City could neither confirm nor deny whether the City's production of documents was responsive to Syncora's particular requests, and stated that the City produced the same documents in response to all creditors' document requests.

6.     Counsel for the City confirmed that the City withheld documents on the basis of privilege, including the mediation privilege, and confirmed that the City would not produce a privilege log for all withheld documents, but that it may consider doing so for targeted requests. Counsel for the City also confirmed that the City restricted custodial searches of electronically stored information to the date range January 1, 2013 to May 6, 2014.

7.     Finally, counsel for the City stated that information underlying requested forecasts and projections was being reviewed and gathered by the City's advisors. According to the City's counsel, the City's advisors are in the process of preparing a set of documents comprising the assumptions and reliance materials that the City's advisors used in preparing the forecasts. Though counsel for the City did not commit to a specific date for the production of these materials, he stated that the materials would be ready within two to three weeks.

8. Syncora now moves to compel the City to produce documents responsive to Syncora's document requests, notwithstanding the City's voluminous improper objections, and to specify in a privilege log each document relating to its decision not to sell the art and instead enter into the "Grand Bargain."[2]

## JURISDICTION

9. The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

10. Syncora respectfully moves the Court to disregard the City's improper objections and to enter an order, substantially in the form attached hereto as Exhibit 1, compelling production of documents responsive to Syncora's requests. To the extent the City withholds documents relating the City's decision not to sell the art and instead enter into the "Grand Bargain" that it contends are privileged, Syncora moves for entry of an order compelling production of a privilege log identifying the document and the basis for the City's claim of privilege.

## BASIS FOR RELIEF

**I. Syncora's Requests are Reasonable and Necessary**

---

[2] While the City has expressed a willingness to provide additional documents after Syncora has been able to review the City's production and determine what is missing, this issue is sufficiently urgent that Syncora wanted to raise its concerns before the Court in an expedited fashion.

5

11. The scope of discovery is broad. *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 395, 398 (W.D. Tenn. 2012) ("As the Sixth Circuit has recognized, the scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.") (internal quotation omitted). The test for whether a request is appropriate is whether the request is reasonably calculated to lead to the discovery of admissible evidence. *Mellon v. Cooper–Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir.1970) ("The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.").

12. At issue in this case are the extensive requirements of 11 U.S.C. § 1129, which sets the standard for confirming a Plan. The standard requires an assessment of whether the City's Plan is feasible, proposed in good faith, unfairly discriminatory, fair and equitable, and in the best interests of creditors, among other requirements. Each of these requirements, for which the City bears the burden of proof, requires significant factual inquiry into the City's finances, operations, and management.

13. Syncora's requests are specifically and narrowly calculated to lead to the discovery of admissible evidence. Syncora's document requests broadly fall into eight categories, relating to the following subjects:

- The City's revenue forecasts
- The Detroit Institute of Arts
- The City's assets
- The City's operations

6

- The City's reinvestment initiatives
- The City's pension plans
- The City's relationship to the State of Michigan
- The City's tax policy and structure

14. These categories specifically reflect the factual areas that will affect this Court's and the parties' assessment of whether the City's Plan, which is still evolving, can be confirmed by this Court. For instance, the City's revenue forecasts, and the information underlying them, are a key and central component to understanding the City's ability to pay creditors and to fund its own operations. Developing an understanding of the City's forecasts and projections, and their accuracy, is a necessary step in evaluating whether the plan is fair and equitable and in the best interest of creditors.

## II. The City's Responses And Objections Are Vague, General, And Improper

15. The City's General and Specific Objections to Syncora's document requests are improper for a number of reasons: ***First***, the City refuses to provide relevant information regarding the City's revenue forecasts and projections, which are readily available and central to this case. ***Second***, the City's general objections obscure the key question of which documents the City has agreed to produce and which it has refused to produce, a flaw that is compounded by the City's repeated statement that it will produce only those documents it views as "reasonably" responsive to the requests as the City understands. The City never articulates how

7

it understands any request or what it regards as reasonably responsive, which means the City essentially has refused to take a position about what it will produce. ***Third***, the City improperly refers Objectors to the DIA's document production, because the City has necessarily undertaken independent assessment of the DIA in view of its decision to pursue, among other things, the Grand Bargain. ***Fourth***, the City asserts multiple privileges without identifying in a privilege log which (if any) documents relating to subjects in dispute in the confirmation trial it is withholding based on privilege and without stating its basis for contending those documents are privileged.

    **A.    The City Must Provide All Documents Related To Its Ten Year Projections And Revenue Forecasts**

16.    The City's 10-year forecasts and revenue projections are among the most important documentary evidence in this bankruptcy case. The forecasts and projections are important to virtually every facet of the City's Plan, including its ability to pay creditors, to fund reinvestment initiatives, and generally to implement the Plan. Syncora's Request Nos. 44 and 45 ask for:

- the production of prior drafts of the City's 10-year projections, and
- documents showing the assumptions and bases for the assumptions underlying the City's 10-year projections.

17.    The City refused to produce the requested documents on grounds that "Experts will be identified and expert reliance materials and disclosures will be

8

13-53846-tjt    Doc 4565    Filed 05/09/14    Entered 05/09/14 15:22:19    Page 8 of 18

produced in accordance with the Scheduling Order and as required under Bankruptcy Rules." (City Objections, Specific Objection to Request Nos. 44–45.) This objection is improper because the City's 10-year projections were provided as part of the City's Disclosure Statements, <u>not</u> as part of any expert report. The City disclosed and relied on its projections outside the context of expert disclosures (including, for example, at the hearing on the Settlement and Plan Support Agreement on April 3, 2014). The City therefore may not shield itself from any discovery related to those projections on grounds that expert disclosures are not yet due. Syncora is not asking for a preview of the City's expert reports; it is asking for documents and data related to projections the City has long since disclosed and relied on — all of which are currently available to the City, and which, by definition, it already gathered as part of generating its projections.[3]

18. Similarly, Syncora's request No. 71 asks the City to produce the source documents, assumptions, and data related to the revenue projections included in Exhibit H to the City's Disclosure Statement. Troublingly, the City

---

[3] For example, at the April 3, 2014 hearing on the Settlement and Plan Support Agreement, Syncora objected to the admissibility of testimony and exhibits regarding certain forecasts and projections provided by the City's expert, Gaurav Malhotra, on grounds that his reliance materials had not been produced. (Apr. 3, 2014 Hr'g Tr. at 51:10-17.) Over the City's objection, the Court required the City to disclose the information it relied on to produce its projections. The City took over three weeks to comply, and its production did not provide Syncora with adequate information to recreate even those short-term forecasts.

9

objects to this document request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. (City Objections, Objection and Response to Document Request No. 71, p 38.) But the materials sought by Request No. 71 could scarcely be more relevant to this case: the nature and sources of the City's past and future revenues is crucial for the parties, their experts, and the Court to assess the Plan's feasibility, fairness, and whether it is in the best interests of creditors. Without the requested information, there is simply no way to test or verify the City's revenue projections, so the City's relevance objection is entirely unfounded.[4]

19. During the parties' May 8, 2014 meet and confer call, the City stated that its experts have just begun the process of gathering reliance materials that would be responsive to Request Nos. 44 and 45, and stated that it will not produce those documents for three weeks. The City's position is simply untenable: first, because it directly violates the Court's Scheduling Order requiring production to be complete by May 6, 2014 (Fourth Amended Scheduling Order, Doc. No. 4202), and second, because its experts' current effort to gather reliance materials is beside

---

4  The City's boilerplate burden objection is similarly unfounded and improper because the City did not articulate with any particularity why this request is burdensome, which is required for a valid objection. See *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D.Kan.1997) ("The objecting party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

the point because the identity of documents that show the underlying assumptions or bases for the City's forecasts and projections, (Exs. H and J to the City's Disclosure Statement, Doc. No. 2709), is a readily ascertainable historical fact. The City (and its advisors) must have gathered those documents and data as part of preparing the forecasts and projections, and therefore the City has no basis to withhold or delay its production.

### B. The City's Responses And Objections Do Not Make Clear What Information The City Is Withholding

20. The City's Responses and Objections are improper, virtually across the board, because the City asserts a litany of improper boilerplate objections and caveats for each request. The City's boilerplate objections do not specify precisely how (or even if, in fact) Syncora's individual requests are actually objectionable in any way, and they make it impossible to determine whether the City is withholding any documents (or never looked for categories of documents) based on those objections.

21. Courts routinely disregard boilerplate objections. *See, e.g.*, *Nissan North America, Inc. v. Johnson Elec. North America, Inc.,* No. 09-CV-11783, 2011 WL 669352, at *2 (E.D. Mich. Feb. 17, 2011) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."); *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032, at *4 (W.D.Mich. Feb.13, 2001) ("The court strongly condemns the practice of asserting

boilerplate objections to every discovery request."); *PML N. Am., L.L.C. v. World Wide Pers. Servs. of Virginia, Inc.*, CIV.A. 06CV14447-DT, 2008 WL 1809133 (E.D. Mich. Apr. 21, 2008) ("For example, Defendants' response to Plaintiff's Request to Produce no. 13 is an objection that the request is "not relevant, nor reasonably calculated to lead to the discovery of relevant or admissible evidence." . . . The filing of boilerplate objections such as these is tantamount to filing no objections at all."); *MSC.Software Corp. v. Altair Eng'g, Inc.*, 07-12807, 2008 WL 5381864 (E.D. Mich. Dec. 22, 2008) (granting a motion to compel in part and requiring supplemental responses where the party stated in its objection to a request for production that it would produce documents "within the scope of permissible discovery" without specifying why particular documents it withheld were irrelevant.)

22. The City compounds the impropriety of its general objections by incorporating all of them in all but one of its specific RFP responses, which only deepens the mystery about whether the City has any actual objection to any given request:

> ***Subject to and without waiving the general objections noted above***,
> the City responds that it will produce non-privileged documents in its
> possession, custody, or control, to the extent they exist, that are
> reasonably responsive to this request, as the City understands it.

(City Objections, Objection and Response to Document Req. No. 15, p 16 (emphasis added).)

23. The City's general objections make it impossible to determine whether and to what extent the City has actually produced all documents responsive to Syncora's document requests. For example:

- In General Objection 14, the City states that "the City's responses . . . are limited" to January 1, 2013 to May 6, 2014, (City's Objections, General Objection No. 14), but provides no reason why this limitation is reasonable, or how it applied this date limitation to its production.

- In General Objection 8, the City states that it will produce documents "subject to reasonable limitations on the scope of the search, review, and production of such information due to the cost and burden of production," (City Objections p 5), but never explains what such limitations might be, what specific burden or concern justifies such a limitation, and never specifies what documents it withheld (or never looked for) because of this objection.[5]

- Similarly, in General Objection No. 9, the City states that it will conduct "a reasonable search, given the time permitted to respond to these Document Requests." (City Objections p 5.) Again, though, the City does not say what it has done or what it refuses to do because of the "time permitted to respond." Nor may the City unilaterally truncate its discovery obligations based on timing: if it lacked sufficient time to find and produce responsive documents under the tight schedule it advocated for, it should have asked for an extension or raised the issue with the Court.

24. Each of the City's specific responses to individual RFPs also contain the self-defeating, boilerplate caveat that the City will produce documents "that are reasonably responsive to this request, as the City understands it." (*See, e.g.,* City's

---

[5] Simply stating an objection without articulating its factual basis is improper. *See Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D.Kan.1997) ("The objecting party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

13

Response, Objection and Response to Nos. 23–66, p 23.) The City never explains what documents or categories of documents it deemed "reasonably responsive," nor how the City "understands" Syncora's requests.

25. The net effect of all the City's boilerplate objections and caveats is to render their responses meaningless beyond saying, "We gave you whatever we deemed appropriate according to criteria we're not prepared to disclose." The City's approach is a major obstacle to orderly discovery in this case, because it prevents Syncora from even determining in the first instance what the City agreed to produce and whether it actually did so. For that reason, Syncora moves for an order setting aside all of the City's improper boilerplate objections and caveats, and requiring the City to search for and produce by May 16, 2014 all documents responsive to Syncora's requests.[6]

### C. The City Must Produce Responsive Documents Relating To The DIA

26. In response to certain requests relating to the DIA, the City "refers Objectors to the documents the DIA Corp. has agreed to produce and/or make

---

[6] Attached as Exhibit 6 is a redline indicating those portions of the City's objections that should be stricken. The redline is color-coded to reflect the nature of the stricken objections: improper general objections are stricken in red; expert and financial objections are stricken in green; DIA-related objections are stricken in blue; and privilege-based objections are stricken in orange.

14

available for inspection and copying." (*See, e.g.*, City's Responses to Request Nos. 8-9, 12-14.) This response is also improper.

27. First, the City presumably undertook an investigation of the records of the DIA in making its determination to dispose of the the DIA assets for a fraction of their value in the so-called Grand Bargain. To the extent those documents are now in the City's rather than the DIA's possession, Syncora is entitled to access them so that creditors can better understand on what basis the City proposes to undertake the Grand Bargain. The City cannot simply refer Syncora to an as-yet uncompleted production under a separate subpoena, and attempt thereby to avoid its discovery obligations to Syncora.

28. Second, Syncora is still working with the DIA to determine exactly which documents the DIA will produce. Referring Syncora to documents that the DIA may or may not produce is inconsistent with the <u>City's</u> obligation to produce documents responsive to the relevant requests. Put another way, even if the City could permissibly refer to the DIA's production to meets its discovery obligation, without any certainty that the DIA will produce all responsive documents — which Syncora does not currently possess — the City cannot pass off its obligations.

> **D.  The City Must Produce A Privilege Log If It Withholds Any Documents Based On Privilege**

29. The City objects generally that it will not produce documents that are privileged, including documents protected by the mediation privilege or by

15

confidentiality agreements between the City and third parties. (City Objection No. 2 at p 2.) But the City does not say whether it actually withheld any documents it alleges are privileged, and, in its General Objection No. 3, states that it will not produce a privilege log identifying any such documents and stating the basis for the asserted privilege, (City Objections p. 3), despite a clear duty to do so. *See MJS Janitorial v. Kimco Corp.*, 03-2102 MAV, 2004 WL 2905408 (W.D. Tenn. May 12, 2004) ("Because Kimco has withheld documents on a claim of privilege, Kimco must provide a privilege log with sufficient detail to allow MJS to challenge Kimco's assertion of privilege.").

30. Syncora acknowledges the burden associated with the production of a fulsome privilege log. Therefore, at this time, Syncora requests that the Court compel the City to provide a privilege log relating to its decision not to sell the art and instead enter into the "Grand Bargain." Syncora reserves the right to ask for privilege logs on targeted issues as the case proceeds.

WHEREFORE, for the foregoing reasons, Syncora respectfully requests that this Court enter an the attached Proposed Order (1) striking the City's improper objections; (2) requiring the City to search for and produce documents responsive to Syncora's requests (notwithstanding its improper objections) by no later than

May 16, 2014; and (3) requiring the City to produce a privilege log relating to its decision not to sell the art and instead enter into the "Grand Bargain."

*[Remainder of this page intentionally left blank]*

Dated: May 9, 2014                    Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*