# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | ) |
| | ) Chapter 9 |
| Debtor | ) |
| | ) Hon. Steven W. Rhodes |

### COUNTY OF MACOMB, MICHIGAN'S OPPOSITION TO MOTION OF THE OFFICIAL COMMITTEE OF RETIREES TO COMPEL PRODUCTION OF A PRIVILEGE LOG

County of Macomb, Michigan, by and through Anthony V. Marrocco, Macomb County Public Works Commissioner, as County Agency for Water and Sewer Services under Public Act 342 of 1939 ("Macomb"), a creditor and party in interest in the above-captioned chapter 9 bankruptcy case, hereby files this opposition to the Motion of the Official Committee of Retirees ("Retirees' Committee") to Compel Production of a Privilege Log ("Motion") [Docket No. 4511] filed May 7, 2014. In support of its opposition, Macomb respectfully states as follows:

### PRELIMINARY STATEMENT

The Retirees' Committee's request that Macomb, a municipal entity with limited resources, produce a document-by-document privilege log is unreasonable and unduly burdensome in the context of these expedited bankruptcy proceedings. To the best of Macomb's knowledge, none of the numerous parties involved in discovery, other than the Retirees' Committee, is seeking a privilege log from any party—as everyone other than the Retirees' Committee agrees that creating privilege logs is not a good use of the parties' resources given the

exigent circumstances under which discovery is proceeding.[1]  Nevertheless, the Retirees'

Committee seeks to force Macomb, Wayne County and Oakland County (together the

"Counties"), to be the only parties to expend the enormous effort and expense required to

produce a privilege log.  Common sense dictates that in the largest municipal bankruptcy filing

in history, it would be unfair and unduly burdensome to require any party to produce a privilege

log and patently unjust to compel only the Counties to engage in this exercise.

        Macomb has complied with the Retirees' Committee's expansive subpoenas,[2] producing

all non-privileged documents responsive to every request.  Macomb has made an extraordinary

effort to conduct a thorough review of its files and provide the Retirees' Committee with all

documents that could lead to the discovery of admissible information.   In just three weeks,

Macomb provided over 27,600 pages of documents—a major undertaking that consumed the

time and resources of Macomb's employees and outside counsel—at considerable expense.

Moreover, the effort was one-sided, as Macomb has not required the Retirees' Committee to

undertake a commensurate review and provide documents in exchange.  In light of the expedited

schedule for the upcoming July 24 confirmation hearing, granting the Motion would place an

undue burden on Macomb, as well as all other parties providing discovery that would be required

to create a privilege log.   Preparing a document-by-document log would require Macomb to

devote a large portion of its resources over the coming weeks to logging privileged documents

instead of reviewing the significant discovery just received from the Debtor,[3] participating in fact

---

[1] Macomb was served discovery requests by the ad hoc DWSD bondholder group and the City of Detroit ("Debtor").
The ad hoc DWSD bondholder group has agreed not to seek a privilege log from Macomb, and Macomb and the
Debtor have agreed that if they are not required to produce a privilege log to any other party, they will not seek
privilege logs from each other.
[2] Inexplicably, the Retirees' Committee served two separate subpoenas to which Macomb has responded, one
seeking the production of documents and another for a deposition along with the production of the very same
documents.  This approach required Macomb to prepare and file two separate responses to essentially identical
discovery requests.
[3] The Debtor recently made a production of documents to Macomb of 250,000 pages of documents.

and expert discovery and preparing for the confirmation hearing. The Retirees' Committee's demand for a privilege log is even more inappropriate in light of the fact that the Retirees' Committee has recently settled its claims with the Debtor and entered into a stipulation to extend the deadlines to submit objections to the Plan and participate in discovery. *See* Fourth Amended Disclosure Statement With Respect to Fourth Amended Plan for the Adjustment of Debtors of the City of Detroit [Docket No. 4391] at Exhibit I.A.236.

For the reasons set forth below, the Retirees' Committee's Motion should be denied. In the event that the Court is inclined to grant the Motion, the obligation to provide a log cannot be limited to the Counties and all parties providing discovery, including the Debtor, should bear a reciprocal obligation to log their privileged documents.

## BACKGROUND

**I.** **Macomb's Relationship with Debtor**

1. Macomb is a party to that certain Wastewater Disposal Services Contract (the "Macomb-OMI Agreement"), dated as of September 30, 2009 between Macomb and Oakland-Macomb Interceptor Drain Drainage District ("OMI"). OMI, in turn, is party to that certain Wastewater Disposal Services Contract (the "OMI-Detroit Agreement"), dated October 22, 2009, between OMI and the Debtor, by its Board of Water Commissioners.

2. Prior to its entry into the Macomb-OMI Agreement, Macomb, through the Macomb County Wastewater Disposal District (the "MCWDD"), was a direct wholesale customer of the Detroit Water and Sewerage Department (the "DWSD") with respect to the collection, transportation and treatment of Macomb's wastewater by the DWSD. Pursuant to a purchase agreement dated October 22, 2009, the Debtor transferred ownership of the interceptors, pump stations, meters and appurtenant facilities owned by the Debtor in Macomb

County commonly known as the ITC Corridor Interceptor, the Oakland Arm Interceptor and the Avon Arm Interceptor to OMI.

3. Pursuant to the Macomb-OMI Agreement, OMI transports wastewater from Macomb and Oakland Counties to Detroit for treatment and disposal, and Macomb pays OMI for those services at rates based upon rates that the DWSD charges OMI, plus costs and charges incurred by OMI for providing the services. Pursuant to the OMI-Detroit Agreement, OMI is a wholesale "First Tier Customer" of the DWSD, and the DWSD charges OMI for flow delivered to the DWSD system at rates established by the Debtor through its cost allocation and rate design processes. Accordingly, any fluctuations in rates charged by DWSD to OMI under the OMI-Detroit Agreement flow directly through to Macomb pursuant to the rate structure under the Macomb-OMI Agreement. Moreover, the OMI-Detroit Agreement specifically provides that Macomb is an intended third party beneficiary of that OMI-Detroit Agreement and that Macomb, on behalf of the MCWDD, has the status of a "Tier 1 Customer" of the DWSD.

4. The Counties have no direct relationship with the Retirees' Committee. The sole basis on which the Retirees' Committee is seeking discovery from the Counties arises out of the fact that the Debtors' Plan (or "Plan")[4] calls for certain pension obligations to be prefunded by DWSD. The Counties have understandably raised objections as to the propriety of the amount of pension obligations that should be funded or incurred by DWSD and the timing of such payments because, as customers of the water and sewer services supplied by DWSD, they have an interest in limiting the rates charged for such services and preserving the availability of funds to make much needed capital improvements to the water and sewer infrastructure. The Counties' objection to financing the Debtor's pension settlements have apparently made them the target of discovery from the Retirees' Committee.

---

[4] References to the Plan refer to such document as it may be amended from time to time.

## II.     Macomb's Compliance with the Retirees' Committee's Subpoenas

5.     On April 11, 2014, the Retirees' Committee filed and served a Subpoena Duces Tecum and Ad Testificandum [Docket No. 4023] and a Subpoena Duces Tecum [Docket No. 4020], both directed to "Macomb County, by and through its County Executive Mark A. Hackel" (together, the "Subpoenas").

6.     On April 21, 2014, Macomb's counsel, along with counsel for Oakland County and Wayne County, met and conferred with counsel for the Retirees' Committee. During the meet and confer process, which continued throughout that week, counsel for the Counties and counsel for the Retirees' Committee were able to reach agreement on the scope and time frame of documents to be produced in response to the Subpoenas.  The agreement was memorialized in an email communication from Joseph G. Selby, Esq., dated April 24, 2014 (the "Letter Agreement") [Ex 1].  However, counsel for the Counties and counsel for the Retirees' Committee were unable to reach agreement regarding whether Macomb would be required to produce a privilege log.  *Id.*

7.     Macomb and Oakland County's counsel also had discussions with counsel for the Debtor, who agreed to dispense with the Counties' obligation to prepare and produce a privilege log of the documents withheld from production.[5]  [*See* Ex 2, April 30, 2014 e-mail from Debtor's counsel].  Similarly, counsel for the ad hoc DWSD bondholder group agreed that the Counties could forgo the expense and effort of privilege logs.  [*See* Ex 3, April 23, 2014 letter from Macomb's counsel].  In fact, discovery counsel for the Debtor, Geoffrey Irwin of Jones Day, has informed Macomb's counsel that other than the Retirees' Committee, no other

---

[5] Macomb and Oakland County discussed a reciprocal arrangement with the Debtor whereby the Debtor would also not be required to provide a log if Macomb was not otherwise required to supply a log to any other party.  During these discussions, it was understood that if Macomb was required to provide a log to any party, it would also require one from the Debtor.

party is insisting on a privilege log. The Retirees' Committee is thus the only outlier in this otherwise unanimous consensus that there are simply more important tasks to be done to bring this proceeding to a conclusion.

8. Following the meet and confer process, Macomb and its counsel engaged in the time- and labor-intensive process of collecting all documents possibly responsive to the Subpoenas, as modified by the Letter Agreement. *See* Affidavit of Sarah Lyons, Esq. of Dechert LLP, sworn to on May 9, 2014 and attached hereto as Exhibit 4 ("Lyons Aff.") ¶ 2. A team of eleven attorneys from the undersigned firm then engaged in the major undertaking of an approximately 240-man hour document review, which continued throughout the weekend, in order to comply with the discovery deadlines set forth in the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 4202]. *Id*.

9. On May 6, 2014, Macomb produced 27,640 pages of responsive, non-privileged documents (the "Production") and withheld approximately 2,000 documents as privileged. *Id*. ¶ 3. Macomb also filed its Responses and Objections to the Subpoenas (the "Responses") [Docket Nos. 4460 and 4461], which set forth an express objection to the Subpoenas' request for a privilege log. Macomb agreed to produce documents to the extent they existed in response to each of the Subpoenas' requests and withheld documents only on the basis of privilege. Because it has settled with the Debtors, the Retirees' Committee is a participant in a recently filed stipulation [Docket No. 4563] to extend certain deadlines under the applicable scheduling order, including deadlines for Plan objections and fact and expert discovery. By entering into this stipulation, the Retirees' Committee has acknowledged that it no longer has an

immediate need for discovery and it would thus have even less of an interest in burdening the Counties with supplying privilege logs.

10.      On May 7, 2014, the Retirees' Committee filed the Motion.  Counsel for the Retirees' Committee made no effort to confer with counsel for Macomb before filing the Motion less than 24 hours after receiving the Responses and Production and did not even have an opportunity to evaluate the Production before burdening the Court with the Motion.

## ARGUMENT

### I.     A Privilege Log is Unduly Burdensome in These Proceedings

11.      The Retirees' Committee stands alone in refusing to recognize that a privilege log is unduly burdensome under the unique circumstances of this case.  Indeed, the Federal Rules of Civil Procedure do not require privilege logs of the type the Motion seeks and the 1993 Advisory Committee comments to FRCP 26(b)(5) provide that:  "details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, *but may be unduly burdensome when voluminous documents are claimed to be privileged or protected*."  FED. R. CIV. P. 26 advisory committee notes (emphasis added).  Here, providing a document-by-document log with such details is without question unduly burdensome in that this task will require Macomb to divert resources to log over 2,000 individual entries,[6] while at the same time preparing its objections to the Plan, engaging in fact and expert discovery, conducting and defending numerous depositions and preparing for the confirmation hearing.  Lyons Aff. ¶ 3.

12.      The burden is amplified in light of the fact that there are many parties to this matter, and if the Counties are ordered to produce a privilege log, then all parties must be

---

[6] While the Retirees' Committee proposed a narrowing of the scope of documents to be logged individually, *see* Motion ¶ 5, the proposal would not significantly reduce Macomb's burden as the number of documents to be logged individually would still be voluminous and a re-review of all withheld documents would be required to determine which of the withheld documents fell within the Retirees' Committees' log specifications.

similarly required to engage in this exercise. While Macomb believes that no party should be expected to expend their limited resources on a privilege log while at the same time preparing for the upcoming confirmation hearing, there is simply no basis to impose this burden only on Macomb, a municipal entity with limited resources.

13.     This undue burden must be weighed against the minimal benefit a privilege log would provide to the Retirees' Committee. First, on or about April 26, 2014, the Retirees' Committee reached a settlement with the Debtor whereby the Fourth Amended Plan [Docket No. 4392] will provide significant caps on cuts to pension checks and guarantee lifetime health care stipends. As the Retirees' Committee is now obligated to support the Plan, it has no need for extensive discovery or a privilege log from Macomb. To the extent that any party has a legitimate need for discovery from the Counties, it is the Debtor, which will be called upon to address the Counties' objections to the Plan. If the Debtor can present its case without a privilege log, then surely the Retirees' Committee—whose interests are now aligned with the Debtor—can do the same.

14.     Second, the vast majority of documents identified as privileged post-date the Debtor's filing for bankruptcy, Lyons Aff. ¶ 4, and it is self-evident that attorney communications dated after the commencement of litigation are highly likely to be privileged. *In re Imperial Corp. of Am.*, 174 F.R.D. 475, 479 (S.D. Cal. 1997) ("it would be foolish to believe that very many of [the documents created during the course of the litigation] would be other than protected by the attorney-client privilege"); *Games2U, Inc. v. Game Truck Licensing, LLC*, MC-13-00053-PHX-GMS, 2013 WL 4046655, at *6 (D. Ariz. Aug. 9, 2013) ("the documents maintained by an attorney used in the context of [a litigation] are ordinarily privileged").

15. Finally, the nature of each of the categories of documents withheld as privileged demonstrates on their face that these types of documents are entitled to protection. The major categories of documents Macomb withheld are: i) communications with counsel regarding proposed treatments of DWSD under the Plan; ii) communications with counsel regarding legal strategy in this matter; iii) attorney work product; iv) communications between counsel for the Counties regarding coordination of their legal response to proposed treatments of DWSD under the Plan; and vi) consultant work product created for legal use and provided to counsel.[7] Lyons Aff. ¶ 5. None of the withheld documents were transmitted for commercial, business or political purposes. The fact that the Counties assert a valid common-interest is irrelevant. As recognized in *S.E.C. v. Thrasher*, 92 CIV. 6987 (JFK), 1996 WL 125661, at *1-2 (S.D.N.Y. Mar. 20, 1996), there is no benefit to gain from a "document-by-document log" of communications between counsel for clients sharing litigation interests.

16. Furthermore, courts have recognized that a "document-by-document" log cannot be required where, as here, the burden of such a log greatly outweighs its benefits. *In re Imperial Corp.*, 174 F.R.D. 475 (requiring production only of a "categorical" log instead of a "document-by-document log" where log would be voluminous and documents were created during the course of litigation); *S.E.C. v. Thrasher*, 1996 WL 125661, at *1 ("in appropriate circumstances, the court may permit the holder of withheld documents to provide summaries of the documents by category or otherwise to limit the extent of his disclosure. This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) the additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."); *Games2U,*

---

[7] Should the Court be inclined to hold that this description does not satisfy Macomb's burden to assert a privilege, Macomb requests that the Court consider Macomb's suggested alternatives to a document-by-document log.

*Inc.*, 2013 WL 4046655, at *7 ("document-by-document listing" not warranted for subpoena of documents maintained by an attorney). Should the Court be inclined to grant the Motion, Macomb requests that the Court consider alternatives to the burdensome "document-by-document log" the Retirees' Committee seeks to compel, such as a "categorical privilege log" or attorney affidavit.

## II. Macomb's Use of the Common Interest Doctrine is Appropriate and Irrelevant to Any Necessity for a Privilege Log

17. The Retirees' Committee does not challenge the applicability of the common interest doctrine[8] to communications between the Counties but sets forth an unsupported assumption that a privilege log is of particular importance because the Counties assert a common interest.[9] This assertion is illogical as Macomb properly applied the common interest doctrine to withhold only those documents that are otherwise privileged under the attorney-client or attorney work product privileges.

18. The common interest doctrine is an exception to the general rule that the attorney-client and attorney work product privileges are waived by disclosure of confidential information to third parties. *State Farm Mutual Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2813327, at *2 (E.D. Mich. July 14, 2010). Macomb's Production therefore properly applied the rule that "[i]f a communication or document is not otherwise protected by the attorney-client or work product doctrine, the common interest doctrine has no application," *In re Commercial Money Center Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 536 (N.D. Ohio 2008), and recognized that the common interest doctrine is not an independent privilege "confer[ring] an additional

---

[8] Numerous courts in the Eastern District of Michigan have recognized the doctrine. *See, e.g.*, *State Farm Mutual Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2813327, at *2 (E.D. Mich. July 14, 2010); *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010); *Dura Global Tech., Inc. v. Magna Donnelly Corp.*, No.07-CV-10945-DT, 2008 WL 2217682, at *5 (E.D. Mich. May 27, 2008).

[9] The Motion does not cite a single case to support this proposition. The cases cited on pages 6-7 of the Motion merely discuss or set forth the common interest doctrine, the scope of which the Retirees' Committee and Macomb do not dispute.

layer of privilege; rather, it protects the transmission of otherwise privileged material." *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010).

19.     In conducting its document review and Production, Macomb recognized that to retain privilege under the common interest doctrine, the parties' shared interest must be legal and not merely financial. *See, e.g., United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). Macomb did not withhold documents created for any purpose other than the seeking or providing of legal advice nor did it withhold documents merely because the attorney of a County was privy to the communication. *See* Lyons Aff. ¶ 5. Therefore, a privilege log would not expose improperly withheld documents.

## III.    The Retirees' Committee Must Pay for Any Privilege Log it Requires Macomb to Produce

20.     Under the circumstances described above, it is clear that producing a privilege log would place an undue burden on Macomb. When discovery requests impose an undue burden or expense, courts are "specifically empowered to enter protective orders . . . requiring the requesting party to pay the expenses of production." *In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 507 (1st Cir. 1982); *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 428 (S.D.N.Y. 2002) ("a court may protect the responding party from undue burden or expense by shifting some or all of the costs of production to the requesting party") (internal citation omitted); *Celanese Corp. v. E.I. DuPont de Nemours & Co.*, 58 F.R.D. 606, 612 (D. Del. 1973) (requesting party required to pay costs of expensive and time consuming document production); *Currie v. Moore-McCormack Lines, Inc.*, 23 F.R.D. 660, 661 (D. Mass. 1959) (ordering plaintiff to produce medical records but requiring defendant to bear the expense of furnishing copies).

## IV.    Macomb Did Not Waive Privilege

21.    The Retirees' Committee's half-hearted assertion that Macomb has waived privilege clearly fails.[10]   The 1993 Advisory Committee comments to FRCP 26(b)(5) state that withholding privileged materials "*without such notice*" may be viewed as a waiver of the privilege.  FED. R. CIV. P. 26 advisory committee notes (emphasis added); *See also In re RFD, Inc.,* 211 B.R. 403, 409-10 (Bankr. D. Kan. 1997) (failure to provide privilege log does not automatically constitute waiver).  Here, it is undisputed that Macomb provided notice both that it would withhold privileged documents *and* of its objection to the request for a privilege log.  As adequate notice of Macomb's position was provided, there has been no waiver.

WHEREFORE, based on the foregoing, Macomb hereby requests that the Court enter an order denying the Motion of the Official Committee of Retirees to Compel Production of a Privilege Log.

---

[10] The cases cited by the Retirees' Committee are inapposite as they do not prescribe waiver where the subpoena recipient gave notice of a good faith objection to producing a privilege log.  *See Cozzens v. City of Lincoln Park,* No. 8-11718, 2009 WL 152138 (E.D. Mich. Jan. 21, 2009) (plaintiffs failed to respond to discovery requests); *Hoxie v. Livingston County,*09-CV-10725, 2009 WL 5171845 (E.D. Mich. Dec. 22, 2009) (ordering production of privilege log).

Dated: May 9, 2014

DECHERT LLP

By: ____/s/ Allan S. Brilliant_____
Allan S. Brilliant
Stephen M. Wolpert
Debra D. O'Gorman
1095 Avenue of the Americas
New York, NY 10016
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
allan.brilliant@dechert.com
stephen.wolpert@dechert.com
debra.ogorman@dechert.com

*Attorneys for County of Macomb, Michigan*

**EXHIBIT 1**

# OGorman, Debra

| | |
|---|---|
| **From:** | Selby, Joseph G. [joseph.selby@dentons.com] |
| **Sent:** | Thursday, April 24, 2014 3:40 PM |
| **To:** | Brilliant, Allan; OGorman, Debra; 'Hupp, Craig'; 'Jaye Quadrozzi'; 'JFischer@CarsonFischer.com'; 'Weisberg, Robert'; 'Max J. Newman (newman@butzel.com)'; john.schapka@macombgov.org |
| **Cc:** | Millner, Robert B. |
| **Subject:** | Official Commitee of Retirees Document Requests to Macomb, Wayne and Oakland Counties |
| **Attachments:** | RE: Call at 5:30 pm Today (Eastern) with Official Committee of Retirees and Wayne, Oakland and Macomb Counties |

Dear all,

This e-mail is intended to memorialize understandings as to the subpoenas issued on behalf of the Official Committee of Retirees (the "Committee") to each of Macomb, Wayne and Oakland Counties on April 11, 2014, seeking production of documents pursuant to Federal Rules of Civil Procedure 45 and 30(b)(6).

As agreed between counsel for the Committee and Macomb County (in consultation with and on behalf of Wayne and Oakland Counties), each County:

> (i) will produce documents and provide written responses to the Committee's document requests on or before May 6, 2014; and
>
> (ii) will produce all documents responsive to the Committee's requests as limited below.

The Committee and the Counties still dispute whether each County must produce a privilege log. The Committee is of the view that each County must produce a privilege log for privileged communications and work product, provided that the Committee would agree, in order to facilitate the discovery process, such privilege logs need not schedule: (i) opinion work product by a lawyer, or (ii) privileged communications that are solely between a client and that client's lawyer. The Counties are of the view that they need not produce a privilege log even as limited under the Committee's offer.

As an aside, I re-attach my prior e-mail that sets forth Dentons production specifications. Please contact us should you or your clients not be able to produce documents in the requested format.

## Limited Scope & Time Frame for Document Requests 1 -11

The Committee agrees to limit the time frame for production to any period of time after February 1, 2013, except that request numbers 5 and 8 will continue to require that each County produce documents for any period of time after January 1, 2012.

In addition, to address the Counties' collective concern as to the breadth of certain document requests, the Committee agrees to limit the scope of the requests as follows (modifications are shown in redline format):

1.      All ~~documents~~ memoranda, summaries, analyses and evaluations relating to the County's evaluation of~~the~~ GLWA or any other actual or potential transaction involving the formation of a regional "authority" as described in M.C.L. § 124.282 to take over operation of water and sewer service from the DWSD, whether contained in e-mails, other electronically stored records or hard copies.

2.      All ~~documents~~ memoranda, summaries, analyses and evaluations relating to the terms or negotiation of any actual or potential transaction between the County and the City concerning the creation of a regional authority to take over water and sewer service from the DWSD, including but not limited to (a) draft leases and term sheets exchanged

between the County and City and (b) any draft or final memorandums of understanding exchanged between the County and City, whether contained in e-mails, other electronically stored records or hard copies.

3.      All communications between the County and the City or the State regarding a potential transaction relating to the DWSD, including but not limited to the County's requests for financial due diligence as well as data regarding the amount of pension liabilities.

4.      All ~~documents~~ memoranda, summaries, analyses and evaluations relating to the County's analysis of the City's Amended Plan and Amended Disclosure Statement, whether contained in e-mails, other electronically stored records or hard copies.

5.      All documents demonstrating the County's analysis of the condition of the retail system of the DWSD.

6.      All communications between the County and the City relating to information necessary for the County to complete a transaction to form a regional authority to assume operating control of the DWSD.

7.      All ~~documents~~ memoranda, summaries, analyses and evaluations concerning the County's analysis of projected savings of the resulting from operation of the DWSD by a regional authority, whether contained in e-mails, other electronically stored records or hard copies.

8.      All ~~documents~~ memoranda, summaries, analyses and evaluations relating to the County's analysis or projections of the DWSD's deferred capital expenditures, operating expenses, revenues and/or rates at any time after 2013, whether contained in e-mails, other electronically stored records or hard copies.

9.      All communications between the County and City relating to the payment or treatment of OPEB liabilities as part of any proposed transaction to form a regional authority to assume operating control of the DWSD.

10.     All ~~documents~~ memoranda, summaries, analyses and evaluations relating to the County's analysis of projected bond ratings of a new authority formed to operate the DWSD, whether contained in e-mails, other electronically stored records or hard copies.

11.     All ~~documents~~ memoranda, summaries, analyses and evaluations relating to actual or potential transactions between the County and any water or sewer service providing entity other than the City and the DWSD, whether contained in e-mails, other electronically stored records or hard copies.

Please note that document requests 3, 5, 6 and 9 remain unchanged.

Best Regards,

Joe

**DENTONS**   Joseph G. Selby
Managing Associate

D +1 212 632 5513  |  US Internal 15513
joseph.selby@dentons.com
Bio  |  Website

Dentons US LLP

Dentons is an international legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices, including IRS Circular 230.

**EXHIBIT 2**

| | |
|---|---|
| **From:** | Geoffrey S Irwin [gsirwin@JonesDay.com] |
| **Sent:** | Wednesday, April 30, 2014 11:42 AM |
| **To:** | OGorman, Debra |
| **Cc:** | Brilliant, Allan; Hupp, Craig; Fischer, Joseph; Jaye Quadrozzi; Weisberg, Robert; Lyons, Sarah; Wolpert, Stephen |
| **Subject:** | Re: Letter from Allan Brilliant regarding Discovery Requests |

Debra:

Here is my response to Mr. Brilliant's letter last week, taking his bullet points in turn:

As to privilege logs, we are in agreement that creating privilege logs is not a good use of the parties' resources under the circumstances, but plainly that needs to be a two way street. As to attorneys as custodians, we are agreeable in principle that a search of attorney files would likely yield large numbers of presumptively privileged documents, but we are concerned in this situation about whether county officials or advisors have been maintaining or keeping custody of the records that would be relevant to our issues, as opposed to allowing or assuming lawyers to maintain the records. I am not interested in burdening people with a search or logging of privileged communications between lawyers and clients, but we are concerned that recordkeeping practices would substantially limit the returns on searches that do not involve lawyers at all. Recognizing that an ordinary course business record does become privileged simply because it is transmitted to a lawyer, and that certain recordkeeping appears to have been delegated to lawyers here, I think we need more information on what you are proposing in this regard before we can agree. The fact that I would not require logging of priv log entries should allow you to propose a hybrid search of attorney files without substantial burden.

After conferring with colleagues, your date restriction of February 2013 is too late in time and we require 5 years of data on the types of information we are asking for (value, rates, plans for splitting the systems, etc).

Your proposed restrictions as to final reports and analyses, to the exclusion of email and other ESI, will not work for us. Communications informing and relating to these decisions, proposals, reports and analyses is often very relevant to the positions taken in final documents.

As to "collection and bad debt rates", unless I am misunderstanding your position I think the answer would be for you to indicate that there are no such records, if that is in fact the case. I don't think we shouldn't be permitted to make the request.

I have no issue with the concept of not producing the City's documents or data back to the City, but it seems to me that it is not quite that simple. The path that such transmissions take upon receipt by the counties, including the analysis or commentary attached to it in connection with internal circulation or transmission to others, is not something that I could agree to withdraw. If your proposal is consistent with that idea, that would probably be acceptable to me. I take from your proposal that, since you are collecting the communications between the City and the counties anyway for other parties, that we would get those as well, a clarification which is appreciated.

Yes, de-duping is fine.

And yes, Judge Rhodes confirmed on Monday that May 6 is the correct date for compliance.

Thanks. Geoff


Geoffrey S. Irwin
Partner
**JONES DAY® - One Firm Worldwide℠**
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Office +1.202.879.3768
gsirwin@jonesday.com

1

From: "OGorman, Debra" <Debra.O'Gorman@dechert.com>
To: "Geoffrey S. Irwin (gsirwin@jonesday.com)" <gsirwin@jonesday.com>,
Cc: "Fischer, Joseph" <JFischer@carsonfischer.com>, "Jaye Quadrozzi" <Quadrozzi@youngpc.com>, "Hupp, Craig" <CHupp@BODMANLAW.COM>,
"Weisberg, Robert" <RWeisberg@carsonfischer.com>, "Brilliant, Allan" <allan.brilliant@dechert.com>, "Lyons, Sarah" <Sarah.Lyons@dechert.com>,
"Wolpert, Stephen" <Stephen.Wolpert@dechert.com>
Date: 04/24/2014 01:45 PM
Subject: Letter from Allan Brilliant regarding Discovery Requests

Geoff,

Please see the attached letter from Allan Brilliant confirming the matters discussed during the call yesterday regarding the discovery requests served by the City of Detroit. We look forward to your response after you have had an opportunity to confer with your colleagues.


**Debra D. O'Gorman**
**Counsel**

**Dechert LLP**
1095 Avenue of the Americas
New York, NY 10036
+1 212-698-3593 Direct
debra.ogorman@dechert.com
dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.
[attachment "Document.pdf" deleted by Geoffrey S Irwin/JonesDay]


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

**OGorman, Debra**

| | |
|---|---|
| **From:** | OGorman, Debra |
| **Sent:** | Thursday, April 24, 2014 1:44 PM |
| **To:** | Geoffrey S. Irwin (gsirwin@jonesday.com) |
| **Cc:** | Fischer, Joseph; Jaye Quadrozzi; Hupp, Craig; Weisberg, Robert; Brilliant, Allan; Lyons, Sarah; Wolpert, Stephen |
| **Subject:** | Letter from Allan Brilliant regarding Discovery Requests |
| **Attachments:** | Document.pdf |

Geoff,

Please see the attached letter from Allan Brilliant confirming the matters discussed during the call yesterday regarding the discovery requests served by the City of Detroit. We look forward to your response after you have had an opportunity to confer with your colleagues.

**Debra D. O'Gorman**
**Counsel**

**Dechert LLP**
1095 Avenue of the Americas
New York, NY 10036
+1 212-698-3593 Direct
debra.ogorman@dechert.com
dechert.com

1



1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

ALLAN S. BRILLIANT

allan.brilliant@dechert.com
+1 212 698 3600 Direct
+1 212 698 0612 Fax

April 24, 2014

**VIA E-MAIL**

Geoffrey S. Irwin, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Re: *In re City of Detroit, Michigan* – Case No. 13-53846

Dear Geoff:

I am writing on behalf of my firm's client, Anthony V. Marrocco, Macomb County Public Works Commissioner, as County Agency under Public Act 342 of 1939 for Macomb County ("MCPWC"), as well as on behalf of Oakland County (together with MCPWC, the "Counties"), regarding the Interrogatories and Requests for Production of Documents (the "Discovery Requests") served by the City of Detroit (the "Debtor"), dated April 11, 2014. We appreciated the opportunity to discuss the Discovery Requests with you. Below, I outline what we discussed during the call, identifying those matters as to which we have reached agreement and those that are still under consideration.

- It was agreed that a privilege log will not be required. You also agreed that you do not consider attorneys for the Counties to be document custodians and that it is not necessary to search attorney files for what will inevitably be privileged documents.

- The Counties proposed a relevant time period for the Discovery Requests of February 1, 2013 to the present. We believe this is the appropriate time period because this is the first date on which the possible creation of a regional authority was discussed. You agreed that this date range seems reasonable and will confirm after consultation with your colleagues.

- With regard to the scope of the document requests in general, we note based on the requests for production that the Debtor is most interested in receiving "research, studies, reports, or analysis" related to various topics. We therefore propose that the Counties not be required to produce "All documents" on these topics and that the production be limited to documents that actually constitute "research, studies, reports, or analysis." We make this request to avoid the need to review large quantities of emails, many of which will simply be transmittal emails. You expressed some concern about this proposal because

19256227.1.BUSINESS



you are uncertain of what we are proposing not to produce. Please be assured that the Counties will provide any substantive, non-privileged communication that actually constitutes "research, studies, reports, or analysis" and will strike an appropriate balance between providing documents that reflect substantive communications while avoiding the need to go through and review every document that touches on these issues. Please let us know if this is agreeable.

- The Counties propose that the Debtor withdraw Request for Production No. 7 seeking information on "collection and bad debts rates." This request fails to take into account the fact that the Counties do not have retail customers and are wholesale providers whose customers are municipalities. It would serve no purpose to require the Counties to produce documents on this issue, nor, in any event, is this request relevant to any issue in this proceeding.

- With regard to documents provided by the Debtor to the Counties, the Counties propose that they not be required to produce back to the Debtor these same materials. Please be assured that the Counties have no intention of removing attachments to emails or otherwise deleting parts of a document that constitute materials provided by the Debtor. We simply wish to avoid the need to produce back to the Debtor all of the numerous documents provided by it that are also available from the Debtor itself or numerous other public sources. Also, although we did not discuss this on the call, you should be aware that in response to subpoenas served on the Counties by the Official Committee of Retirees and certain bondholders the Counties will be producing all communications between each county and the Debtor. Thus, in order to respond to these requests, many of the documents provided by the Debtor to the Counties will be included in the document production.

- The Counties proposed, and you agreed, that the document production will be de-duped so that multiple copies of the same document need not be supplied. You indicated that the Debtor also plans to de-dupe its production.

- Finally, you advised us that the Debtor is interpreting the April 21 case management order as requiring written responses and objections to all written discovery requests to be served by May 6, 2014, and that the April 25 date is no longer applicable. In light of this, we will plan to respond to the Discovery Requests on or before May 6.

19256227.1.BUSINESS



On a related matter, with regard to the subpoenas served on the Counties by the Official Committee of Retirees and certain bondholders, you confirmed that the Counties need not be concerned with maintaining confidentiality of documents previously provided by the Debtor on a confidential basis if such documents are required to be produced in compliance with these subpoenas.

Please confirm whether you can agree to the Counties' proposals as soon as you have had an opportunity to confer with your colleagues. Also, if anything contained in this letter does not accurately reflect our agreement, please let us know.

Sincerely,

Allan S. Brilliant

ASB
cc:    Joseph M. Fischer, Esq.
       R. Craig Hupp, Esq.
       Jaye Quadrozzi, Esq.
       Robert A. Weisberg, Esq.

19256227.1.BUSINESS

**EXHIBIT 3**

| | |
|---|---|
| **From:** | Horowitz, Gregory [GHorowitz@KRAMERLEVIN.com] |
| **Sent:** | Wednesday, April 23, 2014 6:30 PM |
| **To:** | Brilliant, Allan |
| **Cc:** | Caton, Amy; OGorman, Debra; 'Newman, Max'; Hupp, Craig; Jaye Quadrozzi; JFischer@CarsonFischer.com; Weisberg, Robert; Lyons, Sarah; Boufford, Angela Emmerling |
| **Subject:** | RE: City of Detroit |

Thank you, Allan.  Your letter accurately reflects our agreement, and I appreciate the heads-up about the City's interpretation of the scheduling order.

Best, Greg


Gregory A. Horowitz | Partner
T: 212-715-9571 F: 212-715-7571 E: GHorowitz@KRAMERLEVIN.com Kramer Levin Naftalis & Frankel
LLP | 1177 Avenue of the Americas | New York, New York 10036 <http://www.kramerlevin.com/>

This communication (including any attachments) is intended solely for the recipient(s) named
above and may contain information that is confidential, privileged or legally protected. Any
unauthorized use or dissemination of this communication is strictly prohibited. If you have
received this communication in error, please immediately notify the sender by return e-mail
message and delete all copies of the original communication. Thank you for your cooperation.

-----Original Message-----
From: Brilliant, Allan [mailto:allan.brilliant@dechert.com]
Sent: Wednesday, April 23, 2014 6:03 PM
To: Horowitz, Gregory
Cc: Caton, Amy; OGorman, Debra; 'Newman, Max'; Hupp, Craig; Jaye Quadrozzi;
JFischer@CarsonFischer.com; Weisberg, Robert; Lyons, Sarah; Boufford, Angela Emmerling
Subject: City of Detroit

Greg,
Attached is a draft letter reflecting our conversation on limiting the scope of the
discovery. Please either confirm by return email that the letter accurately reflects our
agreement or let us as to which matters do not accurately reflect our agreement.

In addition, this email is to confirm that you have agreed that under the Courts Fourth
Amended Scheduling Order responses and objections to the discovery as well the production of
documents are due on May 6, 2014.
Best,
Allan

Allan S. Brilliant
Partner
Dechert LLP
+1.212.698.3600 Direct
+1 212 698 0612 Fax
allan.brilliant@dechert.com
dechert.com

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**OGorman, Debra**

| | |
|---|---|
| **From:** | Brilliant, Allan |
| **Sent:** | Wednesday, April 23, 2014 6:03 PM |
| **To:** | Gregory Aaron Horowitz (ghorowitz@kramerlevin.com) |
| **Cc:** | acaton@kramerlevin.com; OGorman, Debra; 'Newman, Max'; Hupp, Craig; Jaye Quadrozzi; JFischer@CarsonFischer.com; Weisberg, Robert; Lyons, Sarah; Boufford, Angela Emmerling |
| **Subject:** | City of Detroit |
| **Attachments:** | Document.pdf |

Greg,
Attached is a draft letter reflecting our conversation on limiting the scope of the discovery. Please either confirm by return email that the letter accurately reflects our agreement or let us as to which matters do not accurately reflect our agreement.

In addition, this email is to confirm that you have agreed that under the Courts Fourth Amended Scheduling Order responses and objections to the discovery as well the production of documents are due on May 6, 2014.
Best,
Allan

Allan S. Brilliant
Partner
Dechert LLP
+1.212.698.3600 Direct
+1 212 698 0612 Fax
allan.brilliant@dechert.com
dechert.com



1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**ALLAN S. BRILLIANT**

allan.brilliant@dechert.com
+1 212 698 3600 Direct
+1 212 698 0612 Fax

April 23, 2014

**VIA E-MAIL**

Amy Caton, Esq.
Gregory Horowitz, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

Re: *In re City of Detroit, Michigan*, Case No. 13-53846

Dear Amy and Greg:

I am writing on behalf of my firm's client, Macomb County, by and through its County Agency, the Macomb County Public Works Commissioner, as well as on behalf of Wayne and Oakland Counties (collectively, the "**Counties**"), regarding the subpoenas served by Nuveen Asset Management and Blackrock Financial Management, Inc. (the "**Ad Hoc Bondholders**") on the Counties, dated April 11, 2014 [Docket No. 4002] (the "**Subpoenas**"). We appreciated the opportunity to discuss the Counties' responses to the Subpoenas with you on Monday. Below, I outline what we discussed and agreed to during the call.

First, we agreed that the Counties will produce documents dated February 1, 2013 or later. We further agreed that a privilege log will not be necessary and that the Counties need not produce any documents that are available publically or that can be accessed through the City of Detroit's (the "**City**") data room. Finally, we agreed to discuss entering into a protective order at a later time if the Counties determine that any responsive documents are of a sensitive or confidential nature. Thank you for your cooperation on these preliminary matters.

In addition to the specific agreements as to each document request detailed below, I note that the Counties understand that the Ad Hoc Bondholder's top priority is receiving any communications between the City and any of the Counties regarding the subjects

19243187.2.BUSINESS

US Austin Boston Charlotte Hartford Los Angeles New York Orange County Philadelphia Princeton San Francisco Silicon Valley
Washington DC  EUROPE Brussels Dublin Frankfurt London Luxembourg Moscow Munich Paris  ASIA Beijing Hong Kong



referenced in the Subpoenas, including but not limited to, the creation of a Regional Authority and DWSD pension liabilities. To that end, the Counties agree to produce those communications.

- Document Request No. 1: We agreed that the Counties will produce studies and/or analyses not protected by any privilege or the work product doctrine, including the inter-county analysis of the expenses and the capital studies performed by the Counties.

- Document Request No. 2: Regarding this request, you confirmed that the Ad Hoc Bondholders are interested in any analysis of the real extent of pension underfunding, how the underfunding is calculated and if the City is improperly allocating employees to the DWSD. We agreed that the Counties will produce any documents not protected by any privilege or the work product doctrine reflecting any communications with the City on this topic.

- Document Request No. 3: We agreed that the Counties will produce all analyses not protected by any privilege or the work product doctrine to the extent they exist.

- Document Requests Nos. 4 and 5: We agreed that the Counties will produce documents not protected by any privilege or the work product doctrine reflecting communications with the City.

- Document Request No. 6: We agreed that the Counties will produce any documents not protected by any privilege or the work product doctrine to the extent they exist, but it is unlikely that there are any responsive documents.

On a final note, we have been informed that the prevailing interpretation of the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Docket No. 4202] is that all discovery responses and objections are due on May 6, 2014. Consistent with that interpretation, we will be providing you with our responses and objections on May 6, 2014.

19243187.2.BUSINESS

# Dechert
LLP

Sincerely,

Allan S. Brilliant

ASB

cc: Joseph M. Fischer, Esq.
R. Craig Hupp, Esq.
Max Newman, Esq.
Jaye Quadrozzi, Esq.
Robert A. Weisberg, Esq.

19243187.2.BUSINESS

**EXHIBIT 4**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | Chapter 9 |
| Debtor | Hon. Steven W. Rhodes |

**AFFIDAVIT OF SARAH LYONS, ESQ. IN SUPPORT OF COUNTY OF MACOMB, MICHIGAN'S OPPOSITION TO MOTION OF THE OFFICIAL COMMITTEE OF RETIREES TO COMPEL PRODUCTION OF A PRIVILEGE LOG**

I am above the age of 18 and competent to testify in a Court of Law, and if called to do so, I would testify from my personal knowledge, under oath as set forth herein:

1.     I am an associate at Dechert LLP, attorneys for County of Macomb, Michigan, by and through Anthony V. Marrocco, Macomb County Public Works Commissioner, as County Agency for Water and Sewer Services under Public Act 342 of 1939 ("Macomb").

2.     Between April 21, 2014 and May 6, 2014, Macomb and its counsel engaged in a time- and labor-intensive process to collect and review all documents possibly responsive to the Subpoenas,[1] as modified by the Letter Agreement.  A team of eleven attorneys from Dechert LLP spent approximately 241.1 hours reviewing the almost 6,000 documents collected by Macomb and its counsel.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the County of Macomb, Michigan's Opposition to Motion of the Official Committee of Retirees to Compel Production of a Privilege Log.

3.    On May 6, 2014, Macomb produced 27,640 pages of documents[2] responsive to the Subpoenas and withheld or redacted approximately 2,098 documents on the basis of privilege.

4.    Of the approximately 2,098 documents withheld on the basis of privilege, only 361 are dated prior to July 18, 2013.

5.    The types of documents Macomb withheld as privileged are:  i) communications with counsel regarding proposed treatments of DWSD under the Plan; ii) communications with counsel regarding legal strategy in this matter; iii) attorney work product; iv) communications between counsel for the Counties regarding coordination of their legal response to proposed treatments of DWSD under the Plan; and vi) consultant work product created for legal use and provided to counsel.

6.    Preparing the privilege log requested by the Retirees' Committee from the above information would impose a real financial burden on Macomb, as well as significantly hinder Macomb's ability to prepare for the July 24, 2014 confirmation hearing.

Dated: May 9, 2014

_____
Sarah Lyons

Subscribed and sworn to before me
this 9th day of May, 2014

_____
Debra D. O'Gorman, Notary Public
My commission expires:  August 7, 2017
Qualified in Nassau County, New York

DEBRA D. O'GORMAN
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN NASSAU COUNTY
LIC. # 02OG5047623
COMMISSION EXPIRES AUGUST 7, 20____

_____
[2] 3,747 documents

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____
)
In re:                                  )
                                        )          Case No. 13-53846
CITY OF DETROIT, MICHIGAN               )
                                        )          Chapter 9
                    Debtor              )
                                        )          Hon. Steven W. Rhodes
_____ )

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 9, 2014, County of Macomb, Michigan's

Opposition to Motion of the Official Committee of Retirees to Compel Production of a Privilege

Log was filed with the Clerk of the Court using the CM/ECF system, which provides electronic

notification of such filing to all counsel of record.

Dated: May 9, 2014

                         DECHERT LLP

                         By:____/s/ Allan S. Brilliant_____
                         Allan S. Brilliant
                         G. Eric Brunstad
                         Stephen M. Wolpert
                         1095 Avenue of the Americas
                         New York, NY 10016
                         Telephone: (212) 698-3500
                         Facsimile: (212) 698-3599
                         allan.brilliant@dechert.com
                         eric.brunstad@dechert.com
                         stephen.wolpert@dechert.com

                         *Attorneys for County of Macomb, Michigan*