# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>CITY OF DETROIT, MICHIGAN,<br><br>Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes |

**LIMITED AND CAUTIONARY OBJECTION AND RESERVATION OF RIGHTS OF THE BANK OF NEW YORK MELLON, AS CUSTODIAN UNDER THE GLOBAL CUSTODY AGREEMENTS WITH: (A) THE GENERAL RETIREMENT SYSTEM; (B) THE POLICEMEN AND FIREMEN RETIREMENT SYSTEM; AND (C) THE BOARD OF TRUSTEES OF THE CITY OF DETROIT EMPLOYEES' BENEFIT PLAN, TO THE CONFIRMATION OF THE FOURTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

The Bank of New York Mellon (the "BNY Mellon"), as (a) custodian under the Global Custody Agreement with the Policemen and Firemen Retirement System of the City of Detroit ("PFRS"), (b) custodian under the Global Custody Agreement with the General Retirement System of the City of Detroit ("GRS"), and (c) custodian under the Global Custody Agreement with The Board of Trustees of The City of Detroit Employees' Benefit Plan ("Benefit Plan Trustees"), files this Limited Objection and Reservation of Rights ("Limited Objection") to the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan of Adjustment") [Docket No. 4392]. In support of its Limited Objection, BNY Mellon respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. As set forth in its Fourth Amended Disclosure Statement, GRS and PFRS (collectively, the "Retirement Systems") are each a single employer plan composed of a defined benefit plan and a defined contribution annuity plan:

The Retirement Systems consist of the General Retirement System of the City of Detroit (the "GRS") and the Police & Fire Retirement System of the City of Detroit (the "PFRS"). For financial statement purposes, the Retirement Systems are included as fiduciary trust funds of the City. Each system is a single-employer plan composed of a defined benefit plan and a defined contribution annuity program. The plans provide retirement, disability and pre-retirement death benefits to plan members and beneficiaries. The plans are administered in accordance with the City Charter, the Detroit City Code and union contracts, which assign the authority to establish and amend contributions and benefit provisions to each plan's Board of Trustees. As of the Petition Date, Section 11-103(1) of the City Charter established the composition of the GRS Board of Trustees, as follows, although the actual composition has been changed pursuant to certain collective bargaining dispute arbitration awards: (i) the Mayor; (ii) one City Council member selected by the City Council; (iii) the City Treasurer; (iv) five members of the GRS, elected by the GRS membership; (v) one City resident who is neither a City employee nor eligible to receive GRS benefits, appointed by the Mayor and approved by the GRS Board of Trustees; and (vi) one current GRS retiree who is receiving benefits under the GRS, elected by "retired City employees." Section 11-103(2) of the City Charter provided, as of the Petition Date, that the PFRS Board of Trustees shall consist of: (i) the Mayor or a designee of the Mayor; (ii) one City Council member selected by the City Council; (iii) the City Treasurer; (iv) the Chief of Police; (v) the Fire Commissioner; (vi) three firefighters who are PFRS members, elected by PFRS members who are firefighters; (vii) three police officers who are PFRS members, elected by PFRS members who are police officers; and (viii) two current PFRS retirees who are residents of the City and are receiving benefits under the PFRS, with one such retiree elected by "retired firefighters" and one elected by "retired police officers." The Retirement Systems' investment policies are governed in accordance with Michigan Public Act 314 of 1965 (as amended), the Public Employee Retirement System Investment Act, MCL §§ 38.1121 *et seq*.

Fourth Amended Disclosure Statement ("Disclosure Statement") at Article VII.B.5.[1]

2. BNY Mellon and PFRS are parties to the Global Custody Agreement, dated June 26, 2003 ("PFRS Global Custody Agreement"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, PFRS.

3. BNY Mellon and GRS are parties to the Global Custody Agreement, dated June 30, 2005 ("GRS Global Custody Agreement" and with the PFRS Global Custody Agreement, the "Retirement Systems Custody Agreements"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, GRS.

4. Post-petition, BNY Mellon and the Benefit Plan Trustees negotiated [and became parties to] the Custody Agreement with The Board of Trustees of The City of Detroit Employees' Benefit Plan ("Benefit Plan Custody Agreement", and with the Retirement System

---

[1] Disclosure Statement [Docket No. 4391].

Custody Agreements, the "Custody Agreements"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, the Employees' Benefit Plan.[2] Copies of the Custody Agreements were, at the request of the Debtor's counsel, provided to the Debtor's counsel.

5. The Plan of Adjustment provides hundreds of defined terms, including the following:

    a. 107. "**DRCEA**" means the Detroit Retired City Employees Association.

    b. 167. "**Indirect Employee Indemnity Claim**" means any claim against an employee or former employee of the City with respect to which such employee has an Allowed Claim against the City for indemnification and/or payment or advancement of defense costs based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law.

    c. 198. "**Other Unsecured Claim**" means any Claim that is not an Administrative Claim, a Convenience Claim, a COP Claim, a Downtown Development Authority Claim, a General Obligation Bond Claim, a GRS Pension Claim, an OPEB Claim, a PFRS Pension Claim, a Secured Claim or a Subordinated Claim. For the avoidance of doubt, Section 1983 Claims, Indirect Employee Indemnity Claims and Indirect 36th District Court Claims are included within the definition of Other Unsecured Claim.

    d. 225. "**RDPFFA**" means the Retired Detroit Police and Fire Fighters Association.

    e. 228. "**Related Entity**" means, with respect to any Entity, such Entity's Affiliates, predecessors, successors and assigns (whether by operation of law or otherwise), and with respect to any of the foregoing their respective present and

---

[2] At the time of the filing of this Limited Objection, the Benefit Plan Custody Agreement was being finalized. BNY Mellon is not certain if the Employee Benefit Plan covered by the Benefit Plan Custody Agreement is addressed in the Plan of Adjustment. BNY Mellon includes the Benefit Plan Custody Agreement in this Limited Objection and reserves all of its rights under that agreement.

former Affiliates and each of their respective current and former officials, officers, directors, employees, managers, attorneys, advisors and professionals, each acting in such capacity, and any Entity claiming by or through any of them (including their respective officials, officers, directors, employees, managers, advisors and professionals).

    f.    229.    "**Released Parties**" means, collectively and individually, the Retiree Committee, the members of the Retiree Committee, the Retiree Committee Professionals, the DIA Funding Parties and their Related Entities and the CFSEM Supporting Organization and its Related Entities.

    g.    238.    "**Retirement System Indemnity Obligations**" means any and all obligations of the City, as of the Petition Date, to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of any party in connection with any Causes of Action relating in any way to either GRS or PFRS and/or the management, oversight, administration or activities thereof, as such obligations may be as provided for in the City Charter of the City or other organizational documents, resolutions, employment contracts, applicable law or other applicable agreements.

6. As of May 9, 2014, certain exhibits to the Plan of Adjustment were not filed, including but not limited to: Exhibit D.II.6 - Executory Contracts and Unexpired Leases to be Rejected and Exhibit D.III.2 - Retained Causes of Action.

7. As described in more detail below, BNY Mellon files this Limited Objection to the Confirmation of the Plan of Adjustment, and objects to: (a) any modification, release, discharge, injunction against, or similar limitations of claims of BNY Mellon against persons or entities other than the Debtor, and (b) any modification or rejection of the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, as the Debtor is not a party to the Custody Agreements.

## II.   FACTUAL BACKGROUND

8. On July 18, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code.

9. The Debtor is not a party to the Custody Agreements, and BNY Mellon, as Custodian, did not file a Proof of Claim against the Debtor's Estate.

10. While the Debtor is not a party to the Custody Agreements, each of the Custody Agreements relates to funds created for the benefit of employees or former employees of the Debtor.

11. Each of the Custody Agreements provides, *inter alia*, the right of BNY Mellon to be paid for its services under the Custody Agreements and the right of BNY Mellon to be indemnified should certain events occur.

## III.   LIMITED AND CAUTIONARY OBJECTION TO CERTAIN PROVISIONS UNDER THE PLAN OF ADJUSTMENT THAT MAY SEEK TO (A) TREAT THE CLAIMS OF BNY MELLON AGAINST THIRD PARTIES AS CLAIMS AGAINST THE DEBTOR; (B) MODIFY THE CUSTODY AGREEMENTS; OR (C) MODIFY THE RIGHTS OF BNY MELLON UNDER THE CUSTODY AGREEMENTS OR THE LIABILITIES OF OTHERS UNDER THE CUSTODY AGREEMENTS

12. Chapter 9 incorporated substantially all of the chapter 11 provisions dealing with the confirmation of plans[3], as well as section 365 of the Bankruptcy Code.

13. Class 10 and Class 11 under the Plan of Adjustment address PFRS Pension Claims and GRS Pension Claims. The treatment of these claims makes it clear that the PFRS Pension Claims and the GRS Pension Claims include only claims of the beneficiaries of those pensions and not service providers to the GRS Pension or the PFRS Pension, like BNY Mellon, as Custodian. The Debtor's counsel confirmed this interpretation.

---

[3] *See* 11 U.S.C. § 901 incorporating substantially all of sections 1121- 1141.

14. Class 14 under the Plan of Adjustment, "Other Unsecured Claims" is described to expressly include "Indirect Employee Indemnity Claims." "Indirect Employee Indemnity Claim" is defined as "any claim against an employee or former employee of the City with respect to which such employee has an Allowed Claim against the City for indemnification and/or payment or advancement of defense costs based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law."

15. BNY Mellon cannot ascertain, and the Debtor has refused to verify, if any direct claims it may have under the Custody Agreements against parties other than the Debtor are included in the definition of "Indirect Employee Indemnity Claim."

16. BNY Mellon objects to inclusion and treatment in Class 14, or otherwise in the Plan of Adjustment, of any claim BNY Mellon may have "against an employee or former employee of the City with respect to which such employee has an Allowed Claim against the City for indemnification and/or payment or advancement of defense costs based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law." Any claim of BNY Mellon which is not a direct claim against the Debtor should not be treated as a "Claim" under the Debtor's Plan of Adjustment.

17. BNY Mellon believes that the Custody Agreements are not included in the definition of "Retirement System Indemnity Obligations" because the Debtor is not a party to any of the Custody Agreements. To the extent that the Plan of Adjustment is intended to include the indemnity provision under Custody Agreements within the definition of "Retirement System Indemnity Obligations," BNY Mellon objects to such treatment, and further objects to any

attempt of the Plan of Adjustment to reject, discharge, or modify the Custody Agreements or any provisions thereof.[4]

18. The Bankruptcy Code does not authorize debtors to modify, release, discharge or enjoin direct claims of non-creditors of the Debtor against third parties.

19. The Bankruptcy Code does not authorize debtors to reject or modify contracts to which the Debtor is not a party.

20. Section 105 of the Bankruptcy Code "does not provide an independent source of federal subject matter jurisdiction" and it "cannot be used to achieve a result not contemplated by the more specific provisions of" the Bankruptcy Code. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225, 237 (3d Cir. 2004); *see also In re W.R. Grace & Co.*, 591 F.3d 164, 170 (3d Cir. 2009) (*quoting Combustion Eng'g); In re Johns–Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately[.]"); *Wasserman v. Immormino (In re Granger Garage, Inc.),* 921 F.2d 74, 77 (6th Cir. 1990) (§ 105(a) is not a jurisdictional provision). Furthermore, section 105(a) does not authorize a bankruptcy court to create "substantive rights that would otherwise be unavailable under the Code." *U.S. v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992). Nor does it create "rights not otherwise available under applicable law," *Southern Ry. Co. v. Johnson Bronze Co.,* 758 F.2d 137, 141 (3d Cir. 1985). *See generally In re Morristown & Erie R.R. Co.,* 885 F.2d 98, 100 (3d Cir. 1989) ("section 105(a) is not a substantive source of rights"); *cf. In re Smart World Techn., LLC,* 423 F.3d 166, 184 (2d Cir. 2005) ("The equitable power conferred . . . by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy

---

[4] For example, *see* Article II.D.1 of the Plan of Adjustment.

Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.") (quoting *In re Dairy Mart Convenience Stores, Inc.,* 351 F.3d 86, 92 (2d Cir. 2003)).

WHEREFORE, The Bank of New York Mellon objects to: (a) any modification, release, discharge, injunction against, or similar limitations of claims of BNY Mellon against persons or entities other than the Debtor, and (b) any modification or rejection of the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, because the Debtor is not a party to the Custody Agreements.

### IV. LIMITED OBJECTION TO THE DISCHARGE, RELEASE AND INJUNCTION PROVISIONS UNDER THE PLAN OF ADJUSTMENT

21. Under the Plan of Adjustment, the defined term "Released Parties" may be intended by the Debtor, or interpreted, to include GRS, PRFS, their trustees and Related Parties. Furthermore, the defined term "Indirect Employee Indemnity Claim" may be intended by the Debtor, or interpreted, to include claims relating to the Custody Agreements.

22. The Plan of Adjustment may be interpreted, or intended by the Debtor, to treat BNY Mellon, as Custodian under the Custody Agreements, as a holder of Indirect Employee Indemnity Claims, and hence as a Class 14 Creditor under the Debtor's Plan of Adjustment, even though BNY Mellon, as Custodian under the Custody Agreements, is not a creditor of the Debtor and has not filed a proof of claim in this Bankruptcy Case.

23. BNY Mellon objects to the treatment under the Plan of Adjustment of (a) any claim of BNY Mellon against persons or entities other than the Debtor, and (b) any modification or rejection of the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, because the Debtor is not a party to the Custody Agreements.

24. The injunction provisions of the Plan of Adjustment seek to enjoin "Claimants, including but not limited to those holding Indirect Employee Indemnity Claims, from, *inter alia*:

**(i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the State, a State Related Entity, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, or a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.**

Plan of Adjustment, Article III.D.5.

25. Furthermore, the Plan of Adjustment seeks to "satisfy, discharge and release all Claims" provided treatment under the Plan:

a. Complete Satisfaction, Discharge and Release.

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt has accepted the Plan.

b.   Discharge.

In accordance with Section III.D.4.a, except as expressly provided otherwise in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and Liabilities against the City, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge will void any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged Claim; provided that such discharge will not apply to (i) Claims specifically exempted from discharge under the Plan; and (ii) Claims held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case.

Plan of Adjustment, Article III.D.4(a) and (b).

26.   Thus, the Plan of Adjustment would arguably discharge and release any claim of BNY Mellon against non-debtor third parties if those parties have indemnification rights against the Debtor, and would enjoin BNY Mellon from enforcing its rights against the non-debtor third parties.

27.   The Court of Appeals for the Sixth Circuit has held:

> The Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a **non-consenting <u>creditor's claims against a non-debtor</u>** to facilitate a reorganization plan. However, bankruptcy courts, "as courts of equity, have broad authority to modify **creditor-debtor** relationships."

*In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (internal citation omitted) (emphasis added, quoting *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990)).

28.   Nonconsensual third-party releases test "the outer reaches of a bankruptcy court's jurisdiction." *Johns-Manville Corp. v. Chubb Indemn. Ins. Co.* (*In re Johns-Manville Corp.*),

517 F.3d 52, 55 (2d Cir. 2008), *rev'd sub nom. Travelers Indemn. Co. v. Bailey*, 129 S.Ct. 2195 (2009) ("*Manville III*").

29. A bankruptcy court has no jurisdiction to release creditors' claims against non-debtor third parties where such claims have no effect on the *res* of the bankruptcy estate. Specifically, in 2008, the Second Circuit declared:

> [T]he non-debtor releases] were meant to provide . . . global finality for Travelers. But global finality is only as "global" as the bankruptcy court's jurisdiction. A court's ability to provide finality to a third-party is defined by its jurisdiction, not its good intentions. We have previously recognized that "a nondebtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code.

*Manville III,* 517 F.3d at 66, *rev'd on other grounds, Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (June 18, 2009) (internal citations and quotations omitted), *aff'd in part & rev'd in part*, 600 F.3d 135 (2d Cir. 2010). The Second Circuit further declared that:

> [A] bankruptcy court only has jurisdiction to enjoin third-party non-debtor claims that directly affect the *res* of the bankruptcy estate. In *MacArthur* we recognized that conclusion as the decisional pivot for both *MacArthur* and *Davis*. "[I]n both instances, third parties seek to collect out of the *proceeds* of Manville's insurance policies on the basis of Manville's conduct . . . . [P]laintiffs' claims are inseparable from Manville's own insurance coverage and are consequently well within the Bankruptcy Court's jurisdiction over Manville's assets."

*Manville III,* 517 F.3d at 66 (quoting *Johns-Manville,* 837 F.2d 89, 92-93 (2d Cir. 1988)).

30. A "nondebtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity." *Deutsche Bank AG v.*

*Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005). A nondebtor release "should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan . . . ." *Metromedia*, 416 F.3d at 143.

31. Consensual third-party releases are permissible where a creditor or interest holder agrees to a release even though it could vote to accept a plan without agreeing to the release. For example, a creditor's release of its claims against third parties is consensual where the creditor can "check a box" on a plan ballot to "opt in" to a third-party release separately from the creditor's vote in favor of the plan. *See In re Oneida Ltd.,* 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) (finding "no issue under applicable Second Circuit authority" with a plan that provided "for releases of claims held by creditors who affirmatively indicate their willingness to grant such releases by 'checking a box' on their plan solicitation ballots.").

32. While the "Release" provision of the Plan of Adjustment, Art. III.D.7, purports to require a "vote in favor" to be bound by the "release," the "discharge, release and injunction" provisions of Article III.D.4(a) and (b), and III.D.5 do not require an affirmative vote to be effective. Such non-consensual releases of by non-creditors of the Debtor in favor of non-debtors are not authorized under the Bankruptcy Code or applicable law.

33. BNY Mellon, as Custodian under the Custody Agreements, holds no Claims against the Debtor.

34. BNY Mellon objects to the treatment of any claims it may have under the Custody Agreement against parties other than the Debtor as Claims under the Plan of Adjustment.

35. BNY Mellon maintains that because the Custody Agreements are not contracts to which the Debtor is a party, the Debtor's Plan of Adjustment cannot alter the rights of BNY

Mellon thereunder, including but not limited to BNY Mellon's direct claims against parties other than the Debtor arising from the Custody Agreements.  See *Manville III,* 517 F.3d at 67, *rerev'd and remanded sub nom. Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009).

WHEREFORE, The Bank of New York Mellon, as Custodian under the Custody Agreements, objects to the confirmation of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit to the extent that the Plan of Adjustment violates the provisions of the Bankruptcy Code and applicable law by including, *inter alia*:  (a) non-consensual releases by non-creditors of the Debtor in favor of non-debtors; (b) the classification and treatment of claims against non-debtors as claims against the Debtor; and (c) the release and discharge of, and injunction against, claims of non-creditors against non-debtors.  For these reasons, The Bank of New York Mellon, as Custodian under the Custody Agreements, asks that confirmation of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit be denied it its current form, and for such other relief as is just.

## V. RESERVATION OF RIGHTS

36. BNY Mellon, as Custodian under the Custody Agreements, reserves its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this Objection.

Dated:  May 12, 2014

By: */s/ Scott A. Wolfson*
Scott A. Wolfson (P53194)
swolfson@wolfsonbolton.com
WOLFSON BOLTON PLLC
3150 Livernois, Suite 275
Troy, Michigan 48083
(248) 247-7103 - Telephone
(248) 247-7099 - Facsimile

|  |  |
|---|---|
| | and |
| *Pending admission under<br>E.D. Mich. LR 83.20 | Amy M. Tonti*<br>ATonti@ReedSmith.com<br>**REED SMITH LLP**<br>225 Fifth Avenue<br>Suite 1200<br>Pittsburgh PA 15222<br>Telephone: (412) 288-3131<br>Facsimile: (412) 288-3063<br><br>Counsel for The Bank of New York Mellon |