**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: | ) |
| | )   Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | )   Case No: 13-53846 |
| Debtor. | )   Hon. Steven W. Rhodes |
| | ) |

---

## CARLTON CARTER, BOBBY JONES, RODERICK HOLLEY & RICHARD T. WEATHERLY'S OBJECTION TO THE CITY OF DETROIT'S PROPOSED CHAPTER 9 PLAN

Resnick & Moss, P.C., on behalf of Carlton Carter, Bobby Jones, Roderick Holley and Richard T. Weatherly, (collectively, the "Court Officers") respectfully submit their Objection to the City of Detroit's proposed classification scheme for Indirect 36th District Court Claims and to the issuance of a permanent injunction upon the Court Officers or the holders of any Indirect 36th District Court Claims as provided in the Fourth Amended Plan For The Adjustment of Debts Of the City Of Detroit, dated May 5, 2014 (Doc. 4392) (the "Plan") filed by the City of Detroit, Michigan (the "City" or "Debtor").

## BACKGROUND FACTS

The 36th District Court and AFSCME Local 917 are parties to a collective-bargaining agreement (CBA) that applied to the employment of the Court Officers and had a term of June 30, 2003-June 30, 2006. Carlton Carter, Bobby Jones, Richard Weatherly and Roderick Holley were employed, as Court Officers by the 36th District Court. At the completion of their respective employment terms, the 36th District Court chief judge decided not to reappoint these individuals to another employment term. Two of the individuals, Bobby Jones and Carlton Carter, were not reappointed in 2004. The other two individuals, Richard Weatherly and Roderick Holley, were not reappointed in 2007. Each of the four individuals challenged the

termination of his employment by filing (at different times) grievances and demands for arbitration.

In 2007, AFSCME Local 917 filed an action against the 36th District Court in the Wayne County Circuit Court, seeking to compel the 36th District Court to arbitrate the termination of the employment of the Court Officers in accordance with their CBA. On June 12, 2008, the Circuit Court determined that the dispute was arbitratable and entered an order requiring that an arbitration hearing be held within 60 days. The 36th District Court appealed that order to the Michigan Court of Appeals. While that appeal was still pending, the arbitrator rendered two decisions. In his first decision, the arbitrator determined that the grievances were arbitrable, and in his second decision, issued six months later, the arbitrator determined that the 36th District Court did not have just cause for terminating, or more precisely for not reappointing, the Court Officers and directed the 36th District Court to reinstate each of the Court Officers to his former position and receive back pay effective from the date of termination or non-reappointment.

In 2009, the 36th District Court filed a separate action to vacate the arbitration awards on the ground that they violated the law and public policy, that the awards exceeded the arbitrator's contractual authority, and that the awards did not draw their essence from the CBA. The 36th District Court also alleged that the CBA did not apply to the grievances of Weatherly and Holley because their claims accrued after the CBA expired. AFSCME Local 917 moved for summary disposition contending that the disputed grievances were arbitrable, and also sought to enforce the arbitration awards. The trial court determined in a written opinion and order that the claims raised by AFSCME Local 917 were arbitrable and granted its motion for summary disposition, upholding the trial court's order reinstating the Court Officers to their former positions and awarding back pay.

The 36th District Court appealed the Circuit Court's decision. The Court of Appeals agreed that the case was arbitrable, but reversed the trial court's order reinstating the Court Officers to their former positions. AFSCME Local 917 appealed to the Michigan Supreme Court, who reversed the Court of Appeals and reinstated the trial court's order of reinstatement and the award of back pay. The matter was remanded to the trial court for a determination of the amount of back pay to award the Court Officers.

The Court Officers receive income from two separate Court sources; first they receive traditional wages, income from employment by the 36th District Court. Their wage income was reported to them in their annual W-2 forms. The Court Officers also received non-employee, independent contractor income from fees and costs paid by attorneys and litigants when they sought the assistance of the Court Officers in eviction proceedings in landlord/tenant type cases. This income was reported to the Court Officers on a form 1099. At the trial court, a dispute arose between the parties whether back pay included only the Court Officer's wage income or whether it also included the income they received on form 1099. The matter was referred to the arbitrator who, on August 15, 2013, ruled the Court Officers were entitled to receive back pay on both income sources. Accordingly, the Court Officers have valid legal claims against the 36th District Court. The Court officers have filed timely proofs of claim.

Legal proceedings continue between the 36th District Court and the Court Officers. The 36th District Court has commenced legal proceedings in the Circuit Court challenging the arbitrator's decision, and the Court Officers' attorneys have sought the entry of a judgment for the amount of the arbitrator's award.

The Court Officers recognize that the State has established a statutory scheme that provides a funding mechanism for the operations of the 36th District Court. They also acknowledge that the State has directed that the City shall be responsible to pay the operating

3

expenses of the Court to the extent that the Court is unable to fund its own operations from its own income, but however, the Court Officers contend that while the State can allocate the responsibility for the funding of Court operations to such governmental departments agencies and units as it sees fit, the State cannot insulate itself from and legislatively absolve itself of the final and ultimate responsibly for the payment of the wages to those persons who are employed within State Judicial Departments under State control. The Court Officers have reserved the right to seek payment of their claims from the State of Michigan, based upon the State's authority to control and supervise the Courts. Therefore, the Court Officers are justifiably concerned and object to the City's inexplicable attempts to prevent them from seeking their remedies from sources other than the 36th District Court or the City.

There are no ongoing discussions with either the City or the 36th District Court regarding the amount of the Court Officers' claims or the City's proposed classification scheme for the Court Officers' claims as Indirect 36th District Court claims. Nor are there any discussions with respect to the imposition of an injunction upon the Court Officers or other Indirect 36th District Court contained within the Plan of Adjustment of Debts dated May 5, 2014 (Doc. 4392) (the "Plan") filed by the City, Michigan (the "City" or "Debtor").

## SUMMARY OF OBJECTIONS

1. **THE CITY'S PLAN TREATMENT OF NON-CONSENTING CREDITORS' CLAIMS AGAINST A NON-DEBTOR IS INCONSISTENT WITH THE CODE AND/OR IS AN INAPPROPRIATE PROVISION OF ANY REORGANIZATION PLAN PURSUANT TO SECTION 1123(B)(6).**

Article III, D.5.a of the City's Plan seeks to prohibit the Court Officers from continuing their Employment Arbitration disputes in any capacity and against any party however unrelated that party is to the City, its assets or its finances. The Plan seeks to prohibit the continuation of their claims against the 36th District Court because the City suggests that the disputes have the potential to directly or indirectly affect City property. But, the City does not stop there, in

4

Article III, D.5.b, the Plan seeks to prohibit the Court Officers from pursuing their claims for back wages against the 36th District Court and the State of Michigan, despite the fact that the City neither controls nor supervises the 36th District Court, its Judicial Officers or the State of Michigan. Likewise, the City is not responsible for the budget or debts of the 36th District Court, and any claims against those entities would not impair the City's reorganization or threaten City property.

The City has, without explanation, sought to expand its request for an injunction far beyond the ordinary scope of such a request. The Plan which seeks an injunction against creditors pursuing their remedies from the State of Michigan is utterly without merit or justification. The Court Officers contend that the State of Michigan is ultimately responsible to pay their claims, if the 36th District Court or the City fails to pay the claims. The legal issue of whether the State of Michigan is responsible for the debts of its Courts has not been decided by the Courts and the City has offered no justification to enjoin the Court Officers from seeking their remedies from parties who are unrelated to the City, its assets or its finances. The Court Officers object to the Plan because the City is not justified in seeking this extraordinary injunction on behalf of the 36th District Court, and certainly not on behalf of or in protection of the State of Michigan. The City cannot establish a factual basis to warrant an injunction to shield the 36th District Court from the Court Officers' claims against it, or to shield the State of Michigan or its departments.

Article III, D.5.a and Article III, D.5.b of the City's Plan imposes an injunction against the holders of Indirect 36th District Court Claims. The Plan defines an "Indirect 36th District Court Claim" in Article I.A.157:

> "Indirect 36th District Court Claim" means any claim arising in connection with a Cause of Action against the 36th District Court, solely to the extent that (a) the 36th District Court is entitled to receive funding from the City to satisfy any such claim and (b) any

Claim for such funding by the 36th District Court is resolved pursuant to the Plan and the treatment accorded to any Allowed Other Unsecured Claims held by the 36th District Court pursuant to Section II.B.3.u."

The Plan's Injunction provisions state the following:

5.     Injunction.

On the Effective Date, except as otherwise provided herein or in the Confirmation Order,

a.     all Entities that have been, are or may be holders of Claims against the City, Indirect 36th District Court Claims or Indirect Employee Indemnity Claims, along with their Related Entities, shall be permanently enjoined from taking any of the following actions against or affecting the City or it property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property, the GLWA and its property (if a DWSD Transaction is consummated on or prior to the Effective Date) and the Related Entities of each of the foregoing, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):

1.     commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims and (C) Indirect Employee Indemnity Claims);

2.     enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the City or its property;

3.     creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the City or its property;

4.     asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the City or its property;

5.     proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and

6.     taking any actions to interfere with the implementation or consummation of the Plan.

b.     All Entities that have held, currently hold or may hold any Liabilities released or exculpated pursuant to the Plan will be permanently enjoined from taking any of the following actions against the State, the State Related Entities and the Released Parties or any of their respective property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the State, a State Related Entity or a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

Article III, D.5.a of the City's Plan seeks to prohibit the Court Officers from continuing its Employment Arbitration disputes in any manner and against any party. The provision prohibits the continuation of their claims against the 36th District Court because the City believes that the suit has a direct or indirect *affect on* City property. The City contends that the Court Officers' arbitration case affects the City and its property, because, at page 41 of the City's Amended Disclosure Statement, the City states: "For the avoidance of doubt, because, under Michigan law, the City is solely responsible for funding the 36th District Court and because the City owns certain property located in the 36th District Court, actions taken against the 36th District Court and/or its property constitute indirect actions against the City and/or its property."

While this statement is included in the City's Disclosure Statement, the same provisions were not included in the City's Plan.

The City's Plan seeks a broad injunction, one that prohibits the Court Officers not only from collecting their wages from the 36th District Court, but also preventing them from seeking redress from either the Chief Judge, whose decision led to their the unlawful termination of their employment, or from the State of Michigan, which the Court Officers believe is ultimately responsible for the payment of their wages if the 36th District Court, or its funding unit are unable to pay. The City's intention is clearly stated in Article III.B.5.b, which states:

> "All Entities that have held, currently hold or may hold any Liabilities released or exculpated pursuant to the Plan will be permanently enjoined from taking any of the following actions against the State, the State Related Entities and the Released Parties or any of their respective property on account of such released Liabilities:…"

The Plan defines "State Related Entities" to mean, collectively:

> "(a) all officers, legislators, judges and justices of the State; (b) the Governor of the State; (c) the Treasurer of the State; (d) all members of the Local Emergency Financial Assistance Loan Board created under the Emergency Municipal Loan Act, Michigan Compiled Laws §§ 141.931-141.942; (e) each of the State's agencies and departments; and (f) the Related Entities of each of the foregoing."

The City is not responsible to pay the costs of any legal claims raised against any of the State Related Parties, nor would the City be responsible to satisfy any judgment against any of the State Related Parties. The City utterly fails to explain or even address why it believes that the Court should enjoin legal proceedings against the State Related Parties, over whom the City has no authority, and whose debts the City is not responsible to pay.

The Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claim against a non-debtor to facilitate a reorganization

plan. *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) nevertheless, bankruptcy courts, "as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 109 L. Ed. 2d 580, 110 S. Ct. 2139 (1990). Consistent with Section 105(a)'s broad grant of authority, the Code allows bankruptcy courts considerable discretion to approve plans of reorganization. *Energy Resources Co*., 495 U.S. at 549. Section 1123(b)(6) permits a reorganization plan to "include any. . . appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). Bankruptcy Courts have approved plans that contain provisions enjoining claims against a non-debtor where the failure to do so might defeat the reorganization, and those Courts have held that such provisions may be consistent with the bankruptcy court's primary function. See Id. Under limited circumstances, an injunction has been stated to be "not inconsistent" with the Code, and is authorized by Section 1123(b)(6)." *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656-657, 2002 U.S. App. LEXIS 1204 (6th Cir. Mich. 2002).

But, while injunctive relief for non-debtors is not prohibited, it is an extraordinary remedy that is not to be granted except in unusual circumstances. In *Dow Corning Corp, Supra.*, the Michigan Supreme Court held that while injunctions such as the one proposed by the City may be an "appropriate provision" of a reorganization plan pursuant to Section 1123(b)(6), it cautioned that such an injunction is a dramatic measure to be used cautiously "we follow those circuits that have held that enjoining a non-consenting creditor's claim is only appropriate in "unusual circumstances**.**" See In *re Drexel Burnham Lambert Group, Inc*., 960 F.2d 285, 293 (2nd Cir. 1992). *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 656-657, 2002 U.S. App. LEXIS 1204 (6th Cir. Mich. 2002), citing, *In Re A.H.*

*Robins Co*., 880 F.2d at 702; *MacArthur v. Johns-Manville, Corp*., 837 F.2d 89, 93-94 (2nd Cir. 1988).

The *Dow Corning* Court went further and set forth a seven factor test to determine whether the Court should grant injunctive relief preventing continuation of claims against a party who was not a debtor in the bankruptcy case.

> "We hold that when the following seven factors are present, the bankruptcy court may enjoin a non-consenting creditor's claims against a non-debtor:
> (1) There is an identity of interests between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full and; (7) The bankruptcy court made a record of specific factual findings that support its conclusions."
> *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658, 2002 U.S. App. LEXIS 1204, 18-20 (6th Cir. Mich. 2002).

The City cannot sustain their burden to prove the presence of these seven factors. The facts and circumstances that illuminate the nature of the City's relationship to the 36th District Court fail to meet these requirements. The nature of the Court Officer's wage claims and those of the holders Indirect 36th District Court Claims, are neither unusual circumstances nor do they justify the imposition of the extraordinary relief requested by the City.

**A.  Lack of Identity of Interests.**

The factor, upon which the City primarily relies, is implicated when there is an "identity of interests" between the debtor and the non-debtor third parties whose protection is

sought. *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, (2002). This arises in cases where both the third-party and the debtor are, or may potentially be, defendants in the same suit. The type of joint liability which will give rise to an "identity of interest" so as to justify the imposition of an injunction against a claim by a creditor against a nondebtor will, in the words of the Sixth Circuit, "usually [involve] an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate." *In re Dow Corning Corp.,* 280 F.3d at 658. As for the extent of the indemnity relationship, the Sixth Circuit has specifically mentioned "absolute indemnity by the debtor on account of any judgment that might result against them in the case." *In re Eagle-Picher Industries, Inc.,* 963 F.2d at 861, *citing A.H. Robins, Inc. v. Piccinin,* 788 F.2d 994 (4th Cir. 1986).

The City is the statutory "funding unit" for the 36th District Court, but the 36th District Court is not a Department, Division, or unit of the City. In fact, the City has previously agreed that this is so, having stated in their motion to extend the Chapter 9 Stay to the 36th District Court, "The district court of the thirty-sixth judicial district ("the 36th District Court") is located at 421 Madison Avenue in the City. Accordingly, although the 36th District Court is legally distinct from the City, (emphasis added) the City is responsible for maintaining and financing the operations of the court…" See, Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, For Entry of An Order Extending the Chapter 9 Stay to the 36th District Court and Certain Related Parties., Docket No. 1027, Sept. 25, 2013.

Michigan case law establishes that the 36th District Court has no right of "absolute indemnity" against the City. In *Grand Traverse County vs. State*, several Michigan County Governments commenced a suit against the State of Michigan which purpose was to obtain a money judgment against the State to fund certain Court programs. The State of Michigan, who

was the funding unit for these Courts objected. The Court held that the State is not required to fund all trial court programs, and that the funding statute did not create a private right of action against a funding unit. *Grand Traverse County vs. State*, 450 Mich. 457; 538 N.W.2d 1 (1995).

Michigan Courts have gone further to hold that while a Court may have some authority to require a funding unit to appropriate funds for certain expenses of a Court, the Court's jurisdiction exists only where that funding is necessary to the operation of the Court and the performance of its core functions. In *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co*, the Michigan Supreme Court stated that the Courts have limited "inherent power" to compel the State to fund specific Court programs, but the "inherent powers" doctrine is limited to circumstances where "the overall operation of the court, or a constitutional function is in jeopardy because of the actions taken by the funding unit." <u>Hillsdale Co</u>, 423 Mich. 705, 717-719; 378 N.W.2d 744 (1985). In *46th Circuit Trial Court v. County of Crawford*, the Michigan Supreme Court concluded that the Michigan Constitution permits the judicial branch to directly compel the legislative branch to appropriate funds for specific Court programs when a court has not received sufficient funding to operate at a serviceable level. A court deciding an "inherent power" claim must set forth findings of fact identifying specifically those judicial functions that will be in jeopardy if the appropriation requested is denied, and conclusions of law indicating why such functions implicate the constitutional responsibilities of the judiciary. 476 *46th Circuit Trial Court v. County of Crawford*, Mich. 131; 719 N.W.2d 553; (2006),

The City has failed to establish how the Court Officers' arbitration awards would in any way jeopardize the functioning of the 36th District Court or jeopardize the reorganization. The City acknowledges that the 36th District Court generates its own funds. Debtor's Plan estimates that the 36th District Court will independently generate between an estimated budgeted surplus of $4.70 million in 2015, $9.6 million in 2016 and $10.4 million in 2017, with small incremental

increases in the Court's surpluses in each year thereafter. Certainly, the Court could approve a Plan that pays the Court Officer's claims without jeopardizing the City's core operations or the City's reorganization. Even if the judgments could threaten Court functions, it is the responsibility of the State to approve additional funding, although there is no obligation that it must do so. In the absence of a demand for indemnification by the 36th District Court, and in the absence of the 36th District Court's initiation of a suit to compel the City to fund the judgments, this is pure conjecture. The mere fact of the judgments, does not, by itself create any obligation of the City to indemnify the Court.

There is insufficient identity of interests between the City and the 36th District Court. The Court is a separate and distinct legal entity, and while the City is the statutory funding unit for the 36th District Court, no "indemnity relationship" exists. Michigan case law clearly establishes that the 36th District Court may not compel the City to pay its judgments and instead, the 36th District Court lacks a private right of action to seek a judgment against the City if it fails to pay money the 36th District Court believes it is owed. Even when State law requires the funding, the City's non-payment is without remedy. Therefore, the Court Officers' judgments against the 36th District Court, do not equate to the City's obligation to pay.

Finally, there is no factual basis for the suggestion that there is an identity of interests between the City and State Related Parties.

**B.  Lack of "Unusual Circumstances"**

Although a variety of factors may be considered when determining whether an injunction should be imposed in favor of a non-debtor, establishing the existence of "unusual circumstances" justifying extraordinary relief is uncommon. For the reasons stated above, the City cannot establish that it, ultimately, has any direct liability for the Court Officers' claims. The Court Officers have not sought to collect from the City. The City is not a joint debtor, nor is

it a surety for, or under any duty to indemnify, either the Court Officers or the 36th District Court. Even if such were the case, a limited joint liability on a debt is, by itself, anything but an "unusual circumstance." Michigan law establishes a funding unit for every Court in the State. These types of arrangements are anything but unusual. They are the opposite, routine and continuing relationships. "Suretyship is as old as commerce. And far from showing an "identity of interest," in many instances it will be just the opposite." *In re Nat'l Staffing Servs., LLC,* 338 B.R. 35, 37, 2005 Bankr. LEXIS 2732, 4-5 (Bankr. N.D. Ohio 2005).

### C. The non-debtor has not contributed substantial assets to the City's reorganization.

The second *Dow* Corning factor requires the Court to determine whether the non-debtor, for whose benefit the injunction is sought, has contributed substantial assets to the reorganization. Pursuant to the Debtor's Plan, the 36th District Court is not a source of significant income to the City's Plan. The Debtor's Disclosure Statement's Ten-Year Plan of Adjustment contains the City's estimated revenues from the 36th District Court. That document indicates that the Court is not expected to make a contribution to the City's finances in 2014, and will contribute only $5.1 million in 2015 and $8.2 million in 2016. The Debtor's Plan reflects that the 36th District Court will generate an estimated budgeted surplus of $4.70 million in 2015, $9.6 million in 2016 and $10.4 million in 2017, with small incremental increases in the surpluses in each year thereafter. These revenues, when compared with the amount of revenue generated by the City and devoted to the Plan, are not significant. However, in comparison with the amount of the Indirect 36th District Court claims, these numbers show that the 36th District Court has the independent means to satisfy the Indirect 36th District Court claims without contribution from the City.

**D. The injunction against claims against the non-debtor is not essential to reorganization.**

*Dow Corning* requires the Court to determine whether the City has established that the proposed injunction is essential to its reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor. The amount of the Indirect 36th District Court Claims against the 36th District Court that relate to employment disputes raised by AFSCME are estimated to be about $12,000,000.00. The 36th District Court independently generates revenue that meets or exceeds that amount over a term of several years. It cannot be reasonably stated that the City's Plan, in order to be successful, is dependent upon the imposition of an injunction against the holders of claims against the 36th District Court.

**E. The impacted class, or classes, has not overwhelmingly voted to accept the Plan.**

*Dow Corning* requires the Court to determine whether the impacted creditors have overwhelmingly approved the proposed Plan. The City's ability to establish this factor is unknown at this time. However, it is unlikely that impaired Class 14 unsecured claim holders will vote to approve the Plan by an overwhelming margin.

**F. The Plan fails to provide a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction.**

*Dow Corning* requires the Court to determine whether the Plan, in exchange for the imposition of an injunction, provides for the payment of substantially all of the claims of the affected class. The City's Plan estimates that the holders of Class 14 General Unsecured Claims will receive only about a 10-13% dividend. The Plan further provides that holders of such claims will not receive any payment until the 11th year of the Plan and will be required to wait up to 20 years for payment of these claims, regardless of the City's ability to pay such claims in the future.

**G. The Plan fails to provide an opportunity for those claimants who choose not to settle to recover in full.**

*Dow Corning* requires the Court to determine whether the Plan, in exchange for the imposition of an injunction, provides for an opportunity for affected class members who refuse to settle have the ability to recover their claims in full from other sources. The City's Plan specifically prohibits the holders of Class 14 General Unsecured Claims from receiving 100% payment of their claims regardless of the City's ability to pay such claims in the future. In fact, the injunction is so expansive in its scope, it completely forecloses the rights of the claimholders to seek out other persons or entities who may, in addition to the City and the 36th District Court, be held responsible for the claim. For example, there is no justification for such expansive injunctive relief in favor of the State Related Parties.

The City's Plan treatment of non-consenting creditor's claims against a non-debtor is inconsistent with the Code and/or is an inappropriate provision of any reorganization plan pursuant to Section 1123(b)(6). Accordingly, any provisions in Debtor's Plan contained at Article III.D.5 that seek to enjoin the Court Officers, the holders of any Indirect 36th District Court Claims or any other non-consenting creditors from pursuing their claims against the 36th District Court, or the State Related Entities should be stricken and Confirmation of the Plan should be denied.

**2. THE SCOPE OF THE INJUNCTION IS OVERBROAD.**

The scope of the Debtor's proposed injunction at Article III.D.5 is overbroad and overly restrictive; it unfairly and unreasonably prohibits these creditors from seeking to obtain a judgment determining the value of their claims and further prohibits the holders of such claims from seeking to liquidate their claims from the assets of other persons, or parties, other than the 36th District Court or the City, who may be jointly responsible to pay their claims. By illustration, Court Officers may be justified in seeking payment of such claims from other parties

16

based upon their actions or their obligations to pay, including the State of Michigan, or the Chief Judge of the 36th District Court. The Court Officers object to the City's proposed injunction provisions because they are capable of being interpreted to bar suit or collections against parties who have no relationship to the City, and the collection against such parties would not have any effect upon the Debtor's Plan.

3.    THE PLAIN IMPROPERLY CLASSIFIES THE CLAIMS OF THE COURT OFFICERS AND THE "INDIRECT 36TH DISTRICT COURT CLAIMS".

In the event that the Court overrules the Court Officers' objections, grants the City's request for an injunction prohibiting the Court Officers' from continuing their wage claims against the 36th District Court and in the event the Court is inclined to approve City's Plan that provides that their claims may only be paid according to the terms of the City's Plan, the Court Officers contend that the City's Plan should not be confirmed as proposed because the Plan unfairly discriminates against the Court Officers' claims, in particular, and the Holder's of Indirect 36th District Court Claims, in general.

The City's Plan provides for the payment of the claims of employees of the City far differently that it provides for the claims of employees of the 36th District Court. The City's Plan unfairly segregates the wage claims of 36th District Court employees in Class 14 Other Unsecured Claims, while it proposes to pay similar wage claims of City employees in full, and City employee pension claims significantly more. In doing so, the City's Plan unfairly discriminates in favor of the City's own employees without any valid explanation or justification.

The City's Plan provides for the payment of two types of City employee wages and compensation obligations. In Article IV.M., the City's Plan proposes to fully pay all valid prepetition and post petition workers' compensation claims. In Article II.B.3.q and Article II.B.3.r, the Plan classifies pensions claims of current and former city employees as unsecured debts within Classes 10 and 11. The Plan states that it will pay 100% of valid workers'

compensation benefits, and preserves the right to contest and dispute any unresolved workers' compensation claims. The Plan estimates that the holders of Class 10 pension claims may receive 39% - 50% of their claims and that Class 11 pension claims may receive 47% - 60 % of their claims.

In contrast, the City's Plan, separately classifies the Court Officers' claims, providing for them in Article II, B. 3. u. The Plan proposes to pay the Court Officers' valid pre-petition wage claims as Class 14 – Other Unsecured Claims. The City's Plan estimates that claims classified in Class 14, including the Court Officers' wage claims, and the wage claims of other 36th District Court employees, will receive less than 11- 13% of their claims.

Under the Bankruptcy Code, where legal rights differ materially from one type of claim to another, separate classification is required. As provided by Section 1122(a), except with respect to a class of de minimis claims established for purposes of administrative convenience, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. 1122(a). "To determine whether claims are 'substantially similar,' the proper focus is on 'the legal character of the claim as it relates to the assets of the debtor.'" *In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (quoting *In re AOV Indus., Inc*., 792 F.2d 1140, 1150 (D.C. Cir. 1986)). The requirements regarding the proper classification of claims apply in Chapter 9 proceedings. See *In re Jersey City Med. Ctr*., 817 F.2d 1055, 1060-61 (3d Cir. 1987).

The Court Officers contend that their wage claims, and the wage claims of other 36th District Court employees are substantially similar to the workers' compensation wage claims and also similar to the pension claims of the employees of the City. They object to any Plan that does not propose to treat the claims of the 36th District Court employees equally with the workers' compensation claims of City employees. The contend that as a condition of

confirmation, the Plan cannot pay claims of 36th District Court employees less than the amount that Class 10 or 11 employee pension claims are expected to receive.

The Plan, in Article IV. M.,  proposes to administer and pay "all valid claims for benefits and liabilities for which the City is responsible under applicable State workers' compensation law,  regardless of when the applicable injuries were incurred, in accordance with the City's prepetition practices and procedures and governing State workers' compensation law", and further provides that "the Plan shall not discharge, release or relieve the City from any current or future liability under applicable State workers' compensation law".

The legal character of the Court Officers' pre-petition wage claims are not distinguishable from the claims of City employees.  Both are claims for wages, both are for accrued wages earned for a period of time when the employee was unable to or prohibited to work, and both claim wages that were earned but unpaid for reasons that were not within the control of the employee.   The Court Officers' claims are easier to calculate since their claims for accrued "W-2 wages" from employment have been reduced to a final judgment and are not disputed, contingent or unliquidated.  Many of the City's workers' compensation claims are still in dispute, nevertheless, the Plan calls for 100% payment to City employee workers' compensation claims.   Of further note, claims against the City for worker's compensation benefits do not receive special protection under the Bankruptcy Code, such claims are capable of being discharged and they are not entitled to priority under 11 U.S.C. 507, yet the City fails to explain why such claims should be paid 100% and the Court Officer's claims paid 13% or less.

The City has no obligation to pay the employees of the 36th District Court, yet in unfairly discriminating between substantially similar employee wage claims, on April 25, 2014, the City filed a Motion for Relief from the Automatic Stay to Permit the Ordinary Course Liquidation of Disputed Worker's Compensation Claims.   The Court should note that in its motion the City

self-servingly stated that "the City believes that the prompt resolution and payment of Disputed Workers' Compensation Claims in good faith will promote the maintenance of a productive workforce by (a) bringing employees back to work as promptly as possible, (b) minimizing disputes with employees who the City relies upon to help implement its restructuring initiatives and (c) generally elevating employee morale.

The City's assertions in their Motion for Relief stand in stark contrast to their intentions with respect to the 36th District Court employees and operations. The City has shown absolutely no interest in "a prompt resolution and payment" of the compensation claims of the Court Officers or other holders of Indirect 36th District Court claims in good faith. The City has not contacted representatives of the holders of these claims to negotiate or discuss a resolution and without explanation or justification it seeks to further interfere with the rights of 36th District Court employees by an overreaching request for an injunction that would prevent the 36th District Court employees from seeking payment from other sources. It is obvious that the City doesn't consider the good faith resolution and payment of the employment wage claims of the employees of the 36th District Court to be a priority. The City's Plan demonstrates its lack of interest in promoting the maintenance of a productive workforce in the 36th District Court by "(a) bringing employees back to work as promptly as possible, (b) minimizing disputes with employees who the City relies upon to help implement its restructuring initiatives and (c) generally elevating employee morale."

The Plan's failure to classify the Court officer's claims with the workers' compensation claims and pay them equal dividends defies logic or explanation. The Plan's proposal to pay 100% of the accrued wage claims of the City's employees, while refusing to pay the claims of 36th District Court employees unfairly discriminates against the holders of Indirect 36th District Court Claims. To the extent that the Plan proposes to include the Court Officers' claims in

Section II.B.3.u with General Unsecured Claims, while proposing to pay 100% of the accrued worker's compensation wage claims of City employee's in Article IV. M. those provisions should be stricken, and Confirmation of the Plan should be denied.

**4.    THE PLAN FAILS TO PROVIDE FOR THE PAYMENT OF COURT OFFICER CLAIMS AS PRIORITY CLAIMS UNDER 11 U.S.C. 507(A)(4).**

Court Officers, Roderick Holley and Richard T. Weatherly filed timely proofs of claim. Each of these individuals have asserted $12,475.00 as a priority claim under 11 U.S.C. 507(A)(4).    The City's Plan fails to provide for the payment of 100% of their claims that are entitled to priority.

Creditors, Roderick Holley and Richard T. Weatherly, object to the Plan and request that the Court deny confirmation.  However, in the event that City obtains the Court's approval of its Plan, they request payment in full of $12,475.00 to Roderick Holley and to Richard T. Weatherly within a reasonable time following the effective date of the Plan.

**5.    THE PLAN FAILS TO LIST THE INDIVIDUAL CREDITORS WHO ARE HOLDERS OF INDIRECT 36TH DISTRICT COURT CLAIMS**

On March 11, 2014, the Court entered its  Order Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, docket no 2984.  That Order provides that the City, through Kurtzman Carson Consultants LLC (the "Balloting Agent") shall send a Solicitation Package, to any party that is entitled to vote on the Plan and that has filed a timely proof of claim, which claim has not been disallowed, waived or withdrawn prior to the date of the mailing of the Solicitation Packages and to any party that is entitled to vote on the Plan and that the City listed as holding a claim in the Second Amended List of Creditors and Claims (the "List of Creditors"), which claim is not listed as a contingent, unliquidated or disputed claim, and which claim has not been disallowed, waived or withdrawn prior to the date of the mailing of the Solicitation Packages.

On September 30, 2013, the City filed its Notice of Filing of Second Amended List of Creditors and Claims, Docket No. 1059. The City stated that the document constitutes the City's list of claims under Section 925 of the Bankruptcy Code. Included within Exhibit A to the Notice, is Schedule H - Litigation and Similar Claims, the City lists AFSCME Council 25, et al, on its Schedule H but fails to list each person or employee of the 36th District Court who have active disputes against the Court and who are the actual holders and beneficiaries of the Indirect 36th District Court Claims.

The Court Officers object to the Plan because the City fails to list each person or employee of the 36th District Court who have active disputes with the Court and who are the actual holders and beneficiaries of the Indirect 36th District Court Claims. The City improperly aggregates the claims of the Court Officers as well as many other 36th District Court employees, under one creditor's name, AFSCME Council 25, et. al. The net effect of the combination or aggregation of these claims under one creditor's name, limits the voting rights of the Court Officers as well as the voting rights of Indirect 36th District Court Claims. The Court Officers assert that each person or employee of the 36th District Court who has an interest in any dispute against the 36th District Court are entitled to vote on the City's Plan and are entitled to receive a Solicitation Package.

The Court officers request that the Court deny confirmation of the City's Plan and direct the City to amend its List of Creditors to identify and serve Solicitation packages to, each employee of the 36th District Court who, whether individually or by representation, is involved in any disputes against the 36th District Court.

**6. THE PLAN'S CLASSIFICATION OF CLAIMS AS DISPUTED, CONTINGENT AND UNLIQUIDATED IS IMPROPER.**

The City has listed the Court Officers' claims, under the name AFSCME Council 25, et al. and has improperly and in bad faith listed their claims as disputed, contingent and

unliquidated. The Court officers object to the City's classification of these claims in this manner.

The Court Officers, Carlton Carter, Bobby Jones, Richard Weatherly and Roderick Holley, were employed as Court Officers by the 36th District Court. On their behalf, their union, AFSCME Local 917, commenced proceedings against 36th District Court for reinstatement of employment and for an award of back wages. The Court Officers prevailed and were reinstated with back pay. The 36th District Court's appeals went to the Michigan Supreme Court, which affirmed the arbitration decision and remanded the case and ordered the Court to reinstate the Court Officers with back wages.

The Court Officers receive their wages in two ways, first they receive traditional wages, income from employment by the 36th District Court and second, they receive non-employee, independent contractor income from fees and costs paid by attorneys and litigants when they sought the assistance of the Court Officers in eviction proceedings in landlord/tenant cases. The 36th District Court continued its objections disputing whether back wages included the Court Officers' income from the fees and costs paid by attorney and litigants. The matter went before the arbitrator who, once again, ruled in favor of the Court Officers. The arbitrator also determined the amount of back wages to be awarded to them. Roderick Holley was awarded $1,408,200.13. Carlton Carter was awarded $1,621,760.41. Bobby Jones was awarded $1,039,242.40. Richard T. Weatherly was awarded $1,580,708.74.

The Court Officers assert that their wage claims are not subject to valid dispute. Their claims are not contingent on anything, the have already been determined by the arbitrator and affirmed by the Courts. Their claims are liquidated because the arbitrator has determined the amount of their claims. As a result, the Court Officers' are, by definition, not contingent, nor unliquidated.

Article VI.A.1. of the City's Plan provides: "…Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim. Without limiting the foregoing in any way, no partial payments and no partial Distributions will be made with respect to a disputed, contingent or unliquidated Claim...until the resolution of such disputes or estimation or liquidation of such Claim by settlement or by Final Order."

The City has listed the Court Officers' claims, under the name AFSCME Council 25, et al. and has improperly and in bad faith listed their claims as disputed, contingent and unliquidated. This Court should deny confirmation of the Plan, and should enter an order declaring the Court Officers' claims as Allowed Claims.

WHEREFORE, Carlton Carter, Bobby Jones, Roderick Holley and Richard T. Weatherly request that this Honorable Court grant their Objections to the confirmation of the Fourth Amended Plan of Adjustment of Debts of the City of Detroit, dated May 5, 2014; prohibit the City from seeking an injunction against non-consenting creditors from pursuing their claims against the 36th District Court or State Related Entities; and deny confirmation of the Plan.

/s/ H. Nathan Resnick
H. Nathan Resnick (P42424)
Mark E. Bredow (P49744)
Resnick & Moss, P.C.
Attorneys for Carlton Carter, Bobby Jones,
Roderick Holley and Richard T. Weatherly
40900 Woodward Avenue, Suite 111
Bloomfield Hills, MI 48304
Phone: 248-642-5400
Email: hnresnick@resnicklaw.net

Dated: May 12, 2014

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In Re:                                              )
                                                    )
                                                    )     Chapter 9
CITY OF DETROIT, MICHIGAN,                          )     Case No: 13-53846
Debtor.                                             )     Hon. Steven W. Rhodes
                                                    )
                                                    )
_____)

**CERTIFICATE OF SERVICE**
**CARLTON CARTER, BOBBY JONES, RODERICK HOLLER &**
**RICHARD T. WEATHERLY'S OBJECTION TO THE**
**CITY OF DETROIT'S PROPOSED CHAPTER 9 PLAN**


Counsel for Carlton Carter, Bobby Jones, Roderick Holler and Richard T. Weatherly certifies that on May 12, 2014, a copy of their Objection to The City of Detroit's Proposed Chapter 9 Plan was filed electronically with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, via the Court's ECF system, which will send electronic notification of such filing to Debtor's counsel, all attorneys listed on the ECF system, and interested parties of record.



Respectfully Submitted,

/s/ H. Nathan Resnick
H. Nathan Resnick (P42424)
Resnick & Moss, P.C.
Attorneys for Carlton Carter, Bobby Jones,
Roderick Holley and Richard T. Weatherly
40900 Woodward Avenue, Suite 111
Bloomfield Hills, MI 48304
Phone: 248-642-5400
Email: hnresnick@resnicklaw.net


Dated: May 12, 2014