UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-----------------------------------------------------------x
                                                           :
In re                                                      : Chapter 9
                                                           :
CITY OF DETROIT, MICHIGAN,                                 : Case No. 13-53846
                                                           :
                    Debtor.                                : Hon. Steven W. Rhodes
                                                           :
                                                           :
-----------------------------------------------------------x
```

# REPLY OF CREDITORS TO DEBTOR'S OBJECTION TO MOTION OF CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE DIRECTING THE DEBTOR TO COOPERATE WITH INTERESTED PARTIES SEEKING TO CONDUCT DUE DILIGENCE ON THE ART COLLECTION HOUSED AT THE DETROIT INSTITUTE OF ARTS

The undersigned creditors (the "**Creditors**") hereby file this reply (the "**Reply**") to the Objection [Docket No. 4290] (the "**Objection**") filed by the City of Detroit (the "**City**" or the "**Debtor**") in opposition to the Art Diligence Motion.[1] In support of this Reply and the Art Diligence Motion, the Creditors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Given the magnitude of the incremental value the transactions contemplated by the Proposals could generate, the City's opposition to the relief requested is troubling. The significant potential value that could be generated by the transactions contemplated by the Proposals – up to $2 billion – contradicts the City's repeated insistence that

---

[1] The "Art Diligence Motion" refers to the *Corrected Motion of Creditors for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code Directing the Debtor to Cooperate with Interested Persons Seeking to Conduct Due Diligence on the Art Collection Housed at the Detroit Institute of Arts* [Docket No. 3925]. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Art Diligence Motion.

"the approximately $816 million that will be provided under the DIA Settlement . . . is far more than anyone could 'reasonably expect' in the instant circumstances." (Obj. ¶ 19.) And, the City's blind adherence to the DIA Settlement in the face of the Proposals is even more troubling considering that the value the City would receive pursuant to the DIA Settlement is actually significantly less than $816 million, probably less than $500 million. (*See* Mot. ¶ 13.) Given the magnitude of this potential incremental value (as much as $1.5 billion), the City's adamant refusal to engage with the Interested Parties does not make sense and calls into question the City's motives. Although the City is correct that the Creditors can obtain (and are in the process of obtaining) information about the Art for purposes of contesting confirmation of the Plan as part of the formal Plan discovery process (Obj. ¶ 5), this is **not** a substitute for the City engaging in a process with the Interested Parties that would result in competitive bids – which, given the unique nature of the assets, is the only way to determine the real value of the Art. The Objection fails to articulate a reasonable basis for depriving the Court and parties in interest of this valuable information.

I. **Applying Section 105(a) to Direct the City to Cooperate with the Interested Parties Complements and Implements Three Important Confirmation Requirements**

2. The Creditors do not dispute that section 105(a)[2] must be applied (to use the City's phrase) "to complement and implement" other provisions of the Bankruptcy Code (Obj. ¶ 7), and the relief requested in the Art Diligence Motion does just that. As set forth in the Art Diligence Motion, directing the City to cooperate with the Interested Parties' due diligence efforts implicates three important confirmation standards that require the City to demonstrate that the Plan maximizes the value of the Art: (i) section 943(b)(7)'s best interests of creditors test, (ii) section 1129(b)(2)'s fair and equitable requirement and (iii) the requirement that settlements

---

[2] Unless otherwise specified, all section references are to sections of the Bankruptcy Code.

US_ACTIVE:\44473603\4\45259.0007

included in the Plan pursuant to section 1123(b)(3)(A) be fair, equitable and reasonable. The City does not and cannot dispute that cooperating with the Interested Parties to enable them to formulate binding offers would be the best way to assess whether the Plan (through the DIA Settlement) maximizes the value of the Art. Instead, the City takes the position that the chapter 9 confirmation requirements do not in fact require the City to maximize the value of this important non-core asset.

3. While the Creditors disagree with the City's interpretation of the best interests of creditors and fair and equitable standards,[3] it would be premature for the Court to decide these issues now. These are issues to be considered in connection with confirmation of the City's Plan. It is sufficient for purposes of the Art Diligence Motion, given the nature of the

---

[3] The City misstates the Creditors' interpretation of the "best interests" and "fair and equitable" standards. The Creditors are not arguing that "a chapter 9 debtor [is] required to maximize creditor recoveries by *any* available means" (Obj. ¶ 16) (emphasis added), or that the City can or should be "dismantled or liquidated" (Obj. ¶ 18). The applicable standard is more focused: in order to make a reasonable effort to repay creditors, a municipal debtor must, and creditors can reasonably expect a municipal debtor to, maximize the value of those assets that are not essential to the health, safety or welfare of the municipality's citizens. None of the case law cited by the City contradicts this interpretation. Although *Matter of Sanitary & Improvement Dist. No. 7*, 98 B.R. 970, 973 (Bankr. D. Neb. 1989) does provide that a chapter 9 debtor "may obtain confirmation of a plan, over objection, which does not utilize all of the assets of the estate to retire its obligations," (Obj. ¶ 16), the Creditors are not arguing that the City must utilize *all* of its assets to meet its obligations to creditors. In addition, the City's reliance on *Newhouse v. Corcoran Irrigation Dist.*, 114 F.2d 690 (9th Cir. 1940) for the proposition that a municipality's "assets and property . . . cannot be disposed of as in the ordinary bankruptcy proceeding" is misleading. (Obj. §§ 15, 18.) The full relevant sentence in *Newhouse* reads "But *such* assets and *such* property within the District cannot be disposed of as in the ordinary bankruptcy proceeding for the benefit of the debtor." 114 F.2d at 691 (emphasis added). This sentence is clearly referring back to a prior sentence stating "The *operative* assets of an irrigation district and the value of the land of the District, of course, have their evidentiary value as to the amount of money the District can reasonably raise to meet its indebtedness." *Id.* (emphasis added). Accordingly, *Newhouse* does not stand for the proposition that *none* of a municipal debtor's assets can be disposed of in a chapter 9 proceeding. The court merely held that that those assets necessary for a municipal debtor's operations – *i.e.,* its core assets – cannot be disposed of. Finally, the City's reading of *Fano v. Newport Irrigation Dist.* as "only requir[ing] that the City reasonably apply its taxing power to fund creditor distributions" (Obj. ¶ 18) is willfully myopic. In *Fano*, as is often the case, the municipal debtor's only non-operative asset was its taxing power; thus, in order for the plan to be "'equitable' and 'fair' and for the 'best interest of the creditors'," the debtor was required to raise taxes sufficient to pay its obligations. 114 F.2d at 566. The City cannot escape *Fano's* mandate to maximize the value of the City's primary non-core asset to meet its obligations to creditors simply because that asset is the Art instead of its taxing power.

US_ACTIVE:\44473663\4\45259.0007                         3

relief requested and the accelerated Plan confirmation schedule, that the Creditors have raised a colorable argument that the chapter 9 confirmation standards require the City to maximize the value of the Art, and the City can only meet its burden of proof in this regard if it determines the value of the Art by considering alternative transactions. Moreover, there is no dispute that the City needs to prove that the DIA Settlement is reasonable for purposes of Bankruptcy Rule 9019. (Obj. ¶ 19.) The City's bare assertions as to why the DIA Settlement is reasonable are insufficient; the Court must be presented with evidence of, among other things, the value of the Art, in order to determine whether the consideration to be received pursuant to the DIA Settlement is fair.

II. **The Purpose of the Relief Requested is to Allow the City and the Court to Consider the DIA Settlement in Comparison to Other Potential Market-Based Transactions,** *Not* **to Compel the City to Sell the Art or Alter its Plan**

4. Contrary to the City's allegations, the relief requested does not interfere with the City's property or infringe on the City's exclusive right to file a plan of adjustment. The Creditors are well aware (thanks to constant reminders by the City) of the considerable protections afforded to the Debtor by sections 904 and 941. Consistent with the strict mandates of these sections, the Creditors are not (and recognize that we, and the Court, are prohibited from) seeking to compel the City to enter into a particular Art transaction or alter the Plan. However, sections 904 and 941 do not act as an impenetrable shield the Debtor can hide behind (with all of its assets) indefinitely – "the day of reckoning comes at the plan confirmation hearing." *In re City of Stockton, Cal.*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013). The City will not be able to satisfy its burden of proof for confirmation if it continues to ignore the Proposals and refuses to cooperate with the Interested Parties. Further, the City has already put the Art in play and consented to the Court's "interference" with the Art to the extent necessary for the

US_ACTIVE:\44473603\4\45259.0007

Court to evaluate the reasonableness of the DIA Settlement;[4] accordingly, directing the City to cooperate with the Interested Parties so they can develop binding offers that will aid the Court's assessment, is well within the Court's authority, and does not run afoul of sections 904 or 941.

## CONCLUSION

WHEREFORE, the Creditors respectfully request that the Court enter the Order, substantially in the form attached as Exhibit A to the *Notice of Revised Proposed Order* [Docket No. 4519 filed by the Creditors on May 7, 2014, granting the relief requested in the Art Diligence Motion and herein and such other and further relief as the Court may deem just and proper.

DATED: May 12, 2014
Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

---

[4] Contrary to the City's contention, the Creditors are not arguing that the inclusion of the DIA Settlement in the Plan "give[s] license to anyone else to sell or compel the sale of that asset." (Obj. ¶ 12.) The Creditors are merely arguing that, by including the DIA Settlement in the Plan, the City has consented to the Court's "interference" with the Art, to the extent necessary for the Court to evaluate and, if approved, effectuate the proposed transaction. In addition, the Creditors are not arguing that the inclusion of the DIA Settlement in the Plan alone creates an obligation for the City to consider alternative transactions with respect to the Art. (*Id.*) Instead, this obligation stems from the best interests of creditors and fair and equitable standards, which require the City to prove that the Plan maximizes the value of the Art, as discussed above and in the Art Diligence Motion.

US_ACTIVE:\44473663\4\45259.0007
5

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance Company*

/s/Ryan Blaine Bennett
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Capital Assurance Inc. and Syncora Guarantee Inc.*

/s/ Howard S. Sher
Howard S. Sher, Esquire
Jacob & Weingarten, P.C.
Somerset Place
2301 W. Big Beaver Road, Suite 777
Troy, Michigan 48084
Tel: (248) 649-1200
Fax: (248) 649-2920
E-mail: howard@jacobweingarten.com

Vincent J. Marriott, III, Esquire
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 864-8236
Fax: (215) 864-9762
E-mail: marriott@ballardspahr.com

-and-

Matthew G. Summers, Esquire
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466
E-mail: summersm@ballardspahr.com

*Attorneys for Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.*

DRINKER BIDDLE & REATH LLP

By: /s/ Heath D. Rosenblat
Kristin K. Going, Esq.
Heath D. Rosenblat, Esq.
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Kristin.Going@dbr.com
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

-and-

Dirk H. Beckwith, Esq. (P35609)
32300 Northwestern Highway, Suite 230
Farmington Hills, Michigan 48334-1471
Telephone: (248) 539-9918
E-mail: dbeckwith@fosterswift.com

*Counsel for Wilmington Trust, National Association, as Successor Contract Administrator*

   /s/ Deborah L. Fish
ALLARD & FISH, P.C.
Deborah L. Fish
2600 Buhl Building
535 Griswold
Detroit, MI 48226
Telephone: (313) 961-6141
Facsimile: (313) 961-6142

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Jonathan M. Wagner
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile:  (212) 715-8000

*Counsel to Dexia Crédit Local and Dexia Holdings, Inc.*

By: */s/ Rick L. Frimmer*
Rick L. Frimmer
Karen V. Newbury
Michael W. Ott
**SCHIFF HARDIN, LLP**
233 S. Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone:  (312) 258-5600
Facsimile:  (312) 258-5600
E-mail:  rfrimmer@schiffhardin.com
E-mail:  knewbury@schiffhardin.com
E-mail:  mott@schiffhardin.com

*Attorneys for FMS Wertmanagement*

# CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2014 the *Reply of Creditors to Debtor's Objection to Motion of Creditors for Entry of an Order Pursuant to Section 105(A) of the Bankruptcy Code Directing the Debtor to Cooperate With Interested Parties Seeking to Conduct Due Diligence on the Art Collection Housed at the Detroit Institute of Arts* was filed and served via the Court's electronic case filing and noticing system to all registered users that have appeared in this Chapter 9 proceeding.

    /s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

Dated: May 12, 2014