**Exhibit A**

# TRUST INDENTURE

## AMONG

---

### THE CITY OF DETROIT,

### DETROIT WATER AND SEWERAGE DEPARTMENT

### AND

### U.S. BANK NATIONAL ASSOCIATION

### as Trustee

---

### RELATING TO THE OUTSTANDING SECURED OBLIGATIONS OF THE DETROIT WATER AND SEWERAGE DEPARTMENT (SEWAGE DISPOSAL SYSTEM)

### Dated as of June 1, 2012

7715460.13

# TABLE OF CONTENTS

| ARTICLE I | DEFINITIONS | 1 |
|---|---|---|
| ARTICLE II | FUNDS AND ACCOUNTS | 9 |
| SECTION 2.01 | Pledge of Trust Estate. | 9 |
| SECTION 2.02 | Establishment of Funds and Accounts. | 9 |
| SECTION 2.03 | Payments into the Accounts; Withdrawals. | 10 |
| SECTION 2.04 | Operation and Maintenance Fund; Use of Money in the Operation and Maintenance Fund. | 12 |
| SECTION 2.05 | Use of Money in the Debt Service Accounts. | 12 |
| SECTION 2.06 | Use of Money in the Reserve Accounts. | 13 |
| SECTION 2.07 | Use of Money in the Extraordinary Repair and Replacement Reserve Fund. | 14 |
| SECTION 2.08 | Use of Money in the Rate Stabilization Fund. | 15 |
| SECTION 2.09 | Use of Money in the Improvement and Extension Fund. | 15 |
| SECTION 2.10 | Use of Money in the Surplus Fund. | 15 |
| SECTION 2.11 | Priority of Funds and Accounts. | 15 |
| SECTION 2.12 | Construction Fund; Use of Money in the Construction Fund. | 16 |
| ARTICLE III | INVESTMENTS | 17 |
| SECTION 3.01 | Permitted Investments. | 17 |
| SECTION 3.02 | Tax Status of the Interest on Securities. | 18 |
| SECTION 3.03 | Allocation and Transfers of Investment Income. | 18 |
| SECTION 3.04 | Valuation of Investments. | 18 |
| ARTICLE IV | DISCHARGE OF LIEN | 19 |
| SECTION 4.01 | Discharge of Lien on Pledged Assets. | 19 |
| SECTION 4.02 | Defeasance of Securities. | 19 |
| SECTION 4.03 | Unclaimed Moneys. | 20 |
| ARTICLE V | RIGHTS AND REMEDIES OF HOLDERS UPON DEFAULT | 20 |
| SECTION 5.01 | Rights and Remedies of Holders. | 20 |
| SECTION 5.02 | Right of Holders to Direct Proceedings. | 21 |
| ARTICLE VI | THE TRUSTEE | 21 |
| SECTION 6.01 | Appointment. | 21 |
| SECTION 6.02 | Fees, Expenses. | 24 |
| SECTION 6.03 | Intervention in Litigation. | 25 |
| SECTION 6.04 | Resignation; Appointment of Successor Trustee; Successor Trustee Upon Merger, Consolidation or Sale. | 25 |
| SECTION 6.05 | Removal of Trustee. | 26 |
| SECTION 6.06 | Instruments of Holders. | 27 |

TRUST INDENTURE

i

| | | |
|---|---|---|
| SECTION 6.07 | Appointment of Separate or Co-Trustee. | 27 |
| ARTICLE VII | AMENDMENTS, SUPPLEMENTAL INDENTURES | 28 |
| SECTION 7.01 | Supplemental Indentures. | 28 |
| SECTION 7.02 | Amendments to Indenture; Consent of Holders. | 29 |
| SECTION 7.03 | Notice to and Consent of Holders. | 29 |
| ARTICLE | VIII MISCELLANEOUS | 30 |
| SECTION 8.01 | Limitation of Rights. | 30 |
| SECTION 8.02 | Severability; Conflicts. | 30 |
| SECTION 8.03 | Notices. | 30 |
| SECTION 8.04 | Additional Notices to Rating Agencies. | 31 |
| SECTION 8.05 | Payments Due on Non-Business Days. | 31 |
| SECTION 8.06 | Binding Effect. | 31 |
| SECTION 8.07 | Captions. | 31 |
| SECTION 8.08 | Governing Law. | 32 |
| SECTION 8.09 | Execution in Counterparts. | 32 |

TRUST INDENTURE

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 330 of 1282]

13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 4 of 37

## TRUST INDENTURE

THIS TRUST INDENTURE ("Indenture") dated as of June 1, 2012, among THE CITY OF DETROIT, a municipal corporation organized under the laws of the State of Michigan (the "City"), DETROIT WATER AND SEWERAGE DEPARTMENT, an enterprise agency of the City (the "Department") and U.S. BANK NATIONAL ASSOCIATION, a national banking association, as trustee, and its successors in trust and assignees (the "Trustee"), being authorized to accept and execute trusts of the character herein set out under and by virtue of the laws of the United States of America.

WHEREAS, the City, pursuant to Act No. 94, Public Acts of Michigan, 1933, as amended ("Act 94"), and Ordinance No. 18-01 adopted by the City Council of the City on October 18, 2001, which amended and restated certain prior ordinances (the "Ordinance"), has heretofore issued and intends to further issue its Securities, as defined herein, to finance and refinance improvements to its Sewage Disposal System and for other purposes permitted under Act 94 and the Ordinance; and

WHEREAS, pursuant to Section 20 of the Ordinance, a Trustee is required in order to assure prompt compliance by the City and the Department with all of the requirements, duties and obligations of the City and the Department with respect to the System and the Securities and to perform such other duties as may be provided by a Supplemental Action, as defined herein; and

WHEREAS, the Department and the System are subject to an Order dated November 4, 2011 and continued oversight of the United States District Court, Eastern District of Michigan, Southern Division, pursuant to which certain changes have been or will be made in the manner in which the Department and the System are managed, governed and operated; and

WHEREAS, in compliance with the Ordinance and in order to provide additional security for the payment of the Secured Obligations, the City and the Department desire to enter into this Indenture with the Trustee to hold in trust the amounts required or permitted to be transferred by the City and the Department to certain funds and accounts under the Ordinance for payment of the Secured Obligations; and

NOW, THEREFORE, in consideration of the premises and of the covenants and undertakings herein expressed, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

In addition to terms elsewhere defined in this Indenture, the following words and terms as used in this Indenture and the preambles hereto shall have the following meanings unless the context or use clearly indicates another or different meaning or intent and such definitions shall be equally applicable to both the singular and plural forms of the terms and words herein defined:

"**Act 94**" means Act 94, Public Acts of Michigan, 1933, as amended.

"**Ancillary Obligation**" means any Reimbursement Obligation and any Hedge Obligation.

"**Ancillary Obligation Fees and Expenses**" means any fees and expenses in connection with any Hedge or Financial Facility in the ordinary course of the transaction.

"**Bond Counsel**" means a firm of nationally recognized attorneys at law acceptable to the City and experienced in legal work relating to the issuance of bonds, the interest on which is excluded from gross income for federal income tax purposes under Section 103(a) of the Code.

"**Bond Insurance**" means any policy of insurance, contract of suretyship, guaranty or other agreement intended to protect Holders of particular Securities from loss arising from a failure of the City to timely pay principal (and premium, if any) of and interest on such Securities and pursuant to which the provider thereof is repaid solely as subrogee without creating any additional payment obligations (other than the payment of a premium or annual fee).

"**City**" means the City of Detroit, County of Wayne, State of Michigan.

"**Code**" means the Internal Revenue Code of 1986, as amended, and the rulings and regulations (including temporary and proposed) promulgated thereunder and under the Internal Revenue Code of 1954, as amended.

"**Commissioners**" means the Board of Water Commissioners of the City created by Article 7, Section 7.1201, of the Charter of the City. The Charter further provides that the Commissioners shall have charge of the Department. The Commissioners may act hereunder through the Director without further act or deed or through any other representatives authorized by resolution of the Commissioners to act on their behalf.

"**Construction Fund**" means the Construction Fund established under Section 14(a) of the Ordinance and Section 2.12 hereof. As further provided in Section 2.12 hereof, such Fund shall not be part of the trust estate held for the benefit of Holders, who shall have no interest in such Fund whatsoever, and any funds on deposit in or credited to such Fund are not and shall not be Pledged Assets.

"**Council**" means the City Council of the City.

"**Credit Enhancement**" means any Credit Facility and any Bond Insurance.

"**Credit Facility**" means any letter of credit, line of credit, purchase agreement, or other financial arrangement, other than Bond Insurance, intended to protect Holders of particular Securities from loss arising from a failure of the City to timely pay principal of and interest on such Securities.

TRUST INDENTURE

2

**"Custodial Agreement"** means a custodial agreement executed by and between a Custodian and the Department pursuant to Section 2.04a and Section 2.12b hereof relating to the Operation and Maintenance Fund and the Construction Fund, respectively.

**"Custodian"** means the entity and any successor entity appointed by the Director under Section 2.13a hereof and acting as such under a Custodial Agreement.

**"Debt Service Account"** means a Debt Service Account established in an Interest and Redemption Fund and may be restricted in meaning by referring to a Priority of Securities for which such Debt Service Account was established.

**"Debt Service Installment Requirement"** means, as of the first day of each month with respect to a Priority of Outstanding Securities and Ancillary Obligations, if any, the total for such month of the (i) Interest Installment Requirement, (ii) Principal Installment Requirement and (iii) Sinking Fund Installment Requirement, if any.

**"Default"** means the failure to pay any installment of the principal of or interest on any Security.

**"Department"** means the Detroit Water and Sewerage Department, an enterprise agency of the City, which operates, manages and accounts for the System.

**"Depository"** means any securities depository that is a clearing agency under federal law operating and maintaining, with its participants or otherwise, a book entry system to record ownership of book entry interests in Bonds, and to effect transfers of book entry interests in Bonds in book entry form, the use of which will not impair the federal tax exemption of interest on the Bonds, and includes and means initially The Depository Trust Company (a limited purpose trust company), New York, New York ("DTC").

**"Director"** means the Director of the Department or person acting in such capacity. The Director or his or her delegate shall act on behalf of the Commissioners and the Department hereunder unless otherwise specifically provided by resolution of the Commissioners.

**"Extraordinary Repair and Replacement Maximum Requirement"** means, for any Fiscal Year, 15% of the budgeted operation and maintenance expense of the System for such Fiscal Year less in the Fiscal Year any amount that is withdrawn from the Extraordinary Repair and Replacement Reserve Fund for paying a major unanticipated repair or replacement to the System pursuant to Section 13D of the Ordinance, but only in the Fiscal Year that such amount is withdrawn.

**"Extraordinary Repair and Replacement Minimum Requirement"** means, for any Fiscal Year, 1/12 of 3% of the budgeted operation and maintenance expense of the System for such Fiscal Year plus such amount as is necessary to restore to the Extraordinary Repair and Replacement Reserve Fund any amount credited to the Improvement and Extension Fund.

7713460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 333 of 1282]

13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 7 of 37

**"Extraordinary Repair and Replacement Reserve Fund"** means the fund required to be established under Section 12A(a) of the Ordinance.

**"Finance Director"** means the Finance Director of the City or person acting in such capacity.

**"Financial Facility"** means any Credit Enhancement, Liquidity Facility or combined Credit and Liquidity Facility.

**"Fiscal Year"** means the fiscal year and operation year of the City which begins on July 1 and ends on the following June 30 as it may be modified.

**"Government Obligations"** means obligations of the United States, its agencies, or United States government sponsored enterprises, or obligations the payment of principal and interest on which is unconditionally guaranteed by the United States or its agencies.

**"Hedge"** means any agreement by which the City is authorized or permitted by law to manage its debt service, either in connection with the issuance of Securities or in connection with its then Outstanding Securities, including, but not limited to, interest rate exchanges or swaps, hedges and similar agreements.

**"Hedge Obligations"** means the City's payment obligations under a Hedge other than the obligation to pay fees and expenses in the ordinary course of the transaction.

**"Hedge Receivable"** means any amount receivable by the City under a Hedge including any amount by reason of the early termination thereof.

**"Hedge Termination Payment"** means an amount payable by the City under a Hedge by reason of the early termination thereof.

**"Holder"** means the Person in whose name a Security is registered in the Registry.

**"Improvement and Extension Fund"** means the fund required to be established under section 12A(a) of the Ordinance.

**"Interest and Redemption Fund"** means any Interest and Redemption Fund established for a Priority of Securities.

**"Interest Installment Requirement"** means, as of the first day of each month in a Fiscal Year, with respect to a Priority of Securities and Ancillary Obligations, the amount of interest accrued and unpaid and to accrue to and including the last day of such month, on Outstanding Securities of such Priority and related Ancillary Obligations that constitute interest, if any, next coming due in such Fiscal Year.

TRUST INDENTURE

4

"**Junior Lien Bonds**" means all Securities issued pursuant to this Ordinance other than Senior Lien Bonds.

"**Junior Lien Obligations**" means all Junior Lien Bonds and all Ancillary Obligations that are not Senior Obligations.

"**Legal Investment**" means, with respect to any particular amounts, an investment that is authorized or permitted by law as an investment of such amounts.

"**Liquidity Facility**" means any letter of credit, line of credit, purchase agreement, or other financial arrangement intended to provide funds for the purchase of certain Securities in the event of a failure of the remarketing thereof but does not include any protection provided by a Credit Facility.

"**Mandatory Redemption Date**" means a date on which Term Securities in the principal amount of the applicable Mandatory Redemption Requirement are required to be redeemed under the Supplemental Action authorizing the sale of such Securities.

"**Mandatory Redemption Requirements**" means, with respect to any Term Securities, the principal amount of such Securities required to be called for redemption prior to their stated maturity as provided in the ordinance authorizing their issuance or in the resolution providing for the sale of such Term Securities.

"**Net Revenues**" means Revenues except for those Revenues credited to the Operation and Maintenance Fund.

"**Operation and Maintenance Fund**" means the Operation and Maintenance Fund established under Section 12A(a) of the Ordinance. As further provided in Section 2.04 hereof, such Fund shall not be part of the trust estate held for the benefit of Holders, who shall have no interest in such Fund whatsoever, and any funds on deposit in or credited to such Fund are not and shall not be Pledged Assets.

"**Operation and Maintenance Fund Requirement**" means a sum sufficient to provide for the payment of the next month's expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order.

"**Ordinance**" means Ordinance No. 18-01 adopted by the Council on October 18, 2001, which amended and restated certain prior Ordinances.

"**Outstanding**" unless otherwise provided in a Supplemental Action for particular Securities, means, as of any date and with respect to Securities of a particular Priority, all Securities of such Priority delivered under this Ordinance except:

TRUST INDENTURE

5

(i)     Securities of such Priority theretofore paid or redeemed or acquired by the City and surrendered to the Transfer Agent for cancellation

(ii)     Securities of such Priority that have matured or have been duly called for redemption and for the payment or redemption of which amounts, together with any unpaid interest, are held by the Trustee or the Transfer Agent for the payment thereof;

(iii)     Securities of such Priority that have been defeased in accordance with this Ordinance or a Supplemental Action; and

(iv)     Securities of such Priority in exchange for or replacement of which other Securities of such Priority have been authenticated and delivered pursuant to this Ordinance or a Supplemental Action.

**"Permitted Investment"** means, with respect to any particular amounts, a Legal Investment subject to such limitations as imposed under Article III of this Agreement or a Supplemental Action for the investment of such amounts.

**"Person"** means any natural person, firm, partnership, association, limited liability company, corporation, or public body.

**"Pledged Assets"** means:

(i)     Net Revenues;

(ii)     the funds and accounts established by or pursuant to the Ordinance except for the Operation and Maintenance Fund and the Construction Fund and any account thereof;

(iii)     investments of amounts credited to any fund, account or subaccount that is a Pledged Asset; and

(iv)     any income or gain realized from investments that are Pledged Assets to the extent that such income or gain is not a Net Revenue.

**"Principal Installment"** means, with respect to Securities of a Priority and related Ancillary Obligations, if any, the principal amount of such Securities that are not Term Securities and such of the Ancillary Obligations related to such Securities, if any, that constitute principal or other return of capital.

**"Principal Installment Requirement"** means, as of the first day of each month in a Fiscal Year, with respect to a Priority of Securities, the amount of Principal Installments accrued and unpaid and to accrue to, and including, the last day of such month (assuming that principal accrues on the basis of 30-day months in a year of 360 days) on Outstanding Securities of such Priority and related Ancillary Obligations, if any, next coming due in such Fiscal Year.

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 336 of 1282]

"**Priority**" means, with respect to any particular Secured Obligation, all other Secured Obligations having a lien on Pledged Assets on a parity with such Obligation.

"**Rating Agency**" means any nationally recognized statistical rating organization as defined in Section 3(a)(62) of the Securities Exchange Act of 1934, as amended.

"**Rate Stabilization Fund**" means the Fund that may be created by the Commissioners under Section 15 of the Ordinance.

"**Receiving Fund**" means the Fund required to be established and maintained by the City under Section 12A(a) of the Ordinance to which all Revenues of the System are to be credited and applied as provided in Sections 12 and 13A of the Ordinance and Section 2.02 hereof.

"**Registry**" has the meaning given that term in Section 3 of the Ordinance.

"**Reimbursement Obligation**" means the City's repayment obligations under a Financial Facility, and does not include the obligation to pay fees and expenses in the ordinary course of the transaction.

"**Reserve Account**" means a Reserve Account established in an Interest and Redemption Fund that may be restricted in meaning by referring to a Priority of Securities for which such Reserve Account was established.

"**Reserve Requirement**" means, for a Priority of Securities for which a Reserve Account has been established, the amount of Annual Debt Service, as defined in Section 2 of the Ordinance, on all Securities of such Priority then Outstanding for the current or any future Fiscal Year or the maximum amount permitted by the Code as provided below:

      (i)     for Senior Lien Bonds, the "amount of Annual Debt Service" shall be maximum Annual Debt Service;

      (ii)    for Second Lien Bonds, the "amount of Annual Debt Service" shall be average Annual Debt Service; and

      (iii)   for all other Junior Lien Bonds for which a Reserve Account is established, the "amount of Annual Debt Service" shall be the amount set forth in the Supplemental Action establishing such Reserve Account, and if no amount is set forth, the "amount of Annual Debt Service" shall be average Annual Debt Service.

"**Revenue Receipts Fund**" means the Revenue Receipts Fund established pursuant to Section 2.02 hereof.

"**Revenues**" means the revenues of the System, as further defined in and construed consistently with such term in Section 3 of Act 94, including:

7715460.13

(i) Hedge Receivables; and

(ii) income earned and gain realized from the investment of amounts in the various funds, accounts and subaccounts established under the Ordinance other than the Construction Fund for any Fiscal Year during which earnings on the Construction Fund are not credited to the Receiving Fund.

"**Second Lien Bonds**" means any Priority of Junior Lien Bonds that have a senior lien on Pledged Assets over other Junior Lien Bonds.

"**Secured Obligations**" means all Securities, Ancillary Obligations and Ancillary Obligation Fees and Expenses.

"**Securities**" means all Senior Lien Bonds and all Junior Lien Bonds.

"**Senior Lien Bonds**" means all Securities issued that have a senior lien on Pledged Assets.

"**Senior Lien Obligations**" means all Senior Lien Bonds and Ancillary Obligations in respect of Senior Lien Bonds and secured on parity therewith.

"**Sinking Fund Installment Requirement**" means, with respect to a Priority of Term Securities and as of the first day of each month in a Fiscal Year, the amount of any Mandatory Redemption Requirements next coming due in such Fiscal Year, including any Mandatory Redemption Requirement due at the maturity of such Term Security less the amounts credited to such Mandatory Redemption Requirements as the result of partial redemptions or purchase of such Term Securities.

"**SRF Junior Lien Bonds**" means all Junior Lien Bonds issued for the purpose of providing improvements to the System under the State's Revolving Fund and shall be the lowest Priority of Junior Lien Bonds.

"**State**" means the State of Michigan.

"**Supplemental Action**" means a sale order or other document signed by the Finance Director pursuant to authorization by the City, which shall be the Ordinance if the action of the Finance Director is therein authorized, and also means an order or resolution of the Commissioners or a written directive of the Director, as the same may hereafter be authorized by statute or court order.

"**System**" means the Sewage Disposal System of the City, operated, managed and accounted for as a separate enterprise fund through the Department, including all plants, works, instrumentalities and properties, used or useful, in whole or in part, in connection with the collection, interception, treatment and disposal of sewage, or the administration or management

7715460.13
[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 338 of 1282]
13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 12 of 37

thereof, all as the same now exist or are hereafter provided for, together with all additions, extensions, repairs and improvements thereto hereafter acquired.

"**Tax Certificate**" means the tax compliance and non-arbitrage certificate relating to the federal arbitrage rules under Section 148 of the Code and the Treasury Regulations promulgated thereunder with respect to the Securities.

"**Term Securities**" means, with respect to Securities of a Priority, any maturity of such Securities that has Mandatory Redemption Requirements.

"**Transfer Agent**" means, as to any particular Securities, the bank or banks selected by the Finance Director to perform the duties provided for the Transfer Agent with respect to such Securities.

"**Treasury Regulations**" means the regulations promulgated by the United States Department of Treasury for the interpretation of the Code.

"**Trustee**" means U.S. Bank National Association, a national banking association, acting in its capacity as the trustee under this Indenture, and any permitted successor trustee under Article VI of this Indenture.

## ARTICLE II
## FUNDS AND ACCOUNTS

SECTION 2.01     Pledge of Trust Estate.

The Pledged Assets for the Securities are pledged to the Trustee for the payment of the Securities in accordance with the terms and provisions of the Ordinance, any Supplemental Action relating to Securities and this Indenture. This pledge will be valid and binding from and after the date of execution and delivery of this Indenture, and the Pledged Assets will immediately be subject to the lien of such pledge without any physical delivery thereof, recordation of this Indenture or further act, and the lien of such pledge will be valid and binding as against all parties having claims of any kind in tort, contract or otherwise against the City, regardless of whether such parties have notice thereof.

SECTION 2.02     Establishment of Funds and Accounts.

a.     Pursuant to the Ordinance, the City hereby establishes the following funds and accounts, which, except for the Operation and Maintenance Fund and the Construction Fund, shall be held in trust by the Trustee pursuant to the terms of this Indenture:

(a)     Receiving Fund;

(b)     Operation and Maintenance Fund;

(c)     Senior Lien Bond Interest and Redemption Fund consisting of a:

TRUST INDENTURE
9

          (1)     Senior Lien Debt Service Account; and

          (2)     Senior Lien Bond Reserve Account;

(d)     Second Lien Bonds Interest and Redemption Fund consisting of a:

          (1)     Second Lien Debt Service Account; and

          (2)     Second Lien Bond Reserve Account;

(e)     Such Interest and Redemption Funds as are established by Supplemental Action for other Priorities of Junior Lien Bonds;

(f)     SFR Junior Lien Bonds Interest and Redemption Fund consisting of a:

          (1)     SFR Junior Lien Debt Service Account;

(g)     Extraordinary Repair and Replacement Reserve Fund;

(h)     Rate Stabilization Fund (but only if the Commissioners direct the Trustee to establish this Fund);

(i)     Improvement and Extension Fund;

(j)     Surplus Fund; and

(k)     Construction Fund.

b.     There also is established with the Trustee hereunder a Fund designated the "Revenue Receipts Fund." Such Fund shall be held and administered by the Trustee in trust, for the sole purpose of receiving all Revenues collected by the Department which are not deposited directly into the Receiving Fund and transferring such Revenues to the Receiving Fund as hereinafter provided. Such Revenues may be temporarily commingled with gross revenues of the Department's Water Supply System.

Revenues of the System deposited in the Revenue Receipts Fund shall be transferred by the Trustee to the Receiving Fund within two (2) business days after receipt of written direction to do so from the Department on a form acceptable to the Trustee.

c.     Additional Funds and Accounts may be established by Supplemental Action for other Priorities of Securities or for other purposes not inconsistent with the purposes and intent of this Indenture.

SECTION 2.03       Payments into the Accounts; Withdrawals.

Pursuant to the Ordinance, all Revenues of the System shall be deposited with the Trustee and, with the exception of Revenues transferred to the Operation and Maintenance Fund as directed by the Department as herein provided, held in trust pursuant to the terms of this Indenture. As of the first day of each month, amounts credited to the Receiving Fund shall be

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 340 of 1282]

13-53846-tjt   Doc 4674-1   Filed 05/12/14   Entered 05/12/14 22:37:39   Page 14 of 37

transferred seriatim into the Operation and Maintenance Fund, the Bond Interest and Redemption Funds, Debt Service Accounts, Reserve Accounts, Extraordinary Repair and Replacement Reserve Fund and Improvement and Extension Fund, all of which are held by the Trustee pursuant to Section 2.02 of this Indenture, as follows:

First: to the Operation and Maintenance Fund, a sum as determined in the sole discretion of the Department and certified to the Trustee as sufficient to provide for the payment of the next month's expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order;

Second: to the Senior Lien Bond Debt Service Account, an amount that, when added to amounts then on deposit in such account, shall equal the Debt Service Installment Requirement for Senior Lien Obligations as of the first day of such month;

Third: to the Senior Lien Bond Reserve Account, an amount that when added to amounts then on deposit in such account shall equal the Reserve Requirement for Senior Lien Bonds;

Fourth: to the Interest and Redemption Fund established for each Priority of Junior Lien Bonds, beginning with the Second Lien Bonds and continuing in descending order of Priority to, and including, the SRF Junior Lien Bonds, as follows:

First: to the Debt Service Account established for such Priority, an amount that, when added to amounts then on deposit in such account, shall equal the Debt Service Installment Requirement for Junior Obligations of such Priority as of the first day of such month; and

Second: to the Reserve Account, if any, established for such Priority an amount that when added to amounts then on deposit in such account shall equal the Reserve Requirement for such Priority of Junior Lien Bonds; and

Fifth: to the Extraordinary Repair and Replacement Reserve Fund, the amount of the Extraordinary Repair and Replacement Minimum Requirement to the extent that the balance thereof is less than the Extraordinary Repair and Replacement Maximum Requirement.

In any month, funds on deposit in the Receiving Fund in excess of the requirements set forth above in this Section 2.03 may, upon the direction of the Department, be transferred to the Improvement and Extension Fund (provided that no amount shall be deposited to the Improvement and Extension Fund or credited thereto for so long as a borrowing from the Extraordinary Repair and Replacement Reserve Fund remains unpaid). Any amounts remaining in the Receiving Fund as of the last day of each Fiscal Year shall be deposited in the Surplus Fund. If the Commissioners direct the Trustee to establish a Rate Stabilization Fund under this Indenture, the Commissioners may direct the Trustee to make deposits from the Receiving Fund

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 341 of 1282]

13-53846-tjt   Doc 4674-1   Filed 05/12/14   Entered 05/12/14 22:37:39   Page 15 of 37

into the Rate Stabilization Fund pursuant to the authority granted to the Commissioners in Section 15 of the Ordinance.

Any funds authorized to be withdrawn from any Fund or Account hereunder by the Department upon its written request to the Trustee may be so withdrawn pursuant to any arrangement mutually acceptable to the Trustee and the Department, including a checking arrangement under which checks may be written by the Trustee to such payees as are directed in writing by the Director or her or his authorized representative.

SECTION 2.04     Operation and Maintenance Fund; Use of Money in the Operation and Maintenance Fund.

a.     The Operation and Maintenance Fund shall be established as a custodial account solely between the Department and a Custodian. The Department is hereby authorized to execute a Custodial Agreement outside this Indenture in such form and upon such terms as will allow the Department to satisfy the operation and maintenance requirements of the System as herein and as may hereafter by the Department be provided.

b.     The Operation and Maintenance Fund shall not be part of the trust estate held for the benefit of Holders, who shall have no interest in such Fund whatsoever. Any funds at any time on deposit in or credited to the Operation and Maintenance Fund are not and shall not be Pledged Assets.

c.     Amounts in the Operation and Maintenance Fund shall be used to pay the expenses of administration and operation of the System (including Ancillary Obligation Fees and Expenses and any rebates to the United States government that may be required by the Code) and such current expenses for the maintenance thereof as may be necessary to preserve the same in good repair and working order. The Department shall have sole and exclusive authority to withdraw funds from the Operation and Maintenance Fund for such purposes as it, in its sole discretion, may at any time and from time to time deem necessary or appropriate. No other Person, including the City, shall have the right or authority to use or withdraw funds from the Operation and Maintenance Fund.

d.     The Trustee is hereby authorized to transfer any and all funds held by it as trustee or in any other capacity in an existing Operation and Maintenance Fund created under the Ordinance to the Operation and Maintenance Fund (and related custodial account) established hereby.

SECTION 2.05     Use of Money in the Debt Service Accounts.

a.     Amounts in the Interest and Redemption Fund established for a Priority of Securities and Ancillary Obligations shall be applied to pay principal (and redemption premium, if any) of and interest on such Priority of Securities and amounts due on such Priority of Ancillary Obligations when due.

b.     Mandatory Redemption Requirements:

TRUST INDENTURE

12

(1)     The Mandatory Redemption Requirement for a maturity of Term Securities may be satisfied in whole or in part by the redemption of Term Securities of such maturity or by the surrender to the Trustee of such Term Securities purchased with funds legally available therefor.  Not less than forty (40) days prior to the due date of such Mandatory Redemption Requirement, unless otherwise provided in the Supplemental Action providing for the issuance of such Term Securities, the Finance Director shall notify the Trustee of the manner in which all or a portion of a Mandatory Redemption Requirement for particular Term Securities shall be satisfied and, if funds on deposit in the Interest and Redemption Fund are to be used for such purposes, the Finance Director shall direct the Trustee as to the amount of such funds to be used to redeem or purchase all or a portion of such Term Securities.  In the absence of direction from the City as provided above, or upon the failure of the Trustee to acquire Term Securities before the redemption date for credit against a Mandatory Redemption Requirement, the Trustee shall use funds on deposit in the appropriate account of the Interest and Redemption Fund to satisfy the Mandatory Redemption Requirement.

(2)     Unless otherwise provided in a Supplemental Action providing for the issuance of Term Securities, the City will receive a credit against the Mandatory Redemption Requirement for Term Securities for which such Mandatory Redemption Requirement was established that have been redeemed (other than by application of Mandatory Redemption Requirements) or otherwise acquired by the City and delivered to the Trustee for cancellation prior to the giving of the notice of redemption and that have not been applied as a credit against any other Mandatory Redemption Requirements.

(i)     Not less than forty (40) days prior to any mandatory redemption date for Term Securities, the Finance Director shall give notice to the Trustee, acting as Transfer Agent, that such Term Securities are to be so credited.

(ii)     Each such Term Security shall be credited by the Trustee at 100% of the principal amount thereof against the Mandatory Redemption Requirement, and the principal amount of Term Securities to be redeemed on such mandatory redemption date shall be reduced accordingly and any excess over such amount shall be credited to future Mandatory Redemption Requirements in such order as the Finance Director shall direct; provided, however, that any excess resulting from the purchase, at less than par, of such Term Securities shall be transferred to the Receiving Fund.

SECTION 2.06     Use of Money in the Reserve Accounts.

a.     Except as otherwise provided herein, amounts in a Reserve Account shall be used solely for the payment of the principal (and premium, if any) of and interest on Securities and Ancillary Obligations of the Priority for which such Reserve Account was established, as to which there would otherwise be a Default.

TRUST INDENTURE
13

b.     If at any time the amount on deposit in or credited to a Reserve Account exceeds the Reserve Requirement for such Reserve Account, the amount of such excess shall be transferred by the Trustee into the Receiving Fund upon the direction of the Department.

c.     No further payments need be made into an Interest and Redemption Fund after enough of the Securities for which such Interest and Redemption Fund was established have been retired so that the amount then held in such Fund, including any Reserve Account therein, is equal to the entire amount of principal and interest which will be payable at the time of maturity of all the then Outstanding Securities of such Priority.

d.     A separate Reserve Account may be established by the Department with the Trustee for an issue of Securities by the Supplemental Action providing for the issuance of such Securities. The amounts to be paid into any separate Reserve Account to restore such account to its Reserve Requirement shall be treated by the Trustee as being on a parity with payments into all other Reserve Accounts established for the same Priority of Securities and shall not exceed, in any Fiscal Year, its proportionate deficit payment. "Proportionate Deficit Payment" means for a separate Reserve Account the same proportion that the amount available to remedy deficits in each Reserve Account for such Priority bears to the aggregate deficit in all Reserve Accounts for such Priority.

SECTION 2.07     Use of Money in the Extraordinary Repair and Replacement Reserve Fund.

a.     Amounts in the Extraordinary Repair and Replacement Reserve Fund may be used by the Department to pay the costs of making major unanticipated repairs and replacements to the System which individually cost or are reasonably expected by the Commissioners to cost in excess of $1,000,000 as determined by the Commissioners. The Department may withdraw funds from the Extraordinary Repair and Replacement Fund for such purposes at any time and from time to time upon written request to the Trustee therefor.

b.     On and after the first day of each Fiscal Year, by Supplemental Action (a certified copy of which shall be delivered to the Trustee) the Trustee may be instructed to transfer from the Extraordinary Repair and Replacement Reserve Fund to the Improvement and Extension Fund not more than fifty percent (50%) in aggregate of the balance in the Extraordinary Repair and Replacement Reserve Fund on the first day of such Fiscal Year if, but only if (i) by the first day of the month in which the transfer is to be made, the full amount of the Extraordinary Repair and Replacement Minimum Requirement for each prior month in the current Fiscal Year has been deposited in this Fund and (ii) the amounts of all prior transfers from this Fund to the Improvement and Extension Fund have been restored in full.

c.     For the purpose of determining the Extraordinary Repair and Replacement Fund Minimum Requirement and Maximum Requirement, no later than ten (10) days following the completion of the System's budget for each Fiscal Year, the Department shall deliver to the Trustee a certificate stating the amount budgeted by the System for operation and maintenance expense for such Fiscal Year.

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 344 of 1282]

13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 18 of 37

SECTION 2.08     Use of Money in the Rate Stabilization Fund.

The Rate Stabilization Fund may be established by the Commissioners and used for the purposes set forth in Section 15 of the Ordinance.

SECTION 2.09     Use of Money in the Improvement and Extension Fund.

Amounts in the Improvement and Extension Fund shall be used for improvements, enlargements, extensions or betterment to the System. The Department may withdraw funds from the Improvement and Extension Fund for such purposes at any time and from time to time upon written request to the Trustee therefor and may borrow funds from the Extraordinary Repair and Replacement Reserve Fund for such purposes as provided in Section 2.07b.

SECTION 2.10     Use of Money in the Surplus Fund.

Amounts from time to time on hand in the Surplus Fund may, at the option of the Department, be withdrawn upon written request to the Trustee and used for any purposes related to the System; provided, however, that if and whenever there should be any deficit in the Operation and Maintenance Fund or in any Interest and Redemption Fund (including any Reserve Account therein), then transfers shall be made by the Trustee from the Surplus Fund to such funds in the priority and order set forth in Section 2.11 hereof to the extent of any such deficit.

SECTION 2.11     Priority of Funds and Accounts.

a.     If amounts in the Receiving Fund are insufficient to provide for the current requirements of the Operation and Maintenance Fund and each Interest and Redemption Fund (including the Reserve Account, if any, therein), then any amounts or securities held in the Surplus Fund, the Improvement and Extension Fund and the Extraordinary Repair and Replacement Reserve Fund shall be credited or transferred from such Funds in the order listed, first, to the Operation and Maintenance Fund and, second, to the particular Interest and Redemption Fund to the extent of the insufficiency therein.

b.     If any principal (and redemption premium, if any) of or interest on Securities of a Priority or any related Ancillary Obligations become due (whether on a stated or scheduled date, by reason of call for redemption or otherwise), and there are insufficient amounts for the payment thereof in the Interest and Redemption Fund established for such Priority of Securities and Ancillary Obligations after applying payments in any Reserve Account established for such Priority of Securities, then there shall be applied by the Trustee to such payment amounts in each Interest and Redemption Account established for each lower Priority of Securities, beginning with the lowest Priority and proceeding seriatim in ascending order of Priority, until such payments are made in full.

TRUST INDENTURE
15

SECTION 2.12      <u>Construction Fund; Use of Money in the Construction Fund.</u>

a.      The Construction Fund shall be established as a custodial account solely between the Department and a Custodian. The Department is hereby authorized to execute a Custodial Agreement outside this Indenture in such form and upon such terms as will allow the Department to efficiently and expeditiously pay Construction Costs (as defined in paragraph c. below) and other costs permitted to be paid therefrom. The Department may designate separate accounts in the Construction Fund for different series of Securities for administrative purposes and to better able the City and the Department to comply with tax covenants relating to any such Securities in connection with maintaining the exclusion, if any, from gross income for federal income tax purposes of interest on such Securities.

b.      The Construction Fund shall not be part of the trust estate held for the benefit of Holders, who shall have no interest in such Fund whatsoever. Any funds at any time on deposit in or credited to the Construction Fund are not and shall not be Pledged Assets.

c.      Amounts in the Construction Fund shall be used to pay the cost of repairs, extensions, enlargements, and improvements to the System ("Construction Costs") and any costs of engineering, legal, bond insurance premiums, if any, and other expenses incident thereto, relating to the financing thereof ("Issuance Costs"). A separate account shall be established at the direction of the Department within the Construction Fund, entitled "Issuance Costs Account," from which the Custodian shall pay the Issuance Costs related to Outstanding Securities and any additional Securities issued subject to this Indenture. The Department shall have sole and exclusive authority to withdraw funds from the Construction Fund for such purposes as it, in its sole discretion, may at any time and from time to time deem necessary or appropriate. No other Person, including the City, shall have the right or authority to use or withdraw funds from the Construction Fund.

d.      Any unexpended balance remaining in an account of the Construction Fund may in the discretion of the Department be used for meeting any Reserve Requirement or for further improvements, enlargements and extensions to the System if, at the time of such expenditure, such use (i) is approved by the Michigan Department of Treasury, if such approval is then required by law and (ii) based upon an opinion of Bond Counsel, will not adversely affect the exclusion from gross income for federal income tax purposes of Securities the proceeds of which were deposited in such account. Any remaining balance after such expenditure shall be paid into the Interest and Redemption Fund established for the Priority of Securities giving rise to such balance for the purpose of purchasing Securities of such Priority at not more than the fair market value thereof but not more than the price at which such Securities may next be called for redemption or used for the purpose of calling such Securities for redemption. The Department may provide additional or different lawful uses for such unexpended balance or remaining balance by Supplemental Action which shall, nonetheless, be subject to the City's and Department's relevant tax covenants.

e.      Additional Accounts and Subaccounts of the Construction Fund may be established by the Department for purposes not described herein which are not inconsistent with the purposes and intent of this Indenture.

TRUST INDENTURE

16

f.     The Trustee is hereby authorized to transfer to the Construction Fund (and related custodial account) established hereby any and all funds held by it as trustee or in any other capacity on deposit in an existing Construction Fund and any and all Accounts and Subaccounts thereunder created under the Ordinance and relating to existing Securities. The Department is hereby authorized to create or continue such Accounts and Subaccounts under the Construction Fund as are necessary or appropriate to distinguish one Security from another and one Priority of Securities from another Priority of Securities.

SECTION 2.13     Custodian; Appointment and Qualifications.

a.     A Custodian shall be appointed by the Director for such term and upon such terms and conditions as shall be set forth in a Custodial Agreement approved by the Director.

b.     A Custodian shall be a financial institution authorized to act as a depository of public moneys under Michigan law.

## ARTICLE III
## INVESTMENTS

SECTION 3.01     Permitted Investments.

a.     The Trustee will invest all funds and accounts under this Indenture in Permitted Investments as directed by the Department in writing to the Trustee.

b.     The Permitted Investments for amounts held under this Indenture are the Legal Investments for such amounts subject to the following:

(1)     Investment of amounts in any Reserve Account shall be limited to obligations bearing maturity dates or subject to redemption, at the option of the Holder thereof, not later than ten (10) years from the date of the investment.

(2)     Except as otherwise provided herein or in a Supplemental Action, a certified copy of which shall be delivered to the Trustee, investments shall mature at such times as it is estimated the funds will be required, but shall be limited to obligations bearing maturity dates or subject to redemption, at the option of the Holder thereof, not later than five (5) years from the date of investment.

(3)     A Supplemental Action may provide for limitations in addition to or in lieu of the above limitations on Legal Investments or may eliminate any of such limitations.

(4)     Notwithstanding paragraph (3) above, no Permitted Investments for the defeasance of particular Securities may be changed without confirmation from each Rating Agency that such change will not reduce the rating of such Securities.

c.     The City and the Department acknowledge that regulations of the Comptroller of the Currency grant the parties the right to receive brokerage confirmations of the security

7715460.13
[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 347 of 1282]

transactions as they occur. The City and the Department specifically waive such notification to the extent permitted by law. The Department will receive periodic cash transaction statements which will detail all investment transactions.

SECTION 3.02    Tax Status of the Interest on Securities.

The City has agreed to certain covenants in the Tax Certificates for the Securities in order to ensure that the tax status of the interest on the Securities is not adversely affected. To the extent that any action permitted or required to be taken by the Trustee hereunder is inconsistent with the provisions of a Tax Certificate with respect to an issue of Securities, the Finance Director or the Department may direct the Trustee to take such action or omit to take such action hereunder as may be required to rectify such inconsistency with respect to such Securities.

SECTION 3.03    Allocation and Transfers of Investment Income.

a.    Profit realized or interest income earned on investment of amounts in the Receiving Fund, Operation and Maintenance Fund, any Interest and Redemption Fund (including the Reserve Account, if any, therein), the Extraordinary Repair and Replacement Reserve Fund, and Improvement and Extension Fund shall be credited to the Receiving Fund no less frequently than monthly.

b.    Profit realized or interest earned on investments of funds in the Construction Fund relating to any series of Securities and any Redemption Account (including any Reserve Account or Subaccount established for any Securities) shall be credited to the funds from which such investments were made; provided, however, that profit realized or interest earned on the Construction Fund relating to any series of Securities may, if permitted by law, be credited to the Receiving Fund at the option of the Department upon written direction to the Trustee and the Custodian.

SECTION 3.04    Valuation of Investments.

a.    Investments credited to any Reserve Account shall be valued at least annually on each January 1, unless otherwise specified in the Supplemental Action providing for the issuance of such Securities, at the market value thereof. Any funds on deposit in a Reserve Account on or as of such valuation date in excess of the Reserve Requirement shall be transferred by the Trustee into the Surplus Fund. Any deficit in a Reserve Account shall be restored by the Trustee at the beginning of the next succeeding Fiscal Year with Funds on deposit in the Receiving Fund and Surplus Fund, in that order.

b.    Investments in the Extraordinary Repair and Replacement Reserve Fund shall be valued at least annually on each July 1 at the cost thereof.

7715460.13

## ARTICLE IV
## DISCHARGE OF LIEN

SECTION 4.01     Discharge of Lien on Pledged Assets.

a.     Upon the defeasance (as defined in Section 4.02 hereof) of an issue of Securities, and payment of the Trustee's fees, costs and expenses related thereto, the lien of this Indenture upon the Pledged Assets with respect to such Securities shall cease, terminate and be void.

b.     Upon the defeasance (as defined in Section 4.02 hereof) of all Outstanding Securities, the lien of this Indenture upon the Pledged Assets shall cease, terminate and be void and thereupon the Trustee, upon determining that all conditions precedent to the satisfaction and discharge of this Indenture have been complied with, and upon payment of the Trustee's fees, costs and expenses hereunder, shall (i) cancel and discharge this Indenture and the lien on Pledged Assets, (ii) execute and deliver to the City and the Department such instruments in writing as shall be required to cancel and discharge this Indenture and the lien on Pledged Assets, (iii) re-convey to the Department the Pledged Assets, and (iv) assign and deliver to the Commissioners so much of the Pledged Assets as may be in its possession or subject to its control, except, in the event of a defeasance of the Securities moneys and Government Obligations held in the Interest and Redemption Funds, Debt Service Accounts, and Reserve Accounts for the purpose of paying Securities; provided, however, such cancellation and discharge of this Indenture shall not terminate the powers and rights granted to the Trustee with respect to the payment, transfer and exchange of the Securities; and, provided, further, that the rights of the Trustee to indemnity and payment of all reasonable fees and expenses shall survive.

SECTION 4.02     Defeasance of Securities.

a.     Securities are "defeased" for purposes of this Indenture if:

(1)     there has been deposited in trust sufficient cash and Permitted Investments, not callable by the issuer, the principal of and interest on which mature at the time and in the amounts, without the reinvestment thereof, necessary to pay principal of and interest on such Securities to its maturity, or, if called for redemption, to the date fixed for redemption, together with the amount of the redemption premium, if any; and

(2)     if such Securities are to be redeemed prior to maturity, irrevocable instruments have been given to the Trustee, acting as Transfer Agent, to call such Securities for redemption.

b.     A Supplemental Action may be delivered to the Trustee with respect to an issue of Securities which may:

(1)     provide different means of defeasing such Securities, and such means may be in addition to or in lieu of the means set forth in subparagraph a;

7715460.13
[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 349 of 1282]

(2)     provide for the Legal Investments that are Permitted Investments for the defeasance of such Securities, but no such Permitted Investments may thereafter be changed except as provided herein; and

(3)     provide for the consequences of such Securities being defeased.

c.     Except as otherwise provided in a Supplemental Action:

(1)     the Legal Investments for the defeasance of such Securities are the Permitted Investment therefor; and

(2)     the statutory lien herein granted pursuant to Act 94 shall be terminated with respect to defeased Securities, the Holders of such defeased Securities shall have no further rights hereunder or under the Ordinance except for payment from the deposited funds and registration and replacement of such Securities, and such Securities shall no longer be considered to be Outstanding hereunder or under the Ordinance.

SECTION 4.03     Unclaimed Moneys.

Any moneys deposited with the Trustee in accordance with the terms and provisions of this Indenture, or any moneys held by any paying or transfer agent, in trust for the payment of the principal of and redemption premium, if any, or interest on a Secured Obligation and remaining unclaimed by the Holders for three (3) years after the final maturity of a Secured Obligation or the redemption date of the Secured Obligation, as the case may be, shall be applied by the Trustee in accordance with the Uniform Unclaimed Property Act, Act. No. 29, Public Acts of Michigan, 1995, as amended from time to time. The City, the Department and the Trustee shall have no responsibility with respect to such moneys or the affected Holders of the Secured Obligation.

## ARTICLE V
## RIGHTS AND REMEDIES OF HOLDERS UPON DEFAULT

SECTION 5.01     Rights and Remedies of Holders.

Upon the occurrence of a Default on any Security, the Trustee may pursue any remedy permitted by law to enforce the performance of or compliance with the provisions of this Indenture.

Upon the happening and continuance of a Default on any Security, and if requested to do so by the Holders of at least twenty percent (20%) in aggregate principal amount of the Outstanding Securities and the Trustee is indemnified as provided in this Indenture and the Ordinance, the Trustee shall exercise such of the rights and powers as the Trustee shall deem most effective to enforce and protect the interests of the Holders.

TRUST INDENTURE
20

No remedy by the terms of this Indenture conferred upon or reserved to the Trustee (or to the Holders) is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in addition to any other remedy given to the Trustee or to the Holders hereunder or now or hereafter existing.

No delay or omission to exercise any right or power accruing upon any Default shall impair any such right or power or shall be construed to be a waiver of any such Default or acquiescence therein; and every such right and power may be exercised from time to time and as often as may be deemed expedient.

SECTION 5.02    Right of Holders to Direct Proceedings.

Anything in this Indenture to the contrary notwithstanding, the Holders of not less than twenty percent (20%) in aggregate principal amount of the Outstanding Securities shall have the right at any time, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture, or any other proceedings hereunder; provided, that such direction shall not be otherwise than in accordance with the provisions of law and of this Indenture, and provided that the Trustee shall be indemnified to its satisfaction.

No Holder shall have the right to institute any proceeding for the enforcement of this Indenture unless such Holder has given the Trustee, the Department and the City written notice of a Default, the Holders of not less than twenty percent (20%) in aggregate principal amount of the Outstanding Securities shall have requested the Trustee in writing to institute such proceeding, the Trustee shall have been afforded a reasonable opportunity to exercise its powers or to institute such proceeding, and there shall have been offered to the Trustee indemnity satisfactory to the Trustee, and the Trustee shall have thereafter failed or refused to exercise such powers or to institute such proceeding within a reasonable time.

## ARTICLE VI
## THE TRUSTEE

SECTION 6.01    Appointment.

The Trustee is hereby appointed and does hereby agree to act in such capacity and to perform the express duties of the Trustee under this Indenture, but only upon and subject to the following express terms and conditions (and no implied covenants or other obligations shall be read into this Indenture against the Trustee):

(a)    The Trustee may execute any of its trusts or powers and perform any of its duties herein by or through attorneys, agents, receivers or employees, and shall be entitled to rely on advice of counsel and other professionals concerning all matters of such trusts, powers and duties. The Trustee shall not be answerable for the professional malpractice, negligence or misconduct of any attorney, agent, receiver, employee or other professionals selected by it with reasonable care, and may in all cases pay such Persons reasonable compensation. The Trustee

7715460.13

[2.2.5.2 35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 351 of 1282]

13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 25 of 37

shall not be answerable for the exercise of any discretion or power under this Indenture or for anything whatsoever in connection with its trusts, powers and duties herein, except only for its gross negligence or willful misconduct.

(b)     The Trustee shall not be responsible for any recital herein or in the Securities, or for the validity of the Secured Obligation or the execution by the City or the Department or sufficiency of this Indenture or of any supplements thereto or instruments of further assurance, or for the sufficiency of the Pledged Assets to secure the Securities. The Trustee shall not be liable for any loss suffered in connection with any investment of funds made by it in accordance with Article III hereof, except for losses suffered due to the Trustee's gross negligence or willful misconduct. The Trustee has no obligation or liability to the Holders for the payment of interest on, principal of or redemption premium, if any, with respect to the Securities from its own funds.

(c)     The Trustee is authorized to act in reliance upon the sufficiencies, correctness, genuineness or validity of any instrument or documents or other writing submitted to it hereunder and shall have no liability with respect to said matters. The Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of at least twenty percent (20%) in aggregate principal amount of the Securities then Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or in exercising any trust or power conferred upon the Trustee under this Indenture. If the Trustee receives different or conflicting instructions or directions from more than one group of Holders of Securities, each of which is provided in accordance with this Indenture, the Trustee shall, subject to Sections 5.02 and 6.01(d), act in accordance with the instructions or directions provided by the group of Holders representing the largest aggregate principal amount of Securities then Outstanding. The Trustee shall not be liable for any error in judgment or any act done or omitted by any of its officers, employees, agents or representatives in good faith. In the event of any dispute or question arising hereunder, the Trustee shall not be liable if it acts or takes no action in accordance with the opinion of its legal counsel or other professionals.

(d)     The Trustee shall not be bound to ascertain or inquire as to the performance or observance of any of the terms, conditions, covenants or agreements herein or in the Ordinance or of any of the documents executed in connection with the Securities or as to the existence of a Default thereunder except as otherwise provided for in this Indenture. The Trustee shall not be responsible for the validity or effectiveness of the lien on the Pledged Assets or of any other collateral given to or held by it. The permissive right of the Trustee to do things enumerated in this Indenture shall not be construed as duties. The Trustee shall only be responsible for the performance of the duties expressly set forth herein and shall not be answerable for other than its gross negligence or willful misconduct in the performance of those express duties.

(e)     The Trustee shall not be required to give any bond or surety in respect of the execution of its trusts and powers or otherwise hereunder.

(f)     All moneys received by the Trustee, until used or applied or invested as herein provided, shall, except to the extent otherwise provided herein, be held as special trust funds for the purposes specified in this Indenture and for the benefit and security of the Holders as herein

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 352 of 1282]

provided. Such moneys need not be segregated from other funds except to the extent required by law or herein provided, and the Trustee shall not otherwise be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

(g)     The Trustee shall not be deemed to have, or required to take, notice of a Default under this Indenture, except (i) in the event of an insufficient amount in the Interest and Redemption Funds to make a principal, premium, if any, or interest payment on the Securities, or (ii) upon written notification actually received by the Trustee of a Default from the City, the Department or the Holders of not less than twenty (20%) percent in aggregate principal amount of Securities then Outstanding. In the absence of such notice, the Trustee may conclusively presume there is no Default except as aforesaid.

(h)     The Trustee shall, prior to any Default and after the curing of all Defaults which may have occurred, perform such duties and only such duties of the Trustee as are specifically set forth in this Indenture. The Trustee shall, during the existence of any Default (which has not been cured), exercise such of the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(i)     The Trustee shall have no responsibility with respect to any information, statement or recital in any official statement, offering memorandum or any other disclosure material prepared or distributed with respect to the Securities, except for any information provided by the Trustee, and shall have no responsibility for compliance with any state or federal securities laws in connection with the Securities.

(j)     Notwithstanding the effective date of this Indenture or anything to the contrary in this Indenture, the Trustee shall have no liability or responsibility for any act or event relating to this Indenture which occurs prior to the date the Trustee formally executes this Indenture and commences acting as Trustee hereunder.

(k)     The Trustee agrees to accept and act upon directions pursuant to this Indenture sent by unsecured e-mail, facsimile transmission or other similar unsecured electronic methods, provided, however, that the City and the Department each shall provide to the Trustee an incumbency certificate listing designated persons with the authority to provide such directions, which incumbency certificate shall be amended whenever a person is to be added or deleted from the listing. If the City or the Department gives the Trustee e-mail or facsimile directions (or directions by a similar electronic method), the Trustee's understanding of such directions shall be deemed controlling. The Trustee shall not be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's reliance upon and compliance with such directions notwithstanding such directions conflict or are inconsistent with a subsequent written directions. The City and the Department each agree to assume all risks arising out of the use of such electronic methods to submit directions to the Trustee, including without limitation the risk of the Trustee acting on unauthorized directions, and the risk of interception and misuse by third parties.

7715460.13
[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 353 of 1282]

(l)    The Trustee may become the Holder of Securities with the same rights it would have if it were not Trustee, and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of Holders, whether or not such committee shall represent the Holders of at least twenty percent (20%) in aggregate principal amount of the Securities then Outstanding.

(m)    The Trustee shall not be responsible for determining whether any rebates are required to be paid to the United States government pursuant to the Code.

(n)    Whether or not therein expressly so provided, every provision of this Indenture or related documents relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Article.

(o)    Whenever in the administration of the trusts imposed upon it by this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a certificate signed by the Director, and such certificate shall be full warrant to the Trustee for any action taken or suffered in good faith under the provisions of this Indenture in reliance upon such certificate, but in its discretion the Trustee may, in lieu thereof, accept other evidence of such matter or may require such additional opinions or evidence as it may deem reasonable.

(p)    When the Trustee incurs expenses or renders services after a Default under this Indenture, the expenses and the compensation for the services (including the fees and expenses of its agents and counsel) are intended to constitute expenses of administration under any applicable law relating to bankruptcy, receivership, or creditors' rights.

SECTION 6.02    Fees, Expenses.

The Trustee shall be entitled to payment and/or reimbursement for reasonable fees for its ordinary services rendered hereunder and all advances, counsel fees and other ordinary expenses reasonably made or incurred by the Trustee in connection with such ordinary services. If it becomes necessary that the Trustee perform extraordinary services, it shall be entitled to reasonable extra compensation therefor, and to reimbursement for reasonable extraordinary expenses in connection therewith; provided, that if such extraordinary services or extraordinary expenses are occasioned by the gross negligence or willful misconduct of the Trustee it shall not be entitled to compensation or reimbursement therefor.

All fees, costs and expenses of any legal proceedings that may be brought by the Trustee to enforce the duties and obligations of the City or the Department hereunder or under any Securities and any amounts advanced by Holders to the Trustee for such costs and expenses shall be paid to the Trustee or such Holders, or both, as the case may be, in the first instance from the Net Revenues remaining, in the month of payment, after making the transfers and deposits required hereunder to all Interest and Redemption Funds (including the Reserve Account, if any, therein), and, to the extent that sufficient amounts are not available from the Revenues therefor.

TRUST INDENTURE
24

from general funds of the City. In the event that general funds of the City are used to pay any such costs and expenses (as certified to the Trustee by the Finance Director), the City shall be reimbursed therefor with interest at the rate of seven percent (7%) per annum from the first Net Revenues remaining, in the month of reimbursement, after (i) making the transfer and deposits required hereunder to all Interest and Redemption Funds (including the Reserve Account, if any, therein) and (ii) paying the Trustee or Holders as herein provided.

To the extent permitted by law, the City hereby agrees to indemnify and hold harmless the Trustee from and against any and all costs, claims, liabilities, losses or damages whatsoever (including reasonable costs and fees of counsel, auditors or other experts), asserted or arising out of or in connection with the acceptance or administration of the trusts established pursuant to the Indenture, including the reasonable costs and expenses (including the reasonable fees and expenses of its counsel) of defending itself against any such claim or liability in connection with its exercise or performance of any of its duties hereunder and of enforcing this indemnification provision, except costs, claims, liabilities, losses or damages resulting from the gross negligence or willful misconduct of the Trustee. The indemnifications set forth herein shall survive the termination of the Indenture and/or the resignation or removal of the Trustee.

The City's payment obligations under this Section shall survive the discharge of this Indenture, and shall not be limited by any law affecting the compensation of a trustee of an express trust.

SECTION 6.03    Intervention in Litigation.

In any judicial proceeding to which the City or the Department are a party, and which, in the opinion of the Trustee and its counsel, has a substantial bearing on the interests of the Holders, the Trustee may intervene on behalf of the Holders and shall do so if requested in writing by the Holders of at least twenty percent (20%) in aggregate principal amount of the Securities then Outstanding, and when provided with sufficient indemnity pursuant to Section 6.02 hereof.

SECTION 6.04    Resignation; Appointment of Successor Trustee; Successor Trustee Upon Merger, Consolidation or Sale.

a.    The Trustee and any successor Trustee may resign upon giving thirty (30) days' prior written notice to the City and the Department. Such resignation shall take effect only upon the appointment of a successor Trustee as described in Section 6.04(b) hereof and the acceptance of such appointment by the successor Trustee. Upon appointment of a successor Trustee, the resigning Trustee shall, after payment of its fees, costs and expenses, assign all of its right, title and interest in the Pledged Assets, and transfer and assign its right, title and interest in this Indenture to the successor Trustee. The successor Trustee shall meet the requirements of Section 6.04b below and shall accept in writing its duties and responsibilities hereunder and file such acceptance with the City and the Department.

7715460.13

b.    If the Trustee shall give notice of resignation or be removed, or be dissolved, or shall be in the course of dissolution or liquidation, or otherwise become incapable of acting hereunder, or if it shall be taken under the control of any public office or offices, or of a receiver appointed by a court, the Department may appoint a Successor Trustee, by an instrument in writing signed by an authorized representative of the Department, a copy of which shall be delivered personally or sent by first class mail, postage prepaid, to the retiring Trustee and the Successor Trustee.  If the Department fails to so appoint a Successor Trustee, hereunder within thirty (30) days after the Trustee has given notice of its resignation, has been removed, has been dissolved, has otherwise become incapable of acting hereunder or has been taken under control by a public officer or receiver acting under state or federal law, a Successor may with the prior written consent of the Department be appointed by the owners of at least twenty (20%) percent in aggregate principal amount of Securities, by an instrument or concurrent instruments in writing signed by such owners, or by their duly authorized attorneys in fact, a copy of which shall be delivered personally or sent by first class mail, postage prepaid, to the City and the Department, the retiring Trustee and the Successor Trustee.  If the Department and the Holders fail to appoint a Successor Trustee, hereunder within sixty (60) days after the Trustee has given notice of its resignation, has been removed, has been dissolved, has otherwise become incapable of acting hereunder or has been taken under control by a public officer or receiver acting under state or federal law, the Trustee shall have the right to petition a court of competent jurisdiction to appoint a successor hereunder.  Every such Trustee appointed pursuant to the provisions of this Section 6.04 shall (i) at all times be a bank having trust powers or a trust company; (ii) at all times be organized and doing business under the laws of the United States of America or of any state; (iii) have, or be wholly owned by an entity having, a combined capital and surplus of at least $50,000,000; (iv) be authorized under such laws to exercise corporate trust powers; and (v) be subject to supervision or examination by federal or state authority.

c.    Any corporation or association into which the Trustee may be merged or converted or with or into which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any merger, conversion, sale, consolidation or transfer to which it is a party, provided such company shall be eligible under Section 6.04(b) hereof, shall be and become successor Trustee hereunder and shall be vested with all the trusts, powers, rights, obligations, duties, remedies, immunities and privileges hereunder as was its predecessor, without the execution or filing of any instrument or any further act on the part of any of the parties hereto, provided, further, that if no Default has occurred or is continuing under this Indenture, the Department may select as successor Trustee, a corporation, or association other than the one into which the Trustee may be merged, converted or consolidated or to which it may sell or transfer its corporate trust business and assets.

SECTION 6.05    Removal of Trustee.

The Trustee may be removed at any time by an instrument in writing delivered to the Trustee by the Department; provided that if a Default has occurred and is continuing with respect to any Secured Obligations, the Trustee may not be removed without the consent of the Holders of at least twenty percent (20%) in aggregate principal amount of the Outstanding Securities.  No

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 356 of 1282]

13-53846-tjt    Doc 4674-1    Filed 05/12/14    Entered 05/12/14 22:37:39    Page 30 of 37

removal of the Trustee and no appointment of a successor Trustee shall become effective until the successor Trustee has accepted its appointment in the manner provided in Section 6.04 hereof. Upon such removal and the payment of its fees, costs and expenses, the Trustee shall assign to the successor Trustee all of its right, title and interest in the Pledged Assets in the same manner as provided in Section 6.04 hereof.

SECTION 6.06    Instruments of Holders.

Any instrument required by this Indenture to be executed by Holders may be in any number of writings of similar tenor and may be executed by Holders in person or by an agent appointed in writing. Proof of the execution of any such instrument or of the writing appointing any such agent shall be sufficient for any of the purposes of this Indenture if it is established by a certificate of any officer in any jurisdiction who by law has power to take acknowledgments within such jurisdiction that the person signing such writing acknowledged before such officer the execution thereof. Proof of the ownership of Securities shall be established by the ownership records noted in the Registry.

The Trustee may rely on such an instrument of Holders unless and until the Trustee receives notice in the form specified above that the original such instrument is no longer trustworthy or effective.

SECTION 6.07    Appointment of Separate or Co-Trustee.

It is the intent of the parties to this Indenture that there shall be no violation of any law of any jurisdiction (including particularly the laws of the State) denying or restricting the rights of banking corporations or associations to transact business as a trustee in such jurisdiction. It is recognized that in case of litigation under this Indenture and in particular in the case of the enforcement of this Indenture on Default, or in case the Trustee deems that by reason of any present or future law of any jurisdiction it may not exercise any of the powers, rights or remedies herein granted to the Trustee, or hold title to the properties, in trust, as herein granted, or take any other action which may be desirable or necessary in connection therewith, it may be necessary that the Trustee appoint an additional individual or institution as a separate trustee or co-trustee. The following provisions of this Section 6.07 are adapted to these ends.

If the Trustee appoints an additional individual or institution as a separate trustee or co-trustee, each and every remedy, power, right, claim, demand, cause of action, immunity, estate, duty, obligation, title, interest and lien expressed or intended by this Indenture to be exercised by, vested in or conveyed to the Trustee with respect thereto shall be exercisable by, vested in and conveyed to such separate trustee or co-trustee, but only to the extent necessary to enable such separate trustee or co-trustee to exercise such powers, rights and remedies, and every covenant and obligation necessary for the exercise thereby by such separate trustee or co-trustee shall run to and be enforceable by either of them.

Should any instrument in writing from the City or the Department be required by the separate trustee or co-trustee so appointed by the Trustee for more fully vesting in and

TRUST INDENTURE
27

confirming to them such properties, rights, powers, trusts, duties and obligations, any and all such instruments in writing shall, on request, be executed, acknowledged and delivered by the City or the Department. If any separate trustee or co-trustee, or a successor to either, shall die, become incapable of acting or not be qualified to act, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of such separate trustee or co-trustee, so far as permitted by law, shall vest in and be exercised by the Trustee until the appointment of a successor to such separate trustee or co-trustee.

## ARTICLE VII
## AMENDMENTS, SUPPLEMENTAL INDENTURES

SECTION 7.01    Supplemental Indentures.

The City, the Department and the Trustee, without the consent of or notice to any Holders, may enter into an indenture or indentures supplemental to this Indenture and not inconsistent herewith or with the provisions of the Ordinance for one or more of the following purposes:

(a)    To cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any provision contained herein or in any supplemental indenture, or to make such other provisions in regard to matters or questions arising under this Indenture which do not materially adversely affect the interest of the Holders;

(b)    To grant to or confer upon the Trustee for the benefit of the Holders any additional rights, remedies, powers or authority that may lawfully be granted to or conferred upon the Holders or the Trustee;

(c)    To grant or pledge to the Trustee for the benefit of the Holders any additional security other than that granted or pledged under this Indenture;

(d)    To modify, amend or supplement this Indenture or any supplemental indenture in such manner as to comply with an order of any State or federal court regarding the Department and/or the System;

(e)    To modify, amend or supplement this Indenture or any supplemental indenture in such manner as to permit the qualification thereof under the Trust Indenture Act of 1939, as amended, or any similar federal statute then in effect or to permit the qualification of the Securities for sale under the securities laws of any of the states of the United States;

(f)    To appoint a successor Trustee, separate trustees or co-trustees in the manner provided in Article VI; or

(g)    To make any other change which, in the judgment of the Trustee, is not materially adverse to the Trustee or the Holders.

TRUST INDENTURE
28

7715460.13

When requested by the City or the Department, and upon receipt of an opinion of Bond Counsel to the effect that all conditions precedent under this Indenture have been met which are not inconsistent with the Ordinance, the Trustee shall join with the City and the Department in the execution of any such supplemental indenture; provided that there shall be no modification of the Trustee's duties without its consent.

SECTION 7.02    Amendments to Indenture; Consent of Holders.

Exclusive of supplemental indentures covered by Section 7.01 hereof and subject to the terms and provisions contained in this Section 7.02, and not otherwise, the Holders of not less than a majority in aggregate principal amount of the Outstanding Securities affected by such indenture or indentures supplemental hereto shall have the right, from time to time, anything contained in this Indenture to the contrary notwithstanding, to consent to and direct the execution by the Trustee of such other indenture or indentures supplemental hereto for the purpose of modifying, altering, amending, adding to or rescinding, in any particular manner, any of the terms or provisions contained in this Indenture or in any supplemental indenture; provided, however, that nothing in this Article shall permit, or be construed as permitting (a) without the consent of the Holders of all Securities then Outstanding (i) an extension of the maturity of the principal of, or the mandatory redemption date of, or interest on, any Securities, or (ii) a reduction in the principal amount of, or the premium or the rate of interest on, any Securities, (iii) a preference or priority of any Securities over any other Securities, (iv) the creation of a lien prior to the lien of this Indenture, or (v) a reduction in the aggregate principal amount of the Securities required for consent to any supplemental indenture, or (b) a modification or change in the duties of the Trustee hereunder without the consent of the Trustee. The giving of notice to and consent of the Holders to any such proposed supplemental indenture shall be obtained pursuant to Section 7.03.

SECTION 7.03    Notice to and Consent of Holders.

If consent of the Holders is required under the terms of this Indenture for the amendment of this Indenture for any other similar purpose, the Trustee shall cause notice of the proposed execution of the amendment or supplemental indenture to be given by first class mail to the last known holders of the Securities then shown on the Registry. Such notice shall briefly set forth the nature of the proposed amendment, supplemental indenture or other action and shall state that copies of any such amendment, supplemental indenture or other document are on file at the principal corporate trust office of the Trustee for inspection by all Holders. If, within sixty (60) days or such longer period as shall be prescribed by the Trustee following the mailing of such notice the holders of a majority or all, as the case may be, of the principal amount of the Securities by instruments filed with the Trustee shall have consented to the amendment, supplemental indenture or other proposed action, then the Trustee may execute such amendment, supplemental indenture or other document or take such proposed action and the consent of the Holders shall thereby be conclusively presumed.

# ARTICLE VIII
## MISCELLANEOUS

SECTION 8.01        Limitation of Rights.

With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from this Indenture is intended or shall be construed to give to any Person other than the parties hereto and the Holders any legal or equitable right, remedy or claim under or in respect to this Indenture or any covenants, conditions and provisions herein contained; this Indenture and all of the covenants, conditions and provisions herein being intended to be and being for the sole and exclusive benefit of the parties hereto, and the Holders as herein provided.

SECTION 8.02        Severability; Conflicts.

If any provision of this Indenture is held to be in conflict with any applicable statute or rule of law or is otherwise held to be unenforceable for any reason whatsoever, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other part or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever.

The invalidity of any one or more phrases, sentences, clauses or Sections of this Indenture contained, shall not affect the remaining portions of this Indenture, or any part thereof.

In the event of a conflict between the provisions of this Indenture and the Ordinance, the Ordinance shall prevail, except to the extent that the conflicting provisions of this Indenture are consistent with an order or orders of a federal court having jurisdiction over the matter.

SECTION 8.03        Notices.

Except as otherwise provided herein, all notices, certificates, or other communications hereunder shall be in writing and shall be deemed given upon receipt, by hand delivery, mail, overnight delivery, telecopy or other electronic means addressed as follows:

| | |
|---|---|
| **If to the City:** | City of Detroit |
| | 2 Woodward Avenue |
| | Suite 1200 |
| | Detroit, Michigan  48226 |
| | Attention:        Finance Director |
| | Telephone:     (313) 224-3491 |
| | Facsimile:     (313) 224-4466 |
| | |
| **If to the Department:** | Detroit Water and Sewerage Department |
| | 735 Randolph Street |
| | Detroit, Michigan  48226 |
| | Attention:     Director |
| | Telephone:     (313) 224-4701 |
| | Facsimile:     (313) 224-6067 |

TRUST INDENTURE

30

|  | If to the Trustee: | U.S. Bank National Association |
|---|---|---|
|  |  | 535 Griswold Street, Suite 550 |
|  |  | Detroit, Michigan 48226 |
|  |  | Attention:   Corporate Trust |
|  |  | Telephone:   (313) 234-4700 |
|  |  | Facsimile:   (313) 963-9428 |

A duplicate copy of each notice given hereunder by any party hereto shall be given to the other parties. Any person or entity listed above may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates or other communications shall be sent. For purposes of this Section, "electronic means" shall mean electronic mail, telecopy or facsimile transmission or other similar electronic means of communication which produces evidence of transmission.

SECTION 8.04    Additional Notices to Rating Agencies.

The Trustee hereby agrees that if at any time (a) there is a change in the Trustee; (b) there are any modifications, supplements or amendments to this Indenture; (c) an issue of the Securities are paid in full; then, in each case, the Trustee shall promptly give notice of any such event to each Rating Agency then maintaining a rating on the affected Securities, which notice in the case of an event described in clause (b) above shall include a copy of any such amendment, modification or supplement.

SECTION 8.05    Payments Due on Non-Business Days.

In any case where the date of maturity of interest on or premium, if any, or principal of the Securities or the date fixed for redemption of any Securities shall not be a Business Day, then payment of such interest, premium or principal need not be made on such date but shall be made on the next succeeding Business Day, with the same force and effect as if made on the date of maturity or the date fixed for redemption, and, in the case of such payment, no interest shall accrue for the period from and after such date.

SECTION 8.06    Binding Effect.

This instrument shall inure to the benefit of and shall be binding upon the City, the Department and the Trustee and their respective successors and assigns, subject, however, to the limitations contained in this Indenture.

SECTION 8.07    Captions.

The captions or headings in this Indenture are for convenience only and in no way define, limit or describe the scope or intent of any provisions or sections of this Indenture.

7715460.13

SECTION 8.08        Governing Law.

This Indenture shall be governed by and interpreted in accordance with the laws of the State.

SECTION 8.09        Execution in Counterparts.

This Indenture may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

[The balance of this page is intentionally left blank.
The signature page follows.]

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 362 of 1282]

**Trust Indenture**
*Signature Page*

IN WITNESS WHEREOF, the City and the Department have executed this Indenture by the Finance Director and the Director, respectively, and the Trustee has caused this Indenture to be executed in its name by its duly authorized officer, all as of the day and year first above written.

**THE CITY OF DETROIT**

By: _____
Cheryl Johnson
Its: Finance Director

**DETROIT WATER AND SEWERAGE DEPARTMENT**

By: _____
Sue F. McCormick
Its: Director

**U.S. BANK NATIONAL ASSOCIATION**
as Trustee

By: _____
Susan T. Brown
Its: Vice President

7715460.13

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 363 of 1282]