# Exhibit 3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,

Debtor.

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## DECLARATION OF GRAHAM W. J. BEAL

Graham W. J. Beal, pursuant to 28 U.S.C. § 1746, states as follows:

1.  I have personal knowledge of the facts set forth herein; and, if called as a witness, I would be competent to testify thereto.

2.  I am Director of the Detroit Institute of Arts ("**Museum**"). In that capacity, I have responsibility for the oversight and management of Museum operations.

3.  The Museum art collection totals over 60,000 objects, a large number of which are both valuable and fragile given their age and condition.

4.  About 9 percent of this total are displayed in the public galleries. Other objects are periodically rotated through the galleries or kept in storage for a variety of reasons.

5. Handling these objects requires special care by trained Museum personnel. Removing items from the gallery walls requires two or three staff members for safety and protection of the works, as well as the closing of the gallery to the public. Examination of objects in storage requires Museum staff to locate, retrieve, show, and return the works.

6. Even when carefully handled, accidents happen; handling even a small number of works has in the past resulted in damage.

7. The records that relate to the Museum and this collection include over a million pages of hard-copy documents, many of which are originals that can be more than a half century old. These documents are fragile and require careful handling.

8. The DIA Corp. maintains a separate "object file" for each of the objects. Each file may contain documents relating to, among other things, the object's provenance and acquisition, its history at the Museum, and other information about the object.

9. In addition, and separate from the object files, there are curatorial files, which contain multiple documents about the objects that are relevant to the responsible curators.

10. Donor files, organized by donor, not by object, contain information about works that a donor contributed to the Museum and often contain confidential personal information about the donor.

11. Among other things, "Directors' files," kept by each director of the Museum over its 125-year history, also contain information about some of the objects and their acquisition.

12. These files cannot be inspected and hastily copied without risking damage or destruction. Many that are not used in day-to-day Museum operations are stored in the Museum archives and are not well organized or easily accessible.

13. After discussions with Museum management about how best to handle its evaluation of the works, Christie's reached an agreement with the Museum so as to disrupt Museum operations as little as practicable and with as little risk as possible to the objects.

14. Christie's conducted its evaluation without removing objects from gallery walls, and inspected objects in the public galleries on Mondays, when the Museum is closed to the public, requiring the Museum to bring in additional personnel and pay associated overtime. Inspection of works in storage required a substantial time commitment from the DIA Corp.'s collection management staff, and also involved significant costs to the DIA Corp. Certain documents or summaries were considered as well.

15. I have reviewed the Revised Proposed Order filed by certain creditors of the City of Detroit, which requests that the Court require that "physical access to the front and back" thousands of works be given to certain putative purchasers of artwork in the Museum art collection.

16. The relief requested in the Revised Proposed Order will impose a substantial burden on the Museum and create serious risks to the Museum art collection and records.

17. Even if the requested physical inspections could be accomplished on an expedited timetable, these inspections risk damaging unique and irreplaceable works of art, would require a substantial time commitment from the DIA Corp.'s collection management staff and technicians to comply with professional standards, and could force the closure of large portions of the Museum for extended periods.

18. The collection and production of the additional documents requested by the Moving Creditors would also consume substantial staff, contractor, and attorney resources, and risk damaging ancient provenance documents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Detroit, Michigan on May 12, 2014.

_____
Graham W. J. Beal