# Exhibit 4

# HONIGMAN

Honigman Miller Schwartz and Cohn LLP
Attorneys and Counselors

Arthur T. O'Reilly

(313) 465-7628
Fax: (313) 465-7629
aoreilly@honigman.com

*Via Email and U.S. Mail*

April 17, 2014

Vincent J. Marriott, III
Ballard Spahr LLP
1735 Market St., 51st Flr.
Philadelphia, PA. 19103

Stephen C. Hackney
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654

Alfredo R. Perez
Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002

Samuel J. Alberts
Dentons
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005-3364

Re: *Subpoenas Issued to The Detroit Institute of Arts in the case of In re: City of Detroit, Michigan, Debtor*

Counsel:

We represent The Detroit Institute of Arts, a Michigan non-profit corporation, f/k/a, among other things, the Detroit Museum of Arts, Detroit Museum of Arts Founders' Society, and Founders Society Detroit Museum of Art ("DIA Corp."). Each of you, acting on behalf of your own clients and on behalf of certain other parties, recently served the DIA Corp. with subpoenas for the production of documents ("DIA Subpoenas") and the City of Detroit ("City") with requests for the production of documents ("City Document Requests").[1] These requests seek documents related to the public art institute that is now commonly known as the Detroit Institute of Arts ("Museum") and its collection of artwork ("Museum Art Collection"). Consistent with our recent discussion, this letter sets forth the terms under which the DIA Corp. will produce documents in response to the DIA Subpoenas.

---

[1] The DIA Subpoenas were issued by: Financial Guaranty Insurance Company ("FGIC"); Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., and Erste Eurpaische Pfandbrief-und Kommunalkreditbank Aktiengesellshaft in Luxemburg S.A., FMS Wertmanagement AoR, Dexia Credit Local & Dexia Holdings, Inc. ("EEPK"); the Official Committee of Retirees ("Retirees"); and Syncora Guarantee Inc. and Syncora Capital Assurance Inc. ("Syncora"). We refer to FGIC and EEPK as the "COPS Creditors" and the issuing parties collectively as the "Creditor Group."

## Subpoenas

Syncora and the Retirees served subpoenas on the DIA Corp on or about March 31, 2014. Thereafter, on or about April 11, 2014, the COPS Creditors served an additional subpoena on the DIA Corp.[2] In addition, Syncora, the Retirees, the COPS Creditors, and other parties to the bankruptcy case served the City with written discovery seeking, among other things, documents related to the Museum and the Museum Art Collection. At the request of the DIA Corp., Syncora and the Retirees agreed to extend the deadline to object to the subpoenas until April 21, 2014 to allow the parties to any additional subpoenas issued prior to the April 11, 2014 deadline for service of written discovery in the *Third Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Docket No. 3632] (the "Scheduling Order") to participate in a joint conference call to address objections and a potential agreement under which documents may be produced. On April 14, 2014, counsel for the DIA Corp., Syncora, and the COPS Creditors participated in a conference call to discuss the subpoenas. During that conference call, the parties discussed an agreement to narrow the scope of the documents to be produced under the DIA Subpoenas subject to the reservation of all rights by the DIA Corp. and the Creditor Group.

## Response

Although the DIA Subpoenas are objectionable, the DIA Corp. recognizes the seriousness of the issues presented in the bankruptcy case and the importance of maintaining the timeline set by the Court in its Scheduling Order. Thus, the DIA Corp. will agree to produce documents subject to the terms and conditions set forth below.

### A. Production

The DIA Corp. will produce the documents discussed during our April 14, 2014 call. In addition, in an attempt to avoid additional requests for documents and in an attempt to streamline the discovery and plan confirmation process, the DIA Corp. will produce or make available for inspection and copying certain other documents or categories of documents. The following reflects the non-privileged documents that the DIA will produce or make available at this time.

1. The DIA Corp. will produce the following documents to the extent they exist and can be reasonably identified with limited burden: (a) a list of works that, as initially discussed with the COPS Creditors, may have been given an estimated value for insurance purposes or otherwise in the range you have requested ("Major Works"); (b) an electronic log or

---

[2] The COPS Creditors contacted the DIA Corp. and the City on or about February 7, 2014 to request informal discovery regarding the Museum and the Museum Art Collection. After the DIA Corp. and the COPS Creditors reached a preliminary understanding regarding the documents that would be provided, the DIA Corp. began to take steps to gather and produce documents. The COPS Creditors did not authorize the DIA Corp. to proceed and, as a result, the DIA Corp. did not produce documents in response to those initial informal requests.

2290 First National Building · 660 Woodward Avenue · Detroit, Michigan 48226-3506
Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo

13-53846-tjt    Doc 4675-5    Filed 05/12/14    Entered 05/12/14 22:39:20    Page 3 of 6

14670686.3

report relating to Major Works, which will include provenance information; (c) documents that reflect restrictions imposed by Robert Tannahill and W. Hawkins Ferry on artwork in the Museum Art Collection; (d) the 1997 Operating Agreement; (e) the DIA Corp.'s insurance policies, which may provide coverage for loss of the Museum Art Collection, for the 2005-2014 period; (f) federal tax returns for the DIA Corp. for the 2005-2011 period; (g) audited financial statements for the DIA Corp. for the 2005-2013 period; (h) certain documents that reflect attendance and survey data for the 2010-2014 period; (i) a log or list of works deaccessioned from the Museum Art Collection to the extent maintained in the usual course of business; (j) the Collection Management Policy; (k) the list of objects provided to Christie's at the beginning of its engagement; and (l) the Museum gift and planned giving policies.

    2.  The DIA Corp. will produce the following categories of documents to the extent they exist and can be reasonably identified with limited burden: (a) the meeting minutes of the board of directors and arts commission; (b) donor files related to Major Works; (c) object files related to Major Works; and (d) certain additional object files and donor files that are specifically identified and which would not impose an additional burden on the DIA Corp.

    3.  The DIA Corp. will make available for inspection and copying the following documents or categories of documents as they are kept in the usual course of business: (a) certain development files; (b) certain archival/library files; and (c) certain curatorial files. The DIA Corp. shall make such documents available at the Museum on April 22, 2014 through April 24, 2014 from 9:00 a.m. to 5:00 p.m. Due to space and staffing constraints, only three persons will be permitted to inspect documents at any given time and the inspection time and protocols should be coordinated with the DIA Corp. ahead of time.

  **B.**  **Conditions**

  The DIA Corp. will produce the documents identified above subject to the following reservations and conditions.

    1.  The DIA Corp. reserves all of its rights under the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure ("Federal Rules"), including the right under FED. R. CIV. P. 45 to object to all or part of the DIA Subpoenas, and the Creditor Group agrees to extend indefinitely the deadline by which the DIA Corp. may file a formal objection to the DIA Subpoenas and will not claim or argue that the DIA Corp., by failing to serve formal objections, has waived objections or the right to move against or otherwise respond to the DIA Subpoenas. The DIA Corp. expressly notes (without limitation) that the DIA Subpoenas are objectionable because, among other things, they are overbroad, improperly seek privileged documents and information, are not reasonably limited in time and in scope, seek documents and information that are irrelevant to any issue in the bankruptcy case, do not allow a reasonable time to comply, seek the disclosure of confidential information, and subject the DIA Corp. to an undue burden. The DIA Corp. acknowledges that the Creditor Group also reserves all of its rights, including the right to move to compel the production of documents from the DIA Corp.

2290 First National Building · 660 Woodward Avenue · Detroit, Michigan 48226-3506
*Detroit · Lansing · Oakland County · Ann Arbor · Kalamazoo*

13-53846-tjt  Doc 4675-5  Filed 05/12/14  Entered 05/12/14 22:39:20  Page 4 of 6

14670686.3

    2.  The DIA Corp. specifically states that it is not waiving or intending to waive its right to claim that documents are privileged or otherwise protected from discovery by the attorney-client privilege, the work-product doctrine, the consulting-expert rule, the common-interest doctrine or privilege, the accountant-client privilege, or any other applicable privilege, protection, or immunity. Given the scope of the documents requested and being produced, it would be impracticable and unduly burdensome for the DIA Corp. to review the entire production for privilege. The DIA Corp. is not agreeing to produce privileged information or documents and the inadvertent production of any privileged or protected information or documents is not intended to and will not waive the DIA Corp.'s right to assert the applicability of any privilege, protection, or immunity. Any such information or documents must be returned to the DIA Corp.'s counsel immediately upon discovery or upon notification and the Creditor Group agrees that it will not use or rely upon any such information or documents.

    3.  The Creditor Group must reimburse the DIA Corp. for the costs and expenses of production, including, without limitation, document production costs and Museum staffing costs. Among other things, the production of any documents identified in A.2 and A.3 above requires the use of a vendor to properly copy sensitive, fragile, and/or operationally necessary documents. Although we understand that the Creditor Group may seek compensation from the City for these expenses, this does not alter the obligation of the Creditor Group to timely reimburse the DIA Corp.

    4.  The Creditor Group must enter into an agreement to protect proprietary, personal, sensitive, or otherwise confidential information or documents and that requires the return or destruction of privileged information or documents. The DIA Corp. will provide a draft form of such an agreement, which is similar to the form previously circulated among the parties. This agreement is an addition to, among other things, the protections provided in the Federal Rules, including FED. R. CIV. P. 45(e)(2).

    5.  The DIA Corp. reserves the right to produce any additional information and documents as necessary. The DIA Corp. is attempting in good faith to respond to the requests in light of the limited time frame provided to respond. The Museum records are voluminous and sensitive, and it is impracticable for the DIA Corp. to conduct an exhaustive search of all such records. Although the DIA Corp. cannot commit to complete its production by the return date under the circumstances presented, it will produce documents on a rolling basis in an effort to substantially comply and will make best efforts to produce in a timely fashion.[3]

---

[3] In an effort to substantially comply with the deadlines in the Scheduling Order and the return date in the DIA Subpoenas, the DIA Corp. has already taken steps to gather documents for production. It has done so based on the Creditor Group's assurances that, among other things, the DIA Corp. will be reimbursed for the costs of production.

### C. Confirmation

We believe that this letter reflects in all material respects the understanding reached during the April 14, 2014 conference call. Please contact me immediately if you disagree or if you do not wish to proceed on this basis.

Very truly yours,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Arthur T. O'Reilly

c: *(via email)*
Mark R. James, Esq.
Geoffrey Irwin, Esq.
Howard S. Sher, Esq.
Matthew G. Summers, Esq.
Deborah L. Fish, Esq.
Rick L. Frimmer, Esq.
Arthur Ruegger, Esq.