# EXHIBIT A

CITY OF DETROIT
FINANCE DIRECTOR'S ORDER APPROVING SALE OF
GENERAL OBLIGATION SELF-INSURANCE BONDS
(LIMITED TAX), SERIES 2004

August 27, 2004

WHEREAS, pursuant to a resolution adopted by the City Council of the City of Detroit, Michigan (the "City") on May 26, 2004 (the "Bond Resolution"), the City authorized the issuance of its General Obligation Self-Insurance Bonds (Limited Tax), Series 2004 in the aggregate principal amount of not to exceed $65,000,000, for the purpose of funding the Risk Management Fund previously established by the City for the purpose of defraying losses for which insurance coverage could be provided by an insurer, but for which the City has determined to self-insure, to establish a reserve fund to secure payment of principal of and interest on the Bonds in an amount not exceeding the maximum amount of principal and interest coming due on the bonds in any fiscal year, if necessary, to provide for a discount of not to exceed 10% of the principal amount of the Bonds and to pay legal, financial, accounting, printing and other expenses related to the issuance of the Bonds; and

WHEREAS, in accordance with the Bond Resolution, the Finance Director of the City (the "Finance Director") filed an application with the Michigan Department of Treasury for an Order of Approval to issue the Bonds (the "Order of Approval") in an aggregate amount not to exceed $65,000,000 and on August 11, 2004, the Order of Approval was issued by the Michigan Department of Treasury; and

WHEREAS, the Bond Resolution provides, among other things, that the Bonds shall be sold to the underwriter or underwriters (the "Underwriters"), who shall be represented by such Underwriter or Underwriters selected by the Finance Director of the City (the "Representative") as confirmed in an order of the Finance Director executed at the time of sale of the Bonds and pursuant to a bond purchase agreement (the "Bond Purchase Agreement") to be entered into by the Representative on behalf of the Underwriters and the City, and to be approved and executed by the Finance Director; and authorizes the Finance Director (i) to determine the principal amounts of the Bonds to be issued on a fixed or variable interest rate basis and tax exempt or taxable basis; (ii) to determine the interest rate provisions, tender and other requirements for Bonds issued on a variable rate basis; (iii) to negotiate the terms for the sale of the Bonds with the Representative; (iv) to cause the Preliminary Official Statement and the final Official Statement for the Bonds to be prepared and circulated; (v) to negotiate the terms for a letter of credit or other credit enhancement to secure payment of all or a portion of the Bonds; (vi) to negotiate the terms of a remarketing agreement, auction agent agreement, broker-dealer agreement or such other agreements as may be necessary to accomplish the sale and delivery of the Bonds as determined by the Finance Director within the parameters of this Resolution, (vii) to negotiate Interest Rate Exchange Agreements with the provider or providers thereof, if economically desirable, in connection with any Bonds issued on a variable or fixed rate basis; and (viii) to take such other actions and make such other determinations not inconsistent with the Bond Resolution as the Finance Director determines to be necessary or

appropriate in connection with the sale of the Bonds as shall be set forth in an order of the Finance Director executed at the time of sale of the Bonds; and

WHEREAS, the City has received an offer for the purchase of the Bonds from the Underwriters designated herein, in the amounts, and with the prices to the City, interest rates and other terms, all as more particularly set forth herein and in the Bond Purchase Agreement.

WHEREAS, pursuant to the terms of the Bond Resolution the City intends to obtain a policy of municipal bond insurance to insure payment of the principal of and interest on the Bonds when due; and

WHEREAS, pursuant to the Bond Resolution, the City Council authorized the preparation of a Preliminary Official Statement (the "Preliminary Official Statement") for distribution to prospective purchasers of the Bonds and authorized the Finance Director of the City to ratify the prior distribution of the Preliminary Official Statement and execute and deliver a final Official Statement in connection with the sale of the Bonds.

NOW, THEREFORE, BE IT ORDERED ON BEHALF OF THE CITY OF DETROIT, MICHIGAN, AS FOLLOWS:

## ARTICLE I
## AUTHORITY AND DEFINITIONS

Section 101. <u>Authority</u>. This Finance Director's Order Approving Sale of the General Obligation Self-Insurance Bonds (Limited Tax), Series 2004 (hereinafter referred to as the "Sale Order" or the "Order") is issued in accordance with the provisions of the Bond Resolution.

Section 102. <u>Definitions</u>. All terms which are defined in the Bond Resolution shall have the same meanings in this Sale Order, except as otherwise specifically provided herein.

## ARTICLE II
## TERMS OF THE BONDS

Section 201. <u>Designation of Series and Principal Amounts</u>. (a) The Bonds shall be designated "GENERAL OBLIGATION SELF-INSURANCE BONDS (LIMITED TAX), SERIES 2004" as provided in Section 302 of the Bond Resolution The Bonds shall be issued in the aggregate principal amount of $62,285,000.00. The Bonds are intended at the time of issuance to be taxable obligations.

Section 202. <u>Interest Rates, Principal Amounts and Maturity Dates</u>. The Bonds shall be issued in book-entry form and will be fully registered as to principal and interest in the name of Cede & Co., as nominee for The Depository Trust Company ("DTC"), in denominations of $5,000 or an integral multiple thereof and will be dated from their date of delivery. The Bonds shall be issued as serial bonds which shall mature on the following dates and in the principal amounts and shall initially be sold at the prices or yields as set forth

below and shall bear interest at the rates set forth below from their date of delivery to maturity, such interest to be payable semi-annually on April 1 and October 1 of each year, commencing on April 1, 2005. Interest shall be calculated on the basis of a 360-day year consisting of twelve 30-day months.

The Bonds shall mature on April 1 in the years and principal amounts, bear interest and be initially sold at the prices and yields as follows:

| Maturity Date April 1 | Principal Amount | Interest Rate % | Yield % | Price |
|---|---|---|---|---|
| 2009 | $ 2,750,000 | 3.920 | 3.920 | 100.000 |
| 2010 | 10,910,000 | 4.160 | 4.160 | 100.000 |
| 2011 | 11,360,000 | 4.390 | 4.390 | 100.000 |
| 2012 | 11,860,000 | 4.570 | 4.570 | 100.000 |
| 2013 | 12,405,000 | 4.700 | 4.700 | 100.000 |
| 2014 | 13,000,000 | 4.850 | 4.850 | 100.000 |

Section 203. <u>Redemption of Bonds</u>. The Bonds are not subject to mandatory or optional redemption prior to maturity.

## ARTICLE III
## APPROVAL OF AGREEMENTS

Section 301. <u>Approval of Underwriters and the Bond Purchase Agreement</u>. The Bonds shall be sold to J.P. Morgan Securities Inc. and Oppenheimer & Co. Inc., as representatives of the Underwriters including J.P. Morgan Securities Inc., Oppenheimer & Co. Inc., A.G. Edwards & Sons, Inc., Loop Capital Markets, LLC, Comerica Securities, Merrill Lynch & Co., Siebert Brandford Shank & Co., LLC. The Bond Purchase Agreement between the City and the Underwriters, dated August 27, 2004, relating to the Bonds, in substantially the form presented on this date to the Finance Director and the purchase prices, discounts and premiums for the Bonds, as set forth therein are hereby approved, with such changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of such Bond Purchase Agreement.

Section 302. <u>Approval of Preliminary Official Statement and Official Statement</u>. The Preliminary Official Statement relating to the Bonds dated August 18, 2004, and its use by the Underwriters is hereby approved and confirmed. The form of the Official Statement dated August 27, 2004, relating to the Bonds is hereby approved with such further changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of the Official Statement.

Section 303. <u>Approval of Disclosure Dissemination Agent Agreement</u>. The appointment of Digital Assurance Certification, L.L.C as Disclosure Dissemination Agent

(the "DDA") of the City in order to provide certain continuing disclosure with respect to the Bonds in accordance with Rule 15c2-12 of the United States Securities and Exchange Commission under the Securities Exchange Act of 1934, as the same may be amended from time to time (the "Rule") is hereby authorized and approved. The Disclosure Dissemination Agent Agreement (the "Disclosure Agreement"), dated as of September 9, 2004, between the City and the DDA is hereby authorized and approved with such changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of the Disclosure Agreement.

## ARTICLE IV
## BOND INSURANCE

Section 401. *Acceptance of Commitment.* The Commitment of Ambac Assurance Corporation (the "Insurer") to provide a municipal bond insurance policy (the "Policy") to secure payment of all of the Bonds, on the terms and conditions specified in the Commitment, is hereby accepted. Capitalized terms used in this Article V and not defined in the Bond Resolution shall have the meanings assigned thereto in the Policy.

Section 402. *Additional Terms Under the Policy.* The additional terms and requirements of the Insurer as set forth in Exhibit A hereto, are hereby accepted and incorporated by reference in this Sale Order.

## ARTICLE V
## BOND REGISTRAR AND PAYING AGENT

Section 501. *Bond Registrar and Paying Agent.* U.S. Bank National Association, Detroit, Michigan, is hereby appointed as bond registrar, transfer agent and paying agent for the Bonds (the "Bond Registrar," "Transfer Agent" and "Paying Agent"). The Bond Registrar, Transfer Agent and Paying Agent shall signify its acceptance of the duties and obligations imposed upon it hereunder and under the Bond Resolution by a written instrument of acceptance delivered to the City on the date of delivery of the Bonds.

## ARTICLE VI
## OTHER PROVISIONS OF GENERAL APPLICATION
## UPON ISSUANCE OF BONDS

Section 601. *Application of Bond Proceeds.* The purchase price for the Bonds is $61,805.131.44 consisting of the par amount ($62,285,000.00) less underwriters' discount of $479,868.56. Of this amount, $705,131.44 shall be immediately transferred to the Bond Issuance Fund (including the cost of municipal bond insurance, which shall be deemed deposited in the Bond Issuance Fund, but which shall be wired directly to the Insurer at closing) for payment of costs of issuance of the Bonds in accordance with Section 503 of the Bond Resolution. The remainder of the proceeds of the Bonds in the amount of $61,100,000.00 shall be deposited in the Risk Management Fund previously created by the City pursuant to Ordinance No. 16-95 (the "Ordinance") and used solely for the purpose of

funding and maintaining (together with the current Risk Management Fund balance) a reserve not less than the Minimum Required Balance (as defined in the Ordinance) to pay for any losses for which insurance coverage could be provided by an insurer, but for which the City has determined to self-insure.

Section 602. Payment of Issuance Expenses. The Finance Director may pay the costs of issuance in an aggregate amount estimated at $705,131.44 (net of Underwriters' discount), including but not limited to, fees of bond counsel, fees of underwriters' counsel, rating agency fees, accounting and auditing fees, financial advisory fees, printing fees, municipal bond insurance and other out-of-pocket expenses, from portions of the proceeds of the Bonds deposited in the Bond Issuance Fund established in Section 503 of the Bond Resolution or from other legally available funds.

Section 603. Sale Order a Contract. The provisions of this Sales Order shall constitute a contract between the City and any Bondholder.

Section 604. Effective Date. This Sale Order shall take effect immediately upon its execution by the undersigned Finance Director of the City.

SO ORDERED this 27th day of August, 2004.

                                    Sean K. Werdlow
                                    Finance Director
                                    City of Detroit, Michigan

# EXHIBIT A
## MUNICIPAL BOND INSURANCE
## (FINANCIAL GUARANTY INSURANCE)

### Section I
### DEFINITIONS

Except as otherwise provided in this Exhibit B, the following terms have the definitions set forth below:

"Ambac Assurance" shall mean Ambac Assurance Corporation, a Wisconsin-domiciled stock insurance company.

"Financial Guaranty Insurance Policy" shall mean the financial guaranty insurance policy issued by Ambac Assurance insuring the payment when due of the principal of and interest on the Bonds as provided therein.

### Section II
### AMBAC ASSURANCE CONSENT LANGUAGE

A. **Consent of Ambac Assurance.**

Any provision of the Bond Resolution and the Sale Order (together, the "Financing Document") expressly recognizing or granting rights in or to Ambac Assurance may not be amended in any manner which affects the rights of Ambac Assurance hereunder without the prior written consent of Ambac Assurance. Ambac Assurance reserves the right to charge the City a fee for any consent or amendment to the Financing Document while the Financial Guaranty Insurance Policy is outstanding.

B. **Consent of Ambac Assurance in lieu of Bondholder Consent.**

Unless otherwise provided in this Section, Ambac Assurance's consent shall be required in lieu of Bondholder consent, when required, for the following purposes: (i) execution and delivery of any supplemental Financing Document or any amendment, supplement or change to or modification of the Financing Document, (ii) removal of the Paying Agent and selection and appointment of any successor paying agent; and (iii) initiation or approval of any action not described in (i) or (ii) above which requires Bondholder consent.

C.  **Consent of Ambac Assurance in the Event of Insolvency.**

Any reorganization or liquidation plan with respect to the City must be acceptable to Ambac Assurance. In the event of any reorganization or liquidation, Ambac Assurance shall have the right to vote on behalf of all Bondholders who hold Ambac Assurance-insured Bonds absent a default by Ambac Assurance under the applicable Financial Guaranty Insurance Policy insuring such Bonds.

D.  **Consent of Ambac Assurance Upon Default.**

Anything in the Financing Document to the contrary notwithstanding, upon the occurrence and continuance of an event of default, Ambac Assurance shall be entitled to control and direct the enforcement of all rights and remedies granted to the Bondholders for the benefit of the Bondholders under the Financing Document pursuant to state law.

## Section III
## NOTICES/INFORMATION TO BE GIVEN TO AMBAC ASSURANCE

**Notices to be sent to the attention of the SURVEILLANCE DEPARTMENT:**

A.  While the Financial Guaranty Insurance Policy is in effect, the City shall furnish to Ambac Assurance, upon request, the following:

  (a)  a copy of any financial statement, audit and/or annual report of the City

  (b)  such additional information it may reasonably request.

Upon request, such information shall be delivered at the City's expense to the attention of the Surveillance Department, unless otherwise indicated.

B.  A copy of any notice to be given to the registered owners of the Bonds, including, without limitation, notice of any redemption of or defeasance of Bonds, and any certificate rendered pursuant to the Financing Document relating to the security for the Bonds, at no cost to Ambac Assurance.

C.  To the extent that the City has entered into a continuing disclosure agreement with respect to the Bonds, Ambac Assurance shall be included as party to be notified.

**Notices to be sent to the attention of the GENERAL COUNSEL OFFICE:**

A.  The City, as appropriate, shall notify Ambac Assurance of any failure of the City to provide relevant notices, certificates, etc.

B.  Notwithstanding any other provision of the Financing Document, the City shall immediately notify Ambac Assurance if at any time there are insufficient moneys to make any payments of principal and/or interest as required and immediately upon the occurrence of any event of default under the Financing Document.

**Other Information to be given to Ambac Assurance:**

The City will permit Ambac Assurance to discuss the affairs, finances and accounts of the City or any information Ambac Assurance may reasonably request regarding the security for the Bonds with appropriate officers of the City. The City will permit Ambac Assurance to have access to and to make copies of all books and records relating to the Bonds at any reasonable time.

**Section IV**
**PAYMENT PROCEDURE PURSUANT TO THE**
**FINANCIAL GUARANTY INSURANCE POLICY**

The following language sets out the applicable procedure for payments under the Financial Guaranty Insurance Policy:

As long as the Bond insurance shall be in full force and effect, the City and the Paying Agent agree to comply with the following provisions:

(a) At least one (1) business day prior to all Interest Payment Dates the Paying Agent will determine whether there will be sufficient funds in the Funds and Accounts to pay the principal of or interest on the Bonds on such Interest Payment Date. If the Paying Agent determines that there will be insufficient funds in such Funds or Accounts, the Paying Agent shall so notify Ambac Assurance. Such notice shall specify the amount of the anticipated deficiency, the Bonds to which such deficiency is applicable and whether such Bonds will be deficient as to principal or interest, or both. If the Paying Agent has not so notified Ambac Assurance at least one (1) business day prior to an Interest Payment Date, Ambac Assurance will make payments of principal or interest due on the Bonds on or before the first (1st) business day next following the date on which Ambac Assurance shall have received notice of nonpayment from the Paying Agent.

(b) the Paying Agent after giving notice to Ambac Assurance as provided in (a) above, make available to Ambac Assurance and, at Ambac Assurance's direction, to The Bank of New York, as insurance trustee for Ambac Assurance or any successor insurance trustee (the "Insurance Trustee"), the registration books of the City

maintained by the Trustee or Paying Agent, if any, and all records relating to the Funds and Accounts maintained under the Financing Document.

(c) the Paying Agent shall provide Ambac Assurance and the Insurance Trustee with a list of registered owners of Bonds entitled to receive principal or interest payments from Ambac Assurance under the terms of the Financial Guaranty Insurance Policy, and shall make arrangements with the Insurance Trustee (i) to mail checks or drafts to the registered owners of Bonds entitled to receive full or partial interest payments from Ambac Assurance and (ii) to pay principal upon Bonds surrendered to the Insurance Trustee by the registered owners of Bonds entitled to receive full or partial principal payments from Ambac Assurance.

(d) the Paying Agent shall, at the time it provides notice to Ambac Assurance pursuant to (a) above, notify registered owners of Bonds entitled to receive the payment of principal or interest thereon from Ambac Assurance (i) as to the fact of such entitlement, (ii) that Ambac Assurance will remit to them all or a part of the interest payments next coming due upon proof of Bondholder entitlement to interest payments and delivery to the Insurance Trustee, in form satisfactory to the Insurance Trustee, of an appropriate assignment of the registered owner's right to payment, (iii) that should they be entitled to receive full payment of principal from Ambac Assurance, they must surrender their Bonds (along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee to permit ownership of such Bonds to be registered in the name of Ambac Assurance) for payment to the Insurance Trustee, and not the Paying Agent, and (iv) that should they be entitled to receive partial payment of principal from Ambac Assurance, they must surrender their Bonds for payment thereon first to the Paying Agent who shall note on such Bonds the portion of the principal paid by the Paying Agent and then, along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee, to the Insurance Trustee, which will then pay the unpaid portion of principal.

(e) in the event that the Paying Agent has notice that any payment of principal of or interest on a Bond which has become Due for Payment and which is made to a Bondholder by or on behalf of the City has been deemed a preferential transfer and theretofore recovered from its registered owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Paying Agent shall, at the time Ambac Assurance is notified pursuant to (a) above, notify all registered owners that in the event that any registered owner's payment is so recovered, such registered owner will be entitled to payment from Ambac Assurance to the extent of such recovery if sufficient funds are not otherwise available, and the Paying Agent shall furnish to Ambac Assurance its records evidencing the payments of principal of and interest on the Bonds which have been made by the Paying Agent and subsequently recovered from registered owners and the dates on which such payments were made.

(f) in addition to those rights granted Ambac Assurance under the Sale Order, Ambac Assurance shall, to the extent it makes payment of principal of or interest on

Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Financial Guaranty Insurance Policy, and to evidence such subrogation (i) in the case of subrogation as to claims for past due interest, the Paying Agent shall note Ambac Assurance's rights as subrogee on the registration books of the City maintained by the Paying Agent upon receipt from Ambac Assurance of proof of the payment of interest thereon to the registered owners of the Bonds, and (ii) in the case of subrogation as to claims for past due principal, Paying Agent shall note Ambac Assurance's rights as subrogee on the registration books of the City maintained by the Paying Agent upon surrender of the Bonds by the registered owners thereof together with proof of the payment of principal thereof.

DELIB:2543607.2\022765-00172



*Sean Werdlow* (handwritten)

| | STATE OF MICHIGAN | |
|---|---|---|
| JENNIFER M. GRANHOLM<br>GOVERNOR | DEPARTMENT OF TREASURY<br>LANSING | JAY B. RISING<br>STATE TREASURER |

August 11, 2004

**APPROVAL**
Municipality Code 82-2050
Application ID Number 256

The Honorable Kwame M. Kilpatrick, Mayor
City of Detroit
1200 Coleman A. Young Municipal Center
2 Woodward Avenue
Detroit, Michigan 48226

Dear Chief Administrative Officer:

Thank you for submitting the *Application for State Treasurer's Approval to Issue Long-Term Securities* to the Michigan Department of Treasury requesting Approval under section 303(7) of Public Act 34 of 2001 for the purpose of establishing funds, reserves, or accounts in amounts determined by the city to defray losses for which insurance coverage could be provided by an insurer but for which the city has determined to self-insure.

Based upon the information provided, the Department of Treasury has determined that the city has
a) indicated the authority to issue the municipal security requested;
b) projected the ability to repay the municipal security when due; and
c) adequately addressed any non-compliance with subsection 303(3) of Act 34.

This approval is for the Self-Insurance Bonds (Limited Tax General Obligation), Series 2004, in the amount of not to exceed $65,000,000.00, with a final maturity of April 1, 2014. No material changes, amendments or addenda may be made to the information provided without further approval of the Department.

Within 15 days after the issuance of a municipal security, you will need to file with the Department the enclosed Security Report and the documents required in section 141.2319, Public Act 34 of 2001. Please mail them to the Local Audit and Finance Division at P.O. Box 30728, Lansing, Michigan 48909-8228.

If you have any questions, please contact the Local Audit and Finance Division at (517) 373-0660.

Sincerely,

Jay B. Rising
State Treasurer

Enclosure