# EXHIBIT B

CITY OF DETROIT
FINANCE DIRECTOR'S ORDER APPROVING SALE OF
GENERAL OBLIGATION CAPITAL IMPROVEMENT BONDS
(LIMITED TAX), SERIES 2005-A(1)

GENERAL OBLIGATION CAPITAL IMPROVEMENT BONDS
(LIMITED TAX), SERIES 2005-A(2)

AND

GENERAL OBLIGATION CAPITAL IMPROVEMENT REFUNDING
BONDS (LIMITED TAX), SERIES 2005-B

June 24, 2005

WHEREAS, pursuant to Act 279, Public Acts of Michigan, 1909, as amended ("Act 279"), Act 34, Public Acts of Michigan, 2001, as amended ("Act 34"), the Charter of the City (the "City Charter") and a resolution adopted by the City Council of the City of Detroit, Michigan (the "City") on May 6, 2005, (the "Bond Resolution"), the City authorized the issuance of one or more series of its (i) General Obligation Capital Improvement Bonds (Limited Tax), Series 2005-A in an aggregate principal amount of not to exceed $87,500,000 (the "Series 2005-A Bonds") for the purpose of financing all or a portion of the costs of the City relating to the 800 MHz Radio Project, including capitalized interest, if necessary (the "Project"), and paying the costs of issuance of such Bonds, and its (ii) General Obligation Capital Improvement Refunding Bonds (Limited Tax), Series 2005-B in an aggregate principal amount of not to exceed $13,500,000 (the "Series 2005-B Bonds," together with the Series 2005-A Bonds, referred to herein as the "Bonds") for the purpose of refunding all or a portion of the Outstanding Prior Bonds (as defined in the Bond Resolution) and paying the costs of issuance of such Bonds, all as particularly described in the Bond Resolution; and

WHEREAS, the Bond Resolution provides, among other things, that the Bonds shall be sold to the underwriter or underwriters to be determined by the Finance Director of the City in the Bond Purchase Agreement (as defined in the Bond Resolution) to be dated the date hereof, for the Bonds to be entered into by the underwriters and the City, and to be approved and executed by the Finance Director, and authorizes the Finance Director to determine and establish (i) the Bonds to be issued on a tax exempt or taxable basis, the series designation, the aggregate principal amount, purchase price, principal maturities and dates, interest rates and/or the method for determining interest rates, interest payment dates, redemption and/or tender for purchase provisions and purchase price for the Bonds, costs of issuance to be paid from Bond proceeds, the approval of the Bond Purchase Agreement and any credit enhancement or other agreement authorized in the Bond Resolution; (ii) the Outstanding Prior Bonds to be refunded; and (iii) such other terms and provisions not inconsistent with the Bond Resolution as the Finance Director determines to be necessary or appropriate in connection with the sale of the Bonds, all as shall be set forth in this order of the Finance Director; and

WHEREAS, the Finance Director has determined that the Series 2005-A Bonds authorized to be issued to finance all or a portion of the costs of the Projects, be issued as both taxable and tax-exempt Bonds in two separate sub-series: (a) the taxable sub-series to be designated General Obligation Capital Improvement Bonds (Limited Tax), Series 2005-A(1) and (b) the tax-exempt sub-series to be designated General Obligation Capital Improvement Bonds (Limited Tax), Series 2005-A(2) in an aggregate principal amount of not to exceed $87,500,000 all as authorized by Section 302 of the Bond Resolution; and

WHEREAS, pursuant to the Bond Resolution, the City Council authorized the preparation of a Preliminary Official Statement (the "Preliminary Official Statement") for distribution to prospective purchasers of the Bonds and authorized the Finance Director of the City to ratify the prior distribution of the Preliminary Official Statement and execute and deliver a final Official Statement in connection with the sale of the Bonds; and

WHEREAS, the Finance Director pursuant to the Bond Purchase Agreement has received an offer for the purchase of the Bonds from J.P. Morgan Securities Inc., as representative of the underwriters set forth in Schedule 1 to the Bond Purchase Agreement and itself (collectively, the "Underwriter"), and desires to sell the Bonds to the Underwriter in the amounts, and with the prices to the City, interest rates and other terms, all as more particularly set forth herein; and

WHEREAS, pursuant to the terms of the Bond Resolution the City intends to obtain a policy of municipal bond insurance to insure payment of the principal of and interest on the Bonds when due.

NOW, THEREFORE, BE IT ORDERED ON BEHALF OF THE CITY OF DETROIT, MICHIGAN, AS FOLLOWS:

ARTICLE I
AUTHORITY AND DEFINITIONS

Section 101. <u>Authority</u>. This Finance Director's Order Approving Sale of General Obligation Capital Improvement Bonds (Limited Tax), Series 2005-A(1), General Obligation Capital Improvement Bonds (Limited Tax), Series 2005-A(2) and General Obligation Capital Improvement Refunding Bonds (Limited Tax), Series 2005-B (hereinafter referred to as the "Order") is issued in accordance with the provisions of the Bond Resolution.

Section 102. <u>Definitions</u>. All terms which are defined in the Bond Resolution shall have the same meanings in this Order, except as otherwise specifically provided herein.

ARTICLE II
TERMS OF BONDS

Section 201. <u>Designation of Series and Principal Amounts</u>. A. The Series 2005-A Bonds shall be issuable in two sub-series designated the "GENERAL OBLIGATION CAPITAL IMPROVEMENT BONDS (LIMITED TAX), SERIES 2005-A(1)" (hereinafter referred to as the "Series 2005-A(1) Bonds") and the "GENERAL OBLIGATION CAPITAL IMPROVEMENT BONDS (LIMITED TAX), SERIES 2005-A(2)" (hereinafter referred to as the "Series 2005-A(2)

Bonds"), as authorized by Sections 301 and 302 of the Bond Resolution. The Series 2005-A(1) Bonds shall be issued in the aggregate principal amount of $73,500,000 and are intended at the time of issuance to be taxable obligations. The Series 2005-A(2) Bonds shall be issued in the aggregate principal amount of $13,530,000 and are intended at the time of issuance to be tax-exempt obligations as described in Section 103(a) of the Code.

B.  The Series 2005-B Bonds shall be designated "GENERAL OBLIGATION CAPITAL IMPROVEMENT REFUNDING BONDS (LIMITED TAX), SERIES 2005-B" as provided in Section 301 of the Bond Resolution. The Series 2005-B Bonds shall be issued in the aggregate principal amount of $11,785,000. The Series 2005-B Bonds are intended at the time of issuance to be tax-exempt obligations as described in Section 103(a) of the Code.

The Series 2005-A(2) Bonds and the Series 2005-B Bonds are collectively referred to hereinafter as the "Tax-Exempt Bonds." The Series 2005-A(1) Bonds are referred to hereinafter as the "Taxable Bonds." The Tax-Exempt Bonds and the Taxable Bonds are collectively referred to hereinafter as the "Bonds."

Section 202.  Interest Rates, Principal Amounts and Maturity Dates. The Bonds shall be dated as of their date of delivery. The Bonds shall be issued as serial bonds and term bonds which shall mature on the following dates and in the principal amounts and shall initially be sold at the prices or yields as set forth below and shall bear interest at the rates set forth below from their date of delivery to maturity, such interest to be payable semi-annually on April 1, and October 1 of each year, commencing on October 1, 2005. Interest with respect to the Bonds shall be calculated on the basis of a 360-day year consisting of twelve 30-day months. Certain Bonds shall be subject to redemption prior to maturity as set forth in Section 203 hereof.

### Series 2005-A(1) Bonds

The Series 2005-A(1) Bonds shall mature on April 1 in the years and principal amounts, bear interest at the rates and be initially sold at the prices and yields as follows:

| Maturity Date April 1 | Principal Amount | Interest Rate % | Yield % | Price |
|---|---|---|---|---|
| 2010 | $ 3,190,000 | 4.270 | 4.270 | 100.000 |
| 2011 | 3,315,000 | 4.300 | 4.300 | 100.000 |
| 2012 | 3,500,000 | 4.360 | 4.360 | 100.000 |
| 2013 | 3,600,000 | 4.390 | 4.390 | 100.000 |
| 2014 | 3,770,000 | 4.500 | 4.500 | 100.000 |
| 2015 | 3,950,000 | 4.530 | 4.530 | 100.000 |
| 2016 | 4,130,000 | 4.610 | 4.610 | 100.000 |
| 2020* | 18,565,000 | 4.960 | 4.960 | 100.000 |
| 2025* | 29,480,000 | 5.150 | 5.150 | 100.000 |

---

* Term Bonds

B-3

## Series 2005-A(2) Bonds

The Series 2005-A(2) Bonds shall mature on April 1 in the years and principal amounts, bear interest at the rates and be initially sold at the prices and yields as follows:

| Maturity Date April 1 | Principal Amount | Interest Rate % | Yield % | Price |
|---|---|---|---|---|
| 2010 | $ 615,000 | 3.50 | 3.110 | 101.708 |
| 2011 | 635,000 | 3.50 | 3.260 | 101.246 |
| 2012 | 660,000 | 4.50 | 3.390 | 106.647 |
| 2013 | 685,000 | 4.00 | 3.520 | 103.228 |
| 2014 | 715,000 | 4.00 | 3.630 | 102.749 |
| 2015 | 745,000 | 4.00 | 3.730 | 102.186 |
| 2016 | 775,000 | 4.00 | 3.830 | 101.425 |
| 2017 | 805,000 | 4.00 | 3.930 | 100.581 |
| 2018 | 835,000 | 4.00 | 4.020 | 99.796 |
| 2019 | 870,000 | 4.00 | 4.110 | 98.847 |
| 2020 | 905,000 | 4.00 | 4.170 | 98.135 |
| 2021 | 1,000,000 | 5.00 | 4.090 | 107.554 |
| 2022 | 1,000,000 | 5.00 | 4.130 | 107.207 |
| 2023 | 1,040,000 | 5.00 | 4.180 | 106.776 |
| 2024 | 1,095,000 | 5.00 | 4.210 | 106.518 |
| 2025 | 1,150,000 | 5.00 | 4.250 | 106.175 |

[remainder of page intentionally left blank]

Series 2005-B Bonds
==================

The Series 2005-B Bonds shall mature on April 1 in the years and principal amounts, bear interest at the rates and be initially sold at the prices and yields as follows:

| Maturity Date April 1 | Principal Amount | Interest Rate % | Yield % | Price |
|---|---|---|---|---|
| 2006 | $ 200,000 | 3.250 | 2.660 | 100.435 |
| 2007 | 100,000 | 3.250 | 2.730 | 100.882 |
| 2008 | 100,000 | 3.250 | 2.850 | 101.049 |
| 2009 | 740,000 | 3.500 | 2.970 | 101.867 |
| 2010 | 770,000 | 3.500 | 3.110 | 101.708 |
| 2011 | 50,000 | 3.500 | 3.260 | 101.246 |
| 2012 | 50,000 | 3.625 | 3.390 | 101.404 |
| 2013 | 900,000 | 4.000 | 3.520 | 103.228 |
| 2014 | 935,000 | 4.000 | 3.630 | 102.749 |
| 2015 | 1,000,000 | 5.000 | 3.730 | 110.300 |
| 2016 | 1,020,000 | 5.000 | 3.790 | 110.197 |
| 2017 | 1,075,000 | 5.000 | 3.860 | 109.573 |
| 2018 | 1,125,000 | 5.000 | 3.930 | 108.954 |
| 2019 | 1,180,000 | 5.000 | 3.990 | 108.426 |
| 2020 | 1,240,000 | 5.000 | 4.040 | 107.989 |
| 2021 | 1,300,000 | 5.000 | 4.090 | 107.554 |

Section 203. Redemption of Bonds.

(a) *Optional Redemption of the Bonds.*

The Bonds or portions thereof in multiples of $5,000, maturing on or after April 1, 2016, may be redeemed prior to their stated maturity, at the option of the City, in whole, or in part in any order of maturity determined by the City (and by lot within a single maturity) on any date permitted by law on or after October 1, 2015 at a redemption price of par plus accrued interest to the date fixed for redemption.

(b) *Mandatory Sinking Fund Redemption of the Bonds.*

The Series 2005-A(1) Bonds maturing April 1, 2020 and April 1, 2025 are hereby designated term bonds (the "Term Bonds") and shall be subject to mandatory redemption in part by the City, by lot, prior to their scheduled maturity on April 1 of each of the years and in the principal amounts set forth below, at the redemption price of 100% of the principal amount of the Bonds to be so redeemed plus accrued interest to the date fixed for redemption:

| $18,565,000 Series 2005-A(1) Bonds Maturing April 1, 2020 | | $29,480,000 Series 2005-A(1) Bonds Maturing April 1, 2025 | |
|---|---|---|---|
| Redemption Date April 1 | Principal Amounts | Redemption Date April 1 | Principal Amounts |
| 2017 | $ 4,315,000 | 2021 | $ 5,565,000 |
| 2018 | 4,515,000 | 2022 | 5,570,000 |
| 2019 | 4,750,000 | 2023 | 5,800,000 |
| 2020 | 4,985,000 | 2024 | 6,115,000 |
|  |  | 2025 | 6,430,000 |

The principal amount of Term Bonds of a maturity to be redeemed on the dates set forth above shall be reduced by the principal amount of Term Bonds of the same maturity and interest rate that have been redeemed (other than by mandatory sinking fund redemption) or otherwise acquired by the City and delivered to the Transfer Agent prior to giving the notice of redemption described below. The City may satisfy any mandatory redemption requirement by the purchase and surrender of Term Bonds of the same maturity and interest rate in lieu of calling such Term Bonds for mandatory redemption.

(c)     Notice of Redemption and Manner of Selection of Bonds.

Notice of redemption of any Bond will be given at least 30 days prior to the date fixed for redemption by mail to the registered owner or owners at the registered addresses shown on the registration books kept by the Bond Registrar and Paying Agent. The failure to receive any such mailed notice, if mailed, or any defect in such mailed notice, will not affect the validity of the redemption. So long as Cede & Co., as nominee of DTC, is the registered owner of the Bonds, all notices of redemption will be sent only to Cede & Co. Bonds will be called for redemption in multiples of $5,000 and Bonds of denominations of more than $5,000 will be treated as representing the number of Bonds obtained by dividing the denomination of the Bond by $5,000 and such Bonds may be redeemed in part. The notice of redemption for Bonds redeemed in part will state that upon surrender of the Bond to be redeemed a new Bond or Bonds in aggregate principal amount equal to the unredeemed portion of the Bond surrendered will be issued to the registered owner thereof. No further interest on the Bonds or portions of the Bonds called for redemption will accrue after the date fixed for redemption, whether presented for redemption or not, provided funds are on hand with the Bond Registrar and Paying Agent to redeem the same.

In case less than the full amount of an outstanding Bond is called for redemption, the Bond Registrar and Paying Agent upon presentation of the Bonds called in part for redemption will register, authenticate and deliver to the registered owners a new Bond in the principal amount of the portion of the original Bond not called for redemption.

## ARTICLE III
## APPROVAL OF AGREEMENTS

Section 301.     Approval of Underwriters and the Bond Purchase Agreement. The Bonds shall be sold to J.P. Morgan Securities Inc., as representative of the Underwriters. The Bond Purchase Agreement between the City and the Underwriters, dated June 24, 2005, relating to the Bonds, in substantially the form presented on this date to the Finance Director and the purchase prices, discounts and premiums for the Bonds, as set forth therein are hereby approved, with such

B-6

changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of such Bond Purchase Agreement.

Section 302. <u>Approval of Preliminary Official Statement and Official Statement</u>. The Preliminary Official Statement relating to the Bonds dated June 17, 2005, as supplemented on June 23, 2005, and its use by the Underwriters is hereby approved and confirmed. The form of the Official Statement dated June 24, 2005, relating to the Bonds is hereby approved with such further changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of the Official Statement.

Section 303. <u>Approval of Escrow Agreement</u>. The Escrow Agreement relating to the Series 2005-B Bonds between the City and the Escrow Agent (as defined below) and dated the date of delivery, is hereby authorized and approved with such changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of the Escrow Agreement.

Section 304. <u>Approval of Disclosure Dissemination Agent Agreement</u>. The appointment of Digital Assurance Certification, L.L.C as Disclosure Dissemination Agent (the "DDA") of the City in order to provide certain continuing disclosure with respect to the Bonds in accordance with Rule 15c2-12 of the United States Securities and Exchange Commission under the Securities Exchange Act of 1934, as the same may be amended from time to time (the "Rule") is hereby authorized and approved. The Disclosure Dissemination Agent Agreement (the "Disclosure Agreement") between the City and the DDA is hereby authorized and approved with such changes as are subsequently approved by the Finance Director, such subsequent approval to be conclusively evidenced by his execution and delivery of the Disclosure Agreement.

ARTICLE IV

BOND REGISTRAR, PAYING AGENT AND ESCROW AGENT

Section 401. <u>Bond Registrar and Paying Agent</u>. U.S. Bank National Association, Detroit, Michigan, is hereby appointed as bond registrar, transfer agent and paying agent for the Bonds (the "Bond Registrar," "Transfer Agent" and "Paying Agent"). The Bond Registrar, Transfer Agent and Paying Agent shall signify its acceptance of the duties and obligations imposed upon it hereunder and under the Bond Resolution by a written instrument of acceptance delivered to the City on the date of delivery of the Bonds.

Section 402. <u>Escrow Agent</u>. U.S. Bank National Association, Detroit, Michigan, is hereby appointed as Escrow Agent (the "Escrow Agent") in connection with the Refunded Bonds.

B-7
13-53846-tjt    Doc 4677-2    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 8 of 18

# ARTICLE V
# BOND INSURANCE

Section 501. <u>Acceptance of Commitment</u>. The Commitment of Ambac Assurance Corporation (the "Insurer") to provide a municipal bond insurance policy (the "Policy") to secure payment of all of the Bonds, on the terms and conditions specified in the Commitment, is hereby accepted.

Section 502. <u>Additional Terms Under the Policy</u>. The additional terms and requirements of the Insurer as set forth in Exhibit B hereto, are hereby accepted and incorporated by reference in this Sale Order. Capitalized terms used in Exhibit B and not defined in the Bond Resolution shall have the meanings assigned thereto in the Policy.

# ARTICLE VI
# OTHER PROVISIONS OF GENERAL APPLICATION
# UPON ISSUANCE OF BONDS

Section 601. <u>Establishment of Sub Accounts and Funds</u>. Pursuant to Section 501 of the Bond Resolution, there are hereby designated and established with the Paying Agent the following separate and segregated subaccounts and funds:

(a) For the Series 2005-A(1) Bonds:

1. The "SERIES 2005-A ACQUISITION FUND A(1) SUBACCOUNT" in which shall be deposited, after making the deposits from the proceeds of the sale of the Series 2005-A(1) Bonds required by Sections 502 and 503 of the Bond Resolution, the remainder of the proceeds of the sale of the Series 2005-A(1) Bonds to pay the costs of the Project, including legal and consulting fees and expenses for reimbursement to the City for moneys previously expended in anticipation of issuance of the Bonds. Upon the payment of all costs of the Project, any balance in the Series 2005-A Acquisition Fund A(1) Subaccount shall be transferred to the Debt Retirement Fund or used in any manner permitted by law.

(b) For the Series 2005-A(2) Bonds:

1. The "SERIES 2005-A ACQUISITION FUND A(2) SUBACCOUNT," in which shall be deposited, after making the deposits from the proceeds of the sale of the Series 2005-A(2) Bonds required by Sections 502 and 503 of the Bond Resolution, the remainder of the proceeds of the sale of the Series 2005-A(2) Bonds to pay the costs of the Project as such costs become due and payable. Upon the payment of all costs of the Project, any balance in the Series 2005 Acquisition Fund A(2) Subaccount shall be transferred to the Debt Retirement Fund or used in any manner permitted by law and which will not cause the interest on the Series 2005-A(2) Bonds to become not excludable from gross income for federal income tax purposes.

(c) For the Series 2005-B Bonds:

1. The "SERIES 2005 ESCROW FUND," in which shall be deposited, after making the deposits from the proceeds of the sale of the Series 2005-B Bonds required by Section 502 and 503 of the Bond Resolution, the remainder of the proceeds of the sale of the Series 2005-B Bonds and any moneys transferred by the City from the debt retirement fund of the bonds to be refunded by the Series 2005-B Bonds, an amount sufficient, together with investment earnings, to pay the principal of and interest on the Refunded Bonds as they become due pursuant to the terms of the Escrow Agreement authorized in Section 303 herein. Any balance remaining in the Series 2005 Escrow Fund after payment in full of principal and interest on the Refunded Bonds by the Series 2005-B Bonds shall be applied as provided in the Escrow Agreement.

Section 602. <u>Application of Series 2005-A(1) Bond Proceeds</u>. The purchase price for the Series 2005-A(1) Bonds is $72,930,375.00 consisting of the par amount ($73,500,000.00) less underwriters' discount of $569,625.00. Of this amount, $1,544,333.04 (which includes $1,340,231.91 for the payment of municipal bond insurance premium to the Insurer, which shall be deemed part of the costs of issuance, but which shall be wired directly to the Insurer at closing) shall be deposited in the Bond Issuance Fund for the payment of the costs of issuance on the Series 2005-A(1) Bonds in accordance with Section 503 of the Bond Resolution. The amount of $2,616,430.04 shall be deposited shall be deposited in the Debt Retirement Fund to pay capitalized interest on the Series 2005-A(1) Bonds. The remainder of the proceeds of the Series 2005-A(1) Bonds in the estimated amount of $68,769,611.92 shall be deposited in the Series 2005-A Acquisition Fund (A)(1) Subaccount established in Section 601 herein, and used to pay the costs of the Project, including legal and consulting fees and expenses for reimbursement to the City for moneys previously expended in anticipation of issuance of the Bonds, subject to the restrictions set forth in the Bond Resolution.

Section 603. <u>Application of Series 2005-A(2) Bond Proceeds</u>. The purchase price for the Series 2005-A(2) Bonds is $13,893,054.90 consisting of the par amount ($13,530,000.00) less underwriters' discount of $104,857.50, plus net original issue premium of $467,912.40. Of this amount, $274,918.64 (which includes $237,347.37 for the payment of municipal bond insurance premium to the Insurer, which shall be deemed part of the costs of issuance, but which shall be wired directly to the Insurer at closing) shall be deposited in the Bond Issuance Fund for the payment of the costs of issuance on the Series 2005-A(2) Bonds in accordance with Section 503 of the Bond Resolution. The amount of $436,069.32 shall be deposited in the Debt Retirement Fund to pay capitalized interest on the Series 2005-A(2) Bonds. The remainder of the proceeds of the Series 2005-A(2) Bonds in the estimated amount of $13,182,066.94 (including the amount of $467,912.40 constituting the net original issue premium of the Series 2005-A(2) Bonds) shall be deposited in the Series 2005-A Acquisition Fund A(2) Subaccount established in Section 601 herein, and used to finance the costs of the Project in accordance with the restrictions set forth in the Bond Resolution.

Section 604. <u>Application of Series 2005-B Bond Proceeds</u>. The purchase price for the Series 2005-B Bonds is $12,486,858.85 consisting of the par amount ($11,785,000.00) less

underwriters' discount of $91,333.75, plus original issue premium of $793,192.60. Of this amount, $238,747.76 (which includes $195,747.02 for the payment of municipal bond insurance premium to the Insurer, which shall be deemed part of the costs of issuance, but which shall be wired directly to the Insurer at closing) shall be immediately transferred to the Bond Issuance Fund for the payment of costs of issuance on the Series 2005-B Bonds in accordance with Section 503 of the Bond Resolution. The remaining portion of the proceeds of the Series 2005-B Bonds of $12,248,111.09 shall be deposited in the Series 2005 Escrow Fund.

Section 606. <u>Payment of Issuance Expenses</u>. The Finance Director may pay the costs of issuance in an aggregate amount estimated at $2,053,224.30 (net of Underwriters' discount), including but not limited to, fees of bond counsel, fees of underwriters' counsel, rating agency fees, accounting and auditing fees, financial advisory fees, printing fees, municipal bond insurance and other out-of-pocket expenses, from portions of the proceeds of the Bonds deposited in the Bond Issuance Fund established in Section 503 of the Bond Resolution or from other legally available funds.

Section 607. <u>Designation of Refunded Bonds</u>. The Prior Bonds listed on Appendix A attached hereto and made a part hereof shall constitute the Refunded Bonds by the Series 2005-B Bonds.

Section 608. <u>Appointment of Verification Agent</u>. Grant Thornton L.L.P., Certified Public Accountants, is hereby appointed as verification agent for the funds deposited and on hand in the Escrow Fund under the Escrow Agreements to perform the duties described in the Official Statement under the heading "Verification of Certain Mathematical Calculations."

Section 609. <u>Sale Order a Contract</u>. The provisions of this Sale Order shall constitute a contract between the City and any Bondholder.

[remainder of page intentionally left blank]

Section 610. <u>Effective Date</u>. This Sale Order shall take effect immediately upon its execution by the undersigned Finance Director of the City.

SO ORDERED this 24th day of June, 2005.

                                                      _____
                                                      Sean K. Werdlow
                                                      Finance Director
                                                      City of Detroit

# **APPENDIX A**

The proceeds from the Series 2005-B Bonds shall be used to refund the following Outstanding Prior Bonds of the City:

1. Downtown Development Limited Tax General Obligation Bonds, Series 1997, maturing July 15, 2008, 2009, 2015 and 2020.

# EXHIBIT B

## MUNICIPAL BOND INSURANCE
## (FINANCIAL GUARANTY INSURANCE)

### Section I
### DEFINITIONS

Except as otherwise provided in this Exhibit B, the following terms have the definitions set forth below:

"Ambac Assurance" shall mean Ambac Assurance Corporation, a Wisconsin-domiciled stock insurance company.

"Financial Guaranty Insurance Policy" shall mean the financial guaranty insurance policy issued by Ambac Assurance insuring the payment when due of the principal of and interest on the Bonds as provided therein.

### Section II
### AMBAC ASSURANCE CONSENT LANGUAGE

A. **Consent of Ambac Assurance.**

Any provision of the Bond Resolution and the Sale Order (together, the "Financing Document") expressly recognizing or granting rights in or to Ambac Assurance may not be amended in any manner which affects the rights of Ambac Assurance hereunder without the prior written consent of Ambac Assurance. Ambac Assurance reserves the right to charge the City a fee for any consent or amendment to the Financing Document while the Financial Guaranty Insurance Policy is outstanding.

B. **Consent of Ambac Assurance in lieu of Bondholder Consent.**

Unless otherwise provided in this Section, Ambac Assurance's consent shall be required in lieu of Bondholder consent, when required, for the following purposes: (i) execution and delivery of any supplemental Financing Document or any amendment, supplement or change to or modification of the Financing Document, (ii) removal of the Paying Agent and selection and appointment of any successor paying agent; and (iii) initiation or approval of any action not described in (i) or (ii) above which requires Bondholder consent.

C.  **Consent of Ambac Assurance in the Event of Insolvency.**

Any reorganization or liquidation plan with respect to the City must be acceptable to Ambac Assurance. In the event of any reorganization or liquidation, Ambac Assurance shall have the right to vote on behalf of all Bondholders who hold Ambac Assurance-insured Bonds absent a default by Ambac Assurance under the applicable Financial Guaranty Insurance Policy insuring such Bonds.

D.  **Consent of Ambac Assurance Upon Default.**

Anything in the Financing Document to the contrary notwithstanding, upon the occurrence and continuance of an event of default, Ambac Assurance shall be entitled to control and direct the enforcement of all rights and remedies granted to the Bondholders for the benefit of the Bondholders under the Financing Document pursuant to state law.

## Section III
## NOTICES/INFORMATION TO BE GIVEN TO AMBAC ASSURANCE

**Notices to be sent to the attention of the SURVEILLANCE DEPARTMENT:**

A.  While the Financial Guaranty Insurance Policy is in effect, the City shall furnish to Ambac Assurance, upon request, the following:

   (a)  a copy of any financial statement, audit and/or annual report of the City

   (b)  such additional information it may reasonably request.

Upon request, such information shall be delivered at the City's expense to the attention of the Surveillance Department, unless otherwise indicated.

B.  A copy of any notice to be given to the registered owners of the Bonds, including, without limitation, notice of any redemption of or defeasance of Bonds, and any certificate rendered pursuant to the Financing Document relating to the security for the Bonds, at no cost to Ambac Assurance.

C.  To the extent that the City has entered into a continuing disclosure agreement with respect to the Bonds, Ambac Assurance shall be included as party to be notified.

B-2

**Notices to be sent to the attention of the GENERAL COUNSEL OFFICE:**

A.  The City, as appropriate, shall notify Ambac Assurance of any failure of the City to provide relevant notices, certificates, etc.

B.  Notwithstanding any other provision of the Financing Document, the City shall immediately notify Ambac Assurance if at any time there are insufficient moneys to make any payments of principal and/or interest as required and immediately upon the occurrence of any event of default under the Financing Document.

**Other Information to be given to Ambac Assurance:**

The City will permit Ambac Assurance to discuss the affairs, finances and accounts of the City or any information Ambac Assurance may reasonably request regarding the security for the Bonds with appropriate officers of the City. The City will permit Ambac Assurance to have access to and to make copies of all books and records relating to the Bonds at any reasonable time.

## Section IV
## PAYMENT PROCEDURE PURSUANT TO THE
## FINANCIAL GUARANTY INSURANCE POLICY

The following language sets out the applicable procedure for payments under the Financial Guaranty Insurance Policy:

As long as the Bond insurance shall be in full force and effect, the City and the Paying Agent agree to comply with the following provisions:

(a) At least one (1) business day prior to all Interest Payment Dates the Paying Agent will determine whether there will be sufficient funds in the Funds and Accounts to pay the principal of or interest on the Bonds on such Interest Payment Date. If the Paying Agent determines that there will be insufficient funds in such Funds or Accounts, the Paying Agent shall so notify Ambac Assurance. Such notice shall specify the amount of the anticipated deficiency, the Bonds to which such deficiency is applicable and whether such Bonds will be deficient as to principal or interest, or both. If the Paying Agent has not so notified Ambac Assurance at least one (1) business day prior to an Interest Payment Date, Ambac Assurance will make payments of principal or interest due on the Bonds on or before the first (1st) business day next following the date on which Ambac Assurance shall have received notice of nonpayment from the Paying Agent.

(b) the Paying Agent after giving notice to Ambac Assurance as provided in (a) above, make available to Ambac Assurance and, at Ambac Assurance's direction, to The Bank of New York, as insurance trustee for Ambac Assurance or any successor insurance trustee (the "Insurance Trustee"), the registration books of the City maintained by the

Trustee or Paying Agent, if any, and all records relating to the Funds and Accounts maintained under the Financing Document.

(c) the Paying Agent shall provide Ambac Assurance and the Insurance Trustee with a list of registered owners of Bonds entitled to receive principal or interest payments from Ambac Assurance under the terms of the Financial Guaranty Insurance Policy, and shall make arrangements with the Insurance Trustee (i) to mail checks or drafts to the registered owners of Bonds entitled to receive full or partial interest payments from Ambac Assurance and (ii) to pay principal upon Bonds surrendered to the Insurance Trustee by the registered owners of Bonds entitled to receive full or partial principal payments from Ambac Assurance.

(d) the Paying Agent shall, at the time it provides notice to Ambac Assurance pursuant to (a) above, notify registered owners of Bonds entitled to receive the payment of principal or interest thereon from Ambac Assurance (i) as to the fact of such entitlement, (ii) that Ambac Assurance will remit to them all or a part of the interest payments next coming due upon proof of Bondholder entitlement to interest payments and delivery to the Insurance Trustee, in form satisfactory to the Insurance Trustee, of an appropriate assignment of the registered owner' s right to payment, (iii) that should they be entitled to receive full payment of principal from Ambac Assurance, they must surrender their Bonds (along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee to permit ownership of such Bonds to be registered in the name of Ambac Assurance) for payment to the Insurance Trustee, and not the Paying Agent, and (iv) that should they be entitled to receive partial payment of principal from Ambac Assurance, they must surrender their Bonds for payment thereon first to the Paying Agent who shall note on such Bonds the portion of the principal paid by the Paying Agent and then, along with an appropriate instrument of assignment in form satisfactory to the Insurance Trustee, to the Insurance Trustee, which will then pay the unpaid portion of principal.

(e) in the event that the Paying Agent has notice that any payment of principal of or interest on a Bond which has become Due for Payment and which is made to a Bondholder by or on behalf of the City has been deemed a preferential transfer and theretofore recovered from its registered owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Paying Agent shall, at the time Ambac Assurance is notified pursuant to (a) above, notify all registered owners that in the event that any registered owner's payment is so recovered, such registered owner will be entitled to payment from Ambac Assurance to the extent of such recovery if sufficient funds are not otherwise available, and the Paying Agent shall furnish to Ambac Assurance its records evidencing the payments of principal of and interest on the Bonds which have been made by the Paying Agent and subsequently recovered from registered owners and the dates on which such payments were made.

(f) in addition to those rights granted Ambac Assurance under the Sale Order, Ambac Assurance shall, to the extent it makes payment of principal of or interest on Bonds,

become subrogated to the rights of the recipients of such payments in accordance with the terms of the Financial Guaranty Insurance Policy, and to evidence such subrogation (i) in the case of subrogation as to claims for past due interest, the Paying Agent shall note Ambac Assurance's rights as subrogee on the registration books of the City maintained by the Paying Agent upon receipt from Ambac Assurance of proof of the payment of interest thereon to the registered owners of the Bonds, and (ii) in the case of subrogation as to claims for past due principal, Paying Agent shall note Ambac Assurance's rights as subrogee on the registration books of the City maintained by the Paying Agent upon surrender of the Bonds by the registered owners thereof together with proof of the payment of principal thereof.

DELIB:2635310.3\022765-00177

B-5
13-53846-tjt    Doc 4677-2    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 18 of 18