# EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **JEFFERSON COUNTY, ALABAMA,** | ) | **Case No. 11-05736-TBB** |
| **a political subdivision of the State of** | ) | |
| **Alabama,** | ) | **Chapter 9** |
| | ) | |
| Debtor. | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE CHAPTER 9 PLAN OF ADJUSTMENT FOR JEFFERSON COUNTY, ALABAMA (DATED November 6, 2013)

On November 20-21, 2013, the Court held a hearing (the "Confirmation Hearing") on confirmation of the *Chapter 9 Plan of Adjustment for Jefferson County, Alabama (Dated November 6, 2013)* [Docket No. 2182], which made certain modifications to the *Chapter 9 Plan of Adjustment for Jefferson County, Alabama (Dated July 29, 2013)* [Docket No. 1911] (as subsequently further supplemented, amended, or modified, including by the Plan Supplement, the "Plan"[1]) proposed by Jefferson County, Alabama, a political subdivision of the State of Alabama and the debtor in the above-captioned chapter 9 bankruptcy case (the "County"). The record of the Confirmation Hearing reflects all appearances that were made at the Confirmation Hearing.

The Court has reviewed and considered the following documents in connection with confirmation of the Plan:

- the Plan and the exhibits to the Plan;

---

[1] Capitalized terms used but not otherwise defined in this Confirmation Order have the meanings ascribed to those terms in the Plan. Any term used in this Confirmation Order that is not defined in the Plan or in this Confirmation Order, but that is defined in title 11 of the United States Code (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except as set forth herein, the rules of interpretation and construction set forth in Section 1.2(b) of the Plan shall apply to this Confirmation Order. Among other things, those rules of interpretation and construction provide that the word "including" shall be deemed to mean "including, without limitation".

1

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 2 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 1 of 79

- the solicitation version of the Disclosure Statement accompanying the Plan [Docket No. 1977];

- the *Order Approving: (A) the Form, Scope, and Nature of Solicitation, Balloting, Tabulation, and Notices with Respect to the "Chapter 9 Plan of Adjustment for Jefferson County, Alabama (Dated July 29, 2013)"; and (B) Related Confirmation Procedures, Deadlines, and Notices* [Docket No. 1975] (the "<u>Plan Procedures Order</u>");

- the *Notice of (I) Approval of Disclosure Statement, (II) Confirmation Hearing on Chapter 9 Plan of Adjustment, and (III) Procedures and Deadlines Regarding Confirmation of the Plan* [Docket No. 1979] (the "<u>Confirmation Hearing Notice</u>");

- the *Affidavit of Service* of Gil Hopenstand [Docket No. 2050 and the unredacted version filed with the Court under seal] and the *Affidavit of Service* of David Hartie [Docket No. 2055] (together, the "<u>Solicitation Affidavits</u>");

- the *Affidavit of Publication re Notice of Confirmation Hearing on Chapter 9 Plan of Adjustment in The Wall Street Journal, The Bond Buyer and The Birmingham News* [Docket No. 2051] (the "<u>Publication Affidavit</u>");

- the *Affidavit of Service* of Karen M. Wagner [Docket No. 2056 and the unredacted version filed with the Court under seal] (the "<u>Ratepayer Notice Affidavit</u>"), including the form of notice attached thereto as **Exhibit D** (the "<u>Ratepayer Notice</u>");

- the *Affidavit of Service* of David Hartie describing certain service effected by Broadridge Financial Solutions, Inc., including the affidavits of mailing attached thereto [Docket No. 2167] (collectively, the "<u>Institutional Nominees' Affidavit</u>");

- the *Plan Supplement* dated September 30, 2013, and all amendments, modifications, and supplements of all documents and agreements filed as part of

2

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 3 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 2 of 79

the Plan Supplement (including all exhibits and attachments thereto and documents referred to in such documents) prior to the date hereof, including in the *Amended Plan Supplement* dated November 14, 2013, in the *Further Supplement to Amended Plan Supplement* dated November 19, 2013, and in the *Second Further Supplement to Amended Plan Supplement* dated November 21, 2013 [Docket Nos. 2101, 2208, 2238 & 2245] (collectively, the "Plan Supplement");

- the *Motion for Approval Pursuant to the Confirmation Order of Compromises and Settlements and Related Relief with Respect to the Chapter 9 Plan of Adjustment for Jefferson County, Alabama* [Docket No. 2183] (the "Plan Settlements Motion");

- the *Notice of Plan Modifications and Hearing Thereon* and the exhibits thereto [Docket No. 2184];

- the *Certification of David Hartie with Respect to the Tabulation of Votes on and Commutation Elections with Respect to the Chapter 9 Plan of Adjustment for Jefferson County, Alabama (Dated July 29, 2013)* [Docket No. 2200] and the *Certification of Gil Hopenstand with Respect to the Tabulation of Votes on the Chapter 9 Plan of Adjustment for Jefferson County, Alabama (Dated July 29, 2013)* [Docket No. 2201] (together, the "Balloting Declarations"), including the accompanying exhibits and tabulation summaries contained therein (together, the "Plan Ballot Summary");

- all objections to confirmation of the Plan, including: (1) the *Ratepayer/Creditors Objection to Plan of Adjustment (the "Plan")* [Docket No. 1920]; (2) the *Ratepayer/Creditors' Supplement and Amendment to Objections Filed July 30, 2013, to Chapter 9 Plan of Adjustment for Jefferson County, Alabama* [Docket No. 2132]; (3) the *Objection to Chapter 9 Plan of Adjustment for Jefferson County, Alabama*, and subsequent *Amended & Supplemented In Toto Objection to*

3

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 4 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc Main Document   Page 3 of 79

*Chapter 9 Plan of Adjustment for Jefferson County, Alabama* [Docket Nos. 2110 & 2112]; (4) the *Claimant Charlotte Breece's & Lillie Starks' Objection to Chapter 9 Plan of Adjustment for Jefferson County, Alabama* [Docket No. 2116]; (5) a letter objection filed by Betty J. Rodman [Docket No. 2123]; (6) the *Objections to the Plan* filed by Frances E. Weems [Docket No. 2124]; and (7) the letter objection filed by Ms. Lucille Crawford [Docket No. 2129];

- the *Omnibus Reply Brief in Support of Plan Confirmation* [Docket No. 2203];

- all other pleadings, briefs, documents, exhibits, and evidence submitted or adduced before or at the Confirmation Hearing;

- the record in the Case and all related adversary proceedings; and

- the statements, arguments, objections, and representations of counsel at the Confirmation Hearing and the entire record of the Confirmation Hearing.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After sufficient notice and opportunity for all parties to be heard, and after due deliberation, based on the Court's thorough review and full consideration of the foregoing materials, and good and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law. Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact. All findings of fact and conclusions of law announced by the Court on the record in connection with confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.[2] The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant

---

[2] The findings of fact and conclusions of law set forth herein and announced on the record during the Confirmation Hearing shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is any direct conflict that cannot be reconciled, then, solely to the extent of such conflict, the provisions of this Confirmation Order shall govern and shall control and take precedence over any findings of fact or conclusions of law announced on the record at the Confirmation Hearing.

4

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 5 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 4 of 79

to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

A.      <u>Venue and Jurisdiction</u>.      The Court has jurisdiction over the Case and confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334 and pursuant to the general order of reference entered by the United States District Court for the Northern District of Alabama on July 16, 1984 (as subsequently amended).   Venue of the Case in the Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during the Case.   Confirmation of the Plan, approval of the compromises and settlements incorporated into the Plan, and validation of the Approved Rate Structure, Rate Resolution, New Sewer Warrants, and New Sewer Warrant Indenture are each core bankruptcy proceedings pursuant to 28 U.S.C. § 157(b)(2)(L).   The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and the Court has the constitutional power and authority to enter a final order with respect thereto.

B.      <u>Eligibility to be a Debtor</u>.  The County was and is an entity eligible to be a chapter 9 debtor under Bankruptcy Code section 109(c).  *See In re Jefferson County*, 469 B.R. 92 (Bankr. N.D. Ala. 2012).

C.      <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Case and all related adversary proceedings and appeals maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders and memorandum opinions entered, all hearing transcripts, and all evidence and arguments made, proffered, submitted, or adduced at the hearings held before the applicable court during the pendency of the Case, including the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

D.      <u>Burden of Proof</u>.  The County, as proponent of the Plan, has the burden of proving that the requirements for confirmation set forth in Bankruptcy Code section 943(b) have been

5

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 6 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 5 of 79

satisfied by a preponderance of the evidence. As more fully set forth in this Confirmation Order and in the record of the Confirmation Hearing, the County has met that burden. Additionally, as more fully set forth in this Confirmation Order and in the record of the Confirmation Hearing, the County has met its burden with respect to approval of the compromises and settlements incorporated into the Plan pursuant to Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law.

E.     <u>Notice and Due Process</u>.    The Plan Procedures Order (1) established the procedures (a) for voting on the Plan, (b) for the solicitation and tabulation of votes with respect to the Plan, and (c) with respect to the Commutation Election and, in the case of those holders, as of the Ballot Record Date, of Class 1-A Claims with respect to the Series 2003-C-9 Through C-10 Sewer Warrants that are deemed to have made the Commutation Election (the "<u>Deemed Commuting Holders</u>"), the opportunity to rescind such deemed Commutation Election; and (2) approved the form of ballots, master ballots, and election documentation. The County thereafter provided due, adequate, and sufficient notice of the Plan and the exhibits thereto, the Confirmation Hearing, the time fixed for returning ballots, and the time fixed for filing objections to Plan confirmation by disseminating the Confirmation Hearing Notice and the Solicitation Packages and by otherwise complying with the "Solicitation Procedures" approved in the Plan Procedures Order as more fully set forth in the declarations of service filed in the Case, including the Publication Affidavit, the Solicitation Affidavits, the Institutional Nominees' Affidavit, and the Balloting Declarations. Service of the Confirmation Hearing Notice and the Solicitation Packages provided reasonable and adequate notice of these matters, provided Creditors with a reasonable period of time in which to make an informed decision whether to accept or reject the Plan and whether to make or not make the Commutation Election (and, in the case of the Deemed Commuting Holders, whether to rescind such deemed Commutation Election) and complied in all regards with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements

6

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 7 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 6 of 79

of the due process clause of the Fourteenth Amendment to the United States Constitution. Service of the Confirmation Hearing Notice and the Solicitation Packages also complied with the applicable provisions of (i) the Bankruptcy Code; (ii) the Bankruptcy Rules, including Bankruptcy Rules 2002, 3017, 3018, and 3020; and (iii) the rules and orders of the Court, including the Plan Procedures Order. Additionally, the County published notice of the Confirmation Hearing in each of *The Birmingham News*, *The Bond Buyer*, and *The Wall Street Journal*, in accordance with the Plan Procedures Order, which publication notice (x) constituted due, adequate, and sufficient notice of the contents of the Confirmation Hearing Notice and the Solicitation Packages on all claimants and other parties whose identity is neither known to nor reasonably ascertainable by the County and on any other claimants or other parties that did not otherwise receive the Solicitation Package, the Confirmation Hearing Notice, or the Ratepayer Notice; and (y) complied with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. Furthermore, as set forth in the Ratepayer Notice Affidavit, the County served the Ratepayer Notice on all known ratepayers and users of the Sewer System, which individualized notice (A) constituted due, adequate, and sufficient actual written notice of the Plan (including with respect to the Approved Rate Structure and Rate Resolution), the opportunity to object to the Plan, the opportunity to be heard at the Confirmation Hearing, and the other contents of the Ratepayer Notice on all ratepayers and users of the Sewer System and each of them; and (B) complied with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. No other or further notice is necessary or shall be required to bind the County, all Creditors, and all ratepayers and users of the Sewer System to the terms of this Confirmation Order and the Plan (including with respect to the Approved Rate Structure and Rate Resolution).

7

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 8 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 7 of 79

F.    <u>Good Faith Solicitation, Voting, and Tabulation</u>. Based on the record in the Case: (1) the solicitation of acceptances of the Plan and the Commutation Election was made in good faith and in compliance with the Plan Procedures Order, all applicable provisions of the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), all applicable provisions of the Bankruptcy Code (including sections 1125 and 1126), and all other applicable laws, rules, and regulations; and (2) the County, all the Plan Support Parties, the Sewer Warrant Trustee, the School Warrant Trustee, the FGIC Rehabilitator, and all their respective Related Parties have acted in "good faith" within the meaning of Bankruptcy Code section 1125(e) and the Bankruptcy Rules in connection with their respective activities relating to the solicitation of acceptances of the Plan and the Commutation Election and their participation in the activities described in Bankruptcy Code section 1125. Accordingly, all such Persons are entitled to the protections afforded by Bankruptcy Code section 1125(e) and the exculpation provisions set forth in Section 5.1 of the Plan. As more fully set forth in the Solicitation Affidavits, the Institutional Nominees' Affidavit, and the Balloting Declarations, all procedures used to distribute solicitation materials to Creditors and to tabulate the ballots, master ballots, Commutation Elections, and, in the case of the Deemed Commuting Holders, rescissions of deemed Commutation Elections with respect to the Plan were fair, reasonable, utilized and applied in good faith, conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Plan Procedures Order, and all other applicable rules, laws, and regulations, and complied with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution.

G.    <u>Acceptances of the Plan</u>. As evidenced by the Plan Ballot Summary, each of Classes 1-A, 1-B, 1-C, 1-D, 2-A, 2-B, 2-C, 5-A, 5-D, 5-E, 6, and 7 has accepted the Plan within the meaning of Bankruptcy Code section 1126(c). Each of Classes 3-A, 3-B, 4, 5-B, 5-C, and 8 is not Impaired under the Plan and conclusively is deemed to accept the Plan pursuant to

8

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 9 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 8 of 79

Bankruptcy Code section 1126(f). Each of Classes 1-E, 1-F, and 9 is a class of subordinated Claims that will neither receive nor retain any property under the Plan on account of such Claims and thus is deemed to reject the Plan pursuant to Bankruptcy Code section 1126(g). Because no votes were cast by the single holder of Claims in Classes 2-D and 2-E, the Court treats those two Classes as Classes that have not accepted the Plan. As set forth below, the Plan is confirmable under Bankruptcy Code section 1129(b) with respect to those Classes that are deemed to reject or have otherwise not accepted the Plan.

H. <u>Consent Under Section 904</u>. Pursuant to and for purposes of Bankruptcy Code section 904, the County consents to entry of this Confirmation Order on the terms and conditions set forth herein and to entry of any further orders as necessary or required to implement or enforce the provisions of the Plan, this Confirmation Order, and any and all related transactions.

I. <u>Compromises and Settlements Embodied in the Plan are Fair, Equitable, Reasonable, and in the Best Interests of the County, Creditors, and Other Persons</u>. The Plan is the result of extensive arms' length negotiations among the County and its significant Creditor constituencies, including the Plan Support Parties, each of which was represented by sophisticated counsel, and the compromises and settlements among the County and various Creditors form the very foundation of the Plan. In the absence of such compromises and settlements, the County's emergence from chapter 9 would likely be significantly delayed by currently stayed and other litigation and burdened by additional expense, which could impair the ability of the County to successfully adjust its debts, thereby prejudicing the recovery for all Creditors and raising uncertainties about the County's future economic condition. Each of the compromises and settlements incorporated into the Plan (a) is made in good faith, furthers the policies and purposes of chapter 9, is fair, equitable, and reasonable; (b) is in the best interests of the County, all Creditors, and all other affected Persons with respect to the Claims, Causes of Action, and other matters resolved by such compromises and settlements; (c) is within the range of reasonable results if the issues were litigated; (d) falls above the lowest point in the range of

9

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 10 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 9 of 79

reasonableness; and (e) meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law. The Plan is supported by all of the Plan Support Parties (including all parties to all pending litigation among the County and the Sewer Plan Support Parties) who hold, among other indebtedness of the County, more than 85% of the outstanding Sewer Warrants and, with respect to the Sewer Warrant Insurers, who insure through their Sewer Wrap Policies and their Sewer DSRF Policies substantially all of the outstanding Sewer Warrants. In addition, the Sewer Warrant Trustee does not object to the Plan, including the compromises and settlements incorporated therein. Further, the Plan will fairly and consensually resolve six adversary proceedings pending in the Court, two appeals pending in the Eleventh Circuit Court of Appeals, and three state court actions (two pending in New York, one pending in Alabama), each of which raises difficult and complex issues. The Plan thus incorporates a complex series of interrelated compromises and settlements that resolve the most significant potential obstacle to confirmation of a plan of adjustment. Moreover, since the compromises and settlements are inextricably interwoven, they all hinge on one another and the approval of all of these compromises and settlements is required in order to satisfy the conditions to the Effective Date set forth in the Plan. Each of these findings and conclusions supports the relief requested in the Plan Settlements Motion. Without limiting the generality of the foregoing, the Court finds and concludes that:

     1. The Plan incorporates and is expressly conditioned upon the approval and effectiveness of a comprehensive compromise and settlement by and among the County and the Sewer Plan Support Parties of numerous issues and disputes related to the Sewer System, the Sewer Released Claims, and the allowance and treatment of the Sewer Debt Claims. As of the Effective Date, the Plan represents a full, final, and complete compromise, settlement, release, and resolution of, among other matters, all disputes and pending or potential litigation (including any appeals) regarding the following: (a) the allowability, amount, priority, and treatment of the Sewer Debt Claims; (b) the validity or

10

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 11 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 10 of 79

enforceability of the Sewer Warrants; (c) the valuation of the Sewer System and of the stream of net sewer revenues pledged under the Sewer Warrant Indenture; (d) the appropriate rates that have been or can be charged to users of the Sewer System; (e) any Causes of Action or Avoidance Actions that the County has asserted or could potentially assert against the JPMorgan Parties or against other of the Sewer Plan Support Parties, including any subordination claims (including equitable subordination claims and statutory subordination claims) relating to any Sewer Debt Claims held by any of the Sewer Plan Support Parties; (f) the Sewer Released Claims that (i) some of the Sewer Plan Support Parties have asserted or (ii) the Sewer Plan Support Parties could potentially assert against other Sewer Plan Support Parties, including, in each case, any subordination claims (including equitable subordination claims and statutory subordination claims) relating to any Sewer Debt Claims held by any of the Sewer Plan Support Parties; (g) how the Sewer Warrant Trustee has applied revenues of the Sewer System to payment of certain Sewer Debt Claims both before and during the Case, including any Causes of Action related to the reapplication to principal of any interest payments made on the Sewer Warrants during the Case or reallocation of any payments made on the Sewer Warrants both before and during the Case among the holders of various series and subseries of Sewer Warrants; (h) the various issues raised by the Declaratory Judgment Action; (i) the scope and extent of any liens or other property rights under the Sewer Warrant Indenture; (j) whether, and the extent to which, the County may recover from Sewer System revenues amounts actually incurred or previously paid by the County on account of professional fees prior to and during the Case; (k) the allowance and amount of any Bank Warrant Default Interest Claims; (l) the priority of the LBSF Periodic Payment Claim, the various issues raised by the LBSF Periodic Payment Claim, and the Sewer Warrant Trustee's treatment of and obligations with respect to that Claim; (m) the various issues raised by the Receivership Actions; and

11

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 12 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 11 of 79

(n) other historical and potential issues associated with the Sewer System and its financing. The compromise and settlement of these myriad, highly complex issues under the Plan – including any and all Sewer Released Claims that have been or could be asserted by the Sewer Released Parties against the other Sewer Released Parties and their respective Related Parties – is made in good faith, is fair, equitable, and reasonable, and is in the best interests of the County, ratepayers and users of the Sewer System, and all Creditors. Absent this comprehensive compromise and settlement, the County and the Sewer Plan Support Parties would devote very substantial time and resources litigating numerous, complex, difficult, and uncertain issues of law and fact resolved by the Plan. Litigation of such issues would be expensive, time-consuming, and risky, and any attempt to confirm a plan of adjustment without compromises and settlements of such issues likely would result in significant confirmation objections and a highly contested confirmation hearing, significant delay in obtaining confirmation of a plan of adjustment, erosion of distributions to Creditors (potentially in a material amount), and uncertainty as to the County's future economic condition. The detrimental effects to the County and its Creditors of further delay in confirmation and consummation of a plan of adjustment could be significant. The comprehensive compromise and settlement by and among the County and the Sewer Plan Support Parties incorporated into the Plan is fair, equitable, and within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law.

2. Notwithstanding the general treatment afforded to holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims, as part of the global settlement among the County, the JPMorgan Parties, and the other Sewer Plan Support Parties, the JPMorgan Parties have agreed, subject to the terms and conditions set forth in the Plan

12

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 13 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 12 of 79

and the Sewer Plan Support Agreements, to make the Commutation Election with respect to all Sewer Warrants held by the JPMorgan Parties (but without receiving the higher recovery being made available to all other holders of Sewer Warrants that make or are deemed to make the Commutation Election), to provide the Reserve Fund LOC, and to reallocate to the other holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims a substantial portion of the JPMorgan Parties' Pro Rata share of the Distribution made to holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims, thereby increasing the recovery received by all other holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims on account of such Claims and reducing the amount of Sewer System indebtedness following the County's emergence from chapter 9. As a result of such reallocation by the JPMorgan Parties and the contributions by the Sewer Warrant Insurers detailed below, each holder of an Allowed Class 1-A Claim or an Allowed Class 1-B Claim (other than the JPMorgan Parties) will receive, in full settlement, satisfaction, release, and exchange of such holder's Claims, a Distribution of Cash from Refinancing Proceeds and other sources of Cash in one of the two amounts specified in Option 1 and Option 2 of Sections 2.3(a) and 2.3(b) of the Plan. Such Distribution is higher than each such holder's Pro Rata share of the Distribution made to all holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims as a result of (a) the reallocation of Plan consideration from the JPMorgan Parties to other holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims; and (b) the consideration provided by the Sewer Warrant Insurers (1) settling and releasing any and all of their Sewer Released Claims against the County and the JPMorgan Parties pursuant to the Plan, (2) agreeing to receive an aggregate Pro Rata Distribution on account of their Allowed Sewer Warrant Insurer Claims that is less than the Pro Rata share of the Distribution received by the holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims, and (3) allowing their Pro Rata share of such reallocated consideration from the JPMorgan Parties to be made

13

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 14 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 13 of 79

available to the holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims on account of such Claims.  The sources of the incremental recovery to those holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims that make the Commutation Election will be from (a) the reallocation of Plan consideration that otherwise would have been distributed to the JPMorgan Parties; and (b) consideration provided by the Sewer Warrant Insurers (1) settling and releasing any and all of their Sewer Released Claims against the County and the JPMorgan Parties pursuant to the Plan, (2) agreeing to receive an aggregate Pro Rata Distribution on account of their Allowed Sewer Warrant Insurer Claims that is less than the Pro Rata share of the Distribution received by the holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims, and (3) allowing their Pro Rata share of such reallocated consideration from the JPMorgan Parties to be made available to the holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims that make the Commutation Election on account of such Claims.  The source of the Non-Commutation True-Up Amount and the Covered Tail Risk to be paid to the Sewer Warrant Insurers pursuant to Section 2.3(c) of the Plan shall also be from the reallocation of Plan consideration that otherwise would have been distributed to the JPMorgan Parties.  In addition to the waiver of swap termination claims totaling approximately $650 million and the receipt by the County of approximately $75 million in connection with or pursuant to undertakings referenced in the JPMorgan SEC Settlement, the JPMorgan Parties (including JPMorgan Chase Bank, N.A. in its capacity as one of the GO Banks) have made concessions pursuant to and in furtherance of the Plan as part of the global settlement incorporated into the Plan, including by agreeing to waive various Claims on account of interest and fees and indemnity Claims and general obligation Claims and to also accept up to approximately $945 million less than the Adjusted Sewer Warrant Principal Amount of Sewer Warrants held by the JPMorgan Parties.  In the aggregate, the above-described waivers, payments, and concessions exceed $1.5 billion and could

14

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 15 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 14 of 79

exceed $1.6 billion. Furthermore, the JPMorgan Parties provided additional value through the issuance of the Reserve Fund LOC, which materially reduces the financing costs associated with the New Sewer Warrants. Accordingly, without giving effect to the Reserve Fund LOC and after giving effect to the concessions and reallocations described above and the Supporting Sewer Warrantholder Directed Distribution described below, but subject to the potential receipt of Excess Refinancing Proceeds pursuant to Section 4.19 of the Plan, the JPMorgan Parties will receive, on the Effective Date, Cash in the amount of $273 million, which is approximately 22% of the Adjusted Sewer Warrant Principal Amount of Sewer Warrants held by the JPMorgan Parties (approximately $1.218 billion), plus a Distribution of Cash on account of any applicable Reinstated Sewer Warrant Interest Payments in accordance with Section 4.6(a) of the Plan in full, final, and complete settlement, satisfaction, release and discharge of all Sewer Debt Claims and Sewer Released Claims held by the JPMorgan Parties. The compromise and settlement under the Plan of these Claims held by the JPMorgan Parties and any and all Sewer Released Claims that have been or could be asserted against the JPMorgan Parties is made in good faith, is fair, equitable, and reasonable, and is in the best interests of the County, ratepayers and users of the Sewer System, and all Creditors. Absent this compromise and settlement, the County, the JPMorgan Parties, the Sewer Warrant Insurers, and other parties would otherwise devote substantial time and resources to litigating the issues resolved by the Plan and potentially materially delay the resolution of the Case. Obtaining final resolution of such complex and protracted litigation would be prolonged and costly, the ultimate results would be uncertain, recoveries to Creditors could be materially reduced, and the County's future economic condition could be adversely affected. The compromise and settlement by and among the County, the JPMorgan Parties, the Sewer Warrant Insurers, and other Plan Support Parties incorporated into the Plan is the product of good faith and arms' length negotiations, is in

15

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 16 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 15 of 79

the best interests of the County, ratepayers and users of the Sewer System, and all Creditors, is within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law. As set forth above, these compromises and settlements are supported by the County, the Sewer Plan Support Parties, and the Sewer Warrant Trustee. These substantial concessions and consideration provided by the JPMorgan Parties and the Sewer Warrant Insurers justify the releases provided to such parties by the County, the Sewer Released Parties, and other releasing parties under the Plan.

      3. As part of the global settlement among the County and the Sewer Plan Support Parties, the Plan provides for the JPMorgan Parties to make the Supporting Sewer Warrantholder Directed Distribution. In order to implement the Sewer Warrantholder Directed Distribution, the JPMorgan Parties have agreed, subject to the terms and conditions set forth in the Plan and in the Supporting Sewer Warrantholder Plan Support Agreement, to reallocate and distribute to each Supporting Sewer Warrantholder a portion of the JPMorgan Parties' Cash recovery under the Plan, after giving effect to all other compromises and settlements incorporated into the Plan. Such Supporting Sewer Warrantholder Directed Distribution is an integral part of the comprehensive agreement among the County, the JPMorgan Parties, the Sewer Warrant Insurers, and the Supporting Sewer Warrantholders – including those agreements on the part of the Supporting Sewer Warrantholders set forth in Section 5 of the Supporting Sewer Warrantholder Plan Support Agreement to make the Commutation Election, to cooperate in the implementation of the Litigation Standstill (as defined in the Supporting Sewer Warrantholder Plan Support Agreement), and to bind any transferees in respect of such matters by complying with the restrictions on transfer of their Sewer Warrants, in each case as and to the extent set forth in the Supporting Sewer Warrantholder Plan

16

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 17 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 16 of 79

Support Agreement – in order to facilitate the various settlements to be implemented pursuant to the Plan and the occurrence of the Effective Date, and is essential to the Plan. The making of the Supporting Sewer Warrantholder Directed Distribution as part of the global settlement among the County and the Sewer Plan Support Parties is the product of good faith and arms' length negotiations, is in the best interests of the County, ratepayers and users of the Sewer System, and all Creditors, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law.

4. As part of the global settlement among the County and the Sewer Plan Support Parties, the Plan provides that the County will pay $1,250,000.00 to LBSF in full, final, and complete settlement, satisfaction, release, and exchange of the LBSF Periodic Payment Claim. The compromise and settlement for approximately 75% of the asserted LBSF Periodic Payment Claim is the product of good faith and arms' length negotiations, is in the best interests of the County, ratepayers and users of the Sewer System, and all Creditors, is within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law.

5. Although the global settlement contained in the July 29, 2013 version of the Plan would be within the range of reasonable results if the issues were litigated, would fall above the lowest point in the range of reasonableness, and would satisfy the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law, certain of the Sewer Plan Support Parties made additional concessions or otherwise provided forms of credit support or enhancement regarding the New Sewer Warrants (including the provision of the New Sewer Wrap

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 18 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 17 of 79

Policy[3] and delivery of the Reserve Fund LOC and the other Reserve Fund LOC Agreements), yielding further value of up to $300 million in the aggregate (subject to potential recoupment of any excess concessions through the payment of Excess Refinancing Proceeds under Section 4.19 of the Plan) as part of the final version of the Plan. These additional concessions and forms of credit support or enhancement were made as a result of further good faith, arms' length negotiations among the County and the affected Sewer Plan Support Parties. These additional concessions and forms of credit support or enhancement are material, significant, and remove any possible doubt about the fairness of the Plan and the settlements incorporated into the Plan, the feasibility of the Plan, the scope and depth of concessions made by the Sewer Plan Support Parties, and the ready satisfaction of the standards for approval of the Plan, including under Bankruptcy Code sections 105(a), 943(b), and 1123(b), Bankruptcy Rule 9019(a), and other applicable law.

6.      The Plan incorporates a compromise and settlement among the County, the GO Banks, and the GO Warrant Trustee regarding the withdrawal and release of substantial Claims on account of default rate interest, the GO Banks' fees and expenses, postpetition interest, and, in the case of JPMorgan Chase Bank, N.A., the GO Swap Agreement Claims. In the case of JPMorgan Chase Bank, N.A., this compromise and settlement is also part of the global settlement between the County and the JPMorgan Parties incorporated into the Plan. The compromise and settlement of these Claims under the Plan is made in good faith, is fair, equitable, and reasonable, and is in the best interests of the County, all Creditors, and all other affected Persons. Absent this

---

[3]    As used in this Confirmation Order and the Plan, the term "New Sewer Wrap Policy" shall refer to the final municipal bond insurance policy issued by Assured on the Effective Date and guaranteeing the scheduled payment of principal of and interest on the Insured Series 2013 Warrants (as that term is defined in the New Sewer Warrant Indenture) notwithstanding any increase in the amount of the insured portion of the New Sewer Warrants from the amount assumed in the Further Amended Financing Plan, the final amount of which insured portion shall be as specified in the definitive documentation executed on the Effective Date.

compromise and settlement, the County, the GO Banks, and the GO Warrant Trustee would likely devote time and resources litigating the issues resolved by the Plan. The compromise and settlement by and among the County, the GO Banks, and the GO Warrant Trustee incorporated into the Plan is the product of good faith and arms' length negotiations, is in the best interests of the County and all Creditors, is within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law. The concessions and consideration provided by the GO Banks, with the support of the GO Warrant Trustee, justify the releases provided to such parties by the County, the GO Released Parties, and other releasing parties under the Plan.

7.      The Plan incorporates a compromise and settlement between the County and National regarding various issues that could be raised and litigated with respect to the GO Policy Claims and the treatment of the Series 2003-A GO Claims and Series 2004-A GO Claims arising from the Series 2003-A GO Warrants and the Series 2004-A GO Warrants insured by National. The compromise and settlement of the GO Policy Claims under the Plan is made in good faith, is fair, equitable, and reasonable, and is in the best interests of the County, all Creditors, and all other affected Persons. Without limitation, the Plan resolves complex disputes that could arise regarding the allowance, priority, and timing of payment of different components of the GO Policy Claims, including a substantial compromise by National with respect to the National Fees and Expenses Claims and the National Reimbursement Claims. The compromise and settlement by and between the County and National incorporated into the Plan is the product of good faith and arms' length negotiations, is in the best interests of the County and all Creditors, is within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under

19

Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law. The concessions and consideration provided by National justify the releases provided to it by the County, the GO Released Parties, and other releasing parties under the Plan.

8. As part of the global settlement among the County and the Sewer Plan Support Parties and with the goal of permanently resolving all sewer-debt-related issues that arose prior to the filing of or during the Case, the County has agreed to release all Sewer Released Claims that belong to or could be asserted by or on behalf of the County, has agreed to recognize the validity of the Sewer Debt Claims that are Allowed under the Plan, and in exchange has obtained substantial concessions and consideration from the Sewer Released Parties. The aggregate effect of the comprehensive compromises, settlements, and other provisions of the Plan is (a) for each Sewer Released Party to waive and release all other Sewer Released Parties and their respective Related Parties from any and all Sewer Released Claims, and (b) to resolve and dismiss with prejudice any pending litigation (including pending appeals) commenced by the County or any of the Sewer Plan Support Parties against the County or any of the Sewer Plan Support Parties, as well as to settle and release all Causes of Action purportedly asserted, or that could be asserted, in the Wilson Action and the Bennett Action (collectively with any other claim or Cause of Action that a third party could assert against any of the Sewer Released Parties on behalf of the County, "Ratepayer Claims") because those Ratepayer Claims constitute and are encompassed within the Sewer Released Claims that are resolved and forever released by the Plan. Separately and to the extent that the Ratepayer Claims are not Sewer Released Claims, the comprehensive compromises, settlements, and other provisions of the Plan operate both to remediate the harm that would give rise to any claim for damages in the Wilson Action or the Bennett Action (which are duplicative or derivative of the damages associated with Sewer Released Claims

20

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 21 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 20 of 79

belonging to the County that are released, compromised, and settled pursuant to the Plan) and to moot the Wilson Action and the Bennett Action.

9. The Court also finds that the allowance of the Claims in Class 1-A, Class 1-B, Class 1-C, and Class 1-D under the Plan, along with the treatment of those Allowed Claims under the Plan, (a) shall on the Effective Date moot any pending Causes of Action challenging the validity or enforceability of the Sewer Warrants or the issuance thereof, payments of principal and interest made in respect of the Sewer Warrants, or any Sewer System rates or charges established or collected by the County in connection with the issuance or the payment of debt service in respect of the Sewer Warrants, or seeking the return of any payment made by the County in connection with the Sewer Warrants or any financing or other transaction regarding the Sewer System; and (b) shall not be subject to any collateral attack or other challenge by any Person in any court or other forum from and after the Effective Date. The Court also finds that the impact of the Plan, pursuant to which the Claims in respect of the Sewer Warrants are allowed and treated, and pursuant to which the Sewer System's indebtedness will be reduced by more than $1.4 billion (from approximately $3.2 billion of principal and interest outstanding as of the Petition Date to approximately $1.785 billion of principal as of the Effective Date), moots the relief requested in the Ratepayer Claims purportedly asserted in the Wilson Action and the Bennett Action. Indeed, counsel for the plaintiffs in both the Wilson Action and the Bennett Action have conceded that the purpose of their respective lawsuits is to attack the amount of the County's indebtedness associated with the Sewer System, which is an issue that the County is properly compromising, settling, and resolving pursuant to the Plan.

10. Without limitation of the foregoing, the Sewer Released Claims include all Claims or Causes of Action arising from or related to, among other things, alleged acts of fraud or corruption by the Sewer Released Parties, and each of them, in connection with, among other things, the County, the Sewer System, the issuance of the County's sewer

21

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 22 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 21 of 79

debt, and investment in the Sewer System. The consideration provided between and among the Sewer Released Parties under the Plan to fully, finally, and completely compromise, settle, and resolve the Sewer Released Claims is within the range of reasonable results if the issues were litigated, falls above the lowest point in the range of reasonableness, and meets the standards for approval under Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law. Because the Plan compromises, settles, and resolves all disputed matters concerning the costs associated with the allegations of fraud and corruption, allegations of past acts, including acts of fraud and corruption, are not a basis for any Person to challenge the validity of the Sewer Warrants, any payments made in connection with the Sewer Warrants, or the reasonableness of the County's sewer rates under applicable law from and after the Effective Date (including with respect to the Approved Rate Structure and Rate Resolution). The effective resolution of all Sewer Released Claims (including the Ratepayer Claims) through the Plan is within the County's powers under the Bankruptcy Code and applicable nonbankruptcy law, is fair, equitable, reasonable, and appropriate, and is in the best interests of the County, all Creditors, and all other affected Persons (including, to the extent applicable, the plaintiffs in the Wilson Action and the plaintiffs in the Bennett Action).

11.     In summary, the Ratepayer Claims asserted in the Wilson Action and the Bennett Action, to the extent they have any validity at all (*but see* Paragraph J below), are Causes of Action that rightfully belong to and can be brought and settled only by or on behalf of the County. Such Ratepayer Claims effectively seek to either have monies returned to the County or obtain declarations concerning the County's liabilities or lack thereof. The settlements, compromises, and validations contained in the Plan, including the validation and allowance of the Sewer Debt Claims, the amount of the New Sewer Warrants issued, and the validation of the Approved Rate Structure, will (a) render the

portion of the Wilson Action pending as an adversary proceeding in this Court and the remaining count of the Wilson Action pending in state court moot or otherwise resolved as of the Effective Date, and all aspects of the Wilson Action shall be dismissed in connection with confirmation of the Plan; and (b) render the Bennett Action moot or otherwise resolved as of the Effective Date, and the Bennett Action shall be dismissed in connection with confirmation of the Plan.

J.      <u>Lack of Merit to Ratepayer Claims</u>.  The Court finds that the legal theories and arguments underlying the Ratepayer Claims are deficient on the merits and that, to the extent not otherwise resolved or mooted pursuant to the Plan, the Wilson Action and the Bennett Action shall be dismissed for failure to state cognizable claims against the defendants in such actions. Among other deficiencies, (1) the County either owns or can otherwise resolve all potential Causes of Action that could be asserted by or on behalf of the County relating to the Sewer Warrant Indenture and related documents, with respect to the validity of the Sewer Warrants, any payments made in connection with the Sewer Warrants, and the aggregate debt associated with the Sewer System; (2) Sewer System ratepayers and users are not third party beneficiaries of the Sewer Warrant Indenture or other related documents concerning the issuance of the Sewer Warrants or any swap, financing, or other transaction relating to the Sewer System; (3) County voter or Sewer System ratepayer approval was not required for the issuance of the Sewer Warrants under applicable Alabama law; (4) Sewer System ratepayers and users do not have a property interest in any particular level of Sewer System rates; (5) no class has heretofore been certified, or could be certified as a matter of law, to pursue the Ratepayer Claims at issue in the Bennett Action and the Wilson Action due to, among other things, the failure of such putative classes to satisfy the elements of commonality and typicality required under Federal Rule of Civil Procedure 23; and (6) the complaints in the Bennett Action and the Wilson Action fail to articulate cognizable or redressable claims as a matter of law.

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 24 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 23 of 79

K. __Exculpation, Discharge, Releases, and Injunctions__. Sections 5.1, 6.2, and 6.3 of the Plan contain certain exculpation, discharge, release, and injunctive provisions. Based on the facts and circumstances presented, the Court finds that good and valuable consideration has been provided for such provisions and that such provisions are fair, equitable, reasonable, and integral elements of the adjustment of the County's debts and the resolution of the Case. Each of the provisions in Sections 5.1, 6.2, and 6.3 of the Plan is hereby approved and shall be effective and binding upon all Persons as provided in the Plan. Without limiting the generality of the foregoing, the Court finds and concludes that:

1. The compromises, settlements, and releases incorporated into the Plan are: (a) essential elements of the Plan inextricably bound with the other provisions of the Plan; (b) in exchange for the good and valuable consideration provided by the Sewer Released Parties, the GO Released Parties, and their respective Related Parties; (c) good faith settlements and compromises of the Claims and Causes of Action released by such releases; (d) in the best interests of the County, all Creditors, and all other affected Persons; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any of the releasing parties as set forth herein asserting any Claims or Causes of Action released pursuant to such release. In addition, approval of such releases pursuant to this Confirmation Order is a condition to the occurrence of the Effective Date, and all Sewer Released Parties and all GO Released Parties have relied on the efficacy and conclusive effects of such releases and the injunctions incorporated into the Plan when making concessions pursuant to the Plan and in agreeing to accept and support the settlement and treatment under the Plan of their respective Claims, Causes of Action, and other rights under the Plan.

2. In the context of this unique chapter 9 Case, each of the exculpation, discharge, release, and injunctive provisions set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an

24

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 25 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 24 of 79

essential means of implementing the Plan pursuant to Bankruptcy Code section 1123(a)(5); (c) is an integral element of the transactions incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the County, all Creditors, and all other affected Persons; (e) is important to the overall objectives of the Plan to finally resolve all Claims and Sewer Released Claims or GO Released Claims and was necessary to the formation of consensus to support the compromises and settlements incorporated into the Plan; and (f) is consistent with Bankruptcy Code sections 105, 901, 903, 904, 943(b), 1123, and 1129, other applicable provisions of the Bankruptcy Code, and other applicable law.

3.    The releases set forth in Section 6.3 of the Plan granted by all Persons who voted to accept the Plan or who made the Commutation Election are consensual and are binding only with respect to Persons who affirmatively chose to vote in favor of the Plan or who affirmatively made the Commutation Election and thereby to receive the Distributions and other benefits associated with the Plan. The releases set forth in Section 6.3 of the Plan by holders of Sewer Warrants who are deemed to have made the Commutation Election are also consensual and justified for the reasons set forth in Paragraph L below.

4.    As set forth above, the releases and other provisions of the Plan settle the Causes of Action asserted on behalf of ratepayers and users of the Sewer System in the Wilson Action and the Bennett Action, remediate the harm that could give rise to any claim for damages in the Wilson Action or the Bennett Action, and moot the Wilson Action and the Bennett Action and all Ratepayer Claims asserted therein. To the extent not otherwise resolved, the Plan also provides for a bar order enjoining the further assertion of any Ratepayer Claims against any of the Sewer Released Parties or any of their respective Related Parties, and each of them, from and after the Effective Date. In addition to approving the settlement and release of Ratepayer Claims as set forth in the

Plan pursuant to Bankruptcy Code sections 105(a) and 1123(b), Bankruptcy Rule 9019(a), and other applicable law, the Court has the jurisdiction and power to bar non-settling parties from asserting Ratepayer Claims against Sewer Released Parties and their respective Related Parties under Bankruptcy Code section 105 and Rule 16 of the Federal Rules of Civil Procedure (applicable to the County's chapter 9 Case by virtue of Bankruptcy Rule 7016).  *See Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 453-55 (11th Cir. 1996); *see also* 11 U.S.C. § 901(a) (Bankruptcy Code section 524(e) does not apply in chapter 9).  The final resolution of the Ratepayer Claims has a direct nexus with the adjustment of the County's debt in the Case because such resolution is integrally related to the County's comprehensive compromise and settlement with the Sewer Plan Support Parties, who provided good and valuable consideration in exchange for and conditioned on their being released from all Sewer Released Claims (including Ratepayer Claims) under the Plan.  Further prosecution of Ratepayer Claims by any Person would affect the County and the Case negatively.  Enjoining further litigation of Ratepayer Claims and other Sewer Released Claims (including the portion of the Wilson Action pending in state court) is an essential and critical element of the global settlement to be effected pursuant to the Plan, is reasonable, and is fair and equitable to all parties. To the extent not otherwise resolved, without a bar order applicable to the Ratepayer Claims, the County will not be able to effectuate the compromises and settlements incorporated into the Plan, obtain a complete resolution of the issues addressed by the Plan, achieve confirmation of the Plan, or emerge from chapter 9 on the advantageous terms provided in the Plan.  The Ratepayer Claims are sufficiently mature, and the issues related to the Ratepayer Claims are sufficiently defined and concrete, to permit effective decision-making by the Court.  With respect to the Ratepayer Claims, the Court finds and concludes that (a) the Ratepayer Claims are interrelated with, if not entirely duplicative or derivative of, the Claims and Causes of Action of the Sewer Released Parties and the

26

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 27 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 26 of 79

Sewer Released Claims; (b) the likelihood of any Person other than the County prevailing on or recovering on the Ratepayer Claims is remote, including for the reasons set forth in Paragraph J above; and (c) further litigation of the Ratepayer Claims would be complex, difficult, time-consuming, expensive, risky, uncertain and likely would deplete the resources of the Sewer Released Parties. Federal policy strongly favors pretrial settlement of all types of litigation, especially to avoid adding the burden of litigation costs to the financial instability of debtors under the Bankruptcy Code and to facilitate the successful restructuring of such debtors' affairs through the bankruptcy process. Bar orders play an integral role in facilitating settlement. *See Munford*, 97 F.3d at 453-55; *U.S. Oil & Gas v. Wolfson*, 967 F.2d 489, 493 (11th Cir. 1992). Pursuant to the Plan, therefore, this Confirmation Order constitutes a bar order pursuant to Bankruptcy Code section 105, Rule 16 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 7016 barring and enjoining any and all Persons from commencing or continuing any action, directly or indirectly and in any manner, to assert, pursue, litigate, or otherwise seek any recovery or relief on or on account of any Ratepayer Claims from and after the Effective Date (including any further prosecution of the portion of the Wilson Action pending in state court).

L.     <u>Commutation Election</u>.  The Plan offers the Commutation Election to all holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims, enhances the consideration payable under the Plan based on whether a particular holder made, was deemed to make, or, in the case of the Deemed Commuting Holders, did not timely rescind such deemed Commutation Election, and cancels the Sewer Wrap Policies with respect to all holders that made, were deemed to have made, or did not timely rescind any deemed Commutation Election.  Section 4.7(a) of the Plan contains certain presumptions regarding the Commutation Election, including provisions that deem certain holders of Class 1-A and Class 1-B Claims to have made or not to have made the Commutation Election.  Based on the facts and circumstances presented, the

27

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 28 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document    Page 27 of 79

Court finds that all of the Plan's provisions regarding the Commutation Election, including the presumptions regarding the Commutation Election set forth in Section 4.7(a) of the Plan, are fair, equitable, reasonable, and integral elements of the adjustment of the County's debts, the compromises and settlements incorporated into the Plan, and the resolution of the Case, and each of these provisions is hereby approved and shall be effective and binding upon all Persons as provided in the Plan. Without limiting the generality of the foregoing, the Court finds and concludes that:

      1.      The Commutation Election may appropriately be included in the Plan as a means of implementing the Plan and treating Class 1-A Claims and Class 1-B Claims under the Plan pursuant to the Bankruptcy Code, including Bankruptcy Code sections 105(a), 1123(a)(3), 1123(a)(5)(E), 1123(a)(5)(F), 1123(a)(5)(H), 1123(b)(3)(A), 1123(b)(5), 1123(b)(6), 1129 (to the extent applicable in chapter 9), and 943(b). To the extent relevant, Bankruptcy Code section 524(e) is not applicable in chapter 9 cases.

      2.      In the context of this unique chapter 9 Case, the Commutation Election set forth in the Plan and the presumptions set forth in Section 4.7(a) of the Plan: (a) are within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) are an essential means of implementing the Plan pursuant to Bankruptcy Code section 1123(a)(5); (c) are an integral element of the transactions, compromises, and settlements incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the County, all Creditors, and all other affected Persons; (e) are important to the overall objectives of the Plan to finally resolve all Sewer Debt Claims and Sewer Released Claims and were necessary to the formation of consensus to support the compromises and settlements incorporated into the Plan; (f) are in exchange for good and valuable consideration provided by the Sewer Warrant Insurers and the JPMorgan Parties under the Plan; and (g) are consistent with Bankruptcy Code sections 105, 901, 903, 904,

28

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 29 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 28 of 79

943(b), 1123, and 1129, other applicable provisions of the Bankruptcy Code, and other applicable law.

3. Notice of the availability of the Commutation Election and disclosure regarding the effects of making or not making the Commutation Election and, in the case of the Deemed Commuting Holders, the ability to rescind such Commutation Election were duly and amply provided to all holders of Class 1-A and Class 1-B Claims and complied with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. No other or further notice is necessary or shall be required. Each holder of Class 1-A and Class 1-B Claims received due, adequate, and proper notice of the Commutation Election and the consequences of making or not making such Commutation Election, and therefore had a full and fair opportunity to express its desire to make or not to make, or, in the case of the Deemed Commuting Holders, to rescind, the Commutation Election.

4. The deemed elections set forth in Section 4.7(a) of the Plan and the Plan Procedures Order comport with what rational holders of the respective Sewer Warrants would likely choose to do given the materially larger Distribution from the County under the Plan for holders who make or are deemed to make the Commutation Election and in view of the economic circumstances of each of the Sewer Warrant Insurers (including, for example, the fact that FGIC was subject to a New York state rehabilitation proceeding) and the potential costs and delay attendant to asserting or potentially litigating claims under the applicable Sewer Wrap Policies. In addition, the deemed Commutation Election and the choice not to rescind such deemed Commutation Election by the applicable Deemed Commuting Holders are appropriate and consensual because such holders were given adequate notice of and had the opportunity not to make the Commutation Election or rescind such deemed Commutation Election by properly

marking and timely returning their Ballots or, in the case of the Deemed Commuting Holders, electing to rescind such deemed Commutation Election, indicating that such holders did not want to make the Commutation Election. *See, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. 286, 304-06 (Bankr. D. Del. 2013); *In re Calpine Corp.*, 2007 Bankr. LEXIS 4390, at *26 (Bankr. S.D.N.Y. Dec. 19, 2007); *In re Conseco, Inc.*, 301 B.R. 525, 528 (Bankr. N.D. Ill. 2003).

5.     Because the Commutation Election set forth in Sections 2.3(a) and 2.3(b) of the Plan, the presumptions set forth in Section 4.7(a) of the Plan, and the releases set forth in Section 6.3(a) of the Plan were properly included in the Plan and provided for consensual waivers and releases by each Creditor that made, was deemed to make, or, in the case of the Deemed Commuting Holders, did not timely rescind such deemed Commutation Election, the consequences of that Commutation Election shall be binding and enforceable from and after the Effective Date, including pursuant to Sections 2.3(a), 2.3(b), 4.7, and 6.3(a) of the Plan.  The Court may properly, and will, retain jurisdiction to implement and enforce the Commutation Election after the Effective Date.

6.     The provisions contained in and pursuant to the Plan to give effect to the Commutation Election, including Section 6.3(a) of the Plan and the related presumptions, releases, and injunctions under the Plan (collectively, the "Commutation Provisions") are (a) crucial to the global compromises and settlements that are contained in the Plan stemming from and related to the Sewer Plan Support Agreements; (b) essential to the overall structure of the Plan; (c) fair, equitable, and reasonable to all parties in interest; (d) essential elements of the Plan inextricably bound with the other provisions of the Plan; (e) in exchange for good and valuable consideration provided by the Sewer Warrant Insurers and the JPMorgan Parties; (f) in the best interests of the County, all Creditors, and all other affected Persons; and (g) given and made after due notice and opportunity for hearing. In addition, approval of the Commutation Provisions pursuant to this

Confirmation Order is a condition to the occurrence of the Effective Date, and all of the Sewer Warrant Insurers have relied on the efficacy and conclusive effects of the Commutation Provisions when making concessions pursuant to the Plan and in agreeing to accept and support the settlement and treatment under the Plan of their respective Claims, Causes of Action, and other rights under the Plan. The Commutation Provisions are necessary to give effect to the Commutation Election and related presumptions under the Plan, which are a material component of the global settlement under the Plan and the participation in that settlement by the Sewer Warrant Insurers. In sum, the Commutation Provisions are lawful, appropriate, and necessary to give effect to the compromises and settlements under the Plan.

M.    <u>Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the County as the party submitting the Plan pursuant to Bankruptcy Code section 941, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b). The Plan and Disclosure Statement describe in specific and conspicuous language all acts and actions to be enjoined, including as a result of the Commutation Election, and identify the Persons that would be subject to injunctions. Bankruptcy Rule 3016(c) is therefore satisfied.

N.    <u>Compliance with the Requirements of Sections 943(b) and 1129(a)</u>.  The Plan complies with all of the requirements of Bankruptcy Code section 943(b) and all requirements of Bankruptcy Code section 1129(a) that are applicable in a chapter 9 case.

1.    <u>Bankruptcy Code Section 943(b)(1) and (b)(2)</u>.  The Plan complies with all applicable sections of the Bankruptcy Code, including section 1122, the applicable subsections of section 1123, and all the provisions of chapter 9.

(a)    <u>Bankruptcy Code Section 1122</u>.  Each Claim placed in a particular Class under the Plan is substantially similar to the other Claims in that Class.

(i)     <u>Justification for Separate Classification Generally</u>.  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims created under the Plan, the classifications were not done for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Creditors.

(ii)    <u>Separate Classification of Classes 1-E and 1-F</u>.  The contractual terms of the documents giving rise to the Claims classified in Class 1-E and Class 1-F provide that such Claims are subordinated to, or are secured by liens that are subordinate to the liens that secure, the Sewer Warrant Claims and certain other Claims under the Sewer Warrant Indenture.  The Plan gives effect to these subordination provisions by separately classifying such Claims based on their respective priority in relation to the Sewer Warrant Claims and certain other Claims under the Sewer Warrant Indenture.

(iii)   <u>Separate Classification of Classes 5-A, 5-B, 5-C, and 5-D</u>.

a.     The indebtedness evidenced and ordered to be paid on account of the GO Warrants and the GO Insurance Policies constitutes, and with respect to the Replacement 2001-B GO Warrants will constitute, a general obligation of the County in support of which the County irrevocably pledged its full faith and credit.  This pledge is a commitment to pay and a commitment of the County's revenue-generating powers to produce the funds necessary to pay the principal of and interest on the GO Warrants, and the Replacement 2001-B GO Warrants once issued, as they become due, and to reimburse National on account of the GO Insurance Policies.

b.	Revenues legally available to the County for payment of debt service on the GO Warrants and to reimburse National on account of the GO Insurance Policies include, and with respect to the Replacement 2001-B GO Warrants will include, ad valorem taxes, sales and business license taxes, and other general fund revenues.

c.	Pursuant to Section 215 of the Alabama Constitution, as amended by Amendment No. 208, and Sections 11-3-11(a)(2), 11-14-11, and 11-14-16 of the Alabama Code (collectively, "Section 215"), the County may levy and collect a 5.1 mill special ad valorem tax (the "Special Tax"), not to exceed one-fourth of one percent per annum, for the purpose of paying any debt or liability against the County due and payable during the year and created for the erection, repairing, furnishing, or maintenance of public buildings, bridges, or roads, and any remaining proceeds of the Special Tax in excess of amounts payable on bonds, warrants, or other securities issued by the County for such limited purposes may be spent for general county purposes.  Section 215 provides that the County may use proceeds of the Special Tax for general county purposes only after all amounts due and payable in any given fiscal year on bonds, warrants, or other securities issued by the County for the erection, repairing, furnishing, or maintenance of public buildings, bridges, or roads (collectively, "Special Tax Obligations") are paid in full, and such proceeds shall be applied first to Special Tax Obligations.

d.      The Special Tax is separate and distinct from the County's 5.6 mill general ad valorem tax, the proceeds of which are used for general county purposes and to support the operation of the County's basic governmental functions, including management, personnel, accounting, taxation, purchasing, data processing, law enforcement, the judiciary, and land utilization.

e.      The GO Warrants and the obligations to reimburse National on account of the GO Insurance Policies constitute, and the Replacement 2001-B GO Warrants will constitute, a debt or liability against the County created for the erection, repairing, furnishing, or maintenance of public buildings, bridges, or roads within the scope and meaning of Section 215.  As such, all amounts payable on account of or in connection with the GO Warrants, and the Replacement 2001-B GO Warrants once issued, and to reimburse National on account of the GO Insurance Policies in any given fiscal year must be paid by the County from the proceeds of the Special Tax prior to the County using any such proceeds in such fiscal year for general county purposes, including but not limited to current governmental expenses or any expenditures related to the County's sewer system.

f.      By virtue of the application of Section 215 with respect to the proceeds of the Special Tax, any and all claims arising from or in connection with the GO Warrants, the GO Warrant Indenture, the GO Insurance Policies, and the Standby GO Warrant Purchase Agreement are properly classified separately

under the Plan and properly treated in the fashion provided by the Plan.

(b) <u>Bankruptcy Code Section 1123(a)</u>. The Plan satisfies the mandatory requirements of section 1123(a) that are applicable in a chapter 9 case pursuant to Bankruptcy Code section 901(a).

(i) <u>Bankruptcy Code Section 1123(a)(1)</u>. Section 2.1 of the Plan classifies all Claims, other than Administrative Claims, which need not be classified.

(ii) <u>Bankruptcy Code Section 1123(a)(2)</u>. Section 2.1 of the Plan specifies that Class 3-A, Class 3-B, Class 4, Class 5-B, Class 5-C, and Class 8 are unimpaired within the meaning of Bankruptcy Code section 1124.

(iii) <u>Bankruptcy Code Section 1123(a)(3)</u>. Sections 2.1, 2.3(a), 2.3(b), 2.3(c), 2.3(d), 2.3(e), 2.3(f), 2.3(g), 2.3(h), 2.3(i), 2.3(j), 2.3(k), 2.3(o), 2.3(r), 2.3(s), 2.3(t), 2.3(u), and 2.3(w) of the Plan specify that Class 1-A, Class 1-B, Class 1-C, Class 1-D, Class 1-E, Class 1-F, Class 2-A, Class 2-B, Class 2-C, Class 2-D, Class 2-E, Class 5-A, Class 5-D, Class 5-E, Class 6, Class 7, and Class 9 are Impaired, and specify the treatment of the Claims in each of those Impaired Classes.

(iv) <u>Bankruptcy Code Section 1123(a)(4)</u>. Each subsection of Section 2.3 of the Plan satisfies section 1123(a)(4) by uniformly providing the same treatment for each Claim that is classified in each particular Class under the Plan, unless and to the extent that the holder of a particular Claim has agreed to a less favorable treatment of such particular Claim (including as described in (A) Sections 2.3(a) and 2.3(b) of the Plan with respect to the treatment of the Class 1-A and Class 1-B Claims,

35

respectively, held by the JPMorgan Parties; and (B) Section 2.3(d) of the Plan with respect to LBSF's receipt of the payment on account of the LBSF Periodic Payment Claim). The differing Distributions made available to holders of Allowed Class 1-A and Class 1-B Claims based on whether the applicable Creditor made or was deemed to make the Commutation Election does not violate section 1123(a)(4) because the Commutation Election was equally made available to all holders of Claims within Class 1-A and Class 1-B, and thus the Plan provides the same treatment (i.e., makes the same option available) for each such Claim.

(v) <u>Bankruptcy Code Section 1123(a)(5)</u>. The Plan (including the Plan Supplement) provides adequate and appropriate means for its implementation, including (1) the County Commission's continued lawful governance of the County, its property, and its enterprises; (2) the application and enforcement of the Approved Rate Structure; (3) the issuance of the New Sewer Warrants under the New Sewer Warrant Indenture, including the provision of the New Sewer Wrap Policy and the delivery of the Reserve Fund LOC and the other Reserve Fund LOC Agreements; (4) the issuance of the Replacement 2001-B GO Warrants under the Amended and Restated GO Warrant Indentures; (5) the disposition of the Accumulated Sewer Revenues, the Sewer Warrant Indenture Funds, and Refinancing Proceeds in accordance with the Plan; (6) the Commutation Election, the presumptions associated therewith, the consequences thereof, and the releases in connection therewith; (7) the comprehensive compromise and settlement by and among the County and the Sewer Plan Support Parties of numerous issues and disputes related to the Sewer System, the Sewer Released Claims, and the allowance and

36

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 37 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 36 of 79

treatment of the Sewer Debt Claims; (8) the compromises and settlements by and among the County, the GO Banks, and National; (9) the JPMorgan reallocation of Distributions and consideration provided by the Sewer Warrant Insurers, all of which increases the recovery received by all other holders of Allowed Class 1-A Claims and Allowed Class 1-B Claims on account of such Claims and reduces the amount of Sewer System indebtedness following the County's emergence from chapter 9; (10) the Supporting Sewer Warrantholder Directed Distribution by the JPMorgan Parties and the associated agreements by the Supporting Sewer Warrantholders, which facilitate the various settlements to be implemented pursuant to the Plan and the occurrence of the Effective Date; (11) the cancellation of warrants and other documents under the Plan, including the Sewer Insurance Policies to the extent set forth in the Plan; (12) the surrender of all instruments, warrants, or notes to the extent and in the manner provided in Section 4.15(e)(v) of the Plan; (13) the execution of the School Warrant Second Supplemental Indenture; and (14) the other modifications and adjustments of the County's principal secured indebtedness and the liens securing that indebtedness under the Plan, as well as the treatment of other Claims against the County in accordance with the Bankruptcy Code.

(c)     The Plan contains permissive provisions that the Court finds are appropriate pursuant to Bankruptcy Code section 1123(b), including the following:

(i)     <u>Assumption of Executory Contracts and Unexpired Leases</u>. Section 3.1(a) of the Plan provides for the assumption of the executory contracts and unexpired leases identified on the Schedule of Assumed

Agreements (the "Assumed Agreements"). The assumption of the Assumed Agreements is in accordance with the requirements of Bankruptcy Code section 365, and is expressly authorized by Bankruptcy Code section 1123(b)(2). The County has exercised reasonable business judgment in determining to assume the Assumed Agreements. The Cure Payments associated with the Assumed Agreements are determined to be as specified on the Schedule of Assumed Agreements and shall be paid pursuant to Section 3.1(b) of the Plan with each such payment having the consequences specified in Section 3.1(d) of the Plan. The County has demonstrated adequate assurance of future performance with respect to each of the Assumed Agreements, to the extent required. The assumption of each of the Assumed Agreements under the Plan shall be binding on the County and each non-debtor party to each such executory contract or unexpired lease.

(ii)     Rejection of Executory Contracts and Unexpired Leases. Section 3.2(a) of the Plan provides for the rejection of all executory contracts and unexpired leases that the County entered into on or before the Petition Date that (A) have not been previously assumed or rejected by the County and (B) are not set forth on the Schedule of Assumed Agreements. Rejection of these executory contracts and unexpired leases pursuant to the Plan satisfies the requirements of Bankruptcy Code section 365, and is expressly authorized by Bankruptcy Code section 1123(b)(2). The County has exercised reasonable business judgment in determining to reject the executory contracts and unexpired leases to be rejected under the Plan. The rejection of each executory contract or unexpired lease rejected

under the Plan shall be binding on the County and each non-debtor party to each such executory contract or unexpired lease.

(iii)     <u>Settlement of County's Claims</u>.  The Plan provides for the settlement of various claims belonging to the County, including the County's Sewer Released Claims and GO Released Claims.  The settlement of such claims pursuant to the Plan is expressly authorized by Bankruptcy Code section 1123(b)(3)(A), and, as detailed above, is reasonable, appropriate, in the best interests of the County, all Creditors, and all other affected Persons, and not inconsistent with the Bankruptcy Code or other applicable law.

(iv)     <u>Vesting of Preserved Claims</u>.  Section 4.12 of the Plan provides for all Preserved Claims (which, for the avoidance of doubt, exclude Sewer Released Claims and GO Released Claims) to be preserved and vest in the County on the Effective Date, but only to the extent not expressly released pursuant to the Plan, this Confirmation Order, or any other order of the Court.  The preservation and vesting of such Preserved Claims pursuant to the Plan are expressly authorized by Bankruptcy Code section 1123(b)(3)(B), reasonable, appropriate, in the best interests of the County, all Creditors, and all other affected Persons, and not inconsistent with the Bankruptcy Code or other applicable law.

(v)     <u>Deemed Acceleration of the Sewer Warrants</u>.  Section 4.15(h) of the Plan (A) provides for the deemed acceleration of the Sewer Warrants and the optional acceleration by the Sewer Warrant Insurers (irrespective of the terms of the applicable Sewer Wrap Policy) of their respective Sewer Wrap Policies; and (B) details the effects, if any, of acceleration of the Sewer Warrants vis-à-vis the Sewer Wrap Policies and

Sewer Wrap Payment Rights. Such deemed acceleration of the Sewer Warrants simplifies the administration of Distributions under the Plan and provides clarity regarding the treatment and resulting rights of holders of Sewer Warrants. Such deemed acceleration of the Sewer Warrants also provides clarity regarding the rights of the Sewer Warrant Insurers and other parties in interest. Section 4.15(h) of the Plan is reasonable, appropriate, in the best interests of the County, all Creditors, and all other affected Persons, and not inconsistent with the Bankruptcy Code or other applicable law.

(vi) <u>Retention of Jurisdiction</u>. Section 6.4 of the Plan provides that the Court shall retain jurisdiction after the Effective Date to the fullest extent provided by law. Pursuant to Bankruptcy Code section 945(a), the Court may properly, and will, retain jurisdiction over each of the matters specified in Section 6.4 of the Plan, including because the retention of such jurisdiction is of critical importance to assure that post-confirmation disputes regarding matters resolved or addressed by the Plan do not impede the successful implementation of the Plan. Section 6.4 of the Plan is reasonable, appropriate, in the best interests of the County, all Creditors, and all other affected Persons, and not inconsistent with the Bankruptcy Code or other applicable law.

2. <u>Bankruptcy Code Section 1129(a)(2)</u>. The County, as proponent of the Plan, has complied with all applicable Bankruptcy Code provisions, including sections 1125 and 1126, the Bankruptcy Rules, and the Plan Procedures Order in transmitting the Solicitation Packages and related documents and notices (including the Ratepayer Notice) and in soliciting and tabulating votes on and elections made or deemed made with respect to the Plan. The Plan therefore satisfies Bankruptcy Code section 1129(a)(2).

40

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 41 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 40 of 79

3.    Bankruptcy Code Section 1129(a)(3).  The County has proposed the Plan in good faith and not by any means forbidden by law.  The Plan was duly approved by the governing body of the County as provided by Alabama law and is in all respects consistent with applicable state law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Case, the Plan itself, the lengthy process leading to the Plan's formulation (including the compromises, settlements, and releases incorporated therein), and the process associated with the Plan's prosecution.  The County's good faith is evident from the facts and records of the Case, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing and other proceedings held in the Case.  The Plan (including the compromises, settlements, and releases incorporated therein and all other agreements, documents, and instruments necessary to implement the Plan) is the product of extensive arms' length negotiations among the County, the Plan Support Parties, and other Creditors.  The Plan itself, the process leading to its formulation, including the negotiation of eight (8) separate Plan Support Agreements between the County and various Creditors and of subsequent supplements thereto with the primary Sewer Plan Support Parties, and the overwhelming Creditor support of the Plan (with the holders of over $3.9 billion in Claims voting to accept the Plan, and the holders of less than $18 million in Claims voting to reject the Plan) provide independent evidence of the County's good faith, serve the public interest, and assure fair treatment of Creditors.  Consistent with the overriding purpose of chapter 9, the Case was filed, and the Plan was proposed, with the legitimate and honest purpose of allowing the County to adjust its debts and emerge from bankruptcy with a capital structure that will allow the County to satisfy its obligations with sufficient liquidity and capital resources while continuing to provide for the health, safety, and welfare of its citizens in accordance with applicable state law

while, simultaneously, maximizing distributions to all Creditors. The Plan therefore satisfies Bankruptcy Code section 1129(a)(3).

4. <u>Bankruptcy Code Section 1129(a)(6)</u>. There is no governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the sewer rates and charges of the County. To the extent that there is any "governmental regulatory commission" that is required to approve the sewer rate changes contained in the Approved Rate Structure, the approval of the Plan and the Approved Rate Structure by the County Commission constitutes such approval and complies with the requirements of Bankruptcy Code sections 943(b)(6) and 1129(a)(6) and applicable state law. The Plan therefore satisfies Bankruptcy Code section 1129(a)(6).

5. <u>Bankruptcy Code Section 1129(a)(8)</u>. Classes 1-A, 1-B, 1-C, 1-D, 2-A, 2-B, 2-C, 5-A, 5-D, 5-E, 6, and 7 are Impaired under the Plan and have voted to accept the Plan. Classes 3-A, 3-B, 4, 5-B, 5-C, and 8 are not Impaired under the Plan and are deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). No votes were cast by the single holder of Claims in Classes 2-D and 2-E, which is Impaired under the Plan, and out of an abundance of caution, the Court treats those Classes as Classes that have not accepted the Plan. The Plan therefore satisfies Bankruptcy Code section 1129(a)(8), except with respect to Classes 1-E, 1-F, 2-D, 2-E, and 9 (which Classes are addressed in the discussion of Bankruptcy Code section 1129(b) below).

6. <u>Bankruptcy Code Section 1129(a)(10)</u>. As set forth in the Plan Ballot Summary, Classes 1-A, 1-B, 1-C, 1-D, 2-A, 2-B, 2-C, 5-A, 5-D, 5-E, 6, and 7 each voted affirmatively to accept the Plan. No Ballots were sent to or received from "insiders" holding Claims in any of those Classes. The Plan therefore satisfies Bankruptcy Code section 1129(a)(10).

7. <u>Bankruptcy Code Section 943(b)(3)</u>. To the extent required, the County fully disclosed at or in connection with the Confirmation Hearing all amounts that have

42

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 43 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 42 of 79

been paid and are projected to be paid by the County for services or expenses in the Case or incident to the Plan. The Court has reviewed and considered such amounts paid and to be paid and has determined, based on the unique facts, circumstances, and context of the Case, the Plan, and the transactions contemplated by the Plan, that all such amounts are reasonable (including for purposes of Section 2.2(c) of the Plan) and have been and, to the extent to be paid, may appropriately be paid by the County. The Plan therefore satisfies Bankruptcy Code section 943(b)(3).

8.      <u>Bankruptcy Code Section 943(b)(4)</u>. The County is not prohibited by law from taking any action necessary to carry out the Plan. All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including the documentation of the New Sewer Warrants), have been negotiated in good faith, at arms' length, are in the best interests of the County, all Creditors, and all other affected Persons, and shall, upon completion of documentation and execution and the occurrence of the Effective Date, be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law. The Plan therefore satisfies Bankruptcy Code section 943(b)(4).

9.      <u>Bankruptcy Code Section 943(b)(5)</u>. Section 2.2(b)(i) of the Plan provides that unless the Person holding an Allowed Administrative Claim agrees to different treatment, or already has been paid the full amount of such Allowed Administrative Claim, the County shall pay to that Person Cash in an amount equal to the Allowed amount of such Administrative Claim, without interest, on or before the later of (A) ten (10) Business Days after the Effective Date, and (B) ten (10) Business Days after the date on which any order determining such Claim is an Allowed Administrative Claim becomes a Final Order. The Plan therefore satisfies Bankruptcy Code section 943(b)(5).

10.      <u>Bankruptcy Code Section 943(b)(6)</u>. There is no provision of the Plan for which any regulatory or electoral approval is necessary under applicable nonbankruptcy

law. To the extent that any "regulatory" approval is necessary regarding the Approved Rate Structure, the approval of the Plan and the Approved Rate Structure by the County Commission constitutes such approval and complies with the requirements of Bankruptcy Code sections 943(b)(6) and 1129(a)(6) and applicable state law. The Plan therefore satisfies Bankruptcy Code section 943(b)(6).

11. <u>Bankruptcy Code Section 943(b)(7)</u>. The evidence proffered, submitted, and adduced at or prior to the Confirmation Hearing demonstrates that the economic assumptions underlying the Plan: (a) are reasonable, persuasive, and credible; (b) have not been credibly controverted by other evidence; and (c) establish that the Plan affords all Creditors the potential for the greatest economic return from the County's assets. Therefore, confirmation of the Plan is in the best interests of all Creditors, given the complex nature of the Case, and will result in a feasible adjustment of the County's debts. The Plan therefore satisfies Bankruptcy Code section 943(b)(7).

O. <u>Bankruptcy Code Section 1129(b)</u>. Class 1-E, Class 1-F, and Class 9 are Impaired under the Plan but have not accepted the Plan because such Classes are deemed to reject the Plan under Bankruptcy Code section 1126(g). No votes were cast by the single holder of Claims in Classes 2-D and 2-E, which is Impaired under the Plan, and out of an abundance of caution, the Court treats those Classes as Classes that have not accepted the Plan. Accordingly, the requirements of Bankruptcy Code section 1129(b) must be satisfied with respect to each of Class 1-E, Class 1-F, Class 2-D, Class 2-E, and Class 9. In Section 2.8 of the Plan, the County requested that, with respect to any Impaired Class of Claims that fails to accept the Plan, the Court confirm the Plan pursuant to Bankruptcy Code section 1129(b). Notwithstanding the requirements of Bankruptcy Code section 1129(a)(8), based on the evidence proffered, submitted, and adduced at the Confirmation Hearing, the Plan does not discriminate unfairly, and is fair and equitable, with respect to each of Class 1-E, Class 1-F, Class 2-D, Class 2-E, and

Class 9.  The Plan accordingly can be confirmed pursuant to Bankruptcy Code section 1129(b)(1).

1. <u>Class 1-E</u>.  The Sewer Swap Agreement Claims are secured by liens that are subordinate to the liens securing the Sewer Warrant Claims and certain other Claims under the Sewer Warrant Indenture.  Because the Sewer Warrant Claims are receiving substantially less than a full recovery under the Plan and because the value for purposes of the Plan of the collateral securing those Claims is not more than the amount of the Claims, the subordinated liens have no value and the associated nonrecourse Sewer Swap Agreements Claims are not allowable claims under the Bankruptcy Code.  *See* 11 U.S.C. §§ 502(b)(1), 506(a), 506(d) & 927.  Accordingly, the Plan properly provides that Class 1-E Claims will neither receive any Distributions nor retain any property under the Plan on account of such Claims, and the Plan can be confirmed notwithstanding the deemed rejection of the Plan by Class 1-E.  *See* 11 U.S.C. § 1129(b)(2)(A)(i) & (iii).  The Plan is fair and equitable with respect to Class 1-E because no holder of a Claim or interest junior to Class 1-E shall receive or retain anything under the Plan on account of such junior Claim or interest.  In addition, the Plan does not discriminate unfairly with respect to Class 1-E because no Class of similarly situated Claims shall receive any Distributions or retain any property under the Plan on account of Claims in such Class.  Furthermore, the holders of the Class 1-E Claims have either waived their Class 1-E Claims, are parties to Sewer Plan Support Agreements, or have otherwise not indicated any objection to the Plan, including with respect to the treatment of the Class 1-E Claims.

2. <u>Class 1-F</u>.  The Other Standby Sewer Warrant Claims are secured by liens that are subordinate to the liens securing the Sewer Warrant Claims, the Primary Standby Sewer Warrant Claims, and certain other Claims under the Sewer Warrant Indenture.  Because the Sewer Warrant Claims and the Primary Standby Sewer Warrant Claims are receiving substantially less than a full recovery under the Plan and because the value for

45

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 46 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 45 of 79

purposes of the Plan of the collateral securing those Claims is not more than the amount of the Claims, the subordinated liens have no value and the associated nonrecourse Other Standby Sewer Warrant Claims are not allowable claims under the Bankruptcy Code. *See* 11 U.S.C. §§ 502(b)(1), 506(a), 506(d) & 927. Accordingly, the Plan properly provides that Class 1-F Claims will neither receive any Distributions nor retain any property under the Plan on account of such Claims, and the Plan can be confirmed notwithstanding the deemed rejection of the Plan by Class 1-F. *See* 11 U.S.C. § 1129(b)(2)(A)(i) & (iii). The Plan is fair and equitable with respect to Class 1-F because no holder of a Claim or interest junior to Class 1-F shall receive or retain anything under the Plan on account of such junior Claim or interest. In addition, the Plan does not discriminate unfairly with respect to Class 1-F because no Class of similarly situated Claims shall receive any Distributions or retain any property under the Plan on account of Claims in such Class. Furthermore, the holders of the Class 1-F Claims are parties to Sewer Plan Support Agreements and such holders support the Plan, including with respect to the treatment of the Class 1-F Claims.

3.     Class 2-D. All Class 2-D Claims are held by a single Creditor – Ambac – that did not vote for or against the Plan. Section 2.3(j) of the Plan provides that the holders of Class 2-D Claims will be deemed to consent to certain modifications of the School Warrant Indenture and of the Standby School Warrant Purchase Agreement, but otherwise leaves all legal, equitable, and contractual rights of holders of Allowed Class 2-D Claims unaltered, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights of the County with respect thereto. This treatment constitutes only very minimal impairment, leaves unaltered any liens or rights of payment associated with the Class 2-D Claims, and is fair and equitable, including because no holder of a Claim or interest junior to Class 2-D shall receive or retain anything under the Plan on account of such junior Claim or interest. In addition,

46

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 47 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 46 of 79

the Plan does not discriminate unfairly with respect to Class 2-D because all Classes of equal rank receive similar or identical treatment under the Plan on account of Claims in such Class. Finally, although Ambac did not affirmatively vote to accept the Plan, Ambac did not file any objection to confirmation and has not otherwise indicated any objection to the Plan, including with respect to the treatment of the Class 2-D Claims.

4. <u>Class 2-E</u>. All Class 2-E Claims are held by a single Creditor – Ambac – that did not vote for or against the Plan. Section 2.3(k) of the Plan provides that the holders of Class 2-E Claims will be deemed to consent to certain modifications of the School Warrant Indenture and of the Standby School Warrant Purchase Agreement, but otherwise leaves all legal, equitable, and contractual rights of holders of Allowed Class 2-E Claims unaltered, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights of the County with respect thereto. This treatment constitutes only very minimal impairment, leaves unaltered any liens or rights of payment associated with the Class 2-E Claims, and is fair and equitable, including because no holder of a Claim or interest junior to Class 2-E shall receive or retain anything under the Plan on account of such junior Claim or interest. In addition, the Plan does not discriminate unfairly with respect to Class 2-E because all Classes of equal rank receive similar or identical treatment under the Plan on account of Claims in such Class. Finally, although Ambac did not affirmatively vote to accept the Plan, Ambac did not file any objection to confirmation and has not otherwise indicated any objection to the Plan, including with respect to the treatment of the Class 2-E Claims.

5. <u>Class 9</u>. The holders of Subordinated Claims possess payment or lien rights that are subordinated to other Creditors which are receiving less than full recovery under the Plan, and thus the Subordinated Claims have no value and are not entitled to any distribution. In addition, no holder of any Claim junior to any Subordinated Claim will receive or retain under the Plan any property on account of such junior Claim.

Accordingly, the Plan can be confirmed notwithstanding the deemed rejection of the Plan by Class 9. *See* 11 U.S.C. § 1129(b)(2)(A)(i), (b)(2)(A)(iii) & (b)(2)(B). The Plan is fair and equitable with respect to Class 9 because no holder of a Claim or interest junior to Class 9 shall receive or retain anything under the Plan on account of such junior Claim or interest. The Plan also does not discriminate unfairly with respect to Class 9 because no Class of similarly situated Claims shall receive any Distributions or retain any property under the Plan on account of Claims in such Class.

P. <u>Approved Rate Structure</u>. The Approved Rate Structure complies with the requirements of Bankruptcy Code sections 943(b)(6) and 1129(a)(6) and applicable state law. Pursuant to Bankruptcy Code sections 105(a), 944(a), 944(b)(3), and 1123(b)(6), from and after the Effective Date, (1) the Approved Rate Structure, including the prospective sewer rates contained therein and the sewer rates on which the Approved Rate Structure builds, will be a valid provision made to pay or secure payment of the New Sewer Warrants and is appropriate, reasonable, non-discriminatory, and legally binding on and specifically enforceable against the County (including in an action brought by the New Sewer Warrant Trustee), in accordance with the Plan and under applicable law; and (2) the County Commission may and shall appropriately adopt and maintain the Approved Rate Structure in accordance with the Rate Resolution and as necessary for the County to satisfy the obligations arising under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System), including increases in sewer rates to the extent necessary to allow the timely satisfaction of the County's obligations under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System).

Q. <u>Legislative Acts</u>. The approval of the Approved Rate Structure, the adoption of the associated Rate Resolution, and the entry into the New Sewer Warrant Indenture (including

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 49 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 48 of 79

the revenue and rate covenants in the New Sewer Warrant Indenture) by the County Commission are legislative acts that are entitled to significant deference under Alabama law.

R. <u>Validation of the New Sewer Warrants</u>. Pursuant to Bankruptcy Code sections 105(a), 944(a), 944(b)(3), and 1123(b)(6), from and after the Effective Date, the New Sewer Warrants, the New Sewer Warrant Indenture, the Approved Rate Structure, the Rate Resolution, and the covenants made by the County for the benefit of the holders thereof (including the revenue and rate covenants in the New Sewer Warrant Indenture) will constitute valid, binding, legal, and enforceable obligations of the County under Alabama law (including Title 11, Chapter 28 of the Alabama Code) and the provisions made to pay or secure payment of such obligations are valid, binding, legal, and enforceable security interests or liens on or pledges of revenues, which create the interests, liens, and pledges they purport to create. Without limiting the generality of the foregoing, the Court finds and concludes that:

1. The New Sewer Warrants were authorized and will be issued as of the Effective Date as a means of implementing the Plan and providing for the satisfaction of Sewer Debt Claims in accordance with the Plan and the Bankruptcy Code.

2. The County has the authority, and properly exercised such authority, under the Alabama Constitution and laws of the State of Alabama and the Plan to adopt and perform its obligations under the Rate Resolution, to execute, deliver, and perform its obligations under the New Sewer Warrant Indenture, to issue, execute, deliver, and perform its obligations under the New Sewer Warrants pursuant to the Plan, and to grant and agree to the rights and remedies of the trustee, warrantholders, bond insurer, and provider of the Reserve Fund LOC under the New Sewer Warrant Indenture.

3. All acts, actions, and things required under the provisions of applicable law to be done in the Case prior to the entry of this Confirmation Order have been done in the manner provided by law. This Confirmation Order will be forever conclusive

49

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 50 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 49 of 79

against, among others, the County, Sewer System ratepayers and users, and all taxpayers and citizens of the County.

4.      The indebtedness evidenced and ordered paid by the New Sewer Warrants shall be a limited obligation of the County, payable solely from the System Revenues derived from the operation of the Sewer System. For the avoidance of doubt, any and all System Revenues constitute "pledged special revenues" as that term is used in Bankruptcy Code section 922(d), which have been validly pledged to secure the payment of the obligations under the New Sewer Warrants, as fully set forth in the New Sewer Warrant Indenture. The general faith and credit of the County have not been pledged to the payment of the principal of or the interest or premium (if any) on the New Sewer Warrants, no tax revenues have been pledged to the payment of the principal of or the interest or premium (if any) on the New Sewer Warrants, and the New Sewer Warrants are not general obligations of the County.

5.      The New Sewer Warrants shall not constitute a debt or indebtedness of the County under the provisions of Section 224 of the Alabama Constitution because the principal of and interest on the New Sewer Warrants will be payable solely from the System Revenues derived from the operation of the Sewer System, and will not be a charge on the general credit of the County.

6.      This Confirmation Order can and does validate and confirm all proceedings had and taken in connection with the following: (a) the Plan; (b) all covenants, agreements, provisions, and obligations of the County set forth in the Plan; (c) the Rate Resolution and Approved Rate Structure; (d) all covenants, agreements, provisions, and obligations of the County set forth in the New Sewer Warrant Indenture; and (e) the New Sewer Warrants and the provisions made to pay and secure payment of such obligations. When the New Sewer Warrants have been executed and delivered in accordance with the Plan, then the New Sewer Warrants and the pledges, covenants,

50

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 51 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 50 of 79

agreements, and obligations set forth therein and in the New Sewer Warrant Indenture shall stand validated and confirmed.

S.    <u>No School Warrant Events of Default</u>.  Based on the County's representations at the Confirmation Hearing, the Court finds that no School Warrant Events of Default (other than those waived pursuant to clauses (ii) and (iii) of Section 2.3(i) of the Plan) have occurred under the School Warrant Indenture or the Standby School Warrant Purchase Agreement during the period between February 11, 2013, and November 20, 2013.

T.    <u>Objections</u>.  All interested parties, including all ratepayers and users of the Sewer System, have had a full and fair opportunity to be heard and to litigate all issues raised in the objections to confirmation of the Plan, or which might have been raised by objection, and all objections raised by any Person have been fully and fairly litigated and considered by the Court. All objections not withdrawn or otherwise resolved are overruled as set forth in this Confirmation Order on their merits and with prejudice.

U.    <u>Plan Supplement</u>.  Beginning on September 30, 2013, and continuing thereafter, the County filed, amended, modified, and supplemented the Plan Supplement, which included certain documents and agreements contemplated by the Plan, including the Amended and Restated GO Warrant Indentures, the New Sewer Warrant Indenture, the Schedule of Assumed Agreements, the School Warrant Second Supplemental Indenture, the New Sewer Wrap Policy, the Reserve Fund LOC and the other Reserve Fund LOC Agreements, the form of the New Sewer Warrants, and the form of the Replacement 2001-B GO Warrants.  The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Plan Procedures Order, complied in all regards with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution, and no other or further notice is or shall be required.

51

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 52 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 51 of 79

V.     Modifications to the Plan.  Subsequent to solicitation, the County made certain modifications to the Plan.   Many of those modifications were non-material, but some modifications made material changes in respect of the treatment and rights of certain of the Sewer Plan Support Parties under the Plan.  Each of the Sewer Plan Support Parties adversely affected by such modifications has accepted in writing such modifications.  All modifications to the Plan since the entry of the Plan Procedures Order are consistent with all of the provisions of the Bankruptcy Code (including sections 942 and 1127(d)) and of the Bankruptcy Rules (including Bankruptcy Rule 3019(a)).  None of the modifications made since the commencement of solicitation adversely affects the treatment of any Creditor under the Plan who has not accepted in writing the modification.  Prior notice regarding the substance of any modifications to the Plan, coupled with the filing with the Court of the Plan as modified, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing constitute due and sufficient notice of any and all of such modifications.  Accordingly, none of the modifications requires additional disclosure or resolicitation of votes, and under Bankruptcy Rule 3019(a), all Creditors that previously accepted the Plan are deemed to have accepted the Plan as modified.  Pursuant to Bankruptcy Code section 942, the Plan as modified shall constitute the Plan submitted for confirmation at the Confirmation Hearing.

W.     Good Faith Extensions of Credit.  Each of the Persons purchasing the New Sewer Warrants, providing the New Sewer Wrap Policy, or providing the Reserve Fund LOC is extending credit to the County in good faith within the meaning of Bankruptcy Code section 364(e) and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  As a result, such Persons (and each subsequent assignee and transferee) are entitled to the full protections and rights afforded by section 364(e) with respect to the New Sewer Warrants, the Rate Resolution, the Approved Rate Structure, and the liens, priorities, and other rights granted by and pursuant to the New Sewer Warrant Indenture.  In addition, all other indebtedness incurred by the County in connection with, or extensions of credit to the County

52

associated with, the offering of New Sewer Warrants under the Plan, the incurrence of any underwriting or other transaction fees to be paid at closing, the provision of the New Sewer Wrap Policy, and the delivery of the Reserve Fund LOC and the other Reserve Fund LOC Agreements are fair, reasonable, and appropriate amounts for the consideration provided, were extended or incurred in good faith within the meaning of Bankruptcy Code section 364(e), and may properly be incurred and paid by the County in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As such, the participants in the offering of New Sewer Warrants under the Plan, the Persons receiving any underwriting or other transaction fees to be paid at closing, and those Persons providing the New Sewer Wrap Policy and the Reserve Fund LOC are in each case entitled to the full protections and rights afforded by Bankruptcy Code section 364(e) with respect to such transactions.

X.     <u>Good Faith Acts by Indenture Trustees</u>.  Each of the Indenture Trustees has acted reasonably and in good faith during the course of the Case.  Without limiting the generality of the foregoing, the Court finds and concludes that:

1.     In determining not to object to confirmation of the Plan, not to oppose the standstill of litigation (including appeals) pending confirmation of the Plan, and to assist in various respects with the implementation and consummation of the Plan, the Sewer Warrant Trustee has (a) acted or refrained from acting in good faith, (b) exercised the degree of care and skill required to protect the best interests of the holders of the Sewer Warrants and other Sewer Debt Claims, and (c) exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise under the circumstances in the conduct of his or her own affairs.  Without limitation, the Sewer Warrant Trustee has in good faith acted, or refrained from acting, to give effect to a comprehensive compromise and settlement reached and supported by the holders of more than 99% of the aggregate principal amount of the outstanding Sewer Warrants that were

voted on the Plan (which also constitutes the support of more than 95% of the aggregate principal amount of *all* outstanding Sewer Warrants).

2.      In determining not to object to confirmation of the Plan and to assist in various respects with the implementation and consummation of the Plan, the GO Warrant Trustee has (a) acted or refrained from acting in good faith, (b) exercised the degree of care and skill required to protect the best interests of the holders of the Series 2001-B GO Claims, and (c) exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise under the circumstances in the conduct of his or her own affairs.  Without limitation, the GO Warrant Trustee has in good faith acted, or refrained from acting, to give effect to a comprehensive compromise and settlement reached and supported by the holders of 100% of the outstanding Series 2001-B GO Warrants.

3.      In determining not to object to confirmation of the Plan and to assist in various respects with the implementation and consummation of the Plan, the School Warrant Trustee has (a) acted or refrained from acting in good faith, (b) exercised the degree of care and skill required to protect the best interests of the holders of the School Warrant Claims, and (c) exercised its rights and powers and used the same degree of care and skill in its exercise as a prudent person would exercise under the circumstances in the conduct of his or her own affairs.  Without limitation, the School Warrant Trustee has in good faith acted, or refrained from acting, to give effect to a comprehensive compromise and settlement reached and supported by the holders of 100% of the outstanding Series 2005-B School Warrants.

Y.      <u>Consummation in Good Faith</u>.  The County, all Plan Support Parties, each applicable Indenture Trustee, and the New Sewer Warrant Trustee will be acting in good faith if they proceed to (1) consummate the Plan and the agreements, settlements, transactions, transfers,

and Distributions contemplated thereby; and (2) take the other acts or actions authorized and directed by this Confirmation Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.  <u>Plan Confirmation</u>. The Plan, as previously modified and as modified by any modifications made at the Confirmation Hearing, is APPROVED and CONFIRMED. Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan. The terms of the Plan, as previously modified and as modified by any modifications made at the Confirmation Hearing, are incorporated by reference into and are an integral part of this Confirmation Order. The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan, the Plan Supplement, and all related documents be approved and confirmed in their entirety as if set forth verbatim in this Confirmation Order.

2.  <u>Compromises and Settlements</u>. The Plan Settlements Motion is GRANTED in its entirety. The Court accordingly hereby approves all compromises and settlements embodied in and relating to the Plan as good faith, fair, reasonable, and equitable compromises and settlements of all Claims, Causes of Action, and other controversies and matters resolved pursuant to the Plan, and the entry of this Confirmation Order constitutes approval of all such compromises and settlements pursuant to the Bankruptcy Rules, including Bankruptcy Rule 9019(a), the Bankruptcy Code, including Bankruptcy Code sections 105(a), 1123(a)(5), 1123(b)(3), and 1123(b)(6), and other applicable law. To the extent provided in the Plan, on the Effective Date, all such compromises and settlements shall be binding on the County, the Sewer Released Parties, the GO Released Parties, all other Creditors, and all other Persons.

55

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 56 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 55 of 79

3. <u>Objections Resolved or Overruled</u>. Any resolutions of objections to confirmation of the Plan or to the Plan Settlements Motion explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, joinders, comments, and reservations of rights in opposition to or inconsistent with the Plan or the Plan Settlements Motion have been fully considered by the Court and are hereby OVERRULED with prejudice on the merits and in their entirety. Without limiting the generality of the foregoing, all arguments raised by the objecting parties about the purported invalidity of the Rate Resolution, the Approved Rate Structure, the New Sewer Warrants, or any feature of the New Sewer Warrants (including the maturity dates of the New Sewer Warrants) are substantively incorrect, are rejected on the merits, and accordingly are hereby OVERRULED. All withdrawn objections are deemed withdrawn with prejudice.

4. <u>Binding Effect</u>. On or after the entry of this Confirmation Order, and subject to the occurrence of the Effective Date (except to the extent otherwise provided in the Plan or this Confirmation Order), the provisions of the Plan and this Confirmation Order shall bind the County, all Creditors, all special tax payers (as such term is defined in Bankruptcy Code section 902(3)), all past, current, and future ratepayers and users of the Sewer System, all parties in interest, and all other Persons. Confirmation of the Plan binds each holder of a Claim to all the terms and conditions of the Plan, whether or not such holder's Claim is Allowed, whether or not such holder holds a claim that is in a Class that is Impaired under the Plan, and whether or not such holder has accepted the Plan.

5. <u>Plan Supplement Approved</u>. Each document contained in the Plan Supplement (as such may be amended, modified, or supplemented in accordance with the Plan) and each of their provisions is approved in each and every respect. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto (each of which is made in accordance with the terms of the Plan and the applicable Plan Supplement document), and all documents and agreements related thereto (including all exhibits and attachments thereto

and documents referred to in such documents), and the execution, delivery, and performance thereof by the County, are authorized and approved as finalized, executed, and delivered. Without further order or authorization of the Court, the County is authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan and the applicable document. As set forth in the Plan, once finalized and executed, the documents comprising the Plan Supplement and all other documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and other security interests purported to be created thereby.

6. _Approved Rate Structure Authorized and Approved_. The Approved Rate Structure is hereby authorized and approved as the lawful and appropriate legislative act of the County, including under Amendment 73 of the Alabama Constitution. From and after the Effective Date, the County Commission shall adopt and maintain the Approved Rate Structure in accordance with the Rate Resolution and as necessary for the County to satisfy the obligations arising under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System), including increases in sewer rates to the extent necessary to allow the timely satisfaction of the County's obligations under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System).

7. _Authorization to Implement Plan_. All acts and actions contemplated by the Plan are hereby authorized and approved in all respects (subject to the provisions of the Plan). On and after the Effective Date, the County may (a) execute, deliver, file, or record any and all documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement; (b) make any and all Distributions contemplated pursuant to, and as

57

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 58 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 57 of 79

provided in, the Plan and any Plan Supplement document; and (c) take any and all acts or actions necessary or desirable to effectuate, implement, and further evidence the terms and conditions of the Plan, each Plan Supplement document, this Confirmation Order, the issuance of the New Sewer Warrants under the New Sewer Warrant Indenture, the issuance and delivery of the Replacement 2001-B GO Warrants under the Amended and Restated GO Warrant Indentures, the provision of the New Sewer Wrap Policy, the delivery of the Reserve Fund LOC and the other Reserve Fund LOC Agreements, and any other transaction contemplated under those documents or the Plan.  To effectuate those transactions and the Plan, the President of the County Commission and the managers, agents, representatives, and attorneys of the County are authorized – without further notice or application to or order of the Court – to execute, deliver, file, or record any documents and to take any other acts or actions that they reasonably may determine to be necessary or desirable to implement the Plan or any Plan Supplement document, regardless whether such acts, actions, or documents are specifically referenced in the Plan, the Plan Supplement, or this Confirmation Order.

8.      <u>Disposition of Funds and Documents</u>.  The disposition of the Accumulated Sewer Revenues, the Sewer Warrant Indenture Funds, and Refinancing Proceeds in accordance with Section 4.6 and the other provisions of the Plan is hereby authorized and approved in all respects (subject to the provisions of the Plan).  Subject to the occurrence of the Effective Date, the Sewer Warrant Trustee is hereby authorized and ordered to take all acts or actions as are necessary or appropriate with respect to the disposition of the Accumulated Sewer Revenues, the Sewer Warrant Indenture Funds, and Refinancing Proceeds in accordance with the Plan.  As a result of the satisfaction and discharge of all Sewer Debt Claims and the cancellation of the Sewer Warrants (provided that such discharge and cancellation shall not modify, prejudice, or give rise to any defenses in favor of any applicable Sewer Warrant Insurer with respect to any Sewer Wrap Payment Rights) and the Sewer Warrant Indenture (other than for purposes of allowing the Sewer Warrant Trustee to calculate and make Distributions in accordance with the Plan, to seek

58

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 59 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 58 of 79

and obtain dismissals of the Receivership Actions and other applicable pending litigation, and, if applicable, to pursue and administer the Sewer Wrap Payment Rights after the Effective Date) under the Plan, on the Effective Date (a) the Sewer DSRF Policies and the Sewer DSRF Reimbursement Agreements will be cancelled and of no further force or effect; (b) the Sewer Warrant Trustee is hereby authorized and ordered to close the "Jefferson County Sewer System Debt Service Reserve Fund" under the Sewer Warrant Indenture and return any surety bonds or other documentation evidencing the Sewer DSRF Policies to the applicable Sewer Warrant Insurer; and (c) the Sewer Wrap Policies will be cancelled and of no further force or effect except with respect to any Sewer Wrap Payment Rights, and such Sewer Wrap Policies (in the case of FGIC, as modified by the *First Amended Plan of Rehabilitation for Financial Guaranty Insurance Company*, dated June 4, 2013, as such plan may be amended or modified) shall remain in full force and effect with respect to such Sewer Wrap Payment Rights and only to the extent the holders of Sewer Warrants have such Sewer Wrap Payment Rights.

       9.      <u>Retention of Property by the County</u>.  Except as otherwise provided in the Plan or this Confirmation Order, all assets and properties of the County shall be retained by the County on the Effective Date, free and clear of all Claims, liens, encumbrances, charges, and interests. From and after the Effective Date, the County may conduct its affairs and use, acquire, and dispose of any assets or property without supervision by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

       10.     <u>Administrative Claim Deadlines</u>.  The deadlines, procedures, and other provisions regarding the assertion, allowance, and treatment of Administrative Claims set forth in Sections 2.2(a) and 2.2(b) of the Plan, to the extent not previously approved and adopted by an order of the Court, are hereby approved and adopted.  The Administrative Claims Bar Date shall be **January 31, 2014**.

59

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 60 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 59 of 79

11.     Professional Fees.  All the amounts disclosed by the County at or in connection with the Confirmation Hearing that have been paid or are to be paid for services or expenses in the Case or incident to the Plan are reasonable and have been paid and may appropriately be paid pursuant to Section 2.2(c) of the Plan, and all amounts previously paid by the County for services or expenses in the Case or incident to the Plan were similarly reasonable, appropriately paid by the County, and are final, indefeasible, and not subject to collateral attack.  In light of the Court's findings of reasonableness and approval of payment in this Confirmation Order, no further requests or applications are necessary regarding the amounts paid or to be paid to a professional Person that has been duly retained by the County for services or expenses in the Case or incident to the Plan.  The County, in the ordinary course of its business, and without the requirement of Court approval, may pay for professional services rendered and expenses incurred following the Effective Date.

12.     Assumption of Executory Contracts and Unexpired Leases.  As of the Effective Date, pursuant to Section 3.1(a) of the Plan and Bankruptcy Code sections 365(b) and 1123(b), each of the Assumed Agreements shall be deemed assumed by the County and shall be in full force and effect, subject to the County's right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to: (a) remove any executory contract or unexpired lease from the Schedule of Assumed Agreements and provide for its rejection under the Plan or otherwise; or (b) add any executory contract or unexpired lease to the Schedule of Assumed Agreements and provide for its assumption under the Plan.  The County shall provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to the agreement affected by the amendment; provided where a contract or lease is added to the Schedule of Assumed Agreements, (i) the County shall provide notice of such addition and the proposed Cure Payment with respect thereto (if any) to the non-County party to the contract or lease, and the non-County party to such contract or lease shall have ten (10) calendar days following the date of service of the notice to file any objection to the assignment or the proposed Cure

Payment; and (ii) in the absence of a timely filed objection to the assignment or proposed cure of such additional agreement, this Confirmation Order shall constitute (A) a finding and determination that there is no Cure Payment associated with the additional agreement or any defaults or other amounts that must be paid by the County in connection with the assumption of the additional agreement; (B) a finding and determination that there is "adequate assurance of future performance" (within the meaning of Bankruptcy Code section 365(b)(1)) with respect to such additional agreement, to the extent required; and (C) approval of the assumption of such additional agreement pursuant to the Plan, effective as of the Effective Date.

13. <u>Rejection of Executory Contracts and Unexpired Leases</u>. As of the Effective Date, pursuant to Section 3.2(a) of the Plan and Bankruptcy Code section 365, each of the executory contracts and unexpired leases to be rejected under the Plan shall be deemed rejected as of such date. The deadlines, procedures, and other provisions regarding Rejection Damage Claims set forth in Section 3.2(b) of the Plan are hereby approved and adopted.

14. <u>Assumption of Postpetition Contracts</u>. Pursuant to Section 3.3 of the Plan, as of the Effective Date, all executory contracts and unexpired leases that the County has entered into after the Petition Date with due authorization of the County Commission will be assumed and retained by the County and will remain in full force and effect from and after the Effective Date.

15. <u>Vesting of Preserved Claims in County</u>. The Preserved Claims to be preserved and vested in the County pursuant to Section 4.12 of the Plan shall be fully preserved and shall be deemed vested in the County as of the Effective Date. From and after the Effective Date, the County shall retain its exclusive right, power, and duty to administer the collection, prosecution, enforcement, settlement, or abandonment of the Preserved Claims in the County's sole and absolute discretion.

16. <u>Allowance of Certain Claims</u>. As set forth in the Plan and subject to the occurrence of the Effective Date, the Claims in Class 1-A, Class 1-B, Class 1-C, Class 1-D, Class 2-A, Class 2-B, Class 2-C, Class 2-D, Class 2-E, Class 3-A, Class 3-B, Class 4, Class 5-A,

Class 5-B, Class 5-C, Class 5-D, Class 5-E, and Class 7 shall be Allowed on the Effective Date in the amounts and to the extent specified in the Plan, and, in each case, shall be satisfied pursuant to the terms of the Plan and any agreements related to the Plan. The allowance on the Effective Date of Allowed Claims in Class 1-A, Class 1-B, Class 1-C, and Class 1-D is appropriate and binding on, specifically enforceable against, and a basis for mandamus against the County, the County Commission, and all other Persons in accordance with the Plan, because, among other things, the allowance of such Claims, along with treatment of those Allowed Claims under the Plan, is a necessary predicate to the issuance of the New Sewer Warrants and is an essential component of the compromises and settlements described in the Plan Settlements Motion. The validity and enforceability of the allowance of the Allowed Claims in Class 1-A, Class 1-B, Class 1-C, and Class 1-D along with the treatment of those Allowed Claims under the Plan and any related agreements, shall (a) moot any pending Causes of Action challenging the validity or enforceability of the Sewer Warrants or the issuance thereof, payments of principal and interest made in respect of the Sewer Warrants, or any Sewer System rates or charges established or collected by the County in connection with the issuance or the payment of debt service in respect of the Sewer Warrants, or seeking the return of any payment made by the County in connection with the Sewer Warrants or any financing or other transaction regarding the Sewer System; and (b) not be subject to any collateral attack or other challenge by any Person in any court or other forum from and after the Effective Date.

17. <u>Objections to Claims</u>. Notwithstanding any Bankruptcy Rule or local rule to the contrary, and except as provided in Section 2.2(a)(i) of the Plan with respect to Administrative Claims, the deadline for objections to Claims against the County shall be the date that is the later of (a) the first Business Day that is at least 180 calendar days after the Effective Date; and (b) the first Business Day that is at least 180 calendar days after the date on which a proof of Claim in respect of a Claim has been Filed, in each case unless extended by the Court upon a motion Filed by the County.

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 63 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 62 of 79

18.     No Amendments to Proofs of Claim.  From and after the Effective Date, other than a proof of Claim relating to an executory contract or unexpired lease that is rejected pursuant to the Plan, a proof of Claim relating to any prepetition Claim may not be Filed or amended without leave of the Court.

19.     Setoff and Recoupment.  The County may, but shall not be required to, setoff against or recoup from any Claim and the Distributions to be made in respect of such Claim (other than with respect to Claims previously Allowed or Allowed as set forth in the Plan) any Causes of Action of any nature whatsoever that the County may have against the claimant and that is not a GO Released Claim or a Sewer Released Claim.  If the County elects to so setoff or recoup, the Allowed amount of the subject Claim shall be limited to the net amount after giving effect to the County's setoff or recoupment; *provided, however*, that the claimant will be provided with written notice of the proposed setoff or recoupment at least ten (10) Business Days prior thereto, and, if the claimant files a written objection to such proposed setoff or recoupment with the Court, the County shall not proceed with the setoff or recoupment absent the withdrawal of the claimant's objection or the entry of an order overruling the objection, but the County may in all events withhold any Distributions on account of such Claim pending resolution of the claimant's objection; *provided further, however*, that neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim shall constitute a waiver or release by the County of any Causes of Action the County may have against the subject claimant.

20.     Dismissal of Adversary Proceedings.  On the Effective Date, each of the following adversary proceedings shall be deemed dismissed with prejudice in its entirety:

(a)     *Charles E. Wilson, et al. v. JPMorgan Chase & Co., et al. (In re Jefferson County, Alabama)*, Adv. Proc. No. 11-00433-TBB.

(b)     *The Bank of New York Mellon, as Indenture Trustee v. Jefferson County, Alabama (In re Jefferson County, Alabama)*, Adv. Proc. No. 12-00016-TBB.

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 64 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 63 of 79

(c) *The Bank of New York Mellon, as Indenture Trustee v. Jefferson County, Alabama (In re Jefferson County, Alabama)*, Adv. Proc. No. 12-00067-TBB.

(d) *Andrew Bennett, et al. v. Jefferson County, Alabama and The Bank of New York Mellon, as Indenture Trustee (In re Jefferson County, Alabama)*, Adv. Proc. No. 12-00120-TBB.

(e) *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon, as Indenture Trustee, and Jefferson County, Alabama (In re Jefferson County, Alabama)*, Adv. Proc. No. 12-00149-TBB.

(f) *The Bank of New York Mellon, as Indenture Trustee v. Jefferson County, Alabama, et al. (In re Jefferson County, Alabama)*, Adv. Proc. No. 13-00019-TBB.

The County is authorized and directed to file a "Notice of Dismissal in Accordance with Plan and Confirmation Order" in each of the foregoing adversary proceedings on or as soon as is reasonably practicable after the Effective Date.

21. <u>Dismissal of Other Litigation</u>. In connection with the occurrence of the Effective Date, each of the County, the Sewer Plan Support Parties, and the Sewer Warrant Trustee (as applicable) shall file in other appropriate courts stipulations of dismissal among the applicable parties or joint motions to dismiss with prejudice any pending litigation (including any appeals or writs of mandamus) commenced by the County, any of the Sewer Plan Support Parties, or the Sewer Warrant Trustee against the County or any of the Sewer Plan Support Parties, with such dismissals to be effective on and contingent upon the occurrence of the Effective Date.

22. <u>Termination of Receiver and Dismissal of Receivership Actions</u>. As a result of the satisfaction and discharge of all Sewer Debt Claims, as well as the cancellation of the Sewer Warrants, the Sewer Warrant Indenture, and the Sewer Insurance Policies (as applicable) under the Plan, from and after the Effective Date, the Receiver's status as receiver of the Sewer System will be terminated and of no further force or effect. On or as soon as reasonably practicable after the Effective Date, the Sewer Warrant Trustee shall pay all of the Receiver's unpaid reasonable

64

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 65 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 64 of 79

fees (including fees of its counsel and experts) and expenses from the Sewer Warrant Indenture Funds and shall dismiss (or obtain any court orders as are necessary to dismiss) each of the Receivership Actions in their entirety and with prejudice.

23. <u>Deemed Acceleration of the Sewer Warrants</u>.  For all purposes, including Distributions under the Plan, all series and subseries of the Sewer Warrants shall be deemed accelerated, as of the Effective Date, after payment of the Reinstated Sewer Warrant Principal Payments, the Reinstated Sewer Warrant Interest Payments, and the Sewer Warrant Insurers Outlay Amount, which acceleration shall occur immediately and before any other Distribution of consideration on the Effective Date; *provided, however*, that such acceleration will not be deemed to release any of the Sewer Wrap Policies with respect to Sewer Wrap Payment Rights except as a result of any Sewer Warrant Insurer's payment of the Outstanding Amount on the applicable series or subseries of non-commuted Sewer Warrants as set forth in the last sentence of this paragraph.  With respect to any series or subseries of Sewer Warrants as to which the Commutation Election is not made or deemed not to have been made, and solely to the extent that any Sewer Warrant Insurer voluntarily elects (irrespective of the terms of the applicable Sewer Wrap Policy), in its sole and absolute discretion, to pay the Outstanding Amount on such series or subseries of Sewer Warrants, the Sewer Warrant Trustee shall be deemed as of the Effective Date or, if later, as of the date on which the applicable Sewer Warrant Insurer makes such election as to such series or subseries of Sewer Warrants, to have submitted a draw request under each applicable Sewer Wrap Policy in respect of the Outstanding Amount on such non-commuted series or subseries of Sewer Warrants, and each such Sewer Warrant Insurer shall be entitled (irrespective of the terms of the applicable Sewer Wrap Policy), in its sole and absolute discretion, to treat the Outstanding Amount as "Due for Payment" (as such term is defined in the applicable Sewer Wrap Policy and for purposes of such Sewer Wrap Policy) as of the Effective Date or as of such later date on which the applicable Sewer Warrant Insurer elects to pay such Outstanding Amount.  Payment, as provided in the applicable Sewer Wrap Policy, of the

65

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 66 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 65 of 79

Outstanding Amount on any series or subseries of non-commuted Sewer Warrants shall be deemed to fully discharge the applicable Sewer Warrant Insurer's obligations under the applicable Sewer Wrap Policy and to fully release all Sewer Wrap Payment Rights with respect to such Sewer Warrants.

24.    <u>Validation of New Sewer Warrants</u>.  The Court does hereby validate and confirm all proceedings had and taken in connection with the following: (a) the Plan; (b) all covenants, agreements, provisions and obligations of the County set forth in the Plan; (c) the Rate Resolution and Approved Rate Structure; (d) all covenants, agreements, provisions and obligations of the County set forth in the New Sewer Warrant Indenture; and (e) the New Sewer Warrants and the provisions made to pay and secure payment of such obligations.  When the New Sewer Warrants have been executed and delivered in accordance with the Plan, the New Sewer Warrants and the pledges, covenants, agreements and obligations set forth therein and in the New Sewer Warrant Indenture shall stand validated and confirmed.  At the time of the delivery of the New Sewer Warrants, the County is hereby directed to cause to be stamped or written on each of the New Sewer Warrants a legend substantially as follows:

> "VALIDATED AND CONFIRMED BY JUDGMENT AND CONFIRMATION ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ALABAMA, ENTERED ON THE ___ DAY OF _____, 2013."

This validation will be full, final, complete, binding, and conclusive as to the County, all Creditors, all past, current, and future ratepayers and users of the Sewer System, all parties in interest, and all other Persons.  Accordingly, the validity and enforceability of the Rate Resolution, the New Sewer Warrants, the New Sewer Warrant Indenture, and the covenants made by the County for the benefit of the holders thereof and those Persons providing the New Sewer Wrap Policy and the Reserve Fund LOC (including the revenue and rate covenants in the New Sewer Warrant Indenture) shall not be subject to any collateral attack or other challenge by any Person in any court or other forum from and after the Effective Date.

66

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 67 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 66 of 79

25. <u>Validation of Approved Rate Structure</u>.  The Court hereby approves the Approved Rate Structure as a valid provision made to pay or secure payment of the New Sewer Warrants that is appropriate, reasonable, and non-discriminatory.  Both the prospective sewer rates contained in the Approved Rate Structure and the sewer rates on which the Approved Rate Structure builds are lawful and appropriate, including under Amendment 73 of the Alabama Constitution.  From and after the Effective Date, the County Commission shall adopt and maintain the Approved Rate Structure in accordance with the Rate Resolution and as necessary for the County to satisfy the obligations arising under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System), including increases in sewer rates to the extent necessary to allow the timely satisfaction of the County's obligations under the New Sewer Warrants and the New Sewer Warrant Indenture (and to otherwise comply with all applicable state and federal laws regarding the maintenance and operation of the Sewer System). Without limitation, from and after the Effective Date, (a) this Confirmation Order shall constitute a consent decree binding upon, specifically enforceable against, and a basis for mandamus against the County, the County Commission, and all other Persons in accordance with the Plan (including in an action brought by the New Sewer Warrant Trustee); (b) the validity and enforceability of the Approved Rate Structure and the Rate Resolution shall not be subject to any collateral attack or other challenge by any Person in any court or other forum from and after the Effective Date; and (c) the Court shall retain exclusive jurisdiction to enforce the Approved Rate Structure and the Rate Resolution, to require the County to otherwise comply with the New Sewer Warrants and the New Sewer Warrant Indenture, and to hear and adjudicate any action or proceeding enforcing, challenging, or collaterally attacking the Approved Rate Structure or the Rate Resolution.  All rights, claims, and defenses of the County, the New Sewer Warrant Trustee, and any other affected party are preserved with respect to any Person that attempts to collaterally attack the Approved Rate Structure or the Rate Resolution from or after the Effective

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 68 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 67 of 79

Date despite the prohibitions on such attacks contained in the Plan and this Confirmation Order. From and after the Effective Date, the New Sewer Warrant Trustee, upon the occurrence of an event of default under the New Sewer Warrant Indenture and subject to the conditions thereof, is authorized to enforce the terms of the Plan, the New Sewer Warrant Indenture, the Approved Rate Structure, and the Rate Resolution against the County, including by obtaining an order from this Court or any other court of competent jurisdiction compelling the County to (x) increase rates charged for Sewer System services so that the Sewer System generates sufficient revenues to cure any default under the New Sewer Warrant Indenture and (y) specifically perform the terms of the Rate Resolution and the New Sewer Warrant Indenture.

26. <u>Exemption from Securities Law</u>. The issuance of the Replacement 2001-B GO Warrants and the offering and issuance of the New Sewer Warrants are exempt from registration under the 1933 Act, and all rules and regulations promulgated thereunder. In general, securities issued by the County, such as general obligation warrants and sewer revenue warrants, are exempt from registration under section 3(a)(2) of the 1933 Act. Obligations issued by the County likewise are exempt from registration under current Alabama securities laws. These exemptions from registration apply to the New Sewer Warrants and the Replacement 2001-B GO Warrants. The Replacement 2001-B GO Warrants will also be exempt from registration under federal or state securities law to the maximum extent provided under Bankruptcy Code section 1145. Like the exemption from registration provided to the County under section 3(a)(2) of the 1933 Act, generally applicable securities laws provide an exemption from qualification for certain trust indentures entered into by governmental entities. The New Sewer Warrant Indenture and the Amended and Restated GO Warrant Indentures are each exempt from qualification under section 304(a)(4) of the Trust Indenture Act of 1939. Nothing in the Plan or this Confirmation Order, including Articles 5 and 6 of the Plan, is intended (i) to preclude the Securities and Exchange Commission from performing its statutory duties, including pursuing any causes of action (including those asserted in the case of *SEC v. Charles LeCroy, et al.*, Case

No. 2:09-cv-02238 (N.D. Ala.)), regarding any Person in any forum with proper jurisdiction; or (ii) without limiting the discharge of the County under the Bankruptcy Code, to excuse any Person from being subject to any action brought by the Securities and Exchange Commission on account of such Person's non-compliance with applicable securities law.

27.  Protection Under Section 364(e).  The Court hereby approves and authorizes the incurrence of all indebtedness and extensions of credit necessary to implement the Plan pursuant to Bankruptcy Code section 364, including the offering of New Sewer Warrants under the Plan, the adoption of the Rate Resolution, the incurrence of any underwriting or other transaction fees to be paid at closing, the provision of the New Sewer Wrap Policy, and the delivery of the Reserve Fund LOC and the other Reserve Fund LOC Agreements.  The protections of Bankruptcy Code section 364(e) will apply to all such indebtedness or extensions of credit to the maximum extent permitted by law.  As such, each of the Persons purchasing the New Sewer Warrants (and their assignees and transferees), the participants in the offering of New Sewer Warrants under the Plan, the Persons receiving any underwriting or other transaction fees to be paid at closing, and those Persons providing the New Sewer Wrap Policy and the Reserve Fund LOC are in each case entitled to the full protections and rights afforded by Bankruptcy Code section 364(e) with respect to such transactions.

28.  Exculpation Regarding the Bankruptcy and Plan Process.  The provisions of Section 5.1 of the Plan are hereby approved and authorized in their entirety.  Without limiting the generality of the foregoing, neither the GO Released Parties, nor the Sewer Released Parties, nor the School Warrant Trustee, nor any of their respective Related Parties shall have or incur any liability to any Person, including any holders of GO Warrants, Sewer Warrants, or School Warrants, for any act or omission occurring on or before the Effective Date in connection with, related to, or arising out of the Case, the Plan Support Agreements, the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan or any compromises or settlements incorporated therein, the Disclosure Statement, the Plan Supplement, or any other

69

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 70 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document      Page 69 of 79

contract, instrument, release, or other agreement or document provided or contemplated in connection with the consummation of the transactions set forth in the Plan; *provided, however*, that the foregoing provisions shall not affect the liability of any Person that otherwise would result from any such act or omission occurring on or prior to the Effective Date to the extent that such act or omission is determined in a Final Order to have constituted willful misconduct or fraud.

29.     <u>Discharge and Permanent Injunction</u>.  The provisions of Section 6.2 of the Plan are hereby approved and authorized in their entirety.  Without limiting the generality of the foregoing,

(a)     The rights afforded in the Plan and the treatment of all Claims by the Plan are in exchange for and in complete settlement, satisfaction, discharge, and release of, and injunction against, all Claims of any nature whatsoever arising prior to the Effective Date against the County or its property, including any interest accrued on such Claims from and after the Petition Date.

(b)     Except as otherwise provided in the Plan or this Confirmation Order, on the Effective Date, (i) the County and its property are discharged and released to the fullest extent permitted by Bankruptcy Code section 944(b) from all Claims and rights that arose before the Effective Date, including all debts, obligations, demands, and liabilities, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), regardless whether (A) a proof of Claim based on such debt is Filed or deemed Filed, (B) a Claim based on such debt is allowed pursuant to Bankruptcy Code section 502, or (C) the holder of a Claim based on such debt has or has not accepted the Plan; (ii) any judgment underlying a Claim discharged hereunder is void; and (iii) all Persons are precluded from asserting against the County or its property, whether directly or on behalf of the County, any Claims or rights based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  Accordingly,

without limitation and except as otherwise expressly provided in the Plan or this Confirmation Order, from and after the Effective Date, the Sewer Warrants and the Sewer Warrant Indenture shall be deemed cancelled and all liens granted thereunder or related thereto shall be deemed discharged and released.

(c)      Except as otherwise provided in the Plan or this Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold a Claim that is based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that otherwise is discharged pursuant to the Plan, are permanently and completely enjoined from taking any of the following actions on account of any such discharged Claim (the "Permanent Injunction"): (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind against or affecting the County, its property, its obligations, or any of its Related Parties that is inconsistent with the Plan or this Confirmation Order; (ii) attaching, collecting, enforcing, levying, or otherwise recovering in any manner any award, decree, judgment, or order against or affecting the County, its property, its obligations, or any of its Related Parties other than as expressly permitted under the Plan; (iii) creating, perfecting, or otherwise enforcing in any manner any lien or encumbrance of any kind against or affecting property of the County, other than as expressly permitted under the Plan; (iv) asserting any right of recoupment, setoff, or subrogation of any kind against any obligation due to the County with respect to any such discharged Claim, except as otherwise permitted by Bankruptcy Code section 553; (v) acting or proceeding in any manner, in any place whatsoever, that does not comply with or is inconsistent with the provisions of the Plan, this Confirmation Order, or the discharge provisions of Bankruptcy Code section 944; and (vi) taking any actions to interfere with the implementation or consummation of the Plan; *provided, however*, that the foregoing provision shall not include or affect the

71

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 72 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 71 of 79

liability of any Related Party of the County (x) in any action brought by the Securities and Exchange Commission or (y) on account of any violation of the securities laws. The County and any other Person injured by any willful violation of the Permanent Injunction shall recover actual damages, including costs, expenses, and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator, and the Court retains jurisdiction over any Causes of Action resulting from any willful violation of the Permanent Injunction.

(d)    Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any environmental liability to any governmental unit that is not a Claim as defined in 11 U.S.C. § 101(5); (ii) any environmental Claim of any governmental unit arising on or after the Effective Date; or (iii) any environmental liability to any governmental unit on the part of any entity as the owner or operator of property after the Effective Date.

30.    <u>Continuation of Stays</u>.  Except as otherwise provided in the Plan, all injunctions or stays in effect in the Case under Bankruptcy Code sections 105, 362(a), or 922(a), or otherwise, on the Confirmation Date shall remain in full force and effect through and including the Effective Date.

31.    <u>Commutation Election</u>.  The Commutation Election available under the Plan, the Commutation Provisions, and the procedures and presumptions related to the Commutation Election and opportunity for the Deemed Commuting Holders to rescind such Commutation Election are approved and authorized in their entirety.  On and as of the Effective Date, any holder of Sewer Warrants that made or was deemed to make the Commutation Election and, in the case of the Deemed Commuting Holders, did not timely rescind such deemed Commutation Election will be deemed to have unconditionally commuted, waived, and forever released, discharged, and forgone (a) any and all Sewer Wrap Payment Rights; (b) any and all Bank Warrant Default Interest Claims; and (c) any and all other Sewer Released Claims against the

72

13-53846-tjt    Doc 4677-3    Filed 05/12/14    Entered 05/12/14 22:56:16    Page 73 of 85
Case 11-05736-TBB9    Doc 2248    Filed 11/22/13    Entered 11/22/13 11:35:56    Desc
Main Document    Page 72 of 79

County, against any of the Sewer Released Parties, or against any of their respective Related Parties. On and as of the Effective Date, any holder of Sewer Warrants that (i) affirmatively chose not to make the Commutation Election, (ii) was deemed not to make the Commutation Election, or, (iii) in the case of the Deemed Commuting Holders, timely rescinded such deemed Commutation Election shall have Sewer Wrap Payment Rights as set forth in the Plan.

32. <u>Releases and Injunctions</u>. The releases and injunctions set forth in Section 6.3 of the Plan are hereby approved and authorized in their entirety. Without limiting the generality of the foregoing,

(a) Under the Plan and as of the Effective Date, each Sewer Released Party, on behalf of itself, and, to the maximum extent permitted by law, on behalf of each of its Related Parties, in exchange for and upon receipt of the treatment and consideration set forth in the Plan and related documents for the Sewer Released Parties, including the compromises and settlements among the Sewer Released Parties implemented pursuant to the Plan and related documents, forever waives and releases all other Sewer Released Parties and their respective Related Parties from any and all Sewer Released Claims.

(b) Under the Plan and as of the Effective Date, all Persons who voted to accept the Plan or who made or are deemed to have made the Commutation Election and, in the case of the Deemed Commuting Holders, did not timely rescind such deemed Commutation Election will be conclusively deemed to have irrevocably and unconditionally, fully, finally, and forever waived and released and discharged on their own behalf, and on behalf of any Person claiming through them, all Sewer Released Parties and their respective Related Parties from any and all Sewer Released Claims.

(c) From and after the Effective Date, the County, any Person seeking to exercise the rights of the County (including in respect of the County's Causes of Action purportedly asserted in the Bennett Action and the Wilson Action), all Persons holding any Sewer Released Claims that are waived and released pursuant to Section 6.3(a) of the Plan, and

73

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 74 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 73 of 79

all Persons acting or purporting to act on behalf of any Persons holding any Sewer Released Claims that are waived and released pursuant to Section 6.3(a) of the Plan, are permanently and completely enjoined from commencing or continuing any action, directly or indirectly and in any manner, to assert, pursue, litigate, or otherwise seek any recovery on or on account of such Sewer Released Claims (including any further prosecution of the portion of the Wilson Action pending in state court).

(d)     From and after the Effective Date, this Confirmation Order constitutes a bar order pursuant to Bankruptcy Code section 105(a), Rule 16 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 7016 barring and enjoining any and all Persons from commencing or continuing any action, directly or indirectly and in any manner, to assert, pursue, litigate, or otherwise seek any recovery on or on account of any Sewer Released Claims or Ratepayer Claims (including any further prosecution of the portion of the Wilson Action pending in state court).

(e)     From and after the Effective Date, the Sewer Warrant Trustee, any holders of Sewer Warrants, and all other Persons are permanently and completely enjoined from pursuing any right of payment under (i) any of the Sewer DSRF Policies, which will be cancelled and of no further force or effect pursuant to Section 4.7 of the Plan; or (ii) any of the Sewer Wrap Policies with respect to any Sewer Warrant holder that made or was deemed to have made the Commutation Election, which Sewer Wrap Policies will be cancelled and of no further force or effect pursuant to Section 4.7 of the Plan; *provided, however*, that such injunction shall not enjoin any holders of Sewer Warrants that did not make or were deemed not to make the Commutation Election, or, if applicable, the Sewer Warrant Trustee on their behalf, from pursuing any Sewer Wrap Payment Rights.

(f)     Under the Plan and as of the Effective Date, each GO Released Party, on behalf of itself, and, to the maximum extent permitted by law, on behalf of each of its Related Parties, in exchange for and upon receipt of the treatment and consideration set forth in

74

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 75 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 74 of 79

the Plan for the GO Released Parties, including the compromises and settlements among the GO Released Parties implemented pursuant to the Plan, forever waives and releases all other GO Released Parties and their respective Related Parties from any and all GO Released Claims.

(g)     Under the Plan and as of the Effective Date, all Persons who voted to accept the Plan will be conclusively deemed to have irrevocably and unconditionally, fully, finally, and forever waived and released and discharged on their own behalf, and on behalf of any Person claiming through them, all GO Released Parties and their respective Related Parties from any and all GO Released Claims.

(h)     From and after the Effective Date, the County, any Person seeking to exercise the rights of the County, all Persons holding any GO Released Claims that are waived and released pursuant to Section 6.3(b) of the Plan, and all Persons acting or purporting to act on behalf of any Persons holding any GO Released Claims that are waived and released pursuant to Section 6.3(b) of the Plan, are permanently and completely enjoined from commencing or continuing any action, directly or indirectly and in any manner, to assert, pursue, litigate, or otherwise seek any recovery on or on account of such GO Released Claims.

(i)     The releases and injunctions set forth in Section 6.3 of the Plan are integral and critical parts of the Plan and the compromises and settlements implemented pursuant to the Plan, the approval of such releases pursuant to this Confirmation Order is a condition to the occurrence of the Effective Date, and all Sewer Released Parties and all GO Released Parties have relied on the efficacy and conclusive effects of such releases and injunctions and on the Bankruptcy Court's retention of jurisdiction to enforce such releases and injunctions when making concessions pursuant to the Plan and by agreeing to, accepting, and supporting the settlement and treatment of their respective Claims, Causes of Action, and other rights under the Plan.

75

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 76 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document     Page 75 of 79

33. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Section 4.18(a) of the Plan are satisfied or waived pursuant to Section 4.18(b) of the Plan. For the avoidance of doubt, no waiver of the conditions precedent to the Effective Date shall have occurred without the consent of any applicable Plan Support Party if and to the extent that the consent of such party is required pursuant to the terms of the Plan and any Plan Support Agreement.

34. <u>Non-Occurrence of Effective Date</u>. If the Effective Date does not occur, then, without limiting the provisions of Section 4.18(c) of the Plan, (a) the Plan; (b) any compromise or settlement embodied in the Plan (including the Allowance of any Claims); (c) the assumption or rejection of executory contracts or unexpired leases pursuant to the Plan; (d) any document or agreement executed pursuant to the Plan (including any document or supplement contained in the Plan Supplement); and (e) any acts, actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan shall be deemed null and void and inadmissible as evidence in any proceeding. In such event, nothing contained in this Confirmation Order, any order relating to consummation of the Plan, the Plan, or the Plan Supplement, and no acts taken in preparation for consummation of the Plan (including voting in favor of the Plan or making the Commutation Election) shall be (i) deemed to constitute a waiver or release of any Claims or Causes of Action by or against the County or any other Person, to prejudice in any manner the rights of the County or any other Person in any further proceedings involving the County or otherwise, or to constitute an admission of any sort by the County or any other Person as to any issue; or (ii) construed as a finding of fact or conclusion of law in respect thereof.

35. <u>Notice of Confirmation Order and Effective Date</u>. Within ten (10) Business Days following the Effective Date, the County or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (a) entry of this Confirmation Order and the resulting confirmation of the Plan; (b) the occurrence of the Effective Date; (c) the assumption

76

13-53846-tjt   Doc 4677-3   Filed 05/12/14   Entered 05/12/14 22:56:16   Page 77 of 85
Case 11-05736-TBB9   Doc 2248   Filed 11/22/13   Entered 11/22/13 11:35:56   Desc
Main Document   Page 76 of 79

and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Damage Claims; (d) the deadline established under the Plan for the filing of Administrative Claims; and (e) such other matters as the County finds appropriate. Such notice will be good and sufficient notice under the particular circumstances, will be made in accordance with all the requirements of the Bankruptcy Code and the Bankruptcy Rules (including Bankruptcy Rules 2002(f)(7) and 3020(c)(2)), will comply in all regards with the requirements of the due process clause of the Fifth Amendment to the United States Constitution and, to the extent applicable, with the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution, and no other or further notice or publication is necessary.

36.     <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided in, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, instruments, and documents executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama without giving effect to the principles of conflict of laws thereof.

37.     <u>Preemptive Effect</u>.  Pursuant to Bankruptcy Code sections 1123(a), 1123(b), and 944(a), as well as general principles of federal supremacy, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

38.     <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Bankruptcy Code section 945(a), the Court shall retain jurisdiction over the Case and as provided in Section 6.4 of the Plan.  Without limiting the generality of the foregoing, the Court shall retain jurisdiction (a) to enter appropriate orders in aid of implementation of the Plan pursuant to Bankruptcy Code section 1142(b); (b)

with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Confirmation Order; and (c) to enforce prohibitions against any subsequent collateral attack on the validations contained in the Plan and this Confirmation Order. The Court shall reserve all powers as are necessary or appropriate to enforce or to give effect to the Court's retained jurisdiction under the Plan and this Confirmation Order, including by way of injunction.

39. <u>Finality and Immediate Effect of this Order</u>. This Confirmation Order (a) is a final order and the period in which an appeal must be filed shall commence upon the entry hereof; (b) shall be immediately effective and enforceable upon the entry hereof; and (c) for good cause shown, based on the record of the Confirmation Hearing, shall not be subject to any stay otherwise applicable under the Bankruptcy Rules, including Bankruptcy Rule 3020(e).

40. <u>Authority to Consummate</u>. The County is authorized to cause the Effective Date to occur and to otherwise consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Section 4.18(a) of the Plan. Subject to Section 4.18 of the Plan and notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the County, all Creditors, and all other Persons in accordance with their respective terms.

41. <u>Conflicts Between this Order and the Plan</u>. The provisions of this Confirmation Order, including the findings of fact and conclusions of law set forth herein, and the provisions of the Plan are integrated with each other, nonseverable, and mutually dependent unless expressly stated by further order of the Court. The provisions of the Plan, the Plan Supplement, and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided, however*, that if there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Confirmation Order that cannot be reconciled, then, solely to the extent of such conflict, the provisions of this Confirmation Order

shall govern and any such provision of this Confirmation Order shall be deemed a modification

of the Plan and shall control and take precedence.

**DONE AND ORDERED** this the 22nd day of November, 2013.

UNITED STATES BANKRUPTCY JUDGE

# Notice Recipients

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| intp | David Russell |
| intp | Sharon Rice |
| intp | Angelina Blackmon |
| intp | Rickey Davis |
| intp | Reginald Threadgill |
| intp | Sharon Owens |
| intp | Freddie H. Jones |
| intp | Carlyn R Culpepper |
| intp | William R. Muhammad |
| intp | Moore Mary |
| intp | Roderic V. Royal |
| cr | Monster Energy Company |
| cr | Monticello, LLC |
| cr | AT |

TOTAL: 14

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ba | J Thomas Corbett | thomas_corbett@alnba.uscourts.gov |
| aty | Patrick Darby | pdarby@babc.com |
| aty | A Wilson Webb | awilsonwebb@gmail.com;aclgpc@gmail.com |
| aty | Adrienne K Walker | awalker@mintz.com |
| aty | Albert Kass | ecfpleadings@kccllc.com |
| aty | Amanda Beckett | abeckett@burr.com |
| aty | Ann C. Robertson | arobertson@wcqp.com |
| aty | April Bryan Danielson | adanielson@wskllc.com |
| aty | Benjamin Shaw Goldman | bgoldman@handarendall.com |
| aty | Bill D Bensinger | bbensinger@bakerdonelson.com |
| aty | Bradley Richard Hightower | brhightower@csattorneys.com |
| aty | Brenton K. Morris | bmorris@bcattys.com |
| aty | Brian Malcom | brian.malcom@wallerlaw.com |
| aty | Brian Malcom | brian.malcom@wallerlaw.com |
| aty | Brian R Walding | bwalding@waldinglaw.com |
| aty | Bryan Glen Hale | bgh@starneslaw.com |
| aty | Calvin Burchard Grigsby | cgrigsby@grigsbyinc.com |
| aty | Cathleen C Moore | cmoore@burr.com |
| aty | Charles L. Denaburg | cdenaburg@najjar.com |
| aty | Charles N Parnell | bkrp@parnellcrum.com |
| aty | Charles R. Johanson, III | rjohanson@ehjlaw.com |
| aty | Cherie D Nobles | cnobles@hellerdraper.com |
| aty | Christopher L. Hawkins | chawkins@babc.com |
| aty | Cindy Self Webb | cwebb@mck–law.com |
| aty | Clark R Hammond | crh@jbpp.com |
| aty | Clifton Charles Mosteller | cmostell@burr.com |
| aty | Cynthia Wilkinson | wilkinsonefile@wilkinsonfirm.net |
| aty | Daniel D Sparks | ddsparks@csattorneys.com |
| aty | Daniel G. Clodfelter | danclodfelter@mvalaw.com |
| aty | Daniel J. Ferretti | dferretti@bakerdonelson.com |
| aty | David Baddley | baddleyd@sec.gov |
| aty | David A. Sullivan | dasnicole@bellsouth.net |
| aty | David A. Sullivan | dasnicole@bellsouth.net |
| aty | David A. Wender | david.wender@alston.com |
| aty | David B. Anderson | dbanderson@andersonweidner.com |
| aty | David B. Anderson | dbanderson@andersonweidner.com |
| aty | David E Lemke | david.lemke@wallerlaw.com |
| aty | David E Lemke | david.lemke@wallerlaw.com |
| aty | David M. Stern | dstern@ktbslaw.com |
| aty | David S. Walls | davidwalls@mvalaw.com |
| aty | Donald M Wright | dwright@sirote.com |
| aty | Elisha D. Graff | egraff@stblaw.com |
| aty | Emily Joy Tidmore | etidmore@spotswoodllc.com |
| aty | Eric Kay | erickay@quinnemanuel.com |
| aty | Eric Schaffer | eschaffer@reedsmith.com |
| aty | Grace Long Kipp | gkipp@spotswoodllc.com |
| aty | H. Slayton Dabney | sdabney@dabneypllc.com |
| aty | HENRY W. BLIZZARD | hwb@wcqp.com |
| aty | Harold Douglas Redd, Sr | bk2300@charter.net |
| aty | Heath A Fite | heath.fite@wallerlaw.com |
| aty | Heath A Fite | heath.fite@wallerlaw.com |

| | | |
|---|---|---|
| aty | J Leland Murphree | Lmurphree@maynardcooper.com |
| aty | James Blake Bailey | jbailey@babc.com |
| aty | James Cicero Huckaby , Jr | jch@csattorneys.com |
| aty | James E. Bailey, III | jeb.bailey@butlersnow.com |
| aty | James H White | jwhite@bakerdonelson.com |
| aty | James H White | jwhite@bakerdonelson.com |
| aty | James S Carr, M | jcarr@kelleydrye.com |
| aty | Jamie Alisa Wilson | jwilson@bcattys.com |
| aty | Jamie Alisa Wilson | jwilson@bcattys.com |
| aty | Jay Murrill | jay@rileyjacksonlaw.com |
| aty | Jay H. Clark | jc@wallacejordan.com |
| aty | Jay R. Bender | jbender@babc.com |
| aty | Jayna Partain Lamar | jlamar@maynardcooper.com |
| aty | Jennifer Harris Henderson | jhenderson@babc.com |
| aty | Jennifer Stapleton Morgan | jmorgan@handarendall.com |
| aty | Joe A. Joseph | jjoseph@burr.com |
| aty | Joel E. Dillard | jdillard@baxleydillard.com |
| aty | John Matthews Mastin , Jr. | jmmastin@smithcurrie.com |
| aty | Joshua L Firth | joshf@hollis−wright.com |
| aty | Justin G Williams | jwilliams@tannerguincrowell.com |
| aty | K Mark Parnell | parnell@wskllc.com |
| aty | Lachlan William Smith | wsmith@wcqp.com |
| aty | Larry Brittain Childs | larry.childs@wallerlaw.com |
| aty | Larry Brittain Childs | larry.childs@wallerlaw.com |
| aty | Laura E. Appleby | appleby@chapman.com |
| aty | Laurence Jones McDuff | laurence.mcduff@arlaw.com |
| aty | Lawrence A Larose | llarose@chadbourne.com |
| aty | Lee R. Benton | lbenton@bcattys.com |
| aty | Lee R. Benton | lbenton@bcattys.com |
| aty | Lee Wendell Loder | loderlawfirm@aol.com |
| aty | Leslie M. Klasing | klasing@wskllc.com |
| aty | Lindan J. Hill | lhill@johnstonbarton.com |
| aty | Mark P. Williams | mpwilliams@nwkt.com |
| aty | Matthew G Weathers | mweathersmatt@gmail.com |
| aty | Max A. Moseley | mmoseley29@hotmail.com |
| aty | Michael J. Antonio, Jr. | MAnt003@AOL.com |
| aty | Michael Leo Hall | mhall@burr.com |
| aty | Michael Robert Paslay | mike.paslay@wallerlaw.com |
| aty | Michael Robert Paslay | mike.paslay@wallerlaw.com |
| aty | Miles W. Hughes | mwhughes@mwe.com |
| aty | Perry Glenn Shuttlesworth , Jr. | perry@shuttlesworthlasseter.com |
| aty | R Shan Paden | spaden@padenlawyers.com |
| aty | R. Scott Williams | rsw@hsy.com |
| aty | Rachel L Webber | bknotice@rcslaw.com |
| aty | Raymond P. Fitzpatrick, Jr. | rpfitzpatrick@fcclawgroup.com |
| aty | Richard M Gaal | rgaal@mcdowellknight.com |
| aty | Richard Patrick Carmody | richard.carmody@arlaw.com |
| aty | Robert Potter | robert@mcplaw.com |
| aty | Robert Potter | robert@mcplaw.com |
| aty | Robert C Keller | rjlawoff@bellsouth.net |
| aty | Robert J Pfister | rpfister@ktbslaw.com |
| aty | Robert K. Spotswood | rks@spotswoodllc.com |
| aty | Romaine S Scott, III | rss@saslawllc.com |
| aty | Russell Rutherford | russell.rutherford@arlaw.com |
| aty | Russell McWhorter Cunningham , IV | russell@cunninghamfirmllc.com |
| aty | Ryan K Cochran | ryan.cochran@wallerlaw.com |
| aty | Ryan K Cochran | ryan.cochran@wallerlaw.com |
| aty | Salem Resha, Jr. | snr@wilsonresha.com |
| aty | Samuel M. Kidder | skidder@ktbslaw.com |
| aty | Samuel S Kohn | skohn@chadbourne.com |
| aty | Sheila G. deLa Cruz | sdelacruz@hf−law.com |
| aty | Stephen B Porterfield | sporterfield@sirote.com |
| aty | Steven D Altmann | saltmann@najjar.com |
| aty | Steven M. Fuhrman | sfuhrman@stblaw.com |
| aty | Timothy M Lupinacci | tlupinacci@bakerdonelson.com |
| aty | Tristan Manthey | tmanthey@hellerdraper.com |
| aty | U W Clemon | uwclemon@waadlaw.com |
| aty | W Patton Hahn | phahn@bakerdonelson.com |
| aty | Walter F McArdle | wfm@spain−gillon.com |
| aty | William H Patrick, III | wpatrick@hellerdraper.com |
| aty | William L Longshore, III | billy3@longshorebuck.com |
| aty | William P. Smith | wsmith@mwe.com |
| aty | William W Kannel | wkannel@mintz.com |
| aty | Wilson F. Green | wgreen@fleenorgreen.com |

TOTAL: 125

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | |
|---|---|
| db | Jefferson County, Alabama    Room 280 Courthouse    716 North Richard Arrington Jr.    Birmingham, AL 35203 |
| cr | Regions Bank    c/o Jayna Lamar    1901 6th Ave North    Suite 2400    Birmingham, AL 35203 |
| cr | Bank of New York Mellon, as Indenture Trustee    c/o Waller Lansden Dortch &Davis, LLP    Attn: Ryan Cochran    511 Union Street, Suite 2700    Nashville, TN 37219 |
| cr | Assured Guaranty Municipal Corp.    31 West 52nd Street    New York, NY 10019 |
| aty | Kenneth Klee    1999 Avenue of the Stars 39th Floor    Los Angeles, CA 90067–6049 |
| cr | Ambac Assurance Corporation    c/o Najjar Denaburg PC    2125 Morris Avenue    Birmingham, AL 35203 |
| cr | J.P. Morgan Securities, Inc.    c/o Clark R. Hammond    569 Brookwood Village, Ste 901    Birmingham, AL 35209 |
| cr | JPMorgan Chase Bank, N.A.    c/o Clark R. Hammond, Esq.    569 Brookwood Village, Ste 901    Birmingham, AL 35209 |
| cr | City of Center Point, Alabama    P.O. Box 9847    Center Point, AL 35220 |
| cr | National Public Finance Guarantee Corporation    c/o Benjamin S. Goldman    2001 Park Place North    Suite 1200    Birmingham, AL 35203 |
| cr | Lloyds TSB Bank plc    c/o Stephen B. Porterfield    Sirote &Permutt, P.C.    2311 Highland Avenue S.    Birmingham, AL 35205 |
| cr | Nova Scotia    c/o Stephen B. Porterfield    Sirote &Permutt, P.C.    2311 Highland Avenue S.    Birmingham, AL 35205 |
| cr | Carmella S. Macon    2316 Beulah Avenue Sw    Birmingham, AL 35211 |
| cr | Societe Generale    c/o Stephen B. Porterfield    Sirote &Permutt, P.C.    2311 Highland Avenue S.    Birmingham, AL 35205 |
| cr | U.S. Bank National Association    Engel, Hairston &Johanson, P.C.    c/o Charles R. Johanson, III    P.O. Box 11405    Birmingham, AL 35202 |
| cr | The Bank of New York Mellon    c/o Stephen B. Porterfield    Sirote &Permutt, P.C.    2311 Highland Avenue S.    Birmingham, AL 35205 |
| intp | Jefferson County Personnel Board    c/o Benton &Centeno, LLP    2019 Third Avenue North    Birmingham, AL 35203 |
| op | Kurtzman Carson Consultants LLC    Attn: James Le    2335 Alaska Ave.    El Segundo, CA 90245 |
| intp | John Vos    1430 Lincoln Ave    San Rafael, CA 94901 |
| cr | CITY OF BIRMINGHAM, ALABAMA    1205 North 19th Stgreet    Birmingham, AL 35234 |
| cr | James Hernandez    P. O. Box 122    Lynn, AL 35575 |
| intp | Mike Hale    Jefferson County Sheriff's Departme    800 N. 22nd St.    Birmingham, AL 35203 US |
| intp | Jefferson County Board of Education    c/o Whit Colvin    1910 1st Avenue North    Birmingham, AL 35203 |
| cr | Beers Properties, LLC    c/o Longshore, Buck &Longshore, P.C.    2009 2nd Avenue North    Birmingham, AL 35203 |
| intp | All Temps Systems Inc.    c/o Andre M. Toffel, PC    600 North 20th Street    Suite 300    Birmingham, AL 35203 |
| cr | Elevator Maintenance and Repair, Inc    c/o Parnell and Crum P.A.    PO Box 2189    Montgomery, AL 36102 |
| cr | Gene J. Gonsoulin    868 Saddleback Road    Oneonta, AL 35121 |
| intp | William D. McAnally    1929 Third Avenue North    Suite 800    Birmingham, AL 35203 |
| intp | Aubrey Finley    1929 Third Avenue North    Suite 800    Birmingham, AL 35203 |
| intp | Robert Thompson    1929 Third Avenue North    Suite 800    Birmingham, AL 35203 |
| intp | Fraternal Order of Police Lodge 64    1929 Third North    Suite 800    Birmingham, AL 35203 |
| intp | BILLY LYNN GEORGE    127 MCKEE ST    BESSEMER, AL 35023 |
| intp | U.S. Securities and Exchange Commission    Atlanta Regional Office    950 East Paces Ferry Road, N.E.    Suite 900    Atlanta, GA 30326–1382 |
| intp | Lara Swindle Lara    c/o Wiggins, Childs, Quinn &Pantazis    The Kress Building    301 19th St N    Birmingham, AL 35003 |
| cr | Medical Data Systems, Inc.    c/o Bryan G. Hale    100 Brookwood Place    Seventh Floor    Birmingham, AL 35209 |
| cr | PATRICIA DIANNA WORKING    1417 HICKORY LANEE    BIRMINGHAM, AL 35235 |
| cr | Unisys Corporation    c/o Dana S. Plon, Esquire    Sirlin Gallogly &Lesser, P.C.    123 South Broad Street, Suite 2100    Philadelphia, PA 19109 |
| intp | State of Alabama, Department of Finance    c/o ROSEN HARWOOD, PA    Rachel L. Webber, Esq    2200 Jack Warner Parkway, Suite 200    Post Office Box 2727    Tuscaloosa, AL 35403–2727 |
| intp | City of Prichard, Alabama    c/o R. Scott Williams    Haskell Slaughter Young &Rediker, LLC    2001 Park Place, Suite 1400    Birmingham, AL 35203 |
| intp | John Mason IV    1826 3rd Avenue North Suite 300    Bessemer, AL 35020 |
| cr | BBA Development, LLC    c/o Burr &Forman LLP    Amanda Beckett    420 N 20th St., Ste 3400    Birmingham, AL 35203 |
| intp | Owens &Minor, Inc.    Hirschler Fleischer, P.C.    P.O. Box 500    Richmond, VA 23218–0500 |
| cr | B.A.S.L.L.P.    c/o Salem Resha Jr    1516 20th St So Ste A    Birmingham, AL 35203 |
| cr | Floyd McGinnis    c/o Albert L. Jordan    P.O. Box 530910    Birmingham, AL 35253 |
| cr | Rick Erdemir    c/o Albert L. Jordan    P.O. Box 530910    Birmingham, AL 35253 |
| cr | Lara Swindle    Wiggins. Childs, Quinn &Pantazis, LLC    c/o Ann C. Robertson    301 19th Street North    Birmingham, AL 35203 |
| intp | Harold Douglas Redd    5343 Old Springville Road    Pinson, Al 35126 |
| cr | Wells Fargo Financial Leasing, Inc.    800 Walnut Street    MAC F4031–050    Des Moines, IA 50309 |
| cr | Collette Funderburg    c/o Michael J. Antonio, Jr.    2516 11th Avenue North    Birmingham, AL 35234 |
| intp | CSX Transportation, Inc.    c/o James H. White, IV    420 20th Street North    Suite 1600    Birmingham, AL 35203 |
| cr | City of Hoover, Alabama    100 Municipal Lane    Hoover, AL 35216 |
| intp | James Pruitt    c/o Wilkinson Law Firm    215 N. Richard Arrington, Jr. Blvd.    Suite 811    Birmingham, AL 35203 |

| | | | | |
|---|---|---|---|---|
| cr | Universal Hospital Services, Inc. | 211 Summit Parkway, Suite 128 | Birmingham, AL 35209 | |
| intp | JAMES R CRANE | c/o Najjar Denaburg PC | 2125 Morris Avenue | Birmingham, AL 35203 |
| cr | Lehman Brothers Special Financing Inc. | c/o Christian &Small LLP | 505 20th Street North | Suite 1800 Birmingham, AL 35203 |
| intp | W.C. Rice Oil Company, Inc. | c/o James H. White, IV | 420 20th Street North | Suite 1600 Birmingham, AL 35203 |
| intp | BNSF Railway Company | c/o James H. White, IV | 420 20th Street North | Suite 1600 Birmingham, AL 35203 |
| cr | Delores W. Frost | c/o W. L. Longshore, III | 2009 2nd Avenue North | Birmingham, AL 35203 |
| intp | Fairfield Ventures, LLC | 2001 Park Place North, Suite 1400 | Birmingham | |
| intp | Moore Oil Company | c/o Brenton K. Morris, Esq. | 2019 Third Avenue North | Birmingham, AL 35203 |
| cr | Innovation Depot, Inc. as successor to Entrepreneurial Center | 1500 First Avenue North | Birmingham, AL 35203 U.S.A. | |
| mv | The Bank of New York Mellon, as Indenture Trustee | c/o Waller Lansden Dortch &Davis, LLP | 1901 Sixth Avenue North, Suite 1400 Birmingham, AL 35203 | |
| cr | First Commercial Bank, as Indenture Trustee | 800 Shades Creek, Parkway | Birmingham, AL 35209 | |
| intp | George Carpinello | One Federal Place | 1819 5th Ave North | Birmingham, AL 35203 |
| mv | Maralyn Gholston Mosley | 1208 17th Street SW | Birmingham, AL 35211 | |
| aplt | Maralyn Gholston Mosley | 1208 17th Street SW | Birmingham, AL 35211 | |
| intp | Brenda Walls | c/o Walter F. McArdle | Spain &Gillon, LLC | 2117 Second Avenue North Birmingham, AL 35203 |
| intp | Thadd Tidwell | c/o Walter F. McArdle | Spain &Gillon, LLC | 2117 Second Avenue North Birmingham, AL 35203 |
| res | William A Bell, Sr | Burr Forman LLP | 420 N 20th St. Suite 3400 | Birmingham, AL 35203 |
| res | City of Birmingham, Alabama | Burr &Forman LLP | 420 N 20th St., Suite 3400 | Birmingham, AL 35203 |
| cr | City of Bessemer, Alabama | City Attorney | 1813 3rd Avenue N. | Suite 200 Bessemer, AL 35020 |
| intp | Haskell Slaughter Young &Rediker, LLC | 2001 Park Place North | 1400 Park Place Tower Birmingham, AL 35203 | |
| intp | Matthew Howard | c/o White Arnold &Dowd P.C. | 2025 Third Avenue North | Suite 500 Birmingham, AL 35203 |
| cr | Ronald Harold Steber | c/o Robert Potter, Mann &Potter, P.C. | 600 University Park Place, Suite 250 Birmingham, Al 35209 | |
| cr | Ala Gas Co | 605 Richard Arrington Jr BL N | Birmingham | |
| cr | Ad Hoc Sewer Warrantholders | c/0 Tanner Guin &Crowell, LLC | 2711 University Blvd. | Tuscaloosa |
| tr | Bank of New York Mellon, as Indenture Trustee | Fic/o Waller Lansden Dortch &Davis, LLP | Attn: Ryan Cochran 511 Union Street, Suite 2700 Nashville, TN 37219 | |
| intp | Jonathan M. Wagner | Kramer Levin Naftalis &Frankel LLP | 1177 Avenue of the Americas | New York, NY 10036 |
| intp | Fundamental Partners II LP | 745 Fifth Avenue, 30th Floor | New York, NY 10151 | |
| intp | Kurtzman Carson Consultants LLC | Attn: James Le | 2335 Alaska Ave. | El Segundo, CA 90245 |
| intp | Monarch Alternative Solutions Master Fund Ltd | c/o Monarch Alternative Capital LP | 535 Madison Avenue, Floor 26 New York, NY 10022 | |
| intp | Stone Lion Capital Partners LP | 555 Fifth Avenue 18th Floor | New York, NY 10017 | |
| intp | Societe Generale, New York Branch | 1221 Avenue of the Americas | New York, NY 10020 | |
| cr | Dell Marketing, L.P. | c/o Streusand, Landon &Ozburn, LLP | 811 Barton Springs Rd. | Suite 811 Austin, TX 78704 |
| intp | Carl A. Tomtis | 1735 Mountain Laurel Lane | Hoover, AL 35244−1129 | |
| intp | Monarch Capital Master Partners II LP | c/o Monarch Alternative Capital LP | 535 Madison Avenue, Floor 26 New York, NY 10022 | |
| intp | The Water Works Board of the City of Birmingham | 3600 1st Avenue North | Birmingham, AL 35222 | |
| intp | Mike Agnesia | c/o Benton &Centeno, LLP | 2019 Third Avenue North | Birmingham, AL 35203 |
| intp | David Harris, III | c/o Benton &Centeno, LLP | 2019 Third Avenue North | Birmingham, AL 35203 |
| intp | Charles E Wilson | c/o Benton &Centeno, LLP | 2019 Third Avenue North | Birmingham, AL 35203 |
| intp | Robert C. Spencer | 43081 Buttonwood Dr | Palm Desert, CA 92260 | |
| intp | E. Richard Rutfield | 55 Shaw Farm Rd | Canton, MA 02021−3441 | |
| cr | Ted E Self | c/o Miller, Christie &Kinney, PC | 2090 Columbiana Road | Suite 3400 Vestavia Hills, AL 35216 |
| intp | Annie G. Saxon | 35 Rosewood Lane | Ashland, AL 36251 | |
| intp | Louis L. Lunetta, Jr. | 3208 Powers Ford SE | Marietta, GA 30067 | |
| intp | Henry A. Parker | 1256 Highland Pkwy | Morris, AL 35116−1837 | |
| cr | Pamela Lynn Lieb | c/o Richard M. Gaal | P.O. Box 350 | Mobile, al 36601 |
| cr | Frank Jordan Lieb | c/o Richard M. Gaal | P.O. Box 350 | Mobile, AL 36601 |
| intp | Gladys Smith | 225 Medford | Knoxville, TN 37922 | |
| intp | James Brazzill | 116 Munich Circle | Birmingham, AL 35211 | |
| intp | Betty J. Rodman | 341 Sun Valley Circle | Center Point, AL 35215 | |
| intp | Frances E. Weems | P O Box 320863 | Birmingham, AL 35232 | |
| intp | Lucille Crawford | 1012 4th CT W | Birmingham, AL 35204 | |
| intp | ConocoPhillips Co. | c/o James H. White | Baker Donelson | 420 20th Street North, Ste. 1400 Birmingham, AL 35203 |
| intp | Citgo Petroleum Corp. | c/o James H. White | Baker Donelson | 420 20th Street North, Ste. 1400 Birmingham, AL 35203 |
| intp | Energy, LLC Allied | c/o James H. White | Baker Donelson | 420 20th Street North, Ste. 1400 Birmingham, AL 35203 |
| intp | P.F. Moon and Co., Inc. | P.F. Moon and Co., Inc. | 2207 Hwy. 103 | West Point, GA 31833 |
| mv | BERNICE AVERHART | 1416 MONROE AV SW APT 7 | BIRMINGHAM, AL 35211 | |

| | | | |
|---|---|---|---|
| intp | Longmeadow, LLC | c/o David B. Anderson | Anderson Weidner, LLC | Financial Center, Suite 1450 | 505 North 20th Street | Birmingham, AL 35203 |
| aty | Spotswood | SPOTSWOOD SANSOM &SANSBURY LLC | 2100 Third Ave N #940 | Birmingham, AL 35203 |
| aty | Aaron Power | 1100 Louisiana Ste 4000 | Houston, TX 77002-5213 |
| aty | Amy Caton | Kramer Levin Naftalis &Frankel LLP | 1177 Avenue of the Americas | New York, NY 10036 |
| aty | Ann E. Acker | 111 W. Monroe St. | Chicago, IL 60603 |
| aty | Ann E. Acker | 111 W. Monroe St. | Chicago, IL 60603-4080 |
| aty | Brian J. Klein | MASON EDELMAN BORMAN &BRAND LLP | 90 S Seventh St St 3300 | Minneapolis, MN 55402-4140 |
| aty | Brian P. Hall | 1230 Peachtree Street NE | Atlanta, GA 30309-3592 |
| aty | Carrie V. Hardman | Winston &Strawn LLP | 200 Park Avenue | New York, NY 10166-4193 |
| aty | Chevene Hill | PO Box 59383 | Homewood, Al 35259 |
| aty | Clark T. Whitmore | 3300 Wells Fargo Center | 90 South Seventh Street | Minneapolis, MN 55402 |
| aty | Corinne Ball | Jones Day | 222 East 41st Street | New York, NY 10017 |
| aty | Dana S Plon | Sirlin Gallogly &Lesser, P.C. | 123 South Broad Street Suite 2100 | Philadelphia, PA 19109 |
| aty | Daniel Holzman | 51 Madison Ave 22nd Floor | Ney York, NY 10010 |
| aty | David L. Eades | 100 North Tryon Street Ste 4700 | Charlotte, NC 28202-4003 |
| aty | Elan Daniels | Kramer Levin Naftalis &Frankel LLP | 1177 Avenue of the Americas | New York, NY |
| aty | Frank O. Hanson | 4401 Gary Avenue | Fairfield, AL 35064 |
| aty | Gregory Andrew Kopacz | McDermott Will &Emery LLP | 340 Madison Avenue | New York, NY 10173-1922 |
| aty | Henry Walker, Jr | 2330 Highland Ave | Birmingham, AL 35205 |
| aty | Ian Dattner | Simpson Thacher &Bartlett LLP | 425 Lexington Avenue | New York, NY 10017 |
| aty | Jake Shields | 51 Madison Ave 22nd Floor | Ney York, NY 10010 |
| aty | James Spiotto | 111 W. Monroe St. | Chicago, IL 60603 |
| aty | James Spiotto | 111 W. Monroe St. | Chicago, IL 60603 |
| aty | Jeffrey McClellan | 1200 Abernathy Road NE Ste 1200 | Ste 1200 | Atlanta, GA 30328 |
| aty | Jon Pickhardt | 51 Madison Avenue 22nd Floor | New York, NY 10010 |
| aty | Joyce Gorman | 1875 K Street N.W. Ste 750 | Washington, DC 20006 |
| aty | Katherine Scherling | 51 Madison Ave 22nd Floor | New York, NY 10010 |
| aty | Kenneth N Klee | Klee, Tuchin, Bogdanoff &Stern LLP | 1999 Avenue of the Stars 39th Floor | Los Angeles, CA 90067 |
| aty | Kesha L. Tanabe | 3300 Wells Fargo Center | 90 South Seventh Street | Minneapolis, MN 55402 |
| aty | Kirk B. Burkley | Suite 2200 Gulf Tower | Pittsburgh, PA 15219-1900 |
| aty | Larry Childs | 1901 6th Ave North Ste 1400 | Birmingham, AL 35203 |
| aty | Luke Sizemore | Reed Smith Centre | 225 5th Ave Ste 1200 | Pittsburgh, PA 15222 |
| aty | M. Brent Walker | One Perimeter Park South Ste 315 South | Birmingham, AL 35243 |
| aty | Mark P. Mastoris | 200 Park Ave | New York, NY 10166-4193 |
| aty | Marshall Smith | 4401 Gary Avenue | Fairfield, AL 35064 |
| aty | Mary Beth Forshaw | Simpson Thacher &Bartlett LLP | 425 Lexington Avenue | New York, NY 10017 |
| aty | Matthew Scheck | 865 South Figueroa Street 10th Floor | Los Angeles, CA 90017 |
| aty | Michael T. Sansbury | SPOTSWOOD SANSOM &SANSBURY LLC | 2100 3rd Ave N #940 | Birmingham, AL 35203 |
| aty | Ralph Bohanan, Jr. | Bohanan &Associates | One Perimeter Park South Ste 315 North | Birmingham, AL 35243 |
| aty | Robert Loigman | 51 Madison Avenue 22nd Floor | New York, NY 10010 |
| aty | Roberto A. Dall'Asta | 227 West Monroe Street | Chicago, IL 60606 |
| aty | Samuel McCord | 2126 Morris Ave | Birmingham, AL 35203 |
| aty | Scott Davidson | 1185 Avenue of the Americas | New York, NY 10036 |
| aty | Susheel Kirpalani | 51 Madison Avenue 22nd Floor | New York, NY 10010 |
| aty | Thomas C. Rice | Simpson Thacher &Bartlett LLP | 425 Lexington Avenue | New York, NY 10017 |
| aty | Tyrone Townsend | Townsend &Associates | PO Box 2105 | Birmingham, AL 35201 |
| aty | Wendell Major | P O Box 303 | Fairfield, AL 35064-0303 |
| aty | Whitman L. Holt | 1999 Avenue of the Stars 39th Floor | Los Angeles, CA 90067-6049 |
| aty | Xochitl Strohbehn | 51 Madison Avenue, 22nd Floor | New York, NY 10010 |

TOTAL: 157