UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 9 |
| City of Detroit, Michigan, | No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| _____/ | |

**DFFA OBJECTIONS TO THE CITY'S
FOURTH AMENDED PLAN OF ADJUSTMENT**

The Detroit Fire Fighters Association (the DFFA), on behalf of its approximately 800 members who provide the City of Detroit and its citizens with indispensable fire protection, file this objection to the City's Fourth Amended Plan of Adjustment [Docket No. 4392] (POA), and incorporate by reference the Objections to Fourth Amended Plan of Adjustment filed by the Detroit Police Officers Association (DPOA). [Docket No.4901]

**I. INTRODUCTION**

The DFFA objects to the POA for the following reasons:

- The Court has no authority under Chapter 9 of the Bankruptcy Code to impose an ten (10) year *prospectively-applicable* pension plan -- a statutorily and judicially-recognized mandatory subject of bargaining -- upon DFFA and DPOA members; and

1

- The City's efforts to use the POA to suspend, for ten (10) years, DFFA and DPOA members' statutory bargaining rights and, correspondingly, and to relieve the City of its statutorily-imposed duty to bargain is a misuse of the POA and the Bankruptcy Court.

## II. PERTINENT FACTS

### A. The DFFA

1. The DFFA, Local 344, IAFF, AFL-CIO is a labor union. It is the exclusive bargaining representative for over 800 City employees within the Detroit Fire Department (DFD).

### B. Public Act 4 (PA 4), The Appointment of the Emergency Manager (EM), and Public Act 436 (PA 436)

2. In 2012, the City unilaterally imposed a 10% wage cut on DFFA and DPOA members under PA 4.

3. In November 2012, PA 4 was repealed by a referendum vote of Michigan voters.

4. In December 2012, the Michigan Legislature passed PA 436 and Governor Snyder signed it.

5. Under PA 436, the Governor can appoint an EM to "address a [City's] financial emergency." M.C.L. 141.1549(1).

6. A PA 436 EM has broad, sweeping martial-law-like powers. *See* M.C.L. 141.1552(1).

7. Under PA 436, the EM completely supplants duly-elected City officials -- both the City Council and the Mayor -- and has "broad powers" to operate a city in receivership. M.C.L. 141.1549(2).

8. In the context of labor relations and collective bargaining, an EM's powers are virtually absolute, though of limited duration. M.C.L. 141.1552(1); M.C.L. 141.1567(3).

9. PA 436 authorizes an EM to amend, modify or terminate "1 or more terms and conditions" of any existing collective bargaining agreement (CBA). M.C.L. 141.1552(k).

10. PA 436 also temporarily suspends a city's duty to bargain over mandatory subjects of bargaining -- a statutory duty under the Michigan Public Employment Relations Act (PERA), M.C.L. 423.201 *et seq.*, that has been recognized for nearly 50 years. M.C.L. 141.1567(3).

11. PA 436's suspension of PERA's duty to bargain "sunsets" when a city exits receivership, but no later than 5 years from the date the city is placed into receivership. M.C.L. 141.1567(3).

**C. The Governor Appoints the EM**

12. In early March 2013, before PA 436's effective date, Governor Snyder appointed Kevyn Orr as the EM for the City of Detroit.

13. On March 28, 2013, PA 436's effective date, Kevyn Orr became the PA 436 EM for the City.

### D. The EM's Pre-Bankruptcy Imposition of PA 436 Terms and Conditions of Employment

14. On June 30, 2013, the DFFA-City CBA expired by its terms. Rather than negotiate a new CBA, the EM unilaterally imposed terms and conditions of employment under PA 436.

15. These EM-imposed terms and conditions continued the earlier-imposed 10% wage cuts. They also included unilateral changes in DFFA's seniority and promotion rights and health care benefits – mandatory subjects of bargaining historically negotiated in collective bargaining.

### E. The City's Bankruptcy Filing, Bankruptcy Mediation, and "Meet and Confer" Sessions

16. In July 2013, with State approval, the EM filed for City bankruptcy protection under Chapter 9.

17. When it filed its Chapter 9 petition, the City had no CBA with the DFFA.

18. Since June 2013, the DFFA members have provided essential fire protection services for the City and its citizens without the benefit of a CBA.

19. The City has not rejected in this bankruptcy, nor sought this Court's approval to reject, any CBA with the DFFA or the DPOA.

20. As ordered and encouraged by this Court, the DFFA and the DPOA engaged in extensive bankruptcy-related mediation sessions with Court-appointed mediators for nearly nine months.

21. At the same time, the City met and conferred with the DFFA and the DPOA regarding the prospects of future collective bargaining agreements. The City specifically declared, however, that these meetings were *not* collective bargaining.

22. Ultimately, the DFFA did not reach agreement with the City on the terms of the POA. Nor did the DPOA. (The Detroit Police Command Officers Association (DPCOA) and the Detroit Police Lieutenants and Sergeants Association (DPLSA) reached agreement with the City on the terms of the POA).

**F. The City's POA and Imposed Pension Plan**

23. On May 5, 2014, the City filed its POA.

24. The POA includes a *new*, inchoate, *prospectively-applicable* pension plan for current and future DFFA and DPOA members. Fourth Amended POA, Article 1.A.191. The City, the EM, and the affected Unions colloquially refer to this POA-proposed pension plan as the "Hybrid Plan"

(Hybrid Plan) because of its defined contribution and defined benefit pension features.

25. Under the City's POA Hybrid Plan provision, the City asks this Court to impose on the DFFA and the DPOA members *both* the specific terms of this Hybrid Plan *and* a ten (10) year injunction against any amendment or change to the Hybrid Plan's terms, conditions, rules of operation, the calculation of pension benefits, or any other matter related to the Hybrid Plan. Fourth Amended POA, Article II.B.3.q.ii.G.

26. As such, the City wants this Court to approve a POA injunction that deprives DFFA and DPOA members of their PERA rights to bargain over pensions for the next ten (10) years and, for the same ten (10) years, relieves the City of its PERA bargaining duties *vis a vis* pensions.

27. This POA-imposed ten (10) year injunction exceeds by five (5) years PA 436's suspension of the PERA-required duty to bargain over mandatory subjects.

### III. ARGUMENT

#### A. The Powers Of A Chapter 9 Bankruptcy Court

The Bankruptcy Court's authority is defined by the Bankruptcy Code. And, the goal of a Chapter 9 bankruptcy is to adjust the debtor-creditor relationship. *In re City of Stockton*, Cal. 478 B.R. 8, 25 (Bankr. E.D. Cal.

2012). The debtor's pre-petition contracts and its creditors' claims comprise the debtor-creditor relationship. Indeed, contracts are the "starring role" in bankruptcy. *In re City of Stockton*, 478 B.R. at 16.

The bankruptcy court has broad equitable powers to impair the debtor's contract and claim obligations. *Id.* at 15; *In re Foremost Mfg. Co.*, 137 F.3d 919, 924 (6th Cir. 1998). A bankruptcy court can issue injunctions to carry out the provisions of the Bankruptcy Code and exercise the Court's broad equitable powers. 11 U.S.C. §105. Specifically, the court can issue an injunction to assist with adjusting the current debtor-creditor relationship.

But, the Court's equitable powers are not unlimited. *In re Foremost Mfg. Co.*, 137 F.3d 919, 924 (6th Cir. 1998). Thus, when issuing a § 105 injunction, the Court cannot "alter another provision of the Code." *The Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995); *Landsing Diversified Props v. First Nat'l Bank & Trust Co.*, 922 F.2d 592, 601 (10th Cir. 1990) ("A bankruptcy court's supplementary equitable powers [under §105(a)] may not be exercised in a manner that is inconsistent with the other, more specific provisions of the Code.").

Moreover, a bankruptcy court cannot abrogate governing law into the *future* or impair the legal rights of individuals arising out of *future*, rather than pre-bankruptcy relationships.

## B. Pension Plans Are Mandatory Subjects Of Bargaining

The National Labor Relations Act (NLRA), 29 U.S.C. §151 *et seq.* governs private sector labor relations and collective bargaining. The PERA governs public sector labor relations and collective bargaining in Michigan.

Both the NLRA and PERA define mandatory subjects of bargaining as "wages, hours, and other terms and conditions of employment." 29 U.S.C. §159(d); M.C.L. §423.215(1). Mandatory subjects of bargaining are just that -- subjects that both an employer and union *must* negotiate.

The failure or refusal to negotiate mandatory terms is a specific unfair labor practice under both federal and state law. *Local 2179, United Steelworkers of America v. N.L.R.B.*, 822 F.2d 559, 565-66 (5th Cir. 1987) ("Subjects within the 'terms and conditions of employment category' are mandatory bargaining matters, and the decision to classify a subject as such is significant: the refusal of an employer or union to meet and discuss such subjects is a specific unfair labor practice.").

Both the NLRA and PERA recognize pension plans as mandatory subjects of bargaining. The NLRA has recognized this for 80 years. PERA has recognized it for 50 years. See *Allied Chemical & Alkali Workers of Amer., Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 160 (1971) ("Under the [NLRA], as amended, mandatory subjects of collective

bargaining include pension…for active employees"); *Detroit Police Officers Ass'n. v. City of Detroit*, 212 Mich. App. 383 (1995) ("pensions and the significant provisions of a pension plan are mandatory subjects of collective bargaining.").

### C. The Limits Of This Court's Power

The Court is limited by 11 U.S.C. 943(b). Section 943(b) states that a bankruptcy court cannot confirm a Chapter 9 plan if any part of it is prohibited by state law. *Matter of Sanitary & Imp. Dist., No. 7*, 98 B.R. 970, 974-75 (Bankr. D. Neb. 1989) (Holding that a plan could not be confirmed under Section 943(b) where the Plan's treatment of bonds violated state law.).

If the Court approves the City's POA injunction imposing the Hybrid Plan for ten (10) years, the Court will exceed its statutory and equitable powers. Specifically, it cannot properly suspend for the next ten (10) years the statutory rights of DFFA and DPOA members to negotiate a pension. Correspondingly, this Court cannot properly relieve the City for the next ten (10) years of its statutory duty to bargain over pensions, a mandatory subject. M.C.L. 423.215(1).

To emphasize: this Court has *no* authority to suspend employees' PERA rights for ten (10) years. Nor does it have authority to grant the City a ten (10) year moratorium on its post-PA 436 PERA duty to bargain.

(By these Objections, and those incorporated by reference, the DFFA and DPOA do *not* challenge this Court's authority to approve a POA with a ten (10) year *prospectively-applicable* pension plan, provided the DFFA and the DPOA stipulate to such a pension.)

### D. The City's Likely Arguments Are Meritless

The City will likely argue that the "feasibility" of the entire POA is linked to the Court's approval of the POA **with** the ten (10) year injunction-protected Hybrid Plan. In some fashion, the City will likely argue as follows: unless the City can quantify with certainty its public safety pension costs for the next ten (10) years, the POA's "feasibility" is in jeopardy.

Stated another way, the City will link the POA's "feasibility" to the City's ability to freeze and quantify, for ten (10) years, its *future* public safety pension costs.

This argument is sophistry. When examined closely, its flawed logic and legal impermissibility become apparent.

The surface appeal of this City argument is obvious enough. All bankruptcy debt has *some* linkage. That is the precise rub of bankruptcy:

it is the ultimate zero-sum game, where the resolution of any one creditor's claim must necessarily come at the expense of other creditor(s).

But this "linkage" is based on conflicting *current* claims against the City. The Hybrid Plan, on the other hand, is not a *current* City debt subject to this Bankruptcy Court's adjustment authority. 11 U.S.C. §101(5)(A). The Hybrid Plan is not a *current* creditor's claim. Rather, it is a vehicle for *future* pensions to be earned from the *future* labor of DFFA and DPOA members.

As such, it is beyond the Court's Chapter 9 adjustment authority. *In re City of Detroit, Mich.*, 504 B.R. 97, 150 (Bankr. E.D. Mich. 2013) (The bankruptcy court has the power to impair "existing" debt, such as "ordinary contract debt" or current "pension debt.").

This stubborn, inconvenient, and limiting fact cannot be changed by the City's conclusionary declarations that seek to couple this *future* pension plan to the "feasible" resolution of the *current* City debt – the debt that provoked this bankruptcy.

The City cannot expand this Court's authority simply by reciting "feasibility." "Feasibility" is not a talisman that converts *future*, yet-to-be incurred, debt into *current* debt subject to this Court's adjustment authority. Attenuated "feasibility" claims cannot redefine the Chapter 9 Bankruptcy

Court's explicit and narrow Chapter 9 authority to adjust the relationship between the debtor and its creditors in the context of *current* debt. *In re City of Detroit, Mich.*, 504 B.R. at 131 ("A bankruptcy court may determine matters that arise directly under the bankruptcy code, such as fixing a creditor's claim in the claims allowance process."); *In re City of Stockton*, Cal. 478 B.R. 8, 25 (Bankr. E.D. Cal. 2012) ("The core of a chapter 9 case is adjustment of the debtor-creditor relationship.").

If this were not so -- if the mere mention of "feasibility" is sufficient to broaden this Court's power -- the City should not restrict its POA request to a mere ten (10) year pension injunction. A twenty-five (25) year injunction against pension changes would have linkage to and certainly enhance the POA's "feasibility."

For that matter, why stop at pension? If the City can legally "roll-up" other mandatory bargaining subjects into a ten (10) year POA-imposed injunction (*e.g.*, healthcare, wages, work-place safety), it would certainly improve the POA's "feasibility."

Such demands would, obviously, fail at the threshold. Not simply because they offend one's *natural law* notions of fairness or the judicially-recognized limits to the bankruptcy court's jurisdiction and authority.

12

13-53846-tjt    Doc 4918    Filed 05/16/14    Entered 05/16/14 21:37:11    Page 12 of 19

The City's arguments, taken to their inexorable conclusion, reveal a logical disconnect. *All future* City costs -- whatever they may be -- will affect the POA's "feasibility." But this truism does not establish a "feasibility" basis for imbuing this Court with the extraordinary power to issue injunctive relief -- binding on third parties like the DFFA and DPOA -- that removes a mandatory subject of bargaining (pension) from collective bargaining for the next ten (10) years.

It is no response to say that this is within the Court's equity powers. This Court's equity powers are not unmoored. They do not license this Court to engage in a broad, "freewheeling" balancing act. *Matter of Walway Co.*, 69 B.R. 967, 971 (Bankr. E.D. Mich. 1987) (citing *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 529 (1984)).

More specifically, in the context of the DFFA and DPOA's *future* wages and benefits, the Court's equity powers cannot trump clear statutory rights. 11 U.S.C. 943(b)(4); *Matter of Sanitary & Imp. Dist., No. 7*, 98 B.R. 970, 974-75 (Bankr. D. Neb. 1989). Under PERA, employees have statutory rights and employers have a corresponding statutory obligation to negotiate over pensions. M.C.L. 423.215(1). The POA's ten (10) year Hybrid Plan injunction would impermissibly obliterate these statutory rights and obligations.

There is no legal support for the POA's ten (10) year injunction. Neither a state nor federal court, nor the NLRB, nor the Michigan Employment Relations Commission (MERC), can impose mandatory terms and conditions of employment on any bargaining party. *Gibraltar Sch. Dist. v. Gibraltar MESPA-Transp.*, 443 Mich. 326, 341-42 (1993) ("The essential nature of both the NLRA and the PERA is that the acts provide only a process by which the parties might reach agreement, the power to agree to a proposal remains with each party."); *N.L.R.B. v. Tomco Communications, Inc.,* 567 F.2d 871, 884 (9th Cir. 1978) (The NLRB cannot "directly or indirectly, compel concessions" of collective bargaining agreements.).

Similarly, there is no bankruptcy law – public or private – that recognizes a bankruptcy court's authority to remove from collective bargaining, for ten (10) years, a statutorily-recognized mandatory term and condition of employment. Stated another way, there is no bankruptcy law that permits a court to limit or redline public employees' *future* statutory bargaining rights or relieve a city from *future* statutory bargaining obligations.

To the extent that there is instructive or analogous law, it belies the City's demands.

Under 11 U.S.C. §1129(a)(3), a bankruptcy court "shall confirm a plan only if … the plan has been proposed in good faith and not by any means forbidden by law." *Id.* This §1129(a)(3) prohibition is expansive. It "includes both federal and any other applicable law." *In re Dapontes,* 364 B.R. 866, 866-67 (Bankr. D. Conn. 2007). Other "applicable law" includes state law. *In re Koelbl,* 751 F.2d 137, 139 (2d Cir. 1984).

In *Bildisco,* a private sector case where the court had broader bankruptcy powers and no 10th Amendment balancing concerns, the Supreme Court warned the bankruptcy judge not to step into the collective bargaining process that followed the debtor's rejection of a current CBA. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 534 (1984) ("…a debtor….is obligated to bargain collectively with the employees' certified representative over the terms of a new contract pending rejection of the existing contract or following formal approval of rejection by the Bankruptcy Court."); *In re City of Stockton, Cal.*, 478 B.R. 8, 23 (Bankr. E.D. Cal. 2012) ("The judicial consensus is that *Bildisco* controls rejection of collective bargaining agreements in chapter 9 cases.").

After CBA rejection, collective bargaining is governed by labor law, not by the bankruptcy court's *future-looking* dictates.

Here, there was no rejection of a current CBA and no post-rejection negotiations. Instead, under the martial-law-like powers of PA 436, the EM summarily dispensed with the City's CBAs, without the assistance of this Bankruptcy Court.

But now, the City asks this Court to not merely step into *future* collective bargaining but to actually impose *future* pension terms and, via injunction, force these terms on DFFA and DPOA members for ten (10) years.

Undressed, this City POA request is a demand that this Court judicially repeal parts of PERA. It asks this Court to do that which neither the City nor the PA 436-empowered EM can legally do, *i.e.,* disregard for ten (10) years the PERA-imposed obligation to bargain in good faith over a mandatory subject of bargaining.

### E. The City's Misuse Of The POA And This Bankruptcy Court

On December 5, 2013, this Court found that the City filed for Chapter 9 bankruptcy protection in "good faith," seeking relief from its past debts and current obligations. Fair enough.

But now, the City's request for a ten (10) year injunction for the Hybrid Plan misuses the POA and the Bankruptcy Court.

It is an improper City effort to use the POA and the Bankruptcy Court to shape, control and leverage *future* collective bargaining for the next ten (10) years, beyond any legally-permissible period (PA 436) and beyond this Court's authority.

If the Court removes the mandatory subject of pensions from the DFFA and DPOA bargaining table -- as the ten (10) year POA injunction proposes -- this Court will improperly intrude into *future* collective bargaining between the parties and expand the EM's power beyond PA 436 durational limits. Enjoined from negotiating their pensions, DFFA and DPOA members' statutory (PERA) collective bargaining rights will be improperly compromised.

This not only violates PERA, but it deforms the collective bargaining process.

Mandatory subjects of bargaining (*e.g.,* wages, pensions and health care, workrules, seniority and promotions, sick leave, *etc.*) are the "coins of the realm" in collective bargaining. They are freely traded by the bargaining parties -- both the employer and the union -- to arrive at mutually-agreed upon CBAs.

By depriving the DFFA and DPOA of such negotiating "coins" -- reducing their negotiating inventory -- the Court would improperly prejudice

17
13-53846-tjt   Doc 4918   Filed 05/16/14   Entered 05/16/14 21:37:11   Page 17 of 19

the DFFA's and DPOA's *future* bargaining ability. By this deprivation, the Court would improperly place its "thumb" on the bargaining scale in favor of the City.

Because the City's POA improperly usurps PERA and deforms *future* collective bargaining, it is an improper and impermissible use of the POA and the Bankruptcy Court.

Finally, aside from being legally-impermissible and a misuse of the POA and this Court, the City's requested injunction is unnecessary. The EM has broad, even plenary, PA 436 authority to impose labor terms. The EM has energetically exercised that authority.

Now, however, the EM seeks more power than the Michigan legislature gave him in PA 436. He seeks this Court's imprimatur to dictate a ten (10) year pension term. This is improper and a misuse of this bankruptcy.

## IV.  CONCLUSION

For the reasons summarized in this Objection and those Objections set forth in the Objections To Fourth Amended Plan of Adjustment By Detroit Police Officers Association [Docket No. 4901], which are incorporated by reference, the DFFA respectfully asks that this Court deny confirmation of the Plan.

LEGGHIO & ISRAEL, P.C.

*/s/Alidz Oshagan*
Christopher P. Legghio (P27378)
Alidz Oshagan (P77231)
Counsel for the Detroit Fire Fighters
Association, I.A.F.F., Local 344
306 South Washington Avenue, Suite 600
Royal Oak, Michigan 48067-3837
T: 248 398 5900; F: 248 398 2662
oshagan@legghioisrael.com
cpl@legghioisrael.com

Dated: May 16, 2014

# CERTIFICATE OF SERVICE

I **CERTIFY** that on May 16, 2014 I electronically filed the **DFFA Objections to the City's Fourth Amended Plan of Adjustment** and this **Certificate of Service** by of operation of the court's electronic filing service to all ECF participants registered to receive notice in this case.

LEGGHIO & ISRAEL, P.C.

*/s/Alidz Oshagan*
Christopher P. Legghio (P27378)
Alidz Oshagan (P77231)
Counsel for the Detroit Fire Fighters
Association, I.A.F.F., Local 344
306 South Washington Avenue, Suite 600
Royal Oak, Michigan 48067-3837
T: 248 398 5900; F: 248 398 2662
oshagan@legghioisrael.com
cpl@legghioisrael.com

Dated: May 16, 2014