**Exhibit 6A**

**Part 1**

**ORIGINAL**

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9 ~~PROOF OF CLAIM~~ |
|---|---|---|

**RECEIVED**

**FEB 2 0 2014**

KURTZMAN CARSON CONSULTANTS
~~COPY FOR USE ONLY~~

Name of Debtor: City of Detroit, Michigan          Case Number: 13-53846

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Assured Guaranty Municipal Corp.

Name and address where notices should be sent:          with copies to: Lawrence A. Larose
Assured Guaranty Municipal Corp.                                          Samuel S. Kohn
31 West 52nd Street                                                              Chadbourne & Parke LLP
New York, NY 10019                                                            30 Rockefeller Plaza
Attn: Kevin J. Lyons                                                           New York, NY 10112
Tel: 212-339-3545
Email: Klyons@assuredguaranty.com                          llarose@chadbourne.com
Terence L. Workman                                                      skohn@chadbourne.com
Tel: 212-408-6053
Email: Tworkman@assuredguaranty.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. **Amount of Claim as of Date Case Filed:**     $ __See attached Addendum_____

If all or part of your claim is secured, complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** __Municipal Bond Insurance (Unlimited Tax General Obligation Bonds) – Insurer's Claim__     See attached Addendum
(See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a)

4. **Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ See attached Addendum

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
**Describe:**

Basis for perfection: __See attached Addendum_____

**Value of Property:** $_____
**Annual Interest Rate (when case was filed)_____% ☐ Fixed or ☐ Variable**

Amount of Secured Claim:     $ See attached Addendum
Amount Unsecured:             $ See attached Addendum

5. **Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**     $ _____

5b. **Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.**     $ _____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or in the case of a claim based upon an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted" on reverse side.)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

8. **Signature: (See instruction #8)**
Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: __Holly Horn__
Title: __Chief Surveillance Officer – Public Finance__
Company: __Assured Guaranty Municipal Corp.__
Address and telephone number (if different from notice address above):
__31 West 52nd Street New York, NY 10019__

*Holly Horn*  2-18-2014
(Signature)          (Date)

Telephone number: (212) 339-3526     email: hhorn@assured guaranty.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for ~~up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.~~*

13-53846-tjt  Doc 5015-1   Filed 05/23/14   Entered 05/23/14 13:38:18   Page 2 of 29

CPAM: 6059772.7

1353846140220000000000039

# CHADBOURNE
## & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112

**tel** (212) 408-5100  **fax** (212) 541-5369

**David M. Bava**
(212) 408-5477
dbava@chadbourne.com

February 19, 2014

City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

> Re:  In re: City of Detroit, Michigan - Case No. 13-53846-swr
>       <u>Proofs of Claim</u>

Ladies and Gentlemen:

I enclose herewith an original set and one copy set for a total of six (6) proofs of claim to be filed on behalf of Assured Guaranty Municipal Corp. against the above-referenced debtor.  Please file the original claims, stamp the marked copy set as evidence of filing and return them to the undersigned using the enclosed pre-addressed Federal Express airbill.

I will confirm receipt of the enclosed by contacting Joe Bunning on Thursday, February 20, 2014.

If you have any questions regarding the enclosed please feel free to contact me directly.

Thank you for your assistance with these filings.

Very truly yours,

David M. Bava
Case Manager

Enclosures

<u>VIA OVERNIGHT DELIVERY</u>

DMB/

cc:  Samuel S. Kohn, Esq. (without Enclosures)
     Mr. Seth Bloomfield (without Enclosures)


New York  Washington  Los Angeles  Mexico City  São Paulo  London  Moscow  Warsaw  Kyiv  Istanbul  Dubai  Beijing

### Addendum to Proof of Claim
### of Assured Guaranty Municipal Corp.

This Addendum to Proof of Claim ("Addendum") shall be deemed to be a part of, and incorporated by reference into, the attached proof of claim (together with this Addendum and all Exhibits hereto, the "Claim") filed by Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. (the "Claimant") against the City of Detroit, Michigan (the "Debtor"). On July 18, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), at Case No. 13-53846-swr.

## A.      Statement of Claim

Claimant files this Claim, on its own behalf for (1) the disbursement of insurance payments that Claimant has made on certain insurance policies issued by the Claimant to insure unlimited tax general obligation bonds issued by the Debtor; (2) all fees and expenses related to this disbursement of insurance payments; and (3) all future disbursements of insurance payments that Claimant may make in the future, and the associated fees and expenses with such future disbursements.

## B.      Basis for Claim

In accordance with the authorizing resolutions (the "Resolutions") enacted by the City Council of Detroit (the "City Council"), the Debtor's legislative body,  the Debtor issued several series of unlimited tax general obligation bonds (collectively, the "Unlimited Tax Bonds"), pursuant to Chapter 141 of the Michigan Public Acts, including Act 34 of 2001, the Revised Municipal Finance Act, Michigan Compiled Laws ("MCL") § 141.2101 *et seq.* and Act 189 of 1979, the Unlimited Tax Election Act, MCL § 141.161 *et seq.* The Unlimited Tax Bonds were

issued to fund public capital improvements identified by the Mayor and the City Council. Issuance of the Unlimited Tax Bonds required approval by a majority of the votes in city-wide elections establishing a pledge of *ad valorem* taxes, as security, to repay obligations under the Unlimited Tax Bonds exclusively.

Specifically, the Debtor has issued, among others, the following series of Unlimited Tax Bonds (collectively, the "Claimant Bonds"):

- General Obligation (Unlimited Tax) Series 1999-A (the "1999 Bonds"), issued pursuant to the March 3, 1999 Resolution and a sale order issued by the then finance director on April 1, 1999 (the "1999 Sale Order"); and

- General Obligation Bonds (Unlimited Tax) Series 2005-B (the "2005-B Bonds") and General Obligation Refunding Bonds (Unlimited Tax) Series 2005-C (the "2005-C Bonds" and, collectively with the 2005-B Bonds, the "2005 Bonds"), issued pursuant to the July 6, 2005 Resolution and a sale order issued by the then finance director on December 5, 2005 (the "2005 Sale Order").

Under the terms of the Unlimited Tax Bonds and applicable Resolutions and laws, the Debtor is required to:

- levy *ad valorem* taxes for the exclusive purpose of repaying the Unlimited Tax Bonds, without limitation as to rate or amount, and in the amount necessary to repay the obligations—taxes that are separate from and in addition to other *ad valorem* taxes the City is authorized to levy (the "Unlimited Tax Levy");

- collect the proceeds of the Unlimited Tax Levy and deposit such proceeds in segregated debt retirement funds (the "Debt Retirement Funds"); and

- use the proceeds of the Unlimited Tax Levy (the "Restricted Funds") only to pay principal of and interest on the Unlimited Tax Bonds.

Claimant, under its former name Financial Security Assurance Inc., issued municipal bond insurance policies (the "Claimant Policies," true and correct copies of which are attached hereto as Exhibit A) insuring the Debtor's payment obligations under the Claimant Bonds as set forth below:

CPAM: 6059772.9

| Bond Series | Policy Number | Effective Date |
|---|---|---|
| 1999 | 25071-N | April 13, 1999 |
| 2005-B | 206130-N | December 13, 2005 |
| 2005-C | 206129-N | December 13, 2005 |

As of December 31, 2013, Claimant insures a gross par outstanding amount of $81,665,000.00 of Claimant Bonds.

According to the Claimant Policies, and subject to certain limitations, Claimant is obligated to pay the registered owners of applicable Claimant Bonds (the "Claimant Bondholders") the face amount of principal and interest on any Claimant Bond that is then due for payment, but is then unpaid by reason of nonpayment by the Debtor (all payments made by Claimant to Claimant Bondholders on account of such obligation, the "Claimant Bond Insurance Payments"). The Claimant Policies provide that upon disbursement of Claimant Bond Insurance Payments, Claimant shall be fully subrogated to all of the Claimant Bondholders' rights, title and interest under the Claimant Bonds to the extent of any Claimant Bond Insurance Payments, including, without limitation, the right to receive payment from the Debtor under the Claimant Bonds.

On October 1, 2013, the City failed to make scheduled payments under all of the Claimant Bonds. On October 1, 2013 Claimant disbursed a gross amount of Claimant Bond Insurance Payments of $2,037,867.00[1] to the Claimant Bondholders in accordance with the terms of the Claimant Policies. The next scheduled principal payments on the Claimant Bonds is April 1, 2014.

---

[1] Claimant disbursed a gross amount of $468,694.00 for the 1999 Bonds, $458,118.00 for the 2005-C Bonds, and $1,111,055.00 for the 2005-B Bonds.

CPAM: 6059772.9

Claimant's claim[2] is based on the provisions of the Resolutions, the Sale Orders, the Claimant Policies, and all other documents entered into in connection with the issuance of the Claimant Bonds, the Claimant Policies, and all related transactions (collectively, the "Claimant Bond Documents"). Claimant is informed and believes that the Debtor has copies of all or substantially all of the Claimant Bond Documents in its possession or control. However, upon written request to counsel to Claimant at the notice address shown below, Claimant will make available copies of supporting documents reasonably requested by the Debtor to the extent such documents are in Claimant's possession or control.

C.    **Amount and Nature of Claim**

    *(1)    Claimant's Secured, Fixed and Liquidated and Related Reimbursement Claims*

        (a) Claimant's Secured, Fixed and Liquidated Claim

Claimant asserts a secured, fixed and liquidated claim in the amount of $2,037,867.00 for all amounts that are due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of all Claimant Bond Insurance Payments paid on or about October 1, 2013, with interest thereon as set forth, and at the rates identified, in the Bond Documents (including default interest, as applicable) ("Interest"). Claimant reserves the right to supplement the amount of this secured, fixed and liquidated claim, to the extent that the Debtor fails to make scheduled principal payments on the Claimant Bonds on April 1, 2014.

---

[2]    As such "claim" is defined in section 101(5)(A) of the Bankruptcy Code.

CPAM: 6059772.9

Claimant asserts a secured claim.[3]  Claimant has a statutory lien within the meaning of 11 U.S.C. § 101(53) pursuant to the Debtor's binding pledge to pay the principal of and interest on the Unlimited Tax Bonds from the proceeds of the Unlimited Tax Levy.  Additionally, or in the alternative, Claimant has a lien on the Unlimited Tax Levy and Restricted Funds, which are special revenues within the meaning of 11 U.S.C. § 928, wholly dedicated to repayment of outstanding Unlimited Tax Bonds and not otherwise available to fund distributions to creditors under a plan of adjustment or for any other purpose.  Furthermore, because Chapter 141 of the Michigan Public Acts and the Claimant Bond Documents create an equitable and beneficial property interest in the Restricted Funds in favor of the Claimant Bondholders, the Debtor holds the Restricted Funds in trust for no other purpose than paying debt service on the Unlimited Tax Bonds and the Debtor cannot use the Restricted Funds for any other purpose without just compensation to the Claimant Bondholders as required by the Fifth and Fourteenth Amendments to the United States Constitution.

(b) Related Contractual Reimbursement Claim

Claimant asserts a claim for contractual reimbursement for all charges, fees, costs, losses, liabilities and expenses heretofore or hereafter incurred or paid by Claimant in connection with the Bonds and the Bond Documents, reimbursable under the Bond Documents and/or applicable

---

[3] Claimant's claim is currently listed on Debtor's schedule as "contingent" and "unsecured."  As expressly provided in the Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket No. 1782) (the "Bar Date Order"), however, the classification, priority, and treatment of claims for principal and interest under the Unlimited Tax Bonds are not affected by any provision of the Bar Date Order or by whether or not the Claimant or the Claimant Bondholders file or do not file proofs of claim.  See Bar Date Order ¶ 15.  The secured status of Claimant's claim will ultimately be determined in the adversary proceeding commenced by the Claimant against the Debtor, Nat'l Pub. Fin. Guarantee Corp. v. City of Detroit Michigan, No. 13-05309-swr (the "Adversary Proceeding").

law ("Fees and Expenses") associated with the $2,037,867.00 of Claimant Bond Insurance Payments paid by Claimant to the Claimant Bondholders paid on October 1, 2013, with Interest thereon.

(2)     *Claimant's Secured, Contingent and Unliquidated and Related Contractual Reimbursement Claims*

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or that shall become due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of any and all Claimant Bond Insurance Payments [in a principal amount of up to $81,665,000.00] with Interest; and (ii) a secured claim for contractual reimbursement for all related Fees and Expenses, with Interest thereon.

(3)     *Claimant's Claim for Unlawful Injury*

Claimant also asserts a claim for the injury caused by the Debtor's violation of both Chapter 141 of the Michigan Public Acts and Claimant Bond Documents when the Debtor failed to make scheduled payments on all of the Claimant Bonds on October 1, 2013. Claimant's injury includes, but is not limited to, the Claimant Bond Insurance Payments of $2,037,867.00 disbursed to the Claimant Bondholders in accordance with the terms of the Claimant Policies. This claim, a post-petition tort claim, may rise to the level of administrative expense as defined by 11 U.S.C. § 503(b)(1) and interpreted by the Supreme Court and the Sixth Circuit.

**D.     Reservation of Rights and/or Remedies**

Claimant is not required to assert any claims for administrative expenses at this time. Claimant reserves all rights to file a request for payment of administrative expenses in accordance with 11 U.S.C. § 503 and 11 U.S.C. § 507, including all Fees and Expenses.

CPAM: 6059772.9

Nothing contained in this Claim shall be construed as limiting any of Claimant's rights, remedies, or interests. The execution and filing of this Claim is not and shall not be deemed or construed as: (a) a waiver of any of Claimant's rights in the Adversary Proceeding, including but not limited to, obtaining a determination by the Bankruptcy Court that Claimant's claim is secured; (b) a submission by the Claimant to the jurisdiction of this Court or any other court with respect to this Claim or to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (c) a waiver of the Claimant's right to amend or supplement any claim it has filed or will file that may be based on the same or additional facts and circumstances giving rise to the claims asserted herein; (d) a waiver or release of Claimant's right to trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (e) a waiver or release of the Claimant's right to a jury trial in this Court or any other court in an proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (f) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (g) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceeding which may be commenced in these cases against or otherwise involving Claimant; (h) an election of remedies; (i) a waiver of any right to file a proof of claim under Federal Rule of Bankruptcy Procedure 3005(a); or (j) a waiver of any rights or claims of

Claimant in its capacity as holder of one or more of Claimant Bonds, if and to the extent applicable.

The terms of this paragraph shall not constitute or be deemed to constitute a waiver, on the one hand, by the Claimant of the right to allowance of its claims, the right to vote those claims in support of or against one or more plans of reorganization or liquidation, or the right to receive distributions on account of such claims, or the rights of any other party, on the other hand, to dispute such allowance, right to vote, or right to receive distributions on account of such claims.

The Claimant expressly reserves all rights, defenses and remedies that the Claimant has or may have against the Debtor or any other person or persons liable for all or part of the indebtedness claimed herein. The Claimant also reserves its right to amend and supplement this Claim and to file additional proofs of claim for any additional claims it might have.

To Claimant's knowledge, the Claim is not subject to any right of setoff, recoupment or counterclaim by the Debtor. Claimant hereby asserts and preserves any and all setoff and recoupment rights to which Claimant is entitled under 11 U.S.C. § 553 or otherwise.

**E.  Notices**

All notices and other pleadings relating to this Claim should be addressed as follows:

Assured Guaranty Municipal Corp.
31 West 52nd Street
New York, NY 10019
Attn:           Kevin J. Lyons
Telephone:   (212) 339-3546
Email:          klyons@assuredguaranty.com

Attn:           Terence L. Workman
Telephone:   (212) 408-6053
Email:          tworkman@assuredguaranty.com

with a copy to

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, N.Y. 10112
Attn:           Lawrence A. Larose, Esq.
                   Samuel S. Kohn, Esq.
Email:          llarose@chadbourne.com
                   skohn@chadbourne.com

# Exhibit A

CONFIDENTIAL INFORMATION

JApfel@chadbourne.com



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

BONDS: $39,380,000 in aggregate principal amount of General Obligation Bonds (Unlimited Tax), Series 1999-A maturing April 1 in the years 2004 through 2019, inclusive

Policy No.: 25071-N

Effective Date: April 13, 1999

Premium: $389,633.89

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013 09:37

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.          (212) 826-0100
350 Park Avenue, New York, N.Y. 10022-6022

Form 500NY (5/90)

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/20042019 09:37

**FSA**
Financial Security Assurance Inc.

April 13, 1999

Municipal Bond Insurance Policy No. 25071-N With Respect to
$39,380,000 In Aggregate Principal Amount of
City of Detroit, Michigan
General Obligation Bonds (Unlimited Tax), Series 1999-A
mauring April 1 in the years 2004 through 2019, inclusive

Ladies and Gentlemen:

I am Associate General Counsel of Financial Security Assurance Inc., a New York stock insurance company ("Financial Security"). You have requested my opinion in such capacity as to the matters set forth below in connection with the issuance by Financial Security of its above-referenced policy (the "Policy"). In that regard, and for purposes of this opinion, I have examined such corporate records, documents and proceedings as I have deemed necessary and appropriate.

Based upon the foregoing, I am of the opinion that:

1. Financial Security is a stock insurance company duly organized and validly existing under the laws of the State of New York and authorized to transact financial guaranty insurance business therein.

2. The Policy has been duly authorized, executed and delivered by Financial Security.

3. The Policy constitutes the valid and binding obligation of Financial Security, enforceable in accordance with its terms, subject, as to the enforcement of remedies, to bankruptcy, insolvency, reorganization, rehabilitation, moratorium and other similar laws affecting the enforceability of creditors' rights generally applicable in the event of the bankruptcy or insolvency of Financial Security and to the application of general principles of equity.

In addition, please be advised that I have reviewed the description of the Policy under the caption "BOND INSURANCE - Bond Insurance Policy" in the official statement relating to the above-referenced Bonds dated April 1, 1999 (the "Official Statement"). There has not come to my attention any information which would cause me to believe that the description of the Policy referred to above, as of the date of the Official Statement or as of the date of this opinion, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. Please be advised that I express no opinion with respect to any information contained in, referred to or omitted from under the caption "BOND INSURANCE - Financial Security Assurance Inc."

I am a member of the Bar of the State of New York, and do not express any opinion as to any law other than the laws of the State of New York.

Very truly yours,

Associate General Counsel

City of Detroit,
  1210 City-County Building,
  Detroit, Michigan 48226.

J.P. Morgan & Co.,
as Representative of the Underwriters,
  60 Wall Street,
  New York, New York 10260-0060.

350 Park Avenue · New York, New York 10022 · Tel: 212.826.0100 · Fax: 212.688.3101
New York · Dallas · San Francisco · London · Madrid · Paris · Singapore · Sydney

CONFIDENTIAL INFORMATION

JApfel@chadbourne.com
Detroit/28.10.2013 09.37

**DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF**
**FINANCIAL SECURITY ASSURANCE INC.**

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy No. 25071-N (the "Policy") in respect of the $39,380,000 in aggregate principal amount of City of Detroit, Michigan General Obligation Bonds (Unlimited Tax), Series 1999-A maturing April 1 in the years 2004 through 2019, inclusive (the "Bonds") that:

(i)     the information set forth under the caption "BOND INSURANCE - Financial Security Assurance Inc." in the official statement dated April 1, 1999 relating to the Bonds, together with the information in paragraph (ii) below, is true and correct,

(ii)    at December 31, 1998, Financial Security's total policyholders' surplus and contingency reserves were approximately $1,037,710,000 and its total unearned premium reserve was approximately $595,900,000 in accordance with statutory accounting principles.   At December 31, 1998, Financial Security's total shareholders' equity was approximately $1,104,591,000 and its total net unearned premium reserve was approximately $504,603,000 in accordance with generally accepted accounting principles,

(iii)   Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iv)   the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(v)    the insurance premium of $389,633.89 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(vi)   no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vii)  Financial Security is not providing any services in connection with the Bonds other than providing the Policy,  and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(viii) except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(ix)   Financial Security does not expect that a claim will be made on the Policy,

(x)    the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(xi)   for Bonds which are secured by a debt service reserve, Financial Security would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
                    Authorized Officer

Dated:   April 13, 1999

CONFIDENTIAL INFORMATION

**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

Policy No.: 206130-N

BONDS: $51,760,000 in aggregate principal amount of General Obligation Bonds (Unlimited Tax), Series 2005-B

Effective Date: December 13, 2005

Premium: $911,511.33

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013:10:38

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security, and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.          (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

[2.2.1.10] [UTGO Series 2005 B, 2005 C (Closing Memorandum).pdf] [Page 657 of 676]

CONFIDENTIAL INFORMATION
smichael@chadbourne.com
Detroit/28:10:2013 09:38

**FSA**
*A Dexia Company*

December 13, 2005

Municipal Bond Insurance Policy No. 206130-N With Respect to
$51,760,000 In Aggregate Principal Amount of
City of Detroit, Michigan
General Obligation Bonds (Unlimited Tax), Series 2005-B

Ladies and Gentlemen:

I am Associate General Counsel of Financial Security Assurance Inc., a New York stock insurance company ("Financial Security"). You have requested my opinion in such capacity as to the matters set forth below in connection with the issuance by Financial Security of its above-referenced policy (the "Policy"). In that regard, and for purposes of this opinion, I have examined such corporate records, documents and proceedings as I have deemed necessary and appropriate.

Based upon the foregoing, I am of the opinion that:

1. Financial Security is a stock insurance company duly organized and validly existing under the laws of the State of New York and authorized to transact financial guaranty insurance business therein.

2. The Policy has been duly authorized, executed and delivered by Financial Security.

3. The Policy constitutes the valid and binding obligation of Financial Security, enforceable in accordance with its terms, subject, as to the enforcement of remedies, to bankruptcy, insolvency, reorganization, rehabilitation, moratorium and other similar laws affecting the enforceability of creditors' rights generally applicable in the event of the bankruptcy or insolvency of Financial Security and to the application of general principles of equity.

In addition, please be advised that I have reviewed the description of the Policy under the caption "BOND INSURANCE – Bond Insurance Policy" in the official statement relating to the above-referenced Bonds dated December 8, 2005 (the "Official Statement"). There has not come to my attention any information which would cause me to believe that the description of the Policy referred to above, as of the date of the Official Statement or as of the date of this opinion, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. Please be advised that I express no opinion with respect to any information contained in, referred to or omitted from under the caption "BOND INSURANCE – Financial Security Assurance Inc."

I am a member of the Bar of the State of New York, and do not express any opinion as to any law other than the laws of the State of New York.

Very truly yours,

*[signature]*

Associate General Counsel

City of Detroit, Michigan,
1200 Coleman A. Young Municipal Center
2 Woodward Avenue, Finance Department,
Detroit, Michigan 48226.

JP Morgan Securities,
as Representative of the Underwriters,
131 South Dearborn, 8th floor,
Chicago, Illinois 60670-0826.

**Financial Security Assurance**
31 West 52nd Street · New York, New York 10019 · Tel: 212.826.0100 · Fax: 212.688.3101
New York · Dallas · San Francisco · London · Madrid · Paris · Singapore · Sydney · Tokyo

[2.2.1.10] [UTGO Series 2005-B, 2005-C (Closing Memorandum).pdf] [Page 658 of 676]

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28-10-2013_09:38

**DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF
FINANCIAL SECURITY ASSURANCE INC.**

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security") in connection with the issuance by Financial Security of its Policy No. 206130-N (the "Policy") in respect of the $51,760,000 in aggregate principal amount of City of Detroit, Michigan General Obligation Bonds (Unlimited Tax), Series 2005-B (the "Bonds") that:

(i)     the information set forth under the caption "BOND INSURANCE – Financial Security Assurance Inc." in the official statement dated December 8, 2005, relating to the Bonds is true and correct,

(ii)     Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii)     the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)     the insurance premium of $911,511.33 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v)     no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)     Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii)     except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii)     Financial Security does not expect that a claim will be made on the Policy,

(ix)     the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)     for Bonds which are secured by a debt service reserve, Financial Security would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
                                Authorized Officer

Dated:    December 13, 2005

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013  09:38

**NOTICE OF CLAIM AND CERTIFICATE**

Financial Security Assurance Inc.
31 West 52nd Street
New York, NY 10019

The undersigned, a duly authorized officer of [FULL NAME OF TRUSTEE or PAYING AGENT] (the "Trustee/Paying Agent"), hereby certifies to Financial Security Assurance Inc. ("Financial Security"), with reference to Municipal Bond Insurance Policy No. 206130-N dated December 13, 2005 (the "Policy") issued by Financial Security in respect of the City of Detroit, Michigan General Obligation Bonds (Unlimited Tax), Series 2005-B (the "Bonds"), that:

(i) The Trustee/Paying Agent is the Trustee/Paying Agent under the document authorizing the issuance of the Bonds ( the "Indenture") for the Holders.

(ii) The sum of all amounts on deposit (or scheduled to be on deposit) in the [RELEVANT ACCOUNTS] and available for distribution to the Holders pursuant to the Indenture will be $_____ (the "Shortfall") less than the aggregate amount of principal and interest Due for Payment on _("Scheduled Payments").

(iii) The Trustee/Paying Agent is making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv) The Trustee/Paying Agent agrees that, following receipt of funds from Financial Security, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee/Paying Agent and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to be [SURRENDERED/PRESENTED] for such payment, shall stamp on each such Bond the legend $"[insert applicable amount] paid by Financial Security and the balance hereof has been canceled and reissued" and then shall deliver such Bond to Financial Security.

(v) The Trustee/Paying Agent, on behalf of the Holders, hereby assigns to Financial Security the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to Financial Security in respect of such payments. Payments to Financial Security in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds. The Trustee/Paying Agent shall take such action and deliver such instruments as may be reasonably requested or required by Financial Security to effectuate the purpose or provisions of this clause (v).

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013 09:38

(vi)   The Trustee/Paying Agent, on its behalf and on behalf of the Holders, hereby appoints Financial Security as agent and attorney-in-fact for the Trustee/Paying Agent and each such Holder in any legal proceeding with respect to the Bonds.  The Trustee/Paying Agent hereby agrees that, so long as Financial Security shall not be in default in its payment obligations under the Policy, Financial Security may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of Financial Security but subject to reimbursement as provided in the Indenture and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, the Trustee/Paying Agent hereby agrees that Financial Security shall be subrogated to, and the Trustee/Paying Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Trustee/Paying Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)   Payment should be made by wire transfer directed to [SPECIFY INSURANCE ACCOUNT].

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Trustee/Paying Agent has executed and delivered this Notice of Claim and Certificate as of the _____ day of _____, _____.

By  _____

Title _____

_____

For Financial Security or
Fiscal Agent Use Only
Wire transfer sent on _____  By _____
Confirmation Number _____

-2-

CONFIDENTIAL INFORMATION

**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

Policy No.: 206129-N

BONDS: $30,805,000 in aggregate principal amount of General Obligation Refunding Bonds (Unlimited Tax), Series 2005-C

Effective Date: December 13, 2005

Premium: $392,483.01

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013 00:38

United States Bankruptcy Code, by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.          (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

**FSA**
*A Dexia Company*

rappel@chadbourne.com

December 13, 2005

Detroit/28:10:2013  09:38

Municipal Bond Insurance Policy No. 206129-N With Respect to

$30,805,000 In Aggregate Principal Amount of
City of Detroit, Michigan
General Obligation Refunding Bonds (Unlimited Tax), Series 2005-C

Ladies and Gentlemen:

I am Associate General Counsel of Financial Security Assurance Inc., a New York stock insurance company ("Financial Security"). You have requested my opinion in such capacity as to the matters set forth below in connection with the issuance by Financial Security of its above-referenced policy (the "Policy"). In that regard, and for purposes of this opinion, I have examined such corporate records, documents and proceedings as I have deemed necessary and appropriate.

Based upon the foregoing, I am of the opinion that:

1. Financial Security is a stock insurance company duly organized and validly existing under the laws of the State of New York and authorized to transact financial guaranty insurance business therein.

2. The Policy has been duly authorized, executed and delivered by Financial Security.

3. The Policy constitutes the valid and binding obligation of Financial Security, enforceable in accordance with its terms, subject, as to the enforcement of remedies, to bankruptcy, insolvency, reorganization, rehabilitation, moratorium and other similar laws affecting the enforceability of creditors' rights generally applicable in the event of the bankruptcy or insolvency of Financial Security and to the application of general principles of equity.

In addition, please be advised that I have reviewed the description of the Policy under the caption "BOND INSURANCE -- Bond Insurance Policy" in the official statement relating to the above-referenced Bonds dated December 8, 2005 (the "Official Statement"). There has not come to my attention any information which would cause me to believe that the description of the Policy referred to above, as of the date of the Official Statement or as of the date of this opinion, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. Please be advised that I express no opinion with respect to any information contained in, referred to or omitted from under the caption "BOND INSURANCE – Financial Security Assurance Inc."

I am a member of the Bar of the State of New York, and do not express any opinion as to any law other than the laws of the State of New York.

Very truly yours,

Associate General Counsel

CONFIDENTIAL INFORMATION
JApfel@shadbourne.com
Detroit/23-10-2012 00:28

DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF
FINANCIAL SECURITY ASSURANCE INC.

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy No. 206129-N (the "Policy") in respect of the $30,805,000 in aggregate principal amount of City of Detroit, Michigan General Obligation Refunding Bonds (Unlimited Tax), Series 2005-C (the "Bonds") that:

(i)  the information set forth under the caption "BOND INSURANCE -- Financial Security Assurance Inc." in the official statement dated December 8, 2005, relating to the Bonds is true and correct,

(ii)  Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii)  the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)  the insurance premium of $392,483.01 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v)  no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)  Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii)  except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii)  Financial Security does not expect that a claim will be made on the Policy,

(ix)  the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)  for Bonds which are secured by a debt service reserve, Financial Security would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

[2.2.1.10] [UTGO Series 2005-B, 2005-C (Closing Memorandum).pdf] [Page 665 of 676]
Dated:   December 13, 2005

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013 09:38

**NOTICE OF CLAIM AND CERTIFICATE**

Financial Security Assurance Inc.
31 West 52nd Street
New York, NY 10019

The undersigned, a duly authorized officer of [FULL NAME OF TRUSTEE or PAYING AGENT] (the "Trustee/Paying Agent"), hereby certifies to Financial Security Assurance Inc. ("Financial Security"), with reference to Municipal Bond Insurance Policy No. 206129-N dated December 13, 2005 (the "Policy") issued by Financial Security in respect of the City of Detroit, Michigan General Obligation Refunding Bonds (Unlimited Tax), Series 2005-C (the "Bonds"), that:

(i)    The Trustee/Paying Agent is the Trustee/Paying Agent under the document authorizing the issuance of the Bonds ( the "Indenture") for the Holders.

(ii)    The sum of all amounts on deposit (or scheduled to be on deposit) in the [RELEVANT ACCOUNTS] and available for distribution to the Holders pursuant to the Indenture will be $_____ (the "Shortfall") less than the aggregate amount of principal and interest Due for Payment on _("Scheduled Payments").

(iii)    The Trustee/Paying Agent is making a claim under the Policy for the Shortfall to be applied to the payment of Scheduled Payments.

(iv)    The Trustee/Paying Agent agrees that, following receipt of funds from Financial Security, it shall (a) hold such amounts in trust and apply the same directly to the payment of Scheduled Payments on the Bonds when due; (b) not apply such funds for any other purpose; (c) not commingle such funds with other funds held by the Trustee/Paying Agent and (d) maintain an accurate record of such payments with respect to each Bond and the corresponding claim on the Policy and proceeds thereof, and, if the Bond is required to be [SURRENDERED/PRESENTED] for such payment, shall stamp on each such Bond the legend $"[insert applicable amount] paid by Financial Security and the balance hereof has been canceled and reissued" and then shall deliver such Bond to Financial Security.

(v)    The Trustee/Paying Agent, on behalf of the Holders, hereby assigns to Financial Security the rights of the Holders with respect to the Bonds to the extent of any payments under the Policy, including, without limitation, any amounts due to the Holders in respect of securities law violations arising from the offer and sale of the Bonds.  The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to Financial Security in respect of such payments.  Payments to Financial Security in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all Scheduled Payments in respect of the Bonds.  The Trustee/Paying Agent shall take such action and deliver such instruments as may be reasonably requested or required by Financial Security to effectuate the purpose or provisions of this clause (v).

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com
Detroit/28:10:2013 09:38

(vi)    The Trustee/Paying Agent, on its behalf and on behalf of the Holders, hereby appoints Financial Security as agent and attorney-in-fact for the Trustee/Paying Agent and each such Holder in any legal proceeding with respect to the Bonds.  The Trustee/Paying Agent hereby agrees that, so long as Financial Security shall not be in default in its payment obligations under the Policy, Financial Security may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Bonds (a "Preference Claim"), (B) the direction of any appeal of any order relating to any Preference Claim at the expense of Financial Security but subject to reimbursement as provided in the Indenture and (C) the posting of any surety, supersedeas or performance bond pending any such appeal.  In addition, the Trustee/Paying Agent hereby agrees that Financial Security shall be subrogated to, and the Trustee/Paying Agent on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the Trustee/Paying Agent and each Holder in the conduct of any Insolvency Proceeding, including, without limitation, all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vii)    Payment should be made by wire transfer directed to [SPECIFY INSURANCE ACCOUNT].

Unless the context otherwise requires, capitalized terms used in this Notice of Claim and Certificate and not defined herein shall have the meanings provided in the Policy.

IN WITNESS WHEREOF, the Trustee/Paying Agent has executed and delivered this Notice of Claim and Certificate as of the _____ day of _____, _____.

By _____

Title_____

---

For Financial Security or
Fiscal Agent Use Only
Wire transfer sent on _____ By _____
Confirmation Number _____

-2-