**Exhibit 6A**

**Part 2**

# ORIGINAL

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT    EASTERN DISTRICT of MICHIGAN | CHAPTER 9 ~~PROOF OF CLAIM~~ |
|---|---|

| Name of Debtor: City of Detroit, Michigan | Case Number: 13-53846 |
|---|---|

RECEIVED

FEB 2 0 2014

KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Assured Guaranty Corp.

Name and address where notices should be sent:
Assured Guaranty
31 West 52nd Street
New York, NY 10019
Attn:  Kevin J. Lyons
Tel: 212-339-3545
Email: Klyons@assuredguaranty.com
Terence L. Workman
Tel: 212-408-6053
Email: Tworkman@assuredguaranty.com

with copies to:  Lawrence A. Larose
Samuel S. Kohn
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY10112
llarose@chadbourne.com
skohn@chadbourne.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:            email:

**1. Amount of Claim as of Date Case Filed:** $ __See attached Addendum__

If all or part of your claim is secured, complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Municipal Bond Insurance (Unlimited Tax General Obligation Bonds) – Insurer's Claim__    See attached Addendum
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** ___
**3a.** Debtor may have scheduled account as: _____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe:

Value of Property: $ _____

Annual Interest Rate (when case was filed) _____ %  ☐ Fixed or ☐ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$  See attached Addendum

Basis for perfection:  __See attached Addendum__

Amount of Secured Claim:  $  See attached Addendum

Amount Unsecured:  $  See attached Addendum

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**  $_____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.**  $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or in the case of a claim based upon an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruct/on #7, and the definition of "redacted" on reverse side.)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature: (See instruction #8)**
Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Holly Horn
Title:  Chief Surveillance Officer – Public Finance
Company:  Assured Guaranty Municipal Corp.
Address and telephone number (if different from notice address above):
31 West 52nd Street New York, NY 10019

(Signature) *Holly Horn*    2-18- 2014   (Date)

Telephone number: (212) 339-3526    email: hhorn@assured guaranty.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

CPAM: 6117219.7

135384614022000000000044

# CHADBOURNE
## & PARKE LLP

**David M. Bava**
(212) 408-5477
dbava@chadbourne.com


February 19, 2014


City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

> Re:  In re: City of Detroit, Michigan - Case No. 13-53846-swr
> Proofs of Claim

Ladies and Gentlemen:

I enclose herewith an original set and one copy set for a total of six (6) proofs of claim to be filed on behalf of Assured Guaranty Municipal Corp. against the above-referenced debtor.  Please file the original claims, stamp the marked copy set as evidence of filing and return them to the undersigned using the enclosed pre-addressed Federal Express airbill.

I will confirm receipt of the enclosed by contacting Joe Bunning on Thursday, February 20, 2014.

If you have any questions regarding the enclosed please feel free to contact me directly.

Thank you for your assistance with these filings.

Very truly yours,

David M. Bava
Case Manager


Enclosures


VIA OVERNIGHT DELIVERY

DMB/

cc:  Samuel S. Kohn, Esq. (without Enclosures)
   Mr. Seth Bloomfield (without Enclosures)



**Addendum to Proof of Claim**
**of Assured Guaranty Corp.**

This Addendum to Proof of Claim ("Addendum") shall be deemed to be a part of, and incorporated by reference into, the attached proof of claim (together with this Addendum and all Exhibits hereto, the "Claim") filed by Assured Guaranty Corp. (the "Claimant") against the City of Detroit, Michigan (the "Debtor"). On July 18, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), at Case No. 13-53846-swr.

**A.      Statement of Claim**

Claimant files this Claim, on its own behalf, for (1) the disbursement of insurance payments that Claimant has made on certain insurance policies issued by the Claimant to insure unlimited tax general obligation bonds issued by the Debtor; (2) all fees and expenses related to this disbursement of insurance payments; and (3) all future disbursements of insurance payments that Claimant may make in the future, and the associated fees and expenses with such future disbursements.

**B.      Basis for Claim**

In accordance with the authorizing resolutions (the "Resolutions") enacted by the City Council of Detroit (the "City Council"), the Debtor's legislative body, the Debtor issued several series of unlimited tax general obligation bonds (collectively, the "Unlimited Tax Bonds), pursuant to Chapter 141 of the Michigan Public Acts, including Act 34 of 2001, the Revised Municipal Finance Act, Michigan Compiled Laws ("MCL") § 141.2101 *et seq.* and Act 189 of 1979, the Unlimited Tax Election Act, MCL § 141.161 *et seq.* The Unlimited Tax Bonds were issued to fund public capital improvements identified by the Mayor and the City Council.

Issuance of the Unlimited Tax Bonds required approval by a majority of the votes in city-wide elections establishing a pledge of *ad valorem* taxes, as security, to repay obligations under the Unlimited Tax Bonds exclusively.

Specifically, the Debtor has issued, among others, the following series of Unlimited Tax Bonds (collectively, the "Claimant Bonds"):

- General Obligation (Unlimited Tax) Series 2008-A (the "2008-A Bonds"), issued pursuant to the November 17, 2006 Resolution and a sale order issued by the then finance director on May 30, 2008 (the "2008 Sale Order"); and

- General Obligation Refunding Bonds (Unlimited Tax) Series 2008-B(1) (the "2008-B(1) Bonds"), issued pursuant to the November 17, 2006 Resolution and 2008 Sale Order.

Under the terms of the Unlimited Tax Bonds and applicable Resolutions and laws, the Debtor is required to:

- levy *ad valorem* taxes for the exclusive purpose of repaying the Unlimited Tax Bonds, without limitation as to rate or amount, and in the amount necessary to repay the obligations—taxes that are separate from and in addition to other *ad valorem* taxes the City is authorized to levy (the "Unlimited Tax Levy");

- collect the proceeds of the Unlimited Tax Levy and deposit such proceeds in segregated debt retirement funds (the "Debt Retirement Funds"); and

- use the proceeds of the Unlimited Tax Levy (the "Restricted Funds") only to pay principal of and interest on the Unlimited Tax Bonds.

Claimant, issued municipal bond insurance policies (the "Claimant Policies," true and correct copies of which are attached hereto as Exhibit A) insuring the Debtor's payment obligations under the Claimant Bonds as set forth below:

| Bond Series | Policy Number | Effective Date |
|---|---|---|
| 2008-A Bonds | D-2008-477 | June 9, 2008 |
| 2008-B(1) Bonds | D-2008-477 | June 9, 2008 |

As of December 31, 2013, Claimant insures a gross par outstanding amount of $87,190,000.00 of Claimant Bonds.

According to the Claimant Policies, and subject to certain limitations, Claimant is obligated to pay the registered owners of applicable Claimant Bonds (the "Claimant Bondholders") the face amount of principal and interest on any Claimant Bond that is then due for payment, but is then unpaid by reason of nonpayment by the Debtor (all payments made by Claimant to Claimant Bondholders on account of such obligation, the "Claimant Bond Insurance Payments"). The Claimant Policies provide that upon disbursement of Claimant Bond Insurance Payments, Claimant shall be fully subrogated to all of the Claimant Bondholders' rights, title and interest under the Claimant Bonds to the extent of any Claimant Bond Insurance Payments, including, without limitation, the right to receive payment from the Debtor under the Claimant Bonds.

On October 1, 2013, the City failed to make scheduled payments under all of the Claimant Bonds. On October 1, 2013 Claimant disbursed a gross amount of Claimant Bond Insurance Payments of $2,163,125.00 to the Claimant Bondholders in accordance with the terms of the Claimant Policies. The next scheduled principal payments on the Claimant Bonds is April 1, 2014.

Claimant's claim[1] is based on the provisions of the Resolutions, the Sale Orders, the Claimant Policies, and all other documents entered into in connection with the issuance of the Claimant Bonds, the Claimant Policies, and all related transactions (collectively, the "Claimant Bond Documents"). Claimant is informed and believes that the Debtor has copies of all or substantially all of the Claimant Bond Documents in its possession or control. However, upon

---

[1]   As such "claim" is defined in section 101(5)(A) of the Bankruptcy Code.

written request to counsel to Claimant at the notice address shown below, Claimant will make available copies of supporting documents reasonably requested by the Debtor to the extent such documents are in Claimant's possession or control.

## C.    Amount and Nature of Claim

### (1)    Claimant's Secured, Fixed and Liquidated and Related Contractual Reimbursement Claims

(a) Claimant's Secured, Fixed and Liquidated Claim

Claimant asserts a secured, fixed and liquidated claim in the amount of $2,163,125.00 for all amounts that are due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of all Claimant Bond Insurance Payments paid on or about October 1, 2013, with interest thereon as set forth, and at the rates identified, in the Bond Documents (including default interest, as applicable) ("Interest"). Claimant reserves the right to supplement the amount of this secured, fixed and liquidated claim, to the extent that the Debtor fails to make scheduled principal payments on the Claimant Bonds on April 1, 2014.

Claimant asserts a secured claim.[2] Claimant has a statutory lien within the meaning of 11 U.S.C. § 101(53) pursuant to the Debtor's binding pledge to pay the principal of and interest on

---

[2]    Claimant's claim is currently listed on Debtor's schedule as "contingent" and "unsecured." As expressly provided in the Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket No. 1782) (the "Bar Date Order"), however, the classification, priority, and treatment of claims for principal and interest under the Unlimited Tax Bonds are not affected by any provision of the Bar Date Order or by whether or not the Claimant or the Claimant Bondholders file or do not file proofs of claim. See Bar Date Order ¶ 15. The secured status of Claimant's claim will ultimately be determined in the adversary proceeding commenced by the Claimant against the Debtor, Nat'l Pub. Fin. Guarantee Corp. v. City of Detroit Michigan, No. 13-05309-swr (the "Adversary Proceeding").

the Unlimited Tax Bonds from the proceeds of the Unlimited Tax Levy. Additionally, or in the alternative, Claimant has a lien on the Unlimited Tax Levy and Restricted Funds, which are special revenues within the meaning of 11 U.S.C. § 928, wholly dedicated to repayment of outstanding Unlimited Tax Bonds and not otherwise available to fund distributions to creditors under a plan of adjustment or for any other purpose. Furthermore, because Chapter 141 of the Michigan Public Acts and the Claimant Bond Documents create an equitable and beneficial property interest in the Restricted Funds in favor of the Claimant Bondholders, the Debtor holds the Restricted Funds in trust for no other purpose than paying debt service on the Unlimited Tax Bonds and the Debtor cannot use the Restricted Funds for any other purpose without just compensation to the Claimant Bondholders as required by the Fifth and Fourteenth Amendments to the United States Constitution.

(b) Related Contractual Reimbursement Claim

Claimant asserts a claim for contractual reimbursement for all charges, fees, costs, losses, liabilities and expenses heretofore or hereafter incurred or paid by Claimant in connection with the Bonds and the Bond Documents, reimbursable under the Bond Documents and/or applicable law ("Fees and Expenses") associated with the $2,163,125.00 of Claimant Bond Insurance Payments paid by Claimant to the Claimant Bondholders paid on October 1, 2013, with Interest thereon.

(2)  *Claimant's Secured, Contingent and Unliquidated and Related Contractual Reimbursement Claims*

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of any and all Claimant Bond Insurance Payments [in a principal

amount of up to $87,190,000.00] with Interest thereon; and (ii) a secured claim for contractual reimbursement for all related Fees and Expenses, with Interest thereon.

(3)     *Claimant's Claim for Unlawful Injury*

Claimant also asserts a claim for the injury caused by the Debtor's violation of both Chapter 141 of the Michigan Public Acts and Claimant Bond Documents when the Debtor failed to make scheduled payments on all of the Claimant Bonds on October 1, 2013. Claimant's injury includes, but is not limited to, the Claimant Bond Insurance Payments of $2,163,125.00 disbursed to the Claimant Bondholders in accordance with the terms of the Claimant Policies. This claim, a post-petition tort claim, may rise to the level of administrative expense as defined by 11 U.S.C. § 503(b)(1) and interpreted by the Supreme Court and the Sixth Circuit.

**D.     Reservation of Rights and/or Remedies**

Claimant is not required to assert any claims for administrative expenses at this time. Claimant reserves all rights to file a request for payment of administrative expenses in accordance with 11 U.S.C. § 503 and 11 U.S.C. § 507, including all Fees and Expenses.

Nothing contained in this Claim shall be construed as limiting any of Claimant's rights, remedies, or interests. The execution and filing of this Claim is not and shall not be deemed or construed as: (a) a waiver of any of Claimant's rights in the Adversary Proceeding, including but not limited to, obtaining a determination by the Bankruptcy Court that Claimant's claim is secured; (b) a submission by the Claimant to the jurisdiction of this Court or any other court with respect to this Claim or to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (c) a waiver of the Claimant's right to amend or supplement any claim it has filed or will file that may be based on the same or additional facts and circumstances giving rise to the claims asserted herein; (d) a waiver or release of Claimant's right to trial by jury in

CPAM: 6117219.10

any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (e) a waiver or release of the Claimant's right to a jury trial in this Court or any other court in an proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (f) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (g) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceeding which may be commenced in these cases against or otherwise involving Claimant; (h) an election of remedies; (i) a waiver of any right to file a proof of claim under Federal Rule of Bankruptcy Procedure 3005(a); or (j) a waiver of any rights or claims of Claimant in its capacity as holder of one or more of Claimant Bonds, if and to the extent applicable.

The terms of this paragraph shall not constitute or be deemed to constitute a waiver, on the one hand, by the Claimant of the right to allowance of its claims, the right to vote those claims in support of or against one or more plans of reorganization or liquidation, or the right to receive distributions on account of such claims, or the rights of any other party, on the other hand, to dispute such allowance, right to vote, or right to receive distributions on account of such claims.

The Claimant expressly reserves all rights, defenses and remedies that the Claimant has or may have against the Debtor or any other person or persons liable for all or part of the

indebtedness claimed herein.  The Claimant also reserves its right to amend and supplement this Claim and to file additional proofs of claim for any additional claims it might have.

To Claimant's knowledge, the Claim is not subject to any right of setoff, recoupment or counterclaim by the Debtor.  Claimant hereby asserts and preserves any and all setoff and recoupment rights to which Claimant is entitled under 11 U.S.C. § 553 or otherwise.

## E.    Notices

All notices and other pleadings relating to this Claim should be addressed as follows:

Assured Guaranty
31 West 52nd Street
New York, NY 10019
Attn:          Kevin J. Lyons
Telephone:     (212) 339-3546
Email:         klyons@assuredguaranty.com

Attn:          Terence L. Workman
Telephone:     (212) 408-6053
Email:         tworkman@assuredguaranty.com

with a copy to

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, N.Y. 10112
Attn:          Lawrence A. Larose, Esq.
               Samuel S. Kohn, Esq.
Email:         llarose@chadbourne.com
               skohn@chadbourne.com

# Exhibit A

CONFIDENTIAL INFORMATION

el@chadbourne.com

Detroit/28-10-2013  09:43

**ASSURED GUARANTY**

ENDURING FINANCIAL STRENGTH™
AAA S&P • Aaa Moody's • AAA Fitch

**Financial Guaranty Insurance Policy**

| | | | |
|---|---|---|---|
| **Issuer:** | City of Detroit Michigan | **Policy No.:** | D-2008-477 |
| **Obligations:** | $130,205,000  General Obligation Bonds, consisting of $58,630,000 General Obligation Bonds (Unlimited Tax), Series 2008-A, $66,475,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(1) and $5,100,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(2) (Taxable) | **Premium:** | $1,119,394.90 |
| | | **Effective Date:** | June 9, 2008 |

Assured Guaranty Corp., a Maryland corporation ("**Assured Guaranty**"), in consideration of the payment of the Premium and on the terms and subject to the conditions of this Policy (which includes each endorsement hereto), hereby unconditionally and irrevocably agrees to pay to the trustee (the "**Trustee**") or the paying agent (the "**Paying Agent**") for the Obligations (as set forth in the documentation providing for the issuance of and securing the Obligations) for the benefit of the Holders, that portion of the Insured Payments which shall become Due for Payment but shall be unpaid by reason of Nonpayment.

Assured Guaranty will make such Insured Payments to the Trustee or the Paying Agent on the later to occur of (i) the date applicable principal or interest becomes Due for Payment, or (ii) the Business Day next following the day on which Assured Guaranty shall have Received a completed Notice of Nonpayment. If a Notice of Nonpayment by Assured Guaranty is incomplete or does not in any instance conform to the terms and conditions of this Policy, it shall be deemed not Received, and Assured Guaranty shall promptly give notice to the Trustee or the Paying Agent. Upon receipt of such notice, the Trustee or the Paying Agent may submit an amended Notice of Nonpayment. The Trustee or the Paying Agent will disburse the Insured Payments to the Holders only upon receipt by the Trustee or the Paying Agent, in form reasonably satisfactory to it of (i) evidence of the Holder's right to receive such payments, and (ii) evidence, including without limitation any appropriate instruments of assignment, that all of the Holder's rights to payment of such principal or interest Due for Payment shall thereupon vest in Assured Guaranty. Upon and to the extent of such disbursement, Assured Guaranty shall become the Holder of the Obligations, any appurtenant coupon thereto and right to receipt of payment of principal thereof or interest thereon, and shall be fully subrogated to all of the Holder's right, title and interest thereunder, including without limitation the right to receive payments in respect of the Obligations. Payment by Assured Guaranty to the Trustee or the Paying Agent for the benefit of the Holders shall discharge the obligation of Assured Guaranty under this Policy to the extent of such payment.

This Policy is non-cancelable by Assured Guaranty for any reason. The Premium on this Policy is not refundable for any reason. This Policy does not insure against loss of any prepayment premium or other acceleration payment which at any time may become due in respect of any Obligation, other than at the sole option of Assured Guaranty, nor against any risk other than Nonpayment.

Except to the extent expressly modified by any endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "**Avoided Payment**" means any amount previously distributed to a Holder in respect of any Insured Payment by or on behalf of the Issuer, which amount has been recovered from such Holder pursuant to the United States Bankruptcy Code in accordance with a final, nonappealable order of a court having competent jurisdiction that such payment constitutes an avoidable preference with respect to such Holder. "**Business Day**" means any day other than (i) a Saturday or Sunday, (ii) any day on which the offices of the Trustee, the Paying Agent or Assured Guaranty are closed, or (iii) any day on which banking institutions are authorized or required by law, executive order or governmental decree to be closed in the City of New York or in the State of Maryland. "**Due for Payment**" means (i) when referring to the principal of an Obligation, the stated maturity date thereof, or the date on which such Obligation shall have been duly called for mandatory sinking fund redemption, and does not refer to any earlier date on which payment is due by reason of a call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity (unless Assured Guaranty in its sole discretion elects to make any principal payment, in whole or in part, on such earlier date) and (ii) when referring to interest on an Obligation, the stated date for payment of such interest. "**Holder**" means, in respect of any Obligation, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Obligation to payment of principal or interest thereunder, except that Holder shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Obligations. "**Insured Payments**" means that portion of the principal of and interest on the Obligations that shall become Due for Payment but shall be unpaid by reason of Nonpayment. Insured Payments shall not include any additional amounts owing by the Issuer solely as a result of the failure by the Trustee or the Paying Agent to pay such amount when due and payable, including without limitation any such additional amounts as may be attributable to penalties or to interest accruing at a default rate, to amounts payable in respect of indemnification, or to any other additional amounts payable by the Trustee or the Paying Agent by reason of such failure. "**Nonpayment**" means, in respect of an Obligation, the failure of the Issuer to have provided sufficient funds to the Trustee or the Paying Agent for payment in full of all principal and interest Due for Payment on such Obligation. It is further understood that the term "Nonpayment" in respect of an

**Assured Guaranty Corp.**

| | | |
|---|---|---|
| 1325 Avenue of the Americas New York, NY 10019 | main   212 974 0100 info@assuredguaranty.com fax     212 581 3268 | www.assuredguaranty.com |

[2.2.1.12] [UTGO Series 2008-A, 2008-B(1), 2008-B(2) (Closing Memorandum).pdf] [Page 724 of 740]

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com

Obligation includes any Avoided Payment. "Receipt" or "Received" means actual receipt or notice of or, if notice is given by overnight or other delivery service, or by certified or registered United States mail, by a delivery receipt signed by a person authorized to accept delivery on behalf of the person to whom the notice was given. Notices to Assured Guaranty may be mailed by registered mail or personally delivered or telecopied to it at 1325 Avenue of the Americas, New York, New York 10019, Telephone Number: (212) 974-0100, Facsimile Number: (212) 581-3268, Attention: Risk Management Department – Public Finance Surveillance, with a copy to the General Counsel, or to such other address as shall be specified by Assured Guaranty to the Trustee or the Paying Agent in writing. A Notice of Nonpayment will be deemed to be Received by Assured Guaranty on a given Business Day if it is Received prior to 12:00 noon (New York City time) on such Business Day; otherwise it will be deemed Received on the next Business Day. "Term" means the period from and including the Effective Date until the earlier of (i) the maturity date for the Obligations, or (ii) the date on which the Issuer has made all payments required to be made on the Obligations.

At any time during the Term of this Policy, Assured Guaranty may appoint a fiscal agent (the "Fiscal Agent") for purposes of this Policy by written notice to the Trustee or the Paying Agent, specifying the name and notice address of such Fiscal Agent. From and after the date of Receipt of such notice by the Trustee or the Paying Agent, copies of all notices and documents required to be delivered to Assured Guaranty pursuant to this Policy shall be delivered simultaneously to the Fiscal Agent and to Assured Guaranty. All payments required to be made by Assured Guaranty under this Policy may be made directly by Assured Guaranty or by the Fiscal Agent on behalf of Assured Guaranty. The Fiscal Agent is the agent of Assured Guaranty only, and the Fiscal Agent shall in no event be liable to the Trustee or the Paying Agent for any acts of the Fiscal Agent or any failure of Assured Guaranty to deposit, or cause to be deposited, sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Assured Guaranty hereby waives, in each case for the benefit of the Holders only, all rights and defenses of any kind (including, without limitation, the defense of fraud in the inducement or in fact or any other circumstance that would have the effect of discharging a surety, guarantor or any other person in law or in equity) that may be available to Assured Guaranty to deny or avoid payment of its obligations under this Policy in accordance with the express provisions hereof. Nothing in this paragraph will be construed (i) to waive, limit or otherwise impair, and Assured Guaranty expressly reserves, Assured Guaranty's rights and remedies, including, without limitation: its right to assert any claim or to pursue recoveries (based on contractual rights, securities law violations, fraud or other causes of action) against any person or entity, in each case, whether directly or acquired as a subrogee, assignee or otherwise, subsequent to making any payment to the Trustee or the Paying Agent, in accordance with the express provisions hereof, and/or (ii) to require payment by Assured Guaranty of any amounts that have been previously paid or that are not otherwise due in accordance with the express provisions of this Policy.

This Policy (which includes each endorsement hereto) sets forth in full the undertaking of Assured Guaranty with respect to the subject matter hereof, and may not be modified, altered or affected by any other agreement or instrument, including, without limitation, any modification thereto or amendment thereof. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW. This Policy will be governed by, and shall be construed in accordance with, the laws of the State of New York.

IN WITNESS WHEREOF, Assured Guaranty has caused this Policy to be affixed with its corporate seal, to be signed by its duly authorized officer, and to become effective and binding upon Assured Guaranty by virtue of such signature.



ASSURED GUARANTY CORP.

By: _____
Gordon Murray
Director

Signature attested to by:

_____
Counsel

[2.2.1.12] [UTGO Series 2008-A, 2008-B(1), 2008-B(2) (Closing Memorandum).pdf] [Page 725 of 740]

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com

**NOTICE OF NONPAYMENT**

Assured Guaranty Corp.
1325 Avenue of the Americas
New York, New York 10019
Attention: Risk Management Department - Public Finance Surveillance and General Counsel

The undersigned, (a duly authorized officer of [TRUSTEE][PAYING AGENT]] (the "Trustee" or the "Paying Agent"), hereby certifies to Assured Guaranty Corp. ("Assured Guaranty") with reference to Financial Guaranty Insurance Policy No. _____ (the "Policy"), that:

(i) The deficiency with respect to the Insured Payment that is Due for Payment and unpaid by reason of Nonpayment on [insert applicable payment date] is $[insert applicable amount] (the "Deficiency Amount").

(ii) The [Trustee][Paying Agent] is making a claim under the Policy for the Deficiency Amount.

(iii) The [Trustee][Paying Agent] agrees that, following payment by Assured Guaranty made with respect to the Deficiency Amount which is the subject of this Notice of Nonpayment, it will (a) cause such amounts to be applied directly to the payment of the applicable Insured Payment; (b) insure that such funds are not applied for any other purpose; and (c) cause an accurate record of such payment to be maintained with respect to the appropriate Insured Payment(s), the corresponding claim on the Policy, and the proceeds of such claim.

(iv) The [Trustee][Paying Agent], on behalf of the Holders, hereby assigns to Assured Guaranty all rights of the [Trustee][Paying Agent] and the Holders with respect to the Obligations to the extent of any payments under the Policy, including without limitation any amounts due to the Holders in respect of securities law violations arising from the offer and/or sale of the Obligations; provided, that payments to Assured Guaranty in respect of the foregoing assignment shall in all cases be subject to and subordinate to the rights of the Holders to receive all payments in respect of the Obligations. The foregoing assignment is in addition to, and not in limitation of, rights of subrogation otherwise available to Assured Guaranty in respect of such payments. The [Trustee][Paying Agent][Holder] shall take such action and deliver such instruments as may be reasonably requested or required by Assured Guaranty to effectuate the purpose or provisions of this paragraph (iv).

(v) The [Trustee][Paying Agent], on its behalf and on behalf of the Holders, hereby appoints Assured Guaranty as agent and attorney-in-fact for the [Trustee][Paying Agent] and each such Holder in any legal proceeding with respect to the Obligations. The [Trustee][Paying Agent] hereby agrees that, so long as Assured Guaranty shall not be in default in its payment obligations under the Policy, Assured Guaranty may at any time during the continuation of any proceeding by or against the Issuer under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding") direct all matters relating to such Insolvency Proceeding, including, without limitation, (A) all matters relating to any claim in connection with an Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment made with respect to the Obligations (a "Preference Amount"), (B) the direction of any appeal of any order relating to any Preference Amount at the expense of Assured Guaranty but subject to reimbursement as provided in the documentation providing for the issuance of and securing the Obligations, if any, and (C) the posting of any surety, supersedeas or performance bond pending any appeal. In addition, the [Trustee][Paying Agent] hereby agrees that Assured Guaranty shall be fully subrogated to, and the [Trustee][Paying Agent] on its behalf and on behalf of each Holder, hereby delegates and assigns, to the fullest extent permitted by law, the rights of the [Trustee][Paying Agent] and each Holder in the conduct of any Insolvency Proceeding, including without limitation all rights of any party to an adversary proceeding or action with respect to any court order issued in connection with any such Insolvency Proceeding.

(vi) Payment should be made by credit to the following account:

_____

_____

Capitalized terms used in this Notice of Nonpayment and not otherwise defined herein shall have the respective meanings ascribed thereto in the Policy.

This Notice of Nonpayment may be revoked at any time by written notice of such revocation by the [Trustee][Paying Agent][Holder] to the Assured Guaranty.

*ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Notice of Nonpayment as of the __ day of _____ of _____.

[TRUSTEE/PAYING AGENT]

By:_____
Name:
Title:

CONFIDENTIAL INFORMATION
el@chadbourne.com
Detroit/28:10:2013 09.43

June 9, 2008

To the Addressees listed on Annex A hereto

Re: Financial Guaranty Insurance Policy No. D-2008-477 (the "Policy") relating to $130,205,000 City of Detroit, Michigan General Obligation Bonds, consisting of $58,630,000 General Obligation Bonds (Unlimited Tax), Series 2008-A, $66,475,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(1) and $5,100,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(2) (Taxable)

Ladies and Gentlemen:

This opinion letter has been requested of the undersigned, in the capacity of the undersigned as a Director, Counsel of Assured Guaranty Corp., a Maryland corporation ("Assured Guaranty"), in connection with the issuance by Assured Guaranty of its Policy, effective as of the date hereof.

In connection with this opinion letter, I have examined an execution copy of the Policy and such documents, certificates, agreements and instruments and proceedings as I have considered necessary or appropriate under the circumstances to render the following opinion letter. As to all questions of fact material to this opinion letter, which have not been independently established by me, I have relied upon certificates or comparable documents of public officials or of officers and representatives of Assured Guaranty. In addition, I have assumed the genuineness of all signatures other than those of representatives of Assured Guaranty, the authenticity of all documents submitted to me as originals, the conformity to the original document of certified or photostatic copies thereof and the authenticity of the originals of such latter documents.

Based upon the foregoing, and subject to the limitations and qualifications hereinafter set forth, I am of the opinion that:

1. Assured Guaranty is a corporation duly incorporated and validly existing under the laws of the State of Maryland and has all requisite corporate power and authority to issue and to perform its obligations under the Policy in accordance with the terms thereof.

2. The execution and delivery by Assured Guaranty of the Policy, and the performance by Assured Guaranty of its obligations thereunder, have been duly authorized by all necessary corporate action on the part of Assured Guaranty.

3. The Policy has been validly executed and delivered by Assured Guaranty, and constitutes the legal, valid and binding obligation of Assured Guaranty, enforceable against Assured Guaranty in accordance with its terms, subject to applicable bankruptcy, reorganization, insolvency, liquidation, rehabilitation, moratorium, arrangement, fraudulent conveyance or similar laws or enactments now or hereafter enacted affecting the enforcement of creditors' rights generally, as well as to equitable principles of general application limiting the availability of equitable remedies and the discretion of the court before which any proceeding therefor may be brought (regardless, in each case, of whether enforcement is sought in a proceeding in equity or at law).

I am licensed to practice law in the State of New York, and do not purport to be an expert as to, or to express any opinion concerning the laws of any other jurisdiction other than the laws of the State of New York and the federal laws of the United States of America to the extent specifically referred to herein. To the extent that the opinions set forth herein purport to deal with matters of Maryland law, the statements made therein are based solely upon my review of the corporate documents of Assured Guaranty, my reading of the Maryland General Corporation Law and, in respect of the opinion set forth in paragraph (1) above, my reading of the Maryland Insurance Code.

**Assured Guaranty Corp.**

| 1325 Avenue of the Americas New York, NY 10019 | main fax | 212 974 0100 212 581 3268 | info@assuredguaranty.com | www.assuredguaranty.com |
|---|---|---|---|---|

CONFIDENTIAL INFORMATION

The opinions expressed herein are limited to the matters expressly set forth herein, and no opinion is implied or may be inferred beyond the matters expressly set forth herein. The opinions expressed herein are based solely on factual matters in existence as of the date hereof and laws and regulations in effect on the date hereof. I assume no obligation to revise or supplement this opinion letter should such factual matters change or should such laws or regulations be changed by legislative or regulatory action, judicial decision or otherwise, and I hereby express no opinion as to the effect any such changes may have on the foregoing opinions.

This opinion letter is being delivered to you solely for your benefit in connection with the issuance of the Policy, and may not be used, circulated, quoted or otherwise referred to or relied upon for any other purpose by any other person, in each case without my express prior written consent.

Very truly yours,

2

CONFIDENTIAL INFORMATION
JApfel@chadbourne.com

Annex A

City of Detroit, Michigan, as Issuer
Merrill Lynch & Co., as Senior Managing Underwriter
U.S. Bank National Association, as Trustee/Paying Agent

CONFIDENTIAL INFORMATION

JApfel@chadbourne.com

## CERTIFICATE OF ASSURED GUARANTY CORP.

In connection with the issuance of $130,205,000 City of Detroit, Michigan General Obligation Bonds, consisting of $58,630,000 General Obligation Bonds (Unlimited Tax), Series 2008-A, $66,475,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(1) and $5,100,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(2) (Taxable) (collectively, the "Bonds") by City of Detroit, Michigan (the "Issuer"), Assured Guaranty Corp. ("Assured Guaranty") is issuing financial guaranty insurance policy no. D-2008-477 (the "Policy") guaranteeing, when due, the scheduled payment of principal of and interest on the Bonds, all as set forth in the Policy.

On behalf of Assured Guaranty, the undersigned hereby certifies that:

(i)     the Policy is an unconditional and recourse obligation of Assured Guaranty (enforceable on behalf of the holders of the Bonds) to pay the scheduled payments of interest and principal on the Bonds in the event of a Nonpayment (as defined in the Policy);

(ii)    the insurance premium of $1,119,394.90 was determined in an arm's length negotiation in accordance with our standard procedure, and is required to be paid as a condition of the issuance of the Policy;

(iii)   no portion of such premium represents a payment for any direct or indirect services other than the transfer of credit risk;

(iv)    Assured Guaranty is not a co-obligor on the Bonds and does not reasonably expect that it will be called upon to make any payment under the Policy;

(v)     the Issuer is not entitled to a refund of premium for the Policy in the event that the Bonds are retired prior to their stated maturity;

(vi)    there has not come to the attention of the undersigned any information which would cause the undersigned to believe that the description of Assured Guaranty under the caption "BOND INSURANCE-The Insurer" in the official statement relating to the above referenced Bonds dated May 30, 2008 (the "Official Statement"), as of the date of the Official Statement or as of the date of this certificate, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading;

(vii)   Assured Guaranty is not currently in default nor has Assured Guaranty ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation; and

(viii)  except for the insurance premium referred to in paragraph (ii) above, neither Assured Guaranty nor any party related to Assured Guaranty within the meaning of Section 1.150-1(b) of the Treasury Regulations will use any portion of the proceeds of the Bonds.

IN WITNESS WHEREOF, Assured Guaranty has caused this certificate to be executed in its name on this 9th day of June, 2008, by one of its duly authorized officers.

ASSURED GUARANTY CORP.

By: _____
Gordon Murray
Director

CONFIDENTIAL INFORMATION

JApfel@shearmourne.com

Detroit/28.10.2013 09:43

**ASSURED GUARANTY CORP.**
**PREMIUM WIRING INSTRUCTIONS**

PAYMENT DATE:                    *Date of delivery of the insured obligations*

METHOD OF PAYMENT                *Wire transfer of Federal Funds*

PREMIUM DUE:            $1,119,394.90

Premium Payment Instructions for Assured Guaranty Corp.:

Bank: JP Morgan Chase New York
ABA# 021-000-021
Account Name: Assured Guaranty Corp. - Premium
Account Number: 323-355919
Policy Number D-2008-477
Reference Name: $130,205,000 City of Detroit, Michigan General Obligation Bonds, consisting of $58,630,000 General Obligation Bonds (Unlimited Tax), Series 2008-A, $66,475,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(1) and $5,100,000 General Obligation Refunding Bonds (Unlimited Tax), Series 2008-B(2) (Taxable)

If you have any questions, please contact the Closing Coordinator at Assured Guaranty Corp.

Confirmation of Receipt of Premium

Please provide Assured Guaranty Corp. Attention: Closing Coordinator, with a wire reference number when such premium is sent. Upon confirmation of the premium payment and satisfaction of all other conditions set forth in the commitment letter, Assured Guaranty will release the Policy.