## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | : Chapter 9 |
|  | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13–53846 |
|  | : |
| Debtor. | : Hon. Steven W. Rhodes |
|  | : |

## ASSURED GUARANTY MUNICIPAL CORP. NOTICE OF
## ASSERTED RIGHT TO VOTE CERTAIN CLAIMS IN CLASS 1A

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc., ("Assured"), by and through its undersigned attorneys, and pursuant to ¶ 9.a of the Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment [Doc. No. 2984] (the "Solicitation Procedures Order"),[1] respectfully submits this Notice of Asserted Right to Vote Certain Claims in Class 1A (the "Voting Notice"), and in support hereof, states as follows:

---

[1] As amended by the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 4202].

Assured asserts that it is entitled to vote and make the DWSD Election for certain Class 1A claims arising from each of following series of DWSD Bonds[2] which Assured insures (the "Assured DWSD Bonds"): Sewage Disposal System Senior Lien Revenue Refunding Bonds (Variable Rate Demand) Series 2001(C-1), Sewage Disposal System Senior Lien Revenue and Refunding Bonds Series 2003(A), Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand) Series 2003(B), Sewage Disposal System Senior Lien Revenue Refunding Bonds Series 2004(A), Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes) Series 2006(D), Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds Series 2012(A), Water Supply System Revenue Senior Lien Bonds Series 2006(A), Water Supply System Revenue Second Lien Bonds (Variable Rate Demand) Series 2006(B), Water Supply System Revenue Refunding Second Lien Bond Series 2006(C), and Water Supply System Revenue Refunding Senior Lien Bond Series 2006(D). Accordingly, Assured asserts the right to vote the following classes: Classes 1A-125 through 1A-135, Classes 1A-142 through 1A-145, Classes 1A-148 through 1A-152, Classes 1A-160 through 1A-164, Classes 1A-227 through 1A-

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Brief of Assured Guaranty Municipal Corp. in Support of Notice of Asserted Right to Vote Certain Claims in Class 1A.

2

231, Class 1A-263, Class 1A-265, Class 1A-266, Class 1A-270, Classes 1A-272 through 1A-277, Class 1A-321, and Class 1A-322.

As set forth more fully in the brief in support of this Voting Notice, attached hereto as Exhibit 3, Assured has the right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because (i) the beneficial holders of Assured DWSD Bonds have surrendered all voting and decision-making authority to Assured under the applicable bond documents; (ii) transfers of voting rights are enforceable in bankruptcy even under less compelling circumstances than here; and (iii) Assured is fully subrogated to the rights of the beneficial holders of the Assured DWSD Bonds.

Therefore, Assured seeks an order, substantially in the form attached hereto as Exhibit 1: (i) granting Assured the exclusive right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds; (ii) disallowing any vote cast by any party other than Assured with respect to any claim arising from the Assured DWSD Bonds; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 23, 2014

**CHADBOURNE & PARKE LLP**

By:  _/s/  Lawrence A. Larose_____
Lawrence A. Larose
Samuel S. Kohn
Robert J. Gayda
Eric Daucher
30 Rockefeller Plaza
New York, NY 10112
Telephone:  (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
rgayda@chadbourne.com
edaucher@chadbourne.com

*Attorneys for Assured Guaranty*
*Municipal Corp.*

4

## EXHIBITS

**Exhibit 1**          Proposed Order

**Exhibit 2**          Notice

**Exhibit 3**          Brief in Support

**Exhibit 4**          Certificate of Service

**Exhibit 5**          Affidavits [None]

**Exhibit 6A**         Assured Sewer Proof of Claim

**Exhibit 6B**         Assured Insurer Protections

**Exhibit 6C**         Assured Water Proof of Claim

**Exhibit 6D**         Impaired Assured-Insured DWSD Bonds Under Fourth
                       Amended Plan of Adjustment

**Exhibit 6E**         2012(A) Sewer Bond Specimen

**Exhibit 1**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | : Chapter 9 |
| | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13–53846 |
| | : |
| Debtor. | : Hon. Steven W. Rhodes |
| | : |

**ORDER AUTHORIZING**
**ASSURED GUARANTY MUNICIPAL CORP.**
**TO VOTE CERTAIN CLAIMS IN CLASS 1A**

This matter coming before the Court on the Assured Guaranty Municipal Corp. Notice of Asserted Right to Vote Certain Claims in Class 1A (the "Voting Notice"), filed by Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc., ("Assured"); and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1.     Assured is the sole party authorized to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds,[1] as set forth in the Voting Notice.

---

[1]    Capitalized terms not otherwise defined herein shall have the meaning given to them in the Brief of Assured Guaranty Municipal Corp. in Support of Notice of Asserted Right to Vote Certain Claims in Class 1A.

2. The City shall disregard all votes submitted on any claim arising from the Assured DWSD Bonds by any party other than Assured.

8

**Exhibit 2**

**Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## NOTICE AND OPPORTUNITY TO OBJECT

**PLEASE TAKE NOTICE**, that Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), has filed papers with the Court asserting the right to vote and make the DWSD Election[1] with respect to all claims classified in the following classes by the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (May 5, 2014) [Docket No. 4392]: Classes 1A-125 through 1A-135, Classes 1A-142 through 1A-145, Classes 1A-148 through 1A-152, Classes 1A-160 through 1A-164, Classes 1A-227 through 1A-231, Class 1A-263, Class 1A-265, Class 1A-266, Class 1A-270, Classes 1A-272 through 1A-277, Class 1A-321, and Class 1A-322.

Assured has filed this notice in accordance with the voting dispute resolution procedures established by the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] and as modified by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Docket No. 4202].

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in this notice, or if you want the court to consider your views on the notice, by **June 24, 2014** you or your attorney must:

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning given to them in the Brief of Assured Guaranty Municipal Corp. in Support of Notice of Asserted Right to Vote Certain Claims in Class 1A.

1.        File with the court a written response or an answer, explaining your position at:[2]

**United States Bankruptcy Court**
211 W. Fort Street, Suite 2100
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.   All attorneys are required to file pleadings electronically.

You must also mail a copy to:

Lawrence A. Larose
Samuel S. Kohn
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112

2.        If a response or answer is timely filed and served, Assured will be permitted to file a reply brief in support of the notice by **July 2, 2014** and a hearing will be held on **July 14, 2014 at 10:00 a.m.**

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the notice and may enter an order granting that relief.**

---

[2]    Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

2

Dated:   New York, New York
         May 23, 2014                     **CHADBOURNE & PARKE LLP**

                                      By:   /s/  Lawrence A. Larose
                                      Lawrence A. Larose
                                      Samuel S. Kohn
                                      Robert J. Gayda
                                      Eric Daucher
                                      30 Rockefeller Plaza
                                      New York, NY 10112
                                      Telephone:  (212) 408-5100
                                      llarose@chadbourne.com
                                      skohn@chadbourne.com
                                      rgayda@chadbourne.com
                                      edaucher@chadbourne.com

                                      *Attorneys for Assured Guaranty*
                                      *Municipal Corp.*

3

**Exhibit 3**

**Brief**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## BRIEF OF ASSURED GUARANTY MUNICIPAL CORP.
## IN SUPPORT OF NOTICE OF
## ASSERTED RIGHT TO VOTE CERTAIN CLAIMS IN CLASS 1A

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured")[1] a creditor and party in interest in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"), hereby files the following brief (the "Brief") in support of the *Notice of Assured Guaranty Municipal Corp.'s Right to Vote a Claim* (the "Notice") in accordance with the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] (the "Solicitation Procedures Order"), as amended by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of*

---

[1] Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.24 billion in gross aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and unlimited tax general obligation bonds.

*Adjustment* [Docket No. 4202] (the "Fourth Amended Procedures Order").[2] In support of this Brief, Assured states as follows:

## I.    BACKGROUND[3]

1.    The Detroit Water and Sewerage Department (the "DWSD") is a department of the City responsible for the City's sewage disposal system and the City's water supply system.  See Disclosure Statement, at 87.

### A.    Sewer Bonds

2.    In accordance with the authorizing resolutions enacted by the City Council of Detroit, the City's legislative body, the City issued numerous series of Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds (collectively, the "Sewer Bonds") pursuant to Ordinance No. 27-86, as amended and restated by Ordinance No. 18-01 (the "Sewer Bond Ordinance") and Chapter 141 of the Michigan Public Acts, including Act 94 of 1933, the Revenue Bond Act of 1933 (the "Revenue Bond Act"), Michigan Compiled Laws § 141.101, *et seq*., as amended.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014)* [Docket No. 4392] (the "Plan") or the *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4391] (the "Disclosure Statement").

[3]    Copies of all DWSD Bond Documents discussed herein are available at htttp://www.detroitwaterandsewerbonds.com.

2

3. The City has issued the following series of Sewer Bonds that are insured by Assured, as described below (collectively, the "<u>Assured Sewer Bonds</u>"):

- Sewage Disposal System Senior Lien Revenue Refunding Bonds (Variable Rate Demand) Series 2001(C-1), issued pursuant to the August 1, 2001 Resolution, as amended on October 10, 2001, and a sale order issued by the then finance director on September 26, 2001 (the "<u>2001 Sale Order</u>");

- Sewage Disposal System Senior Lien Revenue and Refunding Bonds Series 2003(A) and Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand) Series 2003(B) (together, the "<u>2003 Sewer Bonds</u>"), issued pursuant to the May 7, 2003 Resolution and sale orders issued for the respective series by the then finance director on May 14, 2003 (together, the "<u>2003 Sewer Sale Order</u>");

- Sewage Disposal System Senior Lien Revenue Refunding Bonds Series 2004(A) (the "<u>2004 Sewer Bonds</u>"), issued pursuant to the May 7, 2003 Resolution and a sale order issued by the then finance director on January 9, 2004 (the "<u>2004 Sewer Sale Order</u>");

- Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes) Series 2006(D) (the "<u>2006 Sewer Bonds</u>"), issued pursuant to the February 15, 2006 Resolution and a sale order issued by the then finance director on November 29, 2006 (the "<u>2006 Sewer Sale Order</u>"); and

- Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds Series 2012(A) (the "<u>2012 Sewer Bonds</u>"), issued pursuant to the July 19, 2011 Resolution and a sale order issued by the then finance director on June 20, 2012 (the "<u>2012 Sewer Sale Order</u>" and, collectively with the 2001 Sewer Sale Order, the 2003 Sewer Sale Order, the 2004 Sewer Sale Order and the 2006 Sewer Sale Order, the "<u>Sewer Sale Orders</u>").

4. Assured, under both its former name, Financial Security Assurance Inc., and current name, issued municipal bond insurance policies (the "<u>Assured</u>

3

Sewer Policies") insuring the City's payment obligations under the Assured Sewer

Bonds as set forth below:[4]

| Sewer Bond Series | Policy Number | Effective Date | Insurer |
|---|---|---|---|
| 2001(C-1) | 28051-N | October 23, 2001 | Assured under its former name Financial Security Assurance Inc. |
| 2003(A) | 200899-N | May 22, 2003 | Assured under its former name Financial Security Assurance Inc. |
| 2003(B) | 200927-N | May 22, 2003 | Assured under its former name Financial Security Assurance Inc. |
| 2004(A) | 202370-N | February 12, 2004 | Assured under its former name Financial Security Assurance Inc. |
| 2006(D) | 207713-N | December 14, 2006 | Assured under its former name Financial Security Assurance Inc. |
| 2012(A) | 214930-N | June 26, 2012 | Assured under its current name Assured Guaranty Municipal Corp. |

5.     Each of the Sewer Sale Orders, with the exception of the 2012 Sewer

Sale Order, includes or incorporates an "FSA Supplement" that provides additional

protections to Assured (the "Assured Insurer Protections," a true and correct

representative copy of which is attached hereto as Exhibit "6B"), formerly known

---

[4]     True and correct copies of the Assured Sewer Policies are attached as Exhibit A to Assured's proof of claim in respect of the Assured Sewer Bonds (Claim number 1167), a true and correct copy of which is attached hereto as Exhibit "6A."

as Financial Security Assurance Inc.[5]  Because the 2012 Sewer Sale Order was issued before Assured entered into an Amended and Restated Municipal Bond Insurance Commitment, the Assured Insurer Protections are contained as Exhibit B to such insurance commitment rather than as a supplement to the 2012 Sewer Sale Order.[6]

6.    Additionally, the City, the DWSD and U.S. Bank National Association, as Trustee, entered into a trust indenture relating to the outstanding secured obligations of the City's sewage system, dated as of June 1, 2012 (the "Sewer Trust Indenture").

B.    Water Bonds

7.    In accordance with an authorizing resolution enacted on November 18, 2005 by the City Council of Detroit and sale orders issued by the City's then finance director, the City also issued numerous series of Water Supply System

---

[5]    The FSA Supplements are found in different locations within the Sale Order for each Series of Bonds:

    2001 Sewer Bonds – located in Exhibit 10.01 of the VRM Supplement, which is an exhibit to the 2001 Sewer Sale Order.
    2003 Sewer Bonds – located in Annex C to the 2003 Sewer Sale Order.
    2004 Sewer Bonds – the FSA Supplement for the 2003 Sewer Bonds is incorporated by reference into the 2004 Sewer Bonds by Section 1 of the Supplement and Signature Pages Relating of the 2004 Sale Order.
    2006 Sewer Bonds – located in Exhibit A of the 2006 Sewer Sale Order.

[6]    Section 5.6 of the 2012 Sewer Sale Order provides that "Execution of the commitment by Assured Guaranty Municipal Corp. to provide a Municipal Bond Insurance Policy . . . and the proposed [Municipal Bond Insurance Policy] are hereby ratified and approved upon the terms and conditions set forth in such commitment."  2012 Sewer Sale Order, at § 5.4.  The Assured Insurer Protections as contained in Exhibit B to the insurance commitment are included within the "terms and conditions set forth in such commitment."

5

Revenue Bonds and Water Supply System Revenue Refunding Bonds (collectively, the "Water Bonds" and, together with the Sewer Bonds, the "Existing DWSD Bonds") pursuant to Ordinance No. 01-05 (the "Water Bond Ordinance" and, together with the Sewer Bond Ordinance, the "DWSD Bond Ordinances") and Chapter 141 of the Michigan Public Acts, including the Revenue Bond Act, Michigan Compiled Laws § 141.101 *et seq.*, as amended.

8. The City has issued the following series of Water Bonds that are insured by Assured, as described below (collectively, the "Assured Water Bonds" and, together with the Assured Sewer Bonds, the "Assured DWSD Bonds"):

- Water Supply System Revenue Senior Lien Bonds Series 2006(A) (the "2006(A) Water Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(A) Water Sale Order");

- Water Supply System Revenue Second Lien Bonds (Variable Rate Demand) Series 2006(B) (the "2006(B) Water Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on August 15, 2006 (the "2006(B) Water Sale Order");

- Water Supply System Revenue Refunding Second Lien Bond Series 2006(C) (the "2006(C) Water Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(C) Water Sale Order"); and

- Water Supply System Revenue Refunding Senior Lien Bond Series 2006(D) (the "2006(D) Water Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(D) Water Sale Order" and, collectively with the 2006(A) Water Sale Order, the 2006(B) Water Sale Order, and the 2006(C) Water Sale Order, the "Water Sale Orders").

6

9.     Assured, under its former name, Financial Security Assurance Inc., issued municipal bond insurance policies (the "Assured Water Policies" and, together with the Assured Sewer Policies, the "Assured Policies") insuring the City's payment obligations under the Assured Water Bonds as set forth below:[7]

| Water Bond Series | Policy Number | Effective Date |
|---|---|---|
| 2006(A) | 207165-N | August 16, 2006 |
| 2006(B) | 207164-N | August 16, 2006 |
| 2006(C) | 207167-N | August 16, 2006 |
| 2006(D) | 207166-N | August 16, 2006 |

10.     The 2006(A) Water Sale Order and 2006(D) Water Sale Order contain the Assured Insurer Protections in a supplement titled "Exhibit A: Senior Lien Insurer Provisions." The 2006(B) Water Sale Order and 2006(C) Water Sale Order contain the Assured Insurer Protections in a supplement titled "Exhibit A: Second Lien Insurer Protections."

11.     Additionally, the City, the DWSD and U.S. Bank National Association, as Trustee, entered into a trust indenture relating to the outstanding secured obligations of the City's water supply system, dated as of February 1, 2013 (the "Water Trust Indenture" and, together with the Sewer Trust Indenture, the "DWSD Trust Indentures").

---

[7]     True and correct copies of the Assured Water Policies are attached as Exhibit A to Assured's proof of claim in respect of the Assured Water Bonds (Claim number 1166) (the "Assured Water Bonds Proof of Claim"), a true and correct copy of which is attached hereto as Exhibit "6C."

7

C. Plan Treatment of the Existing DWSD Bonds

12. On February 20, 2014, Assured filed the Assured Sewer Bonds Proof of Claim and the Assured Water Bonds Proof of Claim, which assert claims arising from the Assured DWSD Bonds (and the Assured Policies and Assured Insurer Protections).

13. Under the Plan, the claims arising from the Assured DWSD Bonds have been classified within the series of Classes 1A-1 through 1A-337 – DWSD Bond Claims. See Plan, Exhibit I.A.110. Certain classes of these claims have been classified as impaired and entitled to vote under the Plan, a list of which is provided in the chart attached hereto as Exhibit "6D" (the "Assured Voting Classes"), while others have been arbitrarily classified as purportedly unimpaired and denied the right to vote on the Plan.

14. As discussed in detail below, Assured is the sole holder of the Assured DWSD Bonds for the purposes of exercising any voting rights or privilege, or giving any consent or direction. Therefore, Assured has the exclusive right to vote claims arising from the Assured DWSD Bonds. For the same reason, Assured has the exclusive right to make the election provided for in the Plan[8] (the

---

[8] The Plan provides that holders of Existing DWSD Bonds that are classified as impaired under the Plan may elect, subject to certain conditions, for the City to distribute New Existing Rate DWSD Bonds instead of New DWSD Bonds. See Plan, at 27; Disclosure Statement, at 45.

8

"DWSD Election") with respect to all claims arising from the Assured DWSD Bonds.

## II. ASSURED IS ENTITLED TO VOTE AND MAKE THE DWSD ELECTION WITH RESPECT TO ALL CLAIMS ARISING FROM THE ASSURED DWSD BONDS

15.     Under the terms of the DWSD Bond Documents, Assured possesses the exclusive right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because it is the sole holder of the Assured DWSD Bonds and has been explicitly granted the rights and powers of the beneficial holders of the Assured DWSD Bonds.

### A.     The Beneficial Holders of Assured DWSD Bonds Have Surrendered all Voting and Decision-Making Authority to Assured

16.     Assured possesses the exclusive right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because the beneficial holders of Assured DWSD Bonds surrendered all voting and decision-making authority in this case to Assured in exchange for Assured guaranteeing the scheduled payment of the Assured DWSD Bonds when due in accordance with the terms of the Assured Policies. Secured bondholders that unequivocally surrender their bankruptcy rights or privileges (including voting rights) to a monoline insurer as a *quid pro quo* for the monoline insurer issuing financial guaranty insurance in respect of their bonds are precluded from taking action in violation of such surrender. See In re American Roads LLC, 496 B.R.

9

727, 729 (Bankr. S.D.N.Y. 2013) ("curtailment of rights . . . is clearly enunciated in the relevant contracts . . . and, therefore, forecloses the Bondholders' participation in these proceedings."). For example, in the <u>American Roads</u> bankruptcy case, the court was asked to consider whether secured bondholders could participate in the bankruptcy case despite having surrendered their rights to a monoline insurer through contractual "no action" clauses. <u>See</u> <u>id</u>. Predictably, the bankruptcy court found that the bondholders were precluded from participating in the case in violation of the bond and insurance documents. <u>See</u> <u>id</u>. at 732.

17.    In reaching this conclusion, the bankruptcy court relied on the governing bond and insurance documents, which provided that the insurer: (a) was deemed the "sole holder" and the "sole representative" for all purposes under the financing documents; (b) controlled the enforcement of rights and remedies with respect to the bonds; and (c) possessed the authority to direct the trustee. <u>See</u> <u>id</u>. at 730. In effect, in exchange for the insurer agreeing to provide financial guaranty insurance, bondholders surrendered substantially all of their rights and powers with respect to the bonds, save for the residual right to collect payment when due.

18.    Here, Assured possesses exclusive authority to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because, as in <u>American Roads</u>, the beneficial holders of the Assured DWSD Bonds have surrendered virtually all of their rights, save for the right to collect

10

principal and interest when due, to Assured in exchange for Assured issuing the Assured Policies.

19.     First, as with the insurer in <u>American Roads</u>, Assured is explicitly the sole holder of the Assured DWSD Bonds:

> [Assured] shall be deemed to be the ***sole holder of the*** [Assured DWSD Bonds] for the purpose of exercising ***any voting right or privilege*** or giving any consent or direction or taking any other action that the holders of the [Assured DWSD Bonds] are entitled to take pursuant to the [DWSD Bond Ordinances] or the Related Documents.

<u>See</u> Assured Insurer Protections, at § 1.2 (emphasis added).  The DWSD Bond Documents thus make Assured's right to vote explicit.[9]  <u>See</u> Assured Insurer Protections, at § 1.2 (granting Assured the exclusive right to "exercis[e] any voting right or privilege" with respect to the Assured DWSD Bonds).

20.     Second, and again as with the insurer in <u>American Roads</u>, Assured controls the exercise of remedies with respect to the Assured DWSD Bonds. Under the DWSD Bond Ordinances, DWSD Bondholders:

> representing in the aggregate not less than 20% of the entire principal amount thereof then Outstanding, may, by suit, action, mandamus or other proceeding, protect and enforce the statutory lien on Pledged Assets and may, by suit, action, mandamus or other proceedings,

---

[9]   Even if the applicable DWSD Bond Documents did not explicitly grant Assured the exclusive right to vote all claims arising from the Assured DWSD Bonds, as the sole holder of the Assured DWSD Bonds, Assured would nevertheless be entitled to exercise all bankruptcy voting rights with respect thereto.  <u>See</u> 11 U.S.C. § 1126(a) ("the holder of a claim . . . may accept or reject a plan.").

11

> enforce and compel performance of all duties of the
> officers of the City, including the fixing of sufficient
> rates, the collection of Revenues, the proper segregation
> of the Revenues of the Sewer System and the proper
> application thereof.
>
> . . .
>
> (C) . . . shall have all other rights and remedies given by
> Act 94 and by law for the payment and enforcement of
> the [Existing DWSD Bonds] and the security therefore.

Sewer Bond Ordinance, at § II.7(a); Water Bond Ordinance, at § 7(a). Thus, any DWSD Bondholder that holds or represents holders of at least 20 percent of the outstanding DWSD Bonds is authorized to exercise remedies with respect to the DWSD Bonds in *any* proceeding, including this chapter 9 case. As noted above, Assured is the sole holder of all Assured DWSD Bonds. See Assured Insurer Protections, at § 1.2. Further, the Assured Sewer Bonds constitute more than 20 percent by principal of outstanding Sewer Bonds. See Plan, Exhibit I.A.168 (Assured insures $866,915,000.00 of $2,787,300,054.00, or approximately 31 percent, of outstanding Sewer Bonds). Likewise the Assured Water Bonds constitute more than 20 percent by principal of outstanding Water Bonds. See Plan, Exhibit I.A.168 (Assured insures $738,755,000.00 of $2,484,925,000.00 or approximately 30 percent of outstanding Water Bonds). Accordingly, as with the insurer in American Roads, Assured controls the exercise of remedies with respect to the Assured DWSD Bonds (and, indeed, may enforce remedies as to all

12

outstanding DWSD Bonds). <u>See</u> Sewer Bond Ordinance, at § II.7(a); Water Bond Ordinance, at § 7(a). Indeed, Assured is explicitly a third-party beneficiary of all financing documents related to the Assured DWSD Bonds for the purpose of enforcing the rights granted to Assured thereunder. <u>See</u> Assured Insurer Protections, at § 1.17.

21. Third, Assured is entitled to direct the Trustee to take actions to enforce the provisions of applicable law and the DWSD Trust Indentures. Under the DWSD Trust Indentures, DWSD Bondholders holding at least 20 percent of the aggregate principal amount outstanding may direct the Trustee to take any actions necessary to enforce the DWSD Trust Indentures and applicable law. <u>See</u> Sewer Trust Indenture, at § 5.02; Water Trust Indenture, at § 5.02. As just described, Assured is the sole holder of the Assured Sewer Bonds, which constitute more than 20 percent of the outstanding Sewer Bonds by principal. <u>See</u> Assured Insurer Protections, at § 1.2; Plan, Exhibit I.A.168 (Assured insures $866,915,000.00 of $2,787,300,054.00, or approximately 31 percent, of outstanding Sewer Bonds). Likewise, Assured is the sole holder of the Assured Water Bonds, which constitute more than 20 percent of the outstanding Water Bonds by principal. <u>See</u> Assured Insurer Protections, at § 1.2; Plan, Exhibit I.A.168 (Assured insures $738,755,000.00 of $2,484,925,000.00 or approximately 30 percent of outstanding Water Bonds).

13

22.     Thus, the beneficial holders of the Assured DWSD Bonds have surrendered all of their voting and decision-making rights with respect to the Assured DWSD Bonds in this case to Assured in exchange for Assured guaranteeing the scheduled payment of the Assured DWSD Bonds when due in accordance with the terms of the Assured Policies.  As demonstrated by American Roads, that bargained-for exchange of rights is fully enforceable in bankruptcy.  See In re American Roads LLC, 496 B.R. at 732.

23.     Indeed, enforcing Assured's exclusive right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds is the only equitable result.  The Bankruptcy Code is carefully crafted to ensure that only parties with a true financial stake in a debtor are empowered to shape the outcome of such debtor's bankruptcy case by voting on a bankruptcy plan.  See In re Combustion Eng'g, Inc., 391 F.3d 190, 244 (3d Cir. 2004) (voting rights "ensure[] the terms of the reorganization are monitored by those who have a financial stake in its outcome").  By guaranteeing the scheduled payment of the Assured DWSD Bonds when due in accordance with the terms of the Assured Policies, Assured has replaced the beneficial holders of the Assured DWSD Bonds as the only true financial stakeholder with respect to the Assured DWSD Bonds.  Thus, permitting any party other that Assured to cast a vote with respect to claims

14

arising from the Assured DWSD Bonds would be inequitable and wholly at odds with the purposes of the Bankruptcy Code.

>    B.    Transfers of Voting Rights are Enforceable in Bankruptcy
>          Even under Less Compelling Circumstances than Here

24.    Critically, Assured is entitled vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because, under the plain terms of the DWSD Bond Documents, Assured is the sole holder of the Assured DWSD Bonds.  See Assured Insurer Protections, at § 1.2.  However, even in the analogous but less compelling context of subordination agreements—which generally do not make the beneficiary of the subordination agreement the holder of the subordinated bonds—bankruptcy courts have repeatedly enforced assignments of voting rights.  See, e.g., In re Coastal Broad. Sys., Inc., No. 11-10596, 2012 WL 2803745, at *7-8 (Bankr. D. N.J. July 6, 2012), aff'd, No. 12-5682, 2013 WL 3285936, at *5-6 (D. N.J. June 28, 2013); Blue Ridge Investors, II, LP v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC), 362 B.R. 43, 45 (Bankr. N.D. Ga. 2006); In re Curtis Center Ltd. Partnership, 192 B.R. 648, 660 (Bankr. E.D. Pa. 1996); In re Inter Urban Broadcasting Cincinnati, Inc., No. 94-2382, 1994 WL 646176, at *2 (E.D. La. Nov. 16, 1994); In re David Broadcasting, Inc., 169 B.R. 229, 234 (Bankr. M.D. Ga. 1994), rev'd on other grounds, 176 B.R. 290 (M.D. Ga. 1994); In re Itemlab, Inc., 197 F.Supp. 194, 197-98. (E.D.N.Y. 1961).

25.     For example, in In re Aerosol Packaging, LLC, a debtor and a preexisting creditor entered into a prepetition agreement in favor of a new third party senior lender that (a) subordinated the preexisting creditor's right of recovery to the new third party senior lender and (b) provided that the new third party senior lender would be entitled to vote the preexisting creditor's claims.  See 362 B.R. at 45.  When the debtor filed for bankruptcy, the bankruptcy court held that the transfer of voting rights was enforceable, even absent a transfer of the underlying claim.  See id. at 47.  In reaching that decision, the court reasoned that "[s]ection 1126(a) grants a right to vote to a holder of a claim, but does not expressly or implicitly prevent that right from being delegated or bargained away by such holder."  Id. at 48.

26.     Here, Assured's position is significantly stronger than that of the third party senior lender in Aerosol Packaging.  Through the DWSD Bond Documents, the beneficial holders of the Assured DWSD Bonds bargained away, and Assured was expressly granted, the exclusive right to "exercis[e] any voting right or privilege" with respect to the Assured DWSD Bonds in exchange for Assured's guarantee of payment on the Assured DWSD Bonds in accordance with the terms of the Assured Policies.  See Assured Insurer Protections, at § 1.2.  Thus, by straightforward application of Aerosol Packaging and similar decisions, Assured is entitled to vote and make the DWSD Election with respect to all claims arising

16

from the Assured DWSD Bonds.  But this court need not even go that far to reach the same result.  As described above, Assured is the sole holder of the Assured DWSD Bonds.  <u>See</u> Assured Insurer Protections, at § 1.2 ("[Assured] shall be deemed to be the ***sole holder of the*** [Assured DWSD Bonds]").  Thus, this Court need not address whether voting rights can be severed from the underlying claim. Here, Assured holds both the Assured DWSD Bonds and the associated voting and election rights.[10]

C.      Assured is Fully Subrogated to the Rights of
        the Beneficial Holders of the Assured DWSD Bonds

27.     Finally, Assured is entitled vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds because it is a contractual and common law subrogree of the beneficial holders of the Assured DWSD Bonds.

i.      *Assured is Fully Contractually Subrogated to the Rights*
        *of the Beneficial Holders of the Assured DWSD Bonds*

28.     Numerous provisions of the bond documents and the Assured Policies expressly provide that Assured is fully subrogated to all rights of the beneficial holders of the Assured DWSD Bonds.  For example, the bond specimens for the

---

[10]    For precisely this reason, <u>In re 203 North LaSalle Street Partnership</u>, 246 B.R. 325, 330-32 (Bankr. N.D. Ill 2000) and <u>Beatrice Foods Co</u>. v. <u>Hart Ski Mfg. Co</u>. (<u>In re Hart Ski Mfg. Co</u>.), 5 B.R. 734, 736 (Bankr. D. Minn. 1980), which held that substantive bankruptcy rights may not be severed from the underlying claim, are inapposite.  Here, Assured is the sole holder of the Assured DWSD Bonds and is thus not requesting that voting rights be severed from the underlying claims.

17

2012(A) Bonds provide, "***The owner of this bond acknowledges and consents to the subrogation rights of Assured Guaranty as more fully set forth in the Policy***." 2012(A) Sewer Bond Specimen (emphasis added), a true and correct copy of which is attached hereto as Exhibit "6E."  Moreover, the Assured Policies provide that "[Assured] . . . shall be fully subrogated to the rights of the Owner . . . ." Assured Policies, at 1.

29.    As a subrogee of the beneficial holders of the Assured DWSD Bonds, Assured is entitled to all rights of the beneficial holders of the Assured DWSD Bonds with respect to the claims arising from the Assured DWSD Bonds, including the right to vote and make the DWSD Election:

> Under the Subrogation Clause, therefore, [the subrogee] steps into the shoes of [the subrogor] with respect to the claim against [the debtor] and acquires all of [the subrogor's] rights with respect to that claim.  [The subrogor's] right to vote on [the debtor's] reorganization plan flows from its claim in bankruptcy against [the debtor].  As a result, [the subrogee] succeeds to that right as subrogee of [the subrogor] and as the effective holder of [the subrogor's] claim.

Avondale Gateway Center Entitlement, LLC v. Nat'l Bank of Arizona, No. CV10-1772-PHX-DGC, 2011 WL 1376997, at *3 (D. Ariz. Apr. 12, 2011). [11] Accordingly, Assured is contractually subrogated to all rights of the holder of the

---

[11] See also, In re American Roads LLC, 496 B.R. 727 (Bankr. S.D.N.Y. 2013);  Rosenfeld v. Coastal Broadcasting Systems, Inc. (In re Coastal Broadcasting Systems, Inc.), 2013 WL 3285936, (D.N.J. June 28, 2013); Blue Ridge Investors, II, LP v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC), 362 B.R. 43 (Bankr. N.D. Ga. 2006).

Assured DWSD Bonds, including the right to vote and make the DWSD Election with respect to all claims arising from the Assured DWSD Bonds.

ii. *Assured is Fully Equitably Subrogated to the Rights of the Beneficial Holders of the Assured DWSD Bonds*

30. Finally, Assured is fully subrogated to all rights of the beneficial holders of the Assured DWSD Bonds under the common law doctrine of equitable subrogation. At its core, equitable subrogation is a "flexible and elastic equitable doctrine," Atlanta Int'l Ins. Co. v. Bell, 475 N.W.2d. 294, 298 (Mich. 1991), that "ought to be liberally applied to the protection of those who are its natural beneficiaries," Fed. Ins. Co. v. Arthur Andersen., 75 N.Y.2d 366, 373 (N.Y. 1990). While the bond documents and Assured Policies provide that Assured is subrogated to the rights of the beneficial holders of the Assured DWSD Bonds to the extent of payment (and generally payment, and therefore loss to Assured, precedes subrogation), in certain circumstances, insurers may be subrogated to the rights of the insured prior to the insurer making a payment. See, e.g., Fid. & Cas. Co. of N.Y. v. Fist Nat'l Bank in Fort Lee, 397 F. Supp. 587 (D. N.J. 1975). In that case, the court noted that "[s]ubrogation . . . is applied pursuant to equitable standards and with due regard to the legal and equitable rights of others." Id. at 589. In applying subrogation, the court held that "the most equitable result would be derived by giving a right of subrogation to the insurer" where the insurer had made the insured whole, but had not yet suffered a loss of its own. Id. at 590.

19

Such a result was proper as it would avoid "an unnecessary legal fiction" of the insured proceeding on its own when it would only really be acting as "constructive trustee for the insurer." Id.

31.    Here, Assured is fully subrogated to the rights of the beneficial holders of the Assured DWSD Bonds because it has agreed to make them whole in accordance with the terms of the Assured Policies. Although Assured has not yet suffered any loss with respect to its obligation under the Assured Policies, suffering a loss is not a prerequisite to equitable subrogation. See, e.g., Kumar v. Am. Transit Ins. Co., 49 A.D.3d 1353, 1355 (N.Y. Sup. Ct. 2008) ("We reject the contention . . . that the principle of equitable subrogation does not apply because [the insurer] has not yet paid the loss of its insured."); Allianz Underwriters Ins. Co. v. Landmark Ins. Co., 13 A.D.3d 172, 175 (N.Y. Sup. Ct. 2004) ("Contingent claims by subrogees have been recognized, especially where it would further judicial economy."); Fed. Sav. & Loan Ins. Corp. v. Aetna Cas. & Sur. Co., 696 F. Supp. 1190, 1195 (E.D. Tenn. 1988) (an insurer may "bring an action against third-parties who may be liable to the insurer for monies the insurer may have to pay under the bond, even if no money has yet been paid"). Thus, it would be an "unnecessary legal fiction" for the beneficial holders of the Assured DWSD Bonds to proceed as a "constructive trustee" for the benefit of Assured, as least with respect to voting and making the DWSD Election.

## III. PROPER TREATMENT FOR PURPOSES OF SECTION 1126(c) OF THE BANKRUPTCY CODE

32. This Court need not decide how Assured's votes will be treated for numerosity purposes of section 1126(c) of the Bankruptcy Code. Section 1126(c) provides that a class accepts a plan if at least two-thirds by amount and more than half in number of all allowed claims in such class that vote, vote to accept the plan. See 11 U.S.C. § 1126(c). In this case, however, Assured will control every Assured Voting Class regardless of how this Court determines Assured's votes should be treated for numerosity purposes of section 1126(c).

33. Under the Plan, each CUSIP of Existing DWSD Bonds is classified as a separate class. See Plan, Exhibit I.A.110. Assured does not insure any partial CUSIPs of Existing DWSD Bonds, but rather insures whole CUSIPs of Existing DWSD Bonds. See Exhibit Plan, I.A.168. Because Assured possesses exclusive authority to vote all claims arising from the Existing DWSD Bonds that it insures, Assured will be the sole voter for each Assured Voting Class. As the sole voter, Assured's vote(s) will satisfy both the amount and numerosity requirements of section 1126(c) of the Bankruptcy Code regardless of how Assured's vote(s) are tabulated. See 11 U.S.C. § 1126(c).

WHEREFORE, Assured respectfully requests that the Court enter an order: (i) granting Assured the exclusive right to vote and make the DWSD Election with respect to all claims in the Assured Voting Classes; (ii) disallowing any vote cast

21

by a party other than Assured with respect to any claim in the Assured Voting Classes; and (iii) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 23, 2014               **CHADBOURNE & PARKE LLP**

                          By:  /s/ Lawrence A. Larose
                          Lawrence A. Larose
                          Samuel S. Kohn
                          Robert J. Gayda
                          Eric Daucher
                          30 Rockefeller Plaza
                          New York, NY 10112
                          Telephone: (212) 408-5100
                          llarose@chadbourne.com
                          skohn@chadbourne.com
                          rgayda@chadbourne.com
                          edaucher@chadbourne.com

                          *Attorneys for Assured Guaranty Municipal Corp.*

22

**Exhibit 4**

**Certificate of Service**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May 2014, I caused the *Assured Guaranty Municipal Corp. Notice of Asserted Right to Vote Certain Claims in Class 1A* to be filed with the Clerk of the Court using the CM/ECF system, which provides electronic notification of such filing to all counsel of record.

Dated:  May 23, 2014
        New York, New York

                              **CHADBOURNE & PARKE LLP**
                              By:  /s/ Lawrence A. Larose
                              Lawrence A. Larose
                              Samuel S. Kohn
                              Robert J. Gayda
                              Eric Daucher
                              30 Rockefeller Plaza
                              New York, NY 10112
                              Telephone:  (212) 408-5100
                              llarose@chadbourne.com
                              skohn@chadbourne.com
                              rgayda@chadbourne.com
                              edaucher@chadbourne.com

                              *Attorneys for Assured Guaranty Municipal Corp.*

**Exhibit 5**

**Affidavits [None]**