**Exhibit 6A**

# ORIGINAL

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | |
|---|---|---|

CHAPTER 9
PROOF OF CLAIM

RECEIVED

FEB 2 0 2014

KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

| Name of Debtor:  City of Detroit, Michigan | Case Number:  13-53846 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Assured Guaranty Municipal Corp.

Name and address where notices should be sent:
Assured Guaranty Municipal Corp.
31 West 52nd Street
New York, NY 10019
Attn: Kevin J. Lyons
Tel: 212-339-3545
Email: Klyons@assuredguaranty.com
Terence L. Workman
Tel: 212-408-6053
Email: Tworkman@assuredguaranty.com

with copies to: Lawrence A. Larose
Samuel S. Kohn
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY10112

llarose@chadbourne.com
skohn@chadbourne.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:                    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**  $ ___See attached Addendum_____

If all or part of your claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

■ **Date Stamped Copy Returned**
☐ **No self addressed stamped envelope**
☐ **No copy to return**

**2. Basis for Claim:** __Municipal Bond Insurance (Sewage Disposal System Revenue Bonds) – Insurer's Claim__                    See attached Addendum
(See instruction #2)

**3.** Last four digits of any number by which creditor identifies debtor: ____   **3a.** Debtor may have scheduled account as: _____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
Describe:

Value of Property: $ _____

Annual Interest Rate (when case was filed)_____%  ☐ Fixed or  ☐ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ See attached Addendum

Basis for perfection:  __See attached Addendum__

Amount of Secured Claim: $ See attached Addendum

Amount Unsecured: $ See attached Addendum

**5.** Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).   $ _____

**5b.** Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.   $ _____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or in the case of a claim based upon an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruct/on #7, and the definition of "redacted" on reverse side.)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature: (See instruction #8)**
Check the appropriate box.

☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: __Holly Horn__
Title:  __Chief Surveillance Officer – Public Finance__
Company:  __Assured Guaranty Municipal Corp.__
Address and telephone number (if different from notice address above):
__31 West 52nd Street New York, NY 10019__

_(Signature)_   Holly Horn   2-18-2014   _(Date)_

Telephone number: (212) 339-3526   email:hhorn@assured guaranty.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

CPAM: 6072203.11

1353846140220000000000041

# CHADBOURNE & PARKE LLP

30 Rockefeller Plaza, New York, NY 10112

tel (212) 408-5100 fax (212) 541-5369

**David M. Bava**
(212) 408-5477
dbava@chadbourne.com

February 19, 2014

City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

      Re:  In re: City of Detroit, Michigan - Case No. 13-53846-swr
          Proofs of Claim

Ladies and Gentlemen:

      I enclose herewith an original set and one copy set for a total of six (6) proofs of claim to be filed on behalf of Assured Guaranty Municipal Corp. against the above-referenced debtor. Please file the original claims, stamp the marked copy set as evidence of filing and return them to the undersigned using the enclosed pre-addressed Federal Express airbill.

      I will confirm receipt of the enclosed by contacting Joe Bunning on Thursday, February 20, 2014.

      If you have any questions regarding the enclosed please feel free to contact me directly.

      Thank you for your assistance with these filings.

Very truly yours,

David M. Bava
Case Manager

Enclosures

VIA OVERNIGHT DELIVERY

DMB/

cc: Samuel S. Kohn, Esq. (without Enclosures)
     Mr. Seth Bloomfield (without Enclosures)

New York · Washington · Los Angeles · Mexico City · São Paulo · London · Moscow · Warsaw · Kyiv · Istanbul · Dubai · Beijing

**Addendum to Proof of Claim**
**of Assured Guaranty Municipal Corp.**

This Addendum to Proof of Claim ("Addendum") shall be deemed to be a part of, and incorporated by reference into, the attached proof of claim (together with this Addendum and all Exhibits hereto, the "Claim") filed by Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. (the "Claimant") against the City of Detroit, Michigan (the "Debtor"). On July 18, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), at Case No. 13-53846-swr.

## A.     Statement of Claim

Claimant files this Claim, on its own behalf, for (1) all fees and expenses that have been currently paid by the Claimant in relation to certain insurance policies issued by the Claimant to insure sewage disposal system revenue bonds issued by the Debtor; (2) all future disbursements of insurance payments that Claimant may make in the future on these certain insurance policies and related fees and expenses; and (3) all disbursements that Claimant may pay in the future in relation to certain debt service reserve insurance policies and related expenses.

## B.     Basis for Claim

In accordance with the authorizing resolutions (the "Resolutions") enacted by the City Council of Detroit (the "City Council"), the Debtor's legislative body, the Debtor issued several series of Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds (collectively, the "Sewer Bonds") pursuant to Ordinance No. 27-86, as amended and restated by Ordinance No. 18-01 (collectively with Ordinance No. 27-86, the "Sewer Bond Ordinance") and Chapter 141 of the Michigan Public Acts, including Act 94 of

1933, the Revenue Bond Act of 1933, Michigan Compiled Laws § 141.101 *et seq.*, as amended. The Sewer Bonds were issued for the purpose of defraying part of the cost of acquiring and constructing replacements, repairs, extensions and improvements to the Debtor's sewage disposal system (the "System") and refunding certain outstanding Sewer Bonds.

Specifically, the Debtor has issued, among others, the following series of Sewer Bonds (collectively, the "Claimant Bonds"):

- Sewage Disposal System Senior Lien Revenue Refunding Bonds (Variable Rate Demand) Series 2001-C(1) (the "2001 Bonds"), issued pursuant to the August 1, 2001 Resolution as amended by the October 10, 2001 and a sale order issued by the then finance director on September 26, 2001 (the "2001 Sale Order");

- Sewage Disposal System Senior Lien Revenue and Refunding Bonds Series 2003(A) (the "2003(A) Bonds") and Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand) Series 2003(B) (the "2003(B) Bonds" and, collectively with the 2003(A) Bonds, the "2003 Bonds"), issued pursuant to the May 7, 2003 Resolution and sale orders issued by the then finance director on May 14, 2003 and May 22, 2003 (collectively, the "2003 Sale Order");

- Sewage Disposal System Senior Lien Revenue Refunding Bonds Series 2004(A) (the "2004 Bonds"), issued pursuant to the May 7, 2003 Resolution and a sale order issued by the then finance director on January 9, 2004 (the "2004 Sale Order"); and

- Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes) Series 2006(D) (the "2006 Bonds" and, collectively with the 2001 Bonds, the 2003 Bonds, and the 2004 Bonds, the "Claimant Bonds"), issued pursuant to the February 15, 2006 Resolution and a sale order issued by the then finance director on November 29, 2006 (the "2006 Sale Order");

- Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds Series 2012(A) (the "2012 Bonds"), issued pursuant to the July 19, 2011 Resolution and a sale order issued by the then finance director on June 20, 2012 (the "2012 Sale Order" and, collectively with the 2001 Sale Order, the 2003 Sale Order, the 2004 Sale Order and the 2006 Sale Order, the "Sale Orders").

Claimant, under both its former name Financial Security Assurance Inc. and current name, issued municipal bond insurance policies (the "Claimant Policies," true and correct copies

of which are attached hereto as <u>Exhibit A</u>) insuring the Debtor's payment obligations under the Claimant Bonds.

| Bond Series | Policy Number | Effective Date | Entity |
|---|---|---|---|
| 2001(C-1) | 28051-N | October 23, 2001 | Claimant under its former name Financial Security Assurance Inc. |
| 2003(A) | 200899-N | May 22, 2003 | Claimant under its former name Financial Security Assurance Inc. |
| 2003(B) | 200927-N | May 22, 2003 | Claimant under its former name Financial Security Assurance Inc. |
| 2004(A) | 202370-N | February 12, 2004 | Claimant under its former name Financial Security Assurance Inc. |
| 2006(D) | 207713-N | December 14, 2006 | Claimant under its former name Financial Security Assurance Inc. |
| 2012(A) | 214930-N | June 26, 2012 | Claimant under its current name Assured Guaranty Municipal Corp. |

As of December 31, 2013, Claimant insures a gross par outstanding amount of $866,495,000.00 of Claimant Bonds.

According to the Claimant Policies, and subject to certain limitations, Claimant is obligated to pay the registered owners of applicable Claimant Bonds (the "Claimant Bondholders") the face amount of principal and interest on any Claimant Bond that is then due for payment, but is then unpaid by reason of nonpayment by the Debtor (all payments made by Claimant to Claimant Bondholders on account of such obligation, the "Claimant Bond Insurance Payments"). The Claimant Policies provide that upon disbursement of Claimant Bond Insurance Payments, Claimant shall be fully subrogated to all of the Claimant Bondholders' rights, title and interest under the Claimant Bonds to the extent of any Claimant Bond Insurance Payments, including, without limitation, the right to receive payment from the Debtor under the Claimant Bonds.

Claimant, under its former name Financial Security Assurance Inc., also issued a debt service reserve insurance policy (the "DSRF Policy," a true and correct copy of which is attached hereto as Exhibit B) as set forth below:

| Policy Number | Related Bond Series[1] | Gross Outstanding Amount |
| --- | --- | --- |
| 200899 R | 2003(A) and 2003(B) | $72,658,880 |

According to the DSRF Policy, and subject to certain limitations, Claimant is obligated to make payment to the Trustee or Paying Agent of the Sewer Bonds if the Debtor has failed to provide sufficient funds to the Trustee or Paying Agent for payment in full of all principal and interest that is due and owing on the Sewer Bonds (the "DSRF Payments"). Under the terms of the DSRF Policy, upon such payment, Claimant is entitled to contractual reimbursement of the amount so paid (together with interest and expenses).

Claimant's claim[2] is based on the provisions of the Resolutions, the Sale Orders, the Claimant Policies, and all other documents entered into in connection with the issuance of the Claimant Bonds, the Claimant Policies, and all related transactions (collectively, the "Claimant Bond Documents"). Claimant is informed and believes that the Debtor has copies of all or substantially all of the Claimant Bond Documents in its possession or control. However, upon written request to counsel to Claimant at the notice address shown below, Claimant will make available copies of supporting documents reasonably requested by the Debtor to the extent such documents are in Claimant's possession or control.

---

[1]   In addition to the Series 2003(A) and Series 2003(B) Sewer Bonds, the DSRF Policy covers any additional senior lien Sewer Bonds issued pursuant to the Sewer Bond Ordinance.

[2]   As such "claim" is defined in section 101(5)(A) of the Bankruptcy Code.

CPAM: 6072203.13

## C.    Amount and Nature of Claim

### (1)    *Claimant's Secured, Fixed and Liquidated Claim for Reimbursement*

Claimant asserts a secured, fixed and liquidated claim for reimbursement in the amount of $1,656,525.59 for all charges, fees, costs, losses, liabilities and expenses heretofore incurred or paid by Claimant in connection with the Bonds and the Bond Documents, reimbursable under the Bond Documents and/or applicable law ("Fees and Expenses"), with interest thereon as set forth, and at the rates identified, in the Bond Documents (including default interest, as applicable) ("Interest").

Supplements to the 2001 Sale Order, 2003 Sale Order, 2004 Sale Order, and 2006 Sale Order, and the Amended and Restated Municipal Bond Insurance Commitment to the 2012 Bonds (the "2012 Commitment"),[3] provide that the City shall pay or reimburse Claimant[4] any and all charges, fees, costs and expenses which Claimant may reasonably pay or incur in connection with the following:

- the administration, enforcement, defense or preservation of any rights or security in any related document;

- the pursuit of any remedies under the Sewer Bond Ordinance or any other related document or otherwise afforded by law or equity;

- any amendment, wavier or other action with respect to, or related to, the Bond Ordinance or any other related document whether or not executed or completed;

---

[3]    Because the 2012 Sale Order was executed before Claimant entered into the 2012 Commitment, the analogous reimbursement provisions and other bond insurer protections are contained as exhibits to the 2012 Commitment rather than as a supplement to the 2012 Sale Order.

[4]    The supplements to the 2001 Sale Order, 2003 Sale Order, 2004 Sale Order, and 2006 Sale Order, containing these reimbursement provisions and other bond insurer protections, were entered under Claimant's former name Financial Security Assurance Inc.  Under the terms of the supplements, Assured as successor to Financial Security Assurance Inc. is entitled to the protections provided in the supplements.

CPAM: 6072203.13

- the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to the Claimant Bonds; or

- any litigation or other dispute in connection with the Sewer Bond Ordinance or any other related document or the transactions contemplated thereby, other than amounts resulting from the failure of Claimant to honor its obligations under the Claimant Policies.

(2)  *Claimant's Secured, Contingent and Unliquidated Claim*

(a) Claimant Policies

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of any and all Claimant Bond Insurance Payments [in a principal amount of up to $866,495,000.00] with Interest thereon.  Claimant also asserts a secured, contingent and unliquidated claim for all related Fees and Expenses hereafter incurred or paid by Claimant, with Interest thereon.

Claimant asserts a secured claim as listed in the Debtor's schedules.  The Claimant Bonds are secured by a statutory lien, as defined in section 101(53) of the Bankruptcy Code, on the revenues of the System pursuant to Sections 7(4) and 8 of Act 94 of 1933 enacted by the Michigan Legislature and the Sewer Bond Ordinance.  Additionally, Claimant has a lien on the revenues of the System, which are special revenues within the meaning of 11 U.S.C. § 928, wholly dedicated to repayment of outstanding Sewer Bonds and not otherwise available to fund distributions to creditors under a plan of adjustment or for any other purpose.

(b) DSRF Policy

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the DSRF

Policy, the Bankruptcy Code, and applicable law based on Claimant's right to contractual reimbursement for all amounts paid (together with interest and expenses).

## D.     Reservation of Rights and/or Remedies

Claimant is not required to assert any claims for administrative expenses at this time. Claimant reserves all rights to file a request for payment of administrative expenses in accordance with 11 U.S.C. § 503 and 11 U.S.C. § 507, including all Fees and Expenses.

Nothing contained in this Claim shall be construed as limiting any of Claimant's rights, remedies, or interests. The execution and filing of this Claim is not and shall not be deemed or construed as: (a) a submission by the Claimant to the jurisdiction of this Court or any other court with respect to this Claim or to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (b) a waiver of the Claimant's right to amend or supplement any claim it has filed or will file that may be based on the same or additional facts and circumstances giving rise to the claims asserted herein; (c) a waiver or release of Claimant's right to trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a waiver or release of the Claimant's right to a jury trial in this Court or any other court in an proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or

any other proceeding which may be commenced in these cases against or otherwise involving Claimant; (g) an election of remedies; (h) a waiver of any right to file a proof of claim under Federal Rule of Bankruptcy Procedure 3005(a); or (i) a waiver of any rights or claims of Claimant in its capacity as holder of one or more of Claimant Bonds, if and to the extent applicable, which rights and claims Claimant is informed and believes will be asserted on Claimant's behalf by a proof of claim to be filed by the Trustee, but which Claimant nonetheless hereby reserves.

The terms of this paragraph shall not constitute or be deemed to constitute a waiver, on the one hand, by the Claimant of the right to allowance of its claims, the right to vote those claims in support of or against one or more plans of reorganization or liquidation, or the right to receive distributions on account of such claims, or the rights of any other party, on the other hand, to dispute such allowance, right to vote, or right to receive distributions on account of such claims.

The Claimant expressly reserves all rights, defenses and remedies that the Claimant has or may have against the Debtor or any other person or persons liable for all or part of the indebtedness claimed herein. The Claimant also reserves its right to amend and supplement this Claim and to file additional proofs of claim for any additional claims it might have.

To Claimant's knowledge, the Claim is not subject to any right of setoff, recoupment or counterclaim by the Debtor. Claimant hereby asserts and preserves any and all setoff and recoupment rights to which Claimant is entitled under 11 U.S.C. § 553 or otherwise.

**E.     Notices**

All notices and other pleadings relating to this Claim should be addressed as follows:

> Assured Guaranty Municipal Corp.
> 31 West 52nd Street
> New York, NY 10019
> Attn:          Kevin J. Lyons
> Telephone:   (212) 339-3546
> Email:          klyons@assuredguaranty.com
>
> Attn:          Terence L. Workman
> Telephone:   (212) 408-6053
> Email:          tworkman@assuredguaranty.com
>
> with a copy to
>
> Chadbourne & Parke LLP
> 30 Rockefeller Plaza
> New York, N.Y. 10112
> Attn:          Lawrence A. Larose, Esq.
>                    Samuel S. Kohn, Esq.
> Email:          llarose@chadbourne.com
>                    skohn@chadbourne.com

CPAM: 6072203.13

# Exhibit A

CONFIDENTIAL INFORMATION
CSchoch@winston.com



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

Policy No.: 28051-N

BONDS: $159,970,000 in aggregate principal amount of
Sewage Disposal System Senior Lien Revenue
Refunding Bonds (Variable Rate Demand),
Series 2001(C-1)

Effective Date: October 23, 2001

Premium: $706,531.31

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17:07:2013 18:29

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____

Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
350 Park Avenue, New York, N.Y. 10022-6022

Form 500NY (5/90)

[2.2.5.2] [10.23.2001 Closing Transcript II Sewer Series 2001(A), (B), (C-1), (C-2).PDF] [Page 741 of 1416]

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 07:07:... ...8:29



**FINANCIAL SECURITY ASSURANCE®**

**ENDORSEMENT NO. 2 TO MUNICIPAL BOND INSURANCE POLICY**
(Cancellation of Policy)

ISSUER: City of Detroit, Michigan

BONDS: $159,970,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Refunding Bonds (Variable Rate Demand), Series 2001(C-1)

Policy No.: 28051-N

Effective Date: October 23, 2001

Attached to Policy No. 28051-N (the "Policy") issued by Financial Security Assurance Inc. (the "Insurer"), as defined in the Policy issued with respect to the Bonds.

Notwithstanding the terms and conditions contained in the Policy, it is further understood as follows: the Policy shall not be cancelled or terminated prior to payment in full of all Bonds outstanding (including Provider Securities) except (i) upon the delivery to the Trustee for the Bonds of a Conforming Financial Facility in substitution for the Policy in accordance with Section 9.04 of the Variable Rate Mode Supplement and Agreement dated as of September 1, 2001, between the Issuer and U.S. Bank Trust National Association, as Trustee and Tender Agent (the "Supplement"), and (ii) with the prior written consent of the Provider of the Liquidity Facility. Defined terms used herein and not otherwise defined shall have the meaning assigned to them in the Supplement.

This Endorsement forms a part of the Policy, effective on the inception date of the Policy.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement to be executed in facsimile on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form No. 624NY (MI 7/01)

CONFIDENTIAL INFORMATION

CSchoch@winston.com



**FINANCIAL SECURITY ASSURANCE®**

**ENDORSEMENT NO. 2 TO MUNICIPAL BOND INSURANCE POLICY**
(Cancellation of Policy)

ISSUER: City of Detroit, Michigan

BONDS: $159,970,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Refunding Bonds (Variable Rate Demand), Series 2001(C-1)

Policy No.: 28051-N

Effective Date: October 23, 2001

Attached to Policy No. 28051-N (the "Policy") issued by Financial Security Assurance Inc. (the "Insurer"), as defined in the Policy issued with respect to the Bonds.

Notwithstanding the terms and conditions contained in the Policy, it is further understood as follows: the Policy shall not be cancelled or terminated prior to payment in full of all Bonds outstanding (including Provider Securities) except (i) upon the delivery to the Trustee for the Bonds of a Conforming Financial Facility in subsitution for the Policy in accordance with Section 9.04 of the Variable Rate Mode Supplement and Agreement dated as of September 1, 2001, between the Issuer and U.S. Bank Trust National Association, as Trustee and Tender Agent (the "Supplement"), and (ii) with the prior written consent of the Provider of the Liquidity Facility. Defined terms used herein and not otherwise defined shall have the meaning assigned to them in the Supplement.

This Endorsement forms a part of the Policy, effective on the inception date of the Policy.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement to be executed in facsimile on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By: _____

Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form No. 624NY (MI 7/01)



CONFIDENTIAL INFORMATION
CSchoch@winston.com



**FINANCIAL SECURITY ASSURANCE®**

## MUNICIPAL BOND INSURANCE POLICY

ISSUER: City of Detroit, Michigan

BONDS: $599,380,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue and Refunding Bonds, Series 2003(A)

Policy No.: 200899-N

Effective Date: May 22, 2003

Premium: $3,175,237.01

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17:07:2013 11:25

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE, INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
350 Park Avenue, New York, N.Y. 10022-6022

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

CSchoch@winston.com



**FINANCIAL SECURITY ASSURANCE®**  7:07:2  **MUNICIPAL BOND INSURANCE POLICY** 25

ISSUER:  City of Detroit, Michigan

BONDS:  $150,000,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand), Series 2003(B)

Policy No.: 200927-N

Effective Date: May 22, 2003

Premium: $953,943.21

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17:07:2013 11:25

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____

Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.　　　　(212) 826-0100
350 Park Avenue, New York, N.Y. 10022-6022

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit 17:07 11-25



**FINANCIAL SECURITY ASSURANCE®**

**ENDORSEMENT NO. 1 TO MUNICIPAL BOND INSURANCE POLICY**
**(Additional Due for Payment Date)**

ISSUER: City of Detroit, Michigan

BONDS: $150,000,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand), Series 2003(B)

Policy No.: 200927-N

Effective Date: May 22, 2003

Notwithstanding the terms and provisions contained in this Policy, it is further understood that the term "Due for Payment" shall include, when referring to the principal of and interest on a Provider Security, (i) interest not in excess of the lesser of (1) the Maximum Lawful Rate and (2) 18% per annum that shall become Due for Payment but which is unpaid by reason of Nonpayment on any Provider Security (including Excess Bond Interest to the extent provided in (and as defined in) Section 3.01(c) of the Liquidity Facility, but not any Final Excess Bond Interest Amount as defined therein) and (ii) the redemption price of such Provider Security payable on each mandatory redemption date pursuant to Section 3.04 of the Liquidity Facility and Section 5.04 of the Variable Rate Mode Supplement and Agreement between the Issuer and U.S. Bank National Association, as Transfer Agent and Tender Agent, dated as of May 1, 2003, (the "Supplement"); provided, however, that Financial Security may elect, in its sole discretion, to pay all outstanding principal of and interest on Provider Securities due for redemption on any mandatory redemption date prior to such date. The capitalized terms used in this Endorsement and not otherwise defined herein shall have the meanings ascribed to them in the Supplement.

FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form 555NY (6/90)

CONFIDENTIAL INFORMATION
CSchoch@winston.com

**FINANCIAL SECURITY ASSURANCE®**

**ENDORSEMENT NO. 2 TO MUNICIPAL BOND INSURANCE POLICY**
**(Cancellation of Policy)**

ISSUER: City of Detroit, Michigan

BONDS: $150,000,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Bonds (Variable Rate Demand), Series 2003(B)

Policy No.: 200927-N

Effective Date: May 22, 2003

Attached to Policy No. 200927-N (the "Policy") issued by Financial Security Assurance Inc. (the "Insurer"), as defined in the Policy issued with respect to the Bonds.

Notwithstanding the terms and conditions contained in the Policy, it is further understood as follows: the Policy shall not be cancelled or terminated prior to payment in full of all Bonds outstanding (including Provider Securities) except (i) upon the delivery to the Trustee for the Bonds of a Conforming Financial Facility in substitution for the Policy in accordance with Section 9.04 of the Variable Rate Mode Supplement and Agreement dated as of May 1, 2003, between the Issuer and U.S. Bank National Association, as Transfer Agent and Tender Agent (the "Supplement"), and (ii) with the prior written consent of the Provider of the Liquidity Facility. Defined terms used herein and not otherwise defined shall have the meaning assigned to them in the Supplement.

This Endorsement forms a part of the Policy, effective on the inception date of the Policy.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement to be executed in facsimile on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form No. 624NY (MI 7/01)

CONFIDENTIAL INFORMATION

CSchoch@winston.com

October 16.07.2015 12.44



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

BONDS: $101,435,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue Refunding Bonds, Series 2004(A)

Policy No.: 202370-N

Effective Date: February 12, 2004

Premium: $483,715.32

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:44

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.          (212) 826-0100
350 Park Avenue, New York, N.Y. 10022-6022

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

CSchoen@winston.com

**DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF**
**FINANCIAL SECURITY ASSURANCE INC.**

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy No. 202370-N (the "Policy") in respect of the $101,435,000 in aggregate principal amount of the City of Detroit, Michigan Sewage Disposal System Senior Lien Revenue Refunding Bonds, Series 2004(A) (the "Bonds") that:

(i)     the information set forth under the caption "BOND INSURANCE -- Financial Security Assurance Inc." in the official statement dated January 9, 2004, relating to the Bonds is true and correct,

(ii)    Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii)   the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)    the insurance premium of $483,715.32 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v)     no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)    Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii)   except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii)  Financial Security does not expect that a claim will be made on the Policy,

(ix)    the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)     for Bonds which are secured by a debt service reserve, Financial Security would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
                                                     Authorized Officer

Dated:  February 12, 2004

CONFIDENTIAL INFORMATION

CSchoch@winston.com
DECEMBER 17:07:2013 11:40



**FINANCIAL SECURITY ASSURANCE**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

BONDS: $370,000,000 in aggregate principal amount of Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes), Series 2006(D)

Policy No.: 207713-N

Effective Date: December 14, 2006

Premium: $1,891,014.70

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the


CONFIDENTIAL INFORMATION
CSschoch@winston.com
Detroit//17-07-2013 11:40

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
                                    Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)


CONFIDENTIAL INFORMATION
CSchedule@otton.com

**DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF**
**FINANCIAL SECURITY ASSURANCE INC.**

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy No. 207713-N (the "Policy") in respect of the $370,000,000 in aggregate principal amount of City of Detroit, Michigan Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes), Series 2006(D) (the "Bonds") that:

(i)    the information set forth under the caption "BOND INSURANCE – Financial Security Assurance Inc." in the official statement dated November 29, 2006, relating to the Bonds is true and correct,

(ii)    Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii)    the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)    the insurance premium of $1,891,014.70 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v)    no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)    Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii)    except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii)    Financial Security does not expect that a claim will be made on the Policy,

(ix)    the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)    for Bonds which are secured by a debt service reserve, Financial Security would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
                               Authorized Officer

Dated:   December 14, 2006


CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17-07-2013 11:40

**RULE 15c2-12 CERTIFICATE OF BOND INSURER**

The undersigned hereby certifies to UBS Investment Bank (the "Underwriter") on behalf of Financial Security Assurance Inc. ("Financial Security"), as issuer of a municipal bond insurance policy (the "Policy") with respect to the City of Detroit, Michigan Sewage Disposal System Revenue Refunding Senior Lien Bonds (Tax-Exempt Floating LIBOR Notes), Series 2006(D) (the "Bonds"):

(1)     that the preliminary official statement dated November 29, 2006 (the "Official Statement"), as to only the information set forth under the section entitled "Municipal Bond Insurance", was final as of its date within the meaning of Rule 15c2-12 under the Securities Exchange Act of 1934 ("Rule 15c2-12"), except for information permitted to be omitted therefrom by Rule 15c2-12; and

(2)     In giving this certificate Financial Security does not admit that it comes within the definition of Issuer of Municipal Securities for purposes of Rule 15c2-12.

FINANCIAL SECURITY ASSURANCE INC.

By:_____
                    Authorized Officer

Dated:  December 14, 2006

CONFIDENTIAL INFORMATION
CSchoch@winston.com

CERTIFICATE REGARDING
MUNICIPAL BOND DEBT SERVICE RESERVE FUND POLICY FOR
CITY OF DETROIT
SEWAGE DISPOSAL SYSTEM SENIOR LIEN REVENUE BONDS, SERIES 2001(A)
(the "2001(A) Bonds")

The undersigned, as authorized representative of Financial Guaranty Insurance Company, hereby confirms that the Municipal Bond Debt Service Reserve Fund Policy for the 2001(A) Bonds remains in effect in accordance with its terms notwithstanding the defeasance of the 2001(A) Bonds.

FINANCIAL GUARANTY INSURANCE COMPANY

By: _____

Its:     Authorized Representative

Dated:  December 14, 2006

CONFIDENTIAL INFORMATION

CSchoch@winston.com

ASSURED
GUARANTY
MUNICIPAL

MUNICIPAL BOND
INSURANCE POLICY

| | |
|---|---|
| **ISSUER:** City of Detroit, Michigan | Policy No.: 214930-N |
| | Effective Date: June 26, 2012 |
| **BONDS:** $68,630,000 in aggregate principal amount of Detroit Water and Sewerage Department Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds, Series 2012A maturing on July 1 of the years 2016, 2018 and 2039 (5% Coupon) | Premium: $1,107,705.28 |

ASSURED GUARANTY MUNICIPAL CORP. ("AGM"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of AGM, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which AGM shall have received Notice of Nonpayment, AGM will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by AGM, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in AGM. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by AGM is incomplete, it shall be deemed not to have been received by AGM for purposes of the preceding sentence and AGM shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, AGM shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by AGM hereunder. Payment by AGM to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of AGM under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless AGM shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:33

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to AGM which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

AGM may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to AGM pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to AGM and shall not be deemed received until received by both and (b) all payments required to be made by AGM under this Policy may be made directly by AGM or by the Insurer's Fiscal Agent on behalf of AGM. The Insurer's Fiscal Agent is the agent of AGM only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of AGM to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, AGM agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to AGM to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of AGM, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, ASSURED GUARANTY MUNICIPAL CORP. has caused this Policy to be executed on its behalf by its Authorized Officer.

ASSURED GUARANTY MUNICIPAL CORP.

By _____
        Authorized Officer

A subsidiary of Assured Guaranty Municipal Holdings Inc.          (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:33

# 34

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 1174 of 1282]

CONFIDENTIAL INFORMATION

enoch@winston.com

Detroit/16-07-2013  12:33



ASSURED
GUARANTY
MUNICIPAL

June 26, 2012

Municipal Bond Insurance Policy No. 214930-N With Respect to
$28,630,000 in Aggregate Principal Amount of
City of Detroit, Michigan
Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds, Series 2012A maturing on July 1 of
the years 2016, 2018 and 2039 (5% Coupon)

Ladies and Gentlemen:

I am Counsel of Assured Guaranty Municipal Corp., a New York stock insurance company ("AGM"). You have requested my opinion in such capacity as to the matters set forth below in connection with the issuance by AGM of its above-referenced policy (the "Policy"). In that regard, and for purposes of this opinion, I have examined such corporate records, documents and proceedings as I have deemed necessary and appropriate.

Based upon the foregoing, I am of the opinion that:

1.  AGM is a stock insurance company duly organized and validly existing under the laws of the State of New York and authorized to transact financial guaranty insurance business therein.

2.  The Policy has been duly authorized, executed and delivered by AGM.

3.  The Policy constitutes the valid and binding obligation of AGM, enforceable in accordance with its terms, subject, as to the enforcement of remedies, to bankruptcy, insolvency, reorganization, rehabilitation, moratorium and other similar laws affecting the enforceability of creditors' rights generally applicable in the event of the bankruptcy or insolvency of AGM and to the application of general principles of equity.

In addition, please be advised that I have reviewed the description of the Policy under the caption "SECURITY AND SOURCES OF PAYMENT FOR THE SERIES 2012 BONDS – Bond Insurance -Bond Insurance Policy" in the official statement relating to the above-referenced Bonds dated June 20, 2012 (the "Official Statement"). There has not come to my attention any information which would cause me to believe that the description of the Policy referred to above, as of the date of the Official Statement or as of the date of this opinion, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. Please be advised that I express no opinion with respect to any information contained in, or omitted from, the caption "SECURITY AND SOURCES OF PAYMENT FOR THE SERIES 2012 BONDS – Bond Insurance – Assured Guaranty Municipal Corp.".

I am a member of the Bar of the State of New York, and do not express any opinion as to any law other than the laws of the State of New York.

Very truly yours,

Counsel

City of Detroit, Michigan,
2 Woodward Avenue
Suite 1200,
Detroit, Michigan 48226.

Goldman Sachs & Co.,
as Representative of the Underwriters,
200 West Street
33rd Floor,
New York, New York 10282.

Assured Guaranty Municipal Corp.

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013  12:33

# 35

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/16:07:2013 12:33

DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF
ASSURED GUARANTY MUNICIPAL CORP.

The undersigned hereby certifies on behalf of Assured Guaranty Municipal Corp. ("AGM") in connection with the issuance by AGM of its Policy No. 214930-N (the "Policy") in respect of the $68,630,000 in aggregate principal amount of the City of Detroit, Michigan Sewage Disposal System Revenue and Revenue Refunding Senior Lien Bonds, Series 2012A maturing on July 1 of the years 2016, 2018 and 2039 (5% Coupon) (the "Bonds") that:

(i)    the information set forth under the caption "SECURITY AND SOURCES OF PAYMENT FOR THE SERIES 2012 BONDS – Bond Insurance - Assured Guaranty Municipal Corp." in the official statement dated June 20, 2012, relating to the Bonds (the "Official Statement") is true and correct,

(ii)   AGM is not currently in default nor has AGM ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii)  the Policy is an unconditional and recourse obligation of AGM (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)   the insurance premium of $1,107,705.28 (the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to AGM as a condition to the issuance of the Policy,

(v)    no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by AGM to maintain its ratings, which, together with all other overhead expenses of AGM, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)   AGM is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, AGM will not use any portion of the Bond proceeds; provided, however, that AGM or its affiliates may independently provide a guaranteed investment contract for the investment of all or a portion of the proceeds of the Bonds,

(vii)  except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by AGM,

(viii) AGM does not expect that a claim will be made on the Policy,

(ix)   the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)    for Bonds which are secured by a debt service reserve fund, AGM would not have issued the Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

AGM makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

ASSURED GUARANTY MUNICIPAL CORP.

By: _____
                Authorized Officer

Dated:   June 26, 2012

[2.2.5.2.35] [6.26.2012 Closing Transcript Sewer Series 2012(A).pdf] [Page 1177 of 1282]

# Exhibit B

CONFIDENTIAL INFORMATION
CSchoch@winston.com



# FINANCIAL SECURITY ASSURANCE®

## MUNICIPAL BOND DEBT SERVICE RESERVE INSURANCE POLICY

ISSUER: City of Detroit, Michigan

Policy No.: 200899-R

BONDS: $749,380,000 in aggregate principal amount of Sewage Disposal System Senior Lien Revenue and Refunding Bonds, Series 2003(A) and Senior Lien Revenue Bonds (Variable Rate Demand), Series 2003(B) and any additional Senior Lien Bonds issued pursuant to the Ordinance

Effective Date: May 22, 2003

Premium: $1,299,519.00

Termination Date: July 15, 2033

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") as set forth in the documentation (the "Bond Document") providing for the issuance of and securing the Bonds, for the benefit of the Owners, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

Financial Security will make payment as provided in this Policy to the Trustee or Paying Agent on the later of the Business Day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, in a form reasonably satisfactory to it. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Issuer, as appropriate, who may submit an amended Notice of Nonpayment. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy. Upon such payment, Financial Security shall become entitled to reimbursement of the amount so paid (together with interest and expenses) pursuant to the Insurance Agreement.

The amount available under this Policy for payment shall not exceed the Policy Limit. The amount available at any particular time to be paid to the Trustee or Paying Agent under the terms of this Policy shall automatically be reduced by any payment under this Policy. However, after such payment, the amount available under this Policy shall be reinstated in full or in part, but only up to the Policy Limit, to the extent of the reimbursement of such payment (exclusive of interest and expenses) to Financial Security by or on behalf of the Issuer. Within three Business Days of such reimbursement, Financial Security shall provide the Trustee, the Paying Agent and the Issuer with notice of the reimbursement and reinstatement.

Payment under this Policy shall not be available with respect to (a) any Nonpayment that occurs prior to the Effective Date or after the Termination Date of this Policy or (b) Bonds that are not outstanding under the Bond Document. If the amount payable under this Policy is also payable under another insurance policy or surety bond insuring the Bonds, payment first shall be made under this Policy to the extent of the amount available under this Policy up to the Policy Limit. In no event shall Financial Security incur duplicate liability for the same amounts owing with respect to the Bonds that are covered under this Policy and any other insurance policy or surety bond that Financial Security has issued.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent is authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Insurance Agreement" means the Insurance

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17-07-2013 11:25

Agreement dated as of the effective date hereof in respect of this Policy, as the same may be amended or supplemented from time to time. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer that has been recovered from such Owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from the Issuer, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment of principal or interest thereunder, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds. "Policy Limit" shall be the dollar amount of the debt service reserve fund required to be maintained for the Bonds by the Bond Document from time to time (the "Debt Service Reserve Requirement"), but in no event shall the Policy Limit exceed $51,800,000 to July 15, 2029; $69,200,000 from July 15, 2029 to July 15, 2031; and thereafter $72,800,000 to the Termination Date.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be cancelled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
350 Park Avenue, New York, N.Y. 10022-6022

(212) 826-0100

Form 501 NY (6/90)