**Exhibit 6B**

## FSA SUPPLEMENT

### Part 1 – Bond Insurance Provisions

1. **Applicability.**

    Part 1 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, is the insurer of the Series 2003 Securities and has not failed to comply with its payment obligations under its municipal bond insurance policies securing the Series 2003 Securities (together, the "Bond Insurance Policy"). For so long as Part 1 of this Supplement is in effect, it shall be applicable in respect of the Series 2003 Securities notwithstanding anything to the contrary elsewhere contained in the Sale Order, including the Related Documents.

2. **FSA Sole Holder for Purposes of Consents.**

    2.01 FSA shall be deemed to be the sole holder of the Series 2003 Securities for the purpose of exercising any voting right or privilege or giving any consent or direction or taking any other action that the holders of the Series 2003 Securities are entitled to take pursuant to the Bond Ordinance or the Related Documents.

    2.02 The rights of FSA to request, consent to or direct any action are rights granted to FSA in consideration of its issuance of the Bond Insurance Policy. Any exercise by FSA of such rights is merely an exercise of FSA's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the Securityholders nor does such action evidence any position of FSA, positive or negative, as to whether any Holder consent is required in addition to consent of FSA.

3. **Mode Change to Fixed Rate; Replacement of Liquidity Provider.**

    3.01 The Finance Director shall take such steps as are necessary to change the mode of any outstanding Variable Rate Securities to the Modal Fixed Rate Mode or to replace the Liquidity Provider upon the request of FSA for any reason described below.

    3.02 FSA may request the Finance Director shall take such steps as are necessary to change the mode of any outstanding Variable Rate Securities to the Modal Fixed Rate Mode for any of the following reasons and no other:

    (a) The Liquidity Provider for Variable Rate Securities (the "Liquidity Provider") failed to purchase Variable Rate Securities when obligated by its Liquidity Facility to do so.

    (b) An Immediate Termination Event occurs in respect of Variable Rate Securities or a mandatory tender event occurs that is either a Last Put Termination Event or the Occurrence of Expiry Date and Variable Rate Securities are subject to the mandatory tender by reason of such occurrence.

C-1

[2.2.5|2.28] [5.22.2003 Closing Transcript Sewer Series 2003(A)_(B).pdf] [Page 220 of 1542]
13-53846-tjt    Doc 5022-2    Filed 05/23/14    Entered 05/23/14 15:57:36    Page 2 of 10

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17.07.2013 11:25

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit\\7-07.2013 11:25

(c) Provider Bonds insured by FSA are held by the Liquidity Provider for 45 days or more in any year commencing on a July 2 and ending on the following July 1 (a "Bond Year") or there are two failed remarketings in any Bond Year.

(d) If Provider Bonds insured by FSA bear interest at the Legal Maximum Rate.

3.03 FSA may request the City to take all steps necessary to replace the Liquidity Provider with another qualifying Liquidity Provider if (i) the Liquidity Provider fails to purchase Variable Rate Securities when obligated to do so by its Liquidity Facility or (ii) the short term rating of the Liquidity Provider falls below A1 (or comparable rating) by a Rating Agency rating the Variable Rate Securities.

4. **No Acceleration Except with Consent.**

The maturity of Series 2003 Securities shall not be accelerated without the consent of FSA.

5. **Modifications, Amendments and Supplements.**

5.01 No modification, amendment or supplement to the Bond Ordinance requiring the consent of Holders of Series 2003 Securities, the Bond Resolution or the Sale Order as it relates to Series 2003 Securities (each a "Related Document") or that materially adversely affects its rights thereunder may become effective except upon obtaining the prior written consent of FSA.

5.02 Copies of any modification or amendment to the Bond Ordinance or any other Related Document shall be sent to Standard & Poor's Ratings Services, Moody's Investors Service, Inc. and Fitch, Inc. at least 10 days prior to the effective date thereof.

6. **Defeasance.**

6.01 Only (i) cash, (ii) non-callable direct obligations of the United States of America ("Treasuries"), (iii) evidences of ownership of proportionate interests in future interest and principal payments on Treasuries held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying Treasuries are not available to any person claiming through the custodian or to whom the custodian may be obligated or (iv) pre-refunded municipal obligations rated "AAA" and "Aaa" by S&P and Moody's, respectively, or any combination thereof, shall be authorized to be used to effect defeasance of Series 2003 Securities unless FSA otherwise approves.

6.02 To accomplish defeasance of Series 2003 Securities, and except as otherwise agreed to in writing by FSA, the City shall cause to be delivered (i) a report of an independent firm of nationally recognized certified public accountants or such other accountant as shall be acceptable to FSA ("Accountant") verifying the sufficiency of the escrow established to pay the Series 2003 Securities to be defeased in full on the maturity or redemption date ("Verification"), (ii) an Escrow Deposit Agreement (which shall be acceptable in form and substance to FSA), and (iii) an opinion of Bond Counsel to the effect that the defeased Series 2003 Securities are no

longer "Outstanding" under the Bond Ordinance. Each Verification and defeasance opinion shall be acceptable in form and substance, and addressed, to the City and FSA.

6.03 In the event a forward purchase agreement will be employed in advance refunding Series 2003 Securities, such agreement shall be subject to the approval of FSA and shall be accompanied by such opinions of counsel as may be required by FSA.

6.04 FSA shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow.

7. **Series 2003 Securities to Remain "Outstanding."**

To the extent not already provided elsewhere in the Related Documents, amounts paid by FSA under the Bond Insurance Policy shall not be deemed paid for purposes of the Bond Ordinance and shall remain Outstanding and continue to be due and owing until paid by the City in accordance with the Bond Ordinance.

8. **Claims Upon the Bond Insurance Policy; Payments by and to FSA.**

8.01 *Notices Prior to Payment Date.*

(a) If, on the third "Business Day" (being a day on which the City, the Transfer Agent and FSA are not authorized or required to remain closed) prior to the related scheduled interest payment date or principal payment date or the date to which bond maturity has been accelerated (a "Payment Date") there is not credited to the Interest and Redemption Fund moneys sufficient to pay the principal of and interest on the Series 2003 Securities due on such Payment Date, then the City shall give notice to FSA and to its designated agent (if any) (the "Bond Insurer's Fiscal Agent") by telephone or telecopy of the amount of such deficiency by 12:00 noon, New York, New York time, on such Business Day.

(b) If, on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the Series 2003 Securities due on such Payment Date, then the City shall make a claim under the Bond Insurance Policy and give notice to FSA and the Bond Insurer's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the Series 2003 Securities and the amount required to pay principal of the Series 2003 Securities, confirmed in writing to FSA and the Bond Insurer's Fiscal Agent by 12:00 noon, New York, New York time, on such second Business Day by filling in the form of Notice of Claim and Certificate delivered with the Bond Insurance Policy.

8.02 *Registration and Replacement of Series 2003 Securities.*

(a) In the event the claim to be made is for a mandatory sinking fund redemption installment, upon receipt of the moneys due, the Transfer Agent shall authenticate and deliver to affected Securityholders who surrender their Series 2003 Securities a new Series 2003(A) Security or Series 2003(B) Security, as applicable, in an

C-3

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/47-07-2013-14-25

aggregate principal amount equal to the unredeemed portion of the Series 2003 Security surrendered.

(b) The Transfer Agent shall designate any portion of payment of principal on Series 2003 Securities paid by FSA, whether by virtue of mandatory sinking fund redemption, maturity or other advancement of maturity, in the Registry as a reduction in the principal amount of Series 2003 Securities registered to the then current Securityholder, whether the Securities Depositary or its nominee or otherwise, and shall issue a replacement Series 2003(A) Security or Series 2003(B) Security, as applicable, to FSA, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to Authorized Denominations); provided that the Transfer Agent's failure to so designate any payment or issue any replacement Series 2003(A) Security or Series 2003(B) Security shall have no effect on the amount of principal or interest payable by the City on any Series 2003(A) Security or Series 2003(B) Security or the subrogation rights of FSA.

8.03 *Policy Payments Account.*

(a) Upon payment of a claim under the Bond Insurance Policy the Transfer Agent shall establish a separate special purpose trust account for the benefit of Holders of Series 2003 Securities referred to herein as the "Policy Payments Account" and over which the Transfer Agent shall have exclusive control and sole right of withdrawal.

(b) The Transfer Agent shall receive any amount paid under the Bond Insurance Policy in trust on behalf of Holders of Series 2003 Securities and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made.

(c) Amounts to be paid to Holders of Series 2003 Securities shall be disbursed by the Transfer Agent to Holders of Series 2003 Securities in the same manner as principal and interest payments are to be made under the Related Documents with respect to Fixed Rate Securities or Fixed Rate Modal Securities, as applicable, except that it shall not be necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments.

(d) The Transfer Agent shall keep a complete and accurate record of all funds deposited by FSA into the Policy Payments Account and the allocation of such funds to payment of interest on and principal paid in respect of any Series 2003 Security. FSA shall have the right to inspect such records at reasonable times upon reasonable notice to the Transfer Agent.

(e) Funds held in the Policy Payments Account shall not be invested by the Transfer Agent and may not be applied to satisfy any costs, expenses or liabilities of the Transfer Agent.

(f) Any funds remaining in the Policy Payments Account following a Bond payment date shall promptly be remitted to FSA.

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/47:07.2013-11:25

*8.04 Interest on Amounts Advanced.*

To the extent permitted by law, in the event amounts paid under the Bond Insurance Policy are applied to claims for payment of principal of or interest on the Series 2003 Securities, interest on such principal of and interest on such Series 2003 Securities shall accrue and be payable from the date of such payment at the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank or its successor at its principal office in the City of New York, as its prime or base lending rate plus 3%, and (ii) the then applicable rate of interest on the Series 2003 Securities provided that in no event shall such rate exceed the maximum rate permissible under applicable usury or similar laws limiting interest rates. The obligation to pay such additional interest is a "Senior Obligation" under the Bond Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

9. **Subrogation.**

To the extent not already provided elsewhere in the Related Documents, FSA shall, to the extent it makes any payment of principal of or interest on Series 2003 Securities, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Insurance Policy.

10. **FSA Fee and Expenses.**

10.01 The City shall pay or reimburse FSA any and all charges, fees, costs and expenses which FSA may reasonably pay or incur in connection with:

    (a)    the administration, enforcement, defense or preservation of any rights or security in any Related Document;

    (b)    the pursuit of any remedies under the Bond Ordinance or any other Related Document or otherwise afforded by law or equity;

    (c)    any amendment, waiver or other action with respect to, or related to, the Bond Ordinance or any other Related Document whether or not executed or completed;

    (d)    the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to Series 2003 Securities; or

    (e)    any litigation or other dispute in connection with the Bond Ordinance or any other Related Document or the transactions contemplated thereby, other than amounts resulting from the failure of FSA to honor its obligations under the Bond Insurance Policy.

10.02 FSA reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of the Bond Ordinance or any other Related Document.

C-5

13-53846-tjt    Doc 5022-2    Filed 05/23/14    Entered 05/23/14 15:57:36    Page 6 of 10

11. **FSA's Right to Pay.**

FSA shall be entitled to pay principal of or interest on Series 2003 Securities that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the City (as such terms are defined in the Bond Insurance Policy) and any amounts due on Series 2003 Securities as a result of acceleration of the maturity thereof in accordance with the Bond Ordinance, whether or not FSA has received a Notice of Nonpayment (as such terms are defined in the Bond Insurance Policy) or a claim upon the Bond Insurance Policy.

12. **Notices to FSA.**

12.01 The notice address of FSA is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance; Re: Policy Nos. 200899-N and 200927-N, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

12.02 In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

13. **Reporting.**

FSA shall be provided with the following information:

13.01 The budget for each Fiscal Year promptly after adoption and the Audited Sewage Disposal Fund Financial Statements (as defined in the Master Continuing Disclosure Agreement with respect to the Insured Securities) concurrently with the filing thereof with each NRMSIR and the SID pursuant to such Master Continuing Disclosure Agreement;

13.02 Notice of any draw upon the Bond Reserve Account within two Business Days after knowledge thereof other than (i) withdrawals of amounts in excess of the Bond Reserve Requirement and (ii) withdrawals in connection with a refunding of Series 2003 Securities;

13.03 Notice of any default under the Bond Ordinance known to the City within five Business Days after knowledge thereof;

13.04 Prior notice of the defeasance, advance refunding or redemption of any of the Series 2003 Securities, including the principal amount, maturities and CUSIP numbers thereof;

13.05 Notice of the resignation or removal of the Transfer Agent and Registrar and the appointment of, and acceptance of duties by, any successor thereto;

13.06 Notice of the commencement of any proceeding by or against the City commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

13.07 Notice of the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the Series 2003 Securities;

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit 7/07/2013 11:28

13.08 A full original transcript of all proceedings relating to the execution of any amendment or supplement to the Related Documents; and

13.09 All reports, notices and correspondence to be delivered under the terms of the Related Documents to Holders of Series 2003 Securities.

14. **Further Assurance.**

The City agrees to take such action as is necessary from time to time to perfect or to otherwise preserve the priority of the pledge of the Net Revenues pledged to Series 2003 Securities under applicable law.

15. **Additional Senior Lien Bonds.**

Notwithstanding satisfaction of other conditions to the issuance of additional Senior Lien Bonds contained in the Bond Ordinance, no such issuance may occur (unless otherwise permitted by FSA):

15.01 If any Event of Default (or any event which, once all notice or grace periods have passed, would constitute an Event of Default) have occurred and be continuing unless such default shall be cured upon such issuance.

15.02 Unless the Bond Reserve Account is fully funded at its requirement (including the new issue) upon the issuance of such additional Senior Lien Bonds.

16. **Reserve Fund Surety Bonds.**

Any debt service reserve policy or other credit instrument obtained for the Bond Reserve Account after the issuance of the Series 2003 Securities shall be acceptable to FSA.

17. **Enforce Rights.**

FSA is a third party beneficiary of the Related Documents for the purpose of enforcing the rights granted it thereunder.

**Part 2 – Reserve Account Surety Provisions**

1. **Applicability.**

Part 2 of this Supplement shall be in effect for only so long as Financial Security Assurance Inc., a New York stock insurance company ("FSA"), or any successor thereto, has not failed to comply with its payment obligations under its municipal bond debt service reserve insurance policy securing the Series 2003 Securities and other Senior Lien Bonds (the "Reserve Policy"). For so long as Part 2 of this Supplement is in effect, it shall be applicable in respect of the Series 2003 Securities and other Senior Lien Bonds notwithstanding anything to the contrary

elsewhere contained in the Sale Order, including the Related Documents (as defined in Section 5.01 of Part 1 of this Supplement).

2. **Repayment of Draws and Other Amounts.**

2.01 The City shall repay any draws under the Reserve Policy and pay all related reasonable expenses incurred by FSA. Interest shall accrue and be payable on such draws and expenses from the date of payment by FSA at the Late Payment Rate. "Late Payment Rate" means the lesser of (a) the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank at its principal office in the City of New York, as its prime or base lending rate ("Prime Rate") (any change in such Prime Rate to be effective on the date such change is announced by JPMorgan Chase Bank) plus 3%, and (ii) the then applicable highest rate of interest on the Series 2003 Securities and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days. In the event JPMorgan Chase Bank ceases to announce its Prime Rate publicly, Prime Rate shall be the publicly announced prime or base lending rate of such national bank as FSA shall specify.

2.02 Repayment of draws and payment of expenses and accrued interest thereon at the Late Payment Rate (collectively, "Policy Costs") shall commence in the first month following each draw, and each such monthly payment shall be in an amount at least equal to 1/12 of the aggregate of Policy Costs related to such draw.

2.03 Amounts in respect of Policy Costs paid to FSA shall be credited first to interest due, then to the expenses due and then to principal due. As and to the extent that payments are made to FSA on account of principal due, the overage under the Reserve Policy will be increased by a like amount, subject to the terms of the Reserve Policy.

2.04 All cash and investments in the Reserve Account established for the Series 2003 Securities (for purposes of this Supplement, the "Reserve Fund") shall be transferred to the debt service fund for payment of debt service on Series 2003 Securities and other Senior Lien Bonds before any drawing may be made on the Reserve Policy or any other credit facility credited to the Reserve Fund in lieu of cash ("Credit Facility"). Payment of any Policy Costs shall be made prior to replenishment of any such cash amounts. Draws on all Credit Facilities (including the Reserve Policy) on which there is available coverage shall be made on a pro-rata basis (calculated by reference to the coverage then available thereunder) after applying all available cash and investments in the Reserve Fund. Payment of Policy Costs and reimbursement of amounts with respect to other Credit Facilities shall be made on a pro-rata basis prior to replenishment of any cash drawn from the Reserve Fund.

2.05 The Related Documents shall not be discharged until all Policy Costs owing to FSA shall have been paid in full. The City's obligation to pay such amounts shall expressly survive payment in full of the Series 2003 Securities and other Senior Lien Bonds.

3. **Notice of Claim or Shortfall.**

3.01 The Transfer Agent shall ascertain the necessity for a claim upon the Reserve Policy and provide notice to FSA in accordance with the terms of the Reserve Policy at least five

C-8

business days prior to each date upon which interest or principal is due on the Series 2003 Securities. The Transfer Agent shall give notice to FSA of any failure of the City to make timely payment in full of deposits to the debt service fund for the Series 2003 Securities or other Senior Lien Bonds within two business days of the date due.

4. **Remedies of FSA.**

    4.01   If the City shall fail to pay any Policy Costs in accordance with the requirements of 2.01 hereof, FSA shall be entitled to exercise any and all legal and equitable remedies available to it, including those provided under the Related Documents other than (i) acceleration of the maturity of the Series 2003 Securities or other Senior Lien Bonds or (ii) remedies which would adversely affect owners of the Series 2003 Securities and other Senior Lien Bonds.

5. **Senior Obligations.**

    The obligation of the City to pay Policy Costs is a "Senior Obligation" under the Bond Ordinance, secured by a lien on Pledged Assets which is subordinate only to the lien in favor of the Holders of Senior Lien Bonds.

6. **Notices.**

    6.01   The notice address of FSA is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance; Re: Policy No. 200899-R, Telephone: (212) 826-0100; Telecopier: (212) 339-3556.

    6.02   In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

G:\D\Detroit\2003 Sewer Revenue\FSA-Supp-f.doc