**Exhibit 6C**

ORIGINAL

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|---|

RECEIVED

FEB 2 0 2014

KURTZMAN CARSON CONSULTANTS
COURT USE ONLY

**Name of Debtor:** City of Detroit, Michigan      **Case Number:** 13-53846

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):

Assured Guaranty Municipal Corp.

**Name and address where notices should be sent:**
Assured Guaranty Municipal Corp.
31 West 52nd Street
New York, NY 10019
Attn: Kevin J. Lyons
Tel: 212-339-3545
Email: Klyons@assuredguaranty.com
Terence L. Workman
Tel: 212-408-6053
Email: Tworkman@assuredguaranty.com

with copies to: Lawrence A. Larose
Samuel S. Kohn
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
llarose@chadbourne.com
skohn@chadbourne.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**

■ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return

Telephone number:        email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $  See attached Addendum

If all or part of your claim is secured, complete item 4.
If all or part of your claim is entitled to priority, complete item 5.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Municipal Bond Insurance (Water Supply System Revenue Bonds) – Insurer's Claim      See attached Addendum
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _____
**3a.** Debtor may have scheduled account as: _____
(See instruction #3a)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☒ Other
**Describe:**

**Basis for perfection:** See attached Addendum

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$ See attached Addendum

**Value of Property:** $_____
**Amount of Secured Claim:** $ See attached Addendum

**Annual Interest Rate (when case was filed)_____%** ☐ Fixed or ☐ Variable
**Amount Unsecured:** $ See attached Addendum

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).** $_____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements, or in the case of a claim based upon an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted" on reverse side.)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**8. Signature: (See instruction #8)**
Check the appropriate box.
☒ I am the creditor.  ☐ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Holly Horn
Title:  Chief Surveillance Officer – Public Finance
Company:  Assured Guaranty Municipal Corp.
Address and telephone number (if different from notice address above):
31 West 52nd Street New York, NY 10019

*(Signature)*  Holly Horn    2-18-2014  *(Date)*

Telephone number: (212) 339-3526    email:hhorn@assured guaranty.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

CPAM: 6080529.10

1353846140220000000000040

# CHADBOURNE
# & PARKE LLP

**David M. Bava**
(212) 408-5477
dbava@chadbourne.com

February 19, 2014

City of Detroit Claims Processing Center
c/o Kurtzman Carson Consultants LLC
2335 Alaska Avenue
El Segundo, CA 90245

       Re:  In re: City of Detroit, Michigan - Case No. 13-53846-swr
            Proofs of Claim

Ladies and Gentlemen:

      I enclose herewith an original set and one copy set for a total of six (6) proofs of claim to be filed on behalf of Assured Guaranty Municipal Corp. against the above-referenced debtor.  Please file the original claims, stamp the marked copy set as evidence of filing and return them to the undersigned using the enclosed pre-addressed Federal Express airbill.

      I will confirm receipt of the enclosed by contacting Joe Bunning on Thursday, February 20, 2014.

      If you have any questions regarding the enclosed please feel free to contact me directly.

      Thank you for your assistance with these filings.

                     Very truly yours,

                     David M. Bava
                     Case Manager

Enclosures

<u>VIA</u> <u>OVERNIGHT</u> <u>DELIVERY</u>

DMB/

cc:  Samuel S. Kohn, Esq. (without Enclosures)
     Mr. Seth Bloomfield (without Enclosures)



**Addendum to Proof of Claim**
**of Assured Guaranty Municipal Corp.**

This Addendum to Proof of Claim ("Addendum") shall be deemed to be a part of, and incorporated by reference into, the attached proof of claim (together with this Addendum and all Exhibits hereto, the "Claim") filed by Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. (the "Claimant") against the City of Detroit, Michigan (the "Debtor"). On July 18, 2013 (the "Petition Date"), the Debtor filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), at Case No. 13-53846-swr.

A. **Statement of Claim**

Claimant files this Claim, on its own behalf, for (1) all fees and expenses that have been currently paid by the Claimant in relation to certain insurance policies issued by the Claimant to insure water supply system revenue bonds issued by the Debtor; (2) all future disbursements of insurance payments that Claimant may make in the future on these certain insurance policies and related fees and expenses; and (3) all disbursements that Claimant may pay in the future in relation to certain debt service reserve insurance policies and related expenses.

B. **Basis for Claim**

In accordance with an authorizing resolution (the "Resolution") enacted on November 18, 2005 by the City Council of Detroit (the "City Council"), the Debtor's legislative body, the Debtor issued several series of Water Supply System Revenue Bonds and Water Supply System Revenue Refunding Bonds (collectively, the "Water Bonds") pursuant to Ordinance No. 01-05 (the "Bond Ordinance") and Chapter 141 of the Michigan Public Acts, including Act 94 of 1933, the Revenue Bond Act of 1933, Michigan Compiled Laws § 141.101 *et seq.*, as amended. The

Water Bonds were issued for the purpose of defraying part of the cost of acquiring and constructing replacements, repairs, extensions and improvements to the Debtor's water supply system (the "System") and refunding certain outstanding Water Bonds.

Specifically, the Debtor has issued, among others, the following series of Water Bonds (collectively, the "Claimant Bonds"):

- Water Supply System Revenue Senior Lien Bonds Series 2006(A) (the "2006(A) Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(A) Sale Order");

- Water Supply System Revenue Second Lien Bonds (Variable Rate Demand) Series 2006(B) (the "2006(B) Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on August 15, 2006 (the "2006(B) Sale Order");

- Water Supply System Revenue Refunding Second Lien Bond Series 2006(C) (the "2006(C) Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(C) Sale Order"); and

- Water Supply System Revenue Refunding Senior Lien Bond Series 2006(D) (the "2006(D) Bonds"), issued pursuant to the Resolution and a sale order issued by the then finance director on July 19, 2006 (the "2006(D) Sale Order" and, collectively with the 2006(A) Sale Order, the 2006(B) Sale Order, and the 2006(C) Sale Order, the "Sale Orders").

Claimant, under its former name Financial Security Assurance Inc., issued municipal bond insurance policies (the "Claimant Policies," true and correct copies of which are attached hereto as Exhibit A) insuring the Debtor's payment obligations under the Claimant Bonds as set forth below:

| Bond Series | Policy Number | Effective Date |
|-------------|---------------|----------------|
| 2006(A) | 207165-N | August 16, 2006 |
| 2006(B) | 207164-N | August 16, 2006 |
| 2006(C) | 207167-N | August 16, 2006 |
| 2006(D) | 207166-N | August 16, 2006 |

As of December 31, 2013, Claimant insures a gross par outstanding amount of $738,755,000.00 of Claimant Bonds.

CPAM: 6080529.12

According to the Claimant Policies, and subject to certain limitations, Claimant is obligated to pay the registered owners of applicable Claimant Bonds (the "Claimant Bondholders") the face amount of principal and interest on any Claimant Bond that is then due for payment, but is then unpaid by reason of nonpayment by the Debtor (all payments made by Claimant to Claimant Bondholders on account of such obligation (the "Claimant Bond Insurance Payments"). The Claimant Policies provide that upon disbursement of Claimant Bond Insurance Payments, Claimant shall be fully subrogated to all of the Claimant Bondholders' rights, title and interest under the Claimant Bonds to the extent of any Claimant Bond Insurance Payments, including, without limitation, the right to receive payment from the Debtor under the Claimant Bonds.

Claimant, under its former name Financial Security Assurance Inc., also issued debt service reserve insurance policies (the "DSRF Policies," true and correct copies of which are attached hereto as Exhibit B) as set forth below:

| Policy Number | Related Bond Series[1] | Gross Outstanding Amount |
| --- | --- | --- |
| 207164-R | 2006(B) and 2006(C) | $10,000,000 |
| 207165-R | 2006(A) and 2006(D) | $3,000,000 |

According to the DSRF Policies, and subject to certain limitations, Claimant is obligated to make payment to the Trustee or Paying Agent of the Water Bonds if the Debtor has failed to provide sufficient funds to the Trustee or Paying Agent for payment in full of all principal and interest that is due and owing on the Water Bonds (the "DSRF Payments"). Under the terms of

---

[1]  In addition to the Series 2006(A), Series 2006(B), Series 2006(C), and Series 2006(D) Water Bonds, the DSRF Policies cover any additional senior or second lien Water Bonds issued pursuant to the Bond Ordinance, as amended and supplemented, or predecessor ordinances which were amended and restated by the Bond Ordinance.

CPAM: 6080529.12

the DSRF Policies, upon such payment, Claimant is entitled to contractual reimbursement of the amount so paid (together with interest and expenses). Additionally, to the extent of any payment made by Claimant, the DSRF Policies provide that Claimant:

> shall become the owner of the [Water] Bond, any appurtenant coupon to the [Water] Bond or right to receipt of payment of principal of or interest on the [Water] Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the [Water] Bond and all insurance policies in respect of the [Water] Bond.

Claimant's claim[2] is based on the provisions of the Resolutions, the Sale Orders, the Claimant Policies, and all other documents entered into in connection with the issuance of the Claimant Bonds, the Claimant Policies, and all related transactions (collectively, the "Claimant Bond Documents"). Claimant is informed and believes that the Debtor has copies of all or substantially all of the Claimant Bond Documents in its possession or control. However, upon written request to counsel to Claimant at the notice address shown below, Claimant will make available copies of supporting documents reasonably requested by the Debtor to the extent such documents are in Claimant's possession or control.

## C.    Amount and Nature of Claim

*(1)    Claimant's Secured, Fixed and Liquidated Claim for Contractual Reimbursement*

Claimant asserts a secured, fixed and liquidated claim for contractual reimbursement in the amount of $1,412,318.09 for all charges, fees, costs, losses, liabilities and expenses heretofore incurred or paid by Claimant in connection with the Bonds and the Bond Documents, reimbursable under the Bond Documents and/or applicable law ("Fees and Expenses"), with

---

[2]    As such "claim" is defined in section 101(5)(A) of the Bankruptcy Code.

CPAM: 6080529.12

interest thereon as set forth, and at the rates identified, in the Bond Documents (including default interest, as applicable) ("Interest").

A supplement to the Sale Orders titled "Exhibit A: Second Lien Insurer Provisions" provides that the City shall pay or reimburse Claimant, under its former name Financial Security Assurance Inc., any and all charges, fees, costs and expenses which Claimant may reasonably pay or incur in connection with the following:

- the administration, enforcement, defense or preservation of any rights or security in any related document;

- the pursuit of any remedies under the Bond Ordinance or any other related document or otherwise afforded by law or equity;

- any amendment, wavier or other action with respect to, or related to, the Bond Ordinance or any other related document whether or not executed or completed;

- the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to the Claimant Bonds; or

- any litigation or other dispute in connection with the Bond Ordinance or any other related document or the transactions contemplated thereby, other than amounts resulting from the failure of Claimant to honor its obligations under the Claimant Policies.

(2)   *Claimant's Secured, Contingent and Unliquidated Claims*

(a) Claimant Policies

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the Claimant Bond Documents, the Bankruptcy Code, and applicable law based on Claimant's rights of subrogation on account of any and all Claimant Bond Insurance Payments [in a principal amount of up to $738,755,000.00] with Interest thereon.   Claimant also asserts a secured, contingent and unliquidated claim for all related Fees and Expenses hereafter incurred or paid by Claimant, with Interest thereon.

Claimant asserts a secured claim as listed in the Debtor's schedules. The Claimant Bonds are secured by a statutory lien, as defined in section 101(53) of the Bankruptcy Code, on the revenues of the System pursuant to Sections 7(4) and 8 of Act 94 of 1933 enacted by the Michigan Legislature and the Bond Ordinance. Additionally, Claimant has a lien on the revenues of the System, which are special revenues within the meaning of 11 U.S.C. § 928, wholly dedicated to repayment of outstanding Water Bonds and not otherwise available to fund distributions to creditors under a plan of adjustment or for any other purpose.

(b) DSRF Policies

Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the DSRF Policies, the Bankruptcy Code, and applicable law based on Claimant's right to contractual reimbursement for all amounts paid (together with interest and expenses). Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the DSRF Policies, the Bankruptcy Code, and applicable law based on Claimant's rights, to the extent payment is made, to become owner of Water Bonds, any appurtenant coupon to Water Bonds or right to receipt of payment of principal of or interest on the Water Bonds. Claimant asserts a secured, contingent and unliquidated claim for all amounts that are or shall become due and owing from the Debtor to the Claimant under the provisions of the DSRF Policies, the Bankruptcy Code, and applicable law based on Claimant's rights, to the extent payment is made, of subrogation including the right to receive payments under the Water Bonds and all insurance policies in respect of the Water Bonds.

## D. Reservation of Rights and/or Remedies

Claimant is not required to assert any claims for administrative expenses at this time. Claimant reserves all rights to file a request for payment of administrative expenses in accordance with 11 U.S.C. § 503 and 11 U.S.C. § 507, including all Fees and Expenses.

Nothing contained in this Claim shall be construed as limiting any of Claimant's rights, remedies, or interests. The execution and filing of this Claim is not and shall not be deemed or construed as: (a) a submission by the Claimant to the jurisdiction of this Court or any other court with respect to this Claim or to proceedings, if any, commenced in any case against or otherwise involving the Claimant; (b) a waiver of the Claimant's right to amend or supplement any claim it has filed or will file that may be based on the same or additional facts and circumstances giving rise to the claims asserted herein; (c) a waiver or release of Claimant's right to trial by jury in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a waiver or release of the Claimant's right to a jury trial in this Court or any other court in an proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceeding which may be commenced in these cases against or otherwise involving Claimant; (g) an election of remedies; (h) a waiver of any right to file a proof of claim under

Federal Rule of Bankruptcy Procedure 3005(a); or (i) a waiver of any rights or claims of Claimant in its capacity as holder of one or more of Claimant Bonds, if and to the extent applicable, which rights and claims Claimant is informed and believes will be asserted on Claimant's behalf by a proof of claim to be filed by the Trustee, but which Claimant nonetheless hereby reserves.

The terms of this paragraph shall not constitute or be deemed to constitute a waiver, on the one hand, by the Claimant of the right to allowance of its claims, the right to vote those claims in support of or against one or more plans of reorganization or liquidation, or the right to receive distributions on account of such claims, or the rights of any other party, on the other hand, to dispute such allowance, right to vote, or right to receive distributions on account of such claims.

The Claimant expressly reserves all rights, defenses and remedies that the Claimant has or may have against the Debtor or any other person or persons liable for all or part of the indebtedness claimed herein. The Claimant also reserves its right to amend and supplement this Claim and to file additional proofs of claim for any additional claims it might have.

To Claimant's knowledge, the Claim is not subject to any right of setoff, recoupment or counterclaim by the Debtor. Claimant hereby asserts and preserves any and all setoff and recoupment rights to which Claimant is entitled under 11 U.S.C. § 553 or otherwise.

CPAM: 6080529.12

## E.      Notices

All notices and other pleadings relating to this Claim should be addressed as follows:

Assured Guaranty Municipal Corp.
31 West 52nd Street
New York, NY 10019
Attn:            Kevin J. Lyons
Telephone:   (212) 339-3546
Email:          klyons@assuredguaranty.com

Attn:            Terence L. Workman
Telephone:   (212) 408-6053
Email:          tworkman@assuredguaranty.com

with a copy to

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, N.Y. 10112
Attn:            Lawrence A. Larose, Esq.
                   Samuel S. Kohn, Esq.
Email:          llarose@chadbourne.com
                   skohn@chadbourne.com

# Exhibit A

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Dec 03017 17:07:2013 12:09



## FINANCIAL SECURITY ASSURANCE

## MUNICIPAL BOND INSURANCE POLICY

ISSUER: City of Detroit, Michigan

BONDS: $280,000,000 in aggregate principal amount of Water Supply System Revenue Senior Lien Bonds, Series 2006(A)

Policy No.: 207165-N

Effective Date: August 16, 2006

Premium: $1,569,643.13

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit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  12:09

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction.  "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment.  "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent.  From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security.  The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto.  Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked.  THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

[2.2.5.1.9] [Water Series 2006] ... [Financial Security Assurance Holdings Ltd. of 1509]        (212) 826-0100
31 West 52nd Street, New York, N.Y.  10019

CONFIDENTIAL INFORMATION

CSchech@winston.com

Detroit 07:07:2013 12:09



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

BONDS: $120,000,000 in aggregate principal amount of Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B)

Policy No.: 207164-N

Effective Date: August 16, 2006

Premium: $1,134,073.13

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY and IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17-07-2012 12:09

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
                                                 Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

GSchoch@winston.com
Detroit 17:07 12:09



**FINANCIAL SECURITY ASSURANCE®**

**ENDORSEMENT NO. 1 TO MUNICIPAL BOND INSURANCE POLICY (Bank Bonds)**

ISSUER: City of Detroit, Michigan

BONDS: $120,000,000 in aggregate principal amount of Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B)

Policy No.: 207164-N

Effective Date: August 16, 2006

Notwithstanding the terms and provisions contained in this Policy, it is further understood that the term "Due for Payment" shall include, when referring to the principal of and interest on a Provider Security, (i) interest not in excess of the lesser of (1) the Legal Maximum Rate and (2) 25% per annum that shall become Due for Payment but which is unpaid by reason of Nonpayment on any Provider Security (including Excess Bank Bond Interest to the extent provided in (and as defined in) Section 3.03 of the Liquidity Facility, but not any Final Excess Bond Interest Amount as defined therein) and (ii) the redemption price of such Provider Security payable on each scheduled mandatory redemption date pursuant to Section 5.04 of the Variable Rate Mode and Auction Rate Mode Supplement and Agreement between the Issuer and U.S. Bank National Association, as Transfer Agent, dated as of August 1, 2006, (the "Supplement") and Section 3.02 of the Liquidity Facility. The capitalized terms used in this Endorsement and not otherwise defined herein shall have the meanings ascribed to them in the Supplement.

FINANCIAL SECURITY ASSURANCE INC. has caused this Endorsement to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

CONFIDENTIAL INFORMATION

CSchoch@winston.com
Detroit 07:07:2013 12:09



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND INSURANCE POLICY**

| | |
|---|---|
| ISSUER: City of Detroit, Michigan | Policy No.: 207167-N |
| BONDS: $220,645,000 in aggregate principal amount of Water Supply System Revenue Refunding Second Lien Bonds, Series 2006(C) | Effective Date: August 16, 2006<br>Premium: $1,739,359.03 |

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17-07-2013_13:09

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

CONFIDENTIAL INFORMATION

CSchoch@winston.com

Detroit 17:07:2013 12:09

**FINANCIAL SECURITY ASSURANCE**

**MUNICIPAL BOND INSURANCE POLICY**

| | |
|---|---|
| ISSUER: City of Detroit, Michigan | Policy No.: 207166-N |
| BONDS: $146,590,000 in aggregate principal amount of Water Supply System Revenue Refunding Senior Lien Bonds, Series 2006(D) | Effective Date: August 16, 2006 |
| | Premium: $869,355.53 |

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the Bonds) for the Bonds, for the benefit of the Owners or, at the election of Financial Security, directly to each Owner, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

On the later of the day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, Financial Security will disburse to or for the benefit of each Owner of a Bond the face amount of principal of and interest on the Bond that is then Due for Payment but is then unpaid by reason of Nonpayment by the Issuer, but only upon receipt by Financial Security, in a form reasonably satisfactory to it, of (a) evidence of the Owner's right to receive payment of the principal or interest then Due for Payment and (b) evidence, including any appropriate instruments of assignment, that all of the Owner's rights with respect to payment of such principal or interest that is Due for Payment shall thereupon vest in Financial Security. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Owner, as appropriate, who may submit an amended Notice of Nonpayment. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond, to the extent of any payment by Financial Security hereunder. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York or the Insurer's Fiscal Agent are authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Trustee or, if there is no Trustee, to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer which has been recovered from such Owner pursuant to the


CONFIDENTIAL INFORMATION
CSchoch@winston.com

United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from an Owner, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment thereof, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.                    (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 500NY (5/90)

CONFIDENTIAL INFORMATION
CSchochowinston.com

DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF FINANCIAL SECURITY ASSURANCE INC.

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy Nos. 207165-N and 207166-N (collectively, the "Insurance Policy") and Policy No. 207165-R (the "Reserve Policy" and collectively with the Insurance Policy, the "Policy") in respect of the $426,590,000 in aggregate principal amount of the City of Detroit, Michigan Water Supply System Revenue Senior Lien Bonds, consisting of $280,000,000 Water Supply System Revenue Senior Lien Bonds, Series 2006(A) and $146,590,000 Water Supply System Revenue Refunding Senior Lien Bonds, Series 2006(D) (the "Bonds") that:

(i) the information set forth under the caption "BOND INSURANCE – Financial Security Assurance Inc." in the official statement dated July 19, 2006, and under the caption "BOND INSURANCE – 2006 BONDS – Financial Security Assurance Inc." in the Amended and Restated Official Statement and Remarketing Circulars dated August 14, 2006, relating to the Bonds is true and correct,

(ii) Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii) the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv) each of the insurance premium for the Insurance Policy No. 207165-N of $1,569,643.13 and No. 207166-N of $869,355.53 and for the Reserve Policy of $45,000.00 (collectively, the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v) no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi) Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii) except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii) Financial Security does not expect that a claim will be made on the Policy,

(ix) the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x) Financial Security would not have issued the Insurance Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

Dated: August 16, 2006

CONFIDENTIAL INFORMATION
cschochc@winston.com

**DISCLOSURE, NO DEFAULT AND TAX CERTIFICATE OF FINANCIAL SECURITY ASSURANCE INC.**

The undersigned hereby certifies on behalf of Financial Security Assurance Inc. ("Financial Security"), in connection with the issuance by Financial Security of its Policy Nos. 207164-N and 207167-N (collectively, the "Insurance Policy") and Policy No. 207164-R (the "Reserve Policy" and collectively with the Insurance Policy, the "Policy") in respect of the $340,645,000 in aggregate principal amount of the City of Detroit, Michigan Water Supply System Revenue Second Lien Bonds, consisting of $120,000,000 Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B) and $220,645,000 Water Supply System Revenue Refunding Second Lien Bonds, Series 2006(C) (the "Bonds") that:

(i)   the information set forth under the caption "BOND INSURANCE – Financial Security Assurance Inc." in the official statement dated July 19, 2006, and under the caption "BOND INSURANCE – 2006 BONDS – Financial Security Assurance Inc." in the Amended and Restated Official Statement and Remarketing Circulars dated August 14, 2006, relating to the Bonds is true and correct,

(ii)  Financial Security is not currently in default nor has Financial Security ever been in default under any policy or obligation guaranteeing the payment of principal of or interest on an obligation,

(iii) the Policy is an unconditional and recourse obligation of Financial Security (enforceable by or on behalf of the holders of the Bonds) to pay the scheduled principal of and interest on the Bonds in the event of Nonpayment by the Issuer (as set forth in the Policy),

(iv)  each of the insurance premium for the Insurance Policy No. 207164-N of $1,134,073.13 and No. 207167-N of $1,739,359.03 and for the Reserve Policy of $175,000.00 (collectively, the "Premium") is a charge for the transfer of credit risk and was determined in arm's length negotiations and is required to be paid to Financial Security as a condition to the issuance of the Policy,

(v)   no portion of such Premium represents an indirect payment of costs of issuance, including rating agency fees, other than fees paid by Financial Security to maintain its ratings, which, together with all other overhead expenses of Financial Security, are taken into account in the formulation of its rate structure, or for the provision of additional services by us, nor the direct or indirect payment for a cost, risk or other element that is not customarily borne by insurers of tax-exempt bonds (in transactions in which the guarantor has no involvement other than as a guarantor),

(vi)  Financial Security is not providing any services in connection with the Bonds other than providing the Policy, and except for the Premium, Financial Security will not use any portion of the Bond proceeds,

(vii) except for payments under the Policy in the case of Nonpayment by the Issuer, there is no obligation to pay any amount of principal or interest on the Bonds by Financial Security,

(viii) Financial Security does not expect that a claim will be made on the Policy,

(ix)  the Issuer is not entitled to a refund of the premium for the Policy in the event a Bond is retired before the final maturity date, and

(x)   Financial Security would not have issued the Insurance Policy unless the authorizing or security agreement for the Bonds provided for a debt service reserve account or fund funded and maintained in an amount at least equal to, as of any particular date of computation, the reserve requirement as set forth in such agreement.

Financial Security makes no representation as to the nature of the interest to be paid on the Bonds or the treatment of the Policy under Section 1.148-4(f) of the Income Tax Regulations.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

Dated: August 16, 2006

CONFIDENTIAL INFORMATION
CSchoch@winston.com
Detroit/17-07-2013   12:09

RULE 15c2-12 CERTIFICATE OF BOND INSURER

The undersigned hereby certifies to Siebert Brandford Shank & Co., LLC, as representative of the underwriters (the "Underwriters"), on behalf of Financial Security Assurance Inc. ("Financial Security"), as issuer of municipal bond insurance policies (the "Policies") with respect to the City of Detroit, Michigan Water Supply System Revenue Senior Lien Bonds, consisting of Water Supply System Revenue Senior Lien Bonds, Series 2006(A) and Water Supply System Revenue Refunding Senior Lien Bonds, Series 2006(D) and City of Detroit, Michigan Water Supply System Revenue Second Lien Bonds, consisting of Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B) and Water Supply System Revenue Refunding Second Lien Bonds, Series 2006(C) (the "Bonds"):

(1)     that the preliminary official statement dated July 10, 2006 (the "Official Statement"), as to only the information set forth under the section entitled "BOND INSURANCE", was final as of its date within the meaning of Rule 15c2-12 under the Securities Exchange Act of 1934 ("Rule 15c2-12"), except for information permitted to be omitted therefrom by Rule 15c2-12; and

(2)     In giving this certificate Financial Security does not admit that it comes within the definition of Issuer of Municipal Securities for purposes of Rule 15c2-12.

FINANCIAL SECURITY ASSURANCE INC.

By: _____
Authorized Officer

Dated:  July 10, 2006

93278

# Exhibit B

CONFIDENTIAL INFORMATION



**FINANCIAL SECURITY ASSURANCE®**

**MUNICIPAL BOND DEBT SERVICE RESERVE INSURANCE POLICY**

ISSUER: City of Detroit, Michigan

Policy No.: 207164-R

BONDS: Water Supply System Revenue Second Lien Bonds, consisting of $120,000,000 Water Supply System Revenue Second Lien Bonds (Variable Rate Demand), Series 2006(B) and $220,645,000 Water Supply System Revenue Refunding Second Lien Bonds, Series 2006(C), and any other Second Lien Bonds issued pursuant to Bond Ordinance No. 01-05, adopted January 26, 2005, as amended and supplemented, or predecessor ordinances which were amended and restated by Bond Ordinance No. 01-05

Effective Date: August 16, 2006

Premium: $175,000.00

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") as set forth in the documentation (the "Bond Document") providing for the issuance of and securing the Bonds, for the benefit of the Owners, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

Financial Security will make payment as provided in this Policy to the Trustee or Paying Agent on the later of the Business Day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, in a form reasonably satisfactory to it. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Issuer, as appropriate, who may submit an amended Notice of Nonpayment. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy. Upon such payment, Financial Security shall become entitled to reimbursement of the amount so paid (together with interest and expenses) pursuant to the Insurance Agreement. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond and all insurance policies in respect of the Bond, to the extent of any payment by Financial Security hereunder.

The amount available under this Policy for payment shall not exceed the Policy Limit. The amount available at any particular time to be paid to the Trustee or Paying Agent under the terms of this Policy shall automatically be reduced by any payment under this Policy. However, after such payment, the amount available under this Policy shall be reinstated in full or in part, but only up to the Policy Limit, to the extent of the reimbursement of such payment (exclusive of interest and expenses) to Financial Security by or on behalf of the Issuer. Within three Business Days of such reimbursement, Financial Security shall provide the Trustee, the Paying Agent and the Issuer with notice of the reimbursement and reinstatement.

Payment under this Policy shall not be available with respect to (a) any Nonpayment that occurs prior to the Effective Date or after the Termination Date of this Policy or (b) Bonds that are not outstanding under the Bond Document. If the amount payable under this Policy is also payable under another insurance policy or surety bond insuring the Bonds, payment first shall be made under this Policy to the extent of the amount available under this Policy up to the Policy Limit. In no event shall Financial Security incur duplicate liability for the same amounts owing with respect to the Bonds that are covered under this Policy and any other insurance policy or surety bond that Financial Security has issued.

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings specified for all purposes of this Policy. "Business Day" means any day other than (a) a Saturday or Sunday or (b) a day on which banking institutions in the State of New York are, or the Insurer's Fiscal Agent is, authorized or required by law or executive order to remain closed. "Due for Payment" means (a) when referring to the principal of

CONFIDENTIAL INFORMATION
CSchoch@winston.com

a Bond, payable on the stated maturity date thereof or the date on which the same shall have been duly called for mandatory sinking fund redemption and does not refer to any earlier date on which payment is due by reason of call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Insurance Agreement" means the Insurance Agreement dated as of the effective date hereof in respect of this Policy, as the same may be amended or supplemented from time to time. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer that has been recovered from such Owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from the Issuer, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment of principal or interest thereunder, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds. "Policy Limit" shall be the dollar amount of the debt service reserve fund required to be maintained for the Bonds by the Bond Document from time to time (the "Debt Service Reserve Requirement"), but in no event shall the Policy Limit exceed $10,000,000. The Policy Limit shall automatically and irrevocably be reduced from time to time by the amount of each reduction in the Debt Service Reserve Requirement, as provided in the Bond Document. "Termination Date" means the earlier of July 1, 2036 and the date the Series 2006(B) and Series 2006(C) Bonds are no longer outstanding under the Bond Document.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
                              Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.          (212) 826-0100
31 West 52nd Street, New York, N.Y. 10019

Form 501B NY (8/96)

CONFIDENTIAL INFORMATION



FosterPortfolio@gmail.com
Detroit/17:07:2013 - 12:09

## FINANCIAL SECURITY ASSURANCE® — MUNICIPAL BOND DEBT SERVICE RESERVE INSURANCE POLICY

ISSUER: City of Detroit, Michigan

Policy No.: 207165-R

BONDS: Water Supply System Revenue Senior Lien Bonds,

Effective Date: August 16, 2006

consisting of $280,000,000 Water Supply System Revenue Senior Lien Bonds, Series 2006(A) and $146,590,000 Water Supply System Revenue Refunding Senior Lien Bonds, Series 2006(D), and any other Senior Lien Bonds issued pursuant to Bond Ordinance No. 01-05, adopted January 26, 2005, as amended and supplemented, or predecessor ordinances which were amended and restated by Bond Ordinance No. 01-05

Premium: $45,000.00

FINANCIAL SECURITY ASSURANCE INC. ("Financial Security"), for consideration received, hereby UNCONDITIONALLY AND IRREVOCABLY agrees to pay to the trustee (the "Trustee") or paying agent (the "Paying Agent") as set forth in the documentation (the "Bond Document") providing for the issuance of and securing the Bonds, for the benefit of the Owners, subject only to the terms of this Policy (which includes each endorsement hereto), that portion of the principal of and interest on the Bonds that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer.

Financial Security will make payment as provided in this Policy to the Trustee or Paying Agent on the later of the Business Day on which such principal and interest becomes Due for Payment or the Business Day next following the Business Day on which Financial Security shall have received Notice of Nonpayment, in a form reasonably satisfactory to it. A Notice of Nonpayment will be deemed received on a given Business Day if it is received prior to 1:00 p.m. (New York time) on such Business Day; otherwise, it will be deemed received on the next Business Day. If any Notice of Nonpayment received by Financial Security is incomplete, it shall be deemed not to have been received by Financial Security for purposes of the preceding sentence and Financial Security shall promptly so advise the Trustee, Paying Agent or Issuer, as appropriate, who may submit an amended Notice of Nonpayment. Payment by Financial Security to the Trustee or Paying Agent for the benefit of the Owners shall, to the extent thereof, discharge the obligation of Financial Security under this Policy. Upon such payment, Financial Security shall become entitled to reimbursement of the amount so paid (together with interest and expenses) pursuant to the Insurance Agreement. Upon disbursement in respect of a Bond, Financial Security shall become the owner of the Bond, any appurtenant coupon to the Bond or right to receipt of payment of principal of or interest on the Bond and shall be fully subrogated to the rights of the Owner, including the Owner's right to receive payments under the Bond and all insurance policies in respect of the Bond, to the extent of any payment by Financial Security hereunder.

The amount available under this Policy for payment shall not exceed the Policy Limit. The amount available at any particular time to be paid to the Trustee or Paying Agent under the terms of this Policy shall automatically be reduced by any payment under this Policy. However, after such payment, the amount available under this Policy shall be reinstated in full or in part, but only up to the Policy Limit, to the extent of the reimbursement of such payment (exclusive of interest and expenses) to Financial Security by or on behalf of the Issuer. Within three Business Days of such reimbursement, Financial Security shall provide the Trustee, the Paying Agent and the Issuer with notice of the reimbursement and reinstatement.

Payment under this Policy shall not be available with respect to (a) any Nonpayment that occurs prior to the Effective Date or after the Termination Date of this Policy or (b) Bonds that are not outstanding under the Bond Document. If the amount payable under this Policy is also payable under another insurance policy or surety bond insuring the Bonds, payment first shall be made under this Policy to the extent of the amount available under this Policy up to the Policy Limit. In no event shall Financial Security incur duplicate liability for the same amounts owing with respect to the Bonds that are covered under this Policy and any other insurance policy or surety bond that

Except to the extent expressly modified by an endorsement hereto, the following terms shall have the meanings

CONFIDENTIAL INFORMATION
CSchoch@winston.com

for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity unless Financial Security shall elect, in its sole discretion, to pay such principal due upon such acceleration together with any accrued interest to the date of acceleration and (b) when referring to interest on a Bond, payable on the stated date for payment of interest. "Insurance Agreement" means the insurance Agreement dated as of the effective date hereof in respect of this Policy, as the same may be amended or supplemented from time to time. "Nonpayment" means, in respect of a Bond, the failure of the Issuer to have provided sufficient funds to the Paying Agent for payment in full of all principal and interest that is Due for Payment on such Bond. "Nonpayment" shall also include, in respect of a Bond, any payment of principal or interest that is Due for Payment made to an Owner by or on behalf of the Issuer that has been recovered from such Owner pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction. "Notice" means telephonic or telecopied notice, subsequently confirmed in a signed writing, or written notice by registered or certified mail, from the Issuer, the Trustee or the Paying Agent to Financial Security which notice shall specify (a) the person or entity making the claim, (b) the Policy Number, (c) the claimed amount and (d) the date such claimed amount became Due for Payment. "Owner" means, in respect of a Bond, the person or entity who, at the time of Nonpayment, is entitled under the terms of such Bond to payment of principal or interest thereunder, except that "Owner" shall not include the Issuer or any person or entity whose direct or indirect obligation constitutes the underlying security for the Bonds. "Policy Limit" shall be the dollar amount of the debt service reserve fund required to be maintained for the Bonds by the Bond Document from time to time (the "Debt Service Reserve Requirement"), but in no event shall the Policy Limit exceed $3,000,000. The Policy Limit shall automatically and irrevocably be reduced from time to time by the amount of each reduction in the Debt Service Reserve Requirement, as provided in the Bond Document. "Termination Date" means the earlier of July 1, 2034 and the date the Series 2006(A) and Series 2006(D) Bonds are no longer outstanding under the Bond Document.

Financial Security may appoint a fiscal agent (the "Insurer's Fiscal Agent") for purposes of this Policy by giving written notice to the Trustee and the Paying Agent specifying the name and notice address of the Insurer's Fiscal Agent. From and after the date of receipt of such notice by the Trustee and the Paying Agent, (a) copies of all notices required to be delivered to Financial Security pursuant to this Policy shall be simultaneously delivered to the Insurer's Fiscal Agent and to Financial Security and shall not be deemed received until received by both and (b) all payments required to be made by Financial Security under this Policy may be made directly by Financial Security or by the Insurer's Fiscal Agent on behalf of Financial Security. The Insurer's Fiscal Agent is the agent of Financial Security only and the Insurer's Fiscal Agent shall in no event be liable to any Owner for any act of the Insurer's Fiscal Agent or any failure of Financial Security to deposit or cause to be deposited sufficient funds to make payments due under this Policy.

To the fullest extent permitted by applicable law, Financial Security agrees not to assert, and hereby waives, only for the benefit of each Owner, all rights (whether by counterclaim, setoff or otherwise) and defenses (including, without limitation, the defense of fraud), whether acquired by subrogation, assignment or otherwise, to the extent that such rights and defenses may be available to Financial Security to avoid payment of its obligations under this Policy in accordance with the express provisions of this Policy.

This Policy sets forth in full the undertaking of Financial Security, and shall not be modified, altered or affected by any other agreement or instrument, including any modification or amendment thereto. Except to the extent expressly modified by an endorsement hereto, (a) any premium paid in respect of this Policy is nonrefundable for any reason whatsoever, including payment, or provision being made for payment, of the Bonds prior to maturity and (b) this Policy may not be canceled or revoked. THIS POLICY IS NOT COVERED BY THE PROPERTY/CASUALTY INSURANCE SECURITY FUND SPECIFIED IN ARTICLE 76 OF THE NEW YORK INSURANCE LAW.

In witness whereof, FINANCIAL SECURITY ASSURANCE INC. has caused this Policy to be executed on its behalf by its Authorized Officer.

FINANCIAL SECURITY ASSURANCE INC.

By _____
Authorized Officer

A subsidiary of Financial Security Assurance Holdings Ltd.
31 West 52nd Street, New York, N.Y. 10019

(212) 826-0100

Form 501B NY (8/96)