# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | : Chapter 9 |
|  | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13-53846 |
|  | : |
| Debtor. | : Hon. Steven W. Rhodes |
|  | : |

## NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION'S NOTICE OF RIGHT TO VOTE THE NATIONAL DWSD BOND CLAIMS

National Public Finance Guarantee Corporation ("National"), by and through its undersigned attorneys, and pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "Solicitation Procedures Order"),[1] respectfully submits this Notice of Right to Vote the National DWSD Bond Claims (the "Voting Notice"), and in support hereof, states as follows:

---

[1] As amended by the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 4202].

1

National asserts that it is entitled to vote the claims (the "National DWSD Bond Claims") in each of the following Class 1A classes, each representing a series of impaired DWSD Bonds[2] which National insures (the "National DWSD Bonds"):

| Series | Voting Class (1A-[ ]) |
| --- | --- |
| Water 2003D | 44-46 |
| Water 2004A | 50-57 |
| Water 2004B | 61, 63, 65-70 |
| Sewer 1998A | 198-205 |
| Sewer 1998B | 208-215 |
| Sewer 1999A | 218-223 |
| Sewer 2001B | 224 |
| Sewer 2001C(2) | 240-241 |
| Sewer 2005B | 295-296 |
| Sewer 2006B | 309-311 |
| Sewer 2006C | 317-319 |

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014) [Doc. No. 4392] (the "Plan").

As set forth more fully in the brief in support of this Voting Notice, attached hereto as Exhibit 3, National is the sole party authorized (i) to vote the National DWSD Bond Claims; and (ii) to make the election for the National DWSD Bond Claims contemplated by Article II.B.3.a.ii.B of the Plan.

National's voting rights derive from (i) the Bond Documents establishing that National is the "sole holder" of the National DWSD Bonds; and (ii) National's contractual and equitable subrogation rights which allow National to step into the shoes of the DWSD Bondholders holding National DWSD Bonds and exercise all of their rights, including the right to vote.[3]  Moreover, the Bond Documents provide that National's consent is required to amend the Bond Ordinances to reduce the interest rates on the National DWSD Bonds.  Any vote on the Plan or election of New Existing Rate Bonds, should the Plan be confirmed, will result in an amendment to the Bond Ordinances for which National's required consent is not provided.

---

[3] Section 1126(c) of the Bankruptcy Code states that a class of claims accepts a plan if creditors "that hold at least two-thirds in amount and more than one-half in number" accept the plan.  11 U.S.C. § 1126(c).  As National is the sole party authorized to vote the National DWSD Bond Claims, National's vote shall determine whether each of the classes of National DWSD Bond Claims accepts or rejects the Plan.

3

2786889.1

Therefore, National seeks an order, substantially in the form attached hereto as Exhibit 1, (i) ruling that National is the sole party authorized to vote the National DWSD Bond Claims, and (ii) directing the City to disregard any votes submitted on the National DWSD Bond Claims by any party other than National.

Dated: May 23, 2014

**SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance Guarantee Corp.*

4

## <u>EXHIBITS</u>

**Exhibit 1**        Proposed Order

**Exhibit 2**        Notice

**Exhibit 3**        Brief in Support

**Exhibit 4**        Certificate of Service

**Exhibit 5**        Affidavits [None]

**Exhibit 6**        Exhibits

- Exhibit 6A – List of National DWSD Bonds

- Exhibit 6B – Comprehensive Chart of National DWSD Bonds, Relevant Provisions and Bond Documents

- Exhibit 6C – "Sole Holder" Provisions

- Exhibit 6D – "Subrogation" Provisions

- Exhibit 6E – "Consent" Provisions

# Exhibit 1

# Proposed Order

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 9 |
| | : | |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| | : | |
| Debtor. | : | Hon. Steven W. Rhodes |
| | : | |

## ORDER AUTHORIZING NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO VOTE THE NATIONAL DWSD BOND CLAIMS

This matter coming before the Court on *National Public Finance Guarantee Corporation's Notice of Asserted Right to Vote the National DWSD Bond Claims* (the "Voting Notice"), filed by National Public Finance Guarantee Corporation ("National"); and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1.      National is the sole party authorized to vote the National DWSD Bond Claims,[1] as set forth in the Voting Notice.

2.      National is the sole party authorized to make the election for the National DWSD Bond Claims contemplated by Article II.B.3.a.ii.B of the Plan.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Voting Notice.

Exhibit 1-1

2786889.1

3.     The City shall disregard any votes submitted on the National DWSD

Bond Claims by any party other than National.

**Exhibit 2**

**Notice**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | : Chapter 9 |
|  | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13-53846 |
|  | : |
| Debtor. | : Hon. Steven W. Rhodes |
|  | : |

## <u>NOTICE AND OPPORTUNITY TO OBJECT</u>

National Public Finance Guarantee Corporation ("<u>National</u>"), by and through its respective undersigned attorneys, has filed its *Notice of Right to Vote the National DWSD Bond Claims* (the "<u>Notice</u>") pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "<u>Solicitation Procedures Order</u>").[1]

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

---

[1] As amended by the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 4202].

Exhibit 2-1

Pursuant to ¶ 9.c of the Solicitation Procedures Order, the following parties, or any representative thereof, are permitted to file and serve on the ECF noticing list a brief in response ("Response") to the Notice:

(i)     any holder affected by the Notice,

(ii)    U.S. Bank National Association, in its capacity as trustee for those certain bonds issued by the City for the Detroit Water and Sewer Department,

(iii)   those certain holders of Detroit water and sewer revenue bonds represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. and Kramer Levin Naftalis & Frankel, LLP, and

(iv)    Wilmington Trust, National Association, as Successor Trustee for the Detroit Retirement Systems Funding Trust 2005 and the Detroit Retirement Systems Funding Trust 2006.

All Responses must be filed with the Court on or before **June 24, 2014** at:

United States Bankruptcy Court<br>
Eastern District of Michigan<br>
211 W. Fort Street, Suite 2100<br>
Detroit, MI 48226

If you mail your Response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

Exhibit 2-2

If a Response is timely filed and served, a hearing on the Notice will be held on **July 14, 2014** at which the Court shall hear and determine any disputes arising in connection with the Notice.

**If you or your attorney do not take these steps, the Court will grant the relief sought in the Notice.**

Dated:  May 23, 2014        **SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:  (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By:  /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance*
*Guarantee Corp.*

**Exhibit 3**

**Brief**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

|  |  |  |
|---|---|---|
| In re: | : | Chapter 9 |
|  | : |  |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
|  | : |  |
| Debtor. | : | Hon. Steven W. Rhodes |
|  | : |  |

---

## NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION'S BRIEF IN SUPPORT OF NOTICE OF RIGHT TO VOTE THE NATIONAL DWSD BOND CLAIMS

National Public Finance Guarantee Corporation ("National"), by and through its undersigned attorneys, and pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "Solicitation Procedures Order"),[1] respectfully submits this Brief (the "Voting Brief") in Support of its Notice of Right to Vote the National DWSD Bond Claims (the "Voting Notice"), and in support hereof, states as follows:

---

[1] As amended by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Doc. No. 4202].

Exhibit 3-1

## PRELIMINARY STATEMENT

1.    National is a monoline insurer that provides financial guarantees to the U.S. public finance market. National insures approximately $2.4 billion in aggregate principal amount of outstanding bonds issued by the City[2] and City authorities, including certain series of DWSD Bonds (collectively, the "National DWSD Bonds").[3] The Plan proposes to impair the claims arising out of the National DWSD Bonds (collectively, the "National DWSD Bond Claims").

2.    The City issued each series of National DWSD Bonds and related Bond Documents[4] pursuant to the Revenue Bond Act of 1933, Act No. 94, Public Acts of Michigan, 1933, as amended, an amended and restated ordinance of the City Council,[5] a bond resolution of the City Council and a sale order of the Finance

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014) [Doc. No. 4392] (the "Plan").

[3] The specific National DWSD Bonds are set forth in Exhibit 6A to the Voting Notice.

[4] For purposes of this Voting Brief, the "Bond Documents" shall only refer to the DWSD Bond Documents related to the National DWSD Bonds.

[5] The City issued the DWSD Water Bonds pursuant to Ordinance No. 30-2, as amended and restated by Ordinance No. 01-05 (as so amended and restated, the "Water Ordinance"). The City issued the DWSD Sewer Bonds pursuant to Ordinance No. 27-86, as amended and restated by Ordinance 18-01 (as so amended and restated, the "Sewer Ordinance," and together with the Water Ordinance, the "Bond Ordinances"). The relevant portions of the Water Ordinance and Sewer Ordinance discussed in this Objection are identical in substance.

Director of the City. The Bond Ordinances, sale orders, and other Bond Documents set forth the various rights of, among other parties, the Bondholders[6] and National.[7]

3. As a bond insurer, National is obligated to pay the Bondholders the full principal and interest when due, as required by the applicable Bond Insurance Policies (the "National Policies"),[8] to the extent the City fails to meet its obligations under the Bond Documents. In light of National's provision of bond insurance, confirmation of the Plan will have no economic effect on the Bondholders. Instead, National will suffer the financial harm resulting from the substantial impairment of the National DWSD Bond Claims reflected in the City's proposed Plan and is the true economic party in interest with respect to those claims.

---

[6] For purposes of this Voting Brief, the "Bondholders" shall refer to those holders of National DWSD Bonds.

[7] The Bond Documents are voluminous, and therefore are not attached. Relevant language from the Bond Documents is contained in the exhibits hereto. U.S. Bank National Association, as trustee for the DWSD Bondholders, has made the Bond Documents available at the following website: <http://detroitwaterandsewerbonds.com/>. In addition, National will respond to reasonable requests to provide copies of relevant Bond Documents.

[8] National's predecessors in interest issued the following insurance policies covering the National DWSD Bonds: 402281 (Water 2003D); 43906 (Water 2004A); 43907 (Water 2004B); 28019(1) (Sewer 1998A); 28019(2) (Sewer 1998B); FG99010978 (Sewer 1999A); FG01012179 (Sewer 2001B); FG0102180 (Sewer 2001C(2)); 45904(2) (Sewer 2005B); FG06010307 (Sewer 2006B);

4. National is the only party entitled to vote[9] the National DWSD Bond Claims for three reasons.[10] First, as discussed in more detail in Section I below, the Bond Documents provide that National is the sole holder of the National DWSD Bonds. Second, as discussed in Section II below, National's contractual and equitable subrogation rights permit National to step into the shoes of the Bondholders and exercise all of the Bondholders' rights, including the right to vote. Third, as discussed in Section III below, the Bondholders are prohibited from voting without National's consent.

5. For these reasons, National seeks an order, substantially in the form attached as Exhibit 1 to the Voting Notice, that (i) provides that National is the sole party authorized to vote the National DWSD Bond Claims, and (ii) directs the City to disregard any votes submitted on the National DWSD Bond Claims by any party other than National.

---

FG06010326 (Sewer 2006C). National currently insures the National DWSD Bonds.

[9] For the sake of simplicity, this Voting Brief will refer only to the right to vote to accept or reject the Plan. However, National's voting rights necessarily encompass the right to make the election contemplated by Article II.B.3.a.ii.B of the Plan.

[10] Exhibit 6B to this Voting Brief contains a comprehensive chart of the National DWSD Bonds, which includes a notation indicating whether provisions regarding National's "sole holder" rights, subrogation rights, or consent rights are present, and an identification of the relevant Bond Documents.

## ARGUMENT

### I.  National Is The Sole Holder Of The National DWSD Bonds For Purposes Of Voting.

6.  Section 1126(a) of the Bankruptcy Code, incorporated into chapter 9 cases by section 901(a), provides that a "holder of a claim" may vote to accept or reject the plan.  11 U.S.C. §§ 901(a); 1126(a).  In the context of a security such as the National DWSD Bonds, the "holder of record," or an entity that is designated as the holder of record, is the sole party entitled to accept or reject a plan.  Fed. R. Bankr. P. 3003(d), 3018(a).

7.  The Bond Documents deem National to be the sole holder of the National DWSD Bonds.[11]  *See* Exhibits 6B, 6C.[12]  Although the operative language varies, the Bond Documents specifically provide that National's status as the sole holder of the National DWSD Bonds includes the right to vote the National DWSD Bond Claims, either through explicit voting language, or through the exercise of broad remedial rights.

---

[11] Although the Bond Documents related to Water 2003D and Sewer 1999A do not provide National with "sole holder" status, National is entitled to vote the National DWSD Bond Claims for these series for the reasons set forth in Section II below.

[12] Exhibit 6C to this Voting Brief contains excerpts of the relevant "sole holder" provisions from the Bond Documents.

8.     With respect to Sewer 1998A and Sewer 1998B, section 5.2(b) of the relevant sale order authorizing the issuance of such National DWSD Bonds provides that:

> [National] *shall be deemed to be the holder of the Series 1998 Bonds for the purpose of exercising any voting right or privilege*, giving any consent or direction or taking any other action that the holders of the Series 1998 Bonds are entitled to take.

Exhibit 6C-2 (emphasis added).  Therefore, National is specifically "deemed" the holder of these series of National DWSD Bonds and is expressly authorized to vote the National DWSD Bond Claims.

9.     With respect to Water 2004A and Water 2004B, the applicable sale orders provide that "for purposes of the Related Documents [which include the Bond Documents], [National] will be deemed 100% Owner of all Series 2004 Bonds it insures."  Exhibit 6C-1.  The Bond Documents related to Sewer 2001B, Sewer 2001(C)(2), Sewer 2006B, and Sewer 2006C designate National as the sole holder of the bonds "[f]or all purposes of the [Sewer] Ordinance."  Exhibit 6C-2, 6C-3.  Similarly, the applicable sale order authorizing the issuance of Sewer 2005B states that "[National] shall be considered the sole holder of the Series 2005(B) for purposes of Section 7 of the [Sewer] Ordinance."  Exhibit 6C-3.

10.     Section 7 of the Bond Ordinances specifically authorizes certain holders (including National by virtue of the "sole holder" language described above) to take actions to "protect and enforce the statutory lien upon Pledged

Assets" and to take actions to "enforce and compel performance of all duties of the officers of the City." Bond Ordinances § 7(a). A fundamental aspect of these broad remedial rights to enforce and compel the City's full performance under the Bond Documents is the right to vote to accept or reject the Plan that currently proposes to impair the National DWSD Bond Claims. These provisions grant National the rights of a sole holder of the National DWSD Bonds for purposes of exercising the extensive remedial rights under the Bond Ordinances which encompass the right to vote to accept or reject the Plan.

11.     Recognition of National as the sole holder of the National DWSD Bonds is consistent with National's position as the true economic party in interest. National's provision of insurance and its obligation to pay full principal and interest on the National DWSD Bonds means that National has the most significant direct financial stake in the outcome. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 244 (3d Cir. 2004) (stating that the Bankruptcy Code provides voting rights to "ensure[] the terms of the reorganization are monitored by those who have a financial stake in its outcome").

12.     This economic reality is underscored by the clear and unambiguous language of the Bond Documents. By deeming National to be "the holder," the "sole holder," and the "100% Owner" of the National DWSD Bonds, the Bond Documents confirm that National alone is "entitle[d] . . . to be treated as the record

holder" for purposes of voting to accept or reject the Plan. Fed. R. Bankr. P. 3003(d) ("For the purposes of Rule[] . . . 3018 . . . an entity who is not the record holder of a security may file a statement setting forth facts which entitle that entity to be treated as the record holder."). National is the sole holder of the DWSD Bonds with the explicit and implicit right to vote the National DWSD Bond Claims, and any votes submitted by the Bondholders with respect to these claims should be disregarded.

## II. National Is Entitled To Vote The National DWSD Bond Claims By Virtue Of Its Contractual And Equitable Subrogation Rights.

13.     In addition to National's right to vote as the sole holder of the National DWSD Bonds, National is also entitled to vote the National DWSD Bond Claims through both its contractual and equitable subrogation rights.[13]     Both contractual and equitable subrogation permit National, as a bond insurer, to step into the shoes of the insured Bondholders and assume *all* of the Bondholders' rights. *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 521 (1991) (stating that subrogation involves "the substitution of one person in the place of another with reference to a lawful claim or right"); *Avondale Gateway Ctr. Entitlement, LLC v. Nat'l Bank of Ariz. (In re Avondale Gateway Ctr. Entitlement, LLC)*, 2011 WL 1376997, at *3 (D. Ariz. April 12, 2011) (holding that under applicable state law, a

_____

[13] Exhibit 6D to this Voting Brief contains excerpts of the relevant subrogation provisions from the Bond Documents.

subrogee "steps into the shoes" of the subrogated party "with respect to the claim against [the debtor] and acquires all of [the subrogated party's] rights with respect to that claim").

14. With respect to contractual subrogation, parties are free to contractually define what triggers an insurer's subrogation rights. *See Avondale*, 2011 WL 1376997, at *4 (holding that subrogation rights existed where the relevant document did "not contractually condition subrogation on payment of [the subrogor's] claim"). With respect to equitable subrogation, courts have recognized that, in certain circumstances, equity demands that subrogation rights be afforded prior to the insurer making a payment. *See Fid. & Cas. Co. of N.Y. v. First Nat'l Bank in Fort Lee*, 397 F.Supp. 587, 589-90 (D.N.J. 1975). Because National's obligation to pay the Bondholders will be triggered as a result of the Plan, National's contractual and equitable subrogation rights are ripe now.

15. National's subrogation rights, which include the right to vote on a plan, are reflected throughout the Bond Documents. *See* Exhibit 6D; *Avondale*, 2011 WL 1376997, at *3 (permitting subrogee to vote on a plan because the "right to vote on [the debtor's] plan flows from the [subrogated party's] claim in bankruptcy"). With respect to certain series of the National DWSD Bonds, National's subrogation rights were contractually triggered by the City's bankruptcy petition. Moreover, with respect to all of the National DWSD Bonds, the

economic realities of this case make it appropriate for National to be equitably subrogated to the Bondholders' rights at this stage.

**A. National Was Contractually Subrogated To All Of The Bondholders' Rights Upon The City's Bankruptcy Petition.**

16.     In connection with the issuance of many of the series of National DWSD Bonds, the City and National entered into agreements[14] that authorize National to exercise and enforce all rights and remedies, including subrogation rights, *upon the filing of the City's bankruptcy*.  In doing so, the City contractually provided that National's subrogation rights in relation to the Bondholders could be triggered upon the event of default caused by the City's bankruptcy filing.

---

[14] The relevant Bond Documents were actually executed by either MBIA Insurance Corp. or Federal Guaranty Insurance Corporation ("FGIC").  On February 17, 2009, MBIA established MBIA Insurance Corp. of Illinois, to which MBIA ceded, effective as of January 1, 2009, all of MBIA's insurance policies in effect as of January 1, 2009 and issued or reinsured by MBIA prior to such date that provide insurance against financial loss by reason of nonpayment of obligations arising under issues sold or created by issuers characterized by MBIA as United States public finance business, including, without limitation, all of MBIA's rights and obligations under the National Policies.  MBIA Insurance Corp. of Illinois is now known as National.

Pursuant to that certain Novation Agreement, dated as of September 14, 2012 (the "Novation Agreement") by and between FGIC and National, FGIC agreed to transfer by novation to National certain of the National Policies relating to Sewer 1999A, Sewer 2001B, Sewer 2001C(2), Sewer 2006B, and Sewer 2006C. National is therefore the insurer with respect to these series of National DWSD Bonds.

17. Section 6.01(b) of the applicable reimbursement agreements (which, among other things, describe the City's obligation to reimburse National for various expenditures) for Water 2003D, Water 2004A, Water 2004B, Sewer 1998A, Sewer 1998B, and section 4.01(e) of the applicable financial guaranty agreement for Sewer 2005B, each define an event of default as including the City's filing of a bankruptcy petition. *See* Exhibits 6B, 6D. These agreements broadly authorize National to exercise its subrogation rights, not just with respect to the agreements themselves, but with respect to all aspects of the National DWSD Bonds and Bond Documents. Under section 6.02 of the reimbursement agreements, and upon the City's bankruptcy filing, National was immediately entitled to:

> (a) [e]xercise its rights of subrogation pursuant to Article V hereof;
> (b) [e]xercise any rights of subrogation it may have under the Insurance Policies; (c) [t]ake whatever other action at law or in equity as may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement to enforce performance and observance of any obligation, agreement or covenant of the [City] under this Agreement or under any Related Document; or (e) [p]ursue any remedy it may have under any of the Related Documents.

Exhibit 6D-2, 6D-4, 6D-6. Similarly, section 4.02 of the financial guaranty agreement states that upon the occurrence of an event of default, including the City's bankruptcy filing, National was immediately entitled to:

take whatever action at law or in equity may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement or to enforce performance of any obligation of the [City] to [National] under the Documents [defined to include the Bond Documents] or any related instrument . . . .

Exhibit 6D-10.

18.     Similar to the "sole holder" provisions described above, these provisions provide an alternative avenue for National to exercise its own remedies and all available remedies of the Bondholders to seek to compel the City to fully perform its obligations under the National DWSD Bonds.  By triggering National's subrogation rights on an event of default unrelated to National's payment of a claim under the National Policies, the City agreed that National would be entitled to step into the Bondholders' shoes and exercise all of their rights, including the right to vote.  *See Avondale*, 2011 WL 1376997, at *3 (holding that party who was contractually subrogated to the rights of another creditor prior to payment succeeded to all rights of the subrogated party, including the right to vote on a plan).

### B.     National Is Equitably Subrogated To All Of The Bondholders' Rights By Virtue Of The Plan's Treatment Of The National DWSD Bond Claims.

19.     Moreover, and with respect to all of the National DWSD Bonds, principles of equity compel recognition of National's equitable subrogation rights at this time.  The City's intentions with respect to the National DWSD Bond

Exhibit 3-12

Claims are evident now, and National should be afforded the right to vote on the Plan to protect its economic interests and the economic interests of the Bondholders.

20.     National, as a bond insurer, is entitled to equitable subrogation where it takes action to resolve the underlying primary obligation (*i.e.*, the City's obligation to the Bondholders) and the insured (*i.e.*, the Bondholders) has been or will be made whole. *Fidelity & Casualty*, 397 F.Supp. at 589-90 (granting subrogation rights to insurer when "[t]he insured ha[d] been made whole and it would be an unnecessary legal fiction to force [the insured instead of the insurer] to proceed [against the third-party wrongdoer] as party plaintiff . . ."). At its core, equitable subrogation is a "flexible and elastic equitable doctrine," *Atlanta*, 438 Mich. at 521, that "ought to be liberally applied to the protection of those who are its natural beneficiaries," *Fed. Ins. Co. v. Arthur Andersen.*, 75 N.Y.2d 366, 373 (N.Y. 1990).

21.     In *Fidelity & Casualty*, the court held that an insurer was entitled to subrogation rights even though it had never, and might never, make any payments in connection with the insured's claim. 397 F.Supp. at 589-90. Under the applicable insurance policy, upon a loss related to certain bonds, the insurer was obligated to either pay the insured party cash, or provide the insured party with replacement bonds. *Id.* at 589. The insured party subsequently had its bonds

stolen by a third party and the insurer, consistent with its policy, provided the insured party with replacement bonds in lieu of cash. *Id.* To procure these replacement bonds, the insurer entered into an agreement with the bond issuer providing that the insurer would not have to pay the issuer for the replacement bonds unless and until the stolen bonds were presented for redemption by a third-party bona fide purchaser. *Id.* Therefore, the bond issuer would only be liable to pay to redeem one set of bonds, and the insurer's payment on the stolen bonds was conditioned on such bonds actually being presented. *Id.* The court held that, despite the fact that the insurer had not suffered an immediate pecuniary loss related to the insured's claim, it was equitable to give the insurer subrogation rights to proceed against the party that allegedly stole the original bonds. *Id.* at 590. The court reasoned that subrogation was appropriate because it would be an "unnecessary legal fiction" to force the insured to proceed against the third party when the insurer had a "superior right to proceed" by virtue of its potential future liability. *Id.* at 591.

22.     Just as in *Fidelity*, National should be equitably subrogated to the Bondholders' rights prior to making a payment under the National Policies to ensure that National—the party with the "superior right" by virtue of its future liability—has the ability to enforce that right. *See id.*; *see also Kumar v. Am. Transit Ins. Co.*, 49 A.D.3d. 1353, 1355 (N.Y. App. Div. 2008) ("We reject the

Exhibit 3-14

contention . . . that the principle of equitable subrogation does not apply because [the insurer] has not yet paid the loss of its insured."); *Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 13 A.D.3d 172, 175 (N.Y. App. Div. 2004) (holding that the "contention that Allianz is not Dunlop's equitable subrogee because Allianz has not yet paid anything on the underlying judgment is unavailing. Contingent claims by subrogees have been recognized, especially where it would further judicial economy."); *Fed. Sav. & Loan Ins. Corp. v. Aetna Cas. & Sur. Co.*, 696 F. Supp. 1190, 1195 (E.D. Tenn. 1988) (holding that federal law permits an insurer to "bring an action against third-parties who may be liable to the insurer for monies the insurer may have to pay under the bond, even if no money has yet been paid").

23. Confirmation of the Plan constitutes a judgment that will lock in the treatment for all of the National DWSD Bond Claims. *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) ("As a general rule, the '[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.'"). Pursuant to the Plan, the Bondholders will not receive full payment from the City under the existing terms of the National DWSD Bonds, but can be made whole under the National Policies.[15] Entry of the Confirmation Order eliminates any

---

[15] Under the Plan, the City reserves the right to pay the National DWSD Bond Claims in full in cash. Even if the City makes this cash payment, the National DWSD Bond Claims are being impaired by the stripping of the call protection associated with the National DWSD Bonds.

possible contingency to National's payment obligations.  *See Meredith v. The Ionian Trader*, 279 F.2d 471, 474 (2d Cir. 1960) (holding that to be entitled to subrogation rights, "one of the conditions which the insurer must fulfill is payment, *or sufferance of a judgment requiring payment,* of the obligation owed the insured") (emphasis added); *cf. In re Suprema Specialties, Inc.*, 2006 WL 2583678, at *9 (Bankr. S.D.N.Y. June 8, 2006)  (holding subrogation rights were contingent where insurer's liability was not "inevitable under all circumstances" regardless of whether alternative sources of recovery were "more theoretical than real").

24.     Given the economic reality that confirmation of the Plan guarantees that National will be subjected to claims under the National Policies, it is appropriate for National, the party with the most significant direct financial stake in the outcome of the Plan, to be equitably subrogated to the Bondholders' rights to vote the National DWSD Bond Claims.  Denying National the right to vote merely because it has yet to make a payment under the National Policies with respect to scheduled principal and interest on the National DWSD Bonds—when such scheduled  payments are guaranteed to be required if the Plan is confirmed—would unjustly elevate form over substance.[16]

_____

[16] Moreover, there is no risk that National's vote will prejudice the Bondholders; National is interested in maximizing payments to the Bondholders to minimize the amounts that it will be obligated to pay under the National Policies.  National, as

## III. The Bondholders May Not Vote The National DWSD Bond Claims Without National's Consent And Therefore Their Votes Should Be Disregarded.

25.     Finally, with respect to all the National DWSD Bonds, individual Bondholders lack the authority to vote, due to their inability to amend the Bond Ordinances without National's consent.[17]

26.     Courts have refused to allow creditors to participate in a bankruptcy case, including by voting on a plan, where those actions violated applicable contractual arrangements.   For example, in *Blue Ridge Investors, II, LP v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC)*, 362 B.R. 43 (Bankr. N.D. Ga. 2006), an intercreditor agreement provided that a junior creditor agreed to subordinate its claims and liens, and further agreed to refrain from taking certain actions until the senior creditor had been paid in full.  The bankruptcy court held that a junior creditor's vote on the plan was invalid because it contradicted these express contractual provisions.  *Id.* at 47; *see also In re Am. Roads LLC*, 496 B.R. 727, 730-31 (Bankr. S.D.N.Y. 2013) (holding that bondholders waived their right to appear and participate in bankruptcy case where the bondholders' insurer, by virtue of certain "no action" provisions, was authorized to control enforcement of

the party holding the most significant direct financial stake in the outcome of the City's treatment of the National DWSD Bond Claims, is the party entitled to vote.

[17] Exhibit 6E to this Voting Brief contains excerpts of the relevant consent provisions from the Bond Documents.

remedies upon an event of default, was appointed as "sole holder" of the bonds for all purposes under the documents, and had to consent to any enforcement action commenced by the bondholders).

27.  The Bond Ordinances provide that the City may not amend the Bond Ordinances without consent if the amendment would "extend the fixed maturity of such Security *or reduce the rate of interest thereon* or extend the time of payment of interest, or reduce the amount of the principal or redemption premium thereof, or reduce or extend the time for payment of any premium payable on the redemption thereof."  Sewer Ordinance § 23(B)(a)(2); Water Ordinance § 22(B)(1)(ii)(a) (emphasis added).

28.  Under the Plan, Bondholders will receive either New DWSD Bonds with reduced interest rates as set forth in the Interest Rate Reset Chart or New Existing Rate Bonds stripped of all existing call protections. Plan Art. II.B.3.a.ii.B.  A Bondholder's vote to reject the Plan will result in the Bondholder receiving New DWSD Bonds and the related interest rate reduction.  A Bondholder's vote to accept the Plan, without making the election to receive New Existing Rate Bonds, will result in the Bondholder receiving New DWSD Bonds and the related interest rate reduction.  Finally, regardless of whether a Bondholder votes to accept or reject the Plan, if the Bondholder elects to receive New Existing Rate Bonds and the Bondholder's class accepts the Plan, the Bondholder may lose

additional interest payments by virtue of the stripping of existing call protections. Thus, any vote or election by a Bondholder would result in a modification of the Bond Ordinances if the Plan is confirmed, which modification is only permissible with National's consent. National does not consent. As a result, the City should disregard any votes on the National DWSD Bond Claims from any entity other than National.

## CONCLUSION

29. Based on the foregoing, National is the appropriate party to vote the National DWSD Bond Claims because (i) it is the sole holder of the National DWSD Bonds for purposes of exercising remedies, enforcement actions, and voting; and (ii) it has contractual and equitable subrogation rights that are exercisable now, which include National's right to vote the National DWSD Bond Claims. Moreover, any votes submitted by any party other than National should be disregarded because the individual Bondholders may not vote to reduce the interest rate on the National DWSD Bonds without National's consent, which consent is not being provided.[18]

---

[18] Section 1126(c) of the Bankruptcy Code states that a class of claims accepts a plan if creditors "that hold at least two-thirds in amount and more than one-half in number" accept the plan. 11 U.S.C. § 1126(c). As National is the sole party authorized to vote the National DWSD Bond Claims, National's vote shall determine whether each of the classes of National DWSD Bond Claims accepts or rejects the Plan.

Exhibit 3-19

Dated: May 23, 2014

**SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance
Guarantee Corp.*

**Exhibit 4**

**Certificate of Service**

**Exhibit 5**

**Affidavits [None]**

## Exhibit 6A

## National DWSD Bonds

| Series | Voting Class (1A-[ ]) |
|--------|----------------------|
| Water 2003D | 44-46 |
| Water 2004A | 50-57 |
| Water 2004B | 61, 63, 65-70 |
| Sewer 1998A | 198-205 |
| Sewer 1998B | 208-215 |
| Sewer 1999A | 218-223 |
| Sewer 2001B | 224 |
| Sewer 2001C(2) | 240-241 |
| Sewer 2005B | 295-296 |
| Sewer 2006B | 309-311 |
| Sewer 2006C | 317-319 |

Exhibit 6A-1

**Exhibit 6B**

**National DWSD Bonds – Relevant Documents**

| Series | Voting Class (1A-[ ]) | Sole Holder | | Subrogation | | Consent | |
|---|---|---|---|---|---|---|---|
| | | ✓ | *Documents* | ✓ | *Documents* | ✓ | *Documents* |
| **Water 2003D** | 44-46 | | N/A | ✓ | National Policy; Sale Order § 702(F)(1); 2003 Reimbursement Agreement §§ 6.01(b), 6.02. | ✓ | 2003 Reimbursement Agreement § 6.01(f); Variable Rate Demand Bonds Supplement and Agreement § 11.02(f); Standby Bond Purchase Agreement § 7.2(b). |

| Series | Voting Class (1A-[ ]) | Sole Holder | | Subrogation | | Consent | |
|---|---|---|---|---|---|---|---|
| | | ✓ | *Documents* | ✓ | *Documents* | ✓ | *Documents* |
| **Water 2004A** | 50-57 | ✓ | 2004 Reimbursement Agreement § II(r); Sale Order § 703(H). | ✓ | National Policy; Sale Order § 702(F)(1); 2004 Reimbursement Agreement §§ 6.01(b), 6.02. | ✓ | 2004 Reimbursement Agreement §§ II(*l*); 6.01(f). |
| **Water 2004B** | 61, 63, 65-70 | ✓ | 2004 Reimbursement Agreement § II(r); Sale Order § 703(H). | ✓ | National Policy; Sale Order § 702(F); 2004 Reimbursement Agreement §§ 6.01(b), 6.02. | ✓ | 2004 Reimbursement Agreement §§ II(*l*); 6.01(f). |

Exhibit 6B-2

2786889.1

| Series | Voting Class (1A-[ ]) | Sole Holder | | Subrogation | | Consent | |
|---|---|---|---|---|---|---|---|
| | | ✓ | *Documents* | ✓ | *Documents* | ✓ | *Documents* |
| **Sewer 1998A** | 198-205 | ✓ | Sale Order § 5.2(b). | ✓ | National Policy; 1998 Reimbursement Agreement §§ V, 6.01(b), 6.02; Sale Order § 5.1(f)(i). | ✓ | 1998 Reimbursement Agreement § 6.01(f); Sale Order § 5.2(b). |
| **Sewer 1998B** | 208-215 | ✓ | Sale Order § 5.2(b). | ✓ | National Policy; 1998 Reimbursement Agreement §§ V, 6.01(b), 6.02. | ✓ | 1998 Reimbursement Agreement § 6.01(f); Sale Order § 5.2(b). |
| **Sewer 1999A** | 218-223 | | N/A | ✓ | National Policy | | N/A |
| **Sewer 2001B** | 224 | ✓ | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-103. | ✓ | National Policy | ✓ | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-2.02(b). |

Exhibit 6B-3

| Series | Voting Class (1A-[ ]) | Sole Holder | | Subrogation | | Consent | |
|---|---|:---:|---|:---:|---|:---:|---|
| | | ✓ | *Documents* | ✓ | *Documents* | ✓ | *Documents* |
| **Sewer 2001C(2)** | 240-241 | ✓ | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-103. | ✓ | National Policy | ✓ | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-2.02(b). |
| **Sewer 2005B** | 295-296 | ✓ | Sale Order § 503(J). | ✓ | National Policy; Financial Guaranty Agreement §§ 4.01(e), 4.02; Sale Order § 502(F)(1). | ✓ | Sale Order § 503(J); Financial Guaranty Agreement § III. |
| **Sewer 2006B** | 309-311 | ✓ | Bond Insurer Requirements (Exhibit A to Sale Order) § 2(e). | ✓ | National Policy; Bond Insurer Requirements (Exhibit A to Sale Order) § 2(i). | ✓ | Bond Insurer Requirements (Exhibit A to Sale Order) § 4(a). |

Exhibit 6B-4

2786889.1

| Series | Voting Class (1A-[ ]) | Sole Holder | | Subrogation | | Consent | |
|---|---|---|---|---|---|---|---|
| | | ✓ | *Documents* | ✓ | *Documents* | ✓ | *Documents* |
| **Sewer 2006C** | 317-319 | ✓ | Bond Insurer Requirements (Exhibit A to Sale Order) § 2(e). | ✓ | National Policy; Bond Insurer Requirements (Exhibit A to Sale Order) § 2(i). | ✓ | Bond Insurer Requirements (Exhibit A to Sale Order) § 4(a). |

**Exhibit 6C**

**National DWSD Bonds - Sole Holder Provisions**

| Series | Sole Holder | |
|---|---|---|
| | *Document* | *Provision* |
| **Water 2004A**<br><br>*Class 1A-50-57*<br><br>AND<br><br>**Water 2004B**<br><br>*Class 1A-61, 63, 65-70* | 2004 Reimbursement Agreement § II(r)[1] | "[F]or purposes of the Related Documents [which include the Bond Documents], [National] will be deemed 100% Owner of all Series 2004 Bonds it insures." |
| | Sale Order § 703(H)[2] | "[National] shall be considered the sole holder of the Series 2004 Bonds for purposes of Section 7 of the Ordinance." |

---

[1] Reimbursement and Indemnity Agreement between the City of Detroit, Michigan and MBIA Insurance Corp., dated May 13, 2004.

[2] Sale Order of Finance Director of the City of Detroit with respect to $77,010,000 City of Detroit Water Supply System Revenue Refunding Second Lien Bonds (Variable Rate Demand), Series 2004-A and $163,590,000 City of Detroit Water Supply System Revenue Refunding Senior Lien Bonds (Variable Rate Demand), Series 2004-B.

| Series | Sole Holder | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 1998A**<br><br>*Class 1A-198-205*<br><br>AND<br><br>**Sewer 1998B**<br><br>*Class 1A-208-215* | Sale Order § 5.2(b)[3] | "Unless a Surety Default has occurred and is continuing, [National] shall be deemed to be the holder of the Series 1998 Bonds for the purpose of exercising any voting right or privilege, giving any consent or direction or taking any other action that the holders of the Series 1998 Bonds are entitled to take." |
| **Sewer 2001B**<br><br>*Class 1A-224*<br><br>AND<br><br>**Sewer 2001C(2)**<br><br>*Class 1A-240-241* | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-103[4] | "For all purposes of the Bond Ordinance, except the giving of notice of default to Holders of [National] Insured Securities, [National] shall be deemed the sole holder of the [National] Insured Securities." |

[3] Sale Order of Finance Director of the City of Detroit Authorizing the Sale and Delivery of $137,955,000 Aggregate Original Principal Amount of City of Detroit Sewage Disposal System Revenue Refunding Bonds, Series 1998-A and Series 1998-B, and Making Certain Determinations With Respect to the Series 1998 Bonds.

[4] Composite Sale Order of the Finance Director of City of Detroit with respect to Series 2001 Securities.

| Series | Sole Holder | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 2005B**<br><br>*Class 1A-295-296* | Sale Order § 503(J)[5] | "[National] shall be considered the sole holder of the Series 2005(B) Bonds for purposes of Section 7 of the Ordinance." |
| **Sewer 2006B**<br><br>*Class 1A-309-311*<br><br>AND<br><br>**Sewer 2006C**<br><br>*Class 1A-317-319* | Bond Insurer Requirements (Exhibit A to Sale Order) § 2(e)[6] | "For all purposes of the Ordinance or Bond Resolution provisions governing events of default and remedies, except the giving of notice of default to Series 2006 Bondholders, [National] shall be deemed to be the sole holder of the Series 2006 Bonds it has insured for so long as it has not failed to comply with its payment obligations under the Bond Policy." |

[5] Sale Order of Finance Director of the City of Detroit with respect to $40,215,000 City of Detroit Sewage Disposal System Revenue Refunding Second Lien Bonds, Series 2005(B).

[6] Sale Order of Finance Director of City of Detroit with respect to $250,000,000 City of Detroit Sewage Disposal System Revenue Second Lien Bonds, Series 2006(B).

Exhibit 6C-3

2786889.1

**Exhibit 6D**

**National DWSD Bonds – Subrogation Provisions**

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Water 2003D**<br><br>*Class 1A-44-46* | Financial Guaranty Insurance Policy No. 40228(1) | "Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by [National], and appropriate instruments to effect the appointment of [National] as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations . . . State Street Bank and Trust Company, N.A. shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations . . . ." |
| | Sale Order § 702(F)(1)[1] | "[T]he City and the Transfer Agent hereby agree for the benefit of [National] that . . . to the extent [National] makes payments, directly or indirectly . . . on account of principal of or interest on the Series 2003-D Bonds, [National] will be subrogated to the rights of such Holders to receive the amount of such principal and interest from the City . . . ." |

---

[1] Sale Order of Finance Director of the City of Detroit with respect to $151,370,000 City of Detroit Water Supply System Revenue Refunding Senior Lien Bonds (Variable Rate Demand), Series 2003-D.

Exhibit 6D-1

2786889.1

| Series | Subrogation | |
| --- | --- | --- |
| | *Document* | *Provision* |
| | 2003 Reimbursement Agreement § 6.01(b)[2] | Defining the following as an Event of Default: "Any proceeding shall be instituted, with the consent or acquiescence of the [City], for the purpose of adjusting the claims of creditors pursuant to any federal or state statute now or hereafter enacted." |
| | 2003 Reimbursement Agreement § 6.02[3] | "Whenever an Event of Default referred to in Section 6.01 hereof shall have happened and be continuing, [National] may take any one or more of the following remedial steps: (a) [e]xercise its rights of subrogation pursuant to Article V hereof; (b) [e]xercise any rights of subrogation it may have under the Insurance Policies; (c) [t]ake whatever other action at law or in equity as may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement to enforce performance and observance of any obligation, agreement or covenant of the [City] under this Agreement or under any Related Document; or (e) [p]ursue any remedy it may have under any of the Related Documents." |

---

[2] Reimbursement and Indemnity Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated February 1, 2003.

[3] *Id.*

Exhibit 6D-2

Exhibit 6D-2

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Water 2004A**<br><br>*Class 1A-50-57*<br><br>AND<br><br>**Water 2004B**<br><br>*Class 1A-61, 63, 65-70* | Financial Guaranty Insurance Policy Nos. 43906, 43907 | "Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by [National], and appropriate instruments to effect the appointment of [National] as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations . . . State Street Bank and Trust Company, N.A. shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations . . . ." |
| | Sale Order § 702(F)(1)[4] | "[T]he City and the Transfer Agent hereby agree for the benefit of [National] that . . . to the extent [National] makes payments, directly or indirectly . . . on account of principal of or interest on the Series 2004 Bonds, [National] will be subrogated to the rights of such Series 2004 Bondholders to receive the amount of such principal and interest from the City . . . ." |

---

[4] Sale Order of Finance Director of the City of Detroit with respect to $77,010,000 City of Detroit Water Supply System Revenue Refunding Second Lien Bonds (Variable Rate Demand), Series 2004-A and $163,590,000 City of Detroit Water Supply System Revenue Refunding Senior Lien Bonds (Variable Rate Demand), Series 2004-B.

Exhibit 6D-3

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| | 2004 Reimbursement Agreement § 6.01(b)[5] | Defining the following as an Event of Default:<br><br>"Any proceeding shall be instituted, with the consent or acquiescence of the [City], for the purpose of adjusting the claims of creditors pursuant to any federal or state statute now or hereafter enacted." |
| | 2004 Reimbursement Agreement § 6.02[6] | "Whenever an Event of Default referred to in Section 6.01 hereof shall have happened and be continuing, [National] may take any one or more of the following remedial steps: (a) [e]xercise its rights of subrogation pursuant to Article V hereof; (b) [e]xercise any rights of subrogation it may have under the Insurance Policies; (c) [t]ake whatever other action at law or in equity as may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement to enforce performance and observance of any obligation, agreement or covenant of the [City] under this Agreement or under any Related Document; or (e) [p]ursue any remedy it may have under any of the Related Documents." |

---

[5] Reimbursement and Indemnity Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated May 13, 2004.

[6] *Id.*

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 1998A**<br><br>*Class 1A-198-205*<br><br>AND<br><br>**Sewer 1998B**<br><br>*Class 1A-208-215* | Financial Guaranty Insurance Policy Nos. 28019(1), 28019(2) | "Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by [National], and appropriate instruments to effect the appointment of [National] as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations . . . State Street Bank and Trust Company, N.A. shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations . . . ." |
| | 1998 Reimbursement Agreement § V[7] | "The [City] hereby acknowledges that, to the extent of payments made by [National] under the Insurance Policies, [National] shall be fully subrogated to any remedies against the [City] available to the Owners of the Related Bonds or the Swap Provider; provided, however, that nothing herein shall be construed to place [National] in a security position superior to that of the owners of the Bonds, or any obligations of the [City] on a parity with the Bonds." |

---

[7] Reimbursement and Indemnity Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated December 10, 1998.

Exhibit 6D-5

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| | 1998 Reimbursement Agreement § 6.01(b) [8] | Defining the following as an Event of Default:<br><br>"Any proceeding shall be instituted, with the consent or acquiescence of the [City], for the purpose of adjusting the claims of creditors pursuant to any federal or state statute now or hereafter enacted." |
| | 1998 Reimbursement Agreement § 6.02 [9] | "Whenever an Event of Default referred to in Section 6.01 hereof shall have happened and be continuing, [National] may take any one or more of the following remedial steps: (a) [e]xercise its rights of subrogation pursuant to Article V hereof; (b) [e]xercise any rights of subrogation it may have under the Insurance Policies; (c) [t]ake whatever other action at law or in equity as may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement to enforce performance and observance of any obligation, agreement or covenant of the [City] under this Agreement or under any Related Document; or (e) [p]ursue any remedy it may have under any of the Related Documents." |

---

[8] *Id.*

[9] *Id.*

Exhibit 6D-6

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| | Sale Order § 5.1(f)(i)[10] | "[T]he City and the Transfer Agent hereby agree for the benefit of [National] that. . . to the extent [National] makes payments, directly or indirectly . . . on account of principal of or interest on the Series 1998 Bonds, [National] will be subrogated to the rights of such Owners to receive the amount of such principal and interest from the City . . . ." |

---

[10] Sale Order of Finance Director of the City of Detroit Authorizing the Sale and Delivery of $137,955,000 Aggregate Original Principal Amount of City of Detroit Sewage Disposal System Revenue Refunding Bonds, Series 1998-A and Series 1998-B, and Making Certain Determinations With Respect to the Series 1998 Bonds.

Exhibit 6D-7

2786889.1

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 1999A**<br><br>*Class 1A-218-223*<br><br>**Sewer 2001B**<br><br>*Class 1A-224*<br><br>AND<br><br>**Sewer 2001C(2)**<br><br>*Class 1A-240-241* | Municipal Bond New Issue Insurance Policy Nos. 99010978, 01012179, 01012180 | Conditioning disbursements of insurance payments to bondholders on "receipt . . . of (i) evidence of the Bondholder's right receive payment of the principal or interest Due for Payment and (ii) evidence, including any appropriate instruments of assignment, that all of the Bondholder's rights to payment of such principal or interest Due for Payment shall thereupon vest in [National]. Upon such disbursement, [National] shall become the owner of the Bond, appurtenant coupon or right payment of principal or interest on such Bond and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof." |

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 2005B**<br><br>*Class 1A-295-296* | Financial Guaranty Insurance Policy No. 45904(2) | "Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by [National], and appropriate instruments to effect the appointment of [National] as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations . . . State Street Bank and Trust Company, N.A. shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations . . . ." |
| | Financial Guaranty Agreement § 4.01(e)[11] | Defining the following as an Event of Default:<br><br>"The [City] shall (i) voluntarily commence any proceeding or file any petition seeking relief under the United States Bankruptcy Code . . . ." |

---

[11] Financial Guaranty Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated March 17, 2005.

Exhibit 6D-9

2786889.1

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| | Financial Guaranty Agreement § 4.02[12] | "If an Event of Default [which includes the City's bankruptcy filing] shall occur and be continuing, then [National] may take whatever action at law or in equity may appear necessary or desirable to collect the amounts then due and thereafter to become due under this Agreement or to enforce performance of any obligation of the [City] to [National] under the Documents [defined to include the Bond Documents] or any related instrument . . . ." |
| | Sale Order § 502(F)(1)[13] | "[T]he City and the Transfer Agent hereby agree for the benefit of [National] that . . . to the extent [National] makes payments, directly or indirectly . . . on account of principal of or interest on the Series 2005(B) Bonds, [National] will be subrogated to the rights of such Series 2005(B) Bondholders to receive the amount of such principal and interest from the City . . . ." |

---

[12] *Id.*

[13] Sale Order of Finance Director of the City of Detroit with respect to $40,215,000 City of Detroit Sewage Disposal System Revenue Refunding Second Lien Bonds, Series 2005(B).

Exhibit 6D-10

2786889.1

| Series | Subrogation | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 2006B**<br><br>*Class 1A-309-311*<br><br>AND<br><br>**Sewer 2006C**<br><br>*Class 1A-317-319* | Municipal Bond New Issue Municipal Insurance Policy Nos. 06010307, 06010326 | Conditioning disbursements of insurance payments to bondholders on "receipt . . . of (i) evidence of the Bondholder's right receive payment of the principal or interest Due for Payment and (ii) evidence, including any appropriate instruments of assignment, that all of the Bondholder's rights to payment of such principal or interest Due for Payment shall thereupon vest in [National]. Upon such disbursement, [National] shall become the owner of the Bond, appurtenant coupon or right payment of principal or interest on such Bond and shall be fully subrogated to all of the Bondholder's rights thereunder, including the Bondholder's right to payment thereof." |
| | Bond Insurer Requirements (Exhibit A to Sale Order) § 2(i)[14] | "[National] shall, to the extent it makes payment of principal of or interest on the Series 2006 Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Policy . . . ." |

---

[14] Sale Order of Finance Director of the City of Detroit with respect to $250,000,000 City of Detroit Sewage Disposal System Revenue Second Lien Bonds, Series 2006(B); Sale Order of Finance Director of the City of Detroit with respect to $26,560,000 City of Detroit Sewage Disposal System Revenue Refunding Senior Lien Bonds, Series 2006(C).

# Exhibit 6E

## National DWSD Bonds – Consent Provisions

| Series | Consent | |
|---|---|---|
| | *Document* | *Provision* |
| **Water 2003D**<br><br>*Class 1A-44-46* | 2003 Reimbursement Agreement § 6.01(f)[1] | Defining events of default to include "[a]ny material amendment to a Related Document [defined to include the Bond Ordinance] . . . made by the [City] without the prior written consent of [National.]" |
| | Variable Rate Demand Bonds Supplement and Agreement § 11.02(f)[2] | "Before any amendment or supplement [to this Agreement] shall become effective, [National] and the Provider shall be provided with a copy of such amendment or supplement and [National] and the Provider shall have each given their prior written consent." |

---

[1] Reimbursement and Indemnity Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated February 1, 2003.

[2] Variable Rate Demand Bonds Supplement and Agreement, by and among the City, U.S. Bank N.A. as Trustee and Transfer Agent, and U.S. Bank, N.A. as Tender Agent, dated February 6, 2003.

| Series | Consent | |
| --- | --- | --- |
| | *Document* | *Provision* |
| | Standby Bond Purchase Agreement § 7.2(b)[3] | "The [City] shall not amend or modify or permit to be amended or modified any of the Related Documents in a manner relating in any way to this Agreement or the Bank or having a material adverse effect on the [City's] ability to pay when due principal or interest on the Bonds or to make payments due hereunder or the security or rights or remedies of the Bank hereunder or under any such Related Documents without the prior written consent of the Bank and [National.]" |

---

[3] Standby Bond Purchase Agreement, by and among the City, and U.S. Bank, N.A. as Trustee, in its capacity as Tender Agent, dated February 1, 2003

Exhibit 6E-2

2786889.1

| Series | Consent | |
|---|---|---|
| | *Document* | *Provision* |
| **Water 2004A**<br><br>*Class 1A-50-57*<br><br>AND | 2004 Reimbursement Agreement § II(*l*)[4] | "[National] must consent to all amendments, modifications or supplements to any of the documents relating to the Related Documents as set forth in Section 22 of the Bond Ordinance." |
| **Water 2004B**<br><br>*Class 1A-61, 63, 65-70* | 2004 Reimbursement Agreement § 6.01(f)[5] | Defining events of default to include "[a]ny material amendment to a Related Document [defined to include the Bond Ordinance] . . . made by the [City] without the prior written consent of [National.]" |

---

[4] Reimbursement and Indemnity Agreement between the City of Detroit, Michigan and MBIA Insurance Corp., dated May 13, 2004.

[5] *Id.*

| Series | Consent | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 1998A**<br><br>*Class 1A-198-205*<br><br>AND<br><br>**Sewer 1998B**<br><br>*Class 1A-208-215* | 1998 Reimbursement Agreement § 6.01(f)[6] | Defining events of default to include "[a]ny material amendment to the Bond Ordinance . . . without the prior written consent of [National.]" |
| | Sale Order § 5.2(b)[7] | "[U]nless a Surety Default has occurred, no change in the Series 1998 Bonds or this Sale Order shall be made without the prior written approval of [National.]" |

---

[6] Reimbursement and Indemnity Agreement between City of Detroit, Michigan and MBIA Insurance Corp., dated December 10, 1998.

[7] Sale Order of Finance Director of the City of Detroit Authorizing the Sale and Delivery of $137,955,000 Aggregate Original Principal Amount of City of Detroit Sewage Disposal System Revenue Refunding Bonds, Series 1998-A and Series 1998-B, and Making Certain Determinations With Respect to the Series 1998 Bonds.

| Series | Consent | |
| --- | --- | --- |
| | *Document* | *Provision* |
| **Sewer 2001B**<br><br>*Class 1A-224*<br><br>AND<br><br>**Sewer 2001C(2)**<br><br>*Class 1A-240-241* | Financial Guaranty Insurance Company Supplement (Annex E to Composite Sale Order) § 1-2.02(b)[8] | "Any other amendment or supplement to the Bond Ordinance requiring consent of Holders of [National] Insured Senior Lien Bonds or [National] Insured Second Lien Bonds is also subject to written consent of [National] before it shall become effective as to [National] Insured Senior Lien Bonds or [National] Insured Second Lien Bonds, as the case may be." |

---

[8] Composite Sale Order of the Finance Director of City of Detroit with respect to Series 2001 Securities.

| Series | Consent | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 2005B**<br><br>*Class 1A-295-296* | Sale Order § 503(J)[9] | "[National's] consent shall be required to any amendments to any amendments to the Ordinance requiring Series 2005(B) Bondholder Consent." |
| | Financial Guaranty Agreement § III[10] | "So long as this Agreement is in effect, the [City] agrees that it (i) will not agree to amend the Documents or any other document executed in connection with the issuance of the Obligations, without the prior written consent of [National] if consent of the holders of the Obligations is required." |

---

[9] Sale Order of Finance Director of the City of Detroit with respect to $40,215,000 City of Detroit Sewage Disposal System Revenue Refunding Second Lien Bonds, Series 2005(B).

[10] Financial Guarantee Agreement between the City of Detroit, Michigan and MBIA Insurance Corp., dated March 17, 2005.

Exhibit 6E-6

| Series | Consent | |
|---|---|---|
| | *Document* | *Provision* |
| **Sewer 2006B**<br><br>*Class 1A-309-311*<br><br>AND<br><br>**Sewer 2006C**<br><br>*Class 1A-317-319* | Bond Insurer Requirements (Exhibit A to Sale Order) § 4(a)[11] | "Any amendment or supplement to the Ordinance or Bond Resolution or any other principal financing documents requiring the consent of Holders of Bonds insured by [National] shall be subject to the prior written consent of [National.]" |

---

[11] Sale Order of Finance Director of City of Detroit with respect to $250,000,000 City of Detroit Sewage Disposal System Revenue Second Lien Bonds, Series 2006(B); Sale Order of Finance Director of City of Detroit with respect to $26,560,000 City of Detroit Sewage Disposal System Revenue Refunding Senior Lien Bonds, Series 2006(C).