# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | : Chapter 9 |
|  | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13-53846 |
|  | : |
| Debtor. | : Hon. Steven W. Rhodes |
|  | : |

## NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION'S NOTICE OF RIGHT TO VOTE CERTAIN CLASS 8 UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS

National Public Finance Guarantee Corporation ("National"), by and through its undersigned attorneys, and pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "Solicitation Procedures Order"),[1] respectfully submits this *Notice of Right to Vote Certain Class 8 Unlimited Tax General Obligation Bond Claims* (the "Voting Notice"), and in support hereof, states as follows:

---

[1] As amended by the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment [Doc. No. 4202].

2786905.1

National asserts that it is entitled to vote the Class 8 claims (the "National UTGO Bond Claims") arising from each of the following series of Unlimited Tax General Obligation Bonds[2] which National insures (the "National UTGO Bonds"):

| Series of Class 8 Unlimited Tax General Obligation Bonds | Outstanding Amount as of Petition Date |
|---|---|
| 2001-A(1) | $78,787,556 |
| 2001-B | $4,063,616 |
| 2002 | $6,745,767 |

As set forth more fully in the brief in support of this Voting Notice, attached hereto as Exhibit 3, National's voting rights derive from National's contractual and equitable subrogation rights which allow National to step into the shoes of the UTGO Bondholders holding National UTGO Bonds and exercise all of their rights, including the right to vote.[3]

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (May 5, 2014) [Doc. No. 4392] (the "Plan").

[3] Section 1126(c) of the Bankruptcy Code states that a class of claims accepts a plan if creditors "that hold at least two-thirds in amount and more than one-half in number" accept the plan. 11 U.S.C. § 1126(c). The National UTGO Bonds consist of three series of Class 8 Unlimited Tax General Obligation Bond Claims totaling $89,596,939. National is subrogated to the rights of each individual beneficial bondholder of National UTGO Bonds. Therefore, for purposes of calculating whether Class 8 has satisfied the numerosity and amount requirements under section 1126(c) National shall be treated as having no less than three (3) votes with respect to an aggregate amount of $89,596,939.

2

Therefore, National seeks an order, substantially in the form attached hereto as Exhibit 1, (i) ruling that National is the sole party authorized to vote the National UTGO Bond Claims, and (ii) directing the City to disregard any votes submitted on the National UTGO Bond Claims by any party other than National.

Dated: May 23, 2014

**SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance Guarantee Corp.*

3

## <u>EXHIBITS</u>

**Exhibit 1**     Proposed Order

**Exhibit 2**     Notice

**Exhibit 3**     Brief in Support

**Exhibit 4**     Certificate of Service

**Exhibit 5**     Affidavits [None]

**Exhibit 6**     Exhibits [None]

**Exhibit 1**

**Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | : | Chapter 9 |
|  | : |  |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
|  | : |  |
| Debtor. | : | Hon. Steven W. Rhodes |
|  | : |  |

## ORDER AUTHORIZING NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION TO VOTE CERTAIN CLASS 8 UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS

This matter coming before the Court on *National Public Finance Guarantee Corporation's Notice of Asserted Right to Vote Certain Class 8 Unlimited Tax General Obligation Bond Claims* (the "Voting Notice"), filed by National Public Finance Guarantee Corporation ("National"); and the Court being fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1.      National is the sole party authorized to vote the National UTGO Bond Claims,[1] as set forth in the Voting Notice.

2.      The City shall disregard any votes submitted on the National UTGO Bond Claims by any party other than National.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Voting Notice.

**Exhibit 2**

**Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | : Chapter 9 |
| | : |
| CITY OF DETROIT, MICHIGAN, | : Case No. 13-53846 |
| | : |
| Debtor. | : Hon. Steven W. Rhodes |
| | : |

## NOTICE AND OPPORTUNITY TO OBJECT

National Public Finance Guarantee Corporation ("National"), by and through its respective undersigned attorneys, has filed its *Notice of Right to Vote Certain Class 8 Unlimited Tax General Obligation Bond Claims* (the "Notice") pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "Solicitation Procedures Order").[1]

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

---

[1] As amended by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Doc. No. 4202].

Pursuant to ¶ 9.c of the Solicitation Procedures Order, the following parties, or any representative thereof, are permitted to file and serve on the ECF noticing list a brief in response ("Response") to the Notice:

(i)     any holder affected by the Notice,

(ii)    U.S. Bank National Association, in its capacity as trustee for those certain bonds issued by the City for the Detroit Water and Sewer Department,

(iii)   those certain holders of Detroit water and sewer revenue bonds represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. and Kramer Levin Naftalis & Frankel, LLP, and

(iv)    Wilmington Trust, National Association, as Successor Trustee for the Detroit Retirement Systems Funding Trust 2005 and the Detroit Retirement Systems Funding Trust 2006.

All Responses must be filed with the Court on or before **June 24, 2014** at:

United States Bankruptcy Court
Eastern District of Michigan
211 W. Fort Street, Suite 2100
Detroit, MI 48226

If you mail your Response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

Exhibit 2-2

If a Response is timely filed and served, a hearing on the Notice will be held on **July 14, 2014** at which the Court shall hear and determine any disputes arising in connection with the Notice.

**If you or your attorney do not take these steps, the Court will grant the relief sought in the Notice.**

Dated: May 23, 2014

**SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance*
*Guarantee Corp.*

**Exhibit 3**

**Brief**

Exhibit 3-1

|  |  |  |
| --- | --- | --- |
| In re: | : | Chapter 9 |
|  | : |  |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
|  | : |  |
| Debtor. | : | Hon. Steven W. Rhodes |
|  | : |  |

**NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION'S BRIEF
IN SUPPORT OF NOTICE OF RIGHT TO VOTE CERTAIN CLASS 8
UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS**

National Public Finance Guarantee Corporation ("National"), by and through its undersigned attorneys, and pursuant to ¶ 9.a of the *Order (I) Establishing Procedures For Solicitation And Tabulation Of Votes To Accept Or Reject Plan Of Adjustment And (II) Approving Notice Procedures Related To Confirmation Of The Plan Of Adjustment* [Doc. No. 2984] (the "Solicitation Procedures Order"),[1] respectfully submits this Brief (the "Voting Brief") in support of its *Notice of Right to Vote Certain Class 8 Unlimited Tax General Obligation Bonds* (the "Voting Notice"), and in support hereof, states as follows:

---

[1] As amended by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Doc. No. 4202].

## PRELIMINARY STATEMENT

1.     National is a monoline insurer that provides financial guarantees to the U.S. public finance market. National insures approximately $2.4 billion in aggregate principal amount of outstanding bonds issued by the City[2] and City authorities, including certain series of Unlimited Tax General Obligation Bonds that would be impaired under the Plan (collectively, the "National UTGO Bonds").[3] The Plan proposes to impair the claims arising out of the National UTGO Bonds (collectively, the "National UTGO Bond Claims").

2.     The City issued each series of National UTGO Bonds and related Bond Documents[4] pursuant to (i) a resolution of the City, adopted on November 29, 2000, as amended and supplemented by a supplemental resolution of the City, adopted on June 13, 2001 (the "2001 Resolution"); (ii) a resolution of the City, adopted on July 24, 2002 (the "2002 Resolution" and together with the 2001 Resolution, the "Resolutions"); and (iii) related sale orders of the Finance Director

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014) [Doc. No. 4392] (the "Plan").

[3] The specific National UTGO Bonds are set forth in the Voting Notice.

[4] For purposes of this Voting Brief, the "Bond Documents" shall only refer to the Unlimited Tax General Obligation Bond Documents related to the National UTGO Bonds.

of the City. The Resolutions, sale orders, and other Bond Documents set forth the various rights of, among other parties, the Bondholders[5] and National.[6]

3. In March of this year, National, along with other bond insurers, reached a settlement with the City regarding the Plan's treatment of the Unlimited Tax General Obligation Bond Claims, subject to the finalization and execution of definitive documentation (the "UTGO Settlement"). The UTGO Settlement resolves the adversary proceeding commenced by National and Assured Guaranty Municipal Corporation ("Assured") (Ad. Pro. No. 13-05309) in which National and Assured sought to enforce the Bondholders' rights to full payment from the pledged assets under the Unlimited Tax General Obligation Bond Documents. The principal terms of the UTGO Settlement are embodied in Articles II.B.3.o, IV.D, and Exhibit I.A.285 of the Plan which describe the treatment that will be afforded to all holders of Unlimited Tax General Obligation Bond Claims. The UTGO

---

[5] For purposes of this Voting Brief, the "Bondholders" shall refer to those holders of National UTGO Bonds.

[6] The Bond Documents are voluminous, and therefore are not attached. EMMA (Electronic Municipal Market Access) provides copies of the official statements containing many of the relevant Bond Documents. The official statement for Series 2001-A(1) and 2001-B can be found at : <http://emma.msrb.org/MS182308-MS157616-MD304677.pdf>. The official statement for Series 2002 can be found at < http://emma.msrb.org/MS195801-MS171109-MD331459.pdf>. Other Bond Documents are attached as Exhibits I, J, and K to the First Amended Complaint for Declaratory Judgment, Case No. 13-05309 (Bankr. E.D. Mich. Dec. 23, 2013) [Doc. No. 41]. In addition, National will respond to reasonable requests to provide copies of relevant Bond Documents.

Settlement remains subject to completion of definitive documentation and approval as part of Plan confirmation.

4.     As a bond insurer, National is obligated to pay the Bondholders the full principal and interest when due, as required by the applicable Bond Insurance Policies (the "National Policies"),[7] to the extent the City fails to meet its obligations under the Bond Documents.  In light of National's provision of bond insurance, confirmation of the Plan will have no economic effect on the Bondholders.  Instead, National will suffer the financial harm resulting from the impairment of the National UTGO Bond Claims reflected in the City's proposed Plan and is the true economic party in interest with respect to those claims.

5.     National is entitled to vote the National UTGO Bond Claims by virtue of its contractual and equitable subrogation rights that permit National to step into the shoes of the Bondholders and exercise all of the Bondholders' rights, including the right to vote the National UTGO Bond Claims.  For these reasons, National seeks an order, substantially in the form attached as Exhibit 1 to the Voting Notice, that (i) provides that National is the sole party authorized to vote the National UTGO Bond Claims, and (ii) directs the City to disregard any votes submitted on the National UTGO Bond Claims by any party other than National.

---

[7] National's predecessor in interest issued the following insurance policies covering the National UTGO Bonds: 35874 (2001-A(1)); 35876 (2001-B); and 38697 (2002).  National currently insures the National UTGO Bonds.

## <u>ARGUMENT</u>

**I.    National Is Entitled To Vote The National UTGO Bond Claims By Virtue Of Its Contractual And Equitable Subrogation Rights.**

6.    Section 1126(a) of the Bankruptcy Code, incorporated into chapter 9 cases by section 901(a), provides that a "holder of a claim" may vote to accept or reject the plan.  11 U.S.C. §§ 901(a), 1126(a).  In the context of a security like the National UTGO Bonds, the "holder of record," or an entity that is designated as the holder of record, is the sole party entitled to accept or reject a plan.  Fed. R. Bankr. P. 3003(d), 3018(a).

7.    Both contractual and equitable subrogation permit National, as a bond insurer, to step into the shoes of the Bondholders and assume *all* of the Bondholders' rights.  *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 521 (1991) (stating that subrogation involves "the substitution of one person in the place of another with reference to a lawful claim or right"); *Avondale Gateway Ctr. Entitlement, LLC v. Nat'l Bank of Ariz. (In re Avondale Gateway Ctr. Entitlement, LLC)*, 2011 WL 1376997, at *3 (D. Ariz. April 12, 2011) (holding that under applicable state law, a subrogee "steps into the shoes" of the subrogated party "with respect to the claim against [the debtor] and acquires all of [the subrogated party's] rights with respect to that claim").

8.    National's contractual and equitable subrogation rights are exercisable now.  With respect to a certain portion of the National UTGO Bonds, National's

subrogation rights were contractually triggered by National's payment of principal and interest to the Bondholders, in accordance with the National Policies, due to the City's failure to make payments as due under the Bond Documents. Moreover, with respect to all of the National UTGO Bonds, the economic realities of this case make it appropriate for National to be equitably subrogated to the Bondholders' rights at this stage, prior to National making any additional payments under the National Policies. *See Fid. & Cas. Co. of N.Y. v. First Nat'l Bank in Fort Lee*, 397 F.Supp. 587, 589-90 (D.N.J. 1975). Because National has already made payments under the Bond Policies, and additional payments by National will be triggered as a result of the Plan, National's contractual and equitable subrogation rights are ripe now.[8]

### A. National Was Contractually Subrogated To All Of The Bondholders' Rights Upon National's Payment Under The National Policies.

9. National's contractual subrogation rights, which include the right to vote, are set forth in the Bond Documents. *See Avondale*, 2011 WL 1376997, at *3 (permitting subrogee to vote on a plan because the "right to vote on [the debtor's] plan flows from the [subrogated party's] claim in bankruptcy"). The National Policies and related statements of insurance provide that Bondholders seeking

---

[8] As discussed in paragraph 12 below, National has already made payments in accordance with the National Policies due to the City's failure to pay principal and interest on the National UTGO Bonds as and when due.

payment under the National Policies must (i) present and surrender the National

UTGO Bonds to receive payments, (ii) assign the amounts paid by National to

National, and (iii) appoint National as their agent for purposes of any legal

proceeding related to the payment of the National UTGO Bonds, including this

chapter 9 bankruptcy case:

> Upon presentment and surrender of such Obligations or presentment
> of such other proof of ownership of the Obligations, together with any
> *appropriate instruments of assignment to evidence the assignment of*
> *the Insured Amounts due on the Obligations as are paid by the*
> *Insurer, and appropriate instruments to effect the appointment of the*
> *Insurer as agent for such owners of the Obligations in any legal*
> *proceeding related to payment of Insured Amounts on the Obligations*,
> such instruments being in a form satisfactory to State Street Bank and
> Trust Company, N.A., State Street Bank and Trust company, N.A.
> shall disburse to such owners or the Paying Agent payment of the
> Insured Amounts due on such Obligations, less any amount held by
> the Paying Agent for the payment of such Insured Amounts and
> legally available therefor. This policy does not insure against loss of
> any prepayment premium which may at any time be payable with
> respect to any Obligation.

National Policies (emphasis added).

10.     Although the language in the National Policies is phrased in terms of

assignment and agency, the effect of this language is to grant National the same

rights as the underlying Bondholders, and is therefore identical to subrogation.

Indeed, in Section 502(F) of the relevant sale order for Series 2001-A(1) and Series

2001-B,[9] the City and the paying agent recognized that National held subrogation rights pursuant to the National Policies:

> [The City and paying agent] recognize that to the extent [National] makes payments, directly or indirectly (as by paying through the Paying Agent), on account of principal of or interest on the Obligations, [National] will be subrogated to the rights of such Holders to receive the amount of such principal and interest from the City . . . .

2001 Sale Order, § 501(F)(1).

11.     Moreover, courts recognize that voting rights can be contractually assigned to third parties.  *See Rosenfeld v. Coastal Broad. Sys., Inc. (In re Coastal Broad. Sys., Inc.)*, 2013 WL 3285936, at *5 (D.N.J. June 28, 2013) (affirming bankruptcy court's ruling that an agreement assigned voting rights, noting that 11 U.S.C. § 1126 does not "foreclose the assignment of a holder's voting rights to another" and rejecting public policy arguments against assignment, stating that "[c]reditor rights, including their attendant voting rights, can be freely traded in the ordinary course"); *Blue Ridge Investors, II, LP v. Wachovia Bank, N.A. (In re Aerosol Packaging, LLC)*, 362 B.R. 43, 47 (Bankr. N.D. Ga. 2006) (permitting senior creditor to vote claim of junior creditor where subordination agreement explicitly assigned such right and noting, "Federal Rules of Bankruptcy Procedure

---

[9] City of Detroit Finance Director's Order Approving Sale of General Obligation Bonds (Unlimited Tax), Series 2001-A(1); General Obligation Bonds (Unlimited Tax), Series 2001-A(2); and General Obligation Refunding Bonds (Unlimited Tax), Series 2001-B, dated August 1, 2001 (the "2001 Sale Order").

3018 and 9010 explicitly permit agents and other representatives to take actions, including voting, on behalf of parties"). Thus, the Bond Documents ensure that National is entitled to vote the National UTGO Bonds, regardless of whether the National Policies result in an assignment of the Bondholders' voting rights, or National's subrogation to the Bondholders' voting rights.

12.     On October 1, 2013, the City defaulted on its obligation to make $2,284,537.10 in interest payments due on the National UTGO Bonds. On April 1, 2014, the City defaulted on its obligation to make $6,800,000 in principal payments and $2,284,537.10 in interest payments due on the National UTGO Bonds. In accordance with the National Policies, the Bondholders were required to "present and surrender" their bonds to National, assign their rights to payment under those bonds to National, and appoint National as their agent in this bankruptcy case. National paid the approximately $11.4 million of principal and interest on the National UTGO Bonds to the Bondholders in accordance with the Bond Documents. As a result, National is contractually subrogated to the Bondholders' rights, including the right to vote on the Plan, with respect to the National UTGO Bonds for which National has already made payments. *See Avondale*, 2011 WL 1376997, at *3 (holding that party who was contractually subrogated to the rights of another creditor prior to payment succeeded to all rights of the subrogated party, including the right to vote on a plan).

**B.** **National Is Equitably Subrogated To All Of The Bondholders'
Rights By Virtue Of The Plan's Treatment Of The National
UTGO Bonds.**

13. Moreover, and with respect to all of the National UTGO Bonds, principles of equity compel recognition of National's equitable subrogation rights at this time. The City's intentions with respect to the National UTGO Bonds, resulting from the UTGO Settlement, are evident now, and National should be afforded the right to vote on the Plan to protect its economic interests and the economic interests of the Bondholders.

14. National, as a bond insurer, is entitled to equitable subrogation where it takes action to resolve the underlying primary obligation (*i.e.*, the City's obligation to the Bondholders) and the insured (*i.e.*, the Bondholders) has been or will be made whole. *Fidelity and Casualty*, 397 F.Supp. at 589-90 (granting subrogation rights to insurer when "[t]he insured ha[d] been made whole and it would be an unnecessary legal fiction to force [the insured instead of the insurer] to proceed [against the third-party wrongdoer] as party plaintiff . . ."). At its core, equitable subrogation is a "flexible and elastic equitable doctrine," *Atlanta*, 438 Mich. at 521, that "ought to be liberally applied to the protection of those who are its natural beneficiaries," *Fed. Ins. Co. v. Arthur Andersen.*, 75 N.Y.2d 366, 373 (N.Y. 1990).

Exhibit 3-11

2786905.1

15.    In *Fidelity & Casualty*, the court held that an insurer was entitled to subrogation rights even though it had never, and might never, make any payments in connection with the insured's claim.   397 F.Supp. at 589-90.   Under the applicable insurance policy, upon a loss related to certain bonds, the insurer was obligated to either pay the insured party cash, or provide the insured party with replacement bonds.   *Id.* at 589.   The insured party subsequently had its bonds stolen by a third party and the insurer, consistent with its policy, provided the insured party with replacement bonds in lieu of cash.   *Id.*   To procure these replacement bonds, the insurer entered into an agreement with the bond issuer providing that the insurer would not have to pay the issuer for the replacement bonds unless and until the stolen bonds were presented for redemption by a third-party bona fide purchaser.   *Id.*   Therefore, the bond issuer would only be liable to pay to redeem one set of bonds, and the insurer's payment on the stolen bonds was conditioned on such bonds actually being presented.   *Id.*   The court held that, despite the fact that the insurer had not suffered an immediate pecuniary loss related to the insured's claim, it was equitable to give the insurer subrogation rights to proceed against the party that allegedly stole the original bonds.   *Id.* at 590.   The court reasoned that subrogation was appropriate because it would be an "unnecessary legal fiction" to force the insured to proceed against the third party

when the insurer had a "superior right to proceed" by virtue of its potential future liability. *Id.* at 591.

16.     Just as in *Fidelity*, National has resolved the underlying obligation to the Bondholders by negotiating the UTGO Settlement which sets out the treatment of the National UTGO Claims in the Plan.  As such, National should be equitably subrogated to the Bondholders' rights prior to making additional payments under the National Policies to ensure that National—the party with the "superior right" by virtue of its future liability—has the ability to enforce that right.  *See id.*; *see also Kumar v. Am. Transit Ins. Co.*, 49 A.D.3d. 1353, 1355 (N.Y. App. Div. 2008) ("We reject the contention . . . that the principle of equitable subrogation does not apply because [the insurer] has not yet paid the loss of its insured."); *Allianz Underwriters Ins. Co. v. Landmark Ins. Co.*, 13 A.D.3d 172, 175 (N.Y. App. Div. 2004) (holding that the "contention that Allianz is not Dunlop's equitable subrogee because Allianz has not yet paid anything on the underlying judgment is unavailing.  Contingent claims by subrogees have been recognized, especially where it would further judicial economy."); *Fed. Sav. & Loan Ins. Corp. v. Aetna Cas. & Sur. Co*., 696 F. Supp. 1190, 1195 (E.D. Tenn. 1988) (holding that federal law permits an insurer to "bring an action against third-parties who may be liable to the insurer for monies the insurer may have to pay under the bond, even if no money has yet been paid").

17.    Confirmation of the Plan constitutes a judgment that will lock in the treatment for all of the National UTGO Bond Claims.  *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) ("As a general rule, the '[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.'").  Pursuant to the Plan, the Bondholders will not receive full payment from the City under the existing terms of the National UTGO Bonds terms but can be made whole under the National Policies.  Entry of the Confirmation Order eliminates any possible contingency to National's payment obligations.  *See Meredith v. The Ionian Trader*, 279 F.2d 471, 474 (2d Cir. 1960) (holding that to be entitled to subrogation rights, "one of the conditions which the insurer must fulfill is payment, *or sufferance of a judgment requiring payment,* of the obligation owed the insured") (emphasis added); *cf. In re Suprema Specialties, Inc.*, 2006 WL 2583678, at *9 (Bankr. S.D.N.Y. June 8, 2006) (holding subrogation rights were contingent where insurer's liability was not "inevitable under all circumstances" regardless of whether alternative sources of recovery were "more theoretical than real").

18.    Given the economic reality that confirmation of the Plan guarantees that National will be subjected to claims under the National Policies, it is appropriate for National, the party with the most significant direct financial stake in the outcome of the Plan, to be equitably subrogated to the Bondholders' rights to vote the National UTGO Bond Claims.  Indeed, National has taken steps to resolve

the City's underlying obligations through the Plan's treatment of the National

UTGO Bond Claims, as negotiated between the City, National, and the other bond

insurers of the Class 8 claimants, and such treatment will be finalized in the UTGO

Settlement. Denying National the right to vote merely because it has yet to make

additional payments under the National Policies with respect to scheduled principal

and interest on the National UTGO Bonds—when such additional payments are

guaranteed to be required if the Plan is confirmed—would unjustly elevate form

over substance.[10]

---

[10] Moreover, there is no risk that National's vote will prejudice the Bondholders; National is interested in maximizing payments to the Bondholders to minimize the amounts that it will be obligated to pay under the National Policies. In furtherance of that economic interest, National filed a complaint against the City seeking to enforce the Bondholders' rights to full payment from the pledged assets under the Bond Documents, and after lengthy litigation and mediation sessions, National and the City reached a settlement on the National UTGO Bond Claims. National, as the party holding the most significant direct financial stake in the outcome of the City's treatment of the National UTGO Bond Claims, is the party entitled to vote.

## <u>CONCLUSION</u>

19.     Based on the foregoing, National is the appropriate party to vote the National UTGO Bond Claims because it has contractual and equitable subrogation rights that are exercisable now, which rights include National's entitlement to vote the National UTGO Bond Claims.  Moreover, any votes submitted on the National UTGO Bond Claims by any party other than National should be disregarded.[11]

---

[11] Section 1126(c) of the Bankruptcy Code states that a class of claims accepts a plan if creditors "that hold at least two-thirds in amount and more than one-half in number" accept the plan.  11 U.S.C. § 1126(c).  The National UTGO Bonds consist of three series of Class 8 Unlimited Tax General Obligation Bond Claims totaling $89,596,939.  National is subrogated to the rights of each individual beneficial bondholder of National UTGO Bonds.  Therefore, for purposes of calculating whether Class 8 has satisfied the numerosity and amount requirements under section 1126(c) National shall be treated as having no less than three (3) votes with respect to an aggregate amount of $89,596,939.

Exhibit 3-16

Dated:  May 23, 2014          **SIDLEY AUSTIN LLP**

Jeffrey E. Bjork
Gabriel R. MacConaill
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:  (213) 896-6000
jbjork@sidley.com
gmacconaill@sidley.com

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 736-8041
gneal@sidley.com

-and-

**JAFFE RAITT HEUER & WEISS, P.C.**

By:  /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
27777 Franklin Road, Suite 2500
Southfield, MI 48034-8214
Telephone: (248) 351-3000
lrochkind@jaffelaw.com
phage@jaffelaw.com

*Counsel for National Public Finance
Guarantee Corp.*

**Exhibit 4**

**Certificate of Service**

**Exhibit 5**

**Affidavits [None]**

**Exhibit 6**

**Exhibits [None]**