M. Natasha Labovitz
My Chi To
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Berkshire Hathaway Assurance Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **In re:** | ) | Chapter 9 |
| | ) | |
| **CITY OF DETROIT, MICHIGAN,** | ) | Case No. 13-53846 |
| | ) | |
| **Debtor.** | ) | Hon. Steven W. Rhodes |

### BRIEF IN SUPPORT OF BERKSHIRE HATHAWAY ASSURANCE CORPORATION'S NOTICE OF ASSERTED RIGHT TO VOTE CLAIMS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................... 1

FACTUAL BACKGROUND ......................................................................... 4

    I.      Insurers' Control And Consent Rights Under Bond Documentation ......... 4

          A.      Overview Of Insurers' Relative Rights ........................................ 4

          B.      BHAC's Control And Consent Rights ......................................... 5

          C.      FGIC's Control And Consent Rights, Subject To A FGIC Default ................................................................................. 6

    II.     Procedural Background ............................................................ 10

ARGUMENT ......................................................................................... 11

    I.      The Bond Documentation Clearly Provides That The Insurer Of The FGIC/BHAC Insured Bonds Is The Holder For Purposes of Voting on The Detroit Plan ....................................................... 12

    II.    Because FGIC Is Insolvent And Will Not Honor Its Obligations As A Bond Insurer, BHAC Is The Holder Of The FGIC/BHAC Insured Bonds Entitled To Vote. ............................................. 15

    III.   Neither The Nominal Holders Of The FGIC/BHAC Insured Bonds Nor FGIC Should Be Entitled To Vote Those Bonds Without BHAC's Prior Written Consent. ............................................. 18

# TABLE OF AUTHORITIES

**CASES**

*Gen. Star Nat. Ins. Co. v. Boudreau*, No. 287456, 2010 WL 143475 (Mich. App. Jan. 14, 2010)...................................................................................................................18

*In re Aereosol Packaging LLC*, 362 B.R. 43 (Bankr N.D. Ga. 2006) ...........................14

*In re Am. Rds. LLC*, 496 B.R. 727 (Bankr. S.D.N.Y. 2013).............................13, 14, 20

*In re Erickson Ret. Cmtys.*, 425 B.R. 309 (Bankr. N.D. Tex. 2010)...............................14

*In re GSC, Inc.*, 453 B.R. 132 (Bankr. S.D.N.Y. 2011)..................................................14

*In re Ion Media Networks*, 419 B.R. 585 (Bankr. S.D.N.Y. 2009)................................14

*Schroeder v. Terra Energy*, 223 Mich. App. 176 (Mich. App. 1997) ...........................18

**STATUTES**

11 U.S.C. § 101.................................................................................................................3

11 U.S.C. § 901...............................................................................................................11

11 U.S.C. § 1126.........................................................................................3, 5, 11, 15, 18

N.Y. Ins. Law Art. 74 ......................................................................................................2

**OTHER AUTHORITIES**

Black's Law Dictionary ..................................................................................................19

Berkshire Hathaway Assurance Corporation ("BHAC"), by and through its undersigned counsel, hereby files this brief in support of its Notice of Asserted Right to Vote Claims filed concurrently herewith. BHAC respectfully submits as follows:

## PRELIMINARY STATEMENT

1.        BHAC is an insurer of the payment when due of regularly scheduled principal and interest payments for DWSD Water Bonds Series 2001-C and 2005-B and DWSD Sewer Bonds Series 2001(E)[1] in an aggregate principal amount of approximately $510 million, subject to the failure of the prior insurer, Financial Guaranty Insurance Company ("FGIC"), to make these payments under the applicable primary policies (the "FGIC/BHAC Insured Bonds"). As described in detail below, it is certain that FGIC will fail to make the payments it contracted to make.

2.        BHAC also is an insurer for DWSD Sewer Bonds Series 2001-C(2) and 2006-A in an aggregate principal amount of approximately $245 million, for which National Public Finance Guarantee Corporation ("National") is the prior insurer. Unlike FGIC, National is a solvent insurer that is honoring its policy claims in the ordinary course of business. For this reason and the reasons set forth in National's brief in support of its notice of asserted voting rights, and without prejudice to BHAC's right to assert that it is the holder of (or is otherwise entitled to vote on behalf of) any other bonds,

---

[1]     The Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 4392] (the "Detroit Plan") classifies these bonds in Classes 1A-5 to 1A-21 (DWSD Water Bond Series 2001-C), 1A-96 to 1A-113 (DWSD Water Bond Series 2005-B), and 1A-243 (DWSD Sewer Bond Series 2001-E). *See* Detroit Plan Ex. I.A.110. Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Detroit Plan.

BHAC agrees that National is the holder entitled to vote on behalf of those bonds in this chapter 9 case.[2]

3. In contrast to National, FGIC is not a solvent insurer and will not perform its obligations under the primary policies insuring the FGIC/BHAC Insured Bonds. In June 2012, apparently as a result of the 2008 financial crisis, FGIC was put into a rehabilitation proceeding by its insurance regulator under article 74 of the New York Insurance Law. A year later, the court with jurisdiction over FGIC's rehabilitation proceeding approved the First Amended Plan of Rehabilitation of Financial Guaranty Insurance Company, *In re Fin. Guar. Ins. Co.*, No. 401265/2012 (N.Y. Sup. Ct. June 4, 2013) (available at http://www.fgic.com/policyholderinfocenter/) (the "FGIC Plan"), and that plan became effective and binding on FGIC in August 2013. Under the FGIC Plan, FGIC is currently limited to paying 17 cents on the dollar on any policy claims.[3] Thus, FGIC is *today* an insolvent insurer, whose regulator, together with the court having jurisdiction over its rehabilitation proceeding, restricts it from fully and timely meeting its policy obligations as they become due.

4. With respect to the FGIC/BHAC Insured Bonds, this means that the nominal holders of those bonds will turn to BHAC for payment of any shortfall in interest and principal payments if and when the City of Detroit (the "City") and FGIC fail to honor their respective obligations. This is not a hypothetical scenario: it has already

---

[2] The Detroit Plan classifies those bonds in Classes 1A-233, 1A-234, 1A-235, 1A-236, 1A-237, 1A-238, 1A-239, 1A-240 and 1A-241 (DWSD Sewer Bond Series 2001-C(2)), and 1A-306 (DWSD Sewer Bond Series 2006-A).

[3] FGIC Plan, Ex. B (Restructured Policy Terms) at § 1.1.A; Notice of Effective Date and Initial CPP, *In re Fin. Guar. Ins. Co.*, No. 401265/2012 (N.Y. Sup. Ct. Aug. 19, 2013) (available at http://www.fgic.com/policyholderinfocenter/) ("FGIC Notice of Effective Date").

2

occurred with respect to certain other bonds insured by both FGIC and BHAC. Specifically, as a result of the City's failure to pay interest on the Detroit Retirement Systems Funding Trust 2006 Certificates of Participation Series 2006-A ("2006-A COPs") and FGIC's court-mandated failure (consistent with the FGIC Plan) to honor its obligations as insurer of those securities, BHAC has already had to make two payments under a policy insuring approximately $10 million of those securities.

5.        It is certain, therefore, that if the City defaults under the FGIC/BHAC Insured Bonds, FGIC will pay only pennies on the dollar on any related policy claims asserted against it, and BHAC will be required to make up the shortfall for nominal holders of those bonds in accordance with the terms of its policies. For this reason, BHAC is the economic party in interest with respect to claims under the FGIC/BHAC Insured Bonds, and should be entitled to vote as the exclusive "holder" of those bonds under sections 1126(a) and 1126(c) of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").[4]

6.        The documentation for the FGIC/BHAC Insured Bonds is entirely consistent with the logical and equitable result that BHAC is the "holder" entitled to vote. The bond documentation unequivocally provides that FGIC is, under the applicable ordinances, the "holder" of those bonds for all enforcement and amendment purposes— which include voting rights in bankruptcy—but only so long as FGIC is in compliance with its payment obligations under the applicable policies. If FGIC fails to comply with its obligations, the documentation makes equally clear that BHAC becomes the

---

[4]    BHAC's asserted right to vote on the Detroit Plan with respect to the FGIC/BHAC Insured Bonds includes the right to make distribution elections under the Detroit Plan for the bonds.

designated "holder" entitled to assert those same voting rights and other remedies under the applicable ordinances.

7. The meaning and intent of the bond documentation is to treat BHAC as the holder of the bonds if and when FGIC defaults, which FGIC is certain to do. This Court should give effect to the clear terms of the bond documentation.

## FACTUAL BACKGROUND

### I. Insurers' Control And Consent Rights Under Bond Documentation

#### A. Overview Of Insurers' Relative Rights

8. FGIC issued financial guaranty insurance policies for the benefit of holders of the FGIC/BHAC Insured Bonds in connection with the original issuance of the bonds in 2001 and 2005. In 2008, at the time of the financial crisis, the bonds were remarketed. In that remarketing, FGIC's policies remained in effect and BHAC—even then perceived as a more financially stable insurer than FGIC—issued additional financial guaranty insurance policies for the benefit of the same bondholders. Both the FGIC policies and the BHAC policies guarantee the scheduled payment when due of the principal of and interest on the FGIC/BHAC Insured Bonds, but BHAC's obligations stand behind those of FGIC: only if FGIC fails to meet its obligations is BHAC required to make any payment.

9. This remarketing transaction, a product of the 2008 financial crisis, was without precedent in the municipal finance market at the time. In a typical secondary insurance arrangement, an individual bondholder purchases additional insurance protection for its insured bonds behind the scene, without the participation or even knowledge of the bond issuer or primary insurer. By contrast, the remarketing of the

4

FGIC/BHAC Insured Bonds was done as part of a complex, negotiated transaction in which FGIC, the City and the applicable bond trustees all participated and consented. As a condition to issuing its policies, BHAC negotiated and obtained, directly from the City and the applicable bond trustees as part of the documentation for the remarketed bonds, broad control and consent rights. Under the remarketing deal, so long as FGIC continued performing its obligations under its policies, FGIC would continue to enjoy the broad control and consent rights granted to it when the bonds were originally issued. Upon a FGIC default, however, those control and consent rights shift to BHAC together with the economic risk of loss.

### B.    BHAC's Control And Consent Rights

10.    The documentation for the FGIC/BHAC Insured Bonds provides that BHAC is a "holder" of the FGIC/BHAC Insured Bonds for all purposes (other than receiving notices of default) under the applicable ordinances, including voting rights under Bankruptcy Code section 1126(a).[5] *See* To Decl. Ex. 1 (BHAC Sewer

---

[5]    BHAC's rights under the FGIC/BHAC Insured Bonds are found in two substantially identical supplements to the prior sale orders for these bonds. Declaration of My Chi To in Support of Berkshire Hathaway Assurance Corporation's Notice of Asserted Right to Vote Claims, dated May 23, 2014, filed concurrently herewith ("To Decl.") Ex. 1 (Supplement to Prior Sale Orders of Finance Director of the City of Detroit with respect to $122,905,000 Sewage Disposal System Senior Lien Revenue Refunding Bonds (Modal Fixed Rate) Series 2001(C-2), $136,150,000 Sewage Disposal System Second Lien Revenue Bonds (Modal Fixed Rate) Series 2001(E) and $123,655,000 Sewage Disposal System Revenue Second Lien Bonds (Fixed Rate) Series 2006(A), dated May 1, 2008) ("BHAC Sewer Supplement") at Ex. A (Additional Bond Insurer Requirements Berkshire Hathaway Assurance Corporation) ("BHAC Requirements"); *id.* Ex. 2 (Supplement to Prior Sale Orders of Finance Director of the City of Detroit with respect to $190,405,000 City of Detroit Water Supply System Revenue Refunding Bonds Second Lien Bonds (Fixed Rate), Series 2001-C and $194,900,000 Water Supply System Revenue Senior Lien Bonds (Fixed Rate), Series 2005-B, dated May 6, 2008) ("BHAC Water Supplement") at Ex. A (BHAC Requirements).

5

Supplement) at Ex. A (BHAC Requirements) § 1(c) ("For all purposes of the Bond Ordinance except the giving of notice of default to Holders of the Bonds, BHAC shall be deemed to be a holder of the Bonds."); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) § 1(c) (same).

11.     The bond documentation also provides BHAC with consent rights for (i) any acceleration or annulment of the bonds and (ii) any amendment or supplement to the applicable ordinances.  To Decl. Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements) § 1(a) ("Any acceleration of the Bonds or any annulment thereof is subject to the prior written consent of BHAC."); § 2(a) ("Any amendment or supplement to the Bond Ordinance requiring consent of Holders of the Bonds is also subject to written consent of BHAC before it shall become effective."); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) §§ 1(a); 2(a) (same).

12.     In addition, the rights granted to BHAC under the bond documentation broadly incorporate all of FGIC's control and consent rights, which BHAC is entitled to exercise in the event of a FGIC default.  *See* To Decl. Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements), Preamble (incorporating "all terms and conditions of the requirements imposed by Financial Guaranty Insurance Company ('FGIC') on the Bonds when originally issued"); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements), Preamble (same).

**C.      FGIC's Control And Consent Rights, Subject To A FGIC Default**

13.     FGIC's initial control and consent rights are largely the same for each series of FGIC/BHAC Insured Bonds.  In each case, at the time of the original bond issue and continuing until a FGIC default, FGIC had the status of the "holder" of the bonds for

almost every purpose, including exercise of remedies, acceleration, amendment and annulment of the bonds.

14.    With respect to DWSD Sewer Bond Series 2001-E,[6] FGIC was "deemed to be the sole holder of the FGIC Insured Securities" for "all purposes of the Bond Ordinance *except* the giving of notice of default to Holders of FGIC Insured Securities[.]" To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (Sewer Financial Guaranty Insurance Supplement) § 1-1.03 (italics in original).  The Sewer Financial Guaranty Insurance Supplement also provided FGIC or its successors consent rights for (i) any acceleration or annulment of the bonds and (ii) any amendment or supplement to the applicable ordinances.  *Id.* at § 1-1.01 ("Any acceleration of the FGIC Insured Securities or any annulment thereof is subject to the prior written consent of [FGIC or its successor].");  *id.* at § 1-2.02(b) ("Any other amendment or supplement to the Bond Ordinance requiring consent of Holders of FGIC Insured Senior Lien Bonds or FGIC Insured Second Lien Bonds is also subject to written consent of [FGIC or its successor] before it shall become effective as to FGIC Insured Senior Lien Bonds or FGIC Insured Second Lien bonds, as the case may be.").

---

[6]    FGIC's rights under DWSD Sewer Bond Series 2001-E were established pursuant to a composite sale order for several different series of bonds, with specific terms for this series included in a supplement to that sale order.  *See* To Decl. Ex. 3 (Composite Sale Order of the Finance Director of the City of Detroit with respect to Series 2001 Securities) (the "Sewer Composite Sale Order");  *id.* Ex. 4 (The Variable Rate Mode Supplement and Agreement among City of Detroit, as Issuer, U.S Bank Trust National Association, as Transfer Agent, and U.S Bank Trust National Association, as Tender Agent, Dated as of September 1, 2001) (the "Sewer Variable Rate Supplement").  Terms applicable to FGIC's insurance for DWSD Sewer Bond Series 2001-E were attached as a supplement to, and incorporated in, the Sewer Composite Sale Order.  *See* To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (the "Sewer Financial Guaranty Insurance Supplement").

7

15.     DWSD Water Bonds Series 2001-C and 2005-B provided similar control and consent rights from issuance and continuing until a FGIC default.  The DWSD Water Bonds Series 2001-C[7] state that the "Bond Insurer shall be deemed to be the sole holder of the Bonds it has insured" for "all purposes of the Ordinance or Bond Resolution provisions governing events of default and remedies, except the giving of notice of default to Bondholders[.]"  To Decl. Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 2(e).  With respect to DWSD Water Bonds Series 2005-B,[8] the sale order did not expressly refer to FGIC as a "holder" of the bonds, but, along with DWSD Water Bonds Series 2001-C, expressly provided FGIC and its successors with broad consent rights over amendments, acceleration and annulment of the bonds.  To Decl. Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 2(c) (any acceleration or annulment of the bonds); § 3(a) (any amendment or supplement to the Bond Ordinance or Bond Resolution); *id.* Ex. 7 (Water 2005-B Sale Order) at § 702(i) (any amendment to the Bond Ordinance).

---

[7]     FGIC's rights under DWSD Water Bonds Series 2001-C were established pursuant to a sale order and supplement, which include terms related to the bonds and their insurance.  To Decl. Ex. 5 (Sale Order of Finance Director of the City of Detroit with respect to $192,290,000 City of Detroit Water Supply System Revenue Refunding Second Lien Bonds (Variable Rate Demand), Series 2001-C, dated May 31, 2001) (the "Water 2001-C Sale Order"); *id.* Ex. 6 (Variable Rate Demand Bonds Supplement and Agreement among City of Detroit, as Issuer, U.S Bank Trust National Association, as Trustee and Transfer Agent, and U.S Bank Trust National Association, as Tender Agent, Dated as of May 31, 2001) (the "Water 2001-C Variable Rate Supplement") at Ex. C (Bond Insurer Requirements) (the "Water 2001-C Bond Insurer Requirements").

[8]     FGIC's rights under DWSD Water Bonds Series 2005-B were established pursuant to a sale order.  To Decl. Ex. 7 (Sale Order of Finance Director of the City of Detroit with respect $195,000,000 City of Detroit Water Supply System Revenue Senior Lien Bonds (Variable Rate Demand), Series 2005-B, dated March 22, 2005) (the "Water 2005-B Sale Order").

8

16.     Thus, the express language of the relevant bond documentation, in the first instance, provided FGIC with rights as the "holder" of the bonds.  The bonds also, however, expressly provided that FGIC was to forfeit its ability to exercise these rights if it failed to comply with its payment obligations under the applicable policies.  *See* To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (Sewer Financial Guaranty Insurance Supplement) § 1.02 (FGIC's rights in effect "for only so long as Financial Guaranty Insurance Company . . . has not failed to comply with its payment obligations under the FGIC Bond Insurance Policy"); *id.* Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 2(c) ("Any acceleration of the Bonds or any annulment thereof shall be subject to the prior written consent of [FGIC or its successor] (if it has not failed to comply with its payment obligations under the Bond Insurance Policy)."); *id.* at § 2(e) ("For all purposes of the Ordinance or Bond Resolution provisions governing events of default and remedies, except the giving of notice of default to Bondholders, [FGIC or its successor] shall be deemed to be the sole holder of the Bonds it has insured for so long as it has not failed to comply with its payment obligations under the Bond Insurance Policy.").

17.     The applicable bond documentation provides that BHAC becomes, for voting and other enforcement purposes, the holder of the applicable FGIC/BHAC Insured Bonds if FGIC fails to comply with its insurance obligations.  *See, e.g.*, To Decl. Ex. 8 (Remarketing Circular for $382,710,000 City of Detroit, Michigan Sewage Disposal System, Dated May 1, 2008) ("Sewer Bond Remarketing Circular") at 22 ("So long as FGIC's policy is in effect, FGIC shall be deemed to be the sole holder of the Fixed Rate Bonds for purposes of this provision.  If FGIC's policy is not in effect, BHAC shall be

9

deemed to be the sole holder of the Fixed Rate Bonds for purposes of this provision

[Bondholder Rights and Remedies], so long as BHAC's policy is in effect."); *id.* Ex. 9

(Remarketing Circular for $385,305,000 City of Detroit, Michigan Water Supply System,

Dated May 6, 2008) ("Water Bond Remarketing Circular") at 21 (same).

## II.      Procedural Background

18.      On July 18, 2013, the City filed a voluntary petition for relief with this

Court under chapter 9 of the Bankruptcy Code.  Since that date, the City has continued to

pay debt service as and when due on the FGIC/BHAC Insured Bonds.

19.      Before the applicable bar date, BHAC filed a proof of claim in this chapter

9 case setting forth the basis for its claim for (i) all of its rights to payment and other

rights and claims, including, without limitation, any rights of subrogation with respect to

the FGIC/BHAC Insured Bonds and (ii) all other rights and claims arising under or with

respect to the applicable bond documentation [Proof of Claim #1158].

20.      On February 21, 2014, the City filed a plan for the adjustment of its debts

and a related disclosure statement [Docket Nos. 2708 and 2709].  The City filed amended

plans and amended disclosure statements on March 31, 2014 [Docket Nos. 3380 and

3382], April 16, 2014 [Docket Nos. 4140 and 4141] and on April 25, 2014 [Docket Nos.

4271 and 4272].  On April 7, 2014, BHAC filed its Limited Objection to Motion of the

City of Detroit for Approval of the Proposed Disclosure Statement [Docket No. 3856].

The Disclosure Statement and Detroit Plan were filed on May 5, 2014, and this Court

approved the Disclosure Statement on May 5, 2014 [Docket No. 4401].

21.      On March 11, 2014, the Court ordered parties, including bond insurers, to

file notices of asserted rights to vote claims and briefs in support thereof.  Order (I)

Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment, at § 9.a [Docket No. 2984].  On April 21, 2014, the Court ordered that such notices and briefs be filed on May 26, 2014.  Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, at § 8(b) [Docket No. 4202].  At a hearing on May 15, 2014, the Court adjusted the schedule so that the notices and briefs were to be filed on May 27, 2014.

22.     On May 12, 2014, BHAC filed an Objection to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 4657].

## ARGUMENT

23.     Section 1126(a) of the Bankruptcy Code provides that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan."  11 U.S.C. § 1126(a).  Section 1126(c) further provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan."  11 U.S.C. § 1126(c).  Both sections are made applicable to chapter 9 by section 901(a).  11 U.S.C. § 901(a) (incorporating by reference, among others, sections 1126(a) and 1126(c)).

24.     The Court should give effect to the clear terms of the bond documentation and determine that BHAC is the "holder" of the FGIC/BHAC Insured Bonds for voting purposes under section 1126(a) of the Bankruptcy Code.

25.     In the alternative, if this Court finds that BHAC is not the holder, or otherwise entitled to vote on behalf, of the FGIC/BHAC Insured Bonds, no party entitled

11

to vote the bonds may do so without BHAC's prior written consent given that (i) the bond documentation expressly requires BHAC's consent for any annulment of the bonds (which is effectively what the Detroit Plan provides by exchanging existing bonds for new bonds with different terms), and (ii) BHAC, and not the nominal holders of the bonds (or FGIC), will bear the overwhelming share of the economic consequences of any impairment of the bonds.

## I. The Bond Documentation Clearly Provides That The Insurer Of The FGIC/BHAC Insured Bonds Is The Holder For Purposes of Voting on The Detroit Plan.

26.     The documentation for the FGIC/BHAC Insured Bonds clearly provides that BHAC is a holder of the bonds "[f]or all purposes of the Bond Ordinance except the giving of notice of default to Holders of the Bonds[,]" including for voting purposes in this chapter 9 case.  To Decl. Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements) § 1(c); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) § 1(c).  The documentation also reinforces BHAC's rights as a holder of the bonds by incorporating "all terms and conditions of the requirements" imposed by FGIC on the FGIC/BHAC Insured Bonds.  To Decl. Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements) Preamble; *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) Preamble.

27.     FGIC's requirements in connection with the FGIC/BHAC Insured Bonds provide that FGIC was the holder of the bonds under the applicable ordinances—and therefore for voting purposes under chapter 9—so long as FGIC was able to comply with its payment obligations under the applicable policies.  The Sewer Financial Guaranty Insurance Supplement provides that "[f]or all purposes of the Bond Ordinance *except the*

giving of notice of default to Holders of FGIC Insured Securities, [FGIC or its successor] shall be deemed to be the sole holder of the FGIC Insured Securities." To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (Sewer Financial Guaranty Insurance Supplement) § 1-1.03 (italics in original). The Water 2001-C Bond Insurer Requirements provide that "for all purposes of the Ordinance or Bond Resolution provisions governing events of default and remedies, except the giving of notice of default to Bondholders, [FGIC or its successor] shall be deemed to be the sole holder of the Bonds it has insured for so long as it has not failed to comply with its payment obligations under the Bond Insurance Policy." To Decl. Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 2(e).

28. Courts have given effect to "no action" clauses, such as the language recognizing BHAC or FGIC as the "holder" of the FGIC/BHAC Insured Bonds, in bankruptcy. Specifically, the agreements of nominal holders of bonds to cede their bankruptcy rights to insurers are both permissible and enforceable, in the context of the insurers' agreement to make those nominal holders whole in the event of issuer default. *See, e.g., In re Am. Rds. LLC*, 496 B.R. 727 (Bankr. S.D.N.Y. 2013). In *American Roads*, Judge Lifland held that, where "financing documents [made] clear that the limitations on the Bondholders' collective action rights and the delegation of authority to [the bond insurer were] substantial[,]" the bond insurer—not the bondholders—had standing as the creditor in the bankruptcy case. *Id.* at 730.

29. The bonds at issue in *American Roads* were similar to the FGIC/BHAC Insured Bonds. Specifically, the contracts in *American Roads* provided, among other things, that (i) the insurer "controls the enforcement of rights and remedies upon an event

13

of default" and (ii) the insurer "has been appointed as the 'sole holder' and the 'sole representative' for all purposes under the financing documents[.]" *Id.* These provisions gave the insurer exclusive standing to enforce the bonds, implicitly including the right to vote on a plan in bankruptcy, even though they did not "contain specific language barring [the bondholders'] participation in bankruptcy proceedings" because they "unambiguously prevent[ed] bondholders from asserting any claims to collateral or enforcing any rights against the Debtors, whether or not the Debtors [were] in insolvency proceedings." *Id.* at 731.

30.     One of the factors in the *American Roads* decision was that the bondholders were sophisticated investors "fully aware of the implications" of their waivers of rights. *Id.* at 732 (citing *In re Ion Media Networks*, 419 B.R. 585, 593-97 (Bankr. S.D.N.Y. 2009); *In re GSC, Inc.*, 453 B.R. 132, 164 n. 47 (Bankr. S.D.N.Y. 2011); *In re Erickson Ret. Cmtys.*, 425 B.R. 309, 314-16 (Bankr. N.D. Tex. 2010); *In re Aereosol Packaging LLC*, 362 B.R. 43, 47 (Bankr N.D. Ga. 2006)). Similarly, in this case, many—if not most—of the holders of the FGIC/BHAC Insured Bonds are sophisticated institutional investors who were undoubtedly aware of the implications of the "holder" language. *See, e.g.,* Obj. of the Ad Hoc Comm. of DWSD Bondholders to the City's Fourth Am. Plan of Adjustment and Joinder to the DWSD Bond Trustee's Obj. to the City's Fourth Am. Plan of Adjustment [Docket No. 4671] at 1 n. 1 ("Ad Hoc Committee members are BlackRock Financial Management, Inc., Eaton Vance Management, Fidelity Management & Research Company, Franklin Advisers, Inc. and Nuveen Asset Management.").

31.     Therefore, as between the nominal holders of the FGIC/BHAC Insured

Bonds on the one hand and FGIC and BHAC on the other, the insurers are the holders of

the bonds and are entitled to vote.  Before FGIC's insolvency, FGIC would have been

entitled to vote.  Now, because FGIC is not in a position to honor policy claims in respect

of the FGIC/BHAC Insured Bonds, it should not be recognized as the holder of the bonds

for purposes of sections 1126(a) and 1126(c) of the Bankruptcy Code.[9]

## II.     Because FGIC Is Insolvent And Will Not Honor Its Obligations As A Bond Insurer, BHAC Is The Holder Of The FGIC/BHAC Insured Bonds Entitled To Vote.

32.     Upon FGIC's failure to comply with its payment obligations under the

applicable policies, the bond documentation makes clear that BHAC becomes, for voting

purposes, the holder of the FGIC/BHAC Insured Bonds under the applicable ordinances.

33.     Under the plain meaning of the Sewer Financial Guaranty Insurance

Supplement and Water 2001-C Bond Insurer Requirements, FGIC is deemed the holder

of the FGIC/BHAC Insured Bonds only for so long it as complies with its payment

obligations under the applicable policies.  *See* To Decl. Ex. 3 (Sewer Composite Sale

Order) at Annex E (Sewer Financial Guaranty Insurance Supplement) § 1.02 (rights in

effect "for only so long as [FGIC] . . . has not failed to comply with its payment

obligations under the FGIC Bond Insurance Policy"); *id.* Ex. 6 (Water 2001-C Variable

Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) §§ 2(c), 2(e)

---

[9]     BHAC joins in any additional arguments made by FGIC in its brief in support of its
notice of asserted voting rights with respect to the FGIC/BHAC Insured Bonds
solely to the extent that such arguments establish that the insurer, and not the
nominal holders of the bonds, is entitled to vote on the Detroit Plan.

15

(rights contingent on FGIC "not fail[ing] to comply with its payment obligations under the Bond Insurance Policy").

34.     Upon FGIC's failure to comply with its payment obligations under the applicable policies, however, BHAC becomes the holder of the FGIC/BHAC Insured Bonds under the applicable ordinances by virtue of the express incorporation in the BHAC Requirements of "all terms and conditions of the requirements imposed by Financial Guaranty Insurance Company ('FGIC') on the Bonds when originally issued[.]" To Decl. Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements), Preamble; *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements), Preamble. *See also* To Ex. 8 (Sewer Bond Remarketing Circular) at 22 ("So long as FGIC's policy is in effect, FGIC shall be deemed to be the sole holder of the Fixed Rate Bonds for purposes of this provision.  If FGIC's policy is not in effect, BHAC shall be deemed to be the sole holder of the Fixed Rate Bonds for purposes of this provision [Bondholder Rights and Remedies], so long as BHAC's policy is in effect."); *id.* Ex. 9 (Water Bond Remarketing Circular) at 21 (same).

35.     FGIC is an insolvent insurer operating under the constraints of a court-approved plan of rehabilitation that plainly prohibits FGIC from honoring its policy obligations relating to the FGIC/BHAC Insured Bonds.  Specifically, under the FGIC Plan, FGIC is currently prohibited from paying more than 17 cents on the dollar on any policy claims and is never expected to be able to pay anywhere close to the full amount of the obligations.  FGIC Plan Ex. B (Restructured Policy Terms) at § 1.1.A; FGIC Notice of Effective Date; Disclosure Statement for Plan of Rehabilitation for Financial Guaranty Insurance Company, *In re Fin. Guar. Ins. Co.*, No. 401265/2012, at  2 (N.Y.

16

Sup. Ct. Sept. 21, 2012) (available at http://www.fgic.com/policyholderinfocenter/) ("FGIC Disclosure Statement") (projecting "the average ultimate recovery" for policyholders to be "approximately 24% to 25% of each Permitted Policy Claim"). In fact, as a result of FGIC's failure to honor policy claims as mandated by the FGIC Plan, BHAC has already had to make two payments under a policy insuring approximately $10 million of 2006-A COPs in respect of interest payments due on June 15, 2013 and December 15, 2013.

36.     Under the terms of the bond documentation, FGIC forfeits its rights as a "holder" if BHAC is required to step in to make bondholders whole, even if FGIC makes a partial payment: FGIC's control and consent rights are forfeited to BHAC if FGIC fails, in any way, "to comply with its payment obligations" under its insurance policies. Under the FGIC policies, FGIC is obligated to pay "that portion of the principal and interest on the . . . debt obligations . . . which shall become Due for Payment but shall be unpaid by reason of Nonpayment by the Issuer." To Decl. Ex. 10 (Municipal Bond New Issue Insurance Policy Number 01010573) at 1; *see also id.* Ex. 11 (Municipal Bond New Issue Insurance Policy Number 05010189) at 1; *id.* Ex. 12 (Municipal Bond New Issue Insurance Policy Number 0102198) at 1. FGIC's court-mandated prohibition, under the FGIC Plan, from paying anything beyond a fraction of scheduled amounts due on the FGIC/BHAC Insured Bonds is a failure "to comply with its payment obligations."

37.     No policy claims have been made in respect of the FGIC/BHAC Insured Bonds to date because the City has been paying debt service as and when due on these bonds. However, should the Detroit Plan be confirmed as currently proposed, these bonds will be impaired and policy claims will almost certainly be made, at a minimum,

for any reduction in scheduled interest payments between the existing bonds and the new bonds to be issued under the Detroit Plan. In that event, given the terms of the FGIC Plan, BHAC will be responsible for approximately 83% of any policy claim made (while the percentage contribution may vary, it is clear that under any scenario, FGIC will pay only a small percentage of policy claims and BHAC will be responsible for making nominal holders whole for the remained). *See* FGIC Disclosure Statement at 2 (projecting policyholders ultimately to recover only 24%-25% of their policy claims).

38.     Under these circumstances, FGIC should not be permitted to retain its rights under the FGIC/BHAC Insured Bonds, including its right as a holder of the bonds. The Court should give effect to the clear terms of the bond documentation and determine that BHAC, and not FGIC, is the holder of the FGIC/BHAC Insured Bonds for purposes of sections 1126(a) and 1126(c) of the Bankruptcy Code.[10]

## III.     Neither The Nominal Holders Of The FGIC/BHAC Insured Bonds Nor FGIC Should Be Entitled To Vote Those Bonds Without BHAC's Prior Written Consent.

39.     If this Court finds that BHAC is not the holder, or otherwise entitled to vote on behalf of, the FGIC/BHAC Insured Bonds, no party entitled to vote the bonds may do so without BHAC's prior written consent given that (i) the bond documentation expressly requires BHAC's consent for any annulment of the bonds and (ii) BHAC,

---

[10]     In the event that this Court finds the bond documentation to be ambiguous, the Court still should determine that BHAC is entitled to vote on behalf of the FGIC/BHAC Insured Bonds. Under Michigan law, when a contract is capable of two different constructions, courts "prefer a reasonable and fair construction over a less just and less reasonable construction." *Gen. Star Nat. Ins. Co. v. Boudreau*, No. 287456, 2010 WL 143475, at *2 (Mich. App. Jan. 14, 2010) (quoting *Schroeder v. Terra Energy*, 223 Mich. App. 176, 189 (Mich. App. 1997)).

18

rather than FGIC or any nominal holders of the bonds, will bear the overwhelming share of the economic consequences of any impairment of the bonds.

40.     Both the BHAC Requirements and the Sewer Financial Guaranty Insurance Supplement and Water 2001-C Bond Insurer Requirements incorporated in the bond documentation for BHAC's benefit, all of which are agreements to which the City is a party, state that any annulment of the bonds is subject to BHAC's prior written consent. *See* To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (Financial Guaranty Insurance Supplement) § 1-1.01; *id.* Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 2(c); *id.* Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements) § 1(a); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) § 1(a). They further state that any amendment or supplement to the Bond Ordinance requires BHAC's prior written consent. *See* To Decl. Ex. 3 (Sewer Composite Sale Order) at Annex E (Financial Guaranty Insurance Supplement) § 1-2.02(b); *id.* Ex. 6 (Water 2001-C Variable Rate Supplement) at Ex. C (Water 2001-C Bond Insurer Requirements) § 3(a); *id.* Ex. 1 (BHAC Sewer Supplement) at Ex. A (BHAC Requirements) § 2(a); *id.* Ex. 2 (BHAC Water Supplement) at Ex. A (BHAC Requirements) § 2(a).

41.     The Detroit Plan effectively proposes cancelling existing DWSD bonds for new DWSD bonds, which would require BHAC's prior written consent. *See* Detroit Plan at II.B.3.a.ii.[11] BHAC's express consent rights prohibit the nominal holders of the FGIC/BHAC Insured Bonds from unilaterally voting on the Detroit Plan, and allowing

---

[11]     The common understanding of the term "annulment" is that it is synonymous with "cancellation." *See* Black's Law Dictionary, annulment ("1. The act of nullifying or making void."); *Id.*, cancellation (". . . 2. An annulment or termination of a promise or an obligation.").

these bondholders, rather than BHAC, to unilaterally vote on the Detroit Plan would defeat those rights. At a minimum, therefore, the nominal holders of the FGIC/BHAC Insured Bonds (or FGIC, if it is determined to be entitled to vote on their behalf) must obtain BHAC's written consent prior to voting.[12] *See Am. Rds.*, 496 B.R. at 730 (clause precluding bondholders from "institut[ing] or direct[ing] proceedings with respect to the enforcement of the terms of the financing documents without the consent" of insurers was a factor in determining that insurers—not bondholders—had standing in bankruptcy proceeding).

42. It is appropriate for this Court to enforce BHAC's bargained-for consent rights. Broad control rights in favor of bond insurers are important and customary terms of insured financings because the insurers, and not the insureds, bear the risk of loss associated with the bonds. In this case, given that BHAC will bear the overwhelming share of the economic consequences of any impairment of the bonds, it would be inequitable to allow either the nominal holders of these bonds or FGIC to vote on the Detroit Plan in respect of these bonds, without BHAC's prior written consent.

*[Rest of page intentionally left blank]*

---

[12] BHAC reserves the right to deny coverage to any bondholder that votes on the Detroit Plan without the prior written consent of BHAC.

20

WHEREFORE, BHAC respectfully requests that this Court determine that BHAC is the holder, or is otherwise entitled to vote (and make distribution elections) on behalf, of the FGIC/BHAC Insured Bonds, and grant BHAC such further relief as this Court deems just and proper.

Dated: New York, New York
May 23, 2014

Respectfully submitted,

/s/ My Chi To

DEBEVOISE & PLIMPTON LLP

M. Natasha Labovitz
My Chi To
919 Third Avenue
New York, New York 10022
Telephone:    (212) 909-6000
Facsimile:    (212) 909-6836
nlabovitz@debevoise.com
mcto@debevoise.com

*Attorneys for Berkshire Hathaway*
*Assurance Corporation*

21