**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| **In re:** | ) | Chapter 9 |
| | ) | |
| **CITY OF DETROIT, MICHIGAN,** | ) | Case No. 13-53846 |
| | ) | |
| **Debtor.** | ) | Hon. Steven W. Rhodes |

### DECLARATION OF MY CHI TO IN SUPPORT OF
### BERKSHIRE HATHAWAY ASSURANCE CORPORATION'S
### NOTICE OF ASSERTED RIGHT TO VOTE CLAIMS

1.      I am over the age of 18 and am a partner at the law firm of Debevoise &

Plimpton LLP, counsel for Berkshire Hathaway Assurance Corporation.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Supplement

to Prior Sale Orders of Finance Director of the City of Detroit with respect to

$122,905,000 Sewage Disposal System Senior Lien Revenue Refunding Bonds (Modal

Fixed Rate) Series 2001(C-2), $136,150,000 Sewage Disposal System Second Lien

Revenue Bonds (Modal Fixed Rate) Series 2001(E) and $123,655,000 Sewage Disposal

System Revenue Second Lien Bonds (Fixed Rate) Series 2006(A), dated May 1, 2008.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the Supplement

to Prior Sale Orders of Finance Director of the City of Detroit with respect to

$190,405,000 City of Detroit Water Supply System Revenue Refunding Second Lien

Bonds (Fixed Rate), Series 2001-C and $194,900,000 Water Supply System Revenue

Senior Lien Bonds (Fixed Rate), Series 2005-B, dated May 6, 2008.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the Composite Sale Order of the Finance Director of the City of Detroit with respect to Series 2001 Securities.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of the Variable Rate Mode Supplement and Agreement among City of Detroit, as Issuer, U.S Bank Trust National Association, as Transfer Agent, and U.S Bank Trust National Association, as Tender Agent, Dated as of September 1, 2001.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of the Sale Order of Finance Director of the City of Detroit with respect to $192,290,000 City of Detroit Water Supply System Revenue Refunding Second Lien Bonds (Variable Rate Demand), Series 2001-C, dated May 31, 2001.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of the Variable Rate Demand Bonds Supplement and Agreement among City of Detroit, as Issuer, U.S Bank Trust National Association, as Trustee and Transfer Agent, and U.S Bank Trust National Association, as Tender Agent, Dated as of May 31, 2001.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of the Sale Order of Finance Director of the City of Detroit with respect $195,000,000 City of Detroit Water Supply System Revenue Senior Lien Bonds (Variable Rate Demand), Series 2005-B, dated March 22, 2005.

9.      Attached hereto as **Exhibit 8** is a true and correct copy of the Remarketing Circular for $382,710,000 City of Detroit, Michigan Sewage Disposal System, Dated May 1, 2008.

2

10.     Attached hereto as **Exhibit 9** is a true and correct copy of the Remarketing

Circular for $385,305,000 City of Detroit, Michigan Water Supply System, Dated May 6,

2008.

11.     Attached hereto as **Exhibit 10** is a true and correct copy of FGIC

Municipal Bond New Issue Insurance Policy Number 01010573.

12.     Attached hereto as **Exhibit 11** is a true and correct copy of FGIC

Municipal Bond New Issue Insurance Policy Number 05010189.

13.     Attached hereto as **Exhibit 12** is a true and correct copy of FGIC

Municipal Bond New Issue Insurance Policy Number 01012198.

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct, to my personal knowledge.


Dated:  New York, New York          /s/ My Chi To_____
        May 23, 2014                My Chi To

# Exhibit 1

**Supplement to Prior Sale Orders of Finance Director of the City of Detroit
with respect to**

**$122,905,000
Sewage Disposal System
Senior Lien Revenue Refunding Bonds
(Modal Fixed Rate) Series 2001(C-2)
(the "Series 2001(C-2) Bonds)**

**$136,150,000
Sewage Disposal System
Second Lien Revenue Bonds
(Modal Fixed Rate) Series 2001(E)
(the "Series 2001(E) Bonds")
and
$123,655,000
Sewage Disposal System
Revenue Second Lien Bonds
(Fixed Rate) Series 2006(A)
(the "Series 2006(A) Bonds")
(collectively, the "Bonds")**

RECITALS

1.      The Series 2001(C-2) Bonds were issued as variable rate bonds pursuant to a Resolution authorizing the issuance of the Series 2001(C-2) Bonds, adopted by the City Council on August 1, 2001, as amended October 10, 2001 (the "2001 C-2 Bond Resolution"), together with the Composite Sale Order of the Finance Director of the City dated October 1, 2001, as supplemented by a Variable Rate Mode Supplement and Agreement dated as of September 1, 2001, as amended April 23, 2008 (collectively, the "2001 C-2 Sale Order").

2.      The Series 2001(E) Bonds were issued as variable rate bonds pursuant to a Resolution authorizing the issuance of the Series 2001(E) Bonds, adopted by the City Council on August 1, 2001, as amended October 10, 2001 (collectively, the "2001 E Bond Resolution"), together with the Composite Sale Order of the Finance Director of the City dated October 18, 2001, as supplemented by a Variable Rate Mode Supplement and Agreement dated as of September 1, 2001, as amended April 23, 2008 (collectively, the "2001 E Sale Order").

3.      The Series 2006(A) Bond were issued as variable rate bonds pursuant to a Resolution authorizing the issuance of the Series 2006(A) Bonds, adopted by the City Council on February 15, 2006 (the "2006 A Bond Resolution and, together with the 2001 C-2 Bond Resolution and the 2001 E Bond Resolution, the "Prior Bond Resolutions"), together with the Sale Order of the Interim Finance Director of the City dated August 4, 2006, as supplemented by a Variable Rate Mode and Auction Rate Mode Supplement and Agreement dated as of August 1,

2006, as amended April 23, 2008 (collectively, the "2006 A Sale Order" and, together with the 2001 C-2 Sale Order and the 2001 E Sale Order, the "Prior Sale Orders").

4. In connection with the fixed rate remarketing of the Bonds, the Finance Director finds it necessary to supplement the Prior Sale Orders as herein provided.

**Now, Therefore**, the Finance Director of the City of Detroit hereby orders on behalf of the City as follows:

ARTICLE I
AUTHORITY AND DEFINITIONS

Section 101. Authority. This Supplement to Prior Sale Orders is issued under authority of the Prior Bond Resolutions and the Prior Sale Orders.

ARTICLE II
TERMS OF THE BONDS

Section 201. Captions, Purpose and Lien. The captions of the Bonds shall be as set forth above and shall include the designation of their fixed rate status, as set forth above. Neither the purpose nor the lien priority of the Bonds shall change as a result of their fixed rate conversion.

Section 202. Terms of the Bonds. The Bonds shall bear interest at fixed rates, upon the terms and conditions specified in the Remarketing Agreement entered into with UBS Securities LLC, as Remarketing Agent, of even date herewith. Such terms are set forth in Exhibit B to this Supplement to Prior Sale Orders.

Section 203. Reserve Requirement. The Senior Lien Bond Reserve Requirement after remarketing of the Bonds will be $130,321,710 and the Second Lien Bond Reserve Requirement, after remarketing of the Bonds, will be $83,285,401. Since each of the Reserve Accounts will be fully funded upon remarketing of the Bonds, none of the remarketing proceeds will be used to fund the Reserve Accounts.

ARTICLE III
APPROVAL OF REMARKETING AGREEMENT
AND REMARKETING CIRCULAR

Section 301. Approval of Remarketing Agent and the Remarketing Agreement. The Bonds shall be sold to UBS Securities LLC, Remarketing Agent pursuant to the Remarketing Agreement between the City and the Remarketing Agent of even date herewith in substantially the form presented on this date to the Finance Director. The purchase prices, discounts and premiums for the Bonds, as set forth therein are hereby approved.

- 2 -

Section 302. Approval of Remarketing Circular. The form of the Remarketing Circular relating to the Bonds confirmed as the Remarketing Circular of the City with respect to the fixed rate remarketing of the Bonds.

## ARTICLE IV
## SWAP AGREEMENTS

Section 401. Approval of Swap Agreements.. In connection with the fixed rate remarketing of the Bonds the Finance Director has determined that to more effectively manage debt service it is in the City's best interest to not terminate the existing floating to fixed interest rate exchange agreements on the Bonds (the "Existing Swaps"), but rather to enter into fixed to floating interest rate exchange agreements with the same counterparties, which offset the Existing Swaps (the "Mirror Swaps") and leave the City with a net fixed rate payment equal to the difference between the City's fixed rate payment on the Existing Swaps and the fixed rate receipt on the Mirror Swaps (the "Net Swap Payments").

The Mirror Swap for the Series 2001(C-2) Bonds shall be with UBS AG, with a fixed rate payment to the City of 3.578% and the Mirror Swap for the Series 2006(A) Bonds shall be with Loop Financial Products I, LLC, with a fixed rate payment to the City of 3.6908%.

Section 402. Compliance With Swap Management Plan. The Finance Director hereby determines and confirms that the Mirror Swaps comply in all respects with the provisions of the City's Swap Management Plan as now in effect.

Section 403. Treatment of Net Swap Payments. Under the Bond Ordinance, payments due on the Mirror Swaps, other than payments of fees and expenses, if any, are included in the Debt Service Installment Requirement in accordance with the terms thereof. Consequently, the Net Swap Payments will be included in debt service on the Bonds under the Bond Ordinance.

## ARTICLE V
## CREDIT ENHANCEMENT

Section 501. Acceptance of Bond Insurance Commitment.

A. The Finance Director hereby determines that the Commitment of Berkshire Hathaway Assurance Corporation (the "Insurer") to provide a separate municipal bond insurance policy for each series of the Bonds (collectively, the "Bond Policy") to secure payment of the principal of and interest on the Bonds when due, in the event that Financial Guaranty Insurance Company is unable to pay, is in the best financial interests of the City and the System. The City hereby makes the covenants and agreements contained in Exhibit A hereto for the benefit of the Insurer with respect to the Bond Policy. Capitalized terms used in Exhibit A hereof and not defined in the Bond Ordinance shall have the meanings assigned thereto in the Bond Policy or the Bond Policy Commitment. To the extent of any conflict between the provisions of this Supplement to Prior Sale Orders and the Bond Policy Commitment, the provisions of this Supplement to Prior Sale Orders shall govern and the provisions of the Bond Policy

- 3 -

Commitment shall be deemed to be amended as provided in this Supplement to Prior Sale Orders.

B. The agreements of the City contained in Exhibit A hereto for the benefit of the Insurer shall apply only so long as the Bond Policy remains in effect and the Insurer is not in default thereunder; provided however that the agreements of the City shall continue so long as any amounts due from the City thereunder remain outstanding.

## ARTICLE VI
## OTHER PROVISIONS OF GENERAL APPLICATION
## UPON FIXED RATE REMARKETING OF BONDS

Section 601. Payment of Issuance Costs. The Finance Director shall pay Issuance Costs in an aggregate approximate amount of $1,339,040.80 from the proceeds of the Bonds. In addition, the Bond Policy premium in the amount of $12,921,428.39 shall be paid by the Remarketing Agent on behalf of the City to the Insurer. Underwriter's discount, in the amount of $2,264,962.39, shall be paid to the Remarketing Agent in the form of a discount from the par amount of the Bonds plus the original issue premium, which the Remarketing Agent shall be required to pay upon closing

Section 602. Confirmation of Bond Counsel. The appointment of Lewis & Munday, A Professional Corporation, as sole bond counsel for the Bonds is hereby ratified and confirmed.

Section 603. Order a Contract. The provisions of this Supplement to Prior Sale Orders shall constitute a contract between the City and any Bondholder.

Section 604. Book-Entry-Only Form. The Bonds shall be held in book-entry-only form and the appointment of The Depository Trust Company, New York, New York, as depository for the Bonds pursuant to the terms of the City's Blanket Letter of Representations, dated November 26, 1996, is hereby confirmed.

Section 605. Continuing Disclosure Agreement. The Bonds shall be subject to the Master Continuing Disclosure Agreement with Respect to Sewage Disposal System Revenue Bonds and Revenue Refunding Bonds, approved October 12, 1995.

This Supplement to Prior Sale Orders shall take effect immediately.

*[remainder of page intentionally left blank]*

*Signature Page Supplement to Prior Sale Orders*


       IN WITNESS WHEREOF, I have executed this Supplement to Prior Sale Orders this 1st day of May, 2008.


_____
Norman L. White,
Finance Director


May 1, 2008

## ADDITIONAL BOND INSURER REQUIREMENTS
## BERKSHIRE HATHAWAY ASSURANCE CORPORATION

In addition to incorporating herein by reference all terms and conditions of the requirements imposed by Financial Guaranty Insurance Company ("FGIC") on the Bonds when originally issued in either 2001 or 2006 (and as may be amended thereafter), BHAC requires as follows:

1. Acceleration and Annulment

   (a) Any acceleration of the Bonds or any annulment thereof is subject to the prior written consent of BHAC.

   (b) BHAC shall receive immediate notice of any Payment Default and notice of any other Event of Default known to the Transfer/Fiscal Agent or the City of Detroit within 30 days of the Transfer/Fiscal Agent's or the City's knowledge thereof.

   (c) For all purposes of the Bond Ordinance except the giving of notice of default to Holders of the Bonds, BHAC shall be deemed to be a holder of the Bonds.

   (d) BHAC is a party in interest and is a party entitled to (i) notify the City and the Transfer/Fiscal Agent of the occurrence of an Event of Default and (ii) request the Transfer/Fiscal Agent to intervene in judicial proceedings that affect the Bonds or the security therefor. The Transfer/Fiscal Agent is required to accept notice of default from BHAC.

2. Amendments to Bond Ordinance

   (a) Any amendment or supplement to the Bond Ordinance requiring consent of Holders of the Bonds is also subject to written consent of BHAC before it shall become effective.

   (b) Any rating agency having a rating in effect with respect to the Bonds must receive notice of each such amendment or supplement to the Bond Ordinance requiring consent of Holders of the Bonds and a copy thereof at least 15 days in advance of its becoming effective.

   (c) BHAC shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

3. Fiduciaries.

   (a) BHAC shall be furnished with written notice of the resignation or removal of any Paying Agent or Trustee and the appointment of any successor thereto.

   (b) No resignation or removal of any of the following with respect to the Bonds will be effective until a successor has been appointed and has accepted the duties of the respective office: Trustee; Paying Agent; Registrar.

A-1

4.  Redemption, Purchase and Tender of the Bonds

    (a) Notice of any redemption of the Bonds shall either (i) explicitly state that the proposed redemption is conditioned on there being on deposit in the applicable fund or account on redemption date sufficient money to pay the full redemption price of the Bonds to be redeemed, or (ii) be sent only if sufficient money to pay the full redemption price of the Bonds to be redeemed is on deposit in the applicable fund or account.

    (b) Neither the Ordinance, nor the Bond Resolution, nor the Bonds shall include, nor shall they be amended to include, provisions allowing the City or other obligor to purchase the Bonds either outright or in lieu of redemption for purposes other than retiring Bonds, without BHAC's consent. This covenant shall be applicable so long as the Bonds remain outstanding.

    (c) Payment of the purchase price of the Bonds due as a result of mandatory or optional tender, including a mandatory tender resulting from the conversion of an interest rate mode on the Bonds, shall not be covered by BHAC's policy.

5.  Reporting Requirements

    BHAC shall be provided with the following information so long as the BHAC Policy is in effect:

    (a) The budget and/or financial disclosures, if any, made and adopted by the City of Detroit as respects any matters related to the Bonds;

    (b) The official statement or other disclosure document(s), if any, prepared in connection with the issuance of additional debt, whether or not on parity with the Bonds;

    (c) Notice of any drawing upon or deficiency due to market fluctuation in the amount, if any, on deposit, in the debt service reserve fund;

    (d) Notice of redemption, other than mandatory sinking fund redemption, of any of the Bonds, or of any advance refunding of the Bonds, including the principal amount, maturities, and CUSIP numbers thereof;

    (e) Notice of any material events pursuant to Rule 15c2-12 of the Securities and Exchange Act of 1934, as amended; and

    (f) Such additional information as BHAC may reasonably request from time to time.

6.  Notice Address

    The notice address for BHAC is: Berkshire Hathaway Assurance Corporation, 100 First Stamford Place, Stamford, Connecticut 06902, Attention: General Counsel and Financial Guaranty Insurance Management.

A-2

# EXHIBIT B
# BOND TERMS

## Schedule of Maturities and Interest Rates

### $122,905,000
### Sewage Disposal System Senior Lien Revenue Refunding Bonds (Modal Fixed Rate), Series 2001(C-2)

$25,275,000 Serial Bonds

| Maturity (July 1) | Principal Amount | Interest Rate | Yield | Maturity (July 1) | Principal Amount | Interest Rate | Yield |
|---|---|---|---|---|---|---|---|
| 2008 | 195,000 | 3.50 | 2.00 | 2015 | 325,000 | 4.00 | 3.48 |
| 2009 | 245,000 | 3.50 | 2.25 | 2016 | 345,000 | 4.00 | 3.62 |
| 2010 | 260,000 | 3.50 | 2.55 | 2017 | 365,000 | 4.00 | 3.76 |
| 2011 | 270,000 | 3.50 | 2.85 | 2018 | 380,000 | 4.00 | 3.89 |
| 2012 | 285,000 | 3.50 | 3.08 | 2019 | 400,000 | 4.00 | 4.00 |
| 2013 | 295,000 | 4.00 | 3.21 | 2028 | 21,600,000 | 5.25 | 4.63* |
| 2014 | 310,000 | 4.00 | 3.34 | | | | |

$4,090,000 4.50% Term Bonds due July 1, 2027 Yield 4.75%
$93,540,000 5.25% Term Bonds due July 1, 2029 Yield 4.67%*

### $136,150,000
### Sewage Disposal System Second Lien Revenue Bonds (Modal Fixed Rate), Series 2001(E)

$136,150,000 5.75% Term Bonds due July 1, 2031 Yield 4.67%*

### $123,655,000
### Sewage Disposal System Revenue Second Lien Bonds (Fixed Rate), Series 2006(A)

$123,655,000 5.50% Term Bonds due July 1, 2036 Yield 4.74%*

* Priced to July 1, 2018 optional redemption date.

B-1

## Schedule of Term Bonds and Sinking Fund Installments

### Series 2001(C-2) 2027 Term Bonds

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2020 | 420,000 |
| 2021 | 440,000 |
| 2022 | 470,000 |
| 2023 | 495,000 |
| 2024 | 520,000 |
| 2025 | 550,000 |
| 2026 | 580,000 |
| 2027* | 615,000 |

### Series 2001(C-2) 2029 Term Bonds

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2028 | 34,240,000 |
| 2029* | 59,300,000 |

### Series 2001(E) 2031 Term Bonds

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2024 | 1,750,000 |
| 2025 | 1,870,000 |
| 2026 | 1,885,000 |
| 2027 | 1,890,000 |
| 2028 | 1,160,000 |
| 2029 | 1,100,000 |
| 2030 | 62,305,000 |
| 2031* | 64,190,000 |

### Series 2006(A) 2036 Term Bonds

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2034 | 7,525,000 |
| 2035 | 7,880,000 |
| 2036* | 108,250,000 |

* Final maturity.

B-2

## Optional Redemption

The Fixed Rate Securities maturing on or before July 1, 2018, are not subject to redemption prior to maturity. The Fixed Rate Securities maturing on or after July 1, 2019, are subject to redemption at the option of the City in whole or in part in such order of maturity as the City shall determine and within any maturity by lot, on any date on or after July 1, 2018, at a redemption price equal to 100% of the principal amount thereof to be redeemed, plus accrued interest to the date fixed for re

# Exhibit 2

**Supplement to Prior Sale Orders of Finance Director of the City of Detroit
with respect to**

**$190,405,000
City of Detroit
Water Supply System Revenue Refunding Second Lien Bonds
(Fixed Rate), Series 2001-C
(the "Series 2001-C Bonds")**

**and**

**$194,900,000
Water Supply System Revenue Senior Lien Bonds
(Fixed Rate), Series 2005-B
(the "Series 2005-B Bonds")**

**(collectively, the "Bonds")**

RECITALS

1.      The Series 2001-C Bonds were issued as variable rate bonds pursuant to an amended and restated Resolution authorizing the issuance of the Series 2001-C Bonds, adopted by the City Council on April 25, 2001 (the "2001 C Bond Resolution"), together with the Sale Order of the Finance Director of the City May 31, 2001, as supplemented by a Variable Rate Demand Bonds Supplement and Agreement, dated as of May 31, 2001, as amended April 23, 2008 (collectively, the "2001 C Sale Order").

2.      The Series 2005-B Bonds were issued as variable rate bonds pursuant to a Resolution authorizing the issuance of the Series 2005-B Bonds, adopted by the City Council on January 26, 2005 (the "2005 B Bond Resolution" and, together with the 2001 C Bond Resolution, the "Prior Bond Resolutions"), together with the Sale Order of the Finance Director of the City dated March 22, 2005, as supplemented by a Variable Rate Mode and Auction Rate Mode Supplement and Agreement, dated March 22, 2005, both as amended April 23, 2008 (collectively, the "2005 B Sale Order" and, together with the 2001 C Sale Order, the "Prior Sale Orders").

4.      In connection with the fixed rate remarketing of the Bonds, the Finance Director finds it necessary to supplement the Prior Sale Orders as herein provided.

**Now, Therefore**, the Finance Director of the City of Detroit hereby orders on behalf of the City as follows:

# ARTICLE I
## AUTHORITY AND DEFINITIONS

Section 101. Authority. This Supplement to Prior Sale Orders is issued under authority of the Prior Bond Resolutions and the Prior Sale Orders.

# ARTICLE II
## TERMS OF THE BONDS

Section 201. Captions, Purpose and Lien. The captions of the Bonds shall be as set forth above and shall include the designation of their fixed rate status, as set forth above. Neither the purpose nor the lien priority of the Bonds shall change as a result of their fixed rate conversion.

Section 202. Terms of the Bonds. The Bonds shall bear interest at fixed rates, upon the terms and conditions specified in the Remarketing Agreement entered into with Siebert Brandford Shank & Co., LLC, as Remarketing Agent, of even date herewith. Such terms are set forth in Exhibit B to this Supplement to Prior Sale Orders.

Section 203. Reserve Requirement. The Senior Lien Bond Reserve Requirement after remarketing of the Bonds will be $129,441,951 and the Second Lien Bond Reserve Requirement, after remarketing of the Bonds, will be $49,414,278. Since each of the Reserve Accounts will be fully funded upon remarketing of the Bonds, none of the remarketing proceeds will be used to fund the Reserve Accounts.

# ARTICLE III
## APPROVAL OF REMARKETING AGREEMENT
## AND REMARKETING CIRCULAR

Section 301. Approval of Remarketing Agent and the Remarketing Agreement. The Bonds shall be sold to Siebert Brandford Shank & Co., LLC, Remarketing Agent pursuant to the Remarketing Agreement between the City and the Remarketing Agent of even date herewith in substantially the form presented on this date to the Finance Director. The purchase prices, discounts and premiums for the Bonds, as set forth therein are hereby approved.

Section 302. Approval of Remarketing Circular. The form of the Remarketing Circular relating to the Bonds is hereby confirmed as the Remarketing Circular of the City with respect to the fixed rate remarketing of the Bonds.

# ARTICLE IV
## SWAP AGREEMENTS

Section 401. Approval of Swap Agreements. In connection with the fixed rate remarketing of the Bonds the Finance Director has determined that to more effectively manage debt service it is in the City's best interest to not terminate the following existing floating to fixed interest rate exchange agreements on the Bonds (collectively, the "Existing Swaps"), but

rather to enter into fixed to floating interest rate exchange agreements with the same counterparties, in which floating amounts payable by the City under the new swaps and the floating amounts payable by each counterparty under the related Existing Swap are equal and the City receives a lower fixed rate amount on the new swap than the City pays on the related Existing Swap, thereby partially offsetting the Existing Swaps (the "Mirror Swaps") and leaving the City with a net fixed rate payment equal to the difference between the City's fixed rate payment on the Existing Swaps and the fixed rate receipt on the Mirror Swaps (the "Net Swap Payments")on the Bonds:

> Series 2001-C Bonds–current notional amount of $113,360,000, with Morgan Stanley Capital Services, Inc.

> Series 2001-C Bonds–current notional amount of $76,510,000, with SBS Financial Products Company, LLC.

> Series 2005-B Bonds– current notional amount of $195,000,000, with Morgan Stanley Capital Services, Inc.

The Mirror Swap for the Series 2001-C Bonds in the notional amount of $113,360,000 shall be with Morgan Stanley Capital Services, Inc., with a fixed rate payment to the City of 3.498%; the Mirror Swap for the Series 2001-C Bonds in the notional amount of $76,510,000 shall be with SBS Financial Products Company, LLC with a fixed rate payment to the City of 3.998%; and the Mirror Swap for the Series 2005-B Bonds in the notional amount of $195,000,000 shall be with Morgan Stanley Capital Services, Inc., with a fixed rate payment to the City of 3.652%. The Finance Director hereby determines and confirms that the Mirror Swaps are in the best interests of the City.

The City shall terminate two swaps with respect to the Series 2001-C Bonds in the aggregate notional amount of $77,270,000 with Goldman Sachs Mitsui Marine Derivative Products, L.P., and shall pay an aggregate termination payment of $6,216,000 from the remarketing proceeds therefor.

Section 402.   Compliance With Swap Management Plan; Debt Management Plan; Prior Bond Resolutions, Act 34; and the Bond Ordinance .        The      Finance      Director      hereby determines and confirms that the Mirror Swaps comply in all respects with the provisions of the City's Swap Management Plan, the City's Debt Management Plan, the Prior Bond Resolutions, Act 34, Public Acts of Michigan, 2001, as amended ("Act 34"), and City Ordinance 01-05 (the "Bond Ordinance"), as now in effect.

Section 403.   Treatment of Net Swap Payments.   Under      the      Bond      Ordinance, payments due on the Mirror Swaps, other than payments of fees and expenses, if any, are included in the Debt Service Installment Requirement in accordance with the terms thereof. Consequently, the Net Swap Payments will be included in debt service on the Bonds under the Bond Ordinance.

# ARTICLE V
## CREDIT ENHANCEMENT

Section 501.   Acceptance of Bond Insurance Commitment.

A.     The Finance Director hereby determines that the Commitment of Berkshire Hathaway Assurance Corporation (the "Insurer") to provide a separate municipal bond insurance policy for each series of the Bonds (collectively, the "Bond Policy") to secure payment of the principal of and interest on the Bonds when due, in the event that Financial Guaranty Insurance Company is unable to pay, is in the best financial interests of the City and the System. The City hereby makes the covenants and agreements contained in Exhibit A hereto for the benefit of the Insurer with respect to the Bond Policy. Capitalized terms used in Exhibit A hereof and not defined in the Bond Ordinance shall have the meanings assigned thereto in the Bond Policy or the Bond Policy Commitment. To the extent of any conflict between the provisions of this Supplement to Prior Sale Orders and the Bond Policy Commitment, the provisions of this Supplement to Prior Sale Orders shall govern and the provisions of the Bond Policy Commitment shall be deemed to be amended as provided in this Supplement to Prior Sale Orders.

B.     The agreements of the City contained in Exhibit A hereto for the benefit of the Insurer shall apply only so long as the Bond Policy remains in effect and the Insurer is not in default thereunder; provided however that the agreements of the City shall continue so long as any amounts due from the City thereunder remain outstanding.

# ARTICLE VI
## OTHER PROVISIONS OF GENERAL APPLICATION
## UPON FIXED RATE REMARKETING OF BONDS

Section 601.   Payment of Issuance Costs.   The Finance Director shall pay Issuance Costs in an aggregate approximate amount of $874,110.60 from the proceeds of the Bonds. In addition, the Bond Policy premium in the amount of $11,656,855.15 shall be paid by the Remarketing Agent on behalf of the City to the Insurer. Underwriter's discount, in the amount of $2,423,183.15, shall be paid to the Remarketing Agent in the form of a discount from the par amount of the Bonds plus the original issue premium, which the Remarketing Agent shall be required to pay upon closing

Section 602.   Confirmation of Bond Counsel.   The appointment of Lewis & Munday, A Professional Corporation, as sole bond counsel for the Bonds is hereby ratified and confirmed.

Section 603.   Order a Contract.   The provisions of this Supplement to Prior Sale Orders shall constitute a contract between the City and any Bondholder.

Section 604.   Book-Entry-Only Form.   The Series Bonds shall be held in book-entry-only form and the appointment of The Depository Trust Company, New York, New York,

- 4 -

as depository for the Bonds pursuant to the terms of the City's Blanket Letter of Representations, dated November 26, 1996, is hereby confirmed.

Section 605. Continuing Disclosure Agreement. The Series Bonds shall be subject to the Master Continuing Disclosure Agreement with Respect to Water Supply System Revenue Bonds and Revenue Refunding Bonds, approved October 12, 1995.

This Supplement to Prior Sale Orders shall take effect immediately.

*[remainder of page intentionally left blank]*

*Signature Page Supplement to Prior Sale Orders*

IN WITNESS WHEREOF, I have executed this Supplement to Prior Sale Orders this 6th day of May, 2008.

_____
Norman L. White,
Finance Director

May 6, 2008

**EXHIBIT A**

**ADDITIONAL BOND INSURER REQUIREMENTS**
**BERKSHIRE HATHAWAY ASSURANCE CORPORATION**

In addition to incorporating herein by reference all terms and conditions of the requirements imposed by Financial Guaranty Insurance Company ("FGIC") on the Bonds when originally issued in either 2001 or 2005 (and as may be amended thereafter), BHAC requires as follows:

1.     Acceleration and Annulment

    (a) Any acceleration of the Bonds or any annulment thereof is subject to the prior written consent of BHAC.

    (b) BHAC shall receive immediate notice of any Payment Default and notice of any other Event of Default known to the Transfer/Fiscal Agent or the City of Detroit within 30 days of the Transfer/Fiscal Agent's or the City's knowledge thereof.

    (c) For all purposes of the Bond Ordinance except the giving of notice of default to Holders of the Bonds, BHAC shall be deemed to be a holder of the Bonds.

    (d) BHAC is a party in interest and is a party entitled to (i) notify the City and the Transfer/Fiscal Agent of the occurrence of an Event of Default and (ii) request the Transfer/Fiscal Agent to intervene in judicial proceedings that affect the Bonds or the security therefor. The Transfer/Fiscal Agent is required to accept notice of default from BHAC.

2.     Amendments to Bond Ordinance

    (a) Any amendment or supplement to the Bond Ordinance requiring consent of Holders of the Bonds is also subject to written consent of BHAC before it shall become effective.

    (b) Any rating agency having a rating in effect with respect to the Bonds must receive notice of each such amendment or supplement to the Bond Ordinance requiring consent of Holders of the Bonds and a copy thereof at least 15 days in advance of its becoming effective.

    (c) BHAC shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

3.     Fiduciaries.

    (a) BHAC shall be furnished with written notice of the resignation or removal of any Paying Agent or Trustee and the appointment of any successor thereto.

    (b) No resignation or removal of any of the following with respect to the Bonds will be effective until a successor has been appointed and has accepted the duties of the respective office: Trustee; Paying Agent; Registrar.

4.     Redemption, Purchase and Tender of the Bonds

   (a) Notice of any redemption of the Bonds shall either (i) explicitly state that the proposed redemption is conditioned on there being on deposit in the applicable fund or account on redemption date sufficient money to pay the full redemption price of the Bonds to be redeemed, or (ii) be sent only if sufficient money to pay the full redemption price of the Bonds to be redeemed is on deposit in the applicable fund or account.

   (b) Neither the Ordinance, nor the Bond Resolution, nor the Bonds shall include, nor shall they be amended to include, provisions allowing the City or other obligor to purchase the Bonds either outright or in lieu of redemption for purposes other than retiring Bonds, without BHAC's consent. This covenant shall be applicable so long as the Bonds remain outstanding.

   (c) Payment of the purchase price of the Bonds due as a result of mandatory or optional tender, including a mandatory tender resulting from the conversion of an interest rate mode on the Bonds, shall not be covered by BHAC's policy.

5.     Reporting Requirements

BHAC shall be provided with the following information so long as the BHAC Policy is in effect:

   (a) The budget and/or financial disclosures, if any, made and adopted by the City of Detroit as respects any matters related to the Bonds;

   (b) The official statement or other disclosure document(s), if any, prepared in connection with the issuance of additional debt, whether or not on parity with the Bonds;

   (c) Notice of any drawing upon or deficiency due to market fluctuation in the amount, if any, on deposit, in the debt service reserve fund;

   (d) Notice of redemption, other than mandatory sinking fund redemption, of any of the Bonds, or of any advance refunding of the Bonds, including the principal amount, maturities, and CUSIP numbers thereof;

   (e) Notice of any material events pursuant to Rule 15c2-12 of the Securities and Exchange Act of 1934, as amended; and

   (f) Such additional information as BHAC may reasonably request from time to time.

6.     Notice Address

The notice address for BHAC is: Berkshire Hathaway Assurance Corporation, 100 First Stamford Place, Stamford, Connecticut 06902, Attention: General Counsel and Financial Guaranty Insurance Management.

A-2

# EXHIBIT B
# BOND TERMS

## Schedule of Maturities and Interest Rates

### EXHIBIT B – PART 1

**City of Detroit, Michigan**
**Water Supply System Revenue**
**Refunding Second Lien Bonds (Fixed Rate)**
**Series 2001-C**

| Maturity | Principal | Interest Rate | Yield | |
|----------|-----------|---------------|-------|---|
| 07/01/2009 | 480,000.00 | 3.000% | 2.080% | |
| 07/01/2010 | 495,000.00 | 3.000% | 2.550% | |
| 07/01/2011 | 515,000.00 | 3.000% | 2.880% | |
| 07/01/2012 | 325,000.00 | 3.500% | 3.120% | |
| 07/01/2013 | 340,000.00 | 3.500% | 3.250% | |
| 07/01/2014 | 350,000.00 | 3.500% | 3.370% | |
| 07/01/2015 | 365,000.00 | 4.250% | 3.510% | |
| 07/01/2016 | 380,000.00 | 4.250% | 3.650% | |
| 07/01/2017 | 390,000.00 | 4.250% | 3.790% | |
| 07/01/2018 | 415,000.00 | 4.250% | 3.920% | |
| 07/01/2019 | 12,510,000.00 | 5.750% | 4.040% | * |
| 07/01/2020 | 13,235,000.00 | 5.750% | 4.150% | * |
| 07/01/2021 | 14,025,000.00 | 5.750% | 4.250% | * |
| 07/01/2022 | 14,865,000.00 | 5.750% | 4.320% | * |
| 07/01/2023 | 15,750,000.00 | 5.750% | 4.390% | * |
| 07/01/2024 | 16,690,000.00 | 5.750% | 4.430% | * |
| 07/01/2025 | 17,690,000.00 | 5.750% | 4.470% | * |
| 07/01/2026 | 18,735,000.00 | 5.750% | 4.500% | * |
| 07/01/2027 | 19,945,000.00 | 5.750% | 4.550% | * |
| 07/01/2028 | 4,000,000.00 | 5.750% | 4.600% | * |
| 07/01/2029 | 18,815,000.00 | 4.750% | 4.900% | |
| 07/01/2029 | 20,090,000.00 | 4.500% | 4.900% | |

\* Priced to July 1, 2018 call date

**City of Detroit, Michigan**
**Water Supply System Revenue**
**Senior Lien Bonds (Fixed Rate)**
**Series 2005-B**

| Maturity | Principal | Interest Rate | Yield | |
|----------|-----------|---------------|-------|---|
| 07/01/2010 | 1,750,000.00 | 5.000% | 2.550% | |
| 07/01/2011 | 1,855,000.00 | 4.000% | 2.880% | |
| 07/01/2012 | 1,940,000.00 | 4.000% | 3.120% | |
| 07/01/2013 | 2,020,000.00 | 5.000% | 3.250% | |
| 07/01/2014 | 2,125,000.00 | 5.000% | 3.370% | |
| 07/01/2015 | 2,225,000.00 | 4.000% | 3.510% | |
| 07/01/2016 | 2,305,000.00 | 4.000% | 3.650% | |
| 07/01/2017 | 2,385,000.00 | 4.000% | 3.790% | |
| 07/01/2018 | 2,465,000.00 | 5.500% | 3.920% | |
| 07/01/2019 | 2,575,000.00 | 5.500% | 4.040% | * |
| 07/01/2020 | 2,690,000.00 | 5.500% | 4.150% | * |
| 07/01/2021 | 2,905,000.00 | 5.500% | 4.250% | * |
| 07/01/2022 | 3,025,000.00 | 5.500% | 4.320% | * |
| 07/01/2023 | 3,145,000.00 | 5.500% | 4.390% | * |
| 07/01/2024 | 3,270,000.00 | 5.500% | 4.430% | * |
| 07/01/2025 | 3,490,000.00 | 5.500% | 4.470% | * |
| 07/01/2026 | 3,620,000.00 | 5.500% | 4.500% | * |
| 07/01/2027 | 3,850,000.00 | 5.500% | 4.550% | * |
| 07/01/2028 | 3,980,000.00 | 5.500% | 4.600% | * |
| 07/01/2034 | 28,415,000.00 | 4.750% | 4.940% | |
| 07/01/2035 | 57,365,000.00 | 5.500% | 4.740% | * |
| 07/01/2035 | 57,500,000.00 | 5.250% | 4.830% | * |

* Priced to July 1, 2018 call date

## EXHIBIT B – PART 2
## Schedule of Term Bonds and Sinking Fund Installments

### SERIES 2001-C 2029 4.50% TERM BONDS

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2028 | 7,090,000 |
| 2029* | 13,000,000 |

### SERIES 2001-C 2029 4.75% TERM BONDS

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2028 | 10,115,000 |
| 2029* | 8,700,000 |

### SERIES 2005-B 2034 4.75% TERM BONDS

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2029 | 4,215,000 |
| 2030 | 4,425,000 |
| 2031 | 4,630,000 |
| 2032 | 4,840,000 |
| 2033 | 5,050,000 |
| 2034* | 5,255,000 |

### SERIES 2005-B 2035 5.25% TERM BONDS

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2035* | 57,500,000 |

### SERIES 2005-B 2035 5.50% TERM BONDS

| Redemption Date (July 1) | Principal Amount |
|---|---|
| 2035* | 57,365,000 |

* Final maturity.

## Exhibit B – PART 4
## Optional Redemption

The Fixed Rate Securities maturing on or before July 1, 2018, are not subject to redemption prior to maturity. The Fixed Rate Securities maturing on or after July 1, 2019, are subject to redemption at the option of the City in whole or in part in such order of maturity as the City shall determine and within any maturity by lot, on any date on or after July 1, 2018, at a redemption price equal to 100% of the principal amount thereof to be redeemed, plus accrued interest to the date fixed for redemption.

# Exhibit 3

**Composite Sale Order of the Finance Director of the City of Detroit**
**with respect to**
**Series 2001 Securities**

**Whereas,** on August 1, 2001, the City Council (the *City Council*) of the City of Detroit (the *City*) adopted the resolution entitled in relevant part "Resolution Authorizing the Issuance and Sale of Sewage Disposal System Revenue and Revenue Refunding Bonds of the City of Detroit of Equal Standing with the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which May Remain Outstanding, and Authorizing the Issuance and Sale of Sewage Disposal System Revenue Bonds of the City of Detroit of Junior Standing to the City's Sewage Disposal System Revenue Bonds and Sewage Disposal System Revenue Refunding Bonds Now Outstanding and Which Remain Outstanding, for the Collective Purposes of Defraying Part of the Cost of Acquiring and Constructing Replacements, Repairs, Extensions and Improvements to the City's Sewage Disposal System and Refunding Certain Sewage Disposal System Revenue Bonds" (as amended on October 10, 2001, the *Bond Resolution*);

**Whereas,** the Resolution was enacted pursuant to Ordinance No. 27-86, as amended (the *Bond Ordinance*) and Act 94, Public Acts of Michigan, 1933, as amended (*Act 94*); and

**Whereas,** the Resolution authorizes the Finance Director, acting on behalf of the City, to sell and deliver securities (*Series 2001 Securities*) by sale order within the parameters established by the Bond Resolution for the purposes set forth therein as herein more fully stated; and

**Whereas,** this document (the *Sale Order*) constitutes the exercise of the authority granted to the Finance Director in the Bond Resolution;

**Now, Therefore,** the undersigned Finance Director of the City of Detroit **Hereby Orders** as follows:

1. **Sale Order Components.**

   This Sale Order consists of the following:
   - this document and the exhibits hereto
   - the General Terms of 2001 Securities Supplement, which appears as *Annex A* hereto (the *GT Supplement*)
   - [*Annex B* – Reserved]
   - the Variable Rate Mode Supplement and Agreement, which appears as *Annex C* (the *VRM Supplement*)
   - the Auction Rate Mode Supplement, which appears as *Annex D* hereto (the *ARM Supplement*)
   - the Financial Guaranty Insurance Company Supplement, which appears as *Annex E*

**Definitions.**

(a)    Undefined capitalized terms used herein and defined in any of the following are used herein as therein defined:

the Preamble hereto
the Bond Ordinance
the GT Supplement
the VRM Supplement
the ARM Supplement

(b)    The following terms have the following respective meanings unless the context clearly otherwise requires:

*Closing* means, with respect to a particular Type and Priority of Securities, the delivery of such Securities to, and payment for such Securities by, the purchasers identified in the Sale Order and the other actions in connection therewith.

*Bonds to be Refunded* means the Securities defined as the "Bonds to be Refunded" in the Official Statement with respect to the Series 2001 (C) Securities.

*Closing Date* means the date on which a Closing occurs.

*Non-Provider Securities* means all Series 2001 Securities *except* Securities issued to a Provider under the VRM Supplement (i.e., *Provider Securities*).

*Project Securities* means all Non-Provider Securities *except* Refunding Securities.

*Refunding Securities* means all Series 2001 Securities of each Type for which a disposition of proceeds on the signature pages hereto is indicated to be for Refunding Purposes and equal, as to each such Type, in aggregate principal amount to the principal amount under the respective caption *Disposition of Proceeds — Refunding Purposes*.

*Type* means the manner in which a Series 2001 Security bears interest and includes all of the attributes provided by this Sale Order for Series 2001 Securities bearing interest in that manner. The following are the Types of Series 2001 Securities authorized by this Sale Order:

- Fixed Rate Securities
- Modal Securities
  Variable Rate Securities

-2-

Short-Term Securities
Daily Rate Securities
Weekly Rate Securities
Flexible Rate Securities
Term Rate Securities
Modal Fixed Rate Securities
- Auction Rate Securities
- Provider Securities

**Issuance of Series 2001 Securities; Disposition of Proceeds.**

(a) *Issuance.* It is hereby determined that Series 2001 Securities shall be issued in the aggregate principal amount equal to the sum of the principal amounts set forth on the signature pages hereto and of the Types and Priorities as therein set forth; *provided* that the aggregate principal amount of Series 2001 Securities shall not exceed $850,000,000, the amount set forth in the Bond Resolution; and *provided* further:

(1) in accordance with Section 4 of the Bond Resolution, Project Securities in the total principal amount appearing in *Exhibit 3* hereto, but not more than $400,000,000 in aggregate principal amount, which total principal amount is hereby determined to be the amount of Project Costs to be financed with Series 2001 Securities, *plus* such amounts as are necessary to pay matters ancillary thereto, such as funding Costs of Issuance and meeting Reserve Requirements; and

(2) in accordance with Section 4 of the Bond Resolution, Refunding Securities in the total principal amount appearing in *Exhibit 3* hereto, but not more than $300,000,000 in aggregate principal amount, which total principal amount is hereby determined to be the amount necessary to refund the Bonds to be Refunded, *plus* such amounts as are necessary to pay matters ancillary thereto, such as Costs of Issuance and meeting Reserve Requirements.

(b) *Disposition of Proceeds.*

(1) Proceeds of Project Securities shall be disposed of as set forth under the respective captions *Disposition of Proceeds – New Money Purposes* on certain of the signature pages hereto.

(2) Proceeds of Refunding Securities shall be disposed of as set forth under the respective captions *Disposition of Proceeds – Refunding Purposes* on certain of the signature pages hereto.

-3-

**Terms of Series 2001 Securities.**

The terms of the Series 2001 Securities shall be as provided in this Sale Order.

**Appointments.**

(a)    Reference is made to the appointment in the Bond Resolution of U.S. Bank Trust National Association as Trustee for the Series 2001 Securities. As provided in the Bond Resolution, its acceptance of the duties of Trustee shall be evidenced by a document filed with the Finance Director concurrently with the delivery of the Series 2001 Securities.

(b)    The following appointments are made with respect to the Variable Rate Securities:

    (1)    As Tender Agent  . . . . . . . . . U.S. Bank Trust National Association

    (2)    As Remarketing Agent . . . . . UBS PaineWebber Inc.

Each of the foregoing shall evidence its acceptance of the duties of office to which it was appointed by executing the VRM Supplement.

(c)    The following appointments are made with respect to the Auction Rate Securities:

    (1)    As Market Agent  . . . . . . . . . UBS PaineWebber Inc.

    (2)    As Broker-Dealer . . . . . . . . . UBS PaineWebber Inc.

    (3)    As Auction Agent  . . . . . . . . Appointed in the Auction Rate Signature Pages

Each of the foregoing shall evidence its acceptance of the duties of office to which it was appointed by delivering a written acceptance to the Finance Director concurrently with the delivery of the Series 2001 Securities.

6.    **Reserve Requirements; Reserve Accounts.**

(a)    *Reserve Requirements.* The Reserve Requirements for the Series 2001 Securities are as provided in the signature pages hereto.  •

(b)    *Reserve Accounts.*

    (1)    <u>Senior Lien Bonds</u>. No separate Bond Reserve Account is established for the Senior Lien Bonds.

-4-

(2)    Second Lien Bonds  A separate Reserve Account is hereby established in the Second Lien Bond Reserve Account for each series of Second Lien Bonds as follows:

- Series 2001 (B) Second Lien Bond Reserve Account
- Series 2001 (D) Second Lien Bond Reserve Account
- Series 2001 (E) Second Lien Bond Reserve Account

(i)    The Second Lien Bonds Series 2001 (D-1) and Series 2001 (D-2) are part of the same series for purposes of the Series 2001 (D) Second Lien Bond Reserve Account.

(ii)    The amounts to be paid pursuant to the Bond Ordinance into the Second Lien Bond Reserve Account shall be paid into each separate Second Lien Bond Reserve Account to restore it to its respective Second Lien Bond Reserve Requirement on a parity with payments into all other Second Lien Bond Reserve Accounts and shall not exceed its Proportionate Deficit Payment in any Fiscal Year.

(iii)    *Proportionate Deficit Payment* for each separate Second Lien Bond Reserve Account means an amount that bears, to the deficit in such separate Second Lien Bond Reserve Account, the same proportion that the amount available to remedy deficits in all separate Second Lien Bond Reserve Accounts bears tot he aggregate deficit in all Second Lien Bond Reserve Accounts.

7.    **Limits.**

(a)    *Limitation on Amounts Coming Due in Any One Year.*

It is hereby determined that, as of the date of the execution of each signature page hereto, the aggregate amount of interest and principal becoming due in any Fiscal Year (whether at maturity or by reason of Mandatory Redemption Requirements) on the outstanding Securities and the Series 2001 Securities described on such signature page and on each signature page executed before such signature page does not exceed the amount permitted by Sections 22, 36 and 37 of the Bond Ordinance.

(b)    *Sale and Interest Rate Limitation.*

It is hereby determined that, as of the date of the execution of each signature page hereto,

(1)    the Series 2001 Securities described on such signature page bear interest at a rate or rates and are being sold at an aggregate net discount (distinct from any

-5-

compensation to be paid to the purchasers in the form of a discount or any other costs of issuance of such Series 2001 Securities) of not greater than 10%; and

*(2)* the true interest cost (TIC) of the Fixed Rate Securities is not greater than 6¾ % per annum and the maximum rate per annum on any Variable Rate Securities does not exceed the maximum rate permitted by law.

8.    **Continuing Disclosure.**

(a)    Pursuant to Section 15 of the Bond Resolution, those Series 2001 Securities for which an exemption does not exist under the Rule shall be subject to the Continuing Disclosure Agreement.

(b)    Those Series 2001 Securities for which an exemption exists under the Rule may nonetheless be made subject to the Continuing Disclosure Agreement and shall be so subject when such an exemption no longer exists.

9.    **Establishment of Subaccount and Accounts.**

(a)    *Construction Fund Subaccount.*

(1)    A subaccount is hereby created in the Construction Fund established by the Bond Ordinance and designated the "Construction Fund Series 2001" to be maintained as a separate depositary account by the present depositary of the Construction Fund.

(2)    The amount identified as "Capitalized Expenses" in the Addendum to Signature Pages for Modal Securities shall be segregated in the Construction Fund Series 2001. An amount equal to the quarterly fee for the Liquidity Facility shall be transferred from the segregated Capitalized Expenses to the Operation and Maintenance Fund as of the first day of the month in which such fee becomes due. The segregated amount of Capitalized Expenses shall be applied to no other purpose.

(3)    The Trustee is hereby authorized and directed to establish the following two accounts:

(i)    Construction Fund Series 2001, Cost of Issuance Subaccount – into which shall be deposited the portion of the proceeds of the Series 2001 Securities designated as "Cost of Issuance" and applied as provided in the Bond Ordinance; and

(ii)    Construction Fund Series 2001, Capitalized Interest Issuance Subaccount – into which shall be deposited the portion of the proceeds of the

-6-

Series 2001 Securities designated as "Capitalized Expenses" and applied as provided above.

(b)  *Sinking Fund Accounts.*

(1)  Pursuant to Section 11 of the Bond Resolution, there is hereby established in the Bond Interest and Redemption Fund an account designated "Series 2001 Term Bond Sinking Fund Account" for such Senior Lien Term Bonds.

(2)  Pursuant to Section 11 of the Bond Resolution, there is hereby established in the Second Lien Bond and Interest Redemption Account an account designated "Series 2001 Second Lien Term Bond Sinking Fund Account" for such Second Lien Term Bonds.

## 10.  Refunding Determination and Instructions.

(a)  It is hereby determined that upon the issuance of the Refunding Securities, the proceeds thereof (exclusive of accrued interest) are sufficient to provide the Escrow Deposit after making provision for Issuance Costs and the Reserve Requirement to be provided from such proceeds; and, it is further determined that the benefits to the City from the refunding shall be increased by depositing amounts released from the Bond Reserve Account in the Escrow Deposit in order to refund the maximum amount of Senior Lien Bonds.

(b)  The Transfer Agent is hereby given irrevocable instructions to call the Bonds to be Refunded for redemption on their first available call dates or such other date as is permitted by the Escrow Agreement to be entered into for the refunding of the Bonds to be Refunded at the applicable redemption prices.

(c)  U.S. Bank Trust National Association is hereby appointed as the Escrow Agent and shall evidence its acceptance of such appointment by executing the Escrow Agreement.

## 11.  Sale of Series 2001 Securities.

The Series 2001 Securities shall be sold as provided in the signature pages hereto, and, pursuant to Section 16 of the Bond Resolution, it is hereby determined that the aggregate compensation to the purchasers named therein is not more than 1% of the original principal amount of each Type of Securities.

## 12.  [Reserved].

-7-

**3.    Financial Facilities.**

    (a)    The commitments from the following providers of Financial Facilities are hereby accepted with respect to the Series 2001 Securities set forth opposite the respective names of such providers.  Each such Financial Facility is hereby determined to be in the best interest of the City and the System.

| Financial Facility Provider | Applicable Series 2001 Securities |
| --- | --- |
| Financial Guaranty Insurance Company . . . . . . . . . . (Bond Insurance) | Series 2001(A) |
| Financial Guaranty Insurance Company . . . . . . . . . . (Bond Insurance) | Series 2001(B) |
| Financial Security Assurance Inc. (Bond Insurance) . . | Series 2001(C-1) |
| Dexia Credit Local, . . . . . . . . . . . . . . . . . . . . . . . . . . acting through its New York Agency (Liquidity Facility) | Series 2001(C-1) |
| Financial Guaranty Insurance Company . . . . . . . . . . (Bond Insurance) | Series 2001(C-2) |
| FGIC Securities Purchase, Inc. (Liquidity Facility) . . . | Series 2001(C-2) |
| MBIA (Bond Insurance) . . . . . . . . . . . . . . . . . . . . . . . | Series 2001(D) [All Tranches] |
| Financial Guaranty Insurance Company . . . . . . . . . . (Bond Insurance) | Series 2001(E) |
| FGIC Securities Purchase, Inc. (Liquidity Facility) . . . | Series 2001(E) |

    (b)    The City shall enter into a Financial Facility Agreement with each of the foregoing, and this Sale Order shall be supplemented to the extent required by any of the foregoing.

-8-

**14. Interest Rate Exchange Agreements.**

(a)     It is hereby determined to be cost effective to manage debt service on the below identified Series 2001 Securities by entering into Interest Rate Exchange Agreements with the respective counterparties.

| Interest Rate Exchange Agreement Counterparty | Applicable Series 2001 Securities |
|---|---|
| UBS AG ............................... | Series 2001(C-1) |
| UBS AG ............................... | Series 2001(C-2) |

(b)     Having been approved by the Treasury Department, each such Interest Rate Exchange Agreements with the respective counterparty constitutes an Approved Interest Rate Exchange Agreement in accordance with Section 9 of the Bond Resolution.

(c)     In connection with the Interest Rate Exchange Agreements, it is hereby determined to be in the best interest of the City to insure against liability under certain circumstances for termination payments; accordingly, the following commitments for insurance policies (*SWAP Insurance*) are hereby accepted:

| Provider | Insuring Swap For |
|---|---|
| Financial Security Assurance, Inc. .............. | Series 2001(C-1) |
| Financial Guaranty Insurance Company ........ | Series 2001(C-2) |

**15.     Reserve Fund Valuation.**

The Reserve Accounts shall continue to be valued as provided in the Bond Ordinance as in effect on the date hereof notwithstanding any amendment of the Bond Ordinance (to the extent permitted thereby) that may hereafter become effective.

**16.     Financial Arrangements.**

*Exhibit 16* hereto is a schedule of financial arrangements authorized by this Sale Order and the location in this Sale Order of the agreements required by the providers thereof.

**17.     Authorization of U.S. Bank Trust National Association.**

(a)     U.S. Bank Trust National Association, in any of its respective capacities hereunder, is hereby authorized and directed to enter into such of the Financial Facility Agreements as require it to be a party thereto in such capacity.

-9-

(b)    U.S. Bank Trust National Association, in any of its respective capacities hereunder, is further authorized and directed to execute such other documents, instruments and agreements as may be deemed necessary or appropriate to consummate the transactions contemplated by this Sale Order.

*[Signature Pages Follow]*

-10-

Exhibit 3

## Allocation of Principal Amounts

| Series | Project Costs* | Amount Necessary to Refund Bonds to be Refunded* |
|---|---|---|
| (Fixed Rate) Series 2001(A) . . . . . . . . . . | $70,000,000.00 | – 0 – |
| (Fixed Rate) Series 2001(B) . . . . . . . . . . | 101,000,000.00 | – 0 – |
| (Variable Rate Demand) Series 2001(C-1) | – 0 – | $158,228,510.89** |
| (Variable Rate Demand) Series 2001(C-2) | – 0 – | 125,823,326.85** |
| (ARCs), Series 2001(D) . . . . . . . . . . . . . . | 95,000,000.00 | – 0 – |
| (Variable Rate Demand) Series 2001(E) . . | 134,000,000.00 | – 0 – |
| **Total** | **$400,000,000.00** | **$284,051,837.74** |

\* Exclusive of such amounts as are necessary to pay matters ancillary thereto, such as Costs of Issuance and meeting Reserve Requirements.

\*\* Additional amounts of $1,156,929.63 and $920,035.17 were released from the Bond Reserve Account for, respectively, the Series 2001 (C-1) and the Series 2001 (C-2) Securities.

**Exhibit 16**

## Schedule of Financial Arrangements
## and
## Sale Order Provisions

| Provider | Financial Arrangement | Provisions in Sale Order |
|---|---|---|
| **Financial Facilities** | | |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001(A) | Annex E, Part 1 |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001(B) | Annex E, Part 1 |
| Financial Security Assurance, Inc . . . . . . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001(C-1) | VRM Supplement, Exhibit 10.01 |
| Dexia Credit Local, acting through it New York Agency | Standby Bond Purchase Agreement, Series 2001(C-1) | None, separate agreement |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001(C-2) | Annex E, Part 1 |
| FGIC Securities Purchase, Inc. | Standby Bond Purchase Agreement, Series 2001(C-2) | None, separate agreement |
| MBIA . . . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001 (D) | ARM Supplement |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Bond Insurance Policy, Series 2001(E) | Annex E |
| FGIC Securities Purchase, Inc. | Standby Bond Purchase Agreement, Series 2001(E) | None, separate agreement |
| **Reserve Fund Surety Policies** | | |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Debt Service Reserve Fund Policy, Senior Lien Bond Reserve Account | Annex E, Part 2 |
| MBIA . . . . . . . . . . . . . . . . | Debt Service Reserve Fund Policy, Series 2001 (D) Second Lien Bond Reserve Account | ARM Supplement |

Exh. 16 Page 1

| Provider | Financial Arrangement | Provisions in Sale Order |
|---|---|---|
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | Debt Service Reserve Fund Policy, Series 2001 (E) Second Lien Bond Reserve Account | Annex E, Part 2 |
| **Interest Rate Exchange Agreement Insurance** | | |
| Financial Security Assurance, Inc. . . . . . . . . . . . . . . . . . . | SWAP Insurance, Series 2001(C-1) | None |
| Financial Guaranty Insurance Company . . . . . . . . . . . . . . | SWAP Insurance, Series 2001(C-2) | None |

Exh. 16 Page 2

## Signature Pages for Fixed Rate Securities

1. **Reserve Requirements.**

   (a)     Upon the issuance and delivery of the Fixed Rate Securities, the Reserve Requirements, calculated in accordance with the Bond Ordinance, are:

   Bond Reserve Account Requirement*
   Before issuance of 2001 Series (A) Securities . . . . . . .    $77,118,105.50
   Upon issuance of 2001 Series (A) Securities . . . . . . . . .    81,029,192.00
   Increase to be funded . . . . . . . . . . . . . . . . . . . . . . : . . . . . . . . .    $3,911,087.50
   *For all Senior Lien Bonds

   Series 2001(B) Second Lien Bond Reserve Requirement . . .    $9,534,414.43

   (b)     The funding of each Reserve Requirement shall be as follows:

   (1)     The Bond Reserve Account Requirement shall be funded by a surety bond in the amount of the Bond Reserve Account Requirement to be issued by Financial Guaranty Insurance Company, and the City shall enter into a Debt Service Reserve Account Policy Agreement having customary terms.

   (2)     The Series 2001(B) Second Lien Reserve Account Requirement shall be funded by a deposit of proceeds of the Second Lien Bonds.

2. **Sale of Fixed Rate Securities.**

   The Fixed Rate Securities shall be sold to UBS PaineWebber Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date hereof, for the below stated purchase price plus accrued interest from the respective dates of the Fixed Rate Securities to the date of delivery, on the basis of the representations set forth therein.

|  | Senior Lien Bonds | Second Lien Bonds |
|---|---|---|
| Purchase Price . . . . . . . . . . . . . . . | $ 74,155,996.04 | $ 116,953,051.32 |
| Accrued Interest    . . . . . . . . . . . | 412,837.01 | 641,804.17 |
| Total Purchase Price . . . . . . . . . . . | $ 74,568,833.05 | $ 117,594,855.49 |

3. **Disposition of Proceeds**

   *New Money Purposes*

| Disposition | Senior Lien Bonds Amount | Second Lien Bonds Amount |
|---|---|---|
| Total Purchase Price .................... | $74,568,833.05 | $117,594,855.49 |
| Accrued Interest Deposit to Interest and Redemption Fund ...................... | 412,837.01 | 641,804.17 |
| Capitalized Interest Deposit to Interest and Redemption Fund ...................... | 3,602,327.08 | 5,600,245.23 |
| Reserve Account Surety Bond Premium ..... | 45,225.96 | – 0 – |
| Reserve Account Deposit ................ | – 0 – | 9,534,414.43 |
| Gross Amount for Deposit to Construction Fund Series 2001 Subaccount ............. | 70,504,780.37 | 101,818,391.66 |
| *Less*: Bond Insurance Premium ........... | 314,427.95 | 529,278.29 |
| Net Amount to be Deposited in the Construction Fund Series 2001 Subaccount | 70,194,015.05 | $101,289,113.37 |

*[Signature Appears on Fixed Rate Signature Page S-1]*

Fixed Rate Signature Page 2

*[Page Containing Signature of Finance
Director to Signature Pages with respect to
Fixed Rate Securities]*

    The Schedule of Terms for Fixed Rate Securities appended hereto are part of the Fixed Rate
Signature Pages.



                    J. Edward Hannan
                    Finance Director
                    City of Detroit

September 26, 2001

Fixed Rate Signature Page S-1

## Schedule of Terms
## for
## Fixed Rate Securities

1. **Interest Payment Dates, Record Dates and Day Count Convention.**

   (a)   Interest on the Fixed Rate Securities is payable January 1, 2002, and July 1, 2002, and semi-annually thereafter on each January 1 and July 1.

   (b)   The record dates for Fixed Rate Securities are the 15th day of the calendar month preceding each interest payment date.

   (c)   The Day Count Convention for Fixed Rate Securities is 12 30-day months in a year of 360 days.

2. **Senior Lien Bonds.**

   (a)   *Principal Amount.* $76,375,000

   (b)   *Priority.* Senior Lien Bonds.

   (c)   *Title.* City of Detroit Sewage Disposal System Senior Lien Revenue Bonds, Series 2001(A).

   (d)   *Maturities and Interest Rates.*

   The Senior Lien Bonds shall mature on the dates and in the principal amounts and shall bear interest at the respective interest rates per annum as set forth below as provided in the GT Supplement.

| July 1 | Amount Maturing | Interest Rate |
|--------|-----------------|---------------|
| 2022 ................. | $ 2,505,000 | 5 % |
| 2031 ................. | 73,870,000 | 5 1/8 |

Fixed Rate Schedule Page 1

(e)  **Senior Lien Term Bonds.**

The Senior Lien Bonds maturing on July 1, 2031, are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

| July 1 | Sinking Fund Installment |
|--------|--------------------------|
| 2023 . . . . . . . . . . . . . . . . | $ 2,750,000 |
| 2024 . . . . . . . . . . . . . . . . | 2,895,000 |
| 2025 . . . . . . . . . . . . . . . . | 3,040,000 |
| 2026 . . . . . . . . . . . . . . . . | 3,200,000 |
| 2027 . . . . . . . . . . . . . . . . | 3,365,000 |
| 2028 . . . . . . . . . . . . . . . . | 3,535,000 |
| 2029 . . . . . . . . . . . . . . . . | 3,720,000 |
| 2030 . . . . . . . . . . . . . . . . | 25,040,000 |
| 2031* . . . . . . . . . . . . . . . . | 26,325,000 |

*Maturity Date

(f)  **Optional Redemption**

The Senior Lien Bonds are subject to redemption at the option of the City, as a whole or in part on any date on and after July 1, 2011, at a Redemption Price of 100% of the principal amount thereof plus interest to the Redemption Date.

3.  **Second Lien Bonds.**

(a)  **Principal Amount.** $110,550,000

(b)  **Priority.** Second Lien Bonds.

(c)  **Title.** City of Detroit Sewage Disposal System Second Lien Revenue Bonds, Series 2001(B).

Fixed Rate Schedule Page 2

(d)     *Maturities and Interest Rates.*

The Second Lien Bonds shall mature on the dates and in the principal amounts and shall bear interest at the respective interest rates per annum as set forth below as provided in the GT Supplement.

| July 1 | Amount Maturing | Interest Rate |
|---|---|---|
| 2029 . . . . . . . . . . . . . . . . | $ 110,550,000 | 5 ½ % |

(e)     *Second Lien Term Bonds.*

The Second Lien Bonds are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

| July 1 | Sinking Fund Installment |
|---|---|
| 2023 . . . . . . . . . . . . . . . . | $ 2,825,000 |
| 2024 . . . . . . . . . . . . . . . . | 15,835,000 |
| 2025 . . . . . . . . . . . . . . . . | 16,635,000 |
| 2026 . . . . . . . . . . . . . . . . | 17,480,000 |
| 2027 . . . . . . . . . . . . . . . . | 18,345,000 |
| 2028 . . . . . . . . . . . . . . . . | 19,260,000 |
| 2029* . . . . . . . . . . . . . . . . | 20,170,000 |

*Maturity Date

(f)     *Optional Redemption*

None

*[End of Schedule of Terms for Fixed Rate Securities]*

Fixed Rate Schedule Page 3

ignature Pages to Sale Order of the
inance Director of the City of Detroit with
espect to City of Detroit Sewage Disposal
ystem Revenue and Revenue Refunding
Bonds, Series 2001 relating to the below
mentioned 2001 Securities.]

## Signature Pages for Modal Securities

### 1. Reserve Requirements.

Bond Reserve Account Requirement*
Before issuance of Series (C) Securities . . . . . . . . . . . $81,029,192.00**
Upon issuance of Series (C) Securities . . . . . . . . . . . . 78,952,227.20
Excess to be included in Escrow Deposit . . . . . . . . . . . $2,076,964.80

*For all Senior Lien Bonds
**Includes $3,911,087.50 increase attributable to Series (A)

### 2. Initial Mode.

The Series C-1 and Series C-2 Securities shall be issued as Variable Rate Securities in the Weekly Mode, each Series bearing interest at the respective rate set forth in a certificate of the Finance Director and delivered at the Closing.

### 3. Sale of Modal Securities.

The Series C Securities shall be sold to UBS PaineWebber Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date hereof, for the below stated purchase price plus accrued interest, if any, from the respective dates of the Modal Securities to the date of delivery, on the basis of the representations set forth therein

|  | Series C-1 | Series C-2 |
|---|---|---|
| Purchase Price . . . . . . . . . . . . . | $159,483,057.42 | $126,777,914.58 |
| Accrued Interest . . . . . . . . . | – 0 – | – 0 – |
| Total Purchase Price . . . . . . . . | $159,483,057.42 | $126,777,914.58 |

Modal Securities Signature Page 1

## Disposition of Proceeds

### Refunding Purposes

| Disposition | Series C-1 Amount | Series C-2 Amount |
|---|---|---|
| Total Purchase Price .................... | $159,483,057.42 | $126,777,914.58 |
| Costs of Issuance | | |
| Paid at Closing | | |
| Bond Insurance Premium ......... | 706,531.31 | 465,481.20 |
| Liquidity Facility Fee ............ | 25,000.00 | 44,341.00 |
| Swap Termination Insurance ...... | 121,600.00 | 112,000.00 |
| For Deposit to Construction Fund Series 2001 Cost of Issuance Subaccount) | | |
| Other Costs of Issuance .......... | 401,415.22 | 332,765.53 |
| Escrow Deposit | | |
| Cash Deposit ..................... | 10.52 | 10.02 |
| Purchase of "Open Market" Securities | 132,050,000.00 | – 0 – |
| Purchase of SLGs ................. | 27,335,430.00 | 126,743,352.00 |

*[Signature Appears on Modal Securities Signature Page S-1]*

Modal Securities Signature Page 2

The Schedule of Terms for Modal Securities appended hereto are part of the Modal Signature Pages.

J. Edward Hannan
Finance Director
City of Detroit

October 1, 2001

Modal Securities Signature Page S-1

**Schedule of Terms**
**for**
**Modal Securities**

**Interest Payment Dates, Record Dates and Day Count Convention.**

    (a)      Interest on Modal Securities is payable on the Interest Payment Dates determined in accordance with the VRM Supplement.

    (b)      The record dates for the Modal Securities are as provided in the VRM Supplement.

    (c)      The Day Count Convention for Modal Securities is as provided in the VRM Supplement.

**2.**    **Terms of Modal Securities.**

    (a)      *Principal Amount.* As shown under "Titles".

    (b)      *Priority.* Senior Lien Bonds.

    (c)      *Titles as Variable Rate Securities.*

        (1)      $159,970,000 City of Detroit Sewage Disposal System Senior Lien Revenue Refunding Bonds(Variable Rate Demand), Series 2001(C-1).

        (2)      $127,165,000 City of Detroit Sewage Disposal System Senior Lien Revenue Refunding Bonds(Variable Rate Demand), Series 2001(C-2).

    (d)      *Maturity and Interest Rate.*

        (1)      Subject to change as provided in the VRM Supplement, the Variable Rate Securities Series C-1 shall mature on July 1, 2027, in the principal amount of $159,970,000 and shall bear interest at the rates as provided in the VRM Supplement.

        (2)      Subject to change as provided in the VRM Supplement, the Variable Rate Securities Series C-2 shall mature on July 1, 2029, in the principal amount of $127,165,000 and shall bear interest at the rates as provided in the VRM Supplement.

(e)    *Modal Term Securities.*

Subject to change as provided in the VRM Supplement, the Modal Securities are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

| July 1 | Series C-1 Sinking Fund Installments | Series C-2 Sinking Fund Installments |
|--------|-------------------------------------|-------------------------------------|
| 2002 . . . . . . . . . . . . . . . | $2,765,000 | $2,205,000 |
| 2003 . . . . . . . . . . . . . . . | 345,000 | 225,000 |
| 2004 . . . . . . . . . . . . . . . | 360,000 | 235,000 |
| 2005 . . . . . . . . . . . . . . . | 380,000 | 245,000 |
| 2006 . . . . . . . . . . . . . . . | 400,000 | 255,000 |
| 2007 . . . . . . . . . . . . . . . | 415,000 | 375,000 |
| 2008 . . . . . . . . . . . . . . . | 435,000 | 285,000 |
| 2009 . . . . . . . . . . . . . . . | 455,000 | 300,000 |
| 20010 . . . . . . . . . . . . . . . | 475,000 | 315,000 |
| 2011 . . . . . . . . . . . . . . . | 500,000 | 330,000 |
| 2012 . . . . . . . . . . . . . . . | 520,000 | 345,000 |
| 2013 . . . . . . . . . . . . . . . | 545,000 | 360,000 |
| 2014 . . . . . . . . . . . . . . . | 575,000 | 375,000 |
| 2015 . . . . . . . . . . . . . . . | 600,000 | 395,000 |
| 2016 . . . . . . . . . . . . . . . | 625,000 | 415,000 |
| 2017 . . . . . . . . . . . . . . . | 655,000 | 435,000 |
| 2018 . . . . . . . . . . . . . . . | 690,000 | 455,000 |
| 2019 . . . . . . . . . . . . . . . | 720,000 | 475,000 |
| 2020 . . . . . . . . . . . . . . . | 755,000 | 495,000 |
| 2021 . . . . . . . . . . . . . . . | 790,000 | 520,000 |
| 2022 . . . . . . . . . . . . . . . | 10,225,000 | 545,000 |

Modal Securities Schedule Page-2

| July 1 | Series C-1 Sinking Fund Installments | Series C-2 Sinking Fund Installments |
|---|---|---|
| 2023 . . . . . . . . . . . . . . . . | 10,150,000 | 570,000 |
| 2024 . . . . . . . . . . . . . . . . | 26,180,000 | 595,000 |
| 2025 . . . . . . . . . . . . . . . . | 27,325,000 | 625,000 |
| 2026 . . . . . . . . . . . . . . . . . | 35,705,000 | 655,000 |
| 2027* . . . . . . . . . . . . . . . | $37,380,000 | 685,000 |
| 2028 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 55,910,000 |
| 2029** . . . . . . . . . . . . . . . . . . . . . . . . . . | | $58,540,000 |

*Maturity Date, Series C-1
**Maturity Date, Series C-2

Modal Securities Schedule Page-3

**Addendum**
**to**
**Signature Pages for Modal Securities**

**1.  Separate Sale.**

The Modal Securities described in this Addendum (the *Series E Securities*) were sold on the date set forth on the signature page for this Addendum and were sold separate and apart from the Modal Securities Series C-1 and Series C-2.

**2.  Reserve Requirements.**

(a)  Upon the issuance and delivery of the Series E Modal Securities, the Second Lien Bond Reserve Requirement Series 2001 (E) Second Lien Bond Reserve Account, calculated in accordance with the Bond Ordinance, is $10,605,321.49.

(b)  The Second Lien Bond Reserve Account Requirement shall be funded by a surety bond in the amount of the Bond Reserve Account Requirement to be issued by Financial Guaranty Insurance Company, and the City shall enter into a Debt Service Reserve Account Policy Agreement having customary terms.

**3.  Initial Mode.**

The Series E Modal Securities shall be issued as Variable Rate Securities in the Flexible Rate Mode, bearing interest at the rate of 2.12% per annum during the initial Flexible Rate Period which shall end on October 3, 2002.

**4.  Sale of Series E Modal Securities.**

The Series E Modal Securities shall be sold to UBS PaineWebber Inc., acting on behalf of themselves and the other underwriters named in the Bond Purchase Agreement, dated as of the date hereof, for the below stated purchase price plus accrued interest, if any, from the date of the Series E Modal Securities to the date of delivery, on the basis of the representations set forth therein

| | |
|---|---|
| Purchase Price  . . . . . . . . . . . . . | $138,459,940.47 |
| Accrued Interest   . . . . . . . . . | – 0 – |
| Total Purchase Price  . . . . . . . . | $138,459,940.47 |

Modal Securities Addendum Signature Page 1

**5.** **Disposition of Proceeds**

*New Money Purposes*

| Disposition | Amount |
|---|---|
| Total Purchase Price ............ | $138,459,940.47 |
| Capitalized Interest Deposit to Second Lien Bond Redemption Fund ....... | 2,726,675.35 |
| Reserve Account Surety Bond Premium ..................... | 159,079.82 |
| Reserve Account Deposit ......... | - 0 - |
| Gross Amount for Deposit to Construction Fund Series 2001 Subaccount ................... | 135,574,185.30 |
| *Less*: Bond Insurance Premium .... | 707,577.33 |
| *Less*: Liquidity Facility Fee ....... | 50,372.00 |
| Net Amount to be Deposited in the Construction Fund Series 2001 Subaccount ................... | *$134,816,235.97 |

*Includes the amount of $396,108.29 which constitutes "Capitalized Expenses"and which shall be used and applied as provided in Paragraph 9 of the Sale Order.

*[Signature Appears on Modal Securities Addendum Signature Page S-1]*

Modal Securities Addendum Signature Page 2

*[Page Containing Signature of Finance
Director to Addendum Signature Pages with
Respect to Modal Securities]*

The Schedule of Terms for Series E Modal Securities appended hereto are part of the Modal Signature Pages.



J. Edward Hannan
Finance Director
City of Detroit

October 18, 2001

Modal Securities Addendum Signature Page S-1

# Schedule of Terms
## for
## Series E Modal Securities

**1.** **Interest Payment Dates, Record Dates and Day Count Convention.**

(a)     Interest on Series E Modal Securities is payable on the Interest Payment Dates determined in accordance with the VRM Supplement.

(b)     The record dates for the Series E Modal Securities are as provided in the VRM Supplement.

(c)     The Day Count Convention for Series E Modal Securities is as provided in the VRM Supplement.

**2.**     **Terms of Series E Modal Securities.**

(a)     *Principal Amount.* $139,080,000

(b)     *Priority.* Second Lien Bonds.

(c)     *Title as Variable Rate Securities.*

City of Detroit Sewage Disposal System Second Lien Revenue Bonds (Variable Rate Demand), Series 2001(E).

(d)     *Maturity and Interest Rate.*

Subject to change as provided in the VRM Supplement, the Series E Modal Securities shall mature on July 1, 2031, and shall bear interest at the rates as provided in the VRM Supplement.

(e)     *Modal Term Securities.*

Subject to change as provided in the VRM Supplement, the Series E Modal Securities are Term Securities subject to redemption on the dates and in the amounts of respective Sinking Fund Installments set forth below except that the last such date shall not be a redemption date but shall instead be the maturity date.

| July 1 | Series E Sinking Fund Installments |
|---|---|
| 2024 . . . . . . . . . . . . . . | $2,015,000 |
| 2025 . . . . . . . . . . . . . . | 2,130,000 |

Modal Securities Addendum Schedule Page 1

| July 1 | Series E Sinking Fund Installments |
|---|---|
| 2026 . . . . . . . . . . . . . . | 2,145,000 |
| 2027 . . . . . . . . . . . . . . | 2,145,000 |
| 2028 . . . . . . . . . . . . . . | 1,415,000 |
| 2029 . . . . . . . . . . . . . . | 1,360,000 |
| 2030 . . . . . . . . . . . . . . | 62,565,000 |
| 2031* . . . . . . . . . . . . . . | $65,305,000 |

*Maturity Date

Modal Securities Addendum Schedule Page 2

*[Signature Pages to Sale Order of the Finance Director of the City of Detroit with respect to City of Detroit Sewage Disposal System Revenue and Revenue Refunding Bonds, Series 2001 relating to the below mentioned 2001 Securities.]*

Execution Copy

## Signature Pages for Auction Rate Securities (Series 2001(D))

1.  Reserve Requirements.

    (1)    Upon the issuance and delivery of the Auction Rate Securities, the Reserve Requirement with respect to the Auction Rate Securities, calculated in accordance with the Bond Ordinance, is

    Second Lien Bond Reserve Subaccount ...................................... $7,379,761.42

    (2)    The Second Bond Reserve Account Requirement shall be funded by the issuance of a debt service reserve surety bond (the "Reserve Policy") by MBIA Insurance Corporation.

2.  Appointment of Auction Agent.

    The Bank of New York is hereby appointed to be Auction Agent

3.  Sale of Auction Rate Securities.

    The Auction Rate Securities shall be sold to UBS PaineWebber Inc., as Underwriter under the Bond Purchase Agreement dated as of the date hereof, for the below stated purchase price plus accrued interest, if any, from the respective dates of the Auction Rate Securities to the date of delivery, on the basis of the representations set forth therein

    Purchase Price:*................................................$100,597,213.69
    Accrued Interest:.............................................       0.00
    Total Purchase Price: ......................................$100,597,213.69

---

*Equal to par, plus original issue premium of $8,809,650.50 less Underwriter's discount of $662,436.81

### Disposition of Proceeds

*New Money Purposes*

| Disposition | Amount |
| --- | --- |
| Total Purchase Price | $100,597,213.69 |
| *Less*: Bond Insurance and Reserve Policy Premiums | (620,000.00) |
| *Less*: Deposit to Second Lien Bond Redemption Account of the Junior Lien Bond Fund for Capitalized Interest | (4,697,975.14) |
| Net Amount to be Deposited in the Construction Fund Series 2001 Subaccount | $ 95,279,238.55 |

*[Signature Appears on Auction Rate Signature Page S-2]*

The Schedule of Terms for Auction Rate Securities appended hereto are part of the Auction Rate Signature Pages.

J. Edward Hannan
Finance Director
City of Detroit

October 18, 2001

Auction Rate Signature Page S-2



**Schedule of Terms**
**for**
**Auction Rate Securities**

4.      Interest Payment Dates, Record Dates and Day Count Convention.

(1)      Interest on Auction Rate Securities of each Tranche is payable on January 1, 2002 and semi-annually thereafter on each July 1 and January 1 to and including the first day of the Initial Auction Period applicable to such Tranche; thereafter interest on the Auction Rate Securities of such Tranche is payable on the Interest Payment Dates determined in accordance with the ARM Supplement.

(2)      The record dates for the Auction Rate Securities are the 15th day of the calendar month during the Initial Interest Period for Tranche D-1 and D-2 and, thereafter, the record dates are as provided in the ARM Supplement.

(3)      The Day Count Convention for Auction Rate Securities is 12 30-day months in a year of 360 days during the Initial Interest Period for Tranche D-1 and D-2 and, thereafter, the Day Count Convention is as provided in the ARM Supplement.

5.      Terms of Auction Rate Securities.

(1)      *Principal Amount.*

| | |
|---|---|
| Tranche D-1 | $20,000,000 |
| Tranche D-2 | 72,450,000 |
| Total | $92,450,000 |

(2)      *Priority.*  Second Lien Bonds.

(3)      *Title.*  City of Detroit Sewage Disposal System Second Lien Revenue Bonds (ARCs), Series 2001 (D-1) and Series 2001 (D-2).

(4)      *Maturity and Interest Rate.*

The Auction Rate Securities in the following Tranches shall mature on the respective dates and in the respective principal amounts and shall bear interest from the date thereof (October 23, 2001), at the respective initial interest rates per annum as set forth below during the respective Initial Interest Period applicable thereto; thereafter, the Auction Rate Securities bear interest at the rates, payable on the dates as provided in the ARM Supplement:

Auction Rate Signature Page S-3

| Tranche | July 1 | Amount Maturing | Initial Interest Rate | Initial Interest Period (Inclusive) |
|---------|--------|-----------------|-----------------------|-------------------------------------|
| D-1 | 2032 | $20,000,000 | 5.50% | October 23, 2001 – June 30, 2008 |
| D-2 | 2032 | $72,450,000 | 5.50% | October 23, 2001 – December 31, 2011 |

*[End of Schedule of Terms for Auction Rate Securities]*

## General Terms of 2001 Securities Supplement

This **General Terms of 2001 Securities Supplement** is a supplement to the **Composite Sale Order with respect to Series 2001 Securities** executed by the Director of Finance of the City of Detroit and together therewith and with all other supplements and all exhibits constitutes the *Sale Order*.

### Article I
### Definitions

#### Section 1.01.  Definitions.

In addition to the terms defined in or pursuant to the Sale Order, the following terms shall have the following respective meanings for all purposes of the Sale Order *unless* the context clearly otherwise requires:

*Holder* and *Securityholder* means, as to any particular Security, the Person is whose name such Security is registered on the books maintained for that purpose by the Registrar.

*Paying Agent* means, as to any particular Security, the Person by whom such Series 2001 Security is payable in respect of interest or principal (and premium, if any), as the case may be.

*Principal Installment* Date means any July 1.

*Registrar* means, as to any particular Security, the Person who maintains the Registry therefor pursuant to the Sale Order.

*Registry* means as to any particular Security, the books for the registration thereof maintained by the Registrar.

### Article II
### General Terms

#### Section 2.01.  Numbers and Prefixes.

Series 2001 Securities shall be numbered consecutively from "1" within each Type and prefixed with the letter "R". Any Variable Rate Security issued pursuant to *Section 6.14* of the VRM Supplement shall be additionally identified as a replacement Security to distinguish it from all other Modal Securities.

#### Section 2.02.  Form, Title and Additional Designations.

The Non-Provider Securities shall be in the form prescribed by *Exhibit 2.02* hereto and shall bear title, series designation and additional designations as provided in the respective signature pages to the Sale Order.

## Section 2.03. Dating.

Upon initial issuance, all Non-Provider Securities *except* Fixed Rate Securities and CPI Securities shall be dated the Closing Date, and all Fixed Rate Securities and CPI Securities shall be dated as of September 15, 2001.

## Section 2.04. Execution.

Series 2001 Securities shall be executed as provided in Section 5(j) of the Bond Resolution.

## Section 2.05. Maturities and Interest Rates.

Maturities and interest rates for each Type shall be as provided in the Schedule of Terms appended to the respective signature pages to the Sale Order.

## Section 2.06. Interest.

Each Security shall bear interest from its date or from the most recent Interest Payment Date on which interest has been paid or duly provided for through the day before the next Interest Payment Date, and such interest shall be payable at the rate established for such Security in or pursuant to the Sale Order, calculated at the applicable Day Count Convention and payable as provided in Section 15 of the Bond Resolution *except* that interest on Modal Securities shall be payable as provided in the VRM Supplement.

## Section 2.07. Manner and Places of Payment.

(a)     *Principal.* Principal and premium, if any, of Series 2001 Securities is payable as provided in Section 5(c)(1) of the Bond Resolution and in the case of Variable Rate Securities is also payable at the Tender Agent upon presentation and surrender thereof.

(b)     *Interest.* Interest on Series 2001 Securities is payable as provided in Section 5(d)(2) of the Bond Resolution and in the case of Variable Rate Securities and the Auction Rate Securities is also payable as provided in, respectively, the VRM Supplement and the ARM Supplement.

A-2

**Section 2.08.  Limitations on Transfer.**

The transfer of Auction Rate Securities is subject to such limitations as may be contained in the Auction Rate Mode Supplement in addition to any limitations otherwise applicable.

**Section 2.09.  Initial Issuance.**

The Series 2001 Securities shall be issued in certificated form, fully registered in the name of the Securities Depository or its nominee and shall be initially issued as fewest number of certificates for each CUSIP number as are possible under the regulations of the Securities Depository governing the maximum denomination of a single certificate.

**Section 2.10.  Authentication after Initial Issuance.**

After initial issuance, Series 2001 Securities shall be authenticated as follows:

(1)     All Fixed Rate Securities and all CPI Securities shall be authenticated by the Transfer Agent.

(2)     Auction Rate Securities shall be authenticated by the Transfer Agent.

(3)     Modal Securities:

(i)     All Variable Rate Securities issued in transfer, exchange, redemption or purchase, and Modal Fixed Rate Securities issued on a Mode Change Date, shall be authenticated by the Tender Agent as fully to all intents and purposes as though authenticated by the Transfer Agent.

(ii)     All Modal Fixed Rate Securities issued in transfer, exchange, redemption or purchase shall be authenticated by the Transfer Agent.

(4)     All Provider Securities in certificated form shall be authenticated by the Tender Agent.

**Section 2.11.  Provider Securities.**

The terms of Provider Securities shall be as provided in the VRM Supplement.

**Section 2.12.  Term Securities and Sinking Fund Installment Redemption.**

(a)     Series 2001 Securities identified in the Schedule of Terms appended to the respective signature pages to the Sale Order as *Term Securities* are subject to redemption from

A-3

Sinking Fund Installments as set forth therein. Sinking Fund Installments for Variable Rate Securities may be changed as provided in the VRM Supplement.

(b)    Term Securities subject to Sinking Fund Installments are subject to redemption upon notice given as provided in this Supplement in part on each Principal Installment Date in the amount of the Sinking Fund Installment for such Principal Installment Date after giving effect to any amounts credited to such Sinking Fund Installment as a result of the redemption or purchase of Term Securities of such maturity pursuant to *Section 4.04* hereof at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.

**Section 2.13.  Optional Redemption.**

(a)    Fixed Rate Securities:  As provided in the signature pages for the Fixed Rate Securities.

(b)    CPI Securities:  As provided in the signature pages for the CPI Securities.

(c)    Modal Securities:  As provided in the VRM Supplement.

(d)    Auction Rate Securities:  As provided in the ARM Supplement.


**Article III**
**Exchange and New Certificates**

**Section 3.01.  Exchange.**

Reference is made to Section 5(f) of the Bond Resolution for provisions relating to the exchange of Series 2001 Securities; *provided* that references therein to "Transfer Agent" shall instead refer to "Tender Agent" in the case of Variable Rate Securities.


**Section 3.02.  New Certificates.**

*If* a certificated Series 2001 Security bearing a particular CUSIP number (a *Predecessor Security*) is no longer fungible with all other certificated Series 2001 Securities bearing the same CUSIP number, *then* a new Series 2001 Security in the appropriate certificated form shall be executed by the City, authenticated by the Transfer Agent or Tender Agent, as the case may be, and delivered in exchange for the Predecessor Security if and when required by the Securities Depository.


A-4

## Article IV
## Redemption

**Section 4.01.  Selection of Series 2001 Securities for Redemption.**

(a)      *Unless* required to satisfy maturing Sinking Fund Installments, maturities of Series 2001 Securities to be selected for redemption shall be selected for redemption in such manner as the Finance Director deems appropriate, and Series 2001 Securities to be selected for redemption within a maturity when less than the maturity is to be called for redemption shall be selected by lot.

(b)      Of the Series 2001 Securities to be selected for redemption, such Series 2001 Securities shall be selected in multiples of the minimum Authorized Denomination thereof, and Series 2001 Securities of denominations of more than such minimum Authorized Denomination shall be treated as representing the number of Series 2001 Securities obtained by dividing the denomination of the Series 2001 Security by such minimum Authorized Denomination, and such Series 2001 Securities may be selected for redemption in part.

**Section 4.02.  Notice of Redemption.**

(a)      When Series 2001 Securities, or portions thereof, are to be for redeemed, the Registrar for such Series 2001 Securities shall in its own name or in the name of the City, give notice by first class mail not less than 30 days prior to the date fixed for redemption to the registered owners of the Series 2001 Securities or portions thereof to be redeemed at their addresses set forth in the Registry.

(b)      Each such notice shall specify the complete name, and the CUSIP numbers of the Series 2001 Securities to be redeemed, the redemption date and the place or places where amounts due upon such redemption will be payable (including the name, address and telephone number of a contact person at such places) and, if less than all the Series 2001 Securities are to be redeemed, the letters and numbers or other distinguishing marks of such Series 2001 Securities to be redeemed, and such notice shall also specify the respective portions of the principal amounts thereof to be redeemed. Such notice shall further state that on such date there shall become due and payable upon each Series 2001 Security, or a portion thereof to be redeemed, the redemption price thereof, together with interest accrued to the redemption date, and that from and after such date interest thereon shall cease to accrue and be payable.

(c)      A copy of each notice shall be sent by the Registrar to (i) at least two of the national information services that disseminate redemption notices or redemption notice information (so long as two such services exist), and (ii) to each Provider of a Financial Facility, if any, in respect of such Series 2001 Securities *except* in the case of redemption by reason of Sinking Fund Installments.

A-5

**Section 4.03.  Payment of Series 2001 Securities Called for Redemption.**

(a)     Notice having been given in the manner herein provided, the Series 2001 Securities so called for redemption shall become due and payable on the date fixed for the redemption thereof at the applicable Redemption Price, plus interest accrued to the date of redemption and shall be paid as provided in *Section 2.07* hereof.

(b)     If on the Redemption Date for any Series 2001 Securities, moneys for the payment of the Redemption Price thereof, plus interest to accrue to the Redemption Date, are held by the Paying Agent therefor so as to be available therefor on said date, and if notice of redemption · shall have been given as aforesaid, then, from and after such Redemption Date such Series 2001 Securities so called for redemption shall cease to bear interest; otherwise, such Series 2001 Securities shall continue to bear interest until paid at the same rate as they would have borne had they not been called for redemption.

**Section 4.04.  Satisfaction of Mandatory Redemption Requirements.**

Reference is made to Section 11(b) of the Bond Resolution for provisions relating to the satisfaction of Mandatory Redemption Requirements.  References therein to "Mandatory Redemption Requirements" refer to Sinking Fund Installments.

**Section 4.05.  Redemption of Less than all of a Security.**

If there shall be called for redemption less than all of a Series 2001 Security in a denomination greater than minimum Authorized Denomination thereof, the City shall execute (if not otherwise executed) and the Registrar therefor shall authenticate and deliver upon surrender of such Series 2001 Security, without charge to such Holder thereof, a Series 2001 Security or Series 2001 Securities in any Authorized Denomination specified by such Holder not in excess of the aggregate principal of the unredeemed portion of such Series 2001 Security of the same tenor bearing interest at the same rate and maturing on the same date in the amount of the unredeemed portion of the Series 2001 Security so surrendered.

**Article V
Securities Depository and Financial Facilities**

**Section 5.01.  Concerning the Securities Depository.**

(a)     Reference is made to Section 7 of the Bond Resolution for provisions concerning the Securities Depository.

A-6

(b)    Section 7 is hereby modified in order to conform to current municipal finance practices:

(1)    All references therein to the "Transfer Agent" shall include the Transfer Agent to the extent otherwise applicable.

(2)    All references therein to a "representation letter" shall, in the absence of a representation letter in accordance with current procedures of the Securities Depository, refer to the current operational procedures between the Securities Depository and the Transfer Agent and, if applicable, the Tender Agent.

(c)    All provisions of Section 7 as above modified shall govern to the extent of any conflict with other provisions of the Sale Order *except* as may be otherwise required by a Financial Facilities Agreement.

**Section 5.02.  Financial Facility Agreements.**

So long as any Financial Facility entered into pursuant to the Sale Order is in effect, and the obligor thereunder has not failed to comply with its payment obligations, the provisions thereof shall govern to the extent of any conflict with the Sale Order.

*[End of General Terms of 2001 Securities Supplement]*

A-7

**Exhibit 2.02**

## Forms of Series 2001 Securities

The Types of the Series 2001 Securities shall be in substantially the following respective forms and tenor with such necessary or appropriate omissions, insertions and variations as are permitted or required by the Sale Order and are approved by the Persons executing the same and the Securities on behalf of the City and execution thereof by such Person shall constitute conclusive evidence of such approval.

### Fixed Rate Securities

The Fixed Rate Securities shall be in substantially the following form with these particulars:

| Series Designation | Priority | Aggregate Principal Amount |
|---|---|---|
| A . . . . . . . . . . . . . | Senior | $76,375,000 |
| B . . . . . . . . . . . . | Second | $110,550,000 |

*[Form of Fixed Rate Securities begins on following page.]*

Exh. 2.02 Page 8

R-

**Notice:** Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (*DTC*), to the City of Detroit or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any transfer, pledge or other use hereof for value or otherwise by or to any person is wrongful** inasmuch as the registered owner hereof, Cede & Co., has an interest herein.

**United States of America**
**State of Michigan**
**County of Wayne**

**City of Detroit**
**Sewage Disposal System**
**[*Priority*] Lien Revenue Bonds**
**Series 2001([*Series Designation*])**

| Maturity Date | Interest Rate | Bond Date | CUSIP |
|---|---|---|---|
| July 1 [*Year of Maturity*] | | September 15, 2001 | |

**Registered Holder: Cede & Co.**

**Principal Sum: $**

The **City of Detroit, Wayne County, Michigan** (the *City*) acknowledges itself indebted and for value received hereby promises to pay, but only from the sources hereinafter provided, to the Registered Holder named above, or registered assigns, on the Maturity Date the Principal Sum, unless redeemed prior thereto as hereinafter provided, upon presentation and surrender of this bond at the designated office of U.S. Bank Trust National Association as transfer agent or at the office of its successor as transfer agent (such transfer agent and any successor, the *Transfer Agent*) and interest on the Principal Sum from the Bond Date or from the most recent Interest Payment Date to which interest has been paid or duly provided for, until payment of the Principal Sum has been made or duly provided for, on January 1, 2002, and July 1, 2002, and semi-annually thereafter on each January 1 and July 1 at the Interest Rate shown above to the Person in whose name this bond is registered as of the 15th day of the preceding calendar month.

Form of Fixed Rate Securities          Exh. 2.02 Page 9

This bond is one of the bonds of a series of bonds designated "City of Detroit $[*Aggregate Principal Amount*] Sewage Disposal System [*Priority*] Lien Revenue Bonds, Series 2001 [*Series Designation*]" (the *Bonds*). The Bonds are issued under the provisions of Act No. 94, Public Acts of Michigan, 1933, as amended (the *Act*), and pursuant to Ordinance No. 27-86 of the City, as amended and supplemented to the Bond Date (the *Bond Ordinance*), a Resolution adopted by the City on August 1, 2001, as amended (the *Resolution*), and a Composite Sale Order of the Finance Director dated, as to the Bonds, September 26, 2001 (the *Sale Order*, and together with the Bond Ordinance and the Resolution, the *Bond Documents*).

The Bonds are issued in full compliance with the Constitution and statutes of the State of Michigan, specifically including the Act, for the purposes set forth in the Bond Documents.

**Pledge and Priority**

For the prompt payment of principal (and premium, if any) of and interest on the Bonds, the Net Revenues of the System are irrevocably pledged and a statutory lien is hereby recognized and created. [*The following sentence to appear in only Series A Securities*: Such lien is a first lien and the Bonds are of equal standing on a parity with all other obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a first lien on Net Revenues.] [*The following sentence to appear in only Series B Securities*: Such lien is a second lien, subject to obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a first lien on Net Revenues. The Bonds are of equal standing on a parity with all other obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a second lien on Net Revenues.]

**Payment in Legal Tender**

The principal (and premium, if any) of, and interest on, this bond is payable in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

**Redemption**

[*The following only appears in the Series A Securities*:
**Optional Redemption**

The Bonds maturing on and after July 1, 2012, are subject to redemption on and after July 1, 2011, upon notice given as required in the Bond Documents in whole or in part on any date at the option of the City at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.]

Form of Fixed Rate Securities          Exh. 2.02 Page 10



### *Sinking Fund Redemption*

[*The following only appears in the Series A Securities*:
The Bonds maturing on July 1, 2031, are subject to mandatory redemption prior to maturity upon notice given as required in the Bond Documents in part through the application of Sinking Fund Installments as provided in the Sale Order on each July 1, commencing July 1, 2023, at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.]

[*The following only appears in the Series B Securities*: ˙
The Bonds are subject to mandatory redemption prior to maturity upon notice given as required in the Bond Documents in part through the application of Sinking Fund Installments as provided in the Sale Order on each July 1, commencing July 1, 2023, at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.]

### *Effect of Call for Optional or Mandatory Redemption*

As of the Redemption Date, if this bond has been called for redemption, proper notice of redemption has been given and funds sufficient to pay the Redemption Price are available as provided in the Bond Documents interest will cease to accrue on this bond.

### Transfer – Payments to Registered Holders

The registration of this bond is transferable only as provided in the Bond Documents. The Transfer Agent and the City may treat the Registered Holder hereof as the absolute owner hereof for all purposes, whether or not this bond shall be overdue.

### Reference and Incorporation of Bond Documents

Reference is hereby made to the Bond Documents, and the provisions thereof as they relate to the Bonds are hereby made a part of this bond to the extent not in conflict with the terms stated in this bond.

### Additional Obligations

[*The following paragraph to appear only in the Series A Securities*: The Bond Ordinance permits the issuance of additional Securities and the incurring of Ancillary Obligations secured with a lien on Net Revenues of a priority equal or lower than the priority of the lien securing this bond.]

[*The following paragraph to appear only in the Series B Securities*: The Bond Ordinance permits the issuance of additional Securities and the incurring of Ancillary Obligations secured

Form of Fixed Rate Securities          Exh. 2.02 Page 11

with a lien on Net Revenues of a priority senior to, equal or lower than the priority of the lien securing this bond.]

## Amendment of Bond Documents.

The Bond Documents contain provisions permitting the amendment thereof, which, under certain circumstances, can become effective without any consent of registered holders of the Bonds and under other circumstances require consent of a majority of registered holder of the Bonds.

## Obligation of Bonds

**This bond is a self-liquidating bond and is not a general obligation of the City and does not constitute an indebtedness of the City within any constitutional, statutory or charter limitation, but is payable, both as to principal and interest solely from the Net Revenues of the System. The principal of (and premium, if any) and interest on this bond are secured by the statutory lien of the priority described above.**

## Authentication Required for Validity

This bond shall not be valid until the certificate of authentication hereon shall have been signed as therein provided.

*[Signatures and Certificate of Authentication follow]*

Form of Fixed Rate Securities          Exh. 2.02 Page 12

**In Witness Whereof,** the City Council of the City of Detroit, County of Wayne, State of Michigan, has caused this bond to be signed in its name by the facsimile signatures of its Mayor and its Finance Director and a facsimile of its corporate seal to be imprinted on this bond all as the Bond Date.

**City of Detroit**

By_____
                            Mayor


and_____
                        Finance Director


## Certificate of Authentication

This bond is one of the bonds of the issue described in the within-mentioned Bond Documents.

**U. S. Bank Trust National Association,** Transfer Agent


By_____
                        Authorized Officer

Date of Authentication: _____, 2001

\*   \*   \*   \*   \*   \*   \*   \*

**Statement of Insurance**

*[As required by Bond Insurer]*

\*   \*   \*   \*   \*   \*   \*   \*

Form of Fixed Rate Securities          Exh. 2.02 Page 13

## Form of Assignment

**For Value Received** the undersigned hereby sells, assigns and transfers unto

*[Please insert Social Security
or other identifying number
of assignee.]*

_____

_____

_____

*[Please print or typewrite name and address of transferee.]*

_____

the within bond and all rights thereunder and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within bond
on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed:


_____

*[Bank, Trust Company or Firm]*          *Note:   The signature to this assignment must
correspond with the name as it appears on the
face of the within bond in every particular,
without alteration or enlargement or any change
whatsoever.*


_____
Authorized Officer




Form of Fixed Rate Securities          Exh. 2.02 Page 14

## Modal Securities

The Modal Securities shall be in substantially the following form with these particulars:

| Series Designation | Priority | Refunding Caption | Year of Maturity | Initial Mode | Aggregate Principal Amount |
|---|---|---|---|---|---|
| C-1 .............. | Senior | Yes | 2027 | Weekly | $159,970,000 |
| C-2 ............. | Senior | Yes | 2029 | Weekly | $127,165,000 |
| E ............... | Second | No | 2031 | Flexible | $139,080,000 |

| Series Designation | Type | Sinking Fund Year | Sale Order Date |
|---|---|---|---|
| C-1 ............. | Variable Rate Demand | 2002 | October 1 |
| C-2 ............. | Variable Rate Demand | 2002 | October 1 |
| E ............... | Variable Rate Demand | 2024 | October 18 |

The Modal Securities shall have the designation of "(Variable Rate Demand)" upon initial issuance and until the mode is changed to the Auction Rate Mode or a Modal Fixed Rate Mode. Upon any such Mode change, the designation shall be respectively changed to "(ARCs)" or "(Modal Fixed Rate)" if and to the extend that new bond certificates are required by the Securities Depositary.

*[Form of Modal Securities begins on following page.]*

Exh. 2.02 Page 15

R-

**Notice:** Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation (*DTC*), to the City of Detroit or its agent for registration of transfer, exchange or payment, and any certificate issued is registered in the name of Cede & Co. or such other name as requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), **any transfer, pledge or other use hereof for value or otherwise by or to any person is wrongful** inasmuch as the registered owner hereof, Cede & Co., has an interest herein.

[*The following to appear on all Modal Securities except Modal Fixed Rate Securities*:
**This bond is subject to mandatory tender for purchase at the time and in the manner as provided herein and must be so tendered, and if not so tendered will be deemed to have been tendered.**]

### United States of America
### State of Michigan
### County of Wayne

### City of Detroit
### Sewage Disposal System
### [*Priority*] Lien Revenue [*Refunding*] Bonds
### ([*Type*]),
### Series 2001([*Series Designation*])

| Maturity Date | Interest Rate Mode | Bond Date | CUSIP |
|---|---|---|---|
| July 1 [*Year of Maturity*] | [*Initial Mode*] | October 23, 2001 | |

**Registered Holder: Cede & Co.**

### Principal Sum: $

The **City of Detroit, Wayne County, Michigan** (the *City*) acknowledges itself indebted and for value received hereby promises to pay, but only from the sources hereinafter provided, to the Registered Holder named above, or registered assigns, on the Maturity Date the Principal Sum, unless redeemed prior thereto as hereinafter provided, upon presentation and surrender of this bond as provided in the hereinafter defined VRM Supplement and interest on the Principal Sum from the Bond Date or from the most recent Interest Payment Date to which interest has

Form of Modal Securities          Exh. 2.02 Page 16

been paid or duly provided for, until payment of the Principal Sum has been made or duly provided for, on the dates (*Interest Payment Dates)* and at the rates determined as described below to the Person in whose name this bond is registered as of the record date established as provided in the VRM Supplement.

This bond is one of the bonds of a series of bonds designated "City of Detroit $[*Aggregate Principal Amount*] Sewage Disposal System [*Priority*] Lien Revenue [*Refunding*] Bonds [*Type*], Series 2001[*Series Designation*]" (the *Bonds*). The Bonds are issued under the provisions of Act No. 94, Public Acts of Michigan, 1933, as amended (the *Act*), and pursuant to Ordinance No. 27-86 of the City, as amended and supplemented to the Bond Date (the *Bond Ordinance*), a Resolution adopted by the City on August 1, 2001, as amended (the *Resolution*), and a Composite Sale Order of the Finance Director dated, as to the Bonds, [*Sale Order Date*], 2001 (the *Sale Order*, and together with the Bond Ordinance and the Resolution, the *Bond Documents*) and particularly Annex C to the Sale Order, titled "Variable Rate Mode Supplement and Agreement", dated as of September 1, 2001 (the *VRM Supplement*), among the City, U.S. Bank Trust National Association, as trustee and transfer agent (as transfer agent, together with any successor transfer agent, the *Transfer Agent*) and U.S. Bank Trust National Association, as tender agent (together with any successors tender agent, the *Tender Agent*).

The Bonds are issued in full compliance with the Constitution and statutes of the State of Michigan, specifically including the Act, for the purposes set forth in the Bond Documents.

**Pledge and Priority**

For the prompt payment of principal (and premium, if any) of and interest, the Net Revenues of the System are irrevocably pledged and a statutory lien is hereby recognized and created. [*The following sentence to appear in only Series C Securities*: Such lien is a first lien and the Bonds are of equal standing on a parity with all other obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a first lien on Net Revenues.] [*The following sentence to appear in only Series E Securities*: Such lien is a second lien, subject to obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a first lien on Net Revenues. The Bonds are of equal standing on a parity with all other obligations heretofore and hereafter issued or incurred under the Bond Ordinance and secured by a second lien on Net Revenues.]

**Interest Modes**

The Bonds bear interest as modal bonds. As such, the interest mode (a *Mode*) of Bonds may be changed from one Mode to another as provided in the VRM Supplement, and while in a Mode are subject to redemption and tender particular to that Mode as provided in the VRM Supplement. [*The following sentence to appear in only Series C Securities*: The VRM Supplement does not require all Bonds to be in the same Mode; consequently, the circumstances of redemption and tender may not be the same for all Bonds.] [*The following sentence to appear*

Form of Modal Securities          Exh. 2.02 Page 17

*in only Series E Securities*: Except while in the Flexible Rate Mode, the VRM Supplement does not require all Bonds to be in the same Mode; consequently, while in any Mode other than the Flexible Mode, the circumstances of redemption and tender may not be the same for all Bonds. While in the Flexible Rate Mode, the VRM Supplement requires all Bonds to be in that Mode and the circumstances of redemption and tender will be the same for all Bonds.]

### Interest

The interest rate of this bond is determined by the Remarketing Agent on the Rate Determination Date for the Mode in effect at the time and is effective as of the immediately following Interest Adjustment Date for such Mode and until (and excluding) the next Interest Adjustment Date *or if* such Mode includes only one Interest Adjustment Date *then* the day before such Mode is changed. Interest is calculated at the Day Count Convention for the particular Mode and is payable in the manner provided for in the VRM Supplement.

### Principal

The principal (and premium, if any) of this bond at maturity or prior redemption is payable to the Registered Holder upon surrender to either the Transfer Agent or the Tender Agent.

### Payment in Legal Tender

The principal (and premium, if any) of, and interest on, this bond is payable in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

### Tenders

#### *Optional Tender*

While in the Daily Mode or Weekly Mode, this bond may be tendered to the Tender Agent at the option of the Registered Holder at the Purchase Price of 100% of the principal amount thereof, plus interest accrued to the Purchase Date, upon notice given by the Registered Holder as provided in the VRM Supplement. The VRM Supplement provides that the right of the Registered Holder to tender this bond at the Registered Holder's option shall be suspended upon the occurrence of a Termination Event.

#### *Mandatory Tender*

The VRM Supplement provides that this bond is subject to mandatory tender to the Tender Agent upon the occurrence of any of certain events enumerated in the VRM Supplement upon notice as is required therein to be given at the Purchase Price of 100% of the Principal Sum plus interest accrued thereon to the Purchase Date. [*The following sentence to appear in only Series*

Form of Modal Securities          Exh. 2.02 Page 18

*E Securities*: When in the Flexible Rate Mode, this bond is required to be tendered to the Tender Agent on the last day of each Flexible Rate Mode without notice unless this bond is also subject to a Mode change on such date. In that case, such notice shall be given as required by the VRM Supplement for a Mode change.]

### *Effect of Exercise of Option for Optional Tender or Call for Mandatory Tender*

*If* the Registered Holder of this bond shall exercise its option to tender this bond *or if* this bond is called for mandatory tender, all as provided in the VRM Supplement, *then* the Purchase Price of this bond (which includes interest accrued to the Purchase Date) shall become due and payable on the Purchase Date, and *if* on such Purchase Date the Tender Agent holds amounts sufficient to pay such Purchase Price, *then* interest on this bond shall cease to accrue; *otherwise*, this bond shall continue to bear interest as if it had not been called for tender on such Purchase Date.

### *Payment of Purchase Price on Tender*

The VRM Supplement provides that, subject to certain exceptions, the City shall maintain a Liquidity Facility to pay the Purchase Price of this bond upon optional or a mandatory tender. The VRM Supplement further provides that the Purchase Price is payable solely from amounts made available under the Liquidity Facility and that none of the City, the Transfer Agent, the Tender Agent, the Remarketing Agent or the Bond Insurer is obligated to provide funds for the payment of the Purchase Price.

### Redemption

### *Optional Redemption – Short-Term Mode*

When in a Daily Mode or a Weekly Mode, this bond is subject to redemption prior to maturity upon notice given as required in the VRM Supplement in whole or in part on any Modal Business Day at the option of the City at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.

[*The following paragraph to appear in only Series E Securities*: When in a Flexible Rate Weekly Mode, this bond is subject to redemption prior to maturity upon notice given as required in the VRM Supplement in whole or in part on any Interest Payment Date at the option of the City at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.]

### *Optional Redemption – Fixed Rate Mode*

When in the Modal Fixed Rate Mode, this bond is subject to redemption prior to maturity upon notice given as required in the VRM Supplement in whole on any date or in part on any

Form of Modal Securities          Exh. 2.02 Page 19

Interest Payment Date at the option of the City at the Redemption Prices set forth in the VRM Supplement plus interest accrued to the Redemption Date.

## Sinking Fund Redemption

This bond is subject to mandatory redemption prior to maturity upon notice given as required in the VRM Supplement in part through the application of Sinking Fund Installments as provided in the Sale Order on each July 1, commencing July 1, [*Sinking Fund Year*] at a Redemption Price of 100% of the principal amount thereof to be redeemed plus interest accrued to the Redemption Date.

## Effect of Call for Optional or Mandatory Redemption

As of the Redemption Date, if this bond has been called for redemption, proper notice of redemption has been given and funds sufficient to pay the Redemption Price are available as provided in the Bond Documents interest will cease to accrue on this bond.

## Transfer – Payments to Registered Holders

The registration of this bond is transferable only as provided in the VRM Supplement. The Tender Agent, the Transfer Agent, the Remarketing Agent and the City may treat the Registered Holder hereof as the absolute owner hereof for all purposes, whether or not this bond shall be overdue.

## Reference and Incorporation of Bond Documents

Reference is hereby made to the Bond Documents, and the provisions thereof as they relate to the Bonds are hereby made a part of this bond to the extent not in conflict with the terms stated in this bond.

## Additional Obligations

[*The following paragraph to appear only in the Series C Securities*: The Bond Ordinance permits the issuance of additional Securities and the incurring of Ancillary Obligations secured with a lien on Net Revenues of a priority equal or lower than the priority of the lien securing this bond.]

[*The following paragraph to appear only in the Series D Securities*: The Bond Ordinance permits the issuance of additional Securities and the incurring of Ancillary Obligations secured with a lien on Net Revenues of a priority senior to, equal or lower than the priority of the lien securing this bond.]

Form of Modal Securities          Exh. 2.02 Page 20

**Amendment of Bond Documents.**

The Bond Documents contain provisions permitting the amendment thereof, which, under certain circumstances, can become effective without any consent of registered holders of the Bonds and under other circumstances require consent of a majority of registered holder of the Bonds.

**Obligation of Bonds**

**This bond is a self-liquidating bond and is not a general obligation of the City and does not constitute an indebtedness of the City within any constitutional, statutory or charter limitation, but is payable, both as to principal and interest solely from the Net Revenues of the System. The principal of (and premium, if any) and interest on this bond are secured by the statutory lien of the priority described above.**

**Authentication Required for Validity**

This bond shall not be valid until the certificate of authentication hereon shall have been signed as therein provided.

*[Signatures and Certificate of Authentication follow]*

Form of Modal Securities          Exh. 2.02 Page 21

**In Witness Whereof,** the City Council of the City of Detroit, County of Wayne, State of Michigan, has caused this bond to be signed in its name by the facsimile signatures of its Mayor and its Finance Director and a facsimile of its corporate seal to be imprinted on this bond all as the Bond Date.

**City of Detroit**

By_____
Mayor

and_____
Finance Director

## Certificate of Authentication

This bond is one of the bonds of the issue described in the within-mentioned Bond Documents.

**U. S. Bank Trust National Association,** Transfer Agent

By_____
Authorized Officer

Date of Authentication: _____, 2001

\*   \*   \*   \*   \*   \*   \*

**Statement of Insurance**

*[As required by Bond Insurer]*

\*   \*   \*   \*   \*   \*   \*

Form of Modal Securities       Exh. 2.02 Page 22

## Form of Assignment

**For Value Received** the undersigned hereby sells, assigns and transfers unto

*[Please insert Social Security
or other identifying number
of assignee.]*

_____

_____

_____

*[Please print or typewrite name and address of transferee.]*

_____

the within bond and all rights thereunder and hereby irrevocably constitutes and appoints
_____ attorney to transfer the within bond
on the books kept for registration thereof, with full power of substitution in the premises.

Dated: _____

Signature Guaranteed:


_____

*[Bank, Trust Company or Firm]*          *Note:  The signature to this assignment must
correspond with the name as it appears on the
face of the within bond in every particular,
without alteration or enlargement or any change
whatsoever.*


_____

Authorized Officer




Form of Modal Securities          Exh. 2.02 Page 23

*[Annex B — Intentionally Omitted]*

**[THIS ITEM – THE VARIABLE RATE SUPPLEMENT – HAS BEEN REMOVED
AND
ADDED TO NUMBER 8(A) AS INDICATED IN THE CLOSING MEMORANDUM]**

Exhibit 10.01

## FSA Insured Securities Provisions

1. **Applicability.**

This Exhibit shall be in effect for only so long as Financial Security Assurance Inc, a New York stock insurance company, or any successor thereto, is the insurer of the FSA Insured Securities and has not failed to comply with its payment obligations under the FSA Bond Insurance Policy. For so long as this Exhibit is in effect, it shall be applicable in respect of the FSA Insured Securities *notwithstanding* anything to the contrary elsewhere contained in the Sale Order, including the VRM Supplement.

2. **FSA Sole Holder for Purposes of Consents.**

2.01. The FSA Bond Insurer shall be deemed to be the sole holder of the FSA Insured Securities for the purpose of exercising any voting right or privilege or giving any consent or direction or taking any other action that the holders of the FSA Insured Securities are entitled to take pursuant to the Bond Ordinance or the VRM Supplement

2.02. The rights of FSA Bond Insurer to request, consent to or direct any action are rights granted to the FSA Bond Insurer in consideration of its issuance of the FSA Bond Insurance Policy. Any exercise by the FSA Bond Insurer of such rights is merely an exercise of the FSA Bond Insurer's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the Securityholders nor does such action evidence any position of the FSA Bond Insurer, positive or negative, as to whether Second Lien Bondholder consent is required in addition to consent of the FSA Bond Insurer.

3. **Mode Change to Fixed Rate.**

3.01. The Finance Director shall take such steps as are necessary to change the mode of any outstanding FSA Insured Variable Rate Securities to the Modal Fixed Rate Mode upon the request of the FSA Bond Insurer for any reason described below.

3.02. The FSA Bond Insurer may request the Finance Director shall take such steps as are necessary to change the mode of any outstanding FSA Insured Variable Rate Securities to the Modal Fixed Rate Mode for any of the following reasons and no other:

3.02.01. The Liquidity Provider for the FSA Insured Securities (the *FSA Related Liquidity Provider*) failed to purchase FSA Insured Variable Rate Securities when obligated by its Liquidity Facility to do so.

3.02.02. An Immediate Termination Event occurs in respect of FSA Insured Variable Rate Securities *or* a mandatory tender event occurs that is either a Last Put Termination Event or the Occurrence of Expiry Date and FSA Insured Variable Rate Securities are subject to the mandatory tender by reason of such occurrence.

3.02.03.    Provider Bonds insured by FSA are held by the FSA Related Liquidity Provider for 45 days or more in any year commencing on a July 2 and ending on the following July 1 (a *Bond Year*) *or* there are two failed remarketings in any bond Year.

3.02.04.    If Provider Bonds insured by FSA bear interest at the Legal Maximum Rate.

## 4.    No Acceleration Except with Consent.

The maturity of FSA Insured Securities shall not be accelerated without the consent of the FSA Bond Insurer.

## 5.    Modifications, Amendments and Supplements.

5.01.    No modification, amendment or supplement to the Bond Ordinance requiring the consent of holders of FSA Insured Securities, the Bond Resolution or the Sale Order as it relates to FSA Insured Securities (each a *Related Document*) or that materially adversely affects its rights thereunder may become effective except upon obtaining the prior written consent of the FSA Bond Insurer.

5.02.    Copies of any modification or amendment to the Bond Ordinance or any other Related Document shall be sent to Standard & Poor's Ratings Services and Moody's Investors Service, Inc. at least 10 days prior to the effective date thereof.

## 6.    Defeasance.

6.01.    Only (i) cash, (ii) non-callable direct obligations of the United States of America (*Treasuries*), (iii) evidences of ownership of proportionate interests in future interest and principal payments on Treasuries held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying Treasuries are not available to any person claiming through the custodian or to whom the custodian may be obligated or (iv) pre-refunded municipal obligations rated "AAA" and "Aaa" by S&P and Moody's, respectively, or any combination thereof, shall be authorized to be used to effect defeasance of the FSA Insured Securities *unless* the FSA Bond Insurer otherwise approves.

6.02.    To accomplish defeasance of FSA Insured Securities, the City shall cause to be delivered (i) a report of an independent firm of nationally recognized certified public accountants or such other accountant as shall be acceptable to the FSA Bond Insurer (*Accountant*) verifying the sufficiency of the escrow established to pay the FSA Insured Securities to be defeased in full on the maturity or redemption date (*Verification*), (ii) an Escrow Deposit Agreement (which shall be acceptable in form and substance to the FSA Bond Insurer), and (iii) an opinion of Bond Counsel to the effect that the FSA Insured Securities are no longer "Outstanding" under the Bond Ordinance; each Verification and defeasance opinion shall be acceptable in form and substance, and addressed, to the City and the FSA Bond Insurer.

Exh. 10.01 Page 2

6.03.   In the event a forward purchase agreement will be employed in advance refunding FSA Insured Securities, such agreement shall be subject to the approval of the FSA Bond Insurer and shall be accompanied by such opinions of counsel as may be required by the FSA Bond Insurer.

6.04.   The FSA Bond Insurer shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow.

## 7.   FSA Insured Securities to Remain "Outstanding".

To the extent not already provided elsewhere in the VRM Supplement, amounts paid by the FSA Bond Insurer under the FSA Bond Insurance Policy shall not be deemed paid for purposes of the Bond Ordinance and shall remain Outstanding and continue to be due and owing until paid by the City in accordance with the Bond Ordinance.

## 8.   Claims Upon the FSA Bond Insurance Policy; Payments by and to the FSA Bond Insurer.

### 8.01.   *Notices Prior to Payment Date.*

8.01.01.   *If,* on the third *Business Day* (being a day on which the City, the Transfer Agent and the FSA Bond Insurer are not authorized or required to remain closed) prior to the related scheduled interest payment date or principal payment date or the date to which bond maturity has been accelerated (a *Payment Date*) there is not credit to the Second Lien Bond Interest and Redemption Fund moneys sufficient to pay the principal of and interest on the FSA Insured Securities due on such Payment Date, *then* the City shall give notice to the FSA Bond Insurer and to its designated agent (if any) (the *FSA Bond Insurer's Fiscal Agent*) by telephone or telecopy of the amount of such deficiency by 12:00 noon on such Business Day.

8.01.02.   *If,* on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the FSA Insured Securities due on such Payment Date, *then* the City shall make a claim under the FSA Bond Insurance Policy and give notice to the FSA Bond Insurer and the FSA Bond Insurer's Fiscal Agent (if any) by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the FSA Insured Securities and the amount required to pay principal of the FSA Insured Securities, confirmed in writing to the FSA Bond Insurer and the FSA Bond Insurer's Fiscal Agent by 12:00 noon on such second Business Day by filling in the form of Notice of Claim and Certificate delivered with the FSA Bond Insurance Policy.

### 8.02.   *Registration and Replacement of FSA Insured Securities.*

8.02.01.   In the event the claim to be made is for a mandatory sinking fund redemption installment, upon receipt of the moneys due, the Transfer Agent shall

authenticate and deliver to affected Securityholders who surrender their FSA Insured Securities a new Series C-1 Security or Series C-1 Securities in an aggregate principal amount equal to the unredeemed portion of the FSA Insured Security surrendered.

8.02.02.    The Transfer Agent shall designate any portion of payment of principal on FSA Insured Securities paid by the FSA Bond Insurer, whether by virtue of mandatory sinking fund redemption, maturity or other advancement of maturity, in the Registry as a reduction in the principal amount of FSA Insured Securities registered to the then current Securityholder, whether Securities Depositary or its nominee or otherwise, and shall issue a replacement Series C-1 Security to the FSA Bond Insurer, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to Authorized Denominations); *provided* that the Transfer Agent's failure to so designate any payment or issue any replacement Series C-1 Security shall have no effect on the amount of principal or interest payable by the City on any Series C-1 Security or the subrogation rights of the FSA Bond Insurer.

8.03.    *Policy Payments Account.*

8.03.01.    Upon payment of a claim under the FSA Bond Insurance Policy the Transfer Agent shall establish a separate special purpose trust account for the benefit of Holders of FSA Insured Securities referred to herein as the *Policy Payments Account* and over which the Transfer Agent shall have exclusive control and sole right of withdrawal.

8.03.02.    The Transfer Agent shall receive any amount paid under the FSA Bond Insurance Policy in trust on behalf of Holders of FSA Insured Securities and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made.

8.03.03.    Amounts to be paid to Holders of FSA Insured Securities shall be disbursed by the Transfer Agent to Holders of FSA Insured Securities in the same manner as principal and interest payments are to be made under the VRM Supplement with respect to the Fixed Rate Modal Securities *except* that it shall not be necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments.

8.03.04.    The Transfer Agent shall keep a complete and accurate record of all funds deposited by the FSA Bond Insurer into the Policy Payments Account and the allocation of such funds to payment of interest on and principal paid in respect of any FSA Insured Security.  The FSA Bond Insurer shall have the right to inspect such records at reasonable times upon reasonable notice to the Transfer Agent

8.03.05.    Funds held in the Policy Payments Account shall not be invested by the Transfer Agent and may not be applied to satisfy any costs, expenses or liabilities of the Transfer Agent.

8.03.06.    Any funds remaining in the Policy Payments Account following a Bond payment date shall promptly be remitted to the FSA Bond Insurer.

## 9.    Subrogation.

To the extent not already provided elsewhere in the VRM Supplement, the FSA Bond Insurer shall, to the extent it makes any payment of principal of or interest on the FSA Insured Securities, become subrogated to the rights of the recipients of such payments in accordance with the terms of the FSA Bond Insurance Policy.

## 10.    FSA Fee and Expenses.

10.01.    The City shall pay or reimburse the FSA Bond Insurer any and all charges, fees, costs and expenses which the FSA Bond Insurer may reasonably pay or incur in connection with:

10.01.01.    the administration, enforcement, defense or preservation of any rights or security in any Related Document;

10.01.02.    the pursuit of any remedies under the Bond Ordinance or any other Related Document or otherwise afforded by law or equity;

10.01.03.    any amendment, waiver or other action with respect to, or related to, the Bond Ordinance or any other Related Document whether or not executed or completed;

10.01.04.    the violation by the City of any law, rule or regulation, or any judgment, order or decree applicable to it with respect to FSA Insured Securities; or

10.01.05.    any litigation or other dispute in connection with the Bond Ordinance or any other Related Document or the transactions contemplated thereby, *other* than amounts resulting from the failure of the FSA Bond Insurer to honor its obligations under the FSA Bond Insurance Policy.

10.02.    The FSA Bond Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of the Bond Ordinance or any other Related Document.

## 11.    FSA's Right to Pay.

The FSA Bond Insurer shall be entitled to pay principal of or interest on the FSA Insured Securities that shall become Due for Payment but shall be unpaid by reason of Nonpayment by the City (as such terms are defined in the FSA Bond Insurance Policy) and any amounts due on the FSA Insured Securities as a result of acceleration of the maturity thereof in accordance with the Bond Ordinance, whether or not the FSA Bond Insurer has received a Notice of Nonpayment (as such terms are defined in the FSA Bond Insurance Policy) or a claim upon the FSA Bond Insurance Policy.

Exh. 10.01 Page 5

**12.** **Notices to FSA.**

12.01. The notice address of the FSA Bond Insurer is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance; Re: Policy No. Telephone: (212) 826-0100; Telecopier: (212) 339-3529.

12.02. In each case in which notice or other communication refers to an Event of Default, then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

**13.** **Reporting.**

The FSA Bond Insurer shall be provided with the following information:

13.01. The budget for each Fiscal Year promptly after adoption and the Audited Sewage Disposal Fund Financial Statements (as defined in the Master Continuing Disclosure Agreement with respect to the Insured Securities) concurrently with the filing thereof with each NRMSIR and the SID pursuant to such Master Continuing Disclosure Agreement;

13.02. Notice of any draw upon the Second Lien Bond Reserve Account within two Business Days after knowledge thereof *other* than (i) withdrawals of amounts in excess of the Second Lien Bond Reserve Requirement and (ii) withdrawals in connection with a refunding of FSA Insured Securities;

13.03. Notice of any default under the Bond Ordinance known to the City within five Business Days after knowledge thereof;

13.04. Prior notice of the advance refunding or redemption of any of the FSA Insured Securities, including the principal amount, maturities and CUSIP numbers thereof;

13.05. Notice of the resignation or removal of the Transfer Agent and Registrar and the appointment of, and acceptance of duties by, any successor thereto;

13.06. Notice of the commencement of any proceeding by or against the City commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an *Insolvency Proceeding*);

13.07. Notice of the making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the FSA Insured Securities;

13.08. A full original transcript of all proceedings relating to the execution of any amendment or supplement to the Related Documents; and

13.09. All reports, notices and correspondence to be delivered under the terms of the

Related Documents to Holders of FSA Insured Securities.

14. **Further Assurance.**

The City agrees to take such action as is necessary from time to time to perfect or to otherwise preserve the priority of the pledge of the Net Revenues pledged to the Second Lien Bonds under applicable law.

15. **Additional Second Lien Bonds.**

*Notwithstanding* satisfaction of other conditions to the issuance of additional Second Lien Bonds contained in the Bond Ordinance, no such issuance may occur (unless otherwise permitted by the FSA Bond Insurer):

15.01. if any Event of Default (or any event which, once all notice or grace periods have passed, would constitute an Event of Default) have occurred and be continuing *unless* such default shall be cured upon such issuance or

15.02. *Unless* the Second Lien Bond Reserve Account is fully funded at its requirement (including the new issue) upon the issuance of such additional Second Lien Bonds.

16. **Reserve Fund Surety Bonds.**

Any debt service reserve policy or other credit instrument obtained for the Second Lien Bond Reserve Account after the issuance of the Series 2001 Securities shall be acceptable to Financial Security.

17. **Enforce Rights.**

The FSA Bond Insurer is a third party beneficiary of the VRM Supplement for the purpose for the purpose of enforcing the rights granted it thereunder.

*[End of Exhibit 10.01]*

# Auction Rate Mode Supplement

to the

## Composite Sale Order of the Finance Director
## of the
## City of Detroit

with respect to

## $92,450,000
## Sewage Disposal System Second Lien Revenue Bonds (ARCs),
## Series 2001(D)

### $20,000,000 Series 2001 (D-1)
### $72,450,000 Series 2001 (D-2)

---

**Dated as of October 1, 2001**

---