UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**STATEMENT OF SYNCORA IN ADVANCE OF THE MAY 28, 2014 STATUS CONFERENCE REGARDING THE SUFFICIENCY OF THE DEBTOR'S DOCUMENT PRODUCTION**

1. To date, the City's document collection and production has suffered from certain deficiencies. In light of these deficiencies, the Court ordered the City to provide an affidavit describing its collection, review, and production of documents responsive to creditors' document requests.

2. On May 19, 2014, the City filed the court-ordered affidavit (the "<u>Hale Affidavit</u>"). In that affidavit, counsel for the City claimed that adherence to the "challenging time frame" set out in the current schedule — a schedule that it initially supported and continues to support — would require "*extreme* and in some ways *anticipatory action*" on the part of the City. (Hale Aff. ¶ 3.) Though the City may have believed that such extreme actions were necessary to meet the challenging time frame, this approach resulted in a number of flaws in the City's document collection and production process:

- The City collected electronically-stored information ("ESI") from certain employees and advisors directly involved in the negotiation and formulation of the City's proposed Plan of Adjustment in mid-March 2014. Though four amended versions of the Plan were filed after that collection, the City did not go back and collect additional ESI from those key custodians for that critical time period.

- The City did not collect documents from a number of key individuals. For example, the City did not collect documents from Dave Bing (the former mayor of Detroit), Robert Cline (the Ernst & Young economist that Mr. Malhotra relied upon to develop the City's 10- and 40-year forecasts), James Craig (the Detroit Police Chief), or the City Fire Commissioner.

- The City crafted search terms and began reviewing documents prior to the receipt of all creditor document requests. As a result, the City determined the responsiveness of many documents weeks before it knew the specific documents creditors had requested.

- The City collected all ESI from just five City employees. For all of the other City employees, the City did not perform full ESI collections and instead relied solely on self-collection efforts.

- Though the City claims that its document production is "substantially complete," it also concedes that its "efforts are ongoing."

3. As the above flaws demonstrate, the City has failed to produce essential, Plan-related documents. And though the City continuously points to the schedule as a mitigating factor, it should not be able to use that schedule as a means to evade its fundamental discovery obligations. If Syncora and other objectors are to have a full and fair trial on the City's proposed Plan of Adjustment, the production of relevant documents is an essential first step.

## BACKGROUND

4. Under the Court's Fourth Amended Scheduling Order, the City was required to complete its document production by May 6, 2014. That day, the City produced a hard drive containing approximately 260,000 unlabeled and uncategorized pages of documents.

5. Following this production, the City realized that it had produced hundreds of documents purportedly protected by the mediation privilege. As a result, Syncora was required to return the entire production. Syncora did not receive the City's corrected production until May 16, 2014.

6. After a review of the City's responses to Syncora's document requests, it became clear that the City had not yet produced certain categories of documents. In particular, the City had not produced (a) the documents that Ernst & Young had relied upon to build its 10- and 40-year forecasts; (b) the documents that Milliman relied upon to calculate the City's pension and OPEB claims; and (c) numerous documents created prior to 2013 that were relevant to Plan issues. Realizing that these documents were critical to upcoming depositions and the objecting parties' expert reports, Syncora and the other objectors asked the City to provide these categories of documents.

7. On May 23, 2014, the City provided a supplemental production containing certain of these documents. The City concedes, however, that it still

has not yet produced all of the Ernst & Young "reliance" materials. Nor has the City provided the objectors with all relevant pre-2013 documents. The City intends to provide another supplemental production containing all of these documents by May 30, 2014. As a result, as of the date of this Statement, the City's document production remains incomplete.

## FLAWS IN THE CITY'S DOCUMENT COLLECTION AND PRODUCTION PROCESS

8. During the May 12, 2014 hearing, Syncora highlighted a number of problems with the City's responses to Syncora's document requests and the City's corresponding document production. Recognizing these problems, the Court ordered the City to provide an affidavit describing the City's approach to document collection and production.

9. A review of this affidavit — as well as the City's production-to-date — reveals that the City's approach suffers from a number of flaws that resulted in the City's failure to produce numerous relevant documents. Each of these flaws is detailed below.

**A.   The City's Production Does Not Include Relevant Documents Relating to the City's Four Most Recent Plans of Adjustment.**

10. According to the Hale Affidavit, the City began its document collection efforts sometime in the middle of March. (Hale Aff. ¶¶ 17-30.) As part of these efforts, the City identified a limited number of key City employees and

advisors from whom it would collect full ESI, including Kevyn Orr (the Emergency Manager), Stacy Fox (the Deputy Emergency Manager), Sonya Mays (the Senior Advisor to the Emergency Manager), John Hill (the City's Chief Financial Officer), and Miller Buckfire (one of the City's financial advisors). (Hale Aff. ¶¶ 17-30.) The City actually collected documents from these custodians in mid-March. (*Id.*)

11. After the collection of these documents occurred, the City entered into a number of settlements with various creditor constituencies. (*Id.* ¶ 5.) These settlements were embodied in four amended Plans of Adjustment that the City filed on March 31, April 16, April 25, and May 5. (*Id.*)

12. Though these amendments are critical to the Plan, the City did <u>not</u> go back to these key custodians and collect additional documents relating to the amended Plans. (*Id.* ¶¶ 17-30.) Instead, the Hale Affidavit describes just one collection of ESI in the middle of March.[1] (*Id.*)

13. As a practical matter, the City's failure to collect documents after the middle of March means that the creditors did not receive documents relating to

---

[1] Although the City did not actually collect documents from Miller Buckfire after the middle of March, it also applied a date limitation of January 1, 2013 to **March 13, 2014** to those documents. (Exhibit B to Hale Aff.) As a result, even if the City had collected documents from Miller Buckfire relating to the four subsequent Plans, those documents would have been excluded by the City's search parameters.

5

the amended plans from the individuals *directly* involved in the negotiation and formulation of those plans. Indeed, a review of the available metadata from the documents produced-to-date reveals that the latest dated document produced by Mr. Orr, Ms. Fox, Ms. Mays, and Mr. Hill was created on **March 8, 2014**.

14. Yet, as the City concedes in the Hale Affidavit, after the City's initial collection, "mediations with various parties were on-going and settlements were being reached with various groups. In addition, there were negotiations *outside the context of mediation* which impacted the substance of the Plan of Adjustment. *Each of these filings and events added documents that needed to be reviewed and produced to parties interested in the Plan of Adjustment*." (*Id*. ¶ 5 (emphasis added).)

15. Despite the City's admission that relevant documents were created after the collection in mid-March, the City made no attempt to collect additional ESI from its key custodians relating to the four amended Plans. Of course, these documents are precisely the documents that Syncora and the other creditors need to evaluate the plan and prepare their case for trial. The City's failure to produce these documents goes to the very heart of the adequacy of the City's production.

**B.    The City Did Not Collect Documents From Key Custodians.**

16. In response to the Court's May 16, 2014 Order [Doc. No. 4896], the City provided a list of custodians "searched or requested to assist." (Hale Aff. Ex.

6

D.) Notwithstanding the ambiguity of this list — *i.e.*, it is not clear which custodians were actually searched versus merely "requested to assist" — it is clear that many relevant custodians were neither searched nor requested to assist in the document collection process. For example, the City did not produce documents from the following City employees and advisors:

- <u>Dave Bing, Former Mayor of the City of Detroit</u>. Mayor Bing was in office at the time of the City's bankruptcy filing and led the City's operations in the time leading up to the City's bankruptcy. Mr. Bing's documents are relevant to the City's finances, its restructuring efforts, and the steps that he tookn (or could have taken) outside of bankruptcy.

- <u>Robert Cline, Economist for Ernst & Young</u>. During one of Mr. Malhotra's deposition, he repeatedly stated that he relied upon the information Mr. Cline created to build the 10-and 40-year forecasts that are part of the Plan. (*See, e.g.,* Malhotra 3/31/2014 Dep. Tr. at 40:19-21 ("On the ten-year projections, yes, we would have relied upon the information Bob Cline created for property and income taxes.").)

- <u>James Craig, Detroit Police Chief</u>. Chief Craig is on the City's Amended Witness list, and is in charge of operations in an office that the City contemplates will be a major part of the City's reinvestment initiatives.

- <u>City Fire Commissioner</u>. The City's Fire Commissioner is on the City's Amended Witness list, and the Fire Department is similarly a part of the City's contemplated reinvestment initiatives.

- <u>Katherine A. Warren, Principal at Milliman</u>. Ms. Warren is on the City's witness list and has done substantial work for the City regarding issues important to creditors' assessment of the Plan, including the size of the City's pension obligations.

- <u>Suzanne Taranto, Principal at Milliman</u>. Ms. Taranto is on the City's witness list and has also done substantial work for the City regarding issues important to creditors' assessment of the Plan, including the size of the City's OPEB obligations.

7

13-53846-tjt    Doc 5051    Filed 05/27/14    Entered 05/27/14 15:00:05    Page 7 of 13

17. The City's failure to collect documents from these individuals means that objectors have not been provided with documents relating to crucial aspects of the City's Plan. Indeed, the documents created by these witnesses are critical to City operations (both in the past and the future), claim size for pensions and OPEB, and the assumptions underlying Ernst & Young's forecasts. Without a search of these key custodians, the City's production remains incomplete.

C. **The City Improperly Determined The Relevance of Documents Prior To Receiving Creditors' Documents Requests.**

18. According to the Hale Affidavit, the City actually began reviewing documents on March 26, 2014. (*Id.* ¶ 38.) At that point, however, the City had received only one set of creditor document requests. (*Id.* ¶ 34.) Over the next 17 days, the City received more than 800 additional document requests. (*Id.* ¶ 42.) It then took the City until April 15 to provide its contract attorneys with a spreadsheet detailing all of the document requests. (*Id.*)

19. As a result, the City's contract attorneys reviewed documents from March 26 to April 15 without attention to or knowledge of the majority of the creditors' document requests. Without an understanding as to exactly which documents creditors had specifically requested, the contract attorneys could not have understood what was responsive.

20. Notably though, there is nothing in the Hale Affidavit indicating that the City went back through previously-reviewed documents to ensure that any

8

prior documents marked non-responsive were re-reviewed against specific requests. Consequently, the contract attorneys may have mistakenly withheld responsive documents. The City's failure to re-review these documents in light of specific requests therefore represents yet another flaw in the City's document production process.

**D.   The City Collected Full ESI From Only Five City Employees And Utilized "Self Collection Efforts" For The Remaining Custodians.**

21.   The Hale Affidavit states that the City collected full ESI from five City employees and a select number of employees at Ernst & Young, Miller Buckfire, and Conway Mackenzie. (*Id*. ¶¶ 17, 43.) Before receiving the vast majority of creditor document requests, the City then crafted search terms that it ran against that ESI to capture potentially responsive documents. (*Id*. ¶ 9.)

22.   As noted above, on April 11, 2014, the City received most of the creditor requests. At that point in time, the City did not go through each of the requests and develop additional search terms that it could use to identify potentially-responsive documents. Instead, the City used self-collection efforts whereby it asked individuals to identify responsive documents. (*Id*. ¶ 49.)

23.   The problem with such an approach is two-fold. *First*, the City's failure to develop new search terms based on specific requests means that the City may not have captured responsive documents in the ESI it did collect. Though the City attempted to craft broad search terms, it could not have predicted every

9

creditor request. Consequently, it should have compared its list of search terms against all of the requests to ensure that it did not miss any categories of documents.[2] There is no evidence that the City did so.

24. *Second,* the City did not attempt to collect additional ESI based on the specific requests that it received. Instead, the City interviewed employees to determine whether and where responsive documents might exist. (*Id*.) The problem with such an approach is that it relies solely on an individual's knowledge or recollection regarding the existence of certain documents — neither of which is as dependable as an ESI collection and search. Indeed, this is one of the reasons why ESI searches are preferable when searching numerous custodians and large numbers of documents.

25. For example, the City asked two individuals if they were aware of documents relating to any Revised Judicature Judgments against the City. (*Id*.) If, however, these two individuals were not aware of any such judgments or did not know exactly where responsive documents were stored, then the City would not have produced those documents. If, on the other hand, the City collected full ESI from the relevant custodians and utilized an appropriate search term — in this case, "Revised Judicature Act" or "RJA" — there is a greater chance that the City would have located potentially-responsive documents.

---

[2] By way of example, the City did not run the search term "Syncora."

26. Given the City's decision to collect ESI from but a few custodians, it is perhaps not all that surprising that many of the City's custodians provided few, if any, documents. For example, while the City's production includes over 10,000 documents from Ms. Mays — one of the five custodians whose ESI was searched — it includes just 21 documents from the City's comptroller. The insubstantial production from many of the City's custodians reflects yet another flaw in the City's efforts.

**E.    The City's Document Production Is Not Yet Complete.**

27. Over the past few weeks, the City has repeatedly represented to the Court that its document production is "substantially complete." (City's Response to Statement of Objectors in Anticipation of the May 22, 2014 Status Conference ¶ 4 [Doc. No. 4992].) While that representation may be advantageous to the City's efforts to keep the current schedule, the City itself concedes that "there are select, additional, documents that will be produced subsequent to Friday, May 23, 2014." (*Id*.) By way of example, the following categories of documents remain outstanding:

- The City has not produced all documents pre-dating January 1, 2013. In previous meet-and-confers, Syncora and other creditors identified numerous categories of documents created prior to January 1, 2013 that the City agreed to produce. The City intends to produce these documents by May 30, 2014.

11

- The City has not yet produced all of the documents that Ernst & Young relied upon to build its 10-and 40-year forecasts. The City intends to produce these documents by May 30, 2014.

- The City has not produced documents after its mid-March collection relating to the four amended Plans. (*See supra* Section A.)

- The City has not produced documents from all of the key custodians. (*See supra* Section B).

28. In addition to the above categories of documents, Syncora and the other creditors continue to review the City's recent productions. Given, however, that the City failed to comply with the Court's May 6 production deadline by at least ten days — and, in some cases, even longer than that — that review is still ongoing. Until that review is complete, Syncora cannot ascertain with certainty that the City has produced all of the documents that it claims to have produced. Suffice to say, the City's piecemeal and, at times, dilatory production has rendered the City's production of documents insufficient and substantially incomplete.

29. In light of the issues identified in this Statement, Syncora proposes that the City be ordered to do the following:

- The City shall perform full ESI collections and searches of the City employees and advisors involved in the negotiation and formulation of the City's Plans of Adjustment from the date of the initial March collection to the filing of the Second Amended Plan of Adjustment.

- The City shall perform full ESI collections and searches of Dave Bing, Robert Cline, James Craig, the City Fire Commissioner, Katherine Warren, and Suzanne Taranto.

- The City shall provide a privilege log of documents withheld under the mediation privilege.

12

Dated: May 27, 2014              Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*