# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------------x
:
In re                                      : Chapter 9
:
CITY OF DETROIT, MICHIGAN,      : Case No. 13-53846
:
                Debtor.           : Hon. Steven W. Rhodes
:
:
-------------------------------------------------------------x

**NOTICE OF FINANCIAL GUARANTY INSURANCE COMPANY ASSERTED RIGHT TO VOTE AND MAKE ELECTIONS WITH RESPECT TO CERTAIN COP CLAIMS**

**PLEASE TAKE NOTICE THAT:**

1.       On February 28, 2014, the City of Detroit (the "**City**") filed the *Motion of the City of Detroit for Entry of an Order (i) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (ii) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2709] (the "**Solicitation Procedures Motion**"), which proposed (among other things) to solicit and collect votes from the beneficial holders of securities and other debt instruments issued by the City.

2.       On March 11, 2014, the United States Bankruptcy Court for the Eastern District of Michigan (the "**Court**") entered an *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] (the "**Solicitation Procedures Order**").

3.       On April 21, 2014, the Court entered the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of*

*Adjustment* [Docket No. 4202] (the "**Scheduling Order**"), amending (among other things) certain deadlines established in the Solicitation Procedures Order.

4.       Pursuant to the Solicitations Procedures Order and the Scheduling Order, if a party is not identified in the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*, dated May 5, 2014 [Docket No. 4392] (as may be amended or supplemented, the "**Plan**")[1] or in the Solicitation Procedures Motion as being the party entitled to vote on and/or make elections with respect to the Plan, and if that party believes it has a right to vote on the Plan, then, by May 26, 2014,[2] the party (the "**Claiming Party**") must electronically file and properly serve via the Court's electronic case filing system a "**Notice of Asserted Right to Vote a Claim**" and a brief in support of the rights asserted therein, which brief shall identify (a) the Claim(s) (and Classes or subclasses, as applicable) with respect to which the Claiming Party asserts voting rights, (b) whether the Claiming Party possesses the right to make an election with respect to the treatment of such Claim(s), (c) the legal and factual support for asserting such voting and/or election rights and (d) the proper treatment of the Claiming Party's vote(s) for purposes of section 1126(c) of the Bankruptcy Code.

5.       In accordance with the foregoing, Financial Guaranty Insurance Company ("**FGIC**") hereby asserts its right to (i) vote to accept or reject the Plan and (ii) elect whether to participate in the Plan COP Settlement in respect of certain Class 9 COP Claims arising in connection with the COPs that are insured by FGIC (the "**FGIC COP Claims**").

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

[2] As confirmed by the Court at the status conference on May 15, 2014, because the deadline for filing a Notice of Asserted Right to Vote a Claim falls on the day set aside for the observance of Memorial Day, the deadline is extended to Tuesday, May 27, 2014.

6. Legal and factual support for the rights asserted herein is contained in the brief in support of this Notice of Asserted Right to Vote a Claim, filed contemporaneously herewith.

Dated:      May 27, 2014
              Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance
Company*

## EXHIBITS

Exhibit 1        Proposed Form of Order

Exhibit 2        Notice

Exhibit 3        Brief in Support

Exhibit 4        Certificate of Service

Exhibit 5        None [No Affidavits]

Exhibit 6        None [No Documentary Exhibits]

## EXHIBIT 1

**Proposed Form of Order**

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------------x
                                 :

In re                              : Chapter 9

                                 :

CITY OF DETROIT, MICHIGAN,       : Case No. 13-53846

                                 :

                Debtor.          : Hon. Steven W. Rhodes

                                 :

                                 :
-------------------------------------------------------------x

### ORDER AUTHORIZING FINANCIAL GUARANTY INSURANCE COMPANY TO VOTE AND MAKE ELECTIONS WITH RESPECT TO CERTAIN COP CLAIMS

This matter having come before the Court on *Notice of Financial Guaranty Insurance Company Asserted Right to Vote and Make Elections with Respect to Certain COP Claims* (the "**Notice of Asserted Right to Vote a Claim**"), filed by Financial Guaranty Insurance Company ("**FGIC**"); and due and proper notice of the hearing to consider the relief requested therein (the "**Hearing**") having been given to all parties registered to receive electronic notices in this matter; and the Court having held the Hearing with the appearances of interested parties noted in the record of the Hearing; and upon the entire record of all the proceedings before the Court; and the legal and factual bases set forth in the Notice of Asserted Right to Vote a Claim establishing just and sufficient cause to grant the relief requested therein;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.       FGIC is the sole party authorized to vote to accept or reject the Plan[1] in respect of the FGIC COP Claims, as set forth in the Notice of Asserted Right to Vote a Claim.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Notice of Asserted Right to Vote a Claim.

2. FGIC is the sole party authorized to make the election contemplated in Article II.B.3.p.iii.A of the Plan in respect of the FGIC COP Claims.

3. The City shall disregard any vote and/or election in respect of the FGIC COP Claims submitted by any party other than FGIC.

It is so ordered.

**Signed on _____, 2014**

_____
**STEVEN RHODES**
**UNITED STATES BANKRUPTCY JUDGE**

## EXHIBIT 2

**Notice**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
---------------------------------------------------------x
                                    :
 In re                              : Chapter 9
                                    :
CITY OF DETROIT, MICHIGAN,          : Case No. 13-53846
                                    :
                Debtor.             : Hon. Steven W. Rhodes
                                    :
                                    :
---------------------------------------------------------x
```

### NOTICE AND OPPORTUNITY TO OBJECT TO NOTICE OF FINANCIAL GUARANTY INSURANCE COMPANY ASSERTED RIGHT TO VOTE AND MAKE ELECTIONS WITH RESPECT TO CERTAIN COP CLAIMS

Financial Guaranty Insurance Company ("**FGIC**") has filed papers with the court seeking an order granting FGIC the exclusive right to (i) vote to accept or reject the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*, dated May 5, 2014 [Docket No. 4392] (as may be amended or supplemented, the "**Plan**") and (ii) elect whether to participate in the Plan COP Settlement[1] in respect of certain Class 9 COP Claims arising in connection with the COPs that are insured by FGIC.

FGIC has filed this notice in accordance with the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984], as amended by the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Docket No. 4202].

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief sought in this notice, or if you want the court to consider your views on the notice, **on or by June 24, 2014**, you or your attorney must:

    1.   File with the court a written response or an answer, explaining your position at:[2]

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Plan.

[2] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

**United States Bankruptcy Court**
211 W. Fort Street, Suite 2100
Detroit, Michigan 48266

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.  All attorneys are required to file pleadings electronically.

You must also mail a copy to:

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone:  (248) 642-0333
Facsimile:  (248) 642-0856

Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

2.  If a response or answer is timely filed and served, a hearing on the notice will be held on **July 14, 2014 at 10:00 a.m.**

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the notice and may enter an order granting that relief.**

2

DATED:     May 27, 2014     Respectfully submitted,

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance Company*

## EXHIBIT 3

**Brief in Support**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------------------x
                                          :
  In re                                   : Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                : Case No. 13-53846
                                          :
                 Debtor.                  : Hon. Steven W. Rhodes
                                          :
                                          :
-------------------------------------------------------------x
```

## BRIEF IN SUPPORT OF NOTICE OF FINANCIAL GUARANTY INSURANCE COMPANY ASSERTED RIGHT TO VOTE AND <u>MAKE ELECTIONS WITH RESPECT TO CERTAIN COP CLAIMS</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

FACTUAL BACKGROUND ................................................................................................1

BASIS FOR RELIEF ...........................................................................................................7

I.      **THE COP TRANSACTION DOCUMENTS AUTHORIZE FGIC TO VOTE ON THE PLAN** ............................................................................................................7

II.     **THE COURT SHOULD ENFORCE THE PLAIN TERMS OF THE COP TRANSACTION DOCUMENTS AND PERMIT FGIC TO VOTE ON THE PLAN** 9

CONCLUSION....................................................................................................................11

Financial Guaranty Insurance Company ("**FGIC**") files this *Brief in Support of Notice of Financial Guaranty Insurance Company Asserted Right to Vote and Make Elections with Respect to Certain COP Claims* and respectfully submits as follows:

## **FACTUAL BACKGROUND**[1]

4.      In 2005, the City of Detroit (the "**City**") created an alternative funding mechanism to meet the City's statutory and constitutional obligation to fund the unfunded accrued actuarial liability ("**UAAL**") of its General Retirement System (the "**GRS**") and Police and Fire Retirement System (the "**PFRS**" and, together with the GRS, the "**Retirement Systems**"). As authorized by Ordinance No. 05-05,[2] adopted February 4, 2005, the City initiated two transactions (collectively, the "**Pension Funding Transactions**") to fund the UAAL of the Retirement Systems that resulted in the issuance to investors of instruments known as certificates of participation ("**COPs**").

5.      In connection with the Pension Funding Transactions, the City entered into certain service contracts (the "**COP Service Contracts**")[3] with the GRS Service Corporation and the PFRS Service Corporation (collectively, the "**COP Service**

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*, dated May 5, 2014 [Docket No. 4392] (as may be amended or supplemented, the "**Plan**").

[2] All documents cited herein relating to the authorization, issuance, and governance of the COPs (collectively, the "**COP Transaction Documents**") are attached as exhibits to FGIC's proofs of claim [Claim Nos. 1185 and 1191].

[3] The COP Service Contracts are (i) that certain GRS Service Contract 2005 between GRS Service Corporation and the City, dated May 25, 2005; (ii) that certain PFRS Service Contract 2005 between the PFRS Service Corporation and the City, dated May 25, 2005; (iii) that certain GRS Service Contract 2006 between the GRS Service Corporation and the City, dated June 7, 2006, as amended on June 15, 2009; and (iv) that certain PFRS Service Contract 2006 between the PFRS Service Corporation and the City, dated June 7, 2006, as amended on June 15, 2009. All of the relevant provisions in the COP Service Contracts are substantially identical.

1

**Corporations**").  Pursuant to the COP Service Contracts, the City agreed to, among other things, make periodic payments to the COP Service Corporations (the "**Service Payments**").

6.  Contemporaneously with entry into the COP Service Contracts, pursuant to certain trust agreements (the "**Trust Agreements**"),[4] the COP Service Corporations established the Detroit Retirement Systems Funding Trust 2005 and the Detroit Retirement Systems Funding Trust 2006 (together, the "**Funding Trusts**") and irrevocably sold, assigned and conveyed their rights to receive certain Service Payments to the Funding Trusts.  The Funding Trusts issued several series of the COPs, with each COP representing an individual, undivided proportionate interest in the rights to receive such Service Payments.  (2005 Trust Agreement at 3; 2006 Trust Agreement at 3.)  The current total aggregate principal amount of outstanding COPs is approximately $1.4 billion.

7.  In order to facilitate the collection and disbursement of the Service Payments, the Funding Trusts, the COP Service Corporations, the Contract Administrator and certain other parties entered into certain contract administration agreements (the "**Contract Administration Agreements**").[5]

---

[4] The Trust Agreements are (i) that certain Trust Agreement by and among the COP Service Corporations and U.S. Bank National Association as Trustee, dated June 2, 2005 (the "**2005 Trust Agreement**"); and (ii) that certain Trust Agreement by and among the COP Service Corporations and U.S. Bank National Association as Trustee, dated June 12, 2006 (the "**2006 Trust Agreement**").  On November 22, 2013, Wilmington Trust Company National Association replaced U.S. Bank National Association as successor Trustee under both Trust Agreements.  All of the relevant provisions in the Trust Agreements are substantially identical.

[5] The Contract Administration Agreements are (i) that certain Contract Administration Agreement 2005, dated June 2, 2005 among the Detroit Retirement Systems Funding Trust 2005, the Service Corporations, U.S. Bank National Association as Contract Administrator and certain other parties and (ii) that certain Contract Administration Agreement 2006, dated June 12, 2006 among the Detroit Retirement Systems Funding Trust 2005, the Service Corporations, U.S. Bank National Association as Contract Administrator and certain other parties.  On November 22, 2013, Wilmington Trust Company National Association replaced U.S. Bank National Association as successor Contract Administrator under both Contract Administration Agreements.  All of the relevant provisions in the Contract Administration Agreements are substantially identical.

2

8.     FGIC issued three financial guaranty insurance policies that guarantee the scheduled payment of principal and interest on certain of the COPs (the "**FGIC Insured COPs**"), including (i) Municipal Bond New Insurance Policy Number 05010400, dated June 2, 2005, issued in connection with $1,000,000,000 in aggregate principal amount of Series 2005-A COPs and the Series 2005-B COPs, (ii) Municipal Bond New Insurance Policy Number 06010249, dated June 12, 2006, issued in connection with $148,540,000 in aggregate principal amount of Series 2006-A COPs, and (iii) Municipal Bond New Insurance Policy Number 06010250, dated June 12, 2006, issued in connection with $500,845,000 in aggregate principal amount of Series 2006-B COPs (collectively, the "**FGIC COPs Insurance Policies**").  The current total aggregate principal amount of outstanding FGIC Insured COPs is approximately $1.1 billion, including $450,615,000 of the Series 2005 COPs and $649,385,000 (the total amount issued) of the Series 2006 COPs.

9.     As insurer, FGIC has the right to be treated as the sole holder of all outstanding FGIC Insured COPs.  (Contract Administration Agreements § 6.9.2(1) ("Notwithstanding any other provision hereof, any Insurer not then in default under its Credit Insurance shall be treated as the Holder of the Outstanding [COPs] equal to the principal amount of [COPs] insured by it for purposes of actions permitted to be taken by [COPs-holders] under **this Article** and for purposes of giving all other consents, directions and waivers that [COPs-holders] may give.") (emphasis in original); Trust Agreements § 802 ("*Notwithstanding any other provision hereof*, any Insurer not then in default under its Credit Insurance shall be treated as the Holder of the Certificates insured by it for the purposes of actions to be taken by [COPs-holders] under the Trust Agreement and for the purpose of giving all other consents, directions and waivers that [COPs-holders] may give.") (emphasis in original).)  Further, FGIC has the

3

exclusive right, as insurer, to enforce remedies with respect to the Service Payments. (Contract Administration Agreement § 9.2 ("any action to enforce remedies with respect to [the Service Payments] may be taken only by the applicable Insurer, or if such Insurer is in default under its Credit Insurance, a party that has a Creditor Lien on such [Service Payments]").) Moreover, the rights conveyed upon FGIC, as an insurer under the Contract Administration Agreements, may not be amended without FGIC's consent. *(Id*. at § 10.3 ("Any amendment or supplement to this Agreement or either [COP] Service Contract shall be subject to the prior written consent of each Insurer."))

   10. In addition, FGIC, as a third party beneficiary, has the right to enforce the COP Service Contracts. (COP Service Contracts § 9.12 (a)(3) ("Insurers are third party beneficiaries of the [COP] Service Contract."); *id.* at § 9.12(b) ("Third Party Beneficiaries have the right to enforce the respective promises made in the [COP] Service Contract as if such promises were made directly to them."); *id*. at § 9.07 ("The [COP] Service Contract is a continuing obligation of the City and shall until the date on which all amounts due and owing hereunder are paid in full . . . (ii) inure to the benefit of and be enforceable by . . . Third Party Beneficiaries.")) Further, FGIC's consent is required prior to making any amendment that would affect FGIC's rights under the COP Service Contracts. *(Id.* at § 9.05(i) ("The [COP] Service Contract may be amended . . . except that no amendment shall be valid: (i) if such amendment diminishes the rights and remedies of any Third Party Beneficiary without prior written consent of such Third Party Beneficiary."))

   11. As of June 2013, the City has stopped paying the Service Payments it owes under the COP Service Contracts. To date, FGIC has made payments under the FGIC

4

COPs Insurance Policies for amounts that are due and owing, but unpaid, on the FGIC Insured COPs.

12. On July 18, 2013, the City filed a petition for relief under chapter 9 of the Bankruptcy Code in the Court.

13. On or about February 19, 2014, FGIC filed two proofs of claim [Claim Nos. 1190 and 1195] asserting Claims against the City in connection with, among other things, FGIC's rights as an express third party beneficiary under the COP Service Contracts and FGIC's interest as subrogee to, and assignee of, the FGIC Insured COPs.

14. On March 11, 2014, this Court entered an *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] (the "**Solicitation Procedures Order**").  Pursuant to the Solicitation Procedures Order, all beneficial holders and insurers of COPs giving rise to COP Claims will receive a Ballot.  (Solicitation Procedures Order ¶¶ 7.a-.b.)  The Ballots will provide the beneficial holders and insurers of the COPs with the mechanisms to (i) cast a vote to accept or reject the Plan and (ii) elect whether to participate in the Plan COP Settlement (the "**COP Settlement Election**") in respect of the COPs held or insured thereby.  (*Id.* at ¶ 7.f.)  For purposes of tabulating the Ballots, beneficial holders and insurers of the COPs will be permitted to vote the full amount of the outstanding principal of, interest on, and any other amount payable in respect of the COPs held or insured by the voting party.  (*Id.* at Ex. 1, Rule III.)

15. In addition, the Solicitation Procedures Order establishes certain voting dispute resolution procedures in the event there is a dispute regarding a party's ability to vote a Claim or make an election with respect thereto.  In particular, a claiming party ("**Claiming**

**Party**"), including, but not limited to an insurer of the COPs, may assert a right to (i) vote to accept or reject the Plan and/or (ii) make a COP Settlement Election in respect of the applicable COP Claims.  (*Id*. at ¶ 9.a.)  To assert such voting rights, the Claiming Party must file a "**Notice of Asserted Right to Vote a Claim**" and a brief identifying (i) the Claims (and Classes or subclasses) with respect to which the Claiming Party asserts voting rights, (ii) whether the Claiming Party possesses the right to make an election with respect to such Claims, (iii) the legal and factual support for asserting such voting and/or election rights, and (iv) the proper treatment of the Claiming Party's votes for purposes of section 1126(c) of the Bankruptcy Code.  (*Id*.)

   16. On April 21, 2014, the Court entered the *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Docket No. 4202] (the "**Scheduling Order**"), establishing May 26, 2014[6] as the deadline to file a Notice of Asserted Right to Vote a Claim and supporting brief.  (Scheduling Order ¶ 8.)

   17. On May 5, 2014, the City filed the Plan and the *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4391] (the "**Disclosure Statement**").  The Plan classifies the COP Claims, including the COP Claims arising in connection with the outstanding FGIC Insured COPs (the "**FGIC COP Claims**") in Class 9.  (Plan Art. II.B.1.)  Pursuant to the Plan and Disclosure Statement, holders of the COP Claims are entitled to vote to accept or reject the Plan and make the COP Settlement Election (Plan Art. II.B.3.p.ii; Disclosure Statement § I.A.1.)

---

[6] As confirmed by the Court at the status conference on May 15, 2014, because the deadline for filing a Notice of Asserted Right to Vote a Claim falls on the day set aside for the observance of Memorial Day, the deadline is extended to Tuesday, May 27, 2014.

## BASIS FOR RELIEF

18.     Pursuant to section 1126(a) of the Bankruptcy Code, which is incorporated by reference into chapter 9 cases by section 901(a) of the Bankruptcy Code, a "holder of a claim" may vote to accept or reject a plan of adjustment.  11 U.S.C. §§ 901(a), 1126(a).  Thus, pursuant to the plain language of both the Bankruptcy Code and the COPs Transaction Documents, FGIC is entitled to vote to accept or reject the Plan and make the COP Settlement Election in respect of the FGIC Insured COPs based on its status as (i) the holder and insurer of the FGIC Insured COPs and (ii) a third party beneficiary under the COP Service Contracts.

19.     Section 1126(c) of the Bankruptcy Code provides that a class accepts a plan if at least two-thirds in amount *and* more than half in number of all allowed claims in such class that vote, vote to accept the plan.  11 U.S.C. § 1126(c).  Accordingly, because FGIC is the holder of approximately 79% of the outstanding Class 9 COP Claims (approximately $1.1 billion out of a total of $1.4 billion in aggregate principal amount outstanding), FGIC must vote to accept the Plan in order for Class 9 to be an accepting class.

## I.      THE COP TRANSACTION DOCUMENTS AUTHORIZE FGIC TO VOTE ON THE PLAN

20.     The Contract Administration Agreements provide in relevant part:

> Notwithstanding any other provision hereof, any Insurer not then in default under its Credit Insurance shall be treated as the Holder of Outstanding [COPs] insured by it for purposes of actions permitted to be taken by [COPs-holders] under **[Article VI]** and for the purpose of giving all other consents, directions and waivers that [COPs-holders may give].

(Contract Administration Agreement § 6.9.2(1).)  Thus, pursuant to the Contract Administration Agreements, FGIC is the holder of the FGIC Insured COPs.  The plain terms of the COP Transaction Documents indicate that voting on a plan of adjustment is an action permitted to be taken only by the COPs-holders.

7

21.     The COP Transaction Documents delegate certain rights and powers among the individual COPs-holders and the Contract Administrator.  Specifically, Article VI of the Contract Administration Agreements explicitly addresses the Contract Administrator's and the COPs-holders' respective rights and powers in the context of a chapter 9 case.  For example, the Contract Administrator may "file and prove a claim for the whole amount of the [Service Payments] then due and payable."  (*Id*. at § 6.4.1(1).)  The Contract Administrator is not authorized, however, to vote on a plan of adjustment on behalf of any COPs-holder.  (*Id*. at § 6.4.2.)  Accordingly, it is FGIC, as the holder of the FGIC Insured COPs, who has the exclusive right to vote on the Plan with respect to the FGIC Insured COPs.  *(Id*. at § 6.9.2(1).)  In addition, voting on a plan of adjustment also falls within the broad category of "all other consents, directions and waivers that [COPs-holders] may give."  (Contract Administration Agreements § 6.9.2(1); Trust Agreements § 802.)

22.     Pursuant to the COP Transaction Documents, FGIC is also authorized to vote on the Plan because it is (i) a third party beneficiary of the COP Service Contracts and (ii) the insurer of the FGIC Insured COPs.  As a third party beneficiary, FGIC has the right to enforce the COP Service Contracts against the City, as if the promises therein were made directly to FGIC.  (COP Service Contracts §§ 9.07, 9.12(a)(3), (b).)  Likewise, pursuant to the Contract Administration Agreements, "any action to enforce remedies with respect to Collateral may be taken only by the applicable Insurer."  (Contract Administration Agreements § 9.2.)  In connection with the Contract Administration Agreements, "Collateral" means the Service Payments owed by the City under the COP Service Contracts in respect of the COPs, including the FGIC Insured COPs.  Voting to accept or reject the Plan and making (or not making) the COPs Settlement Election in respect of the FGIC COP Claims—actions that will directly affect

8

recovery of the Service Payments—constitute efforts to enforce the COP Service Contracts. Accordingly, voting on the Plan and making the COP Settlement Election in respect of the FGIC COP Claims fall within FGIC's exclusive rights under both the COP Service Contracts and the Contract Administration Agreements.

23.     FGIC's consent is required prior to any amendment to either the Contract Administration Agreements or the COP Service Contracts and the respective rights provided thereunder.  (*Id*. at § 10.3; COP Service Contracts § 9.05(i).)  Moreover, FGIC has not consented to any amendment of, or limitation on, the rights granted to FGIC under any of the COP Transaction Documents.  Therefore, pursuant to the plain terms of the COP Transaction Documents, FGIC is the holder of the FGIC Insured COPs and entitled to vote to accept or reject the Plan and make the COP Settlement Election in respect thereof.

## II.     THE COURT SHOULD ENFORCE THE PLAIN TERMS OF THE COP TRANSACTION DOCUMENTS AND PERMIT FGIC TO VOTE ON THE PLAN

24.     Pursuant to the COP Transaction Documents, the beneficial holders of the FGIC Insured COPs agreed to a broad delegation of their rights to FGIC, including the right to vote to accept or reject the Plan.  The Court's enforcement of such unambiguous contractual provisions is appropriate and consistent with the treatment of bond insurers in other chapter 9 cases.  For example, in *In re City of Stockton, California*, bond insurers, including National Public Finance Guarantee Corporation, Ambac, and Assured Guaranty Corp., were each authorized to vote on the plan of adjustment as the "deemed holder" of the claims relating to each party's respective insured bonds.  *See* Modified Disclosure Statement with Respect to First Amended Plan for the Adjustment of Debts of City of Stockton California at pp. 72-73, 77, No. 2012-32118 (Bankr. E.D. Cal. Nov. 15, 2013).

9

25.     Similarly, in a recently issued opinion, the Bankruptcy Court for the Southern District of New York held that bondholders were foreclosed from participating in the chapter 11 proceedings where, pursuant to "several unambiguous, enforceable 'no action' clauses," the bondholders had delegated and waived their ability to enforce any individual rights, remedies or actions in favor of Syncora Guarantee Inc. ("**<u>Syncora</u>**"), the insurer fully securing the bondholders' claims.  *In re American Roads LLC*, 496 B.R. 727, 729 (Bankr. S.D.N.Y. 2013).  Although the context of *American Roads* is not identical to the instant issue,[7] the bankruptcy court's enforcement of a substantial delegation of authority from bondholders to an insurer is instructive, especially given that the transaction documents in *American Roads* included language that is very similar to the relevant provisions of the COP Transaction Documents.  For example, in American Roads, the contracts provided, among other things, that "Syncora controls the enforcement of rights and remedies upon an event of default [and] . . . Syncora has been appointed as the 'sole holder' and the 'sole representative' for all purposes under the financing documents."  *Id.* at 730.  The Court should enforce the delegation of the beneficial holders' rights, remedies, and actions to FGIC with respect to the FGIC Insured COPs, just as the *American Roads* bankruptcy court enforced the "bargained-for contractual agreements delegating and waiving such rights in favor of Syncora . . ."  *Id.* at 731.

---

[7] In *American Roads*, the bankruptcy court considered whether the bondholders had standing to participate in the chapter 11 cases by objecting to the disclosure statement and plan confirmation.  The right to vote on the plan was not at issue because holders of bond claims would receive no property under the *American Roads* plan and, therefore, were presumed to reject the plan under section 1126(g) of the Bankruptcy Code and not entitled to vote to accept or reject the plan.

## **CONCLUSION**

For all of the foregoing reasons, FGIC respectfully submits that it holds the exclusive right to vote to accept or reject the Plan and make the COP Settlement Election in respect of the FGIC COP Claims.

Dated:  May 27, 2014
        Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance
Company*

11

## **EXHIBIT 4**

**Certificate of Service**

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014 the *Notice of Financial Guaranty Insurance Company Asserted Right to Vote and Make Elections with Respect to Certain COP Claims* was filed and served via the Court's electronic case filing and noticing system to all registered users that have appeared in the main Chapter 9 proceeding.

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

Dated: May 27, 2014

## EXHIBIT 5

**None [No Affidavits]**

## EXHIBIT 6

**None [No Documentary Exhibits]**