**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

**In re:**

City of Detroit

**Debtor(s)**

Chapter:     9

Case No.:    13-58346

Judge:    Steven W. Rhodes

# NOTICE OF MOTION FOR TEMPORARY ALLOWANCE OF CLAIM OF THE MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR PURPOSES OF ACCEPTING OR REJECTING THE DEBTOR'S FOURTH AMENDED PLAN OF ADJUSTMENT

The Macomb Interceptor Drain Drainage District has filed papers with the court for a Temporary Allowance of Claim Pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure for Purposes of Accepting or Rejecting the Debtors' Fourth Amended Plan of Adjustment.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the Motion for Temporary Allowance of Claim Pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure for Purposes of Accepting or Rejecting the Debtors' Fourth Amended Plan of Adjustment, or if you want the court to consider your views on the Motion, then within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

    **United States Bankruptcy Court**
    Attn: Bankruptcy Court Clerk
    Eastern District of Michigan
    211 West Fort Street
    Detroit, MI 48226

    If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

    You must also mail a copy to:

    Dechert LLP
    1095 Avenue of the Americas
    New York, NY 10036-6797
    Attn: Allan S. Brilliant, Esq.
        Stephen M. Wolpert, Esq.

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date: May 30, 2014  Signature /s/ *Allan S. Brilliant*
 Name:  Allan S. Brilliant
 Address: Dechert LLP, 1095 Avenue of the Americas,
   New York, NY 10036-6797

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:  )<br>  )<br>CITY OF DETROIT, MICHIGAN  )<br>  )<br>Debtor  )<br>  )<br>  ) | Case No. 13-53846<br><br>Chapter 9<br><br>Hon. Steven W. Rhodes |

**MOTION FOR TEMPORARY ALLOWANCE OF CLAIM OF
THE MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT
PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE FOR PURPOSES OF ACCEPTING
OR REJECTING THE DEBTOR'S FOURTH AMENDED
PLAN OF ADJUSTMENT**

The Macomb Interceptor Drain Drainage District (the "MIDDD"), a creditor and party in interest in the above-captioned Chapter 9 bankruptcy case, hereby submits this motion (the "Motion") for entry of an order temporarily allowing MIDDD's claim for the sole purpose of voting to accept or reject the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4392] (the "Plan").[1] In support of the Motion, MIDDD respectfully states as follows:

**Jurisdiction**

1. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C.§ 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is section 502(c) of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 3018 of the Bankruptcy Rules.

---
[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

## Background

**A.     The MIDDD Claim**

2.     As part of a "global" settlement of certain disputes and lawsuits between the City of Detroit (the "City" "Detroit" or the "Debtor") and Oakland and Macomb Counties, as sewer customers, the parties agreed that the City of Detroit-owned sewer systems located in Macomb County (the "Macomb Interceptor System") would be transferred to an entity to be created by Macomb County.  The settlement was lodged as a proposed settlement in United States v. Detroit, Case No. 77-71100 (E.D. Mich.) in December 2008 and approved by the Court in 2009.

3.     In September of 2010, pursuant to the global settlement, the MIDDD acquired the Macomb Interceptor System from the City of Detroit for $89,996,704 (the "Purchase Price") pursuant to an Acquisition Agreement, dated as of September 6, 2010 by and between MIDDD, Macomb County and the City (the "Agreement") [2].  The Purchase Price was calculated in part based upon the City of Detroit's cost in building and repairing a portion of such system (the "15 Mile Project").  During the negotiations leading up to the agreement, the City represented that the cost of the Project were based on arms-length charges.  In fact, the costs included significant amounts of overcharges for work that was not performed and equipment that was not used pursuant to a criminal conspiracy involving among others, the then-Mayor of Detroit, Kwame Kilpatrick, and the then-director of the Detroit Water and Sewer Department ("DWSD").

4.     Although the City knew or should have known that the costs the City was seeking to pass on to MIDDD were not legitimate, the City did not disclose this to MIDDD.  MIDDD relied upon the City of Detroit's representations in agreeing to enter into the Agreement.

---

[2]     A true and correct copy of the Agreement is attached to the MIDDD Proof of Claim.

5. On June 26, 2013, MIDDD filed a complaint (the "Complaint") commencing a lawsuit (the "MCCC Case") against the City of Detroit in the Macomb County Circuit Court.[3] A true and correct copy of the Complaint is attached to the proof of claim (the "MIDDD Proof of Claim") attached as Exhibit 1 to the *Corrected Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 3683 Filed By Macomb Interceptor Drain Drainage District by and through the Macomb County Public Works Commissioner* [Docket No. 4954] (the "Claim Objection").

6. In the MCCC Case, MIDDD seeks to recover not less than $26 million in damages from the City on several grounds, including, but not limited to, that the City knowingly and intentionally concealed and misrepresented that its public officials had abided by all state, federal and local laws in the performance of their duties, and that there was no known possible or pending litigation relating to the Macomb Interceptor Sewer System.[4] These representations turned out to be false, as the City representatives that negotiated the Agreement, in fact, knew or should have known of extensive fraud and extortion involving certain City public officials relating to the 15 Mile Project and had actively assisted the federal officials' investigation of these criminal activities—which investigation eventually led to a criminal case (the "Criminal Case") commenced in the United States District Court for the Eastern District of Michigan (see

---

[3] On December 19, 2013 this case was administratively stayed by the Macomb County Circuit Court due to the ongoing bankruptcy proceedings.

[4] Specifically, MIDDD seeks, in the MCCC Case, an order (a) declaring the reformation and/or rescission of the Agreement, (b) awarding MIDDD damages in the amount of not less than $26 million in overcharges paid to the City in connection with the 15 Mile Project plus costs and reasonable attorney fees, (c) imposing a constructive trust over all property that the City obtained as a result of its fraud, the illegal scheme and in settlement of its claims in USDC Case No. 11-13101 and otherwise; and (d) awarding such other relief as may be appropriate.

3

Case No. 10-20403 (E.D. Mich.))[5]—prior to and during the course of its negotiations with MIDDD relating to the Agreement.

7. As a result of these fraudulent representations and concealments, MIDDD agreed to pay the full costs associated with the 15 Mile Project as identified in the schedules to the Agreement. Those costs were vastly inflated due to the extensive racketeering scheme perpetrated by, among others, the then-mayor and then-director of the DWSD.

8. Further, the MIDDD has alleged in the Complaint that the City represented throughout negotiations of the Agreement that for the substantial consideration being paid by MIDDD, the City would assign any and all future claims it may have relating and/or regarding the Macomb Interceptor System.

**B. Prior Litigation Against Non-City Defendants**

9. On July 18, 2011, prior to the commencement of the MCCC Case against the City, MIDDD filed a civil lawsuit against the defendants in the Criminal Case and the contractor and sub-contractor defendants who worked on the 15 Mile Project (collectively, the "Non-City Defendants") in the USDC ((Case No. 11-13101) (the "USDC Case")), alleging fraud, anti-trust and breach of contract claims.

10. During the course of this litigation, the City joined the lawsuit as an intervening plaintiff and asserted an intervening complaint against most of the Non-City Defendants. USDC Case, Docket No. 205. Upon the City's intervention in the case, MIDDD and the City asserted exclusive rights to assert tortious and anti-trust claims against the non-city Defendants. On September 17, 2012, the court issued an opinion and order (the "USDC Opinion and Order") holding that the City had standing to assert tortious and anti-trust claims against the Non-City

---

[5] In addition, evidence at the trial against certain of the criminal conspirators in the Criminal Case revealed that representatives of the City and the DWSD had knowledge of the corruption and over-billing schemes.

4

Defendants and that MIDDD's claims against the Non-City Defendants were limited to those which arose from the relevant contract. USDC Case, Docket No. 237.[6] The court did not rule on any issue as to whether MIDDD had any claims against the City.

## C. The Bankruptcy Proceedings

11. Following the filing of the City's chapter 9 bankruptcy proceedings and the imposition of automatic stay pursuant to section 362 of the Bankruptcy Code, the Court entered the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 1782] (the "Bar Date Order") on November 21, 2013. Pursuant to the Bar Date Order, MIDDD timely filed the MIDDD Claim (defined below) prior to the bar date set for governmental claims, which was received by the Debtor's claims agent on May 5, 2014. The MIDDD Proof of Claim asserts $26 million in liquidated, unsecured claims plus additional unliquidated claims.

12. On February 21, 2014, the Debtor filed the *Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 2708] (the "Original Plan") and the *Disclosure Statement with Respect to Plan of Adjustment of Debts of the City of Detroit* [Docket No. 2709] (the "Original Disclosure Statement").

13. On March 11, 2014, the Court entered the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] (the "Solicitation Procedures Order"). Under the Solicitation Procedures Order:

> if the City has filed and served an objection to a claim by May 15, 2014, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection. If an objection does not identify the proposed amount of

---

[6] This Opinion and Order is attached the Claim Objection at Exhibit 2.

a claim (e.g., if the claim remains subject to estimation or liquidation), then such claim will be temporarily allowed in the amount of $1.00.

Solicitation Procedures Order at Exhibit 1 (the "Tabulation Rules"). In the event the City files an objection to a claim, if a claimant seeks different treatment of a claim for voting purposes other than in accordance with the Tabulation Rules, the Solicitation Procedures Order allows the claimant to file a motion pursuant to Bankruptcy Rule 3018(a) for an order temporarily allowing such claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") within 10 days after the City's filing of the objection. Solicitation Procedures Order at 10.

14.    On March 31, 2014, April 16, 2014, and April 25, 2014, the Debtor filed revised versions of the Original Plan [Docket Nos. 3380, 4140, and 4271, respectively] and Original Disclosure Statement [Docket Nos. 3382, 4141, and 4271, respectively]. On May 5, 2014, the Debtor filed the Plan and the *Fourth Amended Disclosure Statement With Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4391] (the "Disclosure Statement").

15.    Also on May 5, 2014, the Court entered an order approving the Disclosure Statement and authorizing the Debtor to solicit votes to approve or reject the Plan [Docket No. 4401]. That order set July 11, 2014 at 5:00 p.m. as the deadline for parties to submit votes on the Plan (the "Voting Deadline").

16.    On May 15, 2014, the City filed the Objection. By stipulation and agreement with the parties, the time for MIDDD to file such a Rule 3018 Motion was extended until Friday, May 30.

### D. The Objection

17. In the Objection, the Debtor generally asserts that the claim asserted in the MIDDD Proof of Claim (the "MIDDD Claim") is invalid, and states that it "expects to vigorously contest the lawsuit once the matter proceeds, either through the claims objection process or through other litigation." The only specific basis contained in the Objection for the assertion of invalidity, however, is an argument that the MIDDD Claim is barred by res judicata based on the USDC Opinion and Order.

### Relief Requested

18. MIDDD seeks entry of an order temporarily allowing the MIDDD's claims against the Debtor's estate in the amount of $26 million for the sole purpose of voting on the Plan. MIDDD contends that it has valid claims in excess of that amount, and reserves all rights with respect to such claims.

### Argument

19. Pursuant to Bankruptcy Rule 3018(a), "[n]otwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

20. The policy behind temporarily allowing claims is to prevent possible abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections to the claims of dissenting creditors. In re Armstrong, 292 B.R. 678, 686 (B.A.P. 10th Cir. 2003). Here, it appears that the Debtor hand-picked certain claims to which it objected at the deadline set in the Solicitation Procedures Order in order to manipulate voting on the Plan and deprive certain creditors of a voice in these proceedings. Thus, the circumstances for which temporary allowance for voting purposes is present here, and the Court can and should make a "speedy and

7

rough estimation of [the MIDDD Claim] for purposes of determining [its] voice in the Chapter 11 proceedings." In re Chateaugay Corp., 944 F.2d 997, 1006 (2d Cir. 1991).

21. Neither the Bankruptcy Rule 3018(a) or the Bankruptcy Code provide guidance regarding the method for temporarily allowing claims for voting purposes. Thus, it is committed to the sound discretion of the Court to employ whatever method is best suited to the circumstances of the case. See, e.g., In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996); In re Zolner, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) ("The temporary allowance of a claim for voting purposes is committed to this Court's reasonable discretion").

22. Although certain courts have distinguished temporary allowance for voting purposes under Rule 3018 from estimation of contingent or unliquidated claims for distribution purposes under section 502 of the Bankruptcy Code, see, e.g., In re Stone Hedge Properties, 191 B.R. 59, 63-64 (Bankr. M.D. Pa. 1995), courts have "utilized claims estimation authority to ensure voting power was commensurate with economic interest." See, e.g. Pension Ben. Guar. Corp. v. Enron Corp., 2004 WL 2434928, *5 (S.D.N.Y. 2004). Where a claim is disputed, courts have analyzed facts presented by the parties to evaluate the probabilities regarding the claim's amount and/or validity. See, e.g., In re Ralph Lauren, 197 B.R. at 775; In re Zolner, 173 B.R. at 632-33.

23. The MIDDD Proof of Claim and the attachments thereto constitute *prima facie* evidence of the validity and amount of the MIDDD Claim. See In re Stone Hedge Properties, 191 B.R. at 65 (citing Fed. R. Bank. P. 3001(f)). The Debtor has offered no evidence to refute any factual basis underlying the validity or amount of the claim, and thus the MIDDD Proof of

Claim is the only evidence in the record on which the Court can evaluate the probability of that claim's allowance.

24.     The Debtor's only response to the MIDDD Claim is the assertion in the Objection that it is barred by res judicata—a purely legal argument.  The Debtor provides no analysis to support its assertion, and, in any event, it is misplaced.

25.     The elements of the doctrine of res judicata[7] are "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."  <u>Rawe v. Liberty Mut. Fire Ins. Co.</u>, 462 F.3d 521, 529 (6th Cir. 2006).  Notably, the City bears the burden of proving that all of these elements exist.  <u>See</u> <u>In re Lebbos</u>, 455 B.R. 607, 612 (Bankr. E.D. Mich. 2011) ("A party asserting res judicata as a defense bears the burden of proving each element").

26.     The doctrine of res judicata is inapplicable here because there was no final decision on the merits of the MIDDD Claim in the USDC Case and the MIDDD Claim involves different parties and different issues from those involved in the USDC Case.

**I.      <u>Res Judicata Does Not Bar The MIDDD Claim</u>**

        **A.      There Is No Final Decision On The Merits**

27.     The City claims that the USDC Opinion and Order acts as a bar to MIDDD's fraud claims in the MCCC Case.  The City asserts that its subsequent settlement with the Non-

---

[7]  The City was not specific as to how res judicata applies.  Res judicata encompasses both issue preclusion and claim preclusion. The elements of the doctrine of issue preclusion or collateral estoppel, which are narrower than claim preclusion, are as follows: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.  <u>Hamilton's Bogarts, Inc. v. Michigan</u>, 501 F.3d 644, 650 (6th Cir. 2007). The analysis conducted herein would apply equally to any assertion pursuant to the narrower doctrine of collateral estoppel.

9

City Defendants in the USDC Case regarding the alleged statutory anti-trust and state law tort claims constitutes a final decision on the merits. The City does not further explain how this applies to MIDDD's claims in the MCCC Case.

28. MIDDD has asserted that the City fraudulently induced and/or committed fraud, and breached a contract with MIDDD when the Macomb Acquisition Agreement was executed between MIDDD and the City. Although the facts and circumstances surrounding the USDC Case relate to the facts and circumstances alleged in the MCCC Case, the operative facts giving rise to MIDDD's claims for relief are markedly different.

29. Specifically, in the MCCC Case, MIDDD asserts that the City fraudulently induced the execution of the Agreement containing certain rights and remedies by, in part, misrepresenting the status and substance of open DWSD contracts that had been procured and fulfilled as part of an illegal scheme, in addition to knowingly failing to disclose the scope and nature of the gross fraud then being investigated by the U.S. Department of Justice and Federal Bureau of Investigation relating to the assets the City sought to sell to MIDDD. However, in the USDC Case, MIDDD asserted claims based on the DWSD Contract CS-1368 between DWSD and the Non-City Defendants, under which MIDDD asserted rights and remedies as an assignee under the Agreement. In any event, the USDC Opinion and Order, which the City alleges has res judicata effect, only relates to whether MIDDD had standing to assert state law tort or federal statutory claims against the Non-City Defendants based on the assignment of claims in the Agreement:

> Concurring Defendants and the City of Detroit concede that these clauses assign to Macomb Interceptor state-law contract claims arising out of the 15 Mile Interceptor Repair Project, but maintain that the clauses do not assign claims sounding in tort or federal statutory law. The court agrees with Concurring Defendants and the City of Detroit. The incorporation of the clause "under all

> contracts, warranties and guarantees" expressly limits the preceding assignment of "all of its rights." Accordingly, the City of Detroit assigned to Macomb Interceptor the City's rights to contracts related to the 15 Mile Interceptor Repair Project, including the right to recover for damages caused by breaches of those contracts, but not the *City's rights* to then-unknown causes of action sounding in state tort law or federal statutory law.

Objection at Exhibit 2 (USDC Case No. 11-13101, Dk. #237, p. 4012).

30. The USDC did not rule on the merits regarding non-contractual claims that may arise between the MIDDD and the City. Thus, a final judgment on the merits of the claims asserted by MIDDD in the MCCC Case has not occurred.[8] See, e.g., Artie Fields Prods., Inc. v. Channel Seven of Detroit, Inc., 97 F.3d 1451 (6th Cir. 1996) (Res judicata does not apply where the district court issued a ruling regarding a separate claim, but not as to the claim that movant sought to bar by the doctrine). Accordingly, the MIDDD Claim is not barred by res judicata.

### B. The MCCC Case Is Not A Subsequent Action Between The Same Parties.

31. It is undisputed that the City and MIDDD were parties to the USDC Case, along with numerous Non-City Defendants. Specifically, MIDDD is the original plaintiff and the City was the intervening plaintiff that asserted an intervening complaint against the Non-City Defendants. No litigation, however, was commenced in the USDC Case between the City and MIDDD at any point; no cross or third-party claims were alleged.

32. In the context of res judicata, "the claim [precluded] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Prewett v. Weems, 12-6489, 2014 WL 1408809 (6th Cir. Apr. 14, 2014) citing Gargallo v. Merrill Lynch, Pierce, Fenner &

---

[8] Notably, the City settled claims between itself and the CS-1368 contractors. Had MIDDD prevailed on the September 7, 2012 declaratory order, MIDDD would have replaced the City in the settlement negotiations.

11

Smith, Inc., 918 F.2d 658, 660 (6th Cir. 1990). MIDDD, however, asserted no claims against the City, as a defendant, in that USDC Case. The MIDDD Claim is based on, among other things, the *City's* (as opposed to the Non-City Defendants') knowing failure to disclose its knowledge of the ongoing criminal activities relating to the 15 Mile Project, which has never been litigated and was only first asserted in the MCCC Case as a separate action against the City. As the MCCC Case is not a subsequent action between the same adverse parties to a prior lawsuit, the City cannot rely upon the doctrine of res judicata to object to the MIDDD Proof of Claim.

### C. The Issues In The MCCC Case Were Not Litigated In The USDC Case.

33. The MIDDD Claim alleges, among other things, tort and breach of contract claims against the City stemming from, among other things, the City's fraudulent misrepresentations that induced MIDDD to enter into the Agreement on its terms. The issues relevant to these claims are the City's knowledge of the fraudulent activities of the Non-City Defendants, and whether the City concealed or misrepresented certain material facts related to the negotiation of the Agreement. These issues were never litigated in the USDC Case, which MIDDD brought against the Non-City Defendants in their own capacities seeking to recover against them for their own fraudulent activities.

34. Moreover, the MIDDD Claim includes a claim for unjust enrichment against the City for failure to turn over the proceeds the City received from its settlement of claims in the USDC Case, even though MIDDD had paid the City in full for the 15 Mile Project. By definition, this cause of action could not have arisen until after the filing of the USDC Case, and thus the issue could not have been litigated in that case. See Rawe, 462 F.3d at 529-530.

12

### D. There Is No Identity Of Causes of Action

35. The final element examined by Courts analyzing a defense of res judicata is the "identity of causes of action." This element is met when a suit and a subsequent suit contain rights of action that are created by the same facts and must be sustained by the same evidence. See In re Lebbos, 455 B.R. at 616 (quoting Sanders Confectionary Products, Inc. v. Heller Financial Services, Inc., 973 F.2d 474, 483-84 (6th Cir. 1992) ("Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action.")).

36. The MCCC Case relies upon the actions of the City as intervening plaintiff in the USDC Case, the negotiations surrounding the execution of the Agreement and the testimony in USDC Case relating to the City's knowledge of the ongoing criminal activities relating to the Macomb Interceptor. Thus, "the evidence necessary to sustain" the MIDDD Claim, for example, evidence of the City's knowledge of the criminal activity, is different from the evidence needed to prove the claims asserted in the USDC Case. Thus, there is no identity of causes of action, and the City cannot rely upon the doctrine of res judicata to bar the MIDDD Proof of Claim.

### II. Evidence of Misrepresentation and Fraud is Established by Criminal Indictment and Conviction

37. The Debtor has offered no evidence that the amount of the MIDDD Claim is less than the amount asserted in the MIDDD Proof of Claim, or that there is any probability that the MIDDD Claim is invalid. As explained above, the Debtor's only basis for its assertion of invalidity—that the MIDDD Claim is barred by res judicata—is unfounded. Thus, the Debtor's objection does nothing to overcome the *prima facie* showing of the validity or amount of the MIDDD Claim. Moreover, evidence from the Criminal Case establishes that representatives of the City of DWSD had knowledge of the corruption and the overwhelming scheme.

13

Accordingly, MIDDD is likely to prevail in its complaint. Thus, MIDDD requests that the Court temporarily allow, for purposes of voting on the Plan, the MIDDD Claim in the full liquidated amount of $26 million as asserted in the MIDDD Proof of Claim.

[*Remainder of Page Left Intentionally Blank*]

WHEREFORE, MIDDD respectfully request that the Court enter an order, in the form attached hereto as Exhibit A, temporarily allowing the MIDDD Claim in the amount of $26 million, solely for purposes of voting on the Plan.

| | |
|---|---|
| Dated: May 30, 2014 | Respectfully submitted, |
| DECHERT LLP | KIRK, HUTH, LANGE & BADALAMENTI |
| By: /s/ Allan S. Brilliant<br>Allan S. Brilliant<br>Stephen M. Wolpert<br>1095 Avenue of the Americas<br>New York, NY 10016<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br>allan.brilliant@dechert.com<br>stephen.wolpert@dechert.com | s/Raechel M. Badalamenti (P64361)<br>Raechel M. Badalamenti<br>Robert T. Carollo Jr.<br>19500 Hall Road, Suite 100<br>Clinton Township, MI 48038<br>Telephone: (586) 412-4900<br>Facsimile: (586) 412-4949<br>rbadalamenti@KHLBlaw.com |
| *Attorneys for County of Macomb, Michigan by and through its County Agency, Anthony V. Marrocco, the Macomb County Public Works Commissioner, and the Macomb Interceptor Drain Drainage District* | *Attorney for Plaintiff* |

# Exhibit A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|   |   |
|---|---|
| In re: | ) |
|  | ) Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | ) |
|  | ) Chapter 9 |
| Debtor | ) |
|  | ) Hon. Steven W. Rhodes |
|  | ) |

**ORDER PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE TEMPORARILY ALLOWING
CLAIM OF THE MACOMB INTERCEPTOR DRAIN DRAINAGE
DISTRICT FOR PURPOSES OF ACCEPTING OR REJECTING
THE DEBTOR'S FOURTH AMENDED PLAN OF ADJUSTMENT**

Upon the motion (the "Motion")[1] of the Macomb Interceptor Drain Drainage District (the "MIDDD") pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") for entry of an order temporarily allowing MIDDD's claim for the sole purpose of voting to accept or reject the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4392] (the "Plan"); and after holding a hearing to consider the Motion (the "Hearing"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. 157(b); and venue being proper before this Court pursuant to 28 U.S.C §§ 1408 and 1409; and notice of the Motion and Hearing having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED**.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

2. To the extent that it has not already voted, the MIDDD shall have until the later of: (i) five (5) business days after the entry of this order or (ii) the deadline to vote on the Plan, to submit an acceptance or rejection of the Plan.

3. This Order shall be effective immediately upon its entry.

4. The Court shall retain jurisdiction over all matters arising from or related to the implementation of this Order.