UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

**2014 HOUSE BILL 5570**

**EXHIBIT B TO**
State of Michigan's Comments on Proposed Order Identifying Legal
Issues, Establishing Briefing Schedule and Setting Hearing Date and
Procedures (Dkt. #5172)

SUBSTITUTE FOR

HOUSE BILL NO. 5570

A bill to amend 1965 PA 314, entitled

"Public employee retirement system investment act,"

by amending sections 12c, 13, 13e, and 20m (MCL 38.1132c, 38.1133,

38.1133e, and 38.1140m), sections 12c, 13, and 20m as amended and

section 13e as added by 2012 PA 347, and by adding section 13g.

**THE PEOPLE OF THE STATE OF MICHIGAN ENACT:**

1    Sec. 12c. (1) "Investment fiduciary" means a person other than

2    a participant directing the investment of the assets of his or her

3    individual account in a defined contribution plan who does any of

4    the following:

5    (a) Exercises any discretionary authority or control in the

6    investment of a system's assets. Investment fiduciary under this

7    subdivision includes the state treasurer and his or her investment

1  personnel for the systems described in section 13(4).

2  (b) Renders investment advice for a system for a fee or other
3  direct or indirect compensation.

4  (2) "Invest" or "investment" means the utilization of money in
5  the expectation of future returns in the form of income or capital
6  gain. Investments initially purchased in accordance with this act
7  that subsequently do not qualify for purchase for any reason shall
8  be considered to continue to meet the requirements of this act.
9  Investment includes a guarantee by an investment fiduciary but does
10  not include, as a sole investment, a pledge of the system's assets
11  as collateral to guarantee the repayment of obligations made by a
12  third party to a borrower.

13  (3) "Investment grade" means graded in the top 4 major grades
14  as determined by 2 national rating services.

15  **(4) "LARGE SPONSORED SYSTEM" MEANS A SYSTEM CREATED AND**
16  **ESTABLISHED BY A CITY THAT IS SUBJECT TO A PLAN [FOR] ADJUSTMENT AND**
17  **THAT MEETS 1 OR MORE OF THE FOLLOWING CONDITIONS:**

18  **(A) THE CITY HAS A POPULATION OF MORE THAN 600,000.**

19  **(B) THE SYSTEM HAS DISCHARGED AT LEAST $1,000,000,000.00 OF**
20  **PENSION LIABILITIES IN BANKRUPTCY.**

21  Sec. 13. (1) ~~The provisions of this~~ THIS act shall supersede
22  any investment authority previously granted to a system under any
23  other law of this state.

24  (2) The assets of a system may be invested, reinvested, held
25  in nominee form, and managed by an investment fiduciary subject to
26  the terms, conditions, and limitations provided in this act. An
27  investment fiduciary of a defined contribution plan may arrange for

1 1 or more investment options to be directed by the participants of
2 the defined contribution plan. The limitations on the percentage of
3 total assets for investments provided in this act do not apply to a
4 defined contribution plan in which a participant directs the
5 investment of the assets in his or her individual account, and that
6 participant is not considered an investment fiduciary under this
7 act.

8     (3) An investment fiduciary shall discharge his or her duties
9 solely in the interest of the participants and the beneficiaries,
10 and shall do all of the following:

11     (a) Act with the same care, skill, prudence, and diligence
12 under the circumstances then prevailing that a prudent person
13 acting in a similar capacity and familiar with those matters would
14 use in the conduct of a similar enterprise with similar aims.

15     (b) Act with due regard for the management, reputation, and
16 stability of the issuer and the character of the particular
17 investments being considered.

18     (c) Make investments for the exclusive purposes of providing
19 benefits to participants and participants' beneficiaries, and of
20 defraying reasonable expenses of investing the assets of the
21 system.

22     (d) Give appropriate consideration to those facts and
23 circumstances that the investment fiduciary knows or should know
24 are relevant to the particular investment or investment course of
25 action involved, including the role the investment or investment
26 course of action plays in that portion of the system's investments
27 for which the investment fiduciary has responsibility; and act

1 accordingly. For purposes of this subsection, "appropriate
2 consideration" includes, but is not limited to, a determination by
3 the investment fiduciary that a particular investment or investment
4 course of action is reasonably designed, as part of the investments
5 of the system, to further the purposes of the system, taking into
6 consideration the risk of loss and the opportunity for gain or
7 other return associated with the investment or investment course of
8 action; and consideration of the following factors as they relate
9 to the investment or investment course of action:

10     (*i*) The diversification of the investments of the system.

11     (*ii*) The liquidity and current return of the investments of the
12 system relative to the anticipated cash flow requirements of the
13 system.

14     (*iii*) The projected return of the investments of the system
15 relative to the funding objectives of the system.

16     (e) Give appropriate consideration to investments that would
17 enhance the general welfare of this state and its citizens if those
18 investments offer the safety and rate of return comparable to other
19 investments permitted under this act and available to the
20 investment fiduciary at the time the investment decision is made.

21     (f) Prepare and maintain written objectives, policies, and
22 strategies with clearly defined accountability and responsibility
23 for implementing and executing the system's investments.

24     (g) Monitor the investment of the system's assets with regard
25 to the limitations on those investments ~~pursuant to~~ **UNDER** this act.
26 Upon discovery that an investment causes the system to exceed a
27 limitation prescribed in this act, the investment fiduciary shall

1  reallocate assets in a prudent manner in order to comply with the
2  prescribed limitation.

3      (h) Prepare and maintain written policies regarding ethics and
4  professional training and education, including travel, which
5  policies contain clearly defined accountability and reporting
6  requirements for the system's investment fiduciaries.

7      (i) Publish a summary annual report that includes all of the
8  following:

9      (*i*) The name of the system.

10     (*ii*) The names of the system's investment fiduciaries.

11     (*iii*) The names of the system's service providers.

12     (*iv*) The system's assets and liabilities and changes in net
13  plan assets on a plan-year basis.

14     (*v*) The system's funded ratio based upon the ratio of
15  valuation assets to actuarial accrued liabilities on a plan-year
16  basis.

17     (*vi*) Except as otherwise provided in this subparagraph, the
18  system's investment performance net of fees on a rolling calendar-
19  year basis for the previous 1-, 3-, 5-, 7-, and 10-year periods.
20  For a system for which the state treasurer is the investment
21  fiduciary, the summary annual report shall include the system's
22  investment performance net of fees on a rolling calendar-year and
23  fiscal-year basis for the previous 1-, 3-, 5-, 7-, and 10-year
24  periods.

25     (*vii*) The system's administrative and investment expenditures
26  pursuant to standards of the governmental accounting standards
27  board, including, but not limited to, a list of all expenditures

1   made with soft dollars and all expenditures for professional

2   training and education, including travel expenditures, by or on

3   behalf of system board members that are paid by the system, if any.

4   (*viii*) The system's itemized budget containing all projected

5   expenditures, including, but not limited to, expenditures for

6   professional training and education, including travel expenditures,

7   by or on behalf of system board members that are paid by the

8   system.

9   (*ix*) The following information as provided in the system's most

10  recent annual actuarial valuation report:

11  (A) The number of active members.

12  (B) The number of retirees and beneficiaries.

13  (C) The average annual retirement allowance.

14  (D) The total annual retirement allowances being paid.

15  (E) The valuation payroll.

16  (F) The employer's computed normal cost of benefits expressed

17  as a percentage of valuation payroll.

18  (G) The employer's total contribution rate expressed as a

19  percentage of valuation payroll.

20  (H) The weighted average of member contributions, if any.

21  (I) The actuarial assumed rate of investment return.

22  (J) The actuarial assumed rate of long-term wage inflation.

23  (K) The smoothing method utilized to determine the funding

24  value of assets.

25  (*l*) The amortization method and period utilized for funding the

26  system's unfunded actuarial accrued liabilities, if any.

27  (M) The system's actuarial cost method.

1     (N) Whether system membership is open or closed to specific

2 groups of employees.

3     (*x*) IN ADDITION TO THE EXPENDITURES REPORTED UNDER

4 SUBPARAGRAPH (*vii*), FOR A LARGE SPONSORED SYSTEM A TRAVEL REPORT

5 LISTING ALL TRAVEL OUTSIDE THIS STATE IN THE IMMEDIATELY PRECEDING

6 FISCAL YEAR THAT WAS FUNDED IN WHOLE OR IN PART WITH PUBLIC FUNDS.

7 THE REPORT MUST INCLUDE THE TOTAL EXPENSES FOR ALL OUT-OF-STATE

8 TRAVEL FUNDED DURING THE IMMEDIATELY PRECEDING FISCAL YEAR AND ALL

9 OF THE FOLLOWING INFORMATION FOR EACH TRAVEL OCCURRENCE:

10     (A) THE NAME OF EACH PERSON RECEIVING REIMBURSEMENT FOR TRAVEL

11 OUTSIDE THIS STATE OR WHOSE TRAVEL COSTS WERE PAID BY THE LARGE

12 SPONSORED SYSTEM AND FUNDED IN WHOLE OR IN PART WITH PUBLIC FUNDS.

13     (B) THE DESTINATION.

14     (C) THE DATES.

15     (D) A BRIEF STATEMENT OF THE REASON FOR THE TRAVEL.

16     (E) AN ITEMIZATION OF THE TRANSPORTATION AND RELATED COSTS,

17 INCLUDING, BUT NOT LIMITED TO, THE AMOUNT FOR FOOD, LODGING, AND

18 VEHICLE RENTAL AND LISTING THE NAMES OF HOTELS, RESTAURANTS,

19 VEHICLE RENTAL AGENCIES, AND VEHICLE MODELS.
    [(J) AN INVESTMENT FIDUCIARY OF A LARGE SPONSORED SYSTEM SHALL
SUBMIT A SUMMARY ANNUAL REPORT DESCRIBED IN SUBDIVISION (I) TO THE
FINANCIAL REVIEW COMMISSION CREATED UNDER THE MICHIGAN FINANCIAL REVIEW
COMMISSION ACT.]

20     (4) An investment fiduciary who is an investment fiduciary of

21 any of the following shall comply with the divestment from terror

22 act, 2008 PA 234, MCL 129.291 to 129.301, in making investments

23 under this act:

24     (a) The Tier 1 retirement plan available under the state

25 employees' retirement act, 1943 PA 240, MCL 38.1 to 38.69.

26     (b) The Tier 1 retirement plan available under the judges

27 retirement act of 1992, 1992 PA 234, MCL 38.2101 to 38.2670.

1    (c) The Michigan state police retirement system created under
2    the state police retirement act of 1986, 1986 PA 182, MCL 38.1601
3    to 38.1648.

4    (d) The Michigan public school employees' retirement system
5    created under the public school employees retirement act of 1979,
6    1980 PA 300, MCL 38.1301 to 38.1437.

7    (5) ~~An~~ **SUBJECT TO SECTION 13G, AN** investment fiduciary may use
8    a portion of the income of the system to defray the costs of
9    investing, managing, and protecting the assets of the system; may
10    retain investment and all other goods and services necessary for
11    the conduct of the affairs of the system, including investment
12    advisors, consultants, custodians, accountants, auditors,
13    attorneys, actuaries, investment personnel, administrators, and
14    physicians; and may enter into contracts for and pay reasonable
15    compensation for those services. Subject to an annual appropriation
16    by the legislature, a deduction from the income of a state-
17    administered system resulting from the payment of those costs shall
18    be made.

19    (6) Subject to this subsection **AND SUBSECTION (13)**, an
20    investment fiduciary may use a portion of the income of the system
21    to defray the costs of professional training and education,
22    including travel costs, of system board members, which professional
23    training and education, including travel, are directly related to
24    the administration, management, and operation of the system. The
25    governing board vested with the general administration, management,
26    and operation of the system or other decision-making body that is
27    responsible for implementation and supervision of the system shall

1 adopt an annual budget for professional training and education,
2 including travel, authorized under this subsection. The budget
3 adopted under this subsection shall reflect the number of board
4 members, the size of the system, and the educational objectives of
5 the system. The system's total aggregate cost for professional
6 training and education, including travel costs, authorized under
7 this subsection for a fiscal year shall not exceed $150,000.00 or
8 an amount that is equal to the total number of system board members
9 multiplied by $12,000.00, whichever is less. The system's total
10 cost for professional training and education, including travel
11 costs, authorized under this subsection for an individual system
12 board member in a fiscal year shall not exceed $30,000.00.
13 Beginning January 1, 2013, the department of treasury shall adjust
14 the dollar amounts in this subsection by an amount determined by
15 the state treasurer at the end of the immediately preceding
16 calendar year to reflect the cumulative annual percentage change in
17 the consumer price index. As used in this subsection, "consumer
18 price index" means the most comprehensive index of consumer prices
19 available for this state from the bureau of labor statistics of the
20 United States department of labor.

21     (7) Before any investment services are provided, an investment
22 service provider shall provide the investment fiduciary of the
23 system with a complete written disclosure of all fees or other
24 compensation associated with its relationship with the system.
25 After investment services are provided to the investment fiduciary
26 of the system, an investment service provider shall provide on an
27 annual basis written disclosure of all fees including, but not

1  limited to, commissions, 12b-1 and related fees, compensation paid
2  or to be paid to third parties, and any other compensation paid by
3  the system to the investment fiduciary of the system. As used in
4  this subsection, "investment service provider" means any
5  individual, third-party agent or consultant, or other entity that
6  receives direct or indirect compensation for consulting, investment
7  management, brokerage, or custody services related to the system's
8  assets. ~~Investment~~ **FOR PURPOSES OF THIS SECTION ONLY, INVESTMENT**
9  service provider does not include a retirement system.

10  (8) The system shall be a separate and distinct trust fund and
11  the assets of the system shall be for the exclusive benefit of the
12  participants and their beneficiaries and of defraying reasonable
13  expenses of investing the assets of the system. With respect to a
14  system, an investment fiduciary shall not cause the system to
15  engage in a transaction if he or she knows or should know that the
16  transaction is any of the following, either directly or indirectly:

17  (a) A sale or exchange or a leasing of any property from the
18  system to a party in interest for less than the fair market value,
19  or from a party in interest to the system for more than the fair
20  market value.

21  (b) A lending of money or other extension of credit from the
22  system to a party in interest without the receipt of adequate
23  security and a reasonable rate of interest, or from a party in
24  interest to the system with the provision of excessive security or
25  at an unreasonably high rate of interest.

26  (c) A transfer to, or use by or for the benefit of, the
27  political subdivision sponsoring the system of any assets of the

1  system for less than adequate consideration.

2     (d) The furnishing of goods, services, or facilities from the

3  system to a party in interest for less than adequate consideration,

4  or from a party in interest to the system for more than adequate

5  consideration.

6     (9) With respect to a system subject to this act, an

7  investment fiduciary shall not do any of the following:

8     (a) Deal with the assets of the system in his or her own

9  interest or for his or her own account.

10    (b) In his or her individual or any other capacity act in any

11 transaction involving the system on behalf of a party whose

12 interests are adverse to the interests of the system or the

13 interest of its participants or participants' beneficiaries.

14    (c) Receive any consideration for his or her own personal

15 account from any party dealing with the system in connection with a

16 transaction involving the assets of the system.

17    (10) This section does not prohibit an investment fiduciary

18 from doing any of the following:

19    (a) Receiving any benefit to which he or she may be entitled

20 as a participant or participant's beneficiary of the system.

21    (b) Receiving any reimbursement of expenses properly and

22 actually incurred in the performance of his or her duties for the

23 system.

24    (c) Serving as an investment fiduciary in addition to being an

25 officer, employee, agent, or other representative of the political

26 subdivision sponsoring the system.

27    (d) Receiving agreed upon compensation for services from the

1 system.

2 (11) Except for an employee of a system, this state, or the
3 political subdivision sponsoring a system, when acting in the
4 capacity as an investment fiduciary, an investment fiduciary who is
5 qualified under section 12c(1)(b) shall meet 1 of the following
6 requirements:

7 (a) Be a registered investment adviser under the investment
8 advisers act of 1940, 15 USC 80b-1 to 80b-21, or the uniform
9 securities act (2002), 2008 PA 551, MCL 451.2101 to 451.2703.

10 (b) Be a bank as defined under the investment advisers act of
11 1940, 15 USC 80b-1 to 80b-21.

12 (c) Be an insurance company qualified under section 16(3).

13 (12) An investment fiduciary shall not invest in a debt
14 instrument issued by a foreign country that has been designated by
15 the United States department of state as a state sponsor of terror.

16 **(13) A LARGE SPONSORED SYSTEM SHALL NOT PAY THE EXPENSES FOR A**
17 **PERSON TO TRAVEL OUTSIDE THIS STATE FROM FUNDS UNDER ITS CONTROL**
18 **UNLESS 1 OR MORE OF THE FOLLOWING CONDITIONS APPLY TO THE TRAVEL:**

19 **(A) IT IS REQUIRED BY LEGAL MANDATE OR COURT ORDER OR FOR LAW**
20 **ENFORCEMENT PURPOSES.**

21 **(B) IT IS NECESSARY TO PROTECT THE HEALTH OR SAFETY OF**
22 **CITIZENS OF, OR VISITORS TO, THIS STATE OR TO ASSIST OTHER STATES**
23 **IN SIMILAR CIRCUMSTANCES.**

24 **(C) IT IS NECESSARY TO PRODUCE BUDGETARY SAVINGS OR TO**
25 **INCREASE REVENUES, INCLUDING PROTECTING EXISTING FEDERAL FUNDS OR**
26 **SECURING ADDITIONAL FEDERAL FUNDS.**

27 **(D) IT IS NECESSARY TO SECURE SPECIALIZED TRAINING FOR THAT**

1 **PERSON THAT IS SUBSTANTIALLY RELATED TO PERFORMING THE DUTIES OF**
2 **THE POSITION AND IS NOT AVAILABLE WITHIN THIS STATE.**

3     Sec. 13e. (1) An investment fiduciary shall not make a payment
4 from the assets of a system to a service provider if the service
5 provider or a covered associate of the service provider has made a
6 contribution to an official of a governmental entity during the
7 immediately preceding 24-calendar-month period, which period does
8 not include any calendar month before ~~the effective date of this~~
9 ~~section.~~ **MARCH 28, 2013.** An investment fiduciary, a service
10 provider, or a covered associate of a service provider shall not do
11 anything indirectly that, if done directly, would violate this
12 subsection. This subsection does not apply under any of the
13 following circumstances:

14     (a) The contribution was made by a service provider or covered
15 associate of the service provider to an official of a governmental
16 entity for whom the service provider or covered associate of the
17 service provider was entitled to vote at the time of the
18 contribution and the contributions by the service provider or
19 covered associate of the service provider to that official in the
20 aggregate do not exceed $350.00 per election.

21     (b) The contribution was made by a service provider or covered
22 associate of the service provider to an official of a governmental
23 entity for whom the service provider or covered associate of the
24 service provider was not entitled to vote at the time of the
25 contribution and the contributions by the service provider or
26 covered associate of the service provider to that official in the
27 aggregate do not exceed $150.00 per election.

1   (c) The contribution was made to an official of a governmental
2   entity by an individual more than 6 months before he or she became
3   a covered associate of the service provider.

4   (d) The contribution was made to an official of a governmental
5   entity by a covered associate of the service provider and all of
6   the following requirements are met:

7   (*i*) The service provider discovers the contribution that
8   violates this subsection on or before the expiration of 4 months
9   after the contribution was made.

10   (*ii*) The contribution that violates this subsection was for
11   $350.00 or less.

12   (*iii*) The covered associate of the service provider obtains the
13   return of the contribution that violates this subsection on or
14   before the expiration of 60 calendar days after the date of the
15   discovery of the contribution under subparagraph (*i*).

16   (2) As used in this section:

17   (a) "Contribution" means a payment made under any of the
18   following circumstances:

19   (*i*) For the purpose of influencing an election for federal,
20   state, or local office.

21   (*ii*) For a debt incurred in connection with an election for
22   federal, state, or local office.

23   (*iii*) For transition or inaugural expenses of a successful
24   candidate for federal, state, or local office.

25   (*iv*) To a legal defense fund established by or on behalf of an
26   official of a governmental entity.

27   (b) "Covered associate of the service provider" means any of

1 the following:

2     (*i*) A general partner, managing member, agent, or officer of

3 the service provider or any other individual with a similar status

4 or function for the service provider.

5     (*ii*) An employee of the service provider who solicits a

6 governmental entity on behalf of the service provider and any

7 individual employed by the service provider who directly or

8 indirectly supervises that employee.

9     (*iii*) A political action committee controlled by the service

10 provider or by any individual described in subparagraph (*i*) or (*ii*).

11 As used in this subparagraph, "political action committee" means a

12 political committee or an independent committee as those terms are

13 defined in the Michigan campaign finance act, 1976 PA 388, MCL

14 169.201 to 169.282.

15     (c) "Governmental entity" means this state or a political

16 subdivision of this state. Governmental entity includes a system

17 and an agency, authority, or instrumentality of this state or of a

18 political subdivision of this state.

19     (d) "Official of a governmental entity" means an individual

20 who, at the time of the contribution, was an incumbent, candidate,

21 or successful candidate for an elective office in a governmental

22 entity if the office meets any of the following requirements:

23     (*i*) Is directly or indirectly responsible for or can influence

24 the outcome of the hiring of a service provider by a system

25 sponsored by the governmental entity.

26     (*ii*) Has the authority to appoint an individual who is directly

27 or indirectly responsible for or can influence the outcome of the

1 hiring of a service provider by a system sponsored by the
2 governmental entity.

3     (e) "Payment" means a gift, subscription, loan, advance, or
4 deposit of money or anything of value.

5     (f) "Regulated investment adviser" means an investment adviser
6 or covered associate of an investment adviser that is regulated
7 under the investment advisers act of 1940, 15 USC 80b-1 to 80b-21.

8     (g) "Service provider" means a person retained to provide
9 services to a system and includes investment advisers, consultants,
10 custodians, accountants, auditors, attorneys, actuaries,
11 administrators, and physicians. Service provider includes an
12 investment service provider as defined in section 13(7). Service
13 provider does not include a regulated investment adviser.

14     **(3) FOR PURPOSES OF SUBSECTION (2)(D), AN OFFICIAL OF A**
15 **GOVERNMENTAL ENTITY DOES NOT INCLUDE AN INDIVIDUAL INVOLVED SOLELY**
16 **IN THE SELECTION OF A MEMBER OF AN INVESTMENT COMMITTEE DESCRIBED**
17 **IN SECTION 13G.**

18     **SEC. 13G. (1) SUBJECT TO A PLAN FOR ADJUSTMENT, EACH LARGE**
19 **SPONSORED SYSTEM SHALL ESTABLISH AN INVESTMENT COMMITTEE.**

20     **(2) THE INVESTMENT COMMITTEE SHALL RECOMMEND TO THE GOVERNING**
21 **BOARD OF THE LARGE SPONSORED SYSTEM INVESTMENT MANAGEMENT**
22 **DECISIONS, INCLUDING, BUT NOT LIMITED TO, ALL OF THE FOLLOWING:**

23     **(A) THE DEVELOPMENT OF INVESTMENT GOALS AND OBJECTIVES,**
24 **INVESTMENT ASSUMPTIONS, AND PERFORMANCE MEASUREMENT STANDARDS**
25 **CONSISTENT WITH THE NEEDS OF THE LARGE SPONSORED SYSTEM.**

26     **(B) THE SELECTION, MONITORING, EVALUATION, AND REMOVAL OF**
27 **CUSTODIANS, INVESTMENT MANAGERS, OR ANY INVESTMENT SERVICE**

1 PROVIDERS.

2 (C) ASSET ALLOCATION.

3 (D) SUBJECT TO A PLAN FOR ADJUSTMENT, ALL CALCULATIONS,

4 ACTUARIAL ASSUMPTIONS, OR ASSESSMENTS USED BY AN ACTUARY,

5 INCLUDING, BUT NOT LIMITED TO, THOSE UNDERLYING THE RESTORATION OF

6 PENSION BENEFITS, FUNDING LEVELS, AND AMORTIZATION OF THE

7 RESTORATION OF PENSION BENEFITS, AND THOSE UNDERLYING THE

8 DETERMINATION OF ANNUAL FUNDING LEVELS AND AMORTIZATION OF ANNUAL

9 FUNDING LEVELS, AND RECOMMENDED CONTRIBUTIONS TO THE LARGE

10 SPONSORED SYSTEM IN ACCORDANCE WITH APPLICABLE LAW.

11 (E) PERFORMING OR ORDERING ASSET LIABILITY VALUATION STUDIES

12 FOR THE QUALIFIED SYSTEM NOT LESS FREQUENTLY THAN EVERY 2 YEARS.

13 (F) REVIEW AND APPROVAL, BEFORE FINAL ISSUANCE OF ALL ANNUAL

14 AUDITS AND ACTUARIAL AND FINANCIAL REPORTS BEFORE FINALIZATION.

15 (G) INTERPRETATION OF THE LARGE SPONSORED SYSTEM'S GOVERNING

16 DOCUMENTS, APPLICABLE LAWS, PLANS OF ADJUSTMENT APPROVED BY UNITED

17 STATES BANKRUPTCY COURTS, AND OTHER FINANCIAL DETERMINATIONS

18 AFFECTING THE LARGE SPONSORED SYSTEM'S FUNDING OR BENEFIT LEVELS.

19 (H) BASED ON ANNUAL ACTUARIAL VALUATION REPORTS AND ANY OTHER

20 PROJECTIONS OR REPORTS, AS APPLICABLE FROM AN ACTUARY OR OTHER

21 PROFESSIONAL ADVISORS, THE DETERMINATION OF THE EXTENT OF

22 RESTORATION OF PENSION BENEFITS ALL IN CONFORMANCE WITH A PLAN FOR

23 ADJUSTMENT.

24 (3) THE INVESTMENT COMMITTEE SHALL DO ALL OF THE FOLLOWING:

25 (A) SELECT, SET COMPENSATION FOR AND TERMS OF EMPLOYMENT OF,

26 AND EVALUATE THE QUALIFIED SYSTEM'S CHIEF FINANCIAL OFFICER.

27 (B) NOTWITHSTANDING SECTION 20H(6), APPROVE A QUALIFIED

1   SYSTEM'S SUMMARY ANNUAL REPORT CREATED UNDER SECTION 13 BEFORE THE

2   SUMMARY ANNUAL REPORT IS MADE PUBLIC.

3       (4) THE INVESTMENT COMMITTEE SHALL SUBMIT ITS RECOMMENDATION

4   UNDER SUBSECTION (2) TO THE BOARD. THE BOARD SHALL HAVE NOT MORE

5   THAN 45 DAYS FROM THE DATE OF THE SUBMISSION, OR 10 BUSINESS DAYS

6   IF THE COMMITTEE DETERMINES IN GOOD FAITH THAT EMERGENCY ACTION IS

7   REQUIRED, TO APPROVE OR DISAPPROVE THE RECOMMENDATION. IF THE BOARD

8   DOES NOT ACT WITHIN 45 DAYS OR 10 DAYS, AS APPLICABLE, THE

9   RECOMMENDATION IS CONSIDERED APPROVED BY THE BOARD AND THE CHIEF

10  FINANCIAL OFFICER SHALL IMPLEMENT THE RECOMMENDATION.

11      (5) IF THE BOARD DISAPPROVES THE INVESTMENT COMMITTEE'S

12  RECOMMENDATION WITHIN 45 DAYS OR 10 DAYS, AS APPLICABLE, THE

13  DECISION SHALL BE IMPLEMENTED UNDER THE PLAN FOR ADJUSTMENT.

14      (6) AS USED IN THIS SECTION:

15      (A) "BOARD" MEANS THE GOVERNING BOARD OF A LARGE SPONSORED

16  SYSTEM.

17      (B) "CHIEF FINANCIAL OFFICER" MEANS THE CHIEF FINANCIAL

18  OFFICER OF A QUALIFIED SYSTEM.

19      (C) "INVESTMENT COMMITTEE" OR "COMMITTEE" MEANS AN INVESTMENT

20  COMMITTEE ESTABLISHED UNDER SUBSECTION (1).

21      (D) "PLAN FOR ADJUSTMENT" MEANS A PLAN FOR THE ADJUSTMENT OF

22  DEBTS ENTERED AND APPROVED BY A FEDERAL BANKRUPTCY COURT FOR A CITY

23  THAT HAS ESTABLISHED A [LARGE SPONSORED SYSTEM].

24      Sec. 20m. **(1)** The governing board vested with the general

25  administration, management, and operation of a system or other

26  decision-making body that is responsible for implementation and

27  supervision of any system shall confirm in the annual actuarial

1  valuation required under section 20h and the summary annual report
2  required under section 13 that each system under this act provides
3  for the payment of the required employer contribution as provided
4  in this section and shall confirm in the summary annual report that
5  the system has received the required employer contribution for the
6  year covered in the summary annual report. The required employer
7  contribution is the actuarially determined contribution amount. An
8  annual required employer contribution in a system under this act
9  shall consist of a current service cost payment and a payment of at
10 least the annual accrued amortized interest on any unfunded
11 actuarial liability and the payment of the annual accrued amortized
12 portion of the unfunded principal liability. For fiscal years that
13 begin before January 1, 2006, the required employer contribution
14 shall not be determined using an amortization period greater than
15 40 years. Except as otherwise provided in this section, for fiscal
16 years that begin after December 31, 2005, the required employer
17 contribution shall not be determined using an amortization period
18 greater than 30 years. For the Tier 1 retirement plan under the
19 state employees' retirement system, created under the state
20 employees' retirement act, 1943 PA 240, MCL 38.1 to 38.69; the
21 Michigan public school employees' retirement created under the
22 public school employees retirement act of 1979, 1980 PA 300, MCL
23 38.1301 to 38.1437; and the Michigan state police retirement system
24 created under the state police retirement act of 1986, 1986 PA 182,
25 MCL 38.1601 to 38.1648, only, for the fiscal year beginning October
26 1, 2006, the contribution for the unfunded actuarial accrued
27 liability shall be equal to the product of the assumed real rate of

1  investment return times the unfunded actuarial accrued liability.
2  In a plan year, any current service cost payment may be offset by a
3  credit for amortization of accrued assets, if any, in excess of
4  actuarial accrued liability. A required employer contribution for a
5  system administered under this act shall allocate the actuarial
6  present value of future plan benefits between the current service
7  costs to be paid in the future and the actuarial accrued liability.
8  The governing board vested with the general administration,
9  management, and operation of a system or other decision-making body
10 that is responsible for implementation and supervision of a system
11 shall act upon the recommendation of an actuary and the board and
12 the actuary shall take into account the standards of practice of
13 the actuarial standards board of the American academy of actuaries
14 in making the determination of the required employer contribution.
15 **(2) SUBSECTION (1) APPLIES TO A LARGE SPONSORED SYSTEM EXCEPT**
16 **AS OTHERWISE PROVIDED IN A PLAN FOR ADJUSTMENT. AS USED IN THIS**
17 **SUBSECTION, "PLAN FOR ADJUSTMENT" MEANS THAT TERM AS DEFINED IN**
18 **SECTION 13G.**