UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN,<br><br>Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes<br><br>**Expedited Consideration Requested** |

**MOTION OF THE CITY OF DETROIT FOR SITE VISIT BY COURT IN CONNECTION WITH THE HEARING ON CONFIRMATION OF THE CITY'S PLAN OF ADJUSTMENT**

At a status conference before this Court on May 15, 2014, counsel for the City proposed that the hearing on confirmation of the City's Plan of Adjustment include a site visit, via bus tour, of certain locations in the City that are relevant to the Court's consideration of the City's Plan (the "Site Visit"). Following the hearing, it was the City's understanding that the objectors to the Plan (the "Objectors") agreed in principle to a Site Visit.

The City accordingly drafted and submitted to the Objectors a proposed protocol for the Site Visit, modeled after the protocol used in *In re Charles Street African Methodist Episcopal Church of Boston*, Case No. 12-12292

(FJB) (Bankr. D. Mass.). In that case, Chief Bankruptcy Judge Bailey toured the debtors' properties that were the subject of the bankruptcy case, accompanied by counsel for the debtor, counsel for an objecting bank and a court reporter, with the stenographic record of the site visit subsequently admitted into evidence. *Id.*, Docket No. 420 (Oct. 16, 2012) (attached hereto as <u>Exhibit 6-A</u>).

It is now apparent that certain of the Objectors not only will not agree to the City's proposed protocol, but will not agree to a Site Visit at all, necessitating the filing of this Motion.

## **ARGUMENT**

Federal courts have the "inherent power" to permit the finder of fact a "view of places or objects outside the courtroom." *United States v. Moonda*, 347 Fed. Appx. 192, 201 (6th Cir. 2009) (citation and quotation marks omitted). Such on-site views or visits "are generally accepted when they are necessary to an understanding of the litigation and the requisite information cannot be introduced any other way." *United States v. Simmons*, 174 Fed. Appx. 913, 917-18 (6th Cir. 2006) (citation and quotation marks omitted). Courts have found that site visits may be particularly helpful in giving context to other evidence, including expert testimony. *See, e.g., Moore v. United States*, 54 Fed. Cl. 747, 748 (Fed. Cl. 2002); *United States v. Sargent County Water Resource Dist.*, 876 F. Supp. 1090 (D.N.D. 1994).

The decision whether to conduct a site visit "is entrusted to the sound discretion of the trial court." *Moonda*, 347 Fed. Appx. at 201 (citation and quotation marks omitted); *see also Northwestern National Casualty Co. v. Global Moving & Storage, Inc.*, 533 F.2d 320, 323 (6th Cir. 1976) ("The trial court has discretion whether to permit a view of premises that are the subject of litigation.").

If any case ever warranted a Site Visit, this one does. Throughout the confirmation hearing, the Court will hear testimony, from both fact and expert witnesses, regarding the City's finances, the problems it currently faces and how it intends to solve them. The Court will be faced with extensive facts and figures, numbers and projections. But this is not a typical business reorganization, where a review of the balance sheet and income statement gives the Court all the information it needs. This is a case about a city of 700,000 living, breathing human beings and the conditions they must face every day. It is a case about government, business and community coming together to try to rebuild a great American city.

In order to be able to put into context the evidence that it will hear, the Court needs to experience what the witnesses will describe. Witnesses will testify about the planned reinvestment in the City of $1.4 billion over the next ten years, in areas ranging from blight remediation and public safety to transportation, recreation and public works – but in the courtroom, these are mere abstractions. To

give meaning to the testimony, the Court must see what this reinvestment means for the people of Detroit.

For example, the Court will hear ample testimony about the problem of blight in the City. But no amount of testimony or even photographs can fully express the devastating impact that blight has had on Detroit's neighborhoods, or convey to the Court what it is like for Detroit residents to have to walk down half-empty streets of burnt-out buildings and abandoned dumping-ground lots. Without that context, the City's plan to spend $440 million on blight remediation has little meaning.

The Court will hear about the challenges faced by Public Safety and the City's plan to invest nearly $430 million to address those challenges. But in-court testimony is not a substitute for seeing first-hand the deplorable condition of the precincts, firehouses, vehicles and equipment used by men and women who risk their lives on a daily basis for the safety of Detroit's residents. Seeing that as part of a Site Visit gives critical context to the City's proposed expenditures.

The Court will hear from witnesses about the need to attract businesses to the City, to stem the flow of population loss and to stabilize the City's tax base. In order for the Court to have a full understanding of how those goals can and will be accomplished as the City emerges from bankruptcy, the Court needs to see and experience the planned reinvestments by the City and its

business and community partners. For instance, descriptions of the M-1 Rail may be helpful, but cannot adequately take the place of a tour of the planned rail to see how it will connect Midtown and Downtown Detroit and the economic boost it will give to the businesses and residents along the route. The Court may hear testimony about the redevelopment of Downtown, but a view of energy and vitality of areas such as Campus Martius gives a context and understanding that cannot be replicated in the courtroom. Much will doubtless be said at the confirmation hearing regarding the Detroit Institute of Arts. But the Court cannot fully appreciate the vital role that this world-class institution plays in the cultural life of the City – and will play in its renaissance – without actually visiting it.

The Objectors that oppose the Site Visit want the Court to view this case as an abstract numbers game and to ignore the human element. A Site Visit puts front and center the needs of the people who live and work in Detroit – needs that the City must meet if it is to survive.

Accordingly, the Court should exercise its discretion to conduct a Site Visit in accordance with the proposed protocol attached hereto as <u>Exhibit 6-B</u>.

## **CONCURRENCE**

Counsel for the City sought the concurrence of counsel for the Objectors in the relief sought in this motion, but such concurrence was not obtained.

## CONCLUSION

For the reasons stated herein, the City respectfully requests that the Court enter an order, in the form attached hereto as <u>Exhibit 1</u>, ordering that a Site Visit take place as part of the hearing on confirmation of the City's Plan.

Dated: June 6, 2014

Respectfully submitted,

/s/ Robert S. Hertzberg
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Fax: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

- and -

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

**ATTORNEYS FOR THE CITY OF DETROIT**