UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Hon. Steven W. Rhodes |
| Debtor. | |

# ATTORNEY GENERAL'S MOTION TO QUASH SYNCORA'S SUBPOENA TO DEPOSE ATTORNEY GENERAL BILL SCHUETTE

Attorney General Bill Schuette hereby moves to quash Syncora's subpoena, served on June 6, 2014, to depose the Attorney General regarding his issuance of an Attorney General Opinion regarding the art collection of the Detroit Institute of Arts. When this Court renders a written opinion on issues of law, it would be without support if a litigant or third party then sought to depose the Court as to the legal conclusions set forth in the opinion, and the processes the Court used to reach those conclusions. No court would agree to such a deposition. The outcome should be no different when a state attorney general issues a legal opinion, and courts have routinely refused such discovery.

1

In accordance with Bankr. E.D. Mich. L.B.R. 9014-1(g), counsel for the Attorney General contacted Syncora's counsel regarding the nature of this motion and its legal basis. Syncora's counsel did not concur in the relief sought.

1. Since the appointment of the City of Detroit's emergency manager in March 2013, the art collection of the Detroit Institute of Arts has been the subject of controversy about whether it may be sold to satisfy the City's debts.

2. Under Michigan law, the Attorney General represents the people of Michigan regarding their interests in charitable trusts. *See, e.g.,* Mich. Comp. Laws § 14.251.

3. In June 2013, the Attorney General issued Attorney General Opinion #7272, which concluded that the art could not be sold because it was held in charitable trust for the people of Michigan.

4. Syncora has now subpoenaed Attorney General Bill Schuette and seeks to depose him regarding his opinion.

5. The federal court rules require the court to quash a subpoena where it subjects a person to undue burden, and where it

requires disclosure of privileged materials. Fed. R. Civ. Proc. 45(d)(3)(A); Fed. R. Bankr. P. 9016.

6. The subpoena of a high-ranking government official creates an undue burden under Rule 45. No extraordinary circumstances exist here to allow Syncora to depose the Attorney General. The Attorney General has no firsthand knowledge of the facts relevant to the determination of the legal status of the DIA's art collection.

7. Equally important, the Attorney General's process in preparing AG Op. #7272 is protected under the deliberative process, work-product, and attorney-client privileges. Each of these privileges provides an independent reason for quashing Syncora's subpoena, which impermissibly seeks to intrude into the internal processes, thoughts, and communications of the Department of Attorney General. The situation is no different than if a litigant or third party sought to depose this Court to determine how and why the Court reached certain legal conclusions in a written opinion. Indeed, the Attorney General is unaware of any case authorizing a party to depose a state attorney general as here on the matter of legal conclusions set forth in an official attorney-general opinion.

Accordingly, Attorney General Bill Schuette respectfully requests that this Court quash Syncora's subpoena of the Attorney General.

Respectfully submitted,

Bill Schuette
Attorney General

B. Eric Restuccia (P49550)
Deputy Solicitor General


Michael Bell (P47890)
William R. Bloomfield
Assistant Attorneys General
P.O. Box 30212
Lansing, Michigan 48909
(517) 373-1124

Dated: June 11, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Hon. Steven W. Rhodes |
| Debtor. | |

**BRIEF IN SUPPORT OF MOTION TO QUASH**

**INTRODUCTION**

Since the appointment of the City of Detroit's emergency manager in March 2013, the art collection of the Detroit Institute of Arts has been the subject of controversy about whether it may be sold to satisfy the City's debts. In his formal opinion of Michigan law, the Attorney General declared that the art is held in charitable trust and may not be disgorged to satisfy the City's debts. It is really the property of all the citizens of Michigan.

The opinion speaks for itself. There is nothing to be gained by the Attorney General's testimony regarding how his analysis developed. Syncora's subpoena is no different than if Syncora sought to depose this

Court on its processes and legal conclusions in issuing an opinion that Syncora did not like. It would be unprecedented to allow such discovery and would serve no useful purpose. Like a judicial body, a public officer's internal deliberations are necessarily shielded, both by the courts' recognition that depositions of high-ranking government officials create an undue burden, and by the deliberative-process and other privileges. This Court should quash Syncora's subpoena.

## STATEMENT OF FACTS

One of the unique duties of the Attorney General is his statutory obligation to represent the people of Michigan regarding their interests in all charitable gifts and charitable trusts in Michigan. This duty arises from the fact that every gift to charity and every asset held for a charitable purpose ultimately benefits the public. At the same time, the Attorney General has a duty to uphold Michigan law and is charged by law with the task of answering questions posed to him by legislators.

In Spring 2013, in fulfillment of these duties – and as the public was already debating the same question – the Attorney General considered the legal question whether the DIA's art collection could be sold. On June 13, 2013, the Attorney General answered the question

and concluded that it cannot be sold: "The art collection of the Detroit Institute of Arts is held by the City of Detroit in charitable trust for the people of Michigan, and no piece in the collection may thus be sold, conveyed, or transferred to satisfy City debts or obligations." AG Op. #7272.

Not long after the Attorney General issued his opinion, the City entered bankruptcy. Since that time, and as the bankruptcy proceedings have progressed, the status of the art collection has continued to be the subject of intense interest – both by the public and by creditors like Syncora. But so far, the Attorney General's interaction with the bankruptcy proceedings on this point has remained limited.

On April 7, 2014, Syncora subpoenaed documents from the Attorney General regarding his opinion. The Attorney General objected for two reasons: (1) the requested documents included privileged, internal communications of the Department of Attorney General; and (2) the requested documents included external communications with the DIA's attorneys that are protected under a common-interest agreement. Although this Court directed the Attorney General to release his external communications with the DIA's attorneys, which the Attorney

General promptly did, the Court agreed with the Attorney General's objection regarding his internal communications.

Now, Syncora has subpoenaed the Attorney General himself, demanding to depose him regarding the process by which he reached his official legal opinion. Such a demand is akin to seeking a deposition of this Court regarding one of its legal rulings. Just as this Court correctly stated that the Attorney General did not have to produce his internal communications, so now should this Court quash Syncora's subpoena.

## COURT RULE

Rule 45, made applicable to these proceedings by Bankruptcy Rule 9016, gives four reasons for quashing a subpoena. Two apply here, regarding privilege and undue burden. The rule states:

> (A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> * * *
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

## ANALYSIS

### I. The subpoena of a high-ranking government official creates an undue burden under Rule 45(d)(3)(A)(iv).

The court must quash a subpoena when the subpoena subjects a person to undue burden. Fed. R. Civ. Proc. 45(d)(3)(A)(iv). Common factors to consider for "undue burden" include the relevance of the information sought, the need of the party for the production, and the burden imposed. Moore's Federal Practice § 45.32 (3d ed. 2009). The courts have recognized that subpoenas seeking deposition or other testimony from high-ranking government officials should be discouraged as inflicting an undue burden. *Jones v. Hirschfeld*, 219 F.R.D. 71, 75 (S.D.N.Y. 2003).

The circumstances in which high-ranking governmental officials should be subject to deposition are limited to "extraordinary circumstances." *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (citations omitted). This is because of the nature of their duties, and these limitations seek to ensure that such officials, like the Attorney General, will not spend "an inordinate amount of time tending to pending litigation." *Id.* See also *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). This limitation is

not "absolute" but will yield where the official has "first-hand knowledge related to the claim being litigated." *Bogan,* 489 F.3d at 423. But even in that circumstance, such testimony is appropriate only "where it is shown that other persons cannot provide the necessary information." *Id.* And – crucially – such a deposition would be proper only where "there is some reason to believe that the deposition will produce or lead to admissible evidence." *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1998).

Syncora's subpoena of the Attorney General – a high-ranking government official – cannot clear these hurdles. There are no extraordinary circumstances here. The Attorney General has no first-hand knowledge of the facts underlying the legal status of the DIA's art collection, which presumably are in the possession of other persons. And there is no reason to believe that his testimony will yield any admissible evidence. That is why other courts have rejected such efforts for other attorneys general in similar circumstances. *See, e.g., Stagman,* 176 F.3d at 995 (affirming the district court's ruling, which refused to require the deposition of the Illinois Attorney General); *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999) (reversing the denial of

the U.S. Attorney General's motion to quash subpoena finding that the necessary extraordinary circumstances had not been established); *California v. United States,* 2006 WL 2621647, *1 (N.D. Cal. Sept. 12, 2006) (denying request to compel the deposition of the California Attorney General); *Hyland v. Smollok*, 137 N.J. Super. 456, 460 (N.J. Superior Ct. 1975) (reversing the denial of a protective order where the NJ Attorney General had no first-hand knowledge); *State Board of Pharmacy v. Superior Court*, 78 Cal. App. 3d 641, 644 (Cal. Ct. Ap. 1978) (California appeals court determined that the lower court abused its discretion in compelling the California AG's testimony as an expert regarding attorney fees.) *Accord Virgin Islands v. Liburd*, 47 V.I. 172, 175-76 (Virgin Islands Superior Ct. 2005) (requiring the Acting Attorney General to testify in a contempt hearing, distinguishing the facts from other high-ranking government official cases: "The Acting Attorney General has not been called to testify regarding policy-making decisions, deliberations, or discretionary acts. She has been called to account for her failure, as chief executive of the Department of Justice, to comply with the law of the Virgin Islands and the orders of this Court in accordance with the law.")

Instead of seeking actual facts regarding the DIA, Syncora is seeking the Attorney General's testimony regarding the *process* that led to the Attorney General's issuance of AG Op. #7272. But the Attorney General's *process* in developing his opinion lacks any relevance to the legal status of the DIA's collection, just like this Court's process in developing an opinion lacks any relevance to the conclusion the Court reaches when issuing that opinion. With AG Op. #7272, the Attorney General has presented his legal analysis and conclusion as to the legal status of the art. An inquiry into the *process* by which that opinion was reached is both intrusive and legally irrelevant. Syncora is entitled to disagree with the Attorney General's conclusion and to present its own arguments regarding the legal status of the DIA collection, just as it is free to disagree with one of this Court's ruling and to appeal. But just as Syncora is barred from deposing this Court regarding the processes it followed in issuing a legal opinion, Syncora is barred from deposing the Attorney General in connection with his legal opinion.

## II. The subpoena seeks to disclose privileged information under Rule 45(d)(3)(A)(iii).

Syncora's subpoena requires the Attorney General to testify regarding the process by which he reached his conclusion in AG Op. #7272, a responsibility arising from Michigan statute. But this process is protected under the deliberative process, work-product, and attorney-client privileges.

### A. The subpoena violates the Attorney General's deliberative-process privilege.

The deliberative-process privilege protects communications during the internal collaborative process that are part of the decision-making process of a government agency. Moore's § 26.52[5]. For a particular communication or document to be protected, the agency must show that it is both "pre-decisional" and "deliberative." *Id*; *see Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 549–50 (6th Cir. 2001). "If defendants had unfettered access to agency decision-making processes, it would chill debate or discussion by agency employees and degrade the ability of agencies to function effectively." *United States v. O'Reilly*, 545 F. Supp. 2d 630, 644 (E.D. Mich. 2008) (citing *United States v. W.R. Grace*, 455 F. Supp. 2d 1140, 1143 (D. Mont. 2006)).

13

By law, the Attorney General is duty-bound to provide answers to questions posed to him by different state officers:

> It shall be the duty of the attorney general, when required, to give his opinion upon all questions of law submitted to him by the legislature, or by either branch thereof, or by the governor, auditor general, treasurer or any other state officer, and also to notify the county treasurer of the proper county, of the neglect or refusal of any prosecuting attorney to make the annual report to the attorney general required of him by law.

Mich. Comp. Laws § 14.32. In response to a formal inquiry from a legislator, the Attorney General reached a conclusion on June 13, 2013 and shared that conclusion with the public as AG Op. #7272. The opinion concluded that the DIA's art collection is held in charitable trust and must be preserved for the benefit of the people of Michigan. That is, it cannot be sold to benefit the City's creditors, such as Syncora.

Syncora seeks to depose the Attorney General regarding his process of reaching his conclusion, a process which is both pre-decisional and deliberative. This is precisely what the deliberative-process privilege is meant to protect. Protecting the Attorney General's process in developing Attorney General opinions also accords with the rationale for the privilege, as explained by the Supreme Court, about encouraging candor in communications between public officials:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions," by protecting open and frank discussion among those who make them within the Government.

*Klamath*, 532 U.S. at 8–9 (internal citations omitted). Without the privilege, the Attorney General and his assistants would lack the candor necessary to discuss their ideas – including ideas which are presented for argument's sake, and which may ultimately be rejected – and then develop them into appropriate legal conclusions.

Moreover, the opinion speaks for itself and stands on its own. The Attorney General need not elaborate further on his reasoning or detail how he reached his conclusions. Whether the opinion is accepted by this Court depends on its persuasive value.

The U.S. Supreme Court considered a similar circumstance when it examined an administrative action for which the Secretary of Agriculture had been subject to deposition. *U.S. v. Morgan,* 313 U.S. 409, 421–22 (1941). Similar to the facts here, the Secretary "reached the conclusions of his order" after "study of the record and his consultation with subordinates." *Id.* at 422. The Court described this

process as "resembling that of a judicial proceeding." *Id.* As a consequence, the Court ruled that the Secretary "should never have been subject to this examination." *Id.* It intruded into the internal processes for such a decision and failed to respect the integrity of the process:

> [I]t was not the function of the court to probe the mental processes of the Secretary. Just as a judge cannot be subjected to such a scrutiny, *so the integrity of the administrative process must be equally respected.* It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Id.* at 422 (citations and internal quotes omitted; emphasis added). The same is true here.

The Attorney General studied the factual information at issue in the DIA matter and consulted with subordinates before reaching his conclusion. This decision does not bind the courts, but is persuasive authority. *See American Axle & Mfg., Inc. v. City of Hamtramck,* 604 N.W.2d 330, 340 (Mich. 2000) ("Although this Court is not bound by Attorney General opinions, they can be persuasive and provide insight into the historical development of a statute that may aid in construing ambiguous language") (internal citations omitted).

Subjecting the Attorney General to cross-examination on the internal processes he used and on his own analytic development of the question would prejudice this process and have a chilling effect on the Attorney General's ability to weigh in on sensitive issues that may be subject to challenge as here.  This Court should respect the integrity of the Michigan statutory process for issuing formal Attorney General opinions.  Because the Attorney General's process in developing Attorney General opinions is privileged under the deliberative-process privilege, Syncora's subpoena should be quashed.

### B. The subpoena also violates the Attorney General's work-product privilege.

The work-product privilege protects documents or other tangible things prepared in anticipation of litigation or trial.  Fed. R. Civ. Proc. 26(b)(3).  Courts have applied the work-product privilege not only to protect documents, but also to protect an attorney's thoughts, strategy, and opinions.  Moore's § 26.70[2][c]; *see, e.g.*, *U.S. v. One Tract of Real Property*, 95 F.3d 422, 428 n.10 (6th Cir. 1996).  The work-product privilege is broader than the attorney-client privilege and can be claimed by either the client or the attorney.  Moore's § 26.70[8].  The privilege also extends to government attorneys.  *One Tract*, 95 F.3d at 428.

17

The Attorney General began considering the question of whether the DIA's art could be sold in Spring 2013, shortly after Kevyn Orr's appointment as the City's emergency manager and anticipating that the DIA's collection might be subject to a bankruptcy proceeding or other litigation.  In response to a formal inquiry, the Attorney General issued AG Op. #7272, concluding that the DIA's art collection is held in charitable trust and cannot be sold as part of the bankruptcy.  The Attorney General's thoughts, mental processes, and strategies in developing the opinion are protected work-product.  In seeking the Attorney General's deposition or testimony, the subpoena wrongfully seeks work-product privileged communications and should be quashed.

### C. The subpoena violates the Attorney General's attorney-client privilege.

The attorney-client privilege protects from discovery confidential communications from a client to an attorney for the purpose of obtaining legal advice.  *See generally*, Moore's § 26.49.  The privilege extends to situations, as here, when the government or a public official is the client.  Moore's § 26.49[4][b] (citing *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2320 (2011), and *Ross v. City of Memphis*, 423 F.3d 596, 601 (6th Cir. 2005)).

In developing Attorney General opinions – and more generally, when the Attorney General seeks any legal advice from his staff attorneys – the Attorney General acts as a client seeking legal advice from his attorneys. These communications, whether written or verbal, are kept confidential within the Department of Attorney General and are privileged. This Court should quash Syncora's subpoena because it requires the production of attorney-client privileged communications.

## CONCLUSION

The Attorney General respectfully requests that this Court quash Syncora's subpoena of the Attorney General.

Respectfully submitted,

Bill Schuette
Attorney General

B. Eric Restuccia (P49550)
Deputy Solicitor General

/s/ *Michael R. Bell*
Michael Bell (P47890)
William R. Bloomfield
Assistant Attorneys General
P.O. Box 30212
Lansing, Michigan 48909
(517) 373-1124

Dated: June 11, 2014