UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

**JOINT MOTION OF COMMUNITY FOUNDATION FOR SOUTHEAST MICHIGAN,
WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND BARBARA M. ERB
FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER FOUNDATION,
FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE KRESGE
FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L. KNIGHT
FOUNDATION, MCGREGOR FUND, CHARLES STEWART MOTT FOUNDATION
AND A. PAUL AND CAROL C. SCHAAP FOUNDATION
TO QUASH SUBPOENAS DUCES TECUM**

Community Foundation for Southeast Michigan ("CFSM"), William Davidson

Foundation (the "Davidson Foundation"), The Fred A. and Barbara M. Erb Family Foundation

(the "Erb Foundation"), Max M. and Marjorie S. Fisher Foundation (the "Fisher Foundation"),

Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg

Foundation (the "Kellogg Foundation"), John S. and James L. Knight Foundation (the "Knight

Foundation"), McGregor Fund, Charles Stewart Mott Foundation (the "Mott Foundation") and

A. Paul and Carol C. Schaap Foundation (the "Schaap Foundation," and collectively with CFSM,

the Davidson Foundation, the Erb Foundation, the Fisher Foundation, Ford Foundation, Hudson-

Webber Foundation, The Kresge Foundation , the Kellogg Foundation, the Knight Foundation,

McGregor Fund, and the Mott Foundation, the "Foundations") hereby jointly move to quash the

subpoenas issued on June 4, 2014, by Syncora Capital Assurance, Inc. and Syncora Guarantee,

Inc. (collectively, "Syncora"), pursuant to L.B.R. 9014-1(h), Bankruptcy Rules 7026 and 9016

and Federal Rules of Civil Procedure 26 and 45. In accordance with L.B.R. 9014-1(h), counsel for the Foundations sought concurrence in the requested relief from Syncora's counsel by telephone on June 10, 2014, which was denied; Counsel for the Foundations and Syncora agreed, however, that the discovery sought by Syncora which is the subject of this motion, would not occur on the dates scheduled, and that, subject to agreement of the Court, this motion would be heard on an expedited basis on **June 26, 2014**. A supporting brief setting forth the grounds for this motion is filed herewith, and a proposed order granting the relief sought is attached hereto as Exhibit 1. L.B.R. 9014-1(b)(1).

PLUNKETT COONEY
/s/ Douglas C. Bernstein (P33833)
Attorneys for CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan 48304
(248) 901-4091
dbernstein@plunkettcooney.com

and

Of counsel

WINSTON & STRAWN LLP
Harvey Kurzweil
New York State Bar No. 1251610
Desiree M. Ripo
New York State Bar No. 4589552
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
HKurzweil@winston.com
DMRipo@winston.com

2

and

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP

Rafael R. Ribeiro
The Florida Bar No. 896241
Michael N. Kreitzer
The Florida Bar No. 705561
Attorneys for the Knight Foundation
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
(305) 350-7312
(305) 350-2384
rribeiro@bilzin.com
mkreitzer@bilzin.com

June 12, 2014

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| _____ | ) | |

**BRIEF IN SUPPORT OF JOINT MOTION OF COMMUNITY FOUNDATION FOR
SOUTHEAST MICHIGAN, WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND
BARBARA M. ERB FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER
FOUNDATION, FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE
KRESGE FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L.
KNIGHT FOUNDATION, MCGREGOR FUND, CHARLES STEWART MOTT
FOUNDATION AND A. PAUL AND CAROL C. SCHAAP FOUNDATION
<u>TO QUASH SUBPOENAS DUCES TECUM</u>**

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF THE ISSUES PRESENTED...........................................................II

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT.. III

INDEX TO AUTHORITIES........................................................................................IV

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF MATERIAL FACTS .................................................................. 2

ARGUMENT........................................................................................................ 4

    I.   SYNCORA'S SUBPOENAS AS TO THE FOUNDATIONS SHOULD BE QUASHED FOR MULTIPLE
        REASONS............................................................................................................. 4

        A. Governing Standards .................................................................................4

        B. Application ................................................................................................6

           1. The Subpoenas do not seek discovery of relevant information. ............................ 7

           2. The Subpoenas are overbroad and would impose an undue burden...................... 9

           3. The Subpoenas require disclosure of privileged or other protected matter. ......... 10

    II.  THE COURT SHOULD AWARD THE FOUNDATIONS ATTORNEYS FEES INCURRED IN
        CONNECTION WITH THIS MOTION. .................................................................... 11

CONCLUSION.................................................................................................... 12

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.

WHETHER SYNCORA'S SUBPOENAS AS TO THE
FOUNDATIONS SHOULD BE QUASHED?

II.

WHETHER THE COURT SHOULD AWARD THE
FOUNDATIONS ATTORNEYS FEES INCURRED IN
CONNECTION WITH THIS MOTION?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 45

# INDEX TO AUTHORITIES

**Page**

**CASES**

*Bogosian v. Woloohojian Realty Corp.,*
   323 F.3d 55, 66 (1st Cir.2003)................................................................................. 4

*Compaq Computer Corp. v. Packard Bell Elec., Inc.,*
   163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ........................................................... 10

*Cook v. Howard,*
   484 Fed. Appx. 805, 812 (4th Cir. Aug. 24, 2012) ................................................ 5

*E.E.O.C. v. Jack Marshall Foods, Inc.,*
   No. 09–0160–WS–M, 2010 WL 55635, at *6 (S.D. Ala. Jan.4, 2010) .................... 9

*E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.,*
   No. 11–cv–02560–MSKMEH, 2012 WL 934312, at *3 (D. Colo. Mar.
   19, 2012) ............................................................................................................... 8

*E.E.O.C. v. S. Haulers, LLC,*
   No. 11–00564–N, 2012 WL 1768064, at *3–4 (S.D.Ala. May 17, 2012)................ 8

*Echostar Communications v. The News Corp., Ltd.,*
   180 F.R.D. 391, 394 (D. Colo. 1998) ................................................................... 6

*HD Sherer LLC v. Natural Molecular Testing Corp.,*
   292 F.R.D. 305, 308 (D.S.C. 2013) ...................................................................... 5

*Herbert v. Lando,*
   441 U.S. 153, 177 (1979)....................................................................................... 6

*Hofer v. Mack Trucks, Inc.,*
   981 F.2d 377, 380 (8th Cir. 1992) ........................................................................ 5

*I'mnaedaft, Ltd. v. The Intelligence Office System,*
   Case No. 1:2008-cv-01596, 2009 WL 1537975, 6 (D. Colo., 2009)...................... 6

*In re Subpoena Duces Tecum to AOL, L.L.C.,*
   550 F.Supp.2d 606, 612 (E.D. Va. 2008) .............................................................. 4

*Innovative Therapies, Inc. v. Meents,*
   Case No. 2012-cv-03309, 2014 WL 858651, 17 (D. Md., 2014) .............................. 4

*Liles v. Stuart Weitzman, LLC,*
   No. 09–61448–CIV, 2010 WL 1839229, at *3 (S.D. Fla. May 6, 2010) .................. 9

*Medical Components, Inc. v. Classical Medical, Inc.,*
   210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002) ........................................................... 6

*Nicholas v. Wyndham Int'l, Inc.,*
   373 F.3d 537, 543 (4th Cir.2004) ........................................................................ 5

iv

*Premer v. Corestaff Servs., L.P.,*
    232 F.R.D. 692, 693 (M.D. Fla.2005) ...................................................................... 9

*Regan-Touchy v. Walgreen Co.,*
    526 F.3d 641, 648-49 (10th Cir. 2008) .................................................................... 6

*Rivera v. Nibco,*
    364 F.3d 1057, 1072 (9th Cir. 2004) ...................................................................... 6

*Sanders v. Dalcraft, LLC,*
    No. 3–09–CV–0307–P, 2009 WL 1392602, at *2 (N.D. Tex. May 18,
    2009) ........................................................................................................................ 9

*Schaaf v. SmithKline Beecham Corp.,*
    233 F.R.D. 451, 453 (E.D.N.C. 2005) .................................................................... 5

*Serrano v. Cintas Corp.,*
    699 F.3d 884, 901 (6th Cir. 2012) .......................................................................... 5

**RULES**

Federal Rule of Civil Procedure 26 ..................................................................... iii, 4, 5

Federal Rule of Civil Procedure 26(c) ......................................................................... 6

Federal Rule of Civil Procedure 26(b)(1) ..................................................................... 6

Federal Rule of Civil Procedure 26(c)(1)(A) ................................................................ 5

Federal Rule of Civil Procedure 30(b)(6) ..................................................................... 2

Federal Rule of Civil Procedure 37(a)(5)(A) .............................................................. 11

Federal Rule of Civil Procedure 45 ................................................................. iii, 4, 5, 11

Federal Rule of Civil Procedure 45(c) ......................................................................... 5

Federal Rule of Civil Procedure 45(d)(1) ................................................................... 11

Federal Rule of Civil Procedure 45(d)(3)(A) ................................................................ 4

**OTHER AUTHORITIES**

8A Charles Alan Wright & Arthur R. Miller, et al, Federal Practice and
    Procedure § 2036 (3d ed. 2012) .............................................................................. 5

## PRELIMINARY STATEMENT

Syncora[1] filed an Objection to the Debtor's Plan of Adjustment on May 12, 2014. The Objection raised a host of grounds, *e.g.*, that the Plan fails the best interests of creditors test because the recovery is not great enough, that it fails the unfair discrimination test because of alleged disparities of treatment between creditors of equal priority, that it fails the fair and equitable test because the assets of the Detroit Institute of Arts ("DIA") are being preserved rather than monetized, and that it fails the feasibility test, because Syncora says the Debtor may not be able to fund its reinvestment plan.

Now, Syncora has served subpoenas on the Foundations[2] that have agreed to fund pensions in connection with the Plan, seeking depositions and the production of documents relating to the Foundations' dealings with the DIA, among other broad, general topics. Neither the deposition topics nor the subjects of the document requests have any connection to the bases for Syncora's objection to the Plan. It appears Syncora's subpoenas are nothing but a cynical lashing out at entities that have some role in the Plan, in order to annoy, oppress or harass them as part of an overly aggressive attempt to disrupt the orderly resolution of this matter. At best, the subpoenas are a classic fishing expedition to which several grounds for quashing them squarely apply. Accordingly, the Foundations request that the Court quash the Subpoenas and order Syncora to pay the Foundations' attorneys' fees incurred in having to bring this motion.

---

[1] Syncora Capital Assurance, Inc. and Syncora Guarantee, Inc.
[2] "Foundations" consist of Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation, McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation.

1

## STATEMENT OF MATERIAL FACTS

On May 12, 2014, Syncora filed a 69-page (90-paragraph) Objection (the "Objection") (Docket No. 4679) to the Debtor's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 4392) (the "Plan"). Syncora objects that the Plan fails the best interests of creditors test because the recovery it offers to the least favored classes is less than they would realize if the case were dismissed. (Syncora's Objection, Docket No. 4679, p. 1). Syncora objects that the Plan fails the unfair discrimination test because it would result in alleged disparities of treatment between creditors of equal priority. (*Id.*, p. 2) Syncora also complains that the Plan is not fair and equitable because it does not monetize the Debtor's art collection, *i.e.*, the art owned by the DIA. (*Id.*, p. 2). And Syncora claims the Plan is also not feasible, because it says the Debtor will not be able to fund its reinvestment plan. (*Id.,* p. 3).

Unrelated to any aspect of Syncora's Objection to the Plan is the presence and involvement of the Foundations. The Foundations are each not for profit charitable foundations, whose only involvement with this matter arises from their answer to a request that they help the Debtor solve its financial problems, and their subsequent agreement to provide funding, upon the occurrence of certain conditions precedent, for the benefit of pensioners participating in the General Retirement System and the Police and Fire Retirement System, as set forth in the Plan. If approved, the Foundations' contributions, together with those of the State of Michigan and others, would result in the transfer of the assets of the DIA by the Debtor, to be held in perpetual charitable trust for the benefit of the citizens of the City of Detroit and the State of Michigan (the "DIA Settlement"). See the Plan at Exhibit I.A.91.

On June 4, 2014, Syncora issued subpoenas to each of the Foundations, as amended on June 5, 2014 (collectively, the "Subpoenas"), seeking the depositions of the Foundations' representatives under Federal Rule of Civil Procedure 30(b)(6) (Docket Nos. 5224 and 5241),

2

beginning on June 23, 2014, and continuing through June 27, 2014, to discuss (a) the negotiations between each of the Foundations, the Debtor and any other parties pertaining to the DIA Settlement; (b) the terms of the DIA Settlement; (c) each Foundation's contribution to the DIA Settlement; (d) each Foundation's involvement with the DIA; (e) each Foundation's reasons for entering into the DIA Settlement; (f) the purpose or mission of each Foundation; (g) each Foundation's prior donations or contributions, including donations or contributions to the arts; and, (h) the importance and value of the DIA and its art collection. (Subpoenas at Schedule A).

The Subpoenas also request that each Foundation produce (a) all documents and communications relating to the DIA Settlement; (b) all documents and communications relating to the negotiations surrounding the DIA Settlement; (c) all documents and communications relating to the transfer of the assets of the DIA pursuant to the DIA Settlement; (d) all documents and communications describing the reasons for entering into the DIA Settlement; (e) documents sufficient to show the causes or charities each Foundation has previously supported or provided money to from January 1, 1990 to present; (f) each Foundation's mission statement; (g) documents sufficient to show each Foundation's current process for evaluating potential partners or causes; and, (h) all communications between each Foundation and the DIA from January 1, 2001 to the present (Subpoenas at Schedule B).[3]

Given the topics' focus on the DIA, the particular aspect of Syncora's Objection to which the inquiries presumably applies must be the DIA Settlement, by which the DIA's assets are to be transferred to a non-profit organization rather than monetized. But no explanation has been offered in or in connection with the Subpoenas as to how these inquiries into the Foundations'

---

[3] Docket No. 5241 modified the scope of the document requests to those from March 15, 2013 to June 5, 2014, unless otherwise specified.

dealings with the DIA, much less the more general topics set forth in the subpoenas, have anything to do with the nature of Syncora's Objection.

**ARGUMENT**

## I.    SYNCORA'S SUBPOENAS AS TO THE FOUNDATIONS SHOULD BE QUASHED FOR MULTIPLE REASONS.

### A.    Governing Standards

Rule 45 of the Federal Rules of Civil Procedure governs motions to quash subpoenas. Courts *must* quash a subpoena that:

> (i)    fails to allow a reasonable time to comply;

* * *

> (iii)    requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

> (iv)    subjects a person to undue burden.

Federal Rule of Civil Procedure 45(d)(3)(A).

In reviewing a motion to quash, the court may consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir.2003) (citing cases). A subpoena is overbroad if it "does not limit the documents requested to subject matter relevant to the claims or defenses." *Innovative Therapies, Inc. v. Meents*, Case No. 2012-cv-03309, 2014 WL 858651, 17 (D. Md., 2014); *In re Subpoena Duces Tecum to AOL, L.L.C.*, 550 F.Supp.2d 606, 612 (E.D. Va. 2008).

In the context of discovery, "Rule 45 adopts the standards codified in Rule 26 which allows for the discovery of any matter 'not privileged, that is relevant to the claim or defense of

4

any party' when the discovery request 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). Nevertheless, simply because information is discoverable under Rule 26 "does not mean that discovery must be had." *Id.* (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir.2004)). The same limitations to discovery requests found in Rule 26 should be applied to a subpoena served pursuant to Rule 45. *See, e.g., HD Sherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard*, 484 Fed. Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed[,] . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")).

Rule 26(c)(1)(A) also provides that a district court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by, among other things, barring the deposition of or other discovery from that individual. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). Because "discovery has limits and . . . these limits grow more formidable as the showing of need decreases, . . . even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id.* (quoting 8A Charles Alan Wright & Arthur R. Miller, et al, Federal Practice and Procedure § 2036 (3d ed. 2012)).

It is well settled that the proponent of the discovery must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery," in order to limit "fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir.

5

1992). "District Courts need not condone the use of discovery to engaging 'fishing expeditions.'" *Rivera v. Nibco*, 364 F.3d 1057, 1072 (9th Cir. 2004). Indeed, even if a district court determines that a party is seeking relevant information, it may, upon a showing of good cause, enter any protective order that "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Federal Rule of Civil Procedure 26(c). *See also I'mnaedaft, Ltd. v. The Intelligence Office System*, Case No. 1:2008-cv-01596, 2009 WL 1537975, 6 (D. Colo., 2009) ("third-party subpoenas that are a search for ammunition to use in a particular war should be quashed; 'ammo recon' missions, like fishing expeditions, are rarely appropriate and uniformly discouraged.")

As courts have recognized, "the requirements of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] a party or person from annoyance, embarrassment, [or] oppression . . ." *Regan-Touchy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008), (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

In the context of subpoenas to third-parties, the protections a court should provide are even greater. In balancing the need for discovery against the burdens imposed by the discovery requested, courts have held that a court may consider the fact that discovery is being sought from a third-party, which weighs against permitting discovery. *See, e.g., Medical Components, Inc. v. Classical Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002); *Echostar Communications v. The News Corp., Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

## B. Application

Syncora's Subpoenas aimed at the Foundations are properly quashed for any number of reasons. They are not remotely aimed at discovering information that would bear on the nature

6

of the Objection to the Plan. They are overbroad and would impose an undue burden. They also seek disclosure of privileged or other protected matter.

### 1. The Subpoenas do not seek discovery of relevant information.

The Subpoenas do not even get out of the gate as a proper request because they seek information that is simply not relevant to Syncora's Objection to the Plan.

The Foundations only became involved in this matter as a result of their responding to a request that they assist the City of Detroit in resolving its financial ills. Their role in this matter is limited to providing funding, upon the occurrence of certain conditions precedent, for the benefit of pensioners participating in the General Retirement System and the Police and Fire Retirement System, as set forth in the Plan. That funding would result in the transfer of the assets of the DIA to be held in perpetual charitable trust for the benefit of the citizens of the City of Detroit and State of Michigan. Syncora criticizes this aspect of the Plan, and believes the DIA's assets should be monetized. But whatever the merits of that criticism, the Subpoenas aimed at the Foundations have nothing to do with it.

The deposition topics, and the documents that are the subject of the requests to produce, seek such things as the terms of the DIA Settlement, the various Foundations' involvement with the DIA, and the "reasons" for entering into the DIA Settlement. The topics also include such far-ranging fishing expeditions as "prior donations or contributions, including donations or contributions to the art." Syncora even lists as a deposition topic "The importance and value of the Detroit Institute of Arts and Collection."

No information that Syncora might obtain through discovery from the Foundations through depositions and responses to document requests would have any bearing whatsoever on the merits (or lack thereof) of Syncora's Objection to the Plan. The sole basis for Syncora's

opposition to the DIA Settlement set forth in its Objection to the Plan stems from Syncora's opinion that the value the Debtor will receive from the DIA Settlement is substantially less than the reasonably equivalent value—and that the community value of allowing the DIA's assets *not* to be monetized evidently should be disregarded. Such questions about valuation are entirely unrelated to the funding to be provided for the benefit of the pensioners. Clearly, the purpose of the scheduling of the depositions of the Foundations' representatives and document production requests is to attempt to intimidate the Foundations into dropping their support for the DIA Settlement.

In short, Syncora's Subpoenas are not merely a fishing expedition; they are a fishing expedition in a pond with no fish. Thus, they are best understood as not merely a good-faith discovery request that could possibly annoy or oppress the third-parties to whom the Subpoenas are aimed, but as *designed to annoy or oppress* the Foundations, by harassing them for no good reason at all. Regardless, and whatever Syncora's motive, the Subpoenas should be quashed in their entirety.

Courts have repeatedly quashed subpoenas aimed at discovering information based on nothing more than the possibility that the defendant might discover or "fish out" something that could be of use. *See E.E.O.C. v. S. Haulers, LLC*, No. 11–00564–N, 2012 WL 1768064, at *3–4 (S.D.Ala. May 17, 2012) (granting motions to quash because "the mere possibility" that defendant might discover evidence or "fish out" something that might be admissible as impeachment evidence did not justify the broad requests); *E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.*, No. 11–cv–02560–MSKMEH, 2012 WL 934312, at *3 (D. Colo. Mar. 19, 2012) ("Defendant's contention that such dated information 'may' be relevant to an after-acquired evidence defense or 'may' demonstrate an alternative source of emotional distress

8

inches over the line into a 'fishing expedition' barred by the applicable rules."); *Liles v. Stuart Weitzman, LLC*, No. 09–61448–CIV, 2010 WL 1839229, at *3 (S.D. Fla. May 6, 2010) (granting motion for protective order and explaining that "Defendant . . . has cited no authority to support his argument that a plaintiff's employment records from his former employer are relevant (or are likely to lead to admissible evidence) to demonstrate poor performance while employed by the defendant. Moreover, courts considering the issue have held to the contrary."); *E.E.O.C. v. Jack Marshall Foods, Inc.*, No. 09–0160–WS–M, 2010 WL 55635, at *6 (S.D. Ala. Jan.4, 2010) (affirming magistrate judge's order granting motion to quash overbroad subpoenas to former employers); *Sanders v. Dalcraft, LLC*, No. 3–09–CV–0307–P, 2009 WL 1392602, at *2 (N.D. Tex. May 18, 2009) ("Courts generally agree that the after-acquired evidence defense 'cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrong-doing will be revealed.' ") (citation omitted); *Premer v. Corestaff Servs., L.P.,* 232 F.R.D. 692, 693 (M.D. Fla.2005) ("Though the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery.").

In the instant case, these authorities all apply with equal if not greater force because, as noted, this is not merely a fishing expedition, it is an intentional effort to annoy or harass the Foundations with no hope of unearthing relevant information relating to the Objection. Accordingly, the Subpoenas should be quashed.

### 2. The Subpoenas are overbroad and would impose an undue burden.

Apart from the absence of any relevance, the subpoenas are properly quashed as overbroad and as imposing an undue burden. As one court has aptly recognized, "obviously, if sought-after documents are not relevant nor calculated to lead to the discovery of admissible

9

evidence, then any burden whatsoever imposed . . . would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). That is the case here.

Even if the topics of the Subpoenas had some marginal relevance to Syncora's Objection, which they do not, the burden on the Foundations would warrant that the subpoenas be quashed. The topics include such far-ranging items as "The purpose or mission of Your foundation," and "Your prior donations or contributions, including donations or contributions to the arts." Among other problems with such topics, they are inappropriately broad, to put it mildly. The Foundations should not be required to gather up all information responsive to such overbroad topics, or be held to answer questions on them, particularly given the absence of any showing of need.

Additionally, much of the information sought, albeit irrelevant to the Objection, is readily available to Syncora, as well as to the public at large. The mission statement for each of the Foundations is contained on their respective web sites. Information relating to prior grants made by the Foundations is available via GuideStar (www.guidestar.org), which includes data for well over 1,000,000 organizations by the Internal Revenue Service as not-for-profit organizations.

Syncora's subpoenas are the very definition of overbroad, and would be appropriately quashed for that reason alone even if they did seek relevant information.

### 3. The Subpoenas require disclosure of privileged or other protected matter.

A third reason the Subpoenas should be quashed is that they would require disclosure of privileged or other protected material. Discussions regarding the DIA Settlement were held in conjunction with the Court's mediation process, which deemed all negotiations to be privileged, and required that everything pertaining to same be kept confidential (Docket No. 322). Even

10

absent this fact, given the complete absence of relevance regarding the areas of inquiry, Syncora's attempt to harass the Foundations into disclosing information of this type should be rejected.

## II. THE COURT SHOULD AWARD THE FOUNDATIONS ATTORNEYS FEES INCURRED IN CONNECTION WITH THIS MOTION.

Federal Rule of Civil Procedure 45 includes a specific provision aimed at "**Protecting a Person Subject to a Subpoena**; **Enforcement**." Subsection (d) states in pertinent part as follows:

> (1) **Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Here, in stunning contrast to its responsibility to take reasonable steps to avoid imposing undue burden or expense, Syncora appears to have issued its Subpoenas for the very purpose of imposing undue burden or expense on the Foundations. Because the topics for deposition and document requests have no connection to the grounds for Syncora's Objection to the Plan, and, therefore, the Subpoenas seek information that is entirely irrelevant to its Objection, it seems the Subpoenas were issued solely for the purpose of annoying or harassing the Foundations. Consequently, this Court should award the Foundations their attorneys' fees incurred in bringing this motion. *See also* Federal Rule of Civil Procedure 37(a)(5)(A) (*requiring* a court to award attorneys' fees upon the grant of a protective order absent certain exceptions).

11

## CONCLUSION

For the reasons set forth herein, the Foundations request that this Court quash the

Subpoenas served by Syncora on June 4, 2014, and award the Foundations attorneys' fees

incurred in response to the issuance of those Subpoenas.  The Foundations further request any

and all other relief appropriate under the circumstances.

PLUNKETT COONEY

/s/ Douglas C. Bernstein
Attorneys for  CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan  48304
(248) 901-4091
dbernstein@plunkettcooney.com

and

*Of counsel*

WINSTON & STRAWN LLP

Harvey Kurzweil
New York State Bar No. 1251610
Desiree M. Ripo
New York State Bar No. 4589552
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
HKurzweil@winston.com
DMRipo@winston.com

and

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP

Rafael R. Ribeiro
The Florida Bar No. 896241
Michael N. Kreitzer
The Florida Bar No. 705561
Attorneys for the Knight Foundation
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
(305) 350-7312
(305) 350-2384
rribeiro@bilzin.com
mkreitzer@bilzin.com

Date: June 13, 2014

Open.18341.41654.14156631-2