# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

------------------------------------------------------- x
In re                                                      :    Chapter 9

: Case No. 13-53846

CITY OF DETROIT, MICHIGAN,  : Hon. Steven W. Rhodes

                   Debtor   :
------------------------------------------------------- x

**RESPONSE OF THE CITY OF DETROIT TO MOTION FOR TEMPORARY ALLOWANCE OF THE MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT PURSUANT TO RULE 3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR PURPOSES OF ACCEPTING OR REJECTING THE DEBTOR'S FOURTH AMENDED PLAN OF ADJUSTMENT**

The City of Detroit (the "City"), by and through its undersigned counsel, hereby files this response (the "Response") to the Motion for Temporary Allowance of the Macomb Interceptor Drain Drainage District Pursuant To Rule 3018(a) of the Federal Rules Of Bankruptcy Procedure for Purposes of Accepting or Rejecting the Debtor's Fourth Amended Plan of Adjustment (the "3018 Motion"). In support of this Response, the City respectfully states as follows:

**PRELIMINARY STATEMENT**

The Macomb Interceptor Drain Drainage District ("MIDDD") filed a proof of claim (the "MIDDD Claim"), seeking an amount not less than $26,000,000.00. The MIDDD Claim is based on embryonic litigation filed a few weeks before the City filed bankruptcy (the "Macomb Litigation"). The City has never filed an answer or other responsive pleading in the Macomb Litigation. Furthermore, no discovery has occurred in the Macomb Litigation. Finally, the City has not been found liable to the MIDDD in any manner or for any amount

4812-7389-0843.2

whatsoever, and the City vigorously contests the allegations made in the Macomb Litigation. At this point, the MIDDD Claim is unquestionably a contingent, unliquidated claim against the City and should be treated as such in accordance with this Court's Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment [Dkt. No. 2984] (the "Solicitation Procedures Order") and valued at $1.00 for voting purposes.

## ARGUMENT

### a. The MIDDD Claim is so Speculative that it Should Be Nominally Valued for Voting Purposes.

1. The MIDDD seeks temporary allowance of the Macomb Claim in an amount of $26,000,000 without offering anything more than an untested Complaint to support its claim. The MIDDD's bare assertion of the City's liability, coupled with only its own unproven damages calculation, is not sufficient to allow it to vote on the City's Plan of Adjustment in more than a nominal amount.

2. Notwithstanding the insertion of an amount on the proof of claim, the MIDDD Claim is a contingent claim against the City because the City's liability has not yet been established. *See In re Parks*, 281 B.R. 899, 901 (Bankr. E.D. Mich. 2002). Claims related to pending litigation are considered contingent claims. *In re Dow Corning Corp.*, 86 F.3d 482, 494 (6th Cir. 1996) (finding that pending litigation against non-debtor entities who could seek indemnity and contribution from the debtor gave rise to a contingent claim against the debtor).

3. The Macomb Litigation is still in its infancy. Other than the Complaint and the City's removal petition, no pleadings have been filed and the litigation has been stayed as a result of the City's bankruptcy. At this point in the Macomb Litigation, MIDDD has not established that the City will be found liable to the MIDDD for any amount, much less $26

million.  The City does not concede liability and plans a vigorous defense.  The entire claim is speculative.

4. Therefore, the MIDDD Claim was filed in an amount which can only be considered contingent where the City has not been found liable to the MIDDD on any grounds or for any amount whatsoever, and where MIDDD cannot demonstrate its entitlement to at least $26,000,000, or any other amount, at this time.  The MIDDD Claim is also unliquidated because the amount of damages to which the MIDDD is entitled, assuming *arguendo* there are any, has not been fully and finally determined.

5. As a contingent and unliquidated claim, the MIDDD Claim may be estimated for temporary allowance under Fed. R. Bankr. P. 3018(a) .  Although Fed. R. Bankr. P. 3018(a) does not provide a particular method of estimating claims for temporary allowance, bankruptcy judges may use whatever method "is best suited to the particular case contingencies involved." *In re Hydrox Chem. Co.*, 194 B.R. 617, 623 (Bankr. N.D. Ill. 1996).  "The principal consideration must be an accommodation to the underlying purposes of the Code." *In re TransAmerican Natural Gas Corp.*, 79 B.R. 663, 666 (Bankr. S.D. Tex. 1987) (internal quotations omitted).  In the case of temporary allowance for voting purposes, the procedure envisioned by Fed. R. Bankr. P. 3018(a) is "intended to avoid delaying confirmation . . . ." *In re Easterly Constr. Co.*, 2009 Bankr. LEXIS 3481, at *1 (Bankr. M.D. La. Oct. 22, 2009).

6. Therefore, given the wholly speculative nature of the MIDDD Claim at this time, the best method of estimation in this case is to allow it in a nominal amount such that the MIDDD is allowed to vote on the Plan, but is not entitled vote such a large claim that it would have a disproportionate effect on its class.  This is in accordance with the Court's Solicitation Procedures Order.  *See* Solicitation Procedures Order, Exhibit 1, Proposed Rules for Tabulation

of Ballots, Rule VII; *see also* Solicitation Procedures Order, Exhibit 1, Proposed Rules for Tabulation of Ballots, Rule IV (establishing that claims filed as contingent or unliquidated shall be allowed to vote in the amount of $1.00).

7. As the moving party seeking temporary allowance of a contingent and unliquidated claim for voting purposes, the MIDDD must carry its burden to establish the MIDDD Claim by a preponderance of the evidence. *See Armstrong v. Rushton (In re Armstrong)*, 292 B.R. 678, 686 (B.A.P. 10th Cir. 2003) ("Because a temporary allowance order only arises if there is an objection to a claim, we conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation."); *FRG, Inc.*, 121 B.R. at 456-57 ("[T]he burdens of proofs in the B. Rule 3018(a) estimation process is the same as in deciding objections to proofs of claim[.] . . . [Claimant] therefore ha[s] the burden of proving the validity of all elements of his claims by a preponderance of the *truncated* evidence presented at the hearing.") (emphasis added); *see also* Russell, 2 Bankruptcy Evidence Manual, § 301:50, at 295 ("The burdens of proof in estimating a claim to temporarily allow it for the purposes of accepting or rejecting a plan are the same as in deciding objections to proofs of claim."). However, given the current stage of the Macomb Litigation, there is no available evidence at this time which would allow the MIDDD to meet its burden, nor has MIDDD offered any with its 3018 Motion.

8. As discussed above, and in the City's objection to the MIDDD Claim [Dkt. No. 4954], none of the allegations made in the Macomb Litigation have been tested by a motion to dismiss or an answer—let alone been adjudicated on their merits. The Complaint was filed approximately three weeks before the City filed bankruptcy. At this early stage of the Macomb

Litigation, before the City has filed any responsive pleading, there is no basis to conclude that the the City will be found liable to the MIDDD at all, let alone for at least $26,000,000.00.

9. The MIDDD also asserts that the City "hand-picked" certain claims to object to by the May 15 deadline "in order to manipulate voting on the Plan." 3018 Motion, ¶20. Not so. The City was faced with over 3,800 claims, many of which sought extremely large claim amounts for which the City had not been determined to be liable. The MIDDD Claim is only one such claim. Given the number of claims filed against the City, it properly reviewed the largest claims first, and appropriately objected to certain large claims in voting classes where its liability had not been established.

10. The 3018 Motion also extensively discusses the City's assertion that *res judicata* may act to bar the claims asserted in the Macomb Litigation. 3018 Motion, pp. 9-14. While *res judicata* is one potential defense the City may assert in connection with the MIDDD Claim, there are certainly others. Whether or not the City ultimately prevails on the merits of *res judicata* once the MIDDD Claim is litigated is irrelevant to deciding the 3018 Motion. At this juncture, the unliquidated, contingent, disputed and unproven MIDDD Claim should be permitted to vote in only a nominal amount,

11. By contrast, through the 3018 Motion, the MIDDD is asking this Court to allow it to vote its claim as though the claim is not contingent and disputed and had been fully liquidated. To do so would allow the MIDDD a disproportionate influence on the confirmation process to which it is not entitled, given the speculative nature of the MIDDD Claim at this point in the claims resolution process.

### b. This Court Should Treat the MIDDD Claim in the Same Manner as the Other Contingent and Unliquidated Claims Filed in this Case To Avoid Further Delays in the Confirmation Process.

12. Given the current status of the MIDDD Claim, and because temporary allowance procedures are designed to avoid any delays in the confirmation of a plan and must accommodate the underlying purposes of the Bankruptcy Code, this Court need not and should not conduct a lengthy evidentiary hearing to temporarily value the MIDDD Claim for voting purposes. *See TransAmerican supra*, 79 B.R. at 666.

13. This Court has already determined the manner by which contingent and unliquidated claims will be handled during the tabulation process in its Solicitation Procedures Order. The MIDDD did not object to that manner when the City filed its motion to have its solicitation and tabulation procedures approved. *See, e.g., Pension Benefit Guaranty Corp. v. Enron*, 2004 U.S. Dist. LEXIS 21810, * 10-11 (S.D.N.Y. Nov. 1, 2004) (holding that the PBGC could not "revisit its tactical decisions" not to object to the debtors' motion for voting procedures because it was dissatisfied with the manner in which its ballots were counted). The MIDDD should not now be placed in a special position above other similarly-situated creditors also holding contingent, unliquidated and disputed claims, particularly when it did not object to the rules established by the Solicitation Procedures Order when it had the chance.

14. The temporary allowance procedure under Fed. R. Bankr. P. 3018(a) was designed to avoid delays in the confirmation process. *See also* Fed. R. Bankr. P. 1001 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."). With the Confirmation Hearing rapidly approaching, and the complexity of the issues facing the City, its creditors and this Court, the temporary allowance of the MIDDD Claim

in a nominal amount would enable the MIDDD the right to vote on the chapter 9 plan, but not to hold the confirmation process hostage. This solution strikes the right balance for all parties.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Debtor respectfully requests that the Court deny the 3018 Motion, allow the MIDDD Claim for voting purposes only in the amount of $1.00 consistent with the Solicitation Procedures Order, and grant such other and further relief to the City as the Court may deem proper.

Dated: June 13, 2014

FOLEY & LARDNER LLP

By: */s/ Tamar N. Dolcourt*
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the City of Detroit, Michigan*

4812-7389-0843.2