UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------------x
:
In re                                              :    Chapter 9
:
:
CITY OF DETROIT, MICHIGAN,                         :    Case No. 13-53846
:
           Debtor.                                 :    Hon. Steven W. Rhodes
:
:
---------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE
OF RETIREES TO MOTION FOR TEMPORARY
ALLOWANCE OF CLAIM OF THE MACOMB INTERCEPTOR
DRAIN DRAINAGE DISTRICT PURSUANT TO RULE 3018(a)**

The Official Committee of Retirees (the "**Committee**") objects to the Motion for Temporary Allowance of Claim of the Macomb Interceptor Drain Drainage District pursuant to Rule 3018(a) [Docket No. 5155] (the "**Temporary Allowance Motion**") as follows:

1.  The claimant, Macomb Interceptor Drain Drainage District ("**Macomb**"), filed its claim (Claim No. 3683) (the "**Macomb Claim**") on May 5, 2014, seeking "not less than $26 million" in damages for alleged fraud, misrepresentation and breach of contract in connection with the Macomb Interceptor System. The Macomb Claim attaches a state-court complaint dated June 25, 2013—shortly before the filing of the City's Chapter 9 case—brought by Macomb against the City, based largely on a federal criminal indictment and convictions against certain former Detroit officials, including former Mayor Kilpatrick (the "**Macomb Litigation**").

2.  On May 15, 2014, the City filed its Objection [Docket No. 4954] (the "**Objection**") to the Macomb Claim. The Objection attaches a September 17, 2012 Opinion and Order by Judge Robert H. Cleland granting a motion for summary judgment by former Mayor Kilpatrick and certain other former city officials and other parties, on standing grounds, as to a

1

complaint brought by Macomb in federal district court asserting RICO, antitrust and tort claims concerning fraudulent overcharges as to the same Macomb Interceptor System and 15 Mile Interceptor Project (the "**Prior Action**").

3. Based on that federal ruling, the Objection asserts that the Macomb Claim is barred by *res judicata*, "[a]mong other challenges the City may assert…." (Objection ¶ 13.) As we show, the *res judicata* defense is valid, despite Macomb's strained attempt to argue that "the operative facts giving rise to [Macomb's] claims for relief are markedly different." (Temporary Allowance Motion ¶ 28.)

4. The federal ruling in the Prior Action also makes clear that the damages sought here (which are the same as the damages sought in the Prior Action) are unliquidated and impossible or difficult to calculate. In essence, the Macomb Claim is an unliquidated fraud claim; the $26 million *ad damnum* is speculative and not meaningful.

5. As the Court is aware, the Committee will not know whether it is an objector to confirmation until after votes are tabulated for Classes 10 and 11 and the status of the outside funding commitments are known. However, the Committee submits this Objection in order to persuade the Court that this alleged creditor should not be entitled to manufacture a claim for voting purposes to further confirmation objections based on unfair discrimination under section 1129(b)(1) or best interests of creditors under section 943(b)(7). Absent allowance for voting purposes, the Macomb Claim could not sway class 14 into a dissenting class and thereby advance Macomb's proffered unfair discrimination argument against retiree pension claims [*See* Dkt. 4636, ¶¶ 40-42], which are protected by the Pension Clause of the Michigan Constitution, Art. IX § 24. Macomb may also in the future be determined to lack standing to advance arguments under section 943(b)(7) in the absence of an allowable claim.

## I.  MACOMB FAILS TO ACKNOWLEDGE OR CARRY ITS BURDEN.

6. As Macomb acknowledges "[t]here is no guidance in the Bankruptcy Code to courts as to how to determine whether to permit the temporary allowance of a claim; it is left to a court's discretion." *In re Armstrong*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003). (*See* Temporary Allowance Motion ¶ 21.) However, Macomb ignores that it bears a considerable burden. As set forth in *Armstrong*:

> "Because a temporary allowance order only arises if there is an objection to a claim, we conclude that the burden of proof should be on the claimant to present sufficient evidence that it has a colorable claim capable of temporary evaluation."

*Id.*

7. Despite the City's Objection (and the federal decision in the Prior Action attached to it), Macomb chooses to stand on its Proof of Claim as sufficient evidence for temporary allowance of its Claim. (Temporary Allowance Motion ¶¶ 23, 37.) This position stands in stark contrast with the kind of evidence courts require to temporarily allow a claim of such magnitude. *E.g. In re Zofner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) ("Under Rule 3018(a), a summary-type hearing is contemplated. Accordingly, this Court only heard about twelve hours of evidence and argument, although all evidence heard was admissible under evidence rules").

8. Macomb also ignores that the Macomb Claim not only has been objected to, but that the Objection is valid—and at least sufficient "to rebut the prima facie effect of the proof of claim. *In re Plastech Engineered Products, Inc.*, 399 B.R. 1, 10 (Bankr. E.D. Mich. 2008). "Once the objecting party produces facts sufficient to demonstrate that an actual dispute exists regarding validity or amount of the claim, the burden of going forward shifts to the claimant to submit evidence to sustain the claim." *Id*. "[T]he ultimate burden of persuasion is always on the claimant to establish entitlement to the claim." *Id*.

## II. THE *RES JUDICATA* DEFENSE IS VALID.

9. In the Sixth Circuit, "res judicata bars the same parties from relitigating issues that either were actually litigated or that could have been raised in an earlier action." *Marks v. Bank of America*, No. 13-12060, 2014 WL 700478, at *3 (E.D. Mich. Feb. 24, 2014) (citing *J.Z.G. Res., Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 214 (6th Cir.1996)). *Res judicata* extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *J.Z.G. Res., Inc.,* 84 F.3d at 215 (citing *Restatement (Second) Judgments* § 24 (1982)).

10. The decision cited by Macomb, *Artie Fields Prods., Inc. v. Channel Seven of Detroit, Inc.,* 97 F.3d 1451 (6th Cir. 1996), is an unpublished Sixth Circuit 1996 decision which deals with the technical difference between the right to license the format of a production as opposed to the right to license material for advertising and promotional purposes. The unpublished *Artie* decision cites no law, 6th Circuit precedent or otherwise, as to the standard for determining identity of causes of action for *res judicata* purposes. It does nothing to change the established rule set forth in *J.Z.G. Res., Inc.,* which adopts the *Restatement (Second) of Judgments* standard and has been followed in numerous Sixth Circuit cases, as recently as June 9, 2014. *See Springs v. U.S. Dep't of Treasury*, No. 13-1521, 2014 WL 2566102, at *4 (6th Cir. Jun. 9, 2014).

11. The Macomb Litigation complaint asserts an extensive scheme involving multiple contractors and City officials, commencing in 2002 and continuing to at least 2006, to fraudulently overcharge for repairs and rehabilitation work in connection with the Macomb Interceptor System, most specifically in connection with the "15 Mile Interceptor Project" commencing in 2004. (Complaint ¶¶ 29-53.) The complaint alleges that the City "amortized the

4
13-53846-tjt    Doc 5315    Filed 06/13/14    Entered 06/13/14 23:15:12    Page 4 of 10

grossly inflated costs for the [15 Mile Interceptor] Project into usage charges assessed to [Macomb] for the Macomb Interceptor Sewer system in the rate years 2005-2006 through 2009-2010 …" (Complaint ¶ 74.) It further alleges that when Macomb acquired the assets of the Macomb Interceptor System from the City in 2010, the City misrepresented its compliance with legal requirements and failed to disclose the fraud. (Complaint ¶¶ 84,88.) Macomb alleges that as a result it "paid in full the costs associated with the [15 Mile Interceptor] Project" (Complaint ¶ 86) and is entitled to recover fraudulent overcharges and usage charges. The Macomb Litigation is stayed, and the City has not yet filed an answer to the complaint.

12. The federal opinion in the Prior Action amply demonstrates that *res judicata* bars the Macomb Claim. As pertinent to identity of the causes of action, Judge Cleland states:

> The claims arise from Defendants' involvement in the 2004-2005 repair of a collapsed sewer interceptor at 15 Mile Road in Sterling Heights, Michigan, (hereafter, the "15 Mile Interceptor Repair Project" or "Project"). Macomb Interceptor avers that Defendant Kwame Kilpatrick, then the Mayor of the City of Detroit, along with various City of Detroit officials conspired with the principal contractor overseeing the 15 Mile Interceptor Repair Project, Defendant Inland Waters Pollution Control, Inc., and numerous subcontractors to "overcharge the Detroit Water and Sewerage Department . . . for time, labor and materials to stabilize and repair a sewer collapse at 15 Mile Road." (Pl.'s Compl. ¶ 5, Dkt. #1.) Macomb Interceptor further alleges that the misconduct was part of a widespread corruption scheme during Defendant Kwame Kilpatrick's tenure as Mayor of Detroit.

(Opinion at 2.)

\*\*\*

> Macomb Interceptor argues that the following two alleged injuries maintain its federal claims: (1) paying an inflated price for the Macomb System as a result of 15 Mile Interceptor Repair Project's cost overruns caused by Concurring Defendants' actions and (2) paying higher system usage charges during the time between the 15 Mile Interceptor Repair Project and the execution of the Acquisition Agreement.

(Opinion at 16.) In short, the same transactions and the same damage were at issue in the Prior Action. Indeed, Macomb asserted standing in the prior action by virtue of an alleged assignment of rights under the very same contract which it raises as a basis for Count 3 of the state court complaint. (*See* Opinion at 6-16; Complaint Count 3, ¶¶ 98-108.)

13. As to identity of parties, it is true that the City was an intervening plaintiff, not a defendant. But unquestionably, the City was adverse to Macomb. As the federal decision notes, the City maintained that Macomb lacked legal standing to assert tort claims pertaining to the Macomb Interceptor System. (Opinion at 3-4.) It filed a brief in support of defendants' motion for summary judgment, which was granted, and in opposition to Macomb. (Opinion at 4.) What matters for *res judicata* purposes is that the City and Macomb were adverse, not how they were aligned in the caption. *Edelman v. McMullin Orchards*, 32 B.R. 783, 785 (Bankr. W.D. Mich. 1983) ("It is clear that res judicata can be applied to bind co-parties," where they are adverse.).[1]

14. Moreover, the federal decision in the Prior Action was a final resolution of the issue of Macomb's right and standing to bring tort claims relating to the alleged Macomb Interceptor System fraud. In a footnote in an unpublished decision, the Sixth Circuit has suggested in *dicta* that standing may be a source of *res judicata* even where a decision is not on

---

[1] *Edelman* explains:

> Second, there must be identity of parties involved in the two suits. It is clear that res judicata can be applied to bind co-parties:
>
> A person who is joined as a party defendant under the governing practice, when his interest in the subject matter of the suit is parallel to the plaintiff's and adverse to the interest of the other defendant, is an adversary of his co-defendant, and the resulting judgment is binding between them. 1B J. Moore, Moore's Federal Practice ¶ 0.411[2] at 1284 (2d ed. 1982).
>
> In the action commenced by ITT on April 16, 1980, concerning the ownership of the cherries, the interests of the co-defendant Silver Mill and McMullin were sufficiently adverse for the doctrine of res judicata to apply as between them in subsequent litigation….

*Edelman*, 32 B.R. 783 at 785.

6
13-53846-tjt Doc 5315 Filed 06/13/14 Entered 06/13/14 23:15:12 Page 6 of 10

the merits. *Hooker v. Fed'l Election Comm'n.*, 21 Fed. Appx. 402, 405 n. 2 (6th Cir. 2001). Macomb's claim against the City could have and should have been raised in that Action. Macomb's decision not to join (or realign) the City as a defendant was doubtless a tactical choice, which it believed would maximize a recovery.

### III. THE MACOMB CLAIM IS UNLIQUIDATED; THE *AD DAMNUM* IS NOT MEANINGFUL.

15. The federal decision also shows that the amount of Macomb's asserted damages would be impossible or extremely difficult to prove. As to Macomb's assertion that it overpaid for the Macomb Interceptor System on account of fraudulent charges, Judge Cleland states:

> On the one hand, Macomb Interceptor avers that the entire price of the 15 Mile Interceptor Repair Project was passed on to it through the Acquisition Agreement, and thus, it "paid in full for the 15 Mile Interceptor repair." (Pl. Macomb Interceptor's Resp. to Concurring Defs.' Mot. Summ. J. 24; *see also* Compl. ¶ 44.) But Macomb Interceptor also maintains that the City of Detroit passed on the cost of the Project to users of water and sewerage services in southeast Michigan for at least four years prior to the Acquisition Agreement. (*See* Comp. ¶ 47; Pl. Macomb Interceptor's Resp. to Concurring Defs.' Mot. Summ. J. 29.) The court would therefore be tasked with analyzing usage rates charged to counties, municipalities, and end users over the course of four years to determine what amount was passed on through usage rates and what amount was passed on to Macomb Interceptor through the Acquisition Agreement.

(Opinion at 25.) Judge Cleland described the necessary calculations as "Gordian," and he questioned whether such analysis would even be possible—"Even if this [the damage calculation] were possible, a dubious assumption to say the least…" (Opinion 25-26.)

16. As to damages relating to usage charges, Judge Cleland states:

> Addressing the second claimed injury first—paying higher system usage charges—Macomb Interceptor has proffered no evidence in support of its allegation that as an "end user of the Detroit sewer system" it was "damaged by the scheme because DWSD amortized the inflated costs for the Project into usage charges for the system

> in the years before the Macomb Agreement." (Compl. ¶ 47). Having been created only in 2009 for the express purpose of purchasing the Macomb System, Macomb Interceptor (as opposed to Macomb County—not a party to this suit) apparently never purchased water and sewerage services from the City of Detroit. Nor is there any evidence that the City of Detroit passed on the inflated repair costs by incorporating those costs in the usage charges for the system.

(Opinion at 21-22.) In sum, damages would be difficult or impossible to prove, much less estimate for temporary allowance under Rule 3018(a).

## IV. MACOMB'S ALLEGATION OF VOTE MANIPULATION IS UNFOUNDED.

17. Macomb asserts that the City filed a "last minute" objection "in order to manipulate voting on the Plan…" (Temporary Allowance Motion ¶ 20.) The facts are that Macomb waited until May 5, 2014 to file its Claim, and the City very promptly objected on May 15, 2014—10 days later. Surely, Macomb expected an objection. Given the weakness of the claim and the speculativeness of the damage, it would have been irresponsible for the City to have done otherwise.

## **CONCLUSION**

For the reasons stated, the Temporary Allowance Motion should be denied.

Dated: June 13, 2014
New York, New York

Respectfully submitted,

By: /s/ Claude D. Montgomery
Claude D. Montgomery
Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel:   (212) 768-6700
Fax:   (212) 768-6800
claude.montgomery@dentons.com
carole.neville@dentons.com

Sam Alberts
Dan Barnowski
DENTONS US LLP
1301 K Street, NW, Suite 600 East Tower
Washington, DC 20005
Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com
dan.barnowski@dentons.com

BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins
Paula A. Hall
401 South Old Woodward, Suite 400
Birmingham, Michigan  48009
Direct:  (248) 971-1711
Cell:  (248) 882-8496
Fax:  (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------------x
In re                                             :   Chapter 9
                                                  :
                                                  :   Case No. 13-53846
CITY OF DETROIT, MICHIGAN,                        :
                                                  :   Hon. Steven W. Rhodes
                    Debtor.                       :
                                                  :
                                                  :
---------------------------------------------------------------------x

**CERTIFICATE OF SERVICE**

    I, Claude D. Montgomery, hereby certify that service of the Objection of the Official Committee of Retirees to the Motion for Temporary Allowance of Claim of the Macomb Interceptor Drain Drainage District Pursuant to Rule 3018(a) was filed and served via the Court's electronic case filing and noticing system on June 13, 2014.

                                          /s/ Claude D. Montgomery
                                          Claude D. Montgomery

1