# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---------------------------------X
:
In re                             :   Chapter 11
                                  :
CHARLES STREET                    :   Case No. 12-12292 (FJB)
AFRICAN METHODIST EPISCOPAL       :
CHURCH OF BOSTON                  :
                                  :
        Debtor.                   :
---------------------------------X

**DEBTOR CHARLES STREET AME'S MOTION *IN LIMINE*
TO EXCLUDE APPRAISAL REPORTS OR, IN THE ALTERNATIVE,
<u>FOR JUDICIAL SITE VISIT OF THE ROXBURY RENAISSANCE CENTER</u>**

Pursuant to Fed. R. Bankr. P. 9014 and 7037, Debtor Charles Street African Methodist Episcopal Church of Boston ("<u>Charles Street AME</u>", the "<u>Church</u>," or the "<u>Debtor</u>") respectfully moves *in limine* to preclude Creditor OneUnited Bank ("<u>Creditor,</u>" "<u>OneUnited,</u>" or the "<u>Bank</u>") from (1) making any reference, mention, statement, suggestion, or allusion to, (2) giving any testimony or arguments concerning, or (3) introducing as exhibits (collectively, making "any reference to") new property appraisal reports that were disclosed to the Church after the discovery deadline. In the alternative, the Church requests that the Court make a site visit to the Roxbury Renaissance Center so that the Court may familiarize itself with the property in order to give context to evidence, including the appraisal reports, introduced on the issue of how much value will be added to the RRC upon its completion.

BACKGROUND

1.      On May 24, 2012, pursuant to court order, Charles Street AME submitted document requests and discovery notices to OneUnited Bank. The Church's first document request sought the following:

>Any documents or communications, for the period from January 1, 2009 to present, concerning the value of the Church Building, the Milton Parsonage House, the Old Parsonage House, the Storefronts, or the RRC Property, including, but not limited to, appraisals, requests for appraisals, internal communications among OneUnited's officers and employees, communications with OneUnited's board and committees thereof, and communications with federal and state banking regulators.

See Ex. A, Debtor's Request for Production of Documents, at 1.

2.  At a court-supervised discovery conference on June 6, 2012, OneUnited agreed to produce documents responsive to Charles Street AME's Document Request No. 1, subject to the bank examiner's privilege. On June 19, 2012, the Court entered an order requiring the production of documents responsive to Document Request No. 1, subject to the bank examiner's privilege and any other applicable privilege. See Order Regarding Discovery dated June 19, 2012. The order also provided that all documents must be produced by the Parties "in advance of any depositions." Id.

3.  On June 15, 2012 in response to Document Request No. 1, OneUnited Bank produced appraisal reports that estimated the values of the Church Building, the Milton Parsonage House, the Old Parsonage House, the Storefronts, and the RRC Property (the "Original Appraisals") (OneUnited Bates Nos. 1-292, attached hereto as Ex. B). The Original Appraisals are dated February 28, March 13, 14 and 16, 2012, were prepared for Pierce Atwood, the Bank's counsel, and addressed to Pierce Atwood. There is nothing on the Original Appraisals that reflects that the reports are drafts or preliminary versions.

4.  With respect to the portion of the Church's Document Request No. 1 for "communications with federal and state banking regulators" regarding the property values, the Bank asserted the bank examiner's privilege. In response, on June 26, 2012, at the hearing on the Church's motion to compel, Charles Street AME proposed that the Parties stipulate to the value

of the properties reflected in the Original Appraisals. The Bank declined to stipulate. The Bank failed to inform the Church that its counsel was in possession of revised reports.

5.  The first deposition in this matter was held on July 11, 2012.

6.  On July 18, 2012, the Church deposed Ms. Teri Williams, the President of OneUnited Bank and the Bank's Rule 30(b)(6) deponent. At her deposition, Ms. Williams answered several questions concerning the Original Appraisals. Deposition Transcript of Ms. Teri Williams dated July 18, 2012 ("Williams Tr.") at 20-54. Despite several questions regarding what the Bank had done to ascertain the values of the properties, Ms. Williams did not mention that revised appraisal reports had been received by the Bank. To the contrary, with regard to the RRC, Ms. Williams testified that the value in the Original Appraisal was "a reasonable reflection of the appraised values of the property." Williams Tr. 36:11-38:18. Furthermore, also with respect to the RRC, Ms. Williams expressly testified that the Bank had not performed any analysis beyond obtaining the appraisal report produced. William Tr. 34:23-35:6. At no time during the deposition did Ms. Williams or the Bank's counsel represent that additional appraisal reports had been obtained. *See* Williams Tr. 47:10-48:6 (deponent representing that OneUnited has provided Charles Street AME with all documentation on the valuation of the RRC, the Church and the store fronts).

7.  On August 3, 2012, after notifying Bank's counsel the day prior, the Church served trial subpoenas on the Bank's appraisers, Mr. Robert P. Wood and Edward Broderick. On the very same day and after the service of the subpoenas, the Bank produced "final" appraisal reports different from the original reports for the Church and the RRC, as well as a first appraisal of the property at 5-15 Elm Hill Ave. (the "New Appraisals") (OneUnited Bates Nos. 549 – 704, attached hereto as Ex. C). The New Appraisals bear the same dates as the Original Appraisals --

March 13 for the Church and March 14 for the RRC. Moreover, the reports produced and the accompanying cover letters were again addressed to Pierce Atwood, the Bank's counsel.

8. One of the differences between the Original and the New Appraisals is that with regard to the value of the RRC, the New Appraisals are premised on the RRC being 93% complete and the Original Appraisals are premised on the RRC being 70-77% complete. The Original Appraisal valued the RRC "as is" at $1.3 million and "as complete" at $2.2 million. The New Appraisal (which is dated the same as the original) values the RRC "as is" at $2.3 million and "as complete" at $2.6 million.

## ARGUMENT

9. The Bank's failure to produce the appraisal reports in a timely manner and prior to the start of depositions is entirely inexplicable. All New Appraisals were delivered in March; all were delivered to counsel. Until the Bank and/or its counsel provide sworn explanation for the lack of disclosure, these documents, produced after the discovery deadline, simply have to be excluded. *See* August 3, 2012 Email of L. Vesely attached hereto as Ex. D.

10. The issue of the appraisal values received substantial attention, both in the context of the Church's motion to compel and the deposition of Ms. Teri Williams. With the focus on the appraisal values, how is it that neither OneUnited nor its counsel produced, or even mentioned, that the Bank had in its possession New Appraisals that value the RRC property <u>at $1 million more</u> than the Original Appraisal?

11. The Church will be prejudiced if the Bank is allowed to present evidence concerning the New Appraisals. Up until 12 days before trial, the Church relied on the Bank's Original Appraisals and even offered to stipulate that the values were no higher that the Bank's values. Now, on the eve of trial, OneUnited seeks to produce New Appraisals with drastically

higher appraisal values. The Church is harmed because it has had not had the opportunity to depose the Bank or its appraisers with regard to the differences in the appraisal reports.[1] Indeed, the Church served trial subpoenas on the Bank's appraisers on the very same day that the New Appraisals were produced, with the intention of introducing the Original Appraisals into evidence through the appraisers at the Plan confirmation hearing.

12.    Furthermore, the issue of how much value is added upon the completion of the RRC – $900,000 in the Original Appraisal or $300,000 in the New Appraisal – may be of importance in the assessment of the value added to the Plan by the First District's contribution of $1.5 million, which will be used to complete the RRC. It is not clear whether the Bank is making that argument. The Church should not be disadvantaged in proving that the completion of the RRC adds substantial value to the Bank's collateral because the Bank introduced new appraisal evidence on the eve of trial.

13.    Under Fed. R. Bankr. P. 7037, the preclusion of the untimely disclosed New Appraisals is an appropriate remedy. *See* Fed. R. Civ. P. 37(c)(1).

14.    In the alternative, the Church requests that the Court make a judicial site visit to the RRC in order to give context to evidence on the extent of the completion of the RRC and how much value will be added upon its completion. *See Northwestern National Casualty Co. v. Global Moving & Storage, Inc.*, 533 F.2d 320, 323 (6th Cir. 1976) (finding that trial judge may in his discretion view the premises that are the subject of the litigation). With such varying evidence concerning the value added by completing the RRC, taking a view of the RRC in its present condition will give useful context.

---

[1] On August 3, with trial looming, the Bank casually offered to participate in a depositions with regard to the New Appraisals. Not surprisingly, the Church rejects that as unacceptable.

5

WHEREFORE, the Debtor respectfully requests that this Court grant its motion *in limine* and preclude the Creditor from making any reference to the New Appraisals at the Plan confirmation hearing or, in the alterative, take a view of the RRC.

Dated: Boston, Massachusetts
      August 14, 2012

Respectfully submitted,

On behalf of: CHARLES STREET AME

By its attorneys,

   /s/     D. Ross Martin
D. Ross Martin (BBO No. 629853)
Giselle J. Joffre (BBO No. 658047)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050

E-mail:
    ross.martin@ropesgray.com
    giselle.joffre@ropesgray.com

Counsel to the Debtor