STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

HYDE PARK COOPERATIVE, a Michigan Non-profit
corporation, VILLAGE CENTER ASSOCIATES LIMITED
DIVIDEND HOUSING ASSOCIATION, BOWIN PLACE
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, CAMBRIDGE TOWER ASSOCIATES
LIMITED DIVIDEND HOUSING ASSOCIATION,
FENIMORE LIMITED DIVIDEND HOUSING
ASSOCIATION, MILLENDER CENTER ASSOCIATES
LIMITED PARTNERSHIP, PLYMOUTH SQUARE
LIMITED DIVIDEND HOUSING ASSOCIATION,
FOUNTAIN COURT CONSUMER HOUSING
COOPERATIVE,

10-005687-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/17/2013 2:24:37 PM
Case No. 10-005687-CZ M. GARRETT
HON: Maria L. Oxholm

       Plaintiffs,

v

CITY OF DETROIT, by and through its BUILDINGS
AND SAFETY ENGINEERING DEPARTMENT,

       Defendant.

| | |
|---|---|
| BECKER & WASVARY, P.L.L.C.<br>By: CARL G. BECKER (P10608)<br>By: MARK K. WASVARY (P51575)<br>Attorneys for All Plaintiffs Except<br>Fountain Court<br>2401 W. Big Beaver Rd., Suite 100<br>Troy, MI 48084<br>(248) 649-5667 | PENTIUK, COUVREUR & KOBILJAK PC<br>By: RANDALL A. PENTIUK (P32556)<br>Attorneys for Plaintiff, Fountain Court<br>2915 Biddle Ave., Suite 200<br>Wyandotte, MI 48192<br>(734) 281-7100 |

MICHAEL M. MULLER (P38070)
Attorney for Defendant
Litigation Division City of Detroit
2 Woodward Ave., Suite 500
Detroit, MI 48226
(313) 237-5052

## MOTION FOR NEW SCHEDULING ORDER
## AND LEAVE TO FILE SECOND AMENDED COMPLAINT

NOW COMES, Plaintiffs, Hyde Park Cooperative, Village Center Associates Limited

Dividend Housing Association, Bowin Place Associates Limited Dividend Housing Association, Cambridge Tower Associates Limited Dividend Housing Association, Fenimore Limited Dividend Housing Association, Millender Center Associates Limited Partnership, Plymouth Square Limited Dividend Housing Association, and for this Motion for New Scheduling Order pursuant to MCR 2.401 and to file Second Amended Complaint relies on the Brief in Support of this Motion.

WHEREFORE, it is prayed this Honorable Court enter a new scheduling order, grant leave to file a Second Amended Complaint and grant such other and different relief as is just and equitable.

Respectfully submitted,

BECKER & WASVARY, P.L.L.C.

By: /s/ Mark K. Wasvary
MARK K. WASVARY P51575
Attorneys for Plaintiffs
2301 W. Big Beaver Rd., Suite 318
Troy, MI 48084
(248) 649-5667
email: markwasvary@hotmail.com

DATED: July 15, 2013

PROOF OF SERVICE
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on 7/17/13

By: ☒ U.S. Mail          ☐ FAX
☐ Hand Delivered          ☐ Overnight Courier
☐ Certified Mail          ☐ Other:

Signature /S/ Mark K. Wasvary

2

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

HYDE PARK COOPERATIVE, a Michigan Non-profit
corporation, VILLAGE CENTER ASSOCIATES LIMITED
DIVIDEND HOUSING ASSOCIATION, BOWIN PLACE
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, CAMBRIDGE TOWER ASSOCIATES
LIMITED DIVIDEND HOUSING ASSOCIATION,
FENIMORE LIMITED DIVIDEND HOUSING
ASSOCIATION, MILLENDER CENTER ASSOCIATES
LIMITED PARTNERSHIP, PLYMOUTH SQUARE
LIMITED DIVIDEND HOUSING ASSOCIATION,
FOUNTAIN COURT CONSUMER HOUSING
COOPERATIVE,

Case No. 10-005687-CZ
HON: Maria L. Oxholm

        Plaintiffs,

v

CITY OF DETROIT, by and through its BUILDINGS
AND SAFETY ENGINEERING DEPARTMENT,

        Defendant.

| | |
|---|---|
| BECKER & WASVARY, P.L.L.C.<br>By: CARL G. BECKER (P10608)<br>By: MARK K. WASVARY (P51575)<br>Attorneys for All Plaintiffs Except<br>Fountain Court<br>2401 W. Big Beaver Rd., Suite 100<br>Troy, MI 48084<br>(248) 649-5667 | PENTIUK, COUVREUR & KOBILJAK PC<br>By: RANDALL A. PENTIUK (P32556)<br>Attorneys for Plaintiff, Fountain Court<br>2915 Biddle Ave., Suite 200<br>Wyandotte, MI 48192<br>(734) 281-7100 |

MICHAEL M. MULLER (P38070)
Attorney for Defendant
Litigation Division City of Detroit
2 Woodward Ave., Suite 500
Detroit, MI 48226
(313) 237-5052

## BRIEF IN SUPPORT OF MOTION FOR NEW SCHEDULING ORDER AND LEAVE TO FILE SECOND AMENDED COMPLAINT

The instant matter is before the Court following a remand to this Court from the

Michigan Court of Appeals and a per curiam clarification as to damages from the Michigan Supreme Court.

On May 18, 2010 the instant lawsuit was filed and following some discovery and multiple meetings between the parties' counsel, Motions for Summary were filed by all parties. On February 28, 2011 the Honorable Michael F. Sapala denied Plaintiff's Motion for Summary Disposition and granted Summary Disposition in favor of Defendant, City of Detroit.

On July 24, 2012 the Court of Appeals for the State of Michigan rendered an Opinion reversing in part and remanding the case to this Honorable Court for further proceedings (see Exhibit A). Plaintiff's filed a Motion for Reconsideration which was denied on September 25, 2012 (see Exhibit B). Plaintiffs timely filed an Application for Leave to Appeal with the Michigan Supreme Court. On April 26, 2013, the Michigan Supreme Court issued an Order vacating footnote 5 of the Court of Appeals Opinion but otherwise affirming the Court of Appeals.

Following the Order of the Michigan Supreme Court, Plaintiff's counsel made inquiries with this Court regarding the status of the case and finally hand delivered a letter to this Honorable Court requesting a conference with the Court with all parties present. That letter was hand delivered on May 29, 2013 (see Exhibit C).

This matter has been on Appeal for over two years, and all dates have expired in the original Scheduling Order. This matter was filed as a Class Action with complex issues which necessitated Plaintiff to obtain rulings in both the Michigan Court of Appeals and Michigan Supreme Court. In light of the rulings, more discovery will be necessary and likely there is a need for additional Motions, including the encompassed Motion to Amend

2

the Complaint of Plaintiffs (other than Fountain Court) a second time to adequately and appropriately plead the case in further conformity with the opinions of the Court of Appeals and the Supreme Court. Attached as Exhibit D is the proposed Second Amended Complaint. (Exhibits of Second Amended Complaint omitted).

MCR 2.401 gives broad discretion to the Court in regard to scheduling in order to facilitate the progress of the case.

> More than one such order may be entered in a case. MCR 2.401(B)(2)

> The scheduling of events under this sub-rule shall take into consideration the nature and complexity of the case, including the issues involved, the number and location of the parties and potential witnesses, including experts, the extent of expected and necessary discovery, and the availability of reasonably certain trial dates. MCR 2.401(B)(2)(b)

> Whenever reasonably practical, the scheduling of events under this sub-rule shall be made after meaningful consultation with all counsel of record. MCR 2.401(B)(2)(d)

MCR 2.118 provides that leave must be secured to file an amendment after 14 days have elapses from a responsive pleading. (MCR 2.118(A)(2)). However, "leave should be freely given when justice so requires". Id. In this instance both the Court of Appeals and the Supreme Court gave a full analysis of the issues this dispute presented to it and the Defendant has raised additional issues in regard to the application of Headlee if the Defendant is found liable. Plaintiff seeks to essentially have the Complaint now correspond to the legal and factual issues raised which is not too dissimilar to the purpose seeking an amendment to conform to the evidence. MCR 2.118(c).

WHEREFORE, it is prayed this Honorable Court enter a new scheduling order, grand leave to file Plaintiffs' Second Amended Complaint, and grant such other and different relief as is just and equitable.

3

Respectfully submitted,

BECKER & WASVARY, P.L.L.C.

By: /s/ Mark K. Wasvary

MARK K. WASVARY P51575
Attorneys for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667
email: markwasvary@hotmail.com

DATED: July 16, 2013

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was
served pon all parties to the above cause to each of the attorneys
of record herein at their respective addresses disclosed on the
pleadings on _____ ☐ ☐ ☐ 7 17 13

By: ☒ U.S. Mail          ☐ FAX
    ☐ Hand Delivered      ☐ Overnight Courier
    ☐ Certified Mail       ☐ Other:

Signature /s/ Mark K Wasvary

4

# STATE OF MICHIGAN

# COURT OF APPEALS



HYDE PARK COOPERATIVE, VILLAGE
CENTER ASSOCIATES LIMITED DIVIDEND
HOUSING ASSOCIATION, BOWIN PLACE
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, CAMBRIDGE TOWER
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, FENIMORE LIMITED
DIVIDEND HOUSING ASSOCIATION,
MILLENDER CENTER ASSOCIATES LIMITED
PARTNERSHIP, PLYMOUTH SQUARE
LIMITED DIVIDEND HOUSING
ASSOCIATION, and FOUNTAIN COURT
CONSUMER HOUSING COOPERATIVE,

UNPUBLISHED
July 24, 2012

      Plaintiffs-Appellants,

v

No. 303143
Wayne Circuit Court
LC No. 10-005687-CZ

CITY OF DETROIT, and BUILDINGS AND
SAFETY ENGINEERING DEPARTMENT,

      Defendant-Appellee.

Before: O'CONNELL, P.J., AND JANSEN AND RIORDAN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order denying their motion for summary disposition and granting defendant's motion for summary disposition. We affirm in part, reverse in part. We remand for consideration of whether the inspection fee charged in this case was reasonable.

Plaintiffs are owners of multi-family cooperatives and apartment buildings located in the City of Detroit (Detroit). Pursuant to the Detroit Property Maintenance Code (PMC),[1] the Detroit Buildings and Safety Engineering Department performs annual or close to annual inspections of these multi-family residential dwellings. At issue in this appeal is the inspection

---

[1] The PMC is part of the Detroit City Code.

13-53846-tjt    Doc 5394-1    Filed 06/18/14    Entered 06/18/14 11:40:11    Page 7 of 33

fee Detroit collects for the inspections, which accounts for direct and indirect costs such as inspection time, mileage, car expenses, and pro rata clerical, administrative, and overhead expenses. The size of the building is also used to estimate the time required for the inspection and according to the Department's fee schedule, inspection fees are also dependent on the type of building subject to inspection.

## I. BACKGROUND

Plaintiffs' initiated this lawsuit claiming that the PMC's inspection fee provision conflicts with the Housing Law of Michigan (Housing Law), MCL 125.401 *et seq.*, because the Housing Law only authorizes an inspection fee for the "actual, reasonable cost" of the inspection. According to plaintiffs, the "actual, reasonable cost" standard imposed under the Housing Law limits the inspection fee to the direct cost of the pro rata share of the inspector's annual monetary compensation for the actual time the inspector spends performing the inspection. Plaintiffs sought monetary damages equal to the inspection fees charged in excess of the actual, reasonable cost of the inspection and injunctive relief to enjoin defendant from charging the alleged excessive fees under the PMC.

Plaintiffs' filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing that the Housing Law preempts the PMC. Defendant also moved for summary disposition, arguing that any violation of the Housing Law does not give rise to a claim for damages as a matter of law and that plaintiffs' claim for injunctive relief should also be dismissed as a matter of law. After oral arguments, the trial court denied plaintiffs' motion for summary disposition and request for a preliminary injunction and granted summary disposition in favor of defendant. The trial court found that the inspection fee collected was done pursuant to the PMC, not the Housing Law, and that even if that was not the case, the Housing Law did not conflict with the PMC because "actual, reasonable cost" includes indirect costs. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

A grant or denial of a motion for summary disposition is reviewed de novo. *McLean v McElhaney*, 289 Mich App 592, 596; 798 NW2d 29 (2010). Additionally, "[w]hether a state statute preempts a local ordinance is a question of statutory interpretation-a question of law that this Court reviews de novo." *Charter Twp of Shelby v Papesh*, 267 Mich App 92, 98; 704 NW2d 92 (2005).

## III. ANALYSIS

### A. Applicability of the Housing Law

The Housing Law "establishes minimum requirements for the health, welfare and safety of the community . . . ." *Foote v City of Pontiac*, 161 Mich App 60, 65; 409 NW2d 756 (1987); MCL 125.408. The Housing Law requires the inspection of multi-family residential dwellings at least every four years and provides the basis for an enforcing agency to perform the inspections

of regulated dwellings. MCL 125.526(1) & (4).[2] Specifically, MCL 125.526(1) provides that "[t]he enforcing agency shall inspect multiple dwellings and rooming houses regulated by this act in accordance with this act." While municipalities are not required to adopt the Housing Law, they may not dispense with the minimum standards set forth in it. MCL 125.543; MCL 125.408. Thus, while the minimum standards must be met, "every city and local unit may establish requirements *higher* than those set out in the [Housing Law]." *Foote*, 161 Mich App at 65 (emphasis added).

Detroit adopted the PMC as its housing code, which was modeled after the 2000 International Property Maintenance Code (IPMC). Detroit City Code § 9-1-1.[3] The IPMC was developed by the International Code Council, Inc., and Detroit adopted it in order to "establish[] the minimum legal requirements for maintenance, inspection and reinspection of all buildings." Detroit City Code § 9-1-1 & 9-1-4(a). Purportedly, any provisions of the IPMC conflicting with Michigan law were not adopted. Detroit City Code § 9-1-1.

A threshold inquiry involves the relationship between the Housing Law and the PMC, and whether the Housing Law provision about inspection fees, MCL 125.526(12), applies to inspections completed pursuant to the PMC. We conclude that the Housing Law does apply to inspections completed pursuant to the PMC. By its very terms, the Housing Law applies to inspections of multi-family residential dwellings in cities, such as Detroit, that meet a threshold population requirement. MCL 125.401; MCL 125.402. Moreover, while a city is not required to adopt the Housing Law, a city is required to implement the minimum requirements of the Housing Law. MCL 125.408. Thus, no matter which housing code is adopted, a city still must comply with the minimum requirements of the Housing Law in order to be in compliance with state law. Furthermore, the PMC specifically references compliance with the Housing Law in the context of inspections. The PMC states that "[t]he director of the buildings and safety engineering department . . . shall conduct inspections to obtain compliance with this article based upon at least one (1) of the following[,]" including "the Housing Law of Michigan, being MCL 125.401 et seq." Detroit City Code § 9-1-35(d)(11). Thus, the expressed intent of the PMC is compliance with the Housing Law.

---

[2] Under the housing law, a governing body of a municipality must designate an officer or agency to be in charge of administering the provisions of the act. MCL 125.523.

[3] Pursuant to the Home Rule City Act, MCL 117.1 *et seq.*, home rule cities, like Detroit, are given the "specific authority to enact ordinances in order to advance the interests of the city." *Mich Coal For Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 407; 662 NW2d 864 (2003); see also *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003). The Home Rule City Act also specifically grants home rule cities the authority to adopt a property maintenance code. MCL 117.3(k). However, the power to adopt ordinances relating to municipal concerns is subject to the state constitution and state law. *Mich Coalition*, 256 Mich App at 408, citing *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 256-257; 566 NW2d 514 (1997).

Therefore, contrary to defendant's argument, the fact that inspections are conducted under the authority of the PMC does not relieve Detroit of its duty to comply with the inspection requirements of the Housing Law for multi-family residential dwellings. See MCL 125.408 ("[n]o ordinance, regulation, ruling or decision of any municipal body . . . shall repeal, amend, modify or dispense with any of the said minimum requirements laid down in this act . . . .") Therefore, when Detroit conducts inspections to ensure compliance with the PMC, the inspection also must comply with the requirements of the Housing Law, including the requirement limiting the inspection fee to the "actual, reasonable cost of providing the inspection" under MCL 125.526(12).

We also conclude that the state Housing Law does not preempt the PMC. In order to determine if "a municipal ordinance is preempted by state law[,]" this Court looks at whether "1) the statute completely occupies the field that the ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Mich Coal For Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 408; 662 NW2d 864 (2003); quoting *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). While the Housing Law is certainly pervasive, it does not completely occupy the field of housing regulations. In fact, the Housing Law provides only "the minimum requirements adopted for the protection of health, welfare, and safety of the community," and specifically grants cities the authority to "impos[e] requirements higher than the minimum requirements laid down in this act . . . ." MCL 125.408. Furthermore, the Housing Law explicitly states that "[t]his act does not preempt, preclude, or interfere with the authority of a municipality to protect the health, safety, and general welfare of the public through ordinance, charter, or other means." MCL 125.534(8). Hence, "[w]hen the language of a statute is unambiguous, [as here,] the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

Moreover, we do not interpret the PMC's inspection fee provision to be in conflict with the Housing Law's inspection fee provision. As noted in *USA Cash # 1, Inc v City of Saginaw*, 285 Mich App 262, 267; 776 NW2d 346 (2009), "[f]or purposes of preemption, a direct conflict exists between a local regulation and a state statute when the local regulation permits what the statute prohibits or prohibits what the statute permits." However, "[i]t is well established . . . that a local ordinance that regulates in an area where a state statute also regulates, with mere differences in detail, is not rendered invalid due to conflict." *Id.*

The PMC's inspection fee provision states:

[t]he director of the buildings and safety engineering department shall establish fee schedules, including fees for . . . inspections, pertaining to all buildings, premises, and structures that are subject to inspection or reinspection under this article and are determined to be necessary for the administration of this article, subject to the approval of the buildings and safety engineering department board of rules, and collection procedures for services. The fees authorized by this section shall cover the costs of rendering such services and be equitable and sufficient to cover, insofar as possible to determine, the cost incurred by the buildings and safety engineering department in the administration and enforcement of this article. Fees established pursuant to this section shall be

-4-

reviewed, revised, and approved, as necessary, in accordance with this section. [Detroit City Code§ 9-1-34(a).]

The Housing Law's inspection fee provision, MCL 125.526(12), states:

> [t]he enforcing agency may establish and charge a reasonable fee for inspections conducted under this act. The fee shall not exceed the actual, reasonable cost of providing the inspection for which the fee is charged. An owner or property manager shall not be liable for an inspection fee if the inspection is not performed and the enforcing agency is the direct cause of the failure to perform.

Plaintiffs attempt to narrowly limit the phrase "actual, reasonable cost" to only the direct costs of the pro rata share of the inspector's annual monetary compensation for the actual time the inspector spends performing the inspection. In determining whether plaintiffs' interpretation is correct, we are mindful of the principles of statutory interpretation. The "primary goal" of statutory interpretation "is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). When the language is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002) (internal citations and quotations omitted). A statutory provision must be read in the context of the entire act, and "every word or phrase of a statute should be accorded its plain and ordinary meaning." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).

The Housing Law, MCL 125.526(12), does not state that an inspection fee may only be charged for "direct" costs. Instead, it limits the fee applicable to inspections to the "actual, reasonable cost of providing the inspection." MCL 125.526(12).[4] The phrase "actual, reasonable cost" is not defined by the Housing Law and, thus, this Court can refer to dictionary definitions to ascertain its common meaning. *Klida v Braman*, 278 Mich App 60, 65; 748 NW2d 244 (2008). The word "actual" is defined as "existing in reality or in fact; not merely possible, but real; as it really is." *Webster's New World Dictionary Second College Edition* (1984). As argued by defendant, the "actual" or "real" cost of providing an inspection includes not only the inspector's salary, but also the indirect costs associated with providing an inspection service, such as the administrative and enforcement overhead of the Department in charge of the inspection. The indirect costs incurred by the Department in providing an inspection are "real" components of the actual cost of the inspection, as they exist in reality and are a result of the inspection.

### B. Reasonableness

Thus, the Housing Law applies to inspections performed pursuant to the PMC and the two statutes do not conflict. In regard to whether the inspection fee charged in this case was reasonable, however, there has been insufficient factual development for us to review this issue.

---

[4] The fee provision of the Housing Law was amended in 1997 to add the word "actual."

Plaintiffs submitted the general fee schedule suggesting that inspection fees charged for similar buildings vary significantly. Without any factual development explaining why these fees may, or may not, be reasonable we are unable to determine whether summary disposition was properly granted.

## IV. CONCLUSION

The Housing Law applies to inspections performed under the PMC and we affirm the trial court's ruling that the Housing Law does not conflict with the PMC and may account for indirect costs. We affirm in part, reverse in part. We remand for consideration of whether the inspection fee charged in this case was reasonable.[5] We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Kathleen Jansen
/s/ Michael J. Riordan

---

[5] We note that plaintiffs would not be entitled to money damages. The Housing Law does not expressly authorize a private cause of action against a municipality for money damages. See MCL 125.401 *et seq.* Furthermore, while plaintiffs now claim that there was a genuine issue of material fact regarding the proportionality of the inspection fee, plaintiffs did address this claim in the lower court and the trial court did not decide this issue. "An issue is not properly preserved for appeal if not raised in the [lower court], and we need not address arguments first raised on appeal." *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660 (2009).

-6-



EXHIBIT
B

Court of Appeals, State of Michigan

ORDER

Peter D. O'Connell
Presiding Judge

Hyde Park Cooperative v City of Detroit

Kathleen Jansen

Docket No. 303143

LC No. 10-005687-CZ

Michael J. Riordan
Judges

The Court orders that the motion for reconsideration is DENIED.

_____
Presiding Judge



A true copy entered and certified by Larry S. Royster, Chief Clerk, on

SEP 2 5 2012
Date

_____
Chief Clerk



INDIVIDUAL ATTORNEY:
Mark K. Wasvary

May 29, 2013

VIA HAND DELIVERY

Clerk to the Honorable Maria L. Oxholm
Wayne County Circuit Court
Detroit, MI 48226

RE:   Hyde Park Cooperative et. al v City of Detroit
      Case No. 10-005687-CZ

Dear Clerk,

     I contacted Judge Oxholm's courtroom on May 29, 2013 and advised that the parties in the above matter have requested a Scheduling Conference with Judge Oxholm. The above matter had been in front of Judge Sapala. It went up to the Michigan Court of Appeals and was remanded in an Order dated July 24, 2012 which is attached hereto. The matter was then Appealed to the Michigan Supreme Court which made its ruling on April 26, 2013. The Supreme Court Ruling is also attached. There has been very little discovery in the matter and it has been filed as a Class Action which will necessarily involve a Motion for Class Certification. Given the complexities of the matter, the parties are requesting an in-person conference, rather than just a Scheduling Order.

     Please advise if the Court will schedule a conference with counsel. Thank you for your attention to this matter.

Yours truly,

BECKER & WASVARY, P.L.L.C.

Mark K. Wasvary

MKW/js

enclosures

cc:   Carl Becker, Esq.
      Mike Muller, Esq.



# IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

HYDE PARK COOPERATIVE, a Michigan Non-profit
corporation, VILLAGE CENTER ASSOCIATES LIMITED
DIVIDEND HOUSING ASSOCIATION, BOWIN PLACE
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, CAMBRIDGE TOWER ASSOCIATES
LIMITED DIVIDEND HOUSING ASSOCIATION,
FENIMORE LIMITED DIVIDEND HOUSING
ASSOCIATION, MILLENDER CENTER ASSOCIATES
LIMITED PARTNERSHIP, PLYMOUTH SQUARE
LIMITED DIVIDEND HOUSING ASSOCIATION,
FOUNTAIN COURT CONSUMER HOUSING
COOPERATIVE,

Case No. 10-005687
HON: Maria L. Oxholm

Plaintiffs,

v

CITY OF DETROIT, by and through its BUILDINGS
AND SAFETY ENGINEERING DEPARTMENT,

Second Amended Class
Action Complaint for
Injunction and Damages

Defendant.

/

BECKER & WASVARY, P.L.L.C.
By: CARL G. BECKER (P10608)
By: MARK K. WASVARY (P51575)
Attorneys for All Plaintiffs except
Fountain Court
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

MICHAEL M. MULLER (P38070)
Attorney for Defendant
Litigation Division City of Detroit
2 Woodward Ave., Suite 500
Detroit, MI 48226
(313) 237-5052

PENTIUK, COUVREUR & KOBILJAK PC
By: RANDALL A. PENTIUK (P32556)
Attorneys for Plaintiff, Fountain Court
2915 Biddle Ave., Suite 200
Wyandotte, MI 48192
(734) 281-7100

/

Another lawsuit arising out of the same transaction or occurrence was filed in the
United States District Court for the Eastern District of Michigan and assigned
case number 09-CV-13269. That matter was dismissed without prejudice on
March 3, 2010 and is no longer pending.

/S/ Mark K Wasvary
Mark K. Wasvary

## SECOND AMENDED CLASS ACTION
## COMPLAINT FOR INJUNCTION AND DAMAGES

NOW COME, Plaintiffs other than Fountain Court Consumer Housing Cooperative, individually and on behalf of all others similarly situated, by and through the undersigned attorneys from BECKER & WASVARY, P.L.L.C. and for this Second Amended Class Action Complaint state as follows:

### COMMON ALLEGATIONS

1.    This action is brought on behalf of a class of owners of residential buildings subject to inspection which have been charged inspection fees that are not based on the actual, reasonable cost of the inspection for which the fee is charged and/or are being and have been charged fees in excess of that which is proportionate to the costs of the service.

2.    The Detroit Buildings and Safety Engineering Department is the entity designated by the City of Detroit to enforce the Detroit Property Maintenance Code ("PMC") commonly referred to as the Blight Ordinance and is the "enforcing agency" covered under what is commonly referred to as the Housing Law of Michigan (MCL 125.401 et.seq.) ("Housing Law").

3.    The Court of Appeals in this case has ruled that while the PMC and the Housing Law are co-extensive, the Housing Law's minimum compliance obligations must be met by Defendant;

4.    Section 9-1-36 of the Detroit ordinance references the duty to have a certificate of compliance issued at certain time intervals and states as follows:

> As required by this article, certificates of compliance for buildings and structures shall be issued upon inspection by the Buildings and Safety Engineering Department, correction of any violations, and a determination by the Buildings and Safety Engineering Department that the building or structure is in compliance with this article. (Emphasis added.) (City of

Detroit Code of Ordinances Section 9-1-36(b)).

5. The inspections and the enforcement ordinance 9-1-35(d) cover all buildings of public assembly, buildings used for manufacturing and industrial purposes, commercial buildings including storage yards, signs, fences, etc. and places of occupancy as covered by the Housing Law of Michigan (125.401et seq.)

6. The Defendant as part of its inspection fee has allocated to owners of residential property, administrative cost, enforcement and unpaid inspection fees by offenders other than the owners of the residential property being inspected rather than on the actual, reasonable time spent at a given location during the inspection process or costs proportionate to the service being rendered.

7. Section 9-1-34(a) of the Code states as follows:

> The director of the Buildings and Safety Engineering Department shall establish fee schedules, including fees for Certificates of Compliance, Certificates of Registration, and inspections, pertaining to all buildings, premises, and structures that are subject to inspection or re-inspection under this article and are determined to be necessary for the administration of this article... The fees authorized by this section shall cover the costs of rendering such services and be equitable and sufficient to cover, in so far as possible to determine, the cost incurred by the Buildings and Safety Engineering Department in the administration and enforcement of this article. [Emphasis added.]

8. Section 9-1-34 of the Ordinance permits the Defendant to apply some general overall formula to its charges, for its overhead, not the actual inspection cost, and in addition tens of thousands of dollars are charged to certain large developments when inspections take less than a day and in some instances less than one hour. This, upon information and belief, will be evidenced by the number of inspections occurring in

3

a workday by Defendant's inspectors.

9. The fee structure established by the Defendant for the inspection of multifamily residential property provides different rates depending upon what type of person is the occupant and/or the title holder, and in performing exterior inspections draws no difference between horizontal square footage and vertical square footage or the number of units available for occupancy contained in a given set of square footage. Further, the Defendant established an hourly rate for re-certification following initial inspections at $134.00 per hour, when charging class members as much as 100 times that amount for initial inspections, which are at most exterior and interior common areas inspections.

10. The fees are not actual/reasonable or proportionate to the cost of the service being rendered.

11. Upon information and belief, the fees are charged to the class members to support inadequate fees charged to or collected from other enterprises not making up the class and/or to pay for the defaults of other inspected property owners, even though there are enforcement and fine provisions in place to cover the problem.

12. The Defendant in establishing the fees had no finalized analysis made to determine the proportionate costs or actual, reasonable costs incurred to inspect the properties owned by the Members of the class.

13. The Michigan Housing Law MCL 125.526 requires that the fee charged by an enforcing agency not exceed the actual, reasonable cost of providing the inspection only.

4

The enforcement agency may establish and charge a reasonable fee for inspections conducted under this act. Fees shall not exceed the actual, reasonable cost of providing the inspection for which the fee is charged. An owner or property manager shall not be liable for an inspection fee if the inspection is not performed and the enforcing agency is the direct cause of the failure to perform. MCL 125.526(12)

14. The Housing Law of Michigan MCL 125.408 provides that no ordinance enacted or enforced by any municipality shall violate its minimum requirements in regard to covered properties. MCL Section 125.408.

15. Prior to the enactment of the existing law in 1997 under P.A. 200 the inspection law only required that the cost of inspection be "reasonable".

16. The legislative history of the amendment demonstrates that the amendment was enacted to prohibit an enforcing agency from charging more for an inspection than what an inspection costs to provide, and then only to dwellings covered by the Housing Law, not commercial, industrial or manufacturing buildings or buildings of public assembly.

17. The ordinance fee schedule is in excess of the Housing Law limitations, is not based on reasonable standards and violates the PMC itself as not being proportionate to the costs of the services.

18. The actual, reasonable cost of an inspection can only be based on the time an inspector takes to examine a property using as a component the hourly charge for re-inspections, plus acceptable indirect costs, attributable to housing inspections if that amount is not in excess of the actual, reasonable and proportionate costs incurred to inspect dwelling units without regard to other commercial or industrial enterprises.

5

19.     Further, inspections now are only performed on exterior space, yet the fee charged at present is based on interior square footage of the building which is illogical when comparing a single story building to a multi-storied building both having the same exterior "foot print".

20.     Initially, the Defendant used that formula without regard to the number of inspectors involved or the time they expend, and can be compensated by as much as $4,350.00 per building, even if only one inspector inspects and such inspection takes less than one hour, but then limits itself on a re-inspection to a minimum hourly rate of $134.00 per hour and $67.00 for half hour intervals or less.

21.     The structure of the ordinance does not encourage or assist lay people in understanding the impropriety of the charges, and given the ramifications of not paying the excessive charges, tickets are issued which result in fines and enforcement of the excessive charges and can further result in the statutory and ordinance requirement that rent be suspended, buildings be vacated, judgment and judgment liens become enforceable, and since time is lost in attending dispute hearings, and because of the inherent risk of suspension, forfeitures, fines, etc. payments are made under duress and are involuntary.

22.     The doctrine of ultra vires precludes a city from engaging in a course of conduct where it lacks the authority to do so by Constitution, Statute, or other law.

23.     All persons subject to the conduct of the Defendant pay the charges involuntarily as the Defendant, through its notices, threatens that failure to pay will result in enforceable judgments and liens for which the property is subject to execution,

6

foreclosure and removal of all occupants and indicia of occupancy.

24.    No doubt hundreds of thousands of dollars and perhaps millions of dollars have been collected by the Buildings and Safety Engineering Department without lawful authority and continue to be collected as of the date of filing this Second Amended Complaint.

25.    The actions of the Defendant are in contradiction to the Housing Laws of the State, the Defendant's own PMC and if the fees are excessive, then as acknowledged by Defendant in other pleadings, the Headlee provisions of the Michigan Constitution.

## PARTIES

26.    Plaintiff, Hyde Park Cooperative is a housing cooperative located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets purportedly under City of Detroit ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

27.    Plaintiff Bowin Place Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

28.    Plaintiff Cambridge Tower Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit

7

Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

29. Plaintiff Fenimore Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

30. Plaintiff Millender Center Associates Limited Partnership is a domestic limited partnership providing residential housing located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

31. Plaintiff Plymouth Square Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

32. Plaintiff Village Center Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

8

33.    Defendant, City of Detroit is a municipal corporation which enforces the Detroit Property Maintenance Code through its Buildings and Safety Engineering Department and is located in the City of Detroit, County of Wayne, State of Michigan and is an enforcement agency as defined by the Michigan Housing Law.

## JURISDICTION AND VENUE

34.    Plaintiffs incorporate paragraphs 1 through 33 as if more fully set forth herein.

35.    Jurisdiction and venue are properly before this Court by reason of Defendant's location, the amount in controversy and the subject matter of the claim.

## CLASS ALLEGATIONS

36.    Plaintiffs incorporate paragraphs 1 through 35 as if more fully set forth herein.

37.    All Plaintiffs and class members have suffered and continue to suffer similar harm due to being improperly assessed charges under duress through the Buildings and Safety Engineering Department under threat of liens, forfeiture, and removal of all lawful occupants, suspension of rent and constructive closures of their respective businesses and/or operations.

38.    Class Definition: Plaintiffs seek to certify the following class:

Class - All entities and persons constituting owner's of buildings and properties subject to the provisions of the Housing Law of Michigan (MCL 125.401 et. seq.) and the application of the Property Maintenance Code under the Housing Law which or who were charged inspection fees by Defendant that exceed Defendant's actual, reasonable

9

cost for the inspection and/or were not proportionate to services rendered. Plaintiffs seek a class period dating back to the initiation of such charges or six years prior to the filing of the Federal litigation on August 19, 2009, less the lapse of time between dismissal of that litigation and the filing of this litigation, whichever is sooner, or if Headlee applies, a class period going back to one year prior to the filing of the Federal litigation on August 19, 2009, less the lapse of time between dismissal of that and the filing of this litigation.

39.     Numerosity.     The proposed class is so numerous that joinder of all members is impracticable.     While the exact number of class members is not now known, the Plaintiffs believe this class is in excess of 50 members and may be readily identified from Defendant's records. (MCR 3.501(A)(1)(a)).

40.     Commonality. There are questions of law or fact common to the members of the class and sub-class that predominate over questions affecting only individual members.  (MCR 3.501(A)(1)(b)).

41.     Among the questions of law or fact common to the class are the following:

A)     Is the charging of a fee by the Buildings and Safety Engineering Department an unlawful act as the Buildings and Safety Engineering Department is not authorized to do so by Constitution, Statute, or other law and is prohibited by law to charge anything other than the cost of actual inspection to certain class members?

B)     Are the inspection fees charged by Defendant in violation of the Housing

Law of Michigan?

42.  Typicality.  The harm suffered by named Plaintiffs is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiffs are the same as those of the other class members.  Resolution of these common questions will determine the liability of the Defendant to the class members in general.  Thus, they properly form the basis for class treatment in this case. (MCR 3.501(A)(1)(c).

43.  Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

44.  Adequacy of Representation.  The represented parties will fairly and adequately assert and protect the interest of the class.  The named Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members. (MCR 3.501(A)(1)(d)).

45.  Plaintiff's counsel will also fairly and adequately represent the interest of the class.  The law firm of Becker & Wasvary, P.L.L.C. is well-versed in the facts and the substantive law underlying the Plaintiff's claims.  Counsel for Plaintiffs has previously been certified as lead counsel in the United States District Court for the Eastern District of Michigan, Southern Division in class action lawsuits titled, Village Center Limited Dividend Housing Association, et. al. v The City of Detroit, Mary Eghigian v. Fifth Third Bank, USDC Case No. 07-14406, Lola Valley Terrace Association v Charter Township of

Redford, USDC Case No. 09-11238, Lanson Development Company LLC v City of Dearborn, USDC Case No. 09-13956, and in Wayne County Circuit Court in the matter of Woodside Square Limited Partnership v City of Romulus, Case No. 09-019233CZ and is well qualified to act as lead counsel to provide adequate representation for the class in this matter. Attorney Carl Becker has also been certified as class counsel in the Western District of Michigan in the matter of Meredith v. Beneficial Finance.

46.     This class action is maintainable under MCR 3501 et. seq.

47.     The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

A)     The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

B)     Prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

C)     The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

12

48. Final equitable relief will be appropriate with respect to the class.

49. The action will be manageable as a class action and in fact more manageable than the prosecution of separate actions.

50. In view of the complexity of the issues and expense of the litigation the separate claims of individual class members are insufficient in amount to support separate actions.

51. It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

52. Plaintiffs are not aware of any members of the proposed class that have filed similar litigation, other than the Federal lawsuit previously referenced in the caption, nor are Plaintiffs aware of any pending similar litigation.

### COUNT I - INJUNCTIVE RELIEF

53. Plaintiffs incorporate paragraphs 1 through 52 as if more fully set forth herein.

54. Plaintiffs seeks injunctive relief enjoining Defendant, its agents, employees and those persons in active concert and/or participation with them or any of them from charging class members an inspection fee in excess of the actual, reasonable cost for the inspection or proportionate share of costs of the services, but only as it relates to properties used for residential purposes.

### COUNT II - UNJUST ENRICHMENT/QUANTUM MERUIT

13

55.    Plaintiffs incorporate paragraphs 1 through 54 as if more fully set forth herein.

56.    Defendant in this matter has collected hundreds of thousands and perhaps millions of dollars for conduct not authorized by the Constitution, Statute, or other law, or in direct violation of state law.

57.    Plaintiffs are seeking reimbursement on behalf of themselves and all others similarly situated for monies paid to the City of Detroit, as the City of Detroit has been unjustly enriched by collecting under threat of law enforcement fees to which it is not entitled.

## COUNT III - RESTITUTION/ASSUMPSIT

58.    Plaintiffs incorporate paragraphs 1 through 57 as if more fully set forth herein.

59.    Defendant has been charging improper fees to Plaintiffs and others similarly situated which are not authorized by the municipal code or State law and are in excess of any charge reasonably proportional to the services being rendered.

60.    Pursuant to Section 8.5-2-19 of the Detroit Municipal Code, Defendant may obtain a lien against any land, building, or structure by recording a copy of a final decision by a hearings officer with the County of Wayne, Register of Deeds.

61.    Hearing Officers/Judges who rule on Blight violations have no subject matter jurisdiction over the enforcement or fee calculations of inspection fees authorized and limited by State Law, nor do they have jurisdiction over torts committed by municipal

employees.

62.     Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property, or threatens to take away or forfeit proprietary rights under color of law or where the act of the municipality constitutes a misuse of a badge of governmental authority for purposes unauthorized by law and thereby is no governmental function to be protected by governmental immunity.

63.     Plaintiffs seeks a court order for cessation of such illegal or inappropriate charges that were paid and restitution back to such time as applicable under the relevant Statute of Limitations.

## HEADLEE

64.     Plaintiffs incorporate paragraphs 1 through 63 as if more fully set forth herein.

65.     Defendant has taken the position in this case before the Trial Court, the Court of Appeals and the Supreme Court that if the fees charged by the Defendant in the inspection of residential units is in excess of that which is proportionate to the necessary costs of the services, that Plaintiffs cause of action is under the Michigan Constitutional provisions commonly referred to as "Headlee Amendments";

66.     The facts supporting a Headlee claim in the alternative are contained in Paragraph 1 through 65 of the Complaint incorporated herein by reference and the

15

allegations hereinafter;

67.    The fee charged is in excess of that proportionate to the necessary costs of the services and do not represent actual, reasonable costs of providing the inspection;

68.    The fee being excessive or disapportionate causes it not to serve a regulatory purpose, but rather a revenue raising purpose and the fee is paid involuntarily by the class members.

69.    As an alternative theory for Defendant's liability, the aforesaid fees are a tax not approved by the voters of the Defendant and are therefore void and unconstitutional under Headlee (MCL Const. Article IX §25 and MCL Const. Article IX §31) or the excess of what is actual, reasonable fees or fees proportionate to the services provided are deemed taxes under Headlee.

70.    Attached to these pleadings are the ordinances, statutes, evidence supporting the claim to wit: PMC Exhibit A, Housing Law Exhibit B, Fee Schedule Exhibit C.

WHEREFORE, it is respectfully prayed as follows:

A)    An order certifying a Plaintiff class represented by this Counsel and appoint these Plaintiffs and their counsel to represent same;

B)    A judgment for money damages to Plaintiffs and class members in an amount equal to the amounts paid to the City of Detroit for the unauthorized charges;

C)    Injunctive relief as requested in the Complaint;

16

D) An incentive fee award to Plaintiffs for having the courage to come forward with this Complaint;

E) An award of reasonable attorney fees and costs;

F) A ruling in the alternative that the fees or the excessive fees violate the Michigan Constitutional under the Headlee Amendments as being a tax not approved or passed up by the electorate of the Defendant.

G) Reimburse Plaintiffs for fees that were collected which violate Headlee and award attorney fees.

H) Grant Plaintiffs for fees that were collected which violate Headlee.

I) Such other and different relief as is just and equitable.

Respectfully submitted,

BECKER & WASVARY, P.L.L.C.

By: /s/ Carl G. Becker
CARL G. BECKER P10608

By: /s/ Mark K. Wasvary
MARK K. WASVARY P51575
Attorneys for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

DATED: July 16, 2013

17

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

HYDE PARK COOPERATIVE, a Michigan Non-profit
corporation, VILLAGE CENTER ASSOCIATES LIMITED
DIVIDEND HOUSING ASSOCIATION, BOWIN PLACE
ASSOCIATES LIMITED DIVIDEND HOUSING
ASSOCIATION, CAMBRIDGE TOWER ASSOCIATES
LIMITED DIVIDEND HOUSING ASSOCIATION,
FENIMORE LIMITED DIVIDEND HOUSING
ASSOCIATION, MILLENDER CENTER ASSOCIATES
LIMITED PARTNERSHIP, PLYMOUTH SQUARE
LIMITED DIVIDEND HOUSING ASSOCIATION,
FOUNTAIN COURT CONSUMER HOUSING
COOPERATIVE,

              Plaintiffs,

v

CITY OF DETROIT, by and through its BUILDINGS
AND SAFETY ENGINEERING DEPARTMENT,

           Defendant.

Case No. 10-005687-CZ
HON: Maria L. Oxholm

---

BECKER & WASVARY, P.L.L.C.
By: CARL G. BECKER (P10608)
By: MARK K. WASVARY (P51575)
Attorneys for Plaintiffs, except Fountain Court
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

MICHAEL M. MULLER (P38070)
Attorney for Defendant
City of Detroit Law Department
2 Woodward Ave
Suite 500
Detroit, MI 48226
(313) 237-2052

PENTIUK, COURVEUR & KOBILJAK PC
BY: RANDALL A. PENTIUK (P32556)
Attorneys for Fountain Court
2915 Biddle Ave, Suite 200
Wyandotte, MI 48192
(734) 281-7100

---

## NOTICE OF HEARING

TO:   Michael M. Muller
      2 Woodward Ave, STE 500
      Detroit, MI 48226-3535

      Randall A. Pentiuk
      2915 Biddle Ave, STE 200
      Wyandotte, MI 48192

PLEASE TAKE NOTICE that Plaintiff's Motion for New Scheduling Order and Leave to File Second Amended Complaint is scheduled to come on for hearing before Honorable Maria L. Oxholm in her courtroom, at 2 Woodward Ave., Detroit, Michigan on Friday, the 2nd of August, 2013, at 9:00 o'clock in the forenoon, or as soon thereafter as counsel may be heard.

Respectfully submitted,

BECKER & WASVARY, P.L.L.C.

By: /s/ Mark K. Wasvary
MARK K. WASVARY P51575
Attorneys for Plaintiffs
2301 W. Big Beaver Rd., Suite 318
Troy, MI 48084
(248) 649-5667
email: markwasvary@hotmail.com

DATED: July 17, 2013

PROOF OF SERVICE
The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _7/17/13_

By: ☒ U.S. Mail          ☐ FAX
    ☐ Hand Delivered     ☐ Overnight Courier
    ☐ Certified Mail     ☐ Other:
Signature /s/ Mark K. Wasvary

2