11. The legislative history of the amendment demonstrates that the amendment was enacted to prohibit an enforcing agency from charging more for an inspection than what an inspection costs to provide.

12. The ordinance fee calculation is in excess of the Housing Law limitations by adding administrative and enforcement overhead to the actual cost of the inspections and enabling the Defendant to estimate its prospective annual overhead or administrative costs rather than charge for the actual cost of the inspection.

13. The actual cost of an inspection can only be based on the time an inspector takes to examine a property and compare that to the time the employee uses otherwise for his other duties with the Defendant and then extrapolate an amount by applying that formula to the inspector's hourly rate of compensation.

14. Further, inspections now are only performed on exterior space yet the fee charged is based on interior square footage of the building which is illogical when comparing a single story building to a multi-storied building both having the same exterior "foot print".

15. The Defendant uses that formula without regard to the number of inspectors involved or the time they expend and can be compensated by as much as $4,350.00 per building, even if only one inspector inspects and such inspection takes less than one hour.

16. The structure of the ordinance does not encourage or assist lay people in understanding the impropriety of the charges, and given the ramifications of not paying the excessive charges, tickets issue which result in fines and enforcement of the excessive charges and can further result in the statutory and ordinance requirement that rent be suspended, buildings be vacated, judgment and judgment liens become enforceable and

4

since time is lost in attending dispute hearings, and because of the inherent risk of suspension, forfeitures, fines, etc. payments are made under duress and are involuntary.

17. The doctrine of ultra vires precludes a city from engaging in a course of conduct where it lacks the authority to do so by Constitution, Statute, or other law.

18. All persons subject to the conduct of the Defendant pay the charges involuntarily as the Defendant, through its notices, threatens that failure to pay will result in enforceable judgments and liens for which the property is subject to execution, foreclosure and removal of all occupants and indicia of occupancy.

19. No doubt hundreds of thousands of dollars and perhaps millions of dollars have been collected by the Buildings and Safety Engineering Department without lawful authority and continue to be collected as of the date of filing this Complaint.

20. The actions of the Defendant are in contradiction to the Housing Laws of the State and are intentional acts of the Defendant.

## PARTIES

21. Plaintiff, Hyde Park Cooperative is a housing cooperative located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets purportedly under City of Detroit ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

22. Plaintiff Bowin Place Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

23. Plaintiff Cambridge Tower Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

24. Plaintiff Fenimore Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

25. Plaintiff Millender Center Associates Limited Partnership is a domestic limited partnership providing residential housing located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

26. Plaintiff Plymouth Square Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate of compliance.

27. Plaintiff Village Center Associates Limited Dividend Housing Association is a domestic limited partnership located in the City of Detroit, Wayne County, Michigan and has been subjected to threatened tickets under City of Detroit Ordinance 9-1-36, and has been overcharged for inspections, although has complied with securing an initial certificate

of compliance.

28. Plaintiff, Fountain Court Consumer Housing Cooperative is a Michigan non-profit corporation located in the City of Detroit which has been threatened with and paid for inspections that are in excess of even those defined by the Housing Law of Michigan.

29. Defendant, City of Detroit is a municipal corporation which enforces the Detroit Property Maintenance Code through its Buildings and Safety Engineering Department and is located in the City of Detroit, County of Wayne, State of Michigan and is an enforcement agency as defined by the Michigan Housing Law.

## JURISDICTION AND VENUE

30. Plaintiffs incorporate paragraphs 1 through 29 as if more fully set forth herein.

31. Jurisdiction and venue are properly before this Court by reason of Defendant's location, the amount in controversy and the subject matter of the claim.

## CLASS ALLEGATIONS

32. Plaintiffs incorporate paragraphs 1 through 31 as if more fully set forth herein.

33. All Plaintiffs and class members have suffered and continue to suffer similar harm due to being improperly assessed charges under duress through the Buildings and Safety Engineering Department under threat of liens, forfeiture, and removal of all lawful occupants suspension of rent and constructive closures of their respective businesses and/or operations.

34. <u>Class Definition:</u> Plaintiffs seek to certify the following class:

Class - All entities and persons constituting owner's of buildings and properties subject to the provisions of the Housing Law of Michigan (MCL 125.401 et. seq.) which or

7

13-53846-tjt    Doc 5396-4    Filed 06/18/14    Entered 06/18/14 11:58:01    Page 4 of 9

who were charged inspection fees by Defendant that exceed Defendant's actual, reasonable cost for the inspection. Plaintiffs seek a class period dating back to the initiation of such charges or six years prior to the filing of the Federal litigation on August 19, 2009 less the lapse of time between dismissal of that litigation and the filing of this litigation, whichever is sooner.

35. Numerosity. The proposed class is so numerous that joinder of all members is impracticable. While the exact number of class members is not now known, the Plaintiffs believe this class is in excess of 50 members and may be readily identified from Defendant's records. (MCR 3.501(A)(1)(a)).

36. Commonality. There are questions of law or fact common to the members of the class and sub-class that predominate over questions affecting only individual members. (MCR 3.501(A)(1)(b)).

37. Among the questions of law or fact common to the class are the following:

A) Is the charging of a fee by the Buildings and Safety Engineering Department an unlawful act as the Buildings and Safety Engineering Department is not authorized to do so by Constitution, Statute, or other law and is prohibited by law to charge anything other than the cost of actual inspection to certain class members?

B) Are the inspection fees charged by Defendant in violation of the Housing Law of Michigan?

38. Typicality. The harm suffered by named Plaintiffs is typical of the harm suffered by other class members differing only in amount. Accordingly, the claims of Plaintiffs are the same as those of the other class members. Resolution of these common

8

questions will determine the liability of the Defendant to the class members in general. Thus, they properly form the basis for class treatment in this case. (MCR 3.501(A)(1)(c)).

39. Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all members of the class and the Defendant.

40. <u>Adequacy of Representation</u>. The represented parties will fairly and adequately assert and protect the interest of the class. The named Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members. (MCR 3.501(A)(1)(d)).

41. Plaintiff's counsel will also fairly and adequately represent the interest of the class. The law firm of Becker & Wasvary, P.L.L.C. is well-versed in the facts and the substantive law underlying the Plaintiff's claims. Counsel for Plaintiffs has previously been certified as lead counsel in the United States District Court for the Eastern District of Michigan, Southern Division in class action lawsuits titled, <u>Village Center Limited Dividend Housing Association, et. al. v The City of Detroit</u>, and <u>Mary Eghigian v. Fifth Third Bank</u> and is well qualified to act as lead counsel to provide adequate representation for the class in this matter. Attorney Carl Becker has also been certified as class counsel in the Western District of Michigan in the matter of <u>Meredith v. Beneficial Finance</u>.

42. This class action is maintainable under MCR 3501 et. seq.

43. The maintenance of this action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

    A) The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect

9

to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

B) Prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

C) The party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

44. Final equitable relief will be appropriate with respect to the class.

45. The action will be manageable as a class action and in fact more manageable than the prosecution of separate actions.

46. In view of the complexity of the issues and expense of the litigation the separate claims of individual class members are insufficient in amount to support separate actions.

47. It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

48. Plaintiffs are not aware of any members of the proposed class that have filed similar litigation other than the Federal lawsuit previously referenced in the caption, nor are Plaintiffs aware of any pending similar litigation.

## COUNT I - INJUNCTIVE RELIEF

49. Plaintiffs incorporate paragraphs 1 through 48 as if more fully set forth herein.

50. Plaintiffs seeks injunctive relief enjoining Defendant, its agents, employees and those persons in active concert and/or participation with them or any of them from charging class members an inspection fee in excess of the actual, reasonable cost for the inspection.

## COUNT II - UNJUST ENRICHMENT/QUANTUM MERUIT

51. Plaintiffs incorporate paragraphs 1 through 50 as if more fully set forth herein.

52. Defendant in this matter has collected hundreds of thousands and perhaps millions of dollars for conduct not authorized by the Constitution, Statute, or other law or in direct violation of state law.

53. Plaintiffs are seeking reimbursement on behalf of themselves and all others similarly situated for monies paid to the City of Detroit, as the City of Detroit has been unjustly enriched by collecting under threat of law enforcement fees to which it is not entitled.

## COUNT III - RESTITUTION/ASSUMPSIT

54. Plaintiffs incorporate paragraphs 1 through 53 as if more fully set forth herein.

55. Defendant has been charging improper fees to Plaintiffs and others similarly situated which are not authorized by the municipal code or any other law and in fact, the charging of alleged allocations for administration and enforcement on inspection fees violates State Law.

56. Pursuant to Section 8.5-2-19 of the Detroit Municipal Code, Defendant may obtain a lien against any land, building, or structure by recording a copy of a final decision by a hearings officer with the County of Wayne, Register of Deeds.

57. Hearing Officers/Judges who rule on Blight violations have no subject matter jurisdiction over the enforcement or fee calculations of inspection fees authorized and limited

by State Law, nor do they have jurisdiction over torts committed by municipal employees.

58. Michigan law provides that an assumpsit action may be maintained against a municipality and/or its divisions without regard to government immunity when restitution is being sought for an illegal or inappropriate assessment that is authorized to become a lien on property, or threatens to take away or forfeit proprietary rights under color of law or where the act of the municipality constitutes a misuse of a badge of governmental authority for purposes unauthorized by law thereby is no governmental function to be protected by governmental immunity.

59. Plaintiffs seeks a court order for cessation of such illegal or inappropriate charges that were paid and restitution back to such time as applicable under the relevant Statute of Limitations.

WHEREFORE, it is respectfully prayed as follows:

A) An order certifying a Plaintiff class and appoint Plaintiffs and its counsel to represent same;

B) A judgment for money damages to Plaintiffs and class members in an amount equal to the amounts paid to the City of Detroit for the unauthorized charges;

C) Injunctive relief as requested in the Complaint;

D) An incentive fee award to Plaintiffs for having the courage to come forward with this Complaint;

E) An award of reasonable attorney fees and costs;

F) Such other and different relief as is just and equitable.