# STATE OF MICHIGAN
# COURT OF APPEALS

HYDE PARK COOPERATIVE, VILLAGE CENTER ASSOCIATES LIMITED DIVIDEND HOUSING ASSOCIATION, BOWIN PLACE ASSOCIATES LIMITED DIVIDEND HOUSING ASSOCIATION, CAMBRIDGE TOWER ASSOCIATES LIMITED DIVIDEND HOUSING ASSOCIATION, FENIMORE LIMITED DIVIDEND HOUSING ASSOCIATION, MILLENDER CENTER ASSOCIATES LIMITED PARTNERSHIP, PLYMOUTH SQUARE LIMITED DIVIDEND HOUSING ASSOCIATION, and FOUNTAIN COURT CONSUMER HOUSING COOPERATIVE,

UNPUBLISHED
July 24, 2012

Plaintiffs-Appellants,

v

No. 303143
Wayne Circuit Court
LC No. 10-005687-CZ

CITY OF DETROIT, and BUILDINGS AND SAFETY ENGINEERING DEPARTMENT,

Defendant-Appellee.

Before: O'CONNELL, P.J., AND JANSEN AND RIORDAN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order denying their motion for summary disposition and granting defendant's motion for summary disposition. We affirm in part, reverse in part. We remand for consideration of whether the inspection fee charged in this case was reasonable.

Plaintiffs are owners of multi-family cooperatives and apartment buildings located in the City of Detroit (Detroit). Pursuant to the Detroit Property Maintenance Code (PMC),[1] the Detroit Buildings and Safety Engineering Department performs annual or close to annual inspections of these multi-family residential dwellings. At issue in this appeal is the inspection

---
[1] The PMC is part of the Detroit City Code.

fee Detroit collects for the inspections, which accounts for direct and indirect costs such as inspection time, mileage, car expenses, and pro rata clerical, administrative, and overhead expenses. The size of the building is also used to estimate the time required for the inspection and according to the Department's fee schedule, inspection fees are also dependent on the type of building subject to inspection.

## I. BACKGROUND

Plaintiffs' initiated this lawsuit claiming that the PMC's inspection fee provision conflicts with the Housing Law of Michigan (Housing Law), MCL 125.401 *et seq.*, because the Housing Law only authorizes an inspection fee for the "actual, reasonable cost" of the inspection. According to plaintiffs, the "actual, reasonable cost" standard imposed under the Housing Law limits the inspection fee to the direct cost of the pro rata share of the inspector's annual monetary compensation for the actual time the inspector spends performing the inspection. Plaintiffs sought monetary damages equal to the inspection fees charged in excess of the actual, reasonable cost of the inspection and injunctive relief to enjoin defendant from charging the alleged excessive fees under the PMC.

Plaintiffs' filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing that the Housing Law preempts the PMC. Defendant also moved for summary disposition, arguing that any violation of the Housing Law does not give rise to a claim for damages as a matter of law and that plaintiffs' claim for injunctive relief should also be dismissed as a matter of law. After oral arguments, the trial court denied plaintiffs' motion for summary disposition and request for a preliminary injunction and granted summary disposition in favor of defendant. The trial court found that the inspection fee collected was done pursuant to the PMC, not the Housing Law, and that even if that was not the case, the Housing Law did not conflict with the PMC because "actual, reasonable cost" includes indirect costs. Plaintiffs now appeal.

## II. STANDARD OF REVIEW

A grant or denial of a motion for summary disposition is reviewed de novo. *McLean v McElhaney*, 289 Mich App 592, 596; 798 NW2d 29 (2010). Additionally, "[w]hether a state statute preempts a local ordinance is a question of statutory interpretation-a question of law that this Court reviews de novo." *Charter Twp of Shelby v Papesh*, 267 Mich App 92, 98; 704 NW2d 92 (2005).

## III. ANALYSIS

### A. Applicability of the Housing Law

The Housing Law "establishes minimum requirements for the health, welfare and safety of the community . . . ." *Foote v City of Pontiac*, 161 Mich App 60, 65; 409 NW2d 756 (1987); MCL 125.408. The Housing Law requires the inspection of multi-family residential dwellings at least every four years and provides the basis for an enforcing agency to perform the inspections

of regulated dwellings. MCL 125.526(1) & (4).[2] Specifically, MCL 125.526(1) provides that "[t]he enforcing agency shall inspect multiple dwellings and rooming houses regulated by this act in accordance with this act." While municipalities are not required to adopt the Housing Law, they may not dispense with the minimum standards set forth in it. MCL 125.543; MCL 125.408. Thus, while the minimum standards must be met, "every city and local unit may establish requirements *higher* than those set out in the [Housing Law]." *Foote*, 161 Mich App at 65 (emphasis added).

Detroit adopted the PMC as its housing code, which was modeled after the 2000 International Property Maintenance Code (IPMC). Detroit City Code § 9-1-1.[3] The IPMC was developed by the International Code Council, Inc., and Detroit adopted it in order to "establish[] the minimum legal requirements for maintenance, inspection and reinspection of all buildings." Detroit City Code § 9-1-1 & 9-1-4(a). Purportedly, any provisions of the IPMC conflicting with Michigan law were not adopted. Detroit City Code § 9-1-1.

A threshold inquiry involves the relationship between the Housing Law and the PMC, and whether the Housing Law provision about inspection fees, MCL 125.526(12), applies to inspections completed pursuant to the PMC. We conclude that the Housing Law does apply to inspections completed pursuant to the PMC. By its very terms, the Housing Law applies to inspections of multi-family residential dwellings in cities, such as Detroit, that meet a threshold population requirement. MCL 125.401; MCL 125.402. Moreover, while a city is not required to adopt the Housing Law, a city is required to implement the minimum requirements of the Housing Law. MCL 125.408. Thus, no matter which housing code is adopted, a city still must comply with the minimum requirements of the Housing Law in order to be in compliance with state law. Furthermore, the PMC specifically references compliance with the Housing Law in the context of inspections. The PMC states that "[t]he director of the buildings and safety engineering department . . . shall conduct inspections to obtain compliance with this article based upon at least one (1) of the following[,]" including "the Housing Law of Michigan, being MCL 125.401 et seq." Detroit City Code § 9-1-35(d)(11). Thus, the expressed intent of the PMC is compliance with the Housing Law.

---

[2] Under the housing law, a governing body of a municipality must designate an officer or agency to be in charge of administering the provisions of the act. MCL 125.523.

[3] Pursuant to the Home Rule City Act, MCL 117.1 *et seq.*, home rule cities, like Detroit, are given the "specific authority to enact ordinances in order to advance the interests of the city." *Mich Coal For Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 407; 662 NW2d 864 (2003); see also *AFSCME v Detroit*, 468 Mich 388, 410; 662 NW2d 695 (2003). The Home Rule City Act also specifically grants home rule cities the authority to adopt a property maintenance code. MCL 117.3(k). However, the power to adopt ordinances relating to municipal concerns is subject to the state constitution and state law. *Mich Coalition*, 256 Mich App at 408, citing *Rental Prop Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 256-257; 566 NW2d 514 (1997).

Therefore, contrary to defendant's argument, the fact that inspections are conducted under the authority of the PMC does not relieve Detroit of its duty to comply with the inspection requirements of the Housing Law for multi-family residential dwellings. See MCL 125.408 ("[n]o ordinance, regulation, ruling or decision of any municipal body . . . shall repeal, amend, modify or dispense with any of the said minimum requirements laid down in this act . . . .") Therefore, when Detroit conducts inspections to ensure compliance with the PMC, the inspection also must comply with the requirements of the Housing Law, including the requirement limiting the inspection fee to the "actual, reasonable cost of providing the inspection" under MCL 125.526(12).

We also conclude that the state Housing Law does not preempt the PMC. In order to determine if "a municipal ordinance is preempted by state law[,]" this Court looks at whether "1) the statute completely occupies the field that the ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Mich Coal For Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 408; 662 NW2d 864 (2003); quoting *Rental Prop Owners Ass'n of Kent Co v Grand Rapids,* 455 Mich 246, 257; 566 NW2d 514 (1997). While the Housing Law is certainly pervasive, it does not completely occupy the field of housing regulations. In fact, the Housing Law provides only "the minimum requirements adopted for the protection of health, welfare, and safety of the community," and specifically grants cities the authority to "impos[e] requirements higher than the minimum requirements laid down in this act . . . ." MCL 125.408. Furthermore, the Housing Law explicitly states that "[t]his act does not preempt, preclude, or interfere with the authority of a municipality to protect the health, safety, and general welfare of the public through ordinance, charter, or other means." MCL 125.534(8). Hence, "[w]hen the language of a statute is unambiguous, [as here,] the Legislature's intent is clear and judicial construction is neither necessary nor permitted." *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007).

Moreover, we do not interpret the PMC's inspection fee provision to be in conflict with the Housing Law's inspection fee provision. As noted in *USA Cash # 1, Inc v City of Saginaw*, 285 Mich App 262, 267; 776 NW2d 346 (2009), "[f]or purposes of preemption, a direct conflict exists between a local regulation and a state statute when the local regulation permits what the statute prohibits or prohibits what the statute permits." However, "[i]t is well established . . . that a local ordinance that regulates in an area where a state statute also regulates, with mere differences in detail, is not rendered invalid due to conflict." *Id.*

The PMC's inspection fee provision states:

> [t]he director of the buildings and safety engineering department shall establish fee schedules, including fees for . . . inspections, pertaining to all buildings, premises, and structures that are subject to inspection or reinspection under this article and are determined to be necessary for the administration of this article, subject to the approval of the buildings and safety engineering department board of rules, and collection procedures for services. The fees authorized by this section shall cover the costs of rendering such services and be equitable and sufficient to cover, insofar as possible to determine, the cost incurred by the buildings and safety engineering department in the administration and enforcement of this article. Fees established pursuant to this section shall be

reviewed, revised, and approved, as necessary, in accordance with this section. [Detroit City Code§ 9-1-34(a).]

The Housing Law's inspection fee provision, MCL 125.526(12), states:

[t]he enforcing agency may establish and charge a reasonable fee for inspections conducted under this act. The fee shall not exceed the actual, reasonable cost of providing the inspection for which the fee is charged. An owner or property manager shall not be liable for an inspection fee if the inspection is not performed and the enforcing agency is the direct cause of the failure to perform.

Plaintiffs attempt to narrowly limit the phrase "actual, reasonable cost" to only the direct costs of the pro rata share of the inspector's annual monetary compensation for the actual time the inspector spends performing the inspection. In determining whether plaintiffs' interpretation is correct, we are mindful of the principles of statutory interpretation. The "primary goal" of statutory interpretation "is to discern the intent of the Legislature by first examining the plain language of the statute." *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). When the language is clear and unambiguous, "no further judicial construction is required or permitted, and the statute must be enforced as written." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002) (internal citations and quotations omitted). A statutory provision must be read in the context of the entire act, and "every word or phrase of a statute should be accorded its plain and ordinary meaning." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011).

The Housing Law, MCL 125.526(12), does not state that an inspection fee may only be charged for "direct" costs. Instead, it limits the fee applicable to inspections to the "actual, reasonable cost of providing the inspection." MCL 125.526(12).[4] The phrase "actual, reasonable cost" is not defined by the Housing Law and, thus, this Court can refer to dictionary definitions to ascertain its common meaning. *Klida v Braman*, 278 Mich App 60, 65; 748 NW2d 244 (2008). The word "actual" is defined as "existing in reality or in fact; not merely possible, but real; as it really is." *Webster's New World Dictionary Second College Edition* (1984). As argued by defendant, the "actual" or "real" cost of providing an inspection includes not only the inspector's salary, but also the indirect costs associated with providing an inspection service, such as the administrative and enforcement overhead of the Department in charge of the inspection. The indirect costs incurred by the Department in providing an inspection are "real" components of the actual cost of the inspection, as they exist in reality and are a result of the inspection.

B. Reasonableness

Thus, the Housing Law applies to inspections performed pursuant to the PMC and the two statutes do not conflict. In regard to whether the inspection fee charged in this case was reasonable, however, there has been insufficient factual development for us to review this issue.

---

[4] The fee provision of the Housing Law was amended in 1997 to add the word "actual."

Plaintiffs submitted the general fee schedule suggesting that inspection fees charged for similar buildings vary significantly. Without any factual development explaining why these fees may, or may not, be reasonable we are unable to determine whether summary disposition was properly granted.

IV. CONCLUSION

The Housing Law applies to inspections performed under the PMC and we affirm the trial court's ruling that the Housing Law does not conflict with the PMC and may account for indirect costs. We affirm in part, reverse in part. We remand for consideration of whether the inspection fee charged in this case was reasonable.[5] We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Kathleen Jansen
/s/ Michael J. Riordan

---

[5] We note that plaintiffs would not be entitled to money damages. The Housing Law does not expressly authorize a private cause of action against a municipality for money damages. See MCL 125.401 *et seq.* Furthermore, while plaintiffs now claim that there was a genuine issue of material fact regarding the proportionality of the inspection fee, plaintiffs did address this claim in the lower court and the trial court did not decide this issue. "An issue is not properly preserved for appeal if not raised in the [lower court], and we need not address arguments first raised on appeal." *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660 (2009).