UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

## SYNCORA'S RESPONSE IN OPPOSITION TO FOUNDATIONS' MOTION TO QUASH DEPOSITION AND DOCUMENT SUBPOENAS

1. The Foundations[1] are key players in what the City[2] has called the "cornerstone" of its Plan of Adjustment — the DIA Settlement. (Consol. Reply at 16, Doc. No. 5034.) As part of this transaction, the Foundations have agreed to contribute more than $365 million over the next 20 years. If approved, the Foundations' donation will result in the irrevocable transfer of all of the City's interests in its multi-billion dollar art collection.

2. Recognizing that the DIA Settlement would not be possible without the Foundations, Syncora served document and deposition subpoenas on each of them. Through these subpoenas, Syncora seeks, *inter alia*, documents and

---

[1] Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation, McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation

[2] Capitalized terms used but not defined herein shall have the meanings ascribed them to them in *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014)* [Doc. No. 4392].

testimony relating to the terms and structuring of the DIA Settlement, the negotiations that led to that settlement, and the reasons behind the Foundations' participation.

3. In response, the Foundations have taken the position that, despite the hundreds of millions of dollars they have contributed and their critical and voluntary role in the "cornerstone" of the City's Plan, they should not be subject to <u>any</u> discovery. In fact, the Foundations claim that their involvement in the DIA Settlement is "unrelated to <u>any</u> aspect of Syncora's objection" and that they possess <u>no</u> relevant information pertaining to the City's Plan. (Mot. at 2.) Accordingly, the Foundations have now moved to quash Syncora's subpoena on relevance, burden, and privilege grounds. Their motion, however, fails both as a matter of fact and law.

4. *First*, discovery relating to the Foundations' participation in the DIA Settlement is relevant to many of Syncora's objections to the City's Plan — and the City's responses to those objections. For example, in response to Syncora's unfair discrimination objection, the City claims that the Foundations' donations are "outside the plan" and should be excluded from the Court's unfair discrimination analysis. The City also claims the Foundations required that their contributions go directly to the retirees and not any other City creditors. Discovery of the terms and conditions of the Foundations' willingness to contribute thus goes to the heart of

2

two of the City's principal justifications for its discrimination against the COP-holders.

5. *Second*, it is not unduly burdensome to require the Foundations — each of whom agreed to contribute millions of dollars into a disputed and public bankruptcy case — to produce relevant documents and attend a one-day deposition. Indeed, except for some broad generalizations regarding burden, the Foundations have not articulated how exactly Syncora's subpoenas impose an undue burden.

6. *Third*, the mediation privilege does not apply to the Foundations' discussions regarding the DIA Settlement. The Foundations are not creditors and were never ordered to participate in mediation. Thus, the Foundations cannot now attempt to hide behind the mediation privilege (to the extent one even exists in this case). Furthermore, even if a mediation privilege applied, the Foundations still possess discoverable information — *e.g.*, the reasons for the Foundations' participation in the settlement, the Foundations' typical mission, and any discussions regarding the Foundations' involvement outside of or before the formal mediation process.

7. Accordingly, Syncora respectfully requests that the Court deny the Foundations' Motion to Quash Syncora's subpoenas.

## BACKGROUND

8. On January 13, 2014, the Court-appointed mediation team publicly-announced some of the details surrounding the DIA Settlement.[3] According to the mediators, numerous charitable foundations had agreed to (a) commit more than $300 million to avoid cuts to Detroit retirees' pensions and (b) acquire for the public the DIA Assets.[4]

9. Since that first announcement, both the mediators and the Foundations have continued to disclose details surrounding the process that led to the DIA Settlement. For example, Mariam Nowland, president of the Community Foundation for Southeast Michigan, revealed that the plan to help pensioners and protect the art began to form when she received a call from Judge Rosen in the fall of 2013.[5] Similarly, Judge Rosen has discussed the so-called Grand Bargain as an idea spun out by himself and mediator Eugene Driker, whose wife sits on the DIA board.[6]

---

[3] *See* R. Kennedy, et al., *Foundations Aim to Save Pensions in Detroit Crisis*, NYTimes.com (Jan. 13, 2014), http://www.nytimes.com/2014/01/14/us/300-million-pledged-to-save-detroits-art-collection.html.

[4] *See supra*, n.3.

[5] *See supra*, n.3

[6] http://www.dia.org/about/board-of-directors.aspx; Kate Wells, *DIA Supporters seek $170 million more to save Detroit's art and pensions*, (Jan. 14, 2014), http://michiganradio.org/post/dia-supporters-seek-170-million-more-save-detroits-art-and-pensions.

10. On May 5, 2014, the City filed its Fourth Amended Disclosure Statement and Plan of Adjustment, wherein it described the general terms of the DIA Settlement — though the definitive agreements have not yet been disclosed or, presumably, executed. According to the City, the Foundations' participation in the DIA Settlement was conditioned upon, *inter alia*, (a) the irrevocable transfer by the City of the DIA Assets; (b) the earmarking of all funds provided by the Foundations for the pensioners; and (c) the existence of appropriate prospective governance and financial oversight mechanisms for the Retirement Systems. (Disclosure Statement at 66.) In addition, the City claimed that "[t]he Foundations have required that their funds be applied to fund the City's restructured legacy pension obligations." (*Id*. at 65.) Attached to the Plan are the principal terms of the DIA Settlement.

11. On June 4 and 5, Syncora issued document and deposition subpoenas to the Foundations containing the following document requests and 30(b)(6) deposition topics:

### Document Requests

1. All documents and communications relating to the DIA Settlement.
2. All documents and communications relating to the negotiations surrounding the DIA Settlement.
3. All documents and communications relating to the transfer of the Collection to DIA Corp. pursuant to the DIA Settlement.
4. All documents and communications describing the reasons for entering into the DIA Settlement.

5

5. Documents sufficient to show the causes or charities You have previously supported or provided money to from January 1, 1990 to the present.
6. Your mission statement.
7. Documents sufficient to show Your current process for evaluating potential partners or causes.
8. All communications between You and the DIA from January 1, 2001 to the present.

### Deposition Topics

1. The negotiations between You, the City, and any other parties (including other Foundations) regarding the DIA Settlement.
2. The terms of the DIA Settlement.
3. Your contribution to the DIA Settlement.
4. Your involvement with the DIA.
5. Your reasons for entering into the DIA Settlement.
6. The purpose or mission of Your foundation.
7. Your prior donations or contributions, including donations or contributions to the arts.
8. The importance and value of the Detroit Institute of Arts and Collection.

12. On June 13, 2014, the Foundations moved to quash Syncora's subpoenas.

### ARGUMENT

#### I. The Foundations' Motion to Quash Should Be Denied.

13. In support of their Motion to Quash, the Foundations argue that Syncora's subpoenas (a) seek irrelevant documents and testimony; (b) are unduly burdensome; and (c) violate the mediation privilege. Each of these arguments is unavailing.

14. *First*, the discovery contemplated by Syncora's subpoena directly relates to arguments raised in Syncora's objection and the City's reply. *Second*, because Syncora's subpoenas seek relevant information, the Foundations need to specifically articulate the undue burden that they face — a showing that they have not even attempted to make. *Third*, Syncora's subpoenas seek information that is not covered by the mediation privilege, which is inapplicable to the Foundations.

### A. Syncora's Requests Are Relevant and Reasonably Calculated To Lead To Admissible Evidence

15. In support of their Motion to Quash, the Foundations stake out several extreme positions regarding the role of the Foundations and the relevance of Syncora's subpoenas. To begin, the Foundations argue that their "role in this matter is limited to providing funding" and their "only involvement with this matter arises from their answer to a request that they help the Debtor solve its financial problems." (Mot. at 2, 7.) Based on this purportedly-limited role, the Foundations argue that "[n]o information that Syncora might obtain through discovery from the Foundations through depositions and responses to document requests would have <u>any bearing whatsoever</u> on the merits (or lack thereof) of Syncora's Objection to the Plan."[7] (*Id.* at 7.) These arguments, however, represent

---

[7] The Foundations also cite numerous inapposite cases in support of their proposition that Syncora's requests are irrelevant. (*See* Mot. Quash pp. 8–9.) <u>All</u> of these cases are in the employment context, where courts routinely engage in employment-specific analysis of burden and harassment in discovery because employers are permitted to use evidence of wrongdoing after a termination as an affirmative defense in wrongful termination

7

a basic misunderstanding of the Foundations' key role and Syncora's objections to the City's plan.

16. *First*, the Foundations' characterization of their role understates the importance of their participation in the DIA Settlement and the City's Plan in general. Indeed, the Foundations voluntarily agreed to provide funding for the City's Plan — the approval of which remains subject to a highly-contested and public process. Further, without the Foundations' commitment to provide hundreds of millions of dollars, the DIA Settlement — which the City calls the "cornerstone" of its Plan — would not be possible. And without its "cornerstone," the City's Plan collapses. (Plan at 39-40.) Thus, the Foundations' suggestion that they are minor players in this bankruptcy ignores the practical realities of this case — as well as their own press releases.

17. *Second*, contrary to the Foundations' claim, Syncora's discovery requests directly relate to the arguments advanced by both Syncora and the City. The Foundations' claim that their presence and involvement in the DIA Settlement is "[u]nrelated to any aspect of Syncora's Objection" is clearly undercut by the arguments advanced by both Syncora and the City.

---

proceedings. In sharp contrast to the use of discovery to uncover wrongdoing by an employee after a termination, in this case Syncora seeks discovery related to the lynchpin of the City's Plan, the DIA Settlement.

8

18. For example, Syncora objects to the Plan on unfair discrimination grounds. In response to this argument, the City argues that, because the Foundations "receive nothing in exchange for their contributions," the Foundations' contributions are third-party funds that are "outside the plan." (Consol. Reply at 30.) As a result, the City asserts that these funds should not factor into any unfair discrimination analysis.

19. It is therefore necessary for Syncora to explore with the Foundations the circumstances under which they agreed to contribute. If, as Syncora suspects, the Foundations provided the funds in exchange for the City's agreement to transfer its interests in the DIA Assets, then those funds should be taken into account in any unfair discrimination analysis.

20. The City also claims that the Foundations required that their funds go directly to the pensioners. To assess this claim, Syncora's requests seek information relating to the structure and terms of the settlement —*i.e.*, whose idea was it that the Foundations' funds go directly to the pensioners. If the Foundations would have agreed to structure the settlement differently, then the Plan may not be proposed in good faith.

21. Finally, Syncora's requests regarding the Foundations' history of charitable giving and relationship to the DIA relate to the Foundations' motivation for entering into the DIA Settlement. These requests are relevant because they will

further clarify what the Foundations expected to receive or believed they were receiving in exchange for their contribution to the DIA Settlement (*e.g.*, protection for the DIA Assets). Thus, like Syncora's other requests, these requests relate to the unfair discrimination analysis.

22. Thus, contrary to the Foundations' claims, Syncora's subpoenas are not "a fishing expedition in a pond with no fish." (Mot. at 8.) Nor are they "*designed to annoy or oppress* Foundations, by harassing them for no good reason at all." (*Id*. (emphasis added).) Rather, Syncora's subpoenas are narrowly tailored to obtain critical information relating to its objections to the Plan —to which the Foundations are undeniably a financial sponsor and structural contributor.

### B. Syncora's Subpoenas are Not Overly Broad or Unduly Burdensome.

23. In addition to their relevance argument, the Foundations also claim that Syncora's subpoenas are overly broad and unduly burdensome. In support of their undue burden argument, the Foundations assert that, because Syncora's requests are irrelevant, they must be unduly burdensome. And, in support of their over-breadth argument, the Foundations generally note that Syncora's requests are "far-ranging" and "inappropriately broad," and that much of the information is publicly-available. Lacking any corresponding support, these conclusory statements of undue burden and over-breadth are legally insufficient.

10

24. It is well-established that a "party claiming undue burden as a basis for a motion to quash is held to a high burden of proof which requires the party to demonstrate the actual 'manner and extent of the burden and the injurious consequences of insisting compliance with the subpoena.'" *See, e.g., Ohio Valley Envtl. Coal, Inc. v. U.S. Army Corps of Engineers*, 2012 WL 112325 (N.D. W.Va. Jan. 12, 2012). Here, however, the Foundations have not demonstrated how compliance with Syncora's subpoena would result in injurious circumstances. Nor have the Foundations provided any evidence regarding the cost, manner, or extent of the burden of complying with Syncora's subpoenas. Instead, the Foundations rely solely on unsupported statements that Syncora's requests are "far-ranging" and "inappropriately broad, to put it mildly." (Mot. at 10.) Such generalized statements do not suffice.

25. Furthermore, as described above, Syncora's subpoenas are relevant to a number of issues in Syncora's objection and the City's reply. Thus, the Foundations' argument that the subpoenas should be quashed on burden grounds because they lack any relevance also fails.

### C. Syncora's Subpoenas Do Not Invade the Mediation Privilege.

26. At the end of its Motion to Quash, the Foundations briefly argue that Syncora's subpoenas should be quashed because they require the disclosure of privileged or otherwise protected material. (*Id.*) The Foundations are not,

11

13-53846-tjt    Doc 5427    Filed 06/18/14    Entered 06/18/14 15:51:20    Page 11 of 14

however, creditors in this case. Nor does the City have any claim against them. And, unlike the City and every other creditor and party-in-interest involved in the mediation, the Foundations were never formally ordered to attend mediation. Thus, the Foundations are not covered by the mediation privilege, to the extent any such privilege is determined to exist in this case.

27. Furthermore, even if a mediation privilege does apply to the Foundations, it has been waived as a result of the frequent comments in the press by both the Foundations and the mediators. As noted above, the mediators and Foundations have all given interviews and speeches regarding the origin of the so-called Grand Bargain.

28. Finally, Syncora's subpoenas seek discoverable information that is not covered by any mediation privilege. For example, Syncora has requested information relating to the Foundations' motivations for entering the settlement, any communications regarding the DIA outside of the direct mediation context, and the Foundations' history. All of these topics request information that may be provided without invading any purported mediation privilege. And, as the Court noted during the May 28, 2014 hearing, it would be possible to explore, for example, alternative structures that were available to the Foundations <u>without</u> violating any mediation privilege. (5/28/14 H'rg Tr. at 185:12-186:10.)

## II. Attorney's Fees Are Improper Because Syncora's Requests Are Reasonable And Do Not Impose An Undue Burden Or Expense

29. For the reasons articulated above, Syncora's document and deposition subpoenas are reasonable and do not impose an undue burden or expense on the Foundations. The Foundations knowingly and voluntarily chose to sponsor the City's Plan, and in so doing, take on the attendant responsibilities and costs associated with that role. Therefore, sanctions are inappropriate and the Foundations' Motion to Quash should be denied.

WHEREFORE, for the foregoing reasons, Syncora respectfully requests that this court deny the Foundations' Motion to Quash and require the Foundations to comply with Syncora's document and deposition subpoenas.

*[Remainder of this page intentionally left blank]*

Dated: June 18, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*