# Exhibit 6-G

## AAMD Policy on Deaccessioning [06-09-10]

*AAMD Policy on Deaccessioning*

**June 9, 2010**

CLE - 2787359.10

## AAMD Mission Statement

The Association of Art Museum Directors promotes the vital role of art museums throughout North America and advances the profession by cultivating leadership and communicating standards of excellence in museum practice.

## Preamble

Deaccessioning is defined as the process by which a work of art or other object (collectively, a "work"), wholly or in part, is permanently removed from a museum's collection. Disposal is defined as the transfer of ownership by the museum after a work has been deaccessioned; in the case of false or fraudulent works, or works that have been irreparably damaged or cannot practically be restored, removal from the collection and disposition is determined by the museum and may include destruction of the work.

AAMD recognizes the unique challenges museums face in managing and developing collections largely built through gift and bequest by private donors. Most art museums continue to build and shape their collections over time to realize more fully and effectively their mission. Acquisitions to or deaccessions from the museum's collection must be guided by well-defined written collecting goals and acquisition and deaccession principles, procedures, and processes approved by a museum's Board of Trustees or governing body. These goals, principles, procedures, and processes must conform to AAMD's *Professional Practices in Art Museums* and AAMD's Policy on Deaccessioning[*].

---

[*] Canadian and Mexican member museums should follow applicable legal restrictions and policies of national associations and, to the extent not inconsistent with either of the foregoing, AAMD's *Professional Practices in Art Museums* and AAMD's Policy on Deaccessioning.

Deaccession decisions must be made with great thoughtfulness, care, and prudence. Expressions of donor intent should always be respected in deaccession decisions and the interests of the public, for whose benefit collections are maintained, must always be foremost in making deaccession decisions.

**Policy Statement**

A. AAMD requires member museums[*] to develop clear written collections management policies including written collection goals and acquisition and deaccession principles, procedures and processes, as well as those that address preservation, conservation and collection care.

B. AAMD encourages member museums to accept into the collection only gifts of works that support the mission of the institution and to be thoughtful about accepting gifts of works with restrictions.

C. Member museums must comply with all applicable laws, including, if applicable to the AAMD member museum, the filing of required Internal Revenue Service forms, in deaccessioning and disposing of works from the collection.

D. Member museums should not capitalize or collateralize collections or recognize as revenue the value of donated works. In 1992, following proceedings involving the museum profession, the Financial Accounting Standards Board (FASB) established standards regarding how museums (and other entities) that are subject to FASB[†] may account for their collections assuming certain conditions are met. As a result, in 1993, FASB issued Statement No. 116. The Statement, as

---

[*] "Member museums" means those museums whose director is a member of the AAMD.

[†] Museums that follow other accounting rules, such as those of the Government Accounting Standards Board (GASB), or are subject to contrary legal restrictions, may be required to treat collections for financial statement purposes in a different manner, but museums still should not collateralize their collections.

      amended, provides that contributions of works of art, historical treasures, and similar assets need not be recognized as revenue or capitalized if the donated items are added to collections that are (a) held for public exhibition, education, or research in furtherance of public service; (b) protected, kept unencumbered, cared for and preserved; and (c) subject to an organizational policy that requires the proceeds from sales of collection items to be used to acquire other items for the collection.

E.    When recommending a work to the museum's Board of Trustees for deaccessioning, a member museum's staff should provide thorough research on prior ownership history, an explanation of expressed donor intent, if any, current scholarly evaluation, and relevance to the existing collection and future collecting goals.

F.    A member museum should publish on its website within a reasonable period of time works that have been deaccessioned and disposed of.

## Application

### I. Purpose of Deaccessioning and Disposal

A.    Deaccessioning is a legitimate part of the formation and care of collections and, if practiced, should be done in order to refine and improve the quality and appropriateness of the collections, the better to serve the museum's mission.

B.    Funds received from the disposal of a deaccessioned work shall not be used for operations or capital expenses. Such funds, including any earnings and appreciation thereon, may be used only for the acquisition of works in a manner consistent with the museum's policy on the use of restricted acquisition funds. In

order to account properly for their use, AAMD recommends that such funds, including any earnings and appreciation, be tracked separate from other acquisition funds.

II. **Criteria for Deaccessioning and Disposal**

There are a number of reasons why deaccessioning might be contemplated. Primary among these are:

A. The work is of poor quality and lacks value for exhibition or study purposes.

B. The work is a duplicate that has no value as part of a series.

C. The museum's possession of the work may not be consistent with applicable law, *e.g.*, the work may have been stolen or illegally imported in violation of applicable laws of the jurisdiction in which the museum is located or the work may be subject to other legal claims.

D. The authenticity or attribution of the work is determined to be false or fraudulent and the object lacks sufficient aesthetic merit or art historical importance to warrant retention. In disposing of or retaining a presumed forgery, the museum shall consider all related ethical issues including the consequences of returning the work to the market.

E. The physical condition of the work is so poor that restoration is not practicable or would compromise the work's integrity or the artist's intent. Works damaged beyond reasonable repair that are not of use for study or teaching purposes may be destroyed.

F. The work is no longer consistent with the mission or collecting goals of the museum. The Board of Trustees or governing body of the museum must exercise great care in revising a museum's mission or reformulating collecting goals.

G. The work is being sold as part of the museum's effort to refine and improve its collections, in keeping with the collecting goals reviewed and approved by the museum's Board of Trustees or governing body.

H. The museum is unable to care adequately for the work because of the work's particular requirements for storage or display or its continuing need for special treatment.

**III. Authority and Process**

A. Deaccessioning and disposal must comply with all applicable laws of the jurisdiction in which the museum is located and must observe any terms or obligations that pertain to the acquisition of the work by the museum.

B. The final authority for the deaccessioning and disposal of works rests with the Board of Trustees or governing body or its designee.

C. The process of deaccessioning and disposal must be initiated by the appropriate professional staff and any recommendations, with full justification, presented to the director, who will review the facts and circumstances of the proposed deaccession and disposal. As part of this process, the staff must undertake a thorough review of all records to determine donor intent, clear title, donor restrictions, and current market value. If the director determines that deaccessioning is appropriate, the proposal shall be presented to the Board of

Trustees or governing body or its designee in accordance with the steps outlined in the museum's collection policy with regard to deaccessioning.

1. The director shall exercise care to assure that the recommendations are based on authoritative expertise.

2. Third-party review and appraisal may be considered in the case of objects of substantial value.

3. In the case of work(s) by a living artist, special considerations may apply.

D. The timing and method of disposal should be consistent with the museum's collection policy. Attention must be given to transparency throughout the process.

E. No member of a museum's board, staff, or anyone whose association with the museum might give them an advantage in acquiring the work, shall be permitted to acquire directly or indirectly a work deaccessioned, wholly or in part, by the museum, or otherwise benefit from its sale or trade; provided, however, that the foregoing shall not apply to a sale by a museum of its interest in a work to one or more of the co-owners of such work.

F. If a museum is proposing to dispose of less than all of its interest (sometimes known as fractional deaccessioning) in a deaccessioned work (unless the interest to be retained is insubstantial*), the disposal should only be made to an organization† or organizations that are open to the public. Examples of the foregoing are provided on Annex A.

## IV. Selection of Methods of Disposal

The following may be taken into account in selecting a method of disposal:

---

* For example rights of reproduction or the right to borrow the work.

† "Organization" means a museum or institution exempt from federal income tax and classified as a public charity or a private operating foundation (or substantially similar organization in Canada or Mexico) or governmental entity or agency.

A. Preferred methods of disposal are sale or transfer to, or exchange with another public institution, sale through publicly advertised auction, and sale or exchange to or through a reputable, established dealer. Every reasonable effort should be taken to identify and evaluate the various advantages and yields available through different means of disposal.

B. In the case of a work of art by a living artist, consideration may be given to an exchange with the artist.

C. While it is understood that museums must fulfill their fiduciary responsibilities and act in the museum's best interests, museums may give consideration to keeping a deaccessioned work in the public domain.

V. **Interests of Donors and Living Artists / Notifications**

A. Museums should notify the donor of a work, when practicable, under consideration for deaccessioning and disposal. Circumstances may warrant extending similar courtesy to the heirs of a donor.

B. When a work by a living artist is deaccessioned, consideration must be given to notifying the artist.

VI. **Documentation**

When a work is deaccessioned, all electronic and paper records must be updated. Prior to disposal, an image should be taken of the work and retained in the museum's records. As works are disposed of, the method of disposition, including possible consignee, new owner, sale price and location, if known, should be recorded according to the museum's collection management policy.

**VII. Special Circumstances**

AAMD recognizes that part of the mandate of a contemporary arts organization is to expand the definition of what constitutes a work of art, as well as to question traditional exhibition practices. Therefore, if the organization's written policy provides for the sale of deaccessioned works, the funds derived from such sales may in exceptional cases be used for purposes analogous to the purchase or commission of works of art, specifically the creation of new works, including some that may not be collectible. Expenditure of these funds for operations or capital expenses is precluded.

**VIII. Sanctions**

In the event a member or museum violates one or more of the provisions of this Policy, the member may be subject to censure, suspension, and/or expulsion, and the museum may be subject to censure and/or sanctions in accordance with the relevant provisions of the Code of Ethics of the AAMD, which have been amended consistent with the following:

*A museum director shall only dispose of accessioned works of art in accordance with the Professional Practices and the Task Force Report adopted by the members on June 9, 2010, as the same may be amended.*

*The Code of Ethics provides that AAMD members who violate the Code may be subject to discipline by censure as determined by the Board of Trustees of the AAMD and/or, suspension and/or expulsion from the Association in accordance with the By-Laws of the AAMD.*

*Infractions by any art museum may expose that institution to censure and/or sanctions, as determined by the Board of Trustees of the AAMD, that may, in the case of sanctions, include, without limitation, suspension of loans and shared exhibitions between the sanctioned museum and museums of which AAMD members are directors.*

*Prior to censuring or recommending suspension or expulsion of a member or censuring or issuing any sanction against an art museum, the Board of Trustees of the AAMD shall provide to the subject director or museum the opportunity to be heard and to explain the reason for the actions considered for censure, suspension, expulsion or sanction; such presentation to be by the affected director unless otherwise determined by the Board of Trustees of the AAMD or, in the case of a museum, the director or any member of the Board of Trustees or governing board of*

*the museum, as determined by the museum with the concurrence of the Board of Trustees of the AAMD. If the Board of Trustees of the AAMD determines to censure or recommend suspension or expulsion of a member or to censure or sanction a museum, the Board of Trustees of the AAMD shall, contemporaneously with the issuance of a censure or sanctions or the recommendation of suspension or expulsion determine and advise the affected director or museum of the process that may be followed, as the case may require, to allow the censure to be rescinded or modified, the suspension to be lifted, the expulsion to not bar a subsequent application for admission or the sanction to be lifted.*

**IX.    University and College Museums**

University and college museums play a significant role in acquiring, preserving and presenting collections. While the primary focus of the university or college is education, it must also adhere to professional standards and ethics when operating a museum.

A.  The director is responsible for the development and implementation of policy related to all aspects of the museum's collections, including acquisition, deaccessioning and disposal, preservation, conservation, and exhibition, as well as scholarly research and interpretation. The director is responsible for ensuring that the university or college is aware of its ethical responsibilities to the art museum's collection, including issues around its deaccessioning, use, and the physical conditions under which it is maintained

B.  Deaccessioning and disposal from the collection must result from clear museum policies that are in keeping with the AAMD's Professional Practices (see also the section on The Collection and Appendix B). Deaccessioning and disposal from the art museum's collection must never be for the purpose of providing financial support or benefit for other goals of the university or college or its foundation. In no event should the funds received from disposal of a deaccessioned work be used for operations or capital expenditures.

C. Policies developed by the director with regard to acquisition and deaccession should be adopted or ratified by the central governing authority of the university or college.

## ANNEX A

**Examples with respect to partial deaccessioning**

1. Museum X owns 50% of a painting in conjunction with Museum Y and wants to sell its 50% interest at auction. May it do so under the Policy even though a private individual may buy the 50% interest?

Yes, because Museum X is disposing of all of its interest even though that interest is less than 100% of the ownership interests of the painting.

2. Museum X owns 100% of a painting and wants to sell a 50% interest in the painting. To whom may it sell the 50% interest?

Only to a public charity, operating private foundation or governmental entity or agency open to the public.

3. Museum X owns 100% of a painting and wants to sell a 100% interest in the painting, but retain a right to reproduce images on items in the museum store and a right to borrow the painting once every 10 years for an exhibition. May the Museum sell the painting to a private individual?

Yes, because the Museum is disposing of all of its interest except for certain insubstantial retained rights.

4. Same facts as No. 3, but the Museum wants to retain a 5% interest in the painting.

In this situation, the Museum may only dispose of the 95% interest to a public charity, private operating foundation or governmental entity or agency open to the public.

5.      Museum X owns 33% of a painting in conjunction with two private collectors. The Museum wants to sell its share. May the Museum sell to one or both of the private collectors, or to any other private collector?

Yes, because the Museum is disposing of all of its interest even though that interest is less than 100% of the ownership interests of the painting.

6.      Museum X owns 66% of a painting in conjunction with a private collector. The Museum wants to sell half of its share, or 33% interest in the painting. May the Museum sell to the private collector or any other private collector?

No, because the Museum is selling only a portion of its interest; it must sell only to a public charity, private operating foundation or governmental entity or agency open to the public.