## Exhibit 6-H

**Email from Anneliese Ryder Regarding
Questions and Historical Documents [05-31-13]**

| | |
|---|---|
| **From:** | Ryder, Anneliese <ARyder@honigman.com> on behalf of Opperer, Joshua F. <JOpperer@honigman.com> |
| **Sent:** | Friday, May 31, 2013 3:06 PM |
| **To:** | Bloomfield, William (AG) |
| **Subject:** | FW: A few more questions |
| **Attachments:** | ExtractPage1.pdf; ExtractPage2.pdf |

Please see the attached in connection with your first questions. I will do my best to call you this afternoon (I am in a meeting and want to confirm some information before I call you back) on your second group of questions.

HONIGMAN

Joshua F. Opperer
(313) 465-7456 - Office
(248) 761-0604 - Mobile
(03) 911-8009 - Israel Ext.
JOpperer@honigman.com
www.honigman.com

---

**From:** Bloomfield, William (AG) [mailto:BloomfieldW@michigan.gov]
**Sent:** Friday, May 31, 2013 9:13 AM
**To:** Opperer, Joshua F.
**Subject:** A few more questions

Josh,

A few more questions.

First, Hongiman's April 19, 2013 DIA Timeline of Events includes two quotations: (1) the 1932 quote from Mayor Frank Murphy, and (2) the 2012 quote from Mayor Bing. Please provide the source for these quotes so they can be properly cited, if necessary.

Second, I want to make sure I understand the interaction between the Founders Society and the City over the years. My understanding is that the Founders Society operated the Museum for all years except those years from 1983 to 1997 when the City operated the museum. Is this correct? How were museum operations funded? During the years that the Founders Society operated the museum, did the city help fund operations or only acquire works of art?

If it's easier to call and discuss this second question, please feel free to call me anytime this morning.

Sincerely,

Will

-------------------------------------------
William R. Bloomfield
Assistant Attorney General
Michigan Department of Attorney General
Charitable Trust Section

G. Mennen Williams Bldg
525 W. Ottawa St.
Lansing, MI 48913
517-241-4069
bloomfieldw@michigan.gov

*******************************************************************
IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the Internal Revenue
Service, we inform you that any U.S. federal tax advice contained in this communication (including any
attachments) was not intended or written to be used, and cannot be used, by any person for the purpose of (i)
avoiding tax-related penalties or (ii) promoting, marketing or recommending to another person any transaction
or matter addressed in this communication.
*******************************************************************
Confidential: This electronic message and all contents contain information from the law firm of Honigman
Miller Schwartz and Cohn LLP which may be privileged, confidential or otherwise protected from disclosure.
The information is intended to be for the addressee only. If you are not the addressee, any disclosure, copy,
distribution or use of the contents of this message is prohibited. If you have received this electronic message in
error, please notify us immediately (313.465.7000) and destroy the original message and all copies.
*******************************************************************

MUSEUM ARCHIVES

Detroit, Michigan, January 27, 1920.

A special meeting of the Trustees of the Detroit Museum of Art was held at the University Club at 6 o'clock.

There were present Messrs. Ralph H. Booth, William J. Gray, Horace Caulkins, Henry Stevens, C. D. Pope, D. M. Ferry, Jr., William B. Stratton, Francis P. Paulus, and the Secretary.

A communication from the Arts Commission was read assuming the operation and maintenance of the Museum beginning July 1st, 1919, as per the request of the Trustees.

In behalf of the officers Mr. William J. Gray presented the following report, which was ordered spread upon the records.

> You will recall that at a meeting of the members of the Association, held December 6th, 1918, the Trustees were authorized to convey the property of the corporation, both its collection of art and its real estate on Woodward Avenue, to the City of Detroit, and subsequently, at a meeting of the Trustees on February 18th, the President and Treasurer were authorized to execute and deliver to the City of Detroit a Deed of Conveyance of said real estate, the Deed to be in such form and with such conditions as should to them appear sufficient to insure the use of said property for the purpose for which the Detroit Museum of Art was incorporated, or for some purpose kindred to said purpose.
>
> Your President and Treasurer thereupon conferred with Mr. H. E. Spalding and he prepared a Deed which contained a provision for the reversion of the title to the Detroit Museum of Art upon the happening of either of the following conditions:
>
> (a) If the city should at any time use or permit the use of said premises, or any part thereof, for any other purpose than the one contemplated by Charter 19, Ti Title 4, (IV), relating to an Arts Commission of the present charter of the City of Detroit;
>
> (b) If the city should fail within a given number of years to erect and complete on said premises a building costing a lot less than an agreed sum, suitable for the housing and exhibition of works of art, or

(c)   If the city should at any time fail to
provide for and continue the proper care, mainten-
ance and exhibition of the art collection then or
thereafter belonging to the City of Detroit.

Your Treasurer had a number of interviews
with Mr. William C. Webber and his attorney, James
Swan, and finally agreed with them upon the form
of the Deed which Mr. Weber would be willing to
unite in signing.  The matter was then taken up with
the Common Council, sitting as a Committee of the
whole, and all of the councilmen and the Corporation
Council were of the opinion that no Deed would be
accepted except one without conditions.  Accordingly,
your Treasurer agreed to recommend the delivery of
the Deed with the foregoing conditions eliminated.

This situation was explained to the members of
the Association at their Annual Meeting, held last
June, and a Resolution was adopted authorizing the
Trustees, notwithstanding this demand of the city,
to execute and deliver a Deed of the real and person-
al property of the Association, and subsequently on
September 12th the Trustees authorized the President
and Treasurer to make the conveyance to the city.

Accordingly, in November your President and
Treasurer, on behalf of the Detroit Museum of Art,
executed and delivered a Warranty Deed of the real
estate and a Bill of Sale of the collection of Art,
both running to the City of Detroit, and delivered
the same to the Arts Commission, which in turn
transmitted the same for approval to the Common
Council.  This Deed was accepted by the Council, to-
gether with a Deed from William C. Weber and wife
covering the undivided half of the northerly block,
the Council at the same time directing the Comptrol-
ler to pay off the two mortgages against the property,
one held by William C. Weber and one by the Dime Sav-
ings Bank, and also to pay $4500 attorneys' bills to
James Swan and Richard Lawson, attorneys for Mr. Weber
in the pending litigation.  At the same time, the Com-
mon Council accepted the Bill of Sale of the collection
of Art.

On account of the provision for the payment of
Mr. Weber's attorney bills, the Mayor vetoed the ac-
ceptance of the documents but the resolution was
adopted by a unanimous vote over his veto and in Dec-
ember the transaction entirely closed, the two mort-
gages paid off and the Deeds placed on record.

You will recall that Act #67 of the Public Acts
of the State of Michigan, approved April 15th, 1919,

under which authority was granted for the conveyance
by Art Associations to the municipality of their pro-
perty, contained a provision that the property so
conveyed should in the hands of the city be faithfully
used for the purpose for which the particular corpor-
ation was organized. In the Deed to the City of Detroit
it was expressly recited that the conveyance was exe-
cuted and delivered under and in pursuance of said act.
This fact, together with the fact that the Deed was
delivered to the Arts Commission, seemed to us suffi-
ciently to give assurance that the property cannot be
used excepting for the same purposes as were provided
for in the incorporation of the Detroit Museum of Art,
or some kindred purpose, as provided in the Act of the
Legislature referred to.

The Secretary gave a report of the audits made by the Detroit
Trust Company covering the period from July 1, 1918 to Jund 30, 1919.

MOVED, supported and carried that the expenditure of $335
in addition to the $500 appropriated at the meeting of May 2nd for the
purchase of laces be approved.

The Secretary was authorized to make such entries on the
books of the corporation as are necessary to make them comply with
present conditions.

MOVED, supported, and carried that the painting, "Child with
Kitten" by William Owen, be purchased for the sum of $7500 from the
General Membership and Donations Fund.

Mr. Ferry offered the following resolution, which was unan-
imously adopted:

WHEREAS all of the property and collections of
the Detroit Museum of Art, with the exceptions of its
invested trust funds, have been conveyed and trans-
ferred to the City of Detroit to be administered by
the newly created Arts Commission of the City of Detroit,
and

WHEREAS it is believed that the following enumerated
objects can be obtained by the continuance of present cor-
poration, i. e.

I will and bequeath to the Detroit Museum of Art Founders Society the sum of $200,000, this sum to be invested and from time to time reinvested by said Society and the income used to purchase works of art to be permanently given to and exhibited in the museum of the Detroit Institute of Arts, and at the end of each period of five years, 5% of the principal of said amount shall also be available for expenditure so that the entire sum of principal and interest may, and I hope will be consumed by the end of approximately one hundred years and such principal sum shall be used for the same purpose as the income – to purchase works of art to be permanently exhibited in the museum of the Detroit Institute of Arts. All objects so purchased and exhibited to be suitably and plainly labelled Ralph H. Booth Bequest.

My deep interest in the development of art and the interest of the people leads me to make this bequest with no specific requirement as to what shall be purchased. Therefore, I shall simply state that one painting or other object of first importance is to be preferred to many objects of relatively small importance – genius should be evident in the works – not merely talent. If objects so purchased shall at any time be deemed not suitable for exhibition in the galleries of the said museum at least eight months of each and every year then said works of art shall be offered back to my heirs and if they are not accepted by such heirs, then they may be otherwise disposed of.

# DETROIT MUSEUM OF ART
## FOUNDERS SOCIETY
### DETROIT, MICHIGAN

O. M. FERRY JR.
PRESIDENT

CLYDE H. BURROUGHS
SECRETARY

Last year it became necessary to raise a special emergency maintenance fund for the purpose of keeping the Art Institute open to the public and to carry on its program of exhibitions, lectures, and other educational activities. Owing to the continued financial difficulties of the city, we are again called upon to take a large share of the maintenance burden of the Art Institute, and in order that the present services may not be further curtailed it is necessary to raise a special emergency fund of $16,000.

If Detroit is not to lose all that it has gained in the field of culture, it must be by the generous and courageous action of a few determined people.

Your contribution last year toward the operating costs enabled us to provide for the various activities which have made the museum so vital a part of the community life, and we write to ask if you will again make a substantial contribution toward this purpose.

Thanking you in anticipation of your continued support in this emergency, we are

Respectfully yours,

President.                        Secretary.