## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## MOTION TO COMPEL FULL AND FAIR RESPONSES
## TO SYNCORA'S INTERROGATORIES

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") hereby submit this motion (the "Motion to Compel") to compel the City to provide full and fair responses to Syncora's Interrogatory Nos. 1-7. In support of its motion, Syncora respectfully states as follows:

## INTRODUCTION

1.      Kevyn Orr has repeatedly stated that as a fiduciary of the City he is obligated to fully and fairly explore *all* options regarding *each* of the City's assets. In entering into the so-called Grand Bargain, Syncora believes that the City failed to fully diligence the value of the assets it was giving away, as well as the legal impediments to maximizing that value. To that end, Syncora issued the following interrogatories relating to the City's due diligence of its art collection:

(1)     Identify all Works of Art in the Collection that have been valued at $1 million or more.

(2)     Identify the 300 most valuable Works of Art in the Collection.

(3)     Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 2.

(4)     Identify all Works of Art in the Collection that were not purchased with City funds.

(5)     Identify all Works of Art that have been sold by the City or DIA Corp.

(6)     Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 5.

(7)     Identify the number of visitors, on an annual basis, at DIA Corp. from 1883 to present.

*See* First Set of Interrog. at 8-9 [Doc. No. 4036] (the "Art Interrogatories").

2.     The above interrogatories were intended to ascertain what steps the City had taken to value its art collection and identify any restrictions on its sale — information that directly relates to the City's claim that the DIA Settlement falls within the range of reasonableness. Yet, in its initial responses, the City failed to provide the requested information and instead claimed that the information Syncora sought "*may* be determined *in part* by examining the documents the DIA Corp. has agreed to produce." (*See* Ex. 6A, City's Objections and Responses at 10-23 (emphasis added).)

3.     Syncora informed the City that such a response was improper and offered it a choice — either (a) provide the requested answer or (b) admit that it did not know the know the answer. The City chose the latter option.

4.     Despite this agreement, the City's two supplemental responses remained deficient. Rather than admitting that it did not know the answer, the

2

City's second supplemental responses referred Syncora to the document productions of the City and the DIA. None of those documents, however, contained the requested answers.

5.      It is now clear that the City has not done the basic diligence necessary to evaluate the value of the collection and any restrictions on its alienability. The City refuses, however, to concede as much, and instead has attempted to walk to the line between (a) not answering the question and (b) not conceding that it does not know the answer. The result is a response that not only fails to comply with the Federal Rules but also violates the terms of the parties' agreement.

6.      Accordingly, Syncora moves to compel the City to fully and properly respond to the Art Interrogatories by either (a) providing the requested answers to Syncora's interrogatories or (b) stating that it does not know the answers.

## BACKGROUND

7.      Syncora served its first set of interrogatories on the City on April 11, 2014 [Doc. No. 4036]. On May 6, 2014, the City provided its responses — many of which were nonresponsive and incomplete. *See* Syncora's Mot. to Compel at 3 [Doc. No. 4557]. For example, in response to the interrogatory asking the City to identify all works of art valued at $1 million or more, the City provided the following response:

> In addition to its General Objections, the City objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome

3

and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that have been valued at $1 million or more. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

8. During a subsequent meet-and-confer, the City agreed to supplement its answers. (*See* Ex. 5, Hackney Decl. ¶ 3.) On the Art Interrogatories, Syncora provided the City with the option of "either answer[ing] the rog or say[ing] it doesn't know the answer." (*Id.*) The City admitted that it did not, in fact, know the answers to the Art Interrogatories and chose the latter option. (*Id.*)

9. On June 2, 2014, the City provided its first set of supplemental responses. Despite its prior agreement, the City failed to provide any supplemental responses to the Art Interrogatories. (*See* Ex. 6B, City's Objections and Supplemental Responses.)

10. The parties then conducted another meet-and-confer where Syncora explained that, per the parties' agreement, the City was required to affirmatively state that it did not know the answer to the Art Interrogatories. (*See* Ex. 5, Hackney Decl. ¶ 5.) Syncora again requested that the City either provide the

4

requested answers or state that it did not know them.  (*Id.*)  And again the City

agreed and chose the latter option.  (*Id.*)

11.    On June 9, 2014, the City provided its second supplemental

interrogatory responses.  (*See* Ex. 6C, City's Objections and Second Supplemental

Responses.)  Again though, the City failed to comply with the parties' agreement

and affirmatively state that it did not know the answers to the interrogatories.

Instead, the City provided essentially the same response to each of the Art

Interrogatories:

> Documents relating to the City's knowledge as to the subject matter of
> this request can be found at POA00257802-POA00258006,
> POA00258033-POA00258245, POA 00261726-POA00262345 and
> POA00262348-POA00262496, which speak for themselves. It is the
> City's understanding and belief that the information needed to answer
> this request fully and accurately is in the possession of the DIA, if
> anyone, and directs Objectors to the documents they have subpoenaed
> from the DIA.

(*See id.* at 3, 4, 7, 9, 10, 13.)

12.    After receiving these deficient responses, Syncora again informed the

City that it still had not complied with the parties' agreement.  (Ex. 5, Hackney

Decl. ¶ 9.)  In an attempt to avoid motion practice, Syncora offered to provide

language that would constitute an acceptable response to the Art Interrogatories.[1]

---

[1]    *See* Ex. 5, Hackney Decl. ¶ 9 n.1 ("I am totally willing to avoid motion practice if the City
will provide answers that say, for example, 'Other than as reflected in the Christie's
valuation, found at document x, the City does not know what pieces in the collection are
worth more than $1 million.'  Similar answers can be crafted for each rog.  If you'd like, we
can propose language to you that would be acceptable that we believe to be true.")

5

The City refused Syncora's offer, which resulted in the need for the instant motion. (*Id*.)

## **JURISDICTION**

13.    The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## **RELIEF REQUESTED**

14.    Syncora respectfully requests that the Court enter an order compelling the City to fully and properly respond to the Art Interrogatories by either (a) providing the requested answers or (b) stating that it does not know the answers.

## **ARGUMENT**

15.    The City argues that the DIA Settlement — the so-called "cornerstone of the Plan" — is reasonable because the "value of the funds to be contributed by the DIA Funding Parties is more than any reasonable estimate of the minimum amount that would be achieved if the City attempted to sell the DIA Assets." *See* Consol. Reply at 16 [Doc. No. 5034].  Though the value and alienability of the art collection are essential to evaluate this argument, the City refuses to fully and fairly respond to the Art Interrogatories.  In doing so, the City is acting in contravention of the Federal Rules and the parties' prior agreement.

**A. The City Has Repeatedly Failed to Provide Full and Fair Responses to the Art Interrogatories.**

16.     When responding to interrogatories, a party's "answer must be 'true, explicit, responsive, complete, and candid.'" *Weaver v. Mateer and Harbert, P.A.*, 277 F.R.D. 655, 657 (M.D. Fla. 2011). The City's responses to the Art Interrogatories are none of these.

17.     *First*, the City's responses are neither clear nor explicit. Though each of the below interrogatories asks a simple question, the City's responses appear designed to obfuscate what the City does — and does not — know:

- When asked to identify the 300 most valuable works of art, the City stated, in part, that "Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify the 300 most valuable Works of Art."

- When asked to identify the works of art that were not purchased with City funds, the City stated, in part, "that, for more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the State of Michigan, the DIA Corp. and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to or for the benefit of the DIA. Funds from various sources have been used in various ways to develop and maintain the Museum Art Collection. Although works of art in the Museum Art Collection are given a 'credit line' to acknowledge a donor or contributor of funds or artwork, it would be unduly burdensome and misleading to distinguish in general terms between and among those objects that were donated, those that were acquired solely with specific and traceable funds, those that were acquired using funds from various sources and those that were acquired in commingled transactions."

- When asked to identify all works of art that have been sold by the City, the City stated, in part, that it "objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agrement, which gives the

7

DIA Corp. control over and responsibility for the DIA and its objections."

18.	*Second*, neither the City's initial responses nor its second supplemental responses are responsive or complete.  In its second supplemental responses, for example, the City refers Syncora to specific documents from the City's production.  While these documents may relate to the art collection generally, none of them identify, *inter alia*, the 300 most valuable works of art (Interrogatory No. 2), the restrictions on alienability of those works (Interrogatory No. 3), the works that were not purchased with City funds (Interrogatory No. 4), or the number of visitors to the DIA (Interrogatory No. 7).  (*See* Ex. 3, Hackney Dec. ¶ 8.)

19.	In addition, the City cannot simply refer Syncora to the 50,000 documents produced by the DIA — notably, documents that the City has not reviewed, does not know the contents of, and, based on Syncora's review, do not contain the requested information.  Nor is the City's response to an unspecified mass of documents even sufficient as an invocation of Rule 33(d).  *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514-15 (W.D. Ky. 2010) ("A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded.").

20.	*Third*, the City's responses are not true or candid.  It is now clear that the City does not have the information sought in the Art Interrogatories.

Nevertheless, the City's answers suggest the opposite — namely, that the City <u>does</u> know the answer to Syncora's interrogatories and that those answers can be ascertained from documents in the City's and the DIA's production.

21. A full and fair response to the Art Interrogatories requires that the City either provide the requested answers or state that it does not know. To date, it has done neither.

**B. The City's Supplemental Interrogatory Responses Violate the Parties' Agreement that the City Would Concede that It Does Not Know the Answers to Syncora's Interrogatories.**

22. During the numerous meet-and-confers regarding the City's responses to the Art Interrogatories, Syncora presented the City with a reasonable choice — either provide the requested answers or admit that it did not know them. On each occasion, the City agreed to the latter option.

23. Despite this agreement, the City refuses to provide responses explicitly stating that it does not know the answer. The City's refusal to do so is a breach of that agreement — and an overt attempt to avoid admitting what is clearly true.

WHEREFORE, for the foregoing reasons, Syncora requests that the Court enter an order compelling the City to respond to Interrogatory Nos. 1-7 by either (a) providing the requested answers or (b) stating that it does not know the answer.

13-53846-tjt   Doc 5436   Filed 06/18/14   Entered 06/18/14 17:13:39   Page 9 of 10

Dated: June 18, 2014              Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: _/s/ Stephen C. Hackney_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and*
*Syncora Capital Assurance Inc.*