# Exhibit 5

# Declaration of Stephen C. Hackney

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## DECLARATION OF STEPHEN C. HACKNEY IN SUPPORT OF SYNCORA'S MOTION TO COMPEL FULL AND FAIR RESPONSES TO SYNCORA'S INTERROGATORIES

1. I am a partner at Kirkland & Ellis LLP, attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc. ("Syncora") in the above-captioned action. I submit this declaration in support of the *Motion to Compel Full and Fair Responses to Syncora's Interrogatories* (the "Motion to Compel").

2. Syncora served its first set of interrogatories on the City on April 11, 2014 [Doc. No. 4036]. On May 6, 2014, the City provided its initial set of responses. *See* Syncora's Mot. to Compel at 3 [Doc. No. 4557]. Many of the City's answers to Syncora's interrogatories were nonresponsive and incomplete. In addition, the City made extensive use of Rule 33(d) and included a host of general objections that it incorporated into all of its responses. For example, in response to the interrogatory asking the City to identify all works of art valued at $1 million or more, the City provided the following response:

In addition to its General Objections, the City objects to this interrogatory as vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that have been valued at $1 million or more. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

3. During a subsequent meet-and-confer, counsel for Syncora explained that many of the City's responses were deficient. In response, the City agreed to supplement its answers. On the Art Interrogatories, Syncora provided the City with the option of "either answer[ing] the rog or say[ing] it doesn't know the answer." (Ex. 6D, 5/14/2014 E-mail from S. Hackney to G. Irwin.) The City chose the latter option.

4. On June 2, 2014, the City provided its first set of supplemental responses. As part of those responses, the City did not provide any supplemental responses to the Art Interrogatories. (*See* Ex. 6B, City's Objections and Supplemental Responses.)

5. On June 3, 2014, the parties conducted another meet-and-confer regarding the Art Interrogatories. During that meet-and-confer, Syncora explained

3

that the City was required to affirmatively state that it did not know the answer to the Art Interrogatories, and that it had not done so. (*See* Ex. 6E, 6/4/2014 E-mail from W. Arnault to G. Irwin.) Syncora again requested that the City either provide the requested answers or state that it did not know them. The City chose the latter option.

6. As counsel for Syncora explained in an email to counsel for the City, "per our discussion, except for the three art interrogatories you've identified below, you've agreed that the City will supplement its answers by stating that the City does not know the answer to the questions posed in the applicable interrogatories." (*Id.*) In response, counsel for the City stated that, "In many instances we would have partial information (we did have the Christies report) but we'll acknowledge that the answers to these questions reside with DIA, not the City." (Ex. 6E, 6/4/2014 E-mail from G. Irwin to W. Arnault.)

7. On June 9, 2014, the City provided its second supplemental interrogatory responses. (*See* Ex. 6C, City's Objections and Second Supplemental Responses.) The City provided essentially the same response to each of the Art Interrogatories:

> Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA 00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if

4

anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

(*See id.* at 3, 4, 7, 9, 10, 13.)

8. None of the documents the City identifies are fully responsive to the Art Interrogatories. For example, the documents do not (a) identify all DIA art worth more than $1 million; (b) the 300 most valuable works of art; (c) all restrictions on the 300 most valuable works of art; (d) all works of art that were not purchased with City funds; (e) all works of art that were sold by the City or DIA; (f) all restrictions on alienability on the art sold by the City or DIA; and (g) the number of visitors to the DIA, on an annual basis, from 1883 to the present. *See* Syncora's First Set of Interrog. at 8-9 [Doc. No. 4036].

9. After receiving these deficient responses, Syncora again informed the City that it still had not complied with the parties' agreement. (*See* Ex. 6F, 6/10/2014 E-mail from S. Hackney to G. Irwin.) In an attempt to avoid motion practice, Syncora offered to provide language that would constitute an acceptable response to the Art Interrogatories.[1] The City refused Syncora's offer. (*See* Ex. 6F, 6/11/2014 E-mail from G. Irwin to S. Hackney.)

---

[1] *See* Ex. 6F, 6/10/2014 E-mail from S. Hackney to G. Irwin ("I am totally willing to avoid motion practice if the City will provide answers that say, for example, 'Other than as reflected in the Christie's valuation, found at document x, the City does not know what pieces in the collection are worth more than $1 million.' Similar answers can be crafted for each rog. If you'd like, we can propose language to you that would be acceptable that we believe to be true.")

I declare under penalty of perjury that the foregoing are true and correct to the best of my knowledge, information, and belief.

Chicago, Illinois
Dated: June 18, 2014

_/s/ Stephen C. Hackney_
Stephen C. Hackney