<u>**Exhibit 6A**</u>

**City of Detroit's Objections and Responses to Syncora Capital Assurance Inc.
and Syncora Guarantee Inc.'s First Set of Interrogatories
to the City of Detroit**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |
| | ) |

## CITY OF DETROIT'S OBJECTIONS AND RESPONSES TO SYNCORA CAPITAL ASSURANCE INC. AND SYNCORA GUARANTEE INC.'S FIRST SET OF INTERROGATORIES TO THE CITY OF DETROIT

The City incorporates the following general objections into each of its specific responses to these Interrogatories. The assertion of the same, similar, or additional objections, or a partial response to any individual request, does not waive any of City's general objections.

The City's responses to these Interrogatories are provided without prejudice to the City's right to supplement them at any time prior to trial or to otherwise produce evidence based on later discovered information. As a result, the City reserves the right to supplement its responses in light of new information or inadvertent errors or omissions herein.

Moreover, the City's responses to these Interrogatories shall be made without prejudice to the City's right to introduce any and all evidence of any kind in these proceedings. Further, the City reserves the right to introduce evidence from any witness during these proceedings, even if that evidence was not provided

in response to these Interrogatories due to mistake, oversight, inadvertence, misinterpretation, or otherwise.

Finally, a response to any of these Interrogatories does not constitute an implicit or explicit admission by the City that it agrees with any of Syncora Capital Assurance Inc. and Syncora Guarantee Inc.'s (the "Objectors") characterizations or definitions contained therein, or that the information sought is likely to lead to the discovery of admissible evidence. Except for the facts explicitly admitted herein, no admission of any nature whatsoever is to be implied by or inferred from any statement anywhere in this document.

## GENERAL OBJECTIONS

1.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they seek to impose a burden or obligation beyond those required by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of the United States Bankruptcy Court for the Eastern District of Michigan, any other applicable procedural rules, or the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment ("Scheduling Order"), or the most recently filed version of that Order. Specifically, the City objects to any request which seeks to require the disclosure of expert materials prior to the time specified in the Scheduling Order for disclosure of experts. See

Fourth Amended Scheduling Order, at ¶ 9 (June 10, 2014, is the deadline to file list of experts).

2.     The City's response to each and every one of these Interrogatories is subject to any applicable competence, relevance, materiality, propriety, and admissibility objections, and to any and all other objections on any grounds that would require the exclusion of any statements contained herein if any of these Interrogatories were asked of, or statements contained herein were made by, a witness present and testifying in court.  The City explicitly reserves all such objections and may interpose them at trial.

3.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent that they seek information subject to the attorney-client privilege, attorney work product doctrine, the settlement or mediation privilege (*see* Dkt. 0322), the common interest doctrine and/or any other applicable privilege or immunity, or to a protective order and/or stipulation of confidentiality between the City and any third party.  Further, any responses to these Interrogatories shall not be deemed a waiver or impairment of the City's rights or any claim of privilege or immunity.

4.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they seek information that is confidential or proprietary business information, trade secrets, other proprietary

information, intellectual property, and/or commercially sensitive information of a third party to whom the City owes a legal obligation of non-disclosure. Such information will only be provided pursuant to a court-entered protective order and with the consent of the operative third parties.

5.      The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they request information protected from discovery by any right to privacy or any other applicable privilege, including the right to privacy of third parties, or by the City's obligations under applicable law to protect such confidential information.

6.      The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they seek discovery of information that is not reasonably accessible, on the grounds of undue burden and cost. By stating that it will produce or make available information responsive to a particular interrogatory, the City represents that it will produce responsive, non-privileged information subject to reasonable limitations on the scope of the search, review, and production of such information due to the cost and burden of production.

7.      The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, as unduly burdensome and oppressive to the extent they purport to require the City to search facilities and inquire of its

officers, employees, representatives, attorneys, advisors and/or agents other than those facilities and officers, employees, representatives, attorneys, advisors and/or agents reasonably expected to have responsive, non-privilege information. Accordingly, the City's responses to these Interrogatories are based upon (1) a reasonable search, given the time permitted to respond to these Interrogatories, of facilities and files reasonably expected to possess responsive, non-privilege information and (2) inquiries of the City's officers, employees, representatives, attorneys, advisors and/or agents who could reasonably be expected to possess responsive, non-privilege information.

8.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they seek disclosure of information not within the City's possession, custody, or control.

9.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.  Moreover, the City objects to each and every one of these Interrogatories, and the instructions and definitions therein, as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information

relating to an individual topic or subject area for a time period outside the scope of the subject matter at issue in this proceeding.

10.     The City objects to each and every one of the Objectors' definitions, instructions, and interrogatories to the extent that they are or purport to be so comprehensive as to be impossible or unduly burdensome and expensive to answer literally.  Such definitions and requests are overly broad, vague, unduly burdensome, and do not describe the requested information with reasonable particularity.  The City also objects to each and every one of these Interrogatories, and the instructions and definitions therein, as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent they seek information regarding "any" or "all" persons, entities, objects, or events relating to an individual topic or subject area. Specifically, the City objects to the phrase "all" as it is used throughout these Interrogatories to the extent that it requires the City to engage in extensive research, in order to identify each and every matter that may possibly be responsive to an Interrogatory.

11.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent that any term, phrase or word used therein is vague and ambiguous, subject to varying interpretation, requires subjective knowledge by any other party other than the City, or involves issues of

law subject to resolution by the court. The City will respond to each and every Interrogatory to the extent possible, based on the most objectively reasonable interpretation of each such term, phrase or word in the Interrogatory. To that end, any terms not otherwise defined by these Interrogatories, and the instructions and definitions therein, will be given the definitions reflected in the most recently filed version of the City's Chapter 9 Plan for the Adjustment of Debts of the City of Detroit (the "Plan") and the most recently filed version of the City's Disclosure Statement With Respect to Chapter 9 Plan for the Adjustment of Debts of the City of Detroit (the "Disclosure Statement"). In addition, for the purposes of its responses to these Interrogatories, the City will define the terms "Plan," "Disclosure Statement," and "Scheduling Order" to mean the most recently filed versions of those documents.

12. The City objects to each and every one of these Interrogatories to the extent that they either do not specify a responsive time period or specify a time period that is not relevant to the Objectors' claims or defenses as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, the City's responses to these Interrogatories are limited to the time period of January 1, 2013 through the date of the City's response to these Interrogatories.

13.     The City objects to the definition of "City," "you" and "your" insofar as they purport to include "the City of Detroit, Michigan, and, as applicable, its officers, employees, representatives, attorneys, advisors and/or agents" because such an expansive definition is overly broad, unduly burdensome, and potentially calls for information that is not within the possession, custody, or control of the City, or its advisors, Ernst & Young, Conway MacKenzie, and Miller Buckfire.

14.     The City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent that the information sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.  Specifically, the City objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent the information sought is equally available to the Objectors, including information that is publicly available and/or already in the Objectors' possession, as providing such information would be unduly burdensome.

15.     The City objects to these Interrogatories insofar as they exceed the 25-interrogatory limit under Federal Rule of Civil Procedure 33, as made applicable to this proceeding by the Federal Rules of Bankruptcy Procedure 7026, 7033, 9014, and 9016, and to the extent they contain multiple and often unrelated subparts that should be the subject of multiple, separate interrogatories.

16.     The City's general and specific objections are made based on its understanding and interpretation of each Interrogatory.  The City reserves the right to supplement its Objections should the Objectors subsequently put forth an interpretation of any Interrogatory differing from the City's interpretation of the same language.  The City reserves the right to object on any ground at any time to other discovery requests the Objectors may propound involving or relating to the same subject matter of these Interrogatories.

17.     The City's responses to these Interrogatories reflect the current state of its knowledge and understanding regarding matters about which the inquiry has been made.  The City reserves its rights to supplement or modify its responses with any relevant information as it may hereafter discover and will do so to the extent required by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of the United States Bankruptcy Court for the Eastern District of Michigan, or any other applicable procedural rules.

18.     By responding to these Interrogatories, the City is not implicitly or explicitly agreeing with or otherwise adopting the Objectors' characterizations or definitions contained therein, or admitting or conceding that the information sought is likely to lead to the discovery of admissible evidence.  Except for any facts explicitly admitted in the City's objections or responses, no admission of any

nature whatsoever is to be implied by or inferred from any statement anywhere in this document.

19.    Each of these General Objections is incorporated by reference into each of the objections set forth below and each response set forth below is made without waiving any of these General Objections.

## RESPONSES TO INTERROGATORIES

1.    Identify all Works of Art in the Collection that have been valued at $1 million or more.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 1:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations.  Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that have been valued at $1 million or more.  The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works.  The City will provide copies of these documents or seek

access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

2.      Identify the 300 most valuable Works of Art in the Collection.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 2:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations.  Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify the 300 most valuable Works of Art.  The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works.  The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

3.      Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 2.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 3:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent that this interrogatory seeks legal analyses and conclusions or seeks information or documents that are privileged or otherwise protected from disclosure. The City further objects to the breadth of this request insofar is it purports to demand that the City identify "all" restrictions on alienability. Subject to and without waiving these objections, the City answers and responds as follows. For more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the DIA Corp., and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to, or for the benefit of, the Museum. Objects became part of the Museum Art Collection through thousands of transactions entered into under vastly differing circumstances over the course of more than 100 years. As a result and given disparate views of certain stakeholders, the City has not established with certainty whether it has the legal authority to use any of those objects to satisfy its debts and obligations. This is particularly true as to those works of art that are not credited as having been acquired using City funds. Even if the City could fully validate the extent of its property interest in the works of art in the Museum Art Collection, the

City's ability to sell, transfer or convey objects in the Museum Art Collection may be limited as a matter of law and fact. Although the City cannot predict all of the likely challenges that would be raised if it sought to monetize the DIA assets in whole or in part, it is highly likely that the Attorney General, the DIA Corp. and others will move vigorously in an effort to prevent such monetization. Opposing parties may contend, by way of example, that: (a) the DIA assets in whole or in part are held in charitable trust consistent with Attorney General Opinion 7272; (b) the DIA assets are immune from sale pursuant to the public trust doctrine; (c) various legal doctrines (such as election, dedication, unjust enrichment, estoppel and the law of fixtures), statutes and various trust-related doctrines prohibit or bar the City from benefiting from the use of such DIA assets; (d) express and implied donative restrictions limit the City's rights with respect to such DIA assets; and (e) contract and policy provisions prohibit the City from monetizing any of the DIA assets. Some of these restrictions are addressed in the DIA Corp.'s position paper and Attorney General Opinion 7272. The City potentially could decide to challenge each of these arguments, but there is no assurance that the City would prevail if it did so. If a court concludes that these restrictions or other barriers are valid and binding, the City would not be able to use the DIA assets to satisfy obligations to creditors. In addition to these legal and factual restrictions on the ability of the City to transfer, sell or convey some or part of the Museum Art

Collection, the City also recognized that there are various other potential ethical, public policy and practical restrictions on the City's ability to use DIA assets to satisfy City debts and obligations. Although the City is required to address the interests of creditors, it is not required to sell assets to satisfy obligations to creditors. Indeed, it is appropriate for the City to consider the effect of the sale of DIA assets on the City and its viability post-bankruptcy. As relevant here, the DIA in its current form is the result of more than 100 years of public-private charitable collaboration for the benefit of the people of the City of Detroit and the State of Michigan. Even if the City could lawfully do so, the City may appropriately consider whether it should repurpose charitable contributions to address the City's financial crisis in a manner that may not have been intended by many donors to the DIA. In addition, the DIA serves an important public function. The City may appropriately consider the effect that a sale of DIA assets would have on the DIA the future of the City and the community resources available to the Public.

4. Identify all Works of Art in the Collection that were not purchased with City funds.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 4:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement,

which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that, for more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the State of Michigan, the DIA Corp. and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to or for the benefit of the DIA. Funds from various sources have been used in various ways to develop and maintain the Museum Art Collection. Although works of art in the Museum Art Collection are given a "credit line" to acknowledge a donor or contributor of funds or artwork, it would be unduly burdensome and misleading to distinguish in general terms between and among those objects that were donated, those that were acquired solely with specific and traceable funds, those that were acquired using funds from various sources and those that were acquired in commingled transactions. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of Major Works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp.

5. Identify all Works of Art that have been sold by the City or DIA Corp.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 5:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that the answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

6. Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 5.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 6:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent that this interrogatory seeks legal analyses and conclusions or seeks information or documents that are privileged or otherwise protected from disclosure. The City further objects to the breadth of this request insofar is it purports to demand that

the City identify ""all"" restrictions on alienability. Subject to and without waiving these objections, the City answers and responds as follows. For more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the State of Michigan, the DIA Corp., and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to, or for the benefit of, the Museum. Objects became part of the Museum Art Collection through thousands of transactions entered into under vastly differing circumstances over the course of more than 100 years. As a result and given disparate views of certain stakeholders, the City has not established with certainty whether it has the legal authority to use any of those objects to satisfy its debts and obligations. This is particularly true as to those works of art that are not credited as having been acquired using City funds. Even if the City could fully validate the extent of its property interest in the works of art in the Museum Art Collection, the City's ability to sell, transfer or convey objects in the Museum Art Collection may be limited as a matter of law and fact. Although the City cannot predict all of the likely challenges that would be raised if it sought to monetize the DIA assets in whole or in part, it is highly likely that the Attorney General, the DIA Corp. and others will move vigorously in an effort to prevent such monetization. Opposing parties may contend, by way of example, that: (a) the DIA assets in whole or in part are held in charitable trust consistent with Attorney

General Opinion 7272; (b) the DIA assets are immune from sale pursuant to the public trust doctrine; (c) various legal doctrines (such as election, dedication, unjust enrichment, estoppel and the law of fixtures), statutes and various trust-related doctrines prohibit or bar the City from benefiting from the use of such DIA assets; (d) express and implied donative restrictions limit the City's rights with respect to such DIA assets; and (e) contract and policy provisions prohibit the City from monetizing any of the DIA assets. Some of these restrictions are addressed in the DIA Corp.'s position paper and Attorney General Opinion 7272. The City potentially could decide to challenge each of these arguments, but there is no assurance that the City would prevail if it did so. If a court concludes that these restrictions or other barriers are valid and binding, the City would not be able to use the DIA assets to satisfy obligations to creditors. In addition to these legal and factual restrictions on the ability of the City to transfer, sell or convey some or part of the Museum Art Collection, the City also recognized that there are various other potential ethical, public policy and practical restrictions on the City's ability to use DIA assets to satisfy City debts and obligations. Although the City is required to address the interests of creditors, it is not required to sell assets to satisfy obligations to creditors. Indeed, it is appropriate for the City to consider the effect of the sale of DIA assets on the City and its viability post-bankruptcy. As relevant here, the DIA in its current form is the result of more than 100 years of public-

private charitable collaboration for the benefit of the people of the City of Detroit and the State of Michigan. Even if the City could lawfully do so, the City may appropriately consider whether it should repurpose charitable contributions to address the City's financial crisis in a manner that may not have been intended by many donors to the DIA. In addition, the DIA serves an important public function. The City may appropriately consider the effect that a sale of DIA assets would have on the DIA the future of the City and the community resources available to the Public.

7. Identify the number of visitors, on an annual basis, at DIA Corp. from 1883 to the present.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 7:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, being asked to identify information as far back as 1883 is unduly burdensome. The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that the answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the documents that reflect museum attendance

and museum survey information for the 2010-2014 period. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

8.     Identify, on an annual basis, the funds that the City has provided to DIA Corp. from 1883 to the present.

### OBJECTION AND RESPONSE TO INTERROGATORY NO. 8:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, being asked to identify information as far back as 1883 is unduly burdensome. The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that is has in various ways and at various times contributed funds for the charitable and public purpose of supporting the DIA. In so doing, it has provided funds to the DIA Corp., which is a charitable non-profit corporation initially established pursuant to 1885 PA 3 and which the Attorney General of the State of Michigan has declared to be a charitable trust. The City currently provides no operating funds to support the DIA and ceased allocating funds for development of the Museum Art Collection in the 1950s. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to

produce and/or make available for inspection and copying, including the documents in the archival files. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

9. Identify all communications between the City and third-parties relating to the monetization of the Collection.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 9:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent that this interrogatory seeks information or documents that are privileged or otherwise protected from disclosure (e.g., discussions in mediation proceedings). In particular, the City states that the value and treatment of DIA assets was an often-discussed and highly reported topic throughout the Emergency Manager's term, and thus it would be unduly burdensome, and would not be feasible, to accurately recount each time and with whom the issue was discussed. Subject to and without waiving these objections, the City answers and responds that the following entities discussed the value of DIA assets—DIA representatives; numerous creditor groups; mediators and participants in mediation; and representatives from Christie's.

10.    Identify all of the non-Collection DIA Assets that the City holds title to.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 10:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.   In particular, the term "non-Collection DIA Assets" is vague.   Subject to and without waiving these objections, the City states that information regarding non-Collection assets can be found at Exhibit A to Exhibit I.A.89 (Principal Terms of the DIA Settlement) of the Plan. The City also refers objector to the listing of fixed assets found at POA00253350-3354, but states that the $27,368,674.00 entry in connection with Tag Number B11000011 was determined to be overstated by $23,297,962.00 in connection with the City's 2010 audit and has been removed from the CAFR since that time.

11.    Identify all of the Works of Art in the Collection that are currently on display to the public.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 11:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for DIA and its

operations. Subject to and without waiving these objections, the City states that Works of Art are displayed, loaned, studied and stored at various times and for various reasons. Thus, it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that are currently on display to the public. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of Major Works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp.

12. Identify all federal, state, or private funds that the City expects to receive in the next ten years.

### OBJECTION AND RESPONSE TO INTERROGATORY NO. 12:

In addition to its General Objections, the City objects as this interrogatory is overly broad and unduly burdensome in that there is no centralized tracking system for grant information city-wide. Subject to and without waiving its objections, the City refers Objector to, among other documents, POA00031957 -1980 for information responsive to this interrogatory. Further, the City refers Objectors to the KPMG, OMB Circular A-133 Single Audit Report for the year ended June 30, 2012, which is available on the City's website, and contains information about grants.

13.	Identify all judgments against the City under the Revised Judicature Act.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 13:

In response to Interrogatory No. 13, the City states that there were no judgments against the City from January 1, 2013 to the present.

14.	For all judgments identified in response to Interrogatory No. 13, describe how the City paid those judgments.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 14:

In response to Interrogatory No. 14, the City states that all judgments against the City under the Revised Judicature Act are paid by check from the City's General Fund, provided that certain prepetition judgments have not been paid, and will be subject to treatment as claims pursuant to the terms of the Plan.

15.	Describe the enforcement remedies available to the City's pension-holders and/or the Retirement Systems had the City not filed for bankruptcy.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 15:

In addition to its General Objections, the City objects as this interrogatory is vague and ambiguous.  The City further objects because this interrogatory calls for speculation and seeks legal analyses and conclusions.

16.	Identify all of the opportunities described in Document 5.29.1.10.1 that the City does not intend to implement.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 16:

In addition to its General Objections, the City objects as this interrogatory is vague in that it does not sufficiently describe the document referred to.  If the

document referenced is the Diagnostic Synthesis Templates dated October 1, 2010, the City responds that it believes the document was created by McKensie & Company, and not by the current advisors of the City. It is unclear that any analysis of this specific document has been undertaken since it was written; however, the City refers the Objectors to the City's production of documents on its reinvestment and revitalization initiatives for information on activities with respect to some of the "opportunities" identified in this document.

17. Describe the methodology that the City utilized to forecast state revenue sharing payments.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 17:**

In addition to its General Objections, the City objects as this interrogatory is vague, overly broad and unduly burdensome. Subject to and without waiving its objections, the City responds that the state revenue sharing projections are based on input from the Michigan State Treasury. *See* POA00232591. The fiscal year 2014 and 2015 projections contemplate estimated state revenue-sharing payments to the City from the State of Michigan Treasury Department's website. Revenue estimates project economic vitality incentive payments ("EVIP"), and constitutional sharing of sales tax revenue, separately. EVIP revenue is projected to remain flat at the fiscal year 2014 level due to its discretionary nature. Constitutional sharing of sales tax revenue is driven by growth of State sales tax and population. Sales tax is projected to grow approximately 2.9% annually

beginning in fiscal year 2017. The City's population growth is based on the Southeast Michigan Council of Government's estimates, which is projected to decrease, impacting revenues from revenue sharing adversely in fiscal year 2021.

18. Describe the basis for the City's determination of the aggregate allowed OPEB Claims ($3,184,900,000).

**<u>OBJECTION AND RESPONSE TO INTERROGATORY NO. 18:</u>**

In addition to its General Objections, the City objects as this interrogatory is vague and ambiguous. In particular, the OPEB claim amount listed in the interrogatory ($3,184,900,000) is not the value of the claim listed in the most recent version of the Plan. Rather, the most recent OPEB claim is approximately $4.3 billion. Subject to and without waiving its objections, the City responds by referring to the Disclosure Statement, Section VIII.L.3.d.

19. Identify any funds that the State of Michigan owes to the City.

**<u>OBJECTION AND RESPONSE TO INTERROGATORY NO. 19:</u>**

In addition to its General Objections, the City objects as this interrogatory is vague. Subject to and without waiving its objection, the City refers Objector to the document numbered POA00188710, and notes that amounts listed as being owed by departments of the State of Michigan, or entities related to the State of Michigan, as well as other individuals and entities, may be subject to disputes, including disputes regarding unapplied payments.

20.    For all funds identified in response to Interrogatory No. 19, describe any and all efforts by the City to collect those funds.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 20:**

In addition to its General Objections, the City objects as this interrogatory is vague, overbroad and unduly burdensome.  Subject to and without waiving its objections, the City responds that collection of accounts receivable which are not paid in full within thirty (30) days after the issuance date, become the responsibility of the Treasurer.  The Treasury Revenue Collections Unit ("RCU") is currently performing a comprehensive data cleanse and analysis of delinquent accounts receivable to ensure the accuracy of the net realizable value. This unit manages the active billing for various City departments.  In addition, the RCU is responsible for the preparation and processing of delinquent accounts including, but limited to, ensuring best efforts are made to recover past due accounts using generally accepted collection techniques.  Two third-party collection agencies are utilized on an as-needed basis to augment overall collection efforts.

21.    Identify the total amount of delinquent property taxes owed to the City.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 21:**

In addition to its General Objections, the City objects as this interrogatory is overly broad and unduly burdensome.  Subject to and without waiving its objections, the City responds that due to the complexity of the City's property tax

system, partially resulting from its participation in the Wayne County Delinquent Tax Revolving Fund, in combination with the 2008 financial crisis, which resulted in greatly increased numbers of delinquent property taxes, and a computer system which was not designed to deal with such a complex system, the City is unable, without a great deal of work, effort and the diversion of already strapped resources, to identify with any accuracy the delinquent property taxes owed to the City.

22.   Identify the total amount of delinquent income taxes owed to the City.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 22:**

In addition to its General Objections, the City objects as this interrogatory is vague, overly broad and unduly burdensome.  Subject to and without waiving its objections, the City refers the Objectors to documents numbered POA00214500, POA00214501, POA00214502, and POA00214503.

23.   Identify the reasons for, and the documents supporting, the decrease in the City's property tax revenues from $182.7 million in 2011 to $147.8 million in 2012.

**OBJECTION AND RESPONSE TO INTERROGATORY NO. 23:**

In addition to its General Objections, the City objects as this interrogatory is vague, overly broad and unduly burdensome.  Subject to and without waiving its objections, the city responds that the 2011 property tax revenues were higher than those in 2012 due to (a) an accounting adjustment totaling approximately $35.0 million and related to County, Library and DPS liabilities being overstated, and (b)

a decrease in property tax revenue in 2012. The City also refers the Objectors to documents numbered POA00188641 to 8706.

24.     Identify each City asset whose actual or estimated value exceeds $2 million.

### OBJECTION AND RESPONSE TO INTERROGATORY NO. 24:

In addition to its General Objections, the City objects as this interrogatory is vague, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the large number and disparate types of assets owned by the City make responding to this interrogatory in detail unduly burdensome. Subject to and without waiving its objections, the City responds that this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence because (a) the City has not identified any asset that will be disposed of for the purpose of satisfying creditors' claims; and (b) the City cannot liquidate and dispose of all assets to generate proceeds for the payment of creditor claims, nor can it be required to do so. Subject to and without waiving its objections, with respect to the value of the DIA Assets, the City refers the Objectors to the Christie's appraisal and further notes that not all assets of the DIA are assets of the City. With respect to other assets, the City refers the Objectors to the numerous documents it has produced relevant to the value of various City assets.

25. For each Interrogatory, identify every person who provided information and/or Documents that were utilized in preparing the response to that Interrogatory.

## OBJECTION AND RESPONSE TO INTERROGATORY NO. 25:

Based on the large number of interrogatories propounded to the City, the time limits on the response, and the number of individuals involved in this effort, the City objects as this interrogatory is overly broad and unduly burdensome. Subject to and without waiving its objections, the City refers Objector to its Witness List [Dkt. 4187 ], and further responds that, in addition to counsel, the individuals, or their staffs, who contributed to the responses to these interrogatories, are identified on the Witness List.

Dated: May 6, 2014        Respectfully submitted,


      /s/  Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

## VERIFICATION

I, Kevyn D. Orr, state that I sign and verify the foregoing Debtor's Responses to the foregoing Interrogatories on behalf of Debtor, and that I am duly authorized to do so. I verify under penalty of perjury under the laws of the United States of America that the foregoing answers are true and correct, except as to those matters as to which I lack personal knowledge. As to those matters I state that, based on the information available to me, they are true and correct to the best of my information and belief.

May 6, 2014

_____

Kevyn D. Orr