# Exhibit 6C

**City of Detroit's Objections and Second Supplemental Responses to Syncora Capital Assurance Inc. and Syncora Guarantee Inc.'s First Set of Interrogatories to the City Detroit**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**CITY OF DETROIT'S OBJECTIONS AND SECOND SUPPLEMENTAL RESPONSES TO SYNCORA CAPITAL ASSURANCE INC. AND SYNCORA GUARANTEE INC.'S FIRST SET OF INTERROGATORIES TO THE CITY OF DETROIT**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7033, and 9014, the City of Detroit, Michigan (the "City") hereby submits the following objections and second supplemental responses to certain of the First Set of Interrogatories ("Interrogatories") propounded by Syncora Capital Assurance Inc. and Syncora Guarantee Inc. (collectively, the "Objectors" or "Syncora").

The City hereby incorporates the introductory statement and General Objections from its May 6, 2014 response to Syncora's interrogatories. Subject to and without waiving that statement or its General Objections, the City has met and conferred with counsel to Syncora and supplements its initial and first supplemental responses as follows.

## SECOND SUPPLEMENTAL RESPONSES TO INTERROGATORIES

1. **Identify all Works of Art in the Collection that have been valued at $1 million or more.**

**RESPONSE TO INTERROGATORY NO. 1:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that have been valued at $1 million or more. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

2.  **Identify the 300 most valuable Works of Art in the Collection.**

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose and it would be unduly burdensome and misleading to attempt to identify the 300 most valuable Works of Art. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for

inspection and copying, including the list of deaccessioned works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

    3.    **Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 2.**

**RESPONSE TO INTERROGATORY NO. 3:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent that this interrogatory seeks legal analyses and conclusions or seeks information or documents that are privileged or otherwise protected from disclosure. The City further objects to the breadth of this request insofar is it purports to demand that the City identify "all" restrictions on alienability. Subject to and without waiving

these objections, the City answers and responds as follows. For more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the DIA Corp., and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to, or for the benefit of, the Museum. Objects became part of the Museum Art Collection through thousands of transactions entered into under vastly differing circumstances over the course of more than 100 years. As a result and given disparate views of certain stakeholders, the City has not established with certainty whether it has the legal authority to use any of those objects to satisfy its debts and obligations. This is particularly true as to those works of art that are not credited as having been acquired using City funds. Even if the City could fully validate the extent of its property interest in the works of art in the Museum Art Collection, the City's ability to sell, transfer or convey objects in the Museum Art Collection may be limited as a matter of law and fact. Although the City cannot predict all of the likely challenges that would be raised if it sought to monetize the DIA assets in whole or in part, it is highly likely that the Attorney General, the DIA Corp. and others will move vigorously in an effort to prevent such monetization. Opposing parties may contend, by way of example, that: (a) the DIA assets in whole or in part are held in charitable trust consistent with Attorney General Opinion 7272; (b) the DIA assets are immune from sale pursuant to the public trust doctrine; (c)

various legal doctrines (such as election, dedication, unjust enrichment, estoppel and the law of fixtures), statutes and various trust-related doctrines prohibit or bar the City from benefiting from the use of such DIA assets; (d) express and implied donative restrictions limit the City's rights with respect to such DIA assets; and (e) contract and policy provisions prohibit the City from monetizing any of the DIA assets. Some of these restrictions are addressed in the DIA Corp.'s position paper and Attorney General Opinion 7272. The City potentially could decide to challenge each of these arguments, but there is no assurance that the City would prevail if it did so. If a court concludes that these restrictions or other barriers are valid and binding, the City would not be able to use the DIA assets to satisfy obligations to creditors. In addition to these legal and factual restrictions on the ability of the City to transfer, sell or convey some or part of the Museum Art Collection, the City also recognized that there are various other potential ethical, public policy and practical restrictions on the City's ability to use DIA assets to satisfy City debts and obligations. Although the City is required to address the interests of creditors, it is not required to sell assets to satisfy obligations to creditors. Indeed, it is appropriate for the City to consider the effect of the sale of DIA assets on the City and its viability post-bankruptcy. As relevant here, the DIA in its current form is the result of more than 100 years of public-private charitable collaboration for the benefit of the people of the City of Detroit and the State of

Michigan. Even if the City could lawfully do so, the City may appropriately consider whether it should repurpose charitable contributions to address the City's financial crisis in a manner that may not have been intended by many donors to the DIA. In addition, the DIA serves an important public function. The City may appropriately consider the effect that a sale of DIA assets would have on the DIA the future of the City and the community resources available to the Public.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY. NO. 3:**

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

4. **Identify all Works of Art in the Collection that were not purchased with City funds.**

**RESPONSE TO INTERROGATORY NO. 4:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement,

which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that, for more than a century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the State of Michigan, the DIA Corp. and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to or for the benefit of the DIA. Funds from various sources have been used in various ways to develop and maintain the Museum Art Collection. Although works of art in the Museum Art Collection are given a "credit line" to acknowledge a donor or contributor of funds or artwork, it would be unduly burdensome and misleading to distinguish in general terms between and among those objects that were donated, those that were acquired solely with specific and traceable funds, those that were acquired using funds from various sources and those that were acquired in commingled transactions. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of Major Works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

5. **Identify all Works of Art that have been sold by the City or DIA Corp.**

### RESPONSE TO INTERROGATORY NO. 5:

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations. Subject to and without waiving these objections, the City states that the answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of deaccessioned works. The City will

provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

**6. Identify all restrictions on alienability on the Works of Art identified in response to Interrogatory No. 5.**

**RESPONSE TO INTERROGATORY NO. 6:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent that this interrogatory seeks legal analyses and conclusions or seeks information or documents that are privileged or otherwise protected from disclosure. The City further objects to the breadth of this request insofar is it purports to demand that the City identify "all" restrictions on alienability. Subject to and without waiving these objections, the City answers and responds as follows. For more than a

century, the people of the City of Detroit and the State of Michigan, various institutions and foundations, the State of Michigan, the DIA Corp., and the City, among others, have contributed their property, funds, family treasures, time, support and goodwill to, or for the benefit of, the Museum. Objects became part of the Museum Art Collection through thousands of transactions entered into under vastly differing circumstances over the course of more than 100 years. As a result and given disparate views of certain stakeholders, the City has not established with certainty whether it has the legal authority to use any of those objects to satisfy its debts and obligations. This is particularly true as to those works of art that are not credited as having been acquired using City funds. Even if the City could fully validate the extent of its property interest in the works of art in the Museum Art Collection, the City's ability to sell, transfer or convey objects in the Museum Art Collection may be limited as a matter of law and fact. Although the City cannot predict all of the likely challenges that would be raised if it sought to monetize the DIA assets in whole or in part, it is highly likely that the Attorney General, the DIA Corp. and others will move vigorously in an effort to prevent such monetization. Opposing parties may contend, by way of example, that: (a) the DIA assets in whole or in part are held in charitable trust consistent with Attorney General Opinion 7272; (b) the DIA assets are immune from sale pursuant to the public trust doctrine; (c) various legal doctrines (such as election, dedication,

unjust enrichment, estoppel and the law of fixtures), statutes and various trust-related doctrines prohibit or bar the City from benefiting from the use of such DIA assets; (d) express and implied donative restrictions limit the City's rights with respect to such DIA assets; and (e) contract and policy provisions prohibit the City from monetizing any of the DIA assets.  Some of these restrictions are addressed in the DIA Corp.'s position paper and Attorney General Opinion 7272.  The City potentially could decide to challenge each of these arguments, but there is no assurance that the City would prevail if it did so.  If a court concludes that these restrictions or other barriers are valid and binding, the City would not be able to use the DIA assets to satisfy obligations to creditors.  In addition to these legal and factual restrictions on the ability of the City to transfer, sell or convey some or part of the Museum Art Collection, the City also recognized that there are various other potential ethical, public policy and practical restrictions on the City's ability to use DIA assets to satisfy City debts and obligations.  Although the City is required to address the interests of creditors, it is not required to sell assets to satisfy obligations to creditors.  Indeed, it is appropriate for the City to consider the effect of the sale of DIA assets on the City and its viability post-bankruptcy.  As relevant here, the DIA in its current form is the result of more than 100 years of public-private charitable collaboration for the benefit of the people of the City of Detroit and the State of Michigan.  Even if the City could lawfully do so, the City may

appropriately consider whether it should repurpose charitable contributions to address the City's financial crisis in a manner that may not have been intended by many donors to the DIA. In addition, the DIA serves an important public function. The City may appropriately consider the effect that a sale of DIA assets would have on the DIA the future of the City and the community resources available to the Public.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6:**

Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802-POA00258006, POA00258033-POA00258245, POA00261726-POA00262345 and POA00262348-POA00262496, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA.

7.   **Identify the number of visitors, on an annual basis, at DIA Corp. from 1883 to the present.**

**RESPONSE TO INTERROGATORY NO. 7:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, being asked to identify information as far back as 1883 is unduly burdensome. The City further objects as

the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that the answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the documents that reflect museum attendance and museum survey information for the 2010-2014 period. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp. on its production.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

The City will produce any responsive records that it can locate with information that is responsive to this request, but it is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA, if anyone, and directs Objectors to the documents they have subpoenaed from the DIA

**9. Identify all communications between the City and third-parties relating to the monetization of the Collection.**

**RESPONSE TO INTERROGATORY NO. 9:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects to the extent

that this interrogatory seeks information or documents that are privileged or otherwise protected from disclosure (e.g., discussions in mediation proceedings). In particular, the City states that the value and treatment of DIA assets was an often-discussed and highly reported topic throughout the Emergency Manager's term, and thus it would be unduly burdensome, and would not be feasible, to accurately recount each time and with whom the issue was discussed. Subject to and without waiving these objections, the City answers and responds that the following entities discussed the value of DIA assets—DIA representatives; numerous creditor groups; mediators and participants in mediation; and representatives from Christie's.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:**

Various ideas relating to the monetization of the City's art were considered by the City before agreeing to the DIA Settlement, but none of those ideas progressed to the point where the Emergency Manager, any member of the Emergency Manager's office, or any City employee had a meeting or conversation with a third party about monetizing the art other than the discussions that ultimately achieved the DIA Settlement with the parties thereto.

**11. Identify all of the Works of Art in the Collection that are currently on display to the public.**

**RESPONSE TO INTERROGATORY NO. 11:**

In addition to its General Objections, the City objects as this interrogatory is vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The City further objects as the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for DIA and its operations. Subject to and without waiving these objections, the City states that Works of Art are displayed, loaned, studied and stored at various times and for various reasons. Thus, it would be unduly burdensome and misleading to attempt to identify all Works of Art in the Collection that are currently on display to the public. The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying, including the list of Major Works. The City will provide copies of these documents or seek access to them subject to the same terms and conditions imposed by the DIA Corp.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

The City does not receive from the DIA a list of Works of Art currently on display to the public at the museum and, on that basis, lacks sufficient knowledge or information to answer this interrogatory.

Dated: June 9, 2014          Respectfully submitted,

 /s/  Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan  48226
Telephone:  (313) 963-6420
Facsimile:  (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT