UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**MOTION OF SYNCORA GUARANTEE INC.
AND SYNCORA CAPITAL ASSURANCE INC. TO
ENFORCE THE SOLICITATION PROCEDURES ORDER**

Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") submit this motion for entry of an order to enforce the *Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2984] (the "Solicitation Procedures Order") against the City. In support of this motion, Syncora respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Syncora has numerous and varied claims against the City.[1] But the solicitation package the City's balloting agent provided Syncora directly and through Syncora's nominee addresses only a limited subset of Syncora's claims. This violates the City's own solicitation procedures and the plain language of the

---
[1] *See* Claim Nos. 1352 and 1354 (as may be amended, the "Proofs of Claim").

City's *Fourth Amended Chapter 9 Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4392] (the "Plan"). Despite Syncora's many attempts for over a month to obtain from the City the proper ballots to vote its claims, Syncora remains disenfranchised with the voting deadline and the plan confirmation hearing fast approaching.

2. Indeed, Syncora's solicitation package contained only an insurer Class 9 ballot, which has the limited purpose of permitting insurers to cast a vote on the Plan regarding the principal outstanding on the City's certificates of participation. Separately, Syncora also received from its nominee beneficial holder Class 9 ballots regarding Syncora's direct holdings of certificates of participation, which also serve the limited purpose of permitting holders to cast a vote regarding the principal outstanding on the City's certificates. Syncora has additional Class 9 claims that it is prohibited from voting using the insurer Class 9 ballot the City distributed to Syncora, and Class 14 unsecured claims based in contract, tort, and equity for which Syncora received no ballots.

3. The City has provided Syncora no valid reason for this discrepancy. The City has directed its balloting agent not to provide Syncora the necessary ballots, and continues to delay providing Syncora a remedy. Syncora is compelled to file this motion in light of the voting deadline now being only three weeks away and Syncora's need to timely file its Class 9 and Class 14 ballots. Under the

2

circumstances, Syncora has to assume that the City is trying to limit Syncora's rights to vote in relation to its rights to object to plan confirmation as a Class 14 claim holder or has other reasons for conducting an improper solicitation of plan votes. Whatever the reason, Syncora's right to vote on the Plan in both Classes 9 and 14 is sacred. For this reason and to ensure a level playing field for confirmation, Syncora seeks this Court's protection. Syncora, of course, remains open to resolving this issue amicably with the City without the Court's involvement.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The legal bases for the relief sought herein are sections 105, 502, and 1126 of the Bankruptcy Code and Rules 3001 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## RELIEF REQUESTED

5. Syncora seeks entry of an order enforcing the Solicitation Procedures Order against the City and requiring the City to provide Syncora with Class 14 ballots so that Syncora may vote its Class 14 claims and a Class 9 ballot that

allows Syncora to vote its additional Class 9 claims, in each case as described herein.[2]

## FACTS

6. On July 18, 2013, the City filed a petition commencing this case under chapter 9 of the Bankruptcy Code.

7. On February 20, 2014, Syncora timely filed its Proofs of Claim. Syncora's claims include secured, unsecured, and administrative expense claims relating in some fashion to it insuring or holding unlimited tax general obligation bonds, certificates of participation, and swaps.

8. On March 11, 2014, the Court entered the Solicitation Procedures Order. The Amended Tabulation Rules of the Solicitation Procedures Order provide as follows:

> [Rule I:] Unless otherwise provided in the rules below, and except as provided in Rule III, *a claim will be deemed temporarily allowed for voting purposes in an amount equal to the full stated amount claimed by the holder of such claim to be an unsecured nonpriority claim in any proof of claim filed by the applicable bar date* (or otherwise deemed timely filed under applicable law) *to the extent that the proof of claim specifies a fixed or liquidated amount*. Any additional contingent or

---

[2] The relief sought herein is solely for purposes of voting to accept or reject the Plan. For the avoidance of doubt, this motion is without prejudice to and does not affect Syncora's Class 9 claims on account of principal and interest on certificates of participation as insurer and beneficial holder for any purpose.

> unliquidated amounts will be temporarily disallowed for voting purposes.
>
> . . . .
>
> [Rule IV:] Except as provided in Rule III, if a claim for which a proof of claim has been timely filed is marked or identified as contingent or unliquidated on its face or if the proof of claim does not otherwise specify a fixed or liquidated amount, such contingent or unliquidated claim will be temporarily allowed for voting purposes in the amount of $1.00.

Solicitation Procedures Order, Ex. 1 (Amended Tabulation Rules), at 1 (emphasis added).

9. Under the plain language of the Solicitation Procedures Order, a party has until "*the later of* (a) May 1, 2014 or (b) 10 days after the date of service of a notice of objection, if any, to the applicable claim" to file a motion seeking relief under Bankruptcy Rule 3018(a). Solicitation Procedures Order, ¶ 13 (emphasis added). The City has served no notice of an objection to Syncora's claims.

10. On May 5, 2014, the City filed the *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4391] (the "Disclosure Statement") and the Plan.

11. Under the Plan, Class 9 claims are "*COP Claims*" and Class 14 claims are "*Other Unsecured Claims*." Plan 26.

5

12. The Plan defines "*COP Claim*" as "a Claim under or evidenced by the COP Service Contracts." *Id.* at 5.

13. The Plan defines "*COP Service Contracts*" as

> collectively, (a) the GRS Service Contract 2005, dated May 25, 2005, by and between the City and the Detroit General Retirement System Service Corporation; (b) the PFRS Service Contract 2005, dated May 25, 2005, by and between the City and the Detroit Police and Fire Retirement System Service Corporation; (c) the GRS Service Contract 2006, dated June 7, 2006, by and between the City and the Detroit General Retirement System Service Corporation; and (d) the PFRS Service Contract 2006, dated June 7, 2006, by and between the City and the Detroit Police and Fire Retirement System Service Corporation, as each of the foregoing may have been subsequently amended, restated, supplemented or otherwise modified, together with all ancillary and related instruments.

*Id.* at 5–6.

14. The Plan defines "*Other Unsecured Claims*" as

> any Claim that is not an Administrative Claim, a Convenience Claim, a COP Claim, a Downtown Development Authority Claim, a General Obligation Bond Claim, a GRS Pension Claim, an OPEB Claim, a PFRS Pension Claim, a Secured Claim or a Subordinated Claim. For the avoidance of doubt, Section 1983 Claims, Indirect Employee Indemnity Claims and Indirect 36th District Court Claims are included within the definition of Other Unsecured Claim.

*Id.* at 16. Syncora's unsecured claims are Class 9 claims and Class 14 claims.

15. The deadline for the City to commence solicitation under the Solicitation Procedures Order was May 12, 2014. *See Fourth Amended Order Establishing Procedures, Deadlines, and Hearing Dates Relating to the Debtor's*

6

*Plan of Adjustment* [Docket No. 4202]. The City commenced solicitation, including distribution of the Plan, Disclosure Statement, and ballots to voting creditors, on May 12, 2014.

16. The City, through its balloting agent, served Syncora with a Class 9 insurer ballot on May 12, 2014, and served Syncora's nominee with Class 9 beneficial holder ballots on or about May 12, 2014.

17. In view of the City only filing the Plan on May 5, 2014, and Syncora receiving ballots on or about May 12, 2014, Syncora could not possibly have known at any time sooner than May 12, 2014 — the date the City commenced solicitation — that the City would not have distributed to Syncora the proper ballots.

18. The City did not serve Class 14 ballots on Syncora. The City did serve Syncora with Class 9 ballots. But the Class 9 ballots do not permit Syncora to vote all of its Class 9 claims.

19. On or before May 23, 2014, Syncora notified the City's balloting agent though its counsel that it did not receive the necessary ballots to vote its claims, including Class 14 ballots for its general, unsecured claims.

20. On May 27, 2014, the balloting agent informed Syncora's counsel of the City's direction to the balloting agent not to provide Syncora with the requested ballots.

7

13-53846-tjt    Doc 5444    Filed 06/18/14    Entered 06/18/14 22:00:00    Page 7 of 20

21.     On May 28, 2014, Syncora through counsel engaged the City's counsel to obtain the requisite ballots. To date, Syncora's counsel has communicated with the City's counsel by telephone and email many times to resolve the issue. Nearly a month after Syncora made first contact regarding this issue, and now only several weeks before the voting deadline, the City has offered no resolution.

## ARGUMENT

**A. Syncora is Entitled to Class 14 Ballots Under the Solicitation Procedures Order and the Plan.**

22.     Syncora is entitled to Class 14 ballots regarding the below described unsecured claims. None of the claims arise "under or [are] evidenced by the COP Service Contracts." Plan 5. Thus, none of them are Class 9 claims. Similarly, none of them fall under any of the other enumerated, excluded unsecured claim types in the definition of "Other Unsecured Claims." So, such claims by definition are claims in Class 14 under the Plan.

23.     Accordingly, Syncora must receive ballots to vote its Class 14 Claims under the Solicitation Procedures Order. *See* Solicitation Procedures Order (Amended Tabulation Rules), Ex. 1, Rules I, IV. Moreover, Syncora's right to vote its claims is sacred. *See, e.g.*, *In re Adelphia Comm'ns Corp.*, 359 B.R. 54, 56 (Bankr. S.D.N.Y. 2006) (stating that the "ability to vote on a reorganization plan is one of the most sacred entitlements that a creditor has"). And the City may not be

8

permitted to manipulate voting for whatever reason, including tilting the playing field for plan confirmation. *Cf., e.g.*, *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990) (stating that a plan cannot be confirmed when the debtor has engaged in manipulation of class voting).[3]

### 1. Fraud and Fraudulent Inducement

24. Syncora's fraud and fraudulent inducement claims arise from false representations the City made in connection with its efforts to market the certificates of participation and to obtain insurance thereon. In particular, the City made various representations to would-be certificate holders and insurers (including Syncora) regarding the City's economic characteristics, fiscal outlook, and financial controls and auditing. Certain of these representations were false, and the City made such false representations knowingly or recklessly without any knowledge of their truth. By making these statements, the City intended for Syncora and other parties to rely on this information. Such representations were material to Syncora's decision whether to purchase certificates and to serve as insurer of the certificates, and Syncora relied on these representations when determining whether to purchase and insure the certificates. These

---

[3] The City's denial of Syncora's right to vote has effectively resulted in the manipulation of class voting, which is impermissible under the Bankruptcy Code. *See, e.g.*, *In re Griswold Bldg., LLC*, 420 B.R. 666, 707 (Bankr. E.D. Mich. 2009) (stating that "manipulation of classes of claims in order to artificially create an accepting class of impaired claims is not permitted").

9

misrepresentations resulted, and may further result, in significant injury to Syncora.

25. Under the Plan, Syncora's fraud and fraudulent inducement claims are Class 14 claims because they do not arise under, and are not evidenced by, the COP Service Contracts and are not otherwise excluded by the definition of "Other Unsecured Claims." Under the Solicitation Procedures Order, such claims are to be voted in the amount of $1. *See* Solicitation Procedures Order (Amended Tabulation Rules), Ex. 1, Rule IV.

### 2. Unjust Enrichment and Restitution

26. Syncora both holds and insures certificates of participation. The City seeks to invalidate the certificates of participation. *See City of Detroit, Mich. v. Detroit Gen. Ret. Sys. Serv. Corp.*, Adv. Pro. Case No. 14-04112 (E.D. Mich. Bankr. Ct.). Syncora's unjust enrichment and restitution claims protect Syncora from the City inequitably retaining the benefits of the issuance and insurance of the certificates of participation if the certificates are invalidated.

27. These claims are not Class 9 claims and are not otherwise excluded from the definition of "Other Unsecured Claims." To be sure, these claims are *equitable* claims that exist *only* in the absence of a contract. *See, e.g.*, *In re Kazi Foods of Mich., Inc.*, 473 B.R. 711, 718 (Bankr. E.D. Mich. 2012) ("Even though no contract may exist between two parties, under the equitable doctrine of unjust

10

13-53846-tjt    Doc 5444    Filed 06/18/14    Entered 06/18/14 22:00:00    Page 10 of 20

enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. The remedy is one by which the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received to ensure that exact justice is obtained." (internal quotation marks and citation omitted)); *In re Deemer Steel Casting Co., Inc.*, 117 B.R. 103, 108 (Bankr. D. Del. 1990) ("[R]estitution principles provide an alternative basis for [the creditor's] recovery if no contract had existed.").

28. The City (or its instrumentalities) received over $1.4 billion in connection with the 2005 and 2006 issuances of the certificates of participation. The City or its instrumentalities have retained or used all such funds since the consummation of the 2005 and 2006 transactions, and the City has earned substantial interest on such funds. It would be inequitable, unjust, and unconscionable for the City or its instrumentalities to retain such funds if the certificates are invalidated or otherwise declared void *ab initio*. Further, restitution is available to return Syncora to its status prior to consummation of the applicable transactions. Otherwise, the City would receive a huge windfall as a result of its own decision to enter into transactions that turned out to be beyond the scope of its authority, all at the expense of certificate holders and insurers.

11

29.     Syncora's unjust enrichment and restitution claims are Class 14 claims by Plan and legal definitions. The Proofs of Claim fix the amount of Syncora's unjust enrichment and restitution claims at $484,943,168 for voting purposes in accordance with the Solicitation Procedures Order.[4] *See* Solicitation Procedures Order (Amended Tabulation Rules), Ex. 1, Rule 1 ("[A] claim will be deemed temporarily allowed for voting purposes in an amount equal to the full stated amount claimed by the holder of such claim to be an unsecured nonpriority claim in any proof of claim filed by the applicable bar date . . . .").

30.     Syncora voting its unjust enrichment and restitution claims in this amount is entirely fair. Bankruptcy Rule 3018(a) "was designed to give all creditors, even those holding disputed claims, the opportunity to vote and provided the means of accomplishing this." *In re Century Glove, Inc.*, 88 B.R. 45, 46 (Bankr. D. Del. 1988). Permitting Syncora to vote its unjust enrichment and restitution claims in this amount by virtue of its Proofs of Claim also upholds the policy behind Bankruptcy Rule 3018(a). It prevents the City from improperly

---

[4] Syncora has the right to vote the unjust enrichment and restitution claims under the Plan, the Solicitation Procedures Order, and bankruptcy law even though they relate to the certificates of participation, and notwithstanding that there may be a matching claim amount in Class 9. But as an accommodation to the City, Syncora proposes that it vote its beneficial holder claim in Class 9, for which it received a ballot, and the difference between the principal amount represented by such claim and the amount of its claims for unjust enrichment and restitution in Class 14.

stifling objection to the Plan by an unsecured class of creditors. *Cf., e.g.*, *In re Armstrong*, 292 B.R. 678, 686 (10th Cir. BAP 2003) ("The policy behind temporarily allowing claims is to prevent possible abuse by plan proponents who might ensure acceptance of a plan by filing last minute objections to the claims of dissenting creditors.").

### 3. Abuse of Process

31. Syncora's abuse of process claim arises from the City's actions in response to Syncora notifying U.S. Bank, as then custodian of the Casino Revenues under the Collateral Agreement,[5] of the City's pre-petition default on payments to holders of certificates of participation.

32. Following the City's June 14, 2013, default, Syncora sent a letter on June 17, 2013, to U.S. Bank under the Collateral Agreement notifying it of the City's default. U.S. Bank then trapped the Casino Revenues, and the City began to negotiate with U.S. Bank, Syncora, and others in order to release the Casino Revenues. Then, on July 5, 2013, the City filed a state court lawsuit seeking injunctive relief and a temporary restraining order (the "TRO") prohibiting U.S. Bank from trapping the Casino Revenues. Although the City and Syncora had been in regular communications during the negotiations, the City did not notify

---

[5] Capitalized terms that are not defined herein have the definitions ascribed to them in the addendum to the Proofs of Claim, attached hereto as **Exhibit 6**.

13

Syncora of the filing of its complaint or of the TRO hearing. As a result, the TRO was granted on July 5, 2013, on an *ex parte* basis.

33. The City had an ulterior purpose in bringing the state court action and in failing to notify Syncora of the TRO hearing, and its actions in use of judicial process were improper. In addition, the City claimed that Syncora's actions resulted in damages to the City, but the City's Emergency Manager later testified that Syncora's actions did not interfere in the negotiations at all. *See* Orr Dep. Tr. at 48:6–24, Aug. 30, 2013. Instead, it was Syncora that suffered injury.

34. Syncora's abuse of process claim, arising in tort, clearly is a Class 14 claim. Syncora did not set an amount for this claim in the Proofs of Claim given that the claim grows each month the Casino Revenues remain untrapped. As of June 16, 2014, the fixed portion of Syncora's abuse of process claim was approximately $174 million.

35. Syncora is seeking to vote its abuse of process claim in this amount. If Syncora is not permitted to vote this claim in this amount by virtue of its Proofs of Claim, then Syncora seeks temporary allowance of the claim for voting purposes in such amount under Bankruptcy Rule 3018(a). Such allowance would prevent the City from succeeding in its attempt to prevent objection to the Plan by an unsecured class of creditors, in accordance with the policy of Bankruptcy Rule 3018(a). Because the amount of Casino Revenues not trapped in the

14

applicable collateral account each month to date is known, the claim clearly can be fixed presently for voting purposes, and all such monthly payments relate to the City's prepetition actions.

   **4.   Fees and Expenses**

36.   Syncora's fees and expenses claim is for reasonable fees and expenses incurred in connection with Syncora's role as an insurer of the certificates of participation, in accordance with the Contract Administration Agreement. Here again, the claims do not arise under, and are not evidenced by, the COP Service Contracts. *See* Contract Administration Agreement §§ 9.6, 10.5.

37.   Specifically, section 10.5.1 of the Contract Administration Agreement provides that the Service Corporations "shall pay or reimburse each Insurer for any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur" in connection with the following:

- the administration, enforcement, defense or preservation of any rights or security hereunder or under any document contemplated hereby;

- the pursuit of any remedies hereunder or under any document contemplated hereby or otherwise afforded by law or equity;

- any amendment, waiver or other action with respect to or related to this Agreement or any document contemplated hereby whether or not executed or completed;

- the violation by either Corporation of any law, rule or regulation or any judgment, order or decree applicable to it;

15

- any advances or payments made by an Insurer to cure defaults of the Corporation hereunder or any document contemplated hereby; or

- any litigation or other dispute in connection with this Agreement, any document contemplated hereby or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of an insurer to honor its payment obligations under its respective Credit Insurance.

(Contract Administration Agreement § 10.5.1.)

38. Further, section 9.6 of the Contract Administration Agreement provides that "[i]n the event of any dispute between or among any of the parties hereto arising out of this Agreement, the prevailing party or parties shall be entitled to recover from the losing party or parties, all fees, costs and expenses, including, without limitation, attorneys' fees, incurred by such prevailing party or parties in connection with such dispute."

39. Syncora's claim for fees and expenses also is a Class 14 claim. Syncora has a fixed claim in the amount of $2,786,402 plus interest on account of fees and expenses for purposes of voting on the plan.

**B. Syncora is Entitled to a Class 9 Ballot that Allows it to Vote its Breach of Contract and Pre-Petition Interest Claims.**

40. Syncora must receive Class 9 ballots that allow it to vote its breach of contract and pre-petition interest claims under the Solicitation Procedures Order. *See* Solicitation Procedures Order (Amended Tabulation Rules), Ex. 1, Rules I, IV.

### 1. Breach of Contract

41. Syncora has claims for breach of contract. Here, Syncora addresses only its claim as an insurer as an accommodation to the City to avoid duplication. In section 3.02 of the COP Service Contracts, the City represented and warranted, among other things, that execution of the COP Service Contracts was within the City's authority and the COP Service Contracts are valid and binding obligations of the City. If any of the foregoing are found to be inaccurate or untrue in any way, including in connection with the COP Litigation, the City will have breached the COP Service Contracts.

42. Syncora's breach of contract claim is a Class 9 claim by Plan and legal definition. The Proofs of Claim fixed the amount of Syncora's breach of contract claim at $484,943,168 for voting purposes. But under the Solicitation Procedures Order, such claim is to be voted in the amount of $1 because the Proofs of Claim mark the claim as "contingent." *See* Solicitation Procedures Order (Amended Tabulation Rules), Ex. 1, Rule 1. This claim, however, should be fixed for voting purposes at Syncora's insurance exposure reflected in the Proofs of Claim.

43. Circumstances have changed since Syncora filed its Proofs of Claim. Notably, the City filed an adversary proceeding seeking invalidation of the certificates of participation. *See City of Detroit, Mich. v. Detroit Gen. Ret. Sys.*

17

*Serv. Corp.*, Adv. Pro. Case No. 14-04112 (E.D. Mich. Bankr. Ct.). As such, Syncora's breach of contract claim is now also an anticipatory breach claim because the City has made clear with the filing of the adversary proceeding that it intends to repudiate its obligations under the COP Service Contracts. *See* 17A Am. Jur. 2d Contracts § 716 ("An anticipatory breach is one committed before the time specified for performance in the contract has arrived. Where there has been an anticipatory breach, the aggrieved party may treat the entire contract as broken and may sue immediately for the breach."). This anticipatory breach is a prepetition claim because it relates to a prepetition contract. *See, e.g.*, *In re Griffin*, 313 B.R. 757, 762 (Bankr. N.D. Ill. 2004) ("Under the Bankruptcy Code, contract-based claims arise at the time the contract is entered into rather than upon subsequent events such as termination or performance" (citations omitted)).

### 2. Pre-Petition Interest Payment

44. Syncora has the right to vote both the interest and the principal it paid to beneficial holders on the certificates of participation on account of the City defaulting on its prepetition payment obligations. Further, it is unclear whether Syncora's principal payment to beneficial holders is included in the amount to be voted by the beneficial holders. In any case, Syncora is entitled to a Class 9 ballot that allows it to vote its claim for the interest it paid to beneficial holders on the certificates of participation. Currently, the ballots are not set up to include the

18

interest piece. This right to payment is fixed for voting purposes in an amount of $1,649,691.49.

## **RESERVATION OF RIGHTS**

45. Syncora reserves the right to amend and/or supplement the Proofs of Claim at any time, including after the Bar Date, in any manner, and/or to file additional proofs of claim to, *inter alia*, (a) assert any additional claims of whatever kind or nature Syncora has, or that it may have at any time under any applicable law, whether legal or equitable, including such claims that are entitled to rights and priorities afforded under section 365, 503 or 507 of the Bankruptcy Code, and (b) adjust the amount of any claim asserted against the City in its Proofs of Claim. Syncora also reserves the right to make other arguments in connection with any adjudication of or related to any of the claims discussed herein or in its Proofs of Claim.

Dated: June 18, 2014         /s/ *Ryan Blaine Bennett*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

    - and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, Michigan 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*