UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Hon. Steven W. Rhodes |
| Debtor. | |

**ATTORNEY GENERAL'S REPLY BRIEF REGARDING ATTORNEY GENERAL'S MOTION TO QUASH SYNCORA'S SUBPOENA**

Courts do not allow depositions of state attorneys general about how and why they reached legal conclusions set forth in an attorney-general opinion. Indeed, Syncora's 20-page response brief does not cite a single authority authorizing such an extraordinary proceeding.

The reason for this categorical bar is the same reason parties cannot depose judges about their legal opinions: in either case, it is legally irrelevant what process was followed, what materials were considered, what motivated the decision-making, and whether the process was "typical." If the opinion's conclusion is unpersuasive, it is the opposing party's burden to explain why in briefs and at argument.

1

Syncora acknowledges that the federal courts reserve the deposition of a high-ranking government official for "extraordinary circumstances." But other than the high stakes of putting the City of Detroit back on the road to recovery, there is nothing extraordinary about the Michigan Attorney General issuing a legal opinion here. Rather than trying to attack the legally irrelevant process that resulted in the opinion, Syncora would be better served in spending its time attempting to persuade this Court why the opinion was incorrect. In no circumstances should this Court take the unprecedented step of authorizing the deposition of a state attorney general about how and why he reached the conclusion set forth in a legal opinion. Syncora's subpoena of the Attorney General should be quashed.

## ARGUMENT

**A. The Attorney General's process in preparing the AG Opinion is irrelevant to the bankruptcy proceedings**.

The federal courts have placed a high hurdle before litigants seeking to compel the testimony of high-ranking government officials. Such testimony is disallowed absent extraordinary circumstances: where the official has first-hand knowledge related to the claim being litigated, and where other persons cannot provide the necessary

2

information. Syncora does not dispute this rule. Instead, Syncora claims that the Attorney General has first-hand knowledge of the *process* by which he developed the AG Opinion, and that this *process* is relevant to the bankruptcy proceedings. Syncora is wrong.

The *process* by which the opinion was reached does not have any relevance to this proceeding. Syncora claims that "the process that leads to the conclusion [of an opinion] is as important—and often more important—than the conclusion itself." Syncora's Resp. at 10. But Syncora cites no authority for this bold claim. Nor is the Attorney General aware of any authority. Whether it is an Attorney General opinion or a judicial opinion, a legal opinion's strength comes from its reasoning and from the authority on which that reasoning is based. In challenging the opinion process, Syncora overlooks that any flaws of such opinion will be apparent from the opinion itself, either because it relied on a misunderstanding of the facts or relied on improper principles of law. Syncora can raise such claims without exploring the opinion process. The request to question a judge or attorney general regarding the process by which he reached his conclusion is unprecedented. Syncora cites no authority for its request.

3

It is true that the City of Detroit's bankruptcy proceedings are an extraordinary event. But the process by which the Attorney General reached a legal conclusion about the proper disposition of the artwork held by the City is irrelevant. Syncora should not be allowed to evade the courts' rule protecting high-ranking government officials from testifying.

**B.  The Attorney General's process in preparing the AG Opinion was consistent with the department's policies and are privileged.**

Considering Syncora's criticism of the Attorney General's process in reaching the AG Opinion, it is necessary to set the record straight (even if not relevant to whether this Court is persuaded by the Attorney General's opinion). Syncora places great import on the fact that the formal request for an opinion came from a legislator on June 11, 2013— just two days before the opinion was issued. Yet, it is not uncommon for the Department to research and begin formulating an opinion before the formal request is physically received, particularly as here, where the Attorney General was receiving informal inquiries prior to the request. The same is true about obtaining factual information related to the request. It is true that a formal request from a state officer or

agency is necessary before any duty to respond is triggered, Mich. Comp. Laws § 14.32, but nothing prevents the Attorney General from considering important legal questions in advance of the formal request.

Syncora suggests that the AG Opinion was the result of a "flawed" process, intimating that the Attorney General did not follow his own internal policies. Not true. Syncora asserts that there is no evidence that the Attorney General complied with his internal policies. That there is no evidence is unsurprising: the Attorney General's process is an internal one protected by the deliberative-process, work-product, and attorney-client privileges. And Syncora's speculation about the process is wrong. As the privilege log and emails that were provided by the Attorney General demonstrate, the Department's charitable trust attorney assisted directly in the opinion. The draft was circulated to other Department attorneys for review and was also submitted to the Attorney General's review board. This is the standard process. It was not a hasty decision. The Department had been considering the question since April 2013—fully two months before the opinion was issued—and reached a legal conclusion that Syncora has not attempted to demonstrate was incorrect.

**C. The deliberative-process, work-product, and attorney-client privileges are applicable and were not waived.**

Syncora's claims that the deliberative-process, work-product, and attorney-client privileges are inapplicable, or were waived when the Attorney General published the AG Opinion, also fail.

Regarding the deliberative-process privilege, Syncora claims that "it does not seek internal communications. Instead . . . Syncora will depose the Attorney General regarding what he personally did." Syncora's Resp. at 15–16. Syncora's interpretation of the privilege—that the deliberative-process privilege protects communications but not thoughts and actions—is too narrow and is unsupported by law. It also cuts against the very reason for the privilege. As quoted in the Attorney General's original motion: "If defendants had unfettered access to agency decision-making processes, if would chill debate or discussion by agency employees and degrade the ability of agencies to function effectively." *U.S. v. O'Reilly*, 545 F. Supp. 2d 630, 644 (E.D. Mich. 2008) (internal cite omitted).

Regarding the work-product and attorney-client privileges, Syncora claims that the publication of the AG Opinion constitutes a waiver of these privileges. Specifically, Syncora asserts that in

6

publishing the AG Opinion, the Attorney General placed at issue the process underlying the opinion. Such a view undermines the work-product and attorney-client privileges. Every time an attorney published a legal brief or a judge published an opinion, he would be placing the process of his brief or opinion at issue and thereby waiving the work-product and attorney-client privileges. There is no authority for such a proposition.

The sole case Syncora cites on this issue dealt with a company's internal investigation—not the legal analysis of attorneys underlying a published legal opinion. *Harding v. Dana Transport, Inc.*, 914 F.Supp. 1084 (D.N.J. 1996). In publishing the AG Opinion, the Attorney General did not place the process by which he reached the opinion at issue; he placed the opinion's published contents and conclusion at issue. There was no waiver of privilege.

## CONCLUSION

The Attorney General respectfully requests that this Court quash Syncora's subpoena.

Respectfully submitted,

Bill Schuette
Attorney General

B. Eric Restuccia (P49550)
Deputy Solicitor General


*/s/Michael R. Bell*
Michael R. Bell (P47890)
William R. Bloomfield (P68515)
Assistant Attorneys General
P.O. Box 30212
Lansing, Michigan 48909
(517) 373-1124

Dated: June 20, 2014