UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN ) | |
| ) | Chapter 9 |
| Debtor ) | |
| ) | Hon. Steven W. Rhodes |
| ) | |

**REPLY TO OBJECTIONS TO MOTION FOR TEMPORARY
ALLOWANCE OF CLAIM OF THE MACOMB INTERCEPTOR
DRAIN DRAINAGE DISTRICT PURSUANT TO RULE 3018(a)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR PURPOSES OF ACCEPTING OR REJECTING THE
DEBTOR'S FOURTH AMENDED PLAN OF ADJUSTMENT**

The Macomb Interceptor Drain Drainage District (the "MIDDD"), a creditor and party in interest in the above-captioned Chapter 9 bankruptcy case, hereby submits this reply (the "Reply") to the objections of the City of Detroit [Docket No. 5312] (the "City Objection") and the Official Retiree Committee of Retirees [Docket No. 5315] (the "Retiree Committee Objection," and together with the City Objection, the "Objections") to MIDDD's motion [Docket No. 5155] (the "Motion") for entry of an order temporarily allowing MIDDD's claim for the sole purpose of voting to accept or reject the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 4392] (the "Plan"). MIDDD respectfully states as follows:

**REPLY**

I.  **The City Has Offered No Evidence To Rebut The Prima Facie Validity Of the MIDDD Proof of Claim**

1.  The City of Detroit (the "City" or the "Debtor") and the Official Retiree Committee of Retirees (the "Retiree Committee," and together with the City, the "Objectors") assert that MIDDD has the burden of establishing its claim, and that it has not presented

sufficient evidence to do so.  City Objection ¶ 7; Retiree Committee Objection ¶ 7-8.  As explained in the Motion, however, Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that the filing of a proof of claim constitutes *prima facie* evidence of the claim's validity and amount.  <u>See</u> Fed. R. Bank. P. 3001(f).  Although an objection to a claim may shift the burden to the claimant to submit evidence to sustain a claim, as the case cited by the Retiree Committee clearly states, "the party objecting to the claim bears the initial burden of producing sufficient evidence to rebut the *prima facie* effect of the proof of claim."  <u>In re Plastech Engineered Prods, Inc.</u>, 399 B.R. 1, 10 (Bankr. E.D. Mich. 2008); <u>see also</u> <u>In re O'Connor</u>, 153 F.3d 258, 260 (5th Cir. 1998) ("If the Trustee objects, it is his burden to present enough evidence to overcome the *prima facie* effect of the claim.").  "A bald assertion, a mere conclusory statement, is, in and of itself, insufficient to rebut the presumption of validity."  <u>In re Hollars</u>, 198 B.R. 270, 271 (Bankr. S.D. Ohio 1996).

2.  Here, the City's objection to the MIDDD Proof of Claim[1] [Docket No. 4954] (the "<u>Claim Objection</u>") is woefully inadequate and does not meet the standard necessary to rebut the presumption of validity of the MIDDD Claim.  In the Claim Objection, the City merely states that it "expects to vigorously contest the lawsuit once the matter proceeds, either through the claims objection process or through other litigation," Claim Objection ¶ 12, but offers no evidence, or even argument, that the factual bases for liability or damages on the face of the MIDDD Proof of Claim are invalid in any way.  The Claim Objection goes further to state that the City **may** assert that the MIDDD Claim and the underlying lawsuit are barred by res judicata, Claim Objection ¶ 13, but the City makes no attempt to establish the strict requirements of a res judicata defense.  These bald assertions and conclusory statements, devoid of evidence or legal

---

[1]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

analysis, are insufficient to shift the burden to MIDDD. Since the MIDDD Claim is still deemed *prima facie* valid, on this basis alone, the Court should grant the Motion, and allow MIDDD to vote the claim in the amount of $26 million.

3. Even if, however, the Court were to find that the Claim Objection did effect a burden shift, given that the City did not submit any evidence or even point out a particular fact with which it takes issue, the burden on MIDDD to further establish both the City's liability and MIDDD's claimed damages would be slight. Further, given that the City, in connection with the claims against contractors and subcontractors in the USDC Case[2] (see Section IV, infra), has acknowledged much of the factual predicate of the MIDDD Claim, including the amount of damages, MIDDD likely will be able to prove its claim. In any event, MIDDD will further support its claim, to the extent required, through submission of documentary evidence and testimony at the final hearing on the Motion for temporary allowance for voting purposes.

**II.     The Solicitation Procedures Order Allows For The Motion.**

4. The City further argues that the MIDDD Claim should be "permitted to vote in only a nominal amount" because (i) the Court "has already determined the manner by which contingent and unliquidated claims will be handled during the tabulation process in its Solicitation Procedures Order," and (ii) MIDDD did not object to the motion to establish solicitation procedures and thus granting the Motion would place MIDDD "in a special position above similarly situated creditors." City Objection ¶¶ 10, 13. The City's argument is belied by the express terms of the Solicitation Procedures Order [Docket No. 2984], which expressly reserved the right of all creditors to file motions under Bankruptcy Rule 3018 to have their claims temporarily allowed for voting purposes in an amount of more than $1.00, and the motion

---

[2] The "USDC Case" is captioned Macomb Interceptor Drain Drainage District v. Kwame Kilpatrick, et. al., Case No. 11-cv-13101, in the United States District Court for the Eastern District of Michigan.

3

to establish such procedures (the "Solicitation Motion").  Although the Amended Tabulation Rules (as defined in the Solicitation Procedures Order) provide that a claim to which an objection has been filed automatically will be temporarily allowed in the amount of $1.00, the Solicitation Procedures Order provides that "[i]f any claimant seeks **different treatment** of a claim for voting purposes, **other than in accordance with the Amended Tabulation Rules**, such claimant shall be required to file a motion pursuant to Bankruptcy Rule 3018(a) for an order temporarily allowing such claim in a different amount or classification for purposes of voting…" Solicitation Procedures Order ¶ 13 (emphasis added).  Thus, the Solicitation Procedures Order, in accordance with Bankruptcy Rule 3018, expressly allows creditors to contest the default $1.00 voting amount under the Amended Tabulation Rules.  Moreover, the Solicitation Motion states that:

> The City believes that the proposed Tabulation Rules will establish a fair and equitable voting process. Nevertheless, if any party seeks different treatment of its claim for voting purposes, other than in accordance with the Tabulation Rules, the City proposes that such party be required to file a motion pursuant to Bankruptcy Rule 3018(a) for an order temporarily allowing such claim in a different amount or classification for purposes of voting to accept or reject the Plan (a "Rule 3018 Motion") and serve such motion on the City's counsel by the later of (a) May 1, 2014 or (b) 10 days after the date of service of a notice of objection, if any, to the applicable claim.

*Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment* [Docket No. 2789] at ¶ 37.

5. Thus, it is clear that neither the Solicitation Motion, nor the proposed order thereto, purports to suspend the application of Bankruptcy Rule 3018.[3]  Moreover, the plain

---

[3] Even if the City had asked the Court to suspend the application of Bankruptcy Rule 3018—which it did not—it is doubtful that the Court would have had the authority to do so. See, e.g., In re Mitan, 178 Fed. Appx. 503, 507-08 (6th Cir. 2006) (finding that bankruptcy court did not have the authority to dispense with notice and hearing requirements established by Bankruptcy Rule 2002).

language of the Solicitation Procedures Order, belies the City's argument that the Court, in fact, limited those rights. Subjecting the Amended Tabulation Rules to Bankruptcy Rule 3018 makes eminent sense, because without the protections of that Rule, the City could attempt to control and manipulate the amount of claims voted on the Plan merely by lodging conclusory objections to larger claims.

6. By the Motion, MIDDD timely contested the $1.00 temporary claim amount for voting purposes as allowed under Bankruptcy Rule 3018 and the Solicitation Procedures Order. Thus, the Court should reject the notion that the City's conclusory, unsupported Claim Objection has somehow deprived MIDDD of the ability to vote in an appropriate amount regardless of the validity of its claim.

### III. The MIDDD Claims Are Not Barred By Res Judicata.

7. The Retiree Committee's attempt to do what the City did not—provide a legal argument that the Court should find the MIDDD Claim is barred by res judicata—also fails. Although the claims brought by MIDDD in both the MC Case[4] and the USDC Case relate to the criminal scheme for which several City officials were criminally convicted, the District Court's Opinion and Order was not "a final resolution of the issue of [MIDDD's] right and standing to bring tort claims relating to the alleged Macomb Interceptor System fraud" against the City. Retiree Committee Objection ¶ 14. Rather, the Opinion and Order was the final resolution of the issue of whether MIDDD could—as an assignee of the City, a purchaser, or a ratepayer—bring tort, antitrust, and RICO claims **against certain Non-City Defendants** arising out of the Non-City Defendants' fraudulent and anticompetitive conduct in connection with DWSD Contract CS-1368. In the Opinion and Order, the District Court merely held that the City retained the

---

[4] The MC Case is captioned Macomb Interceptor Drain Drainage District v. Kwame Kilpatrick, et. al., Case No. 11-cv-13101, in the United States District Court for the Eastern District of Michigan.

right to bring those tort and federal statutory claims. This holding did not, in any way, resolve whether MIDDD has the right to bring causes of action **against the City** based on the City's fraud or other tortuous conduct regarding the negotiation and execution of the Acquisition Agreement, dated as of September 6, 2010 by and between MIDDD, Macomb County and the City (the "Agreement"). Simply put, res judicata does not apply because the USDC Case and the MC Case involve entirely different transactions: (i) the USDC Case involved claims seeking relief against Non-City Defendants for their criminal conduct in connection with DWSD Contract CS-1368, and (ii) the MC Case involves claims against the City for its misrepresentations and concealment in connection with MIDDD's acquisition of the Macomb Interceptor System via the Agreement. The circumstances at issue in the MC Case were never raised or litigated in the USDC Case.

8. Further, at the relevant time, MIDDD was not adverse to the City. As can be confirmed by a glance at the docket report from the USDC Case, it was a Non-City Defendant who filed the Amended Joint Motion to Dismiss, per the USDC Court's designation of lead counsel at USDC Case, Docket No. 155, seeking dismissal of MIDDD's claims for lack of standing. See *Amended Joint Motion to Dismiss by Defendant Soave,* E.D. Mich. Case No. 11-13101, Docket No. 190 (Feb. 27, 2012) (the "Motion to Dismiss"). In that motion, the Non-City Defendant asserted that the Agreement between MIDDD and City did not assign MIDDD the right to pursue tort and/or federal statutory claims against Non-City Defendants. Id. The resulting Opinion and Order, expressly deciding the Motion to Dismiss is at USDC Case, Docket No. 237.

9. In fact, at the time the City moved to intervene in the USDC Case, the City's pleadings expressly acknowledged that it was doing so to stand as plaintiff alongside, not

adverse to, MIDDD to ensure, in large part, that the Non-City Defendants would not be able to defeat the claims on DWSD Contract 1368 with a standing defense. More specifically, City pled:

> [MIDDD] alleges that the unlawful activities arising out of this corrupt scheme were committed against DWSD. [MIDDD] also alleges, however, that it holds all of DWSD's rights of recovery for these unlawful activities as a result of the Macomb Interceptor Acquisition Agreement. In that Agreement, [MIDDD] purchased from DWSD certain Macomb County sewer assets (the "Macomb System"), including the assets involved in the 15 Mile Road sewer repair, and [MIDDD] was assigned all "rights under all contracts, warranties and guaranties that apply to services or goods related to the Macomb System."
>
> [MIDDD's] claims in this lawsuit include not only a breach of DWSD's sewer-repair contract, but also various statutory and common-law torts based upon the unlawful activities committed against DWSD. In motions to dismiss, contrary to [MIDDD's] allegations, **certain of the Defendants argue that the tort claims belong to DWSD and that [MIDDD] lacks standing to bring these claims**. **DWSD seeks to intervene because the Defendants have placed its entitlement to the tort claims squarely at issue. Without attempting to resolve the issue at this point, it is clear that DWSD has an interest in this lawsuit.**
>
> DWSD also seeks to intervene because its interests here are significantly broader than the issues raised in the Complaint and related motions… Adverse decisions in this case could impact DWSD's broader interests…
>
> The Macomb Acquisition Agreement transferred to [MIDDD] the water/sewer assets located in Macomb County in exchange for payment of an amount equal to the "System Debt" as defined in the agreement. Assigning to [MIDDD] the "rights under all contracts, warranties and guaranties that apply to services or goods related to the Macomb System," the Macomb Acquisition Agreement was part of a global settlement of disputes between the City of Detroit, DWSD and the Counties of Wayne, Oakland and Macomb, which were pending in United States v. City of Detroit, E.D. Mich. Case. No. 77 71100. The parties do not dispute that the assignment transferred DWSD's contractual rights to [MIDDD]… [MIDDD] argues that the assignment clauses in the Macomb Acquisition Agreement also transferred tort claims. In motions to dismiss, **various Defendants, including Inland Waters and L. D'Agostini & Sons, Inc.,** specifically dispute this point. **LD&S argues** that "the limited assignment clauses invoked by the [MIDDD] do not assign tort claims." These Defendants also argue that [MIDDD] lacks standing as a matter of law… **According to them**, none of the various tort claims were ever assigned by DWSD.

> It is clear from these pleadings and motions to dismiss that either [MIDDD] or DWSD holds the tort claims. With both in the lawsuit, the matter can be determined on the merits with the full participation of all interested parties.

*Intervening-Plaintiff City of Detroit and its Detroit Water and Sewerage Department's Brief in Support of its Motion to Intervene as a Matter of Right Under Fed. R. Civ. P. 24(A)* (the "<u>Motion to Intervene</u>") at 3-9, E.D. Mich. Case No. 11-13101, Docket No. 145 (Jan. 11, 2012) (emphasis added) (internal citations omitted).

**IV. MIDDD's Damages Are Not Speculative.**

10. The federal criminal convictions of former City officials speak for themselves. Neither Objector reasonably can dispute that those City officials participated in a fraudulent conspiracy resulting in massive overcharges for, among other things, work performed on the 15 Mile Project pursuant to DWSD contract CS-1368. Further, the Schedule 3.8 to the Agreement, clearly shows that the amount charged to MIDDD for the purchase of the Macomb Interceptor System included $54,467,200 for repairs to the 15 Mile Project, **which amount the City itself has asserted was artificially inflated by at least $23 million due to the criminal conspiracy**. <u>See</u> *Intervening Complaint of the Plaintiff City of Detroit Through the Detroit Water and Sewerage Department* (the "<u>Intervening Complaint</u>") at ¶¶ 123, 128, E.D. Mich. Case No. 11-13101, Docket No. 205 (May 21, 2012). Thus, the Objectors' arguments that the amount of the damages asserted in the MIDDD Proof of Claim are speculative is simply wrong. MIDDD was induced into paying $26 million in fraudulent charges and accordingly was grievously injured as a result of the highly publicized criminal scheme, and the City's failure to disclose that scheme prior to execution of the Agreement.

**V. MIDDD's Damages Are Not Difficult Or Impossible To Calculate.**

11. Similarly, the Retiree Committee's assertion that any such damages would be difficult or impossible to calculate is misplaced. In support of this argument, the Retiree

Committee relies on quotations from the District Court's Opinion and Order in the USDC Case that it takes completely out of context and that are simply inapplicable to the damages MIDDD seeks through the MIDDD Claim. MIDDD's complaint against the contractors and subcontractors involved in the criminal fraud (the "Non-City Defendants") in the USDC Case included several counts, including a cause of action for violation of federal antitrust statutes. Part of MIDDD's theory with respect to the antitrust causes of action was that the costs resulting from the Non-City Defendants' anticompetitive conspiracy were passed on to MIDDD from the DWSD in the form of water and sewer usage charges over the four years prior to the execution of the Agreement. In analyzing whether MIDDD had antitrust standing based on this theory, the District Court held that MIDDD had not offered sufficient evidence to show that the inflated repair costs were incorporated in usage charges, and that analyzing such charges to determine what amount was passed on to ratepayers would be a difficult task. See Opinion and Order at 18-26. The passages of the Opinion and Order quoted by the Retiree Committee are in the context of the District Court's holding that MIDDD was an indirect purchaser that did not have standing to assert antitrust claims against the Non-City Defendants.

12. In the MC Case, however, MIDDD does not assert any antitrust claims or any other claims based on the pass-through of overcharges through water and sewer rates. Rather, it asserts fraud, fraud in the inducement, silent fraud, innocent misrepresentation, breach of contract, and quantum meruit/unjust enrichment causes of action against the City, and the asserted damages are based on the amount of fraudulent overcharges reflected in the purchase price paid by MIDDD under the Agreement. Thus, the calculation of damages in the MC Case is much simpler and does not involve an analysis of usage charges. As the District Court in the Opinion and Order in the USDC Case stated, the City "appear[ed] to concede that [MIDDD] can,

9

on satisfactory proofs, establish that it suffered an 'injury-in-fact' by showing that the [15 Mile Project's] cost overrun, allegedly caused by anticompetitive conduct and a RICO conspiracy, was a but-for cause of its paying a higher price to acquire the [Macomb Interceptor System] through the [Agreement]." Opinion and Order at 17. The Court need only take the amount MIDDD paid for the costs of the 15 Mile Project and subtract from it the amount that MIDDD would have paid absent the City's misrepresentation and concealment of the criminal conduct. Given that the City has already conceded that there was at least $23 million in overcharges passed along to MIDDD, it is highly likely that, if necessary, MIDDD would be able to establish the $26 million in damages it has alleged.

**VI.    The City Attempts to Manipulate Voting; MIDDD Does Not.**

13.    Despite the Objector's protestations to the contrary, both the timing and the substance of the Claim Objection indicates that the City filed it to affect voting on the Plan. The Claim Objection was filed on the deadline set in the Solicitation Procedures Order and contained essentially no specificity regarding what, if anything, about the MIDDD Claim the City found objectionable. Accordingly, the Claim Objection seems to be merely an attempt to exclude a large claim from voting in Class 14.

14.    On the other hand, the Retiree Committee's assertion that MIDDD is attempting to "manufacture a claim for voting purposes" is rather odd. The MC Case was commenced several weeks before the City filed the Chapter 9 case, over eight months before the filing of the City's original plan of adjustment, over nine months before Macomb County, by and through the Macomb County Public Works Commissioner, appeared in the Chapter 9 case, and over ten months before MIDDD filed the MIDDD Proof of Claim. Thus, to imply that MIDDD Claim was trumped up merely to affect voting on the Plan is simply incongruous.

15. Moreover, MIDDD should not be prejudiced by the mere fact that the MIDDD Claim is large in amount, and thus may allow MIDDD to influence whether Class 14 votes to accept or reject the Plan. The MIDDD Claim is a valid claim, and the City has done nothing to show otherwise. Further, the City formulated the class structure under its Plan, and given the filing and service of the Complaint in the MC Case, it was aware of the magnitude of the MIDDD Claim when it did so. Although the City could have attempted to deal with the MIDDD Claim differently under the Plan, it did not.

[*Remainder of Page Left Intentionally Blank*]

WHEREFORE, MIDDD requests that the Court enter an order granting the Motion, and temporarily allowing the MIDDD Claim for solely for voting purposes in the amount of not less than $26 million.

| | |
|---|---|
| Dated: June 20, 2014 | Respectfully submitted, |
| DECHERT LLP | KIRK, HUTH, LANGE & BADALAMENTI |
| By: /s/ Allan S. Brilliant<br>Allan S. Brilliant<br>Stephen M. Wolpert<br>1095 Avenue of the Americas<br>New York, NY 10016<br>Telephone: (212) 698-3500<br>Facsimile: (212) 698-3599<br>allan.brilliant@dechert.com<br>stephen.wolpert@dechert.com<br><br>*Attorneys for Macomb Interceptor Drain Drainage District* | By: /s/ Raechel M. Badalamenti (P64361)<br>Raechel M. Badalamenti<br>Robert T. Carollo Jr.<br>19500 Hall Road, Suite 100<br>Clinton Township, MI 48038<br>Telephone: (586) 412-4900<br>Facsimile: (586) 412-4949<br>rbadalamenti@KHLBlaw.com<br><br>*Attorneys for Macomb Interceptor Drain Drainage District* |