**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**OFFICIAL COMMITTEE OF RETIREES' CONCURRENCE IN MOTION
OF THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT
TO DESIGNATE AND DETERMINE ADDITIONAL LEGAL ISSUE
REGARDING METHODOLOGY FOR ASF RECOUPMENT FROM RETIREES**

The Official Committee of Retirees of the City of Detroit, Michigan (the "Committee") joins in the motion (the Motion") of the General Retirement System of the City of Detroit ("GRS") to raise an issue before the Court regarding a voluntary method of recouping disputed Annuity Savings Fund Excess Amounts from GRS retirees under the City's Fourth Amended Plan for the Adjustment Debts of the City of Detroit (the "Plan") [Docket No.4392].[1] In support of its concurrence, the Committee states as follow:

**PRELIMINARY STATEMENT**

As this Court is aware, many retirees voting in favor of the plan of adjustment dispute the City's right to recoup any amount of the distributions received by retirees from their annuity savings fund ("ASF") accounts. That view is also obviously shared by retirees who have thus far abstained from voting or who may have already voted against the City's Plan. In addition to the reasons for the relief requested by the GRS, the option of a voluntary lump sum repayment of the ASF Recoupment Amount within a fixed and reasonable time after the Effective Date will resolve certain controversies inherent in methodology with respect to the calculation and

---

[1] Capitalized terms used herein have the meaning ascribed to them in the Plan unless otherwise defined.

recovery of the ASF Recoupment raised by the retirees that stand in the way of their acceptance of the Plan.

The Disclosure Statement and Plan repeatedly emphasize the 20% cap on the total ASF Recoupment Amount. In short hand, this cap has been referred to by the City and Committee as the "Balance Cap." However, repayment of the ASF Recoupment Amount by means of a annuity with interest at 6.75% over a period of an entire lifetime may result in payment in actual dollars substantially in excess of the Balance Cap, both in nominal and present value terms. It may also be a method of repayment that is substantially more expensive for a given retiree. The voluntary lump sum repayment option would fix the retiree's obligation at the capped amount stated on his or her ballot, and would resolve issues regarding the interest rate and the length of the repayment period for a significant group of retirees.

The Committee raised this issue with the City before the Plan was filed. During and after its town hall meetings to solicit "yes" votes for the Plan, it became apparent to the Committee that a lump sum repayment option would not only resolve certain theoretical disputes about ASF Recoupment, but also the economic ones for retirees as well. Many retirees asked the Committee and its counsel to pursue the voluntary option to pay the ballot recoupment amount in a lump sum. As a result, the Committee has concluded and advised the City that such an option may work as an incentive for acceptance of the Plan by those most adversely affected by it.

Offering the option for a payout to the retirees is consistent with the option afforded the other voluntary contributors to the pension plans such as the State and foundations, *i.e.* lump sum payment. Allowing this option is consistent with the purpose of the ASF Recoupment to reduce the underfunding of the pension plan and it will ameliorate to some degree the financial consequences inherent in the methodology of a long term payout for those that elect the option.

- 2 -
13-53846-tjt    Doc 5509    Filed 06/23/14    Entered 06/23/14 10:41:35    Page 2 of 11

For these reasons, as more fully discussed below and in the Motion, the Committee concurs with the GRS in requesting expeditious resolution of the issue and the addition of the lump sum option for satisfaction of ASF Recoupment.

**BACKGROUND**

Pursuant to the City Ordinances, in addition to the defined benefit pension plan, the GRS offered employees the option to contribute zero percent (0%), three percent (3%), five percent (5%), or seven percent (7%) of their annual compensation to an annuity savings fund, which amount would be deducted from their compensation. *See* Detroit Code § 47-2-18 (2010). The City, through its administrators, managers and supervisors encouraged employees to participate in the program as an additional means of saving for retirement. Upon retirement, the accumulated contributions with interest credited on the contributions would be transferred from the Annuity Savings Fund to an Annuity Reserve Fund to be paid out to the plan participant over time, refunded to him or her in a lump sum, or distributed in some combination thereof.

Prior to 2011 when the Ordinance was amended, the City's Charter permitted the GRS Board complete discretion to credit interest to the accounts of Annuity Savings Fund participants. The trustees also had the discretion to credit additional interest over and above the "regular interest" or standard interest permitted by the Charter and fixed by the trustees and to fund the interest allocation from the pension reserve account as follows:

> Whenever the balance of the Income Fund is more than sufficient to cover current charges to the fund, such excess amount may be used for contingency reserves or may be transferred to any of the other Charter-created funds of the Retirement System within this Article II except the Expense Fund, to cover special needs of the Funds as the Board shall determine; provided, however, that in determining whether the balance of the Income Fund is more than sufficient to cover current charges to the Fund, the balance credited to any Accrued Liability Fund shall not be taken into account. In the event the balance in the Income Fund is insufficient to cover the charges to the Fund, the amount of the insufficiency shall be transferred from the Pension Accumulation Fund.

Detroit Code Sec.47-1-18 (2010). Thus, from the vantage point of the Annuity Savings Fund

- 3 -

participants, the trustees had, and utilized, their authority to credit interest to their accounts.

As the Court is aware, the City contends that the GRS Board of Trustees breached their fiduciary duties and the duty of loyalty to the defined benefit pension plan and its participants and beneficiaries by using the pension plan assets to subsidize the returns on the ASF accounts in excess of what the account assets actually earned. *See* Consolidated Reply To Certain Objections To Confirmation Of Fourth Amended Plan For The Adjustment Of Debts Of The City Of Detroit [Dkt 5034] at 172. The remedy, according to the City, for the breach of the trustees' duties is class based restitution from the *recipients* of the excess interest payments:

> The Plan provides for a selective reversal of the some of the transactions. Consequently, to remedy the breach of trust: (a) the GRS trust (and individual ASF account balances) should be corrected so that the GRS Traditional Pension Plan assets that are currently improperly accounted for as ASF assets are properly accounted for as GRS Traditional Pension Plan assets; and (b) ASF participants, who received a distribution of GRS Traditional Pension Plan assets attributable to the excess ASF returns, must repay the GRS Traditional Pension Plan those amounts improperly distributed (through a charge against the amounts due from the GRS Traditional Pension Plan). The Plan accomplishes these objectives, while limiting both the property to be recovered from ASF participants and the amount of the recovery

Consolidated Reply at 175.

**ASF Recoupment Is an Additional Source of Funding for the GRS Plan**

According to the City, ASF Recoupment serves the salutory purpose of keeping the overall cuts to the GRS pension benefits to a certain level without requiring additional contributions from the City's general fund.[2] If the holders of GRS Pension Claims in Class 11

---

[2] The City's rationale for the ASF Recoupment is disclosed in the Fourth Amended Disclosure Statement With Respect to the /Fourth Amended Plan for Adjustment of Debts of the City of Detroit [Dkt/ No. 4392] at 24 as follows:
> In designing the Plan, the City addressed whether the Plan should: (a) contain higher across-the-board pension cuts for all GRS participants and not try to recover a portion of the excess ASF interest credits or (b) recover a portion of the excess ASF interest credits, which would result in lower across-the-board pension cuts for all GRS participants. The City decided on the second choice and, therefore, there will be both across-the-board pension cuts and a recovery of excess ASF interest credits. **As a result, the across-the-board cuts will be lower**. (emphasis in original).

- 4 -

vote for the Plan and the Plan is confirmed, the GRS retiree pension benefits will be reduced across the board by 4.5%, and they will not receive an annual escalator of cost of living adjustment (valued at an average 13% of their pension benefits over their actuarial determined lifetimes). In order to keep the pension reductions at that level, certain retirees will be subject to ASF Recoupment, which will reduce their pensions by as much as an additional 15.5%, referred to by the Committee as the "Pain Cap." From the Committee's perspective, ASF Recoupment under the Plan is also a settlement of the issues surrounding the City's ability to achieve any recoupment from plan participants, as distinguished from Plan trustees, including past City officials.

The level of benefit reductions under this Plan scenario is also contingent on funding from the State Contribution and the DIA Settlement proceeds over a twenty (20) year period. By agreement with the funding parties, both the State Contribution and the DIA Settlement proceeds may paid on or about the Effective Date at an amount discounted to the present value of the required long term contributions. The discount rate to be used for contributions to the GRS is the GRS investment rate of 6.75%. In addition, the GRS pension plan for the period from 2014 to 2023 will be funded by payments over a fixed 9 year period from the Detroit Water and Sewerage Department ("DWSD") representing DWSD's full allocation of the GRS unfunded actuarial accrued liability remaining after the pension modifications and related administrative and restructuring costs.

The other significant source of funding for the GRS plan post Effective Date is the ASF Recoupment from certain retirees and actives employees who maintained an ASF account and/or received a distribution from such an account between July 1, 2003 and June 30, 2013, defined n the Plan as the "ASF Recoupment Period." Article I. A. The City previously estimated that ASF Recoupment will realize approximately $230 million for the City to meet the required

contributions to the GRS pension plan. *See* Fourth Amended Disclosure Statement With Respect To Fourth subject Amended Plan For Adjustment of Debts For the City of Detroit at 24 ("Disclosure Statement") [Docket No. 4391] ("The City believes that the Annuity Savings Fund Recoupment process, to the 20% cap, will permit the City to recover approximately $230 million of such excess interest.").[3]

Unlike the outside funders, the retirees do not have the option under the Plan to pay the ASF Recoupment amount as indicated on the retirees' ballots at its present value at a reasonable fixed time after the Effective Date. Moreover, as the GRS notes, ASF Recoupment is not the result of a judgment on the City's claims as no action for recovery has been brought by the City against individual retirees. Motion at ¶10. The Committee submits that the recovery depends on the retirees' vote to accept the Plan. Accordingly, an option for a lump sum payment that has been requested by numbers of affected retirees not only serves the purpose of funding the pension plan, but is also more likely to achieve acceptance of the Plan by the affected GRS retirees.

**The ASF Recoupment Process Is Inconsistent With a Capped Deduction**

From the retirees' perspective, the absence of a voluntary repayment option renders the actual ASF Recoupment process inconsistent with the payment caps described by the City in its Plan and Disclosure Statement. It is that inconsistency, among other issues, that is generating opposition to the Plan.

The Annuity Savings Fund Excess Amount is calculated by taking into account the Actual Return on investment assets in the ASF account during the ASF Recoupment Period, subject to certain limitations, against the amount credited to the account by the trustees. The

---

[3] This amount has been reduced somewhat by the correction made to the ballots for the period commencing on July 1, 2003.
13-53846-tjt    Doc 5509    Filed 06/23/14    Entered 06/23/14 10:41:35    Page 6 of 11

result is purportedly capped at 20% of the highest balance in the retiree's account during that period.

The 20% Balance Cap is an essential feature of the final calculation highlighted in the Disclosure Statement: "**There will be a cap on what is recovered**. Specifically, for any active or former employee or retiree, the recovery will be limited to **20%** of the highest value of such participant's ASF account balance between July 1, 2003 and June 30, 2013 (including any unpaid loans taken by the participant from his or her ASF account as of such date). The 20% cap described above is not the average amount of the reduction from your pension as a result of the Annuity Savings Fund Recoupment." (emphasis in the original). Disclosure Statement, at 24.[4] The Pain Cap or second cap of 15.5%, which combined with the 4.5% across the board cut, limits the total reduction from the GRS retiree's pension to 20% is also described in the Disclosure Statement. See Disclosure Statement at 25:

> Further, for a retiree who is receiving a pension as of June 30, 2014, if the Outside Funding is received, the total combined reduction to your current annual pension (i.e., your reduction from the 4.5% cut and your Annuity Savings Fund Recoupment) will not exceed 20% of your current annual pension.

For those retirees, who received a distribution from their annuity savings account during the ASF Recoupment Period, the City proposes that their ASF Recoupment will be converted into actuarially-determined monthly annuity amounts, and then deducted from the retirees' monthly pension checks for the remainder of their lives. The ASF Recoupment Amount is annuitized based on the City's 6.75% investment rate of return assumption used in the Plan and upon other factors, such as life expectancy of the retirees. *See* Plan II. 3.r.ii.D.2. The obvious result of the conversion to an annuity at the 6.75% interest rate is that average retirees will

---

[4] *See* also Disclosure Statement at 25: "Your Annuity Savings Fund Excess Amount, *subject to the 20% cap described above*, will then be deducted from your ASF account and irrevocably contributed to the pool of all GRS assets." (emphasis in the original).

invariably be paying substantially more in actual dollars than the Pain Cap and many will exceed the Balance Cap repeatedly referred to in the Plan and Disclosure Statement.

Several actual examples of ASF Recoupment, from the retirees' perspective, illustrate how the annuitization of the ASF Recoupment Excess Amount exceeds the 20% caps in actual payments. A 67 year old retiree today with an annual pension of $11,089 currently receives a monthly pension check of $924.14. His ASF Recoupment Excess Amount subject to the cap is $16,030. The monthly ASF Recoupment offset against his pension is $143.24. If this retiree lives 15 years (his expected lifetime), the City will actually recoup $25,740 from the retiree--$9,010 more than the 20% cap in actual payments. Another retiree, who is 55, receives a pension of $4,768.75 monthly. His total ASF Recoupment Excess Amount is $111,688.12 and the monthly ASF Recoupment Amount is $739.16. Over his life (25.4 more years based on actuarial assumptions), this retiree is expected to pay back $225,295--more than twice the amount of the 20% cap. If the retirees in these examples live longer than their actuarial determined expected lives, their payments will exceed the ASF Recoupment on an amortized basis.

The cost of ASF Recoupment over time is directly tied to the voting process. The Class 11 GRS Ballot identified for the retirees (i) the Annuity Savings Fund Excess Amount that the City alleges was attributed to their ASF accounts, and (ii) the monthly amount that will be deducted from the retiree's monthly GRS pension payments to recoup the purported excess interest. Although the interest rate is not expressly addressed in the Plan or Disclosure Statement, retirees have quickly realized that the payments over time utilizing 6.75% will cost them more than if they paid the recoupment amount from their own reserves or financed the payment privately at substantially lower current market rates of consumer secured borrowing.

- 8 -

## RELIEF REQUESTED

As the GRS states, subjecting retirees to this method of recoupment, without the voluntary lump sum payout option, essentially forces them into a secured financing transaction at a fairly burdensome interest rate of 6.75%. In light of current interest rates on home equity loans, for instance, retirees may fare significantly better borrowing money—at a substantially lower interest rate than 6.75%—and using the loan proceeds to satisfy the Recoupment Amount in a lump-sum payment.

Based on the above, the Committee concurs that the method of satisfying ASF Recoupment, including whether the City can compel the retirees to satisfy their Recoupment Amount over time without offering an option to pay it up in a lump sum, is a discrete legal issue that should be similarly resolved independent of and prior to the Plan confirmation trial.

The addition of the lump sum payment at the capped ASF Recoupment amount within a fixed and reasonable period of time after the Effective Date would be consistent with the options afforded the State and the funding foundations for contributions to the pension plan. It would resolve certain controversies with respect to the perceived inconsistency between the Plan and Disclosure Statement on the one hand, and on the other hand, the actual application of the ASF Recoupment and aid in the implementation of the Plan by providing certain funding for the GRS pension plan.

WHEREFORE, the Committee respectfully requests that the issue regarding the right of GRS retirees to be able to satisfy the ASF Recoupment sought by the City via a lump-sum payment be designated and determined by the Court as a discrete legal issue.

Dated: June 23, 2014

Respectfully submitted,

DENTONS US LLP

By: _/s/ Carole Neville_
Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel: (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

and

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW Suite 600, East Tower
Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

and

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Retirees Committee*

# CERTIFICATE OF SERVICE

I, Carole Neville, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on June 23, 2014.

                                  By:     */s/ Carole Neville*
                                                    Carole Neville