## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## SYNCORA'S RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER

On May 5, 2014, Syncora served the City with a 30(b)(6) notice containing 52 deposition topics. After several meet-and-confers, the parties were able to reach agreement on every topic except one — Syncora's request that the City provide certain of the information it relied on to discriminate in favor of the retirees (*i.e.*, the "identity, location, and financial position of the City's retirees").

In the meet-and-confer, the City raised three objections to this request: (1) relevance; (2) privacy; and (3) burden. Syncora answered each one. The information was relevant to the City's theory of the case that the personal hardship retirees will endure under steeper pension cuts merits discriminating in their favor. With respect to privacy, Syncora assured the City that it could withhold specific identities and addresses of individual retirees. With respect to burden, Syncora told the City that it was not asking the City to <u>create</u> information — it merely wanted to know what the City knew and relied on when it made the decision to

discriminate in the retirees' favor. As the City's counsel has admitted in other contexts, Syncora's and the City's meet-and-confer was a productive one. But in this lone remaining issue, the City spied another opportunity to highlight — for the Court and the press — its animosity towards Syncora.

In an inflammatory motion for a protective order filed late last week, the City accused Syncora of trying to "sabotage the Grand Bargain" and falsely claimed that Syncora was insisting on the "current assets and income of all 20,000 City retirees." (Mot. at 1.) In bringing the motion and framing it the way it did, the City once again suggests that its Chapter 9 case is not a judicial proceeding — but rather a political one, being waged principally through the newspapers. In quick succession, the State's Attorney General latched onto the issue and filed a supportive pleading, as did the retirees. None of the briefs highlighted the careful efforts Syncora had made in the meet-and-confer to tailor its request both to the privacy concerns of the City's pensioners as well as to the burden concerns of the City. Nor did any of the briefs acknowledge that Syncora simply asked the City to provide the information that the City itself already possessed.

Notably, both the City and the retirees contend that the information sought by Syncora's request is "wholly irrelevant." According to the City, it cannot "imagine any possible scenario where the personal financial information of its retirees could be relevant to the confirmation of the City's Plan." (Mot. at 2.)

Syncora agrees.  The personal hardship that retirees or bondholders will suffer is not a cognizable basis under the bankruptcy code to discriminate between them. No case has ever held it so.  Such an approach would be an invitation to a dizzying array of mini-trials, each aimed at determining which party would suffer the least. While the question is an important one of legislative policy, it is not one that the bankruptcy code poses in attempting to answer the problem of unfair discrimination.  If the City were to stipulate that it would withdraw the "Personal Hardship" argument it makes at page 45 of its reply, Syncora would withdraw the request for financial information and the parties could streamline the trial.

But, of course, the City is <u>not</u> willing to withdraw this argument.  Indeed, the City has repeatedly put the financial position of retirees at issue in its reply to Syncora's unfair discrimination argument:

- "The reasonable basis underlying the Plan's treatment of Pension Claims is further demonstrated by the personal hardship that pensioners will endure should the Plan further impair their pension benefits.  Unlike institutional bondholders and their insurers, pensioners rely on payments from the City for their most basic day-to-day needs.  Just as the Second Circuit recognized in <u>Chateaugay</u>, it is significant here that pension benefits are, for many of the City's retirees, their 'only form of wage replacement.' In light of that consideration, the marginal harm that will result from each dollar of pension cuts is far greater than the harm that will result from each dollar of cuts imposed on bondholders." (City's Consol. Reply at ¶ 73 [Dkt. No. 5034] (internal citations omitted).)

3

- "Preferential treatment of Pension Claims also is in recognition of the personal hardship that will befall pensioners, many of whom are also residents of the City." (*Id*. at ¶ 87.)

The City's hypocrisy on this point is patent — it deplores Syncora's discovery request in the most inflammatory of terms, even as it seeks to take advantage of the same information Syncora seeks.

If, as the City claims in its reply brief, "personal hardship" is a relevant consideration, then Syncora should be able obtain the financial information necessary to evaluate the effect of the pension cuts on the retirees. On the other hand, if the City now believes that personal hardship is not a relevant consideration, then it must drop that argument. The City cannot, however, advance a personal hardship argument and then stymie Syncora's attempts to obtain the requisite discovery — as it is now attempting to do in the instant Motion. All Syncora is trying to do is discover the City's case on this point and determine what information it already has. Nothing more, nothing less.

Chapter 9 bankruptcies are a tempting place to break out the torches and pitchforks and pursue the City's lenders through the streets. It is a time-honored and politically-popular approach. But the bankruptcy code deplores — and forbids — a City from favoring one class while showing animus and unfairness to another. And there is no more important time for the law to be enforced than in the name of its least popular creditors. The City's attempt to marshal hatred for Syncora

4

among its retirees is particularly ironic. After all, it was Syncora's insurance that facilitated the $1.4 billion COPs offering — and it was those proceeds that the City and the Retirement Systems used to plug the $1.4 billion hole in the Pension Systems a decade ago. Thus, were it not for Syncora, FGIC, and the COPs, the retirees in this case would be facing <u>much</u> steeper cuts in their pensions, even with the so-called Grand Bargain. And it is this fact which makes the huge disparity between pension claim treatment and COP Holders' treatment so ironic — the proceeds from the COPs went to pay pensions, meaning that they are quite literally intertwined claims in every sense of the word.

Syncora can sympathize with the bitter taste in retirees' mouths that must attend even modest cuts to the pensions they spent years earning. And Syncora shares that bitter taste, inasmuch as the City is now opportunistically trying to declare illegal the very $1.4 billion COPs transaction it insured over a decade ago. This is why Syncora has proposed that the City, its pensioners, and its financial creditors work together to monetize the multi-billion dollar art collection sitting at the heart of the City center. The proceeds of any sale could (a) yield more to pensions than the Grand Bargain on a present value basis; (b) fund the restructuring and revitalization initiatives; and (c) yield higher recoveries to financial creditors. But rather than follow this approach, the City has taken the low

road of setting pensioners and financial creditors at each other's throats — and crafted an unconfirmable plan in the process.

The City does not need bread and circuses. It needs a consensual plan of reorganization that extends fair treatment to everyone. But in sowing more poison and discord into the soil of this case, the City only deepens a divide that every Detroiter should hope could be bridged.

*[Remainder of this page intentionally left blank]*

Dated:  June 23, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: _/s/ Stephen C. Hackney_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and
Syncora Capital Assurance Inc.*