UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**OMNIBUS REPLY OF THE CITY OF DETROIT TO OBJECTIONS TO
THE MOTION FOR SITE VISIT BY COURT IN CONNECTION
WITH THE HEARING ON CONFIRMATION OF
THE CITY'S PLAN OF ADJUSTMENT**

Objectors[1] have raised five primary objections to the City's proposed

Site Visit. The creditors argue that (1) time used on the Site Visit should count

against the City's allotted time at the confirmation hearing; (2) the Court lacks

---

[1] The Objectors are Syncora Guarantee Inc.; Syncora Capital Assurance Inc.; Deutsche Bank AG, London; Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A.; Hypothekenbank Frankfurt AG; Hypothekenbank Frankfurt International S.A.; Wilmington Trust, National Association, as Successor Contract Administrator; Assured Guaranty Municipal Corp.; Berkshire Hathaway Assurance Corporation; Financial Guaranty Insurance Company; and National Public Finance Guarantee Corporation. The Retirement Systems filed a limited response in which they did not object to the Site Visit but requested to participate in the Site Visit even if they do not contest confirmation of the Plan. In addition, Ms. Dorothy M.W. Baker, a City retiree, filed an objection that is separately addressed herein.

discretion to order the Site Visit; (3) evidence obtained from a Site Visit has no

possible relevance to the confirmation of the City's Plan; (4) a Site Visit is an

inefficient use of time; and (5) the City is improperly trying to exclude certain

counsel from participating. As discussed in detail below, each of these objections

fails.

## I. THE CITY WITHDRAWS ITS REQUEST TO CARVE OUT THE SITE VISIT FROM THE TIME ALLOCATED FOR THE CONFIRMATION HEARING

The City believes that it is important for the Court to be able to view

and consider, in determining the feasibility of the City's Plan, the evidence that

will come into the record through the Site Visit. The City therefore withdraws its

request that the Site Visit not count against its time allocation.

## II. ORDERING A SITE VISIT IS WELL WITHIN THE DISCRETION OF THE COURT

The Objectors give short shrift to the fact that federal courts have the

"inherent power" to permit the finder of fact a "view of places or objects outside

the courtroom," and that the decision whether to conduct a site visit "is entrusted to

the sound discretion of the trial court." *United States v. Moonda*, 347 Fed. Appx.

192, 201 (6th Cir. 2009) (citation and quotation marks omitted). Instead, they insist

that the mere fact that photographs or videos could be introduced into evidence in

court means that the Court must deny the City's Motion. *See, e.g.,* Docket No.

5353 at 13; Docket No. 5359 at 1-2.[2] In support of this position, they cite a number of cases in which appellate courts found that denial of a site visit was not an abuse of discretion by the trial court.

The Objectors' position suffers from a number of flaws. First, if it were the case that the availability of photographic evidence bars courts from viewing places outside of the courtroom, then it would *never* be appropriate for a court to participate in a site visit. This is plainly not the law. *See Moonda*, 347 Fed. Appx. at 201. Numerous trial courts have permitted site visits to complement the exhibits offered into evidence in the courtroom, and appellate courts have reviewed records containing site visit evidence without any disapprobation. *See, e.g., Satawa v. Macomb County Rd. Comm'n*, 689 F.3d 506 (6th Cir. 2012) (in free-speech case, the district court for the Eastern District of Michigan conducted a "lengthy site visit" of the proposed location for a religious holiday display before denying plaintiff's motion for a TRO); *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895 (6th Cir. 2002) (noting that, as part of the record in the lower court, "[t]he

---

[2] Ironically, in virtually the same breath, the Objectors argue that the recording of the Site Visit by videographic (in addition to stenographic) means is somehow improper. The law clearly favors having a complete record of any court or jury site visit. See, e.g., *Clemente v. Carnicon-Puerto Rico Mgt. Assoc.*, 52 F.3d 383, 386-87 (1st Cir. 1995) (stating that jury view should embody certain safeguards and that court reporter should ideally be present). The City's view is that if the Court deems it appropriate to have the Site Visit recorded by a videographer, such as a Certified Evidentiary Video Specialist, it is well within the Court's discretion to do so.

court also conducted a site visit to Roskam's newly rebuilt facility"); *Cowan v. United States*, 748 F.3d 233 (5th Cir. 2014) (considering, as part of the record on appeal of a desegregation lawsuit, the district court's detailed observations from its site visit to the Cleveland schools); *Glassroth v. Moore*, 335 F.3d 1282, 1289-90 (11th Cir. 2003) (lower court properly relied on, as evidence, both the impressions gleaned during a site visit to a state-court monument and photographs of the site offered as exhibits in the courtroom).

Second, the cases cited by the Objectors are inapposite. As an initial matter, they merely stand for the proposition that a trial court has *discretion*, should it choose to do so, to deny a motion for a site visit – not that the court *must* deny such a motion. *See, e.g., U.S. v. Triplett*, 195 F.3d 990, 999 (8th Cir. 1999); *U.S. v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997); *Moonda*, 347 Fed. Appx. at 201. In addition, the reasons for the courts' denial of site visits in those cases was very fact-specific, making them distinguishable from this case.

In *Crochiere*, the defendant inmate sought a site visit to discredit certain inmate witnesses by showing that they could not have seen events taking place in defendant's cell. However, as the appellate court noted, it turned out that neither of those witnesses "testified that they could see into Nieves's cell" but instead testified about "what they heard, and what they saw happen in front of their own cells." 129 F.3d at 236. As a result, a site visit showing that the witnesses

could not see into the defendant's cell "would not have helped to discredit this testimony." *Id.* In *Triplett*, the defendant likewise sought a site visit for purposes of impeaching witnesses' credibility. 195 F.3d at 999. The court in that case denied the motion for a site visit because the defendant had ample other means for such impeachment, and the court of appeals found no abuse of discretion. *Id.*

In contrast to *Crochiere* and *Triplett*, the City is not requesting the Site Visit for purposes of impeachment, which can typically be accomplished through cross-examination of a witness. Rather, the purpose of the Site Visit is to provide the Court with experiential evidence – which by definition cannot be presented in the courtroom – of the City's current condition and challenges and how it intends to meet them.

In *Moonda*, the issue was not whether a site visit was warranted, but whether it could be done safely:

> Part of the government's trial theory was that Moonda's claimed inability to identify her husband's shooter -- the man with whom she had been engaged in a sexual relationship for months prior to the murder -- indicated that she was lying to investigators to cover up the murder conspiracy. Moonda hoped to convince the jury that the visual and auditory distractions of the turnpike, coupled with the stress of the robbery, hindered her from identifying the assailant. She therefore wanted the jury to have a first-hand perception of the environment as it existed at the time of the shooting.
>
> Although **the district court initially indicated that it was inclined to grant a jury view**, it ultimately found, based

on the U.S. Marshal's recommendation, that a view was not feasible. The Marshal advised that "[e]ven partial lane closures to accommodate this could lead to disastrous consequences cause[d] by vehicle accidents due to increased congestion and rubbernecking." "In addition," the Marshal noted, "it would be a logistical nightmare to shut down all lanes of the turnpike for miles prior to the crime scene in an effort to accomplish this task."

*Moonda*, 347 Fed. Appx. at 201-202 (emphasis added). The Sixth Circuit Court of Appeals, noting that "[a] trial court's decision to allow *or* disallow a jury viewing of an alleged crime scene is highly discretionary," agreed that "there would be inherent dangers in conducting a jury view next to a heavily trafficked turnpike" such that the trial court had not abused its discretion in denying the motion. *Id.* (emphasis added).

The City's Site Visit does not present the same physical or logistical hazards. Unlike *Moonda*, the City does not propose to take a large group on foot onto the verge of a busy expressway. Instead, it proposes to allow them to view relevant locations from the comfort and safety of a tour bus, accompanied by such security as the Court and the U.S. Marshal deem appropriate.[3] Any stops will be

_____

[3] The Objectors raise the spectre of security risks that could arise if the details of the Site Visit are leaked. Docket No. 5353 at 16 n.3. However, the City's proposal contemplates that the route of the Site Visit, as well as the time and place (and, if necessary, the date) of the tour bus' departure would be filed under seal and subject to confidentiality as ordered by the Court. The City believes that all parties who receive copies of the sealed Site Visit schedule will maintain its confidentiality. Thus, there should be no danger of a leak.

conducted in accordance with appropriate security procedures.[4] There is no need to close down any streets and no resulting "logistical nightmare" as there would have been in *Moonda*. Thus, there is no impediment to the exercise of the Court's discretion to permit the Site Visit.

Finally, and very tellingly, the Objectors fail to cite a single case – and the City is aware of none – where a court's decision to view a site outside of the courtroom, accompanied by counsel for all parties, was found to be an abuse of discretion. Just as courts' decisions to *deny* site visits are within their discretion, so too are courts' decisions to *permit* site visits. And for all of the reasons set forth in the City's Motion, the circumstances of this case clearly warrant the exercise of the Court's discretion to grant the Site Visit Motion.

## III. EVIDENCE PRESENTED BY MEANS OF THE SITE VISIT IS RELEVANT TO THE FEASIBILITY OF THE CITY'S PLAN

The Objectors are correct that, for its Plan to be feasible, the City must demonstrate that "it is probable that the debtor can both pay pre-petition debt and provide future public services at the level necessary to its viability as a municipality." Docket No. 5353 at 6 (quoting *In re Mount Carbon Metro Dist.*, 242 B.R. 18, 35 (Bankr. D. Colo. 1999). To make this showing, the City must present evidence of its needs and challenges, and show how it can and will meet those

_____

[4] Furthermore, contrary to the unfounded suggestion of some Objectors, counsel will *not* be required to sign a waiver in order to participate in the Site Visit.

needs and challenges. A great deal of that evidence will come in the form of testimony and documents showing "reasonable income and expense projections." *Mount Carbon*, 242 B.R. at 35. But that evidence, as the City argued in its Motion, is abstract. It is no substitute for, and cannot adequately replicate, the kind of experiential, immediate and direct evidence provided by the Site Visit. As described in detail in the Motion,[5] by showing both the depths of the needs of the City and its residents, and the possibilities for rebirth and revitalization, the Site Visit will enable the Court to better assess how the Plan will allow the City to move forward as a viable municipality. Such evidence goes directly to the City's burden of proof at confirmation regarding the feasibility of its Plan.

The Objectors argue – without legal justification – that contextual evidence is "irrelevant." Indeed, the law is just the opposite: courts have found that contextual evidence is admissible and reliable. *See, e.g., Glassroth*, 335 F.3d at 1289-90. What the Objectors really mean is that they do not want the Court to come face-to-face with the human reality that is the flip side of the cold, sterile numbers. But just because the Objectors would rather the Court did not see certain evidence does not make that evidence irrelevant.

---

[5] *See* Motion at pp. 4-5.

## IV.    A THREE-HOUR SITE VISIT IS NOT INEFFICIENT

As an initial matter, efficiency is not really an issue in a case where each side has a set amount of time to present its case. The City has agreed that the Site Visit will count against its allocated time. Thus, any alleged "inefficiency" in the Site Visit (which, in any event, is *not* inefficient) cannot possibly prejudice the Objectors.

Equally important, it appears that the Objectors are merely using the claim of "inefficiency" as a pretext.  In its Motion, the City argued that "[t]he Objectors that oppose the Site Visit want the Court to view this case as an abstract numbers game and to ignore the human element." That has been borne out by the objections, which urge the Court to focus primarily, if not exclusively, on "financial data," "income and expense projections," "the financial condition of the DWSD as well as the municipal finance markets," and other purely numerical evidence. *See, e.g.,* Docket No. 5353 at 4-6. The Objectors then dismiss experiential evidence, such as the evidence to be gained from the Site Visit, as "inefficient."

If this case were the Chapter 11 reorganization of a manufacturing company or a retail business, the City would not take issue with the Objectors' approach. But this is *not* a business reorganization, but rather the reorganization of the entire milieu in which almost three-quarters of a million people live their daily

lives. In a case of this importance and complexity, contextual evidence – the human element – should not be excluded. Moreover, in the framework of a trial that is anticipated to run for more than five weeks, involving scores of witnesses and hundreds, if not thousands, of exhibits, it is hard to see how the investment of three hours in a Site Visit could be viewed as "inefficient," particularly when it provides the Court with evidence that – as set forth in detail in the City's Motion – cannot be presented any other way.

The Objectors further argue – somewhat incoherently – that the proposed three-hour Site Visit is both too much and too little: too much because it involves more than one location, and too little because a "sprawling metropolis covering more than 138 square miles" cannot be the proper subject of a site visit at all. *See* Docket No. 5353 at 10-12. Neither of these contradictory objections has merit.

First, Contrary to the Objectors' insistence that a site visit may only take place at a single, specific, defined location, courts have conducted site visits that cover broad swaths of territory. For example, in *Kane County v. United States*, 2013 U.S. Dist. LEXIS 40118 (D. Utah Mar. 20, 2013), the plaintiff county brought a quiet title action with respect to fifteen different roads that traversed federally-owned lands. Over the course of a two-day site visit, the court traveled all fifteen roads with counsel for both parties, making numerous stops at various

locations. *Id.* at \*4-5. The three-hour overview of key locations proposed by the City is modest in comparison.

Second, there is no legal basis for the Objectors' contention (and they have identified none) that a site visit must include every possible aspect of the site to be viewed, or that it is somehow improper for the City, in presenting its case, to choose the evidence that it believes is relevant to that case. The Site Visit will not address every issue related to confirmation of the City's Plan, but rather will focus on what the City views as the key issues. For example, not only is remediation of blight a key focus of the Plan, but the Site Visit would also include a stop at the DIA – which no one can contend is not at the epicenter of a key issue in the Court's evaluation of confirmation, or a "location of central relevance." Docket No. 5353 at 11. This approach is supported by the case law; as the Objectors themselves point out, in *Charles Street* – a case relied upon by the City – "the value of improvements being made to the debtor's real estate to be visited was a ***key issue*** in whether or not the debtor's Chapter 11 plan could be confirmed." *Id.* (emphasis added).

It should be noted that even if the City instead were to offer photographs into evidence, as the Objectors suggest would be more efficient, those photographs would, of necessity, be selective as well. It is impossible for any single exhibit, witness or piece of evidence to tell the entire story of the City of

Detroit. There is no reason to exclude the Site Visit for telling only part of the story (particularly since it is an important part), when *every* piece of evidence will tell only part of the story.

Nor is it a viable solution, as some Objectors suggest, to instead invite the Court's appointed expert, Martha Kopacz, to view the locations on the Site Visit. *See* Docket No. 5353 at 15-16. A view of locations outside the courtroom "provides independent evidence" that may be admitted into the record and relied upon by the trial court. *Glassroth*, 335 F.3d at 1289 (internal citations and quotation marks omitted). The City can no more offer the Site View into evidence through Ms. Kopacz than it could introduce its financial projections through her. The Court, not Ms. Kopacz, is the finder of fact in this case; it is to the Court, and not Ms. Kopacz, that evidence must be presented for admission into the record.

Because the evidence to be introduced by means of the Site Visit is relevant to the feasibility of the City's Plan and cannot adequately be presented in any other manner, the Court should exercise its discretion to permit the Site Visit.

## V. THE CITY IS NOT ATTEMPTING TO EXCLUDE ANY COUNSEL FOR AN OBJECTING PARTY FROM PARTICIPATING IN THE SITE VISIT

In crafting its proposed Site Visit Protocol, it was the City's intent to include counsel for all represented objectors in the Site Visit. The Retirement Systems' argument that their counsel should be allowed to participate in the Site

Visit *whether or not they object to the Plan* makes little sense. The Site Visit is part of a contested confirmation hearing. If Retirement Systems do not contest confirmation of the Plan, then they have no role to play and no adverse interest to protect by participating in the Site Visit. If counsel for every party that supports or does not contest the Plan were to be included in the Site Visit, the City would need to rent several more buses.

To the extent any counsel for an *objecting* party was not included in the Protocol's list of participants, such exclusion was inadvertent and will be corrected in the final version of the Protocol.

## VI.    RESPONSE TO OBJECTION OF DOROTHY M.W. BAKER

Dorothy M.W. Baker, a City retiree, filed an objection to the Motion, stating that: "I object to the blight tour suggested by Kevin Orr. This is unfair to retirees. Kevin Orr would have an unfair advantage pleading his case to Judge Rhodes outside the courtroom." *See* Docket No. 5468. Respectfully, Ms. Baker's objection appears to rest on mistaken assumptions and does not provide a basis for denying the City's Motion.

First, it must be clarified that the proposed Site Visit is not a "blight tour," but rather an opportunity for the Court to see the good, the bad and the ugly – both the challenges faced by the City, and a look at how those challenges can be, and are being, addressed.

Second, the City will *not* be pleading its case to the Court during the Site Visit. The descriptions that the City will provide regarding each location in the Site Visit will be factual, and the language of the descriptions will be agreed in advance between the City and the Objectors.[6] The Site Visit will be used to present evidence for admission into the record; it is not an opportunity for the City to make arguments to the Court. Accordingly, Ms. Baker's objection should be overruled.

## CONCLUSION

For the reasons stated herein, the City respectfully requests that the Court overrule the objections and grant its Motion for a Site Visit.

**[signature page follows]**

---

[6] The fact that the City's Site Visit descriptions will be vetted and agreed to in advance by the Objectors demonstrates the inaccuracy of the Objectors' claim that the Site Visit will be "moderated by one party." Docket No. 5353 at 4.

Dated:  June 23, 2014

Respectfully submitted,

/s/ Deborah Kovsky-Apap
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI  48075
Telephone:  (248) 359-7300
Fax:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

- and -

Thomas F. Cullen, Jr.
Gregory M. Shumaker
Geoffrey S. Stewart
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

**ATTORNEYS FOR THE CITY OF
DETROIT**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2014, I caused the foregoing

*Omnibus Reply Of The City Of Detroit To Objections To The Motion For Site Visit By Court In Connection With The Hearing On Confirmation Of The City's Plan Of Adjustment* to be electronically filed with the Clerk of the Court which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this bankruptcy case.

Dated: June 23, 2014                    /s/ Deborah Kovsky-Apap
                                        Deborah Kovsky-Apap (P68258)