UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re

CITY OF DETROIT, MICHIGAN

Debtor.

Chapter 9

Case No.: 13-53846

Hon. Steven W. Rhodes

# CITY OF DETROIT'S OPPOSITION TO MOTION TO COMPEL ADDITIONAL SUPPLEMENTAL RESPONSES TO SYNCORA'S INTERROGATORIES

The City of Detroit, Michigan (the "City") opposes the Motion to Compel Additional Supplemental Responses to Syncora's Interrogatories (the "Motion") (DE 5436) filed by Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora"). In support of its Opposition, the City states as follows:

## INTRODUCTION

1. The Federal Rules of Civil Procedure do not require a party to answer interrogatories in the way its opponent prefers them to be answered—and, of course, the Rules *prohibit* a party from answering falsely. But that is precisely what Syncora demands here: it asks the Court to compel the City to provide the responses that Syncora wants, even though those responses would be untruthful. The Court should reject this request and deny the Motion.

2. The City has provided true and complete responses to Syncora's seven "Art Interrogatories," which sought information regarding the value of works of art held at the Detroit Institute of Arts ("DIA"), restrictions on their alienability, and the number of annual visitors to DIA. The City's initial responses disclosed the partial responsive information available to it, explained that DIA is operated by the Detroit Institute of Arts Corporation ("DIA Corp.") rather than the City, and directed Syncora to "the documents the DIA Corp. has agreed to produce and/or make available" for more complete information. (Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories at 10–19.)

3. After a meet-and-confer, the City supplemented its responses to provide pinpoint cites in its document production for the partial responsive information in its possession, and again directed Syncora to DIA Corp. for any further information. (Syncora Mot. Ex. 6C, City's Objections And Second Supplemental Reponses To Syncora's First Set Of Interrogatories.)

4. Syncora's Motion *never* mentions the City's disclosure of the responsive information in its possession. (*See* Syncora Mot. ¶¶ 15–23.) Syncora, moreover, nowhere asserts that the City withheld information in its possession, and never disputes that the additional information requested in the Art Interrogatories is available from DIA Corp., whose documents Syncora has separately subpoenaed. (*See id*.) The City's responses thus are true and complete, and no further response

or supplementation is possible, much less required.

5. Syncora nonetheless contends that the Court should order the City to replace its true and complete responses with false statements—but its entire Motion rests on the fatally flawed premise that the Federal Rules or some "agreement" required the City to "provide the requested answer" or "admit that it did not know." (*Id.* ¶ 3; *see id.* ¶ 10.) But *neither* of Syncora's preferred answers would be truthful because the City possessed *partial* responsive information. The City therefore could not, and never agreed to, provide either of those answers.

6. Stunningly, Syncora's Motion nowhere mentions that Syncora was on full notice of how the City intended to supplement its responses, but *never* bothered to respond, much less object, to this notice in the *five days before* the City served its supplemental responses. Syncora's Motion thus never mentions that the City previewed for Syncora in a June 4 email that it would identify "partial information" in connection with many of the interrogatories and also "acknowledge that the answers to those questions reside with DIA." (Syncora Mot. Ex. 6E, 6/4/14 2:29 p.m. Email from G. Irwin to W. Arnault.) Syncora also declines to advise the Court that the City's June 9 supplemental responses tracked this fully-disclosed approach exactly.

7. The City's truthful responses thus complied with *both* the Rules and any understanding between the parties. Syncora's apparent dissatisfaction with

those responses and its inability to dictate the City's answers provides no basis to compel the City to make false statements. The Court should deny the Motion.

## BACKGROUND

8. Syncora's Motion revolves around seven "Art Interrogatories" seeking information regarding works of art held at DIA, whose operations are managed by DIA Corp. (Syncora Mot. ¶¶ 1, 7.) Syncora has subpoenaed DIA Corp.'s documents bearing on the subject matter of the Art Interrogatories, and DIA Corp. has agreed to make its documents available. (*See* Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories; Syncora Mot. Ex. 6C, City's Objections And Second Supplemental Reponses To Syncora's First Set Of Interrogatories at 3–13.)[1]

9. Syncora's Interrogatories 1 and 2 asked the City to identify "*all* Works of Art" in the DIA "Collection that have been valued at $1 million or more" and the "300 most valuable Works of Art in the Collection." (First Set of Interrog. at 8 [40360] (emphasis added).) The City's initial responses stated in part:

> The City further objects that the DIA is being operated by the DIA Corp. pursuant to a 1997 Operating Agreement, which gives the DIA Corp. control over and responsibility for the DIA and its operations.

---

[1] DIA Corp., also known as the Founders Society for the Detroit Institute of Arts, operates and maintains the DIA museum and the art housed therein under a 1997 operating agreement with the City. The DIA Corp. has its own counsel in this proceeding and has responded to document requests from creditors separate and apart from discovery to the City. DIA Corp. has agreed to produce documents on each of the topics that are the subject of this Motion.

- 4 -
13-53846-tjt    Doc 5582    Filed 06/25/14    Entered 06/25/14 15:02:12    Page 4 of 18

> Subject to and without waiving these objections, the City states that Works of Art are not valued for this purpose . . . The answer to this interrogatory may be determined in part by examining the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

(Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories at 10–11.)

10. Interrogatories 3 and 6 asked the City to identify "*all* restrictions on alienability on" certain works in the Collection. (First Set of Interrog. at 8 (emphasis added).) The City's response stated in part:

> Objects became part of the Museum Art Collection through thousands of transactions entered into over the course of more than 100 years. As a result and given disparate views of certain stakeholders, the City has not established with certainty whether it has legal authority to use any of those objects to satisfy its debts and obligations. This is particularly true as to those works of art that are not credited as having been acquired using City funds. Even if the City could fully validate the extent of its property interest in the works of art in the Museum Art Collection, the City's ability to sell, transfer or convey objects in the Museum Art Collection may be limited as a matter of law and fact.

(Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories at 12–13, 17.)

11. Interrogatory 4 asked the City to identify "*all* Works of Art in the Collection that were not purchased with City funds," and Interrogatory 5 asked the City to identify "*all* Works of Art that have been sold by the City or DIA Corp." (First Set of Interrog. at 8 (emphases added).) Interrogatory 7 asked the City to identify "the number of visitors, on an annual basis," to DIA "from 1883 to the

present." (*Id.* at 9.) The City's initial response to each of these Interrogatories again noted DIA Corp.'s "control over and responsibility for DIA and its operations" and reiterated that the complete answer "may be determined in part by examining documents" from DIA Corp. (Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories at 14–16, 19.)

12. Syncora now contends that the Art Interrogatories "were intended to ascertain what steps the City had taken to value its art collection and identify any restrictions on its sale." (Syncora Mot. ¶ 2.) None of the Art Interrogatories, however, inquired about any due diligence or "steps" the City had taken to do anything. (First Set of Interrog. at 8–9.) Instead, the Art Interrogatories asked straightforward questions about the value of "Works of Art," restrictions on their alienability, and the number of annual visitors to DIA. (*See id.*)

13. After Syncora's counsel raised objections to certain of the City's responses, the City's counsel agreed in principle to provide "supplemental responses" to the Art Interrogatories. (Syncora Mot. Ex. 6E, 6/4/14 Email 11:51 a.m. from G. Irwin to W. Arnault.)

14. Syncora's counsel responded to the City's counsel and proposed that "the City will supplement its answers by stating that the City does not know the answer to the questions posed in the applicable interrogatories." (Syncora Mot. Ex. 6E, 6/4/14 Email from W. Arnault to G. Irwin.)

15. The City's counsel responded to that email the same day. The City's counsel clarified that "[i]n many instances we would have partial information (we did have the Christie's report) but we'll acknowledge that the answers to these questions reside with DIA, not the City." (Syncora Mot. Ex. 6E, 6/4/14 2:29 p.m. Email from G. Irwin to S. Hackney.)

16. Syncora's counsel never responded to that email before the City provided its supplemental responses on June 9, 2014, five days later. (Syncora Mot. Ex. 6C, City's Objections And Second Supplemental Reponses To Syncora's First Set Of Interrogatories at 3–14.)

17. The City's supplemental responses to Interrogatories 1 through 6 identified by Bates number the responsive documents in its possession and, exactly as previewed on June 4, acknowledged its "understanding" that the "full[]" responsive information resides with DIA Corp.:

> Documents relating to the City's knowledge as to the subject matter of this request can be found at POA00257802–POA00258006, POA00258033-POA00258245, POA00261726-POA00262345, and POA00262348-POA00262396, which speak for themselves. It is the City's understanding and belief that the information needed to answer this request fully and accurately is in the possession of the DIA [Corp.], if anyone, and directs Objectors to the documents they have subpoenaed from DIA [Corp.].

(*Id.*) The City's supplemental response to Interrogatory 7 similarly stated that it would "produce any responsive records that it can locate" and repeated its acknowledgement that "full" information might be available in DIA Corp.'s

records. (*Id.* at 14.) The City's responses therefore tracked the form and substance of what it indicated it would do in its June 4 email to Syncora. (*Compare id.*, *with* Syncora Mot. Ex. 6E, 6/4/14 2:29 p.m. Email from G. Irwin to S. Hackney.)

18. Syncora's counsel sent an email to the City's counsel on June 10, 2014. (Syncora Mot. Ex. 6F, 6/10/14 Email from S. Hackney to G. Irwin.) Syncora's counsel did not mention the City's June 4 email or offer any explanation as to why Syncora did not respond to it in the five days before receiving the City's supplemental responses. (*Id.*) Rather, Syncora's counsel asserted that the City had violated the parties' "agreement . . . either [to] answer the interrogatories, or say that it did not know the answer." (*Id.*) Syncora's counsel recognized, however, that even his version of the "agreement" provided an "exception [for] the Christie's valuation data." (*Id.*) Syncora's counsel also offered to "craft[]" the City's responses in language Syncora preferred. (*Id.*)

19. The City's counsel responded the next day. (Syncora Mot. Ex. 6F, 6/11/14 Email from G. Irwin to S. Hackney.) The City's counsel explained that "[i]t is not true" that "we ever agreed that the City would state unequivocally that we do not know the answer to any of these questions where we do, in fact, have partial information." (*Id.*) The City "cannot be untruthful in [its] responses," and "that was the very point I was making . . . in my email to you on June 4 – to which I never received any response." (*Id.*) The City's counsel also clarified that the

City never agreed that "the Christie's report was" the only "exception" because, as Syncora was aware, the City also had Michigan Attorney General Opinion 7272, which concludes that the City may not sell any DIA works and therefore "is relevant to saleability." (*Id.*)

20. Syncora's counsel did not respond to this email either. Syncora filed the Motion on June 19, 2014.

## ARGUMENT

21. The Court should deny the Motion because the City's responses to the Art Interrogatories are true and complete as required by the Federal Rules, and the City never agreed to provide false responses of Syncora's choosing.

### A. The City's Responses And Supplemental Responses Are True And Complete

22. Interrogatory responses must be "true, explicit, responsive, complete, and candid." *Weaver v. Mateer and Harbert, P.A.*, 277 F.R.D. 655, 657 (M.D. Fla. 2011) (cited at Syncora Mot. ¶ 16). While "[i]n answering interrogatories, a party is charged with knowledge of what its agents know, or what is in records available to it," a party has no obligation to seek out responsive information that is not available to it or is in a non-party's possession. 8B Wright & Miller § 2177 (3d ed. 2013). Thus, "[i]f a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available." *Id.* And "[a]

- 9 -
13-53846-tjt Doc 5582 Filed 06/25/14 Entered 06/25/14 15:02:12 Page 9 of 18

responding party may give his or her belief or understanding if the information is not based on personal knowledge." *Id.*

23. The City's initial and supplemental responses easily satisfy these requirements. The City's initial responses disclosed its partial knowledge regarding the subject matter of the Art Interrogatories, including the value of works of art and restrictions on their alienability. (Syncora Mot. Ex. 6A, City's Objections And Reponses To Syncora's First Set Of Interrogatories at 10–19.) The City thus stated that "Works of Art are not valued for this purpose," that it "has not established with certainty whether it has legal authority to use any of those objects to satisfy its debts and obligations," and that its "ability to sell, transfer or convey objects . . . may be limited as a matter of law and fact." (*Id.*) The City explained that its knowledge was limited because "DIA is being operated by the DIA Corp.," and directed Syncora to "the documents the DIA Corp. has agreed to produce and/or make available." (*Id.*)

24. Because clarification was requested, the City's supplemental responses identified by Bates numbers its documents relating to the subject matter of the Art Interrogatories, including the Christie's report regarding the value of certain works and Attorney General Opinion 7272 concluding that the City may not sell any DIA works. (Syncora Mot. Ex. 6C, City's Objections And Second Supplemental Reponses To Syncora's First Set Of Interrogatories at 3–13.) The

- 10 -
13-53846-tjt    Doc 5582    Filed 06/25/14    Entered 06/25/14 15:02:12    Page 10 of 18

supplemental responses further reiterated the City's understanding that "full" responsive information was available from DIA Corp. (*Id.*)

25. Syncora's Motion *never* mentions the City's full disclosure of the information in its possession, does not accuse the City of withholding information, and does not dispute that full information is available from DIA Corp. (*See* Syncora Mot. ¶¶ 15–23.) Thus, the City's responses are "true, explicit, responsive, complete, and candid." *Weaver v. Mateer and Harbert, P.A.*, 277 F.R.D. at 657.

26. Syncora attempts to avoid this inescapable conclusion by arguing that the City's responses somehow are not "clear [and] explicit" and "true [and] complete." (Syncora Mot. ¶¶ 17, 20.) But these arguments rest on Syncora's faulty premise that the City's *only* conceivable responses were to "provide the requested answers or state that it does not know." (*Id.* ¶ 21.) Syncora thus wholly ignores—and, in fact, nowhere mentions in its Motion—the *partial* information that the City had in its possession. Indeed, Rule 33 *required* the City to disclose that information as part of its truthful answers, so Syncora's preferred all-or-nothing responses would have been *untruthful*. *See* 8B Wright & Miller § 2177.

27. Likewise, Syncora's argument that the City's responses are not "complete" because they do not fully answer the Art Interrogatories (Syncora Mot. ¶ 18) simply makes no sense. In the first place, this argument is completely irreconcilable with Syncora's oft-repeated refrain that the City "does not have the

information sought in the interrogatories." (*Id.* ¶ 20.) Moreover, as explained, the City was not required to provide *all* information Syncora requested, but only all *available* information, *see* 8B Wright & Miller § 2177—and Syncora nowhere contends that the City withheld information (*see, e.g.*, Syncora Mot. ¶¶ 18, 20).

28. Syncora also asserts that the City's references to DIA Corp.'s documents in its responses were not "sufficient" under Rule 33(d). (Syncora Mot. ¶ 19.) Rule 33(d), however, applies only to a party's invocation of its *own* documents in response to an interrogatory, not its reference to a *non-party's* documents. *See* 8B Wright & Miller § 2178; *see also Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514–15 (W.D. Ky. 2010) (Rule 33(d) applies "only in those instances in which the information sought may be obtained by the examination of *the opposing party's* business records" (emphasis added)) (quoted at Syncora Mot. ¶ 19)). Thus, Rule 33(d) imposed no obligation on the City even to *mention* DIA Corp.'s documents, much less to do Syncora's work and "review[]" those documents for it. (Syncora Mot. ¶ 19.)[2]

---

[2] Tellingly, Syncora does not contend that the City's precise identification of its *own* documents in its supplemental responses violated Rule 33(d). (Syncora Mot. ¶ 19.) Nor could it: "the burden of deriving or ascertaining the answer" from those documents was "substantially the same for either party," and the City produced and specifically identified those documents to Syncora. Fed. R. Civ. P. 33(d).

- 12 -
13-53846-tjt    Doc 5582    Filed 06/25/14    Entered 06/25/14 15:02:12    Page 12 of 18

### B. The City Never Agreed To Provide False Responses Of Syncora's Choosing

29. Syncora alternatively retreats to the untenable position that the City's truthful, complete discovery responses nonetheless violated the parties' "agreement." (Syncora Mot. ¶ 22.) Yet once again, Syncora rests on the false premise that the City was required "either [to] provide the requested answers or [to] admit that it did not know them." (*Id.*) Of course, this self-serving description of the agreement is belied by Syncora's counsel's own email, which at a minimum recognized an "exception" for "the Christie's valuation data." (Syncora Mot. Ex. 6F, 6/10/14 Email from S. Hackney to G. Irwin.) Nowhere does Syncora provide an explanation as to why the City, even in Syncora's view of the world, could refer to partial information in connection with some responses but not others.[3]

30. To be sure, Syncora attempted to dictate to the City the all-or-nothing "choice" between full or no information, and even offered to "craft[]" the responses that Syncora preferred. (Syncora Mot. Ex. 6F, 6/10/14 Email from S. Hackney to G. Irwin.) The City, however, *never* agreed to that false choice because, as explained, *neither* of Syncora's preferred answers would be truthful. Thus, in its June 4 email, the City informed Syncora that it would provide "partial

---

[3] It is unfathomable that Syncora is now seeking to compel a know-nothing response to its Interrogatories regarding restrictions on alienability, for example, when there is no dispute that the City was in possession of Attorney General Opinion 7272 on the subject.

information" in connection with many of the interrogatories, but would also "acknowledge that the answers to those questions reside with" DIA Corp. (Syncora Mot. Ex. 6E, 6/4/14 2:29 p.m. Email from G. Irwin to W. Arnault.)

31. Syncora *never* responded to this email in the five days before receiving the City's supplemental responses. Syncora, moreover, does not even mention the email in the Motion, much less explain its failure to object to the City's intended response. And there is no dispute that the City lived up to its word: its supplemental responses identified the City's relevant documents by Bates number and again directed Syncora to DIA Corp. for more complete information. (Syncora Mot. Ex. 6C, City's Objections And Second Supplemental Reponses To Syncora's First Set Of Interrogatories at 3–13.) That Syncora now regrets the City's position to which it acquiesced provides no basis for rewriting the "agreement" on Syncora's terms, let alone for ordering the City to replace its truthful responses with false statements.

32. Finally, Syncora reveals the true purpose of this motion: to force the City "to concede" that it "has not done the basic diligence necessary to evaluate the value of the collection and any restrictions on its alienability." (Syncora Mot. ¶ 5.) Yet the Art Interrogatories were at best a blunt instrument for inquiring about the City's "diligence" because they did not ask anything about the "steps" the City took to evaluate the reasonableness of the DIA Settlement. (First Set of Interrog.

at 8–9.) Syncora cannot rewrite its interrogatories through motion practice. And, of course, the City has no obligation to "concede" Syncora's false assertion or to abide by an "agreement" to do so that it never made. To the contrary, the City's obligation under the Federal Rules was to provide true and complete responses to the Art Interrogatories—which it did.

WHEREFORE, the Court should deny Syncora's Motion to Compel Additional Supplemental Responses to Syncora's Interrogatories.

Dated: June 25, 2014   Respectfully submitted,

 /s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075

Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

In re

CITY OF DETROIT, MICHIGAN

        Debtor.

Chapter 9

Case No.: 13-53846

Hon. Steven W. Rhodes

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2014, I electronically filed the City's Opposition to Motion to Compel Full and Fair Responses to Syncora's Interrogatories with the Clerk of the Court, which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this case.

Dated:     June 25, 2014           /s/ Heather Lennox
                                                                 Heather Lennox