UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,             .
                              .      Detroit, Michigan
                              .      June 25, 2014
                 Debtor.      .      10:00 a.m.
. . . . . . . . . . . . . . . .

HEARING RE. (#4792) OBJECTION TO CLAIM NUMBER OF CLAIMANT
     FIRST OMNIBUS OBJECTION TO CLAIMS (DUPLICATE CLAIMS)
     FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4794) OBJECTION TO CLAIM NUMBER OF CLAIMANT SECOND
     OMNIBUS OBJECTION TO CLAIMS (AMENDED AND SUPERSEDED)
     FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
(#4834) OBJECTION TO CLAIM NUMBER OF CLAIMANT EDITH WOODBERRY
     CLAIM NO. 2846.  FILED BY DEBTOR IN POSSESSION CITY OF
     DETROIT, MICHIGAN; (#4835) OBJECTION TO CLAIM NUMBER OF
     CLAIMANT CLAIM NO. 3278 BY PHEBE WOODBERRY.  FILED BY
     DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4836)
     OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 3883 BY
       LA JEFF WOODBERRY.  FILED BY DEBTOR IN POSSESSION
       CITY OF DETROIT, MICHIGAN; (#4837) OBJECTION TO CLAIM
     NUMBER OF CLAIMANT CLAIM NO. 2889 BY LAVAN WOODBERRY.
     FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4838) OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO.
     2880 BY HAPPY WOODBERRY.  FILED BY DEBTOR IN POSSESSION
      CITY OF DETROIT, MICHIGAN; (#4839) OBJECTION TO CLAIM
     NUMBER OF CLAIMANT CLAIM NO. 2905 BY CRANSTON WOODBERRY.
     FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4840) OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO.
     3006 BY GARFIELD WOODBERRY.  FILED BY DEBTOR IN POSSESSION
       CITY OF DETROIT, MICHIGAN; (#4841) OBJECTION TO CLAIM
       NUMBER OF CLAIMANT CLAIM NO. 2888 BY CAVEL WOODBERRY.
     FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4842) OBJECTION TO CLAIM NUMBER OF CLAIMANT DR. BRIAN
        GREENE, AS NEXT FRIEND OF INDIA BOND, A MINOR/
        OBJECTION OF THE CITY OF DETROIT, PURSUANT TO
        SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE,
     BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF
       CLAIM NUMBER 1399 FILED BY DR. BRIAN GREENE, AS NEXT
       FRIEND OF INDIA BOND, A MINOR, FILED BY DEBTOR IN
     POSSESSION, CITY OF DETROIT, MICHIGAN; (#4843) OBJECTION
      TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 3271 BY ADAM
     WOODBERRY.  FILED BY DEBTOR IN POSSESSION, CITY OF DETROIT,
      MICHIGAN; (#4844) OBJECTION TO CLAIM NUMBER OF CLAIMANT
     TARIS JACKSON, AS NEXT FRIEND OF ASHLY JACKSON, A MINOR/
        OBJECTION OF THE CITY OF DETROIT, PURSUANT TO SECTIONS
        105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE

3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER 1401
FILED BY TARIS JACKSON, AS NEXT FRIEND OF ASHLY JACKSON,
A MINOR, FILED BY DEBTOR IN POSSESSION, CITY OF
DETROIT, MICHIGAN; (#4854) OBJECTION TO CLAIM NUMBER OF
CLAIMANT ERNEST FLAGG, AS NEXT FRIEND OF JONATHON BOND,
A MINOR/OBJECTION OF THE CITY OF DETROIT, PURSUANT TO
SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER
1404 FILED BY ERNEST FLAGG, AS NEXT FRIEND OF JONATHON
BOND, A MINOR, FILED BY DEBTOR IN POSSESSION, CITY OF
DETROIT, MICHIGAN; (#4855) OBJECTION TO CLAIM NUMBER OF
CLAIMANT CLAIM NO. 3236 BY LUCINDA DARRAH.  FILED BY
DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4857)
OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NOS. 1330
AND 1853 FILED BY RICKIE ALLEN HOLT ON BEHALF OF THE
ABORIGINAL INDIGENOUS PEOPLE.  FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4859) OBJECTION TO CLAIM
NUMBER OF CLAIMANT CLAIM NO. 2902 ON BEHALF OF PENNY
MABIN.  FILED BY DEBTOR IN POSSESSION CITY OF DETROIT,
MICHIGAN; (#4863) OBJECTION TO CLAIM NUMBER OF CLAIMANT
CLAIM NO. 2021 BY EDWARD L. GILDYARD.  FILED BY
DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4872)
OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 458 BY
ALBERT OTTO O'ROURKE.  FILED BY DEBTOR IN POSSESSION CITY
OF DETROIT, MICHIGAN; (#4873) OBJECTION TO CLAIM NUMBER
OF CLAIMANT CLAIM NOS. 1329 AND 1859 BY RICKIE HOLT FILED
BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4881)
OBJECTION TO CLAIM NUMBER OF CLAIMANT/FOURTH OMNIBUS
OBJECTION TO THE CITY OF DETROIT, PURSUANT TO SECTIONS
105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE
3007 AND LOCAL RULE 3007-1, SEEKING THE DISALLOWANCE OF
CERTAIN DUPLICATE CLAIMS FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4886) OBJECTION TO CLAIM
NUMBER OF CLAIMANT HYDE PARK CO-OPERATIVE/OBJECTION
OF THE CITY OF DETROIT, PURSUANT TO SECTIONS 105 AND
502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND
LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER 2651 FILED
BY HYDE PARK CO-OPERATIVE FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4954) OBJECTION TO CLAIM
NUMBER OF CLAIMANT CLAIM NUMBER 3683 FILED BY MACOMB.
(CORRECTED OBJECTION RE. DOCKET 4880) FILED BY DEBTOR IN
POSSESSION CITY OF DETROIT, MICHIGAN; (#4955) OBJECTION TO
CLAIM NUMBER OF CLAIMANT CORRECTED OBJECTION TO CLAIM
NUMBERS 1302 AND 3500 FILED BY INLAND WATERS POLLUTION
CONTROL, INC. (RE. DOCKET 4875) FILED BY DEBTOR IN
POSSESSION, CITY OF DETROIT, MICHIGAN; STATUS HEARING
RE. (#5155) MOTION TO ALLOW CLAIM(S)/NOTICE OF AND
MOTION FOR TEMPORARY ALLOWANCE OF CLAIM OF THE MACOMB
INTERCEPTOR DRAIN DRAINAGE DISTRICT PURSUANT TO RULE
3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR PURPOSES OF ACCEPTING OR REJECTING THE DEBTOR'S
FOURTH AMENDED PLAN OF ADJUSTMENT FILED BY CREDITOR

COUNTY OF MACOMB, MICHIGAN; (STATUS HEARING RE. (#5354)
MOTION FOR CLASS CERTIFICATION OF PROOF OF CLAIMS
#2638, 2651, 2654, 2659, 2676, 2683, 2689 AND 2692 FILED BY
CREDITOR HYDE PARK CO-OPERATIVE, ET AL.
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          Jones Day
                         By:  JEFFREY G. ELLMAN
                         1420 Peachtree Street, N.E., Suite 800
                         Atlanta, GA 30309-3053
                         (404) 581-8309

                         Foley & Lardner, LLP
                         By:  JOHN SIMON
                              TAMAR N. DOLCOURT
                         500 Woodward Avenue, Suite 2700
                         Detroit, MI 48226
                         (313) 234-7161

                         Miller Canfield Paddock & Stone PLC
                         By:  TIMOTHY A. FUSCO
                         150 West Jefferson, Suite 2500
                         Detroit, MI 48226
                         (313) 496-8435

For the Official         Dentons US, LLP
Committee of             By:  CLAUDE D. MONTGOMERY
Retirees:                1221 Avenue of the Americas, 25th Floor
                         New York, NY  10020-1089
                         (212) 632-8390

For County of            Dechert LLP
Macomb, Michigan:        By:  ALLAN BRILLIANT
                         1095 Avenue of the Americas
                         New York, NY 10036
                         (212) 698-3600

For Family of            Norman Yatooma & Associates, PC
Tamara Greene:           By:  HOWARD LEDERMAN
                         1900 S. Telegraph Road
                         Bloomfield Hills, MI 48302
                         (248) 481-2000

APPEARANCES (continued):

For Hyde Park          Thornbladh Legal Group PLLC
Co-Operative:          By:  KURT THORNBLADH
                       7301 Schaefer
                       Dearborn, MI 48126
                       (313) 943-2678

                       Becker & Wasvery, PLLC
                       By:  CARL BECKER
                       2401 W. Big Beaver Road, Ste. 100
                       Troy, MI 48074
                       (248) 649-5660


Court Recorder:        Kristel Trionfi
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  Case Number 13-53846, City of Detroit,

2  Michigan.

3    MR. ELLMAN:  Your Honor, Jeffrey Ellman from Jones

4  Day on behalf of the city.  Are we going to take appearances

5  now for everyone?

6    THE COURT:  Sure.

7    MR. SIMON:  Good morning, your Honor.  John Simon of

8  Foley & Lardner for the city.

9    MS. DOLCOURT:  Good morning, your Honor.  Tamar

10  Dolcourt of Foley & Lardner on behalf of the city.

11    MR. MONTGOMERY:  Good morning, your Honor.  Claude

12  Montgomery, Dentons US, LLP, for the Official Retiree

13  Committee.

14    MR. BRILLIANT:  Good morning, your Honor.  Allan

15  Brilliant and Raechel Badalamenti from Kirk, Huth, Lange &

16  Badalamenti on behalf of the Macomb Interceptor Drain

17  Drainage District.

18    THE COURT:  Thank you, sir.

19    MR. FUSCO:  Good morning, your Honor.  Timothy

20  Fusco, Miller Canfield, on behalf of the city.

21    MR. LEDERMAN:  Good morning, your Honor.  Howard

22  Lederman on behalf of three claimants, Ernest Flagg, Dr.

23  Brian Greene, and Taris Jackson.

24    THE COURT:  Thank you, sir.  Mr. Ellman.

25    MR. ELLMAN:  Yes, your Honor.  Good morning and

1    thanks for hearing us today.  We have on the docket this
2    morning a number of claim objections filed by the city.  Your
3    Honor has entered orders on a number of them as of yesterday
4    for the matters where there was no response, and there's
5    still a handful of matters to address.  I'm happy to deal
6    with them in a particular order if your Honor has something
7    you would like to do.  Otherwise we have folks from --
8              THE COURT:  No.  I will yield the agenda to you,
9    sir.
10             MR. ELLMAN:  Okay.  Great.  Thank you, your Honor.
11   Well, the first thing I guess I will address is two different
12   objections that go together.  It's an objection to Claim
13   Number 2651 by Hyde Park Co-Operative, and that's Docket
14   4886.  And then there was a related objection, which was the
15   fourth omnibus objection to certain claims, duplicate claims.
16   That's Docket 4881, and that dealt with another seven claims
17   filed by related entities, related in the sense that all the
18   claims are based on an underlying lawsuit for which a class
19   is alleged, a putative class relating to alleged overcharging
20   for building inspection fees.  I'm sure the Court has looked
21   at the papers.  We've talked to counsel just before the
22   hearing, and I think we have a consensus on the best way to
23   address this.  We have effectively eight claims, and I don't
24   think there's any real dispute that they are duplicative in
25   the sense that they're based on the same lawsuit.  They're

1    all filed for $5 million.  They all allege an individual

2    claim, but really they also allege a class claim.  And we

3    believe that seven of those claims should be disallowed.  I

4    do not think that's being opposed today.  We also have the

5    final claim, which is the Hyde Park claim, which we objected

6    to as not having been properly authorized to be filed in this

7    Court as a class claim in advance of its filing under the

8    rules, and since we filed the objection, the Hyde Park

9    parties have filed, in fact, a motion for class

10   certification, which is not pending -- not being heard today.

11   It is on the docket.  Responses, I think, are due next week.

12   So what we had proposed is to put off that claim objection

13   until the Court can determine that motion because it seems

14   inefficient just to have the Court disallow the claim.  If

15   you were inclined to grant certification, they'd have to

16   refile it.  It doesn't seem very efficient.  We also had said

17   in our papers, which we think is appropriate, if class

18   certification is denied, that the individual claimants who

19   have their duplicate claims disallowed as an improper

20   duplicate class claim should have the right to file

21   individual claims.  They did file a timely claim even though

22   it was -- they included their individual claim if they have

23   one with their class claim, so they're clearly duplicative of

24   the class claim, but if a class is denied certification, it

25   seems appropriate to give them some period of time -- we

1  suggested 30 days -- to let them refile an individual claim,
2  but that is a future matter that can be addressed in
3  conjunction with the certification motion.  My understanding
4  is counsel for the Hyde Park entities has agreed with that,
5  and we would ask the Court to --
6          THE COURT:  Okay.
7          MR. ELLMAN:  -- grant that relief.
8          MR. FUSCO:  Your Honor, just for the record, Miller
9  Canfield is defending the class certification motion.  Our
10  response is due next week, and we do intend to oppose the
11  motion for class certification.
12          THE COURT:  All right.  Thank you, sir.
13          MR. THORNBLADH:  Your Honor, Kurt Thornbladh on
14  behalf of Hyde Park.  Good to see you again, Judge Rhodes.
15  With me is Carl Becker, who's also co-counsel with me on
16  these matters.  And this correctly states our agreement of
17  this morning.
18          THE COURT:  All right.  Let me ask you to actually
19  prepare a paper which memorializes your agreement and file
20  that, please.  I'd like to actually go ahead and set a date
21  for the hearing on the class certification motion.  Is that
22  okay?
23          MR. THORNBLADH:  That would be fine, your Honor,
24  thank you, if that's fine with my colleagues.
25          THE COURT:  Chris, what would you propose?  Give us

1   one second, please.  Subject to finding a courtroom we can

2   use, how about July 21st at 10 a.m.?

3                 MR. THORNBLADH:  That's acceptable, your Honor.

4                 THE COURT:  Mr. Fusco.

5                 MR. FUSCO:  I believe that's fine, your Honor.

6                 THE COURT:  All right.  I doubt that got on the

7   microphone, but we'll note for the record that Mr. Fusco

8   asserted that he thought that that was fine.  Okay.  So if

9   there are problems with that date, let us know, and we'll

10  adjust it, but in the meantime, let's count on that date.

11                MR. FUSCO:  And just for the record, we're going to

12  maintain the same response time, so next --

13                THE COURT:  Yes.

14                MR. FUSCO:  -- week we'll file our papers.

15                THE COURT:  Yes.

16                MR. FUSCO:  All right.  Thank you, your Honor.

17                MR. ELLMAN:  Thank you, your Honor.  The next three

18  items that I would address, again, are related items,

19  objections to claims by Dr. Brian Greene, Taris Jackson, and

20  Ernest Flagg, and those are Docket Numbers 4842, 4844, and

21  4854.  These are all matters that they all seek about $155

22  million as damage claim alleging denial of and conspiracy to

23  deny access to courts in connection with homicide of Tamara

24  Greene.  These matters had been adjudicated.  There was an

25  order of dismissal issued by Judge Rosen.  There was also an

1   order from the Sixth Circuit affirming that dismissal and

2   then a motion to deny a rehearing at the Sixth Circuit on

3   June 18th, 2013, so we filed this objection, your Honor, in

4   light of the fact that this claim had been adjudicated and

5   denied, and, therefore, the bankruptcy claim should be

6   disallowed.  It was pointed out to us in the response that,

7   in fact, as a result of the bankruptcy filing tolling the

8   statutory deadlines, that a cert petition could still be

9   filed and that the plaintiffs intended to do so, so you might

10  recall, your Honor, under our ADR procedures we have the

11  right -- the city has the right to file a stay modification

12  notice for these types of claims and lift the stay, which we

13  have -- in response to the papers filed, we did do that last

14  week, so the stay has been lifted to allow, if they're so

15  inclined, the plaintiffs to file their cert petition, and we

16  suggested that this matter be put off until October 1st at

17  our next claims hearing to have a status on where that cert

18  petition stands, has it been filed, has it been dealt with in

19  any way.  Counsel here for the plaintiffs indicates that

20  that's acceptable to them, and we believe that would be

21  appropriate.

22          THE COURT:  Sir.

23          MR. LEDERMAN:  Yes.  Your Honor, the facts are as

24  counsel indicated them.  I will say that our clients have

25  given us the go-ahead to petition for cert.  And when we

1   heard of the bankruptcy on or about July 18th of last year,

2   we were working on the petition for cert, so right now our

3   intention is to go ahead and petition for cert.

4           THE COURT:  Okay.  The Court will adjourn this

5   matter until October 1st.

6           MR. LEDERMAN:  October 1st?  Thank you, your Honor.

7           THE COURT:  You're welcome.

8           MR. ELLMAN:  And, your Honor, the last matter that I

9   am going to be handling today is the third omnibus objection

10  to employee claims duplicative of certain union claims, and

11  this is a matter -- I think it covered about 50 claims, and

12  your Honor has entered an order on all but one of the claims

13  where there was no response.  We did have a response from

14  Antonio Ratliff.  His response is very brief.  It basically

15  says that he filed one claim that was a public claim or one

16  of the claims at issue is a public claim, maybe the union

17  claim, and one was a private or personal claim.  I'm not sure

18  there's a legal distinction there.  Our view is that the

19  types of -- excuse me -- the types of matters raised in Mr.

20  Ratliff's claim are all covered by the very broad claim of

21  AFSCME.  Mr. Ratliff is an AFSCME member, based on the city's

22  books and records, and the AFSCME claim, which is Claim 2958,

23  is a very broad claim covering all of its members and

24  including virtually every type of breach of contract or

25  violation of law type of claim.  We have separately objected

1  to that claim. We've also adjourned that objection. And, in

2  addition, we've separately worked out with AFSCME a voting

3  amount for their claim, which your Honor signed also this

4  week, so that claim will vote, and they will have a vote on

5  behalf of their members, but we believe that Mr. Ratliff's

6  claim on its face is duplicative of the claim filed on his

7  behalf by the union and should be disallowed.

8         THE COURT: Thank you. Is Mr. Ratliff here or

9  anyone representing him? All right. The Court concludes

10 that the record justifies sustaining the city's objection to

11 this claim on the grounds that it is duplicative, so you may

12 submit an order.

13        MR. ELLMAN: We will do that, your Honor. Thank

14 you. And the lawyers from Foley will handle the remaining

15 matters.

16        THE COURT: All right.

17        MR. SIMON: Good morning, your Honor. John Simon of

18 Foley & Lardner for the city. We have four objections to

19 claims, your Honor, that were not resolved. We filed a

20 variety of objections that we either resolved or which were

21 resolved by the Court's orders entered yesterday or this

22 morning. Those four remaining objections -- and I guess

23 there's actually more than four claims, but there are four

24 buckets of objections. There's Claim 458 as to Mr. Albert

25 O'Rourke, Claim 3236 filed by Ms. Lucinda Darrah, and then

1 there are a variety of claim numbers, ten claims filed by
2 what we call the Woodberry claimants on account of a
3 condemnation proceeding or an eminent domain proceeding.  And
4 then there is the Macomb Interceptor claim and the related
5 3018 motion that was filed by Macomb Interceptor.  If I could
6 address them in that order, O'Rourke --

7          THE COURT:  Sure.

8          MR. SIMON:  -- Darrah -- thank you.  Your Honor,
9 with respect to Mr. O'Rourke's claim, we objected to the
10 claim.  The claim lists unspecified governmental abuses in
11 quotation marks on the initial claim.  We filed the
12 objection.  It appears -- and I know you've read the
13 documents.  It appears that the claim is based on the city
14 allegedly destroying some kind of nuclear secrets.  There's
15 really no valid basis for the claim that we can identify from
16 the documents.  There are rambling handwritten response to
17 our claim objection that was filed in support, and it calls
18 in a District Court litigation from California with rambling
19 text that talks about everything from, you know, the JFK
20 documents to some kind of nuclear documents and basically
21 says the city is somehow responsible for the cost of one
22 trillion dollars, which would be the cost of constructing
23 nuclear weapons based on the nuclear secrets.  It's a
24 frivolous claim, your Honor.  It doesn't meet the standards
25 of 3001(f).  We do not know of any basis for this claim at

1  the city, and so we would request that it is expunged.

2        I should point out we did receive a handwritten

3  letter from Mr. O'Rourke yesterday in which he let us know

4  that he cannot attend the hearing personally, but he is --

5  hopefully we are amenable to simply let your Honor make a

6  ruling.  We are happy to have you make a ruling.  There's no

7  valid basis for the claim, and it should be disallowed.

8        THE COURT:  Is Mr. O'Rourke here or anyone on his

9  behalf?  No response.  The Court concludes that the record

10  does justify sustaining the city's objection to the claim,

11  and you may submit an order.

12        MR. SIMON:  Thank you.  Your Honor, moving on to

13  Claim Number 3236 filed by Ms. Lucinda Darrah, this claim --

14  in this claim the claimant alleged she was owed $150 million

15  to purchase garbage trucks so that the citizens of Detroit

16  could manage their own garbage services.  There were no

17  attachments to the proof of claim.  There's no basis

18  presented or documents provided or any kind of evidence that

19  connects why the city would be liable to pay Ms. Darrah for

20  the $150 million to purchase garbage trucks.  In response to

21  our claim objection, Ms. Darrah filed another document in

22  response that specified and requested an additional $450

23  million for unspecified damages alleged to arise from her

24  vicinity to an incinerator.  There's no basis for either of

25  the claims, the initial claim.  There's no basis provided.

1   There was no response to our objection on that point.  And
2   her further reply basically submits a new claim, which is
3   also baseless, and so we would ask the Court to deny those
4   claims and disallow them.

5          THE COURT:  Thank you.  Is Ms. Darrah here or anyone
6   representing her?  We do have a response.  Will you yield the
7   lectern, please?

8          MS. DARRAH:  Your Honor, I first filed for control
9   of the garbage because I felt like our health wasn't being
10  protected, mine and everybody else's, and so I thought if we
11  controlled the garbage and the recycling and reuse, then
12  plastics wouldn't go to the landfill -- would go to the
13  landfill that weren't recycled and not be put in the
14  incinerator.  And I have a book that I'd be glad to give the
15  Court.  It's Waste Incineration and Public Health published
16  by the National Research Council in 2000.  This is what --
17  these are all scientists that are really -- these are the
18  best scientists we have in the country, and they put this
19  book out in 2000 talking about the polyvinyl chloride breaks
20  down when you incinerate it.  When it cools off, it creates
21  dioxins and furans, which are the most poisonous carcinogens
22  I think that we have in the waste stream, even more so than
23  lead and mercury.  So they've been burning this.  In fact, in
24  2010 I think the city signed another contract guaranteeing
25  that they would burn a certain amount of trash, so that

1  contract should be broken under the bankruptcy if you can

2  have Kevyn Orr go in there and break that contract because

3  that's the way they forced us to keep burning our garbage.

4  As long as we have that kind of incinerator running, then

5  they won't recycle in a true meaningful way, and we'll

6  continue to have dioxins in our air, food, water, land.  And

7  this book, particularly in the last pages, where they've

8  done -- if they don't run an incinerator just right in the

9  optimal steady state condition like in start-up and shutdown

10 and also if they have a bad burn cycle, it just multiplies

11 exponentially how many dioxins and furans are put into the

12 air.  And this is right by the medical center.  It was a

13 mistake that this was ever put in there.  I protested with

14 Greenpeace.  Actually, I was on that site as an electrician

15 apprentice only for five days.  They laid me off after I

16 started trying to get people to come to the demonstrations

17 after work, but they -- this has been a -- when I went back

18 out there the second time as an electrician, I was -- I

19 turned out by then -- they were putting scrubbers on, but

20 scrubbers don't take dioxin and furans out.  The only way to

21 take them out, according to Saulius Simoliunas, is to cool

22 the gases after they come out and try and trap them in a

23 screen, and then you got to take that screen to a toxic

24 landfill.  The screen will catch the dioxin and furans.  When

25 you recycle, you melt it.  This is what he's telling me, and

1    it doesn't go down to -- when it melts, it doesn't release

2    the chlorines which cause the -- you know, the furans and the

3    dioxins to form, and they don't break down.  I don't think

4    that you get them out of your body, and, in fact, years ago

5    Greenpeace had a teach-in, and they said that these would

6    simulate the sex hormones and that they saw an increase in

7    breast cancer and in prostate cancer, but what I saw as a

8    swim leader and lifeguard, these young girls at age ten were

9    developing big breasts much earlier than I thought was normal

10   for puberty, so -- and we see a lot of people overweight now,

11   and maybe that's one of the reasons because it does --

12   according to this book, it gets in the food, and that's one

13   of the main ways that people get affected by it.

14           THE COURT:  Ma'am, I have two questions.

15           MS. DARRAH:  So I thought --

16           THE COURT:  I have two questions.

17           MS. DARRAH:  -- my health is worth and everybody's

18   health is worth -- you can't measure it.  My mother was the

19   daughter of a doctor, and she used to teach us that health is

20   our most important wealth, and there's --

21           THE COURT:  Ma'am --

22           MS. DARRAH:  If you don't have your health --

23           THE COURT:  Ma'am --

24           MS. DARRAH:  -- it doesn't matter how much wealth

25   you got.  You won't be happy.  Sorry.

1       THE COURT:  I have to ask you two questions.  Okay?

2       MS. DARRAH:  Okay.  Yeah.

3       THE COURT:  The city argues that you filed this

4   claim regarding the incinerator too late, after the

5   deadline --

6       MS. DARRAH:  Yeah.

7       THE COURT:  -- set by the Court.

8       MS. DARRAH:  Well, I think they're related, you

9   know.  In other words, the reason I started out with the

10  recycling and the garbage control is that if the residents in

11  the district -- we have seven districts now.  If they were in

12  control of the project, they would try harder to get the

13  plastic out of the waste stream, but when I saw that that --

14  that wasn't really something that is illegal to make them

15  recycle, but what is illegal is for them to violate the Clean

16  Air Act and jeopardize my health and everybody else's health,

17  so that's why I amended it to include that because I

18  didn't -- and, by the way, I spent yesterday running around

19  to the Hamtramck recycle.  I already talked to the director,

20  Brundidge.  I went to the Southfield yard where Advanced

21  Disposal is, and I didn't make it out to Sterling Heights.

22  That's where Rizzo takes their trucks every day.  That's

23  their headquarters, but -- and the old recycle place burnt

24  down.  The thing that bothered me is Anna Holden sent me a

25  flier that she got off their web -- both of the websites,

1  Rizzo and Advanced Disposal, and I meant to bring it.  I can

2  run home and bring it down to you as soon as I finish here

3  and give it to you.  I meant -- it was -- and I didn't see it

4  this time.  I don't know how -- but she got it off the main

5  websites, both of them.  It says no plastic shopping bags in

6  the recycle bucket that we're supposed to pay for, so to me

7  that means they really aren't in it to try and get all the

8  plastic out to protect our health.  They're in it just

9  because they wanted the contract with the City of Detroit,

10  and this looks good that we've got this recycling that if

11  they don't educate people, people won't even use it anyway,

12  you know, because they have to pay $25 for it, and they don't

13  know about the bad effects of plastic in the waste stream.

14          THE COURT:  Let me ask you my second question.

15          MS. DARRAH:  Okay.  Yeah.

16          THE COURT:  You claim $450 million for compensation

17  for the harm you have suffered.

18          MS. DARRAH:  Right.

19          THE COURT:  What evidence do you have of that?

20          MS. DARRAH:  Well, I was trying to put a value on my

21  life, and they did spend about that much when they first

22  built the incinerator, and then they -- I don't know how much

23  more they spent when they were forced to put scrubbers on it.

24  They didn't even put those on till they were forced to, but

25  those scrubbers won't take dioxins out.

1          THE COURT:  All right.

2          MS. DARRAH:  So I would be happy with whatever you

3    could grant, but the main thing is to protect our health, and

4    the city is not doing it.  They're the ones -- and I tried to

5    get answers yesterday.  It's interesting.  You don't get

6    consistent answers going from one place to the other.

7          THE COURT:  All right.  Ma'am, in the circumstances,

8    I am going to sustain the city's objection to your claim.

9    Your amended claim is filed too late, and it does not have

10   sufficient evidence to support it, and neither does the

11   original claim, so in the circumstances I'm going to disallow

12   your claim.

13         MS. DARRAH:  Well, what would it take to support it?

14         THE COURT:  Well, I can't give you that advice.

15   That's something you'd need to ask a lawyer.  All I can tell

16   you is that what you have submitted --

17         MS. DARRAH:  Well, yeah.  The original claim --

18         THE COURT:  Let me just finish my sentence.

19         MS. DARRAH:  I have here what they spent.

20         THE COURT:  What I can tell you is that what you

21   have submitted is not sufficient.

22         MS. DARRAH:  They spent about that much with these

23   two contracts for the Rizzo, and that's approximately what

24   they spent for one year.

25         THE COURT:  All right.

1          MS. DARRAH:  No.  That's a five-year contract.  I'm

2     sorry.  So that's approximately what they spent, but what I

3     wanted was that we have some way that the citizens can become

4     involved in their own survival, and right now we don't have

5     that.

6          THE COURT:  Well, I appreciate that, but that's all

7     we can do here today.  That's all we can do here today.

8          MS. DARRAH:  That's not enough.

9          THE COURT:  That's all we can do here today.

10          MS. DARRAH:  All right.  Okay.

11          THE COURT:  Please take your seat now, ma'am.

12          MS. DARRAH:  It goes out in the suburbs, too, if you

13     live out there.  It goes everywhere, Great Lakes, everything.

14          THE COURT:  Mr. Simon.

15          MR. SIMON:  Yes, your Honor.  Moving on to the next

16     set of objections, the Woodberry claimants' objections is

17     Claim Numbers 3278, 3271, 3006, 2905, 2902, 2889, 2888, 2883,

18     2880, and 2846.  Those are ten claims filed for a total of

19     $12 million by members of the Woodberry family.  They filed

20     these claims initially, your Honor, just listing eminent

21     domain as a reason on one page of the proof of claim without

22     any backup saying the city took -- quote, "The city took real

23     property without paying just compensation."  We objected to

24     the claims because we couldn't tell at all anything about

25     them.  We couldn't tell what real property this was or what

1    the situation was.

2          And the Woodberrys did file responses.  The

3    responses identified the property -- the subject property as

4    2457 Beaubien.  We did some digging on the city's end, your

5    Honor, and determined that property was the subject of a

6    condemnation proceeding that started back in 2005.  The

7    claimants in this case were parties to that litigation over

8    condemnation, and in April 2009 after years of that

9    litigation, the Wayne County Circuit Court entered an order

10   confirming that title to the property had vested in the city,

11   and they ordered payment of $240,000, which the city paid,

12   and so the claimants had totally omitted that from their

13   claim, but we did determine what -- you know, some background

14   on it.  There is no basis for any further claims because the

15   April 2009 order also says that it is with prejudice to any

16   other claims against the city with respect to the property.

17   It says, quote, "This judgment shall be with prejudice to any

18   further assertion of claims by defendants against the city

19   arising directly or indirectly in whole or in part from the

20   taking of the subject property."  I would note that we had an

21   acknowledgement which we filed as well by Ms. Edith

22   Woodberry, who filed the biggest one of the claims for $3

23   million, that acknowledged that she received full payment.

24   So, your Honor, we would object to this claim.  It's baseless

25   in that there's no basis for any further liability or claim

1  against the city as evidenced by the April order from 2009.

2          THE COURT:  Thank you.  Are any members of the

3  Woodberry family here or anyone representing them?

4          MR. CRANSTON WOODBERRY:  Good morning, your Honor.

5  I'm Cranston Woodberry.

6          MS. EDITH WOODBERRY:  Good morning.  I'm Edith

7  Woodberry.

8          MR. LA JEFF WOODBERRY:  Excuse me, your Honor.  Good

9  morning, your Honor.  I'm LA Jeff Woodberry.

10          THE COURT:  All right.  So the city contends that

11  you already got paid for this property through the

12  condemnation proceeding in court.

13          MS. EDITH WOODBERRY:  Your Honor, I had received

14  from the city by express mail I think the day before

15  yesterday his statements, and I filed a -- prepared a

16  response, but I don't know how to give it to the city, Judge.

17          THE COURT:  I'll have a --

18          MS. EDITH WOODBERRY:  Can you give a copy to him or

19  the -- but the answer is that --

20          THE COURT:  If you want me to, I'll have a look at

21  it, ma'am.

22          MS. EDITH WOODBERRY:  I would appreciate it.

23          THE COURT:  All right.

24          MS. EDITH WOODBERRY:  And there's one for the city's

25  attorney.

1    THE COURT:  Mr. Simon, Ms. Woodberry has one for

2  you, too.

3        MR. SIMON:  Thank you, your Honor.

4        MS. EDITH WOODBERRY:  I wasn't seeking oral argument

5  because I know I'm not a -- I'm in here in pro per.  I'm not

6  any way capable of matching what was said here today, but I

7  will say that the purpose of me filing that claim was to put

8  Bankruptcy Court on notice that we had an action in a lower

9  court, in the state court, and that I wanted -- I don't know

10  the rules of the Bankruptcy Court, so, therefore, I didn't

11  want to have this rejected in the state court because the

12  action should have been brought to you.  My suggestion or

13  hope would be that you would dismiss or accept, receive for

14  Bankruptcy Court's information the fact that we do have

15  something and maybe let it go back to state court or dismiss

16  it for lack of --

17        THE COURT:  What is there left for the state court

18  to do?

19        MS. EDITH WOODBERRY:  Well, now, the state court in

20  its -- the state court has not issued a final order, so,

21  therefore, we cannot appeal the --

22        MR. CRANSTON WOODBERRY:  The judgment.

23        MS. EDITH WOODBERRY:  -- the judgment.  We can't

24  appeal the judgment because she has not issued a final -- she

25  says that that judgment is not a final order.  If you look at

1  the bottom of plaintiff's -- the city's --

2        MR. CRANSTON WOODBERRY:  Exhibit 1, the April 28th,

3  2009, judgment.

4        THE COURT:  Okay.

5        MS. EDITH WOODBERRY:  It's a citizen's --

6        THE COURT:  I will look at that.  Give me one

7  second, please.

8        MS. EDITH WOODBERRY:  Okay.  Well, actually, I'm not

9  capable of maybe presenting an oral argument against what he

10  was saying here because I couldn't hear him in the back, and

11  what he wrote, I responded to that.

12        THE COURT:  I do see the language you are referring

13  to.  It says, "Pursuant to Rule 2.602(a)(3), this judgment

14  does not resolve the last of any claims, and it does not

15  close the case."  That's the language you're talking about?

16        MS. EDITH WOODBERRY:  Yes.

17        THE COURT:  Okay.  Let me ask Mr. Simon about that.

18  Mr. Simon.  Ms. Woodberry, let me just ask you to step a

19  little bit to the side so Mr. Simon can use the microphone

20  there.  Thank you very much.

21        MR. SIMON:  Your Honor, actually the city law

22  department is right now looking at the status of that case.

23  I had interpreted that language to be separate from the

24  condemnation and separate from any payment related to the

25  eminent domain, which is clearly set forth in the order as

1   being exclusively handled, and the order was entered on a

2   final basis. It calls for the resolution of all the claims

3   by the payment of $240,000, and so I don't think that the --

4           THE COURT: You don't know what's left to be done?

5           MR. SIMON: I don't know of anything left to be

6   done.

7           MR. CRANSTON WOODBERRY: Well, your Honor, the

8   problem is --

9           THE COURT: No. One second. So you don't know that

10   there isn't anything left to be done?

11           MR. SIMON: I cannot say that, your Honor. Based on

12   that language, I have a -- yes. That's correct.

13           THE COURT: I'm sorry to have interrupted you, sir.

14   What were you going to say?

15           MR. CRANSTON WOODBERRY: Well, he just answered the

16   question. We do have an appeal of right.

17           THE COURT: Stand right by that microphone.

18           MR. CRANSTON WOODBERRY: I'm sorry. We do have an

19   appeal of right, and the other issue is that there were

20   certain people who had an interest in that property that were

21   not brought into the action by the City of Detroit, and --

22           THE COURT: And who were those people?

23           MR. CRANSTON WOODBERRY: This is the one person

24   right there, Jeff Woodberry.

25           MR. LA JEFF WOODBERRY: LA Jeff Woodberry. And I

1  never was brought into the action.

2          THE COURT:  Um-hmm.

3          MR. LA JEFF WOODBERRY:  (Inaudible) for the

4  property.

5          THE COURT:  Well, Mr. Simon, in the circumstances,

6  subject to further development of our record here, I think I

7  have to overrule your objection and abstain from any further

8  action by this Court in the matter to allow the state court

9  to do whatever is left to be done in the case.  And if there

10  is ever a final judgment in the sense that all appeals have

11  been exhausted, then we can sustain the objection assuming

12  the judgment is in the city's favor.

13          MR. SIMON:  Your Honor, there's been no appeal.  The

14  order was entered in 2009.

15          THE COURT:  Right, but there's a question about

16  whether this is a final appealable judgment because it says

17  the judgment does not resolve the last of any claims, and it

18  doesn't close the case.

19          MR. SIMON:  And, your Honor, would it be possible to

20  set a briefing schedule on substantive response to the claim

21  objection, you know, based on --

22          THE COURT:  No.  I'm going to abstain --

23          MR. SIMON:  Okay.

24          THE COURT:  -- and allow the state court to make a

25  final determination on the issues.

1          MR. SIMON:  Thank you, your Honor.

2          THE COURT:  I can't tell, based on this record,

3    what's left let alone decide it.  All right.  I'll prepare an

4    appropriate order.  So you should go back to state court and

5    try to work with the judge there on resolving whatever is

6    left to be resolved so you can get on with your appeal.

7          MR. CRANSTON WOODBERRY:  Thank you, your Honor.

8          THE COURT:  Do you have an attorney in that case?

9          MR. CRANSTON WOODBERRY:  I was appearing as the

10   attorney in that case, your Honor, yes.

11         THE COURT:  Okay.  All right.

12         MR. SIMON:  Your Honor, if I may, just one further

13   note, is it -- the claim really should be contingent, though,

14   at best, and unliquidated rather than have a certain dollar

15   figure.

16         THE COURT:  Yes.

17         MR. SIMON:  Okay.

18         THE COURT:  At this point it's not fixed at all.

19         MR. SIMON:  Exactly.  I just wanted to be clear

20   about that.  Thank you.

21         THE COURT:  All right.  I'll make sure the order

22   says that.

23         MR. SIMON:  And, your Honor, the final matters that

24   we have, your Honor, are in respect of Macomb Interceptor

25   Drain District.  This is probably the thorniest area.  We are

1   in something of a spot in that the claim was filed by Macomb
2   Interceptor on May 5th, and our deadline to object to claims
3   in connection with the plan and to have the whole plan
4   process in respect of claims where we couldn't validate where
5   they're significant and could impact voting, we had to
6   address that and filed the objections on May 15th, so we have
7   not had time really to dig into the substance other than to
8   note that it's a huge claim.  We think we have good arguments
9   against the claim, including res judicata, for the reasons we
10  stated in our papers.  And, you know, we think that there's
11  somewhat -- there's some gamesmanship going on with the
12  timing, but we are in a situation where we just can't allow a
13  claim in the amount of $26 million to be voted under the plan
14  without any demonstration of the evidence and certainly not
15  for distribution purposes either, so both those issues kind
16  of tie in together, and we object to the claim because we
17  can't see the validity of it.
18          THE COURT:  Well, in the past what I have done in
19  these situations is to estimate the claim for voting
20  purposes, and the procedure that I have used in the past and
21  that I request your input on is to allow counsel to file a
22  brief in support of whatever estimation amount they assert
23  supported by whatever affidavits and documents they wish the
24  Court to consider in support of that estimation amount and
25  then to give each side a specific and limited amount of time

1    to argue their estimation amount, and then I choose a number.

2            MR. SIMON:  That makes sense to me, your Honor, and

3    I believe we talked about a process along those lines leading

4    up to the hearing.

5            THE COURT:  And the timing in all of that is subject

6    to your input as well.

7            MR. BRILLIANT:  Yes.  Thank you, your Honor.  Allan

8    Brilliant from Dechert on behalf of Macomb Interceptor.  I'm

9    joined by Raechel Badalamenti, whose appearance I had put on

10   the record earlier --

11           THE COURT:  Yes.

12           MR. BRILLIANT:  -- who is the counsel who's been

13   handling this in state court, your Honor.  We had reached out

14   after we filed the motion and received the objection from the

15   city about a process, and we came up with something very

16   similar to what your Honor had suggested with one caveat,

17   which is that we had asked for -- that there be some limited

18   amount of discovery and the opportunity to take a couple of

19   depositions and get a small amount of documents which we

20   could attach to the -- you know, to our brief, and then our

21   expectation is that we would attach our declarations and any

22   deposition designations that we felt were relevant and that

23   that could be the basis of the -- you know, of the hearing.

24   The one thing -- and Mr. Simon alluded to it -- is we really

25   don't know at this point what their objection is, so we are a

1 little bit concerned that we could end up in a situation
2 where we prove up our case based on the elements of our
3 claims and they come up with something as a defense that
4 we're not aware of, so either we would ask that we have the
5 opportunity to file a reply brief or, alternatively, that at
6 some point before we have to file our papers they tell us
7 what it is --
8         THE COURT:  Well, I have to be considerate of the
9 city's position here given how long it took your client to
10 file this proof of claim and the time pressure that we are
11 under to fix an estimation, and this is just an estimation
12 for voting purposes, not for distribution purposes.
13         MR. BRILLIANT:  We understand, your Honor.  I think
14 one thing just to make the record clear on the date, we filed
15 the complaint before the bankruptcy, so it's not as if they
16 weren't aware of the fact that we had a complaint, that there
17 was a state court proceeding that existed before the
18 bankruptcy filing, and then we filed the proof of claim
19 within the intergovernmental, you know -- you know -- you
20 know, bar date, so it's not as if it's a late proof of claim.
21 And there was a proceeding in front of Judge Cleland, and the
22 city was represented in all these matters by Miller Canfield,
23 so it's not as if the city wasn't aware of the claim or the
24 facts leading up to the claim, but we do recognize that there
25 are -- you know, that this is time-sensitive material.

1        THE COURT:  Well, but you could have filed the proof

2    of claim on July 19th, too.

3        MR. BRILLIANT:  July -- the last possible date,

4    2014, you're talking -- or you're talking about the first

5    possible --

6        THE COURT:  July 19th, 2013, the day after they

7    filed the bankruptcy, you could have filed a proof of claim.

8    All right.  Do you have a proposed schedule in mind?  Have

9    you gotten so far as to discuss that?

10        MR. BRILLIANT:  We have, your Honor.  You know,

11    the -- you know, the city had requested that it be the week

12    of the 14th.  You know, we would --

13        THE COURT:  That what would be the week of the 14th?

14        MR. BRILLIANT:  You know, the -- you know, the

15    hearing.

16        THE COURT:  All right.

17        MR. BRILLIANT:  And we --

18        THE COURT:  So start there and work backwards.

19        MR. BRILLIANT:  And we had proposed that it be, you

20    know, the -- you know, the following week, the week of the

21    21st, or, you know -- because we just think that your Honor

22    has a busy calendar.  We all -- you know, you have hearings

23    on Monday, Tuesday, and Wednesday, I believe, in connection

24    with the case, and, you know, we have other --

25        THE COURT:  Thursday.

1          MR. BRILLIANT:  We have other issues as well, so we
2    thought the following week would work better and then work
3    backwards from there, your Honor, so our sense is if we get a
4    reply brief or some statement from them as to what the claim
5    is, that would --
6          THE COURT:  Let's start with the hearing date.
7          MR. BRILLIANT:  Yes, your Honor.
8          THE COURT:  It would be very hard for me to do it
9    before Monday, July 21st.  Is that okay?
10          MR. ELLMAN:  If I might, your Honor, Mr. Simon asked
11   that I address this issue.  With your Honor's scheduling of
12   the plan, various plan deadlines, our voting results are due
13   on the 21st, and so our strong preference would be to have a
14   number for this claim for voting purposes before we have to
15   certify the voting results, so if at all possible our
16   suggestion would be, obviously subject to your calendar, to
17   have an answer by the 18th, which is the last business day
18   before the 21st.  Voting is due on the 11th.  Ideally it
19   would be even better to have it before then, but I think they
20   can vote their claim subject to your Honor's decision.  If we
21   can't have a hearing before the 11th, I do think that
22   following week it would be, in the city's view, important to
23   have the final voting results, have a number to put in that
24   tabulation affidavit on the 21st.  Obviously it's a very
25   tight time frame.  I assume the hearing would be relatively

1  truncated and short.  A lot of it would be done on the
2  papers.  But obviously that's subject to your calendar, which
3  I'm sure is crowded.  I know there's several things that week
4  of the 14th already, legal arguments of the individual
5  claimants, et cetera, so -- but if it worked in that week, it
6  would be a preference.
7          THE COURT:  Well, all right.  I do have a brief
8  opening at two o'clock on the 17th.
9          MR. BRILLIANT:  Can I respond on the timing, your
10  Honor, before your Honor rules on the date?
11          THE COURT:  Um-hmm.
12          MR. BRILLIANT:  You know, it seems to me that, you
13  know, it's just -- I'm just going to state the obvious.
14  There's one of three possibilities that'll occur here.
15  Either the voting will be such no matter what amount we vote
16  that the class approves or the voting will be no matter what
17  we vote that the class rejects or the other possibility is
18  that it will either be approved or not approved.  The class
19  will either, you know, accept or not accept based on the
20  amount that we vote.  On the -- they have to file their paper
21  on the 21st.  To the extent that it matters, that if it falls
22  into the third category, they could just put a footnote and
23  then just say, you know -- you know, Macomb has voted, you
24  know, the amount that -- you know, purports to have voted the
25  amount that it thinks it's owed, $26 million, and based upon,

1  you know, the Court's ruling, it may change the results, and

2  I don't see, given that the confirmation hearing isn't

3  starting until, you know, a month later, that it really

4  matters whether the hearing be on the 21st or the 17th or the

5  22nd or whatever date works best for your Honor, but my sense

6  is that a little more time, you know, will make for better

7  submissions to your Honor, give us the opportunity

8  potentially to file either a reply brief because I know

9  they're really telling us -- you know, as they said to you,

10 they really can't tell us what their issues are.

11        THE COURT:  Remind me what class your claim is in or

12 his claim is in?

13        MR. BRILLIANT:  I believe it's other general

14 unsecured claims.  I think it's Class 14.  I always get 14

15 and 15 confused, but it's -- is it 14?

16        MR. ELLMAN:  It's Class 14, your Honor.

17        MR. BRILLIANT:  14.

18        MR. ELLMAN:  And our concern in part is that this --

19 we don't know who's going to vote, but even if every party

20 voted who is entitled to vote in that class, this would at

21 the level of $26 million be among, if not the largest claim

22 in the class, so it's fundamentally important that we know

23 the answer to that question, I think, if we're having a

24 real --

25        THE COURT:  Well, there's no chance you're going to

1   vote for the plan; right?

2          MR. BRILLIANT:  No, your Honor.  And for what it's

3   worth, your Honor, they estimate $150 million -- in the

4   disclosure statement they estimate the class would be $150

5   million, so it is not as if we have blocking power in this

6   class --

7          THE COURT:  No, but --

8          MR. BRILLIANT:  -- even if your Honor allowed it at

9   26 million.

10         THE COURT:  26 out of 150 is a significant

11  percentage.

12         MR. ELLMAN:  It also depends on who votes, your

13  Honor.

14         MR. BRILLIANT:  Correct, your Honor.  I'm not -- we

15  wouldn't be having, you know, this issue if it was

16  irrelevant.

17         THE COURT:  Whose depositions are you talking about?

18         MR. BRILLIANT:  There's two or three.  You know, our

19  issue -- did your Honor, you know, read the papers, and were

20  they understandable as to what the claim is?

21         THE COURT:  Um-hmm.

22         MR. BRILLIANT:  Yeah.  So, you know, there's two or

23  three possible depositions we would want.  They would relate

24  to the people who negotiated, you know, the transaction, you

25  know, what the representations were, what was said, and also

1    what was known about, you know, the -- you know, the --

2              THE COURT:  Um-hmm.

3              MR. BRILLIANT:  -- you know, the fraud.

4              THE COURT:  Do you have specific names?

5              MR. BRILLIANT:  We do.  We haven't figured out, your

6    Honor, exactly who we would need, but it's likely to be

7    someone in the group of Mark Jacobs from Dykema, who's the

8    lawyer who negotiated this on behalf of the city, you know,

9    DWSD, and/or, you know, Robert Walker, who was the

10   corporation counsel who was involved, and then possibly one

11   of -- there's two, you know, engineers or two business people

12   who are involved, R.C. Shukla and/or Victor Mercado, but our

13   sense is, you know, we may do these as -- and also -- you

14   know, and, again, your Honor, we talked to the other side

15   about two, maybe three, and --

16             MR. ELLMAN:  Darryl Latimer?

17             MR. BRILLIANT:  -- and possibly Darryl Latimer,

18   who's the person who executed the agreement, although we're

19   not certain at this point that he was involved in the

20   discussions.

21             THE COURT:  Um-hmm.

22             MR. BRILLIANT:  You know, we may do this by, you

23   know, a 30(b)(6) and let them tell us who the people are who

24   have the most knowledge or we may, you know -- you know --

25   you know, designate them, but it would be very short,

1    limited, you know -- you know, depositions just geared to,

2    you know, certain, you know -- you know, key facts that may

3    or may not be in dispute.  A lot of this came out in the

4    criminal investigation and in connection with the other

5    litigation, but we're not exactly sure what their position is

6    with respect to the negotiations and, you know, who knew what

7    and when.

8         THE COURT:  Well, I'm inclined to think there is

9    merit in the city's position that it is important, to the

10   extent it's feasible, to pin down claims before it is

11   required to certify the balloting, so in the circumstances I

12   am going to set a hearing, tough as it is on us, for July

13   17th at two o'clock and ask you to submit your briefs and

14   supporting evidence by Monday, the 14th.  And I'll permit the

15   limited discovery that you have suggested is necessary.

16        MR. BRILLIANT:  And, your Honor, can we either -- I

17   guess it doesn't -- can we file a reply brief on the morning

18   of the 17th or --

19        THE COURT:  Yes.  That's fine, and we'll deal as

20   best we can.

21        MR. BRILLIANT:  Thank you, your Honor.  Your Honor,

22   the other thing that was up for today was the objection, you

23   know, to the ultimate allowance of the claim, which, you

24   know, is not anything of great import before the confirmation

25   hearing.  I don't know what your Honor was, you know,

1   planning to do with that, but we would be agreeable to

2   having, you know, that hearing date set for some time at the

3   convenience of the Court and the city.

4           THE COURT:  Well, I think -- yeah.  I think that

5   whole process is subject to the discovery you would have as

6   if it were a regular civil suit; right?

7           MR. BRILLIANT:  Correct, your Honor.

8           THE COURT:  So I don't foresee resolving that in any

9   kind of expedited time frame at all.

10          MR. BRILLIANT:  No, no, and we don't either, your

11  Honor.  If I misspoke, that's what I was trying to say to

12  your Honor.

13          THE COURT:  Okay.

14          MR. BRILLIANT:  I was just saying from a case

15  management perspective, I just didn't want it to get lost.

16  And I don't know what your Honor's --

17          THE COURT:  Well, let's have a conversation about

18  that.  I mean normally I would set a discovery deadline, a

19  final pretrial conference, and a trial.  Did you have any

20  thoughts on that?

21          MR. BRILLIANT:  Yes, your Honor.  We have talked to

22  the other side about it.  We think that they either should --

23  you know, there is a complaint that has been filed.  They

24  should either, you know, answer the allegations in the

25  complaint or file some kind of motion to dismiss so that, you

1  know -- and we're not talking about any time -- you know,

2  we're not saying in the next 30 days or anything of that sort

3  unless your Honor, you know, wants to move this along.  We're

4  not insisting on that but that there should be some kind --

5       THE COURT:  Doesn't the objection to the claim

6  identify what their legal or factual disputes are?

7       MR. BRILLIANT:  No, your Honor.  It just says that

8  they will vigorously oppose the claim that they -- you know,

9  and that they think there may be a res judicata argument.

10      THE COURT:  Mr. Simon, are you responsible for the

11 representation of the city in this matter?

12      MR. SIMON:  Your Honor, it's still being determined

13 who's going to represent the city in terms of actual

14 determination on the issues.  I would say -- what I was

15 thinking is we go through this process in the 3018, and the

16 parties will have time then to determine what process they

17 want to use going forward in terms of the actual substance of

18 the claim.  I think it may be valuable to allow the parties

19 to have those discussions and see if they can come to an

20 agreement about how the claim would be handled on the

21 substantive basis for distribution purposes since they are

22 two separate processes, the 3018 and the --

23      THE COURT:  Well, all right.  Let's just adjourn

24 this until October 1st then, but I do want from the city

25 before then -- and we'll agree upon a date -- a much more

1  specific objection to the claim --

2          MR. SIMON:  Understood, your Honor.

3          THE COURT:  -- that admits and denies the

4  allegations of the complaint and asserts affirmative

5  defenses.

6          MR. SIMON:  Understood.  Thank you, your Honor.

7          THE COURT:  So what's a reasonable date?  Two weeks

8  before that?

9          MR. SIMON:  Yes.

10         THE COURT:  Chris, help me out.

11         THE CLERK:  September 17th.

12         MR. SIMON:  Good.

13         THE COURT:  And then at this October 1st status

14 conference, we can discuss the case management issues that

15 Mr. Brilliant has raised here today.

16         MR. SIMON:  Thank you, your Honor.

17         MR. BRILLIANT:  Thank you, your Honor.

18         THE COURT:  Okay.

19         MR. SIMON:  I believe that's all we had, your Honor,

20 unless you have anything else.

21         THE COURT:  No.  I'm all set then.

22         MR. SIMON:  All right.  Thank you very much.

23         MR. BRILLIANT:  Thank you, your Honor.

24         THE COURT:  Thank you.

25         THE CLERK:  All rise.

1        (Proceedings concluded at 10:53 a.m.)

2                                * * *




                              INDEX



WITNESSES:

     None

EXHIBITS:

     None



          I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                  June 30, 2014
_____           _____
Lois Garrett