UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**BRIEF IN SUPPORT OF THE LIMITED AND CAUTIONARY OBJECTION OF THE BANK OF NEW YORK MELLON, AS CUSTODIAN UNDER THE GLOBAL CUSTODY AGREEMENTS WITH: (A) THE GENERAL RETIREMENT SYSTEM; (B) THE POLICEMEN AND FIREMEN RETIREMENT SYSTEM; AND (C) THE BOARD OF TRUSTEES OF THE CITY OF DETROIT EMPLOYEES' BENEFIT PLAN, TO THE CONFIRMATION OF THE FOURTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

The Bank of New York Mellon as Custodian (the "BNY Mellon as Custodian"), under (a) the Global Custody Agreement with the Policemen and Firemen Retirement System of the City of Detroit ("PFRS"), (b) the Global Custody Agreement with the General Retirement System of the City of Detroit ("GRS"), and (c) the Global Custody Agreement with The Board of Trustees of The City of Detroit Employees' Benefit Plan ("Benefit Plan Trustees"), files this brief in support of its Limited Objection and Reservation of Rights ("Limited Objection") [Docket No. 4610] to the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan of Adjustment") [Docket No. 4392], pursuant to this Court's Order of June 5, 2014 [Docket No. 5235]. In support of its Statement of Legal Issues [Docket No. 5081], BNY Mellon as Custodian, respectfully states as follows:

I.  INTRODUCTION

BNY Mellon and PFRS are parties to the Global Custody Agreement, dated June 26, 2003 ("PFRS Global Custody Agreement"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, PFRS. BNY Mellon and GRS are parties to the Global Custody Agreement, dated June 30, 2005 ("GRS Global Custody Agreement" and with the PFRS Global Custody Agreement, the "Retirement Systems Custody Agreements"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, GRS. Post-petition, BNY Mellon and the Benefit Plan Trustees negotiated the Custody Agreement with The Board of Trustees of The City of Detroit Employees' Benefit Plan ("Benefit Plan Custody Agreement", and with the Retirement System Custody Agreements, the "Custody Agreements"), whereby BNY Mellon was appointed as custodian of "Securities and cash" as deposited by, or on behalf of, the Employees' Benefit Plan.[1]

GRS and PFRS (collectively, the "Retirement Systems") are defined in the Fourth Amended Disclosure Statement, each a single employer plan composed of a defined benefit plan and a defined contribution annuity plan:

> The Retirement Systems consist of the General Retirement System of the City of Detroit (the "GRS") and the Police & Fire Retirement System of the City of Detroit (the "PFRS"). For financial statement purposes, the Retirement Systems are included as fiduciary trust funds of the City. Each system is a single-employer plan composed of a defined benefit plan and a defined contribution annuity program. The plans provide retirement, disability and pre-retirement death benefits to plan members and beneficiaries. The plans are administered in accordance with the City Charter, the Detroit City Code and union contracts, which assign the authority to establish and

---

[1] At the time of the filing of this Brief, the Benefit Plan Custody Agreement was being finalized. BNY Mellon is not certain if the Employee Benefit Plan covered by the Benefit Plan Custody Agreement is addressed in the Plan of Adjustment. BNY Mellon includes the Benefit Plan Custody Agreement in this Statement and reserves all of its rights under that agreement.

amend contributions and benefit provisions to each plan's Board of Trustees. As of the Petition Date, Section 11-103(1) of the City Charter established the composition of the GRS Board of Trustees, as follows, although the actual composition has been changed pursuant to certain collective bargaining dispute arbitration awards: (i) the Mayor; (ii) one City Council member selected by the City Council; (iii) the City Treasurer; (iv) five members of the GRS, elected by the GRS membership; (v) one City resident who is neither a City employee nor eligible to receive GRS benefits, appointed by the Mayor and approved by the GRS Board of Trustees; and (vi) one current GRS retiree who is receiving benefits under the GRS, elected by "retired City employees." Section 11-103(2) of the City Charter provided, as of the Petition Date, that the PFRS Board of Trustees shall consist of: (i) the Mayor or a designee of the Mayor; (ii) one City Council member selected by the City Council; (iii) the City Treasurer; (iv) the Chief of Police; (v) the Fire Commissioner; (vi) three firefighters who are PFRS members, elected by PFRS members who are firefighters; (vii) three police officers who are PFRS members, elected by PFRS members who are police officers; and (viii) two current PFRS retirees who are residents of the City and are receiving benefits under the PFRS, with one such retiree elected by "retired firefighters" and one elected by "retired police officers." The Retirement Systems' investment policies are governed in accordance with Michigan Public Act 314 of 1965 (as amended), the Public Employee Retirement System Investment Act, MCL §§ 38.1121 *et seq*.

Fourth Amended Disclosure Statement ("Disclosure Statement")[2] at Article VII.B.5.

The Plan of Adjustment includes hundreds of defined terms, some of which may be subject to varying interpretations. For example, the defined term "**Released Parties**"[3] may or may not be intended by the Debtor, or interpreted, to include GRS, PFRS, their trustees and Related Parties. Furthermore, the defined term "**Indirect Employee Indemnity Claim**,"[4] may or may not be intended by the Debtor, or interpreted, to include claims relating to the Custody Agreements. The Plan of Adjustment may be interpreted, or intended by the Debtor, to treat BNY Mellon as Custodian, as a holder of Indirect Employee Indemnity Claims, and hence as a Class 14 Creditor under the Debtor's Plan of Adjustment, even though BNY Mellon as

---

[2] Disclosure Statement [Docket No. 4391].

[3] Plan of Adjustment at Definition No. 229.

[4] Plan of Adjustment at Definition No. 167.

Custodian is not a creditor of the Debtor and has not filed a proof of claim in this Bankruptcy Case. Furthermore, the definition of "**Retirement System Indemnity Obligations**"[5] may be interpreted, or intended by the Debtor, to treat BNY Mellon as Custodian as a holder of Retirement System Indemnity Obligation. BNY Mellon requested clarification of the Debtor's intention with respect to BNY Mellon as Custodian with respect to each of these three defined terms, but clarification was not provided.

In Article III.D.2 of the Plan of Adjustment – entitled "Preservation of Rights of Action by the City" – the City provides:

> [T]he City will retain and may enforce any claims, demands, rights, defenses and Causes of Action that it may hold against **any Entity**, including but not limited to any and all Causes of Action against **any party relating to the past practices of the Retirement Systems** (including any investment decision related to, and the management of, the Retirement Systems' respective pension plans and/or assets), to the extent not expressly released under the Plan or pursuant to any Final Order of the Bankruptcy Court.

(emphasis added) (the "Preserved Actions regarding the Retirement Systems").

Article II.A.2 of the Disclosure Statement provides:

> The Plan provides that, on the Effective Date, the City will assume the obligations related to the already accrued benefits under the GRS pension plan and the PFRS pension plan *as those benefits will have been modified in the Plan*. This means that the City will not seek to terminate the GRS or the PFRS, although their respective pension plans will be closed to new participants, and vested active employees will not continue to accrue additional pension benefits under the terms and conditions of the current plans, *i.e.*, the two plans will be "frozen."

Article II.D.1 of the Plan of Adjustment provides for the rejection and discharge of all Retirement System Indemnity Obligations. Article III.D.5 of the Plan of Adjustment seeks to permanently enjoin "all Entities", including but not limited to those holding "Indirect Employee Indemnity Claims, along with their Related Entities," from, *inter alia* taking any action against

---

[5] Plan of Adjustment at Definition No. 238.

or affecting, *inter alia*, "the City or its property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property and the Related Entities of each of the foregoing," which includes the State, the State Related Entities, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, or a Released Party or their property.

As of June 26, 2014, certain exhibits to the Plan of Adjustment were not filed, including but not limited to: Exhibit D.II.6 - Executory Contracts and Unexpired Leases to be Rejected and Exhibit D.III.2 - Retained Causes of Action.

The Plan of Adjustment provides for the Preserved Actions regarding the Retirement Systems "against any party relating to the past practices of the Retirement Systems." Article III.D.2. The Debtor may also be seeking to enjoin permanently those same parties from exercising rights they may have under applicable law, including indemnification claims against third parties arising with respect to the very same Preserved Actions regarding the Retirement Systems.

As described in more detail in the Limited Objection, BNY Mellon as Custodian objects to: (a) any modification, release, discharge, injunction against, or similar limitations of claims of BNY Mellon as Custodian against persons or entities other than the Debtor, and (b) any modification or rejection of the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, as the Debtor is not a party to the Custody Agreements.

## II. LEGAL ISSUES

### A. Claims that are not Claims against the Debtor are not subject to classification and treatment under the Plan of Adjustment.

GRS and PFRS are independent trusts qualified under applicable provisions of the Internal Revenue Code and each is an independent entity, separate and distinct from the City of Detroit as employer/plan sponsor, as required by: (1) state law[6] and (2) Internal Revenue Code provisions setting forth qualified plan status. Applicable law requires, *inter alia*, the trust assets to be used for the sole purpose of employee benefit plans for which the trusts were established.[7] As such, the assets in the Trusts are not property of the Debtor. 11 U.S.C. § 902(1).

The Debtor is not a party to the Custody Agreements. BNY Mellon as Custodian does not have a "Claim", as defined in section 101(5) of the Bankruptcy Code, against the Debtor; it did not file a Proof of Claim; and it was not listed on the Debtor's list of creditors.[8] "Debt" means liability on a "Claim".[9] These definitions are incorporated in chapter 9 cases.[10]

Section 1122 of the Bankruptcy Code, which is incorporated in Chapter 9,[11] provides:

(a) Except as provided in subsection (b) of this section, a plan may place a **claim** or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

---

[6] See, e.g., Detroit Municipal Code, Sec. 74-4-1.

[7] *See* 26 U.S.C. § 401(a), § 457(g).

[8] Debtor's Second Amended List of Creditors and Claims, Docket No. 1059. The Bank of New York Mellon is listed on the Debtor's Second Amended List of Creditors and Claims, it is not listed in the capacity as Custodian of the Retirement System Funds.

[9] 11 U.S.C. § 101(12).

[10] 11 U.S.C. § 103(f).

[11] 11 U.S.C. § 901.

(b) A plan may designate a separate class of claims consisting only of every unsecured **claim** that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

Section 1123 of the Bankruptcy Code, also incorporated into Chapter 9,[12] which addresses contents of a plan, again refers only to claims or interests.[13] Furthermore, section 1123(b) provides:

(b) [A] plan may

(1) impair or leave unimpaired any **class of claims**, secured or unsecured, or of interests; …

11 U.S.C. §1123(b)(1).

Section 941 provides: "The debtor shall file a plan for the adjustment of the **debtor's debts**."[14] With certain exceptions, section 1141 of the Bankruptcy Code provides that confirmation of a plan discharges the **debtor** from **debts** that arose preconfirmation. Because BNY Mellon does not have a **Claim** against the Debtor, it does not have a **Debt** that can be treated or discharged under the Plan of Adjustment.

Therefore, BNY Mellon as Custodian objects to inclusion and treatment in the Plan of Adjustment, as a Class 14 Claim, or otherwise, of any claims it has against parties other than the Debtor.

---

[12] 11 U.S.C. § 901.

[13] 11 U.S.C. §1123(a).

[14] 11 U.S.C. § 941 (emphasis added).

**B.      The Bankruptcy Code does not authorize the Debtor, by its Plan of Adjustment, to modify or reject the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, where the Debtor is not a party to the Custody Agreements.**

BNY Mellon as Custodian believes that the Custody Agreements are not included in the definition of "Retirement System Indemnity Obligations" because the Debtor is not a party to any of the Custody Agreements. To the extent that the Plan of Adjustment is intended to include the indemnity provisions under Custody Agreements within the definition of "Retirement System Indemnity Obligations," BNY Mellon as Custodian objects to such treatment, and further objects to any attempt of the Plan of Adjustment to reject, discharge, or modify the Custody Agreements or any provisions thereof.[15]

BNY Mellon was selected to be the custodian of the Retirement Funds by the Board of Trustees of the Retirement Systems, as authorized by, *inter alia*, the Detroit Municipal Code.[16] BNY Mellon as Custodian has contractual rights with the counterparties thereto, including the Retirement Systems, but not the City. These contractual rights include, but are not limited to, the right to be paid for the custodial services provided, and the right to be indemnified for obligations incurred under certain circumstances (collectively, "Payment and Indemnification Rights"). Under the Public Employee Retirement System Investment Act, BNY Mellon as Custodian is considered a "service provider":

> 'Service provider' means a person retained **to provide services to a system** and includes investment advisers, consultants, custodians, accountants, auditors, attorneys, actuaries, administrators, and physicians. Service provider includes an investment service provider

---

[15] For example, *see* Article II.D.1 of the Plan of Adjustment. While the Plan does not currently provide for rejection of the Custody Agreements, the Plan permits the Debtor to amend the list of rejected contracts at any time on or before the Effective Date. Article II.D.6. Accordingly, BNY Mellon as Custodian filed its cautionary objection to any attempted modification or rejection of the Custody Agreements.

[16] Detroit Municipal Code, Sec. 47-2-20(d).

as defined in section 13(7) [M.C.L.A. 38.1133]. Service provider does not include a regulated investment adviser.

M.C.L.A. 38.1133(2)(g).

In its Disclosure Statement, the City says: "For financial statement purposes, the Retirement Systems are included as fiduciary trust funds ['<u>Retirement Trust Funds</u>'] of the City."[17] These Retirement Trust Funds belong to the Retirement Systems, are not property of the Debtor, and cannot be used by the City for purposes other than as provided in the respective trusts,[18] including but not limited to the Payment and Indemnification Rights. In the case of the Retirement Systems Custody Agreements, the Retirement Systems are obligated to the Custodian for the Payment and Indemnification Rights, and the Retirement Trust Funds held by the Custodian are subject to the contractual rights of BNY Mellon as Custodian to recoupment and setoff.

The Plan of Adjustment provides for the "rejection and discharge of all Retirement System Indemnity Obligations."[19] Section 365 of the Bankruptcy Code, which is applicable to this chapter 9 case,[20] addresses "executory contracts and unexpired leases ***of the debtor***". Furthermore, section 1123(b)(2) provides:

> (b) [A] plan may
>
> ….
>
> (2) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any **executory contract** or unexpired lease **of the debtor** not previously rejected under such section;

---

[17] Fourth Amended Disclosure Statement, at Article VII.B.5.

[18] S*ee* 26 U.S.C. § 401(a), § 457(g); *see also* Detroit Municipal Code, Sec. 47-4-1.

[19] Plan of Adjustment, Art. II.D.1.

[20] 11 U.S.C. § 901(a).

11 U.S.C. §1123(b)(2).

Section 105 of the Bankruptcy Code "does not provide an independent source of federal subject matter jurisdiction" and it "cannot be used to achieve a result not contemplated by the more specific provisions of" the Bankruptcy Code. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225, 237 (3d Cir. 2004); *see also In re W.R. Grace & Co.*, 591 F.3d 164, 170 (3d Cir. 2009) (*quoting Combustion Eng'g*); *In re Johns–Manville Corp.,* 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately . . . ."); *Wasserman v. Immormino* (*In re Granger Garage, Inc.*), 921 F.2d 74, 77 (6th Cir. 1990) (§ 105(a) is not a jurisdictional provision). Furthermore, section 105(a) does not authorize a bankruptcy court to create "substantive rights that would otherwise be unavailable under the Code." *U.S. v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992).[21]

WHEREFORE, The Bank of New York Mellon as Custodian objects to any modification or rejection of the Custody Agreements, including but not limited to, the reimbursement and indemnification provisions, because the Debtor is not a party to the Custody Agreements.

C. **Neither the Bankruptcy Code nor applicable law authorizes the issuance of a release, discharge, or an injunction enjoining, any claim of BNY Mellon as Custodian against persons or entities or their properties other than the Debtor or its property.**

The Plan of Adjustment may, depending on the interpretation of certain terms used in the Plan of Adjustment (including but not limited to "the City or its property", "Indirect Employee Indemnification Claim", "Retirement System Indemnification Obligation", and "Related

---

[21] BNY Mellon as Custodian under the Retirement Custody Agreements "may have contractual indemnification rights against the Debtor, only if the Debtor was determined to be the alter ego of the" Retirement Systems. *See, In re Alt Hotel, LLC* (Case No. 11-01651 [Docket No. 93] (Bankr. N.D. Ill. E.D. 9/25/2012) p. 35). The Debtor and the Retirement Systems have been separate and often adversarial parties in this Bankruptcy Case, and there has been no suggestion, much less a finding, that the City of Detroit is the alter ego of the Retirement Systems.

Entities"), seek to: (a) discharge or release any claim of BNY Mellon as Custodian against non-debtor third parties if those parties have indemnification rights against the Debtor, or (b) enjoin BNY Mellon as Custodian from enforcing its rights against non-debtor third parties or the Retirement Trust Funds. Any attempted release or injunction is particularly troublesome with respect to the Plan of Adjustment provision titled, "Preservation of Rights of Action by the City," wherein "the City will retain and may enforce any claims, demands, rights, defenses and Causes of Action that it may hold against **any Entity**, including but not limited to any and all Causes of Action against **any party relating to the past practices of the Retirement Systems** (including any investment decision related to, and the management of, the Retirement Systems' respective pension plans and/or assets), to the extent not expressly released under the Plan or pursuant to any Final Order of the Bankruptcy Court."[22]

BNY Mellon as Custodian asserts that rights it may have under the Custody Agreements are: (a) not subject to discharge under 11 U.S.C. § 944, and (b) cannot otherwise be released or enjoined by the terms of the Plan of Adjustment.

1. Release Provisions

BNY Mellon as Custodian does not hold a Pension Claim. The Debtor states in its Consolidated Response[23] that the non-consensual releases apply only to holders of "Pension Claims." As stated in Part II.A, above, BNY Mellon as Custodian does not hold a Claim against the Debtor and hence cannot be consenting to a Third Party Release under the Plan of Adjustment. Nonetheless, the Debtor states in its Consolidated Response that the Objections of

---

[22] Article III.D.2 of the Plan of Adjustment.

[23] Debtor's Consolidated Response [Docket No. 5034] at paragraphs 295 and 299.

BNY Mellon as Custodian are addressed in the "Consensual Release" or the "Non-Consensual Release" Section of its Consolidated Response. [24]

The Court of Appeals for the Sixth Circuit has held:

> The Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a **non-consenting creditor's claims against a non-debtor** to facilitate a reorganization plan. However, bankruptcy courts, "as courts of equity, have broad authority to modify **creditor-debtor** relationships."

*In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (internal citation omitted) (emphasis added, quoting *United States v. Energy Resources Co.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990)). Nonconsensual third-party releases test "the outer reaches of a bankruptcy court's jurisdiction." *Johns-Manville Corp. v. Chubb Indemn. Ins. Co.* (*In re Johns-Manville Corp.*), 517 F.3d 52, 55 (2d Cir. 2008), *rev'd sub nom. Travelers Indemn. Co. v. Bailey*, 129 S.Ct. 2195 (2009) ("*Manville III*"). A bankruptcy court has no jurisdiction to release creditors' claims against non-debtor third parties where such claims have no effect on the *res* of the bankruptcy estate. Specifically, in 2008, the Second Circuit declared:

> [The non-debtor releases] were meant to provide . . . global finality for Travelers. But global finality is only as "global" as the bankruptcy court's jurisdiction. A court's ability to provide finality to a third-party is defined by its jurisdiction, not its good intentions. We have previously recognized that "a nondebtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code."

---

[24] The Debtor states in its Consolidated Response [Docket No. 5034] (at paragraphs 295 and 299) that the non-consensual releases apply only to holders of "Pension Claims." BNY Mellon as Custodian is not a holder of a Pension Claim since it is not an employee or former employee of the City and a beneficiary of the Retirement Systems in such capacity. Nonetheless, the Debtor states in its Consolidated Response that the Objections of BNY Mellon as Custodian are addressed in the "Consensual Release" or the "Non-Consensual Release" Section of its Consolidated Response (*see* Debtor's Consolidated Response [Docket No. 5034] Exhibit A at #23 (page 238 of 256). BNY Mellon as Custodian (a) is not consenting to a Third Party Release and (b) does not hold a Pension Claim.

*Manville III,* 517 F.3d at 66, *rev'd on other grounds, Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195 (June 18, 2009) (internal citations and quotations omitted), *aff'd in part & rev'd in part*, 600 F.3d 135 (2d Cir. 2010). Consensual third-party releases are permissible where a creditor or interest holder agrees to a release even though it could vote to accept a plan without agreeing to the release. While the "Release" provision of the Plan of Adjustment, Art. III.D.7, purports to require a "vote in favor" to be bound by the "release," the "discharge, release and injunction" provisions of Article III.D.4(a) and (b), Article III.D.5, and Article IV.E.4, do not appear to require an affirmative vote to be effective. Such non-consensual releases of by non-creditors of the Debtor in favor of non-debtors are not authorized under the Bankruptcy Code or applicable law.

    2.    <u>Injunction Provisions</u>

The Injunction Provision of the Plan of Adjustment provides:

> 5.   Injunction.
>
> On the Effective Date, except as otherwise provided herein or in the Confirmation Order,
>
> a.  all **Entities that have been, are or may be holders of Claims against the City**, Indirect 36th District Court Claims or **Indirect Employee Indemnity Claims, along with their Related Entities**, shall be permanently enjoined from taking any of the following actions against or affecting the City or its property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property **and the Related Entities of each of the foregoing**, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order):
>
>     1.   commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims, and (C) **Indirect Employee Indemnity Claims**);

    2. enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the City or its property;

    3. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the City or its property;

    4. asserting any setoff, right of subrogation or recoupment of any kind, directly or **indirectly,** against any obligation due the City **or its property**;

Plan of Adjustment, Art. III.D.5 (emphasis added).

  As stated above, BNY Mellon as Custodian is uncertain if the Debtor intends to include claims BNY Mellon as Custodian may have under the Custody Agreements or other applicable law against parties other than the Debtor within the opening phrase of the Injunction Provision: "**Entities that have been, are or may be holders of Claims against the City**, Indirect 36th District Court Claims or **Indirect Employee Indemnity Claims, along with their Related Entities**," herein defined as "Enjoined Entity-A".

  If BNY Mellon as Custodian is not an Enjoined Entity-A, then BNY Mellon as Custodian does not object to Section D.5.a of the Injunction Provision.

  If BNY Mellon as Custodian is an Enjoined Entity-A, whether as a Related Entity to Indirect Employee Indemnity Claims or otherwise, then BNY Mellon as Custodian objects to Section D.5.a of the Injunction Provision.  In response to Plan objections asserted with respect to the Injunction provision regarding the "Indirect 36th District Court Claim", which is an Enjoined Entity-A, the Debtor states:  "The Plan, thus, **enjoins** not only the 36th District Court's claims against the City, but also **third parties' claims** against the 36th District Court to the extent the 36th District Court is entitled to receive funding, directly or indirectly, from the City to satisfy

such claims."[25] The Debtor's Consolidated Response, in the very same section, says: "[T]he Plan's injunction against Indirect 36th District Court Claims **does not enjoin actions against third parties** and the application of *Dow Corning*, is therefore, inappropriate."[26] Arguably, the injunction seeks to, or may be interpreted to, enjoin claims of BNY Mellon as Custodian against the Retirement Systems, but not enjoin actions against BNY Mellon as Custodian. In effect, this would be a third-party release of direct claims of BNY Mellon against the Retirement Systems and other non-debtors, when BNY Mellon is not a creditor of the City. Dow Corning specifically requires, among other thing: (a) that the "impacted class, or classes, has overwhelmingly voted to accept the plan, and (b) the Plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; and (c) the Plan provides an opportunity for those claimants who choose not to settle to recover in full." *Dow Corning*, 280 F.3d 648, 658 (6th Cir. 2002). The Plan of Adjustment does not meet, and cannot not comply, the *Dow Corning* test with respect to claims of BNY Mellon as Custodian.

"The provisions of a confirmed plan bind the debtor and any creditor."[27] Since BNY Mellon as Custodian is not a creditor of the Debtor because it does not hold a claim against the Debtor, the Bankruptcy Code does not authorize the Plan of Adjustment to bind BNY Mellon as Custodian, over its objection, to the Plan of Adjustment's terms. Furthermore, the Bankruptcy Code authorizes the "discharge of all debts" of a chapter 9 debtor, but since BNY Mellon as Custodian does not hold a claim against the Debtor, BNY Mellon as Custodian does not have a debt that can be discharged by the Plan of Adjustment over the objection of BNY Mellon as

---

[25] Debtor's Consolidated Response [Docket No. 5034] at paragraphs 314-17.

[26] Emphasis added.

[27] 11 U.S.C. § 944(a).

Custodian. Nothing in the Bankruptcy Code, *Dow Corning*,[28] or otherwise authorizes an injunction in favor of a non-debtor by a non-consenting **non-**creditor.

        3.      <u>Exculpation Provisions</u>

Article III, Section D.6 of the Plan of Adjustment provides that certain parties will be exculpated from liability in connection with, relating to or arising out of the City's restructuring efforts and the City's Chapter 9 case. The "Exculpated Parties" include, *inter alia*, the Retirement Systems and the members of the Official Committee of Retirees, each of whom is a creditor of the City. The limitations on the exculpation are not clear, and to the extent it is intended to act as, or have the effect of, a third-party release of obligations that may be due from the Retirement Systems to BNY Mellon as Custodian, or rights that BNY Mellon may have against the Retirement Systems under the Custody Agreements, then, for the reasons stated in parts C.1 an C.2 above, BNY Mellon as Custodian objects.

WHEREFORE, BNY Mellon as Custodian objects to the confirmation of the Plan of Adjustment to the extent it seeks to discharge, release or enjoin any rights or claims that BNY Mellon may have under the Custody Agreements or applicable law against any non-debtor, whether by attempted classification of its rights as a claim that can be treated, released, or discharged under the Plan of Adjustment, exculpation or otherwise.

**D.**     **To the extent the Plan of Adjustment seeks to impair the rights of BNY Mellon as Custodian under the Custody Agreements, the Plan of Adjustment is not confirmable under Section 943(b)(2).**

As stated above, the Plan of Adjustment may, depending on the interpretation of certain terms used in the Plan of Adjustment (including but not limited to "Indirect Employee Indemnification Claim" and "Retirement System Indemnification Obligation" and "Related

---

[28] *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002).

Entities"), seek to: (a) discharge or release any claim of BNY Mellon as Custodian against non-debtor third parties if those parties have indemnification rights against the Debtor, (b) enjoin BNY Mellon as Custodian from enforcing its rights against non-debtor third parties or the Retirement Trust Funds; or (c) modify the rights of BNY Mellon as Custodian under the Custody Agreements. To the extent the Plan of Adjustment seeks to impair the rights of BNY Mellon as Custodian, a non-creditor of the Debtor, the Plan of Adjustment is unfair, inequitable and unconfirmable.

The standards for confirmation address the rights of creditors and their claims and equity holders. As set forth herein, BNY Mellon as Custodian is not a creditor of the Debtor and is not a party to an executory contract with the Debtor. Hence, for the reasons set forth in Parts A, B, and C, above, any attempted modification of the rights of BNY Mellon under the Custody Agreements or applicable law by way of the Plan of Adjustment does not comply with chapter 9. Therefore, the Plan of Adjustment is not confirmable.[29]

## III. RESERVATION OF RIGHTS

BNY Mellon, as Custodian under the Custody Agreements, reserves its rights, claims, defenses, and remedies, including, without limitation, the right to amend, modify, or supplement this legal memorandum filed in support of its Limited Objection.

Dated: June 30, 2014

By: */s/ Scott A. Wolfson*
Scott A. Wolfson (P53194)
swolfson@wolfsonbolton.com
WOLFSON BOLTON PLLC
3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7103
Facsimile: (248) 247-70990

---

[29] 11 U.S.C. § 943(b)(2).

and

Amy M. Tonti
atonti@reedsmith.com
**REED SMITH LLP**
225 Fifth Avenue
Suite 1200
Pittsburgh PA  15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063

Counsel for The Bank of New York Mellon as Custodian under the above described Custody Agreements