**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN,<br><br>Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes |

**SUPPLEMENTAL LIMITED OBJECTION OF MERRILL LYNCH
CAPITAL SERVICES, INC. AND UBS AG TO FOURTH AMENDED PLAN
FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

Merrill Lynch Capital Services, Inc. and UBS AG (together, the "Swap Counterparties") submit this supplemental limited objection to the *Fourth Amended Plan for the Adjustment of Debts for the City of Detroit* (the "City") [ECF No. 4392] (the "Plan"), in accordance with this Court's Legal Issues Order (as defined below). In support thereof, the Swap Counterparties respectfully represent as follows:

On May 12, 2014, the Swap Counterparties filed the *Limited Objection of Merrill Lynch Capital Services, Inc. and UBS AG to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit or Request for Clarification with Respect Thereto* [ECF No. 4668] (the "Limited Objection").[1] On May 27, 2014, the Swap Counterparties filed the *Statement of Merrill Lynch Capital Services, Inc. and UBS AG in Response to Order Regarding Identifying Legal Issues Relating to Confirmation* [ECF No. 5082].

On June 2, 2014, this Court issued the *Proposed Order Identifying Legal Issues, Establishing Briefing Schedule and Setting Hearing Date and Procedures* [ECF No. 5172] (the "Proposed Legal Issues Order"). In response to the Proposed Legal Issues Order, on June 4,

---

[1] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Limited Objection.

2014, the Swap Counterparties filed the *Statement of Merrill Lynch Capital Services, Inc. and UBS AG in Response to Proposed Order Identifying Legal Issues, Establishing Briefing Schedule and Setting Hearing Date and Procedures* [ECF No. 5223] (the "<u>Swap Counterparties' Legal Issues Statement</u>"). The two legal issues set forth in the Swap Counterparties' Legal Issues Statement were included, at Nos. 13 and 14, in this Court's *Order Identifying Legal Issues, Establishing Supplemental Briefing Schedule and Setting Hearing Dates and Procedures* [ECF No. 5235] (the "<u>Legal Issues Order</u>").[2]

In accordance with the Legal Issues Order, the Swap Counterparties believe it is necessary to file this supplemental limited objection to update the Court and identify the one remaining unresolved issue between the City and the Swap Counterparties with respect to the Settlement Agreement and the Plan. As described in the Limited Objection, under the Settlement Agreement, the Swap Counterparties agreed to vote their Secured Claims in favor of a "Specified Plan," which is a plan of adjustment that, among other things, treats the rights and claims of the Swap Counterparties no less favorably than the terms of the Settlement Agreement and the Approval Order.

Since the filing of the Plan, the City and the Swap Counterparties have engaged in productive discussions and continued to narrow all but one of the Swap Counterparties' concerns.[3] Despite this progress, the Swap Counterparties believe that the Plan still does not

---

[2] The Swap Counterparties' two legal issues, as set forth in the Legal Issues Order, are the following:

(i) Whether the Plan is a Specified Plan (as defined in the Settlement Agreement) that the Swap Counterparties would be obligated to vote in favor of and refrain from objecting to; and

(ii) To the extent that the Plan is not a Specified Plan, whether the releases set forth in § III.D.7. of the Plan, which benefit certain non-debtor parties, are consensual as they relate to the Swap Counterparties and, if nonconsensual, whether such releases are legally permissible.

[3] As detailed in the Limited Objection, the Swap Counterparties previously raised objections regarding the Plan exculpation provision as well as the over breadth and lack of clarity in respect of the injunction and release provisions. The City's counsel has advised the Swap Counterparties that (i) they will be added as exculpated parties

2

qualify as a Specified Plan. Rather, creditors who vote in favor of the Plan are required to provide releases that are substantially broader than the releases set forth in the Settlement Agreement. Specifically, the Plan Releases would require the Swap Counterparties to release the City's and the State's "Related Entities" and other "Released Parties", which include certain non-debtor third parties that the Swap Counterparties did not agree to release in the extensively negotiated and specifically tailored Settlement Releases contained in the Settlement Agreement. Creditors voting in favor of the Plan are not afforded an opportunity to "opt out" of the Plan Releases, which the Swap Counterparties believe renders the Plan Releases non-consensual.

Non-consensual plan releases are appropriate only if they meet the Sixth Circuit's *Dow Corning* standard.[4] In its *Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [ECF No. 5034], the City simply stated that the Plan Releases are voluntary and appropriate under applicable law. The relevant case law, however, indicates otherwise.[5]

---

and (ii) clarifying and limiting language will be added to the injunction and release provisions in an amended version of the Plan. The Swap Counterparties, therefore, believe these issues have been resolved.

[4] *Class Five Nevada Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002).

[5] *See In re Congoleum Corp.*, 362 B.R. 167, 194 (Bankr. D.N.J. 2007) ("[T]his Court agrees with those courts that have held that a consensual release cannot be based solely on a vote in favor of a plan."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 508 (Bankr. D.N.J. 1997) ("[I]t is not enough for a creditor to abstain from voting for a plan, or even to simply vote 'yes' as to a plan. . . . [T]he court must ascertain whether the creditor unambiguously manifested assent to the release of the nondebtor from liability on its debt."); *see also, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (court characterized plan's third-party releases as consensual where holders of claims who affirmatively voted to accept or reject the plan had an opportunity to opt out of granting the releases); *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bank. D. Del. 2011) ("[A]ny third party release is effective only with respect to those who affirmatively consent to it by voting in favor of the Plan and not opting out of the third party releases."); *In re Recticel North Am., Inc.*, 2010 Bankr. LEXIS 5825 (Bankr. E.D. Mich. Apr. 9, 2010) (confirming plan of reorganization and finding third-party releases to be consensual as against claimholders who had ability to, but did not, opt out of the releases); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 218 (Bankr. S.D.N.Y. 2009) (finding third-party releases to be consensual in respect of claimholders who either voted for the plan or abstained for voting, in each case without opting out of the releases, and noting that such claimholders were given adequate notice that voting for the plan or abstaining, without opting out of the releases, would constitute consent to the releases), *aff'd in part, rev'd in part on other grounds*, 634 F.3d 79 (2d Cir. 2010); *In re Calpine Corp.*, 2007 Bankr. LEXIS 4390 (Bankr. S.D.N.Y. Dec. 19, 2007) ("[T]hose Holders of Claims and Interests voting to accept the Plan or abstaining from voting and choosing not to opt out of the releases were given due and adequate notice that they would be granting the releases by acting in such a manner."); *In re Oneida Ltd.*,

The Swap Counterparties have proposed revisions to the Plan Releases that would resolve their remaining concern, but the City has not yet agreed to these revisions. Absent these revisions, the Swap Counterparties assert that the Plan does not treat their rights and claims "no less favorably than the terms of the Settlement Agreement and the Approval Order" and, therefore, the Plan is not a Specified Plan.

[*Remainder of Page Intentionally Left Blank*]

---

351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006) ("[R]eleases of claims held by creditors who affirmatively indicate their willingness to grant such releases by 'checking a box' on their plan solicitation ballots" are consensual).

Dated: New York, New York
       June 30, 2014

                DAVIS POLK & WARDWELL LLP

                By:     /s/ Damian S. Schaible

Marshall S. Huebner
Damian S. Schaible
Elliot Moskowitz
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
marshall.huebner@davispolk.com
damian.schaible@davispolk.com
elliot.moskowitz@davispolk.com

Attorneys for Merrill Lynch Capital Services, Inc.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:     /s/ Kelley A. Cornish

Daniel J. Kramer
Richard A. Rosen
Kelley A. Cornish
Stephen J. Shimshak
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
dkramer@paulweiss.com
rrosen@paulweiss.com
kcornish@paulweiss.com
sshimshak@paulweiss.com

Attorneys for UBS AG

WARNER NORCROSS & JUDD LLP

By: /s/ Stephen B. Grow

Stephen B. Grow
Charles Ash, Jr.
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, Michigan 49503
sgrow@wnj.com
cash@wnj.com

Attorneys for Merrill Lynch Capital Services,
   Inc. and UBS AG