UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | Chapter 9 |
| City of Detroit, Michigan, | No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| _____/ | |

**DFFA'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OBJECTIONS TO CITY'S FOURTH AMENDED PLAN OF ADJUSTMENT**

This is the Detroit Fire Fighters Association's (DFFA) supplemental brief in support of its *Objections to the City's Fourth Amended Plan of Adjustment* (POA) [Docket No. 4918]. It also responds to the City's *Consolidated Reply* (Reply) to the DFFA's Objections [Docket No. 5034].

The Detroit Police Officers Association (DPOA) joined in the DFFA's Objections and joins in this supplemental brief.

### INTRODUCTION

In its Objections, the DFFA argued that this Court had no jurisdiction or authority to impose a ten (10) year *prospectively-applicable* pension plan – a mandatory subject of bargaining – upon DFFA and DPOA members.

1

The DFFA also argued that the City was misusing the POA and this Bankruptcy Court. That is, the City's use of the POA to suspend, for ten (10) years, the DFFA's and DPOA's statutory bargaining rights and relieve the City of its corresponding duty to bargain was actually an improper effort to judicially-repeal parts of PERA and, equally improper, to judicially-expand the durational limits of PA 436.

In response to the DFFA's Objections, the City initially offers only conspicuous silence – it never addresses the DFFA's threshold challenge to this Court's jurisdiction to regulate *future* economic relationships.

Beyond its bashfulness, the City offers only a gauzy, at-times illogical defense for its requested ten (10) year injunction.

There is no § 943(b)(4) violation, the City claims, because the ten (10) year injunction does not require City (debtor) action. And, the City's argument goes, debtor action is an indispensable element of a § 943(b)(4) violation.

Alternatively, the City argues that, even if the injunction involves City (debtor) action, no PERA violation exists because "nothing suggests that it is impermissible" to extend PA 436's PERA-suspension beyond PA 436's express durational limits. And, the City's economics justify a longer PERA suspension.

Finally, the City claims that PERA's duty to bargain is ill-defined – it mandates bargaining only "at reasonable times" – and accuses the DFFA of failing to "articulate a statutory obligation to bargain" at "any specific time." The City then conveniently contextualizes its duty to bargain. It urges, as forecasted by the DFFA in its Objections, that a ten (10) year suspension of the duty to bargain is "reasonable" because it is "inextricably linked to the Plan's overall feasibility."

As explained before, the City's arguments fail.

The City's § 943(b)(4) arguments amount to verbal thimble-rigging. Its claim that PA 436's martial law terms can be judicially-extended because of "feasibility" issues is unsupported and unsupportable. And, the City's claim that its bargaining duty is fact-dependent and its implicit claim that it is "reasonable" and permissible to judicially-repeal PERA's bargaining mandates are flights of fancy unconnected to either statute or case law.

3

**ARGUMENT**

I. **THE COURT HAS NO CHAPTER 9 AUTHORITY TO IMPOSE A TEN (10) YEAR INJUNCTION UPON DFFA AND DPOA MEMBERS**

   A. **Bankruptcy's Purpose – To Discharge a Debtor's *Pre-Existing D*ebts.**

Congress's stated aims for the Bankruptcy Code are:

   (1) provide the debtor with a fresh start; and

   (2) protect creditors by preventing the debtor from paying claims selectively for unfair reasons.

H.R. Rep. 103-835, 33, 1994 U.S.C.C.A.N. 3340, 3341.

A bankruptcy's "fresh start" is clearly-defined. It refers to relief from debts existing *prior* to filing a bankruptcy petition. *Perez v. Campbell*, 402 U.S. 637, 660 (1971) ([a debtor] "receives 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of *pre-existing* debt.'" (Emphasis added).

Given these specific and narrow goals, a bankruptcy court's office is to adjust the debtor-creditor relationship. *In re City of Stockton, Cal.*, 478 B.R. 8, 25 (Bankr. E.D. Cal. 2012). This relationship "adjustment" authority is a bankruptcy court's "core" power. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982).

4

What is a bankruptcy's "debtor-creditor" relationship? That too is clear. The "debtor-creditor relationship" is the debtor's *pre-petition* contracts and its creditors' claims. *In re City of Stockton, Cal.,* 478 B.R. at 16. It does not include *future* debtor contracts or debts not yet incurred.

So, the bankruptcy court has a strictly "remedial" function; it does not act preventatively. *In re City of Detroit, Mich.*, 504 B.R. 97, 189 (Bankr. E.D. Mich. 2013). Only its adjustment of a debtor's *past and current debts* influences a debtor's future.

The City's ten (10) year injunction is fundamentally at odds with Congress's goals and this Court's jurisdiction because the POA-imposed Hybrid Plan is not a *current* City debt or *current* creditor's claim subject to this Bankruptcy Court's adjustment authority. 11 U.S.C. § 101(5)(A).

The Hybrid Plan is not a *pre*-bankruptcy relationship. The Hybrid Plan is a vehicle for *future* pensions to be earned from the *future* labor of DFFA and DPOA members. As such, it is beyond the Court's Chapter 9 adjustment authority.

## B. This Court Cannot Use its Equitable Powers to Abridge the DFFA's and DPOA's Prospective Bargaining Rights.

A bankruptcy court has broad equitable powers. 11 U.S.C. § 105.

But, equitable powers do not authorize a bankruptcy court to interfere with *future* economic relationships between a debtor-employer (public or private) and the statutorily recognized bargaining representatives of the debtor's employees.

This Court's broad equitable power does not empower it to disregard the future bargaining rights of DFFA members. Or, for that matter, to effectively "sit" at *future* bargaining tables and dictate which terms the City and the DFFA can negotiate.

## C. The POA's 10-year injunction violates 11 U.S.C. § 943(b)(4) and 11 U.S.C. § 1129(a)(3).

Section 943(b)(4) and § 1129(a)(3) prohibit the Court from approving a POA that is "prohibited" or "forbidden" by federal or state law. "Where a plan proposes action not authorized by state law, or without satisfying state law requirements, the plan cannot be confirmed." *In re City of Colorado Springs Spring Creek Gen. Imp. Dist.*, 177 B.R. 684, 694 (Bankr. D. Colo. 1995).

The City's proposed ten (10) year injunction violates PERA because it deletes a mandatory subject of bargaining (pensions) from the collective

6

bargaining process. Violative of state law, the injunction violates the Bankruptcy Code. As such, this Court cannot approve it.

In response, the City claims that the ten (10) year injunction does not violate § 943(b)(4) because "the injunction does not require the 'debtor' [the City] to take any 'action'." Reply, p. 159. Instead, the City pleads, the injunction "contemplates action only by *the Court*." (Emphasis in the original). Because only the Court has an *active* role, the City reasons, there is no § 943(b)(4) violation.

This is a linguistic slight-of-hand. The POA is *the City's* plan – not this Court's plan. And, the injunction is *the City's* request – not the Court's idea.

As the author, architect, and beneficiary of this ten (10) year injunction, the City is relieved of its statutory and "affirmative" duty to bargain. This relief from a statutory duty does not make the City a *passive* actor.

By its terms, the POA ten (10) year injunction authorizes the City to reject (read: *act*) future DFFA demands for pension-related collective bargaining. This is an obvious "affirmative" act. In normal circumstances, this refusal to bargain would be an unfair labor practice. *Local 2179,*

*United Steelworkers of America v. N.L.R.B*, 822 F.2d 559, 565-66 (5th Cir. 1987).

Beyond the illogic of this claim, injunctions are not self-enforcing. To enforce an injunction, a party must file (take action) the appropriate motion with this Court. Only the City will seek the protection of the injunction. And, it cannot do so without initiating *some* action. So, even within the pretzel-logic of this City claim, the injunction violates § 943(b)(4).

Finally, this Court has explained that § 943(b)(4) requires the POA to be *legally executable*. *In re City of Detroit, Mich.*, 504 B.R. 97, 128 (Bankr. E.D. Mich. 2013). Because the ten (10) year injunction violates PERA, it is not legally executable.

### 1.  Section 1129(a)(3)

The City does not address the POA's violation of § 1129(a)(3). Under § 1129(a)(3), a bankruptcy court cannot approve a POA where any part of it is forbidden by federal or state law.

This injunction violates PERA. So, under § 1129(a)(3), the Court cannot approve the POA with this ten (10) year injunction.

### II.  PA 436 DOES NOT AUTHORIZE A TEN (10) YEAR INJUNCTION

The City claims that, because PA 436 temporarily suspends PERA's collective bargaining requirements, the duty to bargain is not absolute.

8

Rather, the City claims without reference to any legal authority, the duty to bargain is amenable to longer, court-imposed suspensions. Nonsense.

PA 436 is *not* silent or ambiguous on the maximum length of its suspension of PERA's duty to bargain. It plainly states:

> A local government placed in receivership under this act is not subject to section 15(1) [duty to bargain] of 1947 PA 336, MCL 423.215 [PERA] for a period of 5 years from the date the local government is placed in receivership or until the time the receivership is terminated, whichever occurs first. M.C.L. § 141.1567(3).

This language leaves no room for interpretation. PA 436 does not allow for, or gesture to, a suspension of the duty to bargain that exceeds this explicit statutory limitation. To claim otherwise is to argue for a judicial repeal or judicial re-write of this important, long-standing statutory duty and right.

### A. The City's Feasibility Claims Do Not Provide The Court With Authority To Impose A Ten (10) Year Injunction.

Finally, the City claims that PERA only requires bargaining "at reasonable times" (M.C.L. § 423.215), that this phrase is undefined by statute or case law, and that a ten (10) year pension injunction satisfies PERA's "reasonable times" mandate because of the City's "unprecedented financial emergency." This too is nonsense.

9

While adherence to the duty to bargain is examined on a case-by-case basis, the duty is not subject to contextualization. Stated another way, an employer's duty to bargain is not assessed in the context of the employer's finances.

The duty to bargain at "reasonable times" is neither mysterious nor ambiguous, as the City urges. Contrary to the City's assertion, courts have repeatedly defined "reasonable times" under both the NLRA and PERA. Courts define "reasonable times" on a case-by-case basis. They use bargaining frequency or the delay in getting to an initial negotiation to determine whether the standard has been met. *See Town & Country Plumbing & Heating, Inc. v. NLRB*, 352 Fed. Appx. 20, 26-27 (6th Cir. 2009).

NLRA case law reveals that the "reasonable times" metric is used to ensure diligent bargaining so that negotiations are *meaningful. Insulating Fabricators, Inc.*, 144 N.L.R.B. 1325, 1326-29 (1963). It measures whether an employer or a union has committed an unfair labor practice by either refusing to meet, meeting only at difficult times of the day, or not meeting often enough. *See Town & Country Plumbing & Heating, Inc. v. NLRB*, 352 Fed. Appx. 20, 26 (6th Cir. 2009) ("The Board looks at each negotiation case-by-case in determining whether a reasonable time period has elapsed

10

before withdrawal from negotiations."). Michigan courts apply NLRA precedent when interpreting PERA's duty to bargain and "reasonable times" requirement. *Detroit Police Officers Ass'n v. City of Detroit*, 391 Mich. 44, 53 (1974).

The "reasonable times" yardstick, then, is not synonymous with *no* duty to bargain. And, it cannot be effectively repealed by contextualizing it within the City's bankruptcy.

So, the City has it backwards. Where there is a duty to bargain – as there will be upon the expiration of PA 436's application to the City – the City must immediately bargain at reasonable times over *all* mandatory subjects (including pensions) of bargaining.

## CONCLUSION

For the reasons summarized above, the DFFA asks that this Court deny confirmation of the POA.

                LEGGHIO & ISRAEL, P.C.

                */s/Alidz Oshagan*
                Christopher P. Legghio (P27378)
                Alidz Oshagan (P77231)
                Counsel for the DFFA
                306 South Washington Avenue, Suite 600
                Royal Oak, Michigan 48067-3837
                T: 248 398 5900; F: 248 398 2662
                oshagan@legghioisrael.com
Dated: June 30, 2014

# CERTIFICATE OF SERVICE

**I CERTIFY** that on June 30, 2014 I electronically filed the **DFFA'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS OBJECTIONS TO CITY'S FOURTH AMENDED PLAN OF ADJUSTMENT** and this **CERTIFICATE OF SERVICE** by operation of the court's electronic filing service to all ECF participants registered to receive notice in this case.

          LEGGHIO & ISRAEL, P.C.

          */s/Alidz Oshagan*
          Christopher P. Legghio (P27378)
          Alidz Oshagan (P77231)
          Counsel for the DFFA
          306 S. Washington Avenue, Suite 600
          Royal Oak, Michigan 48067-3837
          T: 248 398 5900; F: 248 398 2662
          oshagan@legghioisrael.com

Dated: June 30, 2014