**Exhibit A**

# PLAN CONFIRMATION FACTUAL PROPOSITIONS

## 1. REVENUE PROJECTIONS ARE REASONABLE

a. All material revenue streams are included in the Plan projections (**Robert Cline (EY); Caroline Sallee (EY); John Hill (City)**)

   i. Income tax
   ii. Property tax
   iii. Casino tax
   iv. State revenue sharing
   v. Utility tax/ users taxes
   vi. Fines and fees

b. Revenue forecasts and assumptions reflected in the Plan projections are reasonable (**Gaurav Malhotra (EY); Robert Cline (EY)**)

   i. City is unable and it is impractical to raise taxes (**Kevyn Orr (EM); Michael Duggan (City); Robert Cline (EY); Caroline Sallee (EY)**)

   ii. State revenue sharing contributions are expected to be consistent with assumptions in the Plan (**Robert Cline (EY); Caroline Sallee (EY); Gaurav Malhotra (EY)**)

   iii. Restructuring and reinvestment initiatives are reasonably expected to lead to slightly increased revenues and decreased expenses over the next 10 years (**Gaurav Malhotra (EY); Charles Moore (Conway); John Hill (City); Michael Duggan (City); Beth Niblock (City)**)

   iv. Plan projections are generally consistent with the City's internal forecasts (**John Hill (City)**)

   v. The City reasonably expects to be able to obtain required exit financing (**Gaurav Malhotra (EY); Kenneth Buckfire (Miller Buckfire)**)

1

## 2. FEASIBILITY (11 U.S.C. § 943(b)(7))

a. The Plan projections present a realistic picture of the City's ability to pay its expenses and obligations under the Plan and fund reinvestment and revitalization programs (**Gaurav Malhotra (EY); John Hill (City); Michael Duggan (City)**)

   i. City is able to fund normal municipal operations and provide adequate services post-confirmation (**Gaurav Malhotra (EY); John Hill (City); Michael Duggan (City); Brenda Jones (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)
       1. The City's restructuring and reinvestment initiatives are necessary:
           a. Blight (**Kevyn Orr (EM); Michael Duggan (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures)**)
           b. Public Safety (Police, Fire, EMS) (**Kevyn Orr (EM); Michael Duggan (City); James Craig (City)**)
           c. Finance (**John Hill (City)**)
           d. Information Technology (**Beth Niblock (City)**)

   ii. City is able to also satisfy obligations under the Plan (**Gaurav Malhotra (EY); John Hill (City); Michael Duggan (City)**)
       1. Grand Bargain facilitates payment of City's pension obligations (**Kevyn Orr (EM); John Hill (City); Gaurav Malhotra (EY)**)
       2. City's restructured legacy costs are reasonable and manageable (**Gaurav Malhotra (EY); John Hill (City); Glenn Bowen (Milliman)**)
       3. City can afford to issue new B-notes to non-pension unsecured creditors (**Gaurav Malhotra (EY); John Hill (City)**)
       4. The City can afford exit financing (**Gaurav Malhotra (EY); Kenneth Buckfire (Miller Buckfire)**)

b. Plan is likely to be sustainable for the long-run (**Michael Duggan (City)**)

   i. Post-confirmation City governance is sustainable (**Michael Duggan (City); Brenda Jones (City)**)
       1. The City will be subject to certain ongoing State oversight (**Michael Duggan (City); Brenda Jones (City)**)

   ii. Plan provides the City Council and Mayor with tools that were previously unavailable to the City prior to the Chapter 9 Case to implement and build upon revitalization efforts developed under the Plan (**Michael Duggan (City); Brenda Jones (City)**)

   iii. Community and business leaders have faith in the Plan and have planned complementary projects to enhance the City's reinvestment and restructuring efforts (**Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)

iv. Plan has been designed to work whether or not the City obtains access to the capital markets in the near future, nevertheless, it is more likely than not that the City will secure access to the capital markets, particularly for DWSD and other special revenue secured debt, post-confirmation (**John Hill (City); Kenneth Buckfire (Miller Buckfire)**))

# 3. REASONABLENESS OF FED. R. BANKR. P. 9019 SETTLEMENTS IN THE PLAN

a. Settlements in the Plan are: (1) fair, equitable and reasonable settlements of complex issues; (2) are agreements reached in mediation supervised by distinguished judicial officers and thus should be presumed to be the product of good faith arm's length bargaining; (3) further the policies and purposes of chapter 9; and (4) are in the best interests of the City, its creditors and all other parties in interest. (**Kevyn Orr (EM)**)

   i. UTGO Settlement (**Kevyn Orr (EM); Gaurav Malhotra (EY)**)
      1. The City will establish the range of reasonableness
      2. The product of the UTGO Settlement is within the range of reasonableness in that it provides economic benefit (preservation of *ad valorem* taxes) to the City

   ii. OPEB Settlement (**Kevyn Orr (EM); Gaurav Malhotra (EY); Suzanne Taranto (Milliman)**)
      1. The City will establish the range of reasonableness
      2. The product of the OPEB Settlement is within the range of reasonableness in that it is between the parties' respective litigation positions and represents a fair compromise of the factual and legal arguments

   iii. Grand Bargain Settlement (**Kevyn Orr (EM); Michael Duggan (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.); Vanessa Fuco (Christie's); [DIA]**)
      1. *Foundation and DIA Contributions in Exchange for Settling City's DIA Ownership Claims*
         a. The City will establish the range of reasonableness
         b. Christie's valuation and State AG opinion informs the range of reasonableness; the City is currently seeking expert evaluation of value of the entire collection
         c. Values contributed by State, DIA, Foundations and unions falls within the range of reasonableness
         d. Preserves cultural asset of the City that also provides economic benefit and provides the City with a unique and practical opportunity to obtain significant value from third parties on account of its interest in the collection
      2. *State Contribution in Exchange for Release of Claims*
         a. The consideration provided by the State is reasonable in view of the scope of releases
         b. Legislation and other conditions precedent that must be satisfied by the time of confirmation are on track to be satisfied (e.g. recent passage of contribution legislation by the Michigan House of Representatives

# 4. BEST INTERESTS (11 U.S.C. § 943(b)(7) / FAIR AND EQUITABLE (11 U.S.C. § 1129(b)(1))

   a. There is no requirement to sell City assets, whether assets are characterized as core or non-core (**Kevyn Orr (EM)**)

   b. DIA is a "core" asset (**Kevyn Orr (EM); [DIA]**)
      i. The DIA provides an economic contribution to the City (**Kevyn Orr; [State]; [DIA]; Rip Rapson (Kresge)**)
      ii. The DIA provides a cultural contribution to the City (**[DIA]**)

   c. Creditors are receiving all they can reasonably expect under the circumstances (**Kevyn Orr (EM); Gaurav Malhotra (EY)**)

   d. No creditor will do better outside chapter 9 (**Gaurav Malhotra (EY); Kenneth Buckfire (Miller Buckfire)**)

   e. City is unable and it is impractical to raise taxes (**Kevyn Orr (EM); Michael Duggan (City); Robert Cline (EY); Caroline Sallee (EY)**)

   f. Restructuring and reinvestment initiatives help the City provide adequate levels of municipal services (**Kevyn Orr (EM); Charles Moore (Conway); Michael Duggan (City); Brenda Jones (City); Beth Niblock (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)

      i. The needs City's residents are legitimately given priority over payment of debts (**Kevyn Orr (EM); Michael Duggan (City); Brenda Jones (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)

      ii. The City's reinvestment initiatives are necessary to provide adequate levels of municipal services, helping to stabilize declining population and are primarily devoted to the following (**Kevyn Orr (EM); Charles Moore (Conway); Michael Duggan (City); Brenda Jones (City); John Hill (City); Beth Niblock (City); Rip Rapson (Kresge); Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)
         1. Blight
         2. Public Safety (Police, Fire, EMS)
         3. Finance
         4. Information Technology
      iii. The City's restructuring and reinvestment initiatives cannot be achieved with less money (**Kevyn Orr (EM); Charles Moore (Conway); Michael Duggan (City)**)

   g. DWSD-related issues are treated fairly (**Sue McCormick (DWSD); Kenneth Buckfire (Miller Buckfire)**)
      i. The modification to the DWSD-related bond claims are fair and equitable
      ii. DWSD is in need of capital improvements

5

# 5. RESET OF DWSD INTEREST RATES IS CONSISTENT WITH REQUIREMENTS OF BANKRUPTCY CODE SECTION 1129(b)

   a. Proposed interest rates for impaired issues of DWSD-debt give holders payments having a present value equal to the allowed amount of their claims **(Kenneth Buckfire (Miller Buckfire))**

   b. No liens have been modified
      i. The payments to GRS are operating and maintenance expenses

   c. Modification of call protection is appropriate and does not result in any additional allowed claims

# 6. NO UNFAIR DISCRIMINATION (11 U.S.C. § 1129(b)(1))

a. The Plan provides an augmented recovery for pensioners while respecting the Bankruptcy Code's prohibition against unfair discrimination between creditor classes (**Kevyn Orr (EM); Michael Duggan (City)**)

b. The Plan's distributions on account of pension claims are, in part, made up with non-debtor contributions
   i. State contribution funds are not the City's funds and would not otherwise be available to the City (**Kevyn Orr (EM); Rip Rapson (Kresge); [DIA]; Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)

   ii. Foundations and DIA funds are not the City's funds and would not otherwise be available to the City (**Kevyn Orr (EM); [DIA]; Dan Gilbert (Rock Ventures); Roger Penske (Penske Corp.)**)

   iii. The Plan's distribution percentages should be regarded as lower than calculated based on settlement assumption of 6.75% (**Charles Moore (Conway); Glenn Bowen (Milliman)**)

c. The remaining difference in treatment is justified by the unique aspects of pension claims (**Charles Moore (Conway); Glenn Bowen (Milliman)**)

   i. Purpose of chapter 9 is to help municipalities restore adequate services, and funding pensions over bondholders will further facilitate this purpose (**Kevyn Orr (EM); Michael Duggan (City); Brenda Jones (City); Charles Moore (Conway); John Hill (City)**)

   ii. Providing better treatment to pensioners will promote relationships with those whose ongoing cooperation is vital to the City's recovery (**Kevyn Orr (EM); Michael Duggan (City); Brenda Jones (City); Rip Rapson (City)**)

   iii. Comparative harm to individuals versus institutions (**Kevyn Orr (EM); Michael Duggan (City)**)

7

# 7. PROPOSED IN GOOD FAITH (11 U.S.C. § 1129(a)(3))

   a. Good faith should be measured based on the totality of the circumstances (**All City Witnesses**)

      i. Settlements were achieved with numerous and distinct parties (e.g., secured v. unsecured; labor v. non-labor; individuals v. institutions)

      ii. General consensus among all the parties is that the City is in need of reinvestment and restructuring

      iii. The Plan requires shared sacrifices from all interested parties

      iv. Mediated settlements included in Plan have to be presumed to be in good faith

## 8. DWSD-RELATED ISSUES

   a. The DWSD pension funding proposed under the Plan is lawful (**Glenn Bowen (Milliman)**)

   b. The Plan's allocation of proceeds from a potential DWSD transaction is lawful (**Gaurav Malhotra (EY); John Hill (City)**)

## 9. ALTERNATIVE SAVINGS FUND RECOUPMENT

a. Explanation of program and its impact (**Charles Moore (Conway)**)

b. Explanation of how the City determined its calculations and caps (**Charles Moore (Conway); Glenn Bowen (Milliman)**)

## 10. NONCONSENSUAL THIRD PARTY RELEASES

   a. The City has identified "unusual circumstances" that satisfy some or all of the seven factors identified in *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 658 (6th Cir. 2002) (**Kevyn Orr (EM)**)

      i. The failure to obtain approval of and effect the release, injunction, exculpation and discharge provisions of the Plan would seriously impair the City's ability to confirm the Plan (**Kevyn Orr (EM)**)

      ii. The contributions and concessions by the third party releasees are an essential component to the reorganization of the City and its future success and to the feasibility of the Plan. (**Kevyn Orr (EM)**)

**11.    36TH DISTRICT COURT**

  a. Explanation of the City's ownership of property related to and the financial relationship with the 36th District Court (**Gaurav Malhotra (EY); John Hill (City)**).

Will Call Witnesses

|   | | | |
|---|---|---|---|
| 1 | Glenn | Bowen | Milliman |
| 2 | Ken | Buckfire | Miller Buckfire |
| 3 | Robert | Cline | EY |
| 4 | James | Craig | Detroit Police Chief |
| 5 | Michael | Duggan | Detroit Mayor |
| 6 | Vanessa | Fuco | Christie's |
| 7 | Dan | Gilbert | Rock Ventures |
| 8 | John | Hill | Detroit Chief Financial Officer |
| 9 | Brenda | Jones | City Council President |
| 10 | Gaurav | Malhotra | EY |
| 11 | Sue | McCormick | DWSD |
| 12 | Charles | Moore | Conway MacKenzie |
| 13 | Beth | Niblock | Detroit Chief Information Officer |
| 14 | Kevyn | Orr | Detroit Emergency Manager |
| 15 | Roger | Penske | Penske Corp. |
| 16 | Rip | Rapson | Kresge |
| 17 | Caroline | Sallee | EY |
| 18 | Suzanne | Taranto | Milliman |

Conditional Call Witness List

|   | | | |
|---|---|---|---|
| 1 | Tonya | Allen | Skillman |
| 2 | Graham | Beal | DIA |
| 3 | Ryan | Bigelow | Retirement Systems' Chief Investment Officer |
| 4 | Annmarie | Erickson | DIA |
| 5 | Eugene | Gargano | DIA |
| 6 | Edsel | Jenkins | Detroit Executive Fire Commissioner |
| 7 | Susan | Mosey | DIA-related |
| 8 | Michael | Paque | KCC |
| 9 | Marc | Schwartz | DIA-related |
| 10 | Cynthia | Thomas | Retirement Systems' Administrator |
| 11 | Peter | Walsh | KCC |