UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
(DETROIT)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | CASE NO.: 13-53846 |
| | ) | |
| | ) | CHAPTER 9 |
| Debtor. | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |

___

**JOINT SUPPLEMENTAL BRIEF OF THE DWSD BOND TRUSTEE AND
THE AD HOC COMMITTEE OF DWSD BONDHOLDERS REGARDING
LEGAL ISSUE NO. 4 AND JOINDER TO THE SUPPLEMENTAL BRIEFS OF
ASSURED GUARANTY MUNICIPAL CORP. AND NATIONAL PUBLIC
FINANCE GUARANTEE CORPORATION REGARDING LEGAL ISSUE NO. 7**

___

U.S. Bank National Association, in its capacity as trustee (the "**Trustee**") for those certain bonds (the "**DWSD Bonds**") issued by the City of Detroit (the "**City**") for the DWSD[1] to finance and refinance improvements to the City's Water Supply System and the City's Sewage Disposal System, and the Ad Hoc Committee of holders of certain of the DWSD Bonds[2] (the "**Ad Hoc Committee**"), hereby files this (a) joint supplementary brief with respect to Legal Issue No. 4 identified in this Court's *Order Identifying Legal Issues, Establishing Supplemental Briefing Schedule And Setting Hearing Dates And Procedures* [Doc. No. 5235] (the "**Legal Issues Order**"), and (b) joinder to the *Brief of Assured Guaranty Municipal Corp. in Response to Issue Number 7 in Order Identifying Legal Issues, Establishing Supplemental Briefing Schedule and Setting Hearing Dates and Procedures*, filed on June 30, 2014 ("**Assured's**

---

[1] Capitalized terms used but not defined herein bear the meaning ascribed to such term in *The DWSD Bond Trustee's Objection to the City's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Doc. No. 4647] (the "**Trustee's Plan Objection**"), which was filed on May 12, 2014.
[2] The Ad Hoc Committee members are BlackRock Financial Management, Inc., Eaton Vance Management, Fidelity Management & Research Company, Franklin Advisers, Inc., and Nuveen Asset Management.

**Supplemental Brief**") and *National Public Finance Guarantee Corporation's Supplemental Brief Regarding Legal Issue #7*, filed on June 30, 2014 (together with Assured's Supplemental Brief, the "**Insurers' Supplemental Briefs**").

### JOINDER AND SUPPLEMENTAL BRIEFING

**I.  THE BANKRUPTCY CODE PROHIBITS INTEREST RATE AND CALL PROTECTION MODIFICATIONS, AS SET FORTH IN PLAN § II.B.3.a.ii.**

1.  In the Legal Issues Order, this Court identified "whether the Bankruptcy Code prohibits the interest rate and call protection modifications of bonds secured by special revenues set forth in § II.B.3.a.ii of the Plan" ("**Legal Issue No. 7**") as a legal issue. (*See* Legal Issues Order at 1).

2.  The Trustee and Ad Hoc Committee adopt and incorporate by reference the arguments and authorities set forth in the Insurers' Supplemental Briefs with regard to Legal Issue No. 7.[3]  For the reasons stated in the Insurers' Supplemental Briefs and as may otherwise be argued at any hearing or in supplemental briefing, the answer to Legal Issue No. 7 is "yes." The Plan's proposed treatment of the DWSD Bonds under § II.B.3.a.ii of the Plan is prohibited under the Bankruptcy Code, and the Plan cannot be confirmed.

**II.  THE ABSOLUTE PRIORITY RULE APPLIES TO SECURED CLAIMS.**

3.  In addition to Legal Issue No. 7, this Court identified "whether the absolute priority rule of 11 U.S.C. § 1129(b)(2)(A) is applicable to secured claims" ("**Legal Issue No. 4**") as a legal issue. (*See* Legal Issues Order at 1). Legal Issue No. 4 should also be answered in the

---

[3] The Trustee incorporates by reference and reserves all objections raised in the Trustee's Plan Objection. Likewise, the Ad Hoc Committee incorporates by reference and reserves all objections raised in the *Objection of the Ad Hoc Committee of DWSD Bondholders to the City's Fourth Amended Plan of Adjustment and Joinder to the DWSD Bond Trustee's Objection to the City's Fourth Amended Plan of Adjustment* (Doc. No. 4671) (the "**Ad Hoc's Plan Objection**"). The Trustee and the Ad Hoc Committee further reserve the right to supplement, respectively, the Trustee's Plan Objection and the Ad Hoc's Plan Objection in accordance with the *Fifth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* (Doc. No. 5259).

affirmative. For the reasons stated in the Trustee's Plan Objection, the Ad Hoc's Plan Objection, and as set forth below, the absolute priority rule applies to secured claims and is being violated by the Plan with respect to the DWSD Bonds.

4. Section 1129(b)(1) requires the "fair and equitable" treatment of creditors. This includes handling their claims in accordance with the absolute priority rule, <u>whether those claims are secured or unsecured</u>. In its reply to certain objections, the City contends that the absolute priority rule is codified only in subsection (b)(2)(B) of § 1129, which provides that "[w]ith respect to a class of unsecured claims. . . the holder of any claim or interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior claim or interest any property. . . ." (*See Consol. Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Doc. 5034 at 116–19) (the "**City's Reply**").[4] According to the City, subsection (b)(2)(A) of § 1129, which pertains to "a class of secured claims," does not contain any reference to the absolute priority rule; therefore, the absolute priority rule is not applicable to secured claims. *Id*.

5. The City's view of the absolute priority rule is overly restrictive. Not only is the absolute priority rule codified in § 1129(b)(2)(B), but it is also subsumed within the "fair and equitable" requirements of § 1129(b)(1).

---

[4] The City argues that the "absolute priority rule" has no application to unsecured creditors in chapter 9 because the City has no equity interest holders. (*See* City's Reply at 64). However, the fact that a municipality, much like a non-profit, has no equity interests is not relevant to the inquiry before this Court. The lack of equity interest holders might be a relevant consideration if the DWSD Bonds were unsecured claims and this Court were being asked to determine whether the Plan violated § 1129(b)(2)(B), which relates to the treatment of classes of unsecured claims. However, as this Court is aware, the DWSD Bonds are secured claims. Therefore, the application of § 1129(b)(2)(B) is not pertinent to the DWSD Bonds. The proper inquiry, as articulated by this Court, is whether the absolute priority rule applies to secured creditors under § 1129(b)(1). As set forth in detail herein, the answer to that inquiry is in the affirmative.

3

### A. Binding Case Law from the United States Supreme Court Holds that the Absolute Priority Rule Applies to Secured Claims.

6. The Supreme Court has held that the "fair and equitable" treatment of secured creditors includes handling disposition of such claims in accordance with the absolute priority rule. *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 115–17 (1939). In *Case*, which was a proceeding under the Bankruptcy Act, the objecting bondholders, whose debt was secured by a trust indenture covering the fixed assets of one of the debtor's subsidiaries and the capital stock of all of the debtors subsidiaries, maintained that they had not received treatment that was "fair and equitable" as used in section 77B of the Act. *Id.* at 109, 112.

7. The Supreme Court reasoned that the words "fair and equitable" in the statute are "words of art which prior to the advent of [the statute] had acquired a fixed meaning through judicial interpretations in the field of equity receivership reorganizations." *Id.* at 115. Accordingly, the Supreme Court applied the rule of statutory construction that "where words are employed in an act which had at the time a well-known meaning in the law, they are used in that sense unless the context requires the contrary." *Id.* In doing so, the Supreme Court turned to the field of "equity reorganization law," where "fair and equitable" included the "familiar rule" called the "rule of full or absolute priority" that "the stockholders' interest in the property is subordinate to the rights of creditors. First, of secured, then of unsecured, creditors." *Id.* at 115–17.

8. The Supreme Court held that the "fair and equitable" treatment of a secured creditor under the Act required that the secured creditor receive its due in accordance with the absolute priority rule. *Id.* at 119–20 (holding that the plan, which provided that stockholders would receive twenty-three percent of the value of the enterprise where the debtor was insolvent and the claims of the bondholders were far in excess of the debtor's assets was not fair and

4

equitable because the absolute priority rule afforded those secured bondholders with "priority over stockholders against all the property of an insolvent corporation"); *see also Consol. Rock Products Co. v. DuBois*, 312 U.S. 510, 520-21 (1941) (the Supreme Court again confirmed that secured creditors, who were holders of bonds that were secured by an indenture on the property of the debtors, were entitled to treatment in conformity with the absolute priority rule under the Act).[5]

### B. Four Circuit Courts of Appeal, District Courts, and Bankruptcy Courts Have Held that the Absolute Priority Rule Applies to Secured Creditors.

9. Similarly, the Second, Third, Seventh, and Eighth Circuit Courts of Appeals have ruled that the absolute priority rule protects secured creditors.

10. According to the Second Circuit, "[t]he policy implicit in the rule of 'absolute priority' clearly indicates the concern of the Supreme Court for the preservation of the rights of creditors, generally, and secured creditors, particularly, against the claims of others standing in a less preferred position." *In re Third Ave. Transit Corp.*, 222 F.2d 466, 469 (2d Cir. 1955) (citing *Consol. Rock Products Co.*, 312 U.S. 510; *Case*, 308 U.S. 106; and *N. Pacific Ry. Co. v. Boyd*, 228 U.S. 482 (1913)).

11. The Third Circuit has determined that "the absolute priority rule is twofold." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1110 (3d Cir. 1979). The absolute priority rule is:

---

[5] *Case* arose under the Bankruptcy Act, however, nothing in the Bankruptcy Code's legislative history suggests that Congress intended to depart from the Supreme Court's conclusion that the "fair and equitable" treatment of all creditors required under § 1129(b)(1) includes the protections of the absolute priority rule. Section 1129(b)(2)(A) does not expressly reference the rule (aside from the general invocation of the "fair and equitable" requirement), but the legislative history makes clear that Congress did not intend the factors in § 1129(b)(2) to be an exhaustive explication of what constitutes "fair and equitable" treatment under § 1129(b)(1):
> Although many of the factors interpreting "fair and equitable" are specified in paragraph (2), others, which were explicated in the description of section 1129(b) in the House Report, were omitted from the House Amendment to avoid statutory complexity and because they would undoubtedly be found by a court to be fundamental to "fair and equitable" treatment of a dissenting class.

H.R. REP. NO. 95-595, at 549, *reprinted in* 1978 U.S.C.C.A.N. at 6474. In short, § 1129(b)(2) "provides *guidelines* for a court to determine whether a plan is fair and equitable with respect to a dissenting class," *id.* (emphasis added), but it does not provide a comprehensive list of factors.

5

11947844
13-53846-tjt    Doc 5705    Filed 06/30/14    Entered 06/30/14 21:48:04    Page 5 of 12

> [I]ntended to assure that the investment securities distributed as compensation under the Plan have a value at least roughly equivalent to the value of the claim surrendered. The reviewing court is therefore required to make "a comparison of the new securities allotted to (the claimant) with the old securities which he exchanges to determine whether the new are the equitable equivalent of the old." *Institutional Investors, supra*, 318 U.S. at 566, 63 S.Ct. at 749. In addition, the rule commands that until senior creditors have received that "full compensatory treatment," *Consolidated Rock Products Co. v. DuBois*, 312 U.S. 510, 529, 61 S.Ct. 675, 85 L.Ed. 982 (1941), participation in the estate by junior creditors must be barred. *RFC v. Denver & R.G.W.R.R.*, 328 U.S. 495, 517, 66 S.Ct. 1282, 90 L.Ed. 1400 (1946); *In re Central Railroad Co. of New Jersey*, 579 F.2d 804, 810 (3d Cir. 1978). These standards of priority protect both the principal of and interest on the senior creditor's claim. *Institutional Investors*, *supra*, 318 U.S. at 546, 63 S.Ct. 727. They also shield a secured creditor's priority in his security up to the lesser of the full value of his security or the full value of his claim. *In re Equity Funding Corp.*, 416 F. Supp. 132, 145 (C.D. Cal. 1975).

*Id.* at 1110–11.

12. The Seventh Circuit has also applied the absolute priority rule to secured creditors, describing that secured creditors are entitled to "be paid in full before unsecured creditors retain any interest, and unsecured creditors must be paid off before equity holders retain an interest." *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 554 (7th Cir. 2001); *see also In re James Wilson Assocs.*, 965 F.2d 160, 171 (7th Cir. 1992) (holding, despite objection of senior secured creditor with lien on building and rents, that absolute priority was not violated when plan proposed to use rents to pay attorney's fees and protect interest of a junior secured creditor because the plan provided for the senior secured creditor to be paid in full with interest).

13. The Eighth Circuit also holds that the absolute priority rule protects secured creditors:

> The sole issue on appeal is whether the [debtors] have met their burden. The bank has consistently stated its intention to oppose any reorganization. Under the absolute priority rule, a court may not confirm a reorganization plan over the objections of the bank[, which had made two loans to the debtors secured by two separate parcels of farmland,] unless

6

11947844
13-53846-tjt    Doc 5705    Filed 06/30/14    Entered 06/30/14 21:48:04    Page 6 of 12

> the holders of junior claims (in this case, the [debtors]) receive no property.

*In re Anderson*, 913 F.2d 530, 532 (8th Cir. 1990) (citing § 1129(b)(2)(B)(ii) and *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 200-01 (1988)).

14. With the weight of four Circuit Courts of Appeal, it is not surprising that district courts and bankruptcy courts also hold that the absolute priority rule applies to secured creditors. *See In re Monarch Beach Venture, Ltd.*, 166 B.R. 428, 436 (C.D. Cal. 1993) (holding that "absolute priority is an implicit part of the 'fair and equitable' formula: the dissenting secured creditor must ordinarily be paid in full before any junior class may share under the plan"); *In re Miami Ctr. Assocs., Ltd.*, 144 B.R. 937, 941–42 (Bankr. S.D. Fla. 1992) (same); *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 511–12 (Bankr. S.D. Tex. 1989) (same). *See also, e.g., In re Lehigh Valley R.R. Co.*, 19 B.R. 978, 996 (E.D. Pa. 1982) (holding absolute priority rule satisfied where, among other things, "both principal and interest on secured claims would have been paid in full before any distribution to unsecured creditors"); *In re Elijah*, 41 B.R. 348, 352 (Bankr. W.D. Mo. 1984) (proposal to substitute security as to secured creditor violated absolute priority rule, where they might result in junior lienholders being paid before the senior secured creditor).

15. Neither the Trustee nor the Ad Hoc Committee is aware of any decisions by the Sixth Circuit Court of Appeals expressly stating that the absolute priority rule applies to secured creditors. The Sixth Circuit has held, however, that the absolute priority rule is incorporated into the "fair and equitable" standard in § 1129(b). *Official Comm. of Unsecured Creditors v. Dow Corning Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 672 (6th Cir. 2006) ("By incorporating the fair and equitable standard in § 1129(b) of the Code, Congress codified the 'absolute priority rule,' which provides that absent full satisfaction of a creditor's allowed claims, no member of a class junior in priority to that creditor may receive anything at all on account of their claim or

7

equity interest.") (citing *Case*, 308 U.S. at 115). The Plan must comport with the "fair and equitable" standards of § 1129(b); therefore, the Plan must comply with the absolute priority rule with respect to the DWSD Bonds.

### C. The Legislative History to § 1129 Makes Clear that the Absolute Priority Rule Applies to Secured Creditors.

16. Finally, the legislative history shows that § 1129 is intended to provide secured creditors with the protections afforded by the absolute priority rule:

> Subsection (b) permits the court to confirm a plan notwithstanding failure of compliance with paragraph (8) of subsection (a).
>
> . . . . .
>
> <u>The general principle of the subsection permits confirmation notwithstanding nonacceptance by an impaired class if that class and all below it in priority are treated according to the absolute priority rule</u>. The dissenting class must be paid in full before any junior class may share under the plan. I[f] it is paid in full, then junior classes may share. <u>Treatment of classes of secured creditors is slightly different because they do not fall in the priority ladder, but the principle is the same</u>.

H.R. REP. NO. 95-595, at 413 (1977), *reprinted in* 1978 U.S.C.C.A.N. at 6369 (emphasis added). From the Supreme Court's binding case law, to rulings from four Circuit Courts of Appeal and several other courts throughout the nation, to the legislative history behind § 1129, it is clear that the absolute priority rule applies to secured claims.

### CONCLUSION

WHEREFORE, the Trustee and the Ad Hoc Committee respectfully request that this Court determine that (a) the Bankruptcy Code prohibits modification of interest rates and call protection as set forth in Plan § II.B.3.A.ii and (b) the absolute priority rule applies to secured claims.

Respectfully submitted this the 30th day of June, 2014.

| | |
|---|---|
| */s/ David E. Lemke*<br>David E. Lemke (TN13586)<br>Courtney M. Rogers (TN25664)<br>WALLER LANSDEN DORTCH & DAVIS, LLP<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 37219<br>Tel: (615) 244-6380<br>Fax: (615) 244-6804<br>david.lemke@wallerlaw.com<br>courtney.rogers@wallerlaw.com<br><br>– and –<br><br>Jaimee L. Witten (P70068)<br>BODMAN PLC<br>1901 St. Antoine Street, 6th Floor<br>Detroit, Michigan 48226<br>Tel: (313) 393-7597<br>Fax: (313) 393-7579<br>jwitten@bodmanlaw.com<br><br>*Attorneys for U.S. Bank National Association, as Trustee for the DWSD Bonds* | */s/ Amy Caton*<br>Amy Caton<br>KRAMER LEVIN NAFTALIS & FRANKEL, LLP<br>1177 Avenue of the Americas<br>New York, New York 10036<br>Tel: (212) 715-9100<br>Fax: (212) 715-8000<br>acaton@kramerlevin.com<br><br>– and –<br><br>Geoffrey T. Pavlic<br>STEINBERG SHAPIRO & CLARK<br>25925 Telegraph Road<br>Suite 203<br>Southfield, MI 48033<br>Tel: (248) 352-4700<br>Fax: (248) 352-4488<br>pavlic@steinbergshapiro.com<br><br>*Attorneys for Nuveen Asset Management, and BlackRock Financial Management, Inc., members of the Ad Hoc Bondholder Committee*<br><br>*/s/ William W. Kannel*<br>William W. Kannel<br>MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Tel: 617-542-6000<br>Fax: 617-542-2241<br>wkannel@mintz.com<br><br>– and –<br><br>Andrew J. Gerdes<br>ANDREW J. GERDES, P.L.C.<br>321 W. Lake Lansing Rd.<br>P.O. Box 4190<br>East Lansing, MI 48826-4190 |

11947844

13-53846-tjt    Doc 5705    Filed 06/30/14    Entered 06/30/14 21:48:04    Page 9 of 12

Tel: (517) 853-1300
Fax: (517) 853-1301
agerdes@gerdesplc.com

*Attorneys for Fidelity Management & Research Company, Eaton Vance Management, and Franklin Advisers, Inc., members of the Ad Hoc Bondholder Committee*

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Joint Supplemental Brief of the DWSD Bond Trustee and Ad Hoc Committee of DWSD Bondholders regarding Legal Issue No. 4 and Joinder to the Supplemental Briefs of Assured Guaranty Municipal Corp. and National Public Finance Guarantee Corporation regarding Legal Issue No. 7* was filed and served via the Court's electronic case filing and noticing system to all parties registered to receive electronic notices in this matter and that it was delivered, by overnight service to the below recipients on this the 30th day of June, 2014:

David G. Heiman, Esq.
Heather Lennox, Esq.
Thomas A. Wilson, Esq.
JONES DAY
North Point
901 Lakeside Avenue Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

*Counsel to the City*

Bruce Bennett, Esq.
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243 2382
Facsimile: (213) 243 2539

*Counsel to the City*

Jonathan S. Green, Esq.
Stephen S. LaPlante, Esq.
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500

*Counsel to the City*

Matthew E. Wilkins, Esq.
Paula A. Hall, Esq.
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Telephone: (248) 971-1711
Facsimile: (248) 971-1801

*Counsel to the Retiree Committee*

| | |
|---|---|
| Claude Montgomery, Esq.<br>Carole Neville, Esq.<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 768-6700<br>Facsimile: (212) 768-6800<br><br>*Counsel to the Retiree Committee* | Sam J. Alberts, Esq.<br>DENTONS US LLP<br>1301 K Street NW, Suite 600, East Tower<br>Washington, DC 20005-3364<br>Telephone: (202) 408-6400<br>Facsimile: (202) 768-6800<br><br>*Counsel to the Retiree Committee*<br><br>*/s/ David E. Lemke*<br>David E. Lemke (TN13586)<br>Courtney M. Rogers (TN25664)<br>WALLER LANSDEN DORTCH & DAVIS, LLP<br>511 Union Street, Suite 2700<br>Nashville, Tennessee 37219<br>Phone: (615) 244-6380<br>Fax: (615) 244-6804<br>david.lemke@wallerlaw.com<br>courtney.rogers@wallerlaw.com<br><br>*Attorneys for U.S. Bank National Association, as Trustee for the DWSD Bonds* |