# EXHIBIT B

**Financial Report with Supplemental Information of the City of Dearborn Heights, Michigan**

# City of Dearborn Heights, Michigan

**Financial Report**
**with Supplemental Information**
**June 30, 2012**

# City of Dearborn Heights, Michigan

**Contents**

**Report Letter**                                                                 1-2

**Management's Discussion and Analysis**                               3-7

**Basic Financial Statements**

Government-wide Financial Statements:
Statement of Net Assets                                                        8
Statement of Activities                                                        9-10

Fund Financial Statements:
Governmental Funds:
Balance Sheet                                                                11
Reconciliation of the Balance Sheet to the Statement of Net Assets        12
Statement of Revenue, Expenditures, and Changes in Fund Balances
(Deficit)                                                                   13
Reconciliation of the Statement of Revenue, Expenditures,
and Changes in Fund Balances of Governmental Funds
to the Statement of Activities                                              14

Proprietary Funds:
Statement of Net Assets                                                     15
Statement of Revenue, Expenses, and Changes in Net Assets                  16
Statement of Cash Flows                                                     17

Fiduciary Funds:
Statement of Fiduciary Net Assets                                           18
Statement of Changes in Fiduciary Net Assets - Pension and Other
Employee Benefits                                                          19

Component Units:
Statement of Net Assets                                                     20
Statement of Activities                                                     21-22

Notes to Financial Statements                                              23-51

**Required Supplemental Information**                                        52

Budgetary Comparison Schedule - Corporate Fund                             53-54

Budgetary Comparison Schedule - Major Special Revenue Funds               55-56

Pension System Schedule of Funding Progress                                57-58

# City of Dearborn Heights, Michigan

**Other Supplemental Information**                                                    59

Nonmajor Governmental Funds:
    Combining Balance Sheet                                      60-61
    Combining Statement of Revenue, Expenditures, and Changes in Fund
        Balances (Deficit)                               62-63

Fiduciary Funds:
    Combining Statement of Net Assets                           64
    Combining Statement of Changes in Fiduciary Net Assets      65



**Plante & Moran, PLLC**
27400 Northwestern Highway
P.O. Box 307
Southfield, MI 48037-0307
Tel: 248.352.2500
Fax: 248.352.0018
plantemoran.com

Independent Auditor's Report

To the City Council
City of Dearborn Heights, Michigan

We have audited the accompanying financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the City of Dearborn Heights, Michigan (the "City") as of and for the year ended June 30, 2012, which collectively comprise the City's basic financial statements as listed in the table of contents. These financial statements are the responsibility of the City of Dearborn Heights, Michigan's management. Our responsibility is to express opinions on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinions.

In our opinion, the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the City of Dearborn Heights, Michigan as of June 30, 2012 and the respective changes in financial position and cash flows, where applicable, thereof for the year then ended, in conformity with accounting principles generally accepted in the United States of America.

Accounting principles generally accepted in the United States of America require that management's discussion and analysis, retirement system schedules of funding progress, and the budgetary comparison schedules, as identified in the table of contents, be presented to supplement the basic financial statements. Such information, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board, which considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic, or historical context. We have applied certain limited procedures to the required supplemental information in accordance with auditing standards generally accepted in the United States of America, which consisted of inquiries of management about the methods of preparing the information and comparing the information for consistency with management's responses to our inquiries, the basic financial statements, and other knowledge we obtained during our audit of the basic financial statements. We do not express an opinion or provide any assurance on the information because the limited procedures do not provide us with sufficient evidence to express an opinion or provide any assurance.



To the City Council
City of Dearborn Heights, Michigan

Our audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise the City of Dearborn Heights, Michigan's basic financial statements. The accompanying other supplemental information, as identified in the table of contents, is presented for the purpose of additional analysis and is not a required part of the financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the financial statements as a whole.

In accordance with *Government Auditing Standards*, we have also issued our report dated November 13, 2012 on our consideration of the City of Dearborn Heights, Michigan's internal control over financial reporting and on our tests of its compliance with certain provisions of laws, regulations, contracts, grant agreements, and other matters. The purpose of that report is to describe the scope of our testing of internal control over financial reporting and compliance and the results of that testing, and not to provide opinions on the internal control over financial reporting or on compliance. That report is an integral part of an audit performed in accordance with *Government Auditing Standards* and should be read in conjunction with this report in considering the results of our audit.

*Plante & Moran, PLLC*

November 13, 2012

# City of Dearborn Heights, Michigan

Our discussion and analysis of the City of Dearborn Heights, Michigan's (the "City") financial performance provides an overview of the City's financial activities for the fiscal year ended June 30, 2012.  Please read it in conjunction with the City's financial statements.

## Financial Highlights

As discussed in further detail in this discussion and analysis, the following represents the most significant financial highlights for the year ended June 30, 2012:

- Property taxes related to governmental operations are the number one revenue source for the City of Dearborn Heights.  For the fiscal year ended June 30, 2012, the City's property tax revenue (for both the governmental and business-type operations) had a net overall increase of approximately $378,000 in the current year (compared to the prior fiscal year). Although taxable value decreased by approximately 9 percent at the City in the current year, causing related revenue for most of the City mills levied to also decrease significantly, this was offset by the increase in the Act 345 millage, resulting in a net change that is just slightly higher than last year.  The overall property tax revenue increased nearly 2.5 percent in the Corporate Fund, which relates to amounts available for public safety and general expenditures (resulting in an increase of approximately $447,000).

- State-shared revenue is the City of Dearborn Heights' second largest source of revenue. The State has continued to reduce these numbers for the majority of the cities in the state; however, in the most recent year, the funding level remained relatively stable for the fiscal year ended June 30, 2012 as compared to the previous year.

- The mayor and department heads are continuing to work closely with each other and are reducing all expenditures as much as possible without affecting services to the citizens of the City.  This includes significant changes to employee and retiree healthcare benefits and 10 percent salary and wage reductions across the board, including furlough days.

## Using this Annual Report

This annual report consists of a series of financial statements.  The statement of net assets and the statement of activities provide information about the activities of the City as a whole and present a longer-term view of the City's finances.  This longer-term view uses the accrual basis of accounting so that it can measure the cost of providing services during the current year, and whether the taxpayers have funded the full cost of providing government services.

The fund financial statements present a short-term view; they tell us how the taxpayers' resources were spent during the year, as well as how much is available for future spending. Fund financial statements also report the City's operations in more detail than the government-wide financial statements by providing information about the City's most significant funds.  The fiduciary fund statements provide financial information about activities for which the City acts solely as a trustee or agent for the benefit of those outside of the government.

# City of Dearborn Heights, Michigan

## Management's Discussion and Analysis (Continued)

### The City as a Whole

The following table shows, in a condensed format, the current year's net assets and changes in net assets, compared to the prior year (in thousands of dollars):

| | Governmental Activities | | Business-type Activities | | Total | |
|---|---|---|---|---|---|---|
| | 2011 | 2012 | 2011 | 2012 | 2011 | 2012 |
| **Assets** | | | | | | |
| Current and other assets | $ 5,990,777 | $ 5,366,314 | $ 18,655,642 | $ 17,977,886 | $ 24,646,419 | $ 23,344,200 |
| Capital assets | 80,216,850 | 80,125,915 | 89,517,632 | 89,315,750 | 169,734,482 | 169,441,665 |
| Total assets | 86,207,627 | 85,492,229 | 108,173,274 | 107,293,636 | 194,380,901 | 192,785,865 |
| **Liabilities** | | | | | | |
| Current liabilities | 4,492,114 | 3,606,732 | 6,468,736 | 6,145,169 | 10,960,850 | 9,751,901 |
| Long-term liabilities | 37,204,572 | 42,857,270 | 23,993,964 | 22,835,797 | 61,198,536 | 65,693,067 |
| Total liabilities | 41,696,686 | 46,464,002 | 30,462,700 | 28,980,966 | 72,159,386 | 75,444,968 |
| **Net Assets** | | | | | | |
| Invested in capital assets - | | | | | | |
| Net of related debt | 69,321,591 | 69,730,541 | 64,260,147 | 65,429,806 | 133,581,738 | 135,160,347 |
| Restricted | 8,258,907 | 8,807,603 | 10,915,009 | 10,691,235 | 19,173,916 | 19,498,838 |
| Unrestricted | (33,069,557) | (39,509,917) | 2,535,418 | 2,191,629 | (30,534,139) | (37,318,288) |
| Total net assets | $ 44,510,941 | $ 39,028,227 | $ 77,710,574 | $ 78,312,670 | $ 122,221,515 | $ 117,340,897 |

The City's combined net assets decreased by nearly 4.0 percent from a year ago - decreasing from $122.2 million to $117.3 million.

The unrestricted deficit in net assets of the governmental activities (the part of net assets that can be used to finance day-to-day operations) increased by over $6.4 million. This change is related primarily to the accrual for other postemployment benefits.

The increase in total net assets of the business-type activities of approximately $0.6 million relates to overall increases in water and sewer revenue and to amounts contributed from the governmental activities and other governmental units for the improvement of water and sewer lines.

# City of Dearborn Heights, Michigan

## Governmental Activities

The following table shows the changes of the net assets during the current year and as compared to the prior year:

|  | 2011 | 2012 | Change |
|---|---|---|---|
| **Revenue** | | | |
| Program revenue: | | | |
| Charges for services | $ 6,197,336 | $ 6,458,332 | $ 260,996 |
| Operating grants | 5,243,529 | 4,731,095 | (512,434) |
| Capital grants | 1,585,072 | 1,888,716 | 303,644 |
| General revenue: | | | |
| Property taxes | 20,176,530 | 20,554,729 | 378,199 |
| State-shared revenue | 4,903,600 | 4,988,608 | 85,008 |
| Investment earnings | 13,171 | 12,768 | (403) |
| Franchise fees and miscellaneous | 896,063 | 1,061,388 | 165,325 |
| Total revenue | 39,015,301 | 39,695,636 | 680,335 |
| **Program Expenses** | | | |
| General government | 8,692,518 | 9,264,224 | 571,706 |
| Public safety | 27,471,456 | 25,290,757 | (2,180,699) |
| Public works | 7,296,785 | 6,815,464 | (481,321) |
| Community and economic development | 1,139,314 | 921,896 | (217,418) |
| Recreation and cultural | 3,055,003 | 2,781,254 | (273,749) |
| Interest on long-term debt | 45,994 | 104,755 | 58,761 |
| Total expenses | 47,701,070 | 45,178,350 | (2,522,720) |
| **Change in Net Assets** | **$ (8,685,769)** | **$ (5,482,714)** | **$ 3,203,055** |

Reviewing the above chart, it can be noted that overall revenue increased approximately 1.7 percent, while the expenditures decreased by nearly 5.3 percent.

# City of Dearborn Heights, Michigan

## Business-type Activities

The following table shows the changes of the net assets during the current year and as compared to the prior year:

|  | 2011 | 2012 | Change |
|---|---|---|---|
| Operating revenue | $ 14,862,572 | $ 15,979,950 | $ 1,117,378 |
| Operating expenses - Other than depreciation | 13,762,251 | 15,666,590 | 1,904,339 |
| Depreciation and amortization | 2,729,008 | 2,697,699 | (31,309) |
| **Operating Loss** | (1,628,687) | (2,384,339) | (755,652) |
| Property tax revenue | 3,480,694 | 3,102,727 | (377,967) |
| Interest income | 20,337 | 53,844 | 33,507 |
| Interest expense | 950,605 | 815,827 | (134,778) |
| Capital grants and contributions | 2,182,208 | 645,691 | (1,536,517) |
| **Change in Net Assets** | **$ 3,103,947** | **$ 602,096** | **$ (2,501,851)** |

The City's business-type activities consist of the Water and Sewer Fund. The City maintains transmission lines that allow customers to receive water from the City of Detroit water system and deliver it to our residents. Sewage treatment is provided through Wayne County's Rouge Valley and Downriver Sewage Disposal Systems.

Per review of the above chart, it can be noted that operating revenue increased by approximately 7.5 percent, while operating expenses, other than depreciation and amortization, increased nearly 14 percent from the prior fiscal year. The majority of the increase in revenue is a result of increased water and sewer rates as consumption was relatively stable. The increase in expense is primarily due to settlements related to flooding, as well as overall increases in water rates from the City of Detroit.

## The City's Funds

The analysis of the City's major funds follows the government-wide financial statements. The fund financial statements provide detailed information about the most significant funds, not the City as a whole. The City Council creates funds to help manage money for specific purposes as well as to show accountability for certain activities. The City's major funds for 2012 include the Corporate Fund, Major Streets Fund, and Local Streets Fund.

## Corporate Fund Budgetary Highlights

The Corporate Fund accounts for all police, fire, public works, planning and zoning, and administrative functions of the City. The budget is essentially a maintenance budget, which means it usually increases modestly from year to year. The budget is monitored closely and amended when needed.

# City of Dearborn Heights, Michigan

As in the past, the budget was amended to account for changes in revenue, such as state-shared revenue and grants. In addition, the expenditures side of the budget was increased for the general government, public safety, and other departments as needed.

## Capital Asset and Debt Administration

At the end of fiscal year 2012, the City (excluding component units) had approximately $169.7 million (net of depreciation) invested in a broad range of capital assets, including buildings, police and fire equipment, infrastructure, and water and sewer lines. The debt balances related to the acquisition and construction of these assets at June 30, 2012 was approximately $36 million. Additional information regarding capital assets and related debt is available in the notes to the financial statements.

## Economic Factors and Next Year's Budgets and Rates

The City of Dearborn Heights has been applying the maximum millage rate that is possible under the Headlee amendment for the past few years. During the year ended June 30, 2012, the City requested the voters to approve a Headlee override, which was approved during the November 2011 election, and will result in an increase of 2.9449 mills (which will affect the Corporate Fund property tax revenue during the fiscal year ending June 30, 2013).

Our state-shared revenue is continuing to decline - although stable in fiscal year 2012, the statutory portion of state-shared revenue is currently closely monitored. With the City imposing higher fees for service throughout the City, employees paying higher deductibles and cost sharing toward their personal health care, the elimination of more positions through attrition, salary, and wage reduction, in addition to the implemented furlough days, the City has been able to absorb some of these cuts from the State. As a result of the above measures, for the next fiscal year, the City has adopted a budget with very little capital outlay, which will allow the Corporate Fund to decrease a portion of its deficit.

## Contacting City Management

This financial report is intended to provide our citizens, taxpayers, customers, and investors with a general overview of the City's finances and to show the City's accountability for the money it receives. If you have questions about this report or need additional information, we welcome you to contact the City's comptroller's office at 6045 Fenton, Dearborn Heights, Michigan 48127, or via the City's website at vmacari@ci.dearborn-heights.mi.us.

# City of Dearborn Heights, Michigan

**Statement of Net Assets**
**June 30, 2012**

| | Primary Government | | | |
| | Governmental Activities | Business-type Activities | Total | Component Units |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents (Note 3) | $ 2,699,754 | $ 1,444,022 | $ 4,143,776 | $ 3,630,568 |
| Receivables: | | | | |
| Property taxes receivable | 98,568 | - | 98,568 | - |
| Receivables from sales to customers on account | - | 6,950,106 | 6,950,106 | - |
| Due from other governmental units | 4,512,033 | 196,797 | 4,708,830 | - |
| Other | 2,349,236 | - | 2,349,236 | - |
| Due from component units | 4,320 | - | 4,320 | - |
| Due from primary government | - | - | - | 940 |
| Internal balances | (4,961,664) | 4,961,664 | - | - |
| Inventory | 619,670 | 523,022 | 1,142,692 | - |
| Prepaid expenses and other assets | - | - | - | 182 |
| Restricted assets (Note 8) | 44,397 | 3,902,275 | 3,946,672 | - |
| Capital assets: | | | | |
| Assets not subject to depreciation (Note 5) | 6,650,050 | 4,704,491 | 11,354,541 | 2,767,640 |
| Assets subject to depreciation (Note 5) | 73,475,865 | 84,611,259 | 158,087,124 | 17,780,147 |
| Total assets | 85,492,229 | 107,293,636 | 192,785,865 | 24,179,477 |
| **Liabilities** | | | | |
| Accounts payable | 1,315,506 | 2,640,743 | 3,956,249 | 174,629 |
| Due to other governmental units | - | 183,298 | 183,298 | - |
| Due to component units | 940 | - | 940 | - |
| Due to primary government | - | - | - | 4,320 |
| Refundable deposits, bonds, etc. | - | 80,056 | 80,056 | - |
| Accrued liabilities and other | 685,242 | 188,433 | 873,675 | 197,559 |
| Joint venture | 5,251 | - | 5,251 | - |
| Noncurrent liabilities: | | | | |
| Due within one year: | | | | |
| Compensated absences - Due within one year (Note 7) | 898,693 | 72,714 | 971,407 | - |
| Provision for general claims - Due within one year (Note 9) | 283,000 | - | 283,000 | - |
| Workers' compensation - Due within one year (Note 9) | 68,367 | - | 68,367 | - |
| Current portion of long-term debt (Note 7) | 354,984 | 2,979,925 | 3,334,909 | 835,000 |
| Due in more than one year: | | | | |
| Compensated absences - Due in more than one year (Note 7) | 3,594,770 | 290,856 | 3,885,626 | - |
| Provision for general claims - Due in more than one year (Note 9) | 1,265,899 | - | 1,265,899 | - |
| Workers' compensation - Due in more than one year (Note 9) | 478,662 | - | 478,662 | - |
| Net OPEB obligation (Note 13) | 27,427,901 | 1,638,922 | 29,066,823 | - |
| Long-term debt (Note 7) | 10,084,787 | 20,906,019 | 30,990,806 | 18,063,123 |
| Total liabilities | 46,464,002 | 28,980,966 | 75,444,968 | 19,274,631 |
| **Net Assets** | | | | |
| Invested in capital assets - Net of related debt | 69,730,541 | 65,429,806 | 135,160,347 | 1,649,664 |
| Restricted for: | | | | |
| Roads | 3,581,613 | - | 3,581,613 | - |
| Debt service | - | 3,902,275 | 3,902,275 | - |
| Special levy | - | 6,788,960 | 6,788,960 | - |
| Grants | 805,694 | - | 805,694 | - |
| Drug enforcement | 317,645 | - | 317,645 | - |
| Traffic immobilization | 40,036 | - | 40,036 | - |
| Library | 1,902,536 | - | 1,902,536 | - |
| Sanitation levy reserves | 1,649,233 | - | 1,649,233 | - |
| Cable PEG fees | 394,744 | - | 394,744 | - |
| Transportation | 116,102 | - | 116,102 | - |
| Unrestricted (deficit) | (39,509,917) | 2,191,629 | (37,318,288) | 3,255,182 |
| Total net assets | $ 39,028,227 | $ 78,312,670 | $ 117,340,897 | $ 4,904,846 |

The Notes to Financial Statements are an Integral Part of this Statement.

# City of Dearborn Heights, Michigan

| Functions/Programs | Expenses | Program Revenue | | |
| --- | --- | --- | --- | --- |
| | | Charges for Services | Operating Grants and Contributions | Capital Grants and Contributions |
| Primary government: | | | | |
| Governmental activities: | | | | |
| General government | $ 9,264,224 | $ 847,831 | $ - | $ 396,561 |
| Public safety | 25,290,757 | 3,656,907 | 548,047 | 359,404 |
| Public works | 6,815,464 | 1,675,082 | 3,216,862 | 444,995 |
| Community and economic development | 921,896 | - | 902,982 | - |
| Recreation and culture | 2,781,254 | 244,312 | 63,204 | 687,756 |
| Interest on long-term debt | 104,755 | - | - | - |
| Total governmental activities | 45,178,350 | 6,424,132 | 4,731,095 | 1,888,716 |
| Business-type activities - Water and sewer | 19,180,116 | 15,979,950 | 224,804 | 420,887 |
| Total primary government | $ 64,358,466 | $ 22,404,082 | $ 4,955,899 | $ 2,309,603 |
| Component units: | | | | |
| Tax Increment Financing Authority | $ 2,720,319 | $ - | $ 257,200 | $ - |
| Brownfield Redevelopment Authority | 66,114 | - | - | - |
| Total component units | $ 2,786,433 | $ - | $ 257,200 | $ - |

General revenue:
Property taxes
State-shared revenue
Unrestricted investment income
Unrestricted cable revenue
Other miscellaneous income

Total general revenue

**Change in Net Assets**

**Net Assets** - Beginning of year

**Net Assets** - End of year

The Notes to Financial Statements are an
Integral Part of this Statement.

13-53846-tjt   Doc 5706-2   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 13 of 106

| | Net (Expense) Revenue and Changes in Net Assets | | | |
|---|---|---|---|---|
| | Primary Government | | | |
| | Governmental Activities | Business-type Activities | Total | Component Units |
| $ (8,019,832) | $ - | $ (8,019,832) | $ - |
| (20,726,399) | - | (20,726,399) | - |
| (1,478,525) | - | (1,478,525) | - |
| (18,914) | - | (18,914) | - |
| (1,785,982) | - | (1,785,982) | - |
| (104,755) | - | (104,755) | - |
| (32,134,407) | - | (32,134,407) | - |
| - | (2,554,475) | (2,554,475) | - |
| (32,134,407) | (2,554,475) | (34,688,882) | - |
| - | - | - | (2,463,119) |
| - | - | - | (66,114) |
| - | - | - | (2,529,233) |
| 20,554,729 | 3,102,727 | 23,657,456 | 2,937,206 |
| 4,988,608 | - | 4,988,608 | - |
| 12,768 | 53,844 | 66,612 | 9,425 |
| 929,298 | - | 929,298 | - |
| 166,290 | - | 166,290 | - |
| 26,651,693 | 3,156,571 | 29,808,264 | 2,946,631 |
| (5,482,714) | 602,096 | (4,880,618) | 417,398 |
| 44,510,941 | 77,710,574 | 122,221,515 | 4,487,448 |
| $ 39,028,227 | $ 78,312,670 | $117,340,897 | $ 4,904,846 |

# City of Dearborn Heights, Michigan

| | Corporate Fund | Major Streets Fund | Local Streets Fund | Other Nonmajor Governmental Funds | Total |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Cash and cash equivalents (Note 3) | $ 414,933 | $ 425,627 | $ 423,117 | $ 1,436,077 | $ 2,699,754 |
| Receivables: | | | | | |
| Special assessments receivable | 98,568 | - | - | | 98,568 |
| Due from other governmental units | 3,794,493 | 379,537 | 152,881 | 185,122 | 4,512,033 |
| Other | 1,516,223 | - | - | 833,013 | 2,349,236 |
| Due from component units | 4,320 | | | - | 4,320 |
| Due from other funds (Note 6) | 1,620,446 | - | - | 1,321,359 | 2,941,805 |
| Advances to other funds (Note 6) | - | 1,200,119 | 1,200,062 | - | 2,400,181 |
| Housing inventory | - | - | - | 619,670 | 619,670 |
| Restricted assets | - | - | - | 44,397 | 44,397 |
| Total assets | $ 7,448,983 | $ 2,005,283 | $ 1,776,060 | $ 4,439,638 | $ 15,669,964 |
| **Liabilities and Fund Balances (Deficit)** | | | | | |
| **Liabilities** | | | | | |
| Accounts payable | $ 1,074,147 | $ 2,198 | $ - | $ 239,161 | $ 1,315,506 |
| Due to component units | 940 | - | - | - | 940 |
| Due to other funds (Note 6) | 1,314,444 | 165,562 | 31,970 | 886,572 | 2,398,548 |
| Advances from other funds (Note 6) | 7,905,102 | - | - | - | 7,905,102 |
| Accrued liabilities and other | 571,606 | - | - | 16,100 | 587,706 |
| Deferred revenue (Note 4) | - | - | - | 531,497 | 531,497 |
| Total liabilities | 10,866,239 | 167,760 | 31,970 | 1,673,330 | 12,739,299 |
| **Fund Balances (Deficit)** | | | | | |
| Restricted: | | | | | |
| Roads | - | 1,837,523 | 1,744,090 | - | 3,581,613 |
| Grants | - | - | - | 591,840 | 591,840 |
| Sanitation levy reserves | 1,649,233 | - | - | - | 1,649,233 |
| Traffic immobilization | - | - | - | 40,036 | 40,036 |
| Library | - | - | - | 1,902,536 | 1,902,536 |
| Capital projects | - | - | - | 44,397 | 44,397 |
| Cable PEG fees | 394,744 | - | - | - | 394,744 |
| Transportation | 116,102 | - | - | - | 116,102 |
| Committed - Building Authority | - | - | - | 194,414 | 194,414 |
| Unassigned | (5,577,335) | - | - | (6,915) | (5,584,250) |
| Total fund balances (deficit) | (3,417,256) | 1,837,523 | 1,744,090 | 2,766,308 | 2,930,665 |
| Total liabilities and fund balances (deficit) | $ 7,448,983 | $ 2,005,283 | $ 1,776,060 | $ 4,439,638 | $ 15,669,964 |

The Notes to Financial Statements are an Integral Part of this Statement.

# City of Dearborn Heights, Michigan

| | |
|---|---:|
| **Fund Balance Reported in Governmental Funds** | $ 2,930,665 |
| Amounts reported for governmental activities in the statement of net assets are different because: | |
| Capital assets used in governmental activities are not financial resources and are not reported in the funds | 80,125,915 |
| Investments in joint ventures are not financial resources and are not reported in the funds | (5,251) |
| Grants and other receivables that are collected after year end, such they are not available to pay bills outstanding as of year end, are not recognized in the funds | 531,499 |
| Long-term liabilities are not due and payable in the current period and are not reported in the funds: | |
| Bonds payable | (10,439,771) |
| Net OPEB obligation | (27,427,901) |
| Accrued interest is not due and payable in the current period and is not reported in the funds | (97,538) |
| Employee compensated absences are payable over a long period of years and do not represent a claim on current financial resources; therefore, they are not reported as fund liabilities | (4,493,463) |
| Workers' compensation liability is not included as a liability of the funds | (547,029) |
| General insurance liability is not included as a liability of the funds | (1,548,899) |
| **Net Assets of Governmental Activities** | **$ 39,028,227** |

The Notes to Financial Statements are an
Integral Part of this Statement.
13-53846-tjt Doc 5706-2 Filed 06/30/14 Entered 06/30/14 22:01:38 Page 16 of 106

# City of Dearborn Heights, Michigan

| | Corporate Fund | Major Streets Fund | Local Streets Fund | Nonmajor Funds | Total |
|---|---:|---:|---:|---:|---:|
| **Revenue** | | | | | |
| Property taxes | $ 19,478,952 | $ - | $ - | $ 1,075,777 | $ 20,554,729 |
| Licenses and permits | 1,409,632 | - | - | - | 1,409,632 |
| Federal grants | - | - | - | 2,272,535 | 2,272,535 |
| State-shared revenue and grants | 5,157,112 | 2,291,154 | 923,338 | 249,660 | 8,621,264 |
| Charges for services | 1,678,310 | - | - | - | 1,678,310 |
| Fines and forfeitures | 2,372,090 | - | - | 213,103 | 2,585,193 |
| Interest income | - | 1,953 | 1,631 | 9,134 | 12,718 |
| Other revenue: | | | | | |
| Cable revenue | 929,298 | - | - | - | 929,298 |
| Other miscellaneous income | 2,085,441 | - | 2,370 | 350,641 | 2,438,452 |
| Total revenue | 33,110,835 | 2,293,107 | 927,339 | 4,170,850 | 40,502,131 |
| **Expenditures** | | | | | |
| Current: | | | | | |
| General government | 8,457,307 | - | - | 297,809 | 8,755,116 |
| Drug enforcement | - | - | - | 346,735 | 346,735 |
| Public safety | 19,946,023 | - | - | - | 19,946,023 |
| Public works | 3,892,413 | 2,296,326 | 470,784 | - | 6,659,523 |
| Community and economic development | 107,823 | - | - | 1,173,695 | 1,281,518 |
| Library | - | - | - | 1,358,147 | 1,358,147 |
| Recreation and culture | 1,022,427 | - | - | - | 1,022,427 |
| Other capital outlay | - | - | - | 260,965 | 260,965 |
| Debt service | - | - | - | 761,703 | 761,703 |
| Total expenditures | 33,425,993 | 2,296,326 | 470,784 | 4,199,054 | 40,392,157 |
| **Excess of Revenue (Under) Over Expenditures** | (315,158) | (3,219) | 456,555 | (28,204) | 109,974 |
| **Other Financing Sources (Uses)** | | | | | |
| Transfers in (Note 6) | - | - | - | 216,063 | 216,063 |
| Transfers out (Note 6) | (216,063) | - | - | - | (216,063) |
| Total other financing (uses) sources | (216,063) | - | - | 216,063 | - |
| **Net Changes in Fund Balances** | (531,221) | (3,219) | 456,555 | 187,859 | 109,974 |
| **Fund Balances (Deficit)** - Beginning of year | (2,886,035) | 1,840,742 | 1,287,535 | 2,578,449 | 2,820,691 |
| **Fund Balances (Deficit)** - End of year | $ (3,417,256) | $ 1,837,523 | $ 1,744,090 | $ 2,766,308 | $ 2,930,665 |

The Notes to Financial Statements are an
Integral Part of this Statement.
13-53846-tjt    Doc 5706-2    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 17 of
106

# City of Dearborn Heights, Michigan

**Governmental Funds**
**Reconciliation of the Statement of Revenue, Expenditures,**
**and Changes in Fund Balances of Governmental Funds**
**to the Statement of Activities**
**Year Ended June 30, 2012**

| | | |
|---|---:|---:|
| **Net Change in Fund Balances - Total Governmental Funds** | $ | 109,974 |

Amounts reported for governmental activities in the statement of activities are different because:

Governmental funds report capital outlays as expenditures; however, in the statement of activities, these costs are allocated over their estimated useful lives as depreciation:

| | |
|---|---:|
| Capital outlay | 3,843,318 |
| Depreciation expense | (3,925,133) |
| Net book value of assets disposed of | (9,120) |

| | |
|---|---:|
| Deferred grant revenue is not recorded in the funds as not received in period of availability; this revenue is recorded as revenue when earned on the government-wide statements | (540,007) |
| Installment debt provides financial resources to governmental funds, but issuing debt increases long-term liabilities in the statement of net assets | (89,771) |
| Activity related to the joint venture is not required to be recorded in the governmental funds, but is recorded in the statement of activities | (2,388) |
| Repayment of bond principal and installment debt is an expenditure in the governmental funds, but not in the statement of activities (where it reduces long-term debt) | 593,616 |
| Governmental funds report interest expense based on amounts paid in cash during the fiscal year; in the statement of activities, interest expense is expensed based upon accrued expense | 1,304 |
| Decrease in accumulated employee sick and vacation pay and other similar expenses reported in the statement of activities do not require the use of current resources, and therefore are not reported in the fund statements until they come due for payment | 452,595 |
| The change in the net OPEB obligation is not included in the governmental funds | (5,942,254) |
| Decrease in estimated workers' compensation liability is recorded in the statement of activities | 245,254 |
| Increase in estimated general liability claims is recorded in the statement of activities | (220,102) |

| | | |
|---|---:|---:|
| **Change in Net Assets of Governmental Activities** | $ | **(5,482,714)** |

The Notes to Financial Statements are an
integral part of this Statement.
13-53846-tjt   Doc 5706-2   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 18 of
106

# City of Dearborn Heights, Michigan

| | Enterprise - Water and Sewer Fund |
|---|---:|
| **Assets** | |
| Current assets: | |
| Cash and cash equivalents (Note 3) | $ 1,444,022 |
| Customer receivables | 7,146,903 |
| Due from other funds (Note 6) | 28,007 |
| Inventory | 523,022 |
| Total current assets | 9,141,954 |
| Noncurrent assets: | |
| Restricted assets (Note 8) | 3,902,275 |
| Advances to other funds (Note 6) | 5,504,921 |
| Capital assets (Note 5) | 89,315,750 |
| Total noncurrent assets | 98,722,946 |
| Total assets | 107,864,900 |
| **Liabilities** | |
| Current liabilities: | |
| Accounts payable | 2,640,743 |
| Due to other governmental units | 183,298 |
| Due to other funds | 571,264 |
| Refundable deposits, bonds, etc. | 80,056 |
| Accrued liabilities and other | 188,433 |
| Current portion of compensated absences (Note 7) | 72,714 |
| Current portion of long-term debt (Note 7) | 2,979,925 |
| Total current liabilities | 6,716,433 |
| Noncurrent liabilities: | |
| Provision for compensated absences - Net of current portion (Note 7) | 290,856 |
| Net OPEB obligation (Note 13) | 1,638,922 |
| Long-term debt (Note 7) | 20,906,019 |
| Total noncurrent liabilities | 22,835,797 |
| Total liabilities | 29,552,230 |
| **Net Assets** | |
| Invested in capital assets - Net of related debt | 65,429,806 |
| Restricted: | |
| Debt service | 3,902,275 |
| Special levy | 6,788,960 |
| Unrestricted | 2,191,629 |
| Total net assets | $ 78,312,670 |

The Notes to Financial Statements are an Integral Part of this Statement.

# City of Dearborn Heights, Michigan

**Proprietary Funds**
**Statement of Revenue, Expenses, and Changes in Net Assets**
**Year Ended June 30, 2012**

|  | Enterprise - Water and Sewer Fund |
|---|---:|
| **Operating Revenue** | |
| Water and sewer services | $ 14,828,260 |
| Other operating revenue | 1,151,690 |
| Total operating revenue | 15,979,950 |
| **Operating Expenses** | |
| Water and sewage disposal charges | 8,053,598 |
| Transmission and distribution expense | 1,929,686 |
| Billing and administrative costs | 5,022,166 |
| Other operating expenses | 661,140 |
| Depreciation | 2,697,699 |
| Total operating expenses | 18,364,289 |
| **Operating Loss** | (2,384,339) |
| **Nonoperating Revenue (Expenses)** | |
| Property tax revenue | 3,102,727 |
| Interest earned on investments | 53,844 |
| Interest expense | (815,827) |
| Capital grants | 224,804 |
| Total nonoperating revenue | 2,565,548 |
| **Income** - Before contributions | 181,209 |
| **Capital Contributions** | 420,887 |
| **Change in Net Assets** | 602,096 |
| **Net Assets** - Beginning of year | 77,710,574 |
| **Net Assets** - End of year | $ 78,312,670 |

The Notes to Financial Statements are an integral Part of this Statement.

# City of Dearborn Heights, Michigan

| | Enterprise - Water and Sewer Fund |
|---|---:|
| **Cash Flows from Operating Activities** | |
| Receipts from customers | $ 14,809,559 |
| Other payments | (28,007) |
| Payments to suppliers | (12,993,850) |
| Payments to employees | (2,820,400) |
| Internal activity - Payments to other funds | 24,353 |
| Net cash used in operating activities | (1,008,345) |
| **Cash Flows from Noncapital Financing Activities** | |
| Operating grants and subsidies | 224,804 |
| Repayments of loans made to other funds | 995,079 |
| Net cash provided by noncapital financing activities | 1,219,883 |
| **Cash Flows from Capital and Related Financing Activities** | |
| Proceeds from property tax levy (restricted for debt service) | 3,102,727 |
| Purchase of capital assets | (969,774) |
| Principal and interest paid on long-term debt (direct payments by the City) | (2,965,277) |
| Net cash used in capital and related financing activities | (832,324) |
| **Cash Flows from Investing Activities** - Unrestricted interest received (directly by the City) on investments | 40,753 |
| **Net Decrease in Cash and Cash Equivalents** | (580,033) |
| **Cash and Cash Equivalents** - Beginning of year | 2,024,055 |
| **Cash and Cash Equivalents** - End of year | $ 1,444,022 |
| Total cash and cash equivalents | $ 1,444,022 |
| **Reconciliation of Operating Loss to Net Cash from Operating Activities** | |
| Operating loss | $ (2,384,339) |
| Adjustments to reconcile operating loss to net cash from operating activities: | |
| Depreciation | 2,697,699 |
| Changes in assets and liabilities: | |
| Receivables | (1,170,391) |
| Other assets | (28,007) |
| Deposits | (42,300) |
| Accounts payable | (395,956) |
| Due to other funds | 24,353 |
| Accrued liabilities and other | 290,596 |
| Net cash used in operating activities | $ (1,008,345) |

**Noncash Investing, Capital, and Financing Activities** - During the year ended June 30, 2012, the City received constructed water line improvements with a value of $420,887. Wayne County used $2,595,038 of deposits held on behalf of the City to retire debt and pay interest costs. The County issued new debt on behalf of the City in the amount of $1,795,789. The debt proceeds are being used for the construction of various improvements. Interest income totaling $13,091 was earned on funds held at Wayne County.

The Notes to Financial Statements are an Integral Part of this Statement.

# City of Dearborn Heights, Michigan

| | Pension and Other Employee Benefits | Agency Funds |
|---|---|---|
| **Assets** | | |
| Cash and cash equivalents (Note 3) | $ 5,140,100 | $ 516,473 |
| Investments (Note 3): | | |
| U.S. government securities | 5,363,538 | - |
| Derivatives | 28,369 | - |
| Common stock | 73,211,840 | - |
| Corporate bonds | 9,110,651 | - |
| Real estate | 2,606,145 | - |
| Limited partnerships | 351,440 | - |
| Mutual funds | 88,464,642 | - |
| Receivables: | | |
| Other receivables | 212,369 | - |
| Due from other governmental units | - | 25 |
| Total assets | 184,489,094 | $ 516,498 |
| **Liabilities** | | |
| Accounts payable | 108,363 | $ - |
| Due to other governmental units | 2,971,607 | 211,184 |
| Accrued liabilities and other | 305,893 | 305,314 |
| Collateral for securities lending (Note 3) | 7,038,371 | - |
| Total liabilities | 10,424,234 | $ 516,498 |
| **Net Assets Held in Trust for Pension and Other Employees' Benefits** | $ 174,064,860 | |

The Notes to Financial Statements are an
integral Part of this Statement.
13-53846-tjt    Doc 5706-2    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 22 of
106

# City of Dearborn Heights, Michigan

**Additions**

Investment income (loss):

| | |
|---|---:|
| Interest and dividends | $ 4,586,876 |
| Net decrease in fair value of investments | (4,894,682) |
| Total investment loss | (307,806) |

Contributions:

| | |
|---|---:|
| Employer | 5,791,307 |
| Employee | 964,657 |
| Total contributions | 6,755,964 |
| Total additions - Net | 6,448,158 |

**Deductions**

| | |
|---|---:|
| Benefit payments | 14,684,065 |
| Fringe benefits | 2,971,607 |
| Administrative expenses | 525,201 |
| Total deductions | 18,180,873 |

**Net Decrease in Net Assets Held in Trust** (11,732,715)

**Net Assets Held in Trust for Pension and Other Employee Benefits -**
Beginning of year                      185,797,575

**Net Assets Held in Trust for Pension and Other Employee Benefits -**
End of year                      $  174,064,860

The Notes to Financial Statements are an
Integral Part of this Statement.

# City of Dearborn Heights, Michigan

| | Tax Increment Finance Authority | Economic Development Corporation | Brownfield Redevelopment Authority | Total |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash and cash equivalents | $ 3,575,355 | $ - | $ 55,213 | $ 3,630,568 |
| Due from primary government | - | 790 | 150 | 940 |
| Prepaid expenses and other assets | 182 | - | - | 182 |
| Capital assets: | | | | |
| Assets not subject to depreciation (Note 5) | 2,767,640 | - | - | 2,767,640 |
| Assets subject to depreciation (Note 5) | 17,780,147 | - | - | 17,780,147 |
| Total assets | 24,123,324 | 790 | 55,363 | 24,179,477 |
| **Liabilities** | | | | |
| Accounts payable | 174,200 | - | 429 | 174,629 |
| Due to primary government | 4,320 | - | - | 4,320 |
| Accrued liabilities and other | 197,559 | - | - | 197,559 |
| Due within one year - Current portion of long-term debt | 835,000 | - | - | 835,000 |
| Due in more than one year - Long-term debt | 18,063,123 | - | - | 18,063,123 |
| Total liabilities | 19,274,202 | - | 429 | 19,274,631 |
| **Net Assets** | | | | |
| Invested in capital assets - Net of related debt | 1,649,664 | - | - | 1,649,664 |
| Unrestricted | 3,199,458 | 790 | 54,934 | 3,255,182 |
| Total net assets | $ 4,849,122 | $ 790 | $ 54,934 | $ 4,904,846 |

The Notes to Financial Statements are an Integral Part of this Statement.

# City of Dearborn Heights, Michigan

|  | Expenses | Operating Grants and Contributions | Net (Expense) Revenue and Changes in Net Assets — Tax Increment Finance Authority |
|---|---|---|---|
| **Functions/Programs** | | | |
| Tax Increment Finance Authority: | | | |
| Public safety | $ 498,344 | $ - | $ (498,344) |
| Public works | 987,943 | - | (987,943) |
| Community and economic development | 113,082 | - | (113,082) |
| Recreation and culture | 6,411 | - | (6,411) |
| Debt service | 1,114,539 | 257,200 | (857,339) |
| Total Tax Increment Finance Authority | 2,720,319 | 257,200 | (2,463,119) |
| Economic Development Corporation - Public works | - | - | - |
| Brownfield Redevelopment Authority - Public works | 66,114 | - | - |
| Total component units | $ 2,786,433 | $ 257,200 | (2,463,119) |
| General revenue: | | | |
| Property taxes | | | 2,904,840 |
| Investment income | | | 9,425 |
| Total general revenue | | | 2,914,265 |
| **Change in Net Assets** | | | 451,146 |
| **Net Assets** - Beginning of year | | | 4,397,976 |
| **Net Assets** - End of year | | | $ 4,849,122 |

The Notes to Financial Statements are an Integral Part of this Statement.

13-53846-tjt   Doc 5706-2   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 25 of 106

| | Net (Expense) Revenue and Changes in Net Assets | | |
| --- | --- | --- | --- |
| | Economic Development Corporation | Brownfield Redevelopment Authority | Total |
| $ - | $ - | $ (498,344) |
| | - | - | (987,943) |
| | - | - | (113,082) |
| | - | - | (6,411) |
| | - | - | (857,339) |
| | - | - | (2,463,119) |
| | - | - | - |
| | - | (66,114) | (66,114) |
| | - | (66,114) | (2,529,233) |
| | - | 32,366 | 2,937,206 |
| | - | - | 9,425 |
| | - | 32,366 | 2,946,631 |
| | - | (33,748) | 417,398 |
| | 790 | 88,682 | 4,487,448 |
| $ 790 | $ 54,934 | $ 4,904,846 |

# City of Dearborn Heights, Michigan

## Note I - Nature of Business and Significant Accounting Policies

The accounting policies of the City of Dearborn Heights, Michigan (the "City") conform to accounting principles generally accepted in the United States of America (GAAP) as applicable to governmental units. The following is a summary of the significant accounting policies used by the City of Dearborn Heights, Michigan:

<u>Reporting Entity</u>

The City of Dearborn Heights, Michigan is governed by an elected seven-member council (board). The accompanying financial statements present the City and its component units, entities for which the City is considered to be financially accountable. Although blended component units are legal separate entities, in substance, they are part of the City's operations. Each discretely presented component unit is reported in a separate column in the government-wide financial statements to emphasize that it is legally separate from the City (see discussion below for description).

**Blended Component Units** - The City Building Authority is governed by a board appointed by the City Council. Although it is legally separate from the City, the Building Authority is reported as if it were part of the primary government because its sole purpose is to finance and construct the City's public buildings. The Building Authority does not have separately issued financial statements.

**Discretely Presented Component Units** - The following component units are reported within the component units column to emphasize that they are legally separate from the City.

(a) The Tax Increment Finance Authority (TIFA) was formed under Act 450 of the Public Acts of 1980 to develop south Dearborn Heights. A development plan was adopted that is financed by property tax revenue. The TIFA's governing body, which consists of 11 individuals, is appointed by the mayor. Separately issued financial statements for the TIFA can be obtained at 25637 Michigan Avenue, Dearborn Heights, Michigan 48125.

(b) The Economic Development Corporation (the "Corporation") was created to provide means and methods for the encouragement and assistance of industrial and commercial enterprises in relocating, purchasing, constructing, improving, or expanding within the City so as to provide needed services and facilities of such enterprises to the residents of the City. The Corporation's governing body, which consists of four individuals, is appointed by the mayor. This entity had no activity in the current year and does not have separately issued financial statements.

## Note I - Nature of Business and Significant Accounting Policies (Continued)

(c) The Brownfield Authority (the "Authority") was created to identify and assist in the redevelopment of abandoned, underutilized, or contaminated parcels of property located in Dearborn Heights. The Authority's governing body, which consists of 11 individuals, is comprised of the Tax Increment Finance Authority's board members. Currently, the Authority is in the preliminary stages of development and does not have separately issued financial statements.

**Jointly Governed Organization** - The City is a member of the Central Wayne County Sanitation Authority (the "Sanitation Authority") and has appointed one member to the joint venture's governing board. The Sanitation Authority provides household refuse disposal services primarily for the benefit of constituents in the member municipalities. During the current fiscal year, the City contributed approximately $675,000 for sanitation costs passed through the Sanitation Authority, which is reported in the Corporate Fund's expenditures. In addition, the City has recorded a net deficit related to the Sanitation Authority of $5,251 in the government-wide statement of net assets (amount recorded represents the City's portion of the Sanitation Authority's net deficit). Complete financial statements for the Sanitation Authority can be obtained from the administrative offices at 3759 Commerce Court, Wayne, MI 48184.

### Government-wide and Fund Financial Statements

The government-wide financial statements (i.e., the statement of net assets and the statement of activities) report information on all of the nonfiduciary activities of the primary government and its component units. For the most part, the effect of interfund activity has been removed from these statements. Governmental activities, normally supported by taxes and intergovernmental revenue, are reported separately from business-type activities, which rely to a significant extent on fees and charges for support. Likewise, the primary government is reported separately from certain legally separate component units for which the primary government is financially accountable.

The statement of activities demonstrates the degree to which the direct expenses of a given function or segment are offset by program revenue. Direct expenses are those that are clearly identifiable with a specific function or segment. Program revenue includes (1) charges to customers or applicants who purchase, use, or directly benefit from goods, services, or privileges provided by a given function or segment and (2) grants and contributions that are restricted to meeting the operational or capital requirements of a particular function or segment. Taxes and other items not properly included among program revenue are reported instead as general revenue.

Separate financial statements are provided for governmental funds, proprietary funds, and fiduciary funds, even though the latter are excluded from the government-wide financial statements. Major individual governmental funds and major individual enterprise funds are reported as separate columns in the fund financial statements.

## Note 1 – Nature of Business and Significant Accounting Policies (Continued)

### Measurement Focus, Basis of Accounting, and Financial Statement Presentation

The government-wide financial statements are reported using the economic resources measurement focus and the accrual basis of accounting, as are the proprietary fund, fiduciary fund, and component unit financial statements. Revenue is recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of related cash flows. Property taxes are recognized as revenue in the year for which they are levied. Grants and similar items are recognized as revenue as soon as all eligibility requirements imposed by the provider have been met.

Governmental fund financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenue is recognized as soon as it is both measurable and available. Revenue is considered to be available if it is collected within the current period or soon enough thereafter to pay liabilities of the current period. For this purpose, the government considers revenue to be available if it is collected within 60 days of the end of the current fiscal period. Expenditures generally are recorded when a liability is incurred, as under accrual accounting. However, debt service expenditures, expenditures relating to compensated absences, and claims and judgments are recorded only when payment is due.

Revenue is recognized in the accounting period in which it becomes both measurable and available to finance expenditures of the fiscal period. Major revenue types for which receivables are recorded on the current accounting period's balance sheet include property taxes and state-shared revenue. All other revenue items are considered to be available only when cash is received by the City.

The City reports the following major governmental funds:

**Corporate Fund** - The Corporate Fund is the City's primary operating fund. It accounts for all financial resources of the general government, except those required to be accounted for in another fund.

**Major Streets Fund** - The Major Streets Fund is a special revenue fund that accounts for revenue received from gasoline tax through the State of Michigan under Act 51. Expenditures of this fund include the maintenance of major streets, as well as improvement of roadways and related financing expenditures.

**Local Streets Fund** - The Local Streets Fund is a special revenue fund that accounts for revenue received from gasoline tax through the State of Michigan under Act 51. Expenditures of this fund include the maintenance of local streets, as well as improvement of roadways and related financing expenditures.

# City of Dearborn Heights, Michigan

## Note 1 - Nature of Business and Significant Accounting Policies (Continued)

The City reports the following major proprietary fund:

**Water and Sewer Fund** - The Water and Sewer Fund is the City's only major proprietary fund. It accounts for the activities of the water distribution system and sewage collection system.

Additionally, the City reports the following fiduciary activities:

**Pension Trust Funds** - The pension trust funds account for the activities of the police and fire employees' retirement system and general employees' retirement system, which accumulate resources for pension benefit payments to qualified employees.

**Agency Fund** - The Agency Fund accounts for deposits of monies held by the City government in a trustee capacity or as an agent for individuals, private organizations, other governments, and/or other funds.

**20th District Court Fund** - This fund accounts for monies collected by the court related to fines and bonds that are subsequently returned or distributed to the City as the district control unit, the County, and the State of Michigan.

Private sector standards of accounting issued prior to December 1, 1989 are generally followed in both the government-wide and proprietary fund financial statements to the extent that those standards do not conflict with the standards of the Governmental Accounting Standards Board. The government has elected not to follow private sector standards issued after November 30, 1989 for its business-type activities.

The effect of interfund activity has been eliminated from the government-wide financial statements, except for such activity between the governmental and business-type funds. Eliminations of these charges would distort the direct costs and program revenue reported for the various functions concerned.

Amounts reported as program revenue include (1) charges to customers or applicants for goods, services, or privileges provided, (2) operating grants and contributions, and (3) capital grants and contributions, including special assessments. Internally dedicated resources are reported as general revenue rather than as program revenue. Likewise, general revenue includes all taxes.

When an expense is incurred for purposes for which both restricted and unrestricted net assets or fund balance are available, the City's policy is to first apply restricted resources. When an expense is incurred for purposes for which amounts in any of the unrestricted fund balance classifications could be used, it is the City's policy to spend funds in this order: committed, assigned, and unassigned.

# City of Dearborn Heights, Michigan

## Note 1 - Nature of Business and Significant Accounting Policies (Continued)

Proprietary funds distinguish operating revenue and expenses from nonoperating items. Operating revenue and expenses generally result from providing services in connection with a proprietary fund's principal ongoing operations. The principal operating revenue of our proprietary funds relates to charges to customers for services. Operating expenses for proprietary funds include the cost of services, administrative expenses, and depreciation on capital assets. All revenue and expenses not meeting this definition are reported as nonoperating revenue and expenses.

Property tax receivables are shown as net of allowance for uncollectible amounts. Property taxes are levied on each July 1 on the taxable valuation of property as of the preceding December 31. Taxes are considered delinquent on March 1 of the following year, at which time penalties and interest are assessed.

The 2010 taxable valuation of the City approximated $1.185 billion (a portion of which is captured by the TIFA), on which taxes levied consisted of 6.3240 mills for operating purposes, 1.4875 mills for public safety expenditures, 0.7436 mills for solid waste expenditures, 6.1000 mills for Act 345 contributions, 2.2316 mills for sanitation expenditures, 0.9188 mills for library operations and debt service, 1.2500 mills for CSO debt service, and 1.5776 mills for EPA debt service. This resulted in approximately $7,478,000 for operating, $1,759,000 for public safety expenditures, $879,000 for solid waste expenditures, $7,213,000 for Act 345 contributions (used for pension and retiree health care and other benefits), $2,639,000 for sanitation expenditures, $1,086,000 for library operations and debt service, $1,478,000 for CSO debt service, and $1,865,000 for EPA debt service. These amounts are recognized in the financial statements as tax revenue, net of administrative fees and amounts captured by the TIFA, plus collection of delinquent tax revenue.

### Assets, Liabilities, and Net Assets or Equity

**Bank Deposits and Investments** - Cash and cash equivalents include cash on hand, demand deposits, and short-term investments with a maturity of three months or less when acquired. Investments are stated at fair value.

**Receivables and Payables** - In general, outstanding balances between funds are reported as "due to/from other funds." Activity between funds that are representative of lending/borrowing arrangements outstanding at the end of the fiscal year is referred to as "advances to/from other funds." Any residual balances outstanding between the governmental activities and the business-type activities are reported in the government-wide financial statements as "internal balances."

# City of Dearborn Heights, Michigan

## Note 1 – Nature of Business and Significant Accounting Policies (Continued)

### Property Tax Revenue

**Inventories and Prepaid Items** - Inventories are valued at cost, on a first-in, first-out basis. Inventories of governmental funds are recorded as expenditures when consumed rather than when purchased. Certain payments to vendors reflect costs applicable to future fiscal years and are recorded as prepaid items in both government-wide and fund financial statements.

**Restricted Assets** - Restricted assets consist of deposits at the county being held for the construction and debt service of the City's sewer lines. The restricted assets result mainly from the issuance of debt and net assets have been reserved for restricted assets. Within the capital projects governmental fund, restricted assets relate to unspent bond proceeds from a prior year's issuance.

**Capital Assets** - Capital assets, which include property, plant, equipment, intangible assets, and infrastructure assets (e.g., roads, bridges, sidewalks, and similar items), are reported in the applicable governmental or business-type activities column in the government-wide financial statements. Capital assets are defined by the City as assets with an initial individual cost of more than $5,000 and an estimated useful life in excess of one year. Such assets are recorded at historical cost or estimated historical cost if purchased or constructed and a 10 percent salvage value is assumed. Donated capital assets are recorded at estimated fair market value at the date of donation.

Buildings, equipment, and vehicles are depreciated using the straight-line method over the following useful lives:

| | |
|---|---:|
| Roads, sidewalks, and street signs | 10 to 20 years |
| Water systems | 50 to 75 years |
| Sewer systems | 40 to 50 years |
| Buildings and building improvements | 50 years |
| Machinery, furniture, equipment, and vehicles | 5 to 15 years |
| Library books | 3 years |

**Compensated Absences (Vacation and Sick Leave)** - It is the City's policy to permit employees to accumulate earned but unused sick and vacation pay and longevity benefits. All vacation pay is accrued when incurred in the government-wide and proprietary fund financial statements. A liability for these amounts is reported in the fund financial statements only for employee terminations as of year end.

# City of Dearborn Heights, Michigan

## Note 1 - Nature of Business and Significant Accounting Policies (Continued)

**Long-term Obligations** - In the government-wide financial statements and the proprietary fund types in the fund financial statements, long-term debt and other long-term obligations are reported as liabilities in the applicable governmental activities, business-type activities, or proprietary fund-type statement of net assets. Bond premiums and discounts, as well as issuance costs, are deferred and amortized over the life of the bonds using the effective interest method. Bonds payable are reported net of the applicable bond premium or discount. Bond issuance costs are reported as deferred charges and amortized over the term of the related debt. In the fund financial statements, governmental fund types recognize bond premiums and discounts, as well as bond issuance costs during the current period. The face amount of debt issued is reported as other financing sources. Premiums received on debt issuances are reported as other financing sources while discounts are reported as other financing uses. Issuance costs are reported as debt service expenditures.

**Pension and Other Postemployment Benefit Costs** - The City offers both pension and retiree healthcare benefits to retirees. The City receives an actuarial valuation to compute the annual required contribution (ARC) necessary to fund the obligation over the remaining amortization period. In the governmental funds, pension and OPEB costs are recognized as contributions are made. For the government-wide statements and proprietary funds, the City reports the full accrual cost equal to the current year required contribution, adjusted for interest and "adjustment to the ARC" on the beginning of year underpaid amount, if any.

**Fund Balance** - In the fund financial statements, governmental funds report the following components of fund balance:

- Nonspendable - Amounts that are not in spendable form or are legally or contractually required to be maintained intact

- Restricted - Amounts that are legally restricted by outside parties, constitutional provisions, or enabling legislation for use for a specific purpose

- Committed - Amounts that have been formally set aside by the governing body for use for specific purposes. Commitments are made and can be rescinded only via resolution of the City Council.

- Assigned - Intent to spend resources on specific purposes expressed by the governing body to make assignments.

- Unassigned - All other amounts, available for any purpose

## Note 1 - Nature of Business and Significant Accounting Policies (Continued)

**Use of Estimates** - The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenue and expenses during the period. Actual results could differ from those estimates.

## Note 2 - Stewardship, Compliance, and Accountability

**Budgetary Information** - Annual budgets are adopted for the Corporate Fund, Community Development Block Grant Fund, and the Major and Local Streets Funds on an activity basis. The State Budget Act requires that budgets be adopted for all special revenue funds.

The City does not adopt budgets for all special revenue funds.

The budgets have been prepared in accordance with accounting principles generally accepted in the United States of America, with the following exceptions:

- Operating transfers have been included in "revenue" and "expenditure" categories, rather than "other financing sources (uses)."

- Reimbursements from other funds have been included in revenue, rather than a reduction of expenditures.

Any expenditures that exceed the budget must be approved by the City Council through a budget amendment. The City Council approves all budget amendments. All annual appropriations lapse at fiscal year end; encumbrances are not included as expenditures. The amount of encumbrances outstanding at June 30, 2012 has not been calculated.

The budget process begins in December and January with the comptroller's office budgeting the personnel and fringe benefits expense for all City employees and providing each department with a budget form to be completed by the department head. These forms are due back to the comptroller's office by late January. The comptroller's office then analyzes these amounts and calculates the total budget.

In February, the mayor's office schedules meetings with all major departments to review their proposed budget and the budget is adjusted accordingly.

In late February and early March, the comptroller's office reviews the budget to verify that it balances. At this time, the mayor's office reschedules all major departments to complete a final review of the departmental budgets. After the final review, the comptroller's office organizes the final proposed budget to deliver to the City Council. The City Charter requires that the City Council receive the proposed budget by April 1.

# City of Dearborn Heights, Michigan

## Note 2 - Stewardship, Compliance, and Accountability (Continued)

During April and May, the City Council reviews the budget with the department heads. City Council meetings, held in April and May, provide all interested citizens an open forum where their concerns can be heard. Upon review and a subsequent public hearing, the City Council adopts the proposed budget by resolution.

The budget must be adopted by the City Council by the first Monday in June. After the budget has been adopted, all budget amendments must be approved by the City Council.

Significant budget variance compared to actual expenditures is as follows:

|  | Budget | Actual | Variance |
|---|---|---|---|
| Corporate Fund - Data processing | $ 95,000 | $ 147,215 | $ (52,215) |
| Corporate Fund - Sanitation | 3,400,000 | 3,451,143 | (51,143) |
| Major Streets Fund - Street maintenance | 1,741,000 | 1,830,406 | (89,406) |

The excess of expenditures over the budgeted amounts in the current year noted above are due to the following: Within the Corporate Fund, new software was purchased in the current year (although there was a corresponding revenue for the purchase, the budget was not adjusted). Additionally, planned decreases in expenditures related to sanitation did not occur until fiscal year 2013. Lastly, related to streets maintenance, there was more work done than anticipated due to street repairs needed in conjunction with water main repairs.

**Fund Deficits** - As of the year ended June 30, 2012, the City has a fund deficit in the following governmental funds: Corporate (General) Fund in the amount of $3,417,256 (with an unrestricted deficit of $5,577,335 as a result of funds held within the Corporate Fund that are legally restricted for specific purpose) and the Community Development Block Grant Fund (CDBG) in the amount of $6,915. The deficit in the General Fund relates to continued declining property tax and other revenue, adversely impacting the City's main operating fund. The City developed a deficit elimination plan which was filed with the State and has implemented various cost-cutting measures to address the deficit. The deficit in the CDBG fund is the direct result of the City not being able to receive its grant reimbursement within the 60-day availability period subsequent to year end. As such, this amount was deferred at year end and will be recognized during the fiscal year ending June 30, 2013 when the money is received, at which point the deficit will be eliminated. As of the date of this report, the CDBG reimbursement was received and the deficit in that fund has been eliminated.

# City of Dearborn Heights, Michigan

## Note 2 - Stewardship, Compliance, and Accountability (Continued)

**Construction Code Fees** - The City oversees building construction, in accordance with the State's Construction Code Act, including inspection of building construction and renovation to ensure compliance with the building codes.  The City charges fees for these services.  Beginning January 1, 2000, the law requires that collection of these fees be used only for construction code costs, including an allocation of estimated overhead costs.  A summary of the current year activity is as follows:

| | | |
|---|---:|---:|
| Shortfall at July 1, 2011 | | $ (1,143,957) |
| Current year permit revenue | | 685,401 |
| Related expenses: | | |
| Direct costs | $ 474,295 | |
| Estimated indirect costs | 118,574 | 592,869 |
| Current year surplus | | 92,532 |
| Cumulative shortfall at June 30, 2012 | | $ (1,051,425) |

## Note 3 - Deposits and Investments

Michigan Compiled Laws Section 129.91 (Public Act 20 of 1943, as amended) authorizes local governmental units to make deposits and invest in the accounts of federally insured banks, credit unions, and savings and loan associations that have offices in Michigan.  The local unit is allowed to invest in bonds, securities, and other direct obligations of the United States or any agency or instrumentality of the United States; repurchase agreements; bankers' acceptances of United States banks; commercial paper rated within the two highest classifications, which matures not more than 270 days after the date of purchase; obligations of the State of Michigan or its political subdivisions, which are rated as investment grade; and mutual funds composed of investment vehicles that are legal for direct investment by local units of government in Michigan.

The pension trust funds are also authorized by Michigan Public Act 314 of 1965, as amended, to invest in certain reverse repurchase agreements, stocks, diversified investment companies, annuity investment contracts, real estate leased to public entities, mortgages, real estate (if the trust fund's assets exceed $250 million), debt or equity of certain small businesses, certain state and local government obligations, and certain other specified investment vehicles.

The City has designated six banks for the deposit of its funds.  The investment policy adopted by the board in accordance with Public Act 196 of 1997 has authorized investment in all of the above investments.  The City's deposits and investment policies are in accordance with statutory authority.

# City of Dearborn Heights, Michigan

## Note 3 - Deposits and Investments (Continued)

As permitted by state statutes, and under the provisions of a Securities Lending Authorization Agreement, the Police and Fire Pension System Trust Fund lends securities to broker-dealers and banks for collateral that will be returned for the same securities in the future. The pension system's custodial bank manages the securities lending program and received cash, government securities, or irrevocable bank letters of credit as collateral. Borrowers are required to deliver collateral for each loan equal to not less than 100 percent of the market value of the loaned securities. During the year ended June 30, 2012, only United States currency was received as collateral.

The fire and police pension system did not impose any restrictions during the fiscal year on the amount of loans made on its behalf by the custodial bank. There were no failures by any borrowers to return loaned securities or pay distributions thereon during the fiscal year. Moreover, there were no losses during the fiscal year resulting from a default of the borrowers or the custodial bank.

The fire and police pension system and the borrower maintained the right to terminate all securities lending transactions on demand. The cash collateral received on each loan was invested, together with the cash collateral of other lenders, in an investment pool. Because these loans are terminable on demand, their duration does not generally match the maturity date of investments made with cash collateral. See interest rate risk and credit risk disclosures in the subsequent pages related to the cash collateral pool. The aggregate collateral held and the fair value of the underlying securities on loan for the fire and police pension system as of June 30, 2012 was $7,021,599 and $7,038,371, respectively.

The City's cash and investments are subject to several types of risk, which are examined in more detail below:

**Custodial Credit Risk of Bank Deposits** - Custodial credit risk is the risk that in the event of a bank failure, the City's deposits may not be returned to it. The City does not have a deposit policy for custodial credit risk. At year end, the City had $3,657,992 of bank deposits (certificates of deposit, checking, and savings accounts), of which $3,045,193 was uninsured and uncollateralized. Of the total bank deposits, $86,775 relates to TIFA accounts; however, for purposes of FDIC coverage, the component units are combined with that of the City. The City believes that due to the dollar amounts of cash deposits and the limits of FDIC insurance, it is impractical to insure all deposits. As a result, the City evaluates each financial institution with which it deposits funds and assesses the level of risk of each institution; only those institutions with an acceptable estimated risk level are used as depositories.

# City of Dearborn Heights, Michigan

## Note 3 - Deposits and Investments (Continued)

**Interest Rate Risk** - Interest rate risk is the risk that the value of investments will decrease as a result of a rise in interest rates. The City's investment policy does not restrict investment maturities, other than commercial paper which can only be purchased with a 270-day maturity. At year end, the average maturities of investments are as follows:

| Primary Government | Fair Value ($000s) | Less than 1 Year | 1-5 Years | 6-10 Years | More than 10 Years |
|---|---|---|---|---|---|
| Corporate asset-backed securities (pension) | $ 1,500 | $ - | $ 301 | $ 828 | $ 371 |
| Corporate bonds (pension) | 7,451 | 445 | 3,100 | 2,424 | 1,482 |
| Foreign bonds (pension) | 60 | 60 | - | - | - |
| Municipal (pension) | 98 | - | - | 98 | - |
| U.S. government agency | 833 | - | 833 | - | - |
| U.S. government collateralized mortgage obligations (pension) | 80 | - | - | 80 | - |
| U.S. government mortgage-backed securities (pension) | 1,285 | 55 | 1 | 164 | 1,065 |
| U.S. government treasuries, notes, and bonds (pension) | 3,165 | - | - | 1,021 | 2,144 |
| Pooled investment | 1,957 | 1,957 | - | - | - |
| Collateral pool | 6,890 | 6,890 | - | - | - |
| Total | $ 23,319 | $ 9,407 | $ 4,235 | $ 4,615 | $ 5,062 |

**Credit Risk** - State law limits investments in commercial paper to the top two ratings issued by nationally recognized statistical rating organizations. The City has no investment policy that would further limit its investment choices. As of year end, the credit quality ratings of debt securities (other than the U.S. government) are as follows:

| Investment | Fair Value ($000s) | Rating | Rating Organization |
|---|---|---|---|
| **Primary Government** | | | |
| Pooled investments | $ 1,957 | A1 | Moody's |
| Corporate asset-backed securities (pension) | 1,130 | AAA | S&P |
| Corporate asset-backed securities (pension) | 370 | AA | S&P |
| Corporate bonds (pension) | 625 | AAA | S&P |
| Corporate bonds (pension) | 1,418 | AA | S&P |
| Corporate bonds (pension) | 4,996 | A | S&P |
| Corporate bonds (pension) | 412 | BBB | S&P |
| Foreign bonds (pension) | 60 | A | S&P |
| Municipal | 98 | AA | S&P |
| U.S. government agency (pension) | 833 | AA | S&P |
| U.S. government collateralized mortgage obligations (pension) | 80 | Not rated | |
| U.S. government mortgage-backed securities (pension) | 1,285 | Not rated | |
| Collateral pool | 6,890 | Aaa | Moody's |
| Mutual funds (pension) | 3,165 | Not rated | |
| Total | $ 23,319 | | |

# City of Dearborn Heights, Michigan

## Note 3 - Deposits and Investments (Continued)

At year end, the City's component units had approximately $2,557,000 held in an investment pool with a credit rating by Moody's of A1. The component unit also has commercial paper totaling approximately $1,000,000 with a credit ratings of A2 (also rated by Moody's).  All investments held by the component unit have maturities of less than a year.

**Foreign Currency Risk** - Foreign currency risk is the risk that an investment denominated in the currency of a foreign country could reduce its U.S. dollar value as a result of changes in foreign currency exchange rates.  The pension system does not restrict the amount of investments in foreign currency.  As of year end, the pension system had approximately $18,242,000 invested in investments denominated in various foreign currencies whose underlying investments are subject, in part, to foreign currency risk.

## Note 4 - Deferred Revenue

Governmental funds report deferred revenue in connection with receivables for revenue that is not considered to be available to liquidate liabilities of the current period. Governmental funds also defer revenue recognition in connection with resources that have been received but not yet earned. At the end of the current fiscal year, all governmental fund deferred revenue recorded related to grant activity and was unavailable.

# City of Dearborn Heights, Michigan

## Note 5 - Capital Assets

Capital asset activity of the City's governmental and business-type activities was as follows:

| | Balance July 1, 2011 | Transfers | Additions | Disposals | Balance June 30, 2012 |
|---|---|---|---|---|---|
| **Governmental Activities** | | | | | |
| Capital assets not being depreciated - Land | $ 6,650,050 | $ - | $ - | $ - | $ 6,650,050 |
| | | | | | |
| Capital assets being depreciated: | | | | | |
| Roads, sidewalks, and street signs | 79,770,442 | - | 3,743,397 | - | 83,513,839 |
| Buildings and improvements | 25,923,996 | - | - | - | 25,923,996 |
| Machinery, equipment, and vehicles | 11,349,291 | - | 99,921 | 20,845 | 11,428,367 |
| Library books | 2,707,000 | - | - | - | 2,707,000 |
| Subtotal | 119,750,729 | - | 3,843,318 | 20,845 | 123,573,202 |
| | | | | | |
| Accumulated depreciation: | | | | | |
| Roads, sidewalks, and street signs | 28,431,952 | - | 3,010,511 | - | 31,442,463 |
| Buildings and improvements | 6,632,853 | - | 446,657 | - | 7,079,510 |
| Machinery, equipment, and vehicles | 8,682,824 | - | 467,965 | 11,725 | 9,139,064 |
| Library books | 2,436,300 | - | - | - | 2,436,300 |
| Subtotal | 46,183,929 | - | 3,925,133 | 11,725 | 50,097,337 |
| | | | | | |
| Net capital assets being depreciated | 73,566,800 | - | (81,815) | 9,120 | 73,475,865 |
| | | | | | |
| Net capital assets | $ 80,216,850 | $ - | $ (81,815) | $ 9,120 | $ 80,125,915 |

## Note 5 - Capital Assets (Continued)

| | Balance July 1, 2011 | Additions | Disposals | Balance June 30, 2012 |
|---|---|---|---|---|
| **Business-type Activities** | | | | |
| Capital assets not being depreciated: | | | | |
| Land | $ 3,498,826 | $ 1,007,158 | $ - | $ 4,505,984 |
| Construction in progress | 81,555 | 116,952 | - | 198,507 |
| Subtotal | 3,580,381 | 1,124,110 | - | 4,704,491 |
| Capital assets being depreciated: | | | | |
| Water system | 23,223,915 | 607,472 | (60,747) | 23,770,640 |
| Sewer system | 97,550,377 | 623,599 | (52,560) | 98,121,416 |
| Buildings and improvements | 786,709 | - | - | 786,709 |
| Equipment, vehicles, furniture, and fixtures | 5,651,672 | 140,635 | - | 5,792,307 |
| Subtotal | 127,212,673 | 1,371,706 | (113,307) | 128,471,072 |
| Accumulated depreciation: | | | | |
| Water system | 9,491,568 | 464,826 | (60,747) | 9,895,647 |
| Sewer system | 26,439,826 | 1,938,448 | (52,560) | 28,325,714 |
| Buildings and improvements | 419,378 | 12,039 | - | 431,417 |
| Equipment, vehicles, furniture, and fixtures | 4,924,649 | 282,386 | - | 5,207,035 |
| Subtotal | 41,275,421 | 2,697,699 | (113,307) | 43,859,813 |
| Net capital assets being depreciated | 85,937,252 | (1,325,993) | - | 84,611,259 |
| Net capital assets | $ 89,517,633 | $ (201,883) | $ - | $ 89,315,750 |

| | Balance July 1, 2011 | Additions | Disposals | Balance June 30, 2012 |
|---|---|---|---|---|
| **Component Units** | | | | |
| Capital assets not being depreciated - Land | $ 2,767,640 | $ - | $ - | $ 2,767,640 |
| Capital assets being depreciated: | | | | |
| Roads | 5,000,000 | - | - | 5,000,000 |
| Buildings and improvements | 21,584,258 | 205,576 | - | 21,789,834 |
| Subtotal | 26,584,258 | 205,576 | - | 26,789,834 |
| Accumulated depreciation: | | | | |
| Roads and sidewalks | 3,400,000 | 200,000 | - | 3,600,000 |
| Buildings and improvements | 4,951,804 | 457,883 | - | 5,409,687 |
| Subtotal | 8,351,804 | 657,883 | - | 9,009,687 |
| Net capital assets being depreciated | 18,232,454 | (452,307) | - | 17,780,147 |
| Net capital assets | $ 21,000,094 | $ (452,307) | $ - | $ 20,547,787 |

## Note 5 - Capital Assets (Continued)

Depreciation expense was charged to programs of the primary government as follows:

| | | |
|---|---|---:|
| Governmental activities: | | |
| General government | $ | 446,657 |
| Public safety | | 467,965 |
| Public works | | 3,010,511 |
| Total governmental activities | $ | 3,925,133 |
| Business-type activities - Water and sewer | $ | 2,697,699 |
| Component unit activities - TIFA | $ | 657,883 |

**Construction Commitments** - The City has an active construction project at year end that is being administered through Wayne County. The County has a contractual obligation with a third party for the construction work and the City has a contractual commitment with the County. The project is for the Ecorse Creek Pollution Abatement Improvements (District No. 1) and involves multiple communities. The project is being funded through a State Revolving Fund loan. At year end, the City's outstanding commitments with the County for this project total approximately $169,000.

## Note 6 - Interfund Receivables, Payables, and Transfers

The composition of interfund balances is as follows:

| Receivable Fund | Payable Fund | Amount |
|---|---|---:|
| **Due to/from Other Funds** | | |
| Corporate Fund | Water and Sewer Fund | $ 571,264 |
| | Major Streets Fund | 165,562 |
| | Local Streets Fund | 31,970 |
| | Miscellaneous Grants Fund | 643,733 |
| | CDBG Fund | 139,014 |
| | Housing Rehab | 2 |
| | Traffic Immobilization | 1,600 |
| | Library Fund | 67,301 |
| | Total Corporate Fund | 1,620,446 |
| Water and Sewer Fund | Miscellaneous Grants Fund | 28,007 |
| Other nonmajor governmental funds | Corporate Fund | 1,314,444 |
| | CDBG Fund | 6,915 |
| | Total other nonmajor governmental funds | 1,321,359 |
| | Total | $ 2,969,812 |

## Note 6 - Interfund Receivables, Payables, and Transfers (Continued)

| Receivable Fund | Payable Fund | Amount |
|---|---|---|
| **Advances from/to Other Funds** | | |
| Water and Sewer Fund | Corporate Fund | $ 5,504,921 |
| Major Streets Fund | Corporate Fund | 1,200,119 |
| Local Streets Fund | Corporate Fund | 1,200,062 |
| | Total | $ 7,905,102 |

**Due to/from** - These balances result from the time lag between the dates that goods and services are provided or reimbursable expenditures occur, transactions are recorded in the accounting system, and payments between funds are made.

**Advance** - The above interfund advances relate to interfund loans from the Water and Sewer Fund, Major Streets Fund, and Local Streets Fund to the Corporate Fund. The amounts outstanding at year end represent the original principal loan amount plus accrued interest. The loan is payable at an interest rate of .25 percent (current prevailing investment rate earned in the Water and Sewer Fund, Major Streets Fund, and Local Streets Fund). All principal and interest outstanding on these loans were fully paid by September 2012.

**Interfund Transfers** - The Corporate Fund transferred $216,063 to the Fire Station Bonds nonmajor debt service fund for current year debt service payments.

**Transactions Between the Primary Government and Component Units** - The Building Authority nonmajor special revenue fund contributed $257,200 to the TIFA component unit for current year debt service payments. The TIFA component unit contributed $231,351 to the library nonmajor special revenue fund for current year debt service payments. See Note 5 for additional information regarding transactions between the TIFA component unit and the primary government related to capital assets.

## Note 7 - Long-term Debt

The City issues bonds to provide for the acquisition and construction of major capital facilities. General obligation bonds are direct obligations and pledge the full faith and credit of the City. County contractual agreements and installment purchase agreements are also general obligations of the government. Special assessment bonds provide for capital improvements that benefit specific properties, and will be repaid from amounts levied against those properties benefited from the construction. In the event that a deficiency exists because of unpaid or delinquent special assessments at the time a debt service payment is due, the City is obligated to provide resources to cover the deficiency until other resources (such as tax sale proceeds or a reassessment of the City) are received. Revenue bonds involve a pledge of specific income derived from the acquired or constructed assets to pay debt service.

## Note 7 - Long-term Debt (Continued)

The below general obligation bonds and contractual obligations of the business-type activities are the result of the County issuing bonds on the City's behalf. The City has pledged property taxes, to the extent permitted by law, to fund the obligations to repay the County. Proceeds from obligations provided financing for the construction of the various water and sewer improvements. The remaining principal and interest to be paid on the obligations total approximately $24,260,500. During the current year, net property tax revenue of the system was approximately $3,100,000 compared to the annual debt requirements of approximately $3,243,200.

Long-term debt activity can be summarized as follows:

| | Interest Rate Ranges | Matures | Beginning Balance | Additions | Reductions | Ending Balance | Due Within One Year |
|---|---|---|---|---|---|---|---|
| **Governmental Activities** | | | | | | | |
| General obligation bonds: | | | | | | | |
| Building Authority Refunding Bonds | 3.25%-4.15% | 2028 | $ 2,715,000 | $ - | $ 110,000 | $ 2,605,000 | $ 115,000 |
| Library bonds | 3.00%-4.75% | 2033 | 7,940,000 | - | 195,000 | 7,745,000 | 210,000 |
| Installment purchase contract - Police vehicles | 4.50% | 2012 | 288,616 | - | 288,616 | - | - |
| BS&A System | | 2015 | - | 89,771 | - | 89,771 | 29,984 |
| Total bonds and installment debt payable | | | 10,943,616 | 89,771 | 593,616 | 10,439,771 | 354,984 |
| Accumulated compensated absences | | | 4,946,058 | 1,726,394 | 2,178,989 | 4,493,463 | 898,693 |
| Total governmental activities | | | $ 15,889,674 | $ 1,816,165 | $ 2,772,605 | $ 14,933,234 | $ 1,253,677 |

| | Interest Rate Ranges | Matures | Beginning Balance | Additions | Reductions | Ending Balance | Due Within One Year |
|---|---|---|---|---|---|---|---|
| **Business-type Activities** | | | | | | | |
| Wayne County Rouge Valley Wastewater Control System Bonds | 4.00%-4.85% | 2017 | $ 5,780,000 | $ - | $ 860,000 | $ 4,920,000 | $ 900,000 |
| County contractual obligations: | | | | | | | |
| State Revolving Loan funds | 2.25% | 2016 | 775,000 | - | 145,000 | 630,000 | 155,000 |
| State Revolving Loan funds | 2.25%-6.60% | 2031 | 14,183,925 | - | 1,777,300 | 12,406,625 | 1,529,852 |
| State Revolving Loan funds | 2.25% | 2031 | 1,956,245 | 161,422 | 182,600 | 1,935,067 | 95,720 |
| State Revolving Loan funds | 2.5% | 2032 | - | 116,952 | - | 116,952 | - |
| Downriver Sewage Disposal Bonds - Series A Refunding | 4.50%-5.125% | 2014 | 123,185 | - | 4,468 | 118,717 | 57,960 |
| Downriver Sewage Disposal Completion Bonds | 4.50%-5.125% | 2019 | 629,546 | - | 87,348 | 542,198 | 65,928 |
| Downriver Sewage Disposal Completion Bonds | 4.50%-5.125% | 2029 | 1,474,969 | - | 56,726 | 1,418,243 | 59,866 |
| Downriver Sewage Disposal Completion Bonds | 4.50%-5.125% | 2029 | 221,136 | - | 23,446 | 197,690 | 9,920 |
| Ecorse Creek pollution | 2.5% | 2030 | 563,925 | 1,517,415 | 106,310 | 1,975,030 | 105,679 |
| Total bonds payable | | | 25,707,931 | 1,795,789 | 3,243,198 | 24,260,522 | 2,979,925 |
| Less deferred charge on refunding | | | (452,078) | - | (77,500) | (374,578) | - |
| Accumulated compensated absences | | | 462,184 | - | 98,614 | 363,570 | 72,714 |
| Total business-type activities | | | $ 25,718,037 | $ 1,795,789 | $ 3,264,312 | $ 24,249,514 | $ 3,052,639 |

## Note 7 - Long-term Debt (Continued)

| | Interest Rate Ranges | Principal Maturity Ranges | Beginning Balance | Additions | Reductions | Ending Balance | Due Within One Year |
|---|---|---|---|---|---|---|---|
| **Component Unit Activities** | | | | | | | |
| 2007 Tax Increment Development Refunding Bonds | 4.00%-4.50% | 2031 | $ 20,175,000 | $ - | $ 780,000 | $ 19,395,000 | $ 835,000 |
| Total bonds payable | | | 20,175,000 | - | 780,000 | 19,395,000 | 835,000 |
| Less deferred charge on refunding | | | (552,086) | - | (55,209) | (496,877) | - |
| Total component unit activities | | | $ 19,622,914 | $ - | $ 724,791 | $ 18,898,123 | $ 835,000 |

Annual debt service requirements to maturity for the above bonds and note obligations are as follows:

| Year Ending June 30 | Governmental Activities | | | Business-type Activities | | | Component Unit Activities | | |
|---|---|---|---|---|---|---|---|---|---|
| | Principal | Interest | Total | Principal | Interest | Total | Principal | Interest | Total |
| 2013 | $ 354,984 | $ 445,414 | $ 800,398 | $ 2,979,925 | $ 700,006 | $ 3,679,931 | $ 835,000 | $ 804,929 | $ 1,639,929 |
| 2014 | 374,984 | 433,248 | 808,232 | 3,104,902 | 607,513 | 3,712,415 | 890,000 | 770,429 | 1,660,429 |
| 2015 | 394,803 | 420,247 | 815,050 | 3,146,181 | 509,775 | 3,655,956 | 925,000 | 734,129 | 1,659,129 |
| 2016 | 390,000 | 406,401 | 796,401 | 3,235,205 | 408,288 | 3,643,493 | 960,000 | 696,429 | 1,656,429 |
| 2017 | 410,000 | 391,218 | 801,218 | 3,135,342 | 303,690 | 3,439,032 | 990,000 | 657,429 | 1,647,429 |
| 2018-2022 | 2,360,000 | 1,690,390 | 4,050,390 | 7,212,779 | 677,432 | 7,890,211 | 4,720,000 | 2,696,559 | 7,416,559 |
| 2023-2027 | 2,950,000 | 1,135,565 | 4,085,565 | 1,199,511 | 194,364 | 1,393,875 | 5,090,000 | 1,686,581 | 6,776,581 |
| 2028-2032 | 2,685,000 | 485,949 | 3,170,949 | 246,677 | 10,050 | 256,727 | 4,985,000 | 466,200 | 5,451,200 |
| 2033-2037 | 520,000 | 24,700 | 544,700 | - | - | - | - | - | - |
| Total | $ 10,439,771 | $ 5,433,132 | $ 15,872,903 | $ 24,260,522 | $ 3,411,118 | $ 27,671,640 | $ 19,395,000 | $ 8,512,685 | $ 27,907,685 |

**Defeased Debt** - In prior years, the City defeased certain bonds by placing the proceeds of new bonds in an irrevocable trust to provide for all future debt service payments on the old bonds. Accordingly, the trust accounts' assets and liabilities for the defeased bonds are not included in the basic financial statements. At June 30, 2012, approximately $7.6 million of bonds outstanding are considered defeased.

## Note 8 - Restricted Assets

Restricted assets at June 30, 2012 consist of deposits at the County being held for water and sewer line construction and debt payments. As discussed in Note 1, the restricted assets result mainly from the issuance of debt and net assets have been reserved for restricted assets. Within the capital projects governmental fund, restricted assets relate to unspent bond proceeds from a prior year's issuance.

# City of Dearborn Heights, Michigan

## Note 9 - Risk Management

The City is exposed to various risks of loss related to property loss, torts, errors and omissions, and employee injuries (workers' compensation), as well as medical benefits provided to employees. The City has purchased commercial insurance for medical claims and participates in the Michigan Municipal Risk Management Authority (the "Authority") for claims relating to general liability and auto liability, auto physical damage, and property loss claims; the City is self-insured for workers' compensation claims within certain limits. Settled claims relating to the commercial insurance have not exceeded the amount of insurance coverage in any of the past five fiscal years.

The Michigan Municipal Risk Management Authority risk pool program operates as a claims servicing pool for amounts up to member retention limits and operates as a common risk-sharing management program for losses in excess of member retention amounts. Although premiums are paid annually to the Authority that the Authority uses to pay claims up to the retention limits, the ultimate liability for those claims remains with the City.

The City estimates the liability for workers' compensation and general liability claims that have been incurred through the end of the fiscal year, including claims that have been reported as well as those that have not yet been reported. Changes in the estimated liability for the past two fiscal years were as follows:

|  | General Liability | | Workers' Compensation | |
|---|---|---|---|---|
|  | 2012 | 2011 | 2012 | 2011 |
| Estimated liability - Beginning of year | $ 1,328,797 | $ 1,121,279 | $ 792,283 | $ 558,985 |
| Estimated claims incurred - Including changes in estimates | 503,107 | 616,736 | 86,562 | 532,574 |
| Claim payments | (283,005) | (409,218) | (331,816) | (299,276) |
| Estimated liability - End of year | $ 1,548,899 | $ 1,328,797 | $ 547,029 | $ 792,283 |

The City is involved in litigation related to various other matters. At the current time, the outcome or potential liability related to these matters cannot be determined. In addition, the extent of insurance coverage related to these matters cannot be determined at this time.

# City of Dearborn Heights, Michigan

## Note 10 - Defined Benefit Pension Plan - General Government Employees' Retirement System

**Plan Description** - The General Government Employees' Retirement System is a single-employer defined benefit pension plan that is administered by the Pension Committee for the General Government Employees' Retirement System; this plan covers all full-time employees of the City. The system provides retirement, disability, and death benefits to plan members and their beneficiaries. At June 30, 2012, the date of the most recent actuarial valuation (using data as of July 1, 2011), membership consisted of 148 retirees and beneficiaries currently receiving benefits, 49 terminated employees entitled to benefits but not yet receiving them, and 118 current active employees. The plan does not issue a separate financial report.

**Funding Policy** - Plan member contributions are not required. Employer contributions to the plan are recognized when due and the employer has made a formal commitment to provide the contributions. Benefits and refunds are recognized when due and payable in accordance with the terms of the plan. Please refer to Note 1 for further significant accounting policies.

The obligation to contribute to and maintain the system for these employees was established by negotiation with the City's competitive bargaining units. The funding policy provides for periodic employer contributions at actuarially determined rates. Administrative costs of the plan are paid for by the Corporate Fund.

**Annual Pension Cost** - For the year ended June 30, 2012, the City's annual pension cost of $736,081 for the plan was equal to the City's required and actual contribution. The annual required contribution was determined as part of an actuarial valuation at July 1, 2011 using the entry actual age cost method. Significant actuarial assumptions used include (a) a 7.00 percent investment rate of return, (b) projected salary increases of 4.25 percent per year, and (c) no cost of living adjustments. The actuarial value of assets was determined using techniques that smooth the effects of short-term volatility over a five-year period. The unfunded actuarial liability is being amortized as a level percentage of payroll on an open basis. The amortization period is 20 years.

**Three-year Trend Information**

|  | Fiscal Year Ended June 30 | | |
|  | 2012 | 2011 | 2010 |
|---|---|---|---|
| Annual pension cost (APC) | $ 736,081 | $ 944,118 | $ 809,693 |
| Percentage of APC contributed | 100 % | 100 % | 100 % |
| Net pension obligation | $ - | $ - | $ - |

# City of Dearborn Heights, Michigan

## Note 10 - Defined Benefit Pension Plan - General Government Employees' Retirement System (Continued)

| | Fiscal Year Ended June 30 | | |
| --- | --- | --- | --- |
| | 2012 | 2011 | 2010 |
| Actuarial value of assets | $ 41,579,297 | $ 42,196,846 | $ 42,247,687 |
| Actuarial accrued liability (AAL) (entry age) | $ 42,003,563 | $ 41,514,594 | $ 43,786,452 |
| Unfunded AAL (UAAL) | $ 424,266 | $ (682,252) | $ 1,538,765 |
| Funded ratio | 99.0 % | 101.6 % | 96.5 % |
| Covered payroll | $ 5,220,040 | $ 6,736,225 | $ 6,709,824 |
| UAAL as a percentage of covered payroll | 8.1 % | (10.1)% | 23.0 % |

**Reserves** - As of June 30, 2012, the plan's required reserves have been funded as follows:

| | |
| --- | --- |
| Legally required reserves - Reserve for retiree benefit payments | $ 28,624,976 |
| Additional reserves - Reserve for employer contributions | 8,992,673 |
| Total reserves | $ 37,617,649 |

The schedule of funding progress, presented as required supplemental information following the notes to the financial statements, presents multi-year trend information about whether the actuarial values of plan assets are increasing or decreasing over time relative to the actuarial accrued liability for benefits.

## Note 11 - Defined Benefit Pension Plan - Police and Fire Retirement System

**Plan Description** - The police and fire retirement system is a single-employer defined benefit pension plan that is administered by the pension committee for the police and fire retirement system; this plan covers all full-time police and fire employees of the City. The system provides retirement, disability, and death benefits to plan members and their beneficiaries. At June 30, 2012, the date of the most recent actuarial valuation (using July 1, 2011 data), membership consisted of 180 retirees and beneficiaries currently receiving benefits and terminated employees entitled to benefits but not yet receiving them, and 73 current active employees. The plan does not issue a separate financial report.

**Funding Policy** - Plan member contributions are recognized in the period in which the contributions are due. Employer contributions to the plan are recognized when due and the employer has made a formal commitment to provide the contributions. Benefits and refunds are recognized when due and payable in accordance with the terms of the plan. Please refer to Note 1 for further significant accounting policies.

# City of Dearborn Heights, Michigan

## Note 11 - Defined Benefit Pension Plan - Police and Fire Retirement System (Continued)

The obligation to contribute to and maintain the system for these employees was established by negotiation with the City's competitive bargaining units and required a contribution from the policemen, police supervisors, and firemen of 5 percent, 3 percent, and 3 percent, respectively. The funding policy provides for periodic employer contributions at actuarially determined rates. Administrative costs of the plan are financed through contributions to the plan.

**Annual Pension Cost** - For the year ended June 30, 2012, the City's annual pension cost of $2,355,801 for the plan was equal to the City's required and actual contribution. The annual required contribution was determined as part of an actuarial valuation at July 1, 2011 using the entry actual age cost method. Significant actuarial assumptions used include (a) a 7.00 percent investment rate of return, (b) projected salary increases of 3.5 percent to 4.5 percent per year, and (c) cost of living adjustments provided through the Bonus Fund. The actuarial value of assets was determined using techniques that smooth the effects of short-term volatility over a five-year period. The funded actuarial liability was amortized as level dollar payments over 23 years on a closed basis.

**Three-year Trend Information**

|  | Fiscal Year Ended June 30 | | |
| --- | --- | --- | --- |
|  | 2012 | 2011 | 2010 |
| Annual pension cost (APC) | $ 2,355,801 | $ 2,170,755 | $ 653,785 |
| Percentage of APC contributed | 100 % | 100 % | 100 % |
| Net pension obligation | $ - | $ - | $ - |

|  | Actuarial Valuation as of June 30 | | |
| --- | --- | --- | --- |
|  | 2012 | 2011 | 2010 |
| Actuarial value of assets | $ 140,277,195 | $ 139,124,010 | $ 137,586,060 |
| Actuarial accrued liability (AAL) (entry age) | $ 165,132,570 | $ 153,317,413 | $ 136,780,310 |
| Unfunded AAL (UAAL) | $ 24,855,375 | $ 14,193,403 | $ (805,750) |
| Funded ratio | 84.9 % | 90.7 % | 100.6 % |
| Covered payroll | $ 6,378,919 | $ 8,126,002 | $ 10,512,186 |
| UAAL as a percentage of covered payroll | 389.6 % | 174.7 % | (7.7)% |

## Note 11 – Defined Benefit Pension Plan – Police and Fire Retirement System (Continued)

**Reserves** - As of June 30, 2012, the plan's required reserves have been funded as follows:

| | |
|---|---:|
| Legally required reserves: | |
| Reserve for employees' contributions | $ 3,921,322 |
| Reserve for retiree benefit payments | 130,047,031 |
| Supplemental reserve fund | 4,168,217 |
| Additional reserves - Reserve for employer contributions | (1,689,359) |
| Total | $ 136,447,211 |

The schedule of funding progress, presented as required supplemental information following the notes to the financial statements, presents multi-year trend information about whether the actuarial values of plan assets are increasing or decreasing over time relative to the actuarial accrued liability for benefits.

In a prior period, the police and fire retirement system assumed the reporting responsibility for the payment of postemployment health benefits for retired police and fire employees that were previously recorded as an expenditure in the Corporate Fund. During the year ended June 30, 2012, the City's Corporate Fund contributed, and the police and fire retirement system expensed, postemployment benefits totaling approximately $2,972,000. This expense represents the cost to meet current year claims and expenses on a cash basis, consistent with the City's historical accounting policy, and is not the result of any actuarial determination of future benefit funding requirements. Accordingly, no portion of fund balance has been reserved and no actuarial computed information has been included in this report to reflect future obligations with respect to health benefits paid to police and fire retirees.

# City of Dearborn Heights, Michigan

## Note 12 – Defined Benefit Pension Plan Condensed Financial Statements

The following are condensed financial statements for the retirement systems as follows:

| | General Government Employees' Retirement System | Police and Fire Retirement System |
|---|---|---|
| **Statement of Net Assets** | | |
| Cash and investments | $ 37,923,542 | $ 146,353,183 |
| Other assets | - | 212,369 |
| Liabilities | 305,893 | 10,118,341 |
| Net assets | $ 37,617,649 | $ 136,447,211 |
| **Statement of Changes in Net Assets** | | |
| Investment income (loss) | $ 2,999,580 | $ (3,307,386) |
| Contributions | 857,683 | 5,898,281 |
| Benefit payments | 5,840,258 | 8,843,807 |
| Other deductions | - | 3,496,808 |
| Net change in net assets | $ (1,982,995) | $ (9,749,720) |

## Note 13 – Other Postemployment Benefits

**Plan Description** - The City provides healthcare benefits to all full-time employees upon retirement, in accordance with labor contracts. Currently, 238 retirees are eligible. This is a single-employer defined benefit plan administered by the City. The benefits are provided under collective bargaining agreements. The plan does not issue a separate stand-alone financial statement.

**Funding Policy** - The City includes pre-Medicare retirees and their dependents in its insured healthcare plan, with partial contributions required by some of the participants. The City purchases Medicare supplemental insurance for retirees eligible for Medicare. The City has no obligation to make contributions in advance of when the insurance premiums are due for payment (in other words, this may be financed on a "pay-as-you-go" basis). The costs of administering the plan are borne by the City's Corporate Fund.

# City of Dearborn Heights, Michigan

## Note 13 - Other Postemployment Benefits (Continued)

**Funding Progress** - For the year ended June 30, 2012, the City has estimated the cost of providing retiree healthcare benefits through an actuarial valuation as of June 30, 2011. The valuation computes an annual required contribution, which represents a level of funding that, if paid on an ongoing basis, is projected to cover normal cost each year and amortize any unfunded actuarial liabilities over a period not to exceed 30 years. This valuation's computed contribution and actual funding are summarized as follows:

| | |
|---|---:|
| Annual required contribution (recommended) | $ 9,828,454 |
| Interest on the prior year's net OPEB obligation | 1,023,054 |
| Less adjustment to the annual required contribution | (1,014,654) |
| Annual OPEB cost | 9,836,854 |
| Amounts contributed: | |
| Payments of current premiums | (2,642,514) |
| Implicit rate subsidy | (862,052) |
| Increase in net OPEB obligation | 6,332,288 |
| OPEB obligation - Beginning of year | 22,734,535 |
| OPEB obligation - End of year | $ 29,066,823 |

The annual OPEB costs, the percentage contributed to the plan, and the net OPEB obligation for the current year are as follows:

**Three-year Trend Information**

| Fiscal Year Ended | Annual OPEB Costs | Percentage Contributed | Net OPEB Obligation |
|---|---:|---:|---:|
| 6/30/10 | $ 11,671,930 | 28.0 | $ 16,674,929 |
| 6/30/11 | 9,564,172 | 37.0 | 22,734,535 |
| 6/30/12 | 9,836,854 | 36.0 | 29,066,823 |

The funding progress of the plan as of the most recent valuation date is as follows:

| Actuarial Valuation Date | Actuarial Value of Assets (a) | Actuarial Accrued Liability (AAL) (b) | Unfunded AAL (UAAL) (b-a) | Funded Ratio (Percent) (a/b) | Covered Payroll (c) | UAAL as a Percentage of Covered Payroll |
|---|---:|---:|---:|---:|---:|---:|
| 6/30/10 | $ - | $ 125,702,000 | $ 125,702,000 | - | $ 14,453,756 | 869.7 % |
| 6/30/11 | - | 123,672,291 | 123,672,291 | - | 12,578,298 | 983.2 |

## Note 13 - Other Postemployment Benefits (Continued)

**Actuarial Methods and Assumptions** - Actuarial valuations of an ongoing plan involve estimates of the value of reported amounts and assumptions about the probability of occurrence of events far into the future. Examples include assumptions about future employment, mortality, and the healthcare cost trend. Amounts determined regarding the funded status of the plan and the annual required contributions of the employer are subject to continual revision as actual results are compared with past expectations and new estimates are made about the future. The schedule of funding progress, presented above, presents multiyear trend information about whether the actuarial value of plan assets is increasing or decreasing over time relative to the actuarial accrued liabilities for benefits.

Projections of benefits for financial reporting purposes are based on the substantive plan (the plan as understood by the employer and the plan members) and include the types of benefits provided at the time of each valuation and the historical pattern of sharing of benefit costs between the employer and plan members to that point. The actuarial methods and assumptions used include techniques that are designed to reduce the effects of short-term volatility in actuarial accrued liabilities and the actuarial value of assets, consistent with the long-term perspective of the calculations.

In the June 30, 2011 actuarial valuation, the entry age actuarial cost method was used. The actuarial assumptions included a 4.5 percent investment rate of return (net of administrative expenses), which is a blended rate of the expected long-term investment returns on plan assets and on the employer's own investments calculated based on the funded level of the plan at the valuation date, and an annual healthcare cost trend rate of 10 percent initially, reduced by decrements to an ultimate rate of 5 percent after 10 years. The UAAL is being amortized as a level dollar amount on an open basis. The remaining amortization period at June 30, 2012 was 30 years.

## Note 14 - Upcoming Accounting Pronouncements

In November 2010, the GASB issued Statement No. 60, *Accounting and Financial Reporting for Service Concession Arrangements*. This statement addresses financial reporting related to service concession arrangements which are a type of public-private or public-public partnership. An SCA is an arrangement between a transferor (a government) and an operator (whether a government or nongovernment) in which the transferor conveys to an operator the right and related obligation to provide services through the use of infrastructure or another public asset in exchange for significant consideration and the operator collects and is compensated by fees from third parties. The City is currently evaluating the impact this standard will have on the financial statements when adopted during the year ending June 30, 2013.

# City of Dearborn Heights, Michigan

## Note 14 - Upcoming Accounting Pronouncements (Continued)

In November 2010, the GASB issued Statement No. 61, *The Financial Reporting Entity Omnibus*. This pronouncement, which is an amendment to Statement 14 and Statement 34, modifies certain requirements for inclusion of component units in the financial reporting entity. This statement also amends the criteria for reporting component units as if they were part of the primary government (that is, blending) in certain circumstances. Lastly, the statement also clarifies the reporting of equity interests in legally separate organizations. The City is currently evaluating the impact this standard will have on the financial statements when adopted during the year ending June 30, 2013.

In December 2010, the GASB issued Statement No. 62, *Codification of Accounting and Financial Reporting Guidance Contained in Pre-November 30, 1989 FASB and AICPA Pronouncements*. This statement incorporates into GASB literature certain accounting and financial reporting guidance issued on or before November 30, 1989 that is included in FASB statements and interpretations, APB opinions, and accounting research bulletins of the AICPA Committee on Accounting Procedure. The City is currently evaluating the impact this standard will have on the financial statements when adopted during the year ending June 30, 2013.

In June 2011, the GASB issued Statement No. 63, *Financial Reporting of Deferred Outflows of Resources, Deferred Inflows of Resources, and Net Position*. The statement will be effective for the year ending June 30, 2013. The statement incorporates deferred outflows of resources and deferred inflows of resources, as defined by GASB Concepts Statement No. 4, into the definitions of the required components of the residual measure of net position, formerly net assets. This statement also provides a new statement of net position format to report all assets, deferred outflows of resources, liabilities, deferred inflows of resources, and net position. Once implemented, this statement will impact the format and reporting of the balance sheet at the government-wide level and also at the fund level.

In March 2012, the GASB issued Statement No. 65, *Items Previously Reported as Assets and Liabilities*, which is required to be implemented for financial statements for periods beginning after December 15, 2012. Statement No. 65 establishes accounting and financial reporting standards that reclassify, as deferred outflows and inflows of resources, certain items that were previously reported as assets and liabilities. This statement also provides other financial reporting guidance related to the impact of the financial statement elements deferred outflows of resources and deferred inflows of resources. Statement No. 65 will be implemented for the year ending June 30, 2014.

## Note 14 – Upcoming Accounting Pronouncements (Continued)

In June 2012, GASB Statement No. 67, *Financial Reporting for Pension Plans*, was issued by the Governmental Accounting Standards Board. This new standard, which replaces the requirements of GASB Statements No. 25, *Financial Reporting for Defined Benefit Pension Plans and Note Disclosures for Defined Contribution Plans,* and No. 50, *Pension Disclosures*, establishes standards for financial reporting that outline the basic framework for separately issued pension plan financial reports and specifies the required approach to measuring the liability of employer(s) and certain nonemployer contributing entities, about which information is required to be disclosed. GASB Statement No. 67 is required to be adopted for years beginning after June 15, 2013. For the City of Dearborn Heights, Michigan, this standard will be adopted for the year ending June 30, 2014.

In June 2012, the GASB issued Statement No. 68, *Accounting and Financial Reporting for Pensions*. Statement No. 68 requires governments providing defined benefit pensions to recognize their unfunded pension benefit obligation as a liability for the first time, and to more comprehensively and comparably measure the annual costs of pension benefits. This net pension liability that will be recorded on the government-wide, proprietary, and discretely presented component units statements will be computed differently than the current unfunded actuarial accrued liability, using specific parameters set forth by the GASB. The statement also enhances accountability and transparency through revised note disclosures and required supplemental information (RSI). The City is currently evaluating the impact this standard will have on the financial statements when adopted. The provisions of this statement are effective for financial statements for the year ending June 30, 2014.



# Required Supplemental Information

# City of Dearborn Heights, Michigan

| | Original Budget | Amended Budget | Actual | Variance with Amended Budget |
|---|---|---|---|---|
| **Revenue** | | | | |
| Property taxes | $ 19,475,096 | $ 19,475,096 | $ 19,478,952 | $ 3,856 |
| Licenses and permits | 1,279,700 | 1,279,700 | 1,409,632 | 129,932 |
| State-shared revenue and grants | 4,277,500 | 4,956,900 | 5,157,112 | 200,212 |
| Charges for services | 1,996,400 | 1,996,400 | 1,678,310 | (318,090) |
| Fines and forfeitures | 2,800,000 | 2,800,000 | 2,372,090 | (427,910) |
| Reimbursement from other funds | 3,700,000 | 3,700,000 | 2,540,522 | (1,159,478) |
| Other revenue | 2,831,950 | 2,831,950 | 3,014,739 | 182,789 |
| Total revenue | 36,360,646 | 37,040,046 | 35,651,357 | (1,388,689) |
| **Expenditures** - Current | | | | |
| General government: | | | | |
| Legislative | 89,154 | 90,554 | 87,702 | 2,852 |
| Executive | 328,416 | 333,916 | 328,543 | 5,373 |
| Comptroller's office | 346,243 | 385,243 | 373,848 | 11,395 |
| General government | 5,765,000 | 6,243,800 | 6,128,824 | 114,976 |
| Treasurer | 424,428 | 398,428 | 390,089 | 8,339 |
| Assessing | 317,596 | 317,596 | 294,091 | 23,505 |
| Board of appeals | 3,730 | 3,730 | 1,604 | 2,126 |
| Clerk | 270,726 | 273,526 | 246,237 | 27,289 |
| Elections | 179,780 | 176,980 | 142,690 | 34,290 |
| Personnel | 158,125 | 149,625 | 144,798 | 4,827 |
| Employees' Pension Commission | 159,830 | 159,830 | 146,003 | 13,827 |
| Civil Service Commission | 7,938 | 13,938 | 7,332 | 6,606 |
| Civil Service - Act No. 78 | 5,438 | 19,957 | 18,331 | 1,626 |
| Data processing | 95,000 | 95,000 | 147,215 | (52,215) |
| Total general government | 8,151,404 | 8,662,123 | 8,457,307 | 204,816 |
| Public safety: | | | | |
| Police department | 11,110,823 | 11,395,823 | 11,227,657 | 168,166 |
| Fire department | 5,905,395 | 6,049,876 | 6,054,150 | (4,274) |
| Protective inspection | 803,309 | 746,309 | 718,630 | 27,679 |
| Judicial | 1,826,751 | 1,892,751 | 1,790,977 | 101,774 |
| Corporation counsel | 160,200 | 160,200 | 154,609 | 5,591 |
| Total public safety | 19,806,478 | 20,244,959 | 19,946,023 | 298,936 |
| Public works: | | | | |
| Building maintenance | 1,166,031 | 1,087,131 | 1,019,047 | 68,084 |
| Sanitation | 3,400,000 | 3,400,000 | 3,451,143 | (51,143) |
| Highways, streets, and bridges | 2,292,520 | 2,137,520 | 1,962,745 | 174,775 |
| Total public works | 6,858,551 | 6,624,651 | 6,432,935 | 191,716 |

# City of Dearborn Heights, Michigan

|  | Original Budget | Amended Budget | Actual | Variance with Amended Budget |
|---|---|---|---|---|
| **Expenditures** - Current (Continued) | | | | |
| Community and economic development: | | | | |
| Planning Commission | $ 27,083 | $ 27,083 | $ 18,997 | $ 8,086 |
| Cable TV Commission | 96,583 | 92,483 | 88,826 | 3,657 |
| Total community and economic development | 123,666 | 119,566 | 107,823 | 11,743 |
| Recreation and culture | 1,200,547 | 1,168,747 | 1,022,427 | 146,320 |
| Total expenditures | 36,140,646 | 36,820,046 | 35,966,515 | 853,531 |
| **Excess of Revenue Over (Under) Expenditures** | 220,000 | 220,000 | (315,158) | (535,158) |
| **Other Financing Uses** - Transfers out | (220,000) | (220,000) | (216,063) | 3,937 |
| **Net Change in Fund Balance** | - | - | (531,221) | (531,221) |
| **Fund Balance (Deficit)** - Beginning of year | (2,886,035) | (2,886,035) | (2,886,035) | - |
| **Fund Balance (Deficit)** - End of year | $ (2,886,035) | $ (2,886,035) | $ (3,417,256) | $ (531,221) |

# City of Dearborn Heights, Michigan

| | Original Budget | Amended Budget | Actual | Variance with Amended Budget |
|---|---|---|---|---|
| **Revenue** | | | | |
| State-shared revenue, grants, and other state aid | $ 2,100,000 | $ 2,100,000 | $ 2,291,154 | $ 191,154 |
| Investment income | 2,000 | 2,000 | 1,953 | (47) |
| Total revenue | 2,102,000 | 2,102,000 | 2,293,107 | 191,107 |
| **Expenditures** - Current - Public works | | | | |
| Street maintenance | 1,441,000 | 1,741,000 | 1,830,406 | (89,406) |
| Winter maintenance | 602,000 | 252,000 | 118,573 | 133,427 |
| Traffic services | 100,000 | 100,000 | 78,912 | 21,088 |
| Administration | 171,000 | 221,000 | 229,299 | (8,299) |
| Street and bridge construction | 290,000 | 290,000 | 39,136 | 250,864 |
| Total expenditures | 2,604,000 | 2,604,000 | 2,296,326 | 307,674 |
| **Excess of Revenue (Under) Over Expenditures** | (502,000) | (502,000) | (3,219) | 498,781 |
| **Other Financing Sources** - Transfers in | 502,000 | 502,000 | - | (502,000) |
| **Net Change in Fund Balance** | - | - | (3,219) | (3,219) |
| **Fund Balance** - Beginning of year | 1,840,742 | 1,840,742 | 1,840,742 | - |
| **Fund Balance** - End of year | $ 1,840,742 | $ 1,840,742 | $ 1,837,523 | $ (3,219) |

# City of Dearborn Heights, Michigan

| | Original Budget | Amended Budget | Actual | Variance with Amended Budget |
|---|---|---|---|---|
| **Revenue** | | | | |
| State-shared revenue, grants, and other state aid | $ 850,000 | $ 850,000 | $ 923,338 | $ 73,338 |
| Investment income | 2,000 | 2,000 | 1,631 | (369) |
| Other miscellaneous income | 1,000 | 1,000 | 2,370 | 1,370 |
| Total revenue | 853,000 | 853,000 | 927,339 | 74,339 |
| **Expenditures** - Current - Public works | | | | |
| Routine maintenance | 788,000 | 788,000 | 322,045 | 465,955 |
| Winter maintenance | 22,000 | 34,000 | 33,140 | 860 |
| Traffic services | 152,000 | 128,000 | 22,871 | 105,129 |
| Administration | 70,000 | 82,000 | 92,728 | (10,728) |
| Street and bridge construction | 210,000 | 210,000 | - | 210,000 |
| Total expenditures | 1,242,000 | 1,242,000 | 470,784 | 771,216 |
| **Excess of Revenue (Under) Over Expenditures** | (389,000) | (389,000) | 456,555 | 845,555 |
| **Other Financing Sources (Uses)** | | | | |
| Transfers in | 589,000 | 589,000 | - | (589,000) |
| Transfers out | (200,000) | (200,000) | - | 200,000 |
| Total other financing sources | 389,000 | 389,000 | - | (389,000) |
| **Net Change in Fund Balance** | - | - | 456,555 | 456,555 |
| **Fund Balance** - Beginning of year | 1,287,535 | 1,287,535 | 1,287,535 | - |
| **Fund Balance** - End of year | $ 1,287,535 | $ 1,287,535 | $ 1,744,090 | $ 456,555 |

# City of Dearborn Heights, Michigan

The schedule of funding progress is as follows:

| Actuarial Valuation Date | Actuarial Value of Assets (a) | Actuarial Accrued Liability (AAL) (b) | Unfunded AAL (UAAL) (b-a) | Funded Ratio (Percent) (a/b) | Covered Payroll (c) | UAAL as a Percentage of Covered Payroll |
|---|---|---|---|---|---|---|
| 6/30/07 | $ 37,356,601 | $ 37,508,250 | $ 151,649 | 99.6 | $ 6,188,806 | 2.5 |
| 6/30/08 | 40,073,901 | 39,009,275 | (1,064,626) | 102.7 | 6,418,815 | (16.6) |
| 6/30/09 | 42,356,542 | 42,075,942 | (280,600) | 100.7 | 6,533,207 | (4.3) |
| 6/30/10 | 42,247,687 | 43,786,452 | 1,538,765 | 96.5 | 6,709,824 | 23.0 |
| 6/30/11 | 42,196,846 | 41,514,594 | (682,252) | 101.6 | 6,736,225 | (10.1) |
| 6/30/12 | 41,579,297 | 42,003,563 | 424,266 | 99.0 | 5,220,040 | 8.1 |

The schedule of employer contributions is as follows:

| Fiscal Year Ended | Annual Required Contribution * | Percentage Contributed |
|---|---|---|
| 6/30/07 | $ 647,229 | 100 % |
| 6/30/08 | 831,528 | 100 |
| 6/30/09 | 781,783 | 100 |
| 6/30/10 | 809,693 | 100 |
| 6/30/11 | 944,118 | 100 |
| 6/30/12 | 736,081 | 100 |

* The required contribution is expressed to the City as a percentage of payroll.

The information presented above was determined as part of the actuarial valuations at the dates indicated. Additional information as of June 30, 2012, the latest actuarial valuation, is as follows:

| | |
|---|---|
| Actuarial cost method | Entry age |
| Amortization method | Level percent of payroll, closed basis |
| Amortization period (perpetual) | 20 years |
| Asset valuation method | Five-year smoothed market |
| Actuarial assumptions: | |
| Investment rate of return | 7.00% |
| Projected salary increases | 4.25 |
| Cost of living adjustments | None |

# City of Dearborn Heights, Michigan

The schedule of funding progress is as follows:

| Actuarial Valuation Date | Actuarial Value of Assets (a) | Actuarial Accrued Liability (AAL) (b) | Unfunded AAL (UAAL) (b-a) | Funded Ratio (Percent) (a/b) | Covered Payroll (c) | UAAL as a Percentage of Covered Payroll |
|---|---|---|---|---|---|---|
| 6/30/07 | $ 131,679,408 | $ 114,822,112 | $(16,857,296) | 114.7 | $ 10,421,556 | (161.8) |
| 6/30/08 | 139,106,447 | 120,395,854 | (18,710,593) | 115.5 | 10,344,194 | (180.9) |
| 6/30/09 | 143,886,459 | 130,566,593 | (13,319,866) | 110.2 | 10,401,824 | (128.1) |
| 6/30/10 | 137,586,060 | 136,780,310 | (805,750) | 100.6 | 10,512,186 | (7.7) |
| 6/30/11 | 139,124,010 | 153,317,413 | 14,193,403 | 90.7 | 8,126,002 | 174.7 |
| 6/30/12 | 140,277,195 | 165,132,570 | 24,855,375 | 84.9 | 6,378,919 | 389.6 |

The schedule of employer contributions is as follows:

| Fiscal Year Ended | Annual Required Contribution * | Percentage Contributed |
|---|---|---|
| 6/30/07 | $ - | 100 |
| 6/30/08 | 192,943 | 100 |
| 6/30/09 | 348,426 | 100 |
| 6/30/10 | 653,785 | 100 |
| 6/30/11 | 2,170,755 | 100 |
| 6/30/12 | 2,355,801 | 100 |

* The required contribution is expressed to the City as a percentage of payroll.

The information presented above was determined as part of the actuarial valuations at the dates indicated. Additional information as of June 30, 2012, the latest actuarial valuation, is as follows:

| | |
|---|---|
| Actuarial cost method | Entry age |
| Amortization method | Level dollar, closed basis |
| Asset valuation method | Five-year smoothed market |
| Actuarial assumptions: | |
| Investment rate of return | 7.00% |
| Projected salary increases | 3.5%-4.5% |
| Cost of living adjustments | Provided through business fund |

# Other Supplemental Information



# City of Dearborn Heights, Michigan

| | | | Special Revenue Funds | | |
|---|---|---|---|---|---|
| | Drug Enforcement | Miscellaneous Grants | Community Development Block Grant | Building Authority | Housing Commission |
| **Assets** | | | | | |
| Cash and investments | $ 320,496 | $ 168,065 | $ - | $ - | $ 6,515 |
| Receivables: | | | | | |
|     Due from other governmental units | - | - | 185,122 | - | - |
|     Other | - | 833,013 | - | - | - |
| Due from other funds | - | 6,915 | - | 194,414 | - |
| Housing inventory | - | 619,670 | - | - | - |
| Restricted assets | - | - | - | - | - |
|     Total assets | $ 320,496 | $ 1,627,663 | $ 185,122 | $ 194,414 | $ 6,515 |
| **Liabilities and Fund Balances (Deficit)** | | | | | |
| **Liabilities** | | | | | |
|     Accounts payable | $ 2,851 | $ 156,744 | $ 46,108 | $ - | $ - |
|     Due to other funds | - | 671,740 | 145,929 | - | 2 |
|     Accrued liabilities and other | - | - | - | - | - |
|     Deferred revenue | - | 524,984 | - | - | 6,513 |
|         Total liabilities | 2,851 | 1,353,468 | 192,037 | - | 6,515 |
| **Fund Balances (Deficit)** | | | | | |
| Restricted: | | | | | |
|     Grants | 317,645 | 274,195 | - | - | - |
|     Traffic immobilization | - | - | - | - | - |
|     Library | - | - | - | - | - |
|     Capital projects | - | - | - | - | - |
| Committed - Capital projects | - | - | - | 194,414 | - |
| Unassigned | - | - | (6,915) | - | - |
|     Total fund balances (deficit) | 317,645 | 274,195 | (6,915) | 194,414 | - |
|     Total liabilities and fund balances (deficit) | $ 320,496 | $ 1,627,663 | $ 185,122 | $ 194,414 | $ 6,515 |

| | Special Revenue Funds | | Nonmajor Debt Service Fund | Nonmajor Capital Projects Fund | |
|---|---|---|---|---|---|
| | Traffic Immobilization | Library | Fire Station Bonds | Capital Projects | Total Nonmajor Governmental Funds |
| $ 41,636 | $ 899,365 | $ - | $ - | $ 1,436,077 |
| - | - | - | - | 185,122 |
| - | - | - | - | 833,013 |
| - | 1,120,030 | - | - | 1,321,359 |
| - | - | - | - | 619,670 |
| - | - | - | 44,397 | 44,397 |
| $ 41,636 | $ 2,019,395 | $ - | $ 44,397 | $ 4,439,638 |
| | | | | |
| $ - | $ 33,458 | $ - | $ - | $ 239,161 |
| 1,600 | 67,301 | - | - | 886,572 |
| - | 16,100 | - | - | 16,100 |
| - | - | - | - | 531,497 |
| 1,600 | 116,859 | - | - | 1,673,330 |
| | | | | |
| - | - | - | - | 591,840 |
| 40,036 | - | - | - | 40,036 |
| - | 1,902,536 | - | - | 1,902,536 |
| - | - | - | 44,397 | 44,397 |
| - | - | - | - | 194,414 |
| - | - | - | - | (6,915) |
| 40,036 | 1,902,536 | - | 44,397 | 2,766,308 |
| $ 41,636 | $ 2,019,395 | $ - | $ 44,397 | $ 4,439,638 |

# City of Dearborn Heights, Michigan

| | Special Revenue Funds | | | | |
|---|---|---|---|---|---|
| | Drug Enforcement | Miscellaneous Grants | Community Development Block Grant | Building Authority | Housing Commission |
| **Revenue** | | | | | |
| Property taxes | $ - | $ - | $ - | $ - | $ - |
| Federal grants | 256,126 | 862,034 | 1,154,375 | - | - |
| State-shared revenue and grants | 221,653 | 28,007 | - | - | - |
| Fines | - | - | - | 192,640 | - |
| Interest | - | - | - | - | - |
| Other revenue | - | - | - | - | - |
| Total revenue | 477,779 | 890,041 | 1,154,375 | 192,640 | - |
| **Expenditures** | | | | | |
| Current: | | | | | |
| General government | - | 293,846 | - | - | - |
| Drug enforcement | 346,735 | - | - | - | - |
| Community and economic development | - | 235,957 | 937,738 | - | - |
| Library | - | - | - | - | - |
| Other | - | - | - | 257,200 | - |
| Debt service | - | - | - | - | - |
| Total expenditures | 346,735 | 529,803 | 937,738 | 257,200 | - |
| **Excess of Revenue Over (Under) Expenditures** | 131,044 | 360,238 | 216,637 | (64,560) | - |
| **Other Financing Sources -** | | | | | |
| Transfers in | - | - | - | - | - |
| **Net Change in Fund Balances** | 131,044 | 360,238 | 216,637 | (64,560) | - |
| **Fund Balances (Deficit) - Beginning of year** | 186,601 | (86,043) | (223,552) | 258,974 | - |
| **Fund Balances (Deficit) - End of year** | $ 317,645 | $ 274,195 | $ (6,915) | $ 194,414 | $ - |

| | Special Revenue Funds | | Nonmajor Debt Service Fund | Nonmajor Capital Projects Fund | |
| --- | --- | --- | --- | --- | --- |
| | Traffic Immobilization | Library | Fire Station Bonds | Capital Projects | Total Nonmajor Governmental Funds |
| $ - | $ 1,075,777 | $ - | $ - | $ 1,075,777 |
| - | - | - | - | 2,272,535 |
| - | - | - | - | 249,660 |
| 20,463 | - | - | - | 213,103 |
| - | 9,131 | - | 3 | 9,134 |
| - | 350,641 | - | - | 350,641 |
| 20,463 | 1,435,549 | - | 3 | 4,170,850 |
| - | - | - | 3,963 | 297,809 |
| - | - | - | - | 346,735 |
| - | - | - | - | 1,173,695 |
| - | 1,358,147 | - | - | 1,358,147 |
| 3,765 | - | - | - | 260,965 |
| - | 545,640 | 216,063 | - | 761,703 |
| 3,765 | 1,903,787 | 216,063 | 3,963 | 4,199,054 |
| 16,698 | (468,238) | (216,063) | (3,960) | (28,204) |
| - | - | 216,063 | - | 216,063 |
| 16,698 | (468,238) | - | (3,960) | 187,859 |
| 23,338 | 2,370,774 | - | 48,357 | 2,578,449 |
| $ 40,036 | $ 1,902,536 | $ - | $ 44,397 | $ 2,766,308 |

# City of Dearborn Heights, Michigan

|  | Pension Trust Funds | | | Agency Funds | | |
|---|---|---|---|---|---|---|
|  | General Government Employees' Retirement System | Police and Fire Retirement System | Total | Agency Funds | District Court | Total Agency Funds |
| **Assets** | | | | | | |
| Cash and cash equivalents | $ 891,326 | $ 4,248,774 | $ 5,140,100 | $ 108,432 | $ 408,041 | $ 516,473 |
| Investments: | | | | | | |
| U.S. government securities | 2,258,836 | 3,104,702 | 5,363,538 | - | - | - |
| Derivatives | - | 28,369 | 28,369 | - | - | - |
| Common stock | 17,322,126 | 55,889,714 | 73,211,840 | - | - | - |
| Corporate bonds | 4,075,379 | 5,035,272 | 9,110,651 | - | - | - |
| Real estate | 437,252 | 2,168,893 | 2,606,145 | - | - | - |
| Limited partnerships | 87,860 | 263,580 | 351,440 | - | - | - |
| Mutual funds | 12,850,763 | 75,613,879 | 88,464,642 | - | - | - |
| Receivables | - | 212,369 | 212,369 | 25 | - | 25 |
| Total assets | 37,923,542 | 146,565,552 | 184,489,094 | $ 108,457 | $ 408,041 | $ 516,498 |
| **Liabilities** | | | | | | |
| Accounts payable | - | 108,363 | 108,363 | $ - | $ - | $ - |
| Due to other governmental units | - | 2,971,607 | 2,971,607 | - | 211,184 | 211,184 |
| Accrued liabilities and other | 305,893 | - | 305,893 | 108,457 | 196,857 | 305,314 |
| Collateral for securities lending | - | 7,038,371 | 7,038,371 | - | - | - |
| Total liabilities | 305,893 | 10,118,341 | 10,424,234 | $ 108,457 | $ 408,041 | $ 516,498 |
| **Net Assets Held in Trust for Pension Benefits** | $ 37,617,649 | $ 136,447,211 | $ 174,064,860 | | | |

# City of Dearborn Heights, Michigan

|  | General Government Employees' Retirement System | Police and Fire Retirement System | Total |
|---|---:|---:|---:|
| **Additions** | | | |
| Investment income (loss): | | | |
| Interest and dividends | $ 552,417 | $ 4,034,459 | $ 4,586,876 |
| Net increase (decrease) in fair value of investments | 2,447,163 | (7,341,845) | (4,894,682) |
| Total investment income (loss) | 2,999,580 | (3,307,386) | (307,806) |
| Contributions: | | | |
| Employer | 736,081 | 5,055,226 | 5,791,307 |
| Employee | 121,602 | 843,055 | 964,657 |
| Net contributions | 857,683 | 5,898,281 | 6,755,964 |
| Total additions - Net | 3,857,263 | 2,590,895 | 6,448,158 |
| **Deductions** | | | |
| Benefit payments | 5,840,258 | 8,843,807 | 14,684,065 |
| Refunds of contributions | - | 2,971,607 | 2,971,607 |
| Administrative expenses | - | 525,201 | 525,201 |
| Total deductions | 5,840,258 | 12,340,615 | 18,180,873 |
| **Net Decrease** | (1,982,995) | (9,749,720) | (11,732,715) |
| **Net Assets Held in Trust for Pension Benefits -** Beginning of year | 39,600,644 | 146,196,931 | 185,797,575 |
| **Net Assets Held in Trust for Pension Benefits -** End of year | $ 37,617,649 | $ 136,447,211 | $ 174,064,860 |

# City of Dearborn Heights, Michigan

**Federal Awards**
**Supplemental Information**
**June 30, 2012**

# City of Dearborn Heights, Michigan

Independent Auditor's Report                                                                                    1

Report on Internal Control Over Financial Reporting and on Compliance and Other
   Matters Based on an Audit of Financial Statements Performed in Accordance
   with *Government Auditing Standards*                                                              2-3

Report on Compliance with Requirements That Could Have a Direct and Material
   Effect on the Major Program and on Internal Control Over Compliance in
   Accordance with OMB Circular A-133                                                              4-6

Schedule of Expenditures of Federal Awards                                                                7

Reconciliation of Basic Financial Statements Federal Revenue with Schedule of
   Expenditures of Federal Awards                                                                 8

Notes to Schedule of Expenditures of Federal Awards                                                9

Schedule of Findings and Questioned Costs                                                            10-13

Summary Schedule of Prior Audit Findings                                                             14



Plante & Moran, PLLC
27400 Northwestern Highway
P.O. Box 307
Southfield, MI 48037-0307
Tel: 248.352.2500
Fax: 248.352.0018
plantemoran.com

Independent Auditor's Report

To the Mayor and members of City Council
City of Dearborn Heights, Michigan

We have audited the financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the City of Dearborn Heights, Michigan (the "City") as of and for the year ended June 30, 2012, which collectively comprise the City's basic financial statements, and have issued our report thereon dated November 13, 2012 which contained unqualified opinions on those financial statements. These basic financial statements are the responsibility of the City's management. Our responsibility is to express opinions on these basic financial statements based on our audit. We have not performed any procedures with respect to the audited financial statements subsequent to November 13, 2012.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the basic financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinions.

Our audit was conducted for the purpose of forming opinions on the financial statements that collectively comprise the City of Dearborn Heights, Michigan's basic financial statements. The accompanying schedule of expenditures of federal awards and reconciliation of financial statements federal revenue with schedule of expenditures of federal awards are presented for the purpose of additional analysis and are not a required part of the basic financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audit of the financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the financial statements or to the financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the information is fairly stated in all material respects in relation to the financial statements as a whole.

*Plante & Moran, PLLC*

November 13, 2012







**Plante & Moran, PLLC**
27400 Northwestern Highway
P.O. Box 307
Southfield, MI 48037-0307
Tel: 248.352.2500
Fax: 248.352.0018
plantemoran.com

Report on Internal Control Over Financial Reporting and on Compliance
and Other Matters Based on an Audit of Financial Statements
Performed in Accordance with *Government Auditing Standards*

Independent Auditor's Report

To the Mayor and members of City Council
City of Dearborn Heights, Michigan

We have audited the financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the City of Dearborn Heights, Michigan (the "City") as of and for the year ended June 30, 2012, which collectively comprise the City's basic financial statements, and have issued our report thereon dated November 13, 2012. We have conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States.

**Internal Control Over Financial Reporting**

Management of City of Dearborn Heights, Michigan is responsible for establishing and maintaining an effective internal control over financial reporting. In planning and performing our audit, we considered the City of Dearborn Heights, Michigan's internal control over financial reporting as a basis for designing our auditing procedures for the purpose of expressing our opinions on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the City's internal control over financial reporting. Accordingly, we do not express an opinion on the effectiveness of the City's internal control over financial reporting.

Our consideration of internal control over financial reporting was for the limited purpose described in the preceding paragraph and was not designed to identify all deficiencies in internal control over financial reporting that might be significant deficiencies or material weaknesses and therefore, there can be no assurance that all deficiencies, significant deficiencies, or material weaknesses have been identified. However, as described in the accompanying schedule of findings and questioned costs, we identified certain deficiency in internal control over financial reporting that we consider to be material weaknesses.



To the Mayor and members of City Council
City of Dearborn Heights, Michigan

A deficiency in internal control exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect and correct misstatements on a timely basis. A material weakness is a deficiency, or a combination of deficiencies, in internal control such that there is a reasonable possibility that a material misstatement of the entity's financial statements will not be prevented, or detected and corrected on a timely basis. We consider the deficiencies described in the accompanying schedule of findings and questioned costs to be material weaknesses. Refer to Findings 2012-1 and 2012-2.

**Compliance and Other Matters**

As part of obtaining reasonable assurance about whether the City of Dearborn Heights, Michigan's financial statements are free of material misstatement, we performed tests of its compliance with certain provisions of laws, regulations, contracts, and grant agreements, noncompliance with which could have a direct and material effect on the determination of financial statement amounts. However, providing an opinion on compliance with those provisions was not an objective of our audit and, accordingly, we do not express such an opinion. The results of our tests disclosed no instances of noncompliance or other matters that are required to be reported under *Government Auditing Standards*.

We also noted certain matters that we have reported to management of the City of Dearborn Heights, Michigan in a separate letter dated November 13, 2012.

The City of Dearborn Heights, Michigan's response to the findings identified in our audit is described in the accompanying schedule of findings and questioned costs. We did not audit the City of Dearborn Heights, Michigan's response and, accordingly, we express no opinion on it.

This report is intended solely for the information and use of management, the Mayor and members of City Council, others within the City, federal awarding agencies, and pass-through entities and is not intended to be and should not be used by anyone other than these specified parties.

*Plante & Moran, PLLC*

November 13, 2012



**Plante & Moran, PLLC**
27400 Northwestern Highway
P.O. Box 307
Southfield, MI 48037-0307
Tel: 248.352.2500
Fax: 248.352.0018
plantemoran.com

Report on Compliance with Requirements That Could Have a
Direct and Material Effect on the Major Program and on
Internal Control over Compliance in Accordance With OMB Circular A-133

Independent Auditor's Report

To the Mayor and members of City Council
City of Dearborn Heights, Michigan

## Compliance

We have audited the compliance of the City of Dearborn Heights, Michigan (the "City") with the types of compliance requirements described in the U.S. Office of Management and Budget (OMB) Circular A-133 Compliance Supplement that could have a direct and material effect on its major federal program for the year ended June 30, 2012. The major federal program of the City of Dearborn Heights, Michigan is identified in the summary of auditor's results section of the accompanying schedule of findings and questioned costs. Compliance with the requirements of laws, regulations, contracts, and grants applicable to its major federal program is the responsibility of the City of Dearborn Heights, Michigan's management. Our responsibility is to express an opinion on the City of Dearborn Heights, Michigan's compliance based on our audit.

We conducted our audit of compliance in accordance with auditing standards generally accepted in the United States of America; the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States; and OMB Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations*. Those standards and OMB Circular A-133 require that we plan and perform the audit to obtain reasonable assurance about whether noncompliance with the types of compliance requirements referred to above that could have a direct and material effect on a major federal program occurred. An audit includes examining, on a test basis, evidence about the City of Dearborn Heights, Michigan's compliance with those requirements and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion. Our audit does not provide a legal determination on the City of Dearborn Heights, Michigan's compliance with those requirements.

In our opinion, the City of Dearborn Heights, Michigan complied, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on its major federal program for the year ended June 30, 2012.



To the Mayor and members of City Council
City of Dearborn Heights, Michigan

**Internal Control Over Compliance**

The management of the City of Dearborn Heights, Michigan is responsible for establishing and maintaining effective internal control over compliance with requirements of laws, regulations, contracts, and grants applicable to federal programs. In planning and performing our audit, we considered the City of Dearborn Heights, Michigan's internal control over compliance with requirements that could have a direct and material effect on a major federal program in order to determine our auditing procedures for the purpose of expressing our opinion on compliance and to test and report on internal control over compliance in accordance with OMB Circular A-133, but not for the purpose of expressing an opinion on the effectiveness of internal control over compliance. Accordingly, we do not express an opinion on the effectiveness of the City's internal control over compliance.

A deficiency in internal control over compliance exists when the design or operation of a control over compliance does not allow management or employees, in the normal course of performing their assigned functions, to prevent, or detect and correct noncompliance with a type of compliance requirement of a federal program on a timely basis. A material weakness in internal control over compliance is a deficiency, or a combination of deficiencies, in internal control over compliance, such that there is a reasonable possibility that material noncompliance with a type of compliance requirement of a federal program will not be prevented or detected and corrected on a timely basis.

Our consideration of internal control over compliance was for the limited purpose described in the first paragraph of this section and was not designed to identify all deficiencies in internal control over compliance that might be deficiencies, significant deficiencies, or material weaknesses. We did not identify any deficiencies in internal control over compliance that we consider to be material weaknesses, as defined above. However, we identified a certain deficiency in internal control over compliance that we consider to be a significant deficiency as described in the accompanying schedule of findings and questioned costs as Finding 2012-3. A significant deficiency in internal control over compliance is a deficiency, or a combination of deficiencies, in internal control over compliance with a type of compliance requirement of a federal program that is less severe than a material weakness in internal control over compliance, yet important enough to merit attention by those charged with governance.

The City of Dearborn Heights, Michigan's response to the findings identified in our audit is described in the accompanying schedule of findings and questioned costs.  We did not audit the City of Dearborn Heights, Michigan's response and, accordingly, we express no opinion on the response.

To the Mayor and members of City Council
City of Dearborn Heights, Michigan

This report is intended solely for the information and use of management, the Mayor and members of City Council, others within the City, federal awarding agencies, and pass-through entities and is not intended to be and should not be used by anyone other than these specified parties.

*Plante & Moran, PLLC*

November 13, 2012

# City of Dearborn Heights, Michigan

## Schedule of Expenditures of Federal Awards
## Year Ended June 30, 2012

| Federal Agency/Pass-through Agency/Program Title | CFDA Number | Preliminary Federal Expenditures |
|---|---|---|
| U.S. Department of Housing and Urban Development: | | |
| Direct Programs: | | |
| Community Development Block Grant Entitlement Cluster: | | |
| Program year 2006 | 14.218 | $ 3,260 |
| Program year 2008 | 14.218 | 91 |
| Program year 2009 | 14.218 | 51,404 |
| Program year 2010 | 14.218 | 347,454 |
| Program year 2011 | 14.218 | 535,529 |
| Passed through the Michigan State Housing Development Authority - | | |
| Neighborhood Stabilization Program | 14.218 | 371,387 |
| Total U.S. Department of Housing and Urban Development | | 1,309,125 |
| U.S. Department of Energy - ARRA - Energy Efficiency and Conservation Block Grant | 81.128 | 297,436 |
| U.S. Department of Justice - Direct Programs - Federal Forfeited Property | 16.922 | 187,544 |
| Total federal awards | | $ 1,794,105 |

See Notes to Schedule of Expenditures
of Federal Awards.

# City of Dearborn Heights, Michigan

| | | |
|---|---|---:|
| Revenue from federal sources - As reported on financial statements (includes all funds) | $ | 2,272,535 |
| Add current year deferred revenue (CDBG and EECBG) | | 7,596 |
| Less federal grant revenue unspent at year end | | (101,870) |
| Less deferred revenue not reported (reported in prior years) | | (384,156) |
| Federal expenditures per the schedule of expenditures of federal awards | **$** | **1,794,105** |

# City of Dearborn Heights, Michigan

## Note 1 - Basis of Presentation and Significant Accounting Policies

The accompanying schedule of expenditures of federal awards (the "Schedule") includes the federal grant activity of the City of Dearborn Heights, Michigan under programs of the federal government for the year ended June 30, 2012. Expenditures reported on the Schedule are reported on the same basis of accounting as the basic financial statements, although the basis for determining when federal awards are expended is presented in accordance with the requirements of OMB Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations*. In addition, expenditures reported on the Schedule are recognized following the cost principles contained in OMB Circular A-87, wherein certain types of expenditures are not allowable or are limited as to reimbursement. Therefore, some amounts presented in this Schedule may differ from amounts presented in, or used in the preparation of, the basic financial statements.

Because the Schedule presents only a selected portion of the operations of the City of Dearborn Heights, Michigan, it is not intended to and does not present the financial position, changes in net assets, or cash flows, if applicable, of the City of Dearborn Heights, Michigan. Pass-through entity identifying numbers are presented where available.

## Note 2 - Subrecipient Awards

Of the federal expenditures presented in the Schedule, federal awards were provided to subrecipients as follows:

| Federal Program Title | CFDA Number | Amount Provided to Subrecipients |
|---|---|---|
| PALS | | $ 24,265 |
| Salvation Army | | 9,600 |
| ACCESS | | 9,250 |
| Wayne Metro | | 1,275 |
| | Total | $ 44,390 |

## Section I - Summary of Auditor's Results

### Financial Statements

Type of auditor's report issued: Unqualified

Internal control over financial reporting:

- Material weakness(es) identified?                     __X__ Yes  _____ No

- Significant deficiency(ies) identified that are
  not considered to be material weaknesses?     _____ Yes  __X__ None reported

Noncompliance material to financial
    statements noted?                                      _____ Yes  __X__ No

### Federal Awards

Internal control over major programs:

- Material weakness(es) identified?                     _____ Yes  __X__ No

- Significant deficiency(ies) identified that are
  not considered to be material weaknesses?     __X__ Yes  _____ None reported

Type of auditor's report issued on compliance for major programs: Unqualified

Any audit findings disclosed that are required
    to be reported in accordance with
    Section 510(a) of Circular A-133?                   __X__ Yes  _____ No

Identification of major program:

| CFDA Number | Name of Federal Program or Cluster |
|-------------|-------------------------------------|
| 14.218 | Community Development Block Grants - Entitlement Grants cluster |

Dollar threshold used to distinguish between type A and type B programs: $300,000

Auditee qualified as low-risk auditee?                 _____ Yes  __X__ No

# City of Dearborn Heights, Michigan

## Section II - Financial Statement Audit Findings

| Reference Number | Finding |
| --- | --- |
| 2012-1 | **Finding Type** - Material weakness |

**Criteria** - The accounting data that is included in the City's annual financial statements should not include errors of any consequence. Any errors that occur during the year should be detected and corrected by the City.

**Condition** - During the audit, we identified several adjustments to the accounting records in order to correctly state the City's financial statements at year end.

**Context** - The accounting adjustments included corrections to cash accounts, capital assets, debt, compensated absences, self-insurance, grant activity accounts (including receivables, deferred revenue, and revenue), as well as a legal settlement liability.

Additionally, we also identified various adjustments to the accounting records that technically should have been made in order to correctly state the City's financial statements at year end but were not, as management did not deem these items to be significant enough to correct in the accounting records. These items are referred to as "passed adjustments" since the City "passed" on recording them.

The passed adjustments included proposed entries to correct reserves for tax appeals and county charge backs, delinquent personal property tax reserves, self-insurance and OPEB liability allocation adjustments, the accrual of a TIFA settlement, and recording of uniform reimbursements.

**Cause** - Reductions in the size of the finance staff in recent years have caused the supervisory personnel to perform various basic accounting functions and therefore, there is no longer a review function performed throughout the year related to these items.

**Effect** - As a result, some of the accounting misstatements that would be expected to be caught by an internal review process (if one was in place) are now identified by the City's external audit.

# City of Dearborn Heights, Michigan

## Section II - Financial Statement Audit Findings (Continued)

| Reference Number | Finding |
|---|---|
| 2012-1 (Continued) | **Recommendation** - The most obvious method to correct this weakness would be to hire additional personnel to assist the finance department. This involves a trade-off between the benefits of self-sufficiency and the cost of additional personnel. Another solution would be to provide additional training to the other finance department staff related to the recording of various year-end adjustments in order to create the layers of work which would allow for supervisory personnel to review work performed by others in an effort to catch the errors prior to them being identified by the external auditors. |
| | **Views of Responsible Officials and Planned Corrective Actions** - The City concurs with the recommendation and will begin to train other finance personnel as soon as possible. |
| 2012-2 | **Finding Type** - Material weakness |
| | **Criteria** - Bank reconciliations should be prepared timely for all accounts to ensure potential errors and/or irregularities are identified promptly. |
| | **Condition** - Bank reconciliations were not prepared timely for all cash accounts. |
| | **Context** - The June 30, 2012 bank reconciliation for the City's primary checking account was prepared towards the end of September 2012. |
| | **Cause** - Reductions in the size of the treasury staff and working hours in the work week (i.e. the implementation of furlough days) in recent years have caused the completion of certain month and year-end reconciliation procedures and controls to be completed late. |
| | **Effect** - While misappropriations of assets were not found during the City's audit, the untimely preparation and review of bank reconciliations increase the risk for misappropriation to occur and also have an adverse impact on efficiencies related to internal financial reporting. |
| | **Recommendation** - In accordance with best practices, bank reconciliations should be prepared 30-45 days after month-end. |
| | **Views of Responsible Officials and Planned Corrective Actions** - Treasurer agrees with the finding and will request the City Council to increase the budget for the Treasurer's Office, allowing the treasurer to hire an additional full-time bookkeeper to keep up with the work load. |

# City of Dearborn Heights, Michigan

## Section III - Federal Program Audit Findings

| Reference Number | Finding |
|---|---|
| 2012-3 | **Program Name** - U.S. Department of Housing and Urban Development - Community Development Block Grant (CDBG) and Neighborhood Stabilization Program (NSP) Cluster - 14.218 |

**Pass-through Entity** - Michigan State Housing Development Authority for NSP; N/A for CDBG

**Finding Type** - Significant deficiency

**Criteria** - Expenditures incurred should be reported in the correct reporting period on the schedule of expenditures of federal awards.

**Condition** - Expenditures incurred in the fiscal year ended June 30, 2011 were included on the schedule of expenditures of federal awards for the fiscal year ended June 30, 2012.

**Questioned Costs** - None noted

**Context** - The activity occurred in May and June 2011, therefore should have been an expense of the prior year SEFA. The total was billed on one invoice in the amount of $6,732 and related to professional services rendered.

**Cause and Effect** - Federal expenditures should be reported on the SEFA in the year in which those costs are incurred, regardless of when request for reimbursement is submitted or received or when related vendor invoices are paid by the City.

**Recommendation** - We encourage the City to implement controls over the identification of expenditures funded with federal awards to ensure that those expenditures are reported in the proper period.

**Views of Responsible Officials and Planned Corrective Actions** - The City concurs with this recommendation and has put controls in place to be used immediately.

# City of Dearborn Heights, Michigan

| Prior year Finding Number | Federal Program | Original Finding Description | Status | Planned Corrective Action |
|---|---|---|---|---|
| 2011-1 | N/A - Financial statement finding | During the audit, we identified some adjustments to the accounting records. All items were addressed by the City, and the published financial statements include all appropriate corrections. | See repeat Finding 2012-1 above | See repeat Finding 2012-1 above |
| 2011-2 | U.S. Department of Housing and Urban Development - Direct Program - Community Development Block Grant - 14.218 and U.S.Department of Environmental Protection Agency - Direct Program - Energy Efficiency Conservative Block Grant - 81.128 | Expenditures incurred in the current fiscal year ended June 30, 2011 were not reported in the proper period in the City's financial system and, as a result, were not initially reported on the current year schedule of expenditures of federal awards for the fiscal year ended June 30, 2011. | See repeat Finding 2012-3 above | See repeat Finding 2012-3 above |
| 2011-3 | U.S. Department of Housing and Urban Development - Neighborhood Stabilization Program - 14.218 Pass-through Entity - Michigan State Housing Development | Although it appears that most compliance matters are being addressed by the third-party contractor on a timely basis, the City should be provided with information on a regular basis from its grant administrator to ensure that the guidelines of the U.S. Department of Housing and Urban Development are being met. | Corrected | All such activities were brought in-house |
| 2011-4 | Assistance to Firefighters Grant - Direct Program - 97.044 | As the prime recipient and administrator of this grant, the City passed-through subawards to various other local communities in Wayne County. In doing that, the City was required to enter into formal subrecipient agreements with those local communities to ensure compliance (by those communities) with the above referenced Code of Federal Regulations, and other federal regulations imposed by this grant; however, such agreements were not in place with those local communities. | Corrected | Although the City has not had any grants of this nature since they have, established procedures to avoid such an issue next time they do. |



**Vincent Macari**
Comptroller

Daniel S. Paletko
Mayor

# Comptroller's Office

November 14, 2012

City of Dearborn Heights
Financial Statement Audit Findings
June 30, 2012

     The accounting data that is included in the City's financial statements should not include errors, finding number 2012-1. Any errors that occur during the year should be detected and corrected by the city.

     Reductions in the size of the finance staff have caused the supervisory personnel to perform various basic accounting functions, and therefore there is no longer a review process. As a result, some of the accounting misstatements that would be expected to be caught by an internal review process are now identified by the City's external audit.

     Our auditors Plante & Moran recommended that since hiring additional personnel is not a option, that training other finance personnel to record various year-end adjustments. This will create the layers of work which would allow for supervisory personnel to review work performed by others in order to catch errors prior to them being identified by external auditors. The city concurs with the recommendation and will begin to train other finance personnel as soon as possible.

     If you have any questions I can be reached at 313-791-3440.

Thank you

*Vincent Macari*

Vincent Macari
Comptroller
City of Dearborn Heights

City of Dearborn Heights • 6045 Fenton • Dearborn Heights, MI 48127
(313) 791-3440 • Fax (313) 791-3441 • Email vmacari@ci.dearborn-heights.mi.us

13-53846-tjt    Doc 5706-2    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 86 of
106



**Vincent Macari**
Comptroller

Daniel S. Paletko
Mayor

Comptroller's
Office

November 14, 2012

City of Dearborn Heights
Financial Statement Audit Findings
June 30, 2012

The accounting data that is included in the City's financial statements should not include errors, finding number 2012-2. Any errors that occur during the year should be detected and corrected by the city.

Reductions in the size of the finance staff have caused the supervisory personnel to perform various basic accounting functions, and therefore there is no longer a review process. As a result, some of the accounting misstatements that would be expected to be caught by an internal review process are now identified by the City's external audit.

Our auditors Plante & Moran recommended that since hiring additional personnel is not a option, that training other finance personnel to record various year-end adjustments. This will create the layers of work which would allow for supervisory personnel to review work performed by others in order to catch errors prior to them being identified by external auditors. The city concurs with the recommendation and will begin to train other finance personnel as soon as possible.

If you have any questions I can be reached at 313-791-3440.

Thank you

*Vincent Macari*

Vincent Macari
Comptroller
City of Dearborn Heights

City of Dearborn Heights • 6045 Fenton • Dearborn Heights, MI 48127
(313) 791-3440 • Fax (313) 791-3441 • Email vmacari@ci.dearborn-heights.mi.us

13-53846-tjt    Doc 5706-2    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 87 of
106



**Vincent Macari**
Comptroller

Daniel S. Paletko
Mayor

## Comptroller's Office

November 14, 2012

City of Dearborn Heights
Federal Awards Corrective Action Plan
June 30, 2011

For U.S. Department of Housing and Urban Development – Community Development Block Grant (CDBG) and Neighborhood Stabilization Program (NSP) Cluster – 14.218, finding number 2012-3 reporting material weakness for expenditures incurred should be reported in the correct reporting period on the schedule of expenditures of federal awards.

Our auditors Plante & Moran recommended that controls be in place to ensure that expenditures funded with federal awards are reported in the proper period. The City concurs with this recommendation and has put controls in place to be used immediately.

If you have any questions I can be reached at 313-791-3440.

Thank you

*Vincent Macari*

Vincent Macari
Comptroller
City of Dearborn Heights

City of Dearborn Heights • 6045 Fenton • Dearborn Heights, MI 48127
(313) 791-3440 • Fax (313) 791-3441 • Email vmacari@ci.dearborn-heights.mi.us

13-53846-tjt   Doc 5706-2   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 88 of 106



**Plante & Moran, PLLC**
27400 Northwestern Highway
P.O. Box 307
Southfield, MI 48037-0307
Tel: 248.352.2500
Fax: 248.352.0018
plantemoran.com

November 13, 2012

To the Mayor and Members
  of the City Council
City of Dearborn Heights

We have audited the financial statements of the City of Dearborn Heights (the "City") as of and for the year ended June 30, 2012 and have issued our report thereon dated November 13, 2012. Professional standards require that we provide you with the following information related to our audit which is divided into the following sections:

Section I - Communications Required Under SAS 114

Section II - Observations and Recommendations

Section III - Legislative and Informational Items

Section I includes information that current auditing standards require independent auditors to communicate to those individuals charged with governance. We will report this information annually to the mayor and the members of the City Council of the City of Dearborn Heights.

Section II presents recommendations related to procedural or operating matters noted during our current year audit. These comments are offered in the interest of helping the City in its efforts toward continuous improvement, not just in the areas of internal control and accounting procedures, but also in operational or administrative efficiency and effectiveness.

Section III contains updated legislative and informational items that we believe will be of interest to you.

In addition to the comments and recommendations in this letter, our observations and comments regarding City of Dearborn Heights' internal control, including any significant deficiencies or material weaknesses that we identified, have been reported to you in the report on internal control over financial reporting and on compliance and other matters based on an audit of financial statements performed in accordance with *Government Auditing Standards*. This report is included in the supplemental schedule of federal awards and we recommend that the matters we have noted there receive your careful consideration.

We would like to take this opportunity to thank the City's staff for the cooperation and courtesy extended to us during our audit. Their assistance and professionalism are invaluable.



To the Mayor and Members                                    November 13, 2012
    of the City Council
City of Dearborn Heights


This report is intended solely for the use of the mayor and the members of the City Council and management of the City of Dearborn Heights and is not intended to be and should not be used by anyone other than these specified parties.

We welcome any questions you may have regarding the following communications and we would be willing to discuss any of these or other questions that you might have at your convenience.

Very truly yours,

**Plante & Moran, PLLC**

Martin J. Olejnik

Michael J. Swartz

To the Mayor and Members                                                          November 13, 2012
    of the City Council
City of Dearborn Heights

## Section I - Communications Required Under SAS 114

### Our Responsibility Under U.S. Generally Accepted Auditing Standards

As stated in our engagement letter, our responsibility, as described by professional standards, is to express an opinion about whether the financial statements prepared by management with your oversight are fairly presented, in all material respects, in conformity with U.S. generally accepted accounting principles.  Our audit of the financial statements does not relieve you or management of your responsibilities.  Our responsibility is to plan and perform the audit to obtain reasonable, but not absolute, assurance that the financial statements are free of material misstatement.

As part of our audit, we considered the internal control of the City of Dearborn Heights.  Such considerations were solely for the purpose of determining our audit procedures and not to provide any assurance concerning such internal control.

We are responsible for communicating significant matters related to the audit that are, in our professional judgment, relevant to your responsibilities in overseeing the financial reporting process.  However, we are not required to design procedures specifically to identify such matters.

Our audit of the City of Dearborn Heights' financial statements has also been conducted in accordance with *Government Auditing Standards*, issued by the Comptroller General of the United States. Under *Government Auditing Standards*, we have made some assessments of the City of Dearborn Heights' compliance with certain provisions of laws, regulations, contracts, and grant agreements. While those assessments are not sufficient to identify all noncompliance with applicable laws, regulations, and contract provisions, we are required to communicate all noncompliance conditions that come to our attention.  We have communicated those conditions in a separate letter dated November 13, 2012 regarding our consideration of the City of Dearborn Heights' internal control over financial reporting and on our tests of its compliance with certain provisions of laws, regulations, contracts, and grant agreements.

We are also obligated to communicate certain matters related to our audit to those responsible for the governance of the City of Dearborn Heights, including certain instances of error or fraud and significant deficiencies in internal control that we identify during our audit. In certain situations, *Government Auditing Standards* require disclosure of illegal acts to applicable government agencies. If such illegal acts were detected during our audit, we would be required to make disclosures regarding these acts to applicable government agencies.  No such disclosures were required.

### Planned Scope and Timing of the Audit

We performed the audit according to the planned scope and timing previously communicated to you in our letter about planning matters dated September 4, 2012.

To the Mayor and Members                                    November 13, 2012
    of the City Council
City of Dearborn Heights

## Significant Audit Findings

### *Qualitative Aspects of Accounting Practices*

Management is responsible for the selection and use of appropriate accounting policies.  In accordance with the terms of our engagement letter, we will advise management about the appropriateness of accounting policies and their application.  The significant accounting policies used by the City of Dearborn Heights are described in Note 1 to the financial statements.

No new accounting policies were adopted and the application of existing policies was not changed during the year.

We noted no transactions entered into by the City during the year for which there is a lack of authoritative guidance or consensus.

There are no significant transactions that have been recognized in the financial statements in a different period than when the transaction occurred.

Accounting estimates are an integral part of the financial statements prepared by management and are based on management's knowledge and experience about past and current events and assumptions about future events. Certain accounting estimates are particularly sensitive because of their significance to the financial statements and because of the possibility that future events affecting them may differ significantly from those expected.

The most sensitive estimates affecting the financial statements are the self-insurance liabilities, the postemployment benefits obligation, and reserves for potential refunds relating to pending property tax appeals and county chargebacks.

Management's estimate of the self-insurance liabilities is based on information received from third-party administrators and the estimate relating to the other postemployment benefit obligation is based on an actuarial valuation.  The estimate for property tax refunds is based on a combination of appeals outstanding at year end with an anticipated adverse settlement amount being reserved; this is based on historical settlement rates.  The reserve for county chargebacks is based on an average of the settlements that have occurred within the last 15 months.

We evaluated the key factors and assumptions used to develop the estimates in determining that they are reasonable in relation to the financial statements taken as a whole.

The disclosures in the financial statements are neutral, consistent, and clear.  Certain financial statement disclosures are particularly sensitive because of their significance to financial statement users.  There were no sensitive disclosures affecting the financial statements.

### *Difficulties Encountered in Performing the Audit*

We encountered no significant difficulties in dealing with management in performing and completing our audit.

To the Mayor and Members
   of the City Council
City of Dearborn Heights

November 13, 2012

### Corrected and Uncorrected Misstatements

Professional standards require us to accumulate all known and likely misstatements identified during the audit, other than those that are trivial, and communicate them to the appropriate level of management.

The attached schedules include uncorrected misstatements of the financial statements. Management has determined that their effects are immaterial to the financial statements taken as a whole.

In addition, as indicated above, material audit adjustments proposed as a result of our audit are communicated to you in greater detail in our report on internal control over financial reporting and on compliance and other matters based on an audit of the financial statements performed in accordance with *Government Auditing Standards*.  That report is included in the federal awards supplemental information and we recommend that the matters we have noted there receive your careful consideration.  As discussed in that report, significant audit adjustments were made and proposed related to cash accounts, capital assets, debt, compensated absences, self-insurance liabilities, grant activity accounts (including receivables, deferred revenue, and revenue), and liabilities related to a legal settlement.

### Disagreements with Management

For the purpose of this letter, professional standards define a disagreement with management as a financial accounting, reporting, or auditing matter, whether or not resolved to our satisfaction, that could be significant to the financial statements or the auditor's report. We are pleased to report that no such disagreements arose during the course of our audit.

### Management Representations

We have requested certain representations from management that are included in the management representation letter dated November 13, 2012.

### Management Consultations with Other Independent Accountants

In some cases, management may decide to consult with other accountants about auditing and accounting matters, similar to obtaining a "second opinion" on certain situations.  If a consultation involves application of an accounting principle to the City's financial statements or a determination of the type of auditor's opinion that may be expressed on those statements, our professional standards require the consulting accountant to check with us to determine that the consultant has all the relevant facts.

To our knowledge, there were no such consultations with other accountants.

To the Mayor and Members
    of the City Council
City of Dearborn Heights

*November 13, 2012*

### Other Audit Findings or Issues

In the normal course of our professional association with the City, we generally discuss a variety of matters, including the application of accounting principles and auditing standards, business conditions affecting the City, and business plans and strategies that may affect the risks of material misstatement. None of the matters discussed resulted in a condition of our retention as the City's auditors.

To the Mayor and Members
  of the City Council
City of Dearborn Heights

November 13, 2012

## Section II - Observations and Recommendations

During our audit, we noted areas where we believe there are opportunities for the City to further strengthen internal control or to increase operating efficiencies. Our observations on those areas are presented for your consideration below.

**Corporate Fund**

**Deficit Elimination Plan Update**

The City's Corporate Fund has an unassigned fund deficit as of the year ended June 30, 2012 in the amount of $(5,577,335), an increase of $448,714 from the deficit reported by the Corporate Fund of ($5,128,621) as of the prior year ended June 30, 2011. The City filed a deficit elimination plan with the State following last fiscal year and has begun implementing various cost containment measures in an effort to adhere to that plan. However, for the fiscal year ended June 30, 2012 (the first year included in the deficit elimination plan), the City fell short of the projection as the plan provided for a $90,000 increase in the ending fund balance compared to an actual reduction.

Additionally, the City now has only four years to eliminate the deficit in accordance with the plan; however, our understanding is that falling short of these plan projections for consecutive years could create a red flag for the State even before the final plan year. In order to avoid this, we strongly encourage the City to revisit the projection and related operational/budgetary matters in an effort to realize the planned restoration to the Corporate Fund balance for fiscal 2013 and subsequent years. Please see "deficit elimination plans" in Section III (Legislative and Informational Items) for further information.

**Cash Reserves**

As you are aware, one of the significant impacts of the Corporate Fund's growing deficit is that effectively all cash reserves have been depleted. As a result, over the past couple of years, the Corporate Fund has had to rely on loans from various other funds of the City (including water and sewer, roads, and the library funds) just to meet operational needs. As part of the long-term planning efforts related to the Corporate Fund, we encourage the City to consider the need to begin restoring working cash reserves within the General Fund in addition to eliminating the existing deficit.

**Special Tax Levies**

As of June 30, 2012, current and prior period property tax levies for sanitation and CSO debt service have generated approximately $1.6 million and $6.8 million, respectively, in cumulative over levies. These funds have been segregated and reserved within the appropriate funds. We encourage the City to take these balances into consideration when setting future levies for the related activities.

To the Mayor and Members
    of the City Council
City of Dearborn Heights

November 13, 2012

**Allocation of Healthcare Costs and Administrative Fees**

During the audit, we noted that it has been some time since the City performed an analysis of the allocation of costs between departments (for example, the administrative costs charged to other funds by the Corporate Fund, the purchase/use of shared vehicles, healthcare cost reimbursements, etc.). Although the amounts appear reasonable, we encourage the City to update the analysis and that they be re-evaluated regularly (at least every two to three years).

**Fixed Asset Inventory**

In conjunction with our audit procedures at year end, we noted in the May 2012 Council minutes that various fixed assets were physically disposed of; however, these assets were not removed from the City's accounting records. The assets are fully depreciated, which means that there is no net impact on the City's financial statements; however, on a gross basis, both the fixed assets and accumulated depreciation are overstated. Additionally, related to the overall maintaining/tracking of fixed asset inventory, a manual system continues to be used by the City. Over the years, this manual system has proven to be cumbersome, time consuming, and subject to clerical errors. We recommend that the City consider the following: (1) complete inventory of fixed assets physically on hand and update accounting records and (2) convert from the manual system of tracking fixed assets to an electronic fixed asset module.

**Retirement Escrow Accounts**

As you are aware, certain employees were permitted to purchase years of service toward early retirement. As these amounts are withheld from the employee's pay, they are maintained in a segregated escrow account. It is the City's policy to wait until the full amount has been collected from the employee to transfer those funds into the pension system. During our testing, we noted that while those funds are being accumulated in the Escrow Fund, and supporting documentation does exist, it is not readily available. We recommend that the City create a spreadsheet to track each individual's amount and that a reconciliation of the account be performed regularly.

**Retiree Payouts**

During our testing of the retiree payouts spanning over multiple years pertaining to vacation and sick accruals, it was noted that signed contracts/supporting documentation were not readily available for a portion of the retirees tested. We encourage the City to maintain all signed supporting documentation until all amounts are paid in full.

To the Mayor and Members
   of the City Council
City of Dearborn Heights

November 13, 2012

**Remote Locations Internal Controls and Monitoring**

During the audit, we performed a review of internal controls over cash at the treasurer's office. As part of our review, we observed that the City recently implemented heightened security and internal controls over the safeguarding of cash collections made at the City Hall.  We encourage the City to maintain its focus and adjust controls when deemed necessary.  Additionally, we noted that there does not appear to be any strict controls in place to monitor cash collections made at remote locations throughout the city.

We recommend that the City consider implementing procedures to ensure that the same level of safeguards and internal controls over cash are in place at those locations as well.  Such a system could involve surprise cash counts, requiring periodic reports on internal controls in place over inventory and cash (including access to cash registers and safes), and establishing time-frames for remittances of cash collections to the treasurer's office.  We believe that implementing these types of processes will lead to greater oversight of and improved controls at the remote cash collection locations.

**County Administered Construction Projects**

The City has various ongoing capital projects that are administered by Wayne County (including activity related to the CSO and ECPAD projects).  Throughout the year, the County does not provide progress reports or other updates on the project activity, but rather this is typically done at year end only in conjunction with audit requests.  We recommend that the City request this information quarterly from the County and update the City records accordingly throughout the year (related accounts affected are cash reserves, fixed assets, and debt) in order to maintain more accurate/updated recording during the year.

To the Mayor and Members
  of the City Council
City of Dearborn Heights

## Section III - Legislative and Informational Items

### Revenue Sharing

The State budget has been passed and with it comes some tweaks to revenue sharing. One major change is moving 20 percent of the county revenue sharing to an incentive program. While the change in the county allocations does not directly affect the City, for informational purposes, those are also included in the table below. Total revenue sharing as compared to 2011-2012 is as follows:

| | 2012-2013 | 2011-2012 (as of 2/2012) | Change |
|---|---|---|---|
| Constitutional portion | $ 725,496,300 | $ 697,500,500 | 4% |
| EVIP ** | 225,000,000 | 210,000,000 | 7% |
| County revenue sharing | 104,480,000 | 115,000,000 | -9% |
| County incentive (EVIP-like)** | 26,120,000 | - | |
| Grants * | 15,000,000 | 5,000,000 | |
| Total | $ 1,096,096,300 | $ 1,027,500,500 | |

The EVIP, county incentive, and grants include significant one-time boilerplate appropriations of $7.5m, $2.5m, and $10m, respectively. EVIP payments will now be coming at the same time as the constitutional payments to the communities.

\*    Includes school districts and ISDs in 2012-2013, but only if not already receiving a grant from the State School Aid Fund. Also, funds can only be used for combining operations with a city, village, township, or county.

\*\*  In order to receive funds for EVIP and the county incentive program, the following requirements must be met:

### Category 1 - Accountability and Transparency - Due Date was 10/1/12

- Produce a citizens guide, including recognition of unfunded liabilities
- Produce a performance dashboard
- Publish a projected budget report - Include current and succeeding year, debt service payments, and assumptions used

### Category 2 - Consolidation of Services - Due Date 2/1/13

- Produce a consolidation plan
- If first time, include past endeavors and associated cost savings
- Must include one new initiative with savings estimate and timeline
- If no new initiatives identified, must address why it is not feasible to enter into any new consolidation efforts
- If second time, report on progress of prior plan, including barriers

To the Mayor and Members
    of the City Council
City of Dearborn Heights

November 13, 2012

## Category 3 - Employee Compensation - Due Date 6/1/13

Key point - This section has three options.

Option 1 - Modified Compensation Plan

- New hires that are eligible for retirement plans must be put in plans that cap employer contributions at 10 percent of base salary if eligible for Social Security or 16.2 percent if not.

- For defined benefit plans, maximum multipliers are as follows:

| Eligible for Social Security? | Provided with Retiree Health Care? | Maximum Multiplier |
|---|---|---|
| Yes | Yes | 1.5% |
| Yes | No | 2.25% |
| No | Yes | 2.25% |
| No | No | 3.00% |

- For defined benefit plans, final average compensation shall use a minimum of three years and shall not include more than 240 hours of paid leave.  Overtime hours shall not be included.

- Healthcare premium costs for new hires shall include a minimum 20 percent employee share or employer's share shall be cost competitive with new state preferred provider organization health plan on a per-employee basis.

Option 2 - Compliance with PA 152 of 2011 - Publicly Funded Health Insurance Contribution Act - Certify compliance with the new act that requires hard caps or alternately 80 percent/20 percent cost sharing.  This includes the opt-out provision.

Option 3 - Certify that no medical benefits are offered

To the Mayor and Members                                    November 13, 2012
   of the City Council
City of Dearborn Heights

## **Payment Timing Has Changed (Well, Sort of!)**

For all except counties, the way that payments are distributed has changed.  In 2011-2012, a portion of the payment for each of the three categories was paid on each of the six payment dates throughout the year.  Now, there are only two payment dates for each of the three categories, such that each local unit will not receive payment associated with each category until the due date, and then the payment will be split between the following two months. The following is an example:

| | Prior Methodology | | | New Methodology | | |
| | Category | | | Category | | |
| | 1 | 2 | 3 | 1 | 2 | 3 |
|---|---|---|---|---|---|---|
| October 31, 2012 | 10,000 | 10,000 | 10,000 | 30,000 | | |
| December 31, 2012 | 10,000 | 10,000 | 10,000 | 30,000 | | |
| February 28, 2013 | 10,000 | 10,000 | 10,000 | | 30,000 | |
| April 30, 2013 | 10,000 | 10,000 | 10,000 | | 30,000 | |
| June 30, 2013 | 10,000 | 10,000 | 10,000 | | | 30,000 |
| August 31, 2013 | 10,000 | 10,000 | 10,000 | | | 30,000 |
| Total | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |

If a local unit fails to meet the initial certification timeline, there is still an opportunity to get the second of the two payments if the unit certified prior to the first month of the second distribution.  For example, if you miss the October 1, 2012 deadline, a certification prior to December 1, 2012 will allow you to receive the second normally scheduled payment, but not the first.

To the Mayor and Members                                    November 13, 2012
   of the City Council
City of Dearborn Heights

## Healthcare Limitations

PA 152 of 2011, the "Publicly Funded Health Insurance Contribution Act," was signed into law by the governor in late September 2011.  This new law requires all public employers to place hard caps on the amounts they contribute toward health care with an option to elect an 80 percent contribution cap rather than a hard cap.  There is also an option for a "local unit" to opt out entirely.  Please note that local unit has a different definition than public employer.  Not all public employers are deemed to be local units.

PA 152 would limit annual costs for medical benefit plans to the following:

- $5,500 for single coverage
- $11,000 for individual and spousal coverage
- $15,000 for family coverage

These limits would apply to "contract years" beginning after January 1, 2012 (although it would not apply to employees covered by a union contract entered into before September 27, 2011 until that contract expired). Current guidance from the treasury department defines "contract year" as the one-year period beginning on the date that newly elected or newly renewed coverage begins for a group of persons under a medical benefit plan (typically, this period begins soon after the close of the annual open enrollment).

Alternatively, given a majority vote of its governing bodies, a public employer can opt out of the hard cap and into an 80 percent contribution cap.  Under this option, public employers would pay no more than 80 percent of the total annual costs for all of the medical benefit plans it offers or contributed to for its employees and elected public officials.  This option would require that publicly elected officials would have to pay 20 percent or more of the total annual costs of that plan but the employee's share of the costs could be allocated as the government sees fit.

This act does contain a complete opt-out provision, but only for local units.  It would allow communities to opt-out of these provisions entirely with a 2/3 vote of the governing body.

Failure to comply with the provisions in this act will result in a 10 percent reduction in each EVIP payment for the period of noncompliance.  Opting out by a 2/3 vote of the governing body under the provisions of this act is not considered failure to comply.

## Potential Elimination of the Personal Property Tax

There has been much talk regarding elimination of personal property tax. If the personal property tax were completely eliminated, this would reduce revenue for communities across the state by approximately $770 million.  Including the school districts, the lost revenue would be over $1 billion. The City of Dearborn Heights' personal property tax currently brings in approximately $865,000 or 3.5 percent of gross property tax revenue collected by the City.

To the Mayor and Members
   of the City Council
City of Dearborn Heights

In April 2012, the Senate introduced a package of eight bills (SB1065-SB1072) aimed to eliminate personal property taxes. The bills, as amended, were passed by the Senate in early May. These bills await action by the House.

Here is a summary of what these tie-barred bills stipulate:

- Exemption, beginning December 31, 2012, for commercial and industrial personal property if the combined taxable value of all such property owned by the taxpayer were less than $40,000.
- Eligible manufacturing personal property purchased after December 31, 2011 would be exempt from personal property tax beginning December 31, 2015.
- Effective December 31, 2015, eligible manufacturing personal property that had been subject to taxation for 10 years would now be exempt.
- Provision for reimbursement to the local unit via a newly created personal property tax reimbursement fund:
  - Reimbursement, starting in the 2012-2013 fiscal year, for the amount of debt mill and voter-approved qualified mill loss. Debt mill loss is defined as revenue loss associated with debt mills that were levied in the 2012 fiscal year and that have not expired or been subsequently renewed. Qualified voter-approved mills means a millage levied in the 2012 or subsequent fiscal year for a specific purpose or activity, that is not a general operating millage and that was approved by the voters prior to the 2103 fiscal year.
  - Reimbursement, starting in the 2016 fiscal year, would be for monies lost in excess of 2 percent of General Fund revenue in the 2012 fiscal year plus the aggregate amount of lost tax capture for each tax increment financing authority. Reimbursement calculation would be exclusive of the debt mill loss or voter-approved qualified mill loss discussed above.

It is important to note that the bills, as amended, would essentially reimburse locals 100 percent immediately for all debt millages as well as all special voted millages, like police and fire. The bills also include poison pill language which nullifies the bills if the replacement fund is not fully funded.

## Retro-pay Prohibition

Public Act 54 of 2011, which was signed by the governor on June 7, prohibits retroactive pay on an expired contract and calls for employees working under an expired agreement to bear the cost of any increased healthcare costs until a new contract is in effect. During that period, the public employer is authorized to make payroll deductions necessary to pay the increased cost of maintaining those benefits.

To the Mayor and Members                                    November 13, 2012
   of the City Council
City of Dearborn Heights

## Deficit Elimination Plans

The Michigan Department of Treasury issued numbered letter 2012-1 in February 2012, which clarifies when a deficit elimination plan is required and how to quantify the deficit requiring elimination.  In addition, it also charges local units with the responsibility to file deficit elimination plans concurrent with the submission of the audit report to the Department of Treasury. Local units should no longer be waiting for a letter from the State to file their plans.  The plans are now due on or before the filing of your financial statement. Failure to file a plan can result in withholding of 25 percent of the EVIP revenue-sharing payments.

The plans should typically result in elimination of the deficit within one year but should never exceed five years.  These plans should also have acceptable evidence to support the plan.  The letter defines "acceptable evidence" as certified board/council resolutions approving the funding and the journal entry showing that the transfer was made in the general ledger.  Additionally, if there is a projected multi-year budget, this too must be approved by the council/board and submitted.  Plans and support can be emailed to Treas_MunicipalFinance@michigan.gov or mailed to the Michigan Department of Treasury.

The letter defines a fund deficit, since the law lacks any reference to generally accepted accounting terminology. It states that for governmental funds (not proprietary funds, fiduciary funds, or discretely presented component units) "a plan is necessary to eliminate any "unrestricted fund balance" deficits.  Unrestricted fund balance is the sum of the committed, assigned, and unassigned balances."  Determining whether a deficit exists is more challenging for proprietary funds, fiduciary funds, and discretely presented component units and local units will be expected to apply the test that is explained in the letter.  We highly recommend that local units review the letter at the following link to ensure that they comply with the requirements: http://www.michigan.gov/treasury/0,1607,7-121-1751_2194_2196---,00.html#2012.

## Bills Being Considered

### Prohibition Against Hiring Current Retirees

House Bill 5637, the Jobs Initiative Reform Act, is a bill that has been introduced in the House that prohibits public employers in Michigan from employing an individual who is receiving benefits from the public employer's defined benefit retirement plan and to provide sanctions.

A public employer shall not directly, or indirectly through a contract with a third party, employ an individual who is receiving retirement benefits from a public employee defined benefit retirement plan of that public employer.  This prohibition does not apply if the individual waives his or her right to receive previously accrued retirement benefits from that public employer's defined benefit retirement plan while reemployed by the public employer.

To the Mayor and Members
   of the City Council
City of Dearborn Heights

November 13, 2012

Sanctions would consist of reimbursing the defined benefit retirement plan for retirement benefits that the defined benefit retirement plan paid to the individual during the prohibited employment.

This appears to be an issue only if a retiree is being rehired by the existing employer and would not apply if that retiree seeks employment with a different employer.

## PA 314 Pension Changes

Senate Bill 797 and House Bill 5416 make some significant changes to Public Act 314, as follows:

- The legislation utilizes existing asset classes but expands some categories such as foreign equities (from 20 percent to 70 percent), real estate (5-10 percentage points higher), and the "basket clause" (10 percentage points higher than existing limits for all plan sizes).
- Requires fee disclosures by investment service providers
- Establishes uniform transparency standards to allow for benchmarking
- Expands prohibition against payments to providers that make contributions to plan sponsor officials
- Permits local pension boards to self-police which means they can remove a member who is legally incapacitated, convicted of certain violations, or has committed material breaches of policies
- Imposes limits on dollars spent on training to the lesser of $12,000 per board trustee or $150,000. No one trustee can spend more than $30,000.
- Requires the retention of records for six years

To the Mayor and Members
of the City Council
City of Dearborn Heights

November 13, 2012

**Client:** **City of Saline, Michigan**
**Opinion Unit:** **Governmental Activities**
**Y/E:** **6/30/2012**

### SUMMARY OF UNRECORDED POSSIBLE ADJUSTMENTS

The pretax effect of misstatements and classification errors identified would be to increase (decrease) the reported amounts in the financial statement categories identified below:

| Ref. # | Description of Misstatement | Current Assets | Long-term Assets | Current Liabilities | Long-term Liabilities | Equity | Revenue | Expenses | Income |
|---|---|---|---|---|---|---|---|---|---|
| **KNOWN MISSTATEMENTS:** | | | | | | | | | |
| A1 | To record the prepayment of IT services paid to the City of Dearborn | $ (33,333) | $ 33,333 | | | | | | |
| A2 | To accrue in the General Fund the police uniforms purchased that relates to fiscal year 2012 | | | $ 93,292 | | | | $ 93,292 | $ (93,292) |
| A3 | To record the accrual of TIFA settlement money | 100,000 | | | | | $ 100,000 | | 100,000 |
| **ESTIMATE ADJUSTMENTS:** | | | | | | | | | |
| B1 | Increase to the MTT/chargeback liability | | | 135,300 | | | (135,300) | | (135,300) |
| B2 | To reserve/write off approximately 75 percent of delinquent personal property taxes as noncurrent | (70,000) | | | | | | 70,000 | (70,000) |
| B3 | To allocate a portion of the workers' compensation self-insurance reserves and IBNR liabilities to W&S Fund/BTA (thus reducing GA) | | | | $ (168,000) | | | (168,000) | 168,000 |
| B4 | To allocate a portion of the general self-insurance reserves and IBNR liabilities to W&S Fund/BTA (thus reducing GA) | | | | (621,000) | | | (621,000) | 621,000 |
| B5 | To allocate portion of premiums paid and subsidy to W&S OPEB obligation (cumulative amount since GASB No. 45 adopted) - Increasing GA allocation | | | | 558,000 | | | 558,000 | (558,000) |
| **IMPLIED ADJUSTMENTS:** | | | | | | | | | |
| C1 | None noted | - | - | - | - | $ - | - | - | - |
| | Combined effect | $ (3,333) | $ 33,333 | $ 228,592 | $ (231,000) | $ - | $ (35,300) | $ (67,708) | $ 32,408 |

**Client:** **City of Dearborn Heights, Michigan**
**Opinion Unit:** **Business-type Activities/Water and Sewer Fund**
**Y/E:** **6/30/2012**

### SUMMARY OF UNRECORDED POSSIBLE ADJUSTMENTS

The pretax effect of misstatements and classification errors identified would be to increase (decrease) the reported amounts in the financial statement categories identified below:

| Ref. # | Description of Misstatement | Current Assets | Long-term Assets | Current Liabilities | Long-term Liabilities | Equity | Revenue | Expenses | Income |
|---|---|---|---|---|---|---|---|---|---|
| **KNOWN MISSTATEMENTS:** | | | | | | | | | |
| A1 | To record the prepayment of IT services paid to the City of Dearborn | $ (16,667) | $ 16,667 | | | | | | |
| **ESTIMATE ADJUSTMENTS:** | | | | | | | | | |
| B1 | Increase to the MTT/chargeback liability | | | $ 11,400 | | | $ (11,400) | | $ (11,400) |
| B2 | To allocate a portion of the workers' compensation self-insurance reserves and IBNR liabilities to W&S Fund/BTA | | | | $ 168,000 | | | $ 168,000 | (168,000) |
| B3 | To allocate a portion of the general self-insurance reserves and IBNR liabilities to W&S Fund/BTA | | | | 621,000 | | | 621,000 | (621,000) |
| B4 | To allocate a portion of premiums paid and subsidy to W&S OPEB obligation (cumulative amount since GASB No. 45 adopted) | | | | (558,000) | | | (558,000) | 558,000 |
| **IMPLIED ADJUSTMENTS:** | | | | | | | | | |
| C1 | None noted | - | - | - | - | - | - | - | - |
| | Combined effect | $ (16,667) | $ 16,667 | $ 11,400 | $ 231,000 | $ - | $ (11,400) | $ 231,000 | $ (242,400) |

To the Mayor and Members
  of the City Council
City of Dearborn Heights

November 13, 2012

Client: **City of Dearborn Heights, Michigan**
Opinion Unit: **General Fund (Major Governmental Fund)**
Y/E: **6/30/2012**

### SUMMARY OF UNRECORDED POSSIBLE ADJUSTMENTS

The pretax effect of misstatements and classification errors identified would be to increase (decrease) the reported amounts in the financial statement categories identified below:

| Ref. # | Description of Misstatement | Current Assets | Long-term Assets | Current Liabilities | Long-term Liabilities | Equity | Revenue | Expenses | Income |
|---|---|---|---|---|---|---|---|---|---|
| **KNOWN MISSTATEMENTS:** | | | | | | | | | |
| A3 | To record the accrual of TIFA settlement money | $ 100,000 | | $ 100,000 | | | | | |
| **ESTIMATE ADJUSTMENTS:** | | | | | | | | | |
| B1 | Increase to the MTT/chargeback liability | | | 133,000 | | | $ (133,000) | | $ (133,000) |
| B2 | To record approximately 75 percent of delinquent personal property taxes as noncurrent | (70,000) | $ 70,000 | | | | | | |
| **IMPLIED ADJUSTMENTS:** | | | | | | | | | |
| C1 | None noted | - | - | - | $ - | $ - | - | $ - | - |
| | Combined effect | $ 30,000 | $ 70,000 | $ 233,000 | $ - | $ - | $ (133,000) | $ - | $ (133,000) |

Client: **City of Dearborn Heights, Michigan**
Opinion Unit: **Aggregate Remaining Fund Information**
Y/E: **6/30/2012**

### SUMMARY OF UNRECORDED POSSIBLE ADJUSTMENTS

The pretax effect of misstatements and classification errors identified would be to increase (decrease) the reported amounts in the financial statement categories identified below:

| Ref. # | Description of Misstatement | Current Assets | Long-term Assets | Current Liabilities | Long-term Liabilities | Equity | Revenue | Expenses | Income |
|---|---|---|---|---|---|---|---|---|---|
| **KNOWN MISSTATEMENTS:** | | | | | | | | | |
| A1 | None noted | | | | | | | | |
| **ESTIMATE ADJUSTMENTS:** | | | | | | | | | |
| B1 | Increase to the MTT/chargeback liability | | | $ 2,300 | | | $ (2,300) | | $ (2,300) |
| **IMPLIED ADJUSTMENTS:** | | | | | | | | | |
| C1 | None noted | $ - | $ - | - | $ - | $ - | - | $ - | - |
| | Combined effect - Before income taxes | $ - | $ - | $ 2,300 | $ - | $ - | $ (2,300) | $ - | $ (2,300) |