# EXHIBIT D

*In re MF Global Inc.*, Hearing Transcript (Bankr. S.D.N.Y. Apr. 18, 2012)

1    UNITED STATES BANKRUPTCY COURT

2    FOR THE SOUTHERN DISTRICT OF NEW YORK

3    Case No. 11-15059-mg

4    - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    MF GLOBAL HOLDINGS LTD., et al.,

8                     Debtors.

9    - - - - - - - - - - - - - - - - - - - - - -x

10   MF GLOBAL INC., et al.,

11                    Debtors.

12

13   Adv. Pro. 11-02790-mg

14   - - - - - - - - - - - - - - - - - - - - - -x

15                  United States Bankruptcy Court

16                  One Bowling Green

17                  Courtroom 501

18                  New York, NY  10004-1408

19

20                  April 12, 2012

21                  10:12 AM

22

23   B E F O R E:

24   HON. MARTIN GLENN

25   U.S. BANKRUPTCY JUDGE

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 2 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 2

1   (CC: doc no. 597) Application of the Chapter 11 Trustee for

2   Entry of an Order Authorizing the Trustee to Retain and Employ

3   Covington & Burling LLP as Special Insurance Counsel Nunc Pro

4   Tunc to the Appointment Date filed by Brett H. Miller on behalf

5   of Louis J. Freeh, Chapter 11 Trustee.

6   Marked Up Documents: 597, 614

7

8   Doc# 587 Motion to Approve/Chapter 11 Trustees Motion Pursuant

9   to 11 U.S.C. 105, 363 and 365 to (A) Establish Procedures for

10   the Sale or Disposal of De Minimus Assets; and (B) Authorize

11   the Trustee to (I) Pay Related Fees, and (II) Assume, Assume

12   and Assign, or Reject Related Executory Contracts or Unexpired

13   Leases - Document #: 587

14   Marked Up Documents: 587, 622

15

16   (Doc# 551, 511) Final Hearing RE: (I) Authorizing, But Not

17   Requiring, the Trustee to Pay Prepetition Employee Compensation

18   and Benefits Obligations; and (II) Confirming That the Trustee

19   Is Able to Continue Certain Ordinary-Course Benefits Programs

20   signed on 3/9/2012 (related document(s) 511). - Document #:551

21   Marked Up Documents: 511, 512, 551, 576

22

23   (Doc no. 510) Motion for Interim and Final Orders Under 11

24   U.S.C. Sections 105, 363, 364, 503(b)(1), 553 and 1108 and Fed.

25   R. Bankr. P. 6003 (I) Authorizing Continued Use of Existing (A)

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 3 of 95
VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 3

1   Bank Accounts, (B) Cash Management System, and (C) Business

2   Forms and Checks; and (II) Authorizing the Continuation of

3   Intercompany Transactions Among the Debtors and Non-Debtor

4   Affiliates and According Superpriority Status to All

5   Postpetition Intercompany Claims filed by Brett H. Miller on

6   behalf of Louis J. Freeh, Chapter 11 Trustee.

7   Marked Up Documents: 510, 529

8

9   (CC: Doc no. 1113) Motion by Sapere CTA Fund, L.P. for Entry of

10  Order, Judgment and Decree that the Trustee make Restitution to

11  Commodities Customers of $120,000,000 To Be Paid From The

12  Proceeds of Professional Liability Policies Insuring MF Global,

13  Inc. Issued by MFG Assurance Co. Ltd. filed by Jon R. Grabowski

14  on behalf of Sapere.

15  Marked Up Documents: 1113, 1117, 1122, 1186, 1221, 1273, 1301,

16  1302, 1305

17

18  (CC: Doc no. 1050, 1111, 1112) Hearing RE: Objections to Joint

19  Notice of Presentment of Stipulation and Order Resolving

20  Objection Relating to Assignment and Release of Claims from

21  Futures Customers filed by Christopher K. Kiplok on behalf of

22  James W. Giddens, Trustee for the SIPA Liquidation of MF

23  Global, Inc.

24  Marked Up Documents: 1050, 1111, 1112, 1190, 1206, 1208, 1215,

25  1216, 1217, 1274, 1277, 1295, 1296, 1307

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 4 of 95
VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

Page 4

1

2    (CC: Doc no. 1086) Motion of James W. Giddens, SIPA Trustee for

3    Liquidation of MF Global, Inc., to Approve First Interim

4    Distribution for Allowed Commodity Futures Claims.

5    Document #: 1086

6    Marked Up Documents: 1086, 1098, 1190, 1206, 1208, 1215, 1216,

7    1277, 1297, 1300

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Anna Maria Leon

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 5

```
 1
 2   A P P E A R A N C E S :
 3   MORRISON & FOERSTER, LLP
 4        Counsel for the Chapter 11 Trustee
 5        1290 Avenue of the Americas
 6        New York, NY  10104
 7
 8   BY:   LORENZO MARINUZZI, ESQ.
 9         MELISSA A. HAGER, ESQ.
10         BRETT H. MILLER, ESQ.
11         WILLIAM M. HILDBOLD, ESQ.
12
13
14   DEWEY & LEBOEUF LLP
15        Counsel for the Statutory Creditors Committee
16        1301 Avenue of the Americas
17        New York, NY  10019
18
19   BY:   MARTIN J. BIENENSTOCK, ESQ.
20         IRENA M. GOLDSTEIN, ESQ.
21
22
23
24
25
```

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 6

```
 1   UNITED STATES DEPARTMENT OF JUSTICE

 2         Office of the U.S. Trustee

 3         33 Whitehall Street, 21st Floor

 4         New York, NY  10004

 5

 6   BY:   BRIAN MASUMOTO, ESQ.

 7

 8

 9   BERGER & MONTAGUE, P.C.

10         Counsel for Kay P. Tee Group, Chapter 11 and SIPA

11         1622 Locust Street

12         Philadelphia, PA  19103

13

14   BY:   MERRILL G. DAVIDOFF, ESQ.

15         MICHAEL C. DELL'ANGELO, ESQ.

16

17   HUGHES HUBBARD & REED LLP

18         Counsel for the SIPA Trustee

19         One Battery Park Plaza

20         New York, NY  10022

21

22   BY:   JAMES B. KOBAK, JR., ESQ.

23         JOSIAH S. TRAGER, ESQ.

24         ETHAN E. LITWIN, ESQ.

25
```

13-53846-tjt    Doc 5706-4    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 7 of 95
VERITEXT REPORTING COMPANY
212-267-6868                www.veritext.com                516-608-2400

Page 7

1  ENTWISTLE & CAPPUCCI LLP

2       Counsel for the Commodities Customers

3       280 Park Avenue, 26th Floor West

4       New York, NY  10017

5

6  BY:   ANDREW J. ENTWISTLE, ESQ.

7        JOSHUA K. PORTER, ESQ.

8

9

10  FORD MARRIN ESPOSITO WITMEYER & GLESER, LLP

11      Counsel for Sapere CTA Fund LP

12      Wall Street Plaza

13      New York, NY  10005

14

15  BY:   JOHN J. WITMEYER, III, ESQ.

16        STEPHEN R. CHUK, ESQ.

17

18

19  FOLEY & LARDNER LLP

20      Counsel for Greenbrier Partners

21      321 North Clark Street, Suite 2800

22      Chicago, IL  60654

23

24  BY:   GEOFFREY S. GOODMAN, ESQ.

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 8 of 95
VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

Page 8

1

2   ZACH ZUNSHINE, ATTORNEY AT LAW

3        Counsel for Jill Zunshine

4        P.O. Box 231398

5        New York, NY  10023

6

7   BY:   ZACH ZUNSHINE, ESQ.

8

9

10  SCHUYLER, ROCHE & CRISHAM, PC

11       Counsel for Several Debtors' Customers

12       One Prudential Plaza, Suite 3800

13       Chicago, IL  60601

14

15  BY:   NEIL R. STEVENS, ESQ.

16

17  Via Telephone

18  PEPPER HAMILTON LLP

19       Counsel for the Chapter 11 Trustee

20       1313 Market Street

21       Wilmington, DE  19899

22

23  BY:   DAVID M. FOURNIER, ESQ.

24

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 9 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 9

1    BARNES & THORNBURG LLP

2         Counsel for the Creditor, Commodity Customer Coalition

3         One North Wacker Drive, Suite 4400

4         Chicago, IL  60606

5

6    BY:   VINCENT P. (TRACE) SCHMELTZ, III, ESQ.

7

8

9    SECURITIES INVESTORS PROTECTION CORPORATION

10        Counsel for SIPC

11        805 15th Street, N.W., Suite 800

12        Washington, D.C.  20005

13

14   BY:   CHRISTOPHER H. LAROSA, ESQ.

15

16

17   U.S. COMMODITY FUTURES TRADING COMMISSION

18        Counsel for CFTC, Party in Interest

19        Three Lafayette Centre

20        1155 21st Street, N.W.

21        Washington, D.C.  20581

22

23   BY:   ROBERT WASSERMAN, ESQ.

24

25

VERITEXT REPORTING COMPANY
212-267-6868                www.veritext.com                516-608-2400

```
 1   STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC

 2         Counsel for Creditor, Lee Stern

 3         2323 Bryan Street, Suite 2200

 4         Dallas, TX  75201

 5

 6   BY:   PETER C. D'APICE, ESQ.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 11

```
 1                  P R O C E E D I N G S

 2           THE COURT:   All right.  Please be seated.

 3           All right.  We are here in MF Global Holdings Ltd,

 4   No. 11-15059 and MF Global Inc., 11-02790.  We're going to take

 5   the MF Global Holdings matters first.

 6           Mr. Marinuzzi?

 7           MR. MARINUZZI:   Good morning, Your Honor.  For the

 8   record, Lorenzo Marinuzzi, Morrison & Foerster, counsel for the

 9   Chapter 11 Trustee, Louis Freeh.

10           We're here this morning on four uncontested motions,

11   Your Honor, the first of which is a motion for interim and

12   final order authorizing the new debtors' continued use of

13   existing cash management system and forms.  Your Honor, there

14   have been no objections.  There was a revision to the final

15   order made in the past couple of days a reservation of rights

16   that was requested by the SIPA Trustee which is acceptable to

17   the Chapter 11 Trustee as well as the U.S. Trustee in JPMorgan

18   Chase.  Mr. Fournier of Pepper Hamilton is on the telephone if

19   Your Honor has any specific questions.  I have a copy of the

20   marked order with me if I --

21           THE COURT:   I want it, just want to hand it up.

22           All right.  Does anybody else wish to be heard with

23   respect to the debtors' application for final order on

24   continued use of existing bank accounts, cash management, et

25
```

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 12

```
 1    cetera?

 2              All right.  Hearing none, that's granted.

 3              MR. MARINUZZI:   Thank you, Your Honor.

 4              Your Honor, the next motion on the agenda is the

 5    Chapter 11 Trustee's motion for interim and final orders

 6    authorizing but not requiring the Trustee to pay prepetition

 7    employee compensation and benefit obligations.  For that, Your

 8    Honor, I will turn the podium over to my colleague, Melissa

 9    Hager.

10              THE COURT:   Okay.  Thank you.

11              MS. HAGER:   Good morning, Your Honor.  Melissa Hager

12    of Morrison & Foerster on behalf of the Chapter 11 Trustee,

13    Louis J. Freeh.

14              Your Honor, as my colleague, Mr. Marinuzzi,

15    indicated, there have been no objections filed to this motion.

16    It was originally filed in connection with the first day

17    hearings of Holdings USA on March 2.  There was a hearing held

18    on March 6 with regard to the interim relief sought therein.

19    An order was granted on March 9 with regard to that.  There was

20    one issue that remained outstanding with the U.S. Trustee after

21    the March 6 hearing on the 401K issue.  There's a supplemental

22    order entered on March 20 on that issue.  Pursuant to the terms

23    of the interim order, of paragraph 19 of the interim order, if

24    no objections were filed, the interim order would become final

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 13

1    automatically.  There was three remaining issues that at the

2    request of the U.S. Trustee's office, we tabled to the final

3    hearing, and that's with regard to the payment of the Health

4    Plan Administrator for the employee benefits, the return of the

5    refunds under the employee stock purchase plan, and the ability

6    to terminate the long-term incentive plan for the employees of

7    MF Global.

8              We have not received any objections to any of those

9    motions from anyone.  I can certainly go through those in more

10   detail with Your Honor if you would like, but we are seeking

11   the final relief with regard to those three issues that were

12   not part of the interim order, and I do have a marked up order

13   of the final order.

14             THE COURT:   Right.  Let me see that.  Thank you.

15             MS. HAGER:   If I may approach?

16             THE COURT:   Yes.

17             MS. HAGER:   Thank you, Your Honor.

18             THE COURT:   Thank you.

19             MS. HAGER:   Thank you.

20             THE COURT:   Mr. Masumoto, we deferred some of these

21   items to give you and your office an opportunity to review the

22   matter further with the debtor.  Do you have -- what is your

23   position?

24             MR. MASUMOTO:   We have no further objections at this

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 14

```
 1    time, Your Honor.

 2              THE COURT:   Thank you.  Does anybody else wish to be

 3    heard with respect to the application for a final order

 4    authorizing the payment of prepetition employee compensation,

 5    benefits, et cetera?

 6              All right.  Hearing none, that's granted as well.

 7    Thank you very much.

 8              MS. HAGER:   Thank you, Your Honor.

 9              MR. MARINUZZI:   Your Honor, that brings us to the

10    third item on the agenda, which is the Chapter 11 Trustee's

11    motion for approval of procedures for the sale of de minimis

12    assets and assumption of related contracts and rejection of

13    related contracts.  For that I'll turn the podium over to my

14    colleague, William Hildbold.

15              THE COURT:   Thank you.

16              MR. HILDBOLD:   Good morning, Your Honor.  Billy

17    Hildbold on behalf of the Trustee.

18              I'm here to represent the Trustee's motion for an

19    order to establish procedures for the sale or disposal of de

20    minimis assets.  We received comments from the U.S. Trustee,

21    the SIPA Trustee, and the U.S. Attorney's office, and also made

22    some further changes to comply with your opinion in Borders.  I

23    have a marked up order.

24              THE COURT:   All right.  Why don't you bring it up?

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

 1              Thank you.  Just give me a chance to look at the mark

 2    up.

 3              The question I have is, and you can tell me where it

 4    is in here, is the issue of whether you have to file an

 5    application for retention of the auctioneers since there really

 6    is -- it's not ordinary-course of business, and ordinarily you

 7    would have to -- have you discussed that with the U.S.

 8    Trustees?

 9              MR. HILDBOLD:  Yes, and we altered the order to

10    include that in there.  I believe it's toward the end of the

11    order.

12              THE COURT:  Yes, I see it in paragraph 22.

13              MR. HILDBOLD:  Yes.

14              THE COURT:  Okay.

15              MR. HILDBOLD:  We also submitted a declaration of

16    Sean Gumbs of FTI.

17              THE COURT:  Okay.  All right.  Mr. Masumoto, are you

18    satisfied with this?

19              MR. MASUMOTO:  Based upon the changes, Your Honor,

20    we're satisfied.

21              THE COURT:  All right.  Does anybody else wish to be

22    heard with respect to the motion to establish procedures for

23    the sale of de minimis assets?

24              All right.  The Court has reviewed the motion and

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 16

1   reviewed the proposed order, in particular raised this question

2   about the retention of broker's auctioneers, and I see the

3   change that's been made on that.  That motion is granted as

4   well.  Thank you very much.

5              MR. HILDBOLD:   Thank you, Your Honor.

6              MR. MARINUZZI:   Your Honor, that brings us to the

7   final application on the calendar for the Chapter 11 case, and

8   that's the Chapter 11 Trustee's application to retain Covington

9   & Burling as Special Insurance Counsel under 327(a).  Submitted

10  along with that application is the supplemental declaration of

11  Louis J. Freeh.  Mr. Ben Duke of Covington is in the courtroom,

12  should the Court have any questions specific to the firm.

13  There have been no objections filed to the application.  There

14  were some questions asked by the U.S. Trustee's office and

15  we've conveyed the answers either indirectly or directly.

16             If Your Honor has any questions, we're happy to

17  answer them.  Otherwise we respectfully request that the

18  application be granted.

19             THE COURT:   Mr. Masumoto?

20             MR. MASUMOTO:   Your Honor, we have no further

21  objections.

22             THE COURT:   All right.  Does anybody else wish to be

23  heard with respect to the application to retain Covington &

24  Burling LLP as Special Insurance Counsel?

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 17

```
 1                    All right.  That motion is granted as well.

 2                    MR. MARINUZZI:   Thank you, Your Honor.

 3                    THE COURT:   Thank you very much.

 4                    MR. MARINUZZI:   That concludes the calendar.

 5                    THE COURT:   Okay.

 6                    MR. BIENENSTOCK:   Your Honor, the committee --

 7                    THE COURT:   Just identify yourself for the record.

 8     Mr. Bienenstock.

 9                    MR. BIENENSTOCK:   Martin Bienenstock of Dewey &

10     LeBoeuf for the statutory creditors committee.

11              Your Honor, we have filed a status report because we

12     thought it would be instructive both for our constituency as

13     pursuant to the statute and to the Court.

14                    THE COURT:   I read it.

15                    MR. BIENENSTOCK:   I appreciate it, Your Honor.  If

16     the Court feels it might be useful, I'd like to highlight a few

17     things about the status report just a few minutes.  I assured

18     Mr. Kobak this is not an effort to ask the Court to call balls

19     and strikes as between, you know, the information request --

20                    THE COURT:   You filed that separately in the MF

21     Global Inc. proceeding, but go ahead.

22                    MR. BIENENSTOCK:   We did, but that was in a joinder.

23     So the purpose of this as I mentioned is to educate our

24     constituency and also the Court, but for the Court -- the

25
```

VERITEXT REPORTING COMPANY
212-267-6868                           www.veritext.com                           516-608-2400

Page 18

1    reason we thought it was important for the Court to see it, is

2    for the Court to see what the administration of the Chapter 11

3    debtor's estates requires to get to an end point.  And there's

4    been very little detail about that.  So very briefly, Your

5    Honor, the first four pages of the status report really go to

6    explaining the liability structure that may or may not give

7    rise to equity for creditors of the holding company.  There's

8    the 1.6 billion of missing funds, according to the SIPA

9    Trustee's report at MFGI.  Now --

10            THE COURT:   And you question whether it's 1.6 or 600

11   or whatever it is.

12            MR. BIENENSTOCK:   We do, and the reason that's

13   relevant is for two main reasons.  The first is we do own the

14   equity in that, and just days before the bankruptcy, creditors

15   of the holding company provided $875 million that went down

16   into MFGI.  So there may or may not be equity there.   In

17   addition, MF -- the holding company, MF Global Holdings Ltd,

18   has customer accounts at MFGI, its affiliates have customer

19   accounts, and we have intercompany claims.  So to determine the

20   potential values, the creditors of the holding company may get

21   from MFGI, it's obviously very relevant whether there is really

22   a billion-six of missing funds, and I think more of the

23   question about this issue really relates to the definition of

24   missing funds as opposed to where they are, because most people

25

212-267-6868          VERITEXT REPORTING COMPANY          516-608-2400
www.veritext.com

1    in the case I believe think they know generally where most of

2    the funds are.  It's -- I -- we think that the SIPA Trustee is

3    saying, he doesn't have them, not necessarily that people don't

4    know where they are.

5           But in any event, for creditors of the holding

6    company to assess the holding company's recovery from MFGI and

7    its affiliates, that's obviously something that needs

8    clarification as to how they are computing it, what will be

9    recovered, and what not.

10          I -- the global close, the absence of a global close

11   is obviously troubling and that's occasioning efforts,

12   substitute efforts that take longer and more expense.

13          THE COURT:  You're not laying that at the feet of

14   the SIPA Trustee, are you?

15          MR. BIENENSTOCK:  Well, I'm -- the SIPA Trustee says

16   that he didn't agree because the UK Administrator didn't agree,

17   so we're not pointing one finger.  We're just saying it's very

18   regrettable that all of these fiduciaries and all of these

19   debtors could not have agreed to the shortest and least

20   expensive method of reconciling the books.  But we -- that's --

21   as I said, I'm not asking --

22          THE COURT:  I wish it were so easy as to reconcile

23   the books, but let's accept your statement at face value.

24          MR. BIENENSTOCK:  Now there aren't $290 million of

25

13-53846-tjt    Doc 5706-4    Filed 08/30/14    Entered 08/30/14 22:01:38    Page 20 of 95
VERITEXT REPORTING COMPANY
212-267-6868                www.veritext.com                516-608-2400

Page 20

1    non-customer estate assets that the SIPA Trustee reports --

2            THE COURT:   Let me interrupt for this purpose --

3            MR. BIENENSTOCK:   Yeah.

4            THE COURT:   -- because I have given some thought to

5    the filing that Mr. Miller filed in the SIPA case with respect

6    to -- it's filed in response to a motion that really has

7    nothing to do with it, but the request for additional

8    information, and you filed a brief joinder in it, and that's

9    the issue you raise in here.  And when I read the omnibus reply

10   that Mr. Kobak filed, he indicated that the six month of report

11   I believe is due June 4.  And so when I pondered whether -- it

12   is important, Mr. Bienenstock, that not only the creditors of

13   the holding company, but of all constituencies have as much

14   information as possible -- as to whether that June 4 date is a

15   reasonable date to adhere to, and my conclusion is that it is.

16   But that I do expect that in the June 4 report which has long

17   been -- the SIPA Trustee has known for a long time that the six

18   month report, that's when it's due -- there was an earlier 60-

19   day report, and there's been status reports along the way, but

20   it does seem to me that the six month report should be quite

21   fulsome.  It should deal with -- because people have gotten to

22   shorthand whether there's 1.6 billion or a different amount

23   that's quote-unquote "missing" or whether people know where it

24   is, and the issue is can it be recovered or not.  The SIPA

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

1    Trustee has statutory obligations under the Securities Investor

2    Protection Act to investigate possible causes of action, and

3    there had been -- you know, the fact that that's been going on,

4    continues to go on, is well known.

5            So I agree with you that there needs to be a full

6    report and I think that Mr. Freeh likewise as the Chapter 11

7    Trustee should be delivering a report on the status of the

8    Chapter 11 cases.  And I think that June 4 date is a reasonable

9    date to require that as well.  I would encourage the two

10   trustees or their many counsel to confer as far in advance of

11   that date as possible, to coordinate to the fullest extent

12   possible the information that each is going to provide so that

13   there are as few inconsistencies -- I mean, one of the things

14   I've stressed from the start, there needs to be cooperation

15   between the two trustees in sharing of information.  And I

16   think that that's existed.  I don't want to get into a debate

17   today whether every request by one side or the other has been

18   responded to.  I don't view that as worthy of time today.  I've

19   emphasized that cooperation is important and I will take it

20   that it has occurred.   And I view the June 4 reports, again,

21   from both trustees as important for all constituencies

22   involved.  Now, if there is equity -- it should only happen if

23   there's equity available in MF Global Inc., wonderful.  Okay?

24   If there's not, that ought to become clear as well.  I don't

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 22

1    know, and when we get to the next portion of the calendar, you

2    know, I'm going to ask Mr. Kobak where the trustee stands in

3    terms of the investigation of potential claims.  In the

4    insurance policy hearing recently, Mr. Kobak reported that the

5    trustee, the SIPA Trustee filed a claim with the E & O

6    insurers, just -- I don't know precisely when, but before that

7    hearing took place.

8             So things are moving forward, maybe not as quickly as

9    everybody would like, but there's a lot on everybody's plate.

10   So your point about the need for information, I take that as a

11   given.  That's been true from the start of the case.  I do

12   think the June 4 date, given where we are now, it's about a

13   month and a half from now, is ample time for very good reports

14   to be done by both trustees.

15            MR. BIENENSTOCK:   Okay.  Your Honor, if I just might

16   --

17            THE COURT:   Go ahead, Mr. Bienenstock.

18            MR. BIENENSTOCK:   -- make a couple comments.

19            In addition to the various -- up until now, I've

20   covered the liability questions and potential equity or not, et

21   cetera, and there are several pages of potential asset

22   recoveries in the United States, 244 million in margin at what

23   we call FINCO, MFG Finance U.S.A., accounts of MF Global

24   Special Investor at MFGI of substantial value perhaps of up to

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 23

1    350 million, et cetera -- I won't take the Court's time to

2    repeat everything in the report.  All of this -- once obviously

3    information is available, some effort and time is going to be

4    required in recovery, so clearly time is of the essence.  I

5    appreciate the Court's words.  There's a lot on everyone's

6    plate, but time really is our enemy here.

7            We also shared our report that we filed, Your Honor,

8    a month before we filed it with the Chapter 11 Trustee because

9    we -- and we took their comments -- because we didn't want to

10   make statements about lack of information that were incorrect

11   because a lot of our information comes from the Chapter 11

12   Trustee who meets with the SIPA Trustee.

13           So clearly what we infer from this is they may -- as

14   our understanding is there have only been a couple meetings for

15   altogether -- a few hours altogether, but they obviously have

16   somewhat different views.  They're obviously trying to some

17   extent to cooperate.  The bottom line is it could be better and

18   we hope it will be.  And I'm sure the Court hopes it --

19           THE COURT:   I am sure that if Mr. Freeh calls Mr.

20   Giddens or Mr. Miller and Mr. Marinuzzi call Mr. Kobak and his

21   colleagues, those calls will be answered, questions will be

22   posited, where answers can be given they will, where they can't

23   be given efforts will be made to respond.  So I think that June

24   4 is an appropriate date for both trustees to update the Court,

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 24 of 95
VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

Page 24

1    and when I say June -- well, we'll have -- I don't know when

2    the next hearing after June 4 is.  So if that's the date when I

3    expect the reports will be filed, at the next omnibus hearing

4    thereafter, there undoubtedly will be some discussion in Court

5    about it, a brief summary given of the reports, and if the

6    Court has questions, the Court will give the questions.  I'm

7    sure you won't be shy, Mr. Bienenstock, if you have questions

8    you want to convey to Mr. Kobak, you'll do it.

9            MR. BIENENSTOCK:   Well, we'll do it before the

10   hearing.

11           THE COURT:   You'll answer your calls.  Well, I know

12   you will before the reports are done.

13           MR. BIENENSTOCK:   Yes.

14           THE COURT:   And your report, it was in a useful

15   table format, you identified the specific issues where you had

16   concern, and I'm sure Mr. Kobak and his colleagues and Mr.

17   Giddens have all read it, and are mindful of the issues.  They

18   seemed appropriate issues to be raising, and hopefully as many

19   issues as possible will be addressed in the two reports.

20           MR. BIENENSTOCK:   Your Honor, to --

21           THE COURT:   So let's move on with the agenda.

22           MR. BIENENSTOCK:   Okay.  Taking Your Honor's comment

23   about not being shy up for one last comment.  This is ---

24   because this is really an example of what needs to improve.

25

13-53846-tjt    Doc 5706-4    Filed 08/30/14    Entered 08/30/14 22:01:38    Page 25 of 95
VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

Page 25

1   The SIPA Trustee has remarked in multiple responses to our

2   report that since we have some of the key employees, three of

3   them, at the holding company, that they know the information.

4   That is a key misconception.  They can't memorize these

5   records.  They need access to the records with the SIPA Trustee

6   in order to put things, two and two together.  And I just

7   wanted to leave the Court with that, because that's the last

8   reply we've had from the SIPA Trustee, and it is a

9   misconception.

10          THE COURT:  I don't want Mr. Kobak to feel he needs

11  to respond to what you're saying.  I don't think this is a

12  productive use of a Court time today.

13          MR. BIENENSTOCK:  I know.

14          THE COURT:  Okay?  I think I've made clear what I

15  expect to happen if.  You know, I'm satisfied with the date

16  that's the six month date, and hopefully as much information

17  sharing in advance and raising of questions in advance where

18  people have legitimate requests for information, that'll happen

19  well before the deadline for the reports, and all

20  constituencies will benefit from full reports by both trustees.

21          MR. BIENENSTOCK:  Thank you, Judge.

22          THE COURT:  Okay.  Thank you very much.

23          Mr. Miller?

24          MR. MILLER:  Yes, Your Honor, very briefly.  Brett

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 26

1   Miller, Morrison & Foerster on behalf of the Chapter 11

2   Trustee.

3            We will be --- we will submit a status report on the

4   fourth, a hearing --- the next omnibus following the filing of

5   the status report is on the fourteenth, so that's timely.  We

6   would be prepared to answer questions at that time.  Just like

7   with the 60-day report, we will --- well, the report that took

8   60 days for us regarding the bank accounts, we work closely

9   with the SIPA Trustee.  After we filed our statement in the

10  SIPA case, the two trustees have corresponded.  We've been

11  speaking with Mr. Kobak and his colleagues at Hughes Hubbard,

12  and we expect the information flow to work in order to get both

13  reports done timely and efficiently, and be productive for all

14  customers and creditors.

15           THE COURT:   Thank you.  You know, and I've said

16  before that if there are problems where one trustee or the

17  other believes the other is not being responsive, you will

18  endeavor to work it out directly, and if you can't, whoever

19  thinks they need the assistance of the Court will arrange a

20  telephone conference and we'll do it.  That hasn't been

21  necessary so far.  I have no doubt that the two trustees can

22  work cooperatively to move this forward.  Okay?

23           MR. MILLER:   Right.  Thank you very much, Your

24  Honor.

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 27 of 95
VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

Page 27

1                THE COURT:   Thank you very much.

2                Okay.  That's it, Mr. Marinuzzi?

3                MR. MARINUZZI:   Nothing left on the calendar, Your

4     Honor.

5                THE COURT:   All right.  We'll --- in about one

6     minute, we'll move to the MF Global Inc. docket.  Everybody

7     just stay in their place.  I need to get some papers off my

8     desk everyone else can bring out.  No one has to get up when I

9     come back in.

10               (Whereupon the Judge briefly left the courtroom.)

11               THE COURT:   Okay.  Mr. Kobak?

12               MR. KOBAK:   Good morning, Your Honor.  James Kobak,

13    Hughes Hubbard & Reed for the SIPA Trustee.

14               We do intend to file a comprehensive report on June 4

15    indeed.  One of my colleagues is in the courtroom today who is

16    principally responsible for that, and I'm sure she was

17    listening attentively to Your Honor's remarks, and we look

18    forward also to seeing the Chapter 11 Trustee's report, and we

19    will be talking to them about that as well as many other things

20    I'm sure in the coming weeks.

21               I do want to note that Mr. Wasserman from the CFDC

22    and Mr. LaRosa from SIPA are both on the line, along with

23    various other people.

24               The first item on our agenda today is a status

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 28

1   report, and I think I can maybe address the 1.6 billion in the

2   process of doing this.  But I'd like to start with where we are

3   in the claims process because I think that's the most critical

4   thing that's happening right now.  The figures are essentially

5   what we reported in the motion --- or in the reply, I guess ---

6   the omnibus reply to the distribution motion.  We've basically

7   determined and sent out letters of determination on

8   approximately 21,000 commodities claims --- that's all kinds of

9   commodities claims 4(d) and 30.7 out of about 23,000, so it's a

10  little over 90 percent.  I think the time period is consistent

11  with what we reported last time, which would be we would be far

12  along in the process by the beginning of this month, April, and

13  hope to substantially conclude it by the end of the month.  And

14  I think that still holds.  The 2,000 or so that remain do

15  contain some very complicated large accounts with many

16  transactions with them, so they inevitably take longer to do

17  than some of the others.  We also include in our population

18  several hundred that were actually filed as general creditor

19  claims but that we've determined seem to claim commodities

20  claims, so we treat them as commodities claims, but it

21  obviously we get to them a little bit later in the process and

22  some of the others.  I do think that in the next few days, by

23  the beginning of next week, we'll have at least several hundred

24  more determinations that will go out.

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 29

1         Over half the claims that we've decided to date have

2    become final in the sense that people have either returned the

3    letter of determination agreeing with our claim, or the time to

4    file an objection has expired.  The time for many more thousand

5    objections will expire towards the end of this month, so we'll

6    have a somewhat clearer picture, obviously, of where we are at

7    that point.

8         We've received 59 objections to date, many of which -

9    -- most of which are quite minor, and we've instituted a

10    process of contacting those objectors in hopes that we can

11    resolve, you know, very modest, trivial amounts without having

12    to have a lot of motion practice.  I should also mention that

13    we maintain, we instituted an objections hotline so if people

14    receive an objection to their claim and have a question about

15    it, they have a place that they can call, and I think that has

16    been perhaps one reason why we don't have more objections than

17    the 59 that we have received.

18         We have done some work, considerable work, actually,

19    on the securities claims.  We have approximately 350 of those

20    after a lot of them turned out to be commodities claims or

21    general creditors claims that were reclassified.  We do expect

22    to begin issuing letters of determination on those in a few

23    weeks as we near the end of the commodities process.  As Your

24    Honor knows, the actual time period for people to file

25

VERITEXT REPORTING COMPANY
212-267-6868                www.veritext.com                516-608-2400

Page 30

1   securities claims doesn't officially end until the end of June,

2   but we can start processing those that are in before that, and

3   we do intend to do that.  And that will probably include a

4   determination of holdings which filed a very substantial

5   customer claim, some of which we disagree with or think is

6   subordinated.

7          One thing we have realized that based on the work

8   we've done, we think the estimates of claims that we've been

9   kind of informally working on are pretty close to what the

10  actual claims may be.  We obviously don't know that precisely

11  and the amounts claimed are maybe a little bit higher than we

12  estimated, but I think that in the objection and determination

13  process, some of those figures will come down.  So that leaves

14  us with the shortfall which we continue to think is in the area

15  of $1.6 billion.  We've always said it was an estimate, and

16  we've always tried to describe it as a shortfall, not

17  necessarily missing securities.  The way we look at it is, we

18  look at what all –

19          THE COURT:   You're using securities include

20  commodities –

21          MR. KOBAK:   I'm sorry.  Missing property, Your

22  Honor.  We look at the total of all the claims that are filed

23  that we --- that our estimate of what the amount of the total

24  claims that are filed are across all the commodities --- all

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

 1   the pools, commodities as well as securities, and compare that

 2   to the property that we have on hand to satisfy them.  And the

 3   difference between those numbers at present is approximately

 4   $1.6 billion.

 5               THE COURT:   Does that include the claims for funds

 6   that are being held in the U.K.?

 7               MR. KOBAK:   Yes, it does.

 8               THE COURT:   That's about 700 million?

 9               MR. KOBAK:   Yes, Your Honor.  So that's a big part

10   of it.

11               THE COURT:   You know where that money is.

12               MR. KOBAK:   We know where that money is.

13               THE COURT:   You're just not getting it back at the

14   moment.

15               MR. KOBAK:   That's correct, and I'll get to that in

16   a second, Your Honor.  And I think --- you know, the creditors

17   committee I think referred to a five --- or hundred --- $600

18   million estimate by CME.  I'm not sure if that's exactly the

19   CME's number, but I don't think --- I think our estimate of

20   what's kind of missing from the 4(d) might be a little higher

21   than that, because I think we see the claims as a little

22   higher, but I don't think it's far off the mark.  But we've

23   never said that all of this is missing money, it's just

24   shortfall in the terms of it's money that we do not have to pay

25

VERITEXT REPORTING COMPANY
212-267-6868                  www.veritext.com                  516-608-2400

Page 32

1   the claims that have been made against us that we think are

2   likely to be allowable.

3            THE COURT:   Okay.

4            MR. KOBAK:   So that leaves me to our investigation

5   which Your Honor indicated he wanted to hear some more about

6   and, and again, I'm somewhat constrained in what I can say

7   about details.  But we have been looking particularly at areas

8   where there might be possible recoveries of funds.  With

9   respect to the U.K., we've had discussions, extensive

10  discussions, and some exchange of information with the

11  administrators.  I think it's fair to say that our views on how

12  the money that they're holding should be treated are pretty

13  diametrically opposed at this point as a legal matter,

14  primarily, also to some extent perhaps as a factual matter.

15  We've been urging, and I think the U.K. administrators now

16  agree, that really for the benefit of creditors in both

17  estates, this is an issue that needs to get in front of the

18  U.K. Courts and decided.  And what we've been advocating is in

19  a fairly brief time schedule, if we can moving lately for

20  directions, I think --- while I don't want to commit the U.K.

21  Administrators to anything, but I think generally they agree

22  with that approach.  So hopefully we'll at least get that issue

23  teed up in the U.K. Courts in the very near future.

24            THE COURT:   I'm assuming with the recent Lehman

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 33 of 95
212-267-6868          VERITEXT REPORTING COMPANY          516-608-2400
www.veritext.com

Page 33

1    ruling provides some guidance of answers.

2             MR. KOBAK:   I don't know if it provides guidance or

3    more questions, but it certainly is something that the parties

4    need to take into account.   I know it's of great concern to the

5    U.K. administrators exactly what its application might be to

6    our situation and what it implies.   So we've all studied that

7    with a great deal of care.

8             We've also been working closely with attorneys for a

9    number of claimants who have 30.7 funds, so that's been a very

10   collaborative process to now.   Our investigation is continuing.

11   It's led the Trustee to believe that he has more than colorable

12   claims against some parties to seek return of funds.   We

13   announced a few days ago that we have entered serious

14   discussion with JPMorgan Chase, so those discussions are

15   underway.   The Trustee believes he may have claims against

16   other parties.   I really do not think it would be appropriate

17   to get into that today, but I think we will be pursuing claims.

18   It's our intention at least with some claims and to the extent

19   that we're able to work out the details of how to do it, to try

20   to coordinate any claims we might pursue with those that are

21   being pursued by commodities claimants in the class actions.

22   And our goal ultimately is if there are funds that can be

23   recovered, and parties will have defenses --- it's not like

24   pushing a button --- but if there are funds that can be

25

212-267-6868         VERITEXT REPORTING COMPANY         516-608-2400
www.veritext.com

Page 34

1    recovered, that they be recovered as efficiently as possible

2    but with as few arguments about standing and everything else as

3    possible, and that there be some mechanism that they get return

4    to customer property so that they can be distributed in

5    accordance with the claims process in our estate, unless that

6    makes a lot more sense than having some kind of duplicate or

7    parallel class action claims process.

8         So we'll be having some discussions with

9    representatives of some customers to see if anything can be

10   worked out along those lines.  And the fact that we want to

11   pursue those claims is one reason that we've asked for

12   assignments to the extent that that might help us on standing

13   arguments.  It's also a reason that we've made claims against

14   insurance policies and why we advocated that there be at least

15   some degree of monitoring of expenses under the policies by the

16   SIPA Trustee as well as the Chapter 11 Trustee.

17        On the administrative side, I'll just conclude

18   briefly.  We have closed the Chicago office.  We have some

19   equipment and I think some related technology that's housed

20   somewhere in Illinois that we're --- is no longer needed for

21   operations and may have some value, so we are in the process of

22   trying to sell that.  We are now down to 32 former MF Global

23   employees and I think by mid-May that number will be more like

24   16 or 17.  We've been basically letting people go as we've have

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 35

1   no further need for their services, and in some cases, I'm

2   happy to report people have actually been able to get more

3   permanent employment.

4           We do intend to file a comprehensive report in June.

5   It's possible that we may release a report on our investigation

6   before that which I think would shed some light on some of the

7   causes of MF Global's demise.  We have established hotlines,

8   not only a general hotline, but as I said a hotline that

9   customers can call about questions about objections and we have

10   another hotline for people that have questions about their tax

11   situation and their tax claims to the extent that we can help

12   them.  And we do update and continue to update our website

13   continually as new developments arise.

14           So again we'll report further and --- on June 4 and

15   we do look forward to sharing information with the Chapter 11

16   Trustee and learning what they are prepared to report as well.

17           THE COURT:   Thank you.

18           MR. KOBAK:   Your Honor, I'd like to turn to the next

19   item on the agenda which is our motion to make an interim

20   distribution to commodities customers.  I'm going to handle

21   this, but if it's all right with Your Honor, when we get to

22   whether there should be a delivery class and how that will

23   work, I'll turn the podium over to Mr. Trager.

24           THE COURT:   Okay.

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 36 of 95
VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 36

1            MR. KOBAK:    Your Honor, this is a motion that seeks

2    to distribute up to $600 million, additionally, to the 4(d)

3    claimants and the distribution will go to those whose claims

4    have become final, either because --- and who have signed and

5    agreed to our determination of the claim.  We're holding back

6    approximately $700 million which we think is a prudent reserve

7    in excess of any claims that we expect that aren't covered by

8    this motion that could possibly be made.  We're also proposing

9    for the first time to make a distribution to the 30.7

10    customers.  We are seeking authority to go up to $50 million on

11    that, and we're holding back $40 million for the same reasons

12    as I expressed with the 4(d).  Unfortunately, we can't make a

13    larger distribution because $90 million is essentially all the

14    property we have in our possession at this time.

15            And finally, the motion seeks approval of an

16    additional class, a delivery class, and we are seeking

17    authority to distribute up to $35 million for that class with a

18    hold back of $10 million for potential other claims.  We don't

19    know with precision what these distributions will mean in terms

20    of percentage recoveries by people, but we do think that on the

21    4(d) side and for the delivery class, it will probably get

22    people up to 80 percent or perhaps a tad above that.  It will

23    unfortunately probably be ten --- less than ten percent on the

24    30.7 side, but again, that's a function of this being all the

25

212-267-6868                VERITEXT REPORTING COMPANY                516-608-2400
www.veritext.com

Page 37

```
 1    property that we have available.

 2            THE COURT:   Let me ask you this.  With respect to

 3    delivery class --- and I know you said Mr. Trager is going to

 4    deal with that --- the objections in part have focused on

 5    whether debits and credits that weren't segregated, where cash

 6    wasn't segregated, are properly placed in the delivery class,

 7    if I were to approve the distribution that you've requested and

 8    the Court were subsequently to determine that the objectors are

 9    correct, would there remain sufficient funds to true them up?

10    I guess where I'm really going is do I have to decide that

11    today, or ---

12            MR. KOBAK:   Let me confer with Mr. Trager.

13            THE COURT:   Yeah, Mr. Trager, if you want to wait

14    till we deal with the delivery class, we can deal with it then.

15    I didn't ---

16            MR. KOBAK:   Your Honor, the answer is yes, but I'll

17    leave it to Mr. Trager.

18            THE COURT:   Okay.  We'll cut --- I didn't mean to

19    jump it out of order.  I'm happy to hear from Mr. Trager on the

20    delivery class.

21            MR. KOBAK:   So we've had a number of objections; one

22    of them is the objection by the Chapter 11 Trustee joined in by

23    the creditors committee.  I don't really think that's germane

24    to this motion as Your Honor is ---

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

 1                 THE COURT:   But I think I addressed that already.

 2                 MR. KOBAK:   Yes.

 3                 THE COURT:   That was about information sharing.  I

 4       intended my comments earlier to apply now.  I do think

 5       information that's important for it to be broadly disseminated,

 6       to be as accurate as possible, and I've already addressed that.

 7       So to the extent that would --- I don't know if I'm not even

 8       sure those were intended to be objections per se.  If they

 9       weren't, they're overruled to the extent that I dealt with it

10       before, explained both trustees will do reports by June 4.  And

11       I don't mean to say you ought to hold --- if you're prepared to

12       disseminate a report on your investigation, interim report

13       before June 4, please ---

14                 MR. KOBAK:   No, no.

15                 THE COURT:   --- do it as soon as you can.

16                 MR. KOBAK:   Yes, yes.  Of course, Your Honor.

17                 THE COURT:   All right.

18                 MR. KOBAK:   I think in addition to that, I'm going

19       to skip over the relief and assignment which is responsible for

20       a lot of the objections.

21                 THE COURT:   Yes, and I can't tell whether that's

22       been worked out or not.  I mean, it really comes up in two

23       contexts ---

24                 MR. KOBAK:   Yeah.

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

1          THE COURT:    --- the objections to the motion to

2    approved a distribution, and then there's the separate

3    stipulation.

4          MR. KOBAK:    Yeah, let me get to that in a minute.

5          THE COURT:    Okay.

6          MR. KOBAK:    There was one other objection that the

7    issue order approved the motion, but with some kind of deadline

8    by when we should complete ---

9          THE COURT:    I'm not imposing a deadline.

10         MR. KOBAK:    Okay.  So I think the ---

11         THE COURT:    I'm just going to --- so that it's

12   clear.  The objection to the distribution motion, that any

13   distribution should be conditioned on a deadline for completing

14   is overruled.  There's a lot of work.  It's proceeding in a

15   good pace.  Everyone wishes it was faster.  But that objection

16   is overruled.

17         MR. KOBAK:    Okay.  Thank you, Your Honor.

18         So I think that leaves the release and assignment.

19   Your Honor is correct that we also met with a number of

20   representatives of commodities customers who had concern about

21   the original language, and in those couple series of meetings

22   we worked out with them a stipulation, an order, which is also

23   before you, which resolves those concerns.  I'd like to say

24   that it resolves everyone's concerns, but unfortunately that's

25

VERITEXT REPORTING COMPANY
212-267-6868                          www.veritext.com                          516-608-2400

1   not the fact.  What we primarily did was make it clear that the

2   --- and we thought the original language already did this ---

3   but for avoidance of doubt, to make clear that the language

4   only released claims or assigned claims up to the amount of

5   distributions that are actually received from us from the funds

6   of customer property so that no additional rights are being

7   compromised or given up.  There was some concern about the

8   parties that were released.  So it was only intended to be the

9   Trustee, people that are working for the Trustee, SIPC, people

10  that are working for SIPC.  We have some language in the

11  stipulation that basically limits that language so if there was

12  somebody that we employed who perhaps had been a former MFGI

13  employee that might have some liability under some theory, they

14  wouldn't --- that wouldn't be affected by this stipulation.

15  And we have language --- because I think one of the concerns

16  that people have is if they're assigning these amounts to us,

17  what does that do in any subsequent litigation that they have

18  against third parties?  And we have language that nothing in

19  this stipulation will be any determination on that score, and

20  that all can be worked out, which is where I think it should be

21  worked out in the context of some action when and if arguments

22  about standing are ever raised.  And as I've said, I'm hoping

23  if we can do it that we can coordinate and work jointly with

24  commodities customer representatives sufficiently so that we

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 41 of 95
VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 41

1    may have actions that are consolidated and be in the same cases

2    and the question of exactly whose claim something is may never

3    arise.

4              THE COURT:   Tell me what the authority is for the

5    Trustee to impose the requirement on commodities customers to

6    assign their claims.  I view the assignment of claims

7    differently from if there is a determination, if there is an

8    agreed determination of the amount of a customer's claim asking

9    them to agree that they have no further claim against MF Global

10   Inc., that I understand.  But the point was made in most of

11   those objections that unlike on securities side, on the

12   commodities side, there is no authority for the Trustee to

13   insist on the assignment.

14             MR. KOBAK:   I don't think on the commodities side,

15   there's any --- there's no guidance either way.  There's

16   nothing that says you can do it.  There's nothing that says you

17   can't do it.  And we think it's appropriate thing to do.  We

18   think that since there's net equity process and particularly in

19   this case a fund of customer property, that the same reasons

20   that make it appropriate in SIPA would really make it

21   appropriate here.  We also --- and it's the kind of assignment

22   that's been used for years in SIPA liquidations.  I don't think

23   ---

24             THE COURT:    --- on the securities side.

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 42

1          MR. KOBAK:   --- on the securities side, but that

2   really doesn't have anything to do with the fact of what people

3   --- it's not really insurance, but what they call SIPA

4   insurance, which is the SIPC advances.

5          THE COURT:   But SIPC advances money, and stands in

6   the shoes of the customers in an effort to recover, at least up

7   to the amount that they've paid out.

8          MR. KOBAK:   That's correct.

9          THE COURT:   But that's not true on the commodities

10  side.

11         MR. KOBAK:   No, that's not true on the commodities

12  side.  But nevertheless in SIPA cases, broader assignments have

13  been used.

14         THE COURT:   But you've argued --- we had the round

15  of briefing about what rules for distribution.  Several of the

16  opinions I've issued have dealt with the rules for

17  distribution.

18         How can the Trustee impose as a condition to

19  commodities customers receiving a distribution that they assign

20  rights against third parties?  Where does your authority to

21  insist on that?  You keep referring to Section 190 and all of

22  its subparts as setting out the CFTC's rules for distribution.

23  There's nothing in any of those as I've seen that would say,

24  oh, but that only applies if a customer assigns some or all of

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 43 of 95
VERITEXT REPORTING COMPANY
212-267-6868                www.veritext.com                516-608-2400

Page 43

1    its rights to proceed against others.

2          MR. KOBAK:   There is nothing in the commodities

3    rules either way as I said, Your Honor.

4          THE COURT:   And I don't find 105 --- you've in part

5    relied on Section 105 of the Bankruptcy Code to fill that gap.

6    And that I don't agree with.

7          MR. KOBAK:   All right.  Well, we think it's a

8    prudent thing for a trustee to ask for.  We would like to have

9    the authority.  We would hope Your Honor would seek to grant

10   it.  We think it makes a lot of practical sense in this

11   context.  I don't think the CFTC is disagreeing with it.

12         THE COURT:   Well, they didn't take a position.

13         MR. KOBAK:   I don't think they've taken any position

14   on it.

15         THE COURT:   Well, but, you know, one of the things

16   that bothered me, Mr. Kobak, I read the motion papers.  Then I

17   get objections and the objections say, oh, it's not in the

18   motion papers.  It's a document that was sent to us that they

19   haven't even told you about, Your Honor.  And that's true.  The

20   release was not --- there's nothing --- I read your motion.

21   There was nothing in there that indicated that you were

22   conditioning distributions to customers on their releasing or

23   assigning rights.  I think --- and I'll listen to the objectors

24   --- as to the release portion, if there's an agreed

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 44

1    determination of the claim, it's one thing for the Trustee to

2    be saying, okay, you're releasing any further --- once you've

3    agreed that this is the amount of the claim, you're basically

4    releasing any argument that your claim ought to be 2X instead

5    of X.

6            MR. KOBAK:   Right.  I understand the distinction,

7    Your Honor, is growing, I think, for basically the same reasons

8    we should have an assignment of the claim.  We did distribute a

9    lot of property, a lot of that was done through CME and other

10   people.  That we could still have issues of people being over-

11   delivered, under-delivered, not delivering appropriately.  I

12   don't want to do anything that would compromise our ability to

13   pursue that kind of claim.

14           THE COURT:   That's --- you know, if distributions

15   are made without prejudice to a final determination of rights,

16   that's one thing.  But you've gone further.  You want an

17   assignment of rights to proceed against others.  And that's

18   what I'm searching for where is the authority for you to impose

19   that as a condition to receiving distributions?

20           MR. KOBAK:   There is no statutory or regulatory

21   authority.  We concede that.

22           THE COURT:   And you didn't impose that for the first

23   72 percent of the distributions?

24           MR. KOBAK:   No, because we've ---

25

VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

1          THE COURT:   That wasn't a claim determination.

2          MR. KOBAK:   No, and essentially that was done

3     through the clearinghouses and people went to other brokers, so

4     we didn't have really direct correspondence with the claimants

5     the way we do in the claims process.

6          THE COURT:   But one of the things that concerns me

7     is, look, there's a lot of litigation pending elsewhere, and if

8     people have assigned their rights, whose the real party in

9     interest, are the claims that are asserted in the various class

10    actions going to be subject to motions to dismiss because,

11    well, they've signed an --- you know, they entered into an

12    assignment agreement with the Trustee.

13         MR. KOBAK:   Well, it only goes up to what they've

14    received, so ---

15         THE COURT:   How do you split?  That's what I don't

16    understand.  How can someone split a claim?  I didn't think you

17    could do that.

18         MR. KOBAK:   As I've said, I'm hoping that we will be

19    able to coordinate our activities with some of those, maybe all

20    of those, class action claimants so that in one case, they will

21    be consolidated actions and there won't be any question that

22    somebody has standing to pursue claims.

23         THE COURT:   So what is the basis for the Trustee's

24    authority to insist on an assignment of claims?

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

```
 1              MR. KOBAK:   If Your Honor orders it, we have a basis

 2    ---

 3              THE COURT:   Well, I'm not ordering it unless there's

 4    a legal basis for it.

 5              MR. KOBAK:   I don't --- I can't tell you that other

 6    than Section 105 implementing a claims process ---

 7              THE COURT:   Do you have any ---

 8              MR. KOBAK:   --- it's very similar to the SIPA claims

 9    process.  There is no specific CFTC regulation or statute that

10    deals with this either way.

11              THE COURT:   Okay.  Is there anything else you want

12    to add on that?

13              MR. KOBAK:   No, Your Honor.

14              THE COURT:   Okay.  Is there anything else on the

15    motion to --- well, let me hear the delivery side, the delivery

16    class, and then I'll hear the objectors.

17              MR. TRAGER:   Good morning, Your Honor.  Josiah

18    Trager, Hughes Hubbard & Reed for the SIPA Trustee.

19              Your Honor, the short answer to your question which

20    was if Your Honor turns out that you're wrong, and later on you

21    change ---

22              THE COURT:   --- or it turns out I didn't decide it.

23              MR. TRAGER:   --- or didn't decide it, and ultimately

24    decide that the objector was correct and that in fact the

25
```

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 47 of 95
VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

Page 47

1   delivery credits and the frozen proceeds and delivery debits

2   were not part of the delivery class, are we holding back

3   enough?  The answer is yes.  The answer is yes because the

4   difference will ultimately be a few cents on the dollar, and

5   here's why.  If, in fact, it is not readily traceable to the

6   delivery class as we maintain that it is, it would have to be

7   readily traceable to another class of customer property.  The

8   only logical class that that would be in this case would be the

9   30 point --- I'm sorry --- the 4(d) segregated property.

10  Again, we maintain that it is not the case.  We maintain that

11  it is not required to be segregated under 4(d), it is in fact

12  part of the delivery class, but the difference in distributions

13  at this point is going to be a few percentage points.

14          THE COURT:  Yeah, if it's included in the delivery

15  class, it has a slight diluted affect on what people will

16  receive now; correct?

17          MR. TRAGER:  Correct.

18          THE COURT:  Okay.  All right.  Go ahead.

19          MR. TRAGER:  And the reason for that, Your Honor, is

20  because the physicals comprise the bulk of the delivery class

21  in terms of the percentage of the value of that class;

22  additional items in that delivery class that we've identified

23  are in fact these frozen proceeds, all of which are present

24  for, because they were frozen at the exchanges; and the pre-

25

Page 48

```
 1   existing delivery credits, which essentially would have been

 2   frozen had they taken place a day later, and in fact were among

 3   the funds that are part of the shortfall.  I have no doubt at

 4   some point, Your Honor, we will be back here with other

 5   claimants bringing novel theories to Your Honor about why their

 6   particular property should not be subject to the shortfall or

 7   subject to a particular type of shortfall, or some other

 8   theory.  But the fact remains, Your Honor, that the CFTC rules

 9   require a shortfall be distributed pro rata per class.  And

10   these are the items in that class; the physicals, the frozen

11   proceeds from the delivery of physicals, the pre-existing

12   delivery credits from the delivery of physicals, the delivery

13   debits which are essentially when you buy physicals on large

14   and --- I believe there was a fifth element that right now

15   escapes me.  I'm sorry, I'm fighting off a cold and it seems to

16   be winning.  But that --- the short answer to your question,

17   Your Honor, is it would have to be attributable to a class of

18   customer property.  At this point, we can't foresee a situation

19   where it would be ---

20            THE COURT:   It's going to be dilutive of one class

21   or another.

22            MR. TRAGER:   Correct.  It's going to comprise one

23   class or the other and have an affect.  In the case of removing

24   the delivery credits and assigning them to a different class,

25
```

VERITEXT REPORTING COMPANY
212-267-6868                                www.veritext.com                                516-608-2400

1    that would be a dilutive effect.

2            THE COURT:  Can you tell me what the total dollar

3    value of this item?

4            MR. TRAGER:  Because the physicals --- because net

5    equity is calculated when the account becomes fully liquid, and

6    in fact Your Honor just recently ordered the liquidation of the

7    physicals, the physicals' value moves daily and has been slowly

8    becoming liquid as it's been transferred or sold and will in

9    bulk be done this week with the remainder.  But the number is

10   somewhere in the neighborhood of $120 to $160 million, of which

11   approximately $15 million is considered a shortfall.  Again,

12   these are very round numbers and they will be subject to all

13   the claims determinations along with everything else that's

14   been going on.

15           THE COURT:  Okay.  I'm not sure what I'm going to do

16   on it.  I mean, I'm taking this under submission today in any

17   event, but I think you've addressed it --- I mean, I may well

18   decide this issue of whether the credits and debits are part of

19   the delivery class or not.  I just wanted to explore whether

20   something had needed to be decided right now.

21           MR. TRAGER:  Understandable, Your Honor.  And I

22   believe --- that covers it ---

23           THE COURT:  I think I understand your arguments

24   about why it should be included into the delivery class.  The

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 50 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 50

1    reply brief in particular I think was very clear about it.  So

2    I understand your arguments.  You can go into it, but that I do

3    have in mind.

4           MR. TRAGER:   If Your Honor understands it, I have no

5    need to go further with it.  I believe that was essentially the

6    issue related to the delivery class.  There was another

7    response that actually not only supported the motion,

8    specifically the inclusion of these items, but requested a

9    timing issue, and I think Your Honor has already addressed that

10   as part of the previous issue.

11          THE COURT:   Right.  Okay, thank you.

12          All right.  Let me hear from objectors.

13          MR. SCHMELTZ:   Your Honor, Vincent Schmeltz for a

14   limited number of objectors on the delivery class issue.

15          THE COURT:   Yes, go ahead, Mr. Schmeltz.

16          MR. SCHMELTZ:   Your Honor, under --- I want to be

17   just clear about the three categories of cash, if you will, or

18   debits and credits that are at issue.  Frozen proceeds are

19   literally proceeds from the sale of physical commodities or

20   warehouse receipts that took place after the petition date for

21   whatever reason, either to meet a contract obligation, or for

22   some other reason, and they --- those things literally were

23   physical property on the date of liquidation and we don't

24   contest that the frozen proceeds properly represent physicals

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

 1    that are part of the delivery class.  Delivery debits are funds

 2    owed by a customer because they took delivery of a commodity

 3    and owed money or because they, as I understand it, margined

 4    their physicals.  In the case of, for example, gold bars, one

 5    could trade on margin and so if that's liquidated, there would

 6    be a delivery debit associated with the margin that would have

 7    to be paid before the final proceeds would be paid out.  And

 8    that, too, is readily traceable to the delivery class and

 9    likely falls within the delivery class.

10          The real rub is on these delivery credits.  And the

11    delivery credits, Your Honor, are funds that were taken in by

12    MF Global because a commodity customer ordered their physical

13    property to be sold in the days preceding the petition,

14    literally in the two or three or maybe four days prior to and

15    even on October 31.  And the physical property or the warehouse

16    receipts were sold, funds were taken in, and they weren't

17    properly secured, and they were pilfered.  And there are maybe

18    a variety of reasons that were uses that they were put to, but

19    they weren't returned to the customers.  With respect to that

20    cash, there's no evidence, Your Honor, that the cash was

21    intended by the customer to be used in the making or the taking

22    of delivery of a commodity.  One holds typically a warehouse

23    receipt or a physical commodity for the purpose of making

24    delivery.  I may hold soybean oil, a warehouse receipt for

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 52 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 52

1    soybean oil, in order to make the delivery to someone on a

2    contract.  Cash is often held in an account for the taking of

3    delivery, for the specific purpose of when someone arrives with

4    my truckload of Robusta coffee, me being able to pay for that

5    on my contract.  Here ---

6           THE COURT:  Mr. Schmeltz, stop for a second.  I

7    don't see anything in the law that has this issue controlled by

8    the intent of the customer.  This is not a customer by customer

9    intent specific issue.  If customers had the misfortune that

10   they either were purchasing physicals or selling physicals and

11   the money which at least the Trustee argues was not required to

12   be segregated, wasn't, and is now not there, what is it that in

13   --- you have some decision or some regulation of the CFTC that

14   says is a question of intent of the customer?

15          MR. SCHMELTZ:  First of all, Your Honor, under

16   190.05(a)(2), a delivery account shall mean any account

17   prominently designated as such in the records of the debtor

18   which contains only the specifically identifiable property

19   associated with delivery, except as set forth in 190.01(kk) and

20   none of those in (kk) deal with anything other than

21   specifically identifiable property.  The textual argument that

22   the Trustee makes is that under these regulations, the money or

23   the funds or the debits, the credits or the debits, are

24   associated with the customer's account for the purpose of

25

VERITEXT REPORTING COMPANY
212-267-6868                        www.veritext.com                        516-608-2400

Page 53

1    making or taking delivery.  And I would submit to Your Honor

2    that the concept of making or taking delivery is one of common

3    parlance in the commodity industry that means, as I have

4    suggested, I hold something to make delivery or I hold

5    something in order to take delivery.  It has to have a specific

6    meaning.  It is not a fiction, and it can't be stretched to

7    include the proceeds of a sale just because the proceeds of the

8    sale are lost.  With greater specificity, Your Honor, 17 CFR

9    1.21 deals with the care of money and equities accruing to

10   customers, and it provides money and equities accruing in

11   connection with commodity or option customers open trades,

12   contracts, or commodity options need not be separately credited

13   to individual accounts, but may be treated and dealt with as

14   belonging, undivided, to all commodity or option customers

15   having open trades, contracts, or commodity option positions,

16   which at close would result in a credit to such commodity or

17   option customers.  We would submit then, Your Honor, that under

18   17 CFR 1.21, proceeds of the sale of a warehouse receipt need

19   not be separately segregated as the Trustee has argued.  We

20   agree with that.  But they should be apportioned to all

21   customers and as a result, if the funds are lost, should have

22   been apportioned to all classes the same way that their credit

23   would have been apportioned to all customers under 1.21.

24   That's the controlling regulation here, Your Honor, and that's

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 54

1   what ought to be done, not have an artificial definition of the

2   concept of making and taking delivery.

3            Ultimately, for these credits to have a dilutive

4   effect on the delivery class would be antithetical to the

5   purpose of the delivery class as set forth, and we set this

6   forth in our response, and it's provided for in 48 Fed. Reg.

7   8731, and that is --- sets forth the intent of the delivery

8   class as to mitigate the dilution effect of pro rata provisions

9   of the Code.

10           THE COURT:   Mr. Schmeltz, I just opened to your

11  objections, and I don't see anything in your objection that

12  refers to 17 CFR 1.21 ---

13           MR. SCHMELTZ:   And Your Honor, the reason ---

14           THE COURT:   --- and the argument you've made here

15  today.

16           MR. SCHMELTZ:   --- the reason that we're making this

17  argument now, and it wasn't in our objection, is we didn't have

18  the Trustee's reply or the Trustee's further explanation of why

19  these credits should apply to the delivery accounts.  And so as

20  Your Honor pointed out, the reply I thought was much more clear

21  as to purpose and intent.  The reply is what stated this making

22  or taking delivery argument and so we have a greater

23  understanding of the Trustee's arguments at this time, and a

24  greater understanding than we did when we wrote our brief, Your

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 55

1   Honor.  But the --- in 48 Fed. Reg. 8731, it notes that this

2   means that although this property will not be distributed, to

3   the extent its value exceeds a claimant's net equity claim, and

4   will be distributed pro rata among claimants with delivery

5   claims which are of the same class, it will not be diluted by

6   other types of customer claims.  And a claim for loss proceeds

7   is an other type of customer claim.  It is not a claim for

8   funds that were held for the making or taking of delivery of a

9   commodity.  It is an other type of claim.  It is a claim that

10  my funds were pilfered.  I was expected to receive funds from

11  the sale of a commodity that I would have taken out of my

12  account and used for other purposes.  Right?  The people who

13  were liquidating immediately prior to the petition date in many

14  cases as we understand it were doing so because they understood

15  the Titanic was sinking and they wanted to get off.  This is an

16  other --- they were not trying to roll the cash over in order

17  to be used for additional transactions down the road.  And so

18  it is an other type of customer claim.  Under the very intent

19  for the delivery class, it ought not be applied as dilutive to

20  the delivery class, and we believe under 1.21, it ought to be

21  applied across all classes.

22          THE COURT:   All right.  Mr. Schmeltz, I'm going to

23  give you until 5 PM, April 17 to file a surreply addressing

24  just this issue and not to exceed five pages in length.

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 56 of 95
212-267-6868                    VERITEXT REPORTING COMPANY                    516-608-2400
www.veritext.com

Page 56

1           MR. SCHMELTZ:   Thank you, Your Honor.

2           THE COURT:   All right.  Next objector.

3           MR. SCHMELTZ:   But, Your Honor ---

4           THE COURT:   No, I'm going to take people in the

5    courtroom first.

6           MR. ENTWISTLE:   Thank you, Your Honor.  My name is

7    Andrew Entwistle, I'm with the law firm of Entwistle &

8    Cappucci, and we represent various commodity customers.  We

9    filed objections both in this proceeding and in the respect to

10   the release and assignment issue.

11          And Your Honor asked the key questions of Mr. Kobak;

12   one, obviously, where is or is there a statutory authority to

13   take an assignment here and the answer is no.  There is none

14   anywhere.  And every court that's looked at the issue from the

15   Giddens v. D.H. Blair case in 2002 ---

16          THE COURT:   That's a securities case, though; isn't

17   it?

18          MR. ENTWISTLE:   It is a securities case, Your Honor,

19   but it's still looked at the same issues of whether there was

20   statutory authority to take an assignment of third party

21   claims, which is what they're trying to do here.

22          THE COURT:   I read the decision this morning, the

23   short decision, Judge Beatty's decision.

24          MR. ENTWISTLE:   It is, and Judge Rakoff's more

25

212-267-6868         VERITEXT REPORTING COMPANY         516-608-2400
www.veritext.com

Page 57

1    recent decision involving Mr. Picard, and Judge Mann's recent

2    decision involving Mr. Picard, really are consonant with that

3    decision.  They look at all these same arguments that have been

4    presented here, both in the context of this proceeding and in

5    the assignment and they rejected each one as we go down the

6    line.  I don't think I need to take a lot of time, unless Your

7    Honor has got questions about that, but I think it is important

8    to note that with regard to the release language, after working

9    through the process relative to the objections when that was

10   raised, we did narrow that scope through our ---

11              THE COURT:   You agree about the --- you've reached

12   an agreement about the language of the release?

13              MR. ENTWISTLE:   Just the language of the release

14   itself.  Mr. Davidoff is here and he worked hard on that as

15   well, and I think now it really is limited really just to the

16   net equity claims and only to the extent they're against the

17   estate.  And I think that while maybe belt and suspenders, I

18   don't think the language is objectionable to the customers.

19   The assignment is a completely different issue.  There is no

20   statutory authority for it, and we pointed that out to the

21   Trustee and as you saw in our responsive papers we also said

22   that, look, even if you were entitled to one, the most it could

23   do would be to track the statute.  What you've asked for here

24   is far beyond that.  It's not limited to the assignment of net

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 58

1   equity claims.  It's not --- and it doesn't provide that any

2   assigned claims are going to stand behind the customers.  I

3   think all that's clearly provided for in the statute, none of

4   it made its way into the release here, even if they have the

5   authority for it which I think it's very clear under the case

6   law and the statutes themselves that they don't.

7           THE COURT:   Thank you.

8           MR. ENTWISTLE:   Thank you, Your Honor.

9           THE COURT:   All right.  Next objector in the

10  courtroom.

11          MR. WITMEYER:   Your Honor, John Witmeyer, counsel

12  for Sapere CTA Fund.

13          I'd just like to briefly add here, let's look at what

14  these claims are that are sought to be assigned.  Essentially,

15  MFGI is a bailee for hire.  When it gives money back, it's ---

16          THE COURT:   You run the risk of talking yourself out

17  of winning on this issue ---

18          MR. WITMEYER:   Okay.

19          THE COURT:   --- but go ahead.

20          MR. WITMEYER:   The claim, Your Honor, is against a

21  third party for tort damages, punitive damages, exemplary

22  damages, other damages ---

23          THE COURT:   You know, believe it or not, I really

24  get this.

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 59 of 95
212-267-6868          VERITEXT REPORTING COMPANY          516-608-2400
www.veritext.com

1            MR. WITMEYER:   --- in court.  All right.  Thank you,

2    Your Honor.  That's my only point.

3            THE COURT:   I really get this point.

4            MR. WITMEYER:   Okay.  And there's no statutory

5    authority as Your Honor pointed out.

6            THE COURT:   Okay.  Next objector in the courtroom.

7            MR. GOODMAN:   Your Honor, Geoff Goodman, Foley &

8    Lardner, on behalf of Thomas Ritter, John ---

9            THE COURT:   Tell me your name one more time.

10           MR. GOODMAN:   Geoff Goodman ---

11           THE COURT:   Okay, Mr. Goodman.

12           MR. GOODMAN:   --- for Foley & Lardner on behalf of -

13   --

14           THE COURT:   Sure.

15           MR. GOODMAN:   --- Thomas Ritter, John Supple,

16   Greenbrier Partners.

17           We filed a joinder --- I'm back to the first

18   distribution motion and I believe last two dealt with the

19   assignment.  We filed a joinder in support of the motion and I

20   wanted to respond briefly, Your Honor, to a couple of the

21   points Mr. Schmeltz made ---

22           THE COURT:   Go ahead.

23           MR. GOODMAN:   --- on the phone.  First thing is Mr.

24   Schmeltz, in both orally and in his papers, makes a lot of the

25

212-267-6868                VERITEXT REPORTING COMPANY                516-608-2400
                              www.veritext.com

Page 60

1    fact that the funds that were so-called delivery credits ---

2    and I can't speak to every delivery credit, although I believe

3    based on discussions with Mr. Trager that my clients are about

4    25, maybe 40 percent of what the so-called delivery credits

5    are.  These are people who tendered warehouse receipts for

6    delivery within the last day or two before the petition.  There

7    may have been some that actually were a little before that, but

8    most of it was at the end.  And these are proceeds of that

9    delivery.  They were set forth in an account indicated as

10   delivery account on the MF Global's records.  It was labeled

11   "FD."  Mr. Schmeltz made the point that these funds weren't

12   supposed to be segregated.  He's right, but that's not ---

13   that's obviously not the test for a delivery account, because

14   frankly the warehouse receipts which are part of the delivery

15   class aren't segregated property either.

16        THE COURT:  And I thought that the Trustees' omnibus

17   reply went right to that.  The only reason I've given Mr.

18   Schmeltz a chance to file a surreply is because issue about

19   Section 1.21 hasn't been addressed before.  I'll consider it.

20        MR. GOODMAN:  Thank you, Your Honor.  And I wasn't

21   familiar with that section either and I would like the --- I

22   haven't had a chance to review it and I don't even know what it

23   says as we stand here today.  The one point --- and I know,

24   Your Honor, we may raise the point Your Honor has already

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 61

1   overruled it about setting a deadline for making a distribution

2   --- but I do want to make one point.  Our --- it's tangental to

3   that, but I don't think it points to what Your Honor has

4   already ruled on.  My clients are those who either received

5   nothing or have received a small amount because they haven't

6   been part of the bulk transfer.  If Your Honor decides not to

7   decide, to punt this issue, I just want to make sure ---

8   because as the Trustee has set this up, we don't --- none of my

9   clients receive anything until the claim determinations has and

10  as part of this delivery class --- if Your Honor decides not to

11  decide until later, any mechanism set up for making

12  distributions will allow my --- set up in such a way that while

13  this issue peculates, my clients are able to get a distribution

14  because they need some kind of home.

15          THE COURT:   Look, from day one in this case, my

16  overriding objective has been that as many customers as

17  possible receive a return of as much of their money or property

18  as soon as possible.  That remains --- you know, there were

19  earlier on when the bulk transfer orders, I couldn't believe

20  it.  There were people who were objecting --- you know, don't

21  pay anybody else until I get mine.  Well, I've made clear on

22  the record what I thought about that argument.  My objective

23  remains to try and facilitate a distribution of as much

24  property as possible as soon as possible.  That may leave some

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 62

1   issues remaining to be determined.  I don't know whether I'm

2   going to decide this issue about debits and credits or not now.

3   I've been pretty prompt in issuing my rulings after hearings in

4   this case, because I don't want people unnecessarily held up.

5   Okay?  So I've been trying, you know --- we're pushing this

6   along.  All I can say is I'm going to continue to.  I hope

7   that, and I think the Trustee has been sensitive to this, and I

8   must say until this round of motions, it wasn't clear to me

9   that there are a group of customers who haven't been trued up,

10  they haven't gotten the 72 percent because they fall into one,

11  you know, a different category class.  So I hope the Trustee

12  will expedite to the fullest extent possible getting as much

13  money to people as possible.

14          MR. GOODMAN:   Yeah.  My only concern was if there

15  was a punting on the issue, somehow my clients wouldn't have a

16  home.  I understand, Your Honor, and the Trustee will work with

17  that.  But that was my only concern if this issue wasn't

18  decided.

19          THE COURT:   Okay.  Know that --- okay.

20          MR. GOODMAN:   And one last point within the

21  substance ---

22          THE COURT:   Sure.

23          MR. GOODMAN:   --- I believe that I don't believe

24  this was raised in the Trustee's papers, so I want to briefly

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 63

1    raise it, is that the CFTC has weighed in on this issue, and to

2    the extent that there's any ambiguity, I would argue that the

3    CFTC's ---

4             THE COURT:   When you say they've weighed in on the

5    issue, on this issue about delivery class ---

6             MR. GOODMAN:   --- of delivery class.

7             THE COURT:   Yes.

8             MR. GOODMAN:   And that they be entitled to deference

9    if there's any ambiguity on that, and their interpretation of

10   their own regulations.

11            THE COURT:   Okay.

12            MR. GOODMAN:   Thank you, Your Honor.

13            THE COURT:   Thank you very much.

14            All right.  Other objectors in the courtroom?

15            MR. ZUNSHINE:   Good morning.  My name is Zach

16   Zunshine, and I represent Jill Zunshine.

17            THE COURT:   Yes, go ahead.

18            MR. ZUNSHINE:   I filed yesterday a pleading ---

19            THE COURT:   --- untimely.  But go ahead.

20            MR. ZUNSHINE:   I could read it in the record, if you

21   don't mind.

22            THE COURT:   You're not going to read it in the

23   record, I'll tell you that right now.

24            MR. ZUNSHINE:   It's less than two pages.

25

VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

```
 1              THE COURT:   I --- go ahead.  Make your argument.

 2     Very --- don't read it into the record.

 3              MR. ZUNSHINE:   Okay.

 4              THE COURT:   Just tell me what your point is.

 5              MR. ZUNSHINE:   My point is that I would like this

 6     Court to deem with the Trustee as (indiscernible 11:31:03)

 7     abandoned, a demand for heightened immunity and also his demand

 8     for claimants to give up remedies (indiscernible 11:31:11) of

 9     law that states ---

10              THE COURT:   But I mean, I tell you the same thing I

11     told Mr. Witmeyer, careful you don't argue yourself out of

12     something you're ahead on.  The assignment issue, if that's

13     what you're ---

14              MR. ZUNSHINE:   I'm not talking about the assignment.

15     I'm talking about the claim that he wants more ---

16              THE COURT:   Look, if you want your money now, you're

17     --- and have you received --- has your, I don't know if it's

18     your relative.  I don't know if it's your sister or your wife

19     or --- has she received a determination of claim letter?

20              MR. ZUNSHINE:   That's right.

21              THE COURT:   Okay.  Does she agree with it?

22              MR. ZUNSHINE:   No ---

23              THE COURT:   The amount?

24              MR. ZUNSHINE:   The amount, yes, but not with the

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 65

```
 1    release.

 2            THE COURT:    Okay.

 3            MR. ZUNSHINE:    We filed an objections.

 4            THE COURT:    You --- yes.  And I read your

 5    objection.

 6            MR. ZUNSHINE:    All right.

 7            THE COURT:    Okay?  You don't get to receive a

 8    distribution pursuant to a resolved claim if you're not

 9    agreeing that to the determination of the claim that you have

10    no further claim against this estate.  That's perfectly

11    appropriate.  Okay?  Where I had pause and where I thought the

12    objectors were on solid ground was insisting on an assignment

13    of claims against third parties.  Where in the release that the

14    Trustee has asked for is there something that you believe goes

15    beyond the bounds of what's appropriate, specifically?

16            MR. ZUNSHINE:    I'm talking about paragraph 2 of his

17    unnumbered release in which he sets for himself and SIPC more

18    immunity than he's entitled under the law.

19            THE COURT:    Okay.  I have your argument.  I did read

20    your objection.  Anything --- other points?

21            MR. ZUNSHINE:    Okay.  With regard to the third

22    paragraph of that release, in which he wants to claimants to

23    waive remedies under the law, I would like to give you an

24    example looking at this release how is it absolutely

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 66

1    inappropriate.

2            THE COURT:   Go ahead.

3            MR. ZUNSHINE:   All right.  So I have a declaration

4    release of assignment right here.  It says here at the end, and

5    I'm going to quoting it, number three, to be subject to liens

6    or claims of MFG estate or any other entity or other person,

7    and will indemnify and hold harmless the released persons

8    remaining and against any damages, cost losses, that might

9    result from any association blaming such other entity or other

10   person with any such liens or claims.  Suppose the interest

11   here received a notice that there is a lien against my

12   claimant's account.  And suppose he screwed up, and suppose he

13   distributed money anyway, and suppose the party who has the

14   lien now sues the Trustee for damages caused in losses, and

15   suppose losses are not available under State law, and suppose

16   Trustee screws again, and doesn't object to the jury

17   instructions and eventually gets his no delivery damages in

18   court, but also his losses, which could be ---

19           THE COURT:   I'll tell you what.

20           MR. ZUNSHINE:   Right.

21           THE COURT:   Ms. Zunshine shouldn't take a

22   distribution.  Okay?  Just if you're --- if you find the

23   release language inappropriate, then don't take the

24   distribution, don't sign it.  Okay?  You'll wait till the end

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

1   of the case.

2          MR. ZUNSHINE:   Well, I came here.

3          THE COURT:   I understand, but what you're saying is

4   you're objecting to language in the release.  I think you're

5   alone in objecting to this portion of it.

6          MR. ZUNSHINE:   That's right.

7          THE COURT:   That's fine, and the answer is don't

8   sign it, don't accept a distribution now.  When the case is

9   over, and any liens, claims, or encumbrances have been

10  asserted, we'll know exactly where things stand, and you won't

11  have to worry about claims for indemnification at that point,

12  but you also won't get any money now.  It's really not that

13  complicated.  Just don't take the money.

14         MR. ZUNSHINE:   But in first instance, I wanted to

15  come here and argue to this Court that that part of the release

16  is inappropriate.

17         THE COURT:   I hear you.

18         MR. ZUNSHINE:   All right.

19         THE COURT:   Okay.  Your objection is overruled.

20         MR. ZUNSHINE:   All right.  Thank you.

21         THE COURT:   So if you don't want the money, don't

22  take the money.  No one is forcing the claimant to accept the

23  money.

24         MR. ZUNSHINE:   I understand my options.  I wanted to

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 68

1    use my first off to come here ---

2                THE COURT:    Okay.

3                MR. ZUNSHINE:    --- and argue in front of this Court

4    ---

5                THE COURT:    You did.  Okay.

6                MR. ZUNSHINE:    --- and you overruled my objection --

7    -

8                THE COURT:    Okay.

9                MR. ZUNSHINE:    --- and that's enough for me.  Thank

10   you.

11               THE COURT:    All right.  Any other objectors on the -

12   -- anyone in the courtroom?

13               All right.  Anyone --- all right.  One more in the

14   courtroom.  Please come up.

15               MR. STEVENS:    Your Honor, Neil Stevens, Schuyler,

16   Roche & Crisham.  I represent a number of MF Global customers

17   that had several different business relationships, and they had

18   commodity customer accounts and they were also executing trades

19   on behalf of other clients.

20               And so they have both commodity customer claims and

21   they have general unsecured claims for broker's commissions,

22   and my clients are concerned that the release, you know, may be

23   broadly read to release their general --- their unsecured

24   claims.

25

13-53846-tjt    Doc 5706-4    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 69 of 95
VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 69

1          THE COURT:   Okay.  Mr. Trager, can you address that

2     or Mr. Kobak?  That's a valid concern I understand, and I don't

3     think that was the intent, but if ---

4          MR. KOBAK:   No, and I think --- and certainly in the

5     stipulation, I think the language clarifies that it the release

6     only goes to the extent of what the claimant has received, so

7     if they have some other kind of claim, that would not be

8     affected by it.  And it certainly wasn't our intention.

9          THE COURT:   Just so we're clear on the record, it's

10    the Trustee's position that nothing in the release would

11    release any general unsecured claims that a party may have.

12         MR. KOBAK:   Other than the commodities claim, to the

13    extent it's been satisfied.  Yes, Your Honor.

14         THE COURT:   Mr. Stevens, are you satisfied with

15    that?  Okay.  Thank you.  That was an affirmative response from

16    Mr. Stevens.

17         Anyone else in the courtroom wish to be heard?

18         All right.  On the telephone, any objectors on the

19    telephone?

20         MR. WASSERMAN:   Your Honor?

21         THE COURT:   Go ahead.

22         MR. WASSERMAN:   Okay.  This is Robert Wasserman for

23    the CFTC.  We are obviously not an objector.  I just wanted to

24    address two points very briefly.

25

VERITEXT REPORTING COMPANY
212-267-6868            www.veritext.com            516-608-2400

Page 70

1          THE COURT:   I miss having you in the courtroom, Mr.

2    Wasserman.  Go ahead.

3          MR. WASSERMAN:   I apologize.  I'm actually supposed

4    to be on a plane off to vacation this evening, and I didn't

5    want to miss missing it.

6          THE COURT:   Well, I wouldn't want you to miss it

7    either.  Go ahead, Mr. Wasserman.

8          MR. WASSERMAN:   And so with respect to the delivery

9    class as was mentioned earlier, we have indeed weighed in on

10   this, and tried to explain --- and I apologize for the

11   regulations that are not as clear as I would like them to be,

12   and we'll try to do something about that in future; that

13   unfortunately doesn't help this case --- that the delivery

14   account class includes the specifically identifiable property

15   set forth in (kk)(3), (4), and (5).  And (5) includes the cash

16   price tendered for property that was essentially used to make

17   delivery.

18          Second, with respect to the points raised by the

19   Chapter 11 Trustee and the creditors committee, Your Honor has

20   dealt with the issues regarding the information, and so I won't

21   burden the Court with that.  I would note however very

22   importantly in terms of any customer claims that might be

23   coming from affiliates that 766(h) of the Code is very clear on

24   this point, and that essentially claims based on a proprietary

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 71 of 95
212-267-6868                VERITEXT REPORTING COMPANY                 516-608-2400
www.veritext.com

Page 71

1    account as determined by commission rule, regulation, or order,

2    and the commission has a rule that makes clear that affiliates

3    and entities under common control are all --- their accounts

4    are all proprietary accounts.  And claims based on such

5    proprietary accounts may not be paid, and I'm quoting, "either

6    in whole or in part, directly or indirectly, out of customer

7    property unless all other customer net equity claims have been

8    paid in full."

9                THE COURT:   Mr. Wasserman, I don't really have that

10   issue in front of me today; do I?

11               MR. WASSERMAN:   Hopefully not.

12               THE COURT:   I don't think so.

13               MR. WASSERMAN:   Fair enough.  And that's all I will

14   say on that point.

15               THE COURT:   Thank you.  Anything else, Mr.

16   Wasserman?

17               MR. WASSERMAN:   No, thank you.

18               THE COURT:   All right.  Anyone else on the phone

19   wish to be heard?

20               MR. LAROSA:   Yes, Your Honor, Christopher LaRosa

21   from the Securities Investor Protection Corporation.

22               THE COURT:   Yes.

23               MR. LAROSA:   Just very briefly, wanted to make a

24   couple of points.  I know Your Honor is aware that the cases

25

11-53846-tjt    Doc 5706-4    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 72 of 95
VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400

Page 72

1  that were cited in several of the memorandum, the A.R. Baron

2  case and the Madoff cases, deal with securities customers and

3  not commodities customers, and we agree with that, the SIPA

4  assignment provision is not implicated here.  But I did want to

5  point out that I think the rationale underlying that statutory

6  provision applies with equal force in the context of

7  commodities.  The real basis for the provision, the real public

8  policy rationale underlying it is that you want to ensure that

9  customer property is recovered either by the Trustee or through

10  the estate so that it can be distributed on a rateable basis;

11  that is that customers who are not actually, you know, the

12  claimant or the plaintiff in an action against a third party,

13  are obliged to share whatever recovery of customer property

14  that they may make with other customers of the estates of

15  customers distributed on a rateable basis.  That applies under

16  SIPA, and given that there is a rateable distribution

17  requirement under the CFTC commodity broker liquidation

18  provisions it applies with equal force there.

19            THE COURT:   But the law hasn't gone your way on

20  this; has it?  I mean ---

21            MR. LAROSA:   Well, I was going to point out, Your

22  Honor ---

23            THE COURT:   --- the case law --- let me finish ---

24            MR. LAROSA:   --- there's quite a lot of case law to

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 73

1   the contrary.  I mean, first of all, the Madoff case, just to

2   address that very briefly --- the Madoff case was one that did

3   not involve the issue of assignment.  It's discussed in the

4   case, but all of the discussion is dictive because the Trustee

5   and Madoff never actually took assignments.  And so, you know,

6   the issue was raised but by several of the parties and the

7   Court ---

8          THE COURT:   Mr. LaRosa, let me ask you this.  I draw

9   a distinction between the Trustee demanding an assignment,

10  which is what's happened here, and the Trustee receiving an

11  assignment.  If this were, for example, a settlement under 9019

12  that was a negotiated settlement, and as part of a settlement,

13  Trustee received an assignment of claims, I think --- and I

14  can't remember the name of the Second Circuit case now --- but

15  I thought that, you know, if you go back to the Marine Midland

16  case and that whole line of authority about what a Trustee has

17  standing to assert, I can't remember the name of the --- I

18  thought there was a subsequent Second Circuit case that

19  basically said if you get an assignment of a claim, you can ---

20  you may be able to proceed with that.  Here, to me, the issue

21  is in the face of the objections is, in the absence of ---

22  look, the Trustee has got statutory and rule authority to make

23  a distribution of property to commodity customers and he's in

24  the process of doing that.  And the issue is whether the

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 74

1    Trustee can impose a condition, the receipt of an assignment of

2    claims that isn't provided for in any statute or governing

3    regulation.  That's where I have the problem.  If for whatever

4    reason commodity customers concluded that, look, we ought to

5    assign all these claims to the Trustee, let him go fight the

6    battle, that's going to assure the promptest resolution and

7    equitable distribution of proceeds, that's one thing.

8            So --- but address the issue of where is the

9    authority of the Trustee to insist on the assignment as a

10   condition to a distribution.

11           MR. LAROSA:  It has to come from the statutory

12   purpose, Your Honor.  The reason for the insistence is to

13   ensure that a claimant outside the context of this liquidation

14   not recover 100 percent of property that should be distributed

15   to customers on a rateable basis.  In other words, that

16   customer may walk away with a hundred percent of property that

17   would otherwise have to be shared with other customers.

18           THE COURT:  Well, I'll just give you an example, and

19   I understand your point.  Okay?  But in another case that I

20   have, the 1031 tax group, where there were numerous adversary

21   proceedings pending before me against third parties that the

22   Trustee, the Chapter 11 Trustee believed there could be

23   recoveries from, there were also parallel class actions pending

24   in the United States District Court for the District of the

25

1    North --- the Northern District of California.  And what the

2    plaintiffs and the Chapter 11 Trustee agreed upon was --- and

3    it was approved by both Judge Ware in the Northern District of

4    California, and by me --- what were for sharing of recoveries

5    and for administration of the claims, all recoveries in the

6    class action in California were going to be distributed by in

7    that case the Chapter 11 Trustee, because it was --- the class

8    was call extensive with the creditor classes before me.  And

9    they agreed, there were agreements about how fees would be

10   charged, et cetera --- obviously they were both were subject to

11   approval by the Court.

12            But that was all consensual and it dealt with sort of

13   the issues you're raising about what's the most efficient way

14   and the fairest way of recovering money and distributing it

15   among all those who are entitled to it?  So I come back to you

16   say, look at the statutory purpose, you get on really shaky

17   ground, Mr. LaRosa, if you're asking me to impose an obligation

18   from a non-existent provision in a statute.  This is not

19   filling a gap in an existing unclear statutory provision.

20            So I come back.  Do you have any case law, CFTC

21   regulation, anything with the binding force of law, that

22   supports your position that the Trustee can insist on an

23   assignment before making a distribution?

24            MR. LAROSA:   I don't, Your Honor, and as I say, I

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 76

1   think the --- as I say, and just to reiterate the point, the

2   downside risk is that if the Trustee were not able to do this,

3   there is a significant risk that the statutory position or

4   objective could be substantially compromised.  In other words,

5   some customers could do significantly better than others, and

6   that obviously is not what we intended ---

7            THE COURT:  You know, that's long been true in

8   Chapter 11 cases where the Trustee is denied standing to pursue

9   various claims.  If I were writing on a clean slate, I might

10  come out differently, but there's a pretty long line of

11  authority that circumscribes what a Trustee can do, whether

12  it's before me in a Bankruptcy Court, or if the Trustee brings

13  an action in the District Court.  I didn't write that stuff.  I

14  mean, that's, you know --- that's why I'm open to listening to

15  arguments if somebody has some actual authority to point to,

16  but --- you know, and I don't have the issue of what precisely

17  Mr. Giddens' standing is to pursue various claims.  That's not

18  before me now.

19            All right.  Anything else, Mr. LaRosa?

20            MR. LAROSA:  Nothing, Your Honor.

21            THE COURT:  All right.  Anything --- anybody else on

22  the telephone?

23            MR. D'APICE:  Yes, Your Honor, if I may, Peter

24  D'Apice of Stutzman, Bromberg, on behalf of what we've styled

25

VERITEXT REPORTING COMPANY
212-267-6868                         www.veritext.com                         516-608-2400

Page 77

1    certain claimants.  If I may be heard?

2            THE COURT:   Yes, go ahead.

3            MR. D'APICE:   Your Honor, I'll make two brief

4    points; one, you asked one of the prior objectors if there was

5    any specific language in the release paragraph that gives

6    concern, and I do have a specific phrase here that is of

7    concern, and that is specifically that the release releases any

8    and all claims arising out of or related to the circumstances

9    that gave rise to the claim, and the way the word "claim" is

10   defined, it includes the entire claim.  It's not just limited

11   to the amount that has been distributed.  I think that's

12   excessively broad, and if nothing else, Your Honor, this

13   release will be litigated in some other action, somewhere else

14   where claimants are pursuing their unpaid amounts.  And it'll

15   be heavily briefed, it'll be argued, it'll be litigated, and

16   any of the qualifications or changes that the Trustee has

17   agreed to in Court will have to be sort of appended as

18   asterisks to this actual document that's been delivered to

19   claimants.

20           THE COURT:   Mr. Kobak, do you agree or disagree with

21   the arguments being made?

22           MR. D'APICE:   I'm sorry, Your Honor?

23           THE COURT:   I'm asking Mr. Kobak because I'm not

24   sure this is a disagreement here.

25

212-267-6868              VERITEXT REPORTING COMPANY              516-608-2400
                              www.veritext.com

Page 78

```
 1              MR. KOBAK:   Yeah.  No, Your Honor.  I think the ---
 2    and I think the ---
 3              THE COURT:   So why don't you clarify the language so
 4    we ---
 5              MR. KOBAK:   --- stipulation and order does do that.
 6    And I think the original release made it clear it was only t o
 7    the extent of what they got.
 8              THE COURT:   Okay.  But I think there ought to be
 9    something that somebody could look at the four corners of the
10    applicable document and not have to ask for a transcript from a
11    hearing and et cetera.  But you're not disagreeing in principal
12    with your argument ---
13              MR. KOBAK:   No, and I thought we had clarified that.
14              THE COURT:   Okay.
15              MR. KOBAK:   We will think hard about ---
16              THE COURT:   But I'm not ruling today, so what I
17    would ask is ---
18              MR. KOBAK:   Right.
19              THE COURT:   --- that you confer with counsel who
20    have raised these objections about the precise --- because I
21    think you're agreeing in principal with what's the appropriate
22    scope of the release.
23              MR. KOBAK:   Yeah.  I think that this is dealt with
24    in the stipulation.  I guess the question is how to implement
25
```

Page 79

```
 1   that perhaps more than anything.

 2           THE COURT:   Okay.

 3           MR. KOBAK:   And I don't quite know the answer to

 4   that because we have received a large number of releases.  I

 5   think we need to reflect on that.

 6           THE COURT:   Okay.  Why don't you confer?  I'm not

 7   ruling today from the bench, but I think this issue needs to be

 8   --- I want to be sure that somebody can look at something

 9   specifically and know this is the release that has been given.

10           MR. KOBAK:   And it may be, Your Honor, that we'll

11   also consider putting something on the website about the

12   assignment having heard Your Honor's views about it.

13           THE COURT:   Okay.

14           MR. KOBAK:   I think I need to talk to Mr. LaRosa and

15   the Trustee and also just figure out what we could do.

16           THE COURT:   Okay.  Anybody else on the telephone

17   wish to be heard?

18           MR. D'APICE:   Your Honor, Peter D'Apice again.  Just

19   one small additional point; some of my claimants have, since we

20   filed our papers, received determinations along with the

21   original proposed release, and to the extent that that four

22   corners of the release that they have in their hands is

23   objectionable, they won't be signing it, but we don't want to

24   blow the 30-day deadline for not objecting to the claim on that

25
```

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 80

1    basis.

2              THE COURT:   Look, this issue about the scope of the

3    --- I think you're in agreement about the release.  I take your

4    point.  You're not going to get resolve just in a matter of a

5    day or two.  Now, I understand you've got to deal with the

6    issue of those who have already signed a release.

7              MR. KOBAK:   You know, our idea was to get an order

8    signed by the Court and then, you know, basically say this is

9    what the release now means.  If we need to send that back to

10   the claimants that have already signed, I'm not sure what the

11   best way is ---

12             THE COURT:   All right.

13             MR. KOBAK:   --- to handle that.  But I don't think

14   it's of a dispute about substance.  It's just, I think, a

15   dispute about how to make people aware of this and kind of the

16   mechanics of how to do it.

17             THE COURT:   Okay.

18             MR. D'APICE:   And also the specific language that we

19   can then present that we'll end up litigating in some other

20   forum, at least we know what specifically we've agreed to and

21   not agreed to.

22             THE COURT:   I agree with Mr. Kobak that it will be

23   in an order that the Court will sign.

24             MR. D'APICE:   Thank you, Your Honor.

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 81

```
 1              MR. KOBAK:   Thank you, Your Honor.
 2              THE COURT:   All right.  Anybody else on the
 3     telephone wish to be heard?
 4              All right.  Any other reply or response, Mr. Kobak or
 5     Mr. Trager?
 6              MR. KOBAK:   I have nothing further, Your Honor.
 7              MR. TRAGER:   Briefly, Your Honor.
 8              THE COURT:   Go ahead, Mr. Trager.
 9              MR. TRAGER:   Just briefly regarding the issues about
10     the delivery class and the delivery credits.  Your Honor, I,
11     too, am not familiar with 17 CFR 1.21 and look forward to the
12     surreply.  But in respect to something that Mr. Goodman
13     mentioned, as I'm sure Your Honor is aware, it's always been
14     the Trustee's goal as well to distribute as much property to
15     customer claimants as possible as quickly as possible.  We're
16     doing our best to stay ahead of the curve.  We filed this
17     motion close to a month ago in the effort to know when the
18     claimants were coming in.  We would be further along in the
19     process and be able to make distributions right away, and in
20     fact that was one of Mr. Goodman's issues, making sure that his
21     customer, his clients who had not yet received anything because
22     they were neither 4(d) nor in physical form, would get property
23     right away obviously to the best of our ability, but, Your
24     Honor, taking this issue under submission, it does in fact
25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 82

1   theoretically leave his customers and similarly situated

2   customers in a no-man's land.

3           THE COURT:   I don't think I've ever taken more than

4   a week to issue a ruling in this case, Mr. Trager.

5           MR. TRAGER:   That was not going to be my issue, Your

6   Honor.  As to whether or not you were to defer the issue of

7   this particular item, as Your Honor may recall we were doing

8   bulk transfers, one after the other, shoring up issues as they

9   came up.  We added deliveries into the third bulk transfer,

10  even though we had to punt on the issue of the delivery class.

11  We're here as quickly as we possibly can with the

12  identification of that delivery class.  With that, you know, I

13  make no secret of the fact that it's Mr. Goodman's clients in

14  similarly situated who literally have gotten close to zero

15  percent of a distribution.  Our goal for making sure that Your

16  Honor takes a look at this issue as quickly as possible and

17  unfortunately has to come to a ruling on it.  I appreciate it.

18  Thank you, Your Honor.

19          THE COURT:   Thank you.  Okay.  All right.

20          Mr. Kobak, anything else you want to raise?

21          MR. KOBAK:   No, Your Honor.  I do want to apologize

22  to the Court.  I see in retrospect, and I don't know why when

23  we did our initial orders on the claims process, we didn't

24  include the assignment and release language.  I think frankly

25

Page 83

1    we were doing everything on such a rushed basis, we just

2    neglected to put it in, and it obviously would have cleared up

3    a lot of confusion had we done it then.

4             THE COURT:   I don't think --- I still haven't seen

5    it, so maybe it's attached to one of the objections, but ---

6             MR. KOBAK:   We ---

7             THE COURT:   --- could you provide my chambers with a

8    copy?

9             MR. KOBAK:   Yes, we can get you that along with a

10   proposed order and stipulation, if that will help Your Honor.

11            THE COURT:   So, what else do we have to deal with

12   today, Mr. Kobak?

13            MR. KOBAK:   The last item on the docket is the ---

14   on our docket is the Sapere motion concerning the insurance

15   issue which is their motion.

16            THE COURT:   Yeah.  Before we get to that, do I need

17   to do something with the stipulation now?  I mean, it was

18   intended to resolve issues about the release and assignment.

19   I've --- I mean, I'll rule on anything I need to rule on.

20            MR. KOBAK:   Well, we have a proposed order.  From

21   Your Honor's ---

22            THE COURT:   Go ahead.

23            MR. KOBAK:   --- comments, you might agree with the

24   release language in that order, but perhaps not the part of it

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 84

1    that refers to assignment ---

2              THE COURT:   What gives you that idea?

3              MR. KOBAK:   --- so it may need --- I just have a

4    feeling, Your Honor.  It's why I'd be such a successful

5    commodities trader, Your Honor.

6              So it may be that when you write your decision that

7    the appropriate order would not refer to the assignment

8    language at least as it is in that stipulation.

9              MR. DAVIDOFF:  If the Court please, I think the

10   discussion of ---

11             THE COURT:   Just identify yourself for the record.

12             MR. DAVIDOFF:   Yes.  Merrill Davidoff from Berger &

13   Montague, speaking for seven of the nine class action cases

14   pending in the Southern District, Your Honor.

15             We concurred in the two rounds of negotiations and

16   with the amended stipulation and order.  I just want to make

17   our position clearer.  We were faced with this situation where

18   hundreds and now thousands upon thousands of these releases

19   have been returned.  And so we thought the --- we don't think

20   the amended stipulation and order is perfect, but we think it

21   got us three-quarters to seven-eighths of the way to where we

22   needed to be.  It left for future determination the question of

23   who has priority in a standing contest, and it also, and most

24   importantly, retroactively modified the many thousands of

25

Page 85

1    unvarnished releases, and I have a copy of the unvarnished

2    release if Your Honor wants me to provide that, that had

3    already been sent to the claimants and returned by the

4    claimants.

5            Now to the extent that the Trustee asserts in his

6    response that the stipulation and order somehow allows the

7    Trustee to require --- require --- execution of the document,

8    the original or the amended document, as a condition for the

9    receipt of further distributions beyond the approximately 72

10   percent that claimants have already --- most claimants have

11   already received, we oppose that.

12           THE COURT:  Hold, Mr. Davidoff.

13           MR. DAVIDOFF:  Yes?

14           THE COURT:  The release assignment is intended to

15   apply where there's been a claim determination.  All of the

16   distributions to date, the first 72 percent, were based on

17   unaudited figures and it was the goal of getting as much money

18   out as possible.  Now people are having --- they're receiving

19   determination letters and if they agree with it that that's

20   their net equity claim, they're receiving additional payment.

21   What's wrong with the Trustee asking for a release against the

22   estate in return for that distribution that resolves the

23   letter, you know, that resolves the claim?

24           MR. DAVIDOFF:  No, that wasn't the most

25

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 86

1   objectionable part of the document, and the stipulation and

2   order resolves as to the release certainly the most

3   objectionable issues as to the release.  And I think even Mr.

4   Entwistle and some of the other objectors would agree with

5   that.  And as to the assignment, it leaves the issue of

6   priority of claims for future determination.  So I do concur

7   with Mr. Kobak that we --- that Your Honor should enter ---

8           THE COURT:   Well, here, look.  With respect to the

9   joint notice of presentment of stipulation and order resolving

10  objection relating to assignment and release of claims from

11  future customers, it's ECF docket no. 1050 ---

12          MR. DAVIDOFF:   That's the first one, Your Honor.  I

13  think the second one was attached to ECF document no. 1274,

14  because we had two rounds of negotiations on this and the

15  second amended version of the stipulation and order, which was

16  agreed to by the Trustee, contains further protections for the

17  customers.

18          THE COURT:   Where is it in the binder?  Can somebody

19  tell me that?  I've got ---

20          MR. KOBAK:   Item 15, Your Honor.

21          THE COURT:   Thank you.

22          MR. DAVIDOFF:   Well, tab 15 is, I think ---

23          THE COURT:   That's not the stipulation; is it?

24          MR. DAVIDOFF:   No, I ---

25

VERITEXT REPORTING COMPANY
212-267-6868                          www.veritext.com                          516-608-2400

Page 87

1            THE COURT:   Yeah, it has an amended stipulation and

2    order attached.

3            MR. DAVIDOFF:   Well, I don't know which tab you have

4    it in, Your Honor.  I have it as docket 1274 ---

5            THE COURT:   Stop.  I'm not approving stipulation,

6    either one, because it covers the assignment.

7            MR. DAVIDOFF:   Okay.

8            THE COURT:   Okay?  So the stipulation and order,

9    either the original or the amended, the Court is declining to

10    approve.  Okay?

11            Mr. Kobak, see if you can finalize the release

12    language.  Okay?  I'm awaiting Mr. Schmeltz's surreply.

13            MR. SCHMELTZ:   Right.

14            THE COURT:   I'm going to proceed as I have with

15    respect to every other motion in either of these two cases, and

16    hope to be able to rule not --- you know, not before I get a

17    surreply.  We'll proceed in due course, hopefully

18    expeditiously, to rule.  I think I would put the issues about

19    the release that have been raised as they seem to be --- there

20    seems to be agreement about what's intended.  It may be a tweak

21    of some language that will resolve the issue.  With respect to

22    the assignment, I'm going to rule.  Okay?  The only other

23    objection I think I haven't ruled on is over the delivery

24    class.

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 88

```
 1              MR. KOBAK:    --- the delivery class.  That's correct.

 2              THE COURT:    Does anyone have a different view about

 3    it?

 4              MR. KOBAK:    I don't, Your Honor.

 5              THE COURT:    Okay.  All right.

 6              Anything else for today?

 7              MR. D'APICE:    Your Honor, Peter D'Apice.  May I make

 8    one quick point?

 9              THE COURT:    I don't think so.  You've had your

10    chance.  You've --- we've spoken --- what --- tell me quickly

11    what it is.

12              MR. D'APICE:    Your Honor, I'm not --- I understand

13    you'll issue an order that will clarify what the release means.

14    All I ask is that my clients get an extension of time until

15    that order is issued in which to respond to the Trustees'

16    demand ---

17              THE COURT:    I'm --- deal with the Trustee about it.

18    If you have a problem getting an agreement, arrange a telephone

19    hearing about it.  I don't think you're going to --- if you're

20    making a reasonable request, I don't think you're going to have

21    a problem with the Trustee.  I'm not ruling on --- I don't have

22    any papers in front of me.

23              MR. D'APICE:    Thank you, Your Honor.

24              MR. WASSERMAN:    Your Honor?

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 89

1               THE COURT:   Do you agree with that, Mr. Kobak?

2               MR. KOBAK:   Yes.  I'm certain we can work something

3       out.

4               THE COURT:   Okay.  Yes, who else is on the phone?

5               MR. WASSERMAN:   This is Robert Wasserman for the

6       CFTC.

7               THE COURT:   Yes?

8               MR. WASSERMAN:   Will you want anything further after

9       that surreply?

10              THE COURT:   No, I don't.  It was just an argument

11      that I hadn't seen or read before.  I will read it.  I don't

12      think I need any more papers after that.

13              Okay.  Anybody else have anything else to raise for

14      today?

15              MR. KOBAK:   We do have the Sapere motion.

16              THE COURT:   Okay.  Let's deal with --- I don't think

17      it's going to take very long.  Come on, Mr. Witmeyer, because I

18      think I already ruled on it.

19              MR. WITMEYER:   Your Honor, I think I just have one

20      point I want to make on it.

21              THE COURT:   Go ahead, Mr. Witmeyer.  Come on up to

22      the microphone.

23              MR. WITMEYER:   Your Honor, I'd like to point out on

24      behalf of Sapere that it has been conclusively demonstrated

25

13-53846-tjt   Doc 5706-4   Filed 06/30/14   Entered 06/30/14 22:01:38   Page 90 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 90

1   that MFGI has liability to commodities customers for wrongful

2   acts which consist of allowing customer funds to be out of

3   segregation.  Whether we call them missing, shortfall, or

4   whatever, they exited segregation so they weren't there on

5   October 31, 2011.  That's a violation of the Commodities

6   Exchanged Act.  It's a breach of the common law rule governing

7   bailees for hire.  That's a violation of CFTC regulations.

8   It's a wrongful act as defined in the policy.  It's

9   incontrovertible.  The Trustee has conceded that prior

10  management let it out of segregation.  They put in a chart

11  showing the amount that they calculated as almost one billion

12  in October.  Everybody has conceded it's in excess of 500

13  million.  It's more than 120 million.  We think that justifies

14  the branch of our motion that clarifies this that the Court

15  decrees that as of October 31 ---

16          THE COURT:   Does the Trustee have $120 million in

17  proceeds from insurance sitting in an account, Mr. Witmeyer?

18          MR. WITMEYER:   It's not to get into ---

19          THE COURT:   This is hypothetical, and you're asking

20  me to rule on something that has not yet occurred.  You're

21  asking for me to order a distribution of $120 million that the

22  Trustee has not received; correct or not?

23          MR. WITMEYER:   No, that's not correct, Your Honor.

24  I'm asking that Your Honor decree that the MFGI entity, the

25

13-53846-tjt   Doc 5706-4   Filed 08/30/14   Entered 08/30/14 22:01:38   Page 91 of 95
VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

Page 91

1    estate, owed that as damages ---

2              THE COURT:   Stop.

3              MR. WITMEYER:   --- on October 31.  That's the

4    predicate ---

5              THE COURT:   I ruled --- all right.

6              MR. WITMEYER:   --- for the insurance ruling.

7              THE COURT:   Thank you.  The motion by Sapere et al.,

8    for entry of order, judgment, and decree that the Trustee make

9    restitution to commodities customers of $120 million to be paid

10   from the proceeds of professional liability policies insuring

11   MF Global Inc. issued by MFG Assurance Co. Limited.  It's ECF

12   docket no. 1113.  The motion is denied.

13             MR. WITMEYER:   Thank you, Your Honor.

14             THE COURT:   It's frivolous.  It has also resolved

15   the issue that Mr. Witmeyer raises in this motion arguing that

16   the $120 million vested whether I was right or wrong, I

17   resolved it in a written opinion I issued earlier this week

18   overruling the Sapere objection in connection with the MFG

19   Assurance and U.S. Specialty Insurance issues.  So that in my

20   view is already resolved.  I intend that at least as to this

21   aspect of it, that I cover in the opinion, it applies equally

22   here.

23             I would also comment once again that this Court and

24   the estate is being burdened with frivolous motions.  You had

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 92

1    some serious objections today, Mr. Witmeyer, with respect to

2    the assignment.  And you actually won one.  You tried to talk

3    yourself out of it, but you won one.  Okay?  Where you make a

4    serious objection on a serious issue, the Court will treat it

5    appropriately.  If I continue to get what I consider to be

6    frivolous motions or objections, the Court is going to deal

7    with it appropriately with all of its power and force.

8              Anybody else have anything?  Is there anything else,

9    Mr. Kobak, on the agenda?

10             MR. KOBAK:   No, Your Honor.

11             THE COURT:   All right.  Mr. Kobak, would you submit

12   a proposed order in connection with the Sapere denial and

13   Sapere motion?

14             MR. KOBAK:   We will, Your Honor.

15             THE COURT:   All right.  Anything else today?

16             All right.  We're adjourned.  Thank you very much,

17   everybody.

18

19       (Whereupon these proceedings were concluded at 12:06 PM)

20

21

22

23

24

25

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 93

```
 1                          I N D E X

 2

 3   RULINGS                              Page      Line

 4   Application to Retain and Employ     16        18

 5   Covington & Burling LLP - granted

 6   Motion to Approve Sale or Disposal of  15      22

 7   De Minimus Assets - granted

 8   Final Hearing Granting Prepetition   14        2

 9   Employee Compensation - granted

10   Motion for Use of Existing Bank      12        1

11   Accounts - granted

12   Motion by Sapere CTA Fund, L.P. For  87        8

13   Entry of Order, Judgment and

14   Decree - denied

15   Motion to Approve First Interim      37        25

16   Distribution - overruled

17

18

19

20

21

22

23

24

25
```

VERITEXT REPORTING COMPANY
212-267-6868                    www.veritext.com                    516-608-2400

Page 94

1

2                    C E R T I F I C A T I O N

3

4    I, Anna Maria Leon, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   ANNA MARIA LEON

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17

18   Date:  April 16, 2012

19

20

21

22

23

24

25

13-53846-tjt    Doc 5706-4    Filed 06/30/14    Entered 06/30/14 22:01:38    Page 95 of 95
VERITEXT REPORTING COMPANY
212-267-6868              www.veritext.com              516-608-2400