## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                                                          :          Chapter 9
                                                               :
CITY OF DETROIT, MICHIGAN,                   :          Case No. 13-53846
                                                               :
                                     Debtor.              :          Hon. Steven W. Rhodes
                                                               :
-------------------------------------------------------x

## OBJECTION OF THE CITY OF DETROIT TO MOTION OF SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC. TO ENFORCE THE SOLICITATION PROCEDURES ORDER

The City of Detroit, Michigan (the "City") hereby objects to the

Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Enforce

the Solicitation Procedures Order (Docket No. 5444) (the "Motion") filed by

Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (together "Syncora").[1]

In support of this Objection, the City respectfully represents as follows:

### Preliminary Statement

1.      By the Motion, Syncora seeks an order of the Court compelling

the City to provide Syncora with multiple votes, across multiple classes, in

amounts in excess of $1 billion, all on account of the same liability.  Because

---

[1]      Capitalized terms not otherwise defined herein have the meanings given to them in the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 4392) (the "Plan").

ATI-2609489v5

(a) the alternative claims asserted by Syncora are Subordinated Claims classified in Class 16 (a nonvoting Class) and (b) even if such claims were not Subordinated Claims, neither the Bankruptcy Code nor the Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment (Docket No. 2984) (the "Solicitation Procedures Order") entitle Syncora to such influence over Plan voting, the Motion should be denied.

2.     Syncora seeks to vote certain COP-related claims – in the aggregate amount of more than *$1.148 billion* – over and above the ballots Syncora has already received under the Solicitation Procedures Order.  According to Syncora, the requested relief is necessary to allow it to properly vote – in both Classes 9 and 14 under the Plan – claims based on certain theories (allegedly unaccounted-for by the City) (collectively, the "Claim Theories") in its proofs of claim and to prevent Syncora from being disenfranchised.  Motion, at ¶ 1.

3.     In addition to the ballots it has already received in Class 9 (for certain COP Claims), the City understands that Syncora seeks Class 14 votes (for Other Unsecured Claims) in the total amount of approximately $661,729,571, comprised of the following amounts:

(a)     $1.00 on account of Syncora's allegations that the City engaged in fraud and fraudulent inducement in connection with the issuance of the COPs (the "Fraud Theory").  Motion, at ¶¶ 24-25.

(b)     $484,943,168.00[2] for unjust enrichment and restitution in the event that the COPs are invalidated (the "Unjust Enrichment and Restitution Theories").  Motion, at ¶¶ 26-30.

(c)     $174,000,000.00 on account of Syncora's allegations that the City's action to obtain the TRO (as defined in the Motion) constituted an abuse of process (the "Abuse of Process Theory").  Motion, at ¶¶ 31-35.

(d)     $2,786,402.00 for certain fees and expenses allegedly incurred by Syncora.  Motion, at ¶¶ 36-39.

4.     Syncora also seeks additional Class 9 votes in the total amount of $486,592,859.40, comprised of the following amounts:

(a)     $484,943,168.00 arising from the City's alleged breach of the Service Contracts (the "Breach of Contract Theory").  Motion, at ¶¶ 41-43.

(b)     $1,649,691.49 on account of prepetition interest allegedly paid by Syncora with respect to the COPs (the "Prepetition Interest").  Motion, at ¶ 44.[3]

5.     According to Syncora, it should be permitted to vote the approximately $485 million outstanding principal amount of COPs held or insured by Syncora *three times*:  (a) twice in Class 9, pursuant to the ballots Syncora

---

[2]     This amount is equal to the full amount of the liability asserted by Syncora in its proofs of claim for direct and insured COPs holdings and is reasserted once again under the Breach of Contract Theory (as such term is defined below).  See Addendum to each of Syncora's proofs of claim, a copy of which is attached as Exhibit 6 to the Motion (the "Addendum"), at 1.

[3]     The City has agreed with Syncora that it may modify its Class 9 insurer ballot to the extent necessary to vote the amount of the Prepetition Interest actually paid by Syncora prior to the commencement of this chapter 9 case.  As set forth below, however, Syncora has failed to assert its rights to have such vote counted in accordance with the Solicitation Procedures Order.

already has received and again under the Breach of Contract Theory; and (b) once more in Class 14 under the Plan, pursuant to the Unjust Enrichment and Restitution Theories. See Motion, at ¶¶ 26-30, 41-43. As set forth below, the alternative claims asserted by Syncora pursuant to the Claim Theories are Subordinated Claims, and Syncora was never, and is not today, entitled to receive a ballot to vote such Class 16 Claims. Moreover, even if such Claims were classified in Class 9 or Class 14, Syncora's advancement of serial alternative theories to substantiate a single liability (asserted in a single proof of claim) would not serve to multiply its rights under the Solicitation Procedures Order. Regardless of the Claim Theories cited by Syncora, they all are **at best** expressions of a single asserted liability in Class 9 under the Plan, for which, except as to those COPs it holds directly, Syncora lacks the right to vote.[4]

6.      The City is not, as Syncora accuses, attempting to stifle objections to the Plan and disenfranchise Syncora by denying it the asserted right to separately vote claims based on each of its Claim Theories. See, e.g., Motion, at ¶¶ 3, 30. Rather, the City simply seeks to enforce and implement this Court's Solicitation Procedures Order and the terms of the Plan and to ensure a fair and appropriate voting process for all creditors. As such, the City refuses to acquiesce

---

[4]      In its proofs of claim, Syncora asserts that the Abuse of Process Theory arises in connection with the COPs. See Addendum, at § IV.

to Syncora's demand to clone a single liability within and across voting classes, thereby multiplying Syncora's influence in the Plan confirmation process and allowing it to acquire a blocking position over the City's general unsecured creditors in Class 14.[5] The City, therefore, requests that the Court deny Syncora's transparent attempt to exert undue levels of control over the Plan process.

## Objection

***Except in its Capacity as Holder, Syncora Waived Any Right to Vote Any Claims Relating to the COPs***

7.      As a threshold matter, the plain language of the Solicitation Procedures Order – which clearly establishes the parameters of Syncora's voting rights – prohibits Syncora's assertion of claims based on the Claim Theories in its capacity as an insurer of COP Claims. Pursuant to the plain language of the Tabulation Rules attached as Exhibit 1 to the Solicitation Procedures Order (the "<u>Tabulation Rules</u>"), Syncora, in its capacity as an Insurer of securities giving rise to COP Claims, is eligible to receive a ballot to vote *solely* principal of, and interest on, the COPs it insures.[6] As such, the attempt by Syncora, as an Insurer, to

---

[5]      If allowed to vote as requested by Syncora, the City estimates that Syncora's Class 14 vote relating to the COPs would be approximately double the aggregate amount of the remainder of the Class 14 voting pool.

[6]      The Tabulation Rules provide in relevant part as follows:

> Notwithstanding any other provision in these rules, [COP Claims, among other Claims] will be deemed temporarily

cast separate votes with respect to the COPs under the other Claim Theories is not authorized by the Solicitation Procedures Order and should be rejected by the Court.

8.     The Solicitation Procedures Order also establishes procedures for determining whether the City must count the vote of an insurer of securities instead of that of the applicable security holder.  Paragraph 8(b) of the Solicitation Procedures Order, as modified by the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Docket No. 4202) (the "<u>Scheduling Order</u>"), entered on April 21, 2014, provides that a party (including an insurer) that is not identified as

---

allowed for voting purposes in the full amount set forth in the Plan regardless of whether any such claim is classified as secured, contingent, disputed or unliquidated; provided that, for good cause shown, the City can petition the Court for leave to object to the allowance of such claims for voting purposes consistent with Rule VII below.  *Notwithstanding the first sentence hereof, for the avoidance of doubt, each Insurer of securities giving rise to [COP Claims, among other Claims] will be allowed to vote the full amount of the principal of, interest on, and any other amount payable pursuant to the securities it insures in these classes.* Notwithstanding the first sentence hereof, for the avoidance of doubt, each Beneficial Holder of securities giving rise to [COP Claims, among other Claims] will be allowed to vote the full amount of the principal of, and interest on, and any other amount payable pursuant to the securities it beneficially holds.

Tabulation Rules, at Rule III.

having the right to vote in (a) the Plan or (b) the Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment (Docket No. 2789) (the "Solicitation Procedures Motion") may file a "Notice of Asserted Right to Vote a Claim" and a brief in support by May 26, 2014.  Solicitation Procedures Order, at ¶ 9(a); Scheduling Order, at ¶ 8(b).[7]

       9.    The Solicitation Procedures Motion expressly identifies the holders of securities, and not the applicable insurers, as the entities with the right to vote claims relating to such securities.  See Solicitation Procedures Motion, at ¶ 16

---

[7]    The Solicitation Procedures Order provides in relevant part that:

> If a party (including, but not limited to, an Insurer) is not identified in the Plan or in the Motion as having the right to vote on the Plan, and if that party believes it has a right to vote on the Plan, then, by May 13, 2014, the party (the "Claiming Party") shall file and serve on the ECF noticing list a "Notice of Asserted Right to Vote a Claim" and a brief in support of the rights asserted therein, which brief shall identify (i) the claim(s) (and Classes or subclasses, as applicable) with respect to which the Claiming Party asserts voting rights, (ii) whether the Claiming Party possesses the right to make an Election with respect to such claim(s), (iii) the legal and factual support for asserting such voting and/or Election rights, and (iv) the proper treatment of the Claiming Party's vote(s) for purposes of section 1126(c) of the Bankruptcy Code.

Solicitation Procedures Order, at ¶ 9(a).  The Scheduling Order modified the foregoing deadline to May 26, 2013.  See Scheduling Order, at ¶ 8(b).

("[B]y this Motion, the City has proposed that the Beneficial Holders of bonds possess the right to vote the claim represented by the applicable bond. It is possible that an insurer of a particular bond may wish to assert the right to vote some or all of the applicable claim."). Accordingly, if Syncora, in its capacity as an insurer, wished to vote the claims relating to the COPs, it was incumbent on Syncora to assert its alleged right to vote by no later than May 26, 2014. Syncora filed no such notice.

10. Other insurers of securities, including other COPs insurers, filed notices by the deadline established in the Scheduling Order asserting rights to vote claims based on theories of, among other things, (a) the applicable insurer's alleged status under the operative documents as sole holder of the securities for the purposes of voting and (b) contractual and equitable subrogation rights for payments made or to be made under the applicable insurance policies.[8] Because

---

[8] See, e.g., Docket Nos. 5015 (Assured Notice of Asserted Right to Vote Claims in Class 8); 5022 (Assured Guaranty Municipal Corp. Notice of Asserted Right to Vote Certain Claims in Class 1A); 5025 (National Public Finance Guarantee Corporation's Notice of Right to Vote the National DWSD Bond Claims); 5026 (National Public Finance Guarantee Corporation's Notice of Right to Vote Certain Class 8 Unlimited Tax General Obligation Bond Claims); 5029 (Berkshire Hathaway Assurance Corporation's Notice of Asserted Right to Vote Claims); 5030 (Ambac Assurance Corporation's Notice of Asserted Right to Vote a Claim); 5056 (Notice of Financial Guaranty Insurance Company Asserted Right to Vote and Make Elections with Respect to Certain DWSD Bond Claims); and 5087

Syncora failed to file any such notice by May 26, 2014, it is now settled that the

actual *holders* of COP Claims that Syncora insures retained the right to vote such

claims, and Syncora does not have the right to vote those claims, except in its

limited capacity as actual holder of any COPs debt.

***Any Claims Arising from the Claim Theories***
***Are Subordinated Claims in Class 16 Under the Plan***

11.     Claims based on the various alternate Claim Theories – even if

valid – constitute Subordinated Claims in Class 16 under the Plan, a nonvoting

class.

12.     Section 510(b) of the Bankruptcy Code provides that:

> For the purpose of distribution under this title, a claim
> arising from rescission of a purchase or sale of a security of
> the debtor or of an affiliate of the debtor, for damages
> arising from the purchase or sale of such a security, or for
> reimbursement or contribution allowed under section 502 on
> account of such a claim, shall be subordinated to all claims
> or interests that are senior to or equal the claim or interest
> represented by such security, except that if such security is
> common stock, such claim has the same priority as common
> stock.

11 U.S.C. § 510(b).[9]  Section 510(b) of the Bankruptcy Code is "interpreted

broadly to include subordination of claims 'indirectly related to the purchase or sale

---

(Notice of Financial Guaranty Insurance Company Asserted Right to Vote
and Make Elections With Respect to Certain COP Claims).

[9]     Section 510 of the Bankruptcy Code is made applicable in its entirety in
chapter 9.  See 11 U.S.C. § 901(a).

of a security.'" Brown v. Owens Corning Inv. Review Committee, 541 F. Supp. 2d

958, 970 (N.D. Ohio 2008) (quoting In re Enron Corp., 341 B.R. 141, 157 (Bank.

S.D.N.Y. 2006)).

13.     Syncora's claims arising from the Fraud Theory, the Unjust

Enrichment and Restitution Theories and the Breach of Contract Theory are on

their face asserted for damages arising from the purchase or sale of the COPs.

As such, any liability of the City under these theories constitutes a subordinated

claim under section 510(b) of the Bankruptcy Code.  Pursuant to the Plan, claims

subordinated under section 510(b) of the Bankruptcy Code, among other

provisions, are classified as "Subordinated Claims" in Class 16 under the Plan.

See Plan, at § I.A.271 (defining "Subordinated Claim" as "a Claim of the kind

described in sections 726(a)(3) or 726(a)(4) of the Bankruptcy Code and/or Claims

subordinated under sections 510(b) or 510(c) of the Bankruptcy Code").

14.     Moreover, Subordinated Claims are fully impaired under the

Plan and, therefore, not entitled to vote pursuant to section 1126(g) of the

Bankruptcy Code, as made applicable in chapter 9 by section 901(a) of the

Bankruptcy Code.  See id. at § II.B.3.w (providing that "Class 16 is deemed to

have rejected the Plan and Holders of Subordinated Claims are not entitled to cast

a Ballot in respect of such Claims").

15. Accordingly, neither Syncora nor any other party is entitled to vote any independent claims arising from the Fraud Theory, the Unjust Enrichment and Restitution Theories and the Breach of Contract Theory.

***Even if They Were Not Subordinated Claims,***
***the Claim Theories at Best Give Rise to COP Claims in Class 9 Under the Plan***

16. Even if claims based on the Claim Theories were not Subordinated Claims, and even if Syncora (as a COPS holder) could vote claims on account of the Claim Theories, all of which the City disputes, all claims arising from the Claim Theories would be COP Claims in Class 9. Under the Plan, as Syncora acknowledges, a COP Claim is defined as "a Claim under or evidenced by the COP Service Contracts." Plan, at § I.A.57; see also Motion, at ¶ 12. Despite this language, Syncora asserts without justification that any claims relating to the COPs, but arising under the Fraud Theory, the Unjust Enrichment and Restitution Theories or the Expenses Theory, are not COP Claims at all and entitle Syncora to separate votes in Class 14 under the Plan. See Motion, at ¶¶ 25, 29, 39. The apparent basis for Syncora's contention is that claims under these theories do not arise directly under the COP Service Contracts and are not Subordinated Claims.

17. Syncora fails to explain, however, how these claims are not "evidenced by" the COP Service Contracts, as provided for by the Plan's definition of "COP Claims." See Plan, at § I.A.57. But for the existence of the COP Service

Contracts – pursuant to which the City received the proceeds of the COPs and is liable to the Service Corporations for amounts due thereunder – the COPs would not have been issued, the City would not be responsible for any amounts due under the COPs and Syncora would be unable to establish any liability on the part of the City under any of its Claim Theories. Accordingly, if Syncora could establish that the Claims Theories do not give rise to Subordinated Claims, all of Syncora's claims at issue in the Motion would be COP Claims, as defined by the Plan, and would belong solely in Class 9 regardless of the theory of liability.

### *The City Will Amend the Plan to Further Clarify That the Definition of COP Claims Includes the Claim Theories*

18.     Syncora correctly observes that the City has communicated extensively with Syncora in recent weeks regarding Syncora's request to reassert the liabilities arising from the COPs under multiple legal theories in both Classes 9 and 14 under the Plan. Motion, at ¶ 1. Once Syncora raised concerns about alleged ambiguities in the Plan, counsel to the City informed Syncora that: (a) as with other insured debt in the Plan, the City always intended that insurers' claims, if any, related to insured debt would be classified in the same class as the underlying debt (see, e.g., Class 7 – Limited Tax General Obligation Bond Claims); and (b) the City would amend the Plan to provide further clarification that all of Syncora's claims relating to the COPs constitute "COP Claims" thereunder (to the extent that they are not Subordinated Claims in Class 16). Accordingly, to

the extent any ambiguity actually existed over whether the Claim Theories that Syncora asserts give rise to claims in Class 14 under the Plan constitute "COP Claims" – which the City disputes – Syncora is aware that such ambiguity imminently will be resolved.

### *Syncora's Claims Relating to the COPs are Subject to Objection and Contingent*

19.      Regardless of what Class they may fall in, Syncora is not entitled to vote any claims arising from the Claim Theories because any such claims are subject to a pending objection. In this regard, the Tabulation Rules provide that:

> Subject to Rule III, if the City has filed and served an objection to a claim by May 15, 2014, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection. If an objection does not identify the proposed amount of a claim (e.g., if the claim remains subject to estimation or liquidation), then such claim will be temporarily allowed in the amount of $1.00.

Tabulation Rules, at Rule VII.[10]

---

[10]    As set forth above, Rule III of the Tabulation Rules provides solely for the voting of principal of, and interest on, the COPs, among other securities, either by holders or insurers of such securities. Because Syncora asserts that the Claim Theories are independent of any claims for principal of, and interest on, the COPs it insures, Rule VII applies. See Motion, at ¶ 1-2 (alleging that Syncora possesses various claims separate from those related to the payment of principal under the COPs).

20.     As Syncora is aware, its claims relating to the COPs have been under objection *for more than five months*.  On January 31, 2014, the City filed a complaint in this Court (the "Complaint") commencing adversary proceeding number 14-04112 (the "Invalidation Proceeding").  Pursuant to the Complaint, the City objected to, and sought the disallowance of all claims relating to the COPs, among other relief.  See Complaint, at ¶ 49 ("Plaintiff seeks a declaratory judgment that any claims based on the City's obligations to make the City Payments under the Service Contracts on account of the COPs should be disallowed pursuant to 11 U.S.C. § 502(b)(1) because the agreements creating those obligations are unenforceable, void, and of no effect whatsoever . . . .").  Syncora acknowledges this fact in its proofs of claim, filed on February 20, 2014.  See Addendum, at ¶ 24 (stating that, in the Invalidation Proceeding, the City seeks the disallowance of all claims based on the City's obligations to make payments under the Service Contracts pursuant to section 502(b)(1) of the Bankruptcy Code).[11]

---

[11]     The fact that the Invalidation Proceeding amounts to an objection to the claims relating to the COPs does not appear to be disputed by any party. See Tr. of March 5, 2014 Hr'g, at 72:20-73:7 (statement of the Court recognizing that the Invalidation Proceeding is a claim objection, in a conceptual sense that may require estimation pursuant to Bankruptcy Rule 3018); Tr. of May 15, 2014 Hr'g, at 7:24-8:1 (statement of Financial Guaranty Insurance Company, another COPs insurer, that the Invalidation Proceeding "is, in reality, nothing more than the City's objection to claims related to the certificates of participation . . . ."); see also Tr. of

21.     As Syncora, the Court, the City and other parties have recognized, the Invalidation Proceeding is an objection to the proofs of claim arising from the COPs.  Because Syncora's claims were subject to objection and disallowance in the Invalidation Proceeding as early as January 31, 2014, they are not entitled to be voted pursuant to Rule VII of the Tabulation Rules.

22.     The fact that claims relating to the COPs were subject to objection prior even to entry of the Solicitation Procedures Order confirms the City's intention that all such claims – to the extent they are not Subordinated Claims – would be voted in Class 9 under the Plan and would not bleed across into other classes.  In fact, the record in this case reflects that the City agreed to allow the holders of claims relating to the COPs to cast votes in the full amount of principal and interest owed, pursuant to Rule III of the Tabulation Rules, *solely* because all such claims would be captured within Class 9.

> We have filed papers with respect to the COPs Claims.  As your honor pointed out last time, those are in effect objections to claims.  Nevertheless, because they are in their own class and they only affect themselves and not anybody else, we have agreed that for voting purposes they can vote in full amounts.

See Tr. of 3/11/2014 Hr'g, at 5:8-14 (statements of counsel to the City).

---

May 15, 2014 Hr'g, at 41:6-7 (statement of the City agreeing that the Invalidation Proceeding is a claim objection).

ATI-2609489v5

23.     Moreover, even if the claims arising from the various Claim Theories were not subject to objection and were not Subordinated Claims, they are plainly contingent and would be entitled to vote in Class 9 under the Plan only in the amount of $1.00, to the extent such claims are asserted in the alternative to, or are duplicative of, an underlying claim for outstanding principal or interest due under the COPs.[12]  Pursuant to the Tabulation Rules:

> [I]f a claim for which a proof of claim has been timely filed is marked or identified as contingent or unliquidated on its face or if the proof of claim does not otherwise specify a fixed or liquidated amount, such contingent or unliquidated claim will be temporarily allowed for voting purposes in the amount of $1.00.

Tabulation Rules, at § IV.

24.     As set forth above, Syncora asserts its right to payment for the exact amount of the outstanding principal and interest owed under the COPs pursuant to multiple Claim Theories, including the Unjust Enrichment and Restitution Theories and the Breach of Contract Theory.  See Motion, at ¶¶ 26-30, 41-43; Addendum, at 1.  These claims are duplicative of the underlying claims for principal or, at best, are asserted in the alternative to such claims in the event that the COPs are invalidated.  In either case, such claims patently are contingent

---

[12]     As set forth above, Syncora waived any right to vote the outstanding principal and interest under the COPs it insures by failing to assert that right by the applicable deadline.

because the City cannot be responsible for multiple satisfactions of the same liability.  PNC Bank, Nat'l Ass'n v. Park Forest Dev. Corp. (In re Park Forest Dev. Corp.), 197 B.R. 388, 397 (Bankr. N.D. Ga. 1996) ("A creditor is only entitled to a single satisfaction of its claim."); In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) (allowing "multiple recoveries" on the same claim is "entirely at odds with fundamental bankruptcy policy favoring equality of distribution among similarly situated creditors . . . .  [T]o allow one creditor to assert two dollars in claims for every one dollar of loss from the same debtor violates principles of ratable distribution and offends notions of uniform treatment for creditors.") (citation and quotation marks omitted); In re Simetco, Inc., No. 93-61772, 1996 WL 651001, at *3 (Bankr. N.D. Ohio Feb. 15, 1996) (disallowing duplicative claim because allowing such a claim "would violate the principles of ratable distribution and offend the notions of uniform treatment of creditors").

25.     Syncora's additional theories of liability are only relevant in the event that the COPs are invalidated in the COP Litigation – a contingency that has not yet occurred.  Accordingly, pursuant to the Tabulation Rules (and assuming that Syncora could vote these Claim Theories at all given Tabulation Rule III and

the fact that these are Subordinated Claims), Syncora could vote its claims based

on the various additional Claim Theories in the amount of no more than $1.00.[13]

26.     If Syncora wished to vote its claims arising from the Claim

Theories in some amount other than $1.00, the Solicitation Procedures Order

established a mechanism for the estimation of its claims.  In this regard, the

Solicitation Procedures Order provides that:

> If any claimant seeks different treatment of a claim for
> voting purposes, other than in accordance with the Amended
> Tabulation Rules, such claimant shall be required to file a
> motion pursuant to Bankruptcy Rule 3018(a) for an order
> temporarily allowing such claim in a different amount or
> classification for purposes of voting to accept or reject the
> Plan (a "Rule 3018 Motion") and serve such motion on the
> City's counsel by the later of (a) May 1, 2014 or (b) 10 days
> after the date of service of a notice of objection, if any, to
> the applicable claim.

Solicitation Procedures Order, at ¶ 13.

27.     Syncora's arguments that it could not have known about the

potential need to file a Rule 3018 Motion prior to the May 1, 2014 deadline fail.

See Motion, at ¶ 17.  As set forth above, Syncora was aware as early as

---

[13]     If the Court determines that any of the Claim Theories give rise to claims
that are not Subordinated Claims, these claims should be treated as Class 9
Claims, as described above.  Even if the Court determined that these Claims
Theories result in Class 14 Claims under the Plan, the City requests that the
same rationale applies to the voting of such claims.  If they fall in any voting
class (which the City disputes), all claims based on the Claim Theories
should vote in the amount of $1.00 regardless of which voting Class they are
in.

January 31, 2014 that the City objected to its claims arising from the COPs through the Invalidation Proceeding. Moreover, Syncora was present at the hearing that occurred on March 5, 2014, where the Court addressed the potential for estimation of claims arising from the COPs and established the May 1, 2014 date for filing Rule 3018 Motions. Accordingly, Syncora had ample notice of this deadline.

### Syncora's Requests for Temporary Allowance of the Alleged Claims Arising from the Abuse of Process and Breach of Contract Theories Lack Support and Are Untimely

28. Syncora admits that its alleged claims arising from the Abuse of Process Theory and the Breach of Contract Theory were asserted in unliquidated amounts or as contingent claims in its proofs of claim. Motion, at ¶¶ 34, 42. Nevertheless, Syncora makes passing requests in the Motion that the Court temporarily allow these portions of its claims for voting purposes in the amounts of $174,000,000 and $484,943,168, respectively, pursuant to Bankruptcy Rule 3018(a).

29. Syncora chooses to interpret paragraph 13 of the Solicitation Procedures Order to mean that, unless an objection to a claim is filed, there is no deadline for a claimant to file a Rule 3018 Motion. Motion, at ¶ 9. This interpretation makes little sense and contradicts the plain language of the Solicitation Procedures Order, which clearly provides that (a) claims filed as contingent or unliquidated vote in the amount of $1.00 and (b) the deadline to file a

Rule 3018 Motion was May 1, 2014 unless the City files an objection to the applicable claim, in which case the claimant receives a further ten days to file any Rule 3018 Motion. Moreover, as discussed above, Syncora's claims arising from the COPs had effectively been subject to objection since January 31, 2014.

30. Syncora filed each of its proofs of claim on February 20, 2014, and the Court entered the Solicitation Procedures Order on March 11, 2014. Accordingly, Syncora had almost two months to prepare and file any Rule 3018 Motions it wished to file for its contingent and unliquidated claims (which also were subject to a pending objection) before the deadline imposed by the Solicitation Procedures Order. Syncora offers no excuse in the Motion for its failure to do so and otherwise provides no support for the temporary allowance of its alleged claim arising from: (a) the Abuse of Process Theory in the amount of $174,000,000; or (b) the Breach of Contract Theory in the amount of $484,943,168. Accordingly, the requests should be denied.

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (i) deny the Motion and (ii) grant such other and further relief to the City as the Court may deem proper.

Dated:  July 2, 2014                    Respectfully submitted,


                                        /s/ Heather Lennox
                                        Bruce Bennett (CA 105430)
                                        JONES DAY
                                        555 South Flower Street
                                        Fiftieth Floor
                                        Los Angeles, California  90071
                                        Telephone:  (213) 243-2382
                                        Facsimile:  (213) 243-2539
                                        bbennett@jonesday.com

                                        David G. Heiman (OH 0038271)
                                        Heather Lennox (OH 0059649)
                                        JONES DAY
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, Ohio  44114
                                        Telephone:  (216) 586-3939
                                        Facsimile:  (216) 579-0212
                                        dgheiman@jonesday.com
                                        hlennox@jonesday.com

                                        Jonathan S. Green (MI P33140)
                                        Stephen S. LaPlante (MI P48063)
                                        MILLER, CANFIELD, PADDOCK AND
                                            STONE, P.L.C.
                                        150 West Jefferson
                                        Suite 2500
                                        Detroit, Michigan  48226
                                        Telephone:  (313) 963-6420
                                        Facsimile:  (313) 496-7500
                                        green@millercanfield.com
                                        laplante@millercanfield.com

                                        ATTORNEYS FOR THE CITY

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Objection of the City of Detroit to Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Enforce the Solicitation Procedures Order was filed and served via the Court's electronic case filing and noticing system on this 2nd day of July, 2014.

/s/  Heather Lennox