UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

|  |  |
|---|---|
| In re | Chapter 9 |
|  | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, |  |
|  | Hon. Steven W. Rhodes |
| Debtor. |  |

## NOTICE OF SUBPOENAS PURSUANT TO FED. R. CIV. P. 45

Please take notice that, on the date hereof, the City of Detroit will file and serve the attached subpoenas pursuant to Federal Rule of Civil Procedure 45, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9016, on the following persons and entities:

1. John Kamins

2. Honigman Miller Schwartz and Cohn LLP

3. Siebert Brandford Shank & Co., L.L.C.

Dated:  July 3, 2014                    Respectfully submitted,

                                        /s/ Deborah Kovsky-Apap
                                        Robert S. Hertzberg (P30261)
                                        Deborah Kovsky-Apap (P68258)
                                        PEPPER HAMILTON LLP
                                        4000 Town Center, Suite 1800
                                        Southfield, MI  48075
                                        Telephone:  (248) 359-7300
                                        Fax:  (248) 359-7700
                                        hertzbergr@pepperlaw.com
                                        kovskyd@pepperlaw.com

                                          - and -

                                        Geoffrey S. Stewart
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, D.C.  20001.2113
                                        Telephone:  (202) 879-3939
                                        Facsimile:  (202) 626-1700

                                        **ATTORNEYS FOR THE CITY OF
                                        DETROIT**

# UNITED STATES BANKRUPTCY COURT

Eastern _____  **District of** Michigan _____

In re City of Detroit _____

Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 13-53846 _____

Chapter 9 _____

_____

Plaintiff

v.

Adv. Proc. No. _____

_____

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: John Kamins, c/o Foster Swift Collins & Smith PC, 32300 Northwestern Highway, Suite 230, Farmington Hills, MI 48334

*(Name of person to whom the subpoena is directed)*

☑ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Pepper Hamilton LLP, c/o Robert Hertzberg, Suite 1800, 4000 Town Center, Southfield, MI 48075 | July 8, 2014 at 10:00AM |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 3, 2014 _____

CLERK OF COURT

OR

_____     *A Kovsky Apap*

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* City of Detroit _____ , who issues or requests this subpoena, are:

Deborah Kovsky-Apap, Pepper Hamilton LLP, Suite 1800, 4000 Town Center, Southfield, MI 48075; kovskyd@pepperlaw.com; (248) 359-7331

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**SCHEDULE A**

DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to the requests for production:

1.      The uniform definitions and instructions set forth in Local Civil Rules 26.2 and 26.3 of the United States District Courts for the Southern and Eastern Districts of New York are incorporated by reference.

2.      "COPs" shall mean the Certificates of Participation (also known as Pension Obligation Certificates) issued in connection with the COPs Transaction, or either of them.

3.      "COPs Transaction" shall mean each and both of the issuance of COPs in 2005 and 2006 by the Detroit Retirement Systems Funding Trust 2005 and/or the Detroit Retirement Systems Funding Trust 2006.

4.      "Detroit Retirement Systems Funding Trust 2005" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2005 to provide funding for unfunded accrued actuarial liabilities of the Detroit General Retirement System and the Detroit Police and Fire Retirement System.

5.      "Detroit Retirement Systems Funding Trust 2006" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2006 to provide funding for the refinancing of certain 2005 COPs.

6.      "Detroit General Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit General Retirement System.

7.       "Detroit Police and Fire Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible

1

purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit Police and Fire Retirement System.

8.     "Service Contracts" shall mean each and both of the May 25, 2005 and June 7, 2006 contracts entered into by the City, the Detroit General Retirement System Service Corporation, and the Detroit Police and Fire Retirement System Service Corporation in which the City promised to make a series of periodic payments to the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation ("Service Corporations").

9.     "Trust Agreements" shall mean each and both of the June 2, 2005 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2005 through which the right to receive payments under the Service Contracts from the Service Corporations to Detroit Retirement Systems Funding Trust 2005 and the June 12, 2006 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2006 through which the right to receive payments under the Service Contracts was transferred from the Service Corporations to the Detroit Retirement Systems Funding Trust 2006.

10.     "Contract Administration Agreements" shall mean each and both of the June 2, 2005 and the June 12, 2006 agreements entered into by the Service Corporations, the Funding Trusts, and U.S. Bank, N.A., which govern the relationship amongst the parties to the COPs Transaction.

11.     "Interest Rate Swaps" shall mean the 1992 ISDA Master Agreements (Local Currency Single Jurisdiction) between the Service Corporations and the COP Swap Counterparties, as set forth in Exhibit I.A.61 of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, together with all ancillary and related instruments and agreements,

as the same may have been subsequently amended, restated, supplemented, or otherwise modified.

12.     "You" and "Your" shall mean you, and your employees, agents, officers, directors, representatives, attorneys, affiliates, associates, subsidiaries, successors or predecessor.

13.     In producing documents pursuant to these requests, you are required to furnish all documents in your possession, custody, or control, including without limitation documents possessed by your agents, attorneys, investigators, representatives, financial advisors, consultants, officers, directors, or employees.

14.     The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source.

15.     Documents are to be produced in a way that identifies the request or requests to which each document applies, or as they are maintained in the usual course of business. Documents to be produced shall be the original of all documents in the regular files as maintained, together with any documents that were clipped or attached to them, and, in addition, any originals or copies containing handwriting or other notations. A complete and legible copy may be produced in lieu of producing the document itself.

16.     Notwithstanding a claim that a document contains privileged information or is otherwise partially immune from discovery, any such document must be produced with the portion claimed to be protected excised.

17.     Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to this request, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such documents and information and to furnish the additional documents or information without

3

delay.

4

## DOCUMENT REQUESTS

1.      Documents concerning the COPs Transaction, including without limitation (a) documents concerning the planning, conception, creation, consideration, implementation, issuance, or formation of the COPs Transaction; (b) any and all legal issues concerning the COPs or the COPs Transaction; (c) any and all opinions, legal or otherwise, with respect to the COPs or COPs Transaction; or (d) any efforts to obtain approvals of the COPs Transaction.

2.      Documents concerning the Detroit Retirement Systems Funding Trust 2005 or the Detroit Retirement Systems Funding Trust 2006, including any documents concerning their planning, conception, creation, consideration, implementation, or formation.

3.      Documents concerning the Detroit General Retirement System Service Corporation or the Detroit Police and Fire Retirement System Service Corporation, including any documents concerning their planning, conception, creation, consideration, implementation, or formation.

4.      Documents concerning the Service Contracts, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

5.      Documents concerning the Trust Agreements, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

6.      Documents concerning the Contract Administration Agreements, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

7.      Documents sent by, sent to, written by or received from (a) the law firms of Lewis

5

& Munday, P.C., Honigman Miller Schwartz and Cohn LLP, Miller Canfield P.L.C., or Dickinson Wright PLLC, or (b) Allen Bass, Sean Werdlow, Freda Wang, Jeff Scruggs, Irvin Corley, Seth Lehman, or Roger Short.

8.      Documents received from, or sent to, anyone with respect to the COPs Transaction, including documents concerning the nomination of the COPs Transaction for consideration as (a) the 2005 National Deal of the Year, or (b) the 2005 Midwest Regional Deal of the Year.

9.      Documents concerning the selection of the COPs Transaction as the 2005 Midwest Regional Deal of the Year and as a finalist for the 2005 National Deal of the Year.

10.      Documents concerning receipt of or responses to the document attached as Exhibit 1.

11.      All drafts of all memoranda of law on the COPs Transaction, including without limitation (a) memoranda from Lewis & Munday, P.C. to Sean Werdlow, (b) memoranda from Honigman Miller Schwartz and Cohn LLP to Jeffrey Scruggs, Robert Doherty, Freda Wang, or UBS Financial Services, or (c) memoranda from Honigman Miller Schwartz and Cohn LLP to Sean Werdlow.

12.      Documents sufficient to show all legal research conducted concerning the COPs Transaction or the Interest Rate Swaps.

6

# EXHIBIT 1

**1. Is there any question of the constitutionality of this structure? There seems to be some, given the third bullet on page 1**

There are no constitutional questions. The third bullet simply indicates that ordinances have the same legal stature as statutes.

**2. What type of entity is the Funding Trust?**

A trust. It is comparable to trusts that issue certificates of participation in lease transactions.

**3. Has this structure been used in Michigan previously? If not fully, what elements, if any, have been used?**

Yes, see New Center Development transaction (March 2004) involving approx. $134,000,000 certificates of participation (two series, one taxable, one tax-exempt) in a lease with the State of Michigan. Insured by MBIA. The official statement is available on MuniOS.com

**4. Has any court ever upheld a "service contract" for raising money?**

Yes. The first case involving a service contract with a capital expenditure component is *Bacon* v. *City of Detroit*, 282 Mich. 150 (1937), where the City entered into a contract with Wayne County for garbage services that include a debt service component for the bonds Wayne County issued to provide the incinerators for the garbage. Significantly, the City entered into the financing arrangement with the County because the City did not have capacity under its indebtedness limit to issue the bonds itself. The Michigan Supreme Court upheld the contract between the City and the County against plaintiff's arguments that the contract constituted "indebtedness" or, alternatively, that it was an illegal evasion of the indebtedness limitation. The court based its decision on *Ludington Water Supply Company* v. *City of Ludington*, 119 Mich. 480 (1899), which involved a 30 year, water supply contract that did not have a capital component.

In *Walinske* v. *Detroit –Wayne Joint Bldg Auth.*, 325 Mich. 562 (1949), the Michigan Supreme Court upheld the lease between the City of Detroit and the Building Authority against claims that it constituted "indebtedness" on the basis that it was a service contract and cited *Ludington Water Supply Company* as its authority. Note that the lease was not subject to appropriation and the court simply noted that proper provision would undoubtedly be made as was done for other services. 325 Mich. at 582. In this regard it should be also noted that the service contract in *Bacon* did not have a subject to appropriation clause and was upheld against a challenge that it violated the Detroit City charter's appropriation requirements. The charter requirement "must be given a reasonable construction, protective of the city against official extravagance but not hamstring the city in its granted or necessarily implied powers." 282 Mich. 156.

The lease in the State Building Authority Case[1] was upheld on the basis of *Walinske*. There was no subject to appropriation clause, and the court state that subsequent legislatures were "contractually bound to appropriate the necessary funds to meet the state's rental obligation." 400 Mich. at 318.

---

[1] *In re* Request for Advisory Opinion Enrolled Senate Bill 558 (Being 1976 PA 240).

**Is the City authorized to contract with another entity to raise money to meet its obligations?**

The City has the power to contract to carry out any of its powers, including the express charter power to enter into long-term contracts. § 8-304.

Section 11-101(1) of the City Charter gives the City the authority to adopt ordinances for the "establishment and maintenance of retirement plan coverage for city employees." Finding expansive implied powers under general express powers is a consistent thread in Michigan municipal jurisprudence. The authority for the City to enter into the capital improvement/service contract in *Bacon* (1937) was based on a general power regarding garbage disposal. *Ludington* (1899) cited the Massachusetts case of *Smith* v. *Dedham*, 144 Mass. 117 (1887), as support for upholding a water supply contract. *Smith* v. *Dedham* used the power to maintain a fire engine as the basis to uphold a water supply contract. The link was that the water could be used for firefighting as well as other municipal purposes.

**Why wouldn't the Funding Trust Contact be considered a loan?**

"Loan" is not an operable legal concept in this context.[2] The issue is 'indebtedness", and the transaction does not constitute "indebtedness for the reasons stated in the presentation (see page 3)

- ? A validly incurred obligation may be validly funded or refunded. See below, response to Q #5.
- ? Each scheduled payment will be a current liability payable from current revenues and hence not "indebtedness". Absence of sufficient revenue does not invalidate the liability. *City of Alpena* v. *Kelly*, 97 Mich. 550 (1893); 1 Dillon, COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS § 195 at 356 (5th ed., 1911); 15 McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 41.25 at 430 n. 1 (1995 rev. vol.)(citing *City of Alpena*).
- ? Contracts for future services do not constitute indebtedness. 1 Dillon § 196 at 359; Cases cited in response to Q #3.

As to the extreme judicial reluctance to enforce indebtedness limitation, see Briffault, *The Disfavored Constitution: State Fiscal Limits and State Constitutional Law* 34 RUTGERS L. J. 907 (2003). The article concludes that avoidance rather than enforcement is the national judicial norm. The Michigan cases support this view. The author of the article is a nationally recognized scholar. He is Vice-Dean of the Columbia Law School and Joseph P. Chamberlain Professor of Legislation.

---

[2] There is no agreed set of characteristics of what constitutes a "loan" when s transaction is challenged as being a loan, and courts have not reached the same conclusion on even the same facts. *Compare* In re Bevill, Bresler & Schulman Asset Management Corp., 67 B.R. 557 (D.N.J. 1986) *with* Resolution Trust Corp. v. Aetna Cas. & Surety Co., 25 F.3d 570 (7th Cir. 1994).

**5.** The second bullet point on page 3 indicates that this would not be considered indebtedness under the Home Rule Act. Are there any other provisions of state or city law that would be applicable to that determination?

No. The application of the Revised Municipal Finance Act (Act 34 of 2001) does not necessarily turn on a determination of "indebtedness" but by application of the particular terms of Act 34. It is not applicable. See Act 34, § 103(n)(definition of "security"); M.C.L. § 141.2103(n).

**6.** On page 3, why does it necessarily "follow" that "a funding entered into by the City in order to satisfy its constitutional UAAL obligation also does not constitute indebtedness?" Just because the ultimate result of a structure is to fund an obligation that is not debt doesn't means that that structure itself is OK (i.e. the ends don't justify the means"). For example, a straightforward bond issuance to fund UAAL would obviously be debt, even though the structure was implemented to pay the UAAL. Are there other examples in Michigan of structures where an "alternative" means of funding a "non-debt" obligation is also considered to be "non-debt"?

It "follows" because it is a long established principle of municipal law that an obligation validly entered into may be validly funded or refunded. The funding or refunding is an extension of the original obligation; thus, no new obligation is created. 1 Dillon § 202 (funding and refunding bonds merely change the form and terms of payment of existing indebtedness); Wilcox *v.* Bd. of Comm. of Sinking Fund of City of Detroit, 262 Mich. 699 (1933); support by analogy, Revised Municipal Finance Act § 605 (refunding debt not subject to limitations). There is no legal principle to support distinguishing between debt obligations and "non-debt" obligations in this context.

"The ends don't justify the means" is not a legal principle. It is established in Michigan and almost all other states that "It is not an illegal evasion to accomplish a desired result, lawful in itself, by discovering a lawful way to do it." *Walinske*, 325 Mich. at 581. The sentence, which is quoted in states other than Michigan, apparently originated in *Tranter* v. *Allegheny County Auth.*, 173 A. 289, 297 (Pa. 1934).

**7.** The Funding Trust Agreement will presumably be a long-term contract. Does this run afoul of any restrictions on binding future City Councils (since this is not "subject to appropriation)? Does the City have other "service contracts" of equal or greater length?

Future legislatures may be bound in Michigan. See State building authority Case, above, response to Q #3. As general matter, "binding future legislatures (whether city or state)" is at most a maximum and not a legal principle. If it were there would not be any long-term contracts. The City has the express charter power to enter into multi-year contracts.

The service contract in *Ludington* extended for 30 years. The contract in *Bacon* was for ten years. Contract of Lease #2 with the City of Detroit Building Authority is a service contract under the analysis of *Walinske*, and it commenced in 1985 and extends to at least 2029. Contract of Lease #2 is not subject to appropriation.

**8.** What are the risks of cancellation, early termination or challenges to the validity of a "service contract" under state and local law?

The agreement between the City and the Funding Trust will not provide for cancellation or early termination.

An unqualified opinion will be given with respect to the City's obligation to make payments to the Funding Trust. The opinion will be given in accordance with the standards of The National Association of Bond Lawyers, Model Bond Opinion Project (2003), which states that the residual legal risk with an unqualified opinion "is generally considered so small as to require no special or additional disclosure in the disclosure document.

**9. What are the procedures for enforcing a contract against the City, where the City's obligation is to pay money? What are the potential remedies?**

"Municipal corporations have the same obligation as any person or body corporate to satisfy judgments rendered against them." *Zelenka* v. *Wayne County Corp. Counsel* 143 Mich. App. 567, 573 (Mich. App. 1985). *See generally*, M.C.L. § 600.6091 (procedure for collecting judgments against municipality, including by levy of taxes if not otherwise paid). It has been said that "mandamus is the appropriate remedy against recalcitrant officials who decline to pay a judgment or levy a tax from which it can be paid." 7 MICH. PLEADING AND PRACTICE § 47:17 at 251 (2002 rpl. vol.).

# UNITED STATES BANKRUPTCY COURT

Eastern _____ District of Michigan _____

In re City of Detroit _____

Debtor

*(Complete if issued in an adversary proceeding)*

_____

Plaintiff

v.

_____

Defendant

Case No. 13-53846 _____

Chapter 9 _____

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Honigman Miller Schwartz and Cohn LLP, 2290 First National Building, 660 Woodward Avenue, Detroit, MI 48226

*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Pepper Hamilton LLP, c/o Deborah Kovsky-Apap, Suite 1800, 4000 Town Center, Southfield, MI 48075 | July 8, 2014 at 10:00AM |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 3, 2014 _____

CLERK OF COURT

OR

_____          *A. Kovsky Apap*
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
City of Detroit _____, who issues or requests this subpoena, are:

Deborah Kovsky-Apap, Pepper Hamilton LLP, Suite 1800, 4000 Town Center, Southfield, MI 48075; kovskyd@pepperlaw.com; (248) 359-7331

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
     (i) is a party or a party's officer; or
     (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
   (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
   *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
   *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     (i) fails to allow a reasonable time to comply;
     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     (iv) subjects a person to undue burden.
   *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     (i) disclosing a trade secret or other confidential research, development, or commercial information; or

     (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
   *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     (i) expressly make the claim; and
     (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**SCHEDULE A**

DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to the requests for production:

1.      The uniform definitions and instructions set forth in Local Civil Rules 26.2 and 26.3 of the United States District Courts for the Southern and Eastern Districts of New York are incorporated by reference.

2.      "COPs" shall mean the Certificates of Participation (also known as Pension Obligation Certificates) issued in connection with the COPs Transaction, or either of them.

3.      "COPs Transaction" shall mean each and both of the issuance of COPs in 2005 and 2006 by the Detroit Retirement Systems Funding Trust 2005 and/or the Detroit Retirement Systems Funding Trust 2006.

4.      "Detroit Retirement Systems Funding Trust 2005" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2005 to provide funding for unfunded accrued actuarial liabilities of the Detroit General Retirement System and the Detroit Police and Fire Retirement System.

5.      "Detroit Retirement Systems Funding Trust 2006" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2006 to provide funding for the refinancing of certain 2005 COPs.

6.      "Detroit General Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit General Retirement System.

7.      "Detroit Police and Fire Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible

1

purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit Police and Fire Retirement System.

8.      "Service Contracts" shall mean each and both of the May 25, 2005 and June 7, 2006 contracts entered into by the City, the Detroit General Retirement System Service Corporation, and the Detroit Police and Fire Retirement System Service Corporation in which the City promised to make a series of periodic payments to the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation ("Service Corporations").

9.      "Trust Agreements" shall mean each and both of the June 2, 2005 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2005 through which the right to receive payments under the Service Contracts from the Service Corporations to Detroit Retirement Systems Funding Trust 2005 and the June 12, 2006 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2006 through which the right to receive payments under the Service Contracts was transferred from the Service Corporations to the Detroit Retirement Systems Funding Trust 2006.

10.     "Contract Administration Agreements" shall mean each and both of the June 2, 2005 and the June 12, 2006 agreements entered into by the Service Corporations, the Funding Trusts, and U.S. Bank, N.A., which govern the relationship amongst the parties to the COPs Transaction.

11.     "Interest Rate Swaps" shall mean the 1992 ISDA Master Agreements (Local Currency Single Jurisdiction) between the Service Corporations and the COP Swap Counterparties, as set forth in Exhibit I.A.61 of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, together with all ancillary and related instruments and agreements,

2

as the same may have been subsequently amended, restated, supplemented, or otherwise modified.

12.     "You" and "Your" shall mean you, and your employees, agents, officers, directors, representatives, attorneys, affiliates, associates, subsidiaries, successors or predecessor.

13.     In producing documents pursuant to these requests, you are required to furnish all documents in your possession, custody, or control, including without limitation documents possessed by your agents, attorneys, investigators, representatives, financial advisors, consultants, officers, directors, or employees.

14.     The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source.

15.     Documents are to be produced in a way that identifies the request or requests to which each document applies, or as they are maintained in the usual course of business. Documents to be produced shall be the original of all documents in the regular files as maintained, together with any documents that were clipped or attached to them, and, in addition, any originals or copies containing handwriting or other notations.  A complete and legible copy may be produced in lieu of producing the document itself.

16.     Notwithstanding a claim that a document contains privileged information or is otherwise partially immune from discovery, any such document must be produced with the portion claimed to be protected excised.

17.     Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to this request, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such documents and information and to furnish the additional documents or information without

3

delay.

## DOCUMENT REQUESTS

1.      Documents concerning the COPs Transaction, including without limitation (a) documents concerning the planning, conception, creation, consideration, implementation, issuance, or formation of the COPs Transaction; (b) any and all legal issues concerning the COPs or the COPs Transaction; (c) any and all opinions, legal or otherwise, with respect to the COPs or COPs Transaction; or (d) any efforts to obtain approvals of the COPs Transaction.

2.      Documents concerning the Detroit Retirement Systems Funding Trust 2005 or the Detroit Retirement Systems Funding Trust 2006, including any documents concerning their planning, conception, creation, consideration, implementation, or formation.

3.      Documents concerning the Detroit General Retirement System Service Corporation or the Detroit Police and Fire Retirement System Service Corporation, including any documents concerning their planning, conception, creation, consideration, implementation, or formation.

4.      Documents concerning the Service Contracts, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

5.      Documents concerning the Trust Agreements, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

6.      Documents concerning the Contract Administration Agreements, including any documents concerning their planning, conception, creation, consideration, drafting, implementation, negotiation, or formation.

7.      Documents sent by, sent to, written by or received from (a) the law firms of Lewis

5

& Munday, P.C., Miller Canfield P.L.C., or Dickinson Wright PLLC, or (b) John Kamins, Allen Bass, Sean Werdlow, Freda Wang, Jeff Scruggs, Irvin Corley, Seth Lehman, or Roger Short.

8.      Documents received from, or sent to, anyone with respect to the COPs Transaction, including documents concerning the nomination of the COPs Transaction for consideration as (a) the 2005 National Deal of the Year, or (b) the 2005 Midwest Regional Deal of the Year.

9.      Documents concerning the selection of the COPs Transaction as the 2005 Midwest Regional Deal of the Year and as a finalist for the 2005 National Deal of the Year.

10.      Documents concerning receipt of or responses to the document attached as Exhibit 1.

11.      All drafts of all memoranda of law on the COPs Transaction, including without limitation (a) memoranda from Lewis & Munday, P.C. to Sean Werdlow, (b) memoranda from Honigman Miller Schwartz and Cohn LLP to Jeffrey Scruggs, Robert Doherty, Freda Wang, or UBS Financial Services, or (c) memoranda from Honigman Miller Schwartz and Cohn LLP to Sean Werdlow.

12.      Documents sufficient to show all legal research conducted concerning the COPs Transaction or the Interest Rate Swaps.

# EXHIBIT 1

**1. Is there any question of the constitutionality of this structure? There seems to be some, given the third bullet on page 1**

There are no constitutional questions. The third bullet simply indicates that ordinances have the same legal stature as statutes.

**2. What type of entity is the Funding Trust?**

A trust. It is comparable to trusts that issue certificates of participation in lease transactions.

**3. Has this structure been used in Michigan previously? If not fully, what elements, if any, have been used?**

Yes, see New Center Development transaction (March 2004) involving approx. $134,000,000 certificates of participation (two series, one taxable, one tax-exempt) in a lease with the State of Michigan. Insured by MBIA. The official statement is available on MuniOS.com

**4. Has any court ever upheld a "service contract" for raising money?**

Yes. The first case involving a service contract with a capital expenditure component is *Bacon* v. *City of Detroit*, 282 Mich. 150 (1937), where the City entered into a contract with Wayne County for garbage services that include a debt service component for the bonds Wayne County issued to provide the incinerators for the garbage. Significantly, the City entered into the financing arrangement with the County because the City did not have capacity under its indebtedness limit to issue the bonds itself. The Michigan Supreme Court upheld the contract between the City and the County against plaintiff's arguments that the contract constituted "indebtedness" or, alternatively, that it was an illegal evasion of the indebtedness limitation. The court based its decision on *Ludington Water Supply Company* v. *City of Ludington*, 119 Mich. 480 (1899), which involved a 30 year, water supply contract that did not have a capital component.

In *Walinske* v. *Detroit –Wayne Joint Bldg Auth.*, 325 Mich. 562 (1949), the Michigan Supreme Court upheld the lease between the City of Detroit and the Building Authority against claims that it constituted "indebtedness" on the basis that it was a service contract and cited *Ludington Water Supply Company* as its authority. Note that the lease was not subject to appropriation, and the court simply noted that proper provision would undoubtedly be made as was done for other services. 325 Mich. at 582. In this regard it should be also noted that the service contract in *Bacon* did not have a subject to appropriation clause and was upheld against a challenge that it violated the Detroit City charter's appropriation requirements. The charter requirement "must be given a reasonable construction, protective of the city against official extravagance but not hamstring the city in its granted or necessarily implied powers." 282 Mich. 156.

The lease in the State Building Authority Case[1] was upheld on the basis of *Walinske*. There was no subject to appropriation clause, and the court state that subsequent legislatures were "contractually bound to appropriate the necessary funds to meet the state's rental obligation." 400 Mich. at 318.

---

[1] *In re* Request for Advisory Opinion Enrolled Senate Bill 558 (Being 1976 PA 240).

**Is the City authorized to contract with another entity to raise money to meet its obligations?**

The City has the power to contract to carry out any of its powers, including the express charter power to enter into long-term contracts. § 8-304.

Section 11-101(1) of the City Charter gives the City the authority to adopt ordinances for the "establishment and maintenance of retirement plan coverage for city employees." Finding expansive implied powers under general express powers is a consistent thread in Michigan municipal jurisprudence. The authority for the City to enter into the capital improvement/service contract in *Bacon* (1937) was based on a general power regarding garbage disposal. *Ludington* (1899) cited the Massachusetts case of *Smith* v. *Dedham*, 144 Mass. 117 (1887), as support for upholding a water supply contract. *Smith* v. *Dedham* used the power to maintain a fire engine as the basis to uphold a water supply contract. The link was that the water could be used for firefighting as well as other municipal purposes.

**Why wouldn't the Funding Trust Contact be considered a loan?**

"Loan" is not an operable legal concept in this context.[2] The issue is 'indebtedness", and the transaction does not constitute "indebtedness for the reasons stated in the presentation (see page 3)

- ?  A validly incurred obligation may be validly funded or refunded. See below, response to Q #5.
- ?  Each scheduled payment will be a current liability payable from current revenues and hence not "indebtedness". Absence of sufficient revenue does not invalidate the liability. *City of Alpena* v. *Kelly*, 97 Mich. 550 (1893); 1 Dillon, COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS § 195 at 356 (5th ed., 1911); 15 McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 41.25 at 430 n. 1 (1995 rev. vol.)(citing *City of Alpena*).
- ?  Contracts for future services do not constitute indebtedness. 1 Dillon § 196 at 359; Cases cited in response to Q #3.

As to the extreme judicial reluctance to enforce indebtedness limitation, see Briffault, *The Disfavored Constitution: State Fiscal Limits and State Constitutional Law* 34 RUTGERS L. J. 907 (2003). The article concludes that avoidance rather than enforcement is the national judicial norm. The Michigan cases support this view. The author of the article is a nationally recognized scholar. He is Vice-Dean of the Columbia Law School and Joseph P. Chamberlain Professor of Legislation.

---

[2] There is no agreed set of characteristics of what constitutes a "loan" when s transaction is challenged as being a loan, and courts have not reached the same conclusion on even the same facts. *Compare* In re Bevill, Bresler & Schulman Asset Management Corp., 67 B.R. 557 (D.N.J. 1986) *with* Resolution Trust Corp. v. Aetna Cas. & Surety Co., 25 F.3d 570 (7th Cir. 1994).

**5. The second bullet point on page 3 indicates that this would not be considered indebtedness under the Home Rule Act. Are there any other provisions of state or city law that would be applicable to that determination?**

No. The application of the Revised Municipal Finance Act (Act 34 of 2001) does not necessarily turn on a determination of "indebtedness" but by application of the particular terms of Act 34. It is not applicable. See Act 34, § 103(n)(definition of "security"); M.C.L. § 141.2103(n).

**6. On page 3, why does it necessarily "follow" that "a funding entered into by the City in order to satisfy its constitutional UAAL obligation also does not constitute indebtedness?" Just because the ultimate result of a structure is to fund an obligation that is not debt doesn't means that that structure itself is OK (i.e. the ends don't justify the means"). For example, a straightforward bond issuance to fund UAAL would obviously be debt, even though the structure was implemented to pay the UAAL. Are there other examples in Michigan of structures where an "alternative" means of funding a "non-debt" obligation is also considered to be "non-debt"?**

It "follows" because it is a long established principle of municipal law that an obligation validly entered into may be validly funded or refunded. The funding or refunding is an extension of the original obligation; thus, no new obligation is created. 1 Dillon § 202 (funding and refunding bonds merely change the form and terms of payment of existing indebtedness); Wilcox *v*. Bd. of Comm. of Sinking Fund of City of Detroit, 262 Mich. 699 (1933); support by analogy, Revised Municipal Finance Act § 605 (refunding debt not subject to limitations). There is no legal principle to support distinguishing between debt obligations and "non-debt" obligations in this context.

"The ends don't justify the means" is not a legal principle. It is established in Michigan and almost all other states that "It is not an illegal evasion to accomplish a desired result, lawful in itself, by discovering a lawful way to do it." *Walinske*, 325 Mich. at 581. The sentence, which is quoted in states other than Michigan, apparently originated in *Tranter* v. *Allegheny County Auth.*, 173 A. 289, 297 (Pa. 1934).

**7. The Funding Trust Agreement will presumably be a long-term contract. Does this run afoul of any restrictions on binding future City Councils (since this is not "subject to appropriation)? Does the City have other "service contracts" of equal or greater length?**

Future legislatures may be bound in Michigan. See State building authority Case, above, response to Q #3. As general matter, "binding future legislatures (whether city or state)" is at most a maximum and not a legal principle. If it were there would not be any long-term contracts. The City has the express charter power to enter into multi-year contracts.

The service contract in *Ludington* extended for 30 years. The contract in *Bacon* was for ten years. Contract of Lease #2 with the City of Detroit Building Authority is a service contract under the analysis of *Walinske*, and it commenced in 1985 and extends to at least 2029. Contract of Lease #2 is not subject to appropriation.

**8. What are the risks of cancellation, early termination or challenges to the validity of a "service contract" under state and local law?**

The agreement between the City and the Funding Trust will not provide for cancellation or early termination.

An unqualified opinion will be given with respect to the City's obligation to make payments to the Funding Trust. The opinion will be given in accordance with the standards of The National Association of Bond Lawyers, Model Bond Opinion Project (2003), which states that the residual legal risk with an unqualified opinion "is generally considered so small as to require no special or additional disclosure in the disclosure document.

**9. What are the procedures for enforcing a contract against the City, where the City's obligation is to pay money? What are the potential remedies?**

"Municipal corporations have the same obligation as any person or body corporate to satisfy judgments rendered against them." *Zelenka* v. *Wayne County Corp. Counsel* 143 Mich. App. 567, 573 (Mich. App. 1985). *See generally*, M.C.L. § 600.6091 (procedure for collecting judgments against municipality, including by levy of taxes if not otherwise paid). It has been said that "mandamus is the appropriate remedy against recalcitrant officials who decline to pay a judgment or levy a tax from which it can be paid." 7 MICH. PLEADING AND PRACTICE § 47:17 at 251 (2002 rpl. vol.).

# UNITED STATES BANKRUPTCY COURT

Eastern _____ **District of** Michigan _____

In re City of Detroit _____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 13-53846 _____

Chapter 9 _____

_____
Plaintiff

v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Siebert Brandford Shank & Co., L.L.C., 100 Wall Street, 18th Floor, New York, NY 10005
*(Name of person to whom the subpoena is directed)*

■ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:  See attached Schedule A

| PLACE | DATE AND TIME |
|---|---|
| Pepper Hamilton LLP, c/o Robert Hertzberg, The New York Times Building, 37th Floor, 620 Eighth Avenue, New York, NY 10018 | July 8, 2014 at 10:00AM |

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 3, 2014 _____

CLERK OF COURT

OR

_____     *A. Kovsky-Apap* _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
City of Detroit _____ , who issues or requests this subpoena, are:

Deborah Kovsky-Apap, Pepper Hamilton LLP, Suite 1800, 4000 Town Center, Southfield, MI 48075; kovskyd@pepperlaw.com; (248) 359-7331

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

      I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

---

**SCHEDULE A**

DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to the requests for production:

1.      The uniform definitions and instructions set forth in Local Civil Rules 26.2 and 26.3 of the United States District Courts for the Southern and Eastern Districts of New York are incorporated by reference.

2.      "COPs" shall mean the Certificates of Participation (also known as Pension Obligation Certificates) issued in connection with the COPs Transaction, or either of them.

3.      "COPs Transaction" shall mean each and both of the issuance of COPs in 2005 and 2006 by the Detroit Retirement Systems Funding Trust 2005 and/or the Detroit Retirement Systems Funding Trust 2006.

4.      "Detroit Retirement Systems Funding Trust 2005" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2005 to provide funding for unfunded accrued actuarial liabilities of the Detroit General Retirement System and the Detroit Police and Fire Retirement System.

5.      "Detroit Retirement Systems Funding Trust 2006" shall mean the trust created and existing under Michigan law for the purpose of issuing COPs in 2006 to provide funding for the refinancing of certain 2005 COPs.

6.      "Detroit General Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit General Retirement System.

7.      "Detroit Police and Fire Retirement System Service Corporation" shall mean the non-profit Michigan corporation created by the City of Detroit in April 2005 for the ostensible

1

purpose of providing financial assistance to the City of Detroit in meeting its unfunded accrued actuarial liabilities to Detroit Police and Fire Retirement System.

8.    "Service Contracts" shall mean each and both of the May 25, 2005 and June 7, 2006 contracts entered into by the City, the Detroit General Retirement System Service Corporation, and the Detroit Police and Fire Retirement System Service Corporation in which the City promised to make a series of periodic payments to the Detroit General Retirement System Service Corporation and the Detroit Police and Fire Retirement System Service Corporation ("Service Corporations").

9.    "Trust Agreements" shall mean each and both of the June 2, 2005 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2005 through which the right to receive payments under the Service Contracts from the Service Corporations to Detroit Retirement Systems Funding Trust 2005 and the June 12, 2006 agreement between the Service Corporations and the Detroit Retirement Systems Funding Trust 2006 through which the right to receive payments under the Service Contracts was transferred from the Service Corporations to the Detroit Retirement Systems Funding Trust 2006.

10.    "Contract Administration Agreements" shall mean each and both of the June 2, 2005 and the June 12, 2006 agreements entered into by the Service Corporations, the Funding Trusts, and U.S. Bank, N.A., which govern the relationship amongst the parties to the COPs Transaction.

11.    "Interest Rate Swaps" shall mean the 1992 ISDA Master Agreements (Local Currency Single Jurisdiction) between the Service Corporations and the COP Swap Counterparties, as set forth in Exhibit I.A.61 of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, together with all ancillary and related instruments and agreements,

2

as the same may have been subsequently amended, restated, supplemented, or otherwise modified.

12.     "You" and "Your" shall mean you, and your employees, agents, officers, directors, representatives, attorneys, affiliates, associates, subsidiaries, successors or predecessor.

13.     In producing documents pursuant to these requests, you are required to furnish all documents in your possession, custody, or control, including without limitation documents possessed by your agents, attorneys, investigators, representatives, financial advisors, consultants, officers, directors, or employees.

14.     The duty to produce documents shall not be limited or affected by the fact that the same document is available through another source.

15.     Documents are to be produced in a way that identifies the request or requests to which each document applies, or as they are maintained in the usual course of business. Documents to be produced shall be the original of all documents in the regular files as maintained, together with any documents that were clipped or attached to them, and, in addition, any originals or copies containing handwriting or other notations.  A complete and legible copy may be produced in lieu of producing the document itself.

16.     Notwithstanding a claim that a document contains privileged information or is otherwise partially immune from discovery, any such document must be produced with the portion claimed to be protected excised.

17.     Should you obtain any other documents or information which would supplement or modify the documents or information supplied by you in response to this request, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such documents and information and to furnish the additional documents or information without

3

delay.

4

## DOCUMENT REQUESTS

1.      Documents concerning the COPs Transaction, including without limitation (a) documents concerning the planning, conception, creation, consideration, implementation, issuance, or formation of the COPs Transaction; (b) any and all legal issues concerning the COPs or the COPs Transaction; (c) any and all opinions, legal or otherwise, with respect to the COPs or COPs Transaction; or (d) any efforts to obtain approvals of the COPs Transaction.

2.      Documents concerning the Interest Rate Swaps, including without limitation (a) the decision to enter into the Interest Rate Swaps, (b) documents showing any connection between the Interest Rate Swaps and the COPs Transaction, (c) any analyses on the legality of the Interest Rate Swaps and/or of the COPs Transaction, or (d) any materials used to market the Interest Rate Swaps to the City.

3.      Documents concerning the Interest Rate Swaps or the COPs Transaction, including without limitation (a) documents showing all revenues received concerning the Interest Rate Swaps or the COPs Transaction, (b) documents showing receipt of or responses to documents authored by Lewis & Munday, including without limitation the document attached as Exhibit 1, (c) communications with The Bond Buyer or Kwame Kilpatrick, or members of his administration, about the COPs Transaction, (d) documents sufficient to identify all law firms, advisors, and others involved in the Interest Rate Swaps or the COPs Transaction, or (e) documents showing efforts to retain counsel for the Interest Rate Swaps or the COPs Transaction.

4.      Documents concerning the employment of Sean Werdlow, including without limitation documents showing communications and negotiations about the terms of and circumstances surrounding his employment.

5

# EXHIBIT 1

**1. Is there any question of the constitutionality of this structure? There seems to be some, given the third bullet on page 1**

There are no constitutional questions. The third bullet simply indicates that ordinances have the same legal stature as statutes.

**2. What type of entity is the Funding Trust?**

A trust. It is comparable to trusts that issue certificates of participation in lease transactions.

**3. Has this structure been used in Michigan previously? If not fully, what elements, if any, have been used?**

Yes, see New Center Development transaction (March 2004) involving approx. $134,000,000 certificates of participation (two series, one taxable, one tax-exempt) in a lease with the State of Michigan. Insured by MBIA. The official statement is available on MuniOS.com

**4. Has any court ever upheld a "service contract" for raising money?**

Yes. The first case involving a service contract with a capital expenditure component is *Bacon* v. *City of Detroit*, 282 Mich. 150 (1937), where the City entered into a contract with Wayne County for garbage services that include a debt service component for the bonds Wayne County issued to provide the incinerators for the garbage. Significantly, the City entered into the financing arrangement with the County because the City did not have capacity under its indebtedness limit to issue the bonds itself. The Michigan Supreme Court upheld the contract between the City and the County against plaintiff's arguments that the contract constituted "indebtedness" or, alternatively, that it was an illegal evasion of the indebtedness limitation. The court based its decision on *Ludington Water Supply Company* v. *City of Ludington*, 119 Mich. 480 (1899), which involved a 30 year, water supply contract that did not have a capital component.

In *Walinske* v. *Detroit –Wayne Joint Bldg Auth.*, 325 Mich. 562 (1949), the Michigan Supreme Court upheld the lease between the City of Detroit and the Building Authority against claims that it constituted "indebtedness" on the basis that it was a service contract and cited *Ludington Water Supply Company* as its authority. Note that the lease was not subject to appropriation and the court simply noted that proper provision would undoubtedly be made as was done for other services. 325 Mich. at 582. In this regard it should be also noted that the service contract in *Bacon* did not have a subject to appropriation clause and was upheld against a challenge that it violated the Detroit City charter's appropriation requirements. The charter requirement "must be given a reasonable construction, protective of the city against official extravagance but not hamstring the city in its granted or necessarily implied powers." 282 Mich. 156.

The lease in the State Building Authority Case[1] was upheld on the basis of *Walinske*. There was no subject to appropriation clause, and the court state that subsequent legislatures were "contractually bound to appropriate the necessary funds to meet the state's rental obligation." 400 Mich. at 318.

---

[1] *In re* Request for Advisory Opinion Enrolled Senate Bill 558 (Being 1976 PA 240).

**Is the City authorized to contract with another entity to raise money to meet its obligations?**

The City has the power to contract to carry out any of its powers, including the express charter power to enter into long-term contracts. § 8-304.

Section 11-101(1) of the City Charter gives the City the authority to adopt ordinances for the "establishment and maintenance of retirement plan coverage for city employees." Finding expansive implied powers under general express powers is a consistent thread in Michigan municipal jurisprudence. The authority for the City to enter into the capital improvement/service contract in *Bacon* (1937) was based on a general power regarding garbage disposal. *Ludington* (1899) cited the Massachusetts case of *Smith* v. *Dedham*, 144 Mass. 117 (1887), as support for upholding a water supply contract. *Smith* v. *Dedham* used the power to maintain a fire engine as the basis to uphold a water supply contract. The link was that the water could be used for firefighting as well as other municipal purposes.

**Why wouldn't the Funding Trust Contact be considered a loan?**

"Loan" is not an operable legal concept in this context.[2] The issue is 'indebtedness", and the transaction does not constitute "indebtedness for the reasons stated in the presentation (see page 3)

- ? A validly incurred obligation may be validly funded or refunded. See below, response to Q #5.
- ? Each scheduled payment will be a current liability payable from current revenues and hence not "indebtedness". Absence of sufficient revenue does not invalidate the liability. *City of Alpena* v. *Kelly*, 97 Mich. 550 (1893); 1 Dillon, COMMENTARIES ON THE LAW OF MUNICIPAL CORPORATIONS § 195 at 356 (5th ed., 1911); 15 McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 41.25 at 430 n. 1 (1995 rev. vol.)(citing *City of Alpena*).
- ? Contracts for future services do not constitute indebtedness. 1 Dillon § 196 at 359; Cases cited in response to Q #3.

As to the extreme judicial reluctance to enforce indebtedness limitation, see Briffault, *The Disfavored Constitution: State Fiscal Limits and State Constitutional Law* 34 RUTGERS L. J. 907 (2003). The article concludes that avoidance rather than enforcement is the national judicial norm. The Michigan cases support this view. The author of the article is a nationally recognized scholar. He is Vice-Dean of the Columbia Law School and Joseph P. Chamberlain Professor of Legislation.

---

[2] There is no agreed set of characteristics of what constitutes a "loan" when s transaction is challenged as being a loan, and courts have not reached the same conclusion on even the same facts. *Compare* In re Bevill, Bresler & Schulman Asset Management Corp., 67 B.R. 557 (D.N.J. 1986) *with* Resolution Trust Corp. v. Aetna Cas. & Surety Co., 25 F.3d 570 (7th Cir. 1994).

5. The second bullet point on page 3 indicates that this would not be considered indebtedness under the Home Rule Act. Are there any other provisions of state or city law that would be applicable to that determination?

No. The application of the Revised Municipal Finance Act (Act 34 of 2001) does not necessarily turn on a determination of "indebtedness" but by application of the particular terms of Act 34. It is not applicable. See Act 34, § 103(n)(definition of "security"); M.C.L. § 141.2103(n).

6. On page 3, why does it necessarily "follow" that "a funding entered into by the City in order to satisfy its constitutional UAAL obligation also does not constitute indebtedness?" Just because the ultimate result of a structure is to fund an obligation that is not debt doesn't means that that structure itself is OK (i.e. the ends don't justify the means"). For example, a straightforward bond issuance to fund UAAL would obviously be debt, even though the structure was implemented to pay the UAAL. Are there other examples in Michigan of structures where an "alternative" means of funding a "non-debt" obligation is also considered to be "non-debt"?

It "follows" because it is a long established principle of municipal law that an obligation validly entered into may be validly funded or refunded. The funding or refunding is an extension of the original obligation; thus, no new obligation is created. 1 Dillon § 202 (funding and refunding bonds merely change the form and terms of payment of existing indebtedness); Wilcox *v.* Bd. of Comm. of Sinking Fund of City of Detroit, 262 Mich. 699 (1933); support by analogy, Revised Municipal Finance Act § 605 (refunding debt not subject to limitations). There is no legal principle to support distinguishing between debt obligations and "non-debt" obligations in this context.

"The ends don't justify the means" is not a legal principle. It is established in Michigan and almost all other states that "It is not an illegal evasion to accomplish a desired result, lawful in itself, by discovering a lawful way to do it." *Walinske*, 325 Mich. at 581. The sentence, which is quoted in states other than Michigan, apparently originated in *Tranter* v. *Allegheny County Auth.*, 173 A. 289, 297 (Pa. 1934).

7. The Funding Trust Agreement will presumably be a long-term contract. Does this run afoul of any restrictions on binding future City Councils (since this is not "subject to appropriation")? Does the City have other "service contracts" of equal or greater length?

Future legislatures may be bound in Michigan. See State building authority Case, above, response to Q #3. As general matter, "binding future legislatures (whether city or state)" is at most a maximum and not a legal principle. If it were there would not be any long-term contracts. The City has the express charter power to enter into multi-year contracts.

The service contract in *Ludington* extended for 30 years. The contract in *Bacon* was for ten years. Contract of Lease #2 with the City of Detroit Building Authority is a service contract under the analysis of *Walinske*, and it commenced in 1985 and extends to at least 2029. Contract of Lease #2 is not subject to appropriation.

8. What are the risks of cancellation, early termination or challenges to the validity of a "service contract" under state and local law?

The agreement between the City and the Funding Trust will not provide for cancellation or early termination.

An unqualified opinion will be given with respect to the City's obligation to make payments to the Funding Trust. The opinion will be given in accordance with the standards of The National Association of Bond Lawyers, Model Bond Opinion Project (2003), which states that the residual legal risk with an unqualified opinion "is generally considered so small as to require no special or additional disclosure in the disclosure document.

**9. What are the procedures for enforcing a contract against the City, where the City's obligation is to pay money? What are the potential remedies?**

"Municipal corporations have the same obligation as any person or body corporate to satisfy judgments rendered against them." *Zelenka* v. *Wayne County Corp. Counsel* 143 Mich. App. 567, 573 (Mich. App. 1985). *See generally*, M.C.L. § 600.6091 (procedure for collecting judgments against municipality, including by levy of taxes if not otherwise paid). It has been said that "mandamus is the appropriate remedy against recalcitrant officials who decline to pay a judgment or levy a tax from which it can be paid." 7 MICH. PLEADING AND PRACTICE § 47:17 at 251 (2002 rpl. vol.).