UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
                                           :
In re                                      :      Chapter 9
                                           :
CITY OF DETROIT, MICHIGAN,                 :      Case No. 13-53846
                                           :
         Debtor.                           :      Hon. Steven W. Rhodes
                                           :
                                           :
---------------------------------------------------------x

**RESPONSE TO MOTION FOR COSTS RELATING TO
CLAWBACK OF DEBTOR'S DOCUMENT PRODUCTION**

The City of Detroit (the "City"), debtor in the above captioned case, responds to Assured Guaranty Municipal Corporation's ("Assured") Motion for Costs Relating to Clawback of Debtor's Document Production (ECF No. 5326) ("Mot. for Costs"). In its motion, Assured has asked this Court to impose over $45,000 in sanctions on the City under Federal Rule of Procedure 37 based on the City's inadvertent production of mediation documents during the Plan of Adjustment litigation.

Assured's motion should be denied. Assured has not identified, and the City did not find, *any* case sanctioning a party under Rule 37 for an inadvertent disclosure of documents where the litigant quickly rectified the error and the opposing party was not prejudiced. Applying Rule 37 here, the City's actions were

substantially justified and imposition of sanctions would be unjust because in this large scale, fast-moving production, the City diligently reviewed its production to ensure that documents protected by the Court's Mediation Order were not disclosed and immediately "clawed back" protected documents upon learning of its honest and regrettable error. Moreover, Assured fails to provide any sworn evidence that its expenses of more than $45,000 in legal fees from ten different lawyers are accurate or reasonable and, in any event, its claimed fees are plainly excessive.

## BACKGROUND

Thirty-seven parties served discovery requests on the City related to the Plan of Adjustment litigation. (Supp. Decl. of Mary Hale ("Supp. Decl.") at ¶ 1(Exh. A).) In total, the City received over 900 document requests and 240 interrogatories, comprising 492 pages of written discovery requests. (Aff. of Mary Hale ("Hale Aff.") (ECF No. 4944 at ¶ 42); Hale Decl. at ¶ 1.) The vast majority of these requests were submitted on the date discovery closed, Friday, April 11, 2014. (Hale Aff. at ¶¶ 31, 40-42.) Not surprisingly, it took the City through the weekend to simply read, understand, and organize the new discovery requests. (*Id*. at ¶ 32.)

Complicating the situation, as of that date, the deadline for producing responsive documents was the following Friday, April 25, 2014. (*See* Third Am. Scheduling Order (ECF No. 3632 at ¶ 9).) Taking into account the administrative

tasks necessary for a vendor to make a production, including the lead-time associated with formatting, packaging, and numbering the documents, the City had approximately ten days remaining to collect and review documents in response to this massive new discovery. (*See* Supp. Decl. at ¶ 9.)[1] At the same time the City was working to respond to these requests, it also was working diligently to amend the Plan and Disclosure Statement, and was involved in on-going mediations with several creditor constituencies.

The City relied on a team of nine Jones Day attorneys and twenty-two contract attorneys from the legal staffing firm Black Letter/Discovery to conduct the document collection and review process. (Hale Aff. at ¶¶ 16, 24, 35.)[2] This team was led by Mary Hale, an attorney Of Counsel at Jones Day, who has extensive experience supervising document productions in complex litigation. (Hale Aff. at ¶ 2.) The team collected documents from seventy-eight different

---

[1] While it is true that the April 25th production deadline was eventually moved to May 6th, the order effectuating this change was not entered until approximately 4pm on April 21st. (*See* Fourth Am. Scheduling Order (ECF No. 4202 at ¶ 4).) The City, therefore, had to assume an April 25th production deadline until the end of the day on the 21st, rendering the extension more or less irrelevant to the numerous documents that had already been reviewed and delivered to the City's vendor for production on the original schedule.

[2] The City retained Black Letter, a document review firm that Jones Day had used in the past, because the contract attorneys at Black Letter achieve results comparable to those of associates and conducting the document review "in house" at Jones Day would have been prohibitively expensive. (Hale Aff. at ¶¶ 12-14.)

individuals. (Hale Aff., Exh. D.) The team then reviewed over 330,000 documents consisting of approximately 2.7 million pages. (*Id.* at ¶ 52.) Jones Day attorneys spent over 1,600 hours, and Black Letter attorneys spent over 8,000 hours on the document collection, review, and production efforts. (*See* Supp. Decl. at ¶¶ 2-3.)

To ensure that documents protected by this Court's April 13, 2013 Order for Mediation (ECF No. 322) were not disclosed, the Black Letter contract attorneys were instructed on the mediations and advised that all mediation documents, including all writings incident to these mediations, were protected from disclosure. (Hale Aff. at ¶ 39.) After the contract attorneys finished an initial review of the documents, Black Letter did a "quality control" review which involved reexamining the documents that had been marked, or "coded," for production even though they included a term indicating that the document might be protected. (Supp. Decl. at ¶¶ 6-7.) Jones Day attorneys were then to be provided with these documents to review them for a third time to determine whether they had been "coded" correctly. (*Id.* at ¶ 8.) These safeguards were intended to ensure that protected documents were properly withheld. (Hale Aff. at ¶¶ 34-39.)

On May 8th, two days after the City made its initial document production, Assured notified the City that "writings incident to mediation" had been improperly produced. (*See* May 8, 2014 Email from R. Schwinger to D. Heiman

(Mot. to Compel, Exh. A (ECF No. 4560-2)).)[3] Assured demanded that the City notify parties that had received the production that "certain documents were improperly produced" and that "the media that the City distributed should be returned, [and] any electronic copies purged …." (*Id*.) The City responded ***the same day*** by issuing a clawback letter to the recipients of the production that identified by bates number forty-three specific documents that had been inadvertently disclosed and instructed counsel to "destroy all electronic and/or paper copies of these documents." (Mot. to Compel, Exh. B (ECF No. 4560-3).) This instruction is consistent with the requirements of Federal Rule of Procedure 26(b)(5)(B) which provides parties notified of an inadvertent production must "return, sequester, or destroy the specified information." It is also consistent with other parties' past practice in this case involving inadvertent disclosures. (*See* Supp. Decl. at ¶¶ 11-13.)

Assured, dissatisfied that the City had not required the recipients to return the entire document production, filed a motion to compel a full clawback of the document production the next day, Friday, May 9th. (*See* Mot. to Compel at 5(ECF No. 4560).) Assured did not meet and confer with the City before filing this motion to determine if the City would take additional steps to address

---

[3] In early April, Assured and the City had reached a tentative settlement on the treatment of unlimited tax general obligation ("UTGO") bonds that are insured by Assured.

Assured's concerns. In fact, Assured's billing records make clear that it began drafting the motion on May 8, 2014, the same day that it first contacted Jones Day regarding the disclosure and the day that Jones Day sent the clawback letter. (*See* Mot. for Costs, Exh. 1.)

This Court considered Assured's motion the following Monday, May 12, 2014 at the hearing on pending discovery motions. At this hearing, counsel to the City explained that despite the City's best efforts to withhold documents protected by the Mediation Order, it was apparent from the City's investigation throughout the weekend that mediation documents had been inadvertently produced. (May 12, 2014 Hr'g Tr. at 27-28, 32 (Exh. B).) Counsel also explained that the City "deeply regret[ted] that these mistakes were made" and that "they were not intentional." *Id*. at 27.

The Court granted Assured's motion and required the recipients of the document production to return the hard drives with the production to Jones Day and destroy all electronic or paper copies of the production. (Order Granting Mot. to Compel ("Order") at 2 (ECF No. 4710).) The Order also required that the City "fully correct the Production to eliminate all mediation-related documents" and that this replacement production maintain "the same Bates numbers as they had in the [initial] Production." (*Id*. at 3.) Lastly, the Order provided that any party

requesting expenses related to the inadvertent production "shall do so by motion." (*Id*. at 4.)

The City complied with the Court's instruction on re-production and continued to examine the production for mediation documents and other protected materials. During this re-review process, the City discovered that a substantial number of documents at issue had been inadvertently produced because of a vendor error: namely that AlphaLit, the vendor hosting the databases of documents, had misnamed an entire file including thousands of documents that it had delivered to Jones Day. (Supp. Decl. at ¶ 17.) As a result of this misnaming, a large batch of documents that should have been reviewed by Jones Day were not, and protected documents in this file were inadvertently disclosed. (*Id*.)

On May 15, the City distributed a new version of the document production as ordered. (*Id*. at ¶ 18.) Consistent with the Court's order, to ensure that the production recipients would not have to recreate their work product, the re-production maintained the Bates numbering of the initial document production and inserted blank pages with the notation "Intentionally Left Blank" in place of the pages that had been withheld because they were protected. (*Id*.)

Then, one month after this Court issued its Order, Assured filed its Motion for Costs Relating to Clawback of Debtor's Document Production. Assured argues that under Rule 37(a)(5), this Court must award it attorney's fees and expenses

because "[t]here was no substantial justification for the City's improper production of documents in violation of the Court's Mediation Order, nor any justification for the City's failure to timely cure its errors in response to Assured's demand." (Mot. for Costs at 4-5.)

## ARGUMENT

**I. THE COURT SHOULD NOT IMPOSE SANCTIONS BECAUSE THE CITY'S ACTIONS WERE SUBSTANTIALLY JUSTIFIED AND SANCTIONS WOULD BE UNJUST.**

Assured does not contend that the disclosures at issue here were intentional or that it has been materially prejudiced in this litigation. In short, Assured is asking the Court to impose over $45,000 in sanctions for an inadvertent disclosure which was immediately corrected and which did not harm its position in the litigation. There is no basis for such a request.

Rule 37, made applicable by Bankruptcy Rule 9014, allows the court to award "reasonable expenses incurred in making the motion, including attorney's fees" from opposing counsel (1) where a party has filed a successful motion to compel "disclosure or discovery," such as response to a deposition question or an interrogatory, Fed. R. Civ. P. 37(a)(1); and (2) where a party fails to comply with a court discovery order, Fed. R. Civ. P. 37(b)(1)&(2). In both circumstances, sanctions are not warranted if the party's failure was "substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P.

37(a)(5)(a)&(b)(2)(C).[4]  Rule 37 *does not* mandate that the court order sanctions if certain criteria are met.  The trial court maintains discretion to determine whether sanctions are appropriate under Rule 37 considering all the relevant circumstances. *See Grizzly Auto Transp. v. Tran Tech, Inc.*, No. 08-11832, 2009 U.S. Dist. LEXIS 52124, at *12 (E.D. Mich. June 19, 2009) ("an award of attorney fees is not 'mandatory'" under Rule 37).

A party's noncompliance with a court discovery order is "'substantially justified'" if it is "justified to a degree that could satisfy a reasonable person." *Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  To determine whether sanctions would be "just" under the circumstances, a court may examine, along with other factors, whether the litigant's failure "is due to willfulness, bad faith, or fault," "whether the adversary was prejudiced by the party's failure to cooperate in

---

[4] Assured contends that sanctions are warranted under Rule 37(a)(5). (*See* Mot. for Costs at 4.)  This provision allows for sanctions where a party has improperly withheld discovery and has no application here.  To the extent that Rule 37(b) is applicable to this dispute because it allows for sanctions based on violations of discovery orders, *see Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (assessing whether sanctions were warranted for violation of a protective order under Rule 37(b)), the standard for sanctions under both provisions is largely the same.

discovery," and "whether the party was warned that failure to cooperate could lead to the sanction." *Doe*, 407 F.3d at 766.[5]

Analyzing these factors, courts have routinely held that sanctions are not warranted where the litigant's noncompliance with a discovery order was inadvertent, quickly rectified, and opposing counsel did not suffer substantial prejudice by the noncompliance. *See, e.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846-LHK, 2014 U.S. Dist. LEXIS 11778, at *42 (N.D. Cal. Jan. 29, 2014) (concluding that sanctions could not "reasonably be imposed" based on failure to redact information subject to protective order); *ePlus Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2012 U.S. Dist. LEXIS 177616, at *27-28 (E.D. Va. Dec. 14, 2012) (declining to award sanctions because noncompliance "reflect[ed] mistakes of the sort that is inevitable when undertaking large-scale discovery" and litigant did not act in bad faith); *Grizzly Auto Transp.*, 2009 U.S. Dist. LEXIS 52124, at *14 (limiting award of costs to $750 because although plaintiff lacked "reasonable excuses" for failure to comply with the court order "there were no demonstrated adverse consequences to defendant's case").

---

[5] Assured contends that "the Court need not determine that the non-moving party acted out of willfulness or bad faith in order to find a lack of substantial justification." (Mot. for Costs at 5.) Although the term "substantial justification" is not defined as acting in bad faith, the Sixth Circuit made clear in *Doe* that whether a party acted willfully or in bad faith *is* relevant to the imposition of sanctions under Rule 37. *See Doe*, 407 F.3d at 765-66.

These considerations are particularly appropriate in the context of large scale document productions because "it would be *completely unreasonable* to expect every person on every team to perform perfectly at all times" and "if the court begins issuing sanctions every time a [protected] document is [inadvertently produced] less than fully redacted, it will quickly lose any bandwidth to deal with any other matters." *Apple, Inc.*, 2014 U.S. Dist. LEXIS 11778, at *41-42 (emphasis added); *see also MVB Mortg. Corp. v. FDIC*, N. 2:08-cv-771, 2010 U.S. Dist. LEXIS 146100, at *9 (S.D. Ohio Feb. 11, 2010) (observing that "it is inevitable that errors will be made and privileged documents will sometimes be produced inadvertently" and stating that Federal Rule of Evidence 502 was recently amended to "reflect this reality").

Moreover, awarding attorney's fees is unwarranted if the moving attorney did not diligently attempt to resolve the discovery issue out of court through the meet and confer process. *See Mkhitaryan v. U.S. Bank, N.A.*, No. 2:11-cv-01055, 2013 U.S. Dist. LEXIS 18635, at *13 (D. Nev. Feb. 12, 2013) ("failure to meet and confer must be taken into account when determining the appropriate type of Rule 37(b) sanction"); *Hays v. Adam*, 512 F. Supp. 2d 1330, 1334 (N.D. Ga. 2007) (declining to award attorney's fees because a "single letter does not constitute a sufficient effort to resolve the issue outside of court"); *cf.* Fed. R. Civ. P. 37(a)(5)(A)(i) ("the court must not order this payment if … the movant filed the

-11-
13-53846-tjt    Doc 5767    Filed 07/03/14    Entered 07/03/14 19:15:42    Page 11 of 19

motion before attempting in good faith to obtain the disclosure or discovery without court action").

Here, imposing sanctions would be unjust because the City's noncompliance with the Mediation Order and production of protected documents was indisputably inadvertent, the City took steps to rectify the error the *same* day the issue was brought to its attention, and the error did not prejudice Assured—let alone substantially prejudice it—in this litigation. (*See* Mot. to Compel, Exh. B (ECF No. 4560-3); Supp. Decl. at ¶¶ 4-8.)

Specifically, the City took reasonable steps to ensure that protected information was not produced by extensively training its document review team regarding the Mediation Order, utilizing Black Letter to conduct a "quality control" review of documents that included terms indicating that they might be protected, and having Jones Day attorneys conduct yet another review of all documents that included terms indicating that they should be withheld. (Hale Aff. at ¶ 39; Supp. Decl. at ¶¶ 5-8.) The standard is not, and cannot be, perfection. Here, a substantial number of the protected documents were inadvertently released because of a mistake: a vendor misnamed a file of documents that included potentially protected materials, which caused them to bypass the second-level review. (Supp. Decl. at ¶ 17.) While certainly regrettable, the fact of the matter is that in a modern

document production with so much volume, a simple processing mistake can impact a large number of documents.

In addition, the City's action in addressing the inadvertent disclosure—immediately notifying the production recipients and instructing that they destroy the protected documents—was fully consistent with Rule 26(b)(5)(B) which allows parties to "return, sequester, *or* destroy the [privileged] information." *See* Fed. R. Civ. P. 26(b)(5)(B) (emphasis added); Mot. to Compel, Exh. B (ECF No. 4560-3). An inadvertent disclosure of approximately 400 mediation documents[6] in a large-scale review of more than 330,000 documents, or approximately .1 percent of the documents reviewed, is not unreasonable, particularly under the severe time constraints at issue here. Given that this regrettable but honest mistake happened despite appropriate planning and safeguards including two levels of "quality control" re-review at Black Letter and at Jones Day, and in light of the City's immediate remedial actions by sending a clawback letter to the production recipients, sanctions against the City are not warranted.

Indeed, other parties in this bankruptcy proceeding have also inadvertently disclosed protected materials, including documents protected by the Mediation Order. (*See* Supp. Decl. at ¶¶ 11-12.) In each instance, the producing parties

---

[6] In the City's review prior to reproducing its documents on May 15, the City discovered that the inadvertent disclosures were not limited to mediation documents but impacted traditional privileges as well. (Supp. Decl. at ¶¶ 15-16.)

proceeded by way of simple notice, and not widescale purging and reproduction, and court intervention was not required. (*Id.*)[7]

As indicated, Assured cites no authority to support its position that sanctions are warranted here; the three cases it relies on are all inapposite. (*See* Mot. for Costs at 5.) *Beltran v. McLean*, No. 13-cv-11764, 2014 U.S. Dist. LEXIS 37283 (E.D. Mich. Mar. 21, 2014), did not involve an inadvertent production at all. Rather, it involved a litigant's "continuous failures to comply with [opposing counsel's] discovery requests" where it failed to respond to interrogatories, produce responsive documents, and appear for depositions. *Id.* at *14. *DeVaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154 (11th Cir. 1993), addressed a party's failure to provide an answer to a straightforward interrogatory request for the name and address of a third party, not an inadvertent disclosure in a large-scale document production. *Id.* at 1163. Lastly, *Stratton v. Lister (In re Lister)*, No. 08-13738, 2010 Bankr. LEXIS 6444 (Bankr. E.D. Cal. Mar. 22, 2010), awarded sanctions where the defendant failed to produce *any* materials that were responsive to plaintiff's discovery request and plaintiff submitted a detailed declaration showing

---

[7] Notably, the two other inadvertent disclosures of mediation documents made by other parties pertained to the DWSD mediation involving Movant Assured. Those disclosures were made by Assured's fellow objectors, not the City. Assured did not demand that those parties purge and reproduce their entire document productions, or resort to motion practice.

she met and conferred with defendant. *Id*. at *7. None of these cases involved sanctions for entirely inadvertent disclosures.

Moreover, Assured does not indicate, other than the costs incurred with moving to compel, how it was prejudiced by the mediation disclosures. In fact, the City is the debtor in this case and stands to be the party most prejudiced if the disclosure of mediation communications were used to challenge the UTGO settlement. Not only was there no harm to Assured, the risk of prejudice to the City, not Assured, further corroborates the notion that these disclosures were entirely inadvertent.

Lastly, sanctions would be unjust for the additional reason that Assured did not confer with Jones Day regarding the sufficiency of its clawback efforts before filing its motion to compel. Assured's failure to even attempt to resolve this issue without this Court's intervention should not be rewarded.[8]

---

[8] Nor should sanctions be imposed as an exercise of this Court's inherent authority. A court may assess attorney's fees absent statutory authority only where the attorney for "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991); *Tenn-Fla Partners v. First Union Nat'l Bank (In re Tenn-Fla Partners)*, 226 F.3d 746, 751 (6th Cir. 2000) (affirming award of fees because party acted in bad faith but noting "attorney's fees should be awarded only in rare circumstances"). Assured does not allege—and there is no evidence whatsoever—that the City acted in bad faith, vexatiously, wantonly, or for oppressive reasons in disclosing the documents protected by this Court's Mediation Order.

## II. IN ANY EVENT, ASSURED CANNOT RECOVER ITS CLAIMED EXPENSES BECAUSE ITS DEMAND IS NOT SUPPORTED BY ANY SWORN EVIDENCE WHATSOEVER AND IS PLAINLY UNREASONABLE.

A claim for "reasonable expenses" must be supported by adequate documentation including sworn evidence that the fees claimed are accurate and reasonable. *See Coleman v. Cardinal Health 200, LLC*, No. 12-cv-11154, 2013 U.S. Dist. LEXIS 108612, at *11 (E.D. Mich. Aug. 2, 2013) (declining to award fees because not supported by adequate documentation); *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402-03 (6th Cir. 1995) ("adequate documentation" includes affidavit from an attorney at the law firm and "copies of the billing invoices"); *cf.* E.D. Mich. Local Rule 54.1.2(b) (providing motion for fees under Rule 54 "shall also be supported by an affidavit of counsel"). Here, Assured has provided no sworn evidence that its claimed expenses and fees are accurate or reasonable. Instead, it submits only an Excel spreadsheet with dates, names, descriptions, and total costs. (*See* Mot. for Costs, Exh. A.) Thus, its motion for costs should be denied on this basis alone.

In fact, the attorneys' fees claimed are plainly unreasonable. To determine whether attorney's fees are reasonable, the Sixth Circuit employs the "'lodestar' method" in which "the number of hours reasonably expended" on the filings are multiplied "by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *see also Smith & Fuller P.A. v. Cooper Tire & Rubber*

-16-
13-53846-tjt    Doc 5767    Filed 07/03/14    Entered 07/03/14 19:15:42    Page 16 of 19

*Co.*, 685 F.3d 486, 490-91 (5th Cir. 2012) (applying lodestar analysis to request for fees under Rule 37). Assured asks this Court to order the City to pay for the fees of *eight* attorneys to draft its simple, seven page motion to compel clawback. (Mot. for Costs, Exh. A.)[9] These attorneys—four of whom charged more than $800 an hour—expended more than 20 hours drafting the straightforward motion. (Mot. for Costs, Exh. A.) Assured also asks this Court to order the City to pay more than $3,800 in attorney's fees for its work drafting this motion for costs (*id.*), which cites three cases, each of which is inapposite, *supra*, p. 11-12. These claimed fees are plainly unreasonable.

## CONCLUSION

For the reasons stated above, Assured's motion for costs relating to clawback of debtor's document production (ECF No. 5326) should be denied.

---

[9] Because the motion to compel does not cite to any legal authorities whatsoever—case law or otherwise—it is wholly unclear why its drafting took so many attorneys so many billable hours.

Dated: July 3, 2014

Respectfully submitted,

/s/ Deborah Kovsky-Apap
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

**ATTORNEYS FOR THE CITY OF DETROIT**

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

```
-------------------------------------------------------x
                                              :
In re                                         :    Chapter 9
                                              :
CITY OF DETROIT, MICHIGAN,                    :    Case No. 13-53846
                                              :
                    Debtor.                   :    Hon. Steven W. Rhodes
                                              :
                                              :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing *Response to Motion for Costs Relating to Clawback of Debtor's Document Production* to be filed and served on this 3rd day of July, 2014, via the Court's electronic case filing and noticing system, which will send notice of such filing to all parties registered to receive notice.

/s/ Deborah Kovsky-Apap
Deborah Kovsky-Apap (P68258)