# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------x
                                                        :

In re:                                         :         Chapter 9

CITY OF DETROIT, MICHIGAN,         :         Case No. 13-53846

                    Debtor.           :         Hon. Steven W. Rhodes

------------------------------------------------------x

## SUPPLEMENTAL DECLARATION OF MARY L. HALE IN SUPPORT OF THE CITY'S RESPONSE TO ASSURED'S MOTION FOR COSTS

I, Mary L. Hale, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. Thirty-seven parties served discovery requests on the City related to the Plan of Adjustment Litigation, comprising 492 pages of written discovery requests.

2. Jones Day attorneys worked over 1,600 hours on the Plan of Adjustment document collection, review, and production efforts.

3. Contract attorneys provided by Black Letter/Discovery, a legal staffing firm retained by the City, spent over 8,000 hours reviewing documents to identify responsive documents to the 900-plus documents requests.

4. In its initial document review, the City established several safeguards to ensure that privileged documents were not produced. In connection with coding and withholding documents protected by the Court's August 13, 2013 Mediation Order (ECF No. 322), it was more practical to treat mediation protection as one such "privilege."

5. Black Letter contract attorneys were trained that all writings incident to mediation were to be treated as "privileged" and withheld from production. It was explained that there were a number of different on-going mediations with a number of different constituencies regarding a host of different issues, and that the protection afforded by the Mediation Order was to be interpreted broadly. The contract attorneys were provided with a copy of the Mediation Order. Specific mediations, and the parties involved in them, were discussed with the contract attorneys both during their initial training and throughout the course of the review. Mediations, and what was being gleaned from the documents about them, were discussed both formally in daily meetings, and informally in conversations between Jones Day attorneys and the reviewers. My observation was that the contract attorneys quickly grasped the requirements of the Mediation Order and became familiar with the parties involved in the various mediations.

6. After training, the contract attorneys were responsible for initial review of the document production, which had been sorted into "batches"

according to whether they contained terms that indicated they might be protected from disclosure.

7. After the initial review was complete, Black Letter completed a "quality control" review of documents. This review included reexamining all documents that were coded for production despite containing a term indicating that they might be protected from disclosure. This was designed to help ensure that the contract attorney's marking, or "coding," for production was correct.

8. Finally, Jones Day attorneys did an additional "second level review" on those documents that were marked, or "coded," for production, where potentially privileged terms appeared, again to ensure that the "coding" was accurate.

9. Prior to production, the documents intended for production were formatted, packaged, and numbered by an outside vendor, AlphaLit. These administrative tasks were necessary for the vendor to make a production and took several days, which is typical and consistent with my experience in a production of this size and nature. This meant that the substantive review of any batch of documents had to be finished several days before the production deadline.

10. The City produced 30,921 responsive documents in its initial document production on May 6, 2014.

- 3 -

13-53846-tjt    Doc 5767-1    Filed 07/03/14    Entered 07/03/14 19:15:42    Page 4 of 7

11. In my experience, it is not unusual in cases which involve the review and production of a large number of electronic documents in a short period of time (or even in longer time frames) for the parties to clawback inadvertently produced privileged material. Indeed, in this proceeding, several objectors have inadvertently produced protected documents—including documents protected by this Court's Mediation Order.

12. For example, on June 23, 2014, the City was informed by counsel to the County of Macomb that the County sought to clawback a mediation privileged document from a total production of less than 3,800 documents. A previous clawback letter dated May 19, 2014, also from counsel to the County of Macomb, clawed back five documents as privileged without specifying which privilege applied. Additionally, by letter dated June 24, 2014, the City was informed by counsel to Oakland County that the County had produced a document protected by the Court's Mediation Order in a total production of fewer than 1,800 documents.

13. In each instance, the party that made the inadvertent disclosure issued a clawback letter to the recipients of the production and asked that the protected documents be destroyed. The recipients all complied willingly with the clawback requests and court intervention was not required.

14. In accordance with the Court's Order Granting the Motion to Compel Clawback (ECF 4710), the City searched the document production to identify

mediation documents that had been produced and withdraw those documents. After this review was complete, the City distributed a new version of the document production on May 15, 2014.

15. In the review to locate inadvertently produced mediation documents, the City located approximately 1,300 inadvertently produced documents that were protected by attorney-client privilege and/or the work product doctrine, which should not have been produced.

16. In the review to locate inadvertently produced mediation documents, the City located approximately 400 documents that were protected by the Court's Mediation Order, which should not have been produced.

17. In the review to locate inadvertently produced mediation documents, the City learned that a substantial number of the protected documents that had been inadvertently produced were disclosed because the vendor hosting the databases of ESI documents, AlphaLit, misnamed a large file of documents which contained terms indicating that they might be protected. As a result of this misnaming, the file was not subject to a Jones Day "second level" review to ensure that all protected documents in the file had been correctly identified and withheld from the production. There were approximately 5,000 documents in this file.

18. As directed by the Court, the hard drives the City had sent containing the production images were returned to the City. The City then reissued new hard

drives with the images of the inadvertently produced protected documents replaced with an image that said "Intentionally Left Blank."

I, the undersigned, declare under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2014        by: _Mary Hale_
                                               Mary Hale