# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE: CITY OF DETROIT,      .      Docket No. 13-53846
      MICHIGAN,              .
                         .      Detroit, Michigan
                         .      May 12, 2014
              Debtor.      .      10:00 a.m.
. . . . . . . . . . . . . .

HEARING RE. (#4532) LETTER FROM EXPERT WITNESS MARTHA E.M.
KOPACZ; (#4511) MOTION TO COMPEL WAYNE, MACOMB AND
OAKLAND COUNTY, MICHIGAN TO PRODUCE A PRIVILEGE LOG FILED
BY OFFICIAL COMMITTEE OF RETIREES, ANY REMAINING
OBJECTIONS TO WRITTEN DISCOVERY (#4202) (#4508); (#4437)
RESPONSE TO DISCOVERY -- OBJECTION TO SUBPOENA FROM THE
OFFICIAL RETIREE'S COMMITTEE FOR DEBTOR -- FILED BY
INTERESTED PARTY WAYNE COUNTY CORPORATION; (#4537)
EXPEDITED MOTION TO WITHDRAW AS ATTORNEY BY BARBARA A.
PATEK FOR THE LAW FIRM OF ERMAN, TEICHER, ZUCKER &
FREEDMAN, P.C.; (#4409) MOTION TO COMPEL THE DEBTOR TO
PROVIDE MORE SPECIFIC DESCRIPTIONS OF THE SUBJECTS
THAT EACH FACT WITNESS WILL ADDRESS FILED BY INTERESTED
PARTIES SYNCORA CAPITAL ASSURANCE, INC., SYNCORA
GUARANTEE, INC.; (#4565) MOTION TO COMPEL THE PRODUCTION
OF DOCUMENTS FILED BY INTERESTED PARTIES SYNCORA
CAPITAL ASSURANCE, INC., SYNCORA GUARANTEE, INC.; (#4557)
MOTION TO COMPEL RESPONSES TO SYNCORA'S FIRST SET OF
INTERROGATORIES TO THE CITY OF DETROIT (DOC NO.
4036) MOTION TO COMPEL RESPONSES TO INTERROGATORIES
FILED BY INTERESTED PARTIES SYNCORA CAPITAL
ASSURANCE, INC., SYNCORA GUARANTEE, INC.; (#4580) MOTION
TO COMPEL FULL CLAWBACK OF DEBTOR'S DOCUMENT PRODUCTION
AND RELATED RELIEF FILED BY CREDITOR ASSURED
GUARANTY MUNICIPAL CORP.
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                    By:  HEATHER LENNOX
                    222 East 41st Street
                    New York, NY  10017
                    (212) 326-3837

APPEARANCES (continued):

                        Jones Day
                        By:  GEOFFREY IRWIN
                             GEOFFREY STEWART
                        51 Louisiana Avenue, N.W.
                        Washington, D.C.  20001-2113
                        (202) 879-3768

                        Pepper Hamilton, LLP
                        By:  ROBERT S. HERTZBERG
                        4000 Town Center, Suite 1800
                        Southfield, MI  48075-1505
                        (248) 359-7333

For the Detroit      Erman, Teicher, Zucker &
Fire Fighters          Freedman, P.C.
Association, the     By:  BARBARA A. PATEK
Detroit Police       400 Galleria Officentre, Suite 444
Officers Associa-    Southfield, MI 48034
tion and the         (248) 827-4100
Detroit Police
Lieutenants &
Sergeants
Association:

For Erste            Ballard Spahr, LLP
Europaische          By:  VINCENT J. MARRIOTT, III
Pfandbrief-und       1735 Market Street, 51st Floor
Kommunalkreditbank   Philadelphia, PA  19103-7599
Aktiengesellschaft   (215) 864-8236
in Luxemburg, S.A.:

For National Public  Sidley Austin, LLP
Finance Guarantee    By:  GUY NEAL
Corp.:               1501 K Street, NW
                     Washington, D.C.  20005
                     (202) 736-8041

For Assured          Chadbourne & Parke, LLP
Guaranty Municipal   By:  ROBERT SCHWINGER
Corp.:               30 Rockefeller Plaza
                     New York, NY  10112
                     (212) 408-5364

For Financial        Weil, Gotshal & Manges, LLP
Guaranty Insurance   By:  ALFREDO R. PEREZ
Company:             700 Louisiana Avenue, Suite 1600
                     Houston, TX  77002
                     (713) 546-5040

APPEARANCES (continued):

```
For Ambac               Arent Fox, LLP
Assurance Corp.:        By:  MARK ANGELOV
                        1675 Broadway
                        New York, NY  10019
                        (212) 457-5491

For the Official        Dentons, LLP
Committee of            By:  CLAUDE MONTGOMERY
Retirees:               1221 Avenue of the Americas, 25th Floor
                        New York, NY  10020-1089
                        (212) 632-8390

For County of           Dechert, LLP
Macomb, Michigan:       By:  ALLAN S. BRILLIANT
                             DEBRA O'GORMAN
                        1095 Avenue of the Americas
                        New York, NY  10036
                        (212) 698-3600

For County of           Young and Associates
Oakland, Michigan:      By:  JAYE QUADROZZI
                        27725 Stansbury Blvd., Suite 125
                        Farmington Hills, MI  48334
                        (248) 353-8620

For County of           Butzel Long, PC
Wayne, Michigan:        By:  MAX J. NEWMAN
                        Stoneridge West
                        41000 Woodward Avenue
                        Bloomfield Hills, MI  48304
                        (248) 258-2907

For International       International Union, UAW
Union:                  By:  MICHAEL NICHOLSON
                        8000 East Jefferson Ave.
                        Detroit, MI  48214
                        (313) 926-5216

For UAW:                Cohen, Weiss & Simon, LLP
                        By:  BABETTE A. CECCOTTI
                        330 West 42nd Street
                        New York, NY  10036-6976
                        (212) 356-0227

For Detroit             Clark Hill, PLC
Retirement              By:  JENNIFER GREEN
Systems:                500 Woodward Ave., Suite 3500
                        Detroit, MI  48226
                        (313) 965-8300
```

APPEARANCES (continued):

```
For U.S. Bank as       Waller Lansden Dortch & Davis, LLP
Trustee for Water      By:  PAUL DAVIDSON
and Sewer Bonds:       Nashville City Center
                       511 Union Street, Suite 2700
                       Nashville, TN  37219
                       (615) 850-8942


For Ad Hoc Water       Kramer Levin Naftalis & Frankel, LLP
and Sewer              By:  CRAIG SIEGAL
Bondholders:           1177 Avenue of the Americas
                       New York, NY  10036
                       (212) 715-9432


For Berkshire          Garan Lucow Miller, PC
Hathaway Assurance     By:  THOMAS P. CHRISTY
Corporation:           1111 West Long Lake Road, Suite 300
                       Troy, MI  48098
                       (248) 641-7600


For Ad Hoc COPs        Allard and Fish
Holders:               By:  DEBORAH FISH
                       2600 Buhl Building
                       535 Griswold
                       Detroit, MI  48226
                       (313) 961-6141


For Deutsche Bank:     Katten Muchin Rosenman, LLP
                       By:  JOHN RAMIREZ
                       575 Madison Avenue
                       New York, NY  10022
                       (212) 940-6435


For Syncora            Kirkland & Ellis, LLP
Holdings, Ltd.,        By:  STEPHEN HACKNEY
Syncora Guarantee           WILLIAM ARNAULT
Inc., and Syncora      300 North LaSalle
Capital Assurance,     Chicago, IL  60654
Inc.:                  (312) 862-2157
```

```
Court Recorder:      Kristel Trionfi
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1     THE CLERK:  All rise.  Court is in session.  Please

2  be seated.  Case Number 13-53846, City of Detroit, Michigan.

3     THE COURT:  Good morning.  We have a number of

4  matters on our docket for today.  Let me tell you what the

5  order of them will be.  We will start with the motion to

6  withdraw and then move to Ms. Kopacz's letter and then the

7  motion to compel the clawback and then the motion to compel

8  the counties to provide a privilege log and then the three

9  Syncora motions to provide more specific description of

10  witnesses' subjects, to compel the production of documents

11  and to compel responses to interrogatories and then

12  everything else.  Okay.  The motion to withdraw.

13     MS. PATEK:  Good morning, your Honor.  Barbara

14  Patek, Erman, Teicher, Zucker & Freedman.  As the Court is

15  aware, throughout these proceedings Erman Teicher has

16  represented the four Detroit public safety unions, the

17  Detroit Police Command Officers Association, the Detroit

18  Police Lieutenants and Sergeants Association, the Detroit

19  Police Officers Association, and the Detroit Fire Fighters

20  Association.  As a result of the exhaustive efforts that took

21  place in mediation, two of the four public safety unions have

22  reached a resolution of their main economic issues with the

23  city and will be supporting the plan of adjustment.  The

24  Detroit Police Officers Association and the Detroit Fire

25  Fighters Association have not been able to reach agreement

1    with the city.  As a result, we find ourselves in a situation

2    where we have clients who going forward are going to be in

3    directly adverse positions, and we have obtained the consent

4    of all clients, their representatives in the courtroom of all

5    the clients, and we are seeking an order allowing us to

6    continue representing the two objecting public safety unions.

7              THE COURT:  All right.  Thank you.  Is there anyone

8    who'd like to say anything about this matter?  The Court

9    concludes that the record does establish cause for the relief

10   sought.  The motion is granted.  You may submit an order, and

11   the Court will waive further presentment.

12             MS. PATEK:  Thank you, your Honor.

13             THE COURT:  All right.  Stand by one moment, please.

14   All right.  Let's turn our attention then to Ms. Kopacz's

15   letter.

16             MS. KOPACZ:  Good morning, Judge.  I sent you a

17   letter last week asking for clarification of the

18   confidentiality provision that is part of the order

19   appointing me as well as a request to hire counsel for

20   limited purposes.  I tried to provide you some examples in

21   the letter of questions that are being raised by parties

22   which, again, I want to be real clear.  I'm not complaining.

23   I understand that people are concerned that if they give me

24   information, other people may have access to it.  Parties are

25   concerned if they provide me information that has never been

1   provided to another party, that somehow they're waiving

2   privilege.  There's also been a request to participate in

3   interviews that I conduct on some basis, so really just here

4   asking for some guidance and some help.

5           THE COURT:  Okay.  Thank you for your letter.  I

6   want to try to get this resolved as promptly as possible, and

7   I seek the input of counsel here, too.  I think we want to

8   balance the interests of all concerned in this matter with my

9   interest and I assume the city's interest in having

10  Ms. Kopacz do her work as efficiently as possible.  Frankly,

11  in my order, when I referred to confidentiality, I obviously

12  was not clear enough, but what I had in mind was little more

13  than not talking with anyone not directly associated with the

14  case about the case or about your work, so, for example,

15  media or other strangers to the case.  I had little more in

16  mind than just that.

17          In terms of the confidentiality of the information

18  you gather vis-a-vis other parties in the case, what I

19  foresaw was that all such information that you had gathered

20  during your investigation would either be a part of your

21  report or a part of the attachments to your report where you

22  reflected in your log what communications you had had with

23  various people who had provided you with information and some

24  description of what that information was, so I don't know.

25  Does that help to limit the conversation to any extent?

1     MS. KOPACZ:  No.  I'm sorry.  No.  It really goes to

2  the information that I am trying to gather.  Okay.  So, for

3  example, there are creditor constituencies whose financial

4  advisors I have met with, talked with, who have information

5  from their work, their analyses, that I believe would be very

6  helpful to my task.

7          THE COURT:  Um-hmm.

8          MS. KOPACZ:  And while those parties have not said

9  they're unwilling to provide me with their financial

10  advisors' work product, they are concerned that if they

11  provide it to me that it then becomes available to others.

12  There's also a concern some parties have raised if they give

13  me information that they have never given anyone else that

14  they would waive privilege to that.  And, again, I don't

15  know.

16          THE COURT:  What kind of privilege is that?

17          MS. KOPACZ:  I have no idea.

18          THE COURT:  You don't know.

19          MS. KOPACZ:  I would -- maybe some of the attorneys

20  are willing to speak to their concerns.

21          THE COURT:  Okay.  Anyone want to address this?

22          MR. HACKNEY:  Your Honor, good morning.  Stephen

23  Hackney on behalf of Syncora.  I guess what I would say

24  briefly is that I actually think this first question is

25  relatively simply solved by reference to the federal rules

1  because I think Ms. Kopacz is required to produce all the

2  facts and data that she considered --

3         THE COURT:  Um-hmm.

4         MR. HACKNEY:  -- so I don't think there's any choice

5  around that, and I think that given that rule, what I think

6  we want creditors to know is that if you give her something,

7  you should expect that it will be produced either because she

8  does so voluntarily or because it's often customary to

9  subpoena the expert anyway to the extent they have documents

10  not attached, so I actually view that as an --

11         THE COURT:  Yeah.

12         MS. KOPACZ:  -- unfortunate fact of the way the

13  federal rules work, but --

14         THE COURT:  I'm inclined to agree with that.  Does

15  anyone disagree with that?

16         MR. MARRIOTT:  Good morning, your Honor.  Vince

17  Marriott, Ballard Spahr, EEPK.  No, I don't, which is sort of

18  what raises the issue insofar as materials prepared by our

19  experts would be subject to a privilege either as work

20  product or in the form of materials prepared by consulting

21  experts rather than testifying experts which would otherwise

22  not be discoverable becomes discoverable the minute we give

23  it to Ms. Kopacz, and that's the --

24         THE COURT:  Right.

25         MR. MARRIOTT:  That's the nub of the issue.

1      THE COURT:  Right.  So I think the answer here,

2  Ms. Kopacz, is that anything that anyone gives you is subject

3  to eventual disclosure, and you cannot assure anyone

4  otherwise.

5      MS. KOPACZ:  Okay.

6      THE COURT:  If someone is concerned about whether

7  information that you are asking for should be given to you on

8  this ground, I suppose your response to them should be to

9  consult with whoever hired them or whoever they feel

10  comfortable consulting with to determine whether the

11  information is privileged and should be subject to

12  nondisclosure to you.

13      MS. KOPACZ:  Okay.  So that will limit what I am

14  available to review and look at.

15      THE COURT:  It will.

16      MS. KOPACZ:  Yeah.  Okay.  And I will just --

17      THE COURT:  And I ask you and I urge you to keep

18  track of information requests that you make that are denied

19  on --

20      MS. KOPACZ:  Right.  I have --

21      THE COURT:  -- the grounds that whoever wants to

22  keep it confidential has elected to do so.

23      MS. KOPACZ:  I have the situation now with the city

24  where members of my team who are working diligently with

25  Ernst & Young and Conway MacKenzie on understanding the

1   models, the projections, how they've changed over time and

2   the inputs to that.  Any information that has not been

3   provided to the parties already is being withheld from us,

4   so, you know, again, there's nothing I can do other than

5   simply say that I've asked for -- you know, perfect example

6   is I've asked for the economics behind the settlement with

7   the unions to really understand how the -- how those costs

8   are going to be incorporated over time and what the cost of

9   that is going to be.  That has not been provided to anyone.

10  It does exist, but I don't have it, so, again, I don't know

11  what else I do at this point other than, you know, use the

12  information that people are willing to give me.  Is there any

13  way I can --

14          THE COURT:  Well, hold on.

15          MS. KOPACZ:  Okay.

16          THE COURT:  Hold on that judgment for a moment.  Is

17  there someone here from the city who'd like to defend that

18  position?  And before you do so -- oh, I'll let you put your

19  name on the record.

20          MS. LENNOX:  Thank you, Judge.  Heather Lennox of

21  Jones Day on behalf of the city.

22          THE COURT:  I'm disappointed to have to remind you

23  that the city has the burden of proving the feasibility of

24  the plan and that it strikes me, at least, that any and all

25  information that goes to the issue of feasibility is

1    discoverable not only by my own witness but by everybody.

2           MS. LENNOX:  Yes, Judge.  Let me clarify.

3           THE COURT:  And one more thing.  I said to Jones Day

4    before, and I'm disappointed that I have to repeat it, the

5    fact that something is subject to a privilege doesn't mean

6    you have to claim it.

7           MS. LENNOX:  Understood, your Honor.

8           THE COURT:  It could very well be in your client's

9    best interest on an issue as to which the city bears the

10   burden of proof not to claim privilege as to something which

11   could be claimed privilege.

12          MS. LENNOX:  Or, your Honor, there is another way to

13   work around it, which we have proposed on this particular

14   item to Ms. Kopacz, where there are some information that was

15   subject to mediation privilege.  We have decided to go and

16   prepare a comprehensive comparison that Ms. Kopacz has asked

17   for instead of giving her piecemeal and incomplete data.  We

18   are preparing a comprehensive piece of data to give to her to

19   comply with the requests she has for these kinds of

20   comparisons, so we have been, I think, extraordinarily open

21   with Ms. Kopacz, and we do want her to have full access to

22   information so she can prepare a fair report.  We are

23   absolutely in accord with that.  And where we are running

24   into certain either incomplete information -- we are

25   endeavoring to work around it and prepare her another form of

1  the information that she needs, and we are, indeed, working

2  on this very item right now.

3       THE COURT:  With the understanding that eventually

4  it will be disclosed to the Court and the other parties.

5       MS. LENNOX:  Understood, your Honor.

6       THE COURT:  All right.  Ms. Kopacz, I'm not sure

7  that we can make any more progress on this at this time.  I'm

8  willing to accept Ms. Lennox's representation --

9       MS. KOPACZ:  Okay.  That's fine.

10       THE COURT:  -- that they want you to have all the

11  information that you need, and I would encourage you to be

12  patient with them as they develop that for you, not too

13  patient because the clock is ticking, and that if you do run

14  into a situation where you find that there is information

15  that you need that has not been produced or the production is

16  refused to write me another letter.

17       MS. KOPACZ:  Okay.  I will.  I will do that.

18       THE COURT:  All right.  Any other questions apart

19  from the attorney question?

20       MS. KOPACZ:  The other question had to do with

21  attorney participation in interviews.

22       THE COURT:  Um-hmm.

23       MS. KOPACZ:  I'm not opposed to that.  I just didn't

24  know, you know, what the boundaries were for that or

25  whatever, so --

1        THE COURT:  Um-hmm, um-hmm.  Let's ask counsel their

2   views on this question.

3        MS. KOPACZ:  Okay.

4        MR. HERTZBERG:  Your Honor, Robert Hertzberg, Pepper

5   Hamilton.  We want to participate in the form of just

6   watching, listening, and taking notes.  We do not want to

7   actively participate in questions or interact with the expert

8   during this process.  We think if our witnesses are present,

9   we should be able to have a representative of Jones Day or

10  Pepper there just to take notes.  That's all we want to do.

11       THE COURT:  So this is a request that applies to the

12  individuals on your witness list, not everybody else?

13       MR. HERTZBERG:  Correct.

14       THE COURT:  Okay.  And, Ms. Kopacz, you say you

15  don't oppose that?

16       MS. KOPACZ:  I don't oppose it at all because it

17  won't affect the questions I ask.  It won't affect what I'm

18  seeking to find from these --

19       THE COURT:  Okay.

20       MS. KOPACZ:  -- individuals.  I don't know if it

21  will affect the individuals obviously in how they interact

22  with me, but so be it.  And then the only other thing that I

23  did want to clarify -- and I do have agreement with the city,

24  but I wanted you to be aware of it.  In the ongoing day-to-

25  day work that's going on between my team and people at the

1 │ city, counsel for the city has said they don't need to

2 │ participate in those working sessions, so --

3 │        THE COURT: Right.

4 │        MS. KOPACZ: And I think, again, it's more just an

5 │ efficiency concern on my part as my team --

6 │        THE COURT: Right. Well, so what Mr. Hertzberg said

7 │ was they only want to be present when you talk to the people

8 │ on their witness list.

9 │        MS. KOPACZ: Talk to the witnesses on their list;

10 │ right.

11 │        THE COURT: And, Mr. Hertzberg, I hope counsel will

12 │ be available so that Ms. Kopacz's efficiency in doing those

13 │ discussions and interviews will not be impaired.

14 │        MR. HERTZBERG: Yes. We have someone scheduled to

15 │ participate in that process.

16 │        MS. KOPACZ: Yeah.

17 │        MR. HERTZBERG: It will not be an issue.

18 │        MS. KOPACZ: Yeah.

19 │        THE COURT: Okay.

20 │        MS. KOPACZ: So --

21 │        THE COURT: Anyone else want to be heard on this?

22 │        MR. HACKNEY: Your Honor, Stephen Hackney on behalf

23 │ of Syncora. Sort of an unprecedented situation here, but

24 │ what we were wondering was just to prevent there from being

25 │ sort of an asymmetry between who knows what about these

1  interviews, could there be creditor representatives, so
2  rather than having 20 people in the interview, can there be a
3  DWSD --
4       THE COURT:  For what purpose?
5       MR. HACKNEY:  For understanding what information is
6  being conveyed to Ms. Kopacz.  You can ask about it after in
7  a deposition, but remember the city will be there taking it
8  live, and it's often difficult for people to remember in
9  depositions later what was discussed in interviews that
10  happened over a period of time, so --
11       THE COURT:  Sir.  I'll get back to you, Mr.
12  Hertzberg.  Let me guess.  You join in the request.
13       MR. NEAL:  No.
14       THE COURT:  No?
15       MR. NEAL:  No.
16       THE COURT:  Object to the request.
17       MR. NEAL  I stand neutral.  Your Honor, Guy Neal,
18  Sidley Austin, for National Public Finance Guarantee.  I just
19  simply rose to echo what Mr. Hertzberg said and to give you a
20  concrete example.  Ms. Kopacz will be meeting with our
21  consulting experts tomorrow, and I plan to join in that
22  meeting --
23       THE COURT:  Um-hmm.
24       MR. NEAL:  -- along the same lines that Mr.
25  Hertzberg said, just simply be there.

1          THE COURT:  Okay.

2          MR. NEAL:  This consultant is not a testifying

3     witness.  That's the only clarification I rise to make clear.

4          THE COURT:  Okay.

5          MR. NEAL:  But I will simply be there as an observer

6     largely to protect the privilege.

7          THE COURT:  Okay.

8          MR. NEAL:  And is that okay with you, Ms. Kopacz?

9          MS. KOPACZ:  Absolutely.

10          MR. HERTZBERG:  Your Honor, we're not looking to sit

11     in when the other witnesses are interviewed.  We have no

12     desire to.  For example, if Syncora witnesses are being

13     interviewed, we have no desire to sit there.  I think it

14     would be -- it should be the same with our witnesses.  We

15     just want to observe what our witnesses are saying so when we

16     prepare them for trial we know what has gone on.

17          THE COURT:  Yeah.  It strikes me that the interests

18     of parties other than the party whose witnesses or employees

19     are being interviewed can be and are being adequately

20     protected by the normal discovery and trial process, so I'll

21     limit the participation or attendance of lawyers in

22     Ms. Kopacz's interviews to lawyers for the entity that has

23     either employed the witness who she's interviewing or are

24     employees of the party who the attorney represents.

25          MR. HERTZBERG:  Your Honor, I'd like to just clarify

1  one thing based upon the statement you made.  There are

2  witnesses that we've put on our witness list that we haven't,

3  quote, employed or are not employees of the city, but they're

4  listed witnesses.

5          THE COURT:  Yeah.  If they're on your witness list,

6  you can be there.

7          MR. HERTZBERG:  Okay.  Thank you.

8          THE COURT:  And the same with other parties' witness

9  lists.  Okay.  Any other questions before we get to the

10  attorney question?

11          MS. KOPACZ:  Yes.  There are many people that I have

12  already interviewed both in terms of the city's side and in

13  terms of the creditors' side.  Those are clearly all on my

14  contact log.

15          THE COURT:  Um-hmm.

16          MS. KOPACZ:  I don't really need to go back and redo

17  those to have somebody participate?  Okay.

18          THE COURT:  No.

19          MS. KOPACZ:  Okay.

20          THE COURT:  What's done is done.

21          MS. KOPACZ:  Thank you.

22          THE COURT:  The attorney question?

23          MS. KOPACZ:  Yes, please.

24          THE COURT:  Okay.  So tell me why you think you need

25  an attorney because I need to be convinced.

1    MS. KOPACZ:  You need to be convinced.  I don't

2  believe this will be the last of these sorts of questions

3  and, again, either concerns that the city has, concerns the

4  creditors have --

5    THE COURT:  This is your polite way of saying we

6  have a contentious case.

7    MS. KOPACZ:  Yes.  Okay.  And while I do believe

8  that at this stage everybody does believe it's probably in

9  their best interest to help me as much as they can, right, I

10  am -- I have spent, to my way of thinking, too much time

11  addressing these issues when I'm really not qualified to

12  address them.  We're here now today, and I think that's good,

13  and we're getting better clarity.  I think it would be

14  helpful to me if I had someone who could speak to lawyers

15  with the same, you know, understanding, knowledge of what the

16  rules are, how this works.  I think we could have ironed much

17  of this out without having to come before you if I had had

18  counsel, but I was just -- I was floundering.

19    The other thing that does concern me is when it

20  comes time for my deposition, I have -- I am not concerned

21  about my own testimony.  I'm not concerned about my report.

22  I have no legal conclusions to reach as part of my job.  With

23  that said, I do believe that as part of the deposition, part

24  of my testimony in court, you'll protect me when I'm here.

25  When I'm in the consolidated deposition, my sense is that,

1  you know, attorneys will try to make me their witness or try

2  to not make me their witness, and just knowing what the

3  boundaries are of what I should say and not say, I'm just --

4  I'm concerned.

5          THE COURT:  Of course, at your deposition I'm only a

6  phone call away.

7          MS. KOPACZ:  Yes, I would guess, but I can't talk to

8  you, remember?

9          THE COURT:  Well, no.  In that context --

10         MS. KOPACZ:  I can?

11         THE COURT:  -- I would permit that, absolutely.  If

12  you have a question about whether you should answer a

13  question or not answer a question or if parties object and

14  you're not comfortable answering a question until an

15  objection is resolved --

16         MS. KOPACZ:  Yeah.  You know, I have -- I'm already

17  developing my own list of questions as to -- I've collected a

18  lot of data, and we're continuing to collect a lot of data.

19  And I have asked people to give me information that they

20  think might help me.  Okay.  Whether or not it becomes

21  information that I deem helpful, whether it becomes stuff

22  that I include in my report or not, I don't really know.  And

23  to be honest with you, I don't know what I do from a

24  production perspective about all that sort of stuff once I

25  put my report together and whatever, so --

1        THE COURT:  Um-hmm.  Well, I've already imposed your

2    fees and expenses on the city, so let me ask the city if it

3    has a position on whether it would be willing to pay the

4    expenses of an attorney for Ms. Kopacz given the limited

5    purposes for which she seeks counsel.

6        MS. LENNOX:  Your Honor, again, for the purpose of

7    facilitating this process, which we believe is a very helpful

8    one to the Court and to the parties, the city would be

9    willing to do that as long as they are limited -- very

10   limited, as your Honor would direct.

11       THE COURT:  All right.  All right.  You have my

12   authorization and the city's to hire counsel with the

13   understanding that their participation will be as limited as

14   you have described and with the further understanding that I

15   am still here to answer your questions and help facilitate

16   your work.

17       MS. KOPACZ:  Thank you, and I really appreciate

18   that.  And thank you.  I appreciate it.  We're rolling.

19       THE COURT:  Okay.

20       MS. KOPACZ:  All right.

21       THE COURT:  I'll prepare an appropriate order.

22       MS. KOPACZ:  Thank you.

23       THE COURT:  Okay.  Let's turn our attention to the

24   motion to compel full clawback of debtor's document

25   production.

1    MR. SCHWINGER:  Good morning, your Honor.

2    THE COURT:  Sir.

3    MR. SCHWINGER:  Robert Schwinger from Chadbourne &

4  Parke for Assured Guaranty.  The city produced documents, I

5  guess, on Tuesday night by FedEx'ing out to various parties a

6  hard drive with its document production.  People got them on

7  Wednesday and started to load them and look at them.  By

8  Thursday morning, at least at the earliest that we're aware

9  of, the city was contacted by one of the parties to say that

10  they had discovered they were mediation-related documents

11  that were covered by the mediation privilege and order in the

12  production.  The city --

13    THE COURT:  And did you get this production as well?

14    MR. SCHWINGER:  We did.  Apparently all the parties

15  got the exact same production.  We understand that the city

16  responded with an e-mail.  One of the attorneys sent back an

17  e-mail saying, "Yes, we know there are problems with the --

18  with including some of these documents in the production.

19  We're going to do a clawback."  We then -- I personally sent

20  the city a response, and I said, "Look, don't start clawing

21  back individual documents to put a spotlight on what's in

22  there," because, you know, you can't unring a bell when

23  people see it and then people say, well, if I see one

24  mediation-related document, they'll start looking for what

25  else might be in there.  I said, "Look, you know, it's early

1    on.  We just got the disks yesterday.  Just claw back
2    everything, clean up the production, and send -- you know,
3    and send out the new disk and be done with it," and the city
4    did not do that.  Instead they sent out a clawback letter
5    listing a number of the -- of more documents that were
6    subject to mediation privilege issues for clawback.  This
7    letter, however, still did not capture everything that needed
8    to be captured.  On Friday we notified the city again that
9    there were documents that were missing, and I got a response
10   back saying, "Oh, yes, we know.  We're doing a thorough
11   review.  We have lots more documents to add," and so on, but
12   even still, so far as I know, unless something has come in in
13   the last hour or so on my Blackberry that I haven't yet seen,
14   that further letter has not yet come out, and this is
15   obviously disturbing on a number of levels.  One is that, you
16   know, just to introduce a little reality, you know, what the
17   parties got, your Honor, simply is this, this little, you
18   know, hard drive.  That's all it is.  We didn't get cartons
19   of documents.  It would have been the simplest thing in the
20   world for the city to just say, "Look, everyone, send them
21   back.  Delete what you loaded up on your computers -- and you
22   couldn't have processed much in the time you've had it -- and
23   we'll get out a clean version and be done with it."  Instead,
24   the city put a spotlight on all the documents.  The parties
25   have now had them for closing in on, what, six full days to

1  rummage through them and to find these documents if not even
2  on purpose but by accident, and these are mediation-related
3  documents that are not just related to my particular clients.
4  You know, we saw that they were documents relating to issues
5  of UTGO, COPs, swaps, pensions, retirees, OPEB.  Obviously we
6  don't have to belabor for the Court that, you know, the
7  confidentiality is the linchpin around whether the mediation
8  process works.  And the issue here, of course, is that for
9  certain parties such as the bond insurers like my clients
10 there are issues here that may go beyond this case.  This may
11 not be the last municipal bankruptcy that is heard in
12 America, and these kind of issues are of grave concern to us.
13 I don't know what the status is of all the other mediations
14 that are out there and if they affect them, but there's
15 certainly a decent potential for a lot of things to be
16 disturbingly tainted by this.  And the city, it seems to me,
17 has sort of -- I don't know if I would -- they did not take
18 the simplest and obvious way to nip this thing in the bud,
19 and instead they essentially have let it fester, and it's
20 still continuing to fester through this morning.  What we
21 would ask is that the city claw back the entire production,
22 get those things straightened out, and then reproduce it.  A
23 helpful suggestion was made that the city should, to the
24 extent that they are reproducing, keep all the Bates numbers
25 lined up so whatever work product people have done on the

 1  existing documents they don't have to lose that way, and

 2  that's fine.  You could replace them with blank pages or

 3  something.  But we need to get this thing taken care of now

 4  and immediately.  This issue may also be affected by issues

 5  which I think we'll get to later in the day about sort of

 6  more general issues with the city's production, so in terms

 7  of the impact this may have on the forward motion of the

 8  case, it may have to be considered in light of what the Court

 9  hears and decides with respect to those issues, so I just

10  wanted to mention that as part of the process.

11          The last thing I'll mention is this.  I mean

12  obviously clawback is a well-known remedy when things get

13  produced that shouldn't be produced, but there's something

14  very important that's different here.  If I'm doing my own

15  document production and I inadvertently let out an attorney-

16  client privileged document, it's my error, and if clawback is

17  a less than hundred percent perfect remedy, well, the person

18  that made the error has to bear the burden of that, but here

19  the city's error on this thing doesn't -- it may affect the

20  city, but it also affects many other parties who had no role

21  in the process of not being diligent enough to make sure this

22  material didn't get out, and so there's a mismatch, I think,

23  and that my have something to do with the city's degree of

24  attention and alacrity in dealing with this issue because the

25  people who bear the burden of what happens here are not the

1  ones who are really in a position to clean it up or to have

2  prevented it in the first place.  So we would ask that the

3  city be directed to swoop everything back up, get this

4  cleaned up once and for all, get it certified, have all the

5  parties certify in writing that they have destroyed all

6  copies they have of what was sent out up to date, and we get

7  this issue taken off the table once and for all.

8           THE COURT:  Thank you, sir.

9           MR. IRWIN:  Good morning, your Honor.  Geoff Irwin

10  from Jones Day for the city.  The city deeply regrets that

11  these mistakes were made.  I hate having to be here and have

12  this conversation with the Court.  I would, however, like to

13  make the representation that these were not intentional.

14  They happened in connection with a very large document

15  production that took place over a very compressed period of

16  time.

17           THE COURT:  How did it happen?

18           MR. IRWIN:  It happened with reviewer error.  There

19  are people --

20           THE COURT:  What does that mean?

21           MR. IRWIN:  We have document reviewers who have

22  eyeballs on every one of the documents that goes out the

23  door.  We started with a collection -- and I'm sure we'll

24  have reason to talk about this later this morning as to why

25  it was so large.  We collected almost 1.2 million documents

1    to review in response to this.

2              THE COURT:  Were these people instructed to exclude

3    mediation confidential documents?

4              MR. IRWIN:  Absolutely, and the system worked.  We

5    were able to screen and protect against production --

6              THE COURT:  It sort of worked.

7              MR. IRWIN:  -- of multiples of more documents.

8              THE COURT:  It sort of worked.

9              MR. IRWIN:  I agree.  I'm sorry.  Your Honor, I

10   apologize.  It worked when it was executed by the people

11   who --

12             THE COURT:  It worked when it worked.

13             MR. IRWIN:  -- we relied upon.  It worked when it

14   worked.  Fair enough.  We had -- there were obviously

15   documents that made it through the system, and there were

16   people who missed --

17             THE COURT:  How many?

18             MR. IRWIN:  So we now believe -- and the reason --

19   one of the reasons we haven't, you know, put the order out,

20   we wanted to see how the Court wanted to deal with it this

21   morning.  We wanted to be sure.  We wanted to be right.  So

22   we've been working this issue very hard since Thursday.  We

23   think, based on the information that's available to me, it's

24   about 120 documents.  Now, I recognize that's a --

25             THE COURT:  Do you have any objection to the relief

1  that's sought here today?

2      MR. IRWIN:  I don't want to slow down the schedule.

3  The city's concern is that the time it will take to reproduce

4  the documents, which we can do, and --

5      THE COURT:  You haven't done it already?

6      MR. IRWIN:  We have not reproduced the entire file.

7  We needed to know what the documents were.  We needed to know

8  what documents --

9      THE COURT:  But you already told me you know those.

10  It's 120.

11      MR. IRWIN:  Yes, as of late last night.  I now know

12  what the universe of documents is.

13      THE COURT:  How long does it take to produce a new

14  hard drive?

15      MR. IRWIN:  Probably takes two or three days to do

16  this I'm told.

17      THE COURT:  How many hard drives do you need to send

18  out?

19      MR. IRWIN:  There are two dozen or so parties who

20  have propounded discovery on the city.

21      THE COURT:  It takes two days to produce two dozen

22  hard drives?

23      MR. IRWIN:  To go into the system, yes.  I'm told

24  the electronic vendor that we use, to go into the system and

25  manually remove the documents that we have now identified as

1　of last night will probably take a day or two, and then we

2　need to produce the hard drives, so it will just take --

3　it'll take a couple days.

4　　　　THE COURT:　And your concern about that is what?

5　　　　MR. IRWIN:　My concern about -- I don't have a

6　concern about that, and the city is willing to do that.　My

7　concern is --

8　　　　THE COURT:　Well, let me just ask again what -- do

9　you object to the relief that's sought here today?

10　　　　MR. IRWIN:　I don't object to reproducing the

11　documents.　What I object to is the notion that everyone who

12　has the hard drives that were produced last week has to stand

13　down and destroy those and destroy any searches that they've

14　run against those materials because I predict people will

15　then say because we didn't get the new hard drives and

16　because we had to start over on Wednesday or Thursday or

17　Friday of this week, they will say the schedule now needs to

18　change in the following ways that I can't predict, and my

19　suggestion is simply that we are willing to reproduce the

20　hard drives, but it shouldn't impact parties' ability to

21　use -- to run their searches and use the disks that they have

22　right now and abide by the new clawback letter that I am

23　perfectly prepared to put out later today now that I know the

24　universe of documents, but we will do as the Court instructs.

25　　　　THE COURT:　If parties have to reproduce work

1  because of a violation of this Court's mediation order,

2  mediation confidentiality order, shouldn't the city be

3  responsible for that?

4          MR. IRWIN:  Responsible in which way, your Honor?

5          THE COURT:  Economically.

6          MR. IRWIN:  You mean to pay for the hard drives that

7  go out?

8          THE COURT:  No.  If parties have to reproduce work,

9  redo work as a direct result of the city's violation of the

10 mediation confidentiality order, shouldn't the city be

11 responsible for the cost of that?

12         MR. IRWIN:  I think that's what I'm trying to say is

13 that my proposal is and the city's position is they should

14 not have to redo work.  They should be able to rely on the

15 data and the documents that were released in connection with

16 the first --

17         THE COURT:  Well, but that does nothing to reverse

18 the violation of the confidentiality that occurred.  You're

19 leaving the confidential documents in the hands of people who

20 shouldn't have them.

21         MR. IRWIN:  Fair, your Honor.  I understand that.  I

22 would also -- there are, again, over a hundred documents that

23 we're talking about.  I have had a chance to look through a

24 number of them.  I have not looked through all of them.  And

25 I'm not going to talk about the substance of any documents or

1   things like that, but I can also say that in many of these

2   cases what has happened is -- or the contents are city

3   communications, city internal that liken them much more to

4   what we've heard about an inadvertent production of your own

5   attorney-client documents.  There will be an e-mail that'll

6   be a request for information, a standard set of information

7   requests that then gets kicked around among counsel five or

8   six times saying in a different e-mail how should we respond.

9   That could be five or six of the 120 documents as to which

10  there is absolutely no prejudice to anyone except perhaps the

11  city in terms of deciding what we should do about these

12  things.  To be clear, there are plainly documents in here as

13  to which I am quite sure the participants to this mediation

14  believed and hoped and expected under the terms of the order

15  that would remain confidential, but I don't believe that the

16  magnitude of the problem is that we have 120 exchanges of

17  information where there are terms that would put a third

18  party in a position where it feels like this is information I

19  fully expected would stay confidential.

20          THE COURT:  Anything further?

21          MR. IRWIN:  Your Honor, we would only point to the

22  fact that under Federal Rule 37 an inadvertent mistake is not

23  sanctionable, and that's what we have here.  This is not a

24  deliberate or intentional violation of the Court's order.

25          THE COURT:  Well, perhaps so, but if parties have to

1    do extra work because of your violation of a court order, why

2    should they bear the burden of that?

3              MR. IRWIN:  And, again, your Honor, that's why I'm

4    suggesting they shouldn't have to do that.

5              THE COURT:  All right.  Does anyone else want to be

6    heard regarding this matter?

7              MR. PEREZ:  One second, your Honor.  Your Honor,

8    Alfredo Perez on behalf of FGIC.  I think part of the problem

9    arises from the fact that they produced the same documents to

10   everybody whether they were responsive to your document

11   request or not.  And, for instance --

12             THE COURT:  Is this where you ask them not to do

13   that in round two?

14             MR. PEREZ:  Well, you know --

15             THE COURT:  Sir --

16             MR. PEREZ:  I'm sure that they did it -- I'm sure

17   that they did that in order to be quick, but I don't know

18   whether that's -- whether they can do that or not do that

19   because they certainly haven't identified what documents

20   relate to what request, but the --

21             THE COURT:  All right.  I'm going to ask you to hold

22   on that one until we address it more directly later.

23             MR. PEREZ:  Yeah.  What I was going to say --

24             THE COURT:  We have a very specific problem we're

25   trying to solve here, and your raising that issue doesn't

1    help us.

2         MR. PEREZ:  Your Honor, what I was going to say --

3    and I got a little sidetracked, but what I was going to say,

4    we made proposals to them in the context of mediation.  Those

5    were produced to everybody.  That's the kind of thing that

6    I'm concerned about.

7         THE COURT:  Right.  Sir.

8         MR. IRWIN:  May I --

9         THE COURT:  One second.

10        MR. IRWIN:  Okay.

11        MR. ANGELOV:  Good morning, your Honor.  Mark

12   Angelov for Ambac Assurance Corporation.  There's a practical

13   way to limit the impact of this production and the defect in

14   the production on the work product that the parties have

15   done, and that's something that's been alluded to before.

16   People will not necessarily have to redo the searches and

17   whatever marking and foldering they have done with the

18   documents that have been produced if the city is careful in

19   repeating the production in such a way that all the control

20   numbers and the Bates numbers line up, and so in that event

21   people wouldn't have to go back to square one.  Thank you.

22        MR. IRWIN:  Two brief points.  That's actually what

23   I was referring to when I said if people could preserve their

24   work product.  If the city were to reproduce, we would

25   produce it in such a way that would allow them to --

1      THE COURT:  All right.  If there's a technological

2  solution to this, great, but in the meantime I'm going to

3  order you, sir, and the others who have spoken up here today

4  and really anyone who has an interest in this to meet and

5  confer during our breaks today, perhaps over lunch, to see if

6  you can come to an agreement on how to solve this problem.

7  In the Court's view, this is a major problem that needs to be

8  solved today.

9      MR. IRWIN:  Understood, your Honor.  Thank you.

10      THE COURT:  Let's turn our attention to the motion

11  to compel Wayne, Macomb, and Oakland Counties to produce a

12  privilege log.

13      MR. MONTGOMERY:  Good morning, your Honor.  Claude

14  Montgomery, Dentons, for the Retiree Committee.  We are the

15  movants today.  Your Honor, we filed our motion.  I believe

16  Macomb filed an opposition, Oakland filed an opposition, and

17  Wayne did not, but it had a pending objection to discovery,

18  which includes the rejection of producing privileged

19  information.  I think we have a practical problem in that

20  everybody understands the rule.  Everybody understands that

21  there's an obligation to produce a privilege log except when

22  it would be extraordinarily burdensome, and then they can go

23  the category route if you follow the advisory committee's

24  role and the party that is resisting has sought a protective

25  order.  Here we've sort of conflated the matters, and we're