UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:	Chapter 9

CITY OF DETROIT, MICHIGAN	Case No. 13-53846-swr

Debtor	Hon. Steven W. Rhodes

_____/

**OBJECTING CREDITOR BRENDA GOSS ANDREWS'
OBJECTIONS TO CONFIRMATION OF THE CITY OF DETROIT'S FOURTH AMENDED
PLAN OF ADJUSTMENT**

I, Brenda Goss Andrews, a retiree from the Detroit Police Department and creditor (Class 10), hereby objects to the City of Detroit's ("The City's") Fourth Amended Plan of Adjustment (The "Plan" based on the following issues:

A. The Michigan Constitution prohibits the City of Detroit from impairing or reducing the pensions of Detroit retirees.

B. Class 10 and 12 treatment: The Plan contains no provisions that permit improved benefits to retirees should the City's financial status improve in the future. Although it may not seem feasible at this time, there is a possibility that the City will see an economic resurgence; however, since the Plan is projecting dire future revenues, it restricts the City from rescinding any of the retiree benefit cuts. In fact, the City's Plan expressly prohibits any changes of terms for the pension system for a period of 10 years:

> No Changes in Terms for Ten Years. Except as may be required to maintain the tax-qualified status of the PFRS, the City, the trustees of the PFRS and all other persons or entities shall be enjoined from and against the subsequent amendment of the terms, conditions and rules of operation of the PFRS, or any successor plan or trust, that govern the calculation of pension benefits (including the PFRS Adjusted Pension Amount, accrual of additional benefits, the DIA Proceeds Default Amount, the Prior PFRS Pension Plan, the PFRS Restoration Payment, the New PFRS Active Pension Plan Formula and the terms of the New PFRS Active Pension Plan) or against any action that governs the selection of the investment return assumption described in Section II.B.3.q.ii.B, the contribution to the PFRS or the calculation or amount of PFRS pension benefits for the period ending June 30, 2023, notwithstanding whether that subsequent amendment or act is created or undertaken by contract, agreement

Page 1 of 5

(including collective bargaining agreement), statute, rule, regulation, ordinance, charter, resolution or otherwise by operation of law.

C. Class 10 Treatment. COLA reduction: The City plans to make no payments to the underfunded Police and Fire Retirement System through June 30, 2023. If the City were to contribute some level of funding to the system through 2023, imposition of a réduction, currently proposed to be 55% for an undetermined number of years with no chance of being fully restored, to the undersigned's annual escalator (referred to a COLA) could be eliminated or reduced.

D. Class 10 Treatment. Additional Pension Benefit Reductions Potentially Exist: The City's Plan does not provide adequate assurances that pension funding will not be negatively impacted in the future. The Plan imposes a further pension reduction should there be a lack of funding by the DIA funders. Neither the City of Detroit nor the State of Michigan has offered any assurances or guarantees that they will make up any shortfall should the DIA default; in fact in the Plan it specifically states that they will not. Specifically, the Plan states:

> Modification of Benefits for PFRS Participants. During the period that ends no earlier than June 30, 2023, the pension benefits payable to each Holder of a PFRS Pension Claim shall be equal to the PFRS Adjusted Pension Amount for such Holder, provided that such PFRS Adjusted Pension Amount shall be (1) automatically reduced by the DIA Proceeds Default Amount in the event of a DIA Proceeds Payment Default..." A review of the Plan reveals that no other creditor is put in the position of having a payment default clause as part of their terms. There is no guarantee that the City of Detroit will not increase cuts to pensions should the Plan be approved.

E. Other Post Employment Benefits (OPEBs) (Class 12): On March 1, 2014, the City of Detroit imposed significant reductions for retiree health care benefits, dental and vision benefits and death benefits without: 1) prior approval from the Court, 2) allowing this creditor, and other similarly situated, the chance to cast a ballot on the issue. Although the Plan includes terms of a settlement agreement reached with the Official Committee of Retirees on these issues, there has not been any evidence that the Court has approved the imposition of the terms of the agreement nor has there been any determination made by the retirees who are only now in the process of casting ballots on the issue.

F. OPEBs for 2014 (Class 12): As of March 1, 2014 the undersigned was required to obtain health care insurance as an individual since the City discontinued offering retiree health care insurance. The result is a more than 400% monthly payment increase for health care insurance through December of 2014. The undersigned is currently without dental or vision insurance due to the high costs. This impairment appears to be significantly more than what other creditors are being asked to absorb.

My monthly pension benefit has already been "impaired and diminished" by the imposed health care cuts and the miniscule stipend check of one-hundred twenty-five dollars ($125). How was this figure ($125) derived; was the Court given an analysis as to how this figure was established? No explanation was given to the undersigned retiree (creditor) as to how this figure was calculated. Furthermore, this should not have been imposed without benefit of this creditor and others similarly situated to vote on this issue and subsequent approval from the Court. Retirees were not given sufficient time to prepare for such a sudden reduction that I believe was improperly imposed. I currently have to pay out of pocket for dental and vision services, which further "impairs and diminishes" my monthly retiree benefits.

G. OPEBs 2015 and beyond, establishment of a Voluntary Employees' Beneficiary Association (VEBA) (Class 12): Based on the information contained in the Plan under Article III, Section 3.1 it states that:

> Detroit Contributions. The Trust Fund shall accept from Detroit the Detroit Police and Fire VEBA Contribution. Apart from the Detroit Police and Fire VEBA Contribution, Detroit shall have no further obligation to contribute to the Trust or otherwise fund the Plan.

H. The Plan supposes process improvements within the Detroit Police Department, however, the treatment of retirees and active police members under this Plan will have a deleterious affect on the recruitment of future police officers. The Plan neglects to delve into the negative affects the bankruptcy has had on recruitment efforts and the retention of seasoned veteran officers. Many officers in the past year have left the department either for other law enforcement agencies or other more lucrative opportunities. In the past week, two outstanding Detroit police officers were hired by the Farmington Hills Police Department; one in which I personally know.

During my career I was the human resource commanding officer for the department, responsible for hiring and recruiting. Full pensions and health care benefits was one of our main selling points in recruiting qualified officers. They knew that if they were killed in the line of duty, their spouses, children and beneficiaries would be taken care of. What now will be the selling point? Why would qualified young people want to begin a career with the Detroit Police Department, risk their lives, to have such a dismal future outlook upon retirement? A young officer with 15 years told me the other day that he just resigned because the future with the department seemed bleak and that morale was low despite reports to the contrary; officers are leaving virtually every day for greener pastures. Kevin Orr failed to properly vet this possibility and the negative affects it will have on the community and the recruitment of future officers and the retention of veteran officers.

I. During the latter part of the 1990's then Chief of Police Isaiah McKinnon told his command staff in meetings as well as through written departmental memorandum, that command personnel interested in promotional upward mobility shall obtain a graduate degree, i.e. Masters' degree to be considered. Many command officers, including myself, entered various schools of higher learning to obtain such a degree in order to be considered for promotion; which I did and completed. Promotions were desirable for many reasons, one being the improvement in final pension compensation. Command officers went to school basically at their own expense as the City of Detroit reimbursed very little toward educational benefits. The sacrifices I made to obtain this degree, while raising a son as a single mother, should not be diminished by the so-called Grand Bargain that seeks to strip me of the gains that I earned.

J. The astronomical fees and expenses being paid to Kevin Orr, Jones Day, Conway McKenzie, the fee examiner and the many other professionals is outrageous. It is estimated that fees may reach over $100 million even though Kevin Orr only budgeted approximately $62 million. A Plan feasibility consultant was brought on who requested and received an attorney solely because the City of Detroit as she stated was "uncooperative" in allowing access to needed financial documents in order for her to complete her review. These professionals make more in one week than some retirees make in a year.

K. The City of Detroit has admitted to pension calculation errors and undervaluation of assets. There is no confidence in the valuation of the DIA art. Retirees have been left to feel that the so-called "Grand Bargain" was all about the preservation of the art and not at all about the well being of retirees.

L. The coining of the term "Grand Bargain" is insulting to retirees. What is so Grand and what is the Bargain when we see that we have risked our lives for the City of Detroit to be told that our pensions are not protected contrary to the Michigan Constitution; to find our pensions diminished by the high cost of health care and the possibility of no Cost of Living (COLA).

M. The City of Detroit has insulted retirees further by having our votes counted by a firm in El Segundo, California, thousands of miles away from watchful eyes. The Court should have mandated that the City have this company set up shop in Michigan or seek another local company to count ballots so that creditors and other interested parties could observe the process and counting of ballots. As a result, many retirees, including myself, have no confidence in the integrity of this process.

The City's Plan does not include any information as to the amount that the undersigned will receive other than it likely will be less than what I am currently receiving in 2014, which apparently will equate to a much more significant monthly increase for health care insurance.

Respectfully submitted,

*[signature]*

Brenda Goss Andrews (Class 10)
18965 Muirland
Detroit, Michigan 48221
(313) 268-8333
bgossandrews@gmail.com

DATED: July 9, 2014

## CERTIFICATE OF SERVICE

I, Brenda Goss Andrews, do hereby certify that the foregoing Objecting Creditor Brenda Goss Andrews' *"Objection to Confirmation of the Fourth Amended Plan of Adjustment"* was filed and served via delivery to the Clerk of the United States Bankruptcy Court on July 9, 2014.