UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**REPLY OF SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC. TO CITY OBJECTION TO SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC. MOTION TO ENFORCE THE SOLICITATION PROCEDURES ORDER**

Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (collectively, "Syncora") submit this reply to the City of Detroit's objection [Docket No. 5747] (the "Objection") filed in opposition to the *Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Enforce the Solicitation Procedures Order* [Docket No. 5444] (the "Motion"). In support of this reply and the Motion, Syncora respectfully states as follows:

**Preliminary Statement**

Syncora has numerous claims against the City as set forth in its Proofs of Claim. For purposes of the Motion, Syncora only seeks the ability to vote those claims in the manner prescribed in the Solicitation Procedures Order. Certain of its claims — namely, its fraud and fraudulent inducement, abuse of process, fees and expenses, and unjust enrichment and restitution claims — are, by the plain

English of the Plan,[1] Class 14 claims. These direct claims against the Debtor exist independently of each other and independently of the Service Contracts, to which Class 9 COP Claims are tied under the Plan. Syncora has received no objection to allowance of its claims, and any reference to the City's COP adversary proceeding in the Objection is a red herring. Thus, the Solicitation Procedures Order plainly says that Syncora gets to vote its claims asserted in the Motion.

Yet the City continues to deny Syncora its voting rights without valid justification. The City says in its Objection that it "simply seeks to enforce and implement this Court's Solicitation Procedures Order." Objection at ¶ 6. But quite to the contrary, the City requests that this Court ignore the plain text and meaning of the Plan and the Solicitation Procedures Order.

The City's motivation is unclear. Perhaps it overlooked Syncora's various claims in designating the classes under the Plan and estimating the claim amounts thereunder. And now it fears having to re-solicit the Plan based on a deficient disclosure statement. Alternatively, it may be that the City is trying to limit Syncora's rights to vote on or object to plan confirmation as a Class 14 claim holder. Or maybe the City is trying to inappropriately object to allowance of Syncora's claims. Whatever the reason, precluding Syncora's votes is improper.

---

[1] Capitalized terms used but otherwise not defined herein have the meaning set forth in the Motion.

And now that the Solicitation Procedures Order has been entered, the City must be held to the order's language, which *the City* sought this Court to approve and which Syncora relied on in not objecting to entry of the order. Accordingly, the Court should approve the Motion.

**Argument**

**I.     Certain of Syncora's Claims are Class 14 Claims and are To Be Voted in Class 14.**

Syncora's claims for fraud and fraudulent inducement, unjust enrichment and restitution, abuse of process, and fees and expenses are Class 14 claims. Because these claims do not fall within the definition of a COP Claim under the Plan (*i.e.*, claims "under or evidenced by the COP Service Contracts") or any other defined claim class, these claims fall squarely within the Plan's definition of Other Unsecured Claims (*i.e.*, claims not otherwise included in an unsecured claim class). Syncora is entitled to vote these claims in Class 14 under the plain English of the Court's approved solicitation procedures.[2]

---

[2] *See* Solicitation Procedures Order, Ex. 1 (Amended Tabulation Rules), at 1 ("[Rule I:] . . . [A] claim will be deemed temporarily allowed for voting purposes in an amount equal to the full stated amount claimed by the holder of such claim to be an unsecured nonpriority claim in any proof of claim filed by the applicable bar date . . . to the extent that the proof of claim specifies a fixed or liquidated amount. . . . [Rule IV:]  [I]f a claim for which a proof of claim has been timely filed is marked or identified as contingent or unliquidated on its face or if the proof of claim does not otherwise specify a fixed or liquidated amount, such contingent or unliquidated claim will be temporarily allowed for voting purposes in the amount of $1.00." (emphasis added)).

3

Specifically, contrary to the City's assertions, Syncora's Class 14 claims are not properly Class 9 claims.[3] Syncora's fraud related claims arise because of false or misleading statements and omissions in the COP offering materials. These direct claims exist whether or not the City performed under the Service Contracts. They do not arise under, and are not evidenced by, the Service Contracts.

Syncora's abuse of process claim arises from the City's unjustified and improper use of the legal process in response to Syncora asserting its rights with respect to the Casino Revenues in accordance with the swaps and Collateral Agreement. Indeed, numerous events unrelated to the COPs triggered automatic trapping of the Casino Revenues under section 5.4 of the Collateral Agreement, including the Governor's declaration of a financial emergency in Detroit, the appointment of an Emergency Manager, and a City credit rating downgrade.[4] This

---

[3] The City says Syncora's Class 14 claims are Class 9 claims because "Syncora fails to explain . . . how these claims are not 'evidenced by' the COP Service Contracts." Objection at ¶ 17. The burden here is on the City. *See, e.g., In re Make Meat Corp.*, Case No. 98-4990, 1999 WL 178788, at * 4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim." (emphasis in original)). In any case, Syncora explained in its proofs of claim and in the Motion. *See* Motion at ¶¶ 24, 27, 31–24, 36–38. The City's argument here is a red herring.

[4] *See* Amended and Restated Schedule to the 1992 ISDA Master Agreement among UBS A.G. and the Detroit Police Fire Retirement System Service Corporation, Part 1(i); 1992 ISDA Master Agreement among UBS A.G. and the Detroit Police Fire Retirement System Service Corporation § 5; Collateral Agreement among the Detroit General and Detroit Police and Fire Retirement Systems Service Corporations, U.S. Bank N.A., UBS A.G., SBS Financial

4

direct claim exists whether or not the City performs under the Service Contracts. Again, the claim does not arise under, and is not evidenced by, the Service Contracts.

Syncora's fees and expenses claim arises explicitly under the Contract Administration Agreement — not the Service Contracts. *See, e.g.*, Contract Administration Agreement at § 10.5.1 (stating that the Insurer shall be reimbursed "for any and all charges, fees, costs and expenses that the Insurer may reasonably pay or incur" in various circumstances, including "the administration, enforcement, defense or preservation of any rights or security hereunder or under any document contemplated hereby"). The City has a direct liability here to Syncora that is independent of the City's obligations under the Service Contracts.

Syncora's unjust enrichment and restitution claims cannot be Class 9 claims because they exist in the absence of the Service Contracts. *See, e.g.*, *In re Kohlenberg*, No. 10-34191, 2012 WL 3292854, at *8 (Bankr. N.D. Ohio Aug. 10, 2012) ("[W]hen the subject of the claim is governed by an express contract, the doctrine of unjust enrichment does not apply."); *In re Deemer Steel Casting Co., Inc.*, 117 B.R. 103, 108 (Bankr. D. Del. 1990) ("[R]estitution principles provide an alternative basis for [the creditor's] recovery if no contract had existed."). So, very

---

Products, Merrill Lynch Capital Services and the City of Detroit dated June 15, 2009, § 11.6.

literally, these claims cannot arise under, and are not evidenced by, the Service Contracts. Instead, the City's liability here relates to the funding and insurance of the COPs, which unjustly enriched the City.

Indeed, the Plan and the Disclosure Statement evidence the City did not plan for claims such as Syncora's Class 14 claims to be in Class 9. Among other things, the Disclosure Statement indicates the aggregate Class 9 claim amount is between "$0 to $1,473,000,000." Disclosure Statement at 35. This range explicitly and only reflects the principal amount of the COPs outstanding on the petition date. *Id.* at 103 (stating that as of the petition date, the COPs were "outstanding in the aggregate [principal] amount of approximately $1.473 billion").[5] Clearly, the City's estimate of the aggregate Class 9 claim amount includes no amounts for claims such as Syncora's class 14 claims, *e.g.*, abuse of process.

Moreover, if Class 9 was intended to include Syncora's Class 14 claims, the City is admitting to the Court that Class 9 treatment violates section 1123(a)(4) of the Bankruptcy Code requiring that a plan "provide the same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). Among other things, the "Plan COP Settlement Option" is offered only to "beneficial holders." Plan at 31. Syncora holds direct claims as an insurer. Further, the settlement

---

[5] Syncora assumes the City just erred in excluding accrued and unpaid COP interest that the City undisputedly owes.

6

option relates "to allowance of the COP Claims that are deemed assigned to" beneficial holders. *Id.* And assigned claims are "those portions of COP Claims that relate to, and are measured by, the payment schedule under the COPs[.]" *Id.* at 30. Even if the City could legally assign Syncora's direct claims, which it cannot, the Plan does not provide a settlement option for non-principal and non-interest based claims such as Syncora's Class 14 claims.

In support of its improper attempt to construe Syncora's Class 14 claims as Class 9 Claims, the City asks this Court to read "evidenced by" in the Plan's COP Claim definition to mean, extremely broadly, any claim that exists because of the "the existence of the COP Service Contracts." Objection, at ¶ 17. This read is not plain English — "evidenced by" means "provides the proof for." And, as discussed above, Syncora's Class 14 claims exist independently of each other and independently of the Service Contracts. They exist whether or not the City performs the Service Contracts and regardless of whether the Service Contracts are invalidated.[6] As such, Syncora's Class 14 claims are not properly Class 9 claims.

---

[6] The City also argues that Syncora's Class 14 claims are properly in Class 9 because "all [such claims] are *at best* expressions of a single asserted liability in Class 9 under the Plan" and "are duplicative of the underlying claims for principal or, at best, are asserted in the alternative to such claims in the event that the COPs are invalidated." Objection at ¶¶ 5–6, 24 (emphasis in original). As set forth herein, Syncora's Class 14 claims clearly are each based on an independent liability unrelated to the Service Contracts. In any case, the Solicitation Procedures Order does not prohibit voting claims based on the same liability. Related, the City states that Syncora should not be entitled to vote its

7

The City then turns its attention to the Plan's definition of Class 14 *Other Unsecured Claims*. It asserts that Syncora's fraud, unjust enrichment, and breach of contract related claims (but not its abuse of process and fees and expenses claims)[7] are subordinated claims under section 510(b) of the Bankruptcy Code. Accordingly, the City says those claims are properly Class 16 Subordinated Claims under the Plan.[8] Objection at ¶ 13. A claim may be subordinated under section 510(b) if the claim arises from the purchase or sale of a security of the debtor or an affiliate of the debtor. 11 U.S.C. § 510(b). Among other things, however, the COPs were not issued by either the City or an affiliate of the City.[9] Disclosure Statement at 103. Therefore, Syncora's fraud, unjust enrichment, and breach of contract related claims are not subject to section 510(b). Again, the City has no basis for denying Syncora its rights to vote its claims in Class 14.

---

Class 14 claims since "such claims patently are contingent because the City cannot be responsible for multiple satisfactions of the same liability." Objection at ¶ 24. Again, Syncora's claims do not arise from the "same liability" and, in any case, the City's assertion and corresponding case cites address claim satisfaction, not allowance of claims for voting purposes.

[7] Objection at ¶ 15.

[8] The Plan, in relevant part, defines "*Other Unsecured Claims*" as "any Claim that is not an Administrative Claim, a Convenience Claim, a COP Claim, a Downtown Development Authority Claim, a General Obligation Bond Claim, a GRS Pension Claim, an OPEB Claim, a PFRS Pension Claim, a Secured Claim or a Subordinated Claim." Plan at 16.

[9] The issuing trusts do not satisfy the definition of "affiliate" under section 101(2) of the Bankruptcy Code.

8

Finally, as a catch-all argument to bucket Syncora's Class 14 claims in Class 9 for voting purposes, the City says it will "amend the Plan to further clarify that the definition of COP Claims includes the Claim Theories." Objection at 12. The City may not amend its Plan after solicitation to take away a creditor's vote. In modifying the Plan to "amend" (read expand) the COP Claim definition, the City would solidify the Plan's violation of section 1123(a)(4), as discussed above. And making the COP Claim definition more expansive would change the composition of Plan classes and require the City to re-solicit voting creditors because of the potential effect on their voting decisions and to protect due process rights.[10]

## II. The City May Not Misapply Text in the Solicitation Procedures Order to Achieve its Ends.

The Solicitation Procedures Order says in *plain English* that Syncora may vote its claims set forth in the Motion. In its Objection, however, the City improperly contorts the Solicitation Procedures Order text to deny Syncora its voting rights.

---

[10] *See, e.g.*, 11 U.S.C. § 1127(c) ("The proponent of a modification shall comply with section 1125 of this title [which governs postpetition disclosure and solicitation] with respect to the plan as modified."); *In re Baker*, No. 05-3487, 2005 WL 2105802, at *8 (E.D.N.Y. Aug. 31, 2005) ("Section 1127(c) requires that all modifications satisfy the adequacy-of-disclosure concerns of § 1125[.]")

9

To start, the City says "Syncora, in its capacity as an Insurer of securities giving rise to COP Claims, is eligible to receive a ballot to vote *solely* principal of, and interest on, the COPs it insures."  Objection at ¶ 7 (emphasis in original).  This statement is not true.

To be sure, what the relevant text of the Solicitation Procedures Order actually says is:

> [F]or the avoidance of doubt, each Insurer of securities giving rise to claims in Classes 1A, 1B, 1C, 1D, 1E, 7, 8 or 9 (or any subclass thereof) will be allowed to vote the full amount of the principal of, interest on, and any other amount payable pursuant to the securities it insures in these classes. Notwithstanding the first sentence hereof, for the avoidance of doubt, each Beneficial Holder of securities giving rise to claims in Classes 1A, 1B, 1C, 1D, 1E, 1F, 7, 8 or 9 will be allowed to vote the full amount of the principal of, and interest on, and any other amount payable pursuant to the securities it beneficially holds.

Solicitation Procedures Order, Ex. 1 (Amended Tabulation Rules), at Rule III.  The text contains *no* limiting language — no "only," "solely," "except," reference to Class 14, or otherwise — that in any way limits Syncora from voting Class 14 claims.

The additional text to which the City refers here relates specifically to Insurers temporarily voting claims for COP principal to address a dispute, if any, regarding who between Insurers and Beneficial Holders may vote COP principal

10

claims.[11] The City admits this in the Objection. Objection at ¶ 9 (citing Solicitation Procedures Motion at ¶ 16).[12] The text is irrelevant regarding Syncora's *direct* claims, including Class 14 claims.[13]

The City further says in the Objection that under the Solicitation Procedures Order, "Syncora is not entitled to vote any claims arising from the Claim Theories because any such claims are subject to a pending objection." Objection at ¶ 19. The City relies on Amended Tabulation Rule VII to support this assertion, which provides: "Subject to Rule III, if the City has filed and served an objection to a

---

[11] *See* Solicitation Procedures Order at ¶ 9(a) ("If a party (including, but not limited to, an Insurer) is not identified in the Plan or in the Motion as having the right to vote on the Plan, and if that party believes it has a right to vote on the Plan, then, by May 13, 2014, the party (the 'Claiming Party') shall file and serve on the ECF noticing list a 'Notice of Asserted Right to Vote a Claim' …." Notably, through its various class claim definitions and designation section under the Plan, the Plan identifies Syncora as having rights to vote in Class 14.

[12] *See* Solicitation Procedures Motion at ¶ 16 ("[T]he City has proposed that the Beneficial Holders of bonds possess the right to vote the claim represented by the applicable bond. It is possible that an insurer of a particular bond may wish to assert the right to vote some or all of the applicable claim. If such a dispute, or any other dispute that relates to the ability of a party to vote a claim should arise, the City proposes [dispute resolution procedures]").

[13] The City states that "[o]ther insurers of securities, including other COPs insurers, filed notices by the deadline established in the Scheduling Order asserting rights to vote claims based on [various] theories . . . ." Objection at ¶ 10. But this statement is a red herring. Unlike the claims for which other insurers filed notices (*subrogated* claims for principal and interest arising from the COPs and for which a dispute arose over who had the right to vote such claims), Syncora's Class 14 claims are *direct* claims for which no other party can assert a right to vote.

11

claim by May 15, 2014, such claim will be temporarily allowed or disallowed for voting purposes in accordance with the relief sought in the objection." Solicitation Procedures Order, Ex. 1 (Amended Tabulation Rules), at Rule VII. The purported "objection" to which the City refers is the complaint it filed in the COP invalidation adversary proceeding (the "Complaint"), in which the City says in the Objection it "sought the disallowance of all claims relating to the COPs." Objection at ¶ 20. But that is not what the Complaint says.

The Complaint seeks disallowance of claims "based on the City's obligations to make the City Payments [(*i.e.*, principal and interest payments)] under the Service Contracts on account of the COPs."[14] *Id.* (quoting Complaint at ¶ 49). As discussed earlier, Syncora's Class 14 claims are not claims based on the City's "obligations to make the City Payments under the Service Contracts," and certainly Syncora's Class 14 claims are not the subject of the adversary proceeding. Indeed, none of Syncora's Class 14 claims would be negatively

---

[14] In the Complaint, the City defines "City Payments" to include *only* principal and interest due on the COPs. *See* Complaint at ¶ 15 ("In the Service Contracts, the City promised to make a series of periodic payments (the 'City Payments') to the Service Corporations in an amount sufficient to pay the *interest and principal due on the COPs*." (emphasis added)). Therefore, the City only sought to disallow claims regarding COP principal and interest. *See* Complaint at ¶ 43 ("Plaintiff seeks a declaratory judgment that the Service Contracts are illegal, void, and of no effect whatsoever, and that the City has no enforceable obligation to continue making the City Payments to the Service Corporations or to the Funding Trusts.").

12

affected if the Service Contracts were invalidated. And the Complaint is ineffective even as an objection to Syncora's Class 9 claims because the Complaint was never "served" on Syncora and, thus, does not satisfy Rule VII of the Amended Tabulation Rules.[15]

Additionally, the City says in its Objection that Syncora cannot use the Motion to seek relief under Bankruptcy Rule 3018 because the Motion was filed after the deadline set forth in the Solicitation Procedures Order to file a motion seeking such relief. *See* Objection at ¶¶ 27, 29. But the Solicitation Procedures Order plainly states that the deadline is "*the later of* (a) May 1, 2014 or (b) 10 days after the date of service of a notice of objection, if any, to the applicable claim." Solicitation Procedures Order at ¶ 13 (emphasis added). There is no "unless" or other conditional language in the quoted text. The phrase "the later of" unambiguously means which ever date occurs last in time.[16] The City is asking the Court to delete "the later of."

---

[15] *See also* Fed. R. Bankr. P. 3007(a) ("A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant . . . at least 30 days prior to the hearing."); E.D. Mich. LBR 3007-1(b) ("The deadline for a creditor whose proof of claim is subject to an objection to file a response to the objection is 7 days before the date set for the hearing on the objection.").

[16] *See Merriam-Webster's Collegiate Dictionary* (11th ed. 2012), at 703 (stating that "later" means "of, relating to, or being the second of two groups or things or the last of several grounds or things referred to").

13

Further, the City's interpretation of this deadline cannot be right here. The City commenced solicitation on May 12, 2014, at which time Syncora received only limited Class 9 ballots. Syncora could not have known by May 1, 2014, that it would not be receiving Class 14 ballots or a Class 9 ballot that did not permit it to vote, for example, its past paid interest claim. The City cannot be allowed to use its incorrect interpretation of this deadline as a sword to prevent creditors from exercising their right to seek relief under Bankruptcy Rule 3018.

Finally, the City asserts that if Syncora could vote its abuse of process and breach of contract claims, it could only vote these claims in the amount of $1.00 because "the plain language of the Solicitation Procedures Order . . . clearly provides that . . . claims filed as contingent or unliquidated vote in the amount of $1.00." Objection at ¶ 29. Regardless, the Solicitation Procedures Order says:

> [i]f *any claimant seeks different treatment of a claim for voting purposes*, other than in accordance with the Amended Tabulation Rules, such claimant shall be required to file a motion pursuant to Bankruptcy Rule 3018(a) for an order temporarily allowing such claim in a different amount or classification for purposes of voting to accept or reject the Plan . . .

Solicitation Procedures Order at ¶ 13 (emphasis added).

Syncora sought Bankruptcy Rule 3018 relief in the Motion regarding the voting amounts of the abuse of process and the breach of contract claims because circumstances changed which allowed the amounts of these claims to be fixed for

14

voting purposes. *See* Motion at ¶ 35, 43. And for reasons discussed above, Syncora's request for relief under Bankruptcy Rule 3018 was timely. As such, the City's argument must fail.

WHEREFORE, Syncora respectfully requests that the Court grant the relief requested in the Motion [Docket No. 5444], filed by Syncora on June 18, 2014, and such other and further relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: July 9, 2014 | /s/ *Ryan Blaine Bennett* |
| | James H.M. Sprayregen, P.C. |
| | Ryan Blaine Bennett |
| | Stephen C. Hackney |
| | KIRKLAND & ELLIS LLP |
| | 300 North LaSalle |
| | Chicago, Illinois 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | - and - |
| | Stephen M. Gross |
| | David A. Agay |
| | Joshua Gadharf |
| | MCDONALD HOPKINS PLC |
| | 39533 Woodward Avenue |
| | Bloomfield Hills, Michigan 48304 |
| | Telephone: (248) 646-5070 |
| | Facsimile: (248) 646-5075 |
| | *Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.* |