# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

Mary Diane Bukowski,
              Creditor/objector

Chapter 9
Case #13-53846
Judge Steven W. Rhodes

              v.

In re: City of Detroit, Michigan and
Emergency Manager Kevyn Orr
              Debtor/City of Detroit

## OBJECTIONS TO THE 4TH AMENDED PLAN OF ADJUSTMENT

I hereby make the following statements, cited by sections of the Bankruptcy Code, as well as other applicable sections of Chapter 11.

### 11 U.S. CODE § 109 – WHO MAY BE A DEBTOR

An entity may be a debtor under chapter 9 of this title if and only if such entity—
(1) is a municipality:
(3) is insolvent;
(4) desires to effect a plan to adjust such debts.
(C) is unable to negotiate with creditors because such negotiation is impracticable.

## OBJECTIONS:

- Kevyn Orr is not a municipality, but an appointed agent of the state of Michigan.
- Detroit is not insolvent according to the Nov 2013 report from Wallace Turbeville of DEMOS. None of the major witnesses at the eligibility hearings, accountant Charles Moore of Conway McKenzie, Gustav Mulhatrob of Ernst & Young, William Buckfire of Buckfire/Stifel, or Kevyn Orr, originally of the law firm Jones Day, were qualified as expert witnesses, so were not qualified to testify on insolvency.
- None of the "experts" actually certified the figures of $18 billion in debt used by Kevyn Orr, or the alleged underfunding of the pension systems attributed to reports from Milliman, Inc., which were never completed, as admitted to by Kevyn Orr and Charles Moore during the eligibility trial.
- Neither the people of Detroit, nor any elected official representing them, have indicated their desire to file bankruptcy.

- A council representing all the city's unions negotiated a plan to save Detroit hundreds of millions of dollars with Mayor Dave Bing in 2012, but Gov. Snyder prevented the City Council from voting to approve the plan.

## *11 U.S. Code § 903 – RESERVATION OF STATE POWER TO CONTROL MUNICIPALITIES*

*This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—*
*State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and*
*(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.*

**OBJECTIONS:**

- Judge Rhodes evidently used this statute to recognize the Emergency Manager Law, PA 436, but it is still subject to ongoing litigation in a higher court, the U.S. District Court.
- Additionally, hundreds of thousands of residents of the majority-Black Michigan cities under the control of Emergency Managers, as well as 53 percent of the state electorate which voted to overturn Public Act 4, the virtually identical predecessor to Public Act 436,, have expressed their opposition to the entirety of these EM laws.
- THEREFORE NO DETROIT RESIDENT, WORKER OR RETIREE should be bound by ANY PROVISION OF PA 436, or by any act of Kevyn Orr, appointed under PA 436.

## *11 U.S. CODE § 904 – LIMITATION ON JURISDICTION AND POWERS OF COURT*

*Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—*
*(1) any of the political or governmental powers of the debtor;*
*(2) any of the property or revenues of the debtor; or*
*(3) the debtor's use or enjoyment of any income-producing property.*

**OBJECTIONS:**

- Judge Rhodes evidently has interpreted this key section of Chapter 9 to mean the debtor has consented to such alterations, recognizing Kevyn Orr as the debtor.

Litigation on that matter is pending in higher courts including U.S District Court and the Sixth Circuit Court of Appeals. As Rev. Bill Wylie-Kellerman shouted out at one hearing, "JONES DAY [Kevyn Orr's allegedly previous employer] IS NOT THE CITY OF DETROIT!" No legal representative of the city has consented to the massive dismemberment of Detroit taking place under Chapter 9.

## 11 U.S. CODE § 921 – PETITION AND PROCEEDINGS RELATING TO PETITION

*(c)After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title.*

## OBJECTIONS:

- Kevyn Orr did NOT file the petition in good faith, and Judge Rhodes is not hearing the case in good faith.
- The Detroit bankruptcy was planned by various banks, the law firms of Jones Day, Ernst & Young, Miller Buckfire/Stifel and others hired by Michigan Gov. Rick Snyder as early as 2011, long before the filing, as proven by a lengthy, well publicized list of emails among the parties. It was deliberately filed five minutes before Michigan 30th Circuit Court Judge Rosemarie Aquilina issued an order barring Gov. Snyder from approving the bankruptcy filing.
- Judge Steven Rhodes chaired a forum on Chapter 9 and Emergency Managers on Oct. 10, 2012, in which five out of six speakers were supporters of both, including EM trainers and a co-author of Public Act 4, as well as Charles Moore of Conway McKenzie, a chief NON-EXPERT witness during the eligibility trial. Others were Frederick Headen of the state treasury who has recommended state takeovers of dozens of cities, and EM trainers Douglas Bernstein and Judy O'Neill (also a co-author of Public Act 4). There was no participation from opposing sides including unions, retirement systems, city workers, or city residents. Judge Rhodes refused to publish this objector's statement on this matter (attached as Exhibit 1), but did acknowledge it by filing a 6-page brief on the matter. The objection was published in the Detroit News (attached as Exhibit 2).
- JUDGE RHODES SHOULD RECUSE HIMSELF DUE TO THIS BLATANT AND HERETOFORE UNDISCLOSED CONFLICT OF INTEREST.

## 11 U.S. CODE § 922 – AUTOMATIC STAY OF ENFORCEMENT OF CLAIMS AGAINST THE DEBTOR

*(a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of–(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant*

*of the debtor that seeks to enforce a claim against the debtor; and **(2)** the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.*

**OBJECTIONS:**

- Judge Rhodes stayed all claims not only against the "debtor," but against state officials including Gov. Snyder, the State Treasurer, and other state officials NOT COVERED UNDER THIS PROVISION, the actual perpetrators of the bad-faith bankruptcy filing.

*11 U.S. CODE § 930 – DISMISSAL*

***(a)**After notice and a hearing, the court may dismiss a case under this chapter for cause, including—*
***(b)**The court shall dismiss a case under this chapter if confirmation of a plan under this chapter is refused.*

**OBJECTIONS:**

- Refusal means a vote by "impaired" parties whose total monetary claims constitute more than two-thirds of impaired claims. As noted at the beginning of this article, city retiree claims total $7.4 Billion. Claims by "impaired" bondholders and banks total approximately $2.2 Billion, giving retirees the upper hand if they VOTE NO. However, Judge Rhodes has assigned the balloting process to KCC, a firm used by Jones Day, counsel for the city, which plans to count the ballots in California, with no oversight by those affected. Thousands of ballots have been corrected after incorrect copies were sent out; the Detroit General Retirement System, after recommending a YES vote, told its members they can RE-VOTE by getting another ballot. The balloting process was absolutely biased, with recommendations for YES votes not only from Kevyn Orr, but the DGRS, the DRCEA and the DPFFA included with the balloting packages. No recommendations for NO votes were sent.
- No ballots were issued to tens of thousands of Detroit citizens who are taxpayers, homeowners, and who pay water bills, and are therefore creditors of the city.
- The City proposes to pay banks and bondholders as a first priority out of the general fund. Nothing is allocated for retirees out of the general fund until at least 2023. The "Grand Bargain" from the DIA and State amounts to a piddling $716 million, is not set to be finalized until Dec. 31, 2014, and states directly that it is NOT BINDING ON THE PARTIES. In exchange the Detroit City Council just voted to give away its entire art collection, worth billions, to a private trust.

*11 U.S. CODE § 943 – CONFIRMATION*

*The court shall confirm the plan if—the plan complies with the provisions of this chapter; all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable;*

*the debtor is not prohibited by law from taking any action necessary to carry out the plan;*
*(7) the plan is in the best interests of creditors and is feasible.*

**OBJECTIONS:**

- Numerous provisions violated as indicated.
- The payment of at least $11.9 BILLION to the banks from the city's general fund, and $0 to retirees from that fund, IS NOT REASONABLE.
- PA 436, under which Kevyn Orr operates, is still subject to ongoing litigation. The U.S. Constitution prohibits government by unelected dictators.
- The plan is in the best interests of the banks and corporations, not the interests of city residents, workers and retirees who are creditors.

## *11 U.S. CODE § 1129 – CONFIRMATION OF PLAN*

*(a)The court shall confirm a plan only if all of the following requirements are met:*
*(3)The plan has been proposed in good faith and not by any means forbidden by law.*
*(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.*
*(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.*
*(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.*
*(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.*
*(b) (1) . . . the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph **if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.***

**OBJECTION:**

- Not proposed in good faith as indicated above; PA 436 forbidden by U.S. Constitution.
- Snyder, Orr, law firms not disclosed as insider perpetrators of bad-faith bankruptcy filing. Insider role in acceptance of swaps agreement by UBS AG, BOA; acceptance of 74 percent payment to Unlimited General Obligation bondholders during

negotiations with undisclosed parties; state itself has two votes, not disclosed in list of claims.

- Undisclosed parties participating in negotiations on Detroit Water and Sewerage debt, in New York City, with workers and residents not able to observe.
- It is doubtful whether the City of Detroit will survive as an independent municipality after implementation of plan.
- "Retiree benefits" refers to health care obligations; they have been cut drastically prior to the confirmation of the plan. Under the new plan, there is absolutely no guarantee they will ever be paid. See 11 U.S. Code § 1114 – Payment of insurance benefits to retired employees. (below this Section.)
- Plan clearly discriminates against city workers and retirees, the majority of whom are Black, as well as city residents, through such measures as the proposed takeover of the Detroit Water and Sewerage Department, which will lead to higher rates. It has already led to tens of thousands of water shut-offs, threatening the life and well-being of city residents and their families.

### 11 U.S. CODE § 1114 – PAYMENT OF INSURANCE BENEFITS TO RETIRED EMPLOYEES

*(a) the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.*
*(d)The court, upon a motion by any party in interest, and after notice and a hearing, shall order the appointment of a committee of retired employees if the debtor seeks to modify or not pay the retiree benefits or if the court otherwise determines that it is appropriate . . .*
*(e)(1)Notwithstanding any other provision of this title, **the debtor in possession . . .shall timely pay and shall not modify any retiree benefits, except that—**the court, on motion of the trustee or authorized representative, and **after notice and and a hearing, may order modification of such payments** . . .the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments, after which such benefits as modified shall continue to be paid by the trustee.*
*(f) (1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—*
*(A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that **all creditors, the debtor and all of the affected parties are treated fairly and equitably;** and*
*(k) (1)Upon the filing of an application for modifying retiree benefits, the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. All interested parties may appear and be heard at such hearing.*

*Adequate notice shall be provided to such parties at least ten days before the date of such hearing. The court may extend the time for the commencement of such hearing for a period not exceeding seven days where the circumstances of the case, and the interests of justice require such extension, or for additional periods of time to which the trustee and the authorized representative agree.*

**OBJECTIONS:**

- THE CITY HAS REPEATEDLY CUT RETIREE HEALTH BENEFITS DURING THE TERM OF THIS BANKRUPTCY, PRIOR TO CONFIRMATION OF THE PLAN. WHEN DID THEY HOLD A HEARING ABOUT THIS?
- How are retirees being treated fairly and equitably when their insurance costs have skyrocketed, some to $500 and more a month?
- WHERE IS OUR HEARING ON THE NEW PLAN?
- Under the 4th Plan of Adjustment, retiree benefits will come from two VEBA's (Voluntary Employee Benefit Associations) which are nothing but bank trusts which DO NOT GUARANTEE payment of ANY health benefits (stated clearly in the POA). The Court-appointed Official Committee of Retirees (OCR), the Detroit Retired City Employees Association (DRCEA), and the Detroit Police and Firefighters Association will sit on the VEBA boards. This opportunity to make money off the VEBA's clearly motivated the OCR, DRCEA and DPFFA endorsements of the Plan.

*I hereby certify that the statements therein are true and correct to the best of my knowledge and belief, under penalty of perjury and contempt of court under the laws of the United States of America.*

**SIGNED**                                                                      **DATE**

_____                         _____

**Mary Diane Bukowski**
**Creditor (city retiree)**
**Objector**
**9000 E. Jefferson #28-2**
**Detroit, Michigan 48214**

**PROOF of Service:**
**I hereby certify that I served a copy of my objection to the 4th Amended Plan of Adjustment on Bankruptcy Judge Steven Rhodes through the Bankruptcy Court office at 211 W. Fort and to the City of Detroit Corporation Counsel at the First National Building, 600 Woodward Ave, Detroit, MI 48226.**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## OBJECTION AND REQUEST FOR RECUSAL, with expedited hearing
### (addendum to Docket 440)

*Eligibility objector Mary Diane Bukowski's objection to continued service by Hon. Steven W. Rhodes in this case without disclosure of his function as chair of the October 10, 2012 Federal Bar Association of Eastern Michigan Bankruptcy Committee Forum, "Between a Rock and a Hard Place—Municipal Entities in Distress;" disclosure of his connections with the parties who participated in that forum, including Charles Moore of Conway McKenzie, a witness in the instant case; and disclosure of the Judge's comments on the topics discussed in this forum, which include issues regarding the City of Detroit, emergency managers, and bankruptcy.*

On Oct. 10, 2012, Judge Steven W. Rhodes chaired a Federal Bar Association (FBA) of Eastern Michigan Bankruptcy Committee forum, called **"Between a Rock and a Hard Place—Municipal Entities in Distress."** In its notice of the forum, the FBA said it was "a panel discussion on emergency managers and Chapter 9 bankruptcy." Participants were, *Frederick Headen, Edward Plawecki, Judge Steven Rhodes, Douglas Bernstein, Judy O'Neill, and Charles Moore*

Objector Bukowski has been told by the FBA and the U.S. Trustees' Office that there are no video or audiotapes of this forum. However, attached as Exhibits 1, 2 and 3 are the FBA notice of the forum, and articles from the Flint-Genesee Legal News and the Oakland Legal News which quote comments from participants in the forum. The comments appear to favorable toward replacing public officials of municipalities with business officials, Michigan's emergency manager laws, and other opinions consistent with presentations by Jones Day attorneys on behalf of the City of Detroit in the instant case.

Conway McKenzie has a one-year $19.3 million consultant contract on the Detroit bankruptcy case, and has already been paid nearly $3 million. The firm's Charles Moore, an accountant and participant in the forum, testified on behalf of the City of Detroit at the bankruptcy hearing Oct. 24, 2013.

During the Oct. 10, 2012 forum, the Flint-Genesee Legal News quoted Moore, as follows:

"Why aren't municipalities addressing these issues?" referring to what had been termed excess numbers of municipal workers in Detroit.

"If this is what is causing financial distress, why aren't leaders taking more action, as companies would, to address them? . . . .Many times those elected officials have no experience in business at all. . . . No politician ever gets rewarded for solving tomorrow's problems today. So you have a situation where you see the trends happening, but there's no incentive to act, even if the leader knew what to do. They're not equipped with crisis management skills or expertise."

Judy O'Neill is a partner in the law firm Foley & Lardner. According to their website, she "assisted with drafting Public Act 4 [the predecessor to PA 436] . . . and has assisted at two Emergency Manager training sessions." She "practices in bankruptcy, insolvency, reorganization, commercial transactions, and corporate law, concentrating on issues arising under the bankruptcy code."

She is quoted at the forum as follows: "What we've heard from everybody here today is that every method of implementation is replete with litigation. Even Chapter 9, which probably has the strongest hold, has this eligibility fight that consumes resources and time."

Attorney Douglas Bernstein of Plunkett Cooney also helped train candidates for Emergency Manager positions, along with other Plunkett Cooney Associates, according to their website. Plunkett Cooney itself held a similar forum in April of 2012.

Headen said during the forum that he has served on 16 financial review teams, five each under former Michigan Governors John Engler and Jennifer Granholm, and six "so far," under Snyder."

"Back in January our review team was in Detroit," the Flint-Genesee Legal News quotes Headen. "The city at that time had between nine and ten thousand employees. It also had 48 bargaining units, one of which I believe had only one member. The state of Michigan, by contrast, has about 50,000 employees with less than half a dozen bargaining units. In Detroit, 65 people are doing payroll while we have 15 people doing payroll for the entire state of Michigan."

The Code of Conduct for U.S. Judges is at http://www.uscourts.gov/RulesAndPolicies/CodesOfConduct/CodeConductUnitedStatesJudges .aspx.

It states in pertinent sections:

**CANON 2: A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES**

**Canon 2A. An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired**. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. This prohibition applies to both professional and personal conduct. A judge must expect to be the subject of constant public scrutiny and accept freely and willingly restrictions that might be viewed as burdensome by the ordinary citizen. Because it is not practicable to list all prohibited acts, the prohibition is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules, or other specific provisions of this Code.

**CANON 4: A JUDGE MAY ENGAGE IN EXTRAJUDICIAL ACTIVITIES THAT ARE CONSISTENT WITH THE OBLIGATIONS OF JUDICIAL OFFICE**

A judge may engage in extrajudicial activities, including law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities, and may speak, write, lecture, and teach on both law-related and nonlegal subjects. However, a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, **reflect adversely on the judge's impartiality**, lead to frequent disqualification, or violate the limitations set forth below.

Objector Bukowski states that the Hon. Judge Steven Rhodes neglect to disclose his participation in this forum nearly a year before the instant bankruptcy trial, and to disclose his comments at the forum and his connections with the forum participants, constitutes an "appearanceof impropriety," and raises questions about his impartiality in the instant case.

I hereby request that the Hon. Judge Steven Rhodes conduct a hearing on this objection and request for recusal forthwith, and before the conclusion of the eligibility trial in Case No. 13-53846.

Respectfully submitted,

(signed) *Mary Diane Bukowski*

Mary Diane Bukowski
Creditor/eligibility objector Docket 440
9000 E. Jefferson #10-9
Detroit, Michigan 48213
Phone: 313-825-6126
Email: diane_bukowski@hotmail.com

**PROOF OF SERVICE TO CERTIFICATION FILERS:**

On September 26, 2013, a copy of this objection was emailed to the following:

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com

hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539

bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson
Suite 2500

Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# Detroit bankruptcy judge tosses activists recusal bid

○  BY CHAD LIVENGOOD



Chad Livengood   **Detroit News Blog**

Nov 8, 2013, 8:35 am



Panelists for "Between a Rock and a Hard Place: Municipal Entities in Distress" were, left to right, Frederick Headen, director of the Bureau of Local Government Services in the Michigan Department of the Treasury; Edward Plawecki of Pierce, Monroe & Associates; and Judge Steven Rhodes; Douglas Bernstein of Plunkett Cooney; Judy O'Neill of Foley & Lardner; and Charles Moore of Conway MacKenzie.

U.S. Bankruptcy Judge Steven Rhodes, front center, who is overseeing Detroit's bankruptcy case, moderated a Oct. 10, 2012 Federal Bar Association panel discussion in Southfield entitled, "Between a Rock and a Hard Place: Municipal Entities in Distress." Detroit financial consultant Charles Moore, far right, participated in the discussion.

**U.S. Bankruptcy Judge Steven Rhodes on Thursday rejected a local activist and freelance writer's request for a court hearing on his partiality in Detroit's bankruptcy case.**

**Detroit resident Diane Bukowski, a** retired city worker **and editor of the** Voice of Detroit blog, **wanted the judge to recuse himself from the nearly four-month-old bankruptcy**

case for not disclosing that he participated in a panel discussion on distressed municipalities last year with one of the city's witnesses in the on-going eligibility trial.



Diane Bukowski

Rhodes moderated an Oct. 10, 2012 Federal Bar Association panel discussion in Southfield that featured Charles Moore, a city financial consultant with the restructuring firm Conway MacKenzie. Moore testified Oct. 23-24 about the need for Rhodes to be granted Detroit bankruptcy relief from its creditors.

The panel also featured Judy O'Neill, an attorney of Foley & Lardner who helped author Michigan's former emergency manager law, Public Act 4, and Frederick Headen, an official in the state Treasury Department who was part of the state's financial review team of city finances last winter.

Bukowski's complaint claimed Rhodes neglected "to disclose his participation in this forum nearly a year before the instant bankruptcy trial, and to disclose his comments at the forum and his connections with the forum participants constitutes an 'appearance of impropriety' and raises questions about his impartiality."

As evidence of the veteran bankruptcy judge's alleged impartiality, Bukowski attached to her motion a copy of an article published by the Flint-Genesee County Legal News featuring opinion quotes from all of the participants, except Rhodes.

Rhodes issued a six-page ruling Thursday denying Bukowski's motion for him to disqualify himself from case, citing case law related to judicial ethics and partiality.

The judge also took the unusual step to speak in his own voice in an official court ruling.

"In this case, a reasonable person with knowledge of all of the facts would know that I was only the moderator of the program and made no presentation at all," Rhodes wrote. "Instead, my role was limited to introducing the speakers and asking occasional questions to keep the presentations moving, focused and concise. Certainly, I heard the speakers' presentations and found them informative, but this proves nothing more than my interest in the law and in my community."