# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISON

_____
                Creditors/Objectors

In re:                                              Chapter 9

CITY OF DETROIT, MICHIGAN                           Case No. 13-53846
AND EMERGENCY MANAGER                               Judge Steve W Rhodes
KEVYN D. ORR
                    Debtor/                         Case No. 14-cv-10434
                                                    Hon. Bernard A. Freidman
_____/                          Magistrate Paul J. Komives


## OBJECTION TO THE ANUNITTY SAVINGS FUND RECOUPMENT AS UNLAWFUL

According to the CONSOLIDATED REPLY TO CERTAIN OBJECTIONS TO CONFIRMATION OF FOURTH MENDED PLAN FOR THE ADJUTMENT OF DEBTS OF THE CITY.: "The employee contributions were credited with interest based on a rate of return established at the discretion of the General Retiree System Trustees."

The City of Detroit violated PERA by unilaterally altering an established condition of employment, when the City Council adopted an ordinance on November 30 2011. The ordinance materially altered the handling of certain retirement benefits. The long-standing agreement between the parties was the annual rate of return on employee annuity retirement accounts essentially guaranteed by the City at a rate of 7.9%, with excess earnings flowing directly to employee accounts and any shortfalls covered by the City. The ordinance the City refers to was implemented without bargaining (contract ran

from January, 2011 to expire June 30, 2012) with A.F.S.C.M.E. during the term of an existing contract, therefore unlawful. The contract provided that all retirement and pension plan provisions provided for by the City Charter and Municipal Code are incorporated herein by references unless otherwise specifically modified by this Agreement and Ordinance 2-93, J.C.C. Page 133. The amount of the annual allocation of excess earnings, if any, was calculated by the Trustees pursuant to an established formula.

The new Ordinance prohibited (certain actions by) the GRS Pension Board from granting a rate of return on annuities greater than the actual return. The decision in A.F.S.C.M.E. et al v Detroit, 218 Mich App 263 (1996) had sought a similar change regarding distribution of excess earnings; in that case via charter amendment, and according to the Court the City acknowledged at the time that no such change could be implemented without first bargaining because the then current system of distribution of earnings was an established condition of employment. Such a legal concession by the City in 1996 was mandated by the earlier holding in Detroit Police Officers Ass'n v Detroit, 391 Mich 44, 54-55 (1974), which expressly held that while the City could change its Pension Ordinance, or Charter, as the City Council saw fit, changes to existing retirement benefits could not actually be implemented without fulfilling bargaining obligations. The Michigan Court of Appeals conceded, as it must have done under the than existing law, that regardless of charter provisions or any change to it, regardless of ordinance or any change to it, the City could not unilaterally change aspects of the pension plan without bargaining first with the Union. The 1996 Charter amendment effort was therefore functionally indistinguishable from the 2011 Ordinance amendment in the goal of diverting funds from benefiting employees and into the City coffers, while taking away from trustees the discretion to allocate funds. In the 1996 decision, the Court, in denying A.F.S.C.M.E. Relief, expressly relied on the City,s acknowledgment that it could not unilaterally accomplish that goal by Charter amendment. The 1996 decision further found that the City did not dispute "plaintiffs" contention that these challenged provisions may not be legally implemented as to the City's union employees without bargaining.

One of the earliest cases interpreting and enforcing PERA involved the City of Detroit and the DPOA ( Detroit Police Officers Association) and an assertion by the City that "We don't have to bargain about pensions because they are controlled by our charter, and our pension ordinance," and the Michigan Supreme Court said "You're wrong" (See, Detroit Police Officers Ass'n v Detroit, 391 Mich 44, 54-55 (1974). "The City as right

in acknowledging that they had to bargain before they could make a change, and it is not just wrong, but frivolous today to argue otherwise."

In November 2011 when the City's pension ordinance charge the 2008-2012 collective bargaining agreement was in place." As such the City's conduct further constituted an unfair labor practice as unlawful. (Amalgamated Transit Union v Smart, 437 Mich 441 (1991). The Wayne County Circuit Court decision in Wayne County Retiree Commission v Wayne County, Case No. 10-013013 was reversed in the Michigan Court of appeals and is now a waiting oral argument in the Michigan Supreme Court. "In that case at the trail level, relief was granted to Wayne County in a similar dispute over the distribution of excess earnings from its pension funds, and in which Wayne County, via a comparable ordinance amendment, seized some $32 million from its employee's pension funds. However, the Circuit Court decision was subsequently reversed in Wayne County Retirement System v Wayne County, 301 Mich Appl (2013) with the County ordered to restore the funds to its pension plan".

The City also states in the CONSOLIDATED REPLY TO CERTAIN OBJECTIONS: **The use of GRS Traditional Pension Plan assets to ASF benefits constituted other fiduciary breaches as well. For example the GRS Trustees must act as a prudent person would in similar situation.**

The duty and loyalty of the board of Trustees does not command a "fund first" view of fiduciary duty, and that it can ( and should) accommodate a "member first" view. Brock v Walton, 794 F. 2d 586 11th Cir. (1986). Holding that trustees did not violate their fiduciary duties by making below rate loans to plan participants. A "member first" view of fiduciary duty might raise concerns about the duty of impartiality, particularly as it manifests in potential conflicts between younger and older retirees( ie. 2003 – 2013, years of recoupment) The duty of impartially requires trustees to take in account of the interest of all beneficiaries. White v Teachers Ret. Sys fo City of New York 447 F. Supp 1248 (S.D.N.Y.) 1978 New York law imposes an obligation on trustees to accord impartial treatment to beneficiaries.

**The City states that since 1973 "Under the terms of an Annuity Savings Fund (AFS) program offered in part of GRS active City employees have been (and are) allowed to elect to invest from zero to seven percent of their salaries on an after -tax basis into a defined contribution arrangement pension.**

In 2008 the excess earnings distribution was $121,000,000 with 28% going for the City's benefit approximately $33,880,000. The city of Detroit averages a larger portion then the retirees in excess fund returns. Pursuant to its new ordinance the City with held approximately $174,240,000 in payments which would have been issued in 2011 and 2012 to active and retired employees ASF accounts. The retirees of the City of Detroit claim as a right the transparency of the Annuity Savings Fund accounts from the Board of Trustees, Retire committee, and the City.

**THEREEFORE: WE ARE FILING AN OBJECTION TO THE ANNUITY SAVINGS FUND RECOUPMENT OR CLAWBACK AND THE INTERFERANCE BY THE CITY IN THE DISTRIBUTION OF EXCESS FUNDS TO ASF ACCOUNTS.**

Sincerely Submitted

DOROTHEA HARRIS  *(signed)* Dorothea Harris
Your Name

28552 HUNTINGTON
Address

~~HARPER~~ WOODS 48225
City, State, Zip Code

07/11/14
Date     (313) 221-0707