UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DETROIT, a municipal
corporation, and its Detroit Water and
Sewerage Department,

                   Intervening Plaintiff,

vs.

KWAME KILPATRICK, an individual;
BERNARD N. KILPATRICK, an individual;
VICTOR M. MERCADO, an individual;
DERRICK A. MILLER, an individual;
BOBBY W. FERGUSON, an individual;
FERGUSON ENTERPRISES, INC., a
Michigan corporation; XCEL
CONSTRUCTION SERVICES, INC., a
Michigan corporation; INLAND WATERS
POLLUTION CONTROL, INC., a Michigan
corporation; INLAND/XCEL LLC, a
Michigan limited liability corporation;
LAKESHORE ENGINEERING SERVICES,
INC., a Michigan corporation; and L.
D'AGOSTINI & SONS, INC. D/B/A LD&S,
a Michigan corporation;

                   Defendants;

                   and

MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT,

  Plaintiff,

vs.

KWAME KILPATRICK, et al.,

  Defendants.

Case No. 2:11-CV-13101

Hon. Robert H. Cleland
Mag. Judge Mona K. Majzoub

**INTERVENING-PLAINTIFF
CITY OF DETROIT AND ITS
DETROIT WATER AND
SEWERAGE DEPARTMENT'S
MOTION TO INTERVENE AS A
MATTER OF RIGHT UNDER
FED. R. CIV. P. 24(A)**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

**INTERVENING-PLAINTIFF CITY OF DETROIT AND ITS DETROIT WATER AND SEWERAGE DEPARTMENT'S MOTION TO INTERVENE AS A MATTER OF RIGHT UNDER FED. R. CIV. P. 24(A)**

For the reasons set forth in the Brief filed concurrently with this Motion, Intervening-Plaintiff City of Detroit and its Detroit Water and Sewerage Department, through its attorneys Miller, Canfield, Paddock and Stone, P.L.C., respectfully asks the Court to enter an order allowing it to intervene in this lawsuit as a matter of right pursuant to Fed. R. Civ. P. 24(a).

On January 9 and 10, counsel for the Intervening-Plaintiff attempted to contact the attorney of record for Plaintiff and each Defendant or, where appropriate, the Defendant and to explain the nature of the relief sought in this Motion.  Pursuant to their counsel, Joseph M. Macksound, the J-Mack Agency, Anthony Soave, Perry Mehta, FutureNet Group, Inc., Dubay's Landscaping Services, Inc., Lawrence R. Dubay, Superior Engineering Associates, Inc., and Bharat Patel do not oppose the relief sought.  Counsel for the Intervening-Plaintiff was unable to obtain concurrence from any other Defendant in the relief sought, thereby necessitating this Motion.

WHEREFORE, Intervening-Plaintiff City of Detroit and its Detroit Water and Sewerage Department requests this Court grant its Motion and enter an order allowing it to intervene in this lawsuit as a matter of right pursuant to Fed. R. Civ. P. 24(a).

///

///

///

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Jerome R. Watson (P27082)
W. Mack Faison (P13274)
Irene Bruce Hathaway (P32198)


By: /s/Jerome R. Watson
       Jerome R. Watson
       Attorneys for Intervening Plaintiffs
       150 West Jefferson, Suite 2500
       Detroit, MI 48226
       (313) 963-6420
       watson@millercanfield.com

Dated: January 10, 2012

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF DETROIT, a municipal
corporation, and its Detroit Water and
Sewerage Department,

               Intervening Plaintiff,

vs.

KWAME KILPATRICK, an individual;
BERNARD N. KILPATRICK, an individual;
VICTOR M. MERCADO, an individual;
DERRICK A. MILLER, an individual;
BOBBY W. FERGUSON, an individual;
FERGUSON ENTERPRISES, INC., a
Michigan corporation; XCEL
CONSTRUCTION SERVICES, INC., a
Michigan corporation; INLAND WATERS
POLLUTION CONTROL, INC., a Michigan
corporation; INLAND/XCEL LLC, a
Michigan limited liability corporation;
LAKESHORE ENGINEERING SERVICES,
INC., a Michigan corporation; and L.
D'AGOSTINI & SONS, INC. D/B/A LD&S,
a Michigan corporation;

               Defendants;

               and

MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT,

  Plaintiff,

vs.

KWAME KILPATRICK, et al.,

  Defendants.

Case No. 2:11-CV-13101

Hon. Robert H. Cleland
Mag. Judge Mona K. Majzoub

**INTERVENING-PLAINTIFF
CITY OF DETROIT AND ITS
DETROIT WATER AND
SEWERAGE DEPARTMENT'S
BRIEF IN SUPPORT OF ITS
MOTION TO INTERVENE AS A
MATTER OF RIGHT UNDER
FED. R. CIV. P. 24(A)**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................................. ii

INDEX OF AUTHORITIES.................................................................................................... iii

I.      STATEMENT OF FACTS ........................................................................................... 2

II.     ARGUMENT .............................................................................................................. 4

        A. Applicable Standards Under Rule 24............................................................... 4

        B. DWSD Has an Interest Related to the Transactions that Are the Subject of the
           Action................................................................................................................ 5

        C. Without Intervention, Disposition of the Lawsuit Will  Impair or Impede
           DWSD's Ability to Protect Its Interests as a Practical Matter............................ 6

        D. MID Cannot Adequately Represent DWSD .................................................... 8

        E. The Motion Is Timely...................................................................................... 9

III.    CONCLUSION........................................................................................................ 10

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

## STATEMENT OF ISSUES PRESENTED

I.     Are the City of Detroit and its Detroit Water and Sewerage Department (together referred to as "DWSD") entitled to intervene in this lawsuit as a matter of right under Fed. R. Civ. P. 24(a) because: (1) DWSD has legal interests related to the transactions that are the subject of action; (2) the disposition of the action may, as a practical matter, impair or impede DWSD's ability to protect its legal interests; (3) DWSD's legal interests are not adequately represented by existing parties; and (4) DWSD's application to intervene is timely?

Intervening-Plaintiff City of Detroit answers: "Yes"

Plaintiff Macomb Interceptor Drain Drainage District answers:

Defendants answer:

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

## MOST APPROPRIATE OR CONTROLLING AUTHORITIES

Page(s)

CASES

*Commodities Exp. Co. v. City of Detroit*, 09-CV-11060-DT, 2009 WL 5171844 (E.D. Mich. Dec. 21, 2009) (Cleland, J.) (Ex. 3)..........................................................6, 11

*Donaldson v. United States*, 400 U.S. 517 (1971) ...........................................................7

*Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999)..............................................7, 8, 10

*Horrigan v. Thompson*, 145 F.3d 1331 ..................................................................7, 9

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)...........................7, 8

*NAACP v. New York*, 413 U.S. 345 (1973).....................................................................11

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991) ......................................9, 10, 11

*Rodgers v. Ohio Valley CFM, Inc.*, 1985 WL 12787 (6th Cir. Sept. 13, 1985) ..............8

*Trbovich v. United Mine Wkrs.*, 404 U.S. 528 (1972) ..................................................10

*United States v. Detroit Intern. Bridge Co.*, 7 F.3d 497 (6th Cir. 1993) ...............6, 9, 10

COURT RULES

Federal Rule of Civil Procedure 24(a) ...............................................................4, 6, 7, 11

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

iii

**INTERVENING-PLAINTIFF CITY OF DETROIT AND ITS DETROIT WATER AND SEWERAGE DEPARTMENT'S BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE AS A MATTER OF RIGHT UNDER FED. R. CIV. P. 24(A)**

Last July, Plaintiff Macomb Interceptor Drain Drainage District ("MID") sued 39 Defendants – including City of Detroit officials, a principal contractor and various subcontractors – alleging that Defendants engaged in a widespread corruption scheme against the City of Detroit and the Detroit Water and Sewerage Department (together referred to as "DWSD") in connection with the repair of a sewer collapse at 15 Mile Road in the City of Sterling Heights in Macomb County. (Compl., ECF No. 1 at 3.)  MID alleges that the unlawful activities arising out of this corrupt scheme were committed against DWSD.  MID also alleges, however, that it holds all of DWSD's rights of recovery for these unlawful activities as a result of the Macomb Interceptor Acquisition Agreement.  In that Agreement, MID purchased from DWSD certain Macomb County sewer assets (the "Macomb System"), including the assets involved in the 15 Mile Road sewer repair, and MID was assigned all "rights under all contracts, warranties and guaranties that apply to services or goods related to the Macomb System."

MID's claims in this lawsuit include not only a breach of DWSD's sewer-repair contract, but also various statutory and common-law torts based upon the unlawful activities committed against DWSD.  In motions to dismiss, contrary to MID's allegations, certain of the Defendants argue that the tort claims belong to DWSD and that MID lacks standing to bring these claims. (*See, e.g.*, Defs.' Mots. to Dismiss, ECF Nos. 33, 40, 58.)  DWSD seeks to intervene because the Defendants have placed its entitlement to the tort claims squarely at issue.  Without attempting to resolve the issue at this point, it is clear that DWSD has an interest in this lawsuit.

DWSD also seeks to intervene because its interests here are significantly broader than the issues raised in the Complaint and related motions.  MID incorporates by reference in its Complaint the First Superseding Indictment in a related criminal matter, *United States v. Kwame*

*Kilpatrick, et al.*, E.D. Mich. Case No. 10-CR-20403, where the federal government not only alleges misconduct in relation to the 15 Mile Road collapse by some of the same parties who are Defendants here, but also describes a broad criminal conspiracy against DWSD in a wide variety of sewer and non-sewer related projects (the "Kilpatrick Indictment"). Adverse decisions in this case could impact DWSD's broader interests, including its right to recover damages against Defendants for the other projects, which are the focus of the Kilpatrick Indictment. Neither MID nor any other party to the lawsuit is in a position to advocate for and protect DWSD's broader interests.

Accordingly, pursuant to Federal Rule of Civil Procedure 24(a), DWSD timely files this motion seeking to intervene by right while this lawsuit is still in the early pleading stages.[1] For the reasons set forth herein, DWSD's motion should be granted.

## I.      STATEMENT OF FACTS

On July 18, 2011, MID filed a six-count Complaint against 39 city officials and contractors, alleging that:

> The primary cause of this action is a widespread scheme to overcharge the Detroit Water and Sewerage Department ("DWSD") for time, labor and materials to stabilize and repair a sewer collapse at 15 Mile Road in . . . Sterling Heights . . . which is specifically identified in the *First Superseding Indictment* issued in Criminal Case No. 10-20403-NGE for a criminal RICO conspiracy, bribery, extortion, fraud, obstruction of justice, tax evasion and aiding and abetting. (Compl. ECF No. 1 ¶ 5.)

MID's Complaint contains claims for breach of contract, civil RICO, violations of the Sherman Antitrust Act, violations of the Clayton Antitrust Act, fraud, and tortious interference with business relations. MID's Complaint also incorporates by reference the First Superseding Indictment in *United States v. Kwame Kilpatrick, et al.*, E.D. Mich. Case No. 10-CR-20403,

---

[1] A copy of DWSD's Proposed Intervenor Complaint is attached to this motion as Exhibit 4.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

which includes the 15 Mile Road project as part of a broad criminal conspiracy committed by a number of parties in the present lawsuit.

Although Defendants committed their misconduct with respect to the 15 Mile Road collapse against DWSD, MID alleges that it obtained the right to the claims flowing from this misconduct as part of the Macomb Interceptor Acquisition Agreement (the "Macomb Acquisition Agreement"). (*Id.* ¶ 44.) The Macomb Acquisition Agreement transferred to MID the water/sewer assets located in Macomb County in exchange for payment of an amount equal to the "System Debt" as defined in the agreement. (*See* Exh. 1: Acquisition Agreement at art. 2.) Assigning to MID the "rights under all contracts, warranties and guaranties that apply to services or goods related to the Macomb System," (*see, e.g.*, Exh. 1 ¶ 2.4), the Macomb Acquisition Agreement was part of a global settlement of disputes between the City of Detroit, DWSD and the Counties of Wayne, Oakland and Macomb, which were pending in *United States v. City of Detroit*, E.D. Mich. Case. No. 77-71100). (*See* Exh. 2: Settlement Agreement.)

The parties do not dispute that the assignment transferred DWSD's contractual rights to MID in connection with the 15 Mile Road sewer-repair contract, which rights are set forth in Amendment No. 2 to the Consulting Services Contract entered into between the City of Detroit and Inland Waters Pollution Control, Inc. ("Inland Waters"). MID argues that the assignment clauses in the Macomb Acquisition Agreement also transferred tort claims. In motions to dismiss, various Defendants, including Inland Waters and L. D'Agostini & Sons, Inc., specifically dispute this point. LD&S argues that "the limited assignment clauses invoked by the [MID] do not assign tort claims." (ECF No. 33 at 7.) These Defendants also argue that MID lacks standing as a matter of law to assert the federal statutory claims because it cannot piggy-back on the harm suffered by DWSD. (*See, e.g.*, ECF No. 33 at 9-10.) According to them, none of the various tort claims were ever assigned by DWSD.

It is clear from these pleadings and motions to dismiss that either MID or DWSD holds the tort claims.  With both in the lawsuit, the matter can be determined on the merits with the full participation of all interested parties.  Despite MID's efforts to pursue the Defendants' misconduct, there is a significant possibility that its approach will not fully advocate and protect DWSD's interests.  There are significant differences in MID's and DWSD's approaches to the present litigation.  For example, unlike the proposed Intervention Complaint, MID's Complaint does not allege fraudulent concealment, common-law conspiracy, or breach of fiduciary duty (or aiding and abetting or knowingly participating in a breach of fiduciary duty), and does not seek damages for disgorgement of profits or unjust enrichment.

The lawsuit is still in the early stages.  Pursuant to the Court's Order, some Defendants' answers to the Complaint were not due until this month.  In the meantime, some Defendants have filed answers.  Others have filed motions to dismiss, including D'Agostini & Sons, Inc. (and the individual Defendants related to it), Inland Waters, and Anthony Soave. (*See* ECF Nos. 33, 40, 41, 58.)  Almost all of the motions to dismiss raise the issues that are the subject matter of this Motion to Intervene.  None of the motions have yet been heard.

## II.     ARGUMENT

### A.     Applicable Standards Under Rule 24.

Intervention may be by right or by permission.  DWSD seeks to intervene as a matter of right. Fed. R. Civ. P. 24(a).  Under Rule 24(a), DWSD is entitled to intervene as a matter of right upon a showing that: (1) DWSD has an interest related to the transactions that are the subject of action; (2) the disposition of the action may, as a practical matter, impair or impede DWSD's ability to protect that interest; (3) DWSD's interest is not adequately represented by existing parties; and (4) the application to intervene is timely.  *United States v. Detroit Intern. Bridge Co.*, 7 F.3d 497, 499 (6th Cir. 1993); *see Commodities Exp. Co. v. City of Detroit*, 09-CV-11060-DT,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

4

2009 WL 5171844 at *1-*2 (E.D. Mich. Dec. 21, 2009) (Cleland, J.) (Exh. 3). Each of these

requirements is met here.

      **B.**    **DWSD Has an Interest Related to the Transactions that Are the Subject of the Action.**

DWSD has an interest in the tort claims alleged in this lawsuit.  Defendants themselves

argue that the tort claims asserted by MID actually belong to DWSD. The Sixth Circuit "opted

for a rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan*

*State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).   Although a party seeking

intervention must show a "significantly protectable" interest at issue in the litigation, *Donaldson*

*v. United States*, 400 U.S. 517, 532 (1971), which is "direct[ and] substantial," *Jansen*, 904 F.2d

at 341, the Sixth Circuit reads these requirements broadly.  "For example, an intervenor need not

have the same standing necessary to initiate a lawsuit." *Grutter v. Bollinger*, 188 F.3d 394, 398

(6th Cir. 1999) (citing *Miller*, 103 F.3d at 1245; *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th

Cir. 1991)).   In addition, an intervenor does not have to have "a specific legal or equitable

interest." *Miller*, 103 F.3d at 1245, *quoted in Grutter*, 188 F.3d at 398 (concluding interest in

gaining admission to university was substantial enough).   "[C]lose cases should be resolved in

favor of recognizing an interest under Rule 24(a)," *id.* at 1247; let alone cases like this one where

the interest is obvious.

A litigant is entitled to intervene where it could be entitled to a portion of the recovery.

*See Horrigan v. Thompson*, 145 F.3d 1331 (Table), 1998 WL 246008, at *2 (6th Cir. May 7,

1998). If Defendants are right and MID's tort claims actually belong to DWSD, then DWSD

would certainly be entitled to a portion of any recovery awarded on those claims.

In addition, "[t]he possibility of adverse *stare decisis* effects provides intervenors with

sufficient interest to join an action." *Jansen*, 904 F.2d at 342 (class of intervenors whose interests

were protected by consent decree had sufficient interest to intervene in suit interpreting the decree because adverse interpretation of agreement could bind them).  The torts here concern misconduct that, according to the federal criminal indictment, is a part of a broader fraudulent scheme perpetrated against the DWSD.  DWSD's interests are likewise broader than MID's.  Decisions about the part of the scheme raised by MID (such as whether a racketeering conspiracy existed, what its aims were and who it included) could have adverse *stare decisis* effects on DWSD's efforts to obtain redress for the whole scheme.  This is sufficient to demonstrate the kind of interest that entitles DWSD to intervene.  In light of its clear legal interests in the current lawsuit, DWSD is entitled to intervene by right.

### C.   Without Intervention, Disposition of the Lawsuit Will Impair or Impede DWSD's Ability to Protect Its Interests as a Practical Matter.

The potentially negative impact that resolution of the lawsuit may have on DWSD's interests also favors intervention.  "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is minimal." *Miller*, 103 F.3d at 1247 (emphasis added), *quoted in Grutter*, 188 F.3d at 399. *See also Grutter*, 188 F.3d at 400 (potential impairment of students' access to the university was enough to satisfy element).

Denial of DWSD's motion to intervene could impair or impede DWSD's interests for at least three reasons.  First, procedurally the Court could reach an adverse decision as to the tort claims, such as finding that they are barred by relevant statutes of limitations.  The statute of limitations defenses raised by some of the Defendants in motions to dismiss will likely involve conduct and action of DWSD, including what information DWSD knew or should have known.  At least some of the Defendants ostensibly argue that as DWSD's assignee, MID's right to toll

the various statutes of limitations depends not upon what MID knew or should have known, but rather upon what DWSD knew or should have known.

Second, it is possible that the Court could make a decision on the merits without first determining whether the tort claims belong to MID or DWSD.  Such a decision could impair DWSD's interests in these claims without providing DWSD an opportunity to be heard.

Third, requiring DWSD to resort to another forum in an effort to protect its interests would place it at a severe disadvantage because it would:

(1)     face the possibility that a court might find some or all of its claims or interests to be precluded by the results here if this case reaches a judgment first, *see generally Detroit Intern. Bridge Co.*, 7 F.3d at 501 (potential decision elsewhere about interests);

(2)     lose the benefit of this Court's growing knowledge and experience about this case, *see Horrigan*, 1998 WL 246008, at *3;

(3)     face the prospect that this Court will determine the overall pool of the damages based solely on MID's and Defendants' evidence (without allowing the DWSD to plead and prove facts that might increase the overall recovery), *see Purnell*, 925 F.2d at 949.

In addition, and as noted earlier, DWSD could face "the possibility of adverse *stare decisis* effects" if it is not allowed to intervene to protect its broader interests. *Jansen*, 904 F.2d at 342. The tort claims here involve some of the same misconduct, conspiracies and schemes that are alleged in other projects set forth in the Kilpatrick Indictment. Adverse decisions on various factual and legal issues could impact DWSD's rights to recover on these other projects.

Any one of these practical disadvantages would support finding a right to intervene. Taken together, they compel the conclusion that DWSD is entitled to intervene in this lawsuit.

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

7

### D.   MID Cannot Adequately Represent DWSD.

Courts do not impose a substantial burden to establish whether another party might fall short in representing the intervenor's interests. "[T]he burden of making that showing should be minimal." *Trbovich v. United Mine Wkrs.*, 404 U.S. 528, 538 n.10 (1972). If the existing parties are unlikely to make all the same arguments, that can suffice. *Grutter*, 188 F.3d at 400 (quoting *Miller*, 103 F.3d at 1247). The DWSD need only show a "*potential* for inadequate representation." *Grutter*, 188 F.3d at 400.

Here, from both a liability and a damages perspective, MID is not likely to adequately represent DWSD's interests, especially the broader interests discussed above. *See Purnell*, 925 F.2d at 949-50 (discussing "interest adverse to the proposed intervenor"). In regard to liability, intervention is appropriate where the intervenor and representative might disagree about some of the arguments to be made, regardless of whether they share common interests in the overall approach to the claims. *See Grutter*, 188 F.3d at 401 (university might not present all the same arguments as students); *Jansen*, 904 F.2d at 343 (black intervenors in reverse discrimination suit shared goal with city of enforcing consent decree to remedy past discrimination but had sufficiently different interests where they interpreted the decree differently, advanced different arguments, and said the city's hiring process failed to comply with the consent decree); *Detroit Intern. Bridge Co.*, 7 F.3d at 502 (in condemnation suit, intervening land holders were not adequately represented by major landholder who also had an interest in the intervenors' competitor). Here, MID has not asserted all the claims that DWSD alleges in its Intervention Complaint or all the allegations about Defendants' fraudulent concealment of the cause of action, which bears upon the tolling of various statutes of limitations. (*Compare* Exh. 4, *with* Compl., ECF No. 1.) Further, even if parties seek the same kinds of damages, their interests are still sufficiently adverse where, as here, their individual damages differ or their interests are not

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

8

identical. *Purnell*, 925 F.2d at 949-50. The difference in the approaches that MID and DWSD will likely pursue – as discussed above – is enough to entitle DWSD to intervene.

    **E.    The Motion Is Timely.**

    Finally, this Motion is timely. Rule 24 does not prescribe a deadline for the petition. "Timeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Sixth Circuit uses a five-factor test that considers:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Jansen*, 904 F.2d at 340. Intervention can be timely even after motions for summary judgment have been filed, depending on the circumstances. *Id.* (petition filed within weeks of learning that city's response to summary judgment failed to adequately represent the intervenors' arguments and interests in the litigation). This Court found a request to be timely even after discovery closed and the parties had nearly completed briefing a motion for permanent injunction and declaratory judgment. *See Commodities Exp. Co.*, 2009 WL 5171844 at *2 (Exh. 3).

    This lawsuit has just begun. The time for responding to the Complaint will soon elapse, and motions to dismiss have not yet been heard. Intervention would not cause any prejudice to the litigants and would promote judicial economy. DWSD's request to intervene should be deemed to be timely.

### III.    CONCLUSION

    For each of the foregoing reasons, DWSD respectfully asks that the Court grant its Motion to Intervene by right and award such other relief as the Court deems appropriate.

9

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
Jerome R. Watson (P27082)
W. Mack Faison (P13274)
Irene Bruce Hathaway (P32198)


By: /s/ Jerome R. Watson
       Jerome R. Watson
       Attorneys for Intervening Plaintiff
       150 West Jefferson, Suite 2500
       Detroit, MI  48226
       (313) 963-6420
       watson@millercanfield.com

Dated:  January 10, 2012

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record and to Victor Mercado, who are all CM/ECF participants. In addition, I initiated efforts to serve via process server Bobby Ferguson, Ferguson Enterprises, Inc., Bernard Kilpatrick, and Derrick Miller, who ostensibly have evaded attempts at service by other parties in this lawsuit.

s/Jerome R. Watson
Jerome R. Watson
Miller Canfield Paddock and Stone, PLC
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226
(313) 963-6420

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.