UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACOMB INTERCEPTOR DRAIN DRAINAGE
DISTRICT,

    Plaintiff,

v.                                            Case No. 11-13101

KWAME KILPATRICK, et al.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING CITY OF DETROIT AND DETROIT
WATER AND SEWERAGE DEPARTMENT'S MOTION TO INTERVENE,
IMPOSING BRIEFING SCHEDULES, AND REINSTATING
RULE 12 RESPONSIVE PLEADINGS DEADLINES**

Nonparties the City of Detroit and the Detroit Water and Sewerage Department (collectively the "City of Detroit" or the "City") filed a motion to intervene in this litigation. Numerous Defendants filed responses in opposition to the City's motion. The court heard oral arguments on April 4, 2012 . For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

On July 18, 2011, Plaintiff Macomb Interceptor Drain Drainage District ("Macomb Interceptor") initiated this case against 40 Defendants alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, the Sherman Antitrust Act, 15 U.S.C. §§ 1-7, the Clayton Antitrust Act, 15 U.S.C. §§ 12-27, and asserting various state-law contract and tort claims. Plaintiff's claims arise from Defendants' involvement in the 2004-2005 repair of a collapsed sewer interceptor at 15

Mile Road in Sterling Heights, Michigan, (hereinafter the "15 Mile Road Repair Project"). Specifically, Plaintiff alleges that Defendant Kwame Kilpatrick, then the Mayor of the City of Detroit, along with various City of Detroit officials conspired with the principal contractor overseeing the 15 Mile Road Repair Project, Defendant Inland Waters Pollution Control Inc., and numerous subcontractors to "overcharge the Detroit Water and Sewerage Department . . . for time, labor and materials to stabilize and repair a sewer collapse at 15 Mile Road." (Pl.'s Compl. ¶ 5, Dkt. #1.) Plaintiff further avers that the alleged misconduct of Defendants related to the 15 Mile Road Repair Project was part of a much larger corruption scheme during Defendant Kwame Kilpatrick's tenure as Mayor of Detroit, principally involving Defendants Kwame Kilpatrick, Victor Mercado, Derrick Miller, Bobby Ferguson, and nonparty Bernard Kilpatrick.[1] This broader scheme is alleged to have operated for nearly a decade seeking to steer public works contracts and illicit benefits to associates of Defendant Kwame Kilpatrick and officials throughout his administration. (*See* Pl.'s Compl. Ex. A, Dkt. #1-1.)

Although Defendants' alleged scheme was perpetrated against the Detroit Water and Sewerage Department, Plaintiff contends that it obtained the right to assert its claims when, in September 2010, it entered into the Macomb Interceptor Acquisition Agreement ("Macomb Agreement") with the Detroit Water and Sewerage Department. (Pl.'s Resp. to D'Agostini Defendants' Mot. to Dismiss 15-17, Oct. 6, 2011, Dkt. # 62.) The Macomb Agreement transferred to Plaintiff sewer assets located in Macomb

---

[1]The concept of an overarching municipal corruption scheme is the central allegation in a criminal case currently pending before Hon. Nancy G. Edmunds. *See United States v. Kilpatrick*, Case No. 10-20403 (E.D. Mich.). Plaintiff incorporates by reference in its complaint the first superseding indictment from this case.

County formerly owned by the Detroit Water and Sewerage Department and assigned to Plaintiff "all of [Detroit Water and Sewerage Department's] rights under all contracts, warranties, and guarantee to apply to services or goods related to the Macomb System." (Pl.'s Compl. Ex. F ¶ 2.4, Dkt. # 1-6.)  At least some Defendants have maintained that this assignment of rights did not assign to Plaintiff the rights to any tort claims arising from the 15 Mile Road Repair Project, and that therefore the Detroit Water and Sewerage Department, not Plaintiff, has standing to assert such claims. (*See e.g.*, D'Agostini Defendants' Mot. to Dismiss 7, Sept. 1, 2011, Dkt. # 33.)  These same Defendants have also argued that Plaintiff lacks standing to assert its statutory claims because indirect purchasers lack standing under RICO and antitrust laws to sue for overcharges.  (*Id.* at 9.)

The City of Detroit now seeks to intervene in this case arguing that it has a substantial interest in the resolution of the dispute about who may properly assert the statutory and tort claims arising out of the 15 Mile Road Repair Project.  (City of Detroit's Br. Supp. Mot. Intervene 1, Jan. 10, 2012, Dkt. # 145.)  The City further contends that its interest in the overarching corruption scheme is broader than Plaintiff's interest and, as a result, it should be permitted to file an intervening complaint broader in scope than Plaintiff's.  The proposed intervening complaint is not limited to the 15 Mile Road Repair Project and instead asserts claims spanning the entire length of the alleged corruption scheme.  While broadening the scope of the corruption scheme, the City asserts claims against only 11 Defendants, eight of whom are named and three of whom are unnamed in Plaintiff's original complaint.

3

## II. STANDARD

Motions to intervene are governed by Federal Rule of Civil Procedure 24, which provides, in part, that:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
>> (1) is given an unconditional right to intervene by a federal statute; or
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
>> (1) In General. On timely motion, the court may permit anyone to intervene who:
>>
>>> (A) is given a conditional right to intervene by a federal statute; or
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.
>
> . . .
>
> (c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

Fed. R. Civ. P. 24.

## III. DISCUSSION

The City of Detroit contends that it is entitled to intervention as of right. The criteria that must be satisfied before an intervention as of right will be granted pursuant to Federal Rule of Civil Procedure 24(a) are: (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the

4

applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court. *United States v. Tennessee*, 260 F.3d 587, 591-92 (6th Cir. 2001) (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). "The applicant has the burden of demonstrating the four prongs, and the failure to satisfy any of the four prongs prevents the applicant from intervening as of right." *Johnson v. City of Memphis*, 73 F. App'x 123, 131 (6th Cir. 2003) (citing *Linton v. Comm'n of Health & Env't*, 973 F.2d 1311, 1317 (6th Cir. 1992)). Upon review of each prong, explained below, the court concludes that the City of Detroit has satisfied the requirements to intervene as of right, but further finds that the City's intervention should be restricted to the scope of the claims, *i.e.*, those claims arising directly from the 15 Mile Road Repair Project, asserted in Plaintiff's original complaint.

### A. Timeliness

The D'Agostini Defendants[2] argue that the City of Detroit's motion is untimely because the case was pending for nearly six months before the City filed its motion to intervene. (D'Agostini Defs.' Resp. to City of Detroit's Mot. Intervene 11-12, Jan. 27, 2012, Dkt. # 169.) Mere delay in filing a motion to intervene, however, is insufficient to establish the untimeliness of the motion. Instead, the United States Court of Appeals for the Sixth Circuit has held that the following factors should be considered in determining the timeliness prong when considering a motion to intervene:

---

[2]The D'Agostini Defendants include Defendants L. D'Agostini & Sons, Inc., Antonio D'Agostini, L. Robert D'Agostini, and James D'Agostini.

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Johnson*, 73 F. App'x at 131.  Here, the D'Agostini Defendants claim that the six month delay has prejudiced them because the stigma and the harm to their business interests this case has caused will persist further into the future as a result of the City of Detroit's intervention.  (D'Agostini Defs.' Resp. to City of Detroit's Mot. Intervene 12.)  The prejudice complained of by the D'Agostini Defendants, however, is not derived from the City of Detroit's six month delay in filing its motion, but rather from the mere fact that the D'Agostini Defendants are named defendants in the original complaint.  Indeed, were the court to deny the City of Detroit's motion, the City would be free to intitiate an independent lawsuit naming the D'Agostini Defendants as defendants, and thus subjecting the D'Agostini Defendants to exactly the same impact they attribute to the City's delay.  Furthermore, the court finds that the remaining timeliness factors militate in favor of finding the City of Detroit's motion timely.  The case is still in a nascent phase; the court has not entered a scheduling order nor has court-supervised discovery commenced.  In fact, the City of Detroit filed its motion before the final Defendants were even served by Plaintiff.  Additionally, the purpose of intervention, at least in part, is to determine the threshold question of who has standing to assert the statutory and tort claims arising from the 15 Mile Road Repair Project.  This issue affects the viability of

nearly every claim Plaintiff asserts and it should be addressed with the participation of the City of Detroit.  The City of Detroit's motion to intervene is timely.

### B. Interest in Case and Impairment of the City of Detroit's Ability to Protect its Interest in the Absence of Intervention

While a nonparty seeking intervention must demonstrate that it has a substantial interest in the pending litigation, the Sixth Circuit has adopted a "rather expansive notion of the interest sufficient to invoke intervention of right." *Miller*, 103 F.3d at 1245.  "For example, an intervenor need not have the same standing necessary to initiate a lawsuit." *Id.*  Here, neither Plaintiff nor Defendants argue that the City of Detroit fails to demonstrate it has a substantial interest in the case.  Further, upon the court's independent review of the City of Detroit's motion and the record, it is apparent that the original parties pointedly dispute whether it is the City of Detroit or Plaintiff that has standing to assert the statutory and tort claims expressed in Plaintiff's complaint.  The City of Detroit has no less than a substantial interest in this case.

Although they do not challenge the City of Detroit's interest in the case, Defendants nevertheless argue that the City of Detroit's motion to intervene would be moot if the court first determined who has standing to assert the statutory and tort claims in Plaintiff's complaint.  (*See e.g.*, Def. Soave's to City of Detroit's Mot. Intervene1, Jan. 26, 2012, Dkt. # 163*;* Inland Waters Pollution Control Defs.' Resp. to City of Detroit's Mot. Intervene 10, Jan. 27, 2012, Dkt. # 168; D'Agostini Defs.' Resp. To City of Detroit's Mot. Intervene 12-14,.)  As the City of Detroit observes, however, adjudicating an intervenor's interests in a case before deciding a pending motion to intervene would invariably moot any motion to intervene.  (City of Detroit's Reply to

Inland Waters Pollution Control Resp. 4, Feb. 3, 2012, Dkt. # 175.) Moreover, the court reiterates now what it originally stated in its order denying the D'Agostini Defendants' motion for reconsideration, (2/7/2012 Order 3, Dkt. # 178): were the court to adopt Defendants' proposed order of operation, the City of Detroit would be denied a meaningful opportunity to argue on behalf of its purported interests in the statutory and tort claims and would be subjected to the very impairment that Rule 24 seeks to avoid. Accordingly, the court finds that adjudicating the standing issue prior to granting the City of Detroit intervention as of right would impair the City's ability to protect its interests. The court declines the invitation to determine whether the City of Detroit or Plaintiff has standing to raise the statutory and tort claims without first permitting the City of Detroit to intervene and properly articulate its interest in the claims.

**C. Adequacy of Representation of the City of Detroit's Interest by Original Parties**

The parties do not contest the City of Detroit's argument that Plaintiff and Defendants fail to adequately represent Detroit's possible interests in this case, and the court finds that the City's claimed interests in the statutory and tort claims arising from the 15 Mile Road Repair Project are adverse to both Plaintiff's and Defendants's interest in this case. Plaintiff cannot adequately represent the City of Detroit's interests in the claims arising from 15 Mile Road Repair Project because Plaintiff is adverse to Detroit, maintaining that the Detroit assigned those very claims to it in the Macomb Agreement. Further, the City of Detroit's position in this case is in direct opposition to the interests of Defendants, who cannot be expected to properly represent the City's interest in this case.

**D. Defendants' Futility Objections to the City of Detroit's Motion**

Finally, numerous Defendants challenge the City of Detroit's intervention in this case on the grounds that the claims asserted in the City's proposed complaint are futile and fail as a matter of law. (*See e.g.*, D'Agostini Defs.' Resp. to City of Detroit's Mot. Intervene 7, 9.) Specially, the D'Agostini Defendants argue that the City of Detroit failed to properly plead its proposed breach of fiduciary duty claim and that, in any event, the claim is time barred, (*id.*), and the Lakeshore Engineering Defendants maintain that the City of Detroit failed to properly plead the constituent elements of a civil RICO claim, (Def. Lakeshore Eng'g Servs., Inc.'s Resp. to City of Detroit's Mot. Intervene 5-12, Jan. 27, 2012, Dkt. # 170). While the D'Agostini Defendants cite numerous cases from other district and circuit courts supporting the proposition that an intervenor must state a well-pleaded claim or defense in order to succeed on a motion to intervene, no Defendant proffers a single Sixth Circuit case, nor is the court familiar with any such case, adopting a futility exception to intervention. Indeed, such an exception to intervention as of right would likely contradict the Sixth Circuit's expansive intervention doctrine, a doctrine that does not require an intervenor to have standing to initiate its own lawsuit or even "a specific legal or equitable interest" in the case. *Miller*, 103 F.3d at 1245 (quoting *Purnell*, 925 F.2d at 948) (internal quotation marks omitted). Even were the court to adopt a futility exception, the City of Detroit's claims, at least on initial review, are not plainly meritless. Unlike the intervening plaintiff in *SEC v. American Board of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987), a case cited by the D'Agostini Defendants in which the United States Court of Appeals for the Second Circuit affirmed

a district court's denial of a motion to intervene as of right because the proposed claims were "frivolous on their face" and "clearly meritless," 830 F.2d at 443, the City of Detroit's complaint is not so meritless or otherwise deficient that the court could state that the City's claims are "frivolous on their face." The most prudent course of action, especially given the City of Detroit's abbreviated opportunity to address Defendants' futility arguments in its reply briefs, is to allow the City to assert its claims and then permit Defendants to attack them, if they so choose, in fully-briefed Rule 12 motions. This will ensure Defendants have an opportunity early in the proceedings to challenge the legal sufficiency of the City of Detroit's claims while also permitting the City to more fairly and completely defend its positions.

### E. Scope of Intervention

Having determined that the City of Detroit satisfies the requirements for intervening as of right, the court now considers Defendants' request to limit the scope of the City of Detroit's intervention to participation in the adjudication of the issue of whether the City of Detroit or Plaintiff has standing to bring the statutory and tort claims arising out of the 15 Mile Road Repair Project. Defendants argue that the City of Detroit's proposed intervening complaint "seeks to significantly expand the scope of this litigation from one relating to the work performed on one discrete project over the course of a limited time period . . . to include claims regarding various distinct contracts and necessitating a review of the entire relationship between the [Detroit Water and Sewerage Department] and numerous Defendants, spanning more than six years." (Inland Waters Pollution Control's Resp. to City of Detroit's Mot. Intervene 12.) The City of Detroit acknowledges that its proposed intervening complaint is broader than

Plaintiff's but argues that it should nevertheless be permitted to "bring all its claims related to the same underlying scheme in order to avoid piecemeal litigation and potential preclusion issues." (City of Detroit's Reply to Inland Waters Pollution Control Defs.' Resp. 2.)

As the United States Court of Appeals for the First Circuit has observed, "the extent to which an [intervenor] can enlarge the issues in the case beyond those that the original plaintiff and defendant wish to litigate . . . is fraught with difficulty." *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 36 (1st Cir. 2000). On one hand, once a court grants intervention as of right, "the intervener becomes a 'party', [sic] within the meaning of the Rules, 'entitled to litigate fully on the merits.'" *Hartley Pen Co. v. Lindy Pen Co.* 16 F.R.D. 141, 153 (S.D. Cal. 1954) (quoting *Park & Tilford v. Schulte*,160 F.2d 984, 989 n.1 (2d Cir. 1947)); *see also In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006) ("Once a court grants intervention . . . , the 'intervenor is treated as if [it] were an original party and has equal standing with the original parties.'" (quoting *Marcaida v. Rascoe*, 569 F.2d 828, 831 (5th Cir.1978)) (per curiam)). On the other hand, there is Supreme Court guidance holding that "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944). Further, the advisory committee's note to the 1966 Amendment to Federal Rule of Civil Procedure 24 provides: "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." And, while the advisory

committee's note has been challenged by at least one leading federal procedure treatise for failing to cite any authority in support of this statement, *see* 7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 1922, pp. 630-31 (3d ed. 2007), courts have interpreted the language to allow district courts to impose restrictions on an intervenor as of right, *see e.g.*, *Southern v. Plumb Tools*, 696 F.2d 1321, 1322 (11th Cir. 1983) ( "[C]onditions can be imposed even when a party intervenes as a matter of right under Rule 24(a)(2)."); *Newport News Shipbuilding and Drydock Co. v. Penisula Shipbuilders' Ass'n*, 646 F.2d 117, 122 (4th Cir. 1981) ("Even intervention of right may properly be made conditional by the exigencies of the particular case."); *Santiago-Sepulveda v. Esso Standard Oil* Co. *(Puerto Rico)*, 256 F.R.D. 39, 43-44 (D. P.R. 2009) (restricting the scope of intervention of a successor in interest by preventing counterclaims and observing that the intervenor "effectively seek[s] to create a separate case within a case. . . [by] naming new parties and raising new issues that were not raised by the principal parties"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party." (citing Rule 24(a) advisory committee's note)).

      Defendants' request to limit the City of Detroit's intervention to the threshold question of who has standing to assert the statutory and tort claims contained in Plaintiff's complaint plainly contravenes the principle that an intervenor, once permitted to intervene, is "entitled to litigate fully on the merits," *Hartley Pen Co.* 16 F.R.D. at 153, and "has equal standing with the original parties," *Marcaida* 569 F.2d at 831. Accordingly, the court declines to limit the City of Detroit's intervention to solely the

standing determination. Nevertheless, granting the City of Detroit unrestricted intervention at this time and permitting it to file its proposed intervening complaint would exponentially broaden the scope of the current litigation. The City of Detroit does not contest Defendants' assertion that its proposed intervening complaint is substantially broader in scope and introduces additional parties and claims not directly arising from the 15 Mile Road Repair Project. Indeed, the City of Detroit itself states that its interests "are significantly broader than the issues raised in the Complaint." (City of Detroit's Br. Supp. Mot. Intervene 1.) As the court in *Santiago-Sepulveda* observed, granting an intervenor's request to add additional parties and issues that were not raised by the original parties "is effectively seeking to create a separate case within a case" and "would . . . grant an impermissible 'enlargement' of the case." 256 F.R.D. at 44. Limiting the City of Detroit's intervention to only those claims directly arising out of the 15 Mile Road Repair Project, and not the broader, overarching corruption scheme, ensures that the City of Detroit has a meaningful opportunity to protect its purported interests in the claims asserted by Plaintiff while also preventing the impermissible enlargement of the scope of the issues contained in Plaintiff's original complaint.

      The court finds unpersuasive the City of Detroit's contention that restricting intervention to only those claims arising out of the 15 Mile Road Repair Project will not fully protect the City's interests in the case. In its briefs, and during oral arguments, the City of Detroit alludes to broader interests in the alleged corruption scheme that may be impaired or impeded if it is not permitted to file its proposed complaint. Specifically, it suggests that "[d]ecisions about the part of the scheme raised by [Macomb Interceptor] (such as whether a racketeering conspiracy existed, what its aims were and who it

included) could have adverse *stare decisis* effects on [the Detroit Water and Sewer Department's] efforts to obtain redress for the whole scheme," (City of Detroit's Br. Supp. Mot. to Intervene Br. 6), and may cause "potential preclusion issues," (City of Detroit's Reply to Inland Waters Pollution Control Resp. 2). However, any potential impairment of the City of Detroit's interests in the broader scheme due to the possible effect of issue preclusion will be accounted for by immediately resolving, once the City of Detroit files its intervening complaint, the issue of standing to assert the claims arising from the 15 Mile Road Repair Project. The doctrine of issue preclusion, also referred to as collateral estoppel, bars "successive litigation of an issue of fact or law actually litigated [between the parties or their privies] and resolved in a valid court determination essential to the prior judgment." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). In the instant case, if the court determines that the City of Detroit does not have standing and is not a proper party to this action, any claims it wishes to assert that arise from the broader corruption scheme will not be barred by a court determination in this case. Alternatively, if the court ultimately determines that the City of Detroit, and not Plaintiff, has standing to assert the tort and statutory claims arising from the 15 Mile Road Repair Project, Plaintiff's tort and statutory claims will be dismissed, and the City may avoid the consequences of issue preclusion by filing a motion for leave to amend to add additional claims arising out of the broader corruption scheme.[3] The City's

---

[3]During oral arguments counsel for the Inland Water Pollution Control Defendants argued that if the court finds that the City of Detroit has standing to assert the statutory and tort claims arising out of the 15 Mile Road Repair Project, the court would likely, under the prevailing law related to supplemental jurisdiction, dismiss Plaintiff's complaint in its entirety. As a result, counsel maintained, the court would necessarily have to dismiss the City's intervening complaint, thereby forcing the City to

14

contention, asserted during oral arguments, that its interests in the broader corruption scheme may nonetheless be practically harmed because factual determinations in this case may informally influence a district judge's ruling in an independent action brought the City is without merit. Such an argument assumes that a federal court will either ignore the well-established limits of the doctrine of issue preclusion or misapply the doctrine. The court is unwilling to make such an assumption.

Finally, determining the threshold issue of standing renders moot the City of Detroit's additional arguments that its interests will be impaired if the court "makes a decision on the merits without first determining whether the tort claims belong to [Plaintiff or the City]" or reaches "an adverse decision as to the tort claims, such as finding that they are barred by relevant statutes of limitations," (City of Detroit's Br. Supp. Mot. Intervene 6-7).

Accordingly, limiting the City of Detroit's intervention to those claims arising directly from the 15 Mile Road Repair Project properly protects the City's interests in this case while preventing an impermissible expansion of the scope of the original lawsuit.

## IV. CONCLUSION

---

initiate a new and independent action. Contrary to counsel's contention, however, a plaintiff-intervenor with an independent jurisdictional basis for his claims may continue to litigate even after the dismissal of the original plaintiff. *United States Steel v. Envtl. Prot. Agency*, 614 F.2d 843, 845 (3d Cir. 1979) (citing *Magdoff v. Saphin Television & Appliance, Inc.*, 228 F.2d 214 (5th Cir. 1955) and *Hunt Tool Co. v. Moore, Inc.*, 212 F.2d 685 (5th Cir. 1955)) ("The weight of authority in the United States Courts of Appeals supports the principle that an intervenor can continue to litigate after dismissal of the party who originated the action."); 7C Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1920, pp. 612-13 (3d ed. 2007) ("The case law is scanty and unsatisfactory on when and whether a claim of an intervenor can proceed to decision after a dismissal of the original action. It is clear that this is proper if there are independent grounds for jurisdiction of the intervenor's claim.")

For the reasons stated above, IT IS ORDERED that nonparties the City of Detroit and the Detroit Water and Sewerage Department's motion to intervene [Dkt. # 145] is GRANTED. The City of Detroit and Detroit Water and Sewerage Department are DIRECTED to file an intervening complaint, limited in scope to only those claims directly arising out of the 15 Mile Road Repair Project, on or before **May 21, 2012**. The Clerk of the Court is DIRECTED to add the City of Detroit and the Detroit Water and Sewerage Department as intervening Plaintiffs.

IT IS FURTHER ORDERED that Plaintiff Macomb Interceptor Drain Drainage District is DIRECTED to file a response to Defendants' "Joint Motion for Summary Judgment" [Dkt. ## 188, 190] on or before **May 21, 2012**.[4] Plaintiff-Intervenors the City of Detroit and the Detroit Water and Sewerage Department are DIRECTED to file a

---

[4]Plaintiff Macomb Interceptor requested during oral arguments that its pending motion for leave to amend the original complaint be decided before the court addresses Defendants' joint dispositive motion. After reviewing Macomb Interceptor's motion and Defendants' various response briefs, the court believes that the motion can be adjudicated simultaneously with Defendants' dispositive motion. Defendants challenge Macomb Interceptor's request for leave to amend on several grounds, but primarily argue that amendment would be futile because Plaintiff does not have standing to assert any tort or statutory claims arising out of the 15 Mile Road Repair Project. (*See, e.g.*, D'Agostini Defs.' Resp. to Pl. Macomb Interceptor's Mot. Leave Amend 3, 5, Feb. 17, 2012, Dkt. # 185; Inland Waters Pollution Control Defs.' Resp. to Pl. Macomb Interceptor's Mot. Leave Amend 3, Feb. 17, 2012, Dkt. # 186; Def. Soave's Resp. to Pl. Macomb Interceptor's Mot. Leave Amend 4, Feb. 16, 2012, Dkt. # 183.) The same argument is the basis of Defendants' pending dispositive motion, and the challenge to Plaintiff's standing applies with equal force to both the original complaint and the proposed amended complaint. Accordingly, whether Plaintiff's proposed amended complaint is futile relies, in large part, on a determination of whether Plaintiff has standing to assert its claims. By deciding the two pending motions contemporaneously, the court will in effect provide Plaintiff the full opportunity to address Defendants' no-standing argument that Plaintiff in its reply brief argues it would not have. (Pl. Macomb Interceptor's Reply 1, Feb. 23, 2012, Dkt. # 187).

response on or before **May 28, 2012**. Any replies shall be filed on or before **June 4, 2012**.

Finally, IT IS ORDERED that the deadlines for the service of responsive pleadings contemplated by Federal Rule of Civil Procedure 12, originally tolled in the court's January 13, 2012 order, are REINSTATED.

        s/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: May 7, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 7, 2012, by electronic and/or ordinary mail.

        s/Lisa G. Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522