# **EXHIBIT B**

**Transcript of the Deposition of Commissioner Anthony Marrocco**

# IN RE: CITY OF DETROIT, MICHIGAN

## ANTHONY V. MARROCCO

July 10, 2014

*Prepared for you by*



### BIENENSTOCK
NATIONWIDE COURT REPORTING & VIDEO

Bingham Farms/Southfield • Grand Rapids
Ann Arbor • Detroit • Flint • Jackson • Lansing • Mt. Clemens • Saginaw

```
 1    Q.   Do you recall there was a long-standing federal
 2         court case involving Detroit in which Judge
 3         Feikens was in effect overseeing Detroit's
 4         running of the sewer system?  Do you recall such
 5         a case?
 6    A.   Yes.
 7    Q.   And if I call that the sludge case, is that what
 8         it was referred to?
 9    A.   Not to my knowledge.
10    Q.   What did you refer to it as?
11    A.   Just an -- the EPA was forcing Detroit to make
12         improvements to the system to clean up the Detroit
13         River.
14    Q.   And was Macomb from time to time involved in that
15         case?
16    A.   Yes.
17    Q.   Do you know why Macomb would get involved?
18    A.   Not exactly sure why, because you're looking at
19         when the initial, I guess, lawsuit was filed by
20         the EPA, which I'm guessing was back in the 70s.
21         It was way before my time.
22    Q.   Did Macomb ever assert any claims against Detroit
23         for Detroit's operation or what it considered
24         faulty operation or excess charges in regard to
25         the sewer system?
```

```
 1   Q.   That was iv.
 2   A.   Yes, I see it.
 3   Q.   Was it your understanding that Macomb, prior to
 4        signing the deal, was entitled to satisfy itself
 5        that all operational, financial, environmental,
 6        engineering, legal and accounting matters were in
 7        order -- were in accord with what it wanted in
 8        regard to the deal?
 9   A.   So your question --
10   Q.   Let me rephrase it.  Could you satisfy yourself
11        with regard to all these matters, get all the
12        information you wanted?  You were entitled to
13        satisfy yourself in regard to all this before you
14        signed the deal, weren't you?
15   A.   Yes, we were entitled to it.
16   Q.   And you didn't -- if you had any questions about
17        any of these things, you didn't have to sign the
18        deal?
19   A.   Well, had we known the information on the 15 Mile
20        Road sewer collapse was inaccurate and was faulty,
21        we probably would have raised an objection, but we
22        take it that what they gave to us was true and
23        accurate and fair.
24   Q.   What information did they give to you wasn't true
25        and accurate and fair?
```

| | | |
|---|---|---|
| 1 | A. | That the sewer collapse cost $55 million to |
| 2 | | repair. |
| 3 | Q. | And you don't think it cost that much? |
| 4 | A. | That's correct. |
| 5 | Q. | What do you base that on, your conclusion it |
| 6 | | didn't cost that much? |
| 7 | A. | I had an engineer give me an estimate what they |
| 8 | | thought it would cost to do that job. |
| 9 | Q. | Who was the engineer? |
| 10 | A. | Anderson, Eckstein & Westrick. |
| 11 | Q. | What did they think it would cost to do the job? |
| 12 | A. | They said approximately $28 million. |
| 13 | Q. | And did they speak to anyone at Detroit before |
| 14 | | arriving at their estimate? |
| 15 | A. | I can't answer that. I don't know. |
| 16 | Q. | Do you know whether or not they were aware that |
| 17 | | various unforeseen difficulties were encountered |
| 18 | | in repairing the system? |
| 19 | A. | Well, they were not aware that someone was getting |
| 20 | | paid for doing no work. |
| 21 | Q. | Well, we could get into that, but let's -- |
| 22 | A. | That was brought out in federal court, and it's a |
| 23 | | fact. |
| 24 | Q. | Were they aware that unforeseen difficulties were |
| 25 | | encountered in effecting the repairs? Do you |

```
1   Q.   Well, whether or not you --
2   A.   The buck stops here.  I made the decision.  And
3        they overcharged.
4   Q.   Okay.  Did Misterovich ever complain, to your
5        knowledge?
6   A.   Misterovich is an attorney.
7   Q.   What does that mean?
8   A.   He's not a contractor.  He's not in the
9        construction industry.
10  Q.   Can you answer my question?  Other than what
11       you've testified to, are you aware of any other
12       complaints about the costs?
13  A.   You know, I probably had rumblings.  If you want
14       me to specify the name of a person, I can't do
15       that, but just there were rumblings.  There were
16       rumblings.
17            MR. WATSON:  All right.  That's all
18       I've got.
19                    EXAMINATION
20  BY MS. BADALAMENTI:
21  Q.   I just have a couple of questions.
22            Commissioner, if you had known about
23       these overcharges, would Macomb have entered into
24       the acquisition agreement on these terms?
25  A.   Absolutely not.  We would have wanted more than
```

1  that 17 million -- 17 million?  We would have
2  asked for more than $17 million credit.
3 Q.  If the -- if you had known that there was an
4  ongoing criminal investigation by the FBI that
5  preceded the acquisition agreement, that had that
6  information been disclosed to you by Detroit
7  prior to September 2nd, 2010, would you have
8  entered into the acquisition agreement?
9 A.  No.  That's for sure not.
10          MS. BADALAMENTI:  No further questions.
11          MR. WATSON:  Nothing further.
12          (The deposition was concluded at 12:37 p.m.
13  Signature of the witness was not requested by
14  counsel for the respective parties hereto.)

ANTHONY V. MARROCCO
July 10, 2014

Page 86

```
 1                CERTIFICATE OF NOTARY
 2   STATE OF MICHIGAN    )
 3                        ) SS
 4   COUNTY OF MACOMB     )
 5
 6            I, MELINDA S. MOORE, certify that this
 7   deposition was taken before me on the date
 8   hereinbefore set forth; that the foregoing
 9   questions and answers were recorded by me
10   stenographically and reduced to computer
11   transcription; that this is a true, full and
12   correct transcript of my stenographic notes so
13   taken; and that I am not related to, nor of
14   counsel to, either party nor interested in the
15   event of this cause.
16
17
18
19
20                              Melinda S. Moore
21
22             MELINDA S. MOORE, CSR-2258
23             Notary Public,
24             Macomb County, Michigan
25        My Commission expires:  September 6, 2016
```

13-53846-tjt    Doc 6016-3    Filed 07/14/14    Entered 07/14/14 23:46:14    Page 8 of 8

BIENENSTOCK
www.bienenstock.com