UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
2014 JUL 15 A 10: 17

U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

In Re:

CITY OF DETROIT, MICHIGAN

Debtor,

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## DIONNE L. WILLIAMS, OBJECTING CREDITOR
## OBJECTIONS TO CONFIRMATION OF THE CITY OF DETROIT'S FOURTH AMENDED PLAN OF ADJUSTMENT

I, Dionne L. Williams, am a creditor and a member of Class 11 and hereby file this Objection to Confirmation of the City of Detroit's (The City's) Fourth Amended Plan of Adjustment (the "Plan") for the following reasons:

1. Annuity Savings Fund (ASF) Recoupment proposes a seizure of the assets of creditors in Class, without due process, that is not supported by bankruptcy or non-bankruptcy law and seems to be a violation of the Detroit Municipal Code and the United States Constitution. The City has not brought any action (lawsuit, avoidance action or criminal proceeding) under law that would provide the legal basis for "recouping" annuity savings interest from non-consenting employees and retirees. 1996 charter proposal (Proposal T) which sought to limit the amount of interest, beyond the assumed rate of return, that employees would receive on annuity savings, was placed on the ballot but defeated by the citizens of Detroit, allowing & sanctioning the continuation of bonus distributions (annuity interest & 13th checks). In 2011 The City ended the practice of giving guaranteed minimum returns & bonus distributions as a result of a new City ordinance. Further, under bankruptcy law, the ASF Recoupment "look-back" period would only be two years prior to the bankruptcy filing. Since the practice was stopped in 2011, there should be little to nothing to recover. U.S.11 – 548(e)(1) is the only provision that allows 10-year look-back and it requires the debtor to have, among other things, transferred to a self-settled trust that benefits the debtor **and** to have done so with actual intent to hinder, delay or defraud other creditors.

2. The Detroit EM recently was forced to admit that there was a **$15 million dollar** accounting error in The City's pension calculations; however, such error was only admitted when a court-appointed expert complained to the Court that The City would not give her the data and other information it relied upon to make the assessments made in the Plan(s) of Adjustment. This **$15 million dollar** calculating error calls into question the reliability of all of the numbers and calculations relied upon by the City in determining that the General

- 1 -

Retirement System ("GRS") and Police and Fire Retirement System ("PFRS") are underfunded and to what degree such underfunding may exist.

3. The Michigan Constitution as well as the City of Detroit's charter prohibits the City of Detroit from impairing or reducing the pensions of Detroit retirees. One must conclude that any diminishing of pension in the city of Detroit's bankruptcy has to be made up by the State of Michigan. One must further conclude that in order for the State of Michigan to have pension protection requirement, that is in the constitution, sidestepped, the State of Michigan would have to file for bankruptcy and have the constitution set aside. But states cannot file for bankruptcy. Therefore, any diminishing of city pensions, resulting from the Detroit bankruptcy, to be made whole, is the obligation of the State of Michigan.

4. A "YES" vote does NOT guarantee that the City of Detroit will not increase the cuts to the pensions by a higher percentage after the Plan is approved. For instance, as it relates to the GRS, the Plan of Adjustment proposes that if pensioners in that system *vote* "Yes" (to approve the Plan), they will *receive* a 4.5 reduction in their pensions, subject to other "preconditions." If they vote "NO" (to disapprove The Plan), The Plan proposes that the GRS pensioners receive a 27 cut; however, a footnote states that even if the GRS pensioners vote "YES," they can still *receive* the same amount of a reduction they would have received if they voted "NO," if any of the other funding parties do not make their promised contribution. A "YES" vote gives the City a blank check to do whatever it deems necessary in the future with respect to making cuts to the pensions.

5. A vote "YES" to approve the Plan also serves to give up all rights to appeal any issue related to the bankruptcy, *even* if it is later determined that the lawyers and auditors who prepared The Plan were wrong or misleading in the financial assessments, estimations, analysis and projections. The Notice regarding The Plan provides: "If you vote to accept the Plan: You may be giving up any right you may have to sue the State of Michigan, the City or other entities specifically protected by the Plan releases, to try to recover the full amount of your pension ...." I object to the confirmation of the Plan because I would *never* voluntarily *give* up my right to appeal or object to the unconscionable actions being taken with respect to the City's bankruptcy.

6. Pensions paid by the GRS and PFRS are not future monetary gifts bestowed upon City of Detroit retirees; they were part of the compensation packages offered to City of employees who worked for lower salaries without sufficient merit and cost of living increases, under the promise that they would receive a modest retirement payment upon retiring from the City of Detroit.

7. Pensioners are being asked to enter into an Adhesion Contract with The City. An Adhesion Contract is a contract in which one party has all the bargaining power and uses it to write the contract primarily to his or her own advantage; it is NOT freely bargained. Adhesion Contracts are unconscionable because they are so unfair to a weaker party that a court will refuse to enforce them. Because a "YES" also gives up all rights of appeal, then the pensioners would be foreclosed from ever asserting that the agreement is an Adhesion Contract and is, therefore, enforceable.

8. The State of Michigan has already demonstrated that it does not deal honestly and fairly with the City of Detroit and its residents when it reneged on a revenue sharing deal entered into when Dennis Archer was Mayor of Detroit. The State cannot, therefore, be trusted to fulfill its obligations under the "Grand Bargain."

9. No one has explained how $816 million in funding from outside sources (the non-profit corporation the operates the DIA, charitable foundation and the State of Michigan) plugs a hole which the EM initially said was $18 Billion dollars, then later had to admit was only approximately $6 billion dollars. Nonetheless, the disparity between the alleged pension shortfall and the amount of money being contributed is too large to provide any degree of comfort with respect to whether the pension cuts are necessary, at all.

10. Finally, admitted calculation errors in the 10-year look back regarding the ASF Recoupment (Annuity Savings Fund) which give further reason for a lack of comfort with this whole process.

For the foregoing reasons, I, Dionne L. Williams, hereby object to the Bankruptcy Court's confirmation of the City of Detroit's Fourth Amended Plan of Adjustment.

Respectfully submitted,

*[signature]*

DIONNE L. WILLIAMS, Class 11 Creditor
3106 COOLIDGE HWY APT 202
ROYAL OAK MI 48073
Zoom925@yahoo.com

DATED: July 11, 2014