## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

In re

CITY OF DETROIT, MICHIGAN,

                Debtor.

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

---

**REPLY BRIEF OF THE OFFICIAL COMMITTEE OF RETIREES IN FURTHER SUPPORT OF OBJECTION TO MOTION FOR TEMPORARY ALLOWANCE OF CLAIM OF THE MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT PURSUANT TO RULE 3018(a)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

ARGUMENT ........................................................................................................................ 1

    I.     MID Ignores The Release And Express Provisions of The 2009 Settlement Agreement Which Are Dispositive of its Misrepresentation Claims ............................ 1

    II.    MID Abandons the Principal Misrepresentation Allegations of its Complaint and Now Attempts to Substitute New Allegations That are Legally Deficient and Based on Mischaracterized Testimony ................................................................. 4

    III.   MID Fails to Address The Deficiencies in its "Expert's" Testimony Which Render it Unreliable and Inadmissible ............................................................................. 6

    IV.   MID Fails to Address Additional Dispositive Arguments ............................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbo* v. *Wireless Toyz Franchise, L.L.C.*,
    No. 304185, 2014 WL 1978185 (Mich. Ct. App. May 13, 2014) ............................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................4

*Barclae v. Zarb*,
    834 N.W.2d 100 (Mich. Ct. App. 2013) ...............................................................................3

*Ram Intern., Inc. v. ADT Sec. Services, Inc.*,
    555 Fed. Appx. 493 (6th Cir. 2014) ......................................................................................3

*Uhl v. Komatsu Forklift Co.*,
    512 F.3d 294 (6th Cir. 2008) ................................................................................................3

RULES AND STATUTES

Fed. R. Civ. P. 9(b) .......................................................................................................................4

The Official Committee of Retirees (the "**Committee**") has objected [Dkt. 5135, the "**Committee Objection**"] to the Motion for Temporary Allowance of Claim of the Macomb Interceptor Drain Drainage District ("**MID**") pursuant to Rule 3018(a) [Dkt. 5155] (the "**Temporary Allowance Motion**") and submitted an initial brief in support of the Committee Objection [Dkt. 6013] (the "**Committee Brief**").[1] The Committee submits this reply brief pursuant to the Court's June 25, 2014 minute entry, and states as follows:

1. MID's brief in support of its Temporary Allowance Motion [Dkt. 6061] (the "**MID Brief**") fails to address multiple dispositive issues and misstates fact and law. In short:

- MID ignores the release and express provisions of the 2009 Settlement Agreement which are dispositive of its misrepresentation claims;

- MID abandons the principal misrepresentation allegations of its Complaint and now attempts to substitute new allegations that are legally deficient and based on mischaracterized testimony;

- MID fails to address the deficiencies in its expert's testimony which render it unreliable and inadmissible;

- Nor does MID meaningfully address that the Claims are barred by *Res Judicata*; and finally

- MID ignores the obvious point that the City has immunity from tort claims.

## ARGUMENT

**I. MID Ignores The Release And Express Provisions of The 2009 Settlement Agreement Which Are Dispositive of its Misrepresentation Claims**

2. MID does not address the release set forth in the 2009 Settlement Agreement. It has no point of argument at all as to this dispositive matter. It shrugs off the 2009 Settlement Agreement (which contains the release) in its statement of facts with the suggestion that Macomb

---

[1] Capitalized terms set forth in this reply brief and not otherwise defined herein shall have the same meaning as in the Committee Brief.

entered into that Agreement on the basis of purported "misrepresentations" that "there were no irregularities and that the total amount charged by Inland for the 15 Mile Project was legitimately incurred and paid." MID Brief at pg. 7. As support for this vague allegation, MID cites to the deposition testimony of Robert Walter (senior assistant corporation counsel assigned to represent the DWSD). *Id*. (citing Walter Dep. 73:12-74:19). Contrary to MID's assertions, Mr. Walter did not acknowledge or otherwise reference any misrepresentation made by the City leading up to May 2009. *See* Walter Dep. 73:12-74:19.[2] MID also cites the declaration of Anthony V. Marrocco (Macomb Public Works Commissioner) ("**Marrocco**"),[3] which references an alleged misrepresentation of Victor Mercado (former DWSD director) alleged to have occurred (in response to Marrocco's 2009 alleged inquiry) after Mercado's employment with DWSD, which ended in 2008. *See* MID Brief at pg. 18 (citing Marrocco Decl. ¶ 3);[4] Marrocco Decl. ¶ 13 (recording Mercado's response to an inquiry described in Marrocco Decl. ¶¶ 8-10). Even apart from the timing, Mercado's knowledge cannot be imputed to the City because he was acting adversely to his principal, as explained in the Committee Brief. Committee Brief, ¶ 16. Indeed, throughout its brief, MID completely ignores this critical imputation principle. Finally, the cited testimony of William Misterovich (Macomb Deputy Commissioner) that "Detroit assured us [the numbers] were accurate"[5] fails to identify a specific time, place or speaker and is thus deficient as a matter of law.

---

[2] MID's citation of the Walter Dep. is merely one of many instance in which MID mischaracterizes testimony to make an unsupported assertion.

[3] The Declaration of Anthony V. Marrocco is attached as Exhibit A to the MID Brief [Dkt. 6016-1] (hereinafter referred to as the "**Marrocco Decl.**")

[4] Paragraph 3 of the Marrocco Decl. does not reference any express representation. Presumably, MID intended to cite paragraph 13 of the Marrocco Decl.

[5] MID Brief at pg. 7 (citing Misterovich Designation at 24:14-25:6).

3. In sum, MID provides no credible or legally sufficient basis to ignore the release in the 2009 Settlement Agreement. Moreover, MID's deficient "misrepresentations" wholly ignore and squarely contradict the integration clause set forth in paragraph 9.B. of the 2009 Settlement Agreement, which states:

> This Agreement, and the Exhibits, contains the entire agreement between the Parties with regard to the matters addressed in this Agreement. ***No Party has made any representations except those expressly set forth in this Agreement***, and no rights or remedies are, or shall be, acquired by any Party by implication or otherwise unless expressly set forth in this Agreement.

(2009 Settlement Agreement, ¶ 9.B.) (emphasis added).

4. A mere allegation of fraudulent inducement cannot override an integration clause as to matters that are within the scope of the contract. *Ram Intern., Inc. v. ADT Sec. Services, Inc.*, 555 Fed. Appx. 493, 500 (6th Cir. 2014) (dismissing fraud in the inducement claim where relied upon oral representation that was within the scope of a sales agreement); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) ("fraud in the inducement is not available for a breach of a contract's terms, lest fraud in the inducement claims swallow all breach-of contract claims …").[6] The 2009 Settlement Agreement specifically addresses the "debt service associated with the cost of repairs of the 2004 Collapse"[7] but is absent any of MID's purported representations. *Ram Intern., Inc.*, 555 Fed. Appx. at 500.

---

[6] MID attempts to discredit the force of integration clauses by ignoring 6th Circuit and Eastern District of Michigan precedent and citing, instead, authority that does not address the facts at issue - a multi-million dollar asset acquisition between two sophisticated parties who negotiated for detailed express representations and warranties and a merger clause. Thus, MID cites *Abbo* v. *Wireless Toyz Franchise, L.L.C.*, No. 304185, 2014 WL 1978185 (Mich. Ct. App. May 13, 2014) (unpublished state court opinion addressing agreement between franchisor and franchisee)*; Barclae v. Zarb*, 834 N.W.2d 100 (Mich. Ct. App. 2013) (which in fact holds that plaintiff failed to state claim that asset purchase agreement was fraudulently induced).

[7] (Settlement Agreement, ¶ 1.A.(iii).)

3

5.  In sum, MID cannot avoid the release set forth in the 2009 Settlement Agreement.  It has not advanced fact or argument for the Court to conclude otherwise.

**II. MID Abandons the Principal Misrepresentation Allegations of its Complaint and Now Attempts to Substitute New Allegations That are Legally Deficient and Based on Mischaracterized Testimony**

6.  The MID Brief abandons the key misrepresentations set forth in the Complaint attached to its proof of claim.  It fails to reference the (i) transfer of all intangible and tangible assets under the 2010 Acquisition Agreement or (ii) representation of certain City officials that the City to abided by applicable law.  MID, instead, notes a new set of disjointed and deficient allegations while wholly ignoring Fed. R. Civ. P. 9(b) and the requirements of *Iqbal v. Ashcroft*, 556 U.S. 662 (2009).

7.  MID first points to an alleged representation by Mercado to Anthony Marrocco in or around 2009 that "the total charges of more than $54 million for the 15 Mile Project was the result of an arm's length transaction undertaken without irregularities."  *See* MID Brief at pg. 18 (citing Marrocco Decl. ¶ 3); see paragraph 2 *supra*.  As just noted, Mercado was not an employee of the City in 2009; his knowledge cannot be imputed to the City; the representation addresses the same subject matter set forth in written agreements that were signed by MID and contained integration clauses.  In short, the alleged Mercado misrepresentation is not a proper basis for MID's misrepresentation claims.

8.  Next, MID asserts that "the City [misrepresented] that 'DWSD is not aware of any known, threatened or pending claims…'" related to the facilities that comprise the Macomb System.  March MID Reply at pg. 19 (citing Ex. 4 to Marrocco Decl.)[8]  MID's supporting

---

[8] The document to which MID cites is incomplete and does not contain the quoted language.  In any event, the same document appears to have been marked as Exhibit 7 to the Hupp Deposition.  A complete copy of Exhibit 7 to the Hupp Deposition is attached hereto as Exhibit 1.

4

citations amply demonstrate its gross mischaracterization of testimony and facts. A complete version of the MID exhibit (authored by outside counsel for MID), which was not attached to the MID Brief, but attached hereto as **Exhibit 1**,[9] reads that: "DWSD is not aware of any known, threatened or pending claims *other than those identified in Item 30,*" and Item 30 discloses, among other things, "claims and suits arising out of [the] 15 Mile collapse."[10]

9. MID fails to show any facts whatsoever to demonstrate that the alleged representation as to, threatened or pending claims, related to the Macomb System facilities was false or made with intent to defraud when allegedly made either in March 2009 or at any time prior to the 2010 Acquisition Agreement. Specifically, MID argues that the City employees had actual knowledge of contemplated criminal charges pertaining to overcharges on the Macomb System. But MID irresponsibly mischaracterizes testimony of the employees it references. MID asserts that Shukla (Assistant Director of Engineering) admitted that the "federal investigation was targeting the irregularities and *overcharges* on DWSD Contract CS-1368, including the 15 mile Project …" MID Brief at pg. 9 (emphasis added) (citing Shulka Dep. 71:4-73:7). At his deposition, Shukla was asked specifically asked whether "excessive charges" were the subject of questioning from federal agents and answered: "*No, they didn't ask me about excessive charges*." Shukla Dep. 116:24-25 (emphasis added).

10. The testimony of Latimer and Walter, additional employees referenced by MID, demonstrates that they did not have any knowledge that the federal criminal investigation related to the Macomb System facilities. Latimer (Deputy Director of DWSD) testified that he did not remember even being questioned about the "sinkhole" project. Latimer Dep. 19:13-17. Walter

---

[9] MID appears to have intended to attach a complete copy of Exhibit 7 to the deposition of Craig Hupp.

[10] *See* Exhibit 1 hereto (emphasis added).

5

13-53846-tjt    Doc 6094    Filed 07/16/14    Entered 07/16/14 23:57:41    Page 8 of 11

testified that he did not know what contracts were being investigated, he was simply asked about normal contracting procedures. Walter Dep. 16:7-15.

11. Finally, the alleged misrepresentation as to pending or threatened claims addresses the same subject matter as the 2009 Settlement Agreement and the 2010 Acquisition Agreement, each of which contain an integration clause. The representation is not a proper basis for MID's misrepresentations claims.

12. In sum, MID's new allegations do not support actionable misrepresentation claims.

### III. MID Fails to Address The Deficiencies in its "Expert's" Testimony Which Render it Unreliable and Inadmissible

13. MID completely fails to come to grips with the utter unreliability and inadmissibility of the testimony of its expert, Lyle Winn. MID characterizes Mr. Winn's work as "the estimate prepared by a 40 year veteran." MID Brief at pg. 30. In fact, the "estimate" on which MID relies was not prepared by Mr. Winn or under his supervision, as he made clear at his deposition. Winn Dep. 20:15-22-11. It was prepared in March 2011 by a Ms. Nancy Shirkey, who is no longer with Mr. Winn's firm. *Id*.

14. The methodology utilized (as Mr. Winn understands it) was to analyze the initial estimate prepared by the contractor (Inland) back in 2004 and compare that analysis with the final total cost. *See* Exs. 2 and 4 to Winn Dep. For example, this "expert" analysis shows that costs for "bypass pumping" exceeded the 2004 budget by approximately $1.15 per month. Ex. 4 to Winn. Dep. at pg. MIDDD913. But neither Mr. Winn nor to his knowledge Shirkey (the engineer who performed the analysis three years ago) did the work to determine why there was such an increase.

[Ms. Hathaway] Q. Did she attempt to determine what the charges were that

|  |  | were greater than budget for the bypass pumping? I mean, she has down here, for example, pump rental, stand-by generator, stand-by pump rental, bypass pumping maintenance, electrical services, Clinton-Fraser bypass. Did you or she attempt to determine where the increase in costs were that are shown above the black line? |
|---|---|---|
| [Mr. Winn] | A. | From the documents we've been provided, we're not able to make that connection between the two. |
|  | Q. | Why not? |
|  | A. | In one respect there's the budget amount that itemizes the amount of different types of work and not who's performing it. In the final estimate, there is only a summary of the amounts provided to each subcontractor but not what they did. In the documents we have in between, there's not enough information that we could tie it together. |

Winn Dep. 35:9-36:1.

15. Even Mr. Winn acknowledges that "a forensic analysis has yet to be completed … ." Winn Declaration, ¶ 14. His deposition testimony is dispositive: "All I have is the beginning and the final summary … I don't know why their costs changed." Committee Brief, ¶ 40 (citing Winn Dep. 80:7-81:9).

16. In sum, MID has not offered any evidence to prove its alleged damages.

## IV. MID Fails to Address Additional Dispositive Arguments

17. MID does not meaningfully address that its claims are barred by *Res Judicata*. The MID Brief ignores completely arguments put forward at Committee Brief, ¶¶ 44-47: (a) Co-parties may be bound by *res judicata* if they are found to be adverse; (b) Standing may be a source of *res judicata* even where a decision is not on the merits; (c) a subsequent litigation involving the same facts and circumstances gives rise to claim preclusion.

18. MID ignores, throughout its thirty-three page brief, the obvious point that the City has immunity from tort claims. Committee Brief, ¶¶ 48-50.

7

13-53846-tjt    Doc 6094    Filed 07/16/14    Entered 07/16/14 23:57:41    Page 10 of 11

## CONCLUSION

For the reasons stated, the Temporary Allowance Motion should be denied.

Dated: July 16, 2014
New York, New York                                             Respectfully submitted,

By: /s/ Claude D. Montgomery
Claude D. Montgomery                        Sam Alberts
Carole Neville                              Dan Barnowski
DENTONS US LLP                              DENTONS US LLP
1221 Avenue of the Americas                 1301 K Street, NW, Suite 600 East Tower
New York, New York 10020                    Washington, DC 20005
Tel:   (212) 768-6700                       Tel: (202) 408-6400
Fax:   (212) 768-6800                       Fax: (202) 408-6399
claude.montgomery@dentons.com               sam.alberts@dentons.com
carole.neville@dentons.com                  dan.barnowski@dentons.com

BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins
Paula A. Hall
401 South Old Woodward, Suite 400
Birmingham, Michigan  48009
Direct:  (248) 971-1711
Cell:  (248) 882-8496
Fax:  (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*