# U.S. Bankruptcy Court
## Eastern District of Michigan (Detroit)
## Bankruptcy Petition #: 13–53846–swr

*Date filed:* 07/18/2013

*Assigned to:* Judge Steven W. Rhodes
Chapter 9
Voluntary
No asset

| | | |
|---|---|---|
| ***Debtor In Possession*** **City of Detroit, Michigan** 2 Woodward Avenue Suite 1126 Detroit, MI 48226 WAYNE–MI Tax ID / EIN: 38–6004606 | represented by | **Bruce Bennett** 555 S. Flower Street 50th Floor Los Angeles, CA 90071 (213) 489–3939 Email: bbennett@jonesday.com |

**Judy B. Calton**
Honigman Miller Schwartz &Cohn LLP
2290 First National Building
Detroit, MI 48226
(313) 465–7344
Fax : (313) 465–7345
Email: jcalton@honigman.com

**Eric D. Carlson**
150 West Jefferson
Suite 2500
Detroit, MI 48226
313–496–7567
Email: carlson@millercanfield.com

**Tamar Dolcourt**
500 Woodward Ave.
Suite 2700
Detroit, MI 48226
313–234–7161
Email: tdolcourt@foley.com

**Timothy A. Fusco**
150 West Jefferson
Suite 2500
Detroit, MI 48226–4415
(313) 496–8435
Email: fusco@millercanfield.com

**Eric B. Gaabo**
1650 Frist National Building
Detroit, MI 48226
(313) 237–3052
Email: gaabe@detroitmi.gov

**Jonathan S. Green**
150 W. Jefferson
Ste. 2500

Detroit, MI 48226
(313) 963–6420
Email: green@millercanfield.com

**David Gilbert Heiman**
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586–7175
Email: dgheiman@jonesday.com

**Robert S. Hertzberg**
4000 Town Center
Suite 1800
Southfield, MI 48075–1505
248–359–7300
Fax : 248–359–7700
Email: hertzbergr@pepperlaw.com

**Deborah Kovsky–Apap**
Pepper Hamilton LLP
4000 Town Center
Suite 1800
Southfield, MI 48075
(248) 359–7300
Fax : (248) 359–7700
Email: kovskyd@pepperlaw.com

**Kay Standridge Kress**
4000 Town Center
Southfield, MI 48075–1505
(248) 359–7300
Fax : (248) 359–7700
Email: kressk@pepperlaw.com

**Stephen S. LaPlante**
150 W. Jefferson Ave.
Suite 2500
Detroit, MI 48226
(313) 496–8478
Email: laplante@millercanfield.com

**Heather Lennox**
222 East 41st Street
New York, NY 10017
212–326–3939
Email: hlennox@jonesday.com

**John A. Simon**
500 Woodward Avenue
Suite 2700
Detroit, MI 48226
(313) 234–7100
Email: jsimon@foley.com

**Marc N. Swanson**
Miller Canfield Paddock and Stone, P.L.C
150 W. Jefferson
Suite 2500
Detroit, MI 48226
(313) 496–7591
Email: swansonm@millercanfield.com

| | | |
|---|---|---|
| *U.S. Trustee*<br>**Daniel M. McDermott** | represented by | **Sean M. Cowley (UST)**<br>United States Trustee<br>211 West Fort Street<br>Suite 700<br>Detroit, MI 48226<br>(313) 226−3432<br>Email: Sean.cowley@usdoj.gov |
| | | **Richard A. Roble (UST)**<br>United States Trustee<br>211 West Fort Street<br>Suite 700<br>Detroit, MI 48226<br>(313) 226−6769<br>Email: Richard.A.Roble@usdoj.gov |
| *Creditor Committee*<br>**Committee of Unsecured**<br>**Creditors**<br>*TERMINATED: 03/03/2014* | represented by | **Brett Howard Miller**<br>1290 Avenue of the Americas<br>40th Floor<br>New York, NY 10104<br>(212) 468−8051<br>Email: bmiller@mofo.com,whildbold@mofo.com<br>*TERMINATED: 03/03/2014* |
| | | **Geoffrey T. Pavlic**<br>25925 Telegraph Rd.<br>Suite 203<br>Southfield, MI 48033−2518<br>(248) 352−4700<br>Fax : (248) 352−4488<br>Email: pavlic@steinbergshapiro.com<br>*TERMINATED: 03/03/2014* |
| | | **Mark H. Shapiro**<br>25925 Telegraph Rd.<br>Suite 203<br>Southfield, MI 48033−2518<br>(248) 352−4700<br>Fax : (248) 352−4488<br>Email: shapiro@steinbergshapiro.com<br>*TERMINATED: 03/03/2014* |
| *Creditor Committee*<br>**Charlene Hearn**<br>PO Box 6612<br>Detroit, MI 48206 | | |
| *Retiree Committee*<br>**Official Committee of Retirees** | represented by | **Sam J. Alberts**<br>1301 K Street, NW<br>Suite 600, East Tower<br>Washington, DC 20005−3364<br>(202) 408−7004<br>Email: sam.alberts@dentons.com |
| | | **Paula A. Hall**<br>401 S. Old Woodward Ave.<br>Suite 400<br>Birmingham, MI 48009<br>(248) 971−1800<br>Email: hall@bwst−law.com |
| | | **Claude D. Montgomery** |

620 Fifth Avenue
New York, NY 10020
(212) 632−8390
Email: claude.montgomery@dentons.com,docketny@dentons.com

**Carole Neville**
1221 Avenue of the Americas
25th Floor
New York, NY 10020
(212) 768−6889
Email: carole.neville@dentons.com,daniel.morris@dentons.com

**Matthew Wilkins**
401 S. Old Woodward Ave.
Suite 400
Birmingham, MI 48009
(248) 971−1800
Email: wilkins@bwst−law.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 05/06/2014 | | 4479 | Response to Discovery \\*CITY OF DETROIT'S OBJECTIONS AND RESPONSES TO SYNCORA CAPITAL ASSURANCE INC. AND SYNCORA GUARANTEE INC.'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS* Filed by Debtor In Possession City of Detroit, Michigan. (Bennett, Bruce) (Entered: 05/06/2014) |
| 05/16/2014 | | 4897 | Response to Discovery *Syncora's Subpoena Duces Tecum* Filed by Interested Party State of Michigan (RE: related document(s)3315 Request for Production of Documents). (Schneider, Matthew) (Entered: 05/16/2014) |
| 05/28/2014 | | 5128 | Transcript Order Form of Hearing May 28, 2014, Filed by Interested Parties Syncora Capital Assurance Inc., Syncora Guarantee Inc.. (Bennett, Ryan) (Entered: 05/28/2014) |
| 06/12/2014 | | 5294 | FILED UNDER SEAL − Supplemental Order Regarding Mediation Confidentiality. (Steinle, J) (Entered: 06/12/2014) |
| 06/13/2014 | | 5300 | Joint Motion to Quash *Subpoenas Duces Tecum* Filed by Interested Parties A. Paul and Carol C. Schaap Foundation, Charles Stewart Mott Foundation, Community Foundation for Southeast Michigan, Hudson−Webber Foundation, Max M. and Marjorie S. Fisher Foundation, McGregor Fund, The Ford Foundation, The Fred A. and Barbara M. Erb Family Foundation, W.K. Kellogg Foundation, William Davidson Foundation (Attachments: # 1 Exhibit Proposed Order # 2 Notice and Opportunity to Respond # 3 Certificate of Service) (Bernstein, Douglas) (Entered: 06/13/2014) |

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN | ) Case No.: 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## CITY OF DETROIT'S OBJECTIONS AND RESPONSES TO SYNCORA CAPITAL ASSURANCE INC. AND SYNCORA GUARANTEE INC.'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Federal Rules of Civil Procedure 26 and 34, as made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7026, 7034, 9014, and 9016, the City of Detroit, Michigan (the "City") hereby submits the following objections and responses to Syncora Capital Assurance Inc. and Syncora Guarantee Inc.'s First Request for the Production of Documents to the City of Detroit (the "Document Requests").

## GENERAL OBJECTIONS

The City incorporates the following general objections into each of its specific responses to these Document Requests served by Syncora Capital Assurance Inc. and Syncora Guarantee Inc. (the "Objectors"). The assertion of the

same, similar, or additional objections, or a partial response to any individual request, does not waive any of the City's general objections.

1.    The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they seek to impose a burden or obligation beyond those required by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the local rules of the United States Bankruptcy Court for the Eastern District of Michigan, any other applicable procedural rules, or the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment ("Scheduling Order"), or the most recently filed version of that Order. Specifically, the City objects to any request which seeks to require the disclosure of expert materials prior to the time specified in the Scheduling Order for disclosure of experts.  *See* Fourth Amended Scheduling Order, at ¶ 9 (June 10, 2014, is the deadline to file list of experts).

2.    The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent that they seek production of documents or things that are subject to the attorney-client privilege, attorney work product doctrine, settlement or mediation privilege (*see* Dkt. 0322), the common interest doctrine and/or any other applicable privilege or immunity, or to a protective order and/or stipulation of confidentiality between the City and any

third party.  Further, inadvertent production of any privileged or otherwise protected documents in response to these Document Requests shall not be deemed a waiver or impairment of the City's rights or any claim of privilege or immunity.

3.    The City objects to each and every one of these Document Requests, and the instructions and definitions therein, as unduly burdensome and oppressive, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they require the City to provide a privilege log containing, with respect to each document withheld on a claim of privilege, a statement describing the document and the nature of the privilege.  The City will not provide such a privilege log with its productions of documents in response to these Document Requests.

4.    The City objects to each and every one of these Document Requests, and the instructions and definitions therein, as unduly burdensome and oppressive, and not reasonably calculated to lead to the discovery of admissible evidence to the extent they require the City to provide a log containing, with respect to each document that has been destroyed, lost, mislaid, or is otherwise missing, a statement describing the document and information regarding the circumstances under which it was destroyed, lost, mislaid, or otherwise missing.  The City will not provide such a log with its productions of documents in response to these Document Requests.

5.　　The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they seek information that is confidential or proprietary business information, trade secrets, other proprietary information, intellectual property, and/or commercially sensitive information of a third party to whom the City owes a legal obligation of non-disclosure.  Such information will only be provided pursuant to a court-entered protective order and with the consent of the operative third parties.

6.　　The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they request information protected from discovery by any right to privacy or any other applicable privilege, including the right to privacy of third parties, or by the City's obligations under applicable law to protect such confidential information.

7.　　The City's production of documents will include materials that contain third party personally identifiable information (as that term is defined in the Protective Order (Dkt. 0688)).  Pursuant to the terms and conditions set forth in the Protective Order, the City reserves the right to redact such personally identifiable information from any documents that may be produced in response to these Document Requests.

8.　　The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they seek discovery of

electronic information that is not reasonably accessible, on the grounds of undue

burden and cost. By stating that it will produce or make available information

responsive to a particular Document Request, the City represents that it will

produce responsive, non-privileged information subject to reasonable limitations

on the scope of the search, review, and production of such information due to the

cost and burden of production.

9. The City objects to each and every one of these Document Requests,

and the instructions and definitions therein, as unduly burdensome and oppressive

to the extent they purport to require the City to search facilities and inquire of its

officers, employees, representatives, attorneys, advisors and/or agents other than

those facilities and officers, employees, representatives, attorneys, advisors and/or

agents reasonably expected to have responsive, non-privilege documents.

Accordingly, the City's responses to these Document Requests are based upon (1)

a reasonable search, given the time permitted to respond to these Document

Requests, of facilities and files reasonably expected to possess responsive, non-

privilege documents and (2) inquiries of the City's officers, employees,

representatives, attorneys, advisors and/or agents who could reasonably be

expected to possess responsive, non-privilege documents. To that end, the City

will not produce documents from the City's attorneys – namely, Jones Day, Pepper

Hamilton LLP and Miller, Canfield, Paddock, and Stone, P.L.C, unless it indicates otherwise in connection with a specific request.

10. The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they seek disclosure of information not within the City's possession, custody, or control.

11. The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent they seek information that is neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence.

12. The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent that any term, phrase or word used therein is vague and ambiguous, subject to varying interpretation, requires subjective knowledge by any other party other than the City, or involves issues of law subject to resolution by the court. The City will respond to each and every Document Request to the extent possible, based on the most objectively reasonable interpretation of each such term, phrase or word in the Document Request. To that end, any terms not otherwise defined by these Document Requests, and the instructions and definitions therein, will be given the definitions reflected in the most recently filed version of the City's Chapter 9 Plan for the Adjustment of Debts of the City of Detroit (the "Plan") and the most recently filed

- 6 -

13-53846-tjt Doc 6104-9 Filed 07/17/14 Entered 05/06/14 12:50:53 Page 10 of 82
13-53846-swr Doc 4479 Filed 05/06/14 Entered 05/06/14 20:01:53 Page 10 of 42

10

version of the City's Disclosure Statement With Respect to Chapter 9 Plan for the Adjustment of Debts of the City of Detroit (the "Disclosure Statement"). In addition, for the purposes of its responses to these Document Requests, the City will define the terms "Plan," "Disclosure Statement," and "Scheduling Order" to mean the most recently filed versions of those documents.

13.    The City objects to each and every one of the Objector's definitions and requests to the extent they are or purport to be so comprehensive as to be impossible or unduly burdensome and expensive to comply with literally. Many definitions and requests are overly broad, vague, unduly burdensome, and do not describe the requested documents with reasonable particularity. The City also objects to each and every one of these Document Requests, and the instructions and definitions therein, as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent that they call for production of "all" documents relating to an individual topic or subject area. Specifically, the City objects to the phrase "all" as it is used throughout these Document Requests to the extent that it requires the City to search for and review millions of pages of documents, many of which will have no relevance to this litigation, in order to identify each and every document that may possibly be responsive to a request.

- 7 -

13-53846-tjt  Doc 6104-3  Filed 07/17/14  Entered 07/17/14 12:50:58  Page 17 of 82
13-53846-swr  Doc 4479  Filed 05/06/14  Entered 05/06/14 12:50:58  Page 17 of 82

11

14.     The City objects to each and every one of these Document Requests to the extent that they either do not specify a responsive time period or specify a time period that is not relevant to the Objector's claims or defenses as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, unless otherwise indicated, the City's responses to these Document Requests are limited to the time period of January 1, 2013 through the date of the City's response to these Document Requests.

15.     The City objects to the definition of "City," "you" and "your" insofar as they purport to include "the City of Detroit, Michigan, as well as any of its past or present divisions, such as, but without limitation, the Detroit Arts Commission, and departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, advisors, and all other persons acting or purporting to act on their behalf, including Kevyn D. Orr acting as Emergency Manager and any successors" because such an expansive definition is overly broad, unduly burdensome, and potentially calls for the production of documents that are not within the possession, custody, or control of the City, or its advisors, Ernst & Young, Conway MacKenzie, and Miller Buckfire.

16.     The City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent that the information sought is unreasonably cumulative or duplicative, or is obtainable from some other

source that is more convenient, less burdensome, or less expensive.  Specifically, the City objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent the information sought is equally available to the Objectors, including information and documents that are publicly available and/or already in the Objector's possession, as providing such information would be unduly burdensome.

17.  The City objects to each and every one of these Document Requests, and the instructions and definitions therein, insofar as they constitute interrogatories that Plaintiffs have drafted in the form of document requests in an effort to avoid the 25-interrogatory limit under Federal Rule of Civil Procedure 33, as made applicable to this proceeding by the Federal Rules of Bankruptcy Procedure 7026, 7033, 9014, and 9016.  The City further objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent that any of the requests, definitions, or instructions purport to require the City to create documents in order to respond to any particular request.

18.  The City's general and specific objections are made based on its understanding and interpretation of each Document Request.  The City reserves the right to supplement its objections should the Objectors subsequently put forth an interpretation of any Document Request differing from the City's interpretation of the same language.  The City reserves the right to object on any ground at any time

to other discovery requests Objectors may propound involving or relating to the same subject matter of these Document Requests.

19.     By responding to these Document Requests, the City is not implicitly or explicitly agreeing with or otherwise adopting the Objector's characterizations or definitions contained therein, or admitting or conceding that the information sought is likely to lead to the discovery of admissible evidence.  Except for any facts explicitly admitted in the City's objections or responses, no admission of any nature whatsoever is to be implied by or inferred from any statement anywhere in this document.

20.     The City reserves the right to supplement these objections and responses and to assert additional objections to these Document Requests and the production of documents as necessary.

21.     Each of these General Objections is incorporated by reference into each of the objections set forth below and each response set forth below is made without waiving any of these General Objections.

## REQUESTS FOR PRODUCTION

1.     All inventories created in the past five years of the objects and works of art in the Collection.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 1:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody,

or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

2.    All documents and communications relating to the conveyance of the DMA assets from the DMA to the City of Detroit in 1919, including, but not limited to, contracts, deeds, and other DMA records.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 2:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

3.    Provenance listings for every object and work of art in the Collection.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 3:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

4.    All documents and communications relating to any restrictions on the objects and works of art in the Collection, including, but not limited to, restrictions on exhibition, storage, conservation, deaccession, sale, exchange, or loan.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 4:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody,

or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

5.    Documents sufficient to identify any work of art in the Collection that was commissioned by the DIA Corp., the Founders Society, or the City.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 5:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

6.    All documents and communications relating to the deaccession, sale, exchange, auction, or disposal of any object or work of art held or owned by DIA Corp., the Founders Society, or the City, including, but not limited to, all documents and communications relating to any indications of interest in bidding on any pieces in the Collection if they were sold or offered for sale.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 6:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

7.    All communications that the City (including its advisors and investment bankers) had with any individuals, investors, art collectors, or corporations relating to the sale or purchase of the Collection or any pieces in the Collection.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 7:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

8.    All documents and communications provided to the Internal Revenue Service that relate to the deaccession, auction, sale, exchange, loan, or other disposition of any object or work of art by DIA Corp., the Founders Society, or the City, including, but not limited to, any IRS Forms 8282.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 8:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

9.    All documents, communications, and notifications sent to any donor or settlor that relate to the deaccession, sale, auction, exchange, or disposal of any of the objects or works of art by DIA Corp., the Founders Society, or the City.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 9:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

10. All documents, communications, and notifications sent to or received from the Attorney General that relate to the deaccession, sale, auction, exchange, or disposal of any object or work of art by DIA Corp., the Founders Society, or the City.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 10:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

11. The 1997 Operating Agreement.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 11:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

12. The Collections Management Policy.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 12:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has

agreed to produce and/or make available for inspection and copying, including the Collections Management Policy.

13. All documents and communications relating to the procedures of the City, the Founders Society, or DIA Corp. for accepting or rejecting restricted donations, gifts, and bequests of works of art or funds.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 13:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

14. All documents and communications relating to the procedures for the deaccession, auction, exchange, sale, loan, or other disposition of any object or work of art held or owned by DIA Corp., the Founders Society, or the City that is subject to restrictions on deaccession, auction, exchange, sale, loan, or other form of alienation.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 14:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

15. Documents sufficient to show the attendance at DIA Corp. on a yearly and monthly basis.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 15:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

16. Documents sufficient to show the attendance at special exhibits or demonstrations held by DIA Corp.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 16:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

17. Documents sufficient to show all past and present members of DIA Corp.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 17:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

18. All visitor surveys, participation surveys, audience surveys, population surveys, or visit surveys relating to DIA Corp.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 18:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

19. All documents relating to the Christie's valuation.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 19:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

20. All external and internal communications relating to the Christie's Valuation, including, but not limited to, communications with Christie's, DIA Corp., the Foundations, or the Attorney General.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 20:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

21.     All past and current insurance policies that relate to the Collection, including, but not limited to, all insurance policies obtained by DIA Corp. pursuant to sections F(15)(a) and (b) of the 1997 Operating Agreement.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 21:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

22.     Documents sufficient to identify any object or work of art in the Collection that has been appraised or valued for $1 million or more.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 22:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

23.     Any and all valuations or appraisals of any object or work of art in the Collection.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 23:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as

the City understands it, and refers Objectors to the documents the DIA Corp. has agreed to produce and/or make available for inspection and copying.

24. All documents and communications relating to Attorney General Opinion No. 7272.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 24:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

25. All documents and communications relating to the Plan GRS Settlement, as that term is defined in the Plan.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 25:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

26. All documents and communications relating to the Plan PFRS Settlement, as that term is defined in the Plan.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 26:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody,

or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

27.　All documents and communications relating to the registration of any object or work of art in the Collection, or any object or work of art previously owned or held by DIA Corp., the City, or the Founders Society, as a charitable trust.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 27:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

28.　Any and all petitions or other court filings that relate to the deaccession, sale, auction, exchange, loan or other disposition of any object or work of art in the Collection or that was previously owned or held by DIA Corp., the City, or the Founders Society.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 28:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

29.　All governing documents that relate to the DIA Settlement, including, but not limited to, those documents that will be attached to the Plan as Exhibit I.A.71.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 29:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

30. All communications relating to the DIA Settlement, including, but not limited to, all communications with the Foundations, the DGRS, the DPFRS, the State, DIA Corp., or the Community Foundation for Southeast Michigan relating to the DIA Settlement.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 30:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

31. All documents and communications that relate to the transfer of the Collection to DIA Corp. pursuant to the DIA Settlement.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 31:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

32. All documents and communications that relate to any alternative efforts to realize any value for the "DIA Assets," as defined by the Plan, or the Collection, aside from the DIA Settlement.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 32:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

33.    All documents and communications relating to DIA Corp.'s role in the revitalization of midtown Detroit.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 33:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

34.    All documents relating to each judgment against the City under the Revised Judicature Act (MCL 600.93).

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 34:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

35.    All documents relating to each judgment paid by the City under the Revised Judicature Act (MCL 600.93).

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 35:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

36. All documents relating to any prior or potential sales of the City's assets in excess of $1 million including, but not limited to, Belle Isle, the Detroit-Windsor Tunnel, the Veterans' Memorial Building, any City parking facilities, and Coleman Young Airport.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 36:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

37. All documents relating to or containing any analysis conducted by the City regarding the consequences of not filing for bankruptcy.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 37:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

38.    All documents created between January 1, 2013 and the present containing calculations or analysis regarding the City's future income tax revenues, including, but not limited to, the assumptions underlying any such calculations or analysis (*i.e.*, population growth in the City, employment and property ownership in the City, and income rates in the City).

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 38:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

39.    All documents created between January 1, 2013 and the present relating to the effects of raising taxes, assessments, or fees on the City and/or its residents.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 39:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

40.    All documents created between January 1, 2013 and the present relating to the relative tax burden in the City compared to surrounding areas.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 40:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody,

or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

41. All documents relating to any analysis of the City's creditors' recoveries outside of chapter 9.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 41:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

42. All documents relating to the City's $1.5 billion reinvestment initiative, including, but not limited to, the specific initiatives that make up the $1.5 billion reinvestment initiative, the steps the City has taken to implement any of its restructuring and revitalization initiatives, the steps that the City intends to take to implement its restructuring and revitalization efforts, all financial projections and assumptions related to the reinvestment initiatives, and the City's analyses regarding the revenue generated by the reinvestment initiatives.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 42:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

43. All documents and communications relating to any partnerships between the City and private organizations regarding the City's proposed restructuring and revitalization efforts.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 43:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

44. All prior drafts of the City's 10-year projections, attached as Exhibit J to the City's Disclosure Statement [Doc. No. 2709].

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 44:

The City responds that Experts will be identified and expert reliance materials and disclosures will be produced in accordance with the Scheduling Order and as required under Bankruptcy Rules. Subject to and without waiving that objection and the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

45. Documents sufficient to show all of the assumptions in the City's 10-year projections, attached as Exhibit J to the City's Disclosure Statement [Doc. No. 2709], and the basis for each of these assumptions.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 45:

The City responds that Experts will be identified and expert reliance materials and disclosures will be produced in accordance with the Scheduling Order and as required under Bankruptcy Rules. Subject to and without waiving that objection and the general objections noted above, the City responds that it will

produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

46.    All documents and communications relating to the City's claim that the DGRS and DPFRS understated their UAAL.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 46:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

47.    All analyses regarding the size of the OPEB Claim, as that term is defined in the Plan.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 47:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

48.    All analyses regarding the vesting of OPEB Benefits, as that term is defined in the Plan.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 48:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

49.   All documents, communications, and data exchanged with Milliman in 2013.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 49:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

50.   All actuarial reports as of the last valuation date for each of the City's pension plans.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 50:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

51.   All Certified Audited Financial Reports.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 51:**

Subject to and without waiving the general objections noted above, the City refers Objectors to the City's website where its budgets may be found, and specifically to the following web address:

http://www.detroitmi.gov/Departments/Finance/tabid/86/Default.aspx.

52.    All of the documents governing each of the City's pension plans, including, but not limited to, any amendments or statutes governing each of the City's pension plans.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 52:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

53.    The most recent experience study relating to the City's pension plans.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 53:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

54.    Any plan design studies, including reports, letters, and presentations, that relate to the City's pension plans that were conducted between January 1, 2008 and the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 54:**

- 29 -

13-53846-swr   Doc 4473   Filed 05/06/14   Entered 05/06/14 20:50:59   Page 33 of 82
13-53846-tjt   Doc 6104-3   Filed 07/17/14   Entered 07/17/14 16:59:59   Page 33 of 34   33

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

55. All of the currently operative employee handbooks and summaries relating to each of the City's pension plans.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 55:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

56. All actuarial data for the following categories of individuals:

    a. Active Participants (*i.e.*, those still accruing benefits). Actuarial data should include the following:

        i. Name

        ii. Social Security Number

        iii. Code identifying benefit structure applicable to participant

        iv. Date of birth

        v. Date of hire

        vi. Date of participation

        vii. Gender

        viii. Benefit service

ix.    Vesting service

x.    Ten-year compensation history for active participants

xi.    Accrued benefits

xii.    Employee contribution account balance

xiii.    Employee contribution rate

b.    Termination Vested Participants and Active Participants with Frozen Benefits. Actuarial data should include the following:

i.    Name

ii.    Social Security Number

iii.    Code identifying benefit structure applicable to participant

iv.    Date of birth

v.    Date of hire

vi.    Date of participation

vii.    Date of termination

viii.    Gender

ix.    Accrued benefits

x.    Vesting service

xi.    Employee contribution account balance

c.    Retirees and Disabled Participants. Actuarial data should include the following:

i.    Name

ii.    Social Security Number

iii.    Code identifying benefit structure applicable to participant

<blockquote>

iv.  Date of birth

v.  Gender

vi.  Form of benefit

vii.  Beneficiary date of birth (if form provides survivorship benefits)

</blockquote>

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 56:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

57.  For each plan's actuarial assumptions, all documents relating to (a) the annual salary increase assumption by age; (b) the probabilities of retirement by age for each benefit class; (c) the turnover rates by age, sex, and benefit class; and (d) disability rates by age.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 57:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

58.  The value of any deferred retirement option plans ("DROP") account balances.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 58:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

59. All documents and communications relating to the City's analysis and estimate of recoveries for COPs under the Plan of Adjustment, including, but not limited to, the City's analyses and underlying assumptions.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 59:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

60. All documents and communications relating to any claims that the Service Corporations have against the City.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 60:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

61. Documents sufficient to show all of the operational improvements that the City intends to implement.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 61:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

62. All communications between the Service Corporations and the City.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 62:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

63. All documents created between January 1, 2005 and the present relating to the City's revenue-sharing arrangements with the State of Michigan.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 63:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

64. All communications between the City and the State of Michigan regarding State-funding, -taxation, or -revenue-sharing for the time period January 1, 2005 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 64:**

- 34 -

13-53846-swr Doc 4478 Filed 05/06/14 Entered 05/06/14 20:50:59 Page 38 of 82
13-53846-tjt Doc 6104-3 Filed 07/17/14 Entered 07/17/14 18:56:59 Page 38 of 44   38

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

65.    All documents relating to funding received by the City from the State of Michigan for any purpose from the time period January 1, 2005 to the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 65:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

66.    All documents and communications relating to any federal, state, or private money that the City of Detroit either (a) has received since January 1, 2010 or (b) expects to receive.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 66:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

67.    All City budgets from 2008 through the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 67:**

- 35 -

13-53846-swr  Doc 4479  Filed 05/06/14  Entered 05/06/14 20:50:59  Page 39 of 82     39
13-53846-tjt  Doc 6104-8  Filed 07/17/14  Entered 07/17/14 14:09:39  Page 39 of 44

Subject to and without waiving the general objections noted above, the City refers Objectors to the City's website where its budgets may be found, and specifically to the following web addresses:

(1) http://www.detroitmi.gov/DepartmentsandAgencies/BudgetDepartment/ Archive.aspx; and (2)

http://www.detroitmi.gov/Departments/BudgetDepartment/tabid/75/Default.aspx.

68. All City financial statements from 2008 through the present.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 68:**

Subject to and without waiving the general objections noted above, the City refers Objectors to the City's website where its budgets may be found, and specifically to the following web address:

http://www.detroitmi.gov/Departments/Finance/tabid/86/Default.aspx.

69. All documents, minutes, communications, testimony, presentations, or other records that relate to the DPFRS's or the DGRS's decision to support the COPs transactions.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 69:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

70. All documents, facts, information, and data that the City's expert witnesses consider or rely upon.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 70:

Subject to and without waiving the general objections noted above, the City responds that Experts will be identified and expert reliance materials and disclosures will be produced in accordance with the Scheduling Order and as required under the Federal Rules of Bankruptcy Procedure.

71.    For every revenue line item in Exhibit H to the Disclosure Statement, provide the following documents or data:

    a.    In Microsoft Excel format, comparable data for every fiscal year from 1980 through 2007;

    b.    Documents sufficient to show the related tax rates, as applicable, from 1980 to 2013;

    c.    Documents sufficient to show forecasted tax rates, as applicable, through 2017, and all assumptions and computations upon which those forecasted tax rates were based;

    d.    Documents sufficient to show all changes in any tax provision or computational element that influenced revenue (*e.g*, assessed property values) from 1980 through 2013;

    e.    Documents sufficient to show all forecasted changes in any tax provision or computational element that would influence revenue through 2017, and the effective date of each such change;

    f.    Documents sufficient to show the forecasted revenue impact of any forecasted changes in any tax provision or computational element, broken down by each year through 2017, and all assumptions and computations upon which those forecasted revenue impacts were based;

    g.    Documents sufficient to identify any variables that were assumed when determining revenue, and, for each such variable, documents sufficient to identify (a) their historical and

forecasted values from 1980 to 2017 and (b) the sources of those historical and forecasted values;

h.   All documents relating to the methodology by which the revenues were calculated or forecast;

i.   If an econometric, regression, or other statistical model was used to derive any forecasts from 1980 to the present, documents sufficient to show (i) the related regression or other equations; (ii) definitions of each explanatory and dependent variable in those equations; (iii) the historical values of those variables over the time periods studied; (iv) the sources of those historical values; (v) the forecasted values of those variables; (vi) the sources of those forecast values; and (vii) all output describing the performance of the equations or models in question.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 71:

The City objects to this document request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the City objects to this document request as overbroad insofar as it seeks documents for a time period or subject matter that is not relevant to the objectors' claims or defenses, and is therefore not reasonably calculated to lead to the discovery of admissible evidence.

72.   For the time period 1980 to the present, documents sufficient to show (a) the number of taxpayers who complied with their City income tax obligations and (b) the number of taxpayers who did not comply with their City income tax obligations.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 72:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

73. For the time period 1980 to the present, documents sufficient to show (a) the number of taxpayers who complied with their City property tax obligations and (b) the number of taxpayers who did not comply with their City property tax obligations.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 73:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

74. For the time period 1980 to the present, documents sufficient to show (a) the total payments due based on the City's income tax and (b) the total payments due but uncollected based on the City's income tax.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 74:**

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

75. For the time period 1980 to the present, documents sufficient to show (a) the total payments due based on the City's property tax and (b) the total payments due but uncollected based on the City's property tax.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 75:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

76. For the City's property tax revenue, documents sufficient to show (a) the current and forecasted aggregate taxable values; (b) the current and forecasted aggregate market value; and (c) the aggregate taxable-to-market ratios.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 76:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

77. For the City's property tax revenue, a current property tax roll in Microsoft Excel format indicating, on a parcel-by-parcel basis, (a) estimated market value; (b) taxable value; (c) total millage rate; and (d) total annual assessment.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 77:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

78.     Documents sufficient to show the City's methodology for determining the forecasted revenue from state revenue sharing for the years 2013 to 2017.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 78:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

79.     All documents and communications relating to and supporting the City's forecasted revenue from state revenue sharing.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 79:

Subject to and without waiving the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

80.     All revenue forecasts prepared by the City, Ernst & Young, or any other City consultant or advisor from January 1, 2009 to the present and the following information for each forecast:

  a.     All documents and communications relating to each revenue forecast;

  b.     Documents sufficient to show the issue date of each forecast;

  c.     Documents sufficient to show the author or authors of each forecast; and

  d.     Documents sufficient to show the purpose for each forecast.

## OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 80:

The City responds that Experts will be identified and expert reliance materials and disclosures will be produced in accordance with the Scheduling Order and as required under Bankruptcy Rules. Subject to and without waiving that objection and the general objections noted above, the City responds that it will produce non-privileged documents in its possession, custody, or control, to the extent they exist, that are reasonably responsive to this request, as the City understands it.

Dated:    May 6, 2014    Respectfully submitted,

    /s/  Bruce Bennett

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

## Certificate of Service

I, Bruce Bennett, hereby certify that the foregoing City of Detroit, Michigan's Objections and Responses to Syncora Capital Assurance Inc. and Syncora Guarantee Inc.'s First Request for the Production of Documents to the City of Detroit was filed and served via the Court's electronic case filing and noticing system on this 6th day of May, 2014.


Dated:       May 6, 2014                    /s/  Bruce Bennett
                                            Bruce Bennett

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

**STATE OF MICHIGAN'S RESPONSE TO SYNCORA'S
SUBPOENA DUCES TECUM
(DKT. #3315)**

**Document Request No. 1:** All documents and communications relating to Attorney General's Opinion No. 7272.

**Answer to Request No. 1:** No answer is required. Documents responsive to this request are within the control of the Attorney General and have been provided in a separate response as recognized in the STIPULATION AND AGREEMENT regarding Syncora Guarantee's and Syncora Capital Assurances' (hereafter Syncora) subpoena to the State of Michigan (Doc. #4309, para. 1).

**Document Request No. 2:** All documents and communications regarding the Plan GRS and Plan PFRS Settlements, as those terms are defined in the Plan, including, but not limited to, documents and

communications relating to (a) the funds that the states anticipates using or appropriating for the Plan GRS and Plan PFRS Settlements; and (b) the negotiation of the Plan GRS and Plan PFRS Settlements.

**Answer to Request No. 2:** This Request requires the production of documents and communications that are subject to the Bankruptcy Court's Mediation Order (Doc. #322). The subpoena parties agree the State is precluded from producing the requested documents. (See: Doc. #4309, STIPULATION AND AGREEMENT, para. 2.)

The State also responds, versions of the State Contribution Agreement and certain exhibits related to the GFRS and PFRS "settlement" have been filed with the Bankruptcy Court as attachments to the various Plans of Adjustment beginning with the March 31, 2014 Plan of Adjustment. These are in Syncora's possession and are available to them on the case management web site.

The State further responds, the legislation introduced in the Michigan House of Representatives related to the "GFRS and PFRS settlement" and the State's contribution, House Bills No. 5566-5575 to this Response at tab 21.

**Document Request No. 3:** All documents created between January 1, 2005 and the present relating to the City's revenue-sharing arrangements with the State of Michigan.

**Answer to Request No. 3:** The State previously provided documents satisfying this Request in part. (See: Doc. #4309, STIPULATION AND AGREEMENT, para. 3.) The required factors and criteria are attached to this Response at tab 2. Additionally, general information regarding Revenue Sharing is also provided at tab 3.

**Document Request No. 4:** All communications between the City and the State of Michigan regarding State-funding, -taxation, or -revenue-sharing for the time period January 1, 2005 to the present.

**Answer to Request No. 4:** This Request has been withdrawn and no response is required. (See: Doc. #4309, STIPULATION AND AGREEMENT, para. 4.)

**Document Request No. 5:** All documents relating to funding received by the City from the State of Michigan for any purpose from the time period January 1, 2005 to the present.

**Answer to Request No. 5:** This Request has been withdrawn and no response is required. (See: Doc. #4309, STIPULATION AND AGREEMENT, para. 5.)

**Document Request No. 6:** All documents and communications relating to any federal, state, or private money that the City of Detroit either (a) has received since January l, 2010 or (b) expects to receive.

**Answer to Request No. 6:** The subpoena parties agreed to limit this Request to "any existing summary documents in the possession of the State that identify the amounts of grant money paid to the City." (See: Doc. #4309, STIPULATION AND AGREEMENT, para. 6.) Provided at tab 22. To the extent additional documents exist they are produced with the electronic production of documents to the Official Committee of Retirees, a copy of which is also being provided to Syncora per the parties' agreement. (*Id.,* para. 7.)

Note: The State's Privilege Log will be served separately.

*/s/ Matthew Schneider*
Matthew Schneider [P62190]
Chief Legal Counsel
Attorney for State of Michigan
P.O. Box 30754, Lansing, MI 48909
(517) 373-3203
SchneiderM7@michigan.gov

Dated: May 16, 2014

4

13-53846-swr Doc 6104-37 Filed 07/16/14 Entered 07/16/14 12:50:59 Page 52 of 82
13-53846-swr Doc 4837 Filed 05/16/14 Entered 05/16/14 16:25:30 Page 4 of 8    52

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
# TRANSCRIPT ORDER FORM

111 First Street
Bay City, MI 48708

211 W. Fort Street
17th Floor
Detroit, MI 48226

226 W. Second Street
Flint, MI 48502

---

**Order Party: Name, Address and Telephone Number**

Name  **Syncora Guarantee & Syncora Capital Assurance**

Firm  **Kirkland & Ellis LLP**

Address  **300 N. LaSalle**

City, State, Zip  **Chicago, IL 60654**

Phone  **312.862.3200**

Email  **dustin.paige@kirkland.com**

**Case/Debtor Name: City of Detroit, MI**

**Case Number:**  13-53846

**Chapter:**  9

**Hearing Judge** _ Hon. Steven Rhodes

⊙ **Bankruptcy**  ◯ **Adversary**

◯ **Appeal**  **Appeal No:** _____

---

**Hearing Information** (A separate form must be completed for **each** hearing date requested.)

**Date of Hearing:** May 28, 2014 **Time of Hearing:** 10am ET **Title of Hearing:** Hearing re Detroit Bankruptcy

Please specify portion of hearing requested: ⊙ Original/Unredacted ◯ Redacted ◯ Copy (2nd Party)

⊙ Entire Hearing ◯ Ruling/Opinion of Judge ◯ Testimony of Witness ◯ Other

Special Instructions: _____

---

**Type of Request:**

⊙ Ordinary Transcript - $3.65 per page (30 calendar days)

◯ 14-Day Transcript - $4.25 per page (14 calendar days)

◯ Expedited Transcript - $4.85 per page (7 working days)

◯ CD - $30; FTR Gold format - You must download the free FTR Record Player™ onto your computer from www.ftrgold.com

**FOR COURT USE ONLY**

Transcript To Be Prepared By

_____
Date          By

Order Received:

Transcript Ordered:

Transcript Received:

**Signature of Ordering Party:**

*Dustin Paige*  Date: 5/28/14

By signing, I certify that I will pay all charges upon completion of the transcript request.

UNITED STATES BANKRUPTCY COURT **FILED**
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

2014 JUN 12 P 2:52

U.S. BANKRUPTCY
E.D. MICHIGAN-DETROIT

In re

CITY OF DETROIT, MICHIGAN,

　　　　　　　　　Debtor.

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## SUPPLEMENTAL
## ORDER REGARDING MEDIATION CONFIDENTIALITY

### (FILED UNDER SEAL)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| _____ | ) | |

**JOINT MOTION OF COMMUNITY FOUNDATION FOR SOUTHEAST MICHIGAN, WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND BARBARA M. ERB FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER FOUNDATION, FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE KRESGE FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L. KNIGHT FOUNDATION, MCGREGOR FUND, CHARLES STEWART MOTT FOUNDATION AND A. PAUL AND CAROL C. SCHAAP FOUNDATION TO QUASH SUBPOENAS DUCES TECUM**

Community Foundation for Southeast Michigan ("CFSM"), William Davidson

Foundation (the "Davidson Foundation"), The Fred A. and Barbara M. Erb Family Foundation

(the "Erb Foundation"), Max M. and Marjorie S. Fisher Foundation (the "Fisher Foundation"),

Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg

Foundation (the "Kellogg Foundation"), John S. and James L. Knight Foundation (the "Knight

Foundation"), McGregor Fund, Charles Stewart Mott Foundation (the "Mott Foundation") and

A. Paul and Carol C. Schaap Foundation (the "Schaap Foundation," and collectively with CFSM,

the Davidson Foundation, the Erb Foundation, the Fisher Foundation, Ford Foundation, Hudson-

Webber Foundation, The Kresge Foundation , the Kellogg Foundation, the Knight Foundation,

McGregor Fund, and the Mott Foundation, the "Foundations") hereby jointly move to quash the

subpoenas issued on June 4, 2014, by Syncora Capital Assurance, Inc. and Syncora Guarantee,

Inc. (collectively, "Syncora"), pursuant to L.B.R. 9014-1(h), Bankruptcy Rules 7026 and 9016

and Federal Rules of Civil Procedure 26 and 45. In accordance with L.B.R. 9014-1(h), counsel for the Foundations sought concurrence in the requested relief from Syncora's counsel by telephone on June 10, 2014, which was denied; Counsel for the Foundations and Syncora agreed, however, that the discovery sought by Syncora which is the subject of this motion, would not occur on the dates scheduled, and that, subject to agreement of the Court, this motion would be heard on an expedited basis on **June 26, 2014**. A supporting brief setting forth the grounds for this motion is filed herewith, and a proposed order granting the relief sought is attached hereto as Exhibit 1. L.B.R. 9014-1(b)(1).

PLUNKETT COONEY
/s/ Douglas C. Bernstein (P33833)
Attorneys for CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan 48304
(248) 901-4091
dbernstein@plunkettcooney.com

and

Of counsel

WINSTON & STRAWN LLP
Harvey Kurzweil
New York State Bar No. 1251610
Desiree M. Ripo
New York State Bar No. 4589552
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
HKurzweil@winston.com
DMRipo@winston.com

2

and

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP

Rafael R. Ribeiro
The Florida Bar No. 896241
Michael N. Kreitzer
The Florida Bar No. 705561
Attorneys for the Knight Foundation
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
(305) 350-7312
(305) 350-2384
rribeiro@bilzin.com
mkreitzer@bilzin.com

June 12, 2014

3

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

**BRIEF IN SUPPORT OF JOINT MOTION OF COMMUNITY FOUNDATION FOR
SOUTHEAST MICHIGAN, WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND
BARBARA M. ERB FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER
FOUNDATION, FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE
KRESGE FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L.
KNIGHT FOUNDATION, MCGREGOR FUND, CHARLES STEWART MOTT
FOUNDATION AND A. PAUL AND CAROL C. SCHAAP FOUNDATION
TO QUASH SUBPOENAS DUCES TECUM**

# TABLE OF CONTENTS

**Page**

CONCISE STATEMENT OF THE ISSUES PRESENTED...........................................................II

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT...III

INDEX TO AUTHORITIES.......................................................................................................IV

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF MATERIAL FACTS .................................................................................. 2

ARGUMENT............................................................................................................................ 4

    I.   SYNCORA'S SUBPOENAS AS TO THE FOUNDATIONS SHOULD BE QUASHED FOR MULTIPLE REASONS............................................................................................................................... 4

        A. Governing Standards ................................................................................................4

        B. Application .............................................................................................................6

           1. The Subpoenas do not seek discovery of relevant information. ............................ 7

           2. The Subpoenas are overbroad and would impose an undue burden...................... 9

           3. The Subpoenas require disclosure of privileged or other protected matter. ......... 10

    II.  THE COURT SHOULD AWARD THE FOUNDATIONS ATTORNEYS FEES INCURRED IN CONNECTION WITH THIS MOTION. ....................................................................................... 11

CONCLUSION..................................................................................................................... 12

## CONCISE STATEMENT OF THE ISSUES PRESENTED

I.

WHETHER SYNCORA'S SUBPOENAS AS TO THE
FOUNDATIONS SHOULD BE QUASHED?

II.

WHETHER THE COURT SHOULD AWARD THE
FOUNDATIONS ATTORNEYS FEES INCURRED IN
CONNECTION WITH THIS MOTION?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 45

# INDEX TO AUTHORITIES

**Page**

**CASES**

*Bogosian v. Woloohojian Realty Corp.,*
    323 F.3d 55, 66 (1st Cir.2003)........................................................................................ 4

*Compaq Computer Corp. v. Packard Bell Elec., Inc.,*
    163 F.R.D. 329, 335-36 (N.D. Cal. 1995) .................................................................... 10

*Cook v. Howard,*
    484 Fed. Appx. 805, 812 (4th Cir. Aug. 24, 2012) ....................................................... 5

*E.E.O.C. v. Jack Marshall Foods, Inc.,*
    No. 09–0160–WS–M, 2010 WL 55635, at *6 (S.D. Ala. Jan.4, 2010) ......................... 9

*E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.,*
    No. 11–cv–02560–MSKMEH, 2012 WL 934312, at *3 (D. Colo. Mar.
    19, 2012)........................................................................................................................ 8

*E.E.O.C. v. S. Haulers, LLC,*
    No. 11–00564–N, 2012 WL 1768064, at *3–4 (S.D.Ala. May 17, 2012)...................... 8

*Echostar Communications v. The News Corp., Ltd.,*
    180 F.R.D. 391, 394 (D. Colo. 1998) ........................................................................... 6

*HD Sherer LLC v. Natural Molecular Testing Corp.,*
    292 F.R.D. 305, 308 (D.S.C. 2013) .............................................................................. 5

*Herbert v. Lando,*
    441 U.S. 153, 177 (1979)............................................................................................... 6

*Hofer v. Mack Trucks, Inc.,*
    981 F.2d 377, 380 (8th Cir. 1992) ................................................................................ 5

*I'mnaedaft, Ltd. v. The Intelligence Office System,*
    Case No. 1:2008-cv-01596, 2009 WL 1537975, 6 (D. Colo., 2009)............................. 6

*In re Subpoena Duces Tecum to AOL, L.L.C.,*
    550 F.Supp.2d 606, 612 (E.D. Va. 2008) ..................................................................... 4

*Innovative Therapies, Inc. v. Meents,*
    Case No. 2012-cv-03309, 2014 WL 858651, 17 (D. Md., 2014) ................................. 4

*Liles v. Stuart Weitzman, LLC,*
    No. 09–61448–CIV, 2010 WL 1839229, at *3 (S.D. Fla. May 6, 2010) ...................... 9

*Medical Components, Inc. v. Classical Medical, Inc.,*
    210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002) ................................................................. 6

*Nicholas v. Wyndham Int'l, Inc.,*
    373 F.3d 537, 543 (4th Cir.2004) ................................................................................. 5

*Premer v. Corestaff Servs., L.P.*,
    232 F.R.D. 692, 693 (M.D. Fla.2005) ........................................................................ 9

*Regan-Touchy v. Walgreen Co.*,
    526 F.3d 641, 648-49 (10th Cir. 2008) .................................................................... 6

*Rivera v. Nibco*,
    364 F.3d 1057, 1072 (9th Cir. 2004) ...................................................................... 6

*Sanders v. Dalcraft, LLC*,
    No. 3–09–CV–0307–P, 2009 WL 1392602, at *2 (N.D. Tex. May 18,
    2009) .......................................................................................................................... 9

*Schaaf v. SmithKline Beecham Corp.*,
    233 F.R.D. 451, 453 (E.D.N.C. 2005) ...................................................................... 5

*Serrano v. Cintas Corp.*,
    699 F.3d 884, 901 (6th Cir. 2012) .......................................................................... 5

## RULES

Federal Rule of Civil Procedure 26 ................................................................ iii, 4, 5

Federal Rule of Civil Procedure 26(c) ................................................................... 6

Federal Rule of Civil Procedure 26(b)(1) ............................................................. 6

Federal Rule of Civil Procedure 26(c)(1)(A) ........................................................ 5

Federal Rule of Civil Procedure 30(b)(6) ............................................................. 2

Federal Rule of Civil Procedure 37(a)(5)(A) ...................................................... 11

Federal Rule of Civil Procedure 45 ................................................................ iii, 4, 5, 11

Federal Rule of Civil Procedure 45(c) ................................................................... 5

Federal Rule of Civil Procedure 45(d)(1) ........................................................... 11

Federal Rule of Civil Procedure 45(d)(3)(A) ........................................................ 4

## OTHER AUTHORITIES

8A Charles Alan Wright & Arthur R. Miller, et al, Federal Practice and
    Procedure § 2036 (3d ed. 2012) ............................................................................. 5

## PRELIMINARY STATEMENT

Syncora[1] filed an Objection to the Debtor's Plan of Adjustment on May 12, 2014.  The Objection raised a host of grounds, *e.g.*, that the Plan fails the best interests of creditors test because the recovery is not great enough, that it fails the unfair discrimination test because of alleged disparities of treatment between creditors of equal priority, that it fails the fair and equitable test because the assets of the Detroit Institute of Arts ("DIA") are being preserved rather than monetized, and that it fails the feasibility test, because Syncora says the Debtor may not be able to fund its reinvestment plan.

Now, Syncora has served subpoenas on the Foundations[2] that have agreed to fund pensions in connection with the Plan, seeking depositions and the production of documents relating to the Foundations' dealings with the DIA, among other broad, general topics.  Neither the deposition topics nor the subjects of the document requests have any connection to the bases for Syncora's objection to the Plan.  It appears Syncora's subpoenas are nothing but a cynical lashing out at entities that have some role in the Plan, in order to annoy, oppress or harass them as part of an overly aggressive attempt to disrupt the orderly resolution of this matter.  At best, the subpoenas are a classic fishing expedition to which several grounds for quashing them squarely apply.  Accordingly, the Foundations request that the Court quash the Subpoenas and order Syncora to pay the Foundations' attorneys' fees incurred in having to bring this motion.

---

[1] Syncora Capital Assurance, Inc. and Syncora Guarantee, Inc.

[2] "Foundations" consist of Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation, McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation.

1

## STATEMENT OF MATERIAL FACTS

On May 12, 2014, Syncora filed a 69-page (90-paragraph) Objection (the "Objection") (Docket No. 4679) to the Debtor's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 4392) (the "Plan"). Syncora objects that the Plan fails the best interests of creditors test because the recovery it offers to the least favored classes is less than they would realize if the case were dismissed. (Syncora's Objection, Docket No. 4679, p. 1). Syncora objects that the Plan fails the unfair discrimination test because it would result in alleged disparities of treatment between creditors of equal priority. (*Id.*, p. 2) Syncora also complains that the Plan is not fair and equitable because it does not monetize the Debtor's art collection, *i.e.*, the art owned by the DIA. (*Id.*, p. 2). And Syncora claims the Plan is also not feasible, because it says the Debtor will not be able to fund its reinvestment plan. (*Id.,* p. 3).

Unrelated to any aspect of Syncora's Objection to the Plan is the presence and involvement of the Foundations. The Foundations are each not for profit charitable foundations, whose only involvement with this matter arises from their answer to a request that they help the Debtor solve its financial problems, and their subsequent agreement to provide funding, upon the occurrence of certain conditions precedent, for the benefit of pensioners participating in the General Retirement System and the Police and Fire Retirement System, as set forth in the Plan. If approved, the Foundations' contributions, together with those of the State of Michigan and others, would result in the transfer of the assets of the DIA by the Debtor, to be held in perpetual charitable trust for the benefit of the citizens of the City of Detroit and the State of Michigan (the "DIA Settlement"). See the Plan at Exhibit I.A.91.

On June 4, 2014, Syncora issued subpoenas to each of the Foundations, as amended on June 5, 2014 (collectively, the "Subpoenas"), seeking the depositions of the Foundations' representatives under Federal Rule of Civil Procedure 30(b)(6) (Docket Nos. 5224 and 5241),

beginning on June 23, 2014, and continuing through June 27, 2014, to discuss (a) the negotiations between each of the Foundations, the Debtor and any other parties pertaining to the DIA Settlement; (b) the terms of the DIA Settlement; (c) each Foundation's contribution to the DIA Settlement; (d) each Foundation's involvement with the DIA; (e) each Foundation's reasons for entering into the DIA Settlement; (f) the purpose or mission of each Foundation; (g) each Foundation's prior donations or contributions, including donations or contributions to the arts; and, (h) the importance and value of the DIA and its art collection.  (Subpoenas at Schedule A).

The Subpoenas also request that each Foundation produce (a) all documents and communications relating to the DIA Settlement; (b) all documents and communications relating to the negotiations surrounding the DIA Settlement; (c) all documents and communications relating to the transfer of the assets of the DIA pursuant to the DIA Settlement; (d) all documents and communications describing the reasons for entering into the DIA Settlement; (e) documents sufficient to show the causes or charities each Foundation has previously supported or provided money to from January 1, 1990 to present; (f) each Foundation's mission statement; (g) documents sufficient to show each Foundation's current process for evaluating potential partners or causes; and, (h) all communications between each Foundation and the DIA from January 1, 2001 to the present (Subpoenas at Schedule B).[3]

Given the topics' focus on the DIA, the particular aspect of Syncora's Objection to which the inquiries presumably applies must be the DIA Settlement, by which the DIA's assets are to be transferred to a non-profit organization rather than monetized.  But no explanation has been offered in or in connection with the Subpoenas as to how these inquiries into the Foundations'

---

[3] Docket No. 5241 modified the scope of the document requests to those from March 15, 2013 to June 5, 2014, unless otherwise specified.

3

dealings with the DIA, much less the more general topics set forth in the subpoenas, have anything to do with the nature of Syncora's Objection.

**ARGUMENT**

## I. SYNCORA'S SUBPOENAS AS TO THE FOUNDATIONS SHOULD BE QUASHED FOR MULTIPLE REASONS.

### A. Governing Standards

Rule 45 of the Federal Rules of Civil Procedure governs motions to quash subpoenas. Courts *must* quash a subpoena that:

> (i)   fails to allow a reasonable time to comply;
>
> * * *
>
> (iii)   requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv)   subjects a person to undue burden.

Federal Rule of Civil Procedure 45(d)(3)(A).

In reviewing a motion to quash, the court may consider "whether (i) the subpoena was issued primarily for the purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir.2003) (citing cases). A subpoena is overbroad if it "does not limit the documents requested to subject matter relevant to the claims or defenses." *Innovative Therapies, Inc. v. Meents*, Case No. 2012-cv-03309, 2014 WL 858651, 17 (D. Md., 2014); *In re Subpoena Duces Tecum to AOL, L.L.C.*, 550 F.Supp.2d 606, 612 (E.D. Va. 2008).

In the context of discovery, "Rule 45 adopts the standards codified in Rule 26 which allows for the discovery of any matter 'not privileged, that is relevant to the claim or defense of

4

any party' when the discovery request 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). Nevertheless, simply because information is discoverable under Rule 26 "does not mean that discovery must be had." *Id.* (citing *Nicholas v. Wyndham Int'l, Inc.,* 373 F.3d 537, 543 (4th Cir.2004)). The same limitations to discovery requests found in Rule 26 should be applied to a subpoena served pursuant to Rule 45. *See, e.g., HD Sherer LLC v. Natural Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013) ("Rule 45 does not list irrelevance or overbreadth as reasons for quashing a subpoena. However, the scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.") (citing *Cook v. Howard*, 484 Fed. Appx. 805, 812 (4th Cir. Aug. 24, 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed[,] . . . those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26.")).

Rule 26(c)(1)(A) also provides that a district court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense by, among other things, barring the deposition of or other discovery from that individual. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). Because "discovery has limits and . . . these limits grow more formidable as the showing of need decreases, . . . even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id.* (quoting 8A Charles Alan Wright & Arthur R. Miller, et al, Federal Practice and Procedure § 2036 (3d ed. 2012)).

It is well settled that the proponent of the discovery must make a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery," in order to limit "fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir.

5

1992). "District Courts need not condone the use of discovery to engaging 'fishing expeditions.'" *Rivera v. Nibco*, 364 F.3d 1057, 1072 (9th Cir. 2004). Indeed, even if a district court determines that a party is seeking relevant information, it may, upon a showing of good cause, enter any protective order that "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." Federal Rule of Civil Procedure 26(c). *See also I'mnaedaft, Ltd. v. The Intelligence Office System*, Case No. 1:2008-cv-01596, 2009 WL 1537975, 6 (D. Colo., 2009) ("third-party subpoenas that are a search for ammunition to use in a particular war should be quashed; 'ammo recon' missions, like fishing expeditions, are rarely appropriate and uniformly discouraged.")

As courts have recognized, "the requirements of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] a party or person from annoyance, embarrassment, [or] oppression . . ." *Regan-Touchy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008), (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

In the context of subpoenas to third-parties, the protections a court should provide are even greater. In balancing the need for discovery against the burdens imposed by the discovery requested, courts have held that a court may consider the fact that discovery is being sought from a third-party, which weighs against permitting discovery. *See, e.g., Medical Components, Inc. v. Classical Medical, Inc.*, 210 F.R.D. 175, 180 n. 9 (M.D.N.C. 2002); *Echostar Communications v. The News Corp., Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998).

### B. Application

Syncora's Subpoenas aimed at the Foundations are properly quashed for any number of reasons. They are not remotely aimed at discovering information that would bear on the nature

6

of the Objection to the Plan. They are overbroad and would impose an undue burden. They also seek disclosure of privileged or other protected matter.

### 1. The Subpoenas do not seek discovery of relevant information.

The Subpoenas do not even get out of the gate as a proper request because they seek information that is simply not relevant to Syncora's Objection to the Plan.

The Foundations only became involved in this matter as a result of their responding to a request that they assist the City of Detroit in resolving its financial ills. Their role in this matter is limited to providing funding, upon the occurrence of certain conditions precedent, for the benefit of pensioners participating in the General Retirement System and the Police and Fire Retirement System, as set forth in the Plan. That funding would result in the transfer of the assets of the DIA to be held in perpetual charitable trust for the benefit of the citizens of the City of Detroit and State of Michigan. Syncora criticizes this aspect of the Plan, and believes the DIA's assets should be monetized. But whatever the merits of that criticism, the Subpoenas aimed at the Foundations have nothing to do with it.

The deposition topics, and the documents that are the subject of the requests to produce, seek such things as the terms of the DIA Settlement, the various Foundations' involvement with the DIA, and the "reasons" for entering into the DIA Settlement. The topics also include such far-ranging fishing expeditions as "prior donations or contributions, including donations or contributions to the art." Syncora even lists as a deposition topic "The importance and value of the Detroit Institute of Arts and Collection."

No information that Syncora might obtain through discovery from the Foundations through depositions and responses to document requests would have any bearing whatsoever on the merits (or lack thereof) of Syncora's Objection to the Plan. The sole basis for Syncora's

7

opposition to the DIA Settlement set forth in its Objection to the Plan stems from Syncora's opinion that the value the Debtor will receive from the DIA Settlement is substantially less than the reasonably equivalent value—and that the community value of allowing the DIA's assets *not* to be monetized evidently should be disregarded. Such questions about valuation are entirely unrelated to the funding to be provided for the benefit of the pensioners. Clearly, the purpose of the scheduling of the depositions of the Foundations' representatives and document production requests is to attempt to intimidate the Foundations into dropping their support for the DIA Settlement.

In short, Syncora's Subpoenas are not merely a fishing expedition; they are a fishing expedition in a pond with no fish. Thus, they are best understood as not merely a good-faith discovery request that could possibly annoy or oppress the third-parties to whom the Subpoenas are aimed, but as *designed to annoy or oppress* the Foundations, by harassing them for no good reason at all. Regardless, and whatever Syncora's motive, the Subpoenas should be quashed in their entirety.

Courts have repeatedly quashed subpoenas aimed at discovering information based on nothing more than the possibility that the defendant might discover or "fish out" something that could be of use. *See E.E.O.C. v. S. Haulers, LLC*, No. 11–00564–N, 2012 WL 1768064, at \*3–4 (S.D.Ala. May 17, 2012) (granting motions to quash because "the mere possibility" that defendant might discover evidence or "fish out" something that might be admissible as impeachment evidence did not justify the broad requests); *E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.*, No. 11–cv–02560–MSKMEH, 2012 WL 934312, at \*3 (D. Colo. Mar. 19, 2012) ("Defendant's contention that such dated information 'may' be relevant to an after-acquired evidence defense or 'may' demonstrate an alternative source of emotional distress

8

inches over the line into a 'fishing expedition' barred by the applicable rules."); *Liles v. Stuart Weitzman, LLC*, No. 09–61448–CIV, 2010 WL 1839229, at *3 (S.D. Fla. May 6, 2010) (granting motion for protective order and explaining that "Defendant . . . has cited no authority to support his argument that a plaintiff's employment records from his former employer are relevant (or are likely to lead to admissible evidence) to demonstrate poor performance while employed by the defendant. Moreover, courts considering the issue have held to the contrary."); *E.E.O.C. v. Jack Marshall Foods, Inc.*, No. 09–0160–WS–M, 2010 WL 55635, at *6 (S.D. Ala. Jan.4, 2010) (affirming magistrate judge's order granting motion to quash overbroad subpoenas to former employers); *Sanders v. Dalcraft, LLC*, No. 3–09–CV–0307–P, 2009 WL 1392602, at *2 (N.D. Tex. May 18, 2009) ("Courts generally agree that the after-acquired evidence defense 'cannot be used to pursue discovery in the absence of some basis for believing that after-acquired evidence of wrong-doing will be revealed.' ") (citation omitted); *Premer v. Corestaff Servs., L.P.,* 232 F.R.D. 692, 693 (M.D. Fla.2005) ("Though the after-acquired evidence doctrine provides employers a mechanism to limit an employee's remedies based on evidence found during discovery, it should not be used as an independent basis to initiate discovery.").

In the instant case, these authorities all apply with equal if not greater force because, as noted, this is not merely a fishing expedition, it is an intentional effort to annoy or harass the Foundations with no hope of unearthing relevant information relating to the Objection. Accordingly, the Subpoenas should be quashed.

### 2.    The Subpoenas are overbroad and would impose an undue burden.

Apart from the absence of any relevance, the subpoenas are properly quashed as overbroad and as imposing an undue burden. As one court has aptly recognized, "obviously, if sought-after documents are not relevant nor calculated to lead to the discovery of admissible

evidence, then any burden whatsoever imposed . . . would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995). That is the case here.

Even if the topics of the Subpoenas had some marginal relevance to Syncora's Objection, which they do not, the burden on the Foundations would warrant that the subpoenas be quashed. The topics include such far-ranging items as "The purpose or mission of Your foundation," and "Your prior donations or contributions, including donations or contributions to the arts." Among other problems with such topics, they are inappropriately broad, to put it mildly. The Foundations should not be required to gather up all information responsive to such overbroad topics, or be held to answer questions on them, particularly given the absence of any showing of need.

Additionally, much of the information sought, albeit irrelevant to the Objection, is readily available to Syncora, as well as to the public at large. The mission statement for each of the Foundations is contained on their respective web sites. Information relating to prior grants made by the Foundations is available via GuideStar (www.guidestar.org), which includes data for well over 1,000,000 organizations by the Internal Revenue Service as not-for-profit organizations.

Syncora's subpoenas are the very definition of overbroad, and would be appropriately quashed for that reason alone even if they did seek relevant information.

### 3. The Subpoenas require disclosure of privileged or other protected matter.

A third reason the Subpoenas should be quashed is that they would require disclosure of privileged or other protected material. Discussions regarding the DIA Settlement were held in conjunction with the Court's mediation process, which deemed all negotiations to be privileged, and required that everything pertaining to same be kept confidential (Docket No. 322). Even

10

absent this fact, given the complete absence of relevance regarding the areas of inquiry, Syncora's attempt to harass the Foundations into disclosing information of this type should be rejected.

## II. THE COURT SHOULD AWARD THE FOUNDATIONS ATTORNEYS FEES INCURRED IN CONNECTION WITH THIS MOTION.

Federal Rule of Civil Procedure 45 includes a specific provision aimed at "**Protecting a Person Subject to a Subpoena**; **Enforcement**." Subsection (d) states in pertinent part as follows:

> (1) **Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Here, in stunning contrast to its responsibility to take reasonable steps to avoid imposing undue burden or expense, Syncora appears to have issued its Subpoenas for the very purpose of imposing undue burden or expense on the Foundations. Because the topics for deposition and document requests have no connection to the grounds for Syncora's Objection to the Plan, and, therefore, the Subpoenas seek information that is entirely irrelevant to its Objection, it seems the Subpoenas were issued solely for the purpose of annoying or harassing the Foundations. Consequently, this Court should award the Foundations their attorneys' fees incurred in bringing this motion. *See also* Federal Rule of Civil Procedure 37(a)(5)(A) (*requiring* a court to award attorneys' fees upon the grant of a protective order absent certain exceptions).

11

## CONCLUSION

For the reasons set forth herein, the Foundations request that this Court quash the Subpoenas served by Syncora on June 4, 2014, and award the Foundations attorneys' fees incurred in response to the issuance of those Subpoenas. The Foundations further request any and all other relief appropriate under the circumstances.

PLUNKETT COONEY

/s/ Douglas C. Bernstein
Attorneys for CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan 48304
(248) 901-4091
dbernstein@plunkettcooney.com

and

*Of counsel*

WINSTON & STRAWN LLP

Harvey Kurzweil
New York State Bar No. 1251610
Desiree M. Ripo
New York State Bar No. 4589552
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
HKurzweil@winston.com
DMRipo@winston.com

12

and

BILZIN SUMBERG BAENA PRICE &
AXELROD LLP

Rafael R. Ribeiro
The Florida Bar No. 896241
Michael N. Kreitzer
The Florida Bar No. 705561
Attorneys for the Knight Foundation
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
(305) 350-7312
(305) 350-2384
rribeiro@bilzin.com
mkreitzer@bilzin.com

Date: June 13, 2014

Open.18341.41654.14156631-2

13

# EXHIBIT 1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION – DETROIT

In re:

City of Detroit, Michigan,

       Debtor.

Case No. 13-53846
Chapter 9
Hon. Steven W. Rhodes

_____

**ORDER GRANTING JOINT MOTION OF COMMUNITY FOUNDATION FOR SOUTHEAST MICHIGAN, WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND BARBARA M. ERB FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER FOUNDATION, FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE KRESGE FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L. KNIGHT FOUNDATION MCGREGOR FUND, CHARLES STEWART MOTT FOUNDATION AND A. PAUL AND CAROL C. SCHAAP FOUNDATION TO QUASH SUBPOENAS DUCES TECUM**

This matter having come before the Court upon the joint motion of Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation to quash subpoenas duces tecum issued to each of them by Syncora Guarantee and Syncora Capital Assurance (Docket No. ____); and,

The Court having read and considered the pleadings and the arguments of counsel, and it appearing to the Court that good cause has been demonstrated.

IT IS ORDERED that the joint motion of Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation to quash subpoenas duces tecum issued to each of them by Syncora Guarantee and Syncora Capital Assurance is granted in its entirety, and the depositions sought thereby shall not be held, and the document requests to each of the foregoing parties shall be quashed.

Open.18341.41654.14183784-1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| _____ ) | | |

## **NOTICE OF MOTION TO QUASH SUBPOENAS DUCES TECUM**

On June 12, 2014, Community Foundation for Southeast Michigan, William Davidson Foundation, The Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, The Ford Foundation, Hudson-Webber Foundation, W.K. Kellogg Foundation, McGregor Fund, Charles Stewart Mott Foundation and A. Paul and Carol C. Schaap Foundation (the "Foundations") have filed the following Motion with the Court:

JOINT MOTION TO QUASH SUBPOENAS DUCES

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in the bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to grant the relief as requested, or if you want the Court to consider your views on the motion, within 14 days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at 1:

Clerk of the Court
United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the 14 day period expires.

You must also mail a copy to:

Douglas C. Bernstein, Esq.
PLUNKETT COONEY
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304

---

1 Objection or request must comply with F.R. Civ.P. 8(b), (c) and (e)

Harvey Kurzweil
Desiree M. Ripo
WINSTON & STRAWN LLP
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193

2.      If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

PLUNKETT COONEY

/s/ Douglas C. Bernstein
Attorneys for CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan 48304
(248) 901-4091
dbernstein@plunkettcooney.com

and

*Of counsel*

WINSTON & STRAWN LLP

Harvey Kurzweil
New York State Bar No. 1251610
Desiree M. Ripo
New York State Bar No. 4589552
Attorneys for The Kresge Foundation
200 Park Avenue
New York, New York 10166-4193
(212) 294-6700
HKurzweil@winston.com
DMRipo@winston.com

Date: June 12, 2014
Open.18341.41654.14186427-1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on June 13, 2014, a copy of:

JOINT MOTION OF COMMUNITY FOUNDATION FOR SOUTHEAST MICHIGAN, WILLIAM DAVIDSON FOUNDATION, THE FRED A. AND BARBARA M. ERB FAMILY FOUNDATION, MAX M. AND MARJORIE S. FISHER FOUNDATION, FORD FOUNDATION, HUDSON-WEBBER FOUNDATION, THE KRESGE FOUNDATION, W.K. KELLOGG FOUNDATION, JOHN S. AND JAMES L. KNIGHT FOUNDATION, MCGREGOR FUND, CHARLES STEWART MOTT FOUNDATION AND A. PAUL AND CAROL C. SCHAAP FOUNDATION TO QUASH SUBPOENAS DUCES TECUM

was served through the Court's ECF electronic mail system which sent notification of such filing

to all ECF participants in this bankruptcy case.

PLUNKETT COONEY

/s/ Douglas C. Bernstein
Attorneys for CFSM, the Davidson
Foundation, the Erb Foundation, the Fisher
Foundation, Ford Foundation, Hudson-Webber
Foundation, the Kellogg Foundation,
McGregor Fund, the Mott Foundation and the
Schaap Foundation
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, Michigan 48304
(248) 901-4091
dbernstein@plunkettcooney.com

Open.18341.41654.14186721-1