UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re, | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

REPLY BRIEF:
ALLEN PARK RETIREES ASSOCIATION, et al.'s MOTION FOR CLARIFICATION AND RELIEF FROM THE COURT'S ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE, EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

NOW COME Petitioners, the Allen Park Retirees Association, Inc., and lead Plaintiff Russell Pillar (herein "**the Petitioners**") to reply to the Debtor and the State as Interested Party:

### 1990 P.A. 72 Is The Statute At The Center Of Petitioners' Complaint

**Docket #5455** is the Petitioners' Motion; and their Verified Complaint is Attachment 6(B). Paragraphs 16-22 of the Complaint specifically allege that the unilateral breaches of their health care contracts occurred during the interregnum between the voters' repeal of **2011 P.A. 4** and the effective date of **2012 P.A. 436,** now before this Court. The State had declared that **1990 P.A. 72** was resurrected during the interregnum, and Petitioners have not challenged that assertion. Attachment #5 of the Complaint at Docket #**5455** contains the complete P.A. 72.

In Act 72, MCL 141.1222 did not authorize any State Emergency Manager to take a City into Chapter 9 bankruptcy. Rather, the statute only gave the Emergency Manager the authority to "authorize" the local government unit to itself file for bankruptcy. The objections of the Debtor-City and the State as an "Interested Party" are irrelevant to the gravamen of the actual Complaint.

1

## The Cases Cited In The Responses Have Been Clearly Misstated

Both the Debtor-City and State claim that the entire Act 436 is in peril, Statewide, by the fact that about 150-retirees from the City of Allen Park have challenged their economic injuries. But all of the cases cited by the Debtor-City and State involve Constitutional challenges limited to a single sub-section of an Act or administrative rule – not an entire statute itself. [1] The black letter law in both Federal and State Courts severs impermissible statute sections, to save the remaining and permissible legislation. See MCL 8.5 also:

> Statutes should be interpreted to sustain their constitutionality when it is possible to do so…[the Court] will uphold the parts which are separable from the repugnant provisions." *Pletz v. Secretary of State*, 125 Mich. App. 335, 375; 336 N.W.2d 789 (1983) (Internal citations omitted).

And in the Federal Courts:

> …when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force… Accordingly, the "normal rule" is that partial, rather than facial, invalidation is the required course, such that a "statute may ... be declared invalid to the extent that it reaches too far, but otherwise left intact." *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328-329; 126 S. Ct. 961 (2006) (Internal citations omitted).

Beginning at page-88 of this Court's Order of Eligibility, **Docket #1945**, this Court's inspection of **2012 P.A. 436** limited its analysis to **§18**, (MCL 141.1558) and the authority of the State's Emergency Manager to bring the City Detroit within the Court's jurisdiction.

As detailed above, however, the bankruptcy sections of P.A. 436 are irrelevant in the Petitioners' Complaint, in that the damage done to them occurred while **1990 P.A. 72** was in

---

[1] *Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135; 253 N.W.2d 114 (1977) merely decided whether the previous case of *Gutierrez v. Glaser Crandall Company*, 388 Mich. 654; 202 N.W.2d. 786 (1972) applied retroactively. *Gutierrez* in turn had declared only subsection **MCL 418.155(d)** of the State's Worker Disability Act to be unconstitutional; not the entire Act. *Id*, at 668, 674-675. Likewise, *Village of Mainville, Oh. v. Hamilton Twp. Bd. of Trustees*, 726 F.3d 762 (6th Cir. 2013) examined Ohio Revised Code subsection 5301.252 (Affidavits). In *Coleman v. Ann Arbor Transp. Authority*, 904 F. Supp. 2d 670, 676, (E.D. Mich. 2012) Plaintiff cited a single administrative rule of the transit system.

2

effect. That statute did not give a State Emergency Manager the authority to file for bankruptcy.

## The Jurisdiction of the Bankruptcy Court in Equity

The principles and rules of equity jurisprudence apply to bankruptcy courts. *Young v. U.S.*, 535 U.S. 43, 50; 122 S.Ct. 1036 (2002). The traditional understanding is that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships. *U.S. v. Energy Resources, Inc.,* 495 U.S., 545, 549; 110 S.Ct. 1239 (1990). Even if consistent with the bankruptcy code, however, a bankruptcy court order can be inappropriate if it conflicts with another law that should have been taken into consideration in the exercise of the court's discretion. *Id*, at page-550.

The Petitioners are neither creditors nor the debtor in the case at bar; and the City of Allen Park is separate and apart from the City of Detroit. It is undisputed in the pleadings of all parties now before this Court that the petition before it is a non-core issue, relative to the Debtor-City of Detroit.

The gravamen of the State's injury to Petitioners occurred under **1990 P.A. 72**, and was continued "as applied" when **2012 P.A. 436** became effective, involving *non*-bankruptcy related issues.

The State's only standing in this Court is as an "Interested Party." Yet it now tries to manipulate the standing of the Debtor-City's Emergency Manager, in order to stretch the Court's equity like a thin rubber band around the entire State. Its goal is to have this Court give cover and harbor for all unbridled powers claimed by the State's Legislative and Executive Branches via P.A. 436.

A state legislature, however, cannot pass a statute that expands the jurisdiction of a federal court. "Since federal equity jurisdiction depends on federal statutes, the [State] statutory

3

provision has little meaning as applied to such cases." *Buford v. Sun Oil Company*, 319 U.S. 315, 317; 63 S.Ct. 1098 (1943). Stated in straight-forward terms:

> .... the equitable powers conferred by the Judiciary Act of 1789 did not include the power to create remedies previously unknown to equity jurisprudence. Even when sitting as a court in equity, we have no authority to craft a "nuclear weapon" of the law .... *Grupo Mexicano de DeSarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 332; 119 S.Ct. 1961 (1999).

A bankruptcy court's authority to issue injunctive relief "related to" its jurisdiction cannot be limitless. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308; 115 S.Ct 1493 (1995). The property rights claimed by Petitioners do not involve the estate of the Debtor-City. In addition, as third parties to this Court's docket, the cause action between the Petitioners and the State has no effect the estate of the Debtor-City. Petitioners' cause of action is thereby beyond the Court's jurisdiction. *Id*, at Fn-6.

These limits run in parallel to the "case and controversy" requirements of U.S. Const. art. III, §2:

> Just as this restriction applies to federal district courts, the courts of appeals, and the U.S. Supreme Court, this restriction necessarily applies to federal bankruptcy courts. *Cassim v. Educational Credit Management Corp.*, 594 F. 3d. 432, 437 (6th Cir. 2010)

Given that the initial actions taken against Petitioners by the State's Emergency Manager were done in violation of the 1990 Emergency Manager Act – and that there is no credible claim of any effect on the estate of the Debtor-City/Detroit, the State's claim to the Michigan Court of Claims was clearly specious.

### **The State Seeks To Deny All Recourse And Remedies**

The State's bald assertions of injunctive relief seek to completely remove all due process rights from the Allen Park retirees who have been harmed by the Emergency Manager of the State. It thereby falls squarely on point with another bankruptcy case, *Bodie v. Connecticut*,

401 U.S. 371; 91 S.Ct. 780 (1971). In that case, bankruptcy law was claimed to present a complete bar to the State's citizens' access to the State Courts for divorce proceedings. The Court rejected that denial of rights, stating:

> Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one. *Id*, at pages 376-377.

The State would have the Petitioners wither and die off while blocking all access to all Courts. It also gives the State *carte blanche* encouragement to keep at least one local unit of government in bankruptcy into perpetuity – thereby blocking all recourse to the Courts forever.

If, *arguendo*, the State's claim of this Court's powers in equity are true, then there is only one true remedy in equity that protects Petitioners. Using as a guide the State's extremely expansive reading of the Court's Order at **Docket #166** the Court's injunctive relief must be expanded to freeze all actions by all of the State's Emergency Managers – aside from the Emergency Manager for the Debtor-City of Detroit – pending the final outcome of this docket.

All are thereby treated alike – the powerful in State government; and the retirees who are now currently being treated as expensive and unwanted chattel.

Respectfully submitted by electronic filing:

July 18, 2014        By:        /s/ **Mark A. Porter**
Mark A. Porter (P-42280)
Attorney for the Petitioners APRA & Russell Pillar
Mark A. Porter & Associates PLLC
551 East 11-Mile Road – Suite 3-D
P. O. Box 71527
Madison Heights, Michigan 48071-0527
(248) 547 – 1911
(248) 547 – 1917 FAX
mporter@map-law.com

5