UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re: City of Detroit,   Chapter 9
Debtor                    Case No. 13-53846
                          Hon. Steven W. Rhodes

**Petition for Permissive Intervention, the Right to Be Heard, by interested parties, social welfare and faith human rights institutions, with the purpose of entering an objection to and motion for the modification of the Detroit 4th Adjustment Plan, Article IV, Sub Section A (1), Detroit Water and Sewer Department, submitted by the Debtor, the City of Detroit.**

   **I.   Petition**

We, the undersigned, respectfully file this petition for permissive intervention, on the right to be heard, by interested parties, consumers of the services of Detroit Water and Service Department services, social welfare and faith human rights organizations, with the purpose of entering an objection to, and motion for the modification of, the Detroit 4th Adjustment Plan, Article IV, Sub Section A (1), Detroit Water and Sewer Department, submitted by the Debtor, the City of Detroit.

   **II.  Rules of Procedure Allowing Petition for Permissive Intervention and Appearance in Proceeding**

Under Federal Rules of Bankruptcy Procedure, Rule 2018, Right to be heard, persons can petition the court for permissive intervention with the purpose of entering an objection to and modification of the 4th Adjustment Plan, Article IV, Subsection A (1), Detroit Water and Sewer Department.

Under Federal Rules of Bankruptcy Procedure, Rule 9010 (a)1-2, a party may appear in a case or perform an act not constituting the practice of law in a bankruptcy proceeding before a federal bankruptcy court.

Under Federal Rules of Bankruptcy Procedure, Rule 9005, Harmless Error, the court may order a correction of any error or defect or the cure of any omission, which does not affect substantial rights. We request the grace of the court to correct any error or omission in the form of this petition that would impair the effective hearing of the court on these matters.

   **III. Material Interests of Petitioners**

The petitioners are entities with material interests in the case.

The Michigan Welfare Rights Organization (MWRO) is a volunteer membership union of public assistance recipients and low-income workers in Detroit and Michigan. The MWRO has provided assistance to consumers of water and sewerage services provided by Detroit Water and Sewerage Department for over 20 years.

The Unitarian Universalist Service Committee (UUSC) is a faith based human rights organization with 40,000 members and supporters in the United States, 496 residing in the Detroit Water and Sewerage Department service area. The organization has advocated for the human rights of persons in the United States and overseas since 1940. UUSC has advocated for the passage of new law and policy on the human right to water, including the Human Right to Water Act of California of 2012, and has supported litigation on the human right to water in five foreign jurisdictions.

Central United Methodist Church is an historical church, located in downtown Detroit, a consumer of DWSD services, and home to social welfare organizations such as Michigan Welfare Rights Organization. The Church is known as the "Conscience of the City." The Church works for justice and mercy every day in the name of Jesus the Christ. The Board of Justice, Advocacy and Equity of the Detroit Conference works for social justice of members of the churches in the Detroit Conference and for community members served by their churches.

The Michigan Unitarian Universalist Social Justice Network (MUUSJN) is a statewide, faith based social justice network that includes activists, clergy and allies that address issues such as health reform, LGBT rights, immigration reform, economic justice, and the environment. It mobilizes its 1,400 activists to make their religious values known on public policy issues through advocacy, education and public witness. The Network has over 390 members (33 in Detroit) who live in southeast Michigan counties that consume water processed by the Detroit Water and Sewerage Department.

The Interfaith Center on Corporate Responsibility is a coalition of faith and values-driven organizations who view the management of their investments as a powerful catalyst for social change. Our membership, some of whom are based in Detroit, comprises nearly 300 organizations including faith-based institutions, socially responsible asset management companies, unions, pension funds and colleges and universities that collectively represent over $100 billion in invested capital. ICCR members and staff engage hundreds of multinational corporations annually to promote more sustainable and just practices because we believe in doing so they will secure a better future for their employees, their customers and their shareholders. ICCR has been engaged with over 30 companies, including those with headquarters in Detroit, on water stewardship, sustainability and respect of the human right to water.

Mr. Stephen Gasteyer is an expert, academic researcher who has over 10 years experience researching the water and sanitation services of DWSD, of other Michigan communities such as Flint, MI, and is author of the report "Still Living Without the Basics in the 21st Century: Analyzing the Availabilty of Water and Sanitation Services in the United States," (RCAP, 2011), which documents the lack of equal access to water and sanitation services in the United States.

Brian Gilmore, Esq., clinical associate professor and director of the Housing Law Clinic at Michigan State University College of Law. Mr. Gilmore has worked with low income clients on the impacts of water shut offs and housing rights for the past 3 years, Gilmore joined MSU College of Law from Howard University School of Law in Washington, D.C., where he served as a clinical professor and supervising attorney.

In June, 2014, DWSD unilaterally increased the water rates by 8.7% for consumers in Detroit. Michigan state law requires that significant rate increases are approved after notice of the increase is provided to the public, and the public has the opportunity to voice its opinion on the rate increase. There is no evidence that DWSC met this provision. On a plain text reading of this provisions of the 4th Adjustment Plan, Article IV, Sub section A (1), the rate increases will be 8.7% for each of the subsequent five years following 2014. This constitutes approximately a 40% increase in rates on Detroit households.

DWSD released a statement saying that it sent 46,000 water shut off notices in May, executing over 4,300 of these last month. In a statement quoted in the press, DWSD shut off another 7,000 residences in June. In a petition before the UN Human Rights Council special procedures branch asking for investigation and intervention, MWRO and the Board, and other local, national, and Canadian civil society organizations reported information that the numbers of shut off notices are closer to 3,000 accounts per week.

Press reports indicate that the program of mass water shut offs by Detroit Water and Sewerage Department was implemented for residential households, and not for commercial accounts, which constitutes an inequitable and unfair treatment of residential accounts.

There is no available data that reports the age, health status, disability, or racial composition of the households being shut off in Detroit. Indeed, no water utility tracks this information in the United States. U.S. Census data[1] estimated from the 2010 census that 82.7% of the residents of Detroit are Black or African American, 10.6% white, and 6.8% Latino. 7% are under 5 years of age, 11.5% over 65 years of age, and 26.7% under 18 years old. Of Detroit's residents, 38% are below the poverty level, and the median household income is $26,955. Detroit is home to 37,492 veterans.

---

[1] U.S. Census Quick Facts, http://quickfacts.census.gov/qfd/states/26/2622000.html.

DWSD is a the sole provider of water services to millions of residents, including some of our members:

> "DWSD provides water service to the entire city of Detroit and neighboring southeastern Michigan communities throughout Wayne, Oakland, Macomb, St. Clair, Lapeer, Genesee, Washtenaw and Monroe counties. The 1,079-square-mile water service area, which includes Detroit and 127 suburban communities, makes up approximately 40 percent of the state's population. Wastewater service is also provided to a 946-square-mile area that encompasses Detroit and 76 neighboring communities."[2]

> "Today, the Detroit Water and Sewerage Department (DWSD) is the third largest provider of high-quality drinking water and wastewater treatment services in the United States."[3]

Water shut offs in severe weather, either heat or cold, should not be considered a viable collection measure for unpaid accounts because of the severe risks to health. States have passed moratoriums on water shut offs during winter weather to protect both public health and the utility infrastructure.

DWSD has taken no steps to identify individuals for whom a water shut off poses an extraordinary and unequal burden and risk to health and the family: for example infants and children under six years of age, pregnant women, persons living with chronic illness, low income seniors, and persons living with disabilities.

Mass water shut offs are not a reasonable nor justified administrative step under any circumstance as they place at severe risk the health and welfare of multiples of hundreds and potentially thousands of individuals, place the burden on those individuals to find alternative sources of water and sanitation in urban settings where the options are severely limited. Aid agencies are unable to respond to the numbers, and a shut off can trigger follow on implications under local law that could result in the destruction of the integrity of families. Under local family law, child protective services must remove children from the custodial care of a parent when the house does not provide adequate water and sanitation.

### IV. Objection to the 4th Adjustment Plan, Article IV, Sub Section A(1)

The petitioners object to the 4th Adjustment Plan, Article IV, Sub section A (1) with regard to the implementation of the Plan by Detroit Water and Sewerage Department.

---

[2] DWSD Fact Sheet, http://www.dwsd.org/downloads_n/about_dwsd/fact_sheet/dwsd_fact_sheet.pdf, last viewed July 17, 2014.
[3] DWSD, http://www.dwsd.org/pages_n/history.html, last viewed, July 17, 2014.

The 4th Adjustment Plan presented by the City of Detroit, Debtor, to this court, to resolve the claims of bond holders of Detroit Water and Sewerage Department and other creditors, in Art. IV, sub section A (1) sets out the following elements for implementation of the plan:

> *"ARTICLE IV*
> *MEANS FOR IMPLEMENTATION OF THE PLAN*
> *A. DWSD.*
> *1. Rates and Revenues.*
> *DWSD will maintain Fiscal Year 2015 rate setting protocols for a minimum of five years, subject to certain changes necessary to stabilize water and sewer revenues. The City may seek to implement a rate stability program for City residents, which program may, among other things, (a) provide a source of funds to mitigate against rate increases, (b) enhance affordability and (c) provide a buffer against delinquent payments."*

The petitioners object to this section of the plan. The basis of the objection is the risk to public health, to vulnerable populations, and integrity of the family that will result from the increase in rates, and the attendant water shut offs for those households unable to pay the increased rates, and for whom water shut off poses an extraordinary and disproportionate burden.

The petitioners object to this plan without a modification of this section that would protect vulnerable populations.

V.   **Notice of Intent to File a Motion to Modify the 4th Adjustment Plan, Article IV, Sub Section A (1) Detroit Water and Sewer Department**

The petitioners, if granted permissible intervention, will move to request the court to modify the 4th Adjustment Plan. The petitioners will request the court to order:

- DWSD to immediately stop the program of mass water shut offs and restore water to households of children under 6 years of age, low income seniors over 65 years of age, persons with disabilities, veterans, and persons living with chronic illness;
- DWSD to not implement any program of mass water shut offs during the period of adjustment covered by the 4th Adjustment Plan without public hearings of the administrative measure, and oversight by the Detroit Human Rights Commission, the Michigan Civil Rights Department, and the U.S. Department of Justice, Civil Rights Division.
- DWSD to fully disclose the rate structure, bond issuances, and the operating budget in full detail, and give the public full information on the financial reasons and basis for rate increases in the 4th Adjustment Plan;
- DWSD to fulfill all legal requirements to hold public hearings on the rate increases portion of the 4th Adjustment Plan immediately, and the increases for each subsequent year, before implementing the rate increases;

- DWSD implement the 2005 Water Affordability Plan proposed by the Michigan Welfare Rights Organization;
- DWSD to present a plan with protections for the most vulnerable populations included as a requirement of the plan, not a suggestion, for the following: households of children under 6 years of age, low income seniors over 65 years of age, persons with disabilities, veterans, and persons living with chronic illness.

### VI. Michigan State Models for Possible Remedies

There is precedent in Michigan law to provide for low-income consumers of essential services. There are provisions for low-income life-line rates for basic telecommunications services, so that every person may have the means to call the police department, the fire department, the ambulance services, when in urgent need. There are low-income protections for persons from the disconnection of energy services in extreme weather, and the utilities are able to include these provisions in their budgets and rate structures.

### VII. Closing

While these matters may present novel issues for the purview of the federal bankruptcy court, the court is empowered to rule on the fairness and equity of the 4th Adjustment Plan, and order adjustments, procedure, hearings and other orders to address the issues presented in the petition.

We know that there are families today in Detroit that cannot fulfill the very basic necessities of their lives. Mothers cannot wash the cherished bodies of their infants to keep them from harm and disease. An aging spouse cannot wash the hands of a beloved partner who needs assistance to face the difficulties of a chronic, long term illness. A teenager cannot take a shower. A man cannot use the toilet. A child will be embarrassed by having dirty clothes or body while playing with friends. Families cannot attend church without being worried about their appearance. Food cannot be prepared, water cannot be drunk, and basic body functions cannot be attended to. These are matters of human dignity. These are matters of human rights. These are matters of a just and equitable society.

We, the undersigned, have faith in the rule of law and the courts of our country. We exercise our democratic rights to participate in the law making process, and cast into words our hopes and dreams, to protect us from harm and establish a society based on the pursuit of life, liberty and happiness. We hope that these words will prove strong enough to protect us in times of great trouble, and keep us safe.

We know that the law is an ever-evolving thing. We know that law adjusts to the urgencies of the times. We know that the law maintains stability, but changes under urgent circumstances. We do not want to impose on the court nor create

any delay in the orderly proceedings. However the proposals in the 4th Adjustment Plan materially affect us as consumers and rate payers of the water and sanitation services of Detroit Water and Sewer Department. We know that we as citizens have a right and a duty to ensure that the law governing our relations in all spheres of life is fair and just. We know that we have the right to be heard and the duty to speak and shape that law. In this spirit, we petition this court.

We have faith the court will expeditiously consider this petition and the petitioners express in advance our gratitude for the opportunity to be heard and present our views.

The undersigned, filed this day, the 20th of July, 20014.

By _/s/ __maureen_taylor
Maureen Taylor, MSW
State Director
Michigan Welfare Rights Organization
23 East Adams, 4th Floor
Detroit, MI 48226
Chuteh7@hotmail.com

By _/s/ __patricia_a_jones_____
Patricia A. Jones, JD, LL.M, Ph.D.
Senior Program Lead, Human Right to Water
Unitarian Universalist Service Committee
689 Massachusetts Avenue
Cambridge, MA 02139
857-756-2346
pjones@uusc.org

By __ /s/ __randy_block_____
Randy Block
Executive Director
Michigan UU Social Justice Network
4220 Arlington Drive
Royal Oak, MI 48073
randyblock@yahoo.com

By _ /s/ __jill_hardt_zundell_____
Rev. Dr. Jill Hardt Zundel, Senior Pastor
Central United Methodist Church,
23 East Adams, 4th Floor
Detroit, MI 48226
313-965-5422
revdrjill@hotmail.com

By  /s/  nadira narine\
Nadira Narine\
Program Director, Strategic Initiatives\
Interfaith Center on Corporate Responsibility\
475 Riverside Drive, Suite 1842\
New York, NY 10115\
212-870-2275\
nnarine@iccr.org

By /s/ stephen_p_gasteyer\
Stephen P. Gasteyer, Ph.D.\
Associate Professor (for identification purposes)\
Department of Sociology\
Michigan State University\
509 E. Circle Dr., 316 Berkey Hall\
East Lansing, MI 48824\
gasteyer@msu.edu

By  /s/  brian gilmore\
Brian Gilmore, Esq.\
Director\
Housing Clinic\
Michigan State University College of Law\
610 Abbot Road\
East Lansing, MI 48864\
517-336-8088, Option 2\
brianguygilmore@gmail.com