between the Recipient and the affected employee, or the employee's representative. Claims for reimbursement under this paragraph (14) must be submitted to the Recipient within ninety (90) days after the date which the expenses were incurred and payment shall be made within thirty (30) days thereafter, unless disputes arise as to such claims.

(b) If any such employee is furloughed within three (3) years after changing the employee's point of employment in accordance with subparagraph (a), and elects to move the employee's place of residence back to the employee's original point of employment, the Recipient shall assume the expenses, losses and costs of moving such employee's household and other personal effects under the provisions of such subparagraph (a) and paragraph (15) of this Agreement.

(c) Except as otherwise provided in subparagraph (b), changes in place of residence, subsequent to the initial changes as a result of the Project, which are not a result of the Project but grow out of the normal exercise of seniority rights, shall not be considered within the purview of this paragraph.

(15) (a) The following conditions shall apply to the extent they are applicable in each instance to any employee who is retained in the service of the Recipient (or who is later restored to service after being entitled to receive a dismissal allowance) and who is required to change the point of the employee's employment as a result of the Project, and is thereby required to make a change in residence:

0350A

(1) If the employee owns the employee's own home in the locality from which the employee is required to move, the employee shall at the employee's option be reimbursed by the Recipient for any loss suffered in the sale of the employee's home for less than its fair market value, such loss to be paid within thirty days (30) of the sale of the home. In each case, the fair market value of the home in question shall be determined as of a date sufficiently prior to the date of the Project so as to be unaffected thereby. The Recipient shall in each instance be afforded an opportunity to purchase the home at such fair market value before it is sold by the employee to any other person. It is the intent of this paragraph (15) that the fair market value so determined and to be received by the employee is not to be reduced by any expenses incident to the closing of the transaction of sale of home such as a real estate commission paid to a licensed realtor (not to exceed 6 per centum of sale price), loan discount, loan closing costs, preparation of abstract, or deed of sale, and the employee will be made whole for any such expense involved.

(2) If the employee is under a contract to purchase the employee's home, the Recipient shall protect the employee against loss to the extent of the fair value of any equity the employee may have in the home and/or any cancellation penalties required to be paid by the employee under such contract and in addition shall relieve the employee from any further obligation under the employee's contract.

0350A

(3) If the employee holds an unexpired lease of a dwelling occupied by the employee as his or her home, the Recipient shall protect the employee from all loss and cost in securing the cancellation of such lease.

(b) Except as otherwise provided in paragraph (14)(b), changes in place of residence which are made subsequent to the initial changes as a result of the Project, and which are not a result of the Project but grow out of the normal exercise of seniority rights, shall not be considered to be within the purview of this paragraph.

(c) No claim for loss shall be paid under the provisions of this paragraph unless such claim is presented to the Recipient within one (1) year after the date the employee is required to move.

(d) Should a controversy arise in respect to the value of the home, the loss sustained in its sale, the loss under a contract for purchase, loss and cost in securing termination of a lease, or any other question in connection with these matters, it shall be decided through joint conference between the employee, or the employee's representative, and the Recipient. In the event they are unable to agree, the dispute or controversy may be referred by the Recipient or the Union to a board of competent real estate appraisers, selected in the following manner: One to be selected by the representatives of the employee and one by the Recipient and these two, if unable to agree within thirty (30) days upon the valuation, shall endeavor by agreement within ten (10) days thereafter to select a third appraiser or to agree to a method

0350A

by which a third appraiser shall be selected, and failing such agreement either party may request the state or local Board of Real Estate Commissioners to designate within ten (10) days a third appraiser whose designation will be binding upon the parties. A decision of a majority of the appraisers shall be required and said decision shall be final and conclusive. The salary and expense of the third or neutral appraiser, including expenses of the appraisal board, shall be borne equally by the parties to the proceeding. All other expenses shall be paid by the employer and party incurring them, including the compensation of the appraiser selected by such party.

(e) The term "change in residence", as used in this Agreement, means transfer to a work location which is either (I) outside a radius of twenty (20) miles of the employee's former work location and farther from the employee's residence than was the employee's former work location, or (II) located more than thirty (30) normal highway route miles from the employee's residence and also farther from the employee's residence than was the employee's former work location.

(16) Whenever the Recipient acquires the public transportation facilities of a public transportation employer, either in proceeding by eminent domain or otherwise, and operates such facilities directly or through contract, all employees actively engaged in the operation thereof shall be transferred to and appointed as employees of the Recipient in the appropriate bargaining unit, without suffering a worsening of their wages, hours or working conditions, and the Recipient shall assume and observe all applicable

0350A

labor contracts and pension obligations (subject to the right to negotiate a new collective bargaining agreement as noted below). These employees shall be given seniority credit and sick leave, vacation, insurance, and pension credits in accordance with the records or labor agreements from the acquired transportation system. Members and beneficiaries of any pension or retirement system shall continue to have rights, privileges, benefits, obligations and status with respect to such established system. The Recipient shall assume the obligations of any transportation system acquired by it with regard to wages, salaries, hours, working conditions, sick leave, health and welfare and pension or retirement provisions for these employees; provided, however, that rights, privileges and benefits not previously vested may be modified (upon the expiration of the prior agreement or earlier if the parties so mutually agree in writing) by collective bargaining and agreement between the Recipient and the Union to substitute other rights, privileges and benefits. The Recipient and the employees through their representative for collective bargaining purposes with the Recipient, shall take whatever action may be necessary to have pension trust funds presently under the joint control of the public transportation employer and the participating employees through their representatives transferred to a trust fund to be established, maintained and administered jointly by the Recipient and the participating employees through their representatives. The exact ways and means of the integration of such acquired employees into the Recipient's system shall be negotiated by and between the Recipient and the Union.

(17) (a) In the event of any labor dispute involving the Recipient and the employees covered by this Agreement, regarding the application, interpretation, or enforcement of this Agreement (not otherwise governed by paragraph (15)(d) of this Agreement) which cannot be settled within thirty (30) days after such dispute first arises, such dispute may be submitted at the written request of either the Union or the Recipient to a board of arbitration selected in accordance with procedures of the existing collective bargaining agreement, if any, or if none, as hereinafter provided.

(b) The Recipient and the Union shall each, within ten (10) days after a request under subparagraph (a), select one member of the arbitration board and the two members thus chosen shall select a third member who shall serve as chairman. Should the two members be unable to agree upon the appointment of the neutral member within ten (10) days, either party may request the American Arbitration Association to furnish a list of five (5) persons from which the neutral member shall be selected. The parties shall, within five (5) days after the receipt of such list, determine by lot the order of elimination, and thereafter each shall, in that order, ALTERNATELY eliminate one name until only one name remains. The remaining person on the list shall be the neutral member. If either party fails to select its arbitrator within the prescribed time limit, the highest officer of the Union or the general manager of the Recipient, as the case may be, shall be deemed to be the selected arbitrator, and the board of arbitration shall then function and its decision shall have the same force and effect as though both parties had selected their arbitrators.

(c) The decision by majority vote of the arbitration board shall be final, binding and conclusive and shall be rendered within forty-five (45) days from the date the neutral member is appointed. Awards made pursuant to said arbitration may include full back pay and allowances to employee-claimants and such other offsetting benefits and remedies to make the employee-claimant whole as may be determined to be appropriate in fairness and equity in the cirumstances presented. Arbitrators' awards must wholly compensate employees for the harm they suffer, but this does not always require the restitution of the precise benefit lost. Attempts should be made to provide such restitution, but alternative remedies may be acceptable where the harm does have an ascertainable economic value or damages would result in a fair and equitable substitute.

(d) The salaries and expenses of the neutral member shall be borne equally by the parties to the proceedings, and other expenses shall be paid by the party incurring them.

(e) In the event of any dispute as to whether or not a particular employee was affected by the Project, it shall be the employee's obligation to identify the Project and specify the pertinent facts of the Project relied upon. It shall then be the Recipient's burden to prove that factors other than the Project affected the employee. The claiming employee shall prevail if it is established that the Project had an effect upon the employee even if other factors may also have affected the employee (Hodgson's Affidavit in Civil Action No. 825-71).

(18) (a) Any labor dispute involving the Recipient and the Union regarding the making or maintaining of a collective bargaining agreement, or the terms to be included in such an agreement, which cannot be settled by the parties may be submitted to the Michigan Employment Relations Commission (MERC) for dispute resolution in accordance with Public Act 336 of 1947, as amended (MCL 423.201 et seq.).

(b) Any labor dispute described in subparagraph (a) that is not resolved, through negotiations between the parties or mediation by MERC, within 60 days after the dispute first arises, may be submitted to fact finding by a written application to MERC by either party. If MERC agrees to institute fact finding in accordance with this paragraph (18), MERC shall appoint a fact finder who shall proceed in accordance with Public Act 336 and subparagraphs (c) through (f) of this paragraph (18).

(c) The fact finder may hold hearings and receive oral and written testimony, as the fact finder considers appropriate. Within forty five (45) days after submission to fact finding, the fact finder shall issue findings of fact and recommendations for resolution of the issues in dispute. Except as provided in subparagraph (e), the fact finder's recommendations shall be advisory only and shall not be binding on either party.

(d) In making findings of fact and recommendations for the resolution of the matters in dispute, the fact finder shall take into consideration the following factors:

(1) the lawful authority of the Recipient;

(2) the stipulations of the parties;

(3) THE FINANCIAL CONDITION OF THE TRANSIT SYSTEM, the ability of the Recipient to administer and finance the existing system and the issues proposed, and the interests and welfare of the public;

(4) a comparison of the wages, hours and terms and conditions of employment of the Recipient's employees with those of other public ~~and/private~~ employees doing comparable work ~~giving consideration to factors peculiar to the community of area and classification involved~~ IN COMPARABLE SYSTEMS WITH COMPARABLE FINANCIAL CONDITIONS;

(5) the overall compensation presently received by the Recipient's employees, including direct wage compensation, vacations, holidays and other excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received;

(6) collective bargaining agreements between the parties;

(7) the average consumer prices for goods and services, commonly known as the cost of living;

(8) changes in any of the foregoing circumstances during the pendency of the fact finding proceedings; and

(9) such other factors not confined to those noted above, which are normally and traditionally taken into consideration in determination of wages, hours and