**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯x | : | |
| In re: | : | Chapter 9 |
| | : | |
| CITY OF DETROIT, MICHIGAN | : | Case No. 13-53846 |
| | : | |
| Debtor. | : | Hon. Steven W. Rhodes |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯x | : | |
| | : | |
| MAURIKIA LYDA, JOHN SMITH, NICOLE HILL, | : | Chapter 9 |
| ROSALYN WALKER, ANNETTE | : | |
| PARHAM, JANICE WARD, SYLVIA | : | Adversary Proceeding No. ____ |
| TAYLOR, SCOTT EUBANK, JOANN | : | |
| JACKSON, TAMMIKA R. WILLIAMS, | : | Hon. Steven W. Rhodes |
| individually and behalf of all other | : | |
| similarly situated, and MICHIGAN | : | |
| WELFARE RIGHTS ORGANIZATION, | : | |
| PEOPLES WATER BOARD, NATIONAL | : | |
| ACTION NETWORK-MICHIGAN | : | |
| CHAPTER, AND MORATORIUM NOW!, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF DETROIT, a Municipal | : | |
| Corporation, through the Detroit | : | |
| Water and Sewerage Department, its | : | |
| Agent, | : | |
| | : | |
| Defendant. | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯x | | |

**ADVERSARY COMPLAINT FOR DECLARATIVE & INJUNCTIVE RELIEF**

1

NOW COME Plaintiffs, individually and on behalf of all other persons similarly situated, and through their attorneys, bring this Complaint for Declarative and Injunctive Relief stating as follows.

## I.  NATURE OF PLAINTIFFS' CLAIMS

1.	Plaintiffs' claims are brought pursuant to the Federal Rules of Bankruptcy Procedure, Part VII-Adversary Proceedings, Rules 7001 *et. seq.*

2.	This Complaint is based on federal civil rights and state law constitutional, statutory and common law causes of action.  Plaintiffs' federal civil rights claims are brought pursuant to 42 USC §1983 for Defendants' violation of the Due Process and Equal Protection Clauses of the United States Constitution, Amend. XIV.  Plaintiffs' state law, constitutional, statutory and common law claims are based on violation of the Public Trust Doctrine.

3.	Plaintiffs' constitutional rights, and human rights, and rights as legal beneficiaries of the state's public trust duties in water, were violated and the Defendant violated common law duties when Defendants' adopted and implemented a policy to shut-off access to drinking water and sewerage service at approximately 30,000 households of low-income persons and persons living in poverty by the end of August 2014.

4.	Plaintiffs bring their Complaint individually, and on behalf of a proposed class of similarly situated persons who are residential customers of the City of Detroit, and its agent, the Detroit Water and Sewerage Department (DWSD).

2

## II.  JURISDICTION AND VENUE

**A. Factual Bases of Jurisdiction**

5.      On July 18, 2013 ("petition date") the City of Detroit filed a petition for relief in this Court, thereby commencing the largest Chapter 9 case in history; the City of Detroit is a municipality as defined in 101 USC Sec. 101 (40), and the petition is filed under Chapter 9 of the United States Bankruptcy Code.

6.    At the petition date the Debtor provided water to its inhabitants through a wholly owned entity know as the Detroit Water and Sewerage Department.

7.    Each separate account under which water was provided was an "executory contract" as is referenced in 11 USC Sec. 365 (a).

8.    Each of the persons liable on each account is an "inhabitant" as is referenced in 11 USC Sec. 922; further such inhabitants are all adversely affected by the filing of the petition because they are retirees, municipal employees, and recipients of the city services.

9.      Each inhabitant who has been adversely affected by the filing of he petition is entitled to a "set off" and "recoupment".

10.     Each inhabitant is entitled to Due Process of Law under the XIVth Amendment of the United States Constitution and the Michigan Constitution of 1963; and is further entitled to the protection against arbitrary administrative action under Federal and State law.

11.     On information and belief the City is shutting off water in order to collect funds for al third party entity in violation of 11 USC Sec. 922 and the orders and directives of this Court.

12.     The action of the City in shutting off water to inhabitants constitutes rejection of an executory contract without prior court permission in violation of 11 USC Sec. 365.

13.     A party to a rejected executory contract has all remedies under federal and state law, including injunctive relief when so permitted.

**B. Legal Statement of Jurisdiction**

14.     The U.S. Bankruptcy Court for the Eastern District of Michigan has jurisdiction over this matter under 28 USC Sec. 1334; the District Court for the Eastern District of Michigan has referred this case to the Bankruptcy Court under Local Rule 83.50.

15.     This Court has venue pursuant to 28 USC Sec. 1408 and 1409.

16.     This is a core proceeding under 11 USC Sec. 157(b)(2)(A), (B), (C) and (O); even if this were not so this adversary complaint would be properly filed as a noncore proceeding under 11 USC Sec. 157 (b)(4) and 157 (c)(1).

17.     The Court has jurisdiction to grant immediate temporary and permanent injunctive relief under 11 USC Sec. 105.

**C. Additional Bases of Federal Jurisdiction**

18.     Federal question jurisdiction is conferred by 28 USC §§ 1331 and 1343(a)(4) over Plaintiffs' constitutional claims brought pursuant to 42 USC §1983 without regard to the amount in controversy.   Supplemental jurisdiction over Plaintiffs' statutory and common law claims is conferred by 28 U.S. Code § 1367

19.     This Court has jurisdiction over this case as an adversary proceeding pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §523.

4

## III.  PARTIES

20.    Plaintiff MAURIKIA LYDA, is a citizen of the United States, resident of the City of Detroit, County of Wayne, and the State of Michigan. Plaintiff LYDA is a residential customer of the City of Detroit DWSD, whose drinking water and sewerage service has been shut off by the Defendant.

21.    Plaintiff JOHN SMITH is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff JOHN SMITH is a residential customer of DWSD whose drinking water and sewerage service has been shut off by the Defendant.

22.    Plaintiff NICOLE HILL is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff NICOLE HILL is a residential customer of DWSD whose drinking water and sewerage service was shut off by the Defendant.

23.    Plaintiff ROSALYN WALKER is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff ROSALYN WALKER is a residential customer of DWSD whose drinking water and sewerage service was shut off by the Defendant.

24.    Plaintiff ANNETTE PARHAM is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff ANNETTE PARHAM is a residential customer of DWSD whose drinking water and sewerage service has been shut off by the Defendant.

25.    Plaintiff JANICE WARD is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff JANICE WARD is a residential

5

customer of DWSD whose drinking water and sewerage service has been shut off by the Defendant.

26.     Plaintiff SYLVIA TAYLOR is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff SYLVIA TAYLOR is a residential customer of DWSD whose drinking water and sewerage service has been shut off by the Defendant.

27.     Plaintiff SCOTT EUBANK is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff SCOTT EUBANK is a residential customer of DWSD whose drinking water and sewerage service has been subject to shut off by the Defendant, but was not shut off.

28.     Plaintiff JOANN JACKSON is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff JOANN JACKSON is a residential customer of the DWSD whose drinking water and sewerage service has been shut off by the Defendant.

29.     Plaintiff TAMMIKA R. WILLIAMS is a citizen of the United States, a resident of the City of Detroit, County of Wayne, and the State of Michigan.  Plaintiff TAMMIKA R. WILLIAMS is a residential customer of DWSD whose drinking water and sewerage service has been shut off by the Defendant.

30.     Plaintiff MICHIGAN WELFARE RIGHTS ORGANIZATION is a Detroit-based organization, representing members throughout the City of Detroit who are residential customers of DWSD.

6

31.     Plaintiff PEOPLES WATER BOARD is a Detroit-based coalition, representing members throughout the City of Detroit who are residential customers of DWSD.

32.     Plaintiff NATIONAL ACTION NETWORK-MICHIGAN CHAPTER is a Detroit-based organization, representing members throughout the City of Detroit who are residential customers of DWSD.

33.     Plaintiff MORATORIUM NOW! is a Detroit based organization, representing members throughout the City of Detroit, who are residential customers of DWSD.

34.     CITY OF DETROIT is a Michigan municipal corporation located in Wayne County, Michigan. It is a home rule city organized under PA 279 of 1909, as amended, the Home Rule City Act, MCL 117.1, et seq. It provides water and sewerage service to residents through the Detroit Water and Sewerage Department (DWSD), its agent.

## IV.  STATEMENT OF FACTS

**A.  Water Shut-Offs at Households of Plaintiffs and Other Persons Similarly Situated**

35.     Plaintiff MAURIKIA LYDA lives with her four children age 14, 13, 10 and 5, for whom she has had to make alternative living arrangements while the water is shut off. Plaintiff receives Social Security income and received federal assistance for food. One of the Plaintiff's children attends classes for educationally challenged children.

36.     In the first week of June, 2014, the Plaintiff's water was shut off. Plaintiff's bill at the time was one thousand two hundred dollars ($1200). The front sidewalk of the Plaintiff's home was sprayed with bright blue paint.

37.     Plaintiff went to the classes DWSD office, and was told by the representative that she could only get her water service restored if she paid four hundred thirty eight dollars

7

($438) and entered into a payment plan for the balance. Plaintiff was unable to enter into the payment plan. On or about June 20, 2014, Plaintiff was given a letter by Wayne Metro Community Action Agency stating that they would pay one thousand dollars ($1000) on her bill. The letter was also sent to Gary Watkins, at DWSD. Despite numerous attempts to contact DWSD, and Gary Watkins, Plaintiff's water remains shut off. On three occasions on July 16, 17, 18 2014, Plaintiff remained on hold with the DWSD to attempt to have her DWSD services restored.

38.    Plaintiff JOHN SMITH lives with his mother, a senior citizen with a medical disability.

39.    In early 2014, Plaintiff SMITH entered into a payment plan with Department of Water and Sewerage.  Plaintiff Smith could not afford to pay his water bill, or make payments toward the payment plan on a one thousand ($1,000) dollar Department of Water and Sewerage bill.

40.    In June 2014, Plaintiff SMITH's water was shut off without notice of shutoff. Because he was already on a payment plan when his water was shutoff, Department of Water and Sewerage would not allow him to enter another payment plan. Department of Water and Sewerage representatives advised Plaintiff Smith he could not have his water restored unless he paid the entire $1,000.00. Plaintiff JOHN SMITH and his mother are living in a home without water.

41.    Plaintiff NICOLE HILL has three (3) minor children, ages 14, 13 and 7.  Two of the children have been diagnosed with medical conditions.  Plaintiff moved into her current home in November of 2011.

8

42.     Department of Water and Sewerage continued to add water and sewage from Plaintiff HILL's previous home address to her new address for over a year.  Plaintiff HILL protested the billing for over a year to the Department of Water and Sewerage.  On May 16, 2014 Plaintiff's water bill was over five thousand, seven hundred ($5,700) dollars.

43.     On May 16, 2014, though Plaintiff had an active dispute pending Plaintiff HILL's Department of Water and Sewerage service was terminated without effective notice. A bright blue spray paint was sprayed on her "Water Cap" and in front of her home.

44.     After Plaintiff HILL's Department of Water and Sewerage service was terminated Plaintiff was told she had to pay approximately, one thousand seven hundred ($1,700) dollars as a prerequisite and establish a payment plan for the remaining balance, plus pay the full amount of each monthly Department of Water and Sewerage bill to restore her service, despite the fact her bill was in dispute.

45.     Plaintiff HILL was unable to pay one thousand seven hundred ($1,700) dollars. Plaintiff Hill was so fearful her children would be removed from her home, she took her children to live with neighbors and relatives. While Plaintiff's water was shutoff she received a bill for water and sewage of one hundred and sixty three (163.00) dollars for the time period she was allegedly without service.  Not until July 14, 2014 was Plaintiff's water reconnected, after the intervention of the Plaintiffs Michigan Welfare Rights Organization and Peoples Water Board.  Plaintiff HILL is a member of both organizations.  On July 19, 2014, Plaintiff received a bill with a shut off notice for July 28, 2014, if she did not pay her bill in full.

46.     Plaintiff ROSALYN WALKER is a Detroit resident and a Department of Water and Sewerage residential customer who cannot afford to pay her current delinquent water and

9

sewage account balance or the payment plan required by Department of Water and Sewerage.

47.     On June 12, 2014, Plaintiff WALKER's water and sewage was terminated, without notice.  Plaintiff had been told by Department of Water and Sewerage that her water would not be terminated until June 14, 2014.  A bright yellow paint sign was placed on the sidewalk in front of Plaintiff's home to indicate nonpayment and shut off status.  Plaintiff Walker was only able to have her service reconnected after paying one third of her bill and entering into a payment plan for the balance.  Plaintiff got a loan from a family member and  took money she needed  to pay other bills and money for  food for her child and self to pay the bill.

48.     Plaintiff WALKER lives with her minor child who has the medical condition of asthma, requiring treatment with a water based nebulizer. Plaintiff's minor child is currently enrolled in classes for children with educational challenges.  Plaintiff WALKER is employed, but is required to pay a substantial percentage of her income for water and sewage in the future.  Plaintiff Walker receives federal assistance for medical care and food. Plaintiff suffers emotionally because she does not know how she is going to pay her water bill and the back due bill for her water and sewage each month. Plaintiff states she would pay her bill promptly if her bill from DWSD is based on an affordable percentage of her income.

49.     Plaintiff ANNETTE PARHAM is a physically disabled adult, with a pending claim for Social Security Disability.   Plaintiff PARHAM has been a tenant in her home for approximately one year.  Due to lack of income, Plaintiff PARHAM was unable to afford to pay her Department of Water and Sewerage bill.

10

50.     Without notice, Plaintiff PARHAM's water was shutoff in August of 2013.  A bright blue spray paint was sprayed on her "Water Cap" and sidewalk in front of her home. Plaintiff immediately contacted representatives for Department of Water and Sewerage, and was advised she needed to pay one hundred twelve ($112) dollars and the balance through a payment plan, plus her monthly Department of Water and Sewerage bill.  The total amount owed was approximately three hundred thirty-six ($336) dollars. Plaintiff PARHAM was unable to make the one hundred twelve ($112) dollar payment.

51.     Plaintiff PARHAM continued after August 2013 to live in the house without water, into the winter of 2013, at that time she moved in with family.  In April 2014, Plaintiff moved back into the home, but again was told by Department of Water and Sewerage that she could not have her water restored unless she paid a third of the bill and entered the payment plan.  On July 10, 2014, with the intervention of Plaintiff, Michigan Welfare Rights Organization, Plaintiff PARHAM's water was restored.  Plaintiff PARHAM cannot afford to pay the amount owing on her bill and worries that she will have her water terminated again unless there is an affordable method of payment based on her income.

52.     Plaintiff JANICE WARD lives with her mother, a disabled senior citizen and two minor children.  Both children have the medical condition of asthma and have to use a Nebulizer in their treatment. Another adult member of the family uses a C-Pack for a breathing medical condition.  Both the Nebulizer and the C-Pack require water for the therapy.   The family receives federal assistance for food.

53.     Plaintiff WARD entered into a payment plan in 2013 in about January of February.  In April and July 2013 Plaintiff Wards DWSD service was shut off after Plaintiff was

unable to make the payment before the due date. Each time Plaintiff made a payment plan and had to pay at least one third of her bill.  In July of 2013, part of Plaintiffs water bill was placed on her taxes for her home.  Plaintiff was required to pay the water bill, which had been placed on her taxes in addition to a portion of the overdue water bill.  Plaintiff WARD cannot afford to pay her Department of Water and Sewerage payment plan and the monthly Department of Water and Sewerage bills.

54.     Plaintiff WARD states she cannot afford the large water bills which take up more than twenty percent of her household family income. Plaintiff states she lives in fear that her water will be shut off at any time by DWSD, because she cannot afford to pay the DWSD bill, buy food and pay all the other expenses in her house hold even though she is employed. Plaintiff states she would pay a water bill based

55.     Plaintiff SYLVIA TAYLOR is a home owner living with her two minor children.  One of the Plaintiff TAYLOR's children has asthma, and the other child has education challenges requiring alternative education.

56.     In November, 2013, Plaintiff entered into a payment plan with Department of Water and Sewerage.  Plaintiff TAYLOR was four days late on the Department of Water and Sewerage payment plan when her Department of Water and Sewerage service was terminated without notice on June 16, 2014. Plaintiff TAYLOR's service was restored after Plaintiff paid over two hundred dollars and entered into a payment plan, agreeing to pay on the arrearages and current Department of Water and Sewerage bill. Plaintiff states that by paying a water bill she cannot afford, she is taking money used for food and other household expenses to keep her water on.  Plaintiff's average water bill is over twenty percent of her household family income.

Plaintiff is not sure if she will be able to meet the DWSD obligations each month and has worries that DWSD will shut off her water again. Plaintiff states she would pay an affordable water bill based on her income, if such a plan is implemented.

57. Plaintiff SCOTT EUBANK lives with a disabled person who has a pending Social Security disability application. On or about June 22, 2014, Plaintiff EUBANK was advised by his landlord that his water would be cut off, even though Plaintiff's lease required the landlord to pay the Department of Water and Sewerage bill of one thousand one hundred ($1,100) dollars. Plaintiff Eubank has rented his home for over ten years.

58. On or about June 30, 2014, Department of Water and Sewerage spray painted bright blue paint on Plaintiff EUBANK's "Water Cap" and the sidewalk in front of his home. Plaintiff's household receives federal assistance for food. Plaintiff EUBANK cannot afford to pay a Department of Water and Sewerage bill of $1,100 or enter a payment plan for the bill. Only, after Plaintiff's landlord entered a payment plan in July, 2014. Though Plaintiff Eubank's water and sewage was not terminated, the household member are fearful that the landlord may not pay the bill in the future and they will again be subject to shutoff.

59. Plaintiff JOANN JACKSON, is a homeowner who lives with her husband, a dialysis patient, and two minor grandchildren.

60. On June 20, 2014, Plaintiff JACKSON's water was threatened with shut off because of a three hundred forty ($340) dollar bill. On June 20, 2014, Plaintiff was told by the Department of Water and Sewerage contract employee that her water would be shut off that day, if she did not immediately go to the Department of Water and Sewerage office and pay her

water bill. Plaintiff immediately left her home and paid two hundred and eighteen ($218) dollars to prevent shut off, entering into a payment plan for the balance.

61.     Plaintiff JACKSON is a member of the Nation Action Network-Michigan chapter. Plaintiff states she cannot afford to pay her complete water bill because it is too large a percentage of her family's monthly income. Plaintiff took money necessary for other essentials, including food, to avoid the water shut off on June 20, 2014. Plaintiff states she would pay for affordable water and sewage which is a reasonable percentage of her household income.

62.     Plaintiff TAMMIKA R. WILLIAMS is a resident of Detroit and a DSWD residential customer. Plaintiff lives with her three children ages 7, 10 and 15. Plaintiff WILLIAMS began renting her home approximately four months ago, with the landlord assuming responsibility for paying the Department of Water and Sewerage bill.

63.     On or about June 8, 2014, Plaintiff WILLIAMS DWSD service was shut off without any effective notice. The "Water Cap" and sidewalk in front of Plaintiff's home was spray painted with bright blue spray paint to indicate nonpayment and shut off status. The bill in the landlords name was two thousand ($2,000) dollars. Plaintiff Williams DSWSD services were restored after two days, only after the landlord entered a payment plan. Plaintiff has no control over whether or not the landlord pays the monthly bill and outstanding arrearages. Plaintiff has concern that her water will be shut off again in the future.

64.     DWSD, only after Maureen Taylor and other member of the Michigan Welfare Rights Organization, and the People Water Board met with Assistant Director Latimer in July 2014, began to restore services to some residents, but only after Michigan Welfare Right

Organization and or the Peoples Water Board advocated for the customers. This case by case bases for restoring services only if an advocacy organization gets involved is not an adequate remedy for resolving thousand of service shutoffs.

**B. Defendant's Written Rules & Policies Concerning Collection, Payments, and Termination of Service (Shut-off)**

65.     The Defendant's "Interim Collection Rules and Procedures" require that a "Final Notice" scheduling a water shut-off be sent only one (1) day after a "Past Due Notice" is sent. The rules specify that customers be provided with 20 days to pay current bills.  Rule 1(2).  If the bill is not paid by the due date (within 20 days of the billing date), a Past Due Notice issues 11 days after the due date (31 days after the billing date) and a Final Notice issues 32 days (one day later) after the billing date.  Rule 6(2)(a) and (b).  Customers therefore are required to pay bills sent on a 3 month billing cycle within one month or they are subject to shut-off.

66.     Further, the rules require that the "Final Notice" contain "a statement informing the customer of the opportunity to enter into a Payment Plan Agreement (PPA) with City's Department of Water and Sewerage, if the amount of the bill is not in dispute and the customer is presently unable to pay in full the amount due." Rule 6(2)(d).

67.     Rule 19 provides that Department of Water and Sewerage may terminate service if "the bill is not paid within ten (10) days of the date specified as "Notice Date" on the WATER SHUT OFF –FINAL NOTICE."   However, the Plaintiffs and other persons similarly situated did not receive the "WATER SHUT OFF-FINAL NOTICE, nor the "Notice Date."

68.     Rule 7 of the collection rules provides procedures for disputing a bill, and Rule 8 provides hearing procedures.   However, none of the Plaintiffs or other persons similarly situated were adequately informed of this process.

**C. New Policy of Mass Water Shut Offs**

69.     On or about April of 2014, Defendant commenced a policy and program of mass water shut offs for any residential customer in more than 60 days delinquent, or with an arrearage exceeding $150.00.

70.     The individual Plaintiffs and thousands of other similarly situated residential customers were subjected to water shut offs without adequate notice or an opportunity to be heard pursuant.

71.     Moreover, these shut offs were conducted in violation of Defendant's written collection policies.

**D. Discriminatory Enforcement Against Residential Accounts**

72.     Defendants have been, and continue to be engaged in a protracted process of terminating water service to thousands of residential consumers who are alleged to be delinquent in their payments for water and sewerage services.

73.     At the time of commencement of the residential water shutoffs, and for an extended period thereafter, there were numerous commercial water service consumers that were acknowledged to be delinquent in their payments for water and sewerage services. Upon information and belief, commercial water service consumers with accounts that were more than 60 days past due as of the end of June, 2014, including but were not limited to:

| Account # | Customer Name | Bill Cycle | Past Due, Over 60 Days |
|---|---|---|---|
| 300,541.300 | STATE OF MICHIGAN-DMB | 903 | 4,971,000.64 |
| 301,271.302 | VARGO GOLF | 903 | 437,714.11 |
| 101,372.300 | EQ DETROIT, INC | 1 | 255,132.94 |
| 6,202,647.300 | SHELBOURNE SQUARE APTS | 962 | 253,940.80 |
| 200,184.300 | METRO LIVERNOIS, LLC | 2 | 247,017.75 |
| 200,551.300 | HEARTLAND COMMUNITY | 802 | 204,519.76 |
| 300,937.301 | RUSSELL INDUSTRIAL ASSOCIATES | 903 | 159,240.91 |
| 100,566.300 | MATRIX | 701 | 130,689.81 |
| 200,563.301 | ATOM LLC | 802 | 112,327.27 |
| 100,959.300 | MICHIGAN WASTE ENERGY INC. | 701 | 102,887.57 |
| 201,242.302 | VARGO GOLF | 802 | 100,527.58 |
| 200,449.302 | CHRYSLER GROUP, LLC | 802 | 96,771.27 |
| 5,001,709.300 | COLONIAL MANOR PROPERTIES LLC | 850 | 84,046.24 |
| 201,405.300 | RESIDENT (New Fellowship Church) | 802 | 80,998.51 |
| 300,133.300 | CROWN ENTERPRISES INC | 3 | 80,729.33 |
| 201,035.300 | IVEY AND ASSOCIATES | 802 | 79,219.59 |
| 100,500.300 | BAY LOGISTICS | 701 | 73,642.45 |
| 300,539.300 | STATE OF MICHIGAN-DMB | 903 | 70,426.02 |
| 100,525.300 | SAPERSTEIN ASSOCIATES | 701 | 61,674.15 |
| 201,046.300 | 8 MILE PROPERTY INVESTMENTS LLC | 802 | 60,002.65 |
| 5,700,334.300 | CHEYENNE COIN LAUNDRY | 857 | 57,683.47 |
| 300,818.300 | MT. OLIVET CEMETERY | 903 | 56,913.87 |
| 300,331.300 | INTEGRATED PACKAGING | 903 | 55,592.30 |
| 5,701,809.300 | RESIDENT (G F H Enterprises, Inc) | 857 | 52,519.43 |
| 7,200,015.300 | RESIDENT (17900 Ryan Rd, LLC) | 972 | 51,409.45 |
| 200,500.300 | RESIDENT (West Chicago Development, LLC) | 2 | 49,545.37 |
| 201,527.300 | DISPOSAL & RECYCLING TECH. | 2 | 48,944.12 |
| 300,568.301 | CHRYSLER GROUP LLC | 903 | 48,870.49 |
| 300,106.301 | METRO BUILDING GROUP, LLC | 903 | 48,256.41 |

77. Notwithstanding the delinquency of numerous commercial water service consumers, Defendants failed to terminate services for these enterprises and/or they failed to terminate services for these enterprises in the manner used for residential consumers.

78. Not until there was international condemnation of the selective termination of water services did Defendants claim to have lacked the capacity to interrupt commercial water services. Only after widespread public criticism did Defendants claim they would begin terminating service to delinquent commercial water consumers.

79. Because both commercial and residential DWSD customers receive the same type of services from the Defendant, Plaintiffs and other residential water consumers are similarly situated to commercial water consumers. There is no rational basis for the difference in treatment between residential and commercial water consumers, and these practices are impermissibly discriminatory.

**E. Public Trust**

80. Defendants have been, and continue to be engaged in a protracted process of terminating water service to thousands of residential consumers who are alleged to be delinquent in their payments for water and sewerage services.

81. All of the named individual Plaintiffs, have and enjoy rights as legal beneficiaries of the public trust waters that have been and are diverted or withdrawn from Lake Huron and/or the Detroit River by DWSD, which are held by the State, and its political subdivisions, in public trust for the benefit and right of each citizen (including Plaintiffs without limitation) to

sustenance, drinking water, bathing, health and sanitation, among other protected rights of use.

**F. Interest Rate Swaps Increased Water Bills for Detroit Residents Without Benefits**

82. In 2011, the City of Detroit issued $500,675,000 in Water Supply System Revenue and Revenue Refunding Bonds. $221,921,429 of the proceeds of these bonds was utilized to pay termination fees on interest rate swaps hedging previous bond water bond offerings.

83. The interest rate swaps were held by Citigroup, JP Morgan Chase Bank, NA, Loop Financial Products (connected to Deutsche Bank), Morgan Stanley Capital Services, Inc., SBS Financial (backed by Bank of America) and UBS AG.

84. In 2012, the City of Detroit issued Sewage Disposal System Revenue and Revenue Refunding Bonds in the amount of $659,780,000. $314,333,100 of the proceeds of these bonds were utilized to pay termination fees on interest rate swaps hedging previous sewerage bond offerings.

85. The effect of these interest rate swap termination payments was that certain banks received payments through DWSD bond funds, and infrastructure repairs were not made, resulting in significant leakages in the systems, which contributed to the increased water bills, and higher water rates for residential users.

86. On May 6, 2011, UBS entered into a consent decree with the Securities and Exchange Commission (Case. NO 11-02539, US District Court, District of New Jersey) in a complaint filed against UBS for municipal bond fraud. Among the municipal bonds with which UBS acknowledged wrongdoing were its Series 2001 and Series 2001 C Detroit Sewerage

Revenue bonds. Despite this admission of wrongdoing, on information and belief UBS received swap termination payments in 2012 in connection with swaps connected to these fraudulent bond offerings.

87.     In 2010, Bank of America agreed to pay $137 million in restitution for its involvement in a conspiracy to rig bonds on 88 municipal bond contracts.

88.     In December 2012, UBS agreed to pay $1.5 billion to U.S., U.K. and Swiss regulators for attempting to manipulate the LIBOR.

89.     The Defendant failed to investigate the misconduct or take measures to recoup any portion of the $537 million in suspect termination fees paid to the banks out of the 2011 and 2012 bond issues.

90.     These bond offerings, and failure to recoup illegal termination fees, caused the Defendant to implement rate increases, changes in collection policy and practices, leading to the immediate shut-off of low-income residents for water bill delinquencies.

**G. Public Health Emergency**

91.     The United States Department of the Army has authoritatively stated a sufficient supply of water is essential to human life: "Water is one of your most urgent needs in a survival situation. You can' t live long without it, especially in hot areas where you lose water rapidly through perspiration. Even in cold areas, you need a minimum of 2 liters of water each day to maintain efficiency. More than three-fourths of your body is composed of fluids. Your body loses fluid as a result of heat, cold, stress, and exertion. To function effectively, you must replace the fluid your body loses. So, one of your first goals is to obtain an adequate supply of water." Field Manual 21-76, page 66 (USDA, 2008)

92.     Water is essential to human health; in a press release on July 14, 2014, a professional nurse's association said "Nurses know the critical leak between access to water and public health.  Lack of water, like unsafe sanitation, is a major health disaster that can lead to disease outbreaks and pandemics."  National Nurse's United: Press Release 7/17/2014.

**H.  Defendant's Former Policy of Transferring Water Bills to Tax Liens for Enforcement**

93.     The Defendant's over the past several years adopted a policy and practice of not shutting off delinquent water bills, and instead attached delinquent water bills to property taxes subject to foreclosure, or took no water shut off action on delinquent, accumulating accounts.

94.     Many low-income residents, with no other means to pay their bills, relied upon the Defendant's prior collection policies and practices to maintain their water service.

95.     In the Spring of 2014, the Defendant began to aggressively pursue shut-offs for any residential account with arrearages exceeding $150.00, or which was older than 60 days.

96.     This sudden and dramatic change in policy and practice has resulted in thousands of Detroit residents facing water shut-offs without notice, or with deficient notice, on large water delinquencies, often of $1000 or more.

97.     In order to restore or maintain water service, residents are currently required to pay one-third (1/3) of the accumulated arrearage, and pay the balance of the arrearage in monthly installments, while also paying full current water bills.

98.     Low-income residents are not able to meet these terms to restore or maintain service, when the arrearages are large, which accumulated as a result of the Defendant's prior practice.

## V. CLASS ALLEGATIONS

99.     The named Plaintiffs bring this action on their own behalf, and on behalf of the class of all others persons similarly situated who are residential customers of the City's Department of Water and Sewerage.

100.     The proposed class consists of all persons living in households who have been issued notices of water-shutoffs by the Department of Water and Sewerage and who have had their water or sewerage service shutoff.

101.     Plaintiffs' federal civil rights and state common law claims are  properly subject to class action treatment under Fed. R. Civ. P., Rule 23.

102.     The named Plaintiffs and the members of the proposed class all have typical tangible and legally protectable interests at stake in this action.  The claims of the Plaintiffs and proposed class members have a common origin and basis.  Their claims originate from the same policy, procedures and actions of the Defendants in shutting off drinking water and sewerage service to residential customers.

103.     The Defendants act in the same way toward the Plaintiffs and the proposed class members.  As such, the named Plaintiffs and proposed class members have each been the victim of illegal practices of the Defendants as stated in Counts I through III of this Complaint.

104.     The Plaintiffs claims for relief are typical of the claims of each of the absent class members. If brought and prosecuted individually, the claims of each proposed class member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same relief.

22

105.    The claims and remedial theories pursued by the named class representatives are sufficiently aligned with the interests of absent class members to ensure that the universal claims of the proposed class will be prosecuted with diligence and care by the Plaintiffs as representatives of the class.

106.    The members of the proposed class is so numerous that joinder of all the individual members is impracticable.  The proposed class is in excess of 30,000 households that includes but single unit and multiunit dwellings.  As a result, the number of persons within the class likely significantly exceeds 30,000 persons.  The proposed class is so numerous that the joinder of each of these individuals will be impracticable.

107.    If individual actions were required to be brought by each injured or affected member of the class, the result would be a multiplicity of actions creating a hardship to Plaintiffs and all others similarly situated, to the Defendants, and to the resources of the Court.

108.    Furthermore, all other persons similarly situated, whose water has not yet been shutoff may be reluctant to raise individual claims for fear of retaliation.  A class action is an appropriate method for fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

109.    The named Plaintiffs will fairly and adequately represent the interests of the class, because the named Plaintiffs are members of the class and the claims of the named Plaintiffs are typical of the claims of those in the class.

110.    The named Plaintiffs have retained experienced counsel competent to represent the class.

111.    The adjudication of the putative Fed. R. Civ. P., Rule 23 class claims on a class action basis is superior to other means of adjudication of such claims and/or is desirable based upon the common actions of the Defendants towards the class and/or the risk of inconsistent adjudications and uncertainty regarding the proper standard of conduct by the Defendants if such claims were subject to multiple individual litigations and/or the other criteria of Fed. R. Civ. P., Rule 23 (b)(1), (2) and/or (3) are met warranting the class action certification of such claims.

## VI.  LEGAL CLAIMS

112.    Plaintiffs incorporate by reference paragraphs 1 through 111 above, as though fully stated in each of the following counts.

### COUNT I -- Breach of Executory Contract

113.    Defendant has attempted to reject executory contracts held by residential customers of DWSD without prior consent of the court in violation of 11 USC Sec. 365.

114.    Defendant has acted contrary to federal law in failing to perform the executory contracts.

115.    The actions of the Defendant if not ordered to cease and desist will cause the plaintiffs to be permanently and totally injured without adequate remedy at law.

### COUNT II – Constitutional Violation: Procedural Due Process

24

116. Plaintiffs bring this claim, individually and on behalf of all other persons similarly situated, pursuant to 42 U.S.C. §1983.

117. Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, Defendants, acting in their respective individual and/or official capacities, Defendants have engaged in conduct and adopted laws and policies that violate Plaintiffs' and similarly situated persons' rights under Amend. XIV of the U.S. Constitution.

118. Amendment XIV of the U. S. Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

119. Water service to private residences is the most basic and essential utility service, and is necessary for the health and safety of the residents.

120. Under the Detroit City Charter, Detroit residents "have a right to expect city government to provide for its residents, . . . safe drinking water and a sanitary, environmentally sound city". *Detroit Charter, Declaration of Rights, Part II, 1*.

121. As recognized by the United States Supreme Court, the "discontinuance of water or heating for even short periods of time may threaten health and safety." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1,18 (1978).

122. Water provided through public utilities is "a necessity of modern life" and continued access to it is a property right accorded due process protections.

123. Terminating water service without sufficient prior notice, without the opportunity for a hearing, or without an effective post termination hearing process, is in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. at 22.

124.    The Defendants violated the Due Process Clause of US Const., Amend. XIV through custom, policies and actions, including but not limited to:

a.  Systematically terminating water services without providing adequate notice of shutoffs;

b.  Systematically terminating water services without providing adequate opportunity for customers to contest the shutoffs;

c.  Systematically terminating water services without providing the opportunity for a hearing before customer's water is shutoff;

d.  Failing to implement and observe its own bill collection rules, practices and procedures;

e.  Failing to implement and observe its own bill payment rules, practices and procedures;

f.  Failing to give adequate notice of bills due;

g.  Failing to give adequate notice of due dates, deadlines and other dates related to payment of bills and remittance opportunities prior to shutoffs;

h.  Failing to give adequate time for the payment of water bills after giving notice of bills due;

i.  Failing to provide notice of potential payment plans on final notices;

j.  Failing to offer reasonable payment plans to qualifying customers;

k.  Failing to provide notice of and/or provide procedures to dispute bills prior to a shutoff; and/or

l.  Failing to provide notice of and/or provide an opportunity for a hearing prior to a shutoff.

80.    As a direct and proximate result of the Defendants' custom, policies and actions, Plaintiffs and all other persons similarly situated have suffered and will continue to suffer a loss of their constitutionally-protected rights.

26

**COUNT III – Constitutional Violation: Equal Protection**

81.     Plaintiffs bring this claim, individually and on behalf of all other persons similarly situated, pursuant to 42 U.S.C. §1983.

82.     Acting under color of law and pursuant to the customs, policies and practices of the State of Michigan, the Defendant, acting in its official capacities, has engaged in conduct and adopted laws and policies that violate Plaintiffs' and similarly situated persons' rights under Amend. XIV of the U.S. Constitution.

83.     The practice of treating residential account holders in arrears differently than commercial account holders, it constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

84.     As a direct and proximate result of the Defendant's custom, policies and actions, Plaintiffs and all other persons similarly situated have suffered and will continue to suffer a loss of their constitutionally-protected rights.

**COUNT IV --  Michigan Constitution: Public Health Emergency**

85.     Section 52 of Article IV, Michigan Constitution of 1963 states: "The conservation and development of the natural resources of the state aer hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people. The legislature shall provide for the protection of the air, water, and other natural resources of the state from pollution, impairment and destruction."

86.     The legislature has implemented these constitutional provisions by positive legislation and the Courts have adapted the Common Law to implement these constitutional provisions.

27

87. The Court has authority to enforce state law as it affects the rights and duties of the Debtor under the Michigan Constitution.

88. Unless Plaintiffs are granted an injunction against the Defendant to cease and desist from withholding water in violation of the Constitution of the State of Michigan, the Plaintiffs will be irreparably harmed without adequate remedy at law.

## COUNT V -- Estoppel

89. Because it was the policy of the City of Detroit to allow the accumulation of large unpaid water bills without shut-offs, the City of Detroit should be estopped from suddenly and without warning changing its policy, when this change in policy is resulting in hardship to the residents of the City of Detroit who are having their water shut-off without notice or recourse.

## COUNT VI: Right To Declaratory and Injunctive Relief

135. Plaintiffs will suffer immediate and irreparable harm including threats to health and safety, if Defendant is not enjoined from executing its policy of mass water shut offs in violation of due process and equal protection.

## VI. RELIEIF

WHEREFORE, Plaintiffs pray that this Court:

A. Issue a temporary restraining order (TRO), to stop all water shut offs and restore service to DWSD residential customers, and schedule an evidentiary hearing for a preliminary and permanent injunction;

B. Provide declaratory relief finding that Defendant's policies, procedures and actions relating to notice of bills, opportunities for payment and shutoffs violate the Due

28

Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution;

C.  Provide declaratory relief finding that Defendants' policies, procedures and actions relating to dispute of bills and the opportunity for hearings before water service shutoffs violate the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution;

D.  Grant preliminary and permanent injunctive relief stopping water shut offs and restore service to DWSD residential customers, consistent with Constitutional requirements;

E.  Order the DWSD to implement a water affordability plan with income based payments for DWSD residential customers;

F.  Reasonable attorneys' fees and costs; and

G.  Further relief as is just and equitable.

Respectfully Submitted,

FOR THE PLAINTIFFS:

By:__/s/_kurt thornbladh_____
KURT THORNBLADH P25858
Thornbladh Legal Group PLLC
7301 Schaefer
Dearborn, MI 48126
(313) 943 2678
kthornbladh@gmail.com
CO-LEAD COUNSEL

By:__/s/_alice b. jennings_____
ALICE B. JENNINGS P29064
Edwards & Jennings, P.C.
Cadillac Tower Building
65 Cadillac Square, Suite 2710
Detroit, MI 48226
(313) 961 5000
ajennings@edwardsjennings.com
CO-LEAD COUNSEL

29

By:_/s/_jerome d. goldberg_____
JEROME D. GOLDBERG P61678
Jerome D. Goldberg PLLC
2921 E. Jefferson Ave. Ste 205
Detroit MI 48267
(313) 393 6001
apclawyer@sbcglobal.net
CO-LEAD COUNSEL

By:_/s/_john c. philo_____
JOHN C. PHILO P52721
Maurice & Jane Sugar Law Center
    For Economic & Social Justice
4605 Cass Avenue
Detroit, MI 48201
(313) 993 4505
jphilo@sugarlaw.org

Dated: July 20, 2014