## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                                    :          Chapter 9
:
CITY OF DETROIT, MICHIGAN,               :          Case No. 13-53846
:
                          Debtor.        :          Hon. Steven W. Rhodes
:
-------------------------------------------------------x

## DECLARATION OF MICHAEL J. PAQUE REGARDING
## THE SOLICITATION AND TABULATION OF VOTES ON, AND
## THE RESULTS OF VOTING WITH RESPECT TO, FOURTH AMENDED
## PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

I, Michael J. Paque, make this Declaration under 28 U.S.C. § 1746 and state as follows:

1.     I am over 18 years of age and not a party to the above-captioned action.

2.     I am employed as a Director of Corporate Restructuring Services with Kurtzman Carson Consultants LLC ("KCC"), the claims, noticing and balloting agent for the above-captioned debtor, the City of Detroit, Michigan (the "City").  I have been an employee of KCC for approximately nine years.

3.     I submit this Declaration in connection with the tabulation of votes for the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, dated May 5, 2014 (Docket No. 4392) (as it has been and may be further

modified, amended or supplemented, the "Plan").  Except as otherwise noted,

I could and would testify to the following based upon my personal knowledge.

4.     Capitalized terms not otherwise defined herein have the

meanings given to them in:  (a) the Plan; (b) the Order (I) Establishing Procedures

for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment

and (II) Approving Notice Procedures Related to Confirmation of the Plan of

Adjustment (Docket No. 2984) (the "Primary Solicitation Order"); and

(c) the Order Establishing Supplemental Procedures for Solicitation and Tabulation

of Votes to Accept or Reject Plan of Adjustment with Respect to Pension and

OPEB Claims (Docket No. 4400) (the "Retiree Solicitation Order" and, together

with the Primary Solicitation Order, the "Solicitation Orders").

5.     The City retained KCC to provide, among other services,

solicitation and balloting services in this Chapter 9 Case.  With the exception of the

Securities Classes (as defined below), I am the employee of KCC that was

responsible for coordinating all aspects of the solicitation, balloting and tabulation

process in this Chapter 9 Case.[1]  This Declaration sets forth the actions taken by

---

[1]     The employee of KCC responsible for coordinating the solicitation, balloting
and tabulation process in this Chapter 9 Case for the Securities Classes was
Peter Walsh.  Mr. Walsh has executed a separate declaration (the "Walsh
Declaration" or "Walsh Decl.") regarding the actions taken by employees of
KCC in its capacity as Balloting Agent in this Chapter 9 Case with respect to
the solicitation and tabulation of votes in the Securities Classes.  The Walsh

employees of KCC, including persons working at my direction and under my supervision, in KCC's capacity as Balloting Agent in this Chapter 9 Case.

6.      As specified in paragraph 3 of the Retiree Solicitation Order, March 1, 2014 was established as the record date for determining (a) each Pension Claimant's employment status and (b) the amount of each OPEB Claim (the "Pension/OPEB Record Date").  It is my understanding that, pursuant to the Retiree Solicitation Order, the Pension/OPEB Record Date was used for purposes of estimating Pension and OPEB Claims pursuant to the Claims Estimation Procedures and for purposes of voting on the Plan.  As specified in paragraph 3 of the Primary Solicitation Order, April 14, 2014 was established as the record date for purposes of determining which creditors other than Pension and OPEB Claimants would be entitled to vote on the Plan.

7.      Pursuant to the Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, dated April 21, 2014 (Docket No. 4202), May 12, 2014 (the "Solicitation Deadline") was established as the deadline for the mailing of Solicitation Packages in accordance with the Solicitation Orders.  Pursuant to the Fifth Amended Order Establishing Procedures, Deadlines and Hearing Dates

---

(continued…)

Declaration is attached hereto as Exhibit A and cited herein as necessary or appropriate.

-3-

Relating to the Debtor's Plan of Adjustment, dated June 9, 2014 (Docket No. 5259) (the "Fifth Amended Scheduling Order"), the deadline for voting to accept or reject the Plan was established as July 11, 2014 (the "Voting Deadline").[2]

8.    To be tabulated by KCC, the original form of Class 1A, 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15 Ballots (including Master Ballots) with an original signature must have been properly executed, completed and delivered to KCC either by (a) mail, (b) overnight courier or (c) personal delivery so that, in each case, they were received by KCC no later than the Voting Deadline. See Primary Solicitation Order ¶ 8; Retiree Solicitation Order ¶ 10(b).

9.    Paragraph 9 of the Primary Solicitation Order established certain procedures governing the resolution of disputes related to the entity entitled

---

[2]    The Fifth Amended Scheduling Order amended:  (a) the Primary Solicitation Order (which previously had established, and approved solicitation materials that identified, 5:00 p.m., Eastern Time, on June 30, 2014 as the Voting Deadline); and (b) the Retiree Solicitation Order (which previously had established, and approved solicitation materials that identified, 5:00 p.m., Eastern Time, on July 11, 2014 as the Voting Deadline for Pension and OPEB Claimants) with respect to the Voting Deadline.  Unlike the Primary Solicitation Order and the Retiree Solicitation Order, the Fifth Amended Scheduling Order did not identify a time of day for the Voting Deadline. Likewise, the ASF Ballot Order (as such term is defined below) established July 11, 2014 (no time specified) as the deadline for certain Class 11 claimants to return modified replacement Ballots mailed by KCC pursuant to such order.  See ¶¶ 30-31 below.  As such, it is unclear if the deadline for submitting Ballots should be considered 5:00 p.m., Eastern Time, on the Voting Deadline, or at the end of the day.  In any event, KCC did not receive any properly submitted Ballots between 5:00 p.m., Eastern Time, and 11:59 p.m., Eastern Time, on July 11, 2014.

to vote a given Claim (the "Voting Dispute Resolution Procedures").  Pursuant to

the Voting Dispute Resolution Procedures, the Court entered the following orders

establishing the parties identified therein as the sole parties authorized to vote

certain Claims (collectively, the "Voting Rights Orders"):

- Order Concerning Voting by Insurers of DWSD Bonds and Certain Holders of DWSD Insured Bond Claims (Docket No. 5588);

- Order Authorizing National Public Finance Guarantee Corporation to Vote Certain Class 8 Unlimited Tax General Obligation Bond Claims (Docket No. 5719) (the "National Class 8 Voting Order");

- Order Authorizing National Public Finance Guarantee Corporation to Vote the National DWSD Bond Claims (Docket No. 5720);

- Order Authorizing Assured Guaranty Municipal Corp. to Vote Certain Claims in Class 1A (Docket No. 5721);

- Order Authorizing Assured to Vote Claims in Class 8 (Docket No. 5725) (the "Assured Class 8 Voting Order");

- Order Authorizing Financial Guaranty Insurance Company to Vote and Make Elections with Respect to Certain DWSD Bond Claims (Docket No. 5758);

- Order Authorizing Ambac Assurance Corporation to Vote Certain Class 7 Limited Tax General Obligation Bond Claims and Certain Class 8 Limited Tax General Obligation Bond Claims (Docket No. 5774) (the "Ambac Voting Order"); and

- Order Regarding Tabulation of Plan Votes and Elections with Respect to Certain COP Claims (Docket No. 5927).

10.     KCC tabulated all votes in accordance with the Amended

Tabulation Rules and the Pension/OPEB Tabulation Rules, as applicable.

In addition, the Court has entered various orders and approved various stipulations

that established, among other things, the entities entitled to receive Solicitation

Packages to vote certain Claims or the voting amounts of certain Claims,

including, but not limited to, orders and stipulations granting or otherwise

resolving Rule 3018 Motions (collectively, the "Other Voting Orders").  The Other

Voting Orders include, but are not limited to, the following:

- Order Approving Stipulation by and Between the City of
  Detroit and the Public Safety Unions Regarding Ballots and
  Voting for Public Safety Unions (Docket No. 3799)
  (the "Public Safety Union Order");

- Order, Pursuant to Bankruptcy Rule 3018(a), Temporarily
  Allowing, for Voting Purposes Only, (A) Proof of Claim
  Number 2958 Filed by Michigan AFSCME Council 25 and Its
  Affiliated Detroit Locals and (B) Proof of Claim Number 2851
  Filed by the Coalition of Detroit Unions (Docket No. 5540);

- Order Regarding the Voting of Claims Relating to the
  36th District Court (Docket No. 5905);

- Order Resolving Motion of Syncora Guarantee Inc. and
  Syncora Capital Assurance Inc. to Enforce the Solicitation
  Procedures Order (Docket No. 5980); and

- Order Regarding Motion for Temporary Allowance of Claim of
  the Macomb Interceptor Drain Drainage District (MIDDD)
  Pursuant to Fed. R. Bankr. P. 3018(a) (Docket No. 6162).

As applicable, KCC has tabulated votes to accept or reject the Plan in accordance

with the Other Voting Orders.

11. Consistent with paragraph 10 of the Primary Solicitation Order, those subclasses of Class 1A identified as "Unimpaired" on Exhibit I.A.110 to the Plan and Classes 1B, 1C, 2A, 2B, 2C, 2D, 2E, 2F, 3, 4, 6 and 16 (collectively, the "Non-Voting Classes") were identified as non-voting classes, with respect to which votes to accept or reject the Plan were not required. Accordingly, consistent with the Primary Solicitation Order, on or before May 12, 2014, KCC (a) served a Notice of Non-Voting Status on all known holders of Claims in the Non-Voting Classes and (b) did not provide holders of Claims in the Non-Voting Classes with a Ballot to cast votes on the Plan with respect to Claims classified in such Classes.[3] See Certificate of Service (Docket No. 6174), at ¶ 15; Certificate of Service (Docket No. 6177) at ¶ 20.

12. Consistent with paragraph 7 of the Primary Solicitation Order and paragraph 10 of the Retiree Solicitation Order, those subclasses of Class 1A identified as "Impaired" on Exhibit I.A.110 to the Plan (the "Voting DWSD Bond Claim Classes") and Classes 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15 (collectively with

---

[3] The Primary Solicitation Order identifies as non-voting classes those Classes that were either (a) unimpaired or (b) impaired and receiving no distribution under the Plan for the Adjustment of Debts of the City of Detroit, dated February 21, 2014 (Docket No. 2708) (the "Original Plan"), which was subsequently amended. In consultation with the City's counsel, KCC has applied the rules established by the Primary Solicitation Order regarding the solicitation of non-voting classes under the Original Plan to the revised Plan and its Classes.

-7-

the Voting DWSD Bond Claim Classes, the "Voting Classes") were entitled to vote to accept or reject the Plan.[4]

13.     Holders of Claims in the Voting DWSD Bond Claim Classes and Classes 9 and 14 were permitted to make certain elections on their Ballots. Specifically, each Beneficial Holder or each Insurer of securities giving rise to a claim in the Voting DWSD Bond Claim Classes was permitted to elect the form of Distribution they are entitled to receive under the Plan (the "Distribution Election"). Each Beneficial Holder or each Insurer of securities giving rise to a Class 9 COP Claim was permitted to elect to participate in the Plan COP Settlement (the "COP Settlement Election"). Finally, each holder of a Class 14 Other Unsecured Claim was permitted to elect to reduce its claim to $25,000 in the aggregate and obtain treatment of such reduced claim as a Class 15 Convenience Claim (the "Convenience Class Election" and, collectively with the Distribution Election and the COP Settlement Election, the "Elections").

14.     As described in greater detail below, KCC solicited votes from the holders of Claims in the following impaired Classes:

Class 1A – Impaired Classes of DWSD Bond Claims;

---

[4]     The Primary Solicitation Order identifies those Classes that were impaired and receiving a distribution under the Original Plan as being entitled to receive a Ballot. In consultation with the City's counsel, KCC has applied the rules established by the Primary Solicitation Order regarding the solicitation of classes entitled to vote under the Original Plan to the revised Plan and its Classes.

Class 5 – COP Swap Claims;

Class 7 – Limited Tax General Obligation Bond Claims;

Class 8 – Unlimited Tax General Obligation Bond Claims;

Class 9 – COP Claims;

Class 10 – PFRS Pension Claims;

Class 11 – GRS Pension Claims;

Class 12 – OPEB Claims;

Class 13 – Downtown Development Authority Claims;

Class 14 – Other Unsecured Claims; and

Class 15 – Convenience Claims.

## Classes 1A, 7, 8 and 9 (Securities Classes)

### *Solicitation of Securities Classes*

15.  <u>Solicitation of Beneficial Holders Through Nominees</u>. Pursuant to the Primary Solicitation Order, in an effort to identify all known members of the Voting DWSD Bond Claim Classes and Classes 7, 8 and 9 (collectively, the "<u>Securities Classes</u>"), KCC relied on the listings of Nominees received from the Depository Trust Company ("<u>DTC</u>") to identify the Holders of Claims in the Securities Classes entitled to vote to accept or reject the Plan and make or not make the Distribution Election or the COP Settlement Election, as

applicable, and in each case in accordance with the terms of the Primary Solicitation Order.  See Walsh Decl., at ¶ 6.

16.    There are approximately 60 Nominees representing the Beneficial Holders of Claims in the Voting DWSD Bond Claim Classes; 40 Nominees representing the Beneficial Holders of Class 7 Limited Tax General Obligation Bond Claims; 50 Nominees representing the Beneficial Holders of Class 8 Unlimited Tax General Obligation Bond Claims; and 20 Nominees representing the Beneficial Holders of Class 9 COP Claims.  Id. at ¶ 7.  Pursuant to the Primary Solicitation Order (as amended by the Fifth Amended Scheduling Order), on or before May 12, 2014, KCC sent Solicitation Packages to the Nominees of the Beneficial Holders of Claims in the Securities Classes with instructions to:  (a) forward the applicable Solicitation Packages to the Beneficial Holders; (b) collect Ballots from the Beneficial Holders (the "Beneficial Ballots"); (c) prepare a master ballot (the "Master Ballot") based on the contents of the Beneficial Ballots; and (d) return the Master Ballot to KCC by the Voting Deadline.  Id. at ¶ 8.

17.    KCC provided Solicitation Packages directly to:  (a) Broadridge Financial Solutions, Inc., Mediant Communications and INVeSHARE (collectively, the "Agents"), which entities act as agents on behalf of the Nominees for the Beneficial Holders of Claims in the Securities Classes; or (b) the Nominees

-10-

appearing on the listings received from DTC, for subsequent forwarding to the underlying Beneficial Holders of Claims in the Securities Classes.  Id. at ¶ 9.  KCC also provided a Master Ballot to each Nominee for their use in reporting the voting and election instructions from the underlying Beneficial Holders.  Id.  In total, KCC provided approximately 26,000 individual Solicitation Packages to the Nominees and the Agents for forwarding to the underlying Beneficial Holders.  Id.  An affidavit evidencing the mailing of the Solicitation Packages from the Agents to the respective Beneficial Holders was filed with the Court on July 21, 2014, 2014 (Docket No. 6174).

18.     Direct Solicitation of Insurers.  Also pursuant to the Primary Solicitation Order (as amended by the Fifth Amended Scheduling Order), on or before May 12, 2014, KCC sent Solicitation Packages to the Insurers of the securities giving rise to claims in the Securities Classes, at the addresses provided by the Insurers, with instructions to return their Ballots directly to KCC by the Voting Deadline.  Walsh Decl. at ¶ 10.

**Tabulation of Securities Classes**

19.     Pursuant to the Primary Solicitation Order, KCC received and tabulated Securities Class Ballots as follows:  (a) each returned Ballot and Master Ballot was opened and inspected at KCC's offices; (b) Ballots and Master Ballots were date-stamped and time-stamped; and (c) all Ballots and Master Ballots

received on or before the Voting Deadline were tabulated in accordance with (i) the Amended Tabulation Rules, (ii) the applicable Voting Rights Orders and (iii) any applicable Other Voting Orders. Id. at ¶ 11.

20.     In total, KCC received and processed 1,323 Master Ballots representing over 3,100 Beneficial Holder accounts. Id. at ¶ 12. Of these Master Ballots: (a) 921 were received from Nominees of Claims in Voting DWSD Bond Claim Classes; (b) 78 were received from Nominees of Limited Tax General Obligation Bond Claims; (c) 302 were received from Nominees of Unlimited Tax General Obligation Bond Claims; and (d) 22 were received from Nominees of COP Claims. Id.

21.     KCC also received: (a) three Insurer Ballots directly from Insurers of DWSD Bond Claims; (b) one Insurer Ballot directly from the Insurer (i.e., Ambac) of Limited Tax General Obligation Bond Claims; (c) four Insurer Ballots directly from Insurers of Unlimited Tax General Obligation Bond Claims; and (d) three Insurer Ballots directly from Insurers of COP Claims. Id. at ¶ 13.

22.     In accordance with the National Class 8 Voting Order, the Ambac Voting Order and the relevant notices of voting rights associated therewith (Docket Nos. 5026 and 5030, respectively), the Insurer Ballots submitted by National and Ambac were tabulated in Class 7 and Class 8 as follows: (a) each Insurer was deemed to have voted the entire amount of general obligation debt

insured by such Insurer in the relevant Class of Claims; and (b) each Insurer was

deemed to have cast a discrete vote on behalf of each Beneficial Holder that

(i) held debt instruments in a series of general obligation debt insured by such

Insurer as of the applicable record date and (ii) cast a timely and valid vote with

respect to such debt.[5]  Walsh Decl. at ¶ 14.

---

[5]   The total number of Beneficial Holders holding general obligation debt in
      Classes 7 and 8 is not known to the City, the Insurers and KCC because such
      debt is held through Nominees in street name.  Walsh Decl. at ¶ 15.  As
      such, although National Public Finance Guarantee Corporation ("National")
      and Ambac Assurance Corporation ("Ambac") have been deemed to vote the
      entire amount of their insured debt in Classes 7 and 8, it is not possible to
      determine the precise number of Beneficial Holders holding Class 7 Claims
      or Class 8 Claims to whose rights the Insurers were subrogated pursuant to
      the applicable Voting Rights Orders.  Id.  Nevertheless, the City and KCC
      know that the number of Beneficial Holders in each insured CUSIP is *not
      less than* the number of Beneficial Holders who actually cast votes on the
      Plan consistent with the Primary Solicitation Order, as reflected in timely
      and proper Master Ballots.  Id.  As such, National and Ambac have been
      deemed to have voted on behalf of each Beneficial Holder that actually cast
      a vote in Class 7 or Class 8 in the applicable insured CUSIP (which Holders
      represent a subset of all Beneficial Holders holding Claims that National and
      Ambac are entitled to vote pursuant to the Voting Rights Orders).  Id.  This
      ensures that National and Ambac are permitted to vote on behalf of their
      insured Beneficial Holders in Classes 7 and 8 consistent with the Voting
      Rights Orders, while also ensuring that the votes of National and Ambac are
      not overstated.  Id.  For the same reasons, Insurers submitting Insurer Ballots
      voting Claims in impaired Voting DWSD Bond Claim Classes and Class 9
      pursuant to the Voting Rights Orders are likewise deemed to have voted on
      behalf of each Beneficial Holder that actually cast a vote in the applicable
      insured CUSIP, as reflected in timely and proper Master Ballots.  Id. at ¶ 16.
      With respect to impaired Voting DWSD Bond Claim Classes 1A-10, 1A-11,
      1A-126 and 1A-142, (a) no Beneficial Holder submitted a timely and proper
      Ballot and (b) KCC tabulated only the votes cast by the applicable Insurers

23.     The notice of voting rights (Docket No. 5015) filed by Assured Guaranty Municipal Corporation ("AGMC") and Assured Guaranty Corp. ("AGC" and, together with AGMC, "Assured") provides that "[a]s the sole voting party with respect to the Assured UTGO Bonds, Assured should be granted a single vote for the full allowed amount of the claims arising from the Assured UTGO Bonds." Paragraph 2 of the Assured Voting Order provides that "Assured is the sole party authorized to vote claims arising from the Assured UTGO Bonds, *as set forth in the Voting Notice*." (emphasis added)  Pursuant to the Assured Voting Order, AGMC and AGC each submitted a Class 8 Ballot.  As such, each of AGMC and AGC is granted only a single vote in Class 8 consistent with the Assured Voting Order even though each party otherwise would have been entitled to vote on behalf of each of the Beneficial Holders in CUSIPs that it insures.

24.     Accordingly, consistent with the Assured Voting Order (and the associated notice of voting rights), the Insurer Ballots submitted by AGMC and AGC were tabulated in Class 8 as follows:  (a) AGMC and AGC were deemed to have voted the entire amount of unlimited tax general obligation debt each insured in Class 8; and (b) each was deemed to have cast one vote in Class 8.  Walsh Decl. at ¶ 19.

---

(continued…)

on their respective Insurer Ballots (i.e., as a single vote in each applicable Class).  Id. at ¶ 17.

25.     Due to its voluminous nature, attached hereto as <u>Exhibit B</u> is a summary of the voting results with respect to each of the Voting DWSD Bond Claim Classes.  The far right column of Exhibit B sets forth my belief, after consulting with the City's legal counsel, as to whether the particular Voting DWSD Bond Claim Class accepted or rejected the Plan under the standards of section 1126 of the Bankruptcy Code.

26.     Set forth below is a summary of the voting results with respect to Classes 7, 8 and 9:

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
| --- | --- | --- | --- | --- |
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| Class 7 Limited Tax General Obligation Bond Claims | 11 4.20% | $395,000.00 0.23% | 251 95.80% | $174,907,359.00 99.77% |
| Class 8 Unlimited Tax General Obligation Bond Claims | 322 87.26% | $366,178,494.00 97.35% | 47 12.74% | $9,950,000.00 2.65% |
| Class 9 COP Claims | 0 0.00% | $0.00 0.00% | 40 100.00% | $2,357,934,201.68 100.00% |

27.     After consulting with the City's legal counsel, I believe that the voting results set forth above demonstrate that Class 8 has accepted the Plan and Classes 7 and 9 have rejected the Plan under the standards of section 1126 of the Bankruptcy Code.[6]  To the best of my knowledge, none of the parties voting

---

[6]     It is my understanding that:  (a) the City, Ambac and certain holders of Class 7 Claims currently are negotiating the terms of a settlement

-15-

Claims in the Securities Classes are insiders of the City, as that term is defined in section 101(31) of the Bankruptcy Code.

28.     A ballot report containing a more detailed summary of voting in each of the Securities Classes is attached hereto as <u>Exhibit C</u>.  A report showing the results of the Distribution Election (for the Voting DWSD Bond Claim Classes) and the COP Settlement Election (for Class 9), expressed as an aggregate dollar amount of such Claims making the respective Elections, is attached hereto as <u>Exhibit D</u>.

### *Unacceptable Ballots*

29.     Attached hereto as <u>Exhibit E</u> is a detailed report of any Ballots that were not included in the tabulation of the Securities Classes because they did not satisfy the requirements for a valid Ballot as set forth in the Primary Solicitation Order for the reasons described below:

a.     Late-Filed:  Any Ballot received after the Voting Deadline (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule VI);

b.     Electronic Submission:  Any Master Ballot submitted to KCC via facsimile or email (<u>see</u> <u>id.</u>, at Rule XIX); or

---

(continued…)

establishing the treatment of Class 7 Claims pursuant to the Plan; and (b) upon the execution of any such settlement, the settling parties intend to seek relief from the Court to allow them to change their votes rejecting the Plan (which votes are reflected in the tabulation set forth herein) to acceptances.  In the event such relief is granted, KCC will file a supplement to this Declaration.

      c.     Improper Submission:  Any Beneficial Ballots returned directly to KCC rather than to Nominee (<u>see</u> Primary Solicitation Order, at ¶ 7).[7]

## Classes 10, 11 and 12 (Retiree Classes)

### *Solicitation of Retiree Classes*

30.    In an effort to identify all known members of Classes 10, 11 and 12 (collectively, the "<u>Retiree Classes</u>"), and consistent with the Retiree Solicitation Order, KCC relied on data provided by the City (through its Human Resources Department), the Retiree Committee, the Retirement Systems or their respective professionals to identify the Holders of Claims in the Retiree Classes entitled to vote to accept or reject the Plan.  Pursuant to the Retiree Solicitation Order (as amended by the Fifth Amended Scheduling Order), on or before May 12, 2014,[8] KCC mailed Pension/OPEB Solicitation Packages (in lieu of the standard Solicitation Package) to all Pension and OPEB Claimants as of the

---

[7]    In addition to the language of the Primary Solicitation Order, the Beneficial Ballots provided to Beneficial Holders by their respective Nominees, in the form approved by the Court, expressly instructed the Beneficial Holders to submit their Beneficial Ballots to such Nominees.

[8]    KCC mailed Pension/OPEB Solicitation Packages to a limited number of Pension and OPEB Claimants after May 12, 2014 (but prior to the Voting Deadline) on an *ad hoc* basis upon (a) certain claimants contacting the City because they had not received Ballots and (b) the City's, the Retiree Committee's or the Retirement Systems' professionals having determined (and confirmed to KCC) such claimants' entitlement to vote on the Plan. <u>See</u> Certificate of Service (Docket No. 6177) at ¶¶ 22-24, 31-32, 35-36, 38-41.

Pension/OPEB Record Date, regardless of whether such claimants were listed on the List of Creditors or had filed proofs of claim.[9]  See Certificate of Service (Docket No. 6177) at ¶¶ 13-15.

31.     It is my understanding that, after the initial mailing of the Pension/OPEB Solicitation Packages on May 12, 2014, the City determined that there was a discrepancy between the language of the Plan, on one hand, and certain calculations that were included in Ballots distributed to certain claimants in Class 11, on the other, with respect to the amount of ASF Recoupment.  This discrepancy required recalculation of the ASF Recoupment amounts included in such Ballots.  On June 4, 2014, the Court entered an Order Approving the Stipulation Regarding Certain Class 11 and Class 10 Ballots (Docket No. 5206) (the "ASF Ballot Order"), which order, among other things, required the City to send modified, replacement Class 11 Ballots to affected Class 11 claimants utilizing the proper calculation of their respective ASF Recoupment.  ASF Ballot Order, at ¶ 1.  Pursuant to the ASF Ballot Order, on June 5, 2014, KCC mailed modified replacement Class 11 Ballots to approximately 3,200 individuals

---

[9]     Pursuant to paragraph 8 of the Order, Pursuant to Sections 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket No. 1782), holders of Pension Claims and OPEB Claims (i.e., holders of Claims in the Retiree Classes) were not required to file proofs of claim in the Chapter 9 Case.

-18-

reflecting the updated ASF Recoupment calculations.  See Certificate of Service

(Docket No. 6177) at ¶ 27.

### *Tabulation of Retiree Classes*

32.     Pursuant to the Solicitation Orders, KCC received and tabulated

Class 10, 11 and 12 Ballots as follows:  (a) each returned Ballot was opened and

inspected at KCC's offices; (b) Ballots were date-stamped and time-stamped when

received; and (c) all Ballots received on or before the Voting Deadline were then

tabulated in accordance with (i) the Pension/OPEB Tabulation Rules and (ii) any

applicable Other Voting Order.  On June 17, 2014, counsel for the Retiree

Committee and counsel for the Retirement Systems were granted access to KCC's

El Segundo offices to oversee and inspect the tabulation process and controls and

to consult with KCC professionals regarding the same.

33.     Set forth below is a summary of the voting results with respect

to the Retiree Classes:

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
|---|---|---|---|---|
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| **Class 10** **PFRS Pension Claims** | 5,822 82.17% | $622,376,749.00 82.10% | 1,263 17.83% | $135,649,351.00 17.90% |
| **Class 11** **GRS Pension Claims** | 6,248 73.15% | $780,642,988.00 72.94% | 2,293 26.85% | $289,621,544.00 27.06% |
| **Class 12** **OPEB Claims** | 9,201 88.25% | $1,892,906,817.96 84.62% | 1,225 11.75% | $344,003,106.18 15.38% |

34.    After consulting with the City's legal counsel, I believe that the voting results set forth above demonstrate that Classes 10, 11 and 12 have accepted the Plan under the standards of section 1126 of the Bankruptcy Code.  To the best of my knowledge, only three ballots in Class 11 and one Ballot in Class 12 were submitted by insiders of the City, as that term is defined in section 101(31) of the Bankruptcy Code.

35.    A ballot report containing a more detailed summary of voting in each of the Retiree Classes is attached hereto as <u>Exhibit F</u>.  Detailed ballot reports for each of the Retiree Classes are attached hereto collectively as <u>Exhibit G</u>.[10]

36.    Approximately 138 Ballots sent to KCC via certified U.S. mail were tracked by the United States Post Office as having been delivered to KCC on July 11, 2014, the Voting Deadline (the "<u>Certified Timely Ballots</u>").  However, the Certified Timely Ballots still were physically located at the United States Post Office on July 11, 2014, and were not delivered to KCC until either July 14, 2014 or July 15, 2014 (<u>i.e.</u>, the next two Business Days after the Voting Deadline).  The

---

[10]    To avoid the disclosure of personally identifiable financial information, Exhibit G to this Declaration identifies the Ballots cast by Claimants within the Retiree Classes by reference to the unique numbers assigned by KCC to the Ballots sent to, and submitted by, such Claimants.  Exhibit G does not identify the name of any Claimant in the Retiree Classes.  The City and KCC are prepared to make all information related to votes cast by Claimants in the Retiree Classes available to the Court at any time for *in camera* review, or to other parties in interest pursuant to an order of the Court or subject to appropriate agreements regarding the confidentiality of such information.

-20-

Post Office's delivery receipts for these Ballots designate them as "Delivered" on July 11, 2014 (despite not having been delivered to KCC until July 14, 2014 or July 15, 2014). For purposes of tabulating votes to accept or reject the Plan, KCC, upon consultation with the City's counsel, has tabulated the Certified Timely Ballots as having been received prior to the Voting Deadline. The results including the Certified Timely Ballots are set forth in the chart above.

37. Of the Certified Timely Ballots, 39 were Class 10 Ballots, 59 were Class 11 Ballots and 34 were Class 12 Ballots. Set forth below is a summary of the voting results with respect to the Retiree Classes, excluding the Certified Timely Ballots:

| EXCLUDING CERTIFIED TIMELY BALLOTS | | | | |
|---|---|---|---|---|
| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| Class 10 PFRS Pension Claims | 5,804 82.37% | $620,324,438.00 82.31% | 1,242 17.63% | $133,314,176.00 17.69% |
| Class 11 GRS Pension Claims | 6,221 73.33% | $778,111,577.00 73.09% | 2,262 26.67% | $286,549,905.00 26.91% |
| Class 12 OPEB Claims | 9,179 88.33% | $1,885,701,595.96 84.69% | 1,213 11.67% | $340,963,333.18 15.31% |

38. After consulting with the City's legal counsel, I believe that the voting results set forth above demonstrate that, even excluding the Certified Timely Ballots, Classes 10, 11 and 12 have accepted the Plan under the standards of section 1126 of the Bankruptcy Code.

-21-

### *Unacceptable Ballots*

39.     Attached hereto as <u>Exhibit H</u> is a detailed report of any Ballots that were not included in the tabulation of the Retiree Classes because they did not satisfy the requirements for a valid Ballot as set forth in the Solicitation Orders for the reasons described below:

a.     Late-Filed:  Any Ballot received after the Voting Deadline (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule VI; Retiree Solicitation Order, at ¶ 10.b);

b.     Not Signed:  Any Ballot that was not executed (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule XV; Retiree Solicitation Order, at ¶ 10.b);

c.     Improper Vote:  Any Ballot that did not vote to accept the Plan or reject the Plan, or that voted both to accept and to reject the Plan (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule XI); or

d.     Superseded Vote:  Any Ballot with respect to which a separate Ballot voting the same Claim was subsequently received by KCC (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule XVI).

## <u>Classes 5, 13, 14 and 15 (Non-Security, Non-Retiree Classes)</u>

### *Solicitation of Non-Security, Non-Retiree Classes*

40.     Pursuant to the Primary Solicitation Order, and in consultation with Jones Day, KCC relied on the List of Creditors and KCC's database of the timely proofs of claim filed in the City's Chapter 9 Case to identify the Holders of Claims in Classes 5, 13, 14 and 15 (the "<u>Non-Security, Non-Retiree Classes</u>") entitled to vote to accept or reject the Plan.

-22-

41.     Using this information, and with guidance and approval from the City's professionals, KCC created a voting database reflecting the names of Holders in the Non-Security, Non-Retiree Classes, addresses of such Holders, voting amounts and classification of Claims in those Classes.  Using its KCC CaseView voting database ("KCC CaseView"), KCC generated Ballots for Holders of Claims in the Non-Security, Non-Retiree Classes.  On or before May 12, 2014, KCC caused to be served Solicitation Packages on all known members of the Non-Security, Non-Retiree Classes in accordance with the Primary Solicitation Order (as amended by the Fifth Amended Scheduling Order).  See Certificate of Service (Docket No. 6177) at ¶¶ 12, 16-18.

### Tabulation of Non-Security, Non-Retiree Classes

42.     In accordance with the Primary Solicitation Order, KCC received and tabulated Class 5, 13, 14 and 15 Ballots as follows:  (a) each returned Ballot was opened and inspected at KCC's offices; (b) Ballots were date-stamped and time-stamped when received; and (c) all Ballots received on or before the Voting Deadline were then entered into KCC CaseView and tabulated in accordance with the Amended Tabulation Rules.

43.     Set forth below is a summary of the voting results with respect to the Non-Security, Non-Retiree Classes:

-22-

| IMPAIRED CLASS AND DESCRIPTION | ACCEPT | | REJECT | |
|---|---|---|---|---|
| | VOTES COUNTED | AMOUNT | VOTES COUNTED | AMOUNT |
| **Class 5** **COP Swap Claims** | 2 100.00% | $290,000,000.00 100.00% | 0 0.00% | $0.00 0.00% |
| **Class 13** **Downtown Development Authority Claims** | 1 100.00% | $33,600,000.00 100.00% | 0 0.00% | $0.00 0.00% |
| **Class 14** **Other Unsecured Claims** | 91 46.67% | $57,043,403.12 38.89% | 104 53.33% | $89,629,365.01 61.11% |
| **Class 15** **Convenience Claims** | 153 44.74% | $1,510,158.69 42.08% | 189 55.26% | $2,078,651.86 57.92% |

44.     After consulting with the City's legal counsel, I believe that the voting results set forth above demonstrate that Classes 5 and 13 have accepted the Plan and Classes 14 and 15 have rejected the Plan under the standards of section 1126 of the Bankruptcy Code.

45.     A ballot report containing a more detailed summary of voting in the Non-Security, Non-Retiree Classes is attached hereto as Exhibit I.  Detailed ballot reports for each of the Non-Security, Non-Retiree Classes are attached hereto collectively as Exhibit J.  A detailed report showing the results of the Convenience Class Election (for Class 14) is attached hereto as Exhibit K.

46.     Six of the Certified Timely Ballots were Class 14 Ballots. Two of the six Class 14 Certified Timely Ballots were duplicative of other timely and proper Class 14 Ballots.  Set forth below is a summary of the voting results with respect to Class 14, excluding the Certified Timely Ballots:

| EXCLUDING CERTIFIED TIMELY BALLOTS | | | | |
|---|---|---|---|---|
| **IMPAIRED CLASS AND DESCRIPTION** | **ACCEPT** | | **REJECT** | |
| | **VOTES COUNTED** | **AMOUNT** | **VOTES COUNTED** | **AMOUNT** |
| **Class 14 Other Unsecured Claims** | 90 46.88% | $56,923,403.12 38.85% | 102 53.13% | $89,599,364.01 61.15% |

### *Unacceptable Ballots*

47.    Attached hereto as <u>Exhibit L</u> is a detailed report of any Ballots or Claims that were not included in the tabulation of the Non-Security, Non-Retiree Classes because they did not satisfy the requirements for a valid Ballot for the reasons described below:

  a.    Late-Filed:  Any Ballot received after the Voting Deadline (<u>see</u> Primary Solicitation Order, Exhibit 1, Rule VI);

  b.    Not Signed:  Any Ballot that is not executed (<u>see</u> <u>id.</u>, at Rule XV);

  c.    Improper Vote:  Any Ballot that did not vote to accept the Plan or reject the Plan, or that voted both to accept and to reject the Plan (<u>see</u> <u>id.</u>, at Rule XI);

  d.    Subject to Disallowance Objection:  Any Ballot voting Claims that (i) are subject to an objection filed by the City seeking to disallow such Claims or (ii) were disallowed pursuant to an order of the Court sustaining any such objection (<u>see</u> <u>id.</u>, at Rule VII);

  e.    Not Member of Class:  Any Ballot relating to a claim (i) for which there is no timely-filed proof of claim and there is no corresponding noncontingent, liquidated, undisputed claim held by such claim holder set forth in the List of Creditors and (ii) not classified in the relevant Class (<u>see</u> <u>id.</u>, at Rule X); or

f.    Duplicative of Public Safety Union Claim:  Any Ballot (i) voting Claims identified in proofs of claim filed by the Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association or the Detroit Police Command Officers Association and (ii) submitted by a member of any such union (<u>see</u> Public Safety Union Order, at ¶ 3).

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Executed on July 21, 2014

_____
Michael J. Paque

SUBSCRIBED AND SWORN TO BEFORE ME
this _21_ day of July, 2014.

_____
Notary Public

commission expires: 02-20-2020