**EXHIBIT 6(G)**

Board of Trustees of Detroit General Retirement System v...., Not Reported in...

2006 WL 2061403
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

BOARD OF TRUSTEES OF THE DETROIT
GENERAL RETIREMENT SYSTEM, and
Board of Trustees of the Detroit Policemen &
Firemen Retirement System, Plaintiffs-Appellees,
v.
CITY OF DETROIT and Detroit Chief
Financial Officer, Defendants-Appellants.

Docket No. 259592.   |   July 25, 2006.

Wayne Circuit Court; LC No. 04-412275-CZ.

Before: FITZGERALD, P.J., and SAAD and COOPER, JJ.

Opinion

[UNPUBLISHED]

PER CURIAM.

*1 Defendants appeal as of right from the trial court's declaratory judgment granting plaintiffs' motion for summary disposition under MCR 2.116(C)(10), denying defendants' cross motion for summary disposition, and declaring that plaintiffs' executive secretary "shall have the exclusive right to direct pension bureau employees in the performance of their duties on behalf of the General Retirement System and the Policeman and Fireman Retirement System." We affirm.

The lower court noted, and logic dictates, that the relationship between plaintiffs and defendant is necessarily adversarial at times. This adversarial posture suggests a commonsense conclusion that defendant cannot have control over the appointment and management of the executive secretary responsible for managing plaintiffs' affairs. And we find that the interplay between state law and the city charter also supports this conclusion. We hold that where, as here, a city charter conflicts with a state statute, the state statute controls in any matter that is not purely of local concern. *Bd of Trustees of the Policemen & Firemen Retirement Sys v Detroit*, 143 Mich.App 651, 655; 373 NW2d 173 (1985).

The General Retirement System ("GRS") is a retirement benefit plan for nonuniformed employees of defendant City of Detroit ("city"). The GRS is managed by plaintiff GRS board of trustees. The Policemen and Firemen Retirement System ("P & FRS") is a retirement benefit plan for uniformed employees of the city and is managed by plaintiff P & FRS board of trustees. Defendants argue that the trial court erred in determining that MCL 38.1133(4) entitles plaintiffs to hire their own executive secretary, and to become an independent employer with exclusive control over pension bureau employees.[1]

A trial court's decision on a motion for summary disposition is reviewed de novo. *Maiden v. Rozwood*, 461 Mich. 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Id.* at 119. "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.* The motion may be granted "only where the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Id.* (citation omitted). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. The court must examine the documentary evidence submitted by the parties and, drawing all reasonable inferences in favor of the nonmoving party, determine whether a genuine issue of material fact exists. *Quinto v. Cross & Peters Co*, 451 Mich. 358, 361-362; 547 NW2d 314 (1996). Questions of statutory interpretation are also reviewed de novo. *Heinz v. Chicago Rd Investment Co*, 216 Mich.App 289, 295; 549 NW2d 47 (1996).

Central to this case is § 13(4) of the Public Employee Retirement System Investment Act (PERSIA), MCL 38.1133(4), which provides:

> *2 An *investment fiduciary* may use a portion of the income of the system to defray the costs of investing, managing, and protecting the assets of the system; *may retain* investment and *all other services necessary for the conduct of the affairs of the system; and may pay reasonable compensation for those services.* Subject to an annual appropriation by the legislature, a deduction from the income of a state administered system resulting from the

**EXHIBIT 6(G)**

Board of Trustees of Detroit General Retirement System v...., Not Reported in...

payment of those costs shall be made.
[Emphasis added.]

Section 12c(1) of this act, MCL 38.1132c(1), defines an "investment fiduciary" as

*"a person* other than a participant directing the investment of the assets of his or her individual account in a defined contribution plan *who does any of the following:*

(a) *Exercises any discretionary authority or control in the investment of a system's assets.*

(b) Renders investment advice for a system for a fee or other direct or indirect compensation." [Emphasis added.]

It is undisputed that the plaintiff boards of trustees have a duty to manage the GRS and the P & FRS, and both plaintiffs are clearly investment fiduciaries. Defendants also do not dispute that pension bureau employees, including the head of the pension bureau (whether titled "executive secretary" or "general manager-finance/pension") are "necessary" for the conduct of the affairs of the GRS and the P & FRS.

In *Bd of Trustees, supra* at 656, this Court held that § 13(4) authorized the P & FRS board of trustees to retain independent legal counsel when pursuing an action against the city for unpaid contributions. The Court found that the statute was clear and unambiguous, and was not rendered ambiguous merely because it granted broad powers to an investment fiduciary. *Id.* at 654. Because an unambiguous statute must be enforced as written, the Court found that the principal issue before it was "whether independently retained legal service is necessary for the conduct of the affairs of the [P & FRS]." *Id.* at 654-655. The Court found that it was, noting that the city had repeatedly failed to make plan contributions, and that there would be an obvious conflict of interest if the P & FRS board of trustees was required to proceed while represented by the city attorney, or by someone appointed by the city attorney. *Id.*

This Court rejected the city's argument that the city charter required corporation counsel to represent all of the city's administrative agencies, noting that, "[w]here a city charter provision conflicts with general statutory law, the statute controls in all matters which are not purely local in character." *Id.* at 655. The Court found that there was a conflict between the charter and the statute, and that the statute prevailed because the P & FRS was not a "strictly and exclusively municipal concern." *Id.* at 655-656. The Court also noted that § 13(1), which specifically states that "[t]he provisions of this act shall supersede any investment authority previously granted to a system under any other law of this state," supported its conclusion. *Id.* at 656.

*3 Defendants argue that *Bd of Trustees* is a case involving a clear conflict of interest and is limited to its facts. Defendants argue that this Court should follow the position of Judge Maher's dissenting opinion in *Bd of Trustees*. See *id.* at 656-660 (Maher dissenting). We disagree.

The clear language of § 13 does not require that a conflict of interest exist before an investment fiduciary is permitted to retain necessary employees. Further, contrary to the approach taken in Judge Maher's dissent, a court may not look to the legislative history of a statute to find an ambiguity. See *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich. 638, 644; 513 NW2d 799 (1994). If the text of a statute is clear and unambiguous, this Court must apply the statute as written, and nothing may be read into it that is "not within the Legislature's intent as derived from [its] language." *AFSCME v. Detroit,* 468 Mich. 388, 399-400; 662 NW2d 695 (2003).

Defendants correctly argue that § 13(4) does not authorize plaintiffs to fill civil service jobs, and that § 11-103 of the 1997 Detroit City Charter, which defines the composition of the GRS and the P & FRS boards, provides that "[s]taff services required by a governing body shall be provided as determined by the finance director." The city charter grants the finance director the authority to determine and fill the staff needs of plaintiff boards, and by implication, the pension bureau, including the executive secretary or general manager position.

But Const 1963, art 7, § 22, "specifically provides that ordinances are subject to the laws of the state, i.e., statutes." *AFSCME, supra* at 410. The Home Rule City Act, MCL 117.1 *et seq.,* is in accord. *Id.* at 410-411; see also MCL 117.4j(3). Therefore, "[w]here a city charter provision [or an ordinance] conflicts with general statutory law, the statute controls in all matters which are not purely local in character." *Bd of Trustees, supra* at 655; see also *AFSCME, supra* at 411. As further discussed, *infra,* § 13(4) allows the GRS and the P & FRS boards to become autonomous employers. Thus, to the extent that the Detroit City Charter purports to prevent plaintiffs from selecting and directing their own employees,

it is in conflict with § 13(4) and must yield to the statutory scheme.

Defendants argue that plaintiffs ought not be allowed to impose the yoke of fiduciary responsibility upon pension bureau employees. We disagree. Whether a particular employee is a fiduciary depends on the nature of the relationship between the employee and the trust. See *Beaty v. Hertzberg & Golden, PC,* 456 Mich. 247, 260-261; 571 NW2d 716 (1997). We believe that it is immaterial whether pension bureau employees are employed by plaintiffs, the city, or jointly by both. Additionally, § 13(4) states that investment fiduciaries "may retain investment and *all other services* necessary for the conduct of the affairs of the system." (Emphasis added.) Nothing in the statute supports the argument that plaintiffs may only hire *fiduciary* employees, and that all other employees remain subject to defendants' control.

*4 Defendants further complain that the funds used to pay pension bureau employees, including the executive secretary or general manager-finance/pension, come from the city. However, the statutory scheme clearly presumes this fact. Plaintiffs have fiduciary obligations, specified by the common law and § 13, that ensure that plan contributions will be used only as permitted by law. Pursuant to the city charter, § 11-103, the city has representatives on both boards who have a fiduciary duty to ensure that pension contributions are properly used.

Defendants argue that, in allowing plaintiffs to hire and pay their own employees, the trial court essentially authorized them to act as independent employers, and to "poach" city employees. Defendants claim that the trial court's decision went far beyond what the Legislature intended, and that allowing plaintiffs to become independent employers will lead to labor relation problems. We find that this is not a valid basis for failure to enforce the clear and unambiguous language of the statute. Rather, courts "must give due deference to acts of the Legislature, and ... will not inquire into the wisdom of the legislation." *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n,* 456 Mich. 590, 612-613; 575 NW2d 751 (1998). "[A]rguments that a statute is unwise or results in bad policy should be addressed to the Legislature." *Id.* at 613. Thus, the trial court properly refused to consider these issues.

Whether the Legislature intended to allow boards of trustees to become autonomous employers is a question of statutory interpretation. See *AFSCME, supra* at 398-399. In *AFSCME,* our Supreme Court affirmed this Court's determination that the 1996 amendments of the housing facilities act, MCL 125.651 *et seq.,* severed the city's coemployment relationship with the Detroit Housing Commission *as a matter of law,* without the need for ratification, consent, or acquiescence by the city. *Id.* at 399-401.

Before 1996, the housing facilities act allowed housing commissions to appoint their own directors and to hire other employees "as necessary," but a commission required the approval of its appointing authority in order to fix their employees' compensation. *Id.* at 400. As amended in 1996, MCL 125.655(3) provides that "[t]he commission may employ and fix the compensation of a director ... and other employees as necessary," and that "[t]he commission shall prescribe the duties of its officers and employees and shall transfer to its officers and director those functions and that authority that the commission has prescribed." The Supreme Court in *AFSCME* found that the amended statute was "clear and unambiguous," and that it granted "[h]ousing commissions the authority to employ and fix the compensation of their employees, as well as the express authority to determine the duties of their employees." *Id.* at 401.

We believe that § 13(4) supports a similar interpretation.

> *5 An *investment fiduciary* may use a portion of the income of the system to defray the costs of investing, managing, and protecting the assets of the system; *may retain* investment and *all other services necessary for the conduct of the affairs of the system; and may pay reasonable compensation for those services.* Subject to an annual appropriation by the legislature, a deduction from the income of a state administered system resulting from the payment of those costs shall be made.[2] [Emphasis added.]

We find that, by allowing plaintiffs to hire, direct, and fix the compensation of their employees, § 13(4) "explicitly authorize[s] ... [plaintiffs] to act as independent employers, separate from their incorporating cities." *AFSCME, supra* at 401. While plaintiffs do not claim that § 13(4) severed the city's employment relationship with pension bureau

**EXHIBIT 6(G)**

Board of Trustees of Detroit General Retirement System v...., Not Reported in...

employees *as a matter of law,* we find that § 13(4) grants investment fiduciaries the *option* to become autonomous employers, and that the trial court did not err in allowing plaintiffs to exercise that option.

Affirmed.

Footnotes

1   As a preliminary matter, there is no merit to plaintiffs' contention that this Court lacks jurisdiction to consider the trial court's July 23, 2004, judgment declaring that plaintiffs have the authority to hire their own executive secretary. In this appeal by right from the trial court's November 12, 2004, declaratory judgment, which was the final order in the case, defendants properly may seek review of any earlier interlocutory orders. *Tomkiw v. Sauceda,* 374 Mich. 381, 385; 132 NW2d 125 (1965).

2   We note that the last sentence, referencing a legislative appropriation, applies only to *state* administered retirement systems, not the GRS or the P & FRS.

End of Document                                              © 2013 Thomson Reuters. No claim to original U.S. Government Works.