**EXHIBIT 6(I)**

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM**

THE GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT, and THE
POLICE AND FIRE RETIREMENT
SYSTEM OF THE CITY OF DETROIT,

        Plaintiffs,

      vs.

KEVYN D. ORR, in his official capacity as the
EMERGENCY MANAGER OF THE CITY OF
DETROIT, and RICHARD SNYDER, in his
official capacity as the GOVERNOR OF THE
STATE OF MICHIGAN,

        Defendants.

Case No. 13-___768___-CZ
Hon. ~~CLINTON CANADY III~~

---

Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
CLARK HILL PLC
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The following civil actions between the
above-named parties and/or other parties
arising out of the same transactions and
occurrences alleged in this Complaint have
previously been filed in this Court: (i) Case
No. 13-729-CZ assigned to Judge Aquilina;
and (ii) Case No. 13-734-CZ assigned to
Judge Canady and then reassigned to Judge
Aquilina. Those actions remain pending.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT FOR DECLARATORY RELIEF

    Plaintiffs, the General Retirement System of the City of Detroit ("GRS"), and the Police

and Fire Retirement System of the City of Detroit ("PFRS") (together, the "Retirement Systems"

or "Plaintiffs"), through their attorneys, Clark Hill PLC, allege as follows for their Complaint for

Declaratory Relief against Defendants Kevyn D. Orr, in his official capacity as the Emergency

9192834.3 14893/144127

**EXHIBIT 6(I)**

Manager of the City of Detroit (the "Emergency Manager"), and Richard Snyder, in his official capacity as the Governor of the State of Michigan (the "Governor"):

## I.  INTRODUCTION

1.  The Retirement Systems bring this action on their own behalf and on behalf of the more than 32,000 active and retired employees of the City of Detroit (the "City"), who are participants in the Retirement Systems and whose "accrued financial benefits" the Retirement Systems were created to protect.

2.  Under Count I, Plaintiffs request that this Court declare that:

   a) the Local Financial Stability and Choice Act, 2012 PA 436, MCL 141.1541 *et seq.* ("PA 436") does <u>not</u> expressly grant to the *Governor* the authority to authorize the Emergency Manager to take any actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the *Governor* refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 of the United States Bankruptcy Code, 11 USC §§ 901 *et seq.*, ("Chapter 9"); or, alternatively,

   b) <u>if</u> PA 436 implicitly grants to the *Governor* the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect.

3.  Under Count II, Plaintiffs request that this Court declare that:

   a) PA 436 does <u>not</u> expressly grant to the *Emergency Manager* the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the *Emergency Manager* from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9; or, alternatively,

   b) <u>if</u> PA 436 implicitly grants to the *Emergency Manager* the authority to take actions that will result in the impairment of the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect.

2

**EXHIBIT 6(I)**

4.     If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

## II.     THE PARTIES

5.     Plaintiff GRS is a municipal employee retirement system and pension plan and trust created by the City's Charter to provide retirement, disability, and survivor benefits to eligible non-uniformed City employees and their beneficiaries, as authorized by the Michigan Constitution and the Home Rule City Act of 1909, MCL 117.1 *et seq*. Among many other duties, GRS has the power and obligation to ensure that the City tenders its annual contribution to GRS and to protect the "accrued financial benefits" of its participants.

6.     Plaintiff PFRS is a municipal employee retirement system and pension plan and trust created by the City's Charter to provide retirement, disability, and survivor benefits to eligible City Police and Fire Department employees and their beneficiaries, as authorized by the Michigan Constitution and the Home Rule City Act of 1909, MCL 117.1 *et seq*. Among many other duties, PFRS has the power and obligation to ensure that the City tenders its annual contribution to PFRS and to protect the "accrued financial benefits" of its participants.

7.     Defendant Kevyn D. Orr is the Emergency Manager of the City.

8.     Defendant Richard Snyder is the Governor of the State of Michigan.

## III.     JURISDICTION AND VENUE

9.     This Court possesses jurisdiction over this matter pursuant to Mich Const 1963, art VI, § 13, MCL 600.601, MCL 600.605, and MCL 600.6419(4). Furthermore, this Court has

3

**EXHIBIT 6(I)**

jurisdiction to render the declaratory judgments requested herein pursuant to MCR 2.605 because there exists an actual controversy between the parties.

10.     Venue in this circuit is proper pursuant to MCL 600.1615 and MCL 600.1621(a).

## IV.     GENERAL ALLEGATIONS

### A.     The Governor's Duty And Oath To Uphold The Constitution

11.     Article XI, section 1 of the Michigan Constitution requires that all officers, legislative, executive and judicial in the state of Michigan must take and subscribe to the following oath:

> I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state, and that I will faithfully discharge the duties of the office of . . . . . . . . . according to the best of my ability. [Mich Const 1963, art XI, § 1.]

12.     Similarly, Article V, section 8 of the Michigan Constitution demands that "the governor shall take care that the laws be faithfully executed." Mich Const 1963, art V, § 8.

13.     And, section 64 of the Michigan Election Law ("PA 116") makes clear that "[e]very person elected to the office of governor . . . before entering upon the duties of his office, shall take and subscribe to the oath as provided in section 1 of article 11 of the state constitution and deposit same with the secretary of state." MCL 168.64.

14.     On December 30, 2010, the Governor did in fact swear the following oath, which was later filed with the Michigan Secretary of State: "I do solemnly swear that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Governor according to the best of my ability." This oath of office is attached as **Exhibit A**.

4

**EXHIBIT 6(I)**

**B.    The Emergency Manager's Duty And Oath To Uphold The Constitution**

15.    Pursuant to section 9 of PA 436, the Emergency Manager is a public officer and servant appointed by the Governor and serves at the Governor's pleasure. MCL 141.1549.

16.    Accordingly, just like the Governor, Article XI, section 1 of the Michigan Constitution requires the Emergency Manager to take and subscribe to the following oath:

> I do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution of this state, and that I will faithfully discharge the duties of the office of . . . . . . . . according to the best of my ability. [Mich Const 1963, art XI, § 1.]

17.    Furthermore, section 1 of the Constitutional Oath of Office Act ("PA 22") requires that: "[a]ll persons now employed, or who may be employed by the state of Michigan . . . shall, as a condition of their employment, take and subscribe to the oath or affirmation required of members of the legislature and other public officers by section 2 of article 16 of the constitution of 1908 of the state of Michigan [(*i.e.*, the predecessor of Mich Const 1963, art 11, § 1)]." MCL 15.151.

18.    On March 14, 2013, the Emergency Manager did in fact swear the following oath, which was later filed with the Michigan Secretary of State: "I do solemnly swear that I will support the Constitution of the United States and the Constitution of this State, and that I will faithfully discharge the duties of the office of Emergency Financial Manager – City of Detroit according to the best of my ability." This oath of office is attached as **Exhibit B**.

**C.    The Michigan Constitution Commands That Accrued Financial Benefits Of A Pension Plan May Not Be Diminished Or Impaired**

19.    The first paragraph of Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." Mich Const 1963, art IX, § 24.

**EXHIBIT 6(I)**

20.     This constitutional provision (adopted by the people of this State) is a solemn guarantee that -- absent a constitutional amendment duly adopted by the people of this State -- accrued pension benefits of each pension plan and retirement system of the state and its political subdivisions (including those of the City) shall not be impaired.

21.     The second paragraph of Article IX, section 24 of the Michigan Constitution demands that "financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities." Mich Const 1963, art IX, § 24.

22.     This constitutional provision (adopted by the people of this State) mandates that municipalities timely deposit with their respective public employee pension systems moneys sufficient to cover actuarial liabilities.

23.     Article I, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

24.     In accordance with the above-cited constitutional guarantees, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of either of the Retirement Systems, "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963." MCL 141.1552(1)(m)(ii).

25.     Likewise, section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates." MCL 141.1551(1)(d).

6

**EXHIBIT 6(I)**

D.    **The City Owes And Will Owe The Retirement Systems Substantial Sums For Accrued Financial Benefits The City Promised To Pay Its Employees**

26.    Over the last several decades, the City and its employees have entered into collective bargaining agreements wherein the City promised to provide its employees with pension benefits and accordingly make annual pension contributions to the Retirement Systems.

27.    In reliance on those contractual promises, tens of thousands of City employees served the City and, thus, pursuant to their applicable collective bargaining agreements, became entitled to receive their pensions (*i.e.*, accrued financial benefits).

28.    At present, the City owes the Retirement Systems tens of millions of dollars for past annual pension contributions; the present non-payment of which is in violation of, among other laws, Article IX, section 24 of the Michigan Constitution, section 20m of the Public Employee Retirement System Investment Act, 1965 PA 314 (as amended), MCL 38.1132 *et seq.* ("PA 314"), section 11(1)(d) of PA 436, and Article 11, section 101 of the City's Charter.

29.    Despite these legal requirements, the Emergency Manager has made clear through his public statements and various public reports that he has no intention of causing the City to make its past annual pension contributions to the Retirement Systems.

30.    If the City further and permanently evades its obligation to make its past annual pension contributions to the Retirement Systems by way of impairment of that obligation in a Chapter 9 bankruptcy proceeding or otherwise, the accrued financial benefits of the Retirement Systems and their participants will be diminished and impaired.

31.    Moving forward the City also has an obligation to pay into the Retirement Systems substantial sums for accrued financial benefits.

32.    If the City further and permanently evades its obligation to make its future annual pension contributions to the Retirement Systems by way of impairment in a Chapter 9

7

**EXHIBIT 6(I)**

bankruptcy proceeding or otherwise, the accrued financial benefits of the Retirement Systems and their participants will be diminished and impaired.

**E.    Defendants' Unlawful Plan To Impair And Diminish Plaintiffs' Accrued Financial Benefits By Way Of A Chapter 9 Bankruptcy Proceeding**

33.    On March 26, 2013, after having found that the City was in severe financial distress, the Governor (and the State Treasurer) caused Kevyn Orr to be appointed as the Emergency Manager of the City.

34.    Michigan's contract with the Emergency Manager for emergency manager services provides that "[t]he Emergency Manager's role is to remedy the financial distress of the City by requiring, within available resources, prudent fiscal management and an efficient provision of municipal services by exercising the necessary authority conferred herein to take appropriate action on behalf of the City and its residents."

35.    The contract does not expressly authorize the Emergency Manager to take any action that would impair the accrued financial benefits of Plaintiffs.

36.    Chapter 9 sets forth the process by which a municipality may file for bankruptcy and seek to have its debts adjusted. 11 USC §§ 901 *et seq.*

37.    A limitation on this immense federal power is that a municipality may <u>only</u> become a debtor under Chapter 9 if such entity "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 USC §§ 109(c)(2).

38.    In Michigan, section 18 of PA 436 grants to the Governor the authority to authorize the Emergency Manager to initiate a Chapter 9 bankruptcy proceeding on behalf of the City:

8

**EXHIBIT 6(I)**

If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and the state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and the emergency manager in writing of the decision . . .Upon receipt of the written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101 to 1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9. [MCL 141.1558.]

39.     Along those same lines, section 26(1) of PA 436 states, *inter alia*, that "with the written approval of the governor, a local government may file a petition under Chapter 9 and exercise powers pursuant to federal bankruptcy law if the local government adopts a resolution . . . that declares a financial emergency . . . ." MCL 141.1566(1).

40.     And, section 26(2) of PA 436 goes on to state, among other things, that "[t]he governor may place contingencies on a local government in order to proceed under chapter 9" and "upon receipt of the written approval and subject to this subsection, the local government may proceed under Chapter 9 and exercise powers under federal bankruptcy law." MCL 141.1566(2).

41.     Nothing in PA 436, however, expressly authorizes the Governor or Emergency Manager to seek to have municipal pension debts or the accrued financial benefits of municipal pension plans impaired under Chapter 9.

42.     Nevertheless, since his appointment, the Emergency Manager has made public that he intends to do an end-run around Article IX, section 24 of the Michigan Constitution by asking the Governor to authorize an unconditional Chapter 9 proceeding wherein the Emergency

9

**EXHIBIT 6(I)**

Manager will seek to have the City's pension debts and the accrued financial benefits of the Retirement Systems impaired.

43.     More specifically, the Emergency Manager has made it abundantly clear that he intends to diminish or eliminate the accrued financial benefits of the Retirement Systems and their participants by way of impairment under Chapter 9 unless such benefits are "voluntarily" diminished or impaired.

44.     For example, in the May 12, 2013 Financial Operating Plan for the City of Detroit, the Emergency Manager states that:

> [T]he City faces substantial unfunded OPEB obligations for retiree medical expenses, most recently estimated at $5.7 billion, and hundreds of millions of dollars (perhaps billions based on more recent actuarial calculations with more conservative assumptions) in pension funding requirements. Recently, tens of millions of dollars of pension funding and other payments have been deferred to manage a severe liquidity crisis at the City. Even with these deferrals, the City has operated at a significant and increasing deficit. It is expected that the City will end this fiscal year with approximately $125 million in accumulate deferred obligations and a precariously low cash position.

45.     On June 14, 2013, the Emergency Manager issued his Proposal for Creditors (the "Restructuring Proposal"). In his Restructuring Proposal, the Emergency Manager states that:

> o   As set forth above, preliminary analysis indicates that the underfunding in the GRS and PFRS is approximately $3.5 billion. At this level of underfunding, the City would have to contribute approximately $200 million to $350 million annually to fully fund currently accrued, vested benefits. Such contributions will not be made under the plan.
>
> o   Claims for the underfunding will be exchanged for a pro rata (relative to all unsecured claims) principal amount of new Notes.
>
> o   Because the amounts realized on the underfunding claims will be substantially less than the underfunding amount, there must be significant cuts in accrued, vested pension amounts for both active and currently retired person.

10

**EXHIBIT 6(I)**

46.     To summarize and add clarity to the above excerpted provisions, the Emergency Manager's Restructuring Proposal takes the position that pension debts are "unsecured claims" that may be, and must be, impaired in any prospective Chapter 9 bankruptcy of the City.

47.     The Emergency Manager's Restructuring Proposal further proposes to place the City's alleged approximate $3.5 billion underfunding liability in a pool of claims comprising a total of approximately $11.5 billion in unsecured claims, and then have those claims exchanged for a *pro rata* share of an unsecured note in the face amount of $2.0 billion.

48.     As such, the Emergency Manager's Restructuring Proposal would diminish and impair the accrued pension benefits of the participants in the Retirement Systems.

49.     Notably, there has been no indication by the Emergency Manager that his Restructuring Proposal will not also serve as a template for the plan of adjustment that the Emergency Manager would propose and seek to confirm in a Chapter 9 bankruptcy proceeding. Indeed, in a June 13, 2013 interview with The Detroit Free Press, the Emergency Manager made the following statements:

> Q:   You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?
>
> A:   The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.
>
> Q:   Which the 9th Circuit agrees for now.
>
> A:   It is what it is – so we said that in a soft way of saying, "Don't make us go into bankruptcy." If you think your state-vested pension rights, either as an employee or retiree – that's not going to protect you. If we don't reach an agreement one way or the other, we feel fairly confident that the state federal law, federalism, will trump state law or negotiate. The irony of the situation is we might reach a deal with creditors quicker because employees and retirees think there is some benefit and that might force our hand. That might force a bankruptcy. [*Detroit's Emergency*

11

**EXHIBIT 6(I)**

*Manager Talks About City's Future*, June 16, 2013 (The Detroit Free Press), attached as **Exhibit C**.]

50.     The Governor has publically proclaimed his support for the Emergency Manager and stated that the filing of a Chapter 9 bankruptcy remains a viable option. *What Snyder, Bing said about Detroit emergency manager 45-day report, Detroit Free Press,* May 12, 2013, http://www.freep.com/article/20130512/NEWS01/305120162/kevyn-orr-quotes-report-45-day-city-financial-crisis-emergency-manager.

51.     At no time has the Governor stated that he will make any Chapter 9 authorization "contingent" on the requirement that the City's pension debts not be impaired.

52.     Even in a recent filing in *Flowers v Snyder*, Case No. 13-729-CZ, pending before the Ingham County Circuit Court, the Governor did not deny that he is poised to authorize the Emergency Manager to proceed under Chapter 9 without any conditions whatsoever.

53.     The Emergency Manager and/or his spokesperson have stated on several occasions that a decision as to whether to file a Chapter 9 bankruptcy petition would likely be made as soon as by the end of the current week.

54.     At no time has the Emergency Manager stated that he will not seek to have the City's pension debts impaired under Chapter 9, or even that his proposed Plan of Reorganization will not request that the City's pension debts be impaired.

55.     Accordingly, it appears imminent that the Governor will grant to the Emergency Manager the unconditional power to proceed under Chapter 9 and the Emergency Manager will seek to have the City's pension debts impaired pursuant to Chapter 9 unless the Retirement Systems and their participants accept the Emergency Manager's unilateral imposition of significant impairments to their accrued financial benefits.

12

**EXHIBIT 6(I)**

## COUNT I
## DECLARATORY JUDGMENT
**The Governor May Not Take Any Action Which Would Cause The City's Pension Debts To Be Subject To Impairment In A Chapter 9 Bankruptcy**

56.     Plaintiffs incorporate paragraphs 1-55 and 81-102 of this Complaint with the same force and effect as if fully set forth herein.

57.     The Governor must uphold and abide by the Michigan Constitution and may not take any action that violates same.

58.     The Governor may not do indirectly what he is forbidden from doing directly.

59.     Article I, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

60.     The Retirement Systems and their participants' right to receive accrued financial benefits is contractually provided for by numerous collective bargaining agreements entered into with the City.

61.     Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."

62.     If the Governor issues an unconditional Chapter 9 authorization to the Emergency Manager, the Emergency Manager has made clear that he will seek to have City's pension debts impaired in Chapter 9.

63.     Any such impairment of the City's pension debts in Chapter 9 will diminish and impair the accrued financial benefits of the Retirement Systems and their participants in violation of Article IX, section 24 of the Michigan Constitution.

13

**EXHIBIT 6(I)**

64.     Any such impairment of the City's pension debts in Chapter 9 will also impair the City's obligation under the collective bargaining agreements in violation of Article I, section 10 of the Michigan Constitution.

65.     While section 18 and 26 of PA 436 grant to the Governor the authority to authorize the Emergency Manager to proceed under Chapter 9, nothing in PA 436 (or any Michigan law for that matter) expressly authorizes the Governor or Emergency Manager to seek to have the City's pension debts impaired under Chapter 9.

66.     To the contrary, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of the Retirement Systems "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963," MCL 141.1552(1)(m)(ii), and section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates," MCL 141.1551(1)(d).

67.     When enacting PA 436 it must be presumed that the Legislature did not intend to violate Article IX, section 24 or Article I, section 10 of the Michigan Constitution.

68.     PA 436 must be construed in such a way as to save it from being unconstitutional.

69.     The only way to save PA 436 from being unconstitutional is to read section 26(2) of PA 436 as requiring that the Governor condition any Chapter 9 authorization on the contingency that the Emergency Manager (and any designee with power to take action on behalf of the City) not seek or accede to any impairment of the City's pension debts in such Chapter 9 bankruptcy proceeding.

70.     Similarly, the only way for the Governor to avoid violating Article IX, section 24 and Article I, section 10 of the Michigan Constitution is to condition any Chapter 9 authorization

14

**EXHIBIT 6(I)**

on the contingency that the Emergency Manager (and any designee with power to take action on behalf of the City) not seek or accede to any impairment of the City's pension debts in such Chapter 9 bankruptcy proceeding.

71.     Section 26(2) of PA 436, itself, provides that the Governor may condition his Chapter 9 authorization on "contingencies" the Emergency Manager must follow in order to proceed under Chapter 9.

72.     As such, the Governor may authorize the Emergency Manager to proceed under Chapter 9, but only on the condition that the City's pension debts not be impaired in Chapter 9.

73.     Because the Governor has consistently proclaimed his support for the Emergency Manager who, in turn, has made clear his intention to have the City's pension debts discharged under Chapter 9, there exists a real and imminent threat that the Governor may issue to the Emergency Manager an unconditional authorization to proceed under Chapter 9.

74.     There is an actual controversy between the parties as to the constitutionality and validity of PA 436 and the ability of the Governor to issue to the Emergency Manager the unconditioned authority to proceed under Chapter 9 and seek to impair the City's pension debts.

75.     The Retirement Systems have a substantial interest in safeguarding the accrued financial benefits owed by the City; in fact, the Retirement Systems were created precisely for that purpose.

76.     The interest of the Retirement Systems, both directly and through their participants, in the accrued financial benefits owed by the City is different from the citizenry at large because the City does not owe accrued financial benefits to the citizenry at large and because the City did not enter into collective bargaining agreements with the citizenry at large.

15

**EXHIBIT 6(I)**

77.     A present adjudication of this controversy is necessary to guide the future conduct of the parties and preserve their legal rights.

78.     The declaratory relief here requested will avoid a multiplicity of actions at law.

79.     This Court must therefore advise the Governor of his legal obligations under Michigan law on an expedited basis and by way of a declaratory judgment.

80.     If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

## COUNT II
### DECLARATORY JUDGMENT
**The Emergency Manager May Not Take Any Action Which Would Cause The City's Pension Debts To Be Subject To Impairment In A Chapter 9 Bankruptcy**

81.     Plaintiffs incorporate paragraphs 1-80 of this Complaint with the same force and effect as if fully set forth herein.

82.     The Emergency Manager must uphold and abide by the Michigan Constitution and may not take any action that violates same.

83.     The Emergency Manager may not do indirectly what he is forbidden from doing directly.

84.     Article 1, section 10 of the Michigan Constitution demands that "[n]o . . . law impairing the obligation of contract shall be enacted."

16

**EXHIBIT 6(I)**

85.     The Retirement Systems and their participants' right to receive accrued financial benefits is contractually provided for by numerous collective bargaining agreements entered into with the City.

86.     Article IX, section 24 of the Michigan Constitution demands that "the accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."

87.     If the Emergency Manager proceeds under Chapter 9 and has the City's pension debts impaired in Chapter 9, such impairment of the City's pension debts in Chapter 9 will diminish and impair the accrued financial benefits of the Retirement Systems and their participants in violation of Article IX, section 24 of the Michigan Constitution.

88.     Any such impairment of the City's pension debts in Chapter 9 will also impair the City's obligation under the collective bargaining agreements in violation of Article I, section 10 of the Michigan Constitution.

89.     While section 18 and 26 of PA 436 grant to the Governor the authority to authorize the Emergency Manager to proceed under Chapter 9, nothing in PA 436 (or any Michigan law for that matter) expressly authorizes the Emergency Manager to seek to have the City's pension debts impaired under Chapter 9.

90.     To the contrary, section 12(1)(m)(ii) of PA 436 states that if appointed sole trustee of the Retirement Systems "[t]he emergency manager shall fully comply with . . . section 24 of article IX of the state constitution of 1963," MCL 141.1552(1)(m)(ii), and section 11(1)(d) of PA 436 requires that any financial and operating plan developed by the Emergency Manager shall

17

**EXHIBIT 6(I)**

provide for "[t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates," MCL 141.1551(1)(d).

91. When enacting PA 436 it must be presumed that the Legislature did not intend to violate Article IX, section 24 or Article I, section 10 of the Michigan Constitution.

92. PA 436 must be construed in such a way as to save it from being unconstitutional.

93. The only way to save PA 436 from being unconstitutional is to read section PA 436 as not authorizing an impairment of pension debts under Chapter 9 and conditioning any Chapter 9 authorization on the protection of accrued pension benefits.

94. Similarly, the only way for the Emergency Manager (and any designee with power to take action on behalf of the City) to avoid violating Article IX, section 24 and Article I, section 10 of the Michigan Constitution is to refrain from seeking or acceding to any impairment of the City's pension debts in a Chapter 9 bankruptcy proceeding.

95. Because the Emergency Manager has made clear his intention to have the City's pension debts impaired under Chapter 9, and because the Governor has stated that he would be willing to grant such authority to the Emergency Manager, there exists a real and imminent threat that the Emergency Manager may proceed under Chapter 9 in order to have the City's pension debts impaired.

96. There is thus an actual controversy between the parties as to the constitutionality and validity of PA 436 and the ability of the Emergency Manager to proceed under Chapter 9 and have discharged the City's pension debts.

97. The Retirement Systems have a substantial interest in safeguarding the accrued financial benefits owed by the City; in fact, the Retirement systems were created precisely for that purpose.

**EXHIBIT 6(I)**

98.     The interest of the Retirement Systems, both directly and through their participants, in the accrued financial benefits owed by the City is different from the citizenry at large because the City does not owe accrued financial benefits to the citizenry at large and because the City did not enter into collective bargaining agreements with the citizenry at large.

99.     A present adjudication of this controversy is necessary to guide the future conduct of the parties and preserve their legal rights.

100.    The declaratory relief here requested will avoid a multiplicity of actions at law.

101.    This Court must therefore advise the Emergency Manager of his legal obligations under Michigan law on an expedited basis and by way of a declaratory judgment.

102.    If, before the Court is able to grant the declaratory relief requested above, the Governor attempts to grant to the Emergency Manager an unconditional authorization to proceed under Chapter 9, Plaintiffs request that this Court immediately issue an injunction prohibiting the Emergency Manager from acting pursuant to the Governor's purported and unconstitutional Chapter 9 authorization until such time as Plaintiffs' request for declaratory relief has been fully adjudicated.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that, on an expedited basis, this Court issue an Order:

> (a) declaring that PA 436 does <u>not</u> expressly grant to the Governor the authority to authorize the Emergency Manager to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read in conjunction with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, requires that the Governor refrain from authorizing the Emergency Manager to take any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Governor the authority to authorize the Emergency Manager to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

19

**EXHIBIT 6(I)**

(b) declaring that PA 436 does <u>not</u> expressly grant to the Emergency Manager the authority to take actions that will result in the impairment of the City of Detroit's pension debts, but rather, when read together with Article IX, section 24 and Article I, section 10 of the Michigan Constitution, precludes the Emergency Manager from taking any action that causes the City's pension debts to be subject to impairment under Chapter 9 or, alternatively, that, <u>if</u> PA 436 implicitly grants to the Emergency Manager the authority to take actions that impair the City of Detroit's pension debts, <u>then</u> PA 436 contravenes Article IX, section 24 and Article I, section 10 of the Michigan Constitution and is of no force or effect;

(c) enjoining the Emergency Manager, if necessary, from acting pursuant to any future unconstitutional Chapter 9 authorization of the Governor; and

(d) granting to Plaintiffs any further such relief this Court deems equitable and just.

Respectfully submitted,

CLARK HILL PLC

By: _____
Ronald A. King (P45088)
Aaron O. Matthews (P64744)
Michael J. Pattwell (P72419)
212 East Grand River Avenue
Lansing, Michigan 48906
(517) 318-3100
Attorneys for Plaintiffs

Date: July 17, 2013

20