## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case Number 13-53846 |
| City of Detroit, Michigan, | : | Honorable Steven W. Rhodes |
| Debtor. | : | Chapter 9 |
| _____ | : | |

### CITY OF DETROIT'S OBJECTION TO
### MOTION TO [SIC] FOR PERMISSIVE INTERVENTION, ETC.

The City of Detroit (the "City"), by its undersigned counsel, files this objection ("Objection") to the relief sought in *Motion to [sic] for Permissive Intervention, Etc.* ("Motion," Doc. No. 6143), respectfully stating as follows:

## I. INTRODUCTION

The Motion should be denied because (1) the Petitioners demonstrate neither standing nor cause to intervene, (2) the Petitioners seek the ability to propose modifications to the City's Plan of Adjustment ("Plan") that the Court cannot order the City to undertake, and (3) the Motion is untimely. Although the Motion is phrased as a request to extend the deadline to object to the City's Plan, the ultimate relief sought by the Petitioners—modification of the City's Plan to include provisions dramatically limiting the City's ability to enforce payment of water and sewer charges by shutting off services—violates Bankruptcy Code § 904. As such, granting the Motion would be futile because the Court simply cannot grant the relief the Petitioners ultimately seek.

Further, even if the Court could grant this relief, the Petitioners fail to show that they, themselves, have the right to seek it. The Petitioners neither assert direct claims of their own against the City, nor allege that their members have had services disconnected. The Petitioners thus lack standing to intervene in the City's case and object to the City's Plan. Additionally, while the Petitioners make numerous allegations regarding the City's provision of services, they do not allege "cause" of the sort that warrants intervention in a bankruptcy setting.

Finally, even if the Motion were solely a request to permit the Petitioners to object to the City's Plan, it still should be denied as untimely. The City announced its shut off program in March and sent out thousands of notices in April. The specific language in the City's Plan to which the Petitioners object has been on file with the Court since April 25, and the deadline to object to it passed on May 12. The rate increase with which the Petitioners take issue occurred mid-June. However, the Petitioners did not file their Motion until Sunday, July 20, roughly a month before the confirmation trial is scheduled to being. Allowing the Petitioners to file new objections at this late date can do nothing but cause unwarranted delay. The Motion should be denied.

## II. ARGUMENT

### A. The Petitioners do not have standing for permissive intervention.

#### 1. The legal standard for standing or intervention.

Whether a party has standing turns on whether it is a "party in interest," as set forth in 11 U.S.C. § 1109(b), applicable in this case via 11 U.S.C. § 901(a). *In re City of Detroit, Mich.*, 504 B.R. 97, 139 (Bankr. E.D. Mich. 2013). Many courts hold that to be a party in interest, a party must be a creditor of the debtor or be able to assert an equitable claim against it. *Id.*; *see also In re C.P. Hall Co.*, 750 F.3d 659, 661-62 (7th Cir. 2014). "[A]lthough § 1109(b) should be construed broadly; only a party sufficiently affected by a Chapter 9 proceeding should be able to appear and be heard. The critical test is whether the prospective party has a sufficient stake in the proceeding so as to require representation." *In re Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. 610, 615 (D. Colo. 1992); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989); *Krys v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.)*, 505 F.3d 109, 117 n.10 (noting that in the Second Circuit, "party-in-interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding").

Here, the Petitioners seek to intervene pursuant to Federal Rule of Bankruptcy Procedure 2018(a), which states that "[i]n a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may

permit any interested entity to intervene generally or with respect to any specified matter." Intervention is closely related to standing, with essentially the same requirements.

> Granting permissive intervention [pursuant to Rule 2018] is within the court's discretion. As unlimited intervention could cause undue and prejudicial delays in the resolution of what are essentially disputes between two parties, Rule 2018 gives courts the discretion to balance the needs of a potential intervenor against any delay or prejudice which would result from intervention.
>
> Intervention will be permitted upon the showing of cause. Cause constitutes an economic interest in the case or one of its aspects or a concern with its precedential ramifications. Thus, intervention should not be allowed where the potential intervenor's interests are already adequately represented or where intervention would cause unwarranted delay or prejudice to the original parties.

*In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 651 (Bankr. E.D. Mich. 1994). (citations and internal quotation marks omitted). Where a non-creditor's interests can be represented by actual creditors, or where a non-creditor merely asserts concerns over the contents of a plan that might be confirmed, intervention is disfavored. *Id.*

In exercising their discretion regarding intervention, courts are mindful of the risks of granting permission too liberally.

> Overly lenient standards may potentially over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, thereby

> thwarting the goal of a speedy and efficient reorganization. . . . Granting peripheral parties status as parties in interest thwarts the traditional purpose of bankruptcy laws which is to provide reasonably expeditious rehabilitation of financially distressed debtors with a consequent distribution to creditors who have acted diligently.

*Ionosphere Club*, 101 B.R at 850-81.

In sum, before the Court allows the Petitioners to intervene, they must demonstrate that (1) they have a direct, legally recognizable interest in the City's assets, (2) their interest is not and cannot be adequately represented by any other party, and (3) intervention will not cause unwarranted prejudice or delay with respect to the Plan confirmation process.

### 2. Petitioners have not met their burden for intervention.

The Petitioners have shown none of these things. None of the Petitioners alleges a direct, legally recognizable interest of its own in the City's assets.[1] This obviates the question of whether the Petitioners have an interest that is not adequately represented in the City's case. Finally, the Petitioners do not discuss how allowing an untimely objection to the Plan in order to seek impermissible relief (discussed *infra*) can yield anything other than unwarranted delay.

---

[1] It is not clear from the Motion whether any members of the Petitioners' organizations even have received a shut off notice or had their water turned off. Nor would disconnection of water service for failure to pay one's water bill necessarily equate to a claim against the City in the City's bankruptcy case.

## B. The Petitioners seek relief that the Court simply cannot grant.

### 1. The Court cannot direct the City's policies and procedures related to providing water and sewer services to customers.

Bankruptcy Code § 904 explicitly limits the Court's power, stating

> Notwithstanding any power of the court, unless the debtor consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with--
>
> (1) any of the political or governmental powers of the debtor;
>
> (2) any of the property or revenues of the debtor; or
>
> (3) the debtor's use or enjoyment of any income-producing property.

11 U.S.C. § 904. "This section makes clear that the court may not interfere with the choices a municipality makes as to what services and benefits it will provide." *Addison Cmty. Hosp. Auth.*, 175 B.R. at 649 (citation omitted); *see also Hollstein v. Sanitary & Improvement Dist. No. 7 of Lancaster Cnty., Neb.*, 96 B.R. 967, 970 (Bankr. D. Neb. 1989). As stated more recently,

> In the overall construct, § 904 performs the role of the clean-up hitter in baseball. Its preambular language "[n]otwithstanding any power of the court, . . . the court may not, by any stay, order, or decree, in the case or otherwise . . ." is so comprehensive that it can only mean that a federal court can use no tool in its toolkit—no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order—to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property. As a

> practical matter, the § 904 restriction functions as an anti-injunction statute—and more.

*Ass'n of the Retired Emps. of the City of Stockton v. City of Stockton, Cal. (In re City of Stockton, Cal.)*, 478 B.R. 8, 20 (Bankr. E.D. Cal. 2012) (citing 11 U.S.C. § 904).

Here, the Petitioners ask the Court to order the City to restore service to residential properties, refrain from further shut offs, hold hearings, set rates in accordance with Petitioners' wishes, and so forth. Such relief is of the type prohibited by Bankruptcy Code § 904. The Court simply cannot order this relief even if it wished to do so.

### 2. The Court cannot order the City to modify its plan.

Only the City can propose a plan in its bankruptcy case, or can propose modifications to the plan once it is filed. 11 U.S.C. §§ 941, 942; *Addison Cmty. Hosp. Auth.* 175 B.R. at 650; *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991); *In re N.Y. City Off-Track Betting Corp.*, No. 09-17121, 2011 WL 309564 at *3 (Bankr. S.D.N.Y. Jan. 25, 2011). The court's role "is limited to disapproving or approving and carrying out a proposed plan for debt adjustment." *Addison Cmty. Hosp. Auth.*, 175 B.R. at 649.

The Petitioners' request that the Court order the City to modify its Plan is impermissible. While any party may express their wishes to the City as to what they wish to see in the Plan, by law, the City has the final say regarding the

contents of the Plan it presents to the Court. The Court will either approve or disapprove the Plan, and may make suggestions, but it cannot order the City to make specific modifications. *Id.* at 659-51.

### 3. Since all of the relief ultimately sought by the Petitioners' is beyond the Court's ability to grant, the Motion should be dismissed.

If a court is unable to afford a movant any relief, it must dismiss the motion for lack of subject matter jurisdiction or constitutional mootness. Regarding subject matter jurisdiction, "[w]hen Congress enacts a statute prohibiting the federal courts from granting certain remedies, such limitations are jurisdictional." *King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 244 (D. Mass. 2009). When a bankruptcy court concludes that it lacks jurisdiction over a matter, its inquiry immediately ends and the matter progresses no further. *See Pa. Cos. v. Stone (In re Greenley Energy Holdings of Pa., Inc.)*, 110 B.R. 173, 180 (Bankr. E.D. Pa. 1990).

As for constitutional mootness, "[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch, NAACP v. City of Parma, OH*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)). This is because "[g]enerally, a federal court cannot give opinions absent a live case or controversy before it. Specifically, a case becomes moot when it

becomes impossible for the court to grant any effectual relief whatever to a prevailing party." *Boullioun Aircraft Holding Co. v. Smith Mgmt. (In re W. Pac. Airlines, Inc.)*, 181 F.3d 1191, 1194 (10th Cir. 1999) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895), and *Church of Scientology*, 506 U.S. at 12) (internal quotation marks omitted).

Here, the Court lacks subject matter jurisdiction and constitutional mootness applies. The Court can neither direct the City in how to manage its resources nor rewrite the City's Plan. 11 U.S.C. §§ 904, 941, 942. It lacks jurisdiction over a motion that only seeks such relief. *King*, 672 F. Supp. at 244. Thus, the Motion should be dismissed or stricken. *Greenley Energy Holdings of Pa.*, 110 B.R. at 180. Alternatively, since the Court cannot grant any effectual relief to the Petitioners even if they should prevail, the Court can dismiss the Motion as moot. *Cleveland Branch, NAACP*, 263 F.3d at 530; *Boullioun Aircraft Holding*, 181 F.3d at 1194.

### C. The Motion is untimely.

Even if the Motion were viewed as nothing more than a request to let the Petitioners file an objection to the City's Plan, it still should be denied as untimely. Although the media's attention to termination of services of customers increased in the last month, the Detroit Water and Sewerage Department publicly announced in March that delinquent accounts would be subject to termination of services, after

suspending shut offs during the severe winter Michigan experienced. This was reported by several major news outlets.[2] Further, the exact Plan language to which the Petitioners now object has been on file with this Court since April 25.[3] The Petitioners offer no explanation for why they did not object then, instead of waiting until two and a half months after the objection deadline[4] and three weeks prior to the confirmation trial to express their concerns.

Any argument that the Petitioners should be allowed to object now because the City Council approved a water rate increase on or around June 17, should also be rejected.[5] Even if an objection to a rate increase was a viable argument, the Petitioners fail to explain why they waited for more than a month longer before filing their Motion. Offering no explanation at all falls far short of the "extraordinary cause" required by the Procedures Order to extend deadlines.

---

[2] http://www.freep.com/article/20140322/NEWS01/303220010/Detroit-resume-water-shutoffs-delinquent-customers; http://detroit.cbslocal.com/2014/03/21/detroit-plans-thousands-of-water-shutoffs-over-delinquent-bills/.

[3] *Compare* Petition attached to the Motion, Part IV *with* Third Amended Plan, Doc. No. 4272, Article IV, Section B-1 (found on page 74 of 193).

[4] On April 21, 2014, the Court extended the previous plan objection deadline of April 28, 2014, to May 12, 2014. *Fourth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment*, Doc. No. 4202 ("Procedures Order"), ¶ 7. The Procedures Order provides that this objection deadline would be "extended only on motion establishing extraordinary cause." *Id.*, p. 3. Further, pursuant to Fed. R. Bankr. P. 9006(b) any motion to extend a deadline must be filed prior to its expiration or the moving party must establish excusable neglect.

[5] http://www.freep.com/article/20140617/NEWS01/306170107/City-Council-water-rate-hike

Thus, even viewing the Motion as a request for permission to object rather than a demand for impermissible relief, the Motion is too little, too late. Now, with the confirmation trial scheduled to start in three weeks, it is not practicable to allow the Petitioners to file and prosecute an untimely objection--one that would require filing of briefs and presentation of evidence to be thoroughly considered. The City would be unfairly prejudiced by the last minute change because allowing the Petitioners to be heard at this late date could only impermissibly "hamper, and unduly delay, the debt adjustment process." *Addison Cmty. Hosp. Auth.*, 175 B.R. at 650; *see also Ionosphere Club*, 101 B.R at 850-81.

### III. CONCLUSION

WHEREFORE, the City asks this Court to DENY the Motion.

August 1, 2014                    Respectfully submitted,

By: /s/Timothy A. Fusco
    Timothy A. Fusco (P13768)
    Jonathan S. Green (P33140)
    Stephen S. LaPlante (P48063)

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)

JONES DAY

North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)

JONES DAY

555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case Number 13-53846 |
| City of Detroit, Michigan, | : | Honorable Steven W. Rhodes |
| Debtor. | : | Chapter 9 |
| _____ | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 1, 2014, the *City of Detroit's Objection to Motion to [sic] for Permissive Intervention, Etc.* was served by email upon Kurt Thornbladh at kthornbladh@gmail.com and upon Patricia Jones at pjones@uusc.org.

By: /s/Timothy A. Fusco
Timothy A. Fusco (P13768)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
fusco@millercanfield.com

DATED: August 1, 2014