

**City of Detroit**

# OFFICE OF THE AUDITOR GENERAL

# Audit of the Detroit Police Department's Compliance with the Abandoned Vehicle Towing Process

# December 2003



JOSEPH L. HARRIS, CPA, CIA
AUDITOR GENERAL
CITY OF DETROIT

COLEMAN A. YOUNG
MUNICIPAL CENTER
2 WOODWARD AVENUE, SUITE 208
DETROIT, MICHIGAN 48226
PHONE 313•224•3101
FAX 313•224•4091
WWW.CI.DETROIT.MI.US

# MEMORANDUM

**DATE:** January 18, 2005

**TO:** Honorable City Council
Mayor Kwame Kilpatrick

**FROM:** Joseph L. Harris
Auditor General

**RE:** Audit of the Detroit Police Department's Compliance with the Abandoned Vehicle Towing Process

**C:** Chief Ella M. Bully-Cummings

---

Attached for your review is our third of eight reports on the audit of the Detroit Police Department's (DPD) police-authorized towing process. Reports on the towing process will be issued as follows:

1. Administration of the Police-Authorized Towing Process (issued September 30, 2004)

2. Compliance with the Impounded Vehicle Towing Process (issued November 23, 2004)

3. Compliance with the Abandoned Vehicle Towing Process (January 18, 2005)

4. Vehicle Auction Process

5. Evidence Vehicles

6. Accounting and Reporting System

7. Towing Companies' Compliance with the Towing Policies and Contracts

8. Best Practices and Recommendation.

This audit was initiated by the Auditor General to determine the validity of allegations by police-authorized tow companies and by DPD personnel, and to determine whether there was compliance with State laws, City ordinances, DPD towing procedures, and towing contracts.

This report focuses on the processes performed in the precincts to tow abandoned vehicles, and by the DPD's Auction Detail to notify the owners of the abandoned vehicles within seven days of the tow. This report contains our findings and recommendations specific to those processes, and the DPD's response.

We recommend that the entire police-authorized towing process be reengineered. Our final report in this series will include our recommendations for consideration in

i



developing the reengineered policies and procedures. The recommendations included in this report are those that we believe should be immediately implemented to address serious problems until the reengineered process is developed.

Copies of all of the Auditor General's reports can be found on our web site at www.ci.detroit.mi.us/legislative/CharterAppointments/AuditorGeneral.

**Audit of the Detroit Police Department's
Compliance with the Abandoned Vehicle Towing Process**

**December 2003**

**Table Of Contents**

EXECUTIVE SUMMARY                                                              1

AUDIT PURPOSE, OBJECTIVE, SCOPE, AND METHODOLOGY                               4

ABANDONED VEHICLE TOWING PROCESS                                              5

FINDINGS AND RECOMMENDATIONS:

1. The DPD Does Not Process the City's Abandoned Vehicles in an               9
   Effective Manner.

2. There is Not Always a Reliable Record of the Vehicle's Condition          11
   When the Abandoned Vehicle is Towed

3. Recovered Stolen Vehicles Are Routinely Towed by the Abandoned            13
   Vehicle Towing Companies

4. There is No Assurance That Owners of All Vehicles Considered              14
   Abandoned Have Been Appropriately Notified

AGENCY'S RESPONSE                                              ATTACHMENT A

iii

# EXECUTIVE SUMMARY

The Auditor General initiated this audit in response to allegations of improprieties committed by police-authorized towing companies and Detroit Police Department (DPD) personnel. The purpose of the audit was to determine whether City Ordinances, DPD's established towing policies and procedures, and the terms of the towing contracts are being complied with, and whether the allegations of improprieties are valid.

Under the abandoned vehicle provisions of the Michigan Vehicle Code, the DPD is authorized to take vehicles into custody that have remained on public or private property for more than 48 hours after a written notice has been affixed to the vehicle. The DPD's General Procedures for towing abandoned vehicles conform to the State law. Specifically, precinct abandoned vehicle officers are charged with:

- Identifying suspected abandoned vehicles,
- Investigating whether the vehicle has been reported stolen,
- Completing a form DPD 131 – Abandoned Vehicle Report, and noting the vehicle's condition,
- Affixing a written notice to the vehicle that indicates what will happen to the vehicle if it is not moved within 48 hours,
- Rechecking the vehicle after 48 hours to determine whether the vehicle can be deemed abandoned,
- Ordering abandoned vehicles towed by the precinct's designated abandoned vehicle towing company,
- Rechecking to determine whether the vehicle has been reported stolen, and
- Updating the Law Enforcement Information Network (LEIN) system.

The Auction Detail is responsible for notifying the vehicle's registered owner within seven days that if the vehicle is not redeemed within 20 days the owner will lose ownership rights. Vehicles that are not redeemed are auctioned.

We found that the controls in the performance of the abandoned vehicle towing process are lacking. Towing companies have assumed some of the DPD's record keeping functions, thereby eliminating the segregation of duties that are in place within the written abandoned vehicle towing policies and procedures. The DPD has become dependent on the towing companies' assistance to perform its responsibilities and to meet requirements in the State law; however, the DPD has not implemented any additional controls that would mitigate the new risks. Furthermore, some recovered stolen vehicles are being towed by the abandoned vehicle towing companies, rather than by precinct's rotational towing companies.

We believe the DPD should reengineer the entire police-authorized towing process. Following is a summary of our specific findings and recommendations relative to the abandoned vehicle process:

1

### Finding 1 – The DPD Does Not Process the City's Abandoned Vehicles in an Effective Manner

We observed that precinct abandoned vehicle officers are often assigned to other duties, and lack the necessary equipment to perform their duties in an effective manner. Furthermore, the Auction Detail is understaffed. DPD Directives require that police officers complete Abandoned Vehicle Reports, check and update the LEIN system, and send notifications to vehicle owners within certain timeframes. The DPD has been unable to perform these tasks, and has allowed the towing companies to assume a portion of its responsibilities, thereby eliminating controls within the abandoned vehicle towing process.

We recommend that the DPD ensure that the abandoned vehicle officers and the Auction Detail are provided with the appropriate resources to complete their job duties effectively, and to comply with State laws. We recommend that the DPD further use its civilian workforce to assist in the fulfillment of its abandoned vehicle responsibilities.

### Finding 2 – There is Not Always a Reliable Record of the Vehicle's Condition When the Abandoned Vehicle is Towed

Form DPD 131 – Abandoned Vehicle Report, which should be completed by a DPD officer, includes a space to report on the abandoned vehicle's condition. The DPD does not complete the DPD 131 at the time the vehicle is towed. Furthermore, we noted that the vehicle condition report is frequently left blank or the abandoned vehicle towing company may complete the form. Completion of the form by the towing companies is a violation of the segregation of the record keeping and custody duties. Completion of the form by the DPD should provide for an independent verification of the vehicle condition at the time of the tow, and the information contained on the form should be used to hold towing companies accountable for any damage and thefts occurring while the vehicle is in the towing company's custody.

We recommend that DPD personnel be held accountable for the completion of the form DPD 131, including the vehicle condition reports, for abandoned vehicles ordered towed and that any towing companies found to be completing the form for vehicles towed as abandoned be suspended. We recommend that the DPD update its procedures to insure that the recording of the vehicle condition occurs at the time the vehicle is taken into custody. We recommend that the DPD further use its civilian workforce to assist in the fulfillment of its abandoned vehicle responsibilities.

### Finding 3 – Recovered Stolen Vehicles Are Routinely Towed by the Abandoned Vehicle Towing Companies

We found that some abandoned vehicle officers are using the abandoned vehicle towing companies to tow recovered stolen vehicles, rather than impounding the vehicle as prescribed by DPD Directives. Recovered stolen vehicles that are towed as abandoned vehicles may not be reported to the Notification and Crime Reporting Section's Telephone Crime Reporting Unit (TCRU) when they are towed, and the vehicle owners may not be contacted as quickly as under the impound vehicle process. There is a risk that recovered stolen vehicles may not be held for evidence as required; and that insurance companies may pay claims on vehicles because they are unaware that the

vehicles have been recovered. Abandoned vehicle officers using the abandoned vehicle towing companies in this manner are steering towing business away from the precinct's rotational towing companies.

We recommend that the DPD enforce its procedures for towing recovered stolen vehicles.

### Finding 4 – There is No Assurance That Owners of All Vehicles Considered Abandoned Have Been Appropriately Notified

The DPD's Auction Detail relies on towing companies to complete and submit form TR-52 – Michigan Department of State Notice of Abandoned Vehicle. The forms are not reconciled to supporting lists of unredeemed impounded vehicles and lists of towed abandoned vehicles to insure that the mailings are complete and that all vehicle owners are appropriately notified. The DPD is not monitoring whether the forms are submitted within the timeframe established by State law. Towing companies completing both the DPD-131 and the TR-52 could falsify information on the TR-52. Towing companies could run up towing and storage charges or keep a vehicle from auction without the DPD's knowledge.

We recommend DPD personnel reconcile the TR-52s that are submitted to a master list of vehicles that require a form TR-52 to be mailed. We recommend that the DPD provide adequate resources so that the TR-52 forms can be completed and mailed by the DPD within the seven-day window that is required by State law.

3

## AUDIT PURPOSE, SCOPE, OBJECTIVES, AND METHODOLOGY

**AUDIT PURPOSE:**
The Auditor General initiated this audit in response to allegations of improprieties carried out by police-authorized towers and Detroit Police Department (DPD) personnel involved in the police-authorized towing process.

**AUDIT SCOPE:**
The Auditor General conducted an audit of the Detroit Police Department's towing process to determine the DPD's and the towing companies' compliance with City ordinances, DPD established towing policies and procedures, and the towing contracts' terms.

The scope of work covered by this report was limited to a high-level review of the abandoned vehicle towing process beginning with the identification of suspected abandoned vehicles in the precincts through the notification of the registered vehicle owner by the DPD's Auction Detail.

Our audit was conducted in accordance with Government Auditing Standards issued by the Comptroller General of the United States, except that the Office of the Auditor General (OAG) has not received an external peer review within the past three years.

**AUDIT OBJECTIVE:**
Specifically, we wanted to determine:

- Whether the Police Department is complying with the City's established abandoned vehicle towing process as it relates to abandoned vehicles and those recovered stolen vehicles that are not impounded for safekeeping.

**AUDIT METHODOLOGY:**
To accomplish our audit objective, our audit included:

- Interviews with DPD management, police officers, towers, vehicle owners and others;
- Review of DPD towing procedures, City ordinances, and State laws for police-authorized towing of abandoned and recovered stolen vehicles;
- Review of form DPD 131 and form TR-52 for a sample of auctioned abandoned vehicles.

## ABANDONED VEHICLE TOWING PROCESS

Detroit is inundated with abandoned vehicles. Abandoned vehicles were the number one complaint recorded by the Ombudsman for the period July 2001 through March 2002 and the period July 2002 to March 2003, and were ranked the seventh highest complaint for the ten-year period ended March 2004. During 2002, the DPD's Vehicle Management Unit reported that 37,697[1] vehicle owners were sent notifications that their vehicle was considered abandoned.

At the time of this audit, several State laws affected the number of abandoned vehicles in the City and the City's ability to hold vehicle owners accountable for abandoning their vehicles:

- There was no penalty for abandoning a vehicle on a Michigan roadway.

- The seller of a used vehicle was not required to accompany the vehicle buyer to the Secretary of State's office to transfer the vehicle title. It was the vehicle buyer's responsibility to report the transfer to the Secretary of State to obtain a new title and registration.

In late 2004, legislation passed the State House and Senate that will amend the Michigan Vehicle Code. The legislation will address vehicle owner accountability by requiring the seller of a vehicle to ensure the title is transferred or maintain a record of the sale for three years, and would prohibit a person from abandoning a vehicle in the State, and impose a civil fine for so doing. The new legislation will transfer notification of the vehicle owner and any secured party from the police agency to the Secretary of State's office, and will require the Secretary of State to maintain a website to help the public locate vehicles removed as abandoned. The new legislation will definitely have an impact on DPD's abandoned vehicle towing process; however, because the new procedures are not expected to be finalized until October 2005, it is too early to speculate how the DPD's process will be impacted.

Scrap metal prices are also a factor in the number of abandoned vehicles on the City's streets and in the willingness of towing companies to remove these vehicles. Published reports indicate that vehicle owners are more likely to abandon their vehicles when scrap metal prices are low, because they may be required to pay to have the vehicle towed. Towing companies in Detroit lack incentive to pick up abandoned vehicles and to dispose of abandoned vehicles on their storage lots when they consider scrap metal prices low.

Section 55-6-85 of the City's Code establishes the conditions under which a vehicle shall be deemed abandoned:

> (1) The vehicle shall be abandoned when it has remained on a public street, highway, alley or public place for a period of forty-eight (48) continuous hours or more and from its condition and the surrounding circumstances, shall reasonably appear to be unclaimed, discarded, deserted or abandoned.

> (2) A vehicle is deemed abandoned on private property when it has remained on the private property for a period of forty-eight (48)

---

[1] This figure includes vehicles towed as a result of the police-authorized towing process, as well as those towed for parking violations.

continuous hours or more without the consent of the owner or lessee of the property, or for a period of forty-eight (48) continuous hours or more after the consent of the owner has been revoked.

The Michigan Vehicle Code, and Paragraph 4.1 of Directive 204.4, Impounding Vehicles, from the Detroit Police Department's Manual defines an abandoned vehicle as:

.... any vehicle which has remained on public property or private property for a period of 48 hours after a police agency or other governmental agency designated by the police agency has affixed a written notice to the vehicle.

The Michigan Vehicle Code differentiates between abandoned vehicles with value and those vehicles that are considered scrap. A comparison of the definitions is shown in the accompanying chart.

| Definition | Abandoned Vehicle | Registered Abandoned Scrap Vehicle | Unregistered Abandoned Scrap Vehicle |
|---|---|---|---|
| On public or private property | X | X | X |
| 7 or more years old | | X | X |
| Cost of repairing the vehicle would exceed the fair market value of the vehicle | | X | X |
| Registration status | | Currently registered | Not currently registered |
| Not moved within 48 hours after a written notice is affixed | X | X | X |

The Michigan Vehicle Code includes alternative methods for the disposition of abandoned vehicles and abandoned scrap vehicles. The alternative methods are compared in the following chart. In practice, the City rarely utilizes the abbreviated disposal methods for processing abandoned scrap vehicles although many of the vehicles towed as abandoned in the City may qualify as scrap vehicles. Currently all of the unredeemed abandoned vehicles authorized for towing by the DPD are purportedly offered for public sale.

| Process Subsequent to Vehicle Being Taken into Custody | Abandoned Vehicle | Registered Abandoned Scrap Vehicle | Unregistered Abandoned Scrap Vehicle |
|---|---|---|---|
| Determine if stolen | X | X | X |
| Take two photographs of the vehicle | | X | X |
| Make a report to substantiate the vehicle as an (un)registered abandoned scrap vehicle | | X | X |
| Enter vehicle into LEIN system within 24 hours of taking into custody | X | X | X |
| Within seven days send the registered owner notice that the vehicle has been deemed abandoned that includes a warning that failure to redeem the vehicle in 20 days or request a hearing may result in termination of ownership rights | X | X | |
| Complete a release form and release vehicle to the towing company within 24 hours who will apply for a certificate of title or a certificate of scrapping | | X | X |
| Offer the vehicle for sale at a public sale | X | | |

6

Each precinct has a primary abandoned vehicle towing company assigned; most precincts also have a secondary abandoned vehicle towing company.

The process by which DPD deems vehicles to be abandoned and orders them to be towed is described in Paragraph 4.4, Precinct Desk Procedures, and Paragraph 4.5, Abandoned Vehicle Procedures of DPD's Directive 204.4, Impounding Vehicles. Abandoned vehicle complaints are received at the precincts from various sources, including citizens, the Ombudsman's Office, Neighborhood City Halls, community groups, and the Department of Public Works. The DPD's Directives state that abandoned vehicle complaints received at the precinct are to be checked to determine whether the vehicle is stolen. If it is determined that the vehicle is stolen, the stolen and recovered vehicle procedures should be followed. If the vehicle is not stolen, the complaint is entered into an Abandoned Vehicle Book. Suspected abandoned vehicles are investigated by patrolling officers and by the precincts' abandoned vehicle officers. If the vehicle is not stolen, two copies of form DPD 131 – Abandoned Vehicle Report should be completed. Form DPD 131 includes the vehicle's make, license number, vehicle identification number (VIN), and a vehicle condition report. The abandoned vehicle officer should then affix a form DPD 114 – Abandoned Vehicle Notice to the vehicle that describes what will happen if the vehicle is not moved within 48 hours. If the vehicle is not moved, the vehicle is deemed an "abandoned vehicle" and can be taken into custody by the DPD. The accompanying chart shows the estimated number of vehicles that are tagged each month by the precincts' abandoned vehicle officers, and an estimate of the percentage of those vehicles that are towed.

| Precinct | Estimated Number of Vehicles Tagged Monthly | Estimated Percentage that are Towed |
|---|---|---|
| 2nd | 800 | 40 – 45% |
| 3rd | 300 | 25% |
| 4th | 500 – 600 | 50% |
| 6th | 700 | 57% |
| 7th | 300 | 60 - 70% |
| 9th | 400 | < 50% |

In practice, the abandoned vehicle officer lists suspected abandoned vehicles on a Recapitulation Report at the same time the vehicle is tagged with the Abandoned Vehicle Notice. After 48 hours, the Recapitulation Report is updated with the vehicles that have been moved, and a form DPD 131 is completed for the vehicles that are expected to be towed. The Recapitulation Report is distributed to the precinct's designated abandoned vehicle towing company so the vehicles can be towed. The towing company attempts to tow the vehicles listed on the report to its private storage lot and then notifies the abandoned vehicle officer of the vehicles that have actually been towed. The abandoned vehicle officer may also contact the towing company to obtain the list of vehicles that were towed.

The Michigan Vehicle Code, Section 257.252a (4), in part, requires a police agency that has taken an abandoned vehicle into custody to:

(a) Recheck to determine if the vehicle has been reported stolen.

(b) Within 24 hours after taking the vehicle into custody, enter the vehicle as abandoned into the law enforcement information network.

(c) Within 7 days after taking the vehicle into custody, send to the registered owner and secured party, as shown by the records of

13-53846-tjt   Doc 6514-4   Filed 08/04/14   Entered 08/05/14 08:34:20   Page 11 of 24

> the secretary of state, by first-class mail or personal service, notice that the vehicle is considered abandoned.

The abandoned vehicle officer is responsible for entering the towed vehicle information into the LEIN system, and noting the LEIN reference number on the Abandoned Vehicle Report. The DPD's Auction Detail is responsible for preparing and mailing the Secretary of State form TR-52 – Notice of Abandoned Vehicle, within seven days of taking the vehicle into custody, to the last registered vehicle owner. It is important to note that form TR-52 serves several additional functions within the abandoned vehicle process – the back of the form contains the Bill of Sale by Police Agency for Abandoned Vehicles and the Certificate of Scrapping for both Registered and Unregistered Abandoned Scrap Vehicles.

State law stipulates that if the vehicle is not claimed or a hearing is not requested within 20 days of the vehicle owner's notification, the vehicle may be auctioned. State law dictates the order in which monies received from the sale are applied: first to towing and storage charges, then to cover police agency expenses, then against any outstanding vehicle debt, and finally to the owner.

Section 257.252g (3) of the Michigan Vehicle Code states:

> If there are no bidders on the vehicle, the police agency may do 1 of the following:
>
> (a) Turn the vehicle over to the towing firm to satisfy charges against the vehicle.
>
> (b) Obtain title to the vehicle for the police agency or the unit of government the police agency represents, by doing the following:
>
>> (i) Paying the towing and storage charges.
>>
>> (ii) Applying for title to the vehicle.

The DPD's practice is to turn the unsold vehicles over to the towing firm. In 2002, 33,993 owners of vehicles ordered towed through the police-authorized towing process were sent TR-52 forms. Vehicle owners redeemed 3,495 vehicles prior to their sale. Less than 2% of the 30,498 vehicles offered for sale were sold; the remaining 30,123 vehicles were turned over to the towing company to satisfy the outstanding towing and storage fees in compliance with State law. The auction process will be covered in depth in our fourth report of this series.

8

## FINDINGS AND RECOMMENDATIONS

### 1. The DPD Does Not Process the City's Abandoned Vehicles in an Effective Manner

The precincts and Auction Detail have not been assigned resources adequate to effectively process the City's abandoned vehicles. Most precincts have two abandoned vehicle officers assigned to identify and process abandoned vehicles. In the 6th precinct, abandoned vehicle officers are assigned other duties, such as school rape patrol and school crossing guard duties, which reduces the time available to identify and process abandoned vehicles.

In addition, abandoned vehicle officers lack the needed equipment to efficiently process vehicles suspected as being abandoned.

- In the 7th and 8th precincts, abandoned vehicle officers do not have computers in their vehicles to check the LEIN system, and must return to the precinct to do so.

- In the 2nd, 5th, 8th and 9th precincts, there are few computers in the building with LEIN access, so officers must share.

- Abandoned vehicles are given lower priority than other crimes, often causing the abandoned vehicle officers to wait to use the computers.

- If the vehicle identification number (VIN) is missing from the vehicle, additional research, sometimes by the Commercial Auto Theft (CAT) Unit, may be required to determine the vehicle's last registered owner.

The Auction Detail is understaffed. In 2002, the Auction Detail processed 37,697 form TR-52s for mailing, and held 438 auctions where 33,973 vehicles were auctioned. The Auction Detail has allowed towing companies to prepare the form TR-52. Even with the help, TR-52s are routinely mailed after the seven-day deadline, and vehicle auctions are not scheduled in a timely manner.

Management should provide adequate resources to carry out required procedures. State law and DPD Directives establish the procedures that the abandoned vehicle officers and the Auction Detail must complete.

Specifically, Paragraph 4.5, of Directive 204.4, Abandoned Vehicle Procedures, requires, in part:

1. Precinct abandoned vehicle officers and patrolling members shall investigate vehicles which appear to be abandoned. If from this initial investigation, the vehicle is not determined to be wanted or stolen, two copies of the Abandoned Vehicle Report, D.P.D. 131 shall be prepared.

4. The abandoned vehicle officer shall then affix an Abandoned Vehicle Notice, DPD 14 (C of D 215-NO), to the vehicle describing the action that may be taken if the vehicle is not removed within 48 hours.

5. If the vehicle is not removed within 48 hours after the notice is affixed, it shall be deemed an "Abandoned Vehicle.

9

6. Once the vehicle has been deemed abandoned the abandoned vehicle officer shall ensure that the appropriate information is entered into the computer by the precinct DETECTS operator, within 24 hours.

7. After the information is entered into the computer a LEIN response will follow indicating a reference number. This number shall be entered on the impounding cards and/or Abandoned Vehicle Report.

In addition, State law and the DPD's Directive require that a notification be sent to the registered vehicle owner within seven days of the tow.

Processing abandoned vehicles is not viewed as high priority at the precincts when compared with higher profile crimes. Inadequate access to equipment at the precincts makes it difficult for abandoned vehicle officers to perform their job functions efficiently. The Auction Detail is dependent upon the towing companies' completion of the form TR-52 to meet the State requirement to notify vehicle owners within seven days of the tow.

Insufficient resources dedicated to the process has yielded the following results:

- Some towing companies have assumed the DPD's responsibility for completing the required form DPD 131, and all towing companies have assumed responsibility for completing the required State form TR-52. Assumption of DPD's responsibilities has eliminated necessary controls in the process.

- The unavailability of needed resources to perform the abandoned vehicle functions has reduced the efficiency and effectiveness of the abandoned vehicle officers to process vehicles. Waiting for the use of computers necessary to perform the functions results in wasted time and in reduced time available to identify and process abandoned vehicles.

- The untimely mailing of notifications means that towing companies are storing abandoned vehicles for longer periods of time, vehicle owners are assessed higher storage fees, and the starting bid for vehicles at auction is higher than it would be if the vehicles were processed effectively. Untimely notification can also result in insurance companies unwittingly paying claims on vehicles that have been recovered.

**Until a reengineered police-authorized towing process is completed, we recommend that:**

a. The DPD ensure that abandoned vehicle officers' vehicles are equipped with the necessary equipment to efficiently check whether a vehicle is stolen. Procure the appropriate equipment to ensure that all officers, not only the abandoned vehicle officers, are able to perform their job functions as effectively as possible.

b. The DPD ensure that the Auction Detail be provided the necessary resources and equipment to complete the form TR-52 and meet the seven day notification deadline.

c. The DPD consider further using its civilian workforce to assist in the fulfillment of its abandoned vehicle towing responsibilities.

## 2. There is Not Always a Reliable Record of the Vehicle's Condition When the Abandoned Vehicle is Towed

There is not always a reliable independent record of the vehicle's condition when the towing company takes the abandoned vehicle into custody. Form DPD 131 – Abandoned Vehicle Report does not always accurately reflect the vehicle condition at the time the abandoned vehicle is towed because the vehicle condition report may be left blank or additional damage occurs to the vehicle between the time the form is completed and the time the vehicle is towed.

DPD's Abandoned Vehicle Procedures (Directive 204.4, Paragraph 4.5) require that the form DPD 131 be completed by the abandoned vehicle officer prior to the officer affixing the vehicle with the 48-hour notification form. In practice, the form DPD 131 is completed for vehicles that have not been moved within the 48-hour period and are expected to be towed.

- We reviewed many form DPD 131s where the vehicle condition was left blank. The head of the Auction Detail indicated that officers do not complete the vehicle condition report or they are filled out incorrectly.

- The 6th precinct abandoned vehicle officer told us that people see tagged abandoned vehicles as "freebies" and will strip parts from them when they see the red notice tags on them.

The form DPD 131 is not always independently completed. To assist the abandoned vehicle officers, some towing companies are completing the form DPD 131 at the time they are taking the vehicle into custody or at a later time.

- Interviews of abandoned vehicle officers at the precincts audited revealed that the form DPD 131 was completed by the towing companies rather than by the abandoned vehicle officers at three precincts. One precinct indicated that the towing company assisted with the paperwork.

- Owners or managers at five of the eight towing companies interviewed indicated that someone in their organization completed the form DPD 131, including the vehicle condition report, for the abandoned vehicles they towed.[2]

- It appeared that a towing company owner created DPD 131 forms for vehicles audited by the OAG on its storage lot. The forms were provided to OAG auditors several weeks after they were requested and were lacking information that is normally contained on the form such as the LEIN number, officer signature, precinct number, date, and vehicle condition.

Paragraph 4.5 of Directive 204.4 requires that the form DPD 131 be completed by the abandoned vehicle officer or by the patrolling officer prior to the vehicle being tagged with the 48-hour notification. This procedure aligns with the principal of segregation of duties, whereby a single party should not have responsibility for the authorization, custody, record keeping and reconciliation functions within a process. This procedure

---

[2] Form DPD 131 is also used to convert unredeemed impounded vehicles to abandoned vehicles so they can be auctioned. Towing companies are completing the form DPD 131 for the DPD to convert the impounded vehicles because the DPD does not have available resources to go to the storage lots to complete the forms.

does not, however, insure that the vehicle condition is accurately noted when the vehicle is taken into custody.

Some abandoned vehicle officers have abrogated their responsibility for reporting the vehicle condition to the towing companies. Because DPD procedures do not require that the abandoned vehicle officer be present when the vehicle is towed to update the vehicle's condition on the form DPD 131 there is not a reliable record of the vehicle's condition when it is taken into custody. DPD's procedure requires the form be completed at least 48 hours prior to the vehicle being towed. The practice of completing the form DPD 131 after the vehicle is deemed abandoned insures that the vehicle's condition is noted closer to the time the vehicle is taken into custody, however the condition noted may still not be accurate.

All towing companies reported some level of theft from vehicles stored on their storage lots. Without an accurate report of the vehicle's condition at the time of tow, there is no way to affix accountability for the vehicle condition or to hold the appropriate party responsible for any additional damage to the vehicle. Accurate completion of the form DPD 131 by a member of the DPD insures that there is an independent verification of the vehicle's condition. There is a breakdown in the control structure when the towing company is allowed to complete the form DPD 131, as the towing company maintains custody of the vehicle until the vehicle owner redeems it or it is auctioned.

**Until a reengineered police-authorized towing process is completed, we recommend that:**

a. DPD personnel be required to complete the form DPD 131 for vehicles towed as abandoned. Towing companies found completing the DPD 131 forms for towed abandoned vehicles should be suspended or otherwise penalized.

b. The DPD modify its abandoned vehicle towing procedures to require that the vehicle condition be noted at the time the vehicle is towed, by someone other than the towing company, in order to maintain the necessary segregation of duties.

c. The DPD consider further using its civilian workforce to assist in the fulfillment of its abandoned vehicle towing responsibilities.

12

### 3. Recovered Stolen Vehicles Are Routinely Towed by the Abandoned Vehicle Towing Companies

Abandoned vehicle officers frequently order stolen vehicles to be towed by the precincts' designated abandoned vehicle towing company, rather than using the process prescribed by the Directives stated in the DPD's Manual that utilizes the impound vehicle process and the precinct's rotational towing companies.

Abandoned vehicle officers frequently discover stolen vehicles and "recover" them by indicating that they have been found in the Law Enforcement Information Network (LEIN) system. The 6th and 7th precincts' abandoned vehicle officers stated that they routinely request the abandoned vehicle towing company to tow recovered stolen vehicles.

Paragraph 4.1 of Directive 201.6 – 4, Recovery of Stolen Motor Vehicles, states that recovered stolen vehicles that are taken into custody should be towed to a police-authorized storage lot in accordance with the vehicle impounding procedures. The Notification and Crime Reporting Section (NCRS) is required to be notified of recovered stolen vehicles at the time of the recovery. Impounded vehicle information is to be entered into the computer via the NCRS immediately. The NCRS updates the LEIN system and notifies the vehicle owner of the recovery verbally within three days or by certified mail. For abandoned vehicle tows, the NCRS is not notified; however, the LEIN system is updated within 24 hours of the vehicle being towed.

The effect of not following DPD's procedures for towing recovered stolen vehicles is that the NCRS and the vehicle owner may not be notified as quickly as they would be under the impound process. There is a risk that recovered stolen vehicles taken into custody as abandoned vehicles that should be processed for evidence are not. Vehicle owners, and insurance companies may not be notified of the vehicle recovery immediately. Insurance companies may be settling claims with vehicle owners when the vehicle has actually been recovered. In addition, abandoned vehicle officers are steering towing business that should go to the rotational towing companies to the abandoned vehicle towing company.

**Until a reengineered police-authorized towing process is completed, we recommend that:**

    a. The DPD enforce its procedures for processing and towing recovered stolen vehicles. Any officer found not following the procedures should be disciplined.

13

## 4. There is No Assurance That Owners of All Vehicles Considered Abandoned Have Been Appropriately Notified

There is no assurance that the owners of all abandoned vehicles are properly notified that they will lose their ownership rights if their vehicle is not redeemed in 20 days. The DPD relies on the towing companies to provide a form TR-52 for every abandoned vehicle, and a form DPD 131 and a form TR-52 for every unredeemed impounded vehicle requiring owner notification. There is no mechanism by which the DPD is able to determine that a form DPD 131 and a TR-52 has been provided for each unredeemed impounded vehicle, or to insure that the TR-52 has been submitted to the Auction Detail for every towed abandoned vehicle, or that the forms have been submitted within the timeframe prescribed by State law.

Impounded vehicles should be converted to abandoned vehicles if they are not redeemed within 30 days. Owners of converted abandoned vehicles should be notified of the impending loss of ownership rights in the same manner as owners of vehicles towed as abandoned vehicles.

- The Auction Detail relies on the towing companies to notify it of any impounded vehicle requiring conversion to an abandoned vehicle by completing a form DPD 131. The towing companies also complete the form TR-52.

For vehicles towed as abandoned vehicles, the Auction Detail has assigned its responsibility for completing the form TR-52 – Michigan Department of State Notice of Abandoned Vehicle to the towing companies.

- Some towing companies retain copies, and in some cases the original copy, of the form DPD 131. All towing companies prepare the form TR-52 that is sent to the vehicle owner by the DPD's Auction Detail.

- The Auction Detail has indicated that it has repeatedly violated the seven-day notification period unintentionally.

In addition,

- The Auction Detail has no way to determine whether all of the TR-52 forms are accounted for. They are not numbered, and the precincts provide them to the towing companies. The form TR-52 is also used as the Bill of Sale at vehicle auctions.

- The Auction Detail has little time to review the TR-52 forms before they are mailed, but does verify that a form DPD 131 was completed for abandoned vehicles, that a LEIN check was done, and that there is an address listed on the form.

The Auction Detail will process an abandoned vehicle for auction even when a notification is returned as "No such address" or "Person moved." It relies on the Secretary of State as the source of the last registered vehicle owner. As noted previously, buyers of used vehicles are not always transferring the title with the Michigan Secretary of State's office.

Completion of the form TR-52 by the towing companies is not a violation of State law, although it is a violation of the segregation of duties functions of custody and record

14

keeping. Section 257.252a(4)(c), of the Michigan Vehicle Code, requires that a police agency that has taken an abandoned vehicle into custody must:

> Within 7 days after taking the vehicle into custody, send to the registered owner and secured party, as shown by the records of the secretary of state, by first class mail or personal service, notice that the vehicle is considered abandoned. The form for the notice shall be furnished by the secretary of state. Each notice form shall contain the following information:
>
> (i) The year, make, and vehicle identification number of the vehicle if available.
>
> (ii) The location from which the vehicle was taken into custody.
>
> (iii) The date on which the vehicle was taken into custody.
>
> (iv) The name and address of the police agency that had the vehicle taken into custody.
>
> (v) The business address of the custodian of the vehicle.
>
> (vi) The procedure to redeem the vehicle.
>
> (vii) The procedure to contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees.
>
> (viii) A form petition that the owner may file in person or by mail with the specified court that requests a hearing on the police agency's action.
>
> (ix) A warning that the failure to redeem the vehicle or to request a hearing within 20 days after the date of the notice may result in the sale of the vehicle and the termination of all rights of the owner and the secured party to the vehicle or the proceeds of the sale.

The DPD's process for notifying owners of abandoned vehicles does not include a reconciliation function, which would insure the list of form TR-52s mailed to vehicle owners is complete. Lists of unredeemed impounded vehicles should be reconciled to requests to convert impounded vehicles to abandoned vehicle status to insure that all vehicles that should be converted actually are. Lists of abandoned vehicles – both those towed as abandoned and those converted to abandoned status - should be reconciled with lists of vehicles and owners who have been sent a form TR-52, to insure that the State's notification requirement is met.

Towing companies are willing to assist the DPD with its paperwork to speed the notification process, as the DPD cannot legally dispose of the unredeemed vehicle until the vehicle owner has been notified. Abandoned vehicle officers have allowed towing companies to complete the DPD 131 to convert unredeemed impounded vehicles into abandoned vehicles. The Auction Detail has abrogated its responsibility for preparing the form TR-52 to the towing companies.

Reliance on the towing companies to produce DPD 131 forms and TR-52 forms coupled with the absence of a reconciliation process opens the DPD up to the risk that all vehicle owners are not properly notified of their rights and establishes a control environment in

which vehicles can be held back from sale without the DPD's or the vehicle owner's knowledge.

**Until a reengineered police-authorized towing process is completed, we recommend that:**

a. The DPD implement a process that insures that all unredeemed impounded vehicles are converted to abandoned vehicle status as quickly as Michigan's Motor Vehicle Act allows.

b. The DPD implement a process to reconcile the TR-52 forms to a listing of abandoned vehicles – those towed as abandoned and those converted to abandoned status - to ensure that a TR-52 is mailed for each vehicle that is eligible to be auctioned.

c. The DPD take steps to insure that the TR-52s are mailed within the seven-day timeframe established by State law.



DETROIT POLICE DEPARTMENT
CHIEF ELLA M. BULLY-CUMMINGS

1300 BEAUBIEN, SUITE 303
DETROIT, MICHIGAN 48226
PHONE 313•596•1800
CHIEFOFPOLICE@DPDHQ.CI.DETROIT.MI.US

January 14, 2005

Joseph L. Harris
Auditor General City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, Room 208
Detroit, Michigan 48226

SUBJECT:  **AUDIT OF POLICE AUTHORIZED TOWING PROCESS**

Dear Mr. Harris:

The following represents the Detroit Police Department's responses to the third report of findings and related recommendations in the December 2003 *"Audit of the Detroit Police Department's Compliance with the Impounded Vehicle Towing Process,* as prepared by the Office of the Auditor General.

### Finding 1: THE DPD DOES NOT PROCESS THE CITY'S ABANDONED VEHICLES IN AN EFFECTIVE MANNER.

**Response to Finding:** The Detroit Police Department agrees that the City's abandoned vehicles are not processed in the most efficient and effective manner.

**Response to Recommendations:**

**1a -** The Department agrees with the recommendation that the abandoned vehicle officers be provided with the appropriate resources to complete their job duties effectively. The Department has always maintained that officers be properly equipped. Since 2003, when the audit was conducted, new vehicles equipped with computers have been issued to precinct abandoned vehicle officers allowing them to conduct LEIN inquires from their scout cars.

**1b -** The department agrees with the recommendation that the Auction Unit officers be provided with the appropriate resources to complete their job duties effectively. The implementation of Public Act 495, which took effect on December 27, 2004, and Public Act 493, which takes effect on October 1, 2005, made the Secretary of State responsible for completing the TR-52's within the 7 day deadline. The Department is currently examining how our policies will be changed in order to comply with the State's new mandates.

KWAME M. KILPATRICK, MAYOR



**1c -** Pending the approval of a new towing contract and with the implementation of Public Acts 495 and 493, the department is currently exploring other options which may include the utilization of non police personnel in various aspects of the abandoned vehicle towing process. However, at this time, the Department has no additional civilian employees that can be assigned to assist with towing.

### Finding 2: THERE IS NOT ALWAYS A RELIABLE RECORD OF THE VEHICLE'S CONDITION WHEN THE ABANDONED VEHICLE IS TOWED.

**Response to Finding:** The Department agrees with this finding. The DPD 131 form (Abandoned Vehicle Report) has a space on the back to document the condition of the vehicle and if completed correctly is a reliable record of the vehicle's condition. However, at times, the department agrees that oversights occur and some forms are not entirely completed. On Friday, November 19, 2004, Teletypes #04-06876 and #04-06877 were issued concerning "Procedures for Impounding Vehicles and Notifications". The teletype advised members on the proper policies and procedures concerning the rotation of authorized towing assignments. Commanding Officers will be held responsible for taking corrective action against members found to be in violation.

### Response to Recommendations:

**2a –** The department agrees that procedures for the processing of the DPD 131 form be enforced, and shall discipline officers that fail to comply according to the standards contained in the Detroit Police Department Manual Directive 102.4 – Standard of Conduct. The Department disagrees that towing companies found to be completing the DPD 131 form should be suspended or penalized.

**2b –** The Department disagrees, at this time, with the finding that the abandoned vehicle towing process be modified. Modifications to the towing process will occur in the new towing contract and with the implementation of Public Acts 495 and 493.

**2c -** Pending the approval of a new towing contract and with the implementation of Public Acts 495 and 493, the Department is currently exploring other options which may include the utilization of non police personnel in various aspects of the abandoned vehicle towing process. However, at this time, the Department has no civilian employees that can be assigned to assist with towing.

KWAME M. KILPATRICK, MAYOR


**Finding 3: RECOVERED STOLEN VEHICLES ARE ROUTINELY TOWED BY THE ABANDONED VEHICLE TOWING COMPANIES.**

**Response to Finding:** The Department agrees that, on occasion, the abandoned vehicle officers utilized the designated abandoned vehicle towers to tow stolen motor vehicles.

**Response to Recommendations:**
   **3a** – The Department agrees that the procedures for processing and towing recovered stolen vehicles be enforced, and shall discipline officers that fail to comply according to the standards contained in the Detroit Police Department Manual Directive 102.4 – Standard of Conduct.

**Finding 4: THERE IS NO ASSURANCE THAT ALL OWNERS OF VEHICLES CONSIDERED ABANDONED HAVE BEEN APPROPRIATELY NOTIFIED.**

**Response to Finding:** The Department agrees that there is no assurance that "all" owners of towed vehicles are properly notified. The Auditor General's report found that in 2002 approximately 34,000 owners of vehicles ordered towed through the police authorized towing process were sent TR-52 forms. According to Police Department records for Abandoned Vehicles Towed in 2002, approximately 34,000 TR-52 forms were mailed out. However, some owners may not have received the notification due to the following reasons; failure of the owners to transfer ownership with the Secretary of State or the notification may have been lost in the mailing process.

**Response to Recommendation:**
   **4a** – The process that ensures that all unredeemed impounded vehicles are converted to abandoned vehicle status as quickly as possible was changed with the passage of Public Act 495. The Department is currently examining how our policies will be changed in order to comply with the State's new mandates regarding the towing process.

   **4b** – The process that ensures that a TR-52 is mailed for each vehicle that is eligible to be auctioned was changed with the passage of Public Act 495. The Department is currently examining how our policies will be changed in order to comply with the State's new mandates regarding the towing process.

KWAME M. KILPATRICK, MAYOR



CITY OF DETROIT
DEPARTMENT OF POLICE

**4c. -** The process that ensures a TR-52 is mailed within the seven-day timeframe was changed with the passage of Public Act 495. The Department is currently examining how our policies will be changed in order to comply with the State's new mandates regarding the towing process.

Should you have any concerns regarding this matter, please feel free to contact me at 596-1800, Monday through Friday, 9:00 a.m. to 5:00 p.m.

Sincerely,

ELLA M. BULLY-CUMMINGS
Chief of Police

EMBC-ma

KWAME M. KILPATRICK, MAYOR