UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25's MOTION TO CLARIFY, OR IN THE ALTERNATIVE LIFT THE AUTOMATIC STAY**

Under the provisions of title 11 of the United States Code ("Bankruptcy Code"), 11 U.S.C. §§ 362(d) and 922(b), American Federation of State, County and Municipal Employees Michigan Council 25("AFSCME") and its affiliated Locals 207, 2394 and 2920 respectfully request that this Court clarify, or in the alternative lift, the automatic stay for the purpose of allowing the Michigan Employment Relations Commission ("MERC") to hear AFSCME's Unfair Labor Practice Charge ("ULP") and Unit Clarification Petition ("UCP") against the City of Detroit ("City" or "Debtor"). AFSCME's ULPs and UCP at MERC address the City's sweeping reorganization of the Detroit Water and Sewerage Department ("DWSD"), wherein the AFSCME locals are having an estimated 380 of their members placed into other unions and/or deemed "at will" by unilateral action of DWSD management. AFSCME asserts the City's actions violate state labor law, and seeks relief from this

Honorable Court to permit the ULPs and UCP to go forward at MERC. For its motion, through its counsel, AFSCME states as follows:

## INTRODUCTION

1. Michigan AFSCME Council 25 has three locals in the DWSD: Locals 207, 2920 and 2394. The DWSD recently reorganized many of its job classifications, eliminating certain positions and creating new positions. Many DWSD employees were removed from prior classifications, and placed into new classifications. In this process, DWSD unilaterally removed employees from their current union, and placed them into other unions. As a result, AFSCME is losing approximately 380 union members within DWSD.

2. AFSCME has filed ULP charges against the City, contesting the illegal removal of employees from their selected union membership. AFSCME has also filed a UCP, to have the MERC determine the appropriate union representation for these new job classifications. MERC has held these charges in abeyance, due to the pending bankruptcy procedure. AFSCME seeks an order from this Court to assure that those actions can go forward.

3. Further, AFSCME Local 207 is in the process of bargaining a new union contract with the DWSD. The contract talks have not progressed well. Thus, recently DWSD announced a new policy which prevents any employee who was a member of a union without a contract from being placed into a new classification.

Instead, certain employees would be placed into new titles and deemed "at will." AFSCME contends that this new policy was retaliatory and a violation of state labor law, and hopes to challenge the policy at MERC.

4. AFSCME seeks to clarify that these actions are not stayed by the Court's order, or in the alternative for a motion to lift the stay in order that the ULPs and UCP can advance at MERC. The relief sought by AFSCME is chiefly injunctive. For any monetary elements of the relief AFSCME seeks, it need not execute on any financial remedy before further order of this Court or until the conclusion of the bankruptcy process. Yet, the risk that this considerable reorganization and institution of "at will" positions becomes the new status quo, as the bankruptcy proceedings are concluded, is significant and compels AFSCME to seek this relief now.

**JURISDICTION, VENUE AND BASIS FOR RELIEF REQUESTED**

5. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6. The relief requested in this Motion is predicated upon 11 U.S.C. §§ 362(d), 922 and Local Rules 4001-1 and 9014-1 of the United States Bankruptcy Court, Eastern District of Michigan.

## STATEMENT OF FACTS

7. The DWSD has approximately 1700 total employees, and approximately 26 unions represent sections of this workforce. As with any unionized workforce, the employees voted to join their respective unions. AFSCME at the time represents approximately 1050 DWSD employees.

8. AFSCME is the exclusive bargaining representative of certain classifications within DWSD.

9. AFSCME Local 2920 and the DWSD are parties to a collective bargaining agreement ("CBA"), in existence from 2013-2018.

10. AFSCME Local 207 and the DWSD are parties to an expired CBA. On or about October 5, 2012, the Debtor imposed the "City Employment Terms" ("CET") on all bargaining units without a ratified agreement.

11. AFSCME Local 2394 and the DWSD are parties to an expired CBA. On or about October 5, 2012, the Debtor imposed the "City Employment Terms" ("CET") on all bargaining units without a ratified agreement. The CET represents employment terms which were unilaterally imposed on most City unions without negotiation.

12. Honorable Sean F. Cox presided over a lawsuit brought against the City and its DWSD by the United Stated Environmental Protection Agency, initially filed in 1977, filed under the Clean Water Act, 33 U.S.C. § 1251 *et seq*. By order of Judge

Cox (explained more fully below), DWSD was permitted to reorganize its workforce in the interest of operational enhancements.

13. Earlier this year, in March 2014, DWSD announced a substantial reorganization effort of its workforce, referred to as the "optimization plan," which retitled many existing job classifications with some adjustment in job duties. The plan eliminated a number of job classifications. The vast majority of this reorganization involved the removal of existing DWSD employees from an "old" classification and placement into a "new" classification.

14. Upon removing employees from old to new classifications, the DWSD management unilaterally decided whether these employees would remain in their current union, or be placed into a different union. Importantly, nothing in Judge Cox's orders permits the City to unilaterally adjust the DWSD employees' union membership.

15. As a result of this shuffling, DWSD management is removing an estimated 380 employees from the AFSCME locals at DWSD, and placing them into different unions.

16. On May 21, 2014, AFSCME and its Locals 207, 2920 and 2394 filed unfair labor practice charges (ULPs) at MERC, contending that these adjustments in union membership violated state labor laws. (*Exhibit 6.1*)

5
13-53846-tjt    Doc 6639    Filed 08/11/14    Entered 08/11/14 17:25:29    Page 5 of 20

17. On May 29, 2014, Administrative Law Judge ("ALJ") Julia C. Stern issued a complaint against the City. Along with the complaint, the ALJ sent a communication to the parties, advising them that "[b]ecause of the pending City of Detroit bankruptcy proceedings, no hearing are being scheduled at this time on unfair labor practice charges filed against the City." (*Exhibit 6.2*)

18. On June 16, 2014, AFSCME filed a unit clarification petition (UCP), claiming that DWSD "seeks to unilaterally upset decades of established unit structure by re-titling certain positions." AFSCME requested "clarification on the newly created and re-titled positions as there is no substantial change in duties that justify such drastic measures." Specifically, AFSCME requested the Commission to "direct a hearing to clarify the unit with regards to the newly created and re-titled positions." (*Exhibit 6.3*)

19. Neither the MERC nor its ALJ has taken action on this UCP, due to the pending bankruptcy.

20. The three AFSCME locals in DWSD bargain separate union contracts than the locals representing employees in general fund departments. This is per Order of Judge Cox, separating the operations of the DWSD from the City's general fund. Currently, AFSCME Locals 2920 has a completed union contract, but Locals 207 and 2394 are still bargaining their contracts. Of AFSCME's approximate 1050 members in the DWSD, about 900 are Local 207 members.

21. DWSD and AFSCME Local 207 negotiations are not progressing well. The DWSD bargaining proposals have contained very unconventional terms without accompanying justification, such as certain bargaining unit members being deemed "at will".

22. On August 4, 2014, the DWSD announced a new policy, wherein it would expressly punish members of a union within DWSD that did not have a union contract. Under the policy, DWSD employees who were members of a union that did not have a union contract would be denied placement into a newly created position. Instead, within the reorganization effort, the union members would be put into "special projects" job classifications, and be considered "at will." Typically, union members are not subject to discipline or discharge unless the employer has "just cause" to do so. These new "special projects" employees would lose this just cause protection; indeed, a most basic right accompanying unionization.

23. AFSCME seeks to advance another ULP charge at MERC, alleging that the DWSD is retaliating against the Local 207 union for its protected activity; bargaining a union contract. AFSCME will do so by amending its current ULP.

24. AFSCME seeks to have these ULP charges and UCP advanced at MERC expeditiously, as opposed to waiting until the conclusion of Detroit's bankruptcy proceedings. Hundreds of AFSCME members have been stripped of their union membership, and many others are being designated as "at will"

employees. AFSCME fears the creation of the new *status quo* if required to wait. Thus, it seeks a clarification of the Court's Stay order, or in the alternative a motion to lift the stay, for its actions at MERC.

25. As AFSCME primarily seeks injunctive relief against DWSD at MERC, there are few (if any) financial implications for the City in permitting the ULPs and UCP to advance. There would be a financial consequence to the City if, for instance, the City discharged an employee after being improperly designated "at will". For any financial consequence that may exist, AFSCME does not need to pursue collection against the City without further order of this Court, or until the resolution of the bankruptcy proceedings.

**BACKGROUND ON CLEAN WATER ACT LITIGATION**

26. The DWSD operations have been overseen by federal court for thirty-six years. The case was recently closed by the trial court, followed by ruling on appeal which reversed in part and remanded the trial court's denial of union intervention. AFSCME's request here is not at odds with the federal court's orders concerning DWSD.

27. The United States Environmental Protection Agency ("EPA") initiated an action in 1977 against the City and DWSD, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq*. (Case No. 77-71100, United States District Court Eastern District of Michigan). The action was originally assigned to Honorable John

Feikens. After Judge Feikens retired on November 29, 2010, the case was reassigned to Honorable Sean F. Cox. (Docket No. 2323)

28. On September 9, 2011, Judge Cox issued an Opinion and Order Denying Without Prejudice the City of Detroit's Motion to Dismiss. (*Exhibit 6.4*, Docket No. 2397) Judge Cox found that human resources issues have been a chronic problem for DWSD and that the job descriptions and qualifications for various positions within the DWSD were obsolete. (*Id*. at 33) He concluded that "an effective equitable remedy to achieve sustained compliance will require this Court to order structural changes regarding the DWSD that will likely override the City of Detroit's Charter, its local ordinances, and/or some existing contracts." (*Id*. pg. 42) Judge Cox ordered:

> [T]he Mayor of the City of Detroit, the City Council President and President Pro Tem, and a current member of the Board of Water Commissioners (to be chosen by the Board) to meet and confer and, within 60 days of the date of this order, devise a plan to address the root causes of non-compliance that are discussed in this Opinion & Order. In doing so, they *shall not* be constrained by any local Charter or ordinance provisions, or by the provisions of union or other contracts.

(*Id*. pgs. 3-4) (emphasis in original).

29. After receiving the Plan of Action proposed by the "Root Cause Committee", Judge Cox issued another Order on November 4, 2011. (*Exhibit 6.5*, Docket No. 2410) The court concluded that the plan did not adequately address CBA

issues and it ordered additional relief necessary for the DWSD to achieve short-term and long-term compliance. Specifically, the court ordered the following:

> 3. The DWSD shall act on behalf of the City of Detroit to have its own CBAs that cover DWSD employees ("DWSD CBAs"). DWSD CBAs shall not include employees of any other City of Detroit departments. The Director of the DWSD shall have final authority to approve CBAs for employees of the DWSD.
>
> 4. The Court hereby strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ("bump") into the DWSD based on seniority. Future DWSD CBAs shall adopt a seniority system for the DWSD that does not provide for transfer rights across City of Detroit Departments (ie., does not provide for "bumping rights" across city departments).
>
> * * *
>
> 8. The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.
>
> * * *
>
> 11. The Court strikes and enjoins any provisions in existing CBAs that prevent DWSD management from assigning overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management. DWSD CBAs shall provide that management has the discretion to assign overtime work to employees most capable of performing the necessary work within a classification, at the discretion of management.
>
> 12. Any existing work rules, written or unwritten, or past practices that are contrary to these changes are hereby terminated.
>
> 13. The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also

enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(*Id.* pgs. 6-7)[1]

30.     Notably, the November 4, 2011 Order never directed or suggested that DWSD employees would be involuntarily stripped of their union membership, due to the retitling of their job classification.

31.     Judge Cox's Orders do not prevent AFSCME's ULPs or UCP from advancing. The November 2011 Order enjoined MERC from hearing "disputes arising from the changes ordered by this Court …," and enjoined the unions from filing ULPs over "disputes arising from the changes ordered by this Court." Since Judge Cox did not "order" that union membership be adjusted in the reorganization process, the ULPs are not disputes arising from changes ordered by Judge Cox. Also, Judge Cox's November 2011 Order did not preclude MERC's authority to direct a hearing to clarify the unit regarding DWSD's newly created and re-titled positions, as called for in AFSCME's UCP. Finally, Judge Cox's November 2011 Order did

---

[1] AFSCME had challenged Judge Cox's authority to issue such orders, under U.S. Const. Art 1, § 10, the 5th Amendment and the 10th Amendment of the United Stated Constitution. (Docket 2412) Judge Cox prevented the AFSCME union from intervening in the lawsuit. (Docket 2413) AFSCME appealed, (Docket 2418 and 2534) and the Court of Appeals reversed in part and remanded the denial of intervention. This ruling only applied to AFSCME Local 207, as AFSCME Council 25 settled with the City and withdrew its appeal.

not sanction punishment of union members for positions taken at the bargaining table.

32. Indeed, on August 23, 2012, Judge Cox clarified paragraph 3 of its November 4, 2011 Order. (*Exhibit 6.6*, Docket No. 2470) The court gave the following clarification:

> Paragraph 3 on Page 6 of this Court's November 4, 2011 Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees.

(*Id*. pg. 3) Judge Cox further clarified "that MERC is not enjoined from ruling on the DWSD's pending Clarification Petitions, in order to effectuate the above severancing ordered by this Court." (*Id*.)

33. On October 5, 2012, Judge Cox issued an Opinion and Order, acknowledging that its November 4, 2011 Order did "not provide MERC with sufficient direction as to the scope of its jurisdiction over petitions filed relating to the DWSD" and taking the matter under advisement until supplemental briefing on the MERC jurisdictional question concluded. (*Exhibit 6.7*, Docket No. 2489, pg. 37)

34. On December 14, 2012, Judge Cox issued an Opinion and Order clarifying that the court's "November 4, 2011 Order does not stand as an obstacle to the DWSD implementing the CETs for DWSD employees – if permitted to do so under otherwise applicable law. As to this issue, the DWSD-unions stand in the same

12
13-53846-tjt    Doc 6639    Filed 08/11/14    Entered 08/11/14 17:25:29    Page 12 of 20

shoes as other unions with CBAs with the City of Detroit." (*Exhibit 6.8*, Docket No. 2512, pg. 18)

35. On January 30, 2013 Judge Cox issued an Opinion and Order further ruling on MERC's jurisdiction. (*Exhibit 6.9*, Docket No. 2520) Judge Cox clarified paragraph 13 of its November 4, 2011 order:

> This Court's injunction as to MERC was intended to be quite limited in scope. This Court only intended to enjoin MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court. This Court did not intend to enjoin MERC from exercising jurisdiction over every dispute relating to collective bargaining that involves the DWSD. For example, this Court did not intend to enjoin MERC from exercising jurisdiction over the union requests that are currently pending before it, which relate to negotiations for new union contracts and involve disputes over wages, health insurance, fringe benefits, and other conditions of employment.

(*Id*. pgs. 9-10) Judge Cox went on to clarify DWSD actions that would not constitute an unfair labor practice. Judge Cox also enjoined MERC from exercising jurisdiction over any grievances, unfair labor practice charges or arbitration demands that are based upon certain specific actions – none of them being adjustment in union membership, removal of bargaining unit work from one DWSD union into another DWSD union, or new policies retaliating against a union's bargaining positions.

36. Importantly, this January 30, 2013 order denied the DWSD's request that the Court "enjoin[] MERC from exercising jurisdiction over DWSD-related

labor disputes altogether" or that it "issue[] an order creating new DWSD-specific processes and procedures for MERC to follow …" It rationalized as follows:

> "This Court has already ordered the severancing of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees. Those new DWSD-specific units must now negotiate new CBAs. But until they execute such agreements, this Court has expressly enjoined those few provisions of currently existing CBAs that have been shown to impede compliance with the Clean Water Act and the DWSD's NPDES permit. For example, this Court's November 4, 2011 Order "strikes and enjoins any provisions in current CBAs that allow an employee from outside the DWSD to transfer ('bump') into the DWSD based on seniority" and "strikes and enjoins any provisions in current CBAs that prohibit the DWSD from subcontracting or outsourcing." (Docket No. 2410 at 6, ¶¶ 4 & 5). Thus, MERC exercising jurisdiction over disputes relating to negotiations for new union contracts, which involve disputes over issues such as wages and health insurance, will not impede this Court's November 4, 2011 Order as it relates to the specific CBA provisions and work rules that this Court found to be impeding the DWSD from achieving and maintaining compliance with its NPDES permit and the Clean Water Act."

The Court then narrowed the limit on MERC's jurisdiction:

> "This Court is only enjoining MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court."

(Id)

37. On March 27, 2013, Judge Cox issued an Opinion and Order Terminating Second Amended Consent Judgment and Closing This Case. (*Exhibit 6.10*, Docket No. 2528)

38. While AFSCME does not believe MERC has been divested of jurisdiction over its ULPs or UCP, AFSCME is providing a copy of the ULPs, the UCP and this instant pleading to Judge Cox. It has asked the Court to indicate if the Court feels any of these actions should not be resolved by MERC. If Judge Cox feels these disputes are appropriately before him, AFSCME will of course respond appropriately to that Court.

**ARGUMENT**

39. AFSCME asserts that the current Automatic Stay and the Extended Stay Order (Docket No. 166) (together "Stay Orders") should not apply to its ULPs and UCP actions before MERC.[2] Nonetheless, resolution of that issue is not

---

[2] Section 362(b), Title 11 provides exceptions to the automatic stay provision. Section 362(b)(4) excepts from the stay provision "an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]" Applying the above exception, courts have held that the automatic stay provision does not operate to stay state enforcement actions brought under the state's police and regulatory power. See *N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986) (holding that NLRB's unfair labor practices proceeding was exercise of government's police and regulatory power and therefore not subject to automatic stay). The MERC itself – the government entity – has statutory powers similar to the NLRB, as in the *Edward Cooper Painting*. While a private party files the charge, the MERC itself initiates the complaint to advance the ULP. MCLA sec 423.216(a). Also, the PERA statute does give the MERC the ability to seek enforcement of the ULP determination, as with the NLRA. MCLA sec 423.216(d). See also, *In re Halo Wireless, Inc.*, 684 F.3d 581 (5th Cir. 2012), where actions before public utility commissions brought by private parties (not the government) against a bankruptcy debtor were exempt from the automatic stay.

necessarily required, because MERC will not proceed with the ULPs and UCP until this Honorable Court issues an order: either clarifying that the Stay Orders do not apply to AFSCME's ULPs and UCP, or that the Stay Orders are lifted so that those actions can proceed.

40. AFSCME's request here is warranted because MERC has been entrusted by statute with special authority to remedy unfair labor practice charges and to determine unit clarifications. The Public Employment Relations Act ("PERA"), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*, governs public sector labor law. The court, in *Rockwell v. Crestwood School Dist.*, declared the PERA to be the "dominant" and "governing" law regulating "public employee labor relations":

> "This Court has consistently construed the PERA as the dominant law regulating public employee labor relations. . . ."
>
> "The supremacy of the provisions of the PERA is predicated on the Constitution (Const.1963, art. 4, s 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations."

393 Mich. 616, 629-630, 227 N.W.2d 736 (1975) (emphasis added). The court explained in *Rockwell* that "MERC alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the PERA." 393 Mich. at 630, 227 N.W.2d 736.

41. Relief from the stay is warranted because, in a similar situation, this Court has ordered that the automatic stay does not extend to certain claims against the 36th District Court. Following a motion by the State of Michigan to extend the

Extended Stay to actions brought by AFSCME locals against the 36th District Court, on October 25, 2013 this Court entered an Order extending the Chapter 9 stay "to any attempt to collect from any of the 36th District Court Parties upon any monetary judgment or award." But the Court explicitly ordered that the Chapter 9 stay did not extend to the following:

> (a) the liquidation of monetary claims against any of the 36th District Court Parties,
>
> (b) claims seeking nonmonetary injunctive relief to the extent of such nonmonetary relief and
>
> (c) claims seeking prospective wage relief to the extent of such prospective wage relief.

(Docket No. 1388)

42. Here, AFSCME seeking to litigate claims against the City, short of collection of monetary award.

43. Analyzed as a Motion to Lift the Stay, Congress specifically granted – in the same provision establishing the automatic stay – full discretion to the bankruptcy court to lift the stay and allow litigation to go forward in another forum. 11 U.S.C. § 362(d)(1) states, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause [.]" Under 11 U.S.C. § 362(g), the debtor bears the burden of proving that there is not cause for relief from the stay.

44. To determine whether sufficient cause exists to grant relief from the stay in a non-bankruptcy forum, the bankruptcy court must scrutinize the factual circumstances of the case before it. *Trident Assoc. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Assoc. Ltd. P'ship)*, 52 F.3d 127, 131 (6th Cir. 1995) (quotation marks omitted) (quoting *In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994)). In *In re City of Detroit, Mich.*, this Court explained that in balancing the competing interests to determine whether there is cause for relief from the stay, the Court will consider both the harm to the City if the motion is granted and the harm to the AFSCME plaintiff if the motion is denied. In addition, the Court concludes that it is appropriate to consider the public interest in this context, just as it was appropriate to consider the public interest when determining whether to extend the stay when the City requested it. 501 B.R. at 709, citing *In re Trans-Serv. Logistics, Inc.*, 304 B.R. 805, 807 (Bankr. S.D. Ohio 2004).

45. In evaluating the hardships, the City will face no tangible prejudice in having the ULPs and UCP move forward (save time and attention paid to the matters by City's counsel). The City will simply be forced to justify its actions, free of an immediate financial consequence. The hardship faced by AFSCME and its members, however, will be severe. The members will lose the membership in the AFSCME union, and be forced to join other unions. If the new union is required to take action on these employees' behalf (i.e., file a grievance), there will be representational

confusion in the event MERC returns them to the AFSCME union. For those employees forced into at-will employment relationships, they will be forced to wait months/years for resolution while unemployed.

46. AFSCME's claims before MERC have merit. A public employer's unilateral decision to transfer exclusive bargaining unit work outside the unit is an unfair labor practice under PERA, § 10(1)(e). *Detroit Police Officers Ass'n v. Detroit*, 428 Mich. 79, 92-93, (1987) ("A long line of MERC opinions holds that an employer's unilateral decision to transfer bargaining unit work outside the unit is an unfair labor practice under the PERA.")

47. As to the UCP, PERA (MCLA § 423.213) provides for MERC, as opposed to the City unilaterally, to decide the issue of an appropriate collective bargaining unit for new or modified classifications:

> Sec. 13. The commission shall decide in each case, to insure public employees the full benefit of their right to self-organization, to collective bargaining and otherwise to effectuate the policies of this act, the unit appropriate for the purposes of collective bargaining.

Unit clarification is appropriate regarding a new position or where there has been a recent and significant change in duties assigned to an existing position. *Macomb Co. Cmty Coll.*, 2000 MERC Lab. Op. 165. AFSCME's UCP simply seeks MERC's opinion of the appropriate union membership of the new/changed titles.

## CONCLUSION

WHEREFORE, AFSCME respectfully requests that this Court clarify or lift the automatic stay for the purpose of allowing the MERC to hear AFSCME's ULP and UCP against the City of Detroit, as outlined herein.

Dated: August 11, 2014      /s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com

Herbert A. Sanders
THE SANDERS LAW FIRM PC
615 Griswold St., Ste. 913
Detroit, MI 48226
Telephone: (313) 962-0099
Facsimile: (313) 962-0044
hsanders@miafscme.org

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*