# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                         Honorable Sean F. Cox

City of Detroit, *et al.*,          Case No. 77-71100

    Defendants.

_____/

## **OPINION & ORDER**

This matter is currently before the Court on a "Motion For Order Adopting The Root

Cause Committee's Plan of Clarification Of November 8, 2012" (D.E. No. 2507), filed by the

Detroit Water and Sewerage Department ("DWSD") on November 15, 2012. No briefs in

opposition to the motion have been filed and the Court finds that oral argument would not

significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern

District of Michigan. The Court therefore orders that the motion will be decided without oral

argument.

For the reasons that follow, the Court shall grant the unopposed motion to the extent that

the Court shall: 1) adopt the Root Cause Committee's Plan of Clarification as an order of the

Court and **order the City of Detroit and the DWSD to immediately implement the order**; and

2) grant another extension for supplemental briefs on the DWSD's requests for relief as to two

Charter Provisions (Sections 7.5-208 and 7.5-209 of the Detroit City Charter) and requests

relating to the scope of the Court's injunction as to the Michigan Employment Relations

1

Commission ("MERC").  To the extent that the DWSD seeks an extension of time for filing a

supplemental brief as to its request for another extension for filing the Final Director's Report,

that request is denied.  The Court is prepared to rule on that request and concludes that further

briefing is not warranted.

For the reasons stated below, the Court shall: 1) clarify its ruling as to "CETs"; and 2)

order that the Final Director's Report shall be submitted no later than March 15, 2013.

## BACKGROUND

This action, which was filed in 1977 and has been active since that time, has an

exceptionally long history that is more fully set forth in this Court's September 9, 2011, Opinion

& Order (D.E. No. 2397) and its November 4, 2011 Order.  (D.E. No. 2410).

The United States Environmental Protection Agency ("EPA") initiated this action in 1977

against the City of Detroit ("the City") and the DWSD, alleging violations of the Clean Water

Act, 33 U.S.C. § 1251 *et seq*. ("the Clean Water Act").

The violations alleged in this case, which are undisputed, involve the DWSD's

wastewater treatment plant ("WWTP") and its National Pollutant Discharge Elimination System

("NPDES") permit.  Although this action was initiated by the EPA, the Michigan Department of

Environmental Quality ("MDEQ") was later joined in the action and the MDEQ is the entity that

now directly oversees the DWSD's NPDES permit.  As explained in this Court's September 9,

2011, Opinion & Order:

> For the more than 34 years during which this action has been pending, the
> City and the DWSD have remained in a recurring cycle wherein the DWSD is cited
> for serious violations of its NPDES permit, the City and the DWSD agree to a
> detailed remedial plan aimed at compliance, but the DWSD is unable to follow the
> plan and is again cited for the same or similar violations.  Although this Court has

2

taken various measures, designed to eliminate the various impediments to compliance that have been identified by experts and acknowledged by the City, those measures have proven inadequate to achieve sustained compliance.

(*Id.* at 1).

In September of 2009, the DWSD was again unable to maintain compliance with its NPDES permit and was again cited for violations by the MDEQ. In January of 2010, Detroit Mayor Dave Bing appointed a Chief Operating Officer who assumed the position of acting Director of the DWSD. Thereafter, the City worked with the MDEQ to develop another plan for compliance and worked with Oakland County, Wayne County and Macomb County to resolve longstanding issues regarding the DWSD.

On July 8, 2011, the City and the MDEQ entered into an Administrative Consent Order ("the ACO"), aimed at achieving long-term compliance with the DWSD's NPDES permit and the Clean Water Act. After the ACO was executed, the City filed a motion asking the Court to order that the requirements set forth in the ACO are substituted for the requirements of the Second Amended Consent Judgment, find that the DWSD has made substantial progress toward achieving full compliance with its NPDES permit and the Clean Water Act, and dismiss this case.

This Court denied that motion. In doing so, this Court noted that, *after* executing the ACO on July 8, 2011, the DWSD self-reported serious violations of its NPDES permit to the MDEQ. Thus, the City had not established that the DWSD has achieved even short-term compliance with the ACO and the Clean Water Act. In addition, this Court concluded that the extensive record in this case establishes that, unless more fundamental corrective measures are taken to address the institutional and bureaucratic barriers to compliance, sustained compliance

3

with the Clean Water Act and the ACO will simply not occur.

Thus, this Court was faced with the unenviable task of determining how to remedy these ongoing and serious violations of the Clean Water Act, given the complex nature of the problem and the fact that the rather extraordinary actions taken over the past four decades have proven inadequate.

Rather than order a remedy on its own, without input from the City, this Court considered other options and ultimately decided to take an admittedly unique approach:

> The Court further concludes that an effective equitable remedy to achieve sustained compliance will require this Court to order structural changes regarding the DWSD that will likely override the City of Detroit's Charter, its local ordinances, and/or some existing contracts.
>
> This Court does not arrive at this conclusion lightly. As noted above, Judge Feikens attempted several less intrusive measures, over several decades, but those less intrusive measures have not enabled the DWSD to achieve sustained compliance. In addition, although the City has had ample opportunity to devise and implement its own solutions to the underlying causes of noncompliance that have been identified and discussed since the inception of this case, to date, it has not proposed or implemented a plan that has sufficiently addressed those root causes.
>
> To be fair, the City has been constrained in the measures it has proposed or implemented to date because the City is bound by various provisions of the City's Charter and ordinances, and existing contracts, that prevent *the City* from making fundamental changes in the identified problem areas.
>
> *This Court*, however, has broad equitable power to order any relief necessary to achieve compliance with the Clean Water Act and this Court *is not* constrained by the provisions of the City's charter or ordinances. *Weinberger,* 456 U.S. at 318; *Perkins,* 47 F.3d at 216.
>
> This Court appreciates that its broad equitable authority is to be "tempered by precepts of comity and federalism." *Kendrick* , 740 F.2d at 437. As then-Judge (now Justice) Stephen Breyer explained in *Metropolitan District Commission,*[1] considerations of comity and federalism, however, do not give a state or municipality

---

[1]*United States v. Metropolitan District Commission,* sometimes referred to as the Boston Harbor case, is another case involving Clean Water Act violations continuing over many years.

4

> the legal power to violate federal law or to continue violations of the Clean Water Act over a thirty-four year period. *United States v. Metropolitan District Commission*, 930 F.2d at 136. Maintaining the status quo is not an option.
>
> Nevertheless, this Court is mindful that remedies that override state or local law should be narrowly tailored and that, to the extent possible, local officials should at least have the opportunity to devise their own solutions to remedy a violation of federal law.
>
> Accordingly, the Court shall ORDER the Mayor of the City of Detroit (and/or his designee), the City Council President and President Pro Tem, and a current member of the Board (to be chosen by the Board) to meet and confer and, within 60 days of the date of this order, propose a plan that addresses the root causes of non-compliance that are discussed in this Opinion & Order. In making such recommendations to the Court, these individuals *shall not* be constrained by any local Charter or ordinance provisions or by the provisions of any existing contracts.

(*Id.* at 42-43) (emphasis in original). This Court ordered the above individuals to submit their proposed plan no later than November 4, 2011. (*Id.* at 44).

Following this Court's September 9, 2011, Opinion & Order, the City official and BOWC member identified therein ("the Root Cause Committee") met to devise and propose a workable solution to remedy the underlying root causes of noncompliance.

On November 2, 2011, the Root Cause Committee (hereinafter "RCC") submitted a written proposed "Plan of Action" to the Special Master in this action, which the Special Master then submitted to the Court on that same date. (D.E. No. 2409). The RCC[2] spent considerable time in developing their proposed Plan of Action. The RCC's Plan of Action recommended specific structural and governance changes for the DWSD and the adoption of a separate

---

[2]The Root Cause Committee members noted that they were "permitted to solicit and receive input from various sources" with knowledge of the DWSD and utility operations and they noted that they received input from: 1) the Detroit City Council; 2) the Board of Water Commissioners; 3) DWSD Management Staff; 4) Union Representatives; 5) Management-side Labor Counsel; 6) Industry Professionals; 7) Current DWSD Vendors; 8) a Rate Consultant; and 9) Regulatory Agency Input. (D.E. No. 2409-1 at 2).

5

Procurement Policy for the DWSD. The RCC made clear, however, that their recommended

changes "**do not contemplate DWSD becoming a separate entity. That is to say, DWSD, and**

**all of the assets of the DWSD, shall remain a department of the City of Detroit**, despite any

changes in structure or governance recommended by this Committee." (D.E. No. 2410-1 at 3)

(bolding in original). The RCC's Plan of Action recognized that additional changes may need to

be made in the future, as the Plan of Action is actually implemented. (*Id.* at 3) ("[W]e believe

that there may need to be additional changes made in the future, possibly through a second-phase

plan once we have the ability to work with the implementation of this Plan.").

On November 4, 2011, this Court issued an Order (D.E. No. 2410), wherein this Court

found that the proposed Plan of Action adequately addresses the majority of the root causes of

non-compliance outlined in this Court's September 9, 2011 Opinion & Order. This Court

therefore adopted the Plan of Action (D.E. No. 2410-1), which includes a DWSD Procurement

Policy (D.E. No. 2410-2), proposed by the RCC and ordered its implementation. (D.E. No.

2410).

Although the RCC agreed that certain changes to existing collective bargaining

agreements ("CBAs") need to occur, despite earnest efforts, the RCC could not agree on how to

achieve the necessary changes. Because the proposed Plan of Action did not adequately address

these issues, the Court considered the issue on its own and ordered specific relief relating to

CBAs. Among other things, the Court ordered that "[t]he DWSD shall act on behalf of the City

of Detroit to have its own CBAs that cover DWSD employees ('DWSD CBAs'). DWSD CBAs

shall not include employees of any other City of Detroit departments. The Director of the DWSD

shall have final authority to approve CBAs for employees of the DWSD." (D.E. No. 2410 at 6).

6

The November 4th Order also contains the following provision:

13.     The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

(*Id.* at 7).

The November 4th Order provides that, until the order has been fully implemented, or this case has been dismissed, the RCC shall meet at least once a month to discuss the implementation of the plan.

Thereafter, Sue McCormick was hired as the Director of the DWSD and began work on January 1, 2012. In addition, following a request by the RCC, this Court issued an order authorizing the DWSD to hire a Chief Operating Officer / Compliance Officer. (*See* D.E. No. 2456, "the Court agrees that, given the volume and nature of the work entailed to implement this Court's November 4, 2011 Order, and comply with the ACO, the creation of a new position at the DWSD is warranted and appropriate."). Matt Schenk was then hired as the DWSD's COO/CO.

The DWSD has been working toward implementing this Court's November 4th Order, pursuant to which it was to file certain reports by specified dates. The Director was required to file an initial compliance report by May 4, 2012, identifying any additional barriers to long-term compliance with the ACO and the Clean Water Act, and making any additional requests needed for compliance. The Order provided for that report to be circulated among the BOWC, the Mayor of the City of Detroit, the Detroit City Council, and the MDEQ, who could then provide comments, suggestions and recommendations to the Director before a final Director's Report of

7

Compliance would be filed with the Court on August 4, 2012.  (D.E. No. 2410 at 9-10).

On May 4, 2012, the DWSD filed an initial compliance report (D.E. No. 2460) that, for several reasons, asked the Court to extend the date for the filing of the Director's Final Compliance Report to October 4, 2012.  (*Id.* at 17-18).  This Court granted that request in an Order issued on May 17, 2012 (D.E. No. 2461) and, therefore, the Final Director's Report was due to be filed on October 4, 2012.

On August 20, 2012, the DWSD filed a "Motion for Relief Essential to Compliance with this Court's November 4, 2011, Order Mandating DWSD-Specific Collective Bargaining Agreements."  (D.E. No. 2469).  This Court issued an Order that granted that motion, to the extent that it: 1) clarified that Paragraph 3 on Page 6 of this Court's November 4th Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees; and 2) ruled that MERC is not enjoined from ruling on the DWSD's pending Clarification Petitions, in order to effectuate the above severancing ordered by this Court.  (D.E. No. 2470 at 3).

On September 24, 2012, the DWSD filed a "Motion for Interim Order Clarifying November 4, 2011 Order and for Expedited Briefing Schedule."  (D.E. No. 2473).  The DWSD asserted that it needs an interim order to address uncertainties and ambiguities that arise out of this Court's November 4th Order, that are impeding the DWSD's ability to implement it.  That motion included multiple requests for injunctive relief.

On September 25, 2012, this Court granted the request for expedited consideration and issued an order for expedited briefing.

8

Both Macomb County and Oakland County submitted briefs generally supporting the relief requested in the motions. (D.E. No. 2475 & 2483). No response briefs were submitted by Wayne County, the MDEQ, or the EPA. On October 1, 2012, however, the City filed a response brief opposing some requests for relief contained in the motion. (D.E. No. 2480).

On October 5, 2012, this Court issued an "Opinion & Order Regarding The DWSD's Motion For Interim Order" (D.E. No. 2489). This Court granted the motion in part, denied it in part, took certain requests under advisement, and ordered supplemental briefing regarding certain requests.

This Court granted the motion with respect to several requests. (*See* D. E. No. 2489 at 39-40). Among other things, this Court "declared that the BOWC's June 26, 2012 Resolution is in accordance with this Court's November 4th Order and shall be effective and controlling until this Court orders otherwise." (*Id.* at 39). This Court also denied the motion in several respects. (*Id.* at 40).

This Court ordered that the following two requests were taken under advisement: 1) the DWSD's request for clarification from the Court as to MERC's jurisdiction over matters relating to the DWSD; and 2) the DWSD's request for an additional six months to file the Director's Final Compliance Report. It ordered that any party could file a supplemental brief as to the MERC jurisdictional issue by October 26, 2012.

This Court ordered that supplemental briefing would be allowed with respect to the following: 1) specific requests regarding the chargeback of transition services; 2) the DWSD's request that the BOWC be allowed to delegate settlement approval authority to the Director of the DWSD; 3) the DWSD's requests regarding Sections 7.5-208 and 7.5-209 of the Detroit City

9

Charter; 4) any requested alternative method for obtaining tax clearances; 5) the DWSD's request

that the BOWC be granted authority to further define the DWSD Procurement Policy; 6) whether

the DWSD may obtain and utilize its own Employer Identification Number; 7) establishing

separate bank accounts and establishing a separate self-insurance fund; 8) issuance and approval

of debt; 9) obtaining and utilizing a separate EIN; and 10) requests relating to a Defined

Contribution Plan.  The Court ordered that the DWSD's supplemental brief was to be filed by

October 26, 2012, and that the City, or any other party, could file a response to any supplemental

brief filed by the DWSD no later than November 9, 2012.

On October 23, 2012, the DWSD filed a motion seeking an extension of time to file its

supplemental brief in support of its Motion for Interim Order.  (D.E. No. 2496).  In that motion,

the DWSD stated that, following this Court's October 5, 2012, Opinion, representatives of the

DWSD have been meeting with representatives of the City to see if they could work together to

resolve any of the remaining issues.  That motion, and a related filing (D.E. No. 2495), reflected

that the DWSD and the City had reached agreement as to some issues, but were still discussing

others.  As such, the DWSD requested that the Court extend the date for filing of its

supplemental brief until November 16, 2012.  This Court granted the requested extension.  (D.E.

No. 2497).  Thus, the Court was expecting to receive the DWSD's supplemental brief on

November 16, 2012.

Meanwhile, the RCC was still meeting on a regular basis to discuss the implementation of

the November 4, 2011, Order.

On November 9, 2012, the Special Master submitted a "Root Cause Committee Plan of

Action Clarification of November 8, 2012" to the Court, that had been submitted to the Special

10

Master on November 8, 2012. (*See* D.E. No. 2505). The document was submitted by the RCC, consisting of: 1) Charles Pugh, President of the Detroit City Council; 2) Gary Brown, Detroit City Council President Pro Tem; 3) Mayoral Representative Chris Brown, then-Chief Executive Officer of the City of Detroit; 4) James Fausone, Chairman of the Board of Water Commissioners; 5) Sue McCormick, Director of the DWSD; and 6) Matt Schenk, Chief Operating Officer/Compliance Officer for the DWSD. (*Id*. at 2).

The RCC's Plan of Action Clarification states that the RCC is aware of the pending motion seeking clarification of the November 4th Order and, because it actually devised the Plan of Action that was adopted by the Court, it "felt it was important to issue this interim report and weigh in on some of the items under consideration for the Court." (D.E. No. 2505 at 3).

The RCC notes that its original Plan of Action "recommended that DWSD's new administrative functions of Law, Human Resources, Finance, and Procurement would operate independently of the equivalent functions within the City." (*Id*. at 2). The RCC states that its original "Plan of Action was never expected to answer every operational question that could arise over time, but rather set forth a framework for the DWSD to operate in a more autonomous and independent manner while maintaining a clear statement of City of Detroit ownership and control over the assets of DWSD." (*Id*. at 1).

The RCC stated that it "has reviewed the items that were granted within the Court's [October 5, 2012] order, and we agree with those items and the decision that was issued by the Court. The Court's order, in these areas, is fully consistent with the Root Cause Committee's Plan of Action." (*Id*. at 5). The RCC further states that "[t]here were ten specific requests for clarification sought by DWSD that the Court requested supplemental briefing to address. The

11

need for the supplemental briefing, we believe, was brought on by the Detroit City Law Department objecting to the specific requests, though neither the Mayor nor the City Council authorized the Law Department to file objections." (*Id.* at 6). The RCC states that "there have been a series of meetings between DWSD and the City's new Chief Financial Officer to discuss the specific requests that relate to finance. As a result of those meetings, most of the objections from the Law Department" have been resolved. (*Id.*). It then states:

"As a result, the Root Cause Committee would recommend the following actions with respect to the items ordered for supplemental briefing:

(1)    That the Court adopt this Root Cause Committee supplemental Plan of Action in lieu of requiring supplemental briefing on the items contained within this report.

(2)    That DWSD reimburse the City of Detroit for all actual costs, which include the indirect cost, of providing transition services to DWSD.

(3)    That the Board of Water Commissioners be authorized to delegate its final approval authority at threshold of its choosing for the settlement of litigation and for the resolution of contract claims paid by DWSD to the DWSD Director or DWSD General Counsel.

(4)    That DWSD work with the City's Chief Financial Officer to establish a reasonable fee for access to the City's tax system that would enable DWSD to perform its own Tax Clearances.

(5)    That the Board of Water Commissioners is authorized to amend its procurement policy upon the affirmative vote of five members provided that any amendment to the policy that changes the approval threshold limits for the Board of Water Commissioners and/or the Detroit City Council shall also require approval by a super-majority vote of an Ad Hoc Root Cause Committee consisting of the Chairman of the Board of Water Commissioners, the Director of DWSD, the President of the Detroit City Council, the Chair of the Detroit City Council's Public Health and Safety Committee, and a representative appointed by the Mayor of the City of Detroit.

(6)    That DWSD is authorized to establish bank accounts in its own name without

12

the City Treasurer as a signer, provided that the City is able to obtain information on those accounts necessary for the City's external auditors to perform required work related to the Certified Annual Financial Reports ("CAFR").

(7)    That DWSD be authorized to establish its own self-insurance fund.

(8)    That DWSD be authorized to approve the issuance of debt and to refinance debt upon the sole approval of the Board of Water Commissioners unless the debt contains a full or partial general obligation pledge of the City of Detroit, in which case City Council approval would be required prior to issuance.

(9)    That DWSD be given additional time to work with the City of Detroit to better understand the financial impact, if any, that DWSD's establishment of a Defined Contribution Plan would have upon the City of Detroit's general fund. If DWSD ultimately moves forward with its request to establish its own Defined Contribution Plan or to act as its own Plan Administrator, then DWSD should be expressly authorized to obtain its own Employee Identification Number ("EIN"). If not, there is likely not a reason for DWSD to maintain its own EIN.

(10)   That DWSD should file a supplemental brief with respect to the issue of whether Corporation Counsel should be enjoined from acting under Sections 7.5-208 and 7.5-209 of the Detroit City Charter with respect to DWSD. The Root Cause Committee understands that it is inconsistent with the Plan of Action and the November 4, 2011 order for Corporation Counsel to Independently act to file suit over Court orders that expressly find certain sections of the Charter inapplicable to DWSD. Similarly, the Plan of Action has clearly contemplated operational independence for DWSD in a number of areas that could lead to inter-governmental disputes between DWSD and administrative departments of the City. We recognize that this Court, and not the Corporation Counsel's mediation dispute mechanism, is the proper forum for addressing concerns over the interpretation of this Court's Orders."

(*Id.* at 6-8).

The RCC states that "the repeal of Public Act 4 and some Charter amendments in the City of Detroit lead to some uncertainty over the future of the City's financial stability agreement and the potential impacts on imposed terms and conditions of employment that may take substantial time to resolve." (*Id.* at 2). The RCC agrees that clarification is needed as to MERC's role in

13

DWSD labor relations matters going forward, but offers no recommendation on that issue. (*Id.* at 6).

The RCC concludes by stating, "[w]e continue to believe that the Root Cause Committee, with its composition of City of Detroit elected officials and representatives and DWSD board and staff representatives are in a better position to recommend a workable solution to resolve the long-term compliance struggles of DWSD than a more intrusive alternative from the Court." (*Id.* at 7).

On November 15, 2012, the DWSD filed the instant "Motion For Order Adopting The Root Cause Committee Plan Of Clarification" (D.E. No. 2507) wherein the DWSD moves the Court to: 1) adopt the RCC's Plan of Clarification as an order of the Court; and 2) extend the time for the DWSD to file its supplemental brief until fourteen (14) days after the Court rules on the Motion to Adopt the RCC's Plan of Clarification.  The motion states:

> DWSD respectfully submits that the Root Cause Committee's Plan of Clarification provides much of the needed clarification of the November 4 Order sought by DWSD's Verified Motion and provides an excellent resolution of issues raised by the Verified Motion, including the majority of the issues identified for supplemental briefing. Moreover, in several respects in this regard, it mirrors the agreements that DWSD has reached with the City's Corporation Counsel (D.E. No. 2495) and Chief Financial Officer (Exhibit A). DWSD further submits that the Plan of Clarification proposed an excellent accommodation of the somewhat competing interests of achieving CWA compliance and the precepts of comity and federalism with respect to issues raised by the Verified Motion and designated for supplemental briefing. DWSD, accordingly, moves the Court to adopt the Plan of Clarification as an order of the Court in the same manner that the Court adopted the original Plan of Action in the November 4 Order.

(D.E. No. 2507 at 4).

Any party who objects to the DWSD's November 15, 2012, Motion for Order Adopting the RCC's Plan of Action Clarification was required to file a brief in opposition to the motion no

later November 29, 2012. (*See* Local Rule 7.1(d)(2)). As of this date, however, no party has

filed any objection to the pending motion or sought an extension of time for doing so. Thus, the

motion stands unopposed.[3]

## ANALYSIS

### I.   The Court Shall Adopt The RCC's Plan Of Clarification As An Order Of The Court

This long-standing case was reassigned to this Court in November of 2010. As of

September 9, 2011, this Court was faced with the unenviable task of determining how to remedy

these ongoing and serious violations of the Clean Water Act, given the complex nature of the

problem and the fact that the rather extraordinary actions taken over the past four decades proved

inadequate. In addition, this Court concluded, based on the voluminous record in this action, that

an effective equitable remedy to achieve sustained compliance would require this Court to order

structural changes regarding the DWSD that would override the City of Detroit's Charter, its

local ordinances, and some existing contracts. Yet this Court was mindful that such remedies

that override state or local law should be narrowly tailored and that, to the extent possible, local

---

[3]On October 12, 2012, the EPA filed a "Notice" (D.E. No. 2492), stating that the MDEQ recently informed it about a specific contract proposal that the DWSD was considering ("the EMA proposal") and that it has not had a chance to review it. The EPA stated that it is "not taking any position on any aspect of the proposal before DWSD" but nevertheless seeks a period of forty-five (45) days "to evaluate the potential impacts of the proposal on CWA compliance and asks this Court not to take any actions that would open the way for DWSD to initiate implementation of that proposal prior to that time." (*Id.* at 2). On December 3, 2012, the EPA and MDEQ filed a Joint Statement (D.E. No. 2509) wherein they state that, after reviewing the proposal, they are not seeking any relief from the Court at this time because they believe that safeguards are already in place to minimize the risk that any reductions in staffing levels might undermine DWSD's ability to comply with its NPDES permit (i.e., the fact that the MDEQ must approve any changes to the minimum staffing levels under the ACO's approved Staffing Plan). Neither the EPA nor the MDEQ have filed any objections to the pending motions.

15

officials should at least have the opportunity to devise their own solutions to remedy a violation

of federal law. *See, e.g., Missouri v Jenkins,* 495 U.S. 33 (1990); *Kendrick v. Bland,* 740 F.3d

432, 437 (6th Cir. 1984).

Rather than order a remedy on its own, without input from the City, this Court considered

other options and ultimately took an admittedly unique approach that allowed local officials to

devise and propose a workable solution:

> Accordingly, the Court shall ORDER the Mayor of the City of Detroit (and/or
> his designee), the City Council President and President Pro Tem, and a current
> member of the Board (to be chosen by the Board) to meet and confer and, within 60
> days of the date of this order, propose a plan that addresses the root causes of non-
> compliance that are discussed in this Opinion & Order.  In making such
> recommendations to the Court, these individuals *shall not* be constrained by any local
> Charter or ordinance provisions or by the provisions of any existing contracts.

(*Id.* at 42-43) (emphasis in original).

Although it was far from easy, these local officials did what was asked of them and

presented the Court with a detailed initial Plan of Action, and a separate Procurement Policy.  In

doing so, they noted their belief that there may need to be additional changes made in the future,

once implementation of the plan was underway.  The Court adopted the Plan of Action and

ordered its implementation in its November 4, 2011 Order.

On November 8, 2012, approximately a year into the implementation of the order, the

RCC submitted its Plan of Clarification and the DWSD is now asking the Court to adopt that

Plan of Clarification as an order of the Court.  Having carefully considered this unopposed

request, the Court concludes that it is appropriate to do so because it comports with this Court's

over-arching goal of allowing local officials to devise their own solution to remedy the DWSD's

recurrent violations of the Clean Water Act.  Accordingly, the Court shall adopt the RCC's Plan

16

of Clarification as an order of this Court.

## II.     The Court Shall Clarify Its Ruling As To CETs

As explained in this Court's October 5, 2012, Opinion & Order, when most City of Detroit CBAs expired in June 2012, the City imposed terms of employment (City Employment Terms or "CETs.")  The City, however, had not applied the CETs to any DWSD personnel because of this Court's November 4th Order which required the DWSD to enter into DWSD-specific CBAs.

Thereafter, on June 26, 2012, the Board of Water Commissioners ("BOWC") passed a Resolution that CETs are applicable to DWSD unions that have not settled CBAs until such time as: (a) the relevant union signs an agreement with DWSD; or (b) negotiations reach an impasse and the DWSD imposes its own terms and conditions of employment on that union.  The DWSD's September 24, 2012, Motion for Clarification asked the Court to clarify or declare that the Resolution adopted by the BOWC on June 26, 2012, implements and is consistent with the November 4th Order and is effective and controlling.

After considering the request, this Court declared that "the BOWC's June 26, 2012 Resolution is in accordance with this Court's November 4th Order and shall be effective and controlling until this Court orders otherwise." (D.E. No. 2489 at 39).

In so declaring, this Court's intent was to confirm that this Court's November 4, 2011, Order does not stand as an obstacle to the DWSD implementing the CETs for DWSD employees – if permitted to do so under otherwise applicable law.  The Court's intent was to confirm that if the City of Detroit may impose the CETs on unions with CBAs with the City, pursuant to Public Act 4, the City's Financial Stability Agreement with the State of Michigan, or some other

17

authority, then the DWSD is not prohibited from doing so by virtue of this Court's November 4, 2011 Order.  In other words, the Court's intent was to rule that, with respect to the ability to impose CETs, the DWSD-specific unions stand in the same shoes as other unions that have CBAs with the City of Detroit.  At the time that the Court issued its October 5, 2012, Opinion & Order, there appeared to be no dispute that the City could impose its CETs.

After this Court's October 5, 2012 Opinion & Order was issued, however, Public Act 4 was repealed by voter referendum.  As the RCC notes in its Plan of Clarification, "the repeal of Public Act 4 and some Charter amendments in the City of Detroit lead to some uncertainty over the future of the City's financial stability agreement and the potential impacts on imposed terms and conditions of employment that may take substantial time to resolve."  (D.E. No. 2505 at 2).

This Court believes that it is now appropriate to clarify its ruling and shall declare that this Court's November 4, 2011 Order does not stand as an obstacle to the DWSD implementing the CETs for DWSD employees – if permitted to do so under otherwise applicable law.  As to this issue, the DWSD-unions stand in the same shoes as other unions with CBAs with the City of Detroit.

III.   **The Court Shall Order Supplemental Briefing On The DWSD's Requests Relating To Two Specific Charter Provisions And Requests Relating To The Scope Of The Court's Injunction As To MERC**

In its September 24, 2012, Motion for Clarification, the DWSD asked the Court to clarify or declare that "Sections 7.5-208 and 7.5-209 of the Detroit City Charter regarding intra-governmental disputes and enforcement of the Charter shall not apply to issues related to DWSD and the implementation of and applicability of this Court's Orders."  (DWSD's Motion at 7). The DWSD's motion, however, did not discuss the substance of either of the above Charter

18

provisions, nor did it sufficiently explain how the DWSD believes that those provisions are impeding the DWSD from complying with its NPDES Permit, the Clean Water Act, the current ACO with the MDEQ, or this Court's orders. In addition, it was unclear to this Court as to the precise relief that the DWSD is requesting as to these two Charter provisions. This Court, therefore, ordered that DWSD could file supplemental brief relating to these requests.

The DWSD's September 24, 2012 motion also asked the Court to clarify the scope of its injunction as to MERC. This Court agreed that clarification by the Court, as to the scope of its injunction as to MERC, was needed. The Court took the request under advisement and ruled that any party could file a supplemental brief on the issue.

In the pending motion, the DWSD asks for another extension for filing its supplemental brief relating to these two Charter provisions and its requests relating to the scope of the Court's injunction as to MERC.

The Court shall grant these requests and shall order DWSD to file its supplemental brief no later than January 4, 2013. Any party that wishes to file a brief in response to that supplemental brief shall do so by January 18, 2013, and if the DWSD wishes to file a reply it must do so no later than January 25, 2013. No further extensions will be granted.

IV.     **The Court Shall Order The Director's Final Report To Be Filed No Later Than March 15, 2013.**

In this Court's November 4th Order, the Director of the DWSD was ordered to file an initial compliance report by May 4, 2012, identifying any additional barriers to long-term compliance with the ACO and the Clean Water Act, and making any additional requests to this Court that are needed for compliance. The Order provides for that report to be circulated among

19

the BOWC, the Mayor of the City of Detroit, the Detroit City Council, and the MDEQ, who

could then provide comments, suggestions and recommendations to the Director before a final

Director's Report of Compliance would be filed with the Court on August 4, 2012. (11/4/11

Order at 9-10).

On May 4, 2012, the DWSD filed an initial compliance report that, for several reasons,

asked that the Court to extend the date for the filing of the Director's Final Compliance report to

October 4, 2012. This Court granted that request in an Order issued on May 17, 2012, and,

therefore, the Final Director's Report was due to be filed on October 4, 2012.

The DWSD's September 24, 2012 Motion for Clarification sought yet another extension

for the filing of that report and asked the Court to "[e]xtend the date for filing the Final

Director's Compliance Report from October 4, 2012 to April 4, 2013." (D.E. No. 2473 at 21).

The Court shall extend the filing date beyond the current deadline, which has now passed.

But the Court concludes that there is no reason why the Final Director's Report cannot be

submitted by March 15, 2013. Accordingly, the Court shall order that the Final Director's Report

be submitted no later than **March 15, 2013,** and shall order that no further extensions will be

granted absent a very compelling reason. After the filing of the Final Director's Report, any

party wishing to file a motion seeking to dismiss this action may do so.

## CONCLUSION & ORDER

For the reasons set forth above, it is ORDERED that the RCC's Plan of Clarification is

hereby ADOPTED AS AN ORDER OF THIS COURT and this Court therefore ORDERS that:

1)   The DWSD shall reimburse the City of Detroit for all actual costs, which
     include the indirect cost, of providing transition services to DWSD;

20

2)    The BOWC is hereby authorized to delegate its final approval authority at threshold of its choosing for the settlement of litigation and for the resolution of contract claims paid by DWSD to the DWSD Director or DWSD General Counsel;

3)    The DWSD shall work with the City's Chief Financial Officer to establish a reasonable fee for access to the City's tax system that will enable DWSD to perform its own Tax Clearances;

4)    The BOWC is authorized to amend its procurement policy upon the affirmative vote of five members provided that any amendment to the policy that changes the approval threshold limits for the Board of Water Commissioners and/or the Detroit City Council shall also require approval by a super-majority vote of an Ad Hoc Root Cause Committee consisting of the Chairman of the Board of Water Commissioners, the Director of DWSD, the President of the Detroit City Council, the Chair of the Detroit City Council's Public Health and Safety Committee, and a representative appointed by the Mayor of the City of Detroit;

5)    The DWSD is authorized to establish bank accounts in its own name without the City Treasurer as a signer, provided that the City is able to obtain information on those accounts necessary for the City's external auditors to perform required work related to the Certified Annual Financial Reports ("CAFR");

6)    The DWSD is authorized to establish its own self-insurance fund;

7)    The DWSD is authorized to approve the issuance of debt and to refinance debt upon the sole approval of the Board of Water Commissioners unless the debt contains a full or partial general obligation pledge of the City of Detroit, in which case City Council approval would be required prior to issuance; and

8)    The DWSD shall work with the City of Detroit to better understand the financial impact, if any, that DWSD's establishment of a Defined Contribution Plan would have upon the City of Detroit's general fund.

IT IS FURTHER ORDERED that **the City and the DWSD shall immediately**

**implement this order.**

21

IT IS FURTHER ORDERED that this Court hereby DECLARES that this Court's November 4, 2011, Order does not stand as an obstacle to the DWSD implementing the CETs for DWSD employees – if permitted to do so under otherwise applicable law. As to this issue, the DWSD-unions stand in the same shoes as other unions with CBAs with the City of Detroit.

IT IS FURTHER ORDERED that, no later than **January 4, 2013**, the DWSD may file a supplemental brief on its requests for relief as to two Charter Provisions (Sections 7.5-208 and 7.5-209 of the Detroit City Charter) and its requests related to the scope of the Court's injunction as to MERC. If it files such a brief, any party that wishes to file a brief in response to that supplemental brief shall do so by **January 18, 2013**, and if the DWSD wishes to file a reply it must do so no later than **January 25, 2013.** IT IS FURTHER ORDERED that no further extensions will be granted.

IT IS FURTHER ORDERED that the Final Director's Report shall be submitted to the Special Master in this action no later than **March 15, 2013.** IT IS FURTHER ORDERED that no further extensions will be granted absent a very compelling reason.

IT IS FURTHER ORDERED that, after the filing of the Final Director's Report, any party wishing to file a motion seeking to dismiss this action may do so.

IT IS SO ORDERED.

       S/Sean F. Cox
       Sean F. Cox
       United States District Judge

Dated: December 14, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on

December 14, 2012, by electronic and/or ordinary mail.

                                 S/Jennifer McCoy
                                 Case Manager