IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------------x
                                                                                :

In re                                                        : Chapter 9
                                                                      :

CITY OF DETROIT, MICHIGAN,        : Case No. 13-53846
                                                                      :

             Debtor.              : Hon. Steven W. Rhodes
                                                                      :
                                                                      :
---------------------------------------------------------------x

## JOINDER TO SUPPLEMENTAL OBJECTION OF FINANCIAL GUARANTY INSURANCE COMPANY TO PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT AND SUPPLEMENTAL LIMITED OBJECTION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, SUCCESSOR CONTRACT ADMINISTRATOR

Wilmington Trust, National Association ("WTNA"), not individually, but solely in its capacity as successor contract administrator[1], hereby submits this joinder to *Supplemental Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 6674) (the "FGIC Supplemental Objection"), filed on August 12, 2014, and files this supplemental limited objection (this "WTNA Supplemental Limited Objection") to the *Corrected Fifth Amended Plan for the Adjustment of Debts of the City*

---

[1] Wilmington Trust, National Association, also serves as successor to U.S. Bank National Association ("U.S. Bank"), as: (a) Trustee ("Trustee") under that certain Trust Agreement, dated June 2, 2005, by and among the Detroit General Retirement System Service Corporation (the "GRS Corporation"), the Detroit Police and Fire Retirement System Service Corporation (the "PFRS Corporation"), and U.S. Bank, and as successor contract administrator ("Contract Administrator") under that certain Contract Administration Agreement, dated June 2, 2005, by and among the Detroit Retirement Systems Funding Trust (the "2005 Funding Trust"), the GRS Corporation, the PFRS Corporation, and U.S. Bank, regarding the issuance of Certificates of Participation Series 2005-A by the 2005 Funding Trust and the transactions contemplated thereby; and (b) Trustee under that certain Trust Agreement, dated June 12, 2006, by and among the GRS Corporation, the PFRS Corporation, and U.S. Bank, and as Contract Administrator under that certain Contract Administration Agreement, dated June 12, 2006, by and among the Detroit Retirement Systems Funding Trust 2006 (the "2006 Funding Trust"), the GRS Corporation, the PFRS Corporation and U.S. Bank, in each case, regarding the issuance of Certificates of Participation Series 2006-A and 2006-B by the 2006 Funding Trust and the transactions contemplated thereby.

*of Detroit* (Docket No. 6379) (the "Plan"). Pursuant to the *Seventh Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* (Docket No. 6560) (the "Scheduling Order")[2], WTNA files this WTNA Supplemental Limited Objection to supplement the *Joinder to Objection of Certain COPs Holders and Limited Objection of Wilmington Trust, National Association, as Successor Contract Administrator, to the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 4656) (the "Preliminary Limited Objection"). In support of this WTNA Supplemental Limited Objection, WTNA respectfully states as follows:

1. WTNA hereby joins in and adopts the arguments set forth in the FGIC Supplemental Objection. Moreover, WTNA agrees with and supports the FGIC Supplemental Objection and incorporates the FGIC Supplemental Objection as though fully set forth and incorporated herein at length.

2. Accordingly, WTNA requests that the FGIC Supplemental Objection and this WTNA Supplemental Limited Objection be sustained and that confirmation of the Plan be denied.

## GENERAL BACKGROUND

3. WTNA, as Contract Administrator and Trustee for the COPs[3], filed four (4) proofs of claims against the City – claim numbers 1120, 1136, 1138, and 1197 (collectively, the "WTNA Proofs of Claim"). The WTNA Proofs of Claim assert amounts due and owing as a result of the 2005 COPs, the 2006 COPs (collectively, the "COPs"), and the COP Litigation

---

[2] The Scheduling Order sets August 12, 2014 as the deadline for any party that filed a timely objection to the Plan to file a supplemental objection, to the extent that "additional or modified objections result from discovery, the results of plan voting, or changes incorporated into the City's latest plan of adjustment." Scheduling Order, ¶ 4.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the FGIC Supplemental Objection, as may be applicable.

(*i.e.*, Adversary Proceeding No. 14-04112). The WTNA Proofs of Claims also assert amounts for lawful fees and expenses, which include the Contract Administrator's and the Trustee's legal fees and expenses incurred as a result of the City's chapter 9 filing, that have or are accruing pursuant to the *Contract Administration Agreements* (respectively, dated June 2, 2005 and June 12, 2006) (*see supra* fn. 1).

4. Additionally, the WTNA Proofs of Claim include the Trustee's claim in connection with the COP Litigation (*i.e.*, Adversary Proceeding No. 14-04112) which asserted, among other amounts, a claim for lawful charges, fees, expenses, and rights to indemnification pursuant to the 2005 and 2006 Service Contracts (respectively, dated May 25, 2005 and June 1, 2006) (collectively, the "Service Contracts") and the 2005 Funding Trust and 2006 Funding Trust (collectively, the "Funding Trust Agreements"). Further, the WTNA Proofs of Claims provided notice of claims against the City arising from or relating to the COP Litigation, which the Trustee has specifically asserted as counterclaims against the City in the COP Litigation.

## **LIMITED OBJECTION**[4]

5. The Plan, as amended, should not be confirmed for certain additional reasons resulting from discovery or recent plan amendments as more fully discussed below.

### A. **The Plan Unfairly Discriminates Against the COP Claims**

6. The Plan unfairly discriminates against Class 9 COP Claims – an impaired unsecured class that voted to reject the Plan – in favor of multiple similarly situated unsecured classes, including but not limited to Class 7 Limited Tax General Obligation Bond Claims and Class 13 Downtown Development Authority Claims. As set forth in sections 901 and 943(b) of

---

[4] The objections set forth in this WTNA Supplemental Limited Objection do not supplant and are in addition to and supplement the objections raised by WTNA in the Preliminary Limited Objection.

title 11 of the United States Code, 11 U.S.C §§ 101 – 1532 (the "Bankruptcy Code") a chapter 9 plan is to comply with provisions of the Bankruptcy Code – this includes sections 1129(a)(8), 1129(b)(1), 1129(b)(2)(A) and (B) of the Bankruptcy Code. But and as more fully addressed in the FGIC Supplemental Objection, confirmation of the Plan should be denied as the Plan fails to meet the requirements of these sections in light of the fact that the Plan provides a projected recovery of 10% to Class 9 compared to Class 7's projected recovery of 32%. *See* POA00706603 – 11, at POA00706605.

7. The amount and the form of recovery under the Plan for Class 9 claimants is a lower percentage of recovery on a material basis (*i.e.*, 10% versus 32%). Further, the payment horizon between the two (2) classes is significantly different resulting in allocation of materially greater risk being levied on the Class 9 claimants.

8. The City cannot overcome this presumption of unfair discrimination because it will not be able to show that the holders of Class 9 claims would recover less than the holders of Class 7 claims outside of bankruptcy. Additionally, as set forth in the FGIC Supplemental Objection, the City cannot show that the discrimination between Class 9 and Class 7 is fair under the four-factor *Aztec* test the City argues should apply.

9. A comparison of Class 13 to Class 9 further highlights the unfair discrimination that is consistent throughout the Plan. Class 13 is made up of a claim arising from a loan in the amount of $33,600,000 made in 1991 between the Downtown Development Authority and the City. *See* Plan, § I.A.117. The loan has no due date and no repayment terms. *See* City of Detroit, Michigan, *Comprehensive Annual Financial Report For the Fiscal Year Ended June 30, 2013*, p. 106 (July 25, 2014).[5]

---

[5] Available at http://www.detroitmi.gov/News/tabid/3196/ctl/ReadDefault/mid/4561/ArticleId/503/Default.aspx.

10. The City's only obligation is to repay the loan to the extent it has the funds available to do so. *Id.* Yet the City has decided to honor this obligation in full (even though the City has never attempted to repay the loan in the prior twenty-three (23) years) by providing Class 13 a pro rata share of New B Notes calculated on the full amount of the claim. *See* Plan, § II.B.3.t.i. At the same time, the City attempts to further restrict the Class 9 recovery by providing it only with a pro rata share of New B Notes based upon the aggregate amount of unpaid principal on the COPs, and not the full amount of the COP Claims that is due and owing. *See* Plan, § II.B.3.p.iii.

**B.** **The Plan Provides Insufficient Funds for the Disputed COP Claims Reserve**

11. The Disputed COP Claims Reserve in the Plan is insufficient, illusory, and discriminates against the holders of Class 9 COP Claims. The Disputed COP Claims Reserve provides for only the Unsecured Pro Rata Share of New B Notes in an amount equal to the total aggregate *unpaid principal amount* of the COPs. Plan, § II.B.3.p.iii.A (emphasis added). Yet in the most recent amendments to the Plan, the Plan defines a "COP Claim" broadly to include "a Claim under or evidenced by the COP Service Contracts." Plan, § I.67. As such, the Plan fails to account for the full claim amount in the calculation of the amount of the New B Notes to be placed in the Disputed COP Claims Reserve.

12. The definition of a "COP Claim" consists of more than claims for the aggregate amount of unpaid principal on the COPs, including, but not limited to, the contractual and other claims included in the WTNA Proofs of Claim, the FGIC COPs Proofs of Claim[6], and the

---

[6] The FGIC COPs Proofs of Claims assert claims for amounts of principal and interest on the COPs that FGIC has or will be required to pay, as well as claims for reimbursement of fees and expenses pursuant to the Contract Administration Agreements.

counterclaims arising in the COP Litigation[7]. In the event that any of these claims are allowed in full (or in an amount greater than the total aggregate amount of unpaid principal of the COPs), the amount of New B Notes in the Disputed COP Claims Reserve will not be enough to provide the already meager 10% recovery on the COPs Claims projected under the Plan.

13. In addition, the Plan provides for the ability of the City to "dip into" the Disputed COP Claims Reserve and take New B Notes to pay the litigation expenses of the Litigation Trustee, so in reality there is no fixed protected reserve set aside for the holders of Class 9 COPs Claims.

### C. The Plan Does Not Make the Required Disclosures of Payment of Expenses

14. The Plan also cannot be confirmed as it contemplates costs to be paid by the City "for services or expenses in the case or incident to the plan" that have not been fully disclosed as required by section 943(b) of the Bankruptcy Code,[8] including the obligations the City will undertake as a part of: (a) the DIA Settlement; (b) the LTGO Settlement; and (c) the OPEB Settlement. *See* Plan, Art. IV. Further, a few of the parties the City has agreed to pay but has not yet disclosed the amount of fees and expenses for include (i) the COP Swap Collateral Agreement Custodian[9]; (ii) U.S. Bank (under the terms of the LTGO settlement)[10]; and

---

[7] On August 6, 2014, the Court issued the Counterclaim Order, granting FGIC's request to file counterclaims against the City in the COP Litigation.

[8] WTNA reserves all of its rights, remedies, and arguments relating to the reasonableness of the services and expenses to be paid by the City, and the Court's ability to determine the same, until the scheduled briefing and hearing on the matter pursuant to paragraph six (6) of the Scheduling Order.

[9] *Order (I) Approving Settlement and Plan Support Agreement with UBS AG and Merrill Lynch Capital Services, Inc. Pursuant to Bankruptcy Rule 9019 and (II) Granting Related Relief*, ¶¶ 14, 24 (Docket No. 4094).

[10] *See* Exhibit I.A.198, section 2.6(a).

(c) Citigroup (under the terms of DWSD revenue financing and tender offer financing as a part of the settlement with the DWSD financial parties)[11].

### D. Other Deficiencies in the Plan

15. Additionally, the Plan's exculpation and release provisions are inappropriately broad and improperly shield multiple parties that have not served in the capacity of fiduciaries in the chapter 9 bankruptcy proceeding, including but not limited to the State, the State related Entities, the LTGO Exculpated Parties, and the UTGO Exculpated Parties, and contrary to the standard enunciated by the Sixth Circuit for exculpation and release provisions.

16. Further, the Plan's provisions providing that the exculpation provided under the Plan "shall not affect any liability of the COP Swap Exculpated Parties to Syncora Guarantee Inc., Syncora Capital Assurance Inc., or Financial Guaranty Insurance Company in connection with the COP Swap Settlement" should also provide that the exculpation also does not affect liability of the COP Swap Exculpated Parties to the COP Holders, the Contract Administrator, or the Trustee. *See* Plan, § III.D.6.

17. Moreover, the Plan fails to provide for the assumption or rejection of the Service Contracts, which are executory contracts, pursuant to section 365 of the Bankruptcy Code. *See* Plan, § II.D.

18. The City cannot meet its burden of proof to show that the Plan satisfies the requirements for plan confirmation under sections 943(b) and 1129 of the Bankruptcy Code. Accordingly, confirmation of the Plan should be denied.

---

[11] *Motion of the Debtor for a Final Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections*, Exhibit 6 (Docket No. 6644).

## RESERVATION OF RIGHTS

19. The objections raised in this WTNA Supplemental Limited Objection are in addition to and supplement the objections raised in the Preliminary Limited Objection. WTNA hereby reserves and preserves all of its rights, remedies, and arguments in connection with this WTNA Supplemental Limited Objection and the FGIC Supplemental Objection and reserves all rights to supplement this WTNA Supplemental Limited Objection and to be heard before the Court with regard to the arguments set forth in this WTNA Supplemental Limited Objection and the FGIC Supplemental Objection – even if the FGIC Supplemental Objection is resolved or otherwise withdrawn – as well as reserves the right to make any other applicable arguments, including those raised in other objections, other joinders and/or other confirmation pre-trial briefing with respect to the Plan. Nothing contained herein is intended to contravene or supersede any arguments or positions that have been made or taken, or that may be made or taken, by any Certificateholders (as defined in the relevant Funding Trust Agreements set forth in footnote 1).

*[Text Continued On Following Page]*

WHEREFORE, WTNA requests that the Court (a) deny confirmation of the Plan, and sustain (b) the Preliminary Limited Objection, (c) this Supplemental Limited Objection and (d) the FGIC Supplemental Objection.

Dated: August 12, 2014  RESPECTFULLY SUBMITTED,
New York, New York

By: /s/ Heath D. Rosenblat
 Kristin K. Going, Esq.
 Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Kristin.Going@dbr.com
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

-and-

Dirk H. Beckwith, Esq. (P35609)
FOSTER SWIFT COLLINS & SMITH, P.C.
32300 Northwestern Highway, Suite 230
Farmington Hills, Michigan 48334-1471
E-mail: dbeckwith@fosterswift.com
Telephone: (248) 539-9918

*Counsel for Wilmington Trust, National Association, as Successor Contract Administrator*

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |
| | ) |

## CERTIFICATE OF SERVICE

I, Heath D. Rosenblat, an attorney in the law firm of Drinker Biddle & Reath LLP, certify that on this 12th day of August 2014, I caused the foregoing *Joinder to Supplemental Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit and Supplemental Limited Objection of Wilmington Trust, National Association, Successor Contract Administrator* to be filed and served by operation of the CM/ECF system for the Eastern District of Michigan Bankruptcy Court upon all registered users thereof.

    /s/ Heath D. Rosenblat
Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140