# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------X
:    Chapter 9

IN RE                     :

:    Case No. 13-53846

CITY OF DETROIT, MICHIGAN,    :

:    Hon. Steven W. Rhodes

           DEBTOR      :
-------------------------------------------------------X

## CITY OF DETROIT'S COUNTER-DESIGNATION OF RECORD ON APPEAL

The City of Detroit (the "City"), by and through its undersigned counsel, pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, hereby submits this counter-designation of items to be included in the record on appeal, in response to *Appellant's Designation of Record on Appeal and Statement of Issues*, filed on July 25, 2014 by Appellant Albert O'Rourke [Docket No. 6256]. Copies of all items designated are attached.

## COUNTER-DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD

1.     Debtor's Objection to Claim No. 458 Filed by Albert Otto O'Rourke [Docket No. 4872, filed May 15, 2014]

2.     Debtor's Reply to Response to Objection to Claim No. 458 filed by Albert O'Rourke [Docket No. 5503, filed June 20, 2014]

3.     Transcript of Hearing Held June 25, 2014, pp. 13-14.

4.     Notice of Appeal [Docket No. 5995, filed July 14, 2014]

4823-5660-2908.1

13-53846-tjt  Doc 6690-5   Filed 08/13/14   Entered 08/13/14 13:46:55   Page 1 of 99
13-53846-swr  Doc 6582   Filed 08/07/14   Entered 08/07/14 16:19:56   Page 1 of 99

Dated: August 7, 2014

Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ Tamar N. Dolcourt
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the City of Detroit, Michigan*

4823-5660-2908.1

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

------------------------------------------------------- x
                                        :

In re                          :

CITY OF DETROIT, MICHIGAN,     :

                Debtor        :

------------------------------------------------------- x

|  |  |
|---|---|
| Chapter 9 | |
| Case No. 13-53846 | |
| Hon. Steven W. Rhodes | |

**DEBTOR'S OBJECTION TO CLAIM NUMBER 458**
**FILED BY ALBERT OTTO O'ROURKE**

      The Debtor, the City of Detroit (the "City"), by and through its undersigned counsel, for

its objection to claim number 458 (the "Claim") and its request for an order disallowing and

expunging the Claim, substantially in the form attached hereto as Exhibit 1, respectfully states

as follows:

**JURISDICTION AND VENUE**

      1.     This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§157 and

1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§1408 and 1409.

**BACKGROUND FACTS**

      2.     On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this

Court, thereby commencing the largest chapter 9 bankruptcy case in history.

      3.     Information regarding the City's economic challenges and the events leading up

to the filing of this case can be found in the *Declaration of Kevyn D. Orr in Support of City of*

1

*Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code* filed on July 18, 2013 (Docket No. 11).

4.      On December 5, 2013, this Court held that the City was eligible for relief under chapter 9 of the Bankruptcy Code.  *See Order for Relief Under Chapter 9 of the Bankruptcy Code* (Docket No. 1946).

5.      On November 21, 2013, this Court issued its *Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* (Docket No. 1782) (the "Bar Date Order") establishing deadlines to file certain proofs of claim in this case.  The Bar Date Order set the deadline to file proofs of claim as February 21, 2014 at 4:00 p.m., Eastern Time (the "Bar Date").

6.      On December 27, 2013, Albert Otto O'Rourke filed the Claim.  A copy of the as-filed Claim is attached hereto as Exhibit 2.

7.      The Claim seeks $1 trillion.

8.      The stated basis for the Claim is "Governmental abuses by City of Detroit and Agent."

9.      More specifically, the sole attachment to the Claim, a handwritten Exhibit A, states that the City lost or destroyed certain nuclear research materials related to the "Manhattan Project" which were located at 2175 Palms Avenue in Detroit, Michigan.

10.      The Claim does not contain any information to support Mr. O'Rourke's allegation that the City owes him $1 trillion.  It does not identify the circumstances supporting the alleged loss or destruction of the property, the date upon which the alleged actions occurred, or any

4816-6929-3083.2

information supporting the stated claim amount of $1 trillion, including any information about the value of the property at issue, or any other information supporting the stated claim.

11.     Furthermore, the Claim does not contain any documents which evidence Mr. O'Rourke's ownership of the property which was allegedly destroyed or lost by the City.

12.     Exhibit A notes other court cases which Mr. O'Rourke states are related to the Claim. Mr. O'Rourke filed a case in the United States District Court for the Southern District of California (the "District Court Matter"), Case No. 10-cv-00302. A copy of the First Amended Complaint (Docket No. 14) in the District Court Matter is attached hereto as Exhibit 3. The District Court matter refers to actions taken on February 9, 2010 in La Jolla, California, possibly with respect to some of the same materials.

13.     The City reviewed the PACER records of the District Court Matter. Mr. O'Rourke sued multiple defendants in that matter: the United States, the University of California, the County of San Diego, the City of San Diego, the Attorney General of California, ATC, Inc., Jerry Brown, Eric Holder, B. George Seikaly, Lori Bay, Bonnie Bretillo, Eric Dye, William Kellogg, Jr., La Jolla Beach and Tennis Club, San Diego Chase Bank, Union Bank, the County Marshall's Office, San Diego Superior Court, San Diego Police Department, and Does 1-100. The City was not a defendant in that matter. Mr. O'Rourke alleged numerous causes of action against the Defendants, including intentional infliction of emotional distress, violation of 18 U.S.C. 2340 [contains the definition of torture], violations of Section 13 or Section 15(d) of the United States Securities Exchange Act of 1934, invasion of privacy, legal trespass, invasion of/slander of rights of title, and sought declaratory and injunctive relief.[1] Ultimately the District

---

[1] Exhibit A also refers to one or more cases filed in San Diego Superior Court more than 20 years ago which involve Mr. O'Rourke. Electronic records for those cases are unavailable.

3

Court Matter was dismissed for want of prosecution (Docket No. 17) on December 20, 2010. The Ninth Circuit Court of Appeals affirmed the dismissal on March 8, 2013 (Docket No. 24).

## **RELIEF REQUESTED**

14.     The City files this objection pursuant to the Section 502(b)(1) of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 3001, seeking entry of an order disallowing and expunging the Claim because there is no basis for the Claim and it is not enforceable against the City.

## **BASIS FOR RELIEF REQUESTED**

*a.   The Claim Does Not Meet the Validity Standards of Rule 3001(f) and Should Be Disallowed*

15.     Only proofs of claim that comply with Rule 3001 are presumed to be valid in the amount filed.  Rule 3001(f).

16.     In order to meet the requirements of Rule 3001(f), a properly-filed proof of claim must contain the following: (1) the creditor's name and address; (2) the basis for the claims; (3) the date the debt was incurred; (4) the amount of the claim; (5) classification of the claim; and (6) supporting documents.  *In re Hughes*, 313 B.R. 205, 209 (Bankr. E.D. Mich. 2004) (McIvor, J.) (citing *In re Dow Corning Corp.*, 250 B.R. 298, 321 (Bankr. E.D. Mich. 2000)).

17.     The Claim does not contain the information required by 3001(f). It does not identify the basis for the claim.  There is no explanation of the circumstances which led to the destruction or loss of the property.  It does not detail the property at issue, the value of that property, or the ownership of the property.  It does not identify the date upon which the alleged action occurred, and it does not provide any information or documents to support the calculation

4

of the claim amount. The Claim does not explain why the City is liable to Mr. O'Rourke for $1 trillion.

18.     The Claim fails to meet the standards of Rule 3001(f), and should not be considered either valid, nor should its stated value of $1 trillion be accepted by this Court. Rather, the Claim should be disallowed and expunged.

> b. *Even if the Court Finds the Claim Meets the Standards of Rule 3001(f), Mr. O'Rourke Still Has the Ultimate Burden to Prove the Validity of the Claim After the City's Objection, Which He Cannot.*

19.     Courts have held that when a proof of claim meets the requirements for Rule 3001(f), it is considered prima facie evidence of validity and amount. *Id.* at 208. The objecting party must then present its own evidence challenging the validity of the proof of claim. *Dow Corning*, 250 B.R. at 321. If it does so, then the ultimate burden of persuasion on the proof of claim shifts back to the claimant. *Id.*

20.     In *Dow*, the United States Government filed multiple proofs of claim involving beneficiaries of government health care programs who had breast implant surgery. *Id.* at 307. The Debtor challenged the information provided in the proofs of claim, because among other things, they did not provide specific information regarding the medical procedures, whether Dow products had even been used in the procedures, or how the amount of the claim had been calculated. *Id.* at 322. The Court deemed this lack of supporting documentation sufficient to challenge the prima facie validity of the Government's claims and shift the burden of persuasion back to the Government. *Id.*

21.     Here, as in *Dow*, the lack of supporting information and documentation regarding the Claim, including the failure to explain the circumstances of the alleged action by the City, identify the owner of the property at issue, the date of the alleged loss or destruction, and any

4816-6929-3083.2

basis for the asserted claim amount of $1 trillion are sufficient to challenge the prima facie validity of the Claim and shift the ultimate burden of persuasion back to Mr. O'Rourke.

22.     Mr. O'Rourke is unable to meet this burden based on the documentation provided with the Claim.  Based on the Claim, the City cannot even identify the property which was allegedly lost or destroyed, the owner of that property, the events which alleged led to the destruction or loss of the property, let alone the basis of the $1 trillion purported value of that property.  The Claim does not contain any information to support it.  As such, it should be disallowed and expunged.

## RESERVATION OF RIGHTS

23.     The City files this Objection without prejudice to or waiver of its rights pursuant to section 904 of the Bankruptcy Code, and nothing herein is intended to, shall constitute or shall be deemed to constitute the City's consent, pursuant to section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political or governmental powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property.

## NOTICE

24.      The City has provided notice of this Objection to the claimant identified on Proof of Claim No. 458 and all parties that have requested notice in this case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the City respectfully submits that no other or further notice of the relief requested in this Objection need be given.

## NO PRIOR REQUEST

25.     No previous request for the relief requested herein has been made to this or any other court.

6

4816-6929-3083.2

WHEREFORE, the City respectfully requests that this Court enter an order, substantially in the form annexed hereto as Exhibit 1, granting the relief requested herein and granting the City such other and further relief as this Court may deem just and proper.

Dated: May 15, 2014

FOLEY & LARDNER LLP

By: /s/ Tamar N. Dolcourt
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the Debtor, City of Detroit, Michigan*

7

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------------x
:     Chapter 9
In re                    :
:     Case No. 13-53846
CITY OF DETROIT, MICHIGAN,   :
:     Hon. Steven W. Rhodes
            Debtor     :
-------------------------------------------------------------x

## NOTICE OF DEBTOR'S OBJECTION TO CLAIM NUMBER 458
## FILED BY ALBERT O'ROURKE

**PLEASE TAKE NOTICE THAT** the Debtor, the City of Detroit, (the "<u>City</u>"), by and through its undersigned counsel, has filed an objection to claim number 458 filed Albert O'Rourke (the "<u>Objection</u>") and for an order disallowing and expunging such claim.

If you do not want the court to eliminate or change your claim, or grant the relief request in the Objection, then on or before **<u>June 18, 2014</u>**, you or your lawyer must:

1. File with the court, at the address below, a written response to the objection. Unless a written response is filed and served by the date specified, the court may decide that you do not oppose the objection to your claim.

<div align="center">
Clerk of the Court<br>
United States Bankruptcy Court<br>
211 W. Fort Street, Suite 2100<br>
Detroit, MI 48226
</div>

If you mail your response to the Court for filing, you must mail it early enough so that the Court will **<u>receive</u>** it on or before the date stated above. All attorneys are required to file pleadings electronically.

2. A copy of your response must also be mailed to counsel for the City:

John A. Simon
Tamar N. Dolcourt
Foley & Lardner LLP
500 Woodward Ave., Ste. 2700
Detroit, MI 48226

3.     You must also attend the hearing on the objection scheduled to be held on **June 25, 2014** at 10:00 a.m. in Courtroom 100, United States Federal Courthouse, 231 W. Lafayette Ave., Detroit, MI 48226 unless your attendance is excused by mutual agreement between yourself and the objector's attorney.

    **If you or your attorney do not take these steps, the court may decide that you do not oppose the objection to your claim, in which event the hearing will be canceled and the objection sustained.**

Date: May 15, 2014

FOLEY & LARDNER LLP

By: /s/ Tamar N. Dolcourt
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
joneill@foley.com
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the Debtor, City of Detroit, Michigan*

2

4832-8633-6027.

13-53846-tjt  Doc 6690-5  Filed 08/13/14  Entered 08/13/14 13:46:55  Page 11 of 99
13-53846-swr  Doc 6552-1  Filed 08/05/14  Entered 08/05/14 16:17:55  Page 12 of 92

**EXHIBIT 1: PROPOSED ORDER**

4816-6929-3083.2

13-53846-tjt   Doc 6690-5   Filed 08/13/14   Entered 08/13/14 13:46:55   Page 12 of 99
13-53846-swr   Doc 6552-2   Filed 08/05/14   Entered 08/05/14 11:55:31   Page 12 of 99

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
------------------------------------------------------ x
                                                       :    Chapter 9
In re                                                  :
                                                       :    Case No. 13-53846
CITY OF DETROIT, MICHIGAN,                             :
                                                       :    Hon. Steven W. Rhodes
                                    Debtor             :
------------------------------------------------------ x
```

## ORDER GRANTING DEBTOR'S OBJECTION TO CLAIM NUMBER 458
## FILED BY ALBERT OTTO O'ROURKE

Upon the Debtor's Objection to Claim No. 458, dated May 15, 2014 (the "<u>Objection</u>"),[2]

of the Debtor, City of Detroit, Michigan, (the "<u>City</u>"), seeking entry of an order disallowing and

expunging Claim No. 458 (the "<u>Claim</u>"), and it appearing that this Court has jurisdiction over the

Objection pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this

proceeding and the Objection in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and it appearing that the relief requested in the Objection is in the best interests of the City,

and its creditors; and due and proper notice of the Objection having been given as

provided in the Objection; and it appearing that no other or further notice of the

Objection need be given; and a hearing on the Objection having been held before the

Court; and any objections to the Objection having been overruled or withdrawn; and the

Court finding that the legal and factual bases set forth in the Objection and at the hearing

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Objection.

4816-6929-3083.2

establish just cause for the relief granted; and after due deliberation and good and sufficient cause appearing therefore; it is hereby

ORDERED, DECREED AND ADJUDGED that:

1. The Objection is granted as set forth herein.

2. Claim No. 458 is hereby disallowed and expunged, pursuant to Section 502(b) of the Bankruptcy Code.

3. The City's claims agent is hereby authorized to update the claims register to reflect the relief granted in this Order.

4. The City is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Objection.

5. Notice of the Objection as provided therein is good and sufficient notice of such objection, and the requirements of Bankruptcy Rule 3007(a) and the local rules of the Court are satisfied by such notice.

4816-6929-3083.2

**EXHIBIT 2: CLAIM NO. 458**

4816-6929-3083.2

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | PROOF OF CLAIM |
|---|---|

Name of Debtor:

*City of Detroit*

*Eastern District of Michigan*

Case Number: *13-53846*

**FILED**

2013 DEC 27 P 12:37

U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (The person or other entity to whom the debtor owes money or property):

*Albert Otto O'Rourke*

Name and address where notices should be sent:

*2316 Pasco De Lavi + #223*
*Oceanside, CA. 92056*

**RECEIVED**
**JAN 09 2014**
**KURTZMAN CARSON CONSULTANTS**

Telephone number: *(760) 453-2218*  email:

Name and address where payment should be sent (if different from above):

*N/A (Same as Above)*

Telephone number:  email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ *1,000,000,000 (one Trillion Dollars)*

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** *Governmental Abuses by City of Detroit and Agents*
(See instruction #2) *(See Attached Exhibit A)*

**3. Last four digits of any number by which creditor identifies debtor:** *N/A*

**3a. Debtor may have scheduled account as:** *2175 Palms Ave Detroit, Michigan*
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):** *N/A*
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐Real Estate ☐Motor Vehicle ☐Other
Describe:

Value of Property: $_____

Annual Interest Rate_____% ☐Fixed or ☐Variable
(when case was filed)

*N/A (Unsecured)*

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ *N/A*

Basis for perfection:_____

Amount of Secured Claim: $ *N/A*

Amount Unsecured: $ *1,000,000,000*
*One Trillion Dollars*

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

*One Trillion Dollars*

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

*See Attached Exhibit "A"*

Amount entitled to priority:
$ *1,000,000,000*

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)  *N/A*

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: — *Court Document will be sent if Necessary (see Attached Exhibit) A*

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: *Albert Otto O'Rourke*
Title: _____
Company: _____
Address and telephone number (if different from notice address above): *2316 Pasco De Lauria #223 Oceanside, CA. 92056*
Telephone number: *(760)453-2___* email:

(Signature) *B O'R* (Date) *12/27/2013*

RECEIVED
JAN 09 2014
KURTZMANCARSONCONSULTANTS

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases, exceptions to these general rules may apply.

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

"Exhibit A"

① This Claim is "related to", in part based upon, 2175 palms Ave (O'Rourke Home No 1, Detroit, Michigan, of which claimant O'Rourke believes he is entitled to claim against, because of the destruction or loss of such by City of Detroit with the loss of some of the documents, letters, photos research papers, University of Michigan papers (Canada etc. Such being related to the illegal Seizure and destruction of duplicates or other Nuclear physics (Maxwell Technologies Inc MXWL SAIC UCSD EO.) papers of the late Dr. Raymond Clifford (the "Green Shack") O'Rourke at the Second O'Rourke property (see USDC-SD 10 CV-0302 (W) May 26, 2010 Court Order (FRCP 12(b) Motion) page 5 lines 20-21 of San Diego Superior Court 566159, 615878, P193006 inter Alia). Said "Second Seizure" of the "Green Shack" 7949 Lowry Terrace, La Jolla, CA 92037 by the Government on/after/ continuing as of Feb 9, 2010.

② 13-53846-swr Doc 2372-3 Filed 08/13/14 Entered 08/13/14 19:55:01 Page 18 of 99 ... will provide court documents, it possible (illegally kept, page #09 by US Government.

**EXHIBIT 3: FIRST AMENDED COMPLAINT IN DISTRICT COURT MATTER**

4816-6929-3083.2

13-53846-tjt Doc 6690-5 Filed 08/13/14 Entered 08/13/14 13:46:55 Page 19 of 99
13-53846-swr Doc 4552-4 Filed 05/07/14 Entered 05/07/14 13:53:31 Page 1 of 20

1  ALBERT (AL) O'Rourke

2  7949 Lowry Terrace

3  LA Jolla, CA. 92037

4  (858)272-6876 (message)

5  Plaintiff In Pro se

6

7

8

9  UNITED STATES DISTRICT COURT

10  SOUTHERN DISTRICT OF CALIFORNIA

11

12

13  ALBERT O'Rourke                    CASE NO,
14          Plaintiff                  10-CV-0302
15                                          (POR)
                                              (W)
16  VS.

17  UNITED STATES, ERIC        PLAINTIFF'S
18  HOLDER, B. GEORGE SEIKALY,  FIRST AMENDED
19  ERIC DYE, UNIVERSITY of     COMPLAINT
20  CALIFORNIA, JERRY BROWN,
21  CALIFORNIA ATTORNEY GENERAL
22  SAN DIEGO COUNTY, SAN DIEGO
23  POLICE Dept. UNION BANK.
24  CHASE BANK, SAN DIEGO
25  SUPERIOR COURT, LORI BAYS,
26  Bonnie Brettillo, SAN Diego County
27  Marshall's office, DOES 1-(100)
28                    Defendants

1  (Comes Now plaintiff ALBERT (AL, "chiv")
2  O'Rourke with his FIRST Amended
3  Complaint (Incorporating by reference
4  The original Complaint and pleadings
5  on File in This Case) and Alleges As follows
6  Against Defendants, The following:

7             <u>I</u>
8     <u>FIRST CAUSE OF ACTION</u>
9     <u>Intentional Infliction</u>
10    <u>OF Emotional Distress</u>

12 (1) On Sept 11, 2001 ("9-11") plaintiff's
13 Father, RAYMOND O'Rourke, residing At
14 <u>7949 lowry Terrace La Jolla, California,</u>
15 Also plaintiff's Residence and Home for
16 Four Decades at That Time, and continuing
17 Now as Such (Admitted by The Court in its
18 May 26, 2010 order) (page 5, lines 20:21)
19 Was Watching Television ( 9-10 Am +/-?)
20 with AL O'Rourke Serving him his light
21 Breakfast.
22 (2) When The Horrific events of "9-11"
23 Started to appear on Television, plaintiff's
24 father stated "This is A Terrible World"
25 And Collapsed. AL O'Rourke was Totally Shocked
26 And had to Call An ambulance.

(3) RAymond O'Rourke, despite predictions
of The Doctors at Scripps Hospital La Jolla,
California, That Raymond would not survive
(And should be Terminated) (which AL O'Rourke
objected To) did survive. And Partially
if not wholly Recovered (Raymond's
Brain functions remained fully unaffected,
He simply had To Accept being less
physically energetic (Though he still
drove his car).

(4). Defendants were, Are fully Aware That
AL O'Rourke, Raymond's (now retired)
Attorney (see SDSC 566159 or U.S. Tax
Court Case 89-13052 for examples)
AL O'Rourke And Raymond O'Rourke had
Numerous JOINT Family businesses (Such As The
O'Rourke Residential Care Home (At Said same
7949 lowry Terrace) And Yacht Charters Ltd
(See SDMC 025114 or U.S. 96-CV-1442 Jm)
RORACK (A Maryland partnership with
ALAN C Kolb (ACK") (ROR=Raymond O'Rourke)
(And into which All Real And personal
property rights go into (i.e. Maryland Law
Not California). Such being originally
STATE
Set up by LAW Maryland Attorney phil Ryan in 1967-68

2

1. (5) Other Joint Raymond/Al businesses
(Some of such with other parties too) being Computer/
Lattice Electromagnetics Inc (Albuquerque, New Mexico)
Insect
Investor Management Services (IMS),
O'Rourke + Associates, Inc, Mary (O'Rourke)'s
Gravity Products Inc), "Fearless Pete's Comix"
(Peter O'Rourke)
(The illustrations for The "Trial", Raymond
O'Rourke's Book and others)
(See U.S. Tax Court Case 89-13052).
(6) "Simply put" made a significant
return on the "Tri-party" (Joint (Tri")
partnership) of Raymond, Mary, Albert
O'Rourke. Such is indisputable, since
Defendant United States put such on
The Record in said U.S. Tax Court Case 89-
13052)
(7) Such money was used to pay the
Home Mortgage and Cost, for Three decades
At Least (1970's, 1980's, 1990's)
(8) Eventually most of such money was
Used up in numerous lawsuits brought by,
(Caused to be brought by Defendant,) over the
years (SDMC 625114, SDSC 566159, etc).

(RAYMOND)

(9) Because of The Costs of The Scripps'
Hospital Bills, Al O'Rourke had to Agree
To pay such, Through The Raymond O'Rourke
power of Attorney (General power)
Granted to Al O'Rourke from Raymond in
2000 (prior to "9-11" (Sept. 11, 20-1).

(10) Obviously numerous Scripps contracts,
To pay, and be held Liable for, had to be,
And were signed by Al O'Rourke.

(11) Al O'Rourke, obviously, believed The
United States, Government would pay for
such, ultimately, Through FEMA or
otherwise, because of The "9-11" Basis
That is Raymond's injuries being caused
by The supposed "terrorists."

(12) In any event, The already indigent
Al O'Rourke (since The mid 1990-s),
had a valid Scripps contract.

(13) Al O'Rourke has never Authorized Any
Medi-Cal, or State of California interference,
substitution, Novation, etc by either
The City of San Diego, The County of San Diego
or The State of California (moreover, if Anything,
Al O'Rourke would have dealt with Mary (and (R-Rock)

(14) Moreover (because of RORACK/Maryland)
any Hospital Bills for Raymond, obviously
fall into the (apparently still open)
U.S. Tax Court Case 89-13052)

(Since San Diego County (County Counsel
and Defendant B George SciFaly) has
interfered with such.

(15) And there is no dispute that
Raymond or AL are "Crime victims"
(victims of "9-11"); That is because in the
Probate Court proceedings (caused by
San Diego County (and the City/State of California)
Superior Court pleadings (SDSC P193006)
are served by the County, on the
"Crime Victims Unit" of the State of
California.

(16) In any event, Defendants have
Jointly Tortured AL O'Rourke, plaintiff
ever since "9-11" (Sept 11, 2001). "Simply
put" to "solve" the "O'Rourke problem"
"once and for all.

5

(17) Defendants Knew of The pendency
and Federal Jurisdiction of both
U.S. DC, 09-CV-1375(w) (Appeal) and
U.S DC 10-CV-0302 (POR)(w).

(18.) The State of California (Defendant
Jerry Brown, Attorney General),
Defendant Seikaly and The San Diego
Superior Court (As usual "Annoyed"
at AL O'Rourke's Jurisdictional
Challenges (see Oct 28, 2009 or
Jan 25, 2010 SDSC p #93-006137-2009
Sent in a "Small Army" of Federal
and State officers, Law enforcement,
Para medics, Animal Control, Fire Dept,
etc. personnel on Feb 9, 2010 (+/- 8am)
("Tying up" La Jolla Shores Traffic for
The Day), seizing custody of AL O'Rourke's
Home and residence. And All of The
Business, Legal, personnel Letters, records,
Books, musics, TV, etc

( +/- 50-100)         046962)

6

(19) The Defendants (including Defendant
United States Government, Defendant ERic Holder,
The Secret Service, or others / other Federal
Agencies assisting in such) blew out most
of the windows, knocked off doors,
Tore down walls, etc ile. [A "Pearl Harbor"
Like, "Sneak Attack").

(20) Leaving Al O'Rourke with absolutely
Nothing but the "Clothes on his back".
(No food, No water, No place To stay,
No Blankets, No clothes, money, Anything.

(21) This in the middle of the worst winter
Rain / Cold storms in Decades.

(22) They then carted off As supposed
"War Booty" All of Al O'Rourke, and
Numerous, other persons', personal properties,
business records, legal records, etc ele
(especially the "JFK" materials
(see County Counsel's April 14, 2010
letter for example). (Raymond O'Rourke
And E6+6 and the Dept of the Navy had
done the "Physics" Analysis of the JFK
Assassination in 1963.

(23) They Then placed a "King Kong"
style (enormous) Fence around The
premises.

(24) Such left Al O'Rourke (and some
of The neighbors as well) in TOTAl Shock
and Emotimal Distress.

(25) Such Emotimal Distress (A "mini
9-11") was caused by Defendants, jointly,
for corrupt and malicious purposes,
and to degrade, humiliate, vex and
destroy plaintiff

(26) This as a "Continuation" of past
malicious Actions (See USDC 93-1880
IE6)
(USDC-01-CV-04234/ for example.
(Incorporated by reference, but "well
known" To The Federal District Court
in San Diego (or The U.S Court of Appeals
9th Circuit).         (U.C.SD- General Atomics
                                          (2010)
(27) Especially in light of "Predator"
(Extreme Low Frequency)
(Actually Predator-ELF ("mind control")
programs (Lattice Electromagnetics, CEA,
Loveladce Medical Clinic (Sam White).

(28) Moreover, even after Seizing the Home of AL O'Rourke and All The personal properties of AL O'Rourke and the others (SUPRA), The Defendant United States, continued (And Still Continues) to Track with Helicopters (F.A.A Approved (Hence Federal) The movements of AL O'Rourke (County Counsels' Comment, ~Sanpiq~ That "AL O'Rourke has been "Seen" ~Seiking~ Around La Jolla by Such Legal Admission)

(29) While with most people, "9-11" is Simply a Historical/political matter "9-11" is "Up, Close And personal" To plaintiff

(30) The United States Attorneys (Carol LAM, Robert Brewer, Charles LaBella, Mike Aguirre (city Attorney), Alan Bersin, Eric Holder (evidently), All being Angered At AL O'Rourke belief That "9-11" was an "Intelligence Fiasco" Caused or invited (Legal "Entrapment") by The United States, of Guantanamo Detainees Government itself (like Pearl Harbor)

(31) Especially Annoying to the U.S.
Attorney's Office is the "Entrapment"
issue of the supposed 9-11 Terrorists.
(meaning if there are, in fact, any
New York "Terrorist Trials" (Mr. Holder)
how is the United States Attorney's office
going to not have to disclose to
the "Defendant a Terrorists" Court
Appointed Attorney), All the secret
Entrapment/Botched Intelligence material
"Simply put", the Motive of Defendant
U.S. Government and Mr. Holder.
(see Richard Clarke's views)
            (NSA/CIA)

(32) there plaintiff has a legitimate
cause of action in Intentional
Infliction of Emotional Distress
Against Defendants. This as his
First Cause of Action.

## II

# SECOND CAUSE
## OF ACTION
## VIOLATION OF 18 U.S.C. 2340

(31) Defendant United States and its "WAR CRIMES" Attorney General Eric Holder, ss) (and its Agents and Assistants CAROL LAM, Robert Brewer, Charles LaBella Mike Aguirre, etc (and certainly Defendants Jerry Brown, California Attorney General and his Agent, employee, Assistant (FRCP 11) (Signed Court (State/Federal) pleadings)

B George Seikaly  know all about "Shock and Awe"

(32) The Feb 9, 2010 "Pearl Harbor Style "JAPANESE Sneak Attack" on 7949 Lowry Terrace (plaintiff's Home/Residence), with 50-100 +/- Common Agents) (All Approved, ratified, Bank funded (CHASE BANK (Union Bank) Defendant, was no "oversight plan". Such had been planned out for Years (at least from 2008 -2009 to 2010). Especially odious, is CHASE/Union Bank "going Against Their own Customer/client plaintiff AL O'Rourke (Home Mortgage, Bank + STOCK Account etc

(33) Such was Assisted by The United States F.A.A. (Helicopters 2-3-4?) gleefully Surveying, filming, monitoring The events of Feb 9, 10 And Thereafter (The continuous "swooping Attacks" (Surveillance) on plaintiff ever since (The Latest on 6|7|10)

(34) plaintiff Incorporates by Reference The facts And Circumstances listed in The First Cause of Action (Supra), And now Alleges, That Such "Bad Faith" (FRCP 11, CCP 128.5) "Legal Tactics" were and are So odious, injurious, And Appalling That They Violate 18 U.S.C. 2340.

(35) Defendants on Feb 9, 10, not only destroyed plaintiff's Home And residence (And have been "Carpet Bombing The Rubble" ever since (To make The 7949 Lowry Terrace Home Appear To be a "public Nuisance" "Health Hazard or whatever). All The while blocking Ingress/Egress (The "King Kong" Fence (Supra) and Tearing Down AL O'Router Legal Notices.

(10-CV-03-2)

(36) Plaintiff has even personally delivered duplicate Legal Notices to CHASE BANK (La Jolla Village Square) and And in Carlsbad, CA) Demanded That CHASE's Attorneys contact Plaintiff. Their refusal to do such "speaks for itself" (implied Admission) of their participation in This Conspiratorial plot To destroy The premises, "cover up" The Actual Federal Evidence, etc.

(37) All such being Assisted by The Defendant United States, (The 2009 Bank Reform Act which funded CHASE's Takeover of Washington Mutual Savings, (Assisted by Union Bank),

(38) Obviously These "CASH King" Defendants have unlimited money to "Tie up" The Courts," Indigent Plaintiff AL O'Roake (i.e. "Judicial Notice" of self obvious events)

(39) Moreover, Since CHASE BANK is mainly in New York, There is Also New York Jurisdiction (in addition to the Maryland Jurisdiction of BORACK (a Maryland partnership) (and Plaintiff's Computer (N.Y, N.Y. Commodities Trading (Peter Cella (UNION BANK, MAXWELL, SAEC UCSD Qualcomm General Attorneys, etc.

13

(40) This is especially relevant as to the "Special Treatment" California (University of California (particularly UCSD) received in Enron (USBC-NY, NY 01-16033134?). (where Al O'Rourke's, Roback's, Raymond O'Rourke's claim is supposedly being handled by Deutsches Bank (meaning there is also German jurisdiction (Plaintiff's middle name "Otto" (Albert Otto O'Rourke) even comes from the German professor physics. of physics Otto Laporte (Heissenberg, Bethe, Meitner, Teller, etc. al.). (Otto Laporte was the University of Michigan Physics Dept. Head that taught both Raymond O'Rourke and Raymond's roomate Dr. Robert Beyster (SAIC)

(41) Hence these "International Outrages" (Feb 9, 2010 Defendant actions, fall under (and other dates) 22 U.S.C. 3001 ("Helsinki Final Act") and 18 U.S.C 2340, In fact, in the last 2-3 weeks President Obama and Secretary of State Hillary Clinton have pledged to adhere to such

(42) The California Defendants
(Brown, SciKaly, etc) have no constitutional
basis for going against The United States
(Supremacy clause)
presidential policy. Nor assist such,
Fund such, use "Blackwater style"
"Police Tactics" etc on plaintiff. (2009)
(The Last of such being at The annual
Maxwell Shareholder, meeting on May 6, '10)
(The San Diego Police Dept. monitoring (right in
back of) plaintiff (a Maxwell Shareholder)
(Roback was a founder of Maxwell)

(43) Especially to assist to "cover up"
Defendants and Maxwell's now admitted
violation, of The U.S. Foreign Corrupt
Practices Act (Form 10-K, Section 13 or
15(d) of The Securities Exchange Act of 1934.

(43) All connected to plaintiff's Enron
claim (S-1/A) with Deutsches Bank NY, NY.
(and ATC Inc)

(44) And The Actions, of U.C.SD (Christopher
Patti, Esq (Marye Fox Chancellor) in the "A.S"
(U.C.SD co-nsel)
Associated Students (Predator (Predator-ELF
disputes) (General
At-mics
QUALCOMM
mind control)

15

(45) The Federal District Court itself noted The "Predator" (actually Predator-ELF ("Mind Control") disputes with Defendant U.C.SD And The other Defendants in its MAY 26, 2010 order.

(46) As part of its "WAR Booty", Defendant, Carted off (Feb 9,10 And Thereafter) All The ELF/Predator-ELF ("Lattice Electro-magnetics") Business Records And letters To and from The University of California (now apparently Claiming Such may be "Lost" or "weren't capable of being Salvaged or whatever).

(47) And All The North Korean A-Bomb Project Records As well (Especially relevant is President OBAMA's own Citation That North Korea would be "rather quickly overwhelmed" (emphasis Added). That is using Predator-ELF ("putting To Sleep" (Temporarily or forever) Anyone stored enough To Try To "push Any Button) (North Korean Nukes).

(48) These Are All
    22 USC 3001

# THIRD CAUSE OF ACTION

## VIOLATIONS OF SECTION 13 OR 15 (d) OF The United States SECURITIES EXCHANGE Act of 1934

(49) Plaintiff Incorporates by reference All The facts and Circumstances of The First and Second Causes of Action into This Third Cause of Action

(50) Essentially or "Simply put", Defendants on Feb 9, 2010 (As "War Booty") Took possession and Control over +/- 50 Years, worth of All Plaintiff's, Plaintiff's Companies, Plaintiff's Legal File, Personal Materials, Notes, recordings, Letters etc. Plaintiff being "wiped out" by Defendants (who have either Threatened to destroy) have destroyed such Federal Evidence (FRCP 11) (As supposedly "unsalvageable"?)

(51) Such includes All The "R-RATE Records," (see USDC-SD — 93-1880 IEG or 01- 0̶2̶2̶ 04234 USBC 10112 (In re: Maxwell Technologies Fw

(52) It is Alleged That by doing Such,
Defendants deliberately wanted to
remove Federal Evidence in This SEC
Foreign Corrupt Practices Act Violation
of Maxwell (which Affects RORACK
(because RORACK (RAYMOND O'Rourke/
ALAN C. Kolb)(Kolb Maxwell's CEO)
(and RORACK's Counsel KARL Samuelian
(Secretary + Counsel of Maxwell and
Yacht Charters, Ltd (Al O'Rourke:
Company (see SDMC 025114 / USDC-SD
Lattice Electro magnetics Inc    96-cv-1442
(Predator ELF).                      Jm)

(53) In fact, bizarrely, Plaintiff might be
Sued by Maxwell Shareholders (or others)
(connected or complaining about This
FCPA Violation (warned of for years,
Decades by Plaintiff (Also involving SAIC)
General Atomics (RORACK's "Third wheel"   Boyster
The Late Marshall Rosenbluth (Teller friend).
(i.e. "Vicarious
Liability.

18

(54) All These issues were and are "Well Known" To Defendant Jerry Brown (whose FATher PAT Brown, Governor, got RAymond O'Rourke out to CALifornia in The first place 1950's into The 1960's (To work on Nuclear Weapons, issues at U.C. Berkeley, UCSD, Scripps, etc. (And of course when Jerry Brown was himself Governor (1970's a 1980's)

(55) Defendant Brown had No legitimate purpose whatsoever for A-Thorizing or "Green-lighting" The 2/9/10 RAID on plaintiff's Home. And the "Total seizure" of The business records and other personal Properties.

(56) Nor, did Eric Holder. Or The U.S. Secret Service (The JFK MATerials, Ted Kennedy and other politicians letters (including several U.S. Presidents)

(57) Moreover These MAxwell, Enron, SAIC, etc. LAttice Electromagnetic issues (Predator ELF, Surveillance, Invasion of privacy etc, Are only The "Tip of The Iceberg". (As in "WATergate") (Secret service,

19

<u>IV</u>

# FOURTH CAUSE OF ACTION
## INVASION OF PRIVACY

(58) Plaintiff re-incorporates The facts and circumstances of The First, Second, and Third Causes of Action into This Fourth Cause of Action for Invasion of Privacy.

(59) Defendants in The Unending (even After The Feb 9, '10 "Sneak Attack" Constantly "Monitor" or Harass plaintiff As some Kind of "frivolous" Complainor for Their money making/financial irregularity UCSD — Che Cafe (Enron for example), Schemes.

(60) Indeed, some of Their "Financial Schemes" (such as The BANK "Bailout" (Bank Reform Act of 2009) "Cross-Swords" with plaintiff's supposed "Normal rights" To be "left Alone". Like at SAFE MAY 6, '10 Maxwell Shareholders meeting.

(Qualcomm Red China Irwin Jacobs Maxwell-Red China ("super-Batteries") (May 6, '10 Maxwell meeting of shareholders (super...

2°

(61) Such involve The "Negative use"
of plaintiff's, The O'Rourkes, Rorack's,
Yacht Charters, Computrad, etc own
Attorneys (Karl Samuelian, s) Republican
National Financial Chairman Parker,
Milliken, Clark, O'Hara + Samuelian)
(Hale + Doar - Boston - Paul Brountas)
                            michael Dukakis
plaintiffs own Accountant, ERNST + Young,
(see O'Rourke's Enron Claim with
Deutsche Bank NY, NY USBC NXNY 01-
(6031) - 32 - etc ).
(62) What are supposed to be "Attorney - Client
protected legal files, pleadings, will, Trusts,
business documents etc of The O'Rourkes /
               Yachtcharters L'
Rorack / Computrad etc et are no longer
with plaintiff (s of 2/9/10) but with
Defendants ( who refuse T return such,
and wish T destroy (or have) such
                    destroyed Records.
(63) Defendants' conduct is an obvious
Invasion of Property.

V

# FIFTH CAUSE OF ACTION
# LEGAL TRESPASS

(64) Plaintiff re-incorporates and re-alleges, the facts and circumstances of the First, Second, THIRD, FOURTH CAUSES of ACTION into This Fifth Cause of Action for Trespass.

(65) As noted by The Federal Court itself on MAY 26, '10, The 7949 Lowg Terrace Home is the legal residence (TAX, Census, Homeowner duties) of Al O'Rourke (and his numerous friends, invitees etc.).

(66) Defendants had no lawful right to come onto the premises on Feb 9, '10 or erect (and still MAINTAIN) The "King Kong" Fence (NATIONAL Fence Co)

(67) The Federal Court has not authorized such Defendant ACTION, in Any MAnner

(68) Nor post a supposed San Diego County Marshall's Notice that

Raymond O'Rourke (deceased) is "Suing Himself" And Albert O'Rourke (his Son, legal counsel, business partner etc).

(69) Yet such is the supposed "Legal basis" (Raymond O'Rourke, plaintiff vs. Raymond O'Rourke, Albert O'Rourke Defendants ).

(69) Such clearly is a "Legal Impossibility" And violates FRCP 11 ("Rule 11").

(70) And, Invades, Al O'Rourke's Rights of Privacy from Invasion (Being "Fenced out" of "All that Remains" of 7949 Lowy Terrace).

(70) And Any personal property or business records, letters, clothes, towels, personal effects, that still remain (some of such are clearly visible behind the "King Kong" Fence.

(71) Hence, plaintiff has a legal cause of Action for Invasion of Privacy.

<u>VI</u>

# SIXTH CAUSE OF ACTION
# INVASION OF / SLANDER OF
# RIGHTS OF TITLE

(72) Plaintiff Re-incorporates, Re-Alleges, The facts and circumstances of the First, Second, Third, Fourth, Fifth Causes of Action Into This <u>SIXTH</u> Cause of Action for <u>Slander of Title</u> specifically and more generally <u>Invasion of Title</u> (meaning Defendants, have Used old Title documents of 7949 Lower Terrace LA Jolla, CA. which belong to The O'Rourke, RORACK and Plaintiff.

(73) Again, as Noted by The Federal District Court (and The <u>U.S. Tax</u> Court in <u>89-13052</u>), Albert O'Rourke was The Co-owner of 7949 Lower Terrace, LA Jolla, CA (paying for such out of the "Tri-Party" Joint Raymond, Mary, Albert Stock, Bond, Bank Accounts, Trust Accounts, (O'Rourke Residential

( State of California

(74) Even The County of San Diego property TAX Division ( Postponement of property Taxes) Lists Albert, Rorack Raymond, Mary as Liable for The property Taxes.

(75) AL O'Rourke Went down in prison or by mail every year for Decades To pay or postpone such. AL O'Rourke and Rorack are The "Responsible parties," (As is Rorack)

(76) Defendants knew such (but were simply "Fed up" with dealing with AL O'Rourke (Admitted by B George Seikaly And The Other Defendant, in P 193006 (SDSC 37-0046962, SDSC 566159, SDSC(15878 U.S. Tax Court          SDMC 025114
    89-13-52                    (US 96-cv
                                    -1442)
                                    52.

(77) Hence, As stated previously, They seized such Title documentations (to AL O'Rourke / Rorack/ O'Rourke Residential Care Home) To "Cover up" such from This Federal District Court

# VII

# SEVENTH CAUSE OF ACTION
# FOR DECLARATORY RELIEF

(78) Plaintiff Re-Incorporates and re-alleges
The facts and Circumstances of The first
Six Causes of Action into This Seventh
Cause of Action for Declaratory Relief.

(79) Plaintiff Specifically requests
That The Federal Court ("Following up"
on its own MAY 26, '10 Ruling)
declare That either

(a) ALBERT O'Rourke owns The property

(b) RORACK owns The property

(c) Such is Jointly owned by
Albert, William, CAThy O'Rourke/Warner
O'Rourke

(d) Any Legal disputes about Jurisdiction
(if Title is made to RORACK)
Should be Heard in Maryland (because
of The RORACK Partnership Agreement
To such effect) ("Simply put" (California Defendant
State
is "Seeking Advantage" over Maryland
(by The 2/9/10 RAID

# EIGHTH CAUSE OF ACTION
# INJUNCTIVE RELIEF

(80) As his Eighth Cause of Action plaintiff Also requests That since he has no "Adequate Remedy" AT LAW To stop Defendants' Continuing And past Actions Against him (The "King Kong" Fence, The "surveillance" etc) (The Seven previous Causes of Action) That The Federal Court stop such by Injunctive Relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests of This Federal District Court

① Damages of One Trillion Dollars

② Title To 7949 Lowry Terrace La Jolla, California (Declaratory Relief)

③ Injunctive Relief

④ Other Relief As The Federal Court May seek to grant

Respectfully Submitted

Dated June 9, 2010

ALBERT (AL) DRouth

# DECLARATION

I, ALBERT (AL) O'Rourke
Declare The foregoing To be
True And Correct To The best of
My Knowledge And belief
Under penalty of Perjury of The
Laws of The United States
This June 9, 2010  AT LA Jolla,
California

Albert (AL) O'Rourke

28

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------- x

In re

CITY OF DETROIT, MICHIGAN,

                   Debtor

-------------------------------------------------------- x

:
:
:
:
:
:
:

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## DEBTOR'S REPLY TO RESPONSE TO OBJECTION TO CLAIM NUMBER 458
## FILED BY ALBERT O'ROURKE

The Debtor, the City of Detroit (the "<u>City</u>"), by and through its undersigned counsel, for its reply (the "<u>Reply</u>") Albert O'Rourke's response (the "<u>Response</u>") to the City's objection (the "<u>Objection</u>") to claim number 458 (the "<u>Claim</u>"), respectfully states as follows:

### <u>INTRODUCTION</u>

Mr. O'Rourke filed the Claim asserting that the City owes him one trillion dollars ($1,000,000,000,000) because it had lost or destroyed certain research materials related to nuclear weapons. Mr. O'Rourke did not provide any proof of his ownership of the materials, or evidence supporting his trillion dollar claim against the City in the Claim. The Response states that the one trillion dollar amount is the amount that it would cost to build the various nuclear weapons and devices Mr. O'Rourke claims could be built with the materials. While the Response does not explain how Mr. O'Rourke came to the conclusion that it would cost one trillion to construct a nuclear weapon, it is irrelevant because he does not explain why the City owes any assuming relating to the construction of a nuclear weapon. Furthermore, Mr. O'Rourke states in the Response that the materials may still be located in Detroit. If that is the

case, the City has no liability for lost or destroyed materials. Finally, though Mr. O'Rourke states that his ownership of the materials at issue is "undisputed by City of Detroit", this is false for several fundamental reasons. Based on the information in the Claim and the Response, the City cannot even determine what the materials are, whether they exist, where they are located, and if they exist, who owns them. Mr. O'Rourke has not provided any support for the Claim and therefore it should be disallowed and expunged.

## BACKGROUND

1.      On February 21, 2014, Mr. O'Rourke filed the Claim, asserting that the City owed him one trillion dollars ($1,000,000,000,000) because the City had lost or destroyed certain nuclear research materials located at a home in Detroit.

2.      On May 15, 2014, the City filed the Objection, asserting that the Claim, as filed, did not meet the requirements of Fed. R. Bankr. P. 3001 [Dkt. No. 4872]. Among other things, the City argued that Mr. O'Rourke provided no evidence to support his ownership of the alleged nuclear materials which he claims were lost or stolen, and that the provided no evidence to support the Claim's trillion dollar value.

3.      On or about June 3, 2014, Mr. O'Rourke filed the Response. In the Response, he explains that the one trillion dollar value of the Claim is the amount it would cost to build a nuclear weapon using the materials at issue. Response, p. 3. The Response does not explain why Mr. O'Rourke is entitled to that amount of money from the City.

4.      The Response also states that the materials may still be located in a Detroit home (the "Home") and/or at the University of Michigan.

5.      The Response does not establish Mr. O'Rourke's ownership of the materials.

## ARGUMENT

6.      The Claim should be disallowed and expunged because it is frivolous and its

2

4820-5803-9579.1
13-53846-tdw Doc 6905-3 Filed 08/12/14 Entered 08/12/14 18:46:55 Page 50 of 99
13-53846-swr Doc 6835 Filed 08/12/14 Entered 08/12/14 18:19:50 Page 50 of 99

filing constitutes an abuse of the bankruptcy process. Mr. O'Rourke provides no evidence to support his assertion that the City owes him one trillion dollars based on the possible loss or destruction of certain nuclear research materials.

7. First, in the Response, Mr. O'Rourke states that the nuclear research materials, whatever they may be, may still be located in the Home. Response, p. 2. He also states they may be located the University of Michigan. *Id.* If that is the case, then the City neither lost nor destroyed the materials.

8. Second, even if the materials are no longer located where Mr. O'Rourke believes they may be, the City still is not liable to him for one trillion dollars. Mr. O'Rourke has not demonstrated that they exist or that he owns the materials. His assertion that the City does not contest his ownership is incorrect. Response, p. 1. The City has no information about the existence of the materials, let alone any information about their ownership. Mr. O'Rourke has not provided that information with Claim or the Response.

9. Finally, Mr. O'Rourke explains in the Response that the trillion dollar valuation of the Claim is based on the cost of building a nuclear weapon using the materials at issue. He does not support that value with any evidence. More importantly, even if that number is correct, Mr. O'Rourke has not provided any evidence as to why the City is liable to him personally for one trillion dollars for the cost of constructing a nuclear weapon.

10. As more fully explained in the Objection, the Claim does not meet the requirements of Fed. R. Bankr. P. 3001, and should be disallowed. Mr. O'Rourke has not established any basis upon which the City is liable to him, let alone liable to him for one trillion dollars.

WHEREFORE, the City respectfully requests that this Court enter an order disallowing and expunging the Claim, and granting the City such other and further relief as this Court may deem just and proper.

Dated: June 20, 2014

FOLEY & LARDNER LLP

By: /s/  Tamar N. Dolcourt
John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
500 Woodward Ave., Ste. 2700
Detroit, MI 48226
313.234.7100
jsimon@foley.com
tdolcourt@foley.com
*Counsel for the Debtor, City of Detroit,
Michigan*

4

4820-5803-9579.1
13-53846-tjt  Doc 6905  Filed 08/13/14  Entered 08/13/14 18:46:55  Page 52 of 99
13-53846-swr  Doc 3523  Filed 06/02/14  Entered 06/02/14 19:13:50  Page 54 of 99

4820-5803-9579.1

IN RE:  CITY OF DETROIT,          .       Docket No. 13-53846
        MICHIGAN,                 .
                                  .       Detroit, Michigan
                                  .       June 25, 2014
                    Debtor.       .       10:00 a.m.
. . . . . . . . . . . . . . . . .

HEARING RE. (#4792) OBJECTION TO CLAIM NUMBER OF CLAIMANT
    FIRST OMNIBUS OBJECTION TO CLAIMS (DUPLICATE CLAIMS)
    FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4794) OBJECTION TO CLAIM NUMBER OF CLAIMANT SECOND
     OMNIBUS OBJECTION TO CLAIMS (AMENDED AND SUPERSEDED)
    FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
 (#4834) OBJECTION TO CLAIM NUMBER OF CLAIMANT EDITH WOODBERRY
    CLAIM NO. 2846.  FILED BY DEBTOR IN POSSESSION CITY OF
    DETROIT, MICHIGAN; (#4835) OBJECTION TO CLAIM NUMBER OF
    CLAIMANT CLAIM NO. 3278 BY PHEBE WOODBERRY.  FILED BY
    DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4836)
    OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 3883 BY
     LA JEFF WOODBERRY.  FILED BY DEBTOR IN POSSESSION
    CITY OF DETROIT, MICHIGAN; (#4837) OBJECTION TO CLAIM
    NUMBER OF CLAIMANT CLAIM NO. 2889 BY LAVAN WOODBERRY.
    FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4838) OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO.
    2880 BY HAPPY WOODBERRY.  FILED BY DEBTOR IN POSSESSION
     CITY OF DETROIT, MICHIGAN; (#4839) OBJECTION TO CLAIM
    NUMBER OF CLAIMANT CLAIM NO. 2905 BY CRANSTON WOODBERRY.
    FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4840) OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO.
    3006 BY GARFIELD WOODBERRY.  FILED BY DEBTOR IN POSSESSION
     CITY OF DETROIT, MICHIGAN; (#4841) OBJECTION TO CLAIM
    NUMBER OF CLAIMANT CLAIM NO. 2888 BY CAVEL WOODBERRY.
    FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN;
     (#4842) OBJECTION TO CLAIM NUMBER OF CLAIMANT DR. BRIAN
     GREENE, AS NEXT FRIEND OF INDIA BOND, A MINOR/
     OBJECTION OF THE CITY OF DETROIT, PURSUANT TO
     SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE,
    BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF
    CLAIM NUMBER 1399 FILED BY DR. BRIAN GREENE, AS NEXT
     FRIEND OF INDIA BOND, A MINOR, FILED BY DEBTOR IN
    POSSESSION, CITY OF DETROIT, MICHIGAN; (#4843) OBJECTION
     TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 3271 BY ADAM
    WOODBERRY.  FILED BY DEBTOR IN POSSESSION, CITY OF DETROIT,
     MICHIGAN; (#4844) OBJECTION TO CLAIM NUMBER OF CLAIMANT
     TARIS JACKSON, AS NEXT FRIEND OF ASHLY JACKSON, A MINOR/
     OBJECTION OF THE CITY OF DETROIT, PURSUANT TO SECTIONS
     105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE

3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER 1401
FILED BY TARIS JACKSON, AS NEXT FRIEND OF ASHLY JACKSON,
A MINOR, FILED BY DEBTOR IN POSSESSION, CITY OF
DETROIT, MICHIGAN; (#4854) OBJECTION TO CLAIM NUMBER OF
CLAIMANT ERNEST FLAGG, AS NEXT FRIEND OF JONATHON BOND,
A MINOR/OBJECTION OF THE CITY OF DETROIT, PURSUANT TO
SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER
1404 FILED BY ERNEST FLAGG, AS NEXT FRIEND OF JONATHON
BOND, A MINOR, FILED BY DEBTOR IN POSSESSION, CITY OF
DETROIT, MICHIGAN; (#4855) OBJECTION TO CLAIM NUMBER OF
CLAIMANT CLAIM NO. 3236 BY LUCINDA DARRAH.  FILED BY
DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4857)
OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NOS. 1330
AND 1853 FILED BY RICKIE ALLEN HOLT ON BEHALF OF THE
ABORIGINAL INDIGENOUS PEOPLE.  FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4859) OBJECTION TO CLAIM
NUMBER OF CLAIMANT CLAIM NO. 2902 ON BEHALF OF PENNY
MABIN.  FILED BY DEBTOR IN POSSESSION CITY OF DETROIT,
MICHIGAN; (#4863) OBJECTION TO CLAIM NUMBER OF CLAIMANT
CLAIM NO. 2021 BY EDWARD L. GILDYARD.  FILED BY
DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4872)
OBJECTION TO CLAIM NUMBER OF CLAIMANT CLAIM NO. 458 BY
ALBERT OTTO O'ROURKE.  FILED BY DEBTOR IN POSSESSION CITY
OF DETROIT, MICHIGAN; (#4873) OBJECTION TO CLAIM NUMBER
OF CLAIMANT CLAIM NOS. 1329 AND 1859 BY RICKIE HOLT FILED
BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#4881)
OBJECTION TO CLAIM NUMBER OF CLAIMANT/FOURTH OMNIBUS
OBJECTION TO THE CITY OF DETROIT, PURSUANT TO SECTIONS
105 AND 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE
3007 AND LOCAL RULE 3007-1, SEEKING THE DISALLOWANCE OF
CERTAIN DUPLICATE CLAIMS FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4886) OBJECTION TO CLAIM
NUMBER OF CLAIMANT HYDE PARK CO-OPERATIVE/OBJECTION
OF THE CITY OF DETROIT, PURSUANT TO SECTIONS 105 AND
502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3007 AND
LOCAL RULE 3007-1, TO PROOF OF CLAIM NUMBER 2651 FILED
BY HYDE PARK CO-OPERATIVE FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN; (#4954) OBJECTION TO CLAIM
NUMBER OF CLAIMANT CLAIM NUMBER 3683 FILED BY MACOMB.
(CORRECTED OBJECTION RE. DOCKET 4880) FILED BY DEBTOR IN
POSSESSION CITY OF DETROIT, MICHIGAN; (#4955) OBJECTION TO
CLAIM NUMBER OF CLAIMANT CORRECTED OBJECTION TO CLAIM
NUMBERS 1302 AND 3500 FILED BY INLAND WATERS POLLUTION
CONTROL, INC. (RE. DOCKET 4875) FILED BY DEBTOR IN
POSSESSION, CITY OF DETROIT, MICHIGAN; STATUS HEARING
RE. (#5155) MOTION TO ALLOW CLAIM(S)/NOTICE OF AND
MOTION FOR TEMPORARY ALLOWANCE OF CLAIM OF THE MACOMB
INTERCEPTOR DRAIN DRAINAGE DISTRICT PURSUANT TO RULE
3018(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
FOR PURPOSES OF ACCEPTING OR REJECTING THE DEBTOR'S
FOURTH AMENDED PLAN OF ADJUSTMENT FILED BY CREDITOR

COUNTY OF MACOMB, MICHIGAN; (STATUS HEARING RE. (#5354)
MOTION FOR CLASS CERTIFICATION OF PROOF OF CLAIMS
#2638, 2651, 2654, 2659, 2676, 2683, 2689 AND 2692 FILED BY
CREDITOR HYDE PARK CO-OPERATIVE, ET AL.
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Jones Day
                         By:  JEFFREY G. ELLMAN
                         1420 Peachtree Street, N.E., Suite 800
                         Atlanta, GA 30309-3053
                         (404) 581-8309

                         Foley & Lardner, LLP
                         By:  JOHN SIMON
                              TAMAR N. DOLCOURT
                         500 Woodward Avenue, Suite 2700
                         Detroit, MI 48226
                         (313) 234-7161

                         Miller Canfield Paddock & Stone PLC
                         By:  TIMOTHY A. FUSCO
                         150 West Jefferson, Suite 2500
                         Detroit, MI 48226
                         (313) 496-8435

For the Official         Dentons US, LLP
Committee of             By:  CLAUDE D. MONTGOMERY
Retirees:                1221 Avenue of the Americas, 25th Floor
                         New York, NY  10020-1089
                         (212) 632-8390

For County of            Dechert LLP
Macomb, Michigan:        By:  ALLAN BRILLIANT
                         1095 Avenue of the Americas
                         New York, NY 10036
                         (212) 698-3600

For Family of            Norman Yatooma & Associates, PC
Tamara Greene:           By:  HOWARD LEDERMAN
                         1900 S. Telegraph Road
                         Bloomfield Hills, MI 48302
                         (248) 481-2000

APPEARANCES (continued):

```
For Hyde Park          Thornbladh Legal Group PLLC
Co-Operative:          By:  KURT THORNBLADH
                       7301 Schaefer
                       Dearborn, MI 48126
                       (313) 943-2678

                       Becker & Wasvery, PLLC
                       By:  CARL BECKER
                       2401 W. Big Beaver Road, Ste. 100
                       Troy, MI 48074
                       (248) 649-5660



Court Recorder:        Kristel Trionfi
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  Case Number 13-53846, City of Detroit,
2  Michigan.

3    MR. ELLMAN:  Your Honor, Jeffrey Ellman from Jones
4  Day on behalf of the city.  Are we going to take appearances
5  now for everyone?

6    THE COURT:  Sure.

7    MR. SIMON:  Good morning, your Honor.  John Simon of
8  Foley & Lardner for the city.

9    MS. DOLCOURT:  Good morning, your Honor.  Tamar
10  Dolcourt of Foley & Lardner on behalf of the city.

11    MR. MONTGOMERY:  Good morning, your Honor.  Claude
12  Montgomery, Dentons US, LLP, for the Official Retiree
13  Committee.

14    MR. BRILLIANT:  Good morning, your Honor.  Allan
15  Brilliant and Raechel Badalamenti from Kirk, Huth, Lange &
16  Badalamenti on behalf of the Macomb Interceptor Drain
17  Drainage District.

18    THE COURT:  Thank you, sir.

19    MR. FUSCO:  Good morning, your Honor.  Timothy
20  Fusco, Miller Canfield, on behalf of the city.

21    MR. LEDERMAN:  Good morning, your Honor.  Howard
22  Lederman on behalf of three claimants, Ernest Flagg, Dr.
23  Brian Greene, and Taris Jackson.

24    THE COURT:  Thank you, sir.  Mr. Ellman.

25    MR. ELLMAN:  Yes, your Honor.  Good morning and

1  thanks for hearing us today.  We have on the docket this

2  morning a number of claim objections filed by the city.  Your

3  Honor has entered orders on a number of them as of yesterday

4  for the matters where there was no response, and there's

5  still a handful of matters to address.  I'm happy to deal

6  with them in a particular order if your Honor has something

7  you would like to do.  Otherwise we have folks from --

8          THE COURT:  No.  I will yield the agenda to you,

9  sir.

10          MR. ELLMAN:  Okay.  Great.  Thank you, your Honor.

11  Well, the first thing I guess I will address is two different

12  objections that go together.  It's an objection to Claim

13  Number 2651 by Hyde Park Co-Operative, and that's Docket

14  4886.  And then there was a related objection, which was the

15  fourth omnibus objection to certain claims, duplicate claims.

16  That's Docket 4881, and that dealt with another seven claims

17  filed by related entities, related in the sense that all the

18  claims are based on an underlying lawsuit for which a class

19  is alleged, a putative class relating to alleged overcharging

20  for building inspection fees.  I'm sure the Court has looked

21  at the papers.  We've talked to counsel just before the

22  hearing, and I think we have a consensus on the best way to

23  address this.  We have effectively eight claims, and I don't

24  think there's any real dispute that they are duplicative in

25  the sense that they're based on the same lawsuit.  They're

1  all filed for $5 million.  They all allege an individual

2  claim, but really they also allege a class claim.  And we

3  believe that seven of those claims should be disallowed.  I

4  do not think that's being opposed today.  We also have the

5  final claim, which is the Hyde Park claim, which we objected

6  to as not having been properly authorized to be filed in this

7  Court as a class claim in advance of its filing under the

8  rules, and since we filed the objection, the Hyde Park

9  parties have filed, in fact, a motion for class

10 certification, which is not pending -- not being heard today.

11 It is on the docket.  Responses, I think, are due next week.

12 So what we had proposed is to put off that claim objection

13 until the Court can determine that motion because it seems

14 inefficient just to have the Court disallow the claim.  If

15 you were inclined to grant certification, they'd have to

16 refile it.  It doesn't seem very efficient.  We also had said

17 in our papers, which we think is appropriate, if class

18 certification is denied, that the individual claimants who

19 have their duplicate claims disallowed as an improper

20 duplicate class claim should have the right to file

21 individual claims.  They did file a timely claim even though

22 it was -- they included their individual claim if they have

23 one with their class claim, so they're clearly duplicative of

24 the class claim, but if a class is denied certification, it

25 seems appropriate to give them some period of time -- we

1  suggested 30 days -- to let them refile an individual claim,

2  but that is a future matter that can be addressed in

3  conjunction with the certification motion.  My understanding

4  is counsel for the Hyde Park entities has agreed with that,

5  and we would ask the Court to --

6            THE COURT:  Okay.

7            MR. ELLMAN:  -- grant that relief.

8            MR. FUSCO:  Your Honor, just for the record, Miller

9  Canfield is defending the class certification motion.  Our

10 response is due next week, and we do intend to oppose the

11 motion for class certification.

12           THE COURT:  All right.  Thank you, sir.

13           MR. THORNBLADH:  Your Honor, Kurt Thornbladh on

14 behalf of Hyde Park.  Good to see you again, Judge Rhodes.

15 With me is Carl Becker, who's also co-counsel with me on

16 these matters.  And this correctly states our agreement of

17 this morning.

18           THE COURT:  All right.  Let me ask you to actually

19 prepare a paper which memorializes your agreement and file

20 that, please.  I'd like to actually go ahead and set a date

21 for the hearing on the class certification motion.  Is that

22 okay?

23           MR. THORNBLADH:  That would be fine, your Honor,

24 thank you, if that's fine with my colleagues.

25           THE COURT:  Chris, what would you propose?  Give us

1  one second, please.  Subject to finding a courtroom we can
2  use, how about July 21st at 10 a.m.?
3            MR. THORNBLADH:  That's acceptable, your Honor.
4            THE COURT:  Mr. Fusco.
5            MR. FUSCO:  I believe that's fine, your Honor.
6            THE COURT:  All right.  I doubt that got on the
7  microphone, but we'll note for the record that Mr. Fusco
8  asserted that he thought that that was fine.  Okay.  So if
9  there are problems with that date, let us know, and we'll
10  adjust it, but in the meantime, let's count on that date.
11            MR. FUSCO:  And just for the record, we're going to
12  maintain the same response time, so next --
13            THE COURT:  Yes.
14            MR. FUSCO:  -- week we'll file our papers.
15            THE COURT:  Yes.
16            MR. FUSCO:  All right.  Thank you, your Honor.
17            MR. ELLMAN:  Thank you, your Honor.  The next three
18  items that I would address, again, are related items,
19  objections to claims by Dr. Brian Greene, Taris Jackson, and
20  Ernest Flagg, and those are Docket Numbers 4842, 4844, and
21  4854.  These are all matters that they all seek about $155
22  million as damage claim alleging denial of and conspiracy to
23  deny access to courts in connection with homicide of Tamara
24  Greene.  These matters had been adjudicated.  There was an
25  order of dismissal issued by Judge Rosen.  There was also an

1   order from the Sixth Circuit affirming that dismissal and

2   then a motion to deny a rehearing at the Sixth Circuit on

3   June 18th, 2013, so we filed this objection, your Honor, in

4   light of the fact that this claim had been adjudicated and

5   denied, and, therefore, the bankruptcy claim should be

6   disallowed.  It was pointed out to us in the response that,

7   in fact, as a result of the bankruptcy filing tolling the

8   statutory deadlines, that a cert petition could still be

9   filed and that the plaintiffs intended to do so, so you might

10  recall, your Honor, under our ADR procedures we have the

11  right -- the city has the right to file a stay modification

12  notice for these types of claims and lift the stay, which we

13  have -- in response to the papers filed, we did do that last

14  week, so the stay has been lifted to allow, if they're so

15  inclined, the plaintiffs to file their cert petition, and we

16  suggested that this matter be put off until October 1st at

17  our next claims hearing to have a status on where that cert

18  petition stands, has it been filed, has it been dealt with in

19  any way.  Counsel here for the plaintiffs indicates that

20  that's acceptable to them, and we believe that would be

21  appropriate.

22          THE COURT:  Sir.

23          MR. LEDERMAN:  Yes.  Your Honor, the facts are as

24  counsel indicated them.  I will say that our clients have

25  given us the go-ahead to petition for cert.  And when we

1   heard of the bankruptcy on or about July 18th of last year,

2   we were working on the petition for cert, so right now our

3   intention is to go ahead and petition for cert.

4        THE COURT:  Okay.  The Court will adjourn this

5   matter until October 1st.

6        MR. LEDERMAN:  October 1st?  Thank you, your Honor.

7        THE COURT:  You're welcome.

8        MR. ELLMAN:  And, your Honor, the last matter that I

9   am going to be handling today is the third omnibus objection

10  to employee claims duplicative of certain union claims, and

11  this is a matter -- I think it covered about 50 claims, and

12  your Honor has entered an order on all but one of the claims

13  where there was no response.  We did have a response from

14  Antonio Ratliff.  His response is very brief.  It basically

15  says that he filed one claim that was a public claim or one

16  of the claims at issue is a public claim, maybe the union

17  claim, and one was a private or personal claim.  I'm not sure

18  there's a legal distinction there.  Our view is that the

19  types of -- excuse me -- the types of matters raised in Mr.

20  Ratliff's claim are all covered by the very broad claim of

21  AFSCME.  Mr. Ratliff is an AFSCME member, based on the city's

22  books and records, and the AFSCME claim, which is Claim 2958,

23  is a very broad claim covering all of its members and

24  including virtually every type of breach of contract or

25  violation of law type of claim.  We have separately objected

1   to that claim.  We've also adjourned that objection.  And, in

2   addition, we've separately worked out with AFSCME a voting

3   amount for their claim, which your Honor signed also this

4   week, so that claim will vote, and they will have a vote on

5   behalf of their members, but we believe that Mr. Ratliff's

6   claim on its face is duplicative of the claim filed on his

7   behalf by the union and should be disallowed.

8       THE COURT:  Thank you.  Is Mr. Ratliff here or

9   anyone representing him?  All right.  The Court concludes

10   that the record justifies sustaining the city's objection to

11   this claim on the grounds that it is duplicative, so you may

12   submit an order.

13       MR. ELLMAN:  We will do that, your Honor.  Thank

14   you.  And the lawyers from Foley will handle the remaining

15   matters.

16       THE COURT:  All right.

17       MR. SIMON:  Good morning, your Honor.  John Simon of

18   Foley & Lardner for the city.  We have four objections to

19   claims, your Honor, that were not resolved.  We filed a

20   variety of objections that we either resolved or which were

21   resolved by the Court's orders entered yesterday or this

22   morning.  Those four remaining objections -- and I guess

23   there's actually more than four claims, but there are four

24   buckets of objections.  There's Claim 458 as to Mr. Albert

25   O'Rourke, Claim 3236 filed by Ms. Lucinda Darrah, and then

1  there are a variety of claim numbers, ten claims filed by

2  what we call the Woodberry claimants on account of a

3  condemnation proceeding or an eminent domain proceeding.  And

4  then there is the Macomb Interceptor claim and the related

5  3018 motion that was filed by Macomb Interceptor.  If I could

6  address them in that order, O'Rourke --

7            THE COURT:  Sure.

8            MR. SIMON:  -- Darrah -- thank you.  Your Honor,

9  with respect to Mr. O'Rourke's claim, we objected to the

10  claim.  The claim lists unspecified governmental abuses in

11  quotation marks on the initial claim.  We filed the

12  objection.  It appears -- and I know you've read the

13  documents.  It appears that the claim is based on the city

14  allegedly destroying some kind of nuclear secrets.  There's

15  really no valid basis for the claim that we can identify from

16  the documents.  There are rambling handwritten response to

17  our claim objection that was filed in support, and it calls

18  in a District Court litigation from California with rambling

19  text that talks about everything from, you know, the JFK

20  documents to some kind of nuclear documents and basically

21  says the city is somehow responsible for the cost of one

22  trillion dollars, which would be the cost of constructing

23  nuclear weapons based on the nuclear secrets.  It's a

24  frivolous claim, your Honor.  It doesn't meet the standards

25  of 3001(f).  We do not know of any basis for this claim at

1   the city, and so we would request that it is expunged.

2          I should point out we did receive a handwritten

3   letter from Mr. O'Rourke yesterday in which he let us know

4   that he cannot attend the hearing personally, but he is --

5   hopefully we are amenable to simply let your Honor make a

6   ruling.  We are happy to have you make a ruling.  There's no

7   valid basis for the claim, and it should be disallowed.

8          THE COURT:  Is Mr. O'Rourke here or anyone on his

9   behalf?  No response.  The Court concludes that the record

10  does justify sustaining the city's objection to the claim,

11  and you may submit an order.

12         MR. SIMON:  Thank you.  Your Honor, moving on to

13  Claim Number 3236 filed by Ms. Lucinda Darrah, this claim --

14  in this claim the claimant alleged she was owed $150 million

15  to purchase garbage trucks so that the citizens of Detroit

16  could manage their own garbage services.  There were no

17  attachments to the proof of claim.  There's no basis

18  presented or documents provided or any kind of evidence that

19  connects why the city would be liable to pay Ms. Darrah for

20  the $150 million to purchase garbage trucks.  In response to

21  our claim objection, Ms. Darrah filed another document in

22  response that specified and requested an additional $450

23  million for unspecified damages alleged to arise from her

24  vicinity to an incinerator.  There's no basis for either of

25  the claims, the initial claim.  There's no basis provided.

1   There was no response to our objection on that point.  And

2   her further reply basically submits a new claim, which is

3   also baseless, and so we would ask the Court to deny those

4   claims and disallow them.

5          THE COURT:  Thank you.  Is Ms. Darrah here or anyone

6   representing her?  We do have a response.  Will you yield the

7   lectern, please?

8          MS. DARRAH:  Your Honor, I first filed for control

9   of the garbage because I felt like our health wasn't being

10  protected, mine and everybody else's, and so I thought if we

11  controlled the garbage and the recycling and reuse, then

12  plastics wouldn't go to the landfill -- would go to the

13  landfill that weren't recycled and not be put in the

14  incinerator.  And I have a book that I'd be glad to give the

15  Court.  It's Waste Incineration and Public Health published

16  by the National Research Council in 2000.  This is what --

17  these are all scientists that are really -- these are the

18  best scientists we have in the country, and they put this

19  book out in 2000 talking about the polyvinyl chloride breaks

20  down when you incinerate it.  When it cools off, it creates

21  dioxins and furans, which are the most poisonous carcinogens

22  I think that we have in the waste stream, even more so than

23  lead and mercury.  So they've been burning this.  In fact, in

24  2010 I think the city signed another contract guaranteeing

25  that they would burn a certain amount of trash, so that

1  contract should be broken under the bankruptcy if you can
2  have Kevyn Orr go in there and break that contract because
3  that's the way they forced us to keep burning our garbage.
4  As long as we have that kind of incinerator running, then
5  they won't recycle in a true meaningful way, and we'll
6  continue to have dioxins in our air, food, water, land.  And
7  this book, particularly in the last pages, where they've
8  done -- if they don't run an incinerator just right in the
9  optimal steady state condition like in start-up and shutdown
10 and also if they have a bad burn cycle, it just multiplies
11 exponentially how many dioxins and furans are put into the
12 air.  And this is right by the medical center.  It was a
13 mistake that this was ever put in there.  I protested with
14 Greenpeace.  Actually, I was on that site as an electrician
15 apprentice only for five days.  They laid me off after I
16 started trying to get people to come to the demonstrations
17 after work, but they -- this has been a -- when I went back
18 out there the second time as an electrician, I was -- I
19 turned out by then -- they were putting scrubbers on, but
20 scrubbers don't take dioxin and furans out.  The only way to
21 take them out, according to Saulius Simoliunas, is to cool
22 the gases after they come out and try and trap them in a
23 screen, and then you got to take that screen to a toxic
24 landfill.  The screen will catch the dioxin and furans.  When
25 you recycle, you melt it.  This is what he's telling me, and

1  it doesn't go down to -- when it melts, it doesn't release
2  the chlorines which cause the -- you know, the furans and the
3  dioxins to form, and they don't break down.  I don't think
4  that you get them out of your body, and, in fact, years ago
5  Greenpeace had a teach-in, and they said that these would
6  simulate the sex hormones and that they saw an increase in
7  breast cancer and in prostate cancer, but what I saw as a
8  swim leader and lifeguard, these young girls at age ten were
9  developing big breasts much earlier than I thought was normal
10 for puberty, so -- and we see a lot of people overweight now,
11 and maybe that's one of the reasons because it does --
12 according to this book, it gets in the food, and that's one
13 of the main ways that people get affected by it.
14         THE COURT:  Ma'am, I have two questions.
15         MS. DARRAH:  So I thought --
16         THE COURT:  I have two questions.
17         MS. DARRAH:  -- my health is worth and everybody's
18 health is worth -- you can't measure it.  My mother was the
19 daughter of a doctor, and she used to teach us that health is
20 our most important wealth, and there's --
21         THE COURT:  Ma'am --
22         MS. DARRAH:  If you don't have your health --
23         THE COURT:  Ma'am --
24         MS. DARRAH:  -- it doesn't matter how much wealth
25 you got.  You won't be happy.  Sorry.

1    THE COURT:  I have to ask you two questions.  Okay?

2    MS. DARRAH:  Okay.  Yeah.

3    THE COURT:  The city argues that you filed this

4  claim regarding the incinerator too late, after the

5  deadline --

6    MS. DARRAH:  Yeah.

7    THE COURT:  -- set by the Court.

8    MS. DARRAH:  Well, I think they're related, you

9  know.  In other words, the reason I started out with the

10  recycling and the garbage control is that if the residents in

11  the district -- we have seven districts now.  If they were in

12  control of the project, they would try harder to get the

13  plastic out of the waste stream, but when I saw that that --

14  that wasn't really something that is illegal to make them

15  recycle, but what is illegal is for them to violate the Clean

16  Air Act and jeopardize my health and everybody else's health,

17  so that's why I amended it to include that because I

18  didn't -- and, by the way, I spent yesterday running around

19  to the Hamtramck recycle.  I already talked to the director,

20  Brundidge.  I went to the Southfield yard where Advanced

21  Disposal is, and I didn't make it out to Sterling Heights.

22  That's where Rizzo takes their trucks every day.  That's

23  their headquarters, but -- and the old recycle place burnt

24  down.  The thing that bothered me is Anna Holden sent me a

25  flier that she got off their web -- both of the websites,

1   Rizzo and Advanced Disposal, and I meant to bring it.  I can
2   run home and bring it down to you as soon as I finish here
3   and give it to you.  I meant -- it was -- and I didn't see it
4   this time.  I don't know how -- but she got it off the main
5   websites, both of them.  It says no plastic shopping bags in
6   the recycle bucket that we're supposed to pay for, so to me
7   that means they really aren't in it to try and get all the
8   plastic out to protect our health.  They're in it just
9   because they wanted the contract with the City of Detroit,
10  and this looks good that we've got this recycling that if
11  they don't educate people, people won't even use it anyway,
12  you know, because they have to pay $25 for it, and they don't
13  know about the bad effects of plastic in the waste stream.
14          THE COURT:  Let me ask you my second question.
15          MS. DARRAH:  Okay.  Yeah.
16          THE COURT:  You claim $450 million for compensation
17  for the harm you have suffered.
18          MS. DARRAH:  Right.
19          THE COURT:  What evidence do you have of that?
20          MS. DARRAH:  Well, I was trying to put a value on my
21  life, and they did spend about that much when they first
22  built the incinerator, and then they -- I don't know how much
23  more they spent when they were forced to put scrubbers on it.
24  They didn't even put those on till they were forced to, but
25  those scrubbers won't take dioxins out.

1          THE COURT:  All right.

2          MS. DARRAH:  So I would be happy with whatever you

3    could grant, but the main thing is to protect our health, and

4    the city is not doing it.  They're the ones -- and I tried to

5    get answers yesterday.  It's interesting.  You don't get

6    consistent answers going from one place to the other.

7          THE COURT:  All right.  Ma'am, in the circumstances,

8    I am going to sustain the city's objection to your claim.

9    Your amended claim is filed too late, and it does not have

10   sufficient evidence to support it, and neither does the

11   original claim, so in the circumstances I'm going to disallow

12   your claim.

13         MS. DARRAH:  Well, what would it take to support it?

14         THE COURT:  Well, I can't give you that advice.

15   That's something you'd need to ask a lawyer.  All I can tell

16   you is that what you have submitted --

17         MS. DARRAH:  Well, yeah.  The original claim --

18         THE COURT:  Let me just finish my sentence.

19         MS. DARRAH:  I have here what they spent.

20         THE COURT:  What I can tell you is that what you

21   have submitted is not sufficient.

22         MS. DARRAH:  They spent about that much with these

23   two contracts for the Rizzo, and that's approximately what

24   they spent for one year.

25         THE COURT:  All right.

1     MS. DARRAH:  No.  That's a five-year contract.  I'm
2  sorry.  So that's approximately what they spent, but what I
3  wanted was that we have some way that the citizens can become
4  involved in their own survival, and right now we don't have
5  that.
6     THE COURT:  Well, I appreciate that, but that's all
7  we can do here today.  That's all we can do here today.
8     MS. DARRAH:  That's not enough.
9     THE COURT:  That's all we can do here today.
10     MS. DARRAH:  All right.  Okay.
11     THE COURT:  Please take your seat now, ma'am.
12     MS. DARRAH:  It goes out in the suburbs, too, if you
13  live out there.  It goes everywhere, Great Lakes, everything.
14     THE COURT:  Mr. Simon.
15     MR. SIMON:  Yes, your Honor.  Moving on to the next
16  set of objections, the Woodberry claimants' objections is
17  Claim Numbers 3278, 3271, 3006, 2905, 2902, 2889, 2888, 2883,
18  2880, and 2846.  Those are ten claims filed for a total of
19  $12 million by members of the Woodberry family.  They filed
20  these claims initially, your Honor, just listing eminent
21  domain as a reason on one page of the proof of claim without
22  any backup saying the city took -- quote, "The city took real
23  property without paying just compensation."  We objected to
24  the claims because we couldn't tell at all anything about
25  them.  We couldn't tell what real property this was or what

1    the situation was.

2         And the Woodberrys did file responses.  The

3    responses identified the property -- the subject property as

4    2457 Beaubien.  We did some digging on the city's end, your

5    Honor, and determined that property was the subject of a

6    condemnation proceeding that started back in 2005.  The

7    claimants in this case were parties to that litigation over

8    condemnation, and in April 2009 after years of that

9    litigation, the Wayne County Circuit Court entered an order

10   confirming that title to the property had vested in the city,

11   and they ordered payment of $240,000, which the city paid,

12   and so the claimants had totally omitted that from their

13   claim, but we did determine what -- you know, some background

14   on it.  There is no basis for any further claims because the

15   April 2009 order also says that it is with prejudice to any

16   other claims against the city with respect to the property.

17   It says, quote, "This judgment shall be with prejudice to any

18   further assertion of claims by defendants against the city

19   arising directly or indirectly in whole or in part from the

20   taking of the subject property."  I would note that we had an

21   acknowledgement which we filed as well by Ms. Edith

22   Woodberry, who filed the biggest one of the claims for $3

23   million, that acknowledged that she received full payment.

24   So, your Honor, we would object to this claim.  It's baseless

25   in that there's no basis for any further liability or claim

1    against the city as evidenced by the April order from 2009.

2         THE COURT:  Thank you.  Are any members of the

3    Woodberry family here or anyone representing them?

4         MR. CRANSTON WOODBERRY:  Good morning, your Honor.

5    I'm Cranston Woodberry.

6         MS. EDITH WOODBERRY:  Good morning.  I'm Edith

7    Woodberry.

8         MR. LA JEFF WOODBERRY:  Excuse me, your Honor.  Good

9    morning, your Honor.  I'm LA Jeff Woodberry.

10        THE COURT:  All right.  So the city contends that

11   you already got paid for this property through the

12   condemnation proceeding in court.

13        MS. EDITH WOODBERRY:  Your Honor, I had received

14   from the city by express mail I think the day before

15   yesterday his statements, and I filed a -- prepared a

16   response, but I don't know how to give it to the city, Judge.

17        THE COURT:  I'll have a --

18        MS. EDITH WOODBERRY:  Can you give a copy to him or

19   the -- but the answer is that --

20        THE COURT:  If you want me to, I'll have a look at

21   it, ma'am.

22        MS. EDITH WOODBERRY:  I would appreciate it.

23        THE COURT:  All right.

24        MS. EDITH WOODBERRY:  And there's one for the city's

25   attorney.

1      THE COURT:  Mr. Simon, Ms. Woodberry has one for

2 you, too.

3      MR. SIMON:  Thank you, your Honor.

4      MS. EDITH WOODBERRY:  I wasn't seeking oral argument

5 because I know I'm not a -- I'm in here in pro per.  I'm not

6 any way capable of matching what was said here today, but I

7 will say that the purpose of me filing that claim was to put

8 Bankruptcy Court on notice that we had an action in a lower

9 court, in the state court, and that I wanted -- I don't know

10 the rules of the Bankruptcy Court, so, therefore, I didn't

11 want to have this rejected in the state court because the

12 action should have been brought to you.  My suggestion or

13 hope would be that you would dismiss or accept, receive for

14 Bankruptcy Court's information the fact that we do have

15 something and maybe let it go back to state court or dismiss

16 it for lack of --

17      THE COURT:  What is there left for the state court

18 to do?

19      MS. EDITH WOODBERRY:  Well, now, the state court in

20 its -- the state court has not issued a final order, so,

21 therefore, we cannot appeal the --

22      MR. CRANSTON WOODBERRY:  The judgment.

23      MS. EDITH WOODBERRY:  -- the judgment.  We can't

24 appeal the judgment because she has not issued a final -- she

25 says that that judgment is not a final order.  If you look at

1   the bottom of plaintiff's -- the city's --

2          MR. CRANSTON WOODBERRY:  Exhibit 1, the April 28th,

3   2009, judgment.

4          THE COURT:  Okay.

5          MS. EDITH WOODBERRY:  It's a citizen's --

6          THE COURT:  I will look at that.  Give me one

7   second, please.

8          MS. EDITH WOODBERRY:  Okay.  Well, actually, I'm not

9   capable of maybe presenting an oral argument against what he

10  was saying here because I couldn't hear him in the back, and

11  what he wrote, I responded to that.

12         THE COURT:  I do see the language you are referring

13  to.  It says, "Pursuant to Rule 2.602(a)(3), this judgment

14  does not resolve the last of any claims, and it does not

15  close the case."  That's the language you're talking about?

16         MS. EDITH WOODBERRY:  Yes.

17         THE COURT:  Okay.  Let me ask Mr. Simon about that.

18  Mr. Simon.  Ms. Woodberry, let me just ask you to step a

19  little bit to the side so Mr. Simon can use the microphone

20  there.  Thank you very much.

21         MR. SIMON:  Your Honor, actually the city law

22  department is right now looking at the status of that case.

23  I had interpreted that language to be separate from the

24  condemnation and separate from any payment related to the

25  eminent domain, which is clearly set forth in the order as

 1   being exclusively handled, and the order was entered on a

 2   final basis.  It calls for the resolution of all the claims

 3   by the payment of $240,000, and so I don't think that the --

 4         THE COURT:  You don't know what's left to be done?

 5         MR. SIMON:  I don't know of anything left to be

 6   done.

 7         MR. CRANSTON WOODBERRY:  Well, your Honor, the

 8   problem is --

 9         THE COURT:  No.  One second.  So you don't know that

10   there isn't anything left to be done?

11         MR. SIMON:  I cannot say that, your Honor.  Based on

12   that language, I have a -- yes.  That's correct.

13         THE COURT:  I'm sorry to have interrupted you, sir.

14   What were you going to say?

15         MR. CRANSTON WOODBERRY:  Well, he just answered the

16   question.  We do have an appeal of right.

17         THE COURT:  Stand right by that microphone.

18         MR. CRANSTON WOODBERRY:  I'm sorry.  We do have an

19   appeal of right, and the other issue is that there were

20   certain people who had an interest in that property that were

21   not brought into the action by the City of Detroit, and --

22         THE COURT:  And who were those people?

23         MR. CRANSTON WOODBERRY:  This is the one person

24   right there, Jeff Woodberry.

25         MR. LA JEFF WOODBERRY:  LA Jeff Woodberry.  And I

1   never was brought into the action.

2           THE COURT:  Um-hmm.

3           MR. LA JEFF WOODBERRY:  (Inaudible) for the

4   property.

5           THE COURT:  Well, Mr. Simon, in the circumstances,

6   subject to further development of our record here, I think I

7   have to overrule your objection and abstain from any further

8   action by this Court in the matter to allow the state court

9   to do whatever is left to be done in the case.  And if there

10  is ever a final judgment in the sense that all appeals have

11  been exhausted, then we can sustain the objection assuming

12  the judgment is in the city's favor.

13          MR. SIMON:  Your Honor, there's been no appeal.  The

14  order was entered in 2009.

15          THE COURT:  Right, but there's a question about

16  whether this is a final appealable judgment because it says

17  the judgment does not resolve the last of any claims, and it

18  doesn't close the case.

19          MR. SIMON:  And, your Honor, would it be possible to

20  set a briefing schedule on substantive response to the claim

21  objection, you know, based on --

22          THE COURT:  No.  I'm going to abstain --

23          MR. SIMON:  Okay.

24          THE COURT:  -- and allow the state court to make a

25  final determination on the issues.

1           MR. SIMON:  Thank you, your Honor.

2           THE COURT:  I can't tell, based on this record,

3 what's left let alone decide it.  All right.  I'll prepare an

4 appropriate order.  So you should go back to state court and

5 try to work with the judge there on resolving whatever is

6 left to be resolved so you can get on with your appeal.

7           MR. CRANSTON WOODBERRY:  Thank you, your Honor.

8           THE COURT:  Do you have an attorney in that case?

9           MR. CRANSTON WOODBERRY:  I was appearing as the

10 attorney in that case, your Honor, yes.

11           THE COURT:  Okay.  All right.

12           MR. SIMON:  Your Honor, if I may, just one further

13 note, is it -- the claim really should be contingent, though,

14 at best, and unliquidated rather than have a certain dollar

15 figure.

16           THE COURT:  Yes.

17           MR. SIMON:  Okay.

18           THE COURT:  At this point it's not fixed at all.

19           MR. SIMON:  Exactly.  I just wanted to be clear

20 about that.  Thank you.

21           THE COURT:  All right.  I'll make sure the order

22 says that.

23           MR. SIMON:  And, your Honor, the final matters that

24 we have, your Honor, are in respect of Macomb Interceptor

25 Drain District.  This is probably the thorniest area.  We are

1  in something of a spot in that the claim was filed by Macomb

2  Interceptor on May 5th, and our deadline to object to claims

3  in connection with the plan and to have the whole plan

4  process in respect of claims where we couldn't validate where

5  they're significant and could impact voting, we had to

6  address that and filed the objections on May 15th, so we have

7  not had time really to dig into the substance other than to

8  note that it's a huge claim.  We think we have good arguments

9  against the claim, including res judicata, for the reasons we

10 stated in our papers.  And, you know, we think that there's

11 somewhat -- there's some gamesmanship going on with the

12 timing, but we are in a situation where we just can't allow a

13 claim in the amount of $26 million to be voted under the plan

14 without any demonstration of the evidence and certainly not

15 for distribution purposes either, so both those issues kind

16 of tie in together, and we object to the claim because we

17 can't see the validity of it.

18        THE COURT:  Well, in the past what I have done in

19 these situations is to estimate the claim for voting

20 purposes, and the procedure that I have used in the past and

21 that I request your input on is to allow counsel to file a

22 brief in support of whatever estimation amount they assert

23 supported by whatever affidavits and documents they wish the

24 Court to consider in support of that estimation amount and

25 then to give each side a specific and limited amount of time

1   to argue their estimation amount, and then I choose a number.

2         MR. SIMON:  That makes sense to me, your Honor, and

3   I believe we talked about a process along those lines leading

4   up to the hearing.

5         THE COURT:  And the timing in all of that is subject

6   to your input as well.

7         MR. BRILLIANT:  Yes.  Thank you, your Honor.  Allan

8   Brilliant from Dechert on behalf of Macomb Interceptor.  I'm

9   joined by Raechel Badalamenti, whose appearance I had put on

10   the record earlier --

11         THE COURT:  Yes.

12         MR. BRILLIANT:  -- who is the counsel who's been

13   handling this in state court, your Honor.  We had reached out

14   after we filed the motion and received the objection from the

15   city about a process, and we came up with something very

16   similar to what your Honor had suggested with one caveat,

17   which is that we had asked for -- that there be some limited

18   amount of discovery and the opportunity to take a couple of

19   depositions and get a small amount of documents which we

20   could attach to the -- you know, to our brief, and then our

21   expectation is that we would attach our declarations and any

22   deposition designations that we felt were relevant and that

23   that could be the basis of the -- you know, of the hearing.

24   The one thing -- and Mr. Simon alluded to it -- is we really

25   don't know at this point what their objection is, so we are a

1  little bit concerned that we could end up in a situation

2  where we prove up our case based on the elements of our

3  claims and they come up with something as a defense that

4  we're not aware of, so either we would ask that we have the

5  opportunity to file a reply brief or, alternatively, that at

6  some point before we have to file our papers they tell us

7  what it is --

8       THE COURT:  Well, I have to be considerate of the

9  city's position here given how long it took your client to

10  file this proof of claim and the time pressure that we are

11  under to fix an estimation, and this is just an estimation

12  for voting purposes, not for distribution purposes.

13      MR. BRILLIANT:  We understand, your Honor.  I think

14  one thing just to make the record clear on the date, we filed

15  the complaint before the bankruptcy, so it's not as if they

16  weren't aware of the fact that we had a complaint, that there

17  was a state court proceeding that existed before the

18  bankruptcy filing, and then we filed the proof of claim

19  within the intergovernmental, you know -- you know -- you

20  know, bar date, so it's not as if it's a late proof of claim.

21  And there was a proceeding in front of Judge Cleland, and the

22  city was represented in all these matters by Miller Canfield,

23  so it's not as if the city wasn't aware of the claim or the

24  facts leading up to the claim, but we do recognize that there

25  are -- you know, that this is time-sensitive material.

1        THE COURT:  Well, but you could have filed the proof

2   of claim on July 19th, too.

3        MR. BRILLIANT:  July -- the last possible date,

4   2014, you're talking -- or you're talking about the first

5   possible --

6        THE COURT:  July 19th, 2013, the day after they

7   filed the bankruptcy, you could have filed a proof of claim.

8   All right.  Do you have a proposed schedule in mind?  Have

9   you gotten so far as to discuss that?

10       MR. BRILLIANT:  We have, your Honor.  You know,

11  the -- you know, the city had requested that it be the week

12  of the 14th.  You know, we would --

13       THE COURT:  That what would be the week of the 14th?

14       MR. BRILLIANT:  You know, the -- you know, the

15  hearing.

16       THE COURT:  All right.

17       MR. BRILLIANT:  And we --

18       THE COURT:  So start there and work backwards.

19       MR. BRILLIANT:  And we had proposed that it be, you

20  know, the -- you know, the following week, the week of the

21  21st, or, you know -- because we just think that your Honor

22  has a busy calendar.  We all -- you know, you have hearings

23  on Monday, Tuesday, and Wednesday, I believe, in connection

24  with the case, and, you know, we have other --

25       THE COURT:  Thursday.

1    MR. BRILLIANT:  We have other issues as well, so we

2   thought the following week would work better and then work

3   backwards from there, your Honor, so our sense is if we get a

4   reply brief or some statement from them as to what the claim

5   is, that would --

6        THE COURT:  Let's start with the hearing date.

7        MR. BRILLIANT:  Yes, your Honor.

8        THE COURT:  It would be very hard for me to do it

9   before Monday, July 21st.  Is that okay?

10       MR. ELLMAN:  If I might, your Honor, Mr. Simon asked

11  that I address this issue.  With your Honor's scheduling of

12  the plan, various plan deadlines, our voting results are due

13  on the 21st, and so our strong preference would be to have a

14  number for this claim for voting purposes before we have to

15  certify the voting results, so if at all possible our

16  suggestion would be, obviously subject to your calendar, to

17  have an answer by the 18th, which is the last business day

18  before the 21st.  Voting is due on the 11th.  Ideally it

19  would be even better to have it before then, but I think they

20  can vote their claim subject to your Honor's decision.  If we

21  can't have a hearing before the 11th, I do think that

22  following week it would be, in the city's view, important to

23  have the final voting results, have a number to put in that

24  tabulation affidavit on the 21st.  Obviously it's a very

25  tight time frame.  I assume the hearing would be relatively

1   truncated and short.  A lot of it would be done on the

2   papers.  But obviously that's subject to your calendar, which

3   I'm sure is crowded.  I know there's several things that week

4   of the 14th already, legal arguments of the individual

5   claimants, et cetera, so -- but if it worked in that week, it

6   would be a preference.

7          THE COURT:  Well, all right.  I do have a brief

8   opening at two o'clock on the 17th.

9          MR. BRILLIANT:  Can I respond on the timing, your

10  Honor, before your Honor rules on the date?

11         THE COURT:  Um-hmm.

12         MR. BRILLIANT:  You know, it seems to me that, you

13  know, it's just -- I'm just going to state the obvious.

14  There's one of three possibilities that'll occur here.

15  Either the voting will be such no matter what amount we vote

16  that the class approves or the voting will be no matter what

17  we vote that the class rejects or the other possibility is

18  that it will either be approved or not approved.  The class

19  will either, you know, accept or not accept based on the

20  amount that we vote.  On the -- they have to file their paper

21  on the 21st.  To the extent that it matters, that if it falls

22  into the third category, they could just put a footnote and

23  then just say, you know -- you know, Macomb has voted, you

24  know, the amount that -- you know, purports to have voted the

25  amount that it thinks it's owed, $26 million, and based upon,

1   you know, the Court's ruling, it may change the results, and

2   I don't see, given that the confirmation hearing isn't

3   starting until, you know, a month later, that it really

4   matters whether the hearing be on the 21st or the 17th or the

5   22nd or whatever date works best for your Honor, but my sense

6   is that a little more time, you know, will make for better

7   submissions to your Honor, give us the opportunity

8   potentially to file either a reply brief because I know

9   they're really telling us -- you know, as they said to you,

10  they really can't tell us what their issues are.

11          THE COURT:  Remind me what class your claim is in or

12  his claim is in?

13          MR. BRILLIANT:  I believe it's other general

14  unsecured claims.  I think it's Class 14.  I always get 14

15  and 15 confused, but it's -- is it 14?

16          MR. ELLMAN:  It's Class 14, your Honor.

17          MR. BRILLIANT:  14.

18          MR. ELLMAN:  And our concern in part is that this --

19  we don't know who's going to vote, but even if every party

20  voted who is entitled to vote in that class, this would at

21  the level of $26 million be among, if not the largest claim

22  in the class, so it's fundamentally important that we know

23  the answer to that question, I think, if we're having a

24  real --

25          THE COURT:  Well, there's no chance you're going to

1  vote for the plan; right?

2  　　　　MR. BRILLIANT:  No, your Honor.  And for what it's

3  worth, your Honor, they estimate $150 million -- in the

4  disclosure statement they estimate the class would be $150

5  million, so it is not as if we have blocking power in this

6  class --

7  　　　　THE COURT:  No, but --

8  　　　　MR. BRILLIANT:  -- even if your Honor allowed it at

9  26 million.

10  　　　　THE COURT:  26 out of 150 is a significant

11  percentage.

12  　　　　MR. ELLMAN:  It also depends on who votes, your

13  Honor.

14  　　　　MR. BRILLIANT:  Correct, your Honor.  I'm not -- we

15  wouldn't be having, you know, this issue if it was

16  irrelevant.

17  　　　　THE COURT:  Whose depositions are you talking about?

18  　　　　MR. BRILLIANT:  There's two or three.  You know, our

19  issue -- did your Honor, you know, read the papers, and were

20  they understandable as to what the claim is?

21  　　　　THE COURT:  Um-hmm.

22  　　　　MR. BRILLIANT:  Yeah.  So, you know, there's two or

23  three possible depositions we would want.  They would relate

24  to the people who negotiated, you know, the transaction, you

25  know, what the representations were, what was said, and also

1   what was known about, you know, the -- you know, the --

2           THE COURT:  Um-hmm.

3           MR. BRILLIANT:  -- you know, the fraud.

4           THE COURT:  Do you have specific names?

5           MR. BRILLIANT:  We do.  We haven't figured out, your

6   Honor, exactly who we would need, but it's likely to be

7   someone in the group of Mark Jacobs from Dykema, who's the

8   lawyer who negotiated this on behalf of the city, you know,

9   DWSD, and/or, you know, Robert Walker, who was the

10  corporation counsel who was involved, and then possibly one

11  of -- there's two, you know, engineers or two business people

12  who are involved, R.C. Shukla and/or Victor Mercado, but our

13  sense is, you know, we may do these as -- and also -- you

14  know, and, again, your Honor, we talked to the other side

15  about two, maybe three, and --

16          MR. ELLMAN:  Darryl Latimer?

17          MR. BRILLIANT:  -- and possibly Darryl Latimer,

18  who's the person who executed the agreement, although we're

19  not certain at this point that he was involved in the

20  discussions.

21          THE COURT:  Um-hmm.

22          MR. BRILLIANT:  You know, we may do this by, you

23  know, a 30(b)(6) and let them tell us who the people are who

24  have the most knowledge or we may, you know -- you know --

25  you know, designate them, but it would be very short,

 1    limited, you know -- you know, depositions just geared to,

 2    you know, certain, you know -- you know, key facts that may

 3    or may not be in dispute.  A lot of this came out in the

 4    criminal investigation and in connection with the other

 5    litigation, but we're not exactly sure what their position is

 6    with respect to the negotiations and, you know, who knew what

 7    and when.

 8            THE COURT:  Well, I'm inclined to think there is

 9    merit in the city's position that it is important, to the

10    extent it's feasible, to pin down claims before it is

11    required to certify the balloting, so in the circumstances I

12    am going to set a hearing, tough as it is on us, for July

13    17th at two o'clock and ask you to submit your briefs and

14    supporting evidence by Monday, the 14th.  And I'll permit the

15    limited discovery that you have suggested is necessary.

16            MR. BRILLIANT:  And, your Honor, can we either -- I

17    guess it doesn't -- can we file a reply brief on the morning

18    of the 17th or --

19            THE COURT:  Yes.  That's fine, and we'll deal as

20    best we can.

21            MR. BRILLIANT:  Thank you, your Honor.  Your Honor,

22    the other thing that was up for today was the objection, you

23    know, to the ultimate allowance of the claim, which, you

24    know, is not anything of great import before the confirmation

25    hearing.  I don't know what your Honor was, you know,

1  planning to do with that, but we would be agreeable to

2  having, you know, that hearing date set for some time at the

3  convenience of the Court and the city.

4       THE COURT:  Well, I think -- yeah.  I think that

5  whole process is subject to the discovery you would have as

6  if it were a regular civil suit; right?

7       MR. BRILLIANT:  Correct, your Honor.

8       THE COURT:  So I don't foresee resolving that in any

9  kind of expedited time frame at all.

10       MR. BRILLIANT:  No, no, and we don't either, your

11  Honor.  If I misspoke, that's what I was trying to say to

12  your Honor.

13       THE COURT:  Okay.

14       MR. BRILLIANT:  I was just saying from a case

15  management perspective, I just didn't want it to get lost.

16  And I don't know what your Honor's --

17       THE COURT:  Well, let's have a conversation about

18  that.  I mean normally I would set a discovery deadline, a

19  final pretrial conference, and a trial.  Did you have any

20  thoughts on that?

21       MR. BRILLIANT:  Yes, your Honor.  We have talked to

22  the other side about it.  We think that they either should --

23  you know, there is a complaint that has been filed.  They

24  should either, you know, answer the allegations in the

25  complaint or file some kind of motion to dismiss so that, you

1    know -- and we're not talking about any time -- you know,

2    we're not saying in the next 30 days or anything of that sort

3    unless your Honor, you know, wants to move this along.  We're

4    not insisting on that but that there should be some kind --

5         THE COURT:  Doesn't the objection to the claim

6    identify what their legal or factual disputes are?

7         MR. BRILLIANT:  No, your Honor.  It just says that

8    they will vigorously oppose the claim that they -- you know,

9    and that they think there may be a res judicata argument.

10        THE COURT:  Mr. Simon, are you responsible for the

11   representation of the city in this matter?

12        MR. SIMON:  Your Honor, it's still being determined

13   who's going to represent the city in terms of actual

14   determination on the issues.  I would say -- what I was

15   thinking is we go through this process in the 3018, and the

16   parties will have time then to determine what process they

17   want to use going forward in terms of the actual substance of

18   the claim.  I think it may be valuable to allow the parties

19   to have those discussions and see if they can come to an

20   agreement about how the claim would be handled on the

21   substantive basis for distribution purposes since they are

22   two separate processes, the 3018 and the --

23        THE COURT:  Well, all right.  Let's just adjourn

24   this until October 1st then, but I do want from the city

25   before then -- and we'll agree upon a date -- a much more

1  specific objection to the claim --

2          MR. SIMON:  Understood, your Honor.

3          THE COURT:  -- that admits and denies the

4  allegations of the complaint and asserts affirmative

5  defenses.

6          MR. SIMON:  Understood.  Thank you, your Honor.

7          THE COURT:  So what's a reasonable date?  Two weeks

8  before that?

9          MR. SIMON:  Yes.

10          THE COURT:  Chris, help me out.

11          THE CLERK:  September 17th.

12          MR. SIMON:  Good.

13          THE COURT:  And then at this October 1st status

14  conference, we can discuss the case management issues that

15  Mr. Brilliant has raised here today.

16          MR. SIMON:  Thank you, your Honor.

17          MR. BRILLIANT:  Thank you, your Honor.

18          THE COURT:  Okay.

19          MR. SIMON:  I believe that's all we had, your Honor,

20  unless you have anything else.

21          THE COURT:  No.  I'm all set then.

22          MR. SIMON:  All right.  Thank you very much.

23          MR. BRILLIANT:  Thank you, your Honor.

24          THE COURT:  Thank you.

25          THE CLERK:  All rise.

1    (Proceedings concluded at 10:53 a.m.)

2                              * * *




                              INDEX



WITNESSES:

     None

EXHIBITS:

     None



          I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    June 30, 2014
_____       _____
Lois Garrett

IN THE UNITED STATES
BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

#562332

FILED
2014 JUL 14 P 2:
U.S. BANKRUPTCY COURT
E.D. MICHIGAN DETROIT

In Re:
CITY OF DETROIT
MICHIGAN
Debtor

CHAPTER 9
CASE No 13-53846
HON STEVEN Rhodes

NOTICE OF APPEAL

Claimant (#458) ALbert O'Rourke
Herein Appeals To The Federal
District Court For The EASTERN
District of MICHIGAN, Southern Division
The Denial of O'Rourke's Claim
on/About JUNE 25, 2014

Dated July 3, 2014
In forma pAupers

Albert O'Rourke
2316 PASeo De LAura
# 223
CA 92054
(760) 453-22 18

CSD 3010 (04/15/74)

Name, Address, Telephone No. & I.D. No.

Albert O'Rourke
2316 Paseo De Laura #223
Oceanside, CA 92054
(760) 453-2218

UNITED STATES BANKRUPTCY COURT
~~SOUTHERN DISTRICT OF CALIFORNIA~~ Eastern District of Michigan

S-twin
Division

CITY of DETROIT, Michigan

Debtor.

BANKRUPTCY NO. 13-53846

ADVERSARY NO.

Plaintiff(s)

Defendant(s)

Money order + Civil Cover Sheet
Notice of Appeal
$ 298

PROOF OF SERVICE

I, AL O'ROURKE, certify that I am, and at all times during the service of process was, ~~not less than 18 years of age and~~ not a party to the matter concerning which service of process was made. I further certify that ~~I~~ served a copy of the following documents (describe each document served):

(Claimant/ ALBERT O'ROURKE'S)
~~Appeal~~ $450.

July 3, 2014
[date] by:
* July 11, 2014

Notice of Appeal

[ Mail Service - Regular, first-class United States mail, postage fully pre-paid, addressed to:
① Clerk U.S. Bankruptcy Court
211 West Fort Street, Suite 2100 Detroit, Michigan 48226

[ Personal Service - By leaving the documents with the following named person(s) or an officer or agent of the person(s) at:
Original and copies
② Foley And Lardner LLP, John Simon, Esq. Attn:
Tamar Dolcourt
500 Woodward Ave - Suite #27000
Detroit, Michigan 48226

[ Residence Service - By leaving the documents with the following adult at:

Under penalty of perjury, I declare that the foregoing is true and correct.

July 3, 2014   * Re-sent July 11, 2014
[Date]         To U.S. Bankruptcy Court Clerk

Al O'Rourke
[Signature]  AL O'Rourke

Print Name     AL O'ROURKE
Business Address  2316 Paseo De Laura #223
City, State, Zip  Oceanside, CA 92054

| United States District Court<br>Eastern District of Michigan | Bankruptcy Matter<br>Civil Case Cover Sheet | District Court Label |
|---|---|---|

In re: City of Detroit
        Michigan

                                    Case No.:

                    Debtor.          13-53846

_____/

Albert O'Rourke              Adv. No.:

        Appellant,

    v.


        Appellee.
City of Detroit

---

**CAUSE OF ACTION/NATURE OF SUIT:** (This matter is referred to the district court for the following reasons)

    ✓    [422] 28 U.S.C. 158            Bankruptcy Appeal

    _____ [422] 28 U.S.C. 158            Motion for Leave to Appeal

    _____ [423] 28 U.S.C. 157(d)        Motion for Withdrawal of Reference

    _____ [423] 28 U.S.C. 157(c) (1)    Proposed Findings of Fact and Conclusions of Law

    _____ [423] 28 U.S.C. 158 (c) (a)   Order of Contempt

Date: July 11, 2014            Name: O'Rourke
                                      Albert O'Rourke

Name and Address of Interested Parties