# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

-------------------------------------------------

**SECOND SUPPLEMENTAL BRIEF OF RYAN, SWIFT, MENDOZA AND CUPPETELLI, INTERESTED PARTIES/§1983 PLAINTIFFS, IN SUPPORT OF THEIR OBJECTIONS PREVIOUSLY FILED [Dkts. #4099, #4228, #4608, #5690] ON THE CONSTITUTIONALITY OF ALLOWING THE DIMINISHMENT OF THE FUNDAMENTAL RIGHT TO A DAMAGES <u>REMEDY FOR THE VIOLATION OF CONSTITUTIONAL RIGHTS</u>**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ............................................................................................. 3-11

I. No Right Without A Remedy: The Enforcement Of The Constitution
Through A Damages Cause Of Action For The Violation Of One's
Constitutional Rights Is Not Dependent On The Existence Of
42 U.S.C. §1983 ...................................................................................... 3

    A. §1983 Is Nothing More Than A Vehicle For Enforcing Rights
       That Emanate Directly From The Constitution. ................................... 3

    B. The Right To Vindicate Constitutional Deprivations
       Through Compensation Is Embodied In The Constitution
       And Acknowledged By The Supreme Court .......................................... 4

II. §1983 Liabilities Incurred By Individual Officers When Acting In Their
Individual Capacity – As Opposed To "Official Capacity" – Are Not
Dischargeable Under Chapter 9, Regardless of Municipal Indemnification. 8

III. The Attorney General's Recommendation That This Court Bar The
Discharge Of Just Compensation Claims Should Also Be Applied To
Constitutional Compensation Claims ........................................................ 11

CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................................4

*Bell v. Hood,* 327 U.S. 678 (1946)..........................................................................................6

*Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics*
   403 U.S. 388 (1971)...............................................................................3, 4, 5, 6, 7

*Bounds v. Smith*, 430 U.S. 817 (1977) ....................................................................................7

*Kentucky v. Graham*, 473 U.S. 159 (1985).........................................................................7, 9

*Monroe v. Pape,* 365 U.S. 167 (1961) ...........................................................................3, 4, 5

*Monell v. Department of Social Services of City of New York,*
   436 U.S. 658 (1978)...............................................................................3, 6, 7, 9

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) ..................7

*Owen v. City of Independence, Mo.*, 445 U.S. 622 (1980) ........................................7

*V.W. ex rel. Barber v. City of Vallejo,* 2013 WL 3992403
   (E.D. Cal. Aug. 2, 2013) .......................................................................2, 8, 9, 10

*Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995)..................................................7

**STATUTES**

14th Amendment ...................................................................................................4

11 U.S.C. §944(c)(1) ............................................................................................11

42 U.S.C. §1983................................................................................................*passim*

**Introduction**

Interested parties/§1983 Plaintiffs WALTER SWIFT, DEBBIE RYAN, CRISTOBAL MENDOZA and ANNICA CUPPETELLI [hereafter "Plaintiffs"] have previously objected to the Debtor's proposed Plan of Adjustment for the reason that it violates the United States Constitution by diminishing and depleting the fundamental right to a remedy for the violation of Constitutional rights, pursuant to 42 U.S.C. §1983.  [*See* **Dkts. #819, #4099, #4228, #4608 and #5690**]. On July 16, 2014, this Court heard oral argument regarding these Objections, focusing specifically on whether or not the dischargeability of debts arising from unconstitutional conduct by municipalities and their officers violates the Fourteenth Amendment.   Plaintiffs respectfully, but strenuously, assert that it does.

Based on the most logical reading of the Supreme Court jurisprudence and the legislative history, neither the municipality-debtor's debt nor the individual officers' respective debts are dischargeable.  In any event, as Plaintiffs have also briefed and argued before this Court, notwithstanding the *municipality*'s direct liability for its customs, policies and practices, and whether such debt is dischargeable under Chapter 9 of the Bankruptcy Code, there is clear precedent that Chapter 9 does *not* discharge the individual liability of municipal officers who engage in unconstitutional conduct which causes harm, regardless of whether such

a judgment would ultimate come out of the municipal treasury through indemnification of the officer. *See V.W. ex rel. Barber v. City of Vallejo,* 2013 WL 3992403, at *6 (E.D. Cal. Aug. 2, 2013); *see also* Plaintiffs' *Supplemental Brief in Support of Their Objections,* **Dkt. #5690**, pp. 2- 5.

On July 11, 2014, this Court issued a formal request to the United States Attorney General, requesting that his office file a brief to address the issue of whether Chapter 9 is "unconstitutional if it allows the discharge or impairment of … claims under 42 U.S.C. §1983," by or before August 13, 2014. [**Dkt. 5925**]**.** On August 12, 2014 the Attorney General filed a brief which fails both to adequately address the questions that are of primary concern regarding this issue or to analyze the full impact of the history of Supreme Court jurisprudence emphasizing the importance of protecting individuals' fundamental right to a remedy in the face of harms caused by violations of the Constitution. [**Dkt. #6664**].

At the July 16, 2014 hearing, the following two questions arose, which Plaintiffs now further address directly:

1) To what extent does the right to seek damages for the violation of one's constitutional rights flow directly from the Constitution, as opposed to being exclusively statutory in origin; and

2) What does it mean for an individual officer to be liable under §1983 when acting in his "individual capacity" as opposed to his "official capacity," and, to the extent that a §1983 judgment against an individual

officer acting in his individual capacity is not dischargeable under Chapter 9, what happens when a Chapter 9 municipality is required to indemnify said officer?

In offering guidance to this Court on the two aforementioned questions, these Plaintiffs submit a brief overview of the three seminal Supreme Court cases that provide the foundation for all §1983 litigation and its applicability to the rights fundamentally protected by the United States Constitution: *Monroe v. Pape,* 365 U.S. 167 (1961); *Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971); and *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978). It is noteworthy that the Attorney General's *Brief* **[Doc. #6664]**, in its wholesale and perfunctory rejection of the principles asserted by Plaintiffs, neither cites nor analyzes either *Monroe* nor *Bivens*, two of the three most oft-cited cases for understanding the parameters and scope of the §1983 damages remedy as it emanates directly from the Constitution. Equally significant is that the Attorney General's brief is completely silent regarding the question of the non-dischargeability under Chapter 9 of the § 1983 claims asserted against the individual officers in their individual capacities.

I. **No Right Without A Remedy: The Enforcement of The Constitution Through A Damages Cause of Action For the Violation of One's Constitutional Rights is Not Dependent on the Existence of 42 U.S.C. §1983.**

    A. **§1983 Is Nothing More Than A Vehicle For Enforcing Rights That Emanate Directly From The Constitution.**

The Attorney General's brief is correct in its statement that §1983 does not create substantive rights [**Dkt. #6664, pp. 4-5**], but is completely incorrect in its shallow conclusion that the right to seek damages does not flow directly from the Constitution. Indeed, the Attorney General's brief cites *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), [**Dkt. #6664, p.4**], while ignoring that in *Baker,* the Supreme Court made clear that §1983 is a *vehicle* for vindicating rights *emanating from the Constitution. Id.* What the Attorney General fails to seriously consider is the important distinction between the *right to a remedy,* as embodied in the Constitution – and as acknowledged by the U.S. Supreme Court (*see, e.g.* **Bivens, 403 U.S. 388), --** and the *vehicle through which that right* is to be carried out in the federal courts, (i.e. 42 U.S.C. §1983).

### B. The Right To Vindicate Constitutional Deprivations Through Compensation Is Embodied In The Constitution And Acknowledged By The Supreme Court.

In *Monroe v. Pape,* 365 U.S. 167 (1961), the Supreme Court held that individuals have a private right of action for damages as a remedy when their Constitutional rights are violated. The Court relied on the legislative history of 42 U.S.C. §1983, noting §1983 is " a part of the Constitution," vis-à-vis the 14th Amendment. *Id.* at 171. That is, when §1983 was first enacted as §1 of the Ku Klux Klan Act of 1871 it was "…one of the means whereby Congress exercised the power vested in it by §5 of the 14th Amendment to enforce the provisions of

that Amendment." *Id*. The *Monroe* Court, in holding that persons subjected to a violation of their constitutional rights have a direct private right of action, quoted the 1871 chairman of the Senate Judiciary Committee, Senator Edmunds, as follows:

> "The first section is one that I believe nobody objects to, as defining the rights secured by the Constitution of the United States when they are assailed by any State law or under color or any State law, and **it is merely carrying out the principles of the civil rights bill, which has since become a part of the Constitution, viz., the Fourteenth Amendment.**"

*Id.* (Emphasis added.)

Ten years after *Monroe* was decided, in 1971, a victim of an unconstitutional search and seizure by Federal narcotics officers – in violation of the Fourth Amendment – brought suit directly under the Constitution to recover damages. *Bivens v. Six Unnamed Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*. Because §1983 applies only to conduct committed "under color of state law," the lower courts rejected the plaintiff's claims, holding that there was no legal remedy for the violation of Constitutional rights committed under color of *federal* law. However, the United States Supreme Court overruled the lower courts, holding that a cause of action for money damages arises directly under the Constitution. The Court held that despite the absence of a specific statutory basis for such an action, and despite the fact that:

> …the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its

violation… '**it is \*\*\* well settled that where legal rights have been invaded, and a federal statute provides for the general right to sue for such an invasion, federal courts may use any available remedy to make good the wrong done**.'

*Id.,* at 396, [quoting *Bell v. Hood,* 327 U.S. 678, at 684 (1946)]. (Emphasis added.)

The *Bivens* Court further held:

> The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts. [Citations omitted]
>
> 'The **very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury**.' Marbury v. Madison, 1 Cranch 137, 163, 2 L.Ed. 60 (1803). Having concluded that petitioner's complaint states a cause of action under the Fourth Amendment … we hold that **petitioner is entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the Amendment**.

*Id.* at 397. (Emphasis added.)

Finally, in 1978, the ground-breaking case of *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978) was decided, in which the Supreme Court held that municipalities as well as individuals were subject to liability for the violation of the constitution when such conduct was committed pursuant to a "custom, policy or practice" of the municipality or to the conduct of an "official policymaker."[1]

---

[1] The distinction between a municipal officer acting in his "individual capacity," on the one hand, and in his "official capacity" on the other, within the meaning of Constitutional jurisprudence and §1983, has to do with whether at the time of the

The Court devoted many pages of its opinion in *Monell* to a comprehensive legislative history and statutory analysis of §1983 as it applies to the remedial scheme for enforcing one's rights under the U.S. Constitution, and particularly, the extent to which a municipality may be considered a "person" within the meaning of §1983 in order to trigger its liability for the violation of the Constitution. In his concurring opinion, Justice Powell essentially admitted that "…if we continued to adhere to a rule of absolute municipal immunity under §1983, we could not long avoid the question whether 'we should, by analogy to our decision in *Bivens*... imply a cause of action directly from the Fourteenth Amendment which would not be subject to the limitations contained in §1983…'" *Id.* at 712 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)).

As Plaintiffs have previously argued [**Dkt. #5690**], the Supreme Court in *Owen v. City of Independence, Mo.*, 445 U.S. 622, 651 (1980) stated that "a damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." Judicial access must be "adequate, effective, and meaningful." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). In *Vasquez*,

---

conduct in question, the actor was acting solely as a "municipal officer" or rather as the "municipality" itself. The former situation applies to "individual capacity" cases and the latter applies to "official capacity" cases. Only in the latter situation is the municipality itself held liable under *Monell. See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

the Seventh Circuit explained that when the right to seek redress is "render[ed] hollow, constitutional rights are undoubtedly abridged." *Id.* Here, as the Debtor City of Detroit proposes to dramatically and overwhelmingly slash the recovery available to victims of constitutional deprivations–including loss of life–to a mere 10% of what is owed paid out over a 30-year period [**Dkt. #4391, pgs. 41, 62**], the proposed Plan of Adjustment renders the right to judicial access hollow and abridges *constitutional*, not statutory, rights.

Consequently, it is apparent that, despite the specific statutory basis for seeking damages relief for harm caused by the violation of one's Constitutional rights pursuant 42 U.S.C. §1983, that statutory basis is simply a jurisdictional vehicle for federal courts to assert jurisdiction over state actors. It is not the basis of the right itself. The right, and the remedy with which to enforce that right, originates with the Constitution, and the Constitution alone.

II. **§1983 Liabilities Incurred By Individual Officers When Acting In Their Individual Capacity – As Opposed To "Official Capacity" – Are Not Dischargeable Under Chapter 9, Regardless of Municipal Indemnification.**

In their previous brief to this Court [*Supplemental Brief in Support of Their Objections* **Dkt. #5690, pp. 2-5**]**,** these Plaintiffs discussed the court's holding in *V.W. ex rel Barber v. Vallejo,* 2013 WL 3992403 (E.D. Cal. 2013), i.e. that individual capacity §1983 liabilities are not dischargeable in Chapter 9. The Attorney General's silence on this issue strongly suggests that this conclusion is

indisputable.  It is instructive, however, to explore the *Barber* court's analysis a little more closely in light of this Court's questions from the July 16 hearing. As already discussed in Plaintiffs' *Supplemental Brief* **[Dkt. #5690],** it is axiomatic that the individual Defendant officers' potential liabilities for their violations of these respective Plaintiffs' Constitutional rights are not claims against the Debtor City of Detroit.   That is, "…a personal capacity Section 1983 claim against a public official is not a claim against the employing public entity." *Id.,* at \*6.  In *Kentucky v. Graham,* the Supreme Court further elucidated on this important distinction as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law…[while] …official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'

*Graham*, 473 U.S. at 166 (quoting *Monell*, 436 U.S. at 690, n. 55).

Also, when an officer is sued in his individual capacity under §1983, his actions must have been taken under color of state law, and such individual capacity suits are not, as Debtor's counsel at the July 16, 2014 hearing misstated, for actions taken outside the scope of the officer's employment. To be clear, each Plaintiff represented here is suing individual officers in their individual capacities for actions taken within the scope of their authority and under color of state law.

Thus, as also pointed out by the *Barber* court, with respect to the potential indemnification of these officers, the City's potential obligation to pay a judgment

against said individuals "...*does not derive from the nature of the plaintiff's* [§1983] *claim.* **Rather, [the individual] defendant is being sued 'for damages for which…the United States has made them individually liable.'** [citation omitted]." *Id.* (Emphasis added.) The *Barber* court further held:

> [A] claim against a City official is not essentially one against the City for bankruptcy discharge purposes, even if state law requires the City to indemnify the official.

*Id.*

Finally, it was suggested by the Debtor at the July 16 hearing that simply because the individual officers may be indemnified, any claims against them must be treated the same as those directly against the City under Chapter 9. The *Barber* court dispels this notion as follows:

> Defendant asks this court to overlook the fact that "indemnification" is a claim separate and apart from the Section 1983 liability claim that underlies it. [fn omitted] **Plaintiff here is suing defendant for a civil rights violation, not for indemnification. It is the defendant who may choose to sue the City for indemnification, if he is found liable in this lawsuit, and if the City declines to defend him or pay the judgment**. [fn omitted] It is at that point that a court might have to determine if defendant's claim-for indemnity-was discharged in bankruptcy.

*Id.* at *7. (Emphasis added.)

Similarly, in this case, this Court is not presented with an action for indemnification by either the Petitioners or any of the individual Defendants; rather, the question of indemnification – or not – is properly left to another day. At this time, however, these individual officers, all sued in their "individual

capacities" for the violation of Petitioners' constitutional rights while acting in their respective capacities as officers of the Detroit Police Department, must not be immunized for their culpable unconstitutional misconduct by having their individual liabilities discharged in their employer's bankruptcy.

III. **The Attorney General's Recommendation That This Court Bar The Discharge Of Just Compensation Claims Should Also Be Applied To Constitutional Compensation Claims.**

Finally, Plaintiffs address a point raised by the Attorney General in regard to an issue never previously asserted by these Plaintiffs. Contrary to footnote 3 in the Attorney General's *Brief*, **[Dkt. #6664, p.5]**, Plaintiffs at no point have asserted a Fifth Amendment Takings argument, because none of them have received final judgments. However, just as the Justice Department found that U.S.C. 11 §944(c)(1) of the Bankruptcy Code should be read narrowly to bar the discharge of just compensation claims and avoid a constitutional question, this Court should similarly read U.S.C. 11§944(c)(1) to bar the discharge of claims for damages stemming from constitutional deprivations that have not yet reached final judgment or settlement. As the Attorney General notes, Plaintiffs here do not request that this Court declare Chapter 9 unconstitutional; rather, they request that this Court safeguard their constitutional right to compensation that vindicates the deprivations of their constitutional rights that they have suffered.

**Conclusion**

For all the reasons set forth above, and in their previously filed briefs on this issue, these Petitioners/§1983 Plaintiffs WALTER SWIFT, DEBBIE RYAN, CRISTOBAL MENDOZA and ANNICA CUPPETELLI respectfully request that their Constitutional right to a full and complete remedy for the violation of their underlying Constitutional rights be protected. As such, the above-named Plaintiffs urge this Court to determine that the Proposed Plan of Adjustment, to the extent that it diminishes and/or impairs their claims in any way, violates the Constitution of the United States and/or promotes an unacceptable conflict between Chapter 9 and the Civil Rights Act. These Plaintiffs therefore ask this Court to hold that the Proposed Plan, insofar as it includes the reduction and severe diminshment of §1983 claimants' damages claims, is unconstitutional and therefore invalid, as it may apply to them and their claims.

Respectfully submitted,

**GOODMAN & HURWITZ, P.C.**

By: /s/William H. Goodman
William H. Goodman P14173
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
*Attorneys for Deborah Ryan, Walter Swift,
Cristobal Mendoza and Annica Cuppetelli*

Dated: August 15, 2014

# CERTIFICATE OF SERVICE

I, William H. Goodman, hereby certify that the foregoing document above, with this Certificate of Service attached, was filed and served via the Court's electronic case filing and noticing system on the 15th day of August 2014.

*/s/ William H. Goodman*_____
William H. Goodman