UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re :                                                        Chapter 9

CITY OF DETROIT, MICHIGAN,                                      Case No. 13-53846

        Debtor.                                               Hon. Steven W. Rhodes

_____/

**JOINT MOTION OF OBJECTING CREDITORS MICHAEL J. KARWOSKI
AND JOHN P. QUINN FOR PARTICIPATION IN THE CONFIRMATION HEARING**

      Pursuant to this Court's Order Order Regarding Participation at the Confirmation Hearing by Creditors Who Filed Objections Without an Attorney (Doc 6584, 08/07/14), Objecting Creditors Michael J. Karwoski and John P. Quinn move to participate in the confirmation hearing by presenting our own witnesses and exhibits, and by questioning other parties' witnesses and evidence.  Set forth below are the items identified in paragraph 3, a. through e., of the Court's referenced Order, *supra*.

      This Joint Motion also address the timing and order of presentation of our witnesses and evidence as set forth in the Eighth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Doc 6699, 08/13/14) in light of the Debtor's (the "City's") burden of proof and burden of going forward.  We particularly object to paragraph 9 of the Eighth Amended Order which would require us to "go first" with the presentation of our direct evidence on August 29, 2014, the court day before the actual commencement of the Confirmation Hearing on September 2, 2014.

      As more fully set forth below, we are also disadvantaged by paragraph 11 of the Eighth Amended Order which gives the City until September 5, 2014, to file its response to the objections raised in the Court's Order Requiring City to respond to Certain Pro Se Objections to Confirmation (Doc 6640), which include our respective individual Objections, Karwoski (Doc 5923, 07/10/14) and Quinn (Doc 5723, 07/01/14).  The City's response may alter the nature and extent of evidence we present.  It is even possible that it may set up some purely legal issues for resolution by the Court.  We also respectfully suggest that allowing us to present our evidence after the City and its supporting parties have rested will better satisfy the requirements of due process.

1

I.    THE COURT, ON ITS OWN MOTION, HAS IMPOSED UPON THE TRIAL
      PARTICIPATION OF UNREPRESENTED OBJECTORS LIMITATIONS THAT
      VIOLATE DUE PROCESS. THOSE LIMITATIONS SHOULD BE MODIFIED OR
      REMOVED.

      A.    An unrepresented objector who holds an impaired claim has the same due-process
            right to participate in the confirmation hearing as any corporate, institutional or
            governmental objector or any objector represented by counsel.

The Fifth Amendment's prohibition of taking property without due process applies to the

confirmation of a plan of adjustment in bankruptcy.[1]  "There is a deprivation of property in any

bankruptcy action whereby a creditor is not paid the entire amount of its claim."[2]  This is

especially clear when the creditor is a Detroit retiree.  The assets of  both pension funds are held

in trust, and retirees hold beneficial interests, which are a species of property interest, in those

assets.[3]  When the debtor and proponent of the plan is a state actor, the Due Process Clause of the

Fourteenth-Amendment also comes into play.

      Even in a non-judicial setting in which the proposed deprivation of property is merely

_____

[1] See *In re Wolf Creek Valley Metro. Dist. No. IV*, 138 B.R. 610, 614 (D. Colo. 1992), applying
the due-process analysis in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314
(1950), to the modification of a Chapter 9 plan; *In re Newstar Energy of Texas, LLC*, 280 B.R.
623, 627 (Bankr. W.D. Mich. 2002), applying due-process notice requirements to plan
confirmation.

[2] *In re Rapp*, 16 B.R. 575, 579 (Bankr. S.D. Fla. 1981).

[3] Mich.C.L. §38.1133(8).

2

temporary, due process requires, at a minimum, that an affected party have "adequate notice detailing the reasons for a proposed [deprivation], and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally."[4] Here we are dealing with a proposed judicially-sanctioned and permanent taking of creditors' property. The Bankruptcy Code, the Bankruptcy Rules and the Federal Rules of Evidence serve to flesh out what "due process" means in this context. That statute and those rules do not set different due-process standards for represented and unrepresented claimants.

      B.     The Court has, on its own motion, taken steps that unnecessarily and improperly restrain unrepresented creditors in the exercise of their due-process rights.

          1.     The Court should exhaust all other reasonable means of expediting the confirmation hearing before resorting to means that impact the due-process rights of unrepresented objectors. One way to accomplish that end without diminution of due-process rights is to decide all issues that can be fully resolved as matters of law before the taking of evidence.

Of course, the determination of what process is due involves consideration of the need to conserve the Court's and the parties' time and other resources. There are steps the Court can take to conserve those resources that do not impose any limitation on the process that is due. It is difficult to see how limitations on the constitutionally protected procedural rights of unrepresented creditors can be justified unless the Court has exhausted other available means of expediting the confirmation hearing before imposing those limitations.

Many of the issues raised by unrepresented objectors can be resolved as matters of law without the taking of any evidence. We ourselves have raised such issues and identified four of

_____

[4] *Goldberg v. Kelly*, 397 U.S. 254, 267 - 268 (1970).

3

them in our Corrected Joint Motion . . . for Briefing Schedule and Hearing on Certain of

Movants' Objections to Fourth Amended Plan of Adjustment (Doc. 6210, 7/22/14). Deciding

such issues without taking evidence on them would save time at the confirmation hearing, and it

might save a great deal more time than is immediately obvious. For example, if the Court were

to decide as a matter of law (as we maintain it should), before the taking of evidence that

application of the ASF recoupment to the claim of any GRS retiree who does not individually

agree to the less favorable treatment would violate 11 U.S.C. §1123(a)(4), it would thereby

render moot eight other issues listed in its Order Requiring City to Respond to Certain

*Pro Se* Objections to Confirmation (Doc. 6640, 8/11/14).[5] Some of those other issues are fact-

intensive, so mooting them before the hearing could be expected to substantially reduce the

length and complexity of the hearing.

Objections by unrepresented creditors are only a small portion of the objections that have

been raised to plan confirmation, and many of the objections raised by represented creditors

probably can be resolved or at least greatly simplified by resolving legal issues, to the extent

possible, before taking evidence on factual issues. The Court generally has broad discretion in

the management of cases before it. However, if the Court exercises that discretion in a manner

that restricts the due-process rights of parties, it needs to assure that the restrictions are truly

necessary. They are not necessary if the same objective can be achieved by other reasonable

means that do not restrict due-process rights.

---

[5] See Doc. 6640, ¶¶ 1.a.i - viii.

4

2. The schedule adopted by the Court forecloses the possibility of simplifying and shortening the confirmation hearing by deciding legal issues before the taking of evidence. This abuse of discretion should be corrected promptly.

In its Eighth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Doc. 6699, 8/13/14) the Court requires that all unrepresented objectors present all their evidence, except evidence that might be obtained by cross-examination of other parties' witnesses, on August 29, 1914, but allows the debtor until September 5, 2014, five days into the confirmation hearing, to respond to those objections by unrepresented objectors to which a response is required by the Court's Order Requiring City to Respond to Certain Pro Se Objections to Confirmation (Doc. 6640, 8/11/14). Many of those objections could be fully decided as a matter of law, and many others could be much simplified for trial by deciding the legal issues they raise before the taking of evidence on whatever factual issues might remain after the legal issues are resolved. It seems safe to conclude that the Court does not intend to take up those legal issues until after it receives the Debtor's response; otherwise the Debtor's response would serve no purpose.

It is bad enough that the Court has given the unrepresented objectors a shockingly small amount of time to present all their direct evidence. By declining to reduce the number of issues on which they need to present evidence and to simplify the remaining issues, the Court places additional obstacles in their path and makes the denial of due process even worse. This abuse of discretion should be corrected.

5

3. The amount of time the Court has allotted for the presentation of evidence by unrepresented objectors is so clearly insufficient as to constitute a violation of due process.

According to the Eighth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment, *supra*, the Court will begin receiving evidence from unrepresented objectors at 11:00 a.m. on August 29, 2014. At 8:30 a.m. on the very next day Court is open, September 2, 2014, the Court will move onto opening statements by the Debtor and creditors represented by counsel. (No provision is made for opening statements by unrepresented objectors.) Thus, the time for all unrepresented objectors from whom the Court decides to accept evidence is about one half-day.

According to the Order Regarding Participation at the Confirmation Hearing by Creditors Who Filed Objections Without an Attorney (Doc. 6584, 8/7/14), the Court has received more than 600 timely objections to confirmation from unrepresented parties. It is clear the Court intends to permit only a very small minority of those unrepresented parties to exercise their due-process right to participate in the confirmation hearing by confronting witnesses, presenting evidence and arguing their cases. If the Court permits only 1% of the unrepresented objectors to participate, about six litigants will have half a day (about 1.8% of the time allotted for the entire trial) among them to make their cases. Actually, they will probably have less than half a day because represented parties may consume part of that time in cross-examination.

This is not due process. It is only a nod in the direction of due process. It might lead a cynic to conclude that the Court regards the unrepresented objectors not as citizens who have a right to protect their property from a possibly unlawful taking, nor as litigants whose

6

contribution to the proceedings might aid the Court in reaching an equitable result, but simply as

a swarm of  nuisances to be disposed of as quickly as possible.  The Court should promptly take

steps to prevent a misleading appearance of judicial disregard of due process by according

unrepresented objectors a fair and reasonable opportunity to participate in the confirmation

hearing.

> 4.      The Court has imposed the initial burden of going forward upon unrepresented
> objectors. That burden properly belongs with the Debtor.

"Courts universally agree that the burden of proof lies with the proponent of the plan,

here the Debtors."[6]  In other words, the presumption at the commencement of the confirmation

hearing is that the Plan does not comply with the requirements for confirmation, and that

presumption remains in force until the Plan proponent presents evidence that it does comply.  It

follows that, under F.R.E. 301,[7] the plan proponent bears the initial burden of going forward.

But the Eighth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating

to the Debtor's Plan of Adjustment, *supra*, requires that unrepresented objectors present all their

---

[6] *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 460-461 (Bkrtcy.S.D.Ohio 2011), citing *In re Washington Mut., Inc.*, 442 B.R. 314, 328 (Bankr.D.Del.2011) (" [T]he Plan Supporters bear the burden of proving that the Plan complies with all of the requirements of the Bankruptcy Code for confirmation.") and *Future Energy*, 83 B.R. at 481 n. 21 ("It is well-established that the proponents of a Chapter 11 plan bear the burden of proving compliance with the requirements of § 1129(a).").

[7] "In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."

7

direct evidence before the Debtor presents any evidence at all, indeed, before the Debtor's opening statement. This places them in the disadvantageous position of having to present evidence to counter evidence that has not been presented.

No litigant should be required to present evidence on which she does not bear the burden of proof except in response to evidence presented by the party who does bear that burden. This is the simple and basic concept underlying F.R.E. 301.

5. All these problems, serious as they are, can be resolved by the simple expedient of allowing unrepresented objectors to present their proofs not at the very beginning of the confirmation hearing but after all other parties rest.

The problems we have discussed above are very serious, touching on the unrepresented objectors' fundamental right to due process. Fortunately, they are also very easy to resolve. The Court could devise several methods for resolving them. Here we offer one simple and complete solution: instead of beginning the confirmation hearing with the presentation of evidence by unrepresented objectors, allow them to present their evidence after all other parties have rested and before closing arguments.[8] If that were done: (1) the Court would have ample time to consider and resolve legal issues touching on questions raised by unrepresented objectors so as to reduce the factual complexity of those questions and the time needed for the presentation of proofs; (2) the Court would be well positioned to determine what proofs offered by unrepresented objectors duplicate proofs already taken from other parties; (3) the unrepresented

_____

[8] The Court might also consider hearing the unrepresented objectors' evidence after the Plan's proponent and supporters rest and before represented objectors present evidence. However, the second and third of the benefits listed later in this paragraph would then be largely lost.

8

objectors could reasonably be limited to rebutting proofs offered by other parties and addressing issues on which the burden of persuasion will have by then shifted to them; and (4) the Court would be able to make well-informed decisions as to how much time the unrepresented creditors need for reasonably complete presentations of their cases.

II.     THERE IS NO JUSTIFICATION FOR IMPOSING EXTRAORDINARY LIMITATIONS ON UNREPRESENTED OBJECTORS WHO HAVE THE TRAINING AND EXPERIENCE TO PRESENT OR CHALLENGE EVIDENCE EFFICIENTLY.

One suspects the Court is concerned that unrepresented objectors who lack legal training or trial experience may, if not carefully limited and controlled, waste a good deal of the Court's and the parties' time simply because they do not know how to present and challenge evidence efficiently. Those concerns do not justify limitations as severe as those the Court has imposed, but they can properly be given some weight with reference to the objectors for whom they have a factual the basis. However, the Court should not assume every unrepresented objector lacks the training and experience needed for efficient conduct of a trial.

Michael J. Karwoski is an active member of the Bar and John P. Quinn recently took inactive status. We both have extensive experience in the practice of law. We have chosen to work together at the confirmation hearing so that each of us can do what he does best and work as efficiently as possible. For example, our plan is that Quinn, who has successfully tried numerous cases in Michigan courts and in the District Court for the Eastern District of Michigan, including high-exposure and relatively complex cases, will handle the cross-examination of any witnesses we decide to cross-examine.

To the extent limitations on the trial participation of unrepresented objectors are based on

9

factual assumptions concerning the objectors' ability to work efficiently in a trial setting, they should be applied only to objectors as to whom those assumptions are factually accurate.

III.    NAMES OF WITNESSES SOUGHT TO BE QUESTIONED OR PRESENTED.

A.    Witnesses we may call in our case-in-chief.

If the Court accepts our suggestion that the presentation of proofs by unrepresented objectors be delayed until after all represented parties have rested, we would expect to call fewer witnesses than if we are required to present our proofs at the outset, since we will be in a position to make an informed decision as to which witnesses' testimony is actually needed. The following list includes the names of all witnesses we may call:

1.  A current or former GRS Board of Trustees member whose term includes the ASF Recoupment Period.

2.  A current or former GRS on-staff auditor or financial advisor who was employed by GRS during the ASF Recoupment Period.

3.  Richard Huddleston, retired financial advisor to GRS (we are not certain we will be able to call him).

B.    Witnesses we may cross-examine.

It is not possible at this point to list, with any confidence, the witnesses we will cross examine.  On the one hand, a witness we do not intend to cross examine may give unexpected testimony touching on issues raised in our objections, necessitating cross- examination.  On the other, we may determine, after hearing the direct examination of a witness we do expect to cross examine, that we had best leave well enough alone because the testimony has not seriously

10

challenged our position and we do not expect to obtain useful testimony from that witness that cannot be obtained with less risk from another witness. The following list therefore probably does not include the names of some witnesses we will need to cross-examine and does include the names of witness we will not cross-examine:

1. Charles Moore, Conway MacKenzie, restructuring advisors to the City

2. Gaurav Malhotra, Ernst & Young, financial restructuring advisors to the City

3. Glenn Bowen, Milliman, Inc., actuarial advisors to the City

4. Suzanne Taranto, Milliman, Inc.

5. Cynthia Thomas, Executive Director, Detroit Retirement Systems

6. Bradley Robins, Greenhill &Co., Financial Advisor to the Retirement Systems

7. Eric Mendelsohn, Greenhill & Co.

8. Judy Kermans, Gabriel Roeder, Actuarial Advisor to the Retirement Systems

9. Ken Alberts, Gabriel Roeder

10. Brian Murphy, Gabriel Roeder

11. David Kausch, Gabriel Roeder

12. Terri Renshaw, Chairperson of the Official Committee of Retirees

13. Kim Nicholl, Segal Consulting, actuarial advisors to the Retirees Committee

The Movants hereby request access by electronic means or hard copy of the transcripts of any and all of the above witnesses who have been deposed.

11

IV.    SUBJECT MATTER OF PROPOSED TESTIMONY.

We plan to limit our questioning, both on direct and on cross, to factual issues relevant to ~~out~~ our objections that remain in play at the time of each respective examination. Those issues may include:

A.    Whether GRS and the City are distinct entities.

B.    Whether GRS is responsible for monthly pension payments to GRS retirees.

C.    Whether the City makes monthly pension payments to GRS retirees.

D.    Whether there is an identity of interests between the City and GRS such that a suit against GRS is, in essence, a suit against the City or will deplete the City's assets.

E.    Whether GRS has contributed substantial assets to the proposed adjustment of the City's debts.

F.    Whether the City's future solvency hinges on the City being free from indirect suits against GRS, which would have indemnity or contribution claims against the City.

G.    Whether decisions to propose or agree to the ASF recoupment were based on considerations inconsistent with Congress's intent in enacting 11 U.S.C. § 1123(a)(4).

H.    Whether GRS Trustees acted reasonably in awarding interest to ASF accounts during the ASF Recoupment Period.

I.    Whether ASF account participants knew, or should have known, of any alleged breach of fiduciary duties by GRS Trustees in awarding interest to ASF accounts during the ASF Recoupment Period.

J.    Whether the inclusive dates of the ASF Recoupment Period are arbitrary.

K.    Whether the definition of Excess Interest is arbitrary.

L.    Whether the members of Class 11 who are not subject to ASF Recoupment, and

12

those members of Class 11 who are subject to it, are treated substantially differently, unequally and unfairly under the Plan.

M.     Whether the members of Class 11 who are subject to ASF Recoupment bear a substantially heavier burden in terms of proposed pension cuts under the Plan than those not subject to ASF Recoupment.

## V.     EXPECTED TIME DURATION OF TESTIMONY.

We think it unlikely that our examination of any witness, whether on direct or on cross, will consume more than thirty minutes. We may spend less than five minutes with some witnesses. It is not possible to be more precise at this point. We cannot provide a reasonable estimate of the total time we will devote to witness examination without knowing the number of witnesses we will call or cross-examine. As noted above, both parts of that total depend on factors beyond our control or present knowledge.

## VI.    WHY OUR PROPOSED EVIDENCE WILL NOT BE DUPLICATIVE OF OTHER EVIDENCE.

We do not know what evidence other unrepresented objectors may intend to offer. We therefore cannot determine whether the evidence we intend to offer might duplicate evidence to be offered by other unrepresented objectors. We will not offer duplicative evidence.

We intend to present only evidence relevant to out objections. So far as we know, no represented party has objected to the Plan on grounds similar to the grounds we have raised. We therefore expect that no represented objector will present evidence relevant to our objections. The Plan proponent and parties who support the Plan may present evidence relevant to our

13

objections, but any such evidence will presumably be offered to establish facts contradictory to the facts we seek to establish, so it is not likely to be the same evidence we intend to present. As noted above, we will not offer any evidence that duplicates previously admitted evidence.

VII.    EXHIBITS TO BE OFFERED.

1.      Annual Reports of the Board of Trustees of the GRS for the fiscal years within the ASF Recoupment Period, July 1, 2003, through June 30, 2013 (fiscal years 2003 - 2013).

2.      GRS PowerPoint presentation, including charts and graphs, used by Michael VanOverbeke, General Counsel, at the June 5, 2014, GRS Informational Meeting, and posted on-line at the GRS website.


        WHEREFORE, we respectfully request that the Court enter an Order granting the relief sought in this Motion.


/s/ Michael J. Karwoski                         /s/ with consent of John P. Quinn
Michael J. Karwoski (P26658)                    John P. Quinn
26015 Felicity Landing                          2003 Military Street
Harrison Township, MI 48045                     Detroit, MI 48209
(313) 378-7642                                  (313) 673-9548
mjkarwoski@alumni.nd.edu                        quinjohn@umich.edu


Dated:  August 18, 2014

14

EXHIBIT A


Proposed Order

(We understand the Court will decide this motion along with several others.  A proposed order is
not appropriate.)

15

EXHIBIT B

Notice of Motion and Opportunity to Object

(We understand the Court intends to decide this and similar motions without waiting for
responses.  Other parties will receive notice via electronic filing.  A Notice of Motion and
Opportunity to Object seems misleading and therefore inappropriate.)

16

EXHIBIT C

None (Brief not required.)

17

EXHIBIT D

Certificate of Service

18

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

In re

                                                Chapter 9

CITY OF DETROIT, MICHIGAN,                      Case No. 13-53846

               Debtor.                      Hon. Steven W. Rhodes
_____/

CERTIFICATE OF SERVICE

     I, Michael J. Karwoski, hereby certify that the Joint Motion of Objecting Creditors

Michael J. Karwoski and John P. Quinn for Participation in the Confirmation Hearing and

accompanying exhibits, if any, were filed and served via the Court's electronic case filing and

noticing system on August 18, 2014.

                                     /s/ Michael J. Karwoski

EXHIBIT E

Affidavits
(Not applicable.)

20

EXHIBIT F

Documentary Exhibits
(Not Applicable)

21