## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No.: 13-53846 |
| Debtor. | Hon.  Steven W. Rhodes |

## CITY OF DETROIT'S BRIEF SUPPORTING
## THE ADMISSION OF THE REPORT OF
## COURT-APPOINTED EXPERT, MARTHA E. M. KOPACZ

The City of Detroit, Michigan (the "City") submits this brief supporting the admission of the report of court-appointed expert, Martha E. M. Kopacz, into evidence, and respectfully states as follows:

## INTRODUCTION

1.    Martha E. M. Kopacz is a Senior Managing Director with Phoenix Management Services, LLC.  On April 22, 2014, the Court appointed Ms. Kopacz as an independent expert to "investigate and reach a conclusion on: (a) Whether the City's plan is feasible as required by 11 U.S.C. § 943(b)(7); and (b) Whether the assumptions that underlie the City's cash flow projections and forecasts regarding its revenues, expenses and plan payments are reasonable."  Order Appointing Expert Witness (Docket #4215).  This appointment followed the Court's search for an expert with "outstanding qualifications" in municipal finance, budgeting, and

1

planning who "[i]s able to give an opinion that is based on sufficient facts or data and that is the product of reliable principles and methods and the application of those principles and methods to the case." Order Regarding the Solicitation of Applications (Docket #3610).

2. Ms. Kopacz and a team of assistants accomplished this task by conducting an extensive, months-long investigation and review of the Plan and its underlying financial projections. This comprehensive study entailed conducting hundreds of interviews with key personnel and stakeholders; reviewing and analyzing documents relating to the City's Plan and finances, as well as the City's data and third-party information; and critiquing the methodology, data, and information underlying the City's financial projections.

3. Based on this searching review, Ms. Kopacz concluded that the Plan is feasible and that its underlying financial projections are reasonable. *See* Kopacz Report at 10. Her 226-page expert report submitted on July 18, 2014 sets forth in careful and thorough detail the bases for these conclusions.

4. As explained below, Ms. Kopacz's extensive report should be admitted into evidence to explain the bases of her opinions, a permissible purpose under the Federal Rules of Evidence and the rule against hearsay. *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728–29 (6th Cir. 1994). Such admission will serve judicial economy in this lengthy trial by streamlining the Court's direct

examination of Ms. Kopacz and aiding the Court in navigating the extensive evidence.

## ARGUMENT

### I.    MS. KOPACZ'S EXPERT REPORT IS ADMISSIBLE.

5.    The Sixth Circuit and other courts have held that an expert report is "hearsay" that may not be used as a vehicle to admit otherwise inadmissible evidence "for the truth of the matter" asserted.  *See Engebretsen*, 21 F.3d at 728; *see also* Syncora Br. In Opp. To The Admissibility Of The Expert Report Of Martha E.M. Kopacz ¶¶ 8–11 (Docket #6800).  Nonetheless, the Sixth Circuit has directed that the report of a testifying expert is admissible as a roadmap "'to explain the basis of the expert's opinion,'" even if it includes hearsay or other inadmissible evidence relied upon by the expert.  *Engebretsen*, 21 F.3d at 728–29 (quoting *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261–62 (9th Cir. 1984)).[1]  As the Sixth Circuit has explained, Rules 702 and 703 "carve out" an exception to the rule against the admission of hearsay by authorizing the admission of underlying facts and data "for explanatory purposes."  *Id.* at 729; *see also Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) ("An expert is permitted to disclose hearsay for the limited purpose of explaining the basis for his

---

[1] *See also Lewis v. Rego Co.*, 757 F.2d 66, 73–74 (3d Cir. 1985) (finding basis for expert's opinion admissible); *Baumholser v. Amax Coal Co.*, 630 F.2d 550, 552-53 (7th Cir. 1980) (same); *Eaves v. United States*, 2009 WL 3754176 (W.D. Ky. Nov. 5, 2009) (similar).

expert opinion.").

6.    The Sixth Circuit's holding comports with the rules governing expert testimony.   For example, in formulating her opinions, an expert may rely on materials outside the record—including otherwise inadmissible materials—so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  Fed. R. Evid. 703.  A court may even allow the expert to testify regarding such inadmissible materials for the purposes of explaining how the expert reached her opinions and of "assisting the [factfinder] in evaluating [the] expert's opinion."   Advisory Committee's Notes on Fed. Rule Evid. 703, 28 U. S. C. App., p. 361.

7.    At the same time, an expert may offer opinion testimony "without first testifying to the underlying facts or data."  Fed. R. Evid. 705.  In fact, direct examination need not probe the bases of the expert's opinion *at all* because the Federal Rules "'place the full burden of exploration of the facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination.'"  *In re John Richards Homes Bldg. Co.*, 439 F.3d 248, 264 (6th Cir. 2006) (quoting *Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980)); *see also id.* ("[A]n opposing party who would challenge the facts underlying the expert's opinion must do so by cross-examination.").[2]

_____

[2] *See also Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc.*, 851

8.     Admission of Ms. Kopacz's expert report would serve both of these purposes—and, in fact, give the Court the best of both worlds.  Under this scenario, the Court would have Mr. Kopacz's report available as a roadmap to "explain," and to assist the Court in evaluating, her opinions and conclusions. *Engebretsen*, 21 F.3d at 729.  Moreover, as this Court has recognized, admission of the report would permit the Court to streamline its direct examination to the key elements of Mr. Kopacz's opinions, and to forego examining her regarding the bases and explanations for those opinions already contained in her report. 8/6/2014 Hrg. Tr. at 15 ("[T]he reason why I would promote this to you is that it seems logical that if her report is in evidence, the direct examination of her will be much more expeditious than if her report is not in evidence.") (Ex. A).  And, of course, Ms. Kopacz will be subject to cross-examination by adverse parties who wish to explore "the facts and assumptions underlying" her conclusions.  *In re John Richards Homes Bldg. Co.*, 439 F.3d at 264.

9.     Thus, contrary to Syncora's argument, *see* Syncora Br. In Opp. To The Admissibility Of The Expert Report Of Martha E.M. Kopacz ¶¶ 8–11, the rule

---

F.2d 540, 545 (1st Cir. 1988) ("[I]f in arriving at his opinion the expert has reasonably relied on facts or data before trial, the basis for the opinion need not be disclosed as a condition to admitting the testimony.  The burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion."); *Lewis*, 757 F.2d at 74 ("Although it is not required that the bases for experts' opinions be disclosed before an opinion is given, the bases of an opinion may be testified to on direct examination and, if inquired into on cross-examination, must be disclosed.").

against hearsay does not foreclose admission of Ms. Kopacz's report here.  In the first place, the Sixth Circuit has made clear that, *notwithstanding* the hearsay rule, an expert report—including any inadmissible evidence it contains—is admissible "to explain the basis of the expert's opinion." *Engebretsen*, 21 F.3d at 729 (internal quotation marks omitted).

10.    Moreover, as explained, Ms. Kopacz will be subject to cross-examination, which is the appropriate method for adverse parties to "challenge the facts underlying [her] opinion." *In re John Richards Homes Bldg.*, 439 F.3d at 264; *see also United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("Where an adversary party has full opportunity to refute an expert's testimony during cross-examination, exclusion due to the danger of misleading the [factfinder] is generally inappropriate.").

11.    Finally, this is a bench trial, so there is no risk of misleading or confusing a jury.  The Court's traditional discretion "in the matter of the admission or exclusion of expert evidence," *United States v. Jones*, 107 F.3d 1147, 1152 (6th Cir. 1997) (internal citation and quotation marks omitted), "is particularly broad in a bench trial," *United States v. Demjanjuk*, 367 F.3d 623, 633 (6th Cir. 2004). "'When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose.'"

*Ambrose v. Roeckeman*, 749 F.3d 615, 621 (7th Cir. 2014) (quoting *Williams v. Illinois*, 132 S. Ct. 2221, 2235 (2012) (plurality op.)); *see also Williams*, 132 S. Ct. at 2234–35 (plurality op.) ("In bench trials, . . . the Federal Rules place no restriction on the revelation of such information to the factfinder.").[3]

12.     Thus, governing Sixth Circuit law permits the Court to advance judicial economy and to streamline the trial by admitting Ms. Kopacz's report as a roadmap "to explain the basis of [her] opinion." *Engebretsen*, 21 F.3d at 729.

## II.   MS. KOPACZ'S THOROUGH REPORT WILL BE HELPFUL TO THE COURT.

13.     Admission of Ms. Kopacz's comprehensive report will aid the Court in navigating the voluminous evidence and in understanding the crucial questions presented in this case.     The Court sought an expert with "outstanding qualifications" in municipal finance, budgeting, and planning who "[i]s able to give an opinion that is based on" sufficient facts and data and reliable methodology.     Order Regarding the Solicitation of Applications.     The Court appointed Ms. Kopacz from among the pool of several seemingly well-qualified applicants and ordered her to "investigate and reach a conclusion on" whether the Plan is feasible and whether the City's financial assumptions are reasonable.     Order

---

[3] Rule 703's balancing test weighing the "probative value" of inadmissible evidence against its "prejudicial effect" applies only to disclosure to a jury and, thus, is inapplicable here. Fed. R. Evid. 703; *Ambrose*, 749 F.3d at 621 (Rule 703 limits "the admissibility of such evidence only as to juries").

Appointing Expert Witness (Docket #4215).

14.    Ms. Kopacz is eminently well-qualified to opine on these matters of municipal finance, budgeting, and planning.  She has extensive experience in assisting stakeholders in analyzing business operations and reorganization possibilities.  *See* Kopacz Report at Ex. 1.  Ms. Kopacz "has led or participated in over 100 consulting and restructuring engagements representing companies, debtors, investors, creditor committees, banks and Chapter 11 Trustees."  *Id.*  Ms. Kopacz has also "prepared dozens of financial projections for clients and reviewed and critiqued dozens more, prepared by others."  *Id.*

15.    Ms. Kopacz's opinions rest on sufficient facts and data and reflect a reliable methodology.  Indeed, Ms. Kopacz's 226-page report itself bears the hallmarks of a well-conceived and carefully executed investigation and analysis into the issues that the Court directed her to consider.  Ms. Kopacz and her team "conducted more than two hundred interviews and fact gathering meetings" with stakeholders and other individuals with knowledge, including elected and appointed officials, the City's Emergency Manager, City employees, and retained advisors, among others.  *Id.* at 4, 10.

16.    In addition to the interviews, Ms. Kopacz and her team conducted an extensive analytical review of the methodology and assumptions underlying the City's financial projections.  *See id.* at 4–5.  To this end, the team reviewed and

analyzed documents relevant to the City's plan and financial projections, as well as City data and third-party information, which provided additional background and perspective on the City's finances. *Id.* The team followed review of this information with additional questions and requests for information from the City, its advisors, and other stakeholders. *Id.* at 5. In the course of this iterative process, Ms. Kopacz's team obtained and reviewed a vast array of documents relevant to the City's projections. *See id.* at Ex. 2.

17. Ms. Kopacz's report documents in detail the facts, materials, methods, and other bases for her opinions that the City's Plan is feasible and that its underlying financial assumptions are reasonable. Admitting Ms. Kopacz's report therefore will aid the Court in resolving those linchpin questions, without burdening the Court with a protracted direct examination in this already lengthy trial.

WHEREFORE, for the foregoing reasons, the Court should admit Ms. Kopacz's expert report.

Dated:  August 18, 2014          Respectfully submitted,

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

/s/ Deborah Kovsky-Apap
Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2014, I electronically filed the foregoing *City of Detroit's Brief Supporting the Admission of the Report of Court-Appointed Expert, Martha E. M. Kopacz* with the Clerk of the Court, which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this case.


Dated: August 18, 2014                    /s/ Deborah Kovsky-Apap
                                          Deborah Kovsky-Apap (P68258)

# EXHIBIT A

```
                    UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF MICHIGAN
                           SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                                .        Detroit, Michigan
                                .        August 6, 2014
                   Debtor.      .        9:00 a.m.
. . . . . . . . . . . . . . . . .

         HEARING RE. STATUS CONFERENCE RE. PLAN CONFIRMATION
          PROCESS (#6376) SIXTH AMENDED ORDER ESTABLISHING
        PROCEDURES, DEADLINES AND HEARING DATES RELATING TO
                 THE DEBTOR'S PLAN OF ADJUSTMENT
             BEFORE THE HONORABLE STEVEN W. RHODES
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:         Jones Day
                        By:  HEATHER LENNOX
                        222 East 41st Street
                        New York, NY  10017
                        (212) 326-3837

                        Jones Day
                        By:  THOMAS CULLEN
                             GREGORY SHUMAKER
                        51 Louisiana Avenue, N.W.
                        Washington, DC  20001
                        (202) 879-3939

For National            Sidley Austin, LLP
Public Finance          By:  GUY NEAL
Guarantee Corp.:        1501 K Street, N.W.
                        Washington, DC  20005
                        (202) 736-8041

For Assured             Chadbourne & Parke, LLP
Guaranty Municipal      By:  ROBERT SCHWINGER
Corp.:                  30 Rockefeller Plaza
                        New York, NY  10112
                        (212) 408-5364

For the Official        Dentons US, LLP
Committee of            By:  SAM J. ALBERTS
Retirees:               1301 K Street, NW, Suite 600, East Tower
                        Washington, DC  20005
                        (202) 408-7004
```

1    that the city will effectively be, you know, laying the

2    foundation for with respect to things like forecasts and

3    pensions, and I think it may be a little bit harder both for

4    any parties either to cross her or examine her until there's

5    been a little more of the sort of working familiarity that

6    comes with taking testimony from others on those issues.

7            THE COURT:  Um-hmm.

8            MR. HACKNEY:  So for what it's worth, I think my

9    view would still be to do her after the city has put all the

10   evidence in, but the --

11           THE COURT:  Does it address your concerns to make

12   her available for further or extended cross-examination after

13   the city's case?

14           MR. HACKNEY:  Yeah, it might.  I guess I was really

15   thinking not so much as a tactician from my own client's

16   narrow perspective but just more generally from the process

17   standpoint I think that I offer you that view.

18           THE COURT:  All right.  Well, let me think about

19   this one then without resolving it at this point.  Okay.  So

20   the next issue is the admissibility or the admission of her

21   report into evidence, and the reason why I would promote this

22   to you is that it seems logical that if her report is in

23   evidence, the direct examination of her will be much more

24   expeditious than if her report is not in evidence because if

25   her report is not in evidence, then the substance of it will

1  have to be brought out virtually entirely through

2  examination, whereas if the report is in evidence, I can just

3  focus on the questions I have for her, so can we have an

4  agreement to admit her report into evidence?

5      MR. CULLEN:  No objection from the city, your Honor.

6  I agree with the -- and I agree with the rationale that

7  otherwise we'd go through a long process.  The middle

8  alternative is she could offer the report, say, "Is this your

9  report?  Do you still stand by it?" et cetera, and then we

10  could do -- offer that into evidence on that basis, but I

11  think having it into evidence to start with simplify the

12  procedure a lot.

13      MR. HACKNEY:  So, your Honor, regrettably, we don't

14  share the view.  We're not able at this time to stipulate

15  either to her credentials or to the admission of her report,

16  but what I did want to suggest today was that I thought to

17  the extent you haven't already read her report -- I think it

18  sounds like that you have read her report, that you had a

19  copy of it.

20      THE COURT:  Oh, yes.

21      MR. HACKNEY:  Yes.  I do think it would be useful

22  for the Court to have read her report, as you have, and to

23  read her deposition, and we don't have an objection with the

24  Court reading her deposition.  The transcript is available,

25  and we can get it to you as soon as you'd like.

1          THE COURT:  Um-hmm.

2          MR. HACKNEY:  But we have questions about the

3     admissibility of her opinion testimony that I think we're

4     going to be raising with you, so I'm not able to stipulate to

5     that, and I apologize.  I understand it would be

6     streamlined --

7          THE COURT:  All right, but no apology necessary.

8     Okay.  So that answers Question D, which is in regard to the

9     stipulation to her qualifications as an expert; is that

10     right?  What were you going to say, sir?  I'm sorry.

11          MR. SOTO:  Your Honor, the same goes with respect to

12     FGIC.  We're considering some aspects of the report -- and,

13     again, it's highlighted in the testimony that Mr. Hackney is

14     referring to -- that may be portions of a motion in limine

15     and maybe even some other motions.  That's the reason why we

16     agree.

17          THE COURT:  Okay.

18          MR. CULLEN:  Your Honor, if I may, Cullen, again,

19     for the city.  It is possible -- we would stipulate the

20     report in, but it is possible if the Court is going to read

21     the deposition on which the challenge to her qualifications

22     and opinions might have rested and has already read the

23     report, it might be -- it might be more expeditious if it

24     can't be stipulated for the Court to just decide on that.  It

25     could be offered into evidence, and the Court could make a

1   decision on whether or not -- whether or not it would be
2   admitted into evidence based upon a short motion or something
3   like that.

4           THE COURT:  Well, let's process this logically.  If
5   there are objections to her qualifications or methodologies
6   or other Daubert kinds of issues, then those should be
7   processed before the issue of the admissibility of the report
8   itself.  I know there's a dispute in the case law on whether
9   reports of experts are inadmissible hearsay or are admissible
10  when the witness is available to be cross-examined on it at
11  trial, and I suppose I could ask you to brief those issues.
12  Mr. Hackney, was it your intent -- or let me just ask the
13  creditors generally.  Was it the intent of anyone to file a
14  Daubert motion in relation to Ms. Kopacz and her testimony?

15          MR. HACKNEY:  So that is something, your Honor -- as
16  you know, we have been doing a lot of different things
17  lately, and it's moving at quite a pace, but I will say
18  that's something that's under active consideration, so --

19          THE COURT:  Okay.  Well, we probably don't need an
20  answer to that question now, but the sooner the better.

21          MR. HACKNEY:  Yeah.  That's one of the --

22          THE COURT:  When is our final pretrial conference at
23  this point?

24          THE CLERK:  The 19th.

25          THE COURT:  The 19th, so that's in a little less

1  than a couple of weeks.

2         MR. HACKNEY:  I wonder if a way to stage this, your

3  Honor, is to sort of go in pieces, which is it seems like

4  there's a general agreement that you can read her report and

5  her deposition.  Then we can suss out whether we'll be

6  bringing motion practice against her that will allow you to

7  further refine your views on what she did, and then perhaps

8  that will feed into --

9         THE COURT:  Um-hmm.

10        MR. HACKNEY:  -- when you want her to testify and --

11        THE COURT:  Okay.

12        MR. HACKNEY:  -- how you'll resolve some of the --

13        THE COURT:  That's a good point.  Does anyone object

14 to the Court reviewing Ms. Kopacz's deposition at this point

15 in time?  All right.  Then I will accept your offer,

16 Mr. Hackney, to make that transcript available to me at your

17 earliest convenience.

18        MR. HACKNEY:  Someone listening on the phone is

19 going to send it.

20        MS. KOPACZ:  Your Honor, it's Marti Kopacz.  I

21 wanted to let the Court know as well as everybody at the

22 hearing I do intend to file a supplemental report -- it will

23 be very brief -- really for a couple of purposes.  One is at

24 the time that I issued my report, the fifth amended plan had

25 just been filed, and I did not have the opportunity to read