UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**MOTION *IN LIMINE* BARRING THE CITY FROM INTRODUCING EVIDENCE REGARDING THE COMBINED RECOVERIES OF PENSION AND OPEB CLAIMS**

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion *in limine* (the "Motion") to bar the the City of Detroit (the "City" or the "Debtor") from introducing evidence regarding the combined recoveries of the Pension Claims (Classes 10 and 11) and the OPEB Claims (Class 12). In support of their motion, Syncora respectfully states as follows:

## INTRODUCTION

1. Perhaps recognizing that the significant discrimination between Class 9, on the one hand, and Classes 10 and 11, on the other, poses an insurmountable hurdle to plan confirmation, the City has taken the position that the recoveries of Pension Claims (Classes 10 and 11) and the OPEB Claims (Class 12) should be combined. According to the City, because these classes hold "closely-related obligations," they should be considered together for purposes of any unfair

KE 33021498.5

discrimination analysis.[1]  While the combination of these classes may[2] have the desired effect of reducing pensioner recoveries, evidence reflecting the combined recoveries of pensioners is not relevant to the unfair discrimination analysis and should therefore be excluded.

2. ***First***, the Bankruptcy Code requires a class-by-class analysis and not, as the City contends, a claim-holder-by-claim-holder analysis.  For example, 11 U.S.C. § 1123(a) requires that plans designate "classes of claims," not holders of "closely-related obligations."  And, under section 1129(b)(1) of the Bankruptcy Code, a court can confirm a plan only "if the plan does not discriminate unfairly, and is fair and equitable, with respect to ***each class of claims or interests*** that is impaired under, and has not accepted, the plan."  Tellingly, there is nothing in the Bankruptcy Code — or related case law — that allows a debtor to aggregate claims across class lines for purposes of determining creditor recoveries.

3. ***Second***, the City separately classified Pension and OPEB Claims, as required by the Bankruptcy Code.  It cannot now, in an attempt to defeat an unfair discrimination argument, reverse-course and ignore the classification scheme set

---

[1]  *Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 5034], ¶ 57.

[2]  In fact, the notional recovery for OPEB creditors set forth in the Plan is understated.  As a result, aggregating the true recoveries of these classes would do little to reduce discrimination vis-à-vis classes 9 and 14.

2

forth in the Plan in evaluating whether any discrimination under the plan is "unfair." Rather, the City must abide by the proper classifications — as well as any implications those classifications may have for unfair discrimination.

4. ***Third***, despite the City's representations, the Pension Claims and the OPEB Claims are not "closely-related obligations." The Pensions Claims are held by the Retirement Systems,[3] whereas the OPEB Claims are held by the individual retirees. Furthermore, as the City concedes, only 69% of PFRS retirees and 56% of GRS retirees also hold OPEB Claims. Some 11,000 retirees have no OPEB claim at all. Thus, even if the City could aggregate the recoveries of "closely-related obligations" for unfair discrimination purposes, it would not be permitted in this situation given that the claims are not held by the same creditors.

5. ***Fourth***, Mr. Orr testified during his deposition that he could not recall whether he analyzed the combined recoveries of Classes 10, 11, and 12 when determining the appropriate level of discrimination. Furthermore, when asked to provide any written analyses of combined creditor recoveries, the City stated that it

---

[3] Although the Pension Systems "allowed" the retirees to vote individually, even Debtor's counsel acknowledged that the claims actually belonged to the Retirement Systems. (*See, e.g.,* Ex. 6A, Eligibility Hr'g Tr. 40:2-41:6. Nov. 8, 2013 ("THE COURT: Before you go on, this question. So is it the city's position that with regard to the pension liability underfunding, the creditors—the only creditors were the two plans and not retirees themselves? MR. BENNETT: Your Honor, I think that's—at the end of the day, I think that's probably right . . . We think that's right.")).

3

13-53846-tjt    Doc 6975    Filed 08/22/14    Entered 08/22/14 15:38:59    Page 3 of 15

could not locate any such documents. As a result, any evidence of combined creditor recoveries is not relevant to the City's justification for discrimination and is therefore inadmissible.

6. Accordingly, Syncora respectfully requests that the Court bar the City from introducing evidence regarding the combined recoveries of the Pension Claims (Classes 10 and 11) and the OPEB Claims (Class 12).

## JURISDICTION

7. The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

8. Syncora respectfully moves the Court to bar the City from introducing evidence regarding the combined recoveries of the Pension Claims (Classes 10 and 11) and the OPEB Claims (Class 12) and enter an order substantially in the form of Exhibit 1 attached hereto.

## BACKGROUND

9. On the face of the Plan, PFRS Pension Claims are set to receive 59% recoveries and GRS Pension Claims are set to receive 60% recoveries.[4] In

---

[4] As detailed in the *Pre-Trial Brief of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. Regarding Proposed Confirmation of the Debtor's Plan of Adjustment,* the PFRS and GRS Pension Claims are actually receiving more

contrast, the stated plan recoveries for COP Claims is 10% — a disparity of nearly 500%.[5]

10. In its Consolidated Reply, the City claims that this significant discrimination is not as large as it appears. According to the City, the *Corrected Fifth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt No. 6379] (the "Plan") "separately classifies otherwise closely-related obligations to the City's pensioners: PFRS Pension Claims (Class 10), GRS Pension Claims (Class 11), and OPEB Claims (Class 12)."[6] The City also notes that "[a]pproximately 69% and 56% of holders of claims in Classes 10 and 11, respectively, also hold OPEB Claims."[7] Yet rather than treat each of the classes separately, the City claims that for unfair discrimination purposes the Court should "consider the Plan's overall treatment of the *holders* of such claims"[8] and essentially aggregate the OPEB claimants' 10%-13% recovery with the Pension

---

than 59% and 60% recoveries, respectively. As a result, the disparity between the Pension Claims and Class 9 is much greater than the City suggests.

[5] *Fourth Amended Disclosure Statement With Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 4391], at 35.

[6] *Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 5034], ¶ 57.

[7] *Id*.

[8] *Id.*

5

Claim recoveries.[9] By doing so, the City is purportedly able to reduce the overall percentage recovery for retirees by 15%-24%, from approximately 60% to 36%-45%.[10]

11. At his deposition, Ken Buckfire, one of the City's investment bankers, testified that he considered Classes 10, 11, and 12 together when determining the pensioners' total recovery and that he provided advice to Mr. Orr on this subject:

> Q. I also heard you say that in deciding what recoveries were appropriate for classes 10 and 11, which are the pension classes, that you considered the fact that many of the members of those classes were also members of class 12, which is the OPEB class, and that you considered all three classes together in evaluating their total recovery; is that correct?
>
> A. Yes.
>
> Q. And that was advice that you gave to the EM that he accepted, correct?
>
> A. I'm not sure whether he accepted it or not, but it was my financial observation that the people who held the pension claims were often the same people who held the healthcare claims, so they would value money coming from the City more or less in the same pot.
>
> Q. Okay, so your testimony is that as one of the people that was playing an advisory role with respect to the POA, this was how

---

[9] *Id.*

[10] *Id.* Notably, the City's calculation of a lower overall percentage recovery is based on the highly dubious OPEB claim number that was "negotiated" by the City and Retiree Committee. Syncora disputes the accuracy of the City's OPEB and Pension valuations.

> you looked at the appropriate recoveries for classes 10, 11, and 12, correct?
>
> A. That's one of way of looking at it, yes.
>
> Q. And did you give the EM your advice on that subject?
>
> A. I did.
>
> Q. Do you -- do you know whether he accepted your advice?
>
> A. I believe it was one of the factors he took into account in ultimately approving the plan.[11]

12. During his deposition, however, Mr. Orr testified that he could not recall whether he looked at the combined recoveries of Classes 10, 11, and 12 when determining the appropriate level of discrimination:

> Q. I guess what I'm trying -- let me put it into normal language. In evaluating the level of discrimination that you were approving, did you look at classes 10 and 11, which are the -- what I call the pension classes, and class 12 in conjunction with another to understand the combined rates of recovery and then evaluate that in comparison to the COPs holders?
>
> A. Yeah, we -- we may have, I just don't recall with specificity doing it that way. I know that, as we've discussed here this morning, just a few minutes before the break, I said I looked at 10, 11, and 12. I don't know if it was as -- as calculated as you're suggesting I look at 10, 11 and 12 and then decide that, you know -- what is the COPs, 16 or 17 -- decide that because there's this recovery we should affirmatively drive this number

---

[11] Ex. 6B, K. Buckfire Dep. Tr. at 221:22-222:22, July 16, 2014.

7

down. I don't -- I don't recall it being that -- that designed, but it may have, I just don't recall.[12]

13. Similarly, when asked whether he had looked at the composite recoveries of any other creditors, Mr. Orr testified that he could not remember:

> Q. As you sit here today, though, you can't remember for sure whether you looked at the composite recoveries of creditors --
>
> A. Right.
>
> Q. -- as opposed to classes?
>
> A. Yeah, I don't remember.
>
> Q. Okay, so for example, did you consider how many UTGO holders were also LTGO holders when evaluating their combined recovery?
>
> A. Yeah, there may be some analysis, I just don't remember.
>
> Q. Did you consider whether COPs holders were also holders of other claims and consider their combined recovery in deciding what level of discrimination should be applied?
>
> A. I don't remember.[13]

14. Despite his inability to recall whether he considered combined creditor recoveries, Mr. Orr testified that he thought there were written "analyses done about creditor classes, in particular, obviously with the retirees and actives

---

[12] Ex. 6C, K. Orr Dep. Tr. at 242:7-242:24, July 22, 2014.

[13] *Id.* at 244:10-25.

and OPEB claims" and "some of the insurers."[14] Yet, when counsel for Syncora requested the "written analysis of combined creditor recoveries" that Mr. Orr referenced, the City stated that it was "unable to locate any combined creditor recovery analysis like the one you were questioning Kevyn about."[15]

## BASIS FOR RELIEF

15. Under Federal Rule of Evidence 401, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether evidence is relevant is determined in the context and arguments of a particular case.[16] Evidence that is not relevant is not admissible.[17] In this case, evidence regarding the combined recoveries of Classes 10, 11, and 12 does not constitute relevant evidence and is therefore inadmissible.

16. *First*, the provisions of the bankruptcy code demonstrate that unfair discrimination requires a class-by-class analysis, not a claim-holder-by-claim-holder analysis. This class-by-class analysis is clearly reflected in section

---

[14] *Id.* at 243:20-245:10.

[15] Ex. 6D, July 30, 2014 email from G. Shumaker to S. Hackney at 2.

[16] *Sprint/United Mgmt. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

[17] FED. R. EVIDENCE 402.

1129(b)(1), which provides that "the court . . . shall confirm the plan . . . if the plan does not discriminate unfairly, and is fair and equitable, with respect to **each class of claims or interests** that is impaired under, and has not accepted, the plan."[18] A class-by-class analysis is further corroborated by 11 U.S.C. § 1123(a), which requires that plans designate "classes of claims" and not holders of "closely-related obligations."[19]

17. Tellingly, the City's reply cites no bankruptcy provisions or cases to support its argument that individual creditors' claims can be considered on an aggregate basis when evaluating unfair discrimination. Indeed, the opposite is true — creditors often hold claims in different classes in bankruptcy, and such overlap does not result in an analysis of aggregate creditor recoveries.[20] Thus, because the analysis that the City advocates is not permitted under the Bankruptcy Code, any evidence regarding aggregate creditor recoveries is not relevant or admissible.

---

[18] 1129(b)(1) (emphasis added).

[19] *See also In re Griswold Bldg., LLC,* 420 B.R. 666, 707 (Bankr. E.D. Mich. 2009) ("In classifying claims, the general rules are that '[d]issimilar claims may not be classified together; [and] similar claims may be classified separately only for a legitimate reason." (citing *In re Chateaugay Corp.,* 89 F.3d 942, 949 (2d Cir. 1996))).

[20] *See, e.g., In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 65 (Bankr. S.D.N.Y. 2006).

18. ***Second***, the City's argument for the aggregation of the recoveries of Classes 10, 11, and 12 ignores the separate classification of the Pension and OPEB Claims.[21] Notably, in its initial *Plan for the Adjustment of Debts of the City of Detroit*, the City classified Pension and OPEB Claims together. Subsequently though, the City was forced to abandon this illegal classification scheme as part of its discussions with the Retiree Committee — and presumably had its reasons for doing so.[22] The City must abide by the decisions reflected in the classification scheme in the Plan.

19. ***Third***, as a practical matter, the Pension Claims and OPEB Claims are not "closely-related obligations." As counsel for the City has already conceded, the Retirement Systems — not the individual retirees — hold the Pension Claims.[23]

---

[21] *Corrected Fifth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 6379], Art. II.B.1.

[22] *Id.* at 53 ("The City and the Retiree Committee have reached a settlement related to the allowance and calculation of the OPEB Claims in Class 12 and the treatment of such Allowed OPEB Claims, the terms of which settlement are reflected in the Plan.").

[23] (Ex. 6A, Eligibility Hr'g Tr. 40:2-41:6. Nov. 8, 2013 ("THE COURT: Before you go on, this question. So is it the city's position that with regard to the pension liability underfunding, the creditors—the only creditors were the two plans and not retirees themselves? MR. BENNETT: Your Honor, I think that's—at the end of the day, I think that's probably right . . . We think that's right.")).

In contrast, individual creditors hold the OPEB Claims.[24] Thus, they are, as counsel for the the Retiree Committee noted in response to the City's initial decision to classify Pension and OPEB Claims together, "two different claims":

> MS. NEVILLE: Your Honor, [the classification of Pension and OPEB Claims together] is a serious question for the retirees because their other post-employment benefit claims are classified in the same class as their pension claims, so we would be soliciting ballots -- if we don't resolve this issue on the disclosure statement deadline, we would be sending people ballots that wouldn't necessarily be the vote for the class or would be the vote for the class that would be inappropriate because **the OPEB claim and the pension claim are two different claims.** And at the moment, for the police and fire-fighters, the OPEB and the pension claims are classified in the same class, and the same thing is true for the General Retirement System. **They're two different claims. They get different treatment within the class**, and so I think we have to resolve at the disclosure statement stage before we solicit whether we have the proper classification.[25]

20. Recognizing that the Pension and OPEB Claims are two different claims, the City subsequently recognized it had no choice but to separately classify them. Thus, contrary to the City's claim,[26] there is no symmetry between the

---

[24] *Fourth Amended Disclosure Statement With Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 4391], at 40 ("OPEB Claims: Consists of all claims against the City **held by retirees** . . .) (emphasis added).)

[25] Ex. 6E, Hr'g Tr. 41:1-16. Mar. 5, 2014.

[26] *Id*. ("[T]he Objecting Parties fail to consider the Plan's overall treatment of the *holders* of the [Pension and OPEB Claims]." (emphasis in original).)

holders of the Pension and OPEB claims,[27] and they cannot be considered in the aggregate — even if that were permissible under the Bankruptcy Code.

21. ***Fourth***, based on Mr. Orr's deposition testimony, it is not even clear that he examined the combined recoveries of the Pension and OPEB Classes when determining the appropriate level of discrimination. And, when Syncora attempted to corroborate Mr. Orr's testimony that he may have prepared written analyses regarding the combined recoveries of the Pension and OPEB Classes, the City stated that it could not locate any such analyses. If Mr. Orr did not actually consider the combined recoveries of the Pension and OPEB Classes — which appears to be the case — any testimony on this subject is necessarily irrelevant to the unfair discrimination analysis and should therefore be excluded as inadmissible.[28]

---

[27] Only 69% of PFRS retirees and 56% of GRS retirees also hold OPEB claims. *Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 5034], ¶ 57. Furthermore, it should be noted that approximately 88% of the OPEB Class voted in favor of the Plan — a greater "landslide" than the claim receiving the supposedly more gentle treatment.

[28] If Mr. Orr <u>did</u> rely on the "combined class recovery" concept in determining the amount of discrimination to be practiced, this would provide another basis to deny confirmation of the Plan.

## CONCLUSION

22. For the foregoing reasons, Syncora respectfully requests that the Court bar the City from introducing evidence regarding the combined recoveries of the Pension Claims (Classes 10 and 11) and the OPEB Claims (Class 12) and enter an order substantially in the form of <u>Exhibit 1</u> attached hereto.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 22, 2014                    Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*