**Exhibit 6A**

**Nov. 8, 2013 Eligibility Hearing Transcript**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF,

CITY OF DETROIT, MI
______________________________/

Case No. 13-53846
Detroit, Michigan
November 8, 2013
9:00 a.m.

IN RE: ELIGIBILITY TRIAL CLOSING ARGUMENTS
BEFORE THE HONORABLE STEVEN W. RHODES
TRANSCRIPT ORDERED BY: SHANNON DEEBY, ESQ.

APPEARANCES:

For the City of Detroit, MI:

GEOFFREY IRWIN, ESQ.
GEOFFREY STEWART, ESQ.
GREGORY SHUMAKER, ESQ.
THOMAS CULLEN, JR., ESQ.
MIGUEL EATON, ESQ.
Jones, Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
202-879-3939

BRUCE BENNETT, ESQ.
Jones, Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2452
213-243-2382

ROBERT HERTZBERG, ESQ. (P30261)
DEBORAH KOVSKY-APAP, ESQ. (P68258)
Pepper, Hamilton
4000 Town Center
Suite 1800
Southfield, MI 48075-1505
248-359-7333

PETER ELLSWORTH, ESQ. (P23657)
Dickinson, Wright
215 S. Washington Square
Suite 200
Lansing, MI 48933-1816
517-371-1730

anymore.

So with respect to this part, the city's demonstrated the desires to effect the plan. The plan is a -- is an outline -- that's all that's required, but it's actually more fleshed out than that. An outline of a plan that can be confirmed. We do think it's confirmable. I've also said before, that it will change, that's -- that's also clear.

And -- and I'm not going to come back to this point, but there's a -- there's -- there's an argument actually supported by the cases that when considering the requirements for good faith negotiations under -- under Bankruptcy Code Section 109(c)(5), that you also have to demonstrate that the plan you started with is a plan of adjustment that could conceivably be confirmed under Chapter 9. I think I've dealt with that issue, I'm not going to return to it in the interest of time.

But this brings us to an important aside. And -- and I'm not again going to repeat, but I endorse the state's argument that from the very beginning of this case, or from the very beginning of the -- of the Governor's administration when they focused on the situation in Detroit, that it was prudent as a matter of common sense, sensible planning, and because everyone else in the world was talking about it, to look at Chapter 9 as -- as something that might some day, if circumstances didn't get better, have to be considered for the City of Detroit.

The aside is to -- to basically inform the Court that actually the law that we just talked about, the law pressed by the opposition that the plan, that the -- that the city has to start with, is a plan that is a plan of adjustment, or an outline of a plan of adjustment that could be confirmed. That's actually a legal command that when you're confronting a municipality that has financial difficulties you have to start with Chapter 9.

Because if you don't understand what the rights, and powers, and obligations of a municipality are under Chapter 9, and what a plan adjustment would have to look like in the case of a Chapter 9 case, you can't start. So in addition to all of the, you know, very practical observations, and the fact that it's very sensible to pay attention to the same law that frankly your creditors are paying attention to when they're thinking about what they might have to do in an out of Court scenario, in this one circumstance the law actually commands an early look at the statute. So I think that if the law commands an early look at the statute, an early look at the statute cannot constitute evidence of a lack of good faith by anybody.

THE COURT: Before you go on, this question. So is it the city's position that with regard to the pension liability underfunding, the creditors -- the only creditors were the two plans and not the retirees themselves?

MR. BENNETT: Your Honor, I think that's -- at the end of the day, I think that's probably right. We expect it to be disputed, we understand it will be disputed. I think you will find that the -- the -- the -- I think you should ask them when they reach the podium.

We think that's right. That by the way, is the reason that the first people we asked about whether they could represent retirees in discussions that would ultimately affect their pensions was them. And they basically told us that we can fight to preserve our claims, but we can't compromise them.

THE COURT: Well, all right. I will -- I will look forward to your discussion of how this impacts your argument regarding impracticality.

MR. BENNETT: We'll get there. Okay. Well, we're there. Impracticality.

You know, back to the -- coming back to the opening argument, we started with, and we'd start with again, the number of bond issues that the city has. The fact that bond holders have the right, each individually, to consent to any impairment of their principal amount or of their interest.

And the -- the -- the one -- one place where you can find, I said this at opening also, a list of all the different issues, and demonstrate how numerous they are, are in the appendix to the proposal for creditors. There's a complete

list.

There's also -- it also reveals that many are insured, but some are not which is an additional complication. Mr. Buckfire testified that although talking to the insurers was a place to start, his -- his view was, because it's also the law, that they could just make recommendations and there were some issues as to which, according to this book, it's true, there were no -- there -- there are no insurers.

And so ultimately if an insurer is going to recommend something and you're going to send it out to a vote, you're going to get some yes votes and that's great but there's nothing you can do with respect to the no votes under applicable non-bankruptcy law.

And so with respect to the bond holders, while there was someone to talk to to get started, there was no way to get all the way home. And no one has suggested that there was a way to go all the way home.

So -- but the -- and the second part we said at opening, and again I'm -- I'm not going to repeat it here, is that frankly that's the end of the inquiry. Because impracticability with any one class means that out of Court negotiations are impracticable.

There are cases that say this, they're cited in our papers. I also spent some time thinking with the Court about the problem about, you know, how you would go about it if you