# Exhibit 6A

**June 26, 2014 Hearing Transcript**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: CITY OF DETROIT, MICHIGAN, . Docket No. 13-53846
. Detroit, Michigan
. June 26, 2014
Debtor. . 9:00 a.m.
. . . . . . . . . . . . . . . . . . . . .

HEARING RE. (#5259) STATUS CONFERENCE ON PLAN CONFIRMATION PROCESS (RE. FIFTH AMENDED ORDER ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT. STATUS HEARINGS REGARDING PLAN CONFIRMATION PROCESS; (#5285) CORRECTED MOTION TO QUASH SYNCORA'S SUBPOENA TO DEPOSE ATTORNEY GENERAL BILL SCHUETTE FILED BY INTERESTED PARTY BILL SCHUETTE; (#5250) MOTION OF THE CITY OF DETROIT FOR SITE VISIT BY COURT IN CONNECTION WITH THE HEARING ON CONFIRMATION OF THE CITY'S PLAN OF ADJUSTMENT FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#5300) JOINT MOTION TO QUASH SUBPOENAS DUCES TECUM FILED BY INTERESTED PARTIES A. PAUL AND CAROL C. SCHAAP FOUNDATION, CHARLES STEWART MOTT FOUNDATION, COMMUNITY FOUNDATION FOR SOUTHEAST MICHIGAN, HUDSON-WEBBER FOUNDATION, MAX M AND MARJORIE S. FISHER FOUNDATION, MCGREGOR FUND, THE FORD FOUNDATION, THE FRED A. AND BARBARA M. ERB FAMILY FOUNDATION, W.K. KELLOGG FOUNDATION, WILLIAM DAVIDSON FOUNDATION; (#5478) MOTION OF THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT TO DESIGNATE AND DETERMINE ADDITIONAL LEGAL ISSUE REGARDING METHODOLOGY FOR ASF RECOUPMENT FROM RETIREES FILED BY CREDITOR GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT; (#5442) MOTION FOR PROTECTIVE ORDER CITY OF DETROIT'S MOTION FOR ENTRY OF A PROTECTIVE ORDER STRIKING SYNCORA'S DEMAND IN ITS RULE 30(b)(6) DEPOSITION NOTICE FOR THE PERSONAL FINANCIAL INFORMATION OF ALL CITY RETIREES FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN; (#5436) MOTION TO COMPEL FULL AND FAIR RESPONSES TO SYNCORA'S INTERROGATORIES FILED BY INTERESTED PARTIES SYNCORA CAPITAL ASSURANCE, INC., SYNCORA GUARANTEE, INC.

BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE

me about the foundations' objections to the subpoenas, I said to him, "I can imagine how your clients feel," and he actually used the phrase that I used. I said, "I'm sure they feel like no good deed goes unpunished," that they're coming to the bankruptcy and giving money to the city's retirees and trying to do something helpful, and I can understand that from their perspective, but I laid out for him my perspective and why we had issued the subpoenas, and I laid out the substantive issues for him about what it is that the foundations have become involved in. And I'd like to frame that, if I could, and then lay out the key points that go towards the motion. But what we're talking about here in the grand bargain is something that the city itself has described as the cornerstone of the plan, so you pull out the cornerstone, the foundation falls. That's how important the transaction they've involved themselves is. The assets in question that are being conveyed are multi-billion dollar assets that are going away from the city. It's currently in the city. The city has title to the assets. After the transaction, they will be in public trust forever. And it is -- the foundation contribution piece for the assets is -- dials directly into the unfair discrimination argument because the city has now said that those are not city funds and should not be considered when you do the unfair discrimination analysis, and it has a dramatic impact on the

calculation of what the recoveries are under the plan if you include or exclude that. So I explained that to Mr. Bernstein, and we explained that in our motion for the purpose of showing that the foundations are in -- have involved themselves in the centerpiece of the most important part of the plan and that our discovery is aimed at exploring that for multiple reasons that I will go into but, in particular, for testing the assertion that these are, quote, unquote, not city funds, which is the first argument that they make in connection with the unfair discrimination point. So I will respectfully disagree with counsel here today that says we're trying to harass people, we're trying to intimidate people. It's not fair, and it's not a description of how I operate in this case. I will get to the issue of burden in a moment, if I could, but I think with respect to the issue of relevance, these are -- this is relevant information that we believe that the foundations possess. I'll speak to burden and then the privilege, if I could, at the end, your Honor. Whether the foundations would have contributed the money if the city had not agreed to transfer its art collection, that's relevant state of mind evidence that they possess. Whether the foundations were the ones that imposed on the city the requirement that all monies go to the retiree classes or whether the city was the one that proposed that to the foundations. The ability of the

foundations to pay their respective amounts is an important question that we want to explore. The sources of the funds that they are contributing to the grand bargain is also an important one that we want to explore for reasons I'll explain, the importance of the foundations of obtaining the exculpation they receive under the plan because the foundations actually do, I believe, under the plan receive an exculpation in connection with their contribution, so they actually are getting something from the plan. And then we have also sought information regarding the importance of the DIA to the Detroit community because that is something that has separately been raised by the city. Many of these foundations are ones that have contributed to the DIA in the past, and we are, thus, seeking to understand their view on the importance of the DIA to the community as an economic entity. That's a relevant issue to things the city has put at issue.

The two broad categories of information that we are seeking here can be roughly divided into, number one, what went into this deal and how it was structured. Could it have been structured differently in a way that allows either the art collection to be preserved as a city asset or, alternatively, monetized, or part of the art collection and/or whose idea was it that all of your money had to go to the retirees? You can imagine as a creditor who is on the

outside looking in that those are very important questions, and the city has already put these at issue because you'll remember in our pretrial conference before you where they described and laid out their arguments, they were saying things like, "It is the foundations that were requiring us to do this. We are -- you know, we're limited here. This is what they're insisting upon." And we want to test that assertion, so this goes to the fairness and equitableness of the grand bargain and the plan. It goes to the question of whether these are city funds or are not city funds, and it also goes to the business judgment exercised by the city with respect to the way it structured the grand bargain. There is no question in my mind that the subpoena seeks relevant and discoverable evidence relating to the cornerstone of the plan. There is no basis to find us as seeking to harass or intimidate these foundations.

I'd like to turn to the question of burden, your Honor, and end on the question of privilege because I think the privilege is going to be an important issue to resolve, but on the question of burden, one of the things I want to -- I want to point out two things. Mr. Bernstein and I did not have an opportunity to speak meaningfully about -- it was never on the table that if we narrowed this request this way or if we narrowed this request this way or the sorts of horse trading that go into a recovery that they would then sit for

is, oh, look, it's only four -- it's only, you know, six times as much as you're getting, and so it doesn't trigger that heightened level of scrutiny. Now, I don't agree with their formulation of the legal test, which is why I'm portraying it this way, but the question --

THE COURT: Assume it's the heightened level of scrutiny, as you phrase it.

MR. HACKNEY: Yeah.

THE COURT: Still what's the relevance?

MR. HACKNEY: Well, the relevance is what -- number one, what goes into that calculation of who's getting what because argument 1-A under the city's brief --

THE COURT: Assume for a moment that the pensioners are getting 90-some percent and you're getting 10 percent. Assume that.

MR. HACKNEY: Yes.

THE COURT: And the heightened level, whatever that level is, of scrutiny is triggered. Still, what's the relevance?

MR. HACKNEY: Well, you've assumed away the relevance because of the way you set up the hypothetical. For example, if the city will stipulate that the funds by the foundations are city funds that are calculated in the unfair discrimination either because they're transferred on account -- they're contributed on account of the transfer of

a city asset --

THE COURT: And you've lost me already, and maybe the city has lost me. I don't know. But I would have assumed that the issue of unfair discrimination is based upon not where money comes from but where money goes to.

MR. HACKNEY: That is definitely how Syncora views the world.

THE COURT: All right.

MR. HACKNEY: But the city --

THE COURT: Let's view the world that way since you're the one at the lectern.

MR. HACKNEY: Yes. No. Well, remember, you were asking me relevance, and I'm describing the city's case. I'm trying to discover and defend their case.

THE COURT: Okay. So is this your concession that this has nothing to do with the issue of whether the discrimination is justified or not? It's only an issue of whether there is discrimination.

MR. HACKNEY: No. It goes to the amount --

THE COURT: And explain to me how it's relevant to the issue of whether the discrimination, whatever it is, however you characterize it, however the city characterizes it, is justified or not.

MR. HACKNEY: Okay. So there are two issues going on here that I think are relevant. The information from the

foundations is definitely relevant to the amount of discrimination that's going on, which is absolutely something that the city is attempting to litigate and is absolutely something that the city says is relevant to your application of the test. In fact, the city has, in my judgment, when they interpret the Markell test, they are basically waving the white flag on the Markell test, but they have absolutely said to you, "Oh, you know, the Markell test, that doesn't really apply until you get to about 85-5." Okay. That's the one instance where Mr. Markell proposed it. Now, ironically, if you include the foundation amounts in the calculation, guess what you find out? You find out pretty quickly that the recoveries are 95 to 100 versus 4 to 5 cents depending on how you think of it, so it is absolutely relevant to the amount of discrimination, which the city says is absolutely relevant. Now, it is also relevant to the application of the test putting aside the amount of discrimination. That's because the Aztec test has been summarized by courts in this district to say however you construe the fact -- the Aztec test, which I would describe as a slightly more amorphus four-factor test, but they say however you apply the four factors, you must show that the discrimination is necessary to confirming a plan. Now, you can see that the negotiations with the foundations and how they went down in terms of whose idea this all was is critical to whether the grand bargain,

saying that I have studied the DIA's collection and I know the rest of the information to be there, which is why I said -- because I can read their letter agreements with the DIA in terms of the scope of the subpoenas and the agreement on the production that was going to be made, which track a lot of these issues very closely -- I say the DIA, if anyone, is going to be the person or the entity with knowledge of these matters, so, no, we have never -- we have said to -- I've said to Mr. Hackney a number of times the question as it's posed to me, which I was pleased to hear Mr. Hackney agreed because we've talked about this -- the question as originally designed was simply to elicit information about art so that experts could use it, identify all works of art worth more than a million dollars. The city does not know the answer to that. It has some information. It has provided it. But it does not know the answer to all pieces of art.

THE COURT: All right. I'm going to take this matter under advisement with the others. We'll take our lunch break now and reconvene at 1:15, please. I'll give you my decisions at that time, and then we'll continue with the two status conferences.

THE CLERK: All rise. Court is in recess.

(Recess at 12:17 p.m., until 1:15 p.m.)

THE CLERK: All rise. Court is in session. Please

be seated. Recalling Case Number 13-53846, City of Detroit, Michigan.

THE COURT: All right. It appears that everyone is present. Addressing first the attorney general's motion to quash the subpoena that was issued to him by Syncora, the Court concludes that this motion should be granted. The Court concludes that the attorney general's opinion that is the subject of that subpoena is for all functional purposes the equivalent of a brief, and it will be given weight by the Court only to the extent that the facts on which it relies are established in the evidence and the law on which it relies is persuasive.

In weighing any settlements in the case, including what's been called the grand bargain here, the Court will weigh the merits of the opposing facts and law and not take into account the position or authority of the people who may have taken positions on one side or the other of the issues. So in these circumstances, there is no basis for questioning the attorney general regarding his legal opinion, so that motion is granted.

Addressing next the foundations' motion to quash the subpoenas that were issued to them, the Court again concludes that this motion should be granted. The Court concludes that none of the 30(b)(6) subjects and none of the documents that are sought from the foundations are relevant to or even

arguably relevant to the issues of whether the plan is discriminatory or whether it is unfairly discriminatory, the best interest of creditors or even the extent to which the so-called grand bargain settlement protects the art of the city. Accordingly, that motion is granted.

Now, having said that, it was mentioned during argument that Syncora is interested in information relating to the foundations' ability to pay. That is a relevant subject on which the Court would allow limited discovery. It is not, however, as far as the Court could determine, a part of the discovery that was, in fact, served. The Court hopes that Syncora's counsel and counsel for the several foundations can work out a streamlined and efficient way for Syncora to get the information it needs to evaluate this issue of their ability to pay.

In the motion to quash the foundations' requested costs, the Court will ask counsel for those foundations to file a separate motion for costs if they wish to pursue that.

Turning now to the motion for a site visit, the Court is inclined to exercise its discretion to grant that motion and to go on a site inspection as requested. The Court believes it is likely that the value of such an inspection would be outweighed by the effort it would take to organize and execute the tour, so it will take, however, further discussion and planning here in the meantime, so,

while I'm not prepared yet to enter an order granting the motion, I do think it is appropriate to move the discussions forward. And so to that end, I am going to ask the creditors who are objecting to the plan at this point to nominate one or two of them to attend a meeting with one or two representatives of the city, me, and the Marshals Office to discuss and conclude the details necessary to effectuate this site inspection. And if the creditors are unable to agree upon one or two representatives for that purpose, the Court will identify someone for you. So I think that's as much on that motion as we can do at this point in time.

Turning then to the city's motion for a protective order regarding the retirees' personal information, the Court did state on the record earlier that it would find that Syncora had withdrawn this request based on the Court's ruling that the retirees' hardships was not at all relevant to the issue of either unfair discrimination or fair and equitable. And just to elaborate on that a bit, as the Court stated earlier, it is unaware of any case law interpreting Section 1129 that holds that it is appropriate to consider the relative hardships of creditors in evaluating the issues under that section of the Bankruptcy Code. And, indeed, as the Court suggested in the hearing, if that door were opened here and that subject were relevant here, it would literally open up every single retiree as well as Syncora itself to