## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

### MOTION *IN LIMINE* BARRING THE CITY FROM INTRODUCING COMMUNICATIONS PROTECTED BY THE COURT'S MEDIATION ORDER

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion *in limine* to bar the City of Detroit (the "City" or "Debtor") from introducing evidence of any communications that are covered by the Court's Mediation Order. In support of their motion, Syncora respectfully states as follows:

### INTRODUCTION

1. On August 13, 2013, the Court entered an order providing that "[a]ll proceedings, discussions, negotiation, and writings incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence." Mediation Order [Dkt. No. 322], ¶ 4. Throughout discovery, the City and other Plan supporters have repeatedly invoked the Mediation Order in an attempt to protect a wide range of documents, information, and communications. Specifically, the City and other Plan supporters have invoked the Mediation Order

when questioned about (a) the terms, structure, and negotiations surrounding the DIA Settlement; (b) the calculation of the OPEB Claim amount; (c) the status of the negotiations surrounding the City's new collective bargaining agreements; (d) the status of negotiations with public safety groups; (e) the bases for differing treatment of COPs and LTGO, UTGO, retiree, and other creditors; and (f) the potential for asset monetization via the DWSD transaction.

2. In addition to the above topics, the City also invoked the Mediation Order when Syncora attempted to discern the state of the mind of various participants in the mediation. In particular, during the deposition of Mr. Orr, Syncora was repeatedly barred from inquiring into Mr. Orr's understanding of the Foundations' participation in the so-called Grand Bargain — and their alleged insistence that the DIA Settlement proceeds go exclusively to retirees — on the grounds that Mr. Orr's state of mind and understanding were informed by mediation communications.

3. In light of the City's extensive invocation of the Mediation Order, the City should not be permitted to introduce evidence of any communications incident to mediation. In addition, because the City rebuffed Syncora's attempts to delve into the state of mind of the various mediation participants, the City also should not be permitted to introduce "state of mind" evidence that is based in whole or in part on mediation communications.

4. Accordingly, Syncora respectfully requests that the Court bar the City from introducing evidence relating to (a) communications incident to the mediation and (b) the state of mind of the participants in the mediation where the state of mind was based on information or events occurring during mediation.

## JURISDICTION

5. The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6. Syncora respectfully moves the Court to bar the City from introducing evidence of communications covered by the Mediation Order and enter an order substantially in the form of Exhibit 1 attached hereto.

## BASIS FOR RELIEF

**I. Legal Standard**

7. It is foundational that a privilege may not be used as both a sword and a shield. In other words, a party may not selectively disclose privileged communications in aid of establishing a claim or defense, but prevent other parties from seeking discovery relating to the same information. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying

3

communications from scrutiny by the opposing party."). Furthermore, a party may not invoke a privilege but then attempt to introduce that evidence by inquiring into the witness's state of mind vis-à-vis the privileged information. *Arista Records LLC v. Lime Grp. LLC*, 06 CV 5936 KMW, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) (granting a motion *in limine* seeking to preclude argument and testimony regarding a party's state of mind where defendants already blocked inquiry into the matter on the basis of privilege).

## II. The City May Not Introduce Evidence of Communications That Are Part of or Incident to the Mediation

8. The Court's August 13, 2013 Mediation Order provides that "[a]ll proceedings, discussions, negotiation, and writings incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence."[1] Mediation Order [Dkt. No. 322], ¶ 4. The City has argued that Syncora should be precluded, on the basis of this Order, from conducting discovery on a myriad of issues, including the Foundations' contributions to the so-called Grand Bargain. *See* City's Statement in Support of Foundations' Joint Motion to Quash [Dkt. No. 5494]. Consistent with this position, the City has

---

[1] Though not at issue in the instant motion, Syncora maintains that the City's expansive interpretation and application of the Court's Mediation Order is improper.

4

broadly invoked the Mediation Order during the depositions of City witnesses.[2] (*See, e.g.,* Ex. 6A Bowen Dep. Tr. at 126:24-127:15, June 30, 2014 (invoking Mediation Order regarding discussions by actuarial firms regarding modeling methods for purposes of establishing benefit and liability reductions for the Retirement Systems); (Ex. 6B, Hall Dep. Tr. at 169:17-172:10, July 2, 2014 (invoking Mediation Order regarding union negotiations with the City); (Ex. 6C, Malhotra Dep. Tr. at 213:2-214:8, July 14, 2014 (invoking Mediation Order over pending settlements that would affect the content of Ernst & Young's forecasts); (Ex. 6D, Buckfire Dep. Tr. at 352:1-352:19, July 16, 2014 (invoking Mediation Order over the question of whether the City would contribute to the pension systems' underfunding through the year 2023); (Ex. 6E, Orr Dep. Tr. at 185:15–186:23; 337:12–339:18; 349:11–351:9, July 22, 2014 (invoking Mediation Order over the subject of the creation of a regional water authority,[3] Mr. Orr's understanding of the Foundations' willingness to provide funds for the Plan of

---

[2] Though Syncora has repeatedly requested a privilege log, the City has refused to provide one. (Ex. 6H, Hr'g Tr. at 268:19–269:1, May 28, 2014.) Instead, the City has simply provided a chart revealing that it has withheld more than 7,500 communications with third parties on account of the Mediation Order. Notably though, the City has not disclosed how many internal communications it has withheld on account of the Mediation Order.

[3] A regional water authority is a significant potential revenue source for the City that could be used to pay creditors.

Adjustment, and the basis for discriminating between the City's financial creditors).)

9. Given the City's reliance on the Mediation Order as a shield, it should not be permitted to use the previously-withheld testimony as a sword during the trial. Nevertheless, the City has indicated that it intends to introduce evidence relating to discussions and negotiations that occurred as part of the Court-ordered mediation, including the following:

- The OPEB Settlement: The City intends to introduce evidence that the "product of the OPEB Settlement is within the range of reasonableness." (Ex. 6F, Plan Confirmation Factual Propositions at 4); Consol. Reply [Dkt. No. 5034], ¶¶ 21-28. Yet, when City witnesses were asked how the parties calculated the size of the OPEB claim — which Syncora believes is massively overstated — the City invoked the Mediation Order. (Ex. 6G, Taranto Dep. Tr. at 118:11–17, Aug. 13, 2014.)

- The size of the Pension Claims: The City intends to introduce evidence regarding the correct size of the Pension Claims — which Syncora believes are also massively overstated — and the "appropriate" discount rate. (Ex. 6F, Plan Confirmation Factual Propositions at 7); Consol. Reply [Dkt. No. 5034], ¶¶ 58-59. Yet, when City witnesses were asked how they arrived at the appropriate discount rate, the City invoked the Mediation Order. (Ex. 6A, Bowen Dep. Tr. at 130:3–10, June 30, 2014.)

- The terms of the DIA Settlement: The City intends to introduce evidence that the contributions of the State and the Foundations would not otherwise be available to the City. (Ex. 6F, Plan Confirmation Factual Propositions at 7.) Yet, when City witnesses were asked about the negotiations surrounding the DIA Settlement, the City invoked the Mediation Order. (Ex. 6E, Orr Dep. Tr. at 444:8–25, July 22, 2014.)

10. Accordingly, the City must now be precluded from seeking to introduce, in any form, evidence or testimony of any proceeding, discussion,

6

negotiation, or writing that was part of the Court-ordered mediation. Allowing such evidence would be unfairly prejudicial to Syncora given its inability to obtain discovery regarding these communications and negotations.

### III. The City May Not Introduce Evidence of States of Mind Based In Whole or In Part on Mediation Events.

11. While the City's interpretation of the Mediation Order was broad in its own right, during depositions the City also took the position that a witnesses' state of mind — to the extent that such state of mind was based on or informed by mediation events — was also protected by the Mediation Order. For example, during the deposition of Mr. Orr, counsel for the City asserted that the terms of the Mediation Order applied to Mr. Orr's state of mind regarding the Foundations' contributions to the DIA Settlement:

> Q. Now, if I asked you your state of mind based on what you understood the foundations to be willing to do or what you thought they would be willing to do, you would also invoke the mediation order to the extent his state of mind was created by communications of the foundation, correct?
>
> MR. SHUMAKER: I think that's right because I don't see how he could give you his impressions or his understanding without going into what was going on in the mediation.

(Ex. 6E, Orr. Dep. Tr. at 338:17–339:2, July 22, 2014.)

12. The City took a similar position during the deposition of Mr. Hall, the City's Director of Human Resources and Labor Relations:

7

> Q. . . . Your understanding is that the unions will not come out in public support of the grand bargain until they have reached a new collective bargaining agreement with the City, correct?
>
> MS. KOVSKY-APAP: Objection to the extent that what he understands is based on what he learned through the mediation process, it's covered by the mediation order. I direct you not to answer.
> . . .
> To the extent that his state of mind or what he understands about what the unions will or will not do is based on information that has been conveyed to him through the mediation process. Our position is that that is covered by the mediation order.

(Ex. 6B, Hall Dep. Tr. at 170:6–171:12, July 2, 2014.) In short, the City has used the Mediation Order to shield information relating to the states of mind of the City's agents and employees to the extent such information is based on the mediation.

13. Yet, as in *Arista Records LLC,* 2011 WL 1642434, the City cannot shield from investigation Mr. Orr or Mr. Hall's states of mind and, at the same time, seek to introduce information of their states of mind to justify decisions regarding Plan treatment or Plan structure. The Court in *Arista Records* made clear that a defendant will be <u>barred</u> from introducing evidence regarding its beliefs where, in a prior phase of the proceedings, the defendant sought to protect information regarding that state of mind from discovery based on an assertion of privilege. *Arista Records LLC,* 2011 WL 1642434 ("Having blocked his adversary from conducting discovery on this issue, [the defendant] will not now be heard to

8

advance reliance on counsel." (quoting *E.G.L. Gem Lab Ltd. v. Gem Quality Inst., Inc.*, 90 F. Supp. 2d 277, 284 (S.D.N.Y. 2000), aff'd, 4 F. App'x 81 (2d Cir. 2001))).

14. As such, the City should be precluded from introducing testimony at trial regarding the state of mind of its witnesses where the state of mind is based, in whole or in part, on events or information that are incident to mediation. To allow otherwise would subject Syncora to unfair surprise and prejudice.

## **CONCLUSION**

15. For the foregoing reasons, Syncora respectfully requests that the Court bar the City from introducing evidence of communications covered by the Court's Mediation Order.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 22, 2014                    Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*