# Exhibit 6A

**June 30, 2014 G. Bowen Deposition Transcript**

GLENN BOWEN
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In re ) Chapter 9
CITY OF DETROIT, MICHIGAN, ) Case No. 13-53846
    Debtor. ) Hon. Steven W. Rhodes

_____

The Video Deposition of GLENN BOWEN, VOLUME I,
Taken at 1114 Washington Boulevard,
Detroit, Michigan,
Commencing at 9:05 a.m.,
Monday, June 30, 2014,
Before Rebecca L. Russo, CSR-2759, RMR, CRR.

1          GLENN BOWEN
2  APPEARANCES:
3
4  EVAN MILLER, ESQ.,
5  MIGUEL F. EATON, ESQ.
6  Jones Day
7  51 Louisiana Avenue, N.W.
8  Washington, D.C. 20001
9    Appearing on behalf of the Debtor.
10
11
12
13
14  CLAUDE D. MONTGOMERY, ESQ.
15  Dentons US LLP
16  1221 Avenue of the Americas
17  New York, New York 10020-1089
18    Appearing on behalf of the Retiree Committee.

1          GLENN BOWEN
2  JENNIFER K. GREEN, ESQ.,
3  RONALD A. KING, ESQ. (Lansing office)
4  Clark Hill, PLC
5  500 Woodward venue
6  Suite 3500
7  Detroit, Michigan 48226
8    Appearing on behalf of the Retirement Systems for the
9    City of Detroit.
10
11
12
13
14  RICHARD U. S. HOWELL, ESQ.
15  Kirkland & Ellis LLP
16  300 North LaSalle
17  Chicago, Illinois 60654
18    Appearing on behalf of Syncora Guarantee Inc. and
19    Syncora Capital Assurance Inc.

1          GLENN BOWEN
2  MARK R. JAMES, ESQ.
3  Williams, Williams, Rattner & Plunkett, P.C.
4  380 North Old Woodward Avenue
5  Suite 300
6  Birmingham, Michigan 48009
7    Appearing on behalf of the Financial Guaranty
8    Insurance Company.
9
10
11
12  DAWN R. COPLEY, ESQ.
13  Dickinson Wright, PLLC
14  500 Woodward Avenue
15  Suite 4000
16  Detroit, Michigan 48226
17    Appearing on behalf of the State of Michigan.

1 (Pages 1 to 4)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 6979-7   Filed 08/22/14   Entered 08/22/14 16:11:42   Page 2 of 4

GLENN BOWEN

from Glenn Bowen and Kathy Warren to Evan Miller and Chuck Moore, date March 6th, 2014.

BY MR. HOWELL:

Q. Mr. Bowen, do you recognize this document?
A. I do.
Q. And what was the purpose of this document, to your recollection?
A. The purpose was to confirm to our client the methodology we would be taking in doing various requested models that we were preparing.
Q. And did that include the methodologies that would be used for the models that we just saw in the April 17, 2014, letters?
A. Just give me a moment, please.
Q. Sure.
A. Yes, I believe that's included in this document.
Q. In the third full paragraph under overview on the first page, you list two other actuarial firms, Gabriel Roeder Smith & Company and Segal Consulting. Do you see that?
A. Yes.
Q. And you say you're happy to entertain comments and suggestions from either firm if they were proposing different approaches or revisions to the approaches

GLENN BOWEN

stated below.

Can you recall whether Gabriel Roeder Smith provided comments or suggestions to the proposed approach for undertaking the modeling that you were doing at this time?
A. I can't recall if they did so specific to this document.
Q. Would they provide comments from time to time in association with work that you were doing at the direction of the city?
A. I believe it was the direction of the Court that the actuarial firms were asked to speak to each other.
Q. Who is Segal Consulting?
A. They are an actuarial firm retained by the Official Committee of Retirees.
Q. Do you recall whether Segal Consulting provided any comments or suggestions to your valuation of the accrued actuarial liability?
A. I think I can characterize it most simply as all firms had a discussion and provided input. I can't specify whether they responded prior to this memo or subsequent to this memo.
Q. Did anyone ever suggest to you that the unit credit cost method should be used as opposed to the entry age

GLENN BOWEN

normal cost method in any of the work that you did at the direction of the city or the pension task force?
MR. MILLER: Glenn, excuse me, before you respond, Rush, I think Glenn had indicated in his prior testimony that there were certain communications that the actuarial firms engaged in pursuant to an order of mediation by the Court, and all discussions that took place during any Court-ordered mediation are confidential, and pursuant to the Court's mediation order are not to be the subject of discovery.

So I would just ask the witness, in his -- developing his response to the question, to avoid answering in a way that would reveal discussions that occurred during the Court-ordered mediation.

MR. HOWELL: Fair enough.

BY MR. HOWELL:

Q. So, just for the record, let me make clear, you're going to follow Mr. Miller's instruction with respect to that, correct?
A. Yes, I will.
Q. Okay. So taking that into account, I don't want you to disclose anything that you're being instructed not to disclose related to a confidential mediation arrangement, but just separate and apart from that, if

GLENN BOWEN

you have an independent recollection of any time where it was suggested to you by Segal Consulting or by anyone else to use entry age normal -- or excuse me, to use the unit credit cost method as opposed to the entry age normal method, can you recall anything like that?
A. It was not specifically discussed.
Q. I'll hand you what we will mark as 10, Bowen Exhibit 10.
MR. HOWELL: And for identification purposes, Bowen Exhibit 10 has the Bates range POA00598715 through 598718 and is a letter from Segal Consulting to Claude Montgomery.

First of all, Mr. Bowen, have you ever seen this document before?

MARKED FOR IDENTIFICATION:
DEPOSITION EXHIBIT 10
1:39 p.m.

A. One moment, please. Yes.
BY MR. HOWELL:
Q. On both the first and second page of this email from Segal Consulting, they lay out a range of, again, discount rates from 6.5 percent to 8 percent that they used in projecting actuarial accrued liabilities. Do

32 (Pages 125 to 128)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt Doc 6979-7 Filed 08/22/14 Entered 08/22/14 16:11:42 Page 3 of 4

GLENN BOWEN

you see that?

A. I do.

Q. Do you have an understanding, first of all, whether this was a replication of work that you were doing or had done?

A. This letter -- actually, I'm sorry, I remember reviewing a Segal letter, I believe, of the 2013 valuation. I'm not sure if I have seen this letter before.

Q. Okay.

A. But this letter is July 1, 2014, frozen plan.

Q. Okay. Well, you anticipated my next question, which is, your understanding is that this letter was put together when there was an anticipation of a frozen plan, correct?

A. From the labeling of the letter, it says frozen plan.

Q. Did you ever have any discussions with Segal Consulting about which the -- which investment rate would be an appropriate investment rate to use when performing valuations in this case?

  MR. MILLER: And I would again caution the witness in framing his response to avoid revealing any confidential mediation discussions.

A. Yes.

GLENN BOWEN

BY MR. HOWELL:

Q. And you do recall those conversations? And do you recall -- do you have any recollection as to what Segal Consulting suggested, if they made any suggestion, as to what the discount rate should be for use in these calculations?

  MR. MONTGOMERY: Again, this is Claude Montgomery. I would request that you respect any mediation instructions in response to that question.

A. We did not discuss 2014 valuation investment of return assumptions.

BY MR. HOWELL:

Q. On the third page of this document, it's Bates-stamped 598717 at the bottom -- well, maybe I should, I'm sorry, I should probably take you back to the prior page, where there's a paragraph that says: This analysis was prepared using June 30, 2013, census data provided by the retirement system and the actuarial assumptions, methods, and plan provisions used in Gabriel Roeder Smith's June 30, 2013, actuarial valuation report, except the following.

  And then it has a series of changes that they used as opposed to what Gabriel Roeder Smith had done. Do you see that?

GLENN BOWEN

A. I do.

Q. So the first one is the wage inflation portion of the salary scale is zero percent for the year ending June 30, 2014. Does that indicate to you that this is the valuation of a frozen plan?

A. That line alone does not indicate that.

Q. On the next page, the second full bullet says: The cost method was changed from entry age normal to the unit credit cost method. Do you see that?

A. I do.

Q. Did you ever have any discussions with Segal Consulting in which you discussed changing from entry age normal to the unit credit cost method?

  MR. MILLER: And again, those discussions would need be outside the context of mediation.

A. I answered the question previously. We didn't have those discussions.

BY MR. HOWELL:

Q. Okay. So, again, respecting the instruction not to bring anything in from mediation, apart from mediation, you can't recall any discussions whatsoever with Segal Consulting in which -- whether to use entry age normal or unit credit cost method was discussed?

A. No.

GLENN BOWEN

Q. And do you have any opinion as to whether Segal Consulting's decision to use unit credit cost method instead of entry age normal cost method for this frozen plan analysis was appropriate?

  MR. MUTH: Let me object here, because now I think you're asking him to provide expert testimony, commenting on another actuarial firm's work.

  He's here as a lay witness, but to ask him to form an opinion about appropriateness of another actuarial's work I think goes beyond the scope of this deposition.

BY MR. HOWELL:

Q. You can answer the question, unless you're being instructed not to answer.

  MR. MUTH: Can you read it back, though?
  (The following portion of the record was read by the reporter at 1:45 p.m.:
  Q. "And do you have any opinion as to whether Segal Consulting's decision to use unit credit cost method instead of entry age normal cost method for this frozen plan analysis was appropriate?")
  MR. MUTH: You can answer if you have an opinion.

33 (Pages 129 to 132)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 6979-7   Filed 08/22/14   Entered 08/22/14 16:11:42   Page 4 of 4