# Exhibit 6H

**May 28, 2014 Hearing Transcript**

```
                    UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,     .      Docket No. 13-53846
        MICHIGAN,            .
                             .      Detroit, Michigan
                             .      May 28, 2014
                Debtor.      .      10:01 a.m.
. . . . . . . . . . . . . . . .

         HEARING RE. (#4508) ORDER REGARDING HEARING ON
         OUTSTANDING OBJECTIONS TO WRITTEN DISCOVERY (RE:
            RELATED DOCUMENT(S) 4202 ORDER ESTABLISHING
         PROCEDURES, DEADLINES AND HEARING DATES RELATING TO
        THE DEBTOR'S PLAN OF ADJUSTMENT); (#3929) MOTION OF THE
              CITY OF DETROIT WATER & SEWERAGE DEPARTMENT FOR AN
            ORDER AMENDING AND CLARIFYING FEE REVIEW ORDER FILED
                BY INTERESTED PARTY CITY OF DETROIT WATER AND
          SEWERAGE DEPARTMENT; (#5011) LETTER FILED BY STEPHEN D.
            LERNER, COUNSEL TO THE COURT-APPOINTED EXPERT; (#4202)
              STATUS CONFERENCE REGARDING CONFIRMATION PROCESS
                    BEFORE THE HONORABLE STEVEN W. RHODES
                    UNITED STATES BANKRUPTCY COURT JUDGE
```

APPEARANCES:

For the Debtor:      Jones Day
                     By:  BRUCE BENNETT
                     555 South Flower Street, Fiftieth Floor
                     Los Angeles, CA  90071
                     (213) 243-2382

                     Jones Day
                     By:  HEATHER LENNOX
                     222 East 41st Street
                     New York, NY  10017
                     (212) 326-3837

                     Jones Day
                     By:  GEOFFREY IRWIN
                          GREGORY SHUMAKER
                          GEOFFREY STEWART
                     51 Louisiana Avenue, N.W.
                     Washington, D.C.  20001-2113
                     (202) 879-3768

1  impacted, and the extent to which they could sustain the
2  changes to them because of the fact that they're cutting
3  deals.  I don't know.  But it puts us in an impossible
4  position when they use their prior decisions to say, "Well,
5  we really shouldn't have to do anything more because we got
6  to keep the trial date, and we don't want to move the
7  schedule."
8          THE COURT:  Well, it's a close question, but I must
9  side with Mr. Hackney here that the additional production
10 through the second plan should have been provided here, and
11 the Court will request that and order that.
12         MR. HACKNEY:  Your Honor, points three and four I'll
13 be very brief.  I think point four was that we'd actually ask
14 there to be an order that they get us our interrogatories by
15 Friday so that we can have a date certain.  It sounds like
16 Mr. Irwin is going to do that anyway.  Point three is an
17 important one for --
18         THE COURT:  I'll agree with that.  You may submit an
19 order.
20         MR. HACKNEY:  Your Honor, point three is an
21 important one given our colloquy earlier.  I'd like you to
22 consider it.  The Hale affidavit says that they are
23 construing the mediation privilege broadly.  You can also
24 imagine nuanced questions about who is covered by the
25 mediation privilege, the most obvious of which being that the

1  charitable foundations weren't actually creditors in the case
2  at the time they were invoked, so there are questions about
3  the scope of the privilege, questions about the application
4  of it by the city.  It is my view that the city should log
5  documents that they're withholding on the basis of this
6  mediation privilege for two reasons.  Number one, it may be
7  something -- this is definitely a log where you can see
8  looking at it and saying, wait a second, that's from a time
9  period before the mediation order, wait a second, that's not
10 a person involved the mediation, point one, but point two, I
11 think that you're going to want to have this log whether it's
12 for in camera review or for issues that come up down the road
13 at trial.  And so my suggestion is one that I'm sure the city
14 is gritting its teeth over, but this is one of those things
15 that I think if they start doing now we're all going to be
16 very glad that it exists when the trial comes along because
17 if we hit one of these issues and it's not all prepared, that
18 could be a real delay.
19         MR. IRWIN:  Your Honor, the issue of privilege logs
20 I think was one that we discussed with multiple parties at
21 the outset of discovery.  I don't understand what purpose is
22 served to see if the city executed on its understanding of
23 the mediation order.  It is yet another potentially --
24         THE COURT:  Yeah.  I agree that the burden involved
25 in this is much greater than any potential value of it, so I

```
                                                                269
 1   will not order this.
 2              MR. HACKNEY:  Your Honor, if I could briefly speak
 3   to the schedule and then sit down, I think that our argument
 4   is pretty simple, which is we have proposed in the fifth
 5   amended scheduling order -- the proposed fifth amended
 6   scheduling order something that I think is unremarkable and
 7   also fair and sort of charitable to the situation that we, as
 8   creditors, find ourselves in, which is we've proposed to move
 9   fact discovery cutoff and all the associated dates back three
10   weeks from June 27 to July 18.  Okay.  That is 22 days, I
11   should say, to be precise.
12              Now, I woke up at four in the morning again today.
13   I always know that you want to know what time I wake up.  But
14   I think part of the reason that I was -- I don't understand
15   why it's so controversial where the city is four weeks, five
16   weeks behind in its written discovery, you know, obligations.
17   The order said comply with written discovery by May 6.  Here
18   we are almost into early June.  I don't have interrogatory
19   responses.  We're talking about important people that have
20   not been searched.  We're talking about date limitations that
21   don't make sense.  For me to come back and for the DTEC and
22   the other members of the creditors to come back and say,
23   "We're going to take the city's efforts to remedy this in
24   good faith.  We see what Mr. Irwin is trying to do here.
25   We'll only move the schedule three weeks," to me seems like
```

13-53846-tjt   Doc 6979-14   Filed 08/22/14   Entered 08/22/14 16:11:42   Page 5 of 6

1   the height of reasonableness, point one.  Point two, your
2   Honor, it still allows for a trial schedule that I think gets
3   the trial done before September 30.  So to the extent that
4   Mayor Duggan is going to fire Kevyn Orr and fire Jones Day as
5   soon as he possibly can, which I think was reported in the
6   press and in some respects I think raised sort of larger and
7   more troubling questions about why that would be the case --
8           THE COURT:  Well, let's pause here.  Has that issue
9   been resolved?
10          MR. SHUMAKER:  It has not, your Honor.  There's been
11  no final answer in that regard.
12          MR. HACKNEY:  Respectfully, your Honor, I don't
13  think that Mayor Duggan gets to -- he has his powers, but I'm
14  not sure that he gets to effectively dictate to you when you
15  have to have a trial by.  And I also want to note that you
16  see a number of warning signs blinking.
17          THE COURT:  Well, I just want to say for the record
18  that it would be a really bad idea for the city, the mayor,
19  to terminate Jones Day's services at such a critical phase in
20  this process.  I don't exactly know where we will be on
21  September 30th or in the few days before or after that, but
22  whatever phase it is, it will be a critical phase because
23  we'll either be in the process of negotiating and drafting a
24  confirmation order or an order of dismissal and dealing with
25  the consequences of that, or we'll be dealing with how to get