UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**MOTION *IN LIMINE* BARRING THE CITY AND PLAN SUPPORTERS FROM INTRODUCING EVIDENCE REGARDING THE POTENTIAL PERSONAL HARDSHIP OF PENSIONERS**

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion *in limine* (the "Motion") to bar the City of Detroit (the "City" or "Debtor") and Plan Supporters from introducing evidence regarding the potential personal hardship of pensioners. In support of their Motion, Syncora respectfully states as follows:

## INTRODUCTION

1. On May 5, 2014, Syncora served its Rule 30(b)(6) deposition topics [Dkt. No. 4403], which included a request that the City provide a designee on the subject of the identity, location, and financial position of the City's retirees. After a meet-and-confer between Syncora and the City regarding this topic, the City filed a motion for a protective order, claiming that the requested information was irrelevant, overly burdensome, and personally-intrusive.

2. On June 26, 2014, the Court granted the City's motion for a protective order, reasoning that the Bankruptcy Code and the cases interpreting the Code's requirements for plan confirmation do not take into account the effect of plan treatment on individual creditors. (Ex. 6A, Hr'g Tr. at 104:13–19, June 26, 2014.) Thus, the Court found that the effect of the Plan's proposed treatment on creditors was irrelevant to Plan confirmation. Order Regarding City's Motion for Entry of a Protective Order [Dkt. No. 5625]. Indeed, the Court reiterated its holding at a hearing on August 6, 2014, explaining that:

> I do not want and don't think it relevant to consider a series of retirees or employees, for that matter, testifying about their individual hardship. In my view, neither fair and equitable nor unfair discrimination has ever in any bankruptcy case considered the impact of a plan on a creditor; that is to say, the adverse impact of a plan on a creditor. The issue always is the business justification for the treatment from the debtor's perspective.

(Ex. 6B, Hr'g Tr. at 81:9-17, Aug. 6, 2014.)

3. However, it appears that the City intends to argue that one of its grounds for the significant discrimination between the COP-holders and the pensioners is the effect of the proposed cuts on the pensioners. For example, in its *Consolidated Reply to Certain Objections to Confirmation of the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*, the City asserted that the "marginal harm that will result from each dollar of pension cuts is far greater than the harm that will result from each dollar of cuts imposed on bondholders."

Consol. Reply [Dkt. No. 5034], ¶ 73. Based on this "marginal harm," the City claims that the significant discrimination between the pensioners and the COP-holders is justified.

4. More ominously, during his recent deposition, Mr. Orr repeatedly testified that one of the reasons he decided to discriminate in favor of retirees was because of compassion toward retirees and the position of the retirees in the aggregate — what he called "personal hardship" or the "human dimension." (Ex. 6C, Orr Dep. Tr. at 233:25–234:12, July 22, 2014.) Finally, other Plan supporters have listed the impact of treatment under the Plan as a topic of witness testimony. *See, e.g.*, Official Committee of Retirees List of Fact Witnesses in Support of Plan Confirmation [Dkt. No. 5688].

5. In light of the Court's ruling, evidence of "personal hardship" — *i.e.*, the effect of the Plan on the pensioners — is not relevant. Accordingly, Syncora respectfully requests that the Court bar the City and Plan Supporters from introducing evidence regarding the effect of the Plan's proposed treatment on individual creditors.

## JURISDICTION

6. The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7. Syncora respectfully moves the Court to bar the City and Plan Supporters from introducing evidence regarding the potential personal hardship of pensioners and enter an order substantially in the form of Exhibit 1 attached hereto.

## BASIS FOR RELIEF

8. Under Federal Rule of Evidence 401, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether evidence is relevant is determined in the context and arguments of a particular case. *Sprint/United Mgmt. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Evidence that is not relevant is not admissible. FED. R. EVIDENCE 402.

9. On May 5, 2014, Syncora served its list of 30(b)(6) topics on the City. Topic 29 on Syncora's list of 30(b)(6) deposition topics requested that the City provide a designee who would be knowledgeable about "[t]he identity, location, and financial position of the City's retirees." Syncora's Notice of 30(b)(6) Deposition to the City of Detroit [Dkt. No. 4403], Schedule A at 6. During a subsequent meet-and-confer regarding Syncora's 30(b)(6) topics, Syncora explained that the "personal hardship" argument that the City raised in its reply put the identity and financial condition of the retirees at issue. (Ex. 6D, 6/13/14 Email

4

13-53846-swr    Doc 6982    Filed 08/22/14    Entered 08/22/14 16:24:26    Page 4 of 9

from G. Shumaker to B. Arnault at 2.) In response, the City took the position that the retirees' financial position is "irrelevant, overly burdensome, and personally intrusive." (*Id*.) The City subsequently filed a motion for a protective order asking the Court to strike topic no. 29 from Syncora's 30(b)(6) notice. Mot. for Protective Order [Dkt. No. 5442].

10. During argument on the City's motion for a protective order, the Court expressed the view that personal hardship is not relevant to plan confirmation standards:

> I'm going to -- I'm going to say here as unequivocally as I can that as a matter of law, creditors' needs is not an issue when it comes to determining unfair discrimination. It's the business judgment of -- the business rationale of the debtor taking into account the debtor's needs that is critical."

(Ex. 6A, Hr'g Tr. at 104:14–19, June 26, 2014.) Following the hearing, the Court issued an Order granting the City's motion for a protective order.

11. According to the Court, "retirees' hardships are not relevant to the issues of either unfair discrimination or fair and equitable treatment." Order Regarding City's Motion for Entry of a Protective Order [Dkt. No. 5625]. Indeed, the Court reiterated this finding during the August 6, 2014 status hearing when it stated that

> I do not want and don't think it relevant to consider a series of retirees or employees, for that matter, testifying about their individual hardship. In my view, neither fair and equitable nor unfair discrimination has ever in any bankruptcy case considered the impact

5

of a plan on a creditor; that is to say, the adverse impact of a plan on a creditor. The issue always is the business justification for the treatment from the debtor's perspective.

(Ex. 6B, Hr'g Tr. at 81:9-17, Aug. 6, 2014.)

12. Notwithstanding the Court's order, Mr. Orr testified repeatedly at his deposition that one of the justifications for the enhanced treatment of the retiree creditors was the so-called "human dimension." And, when asked why he did not believe he could cram down pensioners under his first Plan, Mr. Orr again referred to the "human dimension." (Ex. 6C, Orr Dep. Tr. at 200:22–201:2, July 22, 2014.) When asked what he meant by the human dimension, Mr. Orr explained that he was referring to the impact of the plan on the individual creditors:

> Q. And when you're talking about the human dimension what are you talking about there?
>
> A. Very simply, and I think I've said this before, the -- the pensioners are people many of whom are in their sixties, seventies, and eighties and don't have an option. They have worked for the City, most of them have done nothing wrong. They are -- the covenant that the City had with its employees and retirees was that if they perform work for the City that upon their retirement they'd be taken care of for the rest of their natural life, that some of this came as quite a shock to them because they had planned their affairs accordingly. Many of them, like my own family members or grandmother, wouldn't have options of going back into the job market to supplement income or make up for some of the cuts and that there were -- there was a real-world dimension impact to the people that were going to be affected by these cuts.

(*Id.* at 201:13–202:6.)

6

13. Mr. Orr also testified that he reviewed aggregate financial data regarding the average size of the pensions when determining the effect of the Plan on the individual retirees:

> Q. Okay. So you relied on aggregate financial data about the approximate average size of pensions as well as oral testimonies to you about how steeper cuts would impose personal hardship on the pensioners?
>
> A. Yeah, the approximate average size -- you know, included in this documentation for instance, I've reviewed rolls of information regarding the actual amount of pensions that thousands of pensioners have, which have been provided to me by professionals. So it's not just summary information, it's actually sometimes raw data discussions with -- with my advisors, including attorneys, as well as discussions with representatives including depositions of the -- of the -- some of whom are here today, representatives of the various funds.

(*Id.* at 231:19–232:9.)

14. Yet, as the Court has previously held, creditor needs and retiree hardship are not relevant considerations in the unfair discrimination or fair and equitable contexts. Consistent with this holding, Syncora was not permitted to obtain discovery regarding the financial position of the retirees — discovery that would be necessary to test the extent of the hardship at issue.[1] Consistent with that

---

[1] Without the opportunity to conduct discovery regarding the financial position of the retirees, the introduction of evidence on this issue would also result in unfair prejudice and surprise to Syncora.

ruling, the City should not be able to introduce any evidence regarding the potential personal hardship of pensioners.[2]

## **CONCLUSION**

15. For the foregoing reasons, Syncora respectfully requests that the Court bar the City and Plan Supporters from introducing evidence regarding the potential personal hardship of pensioners.

[*Remainder of Page Intentionally Left Blank*]

---

[2] Nor should the Court allow the Retirement Systems to backdoor this issue by seeking to introduce evidence of "aggregate" personal hardship. (Ex. 6B, Hr'g Tr. at 10:22-11:17; 81:8-82:15, Aug. 6, 2014.) Aggregate personal hardship data is just individual personal data in another guise.

Dated: August 22, 2014  Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: /s/ *Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*