# Exhibit 6B

## August 6, 2014 Hearing Transcript

```
                    UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .      Docket No. 13-53846
        MICHIGAN,              .
                               .      Detroit, Michigan
                               .      August 6, 2014
                   Debtor.     .      9:00 a.m.
. . . . . . . . . . . . . . . . .

       HEARING RE. STATUS CONFERENCE RE. PLAN CONFIRMATION
         PROCESS (#6376) SIXTH AMENDED ORDER ESTABLISHING
         PROCEDURES, DEADLINES AND HEARING DATES RELATING TO
                 THE DEBTOR'S PLAN OF ADJUSTMENT
              BEFORE THE HONORABLE STEVEN W. RHODES
               UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Jones Day
                       By:  HEATHER LENNOX
                       222 East 41st Street
                       New York, NY  10017
                       (212) 326-3837

                       Jones Day
                       By:  THOMAS CULLEN
                            GREGORY SHUMAKER
                       51 Louisiana Avenue, N.W.
                       Washington, DC  20001
                       (202) 879-3939

For National           Sidley Austin, LLP
Public Finance         By:  GUY NEAL
Guarantee Corp.:       1501 K Street, N.W.
                       Washington, DC  20005
                       (202) 736-8041

For Assured            Chadbourne & Parke, LLP
Guaranty Municipal     By:  ROBERT SCHWINGER
Corp.:                 30 Rockefeller Plaza
                       New York, NY  10112
                       (212) 408-5364

For the Official       Dentons US, LLP
Committee of           By:  SAM J. ALBERTS
Retirees:              1301 K Street, NW, Suite 600, East Tower
                       Washington, DC  20005
                       (202) 408-7004
```

|   |   |
|---|---|
| 1 | THE COURT:  Good. |
| 2 | MR. HACKNEY:  So kind of going maybe from the more |

1     THE COURT:  Good.
2     MR. HACKNEY:  So kind of going maybe from the more
3  mundane to the more philosophical, whether the Court has a
4  problem with parties using video clips in the opening so long
5  it's as -- so long as the video clip is of otherwise
6  admissible deposition testimony, meaning rather than merely
7  using transcripts; whether the Court would mind just
8  approving now briefs in excess of the page limit on the post-
9  trial briefs and supplemental objections because we intend
10 them to be very substantive and evidence-based documents that
11 will save you a bunch of ex parte motions; confirming that
12 documents can be used for cross-examination even if they're
13 not on a witness list under the custom of the idea that you
14 don't know what you'll need to impeach a witness with, and it
15 may not be on your exhibit list.  I have thoughts for the
16 Court on how we might streamline the process of getting
17 exhibits into evidence, particularly on the subject of
18 authenticity.  I wanted to address with the Court motions in
19 limine and Daubert motions that we intend to file and get a
20 sense of both -- well, principally how you wanted to handle
21 them and when you wanted to hear them.  Deposition
22 designations are an important subject, your Honor, and I
23 wanted to discuss that with you.  Post-trial findings of fact
24 and conclusions of law are another one that's important.  A
25 more broad question, I think, I know that you noted was the

question of time allocation both in terms of total time but also intracreditor time.

The last one, your Honor, goes a little bit more to some of the issues we've raised before, for example, just sort of the impact on the case of things like when we're going to get the definitive documents on the DIA settlement, the LTGO settlement. I've raised those with you before. The ongoing DWSD issue, I want to discuss with you principally how we're supposed to try that up to you and then the issue of exit financing. Those were my bullets, your Honor.

THE COURT: Thank you. Does anyone else have any other items to add for the agenda today?

MR. DECHIARA: Good morning, your Honor. Peter DeChiara for the UAW. The UAW may have one additional item. We have a discrete supplemental discovery request to the city. We've discussed it with the city. The city may agree to provide it to us, in which case there will be no need to raise it with the Court. We hope before the end of the hearing today we'll hear from the city on that matter. Thank you.

THE COURT: Mr. Gordon.

MR. GORDON: Good morning, your Honor. Just one discrete item that kind of popped into my head this morning really, and I thought it was more maybe in the nature of a housekeeping matter, but since you're bringing this up now, I

1  just wanted to raise it.  I believe a couple of weeks ago in
2  the context of a motion to quash a subpoena by Syncora, the
3  Court asked in the middle of the hearing specifically about
4  whether evidence of individual hardship was even relevant for
5  purposes of the trial, and on the fly I think parties sort of
6  agreed that that wouldn't be relevant.  However, I was
7  concerned that maybe the record wasn't really clear because I
8  think that the case law supports the concept that hardship on
9  a more macroscopic level to the community, to individuals and
10 the community as a whole in a Chapter 9 case is something
11 that is relevant.  And I know that the city, in particular,
12 cited in its consolidated reply the <u>Barnwell Hospital</u> case
13 and the <u>Corcoran Hospital</u> case as well, so I wanted to make
14 sure that everyone was clear as to the ability to present
15 some evidence as to the hardship to the community as a whole
16 of certain, you know, potential scenarios in connection with
17 the plan and that those things could be relevant.
18         THE COURT:  Thank you.
19         MR. GORDON:  Thank you, your Honor.
20         THE COURT:  Any others?  I actually have a couple
21 myself.  I'm sorry, sir.  Were you standing?
22         MR. QUINN:  Yes, your Honor.  Your Honor, John
23 Quinn.  I think the Court should address the question of how
24 to provide an opportunity for individual objectors to cross-
25 examine witnesses and present evidence without extending the

1 trial unduly and causing confusion.

2 THE COURT: All right. We'll add that to the
3 agenda. I actually have a couple of additions myself. An
4 issue I've been struggling with is -- one second. Chris, is
5 there a Bankruptcy Code here? Yes, there is. One second,
6 please. An issue that I've been struggling with here and
7 that I'd like to discuss with you how to process is the issue
8 of the meaning of Section 943(b)(3) relating to fees and the
9 question of to what extent does that provision give the Court
10 jurisdiction over fees, whether it's fees of the city's
11 professionals or creditors' professionals or otherwise, so
12 let's put that on the agenda. And, finally, probably at the
13 very end, I need to meet with the attorneys who I've been
14 working with on the site visit. Okay.

15 So let's begin then with how to address Ms. Kopacz's
16 report and testimony. The first question I raised is who
17 will discuss -- who will conduct Ms. Kopacz's direct
18 examination? I had thought and assumed that I would actually
19 be the one doing that, and so I would ask whether anyone has
20 any objection to that.

21 MR. CULLEN: No, your Honor.

22 THE COURT: No objections? All right. Then let's
23 just presume that that's the direction we will proceed in.
24 Next question is at what point in the proceedings will she
25 testify, and on this point I welcome your thoughts, anyone.

1 agenda.

2 MR. DECHIARA: Thank you.

3 THE COURT: Before you go, sir, I think it was your
4 client and maybe AFSCME or one other client -- creditor -- I
5 can't remember -- raised an objection recently about the plan
6 impairing the claims of noncity employees.

7 MR. DECHIARA: That would be the UAW. Our claim is
8 that the plan impairs the accrued pension benefits of
9 retirees and employees of the library, which is a legally
10 separate --

11 THE COURT: Yeah.

12 MR. DECHIARA: -- entity, and that's essentially the
13 gist of our case, that we believe that that's improper,
14 that --

15 THE COURT: Um-hmm, but wasn't there another
16 objection from another creditor that came in?

17 MR. DECHIARA: There may have been, but I can't
18 speak to that.

19 THE COURT: Sir.

20 MR. MACK: Yes, your Honor. Richard Mack with
21 AFSCME. We joined the -- or we've also filed the same
22 objection for noncity employees at the library. We also have
23 eight, I think it is -- five, rather, employees of the Cobo
24 Hall Regional Authority, so --

25 THE COURT: Oh, yes. That was it. Thank you. All

1  right.  So this is an issue that I'll want the city to
2  address at some point.  Maybe we'll include it on our list of
3  issues for you to brief.
4          MS. LENNOX:  Yes.  We're prepared to do that, your
5  Honor.
6          THE COURT:  Okay.  Mr. Gordon.
7          MR. GORDON:  Yes, your Honor.
8          THE COURT:  You raised, you know, the very
9  interesting issue of community hardship.  I do not want and
10 don't think it relevant to consider a series of retirees or
11 employees, for that matter, testifying about their individual
12 hardship.  In my view, neither fair and equitable nor unfair
13 discrimination has ever in any bankruptcy case considered the
14 impact of a plan on a creditor; that is to say, the adverse
15 impact of a plan on a creditor.  The issue always is the
16 business justification for the treatment from the debtor's
17 perspective.  Now, to the extent that issue encompasses
18 consideration of hardship, I would leave it to the proponents
19 of the plan to argue and prove that, but that's a much -- I
20 don't know -- broader and differently focused question than
21 just plain hardship to retirees.
22         MR. GORDON:  Yes, your Honor, and I would agree with
23 you that the colloquy at that status conference a few weeks
24 ago was focused on much more granular individual data and
25 obtaining that data.  I just wanted to make sure that it was

1 clear or understood by all parties that if there is
2 information or an argument to be made as to the impact more
3 broadly on retirees, not just as creditors but more
4 specifically as a part of the entity that we are trying to
5 rehabilitate, that that is relevant and fair game in the
6 context of a Chapter 9.
7     THE COURT: Right. The city will bear the burden of
8 showing why its very significant discrimination in favor of
9 retirees and against the financial creditors here in this
10 case is not unfair. It knows that.
11     MR. GORDON: Agreed, your Honor, and I just wanted
12 to make clear that that would be one of the things that could
13 be identified is if there was, you know, broad impoverishment
14 of retirees, for example, that's something that could be
15 considered.
16     THE COURT: All right.
17     MR. GORDON: Thank you, your Honor.
18     THE COURT: Okay. That was all I had for my agenda
19 on the record here. Is there anything that anyone else would
20 like to bring up before I handle some matters off the record?
21 Oh, yes. There was your issue, sir. Thank you for reminding
22 me. Your name again, sir?
23     MR. QUINN: John Quinn, your Honor.
24     THE COURT: Yes. Mr. Quinn raised the issue of
25 individual creditors, and by that I assume he means

83

1 unrepresented creditors --

2     MR. QUINN: Yes.

3     THE COURT: -- having an opportunity to either
4 present evidence or cross-examine witnesses. Anyone have any
5 thoughts on this question?

6     MR. HACKNEY: I do. I do, your Honor.

7     THE COURT: Go ahead.

8     MR. HACKNEY: And first let me just express my
9 personal admiration for Mr. Quinn for coming in here and
10 standing up for himself.

11     THE COURT: Of course.

12     MR. HACKNEY: There is the balance that has to be
13 struck, I think, in terms of protecting people's rights, on
14 the one hand, and then allowing for an orderly trial, on the
15 other hand, and what it seems to me might be a good first
16 step would be to get a sense of how many people there are
17 that are like Mr. Quinn that actually intend to cross-examine
18 or introduce evidence, start there and then perhaps engage
19 the concept of amongst those creditors, much like other
20 creditors have been required to coordinate and utilize lead
21 examination methodologies, a steering committee of sorts for
22 them and a consideration of what time allotment is
23 appropriate for them --

24     THE COURT: Um-hmm.

25     MR. HACKNEY: -- but that would be a way to try to