# Exhibit 6D

**6/13/14 Email from G. Shumaker to B. Arnault**

| From: | Gregory Shumaker <gshumaker@JonesDay.com> |
|---|---|
| Sent: | Friday, June 13, 2014 3:17 PM |
| To: | Arnault, Bill |
| Cc: | Daniel T Moss; Hertzberg, Robert S.; Hackney, Stephen C. |
| Subject: | Re: Meet and Confer re 30(b)(6) Topics |

Bill: I've set out our responses in red below. Your elaboration on these topics is helpful, and we plan on designating witnesses to address virtually all of the topics we discussed. That doesn't include Topic No. 29 which we continue to believe requests irrelevant, overly burdensome and personally intrusive information so our objection to that topic stands. Please advise as to whether you will withdraw that request. Thanks, Greg

Gregory M. Shumaker
Partner
**JONES DAY® - One Firm Worldwide℠**
51 Louisiana Avenue, NW
Washington, DC  20001
Office:  +1.202.879.3679
Email:  gshumaker@jonesday.com

| From: | "Arnault, Bill" <warnault@kirkland.com> |
|---|---|
| To: | "gshumaker@JonesDay.com" <gshumaker@JonesDay.com>, "Hertzberg, Robert S." <Hertzber@pepperlaw.com>, Daniel T Moss <dtmoss@JonesDay.com>, |
| Cc: | "Hackney, Stephen C." <shackney@kirkland.com> |
| Date: | 06/12/2014 06:02 PM |
| Subject: | Meet and Confer re 30(b)(6) Topics |

Greg,

Thanks to you, Bob, and Dan for taking the time to work through our 30(b)(6) topics this morning. What follows is a summary of our discussion. Please let us know if we've misstated anything.

Topic No. 1:  We agreed to withdraw this topic.

Topic No. 3: We explained that the purpose of this topic was not to delve into the merits of the COPs litigation but to determine how long the City anticipated it would take to obtain a final judgment on that litigation. We offered to enter into a stipulation wherein the City and Syncora stated that it was reasonable to assume that it will take [XX amount of time] to obtain a judgment by the bankruptcy court or, if necessary, an entry by the District Court of the Bankruptcy Court's findings of fact and conclusions of law.

**We plan on designating Kevyn Orr to testify on this topic as further articulated.**

Topic No. 4: We explained that there are three categories of information sought by this deposition topic. First, we are seeking the City's position regarding its authority to terminate retirees' other post-employment benefits. Second, we are seeking the City's view of the value of the retirees' other post-employment benefits. This information is relevant to understand the size of the OPEB class. Third, we are seeking the City's view of the value of the replacement OPEB benefits that the retirees will receive under the City's Plan of Adjustment. As we explained, we currently do not have much transparency into the value that the retirees are receiving under the new health care plan.

**We plan on designating Sue Taranto to testify on this topic as further articulated.**

Topics Nos. 8 and 9: We explained that both of these topics are relevant to the Markell test. We explained that we would be willing to enter into a stipulation with the City that it will not contend that Classes 10, 11 and 12 contributed non-financial value. This is consistent with our understanding of the case law interpreting the Markell test. If the City is willing to enter into this stipulation, then it should be sufficient to depose Guarav Malhotra on these topics to understand the financial contributions and consideration of creditors in Classes 10, 11, and 12. If the City intends to argue that the value either contributed to or obtained by classes 10, 11, and 12 includes non-financial consideration, then we will need to ask questions about these topics as written.

**We plan on designating Gaurav Malhotra to testify with respect to the financial value and Kevyn Orr with respect to the non-financial value for these topics as further articulated.**

Topic No. 29: We explained that there are three components to this topic: (1) The identity of the City's retirees; (2) The location of the City's retirees; and (3) The financial position of the City's retirees. We would be willing to withdraw our request for the specific identity of the retirees -- i.e., their names -- and instead provide a unique number. With respect to the location of the City's retirees, if providing specific addresses is an issue, we would be willing to accept the retirees' city and state of residence. For the financial position of the City's retirees, we want to know the retiree's current assets and income. We explained that this information is relevant to the hardship argument raised by the City in its reply brief. In lieu of designating and preparing a witness on these topics, it would be acceptable for the City to refer us to document(s) containing the requested information and stipulate that the City's knowledge regarding retirees is limited to the information contained in the document. Alternatively, if the City does not have the requested information, we would be willing to enter into a stipulation that the City does not know the financial position of the retirees. In short, we are trying to determine the extent of the City's knowledge regarding the location and financial position of the City's retirees.

**After checking, we do not believe the City maintains a collective database of retiree data. We understand, however, that Gabriel Roeder, actuarial advisor to the Retirement Systems, has census data that will provide the information responsive to items (1) and (2) that is available to the City. We also understand that you have already contacted the Retirement Systems' counsel to gain access to that information. We believe that asking a 30(b)(6) witness for the location/home addresses of the City's over 20,000 retirees is unduly burdensome and unnecessary particularly in light of your ability to gain that information from the Retirement Systems which supplies the City with that information. With respect to the third item - retirees' financial position - the City objects to that as a 30(b)(6) topic because it's irrelevant, overly burdensome and personally intrusive.**

Topic No. 30: We clarified that the information we are seeking in this topic relates to (a) the current status of the City's long-term urban development plan and its future plans; (b) how that plan harmonizes with the Detroit Future City Strategic Framework; and (c) the status of the City's potential transition of urban planning responsibilities from the Planning and Development Department to the Detroit Economic Governance Corporation. In addition, if Marcel Todd is not the person with relevant information on this topic, please let us know so that we can consider deposing a witness from the DEGC (if in fact there has been a transfer of responsibilities).

**We plan on designating Charles Moore and Mayor Duggan to testify on this topic as further articulated. We do not believe Mr. Todd is the person with relevant information on this topic, and there has been no transfer of responsibilities from the PDD to the DEGC.**

Topic No. 32: You explained that this particular topic -- as it relates to the request for information regarding the history of the DIA and the Collection -- was not sufficiently specific. We agreed to provide further specificity. In particular, we are seeking information relating to (a) the City's purchase of art that is or was contained in the DIA; (b) the City's funding and oversight of the DIA; (c) the City's historical position(s) on the ownership of the art in the DIA; (d) state funding of the DIA; and (e) any previous closures of the DIA.

**While we continue to have concerns about the burdensomeness of this request, we are looking into who would be an appropriate designee for the City on this topic as further articulated.**

Topic No. 34: We clarified that we are seeking any anticipated changes to the City Charter. We explained that we are not asking the City to gather up every idea for a City Charter change by various City employees. We are looking for anticipated changes that have reached the level of crystallization that they are anticipated to be proposed by Kevyn Orr or Mayor Duggan in the near future. If, as we suspect, Mr. Orr and Mr. Duggan are not contemplating making any changes to the City Charter, we would be willing to enter into a stipulation with the City stating as much. If the City is contemplating making any changes, we would also be willing to enter

2

into a stipulation specifying the changes that it intends to propose, leaving for another day whether we would need to ask questions regarding those proposed changes. (That is, our ability to stipulate that only changes x, y, and z are anticipated without any deposition may depend on what the changes are.)

**We plan on designating Kevyn Orr and Mayor Duggan to testify on this topic as further articulated.**

Topic No. 45: We explained that we want to know where in the City's plan it decided to use a 5% discount rate and why it decided to use that discount rate. We assume that the City used a 5% discount rate throughout its plan but you were going to confirm that we were correct. If we are not correct, we want to know where the City used a 5% discount rate, where it did not use that discount rate, and why.

**We plan on designating Ken Buckfire to testify on this topic as further articulated.**

Topic No. 48: We agreed to withdraw this topic.

**William E. Arnault**
Kirkland & Ellis LLP
300 North LaSalle Street, Chicago, IL 60654
+1-312-862-3062 (Dir.) +1-312-862-2200 (Fax)
www.kirkland.com

***********************************************************
IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return e-mail or by e-mail to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.
***********************************************************


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========