**Exhibit 6C**

**8/4/2014 Deposition Transcript of B. Stibitz (excerpted)**

BROM STIBITZ

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| Debtor. | ) | Hon. Steven W. Rhodes |

The Videotaped Deposition of BROM STIBITZ,

a 30(b)(6) witness,

Taken at 215 South Washington Square, Suite 200,

Lansing, Michigan,

Commencing at 12:59 p.m.,

Monday, August 4, 2014,

Before Rebecca L. Russo, CSR-2759, RMR, CRR.

00000000-0000-0000-0000-000000000000

BROM STIBITZ

without City authorization?
A. No.
Q. And what about the NHL arena? At this time is that set to go forward?
A. My understanding is yes.
Q. Is it your understanding that the State has allocated funds and put those aside already for the NHL arena?
A. I don't know.
Q. Do you know whether the City, City leaders have accepted the proposal at this time for the NHL arena?
A. I don't know.
MS. NELSON: We can get those answers if you want them, within five minutes.
MR. MCCARTHY: Why don't we do that at the next break, if it's a good time.
MS. RUTNER: Yeah, we'll talk about it at the next break, actually, yeah.
BY MS. RUTNER:
Q. Now, putting aside the State proposal, proposals for these projects, did the State ever consider providing the City with any loans?
A. Not that I'm aware of.
Q. So in the days leading up to the bankruptcy, you're not aware of any considerations or discussions at the

BROM STIBITZ

State with respect to providing the City with a loan?
A. Not that I recall.
Q. Do you know of anybody at the State who might know about that?
A. No.
Q. Okay, if you could turn back to -- I apologize.
All right, if you could turn back to the subpoena, which is Exhibit 1, let's take a look at topic five, which is on the bottom of page 6.
What did you do to prepare to testify for this topic?
A. I reviewed the, the State Contribution Agreement, and I reviewed their responses to the interrogatories from the public safety unions. I reviewed the legislation associated with the State contribution.
Q. Do you have any personal knowledge as to the issues in topic five outside of what you did to prepare for the deposition?
A. No.
Q. Okay, let's walk through any communications among State officials regarding potential claims that could be brought against the State by the pensioners.
Have there been any discussions among State officials regarding potential, potential claims

BROM STIBITZ

brought against the State by the pensioners?
MS. NELSON: Well, I'm going to object, first of all, because those discussions are principally attorney-client privilege, and the State's discussions and its answers are set forth in the interrogatory responses to the public safety union's interrogatories.
BY MS. RUTNER:
Q. Outside of discussions with your -- with attorneys present, do you know of any discussions amongst State officials regarding potential claims brought against the State by the pensioners?
A. No.
Q. Outside of communications with counsel, what is the State's understanding of the basis for any potential liability for claims brought against it by the pensioners, in other words, the arguments --
MR. MORRIS: Objection, form.
BY MS. RUTNER:
Q. -- you are raising?
A. I'm sorry, could you restate the question?
Q. Sure. Outside of any communications with counsel, what is the State's understanding as to the basis of any potential liability for claims brought against the

BROM STIBITZ

State by the pensioners?
MS. NELSON: Well, I'm going to object --
MR. MORRIS: Objection.
MS. NELSON: I'm going to object as to form and foundation, because he's already indicated there were no discussions amongst State officials outside of their counsel regarding potential claims, in answer to your last question.
BY MS. RUTNER:
Q. So as you sit here today, are you aware, are you aware of any -- of what the State's understanding is outside of any communications with counsel as to the basis of any potential liability for claims brought against it by the pensioners?
MR. MORRIS: Object to form.
A. The State's position is that there are no claims.
BY MS. RUTNER:
Q. But what I'm asking about is, what is the State's understanding of the arguments that the pensioners are raising against the State?
MR. MORRIS: Object to form.
MS. RUTNER:
Q. Or the basis for liability?
MS. NELSON: By who?

BROM STIBITZ

MR. MORRIS: Object to form.

MS. RUTNER: The basis for liability by the pensioners -- excuse me, by the, the basis for liability that the pensioners are, are asserting against the State.

MR. MORRIS: Object to form.

MS. NELSON: Well, number one, that goes to the confidentiality of the mediation agreement, and I would have to instruct him not to answer on that ground, and two, it's attorney-client privilege.

MS. RUTNER: So are you instructing him not to answer?

MS. NELSON: Yes.

BY MS. RUTNER:

Q. And are you going to follow that instruction?

A. Yes.

Q. Has the State's position ever changed with respect to its concern about its potential liability for claims raised by the pensioners?

MS. NELSON: Objection --

MR. MORRIS: Object to form.

MS. NELSON: Objection, it invades the confidentiality of the mediation process, and I instruct him not to answer.

BROM STIBITZ

MS. RUTNER: I'm referring to prior to the mediation.

BY MS. RUTNER:

Q. Was there ever a time in which, or has there ever been a time in which the State's position was one thing with respect to what they felt -- or with respect to their concerns about the pensioners' potential claims against the State and then that position changed?

MR. MORRIS: Object to form.

MS. NELSON: Well, again, the second portion of your question I object to, because it invades the confidentiality of the mediation process --

MS. RUTNER: I'm only referring to --

MS. NELSON: -- which is a give and take.

MS. RUTNER: -- I'm only referring to conversations or -- conversations or discussions or communications or anything prior to August 13th, 2013.

MR. MORRIS: Same objection.

A. Not to my knowledge.

MS. RUTNER: I'm marking as Exhibit 10 -- is that what we're up to? Sorry, I apologize, Exhibit 7. I'm marking as Exhibit 7 the State's answers to the public safety union's interrogatories.

BROM STIBITZ

MARKED FOR IDENTIFICATION:
DEPOSITION EXHIBIT 7
3:00 p.m.

BY MS. RUTNER:

Q. If you see the first answer, have you reviewed this response?

A. Yes.

Q. And are you familiar with the contents of it?

A. Yes.

Q. Do you know who at the State was involved in making the decision that, and I'm quoting from the interrogatory response: There are no valid claims that can be or have been asserted against the State, the State entities, or the State-related entities by any person?

A. No.

Q. Do you know if the State conducted any sort of analysis about the reliability specifically in response to this interrogatory, or was it a -- or was this response made based on an analysis that predated the interrogatory?

A. I don't know.

Q. I want to understand, and this is outside of any communications with your attorney, what exactly is the

BROM STIBITZ

basis for the State's position that there are no valid claims that can be asserted against it by the pensioners?

What's the State's position -- why does the State feel that the claims raised by the pensioners are invalid?

MS. NELSON: Well, I'm going to object because that encompasses the attorney-client privileged communications that related specifically to the pensioners' claims and the formulation of response to this interrogatory.

MS. RUTNER: So are you instructing your witness not to answer?

MS. NELSON: Yes.

BY MS. RUTNER:

Q. And you're going to follow that instruction?

A. Yes.

Q. Okay, putting aside the State's position as to the validity of any claims brought against it by the pensioners, I want to discuss any concerns the State may have had about, about the lawsuit, with respect to the cost of litigating the lawsuit, the time it might take, the bad press it might bring.

Were there ever discussions that you know