# Exhibit 6E

# 7/22/2014 Deposition Transcript of A. Erickson (excerpted)

## Page 1

```
 1              ANNMARIE ERICKSON
 2        IN THE UNITED STATES BANKRUPTCY COURT
 3          FOR THE EASTERN DISTRICT OF MICHIGAN
 4
 5
 6   In re:              ) Chapter 9
 7   CITY OF DETROIT, MICHIGAN,    ) Case No. 13-53846
 8        Debtor.     ) Hon. Steven W. Rhodes
 9
10   _____
11
12
13       The Videotaped Deposition of ANNMARIE ERICKSON,
14       in her personal capacity and as Rule 30(b)(6) witness,
15       Taken at 1114 Washington Boulevard,
16       Detroit, Michigan,
17       Commencing at 10:07 a.m.,
18       Tuesday, July 22, 2014,
19       Before Cheri L. Poplin, CSR-5132, RPR, CRR.
20
21
22
23
24
25
```

## Page 2

```
 1              ANNMARIE ERICKSON
 2   APPEARANCES:
 3
 4   ARTHUR THOMAS O'REILLY, ESQ.,
 5   SCOTT B. KITEI, ESQ.
 6   Honigman, Miller, Schwartz & Cohn, LLP
 7   2290 First National Building
 8   660 Woodward Avenue
 9   Detroit, Michigan 48226
10       Appearing on behalf of the Detroit Institute of Arts.
11
12
13
14
15   GEOFFREY S. IRWIN, ESQ.,
16   ALEXANDER E. BLANCHARD, ESQ. (via telephone)
17   Jones Day
18   51 Louisiana Avenue, N.W.
19   Washington, D.C. 20001
20       Appearing on behalf of the Debtor, City of Detroit.
21
22
23
24
25
```

## Page 3

```
 1              ANNMARIE ERICKSON
 2   PAUL C. GUNTHER, ESQ.
 3   Dentons US LLP
 4   1221 Avenue of the Americas
 5   New York, New York 10020-1089
 6       Appearing on behalf of the Retiree Committee.
 7
 8
 9
10   DIANA A. SANDERS, ESQ. (via telephone)
11   Chadbourne & Parke, LLP
12   30 Rockefeller Plaza
13   New York, New York 10112
14       Appearing on behalf of Assured Guaranty Municipal
15       Corp.
16
17   MICHAEL J. PATTWELL, ESQ.
18   Clark Hill, PLC
19   212 East Grand River Avenue
20   Lansing, Michigan 48906
21       Appearing on behalf of the Retirement Systems for the
22       City of Detroit.
23
24
25
```

## Page 4

```
 1              ANNMARIE ERICKSON
 2   EDWARD R. McCARTHY, ESQ.
 3   Weil, Gotshal & Manges LLP
 4   1395 Brickell Avenue
 5   Suite 1200
 6   Miami, Florida 33131
 7       Appearing on behalf of the Financial Guaranty
 8       Insurance Company.
 9
10
11
12   FARAYHA J. ARRINE, ESQ.
13   Dickinson Wright, PLLC
14   500 Woodward Avenue
15   Suite 4000
16   Detroit, Michigan 48226
17       Appearing on behalf of the State of Michigan.
18
19
20
21   ALSO PRESENT:
22   Ben Solorzano - Video Technician
23
24
25
```

Pages 1 to 4

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 6985-10   Filed 08/22/14   Entered 08/22/14 16:36:24   Page 2 of 4

## Page 181

| | ANNMARIE ERICKSON |
|---|---|
| 1 | |
| 2 | A. Yes. |
| 3 | Q. Did anyone else from the DIA have input, not lawyers, |
| 4 | but your -- any other staff members from the DIA? |
| 5 | A. Mr. Beal also looked at it and our chief financial |
| 6 | officer, Mr. Bowen. |
| 7 | Q. If you turn to Page 6 of this, and I apologize. The |
| 8 | page number is a little tough to see because they're |
| 9 | buried with the stamp of the court, but it's Page 123 |
| 10 | of 301 in the bottom right-hand corner. |
| 11 | A. Um-hmm. |
| 12 | Q. And the first full box in the term sheet on Page 6 of |
| 13 | Exhibit 15 states "The DIA Commitment Regarding |
| 14 | Funding"; correct? |
| 15 | A. That's correct. |
| 16 | Q. And it notes in the box amongst other things that "The |
| 17 | DIA undertakes to secure commitments for contributions |
| 18 | of $100 million"; correct? |
| 19 | A. That's correct. |
| 20 | Q. Is it your understanding that as part of this |
| 21 | settlement the DIA has committed to raising $100 |
| 22 | million? |
| 23 | A. Yes. |
| 24 | Q. At the time the term sheet was entered into, did the |
| 25 | DIA believe it could raise $100 million under the |

## Page 182

ANNMARIE ERICKSON
1
2  terms of the settlement?
3  A. At the time the term sheet was entered into?
4  Q. Yeah.
5  A. Yes.
6  Q. Does the DIA still believe that today?
7  A. Yes.
8  Q. Has anything changed over the course of the last year
9      that would lead you to believe that it's become more
10     possible for the DIA to raise $100 million than it
11     would have been say a year ago?
12         MR. O'REILLY: Objection. Form.
13  A. Could you restate that, please? I'm not sure how to
14     answer.
15  BY MR. McCARTHY:
16  Q. Sure. I've read some -- I've seen some articles and I
17     can put one before you, where there's some statements
18     a while ago that the DIA previously believed it would
19     be impossible to raise $100 million, and I'm curious
20     if, you know, if that's your position and what has
21     changed since then. So my question --
22         MR. O'REILLY: Objection. Form.
23  BY MR. McCARTHY:
24  Q. Go ahead.
25  A. Mr. McCarthy, we were in a negotiation at that point

## Page 183

ANNMARIE ERICKSON
1
2  in time and --
3         MR. O'REILLY: And I'm just -- before we go
4      down that road, there is a standing order in place in
5      which there's a mediation order that says we are not
6      to disclose negotiations pertaining to the mediation
7      or things attendant thereto, so as you formulate your
8      response, please be judicious and careful about what
9      you say and I'll object as appropriate. So far
10     Mr. McCarthy's questions haven't called for it, but I
11     heard you going down a road I didn't want you to go.
12  BY MR. McCARTHY:
13  Q. The -- let me try to streamline this. To the extent
14     the DIA made statements within the course of the last
15     year that it may have been impossible or very
16     difficult to raise $100 million, am I fair to assume
17     that those statements were made in part because
18     ongoing settlement discussions were going on?
19         MR. O'REILLY: Hold on.
20         MR. McCARTHY: I'm trying to get at this
21     without digging into --
22         MR. O'REILLY: I know. I'm just trying to
23     figure out --
24         MR. McCARTHY: Let's --
25         MR. O'REILLY: Let's go off the record, if

## Page 184

ANNMARIE ERICKSON
1
2  we could.
3         MR. McCARTHY: Sure.
4         VIDEO TECHNICIAN: The time is 2:33 p.m.
5  We are off the record.
6         (Recess taken at 2:33 p.m.)
7         (Back on the record at 2:42 p.m.)
8         VIDEO TECHNICIAN: We are now on the
9  record. The time is 2:42 p.m.
10  BY MR. McCARTHY:
11  Q. When did the DIA learn that it would -- that it was
12     agreeing to undertake a commitment to contribute $100
13     million to the settlement?
14         MR. O'REILLY: I'm going to object. I
15     think you're asking a time during -- during the course
16     of negotiations when they would have made some
17     commitment. I think that's covered by the order.
18         MR. McCARTHY: So the objection is the
19     mediation privilege? Just so I'm clear.
20         MR. O'REILLY: The mediation order. Unless
21     you want to try and work around it.
22         MR. McCARTHY: I just want to make sure
23     we're clear. So you're instructing the witness not to
24     answer based on privilege?
25  BY MR. McCARTHY:

Pages 181 to 184

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 6985-10   Filed 08/22/14   Entered 08/22/14 16:36:24   Page 3 of 4

Page 185

ANNMARIE ERICKSON

Q. And I assume you will be --
A. I will comply.
Q. Okay.
 MR. O'REILLY: And I'll just articulate the reason why the question was when during the course of negotiation did the DIA make a decision as to when to participate, and that would be covered by the mediation order of the Court.
BY MR. McCARTHY:
Q. This term sheet's dated May 5th, 2014; correct?
A. Correct.
Q. As of May 5th, 2014, in your capacity as a corporate representative for the DIA, did the DIA view the undertaking to raise $100 million as a difficult undertaking?
A. Absolutely.
 MR. IRWIN: Just for the record, when you say May 5th, 2014, you mean the date it was filed --
 THE WITNESS: Filed.
 MR. IRWIN: -- by the City in the bankruptcy proceeding?
 MR. McCARTHY: That is the date --
 MR. IRWIN: Or the date of the document?
 MR. McCARTHY: That is the date I was

Page 186

ANNMARIE ERICKSON

referencing, the filing date that is on this document.
 MR. IRWIN: Okay. Are you representing that that is the date of the document as opposed to the date of the filing?
 MR. McCARTHY: I am not.
 MR. IRWIN: Or it may not be material to your question.
 MR. McCARTHY: I agree. And thank you for the clarification.
A. No matter the date, raising $100 million is very difficult.
BY MR. McCARTHY:
Q. And so we're clear for the record -- and I do not have this information before me. Do you know what date this term sheet which was filed as of May 5th, 2014, was agreed to?
A. I do not know.
Q. Has your view changed since agreeing -- since the DIA agreed to this term sheet, has the stance of the DIA changed at all with respect to the relevant difficulties in raising the $100 million obligation under the settlement term sheet?
A. Not at all. It's been very difficult. It's taken us away from our regular course of business.

Page 187

ANNMARIE ERICKSON

Q. What has the DIA done to meet its obligations to secure the $100 million in commitments under the settlement term sheet?
A. We have a meeting with donors consistently to negotiate gifts.
Q. Without getting into specific names, who are the donors? Are they businesses?
A. Primarily corporations. Some foundations and some individuals.
Q. Outside of -- are the donors -- does the DIA have any way of knowing as you sit here today what percentage of the donors are Michigan-based?
 MR. O'REILLY: Objection. Vague.
A. As I sit here today, I would say that the large percentage of them are Michigan-based.
BY MR. McCARTHY:
Q. Have you yourself personally been one of the key players in attempting to raise the $100 million commitment under the settlement term sheet?
A. Yes, I have.
Q. How is the DIA doing in raising that commitment?
A. We just held a news conference last week and announced that we were 80 percent of the way there.
Q. Do you have an estimated time frame within which

Page 188

ANNMARIE ERICKSON

you'll be able to raise the full $100 million?
A. I do not. We were trying to do it as expeditiously as possible, but I don't have a deadline.
Q. As you sit here today, do you believe the DIA will be able to meet that commitment?
A. Without a doubt.
Q. How has the DIA been balancing the fundraising it's doing with respect to meeting the $100 million commitment under the settlement term sheet with its regular fundraising with respect to endowments or operational funding?
A. Meeting the $100 million has mostly derailed our endowment campaign, partially because we're raising a large sum of money for another purpose and partially for the reason I articulated earlier, that until the bankruptcy is settled, most people do not want to give large endowment gifts and make multi-year commitments. In terms in terms of our normal fundraising, we're continuing to be very aggressive with our membership program, with our major gifts program, with our annual fund program, and at the end of our fiscal year we had exceeded most of our goals.
Q. With respect to balancing the fundraising for the $100 million commitment under the settlement term sheet and

Pages 185 to 188

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt   Doc 6985-10   Filed 08/22/14   Entered 08/22/14 16:36:24   Page 4 of 4