# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|   |   |   |
|---|---|---|
| In re | : | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | : | Case No. 13-53846 |
| Debtor. | : | Hon. Steven W. Rhodes |

## REPLY OF THE CITY OF DETROIT TO OBJECTION TO THE CITY'S MOTION FOR AN ORDER APPROVING POSTPETITION FINANCING, GRANTING LIENS AND APPROVING THE SETTLEMENT OF CONFIRMATION OBJECTIONS

The City of Detroit (the "City") files this reply (the "Reply") to the objection (Docket No. 6903) of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (together, "Syncora") to the *Motion of the Debtor for a Final Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections* (Docket No. 6644) (the "Motion").[1] In support of its Reply, the City respectfully represents as follows:

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

## INTRODUCTION

1.      The Motion's purpose is simple.  It seeks Court approval of (a) financing as part of a ***consensual*** process by which DWSD can achieve significant debt service relief in a manner that its financial creditors find acceptable and (b) certain related settlements that will fully resolve the DWSD Objecting Parties' DWSD-related objections to confirmation of the Plan.

2.      Specifically, DWSD requires (a) financing to purchase and subsequently cancel Existing DWSD Bonds that have tendered and that may be accepted for purchase or Existing DWSD Bonds that may be redeemed and (b) additional financing in an amount not to exceed $190 million to fund essential capital improvements to the City's sewage disposal system (collectively, the "DWSD Revenue and Revenue Refunding Financing").  To obtain this financing, DWSD intends to sell bonds (the "2014 DWSD Revenue and Revenue Refunding Bonds") to the Michigan Finance Authority (the "MFA").  The MFA will sell its own bonds through a public sale or to Citibank, N.A. ("Citi") as part of a direct purchase.  The public marketing process for the 2014 DWSD Revenue and Revenue Refunding Bonds will determine the final economic terms for such bonds within certain parameters expressed in the Motion and as will be more fully developed at the hearing on the Motion.

3. Syncora, which is neither a DWSD bondholder nor a DWSD bond insurer, is the only entity that has lodged a substantive objection to the relief requested in the Motion. Under Michigan law, savings resulting from the refunding transactions that DWSD expects to realize will remain in the DWSD systems. Thus, *no financial creditor other than a DWSD bond creditor* has any legally-cognizable interest in the financing transactions that are the subject of the Motion. DWSD's decision to purchase and subsequently cancel the Tendered Bonds and DWSD's ability to consummate the DWSD Revenue and Revenue Refunding Financing *has no impact on Syncora* or the treatment of its clams under the Plan. Syncora lacks standing to object to the relief requested in the Motion.

4. Even if Syncora possessed standing to assert its objection, the objection is entirely devoid of merit. The necessary economic terms and other factual items for the Court to approve the DWSD Revenue and Revenue Refunding Financing are set forth in the Motion, including all of the economic terms relating to the DWSD Revenue and Revenue Refunding Financing and the potential issuance of bonds to Citi via a direct purchase (the "Citi Backstop"). The Citi Backstop is intended to serve as a ceiling for the economic terms that DWSD may accept in connection with the DWSD Revenue and Revenue Refunding Financing, but DWSD fully expects that the economic terms provided by the public markets

will prove substantially more attractive, thus eliminating any need for DWSD to utilize the Citi Backstop.

5.      Approval of the financing requested in the Motion has no impact on the treatment of any claim that is treated under the City's plan of adjustment (Docket No. 6908) (as it may be amended, modified or supplemented, the "Plan") other than claims on account of Existing DWSD Bonds in Classes 1A-1 through 1A-337 of the Plan.[2]  The relief requested in the Motion does not meet the definition of a "Qualifying DWSD Transaction" as that term is defined in the Plan since the relief does not contemplate the transfer of any assets to a third party. Accordingly, the hearing on the Motion is not the time for Syncora to argue its objections to confirmation of the Plan.

## REPLY

**A.      Syncora Lacks Constitutional Standing to Object to the Motion.**

6.      Syncora lacks constitutional standing to object to the Motion because the relief requested in the Motion will have no cognizable impact on Syncora's rights and interests in this case.

7.      Under well-settled bankruptcy law, a party must show not only that it is a "party in interest" under section 1109(b) of the Bankruptcy Code, but

---

[2]      The Tender and Tender Offer Financing fall outside the Plan's definition of "Qualifying DWSD Transaction" and therefore Classes 10 and 11 will receive no additional consideration under the Plan if the Tender transaction is consummated.

- 4 -

that it also has constitutional standing.  See In re Martin Paint Stores, 207 B.R. 57, 61 (S.D.N.Y. 1997) ("[A]lthough section 1109(b) of the [Bankruptcy] Code provides that a 'party in interest' may appear and be heard on any issue, a party claiming to be a party in interest must still satisfy the general requirements of the standing doctrine."); In re Global Indus. Techs., 645 F.3d 201, 210 (3d Cir. 2011) (notwithstanding section 1109(b), "a party must, in the first instance, meet the requirements for standing that litigants in all federal cases face under Article III of the Constitution"); In re A.P.I. Inc., 331 B.R. 828, 856-57 (Bankr. D. Minn. 2005) (finding that parties need both statutory and constitutional standing to file objections).

8.    To establish standing under Article III of the Constitution, (a) a party must have suffered an "injury in fact," (b) "there must be a causal connection between the injury and the conduct complained of" and (c) it must be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Federal courts also impose certain prudential restrictions upon standing, including that a party may not assert a "generalized grievance not particular to" that party and that a party may not assert "the legal rights and interests of a third party."  In re Cannon, 277 F.3d 838, 853 (6th Cir. 2002).  See also White v. JPMorgan Chase Bank, NA, 521 F. App'x 425, 428 (6th Cir. 2013) (recognizing that there is a "long-

standing principle that parties must assert their own rights and not the rights or interests of others").

     9.    In complex bankruptcy cases especially, a party must establish that it has constitutional standing on an issue-by-issue basis.  As the Second Circuit Court of Appeals described in the plan confirmation context:

> The prudential concerns limiting third-party standing are particularly relevant in the bankruptcy context. Bankruptcy proceedings regularly involve numerous parties, each of whom might find it personally expedient to assert the rights of another party even though that other party is present in the proceedings and capable of representing himself.  Third-party standing is of special concern in the bankruptcy context where ... one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties ....

Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 644 (2d Cir. 1988); see also In re Quigley Co., 391 B.R. 695, 705 (Bankr. S.D.N.Y. 2008) (courts must "decide questions of standing, particularly, in multi-party, multi-issue confirmation proceedings, on an issue-by-issue basis" and a party may only objection to issues that "directly implicate its own rights and interests"); In re Morris Publ'g Grp. LLC, No. 10-10134, 2010 Bankr. LEXIS 488, at *11 (Bankr. S.D. Ga. Feb. 9, 2010) ("§ 1109 does not give every party in interest the right to seek relief on every issue ...").

     10.    For example, courts routinely conclude that parties lack standing to object to the treatment of claims in other classes.  See, e.g., In re

- 6 -

Seasons Partners, LLC, 439 B.R. 505, 514 (Bankr. D. Ariz. 2010) (secured creditor had no standing to object to treatment of priority tax claims or trade creditors' claims); In re Applied Safety, Inc., 200 B.R. 576, 587 (Bankr. E.D. Pa. 1996) (general creditor had no standing to object to treatment of administrative expense claims); In re Adamson Co., 42 B.R. 169, 172 (Bankr. E.D. Va. 1984) (secured creditor had no standing to object to treatment of priority claims).

11.     Courts have similarly denied parties the right to be heard in numerous other contexts where the issue in question did not directly impact their rights.  See, e.g., Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1075 (9th Cir. 2002) (unimpaired creditor had no standing to raise unfair-discrimination objection); Greer v. Gaston & Snow (In re Gaston & Snow), No. 93 Civ. 8517 (JGK), 1996 WL 694421, at *7 (S.D.N.Y. Dec. 4, 1996) (creditor who did not allege that he would receive more under a chapter 7 liquidation than under the plan could not argue that the plan violated the "best interest of the creditors" test as to other creditors); Tascosa Petrol. Corp., 196 B.R. 856, 863 (D. Kan. 1996) (class 5 creditor could not assert rights of class 4 creditors in objecting to plan); Mut. Life Ins. Co. of N.Y. v. Patrician St. Joseph Partners Ltd. P'ship (In re Patrician St. Joseph Partners Ltd. P'ship), 169 B.R. 669, 680-82 (D. Ariz. 1994) (oversecured creditor had no standing to raise best-interest-of-creditors and absolute-priority-rule objections); In re Snyder, 56 B.R. 1007, 1011

(N.D. Ind. 1986) (party had "no standing to appeal ... order approving the disclosure statement on the grounds that the statement inadequately informs classes of creditors of which [the party is not a member]"); Quigley, 391 B.R. at 705 ("[an] objecting party can only challenge the parts of the plan that directly implicate its own rights and interests"); In re Simplot, No. 06–00002, 2007 WL 2479664, at *10 (Bankr. D. Idaho Aug. 28, 2007) (limiting standing of an entity in which debtor owned stock to specific issues and rejecting standing to raise other issues); In re Johns–Manville Corp., 68 B.R. 618, 623 (Bankr. S.D.N.Y. 1986), aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.), 843 F.2d 636, 644 (2d Cir. 1988) ("[N]o party may successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation.").

12.     Here, the DWSD Revenue and Revenue Refunding Financing has no conceivable impact on Syncora's interests in this case because (a) Syncora does not have claims in any of the affected DWSD Bond classes (Classes 1A-1 through 1A-337) under the Plan,[3] (b) Syncora does not insure any DWSD Bonds and (c) the debt service relief that is expected to to be provided if the Tender is

---

[3]     See Syncora's Supplemental Brief Regarding its Standing to Object to Plan Confirmation (Docket No. 6009) at 6 (stating that Syncora holds "COP Claims," "UTGO Claims" and "Other Unsecured Claims," but not DWSD Claims).

successfully closed can inure only to the benefit of the DWSD systems.[4]

Accordingly, Syncora lacks standing to object to the Motion, and the Court should overrule Syncora's objection.

13.     Syncora asserts that "the Motion contains no information regarding how the transaction will impact creditor recoveries under the Plan or the relevance of the transaction for purposes of the City satisfying confirmation requirements."  See Syncora Objection, at ¶ 13.  Simply put, the Tender Offer and Tender Offer Financing will not have *any* impact on Syncora's recoveries under the Plan.  Syncora itself acknowledges that the Tender Offer and Tender Offer Financing will not impact its COP Claims.  See id. at ¶ 22 (noting that the relief

---

[4]     The Revenue Bond Act of 1933 (the "Revenue Bond Act"), MCL §§ 141.101 – 141.140, provides, in relevant portion:  "In the authorizing ordinance the governing body of the borrower shall provide that the revenues of the public improvement be accounted for separately from the other funds and accounts of the borrower ..."  See Revenue Bond Act § 141.122 (emphasis added); see also Charter of the City of Detroit § 7-1203 ("All money paid into the city treasury from fees collected for water, drainage or sewerage services shall be used exclusively for the payment of expenses incurred in the provision of these services ... and shall be kept in separate funds.").

The 2014 DWSD Revenue and Revenue Refunding Bonds will be secured by DWSD's Net Revenues, the restrictions on the use of which are governed by applicable bond ordinances, DWSD trust indentures and the Revenue Bond Act as set forth above — i.e., only for purposes directly related to DWSD.  As a result, the only parties that are impacted by the collection or spending of DWSD Net Revenues or by the granting of a security interest therein are those parties who hold claims in Class 1 arising in connection with the Existing DWSD Bonds.  As discussed above, Syncora holds no such claims.

- 9 -

sought in the Motion will not inure to the benefit of holders of COP Claims).

Further, nothing in the Motion prevents Syncora from raising any objection to the

Plan for which it possesses standing. The time to do that, however, is not in

connection with this Motion.

**B.  The Proposed Financing Reflects DWSD's Sound Exercise of Its Business Judgment and Should Be Approved.**

14.  Even assuming the Court determines that Syncora possesses

standing to object to the Motion, Syncora's objection provides no legal justification

to deny the relief requested in the Motion. Contrary to Syncora's assertions, there

is ample factual support for DWSD's exercise of its business judgment that the

terms of the DWSD Revenue and Revenue Refunding Financing are appropriate.[5]

Courts give significant deference to the debtor's business judgment in deciding

whether to approve postpetition financing. See In re YL W. 87th Holdings I LLC,

423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a

---

[5]  This Court has previously ruled that the City's planned use of proceeds of postpetition financing is not relevant in the context of a chapter 9 case. See Dec. 13, 2013 Hearing Transcript at 42:3-16 (the Court stating that "Section 904 of the Bankruptcy Code prohibits any review of what the city proposes to do with the proceeds of the loan ..."); Jan. 16, 2014 Hearing Transcript at 27:3-5 (the Court stating that "[c]onsistent with section 904, however, the Court will not review any aspect of the use of proceeds other than its compliance with the Gaming Act ..."). As a result, Syncora's argument that DWSD has failed to provide the necessary information with respect to its intended use of the proceeds of the DWSD Revenue Financing — which is incorrect — is also irrelevant. Copies of the relevant portions of the December 13, 2013 and January 16, 2014 hearing transcripts are attached hereto as Exhibits A and B.

- 10 -

debtor's business judgment in granting section 364 financing."); In re Mid-State Raceway, 323 B.R. 40, 58 (Bankr. S.D.N.Y. 2005) (holding that "to overcome the business judgment rule, the entity opposing the decision by the directors must establish that they acted in bad faith or with fraudulent intent.").

15.     While Syncora references various factors set forth in In re Farmland Industries Inc., 294 B.R. 855 (Bankr. W.D. Mo. 2003), no court has applied Farmland in the chapter 9 context.[6]  Moreover, it is not clear that bankruptcy courts in the Eastern District of Michigan apply Farmland even in the chapter 11 context.[7]  In addressing the standards for approving postpetition financing in a chapter 9 case, the Court has previously stated:

> [T]he Court basically agrees with the city's position that Section 904 of the Bankruptcy Code prohibits any review of what the city proposes to do with the proceeds of the loan and actually prohibits any review beyond the narrow review that Section 364 itself requires to determine the reasonableness of the terms of

---

[6]     Under the Farmland test, courts look at the following factors:  (a) that the proposed financing is an exercise of sound business judgment, (b) that no alternative financing is available on any other basis, (c) that the financing is in the best interests of the estate and its creditors, (d) whether there are any better offers, bids or timely proposals before the court, (e) that the financing is necessary to preserve assets of the estate, (f) that the terms of the financing are fair, reasonable and adequate given the circumstances and (g) that the financing was negotiated in good faith and at arm's length.  See Farmland, 294 B.R. at 879-80.

[7]     Even if the Court were to apply the Farmland test to the DWSD Revenue and Revenue Refunding Financing, the Motion and related factual support that DWSD will present at the hearing on the Motion are more than sufficient to satisfy the Farmland test.

- 11 -

the borrowing given the current market conditions for similar kinds of loans and the other technical requirements of Section 364, including the city's inability to obtain a loan on any better terms.[8]

16.     As set forth in the Motion, the DWSD Revenue and Revenue Refunding Financing represents a sound exercise of DWSD's business judgment and satisfies all of the requirements of section 364 of the Bankruptcy Code.  In contrast to Syncora's complaints, the Motion contains all of the economic terms necessary for a party to assess the proposed DWSD Revenue and Revenue Refunding Financing.

17.     For instance, the Motion sets forth the maximum interest rate that DWSD would pay in connection with any public sale of the 2014 DWSD Revenue and Revenue Refunding Bonds.  As is typical in municipal financing, DWSD will establish the actual interest rates associated with any sale of the 2014 DWSD Revenue and Revenue Refunding Bonds at the time they are actually taken to market.  The City also includes all of the details necessary for one to assess the Citi Backstop, which is intended to provide nothing more than a ceiling for the interest rates that DWSD may pay in connection with a sale of the 2014 DWSD Revenue and Revenue Refunding Bonds.

18.     The Motion also sets forth other material terms associated with the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds through

---

[8]     See Dec. 13, 2013 Hearing Transcript at 42, 3-16.

- 12 -

either a public sale or private offering to Citi, including maturities, applicable bond insurance, reserve funds and anticipated pricing and sale dates. At the hearing on the Motion, DWSD intends to supplement the details and other factual support contained in the Motion and the related Donner Declaration, Bateson Declaration and Brownstein Declaration with additional information regarding the foregoing topics and the benefits that the DWSD Revenue and Revenue Refunding Financing will provide to DWSD.

## <u>CONCLUSION</u>

For each of the forgoing reasons, the City submits that the Court should find and hold that Syncora does not have standing to object to the Motion or that Syncora's objection should be overruled. In either case, the Motion should be approved in all respects.

CHI-1939608v9

Dated: August 22, 2014        Respectfully submitted,

/s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox
Thomas A. Wilson
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Brad B. Erens
JONES DAY
77 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 269-3939
Facsimile: (312) 782-8585
bberens@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

- 14 -

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

## <u>CERTIFICATE OF SERVICE</u>

  I, Heather Lennox, hereby certify that the foregoing Omnibus Reply of the City of Detroit to Objection to the City's Motion for an Order Approving Postpetition Financing, Granting Liens and Approving the Settlement of Confirmation Objections was filed and served via the Court's electronic case filing and noticing system on this 22nd day of August, 2014.

/s/ Heather Lennox