# EXHIBIT A

Excerpt from December 13, 2013 Hearing Transcript

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,        .        Docket No. 13-53846
        MICHIGAN,               .
                               .        Detroit, Michigan
                               .        December 13, 2013
                Debtor.         .        10:01 a.m.
. . . . . . . . . . . . . . .

    HEARING RE. MOTION TO ADJOURN HEARING; MOTION TO COMPEL
     THE PRODUCTION OF PRIVILEGE LOG; PRETRIAL CONFERENCE
           BEFORE THE HONORABLE STEVEN W. RHODES
           UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:       Jones Day
                      By:  ROBERT W. HAMILTON
                      325 John H McConnell Blvd., Suite 600
                      Columbus, OH  43215
                      (614) 469-3939

                      Jones Day
                      By:  GREGORY M. SHUMAKER
                      51 Louisiana Avenue, N.W.
                      Washington, DC  20001-2113
                      (202) 879-3679

For Syncora          Kirkland & Ellis, LLP
Guarantee and        By:  STEPHEN HACKNEY
Syncora Capital      300 North LaSalle
Assurance:           Chicago, IL  60654
                      (312) 862-2074


For Erste            Ballard Spahr, LLP
Europaische          By:  VINCENT J. MARRIOTT, III
Pfandbrief-und       1735 Market Street, 51st Floor
Kommunalkreditbank   Philadelphia, PA  19103-7599
Aktiengesellschaft   (215) 864-8236
in Luxemburg, S.A.:

For UBS:             Bingham McCutchen, LLP
                      By:  JARED R. CLARK
                      399 Park Avenue
                      New York, NY  10022-4689
                      (212) 705-7770


APPEARANCES (continued):

| | |
|---|---|
| For Detroit Retirement Systems-General Retirement System of Detroit, Police and Fire Retirement System of the City of Detroit: | Clark Hill, PLC<br>By: JENNIFER GREEN<br>500 Woodward, Suite 3500<br>Detroit, MI 48226<br>(313) 965-8300 |
| For David Sole: | Jerome D. Goldberg, PLLC<br>By: JEROME GOLDBERG<br>2921 East Jefferson, Suite 205<br>Detroit, MI 48207<br>(313) 393-6001 |
| For FGIC: | Weil, Gotshal & Manges, LLP<br>By: KELLY DIBLASI<br>767 5th Avenue<br>New York, NY 10153<br>(212) 310-8032 |
| For Ad Hoc COP Holders: | Allard & Fish, PC<br>By: DEBORAH L. FISH<br>535 Griswold, Suite 2600<br>Detroit, MI 48226<br>(313) 961-6141 |
| Court Recorder: | Letrice Calloway<br>United States Bankruptcy Court<br>211 West Fort Street<br>21st Floor<br>Detroit, MI 48226-3211<br>(313) 234-0068 |
| Transcribed By: | Lois Garrett<br>1290 West Barnes Road<br>Leslie, MI 49251<br>(517) 676-5092 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1          All right.  I think that's as much as I want to say

2    about the 9019, 365 motion.

3          On the debtor in possession financing motion under

4    Section 364, the Court basically agrees with the city's

5    position that Section 904 of the Bankruptcy Code prohibits

6    any review of what the city proposes to do with the proceeds

7    of the loan and actually prohibits any review beyond the

8    narrow review that Section 364 itself requires to determine

9    the reasonableness of the terms of the borrowing given the

10   current market conditions for similar kinds of loans and the

11   other technical requirements of Section 364, including the

12   city's inability to obtain a loan on any better terms.  And,

13   of course, the Court welcomes any evidence on the issue of

14   whether the debtor in possession financing was negotiated in

15   good faith, but the city's proposed use of the proceeds is

16   not a matter for this Court's consideration next week.

17         Having concluded all of that, the Court must

18   conclude that the record fails to establish cause for any

19   adjournment.  Accordingly, it is denied.

20         Now, can we move to the final pretrial conference on

21   this?  Did you all prepare a joint pretrial statement?

22         MR. SHUMAKER:  Good morning, your Honor.  Greg

23   Shumaker of Jones Day for the City of Detroit.  Yes, your

24   Honor, we did prepare a joint statement of facts in

25   connection with the -- what we've referred to as the

# EXHIBIT B

Excerpt from January 16, 2014 Hearing Transcript

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .        Docket No. 13-53846
        MICHIGAN,             .
                              .        Detroit, Michigan
                              .        January 16, 2014
                    Debtor.   .        2:00 p.m.
. . . . . . . . . . . . . . . .

BENCH OPINION
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:      Jones Day
                     By:  GREGORY SHUMAKER
                     51 Louisiana Avenue, N.W.
                     Washington, D.C.  20001-2113
                     (202) 879-3768

                     Jones Day
                     By:  CORINNE BALL
                     222 East 41st
                     New York, NY  10017-6702
                     (212) 326-7844

                     Pepper Hamilton, LLP
                     By:  ROBERT S. HERTZBERG
                     4000 Town Center, Suite 1800
                     Southfield, MI  48075-1505
                     (248) 359-7333

For UBS and Bank     Warner, Norcross & Judd, LLP
of America           By:  SCOTT WATSON
Merrill Lynch:       111 Lyon Avenue, NW - Suite 900
                     Grand Rapids, MI  49503
                     (616) 752-2465

For UBS AG:          Bingham McCutchen, LLP
                     By:  JARED R. CLARK
                     399 Park Avenue
                     New York, NY  10022-4689
                     (212) 705-7770

APPEARANCES (continued):

```
For Syncora          Kirkland & Ellis, LLP
Holdings, Ltd.,      By:  WILLIAM E. ARNAULT
Syncora Guarantee,   300 North LaSalle
Inc., and Syncora    Chicago, IL  60654
Capital Assurance,   (312) 862-3062
Inc.:

For Detroit          Clark Hill, PLC
Retirement Systems-  By:  JENNIFER K. GREEN
General Retirement   500 Woodward Avenue, Suite 3500
System of Detroit,   Detroit, MI  48226
Police and Fire      (313) 965-8300
Retirement System
of the City of       Clark Hill, PLC
Detroit:             By:  ROBERT D. GORDON
                     151 South Old Woodward, Suite 200
                     Birmingham, MI  48009
                     (248) 988-5882

For Erste            Ballard Spahr, LLP
Europaische          By:  VINCENT J. MARRIOTT, III
Pfandbrief-und       1735 Market Street, 51st Floor
Kommunalkreditbank   Philadelphia, PA  19103-7599
Aktiengesellschaft   (215) 864-8236
in Luxemburg, S.A.:

For David Sole:      Jerome D. Goldberg, PLLC
                     By:  JEROME D. GOLDBERG
                     2921 East Jefferson, Suite 205
                     Detroit, MI  48207
                     (313) 393-6001

For Financial        Williams, Williams, Rattner &
Guaranty Insurance     Plunkett, PC
Company:             By:  MARK R. JAMES
                     380 N. Old Woodward Ave., Suite 300
                     Birmingham, MI  48009
                     (248) 642-0333

For Ambac            Arent Fox, LLP
Assurance            By:  CAROLINE TURNER ENGLISH
Corporation:         1717 K Street, NW
                     Washington, DC  20036-5342
                     (202) 857-6178

For FMS              Schiff Hardin, LLP
Wertmanagement:      By:  RICK FRIMMER
                     233 South Wacker Drive, Suite 6600
                     Chicago, IL  60606
                     (312) 258-5573
```

APPEARANCES (continued):

For Detroit Retired    Lippitt O'Keefe, PLLC
City Employees         By:  RYAN C. PLECHA
Association,           370 East Maple Road, 3rd Floor
Retired Detroit        Birmingham, MI  48009
Police and Fire        (248) 723-6263
Fighters Associa-
tion, Shirley V.
Lightsey, and
Donald Taylor:


Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
 1   could to approve the settlement.  As the city argued, the law
 2   prefers settlements.  But it could not find a way.  It's just
 3   too much money, and the Court must insist that any settlement
 4   be rational, as the law itself requires.  In its eligibility
 5   opinion, the Court found that the city had entered into a
 6   series of bad deals to solve its financial problems.  The law
 7   says that when the city filed this bankruptcy, that must
 8   stop.  It also says that this Court must be the one to stop
 9   it, if necessary.  It is necessary here.  Accordingly, the
10   motion is denied.  In these circumstances, it is unnecessary
11   to address the consent rights issue.
12          Turning now to the motion for post-petition
13   financing, 11 U.S.C., Section 364(c), provides, "If a trustee
14   is unable to obtain unsecured credit allowable under section
15   503(b)(1) of this title as an administrative expense, the
16   court, after notice and a hearing, may authorize the
17   obtaining of credit or the incurring of debt - (1) with
18   priority over any or all administrative expenses of the kind
19   specified in section 503(b) or section 507(b) of this title;
20   (2) secured by a lien on property of the estate that is not
21   otherwise subject to a lien."  The city seeks to borrow $285
22   million from Barclay and to grant Barclay a lien in casino
23   revenues, income tax revenues, utility tax revenues, and
24   water and sewerage revenue.  Of that amount, $165 million was
25   proposed to go to the swap counterparties to settle that
```

1  claim or those claims, and $120 million would go for quality
2  of life improvements, which may include increase in police
3  staffing, purchase of emergency vehicles, blight removal, and
4  updating the city's technology resources.  Because the motion
5  to assume the forbearance agreement and settlement agreement
6  is denied, the request for the loan to fund that settlement
7  must be denied as well.  However, the Court finds that the
8  request for approval to borrow $120 million on a secured
9  basis should be granted with conditions.  Specifically, the
10 Court finds that the city has established by a preponderance
11 of the evidence that this loan is in the best interest of the
12 city; that it needs the money; that the terms are market
13 terms and the best available to the city; that they were
14 negotiated in good faith; and that they were negotiated at
15 arm's length.  Indeed, the Court finds that there was no
16 substantial contradictory evidence on these points.

17        The objecting parties raise these arguments:  one,
18 the city did not attempt to obtain an unsecured loan; two,
19 the city did not provide the City Council with sufficient
20 information to evaluate the loan and did not comply with the
21 legal requirements for disclosure to the City Council; three,
22 the city has not adequately explained the proposed use of the
23 quality of life loan proceeds; and, four, this approval
24 should await the plan confirmation process.

25        With respect to the first objection, the Court

1  concludes that the city has adequately established that the
2  unsecured credit would not have been available to the city.
3  The objecting parties cite cases holding that the city was
4  required to actually attempt to obtain unsecured credit and
5  that the city did not do that here.  The Court finds these
6  cases unpersuasive because they impose a requirement that is
7  simply not in the statutory language of Section 364(c).  That
8  section simply requires the Court to find that the debtor has
9  established by a preponderance of the evidence that it is
10 unable to obtain unsecured credit.  There are, of course,
11 many ways to prove that fact.  Showing that the debtor
12 actually attempted and failed to do that is only one way to
13 prove it.  In this case, the Court concludes that there was
14 credible evidence that the city is unable to obtain unsecured
15 credit.  That evidence makes sense, in the Court's
16 experience, and it was uncontradicted in the evidence.
17 Accordingly, the Court finds that the city has established by
18 a preponderance of the evidence that it is unable to obtain
19 unsecured credit.
20        With respect to the second objection, Public Act
21 436, Sections 19(1) and (2), require the emergency manager to
22 submit his proposed action to the City Council.  The City
23 Council then has a period of time to propose comparable or
24 better terms for the action.  Plainly, the adequacy of the
25 disclosure to the City Council should be determined based on

1   whether the disclosure by the emergency manager allowed the
2   city to take advantage of its statutory opportunity to
3   propose an alternative.  Here the Court concludes that the
4   disclosures that the city made to City Council, especially as
5   they pertained to the proposed interest rates, were
6   sufficient to permit it to evaluate the loan and for the City
7   Council to go out into the marketplace to attempt to obtain
8   an alternative.  Accordingly, the Court concludes that there
9   was substantial compliance with PA 436, and this objection is
10  overruled.
11          It is next asserted that the city has not adequately
12  explained the uses of the loan proceeds.  In the Court's
13  view, this objection overlaps with the question of the
14  conditions that the Court has determined must be placed on
15  the loan.  The problem arises because the record is
16  contradictory on what the proceeds of this loan would be used
17  for.  In recognition of the limitations on the use of gaming
18  revenues under state law, some evidence suggests that the
19  city will use the proceeds for, quote, "quality of life,"
20  close quote, purposes.  Other evidence, however, suggests
21  that the proceeds will simply be working capital.  The city
22  contends that even if gaming revenue is provided as security,
23  the limitations of the Gaming Act do not apply because
24  Section 364 authorizes this Court to approve the loan without
25  regard for any state law limitations.  The Court rejects this

1    view of its authority under Section 364 and concludes that

2    any offer of security for a loan under Section 364 must

3    comply with state law unless, of course, Section 364

4    expressly provides otherwise.  As the city points out, the

5    Court can, under Section 364, give a senior or priming lien

6    to existing liens which might be or would be in derogation of

7    state law; however, nothing in Section 364 suggests that a

8    Court can allow a municipality to use its property in

9    violation of state law.  The Court does conclude that

10   offering gaming revenue as security for a loan would comply

11   with the Gaming Control Act but only if the proceeds of the

12   loan that are so secured are used as limited by state law.

13   Accordingly, if this loan is secured by gaming revenues, the

14   proceeds must be used for the purposes identified in the

15   Gaming Act.  The Court must caution the city here, however.

16   While the Act does permit the use of gaming revenues to

17   improve quality of life in the city, that authorization

18   cannot be applied so broadly that it effectively eliminates

19   the statutorily imposed limitations.  Specifically, nothing

20   in the Act authorizes proceeds to be used for working

21   capital.  To enforce this state statutory limitation, the

22   Court will condition this approval on a process by which the

23   city gives 14 days' written and filed notice of its intent to

24   use the proceeds during which interested parties can object

25   on the grounds that the proposed use is not consistent with

1   the Gaming Act.  The Court would then schedule a prompt
2   hearing and promptly resolve the objection.  Consistent with
3   Section 904, however, the Court will not review any aspect of
4   the use of the proceeds other than its compliance with the
5   Gaming Act.

6           In the alternative, of course, subject to Barclays'
7   approval, the city could use as security other property for
8   this loan such as other revenue streams that carry with them
9   no such restrictions under state law.  In that event, the
10  Court -- excuse me.  In that event, the process that the
11  Court outlined would not be necessary and would not be
12  imposed.

13          The Court further cautions the city that if it does
14  decide to pursue only the quality of life loan at this time,
15  it may want to consider whether under state law it is
16  necessary to present the revised loan to the City Council
17  under PA 436 and to the Emergency Loan Board for its
18  approval.  This caution, however, is not intended to be a
19  ruling on this issue.

20          Finally, the Court will overrule the objection that
21  this loan should be approved only in the context of plan
22  confirmation.  The city has determined out of necessity to
23  pursue this loan now.  Section 364 of the Bankruptcy Code
24  certainly permits the city to do that.  Under Section 904 it
25  is not for this Court to review the city's political and

1   governmental decisions, which pursuing this loan plainly is.
2   Accordingly, this objection is overruled.

3           Finally, the Court must emphasize that the parties
4   should not interpret this Court's denial of this particular
5   settlement to mean that they should not continue to attempt
6   to resolve these issues through negotiations.  They
7   absolutely should.  The Court agrees that the settlement of
8   the swaps claims is better for everyone than litigation and
9   hopes that everyone still agrees with that.  If the city
10  feels the need to pursue immediate litigation, so be it, but
11  even so, litigation and negotiation can and should be pursued
12  at the same time.  In any event, the Court strongly
13  encourages the parties to continue to negotiate.

14          At this time, the Court is going to conduct a closed
15  conference with counsel, and so I'm going to ask everyone in
16  the courtroom who is not an attorney in the case to leave the
17  courtroom.  We're also going to shut down the closed circuit
18  feeds and turn off CourtCall.

19          (Proceedings concluded at 2:49 p.m.)