**Exhibit 6F**

**August 4, 2014 Deposition Transcript of D. Muchmore (excerpted)**

DENNIS MUCHMORE

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

In re ) Chapter 9

CITY OF DETROIT, MICHIGAN, ) Case No. 13-53846

Debtor. ) Hon. Steven W. Rhodes

---

The Videotaped Deposition of DENNIS MUCHMORE,

a 30(b)(6) witness,

Taken at 215 South Washington Square, Suite 200,

Lansing, Michigan,

Commencing at 9:00 a.m.,

Monday, August 4, 2014,

Before Rebecca L. Russo, CSR-2759, RMR, CRR.

00000000-0000-0000-0000-000000000000

DENNIS MUCHMORE

Q. Thank you. Within your role within the executive office, would you say that you take part in most formal meetings that relate to the City of Detroit and its bankruptcy?

A. Yes, I would.

Q. Are you typically made aware of any formal press releases that come from the governor's office that relate to the City of Detroit's bankruptcy?

A. Typically. It's kind of a general word.

Q. It is, and I apologize for that.

A. That's all right.

Q. But what is the process when the governor's office is going to make a formal statement in the press, specifically with respect to the City of Detroit's bankruptcy over the last year?

A. We would talk about it at comms. Comms, I mean, we have a comms meeting, as I described earlier. We'd talk about it at comms. We typically run the content of that press release past our legal counsels, and we typically run that content of that past Kevyn Orr. And sometimes we may give the mayor a heads-up if it deals with his, you know, the political machinations of the city.

Q. And if -- did the State have any view -- moving on to

00000000-0000-0000-0000-000000000000

DENNIS MUCHMORE

a different topic.

A. Okay.

Q. Prior to the mediation, did the State have any view, to your knowledge, based on what the priority of the pensioners -- based on the priority the pensioners should receive any funds that come from the State, vis-a-vis other creditors in the Detroit bankruptcy?

A. No, not to my knowledge.

MR. MORRIS: Objection, form.

THE WITNESS: What was that?

MS. NELSON: Somebody on the telephone had an objection.

THE WITNESS: Oh, okay.

BY MR. MCCARTHY:

Q. That's what I mentioned earlier, someone objects and we have a few people --

A. Okay.

Q. -- on the phone that represent other -- I believe they represent other parties, not the State, but you can go ahead and answer the question, if you can, with that objection, which you did. Thank you.

Prior to the mediation, did the State have any view, to your knowledge, with respect to whether any funds that would be coming from the State should

00000000-0000-0000-0000-000000000000

go solely to the benefit of the pensioners versus other creditors in the bankruptcy?

A. No.

Q. Has that view changed since the onset of mediation, from the State's perspective?

A. No, not really, no. I don't think the view has changed on that. It's not a focus on one thing. It's a focus on a comprehensive solution of the whole City bankruptcy. We spend a lot of time with creditors. We spend a lot of time with pensioners. We spend a lot of time with judges.

Q. Funding for the State under the Grand Bargain, as it's been described, will be going to pensioners, specifically, as opposed to certain other groups of creditors, is that fair?

A. I think that's fair, yes.

Q. Does the State have a view, to your knowledge, based on why it is that that funding will be going to pensioners versus other creditors?

MS. NELSON: I'm going to object, because that invades the confidentiality of the mediation process, and I will instruct him not to answer that question.

BY MR. MCCARTHY:

00000000-0000-0000-0000-000000000000

DENNIS MUCHMORE

Q. I assume you will follow those instructions, but let me ask you, just to be sure. Will you follow those instructions from your counsel and not answer the question?

A. I always do.

MR. GADOLA: Always?

THE WITNESS: Generally, when I agree with it, I do.

MR. MCCARTHY: I'm going to ask another question, Margaret, that may call for the same answer, and that's absolutely fine and appropriate, I'm sure, but let me -- just so we can streamline some of the other material.

BY MR. MCCARTHY:

Q. Since the mediation has started, has the State -- earlier we talked about that, to your knowledge, you weren't aware of the State having any view as to the priority of pensioners, as to who should get paid when or what they should get paid within the State's bankruptcy.

I want to ask now, since the mediation, does the State have a view, with respect to the priority that pensioners should be paid, vis-a-vis other creditors in the Detroit bankruptcy?

00000000-0000-0000-0000-000000000000

DENNIS MUCHMORE

MS. NELSON: I'm going to assert the same objection.

MR. MORRIS: Objection, form.

MS. NELSON: Thank you. I was going to object as to form and foundation, as well, and also that it invades the confidentiality of the mediation process, and instruct him not to answer.

MR. MCCARTHY: And so I'm --

MS. NELSON: Also, attorney-client privilege.

MR. MCCARTHY: And so I'm clear, any information that I might be able to gather from that that is not based on attorney-client, should I still expect an objection based on the mediation order if it gets into the substance of the State's view with respect to priority of the pensioners or whether -- why it is that -- if the State has a view as to why money should go to the benefit of the pensioners after the August mediation began?

MS. NELSON: Correct. It invades the confidentiality of the mediation process.

BY MR. MCCARTHY:

Q. Prior to the mediation, to your knowledge, did the State ever make any statements with respect to whether

00000000-0000-0000-0000-000000000000

DENNIS MUCHMORE

the pensioners might have to face reductions in the benefits that they receive under their pensions for the City of Detroit?

A. Yes, I believe so.

Q. And prior to the mediation, did the -- to your knowledge, was it the State's view that that could happen, that the pensioners for the City of Detroit might face reductions in the amount that they receive under their pensions?

A. Yes.

Q. What was the basis for that view, as you understand it, coming from the State? And again, if this only comes from information from your lawyers, I'd like to try to stay away from that.

MR. MORRIS: Objection, form.

A. There are only so many ways to get to an overall comprehensive settlement of this, and each party in the settlement was going to have to take a reduction in what they felt they were being owed, regardless of who it was, and there was just no way around it, from our point of view.

BY MR. MCCARTHY:

Q. Has that -- moving forward. For whatever reason, has that viewpoint from the State that every party,

00000000-0000-0000-0000-000000000000