IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**REPLY OF ASSURED GUARANTY MUNICIPAL
CORP. IN SUPPORT OF MOTION OF THE DEBTOR FOR A FINAL
ORDER PURSUANT TO (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902,
904, 921, 922 AND 928 (A) APPROVING POSTPETITION FINANCING
AND (B) GRANTING LIENS AND (II) BANKRUPTCY RULE 9019
APPROVING SETTLEMENT OF CONFIRMATION OBJECTIONS**

Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"),[1] a creditor and party in interest in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"), hereby files this reply in support of the Motion of the Debtor for a Final Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019

---

[1] Assured is a monoline insurer that provides financial guarantees to the U.S. public finance market. Assured and its affiliates insure or reinsure approximately $2.24 billion in gross aggregate principal amount of outstanding bonds issued by the City, including water supply system bonds, sewage disposal system bonds, and unlimited tax general obligation bonds.

Approving Settlement of Confirmation Objections [Docket No. 6646] (the "Motion")[2] and respectfully states as follows:

## REPLY IN SUPPORT OF MOTION

1. The objection (the "Objection") of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. (together, "Syncora") to the Motion is wholly without merit and should be overruled because Syncora has no existing right to any of the savings that may be generated by the transaction that it seeks to disrupt. Tellingly, Syncora does not object to the Motion's goals—a restructuring of the DWSD's capital structure with the aim of generating significant economic savings for the DWSD and the resolution of numerous and well-founded objections to the Plan. See Objection, at p. 2. Nor does Syncora attempt to show that the comprehensive settlement for which the Motion seeks approval does not meet all requirements for approval by this Court. Indeed, Syncora does not even attempt to explain how it or any other general creditor of the City could plausibly be harmed by any of the relief sought in the Motion. Rather, Syncora merely complains that it has not received "adequate information" regarding the level of savings to the DWSD that will be generated by the Tender Offer Financing—an obvious attempt to delay a meritorious transaction in the mere hope of obtaining a strategic litigation advantage in their continuing campaign against confirmation of the City's

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

plan of adjustment (the "Plan"). Such a cynical ploy should not be condoned by this Court.

2. Syncora's Objection is baseless because, as discussed at length in Assured's objection and supplemental objection to the Plan, the DWSD water and sewer systems (the "Systems") are "closed loops" under Michigan law that must be respected in chapter 9.³ See 11 U.S.C. § 943(b)(4); In re City of Columbia Falls, Mont., Special Imp. Dist. No. 25, 143 B.R. 750, 760 (Bankr. D. Mont. 1992); In re Sanitary & Imp. Dist., No. 7, 98 B.R. 970, 973-75 (Bankr. D. Neb. 1989). Act 94, the Ordinances and the Indentures all mandate a "payment waterfall" under which the revenues of the Systems may only be used for the benefit of the holders of the Existing DWSD Bonds, holders of State Revolving Fund Bonds and the Systems themselves.⁴ See Indentures § 2.03; Ordinances § 12(B); MCL §§ 141.103, 141.106, 141.107. Indeed, even once all creditors of the Systems have been paid, reserves fully funded, and all other needs of the System have been addressed, any remaining revenues of the Systems may still only be applied for purposes related to the Systems. See Ordinances § 13(F). Even then, application of such residual

---

³ See also Objection of Assured Guaranty Municipal Corp. to Confirmation of Fourth Amended Plan for the Adjustment of Debtors of the City of Detroit (May 5, 2014) [Docket No. 4674] (the "Assured Objection"), at pp. 70-83; Supplemental Objection of Assured Guaranty Municipal Corp. to Confirmation of Corrected Fifth Amended Plan for the Adjustment of Debts of the City of Detroit (July 29, 2014) [Docket No. 6677], *passim*.

⁴ There are separate, but identically structured, "payment waterfalls" for the sewage System and the water System.

revenues to other purposes related to the Systems is only at the option of the Board of Water Commissioners.[5] See id.

3. Bankruptcy Code sections 922 and 928 protect this closed loop structure in chapter 9. Section 922 provides that the automatic stay does not prevent pledged special revenues, such as the pledged revenues of the Systems, from being properly applied (i.e., paid to bondholders) during a chapter 9 case. See 11 U.S.C. § 922. Section 928 complements that protection by ensuring that special revenues acquired by a municipal debtor postpetition remain subject to applicable liens. See 11 U.S.C. § 922. The combined effect of these protections is that special revenue creditors, such as Assured, "retain unimpaired rights to the project revenues pledged to them" notwithstanding the existence of a chapter 9 case. See S. REP. NO. 100-506, 100th Cong., 2d Sess., at 12 (1988), at 12. As Assured and other DWSD stakeholders have made clear, this prohibition against impairing the rights of special revenue creditors remains in effect throughout the

---

[5] Indeed, Assured objected to the Plan precisely because, absent the settlements to be approved pursuant to the Motion, the Plan would impermissibly divert System revenues in violation of this closed loop. See Assured Objection, at pp. 70-83; Assured Supplemental Objection, *passim*. Other parties raised similar objections to the Plan that would likewise be resolved by approval of the Motion. See, e.g., The DWSD Bond Trustee's Objection to the City's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 4647] (the "Trustee Objection"), at pp. 19-29; Objection of the Ad Hoc Committee of DWSD Bondholders to the City's Fourth Amended Plan of Adjustment and Joinder to the DWSD Bond Trustee's Objection to the City's Fourth Amended Plan of Adjustment [Docket No. 4671], *passim*.

chapter 9 case, including all aspects of the plan process.[6]

4. As a result of the Systems' inviolable closed loop, benefits derived from the Tender Offer Financing will necessarily inure solely to the benefit of the DWSD Systems (including satisfaction of the operating expenses of the Systems), creditors holding claims secured by the pledged special revenues of the Systems, and the Systems' ratepayers. Syncora is none of these. No reading of the COPs gives their holders any claim against the Systems' pledged revenues (or assets). Accordingly, Syncora has no right to share in—and consequently no right to complain that it lacks sufficient information regarding the degree to which it may benefit from—the savings that will be generated by the Tender Offer Financing.

5. Moreover, the Motion has the obvious benefit of resolving the numerous and substantial objections to the Plan raised by Assured, as well as many other parties with an interest in the DWSD Systems. If the City accepts for purchase any Tendered Bonds and the Tender Offer Financing closes, all claims in respect of Existing DWSD Bonds will be rendered unimpaired under the Plan.

---

[6] See, e.g., Assured Objection, at pp. 23-37; Brief of Assured Guaranty Municipal Corp. in Response to Issue Number 7 in Order Identifying Legal Issues, Establishing Supplemental Briefing Schedule and Setting Hearing Dates and Procedures [Docket No. 5704], at pp. 4-14; Trustee Objection, at pp. 17-18. In addition, absent approval of the Settlement contemplated by the Motion, the Plan will not be able to be confirmed because, among other reasons, it would not meet the cramdown requirements of section 1129(b) of the Bankruptcy Code. See Assured Objection, at pp. 37-59. Absent the unimpairment of all Existing DWSD Bond Claims required by the Settlement, the Plan contemplates "satisfying" many such claims with New DWSD Bonds that have identical principal amounts and maturities, but significantly below-market interest rates and limited call protection. Such a Plan cannot be confirmed. See id.

That unimpairment will resolve all or nearly all confirmation objections by DWSD stakeholders (including the objections of DWSD stakeholders, such as National, who are not even a party to the Settlement). Such a resolution of the objections of DWSD stakeholders will benefit all parties to this case by streamlining and simplifying the confirmation trial without harming anyone. In contrast, if the Motion is not approved, the City and the DWSD will be required to bear significant costs associated with litigating these objections, with the likely result that the City will be required to revise major portions of its Plan. See Fitch Ratings, Fitch: Detroit Water/Sewer Tender Would Not be a Distressed Debt Exchange, at 1 (Aug. 21, 2014), a true and correct copy of which is attached hereto as Exhibit "A" ("Fitch does not view confirmation of the plan and such a cram down to be a likely outcome."). All parties with a stake in the DWSD have a profound interest in avoiding such a waste of time and resources. In contrast, resolving the DWSD stakeholders' objections pursuant to the Settlement will provide a major benefit to the City and the DWSD by assisting the DWSD in maintaining access to the credit markets. See Exhibit A ("Impairing otherwise healthy and performing special revenue debt despite the protections of federal, state and city law may make it more difficult for Detroit to issue special revenue obligations in the future.").

6. Finally, the Tender Offer Financing's potential to unlock nearly $50

million in cash reserves is an obvious and immediate benefit of the transaction. This benefit is possible only because of Assured's willingness to lend its credit to the DWSD in the form of new debt service reserve surety policies. See Motion, at pp. 12-13. Assured's willingness to issue those policies is entirely contingent upon approval of the Motion and the closing of the Tender Offer Financing.

7. Syncora does not contest the fact that certain Existing Bond Documents require the DWSD to maintain significant debt service reserves, which may take the form of either cash deposits or debt service reserve sureties. See Objection, at p. 7 n.17. Nor does Syncora dispute that Assured's offer to provide the DWSD with certain debt service reserve surety policies as part of the Settlement and the Tender Offer Financing could release nearly $50 million of cash currently held in such reserves. See id. Rather, Syncora contends that the Tender Offer Financing's capacity to release $50 million from these reserves is not beneficial because "[t]he $50 million in cash relates to cash already on the City's balance sheet." Id.

8. Syncora asks this Court to believe that the DWSD and its stakeholders cannot benefit from redeploying completely restricted cash reserves to productive ends. Cash held in the reserve accounts can only be used to avert a payment default by making debt service payments if there would otherwise be a payment shortfall with respect to the Existing DWSD Bonds of the priority lien for which

the reserve account was created.  See Ordinances § 13(C)(3)(i).  In contrast, once freed from the reserve accounts, the cash will be transferred to the applicable System's "Receiving Fund," from which it will be applied in accordance with the payment waterfall mandated by the System's closed loop.  See Ordinances § 13(C)(3)(ii).  Thus, the Tender Offer Financing has the potential to convert nearly $50 million in unproductive standby assets into assets that can be applied to such manifestly beneficial ends as improving the Systems.  Absent Assured's issuance of surety policies to replace the cash reserves, which Assured will not do if the Settlement is not approved and consummated, these funds will continue to languish unproductively in the reserve accounts.  It is therefore in all DWSD stakeholders' interests that the Motion be swiftly granted so that the DWSD's assets may quickly be reallocated and applied more efficiently.

## CONCLUSION

WHEREFORE, Assured respectfully requests that the Court enter an order overruling the Objection, granting the Motion and granting such other and further relief as may be just and proper.

Dated: New York, New York
      August 22, 2014                  **CHADBOURNE & PARKE LLP**

                                               By:  /s/ Lawrence A. Larose
                                               Lawrence A. Larose
                                               Samuel S. Kohn
                                               Eric Daucher
                                               1301 Avenue of the Americas
                                               New York, NY 10019
                                               Telephone:  (212) 408-5100
                                               llarose@chadbourne.com
                                               skohn@chadbourne.com
                                               edaucher@chadbourne.com

                                               *Attorneys for Assured Guaranty*
                                               *Municipal Corp.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## Certificate of Service

I hereby certify that on this 22nd day of August 2014, I caused the *Reply in Support of the Motion of the Debtor for a Final Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections* to be filed with the Clerk of the Court using the CM/ECF system, which provides electronic notification of such filing to all counsel of record.

Dated: New York, New York
August 22, 2014

**CHADBOURNE & PARKE LLP**

By: /s/ Lawrence A. Larose
Lawrence A. Larose
Samuel S. Kohn
Eric Daucher
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 408-5100
llarose@chadbourne.com
skohn@chadbourne.com
edaucher@chadbourne.com

*Attorneys for Assured Guaranty Municipal Corp.*