Jamie S. Fields (P-52808)\
Attorney-at-Law
555 Brush #2409
Detroit, Michigan 48226
313-570-3906
jeansartre@msn.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| City of Detroit, | Case No. 13-5384 |
| Debtor | Hon. Steven W. Rhodes |

**OBJECTIONS IN OPPOSITION TO THE SIXTH AMENDED PLAN FOR
THE ADJUSTMENTS OF DEBTS OF THE CITY OF DETROIT OF CREDITORS**

WILLIAM OCHADLEUS, SHELTON HAYES, SHIRLEY BERGER, RAYMOND YEE, JOHN CLARK, FREDERICK T. McCLURE JR., JIM BENCI, JANICE BUTLER, MORRIS WELLS, DEBORAH WARD, MELVIN F. WILLIAMS SR., SARAH GIDDENS, KIMBERLY ANN SANDERS, JACKIE FULBRIGHT, ED GAINES, CATHERINE TUTTLE, RITA SERRA, MARTIN TREADWELL, JOHN J. O'NEILL, BARBARA TRIPLETT-DECREASE, ROY MCCALISTER, POLLY MCCALISTER, JESSIE BANKS, HENRY ELLIS, GAIL WILSON TURNER, LOLETHA PORTER COLEMAN, AFFORD COLEMAN, LESTER COLEMAN, DEBORAH LARK, MOSES LARK, SHARON COWLING, MICHAEL COWLING, ROBERT JACKSON, RASHELLE PETTWAY, MICHAEL A. ADAMS, JOHN HAWKINS, LAURA ISOM, DUANE MCKISSIC, HERBERT MORELAND, CYNTHIAN DIANE MORELAND, KEITH JACKSON SR., DEBORAH ROBINSON, JAMES ALEXANDER JR., BRENDA GOSS ANDREWS, LAWRENCE PORTER, JAMIE FIELDS, RICARDO C. JENKINS, GREG JONES, JACQUELINE JACKSON, TOMMIE CARODINE, DEBRA J. FAIR, ROBBIN RIVERS, JAMES R. YOUNGER, JOE SMITH, ROSCOE MAYFIELD, CHARLES BARBIERI, JAMES JONES, CRAIG SCHWARTZ, REGGIE BARNES, GLENDA COLE-DIXON, WALTER LONG JR., GEORGE GRAVES, CALVIN ADKINS, JACK ALIOTTA, TERRANCE ANDERSON, DAVID ANDERSON, NANCY YOUNG FOWLER, GEORGE CHESTER, ANTHONY KLUKOWSKI JR, TODD KLUKOWSKI, ROGER KLUKOWSKI, MIKE FOLEY, LOIS KLUKOWSKI-HOGEN, ANDY SMITH, PATRICIA E. MCCABE, PATTI GRAVES, JEANNETTA WASHINGTON, STEVE LEGGATT, PAULA DAY, DEBORAH MCCREARY, GREG JONES, ANDREW WHITE, CHRISTINE MARIE JEPSEN, JOHN JEPSEN, ALICIA TERRY, JOYCE DANIEL, BRYAN GLOVER, TOBI ASCIONE YOUNG, GREG HUIZAR, LORI GALLMAN, BEVERLY HOFFMAN-NICHOLS, BARABARA STAFFORD, MICELLE PIERSON, SHELLEY I. FOY, PARRIE LEE HIGHGATE, RENEE ELLIS-SUMPTER, DAVID POMEROY, JIM LEMAUX, ERIC HECKMAN, SHELLEY HOLDERBAUM, KEITH OLENIACZ, EDGARDO APONTE, JON GARDNER, JUDITH NORWOOD, KENNETH EMERSON, PATRICIA LOFTON DANIEL P. ROOT, KAREN LESKIE, ROOSEVELT LAWRENCE JR., SONJA HOLLIS, WILLIAM ANDERSON, DEREK HICKS, MARSHA THOMPSON-KIDD, YVONNE WILLIAMS JONES, LULA MILLENDER, WILLIAM DAVIS, EVELYN OWEN SMITH, CECILY MCCLELLAN, BELINDA A. MYERS-FLORENCE, JESSE J. FLORENCE SR., PAULETTE BROWN, STEVE LEGGATT, LINDA WHITE, JO FULLER, DAVID MALHALAB, GERALD WILLIAMS, DOUGLAS KUYKENDALL, NANCY KUYKENDALL, ROGER SALEDO, DARIUS CLAY, NYRA TURNER BLACKMON, RHEUBEN BLACKMON

The forgoing City retirees, employees and beneficiaries hereby object to the *Sixth Amended Plan* (the "Plan") (Doc 6808.). This objection adopts by reference (Doc. 4404, 5162, 5788, 5964, 6642) and is limited to issues raised subsequent to the City's *Fifth Amended Plan*.

### A. THE SUPPLEMENTAL REPORT OF CAROLINE SALLEE CONTAINS INCORRECT LEGAL CONCLUSIONS

Ms. Sallee's analysis lacks a superficial understanding of either pensions or Michigan law. Ms. Salle opines that litigation outside of bankruptcy could result in a judgment of 1,250 (in millions) for PFRS and 1,879 (in millions) for GRS, and further states:

> A court would have discretion to establish the payment of any judgment against the City in installments, but the court would be required to apply an interest rate of 1% plus the rate of a 5-year treasury bill. See Mich. Comp. Laws §§ 600.6013, 600.6201. As of August 11, 2014, I am advised that this interest rate is 2.622%.

Ms. Salle's figures include the system's purported unfunded accrued liability (UAL). Ms. Sallee's analysis contradicts both Michigan law and the City's position who has agreed with the retirement system that the UAL may be amortized over time. The retirement system argues that period is 29 years while the City and Millman argue for either a 15 or 18 year amortization period.

Because of fluctuations of the stock market and other vagaries (e.g., the accuracy of prior actuarial assumptions) the state merely requires a "plan" to pay down the UAL much like an individual would pay-off a home mortgage. The majority of all pension systems, at some point in time, have an UAL but that does not mean that they are underfunded and cannot meet their future pension obligations. Without making it too complicated, or getting too far into the "weeds," the lack of payments by the City into its retirement system amounted to a material defunding of the plan. If you do not receive the money owed, you will be essentially amortizing that past due debt amount.

The Michigan Constitution expressly mandates the City to fund its retirement system to a level which includes unfunded accrued liabilities"); M.C.L. § 38.1140m (stating that the annual required employer contribution "shall consist of a current service cost payment and a payment of at least the annual accrued amortized interest on any unfunded actuarial liability and the payment of the annual accrued amortized portion of the unfunded principal liability"). See *Shelby Twp. Police & Fire Ret. Bd. v. Charter Twp. of Shelby,* 475 N.W.2d 249, 252 (Mich. 1991)

Ms. Sallee raised an issue that has been previously litigated and the opinion expressed in her "Expert" report has been previously repudiated by Michigan courts. The Michigan Court of Appeals stated:

> As noted, the (Police Pension) Board maintains that the trial court erred because, under MCL 38.1140m, the Board has the authority to adopt the amortization period to finance unfunded accrued pension liabilities. In contrast, Detroit argues that MCL 38.1140m merely places caps on the amortization periods starting in 2006, but that "[i]t does not give the Board the right to decide on the amortization period." We disagree.

The City stated in its *Consolidated Reply to Certain Objections* (pg. 167) it stated "(studies have determined)...... (the) *amount necessary to amortize unfunded accrued liabilities*."), (emphasis added by City).

**B. THE CITY'S PLAN TO REDUCE PENSIONS ARE UNECCESARY BECAUSE NO EFFORT WAS MADE TO REMEDY THE POLICIES THAT THE CITY PUBLICY EXPRESSED CONCERN**

The City's public statements and Court filings have been replete with hyperbole, the majority of which was inaccurate, painting pension trustees with a broad brush of poor management and breach of fiduciary responsibilities. Yet the City ignores abuses.

2

Subsequent to well-publicized trustee travel abuse, (e.g., a single GRS Trustee travel expenditure of over $100,000 in one year, including a trip to China), the retirement system developed a written travel policy. The policy provides each trustee up to a maximum of $30,000 per PFRS Trustee and $20,000 for each GRS trustee yearly with annual travel budgets of $150,000 (PFRS) and $120,000 (GRS).

By comparison, the Ohio Police/Fire Retirement System which manages 8 billion dollars of assets, or over twice as much as GRS and PFRS combined with six trustees, limits travel to $6,000 annually per trustee. City of Detroit retirees understand the need for trustees to receive education to fulfill their fiduciary responsibilities, however, the retirement system's practice is reminiscent to a quote from the movie Good Will Hunting "You wasted $150,000 on an education you coulda got for $1.50 in late fees at the public library."

PFRS funded travel was not limited to trustees or investment or legal staff but also included persons who had no fiduciary duties to PFRS. Until relatively recently, a member of a retiree association who was had no right to vote or participate in any trustee discussions, had their travel to conferences funded by PFRS.

In addition, GRS Trustees, inexplicably receive stipends for being on the GRS Board. The Plan is silent on the forgoing issues and these practices reflect on feasibility. A glaring discrepancy between the facts surrounding past performance and activity and predictions for the future is strong evidence that a debtor's projections are flawed and the plan is not feasible, *In re Investment Company of the Southwest, Inc.* 341 B.R. 298 (10 Cir. BAP 2006).

3

## C. EXIT FINANCING

Courts will refuse to confirm plans on feasibility grounds where the debtor cannot demonstrate that necessary exit financing will materialize. *See In re Made in Detroit, Inc.*, 299 B.R. 170, 180 (E.D. Mich. 2003) (plan unconfirmable as not feasible where "proposed [exit] financing had so many contingencies that Debtor's plan was conditional at best."); *In re Thurmon*, 87 B.R. 190, (Bankr. M.D. Fla. 1988) (plan not feasible and unconfirmable where exit financing depended on unlikely condition precedent). On practically the eve of the confirmation hearing, the City's Plan is silent on exit financing. The Court and creditors need time to evaluate how exit financing, or lack of such financing, affects feasibility of the City's Plan.

## D. RESERVATION OF RIGHTS

The objectors reserve all rights to object to the Plan on any and all grounds, including, without limitation, those not mentioned in this Objection.

## E. CONCLUSION

For all of the foregoing reasons, the objectors request that the Court deny confirmation of the Plan, or grant such other and further relief that protects the objector's substantive and procedural rights or that the Court deems appropriate under the circumstances.

/s/ Jamie S. Fields  
Jamie S. Fields (P-52808)  
555 Brush #2409  
Detroit, Mich. 48226  
(313) 570-3906  

Date: August 22, 2014

4