UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| Debtor. | ) Hon. Steven W. Rhodes |

**SYNCORA GUARANTEE INC. AND SYNCORA CAPITAL ASSURANCE INC.'S MOTION TO EXCLUDE THE TESTIMONY OF JOHN W. HILL**

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") submit this motion (the "Motion to Exclude") to exclude the expert testimony of John W. Hill which was disclosed in his expert report and during his deposition.[1] In support of their motion, Syncora respectfully states as follows:

**INTRODUCTION**

1. The City has designated its Chief Financial Officer, John W. Hill, to offer two narrow expert opinions: (1) that revenue estimates in the baseline Ernst & Young forecast for FY 2014-2016 are "consistent with" estimated revenues in the City's Revenue Consensus Conference Report and (2) that certain estimates of projected expenses and revenues for the restructuring and reinvestment initiatives

---

[1] The expert report of Mr. Hill is attached as Exhibit 6A. The relevant excerpts from the deposition of Mr. Hill are attached as Exhibit 6B.

are "reasonable."[2] But Mr. Hill testified that he could not explain the details of the Ernst & Young forecasts and did not know how the restructuring and reinvestment numbers were calculated. While Mr. Hill may testify as a fact witness regarding the contents of the Consensus Revenue Report his staff put together, he has no reliable basis to testify as an "expert" on the Ernst & Young forecasts (or whether those forecasts are "consistent with" the consensus forecast) under Rule 702 and *Daubert*.

2. Moreover, the City has already designated several individuals who actually created the Ernst & Young forecasts to testify as experts. Mr. Hill's proposed "expert" testimony seeks to improperly vouch for these experts' opinions and would only be cumulative. In addition, to the extent he is simply opining that the FY 2014-2016 revenue numbers in the baseline forecast are somehow similar in magnitude to the consensus conference numbers, it is difficult to see how that will aid the Court, which can look at the two numbers and judge whether they are close.

3. Accordingly, for the reasons stated herein, the Court should exclude Mr. Hill's proposed expert testimony that (1) revenue estimates in the baseline Ernst & Young forecast for FY 2014-2016 are consistent with estimated revenues in the City's Revenue Consensus Conference Report and (2) certain estimates of

---

[2] Ex. 6A Hill. Report at 3-6, ¶¶ 4-6, 8.

projected expenses and revenues for the restructuring and reinvestment initiatives are reasonable.

## JURISDICTION

4. The Court has jurisdiction over this matter under 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

5. Syncora respectfully moves the Court to exclude John W. Hill's expert testimony that (1) revenue estimates in the baseline Ernst & Young forecast for FY 2014-2016 are consistent with estimated revenues in the City's Revenue Consensus Conference Report and (2) certain estimates of projected expenses and revenues for the restructuring and reinvestment initiatives are reasonable, and enter an order substantially in the form of Exhibit 1 attached hereto.

## BACKGROUND

6. John Hill was hired as the City's CFO in November 2013 after the City's prior CFO, Jim Bonsall, resigned abruptly.[3] Though currently serving as CFO, Mr. Hill must leave when Mr. Orr's tenure expires, unless subsequently appointed by the Mayor and approved by the City Council and the Control Board.[4]

---

[3] Ex. 6B, Hill Dep. at 13:14–16, 23:16–23, 38:8–10; Ex. 6A, Hill Report at 1.

[4] Ex 6B, Hill Dep. at 110:7–112:8.

7. The City has designated Mr. Hill as both an expert and fact witness. Mr. Hill submitted a brief expert report that discusses the most recent Revenue Consensus Conference Report prepared by the City in March 2014 and compares the revenue estimates in that report to the baseline revenue projections produced by Ernst & Young for fiscal years 2014-2016.

8. As Mr. Hill acknowledges in his report, the consensus revenue estimates do "not project revenues derived as a result of the proposed restructuring and reinvestment initiatives."[5] As the Court-appointed expert, Ms. Kopacz likewise observed, unlike Ernst & Young, the City has not attempted to project revenues from the restructuring and reinvestment initiatives or incorporated such estimates into its official budget.[6]

9. Accordingly, Mr. Hill offers no opinion that the Ernst & Young projections for the restructuring scenario are "consistent with" the consensus revenue estimates — he acknowledges they are not. Nor does the consensus revenue report forecast City expenses.[7] It is limited to revenue only, and thus Mr. Hill makes no comparison regarding Ernst & Young's estimation of City

---

[5] Ex. 6A, Hill Report at 4, n.1.

[6] Ex. 6C, Kopacz Report at 27 ("The projections in the POA have not been harmonized with the City's budget that was passed by the City Council on June 5, 2014.").

[7] Ex. 6B, Hill Dep. at 79:15–21.

4

expenditures. Finally, the consensus report attempts to project revenues for three years only — unlike the Ernst & Young report, which seeks to project revenues and expenses for 10 and 40 years.[8] Accordingly, Mr. Hill's opinion in this regard is limited to the first three years of the Ernst & Young forecast.

10. As a result, Mr. Hill opines only that the revenue estimate for the baseline (pre-bankruptcy) scenario created by Ernst & Young is "consistent with" the consensus revenue estimate for FY 2014-2016.[9] As he explained in his deposition, "the revenues we were projecting came to within about 1 percent of the revenues Ernst & Young had projected."[10] Again, however, he acknowledges that the consensus estimate does not include significant revenue sources,[11] such as, "among other things," non-General Fund grant revenues and proceeds from bond sales.[12] Moreover, the consensus report itself notes that "[o]ngoing improvements

---

[8] Ex. 6B, Hill Dep. at 79:12–14, 308:4–18.

[9] Ex. 6A, Hill Report at 3, ¶ 6.

[10] Ex. 6B, Hill Dep. at 124:23–125:12.

[11] Ex. 6B, Hill Dep. at 88:18–21 (acknowledging that "the consensus revenue estimate didn't attempt to forecast all of the City's revenues").

[12] Ex. 6A, Hill Report at 4 n.1. *See also* Ex. 6D, Revenue Consensus Conference Report at 3 (Mar. 18, 2014) ("The Consensus Estimates presented in this report do not include any departmental revenue initiatives or restructuring initiatives currently under discussion. Non-General Fund Grant Revenues; Unlimited Tax General Obligation Bonds millage revenues and proceeds from bond sales are not included in the Consensus Estimates/Projections presented in this report.").

to collection efforts in FY 2013 should net additional income tax revenues not currently reflected in the consensus estimates" and that the consensus conference did not have access to, and therefore did not include, an estimate of delinquent accounts receivable owed to Detroit.[13] Accordingly, Mr. Hill's opinion is that the Ernst & Young baseline number is "consistent with" a consensus estimate that omits significant sources of revenue.

11. Mr. Hill offers these opinions as well as the opinion that estimates of certain restructuring and reinvestment initiatives are "reasonable," despite the fact that — as he acknowledges — he cannot explain the details of the Ernst & Young forecast.[14] Moreover, he acknowledged that he does not know how any of the numbers for the revenue initiatives he cites in his report were calculated.[15]

## ARGUMENT

12. Under Rule 702 and *Daubert*, federal courts must serve as "gatekeep[ers]" to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."[16] The party offering the expert

---

[13] Ex. 6D, Revenue Consensus Conference Report at 11-12 (Mar. 18, 2014).

[14] Ex. 6B, Hill Dep. at 86:13–16.

[15] Ex. 6B, Hill Dep. at 91:4–92:9.

[16] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

6

testimony bears the burden of satisfying each of Rule 702's requirements.[17]  Expert testimony must be based on "'good grounds,' based on what is known."[18]  "An expert must substantiate his opinion; providing only an ultimate conclusion with no analysis is meaningless."[19]  Mr. Hill's proposed expert testimony fails to meet these requirements.

I.  **The City Seeks to Offer Mr. Hill As An Expert on Matters He Admits He Cannot Explain.**

13.  Mr. Hill seeks to testify with respect to two narrow aspects of the City's forecasts — the comparability of Ernst & Young's baseline revenue forecast to the consensus revenue estimate for FY 2014-2016 and the "reasonableness" of sums estimated for certain restructuring and reinvestment initiatives.  Mr. Hill, however, acknowledged that he could not "explain … the details of the Ernst & Young projections or their methodology":

> Q. Okay.  But can you explain to me the details of the Ernst & Young projections or their methodology?
>
> A. No.[20]

---

[17]  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2000).

[18]  *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 342 (E.D. Mich. 1995) (quoting *Daubert*, 509 U.S. at 590).

[19]  *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999).

[20]  Ex. 6B, Hill Dep. at 86:13–16.  *See also id.* at 85:14–18 ("Q. Do you have an understanding of what the difference between the projections in the disclosure statement and the update in July is?  A. I know some of the differences.  I don't

7

13-53846-tjt    Doc 6997    Filed 08/22/14    Entered 08/22/14 18:35:46    Page 7 of 14

Nor can he explain all of the assumptions used in the Ernst & Young projections.[21] Indeed, he acknowledges that he has never personally done "any economic forecasting."[22]

14. Likewise, Mr. Hill could not explain how the figures for the restructuring initiatives that he cites in his report were calculated:

> Q. And then you mention some figures here with a net revenue of over $250 million. Do you see that?
>
> A. Yes.
>
> Q. Do you know who calculated that value?
>
> A. It's a -- it's a mathematical calculation from the plan.
>
> Q. I mean, there are some numbers in here. Can you explain to me how these revenue numbers are calculated?
>
> A. Which revenue numbers?

---

know that I would know all of the differences."); *id.* 85:19–24 ("Q. What differences are you aware of? A. There were changes in the July update on the -- on some of the reinvestment initiatives -- and I'm blanking on exactly which ones -- but there were changes in those numbers. But beyond that, I can't really say.").

[21] Ex. 6B, Hill Dep. at 87:5–8 ("Q. Would it be fair to say you can't explain all of the assumptions in the Ernst & Young projection? A. That's fair.").

[22] Ex. 6B, Hill Dep. at 22:2–3 ("Q. Have you done any economic forecasting? A. Not me personally, no."). *See also id.* 22:4–6 ("Q. Have you ever forecast wage growth rates? A. No."); *id.* at 19:18–20 ("Q. Are you holding yourself out as an expert on economics? A. No."); *id.* at 21:20–22 ("Q. Have you ever had to forecast municipal population levels before? A. No, I have not."); *id.* 21:23–25 ("Q. Have you ever forecast inflation rates before? A. No."); *id.* at 22:19-21 (Q. Do you personally do the tax forecasting for the City of Detroit? A. Personally, no.").

8

Q. Well the 250 million. It gives examples, such as 76 million in collections after 2.8 million in costs. And then for additional fire marshal inspections in EMS fleet, 23.5 million after approximately 10.2 million in costs. And it lists other figures at the bottom of Page 5 and the top of Page 6. Do you see that?

A. Yeah. Those are -- those are coming from the Plan of Adjustment, and they would have been calculated by Conway MacKenzie -- because it's in the restructuring part of the Plan of Adjustment.

*Q. Can you explain how the numbers on Page 5 and 6 of your expert report were calculated?*

*A. I can explain some of the -- some of the factors that are involved in the calculation; but the exact calculation, no.*[23]

Given these admissions, his opinions can hardly be considered "the product of reliable principles and methods."[24]

## II. Mr. Hill's Proposed Expert Testimony Would Be Cumulative and Would Amount To Improper Vouching for the Opinions of Other Experts.

15. But even if Mr. Hill did have a full understanding of the Ernst & Young projections, such expert testimony would still be improper. An expert cannot offer an opinion given "for the purpose of vouching for the truth of" another expert's testimony.[25]

---

[23] Ex. 6B, Hill Dep. at 91:4–92:9 (emphases added).

[24] *See* Fed. R. Evid. 702.

[25] *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) (excluding expert testimony in bankruptcy proceeding); *see also, e.g., Tunis Bros. Co., Inc. v. Ford Motor Co.*, 124 F.R.D. 95, 98 (E.D. Pa. 1989) (expert testimony is cumulative and inadmissible if the expert would "[m]erely . . . vouch for previous experts" or simply "restate [their] testimony"); *Hartle v. First Energy*

9

16. This kind of impermissible vouching, however, is precisely what the City seeks to have Mr. Hill do as a proposed expert who would opine that the projections and numbers created by the City's experts were "reasonable." When asked at his deposition what his "methodology" was for determining that the E&Y forecast was reasonable, Mr. Hill stated that he was simply relying on the fact that "the revenues that we were projecting came to within about 1 percent of the revenues that Ernst & Young had projected" under the baseline scenario for FY 2014-2016 and "information from E&Y as an expert and also Conway MacKenzie in terms of restructuring."[26]

17. Such testimony is not only improper under Rule 702, but also unduly cumulative. The City has already designated multiple experts to discuss the

---

*Generation Corp.*, —F. Supp. 2d—, 2014 WL 1007294, at *13 (W.D. Pa. Mar. 17, 2014) (excluding expert testimony that "amount[ed] to vouching" for another expert as "cumulative" and "unhelpful"); *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 781 n.27 (N.D. Ohio 2010) (an expert may not "simply parrot or recite the opinions and knowledge of other expert[s]."); *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2008 WL 73689, at *14 (N.D. Cal. Jan. 5, 2008) (precluding expert from "spruc[ing] up the [party's] other experts' testimony at trial by vouching for its consistency or accuracy.").

[26] Ex. 6B, Hill Dep. 124:23–125:12 (emphasis added). Mr. Hill also has a short paragraph in his report where he asserts that "it is important that the PFRS and GRS pension funding assumptions be set at consistently attainable levels." Ex. 6A, Hill Report at 7-8. To the extent Mr. Hill is attempting to suggest that the investment rates the City proposes are "reasonable' (even though they are at odds with the prior 20-year history of the plans), they again are duplicative of the opinions of other City experts such as Alan Perry and constitute improper vouching.

forecasts they created, including Guarav Malhotra, Robert Cline, and Caroline Sallee. Mr. Hill's proposed "expert" testimony about projections he acknowledges he does not fully understand will add nothing beyond the testimony of the experts who actually created them.[27]

18. While it may be permissible for Mr. Hill to testify as a fact witness regarding the contents of the Consensus Conference Report the City created, having him testify as another "expert" regarding projections created by other experts who are also slated to testify at the confirmation hearing would be unnecessarily cumulative.

### III. Mr. Hill's Testimony Would Not Aid The Court and Does Not "Fit" the Facts of this Case as Rule 702 Requires.

19. Finally, to the extent Mr. Hill is opining that the revenue projections for the first three years of Ernst & Young's baseline scenario are "similar" to the consensus revenue numbers, such "expert" testimony is unnecessary and will not aid the Court. The Court does not need expert assistance to examine two numbers and determine whether they are "similar" or "comparable." "Where the proffered

---

[27] *See In re Air Crash Disaster*, 86 F.3d 498, 527 (6th Cir. 1996) ("[A] court is free to exclude *any* expert testimony, including the testimony of an announced expert, if the testimony is cumulative or redundant[.]") (emphasis in original); *Kendra Oil & Gas, Inc. v. Homco, Ltd.*, 879 F.2d 240, 243 (7th Cir. 1989) (expert properly excluded when expert did not add "a new angle or argument, as opposed to the refrain of 'me too'."); *Tunis Bros. Co., Inc.*, 124 F.R.D. at 98; *Hartle*, 2014 WL 1007294, at *13; Fed. R. Evid. 403.

expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact."[28] Likewise, it is "[i]t is well established that an expert witness's testimony is not helpful 'where the [trier of fact] has no need for an opinion because it easily can be derived from common sense, common experience, [its] own perceptions, or simple logic.'"[29]

20. In addition, because it is not clear how Mr. Hill's opinions regarding the first three years of the baseline scenario are relevant to the issues before the Court, those opinions also do not "'fit' the facts of the case" as Rule 702 requires.[30]

21. Mr. Hill does not, and cannot, compare the consensus report to Ernst & Young's projections of revenue in the restructuring scenario (for the first three years or otherwise) because the consensus conference did not attempt to forecast

---

[28] *Clark*, 192 F.3d at 759.

[29] *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 720 (W.D. Mich. 2012). *See also, e.g.*, *Pelster v. Ray*, 987 F.2d 514, 526 (8th Cir. 1993) (trial court erred in admitting otherwise qualified expert when "any lay person has the ability to compare" information compared by expert); *Garcia v. Metro. Life Ins. Co.*, 859 F. Supp. 2d 1229, 1232 (D.N.M. 2012) ("When an expert's testimony is offered on an issue that the trier of fact is capable of assessing for itself, the expert's testimony is inadmissible."); *U.S. Bank Nat'l Ass'n v. James*, 741 F. Supp. 2d 337, 343 (D. Me. 2010) (excluding expert's opinion about the total sum of payments at issue because "[t]he arithmetic involved [in this conclusion] . . . is within the ken of a lay jury.").

[30] *See Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000); *see also U.S. v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001) (noting, in affirming an expert's exclusion, that the district court "may admit the [expert opinion] evidence only if such testimony will assist the trier of fact in understanding the evidence or in determining a fact at issue.").

these revenues. Moreover, it is not surprising that the number in the consensus report is "consistent with" the Ernst & Young baseline projection given that Ernst & Young was in the room with the consensus group when it was doing its work, while simultaneously performing its work in this bankruptcy proceeding (as were several of the City's advisers from Conway MacKenzie).[31] Indeed, at one point the City considered terminating the consensus meeting, but as internal email correspondence among Mr. Hill and his colleagues indicates, specifically decided not to do so because the conference would give Ernst & Young an opportunity "to keep the group on track with comparisons to the Plan of Adjustment" and "keep them from taking a totally different view from revenues in the plan."[32]

## **CONCLUSION**

22. For the foregoing reasons, Syncora respectfully requests that the proposed expert testimony of John Hill be excluded.

[*Remainder of Page Intentionally Left Blank*]

---

[31] Ex. 6B, Hill Dep. at 305:4–8, 308:19–25; Ex. 6D, Revenue Consensus Conference Report at 14 (Mar. 18, 2014) (listing among the conference participants Shavi Sarna and Juan Santambroglo from Ernst & Young and Chris Gannon, Emily Mclain Petrovski, Kevin Hand, Todd Eddy, and Jeffrey Addison from Conway MacKenzie). Indeed, the vast majority of the conference participants were either employees of, or consultants to, the City.

[32] Ex. 6E, 2/4/14 email (POA00123860).

Dated:  August 22, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and Syncora Capital Assurance Inc.*