# **EXHIBIT B**

Blackline of the Previous Order Against the Current Order

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
---------------------------------------------x
                                             :
In re                                        :      Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   :      Case No. 13-53846
                                             :
                        Debtor.              :      Hon. Steven W. Rhodes
                                             :
                                             :
---------------------------------------------x
```

## ORDER PURSUANT TO (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 AND 928 (A) APPROVING POSTPETITION FINANCING AND (B) GRANTING LIENS AND (II) BANKRUPTCY RULE 9019 <u>APPROVING SETTLEMENT OF CONFIRMATION OBJECTIONS</u>

THIS MATTER having come before the Court upon the motion (the "<u>Motion</u>") by the City of Detroit, Michigan (the "<u>City</u>"), as debtor in the above-captioned chapter 9 case (the "<u>Case</u>"), pursuant to Sections 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as amended (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan seeking entry of an order, *inter alia*:[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

(i) authorizing the City and the Detroit Water and Sewer Department ("DWSD"), a department of the City, to:

(a) enter into and perform under:

(1) a Bond Purchase Agreement (the "Water Bond Purchase Agreement") for water supply system bonds by and among the Michigan Finance Authority (the "MFA") and Citigroup Global Markets, Inc., acting on behalf of itself and as representative of the other underwriters named therein (collectively, the "Underwriter"), attached hereto as Exhibit 1A, to which is attached a Letter of Representation of the City and the DWSD, and pursuant to which the MFA will issue certain bonds (the "Water MFA Bonds") to be underwritten and publicly offered by the Underwriter, the proceeds of which will be used by the MFA solely to purchase the 2014 DWSD Revenue and Revenue Refunding Bonds (as defined below);

(2) a Bond Purchase Agreement (the "Sewer Bond Purchase Agreement" and together with the Water Bond Purchase Agreement, the "Bond Purchase Agreements") for sewage disposal system bonds by and among the MFA and the Underwriter, attached hereto as Exhibit 1B, to which is attached a Letter of Representation of the City, and pursuant to which the MFA will issue certain bonds (the "Sewer MFA Bonds" and together with the Water MFA Bonds, the "MFA Bonds") to be underwritten and publicly offered by the Underwriter, the proceeds of which will be used by the MFA solely to purchase the 2014 DWSD Revenue and Revenue Refunding Bonds (as defined below);

(23) a bond purchase agreementcontract for water supply system bonds between the MFA and the City (the "Water MFA Purchase Agreement"), attached hereto as Exhibit 2A;

(4) a purchase contract for sewage disposal system bonds between the MFA and the City (the "Sewer MFA Purchase

2

Agreement" and together with the Water MFA Purchase Agreement, the "MFA Purchase Agreements") attached hereto as Exhibit 2B;

(5) a bond purchase and supplemental agreement for water supply system bonds by and among the MFA, DWSD, Citibank, N.A. and certain other banks to be named, together with one or more purchasers (collectively, the "Water Direct Purchasers") (the "Water Bond Purchase Agreement (Direct Placement)"), substantially in the form attached hereto as Exhibit 3A;

(36) a bond purchase and supplemental agreement between the City and for sewage disposal system bonds by and among the MFA, DWSD, Citibank, N.A. and certain other banks to be named, together with one or more purchasers (collectively, the "Sewer Direct Purchasers" and together with the Water Direct Purchasers, the "Direct Purchasers") or, alternatively, between the MFA and the Direct Purchasers ((the "Sewer Bond Purchase Agreement (Direct Placement)" and together with the Water Bond Purchase Agreement (Direct Placement), the "Bond Purchase AgreementAgreements (Direct Placement)"), substantially in the form attached hereto as Exhibit 3B;

(47) the Assured Insurance Commitment provided by Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance Inc. ("Assured"), on substantially the terms set forth in the term sheet attached heretoto the Motion as Exhibit 47;

(58) the 2014 DWSD Refunding Bonds Insurance Policies in an amount not less than the principal amount of the outstanding Assured-insured Tendered Bonds, on the terms set forth in the Motion and the Assured Insurance Commitment; and

(69) the 2014 DWSD Refunding Bonds Surety Policies (and together with the 2014 DWSD Refunding Bonds Insurance Policies, collectively, the "Assured Policies") as to reserve accounts that secure exclusively the Assured-insured 2014 DWSD Revenue and Revenue Refunding Bonds (defined

3

below) in a principal amount equal to the DSRF requirement (subject to a limit of $70 million of additional surety coverage) on the terms set forth in the Assured Insurance Commitment;

(b) issue, via a public offering or a private placement, one or more series of Sewage Disposal System Revenue Bonds, Sewage Disposal System Revenue Refunding Bonds and Water Supply System Revenue Refunding Bonds (collectively, the "2014 DWSD Revenue and Revenue Refunding Bonds");

(c) as it relates to the transactions contemplated by this Order, perform under:

(1) Act 94, Public Acts of Michigan, 1933, as amended ("Act 94") the relevant excerpts of which are attached hereto as Exhibit 5̶4;

(2) Act 34, Public Acts of Michigan, 2001, ("Act 34") the relevant excerpts of which are attached hereto as Exhibit 6̶5;

(3) Ordinance No. 18-01 adopted by the City Council of the Debtor on October 18, 2001 (the "Sewer Ordinance") attached to the Motion as Exhibit 11;

(4) Amended and Restated Bond Ordinance No. 01-05 adopted by the City Council of the Debtor on January 26, 2005 (the "Water Ordinance") attached to the Motion as Exhibit 12, (the Water Ordinance together with the Sewer Ordinance, the "Bond Ordinances");

(5) a Resolution Authorizing the Issuance and Sale of Sewage Disposal System Revenue and Revenue Refunding Bonds of the City of Detroit, adopted by the Board of Water Commissioners on [_____], 2014 (the "DWSD Bond Resolution (Sewer)") attached hereto as Exhibit 6 and approved by the Emergency Manager of the City on [ ], 2014 (the "EM Approval"), which such approval is attached hereto as Exhibit 7;

(6) a Resolution Authorizing the Issuance and Sale of Water Supply System Revenue Refunding Bonds of the City of

~~Detroit, adopted by the Board of Water Commissioners on [          ], 2014 (the "DWSD Bond Resolution (Water)") attached hereto as Exhibit 8 and approved by the EM Approval;~~

(~~7~~5) a Trust Indenture by and among the City, DWSD and U.S. Bank National Association, as trustee (the "DWSD Trustee") dated as of June 1, 2012 (the "DWSD Sewer Indenture") and a Trust Indenture by and among the City, DWSD and the DWSD Trustee dated as of February 1, 2013 (the "DWSD Water Indenture" and together with the DWSD Sewer Indenture, collectively, the "DWSD Indentures") attached hereto as Exhibits ~~9~~6A and ~~9~~6B, respectively;[2]

(8)    ~~a form of Sale Order to be executed by the Director of the DWSD and approved by the Emergency Manager of the City (the "Bond Sale Order (Sewer)") attached hereto as Exhibit 10; and~~

(9)    ~~a form of Sale Order to be executed by the Director of the DWSD and approved by the Emergency Manager of the City (the "Bond Sale Order (Water)") attached hereto as Exhibit 11 (the Bond Sale Order (Water) together with the Bond Sale Order (Sewer), the "Bond Sale Orders");[2]~~

---

[2] The Bond Purchase Agreements, the MFA Purchase Agreements, the 2014 DWSD Revenue and Revenue Refunding Bonds, Act 94, Act 34, the Sewer Ordinance, the Water Ordinance, the DWSD Indentures, the Bond Purchase Agreements (Direct Purchase), the Assured Insurance Commitment, and the Assured Policies shall be collectively referred to herein as the "Transaction Documents".

[2] ~~The Bond Purchase Agreement, the MFA Purchase Agreement, the 2014 DWSD Revenue and Revenue Refunding Bonds, Act 94, Act 34, the Sewer Ordinance, the Water Ordinance, the EM Approval, the DWSD Bond Resolution (Sewer), the DWSD Bond Resolution (Water), the DWSD Indentures, the Bond Purchase Agreement (Direct Purchase), the Bond Sale Orders, the Assured Insurance Commitment, and the Assured Policies shall be collectively referred to herein as the "Transaction Documents".~~

(ii) authorizing the City, acting through DWSD, to pledge and secure, by statutory lien created by the Bond Ordinances and Act 94 and the lien authorized by Sections 364(c) and 364(d) of the Bankruptcy Code on the Net Revenues (as defined in the Bond Ordinances) of the DWSD's Sewage Disposal System and Water Supply System and, to the maximum extent permitted by law, the other Pledged Assets (as defined in the Bond Ordinances), the payment of the 2014 DWSD Revenue and Revenue Refunding Bonds in favor of the holders of the 2014 DWSD Revenue and Revenue Refunding Bonds (the "2014 DWSD Revenue and Revenue Refunding Bondholders") pursuant to the Bond Ordinances, Act 94 and Sections 364(c) and 364(d) of the Bankruptcy Code, in each case, as, to the extent, and subject to, the priorities described in the Transaction Documents and this Order;

(iii) finding that the pledge of DWSD revenues as security for such 2014 DWSD Revenue and Revenue Refunding Bonds constitutes a "lien" on "pledged special revenues" as contemplated by sections 101(37), 902(2), 922(d) and 928 of the Bankruptcy Code;

(iv) authorizing the City to pay the principal, interest, fees, expenses and other amounts payable under the Transaction Documents, including (and to the extent applicable under the Transaction Documents), Assured's fees, the DWSD Trustee's and the Underwriter's fees, the actual fees and disbursements of the

6

DWSD Trustee's and the Underwriter's attorneys, advisers, accountants, and other consultants, and the costs of issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds and the MFA Bonds, all to the extent provided in and in accordance with the terms of the Transaction Documents (as applicable) and notwithstanding Sections 943 and 1129(a)(9)(A) of the Bankruptcy Code or the confirmation of any plan of adjustment in the Case; and

(v)     approving a settlement (the "Settlement"), to be effective if and when the Tender (as defined below) closes, by and among the DWSD Settlement Parties, (a) establishing the treatment of water and sewer bond claims under the City's plan of adjustment and (b) resolving the DWSD Plan Objections on the terms and conditions set forth in the Motion and in the Assured Insurance Commitment; and

The Court having considered the Motion, including the Transaction Documents, the Donner Declaration, Bateson Declaration and Brownstein Declaration, and the evidence and arguments submitted at the hearing on the Motion commencing on August —25, 2014 (the "Hearing"), after due deliberation and consideration, and for good and sufficient cause appearing therefor;

AND BASED UPON THE RECORD ESTABLISHED AT THE HEARING ON THE MOTION AND ALL PLEADINGS AND DOCUMENTS FILED HEREIN, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

7

A.     *Petition Date*.  On July 18, 2013 (the "Petition Date"), the City filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Court") commencing this Case.  The order for relief in this Case was entered on December 5, 2013.

B.     *Jurisdiction and Venue*.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and authority under 28 U.S.C. § 157 and Local Rule 83.50 of the United States District Court for the Eastern District of Michigan over these proceedings and over the persons and entities affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     *Notice*.  Notice of the Motion and the Hearing (1) was served by the City on (a) the trustees, transfer agents or paying agents, as applicable, for the City's secured and unsecured bonds; (b) the City's largest unsecured creditors as identified on the list filed under Bankruptcy Rule 1007(d); (c) the Official Committee of Retirees appointed in this case; (d) the unions representing certain of the City's employees and retirees; (e) the four associations of which the City is aware representing certain retirees of the City; (f) the City's pension trusts; (g) the insurers of the City's bonds; (h) the insurers of the certificates of participation

CHI-1939088~~1940093~~v43

issued with respect to the City's pension funds (the "COPs"); (i) certain significant holders of the COPs; (j) the counterparties under the swap contracts entered into in connection with the COPs (collectively, the "Swaps"); (k) the insurers of the Swaps; (l) all entities that have requested notice pursuant to Bankruptcy Rule 2002, (m) counsel to the Underwriter and the Direct Purchasers, (n) counsel to the DWSD Objecting Parties; (o) counsel to the State Revolving Fund and (p) Trustee for the State Revolving Fund Bonds. (2) was sufficient and proper under the circumstances; and (3) complies with Bankruptcy Rules 2002 and 4001(c) and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Michigan. No further notice is necessary or required.

D.    *Sixth Amended Plan.*  On August 20, 2014, the City filed the Sixth Amended Plan (the "Amended Plan"), which provides that, if the City accepts some or all of the Tendered Bonds for purchase and the Settlement Date[3] occurs, the Existing DWSD Bond Claims will be unimpaired within the meaning of Section 1124 of the Bankruptcy Code, meaning that the Amended Plan shall, among other things, not eliminate call protection or reduce the interest rates of the Existing DWSD Bonds.

DE.    *Authorization Appropriate*.    The authorization granted herein will

---

[3] "Settlement Date" shall have the same meaning as the term "DWSD Settlement Date" set forth in the Amended Plan.

CHI-1939088 1940093v13

benefit the City and its citizens and is a sound exercise of the City's business judgment, is in the best interest of the City and its citizens, and is based on good, sufficient, and sound business purposes and justifications.

~~E~~F.     *The City's Stipulations*.   The City stipulates and acknowledges that: (1) except as provided in this Order, the Transaction Documents as of the date of entry of this Order, the Pledged Assets are not subject to any pledge, lien or security interest other than the existing liens created under the Bond Ordinances and made statutory liens by Act 94 as security for all Secured Obligations (as defined in the Bond Ordinances) heretofore issued and hereafter permitted to be issued under the Bond Ordinances; (2) the City has taken or shall take or cause to be taken all actions to obtain under non-bankruptcy law (including, but not limited to, Act 94) and the Bond Ordinances, and has received or shall have received prior to the closing, all due authorizations for the approval of the Transaction Documents, including for the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds secured by the pledge of the Pledged Assets as set forth in the Transaction Documents; (3) subject to a determination in a Supplemental Action (as defined in the Bond Ordinances) that there will be the Required Combined Coverage (as defined in the Bond Ordinances) upon issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds (and after giving effect to the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds), the Required

Combined Coverage will not be less than 120% for the Senior Lien Bonds, 110% for the Second Lien Bonds and 100% for the SRF Junior Lien Bonds (each as defined in the Bond Ordinances), in each case when calculated in the manner and by the means prescribed by the Projected Net Revenues Test and Historical Net Revenues Test set forth in Section 21(C)(b) and (c) of the Sewer Ordinance and Section 20(C)(2) and (3) of the Water Ordinance; and (4) the entry of this Order and the relief and orders granted herein is at the request, and upon the consent, of the City.

~~F~~G.    *Findings Regarding the Postpetition Financing*.

(i)    *Credit Not Available on More Favorable Terms*.  The City is unable to incur the indebtedness evidenced by the 2014 DWSD Revenue and Revenue Refunding Bonds without the granting of a senior or equal lien on the Pledged Assets as set forth in the Transaction Documents.  The City has been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense, with priority over any or all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; credit secured by a lien on property of the City that is not otherwise subject to a lien; or credit secured by a junior lien on property of the City that is subject to a lien.  Financing on a post-petition basis is not otherwise available without granting the DWSD Trustee (1) perfected liens, equal or senior to the existing liens

11

on the Pledged Assets securing the Existing DWSD Bonds, as security for the 2014 DWSD Revenue and Revenue Refunding Bonds with the priorities set forth herein and in the Transaction Documents, and (2) the other protections set forth in the Transaction Documents and this Order.

(ii) *Use of Proceeds of the DWSD Revenue and Revenue Refunding Financing.* The City has agreed that proceeds of the DWSD Revenue and Revenue Refunding Financing shall be used in a manner consistent with the terms and conditions of the Transaction Documents, solely for purposes permitted by law, including (a) to make essential capital improvements to the City's sewerage disposal system as required under state and federal law as more fully described in the Motion (the "DWSD Revenue Financing"); (b) to finance the City's obligations to purchase certain water and sewer bonds that have been tendered in connection with a pending invitation to tender (the "Tender") to the holders of the City's outstanding water and sewer bonds (the "Existing DWSD Bonds"), also as described in greater detail in the Motion (the "Tender Offer Financing"); and (c) to pay the principal, interest, fees, expenses and other amounts payable under the Transaction Documents (to the extent applicable).

~~G~~H. *Prudent Judgment and Jurisdictional Matters.* Good cause has been shown for the entry of this Order. The terms and conditions of the Transaction Documents and the fees to be paid thereunder are fair, reasonable, and the best

available to the City under the circumstances; reflect the City's exercise of prudent judgment; are supported by reasonably equivalent value and fair consideration; are at the request, and with the consent, of the City; and, with that consent, are within the jurisdiction and powers of the Court pursuant to Section 904 of the Bankruptcy Code.

HI. *Good Faith Under Section 364(e).* In respect of the DWSD Revenue and Revenue Refunding Financing authorized under section 364 of the Bankruptcy Code, the City, the MFA, the Underwriter, the Direct Purchasers and Assured have acted in good faith, as that term in used in section 364(e) of the Bankruptcy Code, and the Transaction Documents are the result of good faith, arms-length negotiations among the City, the MFA, the Underwriter, the Direct Purchasers and Assured. As of the closing date, the City's issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds and the purchase thereof by (i) the MFA, the MFA's issuance of the MFA Bonds pursuant to Executive Order 2010-2 and the Shared Credit Rating Act, Act 227, Public Acts of Michigan 1985, as amended, MCL 141.1051 *et seq*., the Underwriter's underwriting of the MFA Bonds and the purchase of the MFA Bonds in a public offering, thereby providing funds for the purchase by the MFA of the 2014 DWSD Revenue and Revenue Refunding Bonds and (ii) the Direct Purchasers in the event of a private placement or direct purchase of the 2014 DWSD Revenue and Revenue Refunding Bonds, and the issuance of

13

the Assured Policies by Assured each represents an extension of credit in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. In addition, the grant by the City of a pledge and lien in the Pledged Assets to secure, and provide a source for the repayment of, the 2014 DWSD Revenue and Revenue Refunding Bonds and the MFA Bonds, is in "good faith" within the meaning of section 364(e) of the Bankruptcy Code. The Transaction Documents will be entered into in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, for purposes and uses that are permitted by law, and not in violation of the Bankruptcy Code or of applicable non-bankruptcy law, and the transactions contemplated by the Transaction Documents are not prohibited by applicable bankruptcy or non-bankruptcy law. As such, the MFA (and its assignees and transferees), the Underwriter (and its assignees and transferees), each purchaser of the MFA Bonds (and their assignees and transferees) (each, including its assignees and transferees, an "MFA Bondholder" and, collectively, the "MFA Bondholders"), each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), and Assured therefore qualify for the full protection and benefits of sections 364(e) and 921(e) of the Bankruptcy Code and this Order and shall not be affected by any reversal or modification on appeal

CHI-1939088$\overline{1940093}$v13

of this Order, nor shall the reversal on appeal of a finding of jurisdiction affect the validity of any debt incurred pursuant to this Order.

IJ.    *Act 94 Approval.*    The City has duly authorized and approved the Transaction Documents pursuant to Act 94 (as described herein and in the Motion), except for the execution of the Bond Sale Orders by the Director of the DWSD and by the Emergency Manager of the City.    The City is duly authorized to cause the execution of the Bond Sale Ordersbond sale orders by the Director of the DWSD and by the Emergency Manager of the City upon the issuance of this Order.

JK.    *Adequate Protection of Existing Liens*.    A determination in a Supplemental Action calculated in the manner and by the means prescribed by the Projected Net Revenues Test and the Historical Net Revenues Test set forth in the Bond Ordinances, that the resulting Required Combined Coverage, after giving effect to the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds, is not less than 120% for the Senior Lien Bonds, not less than 110% for the Second Lien Bonds and not less than 100% for the SRF Junior Lien Bonds (the "Additional Bonds Test"), together with the Alternative Refund/Debt Service Savings Test and the City's rate covenants made in Section 9 of the Bond Ordinances (the "Rate Covenant"), satisfies the bargained-for terms of the Existing Bond Documents that are applicable to the subsequent issuance of Secured Obligations, such as the 2014 DWSD Revenue and Revenue Refunding Bonds.

15

After taking into account the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds and the granting of the senior and equal liens in accordance with the Transaction Documents and the Bond Ordinances, under the circumstances and given that the Supplemental Action will support that the Additional Bonds Test and Alternative Refund/Debt Service Savings Test, as applicable, will meet or exceed the Required Combined Coverage required under the Bond Ordinances, the Court finds that the Additional Bonds Test, the Alternative Refund/Debt Service Savings Test and the Rate Covenant constitute adequate protection of the pre-petition liens securing the Existing DWSD Bonds for purposes of section 364(d)(1) of the Bankruptcy Code. Moreover, there is no impairment to the interests of holders of Existing DWSD Bonds from the Tender Offer Financing because new bondholders will be taking the same position in the DWSD capital structure as the holders of the Existing DWSD Bonds.

~~K~~L. *Special Revenues.* Net Revenues, as defined in the Bond Ordinances, constitute "special revenues" as that term is defined in Section 902(2) of the Bankruptcy Code, constitute "pledged special revenues" as that term is used in Section 922(d) of the Bankruptcy Code and are afforded the protections contemplated by Section 928 of the Bankruptcy Code, which have been validly pledged and become subject to a lien as defined in section 101(37) of the Bankruptcy Code and in accordance with Act 94 and the Bond Ordinances to

16

secure the payment of the 2014 DWSD Revenue and Revenue Refunding Bonds issued under the DWSD Indentures, as more fully set forth in the Transaction Documents.

~~L~~M. *Willingness to Provide Insurance*. Assured has indicated a willingness to issue the Assured Policies subject to: (a) the entry of this Order; (b) the approval by this Court of the Settlement; and (c) the satisfaction of certain other commercially reasonable conditions precedent set forth in the Assured Insurance Commitment.

~~M~~N. *The Settlement*. The Settlement was negotiated at arm's length and in good faith by the DWSD Settlement Parties and the settlements and compromises set forth in the Motion and the Assured Insurance Commitment are fair, equitable and reasonable. The DWSD Settlement Parties are not "insiders" (as defined in the Bankruptcy Code) of the City.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. <u>Motion Approved</u>. The Motion is GRANTED.

2. <u>Objections Overruled</u>. All objections to the Motion and to the Transaction Documents, to the extent not withdrawn, waived, or resolved by the

terms hereof, and all reservations of rights included therein, are hereby denied and overruled on the merits, with prejudice.

      3.     <u>Authorization of the Financing</u>.  Subject to the adoption of ~~the Bond Sale Orders~~<u>bond sale orders</u> by the Director of the DWSD and by the Emergency Manager of the City, and subject to a determination in a Supplemental Action of the satisfaction of the Rate Covenant in accordance with the Bond Ordinances, the City is hereby authorized pursuant to sections 105(a), 364(c) and 364(d)(1) of the Bankruptcy Code, by and through DWSD, to enter into, incur the indebtedness evidenced by the 2014 DWSD Revenue and Revenue Refunding Bonds under, and perform pursuant to, the Transaction Documents, all of which that have been submitted to the Court are hereby approved, and to otherwise satisfy the requirements of Act 94, the Bond Ordinances, ~~the DWSD Bond Resolution (Sewer), and the DWSD Bond Resolution (~~<u>and applicable resolutions of the Board of </u>Water~~)~~ <u>Commissioners</u>.  The City is expressly authorized, without further authorization or approval of this Court, to perform all acts, make, execute and deliver all instruments and documents, which may be required for the performance by the City under the Transaction Documents and the creation and perfection of the liens described in and provided for by this Order and the Transaction Documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements, as applicable), and to pay all fees and

18

expenses that may be required or reasonably necessary for the City's performance of its obligations under or related to the Transaction Documents. The Net Revenues, as defined in the Bond Ordinances, and all proceeds thereof shall be deposited and applied as required by the Transaction Documents. Upon execution and delivery, the Transaction Documents shall be valid and binding obligations of the City, enforceable against the City in accordance with their terms.

4. <u>Authorization to Borrow</u>. Immediately upon the entry of this Order, the City is authorized to issue the 2014 DWSD Revenue and Revenue Refunding Bonds to the MFA or, in the event of a private placement or direct purchase, to the MFA or to the Direct Purchasers, as applicable, pursuant to the terms of the Transaction Documents and is authorized to enter into and incur the obligations under the Transaction Documents.

5. <u>2014 DWSD Revenue and Revenue Refunding Bonds</u>. The Transaction Documents and this Order shall evidence the validity and binding effect of the 2014 DWSD Revenue and Revenue Refunding Bonds, which shall be effective as of the date of their issuance. Upon entry of this Order, and effective as of the date of their issuance, the 2014 DWSD Revenue and Revenue Refunding Bonds will include all indebtedness or obligations, contingent or absolute, which may now or from time to time be owing (in each case, however, solely in connection with the 2014 DWSD Revenue and Revenue Refunding Bonds (and not

19

in connection with other indebtedness, obligations or debt issuances, whether subject to the Transaction Documents or otherwise)) by the City to the MFA, the Underwriter, the Direct Purchasers, the DWSD Trustee, or any of the MFA Bondholders under the respective Transaction Documents or this Order, including all principal, accrued interest, costs, fees, expenses and other amounts in respect of the 2014 DWSD Revenue and Revenue Refunding Bonds under the respective Transaction Documents. The 2014 DWSD Revenue and Revenue Refunding Bonds shall be due and payable, without notice or demand, in accordance with the terms of the Transaction Documents and notwithstanding Sections 943 and 1129(a)(9)(A) of the Bankruptcy Code or the confirmation of any plan of adjustment in this Case.

6. <u>Liens</u>. During the pendency of the Case and prior to the effective date of a plan of adjustment in this Case, upon issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds, this Order, Act 94 and the Transaction Documents shall be conclusive evidence of the validity, perfection and priority of the liens granted by the City and encumbering the Pledged Assets to secure the 2014 DWSD Revenue and Revenue Refunding Bonds (the "<u>Liens</u>") under Act 94 and sections 101(37), 364(c) and 364(d) of the Bankruptcy Code without the necessity of (a) filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any

jurisdiction or (b) the taking of any other action (including taking possession or entering into any deposit account control agreement, mortgages or deeds of trust) to validate or perfect (in accordance with applicable non-bankruptcy law) the Liens.

7. <u>Lien Priority - Sewage Disposal System Revenue Bonds</u>. Pursuant to the Sewer Ordinance and the other relevant Transaction Documents, the Liens securing the Sewage Disposal System Revenue Bonds shall be equal to the existing senior liens securing the Senior Lien Bonds, senior in priority and superior to the existing subordinate liens or any other pledge of, lien on or claim to any of the Pledged Assets under the DWSD Sewer Indenture, other than the lien securing the Senior Lien Bonds. Other than as set forth herein, the Transaction Documents and the Sewer Ordinance, the Liens securing the Sewage Disposal System Revenue Bonds shall not be made or become subject to or *pari passu* with any lien or security interest or otherwise and shall be valid, binding, fully perfected, continuing and enforceable, including against the City under sections 921(e) and 364(e) of the Bankruptcy Code, and this Order shall not be affected by any reversal or modification on appeal of this Order, nor shall the reversal on appeal of a finding of jurisdiction affect the validity of any debt incurred pursuant to this Order.

8. <u>Lien Priority - Revenue Refunding Bonds</u>. Pursuant to the Bond

CHI-1939088 1940093v13

Ordinances and the Transaction Documents, the Liens securing the Sewage Disposal System Revenue Refunding Bonds and the Water Supply System Revenue Refunding Bonds (the "Refunding Bonds") shall be equal to the existing senior liens or existing second liens, as the case may be, securing Tendered Bonds that are Senior Lien Bonds and Tendered Bonds that are Second Lien Bonds, respectively. The Liens securing Refunding Bonds that are Senior Lien Bonds shall be senior in priority and superior to the existing subordinate liens or any other pledge of, lien on or claim to any of the Pledged Assets under the DWSD Indentures, other than the liens securing the Senior Lien Bonds. The Liens securing Refunding Bonds that are Second Lien Bonds shall be subordinate in priority to Senior Lien Bonds and superior to the existing subordinate liens or any other pledge of, lien on or claim to any of the Pledged Assets under the DWSD Indentures, other than the liens securing Second Lien Bonds and Senior Lien Bonds. Other than as set forth herein, the Transaction Documents and the Bond Ordinances, the Liens securing the Refunding Bonds shall not be made or become subject to or *pari passu* with any lien or security interest or otherwise and shall be valid, binding, fully perfected, continuing and enforceable, including against the City under sections 921(e) and 364(e) of the Bankruptcy Code, and this Order shall not be affected by any reversal or modification on appeal of this Order, nor shall the reversal on appeal of a finding of jurisdiction affect the validity of any debt

22

incurred pursuant to this Order.

9.     No Obligation to Extend Credit.  None of the Direct Purchasers, the MFA or the Underwriter shall have any obligation to purchase any bond or make any other extension of credit under the Transaction Documents unless (a) all of the conditions precedent to the purchase of the 2014 DWSD Revenue and Revenue Refunding Bonds and, in the case of a public offering, the purchase of the MFA Bonds and the extension of such credit provided thereby under the Transaction Documents and this Order have been satisfied in full or waived in accordance with the terms of the applicable Transaction Documents and (b) no stay of this Order pending appeal shall have been obtained by any party from this Court or any other court.

10.     Amendment of the Transaction Documents. The City is authorized, without further approval or authorization of this Court, to perform all acts and to make, execute and deliver all instruments and documents that may be reasonably required to effect one or more amendments, modifications or supplements to any of the Transaction Documents if the amendments, modifications or supplements (a) are consistent with this Order; (b) in the good faith judgment of the City, are not amendments, modifications or supplements that are materially adverse to the interests of the holders of pre-petition liens securing the Existing DWSD Bonds under the Transaction Documents; (c) are otherwise permitted under the terms of

the Bond Ordinances and the other Transaction Documents; and (d) are otherwise within the power of the City to effect without further order of the Court under Section 904 of the Bankruptcy Code or otherwise.

11. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>. Based on the findings of fact and conclusions of law set forth in this Order and the record made during the Hearing, the City, the MFA, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders and Assured have acted in good faith, as that term is used in section 364(e) of the Bankruptcy Code, in connection with the Transaction Documents, and their reliance on this Order is also in good faith. In accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter reversed or modified on appeal, the MFA, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders and Assured are entitled to and hereby granted the protections provided in section 364(e) of the Bankruptcy Code. Any reversal or modification of this Order on appeal shall not affect the validity or enforceability of the 2014 DWSD Revenue and Revenue Refunding Bonds or any Lien, claim, or priority

24

authorized or created hereby or the validity or enforceability of the Assured Policies. Any liens or claims granted to the MFA, the DWSD Trustee, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders or Assured hereunder arising prior to the effective date of any such reversal or modification of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

12.     <u>Section 921(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>.  In accordance with section 921(e) of the Bankruptcy Code, in the event any or all of the provisions of the order for relief or any order finding jurisdiction is reversed on appeal, the MFA, the DWSD Trustee, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders and Assured are entitled to the protections provided in section 921(e) of the Bankruptcy Code.  Any such reversal shall not affect the validity or enforceability of the 2014 DWSD Revenue and Revenue Refunding Bonds or the Liens or priority authorized by this Order, or the validity or enforceability of the Assured Policies.  Any Liens granted to the DWSD Trustee authorized hereunder arising prior to the effective date of any such reversal shall be

governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

13. <u>Special Revenues</u>. Any and all Net Revenues, as defined in the Bond Ordinances, shall be treated as "special revenues" as that term is defined in section 902(2) of the Bankruptcy Code and shall be treated as "pledged special revenues" as that term is used in section 922(d) of the Bankruptcy Code and are afforded all applicable protections under the Bankruptcy Code and applicable law, including the protections contemplated in section 928 of the Bankruptcy Code, which have been validly pledged and become subject to a lien under Act 94 to secure the payment of the 2014 DWSD Revenue and Revenue Refunding Bonds issued under the DWSD Indentures, as fully set forth in the Transaction Documents.

14. <u>No Impairment</u>. All rights and remedies of the DWSD Trustee, MFA, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders and Assured under the Transaction Documents, as they relate to the 2014 DWSD Revenue and Revenue Refunding Bonds, shall remain effective and, except as otherwise provided in the Transaction Documents, may not be modified, impaired, or discharged, notwithstanding the authority of the Emergency Manager of City to act on behalf of and bind the City, the dismissal of this Case, or the confirmation of, or failure to

confirm, any plan of adjustment in this Case. All rights and remedies of the DWSD Trustee, MFA, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders and Assured under this Order shall remain effective and may not, except as otherwise provided herein, be modified, impaired or discharged, notwithstanding the authority of the Emergency Manager of City to act on behalf of and bind the City, during the pendency of the Case and prior to the effective date of a plan of adjustment in this Case.

15. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the DWSD Trustee, the holders of Existing DWSD Bonds, the DWSD Bond Insurers, the MFA, the Underwriter, each holder of a 2014 DWSD Revenue and Revenue Refunding Bond, including, but not limited to the Direct Purchasers (and each of their respective assignees and transferees), the MFA Bondholders or Assured to seek any other or supplemental relief in respect of the City.

16. <u>No Modification of Order</u>. Following the closing date of the 2014 DWSD Revenue and Revenue Refunding Bonds and until and unless the 2014 DWSD Revenue and Revenue Refunding Bonds have been paid in full in cash

(such payment being without prejudice to any terms or provisions contained in the Transaction Documents that by their terms survive such discharge) or otherwise defeased, the City irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly, without the prior written consent (not to be unreasonably withheld) of (a) Assured, the DWSD Trustee, the Ad Hoc Committee and, if such action is to be taken after the issuance of the 2014 DWSD Revenue and Revenue Refunding Bonds, the MFA, and (b) in the case of a direct purchase of the 2014 DWSD Revenue and Revenue Refunding Bonds, the Direct Purchasers, in each case, in the reasonable discretion of the DWSD Trustee, the MFA and the Direct Purchasers, as applicable, any modification, stay, vacatur or amendment to this Order or the order for relief in any manner.

17. <u>Exculpation</u>.  Except to the extent expressly set forth in the Transaction Documents, nothing in this Order, the Transaction Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DWSD Trustee, Assured, the holders of Existing DWSD Bonds, the MFA, the Underwriter, the Direct Purchasers or the MFA Bondholders any liability for any claims arising in connection with the 2014 DWSD Revenue and Revenue Refunding Bonds.  In addition, with respect to the Pledged Assets (a) except as expressly set forth in the Transaction Documents, none of Assured, the DWSD

28

Trustee, the holders of Existing DWSD Bonds, the MFA, the Underwriter, the Direct Purchasers or the MFA Bondholders shall, in any way or manner, be liable or responsible for (i) the safekeeping of the Pledged Assets, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Pledged Assets shall be borne by the City.

18.  _Effect of Stipulations_.  The stipulations and admissions contained in this Order shall be binding upon the City and the DWSD Objecting Parties.

19.  _Order Controls (Transaction Documents)_.  During the pendency of the Case and prior to the effective date of a plan of adjustment in this Case, in the event of any inconsistency between the terms and conditions of the Transaction Documents and this Order, the provisions of this Order shall govern and control.

20.  _No Third Party Rights_.  Except as explicitly provided for herein or in the Transaction Documents, this Order does not create any rights for the benefit of any third party who is not expressly referenced in this Order, any creditor or any direct, indirect or incidental beneficiary.

21.  _Survival_.  The Liens and indebtedness incurred under the Transaction Documents authorized by this Order and the other provisions of this Order and any actions taken pursuant hereto shall survive entry of any subsequent order that may

be entered: (a) dismissing the Case; or (b) pursuant to which this Court abstains from hearing the Case.

22. <u>No Waiver by Seeking Relief</u>.  Except to the extent this Order provides otherwise, (i) neither the filing of the Motion nor anything herein shall constitute a waiver of any right of the City to take any action, including with respect to the 2014 DWSD Revenue and Revenue Refunding Bonds, without authorization or approval of the Court, (ii) nor shall the filing of the Motion or the entry of this Order be deemed to constitute the City's consent, pursuant to Section 904 of the Bankruptcy Code, to this Court's interference with (a) any of the political powers of the City, (b) any of the property or revenues of the City or (c) the City's use or enjoyment of any income-producing property, other than as provided herein.

23. <u>The Settlement</u>.  The Settlement as described in the Motion is approved in its entirety and all of its terms are incorporated herein by reference as if fully set forth herein, and the failure to specifically describe or include in this Order any particular provision of the Motion or the Assured Insurance Commitment shall not diminish or impair the effectiveness of any such provision. The settlements and compromises set forth in the Assured Insurance Commitment and in the Motion are fair and reasonable to, and in the best interests of, the City, its residents and its creditors, and in entering into the Settlement, the DWSD

CHI-1939088<del>1940093</del>v13

Settlement Parties have acted in a commercially reasonable manner and exercised their respective rights and powers, and used the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances.

24. <u>DWSD Contribution to GRS Pension Plan</u>. DWSD's contributions to the GRS pension plan set forth in the ~~Amended~~ Plan shall be accounted for as follows: (i) DWSD shall pay as operation and maintenance expenses, to be allocated between the Sewage Disposal System and the Water Supply System <u>(collectively, the "Systems") consistent with the allocation of labor costs between the two Systems</u>, no more than the <u>aggregate</u> sum of (a) $24 million per annum <u>(which is payable monthly)</u>; and (b) DWSD's allocable share of its annual "defined contribution" payments related to the DWSD employees; and (ii) DWSD shall pay <u>from the Revenues of each of the Sewage Disposal System and the Water Supply System, on the same ratable basis as set forth in (i) above,</u> the difference between the annual allocation of the Plan GRS pension contributions provided in the Plan and $24 million <u>in the aggregate</u> from ~~a~~ "pension liability payment ~~fund" that is funded after payments required to be made into the SRF Junior Lien Bond and Interest Redemption Fund established and~~<u>funds" established for each of the Sewage Disposal System and the Water Supply System (such funds, the "Pension Liability Payment Funds") that will be placed in priority of payment after all of the Interest and Redemption Funds (including the Reserve Accounts, if any, therein)</u>

31

and before the Extraordinary Repair and Replacement Reserve Fund (all as defined in the Existing Bond Documents and on a) for each of the Sewage Disposal System and the Water Supply System, such that the respective Pension Liability Payment Funds will be subordinated basis to the 2014 DWSD Revenue and Revenue Refunding Bonds and all other existing DWSD bond debt. Sufficient funds shall be allocated to each of the Pension Liability Payment Funds on a monthly basis until such time as each System's Pension Liability Payment Fund contains funds sufficient to pay the difference between each System's allocable share of the annual allocation of the GRS pension contributions provided in the Plan, and each System's allocable share of $24 million. If such amounts in a Pension Liability Payment Fund are insufficient to provide for that fiscal year's requirement for the respective System's contribution to the GRS pension plan by June 30 of that fiscal year, then any amounts or securities held in the respective System's Surplus Fund, Construction Fund, Improvement and Extension Fund, Extraordinary Repair and Replacement Reserve Fund (in excess of the Extraordinary Repair and Replacement Minimum Requirement) and any other now-existing or after arising accounts under the applicable System's Indenture to which payments are subordinate to the payments to the Interest and Redemption Funds (including the Reserve Accounts, if any, therein) as listed in Section 2.02(a) – (f) of the respective System's Indenture, shall be credited or transferred from such Funds or accounts in

CHI 19390881940093v13

the priority and order listed above (after satisfaction of the transfers required by Section 2.11 of each Indenture to the Operating and Maintenance Fund and the Interest and Redemption Funds) to the respective System's Pension Liability Payment Fund; provided, however, that solely for purposes of determining the crediting or transferring of funds to the respective "Pension Liability Payment Funds": (i)(a) the formulae presently used to determine the Extraordinary Repair and Replacement Minimum Requirement and (b) the definition of "Extraordinary Repair and Replacement Minimum Requirement" in the applicable Indentures existing as of the date of this Order will not be changed unless and until DWSD has paid in full the aggregate annual allocation of the GRS pension contributions provided in the Plan; (ii) the amount of the Extraordinary Repair and Replacement Minimum Requirement is not increased over the amount of such minimum, which as of the date of this Order is $4,693,660 for the Water Supply System and $6,725,917 for the Sewage Disposal System, until the GRS pension contributions provided in the Plan are paid in full; and (iii) provided such funds are not subject to restriction barring transfer under Section 2.11 of the respective Indenture existing as of the date hereof; and provided, further, that in no event shall any amounts held in a Construction Fund that are (x) the proceeds of any debt issued for such System pursuant to the applicable Bond Ordinance, as the same may be amended, modified or supplemented, or (y) otherwise lawfully restricted to use for capital

CHI-1939088 1940093v13

improvements to a System be credited to the Pension Liability Payment Fund. Moreover, no amounts may be credited or transferred from a Construction Fund unless such credit or transfer (i) is approved by the Michigan Department of Treasury, if such approval is then required by law, and (ii) based upon an opinion of bond counsel, such credit or transfer will not adversely affect the exclusion from gross income for federal income tax purposes of securities the proceeds of which were deposited in such account.  In the event there is any shortfall in the annual funding of a Pension Liability Payment Fund at the end of any fiscal year, that shortfall shall be paid in the next fiscal year according to the payment priorities set forth in this Paragraph 24.

25.     AmendedDWSD Plan.  On Objections.  Upon the occurrence of the Settlement Date (i)and the payment by the City shall file an amended Plan (the "Amended Plan") that renders unimpaired the Existing DWSD Bond Claims within the meaning of Section 1124 of the Bankruptcy Code, including, without limitation, those provisions that eliminate call protection or reduce the interest rates of the Existing DWSD Bonds, and (ii)of all professional fees and expenses as set forth in Paragraph 27 hereof (the "Settlement Date Fee Payments")[4], the DWSD Plan Objections willshall be deemed to be withdrawn with prejudice; provided,

---

[4] The Settlement Date Fee Payments shall not include any payments on account of the DWSD Trustee Fee Claim, the GLC Payment or any other fees or expenses of the DWSD Trustee or its professionals.

however, that the DWSD Plan Objection of FGIC shall only be deemed withdrawn with prejudice with respect to FGIC's objections related to DWSD, including any matters that are the subject of the Motion and the Settlement.  The accounting treatment of DWSD's contributions to the GRS pension plan in Paragraph 24 hereof shall not constitute "impairment" of the Existing DWSD Bonds or the Existing DWSD Bond Claims in respect thereof.

26.     No Amendment.  ~~Following~~From and after the ~~filing~~occurrence of the ~~Amended Plan~~Settlement Date, the City shall not ~~thereafter~~ amend, supplement or otherwise modify the Amended Plan, or participate in, support or acquiesce to any such amendment, supplement or modification (including any motion for an order seeking such amendment, supplement or modification) of the Amended Plan that would result in (i) the impairment of any Existing DWSD Bond Claim; (ii) the alteration of the accounting treatment of DWSD's contributions to the GRS pension plan as set forth in Paragraph 24 of this Order or (iii) be inconsistent with this Order.

27.     Reimbursement of Certain Professional Fees and Expenses.  On the Settlement Date, the DWSD is authorized to and shall reimburse the professional fees and expenses of certain of the DWSD Settlement Parties incurred in connection with the Case, as follows: (i) to Assured, $3,000,000; (ii) to the Ad Hoc

Committee, $1,200,000; and (iii) to FGIC, $550,000[5].  In addition, pursuant to the Assured Insurance Commitment, in the event that the City agrees, other than solely as a result of a court order or an arbitration award (i) to pay any of the DWSD Objecting Parties other than the DWSD Trustee an amount in excess of $3 million for DWSD-related bankruptcy fees, costs and expenses or (ii) with respect to the DWSD Trustee, to establish a floor for DWSD-related bankruptcy fees, costs and expenses in excess of $3 million, then DWSD shall be required to pay to Assured $3 million plus such amount that is the greatest amount paid to any DWSD Objecting Party in excess of $3 million.  The City and the DWSD Trustee shall resolve the DWSD Trustee~~'s fee claim~~ Fee Claim in accordance with the DWSD Trustee Claim Arbitration as set forth in the Motion~~.~~ and as modified by the following: GLC Advisors & Co. shall be entitled to recover $500,000 (the "GLC Payment") in compensation as part of any payment by the City of the DWSD Trustee Fee Claim in connection with DWSD Trustee Claim Arbitration.  The GLC Payment shall be made from funds already currently held by the DWSD Trustee in escrow on account of its fees and expenses, and such GLC Payment

---

[5] The amounts set forth in (i)-(iii) do not contain any "success fees" for any DWSD creditor financial advisor.  If any financial advisor for a non-settling bond insurer is paid a success fee, FGIC shall have the right to request the same treatment for its financial advisor.  Additionally, the Fee Claim authorized to FGIC hereunder resolves only fees and expenses incurred through the end of June 2014 in connection with the Existing DWSD Bonds and does not include any other amounts.

shall be included within the DWSD Trustee Fee Claim Range for purposes of determining the DWSD Trustee Fee Claim.

28.     <u>All Appropriate Actions</u>.  The City is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers, and to make all payments (including interest and fees, if any), and take any and all actions reasonably necessary or appropriate to consummate, complete, execute and implement the Settlement, and any actions taken heretofore in furtherance of these obligations are hereby ratified.

29.     <u>Order Controls (Settlement)</u>.  Unless otherwise agreed by the Parties, to the extent of any inconsistency between (i) this Order and the Assured Insurance Commitment, the terms of this Order shall govern and (ii) this Order and the Assured Insurance Commitment, on the one hand, and any ~~Plan~~<u>plan of adjustment</u> confirmed in this chapter 9 case (other than a Specified Plan), on the other hand, the terms of this Order and the Assured Insurance Commitment, as applicable, shall govern.

30.     <u>Survival</u>.  The provisions and effect of this Order, any actions taken pursuant to this Order or the Settlement and the DWSD Settlement Parties' respective rights, obligations, remedies and protections provided for herein shall survive the dismissal or closing of this chapter 9 case, or confirmation of a plan or plans of adjustment, and the terms and provision of this Order and the Assured

CHI-~~1939088~~1940093v~~13~~

Insurance Commitment shall continue in full force and effect notwithstanding the entry of any such order.

31.     _Binding Effect of Order_.  This Order shall be immediately effective upon its entry.  Immediately upon entry by this Court, the terms and provisions of this Order (including the Settlement) shall become valid and binding upon all parties in interest in this Case, including but not limited to, the City, the MFA, the Underwriter, the Direct Purchasers, the MFA Bondholders, the DWSD Settlement Parties, all other creditors of the City, the City's Emergency Manager, any committee appointed in the Case and all other parties in interest and their respective successors and assigns.

32.     _Continuing Jurisdiction_.     This Court shall retain continuing jurisdiction through the effective date of a plan of adjustment in this Case with respect to all matters related to or arising from this Order and the relief granted herein, the implementation of the Transaction Documents, including but not limited to compliance with the Additional Bonds Test and enforcement of the Rate Covenants required under the Ordinances, and implementation and enforcement of the terms agreed to under the Settlement.

33.     _Existing Bond Insurance Policies_.   Nothing in this Order impairs, modifies, affects or otherwise alters the rights of Bondholders or Bond Agents with respect to claims under applicable Bond Insurance Policies or against the Bond

CHI-1939088 1940093v13

Insurers (as those terms are defined under the Plan).

**EXHIBIT 1A**

40

**EXHIBIT 1B**

CHI-1939088 1940093v13

**EXHIBIT 2A**

CHI-1939088 1940093v13

**EXHIBIT 2B**

**EXHIBIT 3A**

CHI-1939088 1940093v 13

**EXHIBIT 3B**

CHI-1939088 1940093v13

**EXHIBIT 4**

CHI-19390881940093v13

**EXHIBIT 5**

CHI-19390881940093v13

**EXHIBIT 6A**

CHI-19390881940093v13

**EXHIBIT 6B**

CHI-~~1939088~~1940093v~~13~~

| **Summary report:** | |
|---|---|
| **Litéra® Change-Pro TDC 7.5.0.96 Document comparison done on 8/22/2014 4:20:44 PM** | |
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:**iw://CHI/CHI/1939088/1 | |
| **Modified DMS:** iw://CHI/CHI/1940093/3 | |
| **Changes:** | |
| Add | 106 |
| Delete | 65 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 171 |