# Exhibit 6D

# Excerpts of July 14, 2014 R. Cline Deposition Transcript

KE 32074430

## Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In Re: ) Chapter 9
CITY of DETROIT, MICHIGAN, ) Case No. 13-53846
Debtor. ) Hon. Steven Rhodes
_____

The Videotaped Deposition of ROBERT CLINE,
Taken at Jones Day
51 Louisiana Avenue, NW
Washington, DC
Commencing at 9:05 a.m.
Monday July 14, 2014,
Before Marjorie Peters, RMR, CRR

## Page 2

APPEARANCES:
For the Debtor City of Detroit and the witness:
GEOFFREY S. STEWART, ESQ.,
SARAH A. HUNGER, ESQ.,
CHRISTOPHER DiPOMPEO, ESQ.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

For the Official Committee of Retirees:
DAN BARNOWSKI, ESQ.
DENTONS US, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005-3364

For Syncora Guarantee, Inc., and Syncora Capital Assurance, Inc.

DOUGLAS G. SMITH, P.C.
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654

For Creditor Assured Guaranty:
LISA SCHAPIRA, ESQ.
CHADBOURNE & PARKE, LLP
30 Rockefeller Plaza
New York, New York 10112

## Page 3

For Creditor National Public Finance Guarantee Corp.

JEFFREY S. BEELAERT, ESQ.
SIDLEY AUSTIN, LLP
1501 K Street, N.W.
Washington D.C. 20005

For Creditor Financial Guaranty Insurance Company:
PRAVIN R. PATEL, ESQ.
WEIL GOTSHAL & MANGES, LLP
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131

Also Appearing:
Jonathan Perry, Videographer
Marguerette Hosbach, Ernst & Young, via telephone

## Page 4

I N D E X

| WITNESS | PAGE |
|---|---|
| Robert Cline | 6 |

| EXHIBITS | PAGE |
|---|---|
| Exhibit No. 1 | 112 |
| Exhibit No. 2 | 149 |
| Exhibit No. 3 | 164 |
| Exhibit No. 4 | 179 |
| Exhibit No. 5 | 278 |
| Exhibit No. 6 | 280 |
| Exhibit No. 7 | 281 |
| Exhibit No. 8 | 285 |
| Exhibit No. 9 | 292 |

Pages 1 to 4

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt Doc 6999-10 Filed 08/22/14 Entered 08/22/14 19:36:51 Page 2 of 5

1  R. CLINE
2  THE VIDEOGRAPHER: This is disk number one
3  of the video deposition of Robert Cline taken in
4  the matter of the City of Detroit, Michigan in the
5  U.S. Bankruptcy Court for the Eastern District of
6  Michigan. Chapter 9, Case No. 13-53846.
7  We are at the offices of Jones Day, 51
8  Louisiana Avenue Northwest, Washington, D.C. The
9  time is approximately 9:04 a.m. The date is July
10 14th, 2014. The court reporter is Marjorie Peters
11 and the videographer is Jonathan Perry, both here
12 on behalf of Elisa Dreier Reporting Company.
13 Would counsel please introduce yourselves
14 and state whom you represent.
15 MR. SMITH: Doug Smith for Syncora.
16 MR. STEWART: Geoffrey Stewart and Sarah
17 Hunger of Jones Day for the City of Detroit and for
18 the witness.
19 MS. SCHAPIRA: Lisa Schapira from
20 Chadbourne & Parke for Assured Guaranty.
21 MR. BEELAERT: Jeff Beelaert from Sidley
22 Austin for National.
23 MR. PATEL: Pravin R. Patel from Weil
24 Gotshal & Manges representing Financial Guaranty
25 Insurance Company.

1  R. CLINE
2  THE VIDEOGRAPHER: And would the reporter
3  swear in the witness, please.
4  ROBERT CLINE,
5  a witness, having been first duly sworn, was examined and
6  testified as follows:
7  BY MR. SMITH:
8  Q.  Good morning, Mr. Cline. You have been
9  deposed before; is that correct, or not?
10 A.  I have testified in a court case before.
11 Q.  Okay. Have you ever given a deposition?
12 A.  I don't remember. I have prepared reports. I
13 don't remember whether I actually participated in this
14 type of deposition.
15 Q.  Okay. I'll be asking you a series of
16 questions, and you will let me know if you don't
17 understand any of my questions?
18 A.  I will.
19 Q.  Okay. And feel free to take a break whenever
20 you need to, okay?
21 A.  All right.
22 Q.  The report you filed, your report in this
23 matter, you're acting as an expert in tax policy; is that
24 correct?
25 A.  My responsibility in this project was to do

1  R. CLINE
2  revenue estimates for the City of Detroit.
3  Q.  Okay. And what is your area of expertise?
4  A.  For my professional career, I've worked in
5  public finance, the economic aspects of public finance.
6  Q.  Okay. So, you would be an expert in public
7  finance and the economic aspects of public finance; is
8  that correct?
9  A.  My professional career has been doing state
10 tax work, whether it's revenue estimating, tax bill
11 analysis or forecasting.
12 Q.  Okay. You wouldn't hold yourself out as an
13 expert in urban policy, correct?
14 A.  I would not.
15 Q.  And you wouldn't hold yourself as an expert on
16 health benefits?
17 A.  I would not.
18 Q.  You're not an expert on government in general?
19 A.  I'm not.
20 Q.  You're not an expert on blight reduction?
21 A.  No, I'm not.
22 Q.  Not an expert on art valuation?
23 A.  No.
24 Q.  Not an expert on pensions?
25 A.  No.

1  R. CLINE
2  Q.  Not an expert on government grants?
3  A.  No.
4  Q.  Do you hold yourself out as an expert on
5  casinos or wagering revenue?
6  A.  I do not.
7  Q.  Do you hold yourself out as an expert on state
8  revenue sharing?
9  A.  I've studied state revenue sharing.
10 Q.  In what context?
11 A.  The State of Michigan, I was responsible for
12 various revenue estimates.
13 Q.  And other than that, do you have any
14 experience with state revenue sharing?
15 A.  I do not.
16 Q.  You're not an expert on Detroit's government,
17 correct?
18 A.  I am not.
19 Q.  Not an expert on information technology?
20 A.  No.
21 Q.  Not an expert on transportation systems.
22 A.  No.
23 Q.  Have you ever done forecasting for a city?
24 A.  I have not done forecasting for a city.
25 Q.  And you're not an expert in accounting, are

Pages 5 to 8

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 6999-10   Filed 08/22/14   Entered 08/22/14 19:36:51   Page 3 of 5

**Page 9**

1  R. CLINE
2  you?
3  A. I am not.
4  Q. You're not an expert on Chapter 9
5  bankruptcies?
6  A. No, I'm not.
7  Q. You're not a restructuring expert, correct?
8  A. No.
9  Q. You're not holding yourself out as a legal
10  expert, correct?
11  A. No, I'm not.
12  Q. And you're not a lawyer, correct?
13  A. I am not.
14  Q. Have you ever done a tax forecast for a
15  wagering tax before?
16  A. No, I have not.
17  Q. And have you ever done a tax forecast for a
18  corporate tax?
19  A. I have for the State of Michigan, and I did
20  for the State of Minnesota.
21  Q. Okay. But in the context of corporate tax
22  revenues to a city, you haven't done a forecast?
23  A. I have not.
24  Q. You haven't done a municipal income tax
25  forecast before, have you?

**Page 10**

1  R. CLINE
2  A. I have not.
3  Q. You haven't done a municipal property tax
4  forecast, have you?
5  A. I have not.
6  Q. Have you ever done a tax forecast over a
7  period of -- as long as ten years?
8  A. I have not.
9  Q. Okay. Typically, what was the length of time
10  of the forecasts you have done previously?
11  A. The forecasts were usually tied to the budget
12  cycle, determined by the legislature. You might go out
13  four to six years.
14  Q. Okay. So, the standard forecast length that
15  Michigan used was four to six years?
16  A. I would say it was four, in Michigan.
17  Q. Okay. So, the generally accepted standard
18  length of a forecast in Michigan was four years?
19  A. That was the forecast tied to the budget
20  cycle. You would do forecasts longer term for other
21  types of projects.
22  Q. Okay. So, and the longest term forecast you
23  ever performed in the ordinary course of your work as a
24  forecaster was six years; is that correct?
25  A. I might have done forecasts that went beyond

**Page 11**

1  R. CLINE
2  that. I don't recall.
3  Q. Okay. But sitting here today, you can't
4  identify any forecasts you ever did that was longer than
5  six years?
6  A. I do not remember one.
7  Q. And I mean, just to get -- make the record
8  clear, the standard forecast for purposes of tax
9  forecasting in Michigan state was four years; is that
10  correct?
11  A. I believe it is. The budget cycle would be
12  either two years or four years of forecasts.
13  Q. Okay. So, the standard forecast length in
14  Michigan and the accepted forecast length for tax
15  forecasting is either two or four years; correct?
16  A. Correct.
17  Q. And you previously worked as an expert in one
18  case; is that correct?
19  A. I did.
20  Q. And is that the only case you worked as an
21  expert?
22  A. As I can recall, that was the only case where
23  I testified as an expert.
24  Q. And when you testified as an expert, it wasn't
25  in forecasting, correct?

**Page 12**

1  R. CLINE
2  A. It was not.
3  Q. When did you begin your work for Detroit?
4  A. It would have been in the spring, I believe,
5  of 2013.
6  Q. Your work in this case, you have prepared some
7  expert opinions for the confirmation hearing, correct?
8  A. I have -- I don't understand the question.
9  Q. Okay. Well, you know you filed an expert
10  report.
11  A. Correct.
12  Q. You know that, right?
13  A. Correct.
14  Q. And you're acting as an expert who is going to
15  testify at the confirmation hearing?
16  A. I understand that, yes.
17  Q. Okay. And I'm just wondering, other than your
18  work as an expert in the testimony you're going to give
19  at the confirmation hearing, have you done any other work
20  for the City of Detroit?
21  A. If you could clarify that question. Are you
22  referring to all of the work I have done as an EY
23  employee for the City of Detroit?
24  Q. Well, yes. Basically, what I'm trying to
25  figure out is I have a copy of your expert report, and

Pages 9 to 12

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt  Doc 6999-10  Filed 08/22/14  Entered 08/22/14 19:36:51  Page 4 of 5

## Page 45

1  R. CLINE
2  conducted on Detroit income tax, wagering tax, utility
3  users' tax or corporate tax, correct?
4  **A.  I am aware of the forecasts the City of**
5  **Detroit did for those tax sources.**
6  Q.  Is that the forecast that you have done, or is
7  that a different forecast?
8  **A.  That would be the forecast prepared as the**
9  **normal budgetary cycle for the City of Detroit.**
10  Q.  All right.  Did you perform that, or did
11  somebody else perform that?
12  **A.  It was done -- my understanding is it was done**
13  **by the City.**
14  Q.  And the City -- what time period do they use
15  as their standard period for forecasting?
16  **A.  I believe they go out two years, might be**
17  **three, but I believe it's a two-year forecast.**
18  Q.  You're not aware of any forecast conducted for
19  the City of Detroit that's longer than three years,
20  correct?
21  **A.  I'm not aware of any studies of forecasting**
22  **tax revenues beyond that period of time.**
23       MR. STEWART:  You mean by the City of
24    Detroit not for the City of Detroit, right,
25    Mr. Smith?

## Page 46

1  R. CLINE
2       MR. SMITH:  No, I mean for.
3  BY MR. SMITH:
4  Q.  You're not aware of any forecasts for the City
5  of Detroit going out more than three years, whether
6  conducted by the City or any other party, correct?
7  **A.  I am not.**
8       MR. STEWART:  Excluding his?
9       MR. SMITH:  Yes.  We're excluding his.
10       MR. STEWART:  Yeah.  That's what I figured.
11    That's why I raised it.
12  BY MR. SMITH:
13  Q.  Your forecast is anomalous, correct, in terms
14  of the length of time that it goes out, correct?
15       MR. STEWART:  Objection.
16       THE WITNESS:  I don't know what you mean by
17    "anomalous."
18  BY MR. SMITH:
19  Q.  It means there's no forecast like the one
20  you've conducted here that's ever been conducted for the
21  City of Detroit, correct?
22  **A.  I did not say that.**
23  Q.  Well, I'm asking you now.  There's no forecast
24  like the one you've conducted for the City of Detroit --
25  **A.  I don't --**

## Page 47

1  R. CLINE
2  Q.  -- correct, that's ever been done?
3  **A.  I don't know if that's correct.**
4  Q.  Okay.  Sitting here --
5       MR. STEWART:  Do let him finish his
6    question before you answer, because you're making
7    his life harder, too.
8  BY MR. SMITH:
9  Q.  Sitting here today, you can't identify any
10  forecasts using the type of methodology that you used for
11  the City of Detroit, correct?
12  **A.  No, that's not correct.**
13  Q.  What forecast has been done for the City
14  that's used the methodology you used?
15  **A.  The methodology that we have used is a fairly**
16  **standard forecasting methodology that's been used**
17  **extensively in the City of Detroit and for the State of**
18  **Michigan and in other cities.**
19  Q.  Have you reviewed any depositions in this
20  case?
21  **A.  I have not, other than my own.**
22  Q.  The -- you say that the methodology used is a
23  standard methodology that's been used before, correct?
24  **A.  The methodology we used in constructing the**
25  **forecasting model is based upon my experience as a**

## Page 48

1  R. CLINE
2  **revenue forecaster, and I believe it is fairly standard**
3  **in terms of how State revenue forecasting is done.**
4  Q.  Can you point me to any treatise or other
5  publication that lays out the methodology you've used for
6  forecasting in this case?
7  **A.  There are a number of publications, books, and**
8  **articles that discuss revenue forecasting.  I can't give**
9  **you specific references today.**
10  Q.  But is there any book or other written
11  publication that specifically lays out the specific
12  methodology that you've used in this case?
13  **A.  The methodology that we used in this case is**
14  **the methodology that I thought followed as a tax revenue**
15  **estimator in both the State of Minnesota and the State of**
16  **Michigan.**
17  Q.  Okay.  And you were doing forecasting for the
18  State, not cities, correct?
19  **A.  Correct.**
20  Q.  And you never used -- while you were at the
21  State of Minnesota or the State of Michigan, you never
22  forecast tax revenue out to 10 years, correct?
23  **A.  I don't know if that's a correct statement.**
24  Q.  Sitting here today, you can't identify any
25  instance when you were at either the State of Minnesota

Pages 45 to 48

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt    Doc 6999-10    Filed 08/22/14    Entered 08/22/14 19:36:51    Page 5 of 5