## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN | Case No.: 13-53846 |
| Debtor. | Hon.  Steven W. Rhodes |

## CITY OF DETROIT'S MOTION IN LIMINE TO PRECLUDE ITS COUNSEL, EVAN MILLER, FROM BEING CALLED AS A TRIAL WITNESS

The City of Detroit, Michigan (the "City") submits this Motion In Limine to preclude its attorney, Evan Miller, from being called as a witness at trial by the International Union, UAW ("UAW").  *See* List of Fact Witnesses at 2 (Doc. 6462). In support of its Motion, the City states as follows:

### INTRODUCTION

1.      Evan Miller is an attorney who represents the City in connection with its chapter 9 bankruptcy.  Mr. Miller has advised the City in developing its pension and other post-employment benefits ("OPEB") restructuring proposals and in connection with its confidential mediation sessions regarding those proposals.  Mr. Miller's representation also has extended to advising the City with respect to pension and OPEB for employees, former employees, and retirees of the Library.

2.      UAW has listed Mr. Miller as a fact witness for trial, and seeks to

1

elicit Mr. Miller's testimony regarding two subjects: (1) "Efforts, or lack thereof, of the City to negotiate financial relief outside of bankruptcy," and (2) "communications, and possible understandings or agreements, with other parties concerning pension and OPEB for employees, former employees and retirees of the Library."  List of Fact Witnesses at 2.

3.      The Court should preclude UAW from calling Mr. Miller as a witness at trial for at least two independent reasons.  *First*, Mr. Miller's knowledge of the subjects on which UAW seeks his testimony not only arises out of his attorney-client relationship with the City, but also involves mediation information that this Court has ordered must remain "privileged and confidential" and "shall not be disclosed."   Mediation Order ¶ 4 (Doc. 322).   *Second*, UAW has not even *attempted* to show that the information it seeks from Mr. Miller is relevant, or that there exists a "compelling need" to call opposing counsel as a witness.  *See United States v. Ziesman*, 409 F.3d 941, 950–51 (8th Cir. 2005); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).  The Court should grant the Motion.

## ARGUMENT

## I.  THE COURT'S MEDIATION ORDER PROHIBITS UAW FROM ELICITING INFORMATION FROM THE CITY'S COUNSEL ON MATTERS PERTAINING TO MEDIATION.

4.      This Court's Mediation Order directs that "*[a]ll* proceedings,

discussions, negotiation, and writings incident to mediation shall be privileged and confidential, and shall not be disclosed, filed or placed in evidence." Mediation Order ¶ 4 (emphasis added).

5.    The Court has stressed that the Mediation Order's confidentiality requirements "can't . . . be waived" because they are the dictates of a "court order," not an evidentiary privilege. 6/26/14 Hr'g Tr. 47–48 (Ex. A); *see In re Dow Corning Corp.*, 250 B.R. 298, 310–16 (Bankr. E.D. Mich. 2000); *see also Maness v. Meyers*, 419 U.S. 449, 458–60 (1975) (emphasizing that "all orders and judgments of courts must be complied with," and that litigants may not "make private determinations of the law and refuse to obey an order").

6.    Here, UAW seeks to compel Mr. Miller to risk violating the Mediation Order through disclosure of confidential mediation information. For example, UAW seeks Mr. Miller's testimony regarding any "communications, and possible understandings or agreements with other parties concerning pension and OPEB for employees, former employees and retirees of the Library" that are not reduced to the Plan of Adjustment. List of Fact Witnesses at 2. But the negotiations regarding pension and OPEB for employees, former employees, and retirees of the Library have taken, and continue to take, place in a mediation covered by the Mediation Order. *See* Mediation Order. Thus, the communications, "understandings," or "agreements" about which UAW seeks Mr.

3

Miller's testimony are "privileged and confidential, and shall not be disclosed" or "placed in evidence." *Id.* ¶ 4. Indeed, requiring Mr. Miller to testify regarding Library matters currently in mediation raises the significant risk of prejudice to the City and potentially undermines those sensitive mediations. For this reason alone, the Court should grant the Motion.

## II. UAW HAS MADE NO EFFORT TO SHOW THAT IT HAS A COMPELLING NEED FOR THE CITY'S COUNSEL'S TESTIMONY.

7.     Even aside from the Mediation Order, the City's Motion should be granted because UAW has not even attempted to show a "compelling need" to call opposing counsel as a witness at trial. *Ziesman*, 409 F.3d at 950–51. As nearly every jurisdiction recognizes, calling opposing counsel as a witness is "disfavored," *id.* at 951, and may not be allowed "unless there is a compelling need for the lawyer's testimony." Restatement (Third) of Law Governing Lawyers § 108(4).[1] The Sixth Circuit, for example, requires "extraordinary circumstances"

---

[1] *See, e.g.*, *In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 160 (2d Cir. 2002) (quashing subpoena directed to attorney and finding that work product establishes a "zone of privacy for an attorney's preparation to represent a client in anticipation of litigation"); *United States v. Dupuy*, 760 F.2d 1492, 1497-98 (9th Cir. 1985) (cannot call opposing counsel as witness "unless there is a compelling need"); *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) (calling opposing counsel "acceptable only if required by a compelling and legitimate need"); *United States v. Crockett*, 506 F.2d 759, 760 (5th Cir. 1975) ("[A] party's attorney should not be called as a witness unless his testimony is both necessary and unobtainable from other sources."); *United States v. Newman*, 476 F.2d 733, 738 (3d Cir. 1973) (holding that district courts "may properly refuse to allow the defense to call [opposing counsel] if it does not believe

in order to permit the "unusual" practice of examining "opposing counsel as a witness." *Lolli v. Zaller*, 894 F.2d 1336, 1990 WL 7947, at *3 (6th Cir. 1990) (unpublished); *Appeal of U.S. Sec. & Exch. Comm'n*, 226 F.2d 501, 502–20 (6th Cir. 1955) (illustrating the inherent dangers of calling opposing counsel as trial witness); *Park W. Galleries, Inc. v. Global Fine Art Registry*, 2010 WL 891271, at *5 (E.D. Mich. Mar. 10, 2010) ("[W]hen an adversary declares his intent to call opposing counsel as a witness . . . the court should determine whether counsel's testimony is, in fact, genuinely needed." (internal quotation marks omitted)).

8.      To show a "compelling need," the party seeking opposing counsel's testimony has the burden to demonstrate (1) that the testimony sought is neither privileged nor confidential, *Boughton v. Cotter Corp.*, 65 F.3d 823, 831 n.12 (10th Cir. 1995), (2) "that the evidence is" relevant and "vital to [its] case," and (3) that the party is unable "to present the same or similar facts from another source," *Ziesman*, 409 F.3d at 950–51 (internal quotation marks omitted); *see also United States v. Britton*, 289 F.3d 976, 982-83 (7th Cir. 2002) ("[W]here evidence is

---

that he possesses information vital to the defense"); *Gajewski v. United States*, 321 F.2d 261, 268 (8th Cir. 1963) ("Courts are especially reluctant, and rightfully so, to allow lawyers . . . to be called as witnesses in trials in which they are advocates."); *Zubulake v. UBS Warburg LLC.*, 382 F. Supp. 2d 536, 548-49 (S.D.N.Y. 2005) ("[T]he risk that privileged communications could be probed during trial is arguably too great to permit plaintiff to call opposing counsel to testify."); *United States v. La Rouche Campaign*, 695 F. Supp. 1290, 1315-16 (D. Mass. 1988) (party may call opposing counsel "as a witness only if the testimony sought is required by a compelling and legitimate need").

easily available from other sources and absent 'extraordinary circumstances' or 'compelling reasons,' an attorney who participates in the case should not be called as a witness.").

9.     UAW has not even *attempted* to engage this burden, much less to show a "compelling need" for the testimony of the City's counsel, Mr. Miller. *First*, UAW has made no attempt to show that the information it seeks from Mr. Miller is not privileged—and it could not make that showing in any event. *Boughton*, 65 F.3d at 831 & n.12.   *Second*, UAW has not proven that the information it seeks is relevant, "vital," and unavailable from any other source. *Ziesman*, 409 F.3d at 950–51.

### A.  UAW Has Not Shown That The Information It Seeks From The City's Counsel Is Not Privileged.

10.     UAW's effort to call Mr. Miller as a witness at trial fails because UAW has not even attempted to prove that the information it seeks from opposing counsel is not privileged.  Nor could it—even apart from the Mediation Order, that information is protected by no fewer than three different privileges: the settlement and mediation privileges, and the attorney-client privilege.  For this independent reason, the Court should grant the Motion.  *See Boughton*, 65 F.3d at 831 & n.12.

### 1.  The Testimony UAW Seeks From The City's Counsel Is Protected By The Settlement And Mediation Privileges

11.     The Sixth Circuit has made clear that "*any* communications made in

furtherance of settlement" or mediation are comprehensively protected from discovery. *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 983 (6th Cir. 2003) (emphasis added); *see also Scheurer Hosp. v. Lancaster & Pollard Co.*, 12-CV-11536, 2012 WL 5471135, at *3 (E.D. Mich. Nov. 9, 2012) ("*Goodyear* extends the settlement privilege in our circuit to preclude discovery or admission of statements made during negotiations for any purpose."). This Court likewise has declared that "[a]ll proceedings and writings incident to [a] mediation shall be privileged and confidential, and shall not be reported or placed in evidence." Local Bankr. R. 7016-2(A)(5). This rule comports with the rules of the district court, which incorporate the provision that "[s]tatements by attorneys and the briefs or summaries [at a mediation] are not admissible in any court or evidentiary proceeding." Mich. Ct. R. 2.403(J)(4) (incorporated by E.D. Mich. Local R. 16.3(a)).

12. UAW has not even attempted to meet its burden to prove that the information it seeks to discover from Mr. Miller is not covered by the settlement and mediation privileges. *Boughton*, 65 F.3d at 831& n.12; *accord Nationwide Mut*, 278 F.3d at 628. Nor could it, because those privileges bar disclosure of Mr. Miller's knowledge regarding the subjects UAW seeks to explore. For example, any "efforts . . . to *negotiate* financial relief" with the City's creditors and other parties "outside of bankruptcy," List of Fact Witnesses at 2 (emphasis added),

qualify as "communications in furtherance of settlement"—all of which are comprehensively protected from disclosure by the Sixth Circuit's settlement privilege, *Goodyear*, 332 F.3d at 983.

13.     Similarly, any "communications, and possible understandings or agreements with other parties concerning pension and OPEB for employees, former employees and retirees of the Library" that are not reduced to the Plan of Adjustment, *see* List of Fact Witnesses at 2, arose during mediation and in an attempt to settle claims and, thus, are covered by *both* the mediation *and* the settlement privileges, *see, e.g.*, Local Bankr. R. 7016-2(A)(5); Mich. Ct. R. 2.403(J)(4); *Goodyear*, 332 F.3d at 983; *Scheurer Hosp.*, 2012 WL 5471135, at *3.

### 2.   The Testimony UAW Seeks From The City's Counsel Is Protected By The Attorney-Client Privilege

14.     The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law" and exists to "encourage full and frank communication between attorneys and their clients."  *Upjohn v. United States*, 449 U.S. 383, 389 (1981).  It therefore protects from disclosure "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Id.* at 390.  In other words, the attorney-client privilege protects "[c]onfidential communications between an attorney and his client, made because of the professional relationship and concerning the subject matter of the attorney's

8

employment." *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir. 1964); *see also Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992).

15. The information UAW seeks from the City's counsel relates to confidential legal advice and communications regarding the City's financial condition and structural deficits. It therefore is protected by the attorney-client privilege and may not be the subject of testimony at trial. *See Fausek*, 965 F.2d at 129.

16. For example, Mr. Miller's knowledge of the City's "communications and possible understandings or agreements with other parties concerning pension and OPEB," List of Fact Witnesses at 2, derives exclusively from communications between the City and him and information the City provided Mr. Miller in his role as counselor in order "to enable him to give sound and informed advice," *Upjohn*, 449 U.S. at 390. Similarly, Mr. Miller's evaluations of the City's efforts "to negotiate financial relief outside of bankruptcy" and the "pension and OPEB" claims held by Library employees, List of Fact Witnesses at 2, necessarily encompass the provision of legal advice and "[c]onfidential communications" between the City and its attorneys, *Goldfarb*, 328 F.2d at 281.

**B. UAW Has Not Shown That The Testimony It Seeks From The City's Counsel Is Relevant, Vital, And Otherwise Unavailable**

17. Even if UAW could somehow avoid the myriad privileges and confidentiality requirements that resolutely bar its effort to call the City's counsel

as a witness at trial, the Court should still grant the City's Motion because UAW has not shown that the information is relevant—let alone "vital"—to its case, or that it is unable "to present the same or similar facts from another source." *Ziesman*, 409 F.3d at 950–51; *accord Nationwide Mut.*, 278 F. 3d at 628.

18.     The gravamen of the UAW's objection is that Library employees are independent of the City and their pensions cannot be impaired.   *See* UAW Objection at 15 (Doc. 6464).   Given the nature of this objection, to the extent UAW's desire for information respecting the City's efforts "to negotiate financial relief outside of bankruptcy," means an inquiry into the City's efforts made prior to its chapter 9 filing, such inquiry is far afield from the merits of UAW's objection. List of Fact Witnesses at 2.   UAW's intent to call Mr. Miller to testify is perhaps little more than an intentional effort to impose undue burden upon the City's trial team rather than a bona fide request for relevant evidence.   Indeed, because the City already has filed for chapter 9 protection—and because this Court already ruled that the City was eligible to do so—the City's "[e]fforts . . . to negotiate financial relief outside of [and prior to] bankruptcy," List of Fact Witnesses at 2, cannot possibly be relevant or vital to UAW's claim *in* bankruptcy that Library personnel cannot have their pensions impaired, *Ziesman*, 409 F.3d at 950–51.

19.     Moreover, in seeking information from Mr. Miller regarding "who said what to whom" during negotiations, UAW attempts to elicit information that

this Court and the Sixth Circuit have made abundantly clear "is *irrelevant*." 6/26/14 Hr'g Tr. 49 (emphasis added); *see also Goodyear*, 332 F.3d at 983 ("[S]tatements made in furtherance of settlement are *never* relevant." (emphasis in original)). Because statements made during, or in preparation for, negotiation "may be motivated by a desire for peace rather than from any concession of weakness of position," *Goodyear*, 332 F.3d at 983 (internal quotation marks omitted), all that "matters is whether the settlement that was reached is a reasonable settlement," 6/26/13 Hr'g Tr. 49. Accordingly, the statements, communications, and information UAW seeks to elicit from Mr. Miller are not relevant to UAW's claims and, *a fortiori*, cannot be "vital to [its] case." *Ziesman*, 409 F.3d at 950–51.

20.    Finally, UAW has offered no explanation as to why it seeks testimony from the City's counsel, much less that it cannot "present the same or similar facts from another source." *Ziesman*, 409 F.3d at 950–51. As the Seventh Circuit put it, "[w]here evidence is easily available from other sources . . . an attorney who participates in the case should not be called as a witness." *United States v. Dack*, 747 F.2d 1172, 1176 n.5 (7th Cir. 1984).

21.    UAW, however, has not even attempted to argue that no other witness could provide information pertaining to the City's pre-petition negotiation efforts.

Put simply, UAW cannot show that opposing counsel's "testimony is, in fact, genuinely needed." *Park W. Galleries*, 2010 WL 891271, at *5.

WHEREFORE, for the foregoing reasons, the Court should grant the City's Motion In Limine and preclude its counsel, Evan Miller, from being called as a witness at trial by UAW.

### CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1) AND LOCAL RULE 9014-1(h)

In compliance with Federal Rule of Civil Procedure 26(c)(1) and Local Rule 9014-1(h), the City hereby certifies the City hereby certifies that its counsel conferred with counsel for UAW in a good faith effort to narrow and resolve the issues raised in this motion. Ultimately, counsel were unable to reach an agreement.

Dated:  August 22, 2014      Respectfully submitted,

         /s/  Bruce Bennett

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan  48075
Telephone:  (248) 359-7300
Facsimile:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

# SUMMARY OF EXHIBITS

The following exhibits are attached to this motion, labeled in accordance with Local Rule 9014-1(b):


Exhibit 1    Proposed Order

Exhibit 2    Notice

Exhibit 3    None (Brief Not Required)

Exhibit 4    Certificate of Service

Exhibit 5    None (No Affidavits Filed Specific to this Motion)

Exhibit 6    Documentary Exhibits

# EXHIBIT 1

**Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) |
| | ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN | ) |
| | ) Case No.: 13-53846 |
| Debtor. | ) |
| | ) Hon. Steven W. Rhodes |
| | ) |
| | ) |

## ORDER GRANTING THE CITY'S MOTION IN LIMINE TO PRECLUDE ITS COUNSEL, EVAN MILLER, FROM BEING CALLED AS A TRIAL WITNESS

This matter comes before the Court on the City Of Detroit's Motion In Limine To Preclude Its Counsel, Evan Miller, From Being Called As A Trial Witness. Having reviewed the Motion and the Opposition, having considered the statements of counsel at a hearing before the Court, and having determined that there is no legal or factual basis for subpoena to the City's counsel:

IT IS HEREBY ORDERED THAT the Motion is GRANTED.

Dated: August _____, 2014          /s/_____
                                   THE COURT

# EXHIBIT 2

## Notice

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) ) ) Chapter 9 |
| CITY OF DETROIT, MICHIGAN | ) ) Case No.: 13-53846 |
| Debtor. | ) ) Hon. Steven W. Rhodes |
| | ) ) ) |

## NOTICE OF MOTION AND OPPORTUNITY TO RESPOND

**PLEASE TAKE NOTICE** that on August 22, 2014, the Debtor, City of Detroit, filed its Motion In Limine To Preclude Its Counsel, Evan Miller, From Being Called As A Trial Witness (the "Motion") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") seeking entry of an order excluding the testimony of Victor Wiener at trial.

**PLEASE TAKE FURTHER NOTICE** that **your rights may be affected by the relief sought in the Motion. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Bankruptcy Court to grant the Debtor's Motion, or you want the Bankruptcy Court to consider your views on the Motion, by **August 27,2014**[1] you or your attorney must:

1.     File a written objection or response to the Motion explaining your position with the Bankruptcy Court electronically through the Bankruptcy Court's electronic case filing system in accordance with the Local Rules of the Bankruptcy Court or by mailing any objection or response to:[2]

---

[1] This deadline was established by an order of the Court.

[2] A response must comply with Fed. R. Civ. P. 8(b), (c) and (e).

## United States Bankruptcy Court
Theodore Levin Courthouse
231 West Lafayette Street
Detroit, MI 48226

You must also serve a copy of any objection or response upon:

**Jones Day**
51 Louisiana Ave. NW Washington, D.C. 20001-2113
Attention:  Gregory Shumaker

-and-

**Pepper Hamilton LLP**
Suite 1800, 4000 Town Center Southfield, Michigan 48075
Attn:  Robert Hertzberg and Deborah Kovsky-Apap

2.      If an objection or response is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**PLEASE TAKE FURTHER NOTICE that if you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting such relief.**

Dated:  August 22, 2014          Respectfully submitted,

/s/  Bruce Bennett
Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California  90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan  48075
Telephone:  (248) 359-7300
Facsimile:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY OF DETROIT

# **EXHIBIT 3**

**Brief (Not Applicable)**

# **EXHIBIT 4**

**Certificate of Service**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

In re

CITY OF DETROIT, MICHIGAN

         Debtor.

)
)
) Chapter 9
)
) Case No.: 13-53846
)
) Hon. Steven W. Rhodes
)
)
)

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2014, I electronically filed the City Of Detroit's Motion In Limine To Preclude Its Counsel, Evan Miller, From Being Called As A Trial Witness with the Clerk of the Court, which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this case.

Dated: August 22, 2014

/s/ Bruce Bennett
Bruce Bennett

# **EXHIBIT 5**

**Affidavits (Not Applicable)**

# EXHIBIT 6

**Documentary Exhibits**

**Exhibit A**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .      Docket No. 13-53846
        MICHIGAN,              .
                               .      Detroit, Michigan
                               .      June 26, 2014
                Debtor.        .      9:00 a.m.
. . . . . . . . . . . . . . . .

        HEARING RE. (#5259) STATUS CONFERENCE ON PLAN
         CONFIRMATION PROCESS (RE. FIFTH AMENDED ORDER
      ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES
      RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT.  STATUS
      HEARINGS REGARDING PLAN CONFIRMATION PROCESS; (#5285)
         CORRECTED MOTION TO QUASH SYNCORA'S SUBPOENA TO
          DEPOSE ATTORNEY GENERAL BILL SCHUETTE FILED BY
      INTERESTED PARTY BILL SCHUETTE; (#5250) MOTION OF THE
      CITY OF DETROIT FOR SITE VISIT BY COURT IN CONNECTION
      WITH THE HEARING ON CONFIRMATION OF THE CITY'S PLAN OF
        ADJUSTMENT FILED BY DEBTOR IN POSSESSION CITY OF
         DETROIT, MICHIGAN; (#5300) JOINT MOTION TO QUASH
        SUBPOENAS DUCES TECUM FILED BY INTERESTED PARTIES
         A. PAUL AND CAROL C. SCHAAP FOUNDATION, CHARLES
         STEWART MOTT FOUNDATION, COMMUNITY FOUNDATION FOR
      SOUTHEAST MICHIGAN, HUDSON-WEBBER FOUNDATION, MAX M
       AND MARJORIE S. FISHER FOUNDATION, MCGREGOR FUND,
      THE FORD FOUNDATION, THE FRED A. AND BARBARA M. ERB
      FAMILY FOUNDATION, W.K. KELLOGG FOUNDATION, WILLIAM
        DAVIDSON FOUNDATION; (#5478) MOTION OF THE GENERAL
          RETIREMENT SYSTEM OF THE CITY OF DETROIT TO
         DESIGNATE AND DETERMINE ADDITIONAL LEGAL ISSUE
          REGARDING METHODOLOGY FOR ASF RECOUPMENT FROM
          RETIREES FILED BY CREDITOR GENERAL RETIREMENT
       SYSTEM OF THE CITY OF DETROIT; (#5442) MOTION FOR
        PROTECTIVE ORDER CITY OF DETROIT'S MOTION FOR
        ENTRY OF A PROTECTIVE ORDER STRIKING SYNCORA'S
         DEMAND IN ITS RULE 30(b)(6) DEPOSITION NOTICE
      FOR THE PERSONAL FINANCIAL INFORMATION OF ALL CITY
        RETIREES FILED BY DEBTOR IN POSSESSION CITY OF
      DETROIT, MICHIGAN; (#5436) MOTION TO COMPEL FULL AND
      FAIR RESPONSES TO SYNCORA'S INTERROGATORIES FILED BY
      INTERESTED PARTIES SYNCORA CAPITAL ASSURANCE, INC.,
                   SYNCORA GUARANTEE, INC.
          BEFORE THE HONORABLE STEVEN W. RHODES
           UNITED STATES BANKRUPTCY COURT JUDGE

 1  other -- well, either way, are they invading their endowments
 2  to make the grand bargain contribution, or, again, are they
 3  rediverting money?  So does the Kresge Foundation have a
 4  document that says, "This is great.  We were going to do 250
 5  on Detroit Future Cities because we had another 110 that we
 6  were going to put to that after the $140 million
 7  implementation fund is exhausted, but we'll just take that
 8  110 and put it over towards the grand bargain"?  That would
 9  be important to know, I think, not just for me in my case,
10  but I would think that you would want to understand, like I
11  said, the gravitational impact of the grand bargain on
12  spending in the Detroit area by these philanthropic entities.
13  It's not a fishing expedition.
14          THE COURT:  All right.  Let me move on to other
15  counsel, please.
16          MR. HACKNEY:  Thank you very much, your Honor.
17          MR. MARRIOTT:  Good morning, your Honor.  Vince
18  Marriott, EEPK and affiliates.  It sounds as though this may
19  ultimately go in a direction where no resolution of the scope
20  of mediation privilege needs to be reached, but at some point
21  we're going to have to address this mediation privilege
22  because this plan is becoming and may ultimately be
23  exclusively a compilation of settlements reached in
24  mediation.
25          THE COURT:  Let's talk about whether the phrase

 1   "mediation privilege" is the appropriate language to use

 2   because what we have is a court order, and what we're talking

 3   about is enforcing or not enforcing a court order.

 4        MR. MARRIOTT:  I think that that's a better way of

 5   thinking about it because orders can be changed.

 6        THE COURT:  Orders can be changed.  They can't,

 7   however, be waived, which privileges can.

 8        MR. MARRIOTT:  And I'm not rising to talk about

 9   waiver.  What I'm rising to talk about is process and how the

10   mediation confidentiality, whether order-based or privilege-

11   based, is a threat to the confirmation process given the way

12   that the plan is coming together as a compilation of mediated

13   settlements.  I mean when you think about Rule 408 --

14        THE COURT:  Is today the day to talk about changing

15   an order?

16        MR. MARRIOTT:  Well, I just -- to the extent that

17   you're going to be thinking about mediation privileges in

18   connection with this motion, it seems appropriate --

19        THE COURT:  Mediation orders.

20        MR. MARRIOTT:  -- mediation orders in connection

21   with this motion, it seems an appropriate time to at least

22   talk about sort of high-level issues raised by this.  Let's

23   just start with Rule 408, not an order, not a privilege, a

24   rule.  I mean the confidentiality is designed to protect

25   parties who are in the process from using the process against

1　each other if it breaks down.  That works very well in a two-

2　party dispute, and it would work well in the event that

3　mediation failed.  The parties that were participating in it

4　as to their issue could not use what was disclosed in the

5　mediation against each other when litigating that issue.

6　This isn't a two-party process, and we're talking about not

7　mediations that failed.  We're talking about mediations that

8　succeeded and succeeded in reaching a settlement, which, as

9　part of this plan process, you are going to have to find were

10　reasonable and in the best interest of creditors.

11　　　　　THE COURT:  Yeah.  We've had this conversation many

12　times before, and my conclusion has always been that who said

13　what to whom during the mediation that led to the successful

14　settlement is irrelevant.  What matters is whether the

15　settlement that was reached is a reasonable settlement given

16　the factors we're all aware of mostly including the relative

17　merits of the parties' legal and factual positions in the

18　case.

19　　　　　MR. MARRIOTT:  I think it's -- I don't know that a

20　blanket statement as to who said what to whom, who offered

21　what and when and why is irrelevant.  If you remember in the

22　swap situation when we were litigating the swap settlement,

23　in fact, Mr. Orr, because it was relevant, testified

24　relatively specifically about who offered what to whom when

25　and why, and, for example, as Mr. Hackney indicated -- and it