# Exhibit 6O

# Excerpts of KPMG, Independent Auditors' Report (2012)



# CITY OF DETROIT, MICHIGAN

OMB Circular A-133 Single Audit Report

Year ended June 30, 2012



KPMG LLP
Suite 1900
150 West Jefferson
Detroit, MI 48226

**Independent Auditors' Report on Compliance with
Requirements That Could Have a Direct and Material Effect
On Each Major Program and on Internal Control over Compliance
in Accordance with OMB Circular A-133**

The Honorable Mayor Dave Bing
  and
The Honorable Members of the City Council
City of Detroit, Michigan:

**Compliance**

We have audited the City of Detroit, Michigan's (the City) compliance with the types of compliance requirements described in the U.S. Office of Management and Budget (OMB) *Circular A-133 Compliance Supplement* that could have a direct or material effect on each of the City's major federal programs for the year ended June 30, 2012. The City's major federal programs are identified in the summary of auditors' results section of the accompanying schedule of findings and questioned costs. Compliance with the requirements of laws, regulations, contracts, and grants applicable to each of its major federal programs is the responsibility of the City's management. Our responsibility is to express an opinion on the City's compliance based on our audit.

The City's basic financial statements include the operations of the Detroit Brownfield Redevelopment Authority, Detroit Public Library, Detroit Transportation Corporation, Downtown Development Authority, Eastern Market Corporation, Economic Development Corporation, Greater Detroit Resource Recovery Authority, Local Development Finance Authority, Museum of African American History, and Detroit Land Bank Authority as discretely presented component units, which received federal awards that are not included in the schedule of expenditures of federal awards for the year ended June 30, 2012. Our audit, described below, did not include the operations of the Detroit Brownfield Redevelopment Authority, Detroit Public Library, Detroit Transportation Corporation, Downtown Development Authority, Eastern Market Corporation, Economic Development Corporation, Greater Detroit Resource Recovery Authority, Local Development Finance Authority, Museum of African American History, and Detroit Land Bank Authority, because these component units engaged other auditors to perform audits in accordance with OMB Circular A-133.

Except as discussed in the following four paragraphs, we conducted our audit of compliance in accordance with auditing standards generally accepted in the United States of America; the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States; and OMB Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations*. Those standards and OMB Circular A-133 require that we plan and perform the audit to obtain reasonable assurance about whether noncompliance with the types of compliance requirements referred to above that could have a direct and material effect on a major federal program occurred. An audit includes examining, on a test basis, evidence about the City's compliance with those requirements and performing such other procedures as we considered necessary in the circumstances. We believe that our audit provides a reasonable basis for our opinion. Our audit does not provide a legal determination of the City's compliance with those requirements.

KPMG LLP is a Delaware limited liability partnership,
the U.S. member firm of KPMG International Cooperative
("KPMG International"), a Swiss entity.



We were unable to obtain sufficient documentation supporting the compliance of the City with the Neighborhood Stabilization Program 2 (CFDA #14.256) regarding the Reporting, and Special Tests & Provisions: Environmental Reviews compliance requirements as discussed in Findings 2012-30, and 2012-31, in the accompanying schedule of findings and questioned costs, nor were we able to satisfy ourselves as to the City's compliance with those requirements by other auditing procedures. In our opinion, except for the effects of such noncompliance, if any, as might have been determined had we been able to examine sufficient evidence regarding the City's compliance with the requirements of the Neighborhood Stabilization Program 2 regarding Reporting and Special Tests & Provisions: Environmental Reviews, and because of the effects of the noncompliance described in Table I, the City did not comply, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on the Neighborhood Stabilization Program 2 for the year ended June 30, 2012.

In addition, we were unable to obtain sufficient documentation supporting the compliance of the City with the Weatherization for Low-Income Persons program (CFDA #81.042) regarding the Activities Allowed or Unallowed and Allowable Costs/Cost Principles, Cash Management, and Eligibility compliance requirements as discussed in Findings 2012-57, 2012-58, and 2012-60, respectively, in the accompanying schedule of findings and questioned costs, nor were we able to satisfy ourselves as to the City's compliance with those requirements by other auditing procedures. In our opinion, except for the effects of such noncompliance, if any, as might have been determined had we been able to examine sufficient evidence regarding the City's compliance with the requirements of the Weatherization for Low-Income Persons program regarding Activities Allowed or Unallowed and Allowable Costs/Cost Principles, Cash Management, and Eligibility, and because of the effects of the noncompliance described in Table I, the City did not comply, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on the Weatherization for Low-Income Persons program for the year ended June 30, 2012. As identified in Table IV, the results of our auditing procedures also disclosed another instance of noncompliance with those requirements, which is required to be reported in accordance with OMB Circular A-133, and which is described in the accompanying schedule of findings and questioned costs as finding 2012-63.

In addition, we were unable to obtain sufficient documentation supporting the compliance of the City with the Community Services Block Grant program (CFDA #93.569, 93.710) regarding the Activities Allowed or Unallowed and Allowable Costs/Cost Principles, Cash Management, Eligibility, and Subrecipient Monitoring compliance requirements as discussed in Findings 2012-75 and 2012-76, 2012-77, 2012-78, and 2012-82, respectively, in the accompanying schedule of findings and questioned costs, nor were we able to satisfy ourselves as to the City's compliance with those requirements by other auditing procedures. In our opinion, except for the effects of such noncompliance, if any, as might have been determined had we been able to examine sufficient evidence regarding the City's compliance with the requirements of the Community Services Block Grant program regarding Activities Allowed or Unallowed and Allowable Costs/Cost Principles, Cash Management, Eligibility, and Subrecipient Monitoring, and because of the effects of the noncompliance described in Table I, the City did not comply, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on the Community Services Block Grant program for the year ended June 30, 2012. As identified in Table IV, the results of our auditing procedures also disclosed another instance of noncompliance with those requirements, which is required to be reported in accordance with OMB Circular A-133, and which is described in the accompanying schedule of findings and questioned costs as finding 2012-79.

In addition, we were unable to obtain sufficient documentation supporting the compliance of the City with the Head Start program (CFDA #93.600, 93.708) regarding the Earmarking, and Subrecipient Monitoring compliance requirements as discussed in Finding 2012-88, and 2012-91 in the accompanying schedule of findings and questioned costs, nor were we able to satisfy ourselves as to the City's compliance with those requirements by other auditing procedures. In our opinion, except for the effects of such noncompliance, if



any, as might have been determined had we been able to examine sufficient evidence regarding the City's compliance with the requirements of the Head Start program regarding Earmarking and Subrecipient Monitoring, and because of the effects of the noncompliance described in Table I, the City did not comply, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on the Head Start program for the year ended June 30, 2012.

**TABLE I – MATERIAL NONCOMPLIANCE NOTED IN PROGRAMS WITH SCOPE LIMITATIONS**

| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| Housing and Urban Development | 14.256 | Neighborhood Stabilization Program 2 | Cash Management | 2012-26 |
| Housing and Urban Development | 14.256 | Neighborhood Stabilization Program 2 | Earmarking | 2012-27 |
| Housing and Urban Development | 14.256 | Neighborhood Stabilization Program 2 | Period of Availability | 2012-28 |
| Housing and Urban Development | 14.256 | Neighborhood Stabilization Program 2 | Procurement, Suspension and Debarment | 2012-29 |
| Energy | 81.042 | Weatherization for Low-Income Persons | Davis-Bacon Act | 2012-59 |
| Energy | 81.042 | Weatherization for Low-Income Persons | Procurement, Suspension and Debarment | 2012-61 |
| Energy | 81.042 | Weatherization for Low-Income Persons | Reporting and Period of Availability | 2012-62 |
| Health and Human Services | 93.569, 93.710 | Community Services Block Grant | Reporting | 2012-80 |
| Health and Human Services | 93.569, 93.710 | Community Services Block Grant | Reporting | 2012-81 |
| Health and Human Services | 93.569, 93.710 | Community Services Block Grant | Special Tests & Provisions: Criminal Background Checks | 2012-83 |
| Health and Human | 93.600, 93.708 | Head Start | Activities Allowed or Unallowed and | 2012-84 |



| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| Services | | | Allowable Costs/Cost Principles | |
| Health and Human Services | 93.600, 93.708 | Head Start | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-85 |
| Health and Human Services | 93.600, 93.708 | Head Start | Cash Management | 2012-86 |
| Health and Human Services | 93.600, 93.708 | Head Start | Earmarking | 2012-87 |
| Health and Human Services | 93.600, 93.708 | Head Start | Procurement, Suspension and Debarment | 2012-89 |
| Health and Human Services | 93.600 | Head Start | Reporting | 2012-90 |

As identified in Table II and described in the accompanying schedule of findings and questioned costs, the City did not comply with certain compliance requirements that are applicable to certain of its major federal programs. Compliance with such requirements is necessary, in our opinion, for the City to comply with the requirements applicable to the identified major federal programs.

### TABLE II – MATERIAL NONCOMPLIANCE NOTED IN PROGRAMS RESULTING IN ADVERSE OPINION

| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| Agriculture | 10.557 | Special Supplemental Nutrition Program for Women, Infants, and Children | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-08 |
| Agriculture | 10.557 | Special Supplemental Nutrition Program for Women, Infants, and Children | Procurement, Suspension and Debarment | 2012-09 |
| Agriculture | 10.557 | Special Supplemental | Subrecipient | 2012-10 |

6



| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| | | Nutrition Program for Women, Infants, and Children | Monitoring | |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-11 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-12 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Cash Management | 2012-13 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Earmarking | 2012-14 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Procurement, Suspension and Debarment | 2012-15 |
| Housing and Urban Development | 14.218 | Community Development Block Grants/Entitlement Grants | Reporting | 2012-17 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Reporting | 2012-18 |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Subrecipient Monitoring | 2012-19 |
| Health and Human Services | 93.914 | HIV Emergency Relief Project Grants | Procurement, Suspension and Debarment | 2012-93 |



| Health and Human Services | 93.914 | HIV Emergency Relief Project Grants | Reporting | 2012-94 |
|---|---|---|---|---|
| Health and Human Services | 93.914 | HIV Emergency Relief Project Grants | Subrecipient Monitoring | 2012-95 |

In our opinion, because of the effects of the noncompliance described in Table II, the City did not comply in all material respects, with the requirements referred to above that could have a direct and material effect on the following major programs for the year ended June 30, 2012: Special Supplemental Nutrition Program for Women, Infants, and Children; Community Development Block Grants/Entitlement Grants; and HIV Emergency Relief Project Grants.

As identified in Table III and described in the accompanying schedule of findings and questioned costs, the City did not comply with certain compliance requirements that are applicable to certain of its major federal programs. Compliance with such requirements is necessary, in our opinion, for the City to comply with the requirements applicable to the identified major federal programs.

**TABLE III – MATERIAL NONCOMPLIANCE NOTED IN PROGRAMS RESULTING IN QUALIFIED OPINION**

| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-20 |
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-21 |
| Housing and Urban Development | 14.262 | Homelessness Prevention and Rapid-Rehousing Program | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-32 |
| Housing and Urban Development | 14.262 | Homelessness Prevention and Rapid-Rehousing Program | Cash Management | 2012-33 |
| Housing and Urban Development | 14.262 | Homelessness Prevention and Rapid-Rehousing | Cash Management | 2012-34 |



| | | Program | | |
|---|---|---|---|---|
| Housing and Urban Development | 14.262 | Homelessness Prevention and Rapid-Rehousing Program | Cash Management | 2012-35 |
| Housing and Urban Development | 14.262 | Homelessness Prevention and Rapid-Rehousing Program | Reporting | 2012-36 |
| Justice | 16.710 | Community Policing Grant | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-37 |
| Justice | 16.710 | Community Policing Grant | Equipment and Real Property Management | 2012-38 |
| Justice | 16.710 | Community Policing Grant | Procurement, Suspension and Debarment | 2012-39 |
| Justice | 16.738, 16.803 | Edward Byrne Memorial Justice Assistance Grant | Equipment and Real Property Management | 2012-40 |
| Justice | 16.738, 16.803 | Edward Byrne Memorial Justice Assistance Grant | Procurement, Suspension and Debarment | 2012-41 |
| Justice | 16.738, 16.803 | Edward Byrne Memorial Justice Assistance Grant | Subrecipient Monitoring | 2012-42 |
| Labor | 17.245 | Trade Adjustment Assistance | Cash Management | 2012-44 |
| Labor | 17.245 | Trade Adjustment Assistance | Special Tests & Provisions: Cycle Monitoring | 2012-46 |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-47 |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Cash Management | 2012-50 |
| Labor | 17.258, 17.259, | Workforce | Procurement, Suspension and | 2012-51 |



| | 17.260, 17.278 | Investment Act | Debarment | |
| --- | --- | --- | --- | --- |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Special Tests & Provisions: Cycle Monitoring | 2012-53 |
| Transportation | 20.500, 20.507 | Federal Transit Cluster | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-54 |
| Transportation | 20.500, 20.507 | Federal Transit Cluster | Davis-Bacon Act | 2012-55 |
| Transportation | 20.500, 20.507 | Federal Transit Cluster | Procurement, Suspension and Debarment | 2012-56 |
| Energy | 81.128 | Energy Efficiency and Conservation Block Grant | Reporting | 2012-64 |
| Energy | 81.128 | Energy Efficiency and Conservation Block Grant | Reporting | 2012-65 |
| Energy | 81.128 | Energy Efficiency and Conservation Block Grant | Reporting | 2012-66 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-67 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-69 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Cash Management | 2012-70 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Procurement, Suspension and Debarment | 2012-71 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Subrecipient Monitoring | 2012-73 |



| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Special Tests & Provisions: Cycle Monitoring | 2012-74 |
| --- | --- | --- | --- | --- |
| Health and Human Services | 93.959 | Prevention and Treatment of Substance Abuse | Reporting | 2012-97 |

In our opinion, except for the noncompliance described in Table III, the City complied, in all material respects, with the compliance requirements referred to above that could have a direct and material effect on the following major programs for the year ended June 20, 2012: Home Investment Partnerships Program; Homelessness Prevention and Rapid Re-housing Program; Community Policing Grant; Edward Byrne Memorial Justice Assistance Grant; Trade Adjustment Assistance program; Workforce Investment Act program; Federal Transit Cluster; Energy Efficiency and Conversation Block Grant; Temporary Assistance for Needy Families program; and Prevention and Treatment of Substance Abuse program.

As identified in Table IV, the results of our auditing procedures also disclosed other instances of noncompliance with those requirements, which are required to be reported in accordance with OMB Circular A-133, and which are described in the accompanying schedule of findings and questioned costs.

### TABLE IV – OTHER REPORTABLE INSTANCES OF NONCOMPLIANCE

| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
| --- | --- | --- | --- | --- |
| Housing and Urban Development | 14.218, 14.253 | Community Development Block Grants/Entitlement Grants | Reporting | 2012-16 |
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Cash Management | 2012-22 |
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Cash Management and Special Tests & Provisions: Drawdown of Funds | 2012-23 |
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Reporting | 2012-24 |
| Housing and Urban Development | 14.239 | HOME Investment Partnerships Program | Reporting | 2012-25 |
| Labor | 17.245 | Trade Adjustment Assistance | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-43 |

11



| Federal Awarding Agency | CFDA Number(s) | Federal Program | Compliance Requirement | Finding Number |
|---|---|---|---|---|
| Labor | 17.245 | Trade Adjustment Assistance | Eligibility | 2012-45 |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Activities Allowed or Unallowed, Allowable Costs/Cost Principles, and Period of Availability | 2012-48 |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-49 |
| Labor | 17.258, 17.259, 17.260, 17.278 | Workforce Investment Act | Reporting | 2012-52 |
| Energy | 81.042 | Weatherization for Low-Income Persons | Reporting | 2012-63 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Activities Allowed or Unallowed and Allowable Costs/Cost Principles | 2012-68 |
| Health and Human Services | 93.558 | Temporary Assistance for Needy Families | Reporting | 2012-72 |
| Health and Human Services | 93.569, 93.710 | Community Services Block Grant | Procurement, Suspension and Debarment | 2012-79 |
| Health and Human Services | 93.959 | Prevention and Treatment of Substance Abuse | Procurement, Suspension and Debarment | 2012-96 |
| Health and Human Services | 93.959 | Prevention and Treatment of Substance Abuse | Subrecipient Monitoring | 2012-98 |

**Internal Control over Compliance**

Management of the City is responsible for establishing and maintaining effective internal control over compliance with the requirements of laws, regulations, contracts, and grants applicable to federal

12



programs. In planning and performing our audit, we considered the City's internal control over compliance with the requirements that could have a direct and material effect on a major federal program to determine the auditing procedures for the purpose of expressing our opinion on compliance and to test and report on internal control over compliance in accordance with OMB Circular A-133, but not for the purpose of expressing an opinion on the effectiveness of internal control over compliance. Accordingly, we do not express an opinion on the effectiveness of the City's internal control over compliance.

Our consideration of internal control over compliance was for the limited purpose described in the preceding paragraph and was not designed to identify all deficiencies in internal control over compliance that might be significant deficiencies or material weaknesses and therefore, there can be no assurance that all deficiencies, significant deficiencies, or material weaknesses have been identified. However, as discussed below, we identified certain deficiencies in internal control over compliance that we consider to be material weaknesses and other deficiencies that we consider to be significant deficiencies.

A deficiency in internal control over compliance exists when the design or operation of a control over compliance does not allow management or employees, in the normal course of performing their assigned functions, to prevent, or detect and correct noncompliance with a type of compliance requirement of a federal program on a timely basis. A material weakness in internal control over compliance is a deficiency, or combination of deficiencies, in internal control over compliance, such that there is reasonable possibility that material noncompliance with a type of compliance requirement of a federal program will not be prevented, or detected and corrected on a timely basis. We consider the deficiencies in internal control over compliance described in the accompanying schedule of findings and questioned costs as items 2012-07, 2012-92, the items in Table I, the items in Table II, and the items in Table III to be material weaknesses.

A significant deficiency in internal control over compliance is a deficiency, or a combination of deficiencies, in internal control over compliance with a type of compliance requirement of a federal program that is less severe than a material weakness in internal control over compliance yet important enough to merit attention by those charged with governance. We consider the deficiencies in internal control over compliance as described in the accompanying schedule of findings and questioned costs and listed as the items in Table IV to be significant deficiencies.

**Schedule of Expenditures of Federal Awards**

We have audited the financial statements of the governmental activities, the business-type activities, the aggregate discretely presented component units, each major fund, and the aggregate remaining fund information of the City as of and for the year ended June 30, 2012, and have issued our report thereon dated December 28, 2012, which included a reference to the reports of other auditors. Our report on the basic financial statements was modified to recognize that we did not audit the financial statements of the Detroit Brownfield Redevelopment Authority, Detroit Public Library, Detroit Transportation Corporation, Downtown Development Authority, Eastern Market Corporation, Economic Development Corporation, Greater Detroit Resource Recovery Authority, Local Development Finance Authority, Museum of African American History, and Detroit Land Bank Authority which represent 100% of the assets and expenses of the aggregate discretely presented component units. We also did not audit the financial statements of the General Retirement System and the Policemen and Firemen Retirement System and the Detroit Building Authority, which represent 96% and 46% of the assets and expenses/expenditures/deductions, respectively, of the aggregate remaining fund information. Those financial statements were audited by other auditors whose reports thereon were furnished to us, and our opinions, insofar as they relate to the amounts included in the aggregate discretely presented component units and the aggregate remaining fund information, are based on the reports of the other auditors. Our report included an explanatory paragraph stating that the City has an accumulated unassigned deficit in the General Fund of $326.6 million as of June 30, 2012, which has resulted from operating deficits over the last several years. Our audit was



performed for the purpose of forming opinions on the financial statements that collectively comprise the City's basic financial statements. We have not performed any procedures with respect to the audited financial statements subsequent to December 28, 2012. The accompanying schedule of expenditures of federal awards is presented for purposes of additional analysis as required by OMB Circular A-133 and is not a required part of the basic financial statements. Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the financial statements. The information has been subjected to the auditing procedures applied in the audit of the basic financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the basic financial statements or the financial statements themselves, and other additional audit procedures in accordance with auditing standards generally accepted in the United States of America. In our opinion, the schedule of expenditures of federal awards is fairly stated in all material respects, in relation to the basic financial statements taken as a whole.

The City's responses to the findings identified in our audit are described in the accompanying schedule of findings and questioned costs. We did not audit the City's responses, and accordingly, we express no opinion on the responses.

This report is intended solely for the information and use of the Mayor, City Council, city management, federal awarding agencies, and pass-through entities and is not intended to be and should not be used by anyone other than these specified parties.

*KPMG LLP*

Detroit, Michigan
March 28, 2013 (except as to the paragraph
relating to the schedule of expenditures of federal
awards, which is as of December 28, 2012)