**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | ) Case No. 13-53846 |
| | ) |
| CITY OF DETROIT, MICHIGAN | ) Chapter 9 |
| | ) |
| Debtor | ) Hon. Steven W. Rhodes |
| | ) |

**SUPPLEMENTAL OBJECTION OF COUNTY OF MACOMB, MICHIGAN,
BY AND THROUGH ITS COUNTY AGENCY, THE MACOMB COUNTY
PUBLIC WORKS COMMISSIONER, AND THE MACOMB INTERCEPTOR
DRAIN DRAINAGE DISTRICT TO SIXTH AMENDED PLAN
FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

Pursuant to the *Eighth Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment* [Docket No. 6699], County of Macomb, Michigan, a Michigan Constitutional corporation, by and through its County Agency, Anthony V. Marrocco, the Macomb County Public Works Commissioner ("Macomb"), and the Macomb Interceptor Drain Drainage District (the "MIDDD," and together with Macomb, the "Macomb Parties"), creditors and parties in interest in the above-captioned Chapter 9 bankruptcy case, hereby submit this supplemental objection (the "Supplemental Objection") to the *Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 6908] (the "Plan") and, in support thereof, respectfully states as follows:

**OBJECTION**

The Plan reflects amendments to the *Corrected Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* that, among other things, add back the concept of a regional water and sewer authority (a "Regional Authority") that appeared in earlier iterations. The Plan now provides that:

19893606

> As a result of mediation or otherwise, it is possible that the City may enter into a DWSD Authority Transaction that includes the formation of the DWSD Authority to conduct many or all of the operations currently conducted by DWSD. Any such transaction would be subject to the approval of incorporating units and numerous other conditions. The timing of any such transaction, if it occurs at all, is not known. If any such transaction could occur, unless waived by the City in its sole discretion, the City will enter into such transaction only if Macomb County, Oakland County and Wayne County, and each of their municipal affiliates or related public corporations, withdraw with prejudice or shall have withdrawn with prejudice their objections to the Confirmation of the Plan.
>
> All terms and conditions in respect of any DWSD Authority Transaction set forth in (a) any Bond Document or (b) any transaction document in respect of such a DWSD Authority Transaction shall in any case include: (i) no material modifications to the source of payment and security for any DWSD Bonds, New DWSD Bonds, New Existing Rate DWSD Bonds or 2014 Revenue and Revenue Refinancing Bonds; (ii) an opinion of tax counsel that such transfer shall have no material adverse effect on the tax exempt status of the interest on the DWSD Bonds, New DWSD Bonds, New Existing Rate DWSD Bonds or 2014 Revenue and Revenue Refinancing Bonds; (iii) that the City could issue at least $1 of additional new money DWSD Bonds in compliance with the additional bonds test set forth in the applicable Bond Documents; and (iv) ratings confirmation of any rating agency then rating the DWSD Bonds, New DWSD Bonds, New Existing Rate DWSD Bonds and 2014 Revenue and Revenue Refinancing Bonds.

Plan at IV.A.4.

This provision, which reflects the mere possibility that a deal regarding a Regional Authority might be reached, has no place in the Plan. Although it is found in the article entitled "Means for Implementation of the Plan," the provision does nothing to explain the interplay between a potential Regional Authority transaction and the operative provisions of the Plan. Rather, it appears to be an attempt by the Debtor to fix certain parameters of negotiation that are properly addressed only in the context of mediation. For example, the Plan now seems to require that both Macomb and MIDDD withdraw their objections to the Plan as a condition to a

transaction creating a Regional Authority, unless the Debtor exercises its discretion to waive that condition. This is inappropriate for several reasons.

First, as the Debtor acknowledges, the timing of any Regional Authority transaction, if one is even to occur, is unknown, and any such transaction would be subject to approval of incorporating units and numerous other conditions. If such a transaction does occur in a way that remedies the Plan's proposed use of DWSD assets and revenues to pay inflated pension claims, Macomb's objections to the Plan may well be resolved. That, however, is unlikely to occur before the hearing on the confirmation of the Plan, and Macomb cannot withdraw its objections to the Plan as it currently stands.

Second, MIDDD's objections, including, but not limited to, its argument that the Plan unfairly discriminates against Class 14, do not pertain to the future operation and control of the DWSD or the Plan's proposed use of DWSD assets, and thus are wholly unrelated to the creation of a Regional Authority. A Regional Authority transaction would do nothing to mitigate the more than $26 million in damages suffered by MIDDD due to the City's conduct. The City should not be allowed to use the prospect of a Regional Authority as a shield against its obligation to provide a fair recovery to MIDDD on account of its claim. In essence, the Plan now conditions the City's cooperation in a transaction that may resolve the objections of one party—Macomb—in exchange for to abandonment by a related party—MIDDD—of its right to assert its pecuniary interests by objecting to the Plan (as well as its right to potentially appeal). This is coercive and inappropriate. See In re MCorp Financial, Inc., 137 B.R. 219, 236 (Bankr. S.D. Tex. 1992) (finding plan unfairly discriminatory where recovery of three classes depended on an accepting vote of one of the classes).

In any event, whether the City wants to require MIDDD to withdraw its objection to the Plan as a condition to the creation of a Regional Authority is a negotiating point that should be decided in mediation, and has no place in a plan of adjustment. If that is a condition that the City wishes to impose, it can attempt to do so in negotiation, at which point the Macomb Parties may evaluate the proposal and decide if withdrawal of the MIDDD objections is in their best interests. It should not, however, be decided unilaterally by the City and imposed on the Macomb Parties through the inclusion of an unnecessary provision in the Plan that has no other operative effect. Such a coercive request is indicative of the lack of good faith required for confirmation of a plan. See 11 U.S.C. § 1129(a)(3) (made applicable in Chapter 9 through section 901(a)).

Thus, the Macomb Parties request that the Court deny confirmation of the Plan.

Dated: August 25, 2014

Respectfully submitted,

DECHERT LLP

By: /s/ Allan S. Brilliant
Allan S. Brilliant
Stephen M. Wolpert
1095 Avenue of the Americas
New York, NY 10016
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

*Attorneys for County of Macomb, Michigan by and through its County Agency, Anthony V. Marrocco, the Macomb County Public Works Commissioner, and the Macomb Interceptor Drain Drainage District*