# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
--------------------------------------------------------   x
                                                           :
In re                                                      :  Chapter 9
                                                           :
CITY OF DETROIT, MICHIGAN,                                 :  Case No. 13-53846
                                                           :
                              Debtor.                      :  Hon. Steven W. Rhodes
                                                           :
-------------------------------------------------------    x
```

## DEBTOR'S COMBINED OBJECTION AND BRIEF IN OPPOSITION TO CREDITOR AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25's  MOTION TO CLARIFY OR, IN THE ALTERNATIVE, LIFT THE AUTOMATIC STAY

The City of Detroit ("City"), by its undersigned counsel files this Combined Objection and Brief in Opposition to Creditor American Federation of State, County and Municipal Employees Michigan Counsel 25's ("AFSCME") Motion to Clarify or, in the Alternative, Lift the Automatic Stay ("Motion") (Docket No. 6652). In support of this Objection, the City responds as follows:

## INTRODUCTION

AFSCME seeks to litigate two related proceedings before the Michigan Employment Relations Commission ("MERC"): an unfair labor practice charge ("Charge") and a unit clarification petition ("Petition"). Both seek to prevent changes in bargaining unit/union affiliation, affecting employees of the City's Water and Sewerage Department ("DWSD") as a result of DWSD's efforts to combine and eliminate numerous job classifications. The combination and elimination of job classifications is critical to DWSD's restructuring plan and were tasks that Judge Cox specifically ordered DWSD to undertake.  The City objects to AFSCME's request to proceed with the Charge and the Petition.  If granted, either or both would

undermine the flexibility afforded to the City by Judge Cox to restructure DWSD without being constrained by any collective bargaining agreements. Denial of the request will not prejudice AFSCME since – because of Judge Cox's order and PA 436 – even if this Court were to lift the Stay, MERC cannot hear the Charge or the Petition. As such, AFSCME fails to identify any valid basis to afford it the requested right to proceed before MERC. The Motion should be denied.

## BACKGROUND

1.      **Judge Cox's Orders**

In 1977, the United States Environmental Protection Agency initiated an action against the City and DWSD in the U.S. District Court for the Eastern District of Michigan alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, E.D. Mich. Case No. 77-71100. The case was originally assigned to Judge John Feikens. When Judge Feikens retired in 2010, the case was reassigned to Judge Sean Cox. EPA Case Docket Entry "EPA D.E." 2323. On September 9, 2011, Judge Cox issued an order noting that "human resources issues have been a chronic problem for the DWSD for the past 34 years." EPA D.E. 2397 at 33. In particular, Judge Cox found that "the job descriptions and qualifications for various positions within the DWSD are obsolete." Id. Further, Judge Cox determined that these human resources issues "have prevented the DWSD from achieving sustained compliance with its [EPA National Pollutant Discharge Elimination System ("NPDES")] permit, the various remedial plans in [the EPA] action, and the Clean Water Act." Id. at 33-34.

As a result, Judge Cox determined that "an effective equitable remedy to achieve sustained compliance will require this Court to order structural changes regarding the DWSD

that will likely override the City of Detroit's Charter, its local ordinances, and/or some existing contracts." Id. at 42. Thus Judge Cox ordered:

> [T]he Mayor of the City of Detroit, the City Council President and President Pro Tem, and a current member of the Board of Water Commissioners (to be chosen by the Board) to meet and confer and, within 60 days of the date of this order, devise a plan to address the root causes of non-compliance that are discussed in this Opinion & Order. In doing so, they shall not be constrained by any local Charter or ordinance provisions, or by the provisions of union or other contracts.

Id. at 43.

Thereafter, the DWSD Root Cause Committee undertook a thorough evaluation of DWSD's human resources procedures and determined that in order to enhance operational flexibility and streamline operations, it needed to significantly decrease the number of DWSD job classifications, which at the time included 257 jobs. EPA D.E. 2410-1 at 4. On November 2, 2011, the DWSD Root Cause Committee filed with the court a proposed Plan of Action containing, among other recommendations, a reduction in the number of job classifications. On November 4, 2011, Judge Cox adopted the Root Cause Committee's Plan of Action and specifically ordered that:

> The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

EPA D.E. 2410 at 4, 6-7.

Having previously noted that the changes necessary to ensure compliance would likely violate local law as well as existing collective bargaining agreements, EPA D.E. 2397 at 42-43,

to ensure that DWSD was free to effectuate the ordered changes without facing a constant stream

of legal challenges, Judge Cox ordered further:

> The Court enjoins the Wayne County Circuit Court and the Michigan Employment Relations Commission from exercising jurisdiction over disputes arising from the changes ordered by this Court. The Court also enjoins the unions from filing any grievances, unfair labor practices, or arbitration demands over disputes arising from the changes ordered by this Court.

EPA D.E. 2410 at 7. The Charge and the Petition fall squarely within the

enjoined activity.


## 2.        Modification and Clarification of Judge Cox's Orders

On August 23, 2012, Judge Cox clarified his November 4, 2011 orders, stating that:

> Paragraph 3 on Page 6 of this Court's November 4, 2011 Order was intended to, and shall be construed as, ordering the severance of DWSD employees from existing bargaining units that are comprised of both DWSD and non-DWSD employees, thereby establishing separate DWSD bargaining units that cover only DWSD employees.

EPA D.E. 2470 at 3. For the limited purpose of effectuating the separation of units containing

only DWSD employees from broader, City-wide units, Judge Cox also modified his order for

limiting MERC's jurisdiction stating that "MERC is not enjoined from ruling on the DWSD's

pending Clarification Petitions, in order to effectuate the above severancing ordered by this

Court." Id.

In a January 30, 2013, order, Judge Cox further clarified his November 4, 2011 order

limiting MERC's jurisdiction. In that order, Judge Cox stated that:

> This Court only intended to enjoin MERC and the Wayne County Circuit Court from: 1) ruling that the various items of specific relief relating to CBAs that were ordered by this Court constitute unfair labor practices; or 2) exercising jurisdiction over any

grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court. This Court did not intend to enjoin MERC from exercising jurisdiction over every dispute relating to collective bargaining that involves the DWSD. For example, this Court did not intend to enjoin MERC from exercising jurisdiction over the union requests that are currently pending before it, which relate to negotiations for new union contracts and involve disputes over wages, health insurance, fringe benefits, and other conditions of employment.

EPA D.E. 2520 at 9-10. Even after all of the Judge's modifications and clarifications to the order, it still precludes MERC from hearing cases flowing from the "specific relief ordered by [the] Court." Id. Through the Motion, AFSCME asks this Court to allow MERC to hear cases that flow from Judge Cox's order that DWSD restructure, including reducing the number of job classifications without regard to any existing collective bargaining agreements. Judge Cox's order enjoins MERC from hearing both the Charge and the Petition.

**3.**      **DWSD's Ongoing Efforts to Comply With Judge Cox's Orders**

Immediately after Judge Cox issued his November 4, 2011 order, DWSD began its efforts to comply. Exhibit 1, Declaration of William Wolfson ¶ 5. On April 25, 2012, DWSD retained the outside consulting firm EMA, Inc. ("EMA") to assist in developing and implementing the changes necessary to comply with Judge Cox's orders. Id. EMA conducted a preliminary 90 day assessment of each of DWSD's 257 job classifications wherein EMA interviewed employees in each classification, conducted audits, and engaged in other types of reviews to determine which of those job classifications were necessary and which could be combined with other classifications or eliminated altogether. Id.

Following that 90 day assessment, EMA determined that of the 257 existing DWSD job classifications, all but 31 could either be eliminated or merged into an existing job classification. Id. ¶ 6. EMA further determined that the additional flexibility generated by the decreased

number of job classifications (and the outsourcing of non-core functions such as maintenance, fleet repair, security, billing, mailing, payroll, legal, etc.) would allow DWSD to reduce headcount from approximately 2,000 employees to approximately 375 employees and approximately 360 contractors.  Id.  EMA projected that the staffing reduction would save DWSD approximately $138 million per year with approximately $98.5 million in annual savings coming from the job classification changes alone.  Id.

Based upon the 90 day report from EMA and Judge Cox's Orders, DWSD initiated an optimization project to review its job classification designs and staffing levels.  Id. ¶ 7.  Key to this initiative was the use of employee design teams who were given the opportunity to review current job designs and work practices used by DWSD (the "as is" organization) and redevelop those job classification designs and practices (the "to be" organization) to promote greater flexibility and efficiency in DWSD's operations.  Id.  EMA served as a facilitator for this initiative. Id.

Following the receipt of employee design team reports, DWSD drafted revised job classification descriptions reflecting the input from the employee design teams and made other changes to the initial EMA recommendations necessary for its operations (for example, the decision was not made to outsource security).  Id. ¶ 8. Once the new job classification descriptions were complete, DWSD worked with the Fox Lawson firm to benchmark compensation for those positions (salary and benefits) against other utilities. Id.

In December, 2013, the Emergency Manager established new job classifications reflecting DWSD job classification descriptions; this was a complete organizational redesign of DWSD. Id. ¶ 9.

Key to the Optimization Initiative was the combination of job classifications containing different skill sets to increase operational flexibility and efficiency. Id. ¶ 10. However, this meant that many of the new job classifications would be the result of a combination of classifications then represented by different unions. Id. As a result, DWSD needed to determine which union would represent each new, combined, job classification. Id. In performing this process, DWSD applied the factors under Michigan case law to be considered in an organizational redesign. Id. These factors include, but are not limited to, hours, location where work is performed, and the highest skilled job classification that would become part of the new classification. Id.

With these principles in mind, DWSD began meeting with the various DWSD bargaining units in the Spring of 2014 to negotiate new collective bargaining agreements (or reopen existing agreements) to account for the new, combined, job classifications. Id. ¶ 11. DWSD was able to reach agreements that included the new, modified job classifications with a number of its bargaining units including: the Michigan Building and Construction Trades Council, Teamsters, International Union of Operating Engineers, Association of Professional Construction Inspectors and Senior Water Systems Chemist Association. Id.

4.      **AFSCME Files the Charge and the Petition**

In the Spring of 2012, DWSD informed AFSCME of its planned reorganization and its intent to decrease the number of job classifications. On March 25, 2014, DWSD again informed AFSCME of the progress of its planned reorganization and job classification redesigns and, specifically, that (a) some current AFSCME represented classifications would be combined with non-AFSCME represented classifications and (b) some of the resulting combined job classifications would no longer be represented by AFSCME based on the methodology and the

factors outlined above. Id. ¶ 12. In addition, however, some new classifications that would be assigned to AFSCME included employees that were previously represented by different unions. Id. On May 16, 2014, AFSCME responded by filing an unfair labor practice Charge against the City with MERC, alleging that the City's job combinations and the accompanying bargaining unit changes violated Section 10(1)(e) of the Michigan Public Employment Relations Act, MCL §423.210, "by unilaterally changing a mandatory subject of bargaining and refusing to engage in good faith bargaining with respect to non mandatory subjects." Motion, Ex. 1 at 2. AFSCME filed the Charge despite the fact that the City's duty to bargain has been, and was at the time of filing, suspended by Public Act 436 ("PA 436"), MCL 141.1541 *et seq.*

If MERC were to find that the City committed unfair labor practices in combining the job classifications and assigning them to various bargaining units, this could delay or prevent the restructuring necessary to comply with Judge Cox's orders and thereby delay or prevent DWSD from securing approximately $98.5 million in annual cost savings resulting from the classification changes. Wolfson Decl. ¶ 14. Such a MERC ruling would also invalidate the collective bargaining agreements incorporating the new, combined job classifications already entered into between DWSD and various other unions.

On May 29, 2014, MERC Administrative Law Judge Julia C. Stern refused to schedule a hearing on the Charge, noting that "[b]ecause of the pending City of Detroit bankruptcy proceedings, no hearings are being scheduled at this time on unfair labor practice charges filed against the City." Motion, Ex. 2.

Trying a different tact to get the same issues before MERC, on April 3, 2014, AFSCME filed the Petition regarding the proposed new job classifications. Motion, Ex. 3. Specifically, AFSCME asks MERC to determine the appropriate bargaining representatives for the newly

combined classifcations in DWSD.  Id.  A decision by MERC adverse to the combined job classifications, some of which have already been incorporated into new collective bargaining agreements, would also hinder DWSD's efforts to comply with Judge Cox's orders and its efforts to secure the cost savings necessary to keep the Department economically viable.  Wolfson Decl. ¶ 15.  In addition, as with the Charge, such a MERC ruling would invalidate the collective bargaining agreements incorporating the new, combined job classifications already entered into between DWSD and its various bargaining units.  There would also be litigation regarding MERC's authority to issue such a determination because it deals with an issue flowing directly from Judge Cox's order.

On June 23, 2014, MERC Director Ruthanne Okun responded to AFSCME's Petition by holding it in abeyance, stating that "the City of Detroit is in bankruptcy and all matters involving the City of Detroit are automatically stayed at this time.  MERC is not able to take any further actions unless you can provide our Office that we have authority to proceed."  Motion, Ex. 3.

In response to MERC's refusal to hear either the Charge and the Petition, on August 12, 2014, AFSCME filed the Motion seeking clarification from the Court that the automatic stay does not apply to the Charge and the Petition or, in the alternative, relief from the automatic stay to allow AFSCME to pursue the Charge and the Petition before MERC.

## ARGUMENT

Section 362(a) of the Bankruptcy Code provides in relevant part that:

> a petition filed under . . . this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . .

11 U.S.C. § 362(a).

22851465.5\022765-00202

The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 363 (6th Cir. 1997) (quoting H. Rep. 95-595, at 340 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6296

## 1. No Cause Exists Justifying Relief From the Automatic Stay

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the automatic stay in limited circumstances. See 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the automatic stay "for cause." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.), 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.), 30 F.3d 734, 737 (6th Cir. 1994)).

The determination of whether to grant relief from the automatic stay "resides within the sound discretion of the Bankruptcy Court." Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting), No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting In re Garzoni, 35 F. App'x 179, 181 (6th Cir. 2002)). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an

eye towards the overall goals of the Bankruptcy Code." Plastech, 382 B.R. at 106 (quoting In re C & S Grain Co., 47 F.3d 233, 238 (7th Cir. 1995)).

Here, a balance of the competing harms confirms that no cause (much less sufficient cause) exists to justify relief from the automatic stay to allow MERC to hear the Charge or the Petition.

### a.        No Harm to AFSCME

The harm to AFSCME is limited or non-existent because even if the Court were to grant AFSCME's relief, it would not result in the resolution of any the issues raised in either the Charge or the Petition.

In accordance with Judge Cox's order, MERC is enjoined from "exercising jurisdiction over any grievances, unfair labor practice charges, or arbitration demands that are based upon the specific relief ordered by this Court."  EPA D.E. 2520 at 9-10.  Since Judge Cox specifically ordered DWSD to "perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to  increase workforce flexibility," EPA D.E. 2410 at 6-7, and AFSCME's Charge and Petition each directly flow from DWSD's combination of job classifications, MERC has no authority to hear the Petition or the Charge absent an order from Judge Cox stating otherwise.  Granting stay relief would be a futile action affording no substantive relief for AFSCME.

Furthermore, MERC has no jurisdiction to hear an unfair labor practice charge alleging a failure to comply with the duty to bargain since, the City's duty to bargain has been suspended by PA 436.  City of Inkster, 2013 MI ERC Lexis 45 at *16 (MERC 2013) ("[C]laims alleging a unilateral change in terms and conditions of employment … are premised upon the duty to bargain set forth in Section 15(1) of PERA. Since Section 15(1) was suspended under … PA

436, no valid claim under PERA has been stated by the Union in this matter. While it is conceivable that the Union might have a claim for breach of contract in another forum, the Commission has no jurisdiction to remedy such an allegation.").

Even if a MERC Administrative Law Judge had the authority to hear the Charge or the Petition, this matter will not be resolved short of a decision by MERC itself. Pursuant to MERC's rules of procedure, following the entry of any Recommended Decision and Order by an Administrative Law Judge, the parties will be entitled to file exceptions and cross-exceptions prior to the matter coming before MERC. Those proceedings, and any potential appeals, would engender delay and entail the expenditure of significant City time and resources – resources which would be far better spent addressing the City's other restructuring needs. Absent resolution of these barriers, the issues raised in the Charge and the Petition will not be resolved even if the automatic stay is lifted.

### b. Substantial Harm to the City if the Motion is Granted

There will be at least three significant deleterious effects if the Court lifts the automatic stay and MERC delays or prevents the implementation of the new job classifications: 1) DWSD will not be in compliance with Judge Cox's orders; 2) DWSD will not secure $98.5 million in annual savings which would be reinvested within the Department; and 3) DWSD will be prevented from rationalizing and streamlining its workforce in a way necessary to ensure its future success.

If MERC were to determine that the City committed an unfair labor practice in creating the new job classifications and assigning them to bargaining units (or if MERC were to determine through the Petition that the City improperly assigned some or all of the new combined classifications to particular bargaining units) MERC could force DWSD to

significantly delay the implementation of its job classification reorganization. This delay would prevent DWSD from securing the approximately $98.5 million in labor cost savings which are critical to DWSD's restructuring efforts. Such an outcome would also be contrary to Judge Cox's order requiring the City to reduce the number of job classifications, forcing DWSD to decide which order, MERC's or Judge Cox's, to violate. This outcome would undermine the efforts of the City and the authority of this Court to address fundamental restructuring issues central to this chapter 9 case.

Further, this bankruptcy case is at its most critical juncture. The City has been and will continue to expend substantial resources and time preparing for the upcoming confirmation trial and negotiating settlements with its creditors. The City would be unfairly prejudiced if stay relief were granted when absent such relief disposition of the Charge and Petition may only be delayed a few additional months until the confirmation process has concluded. The delay does not place a hardship on AFSCME because before MERC could even hear either case, proceedings would have to take place to have Judge Cox decide whether MERC has judisdiction to consider the Charge or the Petition under his order and litigation would take place regarding MERC's authority to hear these actions under PA 436. Because MERC decided to hold the Charge and the Petition in abeyance so quickly after the actions were filed, the City has not yet even filed its initial response to the Charge or the Petition, let alone conduct any preliminary hearings. In short, this litigation is at the most preliminary stage and numerous pre-trial steps would need to be completed before either the Charge or the Petition would be ready for adjudication.

Finally, if the Court lifts the stay on these MERC proceedings, the City anticipates that the Court will be forced to entertain, and the City to defend against, numerous efforts by AFSCME and other labor unions to pursue additional proceedings before MERC. In addition,

22851465.5\022765-00202

other unions could challenge AFSCME's attempt to represent the employees in these new classifications, which would create additional litigation. The floodgates would be open and such costly and time consuming litigation would waste City resources that would be far better spent addressing the City's other restructuring needs. Simply put, the harm to the City from preventing the implementation of the new job classifications far outweighs the harm to AFSCME and the employees it represents from allowing. Thus, no cause exists justifying relief from the automatic stay.

**2.      The Automatic Stay Applies to Both the Charge and the Petition**

AFSCME alludes in a footnote to an argument that the automatic stay should not apply to its action because of the "Police Power" exception to the automatic stay found in 11 U.S.C. § 362(b)(4). Any such argument misstates applicable law.

Section 362(b) of the Bankruptcy Code provides, in relevant part:

> The filing of a petition . . . does not operate as a stay —
>
> . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power . . . .

11 U.S.C. § 362(b)(4). Contrary to AFSCME's contention, this so-called "Police Power Exception" is only applicable when a governmental unit acts to enforce public policy against a debtor rather than pursue a pecuniary purpose. See Chao v. Hospital Staffing Servs., Inc., 270 F.3d 374, 385-86 (6th Cir. 2001) (citing, among others, Word v. Commerce Oil Co. (In re Commerce Oil Co.), 847 F.2d 291, 295 (6th Cir. 1988)).

22851465.5\022765-00202

The Charge and the Petition are not excepted from the automatic stay by the Police Power Exception, and the authority cited by AFSCME on this point is irrelevant for the simple reason that AFSCME (i.e., the charging party in the Charge and the petitioner in the Petition) is not a governmental unit.[1] See U.S. ex rel. Kolbeck v. Point Blank Solutions, Inc., 444 B.R. 336, 338-40 (E.D. Va. 2011) (Qui tam action brought by private person under the False Claims Act to enforce the government's police or regulatory power was not excepted from the automatic stay by the Police Power Exception because the exception applies exclusively to actions brought by governmental units, not merely actions in furtherance of the police or regulatory powers of governmental units); In re Saint Vincent's Catholic Medical Centers of New York, 429 B.R. 139, 148-49 (Bankr. S.D.N.Y. 2010) (holding that an action to prevent the closure of a hospital brought by private parties is not excepted from the automatic stay even though the same action in the hands of the New York State Department of Health may fall within the "narrowly construed" Police Power Exception). Thus, the Police Power Exception does not except the Charge or the Petition from the automatic stay.[2]

---

[1]     The term "governmental unit" means:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27). AFSCME is not a governmental unit and is not entitled to the benefit of the Police Power Exception.

[2]     Even if the initiating party with respect to the Charge or the Petition were a governmental unit, such as MERC, any arguable police power to enforce the duty to bargain the governmental unit may have with respect to the City is suspended by Section 27(3) of PA 436. Section 27(3 provides that, "[a] local government placed in receivership under this act [PA 436]

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court: (a) deny the Motion; and (b) grant such other and further relief to the City as the Court may deem proper.

August 26, 2014

Respectfully submitted,

By: /s/Timothy A. Fusco
    Timothy A. Fusco (P13768)
    Jonathan S. Green (P33140)
    Stephen S. LaPlante (P48063)
    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 963-6420
    Facsimile: (313) 496-7500
    green@millercanfield.com
    laplante@millercanfield.com
    fusco@millercanfield.com

    David G. Heiman (OH 0038271)
    Heather Lennox (OH 0059649)
    JONES DAY
    North Point
    901 Lakeside Avenue
    Cleveland, Ohio 44114
    Telephone: (216) 586-3939
    Facsimile: (216) 579-0212
    dgheiman@jonesday.com
    hlennox@jonesday.com

---

is not subject to section 15(1) of 1947 PA 336, MCL 423.215, for a period of 5 years from the date the local government is placed in receivership or until the time the receivership is terminated, whichever occurs first." Section 15(1) provides that a "public employer shall bargain collectively with the representatives of its employees." Id.

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

     ATTORNEYS FOR THE CITY OF DETROIT


## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on August 26, 2014, he filed ***DEBTOR'S COMBINED OBJECTION AND BRIEF IN OPPOSITION TO CREDITOR AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25's MOTION TO CLARIFY OR, IN THE ALTERNATIVE, LIFT THE AUTOMATIC STAY,*** using the court's CM/ECF system which will send notice of the filing to all registered participants in this matter.  Also on this date, the document was served via electronic mail upon counsel as listed below:

Richard G. Mack, Jr., Esq.
richardmack@millercohen.com


DATED: August 26, 2014

     By: /s/Timothy A. Fusco
       Timothy A. Fusco (P13768)
       150 West Jefferson, Suite 2500
       Detroit, Michigan 48226
       Telephone: (313) 963-6420
       Facsimile: (313) 496-7500
       fusco@millercanfield.com

# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
------------------------------------------------x
                                        :
In re                                   :        Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,   :          Case No. 13-53846
                                        :
           Debtor.                      :        Hon. Steven W. Rhodes
------------------------------------------------x
```

## DECLARATION OF WILLIAM WOLFSON

1.      If called as a witness, I am competent to testify to the facts contained in this Declaration and these facts are true.

2.      I am the Chief Administrative and Compliance Officer/General Counsel of the Detroit Water and Sewerage Department ("DWSD").

3.      In 1977, the United States Environmental Protection Agency initiated an action against the City of Detroit ("City") and DWSD in the U.S. District Court for the Eastern District of Michigan alleging violations of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, E.D. Mich. Case No. 77-71100 ("Clean Water Act Litigation").

4.      On November 4, 2011, Judge Cox issued an Order in the Clean Water Act Litigation that addressed several issues related to DWSD's Human Resources operations and Collective Bargaining Agreements; including the following:

> The Director of the DWSD shall perform a review of the current employee classifications at the DWSD and reduce the number of DWSD employee classifications to increase workforce flexibility. Future DWSD CBAs shall include those revised employee classifications.

EPA D.E. 2410 at 4, 6-7.

5.      Immediately after Judge Cox issued his November 4, 2011 order in the Clean Water Act Litigation, DWSD began its efforts to comply. On April 25, 2012, DWSD retained the outside consulting firm EMA, Inc. ("EMA") to assist in developing and implementing the changes necessary to comply with Judge Cox's orders. EMA conducted a preliminary 90 day assessment of each of DWSD's 257 job classifications wherein EMA interviewed employees in each classification, conducted audits, and engaged in other types of reviews to determine which of those job classifications were necessary and which could be combined with other classifications or eliminated altogether.

6. Following that 90 day assessment, EMA determined that of the 257 existing DWSD job classifications, all but 31 could either be eliminated or merged into an existing job classification. EMA further determined that the additional flexibility generated by the decreased number of job classifications (and the outsourcing of non-core functions such as maintenance, fleet repair, security, billing, mailing, payroll, legal, etc.) would allow DWSD to reduce headcount from approximately 2,000 employees to approximately 375 employees and approximately 360 contractors. EMA projected that the staffing reduction would save DWSD approximately $138 million per year with approximately $98.5 million in annual savings coming from the job classification changes alone.

7. That based upon the 90 day report from EMA and Judge Cox's Orders, DWSD initiated an optimization project to review its job classification designs and staffing levels. Key to this initiative was the use of employee design teams who were given the opportunity to review current job designs and work practices used by DWSD (the "as is" organization) and redevelop those job classification designs and practices (the "to be" organization) to promote greater flexibility and efficiency in DWSD's operations. EMA served as a facilitator for this initiative.

8. Following the receipt of employee design team reports, DWSD drafted revised job classification descriptions reflecting the input from the employee design teams and made other changes to the initial EMA recommendations necessary for its operations (for example, the decision was not made to outsource security). Once the new job classification descriptions were complete, DWSD worked with the Fox Lawson firm to benchmark compensation for those positions (salary and benefits) against other utilities.

9. In December, 2013, the Emergency Manager established new job classifications reflecting DWSD job classification descriptions; this was a complete organizational redesign of DWSD.

10. Key to the Optimization Initiative was the combination of job classifications containing different skill sets to increase operational flexibility and efficiency. However, this meant that many of the new job classifications would be the result of a combination of classifications then represented by different unions. As a result, DWSD needed to determine which union would represent each new, combined, job classification. In performing this process, DWSD applied the factors under Michigan case law to be considered in an organizational redesign. These factors include, but are not limited to, hours, location where work is performed, and the highest skilled job classification that would become part of the new classification.

11. With these principles in mind, DWSD began meeting with the various DWSD bargaining units in the Spring of 2014 to negotiate new collective bargaining agreements (or reopen existing agreements) to account for the new, combined, job classifications. DWSD was able to reach agreements that included the new, modified job classifications with a number of its bargaining units including: the Michigan Building and Construction Trades Council, Teamsters, International Union of Operating Engineers, Association of Professional Construction Inspectors and Senior Water Systems Chemist Association.

12. In the Spring of 2012, DWSD informed AFSCME of its planned reorganization and its intent to decrease the number of job classifications. On March 25, 2014, DWSD again

2

informed AFSCME of the progress of its planned reorganization and job classification redesigns and, specifically, that (a) some current AFSCME represented classifications would be combined with non-AFSCME represented classifications and (b) some of the resulting combined job classifications would no longer be represented by AFSCME based on the methodology and factors previously outlined in this Declaration. In addition, however, some new classifications that would be assigned to AFSCME included employees that were previously represented by different unions.

13. On May 16, 2014, AFSCME responded by filing an unfair labor practice Charge against the City with MERC, alleging that the City's job combinations and the accompanying bargaining unit changes violated Section 10(1)(e) of the Michigan Public Employment Relations Act, MCL §423.210.

14. If MERC were to find that the City committed unfair labor practices in combining the job classifications and assigning them to various bargaining units, this could delay or prevent the restructuring necessary to comply with Judge Cox's orders and thereby delay or prevent DWSD from securing approximately $98.5 million in annual cost savings resulting from the classification changes.

15. On April 3, 2014, AFSCME filed a Unit Clarification Petition with MERC regarding the proposed new job classifications which involves the same issues as the unfair labor practice Charge. A decision by MERC adverse to the combined job classifications, some of which have already been incorporated into new collective bargaining agreements, would also hinder DWSD's efforts to comply with Judge Cox's orders and its efforts to secure the cost savings necessary to keep the Department economically viable.

3

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed on August 26 , 2014.

William Wolfson

4