# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN AFSCME COUNCIL 25
AFL-CIO, its affiliated Local 1600, Samuel
Muma, Franklin Greene Jr. and Willie
Stacker

        Plaintiffs,

vs.

RICHARD D. SNYDER, in his official
capacity as Governor of the STATE OF
MICHIGAN, ANDREW DILLON, in his
official capacity as the TREASURER OF THE
STATE OF MICHIGAN, and MICHAEL
BROWN, in his official capacity as former
EMERGENCY MANAGER OF THE CITY
OF FLINT, and ED KURTZ, in his official
capacity as EMERGENCY MANAGER OF
THE CITY OF FLINT

        Defendants.

Case No.

Hon: _____

_____/

Herbert A. Sanders (P43031)
The Sanders Law Firm P.C.
Attorneys for Plaintiff
615 Griswold, Suite 913
Detroit, MI 48226
(313) 962-0099
haslaw@earthlink.net

Tere McKinney (P71567)
Co-counsel for Plaintiff
Legal Dept.
Michigan AFSCME Council 25
600 W. Lafayette Blvd.
Detroit, MI 48226
(313) 964-1711
tmckinney@miafscme.org

_____/

**COMPLAINT
FOR DECLARATORY
AND INJUNCTIVE RELIEF**

1

## PARTIES

1. Plaintiff, Michigan AFSCME Council 25 is an unincorporated, voluntary labor association certified by the Michigan Employment Relations Commission, pursuant to the Michigan Public Employee Relations Act, MCLA 432.201 *et seq.*

2. Plaintiff has associational standing on behalf of its members as well as its own standing as party to its current collective bargaining agreement with the City of Flint.

3. Plaintiff Samuel Muma is a member and President of Local 1600.

4. Plaintiff Franklin Greene Jr. is a member of Local 1600 and a resident of the City of Flint.

5. Plaintiff Willie A. Stacker is a member of Local 1600 and a resident of the City of Flint

6. Defendant Richard D. Snyder is the Governor and the Chief Executive Officer of the State of Michigan.

7. Defendant Andrew Dillon is the Treasurer of the State of Michigan.

8. Defendant Michael Brown was appointed Emergency Manager by Defendant Snyder under Public Act 4 in November of 2011.

9. Defendant Brown served as Emergency Manger from December 2011 to July 2012.

10. Defendant Michael Brown is the current appointed City Administrator.

11. Defendant Ed Kurtz was previously the Emergency Financial Manger for the City of Flint from 2002-2003.

12. Defendant Ed Kurtz is the current appointed Emergency Manger for the City of Flint as of July 2012 under Public Act 72.

13. Effect March 28, 2013 Defendant Kurtz is the Emergency Manger under Public Act 436.

## INTRODUCTION

14. This lawsuit is brought under 42 U.S.C. § 1983 to restrain and redress Defendants' constitutional violations.

15. Plaintiff, Michigan AFSCME Council 25 (hereinafter AFSCME or the Union) is a party to a collective bargaining agreement with the City of Flint (hereinafter City).

16. Plaintiff's agreement with the City establishes wages and other compensation for Plaintiff's members.

17. The City is under the sole management and control of Defendant Ed Kurtz, the current Emergency Manager (herein EM), who has virtually unbridled powers. During his 2002-2003 term as EFM Defendant Ed Kurtz negotiated a labor agreement with Plaintiffs resulting in 10.4% in across the board cuts and 4% in wage reductions saving the City millions of dollars.

18. In 2010 Plaintiffs negotiated a new collective bargaining agreement resulting in additional concessions saving the city more millions of dollars.

19. The current negotiated agreement between the parties does not expire until December 31, 2013.

20. In April of 2012 Defendant Brown as Emergency Manager (herein EM) unilaterally imposed changes in wages, hours and conditions of employment for Plaintiffs, including a 20% reduction in wages and benefits.

21. Defendant Kurtz continues to enforce the unilateral changes in wages and conditions and employment initiated by Defendant Brown.

22. At all times the actions of the Defendants Brown and Kurtz were taken with the approval of Defendant Andy Dillon, the State Treasurer.

23. Defendants' wage and benefit reductions will severely and substantially impair the City contractual obligations to its employees, in violation of the *Contract Clause of the U.S.*

*Constitution, Article I, Section 10.*

24. The reductions constitute an unconstitutional taking of private property without just compensation in violation of the *Fifth Amendment*.

25. The reductions occurred without due process of law in violation of *U.S. Const, Am XIV*.

26. On behalf of its members Plaintiff seeks temporary, preliminary and permanent injunctive relief, declaratory relief, and restitution.

## JURISDICTION AND VENUE

27. This Court has jurisdiction over this lawsuit pursuant *to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and 28 U.S.C. § 2201 and 2202* because this civil action arises under the Constitution of the United States of America.

28. Further, this Court also has jurisdiction to render declaratory judgments as requested herein pursuant to the *Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.*

29. Plaintiff brings this action, pursuant to *42 U.S.C. § 1983*, to remedy constitutional violations undertaken under color of state law.

30. Venue lies in this Court pursuant to *28 U.S.C. § 1391(b)*, because the Plaintiff labor organization is located here, and the events giving rise to this action have occurred and are occurring within the Eastern District of Michigan.

## FACTS

31. The City of Flint is Michigan's seventh largest municipality created and organized under the laws of Michigan.

32. The City is a public employer as defined in the *Michigan Public Employment Relations Act (PERA), M.C.L. 423.201 (1)(h)*.

4

33. *PERA* obligates a Michigan public employer, to bargain with the representative of its employees for the purpose of reaching a collective bargaining agreement covering wages, hours and other terms and conditions of employment.

34. *PERA, M.C.L. 423.215*, defines the obligation to bargain collectively with the representatives of its employees regarding wages, hours and other terms and conditions of employment, including the obligation to enter into a written contract incorporating any agreement reached upon request.

35. Plaintiff and City have entered into a series of collective bargaining agreements establishing wages, hours and terms and conditions of employment for City employees represented by AFSCME.

36. The current collective bargaining agreement between AFSCME and CITY expires June 30, 2014.. See Exhibit 1.

37. In December 2011 Defendant Rick Snyder appointed Defendant Brown as the Emergency Manager under the authority of *2011 Public Act 4*, the *Local Government School District Accountability Act, M.C.L. 14.1501, et seq. [suspended]*.

38. The *Local Government and School District Accountability Act ( here in PA 4)* authorized the Governor to appoint an Emergency Manager to exercise management authority over a local government, including a school district that was in financial distress.

39. Under PA 4 the Emergency Manger was authorized to terminate, modify and renegotiate any existing contract that the Local government was a party to.

40. In 2010 the City's then Emergency Manger Dan Williamson informed Plaintiffs bargaining representatives that the City needed additional financial concessions from its employees in order to address the City's budgetary shortfall and accumulated debt.

41. Despite the fact that Plaintiff and its members had already given up millions in concessions in

5

the form of a 4% wage reduction and 10.4% in across the board reductions in 2003.

42. Plaintiff negotiated with Williamson regarding the City's demand for financial concessions.

43. The negotiations resulted in the current collective bargaining agreement.

44. Under the current collective bargaining agreement, AFSCME members gave up additional millions in concessions to the City, primarily in the form of reduced pay reduced health insurance, and increased pension contributions.

45. On March 16, 2011, Governor Snyder signed into law the *Local Government and School District Fiscal Accountability Act (the "Act"), Public Act 4 of 2011, MCL § 141.1501, et. seq.*

46. P.A. 4 repealed and replaced the *Local Government Fiscal Responsibility Act, 1990 Public Act 72.*

47. P.A. 4 allowed for the appointment of an "Emergency Manager," with far broader powers than those provided to the "Emergency Financial Manager" under the predecessor statute.

48. The Act was intended to provide the Governor and the State Treasurer with broad unchecked powers in the event of a so-called "financial emergency" at the local government level.

49. Like the *Local Government Fiscal Responsibility Act (Public Act 72 of 1990)*, which it repealed, the Act enabled a state review and intervention into local government finances, but increased substantially the power and authority of the appointed emergency manager, specifically authorizing the power to reject, modify or terminate one or more terms and conditions of a collective bargaining agreement . *See MCL 141.1519(k).*

50. Under P.A. 4, the Emergency Manager could with the approval of the State Treasurer, abrogate a collective bargaining agreement after "meeting and conferring" with employees' bargaining representative, if in his or her "sole discretion and judgment a prompt and satisfactory resolution was unlikely to be obtained.

6

13-53846-tjt    Doc 7093-1    Filed 08/27/14    Entered 08/27/14 13:49:35    Page 7 of 17

51. The Act governed both the selection and the power of emergency managers, who are appointed to act for and in the place of the governing body and the chief administrative officers of municipal governments and public school districts deemed to be in financial distress.

52. The Act provided the Governor and State Treasurer with the unbridled power to declare a local "financial emergency" whenever and wherever they saw fit, in their sole and absolute discretion.

53. On November 28, 2011 Governor Snyder appointed Defendant Brown as Emergency Manager for the City under Public Act 4.

### *Public Act 4's Radical Revision of State Law*

54. Public Act 4 radically revised state law governing the appointment of EMs over cities and school districts during times of financial stress.

55. Public Act 4 provided that once the Governor had declared a financial emergency, the Governor could then appoint an individual to be the municipality's emergency manager. The Governor was granted broad discretion to declare a financial emergency and, in fact, a municipality was not actually required to be in a fiscal crisis before an EM could be appointed.

56. Tellingly, the Act changed the title of municipal "emergency financial managers" to "emergency managers" and expanded the scope of their powers to cover all the conduct of local government.

57. The PA 4 EM's powers extended not only to financial practices and fiscal policy, but rather permitted such managers to fully act "for and in the place of" the municipality's elected governing body. The grant of powers also included a general grant of legislative power (the power to unilaterally adopt local laws and resolutions) to PA 4 EMs.

58. Public Act 4's grant of legislative power to EMs extended to the full scope of legislative power possessed by local elected officials. In the state of Michigan, local legislative power is of the same scope and nature as the police power possessed by the state - limited only by the jurisdictional limits of the municipality and where preempted by the general laws of the state. Public Act 4's grant of general legislative power to EMs thus extended to a grant of the full of scope of the local government's police power, previously reserved to local government's elected legislative body and elected mayor.

59. Emergency managers were further granted powers to act in disregard of the local government's local laws – including city charters, ordinances, administrative regulations, school district bylaws, etc.

### *Michigan Citizen's Rejection of Public Act 4 And the State's Resurrection of Public Act 72*

60. In opposition to Public Act 4, citizens began circulating petitions in May 2011. The petitions were to place a referendum on the ballot that would reject the law. Over 200,000 signatures were gathered and the petitions were submitted to the Secretary of State in February 2012. However to prevent Michigan citizens from having the opportunity to vote on the matter, the petitions were challenged by a lobbying group.

61. The petitions were challenged on the basis that the title of the petitions were not printed in 14 point font but rather were printed in slightly smaller font of approximately 13.75 or larger.[1]

62. Along party-line votes, the members of the state Board of Canvassers deadlocked and as a result, the petitions were not certified for the ballot.

---

[1] No evidence was submitted and it was not argued that signatories of the petitions had been confused or misunderstood what they had signed. In fact, the difference in point size as argued by the challenger was invisible to the naked eye of many.

63. The matter was then appealed to the Michigan Court of Appeals. A panel of the Court of Appeals recognized and found that existing law required the referendum to be placed on the ballot. However, the panel sought to overturn existing law, and thereby keep the referendum off the ballot. The panel requested that the full Court of Appeals be polled to convene a special panel to reconsider existing law. The full Court of Appeals however declined to convene the special panel.

64. An appeal was taken to the state Supreme Court. The Michigan Attorney General in his individual capacity and Governor joined the challengers as amici at the state Supreme Court.

65. On August 3, 2012, the Michigan Supreme Court issued an opinion ordering the state Board of Canvassers certify the petitions and place the referendum on the ballot.

66. However on August 6, 2012, the state Attorney General issued a formal opinion stating that once the petitions were certified[2], PA 72 would spring back into effect and would remain in effect if voters rejected PA 4 at the November 2012 election.

67. The state Board of Canvassers certified the petitions on August 8, 2012 and by operation of Michigan law, PA 4 was then suspended until the November.

68. In response, state officials reappointed all existing PA 4EMs as PA 72 EFMs and proclaimed that all existing consent agreements would continue in place as PA 72 consent agreements.

69. At the general election on November 6, 2012, Michigan voters overwhelmingly elected to reject PA 4.

*Michigan Legislature's Attempt to Overturn Citizen's Vote to*
*Reject Public Act 4 by Enacting Public Act 436*

---

[2] Pursuant to Michigan law, once the petitions were certified PA 4 was then suspended until the voters could decide the matter at the next general election.

9

70. In response to the decision of Michigan voters to reject PA 4, incensed state officials and segments within the state legislature quickly moved to reenact a new law with emergency manager provisions that are substantially identical to the rejected law.

71. During the lame-duck session, the state legislature moved quickly to reenact the emergency manager provisions of Public Act 4. The new bill passed the state House and Senate on December 13, 2012 and was signed into law as the *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, on December 26, 2012.

72. Public Act 436 again changes the title of existing PA 72 "emergency financial managers" to "emergency managers" and again expands the scope of their powers to cover all the conduct of local government.

73. The PA 436 EM's powers are substantially identical to the powers that had been granted under PA 4. Public Act 436 EMs are empowered to fully act "for and in the place of" the municipality's governing body. The grant of powers again includes a general grant of legislative power to emergency managers.

74. Along with the general grant of legislative power to emergency managers, Public Act 436 exempts the EM from following existing city charters and local ordinances.

75. The new law does not provide any process that EMs must follow in the adoption or repeal of local laws, but rather permits the EM to do so by private orders, not subject to open meetings requirements.

76. Public Act 436 states that EMs appointed under PA 4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 once the new law takes effect.

77. Additionally, PA 436 permits the Governor to appoint persons appointed as EMs under PA 4 and as EFMs under PA 72 to serve as PA 436 EMs under the new law.

78. Under PA 436, all EMs serve at the pleasure of the Governor and continue to serve until removed by the Governor or until the Governor finds that the financial emergency has been rectified.

79. Public Act 436 permits the Governor to delegate his powers and duties to the state treasurer and the state treasurer oversees the activities of emergency managers.

80. When PA 436 took effect on March 28, 2013, EMs are in place over the cities of Allen Park, Benton Harbor, Ecorse, Flint, Pontiac and Detroit and over the Detroit Public Schools, Highland Park Public Schools, and Muskegon Heights Public Schools. Finally, the state's consent agreements with Inkster and River Rouge have again be converted – now to PA 436 agreements.

81. Under PA 436, elected officials in each of these communities will be displaced and/or be divested of governing and law-making authority and citizens will have effectively lost their right to vote for their local legislative bodies, chief executive officers, and school boards.

### Actions Taken By the EM Under PA 436

82. On April 24, 2012, EM Brown issued City of Flint *Order No. 24 & 26*. See Exhibit 2 & 3

83. The Order stated that, pursuant to *Section 19(k) of P.A. 4, M.C.L. 141.1509(k)*, and with the approval of Defendant Andrew Dillon, Emergency Manager Brown was imposing the following changes to the collective bargaining agreement with the AFSCME:

> *a. Wage reductions of 2.5%;*
>
> *b. elimination of pay out of unused sick and vacation time upon retirement;*
>
> *c. imposition of mandatory retirement contribution from 8% to 12%;*
>
> *d. elimination of shift premiums for working, holidays, overtime and weekends;*
>
> *f. Suspension of other previously agreed to compensation such as the elimination of insurance coverage during extended sick leave, supplemental payments to employees on workers compensation leave, dual classification pay, and*

11

>    *elimination of retiree health coverage for new hires;*
>
>    *g. Total wage and benefit reductions of 20%.*

84. The cuts in compensation ordered by the Emergency Manager constitute a serious impairment of the Plaintiff's collective bargaining agreement, and will irreparably injure the Plaintiff and its members who already have suffered substantial reductions in their livelihoods through concessions given in previous agreements.

85. The potential for injury is sufficiently immediate and real to allow this Court to issue a declaratory judgment.

86. By this Complaint for declaratory and injunctive relief, Plaintiff requests that this court declare unconstitutional and enjoin the implementation of any legislation that would impermissibly modify collective bargaining agreements between the City of Flint and its workers.

### COUNT I
### VIOLATION OF THE CONTRACTS CLAUSE OF
### THE UNITED STATES CONSTITUTION

87. Plaintiffs incorporate paragraphs 1-86 of this Complaint with the same force and effect as if fully set forth herein.

88. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Art I, § 10.*

*89.* The United States Constitution provides that *"No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." See U.S. Const., Art I, §10.*

90. By the actions alleged above, Defendants have or will substantially impair the AFSCME collective bargaining agreement, in violation of the *United States Constitution.*

91. This violation of United States Constitution is actionable under *42 USC § 1983*.

## COUNT II
## VIOLATION OF THE TAKINGS CLAUSE OF
## THE UNITED STATES CONSTITUTION

92. Plaintiffs incorporate paragraphs 1-91 of this Complaint with the same force and effect as if fully set forth herein.

93. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Am V.*

94. The *United States Constitution* prohibits the taking of private property without just compensation. *See U.S. Cons.t, Am V.*

95. The Takings Clause of the *Fifth Amendment* to the United States Constitution, which applies to Michigan through the *Fourteenth Amendment*, provides that *"private property [shall not] be taken for public use without just compensation."*

96. The rights of the employees represented by AFSCME to receive wages, benefits and terms and conditions of employment under their collective bargaining agreement with the City constitutes private property within the meaning of the Takings Clause.

97. By the actions alleged above, Defendants, acting under color of state law, have taken the private property of Plaintiff and its members covered under the AFSCME collective bargaining agreement without just compensation, in violation of the Takings Clause.

98. This taking is without just compensation, and thus violates the *United States Constitution*.

99. This violation of the United States Constitution is actionable under *42 USC § 1983*.

## COUNT III
## VIOLATION OF THE DUE PROCESS CLAUSE OF
## THE UNITED STATES CONSTITUTION

100. Plaintiffs incorporate paragraphs 1-99 of this Complaint with the same force and effect as if fully set forth herein.

*101.* The United States Constitution provides that no state shall *"deprive any person of life, liberty, or property without due process of law." See US Const, Am XIV.*

102. The State of Michigan purportedly enacted *the Emergency Manager Laws* pursuant to its police power, which allows it to act for the benefit of the health, safety, and general welfare of Michigan's citizens.

103. AFSCME and its members have vested property rights in the benefits to which they are entitled pursuant to the collective bargaining agreement had with the City.

104. The provisions of the Act granting powers to the emergency manager with respect to termination of collective bargaining agreements bear no rational relationship to the stated purpose of the Act.

105. The provisions of the Act granting powers to an emergency manager with respect to modification or termination of a collective bargaining agreement bear no rational or reasonable relationship to a permissible legislative objective.

106. The policy judgment of the Legislature in enacting the Act is palpably arbitrary and irrational, and is supported by no facts that were known or could reasonably be assumed by the Legislature.

107. The Act improperly infringes upon the liberty and property interests of Plaintiff and its members without due process of law, in violation of the *United States Constitution.*

*108.* The Act is impermissibly vague in that it creates and delegates broad powers to the Governor, State Treasurer, and emergency manager without providing discernible standards for the triggering or exercise of such powers, in violation of the *United States Constitution.*

109. This violation of the United States Constitution is actionable under *42 USC § 1983*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue an Order:

(1) Declaring that the actions of Defendants as delineated herein have impaired the contractual rights of Plaintiffs in violation of the *Contract Clause of the United States Constitution;*

(2) Declare that the actions of Defendants delineated herein constitute a taking of private property without just compensation in violation of the *Takings Clause of the United States Constitution;*

(3) Declare that the actions of Defendants described herein deprives the Plaintiffs of their rights to due process under the *United States Constitution;*

(4) Declare that the status quo be restored by declaring all actions taken by Defendants to modify, amend, or terminate AFSCME's collective bargaining agreement void *ab initio;*

(5) Enter a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons and entities acting in concert with them, from taking any actions which authorize the modification, amendment, or termination of the AFSCME collective bargaining agreement; and enjoining Defendants from imposing reductions in pay and benefits on the City employees represented by AFSCME, and further enjoining Defendants from taking any action to implement or effectuate *Orders 24 and 26* with respect to employees represented by AFSCME;

(6) Enjoin Defendants, and all persons and entities acting in concert with them, from taking any further actions to implement or enforce the unconstitutional provisions of PA 4 or PA 436.

(7) Awarding Plaintiff the attorney fees, costs, and other expenses incurred in prosecuting this lawsuit, as well as such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Date: May 17, 2013                                             /s/ Herbert A Sanders

Herbert A. Sanders (P43031)
The Sanders Law Firm P.C.
Attorneys for Plaintiff
615 Griswold Suite 913
Detroit, MI 48226
(313) 962-0099
haslaw@earthlink.net