<u>**Exhibit 267**</u>

**Collections Management Policy, dated February 13, 2012**

WEIL:\95071879\4\45259.0007



# Detroit Institute of Arts
# Collections Management Policy

accepted JMCC 03/06/91
revised JMCC 11/06/91
revised JMCC 06/08/92
accepted BOT 09/16/92
accepted AC 09/30/92
revised JMCC 03/02/93
revised JMCC 03/09/95
accepted BOT 04/19/95
accepted AC 05/24/95
revised CC 09/03/98
accepted BD 11/18/98
accepted AC 12/03/98
revised 05/12/05
accepted CC 09/07/05
accepted BD 11/16/05
accepted AC 04/19/06
updated 10/24/2011 and 02/13/12

DIAINSP005276

# DETROIT INSTITUTE OF ARTS
# COLLECTIONS MANAGEMENT POLICY
## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 3 |
| II. | PURPOSE | 3 |
| III. | THE COLLECTIONS COMMITTEE | 4 |
| IV. | ACQUISITIONS | 4 |
| | A. General Criteria | 5 |
| | B. Acceptance Considerations | 5 |
| | C. Provenance Review | 5 |
| | D. Presentation to the Collections Committee | 8 |
| | E. Collections Committee Recommendation | 9 |
| | F. Urgent Decisions | 9 |
| | G Media Announcements of Important Acquisitions | 9 |
| | H. Registration of Approved Acquisitions | 9 |
| | I. Gift and Bequest Procedures | 9 |
| | J Purchase Procedures | 10 |
| V. | DE-ACQUISITIONING | 11 |
| | A. General Criteria | 11 |
| | B. Policy Overview | 11 |
| | C. Recommendation of Curator | 11 |
| | D. Compliance with Legal Requirements | 12 |
| | E. Manner of Disposition | 12 |
| | F. Use of Net Proceeds from Disposition | 13 |
| | G. Records | 13 |
| | H. Procedures | 13 |
| VI. | LOANS | 14 |
| | A. General Criteria | 14 |
| | B. Long-term Loans to the DIA | 15 |
| | C. Outgoing Loans | 15 |
| VII. | RECEIPT OF OBJECTS PLACED IN THE CUSTODY OF THE MUSEUM | 16 |
| | A. Short-Term Custody of Objects not for Loan or Acquisition | 16 |
| | B. Receipt of Objects for Loan and Acquisition | 17 |
| | C. Unsolicited Objects | 17 |
| VIII. | PERSONAL COLLECTIONS | 17 |
| IX. | CARE AND CONTROL OF THE COLLECTIONS | 18 |
| X. | RECORDS | 18 |
| XI. | ACCESS TO THE COLLECTIONS | 19 |
| XII. | INSURANCE AND RISK MANAGEMENT | 20 |
| XIII. | INVENTORIES | 20 |
| XIV. | DEFINED TERMS | 20 |

13-53846-tjt    Doc 7111-3    Filed 08/27/14    Entered 08/27/14 16:56:29    Page 3 of 21

DIAINSP005277



The Detroit Institute of Arts
Collections Management Policy

## I. INTRODUCTION

The Director of the Detroit Institute of Arts (the Museum) is responsible to the Mayor and the Arts Commission for the prudent management of the Collections of the Detroit Institute of Arts. Prudent management dictates the need for written policies and guidelines. This document, which is in compliance with the museum's <u>Professional Practices Policy and Guidelines,</u> is intended to fulfill that need. Recommendations for changes to this policy are encouraged at any time they are needed and may be submitted to the Director by any staff or Board member, or Commissioner. Significant changes will be recommended by the Director and reviewed by the Collections Committee (CC) for recommendation of approval by the Board of Directors or its Executive Committee (which are referred to interchangeably as BD) and the Arts Commission (AC). In unusual circumstances, waivers of procedural requirements herein may be granted by the Director or, in the Director's absence, the Chief Operating Officer (COO). Such waivers shall be documented in the files of the Registrar and the minutes of the CC.

All museum collections management procedure and policy will be based on American Association of Museums recommendations, from which the museum receives its accreditation.

## II. PURPOSE

A. The Mission of the Museum:
The DIA creates experiences that help each visitor find personal meaning in art.

B. DIA Strategic Intents:
1. Provide and promote an attractive, visitor-friendly experience
2. Provide a variety of engaging experiences and learning opportunities for all
3. Cultivate and sustain strong community partnerships
4. Promote what the Museum is and what it offers of collections, programs, and exhibitions
5. Employ the best class of technology
6. Develop and empower the best diverse staff and volunteers
7. Deliver the highest standards for caring for and developing collections
8. Create and maintain a superior Museum facility
9. Achieve and maintain long-term financial health
10. Allocate resources creatively and effectively

C. Statements defining the goals for, and assessments of, specific departmental collections are to be developed by respective Curators with the support of the Director's Office. These statements shall be submitted by the curatorial department heads to the Chief Curator for submission to the Director for approval. These shall be reviewed and updated at least every three years and be used for shaping the collections of the Museum.

DIAINSP005278

## III. THE COLLECTIONS COMMITTEE

A. <u>General Criteria</u>

The Collections Committee (CC) acts in an advisory capacity to the Board of Directors (BD) on the acquisition and de-acquisition of art objects and on collections management policy. The CC operates under procedures established by the BD with the concurrence of the Arts Commission (AC).

1. The CC shall consist of a chairperson and not fewer than two other members of the BD. Individuals who are members of the Corporation but who are not Directors may also be appointed to serve as members of the Committee.

2. At the Annual Meeting of the BD or at the first regular meeting of the BD thereafter, the Chairperson, with the approval of the BD, shall determine committee appointments.

3. If not serving as an appointed member of the CC, the BD Chairperson, the Director and such other individuals as shall be designated by the BD, shall each be an ex-officio member of the CC and shall have all rights, privileges, and responsibilities of the office of committee member, except the right to vote or to be counted for a quorum.

4. The CC will meet approximately six times per year, preferably preceding the BD meetings.

5. All actions of the CC will be by majority vote of members present. Minority opinions may be recorded in the CC minutes and reported with its recommendations to the BD. All BD acquisition and de-acquisition resolutions will be reported to the AC as informational. All collections management policy changes will be reported to the BD and AC for approval.

B. The CC will consider matters under its purview, make recommendations in regards to specific actions to the BD, and act as an advisory body to the Director on collections policy. The following will be under the purview of the CC:

1. Acquisitions by gift, bequest, purchase, transfer, and exchange, as well as objects collected in the past for the Museum and which were never formally accessioned.
2. De-acquisitions

## IV. ACQUISITIONS

A. <u>General Criteria</u>

Accessioning is the formal process used to accept and record acquisition objects into the collection. Items accessioned by the Museum into the collections, whether by gift, bequest, purchase, transfer, or exchange, are intended to be retained for the long term and are reviewed according to the following general criteria:

1. The object is consistent with the general collection goals of the Museum and the specific goals of the curatorial departments.

2. The object is useful for exhibition purposes.

3. The object possesses potential for research and scholarship.

4. The object retains its basic integrity and is in a reasonable state of preservation.

DIAINSP005279

5. The provenance of the object has been thoroughly investigated.

6. Any potential challenges to legal title have been identified and addressed.

B. <u>Acceptance Considerations</u>
   In addition to these general criteria, the following factors shall be considered:

   1. Is the purchase price/donor stated value fair and reasonable?

   2. Is the object encumbered by conditions imposed by a donor? By intellectual property rights: i.e., copyright, trademark, etc.?

   3. Is appropriate storage space available?

   4. Will acceptance of the object appear to give undue commercial endorsement?

   5. Rather than purchasing the object, might it or a similar object be obtained by gift or bequest?

C. <u>Provenance Review</u>

   The curator recommending an acquisition or loan must consider the work's provenance and make all reasonable inquiries to determine

   1. that the museum can obtain clear title if a purchase or gift is contemplated
   2. that a proposed lender has clear title at the time the loan is made

   ° <u>Provenance Guide for all Acquisitions</u>

   1. <u>Inquiry and Research</u>

      a. Museum staff shall rigorously research the provenance of a work of art prior to acquisition. Such research should include, but is not necessarily limited to, determining:

         - The ownership history of the work of art.
         - The countries in which the work of art has been located and when.
         - The exhibition history of the work of art, if any.
         - The publication history of the work of art, if any.
         - Whether any claims to ownership of the work have been made.
         - Whether the work of art appears in relevant databases of stolen art.
         - The circumstances under which the work of art is being offered to the museum.

      b. For all acquisitions, Museum staff should make a concerted effort to obtain accurate written documentation with respect to the history of the work of art, including import and export documents. For any acquisition of a single work of art over $75,000 that is coming from abroad, the Museum shall obtain all recent import and export documentation.

DIAINSP005280

     c. Museum staff shall request that sellers, donors and their representatives provide all available information and documentation, as well as appropriate warranties regarding the origins and provenance of a work of art offered for acquisition.

2. <u>Disclosure and Dissemination of Information</u>

For significant acquisitions Museum staff shall strive to publish promptly an image in print or electronic form (or representative images in the case of large groups of objects) and relevant provenance information, which will thus be readily available to an international audience.

3. <u>Legal Considerations</u>

     a. The Museum must comply with all applicable local, state, and federal U.S. laws, most notably those governing ownership and title, import and other issues critical to acquisition decisions, including the Native American Graves Protection and Repatriation Act (NAGPRA) and the Convention on Cultural Property Implementation Act (CCPIA). *Since the status of a work of art under foreign law may bear on its legal status under U.S. law, Museum staff shall review relevant foreign laws before making an acquisition.*

     b. The Museum staff and trustees may need to seek legal advice from outside counsel with regard to specific acquisitions.

4. <u>Nazi/World War II Era</u>

The Museum will be guided by the Report of the AAMD Task Force on the Spoliation of Art during the Nazi/World War II Era (1933-1945) and the AAM Guidelines Concerning the Unlawful Appropriation of Objects During the Nazi Era. In particular, the Museum will observe the following guidelines relating to the Nazi/World War II Era for gifts, bequests and purchases:

     a. Curatorial departments should independently research and ask donors (or executors in the case of bequests) and sellers of works of art to provide provenance information for works that were likely to have been in German occupied Europe between 1933 and 1945.

     b. Where information is incomplete for a gift, bequest or purchase, curatorial staff should undertake additional research prudent or necessary to resolve the Nazi-era provenance of the work. All research efforts shall be documented. In the absence of evidence of unlawful appropriation, the gift of purchase may proceed. Where there is credible evidence of unlawful appropriation without subsequent restitution, the Museum shall not acquire the work until taking further action to resolve these issues.

     c. If the Museum subsequently determines that a work in its collection was unlawfully appropriated during the Nazi era without subsequent restitution, the Museum should seek to resolve the manner with the claimant in an equitable, appropriate and mutually agree able manner.

5. <u>Warranty and Indemnification</u>

DIAINSP005281

When purchasing works of art, the Museum will seek representations and warranties from the seller that the seller has valid title and that the work of art is free from any liens, claims and encumbrances. The Museum will also seek indemnification for a full refund for the work of art in the event of any breach of warranty. These requirements apply to all purchases of $10,000 or more and to other purchases as appropriate in the judgment of the curator or Counsel's Office.

° Acquisition of Archaeological Materials and Ancient Art

1. Principles relating to the Acquisition of Archaeological Materials and Ancient Art

   a. The Museum is committed to the responsible acquisition of archaeological materials and ancient art.

   b. The Museum believes that the artistic achievements of all civilizations should be represented in art museums, which, uniquely, offer the public the opportunity to encounter works of art directly, in the context of their own and other cultures, and where these works may educate, inspire and be enjoyed by all. The interests of the public are served by art museums around the world working to preserve and interpret our shared culture.

   c. The Museum deplores the illicit and unscientific excavation of archaeological materials and ancient art from archaeological sites, the destruction or defacing of ancient monuments and the theft of works of art from individuals, museums or other repositories.

   d. The Museum is committed to the principle that all collecting be done according to the highest standards of ethical and professional practice.

   e. The Museum recognizes that some works of art for which provenance information is incomplete or unobtainable may deserve to be publicly displayed, preserved, studied and published because of their rarity, importance and aesthetic merit. The Museum affirms that art museums have an obligation with respect to such works of art which in the absence of any breach of law or of these Principles may in some cases be acquired and made accessible not only to the public and to scholars but to potential claimants as well.

   f. The Museum recognizes that acquisition decisions are legal and ethically complex and require weighing many legitimate interests and priorities that may at times conflict.

°UNESCO Convention

   a. In recognition of the November 1970 UNESCO convention on the Means of Prohibiting and Preventing the Illicit Import and Export and Transfer of Ownership of Cultural Property, the Museum shall not acquire any archaeological material or work of ancient art known to have been "stolen from a museum or religious, or secular public monument or similar institution (Article 7b of the Convention). In addition, the Museum shall not acquire any archaeological material or work of ancient art known to have been par t of an

DIAINSP005282

official archaeological excavation and removed in contravention of the laws of the country of origin.

b. The Museum shall not acquire any such works of art as described in subparagraph (2)(a) above that were removed after November 1970 regardless of any applicable statutes of limitation and notwithstanding the fact that the U. S. did not accede to the Convention until 1983.

3. Incomplete Provenance

a. Even after rigorous research, it may not be possible to obtain sufficient information on the recent history f a proposed acquisition to determine securely whether the acquisition would comply with applicable law and the Guidelines in Section VII.A. above. In such cases, the Museum shall use professional judgment in determining whether to proceed with the acquisition, recognizing that the work of art, the culture it represents, scholarship and the public may be served best through the acquisition of the work of art by a public institution dedicated to the conservation, exhibition, study and interpretation of works of art. This may be the case for example if:

- The work of art is in danger of destruction or deterioration; or
- The acquisition would make the work of art publicly accessible, providing a singular and material contribution to knowledge, as well as facilitating the reconstruction of its provenance thereby allowing possible claimants to come forward.

b. In considering such acquisitions, Museum staff shall also take into account any other factors that bear on the appropriateness of the acquisition, notably:

- Whether the work of art has been outside its probable country or countries of origin for a sufficiently long time that its acquisition would not provide a direct, material incentive to looting or illegal excavation (a minimum of ten years);
- The exhibition and publication history, if any, of the work of art.

° Information Obtained Subsequent to Acquisition

If the Museum gains information subsequent to acquisition that establishes another party's claim to a work of art acquired after June 2004 (?), even though this claim may not be enforceable under U.S. law, the Museum shall seek an equitable resolution with the other party. The Museum will consider the following options: transfer or sale of the work of art to the claimant; payment to the claimant; loan or exchange of the work of art; or retention of the work of art

D. Presentation to the Collections Committee

To present a proposal for accessioning to the CC, the Curator shall submit the appropriate documentation to the Department of the Registrar, which assures that all required documentation is in hand and is responsible for legal compliance. The Registrar will provide a list of proposed acquisitions for Director approval and CC recommendation to accept. When possible, the object should be physically present at the meeting for the CC members to view. The CC will consider the artwork and make its recommendation at the next regular meeting, unless there is a need for

13-53846-tjt   Doc 7111-3   Filed 08/27/14   Entered 08/27/14 16:56:29   Page 9 of 21

DIAINSP005283

urgency. The Curator involved, or his/her representative, must be present at this meeting to present the proposed acquisition. The Curator will secure outside opinions, if warranted. The resolution of the BD will be reported to the AC as informational.

E. <u>Collections Committee Recommendation</u>
The CC will formally recommend the acceptance or rejection of acquisitions in the following cases:

1. When the object or collection has an estimated value of $25,000 or more, the CC shall vote individually on each of these objects. The Director has the authority to accept all works of art for acquisition valued at less than $25,000 providing all other criteria are met. Such objects accepted by the Director will be reported at the next CC, BD, and AC meetings for information purposes.

2. All related-party practices shall be disclosed, and will require a special vote by the CC, for example, when a gift or purchase is offered by the artist or his/her family; when a gift is offered by an art dealer; when a gift or purchase is offered by a related-party i.e. employee of the Museum, or CC, BD, or AC member.

3. The artwork offered represents a new area of collecting.

F. <u>Urgent Decisions</u>
If an urgent decision regarding a proposed acquisition cannot wait until the next CC or BD Meeting, the Director may elect to canvass the Chairpersons of the CC and the BD and two additional CC and BD members for a vote. Members polled and the circumstances will be reported at the next set of meetings. The BD will receive the CC's recommendations. The BD's resolutions will be reported to the AC as informational. Urgent BD decisions may also be polled by obtaining the approval of the Chairperson and two additional members.

G. <u>Media Announcement of Important Objects</u>
The acquisition of an important object will be announced promptly to the media. The object will be placed on exhibition as soon as it can be safely installed, and it will be listed in the normal manner in the <u>Annual Report</u>. Important objects will be illustrated.

H. <u>Registration of Approved Accessions</u>
Original purchase documents will be sent to the Registrar, who will establish a control file for monitoring timely accessioning. The Registrar will assign permanent accession numbers immediately following approval by the BD. Upon receipt of permanent accession numbers, acquisitions will transfer from The Detroit Institute of Arts holdings to the City of Detroit collection. A report on all final dispositions will be provided to the next AC meeting and to the City as required by the Operating Agreement between the City of Detroit and Detroit Institute of Arts. The Registrar will maintain collection Files.

I. <u>Gifts and Bequests</u>
1. The Director has authority to accept all year-end gifts in advance of the next scheduled CC Meeting. Accessioning will still take place according to procedure. All such actions will be reported to the following, CC, BD, and AC.

2. Gifts from dealers, staff, Committee or Board members, and from the artist of his own work, or from the artist's family will be disclosed at the CC, and will require a special vote.

DIAINSP005284

3. When an extensive collection from one donor is offered it will be noted as such to the CC.

4. The acceptance of all gifts and bequests shall be without restriction. No commitment should be made as to exhibition, attribution, or placement of the gift. While it is the Museum's intention to accession for long-term use and preservation, no guarantee shall be made that the gift or bequest will be retained by the Museum in perpetuity. There shall be no exceptions to this policy unless any such restrictions or special provisions are recommended by the CC and approved by the BD. The Registrar must be notified, and the action of the BD will be reported to the AC as informational.

5. Objects offered as fractional gifts of undivided interest will be noted as such and require individual vote by the CC and BD.

6. "Bargain Sales" (part gift, part purchase) will be noted as such and require a signed purchase agreement and an outside written appraisal.

7. Use of the Museum's Deed of Gift is mandatory and shall be signed by the legal owner(s) or his/her duly authorized agent before the object can be accessioned. Any exception to this policy requires CC recommendation and BD approval. For bequests, a copy of the will, all codicils, and the letters testamentary should be obtained and kept in the records of the Registrar's permanent collection.

8. All gifts and bequests shall be officially acknowledged by the Director, after acceptance by the BD.

9. In case of gifts or bequests that the museum does not intend to accession, a descriptive inventory will be reported to the CC and BD twice a year by the Registrar after Curators have reviewed the objects. All such gifts or bequests will be registered with the Registrar. Within three months of arrival on premises, all gifts and bequests not intended for accession into the collection will be acknowledged as such by letter from the Curator, with copies to be filed with the Registrar, the Director, Accounting, and the Development Departments. The Museum is not obliged to accept gifts or bequeathed items that are not appropriate for its collections.

10. Under no circumstances will Museum staff give an appraisal of objects. Donors seeking values for their proposed gifts will be referred to the Art Dealers Association of America or another appropriate source for obtaining an appraisal. Donors may be advised that IRS stipulations may require them to obtain a written appraisal when filing their income taxes, and that the Museum is required by IRS regulations to sign the donor's IRS 8283 Form thereby acknowledging receipt and acceptance of the donor's gift of art. However, the Museum should never interpret IRS regulations but advise donors to seek advice from their tax preparer for current IRS rules on gifts of works of art to non-profit organizations. Upon the Museum's receipt of IRS Form 8283 for signature, a copy of the completed form, including any appraisal furnished to the IRS, will be retained by the Registrar as part of the object record. The original will be signed by the Chief Financial Officer/VP of Finance and Administration (CFO), and returned to the donor in a timely manner.

11. If a Conservation Report has been written for a proposed gift, it will be provided to the CC and BD.

DIAINSP005285

J.  <u>Purchases</u>

    1.  Funds specifically allocated to the Museum for the purchase of objects and other monies that may become available for purchases shall be maintained by the BD. The CFO with the Chief Curator and/or the VP for Collections and Exhibitions Strategies will review and assign the use of art acquisition funds, notifying the Registrar who will assure that the object is properly credited in Museum records. Acquisition funds must be in hand, designated, or promised in writing before a CC approved acquisition is presented to the BD. If it is necessary to borrow from other acquisition funds, BD will be apprised of the fund from which the money is to be borrowed and of the expected payback period. The CFO will inform the Registrar of any such arrangement.

    2.  Use of the Museum's purchase agreement is mandatory and shall be signed by the legal owner(s) or his/her duly authorized agent before the object can be presented to the BD and thereby purchased and accessioned. The language on the purchase agreement will reflect any special terms agreed upon by the Museum and the seller, such as extended time payment.

    3.  The CC and the BD will receive a brief written report/critique from the Curator on the object's significance for the Museum collection, as well as a written report on its physical condition from the Conservation Department for all purchases priced at $25,000 or above.

    4.  In certain circumstances (such as an auction) or when the CC or BD is not scheduled to meet, the Curator may request prior authorization from the Director to act within approved dollar limits. In anticipation of such an event, the Curator having first obtained a determination from the CFO of the restricted fund to be used, if any, makes a written proposal to the Director, stating the case for the proposed purchase. For amounts of $25,000 and over, if the Director concurs, he will obtain the documented approval of the Chairperson and two additional members of the CC as well as the Chairperson and two members of the BD (a total of 6). The results will be reported to the Registrar, who will proceed with the accessioning process according to policy.

## V. DE-ACQUISITIONING

A.  <u>General Criteria</u>
The Museum may deem it appropriate to de-acquisition, known as deaccession, objects from the collection. In considering objects or groups of objects, the Museum must be ever aware of its role as trustee of the collection for the benefit of the public. Objects are acquired for permanent retention in the collections and not with the thought of disposal. However, when it is deemed prudent to do so, deaccessioning may be considered. The act of deaccessioning works of art from the Museum's collections requires exceptional care, reflects a museum policy, and should preserve the integrity of the collections. Care should be taken to research, wherever possible, the original donor's intent prior to deaccessioning. Deaccessioning should be carried out with at least the same degree of prudence as is exercised in the acquisition of objects. The following Policy and Procedures apply to objects that have previously been accessioned into the Museum's collections.

B.  <u>Policy Overview</u>
Objects in the collections should be retained permanently if they continue to be useful to the purposes and activities of the Museum; if they continue to contribute to the integrity of the collections; and if they can be properly stored, preserved, and used. Objects may be deaccessioned when the above conditions no longer exist, or if it is determined that such action would ultimately

DIAINSP005286

improve or refine the collections, upon compliance with all legal requirements.

C. Recommendation of Curator
Each object being considered for deaccessioning must meet certain criteria, as evidenced by the written recommendation of the appropriate Curator(s) to the Director and the CC, based upon one or more of the following:

1. The object is not relevant to and consistent with the Museum's purposes and activities.

2. The object no longer retains its physical integrity, its identity, or its authenticity.

3. The object is an unnecessary duplicate of other objects in the collection, including objects that are repetitive of similar themes in a similar medium.

4. The object cannot be adequately cared for in a professionally acceptable manner.

D. Compliance with Legal Requirements
Objects must be deaccessioned strictly in accordance with legal requirements. Legal compliance is the responsibility of the Museum Registrar.

1. The Museum must determine that the City of Detroit and/or the Detroit Institute of Arts holds clear legal title to any object that is considered for deaccession.

2. Any mandatory restrictions on the disposition of objects (including those imposed by the donor or by law) will be determined and strictly observed. Similarly, if the objects were acquired with funds that were restricted as to their use, such restrictions shall again apply to any proceeds received upon the sale of the objects. While precatory requests (i.e., non-binding preferences of donors) should be taken into account where possible, such requests need not be followed if it is not in the best interest of the Museum to do so.

3. In the case of an object by a living artist, any applicable legal or contractual restriction on disposition should be determined and observed.

4. The donors, heirs, living artist, or other interested parties should be notified in writing by the Museum, whenever possible, if an object is to be deaccessioned.

5. Museum legal counsel upon request will assist the Registrar when necessary in order to assure full compliance with any legal requirements.

E. Manner of Disposition
The manner of disposition should be in the best interest of the Museum, the public it serves, the public trust it represents, and the scholarly and cultural communities it serves.

1. Unless section V.D.3 is applicable, or unless BD shall specifically determine that an alternative means of disposition is preferable, all dispositions shall be by sale unless V.E.3 or V.E.4 applies, and the primary objective shall be to obtain the best possible price for the object being sold.

2. Absent a specific determination to the contrary by the BD, all sales shall be at public auction.

3. Consideration may be given to placing objects in another institution where they may serve a

Page 12

DIAINSP005287

similar purpose to that for which they were originally acquired by the Museum.

4. In the case of works by a living artist, where appropriate, consideration may be given to exchange.

5. In the event that the BD shall determine that a disposition other than by sale or pursuant to sections V.D.3 or V.D.4 is appropriate, the BD shall specifically determine and the Registrar will implement the alternative means of disposition agreed upon.

6. Absent mandatory donor restrictions or requirements, Museum employees, officers, commissioners, or directors, and their immediate family members (spouse and minor children and other family members who live at home) and other members of their immediate households and controlled entities, may not be the purchasers or recipients of deaccessioned objects.

7. For any object valued by the departmental Curator(s) or the Director at more than $25,000, two disinterested outside written appraisals from qualified dealers, appraisers, or auction houses will be obtained prior to recommendation to the CC.

F. Use of Net Proceeds from Disposition

Net proceeds derived from the sale of a deaccessioned object (i.e., the proceeds of the disposition less all related expenses) shall not be used as operating funds. Such net proceeds shall be placed in the selling curatorial department's Art Acquisition Fund, in the name of the original donor, designated "for acquisition only," and shall be used only for the replenishment of the art collection, consistent with the acquisition procedures of the Museum. Objects purchased by the curatorial department, so credited, shall be labeled and identified as a "gift of (name of original donor) by exchange."

G. Records

The conditions and circumstances of the deaccession will be entered and retained permanently, by the Registrar, as part of the Museum's collection records. In addition, a file on the object will be retained, consisting of photographs, extant conservation reports, and any other information useful in promoting the advancement of scholarly knowledge about the work.

H. Procedures

The following procedures for the deaccessioning of an object from collections must be strictly adhered to:

1. The CC will act on a proposal for deaccessioning, subject to the following:

   a. The departmental Curator shall submit the proposal in writing, identifying the appropriate deaccession criteria (see section V.C. above) for the object presented. Such a request will include the written approval of the Director of the Museum, as well as the nature and manner of the proposed disposition.

   b. Each proposal shall be accompanied by a statement from the Registrar describing any special restrictions on the disposition of the object.

   c. Each proposal shall also be accompanied by a computer printout with all information including, a photograph and, where required, a conservation report.

13-53846-tjt    Doc 7111-3    Filed 08/27/14    Entered 08/27/14 16:56:29    Page 14 of 21

DIAINSP005288

2. If the deaccession is approved by the CC, the information will be included in the minutes in the same fashion as acquisitions and will be forwarded to the BD for approval and to the Museum Registrar for the permanent records of the collections. The resolution of the BD will be reported to the AC as informational.

3. The BD will approve the nature and manner of the proposed disposition, if it is by means other than public auction.

4. Assuming the object is not to be given to another institution or exchanged, and further assuming that the object is to be disposed of at public auction (i.e., that the BD has not made a specific determination to sell other than at public auction), the Director or at his request, the departmental Curator(s), with the assistance of the Registrar, will investigate the best public auction possibilities, consistent with the manner of disposition approved by the BD. The Director will set the auction reserve. After negotiation of the commission and other contractual terms of sale, the CFO or Registrar will sign or deliver the contract documents for approval and execution. The Registrar, in collaboration with the departmental Curator(s), will then oversee removal and sale. Transfers to another institution, exchanges, and dispositions other than by sale at public auction shall be accomplished in the manner approved by the BD.

5. A report on the specific manner and venue of disposition, the proceeds realized, and expenses charged to the sale will be prepared by the Registrar and submitted to the CC and BD. Any restrictions on the funds used to acquire the object will apply to the use of the net proceeds received upon the disposition.

6. Upon conclusion of the deaccession process, the circumstances of the disposition and final results will be entered and retained by the Registrar as part of the Museum's permanent records of the collections.

7. A report of all final dispositions will be provided by the Registrar to the City as required by the Operating Agreement between the City of Detroit and the Detroit Institute of Arts, approved November 26, 1997.

## VI. LOANS

A. General Criteria

The Curators of the Museum are, whenever possible, encouraged to participate in loan programs both lending to museums (referred to as DIA Outgoing Loans) and borrowing from museums and private owners (referred to as Incoming Loans). Lending provides a broader public accessibility to objects owned by the Museum, and borrowing from other collections augments and enhances the Museum's collection. All loans should be consistent with the long-term conservation of the objects and the needs of the Museum's exhibition and research programs, and are generally made at the discretion of the Director and Curators with the appropriate approvals in place. At times, for the good of the Museum, the Director may deem it necessary to limit outgoing and or incoming loans for a specific period to allow staff time for other Museum endeavors.

1. Once approved, all loans will be monitored by the Registrar. Loans will be for specified periods of time, contracted by written loan agreements signed by the borrower and lender. All loans will be fully documented and monitored for compliance of loan terms and insurance requirements according to established procedures. Written condition reports,

DIAINSP005289

including photographs, will be produced for all loans entering or leaving the Museum. All loans except those for temporary custody (90-day limit) and special exhibitions shall be contracted for no more than three year loan periods. No indefinite loans may be made to the Museum, although loan periods can be renewed at the request of the Curator and the approval of the Director. Under some circumstances, with the Museum's approval loan periods may be contracted for five-year periods.

2. All loans will be insured for their full lender stated value. The Curator will monitor insurance values of borrowed works for compliance with fair market values.

3. No repairs, alterations including un-matting or re-matting of graphic objects or conservation treatment of borrowed objects shall be undertaken without properly documented written permission of the lender. All artwork borrowed by the Museum will be afforded the same careful handling and treatment as works owned by the Museum.

4. All lenders will be informed in writing that it is their responsibility to notify the Museum of any incurred change of address or ownership. The Registrar will confirm all lender addresses every three years. In the event that the Museum is unable to locate a lender in order to extend or terminate the loan, and after all resources to find the lender and/or heirs have been exhausted, disposition of the loan will be in accordance with Michigan Public Act No. 24, Museum Disposition of Property Act.

B. Long-Term Loans
Incoming long-term loans to the DIA are recommended by the Curator, based on their artistic merit and complement to the Museum collection, with shipping and storage considerations supplied by the Registrar and approved by the Chief Curator and Director. Long-term loans to and from the Museum, should be reviewed by the Curator at the end of every loan period for possible return or conversion to accession, and for possible deaccession or recall in the case of long-term loans from the collection.

1. Incoming loans will be accepted for special exhibition. Incoming long-term loans will be accepted to fill gaps or illuminate the Museum's collection and for scholarly research.

2. The Museum should not provide free storage, conservation treatment, or insurance to lenders unless the Museum intends to display the borrowed work.

3. The Museum should take care to avoid the perception that it has an interest in displaying an object with enhancing its value as the goal.

4. Costs of storage, security, transportation, conservation, insurance, as well as the object's condition and ability to withstand travel, the lender's restrictions, and problems of provenance or copyright should all be weighed before accepting any loan.

C. Outgoing Loans
1. Outgoing loans from the Museum's collections are to be made for non-profit educational and scholarly purposes only. The Museum's name should not be connected with any commercial product endorsement.

2. Non-museum borrowers e.g., government agencies may borrow objects only for educational, not decorative, purposes and must be able to provide museum-quality

13-53846-tjt   Doc 7111-3   Filed 08/27/14   Entered 08/27/14 16:56:29   Page 16 of 21

DIAINSP005290

professional care for the objects. Under no circumstances shall objects be lent to individuals for personal use.

3. Outgoing objects will be insured by the borrower or by the Museum at the borrower's expense for fair market value. Insurance will be arranged by the Registrar. The Registrar will obtain and review all borrowers' current facilities reports prior to loan approval

4. Objects must be clean, suitable for exhibit and in stable condition unless a condition of loan is conservation treatment performed by the borrower. Any outside conservation work performed must employ methods approved by the Museum Conservation Services Laboratory. Before a loan is approved, outgoing objects will be examined by the Conservator and must be deemed able to withstand transit, climate changes, and handling. In addition, objects must be registered by accession or temporary number and photographed prior to loan.

5. The property of others in the Museum's custody may not be lent without the owner's written permission.

6. Outgoing loans from the collection should be requested six months in advance, in writing, to the Director. They are recommended or declined by the Curator, Conservator, and Registrar, and then proceed for final approval/decline by the Director and BD. All outgoing Museum loans will be posted in the BD Minutes.

## VII. RECEIPT OF OBJECTS PLACED IN THE CUSTODY OF THE MUSEUM

A. Short-Term Custody of Objects not for Loan or Acquisition
To meet the goal of complete accountability for objects in its custody, the Museum must register all objects left for identification, examination for loan or accession, conservation, or photography, as well as objects for acquisition, loan and exhibition.

1. The former group (identification, examination, conservation and photography) are objects that are generally on Museum premises for a short time. These objects are managed through the use of a Short-Term Art Pass signed by the appropriate staff member, security guard and the owner of the object being deposited. Short-Term Art Passes as well as internal departmental procedure and documentation are used to manage this group of privately owned work while on Museum premises.

   These objects include the following:
   a. Those brought to the Museum for conservation treatment

   b. Those brought to the Museum for Photographic Service

   c. Those brought to the Museum for curatorial "expertizing" and examination

   d. Those on premises for special occasions

2. Short-Term Art Pass Objects are received and released by appointment only, and are met upon entry and departure at the security station by a Museum Conservator, Curator or Photographer.

   a. A copy of the Short-Term Art Pass is maintained by the Security and Registration

DIAINSP005291

Departments and the department responsible for bringing in the privately owned object (Curatorial, Conservation, Photography)

       b. Objects in the Museum on a Short-Term Art Pass, will not be insured by the Museum. Owners of such objects shall release the Museum of liability for the objects by signing the Short-Term Art Pass.

**B.** <u>Receipt of objects for acquisition and loans</u>

All art objects coming into the custody of the Museum (not covered by Short Term Art Pass) must be received and registered on the day of their arrival by a museum registrar. These objects are managed by the use of the Museum's Deed of Gift; Purchase Agreement; DIA loan forms, and/or exhibition contracts, as well as standard registration practices and procedures.

    1. These objects include the following:

       a. Objects for gift, bequest, or purchase consideration for the Museum collection

       b. Objects on long-term loan to the Museum

       c. Objects borrowed as part of an exhibition

       d. Objects for the non-accessioned collection, i.e., study and resale

    2. Release of this category of objects is through signature of the Registrar with counter signature from the security staff on duty.

    3. The Registrar will monitor and record the movement of these objects as well as create both hard copy and electronic records on individual objects.

**C.** <u>Unsolicited Objects</u>

The Museum is not legally obligated to accept unsolicited, unwanted objects as gifts, purchases, or loans. These objects may be claimed by a curatorial department for gift, purchase, or loan, in which case the Registrar will issue a receipt to the owner, or they may be disposed of in one of the following ways:

    1. Returned to sender/owner.

    2. Transmitted to another educational institution.

    3. By Public sale.

    4. By witnessed destruction.

       a. No option will be undertaken without notice being given to the sender (when known) and a lapse of 90 days there from.

       b. Disposition of any non-accessioned object will be in accordance with the Michigan Public Act No. 24, Museum Disposition of Property Act.

## VIII. PERSONAL COLLECTIONS

Museum staff are discouraged, but not prohibited from bringing personal art objects into the Museum for use as office decoration. In not prohibiting this practice, the Museum recognizes the individual's wish to

DIAINSP005292

decorate their working spaces. To avoid security concerns staff should contact the Registrar for requirements for personal art used to decorate museum office space. All such objects must be registered as personal art used for office decoration. The Registrar will prepare a document with a short description of the objects. Staff should be prepared to provide makers/artists name, title or type of object, dimensions, materials, and a short physical description (color, shape). The Registrar will maintain records of all current and past objects, and be responsible for preparation of the appropriate paperwork to allow the staff member to remove the object from the building. Personal collections must never be intermingled with the museum art storage. Removal of personal art objects from the premises requires an Art Pass issued and signed by the Registrar and presented to and counter-signed by the Security Officer at the door of exit. These objects may not re-enter the building once they have been removed. The Museum does not accept any insurance responsibility for personal staff objects used for office decoration. See also paragraph II.B of the Professional Practices Policy and Guidelines, for discussion of limitations on personal collection.

## IX. CARE AND CONTROL OF THE COLLECTIONS

A. The assigned Curator is ultimately responsible to the Director for the care of the objects placed under his or her department or assigned area. In carrying out that responsibility, the Curator will utilize the supporting services of the administration, aides and volunteers, conservation, security, exhibition, registration, and museum technician personnel for assistance in the collections management process.

B. Any unresolved questions between Curators and other staff regarding procedures for security, conservation, registration, inventory, storage, installation, or other activities applicable to care of the collections will be referred to department heads and, if still unresolved to the Chief Curator and/or Vice President of Collections and Exhibitions Strategies and/or the Director for a decision. To provide specific guidelines, standard operating procedures will be approved by the Strategy Group and issued by the staff Vice Presidents, the COO, or the Director.

C. The Registration Department shall be responsible for packing, shipping, receiving, and releasing all art objects passing in and out of the Museum's control except for art objects in the Museum on a Short-Term Art Pass. Registration and Inventory Control personnel will act as the control point for recording art object movement within the building and in and out of the Museum by acting on established procedures. Registrars and Conservators will provide condition reports, and record photographs to safeguard the Museum's legal liability and provide basic records on collections. Registration/Inventory Control will work in concert with the curatorial and conservation staffs to ensure safe handling, moving, installation, and accurate documentation of the collection.

D. In consultation with the curatorial staff, the Conservation Department will be responsible for treating or arranging for treatment of objects in need of conservation, restoration, or fumigation. They will also advise all collections care staff on the safe handling, display, and storage requirements of art objects.

## X. RECORDS

A. The maintenance of accurate, up-to-date records on the identification, location, and condition of collection objects is a major responsibility of this Museum.

B. Any staff member in possession of such original documents establishing right and title to objects shall forward such documents to the Registrar for central filing. The Registrar shall maintain and

DIAINSP005293

make available to Curators, Conservators and others qualified, original records or copies of such, including electronic records of all accessioned or loaned objects in the custody of the Museum. The primary purpose of these records is the control and documentation of the collections. Therefore, these records should provide at least the following information, which will be recorded according to accepted standards.

1. The basic object record will include at minimum artist's name and nationality, title, object date, medium, dimensions, credit line, current location, and the Registrar's assigned number e.g., accession or temporary receipt number.

2. The legal status of the object will be noted e.g., whether the object is temporarily in the custody of the Museum, on loan, or owned by the Museum. If the object is owned, how its title was acquired e.g., by gift, bequest, purchase, transfer, or exchange, and from whom, will be noted.

3. Provenance data as needed to contribute to the establishment of the legal status of the object. Provenance research is the responsibility of the curator.

4. Responsibility for the object by department.

5. Activity of the object e.g., loans, exhibitions, conservation, movement inside or outside the Museum, or transfer of responsibility between departments.

B. Curators will maintain records on the objects within their custody. These records shall contain the object's association, provenance, and use in sufficient depth to establish its proper place and importance within its field.

C. All primary records will be safeguarded from hazards such as fire, water, smoke damage, and loss. Where possible duplicate records should be maintained. Frequent back up records will be created for computer collections information and stored in an off-site location. The following items are considered privileged items of information and will not be divulged except to those persons with a right to know:

1. Names of lenders, donors, and prior holders who have requested they remain anonymous.

2. Mailing addresses of all donors, lenders, or prior holders.

3. Storage location of objects.

4. Insurance valuation of objects.

Requests for information regarding the value of objects (purchase prices, appraisals, insurance values, etc.) will be referred through the Registrar to the Director for consideration. All guidelines outlined in part X. apply equally to hard copy and computer records.

## XI. ACCESS TO THE COLLECTIONS

As a public institution, the Museum will strive to provide the public and the press full access to the collections consistent with reasonable request, staff availability, and the security, safety, and conservation of the objects. Requests for access to the collections not on public display will be honored

13-53846-tjt    Doc 7111-3    Filed 08/27/14    Entered 08/27/14 16:56:29    Page 20 of 21

DIAINSP005294

where appropriate and coordinated with the responsible Curator.

## XII. INSURANCE AND RISK MANAGEMENT

The Museum's collections and temporary holdings (loans and works for acquisition consideration) are insured on a standard all risk fine arts policy that is reviewed and renewed every one to three years. The Department of the Registrar will administer this insurance and assure that loan agreements, receipts and all other pertinent documentation is in hand to effect coverage. In the interest of good risk management, all staff must report any damage or loss to the Registrar as soon as it is discovered. The Registrar will maintain related records and provide appropriate reports.

## XIII. INVENTORIES

The collections of the Museum will be comprehensively inventoried once every 7 to 10 years, and/or on a continuous basis due to the nature and goals of the inventory. Supplementary detailed procedures are to be published separately by the Department of the Registrar for guidance of all involved in the execution of the inventory. Each year a physical inventory will be conducted by the Collections Management Office from a list of all objects valued at $1,000,000 or more. In addition, each month, a randomly generated list of 10 objects in their care will be sent to each department. The department is required to locate each object on the list, update its value, and review the catalog data for accuracy and completeness. This requirement may be temporarily waived by the Director due to inaccessibility of storage art objects.

## XIV. DEFINED TERMS

Accessioning: the formal process used to accept and record an object into the collection.

Acquisition: an object that is the legal property of the Museum.

Collections management: the body of museum practices and procedures that allow for the prudent acquisition, documentation, care, preservation, security, loan, disposal, and accountability of objects.

Deaccessioning: the formal process used to remove an accessioned object from a collection permanently.

Inventory: the process of creating and maintaining a contemporaneous reconciled record of all objects for which the Museum is responsible.

Inventory control: the ability of the Museum to give in a timely manner the accurate status, identifying number, and location of all objects for which it is responsible.

Loan: temporary transfer of objects from the Museum, or temporary transfer of objects to the Museum for stated purposes. This transfer does not involve a change in ownership.

Physical Inventory: the recording of objects physically present in a particular location or physically present in several locations subject to the control of the Museum.

Reconciliation: comparing physical inventory with available documentation in order to make an informed judgment on the status and extent of objects actually under the control of the Museum.

Records: documentation that physically identifies, describes the legal status of, and historically traces the use, care, and activities of objects in the Museum's control.

Registration: overall procedures for officially recording and monitoring object transactions, including their acquisition, accession, loan, movement, care, shipment, deaccession, and so forth.

Related Party: Museum employees, past employees, officers, commissioners, or directors and their immediate family members (spouse and minor children and other family members who live at home) and other members of their immediate households and controlled entities.

Verification: the periodic checking of the accuracy of records. Verification includes matching the location on record with the actual location of the object.

DIAINSP005295