against lot No. 45, roll 661, S. S. Alfred, between Rivard and Russell, for the reason stated in foregoing communication, new walk to be laid and new bill to follow.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9. Nays—None.

---

**From the Department of Public Works.**
To the Honorable the Common Council:

Gentlemen—This Department recommends that the City Treasurer be directed to accept $26.40 in payment of sidewalk assessment—roll 632—W. S. Seyburn, between Goethe and Charlevoix, lot 7, and cancel the balance on account of overcharge.

Respectfully submitted,
GEO. ENGEL,
Commissioner.

By Councilman Nagel:

Resolved, That, on recommendation of the Department of Public Works, the City Treasurer be, and is hereby directed to accept the sum of $26.40 in payment of sidewalk assessment on lot 7—roll 632—W. S. Seyburn, between Goethe and Charlevoix, for the reason stated in the foregoing communication.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9. Nays—None.

---

**From the Department of Public Works.**
To the Honorable the Common Council:

Gentlemen—This Department recommends that the City Treasurer be directed to cancel sidewalk assessment on E. roll 667, against lot 16—S. S. Milwaukee, between Dubois and Chene, on account of error in making assessment—no work having been done on this lot.

Respectfully submitted,
GEO. ENGEL,
Commissioner.

By Councilman Nagel:

Resolved, That, on recommendation of the Department of Public Works, the City Treasurer be, and is hereby directed to cancel sidewalk assessment above mentioned for the reason stated.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9. Nays—None.

---

**From the Department of Public Works.**
To the Honorable the Common Council:

Gentlemen—This Department is making the alterations in the City Treasurer's office for which $2,500 was allowed under item 1-K, Public Building Fund. In order to facilitate the handling of pay rolls, I herewith request your Honorable Body to instruct the Controller to transfer above amount to item 1-B, General Repairs to City Hall.

Respectfully submitted,
GEO. ENGEL,
Commissioner.

By Councilman Nagel:

Resolved, That, the City Controller be, and is hereby authorized and directed to make the proper entries on his books to effect the transfer of $2,500 from item 1-K, Alterations City Treasurer's office to the credit of an account in the same fund known as 1-B, General Repairs to City Hall.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9. Nays—None.

---

**From the Department of Public Works.**
To the Honorable the Common Council:

Gentlemen: It has been deemed advisable to provide steel grating for window and steel entrance door for the detention room adjacent to Recorder's Court Room. These improvements were urgently requested by the Recorder's Court Judges and the lowest estimate received for same was $377.00. As no appropriation was asked for in the budget to cover this, I would ask that your Honorable Body instruct the Controller to transfer the sum from the Contingent Fund to the credit of General Repairs to Municipal Court Bldg.

Respectfully submitted,
GEO. ENGEL,
Commissioner.

By Councilman Nagel:

Resolved, That the City Controller be, and is hereby authorized and directed to make the proper entries on his books to effect the transfer of $377.00 from the Contingent Fund to the credit of an account in the Public Building Fund, known as General Repairs to M. C. Building, for the purpose mentioned in the foregoing communication.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9. Nays—None.

---

**From the Department of Public Works**
To the Honorable the Common Council:

Gentlemen: The Department of Public Works respectfully reports that the paving of the following streets and alleys is fully completed, and has been examined by the Department of Public Works, found to be in accordance with the contracts and specifications and accepted for the city.

There is due for intersections as follows:

Alexandrine—Dubois to McDougall ................................$3,984.86
Harper—Montclair to Connors 2,156.17
Northfield—Warren to Tireman 3,600.23
Alley—1107.
Alley—1078.

Respectfully submitted,
GEO. ENGEL,
Commissioner.

Accepted and by unanimous consent, Councilman Nagel offered the following:

Whereas, It appears from a communication from the Department of Public Works, that the paving of

Alexandrine—Dubois to McDougall:
Harper—Montclair to Connors:
Northfield—Warren to Tireman
Alley—1107;
Alley—1078;

has been duly completed; and, Whereas, the paving of said streets and alleys has been found to be in accordance with the contracts and specifications for the same and has been accepted by the Commissioner of Public Works.

Therefore, Resolved, That the said paving within the limits above mentioned be, and is hereby accepted; and

Resolved, That the City Controller be, and is hereby authorized to draw his warrant on the City Treasurer in payment of the intersections, and further

Resolved, That the City Controller be, and he is hereby, directed to prepare street paving bonds in accordance with the provisions of Sections 6-10-11-12-13 of the Chapter V, Title VI of the Charter of the City of Detroit. Such bonds to bear interest at the rate of 5 per cent. per annum.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

## From the Board of Education.

To the Honorable the Common Council:

Gentlemen: The Board of Education of the City of Detroit respectfully petitions your Honorable Body to grant the additional amount of money necessary for the construction of an addition to the Alger School building, viz. $52,715.28.

Bids were considered for this work at a meeting held November 13th. last and it was found that the total amount of the lowest combination proposal is $132,715.28. The appropriation as allowed by the Common Council and Board of Estimates amounts to $80,-000.00.

It is the desire of the Board of Education to proceed with the addition to this building at the earliest practical date and the Superintendent of Schools and the Business Manager were authorized to confer with your Honorable Body for the additional amount required.

Thanking you for your favorable consideration and prompt attention, I am,

Yours respectfully,

CHAS. A. GADD,
Business Manager.

By Councilman Nagel:

Resolved, That the Controller be and he is hereby authorized and directed to take from any available funds remaining in the city treasury the sum of $52,715.28, and place the same to the credit of the Board of Education of the City of Detroit, for the construction of an addition to the Alger School Building, the said amount being the difference between appropriation allowed for said work of $80,000, and the lowest bid received, the said sum of $52,715.28 to be placed in the estimates on the Board of Education for the ensuing fiscal year as a deficit and repaid when allowed as part of its budget

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.

Nays—None.

## From the Board of Assessors.

To the Honorable the Common Council:

Gentlemen—We respectfully request your Honorable Body to approve the cancellation, reduction or refund of general city and personal tax assessment for the year 1919, in accordance with the resolutions hereinafter submitted, said action being recommended on account of erroneous assessment on the property named in said resolutions.

Respectfully submitted,

F. C. BAKER,
President Board of Assessors.

Accepted, and on leave the following resolutions were offered:

By Councilman Nagel:

Resolved, That the City Treasurer be and he is hereby authorized and directed to cancel the personal tax assessment levied against the person or firms hereinafter mentioned for the year 1919, to-wit:

Wakel Bros.; valuation $400; amount $7.42; year 1919; ward 19; folio 158.

Detroit Miniature Lamp Co.; valuation $100,000.00; amount $1,855.27; year 1919; ward 3; folio 6.

Bryant & Marsh Elec. Co.; valuation $50,000.00; amount $927.64; year 1919; ward 2; folio 13.

And further Resolved, That the City Treasurer be and he is hereby authorized and directed to cancel the general city taxes levied against Lots 361 and 362—Brown and Babcock's Sub. (W. 12. Fol. 1382.) for the year 1919, valuation $800.00, taxes $14.84, said property being owned by Mrs. Ellen Decant, old soldiers exemption, (2420); and further:

Resolved, That the City Treasurer be and he is hereby authorized and directed to cancel the general city taxes levied against Out Lots 19 and 18, Sub. of P. C. 724. (W. 21. Fol. 1699.) for the year 1919. Valuation $30,400.00, taxes $564.00, said property being owned by City of Detroit. (Recreation Commission). And further:

Resolved, That the City Treasurer be and he is hereby authorized and directed to accept the sum of $7.79 on valuation of $120.00 from H. Nicklowitch in full settlement of the general city taxes levied against Lot. 195. Heathville Park—being Wilson, Paul & Farley's Subd'n. (W. 9. Fol. 1022) for the year 1919, being a reduction of $300.00 on building. And further:

Resolved, That the vote whereby resolution accompanying report of Board of Assessors authorizing City Treasurer to accept the sum of $333.95 from Elizabeth B. Schumm, being reduction of general city taxes for year 1919, against E. ½ Lot 10 and W. 12.05 ft. Lot 11, Sub. of the Cass Farm was adopted November 11th, 1919. (J. C. C. P. 1725,) be and the same is hereby rescinded on account of error in the amount assessed. And further:

Resolved, That the City Treasurer be and he is hereby authorized and directed to accept the sum of $587.20 on valuation of $31,650.00 in full settlement of the general city taxes levied against. E. ½ Lot 10 and W. 12.05 ft. Lot 11 Sub. of the Cass Farm. (W. 2 Fol. 199) for the year 1919, being a reduction of $7,000.00 for building.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.

Nays—None.

## From Department of Purchases and Supplies.

To the Honorable, the Common Council:

Gentlemen—This Department has accepted proposals for furnishing the Department of Parks and Boulevards with one (1) Reverse Vento Drying Tumbler, to be equipped in accordance with our specifications. The following companies submitted bids:

The American Laundry Machinery Co., Chicago, Illinois.

The Troy Laundry Machinery Co., Chicago, Illinois.

The writer respectfully recommends that the proposal of the American Laundry Machinery Company be accepted, and machinery in question be purchased from them in the sum of $2,876.50.

For your information, this machinery will be used in connection with the Bath House Laundry at Belle Isle, and is a rather large piece of equipment.

The American Laundry Machinery Company submitted the lowest figures.

Respectfully,
JOSEPH A. MARTIN,
Commissioner.

General order for Friday.

## From Department of Purchases and Supplies.

To the Honorable, the Common Council:

Gentlemen—This Department advertised Department of Public Works requirement for Thirty Thousand (30,000) Granite Paving Blocks 4x5½ inches in width; 11 to 11½ inches in length and 5 to 5¾ inches in depth. Blocks to be in strict accordance with specifications on file in this office.

The Wisconsin Granite Company of Chicago, Ill., submitted the only formal proposal, and the following quotations were offered:

For each and every block delivered f. o. b. cars, Detroit, Mich., Eastern or Western Yard, a charge of 14 cents per piece will be made. Said quotation is based on present freight rates of 13 cents per hundred pounds from Wisconsin quarries to Detroit, and an increase in freight will increase quotation accordingly.

The writer respectfully requests your recommendation that the purchase of material in question be made in accordance with proposal and specification herein referred to.

Respectfully,
JOSEPH A. MARTIN,
Commissioner.

General order for Friday.

## From the Department of Purchases & Supplies.

To the Honorable the Common Council:

Gentlemen—This Department advertised Public Lighting Commission's requirement for Electrical Switches in accordance with specifications, and the General Electric Company of Michigan submitted the only bid, which follows:

1 500-amp. 15,000-volt, double pole, double throw K-12 oil circuit breaker equipment, etc., for $423.

1 300-amp. type K-12 oil circuit breaker for $230.

3 200-amp. type K-5 oil circuit breaker for $234.

2 200-amp. type K-5 oil circuit breaker for $101.

2 200-amp. type K-5 oil circuit breaker for $113.30.

Total for all, $1,101.30.

For your information, above proposal is acceptable to the Public Lighting Commission, and the Commissioner of Purchases and Supplies therefore recommends that he be authorized to purchase in accordance with proposal and specifications.

Respectfully.
DEPT. PURCHASES AND SUPPLIES,
JOSEPH A. MARTIN,
Commissioner.

General Order for Friday.

## From the Detroit Museum of Art.

To the Honorable the Common Council:

Gentlemen—We find our present petty cash, amounting to $25.00, wholly inadequate to take care of the bills which need immediate payment, and I write to ask your Honorable Body to increase the amount to $100.

Thanking you for your consideration of this request, believe me

Respectfully yours,
CLYDE H. BURROUGHS,
Secretary.

By Councilman Nagel:

Resolved, That the Controller be and he is hereby authorized and directed to take from the Contingent or other available funds, the sum of $75.00 and place same to the credit of the Detroit Institute of Art, formerly Detroit Museum of Art, as an addition to the Petty Cash Account, making the total available for sundry payments $100.00.

Adopted as follows:

Yeas—Councilmen: Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President.—9.

Nays—None.

## From the Board of Fire Commissioners.

To the Honorable the Common Council:

Gentlemen—Your Honorable Committee of the Whole, through City Clerk Lindsay, referred to this Board, under date of Nov. 6th, the petition of Robert H. Hart, et al, to have an alarm box placed at the corner of Woodland and Cardoni avenues.

The above mentioned communication was submitted at a meeting of the Board on the 10th instant, at which time it was referred to the Superintendent of Fire Alarm Telegraph for report.

At the Board meeting held yesterday it was ordered that "The Superintendent of Telegraph be directed to install a fire alarm box in the vicinity mentioned."

The box will be installed in the very near future.

Respectfully,
GEORGE J. FINN,
Secretary.

Accepted and placed on file.

## From the Public Lighting Commission.

To the Honorable the Common Council:

Gentlemen—In the construction of the new sewer to be built in Bates street it is necessary, at the foot of said street, to remove all conduits and cables of the public lighting plant.

Some time ago an estimate of the cost of such work was submitted to the Department of Public Works in the amount of $8,476.

Since then, revised plans of the engineers in charge appear to make it possible to reduce the amount of work necessary in the removal of the conduits and cables.

This department has received a request from the Department of Public Works to proceed with the removal of the conduits and cables; but no provision has been made to cover the expense of such work. Whereas, the budget of the public lighting plant does not provide any funds for such purpose, we respectfully request your Honorable Body to instruct the City Controller to transfer the sum of Five Thousand Dollars ($5,000.00) from some available funds to cover the expense of the work required at once.

It is impossible, at present, to determine how much more of an expense will be involved in the final completion of this work.

Respectfully submitted,
PUBLIC LIGHTING COMMISSION,
F. MISTERSKY,
General Superintendent.

General Order for Tuesday.

### From the Department of Public Welfare.

To the Honorable the Common Council:
Gentlemen—The extraordinary increase in house rentals has depleted the Cash Fund of the Department of Public Welfare, which is used for payment of house rent for recipients of relief. We, therefore, respectfully ask that your Honorable Body provide the sum of $7,500.00 to meet the demands on this fund for the remainder of the current fiscal year.

Respectfully submitted,
HARRY H. PRENZLAUER,
Secretary.
General order for Tuesday.

### From the Department of Public Welfare.

To the Honorable the Common Council:
Gentlemen—Since the busy season on the local Farmers' markets is about over, the Public Welfare Commission desire to begin as soon as possible with the construction of an enclosed shed and the necessary outbuildings and paving on the Eastern Market, for which an initial appropriation of $35,-000.00 was provided in the budget of the current fiscal year.

In submitting an estimate for the cost of extensions and improvements to the Eastern Farmers' Market the Commission contemplated expending $50,000.00 for an additional open shed between Adelaide, Division, Russell and Market Streets. However, in allowing the appropriation, your Honorable Body apportioned $35,000.00 for the Eastern Market and $15,000.00 for the Western Market. The operation of the markets the past few months has fully demonstrated to the Commission that a shed which can be enclosed in winter is required, as well as outbuildings, such as scale house, comfort station, incinerator, etc. Considerable paving will also have to be done as it will be necessary to pave the space outside of the shed. The preliminary estimate for the cost of the contemplated improvements is as follows:

| | |
|---|---|
| Enclosed shed | $72,000.00 |
| Outbuildings | 24,500.00 |
| Paving | 28,500.00 |
| Total | $125,000.00 |

As the market grounds are taxed to their full capacity during the summer, it is essential that the work be done during the winter and early spring, therefore, we would respectfully ask that your Honorable Body transfer the sum of $10,000.00 from Activity No. 502, Western Market, to Activity No. 501, Eastern Market. This will leave $5,000.00 in the Western Market Fund for certain needed improvements and increase the available amount under the Eastern Market fund to $45,000.00. With this amount we can arrange for the necessary steel for the shed, so that it can be fabricated during the winter and ready to put in place in the early spring. The balance of the total amount required will be placed in the budget for the ensuing fiscal year.

Respectfully submitted,
HARRY H. PRENZLAUER,
Secretary.
General order for Tuesday.

### From the Recorder's Court.

To the Honorable the Common Council:
Gentlemen—I respectfully report to

your Honorable Body that the fines collected for the week ending November 13th, 1919, for Violation of the City Ordinances amount to Eleven hundred and forty-nine dollars and twenty-five cents ($1,149.25), which amount has been deposited with the City Treasurer, and his receipt therefor taken.

Yours truly,
CHARLES W. CASGRAIN,
Clerk of the Recorder's Court.
Accepted and placed on file.

### From the Recorder's Court.

To the Honorable the Common Council:
Gentlemen—I respectfully report to your Honorable Body that a Jury duly impanelled in the Recorder's Court, in the matter of opening Malta Street from Lumley Avenue to Freer Avenue, where not already open, as a public street and highway, rendered a verdict in favor of said opening, Friday, October 24th, 1919, which was confirmed by the Court Tuesday, November 11th, 1919.

In accordance with the statute, I herewith transmit a certified copy of said verdict, and of the judgment of confirmation.

Respectfully,
CHARLES W. CASGRAIN,
Clerk.
Accepted and placed on file.

### From the Recorder's Court.

To the Honorable the Common Council:
Gentlemen—I respectfully report to your Honorable body that a jury duly impanelled in the Recorder's Court in the matter of opening Hillsboro Avenue from Beechwood Avenue to Northfield Avenue, where not already opened, as a public street and highway, rendered a verdict in favor of said opening Wednesday, Nov. 12th, 1919, which was confirmed by the Court Saturday, November 15th, 1919.

In accordance with the statute, I herewith transmit a certified copy of said verdict and of the judgment of confirmation.

Respectfully,
CHAS. W. CASGRAIN,
Clerk.
Accepted and placed on file.

### From the Recorder's Court.

To the Honorable the Common Council:
Gentlemen—I respectfully report to your Honorable body that a jury duly impanelled in the Recorder's Court in the matter of opening Oregon Avenue from Colfax Avenue to Epworth Boulevard, where not already opened, as a public street and highway, rendered a verdict in favor of said opening Thursday, November 6th, 1919, which was confirmed by the Court Saturday, November 15th, 1919.

In accordance with the statute, I herewith transmit a certified copy of said verdict and of the judgment of confirmation.

Respectfully,
CHAS. W. CASGRAIN,
Clerk.
Accepted and placed on file.

### From the City Plan Commission.

To the Honorable the Common Council:
Gentlemen—At the request of his Honor, the Mayor, to investigate the

desirability of substituting Lot 7, of the L. H. Paddock Subdivision, for original Playground No. 12, approved by this Commission on September 30, 1919, and ordered condemned by your Honorable Body October 1, 1919, as per attached blueprint marked No. 12, the following action has been taken by this Commission.

It is recommended that Lots 1 to 7, inclusive, of the L. H. Paddock Subdivision, located in the block bounded by Warren, Maybury Grand, Putnam and Lawton Avenues, to be designated as "Playground No. 12-A," be substituted for original Playground No. 12, although the Recreation Commission does not favor this change, it is recommended by this Commission on account of housing conditions, valuations, etc.; and the fact that we believe it is practically as desirable located and because only six houses would be taken, whereas eleven houses would be taken if original Playground No. 12 were condemned.

The size of substitute Playground is 1.21 acres with a total assessed valuation of $17,800, whereas original Playground No. 12 is approximately 1.03 acres in size, with an assessed valuation of $29,340. The two proposed playgrounds are separated by only approximately one-eighth of a mile, and being the only playground in this vicinity, it is believed that the substitute location is practically as desirable as original site.

It is for the purpose of securing additional acreage and frontage on Maybury Grand, that in addition to Lot 7, the taking of Lots 1 to 6, inclusive, is recommended, as Lot 7 is not only inadequate in size, but is an interior lot, opening only on alleys, which is an undesirable feature in a playground; proposed taking indicated on attached blueprint marked No. 12-A.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.
General order for Friday.

**From the City Plan Commission.**
To the Honorable the Common Council:
Gentlemen—The proposed ordinance presented to your Honorable Body by Councilman Nagel to provide for the placing of West Grand Boulevard, south of Michigan Avenue into a residential zone, referred to this Commission by your Honorable Body for approval was taken under consideration and the following resolution was passed in connection therewith:

"Resolved," That the City Plan Commission approve the above described proposed ordinance as amended by the Corporation Counsel of the City of Detroit, signed copy hereto appended, and made a part of this resolution."

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.
By Councilman Nagel:

AN ORDINANCE to provide for the zoning and protection of certain residential areas within the City of Detroit and to prevent the location, building, construction or maintenance of certain designated objectionable businesses in certain areas; to provide for the enforcement of said ordinance; and to provide for a penalty for the violation of the terms hereof.

IT IS HEREBY ORDAINED BY THE

PEOPLE OF THE CITY OF DETROIT:

Section 1. That whenever sixty per cent (60%) or more of the frontage in any particular block of any street, avenue, boulevard or public place within the City of Detroit is used exclusively for residential purposes (including the grounds thereof) it shall be deemed and considered a residential district and is hereby placed in a residential zone.

Section 2. From and after the date of the enactment of this ordinance it shall be unlawful for any person, or persons, firm or corporation to locate, build, construct or maintain any public garage, livery, boarding or sales stables, blacksmith shops, foundries, machine shops, laundries, billboards, gasoline-filling station, automobile battery or accessory service station or other business which is or may be dangerous, offensive, or detrimental to the public health, morals, comfort, safety or general welfare, of the City of Detroit, in any block in which sixty per cent (60%) of the frontage of said block is used exclusively for residence purposes, including the grounds thereof.

Section 3. The word "block" as used in this ordinance is hereby defined to mean the total frontage abutting on one side of any given street, avenue, boulevard or public place between any two adjacent intersecting streets, avenues, boulevards or public places within the City of Detroit.

Section 4. If any clause, sentence, paragraph or part of this ordinance shall for any reason be adjudged by any court of competent jurisdiction, to be invalid, such judgment shall not affect, impair or invalidate the remainder of this ordinance, but shall be confined in its operation to the clause, sentence, or paragraph or part thereof directly involved in the controversy in which such judgment shall have been rendered.

Section 5. The Commissioner of Buildings and Safety Engineering, the Commissioner of Parks and Boulevards, the Commissioner of Public Works, or any other officer or Department of the City of Detroit having jurisdiction over the issuance of permits for the erection of buildings or other structures within the City of Detroit shall not issue such permits for the erection of such buildings or structures within said zoned district where same will be contrary to the terms hereof.

Section 6. Any person, firm or corporation violating the terms of this ordinance, shall upon conviction thereof, be punishable by a fine of not to exceed Three Hundred Dollars, or fine and imprisonment within the Detroit House of Correction for a period of not to exceed Ninety days, or both, such fine and imprisonment within the discretion of the Court. Each day which any person, firm or corporation violates the terms hereof shall be construed to be a separate offense and shall be punishable as such.

Section 7. This ordinance is hereby declared to be one immediately necessary for the preservation of the public peace, health and safety and is hereby given immediate effect.

Accepted and placed on file.

### From the Department of Buildings and Safety Engineering.

To the Honorable the Common Council:
Gentlemen—I would respectfully request that you authorize the change of classification of "Messenger" in the Bureau of Buildings at $720.00 a year, to that of "Laborer."

This is more in accord with the character of work done by this employee of the Department.

Yours very truly,
J. C. McCABE,
Commissioner.

General order for Tuesday.

### From Department of Buildings and Safety Engineering

To the Honorable the Common Council:
Gentlemen—In the course of the business of the Department it has been found necessary to make refunds for permits, which for some reason or another, are not used under the regulations. This involves a communication to the Common Council; the printing of the same, and referring the matter again to the Controller for his disposition.

It has been recommended by the Controller that your Honorable Body authorize the use of $100 Imprest Cash, in order that this Department may make the necessary refunds, take receipts therefor, and make proper returns to Controller's office. This will be more direct, less expensive and more satisfactory in every regard.

I respectfully recommend that your Honorable Body authorize the foregoing.

Respectfully submitted,
JOHN C. McCABE,
Commissioner.

General order for Tuesday.

### From the Clerk.

That he presented such portion of the proceedings of the last regular session as is required by the Charter to be so presented, to His Honor the Mayor for approval on the 15th inst. and that they were approved on the 18th inst. excepting the motion of Councilman Nagel for the adoption of the Majority Report on Street Railway matters, which he did not approve.

Placed on file.

Also that he presented an ordinance entitled "An ordinance to amend Sec. 7, Chap. 204, of the compiled ordinances, relative to the impounding of stray dogs," which was approved on the 18th inst.

Also, an ordinance entitled an ordinance to amend an ordinance entitled "An ordinance to change the name of Sunset Place, etc.," which was approved on the 18th inst.

Placed on file.

### From the Clerk.

To the Honorable the Common Council:
Gentlemen—I beg to advise your Honorable Body that I am in receipt of the following communication from the Young Men's Christian Association.

Respectfully submitted,
RICHARD LINDSAY,
City Clerk.

Following is the communication referred to:

To the Honorable the Common Council:
Gentlemen—The board of directors of the Detroit Young Men's Christian Association on behalf of the International Committee of the Association extends to your Honorable Body an earnest invitation to visit the Hut erected on Washington boulevard, through your courtesy, and which will house the exhibit in connection with the coming convention, on Tuesday morning, November 18th at 11 o'clock.

Dr. John R. Mott will be present and will personally explain to you the various exhibits which we are sure are of more than ordinary interest.

Trusting that you will favor us with the acceptance of this invitation, we are

Sincerely yours,
BOARD OF DIRECTORS,
Detroit Young Men's Christian Association.
A. G. STUDER,
General Secretary.

Invitation accepted.

### From the Clerk.

To the Honorable the Common Council:
Gentlemen—I beg to advise your Honorable Body, that I am in receipt of the following communication from Henry B. Joy.

Respectfully submitted,
RICHARD LINDSAY,
City Clerk.

Following is the communication referred to:

To the Honorable the Common Council:
Gentlemen—In the mail this morning I am in receipt of additional signatures to the petition which was filed with the Common Council yesterday by the "Rides-at-Cost" Committee.

Will you please add to the list of names, therefore, the following:

| Number Employed | Name, Title and Company |
|---|---|
| 6,500 | Roy D. Chapin, President, Hudson Motor Car Company. |
| 1,600 | Chas. D. Hastings, Vice-Pres. Hupp Motor Car Corp. |
| 500 | J. C. Widman, President, J. C. Widman & Company |
| 115 | Albert B. Lowrie, Sec'y. & Treas. Lowrie & Robinson Lumber Co. |
| 150 | Geo. H. Clippert, President, Geo. H. Clippert & Bro. Brick Co. |
| 600 | W. C. Rowley, Vice-Pres., Federal Motor Truck Co. |

Very sincerely yours,
HENRY B. JOY,

For Rides at Cost Committee.

Also add:

| Number Employed | Name, Title and Company |
|---|---|
| | C. C. Hanch, President, Chalmers Motor Car Co. |
| 500 | George R. Anthone, Manager, American Radiator Co. |
| | Terrence O'Connor, American Radiator Co. |
| | E. A. Foster, American Radiator Co. |
| | George J. Brown, American Radiator Co. |
| | M. F. O'Connor, American Radiator Co. |
| | N. P. Dessert, American Radiator Co. |

C. R. Wilson, President,
C. R. Wilson Body Co.
Frederick B. Smith, President,
Wolverine Mfg. Co.
Very truly yours,
(S) E. CROWLEY.

Accepted and placed on file.

**From the Clerk.**

To the Honorable the Common Council:
Gentlemen: I beg to advise your Honorable Body that agreement of Parsons Manufacturing Co., filed pursuant to provisions of resolution adopted March 31, 1919, vacating public alley west of Bellevue avenue, and adjoining lots in Heffron's sub., has been filed in this office, and same having been approved by the Corporation Counsel, I respectfully recommend the adoption of the following resolution:
Respectfully submitted,
RICHARD LINDSAY,
City Clerk.
By Councilman Nagel:
Resolved, That agreement waiving grade separation damages filed by Parsons Manufacturing Co., pursuant to resolution adopted March 31, 1919, vacating the public alley, 10 feet wide, first west of and parallel to Bellevue avenue, between north line of lot 77, and north line of vacated Frederick street, be extended, and the same is hereby approved.
Adopted as follows:
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

**From the Clerk.**

To the Honorable the Common Council
Gentlemen: I beg to advise your Honorable Body that I am in receipt of the following communication from Postmaster Wm. J. Nagel.
Respectfully submitted,
RICHARD LINDSAY,
City Clerk.
Following is the communication referred to:
To the Honorable the Common Council:
Gentlemen: I am hoping to be able to secure the use during the Christmas Holidays of the frame buildings, which have been recently erected by the Y. M. C. A. on the parkway of Washington Blvd., opposite the Hotel Statler. I have hunted the city over for a suitable place to handle parcel post mail during the Holidays and have not been able to find anything that is crowded to its very limit. We must, therefore, obtain additional room outside the Post Office Building or else we shall not be able to give the people of Detroit the service, which they are entitled to during the Holidays.
The Buildings erected by the Y. M. C. A., for use during the Y. M. C. A. convention beginning this week, would provide the additional room, which we need so badly, in order to properly and adequately handle the Holiday business.
In the interest, therefore, of the City of Detroit, I beg to request that your Honorable Body grant permission to use the said Y. M. C. A. Buildings on Washington Blvd., stand until January 10th, 1920.
Respectfully,
WM. J. NAGEL,
Postmaster.
By THOMAS F. CASHIN,
Assistant Postmaster.
General order for Tuesday.

**From the Clerk.**

To the Honorable the Common Council:
Gentlemen: I beg to inform you that petitions since the last session and recommend their reference to the general order as follows:
Respectfully,
RICHARD LINDSAY,
City Clerk.

**GENERAL ORDER FOR MONDAY.**
2705—Grace Hospital—Rezoning ordinance.
2706—War Dept. (E. M. Markham), Notice of hearing in matter of swing bridge across River Rouge.
2713—Ernest W. Bande, opening of Burnside street.
2714—McCord Mfg. Co., steam pipe across Riopelle.
2715—Chicago Pneumatic Tool Co., to cut curb on Amsterdam.
2716—The Detroit News, to place serve-self boxes at street intersections.
2717—Walker Bros. Catering Co., areaways front and rear of building at 535 Woodward ave.
2718—J. W. Brennan, to construct two sidetrack layouts Mt. Elliott.

**GENERAL ORDER FOR TUESDAY.**
2707—National Surety Co., recancellation of bond for overhead beams, Steers Engineering Co.
2719—Louise Stevens, asking release from surety bond to operate taxicab.

**GENERAL ORDER FOR THURSDAY.**
2708—Alois Ryznar, Re Playfield No. 1, bounded by VanDyke, Center Line, Georgia and Kern Aves.
2709—O'Rourke Engr. Const. Co., to erect temporary shelter on Russell Street to be used for employees as wash room.
2710—J. E. Baldwin, et al, requesting that Standard Oil and other oil companies have tanks sealed and amount stamped on it.
2711—Mrs. J. J. Roney, asking to have Det. Creamery permit to place hood over alley revoked.
2712—John A. Ferguson, to change name of Stanford ave.
2771—Of Jno. D. Deagle et al, protesting against construction of factory buildings on Epworth Boulevard.

**GENERAL ORDER FOR FRIDAY.**
2720—Harry D. Chapman, et al, for removal of car tracks on E. Lafayette.

**REFERRED TO DEPT. OF PUBLIC WORKS—Permit Division.**
2721—Sol Berman, to maintain show case front 90 Woodward Ave.
2722—John Nicholas, to occupy street with push cart to sell merchandise.
2723—Marjan Jaszczynski, gasoline tank and pump, 1282 Chene.
2724—John Czajkowski, gasoline pump, 1498 Jos. Campau.
2725—Myer Mossok, gasoline pump, 268 Canfield avenue, east.
2726—John H. Barach, pop corn machine on sidewalk front 815 Kercheval.
2727—Sam Milldosian, gasoline pump at curb, front of 175 Solvay.
2728—G. A. Harris, gasoline pump and tank at 1246 Fort west.
2729—S. E. Sallan, for sign on marquise of Sallan Building.
2770—Packard Motor Car Co., for permit to construct tunnel in Bellevue avenue.

## REFERRED TO DEPT. OF PUBLIC Works—Paving Division.

2730—Mrs. John Crane, et al, to pave private alley extending from Lawrence avenue to public alley between Lawrence and Burlingame.

2731—Woodward and 7-Mile Ass'n, to cinderize streets north of 7-Mile Road.

2732—Mary Trombly, to pave Gratiot ave., between D. U. R. right-of-way and David Trombly Estate, Sub. No. 2.

2733—Mary Trombly, to pave Rosemary avenue, from Gratiot to E. L. of Roseberry avenue.

## REFERRED TO DEPT. OF PUBLIC WORKS—Sewer Division.

2734—Mary Trombly, et al, for lateral sewer in alley bounded by Connors Creek Road, Gratiot and Verdun.

2735—Mary Trombly, et al, for lateral sewer in alley bounded by W. L. D. Trombly Est., Gratiot avenue, Verdun and Glenfield.

2736—Mary Trombly, et al, for lateral sewer in alley bounded by Gratiot, Roseberry, Promenade and alley north of Rosemary.

2737—G. W. Drennan, for lateral sewer in alley bounded by Connors Creek Road, E. L. Parkview Heights Sub., Verdun and Glenfield.

## REFERRED TO BOARD OF ASSESSORS.

2738—Mullet Junk Co., cancellation 1919 personal tax.

2739—A. E. Daas, cancellation 1918 personal tax.

2740—John Hartwig, adjustment 1919 personal tax.

2741—Grow Ins. Agency, adjustment 1919 personal tax.

2742—James T. Currie, Pres. Tilden Saw Co., adjustment 1919 personal tax

2743—Roy L. Manning, adjustment 1919 personal tax.

2744—Frederick Corset Shop, adjustment 1919 personal taxes.

2745—Gordon L. Parker, adjustment 1919 personal taxes.

2746—A. G. Wood, adjustment 1919 personal tax

2747—M. L. Stern, adjustment 1919 personal tax.

2748—Max Donowski, adjustment 1919 personal tax.

2749—Martin Bros. Co., adjustment 1919 personal tax.

2750—Mrs. Helen O'Donnell, adjustment 1919 personal taxes.

2751—Jacobsen Corp., adjustment 1919 personal taxes.

2752—Donner Steel Co., adjustment 1919 personal tax.

2753—Hayward Goodale Tire Co., adjustment 1919 personal tax.

2754—W. M. Bascott, adjustment 1919 personal taxes

2755—Rev. C. F. Kutshinski, adjustment 1919 personal taxes.

2756—D. Dillon, adjustment 1919 personal taxes.

2757—J. Harvey Norris, adjustment 1919 personal tax.

2758—S. W. Brown, adjustment 1919 personal tax.

2759—Mrs. E. Bennett, adjustment 1919 personal tax.

## REFERRED TO CITY TREASURER.

2760—G. O. Preissner, reduction special sidewalk tax.

2761—Leon Glowny, refund of penalty and interest 1918 city tax.

## REFERRED TO PUBLIC WELFARE COMMISSION.

2762—Ellen Corbett, cancellation 1919 general city taxes.

2763—F. Kongeal, cancellation 1919 general city tax.

2764—Mrs. Mary Ufford, cancellation 1919 general city taxes.

## REFERRED TO CORPORATION COUNSEL.

2765—Major N. J. Boots, claim for damage to automobile.

2766—N. McIntosh, claim for damage to automobile.

2767—Otto Grunewald, claim for damage to automobile.

## REFERRED TO DEPT. OF BUILDINGS.

2768—Broadway Strand Theater Co., sign under marquise at 35 Broadway.

## REFERRED TO PUBLIC LIGHTING COMMISSION.

2769—Andrew A. Winter, for street lights on Hillsboro ave.

## REPORTS OF COMMITTEE OF THE WHOLE.

WEDNESDAY, NOV. 12, 1919.

Chairman Bielman submitted the following reports of Committee of the Whole for above date and recommended their adoption:

### Engine House Site.

To the Honorable the Common Council:
Gentlemen—Your Committee of the Whole has had under consideration communication from the Board of Fire Commissioners, requesting approval of purchase of Lot 966, Robert Oakman's Twelfth St. sub., on west side of Twelfth St., corner La Belle avenue. Your committee finds that this lot adjoins property now owned by the Commission on which it is planned to erect an engine house and believing the acquirement of the additional lot necessary for the requirements of the department, recommend that the Corporation Counsel be directed to prepare the proper resolution for the condemnation of said lot 966, for use of Board of Fire Commissioners, and submit the same to this body for approval.

Respectfully submitted,
C. F. BIELMAN,
Chairman.

Accepted and adopted as follows:
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

### Contracts.

To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred communication from the Department of Public Works requesting the transfer of $3,460 from available funds to General Repairs to Buildings for the purpose of carrying out contract for purchase of revolving doors to replace defective ones in Municipal Court Building. The appropriation for revolving doors being a cut item in the department's estimates for current fiscal year, and Corporation Counsel having been directed to proceed against the contractor and bondsmen to recover for said defective doors, we recommend that the Controller be directed to advance the necessary

amount from available funds, to be reimbursed from judgment against contractor or bondsmen, or from an item to be inserted in next year's budget to cover deficit. We therefore offer the following resolution.

Respectfully submitted,
C. F. BIELMAN,
Chairman.

By Councilman Bielman:
Resolved, That the Controller be and he is hereby authorized and directed to advance from any available funds, the sum of $3,460 and place same to the credit of the Department of Public Works for the purchase of two revolving doors for Municipal Court Building, to be repaid from judgment secured against contractor furnishing defective doors, which the above are to replace, or failing in that, the amount herein authorized to be advanced, to be inserted by the Department of Public Works as a deficit in its estimates for the ensuing fiscal year.

Adopted as follows:
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.
Nays—None.

FRIDAY, NOVEMBER 14, 1919.
Chairman Castator submitted the following reports of Committee of the Whole for above date and recommended their adoption:

Public Library Commission.
To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred the communication from the Public Library Commission requesting the assignment to them of vacant lot 60x100 feet on the southwest corner of Mack and Montclair avenues, acquired by the City in the annexation of St. Clair Heights, in consideration of which transfer they will release to the city a library site acquired by the Commission in 1916, situated at corner of Mack and Seminole avenues. This site at Mack and Montclair being more adaptable for library purposes, recommend that the request be granted, and offer the following resolution:

Respectfully submitted,
FRED W. CASTATOR,
Chairman.

By Councilman Castator:
Resolved, That vacant property situated at the southwest corner of Mack and Montclair avenues, being 60x100 feet, acquired by the City of Detroit by the annexation of St. Clair Heights, be and the same is hereby transferred to the Detroit Library Commission for library purposes, providing said commission releases to the city site acquired for library purposes at the corner of Mack and Seminole avenues, 160x151½ feet in area; and be it further—

Resolved, That the Corporation Counsel be and he is hereby directed to prepare the necessary legal proceedings to effect the exchange of property above referred to.

Adopted as follows:
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

Traffic and Police Regulation
To the Honorable the Common Council:
Gentlemen—To your Committee of

the Whole was referred petition of American Loan & Trust Co., et al. (2687), asking that ordinance which reserves the north side of Larned between Griswold and Shelby streets for use of expressmen be rescinded, so that the space may be made available for the parking of automobiles. Your committee after an investigation of the matter, recommend that the petition be denied.

Respectfully submitted,
FRED W. CASTATOR,
Chairman.

Accepted and adopted.

MONDAY, NOVEMBER 17, 1919.
Chairman Littlefield submitted the following reports of Committee of the Whole for above date and recommended their adoption:

Streets.
To the Honorable the Common Council:
Gentlemen—Your Committee of the Whole has had under consideration the petitions of Wayne County & Home Savings Bank (2667) for permit to construct areas over lot line south east corner Warren and Cadillac Aves., of Walker Brothers Catering Company (2717) for permit to construct areas in front and rear of building at 535 Woodward Avenues; of Woodward Theatre Company (2665) for permit to erect a marquise in front of theatre 117-119 Gratiot Avenue; of Oakman Theatre Company (2694) for permit to erect marquise on theatre Oakman Boulevard and Leslie Street; of Standard Savings & Loan Association (2695) for permit to construct marquise on building north side of Larned Street between Griswold and Woodward; of Cadillac Motor Car Company (2662) for permit to construct five sewer lines and two pipe tunnels across Clark Avenue; of DuFoe-Eustice Inc. (2693) for permission to build temporary structure 1164 Jefferson Ave. West; of Standard Oil Company (2696) for permit to cut curb on east side Stanton Avenue between West Grand Boulevard and alley immediately south for a space of 50 feet north of said alley and 52 feet south of said Boulevard; of Red Front Tire Company (2697) for permit to install gasoline pump and tank in front of 2451 West Fort Street; of Chicago Pneumatic Tool Company (2715) for permit to cut curb 40 feet N. S. of Amsterdam between 2nd and 3rd; of J. W. Brennan (2718) to construct two side-track lay-outs leading into property corner Mt. Elliott and Jerome Avenues, and of McCord Manufacturing Company for permission to lay steam pipe across Riopelle Street. Your Committee have carefully investigated said requests and after consultation with the Department of Public Works, we recommend that same be granted, subject to restrictions stated in the attached resolutions.

Respectfully submitted,
SHERMAN LITTLEFIELD,
Chairman.

Accepted and on leave the following resolutions were offered:

By Councilman Littlefield:
Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to the Wayne County & Home Savings Bank to construct areas under sidewalk over lot line, southeast corner of

13-53846-tjt   Doc 7111-9   Filed 08/27/14   Entered 08/27/14 16:56:29   Page 9 of 21

Warren and Cadillac avenues, in accordance with sketch approved by the Committee of the Whole.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said areas and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Walker Brothers Catering Company to construct areas in front of building at 535 Woodward avenue, provided said areas are constructed five feet from present curb line in accordance with plans submitted to and approved by said department.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said areas and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

It is further provided that the request for area in rear of building be denied.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Woodward Theater Company for per-

mit to construct marquise on building 117-119 Gratiot avenue.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said marquise and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Oakman Theatre Co. for permit to erect marquise on theatre, Oakman Blvd. and Leslie street.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said marquise and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.

Nays—None.

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Standard Savings & Loan Association for permit to construct marquise on building N. S. Larned St. between Griswold and Woodward;

Provided, Said marquise shall not extend further than the railing now in place; and further

Provided, City not to waive any rights in making this grant.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said marquise and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for levying of a fee to be hereafter determined upon, for the occupancy of public property, that the said grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.

Nays—None.

---

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Cadillac Motor Car Company to construct five sewer lines and two pipe tunnels across Clark Avenue.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said sewer lines and pipe tunnels and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

---

By Councilman Littlefield:

Resolved, That the Department of Buildings and Safety Engineering be and is hereby authorized and directed to issue a permit to DuRoe-Eustice Co. to construct temporary structure;

Provided, That said work shall be performed under the supervision of the Department of Buildings and Safety Engineering, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted

expressly on the condition that said temporary structure and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Buildings and Safety Engineering is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed; that same shall not be permitted to remain for a longer period than one year from date of the adoption of this resolution.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

---

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Standard Oil Company to cut curb on the E. S. Stanton Avenue, between West Grand Boulevard and alley immediately south for a space of 50 feet north of said alley and 52 feet south of said Boulevard.

Provided, That said work shall be performed under the supervision of the Department of Public Works and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said curb and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further,

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property; that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.

Nays—None.

---

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Red Front Tire Co., to install a gasoline tank of 1,000 gallons capacity in front of premises at 2451 West Fort Street;

Provided, That no work is to be done on the construction of said gasoline tank by the above mentioned grantee until said grantee shall file with the City Clerk a good and sufficient bond in the sum of $5,000.00 to indemnify, save and keep harmless the City of Detroit, from any and all costs, damages or expense of any kind whatsoever, which may be suffered by the City of

Detroit or which it may be put to or which may accrue against it by charging to or recovering from said City from or by reason of any acts or things done under or by authority or permission herein granted. Said bond shall be kept in force throughout the life of the permit and shall, if necessary, be renewed whenever so directed by resolution of the Common Council. Said grantee hereinbefore mentioned and to whom said permit is granted shall also submit to and file with the Department of Safety Engineering detailed plans and specifications of the proposed gasoline tank and other Apparatus. Said plans and specifications are to be approved by said Department and provided, the person, firm or corporation mentioned in this resolution shall obtain a permit from the Department of Safety Engineering for the installation of this tank or tanks under an ordinance regulating the same and obtain a permit required by said ordinance for the use of inflammable liquids as provided for in the ordinance regulating inflammable liquids, and further;

Provided, That all of said work shall be done under the supervision of said last-mentioned Department and further provided that all work of excavating and refilling shall be done under the supervision of the Department of Public Works.

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said gasoline tank and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council.

Adopted as follows:

Yeas—Councilmen Blelman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President.—9.

Nays—None.

By Councilman Littlefield:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Chicago Pneumatic Tool Company to cut 40 ft. of curb N. S. Amsterdam, between Second and Third Avenues;

Provided, That said work shall be performed under the supervision of the Department of Public Works and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said curb and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further.

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Blelman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President.—9.

Nays—None.

By Councilman Littlefield:

Whereas J. W. Brennan of the City of Detroit, Michigan, owning or occupying the private property located in said City of Detroit, described as follows: Corner of Mt. Elliot and Jerome Avenues, has petitioned the Common Council of said City for authority and permission to connect said private property with the Detroit Terminal Railroad by side tracks or spur tracks and to construct, maintain and operate such side track or spur track in or upon that public street or highway of the City of Detroit known as Mt. Elliott Avenue from said private property across said street or highway to said Detroit Terminal Railroad;

Therefore, Resolved, That subject to the provisions and requirements of Chapter 310 of the Compiled Ordinances of the City of Detroit of the year 1912, the Department of Public Works is hereby authorized and directed to issue a permit to said J. W. Brennan to connect said private property with said Railroad in the manner above mentioned.

Provided, That said work of constructing said side tracks or spur tracks shall be performed under the supervision and inspection of the Department of Public Works at the cost of said company and in accordance with plans submitted to and approved by said Department; and further

Provided, That no rights in the public streets shall be considered waived by said city by the granting of this permission, which is granted and accepted expressly on the conditions that said side track or spur track and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of the Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon for the occupancy of public property, that the grantee herein will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accepts said permit on the conditions hereby imposed; and further

Provided, That this grant shall not become operative until there shall be reported to this body by the Commissioner of Public Works the fact that the above named grantee has fully complied with Section 2 of said Chapter 310; and further

Provided, That this grant shall be terminated and without force or effect if said report from said Commissioner of Public Works be not made to this body within thirty days from the approval hereof; and further

Provided, That this grant is made upon the further express condition that the grantee herein within fifteen days from the filing of said report contemplated to be made by the Commissioner of Public Works, shall file with the City Clerk an agreement to plank, or pave, with granite block, as directed by the Commissioner of Public Works, the roadway between the rails of said side tracks or spur tracks, and for a distance of eighteen inches outside thereof and to at all times during the life of this grant, repair, pave, re-pave or re-surface the roadway between the rails of said side tracks or spur tracks and for a distance of eighteen inches

outside thereof whenever so directed by said Commissioner of Public Works which agreement shall be further conditioned that the said grantee shall indemnify and save harmless the City of Detroit from any and all damages growing out of the defective condition of so much of said roadway as it is obligated hereunder to maintain and that the failure of the Commissioner of Public Works to give to said grantee notice of such defective condition shall in no event operate to defeat the right of the City of Detroit to be indemnified and saved harmless from any and all such damages, and which agreement shall contain a stipulation that the privilege hereby granted shall be automatically terminated by any change of grade which may effect the relevant physical situation obtaining at the date hereof; the City Clerk shall not accept this agreement unless it is accompanied by or has in it incorporated a good and sufficient bond in the sum of $5,000, guaranteeing to the City of Detroit the performance by the grantee herein, of the conditions herein imposed, and shall also contain a waiver of all grade separation damages that may be suffered by said grantee in connection with said side track or spur track herein granted.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

By Councilman Littlefield:
Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to McCord Mfg. Company for permission to lay steam pipe across Riopelle St.

Provided, That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said steam pipe and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

Streets.
To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred the petitions of C. Banak (2625) for permission to dock boat foot of Woodward Ave., of David R. Germain (2663) for permission to place newspaper vending machines around city; of Dave Gordon (264) to place weighing machine on the corner of Library Avenue and Monroe; of C.

V. Galazin (2666) for free air line at 1079 St. Aubin; of Edw. Dumas (2698) to place sign between sidewalk and curb at 328 Dix Avenue; and of The Detroit News for permission to place serve-self boxes at various street intersections for their papers. After consultation with the Department of Public Works your Committee recommends that the above petitions be denied.

Respectfully submitted,
SHERMAN LITTLEFIELD,
Chairman.
Accepted and adopted.

TUESDAY, NOVEMBER 18, 1919.
Chairman Nagel submitted the following reports of Committee of the Whole for above date, and recommended their adoption:

Finance.
To the Honorable the Common Council:
Gentlemen—Your Committee of the Whole has had under consideration communication from the Department of Public Welfare requesting an additional appropriation of $860.00 per month for the remainder of the current fiscal year so as to permit the employment of 1 assistant supervisor, 2 visiting housekeepers and 4 social workers in the Social Service Department. After consultation with the Superintendent of the Department, your Committee concurs in the recommendations for increased activities in social service work as provided for in the charter. We therefore submit the following resolution.

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

By Councilman Nagel:
Resolved, That the Department of Public Welfare be and it is hereby authorized and directed to employ the following additional workers in the Social Service Department:

| | Per Annum | Per Mo. |
|---|---|---|
| 1 Assistant Supervisor | $1,800 | $150 |
| 2 Visiting Housekeepers | 1,600 | 250 |
| 4 Social Workers | 1,380 | 460 |

and the Controller is hereby directed to honor payrolls submitted by said department for said additional employes; and be it further

Resolved, That the Controller be and he is hereby authorized and directed to take from any available funds the sum of $860.00 per month to Juy 1, 1920, and place same to the credit of the Department of Public Welfare for the purpose of paying said salaries to the end of the current fiscal year.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

Contracts.
To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred communication from the Department of Health, requesting confirmation of contract with Stratton & Snyder, architects, to make all plans and specifications, obtain proposals, draw contracts subject to the direction of the Board of Health and furnish supervision for the construction of a group of buildings to be located on site near Northville, Mich., to be known as Detroit Municipal Sanatorium, at a cost not to exceed

$700,000, including architects' fees. Your committee after consultation with the Department of Health, recommends that said contract be approved and confirmed, and offer the folowing resolution.

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

By Councilman Nagel:
Resolved, That the contract entered into by the Board of Health with Stratton & Snyder, architects, for the making of plans, specifications, etc., for the construction of the Detroit Municipal Sanatorium near Northville, Mich., be and the same is hereby approved and confirmed.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

### Vacation of Alley.

To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred the petition of Albert A. Albrecht (2690), for the vacation of public alley first south of and parallel to Illinois street between the alleys east of Brush Blvd. and west of Beaubien street. Petitioner being the owner of all the lots abutting on said alley; we recommend that the petition be granted, and offer the following resolution.

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

By Councilman Nagel:
Resolved, That "All of the public alley, 20 feet wide, first south of and parallel to Illinois street and lying between the east line of the public alley first east of Brush boulevard and the west line of the public alley first west of Beaubien street, and adjoining lots 83 and 85 (both inclusive) and lots 97 to 99 (both inclusive), of Miller and Wilcox subdivision of out lots Nos. 182 and 184 of the sub. of the St. Beaubien Farm as recorded in Liber 1, page 219 of Deeds of Wayne County Records," be and the same is hereby vacated.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—9.
Nays—None.

### Vacation of Alley.

To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred the petition of St. Columba Church (Charles L. Ramsay) (2411), for the vacation of part of the east and west alley first north of Jefferson between Manistique and Philip avenues. Petitioners being the owners of all property abutting on the alley requested to be vacated, and desiring to utilize all of their property in one building operation; we recommend that the petition be granted, and offer the following resolution:

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

By Councilman Nagel:
Resolved, That "all that part of the public alley, 18 feet wide, first north of and parallel to Jefferson avenue and lying between the west line of Manistique avenue and the east line of the public alley extended southerly and first

west thereof and adjoining lots 140-143, both inclusive, of Fox Creek sub., part of P. C. 120 as recorded in Liber 25, page 73 of Plats, of Wayne County Records," be and the same is hereby vacated;

Provided, That petitioner pays into the City Treasury, within 30 days from the date of the adoption of this resolution, whatever expense may have been incurred by the city in the matter of paving, construction of sidewalks, crosswalks, etc., as may be certified by the City Engineer; and further

Provided, That by reason of the vacation of the above described alley, the City of Detroit does not waive any rights in the lateral sewer located in the alley aforesaid, and shall at all times have the right to enter upon the premises if found necessary on account of the sewer located therein, to repair same, and provided further, that petitioners shall not build over the above described alley without first securing the approval of the Board of Health.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

### Plats.

To the Honorable the Common Council:
Gentlemen—To your Committee of the Whole was referred the petition of George Jerome (2543), for the approval of plat of Mayflower sub. Said plat having been approved by City Plan Commission and City Engineer, we recommend that the petition be granted.

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

By Councilman Nagel:
Resolved, That the "Plat of the Mayflower, sub. being a subdivision of part of the N. E. ¼ of N. E. ¼ of Sec. 9, T. 1 S. R. 12 E., City of Detroit, Wayne County, Michigan," be and the same is hereby accepted and approved, and the Commissioner of Public Works is hereby directed to sign and approve said plat.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

### Street Openings.

To the Honorable the Common Council:
Gentlemen—Your Committee of the Whole begs to report that it has had under consideration the petition of Charles Schuck, et al. (2597), requesting that the proposed plan for opening Wildemere avenue from Maidstone avenue north be altered to use only vacant lots for the purpose of eliminating expense of condemning buildings now constructed in the line of said street opening. The opening now being in court, your committee recommends that no change in the opening of Wildemere avenue as originally approved be made, and that further consideration of said petition be indefinitely postponed.

Respectfully submitted,
JOHN C. NAGEL,
Chairman.

Accepted and adopted.

By Councilman Castator:

AN ORDINANCE defining the authority and duties of the Sealer of Weights and Measures, to regulate the sale of coal, coke, wood, ice and other commodities, the manufacture of bread, the use of bottles and jars in the sale and delivery of milk and cream, the sale and delivery of sand and gravel, and creating the position of Measurer of Leather.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

ARTICLE I.

Section. 1. There shall be in and for the City of Detroit an officer, to be denominated the Sealer of Weights and Measures, who shall be appointed by the Police Commissioner from the members of the Metropolitan Police Department; and the person so appointed shall have the power to perform all the duties pertaining to his office, and shall, during the time he is directed by said Commissioner to perform said duties, take charge of such standards and apparatus as shall be furnished to his department as standards for the city of Detroit, and he shall maintain such standards in good order and take all necessary precaution for their safe keeping.

The Sealer of Weights and Measures shall keep a true record of all of his official acts.

Section 2. The word "measure" or "measures" as used in this ordinance shall be construed to mean any device or devices used to ascertain the weight, size, quantity, value, or dimensions of any liquids, solids, or other articles.

Section 3. The Sealer of Weights and Measures and his assistants shall possess jurisdiction, have power, and it shall be their duty, within the City of Detroit:

(a) To inspect and test the accuracy of all measures of every kind, and tools and appliances connected therewith, used and employed within the City to determine the weight, size, value, quantity or dimensions of any liquids, solids, or other articles offered for sale, purchase, hire, or reward;

(b) To re-weigh or re-measure any package put up ready for sale or delivery, or any amount of any commodity whatsoever offered for sale or sold by weight or measure, or which is commonly so sold, at any time before the actual delivery of such package or amount of commodity to the buyer;

(c) To enter, without formal warrant, for the purposes herein specified and in the general performance of his official duties, any stand, place, building, or premises, or to stop any wagon or conveyance in or upon which any measure or measures or weighed or measured packages or amounts of commodity are kept or maintained or carried for the purpose of testing, inspecting, correcting and sealing or condemning such

measure or measures, or re-weighing or re-measuring such packages or amount of commodities, either upon his own initiative or at the request of any citizen.

Section 4. The Sealer of Weights and Measures shall inspect, test, try, and may correct, if need be, any measure or measures either in the place of business where the same are used or at his office or other place as in his best judgment he deems most advisable.

(a) Once annually and oftener, if in his judgment such inspection is warranted;

(b) Whenever any measure or measures are installed, renewed, or altered in any specified stand, store, conveyance, or establishment;

(c) Whenever a request to examine any particular measure or measures is filed in his office.

Section 5. It shall be the duty of the Sealer of Weights and Measures to have and to keep a general supervision over all sales of commodities of whatever character and kind in the city, including ice; and to so enforce the laws of the State and the ordinances of the City that fraud may be eliminated, insofar as this is possible.

Section 6. All measures that are tested by the Sealer of Weights and Measures and found to conform to the legal standards shall be marked with the letter "D" and the last two figures of the year, or in such order and signal manner as he may deem advisable. The Sealer shall, in addition, upon request, give to each person, firm or corporation for whom any measures have been tested, a certificate, properly dated, showing in detail for what the same is given and the result of his test, and a duplicate thereof shall be kept on file at his office. No fee shall be collected for inspecting measures and no person shall so mark or issue such a certificate for any measure unless previously authorized by said Sealer of Weights and Measures to do so.

Section 7. The Sealer of Weights and Measures is hereby empowered to seize and destroy any measure or measures other than provided herein or which are designed to defraud any person, or to condemn the same and order the same to be repaired within ten days, if in his best judgment repair is possible. The owner may not use the measure or measures of which such disposition is made until it has been sealed, nor remove or permit to be removed, any tag placed thereon by the inspector, and he may not dispose of the measure or measures in any way but must hold the same at the disposal of the Inspector.

Section 8. It shall be unlawful for the said Sealer or his assistants to act as agent for or sell any measure or measures or to

have any pecuniary interest in connection with same, or to charge or receive any article of value for repairing any measure or measures.

Section 9. When fruit, vegetables, berries, or produce of like character are sold, offered, or exposed for sale anywhere in the city of Detroit in baskets, boxes, crates, barrels or other receptacles, they shall be sold, offered, or exposed for sale in uniform sized baskets, boxes, crates, barrels or other receptacles containing one-half pint, one pint, one quart, two quarts, three quarts, four quarts, eight quarts, twelve quarts, sixteen quarts, twenty-four quarts, thirty-two quarts, one and one-half bushel, two bushel, or standard sized barrels and subdivisions thereof established by the Congress of the United States, and said receptacles shall be evenly and uniformly filled throughout. Provided, that the standard for so-called Climax Baskets used in the sale and delivery of Grapes and other Fruits and Vegetables shall be two quarts, four quarts, twelve quarts, and no others, as established by the United States Standard Container Act, approved August 31, 1916.

Section 10. No person shall sell or attempt to sell within the limits of the city of Detroit any goods, wares, merchandise, commodity, or produce of any kind whatsoever, including ice, without first having correctly weighed or measured the same or determined by numerical count the net weight or measure or amount of commodity ordered or purchased, and only such commodities may be sold by numerical count as cannot well be sold by weight or measure.

Provided, that this section shall not apply to commodities sold, offered, or exposed for sale in compliance with Section 8 of this act, or to commodities in packages prepared and put up for sale and so marked as to plainly indicate the true net weight or measure or their contents.

Provided further, that whenever any fruits, vegetables, berries, or produce of like character or any goods, wares, merchandise, commodity, or produce of any kind whatsoever, which are commonly sold by weight or measure, are sold at retail in any other manner than that prescribed in Section 9 of this ordinance, the same shall be sold by avoirdupois net weight or lineal measure.

Section 11. No person shall have in his possession any measure designed to defraud any person, or condemned measure or measures, or any weighing machine which does not balance, or any measure or measures which have not been sealed, or sell or offer to sell any measure or measures which have not been approved by the Sealer of Weights and Measures, or give

any false or insufficient weight or measure of commodities, or sell or exchange any commodity, including ice, of less weight or measure than it is represented to be by the seller or of less weight or measure than ordered by the purchaser unless the latter is informed of such shortage, or take false or overweight or measure of commodities when in the custom of trade the buyer or his agent does the weighing or measuring, or sell any commodity in a manner contrary to law.

Section 12. No person shall in any manner whatsoever impersonate or hinder the Sealer of Weights and Measures or his assistants in the performance of their official duties.

## ARTICLE II.
### Regulation for the Sale of Coal and Coke.

Section 1. No person shall sell or deliver any coal or coke within the limits of the City of Detroit unless there shall be delivered to the person in charge of the wagon or conveyance used in delivering such coal or coke a certificate duly signed by the person selling the same, and showing the weight of the coal or coke purporting to be delivered, the weight of the wagon or conveyance used in such delivery, the total weight of the coal or coke and conveyance, and the name of the purchaser.

Section 2. No person in charge of the wagon or conveyance used in delivering coal or coke, to whom the certificate mentioned in Section 1 has been delivered, shall neglect or refuse upon demand to deliver such certificate to the Sealer of Weights and Measures of said city, or to his assistant, or to any person designated by them, or to the purchaser of the coke or coal being delivered; and when said officers, persons so designated, or such purchaser shall demand that the weight shown by such certificate be verified, it shall be the duty of the person delivering such coal or coke to convey the same forthwith to some public scale of the city or to any private scale in the city where the owner thereof shall consent to such use, and to permit the verifying of the weight shown, and shall, after delivery of such coal or coke, return forthwith the wagon or conveyance used to the same scale and verify the weight of such wagon or conveyance.

When coal or coke is sold in baskets or containers holding less than one hundred weight, it shall not be sold in quantities less than seventy pounds in the case of anthracite coal, sixty pounds in case of bituminous coal, and thirty-five pounds in the case of coke, provided that when sold in less than one hundred-weight lots not more than twice the minimum quantity above set forth shall be sold at any one time to any one person.

# ARTICLE III.
## Regulation for the Sale of Wood.

Section 1. Cord wood exposed for sale, sold or delivered within the City of Detroit shall be either four, three, or two feet, sixteen, fourteen, or twelve inches long, and the cord of wood being closely laid together shall measure a quantity equal to a cord of eight feet in length, four in width, and four in height.

Section 2. No person, firm or corporation shall sell or deliver any wood as mentioned in Section 1 of this ordinance unless there shall be delivered to the person in charge of the conveyance used in delivering such wood a certificate showing the amount of wood purporting to be delivered, the name and address of the person selling the same, and the name of the purchaser.

Section 3. No person in charge of a conveyance used in delivering wood to whom the certificate mentioned in Section 2 has been delivered shall neglect or refuse upon demand to deliver such certificate to the Sealer of Weights and Measures of said city or to his assistants, or to any person designated by him, or to the purchaser of the wood being delivered.

# ARTICLE IV.
## Manufacturers of Bread.

Section 1. It shall be not lawful for any person to use or carry on the trade or business of a baker, either in person or by employing any other person to use or carry on the said trade or business, under his or her direction, or for his or her profit or benefit, within said city, without having obtained from the Common Council a permit for that purpose.

Section 2. That every person desiring to carry on said trade or business shall make application in writing to the Mayor of said city for a license, setting forth the street or number of the place of business in which he or she intends to carry on said trade or business, and the Mayor shall have the power to grant such license upon the payment of Fifty Cents and executing a bond to the City of Detroit in the penal sum of $10.00, with one or more sufficient sureties, conditioned upon the faithful observance of the provisions of the City Charter and of this ordinance, and the said license shall be in force until the second Tuesday in March next ensuing.

Section 3. The Mayor shall record in a book to be kept in his office for public inspection, the name, street and number of place of business of each person to whom he shall issue a license, as provided in Section 2 of this ordinance.

Section 4. All bread of every description manufactured by the bakers for sale in the City of Detroit shall be made of good and wholesome flour or meal into loaves of one pound, One and a Half Pounds, two pounds, Three Pounds, four pounds, Eight Pounds, avoirdupois net weight and in no other manner. Provided, however, that nothing herecontained shall be construed to prohibit any baker or any dealer in bread from cutting any standard loaf and selling any part of the same by actual net weight, and no person, firm or corporation shall make for sale, sell, or expose for sale any bread that shall be deficient in weight: Provided, always, that such deficiency in the weight of such bread shall be determined by the Sealer of Weights and Measures or his assistants, by weighing or causing to be weighed in their presence within eight hours after the same shall have been baked, sold or exposed for sale, twenty-five loaves, if available, and the average net weight of the loaves so weighed shall not be less than the stated weight for the size under investigation; and provided further, that when any allowance to the weight shall be claimed on account of any bread having been baked, sold, or exposed for sale more than eight hours as aforesaid, the burden of proof in respect to the time when the same shall have been baked, sold, or exposed for sale shall devolve upon the defendant or baker of such bread.

# ARTICLE V.
## Regulating the Use of Bottles and Jars in the Sale and Delivery of Milk and Cream.

Section 1. Every person, firm or corporation using bottles or jars for the sale and delivery of milk and cream within the limits of the City of Detroit, except as hereinafter provided, shall use only such bottles and jars as shall have clearly blown or otherwise plainly marked on the side the true capacity of the same and in addition thereto the word "Sealed" and on the side or bottom of any such bottle or jar the name, initials, or trademark of the manufacturer thereof with a designating number, which designating number shall be furnished by the Sealer of Weights and Measures upon application, upon the filing by any such manufacturer of a bond to the City of Detroit in the penal sum of One Thousand Dollars ($1,000.00); the same to be approved as to sufficiency by the said Sealer of Weights and Measures. The condition of such bond shall be that the person, firm or corporation receiving such designating number from the Sealer of Weights and Measures shall comply with all of the rules and regulations set forth in this ordinance.

Section 2. It shall be the duty of the Sealer of Weights and Measures of the City of Detroit

to keep a record of the bonds furnished, the designating number, the names of the manufacturers to whom numbers are furnished.

Section 3. Any person, firm or corporation who sells bottles or jars to be used in the sale or delivery of milk or cream within the City of Detroit, who does not comply with the provision herein as to capacity and markings shall be deemed guilty of having violated the provisions of this ordinance and the Sealer of Weights and Measures is hereby authorized to withdraw the designating number secured by such manufacturer and to make complaint in the Recorder's Court of the City of Detroit for violation thereof and to take such steps as may become necessary to default the bond furnished by such manufacturer and make collection thereon.

Section 4. This ordinance shall not be construed as in any way prohibiting the use of any bottle or jar which has been duly tested and approved by the Sealer of Weights and Measures as to capacity.

## ARTICLE VI.
### Controlling the Sale and Delivery of Sand and Gravel

Section 1. Every person, firm or corporation engaged in the sale or delivery of sand and gravel within the limits of the City of Detroit shall deliver with each load a certificate signed by the person, firm or corporation selling the same, showing the true cubic measurements of the material delivered, the name of the driver making such delivery and the time of such delivery; and no person in charge of any wagon or conveyance used in such delivery to whom has been delivered such certificate shall refuse or neglect on demand to deliver the same to the Sealer of Weights and Measures of said City; or to his assistants, or any person designated by him, or to the purchaser of such sand and gravel, his agent, or representative, and no such person, firm, or corporation shall use or cause to be used any wagon or conveyance for the delivery of any such material unless such wagon or conveyance is sufficiently and clearly marked with its true capacity.

## ARTICLE VII.
### Creating the Position of Measurers of Leather for the City of Detroit

Section 1. There shall be deputized and appointed by the Commissioner of Police of the City of Detroit, persons to act in conjunction with the Sealer of Weights and Measures as official measurers of leather. Such persons shall have all the powers that appertain to the Sealer of Weights and Measures in the measuring of leather.

Section 2. Upon the filing of a bond in the sum of Five Hundred Dollars ($500.00) to the City of Detroit,

with one or more sufficient sureties, that he will faithfully perform his duties in conformity with the ordinances of the City of Detroit relative to weights and measures, the Commissioner of Police may deputize and appoint any person of suitable age and a resident of the City of Detroit to act as a Measurer of Leather. Any person so deputized and appointed shall be empowered to certify under the official seal of the Sealer of Weights and Measures, the correctness of leather measurement and he shall have all the powers of the Sealer of Weights and Measures pertaining to the measurement of leather and no other. Any appointment made by the Commissioner of Police by authority of this ordinance may be revoked by him at any time upon the recommendation of the Sealer of Weights and Measures of the City of Detroit.

## ARTICLE VIII.

Section 1. It is hereby made the duty of the Sealer of Weights and Measures to require that all of the provisions of this ordinance are faithfully observed and to institute proceedings in case of violations.

Section 2. Any person, firm or corporation who violates or fails to comply with any of the provisions of this ordinance shall, upon conviction, be punished by a fine not exceeding $100.00 or by imprisonment in the Detroit House of Correction for a period not exceeding 30 days or by both such fine and imprisonment in the discretion of the Court.

Section 3. All ordinances and parts of ordinances in conflict with the provisions of this ordinance are hereby repealed.

Section 4. This ordinance shall take effect 30 days after its approval.

Read twice by title, ordered printed and laid on the table.

By Councilman Littlefield
AN ORDINANCE to amend Sections 12 and 19 of Chapter 133 of the Compiled Ordinances of the City of Detroit for the year 1912.
IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. That sections 12 and 19 of Chapter 133 of the Compiled Ordinances of the City of Detroit for the year 1912 are hereby amended to read as follows:
Section 12. Hereafter no person shall by himself or by any other post, attach, place, print, paint or stamp any placard, circular, showbill or advertisement of any description whatever, except such as may be expressly authorized by law, on any street, or sidewalk, or upon any election booth or other public place or upon any place or object, with the exception of bill boards, in the City of Detroit, or upon any fence, building or property belonging to

15 the City of Detroit or upon any
16 telegraph pole, telephone pole,
17 electric light pole or tower, or
18 upon any hitching post, horse
19 block or curb stone in any public
20 street or alley in the City of
21 Detroit or upon any permisee oc-
22 cupied or unoccupied without the
23 consent of the owner, lessor, or
24 lessee first having been obtained
25 and no person shall throw or
26 place or through insecure fasten-
27 ing or otherwise cause or suffer
28 to be placed or thrown or to fall
29 in or upon any street, alley, side-
30 walk or other public thorough-
31 fare or any public park of the
32 City of Detroit, any loose paper
33 or other rubbish of any nature.

1 Section 19. Any person, firm or
2 corporation, who shall violate any
3 of the provisions of this ordin-
4 ance or shall fail to comply with
5 the same, shall, upon conviction
6 thereof, be punished by a fine of
7 not less than $50.00 or more than
8 $100.00 or by imprisonment in
9 the Detroit House of Correction
10 for a period of not less than 30
11 days or more than 90 days or by
12 both such fine and or imprisonment
13 in the discretion of the court
14 trying the offender.

1 Section 2. This ordinance shall
2 take effect thirty days after ap-
3 proval.

Read twice by title, ordered printed
and laid on the table.

By Councilman Littlefield:
Resolved, That the Recreation Com-
mission be and they are hereby directed
to consider the advisability of setting
aside a portion of Northwestern Field
adjoining the Wreford Ave. Club House
for a bowling green.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley,
Castator, Kronk, Littlefield, Nagel,
Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Whereas, A check mailed by the
City Treasurer to Bakers & Confec-
tioners Supply Company on July 30th,
1919, was not received and the can-
celled check has not been returned by
the bank, therefore be it
Resolved, That the Controller be and
is hereby authorized and directed to
draw his duplicate check in the sum of
$16.41 on the Park and Boulevard Fund
provided he be satisfied that said
check is lost and the city bank noti-
fied to stop payment thereon.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley,
Castator, Kronk, Littlefield, Nagel,
Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Whereas, Checks mailed by the City
Treasurer to The American Railway
Express Company on September 30th,
1919, and to George A. Walters, Second
Deputy Police Commissioner, on Sep-
tember 9th, 1919, were not received and
the cancelled checks have not been
returned by the bank, therefore be it

Resolved, That the Controller be and
is hereby authorized and directed to
draw his duplicate checks in the sum
of $2.66 on the Fire Commission Fund
in favor of The American Railway Ex-
press Company, and in the sum of
$30.00 on the Park and Boulevard Fund,
in favor of George A. Walters, Second
Deputy Police Commissioner, provided
he be satisfied that said checks have
been lost and the City bank notified
to stop payment thereon.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley,
Castator, Kronk, Littlefield, Nagel,
Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Resolved, That this Body does here-
by determine and certify that work
under contract with Cleveland-Trinidad
Paving Co. for paving Arizona Avenue
and Sunset Avenue; and with Detroit
Asphalt Paving Co. for paving Drexel
Avenue; and with R. J. Powelson for
paving Alley No. 1062 and 1027; and
with Talbot Company for paving Al-
leys No. 1031 and 1050; and with Thos.
E. Currie for paving Alleys No. 1072
and 1074; and with Department of
Public Works for constructing Lateral
Sewer No. 3158, 3159 and 3166; and
with Lennane & McIlvenna for con-
structing Lateral Sewer No. 3076; and
with Western Construction Co. for
constructing Lateral Sewer No. 3134;
and with R. D. Baker for constructing
Lateral Sewer No. 3116 have been com-
pleted and have been found to be in
accordance with the several contracts
and specifications for the same, and
that the said work be, and is hereby
accepted; that all things by the Re-
vised Charter of the City required rel-
event to letting contracts for said
work, carrying on the same, and levy-
ing assessments to defray the expense
thereof have been done in due manner,
form and time; further

Resolved, That the City Controller
be directed to prepare appropriate
special assessment bonds, dated Novem-
ber 15th, 1919, in total sum of $83,-
384.36, bearing interest at 5% per
annum, payable as provided by the
Revised Charter of the City of Detroit,
and to deliver the same, or in case of
sale thereof, the proceeds therefrom,
after first deducting such amounts as
the said contractors may respectively
owe to the city of Detroit, to the
contractors as respectively entitled
thereto in full payment of all liability
of the said City of Detroit under the
said several contracts.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley,
Castator, Kronk, Littlefield, Nagel,
Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Resolved, That this body does hereby
determine and certify that work un-
der contract with Detroit Asphalt Pav-
ing Company for paving Chapin Street,
Norman Avenue, Piper Boulevard, Hurl-
but Avenue, Kopernik Avenue, Lenox
Avenue, Springwells Avenue, Gartner
Avenue and Weyher Avenue; and with

W. B. Brady Const. Co. for paving Philadelphia Avenue; and with Cleveland-Trinidad Paving Co. for paving Leslie Avenue and Buena Vista Avenue; and with Julius Porath for paving Colby Avenue; and with Lennane & McIlvenna for paving Alley No. 1021 and Alley No. 1039; and with Talbot Co. for paving Alleys No. 994, 1002, 1035 and 1026; and with R. J. Powelson for paving Alleys No. 1024 and 1059; and with Henry Richmond for paving Alley No. 1005; and with Thos. E. Currie for paving Alleys No. 1036 and 1037; and with Liberty Construction Co. for constructing Lateral Sewers No. 3174 and 3103, have been completed and have been found to be in accordance with the several contracts and specifications for the same, and that the said work, be, and is hereby accepted; that all things by the Revised Charter of the City required relevant to letting contracts for said work, carrying on the same, and levying assessments to defray the expense thereof have been done in the manner, form and time, further

Resolved, That the City Controller be directed to prepare appropriate special assessment bonds, dated November 1st, 1919, in total sum of $365,528.92, bearing interest at 5% per annum, payable as provided by the Revised Charter of the City of Detroit, and to deliver the same, or in case of sale thereof, the proceeds theretrom, after first deducting such amounts as the said contractors may respectively owe to the City of Detroit, to the contractors as respectively entitled thereto in full payment of all liability of the said City of Detroit under the said several contracts.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Whereas, The Detroit Museum of Art has executed and delivered to the City of Detroit a bill of sale of all the art collection of said Detroit Museum of Art; and

Whereas, The said Detroit Museum of Art has executed and delivered to the City of Detroit a warranty deed for certain property located on the east side of Woodward Avenue between Kirby Avenue, John R Street, Frederick Street and Farnsworth Street; and

Whereas, Mr. William C. Weber has executed and delivered to the City of Detroit a warranty deed of a portion of the said property above referred to; and

Whereas, The said bill of sale and the said deeds heretofore referred to have been approved as correct in form and execution, title satisfactory, by the Corporation Counsel of the City of Detroit; and

Whereas, The City of Detroit is desirous of accepting said warranty deeds and said bill of sale and will accept said warranty deeds and bill of sale on the following terms and conditions; now therefore, be it

Resolved, That the said City of Detroit will accept the said warranty deed from Mr. William C. Weber and hereby directs the Controller of the City of Detroit to draw the proper voucher in the sum of $24,233.56, with accrued interest to date, to pay off the mortgage now held against the property to be conveyed in the aforementioned warranty deed by the said William C. Weber and also the Controller is hereby authorized and directed to draw a proper voucher in the sum of $3,000.00 in favor of James Swann, Attorney for William C. Weber, and a voucher in the sum of $1,500.00 in favor of Richard I. Lawson, Attorney for said William C. Weber; and be it further

Resolved, That in the acceptance of the above described warranty deed from the Detroit Museum of Art, the City Controller be empowered and he is hereby directed to draw the proper voucher in the sum of $7,124.62 with interest to date to pay off the mortgage now held against the property to be conveyed by said warranty deed by said Detroit Museum of Art; and be it further

Resolved, That the Corporation Counsel and the City Controller are hereby instructed and directed to arrange the means whereby said mortgages shall be discharged and said attorneys' fees heretofore referred to shall be paid simultaneously with the acceptance of said deeds and said bill of sale on behalf of the City of Detroit.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

By Councilman Simons:
Resolved, That an extension of 90 days be granted to David Lipson and Sam Lipschitz from date of adoption of this resolution in which to move house located at 932 Bessemore avenue, and sold at public auction by City Treasurer in the opening of McClellan avenue, said sale having occurred October 30th, 1919.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

By Councilman Nagel:
Resolved, That this Common Council deeply and regretfully mourns the untimely death of Justice of the Peace Jay W. Hatch, who died in Grace Hospital from wounds inflicted at the second battle of the Marne, while bravely fighting under the folds of "Old Glory" for the freedom and democracy of the world. Michigan was the birthplace of the popular young attorney and he chose Detroit as the field of opportunity for practicing his profession. Then came the nation's call to arms, the abandonment of a promising law practice and the winning of a commission as first lieutenant. At Chateau Thierry and in the Argonne he won honor and glory for distinguished courage and bravery. Wearing four wound chevrons he was mustered out and upon his return from overseas entered into another battle from which he emerged with the same honor and triumph, winning the nomination and finally elec-

tion as a Justice of the Peace. Installed in office, the youthful jurist won high encomiums for fairness and integrity in deciding cases. He was a hard worker, conscientious, prompt and courteous. Those who were privileged to know Justice Hatch in his home life, in fraternal circles and in the legal profession will mourn him and their memory of him will be fragrant for all the years to come. While deeply regretting his departure, our tenderest feelings go out in special sympathy to his beloved family in the dark hour of their great sorrow; therefore, be it

Resolved, That in grateful remembrance of the splendid service rendered to his country and the city of his adoption, that the City Clerk be hereby instructed to cause a copy of the foregoing tribute of this Common Council's respect to be transmitted to the widow of the deceased, assuring her of sincere sympathy in the great sorrow that has come to her.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.

By Councilman Littlefield:
This Common Council has learned with sincere sorrow of the death of John C. Garvey, who represented the Sixteenth Ward for two successive terms as Alderman. As a city official he was unusually active and efficient in the discharge of the innumerable duties that devolved upon him. Born and reared in Detroit, he manifested especial pride in promoting legislation that would redound to the honor and prosperity of his native city.

As a man John C. Garvey enjoyed the happy faculty of making and retaining a host of friends. He was more than ordinarily courteous and accommodating. His warm hand clasp and greeting; his vigorous activities and resourcefulness and his never faltering advocacy of that which he believed to be right, enhanced the esteem in which he was held by friend and opponent.

Our city has lost a faithful public servant; those who knew him best a loyal friend, and his beloved daughters an affectionate father. Therefore, as a tribute of respect to the memory of the deceased, be it

Resolved, That this Common Council tenders to the sorrowing family our tenderest sympathy in the bereavement that has befallen them and as in the night of death, hope sees a star, so may the memory of the deceased be treasured for their solace while life shall last; and be it further

Resolved, That the City Clerk be instructed to transmit a copy of the foregoing to the family of deceased and that as a further mark of respect, that we do now adjourn.

Adopted as follows:—
Yeas—Councilmen Bielman, Bradley,

Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—9.
Nays—None.
And the Council then adjourned.


JOHN C. LODGE,
President.

RICHARD LINDSAY,
City Clerk.

## ORDINANCE 675-A

AN ORDINANCE to provide for the maintenance and operation of the public markets of the City of Detroit by the Public Welfare Commission.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT.

Section I. The public markets of the City of Detroit shall hereafter be controlled, maintained, and operated by and under the direction of the Public Welfare Commission. The maintenance and repair of the market buildings shall be under the supervision of such commission. The market clerk and all other employees connected with such market shall, subject to the Civil Service provisions of the Charter, be appointed by the Public Welfare Commission.

Provided, however, that nothing in this ordinance shall be construed to disturb the civil service status of employees at present connected with the markets of the City of Detroit.

Section 2. This ordinance shall take effect thirty days after its approval by the Mayor.
Approved Sept. 23, 1919.
JAMES COUZENS,
Mayor.
Attest:
RICHARD LINDSAY,
City Clerk.