above named sewers are in accordance with the ordinances and that all legal requirements have been complied with.

Respectfully submitted,

GEO. ENGEL,
Commissioner.

Honorable George Engel,
Commissioner.

Dear Sir—I have examined the proceedings of the Common Council in the matter of the construction of lateral sewers Nos. 3181, 3192, 3200, 3205, 3210 and 3232 and in making the special assessment rolls Nos. 8491, 8502, 8510, 8515, 8520 and 8542 for the collection of the cost and expense of constructing said sewers respectively, and find that the provisions of the City Charter and ordinances in such cases, made and provided have been fully complied with in the construction of said sewers and in making said special assessment rolls.

Yours respectfully,

WALTER BARLOW,
Chief Assistant Corporation Counsel.

By Councilman Kronk:

Resolved, That assessment rolls Nos. 8491, 8502, 8510, 8515, 8520, 8542, for the construction of lateral sewers Nos. 3181, 3192, 3200, 3205, 3210, 3232, transmitted by the Department of Public Works in accordance with the ordinances in such case made and provided, be and the same are hereby approved and confirmed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

---

### From the Board of Education.

To the Honorable the Common Council:

Gentlemen—As a result of the wind storm on Nov. 29th last, much damage was done to the Detroit public school buildings and school property. The amount of this damage is estimated at $25,000.

The Board of Education has no funds available to make the needed repairs, and at a meeting held December 11th last, authorized the Business Manager to confer with the Common Council requesting that the sum of $25,000 be provided for by the Council in order that the repairs may be undertaken at once.

Yours respectfully,

CHAS. A. GADD,
Business Manager.

By Councilman Kronk:

Resolved, That the City Controller be and he is hereby authorized and directed to take from the Contingent Fund the sum of $25,000 and place same to the credit of the Board of Education of the City of Detroit, for the purpose of repairing damage done to public school buildings and school property as a result of storm of November 29, 1919.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

---

### From the Board of Education.

To the Honorable the Common Council:

Gentlemen—You are hereby notified that the Board of Education at a meeting held December 11th, 1919, elected Mr. John A. Russell Library Commissioner, for a term of six years, beginning January 1st, 1920.

Yours respectfully,

CHAS. A. GADD,
Business Manager.

Accepted and placed on file.

### From the Board of Education.

To the Honorable the Common Council:

Gentlemen—The Board of Education at a meeting held December 4th last, authorized two parcels of unused real estate as described below, transferred to the Special of City of Detroit:

Ravenswood School Site, north end—situated on the east side of Yellowstone avenue and west side of Cascade avenue, north of Joy Road, comprising lots 1 to 20, both inc., of block 43 and lots 10 and 11 of block 38, Ravenswood subdivision, dimensions 330x220—22 lots.

Appraised by the Detroit Real Estate Board at approximately $16,500.

Fenkell avenue site—situated on the north side of Fenkell avenue, west of Wabash avenue, and the east side of Fourteenth avenue, comprising lots 1 to 8, both inc., Dumont subdivision; also lots 163 to 170, both inc., Oakman and Moross subdivision, dimensions 249. x272x240.

Appraised by the Detroit Real Estate Board at approximately $14,030.

The Corporation Counsel has been requested to prepare proper deeds for the conveyance of the property.

Yours respectfully,

CHAS. A. GADD,
Business Manager.

Accepted and placed on file.

### From the Board of Assessors.

To the Honorable the Common Council:

Gentlemen—The Board of Assessors has had under consideration certain petitions for cancellation, reduction or refund, of general city and personal tax assessments for the year named; after careful investigation, we recommend that the petitions enumerated be denied or granted as per resolutions hereto attached.

Respectfully submitted,

P. C. BAKER,
President Board of Assessors.

Accepted and on leave the following resolutions were offered:

By Councilman Kronk:

Resolved, That the City Treasurer be and he is hereby authorized and directed to cancel the personal tax assessment levied against the persons or firms hereinafter mentioned for the year 1919, to-wit:

Hotel Olancho, valuation $1,500, amount $27.83, year 1919, ward 2, folio 47.

Geo. W. Stark (2884) valuation $2,000, amount $37.10, year 1919, ward 15, folio 107.

And further

Resolved, That the City Treasurer be and he is hereby authorized and directed to accept from the persons or firms hereinafter mentioned, the amount specified after their respective names in full settlement of the personal tax assessment levied against them for the year 1919 and cancel balance due, to-wit:

Signal Motor Truck Co.—Original $400,000; reduce to $307,970; amount $5,713.67; year 1919; ward 21; folio 188.

Cabin Creek Con Coal Co.—Original $1,000; reduce to $300; amount $5.57; year 1919; ward 2; folio 16.

And further

Resolved, That the City Controller

13-53846-tjt   Doc 7111-12   Filed 08/27/14   Entered 08/27/14 16:56:29   Page 1 of 21

be and he is hereby authorized and directed to draw his warrant upon the proper fund in favor of R. Rutkowski for the sum of $8.35 on valuation of $459 for general city taxes levied against lot 57, Harrah & Brandenburg St. Aubin Ave. Sub. (W. 9, Fol. 206), for the year 1919, and upon presentation of the proper receipt showing taxes to have been paid upon a valuation of $2,290.

And Further

Resolved, That the City Controller be and he is hereby authorized and directed to draw his warrant upon the proper fund in favor of R. D. Murray for the sum of $6.40 on valuation of $410 for general city taxes levied against N. 20, 14 ft. lot 5, and S. 25.86 ft. lot 4, block 4, Scovel's Sub. (W. 14, Fol. 348), for the year 1917, on account of shortage of land in said block as certified by City Engineer, and upon presentation of proper receipt showing taxes to have been paid.

And Further

Resolved, That the City Controller be and he is hereby authorized and directed to draw his warrant upon the proper fund in favor of Alex Sardo for the sum of $3.71 on valuation of $200 for general city taxes levied against lot 81, McCallum's Addition to Highland Park (W. 9, Fol 1103) for the year 1919, and upon presentation of proper receipt showing taxes to have been paid upon valuation of $1,740.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

---

**From the Public Library.**

To the Honorable the Common Council:

Gentlemen: The Detroit Library Commission has acquired three sites for branch library purposes as given below. We are prepared to proceed with the engagement of an architect, preparing the necessary building plans, and inviting bids, if your Honorable Body will approve of the proposed issue of library bonds when needed. Such bonds as provided for in the Special Library Act approved last spring in no sense affect the limitations applying to municipal bonds proper.

Southwest corner of Mack and Montclair avenues.

South side of West Fort street, between Rademacher and Waterman.

South side of Davison Boulevard at the corner of Lumpkin Avenue.

Respectfully submitted,

ADAM STROHM,
Librarian.

General order for Tuesday.

---

**From the House of Correction**

To the Honorable the Common Council:

Gentlemen: It is the wish of the Board of Control of the Detroit House of Correction that your Honorable Body allow an amount of $13,312.62, which is to be financed from the receipts of the House of Correction during the present fiscal year and to be used in the payment of claims of A. W. Ehrman Company for $2,221.04; cost of electrical equipment—$9,591.58; purchase of a Ford Sedan—$1,000.00; cost of additional stationery and office supplies—$500.

Respectfully yours,

B. BANTA,
Superintendent.

By Councilman Kronk:

Resolved, That the City Controller be

and is hereby authorized and directed to set up the proper accounts to effect the transfer of $13,312.62 for the above purposes for the House of Correction and that this amount is to be taken from the receipts of the Detroit House of Correction of the fiscal year ending June 30, 1920.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

---

**From the City Plan Commission**

To the Honorable the Common Council:

Gentlemen: Referring to Playfield Site No. 1 in connection with which the City Plan Commission made recommendation to your Honorable Body on September 30, 1919, and which was approved October 7, 1919.

In checking the boundaries of Playfield No. 1, with the City Engineer and Corporation Counsel's office, we find what is perhaps a misprint in the name of a street. The acreage is correct, but it should read "Humboldt" where it reads Lawton" in our communication of September 30, 1919, being properly bounded as follows: Maybury Grand, Linden, Humboldt and Myrtle Avenues, approximately 23.1 acres in size, as indicated on attached blueprint, outlined in yellow.

It is requested that your Honorable Body kindly make the necessary correction.

Respectfully submitted,

T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

---

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen: Acting on a communication received from the Department of Police, the City Plan Commission approves the design of the heavy concrete base and ornamental arc light as is shown on the accompanying blueprint; and further, the Commission concurs in the recommendation of the Department of Police, that said concrete base and arc light be installed in connection with rotary traffic device at the intersections of East Grand River and Farmer Street; Randolph Street and Madison Avenue and Park Boulevard and Adams Avenue.

Respectfully submitted,

T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

---

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Referring to the matter of the vacating of Lillibridge and Kern Avenues recommended to your Honorable Body December 1, 1919, and referred back to the City Plan Commission for the purpose of ascertaining if a street should not be opened across the Detroit Terminal Railroad Company's right-of-way between Shoemaker and Harper Avenues.

On attached blueprint are shown the streets that are recommended to be opened in this region, and it is the opinion of the City Plan Commission that these streets are adequate and that it is unnecessary to open any other street across the Detroit Ter-

minal Railroad between Shoemaker and Harper Avenue.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Acting upon a communication received from the Board of Fire Commissioners relative to the construction of a High Pressure Pumping Station and New Concrete Dock on Public Lighting Commission's property at the foot of Randolph Street, as shown on attached blueprint.

This matter has been taken up with the Public Lighting Commission which states that the room necessary to install this pumping station can be spared, and that it would not conflict with their plans. The City Engineer of the Department of Public Works has also been interviewed and stated there was nothing under his jurisdiction which this construction would affect unfavorably.

An estimate has been secured which gives the total cost of the work completed as $152,000, which may be divided as follows:

(a) Public Lighting Commission, Portion of concrete dock and the necessary extension to present underground pipes, cost—$52,000.00.

(b) Fire Department, Portion of concrete dock and walks, also additional cost to High Pressure Pumping Station—$32,000.00.

(c) Department of Public Works, Portion of concrete dock and extension of 8-foot sewer in Randolph Street to new dock line, cost—$68,000.00.

The City Plan Commission concurs in the recommendation to erect this High Pressure Pumping Station on designated site.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Acting upon a communication received from the Department of Public Works stating that Linwood Avenue crossing has been closed by the Detroit Terminal Railroad Company, thereby entirely shutting in St. Francis Home; the City Plan Commission recommends that Linwood Avenue be opened to a width of sixty-six (66') feet from the southerly line of the Pennsylvania Railroad northerly to Fenkell Avenue so as to make a good connection with Linwood Boulevard running north from Fenkell Avenue. We have written St. Francis Home requesting them to dedicate the land indicated in red; the Linwood Avenue opening being indicated in yellow, on attached blueprint.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Referring to our communication of October 13, 1919, in which we recommend the opening of Freud and Essex Avenues, in compliance with request of your Honorable Body to investigate the opening of through east and west streets in the territory east of Water Works Park and between Jefferson Avenue and the river.

November 19, 1919, your Honorable Body tentatively approved the opening of the above streets, and further requested that the City Plan Commission write to the Board of Water Commissioners advising that this might be an opportune time to acquire the land adjoining Gladwin Park property by extending the easterly line from Jefferson Avenue straight through to the harbor line, taking all the property between their present holdings and the center line of Marquette Drive extended to the harbor line.

We are just in receipt of a communication from the Board of Water Commissioners stating that they already own to a line extended from Jefferson Avenue to the harbor line nearly on the center line of Marquette Drive, as indicated on attached blueprint.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Various suggestions and repeated requests for the widening of Grand River Avenue have been received by this Commission, and after a careful study of the matter, the following recommendation is made:

The City Plan Commission recommends that Grand River Avenue be widened to one hundred (100') feet from Jones Street to Woodward Avenue. From Jones Street to Bagley Avenue, strips are to be taken on both sides of the street, so as to make Grand River Avenue in this section continuous with Grand River Avenue running northerly. From Bagley Avenue to Griswold Street, taking on the northerly side of the street. From Griswold Street to Woodward Avenue, taking twenty (20') feet on the south side of the street, and a triangular piece to be taken on the north side of street, beginning at apex of the alley east of Griswold Street and approximately twenty (20') feet on Griswold Street. The present width of Grand River Avenue between Jones street and Woodward Avenue is sixty (60') feet, all indicated on attached blueprint in yellow.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General order for Monday.

**From the City Plan Commission.**

To the Honorable the Common Council:

Gentlemen—Tentative plat of Gratiot Heights Subdivision was presented to the City Plan Commission for approval, and the Commission advised the owners that the plat would be passed as satisfactory if they would open Christie Avenue through to Dresden Avenue as indicated on attached blueprint, outlined in yellow.

We have been advised that the owners of Gratiot Heights Subdivision were unable to provide for this opening on account of some property lying between their property and Dresden Avenue, which is owned by other parties, and

with whom they were unable to make satisfactory negotiations. The City Plan Commission, therefore, recommends that the small strip of land needed to open Christie Avenue through to Dresden Avenue be condemned, and the total cost of improvement assessed against the property benefited.

Respectfully submitted,
T. GLENN PHILLIPS,
Consultant-Secretary.

General Order for Monday.

### From the Clerk.

That he presented such portion of the proceedings of the last regular session as is required by the Charter to be presented to His Honor the Mayor for approval, on the 15th inst., and that they were approved on the 15th inst.

Placed on file.

Also that he presented to His Honor the Mayor for approval an ordinance entitled "An ordinance to amend Sec. 8, Chap. 53, Ordinances of 1912, defining the boundaries of the Seventh Ward," on the 15th inst., and that it was approved on the 15th inst.

Also an ordinance entitled "An ordinance to enumerate and define the parks and boulevards of the City of Detroit," etc., on the 15th inst., and that it was approved on the 15th inst.

Also an ordinance entitled "An ordinance to repeal an ordinance entitled 'An ordinance to regulate during the existing coal emergency the use or consumption of heat, electricity or gas within the City of Detroit,' etc." on the 15th inst. and that it was approved on the 15th inst.

Placed on file.

### From the Clerk.

To the Honorable the Common Council:
Gentlemen—I beg to advise your Honorable Body that I am in receipt of the following communication from Henry Russel.

Respectfully submitted,
RICHARD LINDSAY,
City Clerk.

Following is the communication referred to:
Hon. John C. Lodge, President Common Council:

Dear Mr. Lodge—Permit me to thank you and all of your associate members of the Common Council for the honor you have done to the memory of my son, Lieut. William Muir Russel, in conferring his name upon Detroit's aviation field. It is the first and only recognition, aside from the many personal tributes which have come to me, of his service and sacrifice, and I appreciate the fact that it has come from his native city, and that it will be a permanent and possibly more important memorial than any of us can now realize.

With personal regards to yourself and your associates, I remain,
Faithfully yours,
HENRY RUSSEL.

Accepted and placed on file.

### From the Clerk.

To the Honorable the Common Council:
Gentlemen—I beg to inform you that I am in receipt of the following petitions since the last session and re-commend their reference to the general order as follows:

Respectfully,
RICHARD LINDSAY,
City Clerk.

### GENERAL ORDER FOR MONDAY.

2885—Joseph Waligore—For vacation of alley in Bessenger and Moore's Gratiot avenue Sub.

2908—Edna H. Ackerman—To deed strip of land to city.

2909—Steve Prataceneicz—To purchase strip of land from city.

2935—Arthur E. Fixel—Opening of part of Jones street.

2938—Timken-Detroit Axle Co., et al—For vacation of Oak street and Scotten avenue.

### GENERAL ORDER FOR TUESDAY.

2886—Albertus Darnell, et al—Asking salary bonuses for city school teachers.

2905—Public Library—Asking various transfers from credit balances.

2910—National Surety Co.—Asking release from bond for gasoline tank.

### GENERAL ORDER FOR WEDNESDAY

2887—Bertha Birkett—Re-hearing on cancellation general city taxes.

2906—United Smelting & Aluminum Co.—Cancellation 1919 personal tax.

2939—Detroit Ass'n of Sanitary and Heating Contractors—Re-hearing on the matter of heating.

2940—Detroit Ass'n of Sanitary and heating Contractors—Relative to rate of permits.

### REFERRED TO D. W. P.—PERMITS.

2888—L. H. Slipson—For gasoline pump and tank, 2952 E. Jefferson.

2889—Harry Gonte.—For gasoline station at 268 E. Canfield avenue.

2890—Fred's Tire & Battery Service—To move gasoline station.

2911—George Botis—For permission to display goods in front of place of business, 72 Woodward avenue.

2912—Lincoln Oil Co.—To construct building over lot line.

2913—Sibley Lumber Co.—To run a steam pipe across alley rear of Beaufait, between Kercheval and Waterloo.

2914—Paul Boldt—For gasoline pump front of 16 Marquette avenue.

### REFERRED TO D. P. W.—PAVING.

2907—Grand River Improvement Association—Paving of Grand River from Joy Road to city limits.

### REFERRED TO D. P. W.—SEWER.

2937—Frank Gryka — For lateral sewer in alley in block bounded by lot 7 on Marcus street in Harrah's Van-Dyke avenue Sub.

### REFERRED TO BOARD OF ASSESSORS.

2884—Geo. W. Stark—Cancellation of 1919 personal tax.

2891—Edw. J. Mahon—Reduction 1919 personal tax.

2892—E. B. Weston—Adjustment 1919 personal tax.

2893—L. Himelman — Cancellation 1919 personal tax.

2894—Schneider Coal & Brick Co.—Cancellation 1918 personal tax.

2895—A. P. Entenza—Reduction 1919 personal tax.

2896—Fred A. Joseph—Cancellation 1919 personal tax.

2897—John Thomas — Cancellation 1919 personal tax.

2918—Monarch Coal Co.—Reduction 1918 personal tax.

2919—Central Ice & Fuel Co.—Reduction 1917 personal tax.

2920—American Coal & Coke Co.—Reduction 1917-18-19 personal tax.

2921—Alliance Brass Fdy. Co.—Refund of 1919 personal tax.

2922—William E. Davies—Cancellation 1919 personal tax.

2923—Mrs. F. Marquardt—Reduction 1919 general city taxes.

2924—Schmidt Bros. — Cancellation 1919 personal tax.

2925—William C. Brown—Cancellation 1919 personal tax.

2926—Elizabeth L. Leigh — Adjustment 1919 personal tax.

2927—Otto C. Hennen—Refund 1919 personal tax.

2928—Harry A. Eberline for Toth Bros.—Cancellation 1918 personal tax.

2929—Hungarian Reformed Church—Cancellation 1917-18-19 general city taxes.

### REFERRED TO CITY TREASURER.

2898—Herbert R. Jamison—Cancellation 1919 general city taxes.

2899—Wolf Kaplan—Refund of part of special assessment for paving Warren avenue.

2900—Charles R. Campbell—Adjustment of back taxes.

2915—Paul Douchan—Refund of penalty and interest on special paving tax.

2916—Paul Douchan—Cancellation of penalty and interest on general city taxes.

2917—Max Borkin—Cancellation of interest on paving tax.

### REFERRED TO PUBLIC WELFARE COMMISSION.

2930—Nettie Skrzupek — Refund of 1919 general city taxes.

2936—F. L. Fladzinska—Cancellation 1919 general city taxes.

### REFERRED TO CORPORATION COUNSEL.

2901—Geo. A. Mack—Claim for damage to truck.

2902—Mrs. Benjamin F. Reed—Asking compensation for personal injury.

2903—Sam Feldman—Claim for damage to automobile.

2904—Wm. G. Euth—Claim for damage to automobile.

2931—H. E. Seitz—Claim for damage to automobile.

2932—Mrs. F. Rush—Claim for damage to automobile.

2933—Frances Goose (by Raymond Kelley)—Claim for personal injuries.

### REFERRED TO BUILDING DEPT.

2934—Clarence M. McArthur — Ask erect iron marquise over doorway on Grand River avenue.

### REPORTS OF COMMITTEE OF THE WHOLE.

WEDNESDAY, DECEMBER 10, 1919

Chairman Simons submitted the following report of Committee of the Whole for above date and recommended its adoption:

### Taxes

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the petitions of Katherine Depa (2234), for cancellation of paving tax; of Mrs. Bertha Birkett (2887), for re-hearing on petition for cancellation of 1919 general city taxes, both on the grounds of charity, and the petition of Lewis Stern (2410), for reduction of 1919 taxes on account of military service. Your committee has investigated requests for cancellations on the grounds of charity through the Public Welfare Commission and recommend that the petitions of Katherine Depa and Bertha Birkett be denied. We also recommend that, petition of Lewis Stern be denied account of being unable to locate at address given in petition.

Respectfully submitted,

DAVID W. SIMONS,
Chairman.

Accepted and adopted.

THURSDAY, DECEMBER 11, 1919

Chairman Vernor submitted the following reports of Committee of the Whole for above date and recommended their adoption:

### Claims and Accounts

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the petitions of Leo Temorowski (2227), Lewis C. Beck (1882), and P. C. Bond (584), and the claims presented by Charles M. Caryell, Mrs. C. G. Spink, H. C. Roberts Storage & Transfer Co., the Detroit Times Co., Charles Fordon and Horace A. Blugh, for the payment of damages for injury to persons and property or for reimbursement for various expenses incurred. Your committee has consulted with the Corporation Counsel and we concur in his recommendation that the petitions and claims above referred to be denied.

Respectfully submitted,

JAMES VERNOR,
Chairman.

Accepted and adopted.

### Claims and Accounts

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the petitions of George B. Murphy (2402-2575), E. C. Dennert (2239), and Thomas Lamb (2541), all for compensation for damages sustained to automobiles; of Harriet Cabenot (2228), and claim of Sophia Kujawa, both for damages on account of personal injuries. After consultation with the Corporation Counsel your committee recommends that the above petitions and claims be allowed in the amounts specified in the accompanying resolution.

Respectfully submitted,

JAMES VERNOR,
Chairman.

By Councilman Vernor:

Resolved, That the Controller be and he is hereby authorized and directed to draw warrants upon the proper fund in favor of the persons hereinafter mentioned, for such amounts as appear opposite their respective names, towit:

| | |
|---|---|
| George B. Murphy | $25.00 |
| E. C. Dennert | 21.23 |
| Thomas Lamb | 26.05 |
| Harriet Cabenot | 48.00 |
| Sophia Kujawa | 75.00 |

The above-mentioned sum in each instance, to be in full settlement of any and all claims for damages that each of the aforesaid claimants may have against the City of Detroit by

reason of certain injuries alleged to have been sustained, upon presentation of receipts in form approved by the Corporation Counsel.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

### Claims and Accounts.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petitions of Lester M. Moss (1850), for reimbursement of expense of repairing automobile and of John McNeil Burns (1238), for compensation for damages sustained to automobile. Your Committee after a consideration of the facts in each case recommend that petitioners be tendered the actual amount of damages as set forth in the accompanying resolution.

Respectfully submitted,
JAMES VERNOR,
Chairman.

By Councilman Vernor:

Resolved, That the Controller be and he is hereby authorized and directed to draw warrants upon the proper fund in favor of the persons hereinafter mentioned for the amounts appearing opposite their names, to-wit:

John McNeil Burns ..............$17.90
Lester M. Moss ..................24.75

The above-mentioned sums in each instance to be in full settlement of any claims for damages which the aforesaid persons may have against the City of Detroit by reason of certain damages alleged to have been sustained to automobiles, upon presentation of the proper receipts.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

### Finance.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the communication from the Department of Health requesting permission to carry insurance on the farm buildings, implements and supplies at the Tuberculosis Farm near Northville. We recommend that the Board of Health be authorized to insure for 3 years the property on the Tuberculosis Farm for a valuation not to exceed $10,000.00.

Respectfully submitted,
JAMES VERNOR,
Chairman.

Accepted and adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

### Boulevard Traffic.

To the Honorable the Common Council:

Gentlemen—Your Committee of the Whole to whom was referred communication from Mr. Wm. J. Nagel, Postmaster, relative to the use of mail trucks on city boulevards, respectfully report that as the matter is entirely within the control of the United States Government regulations, in our opinion there is no necessity for making any changes in the existing ordinance, and we therefore recommend that further

consideration of the matter be indefinitely postponed.

Respectfully submitted,
JAMES VERNOR,
Chairman.

Accepted and adopted.

### Taxes.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petition of Mrs. Helen Buck (2871) for a rehearing on request for cancellation of 1919 general city taxes on the grounds of charity. After a further investigation of the matter we recommend that the taxes for said year be cancelled and offer the following resolution.

Respectfully submitted,
JAMES VERNOR,
Chairman.

By Councilman Vernor:

Resolved, That the City Treasurer be and he is hereby authorized and directed to cancel the general city taxes levied against "Lot 15, Bradford Smith's sub. of W. part of P. C. 729," e. s. Maybury Avenue, (W. 12, f. 306), for the year 1919, valuation $3,900, amount $72.36, said property being owned by Mrs. Helen Buck and taxes cancelled on the grounds of charity.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

### FRIDAY, DECEMBER 12, 1919.

Chairman Bradley submitted the following reports of Committee of the Whole for above date, and recommended their adoption:

### Street Openings.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petition of John C. Reedy, et al. (2837), asking that the City of Detroit assume one-half of the sum awarded for the private property taken in the widening of Woodward Terrace. After a consideration of the matter, your committee recommends that said petition be denied.

Respectfully submitted,
W. P. BRADLEY,
Chairman.

Accepted and adopted.

### Public Buildings.

To the Honorable the Common Council:

Gentlemen—Your Committee of the Whole has had under consideration the petition of Victor Vanden Broker (2848), offering $400 for buildings on property owned by the city and known as old pest-house site. Your committee having been informed that the buildings referred to have been destroyed by fire, recommend that said petition be denied.

Respectfully submitted,
W. P. BRADLEY,
Chairman.

Accepted and adopted.

### MONDAY, DECEMBER 15, 1919.

Chairman Castator submitted the following reports of Committee of the Whole for above date, and recommended their adoption:

### Streets.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred various petitions for permits to install gasoline tanks, construct areas, driveways, etc. After

consultation with the Department of Public Works, we recommend that the following petitions be granted: Guernsey Rebuilt Tire and Accessory Co. (2849), for gasoline pump at curb in front of 894 Cass Ave. and free air pipes on Cass and Hancock avenues, provided gasoline pump is installed 7 ft. 6 in. inside curb line on Cass Avenue; Burroughs Adding Machine Co. (2852), to make changes in curb and sidewalk on the west side of Third Ave. between Holden Ave. and M. C. R. R. right-of-way for entrances to driveways opposite York Ave. and near northerly boundary of petitioner's property, south of Amsterdam Ave.; Madam LaGrand (2857), for vestibule door in front of entrance to store on northwest corner of Washington Blvd. and Clifford St., provided said vestibule is limited to the width of the door, is not used for display or show-case, and is removed between April 1 and Nov. 1 of each year; Andrew C. Sisman Co. (2858), to erect fire-proof transformer house over alley between Beaufait and Meldrum Aves., south of St. Paul Ave., 17 feet above pavement; D. L. Colwell (2883), to construct on Hobson Street side of building at the corner of said street and Grand River Ave., provided standard iron doors, not to exceed 5½x5½ feet are used. We therefore offer the following resolutions.

Respectfully submitted,
FRED. W. CASTATOR,
Chairman.

Accepted, and on leave, the following resolutions were offered:

By Councilman Castator:

Resolved, That the Department of Public Works be and is hereby authorized and directed to issue a permit to Guernsey Rebuilt Tire and Accessory Co., to install gasoline pump, 7½ ft. back from present curb, in front of 894 Cass Ave., also to install one air line pipe with light post on Cass Ave. and one air line pipe with light post on Hancock Ave. in front of said premises, being n. e. corner Cass and Hancock; Provided a fee of $5.00 is paid to said Department:

Provided: That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department.

Provided, That no rights in the public street shall be considered waived by this permission, which is granted expressly on the condition that said pump and air pipes and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:
Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.
Nays—None.

By Councilman Castator:

Resolved: That the Department of Public Works be and is hereby author-

---

Public Works be and is hereby authorized and directed to issue a permit to Burroughs Adding Machine Co. to remove curb and reconstruct sidewalks on the west side of Third avenue, between Holden avenue and M. C. R. R., for entrances to driveways, one opposite terminus of York avenue and one near north line of petitioner's property, south of Amsterdam avenue:

Provided: That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department:

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said driveways and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act; and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:
Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.
Nays—None.

By Councilman Castator:

Resolved: That the Department of Public Works be and is hereby authorized and directed to issue a permit to Madam LaGrand to construct vestibule door in front of store northwest corner of Washington Blvd. and Clifford St., provided said vestibule is limited to the width of door, is not used for display or show-case purposes, and is removed between April 1 and Nov. 1 of each year;

Provided: That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said vestibule door and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:
Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.
Nays—None.

By Councilman Castator:

Resolved: That the Department of Public Works be and is hereby author-

ized and directed to issue a permit to Andrew C. Sisman Co., to construct fireproof transformer house over alley between Beaufait and Meldrum Avenues, south of St. Paul Avenue, same to be at least 17 feet above grade of alley;

Provided: That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said building and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

By Councilman Castator:

Resolved: That the Department of Public Works be and is hereby authorized and directed to issue a permit to D. L. Colwell to construct iron doors on Hobson street side of building at the corner of Grand River avenue and Hobson street; provided standard iron doors, not to exceed 5½ x 5½ feet over all; are used;

Provided: That said work shall be performed under the supervision of the Department of Public Works, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said area and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Public Works is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

## Streets:

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petitions of Detroit Creamery Co. (2878), to construct a marquise over Cass Avenue entrance to building to be constructed on the southeast corner of Cass and Adams avenues, and of Iron City Engineering Co. (2880), to place an electric signalling device on marquise on Parsons street side of Orchestra Hall, for designating numbers of cars or carriages. Your Committee has investigated each of said requests through the Department of Buildings & Safety Engineering, and seeing no objection thereto, recommend that said petitions be granted. We therefore offer the following resolutions.

Respectfully submitted,

FRED W. CASTATOR,
Chairman.

By Councilman Kronk:

Resolved, That the Department of Buildings & Safety Engineering be and is hereby authorized and directed to issue a permit to Detroit Creamery Co. to erect marquise over entrance to building situated on the southeast corner of Cass and Adams avenues, said marquise to extend over sidewalk on Cass avenue side of said structure;

Provided, that said work shall be performed under the supervision of the Department of Buildings & Safety Engineering, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said marquise and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Buildings & Safety Engineering is granted with the distinct understanding that in the event of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

By Councilman Kronk:

Resolved, That the Department of Buildings & Safety Engineering be and is hereby authorized and directed to issue a permit to Iron City Engineering Company to place on top of and within rail of marquise on Parsons street side of Orchestra Hall, northwest corner Woodward and Parsons, an electric signalling device, 2 feet high and 6 feet long, same to be used for purpose of designating carriage numbers;

Provided, that said work shall be performed under the supervision of the Department of Buildings & Safety Engineering, and in accordance with plans submitted to and approved by said Department;

Provided, That no rights in the public streets shall be considered waived by this permission, which is granted expressly on the condition that said signalling device and all obstructions in connection therewith shall be removed at any time when so directed by the Common Council; and further

Provided, That said permit issued by the Department of Buildings & Safety Engineering is granted with the distinct understanding that in the event

of Charter being amended in such manner as will provide for the levying of a fee to be hereafter determined upon, for the occupancy of public property, that the grantee will pay said fee provided for in said act, and that said grantee does hereby bind himself thereunto and accept said permit on the conditions hereby imposed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

### Streets.

To the Honorable the Common Council:

Gentlemen—Your Committee of the Whole has had under consideration the following petitions: The Oakland Accessory & Tire Co. (2830), to install gasoline pump and tank in front of 590 Oakland avenue; John Czajkowski (2850), to install gasoline tank and pump in front of 1498 Jos. Campau avenue; H. Lewis (2851), to install gasoline pump in front of 209 Alfred street.

Your Committee, after consultation with the Department of Public Works, recommends that said petitions be denied.

Respectfully submitted,

FRED W. CASTATOR,
Chairman.

Accepted and adopted.

### Claims and Accounts.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the claim of Thomas McCoubrie and the petition of Myrtle Jacobson (1822), both asking damages for personal injuries. Your Committee begs to report that it has consulted with the Corporation Counsel, and recommend that the sums of $450 and $500 be allowed in full settlement of the claims of Thomas McCoubrie and Myrtle Jacobson, respectfully, with the understanding that the attorney's fee in first-mentioned claim will not exceed $50.00. We, therefore, offer the following resolution.

Respectfully submitted,

FRED W. CASTATOR.

By Councilman Castator:

Resolved, That the Controller be and he is hereby authorized and directed to draw a warrant upon the proper fund in favor of the persons hereinafter mentioned, for such amounts as appear opposite their names, to-wit:

Thomas McCoubrie.............$450.00
Myrtle Jacobson..............500.00

The above-mentioned sum in each instance to be in full settlement of any claim for damages that each of the aforesaid claimants may have against the City of Detroit by reason of certain personal injuries alleged to have been sustained, upon presentation of receipts in form approved by the Corporation Counsel.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor, and the President—8.

Nays—None.

### Special Assessments.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petition of G. O. Preissner (2760), for reduction of sidewalk tax levied against lots 195, 196, east side Manistique Avenue. Your committee after an investigation of the conditions under which repairs were made necessary and consultation with the Department of Public Works, recommend that bill be reduced one-half, and offer the following resolution.

Respectfully submitted,

FRED W. CASTATOR,
Chairman.

By Councilman Castator:

Resolved, That the Controller be and he is hereby authorized and directed to draw a warrant upon the proper fund in favor of G. O. Preissner for the sum of $18.00, being a refund of one-half of assessments levied against "Lots 195 and 196, Fox Creek sub., P. C. 120," east side of Manistique Avenue, East Sheet 640, by reason of repairs for which bill was made, having been made necessary by defective water mains and the driving of vehicles over same, account mud street.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

### TUESDAY, DECEMBER 16, 1919.

Chairman Kronk submitted the following reports of Committee of the Whole for above date and recommended their adoption:

### Vacation of Oak St. and Scotten Ave.

To the Honorable the Common Council:

Gentlemen—To your Committee of the Whole was referred the petition of Timken-Detroit Axle Co. (2853), for the vacation of Oak St. and alley south of Fort St., between Scotten and Clark Aves., as amended by petition of Timken-Detroit Axle Co. and Studebaker Corporation (2938), for the vacation of Oak Street and that part of Scotten Avenue lying south of a line 187.50 feet south of Fort Street. Petitioners being the owners of all property abutting on Oak Street and that portion of Scotten Avenue requested to be vacated, your Committee recommends that the petition be granted, and offer the following resolution. We also recommend that petition of Timken-Detroit Axle Co. (2853), be denied.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

By Councilman Kronk:

Resolved, That "All of Oak Avenue and all that part of Scotten Avenue lying south of a line 187.50 feet south of and parallel to Fort Street, as platted in Clark Park Sub. of part of P. C. 583, lying between Fort Street and Wabash R. R., as recorded in Liber 24, page 20, of Plats of Wayne County Records," be and the same are hereby vacated;

Provided, Petitioners Timken-Detroit Axle Co. and the Studebaker Corporation, pay into the city treasury, within 10 days from the date of the adoption of this resolution, whatever expense may have been incurred by the City of Detroit in the matter of paving, curbing, construction of sidewalks, crosswalks, etc., as may be certified to by the City Engineer.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Leases

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the communication from the Board of Water Commissioners, asking approval of renewal of lease, for a period of one year, for the sum of $3,000, with Michigan Builders Supply Co., of property owned by the Commission at the southwest corner of Atwater and Orleans streets. Your committee concurs in the recommendation of the commission that said lease be approved, and offer the following resolution.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

By Councilman Kronk:

Resolved, That the lease entered into by the Board of Water Commissioners with the Michigan Builders Supply Co. of property located at the southwest corner of Atwater and Orleans street, for the term of one year from and after the first day of January, 1920, for the consideration of $3,000, be and the same is hereby approved.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Contracts

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the communication from the Board of Fire Commissioners, transmitting proposals received for construction of fire engine house at Twelfth and La Belle avenues. Your committee is informed that no bids were received for the entire contract, but that separate bids were submitted on the mason, carpenter, electric wiring and plumbing and heating work. Your committee concurs in the recommendation of the Fire Commission that contracts be awarded to the lowest bidders under the four separate contracts, which low bids, with architects' fees included, total $85,495.20. We therefore offer the following resolution.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

By Councilman Kronk:

Resolved, That the contracts entered into by the Board of Fire Commissioners with Max Bartholomew Son & Co., for general mason work, in the sum of $49,300; with C. Keller Co., for general carpenter work, in the sum of $21,920; with Hub Electric Co., for electric wiring work, in the sum of $3,095; and with O'Connor Bros., for plumbing and heating work, in the sum of $9,209, a total, inclusive of architects' fees, of $85,495.20, all in connection with construction of fire engine house at the corner of Twelfth and LaBelle avenues, be and the same are hereby approved and confirmed.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Finance

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred communication from the Department of Parks & Boulevards, asking that a total of $50,000 be taken from Belle Isle and Palmer Park Resurfacing Accounts and placed at the disposal of said department for the purchase of a portable asphalt plant of 1,500 sq. yds. capacity, together with necessary equipment and trucks. After a careful consideration of the advisability of operating portable asphalt plants, we recommend that the purchase of said plant and equipment be approved, and offer the following resolution.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

By Councilman Kronk:

Resolved, That the Controller be and he is hereby authorized and directed to take from Account 14B, Belle Isle Resurfacing, the sum of $15,000 and from Account 29B, Palmer Park Resurfacing, Park & Boulevard Fund, the sum of $35,000 and place same at the disposal of the Department of Parks & Boulevards for the purpose of purchasing a portable asphalt plant of 1,500 sq. yds. capacity, with the necessary equipment and trucks.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Finance

To the Honorable the Common Council.

Gentlemen—Your Committee of the Whole has had under consideration communication from the Civil Service Commission, requesting that $250 be provided from available funds for purchasing of winter body for Dodge touring car attached to the department. Your committee recommends that the request be granted, and offers the following resolution.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

By Councilman Kronk:

Resolved, That the Controller be and he is hereby authorized and directed to appropriate from any available funds remaining in the city treasury, the sum of $250.00 and place the same to the credit of the Civil Service Commission, for the purchase of winter body for Dodge touring car attached to said department.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Claims and Accounts.

To the Honorable the Common Council.

Gentlemen—To your Committee of the Whole was referred the Controller's list of approved accounts of December 16, 1919. Your committee has examined the same, and believing them to be correct, recommend that they be paid out of the proper funds.

Respectfully submitted,

JOHN A. KRONK,
Chairman.

Accepted and adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

## Bonds.

To the Honorable the Common Council:

Gentlemen—Your Committee of the Whole has had under consideration.

communication of the Controller in which he recommends the issue of $306,000 General Public Improvement Bonds, in amounts of $1,000 each, bearing 4½ per cent interest and maturing serially over a period of thirty years; $500,000 Public Utility Bonds, in amounts of $1,000 each, bearing 4 ½ per cent interest and maturing serially over a period of thirty years; and $100,000 General Public Improvement Bonds, in amounts of $100 each, bearing 1½ per cent interest, and maturing January 15, 1950.

Concurring in the recommendation of the Controller that these bonds be issued and that proposals therefor be received January 19, 1920, we herewith submit appropriate resolutions.

Respectfully submitted,

JOHN A. KRONK, Chairman.

By Councilman Kronk:

Resolved that consistent with action heretofore taken under authority of law relating to the City of Detroit by the Common Council and Mayor of the said city whereby it was determined to provide for public improvements in the budget for the fiscal year ending June 30, 1920 by borrowing upon the faith and credit of the City and upon the best terms that can be made the sum of $306,250 deemed necessary and expedient to be provided in the general road fund for a site for municipal buildings to be thereon constructed in the block south of Wight street and west of the center line of Lieb street and to issue general public improvement bonds of the City therefor in lieu of raising the same by taxation, the City Controller is hereby directed to advertise for sealed proposals for said bonds in the sum of $306,000, about to be issued at the greatest premium above par and at a rate of interest of four and one-half (4½) per cent per annum, payable semiannually as hereby determined and fixed.

Further resolved; That the said City Controller be and he is hereby directed to so advertise in the official newspaper of the City of Detroit, The Detroit Legal News, in three issues for said sealed proposals for the purchase of $306,000 General Public Improvement Bonds of the City of Detroit to be issued in amounts of $1,000 each, numbered from one to three hundred and six, inclusive, to bear interest at the rate of 4 ½ per cent per annum, to be dated January 15, 1920, 10 of said bonds to be due and mature on January 15, of 1921, and of each year thereafter to and including 1932, 11 of said bonds to be due and mature on January 15 of 1933, and of each year thereafter to and including 1938, and 10 of said bonds to be due and mature on January 15, 1939, and of each year thereafter to and including 1950, principal and interest to be payable in lawful money of the United States at the current official bank of the City of Detroit in the City of New York at the office of the City Treasurer of the City of Detroit at the option of the holder, proposals to be for the purchase of said bonds at the greatest premium above par which the prospective purchaser will pay therefor, at the rate of interest therein fixed at 4½ per cent per annum, payable semi-annually.

Further Resolved, That the City Controller announce in said advertising that said bonds will be approved as to legality by John C. Thomson, attorney, of New York City, and that proposals are to be conditioned only on the approval of said Thomson; that said bonds are exempt from all taxation in the State of Michigan; that said bonds will be issued in coupon form or in registered form and if issued in coupon form will be exchanged for bonds in registered form at any time upon application of the owner; that said bonds will be delivered at the office of the City Treasurer upon payment of amount named in proposal and of interest on principal accrued to date of delivery; that proposals will be entertained for the whole or any part of the issue; that proposals are to be accompanied with a deposit in cash or certified check payable to the City of Detroit on any National Bank in the United States or on any State Bank in the City of Detroit, in the amount of two per cent of the proposal, to be retained by the City of Detroit as stipulated damages in the event of non-performance of any proposal accepted, the Common Council reserving the right to reject any or all proposals received; that proposals are to be addressed to the City Controller of the City of Detroit, endorsed "Proposal for the Purchase of Detroit City Bonds," and will be received to 11 o'clock of the forenoon of January 19, 1920.

Adopted as follows:

Yeas—Councilmen Bradley, Custator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Kronk:

Resolved, That consistent with action taken heretofore under authority of law relating to the City of Detroit by the Common Council and Mayor of said City whereby it was determined to provide for public improvements in the budget for the fiscal year ending June 30, 1920, by borrowing upon the faith and credit of the City and upon the best terms that can be made the sum of $3,823,000 deemed necessary and expedient for the purpose of supplying the City and the inhabitants thereof with water, and to issue public utility bonds of the City therefor, in lieu of raising the same by taxation, the City Controller is hereby directed to advertise for sealed proposals for said bonds in the amount of $500,000, about to be issued at the greatest premium above par and at a rate of interest of 4½ per cent per annum, payable semi-annually, as hereby determined and fixed.

Further Resolved, That the said City Controller be and he is hereby directed to so advertise in the official newspaper of the City of Detroit, The Detroit Legal News, in three issues for said sealed proposals for the purchase of $500,000 Public Utility Bonds of the City of Detroit about to be issued in amounts of $1,000 each, numbered from 501 to 1,000, inclusive, to bear interest at the rate of 4½ per cent per annum, payable semi-annually, to be dated January 15, 1920, 17 of said bonds to be due and mature on January 15, of 1921, and of each year thereafter to and including 1940, and 16 of said bonds to be due and mature on January 15, of 1941, and of each year thereafter to and including

1950, principal and interest to be payable in lawful money of the City of Detroit at the current official bank of the City of Detroit in the city of New York or at the office of the City Treasurer in the City of Detroit, at the option of the holder, proposals to be for the purchase of said bonds at the greatest premium above par which the prospective purchaser will pay therefor at the rate of interest therein fixed at 4½ per cent per annum payable semi-annually.

Further Resolved, That the City Controller announce in said advertising that said bonds will be approved as to legality by John C. Thomson, attorney, of New York City, and that proposals are to be conditioned only on the approval of said Thomson; that said bonds are exempt from all taxation in the State of Michigan; that said bonds will be issued in coupon form or in registered form and if issued in coupon form will be exchanged for bonds in registered form at any time upon application of the owner; that said bonds will be delivered at the office of the City Treasurer upon payment of amount named in proposal and of interest on principal accrued to date of delivery; that proposals will be entertained for the whole or any part of the issue; that proposals are to be accompanied with a deposit in cash or certified check payable to the City of Detroit on any National Bank in the United States or on any State Bank in the City of Detroit, in the amount of two per cent of the proposal, to be retained by the City of Detroit as stipulated damages in the event of non-performance of any proposal accepted, the Common Council reserving the right to reject any or all proposals received; that proposals are to be addressed to the City Controller of the City of Detroit, endorsed "Proposal for the Purchase of Detroit City Bonds," and will be received to 11 o'clock of the forenoon of January 19, 1920.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Kronk:

Resolved, That under authority of the Charter of the City of Detroit adopted June 25, 1918, in effect June 27, 1918, as amended by the electors of the City of Detroit at an election held in said City April 7, 1919, by amendments filed with the Secretary of State of the State of Michigan and in effect April 18, 1919, the Common Council of the City of Detroit does hereby express and record its judgment that the sum of $100,000 is at this time required to be provided by the sale of bonds, which in the sum of $3,000,000 have been by the electors of the City of Detroit heretofore authorized and approved to be issued and sold in said sum of $3,000,000, or such part thereof as the said Council shall from time to time determine, to erect a bridge over the American channel of the Detroit River between Belle Isle and the mainland at the intersection of Jefferson Avenue and East Grand Boulevard and to provide an approach or approaches thereto.

Further Resolved, That it is hereby determined to provide said sum of $100,000, so at this time required, by borrowing upon the faith and credit of the City and upon the best terms that can be made the said sum of $100,000 and to issue and sell General Public Improvement Bonds of the City therefor, said bonds to be issued and sold in amounts of $100 each, to be numbered from one to one thousand, inclusive, to be dated January 15, 1920, to be due and mature January 15, 1950, to bear interest at the rate of 4½ per cent per annum, payable semi-annually, principal and interest to be payable in lawful money of the United States at the current official bank of the City of Detroit in the City of New York or at the office of the City Treasurer of the City of Detroit at the option of the holder.

Further Resolved, That the City Controller be and he is hereby directed to advertise in the official newspaper of the City of Detroit, The Detroit Legal News, in three issues for sealed proposals for the purchase of said $100,000 General Public Improvement Bonds of the City of Detroit about to be issued, in amounts of $100 each, numbered from one to one thousand, inclusive, to bear interest at the rate of 4½ per cent per annum, payable semi-annually, to be dated January 15, 1920, to be due and mature January 15, 1950, principal and interest to be payable in lawful money of the United States at the current official bank of the City of Detroit, in the City of New York or at the office of the City Treasurer in the City of Detroit at the option of the holder, proposals to be for the purchase of said bonds at the greatest premium above par which the prospective purchaser will pay therefor at the rate of interest therein fixed at 4½ per cent per annum, payable semi-annually.

Further Resolved, That the City Controller announce in said advertising that said bonds will be approved as to legality by John C. Thomson, attorney, of New York City, and that proposals are to be conditioned only on the approval of said Thomson; that said bonds are exempt from all taxation in the State of Michigan; that said bonds will be issued in coupon form or in registered form and if issued in coupon form will be exchanged for bonds in registered form at any time upon application of the owner; that said bonds will be delivered at the office of the City Treasurer upon payment of amount named in proposal and of interest on principal accrued to date of delivery; that proposals will be entertained for the whole or any part of the issue; that proposals are to be accompanied with a deposit in cash or certified check payable to the City of Detroit on any National Bank in the United States or on any State Bank in the City of Detroit, in the amount of two per cent of the proposal, to be retained by the City of Detroit as stipulated damages in the event of non-performance of any proposal accepted, the Common Council reserving the right to reject any or all proposals received; that proposals are to be addressed to the City Controller of the City of Detroit, endorsed "Proposal for the Purchase of Detroit City Bonds," and will be received to 11 o'clock of the forenoon of January 19, 1920.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Kronk:

Resolved, That the Controller be and he is hereby authorized and directed to pay any vouchers submitted by His Honor the Mayor for expenses incurred for a dinner at the Board of Commerce and entertainment of ex-service men on Christmas, December 25, 1919, funds for payment of such vouchers to be taken from surplus remaining in the appropriation made for "War Souvenirs, Contingencies or Otherwise," in the estimates for the current fiscal year.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Kronk:

Resolved, That this Body does hereby determine and certify that work under contract with

Detroit Asphalt Paving Company, for paving Florida Avenue.

E. J. Powelson, for paving Alley No. 1075.

Lennane & McIlvenna, for paving Alley No. 1066.

Talbot Company, for paving Alley No. 1061.

Western Construction Company, for constructing Lateral Sewer No. 3167.

Lennane & McIlvenna for constructing Lateral Sewer No. 3145, have been completed and have been found to be in accordance with the several contracts and specifications for the same, and that the said work, be, and is hereby accepted; that all things by the Revised Charter of the City required relevant to letting contracts for said work, carrying on the same, and levying assessments to defray the expense thereof have been done in due manner, form and time, further.

Resolved, That the City Controller be directed to prepare appropriate special assessment bonds, dated December 15, 1919, in the total sum of $83,496.60, bearing interest at 5 per cent per annum, payable as provided by the Revised Charter of the City of Detroit, and to deliver the same, or in case of sale thereof, the proceeds therefrom, after first deducting such amounts as the said contractors may respectively owe to the City of Detroit, to the contractors as respectively entitled thereto in full payment of all liability of the said City of Detroit under the said several contracts.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Kronk:

AN ORDINANCE to repeal certain obsolete ordinances of the City of Detroit:

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. That Chapter 21 of the Compiled Ordinances of Detroit, of 1912, approved May 31, 1911 (triplicate order system) be and the same is hereby repealed.

Section 2. That Chapter 22 of the Compiled Ordinances of Detroit, of 1912, approved October 5, 1909 (House of Correction money) be and the same is hereby repealed.

Section 3. That Chapter 23 of the Compiled Ordinances of Detroit, of 1912, approved December 4, 1906 (Control of City Employes) be and the same is hereby repealed.

Section 4. That Chapter 33 of the Compiled Ordinances of Detroit, of 1912, approved January 1, 1862 (Claims against the City) be and the same is hereby repealed.

Section 5. That Chapter 42 of the Compiled Ordinances of Detroit, of 1912, approved October 20, 1890 (Indexing Council Proceedings) be and the same is hereby repealed.

Section 6. That Chapter 44 of the Compiled Ordinances of Detroit, of 1912, approved July 13, 1877 (Appointment of Clerks, etc.) be and the same is hereby repealed.

Section 7. That Chapter 45 of the Compiled Ordinances of Detroit, of 1912, approved March 3, 1894 (Recorders Court Clerks) be and the same is hereby repealed.

Section 8. That Chapter 46 of the Compiled Ordinances of Detroit, of 1912, approved April 7, 1891 (number of work hours) be and the same is hereby repealed.

Section 9. That Chapter 48 of the Compiled Ordinances of Detroit, of 1912, approved December 30, 1899 (minimum wage) be and the same is hereby repealed.

Section 10. That Chapter 49 of the Compiled Ordinances of Detroit, of 1912, approved June 9, 1891 (employes on Belle Isle Bridge) be and the same is hereby repealed.

Section 11. That Chapter 50 of the Compiled Ordinances of Detroit, of 1912, approved February 6, 1905 (contracts in triplicate) be and the same is hereby repealed.

Section 12. That Chapter 51 of the Compiled Ordinances of Detroit, of 1912, approved August 15, 1905 (books, printed matter, etc.) be and the same is hereby repealed.

Section 13. That Chapter 52 of the Compiled Ordinances of Detroit, of 1912, approved July 15, 1905 (distribution of supplies) be and the same is hereby repealed.

Section 14. That Chapter 112 of the Compiled Ordinances of Detroit, of 1912, approved December 12, 1895 (high pressure boilers) be and the same is hereby repealed.

Section 15. That Chapter 141 of the Compiled Ordinances of Detroit, of 1912, approved August 7, 1906 (delivery of ice) be and the same is hereby repealed.

Section 16. That Chapter 169 of the Compiled Ordinances of Detroit, of 1912, approved August 7, 1911 (mortgage loans) be and the same is hereby repealed.

Section 17. That Chapter 311 of the Compiled Ordinances of Detroit, of 1912, approved November 19, 1912 (compilation of ordinances) be and the same is hereby repealed.

Section 18. That an Ordinance entitled, "An Ordinance to provide an assistant in the law department" approved September 15, 1914, and known as Ordinance No. 137-A, be and the same is hereby repealed.

Section 19. That an Ordinance entitled "An Ordinance to provide a method whereby securities in the sinking fund of the City of Detroit may be sold or disposed of from time to time as necessity may require," approved December 18, 1914, and known as Ordinance No. 162-A,

9 be and the same is hereby re-
10 pealed.

Section 20. That an Ordinance
2 entitled "An Ordinance to fix and
3 determine the license fee to be paid
4 by persons, corporations, partner-
5 ships or associations engaged in the
6 business of making loans, etc." ap-
7 proved March 1, 1915, and known as
8 Ordinance No. 199-A, be and the
9 same is hereby repealed.

Section 21. That an ordinance en-
2 titled "An Ordinance to provide for
3 the bonding of employes in the De-
4 partment of Safety Engineering,"
5 approved August 8, 1916, and known
6 as Ordinance No. 418-A, be and the
7 same is hereby repealed.

Section 22. That an Ordinance
2 entitled "An Ordinance to change
3 the title of the Boiler Inspector's
4 Office to more properly designate
5 and indicate the duties of the office"
6 approved April 11, 1916, and known
7 as Ordinance No. 349-A, be and the
8 same is hereby repealed.

Section 23. That an Ordinance en-
2 titled "An Ordinance to provide for
3 better co-ordination of inspectional
4 work on elevators, etc.," approved
5 December 5, 1916, and known as Or-
6 dinance No. 440-A, be and the same
7 is hereby repealed.

Sec. 24. That an Ordinance en-
2 titled "An Ordinance to regulate the
3 service, time and the wages of city
4 employes and employes of contract-
5 ors doing public work" approved
6 October 8, 1917, and known as Ordi-
7 nance No. 537-A, be and the same is
8 hereby repealed.

Sec. 25. That an Ordinance en-
2 titled "An Ordinance to determine
3 the rate of interest on bonds, etc."
4 approved January 21, 1919, and
5 known as Ordinance No. 619-A, be
6 and the same is hereby repealed.

Sec. 26. That an Ordinance en-
2 titled "An Ordinance to ratify and
3 confirm action of the Common Coun-
4 cil, Controller and other city offi-
5 cials in regard to the sale of various
6 bonds, etc." approved January 21,
7 1919, and known as Ordinance No.
8 620-A, be and the same is hereby re-
9 pealed.

Sec. 27. This ordinance shall take
2 effect thirty days after its approval
3 by the Mayor.

Read twice by title, ordered printed
and laid on the table.

By Councilman Nagel:

AN ORDINANCE to authorize and di-
rect the City Controller of the City
of Detroit to purchase, at any an-
nual tax sale for delinquent state
and county taxes, any and all par-
cels of real estate within the limits
of said City, and as may have been
designated by the Common Council
of said City for that purpose, and as
may have been previously bid in by
him for said City at any tax sale of
lands delinquent for general city
taxes and special assessments levied
thereon.

IT IS HEREBY ORDAINED BY
THE PEOPLE OF THE CITY OF DE-
TROIT:—

Section 1. That it shall be the
2 duty of the City Treasurer, on or
3 before the first day of April, in
4 each year, to prepare for the City
5 Controller a list of all parcels of
6 real estate within the limits of the
7 City as may have been desig-
8 nated by the Common Council of
9 the City, and as may have been

10 previously bid in by said Control-
11 ler for the City, and not re-
12 deemed, at any tax sale under the
13 provisions of Title 6, Chapter 4,
14 Sections 21 and 22 of the City
15 Charter for delinquent general city
16 taxes and special assessments
17 levied thereon.

Sec. 2. That it shall thereupon be
2 the duty of the City Controller for
3 the purpose of protecting the in-
4 terests of the City therein under its
5 several tax title bids therefor to
6 purchase for the City at any an-
7 nual tax sale of lands for delinquent
8 state and county taxes, any and all
9 parcels of real estate within the
10 limits of the City, and as may have
11 been designated by the Common
12 Council of the City for that pur-
13 pose, and as may have been pre-
14 viously bid in by him for said City,
15 and not redeemed, at any sale for
16 delinquent general city taxes and
17 special assessments levied thereon.

Sec. 3. That it shall be the duty of
2 the City Treasurer to keep a com-
3 plete record in books provided by
4 him for that purpose of all pur-
5 chases made by the City Controlle
6 of any and all parcels of real e
7 tate within the limits of the City
8 and as may have been designate
9 by the Common Council of sai
10 City at any sale for delinquer
11 state and county taxes.

Sec. 4. That any parcel of real es-
2 tate purchased by the City Con-
3 troller for the City at any annual
4 tax sale for state and county taxes
5 levied thereon, under the provi-
6 sions of this ordinance, shall be
7 redeemable in the manner and as
8 is provided for in and by the gen-
9 eral tax laws of the State of Mich-
10 igan.

Read twice by title, ordered printed
and laid on the table.

By Councilman Nagel:

Resolved, That the City Treasurer
be and he is herein authorized and
instructed to extend the time for a
period of thirty days from the adop-
tion of this Resolution for the pay-
ment of the paving assessment Roll
No. 2845, for the paving of Kirby ave-
nue, on account of various changes
having been made in the original as-
sessment roll.

Adopted as follows:
Yeas—Bradley, Castator, Kronk,
Littlefield, Nagel, Simons, Vernor, and
the President—8.
Nays—None.

By Councilman Nagel:

Resolved, That the resolution adopt-
ed at the meeting held on August 5
1919 (see Journal of C. C. page 1200),
in the matter of a site for playgrounds,
recreation facilities and municipal
buildings to be thereon constructed
situated in the block bounded by Riv-
ard, Livingstone, Hastings and Brad
streets, be and the same is hereby re
scinded, as the survey of the City En
gineer shows that all of the propert
necessary for the above site was no
described in said resolution.

Adopted as follows:
Yeas—Bradley, Castator, Kronk,
Littlefield, Nagel, Simons, Vernor, and
the President.—8.
Nays—None.

By Councilman Nagel:
Resolved, That the Common Council

of the City of Detroit declares a public improvement to be necessary in the City of Detroit, and it also declares that it deems it necessary to take private property for such improvement, to-wit: For a site for playgrounds, recreation facilities, and municipal buildings to be thereon constructed, and that such improvement is for the use or benefit of the public. The private property which this Common Council deems necessary to take for such public improvement is situated in the block bounded by Rivard, Livingstone, Hastings and Brady streets, and is described as follows:

Lot 24, the east 8.35 feet of Lot 45, and Lot 46 of Bauman's Sub. of Outlots 17, 18 and 19, L. Moran Farm, as recorded in Liber 1, page 280 of Plats of Wayne County Records, Detroit, Wayne County, Michigan.

Also all of Lots 1 to 5, both inclusive, of Vincent's Subdivision of part of Outlot 186 south of Indiana street, Rivard Farm, as recorded in Liber 8, page 38 of plats of Wayne County Records, Detroit, Wayne County, Michigan.

Also Lots 1 to 5, both inclusive, of H. Walling's Subdivision of part of Outlot 186, Rivard Farm, as recorded in Liber 5, page 32 of plats of Wayne County Records, Detroit, Wayne County, Michigan.

Resolved, That the Corporation Counsel be, and he is hereby directed to institute the necessary proceedings in behalf of the City of Detroit, in the Recorder's Court of said City to carry out the object of this resolution in regard to taking private property by said City.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Simons:

Resolved, That the Controller be and he is hereby authorized and directed to draw a warrant upon the proper fund in favor of William Delaney for the sum of $115.00, to reimburse him for amount paid to J. E. Lilly for redemption of tax title (Certificate 616), issued against "North 50 ft. of south 400 ft. of O. L. 189, except the south 13.40 ft. of east 118 ft. thereof, L. Beaubien Farm," east side Beaubien street, by reason of non-payment of general city taxes for the year 1911, said taxes having been cancelled by resolution adopted June 4, 1912, and erroneously sold for delinquent taxes, the payment herein authorized being on the grounds of charity.

Adopted as follows:

Yeas—Councilmen Bradley, Castator, Kronk, Littlefield, Nagel, Simons, Vernor and the President—8.

Nays—None.

By Councilman Vernor:

AN ORDINANCE to amend Section 6 of Chapter 187 of the Compiled Ordinances of the City of Detroit for the year 1912, as amended by an ordinance approved by the Mayor on May 14, 1913.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. That Section 6 of Chapter 187 of the Compiled Ordinances of the City of Detroit for the year 1912, be and the same is hereby amended to read as follows:

Section 6. Any such person, firm, corporation, owner or driver shall be entitled to receive the compensation provided for in this ordinance immediately upon the transportation of his load. Each owner shall keep a record of the place from and the place to which he moves the household furniture of any person, and the person for whom the same was moved; and on Monday of each week he shall file with the Police Commissioner a statement containing every such transaction of the previous week. The blanks shall be furnished free of charge upon application to the Police Commissioner.

Sec. 2. This ordinance shall take effect 30 days after approval.

Read twice by title, ordered printed and laid on the table.

And the Council then adjourned.

JOHN C. LODGE,
President.

RICHARD LINDSAY,
City Clerk.

## Ordinance No. 685-A

AN ORDINANCE to license and regulate the business of junk dealers and second hand dealers, and to repeal ordinances inconsistent herewith.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. No person, partnership or corporation shall engage in the business of a junk dealer for the purchase or sale of what is commonly called junk, such as rags, paper, bags, bagging, iron, brass, copper, tin, zinc, aluminum, scrap or discarded metal bottles or other articles, whether manufactured or in the process of manufacture, or raw material, whether old or new, nor transport through the streets or alleys of the City of Detroit, any conveyance for the purpose of collecting or disposing of such articles, without a license from the mayor as herein provided.

Section 2. The mayor is hereby authorized to grant a license to any reputable person being a resident of the City of Detroit and a citizen of the United States or to any reputable corporation or partnership to engage in the business of a junk dealer for the purchase and sale of the articles mentioned in Section 1, upon such licensee paying into the City Treasury the sum of ten dollars ($10.00) and executing a bond to the City of Detroit in the penal sum of two thousand dollars ($2,000.00) with one or more sureties, to be approved by the mayor, conditioned that he will faithfully observe the provisions of this ordinance.

Section 3. The mayor is hereby authorized to grant a license to any reputable person being a resident of the City of Detroit and a citizen of the United States, or to any reputable corporation or partnership to engage in the business of buying and selling articles mentioned in Section 1, with a cart, wagon or other vehicle upon such licensee paying into the city treasury the sum of one dollar ($1.00). Every license receiving such a license shall have the number of the same placed in a conspicuous place on each side of his vehicle by means of two tin labels to be furnished by the license collector.

Section 4. The mayor may refuse to issue a license to any applicant who has previously been convicted of any crime or who has twice been convicted of violating the provisions of this ordinance, or for other good cause shown. Every license issued under the provisions of this ordinance shall expire one year after the date of its issuance. Each application for a license shall contain an agreement on the part of the applicant that he will accept the license, if granted him, upon the condition that it may be suspended or revoked at the will of the mayor. Any license issued under Section 2 of this ordinance shall state the street number or location of the office or yard designated in application as constituting the principal place of business of the licensee, and such license shall not be used for any other location without the approval of the mayor.

Section 5. No licensee hereunder shall receive in the course of his business any article by way of a pledge or pawn, nor shall he loan or advance any sum of money on the security of any article or thing.

Section 6. Every licensee shall, on demand, exhibit all goods purchased or received, and give the name, residence and a description of the person from whom the same was purchased or received to the mayor or officers of the Police Department. He shall keep a record or book, written in ink in the English language, containing the name, residence and description of all persons from whom purchases are made.

Section 7. All articles purchased or received in exchange, by any party licensed under the provisions of Section 2 hereof, shall be retained by him for at least fifteen days (15) before disposing of them, in an accessible place in the building, where such articles were purchased or received. Provided, however, that this section shall not apply to old rags, waste papers and household goods. Provided, further, that nothing herein contained shall make it necessary for the licensee to retain articles purchased from anyone having a fixed place of business, after a record shall have been made of the purchase of said articles in the book above referred to.

Section 8. No licensee shall purchase, receive or hold any iron, brass, copper, tin, zinc, aluminum or other metal products, or any article composed wholly or in part of any metal, without obtaining a written statement in the English language containing a correct description thereof, signed by the party from whom the same is purchased or received, and setting forth the time when such articles were received by such person and from whom, and declaring that they were not obtained unlawfully or by theft. All such statements shall be preserved for at least one year. The burden of proving ownership and the right of transfer of any such articles mentioned in this paragraph shall be assumed and maintained by the licensee under this ordinance.

Section 9. No licensee shall purchase or receive by sale, barter or exchange, or otherwise, any article mentioned in this ordinance from any person between the hours of 7:00 p. m. and 7:00 a. m., nor from any person under the age of 17 years, nor from any person who is at the time intoxicated, nor from a habitual drunkard nor from any person known by such licensee to be a thief or an associate of thieves or a receiver of stolen property, or from any person he has reason to suspect of being such. No minors under the age of seventeen years shall be permitted to loiter about the premises of any licensee. No person shall be permitted upon the premises of such licensee between the hours of 7 p. m. and 7 a. m., except a necessary watchman.

Notwithstanding the last mentioned provision, a licensee may, with his family, dwell upon the premises where his business is located providing that he shall not conduct said business nor receive, buy or sell junk between the hours of 7:00 P. M. and 7:00 A. M.

Section 10. The mayor may, at any time, suspend or revoke any license granted, under this ordinance and order the shop or place of business to be closed. All licenses granted hereunder are issued and accepted with the understanding that they are subject to suspension or revocation at the will of the mayor. In case of such suspension or revocation the Commissioner of Police shall cause to be served upon the holder of the license so suspended or revoked, or the person in charge of the business, notice in writing of such action of the mayor. No person shall continue to operate such business after the service upon him of such notice of suspension or revocation.

Section 11. Before any license granted under the provisions of this ordinance is suspended or revoked by the mayor, charges in writing shall be preferred against the licensee whose license it is sought to suspend or revoke. Such charges shall be served upon such licensee and he shall be given a hearing before the mayor, with a reasonable opportunity to present evidence in his defense.

Section 12. Any person, firm or corporation who shall violate any provision of this ordinance or shall fail to comply with the same shall, upon conviction thereof, be punished by a fine of not more

than five hundred dollars ($500.00) or by imprisonment of not more than ninety (90) days, or by both, such fine and imprisonment in the discretion of the Court.

Section 13. Ordinance No. 395-A, entitled "An Ordinance to license and regulate the business of junk dealers," approved June 6, 1916, and all ordinances and parts of ordinances inconsistent herewith, are hereby repealed. Provided, however, that any license issued in pursuance of said ordinance No. 395-A shall be valid during the remainder of the term for which granted, and any person, firm or corporation holding such a license shall not be required to procure a license under this ordinance until the date of the expiration of the license so held.

Section 14. This ordinance shall take effect thirty days after its approval by the mayor.

Approved, Dec. 2, 1919.

JAMES COUZENS,
Mayor.

Attest:
RICHARD LINDSAY,
City Clerk.

# ORDINANCE 680-A

AN ORDINANCE to amend Sections 2 and 9 of an ordinance entitled "An Ordinance to regulate the use of vehicles and to establish an automobile pound," approved March 12, 1917, as amended.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. That Section 2 of an ordinance entitled "An Ordinance to regulate the use of vehicles and to establish an automobile and vehicle pound," as amended, be amended by adding a subdivision thereto to be known as Section 2(c) to read as follows: and that Section 9 of said ordinance, as amended, be hereby amended to read as follows:

Section 2(c). Provided further, that from 7 a. m. to 10 a. m. and from 4 p. m. to 7 p. m. no vehicles shall be parked or be permitted to remain standing on Woodward Avenue from the Detroit River to the Grand Boulevard for more than five minutes at any one time. Provided, however, that commercial vehicles may back up to the curb as hereinafter provided. Between the hours of 10 a. m. and 4 p. m. no vehicle shall be permitted to park or remain standing on Woodward Avenue between the Detroit River and the Grand Boulevard for a longer period than twenty minutes. Provided, however, except when actually loading or unloading, no vehicle shall remain backed up to the curb on Woodward Avenue between the Detroit River and the Grand Boulevard for more than ten minutes at any one time. Such vehicles shall not stand at an angle of more than 45 degrees from the curb, and they shall stand at an angle of less than 45 degrees from the curb when necessary to prevent interference with the operation of street cars.

Section 9. There is hereby created an automobile and vehicle pound, which shall be a place to which automobiles and other vehicles may be removed by the Department of Police in the cases hereinafter provided. Such pound shall be located and operated upon such portion of the block of property bounded by Macomb street on the south, Clinton street on the north, Beaubien street on the west and St. Antoine street on the east, immediately west of and adjoining the Municipal Courts Building, as may be necessary to accommodate the vehicles impounded. The Commissioner of Police shall designate an officer or officers to remain in attendance at said pound from 7 a. m. to 10 p. m. each day except Sunday, for the purpose of receiving, safeguarding and discharging vehicles and of collecting the fees hereinafter provided for. From 10 p. m. to 7 a. m. the owner of a vehicle which has been impounded, may obtain the same by calling at Precinct No. 1, Police Headquarters, and paying the impounding charge under the same conditions as herein set forth.

Whenever any vehicle shall be found by a police officer, parked or left standing in violation of this ordinance, such police officer may, under Section 8 of this ordinance, file a complaint in the Recorder's Court of the City of Detroit against the owner or driver of such vehicle; or such vehicle may be removed and conveyed by means of towing the same or otherwise, by a Police officer to the Automobile and Vehicle Pound. Such vehicle shall not be so charged or removed from said pound except upon the payment by the owner of such vehicle, or his duly authorized representative to the officer in charge of such pound, of a fee of one dollar for the first violation of this ordinance, by such owner, of three dollars for the second violation, and of five dollars for each subsequent violation. Provided that no violations committed prior to the date when this amending ordinance goes into effect and no violation committed more than one year prior to any other violation shall be considered in determining the number of violations committed by a particular owner. When the owner of a vehicle impounded, or his representative, presents himself at the pound to claim his vehicle, it shall be the duty of the officer in charge to inform such owner, or his representative, of the nature and circumstances of the violation on account of which such vehicle has been impounded. In case protest is made by such owner or his representative against the payment of such impounding fee, and such protest is supported by a denial by him under oath of the facts constituting the alleged violation, there shall be given him, by the officer in charge of said pound, upon payment by such person of the proper fee, according to the number of violations, a receipt for the same, marked "Paid Under Protest." But in such

case, it shall thereupon be the duty of the officer having knowledge of the facts, to forthwith make a complaint in the Recorder's Court for the City of Detroit, under Section 3 hereof, charging the owner or driver of such vehicle with that violation of the ordinance on account of which the vehicle was impounded. Provided, however, that in case such person is subsequently found not guilty by the Recorder's Court of having committed the violation on account of which the vehicle of such person was impounded, it shall thereupon be the duty of the Commissioner of Police to refund to such person the fee paid by him under protest.

When it is deemed impractical, or inadvisable by an officer, witnessing a violation of this ordinance, to tow the offending vehicle to the pound, he may, instead, post or affix a notice to such vehicle notifying the driver of the facts of the violation and directing him to pay to the officer in charge of the pound, the fee which would have been charged if the vehicle had been impounded. Such notice shall further state that, if such fee is not paid within forty-eight hours from the time of the leaving of such notice, a complaint will be made in the Recorder's Court against the violator. If the owner of such vehicle or his representative presents himself at the pound, in response to such notice, he shall be subject to the same penalties and entitled to the same rights as though his vehicle had been impounded. If he does not present himself as directed or does not pay the proper fee within forty-eight hours from the time such notice was posted, the officer, having knowledge of the facts, shall forthwith make a complaint against such violator in the Recorder's Court, charging him with the violation on account of which such notice was posted.

Approved October 21, 1919.

JAMES COUZENS,
Mayor.

Attest:
RICHARD LINDSAY,
City Clerk.

## Ordinance No. 679-A

**AN ORDINANCE to license and regulate taxicab owners and taxicab drivers, to prescribe conditions under which they may do business on the streets of the City of Detroit, to fix the rates of fare that may be charged for the use of such vehicles, to provide for traffic regulation to govern such vehicles, to repeal all ordinances or parts of ordinances in conflict therewith.**

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Section 1. No person, firm, co-partnership, or corporation, shall keep for hire, within the limits of the City of Detroit, any taxicab without first obtaining a license therefor from the Mayor.

Section 2. The Mayor is hereby authorized to grant a license for the purpose aforesaid to any citi-

zen of the United States, resident of the City of Detroit of the age of twenty-one years or upwards, and of good moral character, or to any co-partnership or corporation authorized to operate taxicabs and doing business in accordance with the laws of the State of Michigan. Such license may be granted by the Mayor, upon the applicant paying into the city treasury the sum of ten dollars ($10.00) for each taxicab to be kept as aforesaid for a public conveyance and executing a bond to the City of Detroit in the sum of $1,000.00 for each taxicab, with one or more adequate sureties, conditioned that such taxicab will be operated in accordance with the provisions of the laws of the State of Michigan and the charter and ordinances of the City of Detroit, and that no greater rate of fare will be charged to any person hiring such taxicab than the rate of fare permitted by law, and that any property left by any person in such taxicab will be returned to him upon application, and that any judgment rendered in any court against such applicant arising out of damage or injury to any person or property caused by the negligent operation of such taxicab will be paid. Any person, firm or corporation who is damnified by reason of such taxicab being operated in violation of the provisions of such bond may, in the name of the people of the City of Detroit, institute an action upon the same to recover damages sustained by him. All licenses issued by the Mayor, unless sooner revoked by him as hereinafter provided, shall expire on the thirty-first day of July of each year. When this ordinance becomes operative licenses issued under Chapter 133 of the Compiled Ordinances of the City of Detroit shall be invalid in so far as persons required to be licensed thereunder are required to be licensed under the provisions of this ordinance. When such license shall have been granted the licensee shall affix to the taxicab so licensed a small plate not exceeding six inches in diameter, which shall bear the license number of the vehicle. The registration of such numbers shall be under the administration and control of the Police Department and the design of such license plates shall be changed annually.

Section 3. Every operator of a taxicab, duly licensed hereunder, shall, in addition to affixing the license plate, hereinbefore provided for, to said taxicab, also provide that after sundown the face of every taximeter shall be illuminated by a suitable light so arranged as to throw a steady light upon the face thereof. The failure to provide such taximeter with such light shall, upon proof thereof, be cause for revocation of license of driver.

Section 4. No person, firm, co-partnership or corporation, shall operate a taxicab within the City of Detroit unless the same shall be licensed in accordance with the provisions of Section 2 hereof. Any person, firm, co-partnership

or corporation who attempts to operate a public taxicab or to engage in such business without having first obtained such license or whose license has been revoked, shall be penalized as hereinafter provided for.

Section 5. No person, firm, co-partnership, or corporation shall permit an employee to drive a public taxicab within the City of Detroit without having first obtained a license as a public driver from the Mayor. The Mayor is hereby authorized to grant public driver licenses to citizens of the United States, residents of Detroit, of the age of twenty-one (21) years and upwards, of good moral character, sound physique, and not subject to any infirmity of body or mind which might render such driver unfit for the safe operation of a public vehicle. Such applicant for such license must also be able to read and write the English language and not be addicted to the use of intoxicating liquors. The Mayor may grant such public driver license upon the applicant applying for the same conforming to the foregoing requirements and paying into the city treasury the sum of one dollar ($1.00), and executing a bond to the City of Detroit in the penal sum of two hundred dollars ($200.00), with one or more adequate sureties, conditioned that while acting as a public driver he will comply with the laws of the State of Michigan, the charter and ordinances of the City of Detroit, that he will not charge any person hiring a taxicab a greater rate of fare than that allowed by law, that he will return any property left by any person in the taxicab operated by him, and that he will pay any judgment rendered against him arising out of damage or injury to any person or property caused by the negligent operation by him of a taxicab. Any person, firm or corporation who is damnified by reason of such licensee violating any of the provisions of such bond may in the name of the People of the City of Detroit, institute an action upon the same to recover damages sustained by him. The public driver license granted hereunder shall be in such form as to contain a true photograph of the licensee, the licensee's signature, and sufficient blank space upon arrest of such driver or serious complaint against him. Any licensee who defaces, removes or obliterates any entry made upon said license blank may be penalized by which a record may be kept of any the revocation of his license. Upon the issuance of such public driver license, there shall be delivered to such licensee a metal badge, of such form and style as the Commissioner of Police shall approve, with the license number thereon. Such badge must be continually and conspicuously displayed on the outside of the licensee's coat when he is engaged in his employment as public driver, and the failure of licensee to so exhibit such badge shall be cause for revocation of his license. A full and complete record of each license issued

hereunder containing record of all renewals, suspensions and revocations thereof, shall be kept on file with the original application for such license in the Bureau of Records of the Police Department of the City of Detroit. The Mayor may revoke or suspend such license at any time for cause, after a hearing. Two (2) suspensions of such license shall automatically revoke the same, and any driver whose license has been so revoked shall not again be licensed as a public driver in the City of Detroit. All public driver licenses shall expire, unless sooner revoked by the Mayor, on July 31st, of each year.

Sec. 6. No person, firm, co-partnership or corporation shall permit any unlicensed driver to operate any public taxicab in the City of Detroit, and any person, firm, co-partnership or corporation, operating such public taxicab without such public driver license or which license has been suspended or revoked, shall, upon conviction, be penalized as hereinafter provided.

Sec. 7. The Commissioner of Police is hereby authorized to locate and designate, as public taxicab stands, the space alongside the curb adjacent to property used public parks, public buildings, restaurants, theaters, the center of any street, avenue or public place where the roadway, exclusive of the sidewalk, is at least thirty (30) feet in width. Provided however, that no such stand shall be designated, or, if already, designated, such stand shall be discontinued upon written protest filed with the Commissioner of Police, by the abutting property owner or lessee of the premises in front of which such stand is located or intended to be located. He shall further designate the number of such public taxicabs that shall be permitted to stand at any of the public stands designated by him, and he shall cause to be attached to a post or stanchion a metal sign which shall state the number of public taxicabs permitted to stand at that particular stand. The Commissioner of Police with the consent of the Common Council, shall designate the space beside the curb adjacent to hotel buildings, operating a public hotel of fifty rooms or more, and to docks, wharves and railroad depots, as a taxicab stand for such taxicab company or companies, as the hotel owner dock or wharf or depot owner, or lessees, shall in writing designate and file such designation with the Commissioner of Police, which written designation shall also state the number of such taxicabs that may be permitted to stand at such place, which number shall not exceed three. The Commissioner of Police shall cause to be attached to a post or stanchion a metal sign which shall state the number of taxicabs permitted to stand at such stand. Provided however, that no public taxicab shall be permitted to stand within five feet of the entrance of any building within the city or within five feet of any crosswalk. The first five feet limitation shall be deter-

mined by measuring five feet on either side of a point at the curb opposite the end of the door or entrance of the building. Provided further, however, that an appeal may be made to the Common Council by any interested party from any order or designation as to taxicab stands made by the Commissioner of Police, or an appeal may be made by the Commissioner of Police to the Common Council from any protest made by any abutting property owner, and the Council may after notification of the interested parties and upon hearing in its discretion, exercised with a view to the public interest order the stand established or discontinued.

Sec. 8. Only public taxicabs in such number as are set forth on the metal signs, hereinbefore referred to, may remain at such stand while waiting for employment and they must be parked in single file. The public taxicab standing at the head of such parked line shall not be permitted to refuse to carry any orderly person who offers to hire such taxicab and agrees to pay the proper rate of fare. Provided, however, that the foregoing provisions shall not be construed to prevent any person from selecting any taxicab he may desire on the stand, whether it be at the head of the line or not. As the taxicabs leave the parked line with passengers, those in the rear shall move up, and any public taxicab seeking space on such stand shall not approach the same except from the rear thereof and shall move up as closely as possible to the last car on said parked line. The Mayor may, upon complaint and hearing, revoke the license of any public driver who violates the foregoing provisions.

Sec. 9. No person, firm or corporation owning, operating or controlling any motor vehicle or taxicab, shall let or offer the same for hire or reward as a taxicab for a fee or charge to be fixed or determined by a taximeter, unless such fare or fee to be charged for the use of such motor vehicle or taxicab, shall be computed by the distance traveled, the time waiting and the amount for extras which shall not exceed the following rates of fare:. For the first one-fifth (1-5) of a mile or fraction thereof, 30c. For each one-fifth (1-5) mile thereafter, 10c. For each four minutes waiting, 10c. Waiting time shall include the time when the taxicab is not in motion, beginning with the arrival at the place to which it has been called or the time consumed while standing at the direction of the passenger, but no charge shall be made for the time lost for inefficiency of the taxicab or its operator or time consumed by premature response to a call. The above charges shall be for one person. For each additional passenger carried a charge not exceeding twenty (20) cents for the entire trip may be made. No charge shall be made for a distance less than one mile traversed by a vehicle going to respond to a call, but for a greater distance a charge of twenty (20c) a mile

may be made for each mile or fraction of a mile in excess of the first mile. When a vehicle is dismissed at a point beyond the four-mile circle, measured from the City Hall, a charge of twenty cents (20c) a mile or fraction thereof, may be made for each mile, or fraction thereof, traversed in returning to said four mile circle, from point of dismissal of vehicle. No returning charge whatever shall be made for any distance traversed within the said four-mile circle regardless of the point of commencement or finish of the trip made. The charges herein set forth shall be binding upon the owners and chauffeurs or such cabs and any collection of fares in excess of said rates shall be punished as provided in this ordinance.

Sec. 10. The owner, driver, chauffeur or person in charge or control of a taxicab or automobile kept for hire shall deliver to the person paying for the hire of the same at the time of such payment, a receipt therefor upon a blank, the form of which is to be prescribed and approved by the Commissioner of Police, Assessments and licenses. This receipt shall contain in legible type or writing the name of the owner, the city license number, the driver's city license number, any other items for which a charge is made, the total amount paid and the date of payment.

Sec. 11. It shall be unlawful for any person to use or permit to be used or drive for hire a public taxicab, equipped with a taximeter, not having the case thereof sealed and the cover and gear thereof intact.

Sec. 12. It shall be unlawful for any driver of a public taxicab equipped with a taximeter or other similar device, while carrying passengers or under employment, to display the signal affixed to such taximeter or other similar device in such a position as to denote such vehicle is not employed, or in such position as to denote that he is employed at a rate of fare in excess of that to which he is entitled under the provisions of this ordinance. It shall be unlawful for any person to drive a public taxicab on which has been affixed any taximeter other than the one duly inspected and approved.

Sec. 13. Every driver of a public taxicab, immediately after the termination of any hiring or employment, must carefully search such taxicab for any property lost or left therein, and any such property, unless sooner claimed or delivered to the owner, must be taken to the nearest police station and deposited with the officer in charge within twenty-four hours after the finding thereof, and the officer in charge of the precinct to which such report shall be made shall forward a written notice to the Police Property Officer with brief particulars and description of the property.

Sec. 14. Every driver of a public taxicab shall have the right to de-

mand payment of the legal fare in advance, and may refuse employment unless so prepaid, but no driver of a public taxicab shall otherwise refuse or neglect to convey any orderly person or persons upon request anywhere in the city unless previously engaged or unable to do so. No driver of a licensed taxicab shall carry any other person than the person first employing a taxicab without the consent of said passenger.

Sec. 15. All disputes as to the lawful rate of fare shall be determined by the police officer in charge of the station, or the police officer nearest to where such dispute is had; failure to comply with such determination shall subject the offending party to a charge of disorderly conduct, punishable by a fine of not exceeding ten ($10) Dollars, or in default thereof, imprisonment for not more than ten (10) days.

Sec. 16. No public taxicab, while awaiting employment by passengers, shall stand on any public street or place other than that upon a public taxicab stand, designated or established in accordance with this ordinance; nor shall any driver of such taxicab seek employment by repeatedly and persistently driving his taxicab to and fro in a short time before, or by otherwise interfering with the proper and orderly access to or egress from theater, hall, hotel, public resort, railway or ferry station or other place of public gathering, but any taxi may solicit employment by driving through any public street or place without stops other than those due to obstruction of traffic and at such speed as not to interfere or impede traffic, and may pass and repass before any theatre, hall, hotel, public resort, railway or ferry station or other place of public gathering, provided that after passing such public place he shall not turn and repass until he shall have gone a distance of two blocks beyond such place.

Sec. 17. No person shall be permitted to ride on the front seat with the driver and any driver who shall permit this to be done may be deprived of his license. It shall be the duty of all police officers to notify the Superintendent of Police of any violation of this provision.

Sec. 18. No person shall solicit passengers for a public taxi upon the streets and highways of the City of Detroit except the driver of a public taxi when sitting upon the driver's box of his vehicle. The chauffeur or driver of any taxicab or automobile kept for hire shall remain on the driver's seat or inside of his vehicle at all times when such vehicle is standing upon the public stands or when actually engaged in carrying passengers, provided that nothing in this section shall be held to prohibit such driver or chauffeur from alighting to the street or sidewalk for the purpose of assisting passengers into or out of such vehicle or take care of the calls of nature while upon a public stand, limiting his absence

from said stand to fifteen minutes during which time his taxicab or car for hire shall occupy a position at the rear end of said public stand.

Sec. 19. It shall be unlawful for any person other than the driver or owner of a taxicab or automobile kept for hire standing upon the public streets, to loiter at, within or near said taxicab or automobile kept for hire.

Sec. 20. Any person, firm, copartnership or corporation violating any of the provisions of this ordinance shall, upon conviction thereof, be subject to a fine not exceeding the sum of One Hundred ($100.00) Dollars or imprisonment in the Detroit House of Correction for a period of not exceeding ninety (90) days, or both such fine and imprisonment in the discretion of the Court.

Sec. 21. All ordinances or parts of ordinances affecting the regulating of licenses for public taxicabs and taxicab drivers, and affecting and regulating rates of fare, terms and conditions under which said public taxicabs shall operate within the City of Detroit and regulating the establishment of taxicab stands, are hereby repealed, if in conflict herewith.

Passed by Common Council, September 30, 1919.

Attest:

RICHARD LINDSAY,
City Clerk

## ORDINANCE 682-A

An Ordinance to amend Section 7, Chapter 204 of the Compiled Ordinances of the City of Detroit for the year 1912.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT:

Sec. 1. That Section 7, Chapter 204 of the Compiled Ordinances of the City of Detroit for the year 1912, be and the same is hereby amended so as to read as follows:

Section 7. It shall be the duty of every patrolman in said Police Department, and every other person who may be appointed by the Common Council for that purpose, to promptly seize, take up and place in said pound, all dogs that may be found running at large, harbored or owned contrary to the provisions of this Ordinance, and for every dog so impounded the patrolman, as herein provided, delivering same at the pound, shall be entitled to receive from the City Treasurer the sum of 35 cents upon surrender to the Treasurer of the receipt mentioned in Section 8 hereof. The person appointed as herein provided shall be paid a salary, said salary to be the same as that provided for the auxiliary officers of the Metropolitan Police Department.

Section 2. This Ordinance shall take immediate effect 30 days after its approval.

Approved Nov. 18, 1919.

JAMES COUZENS,
Mayor.

Attest: