**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION – DETROIT**

------------------------------------------------------- x

|  |  |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No.: 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

------------------------------------------------------- x

### INTERNATIONAL UNION, UAW'S RESPONSE TO THE CITY OF DETROIT'S MOTION IN LIMINE TO PRECLUDE ITS COUNSEL, EVAN MILLER, FROM BEING CALLED AS A TRIAL WITNESS

International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") submits this response to the City of Detroit's Motion *in Limine* to Preclude its Counsel, Evan Miller, from Being Called as a Trial Witness [Docket No. 7001] (the "Motion"), and states as follows:

1.      UAW may decide not to call Mr. Miller as a witness, which will render the Motion moot. He is listed as a "may call" witness for UAW. *See* Stipulation to Entry of Joint Final Pretrial Order by Debtor and Certain Plan Objectors [Docket No. 7060], Attachment H. UAW will be unable to make a more definite determination as to whether to call Mr. Miller, however, until after it reviews the City response to the UAW's supplemental objection to confirmation of its plan of adjustment. Because the City's response is due August 27, the same

deadline for responses to motions *in limine*, UAW submits this response to the

Motion and respectfully requests that the Motion be resolved at the final pretrial

conference scheduled for September 2, 2014. *See* Eighth Amended Order

Establishing Procedures, Deadlines, and Hearing Dates Relating to the Debtor's

Plan of Adjustment [Docket No. 6699].

2.     Even if the Motion is not made moot after a review of the

City's brief, it should be denied because it misapprehends the nature of the

testimony that UAW may seek from Mr. Miller.[1]  First, while the UAW's witness

list does list "efforts, or lack thereof, of the City to negotiate financial relief outside

of bankruptcy," the UAW does not intend to elicit testimony from Mr. Miller on

that subject and hereby withdraws that representation.

3.     Further, the UAW does not intend to seek information protected

by the attorney-client privilege, so the Motion is baseless insofar as it is premised

on that notion.  What the UAW *may* inquire of Mr. Miller is his knowledge of

"communications, and possible understandings or agreements," with *the Detroit

Library Commission* (the "DLC" or the "Library") "concerning pension and OPEB

---

[1] The City's repeated assertions that "UAW had not even attempted to show" why Mr. Miller may have relevant non-privileged testimony is puzzling.  The City has not asked UAW to explain the possible subjects of Mr. Miller's testimony, and, prior to the filing of this response to the Motion, the UAW had no formal opportunity to explain why it may call Mr. Miller as a witness, so it is unclear when the City thinks the UAW should have shown what the City says it has failed to show.

for employees, former employees and retirees of the Library." For example, the DLC's Executive Director, Jo Anne G. Mondowney—listed as one of UAW's "will call" witnesses—testified at her deposition that she participated in a call with Mr. Miller where the relationship of the City and the Library was discussed in the context of the Library's pension and OPEB obligations and possible modifications thereto. *See* Transcript of July 16, 2014 of Jo Anne G. Mondowney[2] at 77:7-79:10.[3]

      4.     The DLC, as set forth more extensively in the UAW's pre-trial brief, is a municipal corporation separate and apart from the City. The DLC is not a client of Jones Day or Mr. Miller and thus any communications between him and DLC representatives are not privileged. Had the City inquired of UAW prior to filing the Motion,[4] it would have learned that UAW has no intention whatsoever of asking Mr. Miller about any communications he had with representatives of *the City*, so the City's argument that the Motion should be granted because the UAW seeks information protected by the attorney-client privilege has no merit.

---

[2] Excerpts from Ms. Mondowney's deposition transcript are attached as Exhibit A.

[3] Ms. Mondowney indicated that another Jones Day attorney, Ms. Lennox, participated in those discussions but UAW did not list her on its witness list because she is the City's trial counsel.

[4] UAW provided its witness list to the City on August 13, 2014.

3

5. Nor does UAW intend to seek Mr. Miller's testimony regarding conversations and communications that took place in the context of court-ordered mediation. Mr. Miller was not involved in any City-UAW mediation meetings concerning the DLC, and the UAW has no intention of asking him about *any* mediations he may have participated in. UAW may—not will—seek Mr. Miller's testimony on the narrow subject of his discussions with the DLC regarding the DLC's pension and OPEB obligations, and will not ask him about any subjects protected by the mediation privilege, as the City would have learned had it asked. Thus, like its assertion that the UAW seeks attorney-client communications from Mr. Miller, the City's reliance on the mediation privilege as a basis for the Motion is misplaced.

6. In sum, the Motion may become moot after UAW reviews the City's response to its Objection, and in any event the UAW does not seek Mr. Miller's testimony to discover information protected by the attorney-client or mediation privilege. The Motion should therefore be denied.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated:  August 27, 2014

Respectfully submitted,


By:  /s/ Babette A. Ceccotti
Cohen, Weiss and Simon LLP
Babette A. Ceccotti
Thomas N. Ciantra
Peter D. DeChiara
Joshua J. Ellison
330 West 42nd Street
New York, NY 10036-6976
T: (212) 563-4100
F: (212) 695-5436
bceccotti@cwsny.com
tciantra@cwsny.com
pdechiara@cwsny.com
jellison@cwsny.com

-   and -

Niraj R. Ganatra (P63150)
8000 East Jefferson Avenue
Detroit, MI 48214
T: (313) 926-5216
F: (313) 926-5240
nganatra@uaw.net

*Attorneys for International Union, UAW*

# Exhibit A

1                  UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF MICHIGAN
2                     SOUTHERN DIVISION

3

4       In re:

5       CITY OF DETROIT, MICHIGAN,     Chapter 9

6                      Debtor.     Case No: 13-53846

7                           Hon. Steven Rhodes
       ===========================/
8

9

10      The Deposition of **JO ANNE G. MONDOWNEY**, Executive

11    Director, Detroit Library Commission, taken before

12    Paulette A. Foster, Certified Shorthand Reporter and

13    Notary Public in and for Wayne County, Michigan, at

14    5201 Woodward Avenue, Detroit, Michigan, on Wednesday,

15    July 16, 2014, commencing at 10:00 a.m.

16    <u>APPEARANCES</u>:

17    PETER D. DeCHIARA, Esq.
       Cohen, Weiss & Simon, LLP
18    330 West 42nd Street
       New York, NY 10036-6979
19    212-356-0216
       pdechiara@cwsny.com
20       On behalf of UAW International

21    ERIC J. PELTON, Esq.
       Kienbaum Opperwall Hardy & Pelton, P.L.C.
22    280 North Old Woodward Ave,  Suite 400
       Birmingham, MI 48009-5394
23    248-645-0000
       epelton@kohp.com
24       On behalf of the Library Commission

25

```
1          I was not a part of that transaction, so I don't know
2          all the particulars.  I only know that our obligation
3          was 23 million and that we began to pay a portion at
4          about 2.5 million beginning in 2010.  And the current
5          emergency manager had stopped -- we're not making        12:25PM
6          payments on that loan.
7      Q.  And then there's a reference to, in the section
8          sentence in the second paragraph:  "The anticipated
9          new structure for the fringe benefits."
10             Do you know what he was referring to there?          12:25PM
11     A.  Yes.
12     Q.  What was he referring to there?
13     A.  He was referring to the instructions that we had
14         received from the City of Detroit in terms of what we
15         were to pay as the modifications -- as part of the      12:25PM
16         modifications to the health care and pension
17         obligations.
18     Q.  Were those modifications that would be applied going
19         forward?
20     A.  Yes.                                                     12:26PM
21     Q.  And what were those -- have those modifications been
22         implemented?
23     A.  They were to become effective in this -- we're now
24         into fiscal year 2015, so the implementations will
25         begin after July 1.                                      12:26PM
```

|   |    |                                                                    |          |
|---|----|--------------------------------------------------------------------|----------|
| 1 | Q. | And what are the modifications?                                    |          |
| 2 | A. | It was the modifications according to what the city                |          |
| 3 |    | said our obligations would be for health care and on               |          |
| 4 |    | pension and OPEBs.                                                  |          |
| 5 | Q. | OPEB?                                                               | 12:27PM  |
| 6 | A. | Right, OPEB.                                                        |          |
| 7 | Q. | Let me ask you to turn the page of Exhibit 12 to the               |          |
| 8 |    | page that says 3 at the top.  There's a reference to               |          |
| 9 |    | the Minutes say you had a telephone call on February               |          |
| 10|    | 24th 2014 with Jones Day attorneys Heather Lennox,                 | 12:27PM  |
| 11|    | Evan Miller and Mrs. Moore.                                         |          |
| 12| A. | Um-hum.                                                             |          |
| 13| Q. | Did you have that phone call on February 24th --                   |          |
| 14| A. | Yes.                                                               |          |
| 15| Q. | -- 2014?                                                            | 12:27PM  |
| 16|    | And who participated in that phone call?                           |          |
| 17| A. | Heather Lenox, Evan Miller, Trinee Moore and myself.               |          |
| 18| Q. | And Heather Lennox and Evan Miller are lawyers for the             |          |
| 19|    | city?                                                              |          |
| 20| A. | From Jones Day, yes, for the city.                                 | 12:28PM  |
| 21| Q. | Do you recall what was discussed in that telephone                 |          |
| 22|    | call?                                                               |          |
| 23| A. | Yes.                                                               |          |
| 24| Q. | What was discussed?                                                |          |
| 25| A. | The library's relationship to the City and the fact                | 12:28PM  |

|     |     |                                                              |          |
| --- | --- | ------------------------------------------------------------ | -------- |
| 1   |     | that the UAW had approached the Jones Day attorneys          |          |
| 2   |     | about the library's relationship and pension and             |          |
| 3   |     | health care.                                                 |          |
| 4   | Q.  | Okay.  Who said what about the library's relationship        |          |
| 5   |     | with the city in that phone call?                            | 12:28PM  |
| 6   | A.  | We said that the city served as the library's               |          |
| 7   |     | fiduciary, that the city administered our pensions,          |          |
| 8   |     | health care and other post-employment benefits.             |          |
| 9   | Q.  | Did you and/or Ms. Moore say anything else on that           |          |
| 10  |     | topic?                                                        | 12:29PM  |
| 11  | A.  | No.                                                          |          |
| 12  | Q.  | Do you recall whether either Ms. Lennox or Mr. Miller        |          |
| 13  |     | said anything about the topic of the library's              |          |
| 14  |     | relationship with the city?                                  |          |
| 15  | A.  | No.                                                          | 12:29PM  |
| 16  | Q.  | They didn't say anything -- do you recall that they          |          |
| 17  |     | did not say anything or you don't recall whether they        |          |
| 18  |     | said anything?                                               |          |
| 19  | A.  | We explained the library's relationship to the City.        |          |
| 20  | Q.  | Right.  And my question is did the two lawyers from          | 12:29PM  |
| 21  |     | Jones Day say anything on the topic?                         |          |
| 22  | A.  | No.                                                          |          |
| 23  | Q.  | Was there any discussion by anyone on that phone call        |          |
| 24  |     | about what impact the city's bankruptcy might have on        |          |
| 25  |     | the pensions and OPEB library retirees and employees?        | 12:29PM  |

```
1    A.    The discussion was basically around all participants

2          and the general retirement and health care to the City

3          being subjected to modifications.

4    Q.    Was there any specific discussion of how the retirees

5          or employees of the library might be impacted?          12:30PM

6    A.    Other than as participants, no.

7    Q.    Was there any discussion in that phone call about what

8          impact the bankruptcy might have on the library's

9          obligations to provide or to fund pensions and OPEB?

10   A.    No.                                                       12:30PM

11   Q.    Let me refer you to the first sentence of the second

12         paragraph on that page, page 3 of Exhibit 12.  It

13         says, quote:

14              "A comprehensive review of historical

15              documents concerning pensions and             12:31PM

16              health care benefits for library

17              retirees and employees have clarified

18              to some degree, why for purposes of

19              pension and health care benefits, staff

20              and retirees are treated as though they       12:31PM

21              are employees or retirees of the City

22              of Detroit."  End quote.

23              First of all, who prepares the minutes of

24         these meetings of the DLC?

25   A.    Our executive assistants.                           12:31PM
```

| | | |
|---|---|---|
| 1 | Q. | And are the minutes reviewed and approved by the |
| 2 | | commission itself? |
| 3 | A. | Yes. |
| 4 | Q. | And that's true for all the minutes? |
| 5 | A. | Yes. |

12:31PM

| | | |
|---|---|---|
| 6 | Q. | And did someone on the phone call go through a |
| 7 | | comprehensive review of historical documents? |
| 8 | A. | Not on that phone call. |
| 9 | Q. | Was there any other meeting or phone call with Jones |
| 10 | | Day's lawyers where there was a comprehensive review |
| 11 | | of historical documents? |

12:32PM

| | | |
|---|---|---|
| 12 | A. | We FedExed the information and they reviewed it. |
| 13 | Q. | And the information that you FedExed, is it the packet |
| 14 | | that's Exhibit 11? |
| 15 | A. | Yes, that's exactly right. |

12:32PM

| | | |
|---|---|---|
| 16 | Q. | Did they ever speak to you -- have you spoken to Ms. |
| 17 | | Lennox or Mr. Miller ever again? |
| 18 | A. | Yes. |
| 19 | Q. | Okay.  Did you speak to them about the packet of |
| 20 | | historical materials you sent them? |

12:32PM

| | | |
|---|---|---|
| 21 | A. | Not specifically, no. |
| 22 | Q. | On what occasions did you speak to them again? |
| 23 | A. | I have to recall, because I can't remember exactly |
| 24 | | when -- I never spoke again to Mr. Miller, but I did |
| 25 | | to Ms. Lennox. |

12:33PM

1      C E R T I F I C A T E

2

3      STATE OF MICHIGAN

4      COUNTY OF WAYNE

5

6            I, Paulette A. Foster, a Certified Shorthand

7      Reporter and Notary Public in and for the State of

8      Michigan, do hereby certify that the foregoing

9      transcript of the deposition of JoAnne G. Mondowney,

10     having been duly sworn on July 16, 2014, is true and

11     accurate to the best of my knowledge, skill and

12     ability.

13            IN WITNESS WHEREOF, I have hereunto set my

14     hand and seal this 24th day of July, 2014.

15

16

17

19     _____
       Paulette A. Foster, CSR-0060
20     RELIANCE COURT REPORTING
       Detroit, Michigan
21     (313) 964-3611

22

23

       My commission expires:
24     December 14, 2019

25

**CERTIFICATE OF SERVICE**

I, Babette Ceccotti, hereby certify that the foregoing UAW Response to the City of Detroit's Motion In Limine to Preclude its Counsel, Evan Miller, From Being Called as a Trial Witness was filed and served via the Court's electronic case filing and noticing system on this 27th day of August, 2014.

Dated: August 27, 2014

/s/ Babette A. Ceccotti
Babette A. Ceccotti