# Exhibit 1

1                  KENNETH BUCKFIRE, VOLUME 2

2              IN THE UNITED STATES BANKRUPTCY COURT

3                FOR THE EASTERN DISTRICT OF MICHIGAN

4

5

6

7    In Re:                    )      Chapter 9

8

9    CITY of DETROIT, MICHIGAN, )    Case No. 13-53846

10

11              Debtor.     )    Hon. Steven Rhodes

12    _____

13

14                         VOLUME 2

15

16        The Videotaped Deposition of KENNETH BUCKFIRE,

17        a Rule 30(b)(6) witness,

18        Taken at 1114 Washington Boulevard,

19        Detroit, Michigan,

20        Commencing at 8:09 a.m.,

21        Wednesday, July 16, 2014,

22        Before Leisa M. Pastor, CSR-3500, RPR, CRR.

23

24

25

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2    APPEARANCES:

 3

 4    THOMAS F. CULLEN, JR., ESQ.

 5    Jones Day

 6    51 Louisiana Avenue, N.W.

 7    Washington, D.C. 20001

 8         Appearing on behalf of the Debtor.

 9

10

11

12    CORINNE BALL, ESQ.,

13    BENJAMIN ROSENBLUM, ESQ.

14    Jones Day

15    222 East 41st Street

16    New York, New York 10017

17         Appearing on behalf of the Debtor.

18

19

20

21

22

23

24

25
```

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2

 3

 4    CLAUDE D. MONTGOMERY, ESQ.

 5    Dentons US LLP

 6    1221 Avenue of the Americas

 7    New York, New York 10020

 8        Appearing on behalf of the Retirement Committee.

 9

10

11

12    JENNIFER K. GREEN, ESQ.

13    Clark Hill, PLC

14    500 Woodward Avenue, Suite 3500

15    Detroit, Michigan 48226

16        Appearing on behalf of the Retirement Systems for the

17        City of Detroit.

18

19

20

21

22

23

24

25
```

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2   ROBIN D. BALL, ESQ.

 3   Chadbourne & Parke, LLP

 4   350 South Grand Avenue, 32nd Floor

 5   Los Angeles, California 90071

 6       Appearing on behalf of Assured Guaranty Municipal

 7       Corporation.

 8

 9

10

11   GUY S. NEAL, ESQ.

12   Sidley Austin, LLP

13   1501 K Street, N.W.

14   Washington, D.C. 20005

15       Appearing on behalf of National Public Financing.

16

17

18

19

20

21

22

23

24

25
```

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2    PAUL S. DAVIDSON, ESQ.

 3    Waller, Lansden, Dortch & Davis, LLP

 4    511 Union Street, Suite 2700

 5    Nashville, Tennessee 37219

 6        Appearing on behalf of U.S. Bank National Association

 7        as Trustee for the Water and Sewer Boards.

 8

 9

10

11    ROBERT A. WEISBERG, ESQ.

12    Carson Fischer, PLC

13    4111 Andover Road West

14    Second Floor

15    Bloomfield Hills, Michigan 48302

16        Appearing on behalf of Oakland County.

17

18

19    FARAYHA ARRINE, ESQ.

20    Dickinson Wright

21    500 Woodward Avenue, Suite 4000

22    Detroit, Michigan 48226

23        Appearing on behalf of the State of Michigan.

24

25
```

1                KENNETH BUCKFIRE, VOLUME 2

2

3       EDWARD SOTO, ESQ.,

4       COREY D. BERMAN, ESQ.

5       Weil, Gotshal & Manges, LLP

6       1395 Brickell Avenue, Suite 1200

7       Miami, Florida  33131

8            Appearing on behalf of FGIC.

9

10

11

12

13      CHRISTOPHER L. FILBURN, ESQ. (VIA TELEPHONE)

14      Paul, Weiss, Rifkind, Wharton & Garrison LLP

15      1285 Avenue of the Americas

16      New York, New York 10019

17           Appearing on behalf of UBS.

18

19

20

21

22

23

24

25

1                    KENNETH BUCKFIRE, VOLUME 2

2     A.W. PHINNEY, III, ESQ. (VIA TELEPHONE)

3     Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.

4     One Financial Center

5     Boston, Massachusetts 02111

6          Appearing on behalf of Fidelity, Franklin & Eaton

7          Vance as Members of the Ad Hoc Bondholders Committee.

8

9

10

11    ALSO PRESENT:

12    John Schmitzer - Video Technician

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                KENNETH BUCKFIRE, VOLUME 2

 2    A.   All right, would you please repeat the question?

 3    Q.   Sure, and maybe I can make it clearer.  What I'm

 4         trying to determine and see if you have facts on --

 5         facts on is the process and the elements that went

 6         into distinguishing classes 10 and 11 as compared to

 7         class 9 and the recoveries that they were going to

 8         get?

 9    A.   I see.  Well, as a purely financial or banking matter,

10         it was our judgment that the status of the class 9

11         claims and the pension and so-called OPEB claims was

12         basically the same, that is they were general

13         unsecured claims of the City of lesser priority than

14         the general obligation claims, certain other claims of

15         the City.  And so that was the starting point of our

16         analysis and indeed was the basis for the City's

17         original proposal in June of '13 where all these

18         claims would be in the same pool and would share pro

19         rata.

20              It also became clear to us that as part of

21         our financial analysis that even though we believed

22         that the claims were general unsecured claims, the

23         fact that the COPs claims were indirect obligations of

24         the City and not direct obligations to the City had to

25         be given some consideration, and that is how we ended
```

1           KENNETH BUCKFIRE, VOLUME 2

2      up recommending to the emergency manager that only 40

3      percent of the COPs claims be allowed because we were

4      uncertain about what their ultimate status would be

5      because again, I'm -- I'm making a legal conclusion,

6      but the claim of the COPs against the service

7      corporations would result in the service

8      corporations's claim being an asset of the COPs and

9      that was sufficiently in dispute as to a financial

10     matter as to what value would be, we felt 40 percent

11     was the appropriate allowed claim.

12           Then the distinction we had to draw with

13     the class 10 and 11 claims had to take into account

14     from a financial matter, the proposed treatment of

15     OPEB as a practical matter from the City's prospective

16     the financial obligations due to its retirees were

17     both pension and healthcare related and because we

18     were proposing to substantially impair or eliminate

19     our healthcare plans and in consideration for doing so

20     move our retirees to new insurance programs of much

21     lesser cost, that resulted in a very large claim, but

22     therefore, as a practical matter, rather than

23     throwing -- using the OPEB claim and the pension

24     claims to be pari passu with respect to recovery.

25           Part of the settlement discussion with the retiree --

```
 1              KENNETH BUCKFIRE, VOLUME 2
 2         I'm trying to be careful --
 3              MR. CULLEN:  Okay.
 4   A.   -- from a financial prospective, we viewed those
 5         claims as being part of the same pool for purposes of
 6         arranging an overall recovery and therefore how that
 7         recovery would be applied would be up to the
 8         beneficiaries which is now reflected in the plan of
 9         adjustment.
10   BY MR. SOTO:
11   Q.   Let me break that down.  That was a --
12   A.   Yeah.
13   Q.   -- pretty cool answer so --
14   A.   It's complicated.
15   Q.   So taking -- taking the first thing that you
16         highlighted, you highlighted the distinction between
17         direct and indirect claims and the class 9 claims you
18         viewed as indirect and there were other direct claims.
19         You said that led to you -- and again, if I'm saying
20         something wrong, you correct me, you said that allowed
21         to allowing only 40 percent of that claim.
22              So can you explain to me what analysis you
23         did of what analysis you did of what those claimants
24         you mentioned that they had claim -- it would result
25         in claims against the surface corporations is I think
```