UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN,<br><br>                         Debtor. | Chapter 9<br><br>Case No. 13-53846<br><br>Hon. Steven W. Rhodes |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF RETIREES TO SYNCORA'S MOTION *IN LIMINE* BARRING THE CITY AND PLAN SUPPORTERS FROM INTRODUCING EVIDENCE REGARDING THE POTENTIAL PERSONAL HARDSHIP OF PENSIONERS [DKT 6982]**

The Official Committee of Retirees of the City of Detroit, Michigan (the "Committee") files this response in opposition to the Motion *in Limine* of Syncora Capital Assurance Inc. and Syncora Guarantee Inc. (collectively, "Syncora") Barring the City and Plan Supporters from Introducing Evidence Regarding the Potential Personal Hardship of Pensioners by Syncora [Dkt. 6982] (the "Motion"), and in support states:

**PRELIMINARY STATEMENT**

At bottom, the Motion seeks to improperly expand this Court's prior ruling that evidence of personal hardship may not be used to justify "unfair discrimination" to exclude introduction of such evidence for any and all purposes, including the use of such evidence as means to support the "Debtor's business justification" in formulating treatment under the Plan. Syncora's efforts to transmogrify the Court's prior ruling would preclude relevant and valuable evidence concerning not only the City's business rationale, but the reasonableness of the settlement that underlies the settlement of retiree treatment under the Plan, and whether, absent such treatment, the Plan meets Constitutional and legal scrutiny. For these and other reasons, Court should deny the Motion.

## **LEGAL STANDARD**

Motions *in limine* face a particularly exacting and challenging burden of proof. First, Movants bear the burden of demonstrating that they are entitled to relief requested in their motion *in limine*. *Design Basics, L.L.C. v. DeShano Companies, Inc.*, No. 10-14419, 2012 WL 5265388, at *2 (E.D. Mich. Oct. 23, 2012). Second, courts will not grant motions *in limine* "unless the moving part meets its burden of showing that the evidence in question is clearly inadmissible." *Id.* (internal quotations omitted) (emphasis added). Anything short of movant making such a showing that the identified evidence is "clearly inadmissible," and the motion *in limine* should not be granted. *See id.* If a movant fails to make such a showing, then the court should defer until trial any evidentiary ruling. *Id.*

Moreover, the Sixth Circuit has admonished that a motion *in limine* should be denied where, as here, a movant seeks a blanket exclusion of evidence. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("[o]rders *in limine* which exclude broad categories of evidence should rarely be employed . . . [and the] better practice is to deal with questions of admissibility of evidence as they arise.") Trial courts heed the Sixth Circuit. *See, e.g. Innotext, Inc. v. Petra Lex USA, Inc.*, No. 08-11077, 2010 WL 2560063, at *2 (E.D. Mich. Jun. 15, 2010) (denying motion that on grounds that "[m]otions *in limine* are meant to deal with discrete evidentiary issues related to trial and are not substitutes for dispositive motions", and denying motion); *Englar v. 41B Dist. Court*, No. 04-CV-73977, 2010 WL 5015343, at *7 (E.D. Mich. Dec. 3, 2010) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed."); *Zugowitz v. Davis*, No. 2:06-CV-727, 2008 WL 619357, *1 (S.D. Ohio Mar. 03, 2008) (noting that "[c]ourts . . . are generally reluctant to grant broad exclusions of evidence *in limine*" and denying motion).

2

# ARGUMENT

The Court has already ruled that "creditors" needs is not an issue when it comes to determining "unfair discrimination" and that retiree testimony regarding their individual hardships is irrelevant and unwelcome at the confirmation hearing. (*See, e.g.,* Hr'g Tr. at 104:14-19, June 26, 2014 (attached to Syncora's Motion as Ex. 6A); Hr'g Tr. at 81:9-17, Aug. 6, 2014 (attached to Syncora's Motion as Ex. 6B); Order Regarding the City's Motion for Entry of a Protective Order, June 27, 2014 [Dkt. 5625]). If Syncora had sought clarification that such evidence would not be introduced, its requests likely could have been satisfied by stipulation.

Instead, Syncora seeks to expand that ruling to prevent any evidence on the issue of retiree harm—including by logical extension, the fact of significant reductions of retiree benefits under the Plan—for any purpose. Syncora's proposed limitation is improper and actually contradict this Court ruling that such evidence could be used in relation to supporting the Debtor's business judgment. In fact, at the time this Court ruled on the issue of individual creditor harm it stated that hardship could be considered for other purposes, including business justification:

> In my view, neither fair and equitable nor unfair discrimination has ever in any bankruptcy case considered the impact of a plan on a creditor; that is to say, the adverse impact of a plan on a creditor. The issue always is the business justification for the treatment from the debtor's perspective. **Now, to the extent that issue encompasses consideration of hardship, I would leave it to the proponents of the plan to argue and prove that, but that's a much — I don't know — broader and differently focused question than just plain hardship to retirees.**

(Hr'g Tr. at 81:12-21, Aug. 6, 2014 (emphasis added)).

Here, there are at least three reasons why the treatment of retirees is relevant to issues for confirmation and support the Debtor's business rationale. First, the reasonableness of the compromise of the Class 10, 11, 12 claims in general as embodied in the Plan, and Class 12 in

3

particular depends in part on whether the Debtor could have pursued less drastic alternatives in impairing the retirees' OPEB rights.  Second, the City's ability to retain and recruit employees, an issue of Plan feasibility, is affected by the City's treatment of its past employees.  Third, given that 73.5% of retirees live in the Detroit metro area, the hardship felt by retirees has an impact on the City that must be considered as a reasonably foreseeable consequence of the Plan.

> **A. The Reasonableness of the Plan's Compromise With the Retiree Committee, Including Class 12 Claim Treatment Depends in Part on Whether the Debtor Could Have Pursued Less Drastic Alternatives in Impairing Retirees' OPEB Rights.**

The City's treatment of Retirees under the Plan is the product of significant negotiation and mediation by the City, the Committee and others.  The product of those efforts are manifested in the Plan's treatment of retirees' pension (Classes 10 and 11) and other post-employment benefits ("OPEB," class 12 claims).  As the evidence will show, retirees rights to pensions and to OPEB are significantly impaired under the Plan.  In fact, the City's payment to retirees on OPEB is approximately 10%.  Although Syncora seeks the exclusion of the proposed benefit reductions on retirees, doing so for any purpose other than unfair discrimination would be improper.  Among other things, the City and those favoring confirmation should be allowed to offer evidence regarding whether the City could have pursued less drastic alternatives in impairing retirees' OPEB to prove that the settlement of the Class 12 claims is within the Rule 9019 range of reasonableness.

As this Court is aware, the Committee (and certain retiree representatives) twice brought preliminary injunction actions during the pendency of this bankruptcy case asserting that the City's attempt to unilaterally impose draconian cuts in retiree health care violated the Contracts Clauses of the state and federal Constitutions.  The City and the Committee were able to settle those claims, leading ultimately to the compromise found in the Plan's treatment of Class 12.

4

While a full recitation of the applicable Contract Clause analysis is unnecessary here, key issues in that litigation would have been whether the retirees could demonstrate a "substantial impairment" of their contract rights, *see Toledo Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 323 (6th Cir. 1998), and whether "less drastic" options existed that would have better protected the contract rights, *see Welch v. Brown*, 551 Fed. Appx. 804, 811 (6th Cir. 2014). Thus, the determination of the reasonableness of the compromise embodied in the Plan's treatment of Class 12 depends, in part, on the hardship to retirees.

### B. Retirees' Hardship Impacts the City's Ability to Retain and Recruit Employees, A Component of Plan Feasibility.

The City's ability to retain and recruit employees is affected by the City's treatment of its past employees and goes to Plan feasibility. The City discussed this key motivation for its treatment of the retiree classes in its Consolidated Reply to Certain Objections of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Dkt. 5034, ¶¶ 62-66] ("Moreover, current employees are understandably concerned about the extent of impairment of benefits for retired City employees, as active employees will become retirees at some point.").

Moreover, Syncora explored this theme in discovery — deposing the Executive Fire Commissioner, the Chief of Police, the Board Council President, and the Mayor, among others, on the topic of whether the cuts to retirees' benefits impacted active employees' morale and productivity. (*See* Ex. 1 hereto, E. Jenkins Depo., 223:21-225:15, 230:8-231:8; Ex. 2 hereto, J. Craig Depo., 192:7-20; Ex. 3 hereto, B. Jones Depo., 100:17-104:23; Ex. 4 hereto, M. Duggan Depo., 123:21-124:15.) Syncora thereby solicited testimony that active employees were concerned about the cuts to retirees' benefits because: 1) current employees have friends or family who are retirees, and 2) current employees see the treatment of retirees as a barometer of how current employees will be treated when they retire:

5

> Q. And would it be fair to say that the announcement regarding the changes to the retirees did not have an impact on your active employees?
> 
> […]
> 
> A. I would say yes, because eventually we're all going to be retired, so they were, see the retirees as themselves one day, so --
> 
> Q. So --
> 
> A. I would say yes, it did have an effect on them.
> 
> Q. The change to the retiree healthcare had an impact on the actives, is that what you're saying?
> 
> A. Yes, yes.
> 
> Q. Why do you say that?
> 
> […]
> 
> A. Because one day they're going to be retired and a lot of the coworkers that they worked with for years have -- because they're friends.
> 
> Q. And did you talk to any actives about the changes to the retiree healthcare?
> 
> A. In passing, yes, it's been a few, not everybody, but a few people.
> 
> Q. What do you mean in passing?
> 
> A. If I saw them at a retirement party or saw them at a function or an engine house visit, if it came up in the conversation.
> 
> Q. And one or two times?
> 
> A. I can't say how many times.
> 
> Q. More than five?
> 
> A. It was more than five, yes.
> 
> Q. Less than ten?
> 
> A. No, it was more than ten.
> 
> Q. Less than 20?
> 
> A. I'll say less than 40.

(Ex. 1 hereto, E. Jenkins Depo., 223:21-225:15; *see also* E. Jenkins Depo., 230:8-231:8 (regarding concerns over cuts to retirees' pensions)). Likewise, Mayor Duggan, in response to Syncora's questions, testified that the announcement of cuts to retirees' pensions generated "lots of fear from employees, yes." (Ex. 4 hereto, M. Duggan Depo., 123:25-124:4.)

Thus, retiree circumstances—including the hardship that would be caused by cuts more severe than those imposed by the Plan—is a legitimate concern for the City and reasonably considered in the City's business rationale. Because this is a reasonable part of the City's

6

business rationale, it is relevant, and the City and Plan proponents should be allowed to present evidence to support it.

> C. **Nearly Three Quarters of Classes 10, 11, and 12 live in the Detroit Metropolitian Area — As Such, Retiree Hardship is Not Merely an Issue of Impact to Individuals, but to the Debtor Detroit.**

As will be introduced at trial, nearly three quarters of retirees live in the Detroit Metro Area. (*See* Ex. 5 hereto, "Number of City of Detroit Retirees by Home Address.") This means that retiree hardship is not just an issue of how it impacts retirees; it is also an issue of how their cumulative hardship will impact the City. As the City will bear the resulting impact of the retirees' decreased spending power, their increased dependence on social services, and the City's increased poverty levels. Any plan of adjustment, necessarily, needs to account for foreseeable consequences of its confirmation. Here, that includes recognizing retiree hardship.

This does not require granular investigation of the individual circumstances, personal incomes, or particular health and family circumstances of every retiree. As is common in urban planning, the City can reasonably rely on aggregated data to recognize, as an additional basis for the its business rationale, that more severe cuts to the retirees could endanger the City's recovery. Readily available census demographic data—combined with the facts that PFRS pensions average less than $2,600 per month and GRS pensions average less than $1,700 per month— confirm the danger to the City of forcing the City's retirees to take on too great of a hardship.

7

## **CONCLUSION**

For the foregoing reasons, the Committee respectfully requests that the Court deny Syncora's Motion.

Dated: August 27, 2014                    Respectfully submitted,

                                          By: */s/ Sam J. Alberts*

Claude Montgomery                         Sam J. Alberts
Carole Neville                            Dan Barnowski
DENTONS US LLP                            Daniel Morris
                                          DENTONS US LLP
1221 Avenue of the Americas               1301 K Street, NW, Suite 600 East Tower
New York, New York 10020                  Washington, DC 20005
Tel:   (212) 768-6700                     Tel: (202) 408-6400
Fax:   (212) 768-6800                     Fax: (202) 408-6399
claude.montgomery@dentons.com             sam.alberts@dentons.com
carole.neville@dentons.com                dan.barnowski@dentons.com
                                          daniel.morris@dentons.com

BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins
Paula A. Hall
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

## CERTIFICATE OF SERVICE

I, Sam Alberts, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on August 27, 2014.

By:    */s/ Sam Alberts*
       Sam Alberts