UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| In re: ) | |
| ) | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN ) | |
| ) | Chapter 9 |
| Debtor ) | |
| ) | Hon. Steven W. Rhodes |
| ) | |

**MACOMB PARTIES' RESPONSE IN OPPOSITION TO THE DETROIT RETIREMENT SYSTEMS' MOTION IN LIMINE TO PRECLUDE EVIDENCE RELATING TO ALLEGED HISTORICAL MISMANAGEMENT/MISCONDUCT**

County of Macomb, Michigan, a Michigan Constitutional corporation, by and through its County Agency, Anthony V. Marrocco, the Macomb County Public Works Commissioner ("Macomb"), and the Macomb Interceptor Drain Drainage District (the "MIDDD," and together with Macomb, the "Macomb Parties") hereby submit this Opposition to the Detroit Retirement Systems' Motion in Limine to Preclude Evidence Relating to Alleged Historical Mismanagement/Misconduct.

## RESPONSE

**I. Evidence Regarding the Retirement Systems' Mismanagement or Misconduct is Relevant to DWSD's Pension Contributions Under the Plan.**

As the Court is well aware, one of the issues to be tried in this case is propriety of the proposal under the Debtor's plan of adjustment (the "Plan") that the Detroit Water and Sewerage Department (the "DWSD") make certain payments to the General Retirement System ("GRS") on account of underfunded actuarial accrued liabilities ("UAAL") allocated to the DWSD by the Debtor. Several objectors, including Macomb, have argued that one of the reasons the Plan does not meet the requirements of section 943(b)(4) of the Bankruptcy Code, and cannot be confirmed

1

because the proposed pension payments run afoul of applicable state and local laws. As part of this objection, the objectors dispute several of the bases underlying the Plan's contemplated pension contributions from the DWSD, including the Debtor's calculation of UAAL. Critical to the Court's understanding of that calculation is the reasons that any GRS UAAL exists.

The Plan contemplates that DWSD will make "catch-up payments" to the GRS fund for UAAL. However, "catch up payments" is a mischaracterization of the burden of these payments. As Kenneth Buckfire testified, historically, DWSD has made all pension and UAAL contributions allocated to it by the Debtor. See Buckfire July 16, 2014 Dep. 74:5-11. Because the Plan would require the DWSD to pay more than its properly allocable share, it would require the DWSD to contribute to not only to the pension of its own retirees, but also to the pensions of the Debtor's other non-uniformed workers, ultimately resulting in higher rates and the availability of fewer resources to insure adequate service to DWSD's ratepayers (including Macomb).

According to the Debtor itself, the mismanagement and misconduct of the GRS contributed significantly to the underfunding. See Disclosure Statement at 11, 106. Evidence of historical GRS mismanagement sheds light on how and why the GRS fund's funding gap arose and why the Debtor seeks to compel the DWSD to contribute more than its fair share.

Thus, Macomb does not intend to introduce evidence of pension misconduct to blame retirees for the poor state of the GRS fund. Rather, evidence related to historical mismanagement and misconduct of GRS is crucial to understanding the current state of the GRS pension fund and the propriety of the Plan feature that proposes to require the DWSD to bail out the historically mismanaged GRS pension fund.

Furthermore, evidence regarding the misconduct of GRS administration is relevant to understanding the validity of the Debtor's estimations of pension claims. In particular, evidence of the comingling of GRS funds with Annuity Savings Plans, and the crediting of Annuity Savings Plan accounts with rates of return that were greater than earned from GRS funds, could have a major impact on the calculation of claims and GRS plan assets. The GRS will recoup excess interest from Annuity Savings Plan accounts under the Plan, see Disclosure Statement at 24, which increases assets available for distribution, and should decrease pension claims accordingly. The Debtor's claims calculations, however, do not take this into account. See Expert Report of William B. Fornia, FSA, dated July 29, 2014.

For these reasons, evidence regarding GRS mismanagement is clearly relevant pursuant to Federal Rule of Evidence 401.

## II. Evidence of the Retirement Systems' Mismanagement or Misconduct Will Not Be Prejudicial or Confusing and Should Not Substantially Affect Trial.

The Retirement Systems argue that evidence of the Retirement Systems' mismanagement or misconduct should be excluded because, even if relevant, it would "waste precious trial time and judicial resources." (Mot. at 1.) However, in weighing the status of relevant evidence under Federal Rule of Evidence 403 to determine whether its probative value is substantially outweighed by a danger of prejudice, confusion, or waste of time, courts have a strong preference for admission of the evidence. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885 (8th Cir. 2006) ("Generally, the balance of Rule 403 weighing should be struck in favor of admission."). Furthermore, it is unclear what legitimate interest the Retirement Systems have in determining how the objectors choose to use their allotted trial time.

Moreover, courts have consistently held that the potential for prejudice or confusion is not a concern in a bench trial. See, e.g., In re Second Chance Body Armor, Inc., 421 B.R. 823,

3

833-34 (Bankr. W.D. Mich. 2010) ("The portion of Rule 403 requiring weighing of probative value against prejudice has no logical application to bench trials.") (quoting Gulf States Utilities Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir. 1981); Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial").

Evidence of the Retirement Systems' mismanagement and misconduct is clearly relevant and there is no potential for prejudice. Thus, the Court should not exclude such evidence.

## **CONCLUSION**

For the foregoing reasons, the Macomb Parties request that the Court deny the Detroit Retirement System's motion in limine to preclude evidence relating to alleged historical mismanagement/misconduct.

Dated: August 27, 2014　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　DECHERT LLP

　　　　　　　　　　　　　　　　　　　　By:＿＿/s/ Allan S. Brilliant＿＿＿
　　　　　　　　　　　　　　　　　　　　Allan S. Brilliant
　　　　　　　　　　　　　　　　　　　　Stephen M. Wolpert
　　　　　　　　　　　　　　　　　　　　1095 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　　New York, NY 10016
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 698-3500
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 698-3599
　　　　　　　　　　　　　　　　　　　　allan.brilliant@dechert.com
　　　　　　　　　　　　　　　　　　　　stephen.wolpert@dechert.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for County of Macomb, Michigan by and through its County Agency, Anthony V. Marrocco, the Macomb County Public Works Commissioner, and the Macomb Interceptor Drain Drainage District*