# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re<br><br>CITY OF DETROIT, MICHIGAN<br><br>     Debtor. | Chapter 9<br><br>Case No.: 13-53846<br><br>Hon. Steven W. Rhodes |

## CITY OF DETROIT'S RESPONSE IN OPPOSITION TO SYNCORA'S MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE RELATING TO (A) THE RECOVERIES OF CLASSES 10 AND 11 INDEPENDENT OF THE FUNDS FROM THE DIA FUNDING PARTIES AND THE STATE AND (B) THE TOPICS IDENTIFIED IN SYNCORA'S SUBPOENAS TO THE FOUNDATIONS

The City of Detroit (the "City") opposes the motion *in limine* filed by Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") to preclude the City from offering evidence regarding (a) the recoveries of Classes 10 and 11 independent of the funds from the DIA Funding Parties and the State, and (b) the topics identified in Syncora's subpoenas to the Foundations. [Dkt. No. 6978].[1] Syncora's motion impermissibly presents an ongoing legal dispute in the guise of an evidentiary controversy and, in so doing, misstates the facts and this

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the *Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 6908] (the "Plan").

Court's statements.  Additionally, the motion seeks without basis to exclude a vast swath of relevant evidence from trial.  The Court should deny the motion.

## ARGUMENT

**I. SYNCORA'S MOTION IS AN IMPERMISSIBLE ATTEMPT TO DISGUISE AN UNRESOLVED LEGAL ISSUE INTO A GARDEN VARIETY EVIDENTIARY MOTION**

1. Among other things, a confirmable plan of adjustment must not discriminate unfairly with respect to any class of claims.  11 U.S.C. § 1129(b)(1).  Whether a plan discriminates unfairly involves an inquiry into (1) the extent of any differential treatment, and (2) whether that treatment is nevertheless fair.  *See In re Aztec Co.*, 107 B.R. 585, 588–89 (Bankr. M.D. Tenn. 1989).  The City maintains that any differential treatment between Classes of Creditors under the Plan is sufficiently limited and fair.  Syncora disagrees.  To date, the Court has neither resolved this legal issue—whether or not the Plan unfairly discriminates—nor set forth the applicable standard by which to do so.  And yet it is this underlying *legal* dispute, dressed up as an evidentiary matter, that Syncora has submitted to the Court by way of its motion *in limine*.

2. In particular, the consideration from the State Contribution and the DIA Settlement proceeds (the "Grand Bargain Consideration") will be paid and used for the specific purpose of funding the Pension Claims in Classes 10 and 11.  Because the Grand Bargain Consideration is *not* City funds and was generated on

the condition that it flow to the City's pension holders without the possibility of being diverted to other recipients, it should be excluded from the unfair discrimination analysis of any disparity between the Pension Claims and other Classes of unsecured Claims. Thus, in moving to preclude the City from introducing any evidence to support this *legal* position, Syncora seeks to impede the City's ability to make its case on a point that bears directly on a fundamental—and still unresolved—question of law.

3. A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Thus, "the motion in limine is an *evidentiary* device." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (emphasis added); *see also United States v. Certain Land Situated in the City of Detroit, Wayne Cnty., State of Mich.*, 547 F. Supp. 680, 681 (E.D. Mich. 1982) (observing that, generally, the allowance of a motion *in limine* "is confined to very specific *evidentiary* issues of an *extremely prejudicial* nature.") (emphasis added).

4. Just as the defendant unsuccessfully attempted to do in *Louzon*, Syncora here "attempts to infuse into this motion an evidentiary matter" that flows from an undecided legal question. 718 F.3d at 562. Indeed, Syncora's position—that the City should be precluded from offering evidence to show for any purpose

(1) that the State Contribution and DIA Settlement proceeds are not City funds, or (2) the extent of recoveries of Classes 10 and 11 independent of those proceeds—rests on the false premise that the Court has already deemed all such evidence irrelevant, when it has not. This is precisely what happened in *Louzon*, and precisely what the Sixth Circuit rejected. There the district court had determined that employees which the plaintiff sought to proffer as comparators were not similarly situated and that, as a result, all evidence relating to the comparators had to be excluded. *Id.* at 560. On appeal the Sixth Circuit observed that the "true nature" of the defendant's motion *in limine* had been an attempt to resolve a legal issue by way of a motion that did not actually "require any rulings related to the admissibility of evidence at trial." *Id.* at 562. The Sixth Circuit thus reversed in part because the district court had "improperly considered non-evidentiary matters on a motion in limine." *Id.* at 566.

5. As the court held in *Louzon*, "if these tactics were sufficient, a litigant could raise any matter in limine, as long as he included the duplicative argument that the evidence relating to the matter at issue is irrelevant." *Id.* at 562. In the Sixth Circuit, courts will not tolerate such ploys. *See id.*; *see also Hinkle v. Ford Motor Co.*, No. 3:11-24-DCR, 2012 WL 5868899, at *8 (E.D. Ky. Nov. 20, 2012) ("[T]he Court will not rule on this substantive issue in a motion *in limine*."); *ABC Beverage Corp. & Subsidiaries v. United States*, No. 1:07-cv-051, 2008 WL

5424174, at *2 (W.D. Mich. Dec. 4, 2008) ("Defendant's motion functionally seeks to resolve substantive issues rather than evidentiary ones. Defendant's motion seeks to prevent Plaintiff from introducing one of its theories . . . .").

6. The standard by which the Court should assess whether the Plan is unfairly discriminatory, and the manner by which differential treatment between Classes of Creditors should be calculated, are hotly contested, substantive issues grounded in law, not fact.[2] As such, a motion *in limine* is an inappropriate tool for their resolution. Here, Syncora's motion *in limine* functionally seeks to eliminate a legal issue rather than an evidentiary issue. But "motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses," *SPX Corp. v. Bartec USA, LLC*, No. 06-14888, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008), and the motion should be denied.

---

[2] In staking out its *legal* position, Syncora questions the viability of the so-called "gifting" doctrine. *See* Mot. ¶ 20. However, where, as here, the source of a particular class's enhanced recovery is a party other than the debtor, courts have found that the resulting differential in recoveries between classes does not constitute unfair discrimination. *See, e.g.*, *In re Worldcom, Inc.*, No. 02-13533, 2003 WL 23861928, at *60-61 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Parke Imperial Canton, Ltd.*, No. 93-61004, 1994 WL 842777, at *11 (Bankr. N.D. Ohio Nov. 14, 1994); *In re MCorp Fin., Inc.*, 160 B.R. 941, 960 (S.D. Tex. 1993). Syncora contends that "gifting" occurs only when one class of creditors enhances the recovery of another class of creditors. And because the DIA Funding Parties are not creditors, Syncora maintains, they cannot bestow a "gift" on Classes 10 and 11. Syncora's logic is misplaced. Indeed, if discrimination among creditor classes has been upheld in those instances in which one class bestows a "gift" on another class, then a situation like the one in this case—in which differential treatment results from the distribution of funds that are neither the debtor's nor a creditors' but rather belong to third-party strangers to the bankruptcy—is surely even less unfair.

## II. SYNCORA'S MOTION MISREPRESENTS THIS COURT'S STATEMENTS AND THE FACTS

7. Even if a motion *in limine* were a proper vehicle by which to decide the controlling legal issues Syncora raises, Syncora's motion is replete with misrepresentations that, when brought into the light, reveal the relief Syncora seeks to be unwarranted.

### A. Syncora's Quotation Of The Court Is Misleading

8. Syncora maintains that the Court has "clearly ruled" that the source of the DIA Settlement consideration is *per se* irrelevant and therefore inadmissible. Mot. ¶¶ 16, 17. This is not the case. Indeed, the statement by the Court that Syncora selectively quotes took place not in the context of a ruling on a motion but rather during a colloquy with Syncora's counsel:

> THE COURT: And you've lost me already, and maybe the city has lost me. I don't know. But I would have *assumed* that the issue of unfair discrimination is based upon not where money comes from but where money goes to.
>
> MR. HACKNEY: That is definitely how Syncora views the world.
>
> THE COURT: All right.
>
> MR. HACKNEY: But the city --
>
> THE COURT: Let's view the world that way since you're the one at the lectern.

Mot. Ex. 6A, Hr'g Tr. at 40:2-11, June 26, 2014 (emphasis added).

9. As the complete exchange demonstrates, the Court did not decide this issue, "clearly" or otherwise, nor would it have; the parties had not briefed it, and they were before the Court on the Foundations' joint motion to quash Syncora's subpoenas.[3] The Court merely agreed to assume Syncora's position on the issue was correct for purposes of its argument. It is simply not the case that the Court has deemed irrelevant all evidence regarding the source of the DIA Settlement proceeds. Syncora's key premise is illusory.

### B. Syncora Misrepresents The Facts

10. Syncora asserts that the City will be receiving the $816 million contributed as the Grand Bargain Consideration, and therefore that those proceeds must be considered City funds. Mot. ¶ 21. It then contends that the City cannot argue that the State Contribution or DIA Settlement proceeds are outside the Plan for purposes of the unfair discrimination analysis. *Id.* ¶ 23. Syncora's argument fails because it has its facts wrong. Even a cursory examination of the facts and the documents relevant to the Grand Bargain reveals that Syncora is mistaken because the City does not control Grand Bargain funds but rather is *required* to pass any such funds it "receives" through to the pensioners in Classes 10 and 11.

---

[3] "Foundations" refers to the twelve charitable foundations that have committed to making donations as part of the DIA Settlement. They are: Community Foundation for Southeast Michigan; William Davidson Foundation; The Fred A. and Barbara M. Erb Family Foundation; Max M. and Marjorie S. Fisher Foundation; Ford Foundation; Hudson-Webber Foundation; The Kresge Foundation; W.K. Kellogg Foundation; John S. and James L. Knight Foundation; McGregor Fund; Charles Stewart Mott Foundation; and A. Paul and Carol C. Schaap Foundation.

11. Syncora again misstates the facts surrounding how payments under the Grand Bargain are made. *First*, Syncora selectively quotes a portion of the definition of "DIA Proceeds Payment Default" in the *Corrected Fifth Amended Plan of Adjustment of the Debts of the City of Detroit*, which includes the phrase "amounts scheduled to be paid to the City." Mot. ¶ 21. However, the rest of that definition—which Syncora pointedly omits—states that "the City, in turn, is *required to pay [those amounts] over to the GRS or the PFRS* in accordance with the terms and conditions of the Plan." *Corrected Fifth Am. Plan* [Dkt. No. 6379], at 9 (emphasis added).

12. *Second*, Syncora misrepresents one of the components of the Grand Bargain Consideration. In its motion, Syncora states that, "[i]n exchange for the transfer of the DIA Assets, the City will receive $816 million from the Foundations, the State, and the DIA Corp., all of which are earmarked for Classes 10 and 11." Mot. ¶ 9. However, the State Contribution is *not* being made so that the City will transfer the DIA's art collection. Indeed, not one of the ten bills that constitute the relevant authorizing legislation,[4] nor the State Contribution Agreement, *Sixth Am. Plan* [Dkt. No. 6908], Ex. I.A.318, even mentions artwork. Rather, as Syncora well knows, the primary consideration for the State

---

[4] *See* Public Act 181 of 2014; Public Act 182 of 2014; Public Act 183 of 2014; Public Act 184 of 2014; Public Act 185 of 2014; Public Act 186 of 2014; Public Act 187 of 2014; Public Act 188 of 2014; Public Act 189 of 2014; Public Act 190 of 2014.

Contribution is a release by Classes 10 and 11 of Pension Claims against the State and State Related Entities. *See id.*

13. *Third*, the State's component of the Grand Bargain Consideration goes *directly* to the Retirement Systems, not the City. Under the terms of the State Contribution Agreement, the Michigan Settlement Administration Authority "shall disburse $98,800,000 to GRS and $96,000,000 to PFRS . . . for the purpose of increasing the assets of the PFRS and the GRS." *Id.* at 2.[5] Further, the State Contribution Agreement is clear: "The State Contribution shall *only* be used to fund payments to holders of GRS Pension Claims and PFRS Pension Claims." *Id.* (emphasis added). Thus, as a matter of law, the City neither receives nor controls the State Contribution. Accordingly, at a minimum, the State Contribution should be omitted from the calculation of recoveries on Pension Claims for purposes of the Court's unfair discrimination analysis.

14. *Fourth*, *none* of the other DIA Settlement funds are "City funds" because the City lacks the power to control on its own, has no property interest in, and cannot redirect from their intended recipients *any* of those proceeds, except in one limited instance regarding indemnification described below. Under the terms of the Omnibus Transaction Agreement, the Detroit

---

[5] "The total aggregate State Contribution is equal to the net present value of $350,000,000 payable over 20 years determined using a discount rate of 6.75%, which results in a total contribution by the State of $194,800,000." *Sixth Am. Plan* [Dkt. No. 6908], Ex. I.A.318, at 2.

Institute of Arts ("DIA"), DIA Direct Funders and Special Foundation Funders, along with the Foundation Funders, will collectively pay $466 million for the benefit of Pension Claims. *Sixth Am. Plan* [Dkt. No. 6908], Ex. I.A.318, at 1. These Funders' contributions will be paid to the Foundation for Detroit's Future, a Michigan nonprofit corporation (the "Supporting Organization"). *Id.* at 1, 3-4. The Supporting Organization is required to remit those funds to an escrow account which shall be an account jointly created by the City and the Supporting Organization.

15. Under the Omnibus Transaction Agreement, this escrow account is known as the City Account. *Id.* at 3. With a lone exception relating to the defense of indemnity claims,[6] "the amounts contributed to this escrow account by the Supporting Organization . . . shall be used *only* for the payment of contributions to GRS and PFRS." *Id.* at 4 (emphasis added). As part of the representations and warranties in the Omnibus Transaction Agreement, the City acknowledges that "all funds remitted by the Supporting Organization to the City Account . . . shall be used *solely* for the payment of contributions to GRS and PFRS, allocated as provided in the Plan of Adjustment," and that "the City shall cause to be transferred from the City Account for payment of contributions to

---

[6] "[T]o the extent that the City is required to indemnify a City Indemnified Party [under the Omnibus Transaction Agreement] . . . the City may reimburse itself for the costs of such indemnity out of the City Account." *Sixth Am. Plan* [Dkt. No. 6908], Ex. I.A.318, at 23.

[GRS and PFRS] *all* amounts received from the Supporting Organization." *Id.* at 18 (emphasis added).

16. Rather than acting as the recipient or owner of the DIA Settlement proceeds, the City is merely a passive participant in the flow of funds from the Funders to the pensions. Indeed, under the terms of the DIA Settlement, the City must submit an annual report to the Supporting Organization containing, *inter alia*, (1) "an annual reconciliation report of the City account . . . certifying that the amounts transferred to the City Account by the Supporting Organization . . . were used by the City in a manner consistent with the terms of the Transaction Documentation, including, *without limitation*, to make contributions to GRS and PFRS . . . ," and (2) a "certification from the Escrow Agent that to its knowledge the amounts contributed to the GRS or PFRS from the City Account were *unencumbered by the City* or any other entity." *Id.* at 10 (emphasis added).

17. Thus, as a factual matter, Syncora is wrong when it says that the funds constituting the Grand Bargain Consideration are City funds.[7] Neither the State Contribution nor the money being contributed by the DIA and the Foundations fits that bill.

---

[7] The State Contribution and the DIA Settlement proceeds are functionally the same as the ASF Recoupment, which, like the other two sources of funds, benefits the pensioners in Classes 10 and 11 but does not represent a distribution of debtor funds.

## III. SYNCORA'S MOTION SEEKS TO EXPAND THIS COURT'S PRIOR RULING IN THE INTEREST OF EXCLUDING RELEVANT EVIDENCE

18. At the hearing on the Foundations' joint motion to quash Syncora's subpoenas, the Court ultimately concluded that

> none of the 30(b)(6) subjects and none of the documents that are sought from the foundations are relevant to or even arguably relevant to the issues of whether the plan is discriminatory or whether it is unfairly discriminatory, the best interest of creditors or even the extent to which the so-called grand bargain settlement protects the art of the city. Accordingly, that motion is granted.

Mot. Ex. 6A, Hr'g Tr. at 126:24–127:5, June 26, 2014.

19. As the foregoing excerpt makes clear, the Court has deemed the topics set forth in Syncora's subpoenas to the Foundations irrelevant to whether the Plan is unfairly discriminatory or meets the best interest of creditors test and the more narrow issue of whether the DIA Settlement protects the art collection housed at the DIA. The Court ruled on nothing more, and nothing less.

20. However, in its motion *in limine*, Syncora seeks a far more expansive ruling, arguing that the Court's conclusion quoted above stands for the proposition that *all* evidence regarding *every* topic in Syncora's subpoenas is inadmissible for *any* purpose. *See* Mot. ¶ 3 ("According to the Court, the discovery Syncora sought was not relevant to unfair discrimination or *any other plan confirmation* issue.") (emphasis added); *id.* ¶ 4 ("[T]he City should not be permitted to introduce *any* evidence on those topics during the confirmation

hearing.") (emphasis added). That is not what the Court concluded on June 26, 2014, and it is not what the Court should hold now.

21. *First*, the Court's language is clear: the Rule 30(b)(6) subjects and the documents sought in Syncora's subpoenas *to the Foundations* are irrelevant to the three topics the Court mentioned during the hearing. But the Court said nothing about the relevancy of those subjects or documents to the variety of topics and questions that have already been teed up or which will necessarily arise at trial. Nor did the Court apply its conclusion to the DIA. Thus, for example, the Court has to date said nothing that would preclude the City from examining a representative of the DIA about the reasons behind entering into the DIA Settlement.

22. *Second*, the effects of Syncora's argument are absurd. If the Court were to grant Syncora's motion, the Court would preclude itself from hearing evidence, for *any* purpose, on such topics as (1) the terms of the DIA Settlement, (2) the purpose or mission of any of the Foundations contributing to the DIA Settlement, or (3) those Foundations' prior donations. *See, e.g.*, Mot. Ex. 6B, John S. and James L. Knight Foundation Subpoena, Schedule A at 3. Because granting Syncora's overreaching motion *in limine* would preclude the City from proffering potentially admissible evidence, it should be denied. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) ("The court has the

-13-
13-53846-tjt    Doc 7145    Filed 08/27/14    Entered 08/27/14 23:49:43    Page 13 of 19

power to exclude evidence in limine only when evidence is clearly inadmissible on *all* potential grounds.") (emphasis added).

23. *Third*, with respect to the DIA Settlement, Syncora conflates the process that led to it with the results thereof. The City wholeheartedly agrees that evidence regarding, for example, who said what to whom during settlement negotiations is inadmissible, and the City has no intention of introducing evidence along those lines consistent with the Court's prior rulings. Similarly, the City does not dispute the irrelevancy for purposes of the confirmation hearing of proposals and counterproposals entertained by the Foundations or of testimony regarding how their negotiating positions evolved. Indeed, the proffer of such evidence would surely violate the Court's mediation order.

24. But Syncora tries to extend this concept too far. Syncora's expansive reading of this Court's prior ruling would preclude the City from introducing evidence regarding the results of mediation. Although the City agrees that evidence of the give-and-take that took place *during* mediation is inadmissible, it cannot be the case that the City is prohibited from introducing evidence related to the *conclusions* of mediation. For this reason, too, Syncora's motion *in limine* should be denied.

25. *Fourth*, the Sixth Circuit and its constituent trial courts look unfavorably on attempts like Syncora's to exclude broad swaths of evidence in

advance of trial. *See, e.g., Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed."), *cert. denied*, 423 U.S. 987; *Certain Land*, 547 F. Supp. at 681 ("Any broad pretrial exclusion of evidence . . . must be approached with great caution."). Indeed, it is difficult to conceive how, without the benefit of context, the Court could possibly be in a position to rule on the admissibility, for any purpose, of all evidence falling within the broad topics set forth in Syncora's subpoenas. The better approach here would be for the Court to take up these questions when and if they arise at trial. *See Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) (noting the "practical difficulty" of ruling on motions in limine "[in] the absence of context that comes when the challenged evidence is presented with the other proofs at trial," and observing that it is often desirable to defer ruling on such motions until trial); *see also Sperberg*, 519 F.3d at 712 ("A better practice is to deal with questions of admissibility of evidence as they arise."); *Ind. Ins. Co.*, 326 F. Supp. 2d at 846 ("Unless evidence meets th[e] high standard [for motions *in limine*], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context."). That is all the more true where, as here, a party attempts to expand a Court's ruling to exclude more evidence than the Court intended.

WHEREFORE, the City respectfully requests that this Court deny Syncora's motion *in limine*.

Dated: August 27, 2014         Respectfully submitted,

   /s/ Heather Lennox
Heather Lennox (OH 0059649)
David G. Heiman (OH 0038271)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

-17-
13-53846-tjt    Doc 7145    Filed 08/27/14    Entered 08/27/14 23:49:43    Page 17 of 19

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

**ATTORNEYS FOR THE CITY OF DETROIT**

# CERTIFICATE OF SERVICE

I hereby certify that, on August 27, 2014, I electronically filed the foregoing *Response in Opposition to Syncora's Motion in limine to Preclude Debtor from Offering Evidence Relating to (a) the Recoveries of Classes 10 and 11 Independent of the Funds from the DIA Funding Parties and the State and (b) the Topics Identified in Syncora's Subpoenas to the Foundations* with the Clerk of the Court, which sends notice by operation of the Court's electronic filing service to all ECF participants registered to receive notice in this case.


Dated: August 27, 2014     /s/ Heather Lennox
                                             Heather Lennox (OH 0059649)