IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------x
:
In re                                               : Chapter 9
                                                    :
CITY OF DETROIT, MICHIGAN,          : Case No. 13-53846
                                                    :
                Debtor.                         : Hon. Steven W. Rhodes
                                                    :
                                                    :
------------------------------------------------------------x

## JOINDER AND LIMITED PRETRIAL BRIEF IN SUPPORT OF OBJECTIONS OF WILMINGTON TRUST, NATIONAL ASSOCIATION, SUCCESSOR CONTRACT ADMINISTRATOR

Wilmington Trust, National Association ("WTNA"), not individually, but solely in its capacity as successor contract administrator[1], hereby submits this joinder to (A) *Financial Guaranty Insurance Company's Pretrial Brief in Support of Objection to Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 7102) (the "FGIC Pretrial Brief"), filed on August 27, 2014, and (B) *COPs Holders' Pretrial Memorandum of Law in Opposition to Confirmation of the Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 7128) (the "COPs Pretrial Brief," and together, with the FGIC Pretrial Brief,

---

[1] Wilmington Trust, National Association, also serves as successor to U.S. Bank National Association ("U.S. Bank"), as: (a) Trustee ("Trustee") under that certain Trust Agreement, dated June 2, 2005, by and among the Detroit General Retirement System Service Corporation (the "GRS Corporation"), the Detroit Police and Fire Retirement System Service Corporation (the "PFRS Corporation"), and U.S. Bank, and as successor contract administrator ("Contract Administrator") under that certain Contract Administration Agreement, dated June 2, 2005, by and among the Detroit Retirement Systems Funding Trust (the "2005 Funding Trust"), the GRS Corporation, the PFRS Corporation, and U.S. Bank, regarding the issuance of Certificates of Participation Series 2005-A by the 2005 Funding Trust and the transactions contemplated thereby; and (b) Trustee under that certain Trust Agreement, dated June 12, 2006, by and among the GRS Corporation, the PFRS Corporation, and U.S. Bank, and as Contract Administrator under that certain Contract Administration Agreement, dated June 12, 2006, by and among the Detroit Retirement Systems Funding Trust 2006 (the "2006 Funding Trust"), the GRS Corporation, the PFRS Corporation and U.S. Bank, in each case, regarding the issuance of Certificates of Participation Series 2006-A and 2006-B by the 2006 Funding Trust and the transactions contemplated thereby.

collectively, the "Pretrial Briefs"), filed on August 27, 2014, and limited pretrial brief (this "WTNA Limited Pretrial Brief") in opposition to *Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 6908) (as such may be amended and/or supplemented, the "Sixth Amended Plan"), filed on August 20, 2014. In support of this WTNA Limited Pretrial Brief,[2] WTNA respectfully states as follows:

1. WTNA hereby joins in and adopts the arguments set forth in the Pretrial Briefs. Moreover, WTNA agrees with and supports the Pretrial Briefs and incorporates the Pretrial Briefs as though fully set forth and incorporated herein at length.

2. Accordingly, WTNA requests that confirmation of the Sixth Amended Plan be denied.

## GENERAL BACKGROUND

3. The City filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C §§ 101 – 1532 (the "Bankruptcy Code"), on July 18, 2013. *See Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 4391) at 133, filed May 5, 2014.

4. On February 19, 2014, WTNA, as Contract Administrator and Trustee for the COPs,[3] filed four (4) proofs of claims against the City – claim numbers 1120, 1136, 1138, and 1197 (collectively, the "WTNA Proofs of Claim"). The WTNA Proofs of Claim assert amounts due and owing as a result of the 2005 COPs, the 2006 COPs (collectively, the "COPs"), and the COP Litigation (*i.e.*, Adversary Proceeding No. 14-04112). The WTNA Proofs of Claim

---

[2] WTNA reserves the right, in connection with the Confirmation Hearing, to rely on any and all evidence relevant to confirmation of the Sixth Amended Plan, including, but not limited to, any testimony or documents not cited or referenced herein, the WTNA Limited Objections (defined below), or in the Pretrial Briefs.

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sixth Amended Plan or the Pretrial Briefs, as may be applicable.

2

also assert amounts for lawful fees and expenses, which include the Contract Administrator's and the Trustee's legal fees and expenses incurred as a result of the City's chapter 9 filing, that have or are accruing pursuant to the Contract Administration Agreements (dated June 2, 2005 and June 12, 2006).

5. Additionally, the WTNA Proofs of Claim include the Trustee's claim in connection with the COP Litigation that asserted, among other amounts, a claim for lawful charges, fees, expenses, and rights to indemnification pursuant to the 2005 COPs Agreement and the 2006 COPs Agreement (collectively, the "Funding Trust Agreements"). Further, the WTNA Proofs of Claims provided notice of claims against the City arising from or relating to the COP Litigation, which the Trustee has specifically asserted as counterclaims against the City in the COP Litigation.

6. The City has filed multiple versions of a plan of adjustment, the last of which was filed on August 20, 2014 (*i.e.*, the Sixth Amended Plan).

7. In connection with the various plans of adjustment and dates set forth by the Court respecting objections to the Plan, WTNA filed: (a) *Joinder to Objection of Certain COPs Holders and Limited Objection of Wilmington Trust, National Association, as Successor Contract Administrator, to the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 4656) (the "Preliminary Limited Objection"), filed on May 12, 2014; (b) *Joinder to Supplemental Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit and Supplemental Limited Objection of Wilmington Trust, National Association, Successor Contract Administrator* (Docket No. 6678) (the "Second Supplemental Limited Objection"), filed on August 12, 2014; and (c) *Joinder to Supplemental Objection to Confirmation of the Sixth Amended Plan for the City of Detroit and*

*Supplemental Limited Objection of Wilmington Trust, Successor Contract Administrator* (Docket No. 7050) (the "Third Supplemental Limited Objection," and together, with the Preliminary Limited Objection, and the Second Supplemental Limited Objection, the "WTNA Limited Objections"), filed on August 25, 2014.

## LIMITED PRETRIAL BRIEF

8. The Sixth Amended Plan should not be confirmed for the reasons set forth in the WTNA Limited Objections, the Pretrial Briefs, and as more fully discussed below.

### A. The Sixth Amended Plan Unfairly Discriminates Against the COP Claims

9. The Sixth Amended Plan unfairly discriminates against Class 9 COP Claims – a non-consenting impaired unsecured class – in favor of similarly situated unsecured classes, including but not limited to, Classes 10 (PFRS Pension Claims), 11 (GRS Pension Claims), and 13 (Downtown Development Authority Claims). As set forth in sections 901 and 943(b) of the Bankruptcy Code, a chapter 9 plan must comply with provisions of the Bankruptcy Code - this includes sections 1129(a)(8), 1129(b)(1), 1129(b)(2)(A) and (B) of the Bankruptcy Code. Confirmation of the Sixth Amended Plan should be denied as the Sixth Amended Plan fails to meet the requirements of these sections of the Bankruptcy Code.

10. Specifically, section 1129(b)(1) of the Bankruptcy Code provides that a plan may not "discriminate unfairly" against a class of dissenting claimants. Class 9 COP Claims voted to reject the Plan[4] and are receiving under the Sixth Amended Plan disparate treatment from that of similarly situated creditors; thus, section 1129(b)(1) of the Bankruptcy Code is not satisfied.

11. Additionally, an examination of the treatment of the Class 13 Downtown Development Authority Claims highlights another example of the unfair discrimination against

---

[4] Votes were cast on the then-current *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 4392).

the Class 9 COP Claims. The Downtown Development Authority Claims arise out of a 1991 loan in the amount of $33,600,000, between the City and the Downtown Development Authority (the "Loan"). *See* Sixth Amended Plan § I.A.117. The Loan has no due date and no repayment terms, and the City is obligated to repay the loan *only to the extent that it has funds* available to do so. *See* City of Detroit, Michigan, *Comprehensive Annual Financial Report For the Fiscal Year Ended June 30, 2013*, p. 106 (July 25, 2014) (emphasis added).[5]

12. Despite this opaque obligation, and the fact that the City has never attempted to repay the loan in the prior twenty-three (23) years, the City is now choosing to honor this obligation in full by providing Class 13 a *pro rata* share of New B Notes based on the *full* amount of such claim. *See* Sixth Amended Plan § II.B.3.t.i. The Loan's treatment is in stark contrast to the limited projected range of recovery of 0% – 10% the City proposed for the Class 9 COP Claims, represented by a *pro rata* share of New B Notes based only on the aggregate amount of *unpaid principal* of COPs – not the full amount of the COP Claim. *See* Sixth Amended Plan § II.B.3.p.iii (emphasis added).

13. The disparate treatment more fully discussed in the Pretrial Briefs, as well as in this WTNA Limited Pretrial Brief, fails to overcome the Markell Test for unfair discrimination, as adopted by the Eastern District of Michigan in *In re Dow Corning Corp. See Dow Corning*, 244 B.R. 696, 700 (Bankr. E.D. Mich. 1999), *aff'd*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd in part and remanded*, 280 F.3d 648 (6th Cir. 2002) (adopting Professor Bruce Markell's rebuttable presumption test of unfair discrimination that compares the treatment of similarly situated classes under a plan, focusing on whether the dissenting class (a) receives a materially lower percentage of recovery, or (b) bears a greater risk in connection with plan distributions). Further, the City's

---

[5] Available at http://www.detroitmi.gov/News/tabid/3196/ctl/ReadDefault/mid/4561/ArticleId/503/Default.aspx.

disparate treatment of Class 9 COP Claims qualifies as unfair discrimination under the four-factor *Aztec* test. *See In re Aztec Co.*, 107 B.R. 585, 590 (Bankr. M.D. Tenn. 1989); *In re Graphic Commc'ns, Inc.*, 200 B.R. 143, 148 (Bankr. E.D. Mich. 1996)[6]. The City cannot justify the Sixth Amended Plan's unfair discrimination against the Class 9 COP Claims under either analysis and, as such, has failed to comply with section 1129(b)(1) of the Bankruptcy Code.

    **B.    The Sixth Amended Plan Violates Sections 1123(a)(3) and 1123(a)(5) of the Bankruptcy Code**

        i.    The Sixth Amended Plan Does Not Provide Specified Treatment to Certain Classes

14.    Rather than provide a detailed description of the treatment of Class 9 COP Claims, the Sixth Amended Plan provides a multitude of options that the City may exercise, such that the treatment for Class 9 COP Claims is anything but specified. Under the Sixth Amended Plan, the Class 9 COP Claims treatment is no more than a laundry list reservation of rights of all the ways the City could potentially treat the Class 9 COP Claims.

15.    Section II.B.3.p.i of the Sixth Amended Plan provides "[t]he COP Claims are Disputed Claims and not Allowed by the Plan, and the City reserves all rights to (A) object to, avoid or subordinate such Claims on any and all available grounds, including through the assertion of any and all grounds asserted in the COP Litigation, and (B) assign the right to object to, avoid or subordinate such Claims or the City's rights in the COP Litigation to the Litigation Trust." Based upon this treatment, WTNA is left to wonder if the City is intending to file a claim objection in addition to the COP Litigation, or if in the event that the COP Holders are

---

[6]    As the Court is aware, in denying confirmation (on similar grounds to the facts here and arguments offered by the debtor) of a proposed plan, this Court applied the four-factor *Aztec* test for unfair discrimination, which examines (a) the plan's discrimination to see whether (i) it is supported by a reasonable basis, (ii) the plan could be confirmed without it, and (iii) it is proposed in good faith, as well as (b) the treatment of the class asserting unfair discrimination). *In re Graphic Commc'ns, Inc.*, 200 B.R. 143.

successful in the COP Litigation, whether the City would then seek to bring yet another cause of action to avoid or subordinate what should presumably be an Allowed Claim.

16. Put simply, Class 9 COP Claim Holders are entitled to know when the City will deem "enough is enough." Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify any treatment of a class. Because of the lack of certainty for a resolution of **any** of the claims that comprise Class 9, the Sixth Amended Plan fails to comply with section 1123(a)(3) of the Bankruptcy Code.

> ii. The Sixth Amended Plan Does Not Provide an Adequate Means for Implementation

17. Section 1123(a)(5) of the Bankruptcy Code provides a non-exclusive, illustrative list of means for implementing a plan. *See* Colliers ¶ 1123.01[5]. Furthermore, the absence of adequate means of implementing a plan shows a lack of good faith pursuant to Section 1129(a)(3). *See Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1003 (E.D.Va. 1994).

18. The Disputed COP Claims Reserve in the Sixth Amended Plan is insufficient, illusory, and discriminates against the holders of Class 9 COP Claims. The Disputed COP Claims Reserve shall consist of "an Unsecured Pro Rata Share of New B Notes calculated as if such Disputed COP Claims were allowed in an amount equal to the aggregate *unpaid principal amount* as of the Petition Date for the COPs. . . ." Sixth Amended Plan § II.B.3.p.iii.A (emphasis added).

19. Yet, the Sixth Amended Plan defines "COP Claim" broadly to include:

> any Claim (other than a COP Swap Claim) on account of any act, omission or representation (however described) based upon, arising out of or relating to: (a) the issuance, offering, underwriting, purchase, sale, ownership or trading of any COPs (to the extent any such Claim is not a Subordinated Claim); (b) the COP Service Corporations; (c) any COP Service Contracts; (d) the 2005 COPs Agreement; (e) the 2006 COPs Agreement; (f) the Detroit Retirement Systems Funding Trust 2005; (g) the Detroit Retirement Systems Funding Trust 2006; (h) the Contract Administration Agreement 2005; (i) the Contract Administration

7

Agreement 2006; (j) any allegations that have been made or could have been made by or against the City or any other person in the COP Litigation; or (k) any policy of insurance relating to the COPs.

Sixth Amended Plan § I.A.74. Such proposed Disputed COP Claims Reserve is inconsistent with the unambiguous definition of COP Claim and clearly fails to account for a number of components of the COP Claim that should be (i) part of the calculation of the New B Notes that will be reserved (which is not easily, if at all, discernible from the text of the Sixth Amended Plan) and (ii) accounted for in the reserve established by the City.

20. Putting aside the inconsistency between the definition of COP Claim and the implementation of the Disputed COP Claims Reserve on the basis of only unpaid principal, section II.B.3.p.iii.A of the Sixth Amended Plan fails, as stated above, to set forth the actual amount of the COP Claim or the actual amount or number of New B Notes the City is planning on reserving in the Disputed COP Claims Reserve on account of the COPs. Any reserve should equal, at a minimum, the amount of the predicted recovery based on the full COP Claim amount – no less.

21. Moreover, the Disputed COP Claims Reserve, as proposed, is not even a true claims reserve. The Disputed COP Claims Reserve is subject to a number of conditions that include the use of funds to cover the fees and costs associated with and incurred by the Litigation Trust in pursuing the COP Litigation. Stated simply, the City has treated the COP Litigation as a *fait acompli*, but nothing is further from reality. The mere inclusion of a number of other components in the definition of COP Claim reveals this to be true and, as such, the Disputed COP Claims Reserve should be fully funded so as to backstop the predicted recovery of Class 9 COP Claims on account of the full amount of the COP Claim.

22. Accordingly, section II.B.3.p.iii.A of the Sixth Amended Plan is ambiguous and inconsistent with other provisions of the Sixth Amended Plan. Moreover, the Disputed COP

Claims Reserve is not adequately funded and is in fact not even a true reserve; it is a dwindling account set-up for the benefit of other creditors despite its misleading nomenclature.

23. In addition to the vague description of the treatment of Class 9 COP Claims, the Disputed COP Claims Reserve does not provide adequate means for implementation of the Sixth Amended Plan, in violation of section 1123(a)(5) of the Bankruptcy Code because it only provides a reserve for the principal amount of the COPS outstanding, not the full amount of the disputed claims. In order for its plan to be confirmable, the City must establish "reserves with sufficient assets to pay disputed claims in full to allow creditors full pro rata recovery of their claims." *In re Motors Liquidation Co.*, 447 B.R. 198 at 215 (Bankr. S.D.N.Y. 2011); *see also, In re Northwestern Corp.*, 362 B.R. 131, 134-35 (D. Del. 2007) (remanding confirmation to bankruptcy court to determine whether claims reserve contained sufficient assets to allow creditors to recover fully on their claims). The claims that make up Class 9 COP Claims are more than double the principal amount that the City purports to reserve for; thus, the City has not provided a reserve sufficient to pay the Class 9 COP Claims in the event they are ultimately allowed, which is in violation of section 1123(a)(5) of the Bankruptcy Code.

24. Furthermore, as this Court is aware, because it is has questioned the City about the issue on several recent occasions, the Sixth Amended Plan contemplates an exit facility. Yet as of the filing of this WTNA Pretrial Brief, no exit facility appears to exist. Therefore, the lack of any information or evidence of an exit facility, which is a component of the Sixth Amended Plan, is further evidence of the City's failure to provide adequate means for implementation of the Sixth Amended Plan.

### C. The City Cannot Use the Plan Confirmation Process to Determine the COP Claims

23. By failing to establish an accurate disputed claims reserve, the City is in effect attempting to circumvent the claims allowance process, and deprive WTNA and any other holder of a Class 9 COP Claim of its right to have the Class 9 COP Claims determined pursuant to the COP Litigation that the City itself initiated.

24. As the Supreme Court has recognized, adversary proceedings provide a creditor greater procedural protections. *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451 (2004). Adversary proceedings require a complaint and a summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion. Certain relief can only be obtained through an adversary proceeding, pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The relief the City sought in the COP Litigation is relief that, pursuant to Rule 7001 of the Bankruptcy Rules, must be brought in an adversary proceeding.

25. As courts have recognized, plan confirmation, by contrast, has less exacting standards and procedural safeguards than those provided to either the claims resolution process or adversary proceedings. The Third Circuit in *Mansaray* recognized:

> Crucially, plan confirmation does not require the filing of a complaint or the service of a summons . . .as the United States Court of Appeals for the Tenth Circuit recently put it, confirmation "does not require specific notice of a plan provision's effect on a particular creditor, nor does it require notice to be served in any particular manner or upon any particular person." *In re Mersmann*, 505 F.3d 1033, 1043 (10th Cir. 2007). In addition, an objection to the confirmation of a . . . plan is a "contested matter," governed by Federal Rule of Bankruptcy Procedure 9014. Contested matters are more informal than adversary proceedings, are initiated by motion (not by a complaint), and, unless the court directs otherwise, do not require a responsive pleading. Fed.R.Bankr.P. 9014; *In re Indian Palms Assocs.*, 61 F.3d 197, 204 n. 11 (3d Cir. 1995) . . . We hold that the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded. Its mandatory nature is grounded in principles of due process that trump 'finality.'

*In re Mansaray-Ruffin*, 530 F.3d 230, 237 (3d Cir. 2008).

26. WTNA's due process right to have its claims determined in the COP Litigation trumps any attempt by the City to argue that WTNA's claims can be determined in any manner by the terms of a confirmed plan. Therefore, even if the City is successful in confirming the Plan, and the Plan goes effective, the City cannot eliminate WTNA's rights under the ongoing COP Litigation. Thus, in the event that the Class 9 COP Claim Holders are successful in the COP Litigation, the City will have an absolute obligation to provide the Class 9 COP Claim Holders with the recovery proposed in the Sixth Amended Plan. If this Court determines that the Sixth Amended Plan does not currently provide a way in which the City could meet such obligation, the Sixth Amended Plan does not satisfy the requirements for confirmation.

    **D.**    **The Sixth Amended Plan Does Not Make the <u>Required Disclosures of Payment of Expenses</u>**

26. In *The City of Detroit's Brief Regarding the Court's Authority to Determine the Reasonableness of Fees Under 11 U.S.C.§ 943(b)(3)* (Docket No. 6842) (the "<u>City Fee Brief</u>"), the City states that the Court can make the required finding that the City has complied with the requirements of section 943(b)(3) of the Bankruptcy Code in part because the Court will (a) retain its authority to oversee the implementation of the (i) *Fee Review Order* (Docket No. 810), entered on September 11, 2013, and (ii) *Order Amending and Clarifying Fee Review Order of September 11, 2013* (collectively, the "<u>Fee Review Orders</u>") and (b) have the authority to review certain fees in connection with the Order Pursuant to (I) U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections (Docket No. 7028), entered on August 25, 2014. *See* City Fee Brief ¶ 27.

27. The City Fee Brief also states that "all fees of the Fee Review Professionals in the case or incident to the Sixth Amended Plan incurred prior to the Effective Date will be disclosed and subject to reasonableness review under section 943(b)(3) of the Bankruptcy Code." City Fee Brief ¶ 10. Yet, in the most recent amendments to the Sixth Amended Plan, the City contemplates, but does not fully disclose, costs to be paid by the City for services and expenses incident to the Sixth Amended Plan, including the obligations the City will undertake as a part of all the various settlements it has entered into.

28. Despite the City's admission that its agreement to pay fees and expenses makes such fees and expenses subject to the provisions of section 943(b)(3) of the Bankruptcy Code, it has yet to disclose them in any of its filings with the Court. *See* City Fee Brief ¶ 11, n. 13 ("It is generally agreed that the professionals of creditors and other third parties are subject to section 943(b)(3) only when paid by the debtor") (citing *In re Castle Pines N. Metro Dist.*, 129 B.R. 233, 235 (Bankr. D. Colo. 1991)).

29. Municipal debtors typically file an exhibit that sets forth all fees they will pay to satisfy the disclosure requirements of section 943(b)(3) of the Bankruptcy Code. *See* Memorandum in Support of Confirmation of the First Amended Plan for the Adjustment of Debts at Exhibit D, *In re Connector 2000 Ass'n, Inc.*, Case No. 10-04467 (Bankr. D.S.C.) (Docket No. 135), filed March 18, 2011; Disclosure Statement with Respect to Second Amended Plan for the Adjustment of Debts of City of Vallejo, California at 36, *In re City of Vallejo, California*, Case No. 08-26813 (Bankr. E.D. Cal.) (Docket No. 1045), filed May 20, 2011.

30. In light of the breakneck speed with which the City wishes to confirm the Sixth Amended Plan and to go effective, objecting parties, as well as the Court, should have all information necessary prior to confirmation, as is consistent with the requirements of section

943(b)(3) of the Bankruptcy Code that all fees be disclosed. The City has not disclosed all known fees and expenses, and as such, the City has failed to comply with section 943(b)(3) of the Bankruptcy Code.

### E. The Sixth Amended Plan Fails to Provide for the Payment of WTNA's Fees and Expenses

31. The Sixth Amended Plan also fails to address the City's contractual obligations concerning the fees and expenses of the Contract Administrator and the Trustee, as set forth in the WTNA Proofs of Claim. Under the Contract Administration Agreements, the Contract Administrator is entitled to payment "for all reasonable expenses, disbursements and advances incurred or made by the Contract Administrator in accordance with any provision of this Agreement (including, without limitation, the reasonable compensation and the expenses and disbursements of its agents and counsel)." Contract Administration Agreements § 7.6.1(2).

32. Similarly, under section 606 of the Funding Trust Agreements, the Trustee is entitled to payment or reimbursement of (1) reasonable compensation for all services and (2) all reasonable expenses, disbursements and advances incurred or made by the Trustee (including compensation of counsel) under any provision of the Funding Trust Agreements. *See* Funding Trust Agreements § 606(a). Under the Funding Trust Agreements, the compensation, reimbursement or indemnification of the Trustee is an "Additional Service Payment" under the COP Service Contracts. *Id.* § 606(c).

33. Further, the COP Service Contracts provide that Additional Service Payments are payable as General Corporate Expenses. COP Service Contracts § 1.01. Therefore, the Trustee's fees and expenses are the City's obligation as General Corporate Expenses. It is unambiguous that the City is required to pay the General Corporate Expenses as and when they become due. *Id.* § 9.08.

13

34. Additionally, the COP Service Contracts are "a continuing obligation of the City . . . binding upon the City and . . . inure to the benefit of and . . . enforceable by the Corporation, its successors and permitted assigns, and by Third Party Beneficiaries." COP Service Contracts § 9.07. As a part of the continuing obligations set forth in the COP Service Contracts, the Contract Administrator shall be "pa[id] compensation, expenses, and indemnification due [to] the Trustee [and the Contract Administrator] in accordance with the Trust Agreement [and the Contract Administration Agreement], including reasonable fees and expenses of counsel, in connection with any waiver or consent thereunder or any amendment thereof, or in connection with the enforcement" of the Funding Trust Agreements and the Contract Administration Agreements. COP Service Contracts §§ 9.09(a) & (b).

35. In fact, in 2009, the City reiterated its obligation to pay the fees and expenses of the COP Service Corporations, which include the fees and expenses of the Contract Administrator and the Trustee, pursuant to section 14.3 of the COP Swap Collateral Agreement by and between the City, the COP Service Corporations, and U.S. Bank, N.A., as custodian.

36. The City has stated both (a) on the record in the COP Litigation and (b) in its complaint filed in the COP Litigation (the "Complaint") that it is *not* seeking to *void all* of its obligations under the COP Service Contracts. Instead, the City is seeking to *void only* the "City Payments," which it defines as "a series of periodic payments . . . to the Service Corporations in an amount sufficient to pay the interest and principal due on the COPs" (*i.e.*, only the service payments or the scheduled payments). *See* Complaint ¶ 15.

37. In connection with both the City's chapter 9 case and the COP Litigation, the Contract Administrator and the Trustee, respectively, have each exercised and performed those post-petition duties specifically set forth and contemplated under the COPs Documents – duties

and contractual obligations clearly known to the City to be provided and incurred and for which the City received benefits. As such, the City must provide a mechanism for the payment of fees and expenses due and owing to the Contract Administrator and the Trustee.

## CONCLUSION

The City has failed to meet its burden of proof to show that the Sixth Amended Plan satisfies the requirements for confirmation under sections 943(b), 1123 and 1129 of the Bankruptcy Code. Accordingly, confirmation of the Sixth Amended Plan should be denied.

*[Text Continued On Following Page]*

WHEREFORE, WTNA requests that the Court deny confirmation of the Plan and grant such other and further relief as the Court may deem just and proper.

Dated: August 27, 2014
      New York, New York

RESPECTFULLY SUBMITTED,

By: /s/ Heath D. Rosenblat
    Kristin K. Going, Esq.
    Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Kristin.Going@dbr.com
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

-and-

Dirk H. Beckwith, Esq. (P35609)
FOSTER SWIFT COLLINS & SMITH, P.C.
32300 Northwestern Highway, Suite 230
Farmington Hills, Michigan 48334-1471
E-mail: dbeckwith@fosterswift.com
Telephone: (248) 539-9918

*Counsel for Wilmington Trust, National Association, as Successor Contract Administrator*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## CERTIFICATE OF SERVICE

I, Heath D. Rosenblat, an attorney in the law firm of Drinker Biddle & Reath LLP, certify that on this 27th day of August 2014, I caused the foregoing *Joinder and Limited Pretrial Brief in Support of Objections of Wilmington Trust, National Association, Successor Contract Administrator* to be filed and served by operation of the CM/ECF system for the Eastern District of Michigan Bankruptcy Court upon all registered users thereof.

    /s/ Heath D. Rosenblat
Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140