# Exhibit 8

# Excerpts of July 9, 2014 C. Thomas Deposition Transcript

KE 32074430

## Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In Re: ) Chapter 9

CITY of DETROIT, MICHIGAN, ) Case No. 13-53846

Debtor. ) Hon. Steven Rhodes
_____

The Videotaped Deposition of CYNTHIA THOMAS,
Taken at 500 Woodward Avenue, Suite 3500,
Detroit, Michigan,
Commencing at 9:23 a.m.,
Wednesday, July 9, 2014,
Before Leisa M. Pastor, CSR-3500, RPR, CRR.

## Page 2

APPEARANCES:

JENNIFER K. GREEN, ESQ.,
SEAN P. GALLAGHER, ESQ., (Birmingham Office)
ROBERT D. GORDON, ESQ., (Birmingham Office)
RONALD A. KING, ESQ. (Lansing Office)
Clark Hill, P.L.C.
500 Woodward Avenue, Suite 3500
Detroit, Michigan 48226
   Appearing on behalf of the Retirement Systems for the City of Detroit.

MIGUEL F. EATON, ESQ.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
   Appearing on behalf of the Debtor.

## Page 3

HEATHER J. HUBBARD, ESQ. (VIA TELEPHONE)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
   Appearing on behalf of U.S. Bank.

ROBERT A. WEISBERG, ESQ.,
CHRISTOPHER A. GROSMAN, ESQ.
Carson Fischer, P.L.C.
4111 Andover Road West
Second Floor
Bloomfield Hills, Michigan 48302
   Appearing on behalf of Oakland County.

## Page 4

SAM J. ALBERTS, ESQ.
Dentons US, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
   Appearing on behalf of the Retiree Committee.

RICHARD U. S. HOWELL, ESQ.
Kirkland & Ellis, LLP
300 North LaSalle
Chicago, Illinois 60654
   Appearing on behalf of Syncora Guarantee, Inc., and Syncora Capital Assurance, Inc.

JONATHAN M. WAGNER, ESQ.
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, New York 10036
   Appearing on behalf of Creditor Dexia Credit Local.

Pages 1 to 4

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt Doc 7150-8 Filed 08/28/14 Entered 08/28/14 01:05:39 Page 2 of 5

## Page 117

1  individual messages, you mean to particular members of
2  the retirement system?
3  **A. Yes, mailings or messages on check stubs depending on**
4  **who they're attempting to reach.**
5  Q. What sort of messages if you can think of an example?
6  **A. Well, an easy one is the relocation of the retirement**
7  **system offices or announcement of an educational**
8  **meeting like a town hall meeting.**
9  Q. Anything else that you can remember, you know as you
10  sit here right now that the PFRS does besides what
11  we've already talked about, to ensure that it provides
12  excellent customer service to its members?
13  **A. We were speaking, I thought, specifically about, I**
14  **guess, making the members aware, keeping them**
15  **notified, but if you -- I mean are you making -- do**
16  **you want me to speak broadly of -- of good customer**
17  **service?**
18  Q. Sure. So let's cabin off what we've already talked
19  about as the different ways to give them a voice or
20  make them aware. Other things besides that that you
21  can think of while you're sitting here that the PFRS
22  does to ensure excellent customer service to its
23  members?
24  **A. Well, individually, the trustees on the police and**
25  **fire side, they -- they send to cater to their members**

## Page 118

1  **needing assistance as far as completion of various**
2  **forms or -- especially when it comes to like a widow**
3  **or minor children.**
4  Q. Fair enough. And can you think of anything else
5  specific to the GRS beyond all the things that we've
6  already talked about where that the GRS is doing to
7  ensure that it provides excellent customer service to
8  its members?
9  **A. No.**
10  Q. Did you personally or I should say -- let me -- have
11  you personally conducted any investigation into the
12  morale of the active work force currently in Detroit?
13  **A. The active work force in Detroit, the morale, no.**
14  Q. More specifically, have you conducted any
15  investigation into the morale of the active PFRS
16  members in Detroit?
17  **A. No.**
18  Q. The same is true of GRS, correct?
19  **A. That is correct.**
20  Q. Are you aware of any studies that the retirement
21  systems have done investigating the morale of the
22  active work force with the PFRS or GRS?
23  **A. No.**
24  Q. I'd like to talk a little bit as I said before about
25  these newly proposed kind of board setup and

## Page 119

1  investment committee setup for the PFRS and GRS as
2  well as I said the investment committee, are you
3  familiar with these relatively new proposals I think
4  they were filed last Thursday?
5  **A. I am.**
6  Q. Have you read through those before?
7  **A. Pretty much, yes.**
8  Q. In general, do you have an understanding as to whether
9  the active boards are going to be replaced or whether
10  certain members are going to be replaced or whether
11  the people that are sitting in the positions now are
12  going to hold those positions until reelection?
13  **A. It's my understanding the trustees that are currently**
14  **sitting will hold those positions.**
15  Q. And there will now be an investment committee set up
16  of, I believe, seven people for GRS and nine for PFRS;
17  is that correct?
18  **A. That's my understanding.**
19  Q. Has there previously been an investment committee for
20  the PFRS or the GRS?
21  **A. Not an official committee.**
22  Q. Has there been an unofficial committee?
23  **A. I can speak to the police and fire on this because I**
24  **have a deeper history with police and fire. At times**
25  **there are -- committees have been formed for that**

## Page 120

1  **purpose.**
2  Q. Kind of unofficial committees?
3  **A. Correct.**
4  Q. And who would sit on those unofficial committees for
5  the police and fire?
6  **A. Generally, two to three trustees and the investment**
7  **officer.**
8  Q. Were you involved in the discussions about how to set
9  up these new investment committees?
10  **A. No.**
11  Q. Do you think that you should have been involved in
12  those discussions given that you are the executive
13  director of the retirement systems?
14  **A. In the setup of the committee?**
15  Q. Yeah, in the determination of who would be on the
16  committee and how they would get appointed and how the
17  committee would operate?
18  **A. Yes to a certain degree, yes. As it pertains to**
19  **administration of, yes.**
20  Q. And in part that's because a lot of the work that you
21  do is to carry out the resolutions of the board,
22  correct?
23  **A. That is correct.**
24  Q. And a lot of the work that you do is with the board,
25  right?

Pages 117 to 120

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt Doc 7150-8 Filed 08/28/14 Entered 08/28/14 01:05:39 Page 3 of 5

## Page 133

1  A. Arise as opposed to any other year?
2  Q. Right, whether the rate of retirement systems has been
3     higher over the past year than the rate of retirement
4     systems have been over the previous years?
5  A. I do not.
6  Q. Do you have an understanding as to how many of the
7     OPEB claimants have access to Medicare?
8  A. I do not.
9  Q. Do you know where to locate that information?
10 A. Yes.
11 Q. Where would you locate that information?
12 A. Same -- the official place to get that information
13    would be the office of benefits administration.
14    MR. HOWELL: Okay, I think I don't have any
15    further questions at this time. Thank you very much
16    for your time. I'm going to pass you over to Mr.
17    Wagner.
18    MR. WAGNER: And just for the record, I'll
19    have questions after Mr. Wagner.
20    MR. HOWELL: Sorry, I didn't mean to make
21    it like it was going to end sooner than we are.
22    That's the ultimate crime at a deposition, I
23    apologize.
24           EXAMINATION
25 BY MR. WAGNER:

## Page 134

1  Q. Ms. Thomas, good afternoon, my name is Jonathan Wagner
2     from Kramer Levin, we represent Dexia Credit Local in
3     the Detroit bankruptcy proceeding. I'll try not to
4     ask questions that Mr. Howell has asked but if I do,
5     I'll beg your indulgence, I'll be as brief as I can
6     possibly be.
7     Now you've been with the retirement systems
8     for about 26 years?
9  A. That's correct.
10 Q. And is there anyone in management that either
11    retirement system who's been there longer than you
12    have?
13 A. Yes- detector oh, that's currently working?
14 Q. Yes.
15 A. Yes.
16 Q. But you're among the longest tenured employees of the
17    retirement systems; is that a fair statement?
18 A. Currently.
19 Q. And is there anyone at either fund that has a -- any
20    professional who has a higher position than yours?
21 A. No.
22 Q. You're the top for both funds, correct?
23 A. Correct.
24 Q. And you can be as modest or not modest as you would
25    like but is there anyone who has more knowledge than

## Page 135

1     you about the retirement -- the two retirement
2     systems?
3  A. I'd have to clarify that. Knowledge of, you know, if
4     you're talking overall knowledge.
5  Q. Yes.
6  A. Of the funds?
7  Q. Yes.
8  A. No.
9  Q. Okay. And have you had any input into the development
10    of the plan of adjustment of the City?
11 A. No.
12 Q. Has the City asked for your advice or input?
13 A. On the development?
14 Q. Yes.
15 A. No.
16 Q. Have you done any work with Milliman concerning its
17    actuarial work with respect to the City of Detroit?
18 A. No, I haven't -- I haven't done any work with
19    Milliman. You know, I've -- I've received requests
20    for information.
21 Q. But did they ask for your input?
22 A. No.
23 Q. Did they ask for any advice from you?
24 A. No.
25 Q. Were you -- have you ever spoken to Mr. Glenn Bowen of

## Page 136

1     Milliman about the retirement systems?
2  A. No, I have not.
3  Q. Have you reviewed the -- have you been asked to
4     provide any input to any expert reports submitted by
5     Milliman in this case?
6  A. Can you repeat that question, please?
7     MR. WAGNER: Can you read it back?
8     COURT REPORTER: Mm-hmm.
9     (The requested portion of the record was
10    read by the reporter at 1:37 p.m. as follows:
11    "Question: Have you been asked to provide
12    any input to any expert reports submitted by
13    Milliman in this case?")
14 A. No, sir.
15 BY MR. WAGNER:
16 Q. So would it be fair to say that you've been frozen out
17    of the bankruptcy process here?
18    MS. GREEN: Object to form.
19 A. I can't say that.
20 BY MR. WAGNER:
21 Q. But certainly your advice has not been solicited; is
22    that correct?
23 A. That is correct.
24 Q. Are you aware that there's a pension task force that's
25    been set up with respect to the City?

Pages 133 to 136

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt  Doc 7150-8  Filed 08/28/14  Entered 08/28/14 01:05:39  Page 4 of 5

## Page 137

1  A. No.
2  Q. So you didn't even know that such a task force had
3     been -- has been working for the last year and a half
4     with respect to the City of Detroit, do you?
5  A. No.
6  Q. Nobody ever told you that?
7  A. No.
8  Q. And to your knowledge, is any member of your staff on
9     that pension task force?
10 A. No.
11 Q. If asked to provide input with respect to the
12    bankruptcy process and the plan of adjustment, would
13    you have provided that advice and input?
14 A. Well, I am -- I'm not an attorney, and I'm not an
15    actuary, but surely if they wanted any advice as it
16    pertains to operations, administration, historical, I
17    could have provided that type of information.
18 Q. And it would have been prudent of the City to speak to
19    the executive director of both retirement systems with
20    respect to this process, correct?
21    MR. ALBERTS: Object to form.
22 BY MR. WAGNER:
23 Q. You can answer.
24 A. In my opinion, yes.
25 Q. Now, do you believe you have properly discharged -- by

## Page 138

1     the way am I also right that often you've been the
2     last to know about changes to the retirement system
3     proposed by the City in the bankruptcy process?
4  A. It -- it has felt that way, yes.
5  Q. And you've pointed that out from time to time,
6     correct?
7  A. Yes, I have.
8  Q. Okay. Now, do you believe you've properly discharged
9     your fiduciary duties with respect to the pension
10    funds?
11    MS. GREEN: Object to form.
12 A. I make every attempt.
13 BY MR. WAGNER:
14 Q. You try your level best on behalf of the retirees of
15    the City, correct?
16 A. I do.
17 Q. And you believe you've performed your job properly?
18 A. I do.
19 Q. And you believe your staff has performed its job
20    properly?
21 A. I believe my staff does the best that they can.
22 Q. And Mr. Howell asked you some questions about the work
23    of Gabriel Roeder Smith, and I apologize if I overlap
24    a little bit, but am I right they have been the
25    actuaries for 70 years for these funds?

## Page 139

1  A. Yes, that's correct.
2  Q. Does any actuary know these funds better than Gabriel
3     Roeder Smith?
4     MR. ALBERTS: Objection.
5  BY MR. WAGNER:
6  Q. To your knowledge.
7  A. In my opinion, no.
8  Q. Is Gabriel Roeder Smith a qualified actuary?
9     MR. ALBERTS: Objection.
10    MS. GREEN: Objection.
11 BY MR. WAGNER:
12 Q. You can answer.
13 A. Are they qualified?
14 Q. Yes.
15 A. In my opinion, they are.
16 Q. Okay, and you're satisfied with their work?
17 A. Yes.
18 Q. And am I right that Gabriel Roeder Smith would not
19    have been retained as the actuary for these plans for
20    all these years unless you thought their work was
21    first rate Alberts objection.
22 A. I would agree with that.
23 Q. And do you have any material complaints about their
24    work?
25 A. I do not.

## Page 140

1  Q. Do you know anything reflecting negatively on the work
2     that they've done with respect to these two pension
3     plans?
4  A. I'm not aware of anything.
5  Q. And do you believe that the City did -- strike that.
6     Do you believe that the systems -- strike
7     that as a general matter do you believe that Gabriel
8     Roeder Smith made reasonable assumptions with respect
9     to the two retirement systems.
10    MS. GREEN: Objection. Alberts objection.
11 A. Do I believe they made reasonable assumptions?
12 Q. Yes.
13 A. In my opinion, yes.
14 Q. Now, if you had to pick between Milliman and Gabriel
15    Roeder Smith with respect to actuarial systems in the
16    Detroit pension plans, who would you choose Alberts
17    objection.
18 A. I would choose Gabriel Roeder.
19 Q. Why?
20 A. Because of their historical knowledge of the systems.
21 Q. Let's mark this article titled five questions with
22    Cynthia Thomas Detroit retirement systems for the --
23    if it were -- about the deposition it would be 5,000
24    questions but sorry for all the questions.
25    MARKED FOR IDENTIFICATION:

Pages 137 to 140

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt  Doc 7150-8  Filed 08/28/14  Entered 08/28/14 01:05:39  Page 5 of 5