# Exhibit 12

# Dec. 17, 2013 Appraisal Letter from Christie's to K. Orr

Doug Woodham
President, Christie's Americas

December 17, 2013

# CHRISTIE'S

Mr. Kevyn Orr
Office of the Emergency Manager
1126 Coleman A. Young Municipal Center
Detroit, Michigan 48226

Dear Mr. Orr:

As a follow-up to our letter of December 2, 2013, and as agreed with your office, Christie's is pleased to submit our final report on our two-part project for the City of Detroit, which includes our valuation of City of Detroit (COD) purchased works of art, as well as our recommendations for alternatives that would help the City to gain value from the COD works while retaining ownership of them.

With the delivery of the attached valuation listing and our five recommendations for alternatives to sale (as outlined in our preliminary report of December 2), this completes our scope of work for the City. We trust our report and its findings will provide a useful resource for the City, its creditors and all the parties involved as current negotiations and bankruptcy proceedings move forward.

**Part I: Valuation Report**

As stated in our previous letter, Christie's remit from your office was to conduct an appraisal of all COD works, which account for just under 5% of the estimated 66,000 objects in the Detroit Institute of Art's (DIA) total collection. The aggregate fair market value of the COD works remains essentially the same as it was in our preliminary evaluation, having increased only slightly with the completion of our appraisal. **The revised range is $454 - $867 million.**

Our work was conducted in three phases. Phase One of the appraisal process included all 326 COD works on display in the galleries; Phase Two included COD works in storage with perceived values of $50,000 or greater; and Phase Three consisted of COD purchases in storage with perceived values of less than $50,000. We are pleased that we were able to meet all deadlines within the desired timeframes.

At final accounting, Christie's appraisal spanned a total of 2,773 COD works, after adjustments were made for multi-part objects, objects unavailable for inspection, and objects that were deaccessioned over the years. Of these, Christie's completed a full appraisal of 1,741 of these works, which account for over 99% of the total projected value of all COD purchases. As agreed with you, we did not conduct a detailed evaluation of the remaining COD works, which were all in Phase Three and of modest commercial value. Based on our appraisal team's review of the cataloguing for these items provided by the Museum, we conclude that the aggregate value of this group is less than 1% of the total appraised value of the COD works. As noted previously, these works include:

- 350 photographs by the art historian and photographer Clarence Kennedy
- 375 textile fragments
- 12 photostats by local architect W.G. Malcomson
- 40 drawings and prints by artists who command only very low prices

Christie's
20 Rockefeller Plaza, New York, NY 10020
phone 212.636.2060
email dwoodham@christies.com



- 35 pieces of furniture
- 50 coins
- 35 architectural fragments
- 135 pieces of sculpture and utilitarian objects (i.e. jewelry boxes, mortars, etc)

**Key Findings.** As an attachment to this letter, Christie's has provided an itemized listing of all works with individual values exceeding $50,000. There are 406 entries in total, some of which have multiple components, such as fine art portfolios and service sets. As per our contract with you, COD works with appraised fair market values under $50,000 have not been itemized within the report, but are represented by their accession numbers and an aggregate fair market value range.

As noted in our preliminary report, 11 COD works on display in the galleries account for 75 percent of our total appraisal value. These works and their FMV ranges are:

- Pieter Bruegel the Elder, *The Wedding Dance* - $100-200 million;
- Vincent van Gogh, *Self Portrait with Straw Hat* - $80-150 million;
- Rembrandt, *The Visitation* - $50-$90 million;
- Henri Matisse, *Le guéridon* - $40-80 million;
- Edgar Degas, *Danseuses au foyer (La Contrebasse)* - $20-40 million;
- Claude Monet, *Gladioli* - $12-20 million;
- Michelangelo, *Scheme for the decoration of the ceiling of the Sistine Chapel* (recto and verso) - $12-20 million;
- Neri Di Bicci, *The Palla Altarpiece: Tobias and Three Archangels* - $8-15 million;
- Giovanni Bellini and Workshop, *Madonna and Child* - $4-10 million;
- Frans Hals, *Portrait of Hendrik Swalmius* – $6-10 million; and
- Michiel Sweerts, *In the Studio* - $5-10 million.

As a reminder, Christie's did not appraise major gifts to the Museum or any other item not covered within the Emergency Manager's specific scope of work.

**Process.** The vast majority of our appraisals were conducted in-person and in the presence of two Museum staff members, while some works were valued by examining photographs. Christie's has extensive experience conducting appraisals from photographs and we made professional judgments on what needed to be seen in person versus what we were comfortable appraising from photographs.

In order to determine the appraised value, Christie's appraisers used the "market data approach," which compares the subject work to similar works and makes appropriate adjustments. The lower number in the value range for each work we appraised represents a conservative price at which the property would change hands between a willing buyer and a willing seller in the relevant marketplace, and the higher number in the range represents the most advantageous price at which the property would change hands between a willing buyer and a willing seller in the relevant marketplace. Per your instructions, Christie's has made no assumptions about the sale process, nor did we take into consideration any commissions, buyer's premiums, or potential financial agreement between the buyer, seller and/or venue that would affect the final price realized. And as we agreed, we have not assumed any volume discounts.

POA00007569

To clarify again, Christie's was not asked to provide auction estimates, which are the price ranges that Christie's and other auction houses assign to works at the point of sale in order to attract maximum bidding interest. Auction estimates could be higher or lower than the appraised value; they are determined in consultation with the consignor of the individual work, and reflect his or her goals for the sale of the work.

**Annotations and Attributions.** Itemized listings within the report are sometimes annotated for fuller explanation. <u>A description of the annotations is contained in Appendix A.</u>

In some instances, our in-person review and further research led us to revise the attributions originally provided to us by the DIA. <u>All attribution and dating changes differing from the documentation provided by the DIA are noted in Appendix A.</u> Where attribution cannot be confirmed given current scholarship for a particular artist, Christie's has declined to provide any FMV estimate and recommends deeper research in consultation with third-party scholars.

In two instances, we are pleased to report that our in-person review and further research led us to confirm new attributions to previously unattributed COD works that were in storage. Our specialists conducted detailed research on two Classical Chinese paintings and determined they are likely the work of well-known masters. The first is a landscape attributed by our specialists to the hand of Tang Di (1287-1355), which was previously listed in the Museum inventory as a later Qing dynasty (1644-1911) work. The painting bears a damaged and partly lost signature by the artist, and is dated 1343. Using our fair market approach, our specialists have assigned a value of $700,000-1,500,000 to this work.

The second painting, also a landscape, is in the hand of the Zhe School master Wu Wei (1459-1508). It is signed with the artist's well-known sobriquet Xiaoxian ("Little Immortal") and dated to 1483. Using our fair market approach, our specialists have assigned a value of $300,000-600,000 to this work.

**Part II. Alternatives to Sale**

Our previous letter outlined five alternatives to sale in an effort to assist the City in using the COD works to raise money while allowing the collection to remain intact. These five alternatives are not mutually exclusive - some could be exercised in tandem.

As outlined in detail in our preliminary report, these five alternatives are:

- Use City-Owned Works as Collateral for Loan or Line of Credit
- Identify a Partner Museum for Long-Term Lease of City-Owned Works of Art
- Create a "Masterpiece Trust" to be Accessed by Members of a Museum Consortium
- Sale and Permanent Loan or Deposit back to the Museum
- Traveling Exhibition of Select Works

As noted, the success of these alternatives depends heavily on cooperation between the City and the Museum, along with supporting third parties in certain cases. All require further exploration to make practical assessments of their feasibility and to approximate the amount of revenue they could generate. We are pleased to see that the court-appointed mediator is exploring a variation on our suggested alternative of safeguarding the COD works through a sale and permanent loan or deposit back to the Museum. We will watch with interest as these ground-breaking discussions continue.

POA00007570

In closing, we are gratified that our experience and expertise enabled us to make a contribution to the important work of restructuring the City's debt and that we were able to assist you and your office in this process. We sincerely appreciate the opportunity to play a productive and constructive role in this process.

Sincerely,

Doug Woodham
President, Christie's Americas

CC: Bruce Bennett
Ken Buckfire

# Appendix A

**Attribution Changes:**
Upon further research and examination, Christie's appraisers have arrived at the following attribution and date changes, which differ from the information provided by the Detroit Institute of Arts. Where attribution cannot be confirmed given current scholarship for a particular artist, Christie's has declined to provide any FMV estimate and recommends deeper research in consultation with third-party scholars.

<u>Chinese Art</u>
**21.180, Attributed to Tang Di (1287-1355),** *Landscape*
Based upon our research, Christie's believes this previously unattributed scroll painting can be attributed to the hand of Tang Di (1287-1355), although it was listed in the Museum inventory as a later Qing dynasty (1644-1911) work. The painting bears a damaged and partly lost signature by the artist, and is dated 1343. Further supporting the Yuan dynasty (1271-1368) dating are two colophons, or commentaries, at the top of the painting written by known Yuan-period figures, who comment on the painting's authorship: Qian Kui (d. 1384) and Chen Mei (Yuan dynasty). There are two comparable scroll paintings by the artist in the Metropolitan Museum of Art (New York).

**21.181, Wu Wei (1459-1508),** *Landscape*
Christie's believes this previously unattributed scroll painting to be in the hand of the Zhe School master Wu Wei (1459-1508). It is signed with the artist's well-known sobriquet Xiaoxian ("Little Immortal") and dated to 1483. The work compares well with such well-known works by the artist at the Museum of Fine Arts, Boston, and The Tokugawa Reimeikai Foundation, Tokyo.

**22.211, A Tang-Style Carved Stone Head of Buddha**
Christie's has listed this as a later Tang-style work, not of the Tang period as stated in the Museum's cataloging. Further research is needed to confirm.

<u>European Sculpture</u>

**25.83-84, A Pair of Carved Limestone Capitals**
Christie's believes these are later carvings from the late 19th century, not the 12th century as catalogued by the Museum.

**26.146-147, A Pair of Carved Marble Lions**
Christie's believes this is a later carving from the 19th/20th century, not the 12th century as catalogued by the Museum.

<u>Impressionist and Modern Art</u>

**26.216, Amedeo Modigliani,** *A Woman*
Christie's did not provide a fair market value range for this painting because the work is not included in the principle catalogue on Modigliani's *oeuvre* by the late Ambrogio Ceroni, who is currently the sole

POA00007572

universally accepted authority on the artist. If a work attributed to Modigliani does not appear in Ceroni, it is not readily accepted in the marketplace.

### Old Master Paintings

**30.279, Master of San Filippo, *The Adoration of the Magi***
The attribution to the Master of San Filippo was provided by Dr. Everett Fahy, in whose dissertation, *Some Followers of Domenico Ghirlandaio,* the work was studied. He lists the work as 'not by Bartolomeo di Giovanni,' in contrast to the Museum's cataloging, which attributes it fully to the artist.

Annotations:

**Assumes analysis / testing would confirm the work is of the period.**
Property dating would be required to bring item to market.

**Assumes material (e.g., ivory) meets all age and import requirements to trade freely in the United States.**
The possession, import, export and sale of property composed of endangered species materials are heavily regulated by international treaty, federal and state law, including without limitation the Convention on International Trade in Endangered Species of Wild Fauna and Flora and the Endangered Species Act. In order to be legally tradable, a property containing endangered species materials must meet these legal requirements.

**Assumes the source of origin and the provenance is such that the work could be traded freely within the United States.**
Federal legislation and international agreements may restrict the ability to import and to sell certain foreign archaeological property or cultural artifacts in the United States. In order to be legally tradable, the source of origin of the property and its provenance must satisfy federal/treaty requirements.

**Assumes that the recognized authority on the artist would confirm attribution.**
The market requires that the recognized authority on the artist confirm the work is by the artist before it will be readily tradable in the marketplace.

**Assumes the recognized authorities would confirm authenticity.**
The market requires that multiple experts confirm the work is authentic before it will be readily tradable in the marketplace.