# Exhibit 17

# Excerpts of July 15, 2014 G. Malhotra Deposition Transcript

## Page 1

```
                UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF MICHIGAN
                            - - -
   In Re:              ) Chapter 9

   City of Detroit, Michigan,  )

        Debtor.        ) Hon. Steven Rhodes
   _____


        The videotaped deposition of GAURAV MALHOTRA
        Taken at 51 Louisiana Avenue, N.E.
        Washington, D.C.
        Commencing at 9:09 a.m.
        Tuesday, July 15, 2014
        Before:  Gail L. Inghram Verbano
        Registered Diplomate Reporter,
        Certified Realtime Reporter,
        Certified Shorthand Reporter-CA (No. 8635)
```

## Page 2

APPEARANCES:

RONALD A. KING, ESQ.
FRANK J. GUADAGNINO, ESQ. (Pittsburgh Office)
CLARK HILL, PLC
212 East Grand River Avenue
Lansing, Michigan 48906
   Appearing on behalf of the Retirement Systems
   for the City of Detroit.


GEOFFREY S. STEWART, ESQ.,
CHRISTOPHER DiPOMPEO, ESQ.,
SARAH A. HUNGER, ESQ.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
   Appearing on behalf of the Debtor and the Witness.

## Page 3

HEATHER J. HUBBARD, ESQ.
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
   Appearing on behalf of U.S. Bank.


SAM J. ALBERTS, ESQ.
DENTONS US, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
   Appearing on behalf of the Retiree Committee.


DOUGLAS G. SMITH, P.C.
KIRKLAND & ELLIS, LLP
300 North LaSalle
Chicago, Illinois 60654
   Appearing on behalf of Syncora Guarantee, Inc.,
   and Syncora Capital Assurance, Inc..

## Page 4

KELLY DiBLASI, ESQ.
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York City, New York 10153
   Appearing on behalf of Financial Guaranty
   Insurance Company.


MICHAEL BHARGAVA, ESQ.
CHADBOURNE & PARKE, LLP
1200 New Hampshire Avenue, NW
Washington, D.C. 20036
   Appearing on behalf of Creditor Assured
   Guaranty.

Pages 1 to 4

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 7150-17   Filed 08/28/14   Entered 08/28/14 01:05:39   Page 2 of 4

MALHOTRA

Q. Does the baseline forecast include any cost savings the City has received as a result of the breathing spell provided by the bankruptcy petition?

A. The baseline model was used to reflect a no-bankruptcy scenario and did incorporate the 10 percent wage cut that the employees have already taken. So that was already reflected in the baseline.

Q. And the baseline scenario is not intended to be a measure of what happens if the bankruptcy petition is dismissed; correct?

A. Well, you have to look at the individual line items, because I would say some of those line items, it will be reflective of what happens maybe if the bankruptcy proceedings are dismissed.

Q. And some of the line items in the baseline scenario will not be reflective of what happens if the bankruptcy petition is dismissed; correct?

A. I would have to think through which of those line items will and will not get impacted by the bankruptcy proceeding. So some will; some will not.

MALHOTRA

Q. But, overall, you would have to make changes to the baseline scenario to create a scenario where you had the bankruptcy petition dismissed; is that fair?

A. I don't know. I would have to look at this. It would be easier to have the baseline in front of me. I would have to look at it to say whether we would have to change the entire baseline or not.

Q. There have been times where you received reports of cash collections from the City that were not properly categorized; correct?

A. Yes.

Q. And there have been times where you received questionable reports regarding accounts payable from the City; correct?

A. When you say "questionable," it's -- I'm just -- they were not -- they were not fully complete.

Q. And Ernst & Young still -- you haven't audited the City's financial data; correct?

A. That is correct.

Q. Would it be possible to audit the City's financial data?

MALHOTRA

A. You should ask KPMG that.

Q. Are they responsible for auditing the City's financial data?

A. They are.

Q. You don't dispute that the City could continue to cut costs if the bankruptcy petition were dismissed; correct?

A. Could you ask me that again, please.

Q. There are cost-cutting measures the City could take if the bankruptcy petition were dismissed; correct?

A. Like what?

Q. Well, it could reduce headcount. That's one; correct?

A. Unlikely. The City is already at a low point in terms of the amount of headcount it already has.

Q. Well, here's some things that could happen. You could privatize some of the City services if the bankruptcy petition were dismissed; correct?

A. I don't know about that. Again, I mean, I don't know if the City can cut more costs now.

Q. You haven't been asked to do any

MALHOTRA

analysis of the costs and revenues to the City if the bankruptcy petition is dismissed; correct?

A. We do not -- we do not have a scenario of what happens if the City's bankruptcy proceedings are dismissed; that is correct.

Q. Have you been party to any conversations with the City where there have been discussions about what might happen if the bankruptcy petition is dismissed?

A. Not directly, no.

Q. Do you know if there's any contingency planning by the City about what might happen if the bankruptcy petition is dismissed?

A. No.

Q. Has the City already begun restructuring efforts that fall within that restructuring and reinvestment plan that your forecast is based on?

A. Some of the initiatives that are a part of the restructuring and reinvestment budget have been started already.

Q. What would those include?

A. You would have to talk to Conway MacKenzie about that, because there's a detailed risk of the items that are already -- or John

Pages 113 to 116

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt  Doc 7150-17  Filed 08/28/14  Entered 08/28/14 01:05:39  Page 3 of 4

Page 117

MALHOTRA

Hill, actually, of the items that are already underway.

Q. And would the costs and revenues from those activities be incorporated in both your baseline and your restructuring scenario or not?

A. No. It's a part of the restructuring scenario. We are operating as one scenario now that includes the restructuring and reinvestment initiatives; so, yes, those costs and -- would be a part of the restructuring and reinvestment budget as laid out in the plan.

Q. Okay. But I'm wondering, did you update the baseline scenario or not really?

A. I would have to go back and check, if any of the items would be reflective -- what change in the baseline. We are much more focused on the overall restructuring scenario.

Q. Okay. So sitting here today, you don't know whether or not you've incorporated costs from restructuring activities that have already started in the baseline scenario?

A. I would have to go back and look at that.

Q. Okay. Is that apparent on the face of

Page 118

MALHOTRA

the 10-year and 40-year forecasts? Or do you have to go back to the Excel spreadsheets or some other source to figure that out? Or is it something that Conway MacKenzie would have to tell you?

A. I'm just thinking. I think the -- it would be in the overall restructuring and reinvestment scenario, because the timing of some of the expenses had changed. So my guess is that it would be reflective in the update, to the best of our ability.

Q. And -- but would it be in the update of the baseline scenario?

A. I don't think it would be in the baseline cells, but we are -- like I said, we are looking at this as one restructuring scenario. It continues to be the focus.

Q. But your assumption in your forecast is that there would be no restructuring or reinvestment outside of chapter -- if the plan were not confirmed; is that fair?

A. Can you please repeat that.

Q. Is one of the assumptions of your forecast that there would be no restructuring or reinvestment if the plan were not confirmed?

Page 119

MALHOTRA

A. The baseline assumes that those billion four of expenses are not in the baseline. So that's what I'm comfortable telling you, that those billion four of expenses are not in the baseline.

Q. You've been working with the City since May of 2011; is that correct?

A. That sounds about right.

Q. And you know that there was a financial stability agreement between the State and the City; correct?

A. That is correct.

Q. And that was a consent agreement between the State and the City; correct?

A. And the city Council. Yes.

Q. And the financial stability agreement imposed mutual obligations on the City and the State to try to help restructure the City's financial situation; correct?

A. There were some annex additions that were a part of the agreement in which both the State and the City had certain obligations, yes.

Q. And did the financial stability agreement establish the financial advisory board

Page 120

MALHOTRA

and revenue conferences that are still ongoing?

A. I think it was a part of the financial stability agreement, yes.

Q. And the City agreed to operational reforms in the financial stability agreement?

A. Yes. There were some operations changes. I don't recall which ones, but --

Q. And then the emergency manager was appointed by the State; correct?

A. Yes.

Q. And the emergency manager put together an operating plan. Do you recall that?

A. I do.

Q. That was around May of 2013; correct?

A. I don't remember the exact date.

Q. And you agreed that the emergency manager had indicated that the financial stability agreement was the starting point for the emergency manager's plan?

A. I do not recall that.

Q. Do you agree that the emergency manager's operational plan, that was produced before the City went into bankruptcy; correct?

A. That is correct.

Pages 117 to 120

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 7150-17   Filed 08/28/14   Entered 08/28/14 01:05:39   Page 4 of 4