# Exhibit 36

# Excerpts of July 31, 2014 M. Kopacz Deposition Transcript

KE 32074430

- MARTI KOPACZ - VOLUME 1-
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In Re ) Chapter 9

CITY of DETROIT, MICHIGAN, ) Case No. 13-53846

Debtor. ) Hon. Steven Rhodes

DATE: July 31, 2014
TIME: 9:12 a.m.

VOLUME 1
VIDEOTAPED DEPOSITION OF MARTI KOPACZ, held at the offices of Squire Patton Boggs, 30 Rockefeller Plaza, New York, New York, pursuant to Order, before Hope Menaker, a Shorthand Reporter and Notary Public of the State of New York.

1    - MARTI KOPACZ - VOLUME 1-
2  A P P E A R A N C E S
3  GEOFFREY S. STEWART, ESQ.
4  CHRISTOPHER DiPOMPEO, ESQ.
5  ALEXANDER BLANCHARD, ESQ.
6  Jones Day
7  51 Louisiana Avenue, N.W.
8  Washington, D.C.  20001
9     Appearing on behalf of the Debtor
10
11 STEPHEN C. HACKNEY, ESQ.
12 Kirkland & Ellis, LLP
13 300 North LaSalle Street
14 Chicago, Illinois  60654
15    Appearing on behalf of Syncora
16
17 KATHLEEN HITCHINS, ESQ.
18 Sidley Austin, LLP
19 1501 K Street, N.W.
20 Washington, D.C.  20005
21    Appearing on behalf of National Public Financing
22
23
24
25

1    - MARTI KOPACZ - VOLUME 1-
2  ALFREDO R. PEREZ, ESQ.
3  Weil, Gotshal & Manges, LLP
4  700 Louisiana Street, Suite 1700
5  Houston, Texas  77002
6     Appearing on behalf of Financial Guaranty
7     Insurance Company
8
9  LISA SCHAPIRA, ESQ.
10 Chadbourne & Parke, LLP
11 30 Rockefeller Plaza
12 New York, New York  10112
13    Appearing on behalf of Assured Guaranty
14    Municipal Corporation
15
16 SHANNON L. DEEBY, ESQ.
17 Clark Hill, PLC
18 151 South Old Woodward Avenue
19 Suite 200
20 Birmingham, Michigan 48009
21    Appearing on behalf of the Retirement Systems
22    for the City of Detroit
23
24
25

1    - MARTI KOPACZ - VOLUME 1-
2  JENNIFER K. GREEN, ESQ. (Via Telephone)
3  Clark Hill, PLC
4  500 Woodward Avenue, Suite 3500
5  Detroit, Michigan  48226
6     Appearing on behalf of the Retirement Systems
7     for The City of Detroit
8
9  SAM J. ALBERTS, ESQ.
10 Dentons US, LLP
11 1301 K Street, N.W.
12 Suite 600, East Tower
13 Washington, D.C.  20005
14    Appearing on behalf of the Retiree Committee
15
16
17 ALLAN S. BRILLIANT, ESQ.
18 Dechert
19 1095 Avenue of the Americas
20 New York, New York 10036
21    Appearing on behalf of Macomb County
22
23
24
25

1 (Pages 1 to 4)

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt    Doc 7150-36    Filed 08/28/14    Entered 08/28/14 01:05:39    Page 2 of 4

- MARTI KOPACZ - VOLUME 1-
 A. Generally, a sensitivity analysis is done around a single variable.
 Q. Okay.
 A. Right?
 Q. And all of the sensitivity analyses -- analyses you have done have been done around a single variable, right?
 A. Yes.
 Q. And when it predicts a -- the effects of a 1 percent change, it would be that absolute number whether the 1 percent is up or whether the 1 percent is down, correct?
 A. Yes. Yes.
 MR. STEWART: That is all I have.
 MR. HACKNEY: This might be a good time for a break. I'm going to move all my stuff over there.
 MR. STEWART: Sure.
 THE VIDEOGRAPHER: Okay. The time now is 11:04 a.m. We're going off the record.
 (Whereupon, there was a brief recess in the proceedings.)
 THE VIDEOGRAPHER: Time now is

- MARTI KOPACZ - VOLUME 1-
11:12 a.m., and we're back on the record.
EXAMINATION BY MR. HACKNEY:
 Q. Ms. Kopacz, we've met before but --
 A. We have.
 Q. -- I'll introduce myself again. My name is Steve Hackney and I represent Syncora in the City of Detroit bankruptcy case. It's ice to see you again.
 A. Nice to see you again.
 Q. Let me ask you some open-ended questions at the start here.
 I first want to confirm that you're not intending to offer opinions other than the ones that are contained in your report, correct?
 A. That is my intention, yes.
 Q. Okay. And you have disclosed the bases for your opinions as well as the facts and data that you considered in your report, correct?
 A. Yes.
 Q. What are the limitations of the EY forecasts in your view? And I'm going to get some terminology down here, which is to say when I refer to the EY forecast at large, I mean all of them. So I mean the -- the baseline forecast

- MARTI KOPACZ - VOLUME 1-
without RRIs. I mean the forecast with RRIs. I mean the 40-year forecast. So when I refer to the forecasts at large, I'll call them the EY forecasts. Does that work for you?
 A. And that includes the Conway position?
 Q. It does.
 A. Okay.
 Q. Because you have to -- to have a name for them and ultimately EY assembled them.
 A. Right.
 Q. And so -- I mean, I can call them whatever you want, put it another way --
 A. Okay.
 Q. -- but if there's a time where you want to say well, Steve, I need to talk about this instead of this, let me know. Okay?
 And, as a general rule, if I ask you a question that doesn't make sense, as I am wont to do, will you please let me know so that I can rephrase it?
 A. Yes.
 Q. If you -- do you understand that if you answer my question, I'm going to assume that

- MARTI KOPACZ - VOLUME 1-
you understood my question?
 A. Yes.
 Q. So going back to it, what are the limitations of the EY forecasts that are included in the plan in your view?
 A. The limitations? I'm struggling with the word "limitations."
 Q. Okay.
 A. As I said in an answer to Mr. Stewart's question, the projections in the City's plan are -- were created for specific purpose and they are not what we would typically expect to see as a set of projections for a plan of reorganization in a Chapter 11 case. So, they're just -- they're -- it takes more effort to understand what they are and what they aren't.
 Q. Going back to that, I wanted to make clear that you are specifically disclaiming any opinions on whether the -- whether the plan is in the best interests of creditors, correct?
 A. That was not in my scope.
 Q. And you don't have any opinions on that?
 A. I do not have an opinion.

25 (Pages 97 to 100)

Elisa Dreier Reporting Corp. (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt Doc 7150-36 Filed 08/28/14 Entered 08/28/14 01:05:39 Page 3 of 4

Page 101

1     - MARTI KOPACZ - VOLUME 1-
2     Q.    And you did not attempt to -- to
3  determine whether the -- the City might do better
4  than the -- the forecasts such that there would be
5  more to distribute to creditors, correct?
6     A.    Yes.  And I -- I think at some point
7  in my report I said there are -- there are things
8  that I didn't -- that I very clearly didn't do,
9  and I didn't -- I didn't look at best interest of
10 creditors.  It was outside of my scope, and I
11 didn't look to see if there was a way in which the
12 City could generate more cash, and I didn't look
13 at any of the alternative plans.
14    Q.    And just to be clear, to the extent
15 the City is purporting to use the projections to
16 satisfy the best interests of creditors test, you
17 do not have an opinion that the projections are
18 appropriate for that purpose, correct?
19    A.    I don't have any opinion around best
20 interest at any level.
21    Q.    Okay.  But I have to tie it to the
22 forecasts as well, correct?  You're not saying
23 these forecasts satisfy the City's burden in
24 connection with the best interests of creditors?
25    A.    I -- no.  I don't have any -- I don't

Page 102

1     - MARTI KOPACZ - VOLUME 1-
2  have anything to say about that.
3     Q.    Okay.  I guess -- let me go back to
4  the subject of limitations and give you an example
5  to help inform my question a little bit.
6           So you're aware that the City has
7  what I'll describe as troubled data systems with
8  respect to the collection of financial records?
9     A.    Yes.
10    Q.    You're also aware that the forecast
11 is, in some respects, based on historical
12 financial records?
13    A.    Yes.
14    Q.    So, an example of a limitation would
15 be that if the City has historical financial
16 records that are of questionable validity, that
17 that could be a limitation on the accuracy of the
18 forecast.  So I'm using this as an example of
19 something that could be a limitation.  I'm not
20 saying that it is or it isn't, but I'm trying to
21 inform my question to you more to help put some
22 meat on the bones so to speak.
23    A.    The City has accurate financial
24 information once a year when it completes its --
25 its annual audit and gets its annual financial

Page 103

1     - MARTI KOPACZ - VOLUME 1-
2  stuff, right?  And at that point in time, when
3  KPMG signs off and it files its CAFR, then --
4  CAFR, C-A-F-R, comprehensive annual financial
5  report, those are numbers that have been vetted,
6  if you will.
7     Q.    The negative implication of your
8  question is that in between CAFRs, the City does
9  not have reliable financial records, correct?
10    A.    They have ad hoc records.
11    Q.    They are definitely ad hoc.
12    A.    Yes.
13    Q.    Are they reliable?
14    A.    Some may be and some may not be.
15    Q.    Okay.  You did not have sufficient
16 time to audit the records of the City, correct?
17    A.    No, and it wasn't in my scope.
18    Q.    Okay.  So you have not made a
19 determination as to whether the financial
20 information upon which the projections are built,
21 to the extent that they're not derived from a
22 CAFR, are based on reliable financial records,
23 correct?  You haven't made that determination.
24    A.    Can you repeat the question, please?
25          MR. KANE:  I was distracting her with

Page 104

1     - MARTI KOPACZ - VOLUME 1-
2  the microphone.
3           MR. HACKNEY:  That's okay.  It's a
4  long one, but I think it was the best way to
5  ask it, so it may be better to have it read
6  back.
7           (The question requested was read back
8  by the reporter.
9           THE WITNESS:  That didn't help me.
10 Can we try again?
11 BY MR. HACKNEY:
12    Q.    Yeah.  So, I think -- let me try and
13 summarize what you've said.
14          I believe that you have testified
15 that you believe the CAFRs are reliable financial
16 information sets, correct?
17    A.    Right.  I -- the CAFRs are based on
18 financial information that has been tested and
19 vetted and upon which KPMG has opined.  Okay?
20          I may quibble with some of the
21 accounting that's in there just because I have a
22 view of certain things.  Okay?  But at least at
23 that point in time, if we're looking at, for
24 example, the CAFR in June of '12, which was the
25 basis for the original baseline by E&Y, if they

26 (Pages 101 to 104)

Elisa Dreier Reporting Corp.   (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt   Doc 7150-36   Filed 08/28/14   Entered 08/28/14 01:05:39   Page 4 of 4