B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Michigan | **PROOF OF CLAIM** |
|---|---|---|

**Name of Debtor:**

City of Detroit, Michigan

**Case Number:**

13-53846

**FILED**

**FEB 2 0 2014**

US Bankruptcy Court
MI Eastern District

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):

K and P, Incorporated

COURT USE ONLY

**Name and address where notices should be sent:**

Shafer & Associates, P.C.
3800 Capital City Blvd, Suite 2
Lansing, MI 48906

Telephone number:  (517) 886-6560    email:  brad@bradshaferlaw.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**

Telephone number:            email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**RECEIVED**

**FEB 2 4 2014**

KURTZMAN CARSON CONSULTANTS

**1. Amount of Claim as of Date Case Filed:**    $            1,563,107.76

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   42 U.S.C. Section 1988
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**

**3a. Debtor may have scheduled account as:**

UNLIQUIDATED
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**

_____
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

**Value of Property:** $_____

**Annual Interest Rate_____% ☐Fixed  or  ☐Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:**  $_____

**Amount Unsecured:**  $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

RECEIVED

FEB 2 4 2014

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8.)

KURTZMAN CARSON CONSULTANTS

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | |
|---|---|
| Print Name: Brad J. Shafer | |
| Title: President | |
| Company: Shafer & Associates, P.C. | (Signature)          2-20-14 (Date) |
| Address and telephone number (if different from notice address above): | |

Telephone number:                    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

LAW OFFICES
SHAFER **&** ASSOCIATES, P.C.
<u>A PROFESSIONAL CORPORATION</u>
3800 CAPITAL CITY BLVD., SUITE 2
LANSING, MI 48906
E-MAIL info@bradshaferlaw.com
PHONE: 517-886-6560
FAX: 517-886-6565

BRADLEY J. SHAFER
ALSO MEMBER, AZ BAR
Brad@bradshaferlaw.com

MATTHEW J. HOFFER
Matt@bradshaferlaw.com

February 20, 2014

## SUMMARY OF ATTACHED DOCUMENTS

This is a summary of the attached documents, authorized under Federal Rule of Bankruptcy Procedure 3001(c). Attached is the Consent Decree declaring Shafer & Associates, P.C.'s clients the prevailing parties in that action, which serves as the basis for these claims. Also attached is a summary of invoices reflecting the full amount of attorney fees and costs claimed under 42 U.S.C. § 1988 (the statute that mandates an award of attorney fees and costs to a prevailing party in a civil rights action), which is claimed by the creditors. After Shafer & Associates, P.C. timely filed a motion for attorneys' fees and costs, Magistrate Steven Whalen issued a Report & Recommendation. Shafer & Associates timely filed an objection to the Report & Recommendation, which was followed by the City of Detroit's own objections. The bankruptcy proceeding was then initiated before Judge Cook adjudicated the motion.

There are four potential creditors: Shafer & Associates, P.C., and its clients in the federal action: HDV Greektown, LLC, K & P, Inc., and 415 East Congress St, LLC. Each creditor asserts a claim for the full amount because the clients and the law firm jointly assert the claim to the attorneys' fees and costs. The total amount claimed is $1,563,107.76, but this number appears on each of the four separate proof of claim forms to preserve all claims. Because all amounts are owed but yet to be determined by the trial court judge, the proper amount is currently unliquidated for all four creditors.

Very truly yours,

**SHAFER & ASSOCIATES, P.C.**

By: **Bradley J. Shafer**

# PROOF OF CLAIM FORM B-10

## INDEX OF ATTACHMENTS

| Tab | Document |
|-----|----------|
| 1 | Summary of Billing up to December 31, 2011 |
| 2 | Invoices from January 1, 2012 through July 17, 2013 |
| 3 | Consent Decree |
| 4 | Magistrate's Report & Recommendation |
| 5 | Plaintiff's Objection to Report & Recommendation |
| 6 | Defendant's Response to Plaintiff's Objections |

# 1

| ATTORNEY FEES – ECF 148 | | | |
|---|---|---|---|
| Bradley J. Shafer | 1695.50 hours | $350 per hour | $593,425.00 |
| Andrea E. Pritzlaff | 972.95 hours | $250 per hour | $243.237.50 |
| Matthew J. Hoffer | 840.70 hours | $200 per hour | $168,140.00 |
| Associate | 3.10 hours | $200 per hour | $620.00 |
| Law clerk | 608.80 hours | $65 per hour | $39,572.00 |
| Corbett Edge O'Meara | | Flat retainer fee | $5000.00 |
| Attorney Fee Subtotal | | | $1,049,994.50 |
| Out-Of-Pocket Expenses | | | $30,475.85 |
| Out-Of-Pocket Expenses (Expert Witness Fees) | | | $164,921.49 |

| ATTORNEY FEES – INITIAL LAWSUIT – ECF 148 | | | |
|---|---|---|---|
| Bradley J. Shafer | 282.60 hours | $350 per hour | $98,910.00 |
| Andrea E. Pritzlaff | 170.20 hours | $250 per hour | $42,550.00 |
| Law Clerk | 4.40 hours | $65 per hour | $286.00 |
| Attorney Fee Subtotal – Initial Lawsuit | | | $141,746.00 |
| Out-of-Pocket Expenses – Initial Lawsuit | | | $1,616.58 |

| TOTAL OF ALL ATTORNEY FEES AND OUT-OF-POCKET EXPENSES – ECF 148 | | |
|---|---|---|
| Attorney Fee Subtotal | | $1,049,994.50 |
| Attorney Fee Subtotal – Initial Lawsuit | | $141,746.00 |
| 10% Enhancement | | $119,174.05 |
| Out-Of-Pocket Expenses | | $30,475.85 |
| Out-Of-Pocket Expenses (Expert Witness Fees) | | $164,921.49 |
| Out-of-Pocket Expenses – Initial Lawsuit | | $1,616.58 |
| **TOTAL** | | **$1,507,928.47** |

| PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ATTORNEY FEES AND COSTS – ECF 155 | | |
|---|---|---|
| Additional Copy Related Expenses | | **$1,192.80** |

| SUPPLEMENT TO PLAINTIFFS' MOTION FOR ATTONREY'S FEES AND COSTS – ECF 157-1 | | | |
|---|---|---|---|
| Bradley J. Shafer | 49.70 hours | $350.00 per hour | $17,395.00 |
| Andrea Pritzlaff | 0.10 hours | $250.00 per hour | $25.00 |
| Matthew J. Hoffer | 22.80 hours | $200.00 per hour | $4,560.00 |
| Supplemental Attorney Fee Subtotal | | | $21,980.00 |
| Supplemental Out-Of-Pocket Expenses | | | $1,539.34 |
| TOTAL | | | **$23,519.34** |

| | | |
|---|---|---|
| **TOTAL** | | **$1,532,640.61** |

# TOTAL HOURS BILLED

| Name | Attorney Fees | Initial Lawsuit | Supplement | TOTAL |
|---|---|---|---|---|
| Bradley J. Shafer | 1695.50 | 282.60 | 49.70 | 2,027.80 |
| Andrea E. Pritzlaff | 972.95 | 170.20 | 0.10 | 1,143.25 |
| Matthew J. Hoffer | 840.70 | 0.00 | 22.80 | 863.50 |
| Associate | 3.10 | 0.00 | 0.00 | 3.10 |
| Law Clerk | 608.80 | 4.40 | 0.00 | 613.20 |

# 2

SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard
Suite #2
Lansing, MI 48906-2110

February 20, 2014

In Reference To:  *H.D.V. Greektown, L.L.C., et al. v. City of Detroit*

*U.S. District Court Eastern District of Michigan (Detroit)*
*Case No.: 2:06-cv-11282-JAC-VMM*

*United States Court of Appeals for the Sixth Circuit*
*Court of Appeals Docket #: 08-1329*

**Billing Entries Continuing on from (but not included in) ECF 157 -
Supplement to Plaintiffs' Motion for Attorney's Fees and Costs -
through to the City filing Bankruptcy on July 18, 2013.**

**January 1, 2012 through July 17, 2013**

Professional Services

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 1/11/2012 MJH | Review ECF notice. | 0.25<br>200.000/hr | 50.00 |
| 1/25/2012 MJH | Review billing entries for duplicate work/meetings between myself and Brad. | 0.5<br>200.000/hr | 100.00 |
| 1/30/2012 BJS | Work on supplement to attorney fee motion. | 3.5<br>350.000/hr | 1,225.00 |
| 2/23/2012 MJH | Re: 2006 Suit - Research for supplement to attorney fee motion regarding fees for motion for fees are recoverable; draft briefing insert. | 0.25<br>200.000/hr | 50.00 |
| 2/24/2012 MJH | Re: 2006 Suit - Review fee request supplement; email Brad Shafer regarding possible error in dollar amount. | 0.25<br>200.000/hr | 50.00 |
| 4/19/2012 BJS | Received and reviewed order regarding magistrate disqualification. | 0.125<br>350.000/hr | 42.00 |
| 4/20/2012 BJS | Received and reviewed order of reassignment of attorney fee motion Magistrate Whalen. | 0.125<br>350.000/hr | 42.00 |

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 5/1/2012 | BJS | Prepare correspondence regarding reassignment of attorney fee motion. | 0.25 350.000/hr | 87.50 |
| 5/4/2012 | MJH | Correspond with Harry regarding Kohn Bill; correspond with ShindelRock regarding deposition bill billable to city of Detroit; review email from Montie with corrected ShindelRock Bill. | 0.5 200.000/hr | 100.00 |
| 5/5/2012 | BJS | Prepare emails regarding expert bills. | 0.25 350.000/hr | 87.50 |
| 5/7/2012 | BJS | Emails regarding billing. | 0.25 350.000/hr | 87.50 |
| 5/8/2012 | MJH | Emails to Gaabo regarding payment of experts for deposition time. | 0.25 200.000/hr | 50.00 |
| 5/17/2012 | BJS | Received and reviewed oral argument notice. | 0.25 350.000/hr | 87.50 |
| | MJH | Review notice of hearing from court; email clients regarding same. | 0.25 200.000/hr | 50.00 |
| 6/15/2012 | MJH | Review law clerk memo regarding cases from Whalen addressing attorney fees; follow up research on old cases relied upon by Whalen; research whether those cases are still good law. | 1.75 200.000/hr | 350.00 |
| | LAW | Re: 2006 - Attorney fee decisions under 42 USC 1983 starting October 2011 to present in Eastern District of Michigan or Sixth Circuit. | 2.75 65.000/hr | 178.75 |
| 6/17/2012 | BJS | Received and reviewed research memo and cases for oral argument. | 0.75 350.000/hr | 262.50 |
| | MJH | Email memorandum to Brad Shafer regarding Whalen decisions, law clerk memo, and decisions relied upon by Whalen in his previous decisions. | 0.1 200.000/hr | 20.00 |
| 6/18/2012 | BJS | Received and reviewed memo and new attorney fee cases; begin preparation for oral argument; review Magistrate Whalen's recent attorney fee award ruling; review pertinent cases cited there. | 4.0 350.000/hr | 1,400.00 |
| | LAW | Research memo on any orders that judge Whelen grants motion for attorney fee; researched any reason for reduction in attorney fees within Sixth Circuit or Eastern District of Michigan; researched various circuit courts "billing judgement." | 7.5 65.000/hr | 487.50 |
| 6/22/2012 | LAW | Researched various circuit courts stand point on billing judgments; researched specific reasons for reduction in attorney fees. | 4.75 65.000/hr | 308.75 |
| 6/27/2012 | BJS | Prepare for hearing; review case law and bills; prepare outline of argument. | 4.0 350.000/hr | 1,400.00 |

| Date | | Description | Hrs/Rate | Amount |
|------|-----|-------------|----------|--------|
| 6/27/2012 | MJH | Email clients with date, time and location; research regarding recovery of attorney fees under section 1988 for related administrative hearing. | 0.5<br>200.000/hr | 100.00 |
| | MJH | Research attorney fees for a prevailing plaintiff cannot be found to be excessive if they do not reach the 1/3 thresh hold; research fee award in Field's v. Merchants & Medical Credit, before Whalen; check for updates on any new attorney fee cases in Eastern District of Michigan or the Sixth Circuit. | 3.5<br>200.000/hr | 700.00 |
| 6/28/2012 | BJS | Travel to and from and attend hearing on attorney fee motion; meeting with James McClanahan. | 7.0<br>350.000/hr | 2,450.00 |
| 7/2/2012 | LAW | Looked for holdings stating that judges or magistrates have less discretion in determining a motion for attorney fees if a previous judge handled it who has died or retired. | 2.2<br>65.000/hr | 143.00 |
| 7/18/2012 | MJH | Call court, order transcript, email from court reporter with order form. | 0.25<br>200.000/hr | 50.00 |
| 7/23/2012 | BJS | Received and reviewed research memo on attorney fee issue. | 0.25<br>350.000/hr | 87.50 |
| | LAW | Researched any law stating that judge or magistrate has reasonable discretion (or not as much) when previous judge /magistrate retired or died. | 0.7<br>65.000/hr | 45.50 |
| 7/27/2012 | BJS | Email regarding expert payment. | 0.25<br>350.000/hr | 87.50 |
| 8/15/2012 | MJH | Review transcript received from court reporter. | 0.25<br>200.000/hr | 50.00 |
| 3/11/2013 | MJH | Research attorney fees and bankruptcy - what happens if the City goes broke. | 1.25<br>200.000/hr | 250.00 |
| 5/23/2013 | BJS | Received and reviewed report and recommendation; emails regarding same. | 1.0<br>350.000/hr | 350.00 |
| | MJH | Review Whalen's report and recommendation on attorney fee motion; emails with Brad Shafer regarding same. | 0.5<br>200.000/hr | 100.00 |
| 5/24/2013 | BJS | Work on objections to report and recommendation. | 2.75<br>350.000/hr | 962.50 |
| | MJH | Continue review of report and recommendation on attorney fees; discuss with Brad Shafer; identify topics for objections. | 0.25<br>200.000/hr | 50.00 |
| | LAW | Read attorney fees opinion and researched cases reducing award by 60%. | 4.75<br>65.000/hr | 308.75 |

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 5/28/2013 | BJS | All day research and work on objections to report and recommendation. | 7.5 350.000/hr | 2,625.00 |
| | MJH | Research for objections; second review of opinion; pull materials for Brad Shafer; go through Brad Shafer's research list with Law Clerk; research. | 3.25 200.000/hr | 650.00 |
| | LAW | Researched 4th Circuit case law addressing attorney fees; relevance of contingency fee agreements; 3% - 5% cap on fee litigation; trial judge's deference; 60% or greater reductions in attorney fees; hourly vs. contingency agreements. | 5.75 65.000/hr | 373.75 |
| 5/29/2013 | BJS | Lengthy work on objections to report and recommendation. | 5.0 350.000/hr | 1,750.00 |
| 5/31/2013 | LAW | Researched cases that are exceptions to the 3% or 5% caps rule on fee petitions; researched cases stating that trial judges are given deference because of their familiarity with the case. | 1.75 65.000/hr | 113.75 |
| 6/1/2013 | BJS | Work on objections. | 2.75 350.000/hr | 962.50 |
| 6/2/2013 | BJS | Work on objections; numerous emails regarding same. | 2.5 350.000/hr | 875.00 |
| 6/3/2013 | MJH | Draft and file motion for leave to file excessive pages; work with court to reset passwords; research regarding: new case on fees for related proceedings, Whalen bio, Cook fee awards, fees awarded in following same claims being dismissed without prejudice. | 3.75 200.000/hr | 750.00 |
| | BJS | Lengthy work on objections. | 7.5 350.000/hr | 2,625.00 |
| | LAW | Worked on Greektown objections; researched cases stating hourly paid attorneys equal to same attorney fees as attorneys with contingency fee arrangements; researched cases that had across-the-board cuts to only costs and worked on brief. | 7.5 65.000/hr | 487.50 |
| 6/4/2013 | BJS | Work on objections. | 6.75 350.000/hr | 2,362.50 |
| | MJH | Research and minor drafting regarding associate vs partner efficiency; edits to brief. | 0.5 200.000/hr | 100.00 |
| 6/5/2013 | BJS | Finish objections. | 5.75 350.000/hr | 2,012.50 |
| 6/6/2013 | BJS | Organize research after objections. | 1.5 350.000/hr | 525.00 |

| Date | Init | Description | Hrs/Rate | Amount |
|------|------|-------------|----------|--------|
| 6/7/2013 | BJS | Telephone conversation with Robert Hertzberg (bankruptcy attorney). | 0.25 350.000/hr | 87.50 |
| 6/14/2013 | MJH | Correspondence from/to Gaabo regarding extra time for objections. | 0.25 200.000/hr | 50.00 |
| 6/18/2013 | MJH | Emails with Gabbo regarding his request for an extension to reply to objections. | 0.25 200.000/hr | 50.00 |
| | | For professional services rendered | 120.510 | $28,651.250 |

Additional Charges :

| Date | Description | Amount |
|------|-------------|--------|
| 1/1/2012 | Copies for October 2011 thru December 2011. | 1,123.95 |
| 4/1/2012 | Copies for January 2012 through March 2012. | 33.75 |
| 7/1/2012 | Copies for April 2012 through June 2012. | 210.15 |
| | Pacer Service Charges for April 2012 thru June 2012. | 15.20 |
| | Pacer Service Charges for April 2012 thru June 2012. | 7.40 |
| 7/24/2012 | Hearing Transcript Fee. | 149.65 |
| 10/1/2012 | Copy for July 2012 thru September 2012. | 0.45 |
| 1/1/2013 | PACER Charges for October 1, 2012 thru December 31. 2012. | 3.70 |
| 6/25/2013 | Copies from March 2013 through June 24, 2013. | 265.35 |
| 7/1/2013 | PACER charges for April 2013 - June 2013. | 6.30 |
| | Total additional charges | $1,815.900 |
| | Total amount of this bill | $30,467.150 |
| | Balance due | $30,467.150 |

# 3

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**H.D.V. - GREEKTOWN, LLC**, a Michigan
Limited Liability Company, **415 EAST
CONGRESS, LLC**, a Michigan Limited
Liability Company, and **K & P, INC**. f/d/b/a
**Deja Vu**, d/b/a **Zoo Bar**, et al

   Plaintiffs,

vs.

**CITY OF DETROIT**, a Municipal Corporation,

   Defendant.

Case No. 06-11282
Hon.: Julian Abele Cook, Jr.
Magistrate: Virginia M. Morgan

---

**BRADLEY J. SHAFER, MI (P-36604)**
**ANDREA E. PRITZLAFF, MI (P-64147)**
Shafer & Associates, P.C.
Attorneys for Plaintiff
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906-2110
(517) 886-6560

**JAMES D. NOSEDA (P-52563)**
**ERIC B. GAABO (P-39213)**
Attorneys for Defendant
City of Detroit Law Department
660 Woodward Avenue, Suite 1650
Detroit, Michigan 48226
(313) 237-3057

**CORBETT E. O'MEARA, MI (P-54716)**
O'Meara & O'Meara, PLLC
Co-Counsel for Plaintiffs
93 Kercheval
Grosse Pointe Farms, MI 48236
(313) 882-7450

---

## CONSENT DECREE

On March 29, 2011, the parties hereto having informed this Court on the record that they

had, subject to the approval of the Detroit City Council, reached a settlement and resolution of

the remaining aspects of this action; the Detroit City Council having approved the terms of such

settlement and resolution; and the Court being otherwise fully informed in the premises.

THE COURT **APPROVES, ADOPTS, RATIFIES, AND** hereby **ENTERS** the following
**CONSENT DECREE:**

1

1.      The orders of this Honorable Court entered on August 6, 2007; February 14, 2008; August 12, 2009; August 27, 2009; March 12, 2010; September 8, 2010; and November 18, 2010 (being, respectively, Dkt. No.'s 48, 70, 88, 90, 117, 122, and 126) are hereby incorporated into this Consent Decree, and the parties are hereby ordered to abide by the same.

2.      In full satisfaction of Plaintiffs' various damage claims in this action, the City of Detroit (sometimes "City") shall pay to the Plaintiffs the sum of Two Million Nine Hundred Fifty Thousand Dollars ($2,950,000.00), by the issuance of a check made payable to "H.D.V.-Greektown, LLC, 415 East Congress, LLC, K & P, Inc., and Shafer and Associates, P.C., their attorneys."

3.      For and in consideration of the City's payment of the sum set forth in paragraph 2 herein, Plaintiffs shall, upon payment of such sum, execute and tender to defense counsel releases of the City of Detroit and any and all of the latter's servants, agents and employees from any and all monetary liability or claims for damages that Plaintiffs raised, or could have raised, in this action, with the exception of Plaintiffs' claims for attorneys' fees and costs pursuant to 42 U.S.C. §1988.

4.      Upon payment of the sum set forth in paragraph 2 hereto, Plaintiffs' claims for damages (but not their claims for attorneys' fees and costs pursuant to 42 U.S.C. §1988) shall be dismissed with prejudice.

5.      Plaintiffs' claims for attorneys' fees and costs pursuant to 42 U.S.C. §1988 shall be decided by this Court, subject to the following stipulations:

    A.      The parties stipulate that Plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. §1988, up to and including the date set for trial, March 29, 2011.

B.     The City does not waive its right to object to Plaintiffs' request for attorney fees and costs on any ground other than that Plaintiffs are not "prevailing parties" within the meaning of 42 U.S.C. § 1988.

C.     All parties reserve their right to any appellate remedies they may have with regard to the amount of costs and/or attorney fees awarded by the Court under 42 U.S.C. §1988.

6.     The City acknowledges that H.D.V.- Greektown, LLC, and any successor in interest to it, may present upon the premises located at 415 East Congress, Detroit, Michigan ("Premises"), full "adult" entertainment in accordance with the licenses and permits that it or any such successor possesses or may possess from the State of Michigan and/or the City of Detroit. Pursuant to this Court's ruling declaring the "adult use" provisions of the City of Detroit's zoning ordinance to be unconstitutional (Dkt. 48), the Sixth Circuit's decision in *H.D.V. -Greektown, LLC v City of Detroit*, 568 F.3d 609 (6th Cir 2009) declaring the operation of an adult cabaret to be a lawful conforming use of the Premises (*id.* at 620-621), this Court's order implementing the Sixth Circuit's decision and declaring the operation of an adult cabaret to be a lawful conforming use of the Premises (Dkt. 90), and this Court's Order denying Defendant's Motion to Revise Order Pursuant to Fed. R. Civ. P. 54 (Dkt. 117), the City agrees that it will not restrict the number of dancers who perform on the Premises at any given time, or the days of the week, or the locations within the Premises that adult entertainment may be presented by H.D.V. or its successor except as provided in Paragraph 7 below. Plaintiffs acknowledge, however, that the City may enforce against Plaintiffs or their successors a generally-applicable regulatory ordinance, such as the Chapter 5 of the Detroit Code, provided that such provisions are constitutional and otherwise valid.

3

7.     The parties agree, and this Court HEREBY ORDERS, that so long as any form of "adult" or sexually oriented entertainment is presented upon the Premises, all of the following restrictions shall apply:

   A.     Neither the Plaintiffs nor their assign(s) or successor(s) in interest shall expand, or increase, the physical size (or "footprint") of the building located upon the Premises;

   B.     Neither the Plaintiffs nor their assign(s) or successor(s) in interest shall increase the square footage of any of the floors in the building located upon the Premises;

   C.     Neither the Plaintiffs nor their assign(s) or successor(s) in interest shall increase the number of alcohol-serving bars that are permitted on the Premises by the Michigan Liquor Control Commission as of June 19, 2011;

   D.     Neither the Plaintiffs nor their assign(s) or successor(s) in interest shall permit "adult," sexually oriented, or "topless" live entertainment on the 4th floor, or in the basement, of the building located upon the Premises; and

   E.     Neither the Plaintiffs nor their assign(s) or successor(s) in interest shall increase, or seek to increase, the "Occupant Load" (as defined by Section 19-1-22(2-1.110) of the Detroit City Code ("National Fire Protection Association Fire Prevention Code and Amendment Thereof")) of the building located upon the Premises above the load approved as of June 19, 2011.

   Within thirty (30) days after the payment of the consideration as set forth in paragraph 2 in this Consent Decree, Plaintiffs shall execute, and record in the Wayne County Register of Deeds Office, a restrictive covenant running with the land memorializing the provisions and requirements of subparagraphs 7(A) – (E) above.

8.     All parties waive their right to appeal all prior rulings entered in this action by this Court and by the Sixth Circuit United States Court of Appeals on appeal.

4

9.      This Consent Decree becomes binding and effective upon being entered by the Court. The Court retains jurisdiction to enforce the terms and provisions of this Consent Decree.

10.     This Consent Decree shall constitute a final order and concludes this litigation, with the exception of Plaintiffs' requests for costs and attorney fees pursuant to 42 U.S.C. §1988.


Date:  August 23, 2011

                                        s/Julian Abele Cook, Jr.
                                        JULIAN ABELE COOK, JR.
                                        UNITED STATES DISTRICT JUDGE


---

Stipulated as to form and content:


*S/Bradley J. Shafer*                   *S/ Eric B. Gaabo (P39213)*
S/Bradley J. Shafer (P36604)            gaabe@detroitmi.gov
Attorneys for Plaintiffs                Attorneys for Defendant
3800 Capital City Boulevard, Suite 2    1650 First National Building
Lansing, Michigan 48906                 Detroit, MI 48226
(517) 886-6560                          (313) 237-3057


5

# 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V.-GREEKTOWN, ET AL.,

              Plaintiffs,

v.

CITY OF DETROIT,

              Defendant.

_____/

No. 06-11282

District Judge Julian Abele Cook, Jr.

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

This is a First Amendment[1] case brought against the City of Detroit ("the City") by Plaintiffs H.D.V.-Greektown, LLC, 415 East Congress, LLC, and K&P, Inc. ("Plaintiffs"). The initial complaint was filed on March 28, 2006. Plaintiffs filed three motions for summary judgment, each of which was granted in part, and an appeal to the Sixth Circuit, which reversed in part one of the partial denials of summary judgment. Ultimately, the case settled, culminating in a consent decree entered on August 23, 2011 [Doc. #145]. Under the consent decree, and in satisfaction of Plaintiffs' damage claims, the City agreed to pay Plaintiffs $2,950,00.00. The parties stipulated that the Court would decide the issue of attorney fees under 42 U.S.C. § 1988, and that for purposes of an attorney fee motion, the Plaintiffs would be considered "prevailing parties." However, the City did not waive its right to challenge Plaintiffs' request for attorney fees and costs on any other ground. *Id.*

Before the Court at this time is Plaintiffs' Motion for Attorney Fees and Costs

---

[1] The second amended complaint [Doc. #84] also alleged Fourth, Fifth and Ninth Amendment and violations, all brought under 42 U.S.C. § 1983. At its heart, however, this is a First Amendment case.

-1-

[Doc. #148], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded attorney fees in the amount of $372,118.19 and costs in the amount of $13,282.93, for a total award of **$385,401.12**.

## I.   LEGAL PRINCIPLES

42 U.S.C. § 1988 provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of section[] 1983...of this title,...the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." Attorney fees awarded under this section must be reasonable. As the Supreme Court noted in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), "[t]he most useful starting point for determining the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." (Emphasis added). In *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987), the Sixth Circuit, citing *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

In *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Supreme Court held that the lodestar amount is presumptively reasonable, and that an upward enhancement from that amount for "superior performance" is impermissible, absent "rare and exceptional" circumstances. *Id.* at 1674. In so holding, *Perdue* referenced the oft-stated principle that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Id.* at 1673, quoting *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 566 (1986) (internal quotation marks

-2-

omitted). Thus, once the lodestar is established, a court will generally not depart upward or downward based on factors such as the complexity of the case, the experience, reputation or ability of counsel, the amount involved or the results obtained. However, those factors are most certainly relevant in arriving at the lodestar figure in the first instance, particularly in determining whether the hours claimed were *reasonably* expended within the overall context of the litigation. *See Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial [lodestar] fee calculation hours that were not 'reasonably expended'")[2]; *Aventis Cropscience, N.V. v. Pioneer Hi-Bred International, Inc.*, 2010 WL 2306677, *5, fn. 7 (M.D.N.C. 2010) (pursuant to *Perdue*, court "consider[s] the relevant *Johnson* factors only within the context of determining a reasonable number of hours and reasonable rate for the purposes of the lodestar calculation").

In the final analysis, "[t]he primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir.1999). *See also Coulter v. State of Tennessee, supra*, 805 F.2d at 149 ("Legislative history speaks of 'fees which are adequate to attract competent counsel, but which do not produce windfalls,'..and cautions against allowing the statute to be used as a

---

[2] As to specific inquiries that would be included in the initial lodestar calculation, *Hensely* referenced *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 -720 (5th Cir. 1974), which listed the following 12 factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

-3-

'relief fund for lawyers'")(internal citations to Congressional Record omitted). Or, as the Fifth Circuit put it in *Johnson*, 488 F.2d at 720, "[C]ourts must remember that they do not have a mandate...to make the prevailing counsel rich." The party seeking an award of fees bears the burden of showing that the request is reasonable. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir. 1990).

Finally, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438.

## II.   DISCUSSION

The City does not contest that for purposes of § 1988, the Plaintiffs are "prevailing parties," and therefore entitled to attorney fees. The question before this Court is whether the fees and costs requested–$1,532,640.61–are "reasonable."[3] We begin with the lodestar: a reasonable hourly rate times a reasonable number of hours.

### A.   Hourly Rate

In determining a reasonable hourly rate, "courts should look to the hourly rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fuhr v. School Dist. of Hazel Park*, 364 F.3d 753, 762 (6th cir. 2004).  The court retains broad discretion to determine what constitutes a reasonable hourly rate. *Id.; Wells v. New Cherokee Corp.*, 58 F.3d 233, 239 (6th Cir. 1995).

Lead counsel Bradley J. Shafer has billed at $350.00 per hour. Co-counsel Andrea

---

[3] Plaintiffs' initial fee petition [Doc. #148] requested $1,507,928.47 in fees and costs [Doc. #148, at 30]. Plaintiffs requested additional costs of $1,192.80 in their Reply Brief [Doc. #155], and filed a supplemental request [Doc. #157, at 2] for $21,980.00 in additional attorney fees and $1,539.34 in additional costs, bringing the total requested to $1,532,640.61.

-4-

E. Pritzlaff bills at $250.00 per hour, and Matthew J. Hoffer at $200.00 per hour. Mr.
Shafer is an experienced constitutional litigator specializing in First Amendment cases.
According to the State Bar of Michigan's most recent (2010) Economics of Law Practice
Survey, civil rights lawyers in the 75th percentile of earnings bill at a rate of $325 per
hour, and those at the 95th percentile at $450 per hour. Mr. Shafer would clearly fall
between the 75th and 95th percentiles, and his requested rate of $350.00 per hour is
reasonable for a civil rights attorney with his skill and experience. Likewise, the rates of
$250.00 and $200.00 per hour are reasonable for his associates. Therefore, I recommend
that the Court approve the requested hourly rates.

## B.    Hours Expended

Certain of the *Hensley/Johnson* factors, *see* fn. 2, *supra*, auger in favor of a
substantial award of attorney fees. As discussed above, the hourly rate claimed by
Plaintiffs' lawyers is in line with customary rates for attorneys of comparable skill and
experience. While I am not convinced that First Amendment cases are intrinsically more
difficult than any other complex litigation–be it criminal, antitrust, intellectual property,
or tax law–this case clearly called for a certain level of skill, and the proceedings were
lengthy.[4] Importantly, the Plaintiffs' attorneys achieved substantial results for their
clients, in terms of both injunctive and monetary relief. While the City points out that
Plaintiffs did not prevail on all of their claims, the more important consideration is the

---

[4] However, I reject Plaintiffs' contention that this case would be considered
"undesirable," and thus rejected by many lawyers, simply because it involves the adult
entertainment industry. The Eastern District of Michigan encompasses a cosmopolitan
urban area, and there is no significant social opprobrium that attaches to a lawyer who
handles these types of cases. In fact, criminal lawyers in this district routinely handle
cases involving murder, rape, drugs, multi-million dollar fraud schemes, and all manner
of deviant behavior, and the competition for those cases is intense. Moreover, there are
few, if any, lawyers in this district who would deem a case worth $3,000,000
"undesirable."

-5-

scope of the results that were obtained. In this regard, *Hensley v. Eckerhart,* 461 U.S. at 435, stated:

> "In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters." (citation and footnote omitted).

Similarly, in *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1169 (6th Cir.1996), the Sixth Circuit held:

> "However, a court should not reduce attorney fees based on a simple ratio of successful claims to claims raised. When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." (Internal citations omitted).

*See also Deja Vu v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 421 F.3d 417, 423 (6th Cir. 2005) ("[W]e have repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.").

Yet, the fact that Plaintiffs have great lawyers who achieved great results does not give them *carte blanche* to ask for the moon and the stars, nor does it relieve the Court of its ultimate responsibility to independently assure that the fee is reasonable.

In this case, the total hours claimed to have been expended is not reasonable, and must be reduced in computing the lodestar. To begin with, there are certain claimed hours for which no compensation should be given, and that can therefore be completely removed from the lodestar calculation. The remaining time spent on the case was excessive, and will be reduced accordingly.

-6-

### 1.    Claims for Which no Fees Should be Granted

Fees Related to the 2003 Lawsuit

Plaintiffs filed a previous lawsuit against the City in 2003. *See H.D.V.-Greektown, L.L.C., et al. v. City of Detroit*, E.D. Mich. No. 03-74887. That case was resolved when the parties stipulated to and were granted an order granting a declaratory judgment invalidating the so-called "Condition 18" of Plaintiff K&P, Inc.'s land use grant (a condition precedent to an Adult Cabaret Use entertainment license). Condition 18 restricted entertainment to "that which would be considered similar to or comparable to a 'male dance review on ladies night' and not include the type of entertainment that would be considered similar to or comparable to a 'topless' or 'go-go bar.'" *See* Order Granting Declaratory Judgment as to Condition 18, and Dismissing all Other Remaining Claims Without Prejudice," Plaintiff's Exhibit G, Doc. #148. The Order was entered by Judge Hood on December 31, 2003. The last line of the Order reads, "By stipulation of the parties, all claims in this action are dismissed without prejudice and without costs or an award of attorneys fees to any party."

In requesting fees for the 2003 case, Plaintiffs assert that the earlier case was a "related proceeding," and in fact, that the present case is the *same* case, given that the 2003 claims were dismissed without prejudice. Plaintiffs argue in effect that since they made a claim for attorney fees and costs in the 2003 case, and since "all claims" in that action were dismissed without prejudice, they are entitled to ask for 2003 fees in this 2006 case. However, Plaintiffs misunderstand both the plain language and the intent of the 2003 Order and Stipulation. It is clear that the section of the Order stating that "all claims in this action are dismissed without prejudice" refers to the substantive claims, not to the claim for attorney fees. Otherwise, the language immediate following that

-7-

phrase–"and without costs or an award of attorneys fees to any party"–would be unnecessary surplusage. Whatever liability the City might have for subsequent proceedings, the 2003 stipulated order forecloses the Plaintiffs' request for attorney fees in that earlier litigation.

### Criminal Proceedings Involving Monica Conyers and Sam Riddle

Former City Council member Monica Conyers and her assistant, Sam Riddle, were indicted by a grand jury in this district with regard to a wide-ranging bribery scheme.[5] In the course of the government's investigation, Plaintiffs' client, Joe Hall, received a grand jury subpoena. Plaintiffs seek $16,200.00 in attorney fees related to the criminal proceedings. Counsel's billing records indicate that he reviewed and discussed with his client the grand jury subpoena; spoke telephonically with the Assistant United States Attorney; attended the grand jury proceedings[6]; met with reporters and reviewed news articles and television reports (!); and met with the Assistant United States Attorney.

The criminal case was a separate proceeding that involved separate parties. The government was represented by the United States Attorney's Office. While Monica Conyers and Sam Riddle may have been rogue City functionaries, the City itself was not a party to the criminal case. The relief sought and obtained in the present case did not depend on the guilt or innocence of Conyers and Riddle in the criminal case. There were no First Amendment issues in the criminal case. While Joe Hall may have been subpoenaed as a federal grand jury witness, there is no basis for the City to pay his attorney fees for that proceeding. Nor am I inclined to recommend that the City pay

---

[5] The indictment is appended to the City's Response as Exhibit I.

[6] Of course, counsel would not have been present in the grand jury room when Mr. Hall gave his testimony, but would have been available for consultation outside in the hallway.

-8-

Plaintiffs' counsel for watching news reports or talking to reporters.

## 2.   Reasonableness of Remaining Attorney Time

Three general observations are in order before delving into the specifics of Plaintiffs' fee request.  First, the parties seem to have forgotten the well-established principle that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 438. Plaintiffs' fee petition consumes 45 pages (37 pages excluding table of authorities, etc.), with 225 pages of exhibits. Mr. Shafer's affidavit alone (Plaintiffs' Exhibit B) weighs in at 37 paragraphs in 22 pages. The City's response consumes 55 pages (48 pages excluding table of authorities, etc.), with 170 pages of exhibits. Plaintiffs' Reply Brief [Doc. #155] is 43 pages long, with 48 footnotes and 94 pages of exhibits, including Mr. Shafer's 9-page, 22-paragraph "supplemental affidavit." Plaintiffs followed this with a "supplement" to their motion for fees and costs, including Mr. Shafer's "second supplemental affidavit" [Doc. #157]. Not to be outdone, counsel for the City filed an 8-page, 19-paragraph responsive affidavit [Doc. #158]. It is difficult to characterize these proceedings as anything other than "second major litigation."

Secondly, I have in other cases cited *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438, 440 (S.D.N.Y.1987), for the proposition that "[w]hile parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist these extravagances upon their unsuccessful adversaries." *See Shields v. Merchants and Medical Credit Corp., Inc.,* 2011 WL 3566485, *6 (E.D.Mich. 2011). Plaintiffs, on the other hand, cite *Missouri v. Jenkins*, 491 U.S. 274 (1989) and Justice Rehnquist's dissenting opinion in *City of Riverside v. Rivera,* 477 U.S. 561(1986), for the proposition that *King World Productions*, and by implication my opinion in *Shields*, are no longer good law. They quote Justice

-9-

Rehnquist's statement in his *Rivera* dissent that the reasonableness of a fee is determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys."

Plaintiffs misread both *Jenkins* and Justice Rehnquist's statement in *Rivera*. The question in *Jenkins* was whether a fee award under § 1988 "should...compensate the work of paralegals and law clerks by applying the market rate for their work[.]". The decision focused on the hourly *rate*, not on the reasonableness of the number of hours expended. Moreover, in *Rivera*, Justice Rehnquist was critical of what he termed "the extraordinary number of hours put in by respondents' attorneys." *Rivera*, 477 U.S. at 591. He stressed the principle set forth in *Hensley* that excessive hours that would not properly be billed to a client are not properly charged to the losing party, and would have rejected the plaintiffs' fee request, stating:

> "I think that this analysis, which appears nowhere in the plurality's opinion, leads inexorably to the conclusion that the District Court's fee award of $245,456.25, based on a prevailing hourly rate of $125 multiplied by the number of hours which respondents' attorneys claim to have spent on the case, is not a "reasonable" attorney's fee under § 1988." *Id.* at 592.

While an attorney is entitled to be compensated at a prevailing market hourly rate–the rate that an affluent client might be charged–nothing in *Jenkins* or in Justice Rehnquist's dissenting opinion supports the proposition that a losing party must be on the hook for each and every extravagance that a millionaire client might be willing to finance, no matter how excessive or tangentially related to the litigation or to the results obtained. It is unlikely that Justice Rehnquist would have awarded § 1988 fees for counsel to watch the evening news. Most attorneys will claim that they used "billing judgment," but under

-10-

*Hensley* and its progeny, it is the duty of the Court, not counsel, to determine whether or not the number of hours expended was reasonable. In exercising its discretion, a court should be mindful of the Congressional mandate that fee awards under § 1988 be "adequate to attract competent counsel, but ... not produce windfalls to attorneys." *Rivera*, 477 U.S. at 580, quoting Senate Report, at 6, U.S. Code Cong. & Admin. News 1976, p. 5913. *King World Productions* and *Shields* are correct statements of the law.

My third observation is that in trimming an excessive number of hours from a lengthy fee petition, a court is not required to undertake a line-by-line analysis, or as I put it in *Saieg v. City of Dearborn*, 2012 WL 787261, *5 (E.D. Mich. 2012), "to dissect [a] fee petition with the gimlet eye of a tax accountant." Where, as here, there is a voluminous fee application or time sheet[7], the court "is not required to set forth an hour-by-hour analysis of the fee request" in reducing the fees. *Jacobs v. Mancuso*, 825 F.2d 559, 562 (1st Cir.1987). *See also In re 'Agent Orange' Product Liability Litigation*, 818 F.2d 226, 237-38 (2d Cir.1987) ("no item-by-item accounting of the hours disallowed is necessary or desirable"); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 657-58 (7th Cir.1985). Rather, "the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.1992)(internal quotation marks omitted). *See also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (holding that "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'") (internal citations omitted); *Mares v.*

---

[7] Plaintiffs' time-sheets for fees come in at a whopping 113 pages. *Plaintiffs' Exhibit B-1.*

*Credit Bureau of Raton*, 801 F.2d 1197, 1202 -1204 (10th Cir. 1986) (affirming a reduction in claimed fees by 77%, the court stated, "There is no requirement, either in this court or elsewhere, that district courts identify and justify each disallowed hour.").

A number of Plaintiffs' claims are indicative of the excessiveness of their fee petition. For example, as discussed above, they seek compensation for the 2003 proceedings, which were resolved without costs to either party, and for the grand jury proceedings. They also seek fees related to communications with the media. The inclusion of billings that are clearly excessive tends to cast doubt on the entire petition.

Plaintiffs also seek reimbursement for all of the time spent in 2004 (over two years before this suit was filed) in administrative hearings before the Detroit Board of Zoning Appeals ("BZA"). The City had issued tickets to the Plaintiff K&P, Inc.  for allegedly intensifying their nonconforming use by increasing the number of dancers and the number of days on which the entertainment was provided. While Plaintiff might be entitled to fees related to enforcement of a consent judgment, the question of  Condition 18, which had been resolved in the 2003 consent judgment, was a relatively minor part of the BZA proceedings, and the bulk of the 2004 administrative proceedings were not "reasonably expended" on the present lawsuit, which was filed in 2006. To ask for all fees related to the BZA proceedings is clearly excessive.

Plaintiffs seek fees for time related to the "Jane Roe" Plaintiffs. However, The "Roe" Plaintiffs, all dancers, were voluntarily dismissed by stipulation on August 9, 2011. Thus, these Plaintiffs received no relief, including no monetary relief. While Plaintiffs are correct that the remaining Plaintiffs had standing to assert declaratory relief claims on behalf of the dancers, there was, or should have been little additional work attributable to the Roe Plaintiffs, particularly with regard to researching and formulating the legal issues

-12-

that would have been applicable to the remaining Plaintiffs.

In his affidavit, counsel for Plaintiff holds himself out as one of the most experienced and capable First Amendment attorneys in the nation. I do not question counsel's skill. However, this level of experience seems inconsistent with the astonishingly large number of hours claimed for researching the law and preparing pleadings. A lawyer arguably charges a higher hourly rate based on his or her greater level of experience. Of course, an attorney could conceivably spend an unlimited amount of time on research and writing, but for purposes of § 1988, this Court must make a determination of what is a *reasonable* amount of time, given the attorney's professed level of skill. While I do not suggest that counsel did not in fact expend the time that he claims, the number of hours claimed is excessive.

"Determining reasonable attorney fees is not an exact science." *O'Connor v. Trans Union*, LLC, 2008 WL 4910670, *6 (E.D.Mich. 2008). In adjusting fee petitions in various cases, courts have reduced the total fees or hours by amounts ranging from 40%, *Id.*, to 77%. *Mares v. Credit Bureau of Raton*, *supra*. Although I find that the fees requested are excessive, I also recognize that the level of counsel's representation in this hard-fought case was excellent, and that he clearly expended much effort in obtaining excellent results for his clients. He and his associates will be fairly compensated for their efforts, but the Court does not have an obligation to make them millionaires. Deducting the amount claimed for the 2003 lawsuit, and reserving discussion of costs, expert fees and the fee enhancement request for the next section, Plaintiffs' request for attorney fees comes in at $1,049,994.50 ($1,044,994.50 for Shafer & Associates and $5,000.00 for Corbett Edge O'Meara). This includes approximately $56,795.00 for preparation of the

-13-

fee petition.[8] The fee petition claims will be discussed separately below, so the total amount claimed exclusive of the fee petition is $903,199.50.  It is appropriate for the Court to exercise its discretion in reducing this amount by 60%, awarding Plaintiffs attorney fees (exclusive of time spent on the fee petition) in the amount of $361,279.80.

### Fee Enhancement

Plaintiffs seeks a ten percent fee enhancement, over and above the lodestar amount. Under *Perdue*, such enhancement is impermissible absent "rare and exceptional circumstances." Plaintiffs bear the burden of supporting a request for enhancement with specific evidence. *Perdue*, 130 S.Ct. at 1673.

Here, Plaintiffs' counsel argues that the City's obstructionist conduct necessitates a fee enhancement. However, the time that counsel claims was required to litigate this case–which was excessive to begin with–is already accounted for in arriving at the lodestar figure.

Counsel also argues that because Sam Riddle allegedly solicited his clients' representative for a bribe, he was required to attend debriefings with the FBI and to attend criminal trial proceedings. Thus, argues counsel, he was "then not only representing an unpopular plaintiff with an unpopular cause, but was involved in a seedy subject of local, state, and national media attention." *Plaintiff's Brief*, at 29.

Welcome to the practice of law. Not to mention that most lawyers–and especially those who, like present counsel, have a national practice–consider media attention beneficial, not detrimental. In the words of Brendan Behan, "There's no such thing as bad publicity, except your own obituary."  In any event, for the reasons discussed above, the

---

[8] A conservative approximation is necessary because certain "block billed" entries include both work on the fee petition and work on finalizing the settlement.

criminal proceedings were a separate matter and are not compensable under § 1988.

Finally, counsel argues that an enhancement is justified because his "requested rates are low as compared to other experienced First Amendment attorneys." *Plaintiffs' Brief*, at 29. However, as discussed above, counsel's requested rate of $350 per hour falls squarely between the 75th and 95th percentile of fees charged by civil rights lawyers with comparable experience, according to the State Bar's 2010 Economics of Law Practice Survey.

Plaintiffs have not met their burden of justifying a fee enhancement.

### Fee Petition Fees

Plaintiffs originally sought approximately $56,795 in attorney fees related to preparing the fee petition. In a supplemental brief [Doc. #157], they sought an additional $21,980 "for attorney fees incurred in preparing Plaintiffs' reply memorandum." The total amount of attorney fees requested for the fee petition proceedings is $78,775.00.

Plaintiffs are entitled to compensation for attorney time related to preparing and litigating the question of attorney fees. In *Coulter v. State of Tennessee, supra*, 805 F.2d at 151, the Sixth Circuit held that the hours expended in preparing a fee petition should not exceed 3% of the total award for attorney hours in the underlying case where a settlement is attained.[9] Based on Plaintiffs' original request, this would give them fees related to the fee petition in the amount of $33,379.82, less than half of what they now seek. Based on my recommended award of $361,279.80, the 3% figure is $10,838.39.

I therefore recommend that total attorney fees, including preparation of the fee

---

[9]In *Disabled Patriots of America v. Romulus Nights, Inc.*, 2005 WL 3132206 (E.D. Mich. 2005), the Court added costs to attorneys' fees in calculating the 3% amount. This equation is broader than that sanctioned in *Coulter*, where the Sixth Circuit addressed only the calculation of attorney time. Under *Coulter*, the 3% figure should be based only on the total amount of attorneys' fees awarded in the underlying case, excluding costs.

petition, be awarded in the amount of **$372,118.19**.

### 3.   Costs

Plaintiffs seek costs and other fees in three categories: (1) $1,616.58 in costs related to the 2003 lawsuit; (2) $33,207.34 for costs in the present action[10]; and (3) $164,921.49 in expert fees.

For the reasons discussed above, Plaintiffs are entitled to neither attorney fees nor costs for the 2003 lawsuit.

As for costs associated with the present case, Defendant has challenged billings for WestLaw research, travel, copying and UPS overnight delivery charges. The total requested for these costs is $19,407.57.[11]  Citing *Gratz v. Bollinger*, 353 F.Supp.2d 929, 943-44 (E.D. Mich. 2005), Defendant also argues that Plaintiffs' request for travel costs in the amount of $22,373.70 be reduced by 50%.

An attorney's reasonable out-of-pocket expenses are recoverable under § 1988. *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 639 (6th Cir.1979) (district court has the authority to award "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client ... reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable."). As with attorney fees, the key concept is reasonableness, and the award of costs is likewise addressed to the Court's discretion.

Plaintiff has computed copies at 20 cents per page. Apart from whether the precise

---

[10] Plaintiffs requested $30,475.85 in their initial petition, and added an additional $1,192.80 in their Reply [Doc. #155] and $1,539.34 in their supplemental brief [Doc. #157], for a total of $33,207.34.

[11] This figure includes $2,145.29 in WestLaw charges, $1,719.97 in UPS charges, and $15,542 in copying costs.

-16-

number of pages copied is reasonable, it is not reasonable to make the Defendant pay the highest possible rate. *See, e.g., Havard v. Wayne County,* 2012 WL 3583324, *4 (E.D.Mich.,2012)(stating that party did not give the Court a basis to determine the reasonableness of pages or costs, reduces copying rate from 35 cents per page to 10 cents per page); *Mary–Jo Hyldahl v. AT & T,* 2009 WL 2567197, * 4 (E.D.Mich. 2009) (reduction from 25 cents to 10 cents).

In *Gratz,* 353 F.Supp.2d at 943, the Court observed that "[s]ome courts completely disallow compensation for an attorney's travel time," and reduced the claimed travel hours by 50%, noting that the plaintiffs were represented by two out-of-state law firms.

In *Farley v. Country Coach, Inc.* 2008 WL 905215, *5 -6 (E.D.Mich. 2008), the Court reduced the plaintiff's claim for computer-assisted research, noting that much was either unnecessary or duplicative.

As with attorney fees, the Court is not required to do a line-by-line analysis in order to trim the fat from Plaintiffs' request for costs, especially because it is so voluminous. However, as reflected in *Havard, Gratz* and *Farley,* the Court clearly has discretion to reduce the amount. I have recommended a reduction in the request for attorney fees by 60%, and a commensurate reduction in the request for costs is appropriate. I therefore recommend that Plaintiff be awarded costs in the amount of $13,282.93.

Finally, the Plaintiffs request $164,921.49 in expert witness fees. However, expert witness fees as provided in § 1988 are not recoverable in a case brought under 42 U.S.C. § 1983. In *West Virginia Univ. Hosp., Inc. v. Casey,* 499 U.S. 83 (1991), the Supreme Court held that § 1988 does not authorize the shifting of expert witness fees to the losing party. After *Casey,* Congress amended § 1988 to allow the court, "in its discretion," to

-17-

award expert witness fees "in any action or proceeding to enforce a provision of section 1981 or 1981a of this title." 42 USC § 1988(c). While § 1988(b) provides for attorney fees and costs in a § 1983 action, § 1988(c), dealing with expert fees, omits any reference to § 1983.

Expert witness fees are not recoverable absent specific statutory authority. *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 741 (6th Cir. 2007), citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 584 U.S. 291 (2006). Thus, courts have consistently held that because the plain language of § 1988(c) limits expert fees to actions brought under §§ 1981 or 1981a, such fees are not recoverable in a civil rights case brought under § 1983. *See Davis v. City of New York*,  2011 WL 4946243, *7 (S.D.N.Y. 2011)("Pursuant to section 1988, courts only have the discretion to tax expert fees as costs in actions brought under 42 U.S.C. §§ 1981 and 1981a, not section 1983"); *Tatum v. City of New York,* 2010 WL 334975, at *13 (S.D.N.Y. Jan. 28, 2010) ("Finally, the law is clear that counsel may not recover under Section 1988 for expert fees paid in connection with a Section 1983 action.") (citing *Wilder v. Bernstein*, 975 F.Supp. 276, 287 (S.D.N.Y.1997)); *Hirsch v. Lecuona,* 2008 WL 4457690, at *2 (D.Neb. 2008) (declining to award expert witness fees as part of attorneys' fee award in § 1983 case because 42 U.S.C. § 1988 limits recovery of expert witness fees to actions to enforce 42 U.S.C. §§ 1981 or 1981a "and does not include action under § 1983 for vindication of Constitutional rights");  *Quesnoy v. Oregon*, 2012 WL 1155832, *10 (D.Or. 2012)(§1988(c) "does not include claims brought under § 1983")(citing *Ruff v. County of Kings,* 700 F Supp2d 1225, 1243 (ED Cal 2010); *Agster v. Maricopa County,* 486 F Supp2d 1005, 1019 (D Ariz 2007)).

Plaintiffs are therefore not entitled to expert witness fees.

### 4. Reduction Based on City's Financial Condition

The City seeks a reduction of 15% in the fee award based on its precarious financial condition. As we all know, the City of Detroit, now under the direction of an Emergency Manager, is in the throes of an unprecedented financial crisis.[12] City employees, unions, pensioners and creditors will no doubt be required to make painful concessions. The citizens and taxpayers of Detroit, as well as its businesses (and this includes Plaintiffs) will suffer a diminution of already scarce City services. No doubt the greater good would be served by granting the City's request for a reduction in attorney fees. Nevertheless, absent a clearer directive from the Sixth Circuit or the Supreme Court, there is no legal basis to do so.

The City cites *Wolfe v. Perry*, 412 F.3d 707 (6th Cir. 2005) in support of its request. However, *Wolfe* involved a fee awarded against a non-prevailing *plaintiff*. The purpose of fee awards in such cases is to deter frivolous lawsuits, and "prevailing defendants are entitled to attorneys fees much less frequently" than prevailing plaintiffs . *Id.* at 720. In *Price v. Pelka* 690 F.2d 98, 100 (6th Cir. 1982), the Sixth Circuit held that "[s]ection 1988...allows a prevailing plaintiff to recover without consideration of [the defendant's] financial condition." This approach is also consistent with *Perdue, supra*, where the Supreme Court held that the lodestar calculation normally includes all of the factors relevant to a fee award, and *Hensley, supra*, which held that a prevailing plaintiff is entitled to a "fully compensatory fee." *Id.*, 461 U.S. at 435; *Deja Vu, supra*, 421 F.3d at 423. Unfortunately, the City is not entitled to a reduction in the fee award based on its precarious financial condition.

---

[12] As reported in the New York Times of May 12, 2013, Emergency Manager Kevyn Orr issued a report describing Detroit's long term obligations of at least $15 billion, unsustainable cash flow shortages, and miserably low credit ratings.

-19-

### III.   CONCLUSION

For these reasons, I recommend that Plaintiffs' Motion for Attorney Fees and Costs [Doc. #148] be GRANTED IN PART AND DENIED IN PART, and that Plaintiffs be awarded attorney fees in the amount of $372,118.19 and costs in the amount of $13,282.93, for a total award of **$385,401.12**.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 23, 2013            s/R. Steven Whalen_____
                               R. STEVEN WHALEN
                               UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on
May 23, 2013 electronically and/or by U.S. mail.

s/Michael Williams
Relief Case Manager for the Honorable
R. Steven Whalen

-21-

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H.D.V. – GREEKTOWN, ET AL.,

        Plaintiffs,

v.

CITY OF DETROIT,

        Defendant.

No. 06-11282

District Judge Julian Abele Cook, Jr.

Magistrate Judge R. Steven Whalen

_____ /

**BRADLEY J. SHAFER (P36604)**
**MATTHEW J. HOFFER (P70495)**
Shafer & Associates, P.C.
Attorneys for Plaintiff
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906-2110
(517) 886-6560

**CORBETT E. O'MEARA, MI (P-54716)**
O'Meara & O'Meara, PLLC
Co-Counsel for Plaintiffs
93 Kercheval
Grosse Pointe Farms, MI 48236
(313) 882-7450

**ERIC B. GAABO (P-39213)**
**JAMES D. NOSEDA (P-52563)**
Attorneys for Defendant
City of Detroit Law Department
660 Woodward Avenue,
Suite 1650
Detroit, Michigan 48226
(313) 237-3057

_____ /

## PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION (Dkt. 162)

## STATEMENT OF ISSUES PRESENTED

1. Whether the Report and Recommendation (Dkt. 162:   The "R&R") errs by recommending a 60% across-the-board reduction in attorney hours incurred?

2. Whether the R&R errs in recommending a 60% across-the-board reduction in out-of-pocket costs?

3. Whether the R&R errs in recommending that no award of attorney fees or costs should be made with regard to the "Initial Action"; that being Case No. 03-74887, with the instant action being a re-filing of that matter?

4. Whether the R&R errs in concluding that hours expended for work related to the "Jane Roe Plaintiffs" and/the Detroit Board of Zoning Appeals proceedings not be compensated, or that those matters should serve as a basis for the 60% across-the-board recommended reduction?

5. Whether the R&R errs in not awarding Plaintiffs' counsel an enhancement to the fee award?

6. Whether the R&R errs in limiting, pursuant to **Coulter v. Tennessee**, 805 F.2d 146 (6th Cir. 1986), the fees related to Plaintiffs' attorney fee and costs petition to 3% of the fees that the Magistrate recommend be awarded in the main case?

i

## CONTROLLING OF MOST APPROPRIATE AUTHORITY

For Issue/Objection 1:  **Hensley v. Eckerhart**, 461 U.S. 424 (1983); **Adcock-Ladd v. Secretary of Treasury**, 227 F.3d 343 (6th Cir. 2000); and **Missouri v. Jenkins**, 491 U.S. 274 (1989).

For Issue/Objection 2: **Hensley v. Eckerhart**, 461 U.S. 424 (1983); **Adcock-Ladd v. Secretary of Treasury**, 227 F.3d 343 (6th Cir. 2000); and **Missouri v. Jenkins**, 491 U.S. 274 (1989).

For Issue/Objection 3: **Woolridge v. Marlene Industries Corp.**, 89 F.2d 1169 (6th Cir. 1990); **Northcross v. Bd. of Ed. of Memphis City Schools**, 611 F.2d 624 (6th Cir. 1979); **Deja Vu of Nashville, Inc., v. Metro Govt. of Nashville in Davidson County**, 421 F.3d 417 (6th Cir.) *cert. denied*, 547 U.S. 1205 (2005).

For Issue/Objection 4:  **Pennsylvania v. Delaware Valley Citizens Council for Clean Air**, 478 U.S. 546 (1986); **G & G Sprinkler v. Bradshaw**, 156 F.3d 893 (9th Cir. 1998) *rev'd on other grounds sub nom* **Lujan v. G & G Sprinklers, Inc.**, 532 U.S. 189 (2001).

For Issue/Objection 5:  **Perdue v. Kenny A**, 559 U.S. 542 (2010); **Pucci v. Somers**, 834 F.Supp.2d 690 (E.D. Mich. 2011) (Lawson, J.).

For Issue/Objection 6: **Northeast Ohio Coalition for the Homeless v. Secretary of the State of Ohio**, 695 F.3d 563 (6th Cir. 2012); **Lamar Advertising Co. v. Charter Township of Van Buren**, 2006 WL 1133309 (6th Cir., April 27, 2006).

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................ 1

**OBJECTION NO. 1**
**A 60% "ACROSS-THE-BOARD" REDUCTION IN FEES IS** ............................ 5

**OBJECTION NO. 2**
**COSTS SHOULD NOT BE CUT BY 60%** ..................................................... 10

**OBJECTION NO. 3**
**WORK RELATED TO THE "JANE ROE PLAINTIFFS" IS COMPENSABLE** ............. 12

**OBJECTION NO. 4**
**PLAINTIFFS SHOULD BE FULLY COMPENSATED FOR**
**THE RELATED ANCILLARY PROCEEDINGS** ................................................ 15

    A.  The 2003 "Initial Action" ............................................................. 16
    B.  The BZA Proceedings .................................................................. 18
    C.  The Conyers/Riddle Criminal Proceedings ................................... 19

**OBJECTION NO. 5**
**PLAINTIFFS ARE ENTITLED TO AN ENHANCEMENT** .............................. 20

**OBJECTION NO. 6**
**THE FEES RELATED TO THE ATTORNEY FEE**
**MOTION ARE NOT EXCESSIVE** ................................................................. 23

**CONCLUSION** ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

**Adcock-Ladd v. Secretary of Treasury,**
227 F.3d 343 (6th Cir. 2000) ................................................................ ii, 1, 4, 6

**Armstrong v. Davis,**
318 F.3d 965 (9th Cir. 2003) ......................................................................... 16

**Barachkov v. Davis,**
2013 WL 2149104 (E.D. Mich. May 16, 2013)............................... 7, 14, 20

**Beltran Rosas v. County of San Bernardino,**
260 F.Supp.2d 990 (C.D. Cal. 2003) ........................................................... 16

**Binta B v. Gordon,**
710 F.3d 608 (6th Cir. 2013) ......................................................................... 9

**Caban-Wheeler v. Elsea,**
71 F.3d 837 (11th Cir. 1996) ....................................................................... 10

**Clark v. City of Lakewood,**
259 F.3d 996 (6th Cir. 2001) ....................................................................... 13

**Communication Workers v. Ector County Hospital District,**
392 F.3d 733 (5th Cir. 2004) ......................................................................... 8

**Coulter v. Tennessee,**
805 F.2d 146 (6th Cir. 1986) ...................................................... i, 23, 24, 25

**Craik v. Minnesota State Univ. Bd.,**
738 F. 2d 348 (8th Cir. 1984) ..................................................................... 11

**Dallas v. Alcatel-Lucent USA, Inc.,**
2013 WL 2197624 (E.D. Mich. May 20, 2013), (Edmonds, J.) ..................... 1

**Deja Vu of Nashville, Inc. v. The Metro. Govt. of Nashville and Davidson County,**
421 F.3d 417, 423 (6th Cir.), *cert. denied*, 547 U.S. 1205 (2005).......................................... ii, 14

iv

**Dilaura v. Township of Ann Arbor,**
471 F.3d 666 (6th Cir. 2006) ............................................................... 8, 14

**Flournoy v. Marshall,**
842 F.2d 875 (6th Cir. 1998) ................................................................. 5

**Fharmacy Records v. Nassar,**
No. 10-1354, slip op. (6th Cir. 2012)..................................................... 5

**G & G Sprinkler v. Bradshaw,**
156 F.3d 893 (9th Cir. 1998) ............................................................ ii, 17

**Garza**
156 F.3d at 908 ..................................................................................... 17

**George v. GTE Directories Corp.,**
114 F. Supp.2d 1281 (M.D. Fla. 2000)................................................. 11

**Gilbrook v. City of Westminster,**
177 F.3d 839 (9th Cir.) ......................................................................... 16

**Glover v. Johnson,**
138 F.3d 229 (6th Cir. 1998) ................................................................ 21

**Green v. Administrators of Tulane Educational Fund,**
248 F.3d 642 (5th Cir. 2002) ............................................................. 9, 16

**HDV-Greektown, LLC v. City of Detroit,**
568 F.3d 609 (6th Cir. 2009) .................................................................. 2

**Henry v. Webermeier,**
738 F.2d 188 (7th Cir. 1984) ................................................................ 11

**Hensley v. Eckerhart,**
461 U.S. 424 (1983)..................................................................... passim

**Jordan v. City of Cleveland,**
464 F.3d 584 (6th Cir. 2006) ................................................................ 13

**King v. Gowdy,**

2008 WL 1820837 (E.D. Mich. Apr. 22, 2008)........................................................................ 12

**Knop v. Johnson,**
712 F.Supp. 741 (W.D. Mi. 1989) ...................................................................................... 7

**Lamar Advertising Co. v. Charter Township of Van Buren,**
2006 WL 1133309 (6th Cir., April 27, 2006) ................................................................. ii, 25

**Lambert v. Fulton County,**
151 F.Supp.2d 1364 (M.D. Ga. 2000) ................................................................................ 16

**Lefemine v. Wideman,**
_ U.S. _, 133 S.Ct. 9 (2012)............................................................................................... 3

**Lujan v. G & G Sprinklers, Inc.,**
532 U.S. 189 (2001)....................................................................................................... ii, 17

**Mares v. Credit Bureau of Raton,**
801 F.2d 1197 (10th Cir. 1986) ........................................................................................... 7

**Missouri v. Jenkins,**
491 U.S. 274 (1989)................................................................................................... ii, 5, 21

**Mitchell v. Natl. R.R. Passenger Corp.,**
217 F.R.D. 53 (D.D.C. 2003).............................................................................................. 8

**Neme v. Monusko,**
145 F.3d 1332 (6th Cir. 1998) ............................................................................................. 8

**New York Gaslight Club, Inc. v. Carey,**
447 U.S. 54 (1980)............................................................................................................. 16

**Northcross v. Bd. of Ed. of Memphis City Schools,**
611 F.2d 624 (6th Cir. 1979) ......................................................................................... ii, 14

**Northeast Ohio Coalition for the Homeless v. Secretary of the State of Ohio,**
695 F.3d 563 (6th Cir. 2012) ........................................................................................ ii, 25

**O'Connor v. Trans Union,**
LLC, 2008 WL 4910670 (E.D. Mich. Nov. 13, 2008) ........................................................ 7

**Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air,**
478 U.S. 546 (1986).................................................................................ii, 6, 15, 19

**People Who Care v. Rockford Bd. of Ed.,**
90 F.3d 1307 (7th Cir. 1996) ................................................................................ 6

**Perdue v. Kenny A,**
559 U.S. 542, 130 S.Ct. 1662 (2010)..............................................................ii, 9

**Pinkham v. Camex, Inc.,**
84 F.3d 292 (8th Cir. 1996) .............................................................................. 16

**Platinum Sports Ltd. v. City of Detroit,**
641 F.Supp. 2d 627 (E.D. Mich. 2009)............................................................. 15

**Pucci v. Somers,**
834 F.Supp.2d 690 (E.D. Mich. 2011)..........................................................ii, 23

**Reed v. Rhodes,**
179 F.3d 453 (6th Cir. 1999) ............................................................................ 23

**Riverside v. Rivera,**
477 U.S. 561 (1986).....................................................................................5, 21

**Rose Confections, Inc., v. Ambrosia Chocolate Co.,**
816 F.2d 381 (8th Cir. 1987) ............................................................................ 11

**Sykes v. Anderson,**
2008 WL 4776837 (E.D. Mich. Oct. 31, 2008) ................................................ 12

**Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.,**
2008 WL 728897 (ND. Ill. March 18, 2008) ...................................................... 8

**Walker v. City of Mesquite,**
313 F.3d 246 (5th Cir. 2002) .............................................................................. 9

**Webb v. Board of Ed. of Dyer County,**
471 U.S. 234 (1985)...................................................................................15, 16

**Woolridge v. Marlene Industries Corp.,**
89 F.2d 1169 (6th Cir. 1990) ................................................................................................ ii, 13

**Young v. American Mini-Theatres,**
427 U.S. 50 (1976) ................................................................................................................ 2

viii

Pursuant to Fed.R.Civ.P. 72 and LR. 72, Plaintiffs hereby respectfully submit the following objections to the Magistrate's Report and Recommendation (Dkt. 162: The "R&R") on Plaintiffs' Motion for Attorney Fees and Costs.

## INTRODUCTION

As acknowledged by Magistrate Whalen in his R&R, in determining a reasonable attorney fee "the district court should focus on the significance of the overall relief obtained by the Plaintiff in relation to the hours reasonably expended in the litigation." R&R, pp. 6-7 (ECF page numbers used herein), citing **Hensley v. Eckerhart**, 461 U.S. 424, 435 (1983). "[W]here plaintiff has obtained *excellent results,* his attorney should recover a *fully compensatory fee.*" **Adcock-Ladd v. Secretary of Treasury**, 227 F.3d 343, 349 (6th Cir. 2000) (emphasis added). The Magistrate's recommendation fails both standards.

The damage award of $2,950,000.00 (Consent Decree; Dkt. 145, ¶ 2) *alone* justified the fees sought by Plaintiffs, which were (*including* fees to prepare the fee petition) within 2.6% of a "standard" 1/3rd contingence fee of the damage award. *See, e.g.,* **Dallas v. Alcatel-Lucent USA, Inc.,** 2013 WL 2197624 at *12-13 (E.D. Mich. May 20, 2013) (Edmonds, J.) (1/3rd contingency actually *lower* than what counsel would have been awarded if billed hourly).

As this Court is, however, acutely aware, Plaintiffs obtained relief far beyond that of mere damages, and were actually granted the following *SEVEN* other forms of injunctive and declaratory relief by this Court and by the Sixth Circuit.

- In the "Initial Action" (Case No. 03-74887), Plaintiffs obtained a consent order precluding the City of Detroit (sometimes "City," or "Detroit") from enforcing what was known as Condition 18 of Plaintiff K&P, Inc.'s ("K&P") Zoning Grant, which allowed the presentation of male, *but not female,* live adult entertainment (the City initially using Condition 18 as a basis for not moving forward on the application to transfer K&P's liquor license and "Topless Activity Permit" ("TAP") to Plaintiff HDV-

1

Greektown, LLC ("HDV") (the "Transfer Application")).   Dkt. 148-15 (Order); and Dkt. 84, 2A Complaint (Compl."), ¶'s 2, 57, 85.

- After the *without*-prejudice dismissal of the Initial Action and the *continuing* refusal of the City to take up the Transfer Application, Plaintiffs *re-filed* their action whereby this Court, pursuant to Plaintiffs' *first* motion for partial summary judgment, declared Detroit's entire "adult business" zoning ordinance to be unconstitutional.[1]  Dkt. 48.

- When this Court declined to either *enjoin* Detroit's adult use zoning scheme or to declare K&P's "adult" use to then be a lawful *conforming* use under the Detroit Zoning Ordinance ("DZO")[2] pursuant to Plaintiffs' first motion for partial summary judgment, and after this Court denied Plaintiffs' motion to alter or amend that ruling, Plaintiffs repaired to the Sixth Circuit, which reversed this Court and ordered it to grant both such forms of additional relief.  **HDV-Greektown, LLC v. City of Detroit**, 568 F.3d 609 (6th Cir. 2009).

- After this Court entered a supposedly conforming order carrying out the Mandate of the Sixth Circuit, but ruling only that K&P's use was a lawful "*existing* use" (Dkt. 88, p. 2 (emphasis added)), Plaintiffs moved to amend the order, pursuant to which this Court entered an Amended Order finding K&P's adult use to indeed be a "lawful *conforming* use" under the DZO.[3]

- This Court, pursuant to Plaintiffs' *second* motion for partial summary judgment, ruled the actions of Detroit in denying the Plaintiffs' various sign applications to be unconstitutional.  Dkt. 70.  Moreover, in the Sixth Circuit appeal, the appellate court granted additional relief on this claim

---

[1]   Contrary to the Magistrate's apparent belief that this was somehow an easy case to successfully litigate is the simple fact that Plaintiffs were confronted with the reality that Detroit's initial attempt to zone "adult" businesses was *upheld* by the Supreme Court in the seminal case of **Young v. American Mini-Theatres**, 427 U.S. 50 (1976); a point that the City continually raised to this Court in response to Plaintiffs' zoning arguments.  *See, e.g.,* Dkt's 25, pp. 25, 36; and 92, pp. 20-21.

[2]   This latter relief became necessary to the Plaintiffs when, after the entry of the order in the Initial Action enjoining the enforcement of Condition 18, the Detroit City Council enacted certain resolutions that found a "presumption of disapproval" of Transfer Applications if the use was non-conforming.  Dkt.'s 23, Ex. I; 101-5.  This was the City's *second* unconstitutional attempt to find a basis for denying the Transfer Application (in addition to simply not acting on it; which required the re-filing of the action).

[3]   This obliterated Detroit's basis for denying the Transfer Application supposedly predicated upon the non-conforming nature of the use.  *See* Dkt. 101-3.

2

and ordered that Plaintiffs "may legally erect signs on the Premises bearing whatever non-obscene business name they choose. . . . The City is enjoined from preventing plaintiffs from doing so." 568 F.3d at 625.

- Pursuant to Plaintiffs' *third* motion for partial summary judgment, this Court declared as unconstitutional, and enjoined the enforcement of, the "2003 Procedures and Criteria" that the City had used to deny the Transfer Application. Dkt. 122.

- Because the Court declined to hold, in ruling on Plaintiffs' third motion for partial summary judgment, that Detroit's denial of the Transfer Application -- based upon the unconstitutional 2003 Procedures and Criteria -- was itself an unconstitutional act, the Plaintiffs filed yet another motion to alter or amend, which the Court also granted and held that it, "upon further reflection, now concludes that the Plaintiffs are correct when they argue that the City's application of the unconstitutional procedures upon which to base its denial of the transfer application was, in fact, an unconstitutional act." Dkt. 126, Order, p. 7.

Even without the damages awarded in this action, the injunctive relief obtained would also, *alone*, justify the awarding of the fees claimed. *See* **Lefemine v. Wideman**, _ U.S. _, 133 S.Ct. 9 (2012) (abortion protester who obtained injunctive relief, but who was denied request for nominal damages, was nevertheless entitled to attorney fees pursuant to 42 U.S.C. § 1988).

*Nothing* in this case was easy. Three ultimately successful motions for partial summary judgment, one successful appeal, and two successful motions to alter or amend, properly set Plaintiffs up for their damage trial, which was resolved the evening before it was to commence.[4] The tenacity of counsel to ensure that each motion for partial summary judgment was ultimately resolved in a fashion to support the damage claim led to the eighth form of relief obtained by the Plaintiffs as discussed above; the entry of a Consent Decree awarding them $2.95 million in

---

[4] Plaintiffs were also successful in, among other things, responding to a motion by the City to have this Court revise, and indeed reverse, its ruling on Plaintiffs' first motion for partial summary judgment (without which Plaintiffs' entire case would have crumbled) (*see* Dkt. 117; Order denying Defendants' motion to revise the Court's Order of August 6, 2007), and in having the Sixth Circuit deny Detroit's motion for en banc consideration.

3

damages.  No one could serious argue that Plaintiffs obtained, as a direct result of counsels' actions, anything but "excellent results."  **Adcock-Ladd**, 227 F.3d at 349.

Irrespective of all of the above, however, Magistrate Whalen, who had absolutely no familiarity with this case prior to two days before trial when he convened a settlement conference at your direction, recommends the cutting of Plaintiffs' attorney fee request by an *astonishing 70%* (thereby providing an award to Plaintiffs' counsel of approximately *12.6%* of the damages awarded -- setting aside the work for all of the declaratory and injunctive relief obtained -- for litigating these cases over eight years).  He does so even though (and not acknowledged by him) Plaintiffs' counsel properly exercised billing judgment and deleted from the fee request: 1) hours equivalent to *$95,856.50* that counsel felt could arguably be found to be "excessive, redundant, or otherwise unnecessary" (**Hensley**, 461 U.S. at 434); and 2) hours related to work that Sixth Circuit precedent holds to be fully compensable (in an effort to illustrate the lengths to which counsel went in order to verify that the fee request was reasonable).

Not surprisingly, such drastic reductions have been ruled to constitute reversible error in various Sixth Circuit opinions, even in cases where, unlike the circumstances here, the plaintiffs had only obtained very limited or "technical" victories.

In addition, in a case where the Plaintiffs obtained virtual complete victory, the Magistrate recommends a *60% across-the-board reduction* in the actual out-of-pocket *costs expended in successfully litigating the various claims*.  And, in doing so, he misrepresents the costs of the copying for which Plaintiffs (*not* counsel) seek reimbursement, and juxtaposes "cuts" he already recommends be made to the attorney hours claimed (and thereby "doubles up" on certain of his recommended cuts).

4

Because of the matters discussed above and below and because this Court is to engage in *de novo* review of a Magistrate's Report and Recommendation of a fee petition,[5] Plaintiffs request this Court to ignore the R&R and to review Plaintiffs' fee and costs petition anew.

### OBJECTION NO. 1
### A 60% "ACROSS-THE-BOARD" REDUCTION IN FEES IS UNJUSTIFED.

*After* disallowing certain hours that he deemed to be non-compensable (the subject of further objections below), Magistrate Whalen then, *on top of that*, recommends an "across-the-board" 60% reduction in claimed fees. R&R, pp. 9-14. Such a reduction is improper.

An award of "attorney's fee under §1988 means a fee that would have been deemed reasonable if billed to *affluent* plaintiffs by their own attorneys." **Missouri v. Jenkins**, 491 U.S. 274, 285-86 (1989) (emphasis added) (quoting **Riverside v. Rivera**, 477 U.S. 561, 591 (1986) (Rehnquist, J., dissenting))[6]. Because of this, the standards upon a court ordering a reduction in

---

[5]     28 U.S.C. § 636(b)(1); **Flournoy v. Marshall**, 842 F.2d 875, 875-76 (6th Cir. 1998); **Fharmacy Records v. Nassar**, No. 10-1354, slip op. at 5-6 (6th Cir. 2012).

[6]     In an effort to mitigate this language, the Magistrate quotes a single sentence from then-Justice Rehnquist's four member dissent in **Rivera** (adopted by the majority in **Jenkins**), and asserts that nothing in that opinion would support the requested fees here. R&R pp. 9-10. Magistrate Whalen misreads **Rivera**. The *sole* issue in **Rivera** was whether the hours spent by counsel were reasonable, and what Justice Rehnquist railed against was a fee award of over $245,000 for a damage recovery of only approximately $33,000 (feeling that 1,946.75 hours spent to obtain such a recover was inappropriate). **Id.** at 588-96. He opines that the number of hours sought must be commensurate with the results obtained, **id.**, and *twice* quotes **Hensley**'s holding of the "*results obtained*" being "'*the important factor*' in determining a 'reasonable' fee award." **Id.** at 590, and 593 (emphasis added). The quote from Justice Rehnquist's opinion in **Rivera** used by the majority in **Jenkins**, when viewing its full text, is directly relevant to the issue here:

> The analysis of whether the extraordinary number of hours put in by respondents' attorneys in this case was "reasonable" must be made in light of both the traditional billing practices in the profession and the fundamental principle that the award of a "reasonable" attorney's fee under § 1988 means that a fee that would have been deemed reasonable if billed to affluent Plaintiffs by their own attorneys. This latter principle was stressed in the legislative history of § 1988 . . .

5

requested fees are strict.  "[G]enerally, a *strong presumption* favors the prevailing lawyer's entitlement to his lodestar fee…  Accordingly, 'modifications' [to the lodestar] are proper *only in certain 'rare' and 'exceptional' cases, supported by both 'specific' evidence on the record and detailed findings by the lower courts.*"  **Adcock-Ladd**, 227 F.3d at 350 (emphasis and clarification added) (*quoting* **Pennsylvania v. Delaware Valley Citizens Council for Clean Air**, 478 U.S. 546, 565 (1986)).

A judge is not to, as the Magistrate recommends be done here, "eyeball" a fee request and "cut it down by an arbitrary percentage because it seemed excessive to the court."  **People Who Care v. Rockford Bd. of Ed.**, 90 F.3d 1307, 1314 (7th Cir. 1996).  In **People Who Care**, the trial court had "essentially found that [the attorney] had worked too many of his hours in too short a period.  *That is not a proper basis for finding requested hours unreasonable.*" **Id**. (emphasis and clarification added).  If the court does not conclude that the Plaintiff failed to

---

**Id**. at 591 (citation omitted).

Justice Rehnquist then provides examples of hourly rate attorneys charging fees far beyond the value of the cases (**id**. at 592-93), whereupon he concludes:

> The very "reasonableness" of the hours expended on a case by a plaintiff's attorney necessarily will depend, to a large extent, *on the amount that may reasonably be expected to be recovered if the plaintiff prevails.*

**Id**. at 593 (emphasis added).

Justice Rehnquist also notes that "if the litigation produces significant, identifiable benefits for persons other than the plaintiffs, then the purpose of Congress in authorizing attorney's fees under § 1988 should allow *a larger award* of attorney's fees than would be 'reasonable' where the only relief is the recovery of monetary damages by individual plaintiffs." **Id**. at 594 (emphasis added).  Here, Plaintiffs *did* obtain such broad relief by having the entire adult zoning ordinance and the Procedures and Criteria for liquor licenses and related permits (including TAP's) declared unconstitutional and permanently enjoined.  *Consequently, rather than supporting the Magistrate's recommended cuts, Rivera actually supports a fee enhancement in these circumstances*.  See Objection No. 5, *infra*.

6

achieve a successful result, that counsel had not been inefficient or duplicitous, or failed to

adequately document time, a fee reduction is not warranted. **Id**. None of that applies here.[7]

In addition, a fee award is not be reduced as being excessive where the defendant

---

[7]      In making his 60% across-the-board reduction, Magistrate Whalen states that in "adjusting fee petitions in various cases, courts have reduced the total fees or hours by amounts ranging from 40% . . . to 77%." R&R p. 13. Obviously, that statement is blatantly misleading.

First, courts impose reductions far below these percentages in the event plaintiff only had limited success or if entries are deemed redundant or unnecessary. *See, e.g.,* **Hensley**, 461 US at 438 n.13 (1/3[rd] reduction of hours appropriate "to account for [the lawyers] inexperience and failure to keep contemporaneous time records" (*neither* being applicable here); **Barachkov v. Davis**, 2013 WL 2149104 (E.D. Mich. May 16, 2013), at *5 (Borman, J.) (imposing a "modest" fee reduction -- but only for non-lead attorneys -- for internal communications (which these Plaintiffs already deleted; Dkt. 148-3, Shafer Aff., ¶ 12)); and **Knop v. Johnson**, 712 F.Supp. 741, 579 (W.D. Mi. 1989) (Enslen, J.) (2% reduction for excessive time).

Second, the cases relied upon by the Magistrate simply do not apply to the circumstances here. **Mares v. Credit Bureau of Raton**, 801 F.2d 1197 (10th Cir. 1986) involved a damage award of $2,500 but a fee application of approximately $30,000. **Id**. at 1198-99. The district court concluded that excessive time was spent due to inexperience and billing to activities not properly considered as lawyer's billable time. **Id**. at 1202. In fact, the court found that the attorney had been in practice for just over a year at the commencement of the case and had "concede[d] his lack of expertise. . ." (**id**. at 1204) (clarification added); that he had "failed entirely on his major theory of damage;" and that he had also "grossly over valued what the case would warrant by way of punitive damages." **Id**. Moreover, unlike here, the attorney there failed to submit any affidavit or other evidence of the reasonableness of the time spent in preparation of his case, and plaintiff added an additional attorney just before trial, which the court deemed to be unnecessary. **Id**. at 1205-06.

Similarly, **O'Connor v. Trans Union**, LLC, 2008 WL 4910670 (E.D. Mich. Nov. 13, 2008) (Cleland, J.), involved an attorney fee motion brought by a *defendant* who had prevailed on a motion to dismiss (subsequently converted to a grant of summary judgment). **Id**. at *1. The attorney fee motion there was brought *not* under 42 USC § 1988, but rather under various statutes dealing with frivolous actions or continuing a lawsuit for an improper purpose. **Id**. at *2. In reducing the number of hours expended, Judge Cleland concluded that the case "has been, quite simply, over-litigated, particularly after Plaintiff's deposition when it became clear to everyone that this case should, and ultimately would, end." **Id**. at *6. Magistrate Whalen obviously made no such "overly litigated" finding here, and he could not have given the ends to which the Plaintiffs had to go in order to ensure that they received full relief. The cases involving the drastic reductions as cited by the Magistrate simply have no factual bearing to the (in the words of Magistrate Whalen; R&R, p. 6) "great results" obtained here.

contested every possible issue in a "fight to the last breath," "scorched-earth," strategy. **Communication Workers v. Ector County Hospital District**, 392 F.3d 733, 749 (5th Cir. 2004). As this Court is aware, that certainly occurred here. Moreover, not only did the Undersigned attest to the necessity of the hours incurred (and, thereby, their reasonableness) (Dkt. 148-3, ¶ 12), but Plaintiffs also submitted a declaration of a highly-experienced First Amendment attorney, Jeff Scott Olson, who also attested to the reasonableness of the hours worked. Dkt. 148-12, Olson Dec., ¶ 25.[8]

Interestingly, the Sixth Circuit has addressed 60% fee reductions. Each time, it reversed. In **Dilaura v. Township of Ann Arbor**, 471 F.3d 666 (6th Cir. 2006), Judge Friedman of this Court had made such a reduction based upon the fact that the plaintiff there had obtained only very limited relief; prevailing on only one claim (*"[n]one of the claims initially pled succeeded and none of the relief initially sought was obtained"*). **Id**. at 672-73. Quoting **Hensley**'s language that "[t]he result is what matters," the appellate court concluded that ". . . the district court's reduction in fees was an ***abuse of discretion***." **Id**. at 673 (emphasis added).

Similarly, in **Neme v. Monusko**, 145 F.3d 1332 (6th Cir. 1998) (unpublished), Judge Hackett of this Court had reduced an attorney fee request by 60% due to plaintiff's "limited success," finding that "only 40% of the hours contributing to the Lodestar amount could be attributed to points on which the plaintiffs prevailed." **Id**. at *'s 3-4. The Sixth Circuit reversed,

---

[8]   The Magistrate takes issue with the hours expended in light of the experience of the Undersigned. R&R, p. 13. First, the undersigned only accounted for 43.2% of the hours billed by his firm on these cases. Dkt. 148, Motion, p. 6 (dividing). Second, associates and law clerks are less efficient because of their lesser experience, and that is accounted for in the Lodestar by awarding them lower rates. *See* **Trustees of Chicago Plastering Institute Pension Trust v. Cork Plastering, Inc.**, 2008 WL 728897 at *5 (ND. Ill. March 18, 2008); and **Mitchell v. Natl. R.R. Passenger Corp.**, 217 F.R.D. 53, 58 (D.D.C. 2003) (. . . "inexperienced lawyers, although they bill at a lower rate, may burn up many hours doing tasks that their seniors could have accomplished more efficiently and cheaply").

8

finding that this Court had not properly substantiated such a reduction. **Id**. at *5.

More recently, in **Binta B v. Gordon**, 710 F.3d 608 (6th Cir. 2013), the Sixth Circuit reversed a 20% reduction in hours. **Id**. at 639-40. In doing so, the court quoted the Supreme Court's most recent pronouncement on these issues:

> It is essential that the Judge provide a reasonably specific explanation for all aspects of a fee determination. . . . Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case.

**Id**. at 639 (quoting **Perdue v. Kenny A**, 559 U.S. 542, 130 S.Ct. 1662, 1676 (2010)).

In reversing, the Sixth Circuit stated that while the lower "court pronounced that a 20% reduction was reasonable," the opinion of the district court "does not demonstrate why the court settled on 20%, as opposed to 43.5% or 60% or 70%." 710 F.3d at 640. Similarly, here, Magistrate Whalen provides *no reasoning whatsoever* as to why he selected the 60% reduction (*on top of* other attorney fee reductions that he also made and which are discussed below). The 60% reduction is unjustified in light of the relief obtained for the Plaintiffs.

In addition, across-the-board reductions are appropriate only when it is evident that plaintiff's counsel has failed to exercise billing judgment. *See, e.g.,* **Walker v. City of Mesquite**, 313 F.3d 246, 251 (5th Cir. 2002), *cert. denied,* 538 U.S. 962 (2003); and **Green v. Administrators of Tulane Educational Fund**, 248 F.3d 642, 662 (5th Cir. 2002). Magistrate Whalen made no such finding, as he could not (the undersigned attested to the fact that he had reduced the claimed attorney fees by *$95,856.50* for time that he felt was irrelevant, excessive, redundant, or unproductive; Dkt. 148-3, Shafer Aff., ¶12). Moreover, as the Eleventh Circuit has noted, there is a potential danger inherent in the conscientious exercise of billing judgment if the district court then uses the "new baseline" against which to apply its *own* deductions, and then

9

"double deduct[s]." **Caban-Wheeler v. Elsea**, 71 F.3d 837, 845 (11th Cir. 1996). That is, indeed, what the Magistrate recommends be done here, and is inappropriate.

In fact, the Magistrate's actions here can set a dangerous precedent by discouraging attorneys from exercising billing judgment before submitting fee petitions. If attorneys believe that no matter how closely they scrutinize their own hours, the same will be given absolutely no credence by the Court and will just result in a new reduced "baseline" for the Court to begin its (additional) reductions of hours claimed, lawyers may feel that there is no point in voluntarily flyspecking their own billing entries. This could lead to lawyers simply submitting all billing entries with the belief that the Court will just cut it anyway by large percentages and that a better outcome may be obtained by not voluntarily deleting time before submitting a fee petition. Public policy dictates that such an approach be rejected. [9]

Finally, Plaintiffs would point out that they believe that the erroneous nature of the magnitude of the Magistrate's recommended fee reduction is the result, in part, of the Defendant's submission of various "charts" in its response that provided misleading information concerning the time reductions that should be made if certain matters were considered to be non-compensable. Plaintiffs discuss this in greater detail in Objection No. 5.

## OBJECTION NO. 2
## COSTS SHOULD NOT BE CUT BY 60%.

---

[9] The Magistrate chastises counsel for watching the news, which he finds to be unreasonable for compensation purposes. R&R, pp. 8-10, 12. Counsels are, however, duty-bound to obtain as much information as possible about their case so that they can, hopefully, prevail on behalf of their clients. This information comes, sometimes, through formal discovery, sometimes from investigators, and sometimes through the work of diligent news reporters. This case is the prime example of the latter, with the fact that Councilwoman Monica Conyers engaged in a *pattern* of bribe solicitations (resulting in the denial of the Transfer Application) coming to counsel's attention exclusively through news sources. An attorney would be derelict in his or her ethical obligations in not reviewing news reports of their case.

Astonishingly, the Magistrate recommends a similar across-the-board reduction of *all out-of-pocket costs* in the amount of ***60%***. R&R, pp. 16-18. Before getting to that, however, Plaintiffs must address the factual misrepresentations made in that portion of the R&R.

First, the Magistrate asserts that "Defendant also argues that Plaintiffs' request for *travel costs* in the amount of $22,373.70 be reduced by 50%." R&R, p. 16 (emphasis added). What the Defendant *actually* argued was that attorney hours for travel *time* be reduced by 50%[10] (in any event, the Magistrate recommends that it, and all other attorney time, be reduced, rather, by 60%, and then "double dips" by apparently using this as a basis to reduce costs as well). Dkt. 152, pp. 23-24. Additionally, the figure of $22,373.70 comes from one of Defendant's "charts" contained in its response to the fee motion (*see* Dkt. 152-14), which uses the wrong starting point. Dkt. 155-2, Shafer Supp. Aff., ¶ 7. More to the point, case law authority supports travel time being billed at a standard rate because the attorney loses an opportunity cost to work at a full rate on other matters.[11]

Second, the Magistrate incorrectly asserts that "Plaintiff [sic] has computed copies at 20 cents per page." R&R, p. 16. The Undersigned's affidavit in support of fees (Dkt. 148-3) *actually states* that the firm charged copying at a rate of 20¢ per page until approximately 2006, "when the rate was lowered to $0.15 per page." Dkt. 148-3 ¶ 23. The costs chart for this suit shows that there is ***one single* photocopying charge prior to 2006,** which would have been at the 20¢ per page rate. Dkt. 148-5, p. 51, entry of 10/6/2004. The total amount of *those* copies was a

---

[10]    This is actually an interesting comparison to the 60% reduction the Magistrate recommends for all remaining attorney time. Basically, the Magistrate believes that time spent winning this case should be compensated at a rate ***below*** an attorney sitting in his or her car.

[11]    *See, e.g.,* **Henry v. Webermeier**, 738 F.2d 188, 194 (7th Cir. 1984); **Craik v. Minnesota State Univ. Bd.**, 738 F. 2d 348, 350 (8th Cir. 1984); **George v. GTE Directories Corp.**, 114 F. Supp.2d 1281, 1290-91, (M.D. Fla. 2000); **Rose Confections, Inc., v. Ambrosia Chocolate Co.**, 816 F.2d 381, 396 (8th Cir. 1987).

11

whopping 80¢. And, far from it being "not reasonable to make the Defendant pay the highest possible rate" as claimed by the Magistrate (R&R, p. 17; where he recommends reimbursement only at the *lowest possible* rate), this Court is referred to the opinion of Judge Edmunds in **Sykes v. Anderson**, 2008 WL 4776837 (E.D. Mich. Oct. 31, 2008), where she finds copying at 50¢ per page to be excessive and, rather, awards "a reasonable rate of 25 cents per page." **Id**. at *8 (citing **King v. Gowdy**, 2008 WL 1820837, at *3 (E.D. Mich. Apr. 22, 2008) (Friedman, J.) (finding 25¢ per page to be "reasonable . . .")). Here, Plaintiffs *never* charged that much.

But what is most inequitable about the Magistrate's recommendation regarding the recovery of costs is that the Undersigned attested to the fact that these expenses were ***actually paid by the Plaintiffs***. Dkt. 148-3, Shafer Aff., ¶ 20. And, the Undersigned substantiated not only the necessity of these costs, but what counsel *could have* billed as additional costs *but did not*. **Id**., ¶'s 20-25; and Dkt. 155-2, Shafer Supp. Aff., ¶'s 17-23. This, of course, begs the question (not answered by the Magistrate) of why these Plaintiffs, who have been basically completely successful in their litigation, should only be reimbursed 40% of, for example, deposition transcript costs incurred as a result of Plaintiffs' very successful damage claim; suit filing fees; or overnight charges for the "Judges Copy" of motions on which they prevailed?

Quite simply, the fact that the Magistrate may conclude that the *hours* expended were unreasonably high has no correlation whatsoever with determining whether *costs* incurred in the litigation were excessive. There is no basis to cut the costs of litigation by a whopping 60% (or, for that matter, by *any* percentage).

### OBJECTION NO. 3
### WORK RELATED TO THE "JANE ROE PLAINTIFFS" IS COMPENSABLE.

Plaintiffs' "fully compensatory fee" should not, as the Magistrate contends, be reduced for hours Plaintiffs spent on work relating to the Jane Roe Plaintiffs. R&R, p. 12-13. This is

12

particularly true where the City has stipulated that Plaintiffs are prevailing parties for purposes of § 1988 (Consent Decree, Doc. 145, ¶ 5), and where the stipulation dismissing the Jane Roe Plaintiffs (*after* the entry of the Consent Decree) provides that the same does not in any way prejudice the claims of the remaining Plaintiffs. Dkt. 144, Dismissal, ¶ 2.

As Defendant admitted (Response, Doc. 152, p. 23 (citing **Clark v. City of Lakewood**, 259 F.3d 996 (6th Cir. 2001)), and as the Magistrate acknowledged (R&R, p.12), the remaining Plaintiffs had standing to assert claims on behalf of entertainers that the "employee" licensing scheme was unconstitutional. Other than the inability to recover money damages on behalf of the Jane Roe Plaintiffs, these Plaintiffs were fully able to assert claims for declaratory and injunctive relief. The Magistrate has not established (as he could not) that at the time the work was performed on the Jane Roe claims, it was unreasonable or unnecessary.[12]

In this regard, the Magistrate ignores *numerous* Sixth Circuit opinions on this issue.

> The defendants object to many of the hours billed by the attorneys on the grounds that these hours *did not contribute to the ultimate success* achieved by the plaintiffs. We believe that this is an *overly stringent standard* for awarding fees. *The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved.* Rather, the standard is *whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.*

**Woolridge v. Marlene Industries Corp.**, 89 F.2d 1169, 1177 (6th Cir. 1990) (emphasis added).[13]

---

[12]    The Magistrate implies, relying on a chart prepared by the Defendant, that counsel spent too much time on these claims. This issue is addressed in Objection No. 5 herein. *See also* Dkt. 152-6 (Defendant's "chart" *claiming* 227.2 hours spent on the Jane Roe matters, with an actual review of that document demonstrating that the majority of the entries contained therein have *absolutely nothing to do* with the Roe matters).

[13]    *Accord,* **Jordan v. City of Cleveland**, 464 F.3d 584, 603-04 (6th Cir. 2006) (district court *abused its discretion* by reducing a fee award based upon claims which plaintiff did not prevail,

13

This is because, as stated by the Sixth Circuit:

> We know of no traditional method' of billing whereby an attorney offers a discount based on his or her failure to prevail on issues or parts of issues. Furthermore, *it would hardly further our mandate to use the 'broadest and most flexible remedies available' to us to enforce the Civil Rights Laws if we were so directly to discourage innovative and vigorous lawyering in a changing area of the law*.

**Northcross v. Bd. of Ed. of Memphis City Schools**, 611 F.2d 624, 636 (6th Cir. 1979)

(emphasis added), *cert. denied*, 477 U.S. 911 (1980).

Once prevailing party status is determined, the plaintiff:

> . . . is entitled to recover attorney fees for 'all time reasonable spent on a matter.' The fact that some of that time was spent in pursuing issues or research which was *ultimately unproductive, rejected by the court, or mooted by intervening events, is wholly irrelevant*. So long as the party prevailed in the case *as a whole*, the district courts are to allow compensation for hours expended on *unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith*.

**Id**. (emphasis added). *Accord*, **Deja Vu of Nashville, Inc. v. The Metro. Govt. of Nashville and Davidson County**, 421 F.3d 417, 423 (6th Cir.), *cert. denied*, 547 U.S. 1205 (2005) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection or failure to reach certain grounds is not a sufficient reason for reducing the fee") (involving a fee award to the Undersigned).

Thus, because of the excellent result achieved, Plaintiffs are entitled to a fully

---

observing that the plaintiff "*prevailed on a substantial number of claims that he pursued, obtaining virtually all of the types of relief he requested*. . ."); and **DiLaura v. Twp. of Ann Arbor**, 471 F.3d 666, 673 (6th Cir. 2006) ("By focusing on the fact that most of plaintiffs' claims failed, the district court does what **Hensley** specifically *forbids*. . .") (all emphasis added). *See also* **Barachkov**, 2013 WL 2149104, at *7 (Judge Borman refusing to reduce fees to only 1/13th of the requested fee where plaintiff prevailed on only one claim).

14

compensatory fee, even if some (the Jane Roe) claims were mooted by intervening events. [14]

## OBJECTION NO. 4
## PLAINTIFFS SHOULD BE FULLY COMPENSATED FOR THE RELATED ANCILLARY PROCEEDINGS.

The Magistrate rejects full -- and in some cases *any* -- remuneration for 3 inextricably related matters: The Initial Action; the Board of Zoning Appeals ("BZA") hearings; and the Monica Conyers/Sam Riddle criminal proceedings. Since the Initial Action was submitted under separate billing, the Magistrate simply recommends the denial of all such hours and costs. He uses the limited hours spent on the BZA and criminal proceedings, however, to at least partially justify his 60% across-the-board reduction. R&R, pp. 7-9, 12-13. Because similar case law applies to all three matters, Plaintiffs will deal with these as subsets of this one Objection.

The Supreme Court has "noted that for the time spent pursuing *optional* administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." **Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air**, 478 U.S. 546, 561 (1986) (emphasis added) (quoting **Webb v. Board of Ed. of Dyer County**, 471 U.S. 234, 243 (1985). Here, the matters discussed below were *not* "optional." Rather, the BZA proceedings and the Conyer/Riddle criminal matters were thrust upon Plaintiffs and their counsel as a direct result of what went on *in this case*. When engaging in an ancillary proceeding is not discretionary, there is a greater reason to provide remuneration for the attorney time spent on

---

[14]     As explained in Plaintiffs' memorandum in support of the fee motion (Dkt. 148, p. 8-9 n. 2), by the time the appeals on the first two motions for partial summary judgment and the City's motion to revise (Dkt. 92) were resolved, the City had amended its adult business regulations ("Chapter 5"), thereby mooting the claims related thereto. Moreover, it would have been redundant to litigate those claims at the time because Judge Steeh of this Court had, in another action, preliminary enjoined parts of the dancer licensing process in April of 2009. *See* **Platinum Sports Ltd. v. City of Detroit**, 641 F.Supp. 2d 627 (E.D. Mich. 2009).

such a matter. *Cf.*, **New York Gaslight Club, Inc. v. Carey**, 447 U.S. 54, 61-62, 65-66 (1980) (Court finding under the analogous attorney fee provisions of Title VII that statutorily mandated administrative proceedings, which were prerequisites to the filing of a federal action, were fully compensable). There is no shortage of case law permitting of the awarding fees in these circumstances.[15]

### A) The 2003 "Initial Action."

The instant lawsuit is a re-filing of the Initial Action. *See* L.R. 83.11(c); Dkt. 1-8 (Civil Cover Sheet in this action, answering "Yes" to the question "Is this a case that has been previously dismissed?", with this Court, Your Honor, and case number 03-74887 (the number of to the Initial Action) identified as the previously dismissed lawsuit, and in Section V (titled

---

[15]    *See* **Green v. Administrators of Tulane Ed. Fund**, 284 F.3d 642 (5th Cir. 2002) (award in Title VII action proper for services in workers' compensation suit because the suit made information and discovery available to plaintiff's counsel that was necessary to effectively litigate the Title VII claim); **Pinkham v. Camex, Inc.**, 84 F.3d 292, 294 (8th Cir. 1996) (prevailing plaintiff in copyright infringement action that was consolidated with a related diversity action was entitled to "recover for all the time spent in joint preparation" as between the two interrelated suits based on the "determination that 90% of the billed time was necessary to both actions); **Gilbrook v. City of Westminster**, 177 F.3d 839 (9th Cir.), *cert. denied*, 528 U.S. 1061 (1999) (appellate court upheld compensability of plaintiff's attorneys' participation in administrative advocacy efforts that were related to the plaintiff's employment discharge case, noting that the defendants had not established that the related litigation were "wholly collateral" to the action that resulted in compensation); **Armstrong v. Davis**, 318 F.3d 965, 972 (9th Cir. 2003) (plaintiffs entitled to fee for services rendered in a separate lawsuit because the work in the related case was "important to the preservation of the [litigant's] rights, and because their counsel performed the work in order to protect their interest..."); **Beltran Rosas v. County of San Bernardino**, 260 F.Supp.2d 990, 992-995 (C.D. Cal. 2003) (§1983 plaintiff who prevailed on Fourth Amendment search and seizure and malicious prosecution claims was entitled to fees for services in defending criminal charges because these services were necessary to advance the §1983 case); and **Lambert v. Fulton County**, 151 F.Supp.2d 1364, 1371-72 (M.D. Ga. 2000) (fees awarded for work performed in administrative proceedings because the issues before the agency were identical to those at trial and because plaintiff's evidence for the agency hearing was needed for trial). Moreover, unlike **Webb**, the BZA proceedings and the criminal matters were not performed *before* the § 1983 suit. The BZA work was undertaken in the interim between the conclusion of the Initial Action and the re-filing of the instant suit, and the Conyers/Riddle work was performed *during the pendency of this action.*

16

"Origin") a check appearing by number 4, which states "Reinstated or Reopened"); and Dkt. 1,

Complaint, ¶ 1 ("This *is a re-filed civil action* wherein Plaintiffs pray for . . .") (emphasis

added).   Consequently, because this lawsuit is merely a continuation of the Initial Action,

Plaintiffs are entitled to compensation for its earlier iteration.

   Even if the Initial Action had been a *different* suit, compensation is still appropriate. *See*

**G & G Sprinkler v. Bradshaw**, 156 F.3d 893, 908 (9th Cir. 1998) *rev'd on other grounds sub*

*nom* **Lujan v. G & G Sprinklers, Inc.**, 532 U.S. 189 (2001) (court examined decisions from

other circuits awarding fees for work performed in related proceedings). The court held:

> Here, G & G made a showing that the work done in the Garza lawsuit was
> directly related to the present action - the allegations in that suit were identical to
> those made here.  Counsel for G & G stated that the legal research an analysis
> performed in **Garza** were necessary for this action and accordingly saved him
> from expending more time on this lawsuit. . . . *The two can even be viewed as a*
> *continuum of proceedings necessary to achieve the relief finally granted*, given
> that the Garza Case ended in a settlement stating that if the state took further
> action, G & G could re-file the lawsuit, which is what happened.

156 F.3d at 908 (**Garza** identified therein simply as "156 F.3d at 906") (emphasis added).

   This suit and the Initial Action are certainly a "continuum of proceedings."  Also like **G**

**& G Sprinkler**, Plaintiffs' remaining claims were dismissed without prejudice, where Plaintiffs

could re-file such claims if later necessary (as they did).  The work in the Initial Action assisted

in the instant lawsuit and lessened the hours needed to prosecute this matter.  Dkt. 148-3, Shafer

Affidavit, at ¶'s 12, 26-27.

   The Magistrate, however, rejects all of this on the basis that the Initial Action was

dismissed without prejudice and without costs or attorney fees.  He concludes that Plaintiffs'

counsel misunderstands both the "plain language and intent" of the stipulation and order.  R&R

p. 7.  Given that the undersigned, however, *authored* those documents, he is very familiar with

the intent, which simply was that so long as the lawsuit did not have to be re-filed (it was

17

dismissed *without* prejudice), no costs or attorney fees were to be awarded. If the matter had to

be re-filed, all bets were off. Under the Magistrate's interpretation of this language, Detroit

could make an argument that the Initial Action order would preclude attorney fees and costs *even

in this lawsuit*, which would, of course be a preposterous position.

### B) The BZA Proceedings.

The Magistrate perceives that fees for the BZA proceedings are inappropriate because

they dealt with "the question of Condition 18, which had been resolved in the 2003 consent

judgment"; Condition 18 therefore being a "relatively minor part of the BZA proceedings, and

the bulk of the 2004 administrative proceedings 'were not reasonably expended' on the present

lawsuit. . . ." R&R, p. 12. The lack of the Magistrate's familiarity with the record in this action,

however, lead him to this erroneous conclusion since while the importance of the BZA

proceedings to this lawsuit had something to do with Condition 18, it had *everything* to do with

Plaintiffs' damage claim.

The BZA proceedings are discussed in specific detail in the joint final pre-trial order

submitted by the parties (recalling that the *only* issue at trial was the question of damages). Dkt.

135, ¶'s 80-92. That order discusses the two separate zoning violation notices issued against

Plaintiff K&P alleging that it had "illegally expanded its non-conforming use on the premises."

Dkt. 135, ¶'s 80-83, 91. As the Magistrate notes, the land use grant issued to K&P (which

included Condition 18) is "a condition precedent to an Adult Cabaret Use entertainment license."

R&R p. 7. If the BZA had found a violation of the zoning grant (by K&P having illegally

"expanded the non-conforming use"), the City would have been within its authority to *revoke* the

zoning grant; thereby precluding the presentation of adult entertainment on the premises and

mooting Plaintiffs' entire lawsuit.

18

The BZA proceedings did not, however, end with a clear victory for K&P. Rather, the violation ticket was reversed and dismissed *without* prejudice in order that "this order be remanded back to the Buildings & Safety Engineering Department for a Show Cause Hearing to make a determination that the Buildings & Safety Engineering grant issued in 1994 has been violated." Dkt. 135, ¶ 90. *See also* **id**. at ¶ 91. ***Because of that possibility***, "K&P []

involuntarily but significantly curtailed the engagement of 'topless' performance dance entertainment upon the Premises . . . ." Dkt. 84-2, Compl. ¶ 227.

Had it not been for the BZA proceedings, in which the Plaintiffs were required to ***involuntarily*** participate, K&P would have had absolutely no claim for lost business (the bulk of the damage claims).[16] And, Condition 18 *was* brought up in the BZA proceedings as a basis to justify the ticket. Dkt. 135, Jt. Pre-Trial Order, ¶'s 85-89. Under established precedent, the BZA proceedings are sufficiently related to warrant the payment of attorney fees related thereto. *See also* **Delaware Valley**, 478 U.S. at 558-59 (work performed before an administrative agency to protect relief previously obtained in court is fully compensable).

### C) The Conyers/Riddle Criminal Proceedings.

This Court is familiar with these matters, and Plaintiffs will not elaborate on them unnecessarily here. The fact remains, however, that those proceedings were the *sole* basis for submitting the second amended complaint in this action in order to allege that the Transfer Application was denied by the City Council because of the failure to pay the bribe to then-Councilwoman Conyers. Dkt. 84 ¶'s 86(f), 218.

---

[16]    In light of the nature of the second violation notice and proceedings, K&P did not know, for example, how many floors of its building it could devote "adult" use, or how many days of the week it could present "adult" entertainment, and still maintain (*i.e.*, not illegally "expand") its zoning grant. See Dkt. 23, Ex's J & K (violation notices).

Moreover, participation in those proceedings was necessary, among other reasons, because the outcome could have had res judicata and/or collateral estoppel consequences to the related claims contained in this action. These matters are discussed in detail in Plaintiffs' reply, Dkt. 155, at pp. 24-26, and will not be repeated here. These were *involuntary* proceedings on the part of the Plaintiffs, in which Plaintiffs' counsel was required to participate *directly because of the connection to this action.* This time is fully compensable.

## OBJECTION NO. 5
## PLAINTIFFS ARE ENTITLED TO AN ENHANCEMENT.

The Magistrate denies a requested fee enhancement of 15%. R&R pp. 14-15. There are numerous reasons why such an enhancement is justified in these unique circumstances.

First (and in addition to the "excellent" results obtained by counsel in the face of fierce opposition[17]), is the fact that Undersigned's requested hourly rate is *far below market rates for similarly qualified First Amendment experts* (see Dkt. 148-8, Shafer Aff., ¶17[18]), and that in exercising billing judgment, Plaintiffs have not only deleted hours that were "unproductive, redundant or duplicative," *but, in order to ensure that the overall fee request was nothing short of eminently reasonable they deleted billing entries for time for which, under clear established*

---

[17] As this Court is aware, Defendant never submitted a damage claim offer as part of the Sixth Circuit mediation; the only offer Detroit made prior to the eve of trial was ridiculously low; and the City only got "serious" the day before trial. Dkt. 155-2, Shafer Supp. Aff., ¶'s 12-13; Dkt. 155-11 (Hoffer email). In addition, Plaintiffs would also point out that Jim St. John testified in Mr. Riddle's criminal trial that Plaintiffs offered, early on, to members of the Detroit City Council that if the transfer request was approved, they would dismiss the lawsuit and not seek any damages or attorney fees from Detroit. Dkt. 155-12, St. John Tx., p. 21.

[18] If the fact, counsel substantiated that the rate he claimed here was equivalent to the rate recently awarded by Judge Murphy of this Court to a *three year associate* in a case where the Undersigned was *defense* counsel. Dkt. 183-3, Shafer Aff., ¶ 15. *See also* **Barachkov**, 2013 WL 2149104 at ** 2-4 (Judge Borman recently awarding $400 per hour to a similarly experienced attorney).

20

*precedent, they ARE entitled to be compensated*.[19]

Second, as discussed above, counsel obtained relief far beyond just these Plaintiffs (the entire Detroit adult use zoning provisions and the Procedures and Criteria being declared unconstitutional and permanently enjoined). Under those circumstances, "the purpose of Congress in authorizing attorney's fees under § 1988 should allow a larger award of attorney's fees than would be 'reasonable' where the only relief is the recovery of monetary damages by individual plaintiffs." **Rivera**, 477 U.S. at 594 (Rehnquist, J., dissenting) (adopted by the Majority in **Jenkins**).

Third, Plaintiffs' counsel became embroiled in the Monica Conyers/Sam Riddle criminal matters as a result of this litigation. *See* discussion in Objection No. 4(C), *supra*. Moreover, contrary to the belief of the Magistrate that the Undersigned's role in the Conyers/Riddle was limited to that of being a lawyer, as a direct result of his work *in this case* the Undersigned also potentially became a *witness in those criminal proceedings*. Dkt. 148-3, Shafer Aff., ¶ 19(b). The Magistrate missed that salient fact in his analysis.

Fourth, the "undesirability" of this case cannot be overstated. This very action well-illustrates that attorneys who represent "adult" businesses must fight "uphill" all the time.

In addition to the necessary appeal and two motions to alter or amend, here, in reply to Plaintiffs' fee petition, Defendant filed a 43 page response and attached thereto a series of "charts" that Defendant claimed illustrated the magnitude of "overbilling" and reductions that

---

[19]     As the Undersigned stated in his initial affidavit, where multiple attorneys from the Undersigned's firm were communicating or conferencing for purposes of coordinating their litigation efforts, the Undersigned exercised billing judgment by deleting all billing entries other than for *one* attorney. Dkt. 148-3 at ¶12. However, the Sixth Circuit has made clear that there is *nothing inappropriate* in seeking reimbursement for attorney time where lawyers are conferring with each other. **Glover v. Johnson**, 138 F.3d 229, 252-53 (6th Cir. 1998).

21

should be made (in fact, Plaintiffs believe that the Magistrate erroneously accepted these "charts" whole cloth in recommending his 60% across-the-board reductions). But to say that those charts were both misleading and deceptive would be the grossest of understatements. Plaintiffs analyzed those "charts," and in their reply pointed out (and with countering charts) that the Defendant had, *indisputably*, for example: 1) double, and in one instance triple, deducted the *exact same billing entries*; 2) represented hours to have been spent on a particular endeavor that the Defendant claimed was non-compensable, where in fact many (if not most) of the billing entries in such "charts" had absolutely nothing to do with the claimed non-compensable matter; and 3) contained a series of percentage reductions for certain categories of billings that, when added up together, actually *exceeded 100% of such billing entries. See* Dkt. 155, Reply, pp. 2-3, 10-13; and Dkt. 155-4 (chart demonstrating this).

Had Plaintiffs' counsel submitted such misleading and deceptive documents to this Court, the Magistrate would more-than-likely have filed a Bar grievance against counsel, or imposed sanctions under 28 U.S.C. §1927, or both. However, because they were filed, rather, by counsel for the City of Detroit, the Magistrate makes not a single comment about this; *not one*. Attorneys representing adult business clients are undeniably at a litigation disadvantage.

Fifth, in the event that this Court precludes an award of hours expended in the Initial Action, or the BZA proceedings, or the Conyers/Riddle matters, the fact that counsel will be precluded from obtaining payment for hours that unquestionable contributed to the victory of this action weighs in favor of an enhancement. This is particularly true because Plaintiffs should not have ever had to file this second suit since Detroit was supposed to act constitutionally following the dismissal of the Initial Action. It did not, which thereby required this protracted litigation.

Finally, if the Magistrate is correct that expert witness fees are not recoverable in a §

22

1983 action (R&R, pp. 17-18), and if, as stated by the Magistrate, the fee awarded is "one that is adequately compensatory to attract competent counsel" (R&R, p. 3, citing **Reed v. Rhodes**, 179 F.3d 453, 471 (6th Cir. 1999)), the question then must be asked as to how competent counsel could be attracted to an expert – heavy case such as this where there is no prospect of recovering significant expert witness fees ($164,921.49 here; Dkt. 148-10) even if the Plaintiffs are completely victorious?  Here, the use of expert witnesses was mandatory because not only did K&P need an accountant to verify its lost profits and other damages, but H.D.V. had to engage experts to obtain a market survey of comparable businesses in order demonstrate lost profits for a business that had not opened.  *See* Dkt. 133-2 (expert report), and Dkt. 133-10 (published article by those experts).  The only way to guarantee that competent counsel can be retained in a case where *significant* expert fees are necessary but will be non-compensable, is to provide an enhancement of the attorney fees.

In the circumstances at issue here, Plaintiffs' counsel is entitled to an enhancement. *See, e.g.,* **Pucci v. Somers**, 834 F.Supp.2d 690, 703-04 (E.D. Mich. 2011) (Lawson, J.) (finding that a 5% fee enhancement was appropriate where the "case placed extraordinary demands on counsel's time[;] . . . [the] case lasted for more than four years[;] . . . and t]he Plaintiff was suing a sitting Chief Judge in a local district court").

### OBJECTION NO. 6
### THE FEES RELATED TO THE ATTORNEY FEE MOTION ARE NOT EXCESSIVE.

Based upon his erroneous reductions of the claimed attorney fees as discussed above, the Magistrate invokes **Coulter v. Tennessee**, 805 F.2d 146 (6th Cir. 1986), and imposes a "hard" 3% limit to the compensation allowed for the preparation of the attorney fee motion and reply memorandum; recommending an award of $10,838.39.  R&R, pages 15-16.  Initially, this calculation is erroneous because, for the reasons already stated, the Magistrate's fee

23

recommendation is artificially low. More importantly, however, he simply gets **Coulter** wrong.

First, plaintiff's counsel in **Coulter** expended only a total of *185.59 hours* in litigation (805 F.2d at 148), as opposed to "the unusual circumstances" (in the words of that court) here where the disputes lasted *eight years*; where Detroit fought to the death on every single issue; and where the City responded to the fee petition with a *43 page memorandum* (Dkt. 152) -- together with 29 exhibits and the deceptive and misleading charts discussed above -- and thereby created the "second major litigation" lamented by the Magistrate. R&R, p. 9.

Second, **Coulter** simply does *not* establish a "hard" 3% limit, but, rather, notes that *absent unusual circumstances*, hours litigating attorney fees should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial, or *5%* when a trial is necessary. 805 F.2d at 151. Here, everything other than the designated three days for actual trial was completed because the City did not offer a viable monetary settlement until the eve of trial.

Certainly, in the circumstance where Plaintiffs obtained *three* motions for partial summary judgment (the final form of which were obtained only by an appeal to the Sixth Circuit and two motions to alter or amend), and where the remaining damage claims were resolved a mere 10 hours before trial was set to commence, **Coulter** does not stand for the proposition that Plaintiffs would only be entitled to the higher 5% figure if they had billed an additional 24 hours of time to participate in the actual trial. As the Sixth Circuit has very recently noted, "the **Coulter** rule focuses on the hours spent on the main case. *Thus, in a particularly complicated lengthy main case, an attorney may be able to recover all of the claimed hours spent on the attorney's fees case."* **Northeast Ohio Coalition for the Homeless v. Secretary of the State of**

24

**Ohio**, 695 F.3d 563, 575 (6th Cir. 2012) (emphasis added). [20]

Third, when a defendant needlessly protracts resolution of the fee award (as Detroit has certainly done here), the 3% **Coulter** amount is not even relevant. **Lamar Advertising Co. v. Charter Township of Van Buren**, 2006 WL 1133309 at *4 (6th Cir., April 27, 2006). *Accord*, **Northeast Ohio Coalition**, 695 F.3d at 575.

Finally, for appellate purposes only (because this Court is obviously bound by Sixth Circuit precedent), Plaintiffs assert that the **Coulter** "rule" is invalid. *See* **Northeast Ohio Coalition**, 695 F.3d at 577 (Moore, J. concurring).

## CONCLUSION

For the reasons as set forth above, Plaintiffs respectfully request this Honorable Court enter an award of attorney fees consistent with Plaintiffs' motion for attorney fees and costs (Dkt. 148), and their supplement (Dkt. 157).

Respectfully submitted,

**SHAFER & ASSOCIATES, P.C.**

Dated:  June 5, 2013                    By:         /s/
                                                    **Bradley J. Shafer (P36604)**
                                                    Attorney for Plaintiffs
                                                    3800 Capital City Blvd., Ste. 2
                                                    Lansing, Michigan 48906
                                                    (517) 886-6560 (telephone)
                                                    (517) 886-6560 (facsimile)
                                                    info@bradshaferlaw.com

---

[20]    Plaintiffs would also point out that a complicated case such as this demonstrates the reason for the "unusual circumstances" exception in **Coulter**. Given the ethical obligation of counsel to carefully review all time entries in order to remove redundant, irrelevant, or excessive hours, it would be a judicial irony to then not compensate counsel for the time spent exercising billing judgment because of the artificial cap in **Coulter**.

25

6

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**H.D.V. - GREEKTOWN, LLC**, a Michigan
Limited Liability Company, **415 EAST
CONGRESS, LLC**, a Michigan Limited
Liability Company, and **K & P, INC**. f/d/b/a
**Deja Vu**, d/b/a **Zoo Bar**,

         Plaintiffs,

vs.

**CITY OF DETROIT**, a Municipal Corporation,

         Defendant.

Case No. 06-11282
       Hon.: Julian Abele Cook, Jr.
       Magistrate: R. Steven Whalen

---

**BRADLEY J. SHAFER, MI (P-36604)**
**MATTHEW J. HOFFER (P-70495)**
Shafer & Associates, P.C.
Attorneys for Plaintiff
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906-2110
(517) 886-6560

**JAMES D. NOSEDA (P-52563)**
**ERIC B. GAABO (P-39213)**
Attorneys for Defendant
City of Detroit Law Department
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226
(313) 237-3052

**CORBETT E. O'MEARA, MI (P-54716)**
O'Meara & O'Meara, PLLC
Co-Counsel for Plaintiffs
93 Kercheval
Grosse Pointe Farms, MI 48236
(313) 882-7450

---

### DEFENDANT CITY OF DETROIT'S RESPONSE TO REMAINING PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING MOTION FOR ATTORNEY FEES AND COSTS

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD

**TABLE OF CONTENTS**

Page

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.      GENERAL PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II      THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        REDUCED THE ATTORNEY HOURS REQUESTED BY THE REMAINING
        PLAINTIFFS BY 60% WHERE THE TIME FOR WHICH THE REMAINING
        PLAINTIFFS SOUGHT COMPENSATION WAS GROSSLY EXCESSIVE. . . . . . . 1

III.    THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        REDUCED THE ALLEGED OUT OF POCKET COSTS REQUESTED BY
        THE REMAINING PLAINTIFFS BY 60%. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        DENIED THE REMAINING PLAINTIFFS' REQUEST TO RECOVER
        ATTORNEY FEES AND COSTS IN REGARD TO CASE NO. 03-74887,
        WHICH WAS SETTLED BY THE PARTIES AFTER ONLY 27 DAYS ON
        THE EXPRESS CONDITION THAT NO COSTS OR ATTORNEY FEES
        WOULD BE RECOVERABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.      THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        DENIED THE REMAINING PLAINTIFFS' RECOVERY OF ATTORNEY
        FEES AND COSTS IN REGARD TO TIME INCURRED RELATING TO
        THE "JANE ROE" PLAINTIFFS (WHO WERE DISMISSED FROM THE CASE,
        DID NOT PREVAIL ON ANY CLAIMS AND DID NOT FILE A MOTION
        SEEKING TO RECOVER ANY FEES) AND IN REGARD TO THE DETROIT
        BOARD OF ZONING APPEALS PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . 3

VI.     THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        DENIED THE REMAINING PLAINTIFFS' REQUEST FOR AN
        ENHANCEMENT TO THE FEE AWARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VII.    THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        LIMITED THE FEES AND COSTS RELATED TO THE REMAINING
        PLAINTIFFS' MOTION FOR ATTORNEY FEES TO 3% OF THE TOTAL
        FEES AND COSTS RECOMMENDED BY THE MAGISTRATE, PURSUANT

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                    i

TO COULTER V TENNESSEE, 805 F.2D. 146 (6TH CIR. 1986). . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                    ii

# STATEMENT OF THE ISSUES PRESENTED

I       Did the Magistrate's Report and Recommendation Properly Reduce the Attorney Hours Requested by the Remaining Plaintiffs by 60% Where the Time for Which the Remaining Plaintiffs Sought Compensation Was Grossly Excessive?

The City of Detroit answers "Yes."

II.     Did the Magistrate's Report and Recommendation Properly Reduce the Alleged out of Pocket Costs Requested by the Remaining Plaintiffs by 60%?

The City of Detroit answers "Yes."

III.    Did the Magistrate's Report and Recommendation Properly Deny the Remaining Plaintiffs' Request to Recover Attorney Fees and Costs in Regard to Case No. 03-74887, Which Was Settled by the Parties after Only 27 Days on the Express Condition That No Costs or Attorney Fees Would Be Recoverable?

The City of Detroit answers "Yes."

IV.    Did the Magistrate's Report and Recommendation Properly Deny the Remaining Plaintiffs' Recovery of Attorney Fees and Costs in Regard to Time Incurred Relating to the "Jane Roe" Plaintiffs, (Who Were Dismissed from the Case, Did Not Prevail on Any Claims and Did Not File a Motion Seeking to Recover Any Fees), and in Regard to the Detroit Board of Zoning Appeals Proceedings?

The City of Detroit answers "Yes."

V.     Did the Magistrate's Report and Recommendation Properly Deny the Remaining Plaintiffs' Request for an Enhancement to the Fee Award?

The City of Detroit answers "Yes."

VI.    Did the Magistrate's Report and Recommendation Properly Limit the Fees and Costs Related to the Remaining Plaintiffs' Motion for Attorney Fees to 3% of the Total Fees and Costs Recommended by the Magistrate, Pursuant to Coulter v Tennessee, 805 F.2d. 146 (6th Cir. 1986)?

The City of Detroit answers "Yes."

VII    Should the Court Adopt the Magistrate's Report and Recommendation in its Entirety?

The City of Detroit answers "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

In support of the City's position that the Magistrate's Report and Recommendation properly reduced the attorney hours requested by the remaining Plaintiffs by 60% where the time for which the remaining Plaintiffs sought compensation was grossly excessive: Hensley v Eckerhart, 461 U.S. 424 (1983); Coulter v Tennessee, 805 F.2d 146 (6th Cir. 1986); Reed v Rhodes, 179 F.3d 453 (6th Cir. 1999); Johnson v Georgia Highway Express, Inc., 488 F.2d 714, 720 (5th Cir. 1974); King World Productions, Inc. v Financial News Network, Inc., 674 F. Supp 438 (S.D.N.Y. 1987); Saieg v City of Dearborn, 2012 WL 787261 (E.D. Mich 2012); Kirsch v Fleet St. Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Gates v Deukmejian, 987 F. 2d 1392, 1398 (9th Cir. 1992).


In support of the City's position that the Magistrate's Report and Recommendation properly reduced the alleged out of pocket costs requested by the remaining Plaintiffs by 60%: Northcross v Bd. of Educ of Memphis City Sch., 611 F.2d 624 (6th Cir. 1979); Gratz v Bollinger, 353 F.Supp.2d 929 (E.D. Mich 2005); Havard v Wayne County, 2012 WL 3583324 (E.D. Mich 2012)

In support of the City's position that the Magistrate's Report and Recommendation properly denied the remaining Plaintiffs' request to recover attorney fees and costs in regard to Case No. 03-74887, which was settled by the parties after only 27 days on the express condition that no costs or attorney fees would be recoverable: HDV-Greektown, LLC v City of Detroit, United States District Court for the Eastern District of Michigan Case No. 03-74887

In support of the City's position that the Magistrate's Report and Recommendation properly denied the remaining Plaintiffs' recovery of attorney fees and costs in regard to time incurred relating to the "Jane Roe" Plaintiffs (who were dismissed from the case, did not prevail on any claims and did not file a motion seeking to recover any fees), and in regard to the Detroit Board of Zoning Appeals proceedings: Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 41 L. Ed. 2d 706, 94 S. Ct. 2925 (1974); Jerelds v. City of Orlando, 194 F. Supp. 2d 1305, 1326 (M.D. Fla. 2001); Richardson v. Ramirez, 418 U.S. 24, 65 (U.S. 1974); Barrett v. W. Chester Univ., 2006 U.S. Dist. LEXIS 15332, 24-25 (E.D. Pa. Mar. 31, 2006); Webb v County Board of Education, 471 U.S. 234 (1985)


In support of the City's position that the Magistrate's Report and Recommendation properly denied the remaining Plaintiffs' request for an enhancement to the fee award: Perdue v Kenny A., 559 U.S. 542 (2010); Blum v. Stenson, 465 U.S. 886, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546; 106 S. Ct. 3088; 92 L. Ed. 2d 439 (1986)

In support of the City's position that the Magistrate's Report and Recommendation properly limited the fees and costs related to the remaining Plaintiffs' motion for attorney fees to 3% of the

total fees and costs recommended by the magistrate: <u>Coulter v Tennessee</u>, 805 F.2d. 146 (6th Cir. 1986)

## INTRODUCTION

As Magistrate Judge R. Steven Whalen noted in the Report and Recommendation (Doc. #162) at issue, this is primarily a First Amendment case, even though large portions of the multiple complaints filed in this case asserted completely unrelated claims upon which no relief was ever granted, much less pursued.[1]

The original Plaintiffs in this case were (1) HDV-Greektown, Inc., (2) 415 East Congress,

---

[1] These included claims for violation of the 4th Amendment (see paragraphs 11, 216, 219, 228, 231 and Prayer for Relief); claims for violation of the 5th Amendment (see paragraphs 11, 216, 219, 228, 231, 237, and 237, 237(o) and Prayer for Relief); claims for violation of the 9th Amendment (see paragraphs 11, 216, 216 (n), 219, 228, 228(w), 231, 237 and Prayer for Relief); claims that the City's procedures for licensing adult cabarets and adult entertainers were unconstitutional (see paragraphs 1, 1(a), 1(b), 3, 21-24, 29-50, 52, 53, 54, 75, 151-159, 200(b), 201, 212-219, 220-223, 224-231, 232, 235, 271(o), 287, 289 and Prayer for Relief); claims that the City had failed to offer a reasonable opportunity to operate an adult business in the City (see paragraphs 216 (e) and others); claims that the City had violated the "doctrine of unconstitutional conditions" (see paragraphs 216(g) and (n) and others); claims that the City had violated the Plaintiffs' equal protection rights by discriminating on the basis of speech (see paragraphs 216(j) and others); claims that the City had violated Plaintiffs' substantive due process rights (see paragraphs 216 (k) and others); claims that the City had violated the "liberty and occupational liberty rights of Plaintiffs and others (see paragraphs 216(q) and others); claims that the City had violated Plaintiffs' freedom of association rights (see paragraphs 216(s) and (aa) and others; claims that the City had violated the Federal Privacy Act (see paragraphs 216 (t) and others); claims that the City had violated Plaintiffs's constitutional privacy rights (see paragraphs 216(u) and others); claims that the City had imposed licensing fees that were excessive and left to the discretion of the decisionmaker (see paragraphs 216(x) and others); claims that City had imposed licensing fees that were an unlawful tax (see paragraphs 216(y) and others); claims that the City had failed to provide a constitutionally sufficient number of alternative sites to engage in First Amendment activities (see paragraphs 216(cc) and others); and claims that the City had failed to provide a constitutionally requisite alternative means of communication (see paragraphs 216(dd) and others).the claims that the City's sign ordinance provisions were facially unconstitutional , claims that the City had improperly ticketed K & P for an expansion or intensification of a nonconforming use (see paragraphs 1(i), 74, 191 - 197, 203, 279 - 287 and Prayer for Relief), claims that the City had failed to issue building permits (see paragraphs 73(d) and 210), and claims that the City had failed to issue renewals of K & P's business license (see paragraphs 73 (a), 201, 223, 235 and Prayer for Relief).

LLC, and (3) K & P, Inc.

On April 8, 2008, through the filing of an Amended Complaint (Doc. 75), four adult entertainers, Jane Roe I, Jane Roe II, Jane Roe II and Jane Roe IV, entered the case as new Plaintiffs. This amendment added no new claims or counts, but allowed the adult entertainers to assert claims both on their own behalf and as representatives of a putative class of similarly situated adult entertainers.

However, the Jane Roe Plaintiffs never sought class certification, never received any damages or other relief in this case, were dismissed from the case (see Doc. 144) before the parties entered a consent decree, and never filed a motion for attorney fees or costs in this case.

Three complaints were drafted and filed in this case. There were 3 motions for summary judgment filed in this case[2], but the case was resolved before going to trial.

Under the settlement reached, the parties agreed to the entry of a consent decree (Doc. 145), under which the City agreed to pay the remaining Plaintiffs the sum of $2,950,000 in full satisfaction of their damage claims, but the parties reserved the issue of the remaining Plaintiffs' request for attorney fees under 42 U.S.C. §1988.

On October 4, 2011, the remaining Plaintiffs filed their Motion for Attorney Fees and Costs. (Doc. 148), which was referred to the Magistrate for decision.

In their motion, Plaintiffs have requested a staggering $1,532,640.61 in attorney fees and

---

[2] The remaining Plaintiffs' second motion for summary judgment focused almost exclusively on the City's sign ordinance provisions. The trial court rejected all of the remaining Plaintiffs' facial challenges to the ordinance provisions, ruling in the City's favor, and the Sixth Circuit affirmed these rulings on appeal.

costs, or approximately *51%* of the total damage award.[3]

On November 10, 2011, the City filed its Answer and Brief in Opposition to Remaining
Plaintiffs' Motion for Attorney Fees and Costs. (Doc 152) In its brief in opposition, the City
argued that the remaining Plaintiffs were not entitled to several categories of fees and costs, and
that even as to those categories of fees and costs which were recoverable, the number of hours
billed were grossly excessive.[4]

On December 5, 2011, the remaining Plaintiffs filed a reply to the City's response to their
motion (Doc.155) requesting additional costs not contained in their initial petition, and later filed
a supplemental request for still more attorney fees and costs. (Doc. 157.)

On June 28, 2012, the parties appeared before the Magistrate for hearing on the remaining

---

[3] The City is mystified by the remaining Plaintiffs' repeated claim that based on the
settlement figure, "the fees sought by Plaintiffs . . . (including fees to prepare the fee petition)
[were] "within 2.6% of a 'standard' 1/3rd contingent fee of the damage award." See Plaintiff's
Objections to Magistrate's Report and Recommendation (Doc. 164), at page 1.  In this case, the
remaining Plaintiffs sought total attorney fees (including those related to the fee petition) in the
amount of $1,213,729.50.  That figure (which does not include costs) is 41.1% of the settlement
figure.

[4] The City created charts attempting to summarize the amount of time spent on various
matters, but this was difficult due to the remaining Plaintiffs' extensive "block billing" (combining
multiple tasks under one time entry), and sometimes ambiguous time descriptions.  Because many
of the time entries were objectionable on more than one ground, there was some overlap in some
of the charts.  Contrary to the remaining Plaintiffs' assertions, this was not a bad faith attempt at
"double dipping."  The City did not request the Magistrate to reduce the billing entries by more
than 100%, as the remaining Plaintiffs claim, but asserted alternative reasons why certain entries
were objectionable.  The City could not anticipate which, if any, of its arguments the Magistrate
would find persuasive, and therefore presented multiple arguments often relating to some of the
same entries.  Notably, the City's response did not request a reduction in a specific amount, but
merely that the remaining Plaintiffs recover a far lower amount than they had requested.  Nothing
was misleading or deceptive in the City's charts - each chart specifically restated the exact time
entries summarized, so that it would be a simple matter to determine if any individual entries were
counted more than once.

Plaintiffs' motion.

On May 23, 2013, the Magistrate issued a Report and Recommendation. (Doc.162.)  In his report and recommendation, the Magistrate agreed with the City that the remaining Plaintiffs' fee and cost request was excessive in certain respects, but still recommended a sizable award - $372,118.19 in attorney fees and costs in the amount of $13,283.93, for a total award of $385,401.12.

On June 5, 2013, the remaining Plaintiffs filed Objections to the Magistrate's Report and Recommendation.  (Doc. 164.)

The City files this response to such Objections.

<strong>ARGUMENT</strong>

I.    **GENERAL PRINCIPLES**

As this Court noted in <u>Morris v. McQuiggin</u>, 2013 U.S. Dist. LEXIS 65250, 3-5 ( E.D. Mich. May 8, 2013) (Cohn, J) (attached as **Exhibit A**), when a party files timely objections to a magistrate judge's opinion and order concerning a nondispositive matter, the district judge "must consider [these] objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id.

An objection that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. As this Court confirmed in <u>Morris v. McQuiggin</u>, and other cases, such as <u>Dowdy-el v Caruso</u>, 2013 U.S. Dist LEXIS 73612

(attached as **Exhibit B**) and <u>Shwensow v United States</u>, 2010 U.S. Dist. LEXIS 26529 (attached

as **Exhibit C**):

> An "objection" that does nothing more than state a disagreement with a magistrate
> judge's suggested resolution, or simply summarizes what has been presented
> before, is not an objection as that term is used in this context. Howard v. Sec'y of
> Health and Human Servs., 932 F.2d 505, 508 (6th Cir. 1991).

The remaining Plaintiffs' Objections to the Magistrate's Report and Recommendation are

essentially re-statements of the same arguments already made to and rejected by the Magistrate,

and are therefore not proper objections within the meaning of Fed.R. Civ. P. 72 and 28 U.S.C. §

636(b)(1).  Nevertheless, the City will attempt to respond to them in a concise[5] manner.

## II   THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY REDUCED THE ATTORNEY HOURS REQUESTED BY THE REMAINING PLAINTIFFS BY 60% WHERE THE TIME FOR WHICH THE REMAINING PLAINTIFFS SOUGHT COMPENSATION WAS GROSSLY EXCESSIVE.

The remaining Plaintiffs argue that the Magistrate's Report and Recommendation

improperly reduced the attorney hours they requested by 60%[6].  However, as the Magistrate

noted, it is entirely appropriate to reduce the amount of fees and costs requested in a section 1988

motion by a specific percentage.  See <u>Saieg v City of Dearborn</u>, 2012 WL 787261 (E.D. Mich

---

[5] The City is mindful that "a request for attorney fees should not result in a second major
litigation." <u>Hensley v Eckerhart</u>, 461 U.S. 424, 438 (1983).

[6] The City feels ethically bound to point out an apparent error in the Magistrate's
mathematical computations.  At pages 13 to 14, the Magistrate states that excluding the amount
claimed for the 2003 lawsuit, and reserving discussion of costs, expert fees, and the fee
enhancement request, the remaining Plaintiffs' request for attorney fees totalled $1,049,994.50,
which included $56,795 for preparation of the fee request.  The Magistrate then subtracted the
amount claimed for the fee petition, to arrive at a figure of $903,199.50 for the total amount
claimed exclusive of the fee petition, and reduced this by 60%, to arrive at a figure of
$361,279.80.  However, $56,795 subtracted from $1,049,994 actually equals $993,199.50, not
$903,199.50.  A 60% reduction in this this figure is $397,279.60

2012); Kirsch v Fleet St. Ltd., 148 F.3d 149, 173 (2d Cir. 1998); Gates v Deukmejian, 987 F. 2d

1392, 1398 (9th Cir. 1992).

While the remaining Plaintiffs cite some cases in which courts have disapproved reductions

in fees and costs requested, the Magistrate has cited other cases in which large reductions have

been held appropriate.

But each case must be reviewed on its own facts.  The City submits that the cases the

remaining Plaintiffs have cited did not involve the same degree of blatant excessiveness that is

clear in this case.  As the City's brief in opposition to the motion for fees and costs pointed out,

by way of example:

- In their original submission, the remaining Plaintiffs's attorneys claimed to have spent
  4,578.25 hours on this case and the 2003 litigation (4,121.05 + 457.20), *more than 3
  times* the 1,217.70 hours (1,172.20 + 45.5) the City spent on the two cases.

- Plaintiffs requested payment of attorney fees of **$141,764.00** in attorney fees (**457.20
  hours**) and costs of $1,616.58 related to the 2003 case.  The 2003 lawsuit was filed on
  December 4, 2003.  *Twenty-seven days later*, on December 31, 2003, the court entered an
  order and a judgment, effectively ending the City's involvement in the case.  City Law
  Department attorney James Noseda represented the City of Detroit in that case, and
  received some assistance from a paralegal in the case.  Mr. Noseda spent 44 hours in
  defending the City in the 2003 case, and a City paralegal spent 1.5 hours in the case, for a
  total of 45.5 hours.

- The remaining Plaintiffs attempted to justify their request for attorney fees related to the
  2003 action by claiming that the present lawsuit was merely a "re-filing" of the 2003 case
  raising basically the same issues.  However, the Shafer firm spend a staggering *$90,370.00
  (311.1 hours)*[7] just on the preparation of the initial complaint in this case!!!  Plaintiffs
  cannot have it both ways.  If the complaint filed in this case was basically the same as the
  complaint filed in the 2003 case, and this case was merely a "re-filing" of the 2003 case, as
  the remaining Plaintiffs asssert, there is no reason why the Shafer firm would have needed

---

[7] These billings also include some time spent toward the preparation of a motion (on
information and belief, for preliminary injunction) which was never filed.  However, because of
the Shafer firm's use of block billing, it is impossible to tell how much time was actually devoted
to that work.

to spend *nearly 2 entire months* just to prepare the initial complaint they filed in this case.

- The motion requesting leave to file the first amended complaint (Doc. 46) emphasized the *limited changes* to be made through the proposed first amended complaint, at page 2: "This motion to amend *does not seek to add new counts, or new causes of action, but rather seeks only to add additional Plaintiffs* so that those people associated with Plaintiff K & P Inc.'s business establishment who have been directly damaged by the unlawful and unconstitutional actions of the City will be able to obtain appropriate relief as a result of this Court's anticipated rulings in this action." In other words, the First Amended Complaint simply added 4 additional plaintiffs to this case and requested they be certified as representatives of a class of similarly-situated adult entertainers, but didn't add any new counts, claims or allegations. These limited changes could have been drafted in a single afternoon. However, the Shafer firm's billings show 70.5 hours relating to the actual preparation of the First Amended Complaint!!![8]

- The Shafer firm spent *221.7 hours* on research and preparation of the first motion for summary judgment, not including additional time later spent on replies, court appearances and appeals.

- The Shafer firm spent an additional *268.8 hours* related to the second motion for summary judgment, relating to the City's sign ordinance provisions.

- In regard to the remaining Plaintiffs' third motion for summary judgment, the Shafer firm billed an incredible *277.60 hours* (again, not including time concerning replies or court appearances). The remaining Plaintiffs sought payment of $51,860 just regarding the time spent up to the date this motion was filed.

- Finally, the Shafer firm billed an unbelievable *249.8 hours* to the preparation of its initial motion[9] for attorney fees and costs, and the remaining Plaintiffs requested payment of **$65,435** just for this work! Given that Bradley Shafer's practice over the last 23 years has been devoted almost exclusively to cases similar to this one, it seems likely that he and his firm would have prepared and argued dozens of motions seeking attorney fees under 42 U.S.C. §1988, and thus would be very familiar with the procedures, law and proofs concerning such motions. Why, then, would it allegedly take his firm *more than 6 full weeks* simply to prepare the original motion for attorney fees?

---

[8] The City added up only those entries showing actual *preparation* of the first amended complaint, rather than entries related solely to related research, communications, etc.

[9] The remaining Plaintiffs also sought an additional **$21,980** in attorney fees for the preparation of a reply to the City's brief in opposition to their petition.

Given these facts, the Magistrate had ample evidence upon which to conclude that the remaining Plaintiffs' request for attorney fees was excessive. In light of the evidence presented, his reductions were not "arbitrary."[10]

### III.   THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY REDUCED THE ALLEGED OUT OF POCKET COSTS REQUESTED BY THE REMAINING PLAINTIFFS BY 60%

Just as requests for attorney fees may be reduced where they are excessive or unreasonable, costs may be reduced or disallowed on a section 1988 motion for the same reason. Northcross v Bd. of Educ of Memphis City Sch., 611 F.2d 624 (6th Cir. 1979); Gratz v Bollinger, 353 F.Supp.2d 929 (E.D. Mich 2005); Havard v Wayne County, 2012 WL 3583324 (E.D. Mich 2012). It is logical to assume that the more attorney time is spent on a matter, the more costs of various types will be incurred. Therefore, since there was clear evidence showing that the remaining Plaintiffs' time spent on the case was excessive, requiring a significant reduction in the fees awarded, it was logical for the Magistrate to reduce the costs they requested by the same ratio.

### IV.   THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY DENIED THE REMAINING PLAINTIFFS' REQUEST TO RECOVER ATTORNEY FEES AND COSTS IN REGARD TO CASE NO. 03-74887, WHICH WAS SETTLED BY THE PARTIES AFTER ONLY 27 DAYS ON THE EXPRESS CONDITION THAT NO COSTS OR ATTORNEY FEES WOULD BE RECOVERABLE.

The remaining Plaintiffs continue to assert that they should be permitted to recover their

---

[10] The remaining Plaintiffs claim that Magistrate Whalen's reductions are improper, because he failed to acknowledge that their attorneys exercised "billing judgment" in voluntarily reducing the amount of fees sought. But the amount of reductions made by the Shafer firm were minuscule (5.8%) compared to the total amount they ultimately requested, and even after these reductions were made, the total amounts requested were still clearly excessive, as shown above.

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                8

attorney fees and costs related to the 2003 lawsuit.  (As noted previously, the remaining Plaintiffs

requested payment of attorney fees of **$141,764.00** in attorney fees (**457.20 hours**) and costs of

$1,616.58 related to the 2003 case, which was resolved only 27 days after it was filed.)  However,

the Magistrate correctly noted that the 2003 case was settled through a stipulated order in which

the Plaintiffs expressly waived the right to seek attorney fees.

**V.     THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY
        DENIED THE REMAINING PLAINTIFFS' RECOVERY OF ATTORNEY FEES
        AND COSTS IN REGARD TO TIME INCURRED RELATING TO THE "JANE
        ROE" PLAINTIFFS (WHO WERE DISMISSED FROM THE CASE, DID NOT
        PREVAIL ON ANY CLAIMS AND DID NOT FILE A MOTION SEEKING TO
        RECOVER ANY FEES) AND IN REGARD TO THE DETROIT BOARD OF
        ZONING APPEALS PROCEEDINGS.**

The remaining Plaintiffs object that the Magistrate improperly denied their request for

attorney fees incurred on behalf of the Jane Roe Plaintiffs.  But these were separate parties with

separate claims, who received no damages or other relief in the lawsuit[11], who were dismissed

before the consent decree was entered.  The remaining Plaintiffs inaccurately state that the

Consent Decree was entered before the Jane Roe Plaintiffs were dismissed.  The opposite is true.

The Jane Roe Plaintiffs were formally dismissed[12] on August 9, 2011 (Doc 144); the Consent

---

[11] The First and Second Motions for Summary Judgment were filed *before* Jane Roe I,
Jane Roe, II, Jane Roe III and Jane Roe IV were added to the case.  In regard to the Third
Motion for Summary Judgment, the Court noted, in its September 8, 2010 Order granting the
motion in part and denying the motion in part (Doc. 122) that *"It should be noted that only the
corporate Plaintiffs are directly involved in the now pending  summary judgment motion
before the court."*  Document 123, which requested the Court to alter or amend its September 8,
2010 order, confirms that the third motion for summary judgment involved only the corporate
Plaintiffs, because this motion was filed only by HDV, 415 East Congress and K & P, not by any
of the individual Plaintiffs.

[12] In fact, the Jane Roe Plaintiffs' claims had been abandoned well before this.  The Shafer
firm never provided any discovery responses on their behalf, made no mention of them
whatsoever in the trial brief filed (Doc. 138) on March 25, 2011, and had agreed to dismiss them
well before trial.

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                9

Decree (which could only affect current parties) was entered on August 23, 2011 (Doc. 145). The City's attorney ***never agreed*** that the Jane Roe Plaintiffs were prevailing parties.

Because the Jane Roe Plaintiffs had separate and independent claims[13], only they would have had standing to seek to recover the attorney fees and costs incurred on their behalf. The cases cited by the remaining Plaintiffs are distinguishable, because they involve cases where parties whose claims were unsuccessful were still permitted to file a motion to recover attorney fees, whereas in this case, the Jane Roe Plaintiffs never filed a request to recover attorney fees in the first place. (Of course, they have waived the right to do so at this late date.)

The Magistrate correctly disallowed fees and costs related to the Detroit Board of Zoning Appeals ("BZA") proceedings, and the criminal matters involving City Councilwoman Monica Conyers and Sam Riddle. As the Magistrate correctly observed, the Detroit BZA proceedings related to the City's allegations that K & P had intensified its nonconforming use by increasing the number of dancers and the number of days on which entertainment was provided, and expenses in those matters were therefore not reasonably expended in regard to the present lawsuit, within the meaning of Webb v County Board of Education, 471 U.S. 234 (1985).

The Magistrate also correctly noted that Ms. Conyers and Mr. Riddle were "rogue" City functionaries (and therefore not acting on behalf of the City), the City of Detroit was not a party to the Conyers-Riddle criminal proceedings, the relief sought in the present case did not depend on the guilt or innocence of Ms. Conyers or Mr. Riddle, and there were no First Amendment

---

[13] In particular, the corporate Plaintiffs did not have standing to raise the Jane Roe Plaintiffs' class action claims. See Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 41 L. Ed. 2d 706, 94 S. Ct. 2925 (1974); Jerelds v. City of Orlando, 194 F. Supp. 2d 1305, 1326 (M.D. Fla. 2001) Richardson v. Ramirez, 418 U.S. 24, 65 (U.S. 1974) ("Art. III restricts standing to bring a class action to the ***actual members*** of the class.") (Emphasis added.))

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                    10

issues in that case. Therefore, it would be inappropriate to force the City of Detroit to pay the fees and costs allegedly incurred in that matter.

## VI.   THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY DENIED THE REMAINING PLAINTIFFS' REQUEST FOR AN ENHANCEMENT TO THE FEE AWARD.

The remaining Plaintiffs also object that the Magistrate should have recommended they recover an additional 15% "enhancement" in attorney fees and costs, on top of the already excessive fees and costs contained in the billing statements submitted.   The Magistrate's Report correctly noted that an enhancement, or multiplier, to a fee award is inappropriate except in very exceptional circumstances. See Perdue v Kenny A., 559 U.S. 542 (2010); Blum v. Stenson, 465 U.S. 886, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546; 106 S. Ct. 3088; 92 L. Ed. 2d 439 (1986) ("Delaware Valley I"). Indeed, in Delaware Valley I, three Justices observed that *the Court's standards "heighten[ed] the showing required [for an enhanced fee award] to the point where it may be virtually impossible for a plaintiff to meet."* Id. at 3100 (Blackmun, J., concurring in part and dissenting in part).

The Magistrate correctly noted that there was nothing exceptional about this case which would warrant an enhanced fee award.

## VII.   THE MAGISTRATE'S REPORT AND RECOMMENDATION PROPERLY LIMITED THE FEES AND COSTS RELATED TO THE REMAINING PLAINTIFFS' MOTION FOR ATTORNEY FEES TO 3% OF THE TOTAL FEES AND COSTS RECOMMENDED BY THE MAGISTRATE, PURSUANT TO COULTER V TENNESSEE, 805 F.2D. 146 (6TH CIR. 1986).

As noted above, the remaining Plaintiffs sought a whopping **$78,775.00** in attorney fees (based on 322.4 hours of attorney time, *which is over two entire months*!) just in regard to the

preparation of their pleadings in connection with their fee petition itself. The Magistrate's Report and Recommendation confirmed that in <u>Coulter v Tennessee</u>, 805 F.2d. 146, 151 (6th Cir. 1986), the Sixth Circuit had held that the hours litigating attorney fees should not exceed 3% of the total award for attorney hours in the underlying case where a settlement is reached. The Magistrate noted that based on the remaining Plaintiffs' original request for fees for the underlying case, this would set a cap of $33,379.82 for the fee petition in this case. However, because the Magistrate reduced the amount of compensable attorney fees in the underlying case to $361,279.80, he recommended an award of fees related to the fee petition in the amount of $10,838.39.[14]

The remaining Plaintiffs argue that for several reasons, the Magistrate "simply gets <u>Coulter</u> wrong." They argue, first, that this case involved "unusual circumstances" not present in <u>Coulter</u>, because "the City fought to the death on every single issue," and therefore caused the case to go on for several years. This is entirely untrue. Plaintiffs are entirely responsible for the length of time this case proceeded. They filed needlessly lengthy complaints, and three separate motions for summary judgment spaced over multiple years. All of Plaintiffs' motions could have been filed at the outset of the case, since each involved primarily legal issues not requiring discovery. Moreover, on one of the key issues giving rise to this case - the failure of the City to approve the transfer request and its later denial of the transfer under the City's "Procedures and Criteria for the Approval/Disapproval of MLCC Activity Permits" - the City *conceded* that the procedures and criteria failed to contain definite and objective criteria for the issuance or transfer of topless activity permits and that they failed to impose specific deadlines for making decisions

---

[14] The City agrees with the Magistrate's methodology, but because of the math error noted at page 5, it appears that correct cap should have been 3% of $397,279.60, which is $11,918.38.

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD            12

on such applications.[15]  (See Doc. 105, p. 10.) This is hardly "fighting to the death."

The remaining Plaintiffs complain that the City filed a 43-page response with 29 exhibits

to their fee petition, but fail to acknowledge that their petition "consumes 45 page (37 pages

excluding table of authorities, etc.) with 225 pages of exhibits" and that Mr. Shafer's affidavit

alone (Plaintiffs' Exhibit B) weighs in at 37 paragraphs in 22 pages." See Report and

Recommendation at page 9.  It is simply preposterous to argue that the City of Detroit needlessly

protracted either the main case or the resolution of the fee award.

Defendants also argue that because the parties did not resolve the case until the day before

trial, the Coulter 3% rule applicable to settlements should not apply, and that the 5% figure the

Coulter court applied to cases proceeding to trial should instead apply.  In response, the City

states that the fact that a case settles shortly before trial - which is very common - is not the type

of unusual circumstance referred to by the Sixth Circuit.  In any event, even if the Court were to

apply a 5% cap, this would still be far less than the exorbitant number of hours the Shafer firm

claims to have spent on the fee petition.

## CONCLUSION

For the reasons stated above, Defendant, the City of Detroit, requests that the Court

overrule the remaining Plaintiffs' objections to the Magistrate's Report and Recommendation,

with the exception of the correction of the mathematical errors noted on pages 5 and 12, and

grant Defendant such additional relief as the Court deems appropriate.

---

[15] The remaining Plaintiffs waited 3 years to raise this issue, in their third motion for summary judgment.  If they had instead filed this motion at the outset of the case, they likely would have obtained an order requiring the transfer of the permit at issue within a year.

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD          13

Respectfully submitted,

/S/ Eric B. Gaabo (P39213)
gaabe@detroitmi.gov
Attorney for Defendant City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, 5th Floor
Detroit, MI 48226
Dated: June 26, 2013                    (313) 237-3052

## CERTIFICATE OF SERVICE:

**DEFENDANT CITY OF DETROIT'S RESPONSE TO REMAINING PLAINTIFFS'
OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION
REGARDING MOTION FOR ATTORNEY FEES AND COSTS**

I state that on June 26, 2013, I served Defendant City of Detroit's Response to Remaining

Plaintiffs' Objections to Magistrate's Report and Recommendation Regarding Motion for

Attorney Fees and Costs on the remaining Plaintiffs in this case by filing these documents

electronically with the U.S. District Court for the Eastern District of Michigan in this matter.

Respectfully submitted,

/S/ Eric B. Gaabo (P39213)
gaabe@detroitmi.gov
Attorney for Defendant City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, 5th Floor
Detroit, MI 48226
Dated: June 26, 2013                    (313) 237-3052

K:\DOCS\LIT\GAABE\A13000\BRF\EG6249.WPD                    14