UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                              Chapter 9

City of Detroit, Michigan,                          No. 13-53846

       Debtor.                                       Hon. Steven W. Rhodes

_____/

# PRE-TRIAL BRIEF OF THE
# DETROIT POLICE OFFICERS ASSOCIATION

# TABLE OF AUTHORITIES

**Cases:**

*In re Aztec Co.,* 107 B.R. 585,588-589 (Bankr. M.D. Tenn. 1989) ..........................3

*In re Barnwell County Hospital*, 471 B.R. 849, 869-870 (Bankr. D.S.C. 2012).......4

*In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) ........................................3

*In re City of Detroit, Michigan*, 504 B.R. 97, 154 (Bankr. E.D. Mich. 2013) ..........5

*In re Corcoran Hospital District*, 233 B.R. 449, 454 (Bankr. E.D. Cal. 1999) ........4

*In re Creekstone Apartments Assoc., L.P.*, 168 B.R. 639, 644 (Bankr. M.D. Tenn. 1994) ........................................................................................................................3,4

*In re Dow Corning Corp.*, 255 B.R. 455, 537-538 (E.D. Mich. 2000) .....................3

*In re Jersey City Medical Center*, 817 F.2d 1055 (3rd Cir. 1987)..............................4

*In re Mount Carbon Metropolitan District,* 242 B.R. 17, 34-35 (Bankr. D. Colo. 1999) ........................................................................................................................3, 4

**Statutes:**

11 U.S.C. Section 943(b) ...........................................................................................5

11 U.S.C. Section 1129(b)(1) ....................................................................................3

42 U.S.C. Section 1983...............................................................................................6

# PRE-TRIAL BRIEF OF THE DETROIT
# POLICE OFFICERS ASSOCIATION (THE "DPOA")

The Detroit Police Officers Association (the "DPOA") submits its Pre-trial Brief as follows:

## INTRODUCTION

The Detroit Police Officers Association urges the Court to reject the argument of some creditors that the "Grand Bargain" unfairly discriminates against them and in favor of pensioners who have accrued benefits under the now frozen Prior Pension Plan.[1] The pensioners' recoveries which the claims of unfair discrimination attack include the accrued benefits of the City's active police officers. Those police officers, like their firefighter counterparts, provide the City's core and essential public safety services. The suggestion that the City does not have an adequate business reason for discriminating in favor of preserving the pension benefits of those workers is specious and will be flatly contradicted by the evidence presented at the confirmation hearing. This is the DPOA's pretrial brief supporting confirmation of the City's Plan. Specifically, the DPOA supports the modest discrimination provided for Class 10 Pension Claims and the City's effort to discharge, through its Plan, the Indirect Employee Indemnification claims involving City public safety workers.

---

[1] Unless otherwise indicated, all capitalized terms are as defined in the City's Sixth Amended Plan for the Adjustment of Debts of the City of Detroit (August 20, 2014) [Dkt. No. 6908] (the "Plan").

# ARGUMENT

## I. The Discrimination in Favor of Class 10 Pension Claims is Not Only Fair, it is Necessary.

The evidence at the confirmation hearing will show, through the testimony of Detroit Police Chief James Craig and others, that the Detroit police officers (and Detroit's other public safety workers as well) face extraordinary and difficult challenges in their daily work. Their morale, when the Petition was filed, was extremely low. DPOA members were underpaid, undermanned and overworked. In addition, DPOA members rely heavily on their pensions in retirement and in the case of disability, as they do not have the safety net of Social Security through their City employment.

Those reasons alone, as set forth herein, amply justify the modest discrimination in favor of the Class 10 Pension Claims. In addition, as addressed by the Retirement Systems and the Retiree Committee, that modest discrimination also resolves a significant and costly dispute whose outcome was far from certain as to the City's right to use of PA 436 and this Court to impair those pension benefits at all.[2]

---

[2] See the *Retirement Systems' Pretrial Brief in Support of Plan Confirmation of Fifth Amended Plan of Adjustment of Debts filed by the City of Detroit, Michigan* [Dkt. 7129, pp. 2-6]; the *Official Committee of Retirees' Pretrial Brief in Support of Confirmation of Fifth Amended Plan for Adjustment of Debts Filed by the City of Detroit, Michigan* [Dkt.7151] and the *Official Committee of Retirees' Memorandum of Law in Support of Confirmation of Fifth Amended Plan for Adjustment of Debts Filed by the City of Detroit, Michigan* [Dkt. 6508, pp.13-15].

## II. The Discrimination is Justified Because it Improves the City's Ability to Provide Adequate Public Safety.

In order to obtain confirmation of its plan of adjustment, the City must show that it can both pay its creditors and provide core and essential services to its residents, businesses and visitors, including police protection. *See, e.g., In re Mount Carbon Metropolitan District,* 242 B.R. 18, 34-35 (Bankr. D. Colo. 1999). Police and fire protection are indisputably core and essential services. Although the Plan must satisfy section 1129(b)(1)'s requirement that it not "discriminate unfairly," *In re Aztec Co.,* 107 B.R. 585,588-589 (Bankr. M.D. Tenn. 1989), discrimination "necessary for reorganization" that has a "rational or legitimate basis" is not unfair. *See In re Dow Corning Corp.*, 255 B.R. 455, 537-538 (E.D. Mich. 2000) (citing *In re Crosscreek Apartments, Ltd.*, 213 B.R. 521, 537 (Bankr. E.D. Tenn 1997)). Thus, courts have found it fair for a debtor to discriminate in favor of its workers over their workers compensation insurer to protect its labor relations, *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996) and to discriminate in favor of trade creditors whose services and products are essential to its successful reorganization*, In re Creekstone Apartments Assoc., L.P.*, 168 B.R. 639, 644 (Bankr. M.D. Tenn. 1994).

In addition, because under chapter 9 the City must be able to provide core and essential services to obtain confirmation of its proposed plan, *In re Mount*

*Carbon Metropolitan District, supra,* the calculus for unfair discrimination must focus more attention on the City's business needs as a debtor, as opposed to those of its creditors. *See, e.g.*, *In re Corcoran Hospital District*, 233 B.R. 449, 454 (Bankr. E.D. Cal. 1999) (recognizing importance of preserving availability of healthcare services by municipal hospital); *In re Barnwell County Hospital*, 471 B.R. 849, 869-870 (Bankr. D.S.C. 2012) (noting hospital's essential role as an ongoing concern to survival of community); *In re Jersey City Medical Center*, 817 F.2d 1055 (3rd Cir. 1987) (upholding municipal hospital's separate classification of contract physicians and 100% payment of their unsecured indemnification claims, while other, separately classified unsecured creditors received significantly smaller recoveries). There is nothing more essential to the City's survival than its ability to provide improved police (and fire) protection.

The City's cash flow problems, its service delivery insolvency and its growing legacy costs created significant obstacles to its ability to reorganize in a manner that would allow it to continue to provide public safety protection. The deplorable working conditions, low morale and underpaid status of its police officers present significant challenges to the City's ability to retain and hire the police officers necessary to allow it to provide adequate police protection. See e.g., Deposition of Chief James Craig, pp. 21-23; 181-185, attached as Exhibit 1; Deposition of Mayor Michael Duggan, pp. 125-126, attached as Exhibit 2. When

4

it found the City eligible for chapter 9, this Court acknowledged the depth of the City's service delivery insolvency and the feasibility challenge it faced when it cautioned that, "No one should interpret this holding that pension rights are subject to impairment in this bankruptcy case to mean that the Court will necessarily confirm any plan of adjustment that impairs pensions", *In re City of Detroit, Michigan*, 504 B.R. 97, 154 (Bankr. E.D. Mich. 2013). Specifically noting the requirements of section 943(b), the Court noted that it would not, "lightly or casually exercise . . . [its] . . . power under federal bankruptcy law to impair pensions." *Id*.

The Grand Bargain, through its outside funding and modest discrimination in favor of pensioners, including active DPOA members, provides a solution that is not only fair, but also essential to the City's obligation to meet its financial and service obligations to its residents and creditors.

### III. The DPOA Supports the Discharge of Section 1983 Indirect Employee Indemnity Claims

DPOA members have rights of indemnification that protect them while acting in the good faith performance of their duties. For the same reasons that the DPOA supported the City's motion to extend the automatic stay to its members at the outset of this case, the DPOA supports the Plan's discharge of the Indirect

5

Employee Indemnity Claims, including any claim brought under 42 U.S.C. § 1983 against one of their current or former members.

### IV. In Supporting the Plan, the DPOA Reserves its Right to Object to Any Subsequent Modifications of the Plan.

In asserting its support for the Plan, the DPOA reserves its right to object to any further Plan amendments, supplements, or modifications thereof that impact its or its members' rights under the Plan. The DPOA also reserves its right to object to any freestanding motions, to the extent that they impact the treatment or pension rights of current DPOA members. This includes, but is not limited to, any Plan amendments, supplements, or versions, or any freestanding motions that seek to (i) modify the treatment under Class 10 of the Fourth Amended Plan as voted on by DPOA members, or (ii) modify through further amendments or supplements to the Plan, the New PFRS Active Pension Plan and/or Article II.B.3.q.ii.E, Accrual of Future Benefits under any circumstances other than with the consent of the DPOA.

## RELIEF REQUESTED

Subject to the City's presentation of proofs that meet the other requirements of the Bankruptcy Code, the DPOA requests that the Plan be confirmed.

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: /s/ Barbara A. Patek
Earle I. Erman (P24296)
Craig E. Zucker (P39907)
Barbara A. Patek (P34666)
Counsel for the Detroit Police Officers Association
400 Galleria Officentre, Suite 444
Southfield, MI 48034
Telephone: (248) 827-4100
Facsimile: (248) 827-4106
E-mail: bpatek@ermanteicher.com

DATED: August 29, 2014

F:\CHAP 9\DETROIT\Plan of Adjustment\Pre-Trial Brief.docx

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: Chapter 9

City of Detroit, Michigan, No. 13-53846

      Debtor. Hon. Steven W. Rhodes
_____/

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 29, 2014, the foregoing document was electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

      Respectfully submitted,

      ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

      By: /s/ Barbara A. Patek
          Earle I. Erman (P24296)
          Craig E. Zucker (P39907)
          Barbara A. Patek (P34666)
          Counsel for the Detroit Police Officers Association
          400 Galleria Officentre, Suite 444
          Southfield, MI 48034
          Telephone: (248) 827-4100
          Facsimile: (248) 827-4106
          E-mail: bpatek@ermanteicher.com

DATED: August 29, 2014

1