# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
|  | ) | Hon. Steven W. Rhodes |
|  | ) |  |
| _____ | ) |  |

## CREDITOR MICHIGAN AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALs' RESPONSE TO DEBTOR's OBJECTION TO PROOFS OF CLAIM (DOCKET NUMBER 2958)

Now comes Michigan AFSCME Council 25 and its affiliated Detroit Locals, with this response to the Objection of the City of Detroit (Docket No. 4876), filed pursuant to Sections 105 and 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure Local Rules of the Bankruptcy Court of the Eastern District of Michigan (the "Local Rules"), concerning proof of claim number 2958 ("Claim") filed by said Coalition, and states as follows:

## I.  INTRODUCTION

Michigan AFSCME Council 25 and its affiliated Detroit Locals (AFSCME) have filed proof of claim number 2858 (AFSCME Claim), alleging varied sources of liability.  The City of Detroit objects generally, due to purported lack of legal

merit or duplication of claims. The objections are not specific about any particular element of the Claim, but make broad brush observations.

AFSCME concurs that continued efforts at resolution between the parties is in order. It is true that a number of the grievances addressed in the Claim have been resolved in principle, with signed agreements forthcoming. It is also true that certain aspects of the asserted damages within the Claim are duplicated within the City's proposed plan of adjustment; the proof of claim as filed on February 21, 2014 could not have accounted for subsequent developments in the bankruptcy litigation. AFSCME disagrees, however, that the Claim is without merit. Thus, resolution efforts amongst the parties should establish all aspects of the Claim still left in dispute.

With its Objections, the City has sought to treat the October 1, 2014 hearing date (Docket No. 5454) as a pre-hearing conference, because the volume of disputes within the Claim prevents "a typical claim objection proceeding." AFSCME concurs with this suggestion. Even more, AFSCME suggests that disputed aspects of the Claim be placed before a labor arbitrator for his/her assessment of the merit and value of the claims.

Nonetheless, below AFSCME reviews the legal merit of its claims.[1]

---

[1] The length or absence of a summary below is not indicative of a diminution in the value of the claim. Further, AFSCME reserves all rights to advance all arguments and categories of claims contained within its Proof of Claim but not specifically

## II. EVIDENCE AND ARGUMENT TO BE PRESENTED REGARDING THE PROOFS OF CLAIM

**A. Refusal to bargain AFSCME Local 1023: MERC Case Number D13 C-0331**

AFSCME Local 1023 is a union which represents emergency service operators (911 operators) for the City of Detroit Police Department. As a "public safety" union (representing public safety employees), the local resolves its disputes in negotiating a new union contract with the City through "binding arbitration"; where a neutral third party decides on the provisions to be contained within a union contract.[2] This statute is commonly known as "Act 312", MCLA §§ 423.231-423.247. Importantly, Act 312 is a separate statute from the Public Employment Relation Act, MCLA §§ 423.201-423.217. Under Act 312, either the union or employer may initiate a binding arbitration proceeding. MCLA § 423.233.

On March 16, 2011, the state of Michigan passed Public Act 4 – the emergency manager law.[3] Among other things, this statute permitted a public employer, in certain conditions, to avoid compliance with one section of PERA, MCLA § 423.215(1). MCL § 141.1514a(10) (no duty to comply thirty days after a consent agreement is executed); MCL § 141.1526(3) (no duty to comply where the

---

addressed here.

[2] Technically, Act 312 sets up a three-person panel of arbitrators to rule on pending disputes in contract negotiations. The union and employer each select a panel member, and the chair of the panel is the neutral arbitrator. MCLA § 423.235

[3] The Local Government and School District Fiscal Accountability Act.

local government is placed in receivership). Section 215(1) obligates the employer to bargain with its unions. On April 10, 2012, the City's consent agreement with the state became effective, thus the City was no longer subject to Section 215(1) of PERA as of May 10, 2012. In November 2012, Public Act 4 was rejected by a state-wide vote of Michigan's citizenry. On December 26, 2012, Public Act 436 (MCLA §§ 141.1541-141.1575) was passed, and made effective March 28, 2013.[4] Public Act 436 also contains similar provisions alleviating a public employer from complying with Section 215(1).

On March 12, 2013, AFSCME Local 1023 requested MERC mediation to assist in negotiations (*Exhibit 1*) and made a written request to bargain a new contract to the City. (*Exhibit 1*) After the effective date of Public Act 436, on April 3, 2013, the City responded by refusing to bargain with the Local, citing to Public Act 436 and the fact that the City was under receivership. (*Exhibit 2*) On June 3, 2013, Local 1023 requested binding arbitration under Act 312. (*Exhibit 3*)

In requesting Act 312 arbitration, despite the suspension of Section 215(1), AFSCME took the position that Act 312 – a separate state statute from PERA – mandated the binding arbitration process, irrespective of the Public Act 436 and its

---

[4] Between the November 2012 repeal of Public Act 4 and the March 28, 2013 effective date of Public Act 436, the "emergency manager" law in effect in Michigan was a 1990 statute commonly known as Public Act 72.

reference to Section 215(1) of PERA. The City took the position that PA 436 obviated its Act 312 obligation to participate in binding arbitration.

In a proceeding with other public safety Detroit unions, the MERC issued a split decision that public safety unions of employers placed in receivership, under PA 436, are not eligible for Act 312. *City of Detroit*, 27 MPER ¶ 6 (2013) Thus, on June 21, 2013, MERC's staff ordered that AFSCME Local 1023's Act 312 petition was being dismissed administratively, based upon the June 14th decision of the MERC in other Detroit public safety unions. (*Exhibit 4*)

For its Claim, AFSCME contends that this decision was in error. The Act 312 statute is clear as to how a union establishes eligibility for participation in binding arbitration:

> "Whenever in the course of mediation of a public police or fire department employee's dispute, except a dispute concerning the interpretation or application of an existing agreement (a "grievance" dispute), the dispute has not been resolved to the agreement of both parties within 30 days of the submission of the dispute to mediation, or within such further additional periods to which the parties may agree, the employees or employer may initiate binding arbitration proceedings by prompt request therefor, in writing, to the other, with copy to the employment relations commission.

MCLA § 423.233. The Act continues by mandating what the parties must do in the furtherance of binding arbitration: Section 234 (the parties "shall" choose a panel member within 10 days), Section 235 (MERC "shall" select a neutral arbitrator within 7 days of the request for arbitration), Section 236 (the arbitrator "shall" call and begin the hearing within 15 days after appointment), Section 240

5

(the decision of the arbitrator "shall" be final and binding, "if supported by competent, material, and substantial evidence on the whole record …").

Importantly, the statute prohibits the employer (and union) from changing employment terms during the pendency of the Act 312 proceeding:

> "During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act."

MCLA § 423.243. Thus, according to the statute, the City cannot unilaterally implement employment terms (i.e., CET) on a party which has sought binding arbitration under Act 312.

The requirements to engage in Act 312 proceedings are contained within the statute. A request in writing is the chief requirement. The Commission has confirmed that Appellant here made such a request. (*Exhibit 4*) MERC's opinion in *City of Detroit*, 27 MPER ¶ 6 (2013) relied on the fact that the duty to bargain in PERA – as referenced in another statute – was no longer present. However, there is no need for the duty to bargain within PERA to exist, in order for Act 312 to be operative. Indeed, the above-quoted Section 240 of Act 312 outlines that statute's self-contained duty to bargain. The employment conditions "shall not be changed by action of either party" without "consent of the other [party]"; stated another way, without bargaining to agreement. The duty to bargain within Act 312 is actually stronger than the duty to bargain within PERA. An employer under PERA

6

is allowed to make adjustments in employment conditions after bargaining with the union to a state of "impasse". Under Act 312, however, even reaching impasse does not permit the employer to change employment conditions without agreement of the union.

Act 312 is supplementary to PERA. However, the state legislature clearly expressed its will of maintaining the employer's obligations to comply with Act 312 – even *vis-a-vis* the emergency manager law. The legislature amended Act 312 with 2011 Public Act 116, during the same legislative session in which it passed the initial emergency manager law – PA 4. In doing so, the legislature did not exempt governments subject to PA 4 from applicability to Act 312. This fact demonstrates a willingness of the legislature to permit Act 312 proceedings to continue, even in the event of an emergency manager being appointed. Act 312 contains certain exemptions from the Act. It defines the employees who may utilize the act and exempts certain groups. It also clarifies that the Act does not apply to "persons employed by a private emergency medical service company who work under a contract with a governmental unit …" or administrative or supporting employees working in emergency medical services. MCLA § 423.233. The legislature could have easily exempted employees who work for governments subject to PA 4 in Section 233; it did not. *Expressio unius est exclusio alterius*.[5]

---

[5] The express mention in a statute of one thing implies the exclusion of other

Even more, explicit language of the 2011 amendments to Act 312 acknowledges that public employers under an emergency manager will still be obligated to participate in Act 312 proceedings. Under 2011 PA 116, The legislature adopted certain factors that the arbitration panel must consider in reaching a final decision. One of those factors is: "Any law of this state or any directive issued under the local government and school district fiscal accountability act, **2011 PA 4**, MCL 141.1501 to 141.1531, that places limitations on a unit of government's expenditures or revenue collection." MCLA § 423.239(1)(a)(iv)(**emphasis** added). Thus, the state legislature clearly contemplated Act 312 when it drafted the PA 4. Nowhere in PA 116 are localities under an emergency manager not obligated to comply with Act 312. Instead, the arbitration panel is merely supposed to include "limitations . . . [on] expenditures or revenue collection" – due to the application of the emergency manager law – as a factor in reaching a decision. Hence, the interpretation of Act 436 to exempt governments in receivership altogether creates a clear conflict with the amended Act 312, and makes the above-quoted Section 9(1)(a)(iv) completely superfluous.

The Legislature is presumed to be aware of all existing statutes when enacting a new statute. *Cameron v. Auto Club Ins Ass'n.,* 263 Mich. App. 95, 98 (2004). Statutes that appear to conflict should be read together and reconciled, if

similar things." *Bradley v. Saranac Community Schools Bd. of Ed.*, 455 Mich. 285, 298 (1997).

possible. *World Book, Inc. v. Dep't. of Treasury,* 459 Mich. 403, 416 (1999). When two statutes lend themselves to an interpretation that avoids conflict, that interpretation should control. *Jackson Community College v. Dep't. of Treasury,* 241 Mich. App. 673, 681 (2000). The interpretation should give effect to each statute "'without repugnancy, absurdity, or unreasonableness.'" *Livonia Hotel, LLC v. City of Livonia,* 259 Mich. App. 116, 131 (2003), quoting *Michigan Humane Society v. Natural Resources Comm.,* 158 Mich. App. 393, 401 (1987). Here, MERC's ruling nullifies Act 312, in violation of these doctrines.

For these and other reasons, Claimant contends that MERC erred in dismissing its Act 312 petition and denying that local binding arbitration.  As a result of this dismissal, the City imposed significant wage and benefit concessions upon the Local 1023 membership.

## B.   Local 207, 2394 and 2920 DWSD refusal to bargain / Case Number C13 D-069

AFSCME represents three locals within the City of Detroit Water and Sewerage Department; Locals 207, 2920 and 2934.  Prior to the time the City was no longer subject to Section 215(1) of PERA, due to the City being place in receivership, the AFSCME unions sought to bargain a new union contract. AFSCME was unable to secure contracts for all three locals due to the City's bad faith bargaining.  This Claim seeks damages due to the City's illegal conduct.

9

## C. Imposition of furloughs days in February 2013

In February 2013, the City unilaterally imposed furlough days requiring City employees to take unpaid days off work at least twice per month. (*Exhibit 5*) These furlough days represented a 10% loss in income for those employees placed on furlough. Since most civilian employees had already incurred a 10% loss in base pay, this change brought the total loss in income for these employees to 20%.

As described in the Response to Objections filed by the Coalition of Detroit Unions (filed September 1, 2014 and responding to Docket No. 4874), during the period between November 2012 and May 10, 2013, the City's continued obligation with its unions before unilateral change in employment conditions is beyond dispute. The evidence will reveal that in this instance, the City failed to bargain to impasse prior to imposing the additional furlough days. Thus, the imposition violated PERA. The imposition lasted nearly one year for hundreds of furloughed employees. The damages associated with this element of the Claim are the financial losses so incurred.

## D. Detroit refusal to bargain concerning Transportation Locals: Case Number C12 H-157

AFSCME represents two locals within the City Department of Transportation, Locals 214 and 312. The City has refrained from imposing employment conditions on these two locals in the same manner it imposes employment conditions on other employees. This is because the federal

government provides funding for transportation departments of municipalities, released pursuant to the Federal Transit Act, 49 U.S.C. 5333(b) (aka "13(c)"). Under that federal statute, the municipality in receipt of federal funds is obligated to bargain with its unionized employees in good faith. Thus, the City has entered into a 13(c) protective agreement with AFSCME and it two locals.

These locals, however, are part of a city-wide bargaining unit, as determined by Michigan courts. AFSCME Council 25 Detroit locals have been considered one bargaining unit throughout the City. *Michigan Ass'n of Public Employees v. Michigan AFSCME Council 25*, 172 Mich. App. 761 (1988) As such, the changes made to the non-DDOT locals were improper, in that they represented the City severing the city-wide bargaining unit.

## E.    AFSCME Council 25 (13th check ULP). MERC Case No. C12-E-092

On about November 30, 2011, the City passed an ordinance which limited payments into employee annuity accounts and stopped "13th checks" being paid to retirees. By applying this change to union-represented employees and concerning union-negotiated contractual benefits for retirees, the City violated state labor laws. By making these changes, the City ignored its bargaining obligation and repudiated its contractual obligations. AFSCME filed a charge contesting the changes. (*Exhibit 6*)

In February 2013, Administrative Law Judge ("ALJ") Doyle O'Connor of the Michigan Employment Relations Commission ("MERC") heard oral argument on AFSCME's motion for partial summary disposition. Following this Honorable Court's authorization via modification of the automatic stay, on October 4, 2013, ALJ O'Connor issued his Decision and Recommended Order (DRO) granting the AFSCME motion for summary disposition. (*Exhibit 7*) ALJ O'Connor's DRO "restore[s] to the Pension Board" of the Detroit General Retirement System "the discretion previously exercised . . . regarding [distribution of annual] excess earnings" of GRS to "affected retirement plan participants" and explicitly orders that these participants "be made whole by the City to the extent that there is any practical impediment to the Pension Board making those participants whole otherwise." (*Exhibit 7*, pg 24)

In his order, ALJ O'Connor considered the losses realized during the 2011 and 2012 years as the damages in the charge. After that point, the City was under PA 436 and, therefore, the City could make such a change unilaterally. (*Exhibit 7*, pg 18) The ALJ also indicated that the proceedings had not developed to the point where a dollar figure could be conclusively ascertained as to the value of the award. He nonetheless stated the award could be as high as $174,000,000. (Id)

**F.    City of Detroit 2012 negotiations and implementation with Coalition: MERC Case No. C12 D-065, C12 F-125, C13 G-129**

Following the negotiation of a Coalition tentative agreement in February 2012, the City violated state labor laws by refusing to execute that contract but illegally imposing other terms and conditions of employment. This includes wage and benefit concessions for all AFSCME members, which remain in existence today. The reader is referred to the Coalition of Detroit Unions proof of claim, the Coalition response (filed September 1, 2014) to the City Objections to the Coalition proof of claim. (Docket No. 4874) The AFSCME claim represents a share of the Coalition claim, as AFSCME is a member of the Coalition.

**G.    Violation of Privatization Ordinance**

The City of Detroit is a home rule city and is governed by its Charter. In 1997, the citizens of Detroit voted to have a Privatization Ordinance, when it approved the City of Detroit City Charter. The Charter included Section 6-307, which contained provisions requiring the City Council ("Council") to adopt an ordinance establishing procedures for the letting of work to private entities that would displace regularly employed city workers. This Charter provision was adopted by the voters of the City of Detroit.

On March 31, 2004 the City Council of the City of Detroit ("City") exercising its proprietary function adopted Ordinance No. 13-04, City Code Section 18-5-100 et seq., to govern the process of hiring entities to perform

13

services for the City of Detroit, which are performed by individuals employed by the City. Prior to hiring a vendor to perform services performed by City employees, there are various steps which must be completed to provide transparency and properly allow for the existing city employees to actively participate in the bidding process. The Privatization Ordinance requires City Council approval in order to solicit entities for bids, and that the City employees must be provided certain information which will enable them to make a bid. Most notably, the ordinance prohibits the letting of the work without a 2/3 affirmative vote of the City Council.

## H.     City of Detroit/DFFA/MERC: MERC Case No. C11 K-201

AFSCME has approximately thirteen (13) members assigned to the Fire Department of the City of Detroit, Apparatus Unit. Beginning May, 2011, AFSCME received notice that members of the Detroit Fire Fighters Association, Local 344 ("DFFA") were performing the duties performed by the AFSCME membership. In November 2011, AFSCME filed an unfair labor practice charge concerning removal of work from the bargaining unit. (*Exhibit 8*) AFSCME contends that the City illegally removed such work. This element of the claim consists of the lost earnings of the AFSCME members.

## I. City of Detroit longevity claim for AFSCME employees: Claim number 12-000522 and 12-000523; Wayne County Circuit Court Number 13-003430-AA

Under Article 25 of the 2005-2008 AFSCME collective bargaining agreement ("CBA"), employees who worked a minimum amount of hours received a yearly "longevity payment." The amount of the payment was based upon the number of years of seniority, starting with $150 for those who have served for five years and escalating up to a maximum of $750.

Effective October 2010, the City imposed new contract terms on AFSCME employees, which removed the longevity pay. However, many AFSCME members had already worked the requisite number of hours, entitling them to full longevity pay. Further, the members who had worked less than the hour-threshold for a full longevity payment were entitled to prorated longevity payments for hours worked in each month during that year. Despite the clear contractual obligation, confirmed by City managers at the hearing, the City refused to pay any AFSCME members the longevity pay owed.

AFSCME City of Detroit employees, Dean Story and Rosemarie Haynesworth, and on behalf of all members of the AFSCME union who were entitled to longevity pay in December 2010, filed claims with the state of Michigan's Department of Licensing and Regulatory Affairs, Wage and Hour Division ("The Division") for this payment. However, the Division rejected

Plaintiffs' claim. (*Exhibits 9* and *10*)  It rationalized that AFSCME had agreed to eliminate the longevity payment as of January 2011, which is accurate.  However, the claims were for longevity earned during the prior year, which the employees earned and which AFSCME had not agreed to waive on their behalf.

Presently, the claims are on appeal before Wayne County Circuit Court. (*Exhibit 11*)

## J.    Negotiation of Local 542 supplemental agreement: MERC Case Number C07 L-033

A number of AFSCME locals negotiate "supplemental agreements" with various departments in the City of Detroit.   These supplemental agreements, separate and apart from the Master Agreement which most of the AFSCME Detroit Locals negotiate collectively (there are thirteen Detroit Locals which negotiate the Master Agreement), contain provisions unique to that Local and department. AFSCME Local 542 filed an unfair labor practice charge, challenging the City's failure to negotiate its supplemental agreement.

## K.    Detroit & SEMHA: MERC Case No. C05 H-194

In 2005, AFSCME filed a charge to protest the layoff of four individuals from the Detroit Health Department who were immediately rehired by a Detroit contractor, Southeastern Michigan Health Association ("SEMHA"), to perform the same work.  AFSCME alleged that the contractors' performance of unit work was in violation of PERA, and sought to have these employees placed back into the

AFSCME unit. During the litigation of the charge, AFSCME discovered that there were many other former City employees, who had been replaced as SEMHA employees. After a series of motions to dismiss, motions for reconsideration, subpoena litigation, appeals, hearing delays, etc., the evidentiary hearing has yet to be concluded. The charge seeks back pay and benefits for those impacted employees. Additionally, AFSCME Local 457 lost dues for those laid off members as well and the members who were improperly removed from the Local.

**L.     Breach of contract claims**

AFSCME lists a general category of breach of contract claims, including but not limited to grievances. It is believed that a number of the grievances may be resolved in principle, and further discussion will ascertain any remaining grievances or contract claims.

**M.     City of Detroit/Human Services department: Grievance No. 25-01-12 / COA: 12-0077708-CL**

In July and October, 2012, approximately 174 AFSCME members, in Locals 1642, 273 and 457 members, were permanently laid off and replaced with employees from third party companies. These employees were employed at the Health Department, the Department of Human Services and the Workforce Development Department for the City of Detroit. AFSCME argued that the City's actions violated language in the parties' collective bargaining agreement ("CBA").

Initially, the issue was arbitrated. Agreeing with AFSCME, the arbitrator found the City's actions to be in violation of the union contract, and awarded back pay and benefits to the members. (*Exhibit 12*) The City refused compliance with the award, requiring AFSCME to seek and secure confirmation of the award in Wayne County Circuit Court. (*Exhibit 13*) The matter is currently in the Court of Appeals.

## N.     City of Detroit Retirees Health Care: Grievance No. C10 A-025

In 2006, the City changed retiree health care benefits, requiring retirees to incur greater cost for health care. AFSCME filed a grievance on behalf of all AFSCME retirees (approximately 6,000), because the changes violated specific provisions of the union contracts under which the employees retired. After some advancement of the grievance, the parties decided to hold the grievance in abeyance because the retirees had decided to proceed with the litigation in federal court, *Roots et al., v. City of Detroit*, Case No. 12-12848 (E.D. Mich, Cohn).

## O.     Payroll disputes

Repeatedly, the City of Detroit payroll system will not issue correct amounts of pay or benefits on payroll checks of AFSCME members. This problem has escalated over the years, resulting in significant losses of money and benefits for AFSCME members. AFSCME has sought to remedy these discrepancies with the City, however, its efforts have been met with inaction.

**P.     Detroit Service and Maintenance Outsourcing in Downtown Detroit: Grievance Number C09-078**

Beginning in 2009 and successively each year thereafter, the City has reduced the overtime of AFSCME members, due to work performed by private contractors, in the downtown Detroit area. This violation of Article 19 of the AFSCME Master Agreement continued for years. The violations impacted 40-60 employees throughout the period and until the termination of the Master Agreement in July 2012. In the dispute, AFSCME relies upon an arbitration decision concerning similar circumstances on Belle Isle in 2008.

**Q.     Tree Artisan failure to secure license: Grievance Number 727May08**

Arbitrator George Roumell issued a ruling regarding eleven "tree artisan helpers", discharged from the AFSCME bargaining unit. The grievance was granted in that the City was required to pay for training and restore seniority to some employees. The remaining controversy involves one employee, Hayward Prather, who was not reinstated. Ultimately, Mr. Prather became employed within the water department approximately two years later. However, he is owed damages for the two year period in which he was wrongfully discharged.

## III. ARGUMENT

The Bankruptcy Code broadly defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured." 11 U.S.C. § 101(5)(A). Claims also include "a cause of action or right to payment that has not yet accrued or become cognizable." 2 COLLIER ON BANKRUPTCY ¶ 101.05 at 101-38 (2011).

"Tort claims constitute claims, and thus are payable out of the estate...." Id. ¶ 101.05[6] at 101-49; see also In re Edge, 60 B.R. 690, 694 (Bankr. M.D. Tenn. 1986). Claims also include adversarial administrative proceedings. See e.g., In re Halo Wireless, Inc., Nos. 11–42464–btr–11, 3: 11–cv–0058–DCR, 3: 11–cv–0059–DCR; 2012 WL 1190722, at *2-3 (E.D. Kent. April 9, 2012) Courts give the term "claim" the "broadest possible definition. In re Lipa, 433 B.R. 668, 669 (Bankr. E.D. Mich. 2010).

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). A claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Chapter 9 bankruptcies follow § 502 of the bankruptcy code. Objections may be based upon one of the specific, statutory grounds:

Except as provided in subsection (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for service of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property...;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract...;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed....

11 U.S.C. § 502(b).

The party objecting to a proof of claim bears the burden of proof to overcome the prima facie validity of the claim. 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] at 502-17. "To defeat the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" In re McLaughlin, 320 B.R. 661, 665 (Bankr. N.D. Ohio 2005)(quoting Wright v Holm (In re Holm), 931 F.2d 620, 623 (9th Cir.1991)).

AFSCME contends that the City's Objection falls short of reaching the necessary burden of proof. The Objection does little more than spell out general

observations in the proof of claim as opposed to specific concerns addressed. The Objections should be overruled.

WHEREFORE, Michigan AFSCME Council 25 respectfully requests that this Honorable Court overrule the City of Detroit's Objections.

Dated: September 2, 2014      /s/ Richard G. Mack, Jr.

Richard G. Mack, Jr., Esq.
Jack W. Schulz, Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com
jschulz@millercohen.com

Herbert A. Sanders
THE SANDERS LAW FIRM PC
615 Griswold St., Ste. 913
Detroit, MI 48226
Telephone: (313) 962-0099
Facsimile: (313) 962-0044
hsanders@miafscme.org

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
|  | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## PROOF OF SERVICE

The undersigned certifies that on September 2, 2014, the Michigan AFSCME Council 25 certifies that *Creditor Michigan AFSCME Council 25 and its Affiliated Detroit Locals' Response to Debtor's Objection to Proofs of Claim (Docket Number 2958)* was electronically with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
MILLER COHEN PLC
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 566-4787
Facsimile: (313) 964-4490
richardmack@millercohen.com

23