# EXHIBIT 6



# AMENDED CHARGE

Michigan Department of Licensing and Regulatory Affairs
Employment Relations Commission (MERC)
Labor Relations Division
313-456-3510

Authority: P.A. 380 of 1965, as amended. Case No. C12 E-092

| | |
|---|---|
| **INSTRUCTIONS:** File an **original** and **4 copies** of this charge (including attachments) with the Employment Relations Commission at: Cadillac Place, 3026 W. Grand Boulevard, Suite 2-750, PO Box 02988, Detroit MI 48202-2988 or 1375 S. Washington St., Lansing MI 48910. **The Charging Party must serve the Charge on the opposing side within the applicable statute of limitations, and must file a statement of service with MERC.** (Refer to the "How to File a Charge" document under the "Forms" link at www.michigan.gov/merc.)  **Complete Section 1** if you are filing charges against an employer and/or its agents and representatives. —or— **Complete Section 2** if you are filing charges against a labor organization and/or its agents and representatives. | |

**1. EMPLOYER AGAINST WHICH THE CHARGE IS BROUGHT**   Check appropriate box: ☐ Private ☑ Governmental

Name and Address: Lamont Satchel, Director of Labor Relations
City of Detroit
2 Woodward Ave., Ste. 332
Detroit, MI 48226

**RECEIVED NOV 08 2012 MICHIGAN ADMIN HEARING SYSTEM**

**2. LABOR ORGANIZATION AGAINST WHICH THE CHARGE IS BROUGHT**

Name and Address:

**3. CHARGE**

Pursuant to the Labor Mediation Act (LMA) or Public Employment Relations Act (PERA) *(cross out one),* the undersigned charges that the above-named party has engaged in or is engaging in unfair labor practices within the meaning of the Act.

**On an attached sheet** you must provide a clear and concise statement of the facts which allege a violation of the LMA or PERA, including the date of occurrence of each particular act and the names of the agents of the charged party who engaged in the complained of conduct. The charge should describe who did what and when they did it, and **briefly** explain why such actions constitute a violation of the LMA or PERA.

The Commission may reject a charge for failure to include the required information. However, it is not necessary to present your case in full at this time. Documentary material and exhibits ordinarily **should not** be submitted with this charge form.

| 4. Name and Address of Party Filing Charge (Charging Party) (if labor organization, give full name, including local name and number) Michigan AFSCME Council 25 600 W. Lafayette Blvd., Ste. 400, Detroit, MI 48226 | Telephone Number: (313) 964-1171 |
|---|---|

**5. List ALL related MERC case(s) (if any):** _____
(Name of parties)
Case No.: _____ Judge: _____
Case No.: _____ Judge: _____

I have read this charge and it is true to the best of my knowledge and belief.

Signature of Representative/Person Filing Charge

Email: kflynn@millercohen.com
Telephone/Cell No.: 313-964-4454

Print Name and Title: **Keith D. Flynn, Attorney**

Fax No.: 313-964-4490

| Street Address: 600 W. Lafayette Blvd., 4th Floor | City: Detroit | State: MI | Zip Code: 48226 |

The Department of Licensing and Regulatory Affairs will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, disability, or political beliefs. If you need assistance with reading, writing, hearing, etc., under the Americans with Disabilities Act, you may make your needs known to this agency.

## City of Detroit and AFSCME Council 25

### ATTACHMENT TO AMENDED UNFAIR LABOR PRACTICE CHARGE

Charging Party, AFSCME Council 25 and the Coalition of Detroit Unions alleges that Respondent, City of Detroit, violated the Public Employment Relations Act ("PERA"), Sections 10(1)(a, c, e) and Section 15 in the following manner:

1. The City of Detroit employs approximately 2,600 persons who are public employees and are represented by Michigan AFSCME Council 25. There are approximately 9,000 unionized employees in the City total.

2. The parties AFSCME and the City of Detroit have a collective bargaining agreement, which was in existence from approximately January 2011 through June 30, 2012.

3. The City's actions, described below, constitute repudiation of the AFSCME-City agreement, a violation of the status quo, and constitute a unilateral modification of a mandatory subject of bargaining without bargaining to impasse. It also constitutes a mid-term modification of the AFSCME bargaining agreement.

4. Certain employees have annuity plans with the City, in which either 3%, 5% or 7% of salary is contributed into the plan. As for retirees, they receive a check each month from the Retirement System.

5. Prior to November 30, 2011, if the market performed above 7.9%, this was considered "excess earnings".

6. Prior to November 2011, a portion of these excess earnings were distributed to the active employees' annuity accounts, wherein the active employees would receive an enhanced interest rate of return for that year of excess earnings.

7. Prior to November 2011, a portion of these excess earnings would also be distributed to retirees in the form of a 13th check. This 13th check would be distributed to retirees toward the end of the year, in addition to their normal pension check.

8. Prior to November 30, 2011, the GRS Board would review the excess earnings of the System in November or December of each year, and make the excess earnings distributions as outlined above.

9. On or about November 30, 2011, the Detroit City Council passed an ordinance requiring that active and retiree participants no longer receive excess earnings. This change eliminated excess earnings being given to active employee annuity accounts in the form of enhanced investments. The change also eliminated the excess earnings being distributed to retired participants, in the form of a "13th check".

10. This change in the City ordinance changed the City of Detroit prior language, granting such discretion to the GRS Board in paying out excess earnings. For decades, the GRS Board had paid out excess earnings to active employees via enhanced annuity earnings, and 13th checks to retirees. The November 30, 2011 ordinance change ended the past practice.

11. The ordinance change was effective as of December 2011. At that time, the GRS considered that the investment return of the System was higher than 7.9%. However, because of the new Ordinance, the System did not make excess earnings distributions to retirees in the form of a 13th check. Also, the System did not grant any annuity accounts of active employees a higher investment return beyond the 7.9%.

12. But for the City Council Ordinance as of November 30, 2011, the current retirees would have received an excess distribution in the form of a 13th check. The active employees would have received an excess earnings distribution in the form of enhanced investment return for their annuity account.

13. The changes of paragraphs 9-12 above applied to all City employees, including the City's unionized workforce. Indeed, in the Corporation Counsel's description of the change, she took the position that the ordinance change could be appropriately applied to unionized City employees, regardless of their bargaining relationship.

14. The City did not seek to negotiate this change in the treatment of the investment earnings beyond 7.9% with any City union. Charging Party was presented with this change as a fait accompli. Further, the change was made during the existence of the collective bargaining agreement.

15. The AFSCME bargaining agreement, in Article 47.T., indicates that "[a]ll Retirement and Pension Plan Provisions provided for by the City Charter and Municipal Code are incorporated herein by referral unless otherwise specifically modified by this Agreement and Ordinance 2-93, J.C.C. Page 133." Thus, the previous ordinance which established the past practice of the GRS Board making excess earnings distributions was incorporated into the AFSCME bargaining agreement.

16. By changing the Ordinance, and applying that Ordinance change to the AFSCME membership, the City was violating PERA. As a consequence, active employees are losing both their annuity account investments, as well as the right to a 13th check upon their retirement.

17. Charging Party requests that this City apply the language of the previous ordinance to the City's unionized workforce, return the practice of the excess earnings distributions to the annuity accounts and the retiree 13th checks, make whole any union employees who suffered a loss as a result of the City's actions, ask that the City post a notice of the violation of the act, and any other relief this Commission deems appropriate.

STATE OF MICHIGAN
DEPARTMENT OF ENERGY, LABOR & ECONOMIC GROWTH
EMPLOYMENT RELATIONS COMMISSION

AFSCME COUNCIL 25,

        Union/Charging Party,

-and-

CITY OF DETROIT,

        Employer/Respondent.

Case No. C12 E-092
MCL No. 12-000777
*Administrative Law Judge*
Doyle O'Connor

/

## PROOF OF SERVICE

MICHELLE COIL says that on *November 5, 2012* she served a copy of *AFSCME Council 25's Amended Charge*, along with this *Proof of Service* upon:

Letitia C. Jones
City of Detroit Law Department
660 Woodward Avenue, Suite 1650
Detroit, Michigan 48226-353

via *facsimile* and *U.S. First-Class Mail* and placing said document in a prepaid postage envelope and depositing same in a United States Postal Receptacle in Detroit, Michigan.

MICHELLE COIL

Subscribed and sworn to before me on
November 5, 2012

Kathryn L. Golba, Notary Public
Wayne County, MI
My Commission Expires: 2/20/2019

MILLER COHEN, P.L.C.
ATTORNEYS AND COUNSELORS AT LAW
600 WEST LAFAYETTE BLVD.
DETROIT, MICHIGAN 48226-0840
(313) 964-4454