# EXHIBIT 9

STATE OF MICHIGAN
MICHIGAN ADMINISTRATIVE HEARING SYSTEM

IN THE MATTER OF:                    Docket No.: 12-000523-WH

Dean Story,                          Case No.:   160450
    Petitioner
                                     Agency:     Wage Hour
v
                                     Case Type:  Wage and Hour
City of Detroit,
    Respondent
                                     Filing Type: Appeal

_____/

Issued and entered
this 15th day of January, 2013
by: David M. Cohen
Administrative Law Judge

## DECISION OF THE ADMINISTRATIVE LAW JUDGE

### PROCEDURAL HISTORY

This is a proceeding held under Section 11 of 1978 PA 390, as amended, the Wage and Fringe Benefit Act (Act 390), MCL 408.481; and in accordance with 1969 PA 306, as amended, the Administrative Procedures Act (APA), MCL 24.201 *et seq*.

The purpose of this review is to examine Determination Order No. 160450 issued by the Department of Licensing & Regulatory Affairs, Wage Hour Division on March 8, 2012.

The Department determined that Act 390 was not violated "because payment of fringe benefit(s), longevity pay bonus, is not required by the terms set forth in the written fringe benefit policy/contract." Employee Story, through counsel, filed a March 20, 2012 appeal of the Determination Order.

This matter was subject to a fairly long procedural history. A hearing was originally scheduled for May 9, 2012. On April 18, 2012, Employer's counsel requested an adjournment of the initial hearing date. An April 26, 2012 Order Granting Adjournment set a new hearing date of June 11, 2012. On May 2, 2012, Employee's counsel requested an adjournment of the June 11, 2012 hearing date. A May 17, 2012 Order Granting Adjournment set a new hearing date of July 12, 2012.

On June 21, 2012, Employee's counsel submitted a correspondence requesting that a pre-hearing conference be scheduled for the purpose of allowing counsel time to inspect documents held by the City of Detroit. On June 22, 2012, Employer's counsel submitted a correspondence objecting to the necessity of the proposed pre-hearing conference. In response to these communications, I convened a telephone pre-hearing on June 28, 2012. After the phone conference, the hearing remained scheduled for July 12, 2012 and the

daylong hearing proceeded as scheduled at the Michigan Administrative Hearing System, Cadillac Place, Detroit, Michigan.

The hearing on this Determination Order and Docket 12-000522, another very similar claim concerning the same Employer, were consolidated on July 12, 2012 for hearing purposes only. Although necessarily similar in content, a separate Decision and Order will be issued regarding Docket 12-000522.

Employee was represented at the hearing by Attorney Richard G. Mack, Jr. The City of Detroit was represented at the hearing by Attorney Letitia C. Jones. A representative of the Wage Hour Division did not appear. The hearing proceeded in the absence of this party pursuant to Section 72(1) of the APA. Administrative Law Judge David Cohen presided.

At the close of the hearing, I acquiesced to a request from Employee's counsel to allow closing arguments via brief. A briefing schedule was set after the parties were in receipt of the transcript in the matter.

## ISSUES AND APPLICABLE LAW

Are fringe benefits (a longevity pay bonus) due Employee? That is, did the Employer violate Section 3 of Act 390?

A bonus, such as a longevity payment, is a fringe benefit under Act 390. Section 1(e) defines "Fringe benefits" as:

> "Fringe benefits" means compensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee.

Section 3 of Act 390 provides:

> An employer shall pay fringe benefits to or on behalf of an employee in accordance with the terms set forth in the written contract or written policy.

## WITNESSES

*For Employee:*
AFSCME Local 542 President Phyllis McMillon
Senior Personnel Payroll Clerk Derek Gibson
Employee Dean Story

*For Employer:*
Employee Dean Story (recalled)
Senior Personnel Payroll Clerk Derek Gibson (recalled)
Detroit Law Department Legal Assistant Sharon Guillory
Detroit Labor Relations Specialist Laverne Bronner-Wilson

## EMPLOYEE EXHIBITS

1. The July 1, 2005 – June 30, 2008 Master Agreement between the City of Detroit and Michigan Council 25

2. An October 13, 2010 correspondence from City of Detroit Director of Labor Relations Joseph Martinico to AFSCME Council 25 President Albert Garrett

3. A Class Action Petition for Writ of Mandamus in the Wayne County Circuit Court matter of Dean Story and Rosemarie Haynesworth v State of Michigan and its Wage and Hour Division and Lisa Gould and Randall Hairston, case number is indecipherable on exhibit

4. An October 5, 2009 correspondence from City of Detroit Chief Financial Officer Norman White with attached Annual Longevity Pay policy outline

5. An October 2007 document entitled City of Detroit Payroll Department Longevity Procedure1

## EMPLOYER EXHIBITS

1. A December 21, 2010 correspondence to the City of Detroit from the Wage & Hour Division

2a. A City of Detroit Personnel Department Employee History File regarding Employee Dean Story

2b. Excerpts from the Master Agreement between City of Detroit and Michigan Counsel 25, July 1, 2001 through June 30, 2005

2c. Department of Labor and Economic Growth Michigan Employment Relations Commission Fact Finding Report, MERC Case No. A-0062 (129 Pages)

2d. A September 9, 2010 correspondence to Detroit City Council from Labor Relations Director Joseph Martinico with attachment

2e. A September 28, 2010 correspondence to Detroit City Council from Labor

---

1 Largely duplicative of Exhibit 4

       Relations Director Joseph Martinico, with a revised "Schedule A-12"

2f.    Resolution approved by City Counsel on September 28, 2010 and approved by Mayor of Detroit on October 5, 2010

2g.    Chart entitled Bargaining Units Not Receiving Longevity

3.    A February 14, 2012 correspondence to Employee Dean Story from Wage & Hour Division Investigator Randall Harrison, with a copy of Determination Order #160450

4.    A March 28, 2012 Notification of Appeal sent by the Wage & Hour Division to the Employer and Employee

5.    A January 19, 2011 letter from AFSCME Michigan Counsel 25 President Albert Garrett to Director of Labor Relations Joseph Martinico, bearing the signatures of both Albert Garrett and Joseph Martinico

6.    The Cover Page and Table of Contents from the document titled "Master Agreement between City of Detroit and Michigan Counsel 25, July 1, 2008 through June 30, 2012"

## FINDINGS OF FACT

Employee Dean Story is employed by the City of Detroit in the city's General Services Department. Employee Story is a member of the American Federation of State County and Municipal Employees (AFSCME) Local 542. The present matter solely concerns Employee Story's claim for a $600.00 longevity bonus for the year 2010.

It should be noted that throughout the proceeding, Employee's counsel repeatedly drew attention to the fact that a large number of similarly situated AFSCME employees have filed Wage & Hour claims regarding the issue of a longevity bonus.

Traditionally, the City of Detroit has annually paid a longevity bonus to city employees during the month of December. The amount of the bonus was determined by the individual employee's years of service.

The longevity bonus was incorporated into past Master Agreements between the City of Detroit and AFSCME (Employee Exhibit 1 & Employer Exhibit 2b). The 2005-2008 collective bargaining agreement (CBA) language stated in pertinent part:

> Employees who have qualified for longevity pay and have accumulated at least sixteen hundred (1600) hours of straight time regular payroll hours of paid time during the year immediately preceding any December 1 date or other day of payment will qualify for a full longevity payment provided they are on the payroll on the December 1 date or any other date of qualification. Except for employees first qualifying for increments, the payment will be

made in a lump sum annually on the first pay date after December 1 (Employee Exhibit 1 at Page 43).

One of the disputes between the parties concerns whether employees were required to work 1600 hours or 1800 hours to obtain the 2010 longevity bonus (Exhibit 1 compared to Exhibit 2b). It appears that originally 1800 hours was required to obtain the bonus, but this was revised down to 1600 hours to factor into consideration employee furlough days.

Further, Senior Personnel Payroll Clerk Derek Gibson testified that traditionally the calculation for longevity pay involved "all paid bank time". Elaborating, Mr. Gibson indicated that this included regular work time, vacation time, sick time, reserved sick time, holidays, comp time and jury duty (Tr. Page 87, lines 14-18). I find that this was the policy for calculating the longevity payment, although it was not a policy clearly specified in the actual written contract between the parties (Employee Exhibit 4 & 5 compared to Employee Exhibit 1).

Mr. Gibson also testified credibly that historically a formula was utilized to provide longevity pay on a pro-rated basis to employees who did not meet the 1600 hour requirement by December 1st (Tr. Page 90, lines 9-19). Employee's counsel argued that this information was not utilized by the Wage Hour Investigator in determining Employee's eligibility for a longevity payment. For the reasons discussed below, neither the longevity payment calculation criteria nor the pro-rata formula is relevant in the final analysis.

Although the longevity pay bonus was provided historically, longevity pay is not contained within the document which is titled as the 2008-2012 Master Agreement between the City of Detroit and AFSCME (Employer Exhibit 6). The record establishes that the City of Detroit and AFSCME engaged in a protracted two year negotiation process concerning the terms of the 2008-2012 collective bargaining agreement between the parties.

AFSCME ultimately filed an August 10, 2009 Petition for Fact Finding with the Michigan Employment Relations Commission (MERC). As a result, a Fact Finder was appointed on October 21, 2009 (Employer Exhibit 2c at Page 2). A Fact Finding Hearing began on December 21, 2009 and continued on twenty two additional dates, ending with the exchange of post-hearing briefs in May 2010. The Fact Finding Report that resulted was issued on June 25, 2010. Many issues were addressed by the Fact Finder. Relevant to this proceeding is that the Fact Finder recommended that longevity pay be discontinued.

Prior to the Fact Finding proceeding, the last offer made by the City of Detroit to AFSCME was rejected by the Union. The hearing record indicates that this offer, rejected in November 2009, would have generally maintained the longevity bonus. Specifically, the offer proposed that if an employee had a ten-day suspension or more, they would not receive longevity pay for that year.

During this period of Fact Finding and negotiations, Union members meeting the appropriate qualifications were paid annual longevity bonuses in December 2009.

After issuance of the June 2010 Fact Finding Report, in conjunction with MERC procedures a sixty (60) day period ensued where the parties were allowed to continue bargaining in an attempt to reach a resolution. The parties remained unable to come to terms on a collective bargaining agreement and effectively reached an impasse. On September 9, 2010, after the sixty (60) day period elapsed, City of Detroit Labor Relations Director Joseph Martinico notified AFSCME and the Detroit City Council that it would exercise its legal right to impose the City's last proposals on the open issues between the parties. On September 28, 2010, the Detroit City Council passed a resolution, implementing terms which included longevity pay being eliminated in its entirety (Employer Exhibit D at Page 3). This resolution was approved by Detroit's Mayor on October 5, 2010 (Employer Exhibit F).

On October 13, 2010, the City of Detroit wrote a correspondence to AFSCME Council 25 President Albert Garrett (Employee Exhibit 2). The letter stated in pertinent part:

> In light of the fact that the City has fully fulfilled its bargaining duty with regard to the Fact-Finder's Report and Recommendations, the City maintains that it has the legal right under PERA {Michigan Public Employment Relations Act} to implement its final impasse position regarding all of the issues presented to the Fact-Finder. Attached please find a list of the economic provisions that the City intends to implement. Effective on October 25, 2010...longevity pay shall be eliminated and tuition refund suspended effective immediately (Employee Exhibit 2 at Page 2).

On January 19, 2011, AFSCME Council 25 President Albert Garrett wrote Director of Labor Relations Joseph Martinico regarding the "2008-2012 City of Detroit & AFSCME, Council 25 Labor Contracts" (Employer Exhibit 5). This correspondence accepts the terms that were imposed on October 25, 2010 by the City of Detroit. The language in the January 19, 2011 letter states:

> As we both know, the City of Detroit and AFSCME have engaged in negotiations over the terms of a collective bargaining agreement for more than two years. The process included mediation and ultimately fact finding before a State appointed Fact Finder. The Fact Finder's report was issued on June 25, 2010 and the parties continued bargaining for more than 60 days following the release of the report, without reaching agreement. Following exhaustion of all of the procedures required by law, the City exercised its right to impose contract terms.
>
> AFSCME understands that the City has lawfully imposed a full agreement on AFSCME and its affiliated units of the City of Detroit. AFSCME understands that this imposition is for the full agreement, including all terms imposed by the City and all other Articles tentatively agreed to by the parties during negotiations, for all five master agreements representing the AFSCME and all units (except the Emergency Services Operations (ESO) unit, as indicated below). AFSCME, and its affiliated City of Detroit unions and locals, accepts the imposed agreements and accepts said terms as final and binding upon the parties and shall withdraw all fact finding petitions filed on behalf of said

unions and locals, based upon said understandings.

AFSCME acknowledges that the imposition will be effective for all of its affiliated unions and locals (and their respective bargaining agreements), except for the ESO unit. It is AFSCME's position that ESOs are eligible for arbitration under Act 312 and the City disputes their eligibility at this time. Additionally, the City has informed the union that the application of furlough days for the Crossing Guards (Local 1863), Senior ESOs Telecommunications Operations (TCOs) and Senior TCOs have been waived for reasons of operational necessity. AFSCME's acceptance of the imposed terms is reliant upon these understandings as well.

Finally, AFSCME agrees to withdraw and/or refrain from filing any/all claims, charges, grievances or other litigation related in any way to the negotiation process or the imposition of contract terms by the City. This does not limit the union's right to grieve the City's interpretation or application of any such terms, or any subsequent unfair labor practice charges or grievances (Employer Exhibit 5).

## CONCLUSIONS OF LAW

The principles that govern judicial proceedings also apply to administrative hearings. The Employee is the appellant in this case and must prove by a preponderance of the evidence that the determination order should be rescinded or modified.

As a general rule, there is no longer any authority under Act 390 to interpret a collective bargaining agreement covered by federal labor law (Wage Hour General Entry XV). However, this does not apply to collective bargaining agreements involving CBAs in public employment. Therefore, there is jurisdiction over public sector claims *Lawrence v City of Detroit* WH 90-669 (1992), *Wage Hour Digest, supra,* ¶1232.

Employee's counsel avers that the Division's Determination Order committed a fundamental error in how it viewed the longevity payment, arguing that the longevity payment at issue should be viewed as wages as opposed to a fringe benefit.

I find that the longevity pay being sought is properly viewed as a fringe benefit bonus as opposed to earned wages. The clear language of Section 1(e), quoted above, indicates that the term fringe benefit includes *bonuses* paid by an Employer pursuant to a written contract or written policy. R 408.9002(2)(d) defines the term *bonus*, as used in Act 390, to mean a premium or extra or irregular remuneration in addition to wages that is awarded to an employee under a written contract or written policy.

In the present matter, the longevity payment was clearly a premium or extra remuneration allowed under previous collective bargaining agreements. It was an incentive for attendance and loyalty to Employer derived by looking at years of service and the yearly hours of service provided by an employee, but it was not a wage. In *Elarton v Lenawee Hills Memorial Park Association, Inc* WH 84-4216 (1985), *Wage Hour Digest, supra,* ¶557,

an employee was to receive a payment, characterized as a bonus, if still employed on June 1, 1984. The bonus was to be calculated at a rate of 50 cents for each hour the employee had worked. The *Elarton* Administrative Law Judge held that the disputed sum was indeed a bonus and subject to the requirement of a written contract. It was not viewed as a wage even though the sum was clearly calculated by looking at the hours worked by the employee. A longevity payment, such as the one at issue presently, is properly characterized under Act 390 as a bonus and should not be viewed as akin to an hourly wage.

Employee, through counsel, raises numerous arguments that a 2010 longevity bonus should be paid. Looking to the rationale of the Wage Hour Investigator, Employee's counsel argues that there was a miscalculation of whether Employee met the 1600 hour requirement for the longevity payment. Employee's counsel noted that the Wage Hour Investigator calculated Employee's 2010 hours by looking at only the straight time worked by Employee until October 2010. As indicated above, the testimony of Payroll Clerk Derek Gibson clearly conveyed that the calculation was based upon straight time, as well as vacation time, sick time, holidays, and other periods.

Employee argues further that there was a policy to pay even partial, pro-rated longevity payments to employees who did not meet the minimum hours worked in a year (Exhibit 4 & 5). As such, Employee's counsel asserts that at least a pro-rata payment should be due to Employee based upon hours worked until imposition of terms by the City of Detroit.

Further, Employee's counsel, drawing upon labor law, asserts that Employer could not impose the terms recommended by the Fact Finder, but should instead be left with the terms last offered by Employer prior to fact finding, which would have largely preserved the longevity bonus.

However, I find that Employee's arguments, whether based on last best offer, or past longevity payment calculation and pro-rata disbursement methods, do not overcome the fact that Employer and AFSCME agreed to a contract that no longer provided for the longevity payment.

The key document in this analysis is the January 19, 2011 correspondence from AFSCME Council 25 President Albert Garrett to Employer's Director of Labor Relations, Joseph Martinico. It is quoted above in its entirety due to the language it employs. In the January 2011 correspondence, President Garrett unambiguously agrees, on behalf of AFSCME membership, to the changes in conditions of employment that were imposed by the City of Detroit; terms which eliminate longevity payments. In key part, the letter states that "AFSCME understands that the City has lawfully imposed a full agreement on AFSCME and its affiliated units of the City of Detroit. AFSCME understands that this imposition is for the full agreement, including all terms imposed by the City...AFSCME, and its affiliated City of Detroit unions and locals, accepts the imposed agreements and accepts said terms as final and binding upon the parties" (Employer Exhibit 5). This language is unambiguous and indicates an acceptance of contract terms which included the elimination of the longevity bonus.

Additionally, the correspondence states that "AFSCME agrees to withdraw and/or refrain from filing any/all claims, charges, grievances or other litigation related in any way to the negotiation process or the imposition of contract terms by the City. This does not limit the union's right to grieve the City's interpretation or application of any of such terms, or any subsequent unfair labor practices charges or grievances" (Employer Exhibit 5 at Page 2). I note that a signature block was provided on the letter for Director of Labor Relations Martinico and that it was signed above typed print indicating "AGREED" (Employer Exhibit 5 at Page 2) (Emphasis from original).

In Petitioner's Post Hearing Brief, counsel acknowledges that the Union can waive an unfair labor practice charge or a grievance, but notes that the Union can not waive the rights of its membership to bring a claim under Act 390. Employee's counsel cites the case of *Admiral Merchants Motor Freight, Inc v Dept of Labor*, 149 Mich App 344 (1986) in support of the position that an individual employee's rights under Act 390 cannot be waived by a contract or agreement negotiated by an exclusive bargaining representative (Petitioner's Post Hearing Brief at Page 10).

In reviewing *Admiral Merchants*, I note that the factual circumstances were somewhat different then the present matter. *Admiral Merchants* concerned an Act 390 claim by two employees. The employees' claims concerned the same issues embodied in a federal suit filed by the International Teamsters Union.

Clearly, *Admiral Merchants* reinforces the rights of employees to seek relief through a claim under Act 390. Employee Story has that right and has exercised it in the present matter. However, while an employee has a right to pursue an Act 390 claim, the employee can not obtain relief greater than that afforded by the statute.

The January 19, 2011 letter between the City of Detroit and the Union represents a meeting of the minds, both sides receiving consideration for their agreement. I find that it is a contract made on behalf of AFSCME members, including Employee Story, by an individual with apparent and actual authority to act on behalf of the AFSCME membership.

A recurrent theme present in the arguments of Employee's counsel sounded in equity. Counsel drew an analogy, arguing that the present situation was similar to an Employer hiring an Employee for $500.00 a week, to be paid on Friday, and then reducing the compensation to $400.00 on Thursday (Tr. Page 30). Counsel was eloquent in repeatedly noting that most of the employees affected by the longevity bonus made modest incomes for their hard work on behalf of the City of Detroit. In *Todd v Nemic Machinery Company* WH 96-51 (1996), *Wage Hour Digest, supra*, ¶1070, it was acknowledged that an Administrative Law Judge has no equitable powers to create a solution at odds with Act 390. In *Todd*, a change to an employee handbook in January 1995 resulted in an employee being denied a bonus by a narrow window of time. The employee worked through the entire bonus calculation period which ended on March 31, 1995, but was denied the bonus due to not being employed when the bonuses were physically issued two weeks later.

Under Act 390, the payment of bonuses, such as a longevity payment bonus, is determined pursuant to the terms of a written contract or written agreement between the parties. The contract agreement, demonstrated by the January 19, 2011 correspondence, applies in this matter. It no longer provides for a longevity bonus.

## DECISION

The Department's Determination Order 160450, dated March 8, 2012 is AFFIRMED.

David Cohen
Administrative Law Judge

## APPEAL PROCEDURE

The parties may appeal decision based on MCL 408.481(9), which provides:

> *MCL 408.481(9)* A party to the proceeding may obtain judicial review of the determination of the hearings officer pursuant to Act No. 306 of the Public Acts of 1969, as amended. Venue for an appeal under this act shall only be in the circuit where the employee is a resident, where the employment occurred, or where the employer has a principal place of business.
>
> *MCL 24.304* requires an appeal to be filed "within 60 days after the date of mailing notice of the final decision or order of the agency."

## PROOF OF SERVICE

I hereby state, to the best of my knowledge, information and belief, that a copy of the foregoing document was served upon all parties and/or attorneys of record in this matter by Inter-Departmental mail to those parties employed by the State of Michigan and by UPS/Next Day Air, facsimile, and/or by mailing same to them via first class mail and/or certified mail, return receipt requested, at their respective addresses as disclosed below this 15th day of January, 2013.

*Maria Ardelean*
Maria Ardelean
Michigan Administrative Hearing System

Richard G. Mack
Miller Cohen, PLC
600 West Lafayette Blvd, 4th Floor
Detroit, MI 48226

Letitia C. Jones
City of Detroit Law Department
1st National Bldg., Ste. 1650
660 Woodward Avenue
Detroit, MI 48226

Kim Wright
Wage & Hour Division
7150 Harris -1st Floor-A-Wing
P.O. Box 30476
Lansing, MI 48909

Dean Story
24060 Ithaca
Oak Park, MI 48237

City of Detroit
65 Cadillac Square, Suite 3900
Detroit, MI 48202

Letitia C. Jones
City of Detroit Law Department
2 Woodward Avenue, Ste. 500
Detroit, MI 48226