UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |

**FEE EXAMINER'S FIRST SUPPLEMENTAL QUARTERLY REPORT FOR MONTHS OF JANUARY, FEBRUARY AND MARCH 2014**

Robert M. Fishman, the duly appointed fee examiner (the "Fee Examiner"), submits this First Supplemental Quarterly Report (the "First Supplemental Quarterly Report") for the Months of January, February and March 2014 (the "Reporting Period") pursuant to paragraph 8 of the Court's Fee Review Order dated September 11, 2013 [Docket No. 810] (the "Fee Review Order"):[1]

**Background**

1. Pursuant to the Order Appointing Fee Examiner dated August 19, 2013 [Docket No. 383] (the "Appointment Order"), the Court appointed Robert M. Fishman as the Fee Examiner in connection with the above-captioned bankruptcy case (the "Case"). Pursuant to the Appointment Order, it is the Fee Examiner's responsibility to assure the Court, the City, the creditors, and the public that the City's Professional Fee Expenses (as defined in the Appointment Order) are fully disclosed and are reasonable, as required by 11 U.S.C. § 943(b)(3).

2. Pursuant to paragraph 1 of the Fee Review Order, by no later than September 30, 2013, the City and the Committee were both required to submit lists of all professionals who have been retained to render services in connection with the Case and who seek payment of

---

[1] Capitalized terms not otherwise defined herein shall have the meaning assigned in the Fee Review Order.

compensation and reimbursement of expenses from the City for post-petition services, excluding ordinary course professionals hired by the City not in conjunction with the Case, but rather in the same contexts and capacities as such professionals were typically hired by the City prior to the commencement of the Case. Fee Review Order, ¶ 1. The City and the Committee both complied with this requirement by submitting lists of the following City Professionals and Committee Professionals:[2]

**City Professionals**

Conway MacKenzie, Inc.
Dykema Gossett, PLLC
Ernst & Young LLP
Jones Day
Foley & Lardner LLP
Kilpatrick & Associates, PC
Kurtzman Carson Consultants LLC
Miller Buckfire & Co. LLC
Miller, Canfield, Paddock & Stone, P.L.C.
Milliman, Inc.
Ottenwess, Allman & Taweel, PLC
Pepper Hamilton LLP

**Committee Professionals**

Dentons US LLP/Salans FMC SNR Denton Europe LLP
Brooks Wilkins Sharkey & Turco PLLC
Lazard Freres & Co. LLC
Segal Consulting

3. Additionally, on May 29, 2014 the Court issued an order [Docket No. 5150] (the "US Bank Order") requiring that US Bank, as Trustee, submit the invoices (going back to the inception of the case) received from its internal employee, counsel and consultants to the Fee Examiner for review. Accordingly, the following Professionals, on behalf of U.S. Bank, as Trustee, are also now participating in the Fee Review Process and submitting their invoices to

---

[2] The City added Professionals (Dykema Gossett, PLLC, Kilpatrick & Associates, PC and Ottenwess, Allman & Taweel, PLC) in a letter to the Fee Examiner dated December 13, 2013.

the Fee Examiner: Waller, Bodman, John Young, GLC and U.S. Bank. Additionally, counsel for Christie's Inc, Debevoise, has also agreed to be designated as a City Professional and have its invoices reviewed by the Fee Examiner. The Fee Examiner has just begun his review of the applicable invoices for these new Professionals and will be filing the appropriate Final Monthly and Quarterly Reports in the future.

4. By no later than October 4, 2013, each City Professional and Committee Professional was required to submit to the Fee Examiner (a) an executed copy of its engagement letter, (b) a verified rate statement respecting regular hourly rates and Discounted Rates, and (c) a list of billing and expense categories to be used in monthly invoices (the "Invoices"), which list had to be acceptable to the Fee Examiner in his reasonable discretion (collectively, the "Initial Submissions"). Fee Review Order, ¶ 2.

5. Each of the Professionals has provided its Initial Submissions to the Fee Examiner.

6. Pursuant to the Fee Review Order, each Professional is required to submit Invoices to the Fee Examiner within 49 days after the end of each calendar month; provided, however, that the July and August 2013 Invoices were due on or before October 21, 2013 (each, an "Invoice Deadline"). *Id*., ¶ 4. Within 35 days of each Invoice Deadline, the Fee Examiner is required to create Preliminary Reports with respect to each timely submitted Invoice and transmit that Preliminary Report to the applicable Professional. *Id*., ¶ 5. During the 14-day period after the Fee Examiner transmits the Preliminary Report (the "Resolution Period"), the Fee Examiner and each Professional are required to meet and confer respecting any issues raised by the Fee Examiner in the Preliminary Report in an effort to resolve such issues by agreement (the "Resolution Discussion"). *Id*., ¶ 6.

7. Within 14 days after the expiration of the Resolution Period, the Fee Examiner is required to prepare a Final Monthly Report respecting all of the Invoices. Fee Review Order, ¶ 7. In the Final Monthly Report, the Fee Examiner is required to delineate all write-offs and other adjustments made to each Invoice, both before the submission of the Monthly Invoice and as a result of the Resolution Discussions. *Id*.

8. Beginning on February 4, 2014[3] and approximately every 91 days thereafter, the Fee Examiner is required to prepare Quarterly Reports, which must include the following: (a) copies of each of the Final Monthly Reports for the applicable months and copies of each Monthly Invoice (subject to redaction requirements); (b) a summary of the Professional Fee Expenses for each Professional for the applicable time period, as well as for all prior time periods (if applicable); and (c) a statement by the Fee Examiner as to whether all of the Professional Fee Expenses covered by the Quarterly Report have been fully disclosed and are reasonable. Fee Review Order, ¶ 8. The Quarterly Reports must be filed with the Court and posted on the Emergency Manager's page of the City's website and on the restructuring website maintained by the City's claims and noticing agent. *Id*.

9. On August 5, 2014, the Fee Examiner filed his Quarterly Report for the Reporting Period [Docket No. 6528] ("1Q 2014 Report"). This First Supplemental Quarterly Report supplements the 1Q 2014 Report and addresses two specific matters: (i) the Invoice submitted by Jones Day for March 2014, which was not included in the 1Q 2014 Report and (ii) corrections to the calculations of the fees and expenses of Ernst & Young LLP ("EY") as reflected in the 1Q 2014 Report.

---

[3] The original date set forth in the Fee Review Order was January 15, 2014, but the Court entered an Order extending that date to February 4, 2014 [Dkt. # 2435].

### I. Jones Day

**A. Jones Day Final Monthly Report and Monthly Invoice For March 2014**

10. As required by the Fee Review Order, the Fee Examiner prepared and transmitted a Preliminary Report to Jones Day and engaged in Resolution Discussions with Jones Day prior to preparing the Final Monthly Report respecting Jones Day for March 2014. The Final Monthly Report is attached hereto as Exhibit 1, and it includes a copy of a redacted Invoice submitted by Jones Day for March 2014.

**B. Summary of Jones Day Professional Fee Expenses for Reporting Period**

11. The attached Final Monthly Report includes a summary of the Professional Fee Expenses for Jones Day's March 2014 Invoice. The following is a summary of the Professional Fee Expenses of Jones Day for the Reporting Period following the Fee Examiner's review of the Invoices and related Resolution Discussions with Jones Day:[4]

| **Jones Day** | | |
|---|---:|---:|
| | **Total Fee Request** | **Total Expense Request** |
| January 2014 | $3,150,154.57 | $90,533.00 |
| February 2014 | $2,416,263.06 | $115,699.07 |
| March 2014 | $2,944,654.88 | $82,868.55 |
| **Quarterly Totals:** | **$8,511,072.51** | **$289,100.62** |
| **Total for First Quarter (July-Sept) 2013:** | **$6,589,572.64** | **$143,273.82** |
| **Total for Second Quarter (Oct-Dec) 2013:** | **$10,025,613.74** | **$590,248.51** |
| **Total for Case:** | **$25,126,258.89** | **$1,022,622.95** |

---

[4] The 1Q 2014 Report did not address the Professional Fee Expenses of Jones Day for the month of March 2014 due to Jones Day's additional investigation of an issue raised by the Fee Examiner in his Preliminary Report for that month.

## II. EY

12. The 1Q 2014 Report reflected slight miscalculations of the fees and expenses of EY for the Reporting Period. The miscalculations concerned the application of a 10% holdback upon which EY and the City have previously agreed. Under the terms of EY's engagement agreement with the City, the monthly fees of EY are "subject to a 10% holdback that will be payable upon the confirmation of a Plan of Adjustment of Debts by the Bankruptcy Court by December 31, 2014. In the event a Plan of Adjustment of Debts is not confirmed by December 31, 2014, the cumulative holdback amount will not be payable."

13. The 1Q 2014 Report and associated Monthly Reports incorrectly applied the 10% holdback to EY's expenses as well as to certain additional fee reductions that EY has agreed to make. As a result, the figures for EY's monthly and quarterly fees and expenses reflected in the 1Q 2014 Report were slightly inaccurate. After correcting the application of the 10% contractual holdback, EY's monthly and quarterly fees and expenses for the Reporting Period are as follows:

### A. EY January 2014 Fees and Expenses

| Initial Voluntary Discounts | Professional Fees Charged at 65% of EY Standard Rates; Non-Working Travel Time Capped at 2 Hours; Meals Not Billed. |
|---|---|
| Original Fee Request | $1,323,902 |
| Revised Fee Request After Agreed Write-Offs | $1,320,244 |
| 10% Contractual Fee Hold-Back | ($132,024) |
| Additional Voluntary Fee Reduction | ($15,000) |
| Interim Fee Request | $1,173,220 |
| Original Expense Request | $57,847 |
| Additional Voluntary Expense Reduction | $0 |
| Final Expense Request | $57,847 |
| Total Fee and Expense Request (w/o Hold-Back) | $1,363,091 |
| Interim Fee and Expense Request (w/ Hold-Back) | $1,231,067 |

### B. EY February 2014 Fees and Expenses

| Initial Voluntary Discounts | Professional Fees Charged at 65% of EY Standard Rates; Non-Working Travel Time Capped at 2 Hours; Meals Not Billed. |
|---|---|
| Original Fee Request | $1,155,130 |
| Revised Fee Request After Agreed Write-Offs | $1,148,918 |
| 10% Contractual Fee Hold-Back | ($114,892) |
| Additional Voluntary Fee Reduction | ($18,000) |
| Interim Fee Request | $1,016,026 |
| Original Expense Request | $88,783 |
| Additional Voluntary Expense Reduction | ($5) |
| Final Expense Request | $88,778 |
| Total Fee and Expense Request (w/o Hold-Back) | $1,219,696 |
| Interim Fee and Expense Request (w/ Hold-Back) | $1,104,804 |

### C. EY March 2014 Fees and Expenses

| Initial Voluntary Discounts | Professional Fees Charged at 65% of EY Standard Rates; Non-Working Travel Time Capped at 2 Hours; Meals Not Billed. |
|---|---|
| Original Fee Request | $1,091,069 |
| Revised Fee Request After Agreed Write-Offs | $1,085,844 |
| 10% Contractual Fee Hold-Back | ($108,584) |
| Additional Voluntary Fee Reduction | ($32,000) |
| Interim Fee Request | $945,260 |
| Original Expense Request | $57,535 |
| Additional Voluntary Expense Reduction | $0 |
| Final Expense Request | $57,535 |
| Total Fee and Expense Request (w/o Hold-Back) | $1,111,379 |
| Interim Fee and Expense Request (w/ Hold-Back) | $1,002,795 |

### D. Total EY 1Q 2014 Fees and Expenses

|  | Total Fee Request | Total Expense Request |
|---|---|---|
| January 2014 | $1,305,244 | $57,847 |
| February 2014 | $1,130,918 | $88,778 |
| March 2014 | $1,053,844 | $57,535 |
| Quarterly Total | $3,490,006 | $204,160 |

**Statement Regarding Disclosure and Reasonableness of Professional Fee Expenses**

14. The procedures and requirements set forth in the Fee Review Order, including but not limited to the submission of the information contained in this First Supplemental Quarterly Report, are intended to ensure the adequacy of disclosure and a mechanism to assess the reasonableness of all Professional Fee Expenses. For example, the Initial Submissions enabled the Fee Examiner (i) to understand the terms of the engagement letters pursuant to which each Professional is employed, (ii) to evaluate the significance of any Discounted Rates in comparison to each Professional's regular hourly rates, and (iii) to obtain Invoices in a sufficiently detailed and organized format that is conducive to meaningful review. The Fee Examiner, individually and through his professionals, conducted a thorough review of each Invoice and generated a Preliminary Report for each Invoice that contained the Fee Examiner's detailed comments and questions, which were aimed at (a) generating compliance with the substantive requirements of the Fee Review Order and the reasonableness standards developed by the Fee Examiner based on his extensive experience in bankruptcy cases, and (b) providing full public disclosure of the Professional Fee Expenses (subject only to redacting as determined by the applicable Professional).

15. Over the course of the many months of the creation, submission, review and related discussions, the Fee Examiner and the Professionals have developed an understanding of the manner in which invoices are going to be prepared, submitted and reviewed. The Fee Review Process itself has allowed the Professionals to improve the substantive content and quality of their respective invoices. This has resulted in both a more complete and meaningful disclosure of the services rendered. Additionally, the Fee Review Process has enabled the Professionals to present their billing services in formats and manners that are acceptable to the

{10661-001 MSC A0383085.DOCX 2}    8

13-53846-tjt    Doc 7332    Filed 09/08/14    Entered 09/08/14 15:22:41    Page 8 of 11

Fee Examiner. As the Fee Review Process has proceeded, the Professionals are generally doing a better job with their respective invoices, thereby decreasing both the modifications/clarifications and billing adjustments that the Fee Examiner has requested.

16. Once again, the Professional Fee Expenses incurred during the Reporting Period were substantial. The Case presents issues of a magnitude and complexity that challenge the Professionals' and the Fee Examiner's ability to assimilate and digest. The novelty of the legal issues, the deadlines imposed by the Case and the strong differences in opinion between the various parties on the appropriate resolution of issues, have (and continue to) make the Case extremely time intensive for all concerned. It is impossible (and inappropriate) to view the Professional Fee Expenses in the abstract. They must be tested against the circumstances of the Case, such as the amount of debt being addressed, the number of competing interests that have to be considered, the number of diverse problems and public interest issues that must be simultaneously considered and solved within the uncharted waters of a Chapter 9 case of this magnitude.

17. During this Reporting Period, there was a shift in the most significant matters occurring in the Case. Previously, the eligibility trial was the most dominant feature of the Case, along with numerous simultaneous mediations, the contested hearings respecting the Debtor's motion to assume and approve the forbearance and optional termination agreement documenting the settlement of swap-related disputes, and multiple pension and labor negotiations. Since the first of the year, the preparation, negotiation and related motion practice respecting the City's Plan of Adjustment (the "Plan") and Disclosure Statement have become the center of activity in the Case. While mediations, financing, labor and pension negotiations and other specific substantive areas all remain extremely active, the context of much of the Case has shifted to the

terms of the Plan and manner of the implementation of the Plan process. Most of the substantive disputes are now focused on Plan treatment and efforts to negotiate resolutions of those disputes that might result in confirmation of the Plan, or efforts by parties to prevent a Plan from being confirmed that such parties believe are not in their best interests.

18. All of the issues that the Fee Examiner identified in the Preliminary Reports sent to Jones Day and EY were reasonably addressed to the Fee Examiner's satisfaction through the Resolution Discussions and the subsequent revisions to Invoices. The power of the Fee Examiner under the Fee Review Order is limited to recommendations and challenges made through the Preliminary Reports and the Resolution Discussions. The Fee Examiner has no authority to require modifications of the Invoices or to reduce the amount of any firm's Professional Fee Expense request.

19. The Final Monthly Reports prepared by the Fee Examiner delineate the voluntary write-offs and reductions by each Professional, both before the submission of each Monthly Invoice and as a result of the Resolution Discussions with the Fee Examiner, and, in the Fee Examiner's opinion, further reflect the reasonableness of the Professional Fee Expenses. Although the fees incurred by the Professionals during the Reporting Period and covered by this First Supplemental Quarterly Report are substantial by any measure, the Fee Examiner believes that all of the requested fees are commensurate with the complexity and speed of the Case, and the quality of the services that the Professionals have provided. Furthermore, the Fee Examiner believes that all of the requested expenses were necessarily incurred by the Professionals in connection with the services rendered. Accordingly, the Fee Examiner submits that all of the Professional Fee Expenses from the Reporting Period, as addressed by this First Supplemental

Quarterly Report, have been fully disclosed and are reasonable, as required by 11 U.S.C. § 943(b)(3).

Respectfully submitted,

Dated: September 8, 2014     By: /s/ Robert M. Fishman
                                 Robert M. Fishman, Fee Examiner

Robert M. Fishman
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
(312) 541-0151
rfishman@shawfishman.com