---------------------------------------------------------------x
:
In re : Chapter 9
:
CITY OF DETROIT, MICHIGAN, : Case No. 13-53846
:
Debtor. : Hon. Steven W. Rhodes
:
:
---------------------------------------------------------------x

### RESPONSE OF WILMINGTON TRUST, NATIONAL ASSOCIATION, TO NOTICE OF AMENDED EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED FILED BY THE CITY OF DETROIT

Wilmington Trust, National Association, not individually, but solely in its capacity as successor contract administrator[1] (the "Contract Administrator"), hereby submits this response (this "Rejection Response") to the *Notice of Amendment to Exhibit II.D.6 (Executory Contracts and Unexpired Leases to be Rejected) to the Sixth Amended Plan For the Adjustment of Debts of the City of Detroit* (the "Rejection Notice"), served by the City of Detroit, Michigan (the "City") on August 22, 2014. In support of this Rejection Response, the Contract Administrator respectfully states as follows:

---

[1] Wilmington Trust, National Association, also serves as successor to U.S. Bank National Association ("U.S. Bank"), as: (a) Trustee ("Trustee") under that certain Trust Agreement, dated June 2, 2005, by and among the Detroit General Retirement System Service Corporation (the "GRS Corporation"), the Detroit Police and Fire Retirement System Service Corporation (the "PFRS Corporation"), and U.S. Bank, and as successor contract administrator ("Contract Administrator") under that certain Contract Administration Agreement, dated June 2, 2005, by and among the Detroit Retirement Systems Funding Trust (the "2005 Funding Trust"), the GRS Corporation, the PFRS Corporation, and U.S. Bank, regarding the issuance of Certificates of Participation Series 2005-A by the 2005 Funding Trust and the transactions contemplated thereby; and (b) Trustee under that certain Trust Agreement, dated June 12, 2006, by and among the GRS Corporation, the PFRS Corporation, and U.S. Bank, and as Contract Administrator under that certain Contract Administration Agreement, dated June 12, 2006, by and among the Detroit Retirement Systems Funding Trust 2006 (the "2006 Funding Trust"), the GRS Corporation, the PFRS Corporation and U.S. Bank, in each case, regarding the issuance of Certificates of Participation Series 2006-A and 2006-B by the 2006 Funding Trust and the transactions contemplated thereby.

## PRELIMINARY STATEMENT

1. When viewed in combination with the terms of the Plan (as defined below), the rejection of the Service Contracts (as defined below) pursuant to the Rejection Notice, prejudices the rights of the Contract Administrator, a third-party beneficiary of the Service Contracts. Additionally, rejection of the Service Contracts leaves the Contract Administrator uncertain as to what legal obligations the City intends to assert remain outstanding after such rejection given that under the terms of the Plan, such rejection is merely a breach, rather than a termination of the Service Contracts.

2. Further, the Disputed COP Claims Reserve (as defined in the Plan) should be fully funded as that will be the source of payment for rejection damages claims. Moreover, the right to receive distributions resulting from claims in connection with and related to the Service Contracts – an issue of contention on multiple fronts in this chapter 9 bankruptcy proceeding – cannot be circumvented as a result of the Rejection Notice and the Contract Procedures Order (as defined below).

## GENERAL BACKGROUND

3. On or about May 25, 2005, the City entered into two "Service Contracts" (collectively, the "2005 Service Contracts"), one with each of (a) the GRS Corporation and (b) the PFRS Corporation (collectively, with the GRS Corporation, the "Service Corporations"). Thereafter, on or about June 7, 2006, the City entered into two additional "Service Contracts" (collectively, the "2006 Service Contracts" and, with the 2005 Service Contracts, the "Service Contracts"), again, one with each of the Service Corporations.

4. On July 18, 2013, the City filed a petition for relief under chapter 9 of title 11 of the United States Code, 11 U.S.C §§ 101 – 1532 (the "Bankruptcy Code"). Thereafter, the City

filed multiple versions of a plan of adjustment (six in total to date), the last of which was the *Sixth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 6908) (as may be amended, supplemented or modified, the "Plan"), filed on August 20, 2014.

5. On February 19, 2014, the Contract Administrator and the Trustee for the COPs (as defined below), filed four (4) proofs of claims against the City – claim numbers 1120, 1136, 1138, and 1197 (collectively, the "WTNA Proofs of Claim"). The WTNA Proofs of Claim assert amounts due and owing as a result of the 2005 COPs, the 2006 COPs (collectively, the "COPs"), and the COP Litigation[2]. The WTNA Proofs of Claim also assert amounts for lawful fees and expenses, which include the Contract Administrator's and the Trustee's legal fees and expenses incurred as a result of the City's chapter 9 filing, that have or are accruing pursuant to the Contract Administration Agreements (dated June 2, 2005 and June 12, 2006).

6. Additionally, the WTNA Proofs of Claim include the Trustee's claim in connection with the COP Litigation that asserted, among other amounts, a claim for lawful charges, fees, expenses, and rights to indemnification pursuant to the 2005 COPs Agreement and the 2006 COPs Agreement (collectively, the "Funding Trust Agreements"). Further, the WTNA Proofs of Claim provided notice of claims against the City arising from or relating to the COP Litigation, which the Trustee has specifically asserted as counterclaims against the City in the COP Litigation.

7. On August 4, 2014, this Bankruptcy Court entered the *Order, Pursuant to Sections 363, 901 and 1123 of the Bankruptcy Code, (A) Establishing Procedures with Respect to the Proposed Assumption and Rejection of Executory Contracts and Unexpired Leases and (B) Approving the Form and Manner of Notice Thereof* (Docket No. 6512) (the "Contract

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

Procedures Order"). The Contract Procedures Order approved certain procedures governing the assumption and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan (the "Plan Contract Procedures").

8. On August 20, 2014, in connection with the filing of the Plan, the City filed a revised and amended Plan exhibit, Exhibit II.D.6, setting forth a list of executory contracts and unexpired leases the City is a party to and that the City desires to reject pursuant to section 365 of the Bankruptcy Code and section II.D.6 of the Plan. The Service Contracts appeared for the first on time on the list attached to the Rejection Notice.

9. The Contract Administrator is a third-party beneficiary, with enforcement rights, to the Service Contracts. Service Contracts, § 9.12. The City served counsel for the Contract Administrator with the Rejection Notice, which was dated August 22, 2014.[3]

**RESPONSE**

10. The Contract Administrator files this Rejection Response out of an abundance of caution to (a) set forth matters that need to be addressed and/or clarified and (b) preserve the Contract Administrator's rights pending the satisfactory resolution of such matters.

**A. The City Should Provide Notice of any Future Performance Obligations of a Rejected Executory Contract**

11. Pursuant to Article II.D.8 of the Plan, the City seeks to unilaterally preserve the right to enforce the terms of (and obtain the benefits from) executory contracts it rejects. Plan, § II.D.8. The Contract Administrator is a third-party beneficiary of the Service Contracts, but it is not a party to the Service Contracts. Service Contracts, § 9.12.

---

[3] Counsel for the Contract Administrator has been informed that counsel for the Service Corporations (a) was not served with the Rejection Notice (inconsistent with and in violation of the Contract Procedures Order and the Plan Contract Procedures) and (b) does not intend on filing an objection or otherwise responding to the Rejection Notice.

12. Moreover, while the Service Contracts parties are the City and the Service Corporations, there are two other interrelated contracts (*i.e.*, the Contract Administration Agreements and the Funding Trust Agreements) to which the Contract Administrator is a party and that set forth certain duties and obligations of the Contract Administrator and the Trustee.[4] As such, to the extent the City is attempting to assert that the Contract Administrator or the Service Corporations would have any post-Effective Date obligations to the City resulting from the Service Contracts or by virtue of the interrelated contracts, the City should provide notice of any post-Effective Date obligations/duties the City plans to assert remain outstanding.

13. Further, and in light of the City's blanket denial to date to compensate the Contract Administrator and the Trustee for its services performed under the Contract Administration Agreements and the Funding Trust Agreements[5], to the extent it is ultimately determined that post-Effective Date obligations are to be provided by the Contract Administrator to the City (which should not be the case), the City must affirmatively acknowledge its obligations to the Contract Administrator. The City must also disclose and represent that such fees, costs, and other monetary obligations will be fulfilled by the City.[6]

14. Accordingly, neither the Contract Administrator nor the Service Corporations should be required to perform any post-Effective Date duties for the City or the City's ultimate benefit absent disclosure and a commitment from the City to pay the costs associated with such obligations as set forth above.

---

[4] The City is not a party to the Contract Administration Agreement or the Funding Trust Agreements.

[5] *See Joinder and Limited Pretrial Brief in Support of Objections of Wilmington Trust, National Association, Successor Contract Administrator* (Docket No. 7147) ("WTNA Pretrial Brief"), ¶¶31-37 (setting forth the financial obligations owed to the Contract Administrator and the Trustee).

[6] In fact, the City is obligated to acknowledge and disclose these financial obligations in order to satisfy the requirements of section 943(b)(3) of the Bankruptcy Code, which the City has not done with respect to the Contract Administrator. *See* WTNA Pretrial Brief, ¶¶26-30 (setting forth that the Plan and the City fail to satisfy section 943(b)(3) of the Bankruptcy Code).

## B. Rejection of the Service Contracts Should Not Change the COPs Class and the Disputed COP Claims Reserve Should be Properly Established and Funded

15. The rejection of the Service Contracts creates confusion about the treatment of claims arising from the COPs. Under the Plan, a "COP Claim" includes any claim "based upon, arising out of or relating to . . . any COP Service Contracts," and is subject to the treatment set forth for Class 9 COP Claims. Plan, §§ I.A.74, II.B.3.p. However, claims arising from the rejection of an executory contract are treated as Class 14 Other Unsecured Claims. Plan §§ II.B.3.u.i, II.D.6.

16. As result of these Plan terms, it is unclear if the City is attempting to treat some COP Claims as Class 14 Claims, and not Class 9 COP Claims, which would further dilute the already *de minimus* recovery that COPs claimants are projected to receive under the Plan. The Class 9 treatment in and of itself is the subject of "unfair discrimination" objections pending before the Bankruptcy Court in connection with the Plan confirmation process. *See* WTNA Pretrial Brief, ¶¶9-13. Such a strained interpretation (and further diluted recovery) is clearly incorrect and should be clarified.

17. Additionally, as more fully set forth in the WTNA Pretrial Brief, the Disputed COP Claims Reserve provided for in the Plan – provided for without explanation of how and when the City will establish such Disputed COP Claims Reserve, if at all – is clearly insufficient for a number of reasons, and now even more insufficient given that it should account for and include a reserve for rejection damages. *See* WTNA Pretrial Brief, ¶¶18-23. Given the terms of the Plan and the purpose of the Disputed COP Claims Reserve (to act as a reserve to cover distributions to holders of COP Claims in Class 9), such reserve will ultimately be the source of funding for the rejection damages claims that result from the rejection of the Service Contracts.

18. Furthermore, as the City has stated on several occasions, it is not seeking to invalidate the Service Contracts entirely in the COP Litigation, rather it is only seeking to invalidate the payment stream of principal and interest payments to be made to the holders of the COPs under the Service Contracts. Therefore, even if the City is successful in the COP Litigation, there will still be rejection damages on account of the City's contractual obligations to the Service Corporations, the Contract Administrator, and other third-party beneficiaries of the Service Contracts and such amounts, as stated above, fall within the definition of COP Claim and Class 9, not Class 14.

19. By failing to establish an accurate and fully funded disputed claims reserve, the City is in effect attempting to circumvent the claims allowance process; deeming the WTNA Proofs of Claim and, also, any to-be-filed rejection damages claims disallowed. This is impermissible, deprives the Contract Administrator of due process, and should be resolved before the Service Contracts can be deemed rejected.

**C.      Rejection Damages Claim**

20. Under section 6.4.1 of the Contract Administration Agreement, the Contract Administrator is "entitled and empowered" to file, prove, collect, and distribute any amounts payable or delivered by the City on such claims resulting from the City's obligations to the Service Corporations under the Service Contracts. Contract Administration Agreement, § 6.4.1. As such, the Contract Administrator is empowered to (and will) file any claim related to the rejection of the Service Contracts.

21. The City is hereby notified, without waiver to any other arguments or amounts, that any rejection damages claim related to the Service Contracts will be no less than the amounts set forth in the WTNA Proofs of Claim and, to the extent not otherwise resolved,

7

13-53846-tjt    Doc 7340    Filed 09/08/14    Entered 09/08/14 19:22:45    Page 7 of 9

post-petition fees, costs, or expenses of no less than $1.9 million, which is not and shall not be deemed a waiver of the Contract Administrator's arguments regarding the payment of the post-petition fees and expenses of the Contract Administrator and the Trustee as set forth in the WTNA Pretrial Brief and elsewhere.

## CONCLUSION

WHEREFORE, out of an abundance of caution, the Contract Administrator files this Rejection Response to reserve and preserve its rights to object to the Rejection Notice pending resolution of the matters set forth above or otherwise.

Dated: September 8, 2014  
       New York, New York

RESPECTFULLY SUBMITTED,

By: /s/ Heath D. Rosenblat
    Kristin K. Going, Esq.
    Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Kristin.Going@dbr.com
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140

-and-

Dirk H. Beckwith, Esq. (P35609)
FOSTER SWIFT COLLINS & SMITH, P.C.
32300 Northwestern Highway, Suite 230
Farmington Hills, Michigan 48334-1471
E-mail: dbeckwith@fosterswift.com
Telephone: (248) 539-9918

*Counsel for Wilmington Trust, National Association, as Successor Contract Administrator*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Heath D. Rosenblat, an attorney in the law firm of Drinker Biddle & Reath LLP, certify that on this 8th day of September 2014, I caused the foregoing *Response of Wilmington Trust, National Association, to Notice of Amended Executory Contracts and Unexpired Leases to be Rejected Filed by the City of Detroit* to be filed and served by operation of the CM/ECF system for the Eastern District of Michigan Bankruptcy Court upon all registered users thereof.

    /s/ Heath D. Rosenblat
Heath D. Rosenblat, Esq.
DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036-2714
E-mail: Heath.Rosenblat@dbr.com
Telephone: (212) 248-3140