Association of Professional & Technical Employees
2727 Second Avenue Suite 152
Detroit, MI 48201

Objection to City of Detroit Plan of Adjustments including all amendments filed prior to Monday,
September 8, 2014

This notice serves as a formal protest to the City of Detroit and any related parties efforts to deny the
Association of Professional & Technical Employees the right to continue efforts for monetary
compensations  including proof of claims filed for members of the Association who were wrongly
discharged, laid-off, or demoted, Including retirement and health care benefits.

Dempsey Addison
President of APTE

FILED
2014 SEP -8 P 4:34
U.S. BANKRUPTCY COURT
E D MICHIGAN-DETROIT

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT _____ District of _____ | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br><br>City of Detroit, Michigan | Case Number:<br><br>13-53846 |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Dempsey Addison

| Name and address where notices should be sent:<br>Dempsey Addison<br>265 East Ferry Street<br>Detroit, Michigan 48202<br><br>Telephone number: 313 452-7154    email: saddison01@hotmail.com | **COURT USE ONLY**<br>☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>   (If known)<br><br>Filed on:_____ |
|---|---|
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number:          email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**     $          204,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

| **2. Basis for Claim:** *Improper Lay-off, Violation of Contract*<br>(See instruction #2)   *Loss of Wages and future earnings* |
|---|

| **3. Last four digits of any number by which creditor identifies debtor:**<br>6 9 8 1 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim** (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>**Describe:**<br><br>**Value of Property:** $_____<br><br>**Annual Interest Rate**_____% ☐ Fixed  or  ☐ Variable<br>(when case was filed) | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**<br><br>$_____<br><br>**Basis for perfection:** _____<br><br>**Amount of Secured Claim:** $_____<br><br>**Amount Unsecured:** $_____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B)

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

☑ I am the creditor.    ☐ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Dempsey Addison
Title:
Company:
Address and telephone number (if different from notice address above):

(Signature) Dempsey Addison    Feb 20, 2014    (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT _Eastern_ District of _Michigan_ | PROOF OF CLAIM |

**Name of Debtor:**
City of Detroit, Michigan

**Case Number:**
13-53846

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Members of Association of Professional & Technical Employee**
Name and address where notices should be sent:
Association of Professional Technical Employees
2727 Second Avenue Suite 150
Detroit, MI 48201
Telephone number:            email: thada3t@yahoo.com

Name and address where payment should be sent (if different from above):

Telephone number:            email:

COURT USE ONLY
☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $3,895,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Jobs loss through improper lay-offs; Loss of fringe benefits;
(See instruction #2)   Health care, pensions, cola; loss of wages, reduction in pay

**3. Last four digits of any number by which creditor identifies debtor:**
6 9 8 1

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $

Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$

Basis for perfection:_____

Amount of Secured Claim:  $

Amount Unsecured:  $

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:
$

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: _Dempsey Addison_
Title: _PRESIDENT_
Company: ~~County~~ _Association of Professional & Technical Employees_
Address and telephone number (if different from notice address above):  (Signature) _Dempsey Addison_  (Date) _2/2/2014_

Telephone number:        email: _theda 34@yahoo.com_

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

Employee is on Workers' Comp or LTD - DNP

# City of Detroit
## Human Resources Department
### Notice of Layoff

| Department: <u>Human Services</u> | Division: Head Start |
|---|---|
| Employee Name: <u>Dempsey Addison</u> | Phone # <u>313-~~567-1235~~</u> *758-0985* |
| Address: <u>265 E. Ferry Rd.</u> | City: Detroit Twp Zip: <u>48202</u> |
| Soc. Sec. No.xxx-xx-9575 | Oracle ID: 14661 |

Retirement System No. <u>189892</u>

You are hereby notified that effective <u>7/14/12</u> you will be laid off from the position of <u>Child Dev Crd-Health SV</u> for the following reason: <u>lack of funding</u>.

| Last Day Worked: <u>7/13/12</u> | Last Day Paid: <u>7/13/12</u> |
|---|---|
| Seniority Date: <u>8/19/85</u> | Augmented Seniority Date: _____ |
| Class Seniority Date: | Bargaining Unit: <u>0100</u> |

Prepared By: <u>Raquiba Dismuke/jh</u>

Issued By:

(signature) *Virginia B Siler* (Title) *Mgr II*

Change in Address/Phone: _____     Email:

In order for you to receive future payments, notification of displacement or re-call (if applicable), and other important information, please verify that the address and telephone number listed above is correct. You are <u>required</u> to provide

**Written Notification of any future change in address or telephone numbers to:**

Human Resources Department,
Attn: Contact Info. Change
Coleman A. Young Municipal Center, Suite 628
Detroit MI 48226

#### Displacement and Lump Sum Vacation Payout

The City of Detroit will complete the citywide displacement ("bumping") process no later than sixty (60) calendar days from the effective date of a Reduction in Force. The City of Detroit Human Resources Department will notify you at the address and phone number(s) listed above within (60) days of the Reduction in Force, if and when it is determined that you are eligible to displace on a citywide basis.

Any employee who is notified by Human Resources of a displacement will have the opportunity to elect to receive a lump sum payment for any accrued vacation time or leave his/her vacation bank intact.

All other employees who remain laid off (i.e., ineligible to displace), will automatically receive a lump sum payment for any unused vacation days and compensatory time *including* any prorated vacation time due the employee. The lump sum vacation payment will be issued sixty (60) days from the effective date of the Reduction in Force.

Copyright © City of Detroit, 2001. All rights reserved.
Notice of Layoff
Effective: 08/09/11
FORM9060
Rev 13

# City of Detroit
## Human Resources Department
### Notice of Layoff

| | |
|---|---|
| Department: Human Services | Division: CSBG |
| Employee Name: Anita Mitchell | Phone # 313-342-9362 |
| Address: 19808 Tracey | City: Detroit  Zip: 48235 |
| Soc. Sec. No. xxx-xx-9153 | Oracle ID: 11963 |
| Retirement System No. 226546 | |

You are hereby notified that effective 6/16/12 you will be laid off from the position of Pr Community Services Asst. for the following reason: lack of funding.

| | |
|---|---|
| Last Day Worked: 6/15/12 | Last Day Paid: 6/15/12 |
| Seniority Date: 01/10/95 | Augmented Seniority Date: _____ |
| Class Seniority Date: | Bargaining Unit: 0100 |

Prepared By: Raquiba Dismuke/jh

Issued By:

(signature) _____     (Title) Manager +

Change in Address/Phone: _____     Email: _____

In order for you to receive future payments, notification of displacement or re-call (if applicable), and other important information, please verify that the address and telephone number listed above is correct. You are required to provide

Written Notification of any future change in address or telephone numbers to:

Human Resources Department,
Attn: Contact Info. Change
Coleman A. Young Municipal Center, Suite 628
Detroit MI 48226

### Displacement and Lump Sum Vacation Payout

The City of Detroit will complete the citywide displacement ("bumping") process no later than sixty (60) calendar days from the effective date of a Reduction in Force. The City of Detroit Human Resources Department will notify you at the address and phone number(s) listed above within (60) days of the Reduction in Force, if and when it is determined that you are eligible to displace on a citywide basis.

Any employee who is notified by Human Resources of a displacement will have the opportunity to elect to receive a lump sum payment for any accrued vacation time or leave his/her vacation bank intact.

All other employees who remain laid off (i.e., ineligible to displace), will automatically receive a lump sum payment for any unused vacation days and compensatory time including any prorated vacation time due the employee. The lump sum vacation payment will be issued sixty (60) days from the effective date of the Reduction in Force.

Copyright © City of Detroit, 2001. All rights reserved.

Employee is on Workers' Comp or LTD - DNP ☐

City of Detroit
Human Resources Department
Notice of Layoff

| Department: Human Services | Division: CSBG |
|---|---|
| Employee Name: Lynn Miller | Phone # 313-823-4120 |
| | 313-468-2449 |
| Address: 8200 E. Jefferson #1807 | City: Detroit Zip: 48214 |
| Soc. Sec. No.xxx-xx-7151 | Oracle ID: 17368 |
| Retirement System No. 251652 | |

You are hereby notified that effective 6/16/12 you will be laid off from the position of Pr Community Services Asst. for the following reason: lack of funding.

| Last Day Worked: 6/15/12 | Last Day Paid: 6/15/12 |
|---|---|
| Seniority Date: 12/22/97 | Augmented Seniority Date: _____ |
| Class Seniority Date: | Bargaining Unit: 0100 |

Prepared By: Raquiba Dismuke/jh

Issued By: _(signature)_  (Title) Manager I

Change in Address/Phone: _____    Email: LRM1108@aol.com

In order for you to receive future payments, notification of displacement or re-call (if applicable), and other important information, please verify that the address and telephone number listed above is correct. You are required to provide

Written Notification of any future change in address or telephone numbers to:

Human Resources Department,
Attn: Contact Info. Change
Coleman A. Young Municipal Center, Suite 628
Detroit MI 48226

Displacement and Lump Sum Vacation Payout

The City of Detroit will complete the citywide displacement ("bumping") process no later than sixty (60) calendar days from the effective date of a Reduction in Force. The City of Detroit Human Resources Department will notify you at the address and phone number(s) listed above within (60) days of the Reduction in Force, if and when it is determined that you are eligible to displace on a citywide basis.

Any employee who is notified by Human Resources of a displacement will have the opportunity to elect to receive a lump sum payment for any accrued vacation time or leave his/her vacation bank intact.

All other employees who remain laid off (i.e., ineligible to displace), will automatically receive a lump sum payment for any unused vacation days and compensatory time including any prorated vacation time due the employee. The lump sum vacation payment will be issued sixty (60) days from the effective date of the Reduction in Force.

Copyright © City of Detroit, 2001. All rights reserved.

Employee is on Workers' Comp or LTD - DNP

# City of Detroit
## Human Resources Department
### Notice of Layoff

| Department: Human Services | Division: CSBG |
|---|---|

| Employee Name: Trent Sanford | Phone # 313-~~898-7906~~  492-2998 |
|---|---|

Address: ~~2209 Lexington #702~~ 18195 Lincoln Drive    City: ~~Pray~~ Southfield  Zip: ~~48033~~ 48076

Soc. Sec. No. xxx-xx-0720     Oracle ID: 13461

Retirement System No. 226981

You are hereby notified that effective 6/16/12 you will be laid off from the position of Pr Social Planning & Dev Specialist for the following reason: lack of funding.

| Last Day Worked: 6/15/12 | Last Day Paid: 6/15/12 |
|---|---|
| Seniority Date: 5/25/95 | Augmented Seniority Date: ____ |
| Class Seniority Date: | Bargaining Unit: 0100 |

Prepared By: Raquiba Dismuke/jh

Issued By: _Sheila Washington Bond_ (signature)   (Title) Manager I

Change in Address/Phone: _____    Email: Lucybeck840@yahoo.com

In order for you to receive future payments, notification of displacement or re-call (if applicable), and other important information, please verify that the address and telephone number listed above is correct. You are required to provide

### Written Notification of any future change in address or telephone numbers to:

Human Resources Department,
Attn: Contact Info. Change
Coleman A. Young Municipal Center, Suite 628
Detroit MI 48226

### Displacement and Lump Sum Vacation Payout

The City of Detroit will complete the citywide displacement ("bumping") process no later than sixty (60) calendar days from the effective date of a Reduction In Force. The City of Detroit Human Resources Department will notify you at the address and phone number(s) listed above within (60) days of the Reduction in Force, if and when it is determined that you are eligible to displace on a citywide basis.

Any employee who is notified by Human Resources of a displacement will have the opportunity to elect to receive a lump sum payment for any accrued vacation time or leave his/her vacation bank intact.

All other employees who remain laid off (i.e., ineligible to displace), will automatically receive a lump sum payment for any unused vacation days and compensatory time including any prorated vacation time due the employee. The lump sum vacation payment will be issued sixty (60) days from the effective date of the Reduction In Force.

Copyright © City of Detroit, 2001. All rights reserved.

Notice Effective: 08/09/11    FORM 9900 Rev 13

# City of Detroit Human Resources Department
## Notice of Reduction in Force Rights

TO:         Timothy Jeude
                 10985 Beaconsfield
                 Detroit MI 48224

FROM:

DATE:      June 5, 2012

SUBJECT:   Notice of Reduction in Force Rights

Your position of Principal Community Services Asst. has been reached for layoff due to
Lack of Funding. In accordance with Human Resources Rule 10 and/or applicable contract
provision(s), you have the following rights within Finance Department to:

---

**SECTION 1** – (To be completed by Human Resources)

1.     **A Demotion in Series to the title of** <u>Sr. Community Services Ass.</u> **at a salary of**
<u>$47,400</u>.

      The status change to your new title will be effective <u>6/18/12</u>.

2.     **A Demotion or Transfer to the formerly held class of** _____, **at a salary of** $

      The status change to your new title will be effective _____.

☐    The change in class title may impact your health care benefit plans and premiums.

---

**SECTION 2** – (To be completed by Employee)

In accordance with Human Resources Rule 10 and/or applicable contract provision(s), I
understand that my failure to select one of the above-mentioned options shall result in layoff and
may affect my citywide displacement and recall rights. I understand that by waiving my right *to
a demotion or transfer*, I may be deemed ineligible for unemployment benefits by the Michigan
Unemployment Insurance Agency.

☐ I select # _____        OR        ☒ I select layoff _____
                                                                       (Initial)

Employee Signature _Timothy E Jeude_ Date 6-6-2012

Copyright © City of Detroit, 2002. All rights reserved.

Notice of Reduction in Force Rights
Effective: 08/09/11
Rev 3

CECILY MCCLELLAN AND DEMPSEY ADDISON,
in her capacity as President of the
Association of Professional and
Technical Employees,

Case No.
Hon.

      Plaintiff,

v.

MAURA CORRIGAN, MAYOR DAVE BING,
And KIRK LEWIS

      Defendants.

_____/

Jerome D. Goldberg (P61678)
Jerome D. Goldberg, PLLC
Attorney for Plaintiff
2920 East Jefferson, Suite 101
Detroit, MI 48207
(313) 393-6001

_____/

## COMPLAINT

There is no other pending or resolved civil action arising out of
the transaction or occurrence alleged in the complaint.

*Jerome D. Goldberg*
Jerome D. Goldberg (P61678)

    NOW COME Plaintiffs Cecily McClellan and Dempsey Addison, in her capacity as

President of the Association of Professional and Technical Employees, by and through their

attorneys, Jerome D. Goldberg, PLLC, and for their Complaint against the Maura Corrigan,

~~Mayor Dave Bing, and Kirk Lewis and their leading complaint [illegible]~~

## JURISDICTION / PARTIES

1. Cecily McClellan is an employee of the City of Detroit, Department of Human Services, who is paid through a federal Community Services Block Grant (CSGB) which is distributed from the State of Michigan to the City of Detroit as the Community Action Agency.

2. Dempsey Addison is the president of the Association of Professional and Technical Employees (APTE), a union representing employees of the City of Detroit Department of Human Services whose jobs are funded through the Community Services Block Grant, including Cecily McClellan.

3. Maura Corrigan is the Director of the Michigan Department of Human Services.

4. Mayor Dave Bing is the mayor of the City of Detroit.

5. Kirk Lewis is the deputy mayor of the City of Detroit.

6. This complaint is for a writ of mandamus, injunctive relief pursuant to MCR 3.310 and declaratory relief pursuant to MCR 2.605.

**COUNT I – VIOLATION OF MCL 400.1108, 42 USCS 9908, 42 USCS 9915, AND 45 CFR 96.92 BY MAURA CORRIGAN IN ILLEGALLY CUTTING OFF CSBC FUNDS TO THE CITY OF DETROIT.**

7. Plaintiff incorporates paragraphs 1 – 6.

8. The City of Detroit operates as the designated Community Action Agency for the distribution and utilization of Community Service Block Grants which are awarded to the State of Michigan by the federal government for the benefit of residents of the City of Detroit.

9. The Community Service Block Grants are utilized to supply emergency services to needy Detroiters, including assistance to stop foreclosures, evictions and utility shut-offs, finding shelter, providing clothing, and assistance with transportation needs and tax preparation

10. Timothy Jewde, Anita Mitchell, Lynn Miller, Sonya Reed-Nichols, Tony Hernton, Trent Sanford and Cecily McClellan are City of Detroit employees who are members of

2

APTE. Their jobs are funded by CSBG grant funds as they administer the CSBG grants on behalf of the needy Detroiters who are helped by the grant funds.

11.     APTE employees whose jobs are funded by the CSBG grant also help administer weatherization funds aimed at helping needy Detroiters.

12.     In February, 3, 2012, Michigan Department of Human Services Supervisor Maura Corrigan approached City of Detroit Mayor Dave Bing to solicit his cooperation to effectuate the State of Michigan's intent to transfer the Community Action Agency (CAA) designation for the administration of CSBG grant funds from the City of Detroit to a new, non-profit CAA. **Exhibit 1, attached.**

13.     On February 8, 2012, Mayor Dave Bing indicated his agreement with Supervisor Corrigan's proposal to de-designate the City of Detroit as the CAA for the distribution of CSBG funds to needy Detroiters. **Exhibit 2, attached.**

14.     Pursuant to Mich Admin Code R 400.19405, for there to be a voluntary change in the City of Detroit's designation as the CAA for the distribution and administration of CSBF funds for Detroiters, any written request by Mayor Bing must be concurred with by the local governing body of the City. **Exhibit 3, attached.**

15.     On March 2, 2012, Supervisor Corrigan testified to Detroit City Council in an attempt to "persuade" City Council to concur with Mayor Bing's voluntary de-designation of the City as the CAA for the administration of CSBG grant funds for Detroit. **Exhibit 4, attached.**

16.     On March 15, 2012, Detroit City Council rejected Supervisor Corrigan's attempt to concur with Mayor Bing's willingness to de-designate the City of Detroit's CAA status. In a letter from City Council President Charles Pugh to Supervisor Corrigan on behalf of the Council, he stated: "[W]e believe the City's residents would be best-served by maintaining

3

DDHS' programmatic role in distributing federal Community Service Block Grant (CSBG) funds." Exhibit 5, attached.

17. On March 23, 2012, Stephanie Comai, Acting Director of the Bureau of Community Action and Economic Opportunity, stated on behalf of the Michigan Department of Human Services, that the State would be issuing a Notice of Hearing to terminate the Detroit Department of Human Services designation as a Community Action Agency for CSBG funding. **Exhibit 6, attached.**

18. 42 USCS 9915 provides for procedures for the State to terminate the designation of a city as the CAA for the purpose of distribution of CSBG funds.

19. Section 9915(a)(1) and (2) provides that the State must inform the entity of the deficiency to be corrected, and require the entity to correct the deficiency.

20. Section 9915(a)(3)(A) and (B) provides that the state may offer training and technical assistance, if appropriate, to help correct the deficiency, and if the State determines that such training and technical assistance are not appropriate, prepare and submit to the U.S. Secretary of Health and Human Services a report stating the reasons for such a determination.

21. On information and belief, a report in conformance with Section 9915(a)(3)(B) stating the basis for such a determination has not been prepared and submitted.

22. The March 23, 2012 State of Michigan letter to Ursula Holland, ~~director~~ Interim the City of Detroit's Department of Human Services, while the State of Michigan noted that it did not believe a Quality Improvement Plan, as allowed for under Section 9915(a)(4), would be appropriate to correct the City's alleged deficiencies. **See Exhibit 6.**

4

23.     Section 9915(a)(5) provides for mandatory notice and an opportunity for a hearing prior to a State initiating proceedings to terminate the designation of a City as the CAA for distribution of CSBG funds or reducing funding.

24.     MCL 400.1108(2) states that before rescinding the designation of a community action agency, the Director of the State Department of Human Services must: (a) consult with the director of the CAA, (b)consult with the chief elected official of the city designated as the CAA, (c) hold at least one public meeting in the service area to provide low income and other citizens living with the service area the opportunity to review and comment upon the strengths and weaknesses of the existing or proposed CAA, and (d) consult with obtain the advice of the commission on the proposed action.

25.     In addition, MCL 400.1108(4) states that if a state attempts to rescind the designation of a CAA, it must follow the procedures of the Community Services Block Grant Act, 42 USC 9901 to 9924.

26.     The Michigan Family Independence Agency Community Services Manual, Item 501, outlines the parameters for the mandatory public hearing that must be conducted prior to initiating proceedings to terminate the designation of or reduce the CSBG funding of the CAA.

27.     The requirements for the public hearing include proving low income and other citizens living within the service area the opportunity to review and comment upon the strengths and weaknesses of the existing community action agency, recognizing attendees right to speak, providing adequate accommodations for the public meeting, and accepting written comments for up to 7 days after the public meeting. **Exhibit 7, attached, State manual excerpts**.

5

28.     The State of Michigan has not conducted a public hearing regarding the rescinding of the City of Detroit Department of Human Services as the CAA for the distribution of CSBG funds to needy Detroit residents.

29.     Pursuant to both federal and Michigan state law, the State of Michigan has no authority to rescind the City of Detroit's CAA status or even begin the rescission process without holding such a hearing.

30.     42 USC 9908 (which is incorporated into the Michigan state statute) provides that a CAA will not have its funding terminated, unless after notice and an opportunity for a hearing on the record, the State determines that cause exists for such termination, subject to review by the Secretary of Human Services as provided in 42 USCS 9915(b).

31.     45 CFR 96.92 provides that where a State determines that it will terminate present or future funding of a CAA, the State must provide the CAA with notice and an opportunity for hearing on the record prior to terminating funding.

32.     In addition, if a review of the decision to terminate funding is requested by the CAA, the State may not discontinue present or future funding until the Department of Health and Human Services confirms the State's finding of cause.  **Id.**

33.     In the present case, on information and belief, the State of Michigan terminated CSBG funds to the City of Detroit as early as October, 2011.  **Exhibit 8, attached.**

34.     In her March 2, 2012 testimony to Detroit City Council, Michigan Department of Human Services Director Maura Corrigan, in an effort to "persuade" City Council into concurring with Mayor Bing's agreement with the State's plan to de-designate the City of Detroit as the CAA for the distribution of CSBG grants to needy Detroiters, stated: "The problem if we go to adversarial is, of course, the money will stop flowing to the residents.  There are difficult

6

choices to be made. There will be a suspension of the money until the adversarial proceedings are concluded." See Exhibit 4.

35.     This is a direct and deliberate misstatement of the law, which requires that CSBG funds cannot be cut off until after the adversarial proceedings are concluded, meaning until after a final determination subsequent to notice and a public hearing.

36.     Even at that point, funds cannot be cut off until after a review of the termination is concluded by the federal government.

37.     As a result of Director Corrigan's illegal cut-off of CSBG funds to the City of Detroit, the neediest Detroiters are being denied desperately needed services, services which are vital to their very survival.

38.     In addition, as a result of Director Corrigan's illegal cut-off of CSBG funds to the City of Detroit, Plaintiff McClellan and the other APTE members now face lay-offs from their jobs, with the lay-offs scheduled for June 2012.

WHEREFORE:  Plaintiffs respectfully requests that this honorable court enter judgment in favor of Plaintiffs by:

a.   Issuing a temporary restraining order, preliminary injunction  and mandamus ordering Director Maura Corrigan to maintain and restore CSBG funds illegally terminated to the City of Detroit;

b.   Issuing a temporary restraining order and preliminary injunction and mandamus ordering Director Maura Corrigan to maintain and /or restore the City of Detroit Department of Human Services as the CAA for the delivery of CSBG funds to needy Detroiters pending the outcome of adversarial proceedings including a review by the federal Department of Health and Human Services in accordance with law.

c. Issuing a temporary restraining order and preliminary injunction and mandamus ordering Director Maura Corrigan from naming Wayne County Metro or any other agency as the CAA for the distribution of CSBG funds to needy Detroiters pending Detroiters pending the outcome of adversarial proceedings against the City of Detroit including a review by the federal Department of Health and Human Services in accordance with law.

d. Issuing a temporary restraining order and preliminary injunction and mandamus ordering Mayor Bing, Deputy Mayor Kirk Lewis or any other City of Detroit management personnel from laying off or terminating Plaintiff McClellan and the other APTE members named in this complaint whose jobs have been funded through the CSBG grant.

e. Converting the preliminary injunction into a permanent injunction and mandamus in accordance with the above terms.

Respectfully submitted,

JEROME D. GOLDBERG, PLLC

Jerome D. Goldberg (P61678)
Attorney for Plaintiff
2920 East Jefferson, Suite 101
Detroit, MI 48207
Phone (313) 393-6001

DATED: April 19, 2012

8

## VERIFICATION

State of Michigan )
                     )SS
County of Wayne )

     I hereby certify that I have read the foregoing Complaint and that the facts contained therein are true and accurate to the best of my knowledge, information and belief.

_____       _____
Dempsey Addison                                Cecily McClellan

On this, the 19th day of April, 2012, before me a notary public, personally appeared Dempsey Addison and Cecily McClellan, known to me (or satisfactorily proven) to be the persons whose name are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.
In witness hereof, I hereunto set my hand.

_____
                         , Notary Public
Wayne         County, Michigan
Acting in Wayne        County
My Commission expires: 01-11-2015

> Vanessa G Fluker
> Notary Public of Michigan
> Wayne County
> Expires 01/11/2015
> Acting in the County of Wayne

9

# EXHIBIT 1



RICK SNYDER
GOVERNOR

MAURA D. CORRIGAN
DIRECTOR

February 13, 2012

Mayor Dave Bing
Coleman A. Young Municipal Center
2 Woodward Ave. Ste. 1126
Detroit, Michigan 48226-3443

Re: Detroit Department of Human Services Community Action Agency Designation

Dear Mayor Bing:

I am writing this letter on behalf of Maura Corrigan, Director of the Michigan Department of Human Services. Thank you for meeting with us on Friday, February 3, 2012. We believe it was a productive meeting.

The purpose of this letter is to confirm, in writing, our understanding of your position regarding the transfer of the Community Action Agency ("CAA") designation from the Detroit Department of Human Services ("DDHS") to a new, non-profit CAA. At the February 3 meeting, in response to our inquiry, you indicated that you would cooperate with our intention to effect this transfer and you agreed that a new, non-profit entity should be selected to serve as the CAA. We appreciate your willingness to help take this constructive step toward ensuring that federal grant funds intended for Detroit residents are, in fact, received by Detroit residents.

Our next step, with respect to this issue, will be to consult with City Council. Please let me know as soon as possible if—for any reason—this letter does not accurately state your position with respect to DDHS's administration of Community Service Block Grants.

Sincerely,

Paul C. Smith

Cc:   Charles Pugh, City Council President
      Kirk Lewis, Maura Corrigan, Harvey Hollins, Stephanie Comai

CITY OF DETROIT
MAYOR'S OFFICE

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 1126
DETROIT, MICHIGAN 48226
PHONE: 313•224•3400
FAX: 313•224•4128
WWW.DETROITMI.GOV

February 8, 2012

Maura D. Corrigan, Director
MI Department of Human Services
235 South Grand Avenue
P.O. Box 30037
Lansing, Michigan 48909

Re: Detroit Department of Human Services Community Action Agency Designation

Dear Ms. Corrigan:

The purpose of this letter is to clarify the action that the Michigan Department of Human Services ("MDHS") is requesting of the City of Detroit. We are in agreement that a new Community Action Agency ("CAA") should be selected to serve the residents of the City of Detroit. The City of Detroit voluntarily agrees that the Detroit Department of Human Services ("DDHS") will step aside as the CAA for the City of Detroit. In place of DDHS, the State of Michigan and the City of Detroit would mutually select a new CAA to serve Detroit residents.

Therefore, we are requesting that the Executive Director of the Michigan Bureau of Community Services rescind the official designation of the DDHS as the CAA serving the City of Detroit.

Sincerely,

Dave Bing

Cc: Rick Snyder, Governor
Charles Pugh, City Council President
Chris Brown, Chief Operating Officer

DAVE BING, MAYOR

# EXHIBIT 2

# EXHIBIT 3

Switch Client | Preferences | Help | Sign Out

*My Lexis*™    Search    Get a Document    *Shepard's®*    More    History

Alerts

FOCUS™ Terms    Search Within  Original Results (1 - 1)    ▾     View
Advanced...    Tutorial

Source:  My Sources > Michigan > Find Statutes, Regulations, Administrative Materials & Court
Rules > MI - **Michigan Administrative Code** ›

TOC:  Michigan Administrative Code  > / . . . / > COMMUNITY ACTION PROGRAMS  > **R 400.19405 Request
for change in designation or service areas of community action agency.**

*MICH. ADMIN. CODE R 400.19405*

MICHIGAN ADMINISTRATIVE CODE
Copyright (c) 2012 State of Michigan
All rights reserved.

*** This document is current through Register No. 4, March 15, 2012 ***

DEPARTMENT OF LABOR & ECONOMIC GROWTH
BUREAU OF COMMUNITY SERVICES
COMMUNITY ACTION PROGRAMS

MICH. ADMIN. CODE R 400.19405 (2012)

R 400.19405 Request for change in designation or service areas of community action agency.

Rule 405. The chief elected official of a unit of local government of at least 10,000 population within a CAA's service area may, for reasons such as poor fiscal or programmatic administration specified in a written request concurred in by the local unit's governing body, do any of the following:

(a) Request that the executive director rescind official designation of the CAA serving the community.

(b) Request to withdraw from the CAA's service area.

(c) Request that a different CAA, either new or existing, be designated to serve the community.

NOTES:

**LexisNexis 50 State Surveys, Legislation & Regulations**

Day Care & Early Childhood Education

Source:  My Sources > Michigan > **Find Statutes, Regulations, Administrative Materials &
Court Rules > MI - Michigan Administrative Code** ›

TOC:  Michigan Administrative Code  > / . . . / > COMMUNITY ACTION PROGRAMS  > **R 400.19405
Request for change in designation or service areas of community action agency.**

View: Full

Date/Time: Friday, April 20, 2012 - 3:03 PM EDT

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT 4

# City of Detroit

## CITY COUNCIL



Charles Pugh
*President*

Gary Brown
*President Pro Tem*

Kenneth V. Cockrel, Jr.
Saunteel Jenkins
Brenda Jones
Kwame Kenyatta
Andre L. Spivey
James Tate
Jo Ann Watson

Janice M. Winfrey
*City Clerk*

Committee of the Whole Room • 1340 Coleman A. Young Municipal Center • Detroit, Michigan 48226

CHAIRPERSON - COUNCIL PRESIDENT
CHARLES PUGH

FRIDAY, MARCH 2, 2012
Asst. City Council Committee Clerk
Ms. Martha Jointer

## COMMITTEE OF THE WHOLE BEGINS AT 1:00 P.M.

_____ **A.**    **1:00 P.M. – DISCUSSION - RE:**  The City of Detroit Department of Human Services.  **(Mayor's Office, Detroit Department of Human Services and Maura Corrigan, Director of Michigan Department of Human Services)**

**Present:**      **Council Member Kenneth Cockrel, Jr.**
**Council Member Brenda Jones**
**Council Member Kwame Kenyatta**
**Council Member Andre Spivey**
**Council Member James Tate**
**Council Member JoAnn Watson**
**Council President Pro Tem Gary Brown**
**Council President Charles Pugh**

**Absent:**      **Council Member Saunteel Jenkins**

PUGH: Council Member Jenkins will call in by phone.

Attendees:    Stephanie Combine, Michigan Department of Human Services
Maura Corrigan, Director, Department of Human Services ›
Paul Smith, Michigan Department of Human Services
Harvey Hollins, Director, Office of Urban and Metropolitan
Initiatives for the Governor

Corrigan: Ms. Watson, I am explaining the steps towards voluntary de-certification; that takes the Mayor and the Council. There are also weatherization funds; the contract expires on March 31. We contacted Detroit Metro in order to keep that money flowing, which is Wayne Metro CAA, in order to keep the weatherization money flowing beginning on April 1.

In as I explained in my former remarks, as the interim CAA, if the City were to agree with the issuing of the concurrent resolution; if the Council were. The problem if we go to adversarial is, of course, the money will stop slowing to the residents.

There are difficult choices to be made. There will be a suspension of the money until the adversarial proceedings are concluded and it is our goal to keep the money flowing to the City. That is way those steps were made on the contingency. You cannot go there if you do not agree and a majority of the Council does not concur. We will go to the adversary proceedings and we will present the evidences.

**WATSON:** I appreciate you and I know you are the Honorable Maura Corrigan. You have been connected a long time. I have been told that some funds have already been suspended. The citizen who need services now and who needed them last week and prior weeks have not been able to get service because the State of Michigan has refuse to allow the City of Detroit draw down funds to take care of citizen who are in the greatest need. These are citizen who have been put off of welfare by the State of Michigan; kick out by the thousands from FIA who can only go to Human Services and they cannot get anything because the State is holding up the money.

Corrigan: I have attempted to lay out the situation as it is facing the city and our willingness given the inability to account for the money in letting more money flow in that circumstance, we are trying to allow the process to work, and I indicated, so that every penny of this money will go where it is supposed to go.

**WATSON:** Because some of this money is the president Barack Obama A R R A money and some of it is still here. I understand that some of the money has with it jobs links. The Federal Government says are to spend the money and the position that it maximizes the development of jobs where the money is spent to help people in the hardest area of need. If the money is taken out of the city of Detroit hands which you have a right to recommend. I respect the adverse finding that you found in the spring of 2011 had been provided to city Council we never received that.

Corrigan: Yes ma'am, did you have received all of them.

**WATSON:** There have been three investigations launched by some council members that you may not be aware of. It is not correct to say Council has done nothing. That is not correct. I cannot tell you how many letters of inquiry and investigation I have written personally based on head start and on the non-implementation of water affordability plan that was set up by President MaryAnn Mahaffey.

# EXHIBIT 5



*City of Detroit*
CITY COUNCIL

CHARLES PUGH
COUNCIL PRESIDENT

March 23, 2012

VIA FACSIMILE TRANSMISSION & U.S. MAIL
(313) 456-0526

Maura D. Corrigan, Director
Michigan Department of Human Services
3038 W Grand Blvd., Suite 5-350
Detroit, MI 48202

Re:    De-Designation of Detroit Department of Human Services as CAA

Dear Director Corrigan,

City Council is in receipt of your correspondence dated March 16, 2012. Please be advised we do not concur with the expression noted in Mayor Bing's February 8, 2012 letter to you relative to the voluntary de-designation of the Detroit Department of Human Services (DDHS) as the City's Community Action Agency (CAA). After having deliberated over this matter at some length, and for the reasons set forth in this letter, we believe the City's residents would be best-served by maintaining DDHS' programmatic role in distributing federal Community Service Block Grant (CSBG) funds. This should certainly be the case until representatives from your department, the Mayor's Office and City·Council determine that a Detroit-based non-profit entity should be designated as the CAA to serve the City of Detroit. If an alternate CAA becomes necessary at some future point, Council strongly supports the utilization of an RFP process, with City involvement, to select an eligible entity to administer CSBG funds.

Again, this determination was not arrived at lightly and has been discussed at length among myself and my colleagues. City Council acknowledges that serious allegations of wrong-doing have arisen within DDHS's operations and that some credible supporting evidence may exist on these claims. However, it is Council's position that de-designation is not desirable, necessary, nor is it in the best interest of the citizens of Detroit at this time and thus should not occur. The current stalemate has no doubt left countless numbers of citizens without the services they both need and deserve.

Consequently, this letter also serves as a formal request for the restoration of the City's CSBG funding to DDHS. These funds are currently being held by the State, however, City Council has found no authority to support this action and understand that it is specifically prohibited in the

Coleman A. Young Municipal Center   2 Woodward Ave., Suite 1340   Detroit, Michigan 48226
(313) 224-4510       Fax (313) 224-0230
CouncilPresidentPugh@detroitmi.gov

13-53846-tjt    Doc 7359    Filed 09/08/14    Entered 09/09/14 13:48:19    Page 31 of 50

federal regulations. Given that DDHS remains the only CAA currently designated to serve Detroit residents under the controlling federal regulations, it follows that DDHS must remain in place, active and fully supported by the State until such time that it is replaced, either through a voluntary process or through the adversarial one that you have referenced in the past. The State's current suspension of funding to DDHS, coupled with the political maneuvering surrounding the proposed de-designation has created a level of uncertainty and a real void in the safety net that needy Detroit residents have come to rely upon as well as accelerating layoffs in DDHS.

We understand the severity of the State's allegations on which the request to de-designate is based; however, it is Council's belief that the concerns noted by the State can be remedied. This can be accomplished through proper management of DDHS, for which the City has already taken important remedial steps, such as initiating investigations, removing the Director, terminating certain employees implicated in the alleged wrongdoing, and the development of sound internal controls of the operation with ample oversight to insure compliance with said controls.

It is our sincere hope and firm belief that the City and State can negotiate a mutually agreeable solution to our shared concerns surrounding the operation of DDHS and the future of the City's CSBG funding. This is evidenced by the compromises discussed to date and the State's willingness to engage in productive dialogue. We welcome the opportunity to further discuss solutions that will achieve our common goal – to ensure eligible Detroit residents receive the assistance they so greatly need and deserve – by implementing strict oversight, monitoring and reporting procedures to insure DDHS compliance with federal policies.

Sincerely,

Charles Pugh
President, Detroit City Council

c.c.    Mayor Dave Bing
        Chris Brown, COO
        Loretta Davis, Group Executive DHHS
        DHHS Interim Director Ursula Holland
        Paul C. Smith, Esq., Group Executive, People Group, MI Dept. Human Services
        Stephanie Comai, Director Revenue & Partnership Enhancement, MI Dept. Human
            Services
        Harvey Hollins, III, Director, MI Office of Urban and Metropolitan Initiatives

# EXHIBIT 6



STATE OF MICHIGAN

RICK SNYDER
GOVERNOR

DEPARTMENT OF HUMAN SERVICES
LANSING

MAURA D. CORRIGAN
DIRECTOR

March 23, 2012

Ms. Ursula Holland, Interim Director
City of Detroit Department of Human Services
1151 Taylor, Herman Kiefer Complex, 6th Floor
Detroit, MI 48202

Dear Ms. Holland:

The Bureau of Community Action and Economic Opportunity (BCAEO) within the Michigan Department of Human Services (MDHS) has completed the comprehensive monitoring report. The City of Detroit, Department of Human Services (DDHS) was given many opportunities to respond to our request to provide documentation. We made numerous communications through emails and telephone calls requesting program and accounting information. We also conducted a series of onsite visits in an attempt to obtain documentation and discuss the issues. All of these efforts were taken in an attempt to mitigate or eliminate findings identified during the review. Despite our efforts, DDHS could not supply a large portion of the requested information, and could not prove compliance with contract requirements.

The MDHS comprehensive monitoring report identifies significant deficiencies in the period under review. This report also disclosed that DDHS failed to correct major findings identified in prior periods, which shows a continuation of noncompliance by DDHS. Evidence of multiple, widespread, and repeated deficiencies involves gross negligence use of funds and criminal wrongdoing, which impairs DDHS' ability to administer the Community Services Block Grant (CSBG). These deficiencies include, but are not limited to, internal control breakdown(s) related to accounting transactions and cost allocations, internal control breakdown(s) related to client eligibility and internal control breakdown(s) related to service delivery. The MDHS has determined, based on the seriousness of the deficiencies and the time reasonably required to correct these deficiencies, a Quality Improvement Plan (QIP) is not appropriate.

DDHS has continuously failed to comply with the terms of the CSBG grant agreement to meet appropriate standards, goals, and requirements. Pursuant to Section 678C(a)(5) of the CSBG Act and Community Services Policy Manual (CSPM) Item 501 Termination or Reduction in Funding, a notice of hearing to terminate DDHS' designation as a Community Action Agency for CSBG funding will be forthcoming.

Seventeen (17) findings, two (2) administrative recommendations, and three (3) prior findings were identified in the comprehensive monitoring report. BCAEO expects DDHS to repay MDHS the identified disallowed costs using non-federal and non-state funds. Please submit repayment of the disallowed costs totaling $2,487,232.96 to MDHS by May 22, 2012.

Payment must be remitted to:

Michigan Department of Human Services
Bureau of Community Action and Economic Opportunity
Attn: Jeff Wyman, Fiscal Monitor
235 S. Grand Ave. Suite 204
P.O. Box 30037
Lansing, MI 48909

Enclosed is the comprehensive monitoring report. If you have any questions, please contact Cecilia Hutson at (313) 456-1246, or Kris Schoenow at (517) 241-8054.

Sincerely,

Stephanie Comai, Acting Director
Bureau of Community Action and Economic Opportunity

cc:     The Honorable Dave Bing
        The Honorable Charles Pugh
        The Honorable Gary Brown
        The Honorable Saunteel Jenkins
        The Honorable Kenneth V. Cockrel, Jr
        The Honorable Brenda Jones
        The Honorable Andre Spivey
        The Honorable James Tate
        The Honorable Kwame Kenyatta
        The Honorable JoAnn Watson
        Loretta V. Davis, Director/Health Officer
        Richard Young, Chief Accounting Officer, City of Detroit Finance Department
        Paula Kaiser VanDam, Acting Director Bureau of Community Service
        Kris Schoenow, Assistant Director, BCAEO
        Viran Parag, Grant Manager, BCAEO
        Steve Listman, Grant Monitor, BCAEO
        Jeff Wyman, Financial Analyst, BCAEO
        Cecilia Hutson, Financial Analyst, BCAEO
        Josh Larsen, Director, Office of Monitoring and Internal Controls
        Monitoring File ID #241, BCAEO

# EXHIBIT 7

**ISSUANCES AFFECTED**

REFERENCES

- The CSBG Act, P.L. 97-35 of 1981, as amended by the Coats Human Services Reauthorization Act of 1998
  - -- Section 676(b) State Application and Plan
  - -- Section 676(c) Funding Termination or Reductions
  - -- Section 678C. Corrective Action; Termination and Reduction of Funding

- PA 230 of 1981

- Community Action Program (CAP) Administrative Rules, R 400.19101—R 400.19606

## PURPOSE

To establish policy and procedures for Corrective Action, Termination or Reduction in funding under the CSBG Program.

## BACKGROUND

- Section 676(b)(8) of the Act requires that :

  ...any eligible entity in the State that received funding in the previous fiscal year through a community services block grant made under this subtitle will not have its funding terminated under this subtitle, or reduced below the proportional share of funding the entity received in the previous fiscal year unless, after providing notice and an opportunity for a hearing on the record, the State determines that cause exists for such termination or

  678C(b).

  **Note:** Michigan's definition of "eligible entity" is a community action agency (CAA).

- Section 676(c) of the Act states that – For the purposes of making a determination in accordance with subsection (b)(8), with respect to:

  1. A Funding Reduction -- the term 'cause' includes:

     a) a statewide redistribution of funds to respond to
        - the results of the most recently available census or other appropriate data;
        - the designation of a new eligible entity; or
        - severe economic dislocation; or

     b) the failure of an eligible entity to comply with the terms of an agreement or a State plan, or to meet a State requirement, as described in section 678C(a).

  2. A Termination -- the term 'cause' includes the failure of an eligible entity to comply with the terms of an agreement or a State plan, or to meet a State requirement, as described in section 678C(a).

- Section 678C(a) of the Act requires that states follow specific steps when issuing Corrective Action or imposing a Reduction or Termination in funding. Those steps have been incorporated into the following policy. Note: A determination to terminate the designation or reduce the funding of a CAA is reviewable by the Secretary of the federal Department of Health and Human Services (HHS).

## POLICY

A) Cause for a statewide redistribution of CSBG funds includes the state's

1. The results of the most recently available census or other appropriate data;

2. The establishment of a new eligible entity; and

3. Severe economic dislocation.

4.    a)  At the discretion of BCAEO (taking into account the seriousness of the deficiency and the time reasonably required to correct the deficiency), allow the CAA to develop and implement, within 60 days after being informed of the deficiency, a quality improvement plan to correct such deficiency within a reasonable period of time, as determined by BCAEO; and

Examples of instances in which BCAEO may exercise discretion on whether a quality improvement plan is appropriate or necessary may include, but not limited to the following:

- A deficiency for which an eligible entity has previously instituted a corrective action plan and has repeated findings;

- A deficiency that involves evidence of fraudulent reporting or use of funds, or other evidence of criminal wrongdoing and therefore presents a risk requiring immediate action.

b)  Not later than 30 days after receiving from the CAA a proposed quality improvement plan pursuant to subparagraph a), either approve such proposed plan or specify the reasons why the proposed plan cannot be approved; and

5.    Hold a public meeting in the service area to provide low income and other citizens living within the service area the opportunity to review and comment upon the strengths and weaknesses of the existing community action agency.

a)  To obtain the floor (right to speak) an attendee must be the first to stand when the person speaking has finished and must be recognized by the BCAEO Director before speaking.

b)  All remarks must be contained to 2 to 5 minutes and is at the discretion of the BCAEO Director.

c)  Adequate accommodations will be secured to hold the public meeting. If the amount of attendees exceeds the room capacity, attendees will be given the opportunity to submit written comments.

# EXHIBIT 8

CITY OF DETROIT
DEPARTMENT OF HUMAN SERVICES

1151 TAYLOR STREET
DETROIT, MICHIGAN 48202
PHONE 313·852·5609 TTY:311
FAX 313·852·4837

January 31, 2012

Mr. Alan Kimichik, Director
Office of Inspector General
235 S. Grand Ave Suite 1115
Lansing, MI 48933

Dear Mr. Kimichik:

As you know the City of Detroit - Department of Human Services (DHS) has been anxiously awaiting reimbursement for expenditures under our DOE-ARRA and CSBG programs. I am respectfully requesting to come to Lansing for a meeting with you and your team to discuss the status of reimbursement. As you are aware Detroit Urban League staffs were laid off in December, putting a halt to weatherization production. The department has approximately $1.1 million in unpaid invoices for weatherization contractors under the DOE-ARRA program, and approximately $1 million in outstanding invoices to contractors under our Community Services Block Grant (CSBG) program. The lack of payment is affecting this department's ability to provide quality, efficient and effective services. Telephone services have been interrupted due to lack of payment, and additional layoffs of Pantry & Clothing Boutique staffs are scheduled to occur Friday, February 3, 2012. Further delays in the payment process will result in additional layoffs of department staff.

I am confident that during our meeting we can come to a viable resolution to this issue, as well as strategies to more effectively partner to ensure that our most vulnerable population receives the much needed services that this department provides.

Please advise me of your availability to meet on either Wednesday, 2/1/12, Thursday 2/2/12 (afternoon) or Friday 2/3/12. Thank you in advance for your time and consideration to address this critical issue.

Regards,

Ursula Holland
Interim Director

cc: Josh Laren, Internal Monitoring
Stephanie Comai, BCAEO

DEMPSEY ADDISON, individually and
in her capacity as President of the
Association of Professional and
Technical Employees,

                                                 Case No.
                                                 Hon.

        Plaintiff,

v.

CITY OF DETROIT – DEPARTMENT OF HUMAN SERVICES, U.S.DEPARTMENT OF
HEALTH AND HUMAN SERVICES and
COMMUNITY DEVELOPMENT INSTITUTE

        Defendants.

_____/

Jerome D. Goldberg (P61678)
Jerome D. Goldberg, PLLC
Attorney for Plaintiff
2920 East Jefferson, Suite 101
Detroit, MI 48207
(313) 393-6001

_____/

## COMPLAINT

A civil action between these parties or other parties arising out of the transaction or occurrence
alleged in the complaint has been previously filed in this Court where it was given docket
number 11-005524-CK and assigned to Judge Amy Hathaway. The action is no longer pending.

                        _____
                        Jerome D. Goldberg (P61678)

NOW COMES Plaintiff, Dempsey Addison, individually and in her capacity as President

of the Association of Professional and Technical Employees, by and through her attorneys,

Jerome D. Goldberg, PLLC, and for her Complaint against Defendants states as follows:

### JURISDICTION / PARTIES

1.    Dempsey Addison is an employee of the City of Detroit, Department of Human Services, who is paid through a grant from Head Start to the City of Detroit, Department of Human Services. She is a resident of the City of Detroit, Wayne County, Michigan.

2.    Ms. Addison is the president of the Association of Professional and Technical Employees (APTE), a union representing employees of the City of Detroit. Approximately eight (8) APTE employees besides Ms. Addison have their positions funded via a grant from Head Start to the City of Detroit, Department of Human Services.

3.    The City of Detroit is a municipal corporation located in Wayne County, Michigan. The Department of Human Services is a City of Detroit department which acts as grantee for purposes of administering the Head Start grant from the U.S. Department of Health and Human Services for the City of Detroit.

4.    The U.S. Department of Health and Human Services is a department of the United States government.

5.    Community Development Institute is a foreign corporation doing business in the City of Detroit.

6.    This complaint is for injunctive relief pursuant to MCR 3.310, declaratory relief pursuant to MCR 2.605, and damages potentially exceed $25,000.00 exclusive of attorney fees and costs.

**FACTUAL BACKGROUND**

7.    Plaintiff incorporates paragraphs 1 – 6.

8.    The City of Detroit - Department of Human Services, received a grant in the amount of $24,692,288 from the U.S. Department of Health and Human Services to administer

2

the Head Start program for the City of Detroit for the period of 11/01/2011 through 10/31/2012. **Exhibit 1, attached**.

9.     The City of Detroit, Department of Human Services, has administered the Head Start program for the city of Detroit for over forty (40) years.

10.     Pursuant to the contract between the City of Detroit, Department of Human Services and U.S. Department of Health and Human Services, Dempsey Addison and nine (9) other APTE members have their salaries fully paid by funds from the Head Start grant. These employees are Theresia Prince, Delores Clarke, Toni Reeves, Justina Coleman, James Carr, Yolanda Acosta, Wayne Pierre, Raymond Watson and Mahesh Patel. **Exhibit 2, attached**. There are approximately thirty (30) other City of Detroit employees who are paid out of the Head Start grant.

11.     The governing body for the Head Start program for the City of Detroit is entitled the Community Service Commission, and is a tri-partite board composed of representatives from the community including parents and former Head Start parents, business and mayoral appointees and City Council members.

12.     There is also a Policy Council associated with the City of Detroit Head Start, Department of Human Services program. At least 51% of the Policy Council must be composed of parents who have children currently enrolled in Head Start, and the others are community representatives selected by grantee City of Detroit - Department of Human Services.

13.     On March 12, 2012, City of Detroit Mayor Dave Bing sent a letter to Kay Willmoth, Regional Program Manager for the U. S. Office of Head Start, stating that the City of Detroit did not plan on submitting a refunding application for the program period November 1, 2012 – October 31, 2013. The letter from Mayor Bing stated that the City of Detroit would

3

continue to administer the Head Start program and maintain staff to provide children and families with quality Head Start services through the current program period ending October 31, 2012. **Exhibit 3, attached**.

14.     After receiving the March 12, 2012 letter from Mayor Bing, the Head Start regional office suggested to the City of Detroit Department of Human Services that the Department amend the grant to terminate at the beginning of July 2012. A March 22, 2012, letter from Eunice Hayes, Chairperson of the Community Service Commission, governing body for the Head Start grant, noted that the City of Detroit agreed with the Regional Office and that the City of Detroit Department of Human Services would relinquish responsibility for the administration and oversight effective of June 30, 2012. **Exhibit 4, attached**.

15.     Neither the City of Detroit-Department of Human Services Governing Board for Head Start nor the Policy Board voted on and approved this unilateral decision to "relinquish" the Head Start grant for the City of Detroit on June 30, 2012 in violation of Head Start regulations.

16.     A March 28, 2012 letter from Kay Willmoth, Regional Program and Eric P. Staples, Regional Grants Management Office, acknowledged the U. S. Department of Health and Human Services' acceptance of the City of Detroit's "relinquishment" of the Head Start grant effective June 30, 2012. The letter indicated that Community Development Institute, a Denver, Colorado corporation would serve as the interim grantee. **Exhibit 5, attached**.

17.     On April 27, 2012, the Department of Health and Human Services issued a Notice of Award noting that the Head Start grant for the City of Detroit-Department of Human Services was being terminated effective June 30, 2012, and $11,244,040 in funds were being transferred to the Denver based interim grantee. **Exhibit 6, attached**.

4

18.     On March 30, 2012, Ms. Addison received a letter from Patrick A. Aquart, City of Detroit Human Resources Director, indicating that the APTE workers whose jobs are funded by the Head Start grant will be laid off no later than June 15, 2012. **Exhibit 7, attached.**

19.     Plaintiff have not been offered jobs with the replacement grantee.

20.     At a meeting attended by Plaintiff, her fellow APTE members and the entire Head Start staff for the City of Detroit with representatives of Community Development Institute and the U.S. Department of Health and Human Services, Plaintiff and her fellow APTE members were explicitly told that they would not be considered for jobs with the replacement grantee.

## COUNT I – BREACH OF CONTRACT AGAINST U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES AND THE CITY OF DETROIT

21.     Plaintiff incorporates by reference paragraphs 1-19.

22.     The contract between the U. S. Department of Health and Human Services and the City of Detroit–Department of Human Services covering the year 11/01/2012 – 10/31/2012 explicitly provides for payment of 100% of the salaries of Plaintiff and her fellow union members out of the federal Head Start grant. **See Exhibit 2.**

23.     The contract between the U. S. Department of Health and Human Services and City of Detroit-Department of Human Services provides that it is subject to HHS regulations codified at 45 CFR 1301, 1302, 1303, 1304, 1305, 1306, 1308, 1309 and 1310. **See Exhibit 1.**

**24.**     Appendix A to 45 CFR 1304.50 provides that pursuant to 45 CFR 1304.50(d)(i) all funding applications and amendments to funding amendments for Early Head Start and Head Start, including administrative services, prior to the submission of such applications to the grantee or to HHS must be approved by the Governing Body and Policy Council. **Exhibit 8, attached, regulations.**

5

25.     In the present case, Detroit Mayor Bing and Eunice Hayes, chairperson of the Community Service Commission, concurred in the U.S. Department of Human Services recommendation that the City of Detroit-Department of Human Services relinquish administration of the 11/01/11 – 10/31/2012 Head Start grant and agreed to an amendment of the grant terminating it as of 6/30/12 and transferring $11 million in funds to the Community Development Institute without submitting the amendment to the approval of the Governing Body and Policy Council.

26.     This was a breach of the contract between the U.S. Department of Health and Human Services and the City of Detroit-Department of Human Services which incorporates the federal regulations into the contract where the regulations state any amendment to the Head Start grant must be approved by the Governing Body and Policy Council.

27.     In *Meriden Community Action Agency v Donna Shalala*, 827 F Supp 54 (DC District Court 1993), the Court specifically held that a political unit of a city (like Mayor Bing in this case) cannot be a legally designated Head Start grantee and that the grant cannot be amended without following the proper regulations providing for the Community Action Agency having the status to terminate the grant subject to following federal statutes and regulations. **Exhibit 9, attached.**

28.     Defendant United States Department of Health and Human Services, acting through its agents, first suggested to Mayor Bing that the City of Detroit amend its contract with the Department of Human Services, knowing that the Mayor had no authority to do so without following proper procedures including the amendment being approved by the Governing Body and Policy Council

6

29.    Defendant U.S. Department of Health and Human Services, acting through its agents, approved an amended contract with the City of Detroit – Department of Human Services terminating the 11/-1/11 – 10/31/12 grant as of 6/30/12. **See Exhibit 6**. On information and belief, Defendant U.S. Department of Health and Human Services approved such amendment knowing that the amendment had not been voted on by the Governing Body and Policy Council.

30.    Plaintiff and her fellow union members are third party beneficiaries of the contract between U.S. Department of Human Services and City of Detroit – Department of Human Services pursuant to MCL 600.1405 as the payment of their salaries is explicitly provided for in the contract.

31.    As a proximate result of the breach of contract by Defendant City of Detroit – Department of Human Services and the United States Department of Health and Human Services, Plaintiff and her fellow union members now face imminent lay-off from their Head Start funded positions with the City of Detroit-Department of Human Services.

WHEREFORE: Plaintiffs respectfully request that this honorable court issue judgment in favor of Plaintiff and order:

a.    A writ of mandamus be issued against Ursula Holland, Director of the City of Detroit Department of Human Services and Patrick A. Aquart, city of Detroit Human Resources Director, enjoining them from laying off Plaintiff Dempsey Addison and her fellow APTE members whose jobs are funded under the Head Start grant for 11/1/2011 through 10/31/2011.

b.    A writ of mandamus be issued against Kaye Willmoth, Head Start Regional Program Manager and any other Head Start officials to continue the Head Start grant with the City

of Detroit through 10/31/2012 and not turn over grant funds for the administration of the grant through that period to Community Development Institute or any other entity.

## COUNT II – BREACH OF CONTRACT AGAINST COMMUNITY DEVELOPMENT INSTITUTE AND U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES

32.     Plaintiff incorporates paragraphs 1-30.

33.     Community Development Institute, a Denver based corporation, on information and belief, has received a contract from the U.S. Department of Health and Human Services in the amount of $11 million to administer the Head Start program with the City of Detroit for the period 7/1/2012 through 10/31/2012.

34.     The contract is in possession of Defendants.

35.     45 CFR 1302.11provides that the application to replace a grantee shall include a provision for continued employment by the applicant of the qualified personnel of the existing program. **See Exhibit 8.**

36.     45 CFR 1302.4 provides that unexpended funds from a grant may be transferred to the replacement grantee if the approved application of the replacement grantee undertakes to offer employment to the staff of the terminating grantee. **See Exhibit 8.**

37.     On information and belief, the federal regulations cited above are incorporated into the contract between the U.S. Department of Health and Human Services and Community Development Institute.

38.     Plaintiff and her fellow APTE members are third party beneficiaries of the contract between the U.S. Department of Health and Human Services and Community Development Institute pursuant to 600.1405, in that the contract specifically provides for Plaintiff and her fellow APTE members, whose jobs are currently funded under the Head Start

grant, being offered positions with Defendant Community Development Institute as the replacement grantee.

39.     In the present case, Plaintiff have not been offered jobs with the replacement grantee, Community Development Institute.

40.     At a meeting attended by Plaintiff, her fellow APTE members and the entire Head Start staff for the City of Detroit with representatives of Community Development Institute and the U.S. Department of Health and Human Services, Plaintiff and her fellow APTE members were explicitly told that they would not be considered for jobs with the replacement grantee.

41.     Defendant Community Development Institute's failure to offer continued employment to Plaintiff and her fellow APTE members who are currently working under the Head Start grant is a breach of their contract with U.S. Department of Health and Human Services.

42.     In the alternative, Defendant U.S. Department of Health and Human Services' failure to include a clause in their contract with Community Development Institute that mandates an offer of continued employment to Plaintiff and her fellow APTE members is a violation of their contract with Community Development Institute which incorporates the federal regulations mandating such an offer into the contract.

WHEREFORE: Plaintiff respectfully requests that this honorable court issue judgment against Defendant Community Development Institute and order:

a.  A preliminary injunction be issued against Defendant Community Development Institute ordering it to offer continued employment to Plaintiff and her fellow APTE members for the period 7/1/2012 through 10/31/2012.

9