# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
                    :

In re                      :        Chapter 9

                      :

CITY OF DETROIT, MICHIGAN,    :        Case No. 13-53846

                      :

          Debtor.        :        Hon. Steven W. Rhodes

                      :

                      :

-------------------------------------------------------x

## BRIEF OF CITY OF DETROIT REGARDING AUTHORITY OF MACOMB COUNTY PUBLIC WORKS COMMISSIONER TO OBJECT TO CITY'S PLAN ON BEHALF OF MACOMB COUNTY

The City of Detroit (the "City") hereby files this brief (this "Brief") in response to the Order Regarding Objections to the City's Plan of Adjustment Filed on Behalf of Macomb County (Docket No. 7385) (the "Briefing Order") regarding the authority of Anthony V. Marrocco, the Macomb County Public Works Commissioner (the "Public Works Commissioner"), to prosecute objections to the City's plan of adjustment (the "Plan") on behalf of Macomb County (the "County"). In support of this Brief, the City respectfully represents as follows:

## ARGUMENT

1. By the Briefing Order, the Court has required the Public Works Commissioner, and invited the City, to file briefs addressing the following two issues: (a) whether the Public Works Commissioner has the authority under

state or local law to act for the County in the City's chapter 9 case (the "Chapter 9 Case"); and (b) if not, whether the objections that the Public Works Commissioner has filed to the Plan should be stricken. Briefing Order, at 2.[1]

2. On September 12, 2014, the Public Works Commissioner filed the Withdrawal of Objections to the Plan of Adjustment of the City of Detroit Filed by Macomb County, by and Through Its Public Works Commissioner and Maintenance of Objections Filed by Macomb Interceptor Drain Drainage District and Brief on Public Works Commissioner's Authority to Prosecute Objections (Docket No. 7448) (the "Public Works Commissioner's Brief"). By the Public Works Commissioner's Brief, the Public Works Commissioner withdrew the objections to the Plan he filed purportedly on behalf of the County. Public Works Commissioner's Brief, at 1-5. The Public Works Commissioner, however: (a) failed to withdraw the objections with prejudice, as required by terms of the Memorandum of Understanding; and (b) elected to brief the issue of his authority

---

[1]  The Public Works Commissioner has filed various objections to confirmation of the Plan (collectively, the "County Objections") purportedly on behalf of the County (as well as on behalf of the Macomb Interceptor Drain Drainage District ("MIDDD")). See, e.g., Docket Nos. 4636, 6666, 7039. On September 9, 2014, the County entered into the Memorandum of Understanding Regarding the Formation of the Great Lakes Water Authority (the "Memorandum of Understanding"), a copy of which is attached as Exhibit A to the Notice of Execution of Framework for Creating a Water and Sewer Authority (Docket No. 7357), which provides that the County will immediately withdraw all objections to confirmation of the Plan.

to object to confirmation of the Plan on behalf of the County notwithstanding the withdrawal of the objections.  Out of an abundance of caution, therefore, the City also is compelled to brief the issues raised by the Court.

3.     For the reasons set forth below, the Public Works Commissioner lacks the authority to prosecute the objections to confirmation of the City's Plan on behalf of the County.  Moreover, the unauthorized objections, if reasserted by the Public Works Commissioner, should be stricken as to the objections on behalf of the County, especially in light of the fact that they are inconsistent with the position of the Chief Executive of the County, i.e., the party authorized to act on the County's behalf in the Chapter 9 Case.

## I.     THE PUBLIC WORKS COMMISSIONER IS NOT AUTHORIZED TO OBJECT TO THE PLAN ON BEHALF OF MACOMB COUNTY

### A.     Background Regarding the Adoption of the County Charter and the Formation of the Department of Public Works

4.     On July 21, 2009, the Governor of the State of Michigan (the "State") approved the Home Rule Charter of Macomb County, Michigan (the "County Charter").  The County Charter was subsequently adopted by County voters on November 3, 2009, thereby converting the County from a general law county to a home rule county led by home rule county officers pursuant to Michigan Public Act 293 of 1966, the Charter Counties Act, M.C.L. §§ 45.501,

et seq. County Charter, at § 1.1. The County Charter became effective on January 1, 2011. Id. at § 11.10.

5. In accordance with the requirements of the Charter Counties Act, the County Charter establishes, among other things, a county executive (the "County Executive") and provides for the County Executive's authority, duties and responsibilities. See M.C.L. § 45.514(1)(a); County Charter, at art. III. In particular, the County Charter provides that "the executive power of the County is vested in the [County] Executive, who is the head of the executive branch of County government." County Charter, at § 3.1. The County Charter further establishes the County Board of Commissioners (the "Board of Commissioners") in which is vested the legislative power of the County. County Charter, at § 4.1; see also M.C.L. § 45.514(1)(b) (mandating that county charters provide for the election of a legislative body to be known as the county board of commissioners).

6. By resolution dated February 14, 1966 (the "Resolution"), a copy of which is attached hereto as Exhibit A, the County established "a system or systems of water, sewer and/or sewage disposal improvements and services and garbage and/or rubbish collection and disposal facilities and services" pursuant to Michigan Public Act 342 of 1939, the County Public Improvement Act, M.C.L. §§ 46.171, et seq. The system established pursuant to the Resolution is now known as the Department of Public Works (the "Department").

The Department is an integral part of County government and is *not* a legal entity distinct from the County. County Charter, at § 6.6.2.

### B. The Power of the Public Works Commissioner Over the Department is Broad But Not Unlimited

7.     The Public Works Commissioner exercises operational control over the Department, consistent with the County Public Improvement Act and the County Charter. The Public Works Commissioner is the head of the Department. County Charter, at § 6.5. Pursuant to the Resolution, the drain commissioner (now, the Public Works Commissioner) was designated as the "County Agency" with respect to the Department. See Resolution, at ¶ 2. In addition, the Public Works Commissioner is a "Countywide Elected Official" under the County Charter. See County Charter, at § 6.5.

8.     The Public Works Commissioner, as County Agency, exercises broad powers with respect to the use and operation of the Department under the County Public Improvement Act.

> The county agency shall have supervision and control of the management and operation of all improvements, facilities, and services established pursuant to this act and further shall have the following duties and powers: To make and execute proposed alterations, changes, and extensions of the improvements, facilities, or services authorized herein; to locate, acquire, purchase, construct, alter, repair, maintain, and operate the improvements, facilities, and services authorized herein and enter into and execute contracts therefor; to obtain or prepare data for and determine rates, charges, and assessments to be

imposed and collected for any improvements, facilities, and services authorized herein; to review and make adjustments of rates, charges, and assessments where the same are deemed excessive or inadequate; to engage consultants, assistants, attorneys, and employees; to act as the applicant, agents, or sponsor for the county in the borrowing or loaning of money, issuing of notes or bonds and receiving of any gift or grant of funds or property for the purposes authorized herein; to enter into and execute agreements with units of government, for the use of any such improvements, facilities, or services and the collection of rates, charges, and assessments; and to make all necessary rules governing the use and operation of such improvements, facilities, or services.

M.C.L. § 46.173. The authority provided to the Public Works Commissioner under the County Public Improvement Act is consistent with that provided by the County Charter, which authorizes the Public Works Commissioner – as a Countywide Elected Official – to manage the Department and exercise his powers and duties within authorized budget appropriations. County Charter, at 6.6.2; see also County Charter, at § 3.5(a) (providing that the County Executive possesses the authority, duty and responsibility to "[s]upervise, coordinate, direct and control all County departments except for departments headed by Countywide Elected Officials").

9.     The power of the Public Works Commissioner over the Department is not unlimited, however. Notably, nothing in Section 6.5 of the County Charter or in the grant of authority cited above in M.C.L. § 46.173 purports to authorize the Public Works Commissioner either to act on behalf of

the County generally in another municipality's bankruptcy case or, more specifically, to object to another municipality's chapter 9 plan of adjustment.

10. Moreover, under State law, the authority of the Public Works Commissioner is subject to the general control of the Board and the County Executive. See M.C.L. § 123.732(1) ("The department of public works shall be under the general control of the county board of commissioners and under the immediate control of a board of public works."); see also M.C.L. § 123.732(5) ("In any county organized under [the Charter Counties Act], a department of public works that is or was formed under this act and existing on the date the county charter is or was adopted … shall be considered established pursuant to this act … and be under the control of and administered by the county executive or chief county administrative officer who shall have all the authority, powers, and duties conferred by this act upon the board of public works.").

11. In addition, any authority provided the Public Works Commissioner pursuant to local law is limited by the provisions of the County Charter.

> The existence, organization, qualifications, powers, and duties of the Countywide Elected Officials and departments created by this Article shall continue as they existed upon the effective date of this Charter, but shall be subject to the following:
>
> (a) The Michigan Constitution and state law;

(b)     All Charter provisions of general or specific applicability; and

(c)     All personnel, budgeting, and expenditure recommendations of the Executive as approved by the Commission.

County Charter, at § 6.6.4.

12.     The County Charter provides various limitations on the Public Works Commissioner's authority. For example, although the Public Works Commissioner is authorized under State law to enter into certain agreements with units of government for the use of Department services or facilities (see M.C.L. § 46.173), the County Charter more broadly vests in the County Executive the authority, duty or responsibility to (a) maintain intergovernmental relations, (b) enter into all other intergovernmental contracts not prohibited by law and (c) sign or designate the signatory of "[a]ll contracts and instruments binding the County." County Charter, at §§ 3.5(g), 3.10(a), 3.17. In addition, although the Public Works Commissioner possesses authority under state law to "engage consultants, assistants, attorneys, and employees,"[2] the County Charter clarifies that the Public Works Commissioner may obtain legal counsel, in the first instance, from the County Corporation Counsel. County Charter, at § 6.6.5. Moreover, the Public Works Commissioner may not spend taxpayer funds or

---

[2]     M.C.L. § 46.173.

public monies on independent legal counsel without the authorization of the Board of Commissioners.  Id.[3]

### C.    The Public Works Commissioner Lacks Authority to Object to the Plan

13.    The Public Works Commissioner could not have objected to confirmation of the Plan on behalf of the Department because the Department is not a legal entity in its own right, separate and distinct from the County.

---

[3]    The Public Works Commissioner's decision to hire private counsel to prosecute objections to the Plan purportedly on behalf of the County further supports the fact that he was acting outside his authority.  The County Charter provides for the creation of the office of Corporation Counsel and states that the Corporation Counsel is the chief legal counsel to the County. County Charter, at § 7.5.1.  Corporation Counsel is responsible for representing "the County, the Executive, the Commission, the department heads, and Agencies in civil legal matters affecting the County …." Id. at § 7.5.1(b).  The Public Works Commissioner is a department head (see id. at § 6.5), and the Department is an Agency (see id. at § 1.4(b)). In addition, Corporation Counsel is charged with representing Countywide Elected Officials, including the Public Works Commissioner, as set forth above.  See id. at § 7.5.2.  To the extent, therefore, that the County required representation in the Chapter 9 Case – which indisputably is a civil legal matter – this responsibility is assigned under the County Charter to Corporation Counsel, which is, in turn, authorized to hire special counsel, if necessary, with the approval of the Board of Commissioners.  See id. at § 7.5.3(b).  Although, as set forth above, the Public Works Commissioner possesses the power under the County Public Improvement Act to retain attorneys, among other professional advisors, nothing in State or local law authorizes the Public Works Commissioner to hire counsel in contravention of the County Charter procedures or to undermine the role of the County Executive, Corporation Counsel or the Board of Commissioners set forth in the County Charter.

See County Charter, at § 6.6.2.[4]  Nevertheless, the Public Works Commissioner

purported to assert his objections to confirmation on behalf of the County in its

entirety.  See, e.g., Supplemental Objection of County of Macomb, Michigan, By

and Through Its County Agency, the Macomb County Public Works

Commissioner, and the Macomb Interceptor Drain Drainage District to Sixth

Amended Plan for the Adjustment of Debts of the City of Detroit (Docket

No. 7039), at 1 ("*County of Macomb, Michigan, a Michigan Constitutional*

*corporation, by and through its County Agency, Anthony V. Marrocco, the*

*Macomb County Public Works Commissioner* … and the Macomb Interceptor

Drain Drainage District … hereby submit this supplemental objection [to the

Plan] ….") (emphasis added).

     14.    The mere fact that the Public Works Commissioner – as head

of one constituent department of the County – took issue with certain aspects of

the Plan does not authorize the Public Works Commissioner to speak collectively

for all departments and other components of the County.  Nothing in the Charter

Counties Act, the County Public Improvement Act, the City Charter or other

applicable state or local law grants the Public Works Commissioner a roving

---

[4]    Moreover, even if the Department were separate and distinct from the County – which it is not – the assertion of objections to confirmation of the Plan by the Public Works Commissioner would be inconsistent with the division of powers and responsibilities between the Public Works Commissioner and the County Executive described above.

commission to prosecute objections to confirmation of the Plan on behalf of the County as a whole. To the contrary, as set forth above, all of the powers, duties and responsibilities granted the Public Works Commissioner under applicable state and local law relate exclusively to the control and operation of the Department – and only the Department.

15.     Accordingly, where applicable law does not authorize the Public Works Commissioner to act (as is the case with respect to the Chapter 9 Case), the respective roles of County officials are set forth in the County Charter. These roles do not countenance or support the Public Works Commissioner's assertion of authority in the Chapter 9 Case since, under the Charter, such authority rests with the County Executive.

16.     Pursuant to Section 3.5(g) of the County Charter, it is the County Executive who is responsible for "maintain[ing] intergovernmental relations," which sphere of action would encompass the participation of one municipality in another's chapter 9 bankruptcy. See County Charter, at § 3.5(g). Moreover, Section 3.17 of the County Charter requires that "all contracts and instruments binding the County" – e.g., pleadings filed in the Chapter 9 Case – "shall be signed by the Executive or designee of the Executive." The County Charter further provides that the Executive shall be represented by Corporation Counsel – *not* the Public Works Commissioner or its outside counsel – with

respect to "civil legal matters affecting the County" such as the Chapter 9 Case. See id. at § 7.5.1(a), (b). Most importantly, the vesting in the County Executive of the general executive power permits the County Executive to act for the benefit of the County as a whole, thereby avoiding situations – such as has occurred here – where a representative of one specific department purports to act on behalf of the entire County contrary to the intentions and interests of general County government. None of the foregoing was observed by the Public Works Commissioner in this case.

17. Moreover, even if there were a basis for the Public Works Commissioner to assert that the interests of the Department should control over the interests of the County as a whole (which there is not), the party authorized to act on behalf of the Department in that instance still would be the County Executive. As set forth above, the Public Works Commissioner's powers with respect to the Department are broad but not unlimited, and are subject to the general control of the Board of Commissioners and the County Executive.[5]

---

[5]     Indeed, pursuant to Section 6.6.5 of the County Charter, if the Public Works Commissioner "desire[d] to protect or seek authority to implement the rights, powers, and duties of the office," such an action would have to be authorized by (a) the Executive and undertaken by Corporation Counsel or (b) the Board of Commissioners, which could have "authorize[d] the use of independent legal counsel…." See County Charter, at § 6.6.5. There is no indication that any such authorization was obtained from either the County Executive or the Board of Commissioners by the Public Works Commissioner. Moreover, as set forth above, the "rights, powers, and

<u>See</u> M.C.L. § 123.732.  The general executive power vested in the County

Executive and his responsibility for the highest level intergovernmental relation

matters confirm that the County Executive, and not the Public Works

Commissioner, would be the party that would act for the County, including the

Department.

   18. The Public Works Commissioner's reliance on M.C.L.

§ 600.2051(4) as the basis for his authority to object to confirmation of the Plan

on behalf of the County is misplaced.  <u>See</u> Public Works Commissioner's Brief,

at 6.  M.C.L. § 600.2051(4) provides, in its entirety, as follows:

> Actions to which this state or any governmental unit, including but not limited to a public, municipal, quasi-municipal, or governmental corporation, unincorporated board, public body, or political subdivision is a party may be brought by or against such party in its own name, or in the official capacity of an officer authorized to sue or be sued in its behalf, except that an officer of the state or any such unit shall be sued in his official capacity for the purpose of enforcing the performance by him of an official duty.  Whenever any officer sues or is sued in his official capacity, he may be described as a party by his official title and not by name, subject to the discretion of the court, upon its own motion or that of any party, to require his name to be added.

---

duties" of the Public Works Commissioner's office do not encompass
speaking for the County in another municipality's bankruptcy case.

M.C.L. § 600.2051(4).  This statute, therefore, provides that a governmental unit like the County may sue or be sued in its own name or in the official capacity of an officer authorized to sue and be sued on its behalf.

19.    Nothing in M.C.L. § 600.2051(4) authorizes the Public Works Commissioner to object to the Plan on behalf of the County.  The Public Works Commissioner does not even allege that he possesses the express authority to sue and be sued, suggesting instead that such authority must necessarily be implied "as essential to the exercise of authority expressly granted."  Public Works Commissioner's Brief, at 6.  Moreover, the Public Works Commissioner further fails to establish that, even if he had the capacity to sue and be sued on behalf of the County, such capacity would authorize him to object to the City's Plan.

20.    In the Chapter 9 Case, the interests of the County Executive and the Public Works Commissioner patently are *not* aligned because the County Executive has committed to withdraw the County Objections with prejudice, yet the Public Works Commissioner did not withdraw his objections with prejudice.  In this event, the specific authority of the Public Works Commissioner to operate the Department does not trump the general authority of the County Executive to (a) act on behalf of the County as a whole, (b) exercise general control over the Department and (c) maintain intergovernmental relations between Macomb

County and the City.  Accordingly, the Public Works Commissioner may not object to the Plan on behalf of the County.

## II.    THE PUBLIC WORKS COMMISSIONER'S COUNTY-RELATED OBJECTIONS TO CONFIRMATION OF THE PLAN SHOULD BE STRICKEN

21.    Because the Public Works Commissioner lacked authority to file the County Objections on behalf of the County and did not withdraw his objections with prejudice, any future or re-filed County-related (as opposed to MIDDD) objections to the Plan should be stricken.  It is well-established that a federal court possesses "inherent authority to control its docket in promoting economies of time and effort for the court, the parties, and the parties' counsel." Jordan v. City of Detroit, 557 F. App'x 450, 456-57 (6th Cir. 2014) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)) (quotation marks omitted); see also Myers v. Ostling, 284 B.R. 614, 619 (E.D. Mich. 2002) ("[I]t is within the sound discretion of the trial court to manage its docket, and the court must do so consistent with the court's authority to offer prompt and efficient administration of justice.").

22.    As part of its inherent authority to control its own docket, the Court has broad discretion to strike improper docket filings.  See Nat'l Latex Prods. Co. v. Sun Rubber Co., 276 F.2d 167, 168 (6th Cir. 1960) ("A pleading may be stricken out if not authorized by law or the rules governing the practice.");

Gonzalez v. Ohio Cas. Inc. Co., No. 07-CV-13921, 2008 WL 4277258, at *1 (E.D. Mich. Sept. 17, 2008) (invoking the court's "inherent authority to control its docket" in striking duplicative and cumulative motions for summary judgment); Carter v. Bigelow, 869 F. Supp. 2d 1322, 1326 (D. Utah 2011) (invoking "the Court's inherent authority to manage its own docket" in striking procedurally improper motions; stating that by striking such motions, "the Court can more effectively focus on those issues that remain before the Court").

23.     If reasserted by the Public Works Commissioner, the objections filed on behalf of the County (except as they relate to MIDDD) would be improper and should be stricken because, as discussed above, the Public Works Commissioner would lack authority to prosecute such objections on behalf of the County. Courts routinely strike or dismiss filings that purport to be prosecuted on behalf of, but have not been authorized by, an entity. See, e.g., In re D&W Ltd., 467 B.R. 427, 432 (Bankr. E.D. Mich. 2012) (dismissing case commenced by an individual who lacked authority to file a bankruptcy petition on behalf of the debtor; holding that "[a] bankruptcy case filed by someone purportedly acting on behalf of an entity, but without authority to do so as determined under state law, is improper and dismissable"); In re ComScape Telecomms., Inc., 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) ("Wherever a court 'finds that those who purport to act on behalf of the corporation have not been granted authority by local law to

institute the proceedings, it has no alternative but to dismiss the petition.'")

(quoting Price v. Gurney, 324 U.S. 100, 106 (1945)); DuPont v. Freight Feeder

Aircraft Corp., No. 13-CV-256, 2013 WL 5694436, at *2 (S.D. Ill. Oct. 18, 2013)

(striking as a plaintiff, and dismissing all claims purportedly brought by,

corporation, where former directors and officers were not authorized by such

corporation to file complaint on corporation's behalf).

24.     Striking the objections filed by the Public Works

Commissioner (except as they relate to MIDDD) would be particularly

appropriate because any such unauthorized objections would directly conflict with

the express direction of the County Executive evidenced by the Memorandum of

Understanding.  The Memorandum of Understanding – which was signed by the

County Executive on behalf of the County – expressly states that "[u]pon

execution of the [Memorandum of Understanding] the Counties represented by the

signatories to this [Memorandum of Understanding] which have filed objections

to the Plan of Adjustment shall each immediately withdraw with prejudice their

objections to the Confirmation of the Plan of Adjustment."  Memorandum of

Understanding, at 9.  Thus, any re-asserted objections to the Plan filed by the

Public Works Commissioner (except as they relate to MIDDD) would be

unauthorized, not properly asserted on behalf of the County and should be

stricken.

Dated:  September 12, 2014          Respectfully submitted,


 /s/ Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone:  (248) 359-7300
Facsimile:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

ATTORNEYS FOR THE CITY

# EXHIBIT A

RESOLUTION NO. 850 - RE: ESTABLISHING DEPARTMENT TO HANDLE SEWAGE PROBLEMS UNDER
ACT 342 of P.A. of 1939

WHEREAS, there exists, and will exist in the future, in the County of Macomb a need for
extensive water, sewer and refuse disposal facilities to be acquired, constructed and financed
between and within the various municipal units of government therein, to protect the public health
and welfare of the County and its residents; and

WHEREAS, Act 342, Public Acts of Michigan, 1939, as amended, offers a sound and practical
method of acquiring, constructing and financing such type of facilities through and by the County
and its agency in manner provided in said Act; and

WHEREAS, the Board of Supervisors of the County of Macomb deems it necessary and advisable,
and for the benefit of the residents of the County and its various municipal units of government,
that the provisions of said Act 342, Public Acts of Michigan, 1939, as amended, be utilized and
adopted for the County of Macomb, and its use approved and adopted for the purpose of acquiring, con-
structing and financing the various types of public improvements authorized and permitted by said
law;

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF SUPERVISORS OF THE COUNTY OF MACOMB, STATE
OF MICHIGAN, as follows:

1. That there is hereby authorized to be established a system or systems of water, sewer
and/or sewage disposal improvements and services and garbage and/or rubbish collection and disposal
facilities and services within or between cities, villages and townships, or any duly authorized and
established combinations thereof, within or without the county, and mains, trunks, connecting lines
and disposal facilities therefor, or any extensions or improvements thereto, in accordance with and
subject to the authorization and provisions of Act 342, Public Acts of Michigan, 1939, as now or
hereafter amended, it being the intention of this resolution that the provisions of said Act shall
be made effective and applicable to the County of Macomb.

2. That the duly elected and qualified Drain Commissioner of the County of Macomb is
hereby designated as the County Agency under the provisions of said Act 342, Public Acts of Michigan,
1939, as amended, to act for and on behalf of the County of Macomb, with all the rights, powers
and duties as specified in said Act.

3. That the Drain Commissioner of the County of Macomb, as the duly designated County Agency,
is authorized for and on behalf of the County of Macomb to locate, acquire, purchase, construct, own,
maintain and/or operate water mains and trunks and connecting lines, water pumping and purification
plants, sewers, sewage interceptors, sewage disposal plants, settling basins, screens and meters,
and incinerators and disposal grounds and facilities, as shall be described in maps, plans and
specifications therefor and be approved by the Board of Supervisors of the County of Macomb, and
contract with any of the units of government specified in said Act 342, Public Acts of Michigan, 1939,
as now or hereafter amended, or any duly authorized and established combination thereof for the pur-
chase of water and for the use of their sewers and sewage disposal plants and garbage and/or rubbish
collection and disposal facilities and services.

4. Upon preliminary approval of the Board of Supervisors of the County of Macomb, by resolu-
tion, of any of the public improvement projects of the type specified in said Act 342, Public Acts
of Michigan, 1939, as now or hereafter amended, which resolution shall describe in general terms the
public improvement project proposed, designate a name for identification purposes, and specify the
units of government benefited thereby, the Drain Commissioner of the County of Macomb, as the duly
designated County Agency, is authorized to enter into and execute the necessary contract or contracts
with such units of government for the acquisition, construction, operation and financing of said
public improvement project in accordance with the authorization therefor provided in said Act, and
prepare and submit to the Board of Supervisors for their action thereon any ordinance or resolution
deemed necessary to provide for the financing thereof by the issuance of bonds or notes of the types
authorized by said Act and secured as provided in said Act. Before any bonds or notes as authorized
by said Act are issued or sold, the resolution or ordinance authorizing their issuance shall be ap-
proved and adopted by the Board of Supervisors of the County of Macomb in manner provided in said
Act.

5. The County Improvement and Public Works Committee of the Board of Supervisors is hereby
designated as the Board of Review for the purpose of hearing and reviewing any rates, charges or
assessments established by the County or the County Agency, in connection with any public improvement
project acquired or constructed under the provisions of said Act 342, Public Acts of Michigan, 1939,
as now or hereafter amended.

6. The Drain Commissioner of the County of Macomb, as the duly designated County Agency, is
authorized to engage consultants, assistants, attorneys and employees at such compensation as shall
be fixed by agreements or contracts made by and with the Drain Commissioner of the County of Macomb
and paid either out of any funds appropriated for a particular specified public improvement project
as authorized by said Act and this resolution, or out of funds and revenues to be obtained therefor
for its construction, maintenance and operation.

CLER... ...ITE OF COURT OF RECORD

**STATE OF MICHIGAN** } ss.
County of Macomb

I, _____ EDNA MILLER _____

Clerk of the Circuit Court for the County of Macomb, _____

the same being a Court of Record and having a Seal, DO HEREBY CERTIFY, that I have

compared the annexed copy of __Resolution No. 850, adopted by the Macomb County__

__Board of Supervisors at a regular meeting held on the 14th day of February,__

__1966,__ _____

with the original record and files thereof remaining in my office, and have found the same

to be a correct transcript therefrom, and the whole of such original record and files.

IN TESTIMONY WHEREOF, I have hereunto set my
hand and affixed the Seal of said Court at Mount Clemens,
this ___9th___ day of ___Dec.___ A. D. 19__75__

EDNA MILLER
<span style="padding-left:3em;">CLERK</span>

By _Frances R. Hartford_
<span style="padding-left:3em;">DEPUTY CLERK</span>

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Brief of City of Detroit Regarding Authority of Macomb County Public Works Commissioner to Object to City's Plan on Behalf of Macomb County was filed and served via the Court's electronic case filing and noticing system on this 12th day of September, 2014.


/s/ Heather Lennox