-----------------------------------------------------------------x
                                                        :

In re                                           : Chapter 9

**CITY OF DETROIT, MICHIGAN,**        : Case No. 13-53846

                  Debtor.                 : Hon. Steven W. Rhodes

-----------------------------------------------------------------x

## THIRD SUPPLEMENTAL OBJECTION OF FINANCIAL GUARANTY INSURANCE COMPANY TO PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

Pursuant to the *Order Approving Stipulation By and Between the City of Detroit, Michigan and Creditors Regarding Adjournment of the Hearing on Plan Confirmation*, dated September 17, 2014 [Docket No. 7530] (the "**Adjournment Order**"), Financial Guaranty Insurance Company ("**FGIC**") files this third supplemental objection (the "**Third Supplemental Objection**")[1] to the *Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (September 16, 2014)* [Docket No. 7502] (as may be amended or supplemented, the "**Plan**").[2] In support of this Third Supplemental Objection, FGIC respectfully states as follows:

---

[1] This Third Supplemental Objection supplements the (i) *Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit*, filed on May 12, 2014 [Docket No. 4660], (ii) *Supplemental Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit*, filed on August 12, 2014 [Docket No. 6674] and (iii) *Supplemental Objection to Confirmation of the Sixth Amended Plan for the Adjustment of Debts of the City of Detroit*, filed on August 25, 2014 [Docket No. 7046] (collectively, the "**Plan Objections**").

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

# FACTUAL BACKGROUND

1.  On September 16, 2014, the City filed the Plan. Among other things, the Plan incorporates a settlement between the City and Syncora. Pursuant to the Syncora Settlement:

    - The Plan includes a Plan COP Settlement option for Class 9 COP Claims, pursuant to which a Holder of COP Claims may sell such COP Claims to the Litigation Trust[3] in exchange for such Holder's Pro Rata share of (i) the Class 9 Settlement Asset Pool and (ii) New B Notes in the face amount of $97,690,000 (approximately 60% of the New B Notes allocable to Class 9). Syncora will make this election and become a Settling COP Claimant. Non-settling COP Claim Holders will receive their Pro Rata share of New B Notes to be distributed to the Disputed COP Claims Reserve pending resolution of the COP Litigation.

    - The Class 9 Settlement Asset Pool consists of (i) New C Notes or the proceeds from any disposition or monetization of City Parking Assets prior to distribution of the New C Notes, and (ii) Class 9 Settlement Credits consisting of transferable settlement credits that may be applied to offset a portion of the purchase price of certain City assets, subject to certain terms and conditions.

    - In addition to receiving its share of the Class 9 Settlement Asset Pool and New B Notes (as a Settling COP Claimant), Syncora also will receive certain additional treatment. Specifically: (i) the City will amend and assume the Tunnel Lease for the Detroit Windsor Tunnel for which a Syncora subsidiary is the lessee and will provide such lessee with rent credits against certain capital expenditures; (ii) the City will enter into a Development Agreement with a Syncora affiliate providing such affiliate with a 5-year option to acquire certain City-owned properties (for no purchase price); (iii) the City will enter into a 1 year option agreement with a Syncora subsidiary for a 30-year concession for the Grand Circus Parking Garage pursuant to which the subsidiary will recover a 140% return on its initial capital expenditures before rent is due to the City; (iv) the City will pay Syncora $5 million to resolve Syncora's claims against the City with respect to the COP Swap Agreements and related agreements; and (v) all UTGO Claims held or insured by Syncora will

---

[3] It is not clear what must be conveyed to the Litigation Trust: the Holder's rights to receive payments owed by the City pursuant to the Service Contracts (but not the COPs securities themselves), or the Holder's actual COPs securities. In this regard, it also is not clear whether and to what extent a Settling COP Claimant would be transferring to the Litigation Trust the right to assert claims under any related COP Insurance Policy.

receive the treatment provided for UTGO Claims in the Plan and the
UTGO Settlement Agreement.

2. Upon information and belief, Syncora has asserted claims against the City based upon (i) Unlimited Tax General Obligation Bond Claims, (ii) COP Claims, and (iii) COP Swap Claims. (*Motion of Syncora Guarantee Inc. and Syncora Capital Assurance Inc. to Enforce the Solicitation Procedures Order*, dated June 18, 2014 [Docket No. 5444] at Ex. 6.) As stated in the Plan, the Syncora Settlement resolves all matters related to these claims.

3. Based upon the foregoing, FGIC raises certain additional objections to the Plan.[4]

### THE COURT SHOULD DENY CONFIRMATION OF THE PLAN FOR CERTAIN ADDITIONAL REASONS RAISED BY THE SYNCORA SETTLEMENT

**I.   THE CITY HAS PROVIDED INADEQUATE
INFORMATION ABOUT THE PLAN AND THE SYNCORA SETTLEMENT**

4. As an initial matter, the City has failed to provide creditors with sufficient information about the terms of the Plan and the Syncora Settlement, and in particular the value of the Class 9 Settlement Asset Pool, the Tunnel Lease, the Development Agreement and the properties subject thereto, or the Grand Circus Parking Garage and the option and concession agreements related to this asset. Although the City has structured the Plan such that it believes it is not required to resolicit votes, the City must nonetheless provide Class 9 creditors, consistent with section 1125 of the Bankruptcy Code, with sufficient information to understand the terms and value of the Plan COP Settlement option so that they can make an informed judgment about whether to accept this newly-added election. The City also has an obligation to provide parties

---

[4] The objections herein are in addition to the objections raised in FGIC's prior Plan Objections. FGIC reserves all rights to modify or supplement this Third Supplemental Objection based upon additional objections identified through discovery (as permitted by the Adjournment Order) or any additional modification of the Plan.

in interest with sufficient information to evaluate the terms of the Syncora Settlement so that such parties can formulate objections to the Plan and protect their rights. Notwithstanding these deficiencies, FGIC has been able to discern several new objections to the Plan and the Syncora Settlement.

## II. THE PLAN DISTRIBUTIONS TO SYNCORA VIOLATE SECTION 1123(A)(4) OF THE BANKRUPTCY CODE

5. The Plan provides Syncora with multiple distributions resulting in different and greater recovery on account of Syncora's claims as compared to other creditors with similar claims. "[A] fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally." *In re CSC Indus., Inc.*, 232 F.3d 505, 508 (6th Cir. 2001) (citing 11 U.S.C. § 1123(a)(4)). Consistent with this objective, section 1123(a)(4) of the Bankruptcy Code (made applicable in chapter 9 by section 901) provides that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The Plan violates this provision in several ways through preferential treatment of Syncora within the Class 9 treatment provisions and by enhancing that treatment with additional distributions set forth in other sections of the Plan.

### The City Attempts to Disguise Discrimination Against COPs Claimants by Providing Additional Distributions to Syncora in Separate Plan Provisions

6. First, pursuant to the Plan, Syncora will receive on account of its Class 9 COP Claims treatment not only pursuant to the Plan COP Settlement in Class 9, but also additional consideration exclusively available to Syncora pursuant to the Syncora Settlement. This includes the value to be derived by Syncora from the amended and assumed Tunnel Lease, the Development Agreement, and the option for the concession agreement for the Grand Circus Parking Garage. Although these additional distributions are not explicitly framed in the Plan as

treatment of Syncora's COP Claims, there is no other explanation for the City's distribution of these assets to Syncora. The City's attempt to camouflage this preferential treatment of Syncora (as compared to the other Class 9 COPs claimants) by technically writing in the provisions for the additional Syncora distributions in sections of the Plan outside of the Class 9 treatment provisions should not be countenanced. *See In re Cajun Elec. Power Coop.*, 230 B.R. 715, 733 (Bankr. M.D. La. 1999) (concluding that a plan violated section 1123(a)(4) where the debtor created a circuitous method of directing funds to a favored creditor in an attempt to disguise discrimination against other unsecured creditors).

7. To the extent the City attempts to validate this preferential treatment on the basis that, in exchange, Syncora is dismissing or withdrawing the Dismissed Syncora Litigation, this alleged justification is a red herring. Except with respect to the litigation regarding the City's treatment of casino revenues and the COP Swap Claims (for which Syncora is to receive $5 million to resolve), the remainder of the appeals, motions, and objections that constitute the Dismissed Syncora Litigation were all commenced or asserted by Syncora in defense of its rights as a Holder of COP Claims – the same rights held by FGIC and other COPs creditors. The only difference is that Syncora chose to assert those rights more aggressively. The City itself recognized that Syncora's conduct in this case prior to settlement was to commence litigation and object at every opportunity. As an example, the City described Syncora's approach as follows:

> The Motion to Extend represents the latest attempt by Syncora . . . to delay and disrupt the City's restructuring. Having objected to virtually every action taken by the City in this chapter 9 case to this point, Syncora now seeks to obstruct the City's plan confirmation process. Although it dresses up its request for relief as a plea for the preservation of due process, Syncora merely seeks more disruption and delay. While this may be consistent with the scorched earth litigation strategy Syncora has adopted since the

Petition Date it is inconsistent with the stated purpose of the Court's Second Amended Order Establishing Procedures, Deadlines and Hearing Dates Relating to the Debtor's Plan of Adjustment (Docket No. 2937) (the "Scheduling Order") (i.e., to "promote the just, speedy, and inexpensive determination of this case" (Scheduling Order, at 1)).

*(Debtor's Objection to* Ex Parte *Motion to Extend Disclosure Statement Approval Schedule*, dated March 30, 2014 [Docket No. 3329].) Merely because a creditor has adopted an all-out litigation strategy in a bankruptcy case and peppered the debtor with motions, objections, and appeals is not a justification for preferential treatment of that creditor.

8. Further, there is no justification for distributing these additional assets only to Syncora and not offering them to the rest of Class 9. There is nothing unique about the Tunnel Lease, the properties to be conveyed pursuant to the Development Agreement, or the Grand Circus Garage, or Syncora's relationship to any of these assets, which warrants segregating them for distribution to Syncora. Even if there was, the City must provide equivalent value to the rest of Class 9. The Court must compare the total value of the distributions received by each similarly situated creditor regardless of the type of assets that comprise such distributions. *See In re Northwestern Corp.*, 372 B.R. 684 (D. Del. 2007).

<u>The Plan Does Not Provide Class 9 Creditors with the Same Treatment Options</u>

9. While case law supports the concept that a debtor may provide different treatment to creditors within a class as long as all creditors are offered the same option to receive such different treatment, *In re Washington Mutual, Inc.*, 442 B.R. 314, 356 (Bankr. D. Del 2011) ("[w]hat is important is that each claimant within a class have the same opportunity to receive equal treatment"),[5] here COPs claimants are not being offered the same option as Syncora. As

---

[5] *See also In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008) ("The fact that some claimants have settled while others have not does not, by itself, indicate unequal treatment. They key inquiry under §1123(a)(4)

WEIL:\95092181\5\45259.0007

set forth above, the City is providing Syncora with many assets on account of Syncora's COP Claims pursuant to Plan provisions outside of those governing Class 9's treatment, which additional assets are not offered to other Class 9 creditors.

10. Moreover, Syncora also may be receiving additional consideration strictly within the Class 9 treatment provisions that effectively is not available to other Holders of COP Claims. To the extent that the Plan COP Settlement requires a COPs holder to transfer its COPs (and not just the right to receive payment from the City) to the Litigation Trust, the Plan COP Settlement option is illusory for anyone other than Syncora.

11. As noted above, the Plan is ambiguous with respect to whether a Settling COP Claimant must sell to the Litigation Trust such claimant's actual COPs or merely the right to receive payments pursuant to the Service Contracts in respect of such COPs. To the extent the COPs securities themselves are transferred, the Litigation Trust arguably would also receive from the Settling COP Claimant the right to assert claims and receive payments under any related COP Insurance Policy.[6] In this scenario, it would make no sense for any holder of FGIC-insured COPs to agree to the Plan COP Settlement in exchange for a reported 13.9% recovery[7] but consequently give up the right to receive payment from FGIC under its insurance policies. Thus, the settlement "option" is not really an option at all for holders of FGIC-insured COPs. By contrast, Syncora, in its capacity as the holder of Syncora-insured COPs, would not be required

---

is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity.").

[6] FGIC reserves all rights to deny policy coverage to any Settling COP Claimant, including Syncora to the extent that Syncora owns FGIC-insured COPs and Syncora transfers such COPs or any related COP Claims to the Litigation Trust pursuant to the Plan COP Settlement.

[7] This is one number used by City counsel in open Court, but nowhere specified by the City within the Plan or otherwise, resulting in the objection based on the violation of section 1125 of the Bankruptcy Code.

WEIL:\95092181\5\45259.0007

13-53846-tjt    Doc 7611    Filed 09/19/14    Entered 09/19/14 18:04:13    Page 7 of 13

to forfeit a third-party recovery source as a condition to taking the Class 9 settlement option. As such, the option would only have value to Syncora and, thus, Syncora would receive preferential treatment within Class 9.[8]

12. A plan cannot afford more effective recovery rights to particular creditors within a class. *In re Dow Corning Corp.*, 280 F.3d 648, 659-60 (6th Cir. 2002) (holding that a difference in the procedural protections offered to certain claimants violated section 1123(a)(4) because some claimants were "accorded far more effective recovery rights" than others). The nominal offer in the Plan that purports to make the Plan COP Settlement available to all COPs holders is transparently fake to the extent holders would be required to give up insurance coverage. If this is how the Plan operates, it was purposefully structured to divert greater recoveries to Syncora alone, in violation of section 1123(a)(4). Further, requiring certain creditors within a class to give up greater consideration in exchange for the same percentage recovery as other creditors within the class constitutes unequal treatment in violation of section 1123(a)(4). *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1152 (D.C. Cir. 1986) ("It is disparate treatment when members of a common class are required to tender more valuable consideration . . . in exchange for the same percentage recovery.");[9] *In re Quigley Co., Inc.*, 377 B.R. 110

---

[8] Since Syncora is both the holder and insurer of many of its COPs, it has the option of uninsuring (referred to as "unwrapping") its COPs prior to transferring them to the Litigation Trust. Subject to policy defenses, to the extent the Litigation Trust received COPs from holders of FGIC-insured COPs, such COPs would still be insured and the Litigation Trust potentially could recover policy payments from FGIC under FGIC's COP Insurance Policies (in the amount of 17% pursuant to FGIC's plan of rehabilitation), which would mean the Litigation Trust would be reimbursed more than the alleged 13.9% distribution it made to the related Settling COP Claimant. (*First Amended Plan of Rehabilitation for Financial Guaranty Insurance Company*, dated June 4, 2013 (EX3027); *Notice of Effective Date and Initial CPP*, dated August 19, 2013 at ¶ 5 (EX3029).)

[9] The reasoning in the *AOV* decision was not applied by this Court in *Dow Corning* based on the unique facts of that case. The facts here are more analogous to those present in *AOV* where a creditor within a class was being asked to forfeit an alternative source of recovery, resulting in disparate treatment. *AOV*, 792 F.2d at 197-98.

WEIL:\95092181\5\45259.0007

(Bankr. S.D.N.Y. 2007) ("each member of the class must pay the same consideration for its distribution").

### Holders of Class 9 COP Claims Have Not Agreed to Less Favorable Treatment

13. As set forth above, the Bankruptcy Code requires that a plan provide the same treatment for each claim of a class unless the holder of a claim agrees to less favorable treatment of such claim. 11 U.S.C. § 1123(a)(4). Here, Holders of COP Claims with respect to FGIC-insured COPs are provided significantly less favorable treatment by the Plan and have not agreed to such treatment. In most cases where courts have approved a plan that provides an option for creditors within a class to settle, the settlement option resulted in a lower recovery than if the settling claimant litigated its claim and won. *See In re Dow Corning Corp.*, 255 B.R. 445, 498 (E.D. Mich. 2000) ("a claimant who elects to settle . . . agrees to a *less favorable treatment than the litigation option* . . . this agreement complies with the second clause of § 1123(a)(4)") (emphasis added); *Dana Corp.*, 412 B.R. at 63 ("the very notion of 'settling' implies accepting *less* than what one might otherwise obtain"; thus, treating certain creditors within a class pursuant to a settlement option "is allowed under §1123(a)(4)") (emphasis added). The settlement in the Plan provides Syncora with a greater recovery in any scenario. By electing the Plan COP Settlement, if the Plan becomes effective, Syncora will receive an alleged 13.9% recovery pursuant to its Class 9 distribution plus the additional value to be given to Syncora pursuant to the Syncora Settlement, as compared to an alleged maximum 10% recovery to non-settling Holders of Class 9 COP Claims even if they won the COP Litigation, obtained a full Allowed Claim and the Litigation Trust did not share in the spoils of victory (the Plan language is far from clear on the Litigation Trust's treatment in such an outcome). If one considers the alternative "win" situation as blocking Plan confirmation or reversing a confirmation order on appeal, Syncora is no worse off. Pursuant to Article III.A of the Plan and Section 8 of the

WEIL:\95092181\5\45259.0007

9

Syncora settlement agreement that is part of the Syncora Settlement Documents, if the Syncora Settlement is not approved or the Confirmation Order is not entered or is vacated on appeal, Syncora may terminate the settlement agreement and all of its rights and interests will be restored without prejudice. For Syncora, the Plan presents a win-win situation, while all non-settling Holders of COP Claims receive less favorable treatment on account of the same Claims. The non-settling Holders certainly have not consented to this treatment.

<u>The Plan Provides Preferential Treatment to Syncora's COP Swap Claims</u>

14. The Plan also provides Syncora with $5 million in respect of Syncora's COP Swap Claims – the exact same claims asserted by FGIC in one of its proofs of claim filed against the City.[10] In this regard, the Plan provides preferential treatment of Syncora in respect of similarly situated claims held by FGIC, in further violation of section 1123(a)(4) of the Bankruptcy Code.

**III. OTHER OBJECTIONS**

15. The Plan is further objectionable in several ways. The Plan does not provide for the cancellation of the COPs with respect to which Syncora intends to settle. In the absence of this, to the extent non-settling COPs holders are successful in obtaining Allowed Claims and a distribution is made from the Disputed COP Claims Reserve, there is a significant risk that the outstanding Syncora COPs (whether held by Syncora or the Litigation Trust) would receive a portion of this distribution, which would dilute the recovery to the non-settling COP Claim Holders and result in a double recovery on account of Syncora's COPs.

16. Also, the Plan provides that Settling COP Claimants must pay their Pro Rata share of any Allowed Claim for COP Agent Fees held by the COP Agent, but with respect

---

[10] *Proof of Claim Number 1189*, dated February 14, 2014.

to Syncora and any Settling COP Claimant not participating in the COP Litigation, this does not include fees for services rendered or expenses incurred in connection with the COP Litigation. This is not consistent with the COP Documents and would result in the other COPs holders bearing a disproportionate share of such fees and expenses. Any suggestion that non-settling COPs holders are not being negatively impacted by the implementation of the Syncora Settlement rings particularly hollow, should the Court consider these outcomes (and the potential new under-reserving for these contingencies).

17. Finally, the Plan provides for the distribution of the Excess B Notes to (i) Holders of Allowed Limited Tax General Obligation Bond Claims in Class 7, (ii) the Detroit General VEBA and the Detroit Police and Fire VEBA in satisfaction of the Allowed OPEB Claims in Class 12 and (iii) Holders of Allowed Other Unsecured Claims in Class 14. This enhanced recovery for other Classes of the same priority as Class 9 constitutes additional impermissible unfair discrimination pursuant to section 1129(b)(1) under the standards articulated in the Plan Objections and *Financial Guaranty Insurance Company's Pretrial Brief in Support of Objection to Plan for the Adjustment of Debts of the City of Detroit*, filed on August 27, 2014 [Docket No. 7102].

WEIL:\95092181\5\45259.0007

11

18. Based upon the foregoing, and for the reasons set forth in FGIC's prior Plan Objections and pretrial brief, and as will be addressed in more detail at the Confirmation Hearing, FGIC requests that the Court deny confirmation of the Plan and grant such other and further relief as the Court may deem just and proper.

Dated: September 19, 2014
      Houston, Texas

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER & PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance Company*

# CERTIFICATE OF SERVICE

      I hereby certify that on September 19, 2014 the *Third Supplemental Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit* was filed and served via the Court's electronic case filing and noticing system to all registered users that have appeared in this Chapter 9 proceeding.

                                       */s/ Alfredo R. Pérez*
                                       Alfredo R. Pérez
                                       WEIL, GOTSHAL & MANGES LLP
                                       700 Louisiana Street, Suite 1700
                                       Houston, TX  77002
                                       Telephone: (713) 546-5000
                                       Facsimile:  (713) 224-9511
                                       Email:  alfredo.perez@weil.com

Dated: September 19, 2014
       Houston, Texas