UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | Chapter 9 |
| Debtor | Hon. Steven W. Rhodes |

**SUPPLEMENTAL OBJECTION OF THE MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT TO SEVENTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

Pursuant to the *Order Approving Stipulation By and Between the City of Detroit, Michigan and Creditors Regarding Adjournment of the Hearing on Plan Confirmation* [Docket No. 7530], the Macomb Interceptor Drain Drainage District (the "MIDDD"), a creditor and party in interest in the above-captioned Chapter 9 bankruptcy case, hereby submits this supplemental objection (the "Supplemental Objection") to the *Seventh Amended Plan for the Adjustment of Debts of the City of Detroit* [Docket No. 7502] (the "Plan") and, in support thereof, respectfully states as follows:

**OBJECTION**

**I.  The Plan Provides For Further Unfair Discrimination Against Class 14.**

1. With each amended plan of adjustment the City files, its restructuring proposal becomes more discriminatory against Class 14 General Unsecured Creditors in new and different ways. First, the most recent Plan provides for an enhanced recovery to the Class 9 COPs Claims, which have, at most, the same priority as Class 14 claims. Further, the Plan incorporates a settlement with Syncora that will provide it with additional value on account of its COPs claims, thereby further discriminating unfairly in favor of one settling creditor. Finally, the Plan

provides for the transfer of increased value to the VEBAs established pursuant to the Plan to provide distributions on account of the overstated Class 12 OPEB Claims. Thus, all classes of claims of at most the same priority as Class 14 will receive a greater percentage distribution under the Plan, except for one insider class.[1] As the City continues to provide disproportionate distributions to additional classes, but not Class 14, its assertion that the disparate treatment is justified becomes even more absurd.

### A. Disparate Treatment of COPs Claims and Syncora.

2. Under the new amendments in the Plan, the COPs claimants that opt into the Plan COP Settlement[2] will receive, in addition to the New B Notes already provided under the previous plan, (i) either New C Notes of a face amount of up to $88,430,021 or cash up to that amount, and (ii) $25 million in Class 9 settlement credits. Thus, using the City's estimate of the aggregate COPs claims of $1.473 billion, the COPs Class would receive an additional recovery of <u>at least</u> 6%, before taking into account the value of the Class 9 Settlement Credits, which value is unknown at this time.[3] When the value of the enhanced recovery to Class 9 is added to the value of the consideration in the previous plan—which, according to the Disclosure Statement, provides 10% recovery—the total recovery to Class 9 is <u>at least</u> 16% plus the value of the Class 9 Settlement Credits.[4] Assuming the Disclosure Statement's assertion that Class 14

---

[1] Class 13, which consists of claims of the Downtown Development Authority against the City, is receiving the same percentage recovery as Class 14. <u>See</u> Disclosure Statement at 41. According to the Disclosure Statement, the Downtown Development Authority is a "is a component unit of the City," and thus is an insider. <u>See</u> Disclosure Statement at 99.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3] Pursuant to this Court's order, MIDDD intends to take discovery regarding, among other things, the value of the Class 9 Settlement Credits and the value of the consideration to be received by Syncora. MIDDD reserves all rights to supplement this objection after receiving such discovery.

[4] Although the City has stated in open court that the distributions to the COPs holders under the amendments to the Plan is 13.9%, MIDDD is unable to ascertain how the City calculated that asserted percentage recovery based on the City's disclosure and assuming the New C Notes are at face value.

2

will receive a 10-13% recovery (which MIDDD contends is substantially overstated) is accurate, Class 9 will receive a percentage recovery that is <u>at least</u> 23-60% greater than that of Class 14. Thus, under the Plan, the Class 9 creditors will receive consideration that is materially greater than the consideration received by Class 14 in terms of percentage recovery.

3. The Plan amendments also incorporate a settlement with Syncora (as defined in the Plan) whereby the City will extend and assume a lease of the Detroit portion of the Detroit Windsor Tunnel, enter into a Development Agreement with a Syncora subsidiary, and enter into a 1-year option agreement with a Syncora subsidiary for a 30-year concession for the Grand Circus Parking Garage (collectively, the "<u>Syncora Consideration</u>"). <u>See</u> Plan § IV.J.; Plan Exhibit I.A.338. Further, Syncora will receive $5 million in cash in full satisfaction of all claims filed or asserted by Syncora relating to the COP Swap Agreement and any agreements related thereto. <u>See</u> Plan Exhibit I.A.338. In exchange, Syncora will withdraw all litigation regarding its COPs claims and COP Swap claims, as well as its objections to the Plan. <u>Id</u>.

4. The value of the Syncora Consideration cannot be ascertained through an inspection of the Plan and related documents. Because the Syncora Settlement Agreement allocates the cash portion of the settlement consideration to Syncora's COP Swap Claims, the only conclusion is that the value received by Syncora with respect to the Syncora Consideration is a disguised additional distribution on account of Syncora's Class 9 COPs Claims. Thus, to determine the percentage recovery that Syncora will receive under the Plan on account of its COPs claims, the value of the Tunnel Lease and Development Agreement must be added to the value of portion of the Class 9 Plan consideration that Syncora will receive. Needless to say, the settlement will provide Syncora with value over and above the Class 9 consideration. Thus, the

3

additional value flowing to Syncora results in further, and more material, unfair discrimination in favor of Syncora.

5. Moreover, the consideration to be provided to Class 9 claimants (including Syncora) under the Plan is materially less risky than the Class 14 consideration. The Plan provides for a distribution to Class 14 of only New B Notes. The New B Notes are unsecured general obligations of the City, and thus the holders of New B Notes are fully exposed to the City's credit risk. See Plan Exhibit I.A.240. Due to the substantial risk of nonpayment, as well as other unfavorable terms (maturity of 30 years; interest-only for the first 10 years; taxable interest of 4% for the first 20 years, and 6% in years 21 through 30) the New B Notes will be worth substantially less than face value. See id. On the other hand, the City will direct certain parking revenues to a lockbox account to be used to satisfy its obligations under the New C Notes. See Plan Exhibit I.A.242. As the holders of New C Notes will have recourse to a specific revenue stream that will be segregated from other City funds for the sole purpose of payment of those notes, the risk of nonpayment of those notes is materially less than the risk associated with general obligations of the City, such as the New B Notes. Further, the New C Notes will bear a higher rate of interest—5% (which, on information and belief will be tax exempt)—than the New B Notes, will begin to amortize principal with the first payment due rather than in year 11 under the New B Notes, and will mature in 12 years—18 years before the New B Notes. See id. Accordingly, as the terms of the New C Notes are much more favorable than the terms of the New B Notes, the consideration to be provided to Class 9 is less risky and more valuable than the Class 14 consideration.

4

13-53846-tjt    Doc 7612    Filed 09/19/14    Entered 09/19/14 18:37:38    Page 4 of 8

B. <u>Disparate Treatment of OPEB Claims</u>.

6. The Disclosure Statement states that Class 12 OPEB Claims will receive a recovery of 10-13%, which is the same percentage recovery that the Disclosure Statement asserts Class 14 will receive. <u>See</u> Disclosure Statement at 40-41. The distributions to OPEB claimants will occur through two VEBAs established under the Plan to be funded with New B Notes. <u>See id</u>. The amendments in the Plan provide for an additional distribution of $11.03 million of "Excess New B Notes" to the VEBAs. <u>See</u> Plan § II.B.3.p.iii.A.

7. As the evidence has shown, the total OPEB claims are vastly overstated, and thus Class 12 holders are receiving greater distributions than the Class 14 holders. The $11.03 million in additional distributions to the VEBAs increases such discrimination.[5] Although the Plan attempts to couch this distribution as on account of consent rights granted by the City to the Retiree Committee regarding settlements of the COP Litigation, the consideration would not be distributed to the VEBAs if it were not to be used to satisfy OPEB Claims. Thus, the distribution is on account of the OPEB Claims.

C. <u>The Plan Unfairly Discriminates Under Any Standard</u>.

8. The disparate treatment described above to Class 9 (including Syncora) and Class 12 is unfair discrimination under any standard that courts have applied. Under the standard articulated by this court <u>In re Dow Corning Corp.</u>, 244 B.R. 696, 702 (Bankr. E.D. Mich. 1999), a presumption of unfair discrimination arises if there is:

(1) a dissenting class;

(2) another class of the same priority; and

---

[5] The Plan does provide for $220,000 of Excess New B Notes to be distributed to Class 14 which, using the estimate of aggregate Class 14 General Unsecured Claims of $150 million as listed in the Disclosure Statement, would provide an additional .15% recovery, which is less than the .26% additional recovery to the OPEB claimants.

5

> (3) either (a) a materially lower percentage recovery for the dissenting class (measured in terms of new present value of all payments) or (b) regardless of the percentage recovery, an allocation under the plan of materially greater risk to the dissenting class in connection with its proposed distribution.

Id. at 702.

9. First, it is undisputed that Class 14 rejected the Plan. Second, Class 14 General Unsecured Claims have the same priority as Class 12 OPEB Claims, and at least the same priority as Class 9 COPs Claims, including those held by Syncora. Third, as described above, the recoveries to Classes 9 and 12 are materially higher than Class 14 recoveries in terms of percentage recovery, and Syncora will receive substantial value over and above the Class 9 distribution. Finally, the additional distribution of New C Notes to Class 9 greatly diminishes the risk profile of the consideration provided to Class 9 relative to Class 14. Thus, the Plan is presumed to discriminate unfairly under the Dow Corning test.

10. The City cannot rebut this presumption, because it cannot show:

> (1) where there is a material difference in percentage recoveries (a) the preferred class has infused new value into the reorganization that offsets its gain or (b) the dissenting class would receive similarly less percentage recovery outside of bankruptcy; or
>
> (2) where there is a material difference in risk allocations under the plan, that such allocation is consistent with the risk allocation assumed by the parties before the bankruptcy.

Id. No evidence suggests that claimants in Class 9 (including Syncora) or Class 12 are infusing any new value into the reorganization, much less value that offsets their gains. Moreover, neither Class 9 nor Class 12 could expect to receive a greater or less risky recovery outside of bankruptcy.

6

11. Even if the Court were to apply the test articulated in <u>In re Aztec Co.</u>, 107 B.R. 585 (Bankr. M.D. Tenn. 1989), the City cannot meet its burden of showing that the four elements of that test are present here. In fact, the City cannot satisfy the first element, as it cannot show that the discrimination is supported by a reasonable basis. <u>See</u> <u>id</u>. at 590. It simply cannot be the case that more favorable treatment of nearly every class (and every non-consenting class) that has the same or lower priority as Class 14 is justified merely because the Debtors have chosen to engage with Official Committees and deep-pocketed insurers in negotiations and grant them certain concessions. The City has discriminated unfairly against Class 14, which has no fiduciary committee or insurer to advocate for its interests.

12. The treatment of Syncora is even more unjustified given that the Plan proposes to provide it greater value on account of its COPs claims than afforded to other COPs holders in its own class, and thus materially greater value than the Class 14 consideration. As set forth in the Pre-Trial Brief, the City has cited no authority to support the proposition that a debtor may discriminate materially against non-consenting classes merely because the City finds it advisable to settle disputes with other creditors. To do so would reorder the priorities of the Bankruptcy Code, providing a *de facto* higher priority to any creditor that brings litigation against a debtor that may cause annoyance or expense. Although such a reordering is impermissible, by effectively elevating Syncora's priority over other unsecured creditors, the Plan does just that.

[*Remainder of Page Left Intentionally Blank*]

WHEREFORE, MIDDD requests that the Court deny confirmation of the Plan.

Dated: September 19, 2014

Respectfully submitted,

DECHERT LLP

By: /s/ Allan S. Brilliant
Allan S. Brilliant
Stephen M. Wolpert
1095 Avenue of the Americas
New York, NY 10016
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

*Attorneys for the Macomb Interceptor Drain Drainage District*