# EXHIBIT 11

Michigan Employment Relations Commission

Kalamazoo Public School District, Public Employer, and Kalamazoo County Education Association, MEA/NEA, Labor Organization-Petitioner

No. UC12 K-012

Docket No. 13-000056-MERC

December 17, 2013

**Related Index Numbers**

15.14 Educational Employees, Paraprofessionals
15.71 Other Professional Employees, Data Processing Employees
33.343 Criteria, Community of Interest, Similar Wages/Hours/Terms/Conditions of Employment
36.35 Forms of Clarification or Modification, Addition of Classification

**Appearances:**

Marshall W. Grate, for the Public Employer, Clark Hill P.L.C.

William C. Camp, White, Schneider, Young and Chiodini, P.C.

Michael M. Shoudy, White, Schneider, Young and Chiodini, P.C

**Judge / Administrative Officer**

CALLAGHAN
LABRANT
YAW

**Ruling**

MERC granted a unit clarification petition. It clarified an existing bargaining unit of school nonsupervisory paraprofessional employees and office personnel to include the newly created position of district data specialist. MERC relied on several factors indicating that the data specialist was a technical employee who shared a community of interest with the unit of paraprofessional support employees.

MERC finds: title of district data specialist belongs in paraprofessionals' unit

**Meaning**

MERC is required to determine, as appropriate, the single largest unit in which employees share a community of interest. In prior decisions, MERC has found that technical employees, whose positions require specialized training but not a four-year degree, share a community of interest with units of school support employees.

**Case Summary**

In 2012, the employer-school district purchased a new software system, DataWise, which helps assess students' educational progress. The position of district data specialist was created to aid with the task of implementing the system throughout the school district. The union brought a unit clarification petition seeking to include the position in its bargaining unit of nonsupervisory paraprofessional employees and office personnel. The employer contended that the district data specialist classification was part of a historically unrepresented residual group of supervisory and technical employees. Upon granting the petition, MERC clarified the unit of office and paraprofessional support employees to include the position of full-time district data specialist. It acknowledged differences between the full-time district data specialist position and positions in the union's support unit. Nevertheless, MERC concluded that the duties, skills, and educational requirements of the position indicated that the data specialist qualified as a technical employee who shared a community of interest with the unit of support employees.

**Full Text**

**Decision and Order on Petition for Unit Clarification**

On November 1, 2012, the Kalamazoo County Education Association, MEA/NEA, filed this petition for unit clarification with the Michigan Employment Relations Commission pursuant to § 13 of the Public Employment Relations Act (PERA), 1965 PA 379, as amended, MCL 423.213. An evidentiary hearing was conducted for the Commission in Lansing, Michigan, on April 30, 2013, by Julia C. Stern, Administrative Law Judge for the Michigan Administrative Hearing System. Based on the entire record, including post-hearing briefs filed by both parties on June 20, 2013, we find as follows:

**The Petition and Positions of the Parties:**

The bargaining unit which Petitioner seeks to clarify is described in its collective bargaining agreement as nonsupervisory paraprofessional employees and office personnel employed by the Kalamazoo Public School District (the Employer). The petition, as originally filed, sought to clarify this unit to include two newly created positions: school district receptionist/substitute service, and district data specialist. During discussions taking place prior to the hearing, the parties agreed that the school district receptionist/substitute service should be placed in the bargaining unit. The parties disagree, however, over whether the district data specialist is appropriately included in this unit.

In 2012, the Employer purchased a new software system, DataWise, which helps assess students' educational progress, and began the task of implementing the system throughout the school district. The district data specialist position was created to assist with this task, which includes training all the Employer's teachers, administrators and other educational professionals to use the system. Petitioner asserts that the district data specialist should be placed in its unit of paraprofessional and office personnel because it is a newly created position that shares a community of interest with these employees based on similarities in job duties, skills, educational background, working conditions, and supervisory hierarchy. The Employer contends that the district data specialist does not share a community of interest with this unit. Instead, according to the Employer, the district data specialist is part of a historically unrepresented residual group of supervisory and technical employees.

**Findings of Fact:**

**The Bargaining Unit**

The Employer is an urban school district with approximately 13,000 students and approximately 1,800 employees. As noted above, the bargaining unit that Petitioner seeks to clarify is described in the contract as all nonsupervisory paraprofessional and office personnel, excluding specific positions designated as confidential. Library aides are included in the unit as paraprofessional employees.

Secretaries within the bargaining unit are assigned to various locations within the school district, with some working in school buildings and others in administrative offices. There are secretaries assigned to the Employer's teaching and learning services department who work in the administrative offices of that department. As part of their office duties, secretaries regularly compile and assist in preparing evaluation materials, collect data for use in preparing reports to federal and state agencies, and copy and provide other assistance in preparing such reports.

All secretarial positions are required to have at least intermediate knowledge of some software programs and the ability to quickly learn new programs as they become available. Some of the secretarial positions need to know how to use specialized software programs. For example, secretarial employees in the payroll and finance departments regularly use the MUNIS program. Insofar as the record discloses, none of the secretarial positions within the unit require any type of degree beyond high school, although an associate's degrees is preferred for some positions.

Among the paraprofessional positions included in the unit are paraprofessionals assigned to work in computer labs within school buildings. Computer lab paraprofessionals assist students sent to the lab by teachers, supervise students within the lab, maintain the computer lab and its equipment, assist students and teachers with technical issues when they are in the lab, and troubleshoot minor software and hardware problems. If computer lab paraprofessionals are unable to resolve a hardware or software problem, they submit a work ticket to the Employer's technology services department. The computer lab paraprofessional position, like all paraprofessional positions in Michigan, requires sixty credit hours of study at an institution of higher education, an associate's degree or higher, or passage of one of the basic skills assessments developed by the Michigan Department of Education (MDE). The job description for the Employer's computer lab paraprofessional position also states that the position is required to be computer literate.

The secretaries, library aides, and other paraprofessionals in the unit are supervised by administrators in the locations at which they work. These administrators are part of the supervisory hierarchy that extends up to the Employer's superintendent and its school board.

Historically excluded from any of the Employer's bargaining units is a group of unrepresented positions designated by the Employer as supervisory/technical. In November 2012, there were forty-eight individuals with this designation. These include supervisory employees who are not administrators, such as skilled trades' foremen and custodial foreman. They include positions requiring a degree in education, social work or some related field, such as student responsibility center facilitator and bilingual home school specialist, homeless liaison specialist, and student behavior specialist. They also include positions that required unique technical skills but no degree. Examples of this type of position are stage manager and musical instrument repair technician. In addition, the supervisory/technical group includes a miscellaneous group of positions excluded from any unit, including auditorium manager and transportation dispatcher.

The group of positions designated by the Employer as supervisory/technical includes seven positions that either

have information technology-type duties, require an information technology degree, or both. Computer programmer (salary grade 17 on the Employer's supervisory/technical salary scale) is responsible for software development, technical planning, and maintenance of the Employer's administrative computer systems. It requires a four-year degree in computer science or related experience, in addition to experience with the maintenance and development of large administrative software applications. Technology integration specialist (salary grade 13) troubleshoots hardware and software at the Milwood Magnet School, provides staff with training on software technology, and advises the Employer on software purchases in addition to other tasks such as assisting students and teachers in creating multimedia projects. It requires an associate's degree in computer science. The Employer has a technology service department which consists of four positions: a technology specialist (salary grade 14), and three assistant technology specialists (salary grades 9 and 10). The record does not indicate what the educational or experience requirements are for these positions. Finally, there is a part-time position with the same job title as the position in dispute, district data specialist. Like the new full-time district data specialist position, the part-time position (salary grade 9) works under the supervision of the director of school improvements and learning assessments. The part-time district data specialist supports the Pinnacle program, the Employer's data base of grade and attendance information. This includes troubleshooting, acting as liaison with Pinnacle's vendor, and training employees to use the software. During the 2012-2013 school year, however, the part-time district data specialist was part of the training group assigned to train staff on the DataWise system. The part-time district data specialist position requires prior experience in supporting, training, and troubleshooting data systems, but does not require a degree.

There is also an extra duty assignment, open to any qualified employee of the district, called TAG (technology advanced group) member. TAG team members must be able to do minor troubleshooting of personal computers and Windows operating software and be familiar with other software titles used at instructional buildings. TAG team employees, under the supervision of employees in the technology services department, assist teachers, students and support staff with technology issues, hold technology training sessions with teachers and staff members, and keep track of the computer equipment in their buildings. TAG team members, who have included secretaries as well as teachers, are paid an annual stipend that ranges from $500 to $6,000 per year, depending on the number of staff and computers in their buildings.

**The Full-Time District Data Specialist Position**

The impetus for the Employer's purchase of the DataWise system was a new state requirement that school districts begin evaluating teachers based on their students' annual academic growth. Although the Employer had an existing student performance database, it was not user-friendly and could not be accessed by teachers. The Employer purchased DataWise in order to gather the student growth data required by the new evaluation requirements and also to provide teachers with data to help them improve their own instructional practices. During the 2012-2013 school year, the Employer began rolling out the program throughout the school district. The Employer estimated that this endeavor would take at least one year and maybe two.

On August 13, 2012, the Employer posted the full-time position district data specialist as a new supervisory/technical ten-month per year position within its teaching and learning services department. The position, at least during the 2012-2013 school year, was to be assigned full-time to the roll out of the new DataWise system. The full-time position was posted as having a one year duration. However, the Employer's assistant superintendent for teaching and learning services, Barbara Witzak, testified that if funding was available, the Employer planned to continue the position for at least the 2013-2014 school year.

The job posting for the full-time district data specialist listed the minimum qualifications of the position as an associate's degrees in information systems or a related field; prior experience in training, support, and troubleshooting major databases; prior experience in training individuals and groups; and a proven working knowledge of Microsoft Office and Crystal Reports, which is reporting software. The posting listed prior experience working in a K-12 environment and a bachelor's degree in information systems as desirable qualifications. The Employer's director of human resources, Sheila Dorsey, testified that the Employer decided to require a degree in addition to experience because it needed not just someone with application experience, but someone who could re-program the software to resolve glitches in the new system. Because the district data specialist would be involved in the Employer's efforts to train all its teachers and administrators on the DataWise software, the ability to train large numbers of staff was also an important job qualification.

The salary range for the full-time district data specialist position, as posted, was grade 10 on the Employer's supervisory/technical employee salary schedule. As such, the annual salary for the position was approximately $3,000 more than the salary paid to the highest paid employee in the paraprofessional and office personnel unit.

Both the full-time and part-time district data specialists report to the director of school improvement and assessments, Rick Seger. Seger, along with the directors of secondary education, elementary education, and curriculum and instruction, reports to Witzak. The full-time district data specialist works from an office in the Employer's administration offices. Secretaries also work in the administration office; it was not clear whether any of them report directly to Seger. The hours of the full-time district data specialist are generally 8 am to 5 pm.

Christie Sidwell was hired in November 2012 to fill the position of full-time district data specialist. Sidwell had a bachelor's degree in computer and information systems and a master's degree in education technology. Her prior experience included working for Electronic Data Systems for nine years and setting up information technology systems at two parochial schools.

DataWise is a database for educational testing and assessment information. It also allows the user to create tests aligned to state standards and answer keys for these tests; schedule groups of students to take a given test on a particular date; and automate test delivery by creating online tests or paper tests with answer sheets that can be scanned and automatically scored. DataWise allows test results to be analyzed in numerous ways, including by district, school, teacher, and subject. A teacher, for example, can compare the performance of his or her class, or a subset of the class, as compared to other classes in the school or the district. He or she can also prepare a report showing the performance of an individual student on a particular test: e.g. oral reading fluency, on different dates over the school year or over more than one school year. A teacher can also use DataWise to assess what their students know about the subjects covered by their lesson both before and after the lesson is presented, and thereby assess the strengths and weaknesses in their instruction.

When Sidwell was hired, the Employer had begun work on a system for creating and maintaining user identifications and passwords for DataWise and had created the first of several training modules. After she was hired, Sidwell familiarized herself with the DataWise software and took over the maintenance of the user identification system. Sidwell also developed an information bridge between DataWise and E-School, the database that houses the Employer's student information. Sidwell took over responsibility for preparing all the materials for the DataWise training, and creating PowerPoint presentations, written materials and instructional videos for a series of training modules. Sidwell also began training the group of administrators who were to carry out the task of training approximately 800 teachers, administrators, and other professional staff. The training group included nearly every administrative employee within the teaching and learning services area, including assistant superintendent

Witzak, and the Employer's part-time data specialist. The training group was divided into four teams; buildings were distributed among the teams, and a training schedule was created for module one. The district data specialist served as lead trainer on Team 1, which was responsible for training teachers and other professional staff at twelve of the Employer's seventeen elementary schools, while Witzak served as lead trainer on Team 3, which was responsible for the high schools. Sidwell also served as the liaison with the software company to resolve glitches as they appeared as the training progressed. When a training team reported a problem, Sidwell would try to duplicate it and then work with the software company to develop a fix to solve the problem.

Training teachers to develop effective tests with the DataWise system is an important part of the project. Sidwell developed training materials for this subject, which is covered by module two. As of the date of the hearing in June 2013, the Employer had not yet begun this phase of training, but planned to do so during the 2013-2014 school year.

In February 2013, Sidwell, at her supervisors' urging, left the district data specialist position to take another, permanent, information technology position. The district data specialist position was posted again, but there were no internal applicants. The Employer then hired Daniel Ziegler to fill the position on a contract basis through the end of June 2013. It was unclear from the record whether the Employer, if it obtained funding to continue the position, intended to extend Ziegler's contract or to post the position again.

Ziegler has an associate's degree in business with a concentration in network administration, a Microsoft specialist certification, and experience in hardware and software support and troubleshooting and in providing training to inexperienced users. Between February and the date of the hearing in June 2013, Ziegler learned the DataWise system and continued training with the teams in place. During this period, the director of school improvements and assessments served as the liaison with the software company.

**Discussion and Conclusions of Law:**

In *Hotel Olds v State Labor Mediation Bd, 333 Mich 382, 387 (1952),* the Supreme Court directed us, when designating bargaining units as appropriate for purposes of collective bargaining, to find appropriate the single largest unit in which the employees share a community of interest. Community of interest is determined by examining a number of factors, including: similarities in duties, skills and working conditions; similarities in wages and employee benefits; amount of interchange or transfer between groups of employees; centralization of the employer's administrative and managerial functions; degree of central control of labor relations; common promotion ladders and common supervision. *City of Grand Haven,* 21 MPER 25 (2008); *Grand Rapids Pub Sch,* 1997 MERC Lab Op 98, 106; *City of Warren,* 1966 MERC Lab Op 25, 28.

In keeping with the Court's direction to create broad units of employees sharing common interests, we have held that bargaining units consisting of all nonsupervisory and nonprofessional support employees of a school district are presumptively appropriate. *Troy Sch Dist,* 21 MPER 37 (2008); *South Redford Sch Dist,* 1966 MERC Lab Op 160. We have found technical employees whose positions require specialized training, but not a four year degree, to share a community of interest with units of support employees of a school district. See, e.g., *Brimley Area Sch,* 2000 MERC Lab Op 159, (technology coordinator responsible for providing technical support in the computer lab, installing software, and maintaining computers in a small rural district); *Essexville-Hampton Pub Sch,* 2001 MERC Lab Op 316, (position that installed computer software and performed troubleshooting on computers under the supervision of the director of technology).

Positions that have been historically excluded from a bargaining unit form a residual unit. Positions within a re-

sidual unit can be added to a bargaining unit only after a petition for representation election is filed and the employees have the opportunity to vote on whether they wish to be included in the unit. See, e.g., *City of Lansing*, 1994 MERC Lab Op 261, 266. When newly created positions share a community of interest with a unit which seeks to include them, however, it is appropriate to accrete them to that unit rather than permit them to remain with a residual group of excluded employees. *Kalamazoo Co Probate Ct*, 1994 MERC Lab Op 980, 984; *Saginaw Valley State Coll*, 1988 MERC Lab Op 533, 538; *Lake Superior State Univ*, 17 MPER 9 (2004). As we stated in *City of Bay City*, 16 MPER 31 (2003):

When a union files a unit clarification petition seeking to add a new position to its unit, no other union claims the position, and the employer does not assert that this position is executive, confidential or supervisory, the issue is generally whether the new position shares community of interest with petitioner' s existing unit.

One of the responsibilities of the full-time district data specialist is to support the DataWise software. This includes working with the software vendor to solve problems as they arise. The position' s other major responsibility is providing formal training to staff in utilizing the system, including preparing the training materials to be used to train all the Employer' s teachers and administrative staff. The computer lab paraprofessional position in Petitioner' s bargaining unit troubleshoots some software problems, and some secretarial positions in the unit use specialized software. However, there is no indication that any of the positions in Petitioner' s unit of office and paraprofessional employees provide software support or are responsible for resolving software problems with the software' s vendor. There is also no indication that any of these positions provide other employees with formal software training. The duties of the full-time district data specialist are clearly different from the duties performed by Petitioner' s bargaining unit and are more similar to the duties of certain positions in the residual unit, such as the part-time district data specialist. However, the full-time district data specialist, like the members of Petitioner' s unit, has responsibilities that primarily support the Employer' s educational mission.

The full-time district data specialist position requires an educational background and skill set different from the background and skill set required for positions in Petitioner' s bargaining unit. The full-time district data specialist position requires an associate' s degree in computer science, as well as job experience in training, support, and troubleshooting major computer data bases. Insofar as the record discloses, no position in the paraprofessional and office employee unit requires any type of degree, specialized or otherwise, although associate' s degrees are preferred for some secretarial positions and an associate' s degree is one of the ways an applicant for a paraprofessional position can satisfy the requirement that he or she demonstrate basic language and mathematic skills. However, neither the full-time district data specialist position nor the positions in Petitioner' s unit require four-year degrees of any type. Like the positions in the unit, the full-time district data specialist is neither a professional nor a supervisory position.

The salary for the full-time district data specialist position is higher than the salary paid to employees in the bargaining unit, although not significantly higher than the highest paid unit employee. Like the employees in Petitioner' s unit, the full-time district data specialist reports to a supervisor who is part of a supervisory hierarchy terminating with the Employer' s superintendent and board of education.

In determining the appropriate bargaining unit for collective bargaining, our goal is to group together all employees with common interests. Although there are differences between the full-time district data specialist position and the positions in Petitioner' s support unit, we find that the duties, skills, and educational requirements of the position support a finding that the full-time district data specialist is a technical employee who shares a community of interest with Petitioner' s unit of support employees of the school district. We conclude, therefore, that

inclusion of the newly created position in this unit is appropriate, and we issue the following order.

**Order**

The petition for unit clarification is granted. The bargaining unit of office and paraprofessional support employees represented by the Kalamazoo Education Association is clarified to include the position of full-time district data specialist.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.