# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------------x
                                     :
In re                                :          Chapter 9
                                     :
CITY OF DETROIT, MICHIGAN,           :          Case No. 13-53846
                                     :
                    Debtor.          :          Hon. Steven W. Rhodes
                                     :
                                     :
-------------------------------------------------------x
```

## JOINT NOTICE OF TRANSITION PLAN

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On March 28, 2013, Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL §§ 141.1541, et seq. ("PA 436"), became effective.  At that time, Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit, Michigan (the "City") with all the powers and duties provided under PA 436.  Mr. Orr serves as EM as an appointee of the State of Michigan (the "State").

2.      As EM, Mr. Orr has led the City's restructuring efforts in coordination with City officials, and by statute has acted exclusively on behalf of the City in its above-captioned chapter 9 bankruptcy case (the "Chapter 9 Case"). See PA 436 § 18(1) (empowering "the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9").

3.     Section 9 of PA 436 provides that the EM may be removed by the City after 18 months in office (i.e., after September 28, 2014) (the "EM Tenure").  In anticipation of the potential removal of the EM by City leadership, the City and the State have been engaged in discussions about the completion of the EM's work and the transition to the post-EM period.  Notably, despite the potential removal of the EM, the City's proposed Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 7502) (as it may be amended, modified or supplemented, the "Plan of Adjustment") remains pending and subject to confirmation and implementation, and other aspects of the Chapter 9 Case remain to be administered.

4.     As a result of extensive discussions that included (among others) the Mayor of the City of Detroit (the "Mayor"), the members of the Detroit City Council ("City Council"), the EM and the Governor for the State of Michigan (the "Governor"), the City and the State reached consensus on an approach to address the transition of power from the EM back to the City and the completion of activities relating to the Plan of Adjustment and the Chapter 9 Case.  Those agreements are reflected in:  (a) a resolution of City Council dated September 25, 2014, a copy of which is attached hereto as Exhibit A (the "Council Resolution"); (b) a letter from the Mayor to the Governor dated September 25, 2014, a copy of which is attached hereto as Exhibit B (the "Mayor's Letter"); and (c) Emergency

Manager Order No. 42 issued by the EM on September 25, 2014, a copy of which is attached hereto as Exhibit C (the "EM Transition Order").

5.     The Council Resolution, the Mayor's Letter and the EM Transition Order demonstrate a firm commitment by the City and State to supporting the Plan of Adjustment.  They also effectuate an organized, cooperative and consensual transition of power from the Emergency Manager to elected leaders in a way that (a) ensures there will be no disruption of the legal proceedings relating to the City's restructuring, (b) facilitates the fastest possible conclusion of the Chapter 9 Case and (c) promotes the prompt exit of the City from receivership.

6.     The City and the State file this Notice for the information of the Court and parties in interest in the Chapter 9 Case.  The City and the State are prepared to respond to any inquiries that the Court may have with respect to these matters, at the Court's convenience.

Dated:  September 26, 2014          Respectfully submitted,

 /s/  David G. Heiman
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243 2382
Facsimile:  (213) 243 2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, Michigan  48075
Telephone:  (248) 359-7300
Facsimile:  (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com


/s/  M. Butch Hollowell
M. Butch Hollowell (P37834)
Corporation Counsel
City of Detroit Law Department
2 Woodward Ave, Suite 500
Detroit, Michigan  48226
Phone: (313) 224-4550
Email:  HollowellM@detroitmi.gov

ATTORNEYS FOR THE CITY


/s/ Matthew Schneider
Matthew Schneider  (P52190)
Chief Legal Counsel
P.O. Box 30754
Lansing, Michigan  48909
Telephone:  (517) 373-3203
SchneiderM7@michigan.gov

ATTORNEY FOR THE STATE OF
MICHIGAN

# EXHIBIT A

# TRUE COPY CERTIFICATE

Form C of D—16-CE

STATE OF MICHIGAN,⎫
                  ⎬ ss.
    City of Detroit ⎭

### CITY CLERK'S OFFICE, DETROIT

I,    JANICE M. WINFREY               , City Clerk of the City of Detroit, in said

State, do hereby certify that the annexed paper is a TRUE COPY OF_____ RESOLUTION

adopted (passed) by the City Council at session of

September 25,        20 __14__

and approved by Mayor

September 25,        20 __14__

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the original, and the same is a correct transcript therefrom, and of the whole of such original.

           In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at

Detroit, this_____ 26th

day of_ September _____A.D. 20 __14__

                                CITY CLERK

*Cushingberry, Jr.*

*On the*
*Name of CC*

# A RESOLUTION BY THE DETROIT CITY COUNCIL

## A RESOLUTION REMOVING KEVYN D. ORR AS EMERGENCY MANAGER AND REMOVING THE CITY OF DETROIT FROM RECEIVERSHIP UNDER ACT 436

**WHEREAS**    Section 9(6)(c) of Act 436 of the Public Acts of 2012 ("**Act 436**"), permits the Detroit City Council (the "**City Council**") with a 2/3 vote, and approval of the Detroit Mayor (the "**Mayor**"), to remove an emergency manager under Act 436 after he has served for at least 18 months after his or her appointment; and

**WHEREAS**    Section 9(7) of Act 436 permits a 2/3 vote of City Council, and approval of the Mayor, to remove the City from receivership if the emergency manager is removed pursuant to the provisions of Act 436 as described above; and

**WHEREAS**    On July 18, 2013, the City of Detroit (the "**City**") filed a petition for relief pursuant to chapter 9 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended ("**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**"), being case No. 13-53846 ("**Bankruptcy Proceeding**"). By an order dated December 5, 2013 (Docket No. 1946) ("**Eligibility Order**"), the Bankruptcy Court determined that the City is eligible for relief under chapter 9 of the Bankruptcy Code; and

**WHEREAS**    On September 16, 2014, the City filed its Seventh Amended Plan for the Adjustment of the Debts of the City of Detroit with the Bankruptcy Court (as it may be further amended, modified or supplemented, the "**Plan of Adjustment**"), and the City is pursuing the Bankruptcy Court's confirmation of the Plan of Adjustment pursuant to the Bankruptcy Code; and

**WHEREAS**    The City Council has determined that the Mayor and City Council are prepared and capable of exercising their legal responsibilities as the officials elected by Detroit voters and the City Council wishes to exercise its rights under Act 436 to remove Mr. Kevyn D. Orr as the City's emergency manager (the "**Emergency Manager**") following 18 months in office and remove the City from receivership subject to the terms of this Resolution; and

**WHEREAS**    The City Council supports the confirmation and implementation of a Plan of Adjustment and recognizes that, with the Bankruptcy Proceeding still ongoing, the smooth completion of those proceedings could benefit from a short extension of the Emergency Manager's term until the Effective Date of the Plan of Adjustment (as such term is defined

therein) for the limited purpose of doing those acts necessary to achieve confirmation and implementation of the Plan of Adjustment and for the successful conclusion of the Bankruptcy Proceeding; and

**WHEREAS**   The Emergency Manager believes the Mayor and City Council are prepared to resume their responsibilities, powers, and duties as the City's elected officials; and

**WHEREAS**   Consistent with Section 9(2) of Act 436, the Emergency Manager will authorize the Mayor and City Council to exercise all powers of those offices, *provided, however,* that the Emergency Manager will retain those Act 436 responsibilities, powers, and duties that are necessary for the Emergency Manager to successfully achieve confirmation and implementation of the Plan of Adjustment and conclude the Bankruptcy Proceeding; and

**WHEREAS**   Until the Effective Date of the Plan of Adjustment, the Emergency Manager has agreed to exercise only those powers as are necessary or appropriate to successfully achieve confirmation and implementation of the Plan of Adjustment and conclude the Bankruptcy Proceeding; **NOW THEREFORE BE IT**

**RESOLVED**   The City Council hereby: (i) removes the Emergency Manager; and (ii) removes the City from receivership under Public Act 436, both of which shall take effect as of the Effective Date of the Plan of Adjustment; and **BE IT FURTHER**

**RESOLVED**   After, and assuming, confirmation of the Plan of Adjustment, the City Council will support the City's implementation of the confirmed Plan of Adjustment.

# ADOPTED AS FOLLOWS
# COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| Scott BENSON | ✓ | |
| Raquel CASTANEDA-LOPEZ | ✓ | |
| *George CUSHINGBERRY, JR. | ✓ | |
| Saunteel JENKINS | ✓ | |
| Gabe LELAND | ✓ | |
| Mary SHEFFIELD | ✓ | |
| Andre L. SPIVEY | ✓ | |
| James TATE | ✓ | |
| Brenda PRESIDENT JONES | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 9 | 0 |

WAIVER OF RECONSIDERATION (No. _19_ )

per motions of adjournment

# EXHIBIT B



CITY OF DETROIT
MAYOR'S OFFICE

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 1126
DETROIT, MICHIGAN 48226
PHONE 313•224•3400
FAX 313•224•4128
WWW.DETROITMI.GOV

September 25, 2014

Hon. Richard Snyder
Governor
State of Michigan
P.O. Box 30013
Lansing, Michigan

Dear Governor Snyder:

Earlier today, the Detroit City Council voted to end Kevyn D. Orr's tenure as Emergency Manager of the City of Detroit as of the effective date of the plan of adjustment.

Pursuant to Sections 6(c) and 7 of Public Act 436 of 2012, I fully support City Council's action and hereby approve the removal of Emergency Manager Kevyn D. Orr, and approve the removal of the City from receivership, in accordance with today's City Council Resolution.

Sincerely,

Michael E. Duggan
Mayor
City of Detroit

# EXHIBIT C



**EMERGENCY MANAGER**
**CITY OF DETROIT**

**ORDER No. 42**

**ORDER ADDRESSING ISSUES RELATING TO THE CONCLUSION**
**OF THE EMERGENCY MANAGER'S TENURE AND TRANSITION**
**OF CITY OPERATIONS TO THE MAYOR AND CITY COUNCIL**

BY THE AUTHORITY VESTED IN THE EMERGENCY MANAGER
FOR THE CITY OF DETROIT
PURSUANT TO MICHIGAN'S PUBLIC ACT 436 OF 2012,
KEVYN D. ORR, THE EMERGENCY MANAGER,
ISSUES THE FOLLOWING ORDER:

*Whereas*, on March 28, 2013, Michigan Public Act 436 of 2012 ("PA 436") became effective and Kevyn D. Orr became the Emergency Manager (the "EM") for the City of Detroit (the "City") with all the powers and duties provided under PA 436; and

Pursuant to Section 9(2) of PA 436, the EM "shall act for and in the place and stead of" the City's Mayor (the "Mayor") and the Detroit City Council (the "Council"); and

Section 9(2) of PA 436 further provides that, during the pendency of the receivership, the Mayor and the Council may exercise such powers "as may be specifically authorized in writing by the [EM] or as otherwise provided by [PA 436] and are subject to any conditions required by the [EM];" and

On July 18, 2013, consistent with the authorization of the Governor of the State of Michigan provided under Section 18(1) of PA 436, the City filed a petition for relief pursuant to chapter 9 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (as it may be amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") with the case caption of "*In re City of Detroit, Michigan*, Case No. 1353846" (the "Bankruptcy Case"); and

1

On September 16, 2014, the City filed a Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 6908) (as it may be further amended, modified, corrected or supplemented, the "Plan of Adjustment"), and the City is pursuing the Bankruptcy Court's entry of an order confirming the Plan of Adjustment pursuant to the Bankruptcy Code (the "Confirmation Order"); [1] and

Section 9(6)(c) of PA 436 provides that the EM may be removed after 18 months in office (such time before removal, the "EM Tenure"); and

On September 25, 2014, consistent with Section 9(6)(c) of PA 436, the City, through the Council and the Mayor, has taken action to remove the EM as of the Effective Date of the Plan of Adjustment (the "City Removal Action"); and

As the end of the EM Tenure approaches and in anticipation thereof and in consideration of the terms of the City Removal Action, the EM believes that this Order is appropriate to: (a) promote the successful transition of City governance from EM back to the Mayor and the Council so they can provide or cause to be provided necessary governmental services essential to the public health, safety and welfare; (b) assist in the City's efforts to rectify its financial emergency; and (c) otherwise fulfill the intents and purposes of PA 436 and chapter 9 of the Bankruptcy Code; and

As part of this Order, the EM has determined, among other things, that (a) certain provisions of previous EM Orders shall be modified, revoked or supplemented; (b) the Mayor, the Council and others shall have responsibility for the orderly and efficient management of the City and the ongoing efforts to rectify the City's financial emergency; and (c) the terms hereof are appropriate to provide for a smooth transition at the conclusion of the EM Tenure and to promote the long-term financial recovery of the City and the health, safety and welfare of the public.

---

[1]  As applicable, capitalized terms not otherwise defined herein have the meanings given to them in the Plan of Adjustment.

**It is hereby ordered that:**

*Restoration of City Governance*

1. The powers and authority of the Mayor and the Council that previously were exercised by the EM are hereby restored effective immediately as set forth herein. All salaries and benefits of the Mayor and the members of the Council shall be provided in the normal course. In particular, whereas PA 436 permits the officers of the City to exercise operational control and fulfill their governmental functions during the EM Tenure and with EM approval, the EM agrees that the Mayor and the Council will have, and may exercise, authority over the City's day-to-day operations and activities effective immediately.

2. Previous orders of the EM relating to the powers of the Mayor and the Council and their salaries and benefits (i.e., EM Order Nos. 1, 3, 10, 20 and 31) are hereby rescinded to the extent inconsistent with this Order.

*EM Retained Powers and Duties*

3. The EM agrees not to exercise his powers under PA 436 to interfere with the powers restored to the Mayor and the Council under paragraph 1 above. The EM further agrees that he will exercise his powers under PA 436 through the conclusion of the EM Tenure only with respect to any action, or the prevention of action, that is necessary or convenient to the purposes described below.

   a. <u>Management of the Bankruptcy Proceeding</u>. The EM has and will exercise the power to act exclusively on the local government's behalf in the Bankruptcy Case and related proceedings, including, but not limited to, (a) the power to make or authorize filings in the Bankruptcy Case and in any related cases or appeals and (b) the power to secure the services and direct the conduct and payment of all experts, advisors, entities or others that have been retained as of the date of this Order to assist in the Bankruptcy Case and related proceedings, or that the EM determines are necessary based on future developments in the Bankruptcy Case or related litigation.

   b. <u>Implementation of the Plan of Adjustment</u>. Without limiting the foregoing, the EM has and will exercise the power to take all actions necessary and convenient to obtain confirmation of the Plan of Adjustment and bring into effect the provisions of such confirmed Plan of Adjustment, the Confirmation Order or any other Bankruptcy Court order related to the Bankruptcy Proceeding, or any exhibit to any of the foregoing. This power shall include the power to execute on behalf of the City all documents necessary or appropriate to effectuate any transaction contemplated in the Plan of Adjustment. Specifically, the EM will exercise power and authority relating to the following:

      i. The LTGO Settlement;

3

ii.     The UTGO Settlement;

iii.    The DIA Settlement;

iv.     The settlement with the State related to its participation, including the State Contribution Agreement;

v.      The 36th District Court Settlement;

vi.     All transactions necessary to facilitate the various settlements with city retirees, including, but not limited to, those regarding health care and pension benefits (including, but not limited to, the Retiree Health Care Settlement Agreement, the Restoration Trust Agreement, the Detroit General VEBA Trust Agreement and the Detroit Police and Fire VEBA Trust Agreement);

vii.    All transactions necessary to facilitate the various settlements related to the Detroit Water and Sewerage Department ("DWSD"), including but not limited to:

   A.     The DWSD tender offer and related financings; and

   B.     Creation of the Great Lakes Water Authority and associated transactions, including as set forth in the Memorandum of Understanding, dated September 9, 2014, among the City, the State, Oakland County, Macomb County and Wayne County;

viii.   All transactions needed to secure and implement an Exit Facility and, until that time, compliance with the terms of the existing Postpetition Financing Agreement and Postpetition Financing Order;

ix.     All steps necessary to secure self-insurance coverage for (A) worker's compensation and (B) operation of City motor vehicles;

x.      The Syncora Settlement, including the Development Agreement and the other settlement documents attached to or referenced in the Plan of Adjustment;

xi.     The issuance and distribution of the securities provided by the Plan of Adjustment; and

xii.    Any other transactions or agreements (including related revisions to the Plan of Adjustment) that are reasonable or appropriate to resolve remaining objections to confirmation of the Plan of Adjustment, implement and give effect to the other

4

provisions of the Plan of Adjustment and the settlements incorporated therein and the address any confirmation issues raised by the Bankruptcy Court.

4. The EM agrees to consult with the Mayor and the Council regarding the terms of any EM Order to be entered after the date hereof and in advance of the Effective Date, and the EM agrees that any such order will be limited to matters related to implementation of the Plan of Adjustment, the conduct of the Bankruptcy Case, the transition of remaining governmental power to the City or any other matter required by law.

5. For the avoidance of doubt, nothing herein shall require the EM to take, or refrain from taking, any action required by applicable law.

*Executive Branch Reorganization Plan*

6. To assist in the City's efforts to rectify its financial emergency and provide or cause to be provided necessary governmental services essential to the public health, safety and welfare, the Mayor and the Council are authorized restructure City government pursuant to the terms below:

    a. The Mayor may submit a proposed executive branch reorganization plan to the Council. The plan may provide for the creation, abolition, reassignment, re-naming or reorganization of any department, agency, division, or senior management position within the executive branch, and/or the duties or responsibilities of any such department, agency, division or senior management position in the executive branch. The Mayor may propose amendments at any time to any previously adopted executive branch reorganization plan. In addition to those positions exempt from the classified service by other provisions of this charter, any reorganization plan or amendment may provide for the creation of executive management positions totaling no more than 60 additional positions to serve at the pleasure of the Mayor; provided, however, this provision shall not apply to employees covered by a collective bargaining agreement. All amendments to the plan must originate with the Mayor.

    b. The Council may approve or reject a proposed reorganization plan or any proposed amendment. If the Council fails to act on the proposed plan or a proposed amendment within 45 days after its submission, the plan or the amendment becomes

5

effective. Any executive branch reorganization plan submitted by the Mayor may include the Law Department as if such department were a department under the executive branch.

    c.   Without limiting the foregoing, the director of each City executive department and the Law Department, shall be appointed by and serve at the pleasure of the Mayor. Nothing in this paragraph shall restrict or otherwise alter the authority of the Council to confirm positions that are subject to confirmation under City Charter.

    d.   Any at-will position created by an EM Order shall count as one of the 60 position limitation, whether or not such position serves at the pleasure of the Mayor.

    e.   If the Council, in its sole discretion, believes that Corporation Counsel has a conflict of interest, the Council may retain independent counsel.

*Departmental Restructuring*

7. Notwithstanding any City or human resources rule, regulation, policy, agreement, ordinance or practice to the contrary, including, but not limited to, the City's Civil Service Rules, and with the approval of the Mayor and the Council in coordination with the Human Resources Department, the City may implement departmental restructurings not inconsistent with any other EM Order. These restructurings may grant department heads the authority to make hiring, retention, promotion, demotion, reassignment and any other related personnel decisions affecting their departments, in consultation with the Human Resources Department. Such reorganizations shall comply with the terms of applicable collective bargaining agreements and provide required notices to impacted employees and labor unions, if applicable.

6

*City of Detroit Police Commission; Police Chief*

8. Notwithstanding anything to the contrary in EM Order No. 11, the following powers of the Board of Police Commissioners shall be reinstated effective immediately:

   a. The power to consult with the Chief of Police, and with the approval of the Mayor, establish policies, rules and regulations;

   b. The power to review the departmental budget prior to its submission to the Mayor and to make recommendations to the Mayor regarding such budget;

   c. The power to receive, investigate (including the power to subpoena witnesses, administer oaths, take testimony and require the production of evidence, and to apply to the appropriate court for enforcement of same, and to continue its current investigative staffing levels for this purpose), and recommend resolution of complaints to the Mayor concerning the operation of the Police Department;

   d. The power to forward all allegations of criminality to the appropriate internal or external law enforcement agency for further investigation; and

   e. The power to make an annual report to the Mayor, the Council and the public of the handling of such complaints.

   All other powers granted to the Chief of Police by Order No. 11 shall continue

9. The Mayor shall have the authority to negotiate and execute a contract that, among other things, extends the current Chief of Police's service to the City.

*Tax Collection*

10. The City and the State have been negotiating an agreement regarding the State's collection of City income taxes (a "Tax Collection Agreement"), which is important to the City's restructuring efforts. Notwithstanding any City Charter or ordinance provisions to the contrary regarding contract approval processes, the Mayor and the City's Chief Financial Officer (the "CFO") shall take such steps as may be appropriate to assist in negotiating a Tax Collection Agreement and shall promptly enter into and consummate any Tax Collection Agreement negotiated with the State. Within 120 days after the date of execution of a Tax Collection Agreement, the Mayor and the CFO shall take all steps necessary and appropriate to align the City's tax-related processes to effectuate the requirements of this paragraph.

7

*Other EM Orders*

11. EM Order No. 5 relating to the transfer of real property owned by the City is revoked and rescinded except that any transfers of real property required under the Plan of Adjustment or the transactions contemplated thereby shall continue to be subject to EM Order No. 5 through the end of the EM Tenure.

12. EM Order No. 7, requiring EM approval of all CDBG, HOME and NSP grants, is revoked and rescinded in its entirety.

13. The City's Inspector General (the "IG") and City's Auditor General (the "AG") shall prepare and deliver a final written report (the "Final IG/AG Report") to the Mayor and the Council within 90 days of the date of this Final EM Order with respect to the subject matter of the 60 Day Report (as defined in EM Order No. 8) and updated reports described in EM Order No. 8. If the EM Tenure has not concluded, a copy of the Final IG/AG Report also shall be provided to the EM. Upon receipt of the Final IG/AG Report by the Mayor and the Council (and, if applicable, the EM), the IG's and the AG's duties under paragraph 3 of EM Order No. 8 shall terminate.

*Reporting*

14. The Human Resources Director shall file any employment position or new classification that is created on or after the date of this Order with the City Clerk and the Council on the 15th day of each month (or if such date is not a business day, the next succeeding business day), commencing on November 17, 2014. Such report shall include the compensation range of that employment position. Any new position that is created and filled shall be within available appropriations.

*Administrative Matters*

15. Nothing in this Order shall be interpreted as contrary to applicable law.

16. This Order is effective immediately upon the date of execution below.

17. If any component of this Order is declared illegal, unenforceable or ineffective by a court of competent jurisdiction, such component shall be deemed severable so that all other components contained in this Order shall remain valid and effective.

18. This Order shall be distributed to the Mayor, Council members and all department heads.

Dated: September 25, 2014

By: _____
Kevyn D. Orr
Emergency Manager
City of Detroit

cc:     Governor of the State of Michigan
        State of Michigan Department of Treasury
        Mayor Michael Duggan
        Members of Detroit City Council
        City Department Heads

## <u>CERTIFICATE OF SERVICE</u>

I, David G. Heiman, hereby certify that the foregoing Joint Notice of Transition Plan was filed and served via the Court's electronic case filing and noticing system on this 26th day of September, 2014.


/s/ David G. Heiman