# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

--------------------------------------------------------- x
                                                          :
In re                                                     : Chapter 9
                                                          :
CITY OF DETROIT, MICHIGAN,                                : Case No. 13-53846
                                                          :
                                    Debtor.               : Hon. Steven W. Rhodes
                                                          :
--------------------------------------------------------- x

**DEBTOR'S COMBINED OBJECTION AND BRIEF IN OPPOSITION TO PETITIONER ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

The City of Detroit ("City") files this Combined Objection and Brief in Opposition to Petitioner Robert Davis' and Citizens United Against Corrupt Government's Emergency Motion for Relief from the Automatic Stay ("Motion") (Docket No. 7667). In support of this Objection, the City responds as follows:

**I.    Introduction**

The Motion makes clear that the Petitioners are concerned about only one thing: recent closed-door sessions of the Detroit City Council discussing the "possible future employment" of Kevyn Orr, the City's Emergency Manager.[1] As discussed below, the closed-door sessions of the Detroit City Council were not in violation of the Open Meetings Act, but that is not really the issue before this Court. The question for this Court is whether Petitioners need immediate relief, in the middle of the confirmation trial, such that the automatic stay preventing the filing of a lawsuit against the City Council in Wayne County Circuit Court at this time should be lifted.

---

[1] Throughout their motions, Petitioners repeatedly refer to the EM's "employment by the Debtor." As this Court is aware, Kevyn Orr is appointed by the State and is not an employee of the City of Detroit.

The meetings about which Petitioners complain have already occurred. On September 22, 2014, City Council called a closed-session meeting for September 23, 2014 to discuss legal memoranda from the City's Law Department entitled "P.A. 436 Transition Matters." On September 25, 2014, City Council adopted a resolution removing the Emergency Manager effective as of the Effective Date of the Plan of Adjustment. Both the Mayor and the Emergency Manager then took actions to begin to effect the transition of power from the Emergency Manager to the City's elected leaders. There are no ongoing discussions regarding the status of the Emergency Manager. The meetings are over. The resolution has been unanimously adopted by City Council and approved by the Mayor. The time for the removal of the Emergency Manager and the City from receivership has been determined. There is no live case or controversy requiring immediate attention. While Petitioners may intend to file a lawsuit seeking a declaration that the meetings were improperly closed, any urgency of determining the matter alleged by the Petitioners is now moot. Therefore, Petitioners' request for relief from the automatic stay should be denied.

## II. Background

### A. The Transition Plan

On March 28, 2013, Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL §§ 141.1541, *et seq.* ("PA 436"), became effective. At that time, Kevyn D. Orr became the Emergency Manager ("EM") for the City with all of the powers and duties provided under PA 436. Mr. Orr serves as EM as an appointee of the State of Michigan ("State").

As EM, Mr. Orr has led the City's restructuring efforts in coordination with City officials, and by statute has acted exclusively on behalf of the City in this Chapter 9 case. Section 9 of PA 436 provides that the EM may be removed by the City after 18 months in office (i.e. after September 27, 2014). In anticipation of the potential removal of the EM by City

leadership, the City and the State have been engaged in discussions about the completion of the EM's work and the transition to the post-EM period. Notably, despite the potential removal of the EM, the City's proposed Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 7502) (as it may be further amended, modified, or supplemented, the "<u>Plan of Adjustment</u>") remains pending, subject to confirmation and, of equal importance, implementation. Other aspects of the Chapter 9 case remain to be administered.

As a result of extensive discussions that included the Mayor of the City of Detroit ("<u>Mayor</u>"), the members of the Detroit City Council ("<u>City Council</u>"), and the EM, the City and EM have reached consensus on an approach to address the transition of power from the EM back to the City and the completion of activities relating to the Plan of Adjustment and the Chapter 9 case. Those agreements are reflected in: (a) a resolution of City Council dated September 25, 2014 ("<u>Council Resolution</u>"); (b) a letter from the Mayor to the Governor dated September 25, 2014 ("<u>Mayor's Letter</u>"); and (c) Emergency Manager Order No. 42 issued by the EM on September 25, 2014 ("<u>EM Transition Order</u>").[2]

Pursuant to a City Council Resolution dated September 22, 2014 ("<u>OMA Resolution</u>"), these discussions took place in accordance with the requirements of the Open Meetings Act, MCL 15.268 ("<u>OMA</u>"). *See* Exhibit 1. The Agenda for the September 23, 2014 meeting anticipates a resolution authorizing a closed session. The OMA Resolution provides that pursuant to section 8(h) of the OMA:

> …a closed session of the Detroit City Council is hereby called for September 23, 2014, at 2:00p.m., for the purpose of consulting with attorneys from the Law Department, the City Council Legislative Policy Division and any other indispensable parties to discuss privileged and confidential communications and

---

[2] The Council Resolution, Mayor's Letter and EM Transition Order were filed with this Court at Docket Number 7681.

legal memoranda from the Law Department dated September 22, 2014, entitled "*P.A. 436 Transition Matters*".

The Council Resolution (adopted in open session), the Mayor's letter and the EM Transition Order demonstrate a firm commitment by the City and State to supporting the Plan of Adjustment. They also effectuate an organized, cooperative and consensual transition of power from the EM to elected leaders in a way that (a) ensures there will be no disruption of the legal proceedings relating to the City's restructuring, (b) facilitates the fastest possible conclusion of this Chapter 9 case, and (c) promotes the prompt exit of the City from receivership.

B.  The Motion

On September 25, 2014, Petitioners Robert Davis and Citizens United Against Corrupt Government ("Petitioners") filed the Motion. In their Motion, Petitioners seek permission to file a civil action in the Wayne County Circuit Court for declaratory and injunctive relief against the Detroit City Council for certain purported violations of the OMA. Motion, p. 1.

Petitioners have not filed with this Court any proposed complaint they would file in Wayne County Circuit Court, but it is clear from their two motions[3] that the City Council meetings at issue relate exclusively to the closed-door sessions and discussions "pertaining to the possible future employment of Mr. Orr":

- "The violations arise out of the Detroit City Council's recent closed-door sessions and discussions pertaining to the possible future employment of Kevyn Orr, the state's Emergency Manager ..." Motion ¶1.

- "The claims Petitioners will allege and assert are that the Detroit City Council's recent closed-door sessions and meetings with the Emergency Manager, the Mayor of the City of Detroit and with other representatives of the Debtor, to

---

[3] On September 25, the Petitioners also filed an *Ex Parte* Motion for an Order Shortening Notice and Schedule an Expedited Hearing with Respect to the Motion ("Motion for Expedited Hearing") (Docket No. 7668). The Motion for Expedited Hearing was granted on September 26, 2014 (Docket No. 7680).

4

> discuss the possible future employment of the Emergency Manager, violated the OMA." Motion ¶2.

- "Petitioners' suit will primarily seek the circuit court's declaration that the Detroit City Council's recent closed-door sessions and discussions regarding the Emergency Manager's possible future employment with the Debtor, violated the OMA ... Petitioners will also seek injunctive relief enjoining the Detroit City Council from holding any further such closed sessions and discussions regarding the Emergency Manager's possible future employment with the Debtor, in violation of the OMA." Motion ¶3.

- "Petitioners seek to file a civil action in the Wayne County Circuit Court against the Detroit City Council for its violations of the OMA arising out of its recent closed-door sessions and meetings and discussions regarding the future employment of the Emergency Manager with the Debtor ..." Motion ¶15.

- "Petitioners will seek a court's declaration that the Detroit City Council violated the OMA by having the closed-door sessions, meetings and discussions with respect to the possible future employment of the Emergency Manager with the Debtor ..." Motion ¶16.

- Petitioners' suit "will primarily seek the circuit court's declaration that the Detroit City Council's recent closed-door sessions and discussions regarding the Emergency Manager's possible future employment with the Debtor, violated the OMA ..." Motion for Expedited Hearing ¶9.

- Petitioners assert that emergency relief is necessary because "the Detroit City Council is currently holding unlawful closed-door meetings in violation of the OMA and are seeking to continue to hold unlawful close-door meetings in the *immediate* future in violation of the OMA." Motion for Expedited Hearing ¶12.

Notably, Petitioners do not identify any purported violations of City Council unrelated to the meetings identified above regarding the status of the EM, despite the fact that City Council has gone into closed session a number of times for a variety of reasons since onset of this case.

## III. Argument

The automatic stay "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 363 (6th Cir. 1997) (quoting H. Rep. 95-595, at 340 (1978), reprinted in 1978

5

U.S.C.C.A.N. 5787, 6296. Through the Stay Extension Order,[4] the automatic stay was extended to the City Council and other "parties that are…the targets of claims, lawsuits and other enforcement actions…that have the *direct or practical effect* of denying the City the protections of the" automatic stay. Stay Extension Motion ¶ 15.

Section 362(d) of the Bankruptcy Code authorizes a bankruptcy court to grant relief from the automatic stay in limited circumstances. *See* 11 U.S.C. § 362(d). In particular, section 362(d)(1) of the Bankruptcy Code provides that a party in interest may obtain relief from the automatic stay "for cause." 11 U.S.C. §362(d)(1).

"The Bankruptcy Code does not define 'cause' as used in [section] 362(d)(1). Therefore, under [section] 362(d), 'courts must determine whether discretionary relief is appropriate on a case by case basis.'" *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered Prods., Inc.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008) (quoting *Laguna Assocs. L.P. v. Aetna Casualty & Surety Co. (In re Laguna Assocs. L.P.)*, 30 F.3d 734, 737 (6th Cir. 1994)).

The determination of whether to grant relief from the automatic stay "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting)*, No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013) (quoting *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002)). In determining whether cause exists, however, "the bankruptcy court should base its decision on the hardships imposed on the parties with an

---

[4] On July 25, 2013, this Court entered the Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor ("Stay Extension Order"). (Docket No. 166). The Stay Extension Order granted the Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, For Entry of an Order Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor ("Stay Extension Motion"). (Docket No. 56).

6

eye towards the overall goals of the Bankruptcy Code." *Plastech,* 382 B.R. at 106 (quoting *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995)). In evaluating the hardship on a debtor, courts repeatedly stay actions that will interfere with the debtor's ability to reorganize and confirm a plan. *See, e.g., Lomas Financial Corporation v. The North Trust Company (In re Lomas Financial Corporation)*, 117 B.R. 64 (S.D. N.Y. 1990); *In re MCSi, Inc. Securities Litigation*, 371 B.R. 270 (S.D. Ohio 2004).

Here, a balance of the competing harms confirms that no cause (much less sufficient cause) exists to justify relief from the automatic stay to allow Petitioners to initiate a proceeding in Wayne County Circuit Court.

### A. No Harm to Petitioners

The harm to Petitioners is limited or non-existent. Petitioners do not have a valid cause of action under the OMA and, even if they did, the Council Resolution and the EM Order have already been approved and signed. As a result, the matter is moot based on Petitioners' own representation in the Motion that they "will not seek to invalidate any decision that the Detroit City Council will make in relationship to the possible future employment of the Emergency Manager with the Debtor." Motion ¶16. Further, the City is not seeking an indefinite stay of the potential lawsuit. After the Plan of Adjustment becomes effective and the discharge goes into effect, Petitioners may bring their lawsuit. This is especially noteworthy here where no counter-balancing harm will be vested on Petitioners. Petitioners promise in their own Motion that they are not seeking to invalidate any actions but instead seek a declaratory ruling on whether City Council violated the OMA. Any such determination can surely wait a few months while the City focuses its efforts on the confirmation and implementation of its Plan of Adjustment.

Furthermore, the Detroit City Council did not violate the OMA; City Council properly went into closed session on September 23, 2014 to consider written legal opinions protected by

7

the attorney-client privilege. The OMA specifically permits a public body to meet in closed session to consider material exempt from discussion or disclosure by state or federal statute. MCL§ 15.268(h). Since the Freedom of Information Act ("FOIA") exempts from disclosure "information or records subject to the attorney-client privilege," MCL §15.243(1)(g)**,** the OMA permits a public body to meet in closed session to discuss a privileged written opinion with its lawyer. *Booth Newpapers, Inc. v. Regents of University of Michigan*, 93 Mich. App. 100; 286 N.W.2d 55 (1979). Therefore, "consideration of a written legal opinion within the attorney–client privilege" is a permissible exemption under MCL § 15.268(h). *Id*.; *Booth Newspapers, Inc. v. Wyoming City Council*, 168 Mich. App. 459, 467; 425 N.W.2d 695 (1988).

Michigan courts interpret the legislature's use of the term "consider" to expressly indicate that the exemption covers in-depth discussion of the legal matters and related facts by the members of the public body. *Berryman v. Madison School District*, No.265996, 2007 WL 549230, *2 (Mich. App. Feb. 22, 2007) (unpublished) (attached as Exhibit 2). Logically, Michigan courts do not limit the term "consider" to require that board members silently read the attorney's opinion letter and withhold all comment until the open meeting resumes. *Id*. Rather, all discussion that legitimately relates to legal matters is appropriately had in a closed session. *Booth Newspapers, Inc v. Wyoming City Council*, 168 Mich. App. at 468 ("the scope of the discussion in closed session must legitimately relate to legal matters, and not bargaining, economics, or other tangential nonlegal matters").

For example, in *Deitrick v. City of Charlotte,* No. 254678, 2005 WL 901089 (Mich. App. Apr. 19, 2005) (unpublished) (attached as Exhibit 3), the Michigan Court of Appeals held that a closed session to discuss a written legal opinion did not violate the OMA. In *Dietrich*, the Charlotte City Council held a closed session to discuss a written legal opinion by outside counsel

regarding at-will employees, after which the city attorney was terminated by the council in open session. The court held that discussion related to the written legal opinion was properly exempt from the open meeting requirements of the OMA. *Id*. at *2.

On the other hand, in *Booth Newspapers, Inc. v. Wyoming City Council*, 168 Mich. App. at 464, a violation of the OMA was found when the attorney gave advice in closed session on non-legal matters that were tangential to the written legal opinion. There, the Wyoming City Council held a closed session to discuss counsel's letter regarding issues related to proposed water system improvements, including a joint-pipeline with the city of Grand Rapids from Lake Michigan. The session was adjourned so that the attorney could attend meetings of wholesale customers and report back to the city in a second closed session regarding the customers' position on the proposed joint pipeline study. Immediately after this closed session, with virtually no discussion, the council unanimously passed two resolutions approving authorization of city contracts to a particular engineering firm. Later, in another closed session to discuss a letter regarding legal requirements of rate changes to wholesale water customers, the attorney polled the council members by asking them to "nod their heads" to let him know whether he could take a certain position in negotiating rates for a new contract. The Court found that an attorney's non-legal advice on strategy for negotiating contracts was outside the scope of the written legal opinion and those particular discussions were not exempt.

Here, the Detroit City Council properly went into closed session to review the written legal opinions from the City's Law Department entitled "P.A. 436 Transition Matters." In the closed session, City Council members considered the legal advice set forth in legal memoranda prepared by the City's Law Department. As the statute intends, City Council members considered and discussed the topic of the Law Department's legal opinions. Unlike in *Booth*

9

*Newspapers, Inc. v. Wyoming City Council,* there is no evidence that Council conducted any business in closed session outside the purpose for which the session was closed. To the contrary, following the closed-session discussions, Council adopted a resolution on exactly the issue of the written legal opinions – P.A. 436 (*i.e.,* EM) transition matters. The OMA provides that all "decisions of a public body shall be presumed to have been adopted in compliance with this act." MCL § 15.270(1).

Because Petitioners do not have a valid OMA claim, they will not be harmed by the inability to file an OMA claim in Wayne County Circuit Court. More importantly for purposes of this case, however, Petitioners have not demonstrated that they will be harmed by the inability to file an OMA claim in Wayne County Circuit Court *at this time*. The three exhibits to the Joint Notice of Transition Plan filed with this Court on September 25, 2014 – the Council Resolution, the Mayor's Letter and the EM Transition Order – make it clear that the matter of the transition and transfer of the powers of the EM to the Mayor and City Council is now closed. City Council has removed the EM as of the Effective Date of the Plan of Adjustment, the Mayor has informed the Governor of his support of City Council's actions, and the EM has issued a 9 page "Order Addressing Issues Relating to the conclusion of the Emergency Manager's Tenure and Transition of City Operations to the Mayor and City Council."[5]

In short, closed-session meetings regarding the removal or retention of the EM are over. The EM's appointment will end when the Plan of Adjustment is confirmed and goes into effect. Petitioners do not require any immediate relief to protect them from additional closed sessions on this topic.

---

[5] On September 25, 2014, the EM issued five additional orders that begin to effectuate the transition.

### B. Substantial Harm to the City if the Motion is Granted

Petitioners incorrectly argue that pursuit of their lawsuit will have no impact on the City, its property, or the Plan of Adjustment. Although Petitioners state that they have no intention of seeking to invalidate any decision made by the City Council, if the state court were to determine that City Council violated the OMA, the consequences, and direct and indirect effects of such a determination, would be uncertain, both as they may affect this case and as they may affect the rights of third parties. At this critical juncture of the case, any additional uncertainty to the process is unnecessary and unwarranted, particularly when the only harm that Petitioners, by their own admissions, even arguably endure is a delay in the right to bring their lawsuit for a few months. Moreover, as noted in the Joint Notice of Transition Plan,[6] the City Council, Mayor and EM are all committed to effectuating "an organized, cooperative and consensual transition of power from the Emergency Manager to elected leaders in a way that (a) ensures there will be no disruption of the legal proceedings relating to the City's restructuring, (b) facilitates the fastest possible conclusion of the Chapter 9 case and (c) promotes the prompt exit of the City from receivership." Joint Notice of Transition Plan ¶5. The closed-session meetings were conducted for the specific purpose of obtaining legal advice regarding this transition. If the City is subjected to a lawsuit by Petitioners every time City Council goes into closed session pursuant to the OMA to discuss legal matters relating to the transition, which may include subjecting the Mayor, EM and City Council members to depositions and other discovery regarding the closed-session meetings, this graceful transition from the EM to the City's elected officials will be jeopardized. Further, Petitioners' lawsuit may be used as another vehicle to challenge the Plan of Adjustment or otherwise attempt to interfere with the City's restructuring efforts. Such a

---

[6] The Joint Notice of Transition Plan was filed with this Court at Docket Number 7681.

result would have the direct and practical effect of denying the City the protections of the automatic stay and "interfere with the City's activities in this chapter 9 case." *See* Stay Extension Motion ¶26. At this most sensitive stage of the case, to cast into doubt one of the most important decisions made by the Mayor, City Council, State and EM so that Petitioners can obtain an advisory decision a few months sooner is imprudent, serves no counter-veiling purpose and creates unnecessary and needless uncertainty.

## IV. Conclusion

For the reasons stated above, the City respectfully requests that the Court deny the Motion.

September 28, 2014                    Respectfully submitted,

By: /s/ Marc N. Swanson
   Jonathan S. Green (P33140)
   Stephen S. LaPlante (P48063)
   Megan P. Norris (P39318)
   Marc N. Swanson (P71149)
   MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
   150 West Jefferson, Suite 2500
   Detroit, Michigan 48226
   Telephone: (313) 963-6420
   Facsimile: (313) 496-7500
   green@millercanfield.com
   laplante@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 28, 2014, he filed **DEBTOR'S COMBINED OBJECTION AND BRIEF IN OPPOSITION TO PETITIONER ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC** using the court's CM/ECF system which will send notice of the filing to all registered participants in this matter. Also on this date, the document was served via electronic mail upon counsel as listed below:

Andrew A. Paterson, Esq.
aap43@outlook.com

DATED: September 28, 2014

By: /s/Marc N. Swanson
Marc N. Swanson (P71149)
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swansonm@millercanfield.com

13