# EXHIBIT 2

2007 WL 549230
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.

James BERRYMAN and Connie Hayes, Plaintiffs-Appellants,

v.

MADISON SCHOOL DISTRICT, Madison School District Board Of Education, Walter Hill, Deborah Griffith, Julie Ramos, M. Kyle Ehinger, Dawn Bales, David Halsey, and Mark Swinehart, Defendants-Appellees.

Docket No. 265996. | Feb. 22, 2007.

Lenawee Circuit Court; LC No. 05-001803-CZ.

Before: O'CONNELL, P.J., and SAAD and TALBOT, JJ.

**Opinion**

PER CURIAM.

**\*1** Plaintiffs appeal as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

This case arose when plaintiff Hayes, a teacher for defendant Madison School District, told her superintendent that she was going to adopt a child from Guatemala and intended to take leave under the Family Medical Leave Act (FMLA), 29 USC 2601 *et seq.* She also suggested that she would take the leave as a paid absence, because she had accumulated paid leave time under the collective bargaining agreement. The administration decided that Hayes should only receive unpaid leave, so she filed a grievance that eventually worked its way before defendant school board. Plaintiff Berryman was the union representative who represented plaintiff Hayes throughout the grievance process, and the remaining defendants are the individual members of the school board.

Before addressing Hayes' in an open meeting, the members of the board held a closed meeting. They assert that the only purpose of the closed meeting was to review a letter drafted by the district's legal counsel and make sure that the board members did not have any revisions that they thought were necessary. However, plaintiffs allege that the board members were visibly and actively engaged in conversation in the closed, but windowed, room. Plaintiffs further assert that another district employee was handed documents to photocopy before the issue was put to a vote, but the originals already had the signature of the board's secretary on them. When the board reopened the meeting, defendant Swinehart immediately began editorializing about the anticipated course of the proceedings, indicating that the board was denying the grievance. After prompting by the superintendent, Swinehart restated his position as a motion, and the motion passed. Plaintiffs then filed this suit, alleging that the action was invalid because the board's closed meeting violated the Open Meetings Act (OMA), MCL 15.261 *et seq.* Our review of this case is limited solely to the OMA issues, and does not address the validity of defendants' decision to deny Hayes' grievance.

Plaintiffs first contend that the trial court erred by granting summary disposition to defendants. We disagree. We review de novo a trial court's decision to grant summary disposition. *Maiden v. Rozwood,* 461 Mich. 109, 118; 597 NW2d 817 (1999).

Pursuant to MCL 15.263 of the OMA, a public body, such as a school board, must meet publicly and its members must conduct their deliberations and reach their decisions in the public meetings. However, the requirement of open deliberations does not apply to a closed meeting conducted "to consider material exempt from discussion or disclosure by state or federal statute." MCL 15.268(h). Therefore, the school board members did not run afoul of the OMA if they closed the meeting "for consideration of a written legal opinion within the attorney-client privilege." *Booth Newspapers, Inc v. Wyoming City Council,* 168 Mich.App 459, 467; 425 NW2d 695 (1988). Additionally, the Michigan Freedom of Information Act provides that a public body may exempt from disclosure any "[i]nformation or records subject to the attorney-client privilege." MCL 15.243(1)(g).

**\*2** The term "consider" in MCL 15.268(h) is not so limited that it required each board member to silently read the attorney's opinion letter and withhold all comment until the open meeting resumed. Instead, the statute allows the public body, or entity, to "consider" the legal opinion, indicating that the Legislature intended discussion and deliberation among the individual parts of the whole entity. MCL 15.268. In fact, "deliberating" is a defining component of a "meeting" convened under the OMA, whether open or closed. MCL

15.262(b); see also *Moore v. Fennville Public Schools Board of Education,* 223 Mich.App 196, 202; 566 NW2d 31 (1997). Plaintiffs argue that the duration of the closed session-27 minutes-is substantial and suggests that the board did more than merely review the written materials of its legal counsel. They also point to plaintiff Berryman's allegation that he could see the board members carrying on a conversation. However, the board members were not prohibited from discussing the legal documents, and 27 minutes does not seem unreasonably long for the board members to read and discuss the 11-page draft disposition and accompanying attorney letter. Under the circumstances, neither the length of the board meeting nor the board's deliberations raise an inference that board members used the meeting to deliberate specifically about denying Hayes' grievance without reference to the legal opinion. According to the affidavits of all eight of the board members present at the closed session, "any discussion or deliberation in closed session was consistent with [MCL 15.263(3) ], was brief, and was limited to legal counsel's letter and draft grievance disposition." Therefore, plaintiffs failed to substantiate their allegations that the school board's deliberations ran afoul of the OMA.

Regarding plaintiffs' assertion that a decision had already been made in closed session, contrary to MCL 15.263(2), the OMA defines a decision as a "determination, action, vote or disposition upon a motion ... on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy." MCL 15.262(d). Plaintiffs argue that the lack of deliberation by the board members after they returned to open session implies that the deliberation and decision actually occurred during the closed session. They argue that the decision in this case, like the decision in *Booth Newspapers, Inc v. Univ of Michigan Bd of Regents,* 444 Mich. 211, 229; 507 NW2d 422 (1993), was a fait accompli before the open meeting began. We disagree. Given the contents of the legal opinion and the legal advice considered in the closed meeting, it is not surprising that the members' general agreement with the opinion would translate into the action they eventually took. Nevertheless, this natural understanding and common perception among the board members does not amount to a "decision" under the act. See *Moore, supra* at 203.

 *3 Here, the board members' affidavits confirm that no decision was made regarding Hayes' grievance, no vote was taken, and no board member indicated in closed session how he or she would officially vote on the grievance in open session. Defendants submitted the minutes of the closed session to the lower court for in camera review, as well as affidavits from all board members confirming that the discussion in the closed session was limited to legal counsel's written material, with no discussion of how each member would vote. Under the circumstances, the lack of deliberation in the open meeting does not suggest that the board secretly and definitively decided the matter. To hold otherwise would leave every closed meeting open to judicial intervention and disclosure as long as the public body's preferred course after the meeting was so obvious that further discourse was unnecessary and the final decision was unanimous. Because plaintiffs fail to proffer any evidence of abuse or circumvention of the OMA, this case does not remotely rise to the level of back-room decision-making that was condemned in *Booth Newspapers, Inc v. Univ of Michigan Bd of Regents, supra.*

Plaintiffs' next argue that the trial court erred in denying plaintiffs' motion to compel on the basis that the material sought was protected by the attorney-client and attorney work-product privileges. We disagree. Whether the attorney-client privilege applies to a communication is a question of law that this Court reviews de novo. *Leibel v. General Motors Corp,* 250 Mich.App 229, 236; 646 NW2d 179 (2002). Similarly, whether the work product privilege applies is a question of law that we review de novo. *Koster v. June's Trucking Inc,* 244 Mich.App 162, 168; 625 NW2d 82 (2000). A trial court's decision to grant or deny a discovery request is reviewed for an abuse of discretion. *Chastain v. General Motors Corp (On Remand),* 254 Mich.App 576, 593; 657 NW2d 804 (2002). "Opinions, conclusions, and recommendations based on facts are protected by the attorney-client privilege when the facts are confidentially disclosed to an attorney for the purpose of legal advice." *Leibel, supra* at 239. "The purpose of the attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the communications are safe from disclosure." *Co-Jo, Inc v. Strand,* 226 Mich.App 108, 112; 572 NW2d 251 (1997).

In this case, the documents sought by plaintiffs consist of (1) a draft of Hayes' grievance disposition, which contained facts disclosed by district officials, the attorney's legal analysis, and his legal opinions; (2) another draft of Hayes' grievance disposition with minor revisions on district letterhead; and (3) a letter from legal counsel to defendants providing his recommendations concerning the draft. The two versions of the draft disposition contained essentially the same language except for a few minor revisions. The documents sought after

in the instant case are protected by both the attorney-client privilege and the work-product doctrine. The drafts of Hayes' grievance disposition, as well as the accompanying letter, contained confidential facts disclosed to the attorney for the purpose of securing the attorney's legal advice concerning how to proceed with Hayes' grievance. The attorney's advice was sought to ensure that the board's decision comported with the collective bargaining agreement and the FMLA, both of which allow paid leave in limited circumstances.

**\*4** Plaintiffs acknowledge that the documents contain some information that is normally privileged, but argue that the purpose of the documents means that defendants waived their privilege to withhold them. Only a client can waive the attorney-client privilege and a waiver does not arise by accident. *Leibel, supra* at 240. A true waiver must be intentional and voluntary. *Leibel, supra* at 241. "Absent a true waiver ... a document retains its privileged status, regardless of whether it has been publicly disclosed." *Id.* Contrary to plaintiffs' assertions, the privilege is not waived merely because a final version of the drafts would eventually be made available to Hayes and her union. There is no indication that waiving the privilege to the final document waives the privilege to its rough drafts. Absent an affirmative indication that defendants intended to waive the privilege, the requested documents are not subject to discovery. *Id.*

Moreover, the work product doctrine protects from discovery the notes, working documents, and memoranda that an attorney prepares in anticipation of litigation. *Id.* at 244. "[A] document may be prepared in anticipation of litigation if the attorney rendered legal advice in order to protect the client from future litigation concerning a particular transaction or issue." *Id.* at 246. Here, legal counsel composed the two draft dispositions in an effort to avoid binding arbitration. Similarly, the attorney letter accompanying the drafts contained legal opinions and was prepared in an effort to avoid further litigation. Arbitration proceedings were imminent at the time the documents were drafted. The attorney who drafted the documents represented the district in arbitration. The documents contained mental impressions, conclusions, opinions, and legal theories concerning the arbitration, and plaintiffs never demonstrated a pressing need and a lack of alternative sources for any facts contained in the documents. Accordingly, the trial court did not err when it determined that the documents were protected as the attorney's work product.

Affirmed.

---

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.