# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------- x
                                         :

In re                                   :    Chapter 9

                                         :

CITY OF DETROIT, MICHIGAN,      :    Case No. 13- 53846

                                         :

                   Debtor.         :    Hon. Steven W. Rhodes

                                         :

                                         :

------------------------------------------------------- x

## CITY OF DETROIT'S MOTION IN *LIMINE* TO EXCLUDE DEPOSITION TESTIMONY OF GARY EVANKO AND MICHAEL HALL

Financial Guaranty Insurance Company ("FGIC") proposes to submit by deposition the testimony of two witnesses—Gary Evanko and Michael Hall—who can both be found only five blocks from the courthouse. Rather than call these witnesses to testify live, FGIC asserts that each of these witnesses qualifies under Federal Rule of Civil Procedure 32(a)(4) as an "officer, director, [or] managing agent" of the City, and, therefore, FGIC should be free to offer their deposition transcripts instead. This is not justified. As courts have repeatedly recognized, "[t]he deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Hand, J.). Moreover, these witnesses are not City officials, but are instead mid-level City employees who worked for the City only part-time or held

their positions on an interim basis.  In short, FGIC has identified no grounds for overriding the strong preference in favor of live testimony.

## ARGUMENT

Federal Rule of Civil Procedure 32(a) governs the use of depositions at trial. That rule allows for the admission of deposition transcripts in lieu of live testimony in certain, limited circumstances.  As relevant here, a deposition may replace live testimony only when the witness is either (i) "unavailable" to testify or (ii) an adverse party's "officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed. R. Civ. P. 32(a).  Notably, "[t]he party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met." *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990); *Bell v. CSX Transp., Inc.*, No. 00-40264, 2002 U.S. Dist. LEXIS 28725, at *4 (E.D. Mich. Apr. 4, 2002).  Thus, in order to use deposition testimony in lieu of live testimony by Evanko and Hall, FGIC must establish either that these individuals are "unavailable" to testify live or that they are an "officer, director, managing agent, or designee" of the City.[1]  FGIC can do neither, for several reasons.

*First*, courts have universally recognized that "testimony should be presented live whenever possible." *In re Air Crash at Lexington*, No. 5:06-CV-316-KSF, 2008 U.S. Dist. LEXIS 58484, at *23 (E.D. Ky. July 30, 2008); *see also*

---

[1] Neither was designated by the City to provide testimony under Federal Rule of Civil Procedure 30(b)(6).

*Young & Associates Public Relations, L.L.C. v. Delta Air Lines, Inc.*, 216 F.R.D. 521, 524 (D. Utah 2003) (noting the "universal preference for live testimony"). Indeed, "[t]he restrictions imposed by Rule 32 make it clear that the federal rules have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person." Wright and Miller, 8A <u>Federal Practice & Procedure</u> 2142 (quoted in *In re Air Crash at Lexington*, 2008 U.S. Dist. LEXIS 58484, at *22-23).

*Second*, both Evanko and Hall are available to testify. Rule 32(a)(4) states that a witness is only "unavailable" if the court finds one of the following:

(A) that the witness is dead;

(B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;

(C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

(D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

(E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4). Neither Hall nor Evanko satisfy these conditions. In fact, far from being "unavailable," both witnesses work a mere five blocks from the courthouse and would be able to appear live and provide testimony.

*Third*, when a witness is available, Rule 32(a) permits the use of depositions at trial only when the deponent was, at the time of the deposition, a City official. Under Rule 32(a), an "adverse party" may use for any purpose at trial the deposition of a party, or of a person who, "when deposed was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3); *see also Heights Driving Sch. v. Top Driver*, 51 Fed. App'x 932, 940 (6th Cir. 2002) (holding that Rule 32(a)(3) "permits an adverse party to use the deposition of a corporate officer 'for any purpose'"). Although in the corporate context courts have sometimes focused on the term "managing agent," that term has little meaning in the public-employer context. Rather, in the government context, only public officials such as the Mayor, City Council, and other elected or appointed officials possess sufficient authority to bind the government by what they say. It is these officials that are accountable to the public for their decisions and, as a result, it is these officials that speak on behalf of the government.

Tellingly, neither Evanko nor Hall are City officials. They are, instead, mid-level government employees responsible for a particular aspect of City government:

(a) Evanko, for example, does not operate independently within either the Assessments Division or the City government as a whole. Rather, Evanko is one of two members of the Board of Assessors established by the City Charter, *see* Charter of the City of Detroit § 6.304 (Aug. 23, 2011), and, according to Evanko, the two assessors run the office as a "partnership," *see* Deposition of Gary Evanko, at 39:12-40:16 (June 24, 2014) ("Evanko Deposition"), excerpt attached hereto as Exhibit 6.1. Evanko's authority is also limited within the City government more broadly, as Evanko reports to the Finance Director, who himself reports to the City's Chief Financial Officer, who in turn reports to the Mayor. *See* Office of the Chief Financial Officer, Revised Organizational Chart (City's Exhibit 598), attached hereto as Exhibit 6.2. Indeed, Evanko is not even a full-time employee of the City, working instead for the City on an hourly basis while simultaneously serving as the Assessor for the cities of Dearborn and Allen Park. *See* Evanko Deposition at 12:5-19.

(b) Likewise, Hall, as the former interim Director of Human Resources for the City, reported to the Deputy Mayor, who himself reports to the Mayor. *See* 2013 Comprehensive Annual Financial Report, at I-13 (City's Exhibit 15), excerpt attached hereto as Exhibit 6.3. Moreover, while Hall also served as Director of Labor Relations at the time of his deposition, that position is

even one more step removed, reporting also to the Director of Human Resources. *See id.* In any event, at the time of his deposition Hall was serving as Director of Human Resources in only an interim capacity and, according to the Mayor, was not the most knowledgeable person on the City's human resources issues. *See* Deposition of Michael Duggan, at 114:12-24 (Aug. 1, 2014), excerpt attached hereto as Exhibit 6.4.

It would undermine the City's ability to govern itself if mid-level employees like Evanko and Hall were able to bind the City by their statements. Rule 32(a) should not be interpreted so broadly as to inhibit a city government's ability to consistently express policy positions.

*Finally*, allowing use of these depositions would only delay the proceedings. The City did not cross-examine Evanko or Hall during their depositions. As a result, if the deposition testimony of Hall and Evanko is deemed admissible, the City will likely need to call these witnesses in its rebuttal case to clarify their statements and correct certain known errors in their testimony. Allowing the deposition testimony to be admitted would thus be duplicative and not expedite the conclusion of the hearing on plan confirmation.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court grant its Motion in *Limine* To Exclude The Deposition Testimony of Gary Evanko and Michael Hall.

Dated: October 7, 2014   Respectfully submitted,


      /s/ Bruce Bennett
     Bruce Bennett (CA 105430)
     JONES DAY
     555 South Flower Street
     Fiftieth Floor
     Los Angeles, California 90071
     Telephone:  (213) 243-2382
     Facsimile:  (213) 243-2539
     bbennett@jonesday.com

     David G. Heiman (OH 0038271)
     Heather Lennox (OH 0059649)
     JONES DAY
     North Point
     901 Lakeside Avenue
     Cleveland, Ohio  44114
     Telephone:  (216) 586-3939
     Facsimile:  (216) 579-0212
     dgheiman@jonesday.com
     hlennox@jonesday.com

     Thomas F. Cullen, Jr. (DC 224733)
     Gregory M. Shumaker (DC 416537)
     Geoffrey S. Stewart (DC 287979)
     JONES DAY
     51 Louisiana Ave., N.W.
     Washington, D.C. 20001
     Telephone: (202) 879-3939
     Facsimile: (202) 626-1700
     tfcullen@jonesday.com
     gshumaker@jonesday.com
     gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com


ATTORNEYS FOR THE CITY OF DETROIT

## <u>SUMMARY OF EXHIBITS</u>

The following exhibits are attached to this motion, labeled in accordance with Local Rule 9014-1(b):

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice |
| Exhibit 3 | None (Not Applicable) |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None (Not Applicable) |
| Exhibit 6.1 | Excerpts from Deposition of Gary Evanko |
| Exhibit 6.2 | City's Exhibit 598 |
| Exhibit 6.3 | Excerpts from 2013 CAFR |
| Exhibit 6.4 | Excerpts from Deposition of Michael Duggan |

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
-------------------------------------------------- x
                                                   :
In re                                              :   Chapter 9
                                                   :
CITY OF DETROIT, MICHIGAN,                         :   Case No. 13- 53846
                                                   :
                              Debtor.              :   Hon. Steven W. Rhodes
                                                   :
                                                   :
-------------------------------------------------- x
```

## ORDER GRANTING CITY OF DETROIT'S
## MOTION IN *LIMINE* TO EXCLUDE DEPOSITION
## TESTIMONY OF GARY EVANKO AND MICHAEL HALL

This matter having come before the Court on the City of Detroit's Motion in *Limine* to Exclude Deposition Testimony of Gary Evanko and Michael Hall (the "Motion"); the Court having reviewed the Motion; having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances; having determined after due deliberation that the relief requested in the Motion is in the best interests of the Debtor and its creditors; and good and sufficient cause having been shown;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      IT IS FURTHER ORDERED that the deposition transcripts of Gary Evanko and Michael Hall shall be excluded from evidence at the hearing on plan confirmation.

# EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------------- x
                                                        :
In re                                                   :   Chapter 9
                                                        :
CITY OF DETROIT, MICHIGAN,                               :   Case No. 13- 53846
                                                        :
                              Debtor.                   :   Hon. Steven W. Rhodes
                                                        :
                                                        :
------------------------------------------------------- x
```

## NOTICE OF MOTION AND OPPORTUNITY TO RESPOND

**PLEASE TAKE NOTICE** that on October 7, 2014, the City of Detroit filed the *City of Detroit's Motion in* Limine *to Exclude Deposition Testimony of Gary Evanko and Michael Hall* (the "**Motion**") in the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**"), seeking entry of an order excluding from evidence at the plan confirmation hearing the deposition transcripts of Gary Evanko and Michael Hall.

**PLEASE TAKE FURTHER NOTICE that <u>your rights may be affected</u> by the relief sought in the Motion. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Bankruptcy Court to grant the City's Motion, or you want the Bankruptcy Court to consider your views on the Motion, within **17 days**[1] you or your attorney must:

---

[1] Concurrently herewith, the City has filed an *ex parte* motion to shorten notice of and expedite the hearing on the Motion (the "Motion to Expedite"). If the Court grants the Motion to Expedite, an order will be entered setting forth the shortened deadline to respond to the Motion.

1.    File a written objection or response to the Motion explaining your position with the Bankruptcy Court electronically through the Bankruptcy Court's electronic case filing system in accordance with the Local Rules of the Bankruptcy Court or by mailing any objection or response to:

**United States Bankruptcy Court**
Theodore Levin Courthouse
231 West Lafayette Street
Detroit, MI 48226

You must also serve a copy of any objection or response upon:

**Jones Day**
51 Louisiana Ave. NW
Washington, D.C. 20001-2113
Attention: Gregory Shumaker

-and-

**Pepper Hamilton LLP**
Suite 1800, 4000 Town Center
Southfield, Michigan 48075
Attn: Robert Hertzberg and Deborah Kovsky-Apap

2.    If an objection or response is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**PLEASE TAKE FURTHER NOTICE that if you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting such relief.**

**[signature page follows]**

Dated:  October 7, 2014                        Respectfully submitted,


                                               /s/ Bruce Bennett
                                               Bruce Bennett (CA 105430)
                                               JONES DAY
                                               555 South Flower Street
                                               Fiftieth Floor
                                               Los Angeles, California 90071
                                               Telephone:  (213) 243-2382
                                               Facsimile:  (213) 243-2539
                                               bbennett@jonesday.com

                                               David G. Heiman (OH 0038271)
                                               Heather Lennox (OH 0059649)
                                               JONES DAY
                                               North Point
                                               901 Lakeside Avenue
                                               Cleveland, Ohio  44114
                                               Telephone:  (216) 586-3939
                                               Facsimile:  (216) 579-0212
                                               dgheiman@jonesday.com
                                               hlennox@jonesday.com

                                               Thomas F. Cullen, Jr. (DC 224733)
                                               Gregory M. Shumaker (DC 416537)
                                               Geoffrey S. Stewart (DC 287979)
                                               JONES DAY
                                               51 Louisiana Ave., N.W.
                                               Washington, D.C. 20001
                                               Telephone: (202) 879-3939
                                               Facsimile: (202) 626-1700
                                               tfcullen@jonesday.com
                                               gshumaker@jonesday.com
                                               gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI  48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com


ATTORNEYS FOR THE CITY OF DETROIT

# EXHIBIT 4

## <u>CERTIFICATE OF SERVICE</u>

      I, Bruce Bennett, hereby certify that the foregoing *City of Detroit's Motion In* Limine *To Exclude Deposition Testimony Of Gary Evanko And Michael Hall* was filed and served via the Court's electronic case filing and noticing system on this 7th day of October, 2014.

                    /s/ Bruce Bennett

# EXHIBIT 6.1

1              IN THE UNITED STATES BANKRUPTCY COURT

2              FOR THE EASTERN DISTRICT OF MICHIGAN

3

4

5    In re                        ) Chapter 9

6    CITY OF DETROIT, MICHIGAN,    ) Case No. 13-53846

7                    Debtor.       ) Hon. Steven W. Rhodes

8

9    _____

10

11

12       The Videotaped Deposition of GARY EVANKO,

13       Taken at 1114 Washington Boulevard,

14       Detroit, Michigan,

15       Commencing at 9:01 a.m.,

16       Tuesday, June 24, 2014,

17       Before Kathryn L. Janes, CSR-3442, RMR, RPR.

18

19

20

21

22

23

24

25

1  Q.  Do you understand that I'm going to ask you questions
2      and that you'll provide answers under oath?
3  A.  I understand.
4  Q.  One of the most important parts of the deposition is
5      that you and I communicate well with one another.  If
6      I ask you a question that you don't understand, please
7      let me know and I'll rephrase the question.  If you
8      answer a question, I'm going to assume that you
9      understood it; is that fair?
10 A.  Yes, that's fair.
11 Q.  And this is a fairly technical area.  The world that
12     you live in is somewhat technical, so I'm going to be
13     doing the best that I can to ask the questions in the
14     right way, but if I don't, please let me know.
15 A.  Understood.
16 Q.  So you obtained your bachelor's degree from Bowling
17     Green State University; is that correct?
18 A.  That is correct.
19 Q.  And what year did you obtain that?
20 A.  1974.
21         MR. HACKNEY:  Can we mark this?
22         MR. STEWART:  Are you going to start with
23     Evanko 1?
24         MR. HACKNEY:  Yeah.
25         MR. STEWART:  This is the very first

1      deposition.  We'll word it --
2          MR. HACKNEY:  So I'll give you my
3      philosophy on this, Geoff.
4          MR. STEWART:  Okay.
5          MR. HACKNEY:  I've never seen the holy
6      grail of like the perfectly integrated exhibits across
7      all the deps, so I always do the name.
8          MR. STEWART:  Okay, good.
9          MARKED FOR IDENTIFICATION:
10         DEPOSITION EXHIBIT 1
11         9:04 a.m.
12 BY MR. HACKNEY:
13 Q.  Mr. Evanko, do you have Evanko Number 1 in front of
14     you?
15 A.  Yes.
16 Q.  This is a -- a screenshot that I took of what I
17     believe is your bio from the City of Dearborn site, is
18     that what it looks like to you?
19 A.  Yes, that's what it looks like to me.
20 Q.  And to the best of your knowledge, was the information
21     that you put into your bio on the City of Dearborn
22     site accurate, at least at the time you put it up
23     there?
24 A.  Let me have -- take the opportunity to review it.
25 Q.  You bet.

1  A.  Yes, this seems accurate.
2  Q.  And what additional work history would you add in
3      between 2009 and October of 2013 when I believe you
4      were announced as the new assessor in Detroit?
5  A.  Commencing in January of 2013, in addition to my
6      responsibilities as the assessor for the City of
7      Dearborn, I also became the assessor for the City of
8      Allen Park and the City of Romulus, both of which had
9      their assessor leave suddenly and both communities
10     were in a distressed situation such that they needed
11     to have an assessment role completed within weeks so
12     that they could go through the board review process in
13     March and inevitably levy taxes in July.
14         I continued with that -- those additional
15     assignments through September of 2013, at which time I
16     terminated my employment with the City of Romulus, and
17     then on the 2nd day of October, commenced my
18     employment with the City of Detroit as the chief
19     assessor for the City of Detroit.
20 Q.  In that last answer, did you say Allen Park?
21 A.  That's correct, Allen, A-L-L-E-N.
22 Q.  And I take it, that this bio lists all of the
23     certifications that you have, is that --
24 A.  Correct.
25 Q.  What is a Level 4 appraiser?

1  A.  Actually, they have retitled the certification.  Now
2      it is known as a Michigan Master Assessing Officer.
3      Anyone who is previously certified as a Level 4
4      assessor is -- is now called a Michigan Master
5      Assessing Officer.  There previously was four levels
6      of assessor certification.  Level 1 being the
7      qualifying and assessor to certify assessment roles in
8      the smallest communities in Michigan, typically
9      townships located up north.  And the levels of
10     certification numbers rise with the implied difficulty
11     of the assessing responsibility such that cities of a
12     certain amount of state equalized value and/or taxable
13     value need to be certified at specific levels.
14         As a consequence, cities of Detroit,
15     Dearborn, Romulus, all require a Level 4 assessor or
16     as now known a Michigan Master Assessing Officer
17     certification.  The City of Allen Park, being a
18     smaller community, requires what used to be called a
19     Level 3 assessor certification, and I'm not quite sure
20     what the new normal for that is today.
21 Q.  I take it, that the standards for going up what used
22     to be the four levels become more exacting as you go
23     up; is that correct?  And what I mean by that is, it's
24     harder to a be a Level 2 assessor than a Level 1
25     assessor; is that correct?

4 (Pages 10 to 13)

**Elisa Dreier Reporting Corp.  (212) 557-5558**
**950 Third Avenue, New York, NY 10022**

13-53846-tjt    Doc 7848    Filed 10/07/14    Entered 10/07/14 09:01:52    Page 23 of 36

1   A.  That is correct.
2   Q.  It's extremely helpful.  You're a -- you're a good
3       spokesman for this.  I won't lie to you, though, I
4       hope that I only have to do this once.  I actually
5       recently appealed my property taxes, one.  I wore a
6       suit to the hearing.
7           MR. ESSAD:  How did you do?
8           MR. HACKNEY:  I won.  Actually an
9       interesting story, I'll tell you guys at the break,
10      you'll -- you'll appreciate it.
11  BY MR. HACKNEY:
12  Q.  Okay.  Are you a City employee or are you an
13      independent contractor?
14  A.  I am akin to more of a contractor in that I do have a
15      contract that was signed by the emergency financial
16      manager.  I received no benefits that any other
17      employee would be entitled to, however, I am paid on a
18      biweekly basis and the City of Detroit does withhold
19      federal, state, Medicare, Social Security taxes.
20  Q.  What's the term of your contract?
21  A.  The term is October 1 through September 30th.  It's a
22      one-year contract, and the City has the option of
23      two one-year renewals.
24  Q.  Do you have an expectation as to whether that contract
25      will be renewed?

1   A.  I would expect that it would be renewed.
2   Q.  I think it's going to be renewed as well.
3           How would you describe your job duties in
4       the City of Detroit's Assessor's Office?
5   A.  Obviously, I have the responsibilities to assure the
6       lawful compli -- compilation of the annual assessment
7       rolls as well as the tax rolls.  In addition to that,
8       my responsibilities have been to proceed with a
9       general reappraisal of the city of Detroit.
10  Q.  Anything else?
11  A.  Quite frankly, I think that's enough.
12  Q.  It is.  I guess I meant more, I kind of thought that
13      you were the gentleman that ran things in the
14      Assessor's Office in terms of overseeing people in the
15      office and making sure everybody's doing what they're
16      supposed to be doing, but let me know if that's not
17      correct.
18  A.  That's not correct.  As I indicated to you previously,
19      the Board of Assessors consisted of Alvin Hohrn and
20      myself, and as I indicated previously, the way we have
21      divided responsibilities is that Mr. Hohrn is
22      primarily responsible for administration, personnel,
23      and technology.  And so when it comes to supervising
24      employees, that would be Mr. Hohrn's primary
25      responsibility.  You know, given the fact that he is a

1       regular full-time employee, he has the authority to
2       supervise.  Gary Evanko as a contractor I do not
3       believe has the authority to supervise employees which
4       would include, you know, discipline matters and other
5       matters in that genre.
6   Q.  Okay.  That's fair.  Would it be wrong to say, though,
7       given your respective duties that you and Mr. Horhn
8       run the office together?
9   A.  Absolutely.  I consider our relationship a
10      partnership.
11  Q.  I said would it be wrong to say that?
12  A.  Oh, I'm sorry.  Please repeat the question.  I'm
13      sorry.
14  Q.  I'm going to turn it around.  Is it correct to say
15      that you and Mr. Horhn run the office together?
16  A.  That would be correct.
17  Q.  Do you have anyone that reports to you?
18  A.  There would be only one person that would technically
19      report directly to me, and that's a gentleman who's
20      under contract in the Assessor's Office to assist with
21      commercial and industrial appraisal matters, and that
22      gentleman's name is Russell Raftary.
23  Q.  To whom do you report?
24  A.  I report to Mr. John Naglick, the finance director.
25  Q.  Let me ask some general questions about appraising

1       that I think will facilitate our -- our day together
2       just so I can get the nomenclature correct.  Is it
3       correct that there are three basic approaches to the
4       valuation of property, the market approach, the cost
5       approach, and the income approach?
6   A.  That's essentially correct, however I prefer to call
7       the market approach the sales -- direct sales
8       comparison approach since all three approaches are
9       required to reflect market conditions.
10  Q.  Okay.  So if you were stating it, you would say the
11      direct sales comparison approach, the cost approach
12      and the income approach?
13  A.  Yes, sir.
14  Q.  The -- I'm going to try to use your terminology, but
15      if I forget, I'll just make sure that I believe when I
16      say the market approach, I mean the direct sales
17      comparison approach?
18  A.  Understood.
19  Q.  I will try and use your words.  So the direct sales
20      comparison approach relies on available data regarding
21      the value of similarly situated properties; is that
22      correct?
23  A.  In part.
24  Q.  What else does it rely upon?
25  A.  The selling price and again the terms of sale.

11 (Pages 38 to 41)

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

# EXHIBIT 6.2

# Office of the Chief Financial Officer

**Revised Organizational Chart**

**DRAFT**
Version 4.0



```
                        ┌─────────────────────────┐
                        │  Chief Financial Officer │
   ┌────────────────┐   │                          │
   │ Administration │   │ Chief Deputy CFO / Finance│
   └────────────────┘   │        Director          │
                        └─────────────────────────┘

        ┌──────────────────────┐   ┌──────────────────────────┐
        │ Office of Grants     │   │ Office of Contracting &  │
        │ Management           │   │ Procurement              │
        │ Deputy CFO / OGM     │   │ Deputy CFO / Chief       │
        │ Director             │   │ Procurement Officer      │
        └──────────────────────┘   └──────────────────────────┘

        ┌──────────────────────┐   ┌──────────────────────────┐
        │ Office of the Assessor│  │      Agency CFOs         │
        │ Chief Assessor       │   │                          │
        └──────────────────────┘   └──────────────────────────┘
```

**Office of Budget** — Deputy CFO / Budget Director
- Budget Development Division
- ERP Transition / Implementation Division

**Office of the Treasury** — Deputy CFO / Treasurer
- Cash Management Division
- Tax & Revenue Division
  - Revenue Collection
  - Citizen Tax Help Center

**Office of the Controller** — Deputy CFO / Controller
- Accounting Division
  - Accounts Payable
- Risk Management Division
- Payroll Operations Division

**Office of Financial Planning & Analysis** — Deputy CFO / FP&A Director
- Debt Management Division

**CITY'S EXHIBIT 598**

As of August 28, 2014

City's Ex 598

# EXHIBIT 6.3



# COMPREHENSIVE
# ANNUAL FINANCIAL REPORT

## For the Fiscal Year Ended June 30, 2013







**Michael E. Duggan**, Mayor  •  **John Hill**, Chief Financial Officer

CITY OF **DETROIT, MICHIGAN**

**CITY'S EXHIBIT 15**

COA00728613

City's Ex  015

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTORY SECTION**
LETTER OF TRANSMITTAL — I-1
AUDITOR GENERAL'S LETTER — I-7
LIST OF CITY OF DETROIT PRINCIPAL OFFICIALS — I-10
CITY OF DETROIT ORGANIZATION CHART — I-13

**II. FINANCIAL SECTION**
INDEPENDENT AUDITOR'S REPORT — 2
MANAGEMENT'S DISCUSSION AND ANALYSIS (MD&A) (UNAUDITED) — 7
BASIC FINANCIAL STATEMENTS:
  A. GOVERNMENT-WIDE FINANCIAL STATEMENTS:
    Statement of Net Position — 35
    Statement of Activities — 36
  B. FUND FINANCIAL STATEMENTS:
    Governmental Funds Financial Statements:
      Balance Sheet — 38
      Reconciliation of the Balance Sheet of Governmental Funds
        to the Statement of Net Position — 39
      Statement of Revenues, Expenditures, and Changes in Fund Balances — 40
      Reconciliation of the Statement of Revenues, Expenditures, and
        Changes in Fund Balances of Governmental Funds to the
        Statement of Activities — 41
    Enterprise Funds Financial Statements:
      Statement of Net Position — 43
      Statement of Revenues, Expenses, and Changes in Fund Net Position — 47
      Statement of Cash Flows — 49
    Fiduciary Funds Financial Statements:
      Statement of Fiduciary Net Position — 53
      Statement of Changes in Fiduciary Net Position — 54
    Discretely Presented Component Units Financial Statements:
      Combining Statement of Net Position — 55
      Combining Statement of Activities — 57
  C. NOTES TO BASIC FINANCIAL STATEMENTS — 61

REQUIRED SUPPLEMENTARY INFORMATION:
  A. BUDGET TO ACTUAL COMPARISON - GENERAL FUND:
    Notes to Budget to Actual Comparison — 140
    Schedule of Revenues, Expenditures, and Changes in Fund Balance - Budget and Actual -
      General Fund — 141
  B. EMPLOYER CONTRIBUTIONS AND FUNDING PROGRESS:
    Schedules of Funding Progress — 146
    Schedules of Employer Contributions — 147

i

DOA00728617

City's Ex  015-005

# TABLE OF CONTENTS

                                                                                    **Page**

OTHER SUPPLEMENTARY INFORMATION SECTION:
  A.  COMBINING NON-MAJOR GOVERNMENTAL FUNDS FINANCIAL STATEMENTS:
     Other Governmental Funds:
       Combining Balance Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152
       Combining Statement of Revenues, Expenditures, and Changes in Fund Balances . . . . 153
     Special Revenue Funds:
       Combining Balance Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 154
       Combining Statement of Revenues, Expenditures, and Changes in Fund Balances . . . . 156
     Street Fund:
       Combining Balance Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 158
       Combining Statement of Revenues, Expenditures, and Changes in Fund Balances . . . . 159
     Permanent Funds:
       Combining Balance Sheet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 160
       Combining Statement of Revenues, Expenditures, and Changes in Fund Balances . . . . 161
  B.  OTHER GOVERNMENTAL FUNDS BUDGETARY COMPARISON SCHEDULES:
     Special Revenue Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162
     Debt Service Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 174
     Capital Projects Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175
  C.  FIDUCIARY FUNDS:
     Combining Statement of Fiduciary Net Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 178
     Combining Statement of Changes in Fiduciary Net Position . . . . . . . . . . . . . . . . . . . . . . 180
  D.  AGENCY FUNDS:
     Combining Statement of Assets and Liabilities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 181
     Combining Statement of Changes in Assets and Liabilities . . . . . . . . . . . . . . . . . . . . . . . 182

**III.  STATISTICAL SECTION (UNAUDITED)**
  Description of Statistical Section . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 185
  Schedule 1 - Net Position by Component, Last Ten Fiscal Years . . . . . . . . . . . . . . . . . . . 186
  Schedule 2 - Changes in Net Position, Last Ten Fiscal Years . . . . . . . . . . . . . . . . . . . . . . 188
  Schedule 3 - Fund Balances, Governmental Funds, Last Ten Fiscal Years . . . . . . . . . . . . 192
  Schedule 4 - Changes in Fund Balances of Governmental Funds, Last Ten Fiscal Years . . 194
  Schedule 5 - Assessed and Actual Value of Taxable Property, Last Ten Fiscal Years . . . . 196
  Schedule 6 - Direct and Overlapping Property Tax Rates, Last Ten Fiscal Years . . . . . . . 198
  Schedule 7 - Principal Property Tax Payers, Current Year and Nine Years Ago . . . . . . . . 200
  Schedule 8 - Property Tax Levies and Collections, Last Ten Fiscal Years . . . . . . . . . . . . . 202
  Schedule 9 - Ratios of Outstanding Debt by Type, Last Ten Fiscal Years . . . . . . . . . . . . . 204
  Schedule 10 - Ratios of General Bonded Debt Outstanding, Last Ten Fiscal Years . . . . . . 206
  Schedule 11 - Direct and Overlapping Governmental Activities Debt as of June 30, 2013 . . 209
  Schedule 12 - Legal Debt Margin Information, Last Ten Fiscal Years . . . . . . . . . . . . . . . . 210
  Schedule 13 - Pledged Revenue Coverage, Last Ten Fiscal Years . . . . . . . . . . . . . . . . . . 213
  Schedule 14 - Demographic and Economic Statistics, Last Ten Calendar Years . . . . . . . . 215
  Schedule 15 - Principal Employers, Current Year and Ten Years Ago . . . . . . . . . . . . . . . . 216
  Schedule 16 - Full-time Equivalent City Government Employees by Function/Program, Last Ten Fiscal Years . 219
  Schedule 17 - Miscellaneous Operating Indicators by Function/Program, Last Ten Fiscal Years . . 220

PHOTO CREDITS
  All photographs courtesy of City of Detroit - Communications and Creative Services Department

COA00728618

City's Ex 015-006

# PRINCIPAL OFFICIALS OF THE
# CITY OF DETROIT, MICHIGAN

## Executive
**(Elected)**



**Mayor**
MICHAEL E. DUGGAN

## Legislative
**(Elected)**

### City Council



BRENDA JONES
President



GEORGE CUSHINGBERRY
President Pro Tem



SAUNTEEL JENKINS



SCOTT BENSON



RAQUEL
CASTANEDA-LOPEZ



GABE LELAND



MARY SHEFFIELD



ANDRE SPIVEY



JAMES TATE

I-10

POA00728628
City's Ex  015-016

# PRINCIPAL OFFICIALS OF THE
# CITY OF DETROIT, MICHIGAN

## Legislative
### (Elected)



**City Clerk**
JANICE WINFREY

## Other Executive Officials
### (Appointed)



JOHN HILL
**Chief Financial Officer**



JOHN NAGLICK
**Finance Director**

I-11

GA00728629
City's Ex  015-017

# Organization of City of Detroit Agencies



PG00728631

City's Ex  015-019

# EXHIBIT 6.4

MAYOR MICHAEL DUGGAN

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

In re                    ) Chapter 9

CITY OF DETROIT, MICHIGAN,      ) Case No. 13-53846

Debtor.      ) Hon. Steven W. Rhodes

_____

The Videotaped Deposition of MAYOR MICHAEL DUGGAN,

Taken at 2 Woodward Avenue, Suite 500,

Detroit, Michigan,

Commencing at 10:00 a.m.,

Friday, August 1, 2014,

Before Rebecca L. Russo, CSR-2759, RMR, CRR.

1        MAYOR MICHAEL DUGGAN
2   MELVIN BUTCH HOLLOWELL, ESQ.
3   City of Detroit
4   Law Department
5   Coleman A. Young Municipal Center
6   2 Woodward Avenue
7   Suite 500
8   Detroit, Michigan 48226
9       Appearing on behalf of the City of Detroit.
10
11
12
13   DANIEL MORRIS, ESQ.
14   Dentons US LLP
15   1301 K Street, N.W.
16   Suite 600, East Tower
17   Washington, D.C. 20005
18       Appearing on behalf of the Retiree Committee.
19
20
21
22
23
24
25

1        MAYOR MICHAEL DUGGAN
2   APPEARANCES:
3
4   WILLIAM E. ARNAULT, ESQ.
5   Kirkland & Ellis LLP
6   300 North LaSalle
7   Chicago, Illinois 60654
8       Appearing on behalf of Syncora Guarantee Inc. and
9       Syncora Capital Assurance Inc.
10
11
12
13   THOMAS F. CULLEN, JR., ESQ.
14   DAN T. MOSS, ESQ.
15   Jones Day
16   51 Louisiana Avenue, N.W.
17   Washington, D.C. 20001
18       Appearing on behalf of the City of Detroit.
19
20
21
22
23
24
25

1        MAYOR MICHAEL DUGGAN
2   COURTNEY ROGERS, ESQ. (Via Telephone)
3   Waller Lansden Dortch & Davis LLP
4   511 Union Street
5   Suite 2700
6   Nashville, Tennessee 37219
7       Appearing on behalf of U.S. Bank National Association,
8       as Trustee for the Water and Sewer Bonds.
9
10
11
12   CHRISTOPHER A. GROSMAN, ESQ. (Via Telephone)
13   Carson Fischer, P.L.C.
14   4111 Andover Road West - Second Floor
15   Bloomfield Hills, Michigan 48302
16       Appearing on behalf of Oakland County.
17
18
19
20
21
22
23
24
25

BY MR. ARNAULT:

1. Q. Well, let me put it another way. The plan of
adjustment doesn't provide you or the city council
with any expanded powers or authority that the mayor
or the city council did not have prior to Chapter 9?

A. We're going to have to see -- I don't know if the plan
of adjustment does. We'll have to see what comes out
in post emergency management orders and those kinds of
things.

Q. Okay. But right now you don't know of any powers or
authority that expand beyond what you had prior to
Chapter 9?

A. None occur to me.

Q. Are there any additional tools that are necessary for
you to run the city that you don't currently have?

A. Any additional tools to run the city. I'd have to
think about that.

Q. Okay. None that come to mind?

A. There might well be, but ...

Q. Not right now?

A. Yeah. I mean, it's something that we're going to have
to discuss as we work toward the whole transition
agreement, which we really haven't gotten focused on
yet.

Q. So we've discussed a little bit about the staffing and

employment problems that the City of Detroit has
experienced, right?

A. Right.

Q. And would it be fair to say that the Human Resources
Department at the city would be the department
directly responsible for determining the staffing
needs of the city's various departments?

A. They don't determine the staffing needs, but their job
is to fill them.

Q. Who determines the staffing needs?

A. The individual departments and the budget process.

Q. And Michael Hall's currently the head of the human
resources department?

A. Yes.

Q. And would it be fair to say that Mr. Hall would be the
person who's most knowledgeable about filling the
city's overall staffing needs?

A. I wouldn't necessarily say that.

Q. Okay. Would he be the person who's most knowledgeable
about what the city needs to do to fill the open
positions?

A. He's relatively new. I think there are probably
people in that department probably more knowledgeable
than that.

Q. Who do you think that would be?

A. You know, some of the career staff people there. So
he's relatively new and he's interim, so if, if your
question is, is he the most knowledgeable, I'm quite
certain he's not.

Q. And do you know what he's done since he's come into
office to, essentially, bring himself up to speed?

A. You know, he's done a good job of getting firefighters
hired.

Q. But do you know what he's done to get himself up to
speed --

A. No.

Q. -- with retention?

A. No.

Q. Since you've been elected mayor, has attrition been a
problem with the City of Detroit?

A. Yes.

Q. And has it been citywide across the departments or
limited to --

A. More the police department than anyplace else.

Q. What do you think is driving the attrition problem
with the DPD?

A. Certainly the, the uncertainty on where everything's
going is a problem. The fact that in a number of
cases they could make wages higher in other places is
a problem. For a while there, the former chief had

them on twelve-hour shifts, which was burning people
out.

So I think there are probably a number of
factors that go into it.

Q. Okay. So you said the -- driving the attrition
problem would be just uncertainty where everything is
going, and by that you refer to just the bankruptcy,
in general?

A. Yeah, I would say what's going to happen with their
pay. What's going to happen with their pension.
What's going to happen with their health care. What's
going to happen with their shifts. There's been a lot
of uncertainty.

Q. Okay. And then the uncertainty that's created
surrounding the bankruptcy relates to the fact that
they may not know what's going to happen to their
wages, their pensions, or their benefits, is that
right?

A. I think that's a significant factor.

Q. Are there any other factors that are driving the
attrition problem?

A. You know, you'd have to ask the police officers.

Q. Police officers would be the ones who would know best?

A. They would know why they're leaving.

Q. Okay. Have you taken any steps to remedy the