UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------X
In re                                        : Chapter 9
                                             :
CITY OF DETROIT, MICHIGAN,                   : Case No. 13-53846
                                             :
           Debtor.                           : Hon. Steven W. Rhodes
                                             :
---------------------------------------------------------X

# DECLARATION OF MARK JACOBS

I, Mark Jacobs, , declare under penalty of perjury as follows:

1. I am an adult and otherwise competent to testify to the facts stated below. If called as a witness, I can testify to the following facts from my own personal knowledge. I make this Declaration based upon my own personal knowledge and my review of records kept in the ordinary course of business.

2. I am an attorney and a partner at the firm of Dykema Gossett PLLC in Detroit, Michigan.

3. Since 1989, I have represented the Detroit Water and Sewerage Department ("DWSD") on numerous occasions, including negotiation and completion of the May 19, 2009 Settlement Agreement ("Global Settlement Agreement") (attached as Exhibit A), negotiation and completion of the sale of certain DWSD assets to the Oakland Macomb Interceptor Drain Drainage District ("OMIDDD") (attached as Exhibit B) ("OMIDDD Acquisition Agreement"), and negotiation and September 2, 2010 completion of the sale of certain DWSD assets to the Macomb Interceptor Drain Drainage District ("MIDDD") (attached as Exhibit C) ("MIDDD Acquisition Agreement").

4. There was a major collapse of the Macomb Interceptor System ("Macomb Interceptor") on 15 Mile at or around Hayes in August of 2004, creating a massive sinkhole and necessitating immediate and emergency repairs due to the risk to the public safety and well-being ("2004-2005 Sinkhole Repairs"). These repairs began immediately and were completed in 2005.

5. The Macomb Interceptor and related appurtenances were some of the only sewer assets owned by the City of Detroit that were outside of the City's border. The Macomb Interceptor was also the only central trunk line which brought all sewer flow from Macomb County into the DWSD system. Both Oakland and Macomb counties had a variety of disputes

2

with DWSD and vice versa, ultimately culminating in the Global Settlement Agreement resolving many disputes for financial consideration. The Global Settlement Agreement was intended to settle all outstanding disputes between DWSD and Oakland and Macomb Counties and to codify an agreement to create the OMIDDD and MIDDD with the express intent of finalizing the sale of certain DWSD assets to each entity respectively.

6. The underlying premise of the OMIDDD Acquisition Agreement was that OMIDDD would purchase Oakland-only portions of the system and portions of the systems serving both Oakland and Macomb counties by paying the outstanding pro-rated principal as of the Closing Date on any bonded debt for which a portion of the debt service is allocated to certain facilities("Oakland System Debt"), less various amounts negotiated by the parties.

7. My recollection is that the OMIDDD Acquisition Agreement was initially drafted by counsel for OMIDDD, Craig Hupp, a Bodman attorney. The team negotiating on behalf of OMIDDD included representatives from Macomb County, chiefly Mr. William Misterovich. Many of the provisions in the OMIDDD Acquisition Agreement were proposed by OMIDDD through Mr. Hupp and negotiated by all the parties over a significant period of time through arms-length discussions. The value of the Oakland System Debt and negotiated concessions to it were similarly negotiated by all parties over a significant period of time through arms-length discussions.

8. After execution of the OMIDDD Acquisition Agreement, the same parties (including Mr. Misterovich, but not including Oakland County representatives) began negotiating transfer of Macomb-only assets to the MIDDD through the MIDDD Acquisition Agreement.

9. Similar to the OMIDDD Acquisition Agreement, the underlying premise of the MIDDD Acquisition Agreement was that MIDDD would purchase Macomb-only portions of the system by paying the outstanding pro-rated principal as of the Closing Date on any bonded debt for which a portion of the debt service is allocated to certain facilities ("Macomb System Debt"), less various amounts negotiated by the parties. This agreement was first informally reached between Director of DWSD Victor Mercado and Macomb County Public Works Commissioner Anthony Marrocco around 2006.

10. The MIDDD Acquisition Agreement used, as a baseline, the OMIDDD Acquisition Agreement, which had already been thoroughly negotiated by the same parties through lengthy arms-length negotiations. The primary changes to the MIDDD Acquisition Agreement were in Schedule 3.8, which outlined Macomb System Debt, less various amounts negotiated by the parties that are outlined therein. Schedule 3.8 was also negotiated over a lengthy period of time through arms-length negotiations.

11. At the time of the agreement between Director Mercado and Commissioner Marrocco, DWSD estimated that the Macomb System Debt would be over $116 million at the time the sale would conclude. The final Macomb System Debt amount in Schedule 3.8 of the Macomb Acquisition Agreement – after extensive negotiation and review by MIDDD – was less than $90 million.

12. To my knowledge, I was present at or copied on most or all communications between DWSD and MIDDD regarding the amount of Macomb System Debt. At no point did anyone from MIDDD ever, in any respect, indicate or suggest that any portion of the 2004-2005 Sinkhole Repair Costs reflected in Schedule 3.8 (referred to on that schedule as "2004 Repairs") of the MIDDD Acquisition Agreement was inaccurate, fraudulent, excessive, or question it in

4

any way whatsoever. I first learned that MIDD intended to make a claim such as the claim asserted in the MIDDD Federal District Court action in front of Judge Cleland when Mr. Hupp so advised me shortly before that action was filed.

13. MIDDD had the ability, over the many years of negotiations of the OMIDDD Acquisition Agreement and MIDDD Acquisition Agreement, to undertake due diligence necessary to satisfy itself regarding the underlying transaction.

14. As far as I knew when the the MIDDD Acquisition Agreement was negotiated and entered into, the Macomb System Debt, including the charges for the 2004-2005 Sinkhole Repair, was a legitimate and not excessive amount that was arrived at after extensive negotiation and concession by both DWSD and MIDDD.

15. On September 2, 2010, MIDDD and DWSD also signed the Settlement and Release Agreement attached as Exhibit D to this Declaration, which agreement was part of the closing documents associated with the Macomb Acquisition Agreement. Except as specifically provided therein, this Settlement and Release Agreement was intended to resolve and release all claims between the parties that related in any way whatsoever to the Macomb Interceptor, any items in the Macomb Acquisition Agreement, or any disputes between DWSD, Macomb County or MIDDD.

16. I was never interviewed by the Federal Bureau of Investigations or the United States Attorney's Office. I was never asked to testify in front of the Grand Jury.

17. I do not recall anyone mentioning excessive charges for the 2004-2005 Sinkhole Repairs to me at any time before the December 2010 First Superseding Indictment in the *Kilpatrick* criminal investigations. In fact, at no time until the date the First Superseding Indictment in the *Kilpatrick* case was released, was I aware that there were any claims that are or

were reasonably expected to become the subject of litigation affecting the Macomb System, as defined in the Macomb Acquisition Agreement, or the transactions contemplated by the Macomb Acquisition Agreement.

I declare under penalty of perjury that the foregoing is true and correct based on my own personal knowledge and my review of records kept in the ordinary course of business this fourteenth day of July, 2014.

Mark Jacobs

22633432.2\022765-00202