UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-------------------------------------------------------x
                      :
In re                   : Chapter 9
                      :
CITY OF DETROIT, MICHIGAN,  : Case No. 13-53846
                      :
              Debtor.  : Hon. Steven W. Rhodes
                      :
-------------------------------------------------------x

**DEBTOR'S MOTION TO RECONSIDER PETITIONER ROBERT DAVIS'
AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S
EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY
OR, IN THE ALTERNATIVE, FOR THIS COURT TO ASSUME
JURISDICTION OVER THE OPEN MEETINGS ACT DISPUTE**

The City of Detroit ("Debtor" or "the City") files this motion asking the

Court to reconsider its Order Granting Petitioner Robert Davis' and Citizens

United Against Corrupt Government's Emergency Motion for Relief from the

Automatic Stay ("Order") (Docket No. 7754). Alternatively, in the event the Court

denies this motion, the City has contemporaneously filed a notice of removal to

enable the underlying Open Meetings Act dispute to proceed before this Court.

I.    **Introduction and Background**

On September 30, 2014, this Court issued an order lifting the automatic stay

and allowing Robert Davis and Citizens United Against Corrupt Government

("Petitioners") to file an Open Meetings Act ("OMA") lawsuit in Wayne County

Circuit Court. Since the issuance of this Court's Order, several events justifying

reconsideration or assumption of jurisdiction by this Court have occurred:

**A.** **Transcripts of the closed session meetings make it clear that the discussions were properly the subject of a closed meeting, and that disclosure would damage the City, these bankruptcy proceedings, and would violate this Court's Mediation Orders.**

Counsel for the City has now had an opportunity to review the transcripts of

the closed session meetings held on September 23, 24 and 25, 2014. Those

sessions involved discussion of very sensitive issues relating directly to the

bankruptcy litigation. That point is underscored by the fact that the Hon. Gerald E.

Rosen and Eugene Driker attended the first of the sessions to discuss bankruptcy-

related issues, and their comments framed much of the ensuing discussions.

The merits of the underlying dispute are not before the Court in this motion.

However, the City submits that the closed sessions were entirely proper. The Open

Meetings Act allows closed sessions to discuss pending litigation, or attorney-

client privileged materials, or materials exempt from disclosure under state or

federal statutes. MCL §15.268(e)(h). Upon request of the Court, the City will

provide the transcripts for *in camera* review so the Court can confirm the propriety

of closing these sessions.

In the OMA lawsuit, Citizens United seeks disclosure of the transcripts of

the closed sessions. As discussed below, with the consent of the City this Court

has jurisdiction to hear the underlying OMA dispute. The City respectfully

submits that because the closed session discussions are inextricably intertwined with the bankruptcy litigation, and disclosure risks irreparable harm to the bankruptcy proceedings, this Court should grant reconsideration or, in the alternative, exercise its jurisdiction to hear this dispute. The City is justly apprehensive that a Wayne County Circuit Court Judge, who is unfamiliar with the bankruptcy litigation, may not appreciate the harm that will arise from disclosure of the transcript. The City's apprehension has been exacerbated both by counsel's review of the transcripts and events following, presumably in reliance on, entry of the Court's Order.

**B.** **The Wayne County Circuit Court issued an *ex parte* temporary restraining order violating this Court's Order, the Michigan Court Rules, and the Circuit Court's standing order.**

The day after entry of the Order, Citizens United filed its complaint in Wayne County Circuit Court and procured an *ex-parte* temporary restraining order ("TRO") (Ex. 1).[1] The *ex-parte* TRO summarily enjoins the Detroit City Council "from meeting and/or convening a closed session for the purpose of discussing the role of Kevyn Orr as the Emergency Manager for the City of Detroit *or for the purpose to discuss any orders, resolutions, or statutes pertaining to removing the*

---

[1] Exhibit 1 contains the Wayne County's Circuit Court's *ex parte* TRO, together with Citizens United's supporting motion (including Davis' affidavit), emergency motion for evidentiary hearing and order to show cause, and verified complaint (also supported by Davis' affidavit).

13-53846-tjt   Doc 7900   Filed 10/09/14   Entered 10/09/14 14:02:12   Page 3 of 87

*City of Detroit from Receivership under Public Act 436*" (emphasis added).  This ex *parte* order was procured and issued in violation of this Court's ruling, in violation of the Michigan Court Rules, and in violation of the Wayne County Circuit Court's standing order regarding Robert Davis.  No injunctive relief, much less an *ex parte* TRO, is appropriate at this time.  As recognized by this Court on September 29, "There's no more imminent or threatened violation of the Open Meetings Act at this point."  (Transcript at p. 6, attached as Exhibit 2).

This Court's Order allowed Petitioners to file an action only to seek the relief "specifically identified in the Emergency Motion for the Detroit City Council's alleged violations of the Open Meetings Act."  Nothing in this Court's Order allowed Petitioners to procure a temporary restraining order regarding future meetings; the meetings regarding the duration of the appointment of the Emergency Manager were all concluded by September 25, 2014, when the City Council passed its resolution.  Nothing in this Court's Order allowed Petitioners to seek or procure, *ex parte,* broad and open-ended injunctive relief regarding any future meetings of the Detroit City Council that may implicate or facilitate the smooth transition of power to City officials under Act 436.

Notwithstanding the above, on October 1, 2014, the Wayne County Circuit Court entered *ex parte* an order prohibiting City Council from going into closed session for any purpose "pertaining to removing the City of Detroit from

4

Receivership under Public Act 436" – *i.e.,* from going into closed session to discuss this Court's rulings relating to this bankruptcy case.

Petitioners also flouted the Michigan Court Rules in procuring an *ex parte* TRO. MCR 3.310(B) provides in relevant part:

> (B) Temporary Restraining Orders.
>
>> (1) A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if
>>
>>> (a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued;
>>>
>>> (b) the applicant's attorney certifies to the court in writing the efforts, if any, that have been made to give the notice and the reasons supporting the claim that notice should not be required;
>>
>> * * *
>>
>> (2) A temporary restraining order granted without notice must:
>>
>> * * *
>>> (b) describe the injury and state why it is irreparable and why the order was granted without notice . . . .

Citizens United's counsel obviously was fully aware of the identity of the City's counsel, having been in Court with them only days before. And the City's law department is in the very same building as the Wayne County Circuit Court. Nevertheless, Citizens United gave no notice to any of the City's counsel of presentment of the order. Further, given that the meetings at issue concluded on

5

September 25, 2014, there was no immediate and irreparable harm remotely justifying *ex parte* presentation of the order.

In addition, Robert Davis violated a standing order of the Circuit Court. In November 2010, the Circuit Court entered an Order requiring Robert Davis to post a $1,000 bond before filing any action as plaintiff in that Court (Ex. 3). That injunctive order, under settled law, extends to any "persons in active concert or participation with [Davis] who receives actual notice of the order ..." MCR 3.310(C)(4). The purported plaintiff here, Citizens United, is an entity created by Robert Davis (Ex. 4). Davis, as Director, filed the sole affidavit allegedly supporting the complaint and emergency motion (Ex. A to Ex. 1, "Affidavit of Robert Davis, Director of Citizens United Against Corrupt Government)." Davis' use of his alter ego to file the Wayne Circuit action without posting the required bond flouts the Circuit Court's order.[2]

### C. Harm to the City is further evidenced by Petitioners' requests for discovery and an evidentiary hearing.

This Court's Order prohibited Citizens United from deposing the Emergency Manager or the Mayor except upon prior order of this Court. Nevertheless,

---

[2] In considering the *bona fides* and intentions of Mr. Davis, the Court may be aware that he very recently pled guilty to embezzling some $200,000 from the Highland Park School District (Ex. 5). The City raises this fact reluctantly but submits it is relevant where Mr. Davis wraps himself in the banner of an organization whose stated purpose is "eliminating unlawful actions by all governmental officials" (Ex. 4, Article II).

Petitioners' "emergency motion for evidentiary hearing" seeks discovery and an evidentiary hearing "for the purpose of taking testimony of the Defendant City Council and **other officials** …" (Ex. 1, ¶¶3-10). Neither discovery nor an evidentiary hearing is appropriate; at most, *in camera* review of the transcript is necessary to confirm the City's privileged and confidential conduct.

For these reasons, and those discussed below, the City implores the Court to grant reconsideration or exercise its jurisdiction to hear this dispute.

## II. Argument

### A. Standard of Review

"Without restricting the discretion of the Court," reconsideration generally requires that the movant "demonstrate a palpable defect by which the court and the parties have been misled [and] also show that a different disposition of the case must result from a correction thereof." E.D. Mich. Local Bankr. R. 9024-1(a)(3). "To establish a 'palpable defect,' the moving party generally must point to '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *In re Collins & Aikman Corp.*, 417 B.R. 449, 454 (E.D. Mich. 2009), quoting *Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479, 496 (6th Cir. 2006). Here, Petitioners misled this Court regarding the scope of Petitioners' civil action, and the

7

proceedings in the Circuit Court demonstrate manifest injustice supporting the Court's exercise of its discretion to grant reconsideration.

As this Court well-knows, the determination of whether to grant relief from the automatic stay "resides within the sound discretion of the Bankruptcy Court." *Sandweiss Law Center, P.C. v. Kozlowski (In re Bunting)*, No. 12-10472, 2013 WL 153309, at *17 (E.D. Mich. Jan. 15, 2013), quoting *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002). In determining whether cause exists, "the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Plastech,* 382 B.R. at 106, quoting *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995). In evaluating the hardship on a debtor, courts repeatedly stay actions that will interfere with the debtor's ability to reorganize and confirm a plan. *See, e.g., Lomas Financial Corporation v. The North Trust Company (In re Lomas Financial Corporation)*, 117 B.R. 64 (S.D. N.Y. 1990); *In re MCSi, Inc. Securities Litigation*, 371 B.R. 270 (S.D. Ohio 2004).

The transcripts of the closed sessions, together with (i) Petitioners' failure to post a bond before filing the Circuit Court complaint, (ii) Petitioners' improper requests for an evidentiary hearing and discovery, and (iii) Petitioners' improper procuring of, and the Circuit Court's improper issuance of, an *ex parte* TRO, all confirm that Petitioners should not be allowed to pursue their Circuit Court lawsuit

now.

**B.    In the alternative, this Court should exercise its jurisdiction to hear the Open Meetings Act dispute upon removal.**

Pursuant to Federal Rule of Bankruptcy Procedure 9027, the City will file a notice of removal contemporaneously with the filing of this motion.  The city thus requests that the Court hear the dispute if it does not stay the underlying litigation.

With the consent of the City, this Court has jurisdiction to decide Petitioners' OMA case on the merits.  *See, Pappas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC),* 728 F.3d 567, 577 (6th Cir. 2013) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate").

Release of confidential discussions regarding the status of the Emergency Manager and other bankruptcy-related issues goes to the core of this bankruptcy case.  This Court is, of course, fully capable of applying the governing principles of the Open Meetings Act to the facts of this case.  But, more importantly, this Court is uniquely positioned to review the transcripts and appreciate the significance of the discussions to the pending bankruptcy litigation.

**III.    Conclusion**

For the reasons stated above, the City respectfully requests:

1. That the Court reconsider its September 30, 2014 Order and, upon reconsideration, deny Petitioners' motion, direct that the TRO be dissolved and enjoin the Circuit Court proceeding; or, in the alternative, in the event the Court denies this motion,

2. Upon removal of the lawsuit, accept jurisdiction of the underlying Open Meetings Act dispute.

Respectfully submitted,

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com


Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan  48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

Dated:  October 9, 2014

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 9, 2014, he filed **DEBTOR'S MOTION TO RECONSIDER PETITIONER ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR THIS COURT TO ASSUME JURISDICTION OVER THE OPEN MEETINGS ACT DISPUTE** using the court's CM/ECF system which will send notice of the filing to all registered participants in this matter. Also on this date, the document was served via electronic mail upon counsel as listed below:

Andrew A. Paterson, Esq.
aap43@outlook.com

Dated: October 9, 2014

By: /s/Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 963-6420
    Facsimile: (313) 496-7500
    swansonm@millercanfield.com

STATE OF MICHIGAN
IN THE 3RD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,
**PLAINTIFF,**

-v-

DETROIT CITY COUNCIL,
**DEFENDANT.**

Case No. 14-      -AW
Hon.

14-012633-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 12:08:49 PM
CATHY M. GARRETT

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

_____/

## Emergency Motion for Evidentiary Hearing and Order To Show Cause

PLAINTIFF, **CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,** by and

through their attorney, ANDREW A. PATERSON, for their Emergency Motion for Evidentiary

Hearing and Order To Show Cause (**"Emergency Motion"**), states and alleges the following:

1. On September 30, 2014, U.S. Federal Bankruptcy Judge Steven Rhodes ("Judge

   Rhodes") entered an order granting Plaintiff's Emergency Motion for Relief from the

   Automatic Stay to file this instant action. **(See Judge Rhodes' September 30, 2014**

   **Order attached hereto as Exhibit A).**

2. This Open Meetings Act ("OMA") case, as Judge Rhodes stated, is of great public

   significance considering it pertains to the Defendant Detroit City Council's ("Defendant

   City Council") decision to hold closed sessions over three (3) days (September 23-25,

**Page 1 of 4**

2014) to discuss the future of Kevyn Orr to continue as the Emergency Manager for the City of Detroit as permitted under § 9(6)(c) of Public Act 436 of 2012.

3. Plaintiff desires to conduct discovery in this matter in an expedited fashion and in a manner that does not disturb members of the Defendant City Council and other officials from their important daily duties.

4. Accordingly, in order to accommodate the busy schedules of the members of the Defendant City Council, Plaintiff believes it is best that an evidentiary hearing be held by the Court for the purpose of taking the testimony of the members of the Defendant City Council and other officials regarding the allegations pled in Plaintiff's OMA complaint. Their testimony is necessary in order to develop and prove certain facts in this case.

5. The purpose of an evidentiary hearing is to resolve a disputed issue of fact. *Swickard v Wayne Co Med Examiner*, 184 Mich App 662, 668; 459 NW2d 92 (1990).

6. It is within the sound discretion of this Court to order that an evidentiary hearing be held in order to settle the disputed issues of fact that exist in this case. Generally, a trial court's decision regarding whether to hold an evidentiary hearing is reviewed for an abuse of discretion. *Kernen v Homestead Dev Co.*, 252 Mich App 689, 691; 653 NW2d 634 (2002).

7. "In deciding whether or not a trial court should hold an evidentiary hearing, the court should first determine whether there exist contested factual questions that must be resolved before a court can make an informal decision on whether or not to grant the motion." *Bielawski v Bielawski*, 137 Mich App 587, 592-293; 358 NW2d 383 (1984).

8. As noted in Plaintiff's complaint, from the comments attributed to members of the Defendant City Council, the Mayor, and the state's Emergency Manager for the City of

Detroit, Kevyn Orr, in various published media reports, it is apparent and indisputable that a "deal" and/or "settlement" over the devolution of power was "negotiated" and "reached" by the Defendant City Council and Kevyn Orr and the Mayor, during the repeated and lengthy closed sessions held by the Defendant City Council from September 23, 2014 through September 25, 2014. Thus making their "decision" a "*fait accompli*" in violation of the OMA. See, *Booth Newspapers Inc. v. University of Michigan Regents*, 444 Mich. 211 (1993); *People v Whitney*, 228 Mich App 230 (1998).

9. Accordingly, an evidentiary hearing is necessary in order for the contested factual questions to be resolved before this Court can make an informed decision as to the merits of this case. *Biewlawski, supra*.

10. In addition to ordering an evidentiary hearing, Plaintiff requests that the Court also enters an order to show cause for the Defendant City Council to show cause as to why an evidentiary hearing should not be held and further ordering that any and all documents, including emails, letters, faxes, as well as audio and video recordings, and transcripts regarding the closed sessions held by the Defendant City Council on September 23-25, 2014 are not to be destroyed or deleted. This will ensure that no evidence is destroyed before discovery commences.

## CONCLUSION/PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Honorable Court grants his motion for an evidentiary hearing and enters an order to show cause for the Defendant City Council to show cause as to why an evidentiary hearing should not be granted and further ordering the Defendant City Council to refrain and be enjoined from destroying, deleting any and all documents, including emails, letters, faxes, transcripts, and audio and video recordings pertaining to the Defendant City Council's closed sessions and Kevyn Orr's future as Emergency Manager.

Respectfully submitted,

/S/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

DATED: October 1, 2014

Ex A

# THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---------------------------------------------------------------x

In re:

**CITY OF DETROIT, MICHIGAN,**

       Debtor.

                         :

                         :

---------------------------------------------------------------x

**Chapter 9**

**Case No. 13-53846**

**Hon. Steven W. Rhodes**

14-012633-AW

FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 12:08:49 PM
CATHY M. GARRETT

## ORDER GRANTING PETITIONERS ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY

       This matter coming before the Court on: (a) Petitioners Robert Davis' and Citizens United Against Corrupt Government's ("Petitioners") Emergency Motion for Relief from the Automatic Stay ("Emergency Motion") (Docket No. 7667); and (b) Debtor's Combined Objection and Brief in Opposition to Petitioner Robert Davis' and Citizens United Against Corrupt Government's Emergency Motion for Relief from the Automatic Stay Objection ("Objection") (Docket No. 7714); the Court having reviewed and conducted a hearing on the Emergency Motion and the Objection; and the Court having determined that the legal and factual bases as set out in the Emergency Motion and the representations of the Petitioners at the hearing and in the Emergency Motion establish cause for the relief granted herein;

       **IT IS HEREBY ORDERED THAT:**

       A.  Petitioners' Emergency Motion is **GRANTED** to the extent set forth in this Order.

       B.  Petitioners shall be allowed to immediately file a civil action in the Wayne County Circuit Court against the Detroit City Council seeking only (1) the declaratory and injunctive relief specifically identified in the Emergency Motion for the Detroit City

Council's alleged violations of the Open Meetings Act and (2) an award of attorneys' fees and costs as may be provided for by the Open Meetings Act.

C. The Petitioners shall not seek to invalidate any action, decision, order or resolution arising from or relating to the closed sessions of the Detroit City Council on September 23, 24 or 25, 2014, including without limitation, the Detroit City Council's "Resolution Removing Kevyn D. Orr as Emergency Manager and Removing the City of Detroit from Receivership Under Act 436" as approved by the Detroit City Council on September 25, 2014, or any of the orders dated September 25, 2014, of the Emergency Manager of the City of Detroit, Kevyn D. Orr.

D. The Petitioners shall not depose, or seek to depose, the Emergency Manager of the City of Detroit, Kevyn D. Orr or the Mayor of the City of Detroit, Mike Duggan, without first obtaining an order from this Court authorizing Petitioners to seek such a deposition in the civil action.

E. The automatic stays of Bankruptcy Code §§362 and 922 otherwise remain in full force and effect except as expressly modified by this Order.

F. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

G. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Signed on September 30, 2014

/s/ Steven Rhodes
Steven Rhodes
United States Bankruptcy Judge

db

STATE OF MICHIGAN
IN THE 3RD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,
      **PLAINTIFF,**

                                     Case No. 14-012633-AW
                                     HON. ANNETTE J. BERRY

~v~

DETROIT CITY COUNCIL,
      **DEFENDANT.**

14-012633-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 3:37:55 PM
CATHY M. GARRETT

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

                                                               /

## PLAINTIFF'S *EX PARTE* MOTION FOR TEMPROARY RESTRAINING ORDER PURUSANT TO MCR 3.310(B)

      PLAINTIFF, **CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,** by and

through their attorney, ANDREW A. PATERSON, and for their Emergency *Ex Parte* Motion for

Temporary Restraining Order ("TRO") Against Defendant Detroit City Council, states the

following:

1.  Plaintiff hereby adopts and incorporates by reference each and every allegation contained

     in the attached Verified Complaint for Declaratory Judgment and Injunctive Relief, as if

     more specifically set forth herein word for word and paragraph by paragraph.

2.  On September 30, 2014, U.S. Federal Bankruptcy Judge Steven Rhodes ("Judge

     Rhodes") entered an order granting Plaintiff's Emergency Motion for Relief from the

     Automatic Stay to file this instant action.  **(See Judge Rhodes' September 30, 2014**

     **Order attached to Plaintiff's Verified Complaint as Exhibit C).**

3. This Open Meetings Act ("OMA") case, as Judge Rhodes acknowledged, is of great public significance considering it pertains to the Defendant Detroit City Council's ("Defendant City Council") decision to hold closed sessions over three (3) days (September 23-25, 2014) to discuss the future of Kevyn Orr to continue as the Emergency Manager for the City of Detroit as permitted under § 9(6)(c) of Public Act 436 of 2012.

4. As noted in Plaintiff's Verified Complaint, from the comments attributed to members of the Defendant City Council, the Mayor, and the state's Emergency Manager for the City of Detroit, Kevyn Orr, in various published media reports, it is apparent and indisputable that a "deal" and/or "settlement" over the devolution of power was "negotiated" and "reached" by the Defendant City Council and Kevyn Orr and the Mayor, during the repeated and lengthy closed sessions held by the Defendant City Council from September 23, 2014 through September 25, 2014. Thus making their "decision" a "*fait accompli*" in violation of the OMA. See, *Booth Newspapers Inc. v. University of Michigan Regents,* 444 Mich. 211 (1993); *People v Whitney,* 228 Mich App 230 (1998).

5. That there is an immediate need for this most Honorable Court to consider Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining Order to restrain Defendant Detroit City Council from meeting in closed sessions for the purpose of discussing Kevyn Orr's role and future as the Emergency Manager and the Defendant City Council's desire to remove itself from Receivership under Public Act 436 of 2012.

6. That it is Plaintiff's belief that the Defendant Detroit City Council will seek to continue to meet in "secret" and make "decisions" in "secret" this week, as early as Thursday, October 2, 2014, for the purpose of discussing Kevyn Orr's new role as the Emergency

Manager for the City of Detroit as outlined in the Defendant's Detroit City Council's September 25, 2014 resolution entitled "Resolution Removing Kevyn D. Orr as Emergency Manger and Removing City of Detroit from Receivership Under Act 436."

7. Plaintiff's Director, Robert Davis, desires to attend any and all meetings of the Defendant Detroit City Council, but has been denied access to said meetings and has been denied notice of said meetings. Moreover, Plaintiff has been denied minutes of the closed sessions held by the Defendant City Council on September 23-25, 2014, in which they "secretly" discussed and negotiated an agreement with Kevyn Orr to remain as the Emergency Manager where certain powers and privileges were given back to the Defendant Detroit City Council and the Mayor, Mike Duggan.

8. As noted in Plaintiff's Verified Complaint, Plaintiff seeks the Court's Declaration that the Defendant City Council violated the OMA by holding closed sessions from September 23 through September 25, 2014 for an impermissible purpose and for making a "decision" in said closed sessions; and that Defendant City Council be enjoined from further such violations of the OMA.

9. Plaintiff and other interested citizens of the City of Detroit will suffer irreparable harm if Defendant Detroit City Council is allowed to continue to meet in closed sessions to discuss the role of Kevyn Orr as the Emergency Manager. "Because there is real and imminent danger of irreparable injury when governmental bodies meet and act in secret, *Detroit News*, p 301, we enjoin defendant from any use of this procedure in the future." *Booth v University of Michigan Board of Regents*, 192 Mich App 574, 588 (1992).

10. That Plaintiff has provided the Court with a sworn affidavit attesting to the fact of how they will be irreparably harmed if the Court does not issue a TRO enjoining the

Defendant Detroit City Council from meeting in closed session to discuss the role of Kevyn Orr as the Emergency Financial Manager under Public Act 436 of 2012. (See **Plaintiff's Director's affidavit attached hereto as Exhibit A**).

11. More harm will be caused to Plaintiff and to members of the public if the Court does not enter an *Ex Parte* Temporary Restraining Order against the Defendant Detroit City Council, because the right to attend a public body's meetings, to receive its meeting minutes, and to address such public body at its meetings will be infringed upon by Defendant City Council's disregard of the provisions of the Open Meetings Act. *Booth v University of Michigan Board of Regents*, 192 Mich App 574, 588 (1992).

12. In addition to entering a TRO, Plaintiff requests that the Court also includes in its order that any and all documents, including emails, letters, faxes, as well as audio and video recordings, and transcripts regarding the closed sessions held by the Defendant City Council on September 23-25, 2014 are not to be destroyed or deleted. This will ensure that no evidence is destroyed before discovery commences.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in Plaintiff's Verified Complaint, Plaintiff prays that the Court grant their *Ex Parte* Motion for Temporary Restraining Order restraining and enjoining the Defendant Detroit City Council from meeting in closed sessions to discuss Kevyn Orr in his role as Emergency Manager or any orders or resolutions pertaining to removing the City of Detroit from Receivership under Public Act 436.

Respectfully submitted,

**/S/ ANDREW A. PATERSON**
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

DATED: October 1, 2014

14-012633-AW

FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 3:37:55 PM
CATHY M. GARRETT

# EXHIBIT A

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,

    **PLAINTIFF,**

                              Case No. 14-012633-AW

                              Hon. ANNETTE J. BERRY

  -v-

DETROIT CITY COUNCIL,

    **DEFENDANT.**

_____/

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

_____/

## AFFIDAVIT OF ROBERT DAVIS, DIRECTOR OF CITIZENS UNITED AGAINST CORRUPT GOVERNMENT

State of Michigan    )
                 )
County of Wayne   )

    NOW COMES ROBERT DAVIS, a natural person, being first duly sworn and deposed and under the penalty of perjury states the following:

1. That I am the Director of Citizens United Against Corrupt Government, a registered domestic nonprofit corporation of the State of Michigan.

2. That on Friday, September 26, 2014, in accordance with the Open Meetings Act ("OMA"), I, acting in my official capacity as Director of Plaintiff Citizens United, sent via email, a written request to all of the members of the Defendant City Council requesting to receive a copy of the closed session minutes from the closed sessions held on September 23, 2014 through September 25, 2014. As of October 1, 2014, I had not received a response from the Defendant City Council to my request.

3. That in my official capacity as Director of Citizens United Against Corrupt Government, I have approved the filing of this OMA lawsuit against the Defendant City Council.

4. That I personally reviewed many newspaper articles and video recordings of members of the Defendant City Council stating that they were close in "negotiations" and were close to a "settlement" with Kevyn Orr during the closed sessions that they held from September 23, 2014 through September 25, 2014.

5. That it is my belief upon reviewing the comments made by members of the Defendant City Council that the Defendant City Council violated some provisions of the OMA by holding impermissible closed sessions on September 23, 2014 through September 25, 2014.

6. As noted in Plaintiff's Verified Complaint, from the comments attributed to members of the Defendant City Council, the Mayor, and the state's Emergency Manager for the City of Detroit, Kevyn Orr, in various published media reports, it is apparent and indisputable that a "deal" and/or "settlement" over the devolution of power was "negotiated" and "reached" by the Defendant City Council and Kevyn Orr and the Mayor, during the repeated and lengthy closed sessions held by the Defendant City Council from September 23, 2014 through September 25, 2014. Thus making their "decision" a *"fait accompli"* in violation of the OMA. See, *Booth Newspapers Inc. v. University of Michigan Regents*, 444 Mich. 211 (1993); *People v Whitney*, 228 Mich. App 230 (1998).

7. That there is an immediate need for this most Honorable Court to consider Plaintiff's Emergency *Ex Parte* Motion for Temporary Restraining Order to restrain Defendant

Detroit City Council from meeting in closed sessions for the purpose of discussing Kevyn Orr's role and future as the Emergency Manager and the Defendant City Council's desire to remove itself from Receivership under Public Act 436 of 2012.

8. That it is Plaintiff's belief that the Defendant Detroit City Council will seek to continue to meet in "secret" and make "decisions" in "secret" this week, as early as Thursday, October 2, 2014, for the purpose of discussing Kevyn Orr's new role as the Emergency Manager for the City of Detroit as outlined in the Defendant's Detroit City Council's September 25, 2014 resolution entitled "Resolution Removing Kevyn D. Orr as Emergency Manger and Removing City of Detroit from Receivership Under Act 436."

9. That as Director of Plaintiff Citizens United, I desire to attend any and all meetings of the Defendant Detroit City Council, but has been denied access to said meetings and has been denied notice of said meetings. Moreover, I have been denied minutes of the closed sessions held by the Defendant City Council on September 23-25, 2014, in which they "secretly" discussed and negotiated an agreement with Kevyn Orr to remain as the Emergency Manager where certain powers and privileges were given back to the Defendant Detroit City Council and the Mayor, Mike Duggan.

10. As noted in Plaintiff's Verified Complaint, Plaintiff seeks the Court's Declaration that the Defendant City Council violated the OMA by holding closed sessions from September 23 through September 25, 2014 for an impermissible purpose and for making a "decision" in said closed sessions; and that Defendant City Council be enjoined from further such violations of the OMA.

11. I and other interested citizens of the City of Detroit will suffer irreparable harm if Defendant Detroit City Council is allowed to continue to meet in closed sessions to discuss the role of Kevyn Orr as the Emergency Manager. "Because there is real and imminent danger of irreparable injury when governmental bodies meet and act in secret, *Detroit News*, p 301, we enjoin defendant from any use of this procedure in the future." *Booth v University of Michigan Board of Regents*, 192 Mich App 574, 588 (1992).

12. More harm will be caused to myself, Plaintiff and to members of the public if the Court does not enter an *Ex Parte* Temporary Restraining Order against the Defendant Detroit City Council, because the right to attend a public body's meetings, to receive its meeting minutes, and to address such public body at its meetings will be infringed upon by Defendant City Council's disregard of the provisions of the Open Meetings Act. *Booth v University of Michigan Board of Regents*, 192 Mich App 574, 588 (1992).

13. I believe based upon my experience with the Defendant and other officials in the City that they will attempt to destroy evidence. Thus it is necessary for the Court to enter an order preventing and prohibiting the and their employees and agents from destroying, and/or altering any documents.

14. That all of the allegations and counts as pled and alleged in each of the numbered paragraphs in the attached verified complaint and motion are true to the best of my knowledge, information, and belief.

15. If called upon as a witness, I am competent to testify as to the facts stated herein.

FURTHER AFFIANT SAYETH NOT.



ROBERT DAVIS

Subscribed and sworn to before me

On this ___1st___ day of ~~September~~ October, 2014

NOTARY PUBLIC

My Commission Expires: 3/17/15

KAREN BROOKS
Notary Public - Michigan
Monroe County
My Commission Expires Mar 17, 2015
Acting in the County of _____

STATE OF MICHIGAN
IN THE 3RD JUDICIAL CIRCUIT COURT
FOR THE COUNTY OF WAYNE

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,
    **PLAINTIFF,**

-v-

DETROIT CITY COUNCIL,
    **DEFENDANT.**

Case No. 14-    -AW
Hon.

14-012633-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 12:08:49 PM
CATHY M. GARRETT

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

_____/

## Verified Complaint for Declaratory Judgment and Injunctive Relief

PLAINTIFF, **CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,** by and through their attorney, ANDREW A. PATERSON, for their Verified Complaint for Declaratory Judgment and Injunctive Relief, states and alleges the following:

### PARTIES/COMMON ALLEGATIONS

1.    Plaintiff, Citizens United Against Corrupt Government (**"Plaintiff Citizens United"** or **"Plaintiff"**), is a Michigan nonprofit corporation organized in 2012 for the purpose of promoting and ensuring corrupt-free and law-abiding civic government through social actions and court actions designed to eliminate unlawful illegal actions by all governmental officials, representatives and entities in all levels of government. Robert

Davis, serves as the Director of Plaintiff Citizens United and is a resident and qualified registered elector in the County of Wayne, State of Michigan ("Davis"). [1]

2. Davis, as Director of Plaintiff Citizens United, has authorized the filing of this action and has verified the allegations contained and alleged in this complaint. (See Davis' affidavit attached hereto as Exhibit A).

3. Defendant, Detroit City Council ("**Defendant City Council**"), in accordance with the City of Detroit's Home Rule City Charter, as amended, is the duly elected 9-member local legislative and governing body for the City of Detroit that is charged with and exercises governmental and proprietary authority.

4. The Defendant City Council is a "public body" as defined by MCL § 15.262(a) of the Open Meetings Act, Act 267 of 1976, being MCL 15.261, *et seq* ("OMA") and it is required to strictly adhere to and comply with the act's provisions. See, *People v Whitney*, 228 Mich App 230, 242 (1998) ("Unquestionably, the [city] council is a public body.").

5. An actual controversy exists between the parties named herein for a declaratory judgment to be issued by the Court as required under MCR 2.605(A)(1).

## I.    NATURE OF THE ACTION FOR OMA COUNTS

6. The Michigan Court of Appeals has determined, and held, that the OMA provides three separate and distinct types of relief. *Leemreis v Sherman Twp*, 273 Mich App 691, 699-700; 731 NW2d 787, 792 (2007) ("Reading the OMA as a whole, it appears that these

---

[1] On September 30, 2014, Federal Bankruptcy Judge Steven Rhodes ("Judge Rhodes") entered an order granting Plaintiff's Emergency Motion for Relief from the Automatic Stay to file the instant action. *See* Judge Rhodes' September 30, 2014 Order attached hereto as **Exhibit C**.

sections, and the distinct kinds of relief that they provide, stand alone.") The Court determined in *Leemreis* that:

> "[1] MCL 15.270(1) permits a person to 'commence a civil action in the circuit court to challenge the validity of a decision of a public body made in violation of this act.' Under this section, a person can seek invalidation of the decision and there is no provision for costs or attorney fees. [2] MCL 15.271(1) permits a person to 'commence a civil action to compel compliance or to enjoin further noncompliance with this act.' Under this section, a person who commences a 'civil action against the public body for injunctive relief to compel compliance or to enjoin further noncompliance with the act' and obtains 'relief in the action' shall recover costs and attorney fees for the action. [3] MCL 15.271(4). MCL 15.273 permits a person to bring a claim against a public official for an intentional violation of the OMA and, if the public official did intentionally violate the OMA, he or she is liable for actual and exemplary damages of not more than $500 total 'plus court costs and actual attorney fees to a person or group of persons bringing the action.' MCL 15.273(1). None of these sections refers to either of the other sections. Reading the OMA as a whole, it appears that these sections, and the distinct kinds of relief that they provide, stand alone." *Leemreis v Sherman Twp, supra*, at 699-700.

7.  Accordingly, Plaintiff has filed this action, for **Counts I-IV,** pursuant to MCL § 15.271 of the OMA alleging that Defendant City Council violated numerous sections of the OMA. In addition, for **Count V,** Plaintiff is seeking the Court's Order permanently enjoining Defendant City Council from further noncompliance with the OMA and/or compelling Defendant City Council's compliance with the OMA, all pursuant to MCL § 15.271(2) of the OMA.

8. Plaintiff's instant action is timely, as there is no statute of limitations period for a "person" to commence a civil action under MCL § 15.271 of the OMA. *Detroit News, Inc. v City of Detroit*, 185 Mich App 296, 301-302; 460 NW2d 312 (1990).

## II. JURISDICTION/STANDING

9. Jurisdiction is conferred upon this Court by MCL § 15.271 of the OMA.

10. The Wayne County Circuit Court is the proper venue for this action for MCL § 15.271(2) of the OMA states: *"An action for injunctive relief against a local public body shall be commenced in the circuit court, and venue is proper in any county in which the public body serves.* An action for an injunction against a state public body shall be commenced in the circuit court and venue is proper in any county in which the public body has its principal office, or in Ingham county." (Emphasis added.)

11. Defendant's principal office is located in the City of Detroit, County of Wayne.

12. Plaintiff Citizens United is a "person" who has standing to commence this action under MCL § 15.271(1) of the OMA, which reads: *"If a public body is not complying with this act,* the attorney general, prosecuting attorney of the county in which the public body serves, *or a person may commence a civil action to compel compliance or to enjoin further noncompliance with this act."* (Emphasis supplied.)

13. Plaintiff Citizens United, as a registered domestic nonprofit corporation, is a "person" as defined under the OMA and has standing to commence this action under MCL §15.271 of the OMA. See *Booth Newspapers, Inc. v Wyoming*, 168 Mich App 459, 474; 425 NW2d 695 (1988) ("We agree with the trial court that plaintiff is a person. Under the OMA, it is a person who may file suit to compel compliance with the act, MCL 15.271(1); MSA 4.1800(21)(1), and a successful person who may recover actual attorney

fees and court costs, MCL 15.271(4); MSA 4.1800(21)(4). As a general rule, the term

person is defined as including corporations unless such a construction would be

inconsistent with the manifest intent of the Legislature. See MCL 8.3; MSA 2.12 and

MCL 8.31; MSA 2.212(12).")

14.     Plaintiff Citizens United's standing under the OMA, is also recognized under Michigan

case law. See, *Lansing Schools Education Ass'n v Lansing School Dist Bd. of Ed.*, 487

Mich 349, 372; 792 NW 2d 686 (2010). In *Lansing Schools Ed Ass'n*, the Michigan

Supreme Court articulated Michigan standing law:

> [A] litigant has standing <u>whenever there is a legal cause of action</u>.
> Further, whenever a litigant meets the requirements of MCR 2.605, it is
> sufficient to establish standing to seek a declaratory judgment. Where a
> cause of action is not provided at law, then a court should, in its discretion,
> determine whether a litigant has standing. A litigant may have standing in
> this context if the litigant has a special injury or right, or substantial
> interest, that will be detrimentally affected in a manner different from the
> citizenry at large or <u>if the statutory scheme implies that the Legislature
> intended to confer standing on the litigant</u>. [*Lansing Schools Ed Ass'n,*
> *supra* at 372.] (Emphasis supplied.)

15.     Michigan law has always granted standing to parties, such as the Plaintiff Citizens

United, for OMA actions. See *Booth Newspapers, Inc., supra,* at 574. ("We agree with

the trial court that plaintiff is a person. Under the OMA, it is a person who may file suit

to compel compliance with the act, MCL 15.271(1); MSA 4.1800(21)(1), and a

successful person who may recover actual attorney fees and court costs, MCL 15.271(4);

MSA 4.1800(21)(4). As a general rule, the term person is defined as including

corporations unless such a construction would be inconsistent with the manifest intent of the Legislature. See MCL 8.3; MSA 2.12 and MCL 8.31; MSA 2.212(12).")

16. An actual controversy exists by reason of the Defendant City Council's actions taken in violation of the OMA, and the Plaintiff is a proper party to bring this action thereon.

17. This Court is the proper venue and forum, it has jurisdiction over the parties, it can determine the truth or falsity of the allegations raised, and it can grant the relief sought herein.

<u>COUNT I</u>

<u>DEFENDANT CITY COUNCIL IMPERMISSIBLY HELD CLOSED-DOOR MEETINGS
ON SEPTEMBER 23, 2014 THROUGH SEPTEMBER 25, 2014 IN VIOLATION OF THE
OMA</u>

18. Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

19. Beginning on Tuesday, September 23, 2014, a quorum of the Defendant City Council convened into closed session purportedly to discuss "privileged and confidential communications and legal memoranda from the law department."

20. A quorum of the Defendant City Council continued said closed-door discussions on Wednesday, September 24, 3014 and on Thursday, September 25, 2014.

21. While a quorum of the Defendant City Council met behind closed doors from September 23, 2014 through September 25, 2014, the local media reported each day as to those that were present in the closed closed-door meetings, and the local media also quoted many members of the Defendant City Council about the "progress" that was made by the Defendant City Council during said closed-door meetings regarding the future of Kevyn

Orr being able to continue to serve as the Emergency Manager for the City of Detroit under Public Act 436 of 2012.

22.     Many media outlets, including newspapers and television stations, quoted many members of the Defendant City Council as saying that the "negotiations" with the state's Emergency Manager for the City of Detroit, under Public Act 436 of 2012, Kevyn Orr, were going well, and that the Defendant City Council, and the Mayor, were close to a "deal" with Kevyn Orr.

23.     Finally, during the afternoon of Thursday, September 25, 2014, it was reported by the local media that the Defendant City Council had reached an "agreement" with the state's Emergency Manager under Public Act 436 of 2012, Kevyn Orr, and that it would convene in an open session at 4 p.m. to approve a resolution detailing the "agreement" that was reached by it behind closed doors.

24.     At approximately 4 p.m. on Thursday, September 25, 2014, all the members of the Defendant City Council convened an open meeting, to vote on a resolution to remove Kevyn Orr, as the state's Emergency Manager for the City of Detroit, as of the effective date of the of the Plan of Adjustment in the City of Detroit's bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Michigan, being Case No. 13-53846.

25.     This "open" meeting lasted less than 20 minutes with little discussion or debate by any of the members of the Defendant City Council.

26.     The vote to approve the "agreement," at 4 p.m. on Thursday, September 25, 2014 was "a fait accompli by the [time of] commencement of the public meeting" *Booth Newspapers, Inc. v. University of Michigan Board of Regents*, 444 Mich 211, 229 (1993).

27. The closed-door meetings of a quorum of the Defendant City Council held on Tuesday, September 23, 2014 through September 25, 2014, were held in violation of the OMA's mandate that "[a]ll meetings of a public body shall be open to the public... [a]ll decisions of a public body shall be made at a meeting open to the public... All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public". MCL §§ 15.263(1)(2)&(3).

28. "[T]he purpose of the [Open Meetings Act] is to promote governmental accountability by facilitating public access to official decision making and to provide a means through which the general public may better understand issues and decisions of the public concern." *Kitchen v Ferndale City Council*, 253 Mich App 115, 125; 654 NW2d 918 (2002). The closed-door meetings of a quorum of the Defendant City Council held on Tuesday, September 23, 2014 through September 25, 2014 plainly violated this purpose.

29. "A strict construction must be given to closed-door exceptions in order to limit the situations in which meetings are not opened to the public." *Detroit News, Inc. v City of Detroit*, 185 Mich App 296, at 302; 460 NW2d 312 (1990), citing *Booth Newspapers, Inc v Wyoming City Council*, 168 Mich App 459, 467; 425 NW2d 695 (1988).

30. A public body, in this case the Defendant City Council, has the burden of proving that an exemption exists to allow the convening of a closed session. See *Schmiedicke v Clare School Bd.*, 228 Mich App 259, at 261-262; 577 NW2d 706 (1998).

31. The OMA strictly limits "closed session" meetings of public bodies and generally requires that whenever a quorum of a public body meets to consider and discuss public business, such deliberations or decisions must take place in an open meeting, unless an exception applies. See MCL §15.263; and see, *Herald Co v Bay City*, 463 Mich 111,

129; 614 NW2d 873 (2000); *Nicholas v Meridan Charter Twp Bd*, 239 Mich App 525, 531; 609 NW2d 574 (2000).

32.   The Defendant City Council, by the public statements of its members, other attendees at the meetings and by its counsel in its brief in response to Plaintiff's emergency motion in the bankruptcy court seeking relief from the stay to file this action, all claim that Defendant City Council merely convened into three (3) days of closed sessions to discuss "privileged and confidential communications and legal memoranda from the law department."

33.   The repeated and lengthy closed sessions exceeded the attorney-client privilege exemption that is permitted under MCL § 15.243(1)(h) of the OMA and thus, said closed sessions were held in violation of the OMA. See e.g., *People v Whitney*, 228 Mich App 230 (1998); *Booth Newspapers v Wyoming City Council*, 168 Mich App 459 (1988).

## COUNT II
### DEFENDANT CITY COUNCIL MADE A "DECISION" DURING THE IMPERMISSIBLY HELD CLOSED SESSIONS SEPTEMBER 23, 2014 THROUGH SEPTEMBER 25, 2014 IN VIOLATION OF THE OMA

34.   Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

35.   From the comments attributed to members of the Defendant City Council, the Mayor, and the state's Emergency Manager for the City of Detroit, Kevyn Orr, in various published media reports, it is apparent and indisputable that a "deal" and/or "settlement" over the devolution of power was "negotiated" and "reached" by the Defendant City Council and Kevyn Orr and the Mayor, during the repeated and lengthy closed sessions held by the Defendant City Council from September 23, 2014 through September 25, 2014.

36. The meetings violated the OMA's mandate that "[a]ll meetings of a public body shall be open to the public... [a]ll decisions of a public body shall be made at a meeting open to the public... All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public." MCL §§ 15.263(1)(2)&(3).

37. The "decision" that was unlawfully made by the Defendant City Council during the impermissibly held closed sessions was its "decision" pursuant to § 9(6)(c) of Public Act 436 of 2012, to remove Kevyn Orr as the Emergency Manager, as of the effective date of the Plan of Adjustment, in the City of Detroit's bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Michigan, being Case No. 13-53846.

38. MCL § 15.263(2) of the OMA states in relevant part:

> (2) **All decisions of a public body shall be made at a meeting open to the public.** (Emphasis supplied).

39. MCL § 15.262(d) of the OMA defines the term "Decision" as follows:

> "Decision" means a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by which a public body effectuates or formulates public policy.

40. The "decision" to remove Kevyn Orr as the Emergency Manager was reached during the "negotiations" the Defendant City Council held with Kevyn Orr and the Mayor during the closed sessions it held on September 23, 2014 through September 25, 2014.

41. The OMA is an act intended to promote openness and transparency in government. See, *Booth Newspapers v Univ of Mich Board of Regents*, 192 Mich App 574, 580; 481 NW2d 778 (1992), aff'd in part and rev'd in part 444 Mich 211 (1993)("The purpose of the

OMA is to promote openness and accountability in government; it is therefore to be interpreted broadly to accomplish this goal.")

42.     Accordingly, the OMA provides that whenever a public body "deliberates" or renders a decision on public policy, such deliberations or decisions must take place in an open meeting, unless an exception thereto applies. MCL §15.263(3) of the OMA.

43.     The Michigan Court of Appeals has opined on the issue of what constitutes a "meeting" as defined by the OMA. **"To constitute a "meeting" of a "public body," as contemplated by the OMA, the following elements must be present: (1) a quorum, (2)** *deliberation or* **rendering of a decision, (3) on a matter of public policy."** *Ryant v Cleveland Twp.*, 239 Mich App 430, 434; 608 NW2d 101 (2000). (Emphasis supplied). Defendant City Council held such a meeting(s) at the closed sessions held September 23 through September 25.

44.     Moreover, the state's Attorney General has opined that **"[w]hen a quorum of the members of a public body meet to consider and discuss public business, it is a "meeting" under MCL 15.262(a); MSA 4.1800(12)(a).** See OAG, 1989-90, No. 6636, p 253 (October 23, 1989). Defendant City Council held such a meeting(s) at the closed sessions held September 23 through September 25.

45.     **Meetings with a quorum present held to deliberate a public question must be held at a public meeting.** Thus, if members of a public body gather, a quorum being present, for the purpose of deliberating, **the meeting is subject to the provisions of the OMA** *even if there is no intention that the deliberations will lead to the rendering of a decision that occasion. Id."* *Nicholas v Meridan Twp Bd*, 239 Mich App 525, 531; 609 NW2d

574 (2000). (Emphasis supplied). Defendant City Council held such a meeting(s) at the closed sessions held September 23 through September 25.

46.   Although the OMA does not expressly define the term "deliberation", the Court of Appeals defined the term "deliberation" in *Ryant, supra*. The Court held:

> "The Legislature failed to define the term "deliberating" in the context of the OMA. Black's Law Dictionary (7th Ed), defines this word as the "act of *carefully considering* issues and options before making a decision or taking some action; esp., the process by which a jury reaches a verdict; as by analyzing, discussing, and weighing the evidence" (emphasis added). The word "discussion" is defined as the act of *exchanging views* on something; a debate. Id. (emphasis added). Although Black's Law Dictionary does not define "debate," the Random House Webster's Unabridged Dictionary (2d ed) (1998), defines the word as "a discussion, as of a public question in an assembly, involving opposing viewpoints."" [*Ryant v Cleveland Twp*, 239 Mich App at 434.]

47.   During the closed-door meetings held September 23, 2014 through September 25, 2014, all of the members of the Defendant City Council were present and each discussed and exchanged their respective views on what they collectively as the city council, and in concert with the Mayor, as a team, should do regarding the removal and the conditions thereof, of Kevyn Orr as the Emergency Manager for the City of Detroit.

48.   In addition, all of the members present during the closed-door meetings that occurred from September 23, 2014 through September 25, 2014 discussed and exchanged their individual views on a matter of highest public policy – the return of power to the elected members of the governing body from the state's Emergency Manager, and views on other such matters that otherwise impacted the City of Detroit and its governance by its elected officials rather than by the state's Emergency Manager under Public Act 436 of 2012.

49.   In accordance with the holding in *Ryant, supra*, a quorum of the Defendant City Council was present during the closed-door meetings held September 23, 2014 through September

25, 2014 and there were "deliberations" and "discussions" during said meetings and each
of the members present actively participated in such discussions pertaining to those issues
of public policy above described and including the discussion about the termination of
Kevyn Orr, as the Emergency Manager for the City of Detroit under Public Act 436 of
2012.

## COUNT III

### DEFENDANT CITY COUNCIL'S "DECISION" TO APPROVE THE RESOLUTION AT ITS SEPTEMBER 25, 2014 MEETING TO REMOVE THE STATE'S EMERGENCY MANAGER, KEVYN ORR AS THE EMERGENCY MANAGER FOR THE CITY OF DETROIT ON THE EFFECTIVE DATE OF THE CITY'S PLAN OF ADJUSTMENT IN ITS CHAPTER NINE BANKRUPTCY PROCEEDING WAS A *"FAIT ACCOMPLI"* AND A VIOLATION OF THE OMA

50.     Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set
forth herein.

51.     Defendant City Council's "decision" to remove Kevyn Orr as the Emergency Manger for
the City of Detroit in accordance with § 9(6)(c) Public Act 436 of 2012, and to do so on
the effective date of the City's Plan of Adjustment in the City of Detroit's bankruptcy
proceedings in the United States Bankruptcy Court for the Eastern District of Michigan,
being Case No. 13-53846, was a "fait accompli" and a violation of the OMA. See, *Booth
Newspapers Inc. v. University of Michigan Regents*, 444 Mich. 211 (1993); *People v
Whitney*, 228 Mich App 230 (1998).

52.     Defendant City Council had already made its "decision" during its closed sessions held
September 23-25, 2014 that it was going to approve the resolution to remove Kevyn Orr
as the Emergency Manager for the City of Detroit, as of the effective date of the Plan of

Adjustment in the City of Detroit's bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Michigan, being Case No. 13-53846.

53. The members of the Defendant City Council were individually and variously quoted in several newspapers and they were variously interviewed on local radio and television stations, and they were variously and individually quoted as saying that they had "negotiated a settlement" and/or "agreement" with the state's Emergency Manager, Kevyn Orr, relative to his termination as Emergency Manager and the devolution of power back to the elected officials of the City of Detroit.

54. That the Defendant City Council's "decision" -- on such a momentous public policy issue as the end of the state's Emergency Manager's reign and a return of the local public body's powers of governance to its elected officials -- was *"fait accompli"* is simply evidenced by the fact that its "open" meeting took it less than approximately 15 minutes and with little discussion or debate.

55. Thus the formal vote taken by the Defendant City Council during the September 25, 2014 open session of was a *"fait accompli"* when taken and a violation of the OMA. See *Booth Newspapers Inc. v. University of Michigan Regents*, 444 Mich. 211 (1993); *People v Whitney*, 228 Mich App 230 (1998).

<u>COUNT IV</u>

<u>THE MINUTES, INCLUDING TRANCRIPTS AND AUDIO RECORDINGS, FROM THE CLOSED SESSIONS HELD BY DEFENDANT CITY COUNCIL ON SEPTEMBER 23, 2014 THROUGH SEPTEMBER 25, 2014 SHALL BE DISCLOSED PURSUANT TO MCL § 15.267(2) BECAUSE THE DEFENDANT'S CLOSED SESSIONS WERE HELD FOR AN IMPERMISSIBLE PURPOSE IN VIOLATION OF THE OMA</u>

56. Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

57. On September 26, 2014, Plaintiff, through its Director, Robert Davis, sent via email, a request to all of the members of the Defendant City Council, requesting to have a copy of the minutes, including transcripts and audio recordings, from the Defendant City Council's closed sessions held September 23, 2014 through September 25, 2014. **(See Plaintiff's September 26, 2014 email to Defendant attached hereto as Exhibit B).**

58. Defendant City Council did not have the authority to meet in such closed sessions on September 23, 2014 through September 25, 2014 under the pretextual exemption stated in its meeting minutes and notice, and the Court must order the meeting minutes of such closed sessions be disclosed to the Plaintiff.

59. MCL § 15.267(2) of the OMA states:

> (2) A separate set of minutes shall be taken by the clerk or the designated secretary of the public body at the closed session. These minutes shall be retained by the clerk of the public body, are not available to the public, and shall only be disclosed of required by a civil action filed under section 10, 11, or 13....

60. If a public body meets in closed session for an impermissible purpose minutes from said closed sessions are subject to disclosure under the OMA. "Plaintiffs attacked the closed session itself as wholly improper under the OMA, *a posture under which the minutes of that session would be entirely subject to disclose as nonexempt under the OMA* and the FOIA. See *Detroit News, Inc v Detroit,* 185 Mich App 296, 303-304; 460 NW2d 312 (1990)." *Manning v East Tawas,* 234 Mich App 244, at 249; 593 NW2d 649 (1999). (Emphasis supplied).

61. The closed sessions held by the Defendant City Council on September 23, 2014 through September 25, 2014 were improper. The Defendant City Council could not meet in a closed session for the purpose of "deliberating", "negotiating" and making a "decision"

regarding the future or termination of Kevyn Orr as the Emergency Manager and the devolution of power to the city and its elected officials, all under Public Act 436 of 2012.

62.    This Court has the authority, under the OMA, to determine and consider whether or not the minutes, or some portion thereof, from the closed sessions held by the Defendant City Council on September 23, 2014 through September 25, 2014, should be disclosed.

63.    The Michigan Court of Appeals has held: "[W]e hold that where the deliberations of a public body meeting in closed session concerned both exempt and nonexempt subject matter, a court may order disclosure of minutes that have been redacted to conceal the exempt subject matter." *Manning v East Tawas*, 234 Mich App 244, at 249-250; 593 NW2d 649 (1999).

64.    This Court may order full, or partial disclosure, of such minutes. Such minutes also include the transcripts and any audio or video recordings of the closed sessions. See *Manning v East Tawas*, 234 Mich App 244, at 249-250; 593 NW2d 649 (1999); *Detroit News, Inc. v. City of Detroit*, 185 Mich App 296 (1990).

## COUNT V

## INJUNCTIVE RELIEF

65.    Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

66.    Defendant City Council's knowing and deliberate violation of the OMA provisions, while dealing with such a momentous matter of public policy and concern to the citizens of the city, presents an immediate need and reason for the Court to issue its Order enjoining the Defendant City Council from any further violations of the OMA and any further

noncompliance with the OMA, and to issue its Order compelling Defendant City Council to so comply with the provisions of the OMA.

67. Plaintiff has previously been denied access to Defendant City Council's closed session minutes in violation of the OMA.

68. Plaintiff seeks the Court's Declaration that the Defendant City Council violated the OMA by holding closed sessions from September 23 through September 25, 2014 for an impermissible purpose and for making a "decision" in said closed sessions; and that Defendant City Council be enjoined from further such violations of the OMA. "Because there is real and imminent danger of irreparable injury when governmental bodies meet and act in secret, *Detroit News*, p 301, we enjoin defendant from any use of this procedure in the future." *Booth v University of Michigan Board of Regents*, 192 Mich App 574, at 588.

## COUNT VI

## COSTS AND ATTORNEY FEES

69. Plaintiff incorporates, repeats, and realleges, the foregoing allegations as though fully set forth herein.

70. Plaintiff is entitled to receive its *"courts costs and actual attorney fees for the action"* pursuant to §11(4) (MCL 15.271.11(4)) of the OMA. It reads:

> If a public body is not complying with this act, and a person commences a civil action against the public body for injunctive relief to compel compliance or to enjoin further noncompliance with the act and succeeds in obtaining relief in the action, **the person shall recover courts costs and actual attorney fees for the action.** (Emphasis supplied.)

71. The award of attorney fees and costs by the Court is **mandatory** upon a finding of a violation of the Open Meetings Act. See, *Craig v. Detroit Public Schools Chief Executive Officer,* 265 Mich App 572 (2005), and see, *Kitchen v. Ferndale City Council,* 253 Mich App 115; 654 NW2d 918 (2002). Plaintiff shall be awarded actual court costs and attorney fees in accordance with the OMA. See, *Manning v East Tawas,* 234 Mich App 244, at 253-254; 593 NW2d 649 (1999).

72. Plaintiff is so entitled to such recovery of its actual attorney fees and costs whether or not there is a proof of injury or whether or not there is an issuance of an injunction under the Open Meetings Act, as was so held in *Herald Co., Inc. v. Tax Tribunal,* 258 Mich App 78, at 92; 669 NW2d 862 (2003) ("neither proof of injury nor issuance of an injunction is a prerequisite for the recovery of attorney fees under the OMA."). See also, *Manning v East Tawas,* 234 Mich App 244, at 253-254; 593 NW2d 649 (1999).

73. Plaintiff seeks an award from the Court against Defendant City Council for payment of its costs and attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Citizens United Against Corrupt Government, prays and respectfully requests that this Court grant relief as follows:

A. ISSUE A DECLARATORY JUDGMENT declaring that Defendant City Council violated the Open Meetings Act by convening into closed sessions for an impermissible purpose on September 23, 2014 through September 25, 2014 and the minutes, including transcripts and audio or video recordings, such closed sessions are subject to disclosure.

B.    ISSUE A DECLARATORY JUDGMENT declaring that Defendant violated the Open Meetings Act by making a "decision" during the closed sessions held on September 23, 2014 through September 25, 2014.

C.    ISSUE A DECLARTORY JUDGMENT declaring that the closed sessions held by the Defendant City Council on September 23, 2014 through September 25, 2014 exceeded the attorney-client privilege exemption set forth in the Open Meetings Act.

D.    ISSUE A DECLARATORY JUDGMENT declaring that pursuant to MCL §15.267(2) of the Open Meetings Act, the minutes, including transcripts and audio recordings, from the closed sessions held on September 23, 2014 through September 25, 2014 shall be immediately fully, or partially, as the Court shall determine, disclosed to the Plaintiff.

E.    ISSUE an INJUNCTION enjoining the Defendant City Council from any further violations of the Open Meetings Act.

F.    ISSUE its ORDER that Defendant City Council pays the Plaintiff's court costs and attorney fees that Plaintiff has incurred as a result of having to bring this action, all pursuant to MCL § 15.271(4) of the Open Meetings Act.

G.    ORDER any and all such OTHER RELIEF as justice may so require.

Respectfully submitted,

/S/ ANDREW A. PATERSON
ANDREW A. PATERSON (P18690)
Attorney for Plaintiff
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

DATED: October 1, 2014

14-012633-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 12:08:49 PM
CATHY M. GARRETT

# EXHIBIT A

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,

      PLAINTIFF,               Case No. 14-     -AW

                                             Hon.

-v-

DETROIT CITY COUNCIL,
      DEFENDANT.

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

## AFFIDAVIT OF ROBERT DAVIS, DIRECTOR OF CITIZENS UNITED AGAINST CORRUPT GOVERNMENT

State of Michigan    )
                 )
County of Wayne    )

    NOW COMES ROBERT DAVIS, a natural person, being first duly sworn and deposed and under the penalty of perjury states the following:

1.   That I am the Director of Citizens United Against Corrupt Government, a registered domestic nonprofit corporation of the State of Michigan.

2.   That on Friday, September 26, 2014, in accordance with the Open Meetings Act ("OMA"), I, acting in my official capacity as Director of Plaintiff Citizens United, sent via email, a written request to all of the members of the Defendant City Council requesting to receive a copy of the closed session minutes from the closed sessions held on September 23, 2014 through September 25, 2014. As of October 1, 2014, I had not received a response from the Defendant City Council to my request.

3. That in my official capacity as Director of Citizens United Against Corrupt Government, I have approved the filing of this OMA lawsuit against the Defendant City Council.

4. That I personally reviewed many newspaper articles and video recordings of members of the Defendant City Council stating that they were close in "negotiations" and were close to a "settlement" with Kevyn Orr during the closed sessions that they held from September 23, 2014 through September 25, 2014.

5. That it is my belief upon reviewing the comments made by members of the Defendant City Council that the Defendant City Council violated some provisions of the OMA by holding impermissible closed sessions on September 23, 2014 through September 25, 2014.

6. That all of the allegations and counts as pled and alleged in each of the numbered paragraphs in the attached verified complaint and motion are true to the best of my knowledge, information, and belief.

7. If called upon as a witness, I am competent to testify as to the facts stated herein.

FURTHER AFFIANT SAYETH NOT.

_signature_

ROBERT DAVIS

Subscribed and sworn to before me

On this ___30th___ day of September, 2014

_signature_

NOTARY PUBLIC

My Commission Expires:

KAREN BROOKS
Notary Public - Michigan
Monroe County
My Commission Expires MAR 17, 2015    Page 2 of 2
Acting in the County of

# EXHIBIT B



Robert Davis <davisrobert854@gmail.com>

# Request under the Open Meetings Act for Copies of Minutes, including transcripts and audio recordings, of closed meetings held the week of September 21, 2014 regarding Emergency Manager Kevyn Orr

Robert Davis <davisrobert854@gmail.com>                          Fri, Sep 26, 2014 at 3:40 PM
To: sheffield5council@gmail.com, bjones_mb@detroitmi.gov, cushingbenyg@detroitmi.gov, LelandG@detroitmi.gov, GradyS@detroitmi.gov, councilmemberjenkins@detroitmi.gov, CouncilmanSpivey@detroitmi.gov, councilmembertate@detroitmi.gov, councilmemberraquel@detroitmi.gov

Dear Honorable Council President Jones and Members of the Detroit City Council:

Pursuant to Michigan's Open Meetings Act ("OMA"), on behalf of Citizens United Against Corrupt Government, which I am Director of, this email is submitted respectfully requesting that I receive copies of any and all minutes from the closed-door meetings the Detroit City Council held the week of September 21, 2014 regarding the possible future employment of Kevyn Orr as the Emergency Manager for the City of Detroit. Specifically, accordingly to published media reports, the Detroit City Council met in closed session for 4 days from Monday, September 21, 2014 through Thursday, September 24, 2014. I believe said closed sessions were impermissibly held in violation of the OMA, and thus, I am requesting to receive copies of any and all minutes from said closed sessions, which shall include but not limited to, all written minutes, transcripts and audio recordings from said closed sessions.

If you should have any questions regarding this request under the OMA, please feel free to give me a call at (248) 470-8731.

Respectfully submitted,
Robert Davis
Director, C.U.A.C.G.

# EXHIBIT C

THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION



|  | X |  |
|---|---|---|
|  | : | Chapter 9 |
| In re: | : | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | : | Hon. Steven W. Rhodes |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
|  | X |  |

## ORDER GRANTING PETITIONERS ROBERT DAVIS' AND CITIZENS UNITED AGAINST CORRUPT GOVERNMENT'S EMERGENCY MOTION FOR RELIEF FROM THE AUTOMATIC STAY

This matter coming before the Court on: (a) Petitioners Robert Davis' and Citizens United Against Corrupt Government's ("Petitioners") Emergency Motion For Relief from the Automatic Stay ("Emergency Motion") (Docket No. 7667); and (b) Debtor's Combined Objection and Brief in Opposition to Petitioner Robert Davis' and Citizens United Against Corrupt Government's Emergency Motion for Relief from the Automatic Stay Objection ("Objection") (Docket No. 7714); the Court having reviewed and conducted a hearing on the Emergency Motion and the Objection; and the Court having determined that the legal and factual bases as set out in the Emergency Motion and the representations of the Petitioners at the hearing and in the Emergency Motion establish cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

A. Petitioners' Emergency Motion is GRANTED to the extent set forth in this Order.

B. Petitioners shall be allowed to immediately file a civil action in the Wayne County Circuit Court against the Detroit City Council seeking only (1) the declaratory and injunctive relief specifically identified in the Emergency Motion for the Detroit City

Page 1 of 2

Council's alleged violations of the Open Meetings Act and (2) an award of attorneys' fees and costs as may be provided for by the Open Meetings Act.

C. The Petitioners shall not seek to invalidate any action, decision, order or resolution arising from or relating to the closed sessions of the Detroit City Council on September 23, 24 or 25, 2014, including without limitation, the Detroit City Council's "Resolution Removing Kevyn D. Orr as Emergency Manager and Removing the City of Detroit from Receivership Under Act 436" as approved by the Detroit City Council on September 25, 2014, or any of the orders dated September 25, 2014, of the Emergency Manager of the City of Detroit, Kevyn D. Orr.

D. The Petitioners shall not depose, or seek to depose, the Emergency Manager of the City of Detroit, Kevyn D. Orr or the Mayor of the City of Detroit, Mike Duggan, without first obtaining an order from this Court authorizing Petitioners to seek such a deposition in the civil action.

E. The automatic stays of Bankruptcy Code §§362 and 922 otherwise remain in full force and effect except as expressly modified by this Order.

F. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

G. This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Signed on September 30, 2014

/s/ Steven Rhodes
Steven Rhodes
United States Bankruptcy Judge

CITIZENS UNITED AGAINST CORRUPT GOVERNMENT,
a Michigan Nonprofit Corporation,
**PLAINTIFF,**

Case No. 14-012633-AW
HON. ANNETTE J. BERRY

-v-

DETROIT CITY COUNCIL,
**DEFENDANT.**

14-012633-AW
FILED IN MY OFFICE
WAYNE COUNTY CLERK
10/1/2014 3:54:29 PM
CATHY M. GARRETT

ANDREW A. PATERSON (P18690)
Attorney for Plaintiff Citizens United
46350 Grand River Ave., Suite C
Novi, MI 48374
(248) 568-9712

/s/ Cheryl Bascomb

RECEIVED
CITY OF DETROIT LAW DEPT
2014 OCT -1 PM 5: 27

## Order Granting Ex Parte Motion for Temporary Restraining Order (TRO)

At a session of said Court held
in the Coleman A. Young Municipal Center, City of Detroit,
County of Wayne, State of Michigan,

On **10/1/2014**

Present: **Annette J. Berry**
**Wayne County Circuit Court Judge**

This matter having come before the Court on Plaintiff's Verified Complaint Declaratory

Judgment and Injunctive Relief and Plaintiff's Emergency Ex Parte Motion for Temporary

Restraining Order ("TRO"), and the Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED that Plaintiff's *Ex Parte* Motion for TRO is GRANTED.

IT IS FURTHER ORDERED that Defendant Detroit City Council, their agents and

employees, and other persons who are in active concert or participation with them are hereby

temporarily enjoined from meeting and/or convening a closed session for the purpose of

discussing the role of Kevyn Orr as the Emergency Manager for the City of Detroit or for the purpose to discuss any orders, resolutions, or statutes pertaining to removing the City of Detroit from Receivership under Public Act 436.

IT IS FURTHER ORDERED that the Defendant Detroit City Council, their agents and employees, and other persons who are in active concert or participation with them are hereby temporarily enjoined and restrained from destroying, deleting, altering, or otherwise damaging any written documents, including emails, text messages, faxes, letters, minutes, transcripts, video and/or audio recordings that pertain to its decision on whether to remove Kevyn Orr as the Emergency Manager for the City of Detroit as permitted under § 9(6)(c) of Public Act 436 of 2012 or pertaining to the closed sessions the Defendant Detroit City Council held on September 23-25, 2014. This is necessary in order to preserve the status quo and to prevent the possible destruction of pertinent evidence relevant to this case.

IT IS FURTHER ORDERED that Defendant shall appear before the Hon. Judge Annette J. Berry on October _____10th_____, 2014 at _____11:00_____ a.m/p.m. in her courtroom at the Coleman A. Young Municpal Center on the 18th Floor to Show Cause as to Why a Preliminary Injunction should not be issued.

IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this Order to Show Cause, as well as copies of Plaintiff's Complaint and all other pleadings filed in this matter, on the Defendant Detroit City Council or their appropriate representative before 5 p.m. on October 1, 2014.

/s/ Annette J. Berry

_____
WAYNE COUNTY CIRCUIT COURT JUDGE

Page 2 of 2

```
                UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF MICHIGAN
                      SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,             .
                             .       Detroit, Michigan
                             .       September 29, 2014
                 Debtor.      .      9:06 a.m.
. . . . . . . . . . . . . . .
```

        HEARING RE. (#7667) EMERGENCY MOTION FOR RELIEF FROM
           STAY AND WAIVING THE FRBP 4001(a)(3) FILED BY
      CREDITOR CITIZENS UNITED AGAINST CORRUPT GOVERNMENT;
        CONTINUED TRIAL RE. OBJECTIONS TO CHAPTER 9 PLAN
             BEFORE THE HONORABLE STEVEN W. RHODES
               UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Jones Day
                       By:  HEATHER LENNOX
                       222 East 41st Street
                       New York, NY  10017
                       (212) 326-3837

                       Jones Day
                       By:  GREGORY M. SHUMAKER
                            GEOFFREY S. STEWART
                            THOMAS CULLEN
                       51 Louisiana Avenue, N.W.
                       Washington, DC  20001
                       (202) 879-3939

                       Jones Day
                       By:  DAVID G. HEIMAN
                       North Point, 901 Lakeside Avenue
                       Cleveland, OH  44114
                       (216) 586-3939

                       Pepper Hamilton, LLP
                       By:  ROBERT S. HERTZBERG
                       4000 Town Center, Suite 1800
                       Southfield, MI  48075-1505
                       (248) 359-7333

                       Miller, Canfield, Paddock & Stone, PLC
                       By:  MEGAN P. NORRIS
                       150 West Jefferson, Suite 2500
                       Detroit, MI  48226
                       (313) 963-6420

APPEARANCES (continued):

| | |
|---|---|
| For Citizens<br>United Against<br>Corrupt Government: | Paterson Law Office<br>By: ANDREW A. PATERSON, JR.<br>46350 Grand River Avenue, Suite C<br>Novi, MI  48374<br>(248) 568-9712 |
| For Financial<br>Guaranty Insurance<br>Company: | Weil, Gotshal & Manges, LLP<br>By:  EDWARD SOTO<br>1395 Bricknell Avenue, Suite 1200<br>Miami, FL  33131<br>(305) 577-3177 |
| For Macomb County<br>Drain Drainage<br>District: | Dechert, LLP<br>By:  DEBRA O'GORMAN<br>1095 Avenue of the Americas<br>New York, NY  10036<br>(212) 698-3600 |
| For AFSCME: | Miller Cohen, PLC<br>By:  RICHARD MACK, JR.<br>6700 West Lafayette Blvd., 4th Floor<br>Detroit, MI  48226-3191<br>(313) 566-4787 |
| For Ad Hoc Water<br>and Sewer<br>Bondholders: | Kramer Levin Naftalis & Frankel, LLP<br>By:  JONATHAN M. WAGNER<br>1177 Avenue of the Americas<br>New York, NY  10036<br>(212) 715-9393 |
| Court Recorder: | LaShonda Moss<br>United States Bankruptcy Court<br>211 West Fort Street, 21st Floor<br>Detroit, MI  48226-3211<br>(313) 234-0068 |
| Transcribed By: | Lois Garrett<br>1290 West Barnes Road<br>Leslie, MI  49251<br>(517) 676-5092 |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE COURT:  Let's turn our attention to the

2     emergency motion for relief from stay, please.

3          MR. PATERSON:  Andrew Paterson on behalf of the

4     petitioners.

5          MS. NORRIS:  Megan Norris of Miller Canfield --

6          THE COURT:  All right.  Stand by one second while

7     those who would like to leave the courtroom get an

8     opportunity to do that.

9          MR. THORNBLADH:  Thank you, your Honor.

10         MS. JENNINGS:  Thank you, your Honor.

11         THE COURT:  You're welcome.  Let's give folks one

12    more minute.  And I think we are ready to proceed, sir.

13         MR. PATERSON:  Your Honor, this is petitioner's --

14    movant's motion for relief from the stay for purposes of

15    filing in the Wayne County Circuit Court an open meetings

16    case against the Detroit City Council.  And I would first

17    indicate that the ideal of a democratic government is too

18    often thwarted by bureaucratic secrecy and unresponsive

19    officials.  Citizens frequently find it difficult to discover

20    what decisions are being made and what facts lie behind those

21    decisions.  The Open Meetings Act protects citizens' right to

22    know what's going on in government by opening to full public

23    view the process by which elected and nonelected officials

24    make decisions on citizens' behalf.  Those are not my words.

25    Those are the words of the Michigan legislature upon the

1   introduction of the Open Meetings Act and the Freedom of

2   Information Act in 1976 in the post-Watergate era.   The

3   Section 3 of the Open Meetings Act states in its very first

4   sentence, "All meetings of a public body shall be open," and

5   the law as it is developed construes exemptions from that

6   narrowly and broadly protects the right of citizens to know

7   what's going on in their government.

8           The response from the debtor on behalf of the city

9   council indicated, and I think correctly, that the violation

10  of the Open Meetings Act is not really the issue before this

11  Court, and I think that's correct, although the bulk of the

12  response did try to repeat over and over and over again that

13  it was a permitted meeting under various exemptions,

14  particularly the legal matters.   The evidence that the

15  movants intend to introduce would be the extensive public

16  statements about the meetings from the participants in the

17  meetings indicating that there were negotiations and

18  discussions for three full days.   I think it was a patent

19  violation of the Open Meetings Act, and the plaintiffs intend

20  to seek as well as a declaration of that an injunction

21  against further violations by the Detroit City Council with

22  respect to the Open Meetings Act.

23          THE COURT:   Well, how do you deal with the city's

24  argument that your claim is moot?

25          MR. PATERSON:   It's not.   I mean they've

1  indicated --

2        THE COURT:  How do you deal with it?  What's your

3  response?

4        MR. PATERSON:  They've indicated repeatedly that

5  these were meetings and discussions addressing the facts

6  behind the decisions, and those are clearly covered by the

7  Open Meetings Act.  The city's response or the debtor's

8  response is the response that it may want to make to a

9  circuit judge, but for purposes of this Court's relief, the

10  merits of the case aren't really before it, although I'm

11  confident this is a lay-down open meetings violation.  The

12  city has failed in its response to point to any specific harm

13  that would happen to this proceeding or in this court.

14  They've made --

15        THE COURT:  Well, but I need an answer to my

16  question because if the matter is moot, there's no sense in

17  granting relief from the stay.

18        MR. PATERSON:  I'm seeking an injunction.

19        THE COURT:  What's not moot about it?

20        MR. PATERSON:  I'm seeking --

21        THE COURT:  What relief can a court provide to your

22  clients?

23        MR. PATERSON:  The Circuit Court can and probably

24  will enjoin them from further violations of the Open Meetings

25  Act.  Citizen's right to know.  It's a fundamental right of

1  every citizen of this state to see that public bodies --

2          THE COURT:  But there's no more --

3          MR. PATERSON:  I did in our motion --

4          THE COURT:  Let me just -- let me just finish my

5  question.

6          MR. PATERSON:  Yeah.  Go ahead.

7          THE COURT:  There's no more imminent or threatened

8  violation of the Open Meeting Act at this point.

9          MR. PATERSON:  The circuit judge may determine that

10 and may not issue an injunction, but I am going to seek an

11 injunction against further violations.  I must say I have in

12 the past sued the city's city council for past violations.

13 This is not a new thing to disregard the public's right to

14 know.  I don't understand it as a philosophy of governance.

15 I would think that you would want to educate your

16 constituents as to all of the issues behind all of your

17 decisions so that they better understand it and don't suspect

18 that there's some secret deal, I think particularly in this

19 case.  There's not been any decision made by this city

20 council other than the initial one back 18 months ago that's

21 been more important.  The citizens are wondering.

22          THE COURT:  What happened 18 months ago?

23          MR. PATERSON:  Mr. Orr was accepted and appointed to

24 the emergency manager position under Act 43 --

25          THE COURT:  Did the city council do that?

1    MR. PATERSON:  City council did not oppose it.  I
2  think it was a five to four vote, as I recall, or four -- it
3  was a one vote majority.  That's that last decision that the
4  council made that had the importance to this decision, and I
5  don't think that there's any particular dispute with the
6  merits of the decision.  It's probably a good thing.  I don't
7  think that's the issue.  I think the way they have gone about
8  it in hiding it from their constituents is the issue.  That
9  doesn't serve the public interest well.  It doesn't --

10    THE COURT:  Does the law require a public body to
11  open up its meetings when it's seeking legal advice from its
12  attorneys?

13    MR. PATERSON:  I think it's pretextual that they
14  said that.  How do you negotiate --

15    THE COURT:  Please answer my question.

16    MR. PATERSON:  Oh, the law permits certain matters
17  that are legal matters that are involved in litigation but
18  also in the public body's obligations under contract or the
19  law to be discussed, and they do allow them to be discussed
20  in private.

21    THE COURT:  And so why -- where is the evidence that
22  something other than that happened here?

23    MR. PATERSON:  The evidence is in the public
24  statements of the participants in the meeting.

25    THE COURT:  Like what?

1            MR. PATERSON:  Pardon?

2            THE COURT:  Like what?  Name one.

3            MR. PATERSON:  Three days of negotiations.  Even in

4    their own brief, they talked about reaching a consensus.  All

5    of the facts that underlie the decision that was made and the

6    agreements that were reached have been excluded from the

7    public view.

8            THE COURT:  Now, you said there were public

9    statements that suggest that something at these meetings

10   happened other than council deliberating with its attorneys

11   on legal matters.

12           MR. PATERSON:  I do say that.  I do say that, and I

13   think the defendants --

14           THE COURT:  I'd ask you to identify one.

15           MR. PATERSON:  The defendants indicate that in their

16   response.  They indicate that the closed sessions were

17   conducted for the purposes of obtaining legal advice.

18   They've said that repeatedly, repeatedly, repeatedly, but

19   they also indicate --

20           THE COURT:  The fact that they state it repeatedly

21   doesn't make it wrong.

22           MR. PATERSON:  No, but if I call a dog's tail a leg,

23   he still only has four legs, as Lincoln observed.

24           THE COURT:  Okay.

25           MR. PATERSON:  The statement in the defendant's

1  response indicates that they reached a consensus and that the

2  consensus was reflected in the agreements that were signed

3  and authorized by the city council.  Those agreements --

4        THE COURT:  Well, but they were -- it was a -- it

5  was a consensus concerning this litigation.

6        MR. PATERSON:  It's a consensus as to how to proceed

7  with respect to the future --

8        THE COURT:  This litigation.

9        MR. PATERSON:  I don't see that as an exemption

10  under the Open Meetings Act.

11        THE COURT:  Well, but --

12        MR. PATERSON:  All public meetings -- all

13  meetings --

14        THE COURT:  I thought you had already admitted that

15  there was an exemption for legal advice relating to

16  litigation.

17        MR. PATERSON:  Yes, and I think the public

18  statements by the participants in the meeting indicate that

19  was pretextual, very simply pretextual.

20        THE COURT:  Okay.  But I'm asking you --

21        MR. PATERSON:  In fact, you don't need to see the

22  smirk of the mayor when he was asked that question to know

23  that it was pretextual.  Other members that attended the

24  meeting saw that they had a lot of negotiations to do over

25  the timing and all of those issues that were involved that

1   are substantive.

2        THE COURT:  But I'm asking you why isn't all of that

3   covered by the exemption?

4        MR. PATERSON:  It's not.  It's not legal matters.

5        THE COURT:  But to tell me it's not doesn't answer

6   my question.  Why isn't it?  What's the --

7        MR. PATERSON:  Participating --

8        THE COURT:  What's the legal analysis that

9   establishes that it's not?

10       MR. PATERSON:  Participating in a negotiation with

11  parties is not legal analysis.  That's not discerning legal

12  analysis.  That's my right to participate in a negotiation,

13  and the city council is told that in their legal opinion, and

14  then they proceed to negotiate.  Those are public

15  discussions.

16       THE COURT:  But it's negotiation over a legal matter

17  in litigation.

18       MR. PATERSON:  It does not exempt the facts that

19  underlie the decision and the consensus and the discussions

20  that were reached with respect to this.  Not all legal --

21       THE COURT:  What's the best case you've got in

22  support of your position?

23       MR. PATERSON:  I think I cited them in my brief, and

24  they do address the scope of the legal exemption.  It's

25  certainly in the context of litigation it can arise.  It is

1  also, though, important to know what were the bases reached

2  for some compromise within those litigations or the facts

3  underlying -- the discussion of the facts underlying and the

4  truth of those facts.  The substance of that decision is the

5  kind of decision that a Circuit Court would make.

6         THE COURT:  Well, let me propose -- let me propose

7  to you a hypothetical.  Counsel for the city wants to give --

8  all right.  The term "counsel" obviously has two distinct

9  meaning here.  The attorney for the city wants to give the

10 council -- the city council legal advice on how to settle a

11 personal injury suit and explain why he's recommending a

12 settlement at X dollars.  Okay.  They go into closed session

13 because it's in litigation, and one of the members says, "I

14 don't want to -- I don't think we should settle this for X.

15 I think we should settle it for Y," and they continue to have

16 a discussion with the attorney about the legal merits of the

17 case, the strengths and weaknesses on each side, and they

18 come to a resolution to offer a settlement at Z.  How much,

19 if any, of that needs to be in public under the Open Meetings

20 Act?

21        MR. PATERSON:  The legal obligations or the

22 recommendation of the attorney if it's in writing is

23 certainly something that can be discussed.  Why did you reach

24 that number, why do you propose settling it, and here's what

25 I propose settling it for because of and gives them the

1   merits, objections to it, discussion of it, starts to

2   borderline whether or not that is exempt.  That's the circuit

3   judge's obligation to determine in the proceeding, and the

4   minutes --

5            THE COURT:  So your position is that even the

6   attorney's statement of reasons why the case should not be

7   settled at Y, it should be settled at X, is something that

8   might be subject to the Open Meetings Act?

9            MR. PATERSON:  Might be; might be.  Not likely, but

10  might be.  More than often -- more often than not there will

11  be a consensus reached, but the discussions here travel

12  beyond the settlement of a lawsuit.  This is the active

13  participation of the city in its future of the most

14  fundamental aspects of it and the regaining of the power to

15  do that.  That was what was on the table according to Mr. Orr

16  and his orders that were entered in respect to that.  Those

17  are matters that reach well beyond the legal obligations of

18  the city and involve widespread negotiation over the

19  regaining of the power of the elected members of the city

20  council.

21            THE COURT:  Well, but all in relation to the

22  administration of this bankruptcy from the city's

23  perspective.

24            MR. PATERSON:  The city is also obligated and the

25  emergency manager is also obligated to administer the city

1  and administer under the law all of the obligations of the

2  city and the business of the city.  They can't blanket the

3  business of the city with a, well, it's in Bankruptcy Court;

4  therefore, the stay is a shield against violations of the

5  Open Meetings Act and other violations of law.

6          THE COURT:  Anything further, sir?

7          MR. PATERSON:  No, other than I did in my motion

8  indicate to the Court that I'm not seeking to undo, as I'd

9  have the right to do under the Open Meetings Act, the actions

10 taken.  The relief that we're seeking in the Circuit Court

11 would be prospective only, and it would be prospective with

12 respect to further violations of the Open Meetings Act by the

13 Detroit City Council.

14         THE COURT:  And of course you'd want attorney fees.

15         MR. PATERSON:  And of course I would want attorney's

16 fees.

17         THE COURT:  Thank you.

18         MR. PATERSON:  Thank you.

19         MS. NORRIS:  Good morning, your Honor.  Megan Norris

20 on behalf of the city.  I'll be brief.  It's clear that

21 you've reviewed everything.  First of all, the timing of the

22 motion and the substance of plaintiff's motion makes it clear

23 that the events at issue are over.  Plaintiffs filed their

24 motion mid-day on Thursday.  By the end of the day Thursday,

25 the city and state had filed with this Court a joint notice

1  of transition plan, which outlines a proposed transition from

2  the emergency manager to the city elected officials.

3  Plaintiff in their motion does not -- petitioners don't argue

4  that there have been any other violations of the Closed

5  Meetings Act by city council.  City council has been in and

6  out of closed session for a number of reasons on a number of

7  occasions since this bankruptcy trial began.  The only issue

8  are the meetings that have just taken place.  One of the

9  Garzoni factors is the creditor's claim -- whether the

10 creditor's claim is likely to succeed on the merits, and as

11 the Court has noted, there is no evidence of any violation.

12 The meeting was properly closed.  The statute was cited.  The

13 transition -- the subject being the transition, specifically

14 PA 436 transition matters, was cited in city council's

15 closure resolution.  This was not a blanket business of the

16 city closure.  This was not even a blanket attorney-client

17 privilege closure.  This was specifically to discuss the

18 memoranda of counsel and the advice of counsel and discussion

19 of the memoranda relating to the transition.  Clearly there

20 can be harm to the city if this is allowed to go forward at

21 this time, and that really is the question.  It's not whether

22 it can go forward.  It's whether it can go forward at this

23 time, whether the stay should be lifted.  As this Court has

24 noted repeatedly in the trial in front of it as we speak, the

25 issue on the plan of adjustment is not simply whether debts

1    can be resolved.  The issue is also whether the city has a

2    viable plan to go forward, and a big part of that plan is how

3    the city moves from the emergency manager that has

4    effectively guided the city through this bankruptcy back to

5    the elected officials as the city goes forward to allow a

6    lawsuit against exactly those players, city council, but

7    obviously the mayor would be involved.  Obviously the

8    emergency manager would be involved.  To allow a lawsuit

9    involving those folks to go forward at this time would be

10   detrimental to exactly what this Court is trying to

11   accomplish in smoothing the transition of the city out of

12   bankruptcy.  If you have any questions, I'm happy to answer

13   them.

14           THE COURT:  What's the connection given that Mr.

15   Paterson says all he wants is an injunction against future

16   violations of the Open Meetings Act?

17           MS. NORRIS:  Right.  So the connection is it's a

18   law -- first, he has to prove a violation, so there's a

19   lawsuit, and in that lawsuit there will be arguments about

20   what happened or didn't happen.  That will require at minimum

21   an in camera review of what happened in closed session.  In

22   many cases Mr. Paterson has sought to take depositions of

23   people involved to determine whether the mayor's smirk -- I

24   use Mr. Paterson's term -- means anything, to determine

25   whether, as in the Wyoming case, there were winks or nods or

1  slips of paper across the table, so there's discovery in that

2  case.  So before there's any finding of a violation, before

3  any injunction is issued, before any attorney's fees are

4  awarded, there has to be a finding, and that is exactly the

5  kind of action that the city does not need to be going

6  through right now.  It is a very sensitive area.  The orders

7  have been issued.  You've seen the transition, the joint

8  notice of transition.  As Mr. Paterson noted, there was a

9  city council meeting at the beginning not to oppose the

10  appointment of Kevyn Orr, and there has been a meeting at the

11  end.  The parties have agreed that there is a date certain --

12  i.e., the effective date of the plan of adjustment -- and

13  Mr. Orr has begun the transition, so there's no evidence that

14  there would be meetings on this topic going forward.  If

15  there were, they would be noticed in the same way, but to say

16  that the notice was pretextual in some way when the results

17  of the meeting are exactly the topic identified in the legal

18  memoranda, it's not like the results of the meeting are

19  something unrelated to exactly what was identified.  The

20  transition plan is absolutely without any support.

21        THE COURT:  Thank you.

22        MS. NORRIS:  Thank you.

23        MR. PATERSON:  If the Court is concerned, I'm fairly

24  satisfied that there's ample evidence that won't require the

25  deposition of the mayor or the emergency manager in this

1   case.  Statements made by city council members and others are

2   public and ample, and I, frankly, expect that they will have

3   to admit those statements once the proceeding has begun.

4         THE COURT:  The city questions why this can't wait,

5   if it needs to be pursued at all, until after the bankruptcy

6   is over.

7         MR. PATERSON:  The injunction relief would prevent

8   further violations of the Open Meetings Act and allow the

9   citizens to see what decisions are being made in public and

10  what the facts are that lie behind those decisions.

11        THE COURT:  Well, fair enough, but you don't have

12  any evidence of any imminent or threatened violation of the

13  Open Meetings Act other than, well, they did it once, so they

14  might do it again.

15        MR. PATERSON:  I think that question flips the

16  burden.  I think the proceeding, if the stay were lifted, is

17  not going to affect this Court's actions or anything in this

18  Court whatsoever.  It's going to carry on independent of

19  that, and there's absolutely no burden on this Court by

20  removing and lifting the stay with respect to this

21  litigation, and, in fact, I think that --

22        THE COURT:  Well, the argument isn't based on burden

23  on this Court.  The argument is based on burden to the city

24  in having to address your lawsuit while it's trying to wrap

25  up this --

1        MR. PATERSON:  The city --

2        THE COURT:  -- critical litigation here.

3        MR. PATERSON:  The city law department has had

4 little to do during this proceeding because many of the cases

5 that were stayed did not proceed.  I know for --

6        THE COURT:  You're concerned about full employment

7 for the city law department?

8        MR. PATERSON:  I think they're more than able and

9 capable of defending this action.

10       THE COURT:  Well, but it's not just the law

11 department.  It's the city.

12       MR. PATERSON:  I don't see how potentially, I guess,

13 a deposition -- if there's a failure to admit public

14 statements that were made and a request for that admission is

15 denied, I suppose at that point I need to take the deposition

16 of the person that made the statement, and in most cases it's

17 members of the city council that were explaining their vote

18 and why they carried out for three days the discussions on

19 this matter.  That doesn't seem to impose any burden on this

20 Court.

21       THE COURT:  All right.  Thank you.  Anything

22 further?

23       MR. PATERSON:  Thank you.

24       MS. NORRIS:  No, your Honor.

25       THE COURT:  All right.  I'll take this under

1  advisement for 15 minutes, and we'll reconvene at 9:45,

2  please.

3          THE CLERK:  All rise.  Court is in recess.

4      (Recess at 9:30 a.m., until 9:50 a.m.)

5          THE CLERK:  All rise.  Court is back in session.

6  You may be seated.

7          THE COURT:  It appears everyone is present.  The

8  standard by which the Court determines this and other motions

9  for relief from the stay is whether the moving party has

10  established cause.  The matter is, of course, addressed to

11  the Court's discretion.  In evaluating whether there is cause

12  for relief from the stay, the Court considers the harm to the

13  moving party if the stay is maintained and the harm to the

14  debtor if this motion is granted and relief from stay is

15  granted.  In this case, if relief from the stay is denied and

16  the stay is maintained in effect, the plaintiffs will be

17  forced to wait to pursue their claim against the city until

18  the stay terminates, which would happen either upon

19  confirmation or dismissal of the case.  If the motion is

20  granted, the city will be, of course, required to defend the

21  lawsuit that would be filed.

22          The city maintains that the lawsuit is moot and that

23  it otherwise lacks merit under the Open Meetings Act and that

24  it should not be forced to defend a lawsuit that is either

25  moot or lacks merit or both.  There are certainly aspects of

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ROBERT DAVIS,

        Plaintiff-Counter Defendant.

v.

DEBRA HUMPHREY,

        Defendant-Counter Plaintiff.

_____/

JEHAN CRUMP-GIBSON (P73178)
Attorney for Plaintiff-Counter Defendant.
151 W. Fort Street, Suite 301
Detroit, Michigan 48226
(888) 315-5793

PEGGY K. MADDEN (P39308)
Attorney for Defendant-Counter Plaintiff.
615 Griswold, Suite 1116
Detroit, Michigan 48226
(313) 963-3377

_____/

DAVIS, ROBERT v HUMPHREY, DEBRA J
Hon. Amy P. Hathaway    06/22/2010

10-007095-AW

## ORDER OF THE COURT

At a session of the Court on NOV -8 2010
Honorable AMY HATHAWAY, Circuit Court Judge

    This matter having come before the Court on Defendant/Counter Plaintiff's Motion for Attorney Fees, Sanctions and Restrictive Order and the Court being advised:

    IT IS ORDERED that the Plaintiff-Counter Defendant, ROBERT DAVIS, must post a bond of One Thousand dollars prior to filing any action as a Plaintiff in the Third Judicial Circuit Court.

    IT IS FURTHER ORDERED that the Motion for Attorney fees is denied as premature and is reserved for later consideration.

    IT IS FURTHER ORDERED that the Motion for Sanctions is DENIED.

A TRUE COPY
CATHY M. GARRETT
WAYNE COUNTY CLERK

AMY P. HATHAWAY
CIRCUIT COURT JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

_____
Peggy K. Madden (P39308)

_____
Jehan Crump-Gibson (P73178

BOS/CD-502 (Rev. 04/11)

## MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
## BUREAU OF COMMERCIAL SERVICES

| Date Received | | |
|---|---|---|
| JUN 2 0 2012 | This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document. | **FILED** JUN 2 1 2012 Administrator BUREAU OF COMMERCIAL SERVICES |

Name Robert Davis

Address 180 Eason

City Highland Park State MI ZIP Code 48203

↪ Document will be returned to the name and address you enter above. ↩
If left blank, document will be returned to the registered office.

EFFECTIVE DATE:

**71073X**

### ARTICLES OF INCORPORATION
For use by Domestic Nonprofit Corporations
(Please read information and instructions on the last page)

Pursuant to the provisions of Act 162, Public Acts of 1982, the undersigned corporation executes the following Articles:

### ARTICLE I

The name of the corporation is:

Citizens United Against Corrupt Government

### ARTICLE II

The purpose or purposes for which the corporation is organized are:

This civic nonprofit organization is organized for the purpose of promoting and ensuring a corrupt-free and law-abiding government through social and legal/court actions aimed at eliminating unlawful actions by all governmental officials and representatives on all levels of government.

### ARTICLE III

1. The corporation is organized upon a _____ Nonstock _____ basis.
(Stock or Nonstock)

2. If organized on a stock basis, the total number of shares which the corporation has authority to issue is _____ N/A _____ If the shares are, or are to be, divided into classes, the designation of each class, the number of shares in each class, and the relative rights, preferences and limitations of the shares of each class are as follows:

$20.00 CAM 59884

## ARTICLE III (cont.)

3. a. If organized on a nonstock basis, the description and value of its real property assets are: (if none, insert "none")

None

b. The description and value of its personal property assets are: (if none, insert "none")

None

c. The corporation is to be financed under the following general plan:

With the personal funds of Robert Davis, its incorporator, and with voluntary donations and fundraisers.

d. The corporation is organized on a _Directorship_ basis.
(Membership or Directorship)

## ARTICLE IV

1. The name of the resident agent at the registered office is:

Robert Davis

2. The address of its registered office in Michigan is:

180 Eason     Highland Park , Michigan 48203
(Street Address)     (City)     (ZIP Code)

3. The mailing address of the registered office in Michigan if different than above:

_____ , Michigan _____
(Street Address or PO Box)     (City)     (ZIP Code)

## ARTICLE V

The name(s) and address(es) of the incorporator(s) is (are) as follows:

| Name | Residence or Business Address |
|------|-------------------------------|
| Robert Davis | 180 Eason, Highland Park, Mi 48203 |
| Desmond M. White | 18453 Lauder, Detroit, Mi 48235 |

Use space below for additional Articles or for continuation of previous Articles. Please identify any Article being continued or added. Attach additional pages if needed.

I, (We), the undersigned, sign my (our) name(s) this _19th_ day of _June 2012_ _2012_

_Desmond M. White_

CLASSIFIEDS: CARS   JOBS   HOMES   APARTMENTS   CLASSIFIEDS   SHOPPING   E-CIRCULARS   DAILY DEALS   ADVERTISE   SUBSCRIBE

| News | Sports | Autos | Business | Life | Entertainment | Opinion | USA Today |

MORE:   Surviving Cancer: A special section   Marathon   eEdition   Detroit bankruptcy

Find what you are looking for ...        SEARCH

Compare Assisted Living
assistedliving.com
Find Assisted Living in Your Area. Local Advisors - Free Referrals.
ADVERTISEMENT

# Activist Robert Davis pleads guilty to stealing money from Highland Park

7:32 PM, September 2, 2014

Recommend   Sign Up to see what your friends recommend.

A A



Activist Robert Davis pleaded guilty on Tuesday, Sept. 2, 2014 to stealing from the Highland Park school district. / Regina H. Boone/Detroit Free Press



By Tresa Baldas
Detroit Free Press Staff Writer

FILED UNDER

Local News
Wayne County

In a surprising move, serial litigator Robert Davis — who repeatedly tried to block an emergency manager from taking over Detroit — pleaded guilty to two federal crimes this morning, just hours after the city's bankruptcy trial got under way.

Davis, 34, a Detroit area labor activist, pleaded guilty to federal program fraud, admitting he embezzled nearly $200,000 from the struggling Highland Park School District through a phony invoice scheme he ran. He also pleaded guilty to filing a false tax return for not reporting his ill-gotten gains on his taxes.

"Any betrayal of the public trust is deplorable, but stealing from schools is the most reprehensible kind of corruption because it robs children of their education," U.S. Attorney Barbara McQuade said today.

ADVERTISEMENT
ADVERTISEMENT

michigan.com   Now Hiring

FEATURED JOBS THIS WEEK

I.T. Positions
Systems Technology
Group, Inc.
Troy, MI

Extrusion Operator
CoolSeal, USA.
Detroit, MI

Driver
Premier Transportation
Detroit, MI

HVAC TECH
Warren, MI

PREVIOUS   NEXT

IN PARTNERSHIP WITH:
careerbuilder.com

Recruiters, showcase your positions here.

Sponsored Links


**LifeLock® Services**
LifeLock Searches Over A Trillion Data
Points Every Day
LifeLock.com


**Odd Trick Fights Diabetes**
"Unique" Proven Method To Control Blood
Sugar In 3 Weeks. Watch Video
Smart-Consumer-Lifestyles.com


**Visa® Black Card™**
Luxury Without Limits Only With the
Stainless Steel Visa® Bl...
www.blackcard.com

ADVERTISEMENT

Davis, a former president of the Highland Park School Board, was indicted in 2012 on charges he used his position to steer school funds to two of his associates, who then steered the money back to him. The indictment said Davis gave one company nearly $400,000 in public funds for a ghost advertising campaign that the government says was a front to steal from the school system.

Davis could get 18-24 months in prison under sentencing guidelines outlined in his plea deal. Davis also will have to pay restitution, though the amount has not been determined.

Davis' lawyer, meanwhile, plans to seek probation so that his client can stay in the community and continue to work.

"We anticipate that his commitment to repay restitution can be accomplished only if he is gainfully employed," said attorney Douglas Mullkoff.

Davis pleaded guilty before U.S. District Judge Arthur Tarnow at 11:30 a.m., a few hours after the highly anticipated bankruptcy trial started. While the guilty plea hearing was not scheduled, Davis opted to enter his plea during another hearing he had set for today

Prior to pleading guilty, Davis asked the judge in a court filing to let him keep his job with the American Federation of State, County and Municipal Employees so that he can care for his 9-year-old son and pay off his restitution.

Under federal law, a person convicted of embezzlement or grand larceny is prohibited from working for a union. Davis, though, who has worked for a union for nearly 13 years, argues that his job is his only source of income. Currently, Davis is a union staff representative who files grievances and arbitrations on behalf of union members and helps negotiate contracts.

"Critically, there is no indication that Mr. Davis did anything harmful to the union or its members," Mullkoff wrote in the filing. "Mr. Davis' employment with the union ... was wholly unrelated to his actions as a Highland Park school board member."

Moreover, he wrote: "It was Mr. Davis' union activism that many credited for the successful repeal of the unpopular emergency manager law."

Mullkoff said he expects a decision soon as to whether Davis can keep his union job.

Today's guilty plea comes three years after the Free Press exposed Davis' ties to a controversial $400,000 radio ad campaign that was intended to attract students to the Highland Park school district.

The company that received nearly $400,000 from 2007 to 2010 was Zenoco, a Macomb County start-up that was supposed to oversee

the advertising campaign. But Zenoco, the Free Press reported, had no formal contract during its four-year run with Highland Park schools, and its services never were formally approved by the school board.

School officials said they couldn't prove the ad campaign existed. There was no contract, no school board approval and no apparent oversight of how the money was spent, Free Press reporting found in 2011.

But attorney Carl Marlinga, who also has represented Davis, once argued that no money was lost to the district and that the ad program generated an initial $28 million or more for the district.

"The program was real," Marlinga told the Free Press in 2012. "We'll have the records and testimony to support that. It was a very wise investment."

Davis denied wrongdoing in the past. He said that the indictment might have been related to his efforts to block Detroit's financial consent decree or imposition of a financial manager.

"I have a lot of political enemies," Davis said in 2012. "I look forward to defending my name."

Davis will be sentenced Dec. 9.

*Contact Tresa Baldas: 313-223-4296 or tbaldas@freepress.com*

**TOP VIDEO PICKS**
selected by Taboola



Snyder talks Detroit: DPS, bankruptcy.
Oct 2, 2014



'Breaking Bad killer' pleads guilty to murder
Sep 30, 2014



1 dead after pedestrian overpass collapses on ...
Sep 28, 2014

**YOU MIGHT BE INTERESTED IN**

About Mitch Albom

Lottery results for Saturday, September 27 for Michigan

LLOYD CARR RETIREMENT AND MICHIGAN COACHING SEARCH...

May 25, 2004: Army Pfc. Richard Rosas

Serial rapist in Detroit

Whirlpool Duet WFW88HEAC Washing Machine Review (Washer Dryer Info)

**SPONSORED LINKS**

Babysitter Arrested for Stabbing Dad Who Turned Down... (Stirring Daily)

10 Worst Women To Ever Walk The Earth (RantLifestyle)

Driven to Laughter – 16 Hilarious Road Signs (Reader's Digest)

20 Legal Activities Many Think Are Illegal (RantLifestyle)

The 13 Most Dangerous Cities In America (TheStreet)

When Did the "Baseball Tonight" Crew Become Such... (Outbrain)                        [?]

**SPONSORED LINKS**                                                        by Taboola



Paulina Gretzky Shares All Behind The Scene...
Golf Digest



3 Ways To Test For Hepatitis-C
WebMD



Please Don't Retire At 62. Here's Why.
The Motley Fool

---

NIGHTLIFE              SUBSCRIBE!    MICHIGAN NEWS



Bacon Bash 2014



Sign up for home delivery today.

Aramark worker arrested after 5 inmates found with heroin, other drugs

Trial opens in newlywed accused of killing Iranian wife in U.P.

2nd trial begins for Detroit officer in death of Aiyana Stanley-Jones

Drive-through viewing window opens at Saginaw funeral home

Tennessee man arrested in 2008 Michigan rape case

ADVERTISEMENT

Site Map | Back to Top

| NEWS | SPORTS | AUTOS | BUSINESS | USA TODAY | FOLLOW US |
|------|--------|-------|----------|-----------|-----------|
| LIFE | ENTERTAINMENT | OPINION | | | Twitter |
| | | | | | Facebook |
| | | | | | Mobile |
| | | | | | RSS |
| | | | | | E-mail Alerts |

News | Jobs | Cars for Sale | Homes for Sale | Apartments for Rent | Shopping | Classifieds | E-Circulars | Daily Deals



GANNETT

Copyright © 2014 archive.freep.com. All rights reserved.
Users of this site agree to the Terms of Service, Privacy Notice/Your California Privacy Rights, and Ad Choices

✻ ✻ ✻ Communication Result Report ( Oct. 8. 2014 1:23PM ) ✻ ✻ ✻

1)
2)

Date/Time: Oct. 8. 2014 1:20PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 0548 | Memory TX | 15173469888 | P. 8 | OK | |

-------------------------------------------------------------------

```
Reason for error
    E. 1) Hang up or line fail          E. 2) Busy
    E. 3) No answer                     E. 4) No facsimile connection
    E. 5) Exceeded max. E-mail size     E. 6) Destination does not support IP-Fax
```

TO: L HARRIS
517-346-9888
Dept of Human Svcs