UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

```
-------------------------------------------------------------x
                                            :
In re                                       : Chapter 9
                                            :
CITY OF DETROIT, MICHIGAN,                  : Case No. 13-53846
                                            :
            Debtor.                         : Hon. Steven W. Rhodes
                                            :
                                            :
-------------------------------------------------------------x
```

### FINANCIAL GUARANTY INSURANCE COMPANY'S MOTION IN RESPONSE TO THE CITY OF DETROIT'S MOTION IN *LIMINE* TO EXCLUDE DEPOSITION TESTIMONY OF GARY EVANKO AND MICHAEL HALL

1. Financial Guaranty Insurance Company ("FGIC") submits this response to the City of Detroit's (the "City") Motion in *Limine* to Exclude Deposition Testimony of Gary Evanko and Michael Hall (the "Motion"). Pursuant to Federal Rule of Civil Procedure 32(a)(3), FGIC is entitled to rely on the deposition testimony of an adverse party's "officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)" for any purpose. Although the City attempts to diminish the seniority and responsibilities of Mr. Evanko and Mr. Hall by characterizing them as "mid-level employees," both testified that they are vested with significant managerial responsibilities and that they had knowledge of facts related to actions within their respective departments that are directly relevant to material issues in these proceedings. Thus, even if Mr. Evanko and Mr. Hall were located only one block away from the courthouse, FGIC may rely on their deposition testimony under Rule 32(a)(3) for *any* purpose. Alternatively, FGIC is entitled to rely on the deposition testimony of these witnesses because their statements qualify as admissions under Federal Rule of Evidence 801(d)(2)(D).

# ARGUMENT

## I. The Deposition Testimony is Admissible Pursuant to Federal Rule of Civil Procedure 32 Because the Deponents Are Managing Agents

2. Even when a witness is available, Rule 32 permits the use of depositions in court proceedings for *any purpose* where the deponent "was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 32(a)(3); *see also Bianco v. Glogus Med., Inc.*, No. 2:12-cv-00147, 2014 WL 977686, at *1 (E.D. Tex. Mar. 6, 2014) ("A deposition falling within the scope of Rule 32(a)(3) is admissible regardless of whether the person deposed is unavailable to testify at trial."). In *Brandon v. Art Centre Hospital (Osteopathic)*, the Sixth Circuit defined a managing agent as anyone that:

> (1) Acts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs (as distinguished from a common employee, who does only what he is told to do; has no discretion about what he can or cannot do; and is responsible to an immediate superior who has control over his acts);
>
> (2) Can be depended upon to carry out his principal's directions to give testimony at the demand of a party engaged in litigation with his principals; and
>
> (3) Can be expected to identify himself with the interests of his principal rather than those of the other party.

366 F.2d 369, 372 (6th Cir. 1966) (internal citation omitted).

3. Additionally, in *Stacey v. ZF Lemforder Corp.*, the Eastern District of Michigan made it clear that substance rules over form; thus, the witnesses' title is not as instructive as their day-to-day work functions. No. 05-CV-72777-DT, 2007 WL 201018, at *2 (E.D. Mich. Jan. 23, 2007) ("managing agent should not be given too literal an interpretation"). More specifically, "[c]ourts generally hold that whether a proposed deponent is a managing agent is 'dependent largely on the functions, responsibilities and authority of the individual involved respecting the subject matter of the litigation.' Thus, '[w]hether a proposed deponent falls into a particular

category of employees or agents is therefore less relevant than the individual's specific functions and authority.'" *Id.* (internal citations omitted) (finding auditors to be managing agents because they had authority to investigate activities of plaintiffs and make conclusions based on those investigations.); *see also Jones v. John Hancock Mut. Life Ins. Co.*, 416 F.2d 829, 833 (6th Cir. 1969) ("Since Crouse [an insurance agent] was not a common employee without discretionary authority, but could be expected to carry out his principal's directions to give testimony for a party and to identify with the principal's interest, he met the 'managing agent' test set.").

4. The City argues that "only public officials such as the Mayor, City Council and other elected or appointed officials" would qualify under Rule 32(a)(3). Mot. at 4. This argument flies in the face of Sixth Circuit precedent and completely misses the mark. The inquiry as to whether an employee qualifies as a managing agent is not merely centered on the deponent's ability to bind the City, but considers "the employee's responsibilities with respect to the subject matter of the litigation" and whether "any person or persons higher in authority than the deponent were in charge of the particular matter or possessed all of the necessary information." *Bianco*, 2014 WL 977686, at *2 (finding that vice president of sales qualified as managing agent because he had a significant level of responsibility, autonomy in his position, and the most knowledge as to the issues giving rise to the litigation); *Stacey*, 2007 WL 201018, at *3 (finding that although deponent was not technically a managing agent in the corporate hierarchy, he was a managing agent for the purpose of giving testimony regarding the issues in the litigation). Thus, the term "managing agent" should not be (and is not) "limited to persons in the upper management." *Bianco*, 2014 WL 977686, at *2.

5. Here, the deponents themselves explained that their duties empowered them with the ability to exercise independent judgment and discretion, their interests are aligned with the

3

WEIL:\95114407\4\45259.0007
13-53846-tjt    Doc 7909    Filed 10/09/14    Entered 10/09/14 19:38:02    Page 3 of 10

City, and they have managerial responsibility within their respective departments. For instance, Michael Hall, the Director of Labor Relations for the City, stated that he was responsible for the administration and negotiation of labor agreements for the City. Hall Dep. Tr. at 40:22-41:24; 46:7-11.[1] In fact, he described himself as the lead negotiator on behalf of the City:

> Q. Since you became director of labor relations, have you also been involved in the negotiations with all of the City's unions?
> A. Yes.
> Q. What has your role been in those negotiations, meaning where do you fit, are you the lead negotiator for the City?
> A. Lead negotiator for the City, yes. Lead negotiator for the negotiations, our negotiations are really being headed up by the Jones Day team.
> Q. Okay. So you're the – you're the City contact with respect to collective bargaining agreement negotiations, correct?
> A. That's correct.
> …
> Q. Okay. So your role is principally consulting with the Jones Day lawyers about how the negotiations are going?
> A. And sometimes directly at the table.
> Q. And at some times you're directly there?
> A. Right.
> Q. Okay. So it's either you're talking to them about what they're talking about with the union's lawyers or you're in a meeting as a principal with the union's principal and counsel?
> A. Correct.

Hall Dep. Tr. at 104:9-22; 105:3-13. As the "lead negotiator" and "principal," Mr. Hall had the ability to represent the City and exercise his independent discretion, which are traditional characteristics of managing agents.

      6.     Further, Mr. Hall served as the interim Director of Human Resources. *Id.* at 54:9-12. As Director, he was responsible for the hiring, transferring, promoting and general staffing for the City, and managed 93 people in the Human Resources department in that role. *Id.* at 56:9-14; 58:14-24. Part of this job required him to: (1) "keep [his] finger on the pulse of the

---

[1] Attached as Exhibit A are excerpts from the July 2, 2014 Deposition Transcript of Michael Hall.

4

city's workforce;" (2) "be on top of issues that are affecting the City's ability to retain employees;" (3) "be on top of issues that are affecting the city's ability to hire new employees;" (4) "be on top of issues that are affecting employee morale of the City employees;" and (5) "be on top of issues that are affecting the effectiveness of City employees." *Id*. at 59:20-61:14. FGIC intends to submit deposition testimony from Mr. Hall on these topics, for which he has authority and knowledge.

7. Similarly, Gary Evanko, the City's Chief Assessor, stated that he shares responsibility for the management of his department[2] and is solely responsible for the valuation of property within the City. Evanko Dep. Tr. at 22:8-14.[3] Indeed, Mr. Evanko is "the only Level 4 assessor in the Detroit Assessor's Office." *Id*. at 22:16-17. He further described his responsibilities as follows:

> A. An assessor's office obviously has the responsibility to value property. And in fact, it is the assessor's responsibility to value every property within the jurisdiction that's not specifically exempt, both real and personal property. The Assessor's Office is also responsible for administering the procedures prescribed by the General Property Tax Act and other related statutes that involved the valuation and taxation of property.

*Id*. at 50:12-20. Mr. Evanko is also the person most knowledgeable as to future tax revenues in the City. *Id*. at 204:21-205:6. As such, FGIC intends to submit deposition designations from Mr. Evanko on topics for which he is directly responsible, including, for example his "responsibilit[y] [] to proceed with a general reappraisal of the city of Detroit." Evanko Dep. Tr. at 39:5-9.

---

[2] The mere fact that another person manages a different portion of the department alongside Mr. Evanko, *see* Mot. at 5, does not render Mr. Evanko any less of a managing agent as to the areas for which he is independently responsible.

[3] Attached as Exhibit B are excerpts from the June 24, 2014 Deposition Transcript of Gary Evanko.

8.     It is clear that the specific work functions of Mr. Hall and Mr. Evanko – which empower them to exercise substantial authority and discretion on behalf of the City – squares directly with the Sixth Circuit's definition of "managing agent."  *Brandon*, 366 F.2d at 372. Focusing the inquiry, as the City suggests, solely on whether the deponents are publicly elected or appointed officials so that they are "accountable to the public for their decisions," *see* Mot. at 4, would result in an unnecessarily restrictive application of Rule 32 that has no basis in law.  *Id*. at 372 (focusing on whether the deponent exercises discretion and identifies with the interest of his employer); *Stacey*, 2007 WL 201018, at *2 (finding that the magistrate judge erred by "plac[ing] too much emphasis on whether the employees were general 'decision-makers' of Defendant, rather than looking as a whole at their functions, responsibilities and authority, particularly with respect to the subject matter of this litigation").

## II.    The Deposition Testimony Is Also Admissible Pursuant to Federal Rule of Evidence 801 Because the Testimony Is An Admission of a Party Opponent

9.     Federal Rule of Evidence 801(d)(2)(D) provides an independent basis by which the Court can admit the deposition designations proffered by FGIC because "the testimony relates to areas covered by the deponents' employment."  *In re Hayes Lemmerz Int'l, Inc*., 340 B.R. 461, 468-9 (D. Del. 2006) (noting that "Rule 32 is not the exclusive means by which depositions can be admitted" and admitting the deposition testimony of employees that did not qualify as managing agents because their testimony qualified as an admission).  Specifically, Rule 801(d)(2)(D) provides that a statement is not hearsay when it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship while it existed."  Despite the City's argument to the contrary, the court in *Hayes* held that "if deposition testimony is otherwise admissible under Rule 801(d)(2)(D), it should not be excluded simply because the witness is available."  *In re Hayes*, 340 B.R. at 468; *see also*

6

*Rule v. Int'l Assoc. of Bridge, Structural and Ornamental Ironworkers, Local Union No. 396*, 568 F.2d 558, 569 n.17 (8th Cir. 1977) ("no showing of unavailability is necessary when the deponent is an agent or servant of a party opponent and makes a statement concerning a matter within the scope of his agency or employment during the existence of that relationship").[4]

10. As discussed *supra*, both Mr. Hall and Mr. Evanko were questioned regarding matters within the scope of their employment. Accordingly, their statements are further admissible as admissions against the City.

### III. The City's Failure to Cross-Examine the Witnesses Does Not Prevent FGIC From Relying on Their Testimony

11. Finally, consistent with the purpose of depositions, FGIC deposed the witnesses with the intent of preserving their testimony for use in trial.[5] The City's complaint that they did not cross-examine the deponents during their depositions is a creature of their own tactical decision, since they had the opportunity, but chose not to cross-examine the deponents. Mot. at 6. In *Allgeier v. United States* – a case the City relies on – the Sixth Circuit rejected a party's claim of prejudice from the admission of deposition testimony because that party was denied its full opportunity to cross-examine the deponent. 909 F.2d 869, 876-7 (6th Cir. 1990). Further, the City cannot now contest FGIC's reliance on deposition testimony when this Court's Second Amended Joint Pretrial Order, dated September 9, 2014, specifically states that the parties are permitted to "offer the testimony of some of their witnesses by deposition testimony." *See* Second Amended Joint Pretrial Order, Section VI(A)(2). The City was fully aware of the availability of parties using deposition designations and their failure to cross-examine the

---

[4] This Court permitted the admission of video testimony by Mr. Kevyn Orr under Rule 801(d)(2)(D) even though he testified live.

[5] Hall Dep. Tr. at 190:18-19 (declining to cross-examine the witness); Evanko Dep. Tr. at 266:14-16 (same).

deponents during deposition should not prevent FGIC from exercising its right to designate testimony, per this Court's order.[6]

12. WHEREFORE, FGIC respectfully requests that the Court enter an Order denying the City's Motion in *Limine* to Exclude the Deposition Testimony of Gary Evanko and Michael Hall.

---

[6] Regardless, FGIC's intent to rely on the deposition testimonies does not foreclose the City from calling the witnesses live to conduct a cross-examination.

8
WEIL:\95114407\4\45259.0007
13-53846-tjt    Doc 7909    Filed 10/09/14    Entered 10/09/14 19:38:02    Page 8 of 10

Dated: October 9, 2014

*/s/ Alfredo R. Pérez*
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1700
Houston, TX 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: alfredo.perez@weil.com

– and –

Edward Soto
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Telephone: (305) 577-3177
Email: edward.soto@weil.com

-and-

Ernest J. Essad Jr.
Mark R. James
WILLIAMS, WILLIAMS, RATTNER &
PLUNKETT, P.C.
280 North Old Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: (248) 642-0333
Facsimile: (248) 642-0856
Email: EJEssad@wwrplaw.com
Email: mrjames@wwrplaw.com

*Attorneys for Financial Guaranty Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

```
-------------------------------------------------------x
                                          :
 In re                                    : Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                : Case No. 13-53846
                                          :
                Debtor.                   : Hon. Steven W. Rhodes
                                          :
                                          :
-------------------------------------------------------x
```

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2014 the *Financial Guaranty Insurance Company's Motion in Response to the City of Detroit's Motion in Limine to Exclude Deposition Testimony of Gary Evanko and Michael Hall* was filed and served via the Court's electronic case filing and noticing system to all registered users that have appeared in this main Chapter 9 proceeding.

                                                      /s/ Alfredo R. Pérez
                                                    Alfredo R. Pérez
                                                    WEIL, GOTSHAL & MANGES LLP
                                                    700 Louisiana Street, Suite 1700
                                                    Houston, TX 77002
                                                    Telephone: (713) 546-5000
                                                    Facsimile: (713) 224-9511
                                                    Email: alfredo.perez@weil.com

Dated: October 9, 2014                       *Attorney for Financial Guaranty Insurance Company*