UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | Chapter 9 |
| Debtor | Hon. Steven W. Rhodes |

**MACOMB INTERCEPTOR DRAIN DRAINAGE DISTRICT'S
MOTION TO EXTEND RESPONSE DEADLINE TO MOTION FOR
SUMMARY JUDGMENT (I) PURSUANT TO RULE 56(d) OF THE
FEDERAL RULES OF CIVIL PROCEDURE OR (II) DUE TO
CIRCUMSTANCES OF CHAPTER 9 CASE**

The Macomb Interceptor Drain Drainage District (the "MIDDD"), a creditor and party in interest in the above-captioned Chapter 9 bankruptcy case, hereby submits this motion to extend MIDDD's response deadline on the *Motion for Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056 Submitted in Further Support of its Objection to Macomb Interceptor Drain Drainage District's Claim No. 3683* [Docket No. 7885] (the "Summary Judgment Motion") filed by the City of Detroit (the "City") and, in support thereof, respectfully states as follows:

**JURISDICTION AND VENUE**

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 USC § § 1408 and 1409.

**RELIEF REQUESTED**

The City filed the 41-page Summary Judgment Motion, along with nearly 1000 pages of exhibits, on October 8, 2014. In connection with that filing, the City filed a "Notice of

Opportunity to Respond" (see Exhibit 2 to Summary Judgment Motion) (the "Notice of Motion"), stating that a written response or an answer must be filed within 14 days of the filing of the Summary Judgment Motion, rather than the 21-days required for responses to dispositive motions under the Local Rules for the United States District Court for the Eastern District of Michigan (the "District Court Local Rules").[1] Although the Court has stated that dispositive motions based on legal issues may be brought promptly, the Summary Judgment Motion goes far beyond a request to decide purely legal issues and relies on numerous material factual assertions that MIDDD disputes, including many of the factual assertions in the "Statement of Legal Proceedings" and "Statement of Facts" sections of the Brief in Support of the Summary Judgment Motion (the "City Brief"). To name just a few[2]:

- The City states that "[a]t no time prior to the signing of the Macomb Acquisition Agreement were any representations made that the costs associated with the Project or any other item in Schedule 3.8 were 'fair and reasonable.'" Brief at 11. MIDDD disputes that no such representations were made.

- The City states that "the City was unaware of excessive charges for 2004-2005 Project Costs until the December 2010 indictment." Brief at 12. MIDDD asserts that statement is patently false.

---

[1] As the City argued its *ex parte* motion for authorization to file the Summary Judgment Motion in excess of page limits [Docket No. 7884] (the "Page Limit Motion"), the local rules of this Court (the "Local Bankruptcy Rules") expressly incorporate the District Court Local Rules. See Local Bankruptcy Rule 9029-1(a); Page Limit Motion at 2. As the City further points out, District Court Local Rule 1.1(c) provides that, in the absence of a "specific" applicable Local Bankruptcy Rule, "the general provisions [of the District Court Local Rules] apply." See District Court Local Rule 1.1(c); Page Limit Motion at 2. Although the Local Bankruptcy Rules, and in particular Rule 9014-1, provide general rules for motion procedure in this Court, the Local Bankruptcy Rules provide no specific rule with respect to dispositive motions. On the other hand, LR 7.1(e)(1) of the District Court Local Rules provides that "a response to a dispositive motion [which includes a motion for summary judgment] must be filed within 21 days after service of the motion." Thus, pursuant to Local Bankruptcy Rule 9029-1(a) and District Court Local Rule 1.1(c), the specific LR 7.1(e) would govern over the general Local Bankruptcy Rule 9014-1. Accordingly, the applicable rules provide that MIDDD has at least 21 days to respond to the Summary Judgment Motion. Presumably, the asserted 14-day deadline in the Notice of Motion is based on Rule 9014-1(b) of the Local Bankruptcy Rules, entitled "Motion Procedure Generally."

[2] The list of factual disputes provided herein is illustrative only. Failure to include a specific fact on the list is not an admission that such fact is not disputed, nor is the inclusion of this list herein a waiver of any arguments regarding any factual or legal aspect of the MIDDD's claims against the City.

2

- The City assumes that MIDDD had the "ability to undertake due diligence prior to the Global Settlement and Acquisition Agreements." Brief at 12. MIDDD asserts that, notwithstanding its representations to the contrary, the City did not make all relevant information available to MIDDD and failed to disclose relevant information.

- The City argues that MIDDD's claims are barred due to waivers in the September 2, 2010 Settlement Agreement and the Global Settlement Agreement. Brief at 15-17. MIDDD disputes that the waivers encompass the MIDDD Claims. If and to the extent they do, MIDDD asserts that the City fraudulently induced MIDDD to enter into the Acquisition Agreement by misrepresenting material facts, omitting to disclose information that it agreed it would disclose, and thus fraudulently induced MIDDD's entry into the relevant settlement agreements.

- The City's res judicata and issue preclusion arguments are based on an assertion that the City and MIDDD were adverse in the District Court case. MIDDD disputes this assertion.

- The City's arguments against MIDDD's breach of contract claims assume, among other things, that (i) the Kilpatrick criminal case did not question the validity of the Acquisition Agreement and (ii) the City did not receive notice of the Kilpatrick criminal case until the filing of the First Superseding Indictment. Brief at 20-23. MIDDD disputes these material factual assertions.

- The City's argument regarding parol evidence asserts that the fraudulent misrepresentations at issue do not invalidate the merger clause or the entire contract. Brief at 26. MIDDD disputes these assertions.

- In support of the City's arguments against the use of parol evidence and MIDDD's ability to prove fraud, the City asserts that MIDDD's reliance on certain misrepresentations was not reasonable. MIDDD asserts that the City deliberately misrepresented the reasonableness of the repair costs and restricted access to information that would have exposed the overcharges, and thus its reliance was reasonable.

For these and other reasons identified in the *Affidavit of Raechel M. Badalamenti Pursuant to Fed. R. Civ. P. 56(d)* (the "<u>Badalamenti Affidavit</u>") (attached hereto as Exhibit A),[3] the Summary Judgment Motion is exactly the type of fact-based motion that the Court has stated is "unlikely … [to] assist in the resolution of this matter." See Tr. H'rg. 10/1/2014, 78:25-79:3. Moreover, decisions on summary judgment motions prior to allowing the plaintiff a full

---

[3] The Badalamenti Affidavit is incorporated by reference as if fully set forth herein.

opportunity to conduct discovery are strongly disfavored. See e.g., White's Landing Fisheries, Inc. v. Buchholzer, 29 F.3d 229, 231-232 (6th Cir.1994) ("It follows that a grant of summary judgment is improper if the non-movant is given an insufficient opportunity for discovery."). Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, made applicable in bankruptcy cases through Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure, the Court has discretion to (1) defer considering the Summary Judgment Motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order. As the Sixth Circuit has held, the benefits of summary dispositions of claims "are undermined if it is employed in a matter that offends fundamental fairness." See id. This is such a case.

MIDDD submits that the Court can and should deny the Summary Judgment Motion without a response, subject to the City's ability to re-file the Summary Judgment Motion after the close of discovery. To the extent, however, that the Court believes motions for summary judgment are appropriate with respect to this matter and at this stage, MIDDD's deadline for responding to the Summary Judgment Motion should be no earlier than five (5) days after the close of discovery, which is April 6, 2015. As the Court is aware, the discovery taken in connection with MIDDD's motion for temporary allowance of its claim was significantly limited, and, as set forth the Badalamenti Affidavit, MIDDD requires additional discovery through the process ordered by the Court in its Scheduling Order dated October 6, 2014 [Docket No. 7836] to fully develop the facts and flesh out its responses to the many disputed factual assertions. As set forth in the Badalamenti Affidavit, MIDDD still must take depositions of, among others, (a) current and former DWSD employees and officials including Victor Mercado, who was the Director of the Detroit Water & Sewerage Department (DWSD) at the relevant time but unavailable due to incarceration in Florida during the initial discovery time-period; Matthew

4

Schenk, who was Chief Operating Officer of the DWSD when Detroit settled certain overcharge claims asserted against several contractors involved in the 15 Mile Road sewer repair project (the "Project"); Edward Keelan who was corporation counsel for Detroit at all relevant times and now known to be the individual that facilitated discussions between federal investigators and Detroit beginning in 2008; Pamela Turner who was the former DWSD Director and is designated as one of the individuals deemed to have "Detroit's knowledge" for purposes of the Acquisition Agreement, pursuant to paragraph 1.10 thereof; (b) Contractors involved in Project who benefited from the unlawful enterprise that was actively concealed from MIDDD prior to execution of the Acquisition Agreement that is in issue in this case including Inland Waters and L. D'Agostini & Sons; (c) Detroit officials who internally investigated the allegations of misconduct in the DWSD and/or regarding overcharges on DWSD CS-1368; and (d) experts on both sides who have yet to even be identified.

In addition, the City still must produce documents and tangible things including, among others, (a) documents related to the government investigation and the lack of disclosure of that investigation to MIDDD in light of the 2009 letter of intent in which the City agreed to "[p]romptly notify [MIDDD] of any governmental, regulatory, or third party complaints, claims, investigations or hearings (or communications indicating that the same may be contemplated);" (b) Detroit's complete files regarding CS-1368 including internal and external communications, including emails, pay requests, pay dispute notices, meeting minutes, pricing change notices, phone and text logs and any internal or external investigation of purported overcharges or unlawful activity in connection therewith; (c) contractors' complete files for the Project which may confirm Detroit's pre-2010 knowledge of the criminal enterprise and/or approval and participation therein, the differential between what the Project should have cost and what was

charged by way of amendments and costing supplements that were approved by Detroit's officials; and (d) communications, emails, drafts, notices and other documents related to Detroit's settlement with several contractors on the Project which settlements were retained by Detroit and are the subject of, among others, MIDDD's claim for unjust enrichment. Given that significant additional discovery is crucial to MIDDD's ability to demonstrate the existence of disputed factual issues, the Court should exercise its discretion to allow the parties to conduct further discovery before requiring a response to the Summary Judgment Motion.

Even if the Court believes that an earlier response is warranted, it should not countenance the City's attempt to force MIDDD to respond to a dispositive motion on an unreasonably truncated 14-day time frame. Thus, MIDDD requests that the Court set a deadline for a response to the Summary Judgment Motion of no less than 30 days[4] from the date of filing of that motion. The Court has discretion to grant such extension pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure.

A further extension of the 21-day period under the applicable local rules (see n.1, supra) is appropriate given the circumstances of the City's Chapter 9 Case. As noted, the Summary Judgment Motion is 41 pages and includes nearly 1000 pages of exhibits, requiring significant effort to formulate responses, especially with the limited discovery materials currently available to MIDDD.

Further, the equities favor extending MIDDD's response deadline. MIDDD has been an active participant in the confirmation hearing, and has obligations to continue preparation with respect to the remaining evidence and closing arguments in that hearing. Even in the unlikely event that the Court could consider and rule on the Summary Judgment motion prior to the end

---

[4] As the Court may recall, on June 25, 2014, it ordered that the City file a detailed amended objection to the MIDDD claim by September 17, 2014. Thus, the City had nearly three months to prepare its amended objection, during which time it was likely also preparing the Motion.

of the confirmation hearing, it is doubtful that doing so would have any effect on the timing of the confirmation hearing or how that hearing is conducted. Even if the Court were to rule against MIDDD on summary judgment, MIDDD would still be the holder of a disputed "claim," as that term is defined in section 101(5) of the Bankruptcy Code,[5] if it exercises its right to appeal the Court's ruling. Accordingly, because MIDDD would still have the right to object to confirmation during the pendency of an appeal, the City is unlikely to receive any benefit from an expedited resolution of the Summary Judgment Motion, and will suffer no detriment from delay.[6] Without the extension sought herein, however, MIDDD will be prejudiced by having to defend against the Summary Judgment Motion on a shortened schedule while simultaneously meeting its obligations with respect to the confirmation hearing, which is the most important component of this chapter 9 case.

Moreover, MIDDD has, in good faith, taken part in mediation with the City with respect to both the merits of the MIDDD claim and MIDDD's objection to the City's plan of adjustment. Although it is presently unknown whether that mediation will continue, MIDDD remains hopeful for the possibility of a consensual resolution of its claims and confirmation objections.

---

[5] Section 1128(b) of the Bankruptcy Code, incorporated in Chapter 9 through section 901(a), provides that "[a] party in interest may object to confirmation of a plan." 11 USC § 1128(b). Section 1109(b) of the Bankruptcy Code, also incorporated in Chapter 9 through section 901(a), provides that a nonexclusive list of parties that qualify as parties in interest, including "the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee." 11 USC § 1109(b). Courts define "party in interest" broadly to include any anyone with a financial interest in the case. See Savage & Assocs. v. K & L Gates (In re Teligent, Inc.), 640 F.3d 53, 60 (2d Cir. 2011); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1551 n.5, (11th Cir. 1990); In re Quigley Co., Inc.,391 B.R. 695, 703 (Bankr. S.D.N.Y. 2008). Even if the Court were to disallow MIDDD's claim, it would still have a financial interest in the case if it appeals the order disallowing its claim because success on appeal would allow it to share in distributions under the City's plan of adjustment. See Suravain v. Picard, 2014 WL 917091 at *2 n.2 (S.D.N.Y. March 7, 2014) (finding that it could not be said that appellants were not "persons aggrieved" for standing purposes where appellants' appeal of the order denying reconsideration of the order expunging their claims was currently pending).

[6] Even if the City could benefit from expedited resolution, it should not be afforded the opportunity to do so in light of the fact that it had nearly three months to prepare the Summary Judgment Motion but waited to file it until the eve of the conclusion of the confirmation hearing.

Requiring a response to the Summary Judgment Motion within the next ten days, however, will only serve to distract MIDDD from its consideration of a settlement.

Accordingly, if the Court requires a response to the Summary Judgment Motion prior to the close of discovery, due to the circumstances of this case, MIDDD requests that the Court allow MIDDD to file a response in no less than 30 days from the filing of the Summary Judgment Motion, which is November 7, 2014.

WHEREFORE, MIDDD requests that the Court enter an order requiring MIDDD to file a response to the Motion by no earlier than April 6, 2015 or, in the alternative, enter an order requiring MIDDD to file a response to the Motion no earlier than November 7, 2014.

Dated: October 13, 2014

DECHERT LLP

By: /s/ Allan S. Brilliant
Allan S. Brilliant
Stephen M. Wolpert
1095 Avenue of the Americas
New York, NY 10016
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
allan.brilliant@dechert.com
stephen.wolpert@dechert.com

*Attorneys for Macomb Interceptor Drain Drainage District*

Respectfully submitted,

KIRK, HUTH, LANGE & BADALAMENTI

By: /s/ Raechel M. Badalamenti (P64361)
Raechel M. Badalamenti
Robert T. Carollo Jr.
19500 Hall Road, Suite 100
Clinton Township, MI 48038
Telephone: (586) 412-4900
Facsimile: (586) 412-4949
rbadalamenti@KHLBlaw.com

*Attorneys for Macomb Interceptor Drain Drainage District*

# Exhibit A

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN | Chapter 9 |
| Debtor | Hon. Steven W. Rhodes |

## AFFIDAVIT OF RAECHEL M. BADALAMENTI
## PURSUANT TO FED. R. CIV. P. 56(d)

I, Raechel M. Badalamenti, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I am counsel of record for Macomb Interceptor Drain Drainage District ("MIDDD") as to the claim asserted against Debtor City of Detroit ("Detroit"), being originally filed as Macomb County Circuit Court Case 13-2589-CZ and now pending before this Court.

2. As this Court knows, MIDDD has asserted claims against Detroit for Breach of Contract (Acquisition Agreement), Fraud, Fraud in the Inducement, Silent Fraud and Innocent Misrepresentation and Quantum Meruit/ Unjust Enrichment.

3. This Court had the opportunity to consider the legal authorities and preliminary proofs of MIDDD and Detroit in connection with an Estimation Hearing which was held on July 17, 2014. Given the short period of time, no discovery was taken of third parties and the City only produced a limited amount of documents.

4. Pursuant to the schedule predating this hearing, counsel appeared on October 1, 2014 for a Scheduling Conference at which time the Court allowed for 6 months discovery with a Trial to occur on April 27, 2015. Also at this hearing, the Court stated:

"With regard to dispositive motions, I -- I think the -- that to the extent that dispositive motions are based on the legal issues that the city has raised in its objection to the claim and -- and argued when we did our estimation hearing, those can be done at any time. They don't need to wait until the end of discovery. And I — and I would encourage you to pursue them promptly. **On the other hand to the extent that dispositive motions might be based on facts that you discovered during the discovery period, I think it's very unlikely that dispositive motions will assist in the resolution of this matter.**" Tr., p. 78-79.

5. Counsel appeared next on October 7, 2014 for Mediation with Eugene Driker. The parties did not complete the Mediation process on this date; Mr. Driker continues to facilitate discussions via telephone through the current date.

6. However, on October 8, 2014 Detroit filed a Motion for Summary Judgment pursuant to Fed. R. Bank. P. 7056, being Docket No. 7885 (the "Motion"), and a Notice [Docket No. 7885-3] that demands a response to the Motion from MIDDD within 14 days.

7. Contrary to the on-the-record directive of this Court on October 1, 2014, the Motion presents clearly factual questions for which MIDDD should be entitled to discovery before being required to respond.

8. Indeed, Fed. R. Civ. P. 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

9. To date, discovery was limited to only approximately 21 days on the issue of MIDDD's request for a Rule 3018 Temporary Allowance.

10. Depositions must still be taken of (a) Current and former DWSD employees and officials including Victor Mercado, who was the Director of the Detroit Water & Sewerage Department (DWSD) at the relevant time but unavailable due to incarceration in Florida during the initial discovery time-period; Matthew Schenk, who was Chief Operating Officer of the

DWSD when Detroit settled overcharge claims asserted against several contractors involved in the 15 Mile Road sewer repair project (the "Project"); Edward Keelan who was corporation counsel for Detroit at all relevant times and now known to be the individual that facilitated discussions between federal investigators and Detroit beginning in 2008; Pamela Turner who was the former DWSD Director and is designated as one of the individuals deemed to have "Detroit's knowledge" for purposes of the Acquisition Agreement, pursuant to paragraph 1.10 thereof; (b) Contractors involved in Project who benefited from the unlawful enterprise that was actively concealed from MIDDD prior to execution of the Acquisition Agreement that is in issue in this case including Inland Waters and L. D'Agostini & Sons; (c) Detroit officials who internally investigated the allegations of misconduct in the DWSD and/or regarding overcharges on DWSD CS-1368; and (d) Experts on both sides who have yet to even be identified.

11. Documents and tangible things must still be produced including (a) documents related to the government investigation and the lack of disclosure of that investigation to MIDDD in light of the 2009 letter of intent in which the City agreed to "[p]romptly notify [MIDDD] of any governmental, regulatory, or third party complaints, claims, investigations or hearings (or communications indicating that the same may be contemplated);" (b) Detroit's complete files regarding CS-1368 including internal and external communications, including emails, pay requests, pay dispute notices, meeting minutes, pricing change notices, phone and text logs and any internal or external investigation of purported overcharges or unlawful activity in connection therewith; (c) Contractors' complete files for the Project which may confirm Detroit's pre-2010 knowledge of the criminal enterprise and/or approval and participation therein, the differential between what the Project should have cost and what was charged by way of amendments and costing supplements that were approved by Detroit's officials; and (d)

3
13-53846-tjt  Doc 7929  Filed 10/13/14  Entered 10/13/14 18:28:19  Page 13 of 20

Communications, emails, drafts, notices and other documents related to Detroit's settlement with several contractors on the Project which settlements were retained by Detroit and are the subject of, among others, MIDDD's claim for Unjust Enrichment.

12. This discovery is relevant to several arguments raised in the Motion and therefore should be permitted under Fed. R. Civ. P. 56(d)(2).

13. More specifically, in the Motion Detroit asserts that MIDDD's claim was waived by it when it executed the September 2010 Settlement Agreement which includes a release clause. Docket No. 7885-4, Section II. However, "[a] waiver is a voluntary relinquishment of a known right." McDonald v. Farm Bureau Ins. Co., 480 Mich. 191, 204; 747 N.W.2d 811, 819 (2008). Both "waiver and estoppel are founded upon [defendant's] knowledge of facts." J.C. Wyckoff & Associates v. Standard Fire Ins. Co., 936 F.2d 1474, 1489 (6th Cir. 1991).

14. As such, the effect of any waiver or release language in the agreement between MIDDD and Detroit is subject to discovery where MIDDD's claim is based primarily on the fact that the September 2010 Settlement Agreement was procured under the guise of fraud. Binard v. Carrington, 163 Mich. App. 599, 603; 414 N.W.2d 900, 902 (1987).

15. This Court will recall that it has been shown already that Detroit was aware of a federal investigation and some serious irregularities in the execution of DWSD CS-1368 by at least spring-2008 though it failed to disclose these known-facts to MIDDD. See Shukla Designation at Docket No. 6016-11 (71:19-73:7; 80:8-81:12); Latimer Designation at Docket No. 6016-10 (13:17-14:21, 18:19-19:1). The extent of this knowledge is a **disputed issue of fact**. Also disputed is whether Detroit's officials and employees misrepresented facts to MIDDD, as attested to by MIDDD and shown in Docket No. 6098, p. 34-45. And also disputed is whether or not Detroit had an obligation to disclose the admitted-to irregularities of the

amendments and 'cost-supplements' to CS-1368 and the pending investigation during the period of due diligence. See Walter Designation at Docket No. 6016-8 (7:9:-8:12, 9:8-9:25, 11:20-13:22, 49:4-49:24, 51:3-:53:24, 56:16-56:21, 98:21-99:4); Latimer Designation at Docket No. 6016-10 (13:17-17:15, 47:20-52:12); Shukla Designation at Docket No. 6016-11 (71:19-73:7, 78:21-81:12).

16. Similarly, the City's knowledge and intent are open questions of fact which may be inferred from circumstantial evidence including the approval of suspicious invoices and efforts undertaken --- like approval of amendments and costing supplements --- to make the charges appear legitimate. Farmer v. Brennan, 511 U.S. 825, 842 (1994); Miller v. Pacific Mutual Life Insurance Company, 17 F.R.D. 121 (W.D.Mich., 1954); United States v. Jones, 641 F.3d 706, 710–11 (6th Cir. 2011) (fraudulent intent inferred from suspicious bills and lack of records for billed services); United States v. Thompson, 501 Fed.Appx. 347, 360–61 (6th Cir. 2012) (fraudulent intent inferred from timing of suspect employment relationships between a public agent and private parties, the creation of false receipts, and efforts to make a project appear legitimate); and U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 119; 313 N.W.2d 77, 85 (1981) (intent presumed where representation are made in the course of contract bargaining). With respect to the City's knowledge, MIDDD further expects discovery – including the depositions of DWSD employees interviewed and Detroit Law Department employees contacted in connection with the federal criminal investigation of the Kilpatrick enterprise -- to reveal that the City had actual knowledge of the Project overcharges relating to DWSD CS-1368 and the Macomb Acquisition Agreement. In particular, the deposition testimony of Victor Mercado is expected to reveal that the DWSD and other high ranking City Officials had knowledge of the Project overcharges and were involved in federal investigations

regarding, in part, CS-1368. This evidence precludes summary judgment of MIDDD's claims for fraud [including MIDDD's claim for silent fraud because an equitable duty to disclose exists during contract negotiations where the buyer expresses a particularized concern or directly inquires of the seller. M & D, Inc. v. W.B. McConkey, 231 Mich. App. 22, 33; 585 N.W.2d 33, 39-40 (1998)].

17. Additionally, charges itemized in the September 2010 Agreement were based on Detroit's calculation of System Debt that Detroit represented to be true and accurate. Foster Designation at Docket No. 6016-7 (26:25-27:10); Walter Designation at Docket No. 6016-8 (73:12-74:19); Macomb Acquisition Agreement at Docket No. 6016-1 (Exhibit 5, para. 1.37). However, Detroit did not know these calculations to be true or accurate. The reality is that Detroit made the representation of System Debt regardless of there being an ongoing federal investigation into DWSD contract process and the legitimacy of charges on the Project. Foster Designation at Docket No. 6016-7 (23:13-23:25, 33:1-35:12, 61:18-62:4). Further discovery is expected to reveal that Detroit knew or should have known this representation to be false when made given that Detroit had approved amendments and costing supplements that paid out almost double the original cost estimate for CS-1368 **without review**. Ibid.; Walter Designation at Docket No. 6016-8 (7:9:-8:12, 49:4-49:24, 51:3-:53:24, 56:16-56:21). MIDDD expects to retain an expert that will attest to the appropriate methodology for calculating System Debt and the illegitimacy of charges revealed by the *complete* files on CS-1368.

18. Further, the suggestion that MIDDD's claims for fraud and/or innocent misrepresentation fail because MIDDD did not 'reasonably rely' upon statements made by Detroit during due diligence given the merger clause in the September 2010 Agreement. Obviously, the reasonableness of MIDDD is a disputed question of fact that is subject to

discovery, especially considering that MIDDD and Detroit dispute the nature and extent of the 'pre-agreement' representations, the manner in which they were made and then re-confirmed in connection with execution of the Agreement, the intent and effect of the Letter of Intent that pre-dated the Agreement and MIDDD's demand for certain terms in the Agreement to allay concerns it had (for e.g. MIDDD required the term "Detroit's knowledge" to identify specific persons who could attest to the accuracy of the representations). Jacobs Designation at Docket No. 6016-9 (31:17-32:17). In reality, whether a plaintiffs' reliance on defendants' alleged misrepresentations was reasonable is a question of fact. Levin v. Arneault, Unpub., 1989 WL 223014, No. G88–237–CA (W.D.Mich. Dec. 22, 1989). This does not change merely because there is a merger clause. In fact, a merger clause in a written contract will not preclude a claim for fraud in the inducement where the plaintiff can show that it would have avoided the agreement entirely had it known that the defendant's fraudulent representations in fact were false. Custom Data Solutions, Inc. v. Preferred Capital, Inc., 274 Mich.App. 239, 243; 733 N.W.2d 102, 105 (2006). Here, Commissioner Marrocco has testified that MIDDD would not have entered into the Agreement if he had known about overcharges on the Project or that there was an open criminal investigation into the propriety of DWSD's award and administration of contracts. Marrocco Designation at Docket No. 6016-3 (84:21-85:2). At a minimum, discovery is appropriate on this issue.

19. As the Sixth Circuit has explained: [T]here is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract. It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation. It stretches the [KSL Recreation] holding too far to say that any pre-contractual factual misrepresentations made by a party to a contract are wiped

7

away by simply including a merger clause in the final contract. <u>LIAC, Inc. v. Founders Ins. Co.</u>, 222 Fed.Appx. 488, 493 (6th Cir. 2007). To this end, the City's intent not to perform the express promise to undertake due diligence in good faith is a question of fact, which may be inferred from circumstantial evidence. <u>United States v. Jones</u>, 641 F.3d at 710–11; <u>United States v. Thompson</u>, 501 Fed.Appx. at 360–61. The reality is that an equitable duty to disclose exists during contract negotiations where the buyer expresses a particularized concern or directly inquires of the seller. <u>M & D, Inc. v. W.B. McConkey</u>, 231 Mich. App. at 33; 585 N.W.2d at 39-40. As such, MIDDD should be entitled to discovery before it is required to respond to the Motion.

20. Detroit hopes now to avoid discovery on all of these disputed issues by suggesting throughout the Motion, in wholly conclusory terms, that (a) Mercado's statements were not made in his role at the DWSD Director and/or on behalf of the City; (b) the City, therefore, never made material misrepresentations regarding the reasonableness of any amounts included in the Acquisition Agreement; (c) the City lacked knowledge of the falsity of misrepresentations it made; and (d) the City did not intend that MIDDD rely on misstatements it made. Summary disposition standards require such conclusory assertions be rejected. <u>Alexander v. CareSource</u>, 576 F.3d 551, 560 (6th Cir. 2009). The existence and scope of an agency relationship is a question of fact. <u>Global Tech., Inc. v. Moto Diesel Mexicana</u>, Unpub., 2007 WL 1500178, Doc. 05-CV-70069, *12 (E.D.Mich. May 22, 2007). Likewise, the materiality of the City's misrepresentations is also a question of fact. See <u>Fakhouri v. Banner Life Ins. Co.</u>, 157 F.Supp.2d 751 (E.D.Mich. 2001). This is improper. A motion for summary disposition should not be heard when premised on such conclusory assertions prior to discovery. <u>Fed. R. Civ. P. 56(d)(2).</u>

21. Detroit further argues that MIDDD's claim for Breach of Contract should be summarily dismissed based on ten (10) one-sided conclusory statements regarding the allegation that Detroit breached paragraphs 2.4, 2.6, 2.9, 3.3, 3.7, 5.4 or 8.1 of the September 2010 Agreement. Docket No. 7885-4, p. 26-35 of 48. These all turn on the assertion that "MIDDD signed off on the deal" and, thus, clearly require the Court to consider whether or not the Agreement was procured by fraud. See e.g. Docket No. 7885-4, p. 28 of 48. This is especially the case for paragraphs 2.4, 3.3, 3.7 which turn on the accuracy of Detroit's representation that the information it gave to MIDDD in due diligence, which was represented to be true and accurate in paragraphs 3.8 and 8.1 thereof. Whether the representations made had "a material adverse effect upon the ability of Detroit to perform its obligations under the Agreement or… questions the validity of the Agreement" is a question of fact for the jury. See Pratt v. Van Rensselaer, 235 Mich. 633; 209 N.W. 807 (1926); Gommeringer v. Amway Corp., Unpub., 1988 WL 1006168, Doc. G85-832 CA (W.D. Mich. July 12, 1988). As such, a hearing now on the merits of MIDDD's claim for Breach of Contract would be improper where discovery is expected to show that Detroit knew CS-1368 was not an arm's length transaction when it executed the Agreement.

22. Additionally, discovery is expected to show that Detroit breached the warranty and post-closing notice requirements at paragraphs 2.6, 2.9, 3.3, 5.3 and 5.4 when it failed to notify MIDDD of the ongoing criminal investigation, cooperate with MIDDD in pursuing all forms of relief available as to the overcharges from contractors that were passed on to MIDDD in full and/or retained settlements from the contractors though MIDDD paid in full for the Project.

23. There being so many issues open for discovery, the briefing and hearing of such a motion at this time would be improper under Fed. R. Civ. P. 56(d)(2).

24. The facts stated herein are within my own personal knowledge.

25. I am competent to testify to these facts, and will do so if called as a witness.

Further Affiant sayeth not.

Dated: 10/13/14

_____
Raechel M. Badalamenti

Subscribed and sworn to before me
This 13th day of October 2014,

_____
CAROL A. WILSON, Notary Public
Macomb County, State of Michigan
My Commission Expires: 4-3-2015

10

13-53846-tjt   Doc 7929   Filed 10/13/14   Entered 10/13/14 18:28:19   Page 20 of 20