William M. Alexander,
          **Plaintiff,**
5521 Bedford
Detroit, MI 48224
          **Pro Per**

Case No.: 13-201952GC

v.

Detroit Water and Sewerage Department
          **Defendant.**

Stuart Trager (P25486)
Joshua Drexler
735 Randolph
Detroit, MI 48226-5485
313/267-8001
          **Attorneys for Defendant.**

## PLAINTIFF'S MOTION FOR CHANGE OF VENUE

Plaintiff William M. Alexander moves this honorable court to enter an order

changing the venue of this action from 36th District Court located within Wayne County,

to the U.S. Bankruptcy Court for the Eastern District of Michigan, also located within the

Wayne County, pursuant to Federal Rule 107-1(c), Upon notice and hearing, a judge

may, in the interest of justice or for the convenience of the parties, transfer a case or

proceeding filed in a proper location to any other court location within the district.

Further, Petitioner states as follows:

1. This action was commenced on or about August 2013.

2. Jurisdiction was obtained over Defendant, Detroit Water and Sewerage Department, by personal service on or about January 2014.

3. Before and at the time of commencement of this action, defendants were not actively engaged in bankruptcy proceedings.

4. To date, Defendants are now actively involved in the city of Detroit bankruptcy proceedings.

5. On August 20, 2014, Plaintiff served upon the Defendants an Affidavit of facts, which Defendant's did not dispute. [See attached Affidavit. Exhibit 1]

6. Defendant's failure to dispute the Plaintiff's Affidavit resulted in the filing of a lien against the agency, in accordance with § 9-503 of the Uniform Commercial Code, for violation of Section 56-3-9 of the city of Detroit's Ordinance.

## Nature Of The Offense

7. Within the Detroit, Michigan Code of Ordinances, Chapter 56 identified as "Utilities", held in Article III [Sewers and Drains] under Division 1. Generally, are Sections 56-3-1 thru 56-3-26.

8. A. Section 56-3-9 of the city of Detroit's Ordinance specifies, "In all cases where private drains or sewers shall be obstructed or injured or shall cause the obstruction or injury to any city public sewer so as to produce, in the opinion of the health department or water and sewerage department, a nuisance, or in the event that the repairs are necessitated to any private

drain or sewer or any city public sewer due to any of the causes outlined in section 56-3-8(e) or for any other causes whatsoever, such as the collapse of any private drain or sewer because of age, deterioration, improper maintenance or construction, it shall be the duty of the water and sewerage department to give notice to owners or parties in interest and any occupant of suitable age and discretion of properties connected with and serviced by such drains or sewers to repair the same. If the private drains or sewers are not forthwith repaired, it shall be the duty of the city to cause the necessary repairs to be made. The city shall make the repairs to the city public or lateral sewers or public property damaged incidentally thereto, and shall be reimbursed for such repairs in the manner provided. Such expenses incurred for repairs shall be charged to owners or parties in interest of the properties connected with and serviced by such private drains and sewers in a ratable proportion, and, if not paid, the same shall be assessed against the premises connected with such drain or sewer as a special assessment, and levied and collected in the same manner as provided in the Charter in the case of special assessments.   (Ord. No. 340-H, § 1(56-1-9), 8-29-79)"

9. **B.** Section 56-3-9, delegate the Detroit Water and Sewerage Department as responsible for the repair of entered into an agreement with William Alexander under the aforementioned provision and have failed to perform their duties as so stated in Ordinance.

10. **C.** The Detroit Water and Sewerage Department entered into contract with William Alexander under the provision of Section 56-3-9, willingly as the corporate body responsible for meeting the responsibility entrusted by the municipality of Detroit and performs the duty of "transmitting utility" as defined in U.C.C. § 9-102: (81) "Transmitting utility" denotes a person or entity primarily engaged in the business of:

11. A. Operating a railroad, subway, street railway, or trolley bus;

12. B. Transmitting communications electrically, electromagnetically, or by light;

13. C. Transmitting goods by pipeline or sewer; or

14. D. Transmitting or producing and transmitting electricity, steam, gas, or water.

15. Actions described herein constitute "creation" between the Detroit Water and Sewerage Department and residents of the city of Detroit, as described within Section 56-3-9 under the city of Detroit's Municipal Ordinance. However, when the aggrieved party described grievances to the "Transmitting Utility", these grievances were ignored. William Alexander provided "Constructive Notice" in the form of an affidavit, which was unanswered.

16. As a result of the failure of the entity to perform its duties as a "Transmitting Utility", William Alexander has placed a lien on all assets of the Detroit Water and Sewerage Department. **Please See Attachment.**

17. Defendants have at all times feigned resolution, while actually disregarding the issue, and as a result of such indifference, the destruction of Plaintiff's home due to the rupturing of the Detroit Water and Sewerage Pipeline has instigated mold cultivation throughout the cellar.

18. Mold growth makes the property inhabitable, and as a result, the Defendants have placed Plaintiff's health in danger, for the reason Plaintiff has nowhere to reside.

19. Plaintiff's Affidavit illustrates he is entitled a right to relief on the facts and the law.

20. Michigan's Supreme Court stated in *Shurlow v. Bonthuis*, 576 NW 2d 159 - Mich: Supreme Court 1998, **"The UCC "is to be liberally construed and applied to promote its underlying purposes and policies." M.C.L. § 440.1102; M.S.A. § 19.1102. [12] In construing the act in accordance with its purposes, the text of each section should be read in the light of the purpose and policy of the rule or principle in question. [13] There is no dispute that the lien in question was a consensual contractual lien."** *Id.* at 163.

21. Plaintiff's request is warranted pursuant to both MCR 2.222 and Federal Rule 107-1(c); Plaintiff contends that this venue is proper, however, Plaintiff motions this court to transfer his claims to U.S. Bankruptcy Court for the Eastern District of Michigan as the Defendants Corporation is involved in a pending action, which would affect Plaintiff.

22. This Motion is based on the file and records in this action, and on the attached Affidavit of William M. Alexander.

23. Plaintiff requests this court grant immediate consideration and that this action be transferred immediately.

Dated: October 15, 2014                    Respectfully submitted,

                                           William M. Alexander
                                           Plaintiff

███████
███████
███████

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>William Alexander 2487961935 | **Date of Filing : 08/20/2014** |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>william.alexander-holdings@live.com | **Time of Filing : 05:16:00 PM** |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br><br>William Alexander 2487961935<br>Alexander Holdings<br>17515 W 9 Mile ,Suite 200<br>Southfield MI USA 48075 | **File Number : 2014-232-7852-0**<br>**Lapse Date : NONE** |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

---

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **Detroit Water and Sewerage Department** | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS<br>**735 Randolph** | CITY<br>**Detroit** | STATE<br>**MI** | POSTAL CODE<br>**48226** | COUNTRY<br>**USA** |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 3b. INDIVIDUAL'S SURNAME<br>**Alexander** | FIRST PERSONAL NAME<br>**William** | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS<br>**17515 W 9 Mile Rd. Suite 200** | CITY<br>**Southfield** | STATE<br>**MI** | POSTAL CODE<br>**48075** | COUNTRY<br>**USA** |

**4. COLLATERAL:** This financing statement covers the following collateral:

---

| 5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☑ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative | |
|---|---|---|
| 6a. Check <u>only</u> if applicable and check <u>only</u> one box: | | 6b. Check <u>only</u> if applicable and check <u>only</u> one box: |
| ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☑ A Debtor is a Transmitting Utility | | ☑ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | |
| 8. OPTIONAL FILER REFERENCE DATA: | | |

---

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)   International Association of Commercial Administrators (IACA)

All Total Assets of The Water Fund amounting in $ 2,847,027,278

All Total Assets of The Sewer Fund amounting in $ 3,766,735,060

All real properties located at

735 Randolph Detroit, Michigan 48226

3993 Metcalf Road in Fort Gratiot, Michigan 48059

11000 E. Eight Mile Road Detroit, Michigan 48205

14700 Moran Road Allen Park, Michigan 48101

8300 W. Warren Avenue Dearborn Michigan 48126

10100 E Jefferson Ave, Detroit, MI 48214

Baby Creek Screening and Disinfection Facility

Belle Isle CSO RTB

Conner Creek CSO RTB

Hubbell-Southfield CSO RTB

Leib Screening and Disinfection Facility

Oakwood CSO RTB

Puritan-Fenkell CSO RTB

Seven Mile CSO RTB

St. Aubin Screening and Disinfection Facility

9300 West Jefferson Avenue, Detroit, MI 48209

303 S Livernois Ave, Detroit, MI 48209

6425 Huber St, Detroit, MI

9300 West Jefferson Avenue, Detroit, MI

400 Monroe Ave, Detroit, MI

13303 E McNichols Rd Detroit, MI

3501 Chene St, Detroit, MI

# STATE OF MICHIGAN

# IN THE 36TH JUDICIAL DISTRICT COURT

William M. Alexander                    Case No.: 13-201952

     Plaintiff,

v

Detroit Water and Sewerage Department

     Defendant.

---

William M. Alexander          Stuart Trager (P25486)
5521 Bedford                 Latonya Whitfield
Detroit, MI 48224          Detroit Water and
248/796-1935                Sewerage Department
                            735 Randolph
                            Detroit, MI 48226-5485
                            313/267-8001

---

## AFFIDAVIT OF WILLIAM M. ALEXANDER

Now comes the Affiant, William M. Alexander, a citizen of the United

States and the State of Michigan over the age of 21 years, and declares as

follows, under penalty of perjury:

1. That I am familiar with this case as it exists outside of court

   proceedings. I make this Affidavit based on my own personal

   knowledge of the case, and am giving this court an "objective" view

1

# STATE OF MICHIGAN

## IN THE 36TH JUDICIAL DISTRICT COURT

of the situation. If called as a witness, I would testify as stated herein.

I am competent to make the following statements:

## HISTORY

2. On or about January 24th, 2013, Affiant was taken to Huron Valley Hospital to receive medical attention.

3. While Affiant was receiving medical care, the pipe, labeled "Property of Detroit Water and Sewerage Department Do Not Touch", ruptured. Affiant cannot truthfully articulate what exactly caused the "rupture". Nor can the Defendants, citing their failure to investigate, as Affiant requested.

4. At no time throughout the aforementioned period, did the Water and Sewerage Department contact or send notice that a pipe was inoperative. Demetrick Stuckey collected all mailed communications during that time and if called as a witness, will testify as stated herein.

5. On or about February 18th, 2013 Affiant returned to the residence. When Affiant descended into the basement of the home, he noticed a

2

swift, but soft sounding current of water, emanating from the wall. Affiant quelled this current by turning the main water line.

6. On or about February 27th, 2013 Affiant received a communication from the Detroit Water and Sewerage Department conveying that a pipe ruptured, and that Affiant's water bill was now $1,000.

7. On or about March 8th, 2013, Affiant received an additional correspondence stating the Delinquent Water Bill was to be applied to the home property taxes, unless an approved payment agreement was entered into with the Detroit Water and Sewerage Department.

8. On or about March 11th, 2013, Affiant arrived at the eastern office of Detroit Water and Sewerage Department and disputed the bill. Affiant was told that to properly dispute the bill, or hold a hearing, he would have to make a $700 payment.

9. Affiant did not receive any notice of his hearing request. Finding this odd, Affiant travelled to the Randolph location on July 29th, 2013, and

3

once again requested a hearing. The agent of DWSD, told Affiant to

return at a later date.


10. On or about August 9th, 2014, Affiant travelled to the Randolph

location to speak with a representative and once again requested a

hearing. This representative spoke with her supervisors and conveyed

to Affiant, nothing could be done because Affiant admitted to a "burst

pipe", and a hearing would not commence. Affiant then voiced the

following contention: "How could I have admitted to a "bursts pipe",

when DWSD sent me a written letter, telling me that a pipe "bursts"?"


11. Affiant further commented: " If you contacted me with full

knowledge of a defective pipe, than repeatedly block me from a

hearing, than your company purposely let the water run during that

period." At this point Affiant demanded copies of his records, to

which the agent replied, "they do not give out copies of their records."

The agent further indicated, that they would simply, "roll the amount

owed over to the taxes, and that they would "take" the house."


4

12. Affiant being denied all relief brought suit for negligence against DWSD into the 36th Judicial District Court.

13. On or about January 15th, 2014, Affiant spoke with Latonya Whitfield of DWSD. Affiant explained the situation to Ms. Whitfield, and she explained that the notice explaining the ruptured pipe was automatically generated. Ms. Whitfield than asked Affiant for a copy of the notice. Affiant stated 'Ms. Whitfield must have a copy of the same notice', citing it's automatic generation.

14. On or about Tuesday January 28th, Affiant returned the call of Stuart Trager (P25486), to discuss the case. Prior to discussion conclusion, Affiant requested a copy of his records. Attorney Trager made no objection to this.

15. On or about March 6th, 2014, Affiant served Defendants with a Subpoena to produce all documentation; Account Notes, Water Measurement Information pertaining to the property 5521 Bedford Detroit, MI, as well as DWSD Company Dispute/Resolution

5

Procedures and Guidelines. DWSD did not produce this information but instead filed a pathetic motion to squash subpoena. Affiant than wrote a motion in opposition to which Defendants did not respond.

## STATEMENT OF FACTS

16. Affiant in this proceeding occupies the property located at 5521 Bedford Detroit, MI 48224.

17. Defendant Detroit Water and Sewerage Department is a corporation engaged in the business of supplying water to it's customers, duly incorporated under the laws of the State of Michigan, and providing services in the counties of Wayne, Oakland and Macomb, located in the State of Michigan, with its principal office being located at 735 Randolph Street, Detroit, Michigan 48226.

18. At all times mentioned in this Affidavit, the water system of DWSD, and all water mains and pipelines included in that system were under the exclusive care and control of Defendants.

19. At all times mentioned in this Affidavit, Affiant was and still is a customer of Defendant, purchasing and using water supplied by Defendant to Affiant's residence.

6

20. While Affiant was receiving medical care, Defendant was still supplying him with water. The plumbing in Affiant's home ruptured, resulting in damages to the property and an extremely high water notice.

21. Defendants at all times neglected to properly maintain all water mains and pipelines within the system responsible for supplying the residents of Wayne, Oakland, and Macomb counties.

22. Defendants at all times neglected and continue to neglect all water mains and pipelines within the system responsible for supplying the residents of Wayne, Oakland, and Macomb counties.

23. As a result of Defendants neglect, the notice and all notices sent had an incorrect measurement of water.

24. At no time before litigation did the Defendant investigate what caused the destruction of its own water pipelines.

25. Defendants have made accommodations for customers who are on vacation. However, to date Defendant's have not put anything in place that accommodates customers who may or have been away seeking medical attention.

7

# STATE OF MICHIGAN

## IN THE 36TH JUDICIAL DISTRICT COURT

26. Prior to and at the time of the water pipes rupture in Affiant's residence, the water pipelines, gauges and other instruments used to control and measure pressure of the water supplied by Defendant's to Affiant were under the exclusive control of Defendant's, its agents and its employees.

27. Rupturing of the plumbing in Affiant's home is an occurrence of the sort that in the ordinary course of events would not occur but for an intentional or negligent failure to monitor the water pressure and or all things associated therewith, while the water was being supplied to Affiant's residence, and which not would occur if those in control of the water system exercised proper care.

28. Destruction of the plumbing in Affiant's home was and is entirely the result of Defendants negligence and was not contributed to in any manner by any act of Affiant, Affiant's family, or guest of Affiant.

29. Because Defendants has at all times had the exclusive management and control of the instruments, gauges and other resources necessary for the regulation of such a water system, Affiant has been unable to determine the cause of the rupture.

8

30. Defendants also failed to investigate this rupture, which Affiant asked them to do, further displaying intentional neglect.

31. For the reason that Defendant's and it's agents have control of the instruments, gauges, and other resources necessary to determine what took place, the bursting and or damage which caused the pipe to become defective is known by fact to the Defendant's or should be known to the Defendant's, citing their "automatic notice production".

## CONTINUED NEGLIGENCE

32. Damages suffered by Affiant was the proximate result of Defendant's joint and concurring negligence, the joint and concurring negligence of Defendant's agents, and Defendant's employees, acting within the scope of their employment, in the following particulars:

A. Notice's and communications have not been sent in a timely fashion.

B. Water would flow for an unknown duration of time, if a notice were not timely communicated.

C. Affiant was denied procedural due process, being continuously barred from a hearing before DWSD's water board.

9

D.  In failure to properly maintain and check the water pressure in the pipeline serving Affiant's home, Defendant's allowed the plumbing to rupture.

E.  In failure to properly warn Affiant of the continued water flow, and or increase in water pressure.

F.  In failing to properly regulate the gauges and other apparatus regulating the water pressure in the pipeline serving Affiant's home.

G.  In failing to guard against dangerous increases and fluctuations in the water pressure in the pipeline serving Affiant's home.

H.  In failing to provide Affiant with water at a reasonably safe pressure in supplying water to Affiant's home.

I.   In failure to investigate the cause of the ruptured pipeline.

J.  In failing to produce all documents Affiant is entitled to by law.

K.  In failing to offer any form of valid relief.

**DUE PROCESS VIOLATION**

33. Sewer and water charges accessed by DWSD during this period are excessive and illegal and violate due process of law under the Constitutions of the United States and the State of Michigan in that,

10

based on several failures, the most pertinent being failure to

investigate the cause of the rupture, and the failure of adequate record

keeping, coupled with failure to allow the initiation of a hearing.


## SUMMARY OF ARGUMENT AND COMMENTARY

34. Defendants at all times have barred Affiant from relief. As such,

     Defendant's and their agents are committing acts of **SCIENTER**,

     consisting of Bad Faith, Fraud, Conspiracy, Undue Enrichment,

     Aiding and Abetting, Willful and Wanton, Irreparable Harm, with

     Malice and Forethought, Conversion, Commercial War, Commercial

     Credit Slander and continuous torts.

35. Any immunity, whether Absolute or Limited are not protective in

     their Acts of Bad Faith. Reference *Am Jur 2nd, Volume 17 (A) Clause*

     *#298.*

36. By and through this Affidavit, Affiant has moved in good faith to

     further rectify and or comprehend Defendants actions.

37. Affiant has not failed to state a claim upon which relief can be

     granted, as referenced throughout this document.

11

38. Any collateral attacks on this Affidavit are an act of "Fraud". In the state of Michigan, "fraud is an intentional perversion or concealment of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing or to surrender a legal right." *Eaton Corp v Easton Assocs, Inc, 728 F2d 285, 292 (6th Cir 1984) (quoting Barkau v Ruggirello (On Rehearing), 113 Mich App 642, 647, 318 NW2d 521 (1982)).*

39. If Defendant's, it's agents, and or acting officers discover any errors or omissions, legal or otherwise, in or related to this Affidavit, said agents, are required to serve notice upon the Affiant with a point by point description of any such errors and omissions within (2) days of receiving this Notice by Registered Mail or forever admit the lawful execution of this Notice as a matter of the public record.

**ESTOPPEL BY ACQUIESCENCE:**

40. In the event Defendant admits the statements and claims by TACIT PROCURATION, all issues are deemed settled RES JUDICATA, STARE DECISIS and COLLATERAL ESTOPPEL.

12

41. Defendant's may not argue, controvert, or otherwise protest the finality of the findings in any subsequent process, whether administrative or judicial.

42. Since January 24th, 2013, Defendants intentionally refused to respond to the statements and claims herein and/or to provide proof to the contrary, *ergo,* Affiant's actions are not limited by jurisprudence.

43. This Affidavit is to only be disputed by the **Detroit Water and Sewerage Department.** Any party seeking to intervene in this dispute agrees to accept the privilege of being a co-Defendant, place in escrow a Co-Defendant fee which is to be the "maximum" amount established by Michigan and Federal law, whether statutory or common, for "Negligence", per impairment; or trespass, confess judgment jointly and severally on all such fees, in a currency designated by Affiant. **[According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money; money does not have to be issued by the Government.** *Source:* **Federal Reserve Bank Of New York, 4th Edition (1984).]**

44. Consent to all necessary collection and bond-levy procedures, agree to reporting of the unpaid balance as unreported income, suspicious activities and misappropriated funds,

45. And consent to service of all necessary notices of lien, levy, assessment and bond-arrest warrant(s) on any and all underwriters real or imagined, and waive all defenses thereto.

46. Obligations listed above are not subject to discharge in bankruptcy or other impairment of full and unqualified liability.

47. It is mandatory that Defendants sign and certify, "under penalty of perjury complete with a unique identifier [s.s.n/bar number] pursuant to 28 USC § 1746, that any answers provided in opposition to this affidavit are true, correct, complete, and not misleading.

14

# STATE OF MICHIGAN

## IN THE 36TH JUDICIAL DISTRICT COURT

### AFFIRMATION

48. I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true. I hereby further affirm that the basis of these beliefs is either my own direct knowledge of historical facts or my direct knowledge of legal principles.

Further the Affiant sayeth naught.

July 28th, 2014

<u>William M. Alexander</u>
Affiant

15