## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
                      :

In re                      :          Chapter 9
                      :

CITY OF DETROIT, MICHIGAN,  :          Case No. 13-53846
                      :

           Debtor.     :          Hon. Steven W. Rhodes
                      :
                      :
                      :
-------------------------------------------------------x

## REPLY IN SUPPORT OF OBJECTION TO PROOF
## OF CLAIM NUMBER 2958 FILED BY MICHIGAN
## <u>AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALS</u>

The City of Detroit (the "<u>City</u>") hereby files this reply (the "<u>Reply</u>") in support of the *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 2958 Filed by Michigan Council 25 and Its Affiliated Locals* (Docket No. 4876) (the "<u>Claim Objection</u>").[1] In support of this Reply, the City respectfully represents as follows:

1.      By the Claim Objection, the City seeks the disallowance and expungement of proof of claim number 2958 (the "<u>Proof of Claim</u>") filed by the American Federation of State, County and Municipal Employees ("<u>AFSCME</u>")

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Claim Objection.

Council 25 and its affiliated locals (together, the "Claimant"). The Proof of Claim is comprised of 20 separate claims asserting aggregate liabilities in the amount of $8,718,697,854.82. See Claim Objection Ex. 1.

2.       On September 2, 2014, the Claimant filed a response to the Claim Objection (Docket No. 7235) (the "Response").

3.       By agreement between the parties, the Proof of Claim was referred to facilitative mediation before the Honorable Victoria A. Roberts. See *Order (I) Referring to Facilitative Mediation Objections to Certain Claims Filed by Michigan AFSCME Council 25 and its Affiliated Detroit Locals and the Coalition of Detroit Unions, (II) Continuing Hearing on Related Claim Objections and (III) Modifying Briefing Schedule* (Docket No. 7663), at ¶ 2. The facilitative mediation was conducted and has been concluded, but did not lead to a resolution.

4.       Since the filing of the Claim Objection and the Response, the Claimant withdrew certain of the claims contained in the Proof of Claim, as more fully discussed below. Of the remaining claims, one overriding theme is the Claimant's attempt to recover alleged damages arising from the necessary cost-savings mechanisms that the City established through the City Employment Terms implemented on July 18, 2012. As discussed below, the City Employment Terms (or "CETs") were implemented lawfully, and AFSCME's claims for damages relating to the CETs therefore fail under applicable law. Certain claims relating to

pension and benefit issues – including claims relating to the so-called "13 Check" program – were addressed by the City separately in the *Supplemental Brief of the City of Detroit, Pursuant to Sections 105 and 502(B) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 2958 Filed by Michigan AFSCME Council 25 and Its Affiliated Locals* (Docket No. 7981) ("Supplemental Brief"), a supplement to the Claim Objection filed on October 16, 2014 (Docket No. 7981), which is incorporated herein by reference. The majority of the remaining claims fail because they are too vague and general to state a legitimate and allowable claim.

5.      Each separate claim contained in the Proof of Claim (in the order set forth on the chart attached to the Proof of Claim as Exhibit 1) is addressed below.  These claims are referred to by number below.

## Reply

***Claim 1:  Underfunded Pension and Post Employment Benefit Obligations:***

6.      The Claimant has agreed to withdraw Claim 1.  See *Order Dismissing Claims from Mediation* (Docket No. 7877) (the "Dismissal Order").[2]

---

[2]     Claims for GRS pension and other post-employment benefits ("OPEB") are subject to treatment in Class 11 and Class 12 of the Plan, respectively. Moreover, consistent with the bar date order in this case, no proof of claim is required to preserve a claim in Class 11 or Class 12.  See Bar Date Order, at ¶ 8 (providing that the holders of claims relating to pension liabilities and OPEB liabilities are not required to file proofs of claim on account of such claims).  Because Claim 1 of the Proof of Claim – asserted in an amount not

***Claim 2: Violations of Local, State or Federal Law***

7.      The Claimant has agreed to withdraw Claim 2.  A copy of the *Order Dismissing Claim 2 From Mediation* issued by Judge Roberts is attached hereto as Exhibit 1.[3]

***Claim 3: Refusal to Bargain AFSCME Local 1023 – MERC Case Number D13 C-0331.***

8.      Through Claim 3, AFSCME asks the Court to ignore a 2013 decision of the State of Michigan Employment Relations Commission (the "MERC"), a copy of which is attached hereto as Exhibit 2 (the "Act 312 Decision").  In particular, the Act 312 Decision holds that, as a result of the passage of the Local Financial Stability and Choice Act, 2012 PA 436, MCL § 141.1541, *et seq.* ("PA 436"), the City was not obligated to engage in binding arbitration under 1969 PA 312, MCL § 423.231, *et seq.* ("Act 312") and therefore had a right to unilaterally impose employment terms on various City unions (i.e., through the City Employment Terms).

9.      Act 312 compels arbitration of labor disputes in municipal police and fire departments under certain circumstances, including disputes over

---

less than $8.1 billion – relates to GRS pension and OPEB liabilities, any valid liabilities will be addressed consistent with Class 11 and Class 12 of the Plan.

[3]     In any event, even if not withdrawn, this claim is too vague to be allowed and is subsumed by the other portions of the Proof of Claim.  To the extent applicable, those matters are addressed below.

the negotiation of collective bargaining agreements. Similarly, the Michigan

Public Employment Relations Act ("PERA"), MCL 423.201, *et seq.*, imposes a

duty to bargain on the City, which was expressly suspended pursuant to PA 436.

MCL 141.1567(3) ("A local government placed in receivership under this act is not

subject to section 15(1) of 1947 PA 336, MCL 423.215, for a period of 5 years

from the date the local government is placed in receivership or until the time the

receivership is terminated, whichever occurs first."). AFSCME nevertheless

asserts that the City was required to arbitrate instead of imposing unilateral terms

on AFSCME Local 1023 (the Emergency Service Operators). AFSCME therefore

seeks unspecified relief as a result of the imposed terms contained in the CETs.

The imposed terms included wage and other concessions effective August 2013,

consistent with concessions imposed Citywide. AFSCME cannot meet the

standard to set aside the MERC's Act 312 Award.

        10.     Specifically, the Police Officers Association of Michigan

(Emergency Medical Technician Unit), the Detroit Police Command Officers

Association, and the Detroit Police Lieutenants & Sergeants Association

(collectively, the "Act 312 Unions") alleged before the MERC that the City was

obligated to engage in mediation under PERA and compulsory arbitration under

Act 312. Ex. 2 at 2, 11. The MERC ruled that the City has no obligation to

arbitrate under Act 312 while its PERA duty to bargain is suspended under

Section 27(3) of PA 436 and dismissed the Act 312 Unions' petitions for arbitration. Ex. 2 at 14.

11. AFSCME Local 1023 (the Emergency Service Operators) did not join the Act 312 Unions in the challenges addressed by the Act 312 Decision. Instead, AFSCME Local 1023 filed a separate demand for Act 312 arbitration with the MERC on June 3, 2013. See Response Ex. 3. The MERC dismissed the demand based on the Act 312 Decision. See Response Ex. 4.

12. Through its claim, AFSCME asserts that (a) the Act 312 Decision is in error, (b) the City should have been compelled to arbitrate with AFSCME Local 1023 over the terms of a new collective bargaining agreement and (c) the unilateral imposition of City Employment Terms was unlawful. See Claim Objection Ex. 1 at 6.

13. Contrary to AFSCME's assertions, the Act 312 Decision is sound and not in error (and remains in effect). The City's duty to bargain is derived from Section 15(1) of PERA. MCL § 423.15(1). It is undisputed that this duty was suspended by the express terms of PA 436. MCL 141.1567(3) Act 312 does not confer a duty to bargain on the City, it merely provides a method of dispute resolution premised on the duty to bargain found in PERA. MCL § 423.231, et seq. Yet the Claimant asserts in the Response that Section 423.243 of Act 312 creates a duty to bargain apart from PERA because it provides that "during

the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party."  <u>See</u> Response at 6.  However, this alleged duty would only be triggered "during the pendency of proceedings before the arbitration panel."  MCL § 423.243.  Absent a PERA duty to bargain, (a) the City has no obligation to participate in "proceedings before the arbitration panel;" and (b) it also has no duty to participate in mediation under PERA, which is a prerequisite to compulsory arbitration under Act 312.  Ex. 2 at 12.

14.    As the MERC noted in the Act 312 Decision:

> [t]he mediation process is a condition precedent to initiation of Act 312 arbitration.  A public employer that has no duty to bargain has no duty to participate in mediation.  Only a public employer not in receivership under PA 436 or a labor organization may be required by this Commission under § 10 of PERA to participate in mediation.  Therefore, the duty to bargain must be present before a party can be compelled to involuntarily participate in mediation.  If parties have no duty to participate in mediation, they cannot be required to participate in Act 312 arbitration.

> Moreover, § 7a of Act 312 gives the arbitration panel chair the authority to remand the matter to mediation. Mediation is a function of bargaining pursuant to PERA. If there is no duty to bargain, there is also no duty to engage in mediation. Therefore, § 7a of Act 312 presupposes the presence of a duty to bargain.  In the absence of a duty to bargain, there is no obligation to participate in Act 312 arbitration.

Ex. 2 at 12.

15.     It also bears noting that a failure to abide by the terms of an Act 312 arbitration award is not a violation of Act 312, but rather is a violation of the duty to bargain under PERA. *City of Jackson*, 1979 MERC Lab. Op. 1146, 1151-1154 (1979); *see also City of Hamtramck*, 1984 MERC Lab. Op. 520, 524 (1984). Therefore, a requirement that the City engage in Act 312 arbitration while its duty to bargain is suspended would be futile – the City cannot breach a duty where no duty exists.

16.     The Act 312 Decision also addresses the issue of a potential unilateral implementation of terms and conditions of employment:

> In the light of the language of PA 436, we cannot find that the Legislature intended to impose the aforesaid "extraordinary restrictions" of Act 312 on an emergency manager. Inasmuch as an Act 312 award serves as the parties' collective bargaining agreement, it appears that pursuant to § 15(8) of PERA and § 12(1)(j) of PA 436 that the Emergency Manager could reject, modify, or terminate terms of an Act 312 award. If that is the case, it seems doubtful that the Legislature would have intended an employer in receivership, with no duty to bargain and with an emergency manager in place, to be subject to Act 312 arbitration proceedings.

Ex. 2 at 11.

17.     The Michigan Supreme Court summarized the standard of review of MERC decisions in *Grandville Municipal Executive Ass'n v. City of Grandville,* 453 Mich. 428, 436 (1996), stating:

> The decisions of the MERC are reviewed on appeal pursuant to Const. 1963, art. 6, § 28, and M.C.L. § 423.216(e); MSA 17.455(16)(e). The commission's findings of fact are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole. *Port Huron Ed. Ass'n v. Port Huron Area School Dist.*, 452 Mich. 309, 322, 550 N.W.2d 228 (1996). The MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f).

*Id.* at 323. Applying this standard, there is no basis to overturn the Act 312 Decision even if such relief were sought by AFSCME. The Act 312 Decision (a) does not violate a constitutional or statutory provision and (b) is not based on a substantial and material error of law.

18. In addition, the Court of Appeals has held that in applying this standard "an administrative agency's findings and conclusions are entitled to a considerable degree of deference due to the expertise of the agency with respect to the subjects under its jurisdiction." *Central State Bank v. Commissioner of Financial Institutions Bureau*, 136 Mich. App. 368, 372 (Mich. Ct. App. 1984); *see also, e.g., Neal v. Light Corp.*, 1998 Mich. App. LEXIS 858, *16-*17 (Mich. Ct. App. Dec. 1, 1998) ("[W]here there is sufficient evidence to support the agency's findings, a reviewing court must not substitute its discretion for that of the agency, even if the court would have reached a different result. Indeed, it is irrelevant

whether alternative findings could have been supported by the evidence, because deference must be afforded to the agency's findings of fact.").

19.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a debtor only to the extent that it has a "right to payment" for the asserted liability.  See 11 U.S.C. §§ 101(5), 101(10).  By contrast, there is no right to payment — and therefore no claim — to the extent that the asserted liability is not due and owing by a debtor.  The MERC properly found that there is no liability due and owing.  Claim 3 has no valid basis and should be disallowed and expunged in its entirety.

### Claim 4:  Local 207, 2394 and 2920 DWSD Refusal to Bargain – Case Number C13 D-069.

20.     Claim 4 asserts that the City violated PERA by unilaterally imposing City Employment Terms on AFSCME Locals 207, 2394, and 2920.  See Claim Objection Ex. 1.  Like Claim 3, this is another attempt by AFSCME to pursue liability for the necessary cost-savings achieved through the City Employment Terms.

21.     Employees represented by AFSCME Locals 207, 2394 and 2920 (the "DWSD Locals") work for the Detroit Water and Sewerage Department ("DWSD").   The imposed City Employment Terms took effect throughout the City on July 18, 2012.  See, e.g., the AFSCME Master Non-Supervisory City

Employment Terms applicable to AFSCME non-supervisory employees both within and without DWSD, which is attached as Exhibit 3.

22.     Prior to that time, in April 2012, the City entered into a Financial Stability Agreement with the State of Michigan (the "Financial Stability Agreement"), which served as a consent agreement under Public Act 4 of 2011, MCL § 141.1501, *et seq*. ("PA 4"), and suspended the City's duty to bargain under PERA (similar to its successor PA 436).  PA 4, at § 10 ("Unless the state treasurer determines otherwise, beginning 30 days after the date a local government enters into a consent agreement under this act, that local government is not subject to section 15(1) of 1947 PA 336, MCL 423.215, for the remaining term of the consent agreement.").  A copy of the Financial Stability Agreement is attached hereto as Exhibit 4.

23.     Thus, during the relevant timeframe, the City had no obligation to bargain with these locals (or any other local) and had the right to unilaterally impose terms and conditions of employment.

24.     AFSCME asserts generally that the City engaged in "bad faith" bargaining but gives no specific basis for this allegation other than implementation of the City Employment Terms.  There can be no bad faith bargaining under PERA when the duty to bargain has been suspended.

25.    As such, Claim 4 should be disallowed and expunged in its entirety because AFSCME cannot show that the City has any debt due and owing as a result of the lawful imposition of the City Employment Terms on the DWSD Locals.

**_Claim 5:  Imposition of Furlough Days in February 2013._**

26.    Claim 5 asserts that the City violated PERA by unilaterally imposing furlough days.  See Claim Objection Ex. 1.  Like Claims 3 and 4, AFSCME again seeks relief for the lawful unilateral implementation of employment terms by the City.

27.    In March 2013, the City implemented furlough days for certain of its employees as a cost saving mechanism.  This practice involved each employee taking an unpaid day off – a furlough day – once every two weeks, thereby reducing hours by 10%.

28.    Section 4.1 of the Financial Stability Agreement, then in effect, provided the Mayor of the City with "the authority to … amend, modify, reject or terminate collective bargaining agreements to the fullest extent authorized by law and subject to the terms of [the] Agreement." Id. § 4.1.  Section 4.4 of the Financial Stability Agreement stated that "beginning 30 days after the effective date of this Agreement the City is not subject to Sec. 15(1) of Act 336, Public Acts

-12-

of Michigan, 1947, as amended MCL, 423.215 [which provides the duty to bargain], for the remaining term of [the] Agreement." Id. § 4.1.

29.     Because the City entered into the Financial Stability Agreement with the State while PA 4 was in effect, the Financial Stability Agreement, and the suspension of the duty to bargain contained therein, continued in effect even after PA 4 was rejected by referendum in November 2012.[4] Thus, at the time the City imposed furlough days, it was empowered to do so under the Financial Stability Agreement.

30.     As a result, the Claimant cannot show that there is any debt due and owing based on Claim 5, therefore it should be disallowed and expunged in its entirety. This claim also should be disallowed because it is duplicative of Claim 8 (City of Detroit 2012 Negotiations and Implementation With Coalition: MERC Case No. C12 D-065, C12 F-125, C13 G-129), which also seeks to recover for the cost-savings provisions imposed by the City Employment Terms (including furlough days).

**Claim 6:  Detroit Refusal to Bargain Concerning Transportation Locals – Case Number C12 H-157.**

31.     Claim 6 again challenges the implementation of the City Employment Terms. It appears to allege that, because the City has opted to

---

[4]     Subsequently, PA 436 was enacted by the State and went into effect as of March 28, 2013.

bargain with AFSCME Locals 214 and 312, the City had an obligation to bargain with all AFSCME locals, and that the imposition of City Employment Terms on all other AFSCME locals was therefore unlawful. See Claim Objection Ex. 1. The employees represented by AFSCME Locals 214 and 312 work in the Detroit Department of Transportation ("DDOT").

32. This claim is baseless. The City in fact has opted to bargain with AFSCME Locals 214 and 312 – but not with other AFSCME locals – to preserve the City's ability to receive federal funding for DDOT in accordance with Section 13(c) of the Federal Transportation Act, 49 U.S.C. § 5333(b). This staturue provides that:

> As a condition of financial assistance under [the Federal Transportation Act] … the interests of employees affected by the assistance shall be protected under arrangements … [that provide for] the continuation of collective bargaining rights ….

*Id.*

33. The Claimant has not cited any authority supporting the proposition that the City is prohibited from choosing to bargain with some AFSCME locals, while choosing not to bargain with other AFSCME locals, or that proceeding in such a manner would nullify the suspension of the duty to bargain under PA 436. Under PA 436, the City has no obligation to bargain with any AFSCME local. The 1988 case relied upon by the Claimant in the Response at

-14-

page 11, *Michigan Ass'n. of Public Employees v. Michigan AFSCME Council 25*, 172 Mich. App. 761, 766 (Mich. Ct. App. 1988), is inapposite. That case arose in the context of a representation proceeding in which another union attempted to force a representation vote on the members of AFSCME Local 312. The case does not hold, nor address, the City's ability to negotiate different agreements with different AFSCME locals or even different parts of the same local, which the City has done historically.

34. For example, half of AFSCME Local 1023 (the Emergency Service Operators) historically has reached collective bargaining agreements through Act 312 arbitration, while the other half (the non-Emergency Service Operators) were parties to a different City-wide master collective bargaining agreement. Similarly, AFSCME Local 542 historically has had half of the unit covered by the AFSCME Council 25 Non-Supervisory Master Agreement and the other half of the unit, the Motor City Seasonals, covered under a different master agreement. The recently ratified current agreements for AFSCME Locals 542 and 1023 follow this same historic principle. Thus the Claimant's argument that all AFSCME Locals must be treated the same way contradicts past and current practice.

35. Furthermore, the Claimant's argument that the City was obligated to bargain with non-DDOT AFSCME locals because it opted to bargain

with two DDOT locals is contrary to PA 436. Akin to the MERC's holding in the Act 312 Decision (i.e., that the City has the ability to choose to participate in Act 312 arbitration even though it is not required to), the City has the ability to choose whether to bargain with some locals and not others – it is not required to bargain with AFSCME at all. See Ex. 2 at 13.

36.     Finally, this claim is duplicative of Claim 8, which seeks to recover for the implementation of the City Employment Terms generally.

37.     For all of these reasons, Claim 6 should be disallowed and expunged in its entirety.

### Claim 7:  AFSCME Council 25 (13th Check ULP) – MERC Case No. C12-E-092.

38.     Claim 7 should be disallowed for all of the reasons set forth in the Supplemental Brief.

### Claim 8:  City of Detroit 2012 Negotiations and Implementation With Coalition – MERC Case No. C12 D-065, C12 F-125, C13 G-129.

39.     Claim 8 asserts that the City violated PERA by failing to execute a 2012 tentative agreement with the Claimant and other non-uniform Detroit unions and subsequently implementing the City Employment Terms unilaterally in July 2012.  See Claim Objection Ex. 1.  The Claimant places an upper limit on the value of this claim of approximately $170,000,000.

40.     This claim should be disallowed because it is duplicative of a portion of Proof of Claim Number 2851 Filed by the Coalition of Detroit Unions,

-16-

which seeks relief for the same alleged conduct on behalf of AFSCME and other Detroit unions.

41.     Additionally, this claim should be disallowed and expunged for all of the reasons set forth in detail in the City's concurrently filed *Reply in Support of the Objection of the City of Detroit to Proof of Claim Number 2851 Filed by the Coalition of Detroit Unions*, this claim is meritless and should be disallowed and expunged in its entirety.

**Claim 9:  Violation of Privatization Ordinance.**

42.     Claim 9 alleges generally that "[t]he City has repeatedly violated the City's Privatization Ordinance," but it does not identify a single violation of the ordinance with particularity.  <u>See</u> Claim Objection Ex. 1.  This claim should be disallowed and expunged in its entirety because it is simply too vague and general to state a legitimate and allowable claim.  Moreover, the City is not aware of any such valid liability.

**Claim 10:  City of Detroit/DFFA – MERC Case No. C11 K-201.**

43.     Claim 10 refers to an unfair labor practice charge pending before MERC alleging that work designated for an AFSCME Local bargaining unit was being performed by the Detroit Fire Fighters' Association.  <u>See</u> Claim Objection Ex. 1.

44.     This claim should be disallowed and expunged in its entirety because it is duplicative of grievances that already have been resolved through the grievance mediation process.[5]

**Claim 11:  City of Detroit Longevity Claim for AFSCME Employees: Claim number 12-000522 and 12-000523; Wayne County Circuit Court Number 13-003430-AA.**

45.     Claim 11 seeks a claim based on the City's elimination of longevity payments in 2010.  See Claim Objection Ex. 1.

46.     The facts underlying this claim are the same as those presented to Michigan Department of Licensing and Regulatory Affairs, Wage and Hour Division (the "Wage and Hour Division"), Administrative Law Judge David M. Cohen, when the Claimant previously litigated this issue.  See Response Ex. 10. ALJ Cohen's decision is instructive.  In that decision, he ruled that longevity payments were governed by contract, not state law, and that the contract in effect at the time longevity payments would have come due did not require the City to make longevity payments.  See Response Ex. 9 at 12.

---

[5]     The City's Labor Relations Department engaged in facilitative mediation with AFSCME staff representatives over a six-month period ending in April 2014.  During this process, each AFSCME Local President with pending prepetition grievances met with the AFSCME staff representatives and City Labor Relations to mediate an expedited resolution to those grievances. Various of those grievances were resolved for *de minimis* amounts that will be paid in the ordinary course, subject to a settlement agreement that requires AFSCME to amend the Proof of Claim to withdraw the portion of the claim settled through grievance mediation.

47.     It is undisputed that AFSCME and the City were unable to agree on a 2008-2012 collective bargaining agreement.  As a result, the parties engaged in fact-finding and complied with their bargaining obligations under PERA.  Ultimately, the City imposed the recommendations of the fact-finder, which recommended the elimination of longevity payments.  Al Garrett, President, AFSCME Council 25, acknowledged in a letter to the then Director of Labor Relations for the City that AFSCME accepted the imposed terms as the parties' agreement.  A copy of Mr. Garrett's letter is attached as Exhibit 5 hereto.

48.     AFSCME appealed ALJ Cohen's decision to the Wayne County Circuit Court.  See Response Ex. 11.  That appeal remains pending, but currently is subject to the stay of Sections 362 and 922 of the Bankruptcy Code as modified and extended by orders of the Court.

49.     Claim 11 should be disallowed because ALJ Cohen's decision remains in effect, and the Claimant cannot meet the standard under applicable Michigan law for setting aside ALJ Cohen's decision on appeal.  It cannot show that the "substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

> (a) In violation of the constitution or a statute.
> (b) In excess of the statutory authority or jurisdiction of the agency.
> (c) Made upon unlawful procedure resulting in material prejudice to a party.

> (d) Not supported by competent, material and substantial evidence on the whole record.
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
> (f) Affected by other substantial and material error of law.

MCL § 24.306. As discussed above, the Court of Appeals has held that in applying this standard, an administrative agency's decision is entitled to substantial deference. See *infra Central State Bank*, 136 Mich. App. at 372; *Neal* 1998 Mich. App. LEXIS 858 at \*16-\*17.

50. The Claimant argues that Mr. Garrett's letter did not accept the elimination of longevity payments for 2010. This is incorrect. *First*, the letter does not state that it rejects elimination of the longevity payment 2010 – to the contrary it states that AFSCME accepts the recommendations of the fact-finder (which eliminated longevity payments as of October 2010). Ex. 5. *Second*, regardless of whether Mr. Garrett intended to accept the elimination of the 2010 longevity payments, the City exercised its lawful right to impose the recommendations of the fact-finder, which eliminated longevity payments; AFSCME's agreement was not required for implementation.[6] It is irrelevant

---

[6] Under PERA, following fact finding, an employer is entitled to implement the fact finder's recommendations, even absent the assent of the union, so long as the employer has satisfied its duty to meet and bargain with the union for a reasonable period of time following the making of the fact-finder's recommendations. *Orion Twp.*, 18 MPER ¶ 72 at \*9 (2005). Here

whether AFSCME believes that its members previously had earned the payment –

there was no statutory or contractual obligation on the City to provide the payment

in 2010.

51.     As a result, this claim should be disallowed and expunged in its

entirety.

**Claim 12: Negotiation of Local 542 Supplement Agreement – MERC Case Number C07 L-033.**

52.     The Claimant has agreed to withdraw this claim.  <u>See</u> Dismissal

Order.[7]

**Claim 13: Detroit and SEMHA – MERC Case No. C05 H-194.**

53.     Claim 13 relates to a 2005 unfair labor practice charge filed by

AFSCME alleging that Department of Health employees were laid off and then

rehired by a contractor in violation of PERA.  <u>See</u> Claim Objection Ex. 1 at 8.

---

AFSCME does not dispute that the imposition of the fact finder's recommendations was lawful.

[7]     This claim alleges that the City's failure to negotiate a supplemental agreement with AFSCME Local 542 caused its members unspecified "financial harm."  <u>See</u> Claim Objection Ex. 1.  The City submits that this claim has no value because:  (a) supplemental agreements do not address economic terms (economic terms are  covered by the AFSCME Master Agreement), thus a failure to have a supplemental agreement would not cause financial harm to bargaining unit members; and (b) this issue is moot because Local 542 now has a ratified supplemental agreement.

54. This claim should be disallowed because: (a) the Claimant failed to timely prosecute this unfair labor practice charge; (b) the layoffs were allowed under the collective bargaining agreement in place at the time; and (c) contrary to the Claimant's arguments, the underlying events had nothing to do with outsourcing.

**Claim 14: Breach of Contract Claims.**

55. Claim 14 apparently alleges that the City breached various AFSCME collective bargaining agreements, but fails to specify any particular breaches. See Claim Objection Ex. 1 at 8.

56. This claim is too vague and general to state a legitimate and allowable claim. Additionally, this claim is duplicative of many of the individual grievances included as part of Claim 15. As a result, Claim 14 should be disallowed and expunged in its entirety.

**Claim 15: Exhibit 2 Listing of Specific Grievances.**

57. Claim 15 refers to a list of over 800 grievances attached as Exhibit 2 to the Claim (the "Grievance Chart"). See Proof of Claim at Ex. 2.

58. The City's Labor Relations Department engaged in facilitative mediation with AFSCME to secure an expedited resolution to the grievances listed in the Grievance Chart, as well as others that appeared on various iterations of the Grievance Chart provided to the City by AFSCME.

-22-

59.     Attached hereto as Exhibit 6 is Exhibit A to the City's proposed settlement agreement, which sets forth the resolution of approximately 220 grievances through the mediation process.

60.     With respect to the six hundred or so additional grievances included on the Grievance Chart, but not included in Exhibit 6, AFSCME informed the City that the vast majority have been withdrawn, while some remain outstanding.  The City anticipates that City Labor Relations will conclude mediation of these individual grievances with AFSCME in the near future, allowing the parties to enter into a settlement agreement requiring AFSCME to withdraw the portions of the Proof of Claim relating to the individual grievances.

**Claim 16: City of Detroit/Human Services Department – Grievance No. 25-01-12 / COA: 12-0077708-CL.**

61.     Claim 16 relates to an award issued by Arbitrator Roumell, attached as Exhibit 12 to the Claimant's Response, finding that various AFSCME-represented employees were laid off in violation of the applicable collective bargaining agreement.  See Response Ex. 12.

62.     To the extent that any liability is due and owing under the arbitration award, such liability is limited.  The City's records show that approximately one hundred AFSCME-represented employees were affected by the layoff.   Of those affected, more than a third either retired or were re-hired by the City.  In addition, other factors mitigate any potential liability, including, for

example, an individual's receipt of unemployment insurance and income derived from subsequent employment of which the City would have no record.

63.     Without adequate support from AFSCME for this alleged liability, Claim 16 should be disallowed.

***Claim 17: City of Detroit Retirees Health Care – Grievance No. C10 A-025.***

64.     Claim 17 should be disallowed for all of the reasons set forth in the Supplemental Brief.

***Claim 18: Payroll Disputes.***

65.     Claim 18 alleges unspecified "payroll disputes." but fails to allege any particular dispute with particularity.  See Proof of Claim Ex. 1.

66.     This claim is too vague and general to state a legitimate and allowable claim.  Additionally, this claim is duplicative of many of the individual grievances included as part of Claim 15.  As a result, Claim 18 should be disallowed and expunged in its entirety.

***Claim 19: Detroit Service and Maintenance Outsourcing in Downtown Detroit – Grievance Number C09-078.***

67.     Claim 19 alleges that between 2009 and 2012 the City reduced the overtime of "40-60" AFSCME members in violation of the then-current collective bargaining agreement.  See Proof of Claim Ex. 1.  However, AFSCME has failed to provide the referenced grievance, and the claim fails to allege any particular incident or identify the affected employees with particularity.

-24-

68.     This claim is too vague and general to state a legitimate and allowable claim.  Additionally, this claim may be duplicative of some of the individual grievances included as part of Claim 15.  As a result, Claim 19 should be disallowed and expunged in its entirety.

### Claim 20: Tree Artisan Failure to Secure License –  Grievance Number 727May08.

69.     Claim 20 alleges that the City failed to reinstate one employee pursuant to an arbitration award finding that the employee was wrongfully terminated.  <u>See</u> Proof of Claim Ex. 1.

70.     In the absence of more specifics from AFSCME with respect to this employee, including potential mitigation, the City submits that Claim 20 should be disallowed.

## Conclusion

71.     For the foregoing reasons, the City requests that the Court sustain the Claim Objection, disallow and expunge the Proof of Claims and grant such other and further relief to the City as the Court may deem proper.

Dated:  October 17, 2014             Respectfully submitted,


    /s/  Heather Lennox
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

John A. Simon (P61866)
Tamar N. Dolcourt (P73425)
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700

Detroit, Michigan 48226
Telephone:  (313) 234-7100
Facsimile:  (313) 234-2800
jsimon@foley.com
tdolcourt@foley.com

ATTORNEYS FOR THE CITY

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Reply in Support of Objection to Proof of Claim Number 2958 Filed by Michigan AFSCME Council 25 and Its Affiliated Detroit Locals was filed and served via the Court's electronic case filing and noticing system on this 17th day of October, 2014.

/s/  Heather Lennox