# Exhibit 2

# STATE OF MICHIGAN
# EMPLOYMENT RELATIONS COMMISSION
# LABOR RELATIONS DIVISION

In the Matter of:

CITY OF DETROIT,
    Public Employer-Respondent,

    -and-

Case No. D09 F-0703

POLICE OFFICERS ASSOCIATION OF MICHIGAN
(EMERGENCY MEDICAL TECHNICIAN UNIT),
    Labor Organization-Petitioner.


CITY OF DETROIT,
    Public Employer-Respondent,

    -and-

Case No. D11 J-1169

DETROIT POLICE COMMAND OFFICERS ASSOCIATION,
    Labor Organization-Petitioner.


CITY OF DETROIT,
    Public Employer-Respondent,

    -and-

Case No. D13 A-0005

DETROIT POLICE LIEUTENANTS & SERGEANTS ASSOCIATION,
    Labor Organization-Petitioner.
_____/

APPEARANCES:

Butzel Long, P.C. by Malcolm D Brown, and Miller, Canfield, Paddock and Stone, P.L.C., by John H. Willems, for Respondent

Frank A. Guido, General Counsel, for Petitioner Police Officers Association of Michigan

Sachs Waldman, P.C., by Mary Ellen Gurewitz, Marshall J. Widick, and James A. Britton for Petitioner Detroit Police Command Officers Association

Miller Cohen P.L.C., by Richard G Mack, Jr., and Keith D. Flynn, for Petitioner Detroit Police Lieutenants & Sergeants Association

Legghio & Israel P.C., Christopher P. Legghio for Amicus Curiae Detroit Fire Fighters Association

## DECISION AND ORDER

This matter is before the Commission on the motions of the Employer, the City of Detroit. On April 18, 2013, the Employer filed its Emergency Motion for Determination of Arbitral Jurisdiction and Dismissal of Act 312 Petitions and Motion for Stay Pending Ruling and its supporting brief. In its motion to the Commission, the Employer states that in each of the three Act 312 arbitration proceedings, the Employer filed a motion with the arbitrator seeking dismissal of the petition on the grounds that the arbitrator had no jurisdiction over this matter based on the suspension of the Employer's duty to bargain set forth in § 27(3) of the Local Financial Stability and Choice Act, 2012 PA 436 (PA 436), MCL 141.1541 – 141.1575. The Employer also filed a motion with each arbitrator seeking a stay of proceedings pending the outcome of the arbitrator's ruling. According to the Employer's motion to the Commission, two of the arbitrators denied the Employer's motion to dismiss and the third had failed to rule at the time the Employer filed the instant motion with the Commission.

Each of the Unions involved in the three arbitrations, Police Officers Association of Michigan (POAM), Detroit Police Command Officers Association (DPCOA), and Detroit Police Lieutenants & Sergeants Association (DPLSA) have filed responses to the Employer's motions to the Commission. At our meeting on May 14, 2013, we stayed the Act 312 proceedings pending our decision in this matter, granted leave to the Detroit Fire Fighters Association to file an amicus curiae brief in response to the City's motions, and heard oral argument from the Employer, POAM, DPCOA, and DPLSA.

The Employer claims that each of the three Act 312 arbitration cases should be dismissed based on the suspension of its duty to bargain pursuant to PA 436. Each of the involved Unions and the amicus curiae contend that there is no basis for dismissal of the Act 312 arbitrations and have raised several arguments in an effort to rebut the Employer's contention that the arbitrations should be dismissed. The Unions question the Commission's jurisdiction to dismiss a pending Act 312 arbitration. The three involved Unions contend that the suspension of the Employer's duty to bargain under PA 436 does not impact the parties' rights and obligations to proceed with Act 312 arbitrations on petitions filed prior to March 28, 2013, the effective date of Act 436.

Procedural History

In *City of Detroit and Police Officers Association of Michigan*, Case No. D09 F-0703, the Commission received notice on June 1, 2009, that the parties were in negotiations for a new collective bargaining agreement pursuant to §7(2) of the Public Employment Relations Act (PERA), 1965 PA 379 as amended, MCL 423.207(2). On June 15, 2010, the POAM filed a petition for Act 312 arbitration. The arbitrator currently assigned to the case, William E. Long, was appointed on October 2, 2012. On or about April 15, 2013, the Employer filed two motions with Arbitrator Long, a motion for an Award of Dismissal Due to Lack of Arbitral Jurisdiction,

2

and a motion for a Stay of Proceedings Pending Determination of Jurisdiction by MERC. On April 17, 2013, Long denied the motion to dismiss but granted the stay after learning that the Employer had brought similar motions before this Commission and based on his belief that this Commission was the appropriate body to resolve this issue.

At the time of Long's April 17 ruling, hearing dates had already been scheduled for April 22, April 29, and May 2, 2013. He notified the parties that the hearing scheduled for April 22 would proceed, but directed the parties to meet on the remaining two dates for the purpose of reviewing, clarifying, and possibly resolving some of the issues in advance of any subsequent hearing dates. He concluded that if "MERC rules that Section 27(3) of Act 436 does preclude MERC from retaining jurisdiction of this case, proceeding with the April 22, 2013 hearing and scheduling others, if needed, following a ruling by MERC, is not a significant financial burden on the parties and the information obtained from the April 22, 2013 hearing, and the April 29, 2013 and May 2, 2013 meetings of the representatives for the parties, may assist the parties in ultimate resolution of many matters in dispute through further collective bargaining." The April 22, 2013 hearing was conducted and is the only hearing that has been held in this case.

In *City of Detroit and Detroit Police Command Officers Association*, Case No. D11 J-1169, the Employer filed a petition for Act 312 arbitration on October 5, 2011. On September 11, 2012, the Employer withdrew its petition over the objection of the DPCOA. In response, the director of the Bureau of Employment Relations, notified the parties by letter dated September 13, 2012, that the Commission had reviewed the parties' filings at its September 11, 2012 meeting and concluded that nothing in the Act 312 statute and/or rules requires or allows the Commission to approve or deny a party's request to withdraw its petition. The letter went on to explain that the "obvious remedy for a Union that objects to the withdrawal is to file its own Act 312 petition." The DPCOA filed its petition for Act 312 arbitration on September 20, 2012. Arbitrator Gregory M. Saltzman was appointed on October 5, 2012 and held a prehearing conference on March 1, 2013. In an e-mail to the parties dated April 19, 2013, Arbitrator Saltzman acknowledged receipt of the two motions from the Employer and deferred the issue to the Commission.

In *City of Detroit and Detroit Police Lieutenants & Sergeants Association*, Case No. D13 A-0005, a petition for Act 312 arbitration was filed on February 4, 2013 by the DPLSA. Arbitrator Francis L Hill was appointed on February 19, 2013, and held a prehearing conference on February 26, 2013. In an e-mail to the parties on April 28, 2013, Arbitrator Hill notified the parties of hearing dates scheduled for May 15, 16, and 21, and June 11 and 13, 2013. She informed the parties that the Employer's motion to dismiss was pending before the Commission and that she would advise them if MERC's decision had an impact on the scheduled hearing dates.

Discussion and Conclusions of Law:

I. COMMISSION JURISDICTION

The Employer argues that the Commission should rule on its motion to dismiss because the arbitrators are deferring the question of jurisdiction to MERC. The Employer seeks a global

3

ruling on the legal issues presented by the impact of PA 436 on pending Act 312 arbitrations and wants the Commission to provide guidance on the question of whether the arbitrators may exercise jurisdiction in these matters. Whether the Commission has jurisdiction to rule on the questions presented by the Employer's motion to dismiss depends on the authority granted by the Legislature to MERC in the Labor Relations and Mediation Act (LRMA), Act 176 of 1939; the Public Employment Relations Act (PERA), Act 336 of 1947; and the act that provides for compulsory arbitration of labor disputes in police and fire departments, Act 312 of 1969 (Act 312).

A. Act 312 Provisions with Respect to MERC's Authority

Matters proceed to Act 312 arbitration following mediation initiated pursuant to §7 of PERA, MCL 423.207[1]. After a matter has been submitted to mediation for at least 30 days, either of the parties may request binding arbitration pursuant to § 3 of Act 312, MCL 423.233. In *City of Manistee v Employment Relations Comm & Manistee Fire Fighters Ass'n*, 168 Mich App 422, 428 (1988), the Court commented: "The only prerequisites [to Act 312 arbitration] are those expressly stated in § 3 of Act 312." Section 3 of Act 312, MCL 423.233, sets the prerequisites for proceeding to Act 312 arbitration as follows:

> Whenever in the course of mediation of a public police or fire department employee's dispute, except a dispute concerning the interpretation or application of an existing agreement (a "grievance" dispute), the dispute has not been resolved to the agreement of both parties within 30 days of the submission of the dispute to mediation, or within such further additional periods to which the parties may agree, the employees or employer may initiate binding arbitration proceedings by prompt request therefor, in writing, to the other, with copy to the employment relations commission.

Only §§ 3, 4, 5, 6 and 7a of Act 312, as amended, mention or refer to the Commission. Section 4, MCL 423.234, provides the process for the parties to select their delegates to the arbitration panel and notify each other and the "mediation board" of their selections. Section 5, MCL 423.235, establishes the procedure to be used in selecting the chair of the arbitration panel

---

[1] Section 7 of PERA provides as follows:

(1) Upon the request of the collective bargaining representative defined in section 11 or, if a representative has not been designated or selected, upon the request of a majority of any given group of public employees evidenced by a petition signed by the majority and delivered to the commission, or upon request of any public employer of the employees, the commission forthwith shall mediate the grievances set forth in the petition or notice, and for the purposes of mediating the grievances, the commission shall exercise the powers and authority conferred upon the commission by sections 10 and 11 of Act No. 176 of the Public Acts of 1939, as amended, being sections 423.10 and 423.11 of the Michigan Compiled Laws.

(2) At least 60 days before the expiration date of a collective bargaining agreement, the parties shall notify the commission of the status of negotiations. If the dispute remains unresolved 30 days after the notification on the status of negotiations and a request for mediation is not received, the commission shall appoint a mediator.

4

from MERC's panel of arbitrators, authorizes MERC to establish and appoint members of the panel of arbitrators, and requires MERC to establish qualifications and training for panel members. Section 6, MCL 423.236, sets time periods for the arbitration and establishes procedures that the arbitration panel members are to follow. It also provides that the fee to be paid to the panel's chair is to be established in advance by the Commission. Section 7a, MCL 423.237a, authorizes the chair of the arbitration panel to remand the matter for further bargaining and requires the chair to notify the Commission of any such remand.

B. Prior MERC Actions in Act 312 Cases

The Employer contends that the Commission is empowered to determine jurisdictional limits for Act 312 panels, citing *City of Detroit*, 1990 MERC Lab Op 561, 565. In the *City of Detroit* case, after noting that the Commission has jurisdiction to determine what is a mandatory subject of bargaining and whether employees are eligible for Act 312 arbitration, the Commission denied the employer's motion to instruct the Act 312 arbitrator to refrain from deciding those issues. The Commission stated, *id.* at 565:

> The jurisdiction of an Act 312 arbitration panel to make findings on these issues in the absence of, or concurrent with, our rulings has now been firmly established. We see no reason to grant the employer's request that we direct the Act 312 panel's actions in this case. Under Section 12 of Act 312, the employer may seek review by the Circuit Court of findings by the arbitration panel on the grounds that the panel exceeded its jurisdiction.

While it may be noted that the Commission refused to dismiss the Act 312 proceeding in this case, MERC did not find that it lacks the authority to do so.

In support of its contention that the Commission should decide this issue, the Employer also argues that Act 312 panels function under the auspices of the Commission and are bound by the Commission's decisions, citing *Jackson Fire Fighters Ass'n v City of Jackson*, 227 Mich App 520, 523 (1998). In the *Jackson Fire Fighters Ass'n* case, the Act 312 arbitrator held that a matter was a mandatory subject of bargaining. The circuit court affirmed the arbitration award on appeal. In a concurrent unfair labor practice charge case involving the same parties, *City of Jackson*, 1996 MERC Lab Op 125; 9 MPER 27050, the Commission found the disputed matter to be a permissive subject of bargaining. Upon subsequent review of the circuit court ruling and MERC's decision, the Court of Appeals held that MERC had primary jurisdiction to determine whether the matter was a mandatory subject of bargaining, and therefore, the decision of the arbitrator did not bar MERC from adjudicating the issue based on collateral estoppel. In the two cases cited above, it is clear that the Commission has jurisdiction to determine, in an unfair labor practice charge case, whether subjects of bargaining brought before an Act 312 arbitrator are mandatory or permissive.

This Commission also has jurisdiction to determine whether an Act 312 arbitration should proceed by ascertaining whether the employees in the bargaining unit are eligible for Act 312 arbitration. *Metropolitan Council 23, AFSCME v Oakland Co (Prosecutor's Investigators)*, 89 Mich App 564 (1979) rev'd on other grounds, 409 Mich 299 (1980); *Kalamazoo Co*, 23

5

MPER 22 (2010); *Oakland Co & Oakland Co Sheriff*, 20 MPER 63 (2007); *City of Grand Rapids*, 1981 MERC Lab Op 327. Typically, such determinations are made in the context of a unit clarification or other representation proceeding.

In a representation proceeding, *Oakland Co Sheriff's Dep't*, 1977 MERC Lab Op 843, the Commission was called upon to determine whether a pending Act 312 arbitration was appropriate. The union, Metropolitan Council 23 of AFSCME, and the employer, Oakland County Sheriff's Department, had reached an impasse in negotiations and in mediation. The union initiated arbitration under Act 312. The employer objected, contending that the arbitration included the issue of wages for "nonpolice" classifications that were not eligible for Act 312 arbitration. The employer moved to dismiss the representation hearing, which was scheduled before a MERC ALJ, contending the matter was within the sole discretion of the Act 312 arbitrator. The Commission denied the employer's motion and concluded, *id.* at 846-848, that it did indeed have jurisdiction to resolve the issue. The MERC noted that § 14 of Act 312 specifically makes the Act supplementary to PERA and observed that § 7 of PERA MCL 423.207, and §§ 10 and 11 of the LRMA, MCL 423.10 and 423.11, conferred broad powers upon it. The Commission explained, *id.* at 847,

> We find that the responsibility for implementing Act 312 necessarily includes the power to determine who is covered by the Act. This is simply an extension of the Commission's function in representation matters. The resolution of questions involving employer and employee status, exclusions under PERA and the LRMA, community of interest and appropriate bargaining units, is an integral part of the work of the Commission. Clearly, the Commission's expertise in determining such issues is significant in determining the question raised in these proceedings. In addition, a determination by the Commission ensures the necessary uniformity and consistency in this important area.
>
> . . . . [A] determination of who is covered by the Act is a condition precedent to the arbitration proceeding itself, and is not properly before the arbitrator since it is not an "issue in dispute" as asserted by the Employer.

In a separate, unrelated matter, *Metropolitan Council 23, AFSCME v Oakland Co (Prosecutor's Investigators)*, 89 Mich App 564 (1979) rev'd on other grounds, 409 Mich 299 (1980), the Court of Appeals considered an appeal of MERC's decision in *Oakland Co (Prosecutor's Investigators)*, 1978 MERC Lab Op 328, and adopted the Commission's reasoning *Oakland Co Sheriff's Dep't*. There, the Court of Appeals found, at 89 Mich App 567, that the Legislature intended to provide public employees eligible for Act 312 arbitration with an "expeditious, effective and binding procedure for the resolution of disputes." Noting that the Legislature's purpose of establishing an expeditious dispute resolution procedure would be impeded by the lengthy delays inherent in court procedures, the Court reasoned, *id.* at 567-568, that MERC "has the necessary implied authority and expertise in labor relations to initially determine the eligibility of public employees for compulsory arbitration" and cited *Oakland Co Sheriff's Dep't*, 1977 MERC Lab Op 843. The Court of Appeals affirmed MERC's finding, in *Oakland Co (Prosecutor's Investigators)*, 1978 MERC Lab Op 328, that the Oakland County prosecutor's investigators were eligible for Act 312 arbitration.

6

Subsequently, the Michigan Supreme Court granted the employer's motion for leave to appeal and both MERC and the Court of Appeals were reversed on the issue of the investigators' eligibility for Act 312 arbitration. *Metropolitan Council 23, AFSCME v Oakland Co (Prosecutor's Investigators)*, 409 Mich 299 (1980). The Supreme Court found the employees were not subject to Act 312 coverage. Although the Supreme Court did not address the issue of whether MERC has the authority to determine Act 312 eligibility, it has been widely accepted that MERC's authority extends to determining the eligibility of employees for Act 312 arbitration. Since that time, MERC has reviewed the Act 312 eligibility of numerous bargaining units in which the union and employer disputed the eligibility of all or part of the unit's members. *Macomb Co (Sheriff's Dep't)*, 1991 MERC Lab Op 542, 547. See, e.g. *Michigan State Univ (Police Dep't)*, 26 MPER 44 (2013); *Kalamazoo Co*, 23 MPER 22 (2010); *Oakland Co & Oakland Co Sheriff*, 20 MPER 63 (2007); *Kent Co & Kent Co Sheriff*, 1991 MERC Lab Op 549; 4 MPER 22071; *Washtenaw Co (Sheriff's Dep't)*, 1990 MERC Lab Op 768; *City of Detroit (Police Detention Facility)*, 1990 MERC Lab Op 598; *Midland Co*, 1989 MERC Lab Op 923; *Mecosta Co*, 1989 MERC Lab Op 607.

We agree with the prior Commission in *Oakland Co Sheriff's Dep't*, and with the Court of Appeals in *Metropolitan Council 23, AFSCME v Oakland Co (Prosecutor's Investigators)* that by enacting § 7 of PERA and §§ 10 and 11 of the LRMA, the Legislature conferred broad powers upon the Commission for the purpose of resolving labor disputes. We also agree with the previous Commission that it is our responsibility to exercise these powers "as are necessary to carry out the purposes of PERA and the supplementary Act 312." As with the Commission in *Oakland Co Sheriff's Dep't*, 1977 MERC Lab Op 843, 847, "We find that the responsibility for implementing Act 312 necessarily includes the power to determine who is covered by the Act." Therefore, given the importance of this issue and the number of parties affected, including those beyond the instant cases, we find it is necessary to provide the parties and our panel of arbitrators with our decision on the question of whether the suspension of the duty to bargain pursuant to § 27(3) of the Local Financial Stability and Choice Act, Public Act 436 of 2012, MCL 141.1567(3), also suspends the authority of the Act 312 arbitrator in a pending arbitration.

C. Does This Matter Raise a Constitutional Question That Must Be Resolved by the Courts?

DPCOA argues that the question of whether PA 436 deprives an Act 312 arbitrator of jurisdiction must be determined by the courts, citing *Kent Co Sheriffs Ass'n v Kent Co*, 463 Mich 353, 359-362 (2000).[2] DPCOA argues at length that the Legislature's failure to amend §15(8) of PERA, to replace the reference to 2011 PA 4 with a reference to PA 436, makes the language of that provision invalid and creates a conflict with § 27(3) of PA 436 in violation of the Michigan Constitution. Section 15(8) of PERA states:

> Collective bargaining agreements under this act may be rejected, modified, or terminated pursuant to the local government and school district fiscal

---
[2] In the *Kent Co Sheriffs Ass'n* case, the State Supreme Court held that the circuit court correctly ruled on a Freedom of Information Act issue even though the matter impacted a labor dispute over which MERC would have had jurisdiction if it had involved an unfair labor practice charge. Since the case did not involve an unfair labor practice charge, the circuit court was not required to defer to MERC.

7

accountability act, 2011 PA 4, MCL 141.1501 to 141.1531. This act does not confer a right to bargain that would infringe on the exercise of powers under the local government and school district fiscal accountability act, 2011 PA 4, MCL 141.1501 to 141.1531.

The Commission has no jurisdiction to resolve questions of the constitutionality of legislative enactments. *Michigan State Univ*, 17 MPER 75 (2004). The Commission must decide matters before it based on the language of PERA and its amendments. *Waverly Cmty Sch*, 26 MPER 34 (2012). Thus, any constitutional issues that the parties wish to raise must be raised elsewhere.

## II. THE IMPACT OF PA 436 ON RIGHTS AND OBLIGATIONS UNDER ACT 312

The Employer argues that the arbitration panels have no jurisdiction over the parties, the petitions, or the matters in dispute where the City's duty to bargain has been suspended by the operation of § 27(3) of PA 436. According to the Employer, Act 312 is a procedural statute and acts as an extension of, or supplement to, PERA, while PERA is the substantive enabling statute that defines the contents and parameters of the duty to bargain. The Employer contends: "Where the duty to bargain under PERA is suspended, there can be no compulsory arbitration over mandatory subjects of bargaining because no subjects remain 'mandatory' and therefore, [there is] no dispute to resolve."

### A. The Relationship between 1969 PA 312, As Amended, and 2012 PA 436

This Commission's interpretation of these two statutes is constrained by rules of statutory construction established by the courts. The rules of statutory construction tell us that, much like any literary composition, a statute is enacted and is meant to be read as a whole. *Metropolitan Council 23, AFSCME v Oakland Co Prosecutor*, 409 Mich 299, 317-318 (1980). As such, any provision that is in dispute must be read in the light of the general purpose of the act. *Romeo Homes, Inc v Comm'r of Revenue*, 361 Mich 128, 135 (1960).

While both statutes deal with local government administration there is no express conflict in their purposes or in their wording. Act 312 of 1969 was recently amended by 2011 PA 116 which became effective July 20, 2011. Less than two years later, 2012 PA 436 took effect on March 28, 2013. Indeed, PA 436 makes no reference to Act 312 or to its recent amendment in 2011 PA 116. PA 436 does not exclude bargaining units eligible for Act 312 arbitration from its coverage.[3]

Under well-established principles of statutory construction, the legislature is presumed to be aware of and to have considered the effect on all existing statutes when enacting new ones. *Walen v Dep't of Corrections*, 443 Mich 240, 248 (1993). Moreover, rules of statutory construction hold that the legislature is presumed to be aware of statutory interpretations by the

---
[3] We note that the Legislature expressly excluded employees eligible for Act 312 arbitration from the changes under the "Freedom-to-Work" amendment to PERA, 2012 PA 349, which became effective on the same day as 2012 PA 436.

8

courts and by the administrative bodies charged with statutory enforcement. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506 (1991); *Melia v Appeal Bd of Michigan Employment Sec Comm*, 346 Mich 544, 565-566 (1956); *Parker v Bd of Ed of Byron Center Pub Sch*, 229 Mich App 565, 570-5712 (1998).

The Commission has found that the failure to honor terms and conditions of employment established by an Act 312 award is a violation of § 10(1)(e) of PERA. *City of Jackson*, 1979 MERC Lab Op 1146, 1151-1154. See also, *City of Hamtramck*, 1984 MERC Lab Op 520, 524.

In *City of Jackson*, at 1151, the Commission explained:

A refusal to execute a completed collective bargaining agreement is an unfair labor practice whether negotiated through voluntary collective bargaining or by submission of unresolved issues to Act 312 arbitration.

The Commission went on to say, *id.* at 1153-1154:

The legislative policy of providing an "expeditious," "effective," and "binding" procedure for resolving labor disputes would be severely undermined if the parties could short circuit the Act by refusing to execute the contract.

\* \* \*

The term "resolution of disputes" in § 1 of the Act [312] means that the product of compulsory arbitration is a completed collective bargaining agreement. The refusal to execute that agreement is a refusal to bargain in good faith

Section 10(1)(e) of PERA prohibits public employers that have a duty to bargain from refusing to bargain collectively with the representatives of their employees. However, if their duty to bargain has been suspended, their refusal to bargain does not violate § 10(1)(e). Quite simply, there can be no breach of duty if there is no duty. Thus, when a public employer's duty to bargain has been suspended, their failure to comply with the terms and conditions of an Act 312 award would not violate § 10(1)(e) of PERA and the Act 312 award cannot be enforced under PERA.

As we stated in *Oakland Co & Oakland Co Sheriff*, 20 MPER 63 (2007):

Act 312 functions primarily as an extraordinary restriction on the ordinary rights of certain public employers to unilaterally impose changes in conditions of employment when good faith negotiations have failed to result in agreement.

Nevertheless, without reference to Act 312, § 12(1)(j) of PA 436 in conjunction with § 15(8) of PERA gives the Emergency Manager the right to reject, modify, or terminate terms of an existing collective bargaining agreement. Section 15(8) of PERA states:

Collective bargaining agreements under this act may be rejected, modified, or terminated pursuant to the local government and school district fiscal

9

accountability act, 2011 PA 4, MCL 141.1501 to 141.1531. This act does not confer a right to bargain that would infringe on the exercise of powers under the local government and school district fiscal accountability act, 2011 PA 4, MCL 141.1501 to 141.1531.[4]

Section 12(1)(j) of PA 436 states:

> (1) An emergency manager may take 1 or more of the following additional actions with respect to a local government that is in receivership, notwithstanding any charter provision to the contrary:
>
> * * *
>
> (j) Reject, modify, or terminate 1 or more terms and conditions of an existing contract.

---

[4] We recognize the arguments made by the Petitioners challenging the constitutionality of PA 436 and the substitution of its provisions for the provisions of 2011 PA 4. However, as indicated above in our discussion of Petitioners' constitutional challenge, we must administer the law as it is enacted and must give effect to the provisions of PA 436, as well as its enacting § 2 which provides as follows:

2012 PA 436, enacting § 2, provides:

> It is the intent of the Legislature that this act function and be interpreted as a successor statute to former 1988 PA 101, former 1990 PA 72, and former 2011 PA 4, and that whenever possible a reference to former 1988 PA 101, former 1990 PA 72, or former 2011 PA 4, under other laws of this state or to a function or responsibility of an emergency financial manager or emergency manager under former 1988 PA 101, former 1990 PA 72, or former 2011 PA 4, under other laws of this state shall function and be interpreted to reference to this act, with the other laws of this state referencing former 1988 PA 101, former 1990 PA 72, or former 2011 PA 4, including, but not limited to, all of the following:
>
> (a) The Charter Township Act, 1947 PA 359, MCL 42.1 to 42.34.
>
> (b) 1966 PA 293, MCL 45.501 to 45.521.
>
> (c) 1851 PA 156, MCL 46.1 to 46.32.
>
> (d) The General Law Village Act, 1895 PA 3, MCL 61.1 to 74.25.
>
> (e) The Home Rule Village Act, 1909 PA 278, MCL 78.1 to 78.28.
>
> (f) The Fourth Class City Act, 1895 PA 215, MCL 81.1 to 113.20.
>
> (g) The Home Rule City Act, 1909 PA 279, MCL 117.1 to 117.38.
>
> (h) The Metropolitan Transportation Authorities Act of 1967, 1967 PA 204, MCL 124.401 to 124.426.
>
> (i) 1947 PA 336, MCL 423.201 to 423.217.

10

In the light of the language of PA 436, we cannot find that the Legislature intended to impose the aforesaid "extraordinary restrictions" of Act 312 on an emergency manager. Inasmuch as an Act 312 award serves as the parties' collective bargaining agreement, it appears that pursuant to § 15(8) of PERA and § 12(1)(j) of PA 436 that the Emergency Manager could reject, modify, or terminate terms of an Act 312 award. If that is the case, it seems doubtful that the Legislature would have intended an employer in receivership, with no duty to bargain and with an emergency manager in place, to be subject to Act 312 arbitration proceedings.

Petitioners have argued that the amendment to § 9 of Act 312 by 2011 PA 116 indicates that an employer in receivership remains subject to the operation of Act 312. Section 9 of Act 312, as amended, provides in relevant part:

> (1) If the parties have no collective bargaining agreement or the parties have an agreement and have begun negotiations or discussions looking to a new agreement or amendment of the existing agreement and wage rates or other conditions of employment under the proposed new or amended agreement are in dispute, the arbitration panel shall base its findings, opinions, and order upon the following factors:
>
> (a) The financial ability of the unit of government to pay. All of the following shall apply to the arbitration panel's determination of the ability of the unit of government to pay:
>
> * * *
>
> (iv) Any law of this state or any directive issued under the local government and school district fiscal accountability act, 2011 PA 4, MCL 141.1501 to 141.1531, that places limitations on a unit of government's expenditures or revenue collection.[5]

The Employer contends that the amendment to § 9 of Act 312 by 2011 PA 116 does not show that an employer in receivership remains subject to the operation of Act 312. The Employer asserts, that the amended § 9 of Act 312 applies to those municipalities where the duty to bargain has not been suspended. We agree.

B. Is Act 312 Arbitration Dependent on the Presence of a Duty to Bargain?

In *Metropolitan Council 23, AFSCME v Center Line*, 414 Mich 642 (1982), the Court inferred from PERA that the distinction drawn between mandatory and permissive subjects of bargaining determines the scope of the Act 312 arbitration panel's authority. Given the fact that Act 312 supplements PERA and that under § 15 of PERA the duty to bargain only extends to mandatory subjects, the Court concluded that the arbitration panel can only compel agreement as to mandatory subjects. The Court noted further that it would be inconsistent to conclude that the arbitration panel can issue an award on a permissive subject when the parties do not even have a

---

[5] See previous footnote regarding Enacting § 2 of PA 436

11

duty to bargain over such a subject. Based on that, we might infer that the arbitration panel has no authority over matters for which there is no duty to bargain.

The mediation process is a condition precedent to initiation of Act 312 arbitration. A public employer that has no duty to bargain has no duty to participate in mediation. Only a public employer not in receivership under PA 436 or a labor organization may be required by this Commission under § 10 of PERA to participate in mediation. Therefore, the duty to bargain must be present before a party can be compelled to involuntarily participate in mediation. If parties have no duty to participate in mediation, they cannot be required to participate in Act 312 arbitration.

Moreover, § 7a of Act 312 gives the arbitration panel chair the authority to remand the matter to mediation. Mediation is a function of bargaining pursuant to PERA. If there is no duty to bargain, there is also no duty to engage in mediation. Therefore, § 7a of Act 312 presupposes the presence of a duty to bargain. In the absence of a duty to bargain, there is no obligation to participate in Act 312 arbitration.

### C. Does Suspension of the Duty to Bargain Pursuant to 2012 PA 436 Convert Mandatory Subjects of Bargaining to Non-Mandatory Subjects of Bargaining?

The Employer contends: "Where there is no duty to bargain, there are no mandatory subjects in dispute regarding which an Act 312 panel has jurisdiction to fashion an Award." It asserts that "by operation of Act 436, there are no subjects regarding which there is a duty to bargain and therefore none can be the subject of an Award." (Emphasis in original.)

As previously noted, an Act 312 arbitration panel can only issue an award regarding mandatory subjects of bargaining. *Metropolitan Council 23, AFSCME v Center Line*, 414 Mich 642, 654-655 (1982). Moreover, as indicated above, both this Commission's past enforcement of an Act 312 award as a violation of the duty to bargain and the arbitration panel chair's authority under § 7a of Act 312 to remand a matter to mediation indicates an assumption that the duty to bargain is a condition precedent to participation in Act 312. However, we reject the Employer's premise that the suspension of the duty to bargain automatically converts the nature of subjects of bargaining from mandatory to non-mandatory. The existence of a duty to bargain is a separate and distinct issue from the question of whether a particular subject of bargaining is mandatory or permissive.

Whether a matter is a mandatory subject of bargaining depends on whether it has a significant or material impact on wages, hours, and other terms and conditions of employment or settles an aspect of the employer-employee relationship. *Detroit v Michigan Council 25, AFSCME*, 118 Mich App 211, 215 (1982); *Houghton Lake Ed Ass'n v Houghton Lake Cmty Sch, Bd of Ed*, 109 Mich App 1, 6 (1981). Once a subject has been determined to be a mandatory subject of bargaining, parties bound by the duty to bargain under PERA, must bargain concerning the subject. Neither party may take unilateral action on that subject unless the parties arrive at an impasse in their negotiations or there is a clear and unmistakable waiver. *Wayne Co Gov't Bar Ass'n v Wayne Co*, 169 Mich App 480, 486 (1988); 1 MPER 19105, aff'g 1987 MERC Lab Op 230; *Central Michigan Univ Faculty Ass'n v Central Michigan Univ*, 404 Mich 268, 277

12

(1978). See also *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54-55 (1974). The Commission and the courts have adopted an expansive interpretation of "wages, hours, and other terms and conditions of employment" under § 15 of PERA. *Local 1383, Int'l Ass'n of Fire Fighters v Warren*, 411 Mich 642, 652 (1981).

A matter that is a mandatory subject of bargaining remains so, even if a party's duty to bargain is suspended. The nature of the subject does not change just because the duty ceases. Wages, hours, and other terms and conditions of employment continue to be mandatory subjects for the purpose of determining what must be bargained by those parties who have a duty to bargain.

Where a public employer's duty to bargain is statutorily suspended, the employer has no *obligation* to bargain. However, nothing in PERA denies a public employer the *right* to bargain, even when the duty to bargain under § 15(1) has been suspended. Indeed, the suspension of a public employer's duty to bargain does not suspend the bargaining obligation of the labor organization representing that employer's employees. Therefore, if an emergency manager of a public employer in receivership determines that the employer should bargain with the labor organization, the employer has the right to bargain with that labor organization. The labor organization, in that situation, still has a duty to bargain in good faith pursuant to §§ 10(3)(c) and 15(1) of PERA. Similarly, if an emergency manager of a public employer in receivership determines that the employer should petition for Act 312 arbitration in an effort to resolve a labor dispute with a bargaining unit of police or fire fighters, that employer may petition for Act 312 arbitration. In that case, unless the parties agree otherwise, the arbitration would be limited to mandatory subjects of bargaining, that is, matters that have a material impact on wages, hours, and other terms and conditions of employment or settle an aspect of the employer-employee relationship.

The finding urged by the Employer on this issue, could result in the denial of an employer's right to settle a pending labor dispute through Act 312 proceedings. Even though we agree with the Employer that the suspension of its duty to bargain under PA 436 also suspends its obligation to participate in Act 312 proceedings, we cannot agree that such suspension denies the Employer the opportunity to participate in Act 312 arbitration should it so choose. Accordingly, we find the suspension of the duty to bargain does not convert mandatory subjects of bargaining to non-mandatory subjects. The underlying nature of subjects of bargaining, whether they are mandatory or permissive, does not change upon the suspension of an employer's duty to bargain. Indeed, nothing in PA 436 declares a change in the nature of subjects of bargaining. It merely suspends the duty to bargain of an employer in receivership. That employer still retains the right to bargain and the right to proceed to Act 312 arbitration if it determines that to be appropriate under the circumstances. However, where an employer in receivership chooses not to participate in Act 312 arbitration they have no obligation to do so. For the foregoing reasons, we conclude that where an employer has no duty to bargain under PERA and has not voluntarily consented to Act 312 arbitration, the arbitration panel has no authority to issue an award binding that employer.

13

III. CONCLUSION

The Employer in this matter is in receivership and has no duty to bargain under PA 436. It has expressed an unwillingness to bargain or participate in Act 312 arbitration in light of PA 436. As such, the Employer has no obligation to participate in Act 312 arbitration and is not required to do so. Accordingly, the arbitrations in the cases before us must be dismissed.

We have considered all other arguments submitted by the parties and conclude that they would not change the result in this case.

## ORDER

The Employer's motion to dismiss the Act 312 arbitrations pending in these three cases is granted. The Act 312 arbitrations in *City of Detroit and Police Officers Association of Michigan*, Case No. D09 F-0703, *City of Detroit and Detroit Police Command Officers Association*, Case No. D11 J-1169, and *City of Detroit and Detroit Police Lieutenants & Sergeants Association*, Case No. D13 A-0005, are hereby dismissed.

MICHIGAN EMPLOYMENT RELATIONS COMMISSION

_____
Edward D. Callaghan, Commission Chair

_____
Robert S. LaBrant, Commission Member

Dated: _____

COMMISSIONER GREEN, CONCURRING IN PART; DISSENTING IN PART:

Although I agree with the Majority's rejection of the Employer's argument that the suspension of the duty to bargain converts mandatory subjects of bargaining to permissive subjects, I disagree with the Majority's conclusion that the three Act 312 arbitration cases should be dismissed.

In numerous representation cases, we have been called upon to determine whether Act 312 petitions met the requirements of § 3 of Act 312 to initiate binding arbitration proceedings. In those cases, we were required to decide whether bargaining unit members met the definition of "public police or fire department employee" contained in § 2 of Act 312. Where the bargaining unit members were not public police or fire department employees, the requirements for initiating an Act 312 proceeding under § 3 were not met and, we dismissed the proceeding. For this Commission to initially determine the eligibility of public employees for compulsory arbitration in the context of representation proceedings is simply an extension of the Commission's function in representation matters.

14

However, in the three cases before us, there is no assertion by the Employer that the requirements for initiating Act 312 proceedings were not met. The Employer has not filed any representation proceeding claiming that the members of the three involved bargaining units are not public police or fire department employees as defined by § 2 of Act 312 nor has the Employer made any assertion that a creditable claim could be filed on that basis.

In these cases, the requirements for submitting the matters to mediation were met before PA 436 took effect and nothing in PA 436 indicates that the suspension of the duty to bargain is retroactive. When the parties were in mediation, the employer had a duty to bargain. In each case, the labor dispute was not resolved to the agreement of both parties and a petition for Act 312 arbitration was filed. All three petitions were filed and arbitrators were appointed in each case before PA 436 became effective.

I find nothing in PERA or Act 312 that authorizes this Commission to dismiss an Act 312 petition when the conditions in § 3 of Act 312 have been fully met. The Employer contends that the suspension of its duty to bargain, by PA 436, also suspends its obligations under Act 312. However, PA 436 contains no explicit prohibition barring Act 312 arbitration. Whether there is an implicit bar of binding arbitration by virtue of Act 436 is a matter for the courts to decide.

Although an emergency manager's authority to reject, modify, or terminate the provisions of a labor contract raises doubt as to whether a compulsory arbitration award is enforceable against an emergency manager, I conclude that the Commission lacks authority to dismiss an Act 312 arbitration where the requirements of Act 312 have been met. Consequently, I would deny the Employer's motion to dismiss the three Act 312 petitions.

MICHIGAN EMPLOYMENT RELATIONS COMMISSION

Nino E. Green, Commissioner

Dated: _____

15

13-53846-tjt   Doc 8001-2   Filed 10/17/14   Entered 10/17/14 23:49:43   Page 16 of 16