# Exhibit B

# EMERGENCY MANAGER ORDER

ORDER NO. \_\_\_\_

ORDER OF THE EMERGENCY MANAGER OF THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN, AUTHORIZING THE ISSUANCE AND RESTRUCTURING OF CERTAIN UNLIMITED TAX GENERAL OBLIGATION BONDS OF THE CITY OF DETROIT BY THE ISSUANCE BY THE CITY OF DETROIT OF NOT TO EXCEED $287,560,790 DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS (UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 IN ONE OR MORE SUB-SERIES FOR THE PURPOSE OF PROVIDING CERTAIN BANKRUPTCY PLAN OF ADJUSTMENT FINANCING FOR THE CITY RELATED TO UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS; AUTHORIZING A FIFTH SUPPLEMENT TO THE OUTSTANDING MASTER DEBT RETIREMENT TRUST INDENTURE TO SECURE REPAYMENT OF SAID BONDS; IMPLEMENTING THE ASSIGNMENT OF PAYMENTS ON NOT TO EXCEED $43,349,210 OF THE CITY'S OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS (STUB UTGO BONDS) PURSUANT TO THE PLAN OF ADJUSTMENT; AND AUTHORIZING THE AUTHORIZED OFFICERS TO MAKE CERTAIN DETERMINATIONS AND TO TAKE CERTAIN ACTIONS IN CONNECTION WITH THE TRANSFER OF A PORTION OF THE CITY'S OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS IN CONSIDERATION FOR BONDS ISSUED BY THE MICHIGAN FINANCE AUTHORITY.

# TABLE OF CONTENTS

Page

ARTICLE I  DEFINITIONS AND INTERPRETATION ........................................................... 6
    Section 101. Definitions ................................................................................................. 6
    Section 102. Interpretation ........................................................................................... 11

ARTICLE II DETERMINATIONS ........................................................................................... 11
    Section 201. Finding, and Declaration of Need to Issue Bonds; Authorized Denominations ....................................................................................... 11
    Section 202. Declaration of Borrowing ...................................................................... 12

ARTICLE III  AUTHORIZATION, REDEMPTION AND ASSIGNMENT OF THE BONDS ................................................................................................. 12
    Section 301. Authorization of Bonds and Pledge ....................................................... 12
    Section 302. Designations, Dates, Interest Rates, Maturities, Redemption and Other Terms of the Bonds and Stub UTGO Bonds ........................... 13
    Section 303. Execution, Authentication and Delivery of Bonds ................................. 15
    Section 304. Authentication of the Bonds .................................................................. 15
    Section 305. The MFA's Depository ........................................................................... 15
    Section 306. Mutilated, Destroyed, Stolen or Lost Bonds ........................................... 15
    Section 307. Form of the Bonds .................................................................................. 15

ARTICLE IV SPECIAL COVENANTS ................................................................................... 19
    Section 401. Tax Exemption Covenant for Tax-Exempt Bonds .................................. 19
    Section 402. Arbitrage Covenant ................................................................................ 19

ARTICLE V FUNDS AND ACCOUNTS; DISPOSITION OF BOND PROCEEDS ............... 19
    Section 501. Establishment of Accounts and Funds ................................................... 19
    Section 502. Debt Retirement Fund-All Bonds .......................................................... 20
        Section 503. Debt Retirement Fund – Series 2014 Escrow Fund .............................. 20
    Section 504. Investment of Monies in the Funds and Accounts .................................. 20

ARTICLE VI THE MASTER TRUSTEE .................................................................................. 20

Section 601. Master Trustee. ................................................................................................. 20

Section 602. Fifth Supplemental Indenture. .......................................................................... 21

ARTICLE VII SUPPLEMENTAL ORDERS OR RESOLUTIONS ......................................... 21
    Section 701. Supplemental Orders or Resolutions Not Requiring Consent of Holders of the Bonds ............................................................................ 21
    Section 702. Opinion and Filing Under Act 34 .......................................................... 22

ARTICLE VIII DEFEASANCE ................................................................................................. 22

Section 801. Defeasance ........................................................................................................ 22

ARTICLE IX OTHER PROVISIONS OF GENERAL APPLICATION ............................ 22
  Section 901. Approval of Other Documents and Actions............................................. 22
  Section 902. Continuing Disclosure Undertaking ........................................................ 23
  Section 903. Delegation of City to, and Authorization of Actions of the Mayor
                and the Finance Director.......................................................................... 23
  Section 904. Act 34 Approval of the Bonds ................................................................ 23
  Section 905. Approving Legal Opinions with Respect to the Bonds ........................... 23
  Section 906. Negotiated Transaction ........................................................................... 24
  Section 907. Delivery of Bonds ................................................................................... 24
  Section 908. Official Statement ................................................................................... 24
  Section 909. Appointment of Bond Counsel; Engagement of Other Parties. .............. 24
  Section 910. Parties in Interest..................................................................................... 24
  Section 911. No Recourse Under Order ...................................................................... 24
  Section 912. Severability ............................................................................................. 25
  Section 913. Cover Page, Table of Contents and Article and Section Headings............ 25
  Section 914. Conflict ................................................................................................... 25
  Section 915. Governing Law and Jurisdiction............................................................. 25
  Section 916. Order and Supplemental Order are a Contract........................................ 25
  Section 917. Effective Date ......................................................................................... 25
  Section 918. Notices .................................................................................................... 25

EXHIBIT A    OUTSTANDING PRIOR UTGO BONDS ................................................... A-1
EXHIBIT B    RESTRUCTURED UTGO BONDS AND MUNICIPAL
             OBLIGATIONS.............................................................................................. B-1
EXHIBIT C    STUB UTGO BONDS.................................................................................... C-1
EXHIBIT D    FORM OF CONTINUING DISCLOSURE UNDERTAKING ................... D-1

ORDER NO. \_\_\_\_

ORDER OF THE EMERGENCY MANAGER OF THE CITY OF DETROIT, COUNTY OF WAYNE, STATE OF MICHIGAN, AUTHORIZING THE ISSUANCE AND RESTRUCTURING OF CERTAIN UNLIMITED TAX GENERAL OBLIGATION BONDS OF THE CITY OF DETROIT BY THE ISSUANCE BY THE CITY OF DETROIT OF NOT TO EXCEED $287,560,790 DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS (UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 IN ONE OR MORE SUB-SERIES FOR THE PURPOSE OF PROVIDING CERTAIN BANKRUPTCY PLAN OF ADJUSTMENT FINANCING FOR THE CITY RELATED TO UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS; AUTHORIZING A FIFTH SUPPLEMENT TO THE OUTSTANDING MASTER DEBT RETIREMENT TRUST INDENTURE TO SECURE REPAYMENT OF SAID BONDS; IMPLEMENTING THE ASSIGNMENT OF PAYMENTS ON NOT TO EXCEED $43,349,210 OF THE CITY'S OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS (STUB UTGO BONDS) PURSUANT TO THE PLAN OF ADJUSTMENT; AND AUTHORIZING THE AUTHORIZED OFFICERS TO MAKE CERTAIN DETERMINATIONS AND TO TAKE CERTAIN ACTIONS IN CONNECTION WITH THE TRANSFER OF A PORTION OF THE CITY'S OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS IN CONSIDERATION FOR BONDS ISSUED BY THE MICHIGAN FINANCE AUTHORITY.

WHEREAS, at elections held on November 7, 1978, August 5, 1980, November 4, 1986, August 2, 1988, August 4, 1992, August 5, 1996, November 4, 1997, November 7, 2000, November 6, 2001, April 29, 2003, November 2, 2004 and February 24, 2009 (the "Prior Elections"), the qualified electors of the City of Detroit, County of Wayne, State of Michigan (the "City") authorized the issuance and sale of general obligation unlimited tax bonds of the City to finance certain public capital improvement projects of the City; and

WHEREAS, pursuant to the authorizations provided by certain of the Prior Elections, the City Charter, Act 279, Public Acts of Michigan, 1909, as amended ("Act 279"), Act 202, Public Acts of Michigan, 1943, as amended ("Act 202"), and Act 34, Public Acts of Michigan, 2001, as amended ("Act 34"), the City issued certain general obligation unlimited tax bonds (collectively, but not including the 2010A UTGO Bonds, as hereinafter defined, the "Prior UTGO Bonds") outstanding in the amounts set forth on Exhibit A attached hereto; and

WHEREAS, on March 18, 2010, pursuant to Act 80, Public Acts of Michigan, 1981, as amended ("Act 80") the City issued $249,790,000 of its Distributable State Aid General Obligation Limited Tax Bonds, Series 2010 (the "DSA Bonds") secured by and payable from money received or to be received by the City derived from the imposition of taxes by the State of Michigan (the "State") and returned or to be returned to the City as provided by law ("Distributable Aid"); and

WHEREAS, in connection with the issuance of the DSA Bonds, the City entered into a Master Debt Retirement Trust Indenture (the "Master Indenture") and a First Supplemental Debt Retirement Trust Indenture, each dated as of March 1, 2010, (the "First Supplemental Indenture") between the City and U.S. Bank National Association, Detroit, Michigan, as master trustee (the "Master Trustee" or the "Trustee"), that provides for the escrow of Distributable Aid payments received by the Trustee on behalf of the City to pay the debt service on obligations of the City secured by Distributable Aid (the "Distributable Aid Obligations"); and

WHEREAS, pursuant to Act 80, the Master Indenture and the First Supplemental Indenture, the DSA Bonds have a first lien on the City's Distributable Aid to secure the payment of the DSA Bonds and to provide for the direct payment to the Master Trustee of the Distributable Aid to be held in trust and used solely for payment of principal of and interest on Distributable Aid Obligations, and for that purpose, the City, the Master Trustee and the State Treasurer of the State of Michigan (the "State Treasurer") entered into an Agreement dated as of March 1, 2010 (the "DSA Bonds Deposit Agreement"); and

WHEREAS, on December 16, 2010, pursuant to the City Charter, Act 279 and Act 34, the City issued $100,000,000 Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010(A) (Taxable-Recovery Zone Economic Development Bonds-Direct Payment) (the "2010A UTGO Bonds") and sold them to the Michigan Finance Authority (the "MFA") under Act 227, Public Acts of Michigan, 1985, as amended ("Act 227"); and

WHEREAS, in connection with the issuance of the 2010A UTGO Bonds, the City entered into a Second Supplemental Debt Retirement Trust Indenture, dated as of December 1, 2010 (the "Second Supplemental Indenture") with the Trustee, to further provide for the security and payment of the 2010A UTGO Bonds with the unlimited tax levy and a second lien on Distributable Aid; and

WHEREAS, pursuant to Act 227, in order to provide for the direct payment of Distributable Aid to the Trustee to pay the debt service on the 2010A UTGO Bonds, the City, the MFA and the State Treasurer entered into an Agreement to Deposit Distributable State Aid with the Master Trustee for payment of the 2010A UTGO Bonds (the "UTGO Bonds Deposit Agreement"); and

WHEREAS, pursuant to Resolutions adopted on March 27, 2012 by the City Council of the City, certain Sale Orders of the Finance Director and Act 34, the City issued: (i) $38,865,000 Self Insurance Distributable State Aid Third Lien Bonds (Limited Tax General Obligation), Series 2012(A2) (the "Series 2012(A2) Bonds"); (ii) $30,730,000 Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(A2-B) (the "Series 2012(A2-B) Bonds"); (iii) $6,405,000 General Obligation Distributable State Aid Third Lien Capital Improvement Refunding Bonds (Limited Tax General Obligation) Series 2012B (the "Series 2012B Bonds"); and (iv) $53,520,000 Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(B2) (the "Series 2012(B2) Bonds, and collectively with the Series 2012(A2) Bonds, the Series 2012(A2-B) Bonds and the Series 2012B Bonds, the "Third Lien Bonds"); and

WHEREAS, the Third Lien Bonds were sold to the MFA and pursuant to Act 227 and Act 140, in order to provide for the direct payment of Distributable Aid to the Master Trustee to

pay the debt service on the Third Lien Bonds, the City, the MFA and the State Treasurer entered into an Agreement to Deposit Distributable State Aid (as amended the "2012 Deposit Agreement") with the Master Trustee and the City and the Master Trustee entered into a Third Supplemental Debt Retirement Trust Indenture, dated as of March 1, 2012, as amended (the "Third Supplemental Indenture") and a Fourth Supplemental Debt Retirement Trust Indenture dated as of August 1, 2012 (the "Fourth Supplemental Indenture") for payment of the Third Lien Bonds on a third lien basis subordinate to the first lien on Distributable State Aid securing the DSA Bonds and subordinate to the second lien on Distributable Aid securing the Series 2010A UTGO Bonds; and

WHEREAS, on March 1, 2013, the Governor (the "Governor") of the State of Michigan (the "State") determined that a financial emergency existed within the City pursuant to the Local Government Fiscal Responsibility Act, Act 72, Public Acts of Michigan, 1990, as amended ("Act 72"); and

WHEREAS, on March 14, 2013, the Governor confirmed that a financial emergency existed within the City and, pursuant to Act 72, assigned to the Local Emergency Financial Assistance Loan Board established pursuant to the Emergency Municipal Loan Act, Act 243 Public Acts of Michigan, 1980, as amended (the "Board") the responsibility for managing the financial emergency; and

WHEREAS, on March 14, 2013, pursuant to Act 72, the Board appointed Kevyn D. Orr as Emergency Financial Manager for the City; and

WHEREAS, by operation of law the financial emergency continues to exist within the City pursuant to the Local Financial Stability and Choice Act, Act 436, Public Acts of Michigan, 2012 ("Act 436") and the Emergency Financial Manager continues in the capacity of the Emergency Manager for the City (the "Emergency Manager"); and

WHEREAS, on July 18, 2013 (the "Petition Date"), in accordance with Act 436 and the approval of the Governor, the Emergency Manager filed on behalf of the City a petition for relief pursuant to Chapter 9 of title 11 of the United States Code, 11 U.S.C. Sections 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"); and

WHEREAS, on _____, 2014, the Emergency Manager filed on behalf of the City a _____ Amended Plan for the Adjustment of the Debts of the City of Detroit (now and as subsequently amended, the "Plan of Adjustment") in the Bankruptcy Court to provide for the adjustment of the debts of the City pursuant to and in accordance with Chapter 9 of the Bankruptcy Code; and

WHEREAS, more than 90% of the Prior UTGO Bonds are insured by Ambac Assurance Corporation; Assured Guaranty Municipal Corp. together with Assured Guaranty Corp.; and National Public Finance Guarantee Corporation (each a "Bond Insurer" and collectively, the "Bond Insurers"); and

WHEREAS, pursuant to the Plan of Adjustment and a settlement agreement dated July 18, 2014 among the City and the Bond Insurers (the "UTGO Settlement Agreement") the City intends to restructure a portion of the outstanding Prior UTGO Bonds (the "Restructured UTGO

Bonds") as provided in this Order; and

WHEREAS, pursuant to a bond purchase contract (the "Purchase Contract") between the City and the MFA, the City shall deliver the Bonds authorized hereunder (the "Bonds" or the "Municipal Obligation") to the MFA, and in consideration thereof, the MFA will deliver its [Local Government Loan Program Revenue Bonds, Series 2014 (City of Detroit Unlimited Tax General Obligation Local Project Bonds)] (the "MFA Bonds") to (i) the holders of the Holders Restructured UTGO Bonds (as defined in the UTGO Settlement Agreement) and (ii) the Bond Insurers and the Dissenting Bond Insurer as holders of the Insurer Owned Restructured UTGO Bonds (as defined in the UTGO Settlement Agreement) in consideration for the transfer of the Restructured UTGO Bonds to the MFA; and

WHEREAS, the MFA Bonds will be issued by the MFA in Authorized Denominations in the same aggregate principal amounts per maturity as the Restructured UTGO Bonds, rounded down as provided in this Order, for each denomination to the nearest Authorized Denomination; and on the Effective Date, as hereinafter defined, the holders of the Holders Restructured UTGO Bonds shall be paid the difference in principal amount, if any, between the Holders Restructured UTGO Bonds and the principal amount of MFA Bonds allocated and transferred to them as provided herein by the City from its General Fund or by the Master Trustee at the direction of the City from available funds on deposit in the Debt Retirement Fund (the "Debt Retirement Fund") established hereunder, as determined by an Authorized Officer; and

WHEREAS, a portion of the Prior UTGO Bonds not restructured by the Municipal Obligation which mature on or after April 1, 2015, in the principal amount of $43,349,210 (the "Stub UTGO Bonds" and collectively with the 2010A UTGO Bonds, the Municipal Obligation and any Additional Bonds (defined below), the "UTGO Bonds") shall be reinstated, remain Outstanding in the amounts and will remain payable as shown on Exhibit C hereto; and

WHEREAS, the Stub UTGO Bonds also will be in Authorized Denominations; and

WHEREAS, upon satisfaction of all of the terms and conditions required of the City related to the confirmation of the Plan of Adjustment, the City shall establish the Business Day upon which the Plan of Adjustment shall become effective (the "Effective Date"); and

WHEREAS, on or after the Effective Date, the City shall issue and deliver the Municipal Obligation to the MFA and pursuant to the Plan of Adjustment, the Assigned UTGO Bond Tax Proceeds (as hereinafter defined), will be assigned to the Income Stabilization Funds and the GRS (collectively, the "Plan Assignees") as such terms are defined in the Plan of Adjustment; and

WHEREAS, the Emergency Manager deems it necessary to authorize the issuance of the Bonds in one or more series in the aggregate principal amount of not to exceed Two Hundred Eighty-Seven Million Five Hundred Sixty Thousand Seven Hundred Ninety Dollars ($287,560,790); and

WHEREAS, pursuant to the resolutions authorizing the Prior UTGO Bonds and the 2010A UTGO Bonds, this Order and Section 4a of Act 279, the City has pledged, and to the

-4-

extent permitted by applicable law, including without limitation, Section 12(1)(x) of Act 436, will create a lien upon the Debt Millage Revenues (as hereinafter defined) to pay the debt service on the UTGO Bonds; and

WHEREAS, pursuant to Section 4a of Act 279, and Section 701 of the Revised Municipal Finance Act, Act No. 34, Public Acts of Michigan, 2001, as amended, the Emergency Manager desires to provide for the deposit of the Debt Millage Revenues into a separate escrow account to be used for the sole purpose of paying principal of and interest on the UTGO Bonds and the administrative costs related to the deposit and escrow of Debt Millage Revenues; and

WHEREAS, in order to effectuate a lien, to the extent permitted by law, upon the debt millage revenues (the "Debt Millage Revenues") derived from the unlimited tax pledge in favor of the Registered Owners of the Bonds, it is necessary for the City to provide for the deposit of the proceeds of 100% of the City's unlimited tax general obligation debt millage levy in trust to further secure payment of the debt service on the Bonds, with U.S. Bank National Association, as Debt Millage Escrow Trustee (the "Debt Millage Escrow Trustee"), pursuant to a Debt Millage Deposit Escrow Agreement (the "Debt Millage Escrow Agreement") between the City and the Debt Millage Escrow Trustee; and

WHEREAS, the Emergency Manager recommends that the Bonds be secured by a fourth lien pledge of Distributable Aid under a Fifth Supplemental Debt Retirement Trust Indenture (the "Fifth Supplemental Indenture"), in addition to a pledge of the City's unlimited tax full faith and credit; and

WHEREAS, the Emergency Manager desires the Debt Millage Revenues to constitute special revenues under Section 902 of the Bankruptcy Code and to afford the holders of the UTGO Bonds the protection provided to "pledged special revenues," as that term is used in Section 922(d) of the Bankruptcy Code.

WHEREAS, the MFA may distribute one or more preliminary official statements (together with any supplements thereto, each a "Preliminary Official Statement") and final official statements (together with any supplements thereto, each an "Official Statement") to the holders of the MFA Bonds; and

WHEREAS, the Emergency Manager also desires to authorize the submission of disclosure information to the MFA, as applicable, if necessary in connection with the issuance and delivery of the Municipal Obligation and the issuance and delivery of the MFA Bonds; and

WHEREAS, the MFA will require, as a condition precedent to accepting the Municipal Obligation, that the City agree to provide continuing disclosure as required by Section (b)(5) of Rule 15c2-12 ("Rule 15c2-12") promulgated by the Securities and Exchange Commission under the Securities and Exchange Act of 1934, as amended; and

WHEREAS, the Emergency Manager also desires to authorize the submission of disclosure information to the holders of the Stub UTGO Bonds, if necessary in connection with the secondary marketing, if any, of the Stub UTGO Bonds by the holders thereof on the Effective Date; and

WHEREAS, pursuant to the authority of Section 315(1)(d) of Act 34, the Emergency Manager desires to delegate to the Finance Director the authority to make certain determinations with respect to the Bonds, if necessary, within the parameters of this Order and to take such other actions and make such other determinations as may be necessary to accomplish the delivery of the Bonds and the transactions contemplated by this Order, as shall be confirmed by the Finance Director in the Supplemental Order; and

WHEREAS, prior to the issuance of the Bonds, pursuant to Sections 12(1) (u) and 19(1) of Act 436, the Emergency Manager must obtain the approval of the issuance of the Bonds by the City Council, and if the City Council disapproves of the issuance of the Bonds, the issuance of the Bonds must be approved by the Board.

NOW, THEREFORE, BE IT ORDERED BY THE EMERGENCY MANAGER OF THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN, PURSUANT TO THE CHARTER, ACT 34, ACT 227, ACT 279, AND ACT 436 AS FOLLOWS:

## ARTICLE I

### DEFINITIONS AND INTERPRETATION

Section 101. <u>Definitions</u>. The words and terms defined in the preambles and recitals hereof and the following words and terms as used in this Order shall have the meanings ascribed therein, herein or in the Plan of Adjustment unless a different meaning clearly appears from the context:

"Act 34" means Act 34, Public Acts of Michigan, 2001, as amended.

"Act 80" means Act 80, Public Acts of Michigan, 1981, as amended.

"Act 227" means Act 227, Public Acts of Michigan, 1985, as amended.

"Act 279" means Act 279, Public Acts of Michigan, 1909, as amended.

"Act 436" means Act No. 436, Public Acts of Michigan, 2012.

"Additional Bonds" shall mean any unlimited tax general obligation bonds issued under Act 279 on a parity with the Prior UTGO Bonds, the 2010A UTGO Bonds, the Municipal Obligation and the Stub UTGO Bonds as to the Aggregate UTGO Tax Levy.

"Aggregate UTGO Tax Levy" means all proceeds of the Debt Millage Revenues.

"Ambac" means Ambac Assurance Corporation.

"Assigned UTGO Bond Tax Proceeds" means that portion of the Aggregate UTGO Tax Levy designated to pay the principal of and interest on the Stub UTGO Bonds.

"Assured" means Assured Guaranty Municipal Corp. and Assured Guaranty Corp.

"Authorized Denominations" shall mean denominations of Bonds and Stub UTGO Bonds equal to multiples of $1.00.

"Authorized Officer" means (i) the Emergency Manager or his designee or successor, or if the City is no longer operating under a financial emergency pursuant to Act 436, the Mayor of the City, the Finance Director or his or her designee, or (ii) any other person authorized by a Certificate of an Authorized Officer to act on behalf of or otherwise represent the City in any legal capacity, which such certificate shall be delivered, if at all, in the City's sole discretion.

"Bankruptcy Case" means the City's Bankruptcy Case No. 13-53846 in the U.S. Bankruptcy Court for the Eastern District of Michigan.

"Bankruptcy Court Order" has the meaning set forth in the recitals hereto.

"Board" has the meaning set forth in the recitals hereto.

"Bond" or "Bonds" means the Municipal Obligations.

"Bond Counsel" means Miller, Canfield, Paddock and Stone, P.L.C., attorneys of Detroit, Michigan, or such other nationally recognized firm of attorneys experienced in matters pertaining to municipal bonds and appointed to serve in such capacity by the City with respect to the Bonds.

"Bond Insurer" means Ambac, Assured or NPFG, as the case may be, as an issuer of a bond insurance policy with respect to that portion of the Restructured UTGO Bonds such entity insures.

"Bond Orders" means collectively this Order and the Supplemental Order.

"Bond Registry" means the books for the registration of Bonds maintained by the Master Trustee.

"Bondowner", "Owner" or "Registered Owner" means, with respect to any Bond, the person in whose name such Bond is registered in the Bond Registry.

"Business Day" means a day which is not (i) a Saturday, Sunday or legal holiday on which banks located in either the State of Michigan or the state or states in which the principal corporate trust office of the Master Trustee, is located are authorized or required by law to be closed, or (ii) a day on which the New York Stock Exchange is closed.

"Charter" means the Charter of the City, as amended from time to time.

"City" means the City of Detroit, County of Wayne, State of Michigan.

"Closing Date" means the date or dates upon which the Restructured UTGO Bonds are transferred to the MFA in consideration for the MFA Bonds.

"Code" means the Internal Revenue Code of 1986, as amended.

-7-
13-53846-tjt   Doc 8045-6   Filed 10/22/14   Entered 10/22/14 03:48:29   Page 11 of 19

"Constitution" means the Constitution of the State of Michigan of 1963, as amended.

"Council" means the City Council of the City of Detroit, Michigan.

"Debt Millage Deposit" or "Debt Millage Deposits" means whenever used herein singularly, each payment of Debt Millage Revenues, and collectively all payments of Debt Millage Revenues by the City to the Debt Millage Escrow Trustee for deposit in the UTGO Debt Millage Fund in accordance with the Debt Millage Escrow Agreement.

"Debt Millage Escrow Agreement" means the Debt Millage Deposit Escrow Agreement, between the City and the Debt Millage Escrow Trustee, for the collection of 100% of the City's unlimited tax general obligation bond debt millage.

"Debt Millage Escrow Trustee" means U.S. Bank National Association, Detroit, Michigan, as Debt Millage Escrow Trustee, and any successor to the Debt Millage Escrow Trustee substituted in its place pursuant to the provisions of the Debt Millage Escrow Agreement.

"Debt Millage Revenues" means the proceeds of the ad valorem debt millage levies, including interest subsidy payments received by the City in respect of the 2010A UTGO Bonds delinquent millage payments received from Wayne County, Michigan, or otherwise, pledged to and on account of unlimited tax general obligation bonds of the City for the payment of debt service on the Prior UTGO Bonds (or after the Effective Date, the UTGO Bonds), and the 2010A UTGO Bonds, the Municipal Obligation, the Stub UTGO Bonds and any Additional Bonds.

"Debt Retirement Fund" means the fund so designated and established under Section 501 hereof.

"Dissenting Bond Insurer" means Syncora Guarantee, Inc.

"Distributable Aid" has the meaning given in Act 80.

"DSA Bonds" means the City's $249,790,000 original principal amount Distributable State Aid General Obligation Limited Tax Bonds, Series 2010.

"Effective Date" has the meaning set forth in the recitals hereto.

"Fifth Supplemental Indenture" means the Fifth Supplemental Debt Retirement Trust Indenture, dated as of the date of issuance of the Bonds, between the City and the Master Trustee providing for the escrow of Distributable State Aid payments received by the Master Trustee on behalf of the City to pay the debt service on the Bonds.

"Finance Director" means the Finance Director of the City or his/her deputy or designee.

"First Lien Bonds" means the DSA Bonds.

"First Supplemental Indenture" means the First Supplemental Debt Retirement Trust Indenture dated as of March 1, 2010, between the City and the Master Trustee, providing for the

-8-

escrow of Distributable Aid payments received by the Master Trustee on behalf of the City to pay the debt service on the DSA Bonds.

"Fiscal Year" means the fiscal year of the City as in effect from time to time.

"Fourth Supplemental Indenture" has the meaning set forth in the recitals hereto.

"GRS" means General Retirement System for the City of Detroit.

"Income Stabilization Fund" means the Income Stabilization Funds as defined in the Plan of Adjustment.

"Interest Payment Date" has the meaning given such term in Section 302.

"Master Indenture" shall mean the Master Debt Retirement Trust Indenture dated as of March 1, 2010 by and between the City and U.S. Bank National Association, Detroit, Michigan, as Master Trustee, as supplemented by (i) the First Supplemental Indenture; (ii) the Second Supplemental Indenture; (iii) the Third Supplemental Indenture; (iv) the Fourth Supplemental Indenture; and (v) the Fifth Supplemental Indenture, by and between the City and the Master Trustee.

"Master Trustee" means U.S. Bank National Association, Detroit, Michigan, as Master Trustee under the Master Indenture, and successors to the Master Trustee substituted in its place pursuant to the provisions of the Master Indenture.

"Maximum Aggregate Principal Amount" has the meaning given such term in Section 201.

"MFA" means the Michigan Finance Authority, as successor to the Michigan Municipal Bond Authority.

"MFA Bonds" means has the meaning set forth in the recitals hereto.

"Municipal Obligation" has the meaning set forth in the recitals hereto.

"Non-Arbitrage and Tax Compliance Certificate" means the Non-Arbitrage and Tax Compliance Certificate of the City, dated the Closing Date, regarding rebate requirements and other tax responsibilities of the City relating to the Tax-Exempt Bonds under the Code.

"NPFG" means National Public Finance Guaranty Corporation.

"Order" means this Order of the Emergency Manager as supplemented by the Supplemental Order, and as amended from time to time pursuant to Article VII.

"Outstanding" when used with respect to:

(1) the Bonds, means, as of the date of determination, the Bonds theretofore authenticated and delivered under this Order, except:

(A) Bonds theretofore canceled by the Master Trustee or delivered to the Master Trustee for cancellation;

(B) Bonds for whose payment money in the necessary amount, without the need for reinvestment thereof, has been theretofore deposited with the Master Trustee in trust for the registered owners of such Bonds;

(C) Bonds delivered to the Master Trustee for cancellation in connection with (x) the exchange of such Bonds for other Bonds or (y) the transfer of the registration of such Bonds;

(D) Bonds alleged to have been destroyed, lost or stolen which have been paid or replaced pursuant to this Order or otherwise pursuant to law; and

(E) Bonds deemed paid as provided in Section 801.

"Permitted Investments" means those investments specified in Article III of the Debt Millage Escrow Agreement.

"Plan of Adjustment" has the meaning set forth in the recitals hereto.

"Plan Assignees" means the Income Stabilization Funds and the GRS.

"Prior DSA Bonds" means, collectively, the First Lien Bonds, the Second Lien Bonds and the Third Lien Bonds.

"Prior UTGO Bonds" has the meaning set forth in the recitals hereto.

"Pro Rata" means the proportion that a claim of one Holder of Restructured UTGO Bonds bears to the aggregate of all claims of all Holders of Restructured UTGO Bonds.

"Purchase Contract" means the purchase contract negotiated by the Finance Director between the City and the MFA, providing for the terms and conditions of the delivery of the Municipal Obligation to the MFA in anticipation of the transfer of the Restructured Bonds to the MFA in consideration for the MFA Bonds on the terms and conditions and in form and substance reasonably acceptable to the Bond Insurers.

"Regular Record Date" has the meaning given such term in Section 302.

"Restructured UTGO Bonds" has the meaning set forth in the recitals hereto.

"Second Lien Bonds" means the 2010A UTGO Bonds.

"Second Supplemental Indenture" has the meaning set forth in the recitals hereto.

"State" means the State of Michigan.

"State Treasurer" means the Treasurer of the State.

-10-

"Stub UTGO Bonds" has the meaning set forth in the recitals hereto.

"Supplemental Order" means, to the extent necessary, the order or orders of the Authorized Officer making certain determinations and/or confirming the final details of the Bonds upon the sale thereof in accordance with the parameters of this Order and the terms of the Purchase Contract.

"Tax-Exempt Bonds" means those Bonds, if any, the interest on which is excluded from gross income for federal tax purposes, as determined by the Authorized Officer in the Supplemental Order.

"Third Lien Bonds" has the meaning set forth in the recitals hereto.

"Third Supplemental Indenture" has the meaning set forth in the recitals hereto.

"UTGO Bonds" has the meaning in the recitals hereto.

"UTGO Bond Tax Levy" means that portion of the Aggregate UTGO Tax Levy at a level that was pledged to pay the Prior UTGO Bonds.

"UTGO Debt Millage Fund" means the fund so designated and authorized by Section 501 hereof and established under the Debt Millage Escrow Agreement.

"2010A UTGO Bonds" means the City's outstanding Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010(A).

Section 102. Interpretation. (a) Words of the feminine or masculine genders include the correlative words of the other gender or the neuter gender.

(b) Unless the context shall otherwise indicate, words importing the singular include the plural and vice versa, and words importing persons include corporations, associations, partnerships (including limited partnerships), trusts, firms and other legal entities, including public bodies, as well as natural persons.

(c) Articles and Sections referred to by number mean the corresponding Articles and Sections of this Order.

(d) The terms "hereby, "hereof", "hereto", "herein", "hereunder" and any similar terms as used in this Order, refer to this Order as a whole unless otherwise expressly stated.

## ARTICLE II

## DETERMINATIONS

Section 201. Finding, and Declaration of Need to Issue Bonds; Authorized Denominations. (a) The Emergency Manager hereby finds and declares that it is necessary for the City to restructure and refund (under applicable state law) $287,560,790 of the Prior UTGO Bonds which mature on or after April 1, 2015, by restructuring them as Restructured UTGO Bonds to be transferred to the MFA and in such form issuing them in the principal amounts as

-11-

shown on Exhibit B as Municipal Obligations, in Authorized Denominations and leaving $43,349,210 of the Prior UTGO Bonds remaining outstanding as Stub UTGO Bonds in Authorized Denominations as shown on Exhibit C, pursuant to and in accordance with the provisions of Act 34 and Act 279, for the purpose of satisfying the Class 8 claims as required by the Plan of Adjustment. The MFA Bonds will, in the aggregate, mature or be subject to mandatory redemption and optional redemption in the same principal amounts per maturity, and bear interest at the same interest rates as the Restructured UTGO Bonds.

(b) On the Effective Date, that portion of the Aggregate UTGO Tax Levy designated to pay the principal of and interest on the Stub UTGO Bonds (but subject to the prior rights of the holders of the Municipal Obligation) (the "Assigned UTGO Bond Tax Proceeds") shall be assigned by the Plan of Adjustment (without any further consent or action on the part of, or additional consideration payable to, the Bond Insurers, the Dissenting Bond Insurer or the holders of the Stub UTGO Bonds) to the Plan Assignees, and such proceeds shall not be paid to the paying agent for the UTGO Bonds, but shall be paid to the Plan Assignees directly by the Debt Millage Escrow Trustee.

Section 202. <u>Declaration of Borrowing</u>. The City shall issue the Bonds as hereinafter provided and as finally confirmed by the Authorized Officer in the Supplemental Order, secured by the unlimited tax full faith, credit and resources of the City which will be payable from ad valorem taxes levied on all taxable property within the City without limitation as to rate or amount, for the purposes stated herein.

## ARTICLE III

## AUTHORIZATION, REDEMPTION AND ASSIGNMENT OF THE BONDS

Section 301. <u>Authorization of Bonds and Pledge</u>. (a) The City hereby authorizes the issuance of the Bonds in such series and in such principal amounts as shall be confirmed in the Supplemental Order. The Bonds shall be payable from and secured, to the extent permitted by applicable law, including, without limitation, Section 12(1)(x) of Act 436, by a lien on the Debt Millage Revenues derived from an annual levy of ad valorem taxes on all taxable property in the City without limitation as to rate or amount. Pursuant to authorization provided in Act 227, the City hereby pledges as additional security for the payment of principal of and interest on the Bonds, Distributable Aid payments that the City is eligible to receive on a fourth lien basis subordinate to the pledge thereof for the payment of the Prior DSA Bonds. The Finance Director is hereby authorized and directed to negotiate, approve and execute the Fifth Supplemental Indenture for and on behalf of the City with U.S. Bank National Association, Detroit, Michigan, as Master Trustee, to provide for a fourth lien pledge of Distributable Aid to secure payment of the Bonds. Nothing in this Order shall restrict or be construed as restricting the City's ability to make additional pledges or assignments of Distributable Aid as security for current or future bonds or obligations of the City, subject to the requirements for the issuance of additional bonds and obligations set forth in the Master Indenture.

(b) The Debt Millage Revenues as pledged by the City to secure payment of the Bonds, shall constitute "special revenues," as defined in Section 902 of the Bankruptcy Code and "pledged special revenues," as the term is used in Section 922(d) of the Bankruptcy Code.

Section 302. <u>Designations, Dates, Interest Rates, Maturities, Redemption and Other Terms of the Bonds and Stub UTGO Bonds</u>.

(a) The Bonds shall be designated as "DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS (UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 and may bear such later or earlier dates and additional or alternative designations as the Authorized Officer may determine in the Supplemental Order, shall be issued in fully registered form and shall be consecutively numbered from "R-1" upwards, respectively unless otherwise provided by the Authorized officer in the Supplemental Order. The Bonds shall be dated and issued in Denominations all as determined by the Authorized Officer and confirmed by the Authorized Officer in the Supplemental Order.

(b) The Bonds shall be issued in multiple separate series, each one corresponding to the related series of the Prior UTGO Bonds listed on Exhibit A hereto. Each separate series of the Municipal Obligations shall be issued in a principal amount equal to 86.9% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds in Authorized Denominations as provided in Section 201(a). Each series of Municipal Obligations shall be further subdivided into two subseries, with one subseries equal to 84.5% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds, in Authorized Denominations, and the second subseries equal to 2.4% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds, in Authorized Denominations.

(c) The Bonds and the Stub UTGO Bonds shall bear interest from _____, 201_, at the same interest rate per annum as the related Prior UTGO Bonds; be subject to amortization on the same schedule as the related Prior UTGO Bonds; mature on the same dates; and be subject to redemption in the same manner as the related Prior UTGO Bonds. Unless otherwise provided by the Authorized Officer in the Supplemental Order, interest on the Bonds shall be calculated on the basis of a 360 day year consisting of twelve, 30 day months. In the event that a calculation of interest is not an integral multiple of $0.01, the Paying Agent shall round all amounts less than or equal to $0.0049 down to the nearest $0.01 and round all amounts greater than $.0049 up to the nearest $0.01. The Bonds shall be payable, as to principal and interest, in lawful money of the United States of America.

(d) On or after the Effective Date, the Municipal Obligations shall be delivered to the MFA in consideration for bonds to be issued by the MFA (the "MFA Bonds") and the following additional provisions shall apply:

    (1) Each subseries of Municipal Obligations shall be in the form of a single fully-registered, nonconvertible bond in the denomination of the full principal amount thereof, dated as of the date of delivery of the Municipal Obligations, payable in principal installments serially shown on Exhibit B and approved by the MFA and the Authorized Officer. The obligation to deliver the Municipal Obligations to the MFA shall be evidenced by execution of a Purchase Contract (the "Purchase Contract") between the City and the MFA providing for the transfer of the Municipal Obligations to the MFA in consideration for the MFA Bonds, and an Authorized Officer is authorized and directed to execute and deliver the Purchase Contract when it is in final form and to make the

determinations set forth above. An Authorized Officer is authorized and directed to approve of a series designation with respect to each series of Municipal Obligations.

(2) Each subseries of the Municipal Obligations shall not be convertible or exchangeable into more than one fully-registered bond. Principal of and interest on the Municipal Obligations shall be payable as provided in the Bond form in this Order as the same may be amended to conform to MFA requirements.

(3) The Master Trustee shall record on the registration books payment by the City of each installment of principal or interest or both when made and the cancelled checks or other records evidencing such payments shall be returned to and retained by the City Treasurer.

(4) Upon payment by the City of all outstanding principal of and interest on a Municipal Obligation, the MFA shall deliver the respective Municipal Obligation to the City for cancellation.

(e) Concurrently with the restructuring of a portion of the Prior UTGO Bonds and issuance of the MFA Bonds, the Stub UTGO Bonds, in Authorized Denominations as provided in Section 201(a), will be reinstated and remain Outstanding and will be payable from the UTGO Bond Tax Levy, provided that the Assigned UTGO Bond Tax Proceeds as assigned by the Plan of Adjustment shall be paid by the Debt Millage Escrow Trustee to the Plan Assignees and such proceeds shall not be paid to the paying agent for the Stub UTGO Bonds.

Section 303. <u>Execution, Authentication and Delivery of Bonds</u>. The Bonds shall be executed in the name of the City by the manual or facsimile signatures of the Mayor and the Finance Director and authenticated by the manual signature of the Finance Director, and the seal of the City (or a facsimile thereof) shall be impressed or imprinted on the Bonds. After the Bonds have been executed and authenticated for delivery, they shall be delivered by the Finance Director to the MFA in consideration for the issuance of the MFA Bonds.

Section 304. <u>Authentication of the Bonds</u>. Anything in this Order to the contrary notwithstanding, the Bonds bearing the manual or facsimile signatures of the Mayor and the Finance Director shall require no further authorization.

Section 305. <u>The MFA's Depository</u>. Notwithstanding any other provision herein to the contrary, as long as the MFA is the owner of the Bonds, the Bonds are payable as to principal, premium, if any, and interest at the corporate trust office of _____, _____, Michigan, or such other qualified bank or financial institution as shall be designated in writing to the City by the MFA (the "Authority's Depository"). The City will deposit, or cause the Master Trustee, to deposit with the MFA's Depository payments of the principal of, premium, if any, and interest on the Bonds in immediately available funds at least five business days prior to the date on which any such payment is due whether by maturity, redemption or otherwise. Written notice of any redemption of the Bonds shall be given by the City and received by the MFA's Depository at least 40 days prior to the date on which such redemption is to be made.

-14-

Section 306. <u>Mutilated, Destroyed, Stolen or Lost Bonds</u>. (a) Subject to the provisions of Act 354, Public Acts of Michigan, 1972, as amended and any other applicable law, if (i) any mutilated Bond is surrendered to the City, and the City receives evidence to its satisfaction of the destruction, loss or theft of any Bond and (ii) there is delivered to the City such security or indemnity as may be required by it to save the City harmless, then, in the absence of notice to the City that such Bond has been acquired by a bona fide purchaser, the City shall execute and deliver in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Bond, a new Bond of like tenor and principal amount, bearing a number not contemporaneously outstanding.

(b) If any such mutilated, destroyed, lost or stolen Bond has become or is about to become due and payable, the City in its discretion may, instead of issuing a new Bond, pay such Bond.

(c) Any new Bond issued pursuant to this Section in substitution for a Bond alleged to be mutilated, destroyed, stolen or lost shall constitute an original additional contractual obligation on the part of the City, and shall be equally secured by and entitled to equal proportionate benefits with all other Bonds of like tenor issued under this Order.

Section 307. <u>Form of the Bonds</u>. The Bonds shall be in substantially the following form with such insertions, omissions, substitutions and other variations as shall not be inconsistent with this Order or required by the Michigan Attorney General and the MFA or permitted by the Supplemental Order or as approved by an Authorized Officer and Bond Counsel: