# EXHIBIT D

## FORM OF CONTINUING DISCLOSURE UNDERTAKING

This Continuing Disclosure Undertaking (the "Undertaking") is executed and delivered by the City of Detroit, County of Wayne, State of Michigan (the "City") in connection with bonds issued by the City, purchased or to be purchased with funds from the Michigan Finance Authority Local Government Loan Program Revenue Bonds, Series [2014], of the Type designated City of Detroit Unlimited Tax General Obligation Local Project Bonds (the "Local Project Municipal Obligations") by the Michigan Finance Authority (the "MFA"). The City covenants and agrees for the benefit of the Bondholders, as hereinafter defined, as follows:

(a) *Definitions*. The following terms used herein shall have the following meanings:

"Audited Financial Statements" means the annual audited financial statement pertaining to the City prepared by an individual or firm of independent certified public accountants as required by Act 2, Public Acts of Michigan, 1968, as amended, which presently requires preparation in accordance with generally accepted accounting principles.

"Bondholders" shall mean the MFA and the registered owner of any MFA Bond or any person which (a) has the power, directly or indirectly, to vote or consent with respect to, or to dispose of ownership of, any MFA Bond (including any person holding an MFA Bond through a nominee, depository or other intermediary), or (b) is treated as the owner of any MFA Bond for federal income tax purposes.

"EMMA" shall mean the MSRB's Electronic Municipal Market Access System or such other system, Internet Web Site, or repository hereafter prescribed by the MSRB for the submission of electronic filings pursuant to the Rule.

"MFA Bond" means any bond issued by the MFA which is secured in whole or in part by payments to be received on the Local Project Municipal Obligations.

"MSRB" means the Municipal Securities Rulemaking Board.

"Rule" means Rule 15c2-12 promulgated by the SEC pursuant to the Securities Exchange Act of 1934, as amended.

"SEC" means the United States Securities and Exchange Commission.

(b) *Continuing Disclosure.* The City hereby agrees, in accordance with the provisions of the Rule, to provide or cause to be provided to the MSRB through EMMA no later than 270 days after the end of its fiscal year the following annual financial information and operating data, commencing with the fiscal year ended June 30, 20__ in an electronic format as prescribed by the MSRB, the Audited Financial Statements and updates of certain financial and operating data of the City appearing under the headings and tables in the Official Statement of

13-53846-tjt Doc 8045-9 Filed 10/22/14 Entered 10/22/14 03:48:29 Page 1 of 32

the MFA dated __________, 2014 relating to the MFA Bonds as follows: [Tables 1 through 32, inclusive, and 42 in Appendix II to the Official Statement ("Annual Financial Information").]

If the fiscal year of the City is changed, the City shall send notice of such change to the MSRB through EMMA prior to the earlier of the ending date of the fiscal year prior to such change or the ending date of the fiscal year as changed.

In the event that the Audited Financial Statements are not available by the date specified above, they will be provided when available and Unaudited Financial Statements will be filed by such date and the Audited Financial Statements will be filed as soon as available.

> Such annual financial information and operating data described above are expected to be provided directly by the City by specific reference to documents available to the public through EMMA or filed with the SEC.

(c) *Notice of Failure to Disclose*. The City agrees to provide or cause to be provided, in a timely manner, to the MSRB through EMMA, in an electronic format as prescribed by the MSRB, notice of a failure by the City to provide the annual financial information with respect to the City described in subsection (b) above on or prior to the dates set forth in subsection (b) above.

(d) *Occurrence of Events*. The City agrees to provide or cause to be provided to the MSRB through EMMA, in an electronic format as prescribed by the MSRB, in a timely manner not in excess of ten business days after the occurrence of the event, notice of the occurrence of any of the following events listed in (b)(5)(i)(C) of the Rule with respect to the Local Project Municipal Obligations:

(1) principal and interest payment delinquencies;
(2) non-payment related defaults, if material;
(3) unscheduled draws on debt service reserves reflecting financial difficulties;
(4) unscheduled draws on credit enhancements reflecting financial difficulties;
(5) substitution of credit or liquidity providers, or their failure to perform;
(6) adverse tax opinions, the issuance by the Internal Revenue Service of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or other material notices or determinations with respect to the tax status of the Local Project Municipal Obligations, or other material events affecting the tax status of the Local Project Municipal Obligations;
(7) modifications to rights of Bondholders, if material;
(8) bond calls, if material, and tender offers;
(9) defeasances;
(10) release, substitution, or sale of property securing repayment of the Local Project Municipal Obligations, if material;
(11) rating changes;

(12) bankruptcy, insolvency, receivership or similar event of the City, which is considered to occur when any of the following occur: the appointment of a receiver, fiscal agent or similar officer for the City in a proceeding under the U.S. Bankruptcy Code or in any other proceeding under state or federal law in which a court or governmental authority has assumed jurisdiction over substantially all of the assets or business of the City, or if such jurisdiction has been assumed by leaving the existing governing body and officials or officers in possession but subject to the supervision and orders of a court or governmental authority, or the entry of an order confirming a plan of reorganization, arrangement or liquidation by a court or governmental authority having supervision or jurisdiction over substantially all of the assets or business of the City;

(13) the consummation of a merger, consolidation, or acquisition involving the City or the sale of all or substantially all of the assets of the City, other than in the ordinary course of business, the entry into a definitive agreement to undertake such an action or the termination of a definitive agreement relating to any such actions, other than pursuant to its terms, if material; or

(14) appointment of a successor or additional trustee or the change of name of a trustee, if material.

(e) *Materiality Determined Under Federal Securities Laws.* The City agrees that its determination of whether any event listed in subsection (d) is material shall be made in accordance with federal securities laws.

(f) *Termination of Reporting Obligation.* The City reserves the right to terminate their obligation to provide annual financial information and notices of material events, as set forth above, if and when the City is no longer an "obligated person" with respect to the MFA Bonds within the meaning of the Rule, including upon legal defeasance of all MFA Bonds.

(g) *Identifying Information.* All documents provided to the MSRB through EMMA shall be accompanied by the identifying information prescribed by the MSRB.

(h) *Benefit of Bondholders.* The City agrees that its undertaking pursuant to the Rule set forth in this Section is intended to be for the benefit of the Bondholders and shall be enforceable by any Bondholder; provided that, the right to enforce the provisions of this undertaking shall be limited to a right to obtain specific enforcement of the City's obligations hereunder and any failure by the City to comply with the provisions of this undertaking shall not constitute a default or an event of default with respect to the Bonds.

(i) *Amendments to the Undertaking.* Amendments may be made in the specific types of information provided or the format of the presentation of such information to the extent deemed necessary or appropriate in the judgment of the City, provided that the City agrees that any such amendment will be adopted procedurally and substantively in a manner consistent with the Rule, including any interpretations thereof by the SEC, which, to the extent applicable, are incorporated herein by reference. Such interpretations currently include the requirements that (a)

the amendment may only be made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the City or the type of activities conducted thereby, (b) the undertaking, as amended, would have complied with the requirements of the Rule at the time of the primary offering of the MFA Bonds, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances, and (c) the amendment does not materially impair the interests of Bondholders, as determined by parties unaffiliated with the City (such as independent legal counsel), but such interpretations may be changed in the future. If the accounting principles to be followed by the City in the preparing of the Audited Financial Statements are modified, the annual financial information for the year in which the change is made shall present a comparison between the financial statements as prepared on the prior basis and the statements as prepared on the new basis, and otherwise shall comply with the requirements of the Rule, in order to provide information to investors to enable them to evaluate the ability of the City to meet its obligations. A notice of the change in accounting principles shall be sent to the MSRB through EMMA.

(j) *Municipal Advisory Council of the State of Michigan.* The City shall also file by electronic or other means any information or notice required to be filed with the MSRB through EMMA pursuant to this Undertaking in a timely manner with the Municipal Advisory Council of the State of Michigan.

CITY OF DETROIT
County of Wayne
State of Michigan

By______________________________________

Its: Finance Director

Dated: ____________, 2014

22059790.15\022765-00202
7/23/14 7:57 AM

13-53846-tjt Doc 8045-9 Filed 10/22/14 Entered 10/22/14 03:48:29 Page 4 of 32

**Exhibit C**

**ANNUAL CERTIFICATION OF IMPOSITION OF DEBT MILLAGE LEVY**

Exhibit C
ANNUAL CERTIFICATION OF IMPOSITION OF DEBT MILLAGE LEVY

# Millage Calculation

| Numerator | | |
|---|---|---|
| Fiscal Year 2015 Interest | $ | 24,753,181 |
| Fiscal Year 2015 Principal | $ | 37,795,000 |
| Projected Bond Sales - Current Year (Interest) | $ | - |
| Projected Bond Sales - Current Year (Principal) | $ | - |
| Projected Bond Sales - Next Year (Interest) | $ | - |
| Projected Bond Sales - Next Year (Principal) | $ | - |
| **Fiscal Year 2015 Debt Service** | **$** | **62,548,181** |
| | | |
| Prior Year 2010E BAB Federal Tax Rebates | $ | 3,351,142 |
| Prior Year Real Property Tax Overcollection / (Undercollection) | $ | - |
| Prior Year Personal Property Tax Overcollection / (Undercollection) | $ | - |
| Earnings in Escrow Account | $ | - |
| Change in Escrow Account Funding Balance | $ | - |
| **Total Adjustments** | **$** | **3,351,142** |
| | | |
| **Tax Levy Requirement** | **$** | **59,197,039** |

| Denominator | | |
|---|---|---|
| **Total Net Tax Base** | $ | 6,025,940,795 |

| Millage | |
|---|---|
| **Tax Rate** | **0.0098237** |
| **Tax Rate (per $1000 valuation)** | **9.8237** |

**Chief Financial Officer**
**City of Detroit**

**Date**

**Exhibit D**

**FORM OF SETTLEMENT ESCROW AGREEMENT**

D-1

AFDOCS/10855025.6

CLI-2220387v14

**SETTLEMENT ESCROW AGREEMENT**

THIS SETTLEMENT ESCROW AGREEMENT (the "**Agreement**" or "**Settlement Escrow Agreement**"), is dated as of the ___ day of __________, 2014, made by and among the City of Detroit, County of Wayne, State of Michigan (the "**City**"), Ambac Assurance Corporation ("**Ambac**"), Assured Guaranty Municipal Corp. and Assured Guaranty Corp. (together, "**Assured**"), and National Public Finance Guarantee Corporation ("**NPFG**"), and U. S. Bank National Association, Detroit, Michigan (in such capacity, the "**Settlement Escrow Trustee**"). In this Agreement, each of the City, Ambac, Assured, NPFG and the Settlement Escrow Trustee is referred to individually as a "**Party**"; Ambac, Assured, and NPFG (including their successors and assigns) are referred to collectively as the "**Bond Insurers**"; and the City, the Settlement Escrow Trustee and the Bond Insurers are referred to collectively as the "**Parties**."

Capitalized terms not otherwise defined herein shall have the meaning set forth in the UTGO Settlement Agreement (defined herein).

WITNESSETH:

WHEREAS, the City and the Bond Insurers have heretofore entered into a Settlement Agreement, dated XX (the "**UTGO Settlement Agreement**") to consensually resolve their dispute under or in respect of the Prior UTGO Bonds, the Assured/NPFG Action, the AMBAC Action as it relates to the Prior UTGO Bonds, and the UTGO Claims, all arising out of a petition for relief filed by the City pursuant to Chapter 9 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Michigan;

WHEREAS, if the Effective Date of the Plan does not occur on or prior to September 30, 2014, for any reason other than proximately by reason of the actions or positions taken by any of the Bond Insurers, or their failure to support the Plan as described in Section 3.1 of the UTGO Settlement Agreement, solely in their capacity as the insurers of the Prior UTGO Bonds and not in any other capacity (including, for the avoidance of doubt in their capacity as insurers of any other obligations of the City), the City will be obligated to pay into an escrow to be established with the Settlement Escrow Trustee under this Agreement the October 2014 scheduled interest debt service payment that would otherwise be made on the Restructured UTGO Bonds as if the transaction contemplated by the UTGO Settlement Agreement (other than the MFA Bond issuance) had closed (the "**Pro Forma Restructured UTGO Bonds**"), and any pro rata payments of principal and interest due thereafter, as further described in Section 2.8 of the UTGO Settlement Agreement and herein;

WHEREAS, the City has executed the Debt Millage Escrow Agreement pursuant to which the City will be required, as of the Effective Date, to segregate and deposit the UTGO Tax Levy with the Debt Millage Escrow Trustee;

NOW, THEREFORE, in consideration of the mutual undertakings, provisions and agreements herein contained, the sufficiency of which are hereby acknowledged, and in order to provide for the payment of the Pro Forma Restructured UTGO Bonds should the Effective Date

not occur on or prior to September 30, 2014, and to secure the performance and observance of the conditions and covenants herein set forth and for other valuable consideration, the receipt of which is hereby acknowledged, the City covenants and agrees with the Settlement Escrow Trustee and the Bond Insurers as follows:

## ARTICLE I.
## ESTABLISHMENT OF FUNDS AND ACCOUNTS

Section 101 Establishment of Settlement Escrow Fund. There is hereby created and established with the Settlement Escrow Trustee, pursuant to Order No. ___ and this Agreement, a single and common trust fund designated the "Settlement Escrow Fund" (the "**Settlement Escrow Fund**").

Section 102 Deposits to the Settlement Escrow Fund.

(a) If the Effective Date of the Plan does not occur on or prior to September 30, 2014 for any reason other than proximately by reason of the actions or positions taken by any of the Bond Insurers, or their failure to support the Plan as described in Section 3.1 of the UTGO Settlement Agreement, solely in their capacity as the insurers of the Prior UTGO Bonds and not in any other capacity (including, for the avoidance of doubt in their capacity as insurers of any other obligations of the City), the City shall pay the Settlement Escrow Trustee, from Debt Millage Revenues, for deposit into the Settlement Escrow Fund the October 2014 scheduled interest debt service payment with respect to the Pro Forma Restructured UTGO Bonds, as shown on Exhibit A, and any pro rata payments of principal and interest due thereafter, as shown on Exhibit A, as if the transaction contemplated by the UTGO Settlement Agreement (other than the MFA Bond issuance) had closed. Any such monies in the Settlement Escrow Fund which would have been payable on October 1, 2014 shall be released to the Bond Insurers on the Effective Date of the Plan. Any other monies then on deposit in the Settlement Escrow Fund shall be transferred on the Effective Date to the Debt Millage Escrow Trustee for deposit in the 2014 UTGO Municipal Obligation Subacount in the 2014 UTGO Bonds Account established pursuant to the Debt Millage Escrow Agreement.

(b) If the Plan is not effective by March 31, 2015, and the Bankruptcy Court has issued an Approval Order (that is not stayed pending appeal) approving the settlement embodied in the UTGO Settlement Agreement, the monies in the Settlement Escrow Fund will be released and paid to the Bond Insurers in the amounts shown in Exhibit A for each prior interest payment date and the City shall make, or shall cause the Debt Millage Escrow Trustee to make, all subsequent debt service payments on each interest date payment (as shown on Exhibit A) directly to the paying agent for the Prior UTGO Bonds. If an Approval Order is entered but is subject to a stay pending appeal, the City shall continue to pay into the Settlement Escrow Fund the scheduled debt service on the Pro Forma Restructured UTGO Bonds as shown on Exhibit A for so long as such stay remains in effect, and, as soon as such order is no longer subject to stay, shall thereafter apply all monies in the Settlement Escrow Fund first, to immediately reimburse the Bond Insurers for payments of principal and interest made on and after October 1, 2014 with respect to the Prior UTGO Bonds, and thereafter to make payments directly to the Paying Agent for the UTGO Bonds.

(c) Notwithstanding the foregoing, if any Bond Insurer shall have defaulted in its obligation to make payments under its respective Bond Insurance Policy or Policies, any payment required to be made to such Bond Insurer shall be made to the holders of the Prior UTGOs at the direction of the City but only to the extent of any uncured failure or shortfall in the Bond Insurer's payment.

Section 103 Partial Payments; Accounting.

(a) If on any interest payment date amounts held in the Settlement Escrow Fund are less than the amounts due with respect to all Pro Forma Restructured UTGO Bonds (as shown on Exhibit A), such payments shall distributed pro rata based upon the aggregate amount payable to each Bond Insurer. If the City fails to deposit into the Settlement Escrow Fund, or to otherwise pay to the Bond Insurers or holders of the Prior UTGO the amounts required by this Agreement, any deficiencies shall be paid into the Settlement Escrow Fund from the first available amounts of the Aggregate UTGO Tax Levy as provided for in Section 2.4(b)(i) of the UTGO Settlement Agreement, and shall be distributed to, or at the direction of the Bond Insurers, pro rata, as soon as practicable (subject to Section 102(b)) hereof.

(b) The Settlement Escrow Trustee shall keep and maintain a record showing each deposit into the Settlement Escrow Fund, and all transfers of funds made therefrom, which shall be provided to any Bond Insurer upon request.

(c) Any payment to a Bond Insurer shall be paid by wire transfer in immediately available funds into the accounts as shown in Section 501.

## ARTICLE II.
## INVESTMENT OF FUNDS

Section 201 Permitted Investments. All money held by the Settlement Escrow Fund, without the need for further direction by the City, shall be invested by the Settlement Escrow Trustee in accordance with written instructions from the City in mutual funds registered under the investment company act of 1940, title I of chapter 686, 54 Stat. 789, 15 USC 80a-1 to 80a-3 and 80a-4 to 80a-64, that are at the time of purchase within the highest classification established by not less than two standard rating services and so long as the portfolio of such mutual funds is limited to bonds, and other obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by the full faith and credit of the United States. All investments shall mature or be redeemable at the option of the holder no later than the next interest payment date on the Pro Forma Restructured UTGO Bonds. In the absence of any written direction delivered to the Settlement Escrow Trustee by the City, the Settlement Escrow Trustee shall hold funds uninvested. The Settlement Escrow Trustee shall be entitled to rely on any written direction from the City as to the suitability and legality of the directed investment.

## ARTICLE III.
## THE SETTLEMENT ESCROW TRUSTEE

Section 301 Powers and Duties of Settlement Escrow Trustee. (a) The Settlement Escrow Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents, receivers or employees, and shall be entitled to act upon the opinion or advice of its counsel concerning all matters hereof, and may in all cases be reimbursed hereunder for reasonable compensation paid to all such attorneys, agents, receivers and employees as may reasonably be employed in connection with the trust hereof. The Settlement Escrow Trustee may act upon an opinion of counsel and shall not be responsible for any loss or damage resulting from any action or nonaction by it taken or omitted to be taken in good faith in reliance upon such opinion of counsel.

(b) The Settlement Escrow Trustee shall not be responsible for any recital herein, or for the validity of the execution by the City of this Settlement Escrow Agreement, or of any supplements thereto or instruments of further assurance, or for the validity or sufficiency of, or filing of documents related to the security for the Prior UTGO Bonds intended to be secured hereby.

(c) The Settlement Escrow Trustee shall not be responsible or liable for any loss suffered in connection with any investment of funds made by it in accordance with this Settlement Escrow Agreement.

(d) The Settlement Escrow Trustee shall be protected in acting upon any notice, request, consent, certificate, order, affidavit, letter, telegram or other paper or document reasonably believed by it to be genuine and correct and to have been signed or sent by the proper person or persons.

(e) As to the existence or non-existence of any fact or as to the sufficiency or validity of any instrument, paper or proceeding, the Settlement Escrow Trustee shall be entitled to rely upon a certificate believed in good faith to be genuine and correct, signed on behalf of the City or a Bond Insurer by an authorized officer of the City or Bond Insurer, as the case may be, as sufficient evidence of the facts therein contained. The Settlement Escrow Trustee may also accept a similar certificate to the effect that any particular dealing, transaction or action is necessary or expedient, but may at its discretion secure such further evidence deemed necessary or advisable, but shall in no case be bound to secure the same.

(f) The permissive right of the Settlement Escrow Trustee to do things enumerated in this Settlement Escrow Agreement, as amended, shall not be construed as a duty, and the Settlement Escrow Trustee shall not be answerable for other than its gross negligence or willful misconduct. The immunities and exceptions from liability of the Settlement Escrow Trustee shall extend to its officers, directors, employees and agents.

(g) The Settlement Escrow Trustee shall not be required to give any note or surety in respect to the execution of its rights and obligations hereunder.

(h) All moneys received by the Settlement Escrow Trustee shall, until used or applied or invested as herein provided, be held in trust in the manner and for the purpose for which they

were received, but need not be segregated from other funds except to the extent required by this Settlement Escrow Agreement, as amended, or by law. The Settlement Escrow Trustee shall not be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

(i)     The Settlement Escrow Trustee shall not be under any obligation to initiate any suit or to take any remedial proceeding under this Settlement Escrow Agreement or to take any steps in the execution of the trusts created by this Settlement Escrow Agreement or in the enforcement of any rights and powers under this Settlement Escrow Agreement until it has been indemnified to its satisfaction against any and all fees, costs and expenses and other reasonable disbursements and against all liability.

(j)     The Settlement Escrow Trustee shall have no responsibility or liability with respect to any information, statement or recital in any official statement, offering memorandum or other disclosure material prepared or distributed with respect to the issuance of the Prior UTGO Bonds, except for liability for its own gross negligence or willful misconduct.

(k)     The Settlement Escrow Trustee may become the holder of any of the Prior UTGO Bonds with the same rights it would have if it were not Settlement Escrow Trustee, and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of holders, whether or not such committee shall represent the holders of a majority in principal amount of any of the Prior UTGO Bonds of such series then outstanding.

(l)     The Settlement Escrow Trustee shall not be liable for any error of judgment made in good faith by any of its officers, employees, agents or representatives, unless it shall be proved that the Settlement Escrow Trustee was negligent in ascertaining the pertinent facts.

(m)     The Settlement Escrow Trustee has no obligation or liability to the holders for the payment of interest on, principal of or redemption premium, if any, with respect to the Prior UTGO Bonds from its own funds; but rather the Settlement Escrow Trustee's obligations shall be limited to the performance of its duties hereunder.

(n)     Whether or not therein expressly so provided, every provision of this Agreement or related documents, relating to the conduct or affecting the liability of or affording protection to the Settlement Escrow Trustee shall be subject to the provisions of this Article.

Section 302     Fees and Expenses of Settlement Escrow Trustee.  (a) The Settlement Escrow Trustee shall be entitled to reasonable and customary fees for services rendered under this Agreement, as amended, and shall be reimbursed for all expenses reasonably incurred in connection with such services. Such fees and expenses shall be payable by the City and shall be determined in accordance with the Fee Schedule attached as Exhibit E of this Agreement or as otherwise may be agreed to by the City and the Settlement Escrow Trustee. The Settlement Escrow Trustee shall not have a lien for the payment of its fees and expenses upon any of the money deposited with it in accordance with this Agreement.

(b)     The City shall be liable for all fees, expenses, charges, losses, costs, liabilities and damages (including reasonable attorneys' or other professional fees) incurred by the Settlement

Escrow Trustee pursuant to this Agreement except for those which are adjudicated to have resulted from the gross negligence or willful misconduct of the Settlement Escrow Trustee, and shall pay such amounts to or at the direction of the Settlement Escrow Trustee.

Section 303    Resignation; Appointment of Successor Settlement Escrow Trustee; Successor Settlement Escrow Trustee Upon Merger, Consolidation or Sale.  (a)  The Settlement Escrow Trustee and any successor Settlement Escrow Trustee may resign only upon giving 60 days' prior written notice to the City and the Bond Insurers.  Such resignation shall take effect only upon the appointment of a successor Settlement Escrow Trustee and the acceptance of such appointment by the successor Settlement Escrow Trustee.  Upon appointment of a successor Settlement Escrow Trustee, the resigning Settlement Escrow Trustee shall, after payment of its fees, costs and expenses, assign all of its right, title and interest in the Settlement Escrow Fund, and transfer and assign its right, title and interest in the Settlement Escrow Agreement to the successor Settlement Escrow Trustee.  The successor Settlement Escrow Trustee shall meet the requirements of Section 303(b) below and shall accept in writing its duties and responsibilities hereunder and file such acceptance with the City.

(b)    In case the Settlement Escrow Trustee shall give notice of resignation or be removed, or be dissolved, or shall be in the course of dissolution or liquidation, or otherwise become incapable of acting hereunder, or in case it shall be taken under the control of any public office or offices, or of a receiver appointed by a court, a successor may be appointed by the Bond Insurers, with the prior written consent of the City (to the extent that no breach by the City of any material agreement or covenant, i.e. an "Event of Default," shall have occurred and be continuing under this Settlement Escrow Agreement, written notice of which has been provided by the Bond Insurers to the City and the Settlement Escrow Trustee), which consent shall not be unreasonably be withheld.  Every such Settlement Escrow Trustee appointed pursuant to the provisions of this Section 303(b) (i) shall at all times be a bank having trust powers or a trust company, (ii) shall at all times be organized and doing business under the laws of the United States of America or of any state, (iii) shall have, or be wholly owned by an entity having, a combined capital and surplus of at least $75,000,000, (iv) shall be authorized under such laws to exercise corporate trust powers, and (v) shall be subject to supervision or examination by federal or state authority.

(c)    Any corporation or association into which the Settlement Escrow Trustee may be merged or converted or with or into which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any merger, conversion, sale, consolidation or transfer to which it is a party, provided such company shall be eligible under Section 303(b) hereof, shall be and become successor Settlement Escrow Trustee hereunder and shall be vested with all the trusts, powers, rights, obligations, duties, remedies, immunities and privileges hereunder as was its predecessor, without the execution or filing of any instrument or any further act on the part of any of the parties hereto.

Section 304    Removal of Settlement Escrow Trustee.  The Settlement Escrow Trustee may be removed at any time by an instrument or concurrent instruments in writing delivered to the Settlement Escrow Trustee signed by the City and by all of the Bond Insurers.  No removal of the Settlement Escrow Trustee and no appointment of a successor Settlement Escrow Trustee

shall become effective until the successor Settlement Escrow Trustee has accepted its appointment. Upon such removal and the payment of its fees, costs and expenses, the Settlement Escrow Trustee shall assign to the successor Settlement Escrow Trustee all of its right, title and interest in the Trust Estate.

## ARTICLE IV.
## MISCELLANEOUS

Section 401 Notices; Payment Accounts. Except as other provided, all notices, certificates, requests, complaints, demands or other communications under this Agreement shall be deemed sufficiently given when sent by first class mail or overnight mail postage prepaid, addressed as follows:

| | |
|---|---|
| If to the City, to: | City of Detroit<br>Coleman A. Young Municipal Center<br>2 Woodward Avenue, Suite 1126<br>Detroit MI 48226<br>Attention: Chief Financial Officer |
| If to the Settlement Escrow Trustee, to: | [U.S. Bank National Association<br>535 Griswold, Suite 550<br>Detroit, Michigan 48226<br>Attention: Corporate Trust Services] |
| If to the Bond Insurers, to: | Ambac Assurance Corporation<br>One State Street Plaza<br>New York, New York 10004<br>Attention: Surveillance Department and General Counsel's Office |
| | Assured Guaranty Municipal Corp and Assured Guaranty Corp.<br>31 West 52nd Street<br>New York, NY 10019<br>Attention: Kevin J. Lyons<br>Attention: Terence Workman |
| | National Public Finance Guarantee Corporation<br>113 King Street<br>Armonk, NY 10504<br>Attention: Kenneth Epstein and William J. Rizzo |

The City and the Settlement Escrow Trustee may, by giving notice hereunder, in writing, designate any further or different addresses to which subsequent notices, certificates, requests, complaints, demands or other communications hereunder shall be sent.

All payments to the Bond Insurers shall be made by wire transfer to the following accounts, unless otherwise changed by any Bond Insurer by written notice to the Escrow Agent:

[TO COME]

Section 402    Termination.  This Agreement shall terminate following delivery of written direction from the City and the Bond Insurers to the Settlement Escrow Trustee to so terminate, together with written notice that all fees owed to the Settlement Escrow Trustee have been paid in full.  Upon termination of this Agreement, any money remaining on deposit in the funds and accounts created and established hereunder shall be paid to the City.

Section 403    Amendments.  This Agreement shall only be amended by the written agreement of all Parties.

Section 404    Severability.  If any one or more sections, clauses or provisions of this Settlement Escrow Agreement shall be determined by a court of competent jurisdiction to be invalid or ineffective for any reason, such determination shall in no way affect the validity and effectiveness of the remaining sections, clauses and provisions of the Agreement.

Section 405    Headings.  Any headings shall be solely for convenience of reference and shall not constitute a part of the Agreement, nor shall they affect its meaning, construction or effect.

Section 406    Settlement Escrow Agreement Executed in Counterparts.  This Settlement Escrow Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, and such counterparts together shall and will constitute one and the same instrument.

Section 407    Parties Interested Herein.  Nothing in this Settlement Escrow Agreement expressed or implied is intended or shall be construed to confer upon, or to give to, any person or entity, other than the Settlement Escrow Trustee, the City and the Bond Insurers any right, remedy or claim under or by reason of this Settlement Escrow Agreement or any covenant, condition or stipulation hereof, and all covenants, stipulations, promises and agreements in this Agreement on behalf of the City shall be for the sole and exclusive benefit of the Settlement Escrow Trustee, the City, and the Bond Insurers.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

CITY OF DETROIT

By ____________________________________
Kevyn D. Orr
Its: Emergency Manager

AMBAC ASSURANCE CORPORATION

By: ____________________________________
Name:
Title:

ASSURED GUARANTY CORP.

By: ____________________________________
Name:
Title:

ASSURED GUARANTY MUNICIPAL CORP.
By: ____________________________________
Name:
Title:

NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION

By: ____________________________________
Name:
Title:

U. S. BANK NATIONAL ASSOCIATION,
as Escrow Trustee

By ______________________________

Its: ______________________________

## EXHIBIT A

## RESTRUCTURED UTGO BONDS DEBT SERVICE REQUIREMENTS AND APPLICABLE BOND INSURER

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Interest | | | | | | | | | | | | | |
| UTGO 1999-A | | | | | | | | | | | | | | | | | | |
| 251093SM3 | 4/1/15 | 5.250% | $2,476,650.00 | Assured | $65,012.06 | $65,012.06 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093SN1 | 4/1/16 | 5.000% | $2,602,655.00 | Assured | $65,066.38 | $65,066.38 | $65,066.38 | $65,066.38 | - | - | - | - | - | - | - | - | - | - |
| 251093SP6 | 4/1/17 | 5.000% | $2,733,005.00 | Assured | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | - | - | - | - | - | - | - | - |
| 251093SQ4 | 4/1/18 | 5.000% | $2,872,045.00 | Assured | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | - | - | - | - | - | - |
| 251093SR2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | - | - | - | - |
| | | | **$13,699,785.00** | | **$345,590.44** | **$345,590.44** | **$280,578.38** | **$280,578.38** | **$215,512.00** | **$215,512.00** | **$147,186.88** | **$147,186.88** | **$75,385.75** | **$75,385.75** | - | - | - | - |
| UTGO 2001-A(1) | | | | | | | | | | | | | | | | | | |
| 251093UX6 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | $138,724.99 | $138,724.99 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093VK3 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | $146,198.39 | $146,198.39 | $146,198.39 | $146,198.39 | - | - | - | - | - | - | - | - | - | - |
| 251093VL1 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | - | - | - | - | - | - | - | - |
| 251093VM9 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | - | - | - | - | - | - |
| 251903VN7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | - | - | - | - |
| 251903VP2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | - | - |
| 251903VQ0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 |
| | | | **$65,001,200.00** | | **$1,678,473.50** | **$1,678,473.50** | **$1,539,748.51** | **$1,539,748.51** | **$1,393,550.13** | **$1,393,550.13** | **$1,239,411.25** | **$1,239,411.25** | **$912,450.00** | **$912,450.00** | **$608,300.00** | **$608,300.00** | **$304,150.00** | **$304,150.00** |
| UTGO 2002 | | | | | | | | | | | | | | | | | | |
| 251093WV8 | 4/1/21 | 5.125% | $2,815,560.00 | NPFG | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 |
| 251093WW6 | 4/1/22 | 5.125% | $2,958,945.00 | NPFG | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 |
| | | | **$5,774,505.00** | | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** | **$147,971.69** |
| UTGO 2003-A | | | | | | | | | | | | | | | | | | |
| 251093XP0 | 4/1/15 | 4.000% | $260,700.00 | Syncora | $5,214.00 | $5,214.00 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093XQ8 | 4/1/15 | 5.250% | $2,215,950.00 | Syncora | $58,168.69 | $58,168.69 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093XR6 | 4/1/16 | 5.250% | $2,602,655.00 | Syncora | $68,319.69 | $68,319.69 | $68,319.69 | $68,319.69 | - | - | - | - | - | - | - | - | - | - |
| 251093XS4 | 4/1/17 | 5.250% | $2,737,350.00 | Syncora | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | - | - | - | - | - | - | - | - |
| 251093XT2 | 4/1/18 | 5.250% | $2,880,735.00 | Syncora | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | - | - | - | - | - | - |
| 251093XU9 | 4/1/19 | 5.250% | $3,032,810.00 | Syncora | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | - | - | - | - |
| 251093XV7 | 4/1/20 | 4.500% | $434,500.00 | Syncora | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | - | - |
| 251093XW5 | 4/1/20 | 5.250% | $2,759,075.00 | Syncora | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | - | - |
| 251093XX3 | 4/1/21 | 5.250% | $3,354,340.00 | Syncora | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 |
| 251093XY1 | 4/1/22 | 4.625% | $434,500.00 | Syncora | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 |
| 251093XZ8 | 4/1/22 | 5.250% | $3,097,985.00 | Syncora | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 |
| 251093YA2 | 4/1/23 | 4.625% | $1,303,500.00 | Syncora | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 |
| 251093YB0 | 4/1/23 | 5.250% | $2,411,475.00 | Syncora | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 |
| | | | **$27,525,575.00** | | **$713,856.34** | **$713,856.34** | **$650,473.66** | **$650,473.66** | **$582,153.96** | **$582,153.96** | **$510,298.53** | **$510,298.53** | **$434,679.23** | **$434,679.23** | **$355,067.97** | **$355,067.97** | **$272,866.00** | **$272,866.00** |
| UTGO 2004-A(1) | | | | | | | | | | | | | | | | | | |
| 251093YX2 | 4/1/19 | 5.250% | $3,910,500.00 | Ambac | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | - | - | - | - |
| 251093YY0 | 4/1/20 | 4.250% | $160,765.00 | Ambac | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | - | - |
| 251093YZ7 | 4/1/20 | 5.250% | $5,287,865.00 | Ambac | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | - | - |
| 251093ZA1 | 4/1/21 | 5.000% | $5,735,400.00 | Ambac | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 |
| 251093ZB9 | 4/1/22 | 5.250% | $6,022,170.00 | Ambac | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 |
| 251093ZC7 | 4/1/23 | 4.500% | $325,875.00 | Ambac | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 |
| 251093ZD5 | 4/1/23 | 5.250% | $6,013,480.00 | Ambac | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 |
| 251093ZE3 | 4/1/24 | 4.600% | $682,165.00 | Ambac | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 |
| 251093ZF0 | 4/1/24 | 5.250% | $5,987,410.00 | Ambac | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 |
| | | | **$34,125,630.00** | | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$884,385.65** | **$781,735.02** | **$781,735.02** | **$639,512.31** | **$639,512.31** |

* Subject to Mandatory Redemption

13-53846-tjt Doc 8045-9 Filed 10/22/14 Entered 10/22/14 03:48:29 Page 19 of 32

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Interest | | | | | | | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
| 251093ZP8 | 4/1/15 | 5.000% | $7,538,575.00 | Ambac | $188,464.38 | $188,464.38 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093ZQ6 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | $207,696.43 | $207,696.43 | $207,696.43 | $207,696.43 | - | - | - | - | - | - | - | - | - | - |
| 251093ZR4 | 4/1/17 | 4.000% | $265,045.00 | Ambac | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | - | - | - | - | - | - | - | - |
| 251093ZS2 | 4/1/17 | 5.250% | $8,064,320.00 | Ambac | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | - | - | - | - | - | - | - | - |
| 251093ZT0 | 4/1/18 | 5.250% | $1,738,000.00 | Ambac | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | - | - | - | - | - | - |
| | | | **$25,518,185.00** | | **$658,772.61** | **$658,772.61** | **$470,308.23** | **$470,308.23** | **$262,611.80** | **$262,611.80** | **$45,622.50** | **$45,622.50** | **-** | **-** | **-** | **-** | **-** | **-** |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| 251093ZX1 | 4/1/19 | 5.240% | $499,675.00 * | Ambac | $13,091.49 | $13,091.49 | $9,562.48 | $9,562.48 | $5,805.79 | $5,805.79 | $1,935.26 | $1,935.26 | - | - | - | - | - | - |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| 251093G53 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | $49,750.25 | $49,750.25 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093G61 | 4/1/16 | 5.000% | $2,089,945.00 | Assured | $52,248.63 | $52,248.63 | $52,248.63 | $52,248.63 | - | - | - | - | - | - | - | - | - | - |
| 251093G79 | 4/1/17 | 4.300% | $2,189,880.00 | Assured | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | - | - | - | - | - | - | - | - |
| 251093G87 | 4/1/18 | 5.000% | $2,289,815.00 | Assured | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | - | - | - | - | - | - |
| 251093G95 | 4/1/19 | 5.000% | $2,402,785.00 | Assured | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | - | - | - | - |
| 251093H29 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | - | - |
| 251093H37 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 251093H45 | 4/1/22 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 251093H52 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 251093H60 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 251093H78 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| | | | **$37,032,435.00** | | **$918,146.30** | **$918,146.30** | **$868,396.05** | **$868,396.05** | **$816,147.42** | **$816,147.42** | **$769,065.00** | **$769,065.00** | **$711,819.63** | **$711,819.63** | **$651,750.00** | **$651,750.00** | **$543,125.00** | **$543,125.00** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 251093J92 | 4/1/15 | 5.000% | $2,003,045.00 | Assured | $50,076.13 | $50,076.13 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093K25 | 4/1/16 | 5.000% | $2,107,325.00 | Assured | $52,683.13 | $52,683.13 | $52,683.13 | $52,683.13 | - | - | - | - | - | - | - | - | - | - |
| 251093K33 | 4/1/17 | 4.300% | $2,211,605.00 | Assured | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | - | - | - | - | - | - | - | - |
| 251093K41 | 4/1/18 | 5.000% | $2,285,470.00 | Assured | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | - | - | - | - | - | - |
| 251093K58 | 4/1/19 | 5.250% | $2,376,715.00 | Assured | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | - | - | - | - |
| 251093K66 | 4/1/20 | 5.250% | $2,507,065.00 | Assured | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | - | - |
| | | | **$13,491,225.00** | | **$335,644.73** | **$335,644.73** | **$285,568.61** | **$285,568.61** | **$232,885.48** | **$232,885.48** | **$185,335.98** | **$185,335.98** | **$128,199.23** | **$128,199.23** | **$65,810.46** | **$65,810.46** | **-** | **-** |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | |
| 251093M56 | 4/1/15 | 5.000% | $2,498,375.00 | Assured | $62,459.38 | $62,459.38 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093M64 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | $65,500.88 | $65,500.88 | $65,500.88 | $65,500.88 | - | - | - | - | - | - | - | - | - | - |
| 251093M72 | 4/1/17 | 5.000% | $2,754,730.00 | Assured | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | - | - | - | - | - | - | - | - |
| 251093M80 | 4/1/18 | 4.000% | $2,889,425.00 | Assured | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | - | - | - | - | - | - |
| 251093M98 | 4/1/19 | 5.000% | $3,006,740.00 | Assured | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | - | - | - | - |
| 251093N22 | 4/1/20 | 5.000% | $3,154,470.00 | Assured | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | - | - |
| 251093N30 | 4/1/21 | 5.000% | $3,315,235.00 | Assured | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 |
| 251093N48 | 4/1/22 | 5.000% | $3,480,345.00 | Assured | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 |
| 251093N55 | 4/1/24 | 5.000% | $7,490,780.00 * | Assured | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 |
| 251093N63 | 4/1/28 | 5.000% | $17,362,620.00 * | Assured | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 |
| | | | **$48,572,755.00** | | **$1,199,871.75** | **$1,199,871.75** | **$1,137,412.38** | **$1,137,412.38** | **$1,071,911.50** | **$1,071,911.50** | **$1,003,043.25** | **$1,003,043.25** | **$945,254.75** | **$945,254.75** | **$870,086.25** | **$870,086.25** | **$791,224.50** | **$791,224.50** |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | |
| 251093P53 | 4/1/15 | 5.000% | $6,925,930.00 | Assured | $173,148.25 | $173,148.25 | - | - | - | - | - | - | - | - | - | - | - | - |
| 251093P61 | 4/1/16 | 5.000% | $2,989,360.00 | Assured | $74,734.00 | $74,734.00 | $74,734.00 | $74,734.00 | - | - | - | - | - | - | - | - | - | - |
| 251093P79 | 4/1/17 | 5.000% | $3,111,020.00 | Assured | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | - | - | - | - | - | - | - | - |
| 251093P87 | 4/1/18 | 5.000% | $3,293,510.00 | Assured | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | - | - | - | - | - | - |
| | | | **$16,319,820.00** | | **$407,995.50** | **$407,995.50** | **$234,847.25** | **$234,847.25** | **$160,113.25** | **$160,113.25** | **$82,337.75** | **$82,337.75** | **-** | **-** | **-** | **-** | **-** | **-** |
| **Total** | | | **$287,560,790.00** | | **$7,303,799.99** | **$7,303,799.99** | **$6,509,252.86** | **$6,509,252.86** | **$5,773,048.66** | **$5,773,048.66** | **$5,016,593.72** | **$5,016,593.72** | **$4,240,145.92** | **$4,240,145.92** | **$3,480,721.39** | **$3,480,721.39** | **$2,698,849.50** | **$2,698,849.50** |

* Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Interest | | | | | | | | | | | | | | | |
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | | | |
| 251093SM3 | 4/1/15 | 5.250% | $2,476,650.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $130,024.13 | $2,606,674.13 |
| 251093SN1 | 4/1/16 | 5.000% | $2,602,655.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $260,265.50 | $2,862,920.50 |
| 251093SP6 | 4/1/17 | 5.000% | $2,733,005.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $409,950.75 | $3,142,955.75 |
| 251093SQ4 | 4/1/18 | 5.000% | $2,872,045.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $574,409.00 | $3,446,454.00 |
| 251093SR2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $753,857.50 | $3,769,287.50 |
| | | | **$13,699,785.00** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$2,128,506.88** | **$15,828,291.88** |
| **UTGO 2001-A(1)** | | | | | | | | | | | | | | | | | | | | |
| 251903UX6 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $277,449.98 | $5,439,309.98 |
| 251903VK3 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $584,793.55 | $6,024,733.55 |
| 251903VL1 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $924,833.25 | $6,660,233.25 |
| 251903VM9 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $2,615,690.00 | $14,781,690.00 |
| 251903VN7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $3,041,500.00 | $15,207,500.00 |
| 251903VP2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $3,649,800.00 | $15,815,800.00 |
| 251903VQ0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $4,258,100.00 | $16,424,100.00 |
| | | | **$65,001,200.00** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$15,352,166.78** | **$80,353,366.78** |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | | | |
| 251093WV8 | 4/1/21 | 5.125% | $2,815,560.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,010,082.15 | $3,825,642.15 |
| 251093WW6 | 4/1/22 | 5.125% | $2,958,945.00 | NPFG | $75,822.97 | $75,822.97 | - | - | - | - | - | - | - | - | - | - | - | - | $1,213,167.45 | $4,172,112.45 |
| | | | **$5,774,505.00** | | **$75,822.97** | **$75,822.97** | - | - | - | - | - | - | - | - | - | - | - | - | **$2,223,249.60** | **$7,997,754.60** |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | | | |
| 251093XP0 | 4/1/15 | 4.000% | $260,700.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $10,428.00 | $271,128.00 |
| 251093XQ8 | 4/1/15 | 5.250% | $2,215,950.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $116,337.38 | $2,332,287.38 |
| 251093XR6 | 4/1/16 | 5.250% | $2,602,655.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $273,278.78 | $2,875,933.78 |
| 251093XS4 | 4/1/17 | 5.250% | $2,737,350.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $431,132.63 | $3,168,482.63 |
| 251093XT2 | 4/1/18 | 5.250% | $2,880,735.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $604,954.35 | $3,485,689.35 |
| 251093XU9 | 4/1/19 | 5.250% | $3,032,810.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $796,112.63 | $3,828,922.63 |
| 251093XV7 | 4/1/20 | 4.500% | $434,500.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $117,315.00 | $551,815.00 |
| 251093XW5 | 4/1/20 | 5.250% | $2,759,075.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $869,108.63 | $3,628,183.63 |
| 251093XX3 | 4/1/21 | 5.250% | $3,354,340.00 | Syncora | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,232,719.95 | $4,587,059.95 |
| 251093XY1 | 4/1/22 | 4.625% | $434,500.00 | Syncora | $10,047.81 | $10,047.81 | - | - | - | - | - | - | - | - | - | - | - | - | $160,765.00 | $595,265.00 |
| 251093XZ8 | 4/1/22 | 5.250% | $3,097,985.00 | Syncora | $81,322.11 | $81,322.11 | - | - | - | - | - | - | - | - | - | - | - | - | $1,301,153.70 | $4,399,138.70 |
| 251093YA2 | 4/1/23 | 4.625% | $1,303,500.00 | Syncora | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | - | - | - | - | - | - | - | - | - | - | $542,581.88 | $1,846,081.88 |
| 251093YB0 | 4/1/23 | 5.250% | $2,411,475.00 | Syncora | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | - | - | - | - | - | - | - | - | - | - | $1,139,421.94 | $3,550,896.94 |
| | | | **$27,525,575.00** | | **$184,814.58** | **$184,814.58** | **$93,444.66** | **$93,444.66** | - | - | - | - | - | - | - | - | - | - | **$7,595,309.84** | **$35,120,884.84** |
| **UTGO 2004-A(1)** | | | | | | | | | | | | | | | | | | | | |
| 251093YX2 | 4/1/19 | 5.250% | $3,910,500.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,026,506.25 | $4,937,006.25 |
| 251093YY0 | 4/1/20 | 4.250% | $160,765.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $40,995.08 | $201,760.08 |
| 251093YZ7 | 4/1/20 | 5.250% | $5,287,865.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,665,677.48 | $6,953,542.48 |
| 251093ZA1 | 4/1/21 | 5.000% | $5,735,400.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $2,007,390.00 | $7,742,790.00 |
| 251093ZB9 | 4/1/22 | 5.250% | $6,022,170.00 | Ambac | $158,081.96 | $158,081.96 | - | - | - | - | - | - | - | - | - | - | - | - | $2,529,311.40 | $8,551,481.40 |
| 251093ZC7 | 4/1/23 | 4.500% | $325,875.00 | Ambac | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | - | - | - | - | - | - | - | - | - | - | $131,979.38 | $457,854.38 |
| 251093ZD5 | 4/1/23 | 5.250% | $6,013,480.00 | Ambac | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | - | - | - | - | - | - | - | - | - | - | $2,841,369.30 | $8,854,849.30 |
| 251093ZE3 | 4/1/24 | 4.600% | $682,165.00 | Ambac | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | - | - | - | - | - | - | - | - | $313,795.90 | $995,960.90 |
| 251093ZF0 | 4/1/24 | 5.250% | $5,987,410.00 | Ambac | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | - | - | - | - | - | - | - | - | $3,143,390.25 | $9,130,800.25 |
| | | | **$34,125,630.00** | | **$496,127.31** | **$496,127.31** | **$338,045.35** | **$338,045.35** | **$172,859.31** | **$172,859.31** | - | - | - | - | - | - | - | - | **$13,700,415.03** | **$47,826,045.03** |

* Subject to Mandatory Redemption

13-53846-tjt Doc 8045-9 Filed 10/22/14 Entered 10/22/14 03:48:29 Page 21 of 32

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Interest | | | | | | | | | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | | | |
| 251093ZP8 | 4/1/15 | 5.000% | $7,538,575.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $376,928.75 | $7,915,503.75 |
| 251093ZQ6 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $830,785.73 | $8,743,030.73 |
| 251093ZR4 | 4/1/17 | 4.000% | $265,045.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $31,805.40 | $296,850.40 |
| 251093ZS2 | 4/1/17 | 5.250% | $8,064,320.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,270,130.40 | $9,334,450.40 |
| 251093ZT0 | 4/1/18 | 5.250% | $1,738,000.00 | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $364,980.00 | $2,102,980.00 |
| | | | **$25,518,185.00** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$2,874,630.28** | **$28,392,815.28** |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | | |
| 251093ZX1 | 4/1/19 | 5.240% | **$499,675.00** * | Ambac | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$60,790.03** | **$560,465.03** |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | | |
| 251093G53 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $99,500.50 | $2,089,510.50 |
| 251093G61 | 4/1/16 | 5.000% | $2,089,945.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $208,994.50 | $2,298,939.50 |
| 251093G79 | 4/1/17 | 4.300% | $2,189,880.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $282,494.52 | $2,472,374.52 |
| 251093G87 | 4/1/18 | 5.000% | $2,289,815.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $457,963.00 | $2,747,778.00 |
| 251093G95 | 4/1/19 | 5.000% | $2,402,785.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $600,696.25 | $3,003,481.25 |
| 251093H29 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,303,500.00 | $5,648,500.00 |
| 251093H37 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,520,750.00 | $5,865,750.00 |
| 251093H45 | 4/1/22 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | - | - | - | - | - | - | - | - | - | - | - | - | $1,738,000.00 | $6,083,000.00 |
| 251093H52 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | - | - | - | - | - | - | - | - | - | - | $1,955,250.00 | $6,300,250.00 |
| 251093H60 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | - | - | - | - | - | - | - | - | $2,172,500.00 | $6,517,500.00 |
| 251093H78 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | - | - | - | - | - | - | $2,389,750.00 | $6,734,750.00 |
| | | | **$37,032,435.00** | | **$434,500.00** | **$434,500.00** | **$325,875.00** | **$325,875.00** | **$217,250.00** | **$217,250.00** | **$108,625.00** | **$108,625.00** | - | - | - | - | - | - | **$12,729,398.77** | **$49,761,833.77** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | | |
| 251093J92 | 4/1/15 | 5.000% | $2,003,045.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $100,152.25 | $2,103,197.25 |
| 251093K25 | 4/1/16 | 5.000% | $2,107,325.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $210,732.50 | $2,318,057.50 |
| 251093K33 | 4/1/17 | 4.300% | $2,211,605.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $285,297.05 | $2,496,902.05 |
| 251093K41 | 4/1/18 | 5.000% | $2,285,470.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $457,094.00 | $2,742,564.00 |
| 251093K58 | 4/1/19 | 5.250% | $2,376,715.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $623,887.69 | $3,000,602.69 |
| 251093K66 | 4/1/20 | 5.250% | $2,507,065.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $789,725.48 | $3,296,790.48 |
| | | | **$13,491,225.00** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$2,466,888.96** | **$15,958,113.96** |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | | | |
| 251093M56 | 4/1/15 | 5.000% | $2,498,375.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $124,918.75 | $2,623,293.75 |
| 251093M64 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $262,003.50 | $2,882,038.50 |
| 251093M72 | 4/1/17 | 5.000% | $2,754,730.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $413,209.50 | $3,167,939.50 |
| 251093M80 | 4/1/18 | 4.000% | $2,889,425.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $462,308.00 | $3,351,733.00 |
| 251093M98 | 4/1/19 | 5.000% | $3,006,740.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $751,685.00 | $3,758,425.00 |
| 251093N22 | 4/1/20 | 5.000% | $3,154,470.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $946,341.00 | $4,100,811.00 |
| 251093N30 | 4/1/21 | 5.000% | $3,315,235.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,160,332.25 | $4,475,567.25 |
| 251093N48 | 4/1/22 | 5.000% | $3,480,345.00 | Assured | $87,008.63 | $87,008.63 | - | - | - | - | - | - | - | - | - | - | - | - | $1,392,138.00 | $4,872,483.00 |
| 251093N55 | 4/1/24 | 5.000% | $7,490,780.00 * | Assured | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $95,915.88 | $95,915.88 | - | - | - | - | - | - | - | - | $3,562,682.75 | $11,053,462.75 |
| 251093N63 | 4/1/28 | 5.000% | $17,362,620.00 * | Assured | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $333,370.13 | $333,370.13 | $227,569.38 | $227,569.38 | $116,554.63 | $116,554.63 | $10,904,429.25 | $28,267,049.25 |
| | | | **$48,572,755.00** | | **$708,343.63** | **$708,343.63** | **$621,335.00** | **$621,335.00** | **$529,981.38** | **$529,981.38** | **$434,065.50** | **$434,065.50** | **$333,370.13** | **$333,370.13** | **$227,569.38** | **$227,569.38** | **$116,554.63** | **$116,554.63** | **$19,980,048.00** | **$68,552,803.00** |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | | | |
| 251093P53 | 4/1/15 | 5.000% | $6,925,930.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $346,296.50 | $7,272,226.50 |
| 251093P61 | 4/1/16 | 5.000% | $2,989,360.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $298,936.00 | $3,288,296.00 |
| 251093P79 | 4/1/17 | 5.000% | $3,111,020.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $466,653.00 | $3,577,673.00 |
| 251093P87 | 4/1/18 | 5.000% | $3,293,510.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $658,702.00 | $3,952,212.00 |
| | | | **$16,319,820.00** | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | **$1,770,587.50** | **$18,090,407.50** |
| **Total** | | | **$287,560,790.00** | | **$1,899,608.47** | **$1,899,608.47** | **$1,378,700.00** | **$1,378,700.00** | **$920,090.68** | **$920,090.68** | **$542,690.50** | **$542,690.50** | **$333,370.13** | **$333,370.13** | **$227,569.38** | **$227,569.38** | **$116,554.63** | **$116,554.63** | **$80,881,991.64** | **$368,442,781.64** |

* Subject to Mandatory Redemption

13-53846-tjt Doc 8045-9 Filed 10/22/14 Entered 10/22/14 03:48:29 Page 22 of 32

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

## Bond Series Subject to Mandatory Redemption

### Issuance: 2004-B(2)

CUSIP: 251093ZX1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | - | $499,675.00 | 5.240% | $13,091.49 |
| 4/1/15 | Ambac | 6/30/15 | $134,695.00 | $364,980.00 | 5.240% | $13,091.49 |
| 10/1/15 | Ambac | 6/30/16 | - | $364,980.00 | 5.240% | $9,562.48 |
| 4/1/16 | Ambac | 6/30/16 | $143,385.00 | $221,595.00 | 5.240% | $9,562.48 |
| 10/1/16 | Ambac | 6/30/17 | - | $221,595.00 | 5.240% | $5,805.79 |
| 4/1/17 | Ambac | 6/30/17 | $147,730.00 | $73,865.00 | 5.240% | $5,805.79 |
| 10/1/17 | Ambac | 6/30/18 | - | $73,865.00 | 5.240% | $1,935.26 |
| 4/1/18 | Ambac | 6/30/18 | $73,865.00 | - | 5.240% | $1,935.26 |
| Total | | | $499,675.00 | | | $60,790.03 |

### Issuance: 2008-A

CUSIP: 251093N55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/15 | Assured | 6/30/15 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/15 | Assured | 6/30/16 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/16 | Assured | 6/30/16 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/16 | Assured | 6/30/17 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/17 | Assured | 6/30/17 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/17 | Assured | 6/30/18 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/18 | Assured | 6/30/18 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/18 | Assured | 6/30/19 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/19 | Assured | 6/30/19 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/19 | Assured | 6/30/20 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/20 | Assured | 6/30/20 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/20 | Assured | 6/30/21 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/21 | Assured | 6/30/21 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/21 | Assured | 6/30/22 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/22 | Assured | 6/30/22 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/2022 | Assured | 6/30/23 | - | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/2023 | Assured | 6/30/23 | $3,654,145 | $3,836,635.00 | 5.000% | $187,269.50 |
| 10/1/2023 | Assured | 6/30/24 | - | $3,836,635.00 | 5.000% | $95,915.88 |
| 4/1/2024 | Assured | 6/30/24 | $3,836,635 | - | 5.000% | $95,915.88 |
| Total | | | $7,490,780.00 | | | $3,562,682.75 |

### Issuance: 2008-A

CUSIP: 251093N63

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/15 | Assured | 6/30/15 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/15 | Assured | 6/30/16 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/16 | Assured | 6/30/16 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/16 | Assured | 6/30/17 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/17 | Assured | 6/30/17 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/17 | Assured | 6/30/18 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/18 | Assured | 6/30/18 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/18 | Assured | 6/30/19 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/19 | Assured | 6/30/19 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/19 | Assured | 6/30/20 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/20 | Assured | 6/30/20 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/20 | Assured | 6/30/21 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/21 | Assured | 6/30/21 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/21 | Assured | 6/30/22 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/22 | Assured | 6/30/22 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2022 | Assured | 6/30/23 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2023 | Assured | 6/30/23 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2023 | Assured | 6/30/24 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2024 | Assured | 6/30/24 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2024 | Assured | 6/30/25 | - | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2025 | Assured | 6/30/25 | $4,027,815.00 | $13,334,805.00 | 5.000% | $434,065.50 |
| 10/1/2025 | Assured | 6/30/26 | - | $13,334,805.00 | 5.000% | $333,370.13 |
| 4/1/2026 | Assured | 6/30/26 | $4,232,030.00 | $9,102,775.00 | 5.000% | $333,370.13 |
| 10/1/2026 | Assured | 6/30/27 | - | $9,102,775.00 | 5.000% | $227,569.38 |
| 4/1/2027 | Assured | 6/30/27 | $4,440,590.00 | $4,662,185.00 | 5.000% | $227,569.38 |
| 10/1/2027 | Assured | 6/30/28 | - | $4,662,185.00 | 5.000% | $116,554.63 |
| 4/1/2028 | Assured | 6/30/28 | $4,662,185.00 | - | 5.000% | $116,554.63 |
| Total | | | $17,362,620.00 | | | $10,904,429.25 |

**EXHIBIT B**

**FEE SCHEDULE**

B-1

ACTIVE 202233018v.4



**U.S. Bank Customer Confidential**

## Schedule of Fees for Services as ESCROW AGENT For Settlement Escrow Agreement

| | | |
|---|---|---|
| CTS01010A | **Acceptance Fee** The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing. This is a one-time, non-refundable fee, payable at closing. | $1,000.00 |
| CTS04460 | **Escrow Agent** Annual fee for the standard escrow agent services associated with the administration of the account. Administration fees are payable in advance. | $5,000.00 |
| | **Direct Out of Pocket Expenses** Reimbursement of expenses associated with the performance of our duties, including but not limited to publications, legal counsel after the initial close, travel expenses and filing fees. | At Cost |
| | **Extraordinary Services** Extraordinary Services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the services and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect. | |

Account approval is subject to review and qualification. Fees are subject to change at our discretion and upon written notice. Fees paid in advance will not be prorated. The fees set forth above and any subsequent modifications thereof are part of your agreement. Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice. In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly. Absent your written instructions to sweep or otherwise invest, all sums in your account will remain uninvested and no accrued interest or other compensation will be credited to the account. Payment of fees constitutes acceptance of the terms and conditions set forth.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**Dated: July 21, 2014**

**Exhibit E**

**CONFIRMATION ORDER INSERT**

## UTGO Settlement Agreement – Insert for Confirmation Order

### Findings of Fact and Conclusions of Law

A. After sufficient notice and opportunity for all parties to be heard, and after due deliberation, based on the Court's thorough review and full consideration of the UTGO Settlement Agreement and good and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law. Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact. All findings of fact and conclusions of law announced by the Court on the record in connection with confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.[1] The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

B. The UTGO Settlement described in the Plan and the UTGO Settlement Agreement are fair, equitable, reasonable, and in the best interests of the City and its creditors and residents.[2] The UTGO Settlement Agreement is the result of extensive arms' length negotiations among the City and the UTGO Bond Insurers – all of whom were represented by

---

1 The findings of fact and conclusions of law set forth herein and announced on the record during the Confirmation Hearing shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any direct conflict that cannot be reconciled, then, solely to the extent of such conflict, the provisions of this Confirmation Order shall govern and shall control and take precedence over any findings of fact or conclusions of law announced on the record at the Confirmation Hearing.

2 Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Plan or the UTGO Settlement Agreement, a copy of which is attached to the Plan as Exhibit __.

sophisticated counsel. The compromises and settlements embodied in the UTGO Settlement (a) resolve all disputes with respect to claims classified in Class 8 under the Plan and the issues raised by the UTGO Bond Insurers in the UTGO Litigation and (b) are, collectively, a key compromise upon which several provisions of the Plan rest. In the absence of such compromises and settlements, the City's emergence from chapter 9 would likely have been delayed by litigation and burdened with additional expenses. The UTGO Settlement and the UTGO Settlement Agreement: (a) were negotiated and entered into in good faith, (b) comport with policies and purposes of chapter 9, (c) are fair, equitable and reasonable; (d) are in the best interests of the City and its creditors and residents as they not only fully resolve the UTGO Litigation but also permit the City's assignees to receive value from the Assigned UTGO Bond Tax Proceeds as set forth in the Plan; (e) are within the range of reasonable results if the disputes resolved by the UTGO Settlement, including the Assured/NPFG Action and the Ambac Action as they relate to the UTGO Bonds, were instead litigated to a conclusion; (f) fall above the lowest point in the range of reasonableness; and (g) meet the standards for approval under sections 105(a) and 1123(b) of the Bankruptcy Code, Bankruptcy Rule 9019(a) and other applicable law.

      C.    Without limiting any of the foregoing, the Court hereby finds that:

          a.    The Plan incorporates the UTGO Settlement Agreement, and the effectiveness of the Plan is expressly conditioned upon: (a) the Michigan Finance Authority board having approved the issuance of the MFA Bonds and such bonds having been issued; and (b) the City having obtained all governmental and Emergency Manager consents and approvals required to carry out the terms of the UTGO Settlement Agreement.

b.     As of the Effective Date, the Plan represents a full, final and complete compromise, settlement, release and resolution of, among other matters, all disputes and pending or potential litigation (including any appeals), including, without limitation, the UTGO Litigation, regarding the allowability, amount, priority and treatment of the Unlimited Tax General Obligation Bond Claims. The treatment of Class 8 UTGO Claims under the Plan is a component of a settlement and compromise of the UTGO Litigation.

c.     Good and valuable consideration has been provided for all releases and exculpations granted pursuant to the UTGO Settlement Agreement, including, without limitation, the releases and exculpations granted pursuant to sections 6.1 and 6.2 of the UTGO Settlement Agreement. Such provisions are fair, equitable, reasonable and integral elements of the UTGO Settlement Agreement.

d.     The Court confirms that as of the Effective Date and pursuant to Emergency Manager Order No. __, the Municipal Obligation shall be secured, to the extent permitted by law, including without limitation section 12(1)(x) of Act 436, by a lien granted by the City on the UTGO Bond Tax Levy for so long as either the Municipal Obligation or the Stub UTGO Bonds are outstanding.

e.     As of the Effective Date, the UTGO Bond Tax Levy shall constitute "special revenues," as defined in section 902 of the Bankruptcy Code, and

"pledged special revenues," as that term is used in section 922(d) of the Bankruptcy Code.

f.       As of the Effective Date, the MFA shall possess a valid and enforceable statutory fourth lien and trust on Distributable State Aid, as provided in section 15(2) of the Shared Credit Rating Act or as otherwise provided under applicable law.

g.       As of the Effective Date, Holders of the MFA Bonds shall possess all of the MFA's rights and interest in the Municipal Obligation including all the rights and interest provided herein and under the UTGO Settlement Agreement, subject to the reservation by the MFA of rights to indemnification and to make all determinations and approvals and receive all notices accorded to it under the Municipal Obligation and related documents. Accordingly, the MFA Bonds will be payable from and secured by (i) payments made by the City on the Municipal Obligation and to the extent permitted by law, including without limitation section 12(1)(x) of Act 436, a lien on the portion of the UTGO Bond Tax Levy allocable to the Municipal Obligation, pledged by the City to secure the Municipal Obligation and (ii) a lien, made a statutory lien as provided by the Shared Credit Rating Act, on moneys in the funds and accounts established for the MFA Bonds under the authorizing resolution for such bonds, including payments pledged by the City and received and held by the MFA or its trustee for the MFA Bonds, which include, without

limitation, all payments of (x) the proceeds of the UTGO Bond Tax Levy and (y) Distributable State Aid.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The UTGO Settlement.   Consistent with the findings herein, the UTGO Settlement and the UTGO Settlement Agreement, including without limitation all of the transactions contemplated, the liens granted, and the protections created therein, are APPROVED in their entirety as a good faith, fair, reasonable, and equitable compromise and settlement of all disputes with respect to claims classified in Class 8 under the Plan that is in the best interests of the City and its creditors and residents.  The entry of this Confirmation Order constitutes approval of the UTGO Settlement Agreement pursuant to the Bankruptcy Rules, including Bankruptcy Rule 9019, the Bankruptcy Code, including section 1123, and Act 279, Public Acts of Michigan, 1909, as amended; Act 436, Public Acts of Michigan, 2012; Act 34, Public Acts of Michigan, 2001, as amended; and Act 80, Public Acts of Michigan, 1981, as amended.  As provided in the Plan, on the Effective Date, the UTGO Settlement Agreement shall be binding on the City, Ambac, Assured and NPFG.

2.     Approval of Exculpations and Releases.  All exculpations and releases granted pursuant to the UTGO Settlement, including, without limitation, the releases and exculpations granted pursuant to sections 6.1 and 6.2 of the UTGO Settlement Agreement, are hereby approved in their entirety.  The Court approves such settlements and releases on the grounds that good and valuable consideration has been provided therefor, and that such provisions are fair, equitable, reasonable, and integral elements of the UTGO Settlement Agreement.

3. Segregation of UTGO Bond Tax Levy. The proceeds of the UTGO Bond Tax Levy collected by the City shall be segregated and transmitted to the Debt Millage Escrow Trustee under the Debt Millage Deposit Escrow Agreement, and the Debt Millage Escrow Trustee shall segregate and transmit the proceeds allocable to the Municipal Obligation to the Master Trustee in accordance with section 2.4(a) of the UTGO Settlement Agreement.

4. Annual Certification of Debt Millage Levy. Pursuant to the Section 2.7(b) of the UTGO Settlement Agreement, the City shall certify annually, not later than June 30 of each year, that it has imposed the debt millage levy as required by and in accordance with the terms of the UTGO Settlement Agreement.

5. Retention of Jurisdiction. Pursuant to section 945(a) of the Bankruptcy Code, the Court shall retain jurisdiction over the UTGO Settlement and the UTGO Settlement Agreement and any dispute arising from or related to the UTGO Settlement Agreement. For the avoidance of doubt and as the City has consented, the Court shall retain exclusive post-confirmation authority and power, to implement, interpret and enforce the UTGO Settlement Agreement and all Settlement-Related Documents, including, without limitation, all exhibits to the UTGO Settlement Agreement, the Restructured UTGO Bonds, the Municipal Obligation and the MFA Bonds. As the City has consented, the Court reserves all powers as are necessary or appropriate to enforce or to give effect to the Court's retained jurisdiction under the Plan and this Confirmation Order, including by way of injunction, as long as any of the Municipal Obligation, Stub UTGO Bonds or MFA Bonds are outstanding.