UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

**ATTACHMENT 4**

**APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL**

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 4. | 8/27/2014 | 7093 | American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay |

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## AMERICAN FEDERATION OF STATE, COUNTY AND MUNICPAL EMPLOYEES MICHIGAN COUNCIL 25'S MOTION TO MODIFY THE AUTOMATIC STAY

Under the provisions of title 11 of the United States Code ("Bankruptcy Code"), 11 U.S.C. §§362(d) and 922(b), American Federation of State, County and Municipal Employees Michigan Council 25("AFSCME"), AFL-CIO, et al. ("Plaintiffs") respectfully request that this Court modify the automatic stay, specifically, the Extension Order, for the purpose of allowing Plaintiff's to proceed in their action for declaratory and injunctive relief against Defendants (who are not officers, employees, agents or representatives of Debtor) and obtain relief from the ongoing violations of constitutional and statutory rights alleged therein.  For its motion, through its counsel, AFSCME states as follows:

## INTRODUCTION

1.    Michigan AFSCME Council 25, its Local 1600 (representing City of Flint employees) and three individuals – Samuel Muma, Franklin Greene, Jr. and

Willie Stacker – are plaintiffs in a pre-petition suit against Defendants Richard Snyder (Governor), Andy Dillon (then state Treasurer), and Michael Brown and Edward Kurtz (both Emergency Managers of the City of Flint). This suit challenges the constitutionality of certain actions taken by the Defendants arising out of the appointment of emergency managers over the City of Flint, under MCLA 141.1541 et seq (PA 436). It also challenges the constitutionality of portions of PA 436.

2.     The claim alleges constitutional violations of the Contracts Clause, Takings Clause, and Due Process Clause of the United States Constitution. The complaint, *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al.*, No. 13-CV-12191 (E.D. Mich. May 16, 2013)(Docket #1) is attached as *Exhibit 1*. The constitutional challenges are brought under 42 U.S.C. §1983.

3.     Plaintiffs' suit primarily seeks a declaration that Plaintiffs' rights under these three clauses have been infringed, and injunctive relief to prevent further infringement. To the extent that the complaint seeks monetary relief, any such award would be satisfied by the State of Michigan and/or the City of Flint, but not the City of Detroit ("Debtor"), as the City of Detroit is not a party to the action.

4.     Debtor's connection to Plaintiffs' action against Defendants is non-existent. Both the cities of Detroit and Flint are under emergency management per PA 436. However, Debtor is only one of nearly one dozen communities or entities

subject to control by a state-appointed emergency manager, or subject to a PA 436 consent agreement.

5. The trial court in Plaintiffs' claim administratively closed the case. *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al.*, No. 13-CV-12191, slip op. at 1-2 (E.D. Mich. March 27, 2014)(Docket #25). In doing so, the trial court cited to the Order of this Court extending the bankruptcy Chapter 9 stay to certain "State Entities" ("Extension Order"), *In re City of Detroit, Mich.*, No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. July 25, 2013) (Docket #166). The trial court's order is found as *Exhibit 2*.

6. By this motion, Plaintiffs seek to modify the stay, specifically the Extension Order, so that the Plaintiffs' case may proceed before the trial court. Such a request for modification of the Extension Order is not sought with the purpose of challenging any of the actions taken by this Honorable Court in Detroit's bankruptcy proceeding, but merely to seek relief for the AFSCME members and other Plaintiffs in Flint.

7. The issue presented in this motion is well briefed before this Court. Indeed, this Court previously issued an order lifting the stay to allow the furtherance of a similar claim filed in *Phillips, et al. v. Snyder, et al.*, No. 13-11370 (E.D. Mich. March 27, 2013). This court's motion granting relief from stay is found at Docket

#1536. *In re City of Detroit, Mich.,* No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. November 6, 2013) (Docket #1536).

## JURISDICTION

8.     Jurisdiction over this motion is conferred upon this Court by 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

9.     Venue is proper in this Court, pursuant to 28 U.S.C. §§1408 and 1409.

10.    The relief requested in this motion is predicated upon 11 U.S.C. §362(d) and Rules 4001 and 9014-1 of the Local Rules, Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

11.    The City of Flint has been subject to State oversight through the use of Emergency Mangers or Emergency Financial Managers since 2002. Its first Emergency Manager was Defendant Edward Kurtz, who held that position until July 3, 2013.

12.    During his 2002-2003 stint as Emergency Financial Manager ("EFM"), Defendant Ed Kurtz negotiated a labor agreement with Plaintiffs resulting in 10.4% reductions in wage and benefits, saving the City millions of dollars.

13.    In 2010, Plaintiffs negotiated a new collective bargaining agreement resulting in additional concessions saving the city millions more.  This negotiated agreement between the parties did not expire until December 31, 2013.

14.    In April of 2012, a new Emergency Manager, Defendant Michael Brown, unilaterally imposed changes in wages, hours and conditions of employment for Plaintiffs.  These changes amounted to an approximate 20% reduction in wages and benefits, and impaired the Plaintiff's union contract which was in existence at the time.  Defendant Brown refused to seriously consider alternatives to contract impairment as proposed by Plaintiffs.

15.    On March 27, 2013, Plaintiffs filed an action in the United States District Court for the Eastern District of Michigan, challenging the validity of PA 436 on federal statutory and constitutional grounds. *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al*., No. 13-CV-12191 (E.D. Mich. May 16, 2013)(Docket #1)   The claims are brought under 42 U.S.C. §1983, and allege violations of the Contract Clause, the Takings Clause and the Due Process Clause of the United States Constitution. (*Exhibit A*)

16.    On July 18, 2013, after the commencement of Plaintiffs' above-referenced cause of action, the City of Detroit filed a bankruptcy petition under Chapter 9 of the bankruptcy code.  At that instant, all litigation against the Debtor or its property was automatically stayed pursuant to 11 U.S.C. §§362(a) and 922.  One week later, this Court entered an Extension Order, extending the Chapter 9 stay to certain "State Entities," non-officer employees and agents and representatives of the

Debtor. Among those "State Entities" were the two named defendants in Plaintiffs' suit, Governor Snyder and Treasurer Dillon. (Docket #166)

17.     The trial court in Plaintiffs' cause of action entered a sua sponte order, administratively closing the Plaintiff's case, due to the Extension Order.  The trial court explained as follows:

> "Although it does not appear that any interests of the City of Detroit bankruptcy proceedings are implicated in the case, the plain language of the stay order would apply to this lawsuit. Further, and importantly, Plaintiffs' complaint includes a facial challenge to the constitutionality of the state laws under which Emergency Managers are appointed and operate. [complaint citation omitted]"

(*Exhibit 2*).  The trial court explained that it would require a modification of the Extension Order for that case to proceed:

> "In accordance with the very broad Extension Order issued by the bankruptcy court, this Court will abide by the stay until such time as the bankruptcy court lifts or modifies the stay to permit this case to proceed."

Id., slip op. at 2.

18.     Thus, the reach of the Extension Order presently frustrates the Plaintiffs' claims concerning the City of Flint, nearly 70 miles outside of the Debtor's borders.  Plaintiffs seek to proceed with their action concerning the City of Flint, given that those Defendants are not officers, employees, agents, or representatives of the Debtor, and do not otherwise share a close nexus or special relationship with the Debtor such that a suit against the Defendants would be, in effect, an action against the Debtor.

19.     While this stage of Detroit's bankruptcy proceeding appears to be headed toward conclusion, the uncertainty of timing for a final conclusion, as Plaintiffs' Flint members continue to suffer through these unjust cuts, has prompted this relief from the Extension Order to be sought now.

## ARGUMENT

20.     The automatic stay provision of the Bankruptcy Code provides, in relevant part, that the filing of a petition in bankruptcy operates as a stay of "the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(1).  The purpose of the automatic stay is to give the debtor a "breathing spell" from his creditors, and also, to protect creditors by preventing a race for the debtor's assets. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6296-97 [hereinafter cited as *House Report*].

21.     However, this automatic stay provision was not intended to immutably relegate creditors to a world of limbo or to the resolution of the civil claims within the limitations of a bankruptcy proceeding.  Instead, as Congress recognized when enacting the automatic stay provision,

it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5780, 5836.

22.     Recognizing that some actions are better suited to resolution outside the bankruptcy forum, Congress specifically granted—in the same provision establishing the automatic stay—full discretion to the bankruptcy court to lift the stay and allow litigation to go forward in another forum. Section §362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall *grant relief from the stay* provided under [§362(a)], such as by terminating, annulling, modifying, or conditioning such stay—(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. §362(d)(1) (emphasis added). Thus, a creditor can seek relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1).

23.     Thus, a creditor can seek relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). A movant has the initial burden of showing a legally sufficient basis for lifting the automatic stay. See *In re M.J. & K. Co.,* 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). Once the movant shows such cause exists, the debtor bears

the burden of proving lack of cause.  Id. 11 U.S.C. § 362(g); *In re Washtenaw Huron Inv. Corp. No. 8*, 150 B.R. 31, 33 (Bankr. E. D. Mich. 1993).  No bright-line rule governs whether cause exists under Section 362(d).  *In re Hermoyian*, 435 B.R. 456, 461 (Bankr. E.D. Mich. 2010).

24.     Here, Plaintiffs allege that, with respect to Public Act 436 and certain orders issued under the authority of PA 436, Defendants violated various federal constitutional rights.  Plaintiffs' claim seeks declaratory and injunctive relief. (*Exhibit 1*)

25.     Notably, Plaintiffs' complaint is distinct from the Debtor's bankruptcy proceeding.  Plaintiffs have not sued the Debtor, nor do they seek to enforce a claim against the Debtor.  Most notably, Plaintiffs' motion for relief from the Extension Order is not tailored to reverse any action of this Court in the Detroit bankruptcy proceedings.  Even the trial court in Plaintiffs' cause of action indicated that "it is not apparent that any interests of the City of Detroit bankruptcy proceedings are implicated". (*Exhibit 2*, at slip op. 1)

26.     Plaintiffs merely seek to relieve the union members and other individuals from the unilateral and unjustified decisions of the Flint Emergency Manager.  Those members are suffering a sizeable reduction in total compensation, and seek the right to challenge the legality of those reductions.

27.    As referenced *supra,* this issue concerning the appropriateness of lifting the stay, when actions of emergency manager(s) have been challenged, has been visited by this Court in *Phillips v. Snyder.*  That case concerned challenges to the PA 436 and the actions of emergency managers across the state, alleging various federal constitutional violations.

28.    The Plaintiffs in the *Phillips v. Snyder* claim sought relief from the Extension Order.  The plaintiffs in another suit, *Detroit Branch NAACP v. Snyder*, No. 13-12098 (E.D. Mich. filed May 13, 2013) ("NAACP litigation"), concurrently sought relief from the Extension Order.

29.    In its Opinion and Order considering whether to grant relief from the Extension Order in these two matters, this Court first quoted from the pertinent portions of the Extension Order:

"2) Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3) For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court."

(Docket #1536, at pg 3-4)

30.    This Court then explained why the *NAACP* litigation should in fact be stayed pursuant to the Extension Order:

"This suit explicitly seeks to remove all power and authority from the Detroit emergency manager. Also, if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit had the potential to directly impact the City's bankruptcy case. The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that might have the same impact on the City's bankruptcy case."

(Docket #1536, at pg 4)  This Court then questioned whether the *NAACP* litigation was truly about nothing more than the Detroit Emergency Manager:

"Although the suit purports to challenge all of the emergency manager appointments under P.A. 436, there is a serious question as to whether this suit is really about any emergency manager other than the Detroit emergency manager. This concern arises because it does not appear that any of the plaintiffs in the NAACP suit have standing to challenge any of the emergency manager appointments other than the Detroit emergency manager appointment."

Id., at 5.

31.     This Court then explained why the *NAACP* litigation should be stayed:

"The NAACP plaintiffs' lawsuit seeks an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority under the act.  This lawsuit, therefore, directly threatens the City's ability to continue in this bankruptcy case."

Id., at 7-8.

32.     By contrast, this Court ruled that the *Phillips v. Snyder* litigation need not be stayed.  The Court noted that the Phillips plaintiffs withdrew from their complaint any claim which challenged the actions of the Detroit Emergency Manager, and then held as follows:

11

13-53846-tjt  Doc 8070-4  Filed 10/23/14  Entered 10/23/14 14:29:53  Page 12 of 40
13-53846-swr  Doc 7093  Filed 08/23/14  Entered 08/23/14 14:49:55  Page 12 of 40

"By these representations, which the Court accepts, it appears that the plaintiffs in the Phillips case intend to withdraw from their suit any request for relief as to the Detroit emergency manager. The Court concludes that this proposed amendment would eliminate the potential that the Phillips case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the Phillips case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the Phillips case is not subject to the July 25, [2013] order."

(Id., at pg 8-9)

33.    Thus, the Court permitted the *Phillips* suit to proceed in that the remedy it seeks has no bearing on the Debtor.

34.    As with *Phillips*, Plaintiffs' suit challenges PA 436 and its application in a jurisdiction outside of Detroit – specifically Flint. The Plaintiffs' claim cites to specific actions of the Flint Emergency Manager that violated constitutional rights of residents and employees of the City of Flint.

35.    Further, in the *NAACP* request to modify the stay, this Court reviewed the standing assertions in the *NAACP* complaint. Here in the Plaintiff's Complaint, the standing assertions relate to the City of Flint, not Detroit. (*Exhibit A*, pg 2)  The individual plaintiffs in the cause of action are residents of the City of Flint or members of the AFSCME Flint local. The standing assertion for AFSCME is "associational standing on behalf of its members as well as its own standing as party to its current collective bargaining agreement with the City of Flint".

36.    Plaintiffs' suit has no connection to the City of Detroit, other than the fact that both Flint and Detroit are governed by emergency managers. Otherwise,

there is no close nexus of identity between the Defendants and Debtor that would otherwise justify staying litigation against the Defendants.

37.     Further, the application of the automatic stay to Plaintiffs' case contravenes the very purpose and intent of Congress and the Supreme Court in enacting and enforcing §1983—to provide a judicial remedy for the violation of one's rights under the Constitution. *See Felder v. Casey*, 487 U.S. 131, 148 (1988) (recognizing that civil rights actions "belong in court") (quoting *Burnett v. Grattan*, 468 U.S. 42, 50 (1984); *Mitchum*, 407 U.S. at 242-43 (noting that the enforcement of federal rights is of the highest priority).   By delaying proceedings in the underlying matter, the stay has in essence taken from Plaintiffs—without any process—the opportunity to have the deprivations of their civil rights adjudicated by the district court and a jury of their peers.

38.     As presently applied, this stay precludes Plaintiffs, citizens with no connection to the Debtor, from any relief for the violations of their constitutional rights due to by PA 436.  For that reason, the stay should be modified to permit the litigation to proceed.

# CONCLUSION

For all of the above reasons, and for good cause shown, Plaintiffs respectfully request that this Honorable Court modify its order extending the Chapter 9 stay to non-debtor Defendants (Docket Number 166), thereby allowing Plaintiffs to their pursue claims against Defendants in Case Number 13-CV-12191.

Dated: August 27, 2014

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr.
Jack W. Schulz
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com
jschulz@millercohen.com

Herbert A. Sanders
THE SANDERS LAW FIRM PC
615 Griswold St., Ste. 913
Detroit, MI 48226
Telephone: (313) 962-0099
Facsimile: (313) 962-0044
hsanders@miafscme.org

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |

## ORDER GRANTING THE PETITIONER'S MOTION FOR RELIEF FROM AUTOMATIC STAY

This matter coming before the Court on the Petitioner AFSCME's *Motion for Relief from Automatic Stay* and the Court having determined that the legal and factual bases as set out in the motion establish just cause for relief;

IT IS HEREBY ORDERED THAT:

The Motion is GRANTED.  The Extension Order (Docket Number 166) is modified and the Plaintiffs in Case Number 13-CV-12191 are permitted to pursue that litigation.

Dated:_____     _____
Honorable Steven W. Rhodes
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
| _____ | ) |  |

## NOTICE OF MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY & OPPORTUNITY TO OBJECT

American Federation of State, County and Municipal Employees Michigan Council 25("AFSCME") and its affiliated Locals 1600 has filed pleadings with the court to modify the automatic stay for the purpose of allowing its litigation, which challenges actions of the City of Flint Emergency Manager, to proceed. The Case Number 13-CV-12191 is Plaintiff's cause of action, brought in federal court, the Eastern District of Michigan.

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to lift the automatic stay, or if you want the court to consider your views on the motion, within fourteen (14) days, you or your attorney must:

1.     File with the court a written response or an answer, explaining your position at:[1]

### United States Bankruptcy Court
211 West Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

You must also mail a copy to:

| | |
|---|---|
| Richard G. Mack, Jr. | Herb Sanders |
| Jack W. Schulz | THE SANDERS LAW FIRM PC |
| MILLER COHEN, P.L.C. | 615 Griswold St., Ste. 913 |
| 600 West Lafayette Blvd., 4th fl. | Detroit, MI 48226 |
| Detroit, MI 48226 | (313) 962-0099 (Phone) |
| (313) 964 4454 (Phone) | (313) 962-0044 (Fax) |
| (313) 964 4490 (Fax) | hsanders@miafscme.org |
| richardmack@millercohen.com | |
| jackschulz@millercohen.com | |

2.    If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date: August 27, 2014           Signatures /s/ Richard G. Mack, Jr.

Name(s)      Richard G. Mack, Jr.
             Jack W. Schulz
Address      600 W. Lafayette, 4th Fl.,
             Detroit, MI 48226

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
|  | ) | Hon. Steven W. Rhodes |
|  | ) |  |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 27, 2014, the *American Federation of State, County and Municipal Employees Council 25's Motion to Lift the Automatic Stay*, with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr.
Jack W. Schulz
MILLER COHEN PLC
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 566-4787
Facsimile: (313) 964-4490
richardmack@millercohen.com

1

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# IN THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN AFSCME COUNCIL 25
AFL-CIO, its affiliated Local 1600, Samuel
Muma, Franklin Greene Jr. and Willie
Stacker

                Plaintiffs,

    vs.

RICHARD D. SNYDER, in his official
capacity as Governor of the STATE OF
MICHIGAN, ANDREW DILLON, in his
official capacity as the TREASURER OF THE
STATE OF MICHIGAN, and MICHAEL
BROWN, in his official capacity as former
EMERGENCY MANAGER OF THE CITY
OF FLINT, and ED KURTZ, in his official
capacity as EMERGENCY MANAGER OF
THE CITY OF FLINT

                Defendants.

Case No.

Hon:

_____

Herbert A. Sanders (P43031)
The Sanders Law Firm P.C.
Attorneys for Plaintiff
615 Griswold, Suite 913
Detroit, MI 48226
(313) 962-0099
haslaw@earthlink.net

Tere McKinney (P71567)
Co-counsel for Plaintiff
Legal Dept.
Michigan AFSCME Council 25
600 W. Lafayette Blvd.
Detroit, MI 48226
(313) 964-1711
tmckinney@miafscme.org

_____

# COMPLAINT
# FOR DECLARATORY
# AND INJUNCTIVE RELIEF

1

## PARTIES

1. Plaintiff, Michigan AFSCME Council 25 is an unincorporated, voluntary labor association certified by the Michigan Employment Relations Commission, pursuant to the Michigan Public Employee Relations Act, MCLA 432.201 *et seq.*

2. Plaintiff has associational standing on behalf of its members as well as its own standing as party to its current collective bargaining agreement with the City of Flint.

3. Plaintiff Samuel Muma is a member and President of Local 1600.

4. Plaintiff Franklin Greene Jr. is a member of Local 1600 and a resident of the City of Flint.

5. Plaintiff Willie A. Stacker is a member of Local 1600 and a resident of the City of Flint

6. Defendant Richard D. Snyder is the Governor and the Chief Executive Officer of the State of Michigan.

7. Defendant Andrew Dillon is the Treasurer of the State of Michigan.

8. Defendant Michael Brown was appointed Emergency Manager by Defendant Snyder under Public Act 4 in November of 2011.

9. Defendant Brown served as Emergency Manger from December 2011 to July 2012.

10. Defendant Michael Brown is the current appointed City Administrator.

11. Defendant Ed Kurtz was previously the Emergency Financial Manger for the City of Flint from 2002-2003.

12. Defendant Ed Kurtz is the current appointed Emergency Manger for the City of Flint as of July 2012 under Public Act 72.

13. Effect March 28, 2013 Defendant Kurtz is the Emergency Manger under Public Act 436.

## INTRODUCTION

14. This lawsuit is brought under 42 U.S.C. § 1983 to restrain and redress Defendants' constitutional violations.

15. Plaintiff, Michigan AFSCME Council 25 (hereinafter AFSCME or the Union) is a party to a collective bargaining agreement with the City of Flint (hereinafter City).

16. Plaintiff's agreement with the City establishes wages and other compensation for Plaintiff's members.

17. The City is under the sole management and control of Defendant Ed Kurtz, the current Emergency Manager (herein EM), who has virtually unbridled powers. During his 2002-2003 term as EFM Defendant Ed Kurtz negotiated a labor agreement with Plaintiffs resulting in 10.4% in across the board cuts and 4% in wage reductions saving the City millions of dollars.

18. In 2010 Plaintiffs negotiated a new collective bargaining agreement resulting in additional concessions saving the city more millions of dollars.

19. The current negotiated agreement between the parties does not expire until December 31, 2013.

20. In April of 2012 Defendant Brown as Emergency Manager (herein EM) unilaterally imposed changes in wages, hours and conditions of employment for Plaintiffs, including a 20% reduction in wages and benefits.

21. Defendant Kurtz continues to enforce the unilateral changes in wages and conditions and employment initiated by Defendant Brown.

22. At all times the actions of the Defendants Brown and Kurtz were taken with the approval of Defendant Andy Dillon, the State Treasurer.

23. Defendants' wage and benefit reductions will severely and substantially impair the City contractual obligations to its employees, in violation of the *Contract Clause of the U.S.*

3

*Constitution, Article I, Section 10.*

24. The reductions constitute an unconstitutional taking of private property without just compensation in violation of the *Fifth Amendment*.

25. The reductions occurred without due process of law in violation of *U.S. Const, Am XIV.*

26. On behalf of its members Plaintiff seeks temporary, preliminary and permanent injunctive relief, declaratory relief, and restitution.

## JURISDICTION AND VENUE

27. This Court has jurisdiction over this lawsuit pursuant *to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and 28 U.S.C. § 2201 and 2202* because this civil action arises under the Constitution of the United States of America.

28. Further, this Court also has jurisdiction to render declaratory judgments as requested herein pursuant to the *Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.*

29. Plaintiff brings this action, pursuant to *42 U.S.C. § 1983*, to remedy constitutional violations undertaken under color of state law.

30. Venue lies in this Court pursuant to *28 U.S.C. § 1391(b)*, because the Plaintiff labor organization is located here, and the events giving rise to this action have occurred and are occurring within the Eastern District of Michigan.

## FACTS

31. The City of Flint is Michigan's seventh largest municipality created and organized under the laws of Michigan.

32. The City is a public employer as defined in the *Michigan Public Employment Relations Act (PERA), M.C.L. 423.201 (1)(h).*

33. *PERA* obligates a Michigan public employer, to bargain with the representative of its employees for the purpose of reaching a collective bargaining agreement covering wages, hours and other terms and conditions of employment.

34. *PERA, M.C.L. 423.215*, defines the obligation to bargain collectively with the representatives of its employees regarding wages, hours and other terms and conditions of employment, including the obligation to enter into a written contract incorporating any agreement reached upon request.

35. Plaintiff and City have entered into a series of collective bargaining agreements establishing wages, hours and terms and conditions of employment for City employees represented by AFSCME.

36. The current collective bargaining agreement between AFSCME and CITY expires June 30, 2014.. See Exhibit 1.

37. In December 2011 Defendant Rick Snyder appointed Defendant Brown as the Emergency Manager under the authority of *2011 Public Act 4*, the *Local Government School District Accountability Act, M.C.L. 14.1501, et seq. [suspended]*.

38. The *Local Government and School District Accountability Act ( here in PA 4)* authorized the Governor to appoint an Emergency Manager to exercise management authority over a local government, including a school district that was in financial distress.

39. Under PA 4 the Emergency Manger was authorized to terminate, modify and renegotiate any existing contract that the Local government was a party to.

40. In 2010 the City's then Emergency Manger Dan Williamson informed Plaintiffs bargaining representatives that the City needed additional financial concessions from its employees in order to address the City's budgetary shortfall and accumulated debt.

41. Despite the fact that Plaintiff and its members had already given up millions in concessions in

5

the form of a 4% wage reduction and 10.4% in across the board reductions in 2003.

42.  Plaintiff negotiated with Williamson regarding the City's demand for financial concessions.

43. The negotiations resulted in the current collective bargaining agreement.

44. Under the current collective bargaining agreement, AFSCME members gave up additional millions in concessions to the City, primarily in the form of reduced pay reduced health insurance, and increased pension contributions.

45. On March 16, 2011, Governor Snyder signed into law the *Local Government and School District Fiscal Accountability Act (the "Act"), Public Act 4 of 2011, MCL § 141.1501, et. seq.*

46. P.A. 4 repealed and replaced the *Local Government Fiscal Responsibility Act, 1990 Public Act 72.*

47. P.A. 4 allowed for the appointment of an "Emergency Manager," with far broader powers than those provided to the "Emergency Financial Manager" under the predecessor statute.

48. The Act was intended to provide the Governor and the State Treasurer with broad unchecked powers in the event of a so-called "financial emergency" at the local government level.

49. Like the *Local Government Fiscal Responsibility Act (Public Act 72 of 1990),* which it repealed, the Act enabled a state review and intervention into local government finances, but increased substantially the power and authority of the appointed emergency manager, specifically authorizing the power to reject, modify or terminate one or more terms and conditions of a collective bargaining agreement . *See MCL 141.1519(k).*

50. Under P.A. 4, the Emergency Manager could with the approval of the State Treasurer, abrogate a collective bargaining agreement after "meeting and conferring" with employees' bargaining representative, if in his or her "sole discretion and judgment a prompt and satisfactory resolution was unlikely to be obtained.

6

51. The Act governed both the selection and the power of emergency managers, who are appointed to act for and in the place of the governing body and the chief administrative officers of municipal governments and public school districts deemed to be in financial distress.

52. The Act provided the Governor and State Treasurer with the unbridled power to declare a local "financial emergency" whenever and wherever they saw fit, in their sole and absolute discretion.

53. On November 28, 2011 Governor Snyder appointed Defendant Brown as Emergency Manager for the City under Public Act 4.

### *Public Act 4's Radical Revision of State Law*

54. Public Act 4 radically revised state law governing the appointment of EMs over cities and school districts during times of financial stress.

55. Public Act 4 provided that once the Governor had declared a financial emergency, the Governor could then appoint an individual to be the municipality's emergency manager. The Governor was granted broad discretion to declare a financial emergency and, in fact, a municipality was not actually required to be in a fiscal crisis before an EM could be appointed.

56. Tellingly, the Act changed the title of municipal "emergency financial managers" to "emergency managers" and expanded the scope of their powers to cover all the conduct of local government.

57. The PA 4 EM's powers extended not only to financial practices and fiscal policy, but rather permitted such managers to fully act "for and in the place of" the municipality's elected governing body. The grant of powers also included a general grant of legislative power (the power to unilaterally adopt local laws and resolutions) to PA 4 EMs.

7

58. Public Act 4's grant of legislative power to EMs extended to the full scope of legislative power possessed by local elected officials. In the state of Michigan, local legislative power is of the same scope and nature as the police power possessed by the state - limited only by the jurisdictional limits of the municipality and where preempted by the general laws of the state. Public Act 4's grant of general legislative power to EMs thus extended to a grant of the full of scope of the local government's police power, previously reserved to local government's elected legislative body and elected mayor.

59. Emergency managers were further granted powers to act in disregard of the local government's local laws – including city charters, ordinances, administrative regulations, school district bylaws, etc.

### Michigan Citizen's Rejection of Public Act 4 And the State's Resurrection of Public Act 72

60. In opposition to Public Act 4, citizens began circulating petitions in May 2011. The petitions were to place a referendum on the ballot that would reject the law. Over 200,000 signatures were gathered and the petitions were submitted to the Secretary of State in February 2012. However to prevent Michigan citizens from having the opportunity to vote on the matter, the petitions were challenged by a lobbying group.

61. The petitions were challenged on the basis that the title of the petitions were not printed in 14 point font but rather were printed in slightly smaller font of approximately 13.75 or larger.[1]

62. Along party-line votes, the members of the state Board of Canvassers deadlocked and as a result, the petitions were not certified for the ballot.

---

[1] No evidence was submitted and it was not argued that signatories of the petitions had been confused or misunderstood what they had signed. In fact, the difference in point size as argued by the challenger was invisible to the naked eye of many.

8

63. The matter was then appealed to the Michigan Court of Appeals. A panel of the Court of Appeals recognized and found that existing law required the referendum to be placed on the ballot. However, the panel sought to overturn existing law, and thereby keep the referendum off the ballot. The panel requested that the full Court of Appeals be polled to convene a special panel to reconsider existing law. The full Court of Appeals however declined to convene the special panel.

64. An appeal was taken to the state Supreme Court. The Michigan Attorney General in his individual capacity and Governor joined the challengers as amici at the state Supreme Court.

65. On August 3, 2012, the Michigan Supreme Court issued an opinion ordering the state Board of Canvassers certify the petitions and place the referendum on the ballot.

66. However on August 6, 2012, the state Attorney General issued a formal opinion stating that once the petitions were certified[2], PA 72 would spring back into effect and would remain in effect if voters rejected PA 4 at the November 2012 election.

67. The state Board of Canvassers certified the petitions on August 8, 2012 and by operation of Michigan law, PA 4 was then suspended until the November.

68. In response, state officials reappointed all existing PA 4EMs as PA 72 EFMs and proclaimed that all existing consent agreements would continue in place as PA 72 consent agreements.

69. At the general election on November 6, 2012, Michigan voters overwhelmingly elected to reject PA 4.

*Michigan Legislature's Attempt to Overturn Citizen's Vote to Reject Public Act 4 by Enacting Public Act 436*

---

[2] Pursuant to Michigan law, once the petitions were certified PA 4 was then suspended until the voters could decide the matter at the next general election.

9

70. In response to the decision of Michigan voters to reject PA 4, incensed state officials and segments within the state legislature quickly moved to reenact a new law with emergency manager provisions that are substantially identical to the rejected law.

71. During the lame-duck session, the state legislature moved quickly to reenact the emergency manager provisions of Public Act 4. The new bill passed the state House and Senate on December 13, 2012 and was signed into law as the *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, on December 26, 2012.

72. Public Act 436 again changes the title of existing PA 72 "emergency financial managers" to "emergency managers" and again expands the scope of their powers to cover all the conduct of local government.

73. The PA 436 EM's powers are substantially identical to the powers that had been granted under PA 4. Public Act 436 EMs are empowered to fully act "for and in the place of" the municipality's governing body. The grant of powers again includes a general grant of legislative power to emergency managers.

74. Along with the general grant of legislative power to emergency managers, Public Act 436 exempts the EM from following existing city charters and local ordinances.

75. The new law does not provide any process that EMs must follow in the adoption or repeal of local laws, but rather permits the EM to do so by private orders, not subject to open meetings requirements.

76. Public Act 436 states that EMs appointed under PA 4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 once the new law takes effect.

77. Additionally, PA 436 permits the Governor to appoint persons appointed as EMs under PA 4 and as EFMs under PA 72 to serve as PA 436 EMs under the new law.

10

78. Under PA 436, all EMs serve at the pleasure of the Governor and continue to serve until removed by the Governor or until the Governor finds that the financial emergency has been rectified.

79. Public Act 436 permits the Governor to delegate his powers and duties to the state treasurer and the state treasurer oversees the activities of emergency managers.

80. When PA 436 took effect on March 28, 2013, EMs are in place over the cities of Allen Park, Benton Harbor, Ecorse, Flint, Pontiac and Detroit and over the Detroit Public Schools, Highland Park Public Schools, and Muskegon Heights Public Schools. Finally, the state's consent agreements with Inkster and River Rouge have again be converted – now to PA 436 agreements.

81. Under PA 436, elected officials in each of these communities will be displaced and/or be divested of governing and law-making authority and citizens will have effectively lost their right to vote for their local legislative bodies, chief executive officers, and school boards.

### Actions Taken By the EM Under PA 436

82. On April 24, 2012, EM Brown issued City of Flint *Order No. 24 & 26*. See Exhibit 2 & 3

83. The Order stated that, pursuant to *Section 19(k) of P.A. 4, M.C.L. 141.1509(k)*, and with the approval of Defendant Andrew Dillon, Emergency Manager Brown was imposing the following changes to the collective bargaining agreement with the AFSCME:

> *a. Wage reductions of 2.5%;*
>
> *b. elimination of pay out of unused sick and vacation time upon retirement;*
>
> *c. imposition of mandatory retirement contribution from 8% to 12%;*
>
> *d. elimination of shift premiums for working, holidays, overtime and weekends;*
>
> *f. Suspension of other previously agreed to compensation such as the elimination of insurance coverage during extended sick leave, supplemental payments to employees on workers compensation leave, dual classification pay, and*

11

*elimination of retiree health coverage for new hires;*

*g. Total wage and benefit reductions of 20%.*

84. The cuts in compensation ordered by the Emergency Manager constitute a serious impairment of the Plaintiff's collective bargaining agreement, and will irreparably injure the Plaintiff and its members who already have suffered substantial reductions in their livelihoods through concessions given in previous agreements.

85. The potential for injury is sufficiently immediate and real to allow this Court to issue a declaratory judgment.

86. By this Complaint for declaratory and injunctive relief, Plaintiff requests that this court declare unconstitutional and enjoin the implementation of any legislation that would impermissibly modify collective bargaining agreements between the City of Flint and its workers.

## COUNT I
### VIOLATION OF THE CONTRACTS CLAUSE OF THE UNITED STATES CONSTITUTION

87. Plaintiffs incorporate paragraphs 1-86 of this Complaint with the same force and effect as if fully set forth herein.

88. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Art I, § 10.*

89. The United States Constitution provides that *"No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." See U.S. Const., Art I, §10.*

90. By the actions alleged above, Defendants have or will substantially impair the AFSCME collective bargaining agreement, in violation of the *United States Constitution.*

12

91. This violation of United States Constitution is actionable under *42 USC § 1983*.

## COUNT II
### VIOLATION OF THE TAKINGS CLAUSE OF
### THE UNITED STATES CONSTITUTION

92. Plaintiffs incorporate paragraphs 1-91 of this Complaint with the same force and effect as if fully set forth herein.

93. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Am V.*

94. The *United States Constitution* prohibits the taking of private property without just compensation. *See U.S. Cons.t, Am V.*

95. The Takings Clause of the *Fifth Amendment* to the United States Constitution, which applies to Michigan through the *Fourteenth Amendment*, provides that *"private property [shall not] be taken for public use without just compensation."*

96. The rights of the employees represented by AFSCME to receive wages, benefits and terms and conditions of employment under their collective bargaining agreement with the City constitutes private property within the meaning of the Takings Clause.

97. By the actions alleged above, Defendants, acting under color of state law, have taken the private property of Plaintiff and its members covered under the AFSCME collective bargaining agreement without just compensation, in violation of the Takings Clause.

98. This taking is without just compensation, and thus violates the *United States Constitution*.

99. This violation of the United States Constitution is actionable under *42 USC § 1983*.

## COUNT III
### VIOLATION OF THE DUE PROCESS CLAUSE OF
### THE UNITED STATES CONSTITUTION

13

100.     Plaintiffs incorporate paragraphs 1-99 of this Complaint with the same force and effect as if fully set forth herein.

*101.*     The United States Constitution provides that no state shall *"deprive any person of life, liberty, or property without due process of law." See US Const, Am XIV.*

102.     The State of Michigan purportedly enacted *the Emergency Manager Laws* pursuant to its police power, which allows it to act for the benefit of the health, safety, and general welfare of Michigan's citizens.

103.     AFSCME and its members have vested property rights in the benefits to which they are entitled pursuant to the collective bargaining agreement had with the City.

104.     The provisions of the Act granting powers to the emergency manager with respect to termination of collective bargaining agreements bear no rational relationship to the stated purpose of the Act.

105.     The provisions of the Act granting powers to an emergency manager with respect to modification or termination of a collective bargaining agreement bear no rational or reasonable relationship to a permissible legislative objective.

106.     The policy judgment of the Legislature in enacting the Act is palpably arbitrary and irrational, and is supported by no facts that were known or could reasonably be assumed by the Legislature.

107.     The Act improperly infringes upon the liberty and property interests of Plaintiff and its members without due process of law, in violation of the *United States Constitution.*

*108.*     The Act is impermissibly vague in that it creates and delegates broad powers to the Governor, State Treasurer, and emergency manager without providing discernible standards for the triggering or exercise of such powers, in violation of the *United States Constitution.*

14

109.      This violation of the United States Constitution is actionable under *42 USC § 1983*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue an Order:

*(1)*    Declaring that the actions of Defendants as delineated herein have impaired the contractual rights of Plaintiffs in violation of the *Contract Clause of the United States Constitution;*

*(2)*    Declare that the actions of Defendants delineated herein constitute a taking of private property without just compensation in violation of the *Takings Clause of the United States Constitution;*

(3)    Declare that the actions of Defendants described herein deprives the Plaintiffs of their rights to due process under the *United States Constitution*;

(4)    Declare that the status quo be restored by declaring all actions taken by Defendants to modify, amend, or terminate AFSCME's collective bargaining agreement void *ab initio;*

(5)    Enter a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons and entities acting in concert with them, from taking any actions which authorize the modification, amendment, or termination of the AFSCME collective bargaining agreement; and enjoining Defendants from imposing reductions in pay and benefits on the City employees represented by AFSCME, and further enjoining Defendants from taking any action to implement or effectuate *Orders 24 and 26* with respect to employees represented by AFSCME;

(6)    Enjoin Defendants, and all persons and entities acting in concert with them, from taking any further actions to implement or enforce the unconstitutional provisions of PA 4 or PA 436.

(7)    Awarding Plaintiff the attorney fees, costs, and other expenses incurred in prosecuting this lawsuit, as well as such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Date: May 17, 2013                          /s/ Herbert A Sanders

                                            Herbert A. Sanders (P43031)
                                            The Sanders Law Firm P.C.
                                            Attorneys for Plaintiff
                                            615 Griswold Suite 913
                                            Detroit, MI 48226
                                            (313) 962-0099
                                            haslaw@earthlink.net

16

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN AFSCME COUNCIL 25
AFL-CIO, INC., et al.,

                  Plaintiffs,

    v.                          Case No. 13-12191

RICHARD D. SNYDER, GOVERNOR      HON. TERRENCE G. BERG
OF THE STATE OF MICHIGAN, et al.,    HON. PAUL J. KOMIVES

                  Defendants.
_____/

## ORDER RECOGNIZING APPLICATION OF AUTOMATIC STAY, DENYING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE, AND ADMINISTRATIVELY CLOSING THE CASE

This matter is before the Court on its sua sponte review of the complaint filed May 16, 2013. On July 25, 2013, the United States Bankruptcy Court for the Eastern District of Michigan entered a very broad order in the Detroit bankruptcy case that extended the Chapter 9 stay to include certain "State Entities," including "the Governor [and] the State Treasurer . . . ." *In re City of Detroit, Mich.*, No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. July 25, 2013) (Dkt. 166).

Governor Snyder and Treasurer Dillon, "State Entities" under the bankruptcy court's order, are named defendants in this case. Although it does not appear that any interests of the City of Detroit bankruptcy proceedings are implicated in the case, the plain language of the stay order would apply to this lawsuit. Further, and importantly, Plaintiffs' complaint includes a facial challenge to the constitutionality of the state laws under which Emergency Managers are appointed and operate. (Compl. ¶¶ 102–09, Prayer for Relief (3) and (6).)

In accordance with the very broad Extension Order issued by the bankruptcy court, this Court will abide by the stay until such time as the bankruptcy court lifts or modifies the stay to permit this case to proceed. *See id.*; *see, e.g., United Retired Government Employees v. Snyder*, No. 13-2503, slip op. at 1–2 (6th Cir. Feb. 14, 2014) (Dkt. 25); *United Retired Government Employees v. Snyder*, No. 13-CV-12378, slip op. at 1–2 (E.D. Mich. Oct. 9, 2013) (Dkt. 16); *In re City of Detroit, Mich.*, No. 13-53846, slip op. at 1–9 (Bankr. E.D. Mich. Nov. 6, 2013) (Dkt. 1536-1).

Accordingly, it is ORDERED that the pending motion in this case, Defendants' motion to dismiss (Dkt. 11), is DENIED WITHOUT PREJUDICE.

It is FURTHER ORDERED that proceedings in this case are STAYED until further order of the court, and that the Clerk of the Court is DIRECTED to administratively close this case without prejudice to the rights of any of the parties. This closing does not constitute a dismissal or decision on the merits.

It is FURTHER ORDERED that when the bankruptcy stay is removed, or a party obtains relief from the stay, the case may be reopened on motion of any party.

SO ORDERED.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated: March 27, 2014

## Certificate of Service

I hereby certify that this Order was electronically submitted on March 27, 2014, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager

2

4. This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g).

Signed on July 25, 2013

                                        _____/s/ Steven Rhodes_____
                                        **Steven Rhodes**
                                        **United States Bankruptcy Judge**

-3-

13-53846-swr Doc 807-2 Filed 10/22/14 Entered 10/22/14 14:39:47 Page 40 of 40
13-53846-swr Doc 807-2 Filed 10/22/14 Entered 10/22/14 14:39:47 Page 40 of 40