# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

Pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure, appellants the State of Michigan and the City of Detroit, Michigan submit this designation of the contents of the record and statement of issues on appeal regarding the State and the City's Joint Notice of Appeal [Dkt. #7912] filed on October 10, 2014, pursuant to 28 U.S.C. § 158(a)(1) and Rules 8001(a) and 8002(b) of the Federal Rules of Bankruptcy Procedure from the *Order Regarding Motion to Modify the Automatic Stay Filed by American Federation of State, County and Municipal Employees Michigan Council 25 (Dkt. #7093)* [Dkt. #7679] entered on September 26, 2014.

# I. Designation of the contents of the record on appeal.

| Item | Date Filed | Docket # | Description |
|------|-----------|----------|-------------|
| 1. | 7/25/2013 | 166 | Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor |
| 2. | 11/6/2013 | 1536-1 | Opinion and Order Denying NAACP's Motion for Relief from Stay (Dkt. #740) and Granting Phillips' Motion for Relief from Stay (Dkt. #1004) |
| 3. | 12/20/2013 | 2256 | Order Denying Motion for Reconsideration (Dkt. #1745) |
| 4. | 8/27/2014 | 7093 | American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay |
| 5. | 9/10/2014 | 7401 | State of Michigan, Rick Synder, and Kevin Clinton's Response to American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay [Dkt. #7093] |
| 6. | 9/10/2014 | 7403 | City of Detroit's Objection and Brief in Opposition to American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay |
| 7. | 9/26/2014 | 7679 | Order Regarding Motion to Modify the Automatic Stay Filed by American Federation of State, County and Municipal Employees Michigan Council 25 (Dkt. #7093) |

## II. Statement of issues on appeal.

1.    Whether the Bankruptcy Court erred in holding that the *Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor* entered on July 15, 2013 [Dkt. #166] does not apply to the *Flint Case*[1] where the Complaint contains allegations that that PA 436[2] is facially unconstitutional, and a holding in the *Flint Case* that PA 436 is unconstitutional could pose serious questions regarding the validity of actions taken by Detroit's Emergency Manager in the Bankruptcy Case.[3]

2.    Whether the Bankruptcy Court erred in concluding that "a finding by another court that PA 436 is unconstitutional will not automatically result in the removal of Kevyn Orr.  Further action would need to be taken, and any such further action is subject to the automatic stay" where a holding in the *Flint Case* that PA 436 is

---

[1] *Michigan AFSCME Council 25, et al. v. Richard D. Snyder, et al.*, Case No. 13-CV-12191 (E.D. Mich.).

[2] Public Act 436 of 2012 of the State of Michigan, also known as the Local Financial Stability And Choice Act, Mich. Comp. Laws §§ 141.1541–141.1575.

[3] *In re City of Detroit, Michigan*, United States Bankruptcy Court for the Eastern District of Michigan, Case No. 13-53846.

unconstitutional could render PA 436 void *ab initio*, and thus, could

pose serious questions regarding the validity of actions taken by

Detroit's Emergency Manager in the Bankruptcy Case.

Respectfully submitted,

*/s/ Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
Attorney for State of Michigan

P.O. Box 30754, Lansing, Michigan 48909
(517) 373-3203
SchneiderM7@michigan.gov
[P62190]

Aaron D. Lindstrom
Solicitor General

Erik Graney
Assistant Attorney General

Steven G. Howell
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425

Attorneys for the State of Michigan

AND

*/s/ Timothy A. Fusco*

Jonathan S. Green (P33140)
Stephen S. LaPlante (P48063)
Timothy A. Fusco (P13768)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com
fusco@millercanfield.com

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Attorneys for the City of Detroit,
Michigan

Dated:  October 23, 2014

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 1

### APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 1. | 7/25/2013 | 166 | Order Pursuant to Section 105(a) of the Bankruptcy Code Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtor |

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
------------------------------------------------------x
                                     :
In re                                :     Chapter 9
                                     :
CITY OF DETROIT, MICHIGAN,           :     Case No. 13-53846
                                     :
                        Debtor.      :     Hon. Steven W. Rhodes
                                     :
                                     :
------------------------------------------------------x
```

## ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE EXTENDING THE CHAPTER 9 STAY TO CERTAIN (A) STATE ENTITIES, (B) NON OFFICER EMPLOYEES AND (C) AGENTS AND REPRESENTATIVES OF THE DEBTOR

This matter coming before the Court on the Motion of Debtor,

Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order,

Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer

Employees and (C) Agents and Representatives of the Debtor (the "Motion"),[1]

filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the

Motion and the Orr Declaration and having considered the statements of counsel

and the evidence adduced with respect to the Motion at a hearing before the Court

(the "Hearing"); and the Court finding that:  (a) the Court has jurisdiction over this

---

[1]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) the unusual circumstances present in this chapter 9 case warrant extending the Chapter 9 Stay to the State Entities, the Non-Officer Employees and the City Agents and Representatives; and the Court having determined that the legal and factual bases set forth in the Motion and the Orr Declaration and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 Stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and the members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3.      For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

4.    This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g).

.

**Signed on July 25, 2013**

                                    _____**/s/ Steven Rhodes**_____
                                    **Steven Rhodes**
                                    **United States Bankruptcy Judge**

-3-

13-53846-swr  Doc 2223-6  Filed 11/29/14  Entered 11/29/14 11:28:27  Page 9 of 85
13-53846-swr  Doc 436-1  Filed 1/29/14  Entered 1/29/14 11:38:47  Page 9 of 85

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 2

## APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

| Design- ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 2. | 11/6/2013 | 1536-1 | Opinion and Order Denying NAACP's Motion for Relief from Stay (Dkt. #740) and Granting Phillips' Motion for Relief from Stay (Dkt. #1004) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Chapter 9
                                                          Case No. 13-53846
City of Detroit, Michigan,                                Hon. Steven W. Rhodes

     Debtor.

_____/

**Opinion and Order**

**Denying NAACP's Motion for
Relief from Stay (Dkt. #740)**

**and**

**Granting Phillips' Motion for
Relief from Stay (Dkt. #1004)**

     This opinion addresses two motions for relief from the stay.  The first motion (Dkt. #740)

relates to *Detroit Branch NAACP v. Snyder*, No. 13-12098 (E.D. Mich. filed May 13, 2013).  The

other motion (Dkt. #1004) relates to *Phillips v. Snyder*, No. 13-11370 (E.D. Mich. filed March

27, 2013).  Both suits challenge the constitutionality of the Local Financial Stability and Choice

Act, Michigan Public Act No. 436 (2012), MCL §§ 141.1541–141.1575 ("P.A. 436").

     For the reasons stated in this opinion, the Court concludes that the motion for relief from

the stay as to the *NAACP* suit should be denied while the motion for relief from the stay as to the

*Phillips* suit should be granted.

**I. The Procedural History**

     On March 27, 2013, Catherine Phillips and several other plaintiffs filed a lawsuit in the

United States District Court for the Eastern District of Michigan against Governor Richard

Snyder and State Treasurer Andrew Dillon, asserting that P.A. 436 is unconstitutional and

seeking declaratory and injunctive relief. Specifically, they assert that P.A. 436 violates their rights under the United States Constitution, art. IV, § 4; amend. I; amend. XIII; amend. XIV; and the Voting Rights Act of 1965, 42 U.S.C. §§ 1973–1973(q). Most of the individual plaintiffs are residents or elected officials of several municipalities in which emergency managers have been appointed under P.A. 436 – the City of Detroit, the City of Flint, the City of Benton Harbor, and the City of Pontiac. Three of the plaintiffs are also members of the Detroit Public Schools Board; an emergency manager has also been appointed for the Detroit Public Schools. The suit seeks damages, declaratory relief, and injunctive relief, including relief "restraining the Defendants and any present and future EMs from implementing or exercising authority and powers purportedly conveyed by Public Act 436." Complaint at 49–50, *Phillips*, No. 13-11370.

The second suit was filed on May 13, 2013, by the Detroit Branch NAACP, the Michigan State Conference NAACP, Donnell White, individually and on behalf of Detroit Branch NAACP and Michigan State Conference NAACP, Thomas Stallworth III, individually, Rashida Tlaib, individually, and Maureen Taylor, individually. It was filed in the United States District Court for the Eastern District of Michigan against Governor Richard Snyder, State Treasurer Andrew Dillon, and Secretary of State Ruth Johnson, in their official capacities. The suit alleges that P.A. 436 violates constitutional voting rights under the Equal Protection Clause and the Due Process Clause of the 14th Amendment. In their first amended complaint, filed June 27, 2013, the plaintiffs sought: (1) to enjoin the defendants and others from implementing or enforcing P.A. 436; (2) an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority; (3) an order that actions exercised by any emergency manager are unenforceable; and (4) preclearance of the cities and school districts currently with emergency

managers under § 3(c) of the Voting Rights Act. Amended Complaint at ¶¶ 32–33, *Detroit Branch NAACP*, No. 13-12098.

On July 18, 2013, the City of Detroit filed this chapter 9 bankruptcy case.

On July 25, 2013, upon a motion filed by the City (Dkt. #56), the Court entered an order pursuant to 11 U.S.C. § 105(a) extending the stay to certain state entities, including the governor and the treasurer. (Dkt. #166)

On August 22, 2013, the district court entered separate orders staying and administratively closing both the *Phillips* case and the *NAACP* case due to the City's bankruptcy filing and this Court's July 25, 2013 order.

The plaintiffs in both of those lawsuits have filed separate motions for relief from the stay. Each group of plaintiffs contends that its lawsuit is not stayed by the Court's July 25, 2013 order because its suit was not included in the City's motion to extend the stay. In the alternative, each group seeks relief from the stay to permit it to continue its district court lawsuit.

The City and the State of Michigan filed objections to both motions.

The Court conducted a hearing on the NAACP motion October 2, 2013, and took the matter under advisement. The Court concluded that a hearing is not necessary on the Phillips motion.

## II. Whether the July 25, 2013 Order
## Applies to the Two Lawsuits

The July 25, 2013 order extending the automatic stay provides in part:

> 2) Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3

3) For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court.

The plaintiffs in each suit argue that the order does not apply to their lawsuit because they are not creditors of the City and their lawsuit does not assert any claim against the City.

The City and the State of Michigan assert that the order does apply to the plaintiffs' lawsuits because the lawsuits will directly interfere with the City's chapter 9 case and may deny the City the protections of chapter 9.

The Court will first address the circumstances of the *NAACP* case and explain why the order does apply to that suit. The Court will then address why the July 25, 2013 order does not apply to the *Phillips* case.

## A. Whether the July 25, 2013 Order
## Applies to the *NAACP* Case

The Court concludes that this order does apply to the *NAACP* case. This suit explicitly seeks to remove all power and authority from the Detroit emergency manager. Also, if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit had the potential to directly impact the City's bankruptcy case. The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that might have the same impact on the City's bankruptcy case.

The Court recognizes that the *NAACP* lawsuit purports to seek relief not only as to the emergency manager for the City of Detroit, but also as to the emergency managers in several other municipalities who are not before the Court – the City of Allen Park, the City of Benton Harbor, the Detroit Public School System, the City of Ecorse, the City of Flint, the Highland Park School System, the Muskegon Heights School System, and the City of Pontiac. Obviously,

whatever interests the plaintiffs in the *NAACP* case may have in vindicating their rights, if any, in those municipalities can only be addressed elsewhere.

Without addressing the substantive merits of the NAACP plaintiffs' claims in their suit, there is nonetheless one aspect of the suit that substantially undermines their interest in pursuing their claims as to these other municipalities. Although the suit purports to challenge all of the emergency manager appointments under P.A. 436, there is a serious question as to whether this suit is really about any emergency manager other than the Detroit emergency manager. This concern arises because it does not appear that any of the plaintiffs in the *NAACP* suit have standing to challenge any of the emergency manager appointments other than the Detroit emergency manager appointment. Accordingly, unlike the *Phillips* case, discussed below, the *NAACP* case appears to be directed much more to the Detroit emergency manager than any other emergency manager.

Before developing this point any further, however, the Court must pause to recognize that the precise issue of whether these plaintiffs have standing to pursue their claims in their district court lawsuit is not before this Court in this bankruptcy case and it would be inappropriate for this Court to address the standing issue directly.

The basis of this concern about the NAACP plaintiffs' standing lies in their first amended complaint. It alleges that each individual plaintiff is a resident and voter in the City of Detroit. First Amended Complaint at ¶¶ 24–27, *Detroit Branch NAACP*, No. 13-12098. Accordingly, their standing to challenge the emergency manager appointments in any other municipality would be highly suspect.

The Supreme Court has established this test to determine a plaintiff's standing:

> The Art. III judicial power exists only to redress or otherwise
> protect against injury to the complaining party, even though the

court's judgment may benefit other's collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action[.]"

*Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205 (1975) (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S. Ct. 1146, 1148 (1973)); s*ee also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013) ("It is, however, a 'fundamental restriction on our authority' that '[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'") (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S. Ct. 1364, 1371 (1991)); *Kowalski v. Tesmer*, 543 U.S. 125, 125 S. Ct. 564 (2004); *Conn v. Gabbert*, 526 U.S. 286, 119 S. Ct. 1292 (1999).

In this suit, the two other plaintiffs are the Detroit Branch NAACP and the Michigan State Conference NAACP. Describing these organizations, the first amended complaint states:

> 22. Plaintiff Detroit Branch NAACP, chartered in 1912, is the NAACP's largest Branch in America. Plaintiff Detroit Branch NAACP has, throughout its 99 year history, fought, through the democratic process, for the cause of civil rights and equal treatment for all. Plaintiff Detroit Branch NAACP has fought in the courts to preserve and protect voting rights in the State of Michigan. . . .

> 23. Plaintiff Michigan State Conference NAACP is the umbrella organization for all NAACP units or branches within the State of Michigan. It is the central authority, responsible for coordinating all local NAACP branches around the State.

First Amended Complaint at ¶¶ 22–23, *Detroit Branch NAACP*, No. 13-12098.

The Sixth Circuit has addressed the standing of a membership organization like the Detroit Branch NAACP:

> A voluntary membership organization has standing to sue on behalf of its members "when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of

6

> individual members in the lawsuit." *Hunt v. Washington State*
> *Apple Adver. Comm.*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed.
> 2d 383 (1977)[.]

*Am. Civil Liberties Union of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 495–96 (6th Cir. 2004).

It does appear likely that under *Ashbrook*, the Detroit Branch NAACP has standing to challenge the Detroit emergency manager appointment. However, the first amended complaint alleges no facts that would establish its standing to challenge any of the other emergency manager appointments.

Similarly, the first amended complaint alleges no facts establishing that the Michigan State Conference NAACP would have any standing under *Ashbrook*. Indeed, as quoted above, paragraph 23 only states that it is an "umbrella organization" for the NAACP branches within Michigan, and that it is the "central authority, responsible for coordinating all local NAACP branches around the State."

These standing considerations strongly suggest that despite the much more broadly stated goals of the lawsuit, its primary, if not sole, objective is the removal of the Detroit emergency manager. In any event, it appears likely that this relief is the only relief that the plaintiffs could be granted, if any.

The impact in this bankruptcy case of the potential removal of the Detroit emergency manager by the plaintiffs' lawsuit cannot be overstated. Section 18(1) of P.A. 436 provides, "This section . . . empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9." M.C.L. § 141.1558(1). The NAACP plaintiffs' lawsuit seeks an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority under the act. This lawsuit, therefore, directly threatens the City's

7

ability to continue in this bankruptcy case. If P.A. 436 were found to be unconstitutional, as the plaintiffs' lawsuit claims, then the City's emergency manager would be removed from office. Under applicable state law, no one else would be authorized to prosecute this chapter 9 case on behalf of the City.

Accordingly, due to its potential impact on this bankruptcy case, the Court concludes that the July 25, 2013 order does apply to the *NAACP* case.

### B. Whether the July 25, 2013 Order Applies to the *Phillips* Case

In contrast to the *NAACP* case, the *Phillips* case includes residents and officials of not only the City of Detroit but also some of the other municipalities in which emergency managers have been appointed. Significantly, in the motion for relief from the stay that the plaintiffs in the *Phillips* case filed, they have attempted to overcome the concerns that compelled the conclusion that the *NAACP* case is subject to the July 25, 2013 order. The Phillips motion states:

> 15. Petitioners also seek to amend their Complaint, (Exh. 6.1, the *Phillips* case Dkt. #1), to withdraw the plaintiffs Phillips, Valenti and AFSCME Council 25 as plaintiffs from the underlying action and to voluntarily dismiss, without prejudice, Count I of the Complaint, which was asserted by the withdrawing plaintiffs.

(Dkt. #1004) Count I of the complaint, which the plaintiffs propose to withdraw, asserted the plaintiffs' claims in relation to the effect of P.A. 436 in Detroit.

Moreover, the conclusion of the motion reiterates that the plaintiffs intend to "amend their Complaint to provide for the voluntary withdrawal of individual plaintiffs Phillips, Valenti, and AFSCME Council 25 and the voluntary dismissal of Count I of their Complaint, without bearing on the Debtor's rights in this bankruptcy proceeding." (Dkt. #1004, at 15)

By these representations, which the Court accepts, it appears that the plaintiffs in the *Phillips* case intend to withdraw from their suit any request for relief as to the Detroit emergency

8

13-53846-tjt Doc 822-2 Filed 11/02/14 Entered 11/02/14 11:26:27 Page 18 of 25
13-53846-swr Doc 2063 Filed 11/08/14 Entered 11/08/14 11:26:47 Page 39 of 95

manager. The Court concludes that this proposed amendment would eliminate the potential that the *Phillips* case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the *Phillips* case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the *Phillips* case is not subject to the July 25, 2103 order.

### III. Whether to Grant the NAACP Plaintiffs' Motion for Relief from the Stay for Cause

Because the July 25, 2013 order does stay the *NAACP* case, those plaintiffs seek relief from the extended stay in order to proceed with their lawsuit.

The July 25, 2013 order states, "This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)–(g)."

11 U.S.C. § 362(d)(1) states, "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause[.]"

Under 11 U.S.C. § 362(g), the debtor bears the burden of proving that there is not cause for relief from the stay.

"Cause" is not a defined term, "so courts must determine whether discretionary relief is appropriate on a case-by-case basis." *Trident Assoc. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assoc. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995) (quotation marks omitted) (quoting *In re Laguna Assoc. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994)). Whether to grant such relief "resides within the sound discretion of the bankruptcy court." *Garzoni v. K-Mart Corp.* (*In re Garzoni*), 35 F. App'x 179, 181 (6th Cir. 2002).

"Determining cause is not a litmus test or a checklist of factors. It requires consideration of many factors and a balancing of competing interests." *Chrysler LLC v. Plastech Engineered Prods., Inc.* (*In re Plastech Engineered Prods., Inc.*), 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008); *see also In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990) ("In determining whether or not cause exists, the bankruptcy court must balance the inherent hardships on all parties and base its decision on the degree of hardship and the overall goals of the Bankruptcy Code.").

Accordingly, in balancing the competing interests to determine whether there is cause for relief from the stay, the Court will consider both the harm to the City if the motion is granted and the harm to the NAACP plaintiffs if the motion is denied. In addition, the Court concludes that it is appropriate to consider the public interest in this context, just as it was appropriate to consider the public interest when determining whether to extend the stay when the City requested it. *See, e.g., In re Trans-Serv. Logistics, Inc.,* 304 B.R. 805, 807 (Bankr. S.D. Ohio 2004).

The NAACP plaintiffs contend that there is cause for relief from the stay due to the extraordinary importance of the voting rights that their lawsuit seeks to vindicate and because their lawsuit will have little or no impact on the City's bankruptcy, to which they do not object. At the hearing on this motion, the plaintiffs' counsel clarified that in their lawsuit, the plaintiffs seek only prospective relief and do not seek to invalidate any actions taken by the emergency manager in Detroit or in any other city. They do acknowledge, however, that success in their lawsuit may lead to the removal of the emergency manager in Detroit. They contend nevertheless that the mayor of Detroit can then decide whether to proceed in chapter 9. They assert that their lawsuit is not a collateral attack on this bankruptcy, but a much broader challenge to the emergency manager law.

10

The City and the State of Michigan contend that the plaintiffs have failed to demonstrate cause for relief from the stay. They argue that numerous parties in this case have challenged the constitutionality of P.A. 436 in the context of eligibility objections and that it does not promote judicial economy to have that issue litigated in other courts.

## A. The Harm to the City
## If Relief from the Stay Is Granted

The harm to the City that might result if relief from the stay is granted is largely the same harm that §§ 362(a) and 922(a)(1), as well as the Court's July 25, 2013 order. seek to prevent. Those bankruptcy code provisions and the Court's order are designed to consolidate into the bankruptcy case all proceedings that relate to and impact the case, so that the debtor, and, for that matter, all of the other parties, are not required to endure the expense and complexity of litigating multiple issues in multiple courts. Such duplicative litigation also creates the risk of inconsistent results.

If relief from the stay were granted, the City would be required to request leave from the district court to intervene in the plaintiffs' lawsuit in order to protect its interest in adjusting its debts through this bankruptcy. That would require the City to incur the expense of litigating the constitutionality of P.A. 436 in two courts. Indeed if other similar motions for relief from the stay are granted, the issue would then have to be litigated in that many more courts.

The plaintiffs have attempted to minimize the impact of their lawsuit on the City by arguing that if the mayor of Detroit so chooses, this bankruptcy case can continue even without an emergency manager. However, as developed above, that is not so. M.C.L. § 141.1558(1) states that only the emergency manager may represent the City in this chapter 9 case. There is no provision in law for the mayor or any other city official to act on the City's behalf in this case.

11

## B. The Harm to the NAACP Plaintiffs
## If Relief from the Stay Is Denied

The harm that results to the NAACP plaintiffs if relief from the stay is denied is substantial. They will be required to defer litigating the important voting rights claims in their lawsuit until this bankruptcy case is resolved. However, this harm is as much a consequence of their own choices as it is of either the bankruptcy stay or this Court's July 25, 2013 order. The plaintiffs had the same full opportunity to file a timely eligibility objection challenging P.A. 436 as every other creditor, voter and resident of the City of Detroit had.

On that point, it should be noted that the plaintiffs do not assert that they were not aware of the filing of this bankruptcy case by the City of Detroit in time to file a timely eligibility objection. Moreover, the plaintiffs have submitted no evidence that they were not aware of the Court's August 19, 2013 deadline to file eligibility objections. Moreover, at the hearing on this motion, the Court offered the plaintiffs an opportunity to file an objection to eligibility, but plaintiffs' attorney declined that opportunity.

The record reflects that the NAACP plaintiffs made the conscious choice not to file an objection to eligibility in this case and instead chose to take the risk that their lawsuit would be allowed to proceed despite this bankruptcy case. Indeed, the NAACP plaintiffs rather vehemently assert that they do not object to the City's eligibility to be in a chapter 9 bankruptcy case. But the terminating impact that the success of their lawsuit would have on this bankruptcy makes that assertion ring hollow. Much of their lawsuit is precisely an eligibility objection, simply not labeled and filed as such. Although they were certainly not required to file an eligibility objection, their choice has the legal consequence that their suit is stayed by this case.

12

## C. The Public Interest

Certainly, the public has a substantial interest in the speedy and efficient resolution of litigation like the *NAACP* suit that seeks to vindicate a right as central to our democracy as the right to vote.

At the same time, however, the public has a substantial interest in the speedy and efficient resolution of a municipal bankruptcy case that affects as many people and institutions, and as much of the local, regional and national economy, as this case does.

The public also has an interest in the opportunity that this bankruptcy case may provide for the City of Detroit not only to adjust its debt and to restore the basic services that its residents need for their health and safety but also to regenerate its economic livelihood.

The NAACP plaintiffs' motion for relief from the stay does not require this Court to choose which of these important interests should prevail. It only requires the Court to determine whether it is necessary and appropriate to continue to defer the resolution of the plaintiffs' lawsuit pending the outcome of this bankruptcy.

## D. Conclusion

In its discretion, the Court concludes that although the considerations on each side are substantial, on balance, the factors suggesting that the motion for relief from the stay should be denied outweigh the considerations suggesting otherwise. The NAACP plaintiffs' claims in their lawsuit are important claims. However, those claims primarily and directly challenge the appointment of the Detroit emergency manager and the claims could have been presented in this case in a timely eligibility objection.

The NAACP plaintiffs' decision to forego that opportunity creates the potential, if the motion is granted, for the City to incur unnecessary litigation expense and delay in this

13

proceeding. It also creates the potential to prematurely terminate this bankruptcy case. In these circumstances, the Court concludes that it is appropriate to require the plaintiffs to await resolution of their claims until this bankruptcy case is resolved.

Accordingly, the Court concludes that the City of Detroit and the State of Michigan have met their burden of establishing that there is not cause for relief from the stay.

## IV. Order

For these reasons, it is hereby ordered that it is not necessary for the Court to grant relief from the stay to allow the *Phillips* case to proceed because that case is not subject to the Court's July 25, 2013 order. This order is conditioned on the Phillips plaintiffs' amendment of their complaint to eliminate their request for the removal of the Detroit emergency manager and for any other relief that diminishes the Detroit emergency manager's authority under P.A. 436.

It is further ordered that the *NAACP* case is subject to the Court's July 25, 2013 order and that the NAACP plaintiffs' motion for relief from the stay is denied.


For publication

.

**Signed on November 06, 2013**

                                        _____/s/ Steven Rhodes_____
                                        **Steven Rhodes**
                                        **United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 3

## APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 3. | 12/20/2013 | 2256 | Order Denying Motion for Reconsideration (Dkt. #1745) |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 9 |
| City of Detroit, Michigan, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |
| _____/ | |

### <u>Order Denying Motion for Reconsideration (Dkt. #1745)</u>

Governor Rick Snyder and former Treasurer Andy Dillon filed a motion for reconsideration of this Court's Opinion and Order Denying NAACP's Motion for Relief from Stay (Dkt. #740) and Granting Phillips' Motion for Relief from Stay (Dkt. #1004).  (Dkt. #1536)  The City of Detroit filed a concurrence and joinder.  (Dkt. #1777)  The Court entered an order requiring the Phillips parties to file a response and setting the matter for hearing on December 16, 2013.  Following the hearing, the Court took the matter under advisement.

This motion is to be decided pursuant to Local Bankruptcy Rule 9024-1(a)(3), which provides:

> Generally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, shall not be granted.  The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

LBR 9024-1(a)(3).

The State essentially argues that even though the plaintiffs in this suit have removed any request for the removal of Kevyn Orr as Detroit's emergency manager, a successful challenge to P.A. 436 will inevitably lead to that result.  However, the Court must conclude that such is not the case.  A finding by another court that P.A. 436 is unconstitutional will not automatically

result in the removal of Kevyn Orr.  Further action would need to be taken, and any such further

action is subject to the automatic stay.  Accordingly, the motion for reconsideration is denied.

It is so ordered.

.

**Signed on December 20, 2013**

                                    _____/s/ Steven Rhodes_____
                                         **Steven Rhodes**
                                         **United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 4

**APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL**

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 4. | 8/27/2014 | 7093 | American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay |

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| _____ | ) | |

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICPAL**
**EMPLOYEES MICHIGAN COUNCIL 25'S MOTION**
**TO MODIFY THE AUTOMATIC STAY**

Under the provisions of title 11 of the United States Code ("Bankruptcy Code"), 11 U.S.C. §§362(d) and 922(b), American Federation of State, County and Municipal Employees Michigan Council 25("AFSCME"), AFL-CIO, et al. ("Plaintiffs") respectfully request that this Court modify the automatic stay, specifically, the Extension Order, for the purpose of allowing Plaintiff's to proceed in their action for declaratory and injunctive relief against Defendants (who are not officers, employees, agents or representatives of Debtor) and obtain relief from the ongoing violations of constitutional and statutory rights alleged therein.  For its motion, through its counsel, AFSCME states as follows:

**INTRODUCTION**

1.    Michigan AFSCME Council 25, its Local 1600 (representing City of Flint employees) and three individuals – Samuel Muma, Franklin Greene, Jr. and

Willie Stacker – are plaintiffs in a pre-petition suit against Defendants Richard

Snyder (Governor), Andy Dillon (then state Treasurer), and Michael Brown and

Edward Kurtz (both Emergency Managers of the City of Flint). This suit challenges

the constitutionality of certain actions taken by the Defendants arising out of the

appointment of emergency managers over the City of Flint, under MCLA 141.1541

et seq (PA 436). It also challenges the constitutionality of portions of PA 436.

2.     The claim alleges constitutional violations of the Contracts Clause,

Takings Clause, and Due Process Clause of the United States Constitution. The

complaint, *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al*., No.

13-CV-12191 (E.D. Mich. May 16, 2013)(Docket #1) is attached as *Exhibit 1*. The

constitutional challenges are brought under 42 U.S.C. §1983.

3.     Plaintiffs' suit primarily seeks a declaration that Plaintiffs' rights under

these three clauses have been infringed, and injunctive relief to prevent further

infringement. To the extent that the complaint seeks monetary relief, any such award

would be satisfied by the State of Michigan and/or the City of Flint, but not the City

of Detroit ("Debtor"), as the City of Detroit is not a party to the action.

4.     Debtor's connection to Plaintiffs' action against Defendants is non-

existent. Both the cities of Detroit and Flint are under emergency management per

PA 436. However, Debtor is only one of nearly one dozen communities or entities

subject to control by a state-appointed emergency manager, or subject to a PA 436 consent agreement.

5.       The trial court in Plaintiffs' claim administratively closed the case. *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al*., No. 13-CV-12191, slip op. at 1-2 (E.D. Mich. March 27, 2014)(Docket #25).  In doing so, the trial court cited to the Order of this Court extending the bankruptcy Chapter 9 stay to certain "State Entities" ("Extension Order"), *In re City of Detroit, Mich*., No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. July 25, 2013) (Docket #166).  The trial court's order is found as *Exhibit 2*.

6.       By this motion, Plaintiffs seek to modify the stay, specifically the Extension Order, so that the Plaintiffs' case may proceed before the trial court.  Such a request for modification of the Extension Order is not sought with the purpose of challenging any of the actions taken by this Honorable Court in Detroit's bankruptcy proceeding, but merely to seek relief for the AFSCME members and other Plaintiffs in Flint.

7.       The issue presented in this motion is well briefed before this Court. Indeed, this Court previously issued an order lifting the stay to allow the furtherance of a similar claim filed in *Phillips, et al. v. Snyder, et al.*, No. 13-11370 (E.D. Mich. March 27, 2013).  This court's motion granting relief from stay is found at Docket

3

13-53846-tjt  Doc 8220-4  Filed 11/10/14  Entered 11/10/14 12:60:57  Page 31 of 85
13-53846-swr  Doc 2708  Filed 03/02/14  Entered 03/02/14 13:49:57  Page 4 of 10

#1536. *In re City of Detroit, Mich.,* No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. November 6, 2013) (Docket #1536).

## JURISDICTION

8.     Jurisdiction over this motion is conferred upon this Court by 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

9.     Venue is proper in this Court, pursuant to 28 U.S.C. §§1408 and 1409.

10.     The relief requested in this motion is predicated upon 11 U.S.C. §362(d) and Rules 4001 and 9014-1 of the Local Rules, Federal Rules of Bankruptcy Procedure.

## STATEMENT OF FACTS

11.     The City of Flint has been subject to State oversight through the use of Emergency Mangers or Emergency Financial Managers since 2002. Its first Emergency Manager was Defendant Edward Kurtz, who held that position until July 3, 2013.

12.     During his 2002-2003 stint as Emergency Financial Manager ("EFM"), Defendant Ed Kurtz negotiated a labor agreement with Plaintiffs resulting in 10.4% reductions in wage and benefits, saving the City millions of dollars.

13.     In 2010, Plaintiffs negotiated a new collective bargaining agreement resulting in additional concessions saving the city millions more.  This negotiated agreement between the parties did not expire until December 31, 2013.

14.    In April of 2012, a new Emergency Manager, Defendant Michael Brown, unilaterally imposed changes in wages, hours and conditions of employment for Plaintiffs. These changes amounted to an approximate 20% reduction in wages and benefits, and impaired the Plaintiff's union contract which was in existence at the time. Defendant Brown refused to seriously consider alternatives to contract impairment as proposed by Plaintiffs.

15.    On March 27, 2013, Plaintiffs filed an action in the United States District Court for the Eastern District of Michigan, challenging the validity of PA 436 on federal statutory and constitutional grounds. *Michigan AFSCME Council 25, et al., v. Richard D. Snyder, et al*., No. 13-CV-12191 (E.D. Mich. May 16, 2013)(Docket #1)  The claims are brought under 42 U.S.C. §1983, and allege violations of the Contract Clause, the Takings Clause and the Due Process Clause of the United States Constitution. (*Exhibit A*)

16.    On July 18, 2013, after the commencement of Plaintiffs' above-referenced cause of action, the City of Detroit filed a bankruptcy petition under Chapter 9 of the bankruptcy code. At that instant, all litigation against the Debtor or its property was automatically stayed pursuant to 11 U.S.C. §§362(a) and 922. One week later, this Court entered an Extension Order, extending the Chapter 9 stay to certain "State Entities," non-officer employees and agents and representatives of the

5

13-53846-tjt  Doc 8220-4  Filed 11/10/14  Entered 11/10/14 12:03:27  Page 33 of 85
13-53846-swr  Doc 2203  Filed 11/07/14  Entered 11/07/14 13:49:57  Page 33 of 35

Debtor. Among those "State Entities" were the two named defendants in Plaintiffs'

suit, Governor Snyder and Treasurer Dillon. (Docket #166)

17. The trial court in Plaintiffs' cause of action entered a sua sponte order,

administratively closing the Plaintiff's case, due to the Extension Order. The trial

court explained as follows:

> "Although it does not appear that any interests of the City of Detroit
> bankruptcy proceedings are implicated in the case, the plain language of the
> stay order would apply to this lawsuit. Further, and importantly, Plaintiffs'
> complaint includes a facial challenge to the constitutionality of the state laws
> under which Emergency Managers are appointed and operate. [complaint
> citation omitted]"

(*Exhibit 2*). The trial court explained that it would require a modification of the

Extension Order for that case to proceed:

> "In accordance with the very broad Extension Order issued by the bankruptcy
> court, this Court will abide by the stay until such time as the bankruptcy court
> lifts or modifies the stay to permit this case to proceed."

Id., slip op. at 2.

18. Thus, the reach of the Extension Order presently frustrates the

Plaintiffs' claims concerning the City of Flint, nearly 70 miles outside of the

Debtor's borders. Plaintiffs seek to proceed with their action concerning the City of

Flint, given that those Defendants are not officers, employees, agents, or

representatives of the Debtor, and do not otherwise share a close nexus or special

relationship with the Debtor such that a suit against the Defendants would be, in

effect, an action against the Debtor.

6

13-53846-tjt  Doc 822-3  Filed 11/10/14  Entered 11/10/14 12:27  Page 34 of 85
13-53846-swr  Doc 220-4  Filed 10/07/14  Entered 10/07/14 13:49:57  Page 37 of 40

19.     While this stage of Detroit's bankruptcy proceeding appears to be headed toward conclusion, the uncertainty of timing for a final conclusion, as Plaintiffs' Flint members continue to suffer through these unjust cuts, has prompted this relief from the Extension Order to be sought now.

## ARGUMENT

20.     The automatic stay provision of the Bankruptcy Code provides, in relevant part, that the filing of a petition in bankruptcy operates as a stay of "the commencement or continuation ... of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(1). The purpose of the automatic stay is to give the debtor a "breathing spell" from his creditors, and also, to protect creditors by preventing a race for the debtor's assets. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6296-97 [hereinafter cited as *House Report*].

21.     However, this automatic stay provision was not intended to immutably relegate creditors to a world of limbo or to the resolution of the civil claims within the limitations of a bankruptcy proceeding. Instead, as Congress recognized when enacting the automatic stay provision,

7

13-53846-tjt  Doc 8220-4  Filed 11/10/14  Entered 11/10/14 13:26:37  Page 35 of 85
13-53846-swr  Doc 8220-4  Filed 11/10/14  Entered 11/10/14 13:40:37  Page 35 of 85

it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S. Rep. No. 989, 95th Cong., 2d Sess. 50, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5780, 5836.

22.     Recognizing that some actions are better suited to resolution outside the bankruptcy forum, Congress specifically granted—in the same provision establishing the automatic stay—full discretion to the bankruptcy court to lift the stay and allow litigation to go forward in another forum.  Section §362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall *grant relief from the stay* provided under [§362(a)], such as by terminating, annulling, modifying, or conditioning such stay—(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. §362(d)(1) (emphasis added).  Thus, a creditor can seek relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. §362(d)(1).

23.     Thus, a creditor can seek relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. §362(d)(1).  A movant has the initial burden of showing a legally sufficient basis for lifting the automatic stay.  See *In re M.J. & K. Co.,* 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993).  Once the movant shows such cause exists, the debtor bears

the burden of proving lack of cause. Id. 11 U.S.C. § 362(g); *In re Washtenaw Huron Inv. Corp. No. 8*, 150 B.R. 31, 33 (Bankr. E. D. Mich. 1993). No bright-line rule governs whether cause exists under Section 362(d). *In re Hermoyian*, 435 B.R. 456, 461 (Bankr. E.D. Mich. 2010).

24.    Here, Plaintiffs allege that, with respect to Public Act 436 and certain orders issued under the authority of PA 436, Defendants violated various federal constitutional rights. Plaintiffs' claim seeks declaratory and injunctive relief. (*Exhibit 1*)

25.    Notably, Plaintiffs' complaint is distinct from the Debtor's bankruptcy proceeding. Plaintiffs have not sued the Debtor, nor do they seek to enforce a claim against the Debtor. Most notably, Plaintiffs' motion for relief from the Extension Order is not tailored to reverse any action of this Court in the Detroit bankruptcy proceedings. Even the trial court in Plaintiffs' cause of action indicated that "it is not apparent that any interests of the City of Detroit bankruptcy proceedings are implicated". (*Exhibit 2*, at slip op. 1)

26.    Plaintiffs merely seek to relieve the union members and other individuals from the unilateral and unjustified decisions of the Flint Emergency Manager. Those members are suffering a sizeable reduction in total compensation, and seek the right to challenge the legality of those reductions.

27.     As referenced *supra,* this issue concerning the appropriateness of lifting the stay, when actions of emergency manager(s) have been challenged, has been visited by this Court in *Phillips v. Snyder.* That case concerned challenges to the PA 436 and the actions of emergency managers across the state, alleging various federal constitutional violations.

28.     The Plaintiffs in the *Phillips v. Snyder* claim sought relief from the Extension Order. The plaintiffs in another suit, *Detroit Branch NAACP v. Snyder*, No. 13-12098 (E.D. Mich. filed May 13, 2013) ("NAACP litigation"), concurrently sought relief from the Extension Order.

29.     In its Opinion and Order considering whether to grant relief from the Extension Order in these two matters, this Court first quoted from the pertinent portions of the Extension Order:

"2) Pursuant to section 105(a) of the Bankruptcy Code, the Chapter 9 stay hereby is extended to apply in all respects (to the extent not otherwise applicable) to the State Entities (defined as the Governor, the State Treasurer and members of the Loan Board, collectively with the State Treasurer and the Governor, and together with each entity's staff, agents and representatives), the Non-Officer Employees and the City Agents and Representatives.

3) For the avoidance of doubt, each of the Prepetition Lawsuits hereby is stayed, pursuant to section 105(a) of the Bankruptcy Code, pending further order of this Court."

(Docket #1536, at pg 3-4)

30.     This Court then explained why the *NAACP* litigation should in fact be stayed pursuant to the Extension Order:

"This suit explicitly seeks to remove all power and authority from the Detroit emergency manager. Also, if the plaintiffs had included the City as a defendant in the lawsuit, it would have been stayed as to the City under 11 U.S.C. § 362(a) because the lawsuit had the potential to directly impact the City's bankruptcy case. The July 25, 2013 order extended that stay to any suits against the governor and the treasurer that might have the same impact on the City's bankruptcy case."

(Docket #1536, at pg 4)  This Court then questioned whether the *NAACP* litigation was truly about nothing more than the Detroit Emergency Manager:

"Although the suit purports to challenge all of the emergency manager appointments under P.A. 436, there is a serious question as to whether this suit is really about any emergency manager other than the Detroit emergency manager. This concern arises because it does not appear that any of the plaintiffs in the NAACP suit have standing to challenge any of the emergency manager appointments other than the Detroit emergency manager appointment."

Id., at 5.

31.     This Court then explained why the *NAACP* litigation should be stayed:

"The NAACP plaintiffs' lawsuit seeks an order prohibiting any emergency manager appointed under P.A. 436 from exercising any authority under the act.  This lawsuit, therefore, directly threatens the City's ability to continue in this bankruptcy case."

Id., at 7-8.

32.     By contrast, this Court ruled that the *Phillips v. Snyder* litigation need not be stayed.  The Court noted that the Phillips plaintiffs withdrew from their complaint any claim which challenged the actions of the Detroit Emergency Manager, and then held as follows:

"By these representations, which the Court accepts, it appears that the plaintiffs in the Phillips case intend to withdraw from their suit any request for relief as to the Detroit emergency manager. The Court concludes that this proposed amendment would eliminate the potential that the Phillips case might result in the removal of the Detroit emergency manager. Therefore, the potential amendment also removes the Phillips case from the effect of the July 25, 2013 order. Accordingly, subject to that condition, the Court concludes that the Phillips case is not subject to the July 25, [2013] order."

(Id., at pg 8-9)

33.     Thus, the Court permitted the *Phillips* suit to proceed in that the remedy it seeks has no bearing on the Debtor.

34.     As with *Phillips*, Plaintiffs' suit challenges PA 436 and its application in a jurisdiction outside of Detroit – specifically Flint.  The Plaintiffs' claim cites to specific actions of the Flint Emergency Manager that violated constitutional rights of residents and employees of the City of Flint.

35.     Further, in the *NAACP* request to modify the stay, this Court reviewed the standing assertions in the *NAACP* complaint.  Here in the Plaintiff's Complaint, the standing assertions relate to the City of Flint, not Detroit. (*Exhibit A*, pg 2)  The individual plaintiffs in the cause of action are residents of the City of Flint or members of the AFSCME Flint local.   The standing assertion for AFSCME is "associational standing on behalf of its members as well as its own standing as party to its current collective bargaining agreement with the City of Flint".

36.     Plaintiffs' suit has no connection to the City of Detroit, other than the fact that both Flint and Detroit are governed by emergency managers.  Otherwise,

there is no close nexus of identity between the Defendants and Debtor that would otherwise justify staying litigation against the Defendants.

37.     Further, the application of the automatic stay to Plaintiffs' case contravenes the very purpose and intent of Congress and the Supreme Court in enacting and enforcing §1983—to provide a judicial remedy for the violation of one's rights under the Constitution. *See Felder v. Casey*, 487 U.S. 131, 148 (1988) (recognizing that civil rights actions "belong in court") (quoting *Burnett v. Grattan*, 468 U.S. 42, 50 (1984); *Mitchum*, 407 U.S. at 242-43 (noting that the enforcement of federal rights is of the highest priority).   By delaying proceedings in the underlying matter, the stay has in essence taken from Plaintiffs—without any process—the opportunity to have the deprivations of their civil rights adjudicated by the district court and a jury of their peers.

38.     As presently applied, this stay precludes Plaintiffs, citizens with no connection to the Debtor, from any relief for the violations of their constitutional rights due to by PA 436.  For that reason, the stay should be modified to permit the litigation to proceed.

# CONCLUSION

For all of the above reasons, and for good cause shown, Plaintiffs respectfully request that this Honorable Court modify its order extending the Chapter 9 stay to non-debtor Defendants (Docket Number 166), thereby allowing Plaintiffs to their pursue claims against Defendants in Case Number 13-CV-12191.

Dated: August 27, 2014      /s/ Richard G. Mack, Jr.
                            Richard G. Mack, Jr.
                            Jack W. Schulz
                            MILLER COHEN PLC
                            600 West Lafayette Blvd., 4th Floor
                            Detroit, MI 48226-3191
                            Telephone: (313) 964-4454
                            Facsimile: (313) 964-4490
                            richardmack@millercohen.com
                            jschulz@millercohen.com

                            Herbert A. Sanders
                            THE SANDERS LAW FIRM PC
                            615 Griswold St., Ste. 913
                            Detroit, MI 48226
                            Telephone: (313) 962-0099
                            Facsimile: (313) 962-0044
                            hsanders@miafscme.org

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

## ORDER GRANTING THE PETITIONER'S MOTION FOR RELIEF FROM AUTOMATIC STAY

This matter coming before the Court on the Petitioner AFSCME's *Motion for Relief from Automatic Stay* and the Court having determined that the legal and factual bases as set out in the motion establish just cause for relief;

IT IS HEREBY ORDERED THAT:

The Motion is GRANTED. The Extension Order (Docket Number 166) is modified and the Plaintiffs in Case Number 13-CV-12191 are permitted to pursue that litigation.

Dated:_____    _____
                                Honorable Steven W. Rhodes
                                United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

## NOTICE OF MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY & OPPORTUNITY TO OBJECT

American Federation of State, County and Municipal Employees Michigan Council 25("AFSCME") and its affiliated Locals 1600 has filed pleadings with the court to modify the automatic stay for the purpose of allowing its litigation, which challenges actions of the City of Flint Emergency Manager, to proceed. The Case Number 13-CV-12191 is Plaintiff's cause of action, brought in federal court, the Eastern District of Michigan.

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to lift the automatic stay, or if you want the court to consider your views on the motion, within fourteen (14) days, you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

### United States Bankruptcy Court
211 West Fort Street
Detroit, MI 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

1

You must also mail a copy to:

Richard G. Mack, Jr.                    Herb Sanders
Jack W. Schulz                          THE SANDERS LAW FIRM PC
MILLER COHEN, P.L.C.                     615 Griswold St., Ste. 913
600 West Lafayette Blvd., 4th fl.  Detroit, MI 48226
Detroit, MI 48226                       (313) 962-0099 (Phone)
(313) 964 4454 (Phone)                  (313) 962-0044 (Fax)
(313) 964 4490 (Fax)                    hsanders@miafscme.org
richardmack@millercohen.com
jackschulz@millercohen.com

2.     If a response or answer is timely filed and served, the clerk will schedule a
       hearing on the motion and you will be served with a notice of the date, time
       and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you
do not oppose the relief sought in the motion or objection and may enter an
order granting that relief.**

Date: <u>August 27, 2014</u>          Signatures <u>/s/ Richard G. Mack, Jr.</u>
                                      Name(s)     Richard G. Mack, Jr.
                                                  Jack W. Schulz
                                      Address     600 W. Lafayette, 4th Fl.,
                                                  Detroit, MI 48226

2

13-53846-swr   Doc 8322-3   Filed 09/12/14   Entered 09/12/14 11:26:27   Page 45 of 85
13-53846-tjt   Doc 8387-34   Filed 09/12/14   Entered 09/12/14 13:49:57   Page 47 of 50

|                                   |   |                        |
|-----------------------------------|---|------------------------|
| In re                             | ) | Chapter 9              |
|                                   | ) |                        |
| CITY OF DETROIT, MICHIGAN,        | ) | Case No. 13-53846      |
|                                   | ) |                        |
|                                   | ) | Hon. Steven W. Rhodes  |
|                                   | ) |                        |
| _____  | ) |                        |

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 27, 2014, the *American Federation of State, County and Municipal Employees Council 25's Motion to Lift the Automatic Stay*, with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr.
Jack W. Schulz
MILLER COHEN PLC
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 566-4787
Facsimile: (313) 964-4490
richardmack@millercohen.com

1

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

MICHIGAN AFSCME COUNCIL 25
AFL-CIO, its affiliated Local 1600, Samuel
Muma, Franklin Greene Jr. and Willie
Stacker

        Plaintiffs,

vs.

RICHARD D. SNYDER, in his official
capacity as Governor of the STATE OF
MICHIGAN, ANDREW DILLON, in his
official capacity as the TREASURER OF THE
STATE OF MICHIGAN, and MICHAEL
BROWN, in his official capacity as former
EMERGENCY MANAGER OF THE CITY
OF FLINT, and ED KURTZ, in his official
capacity as EMERGENCY MANAGER OF
THE CITY OF FLINT

        Defendants.

Case No.

Hon:

_____ /

Herbert A. Sanders (P43031)
The Sanders Law Firm P.C.
Attorneys for Plaintiff
615 Griswold, Suite 913
Detroit, MI 48226
(313) 962-0099
haslaw@earthlink.net

Tere McKinney (P71567)
Co-counsel for Plaintiff
Legal Dept.
Michigan AFSCME Council 25
600 W. Lafayette Blvd.
Detroit, MI 48226
(313) 964-1711
tmckinney@miafscme.org

_____ /

## COMPLAINT
## FOR DECLARATORY
## AND INJUNCTIVE RELIEF

1

## PARTIES

1. Plaintiff, Michigan AFSCME Council 25 is an unincorporated, voluntary labor association certified by the Michigan Employment Relations Commission, pursuant to the Michigan Public Employee Relations Act, MCLA 432.201 *et seq.*

2. Plaintiff has associational standing on behalf of its members as well as its own standing as party to its current collective bargaining agreement with the City of Flint.

3. Plaintiff Samuel Muma is a member and President of Local 1600.

4. Plaintiff Franklin Greene Jr. is a member of Local 1600 and a resident of the City of Flint.

5. Plaintiff Willie A. Stacker is a member of Local 1600 and a resident of the City of Flint

6. Defendant Richard D. Snyder is the Governor and the Chief Executive Officer of the State of Michigan.

7. Defendant Andrew Dillon is the Treasurer of the State of Michigan.

8. Defendant Michael Brown was appointed Emergency Manager by Defendant Snyder under Public Act 4 in November of 2011.

9. Defendant Brown served as Emergency Manger from December 2011 to July 2012.

10. Defendant Michael Brown is the current appointed City Administrator.

11. Defendant Ed Kurtz was previously the Emergency Financial Manger for the City of Flint from 2002-2003.

12. Defendant Ed Kurtz is the current appointed Emergency Manger for the City of Flint as of July 2012 under Public Act 72.

13. Effect March 28, 2013 Defendant Kurtz is the Emergency Manger under Public Act 436.

2

## INTRODUCTION

14. This lawsuit is brought under 42 U.S.C. § 1983 to restrain and redress Defendants' constitutional violations.

15. Plaintiff, Michigan AFSCME Council 25 (hereinafter AFSCME or the Union) is a party to a collective bargaining agreement with the City of Flint (hereinafter City).

16. Plaintiff's agreement with the City establishes wages and other compensation for Plaintiff's members.

17. The City is under the sole management and control of Defendant Ed Kurtz, the current Emergency Manager (herein EM), who has virtually unbridled powers. During his 2002-2003 term as EFM Defendant Ed Kurtz negotiated a labor agreement with Plaintiffs resulting in 10.4% in across the board cuts and 4% in wage reductions saving the City millions of dollars.

18. In 2010 Plaintiffs negotiated a new collective bargaining agreement resulting in additional concessions saving the city more millions of dollars.

19. The current negotiated agreement between the parties does not expire until December 31, 2013.

20. In April of 2012 Defendant Brown as Emergency Manager (herein EM) unilaterally imposed changes in wages, hours and conditions of employment for Plaintiffs, including a 20% reduction in wages and benefits.

21. Defendant Kurtz continues to enforce the unilateral changes in wages and conditions and employment initiated by Defendant Brown.

22. At all times the actions of the Defendants Brown and Kurtz were taken with the approval of Defendant Andy Dillon, the State Treasurer.

23. Defendants' wage and benefit reductions will severely and substantially impair the City contractual obligations to its employees, in violation of the *Contract Clause of the U.S.*

3

*Constitution, Article I, Section 10.*

24. The reductions constitute an unconstitutional taking of private property without just compensation in violation of the *Fifth Amendment*.

25. The reductions occurred without due process of law in violation of *U.S. Const, Am XIV.*

26. On behalf of its members Plaintiff seeks temporary, preliminary and permanent injunctive relief, declaratory relief, and restitution.

## JURISDICTION AND VENUE

27. This Court has jurisdiction over this lawsuit pursuant *to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), and 28 U.S.C. § 2201 and 2202* because this civil action arises under the Constitution of the United States of America.

28. Further, this Court also has jurisdiction to render declaratory judgments as requested herein pursuant to the *Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.*

29. Plaintiff brings this action, pursuant to *42 U.S.C. § 1983*, to remedy constitutional violations undertaken under color of state law.

30. Venue lies in this Court pursuant to *28 U.S.C. § 1391(b)*, because the Plaintiff labor organization is located here, and the events giving rise to this action have occurred and are occurring within the Eastern District of Michigan.

## FACTS

31. The City of Flint is Michigan's seventh largest municipality created and organized under the laws of Michigan.

*32.* The City is a public employer as defined in the *Michigan Public Employment Relations Act (PERA), M.C.L. 423.201 (1)(h).*

4

33. *PERA* obligates a Michigan public employer, to bargain with the representative of its employees for the purpose of reaching a collective bargaining agreement covering wages, hours and other terms and conditions of employment.

34. *PERA, M.C.L. 423.215*, defines the obligation to bargain collectively with the representatives of its employees regarding wages, hours and other terms and conditions of employment, including the obligation to enter into a written contract incorporating any agreement reached upon request.

35. Plaintiff and City have entered into a series of collective bargaining agreements establishing wages, hours and terms and conditions of employment for City employees represented by AFSCME.

36. The current collective bargaining agreement between AFSCME and CITY expires June 30, 2014.. See Exhibit 1.

37. In December 2011 Defendant Rick Snyder appointed Defendant Brown as the Emergency Manager under the authority of *2011 Public Act 4*, the *Local Government School District Accountability Act, M.C.L. 14.1501, et seq. [suspended]*.

38. The *Local Government and School District Accountability Act ( here in PA 4)* authorized the Governor to appoint an Emergency Manager to exercise management authority over a local government, including a school district that was in financial distress.

39. Under PA 4 the Emergency Manger was authorized to terminate, modify and renegotiate any existing contract that the Local government was a party to.

40. In 2010 the City's then Emergency Manger Dan Williamson informed Plaintiffs bargaining representatives that the City needed additional financial concessions from its employees in order to address the City's budgetary shortfall and accumulated debt.

41. Despite the fact that Plaintiff and its members had already given up millions in concessions in

5

the form of a 4% wage reduction and 10.4% in across the board reductions in 2003.

42. Plaintiff negotiated with Williamson regarding the City's demand for financial concessions.

43. The negotiations resulted in the current collective bargaining agreement.

44. Under the current collective bargaining agreement, AFSCME members gave up additional millions in concessions to the City, primarily in the form of reduced pay reduced health insurance, and increased pension contributions.

45. On March 16, 2011, Governor Snyder signed into law the *Local Government and School District Fiscal Accountability Act (the "Act"), Public Act 4 of 2011, MCL § 141.1501, et. seq.*

46. P.A. 4 repealed and replaced the *Local Government Fiscal Responsibility Act, 1990 Public Act 72.*

47. P.A. 4 allowed for the appointment of an "Emergency Manager," with far broader powers than those provided to the "Emergency Financial Manager" under the predecessor statute.

48. The Act was intended to provide the Governor and the State Treasurer with broad unchecked powers in the event of a so-called "financial emergency" at the local government level.

49. Like the *Local Government Fiscal Responsibility Act (Public Act 72 of 1990)*, which it repealed, the Act enabled a state review and intervention into local government finances, but increased substantially the power and authority of the appointed emergency manager, specifically authorizing the power to reject, modify or terminate one or more terms and conditions of a collective bargaining agreement . *See MCL 141.1519(k).*

50. Under P.A. 4, the Emergency Manager could with the approval of the State Treasurer, abrogate a collective bargaining agreement after "meeting and conferring" with employees' bargaining representative, if in his or her "sole discretion and judgment a prompt and satisfactory resolution was unlikely to be obtained.

6

51. The Act governed both the selection and the power of emergency managers, who are appointed to act for and in the place of the governing body and the chief administrative officers of municipal governments and public school districts deemed to be in financial distress.

52. The Act provided the Governor and State Treasurer with the unbridled power to declare a local "financial emergency" whenever and wherever they saw fit, in their sole and absolute discretion.

53. On November 28, 2011 Governor Snyder appointed Defendant Brown as Emergency Manager for the City under Public Act 4.

### Public Act 4's Radical Revision of State Law

54. Public Act 4 radically revised state law governing the appointment of EMs over cities and school districts during times of financial stress.

55. Public Act 4 provided that once the Governor had declared a financial emergency, the Governor could then appoint an individual to be the municipality's emergency manager. The Governor was granted broad discretion to declare a financial emergency and, in fact, a municipality was not actually required to be in a fiscal crisis before an EM could be appointed.

56. Tellingly, the Act changed the title of municipal "emergency financial managers" to "emergency managers" and expanded the scope of their powers to cover all the conduct of local government.

57. The PA 4 EM's powers extended not only to financial practices and fiscal policy, but rather permitted such managers to fully act "for and in the place of" the municipality's elected governing body. The grant of powers also included a general grant of legislative power (the power to unilaterally adopt local laws and resolutions) to PA 4 EMs.

7

58. Public Act 4's grant of legislative power to EMs extended to the full scope of legislative power possessed by local elected officials. In the state of Michigan, local legislative power is of the same scope and nature as the police power possessed by the state - limited only by the jurisdictional limits of the municipality and where preempted by the general laws of the state. Public Act 4's grant of general legislative power to EMs thus extended to a grant of the full of scope of the local government's police power, previously reserved to local government's elected legislative body and elected mayor.

59. Emergency managers were further granted powers to act in disregard of the local government's local laws – including city charters, ordinances, administrative regulations, school district bylaws, etc.

### *Michigan Citizen's Rejection of Public Act 4 And the State's Resurrection of Public Act 72*

60. In opposition to Public Act 4, citizens began circulating petitions in May 2011. The petitions were to place a referendum on the ballot that would reject the law. Over 200,000 signatures were gathered and the petitions were submitted to the Secretary of State in February 2012. However to prevent Michigan citizens from having the opportunity to vote on the matter, the petitions were challenged by a lobbying group.

61. The petitions were challenged on the basis that the title of the petitions were not printed in 14 point font but rather were printed in slightly smaller font of approximately 13.75 or larger.[1]

62. Along party-line votes, the members of the state Board of Canvassers deadlocked and as a result, the petitions were not certified for the ballot.

---

[1] No evidence was submitted and it was not argued that signatories of the petitions had been confused or misunderstood what they had signed. In fact, the difference in point size as argued by the challenger was invisible to the naked eye of many.

8

63. The matter was then appealed to the Michigan Court of Appeals. A panel of the Court of Appeals recognized and found that existing law required the referendum to be placed on the ballot. However, the panel sought to overturn existing law, and thereby keep the referendum off the ballot. The panel requested that the full Court of Appeals be polled to convene a special panel to reconsider existing law. The full Court of Appeals however declined to convene the special panel.

64. An appeal was taken to the state Supreme Court. The Michigan Attorney General in his individual capacity and Governor joined the challengers as amici at the state Supreme Court.

65. On August 3, 2012, the Michigan Supreme Court issued an opinion ordering the state Board of Canvassers certify the petitions and place the referendum on the ballot.

66. However on August 6, 2012, the state Attorney General issued a formal opinion stating that once the petitions were certified[2], PA 72 would spring back into effect and would remain in effect if voters rejected PA 4 at the November 2012 election.

67. The state Board of Canvassers certified the petitions on August 8, 2012 and by operation of Michigan law, PA 4 was then suspended until the November.

68. In response, state officials reappointed all existing PA 4EMs as PA 72 EFMs and proclaimed that all existing consent agreements would continue in place as PA 72 consent agreements.

69. At the general election on November 6, 2012, Michigan voters overwhelmingly elected to reject PA 4.

*Michigan Legislature's Attempt to Overturn Citizen's Vote to
Reject Public Act 4 by Enacting Public Act 436*

---

[2] Pursuant to Michigan law, once the petitions were certified PA 4 was then suspended until the voters could decide the matter at the next general election.

9

70. In response to the decision of Michigan voters to reject PA 4, incensed state officials and segments within the state legislature quickly moved to reenact a new law with emergency manager provisions that are substantially identical to the rejected law.

71. During the lame-duck session, the state legislature moved quickly to reenact the emergency manager provisions of Public Act 4.  The new bill passed the state House and Senate on December 13, 2012 and was signed into law as the *Local Financial Stability and Choice Act*, Act No. 436, Public Acts of 2012, on December 26, 2012.

72.  Public Act 436 again changes the title of existing PA 72 "emergency financial managers" to "emergency managers" and again expands the scope of their powers to cover all the conduct of local government.

73. The PA 436 EM's powers are substantially identical to the powers that had been granted under PA 4.   Public Act 436 EMs are empowered to fully act "for and in the place of" the municipality's governing body.  The grant of powers again includes a general grant of legislative power to emergency managers.

74. Along with the general grant of legislative power to emergency managers, Public Act 436 exempts the EM from following existing city charters and local ordinances.

75. The new law does not provide any process that EMs must follow in the adoption or repeal of local laws, but rather permits the EM to do so by private orders, not subject to open meetings requirements.

76. Public Act 436 states that EMs appointed under PA 4 and EFMs appointed under PA 72 shall be considered EMs under PA 436 once the new law takes effect.

77. Additionally, PA 436 permits the Governor to appoint persons appointed as EMs under PA 4 and as EFMs under PA 72 to serve as PA 436 EMs under the new law.

78. Under PA 436, all EMs serve at the pleasure of the Governor and continue to serve until removed by the Governor or until the Governor finds that the financial emergency has been rectified.

79. Public Act 436 permits the Governor to delegate his powers and duties to the state treasurer and the state treasurer oversees the activities of emergency managers.

80. When PA 436 took effect on March 28, 2013, EMs are in place over the cities of Allen Park, Benton Harbor, Ecorse, Flint, Pontiac and Detroit and over the Detroit Public Schools, Highland Park Public Schools, and Muskegon Heights Public Schools. Finally, the state's consent agreements with Inkster and River Rouge have again be converted – now to PA 436 agreements.

81. Under PA 436, elected officials in each of these communities will be displaced and/or be divested of governing and law-making authority and citizens will have effectively lost their right to vote for their local legislative bodies, chief executive officers, and school boards.

### Actions Taken By the EM Under PA 436

82. On April 24, 2012, EM Brown issued City of Flint *Order No. 24 & 26*. See Exhibit 2 & 3

83. The Order stated that, pursuant to *Section 19(k) of P.A. 4, M.C.L. 141.1509(k)*, and with the approval of Defendant Andrew Dillon, Emergency Manager Brown was imposing the following changes to the collective bargaining agreement with the AFSCME:

> *a. Wage reductions of 2.5%;*
>
> *b. elimination of pay out of unused sick and vacation time upon retirement;*
>
> *c. imposition of mandatory retirement contribution from 8% to 12%;*
>
> *d. elimination of shift premiums for working, holidays, overtime and weekends;*
>
> *f. Suspension of other previously agreed to compensation such as the elimination of insurance coverage during extended sick leave, supplemental payments to employees on workers compensation leave, dual classification pay, and*

11

*elimination of retiree health coverage for new hires;*

*g. Total wage and benefit reductions of 20%.*

84. The cuts in compensation ordered by the Emergency Manager constitute a serious impairment of the Plaintiff's collective bargaining agreement, and will irreparably injure the Plaintiff and its members who already have suffered substantial reductions in their livelihoods through concessions given in previous agreements.

85. The potential for injury is sufficiently immediate and real to allow this Court to issue a declaratory judgment.

86. By this Complaint for declaratory and injunctive relief, Plaintiff requests that this court declare unconstitutional and enjoin the implementation of any legislation that would impermissibly modify collective bargaining agreements between the City of Flint and its workers.

## COUNT I
## VIOLATION OF THE CONTRACTS CLAUSE OF
## THE UNITED STATES CONSTITUTION

87. Plaintiffs incorporate paragraphs 1-86 of this Complaint with the same force and effect as if fully set forth herein.

88. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Art I, § 10.*

89. The United States Constitution provides that *"No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility." See U.S. Const., Art I, §10.*

90. By the actions alleged above, Defendants have or will substantially impair the AFSCME collective bargaining agreement, in violation of the *United States Constitution.*

12

91. This violation of United States Constitution is actionable under *42 USC § 1983*.

## COUNT II
## VIOLATION OF THE TAKINGS CLAUSE OF
## THE UNITED STATES CONSTITUTION

92. Plaintiffs incorporate paragraphs 1-91 of this Complaint with the same force and effect as if fully set forth herein.

93. There is an actual controversy between the parties as to the constitutionality of the Act under *U.S. Const., Am V.*

94. The *United States Constitution* prohibits the taking of private property without just compensation. *See U.S. Cons.t, Am V.*

95. The Takings Clause of the *Fifth Amendment* to the United States Constitution, which applies to Michigan through the *Fourteenth Amendment*, provides that *"private property [shall not] be taken for public use without just compensation."*

96. The rights of the employees represented by AFSCME to receive wages, benefits and terms and conditions of employment under their collective bargaining agreement with the City constitutes private property within the meaning of the Takings Clause.

97. By the actions alleged above, Defendants, acting under color of state law, have taken the private property of Plaintiff and its members covered under the AFSCME collective bargaining agreement without just compensation, in violation of the Takings Clause.

98. This taking is without just compensation, and thus violates the *United States Constitution.*

99. This violation of the United States Constitution is actionable under *42 USC § 1983.*

## COUNT III
## VIOLATION OF THE DUE PROCESS CLAUSE OF
## THE UNITED STATES CONSTITUTION

100.     Plaintiffs incorporate paragraphs 1-99 of this Complaint with the same force and effect as if fully set forth herein.

101.     The United States Constitution provides that no state shall *"deprive any person of life, liberty, or property without due process of law." See US Const, Am XIV.*

102.     The State of Michigan purportedly enacted *the Emergency Manager Laws* pursuant to its police power, which allows it to act for the benefit of the health, safety, and general welfare of Michigan's citizens.

103.     AFSCME and its members have vested property rights in the benefits to which they are entitled pursuant to the collective bargaining agreement had with the City.

104.     The provisions of the Act granting powers to the emergency manager with respect to termination of collective bargaining agreements bear no rational relationship to the stated purpose of the Act.

105.     The provisions of the Act granting powers to an emergency manager with respect to modification or termination of a collective bargaining agreement bear no rational or reasonable relationship to a permissible legislative objective.

106.     The policy judgment of the Legislature in enacting the Act is palpably arbitrary and irrational, and is supported by no facts that were known or could reasonably be assumed by the Legislature.

107.     The Act improperly infringes upon the liberty and property interests of Plaintiff and its members without due process of law, in violation of the *United States Constitution.*

108.     The Act is impermissibly vague in that it creates and delegates broad powers to the Governor, State Treasurer, and emergency manager without providing discernible standards for the triggering or exercise of such powers, in violation of the *United States Constitution.*

14

109.     This violation of the United States Constitution is actionable under *42 USC § 1983*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue an Order:

*(1)*     Declaring that the actions of Defendants as delineated herein have impaired the contractual rights of Plaintiffs in violation of the *Contract Clause of the United States Constitution;*

*(2)*     Declare that the actions of Defendants delineated herein constitute a taking of private property without just compensation in violation of the *Takings Clause of the United States Constitution;*

(3)     Declare that the actions of Defendants described herein deprives the Plaintiffs of their rights to due process under the *United States Constitution*;

(4)     Declare that the status quo be restored by declaring all actions taken by Defendants to modify, amend, or terminate AFSCME's collective bargaining agreement void *ab initio;*

(5)     Enter a temporary restraining order, preliminary injunction and permanent injunction enjoining Defendants, and all persons and entities acting in concert with them, from taking any actions which authorize the modification, amendment, or termination of the AFSCME collective bargaining agreement; and enjoining Defendants from imposing reductions in pay and benefits on the City employees represented by AFSCME, and further enjoining Defendants from taking any action to implement or effectuate *Orders 24 and 26* with respect to employees represented by AFSCME;

(6)     Enjoin Defendants, and all persons and entities acting in concert with them, from taking any further actions to implement or enforce the unconstitutional provisions of PA 4 or PA 436.

(7)     Awarding Plaintiff the attorney fees, costs, and other expenses incurred in prosecuting this lawsuit, as well as such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Date: May 17, 2013

/s/ Herbert A Sanders

Herbert A. Sanders (P43031)
The Sanders Law Firm P.C.
Attorneys for Plaintiff
615 Griswold Suite 913
Detroit, MI 48226
(313) 962-0099
haslaw@earthlink.net

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN AFSCME COUNCIL 25
AFL-CIO, INC., et al.,

                    Plaintiffs,

        v.                                    Case No. 13-12191

RICHARD D. SNYDER, GOVERNOR          HON. TERRENCE G. BERG
OF THE STATE OF MICHIGAN, et al.,    HON. PAUL J. KOMIVES

                    Defendants.
_____/

## ORDER RECOGNIZING APPLICATION OF AUTOMATIC STAY, DENYING DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE, AND ADMINISTRATIVELY CLOSING THE CASE

This matter is before the Court on its sua sponte review of the complaint filed May 16, 2013. On July 25, 2013, the United States Bankruptcy Court for the Eastern District of Michigan entered a very broad order in the Detroit bankruptcy case that extended the Chapter 9 stay to include certain "State Entities," including "the Governor [and] the State Treasurer . . . ." *In re City of Detroit, Mich.*, No. 13-53846, 2013 WL 4777037 (Bankr. E.D. Mich. July 25, 2013) (Dkt. 166).

Governor Snyder and Treasurer Dillon, "State Entities" under the bankruptcy court's order, are named defendants in this case. Although it does not appear that any interests of the City of Detroit bankruptcy proceedings are implicated in the case, the plain language of the stay order would apply to this lawsuit. Further, and importantly, Plaintiffs' complaint includes a facial challenge to the constitutionality of the state laws under which Emergency Managers are appointed and operate. (Compl. ¶¶ 102–09, Prayer for Relief (3) and (6).)

In accordance with the very broad Extension Order issued by the bankruptcy court, this Court will abide by the stay until such time as the bankruptcy court lifts or modifies the stay to permit this case to proceed. *See id.*; *see, e.g., United Retired Government Employees v. Snyder*, No. 13-2503, slip op. at 1–2 (6th Cir. Feb. 14, 2014) (Dkt. 25); *United Retired Government Employees v. Snyder*, No. 13-CV-12378, slip op. at 1–2 (E.D. Mich. Oct. 9, 2013) (Dkt. 16); *In re City of Detroit, Mich.*, No. 13-53846, slip op. at 1–9 (Bankr. E.D. Mich. Nov. 6, 2013) (Dkt. 1536-1).

Accordingly, it is ORDERED that the pending motion in this case, Defendants' motion to dismiss (Dkt. 11), is DENIED WITHOUT PREJUDICE.

It is FURTHER ORDERED that proceedings in this case are STAYED until further order of the court, and that the Clerk of the Court is DIRECTED to administratively close this case without prejudice to the rights of any of the parties. This closing does not constitute a dismissal or decision on the merits.

It is FURTHER ORDERED that when the bankruptcy stay is removed, or a party obtains relief from the stay, the case may be reopened on motion of any party.

SO ORDERED.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  March 27, 2014

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 27, 2014, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb
Case Manager

2

4.    This order is entered without prejudice to the right of any creditor to file a motion for relief from the stay imposed by this order using the procedures of and under the standards of 11 U.S.C. § 362(d)-(g).

**Signed on July 25, 2013**

_____/s/ Steven Rhodes_____
**Steven Rhodes**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 5

### APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 5. | 9/10/2014 | 7401 | State of Michigan, Rick Synder, and Kevin Clinton's Response to American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay [Dkt. #7093] |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

**STATE OF MICHIGAN, RICK SNYDER, AND KEVIN CLINTON'S RESPONSE TO AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25'S MOTION TO MODIFY THE AUTOMATIC STAY [DKT. #7093]**

The State of Michigan, Rick Snyder, and Kevin Clinton[1]

(collectively, the "State Entities"), through their undersigned attorneys,

requests that the Court (i) hold that its July 25, 2013 Stay Extension

Order (Dkt. #166) applies to the *Flint* case, and (ii) deny the *Flint*

plaintiffs' motion to modify the automatic stay.

## INTRODUCTION

The *Flint* case makes facial challenges to the constitutionality of

P.A. 436 brought under the United States Constitution.  Accordingly, on

March 27, 2014, the United States District Court for the Eastern

---

[1] The *Flint* Complaint names Andrew Dillon, in his capacity as Treasurer, as a defendant.  Mr. Dillon resigned on October 11, 2013. His replacement, Kevin Clinton, assumed office on November 1, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Clinton was automatically substituted as a party in Mr. Di

District of Michigan entered *Order Recognizing Application of Automatic Stay, Denying Defendants' Motion to Dismiss Without Prejudice, and Administrative Closing the Case.  AFSCME, et al. v. Snyder, et al.*, E.D. Mich. No. 13-12191, R. 25 (Dkt. #7093-2).  In this order, the district court stated: "Although it does not appear that any interests of the City of Detroit bankruptcy proceedings are implicated in the case, the plain language of the [Stay Extension Order] would apply to this lawsuit.  Further, and importantly, Plaintiffs' complaint includes a facial challenge to the constitutionality of the state laws under which Emergency Managers are appointed and operate.  (Compl. ¶¶ 102-09, Prayer for Relief (3) and (6).)."  *Id.* at Pg ID #300 (Dkt. #7093-2).

Even though the Complaint does not contain explicit references to the City of Detroit and EM Orr, a ruling in the *Flint* case that P.A. 436 is unconstitutional could potentially threaten the continuation of the City of Detroit's chapter 9 case because such a ruling could render that statute void *ab initio*, and at a minimum, compromise the authority of all EMs appointed and acting pursuant thereto.  This could call into question whether EM Orr has the authority to continue to prosecute this chapter 9 case.

13-53846-swr  Doc 8232-5  Filed 11/02/14  Entered 11/02/14 11:26:37  Page 70 of 85

Further, contrary to the *Flint* plaintiffs' assertions, the Court's reasoning relating to the *Phillips* case distinguishes it from the case at bar. The Complaint seeks injunctive relief enjoining defendants, including the State Entities, from implementing or enforcing the provisions of P.A. 436. *Complaint*, Prayer for Relief (6), Dkt. #7093-1 at 15. If P.A. 436 is held to be unconstitutional and the broad injunctive relief the *Flint* plaintiffs seek is granted, *all* emergency managers, including EM Orr, could be restrained from exercising authority granted under P.A. 436.

## ARGUMENT

### A.   The Stay Extension Order applies to the *Flint* case.

The Stay Extension Order (Dkt. #1536) granted the City of Detroit's motion in which it requested that the automatic stay be extended to cases "that have the direct or practical effect of denying the City the protections of the automatic stay imposed by sections 362 and 922 of the Bankruptcy Code." *Motion to Extend Stay*, Dkt. #56 at 15. By issuing the Stay Extension Order, the Court made clear that lawsuits challenging P.A. 436 must be stayed during the pendency of the City of Detroit's chapter 9 case to the extent they threaten to

3

diminish the authority of EM Orr to proceed on behalf of the City. The *Flint* case has the "practical effect" of denying the City of Detroit the ability to continue its chapter 9 case and poses the very threat that sections 362 and 922 of the Bankruptcy Code and the Stay Extension Order seek to eliminate.

The *Flint* plaintiffs' Complaint alleges that P.A. 436 *facially* violates the Due Process Clause of the United States Constitution (U.S. Const. amend XIV) because "[t]he policy judgment of the Legislature in enacting the Act is palpably arbitrary and irrational, and is supported by no facts that were known or could reasonably be assumed by the Legislature" and "[t]he Act is impermissibly vague in that it creates and delegates broad powers to the Governor, State Treasurer, and emergency manager without providing discernible standards for the triggering or exercise of such powers in violation of the *United States Constitution*." *Complaint*, Dkt. #7093-1 at ¶¶ 106, 108. If the *Flint* plaintiffs are successful in their facial constitutional challenges, P.A. 436 could be rendered void *ab initio* raising serious questions whether EM Orr has authority to continue to act on behalf of the City in its chapter 9 case. See *Green v. Mansour*, 474 U.S. 64, 68 (1985) citing *Ex*

*parte Young*, 209 U.S. 123 (1908) (A statute that is void *ab initio* is void

as of its enactment.).  *Norton v. Shelby County*, 118 U.S. 425, 442 (1886)

("An unconstitutional act is not a law; it confers no rights; it imposes no

duties; it affords no protection; it creates no office; it is, in legal

contemplation, as inoperative as though it had never been passed.");

See also *Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135,

144, 253 N.W.2d 114, 117 (1977).

The *Flint* plaintiffs contend that they "merely seek to relieve the

union members and other individuals from the unilateral and

unjustified decisions of the Flint Emergency Manager."  *Motion to

Modify Stay*, Dkt. 7093 at 9.  This contention implies that the *Flint*

Complaint asserts only constitutional challenges to P.A. 436 *as applied*

to the City of Flint, but fails to recognize the *facial* constitutional

challenges contained in the Complaint.  Indeed, the Complaint alleges

that the Legislature's  *enactment* of P.A. 436 was unconstitutional and

that P.A. 436 is *itself* unconstitutionally vague (*Complaint*, Dkt. 7093-1

at ¶¶ 106, 108) not just that the Flint Emergency Manager's actions

violate the plaintiffs' constitutional rights.

If the *Flint* plaintiffs are successful and P.A. 436 is declared facially unconstitutional, P.A. 436 will be void *in all applications*, including as applied to the City of Detroit and EM Orr.  See *Village of Mainville, Oh. v. Hamilton Twp. Bd. of Trustees*, 726 F.3d 762, 766 (6th Cir. 2013) ("An unconstitutional application of a statute and passage of a statute that is unconstitutional in all its applications may each be equally void from the outset.").  Thus, plaintiffs' success in the *Flint* case could raise serious questions whether EM Orr may continue to exercise authority under P.A. 436 and could adversely impact the City of Detroit's chapter 9 case.

## B.   The *Phillips* case is distinguishable from the *Flint* case.

The *Flint* plaintiffs state that "[a]s with *Phillips*, Plaintiffs' suit challenges P.A. 436 and its application in a jurisdiction outside of Detroit – specifically, Flint" (*Motion to Modify Stay*, Dkt. #7093 at 12) and urge the Court to hold that the Stay Extension Order is not applicable for the same reasons that it held that the Stay Extension Order did not apply to the *Phillips* case.  But, with regard to the *Phillips* case, the Court was persuaded by the *Phillips* plaintiffs'

6

representations that they would "withdraw from their suit any request for relief as to the Detroit emergency manager." *Opinion and Order,* Dkt. #1536 at 8. The *Phillips* plaintiffs did, in fact, amend their complaint to delete references to EM Orr and the City of Detroit, and to eliminate their request for injunctive relief restraining the State from granting authority to emergency managers under P.A. 436. *Phillips, et al. v. Snyder, et al.*, E.D. Mich. No. 2:13-cv-11370, R. 1, Complaint, Pg ID #49 (see also, Dkt. #1888-7 at 43) compare to *Phillips*, E.D. Mich. No. 13-cv-11370, R. 39, First Amended Complaint, Pg ID #551 (see also, Dkt. #1004-7 at 50).

This Court held that the Stay Extension Order did not apply to the *Phillips* case because by amending their complaint, the *Phillips* plaintiffs no longer sought to restrain the State from granting authority to EM Orr. In contrast, the *Flint* plaintiffs seek injunctive relief enjoining defendants, including the State Entities, from implementing or enforcing provisions of P.A. 436 that are declared unconstitutional. *Complaint*, Prayer for Relief #6, Dkt. #7093-1 at 15. The injunctive relief that the *Flint* plaintiffs seek could restrain the State Entities from granting authority under P.A. 436 to *any* emergency manager

13-53846-swr Doc 8232-15 Filed 11/01/14 Entered 11/01/14 11:26:37 Page 75 of 85

appointed in Michigan – which would include EM Orr.  Thus, the *Flint*

plaintiffs' assertion that "Plaintiffs' suit has no connection to the City of

Detroit, other than the fact that both Flint and Detroit are governed by

emergency managers" (*Motion to Modify Stay*, Dkt. #7093 at 12) is

incorrect.

## CONCLUSION

The State Entities, therefore, request the Court hold that the Stay

Extension Order applies to the *Flint* case and deny the *Flint* plaintiffs

relief from the Stay Extension Order.

Respectfully submitted,

*/s/ Matthew Schneider*
Matthew Schneider
Chief Legal Counsel
P.O. Box 30754
Lansing, Michigan  48909
(517) 373-3203
SchneiderM7@michigan.gov
[P62190]

Steven G. Howell
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425

Dated:  September 10, 2014      Attorneys for the State of Michigan

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

**ATTACHMENT 6**

**APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL**

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 6. | 9/10/2014 | 7403 | City of Detroit's Objection and Brief in Opposition to American Federation of State, County and Municipal Employees Michigan Council 25's Motion to Modify the Automatic Stay |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | : | Bankruptcy Case Number 13-53846 |
| City of Detroit, Michigan, | : | Honorable Steven W. Rhodes |
| Debtor. | : | Chapter 9 |
| _____ | : | |

### CITY OF DETROIT'S OBJECTION AND BRIEF IN OPPOSITION TO AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25'S MOTION TO MODIFY THE AUTOMATIC STAY

The City of Detroit (the "City"), by its undersigned counsel, files this objection ("Objection") to the American Federation of State, County and Municipal Employees Michigan Council 25's ("AFSCME") Motion to Modify the Automatic Stay ("Motion") (Doc. No. 7093), respectfully stating as follows:

The underlying litigation for which stay relief is sought is another attack upon PA 436 and its predecessor. AFSCME asserts that this litigation bears similarities to the previous *Phillips* motion in which stay relief was granted[1] by this Court and, by inference, is not similar to the NAACP motion in which stay relief was denied.[2] The AFSCME litigation is, however, similar in several important respects to the NAACP matter and is substantively different in several important and controlling respects to matters in which relief was granted. Here, as opposed

---

[1] See Docket Nos. 1004, 1536.
[2] See Docket Nos. 740, 1536.

to the other matters, AFSCME seeks to enjoin the Governor, the Treasurer and "all persons and entities acting in concert with them, from taking any further actions to implement or enforce the unconstitutional provisions of PA 4 or PA 436." Complaint[3] at 15, ¶ 6.  On its face, this relief implicates the actions taken and to be taken by the City's Emergency Manager in this bankruptcy case.  This Court premised its ruling in *Phillips* on the basis that the complaint would have absolutely no bearing on the City's bankruptcy case.  A similar conclusion cannot be reached here.

Additionally, the AFSCME complaint asserts facial challenges to the constitutionality of PA 436.  Even though this Court has upheld the constitutionality of PA 436, the City was and remains concerned that issues of issue or claim preclusion could arise if the AFSCME matter were to continue while the City's case is open, thus delaying or complicating the City's bankruptcy case.  Moreover, this bankruptcy case appears to be evolving in a way that could eliminate appellate challenges and thus waiting until the plan is confirmed to deal with the AFSCME matter could avoid any pitfalls in this process resulting from collateral proceedings.[4]

---

[3] The term "Complaint" means the Complaint for Declaratory and Injunctive Relief attached as Exhibit 1 to the Motion.

[4] For that matter, the automatic and extended stays will dissolve upon the effective date of the City's plan of adjustment.

A law found to be unconstitutional is treated as unenforceable. *Coleman v. Ann Arbor Transp. Auth.*, 904 F. Supp. 2d 670, 682-83 (E.D. Mich. 2012). In Michigan, the default rule is to treat such statutes as void *ab initio*. *Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135, 144-45 (1977). Thus, a finding that PA 436 is unconstitutional could cast doubt upon the City's bankruptcy case, and most importantly, the various agreements that have been reached between the City and objecting parties, and the confirmability of the City's plan of adjustment. It is unrealistic to think that some party would not endeavor to utilize such a ruling to further complicate, delay, or even defeat the confirmation of the plan.

The judge presiding over the District Court matter, Honorable Terrence Berg, indicated in his order staying that case his concern over what effect AFSCME's facial challenge to PA 436 might have on the City's bankruptcy case. Motion, ¶ 17; Ex. 2, p. 1 ("Further, and importantly, Plaintiffs' complaint includes a facial challenge to the constitutionality of the state laws under which Emergency Managers are appointed and operate."). The City shares this concern. Plaintiffs also seek to enjoin the Governor and others from taking further actions under PA 436. Prayer for Relief, ¶ 6. This broad relief, if granted, could adversely affect the plan confirmation process as discussed above.

22940148.4\022765-00202

## <u>CONCLUSION</u>

WHEREFORE, since the Motion seeks relief that could be construed as a facial challenge to PA 436 or otherwise affect the powers of the City's Emergency Manager, the City asks this Court to DENY the Motion.

September 10, 2014                    Respectfully submitted,

By: <u>/s/Timothy A. Fusco</u>
    Timothy A. Fusco (P13768)
    Jonathan S. Green (P33140)
    Stephen S. LaPlante (P48063)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 963-6420
    Facsimile: (313) 496-7500
    green@millercanfield.com
    laplante@millercanfield.com
    fusco@millercanfield.com

    David G. Heiman (OH 0038271)
    Heather Lennox (OH 0059649)
    JONES DAY
    North Point
    901 Lakeside Avenue
    Cleveland, Ohio 44114
    Telephone: (216) 586-3939
    Facsimile: (216) 579-0212
    dgheiman@jonesday.com
    hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY OF DETROIT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2014, he filed *CITY OF DETROIT'S OBJECTION AND BRIEF IN OPPOSITION TO AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES MICHIGAN COUNCIL 25'S MOTION TO MODIFY THE AUTOMATIC STAY* ("Objection") using the Court's CM/ECF System which will provide notice of the filing to all registered participants in this matter.

The undersigned further certifies that a copy of the Objection was served via electronic mail upon counsel, as follows:

Richard G. Mack, Jr.
richardmack@millercohen.com

By: /s/Timothy A. Fusco
Timothy A. Fusco

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

## ATTACHMENT 7

### APPELLANTS STATE OF MICHIGAN AND CITY OF DETROIT, MICHIGAN'S DESIGNATION OF THE CONTENTS OF THE RECORD AND STATEMENT OF ISSUES ON APPEAL

| Design-ation | Filing Date | Docket # | Description |
|---|---|---|---|
| 7. | 9/26/2014 | 7679 | Order Regarding Motion to Modify the Automatic Stay Filed by American Federation of State, County and Municipal Employees Michigan Council 25 (Dkt. #7093) |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

City of Detroit, Michigan,

      Debtor.

_____/

Chapter 9

Case No. 13-53846

Hon. Steven W. Rhodes

## Order Regarding Motion to Modify the Automatic Stay Filed by American Federation of State, County and Municipal Employees Michigan Council 25 (Dkt. #7093)

On August 27, 2014, AFSCME filed a motion to modify the automatic stay. The State of Michigan and the City filed objections. The Court has determined that a hearing on this motion is not necessary.

On May 16, 2013, AFSCME, AFL-CIO, Samuel Muma, Franklin Greene Jr. and Willie Stacker filed a complaint in U.S. District Court for the Eastern District of Michigan against Governor Richard Snyder, Treasurer Andrew Dillon, Michael Brown, who is the former Emergency Manager for the City of Flint, and Ed Kurtz, who is the current Emergency Manager for the City of Flint. The complaint challenged actions taken by the former and current Flint City Managers under P.A. 4 and P.A. 436, including unilateral wage reductions. The complaint alleged constitutional claims under the contracts clause, the takings clause and the due process clause. The complaint sought to enjoin the defendants from taking any further action under P.A. 4 or P.A. 436. On March 27, 2014, the district court entered an order administratively closing the case due to this Court's order extending the automatic stay, issued on July 25, 2013. (Dkt. #166)

In support of its motion, AFSCME argues that its complaint will have no impact on the City of Detroit's bankruptcy case because it is limited to actions taken by the Flint emergency manager that impact employees of the City of Flint.

In support of their objections, the State of Michigan and the City contend that the automatic stay applies to AFSCME's case and should not be modified because the complaint contains facial challenges to the constitutionality of P.A. 436 and a finding in that case that P.A. 436 is unconstitutional could potentially threaten the continuation of the City's bankruptcy case by compromising the authority of the City's emergency manager, Kevyn Orr.

The Court must reject the position of the State of Michigan and the City. The Court has previously concluded that a constitutional challenge to P.A. 436 in another court relating to another city is not stayed by the City's bankruptcy filing. See November 6, 2013 Opinion and Order. (Dkt. #1536) In denying the State of Michigan's motion for reconsideration of that Opinion and Order, the Court stated, "A finding by another court that P.A. 436 is unconstitutional will not automatically result in the removal of Kevyn Orr. Further action would need to be taken, and any such further action is subject to the automatic stay." See Order Denying Motion for Reconsideration (Dkt. #2256)

Accordingly, the Court concludes that AFSCME's district court case is not stayed.

It is so ordered.

Not for Publication

.

**Signed on September 26, 2014**

                                        _____/s/ Steven Rhodes_____
                                        **Steven Rhodes**
                                        **United States Bankruptcy Judge**