UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

**THE DETROIT RETIREMENT SYSTEMS' LIMITED OBJECTION TO ENTRY OF PROPOSED ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

The Police and Fire Retirement System of the City of Detroit (the "PFRS") and the General Retirement System of the City of Detroit (the "GRS" and together with the PFRS, the "Retirement Systems") assert this Limited Objection to entry of the proposed Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (the "Proposed Confirmation Order") for the reasons set forth herein.[1]

**Preliminary Statement**

1. The Retirement Systems do not object to confirmation of the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22,

---

[1] Any capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

2014) [Dkt. No. 8045] (the "<u>Plan</u>").  The Retirement Systems have supported the Plan, have recommended that their beneficiaries, Holders of Claims in Classes 10 and 11, vote in favor of the Plan, and have worked, and will continue to work, diligently with the City and the State of Michigan to efficiently and expeditiously implement the Plan up to and after an order confirming the Plan has been entered and the Effective Date occurs.

2. This Limited Objection is not intended to challenge confirmation of the Plan or the settlements embodied therein.  The Retirement Systems fully support confirmation of the Plan.

3. This Limited Objection speaks solely to the limited issue of whether the Court has jurisdiction to review the fees and expenses incurred in this bankruptcy case by the Retirement Systems' professionals (collectively, the "<u>Professional Fees</u>").  The only issue that would be appropriate for Court review and mediation is whether the amount the City must reimburse the Retirement Systems on or about the Effective Date as an expense of administration is reasonable.  To date, however, the City has not paid, committed to pay, or expressed any intention to pay, directly or indirectly, any Professional Fees as an expense of administration of this case.  If and to the extent that the City does commit to pay any Professional Fees as an expense of administration, then the

Retirement Systems are certainly willing to withdraw this Limited Objection and participate in the Court's fee review process.

4. However, at the status hearing before the Court on November 10, 2014, the City did not state that it would pay or reimburse the Professional Fees. Instead, the City merely argued that it *may* have a "reimbursement" obligation for the Professional Fees to the extent that the Retirement Systems' payment of those fees specifically creates an underfunding liability as of July 1, 2023 or sometime thereafter for which the City is then responsible.[2] That argument is unavailing because (i) such an underfunding in 2023 and the ability to trace it specifically to the payment of Professional Fees - - paid nearly a decade earlier - - is entirely speculative and theoretical, and (ii) in any event, the obligation to cover such underfunding in and after July 2023 simply does not fit the concept of a current reimbursement obligation of the City. It certainly does not articulate an obligation payable by the City on the Effective Date as an expense of administration of the case that would be appropriate for the Court's review under Bankruptcy Code section 943(b)(3). If this is the only "obligation" asserted by the City, it is not the kind of obligation that creates any bona fide nexus between the Professional Fees of the non-Debtor Retirement Systems and the Court's jurisdiction to review fees under section 943(b)(3).

---

[2] The City's contribution obligations to the Retirement Systems through June 30, 2023 under the Plan are fixed.

3

5. Moreover, the City's argument, if adopted by the Court, would appear to set a very dangerous and inappropriate precedent. The City's argument, in essence, gives it the right to interfere in any contractual relationship entered into by the Retirement Systems, on the dubious grounds that such contract may ultimately affect the level of underfunding for which the City may be financially responsible during, at a minimum, the entire 40-year lifespan of the Plan. However, this would completely abrogate the statutory framework (discussed below) that establishes the Retirement Systems as <u>independent</u> trusts.

6. Finally, the City's argument in this regard is barred by concepts of estoppel (including, without limitation, estoppel, collateral estoppel, and judicial estoppel). The City has already stipulated in the Proposed Confirmation Order that any claims of Bank of New York Mellon ("<u>BNY Mellon</u>") against the Retirement Systems under contracts between those parties will not be affected by the Plan. For the very same reasons, the Plan cannot affect the Retirement Systems' contracts with its professionals, and the City is estopped from arguing otherwise.

**Factual Background**

**A.   The Retirement Systems' Independence from the City and Retention of Professionals.**

7. Pursuant to the Public Employee Retirement System Investment Act, M.C.L. § 38.1132, *et seq.* ("<u>PERSIA</u>"), the GRS and the PFRS are each a "separate and distinct trust fund and the assets of the systems shall be for the exclusive

4

201567117.5 14893/165083

13-53846-tjt    Doc 8253    Filed 11/11/14    Entered 11/11/14 21:56:04    Page 4 of 16

benefit of the participants and their beneficiaries and of defraying reasonable expenses of investing the assets of the system." M.C.L. § 38.1133(8). The Retirement Systems, therefore, are not departments of the City; they are separate and distinct legal entities.

8. The Retirement Systems are authorized to employ attorneys, financial advisors and actuaries under section 13(6) of PERSIA, which provides:

> Subject to section 13g, an investment fiduciary may use a portion of the income of the system to defray the costs of investing, managing, and protecting the assets of the system; may retain investment and all other goods and services necessary for the conduct of the affairs of the system, including investment advisors, consultants, custodians, accountants, auditors, attorneys, actuaries, investment personnel, administrators, and physicians; and may enter into contracts for and pay reasonable compensation for those services. Subject to an annual appropriation by the legislature, a deduction from the income of a state-administered system resulting from the payment of those costs shall be made.

M.C.L. § 38.1133(6).

9. The Retirement Systems each retained attorneys, financial advisors, and actuaries in connection with this case in order to protect the assets of the Systems.

10. Each of the Retirement Systems' Professionals was retained pursuant to a separate contract for professional services. The City is not a party to any of those contracts. Those contractual obligations are binding on the Retirement Systems and are not contingent upon any external approvals.

5

11. Reasonable compensation rates were negotiated by the Retirement Systems with each of their professionals. For example, pursuant to its retention agreement, Clark Hill PLC's professionals charge on an hourly basis and track their time in one-tenth of an hour increments. As a concession to the Retirement Systems, Clark Hill provides a 15% discount on its fees to the Retirement Systems.

12. Pursuant to its retention agreement, Arnold & Porter LLP's professionals charge on an hourly basis and track their time in one-tenth of an hour increments. As a concession to the Retirement Systems, Arnold & Porter agreed to cap its partner-level attorney fee rates at $700, subject to limited annual increases, with the assurance that the Retirement Systems would receive an aggregate discount of not less than 10%.

13. Pursuant to its retention agreement, Greenhill charges a flat monthly fee of $150,000 and is entitled to a Transaction Fee of $3.55 million. These terms were the product of substantial negotiation between the parties.

14. Throughout this case, the Retirement Systems' professionals have provided monthly invoices to the Retirement Systems which are reviewed by independent counsel and approved by the Boards of Trustees of the GRS and the PFRS. Each Board of Trustees determines that the fees are reasonable and serve the best interests of the plan and its participants.

15. The respective Boards of Trustees for each of the Retirement Systems have approved each of the invoices submitted by its professionals in connection with this case to date.

**B.      The Bankruptcy Case**

16. On July 18, 2013, the City filed for protection under chapter 9 of the Bankruptcy Code.

17. On August 19, 2013, the Court entered an Order Appointing Fee Examiner [Dkt. No. 383] (the "Appointing Order"), which appoints Robert Fishman as the Fee Examiner in this case.

18. On September 11, 2013, the Court entered the Fee Review Order [Dkt. No. 810] which establishes a process for review of the fees of and expenses incurred by the City Professionals and the Committee Professionals. The term "City Professionals" is defined as "all professionals who have been retained to render services in connection with this Case and who will seek payment of compensation and reimbursement of expenses from the City for postpetition services. . . ." Fee Review Order at ¶ 1. The term "Committee Professionals" is defined as "all professionals who have been retained by the Committee as of that time to render services in connection with the case and who will be compensated for fees by the City." *Id.*

19. The professionals for the Retirement Systems have not been subject to the Fee Review Order since its entry.

20. By its terms, the professionals for the Retirement Systems are not subject to the Fee Review Order because they have not and will not "seek payment of compensation and reimbursement of expenses from the City for postpetition services." *Id.*

21. On Friday, October 31, 2014, the City filed a Notice of Filing of Proposed Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit [Dkt. No. 8154]. This version of the confirmation order did not include any language suggesting that the professionals of the Retirement Systems would be subject to the Fee Review Process or that the Court would be making a determination, under Bankruptcy Code section 943(b)(3), that the Retirement Systems' Professional Fees had been fully disclosed and are reasonable.

22. On Friday, November 7, 2014, the Court issued and read from the bench its Oral Opinion on the Record, a written version of which was concurrently posted to the City's website (the "Opinion"). In its Opinion, the Court ruled, among other things, as follows:

> Accordingly, the Court concludes that it has the obligation, as a condition of confirming the City's plan, to determine that the professional fees ***for which the City is obligated in connection with the case***, whether paid or unpaid, are disclosed and reasonable.

Opinion at 27.

23. Neither the Opinion nor the Plan itself, however, makes mention that the Retirement Systems' professionals would suddenly, more than 15 months after the Petition Date, become subject to a fee review process or that any basis exists for such. Similarly, none of the documentation of the settlement of Class 10 and 11 Claims as part of the Grand Bargain refers to submitting the Retirement Systems' Professional Fees to a fee review process.

24. On Sunday, November 9, 2014, at approximately 6:30 p.m., the City circulated a revised draft of the Proposed Confirmation Order, which included a proposal <u>never before mentioned</u> by the City, *i.e.*, that the Retirement Systems' Professional Fees be subject to a fee review process.

25. At the status hearing before the Court on November 10, 2014, the City circulated a further revised Proposed Confirmation Order, and a new iteration of the Proposed Confirmation Order was filed by the City on the evening of November 11, 2014. *See* Docket No. 8249. The operative language in question is as follows:

> <u>Section 943(b)(3)</u>. The Court, with the assistance of counsel, will establish an expeditious mediation and Court-review process to resolve any issues regarding the reasonableness and disclosure of all fees and expenses, paid and unpaid, **for which the City is obligated** in connection with this case through the Effective Date, as required by section 943(b)(3) of the Bankruptcy Code, including (**1**) **the professional fees and expenses of the GRS and the PFRS, to the extent that the**

> **City reimburses them**, (2) the fees and expenses of the Fee Examiner and his professionals, (3) the Court-appointed feasibility expert and her counsel and (4) the other Fee Review Professionals. The review and resolution of any fee-related issues pursuant to such process will satisfy the requirements of section 943(b)(3) of the Bankruptcy Code.

Proposed Confirmation Order, ¶ J at 27, ¶¶ 87-88 at 124 (emphasis added).

26. At the hearing on November 10, 2014, the City argued that although the Retirement Systems had not sought payment of their Professional Fees from the City, the City could be required to "reimburse" the Professional Fees if, after June 30, 2023, the contributions required from the City for unfunded accrued actuarial liabilities ("UAAL") will be greater as a result of Professional Fees paid by the Retirement Systems during this case.

27. The Retirement Systems dispute this argument.

### **Objections**

28. The Retirement Systems object to entry of the Proposed Confirmation Order because (a) unless the City is intending to reimburse the Professional Fees as a current obligation and expense of administration of this case, the Court does not have jurisdiction under the Bankruptcy Code to review them, and (b) the City has waived any right to assert otherwise in light of (i) the City's failure to include the Retirement Systems' professionals in the fee review process when it was established some 15 months ago, (ii) the City's failure to incorporate a fee review process into the settlement with the Retirement Systems, and (iii) the City's

10

(proper) position taken in the Proposed Confirmation Order that other contracts of the Retirement Systems with third-party vendors (such as BNY Mellon) are not affected by the Plan.

29. As stated above, the Court's Opinion and the Proposed Confirmation Order envision that postpetition professional fees that are specifically an obligation of the City be subject to review pursuant to Bankruptcy Code section 943(b)(3). And properly so. *See, e.g., In re City of Colorado Springs, Spring Creek Gen. Imp. Dist.*, 187 B.R. 683, 685-86 (Bankr. D. Colo. 1995). The corollary is that if professional fees incurred during the case on behalf of a non-Debtor third party are <u>not</u> an obligation of the City and are not an administrative expense claim, there is no basis for the Court's review of them. The Retirement Systems are not aware of any case law to the contrary, and the City has not cited any such authority.

30. Indeed, nothing in the Plan or the Disclosure Statement, including the City's various financial projections, identifies any specific obligation of the City for payment or reimbursement of the Retirement Systems' Professional Fees.

31. Nonetheless, the City feebly argues that it *may* have an obligation for the Professional Fees of the Retirement Systems if there is an underfunding liability that exists on July 1, 2023 that is attributable specifically to the payment of such fees. The speculative and tenuous nature of this argument is self-evident and does not raise this completely theoretical claim to the level of a current

11

administrative expense or other obligation of the City that may be subjected to a reasonableness review under Bankruptcy Code section 943(b)(3).[3]

32. As stated above, if the City is proposing to affect or impair third-party contracts of the Retirement Systems solely on the reasoning that any such contract could conceptually have an economic impact on the funding levels of the Retirement Systems, and without any other legal basis for such interference, the Retirement Systems submit that such interference is antithetical to the statutory independence of the Systems and would set a dangerous precedent. Again, if the City is proposing to reimburse the Systems' Professional Fees as an administrative expense, that would be a different matter, and review of the fees pursuant to section 943(b)(3) would be appropriate. Absent such obligation, the last-minute attempt to interfere with the Retirement Systems' third-party contracts is inappropriate and not authorized by the Bankruptcy Code.

33. The fact of the Retirement Systems' obligations for their Professional Fees and any relationship of the City to those obligations cannot be characterized as newly-discovered. Therefore, even if the City wanted to argue that it has some obligation for these fees such that they should be subject to the fee review process

---

[3] The Court, in its Opinion, has already determined that the Plan is feasible. Even if there was some identifiable obligation in 2023 arising from the payment of Professional Fees (which obligation the City would, at worst, have to amortize over the next 30 years to 2053), that obligation has already been addressed by the settlement of Class 10 and 11 Claims under the Plan, which the Court has already approved.

201567117.5 14893/165083
13-53846-tjt    Doc 8253    Filed 11/11/14    Entered 11/11/14 21:56:04    Page 12 of 16

in this case, the time to do so would have been at the time of entry of the Fee Review Order in September of 2013. If the Court had countenanced such an argument at that time, the Retirement Systems' professionals may very well have amended their retention agreements to account for this exposure. To impose this process *ex post facto* is patently unfair and prejudicial. Accordingly, the City should be deemed to have waived this argument.[4]

34. On July 14, 2014, the Court entered its Order Modifying The Order Identifying Legal Issues . . . [Docket No. 5235] pursuant to which the Court approved a stipulation between the City and BNY Mellon that, among other things, confirmed that BNY Mellon's rights under its third-party contracts with the Retirement Systems would not be affected or impaired by the Plan.[5] The premise for this stipulation and Order, obviously, is precisely what the Retirement Systems are asserting here - - that the City and this Court have no rights or jurisdiction to interfere with the contractual rights between the Retirement Systems and their vendors. Therefore, the City (and the Court) are estopped from taking an inconsistent position here.

---

[4] In this regard, it would be more than a little ironic and self-serving for the City to argue waiver, as it did on November 10, with respect to any party that did not file an objection to fees by the Plan objection deadline but to not hold itself to the same standard here.

[5] This stipulation and Order are further memorialized at paragraph 81 of the Proposed Confirmation Order.

13

35. To reiterate, to date, the City has not offered to cut a check to the Retirement Systems on the Plan Effective Date to reimburse some or all of their Professional Fees as an administrative expense of this case. If and to the extent that the City so offers, the Retirement Systems are certainly willing to withdraw this Limited Objection and participate in the Court's fee review process to determine the reasonableness of the fees that are subject to such reimbursement (subject to appropriate protections for attorney-client privileged communications).

36. The Retirement Systems are filing this Limited Objection in order to address more formally this issue that was discussed at the November 10 status hearing. The Retirement Systems continue to review the Proposed Confirmation Order, including the version just filed this evening, and will seek to resolve any other issues on an informal basis with the City. The Retirement Systems reserve the right to amend or supplement this Limited Objection as may be appropriate in the course of the development of this matter and in the course of its further review of the various iterations of the Proposed Confirmation Order and does not waive any such rights by filing this Limited Objection at this time.

WHEREFORE, for the reasons set forth above, the Retirement Systems respectfully request that this Court enter an order requiring the removal from the Proposed Confirmation Order (and from the version thereof that the Court ultimately determines to enter) of any requirement that their Professional Fees be

13-53846-tjt    Doc 8253    Filed 11/11/14    Entered 11/11/14 21:56:04    Page 14 of 16

subjected to any review or mediation process in this case, and granting such other relief to the Retirement Systems as the Court deems proper.

Dated: November 11, 2014

Respectfully submitted,

CLARK HILL PLC

/s/   Robert D. Gordon
Robert D. Gordon (P48627)
Ronald A. King (P45088)
Shannon L. Deeby (P60242)
151 South Old Woodward Avenue
Suite 200
Birmingham, Michigan  48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 11, 2014, The Detroit Retirement Systems' Limited Objection to Entry of Proposed Order Confirming Eight Amended Plan for the Adjustment of Debts of the City of Detroit was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

Dated: November 11, 2014

201567117.5 14893/165083
13-53846-tjt    Doc 8253    Filed 11/11/14    Entered 11/11/14 21:56:04    Page 16 of 16