

CITY OF DETROIT
LAW DEPARTMENT

FIRST NATIONAL BUILDING
660 WOODWARD AVENUE, SUITE 1650
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550  TTY:311
FAX 313•224•5505
WWW.DETROITMI.GOV

November 8, 2011

Detroit City Council
1340 Coleman A. Young
  Municipal Center
Detroit, Michigan

> RE:  Proposed Ordinance to Amend Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I. *Common Provisions of the General Retirement System*, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement System*

Honorable City Council:

The above-referenced proposed ordinance was requested by Your Honorable Body through Council Member Saunteel Jenkins. This proposed ordinance has been approved as to form.

Pursuant to the applicable provisions of the 1997 Detroit City Charter, the above-referenced proposed ordinance is being submitted to Your Honorable Body for consideration. This proposed ordinance amends Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I. *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement System*, by amending Section 47-2-18, to limit payments by the General Retirement System so that neither the General Retirement System nor the trustees charged with management of the System may provide any savings plan, annuity plan, or other participant investment or savings vehicle that provides an annual return to investing participants which in any year is greater than the actual investment return net of expenses of the Retirement System invested reserves for the year in which the return is earned and accrued, provided, that such return shall neither be greater than the assumed annual return as expressed in the plan's valuation for that year nor less than zero; to amend the definition of 'regular interest' to be commensurate with the limitation to be contained in Section 47-1-18 of this Code, and to make provisions concerning the income fund commensurate with the limitation to be contained in Section 47-1-18 of this Code.

We are available to answer any questions that you may have concerning this proposed ordinance. Thank you for your consideration.

Respectfully submitted,

Krystal A. Crittendon
Corporation Counsel

KAC: DAM
DAM
Attachment

G:\DOCS\MUNIC\MAZUD\AS2000\LTR\DMZ2256.WPD

# SUMMARY

This proposed ordinance amends Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I. *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement System*, by amending Section 47-2-18, to limit payments by the General Retirement System so that neither the General Retirement System nor the trustees charged with management of the System may provide any savings plan, annuity plan, or other participant investment or savings vehicle that provides an annual return to investing participants which in any year is greater than the actual investment return net of expenses of the Retirement System invested reserves for the year in which the return is earned and accrued, provided, that such return shall neither be greater than the assumed annual return as expressed in the plan's valuation for that year nor less than zero; to amend the definition of 'regular interest' to be commensurate with the limitation to be contained in Section 47-1-18 of this Code, and to make provisions concerning the income fund commensurate with the limitation to be contained in Section 47-1-18 of this Code.

1    BY COUNCIL MEMBER SAUNTEEL JENKINS:
2
3         AN ORDINANCE to amend Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*,

4    Article I. *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and

5    47-1-21, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General*

6    *Retirement System*, by amending Section 47-2-18, to limit payments by the General Retirement

7    System so that neither the General Retirement System nor the trustees charged with management of

8    the System may provide any savings plan, annuity plan, or other participant investment or savings

9    vehicle that provides an annual return to investing participants which in any year is greater than the

10   actual investment return net of expenses of the Retirement System invested reserves for the year in

11   which the return is earned and accrued, provided, that such return shall neither be greater than the

12   assumed annual return as expressed in the plan's valuation for that year nor less than zero; to amend

13   the definition of 'regular interest' to be commensurate with the limitation to be contained in Section

14   47-1-18 of this Code, and to make provisions concerning the income fund commensurate with the

15   limitation to be contained in Section 47-1-18 of this Code.

16        IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT THAT:
17
18        **Section 1.**  Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I.

19   *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21,

20   and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement*

21   *System*, by amending Section 47-2-18, to read as follows:

1

## ARTICLE I. COMMON PROVISIONS OF
## THE GENERAL RETIREMENT SYSTEM.

Sec. 47-1-18.  Board of Trustees; Adoption of Mortality and Other Tables of Experience and Rates of Interest : Limitations on Payments By Retirement System.

(a)  The Board shall adopt such mortality and other tables of experience, and a rate or rates of regular interest, as shall be necessary for the operation of the System on an actuarial basis, provided, that the authority granted by this section shall not permit or be used to provide for an interest rate which would violate the prohibitions of Subsections (b) and (c) of this section.

(b)  The Retirement System and the trustees charged with management of the System shall not make any payment to active or retired participants other than payments that are required by the Retirement System plan as established by this Code to govern the System.  This prohibition applies to all payments that are not authorized by this Code, whether such payments be those commonly referred to as a "thirteenth check" or by any other name.

(c)  The Retirement System and the trustees charged with management of the System shall not provide any savings plan, annuity plan, or other participant investment or savings vehicle that provides an annual return to investing participants which in any year is greater than the actual investment return net of expenses of the Retirement System invested reserves for the year in which the return is earned and accrued, provided, that such return shall neither be greater than the assumed annual return as expressed in the plan's valuation for that year nor less than zero.  This prohibition shall apply to all payments made to participants in the Defined Contribution Plan of 1973 from the effective date of this amendment.

1    Sec. 47-1-21. Definitions.

2         Unless a different definition is contained within Section 47-3-2 of this Code, or a different

3    meaning is plainly required by context, for purposes of this Chapter the following words and phrases

4    have the meanings respectively ascribed to them by this section:

5         *Accrued Service*[24] means a member's credited service for employment rendered before the

6    date of an actuarial valuation of the Retirement System.

7         *Accumulated Contributions*[25] means the sum of all amounts deducted from the compensation

8    of a member and credited to the member's individual account in the Annuity's Savings Fund, together

9    with regular interest thereon.

10        *Administrative Board of Trustees*[26] means the Board of Trustees of the General Retirement

11   System.

12        *Administrative Rules and Regulations*[27] means rules and regulations promulgated by the

13   Administrative Board of Trustees pursuant to Section 47-1-11[28] of this Code for the administration

14   of the System and for the transaction of its business.

15        *Age, Attainment of*[29] means the age an individual reaches on the day of his or her birthday.

---

[24] 1964 Detroit City Code, Section 54-1-1, as amended by Ordinance 83-H, effective February 10, 1976, retroactive to July 1, 1975.

[25] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2.

[26] This is a new definition.

[27] This is a new definition.

[28] Section 47-1-11 gives the Board of Trustees the authority to establish rules and regulations for the administration of the pension system.

[29] This is a new definition.

3

1     *Annuity*[30] means the portion of the retirement allowance which is paid for by a member's

2    accumulated contributions.

3     *Annuity Reserve*[31] means the present value of all payments to be made on account of any

4    annuity or benefit in lieu of any annuity. Such annuity reserve shall be computed upon the basis of

5    such mortality table and regular interest as shall be adopted by the Board.

6     *Average Final Compensation*[32] means:

7        (1)    On or before June 30, 1992. For those members who retired or separated from active

8                 service with vested pension rights on or before June 30, 1992, the highest average

9                 compensation received by a member during any period of five consecutive years of

10               credited service selected by the member from the ten years of credited service which

11               immediately precede the date of the member's last termination of City employment.

12               If a member has less than five years of credited service, the Average Final

13               Compensation shall be the average of the annual compensation received during the

14               members total years of credited service.

15        (2)    *On or after July 1, 1992 but before July 1, 1998.* For those members who retired or

16               separated from active service with vested pension rights on or after July 1, 1992 but

17               before July 1, 1998, the highest average compensation received by a member during

---

[30] 1918 Detroit City Charter, T.9, C. VI, A. 3, § 1, 1.15, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[31] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.19.

[32] 1918 Detroit City Charter T.9, C. VI, A. 3, §1, 1.13, as amended.

4

1       any period of four consecutive years of credited service selected by the member from

2       the ten years of credited service which immediately precede the date of the member's

3       last termination of City employment. If a member has less than four years of credited

4       service, the Average Final Compensation shall be the average of the annual

5       compensation received during the member's total years of credited service.

6    (3)   *On or after July 1, 1998.* For those members who retire or separate from active

7       service with vested pension rights on or after July 1, 1998, the highest average

8       compensation received by a member during any period of three consecutive years of

9       credited service selected by the member from the ten years of credited service which

10      immediately precede the date of the member's last termination of City employment.

11      If a member has less than three years of credited service, the Average Final

12      Compensation shall be the average of the annual compensation received during the

13      member's total years of credited service.

14    (4)  *On or after July 1, 1999.* For those members with a regular or early service

15      retirement who retire on or after July 1, 1999, in computing the highest average

16      compensation received by a member, the member shall have the option of adding the

17      value of twenty-five percent (25%) of the member's unused accrued sick leave at the

18      time of retirement to the earnings used in computing the Average Final

19      Compensation. Any member choosing to exercise this option shall be entitled to

20      receive a lump sum payment of the value of twenty-five percent (25%) of the

21      member's unused accrued sick leave at the time of retirement.

5

1    *Beneficiary*[33] means any person who is entitled to receive a retirement allowance or pension

2  payable from funds of the General Retirement System.[34]

3    Board of Trustees or Board[35] means the Board of Trustees of the General Retirement System

4  as provided in Section 47-1-4[36] of this Code.

5    *City*[37] means the City of Detroit, Michigan, a municipal corporation.

6    *City Council or Council*[38] means the legislative body of the City.

7    *Compensation*[39] means:

8    (1) *On or before June 30, 1992.* For those members retired or separated from active

9       service with vested pension rights, on or before June 30, 1992, all remuneration,

10      *excluding* longevity payments, paid to a member because of personal services

11      rendered by the member to the employer. Compensation in excess of the limitations

12      set forth in Section 401(a)(17)[40] of the Internal Revenue Code shall be disregarded.

---

[33] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.10, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83 H, effective February 26, 1976, retroactive to July 1, 1975.

[34] A retiree is also a "beneficiary".

[35] 1918 Detroit City Charter, T.9, C. VI, A. 2, §1, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[36] Section 47-1-4 lists membership of the Board.

[37] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.4.

[38] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.5.

[39] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.6.

[40] 26 USC 401(a)(17). The current maximum compensation is $200,000.00 Pub. L. 99-514, Title XI, §1106(d)(1), (i)(5), October 22, 1986, 100 Stat 2423, 2425, Applicable to years

6

1          (2)     *On or after July 1, 1992.* For those members who retire on or after July 1, 1992, all

2                    remuneration, *including* longevity payments, paid to a member because of personal

3                    services rendered by the member to the employer. Compensation in excess of the

4                    limitations set forth in Section 401(a)(17)[41] of the Internal Revenue Code shall be

5                    disregarded.

6         *Conversion* means that date on which a member's benefits change from disability retirement

7 benefits to normal retirement benefits.

8         *Credited Service*[42] means membership service credited to a member to the extent provided

9 in this Article.

10        *1998 Defined Contribution Plan Implementation Date*[43] means that date after the Plan is

11 established on which it is open for participation by eligible members.

12         *Detroit General Retirement System or DGRS*[44] means the General Retirement System of the

13 City of Detroit established under Section 47-1-2 of this Code which consists of:

14          (1)     The *Defined Benefit Plan,* which plan is a qualified plan and trust pursuant to

15                    applicable sections of the Internal Revenue Code;

16          (2)     The *1973 Defined Contribution Plan,* which Plan is a qualified plan and trust

---

beginning after December 31, 1988.

[41] Ibid.

[42] This is a new definition.

[43] This is a new definition.

[44] 1918 Detroit City Charter, T.9, C. VI, A. 1, as amended by 1964 Detroit City Code Section 54-1-1.

7

| | | |
|---|---|---|
| 1 | | pursuant to applicable sections of the Internal Revenue Code; and |
| 2 | (3) | The *1998 Defined Contribution Plan*. A *Defined Contribution Plan*, which is hereby |
| 3 | | designated *the 1998 Defined Contribution Plan*, the components of which are the |
| 4 | | (a) *Employee Contribution Account*, |
| 5 | | (b) The *Employee Rollover Account*, |
| 6 | | (c) The *Employer Contribution Account*, and |
| 7 | | (d) The *Annuity Savings Account*, |
| 8 | | all of which constitute the *1998 Defined Contribution Plan Retirement Trust*, which |
| 9 | | Plan is intended to be a qualified plan and trust pursuant to applicable sections of the |
| 10 | | Internal Revenue Code. |
| 11 | | *Employee*[45] means any regular and/or permanent officer, agent, or person in the employ of |
| 12 | | the employer, as defined in this section, but does not include: |
| 13 | (1) | Individuals whose City services are compensated on a contractual or fee basis; |
| 14 | (2) | Persons who are employed in positions normally requiring less than six hundred |
| 15 | | hours of work per annum, or |
| 16 | (3) | The medical director of the pension system. |
| 17 | | *Employee*[46] means the City, or any board, commission, or court serving the City, to the extent |
| 18 | | that both the City, through the action of City Council, and the governing authority of such board, |
| 19 | | commission or court, shall mutually agree to include the employees of such board, commission, or |
| 20 | | court, as City employees under the provisions of this Chapter at such time as they are eligible. To |

---

[45] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2.

[46] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2(d)(e).

8

1 the extent that any employees of a board, commission, or court are considered City employees for

2 this purpose, all employees of such Board, commission, or court, shall be so included. However, only

3 City board members and commissioners who are also employees of the City are eligible to be

4 included, unless otherwise specifically provided for by an ordinance passed or a resolution adopted

5 by the Council. In all cases of doubt, the Board of Trustees shall decide who is an employee within

6 the meaning of the provisions of this Article.

7  *Final Compensation*[47] means a member's annual rate of compensation at the time City

8 employment is last terminated.

9  *Member*[48] means any employee who has not retired.

·10  *Notice to Members, Beneficiaries, and Retirees*[49] means a mailing using First Class United

11 States Mail to the members, beneficiaries, and retirees at their last known address.

12  *Pension*[50] means the portion of a retirement allowance which is paid for by appropriations

13 made by the City into the appropriate funds.

14  *Pension Reserve*[51] means the present value of all payments to be made on account of any

15 pension, or benefit in lieu of any pension. Such pension reserve shall be computed upon the basis

---

[47] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.14.

[48] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.3, as amended by 1964 Detroit City Code Section 54-1-1.

[49] This is a new definition.

[50] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.16, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[51] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.20.

9

1 of such mortality and other tables of experience, and regular interest, as shall be adopted by the

2 Board.

3 *Regular Interest*[52] means such rate or rates per annum, compounded annually, as the Board

4 of Trustees shall determine in accordance with the limitations contained in Section 47-1-18 of this

5 Code.

6 *Retiree*[53] means a former member who is receiving a retirement allowance from the *DGRS*

7 *Article II* plan or is eligible to receive fringe benefits from the *DGRS Article III* Plan.

8 *Retirement*[54] means a member's withdrawal from the employ of the City with a retirement

9 allowance or pension paid by the system.

10 *Retirement Allowance*[55] means the sum of the annuity and the pension.

11 *Retirement System or System*[56] means the general employees retirement system of the City

12 created and established by Title IX, Chapter VI, of the 1918 Detroit City Charter, as amended,[57]

13 continued in effect through the 1974 and 1997 Detroit City Charters and codified in this Article. *See*

---

[52] This is a new definition.

[53] Formerly referred to as "retirant," 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.23, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975. A "retiree" is also a beneficiary.

[54] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.18.

[55] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.17.

[56] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.1, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[57] 1918 Detroit City Charter, T.9, C. VI, A. 1, as amended by 1964 Detroit City Code Section 54-1-1.

1    *DGRS.*

2    *Service*[58] means personal services rendered to the City by a person as an employee of the City

3    as defined in Section 47-1-21 of this Code, who is compensated by the City.

4    *Service credit for purposes of the 1973 Defined Benefit/Defined Contribution (Annuity)*

5    *Plan*[59] means that in accordance with such rules and regulations as the Board shall adopt, each

6    member shall be credited with service as follows: 1) One month of service credit is earned when the

7    member is paid for eighty hours of work during the month; 2) A full year of credit is earned for nine

8    months of credit in any calendar year, except the member's last year of work. Less than nine months

9    of service rendered in a calendar year shall neither be credited as a full year of service, nor shall more

10    than one year of service be credited to any member for service rendered in any one calendar year.

11    Service credit is used to determine eligibility for service retirement, vesting, non-duty disability and

12    survivor benefits. Service credit is also earned by a member retired on a duty disability or while

13    receiving Workers' Compensation benefits.

14    ARTICLE II.  DEFINED BENEFIT / DEFINED CONTRIBUTION (ANNUITY) PLAN
15                       OF THE GENERAL RETIREMENT SYSTEM.

16    Sec. 47-2-18.  Method of financing.[129]

17        (a)  *Annuity Savings Fund of the 1973 Defined Contribution Plan.*[130]

18        (1)    The *Annuity Savings Fund* of the *1973 Defined Contribution Plan* shall be the fund

---

[58] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.7.

[59] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.22.

[129] 1918 Detroit City Charter, T.9, C. VI, A. 7.

[130] 1918 Detroit City Charter, T.9, C. VI, A. 7, §1.

11

1          in which shall be accumulated at regular interest <u>in accordance with the limitations</u>

2          <u>that are contained in Section 47-1-18 of this Code</u>, the contributions of Members to

3          provide their annuities. At the election of the Member, the amount of the basic

4          contribution of a Member to the Retirement System may be zero percent (0%), three

5          percent (3%), five percent (5%), or seven percent (7%) of annual compensation. If

6          a Member elects three percent (3%), his or her contribution shall be that amount

7          which is subject to taxation under the provisions of the *Federal Insurance*

8          *Contribution Act,* 26 USC 3101 *et seq.* (Act), plus five percent (5%) of the portion

9          of annual compensation, if any, which exceeds the amount subject to taxation under

10         that Act.

11    (2)    The contribution rate elected by the Member under Section 47-2-18(a)(1) of this

12         Code shall be deducted from the Members' compensation notwithstanding that the

13         minimum compensation provided by law for any Member shall be reduced thereby.

14         Payment of compensation, less said deductions, shall be a complete discharge of all

15         claims and demands whatsoever for the services rendered by the said Member during

16         the period covered by such payment, except as to benefits provided under this

17         Article.

18    (3)    Upon retirement of a Member with a *Retirement Allowance,* the Member's

19         accumulated contributions shall be transferred from the *Annuity Savings Fund* to the

20         *Annuity Reserve Fund,* refunded to the Member, or a combination thereof.

21   (b)  *Annuity Reserve Fund.*[131] The *Annuity Reserve Fund* shall be the fund, from which all

---

[131] 1918 Detroit City Charter, T.9, C. VI, A. 7, §2.

12

1    annuities and benefits in lieu of annuities payable as provided in this Article, shall be paid. If a

2    disability retiree is reinstated to active City service, the retiree's Annuity Reserve at that time shall

3    be transferred from the *Annuity Reserve Fund* to the *Annuity Savings Fund* and credited to his or her

4    individual account therein.

5        (c) *Pension Accumulation Fund.*[132] The *Pension Accumulation Fund* shall be the fund in

6    which shall be accumulated reserves for the pensions and other benefits payable from the

7    contributions made by the City, and from which shall be paid pensions and other benefits on account

8    of Members with prior service credit, and transfers as provided in this Section, Contributions to and

9    payments from the *Pension Accumulation Fund* shall be made as follows:

10       (1)    Upon the basis of such mortality and other tables of experience and Regular Interest,

11             as the Board shall adopt from time to time, the Actuary shall annually compute the

12             amount of contributions, which, when made annually by the City during the entire

13             prospective City service of Members without prior service credit, will be sufficient

14             to provide the pension reserves required at the time the Members leave City

15             employment, to cover the pensions to which they might be entitled or which might

16             be payable because of their City employment. Upon the retirement of a Member

17             without prior service credit, or upon a Member's death in the performance of duty,

18             the *Pension Reserve Fund* for the pension or pensions to be paid on the Member's

19             account shall be transferred from the *Pension Accumulation Fund* to the *Pension*

20             *Reserve Fund.*

---

[132] 1918 Detroit City Charter, T.9, C. VI, A. 7, §3, as amended by Ordinance 84-7, effective February 10, 1976, retroactive to July 1, 1975.

13

(2) Upon the basis of such mortality and other tables of experience and regular interest as the Board shall adopt from time to time, the Actuary shall compute annually the pension reserve liabilities for pensions being paid to Retirees and Beneficiaries.

(3) On an annual basis, the Board shall ascertain and report to the Mayor and the Council the amount of City contributions due to the System. The Council shall appropriate and the City shall pay such contributions during the ensuing Fiscal year. When paid, such contributions shall be credited to the *Pension Accumulation Fund*.

(4) If the amount appropriated by the City and paid to the System for any Fiscal year is insufficient to make the transfers and pay the pensions from the *Pension Accumulation Fund* as provided in this Section, the amount of such insufficiency shall be provided by the appropriating authorities of the City.

(d) *Accrued Liability Fund.* Pursuant to Ordinance No. 5-05, which authorizes the creation of the Detroit General Retirement Service Corporation, the City has entered into a transaction (the "Pension Funding Transaction") to obtain funds as an alternative to those available through the traditional funding mechanism described above in Subsection (c). The proceeds generated by the Pension Funding Transaction (or any Additional Pension Funding Transactions, as described below) that will be deposited into the System will be termed the "Funding Proceeds." The Funding Proceeds will be deposited into a new fund in the System to be called the *Accrued Liability Fund*. The purpose of the Funding Proceeds will be to fund all or part of the heretofore unfunded actuarial accrued liability ("UAAL") of the System, as determined as of a date certain, i.e. that is, the "Determination Date," pursuant to the System's actuarial valuation as of that date. The Funding Proceeds will be assets of the System and will be applied, together with all other assets of the

14

1      System, to fund the System's obligation to pay accrued benefits.

2             This *Accrued Liability Fund* shall contain only the Funding Proceeds of this Pension Funding

3      Transaction, and any earnings thereon.   Should the City, by future ordinance, choose to raise

4      additional moneys by additional pension funding transactions ("Additional Pension Funding

5      Transactions") in order to fund the then existing UAAL of the System as of a future date certain, a

6      new and separate *Accrued Liability Fund* shall be created within the System to contain the proceeds,

7      and any earnings thereon, of any Additional Pension Funding Transactions, and a new *Accrued*

8      *Liability Fund* will be created for each successive Additional Pension Funding Transaction

9      undertaken by the City, if any. The treatment of any Additional *Accrued Liability Fund* shall be the

10     same as described below:

11            (1)     The Funding Proceeds deposited in the *Accrued Liability Fund* will be subject to the

12                    oversight and investment direction of the Board of Trustees of the General

13                    Retirement System, consistent with the Board's obligations under Section 47-2-20 <u>of</u>

14                    <u>this Code</u> (Management of Funds). The Board will invest the Funding Proceeds as

15                    part of the System's overall assets, and will not differentiate the Funding Proceeds

16                    from other System assets for investment purposes.

17            (2)     All interest, dividends and other income derived from the investment of the Funding

18                    Proceeds shall be credited annually to the applicable *Accrued Liability Fund* on a

19                    total System rate of return basis determined by crediting the applicable *Accrued*

20                    *Liability Fund* with the investment return experienced by the System in total for all

21                    of its investments for the year.   This shall be done by first determining the rate of

22                    return for the total assets in the System for the fiscal year, and then crediting back to

15

1        each *Accrued Liability Fund* an amount that is determined by multiplying that rate

2        of return times the balance in the *Accrued Liability Fund* as of the beginning of the

3        fiscal year, less an amount obtained by multiplying one-half of the System's rate of

4        return times the amount transferred to the *Pension Accumulation Fund* for that year.

5        As provided in Section 47-2-18(g) of this Code, the interest, dividends and other

6        income derived from the investment of the Funding Proceeds deposited in any

7        *Accrued Liability Fund* are "other moneys" the disposition of which is specifically

8        provided for in this Article, and these moneys will not be credited to the *Income*

9        *Fund.* The interest, dividends and other income derived from the investment of the

10       Funding Proceeds deposited in any *Accrued Liability Fund* will not be credited to any

11       Funds other than the *Pension Accumulation Fund.*

12   (3)   Upon the creation of the *Accrued Liability Fund* and the deposit of the Funding

13       Proceeds into the applicable *Accrued Liability Fund,* there shall be established a

14       schedule for transferring assets of the *Accrued Liability Fund* by crediting them to

15       the *Pension Accumulation Fund* on a regular basis over the period required to fully

16       amortize that portion of the System's UAAL determined as of the applicable

17       Determination Date.

18           The System's UAAL determined as of the applicable Determination Date

19       shall be the "Determined Accrued Liability." The period over which the Determined

20       Accrued Liability is to be fully amortized, as specified in the System's actuarial

21       valuation as of the applicable Determination Date, is the "Amortizing Period." The

22       amount to be transferred each fiscal year (or monthly portion thereof) to the *Pension*

16

1  *Accumulation Fund* from the *Accrued Liability Fund* is the "Scheduled Amortizing

2  Amount."

3        With respect to the Pension Funding Transaction and any Additional Pension

4  Funding Transactions, the Scheduled Amortizing Amount will equal a level

5  percentage of the City's monthly payroll during the fiscal year, as determined by the

6  City's weekly payroll reports made available to the Board. The level percentage of the

7  City's monthly payroll that will be used to determine the Scheduled Amortizing

8  Amount will be a level percentage that is equal to the level percentage that is

9  specified in the actuarial valuation as of the applicable Determination Date as being

10  the percentage of the City's monthly payroll required to amortize the Determined

11  Accrued Liability over the Amortizing Period multiplied by a fraction. The numerator

12  of the fraction shall be the amount of the applicable Funding Proceeds up to the full

13  amount of the Determined Accrued Liability as of the Determination Date. The

14  denominator of the fraction shall be the System's Determined Accrued Liability on

15  that date.

16        *Commentary:* By way of example only, the Scheduled Amortizing Amount

17  would be determined as follows: (1) the Determination Date is June 30, 2004; (2) the

18  Funding Proceeds are deposited into the System during the 2004-2005 Fiscal Year,

19  (3) the June 30, 2004 actuarial valuation produced a UAAL of $800 million, (4) the

20  City's contribution required to amortize that UAAL is 16% of the City's payroll, and

21  (5) the Funding Proceeds are $600 million, then the Scheduled Amortizing Amount

22  for Fiscal Year 2005-06 would be 16% times ($600 million/$800 million) times the

17

| | |
|---|---|
| 1 | City's payroll for 2005-2006. This would be 12% times the City's payroll for that |
| 2 | fiscal year. |
| 3 | With respect to the Pension Funding Transaction, or any Additional Pension |
| 4 | Funding Transactions, where the applicable Determination Date occurs after the date |
| 5 | of the actuarial valuation that determines the City's contribution for the fiscal year |
| 6 | during which the applicable Funding Proceeds are deposited into the System, for such |
| 7 | fiscal year, there will be transferred from the applicable *Accrued Liability Fund* to |
| 8 | the *Pension Accumulation Fund* an amount that is specified in such actuarial |
| 9 | valuation as being the City's required contribution needed to amortize the System's |
| 10 | UAAL as of the date of such actuarial valuation, multiplied by a fraction. The |
| 11 | numerator of the fraction shall be the amount of the applicable Funding Proceeds up |
| 12 | to the full amount of the UAAL specified in such actuarial valuation, and the |
| 13 | denominator of the fraction shall be the System's total UAAL as set forth in that same |
| 14 | actuarial valuation. |
| 15 | *Commentary*: By way of example only, the Scheduled Amortizing Amount |
| 16 | in this case would be determined as follows: (1) the Determination Date is June 30, |
| 17 | 2004, (2) the Funding Proceeds had been deposited into the System during the 2004- |
| 18 | 2005 Fiscal Year, (3) the June 30, 2003 actuarial valuation produced a UAAL of |
| 19 | $733 million, (4) the City's contribution required to amortize that UAAL is 13.9% |
| 20 | of the City's payroll, and (5) the Funding Proceeds are $600 million, then the |
| 21 | Scheduled Amortizing Amount for Fiscal Year 2004-05 would be 13.9% times ($600 |
| 22 | million/$733 million) times the City's payroll for 2004-2005. This would be 11.4% |

18

| 1 | times the City's payroll for that fiscal year. |
| 2 | Should the Board at some future time adopt a different period for amortizing |
| 3 | the System's UAAL (a "Revised Amortizing Period"), the Scheduled Amortizing |
| 4 | Amount for ensuring years may change. If the Revised Amortizing Period provides |
| 5 | for a longer period during which to amortize the System's UAAL (*i.e.* that is, an |
| 6 | "Extended Amortizing Period"), then the Amortizing Period initially used to |
| 7 | amortize the applicable Determined Accrued Liability will also be revised. There |
| 8 | will then be established a new schedule for amortizing the Determined Accrued |
| 9 | Liability, and the Scheduled Amortizing Amount will be based on the level |
| 10 | percentage of the City's monthly payroll being equal to what it would be if the then |
| 11 | unamortized balance of the Determined Accrued Liability were re-amortized over the |
| 12 | Extended Amortizing Period. If the Revised Amortizing Period is changed so that |
| 13 | the System's UAAL is to be amortized over a shorter period than the one initially |
| 14 | used to amortize the applicable Determined Accrued Liability, then that Scheduled |
| 15 | Amortizing Amount will not be changed. |
| 16 | (4) Each year (or monthly portion thereof), when the City is required to make its regular |
| 17 | contribution to the System — the amount of which is to be determined pursuant to |
| 18 | Subsection (c) and the timing of which is set forth in Section 47-2-19(b) of this Code |
| 19 | — the Board will transfer the Scheduled Amortizing Amount from the *Accrued* |
| 20 | *Liability Fund* and credit it to the *Pension Accumulation Fund;* provided, however, |
| 21 | that this transfer cannot occur unless and the until the Board has been notified |
| 22 | pursuant to the Pension Funding Transaction, or any Additional Pension Funding |

19

| | | |
|---|---|---|
| 1 | | Transaction, if applicable, that the City is current on the service payments required |
| 2 | | under the applicable Pension Funding Transaction. |
| 3 | (5) | Should the Scheduled Amortizing Amount not be available for transfer because of |
| 4 | | the City's failure to make a timely service payment pursuant to the applicable |
| 5 | | Pension Funding Transaction, the Board will take any permitted action, including the |
| 6 | | filing of a civil action against the City, as contemplated in Section 47-4-3(3) of this |
| 7 | | Code, to effectuate the transfer of the Scheduled Amortizing Amount. |
| 8 | | Should the City's Finance Director certify to the Board by a duly attested |
| 9 | | notice that the City has no available funds to make the service payments required by |
| 10 | | the applicable Pension Funding Transaction, in that specific circumstance, the Board |
| 11 | | shall be authorized to transfer the Scheduled Amortizing Amount for that fiscal year |
| 12 | | (or monthly portion thereof) to the *Pension Accumulation Fund,* absent the notice |
| 13 | | requirement set forth in Section 47-2-18(d)(4) of this Code. |
| 14 | (6) | Since the Funding Proceeds are to be considered assets of the System and are |
| 15 | | intended to fund the applicable Determined Accrued Liability, the City shall be |
| 16 | | required to make only a proportional contribution for any fiscal year (or monthly |
| 17 | | portion thereof) ending after the date the Funding Proceeds are deposited into the |
| 18 | | applicable Accrued Liability Fund, but prior to a fiscal year whose corresponding |
| 19 | | actuarial valuation includes the Funding Proceeds in the System's total assets. The |
| 20 | | proportional contribution to fund the System's then existing UAAL, if any, shall be |
| 21 | | the level percentage of the City's payroll specified in the actuarial valuation for the |
| 22 | | applicable fiscal year as the City's required contribution needed to amortize the |

20

System's then existing UAAL, multiplied by a fraction. The numerator of the fraction shall be the amount of the System's total UAAL as determined in such actuarial valuation minus the amount of the applicable Funding Proceeds, but not less than zero. The denominator of the fraction shall be the amount of the System's total UAAL in such valuation. Actuarial valuations following the deposit of the applicable Funding Proceeds into the System shall include the Funding Proceeds in the total assets of the System to determine any ensuing UAAL of the System, and the Funding Proceeds shall offset any such actuarial liability accordingly.

*Commentary*: By way of example only, the following indicates how the procedure described above would operate. Assume the following facts -- (1) the Determination Date is June 30, 2004; (2) the June 30, 2004 actuarial valuation produced a UAAL of $800 million and a contribution toward the UAAL of 16% of the City's payroll; (3) the Funding Proceeds were $600 million and were deposited in the System during the 2004-2005 Fiscal Year; (4) the first actuarial valuation which included the Funding Proceeds in the System's assets was as of June 30, 2005 and (5) the June 30, 2003 valuation which determines the City's required contribution for fiscal 2004-05 produced a total UAAL of $733 million and a contribution toward that UAAL of 13.9% of the City's payroll. Then:

- The fiscal year ending after the date of deposit would be the year ending June 30, 2005, or the 2004-2005 Fiscal Year.
- The first fiscal year whose corresponding valuation reflected the Funding Proceeds in its assets would be the 2006-2007 year.

21

1      •    Thus, the City's required UAAL contribution for fiscal 2004-2005 would be

2            13.9% of the City's payroll times ($733 million -- $600 million) divided by

3            $733 million, or 2.5% of payroll. The City's required UAAL contribution for

4            fiscal 2005-06 would be 16% of the City's payroll times ($800 million --

5            $600 million) divided by $800 million, or 4% of the City's payroll.

6      •    Beginning with the Fiscal Year 2006-2007, whose contribution is determined

7            by the June 30, 2005 actuarial valuation, the City's required UAAL

8            contribution would be the percentage of its payroll developed in the

9            corresponding actuarial valuation that included the Funding Proceeds as

10            being part of the System's assets.

11 Any contribution the City has made to the System for any fiscal year during which

12 the Funding Proceeds from any applicable Pension Funding Transaction have become

13 assets of the System. Where the amount of the contribution is equal to or less than

14 the normal cost of that fiscal year, the City's contribution shall be deemed to have

15 been made in satisfaction of its obligation to contribute an amount equal to the

16 System's normal cost for that fiscal year, and not as payment towards any portion of

17 its obligation to pay an amortized portion of the System's UAAL due in that fiscal

18 year. The term "normal cost" as used in this Section 47-2-18(d)(6) of this Code, shall

19 be given its generally accepted actuarial meaning.

20       To the extent the City's contribution for that fiscal year exceeds its required

21 contribution for normal cost owed in that fiscal year, its excess contributions shall be

22 deemed as having been made for the immediately following fiscal year, and shall

22

| 1 | offset the City's normal cost contribution obligation for the immediately following |
| 2 | fiscal year. |

3    *Commentary*: By way of example only, the following indicates how the

4    procedure described in the preceding paragraphs would operate. Assuming the same

5    facts as in the prior *Commentary,* and the City contributed $40 million for the 2004-

6    2005 Fiscal Year and the total normal cost for that year was $40 million:

7    •    The entire $40 million would be deemed as payment of the required normal

8         cost for 2004-2005, and

9    •    No part of the $40 million contribution would be deemed payment toward

10        UAAL.

11   Now assume that the facts remain the same, but that the City had contributed a total

12   of $45 million for 2004-2005:

13   •    The City's total required contribution for 2004-2005 would be deemed paid

14        in full, and

15   •    $5 million, i.e. that is, $45 million minus $40 million, would be deemed

16        prepayment of the City's required normal cost for 2005-2006 and its required

17        normal cost contribution for 2005-2006 would be reduced accordingly.

18   (7)   The System's auditor shall verify (a) the assets credited to the *Pension Accumulation*

19        *Fund* and any *Accrued Liability Fund* at the beginning and end of each fiscal year,

20        (b) that each Fund had been properly credited, and (c) that transfers from the *Accrued*

21        *Liability Fund(s)* to the *Pension Accumulation Fund* had occurred as intended under

22        this Section 47-2-18(d) of this Code.

23

1.    (8)    Should the System's auditor certify that the total assets then existing in the System,

2    not including the assets in any *Accrued Liability Fund,* together are insufficient to

3    pay the benefits then due under the System, the System's auditor will then determine

4    and certify the minimum amount needed to fund the benefits then due and owing (the

5    "Minimum Necessary Amount"). In this limited circumstance, the Board is

6    authorized to transfer the Minimum Necessary Amount from the *Accrued Liability*

7    *Fund* to the *Pension Accumulation Fund* absent the notification required pursuant to

8    Section 47-2-18(d)(4) of this Code.

9    (9)    At the end of the Amortizing Period, or the end of the Extended Amortizing Period,

10    · if applicable, should there be any moneys that remain credited to the *Accrued*

11    *Liability Fund,* the Board may transfer, at its discretion, any such remaining moneys,

12    in whole or in part, by crediting them to the *Pension Accumulation Fund.* The

13    *Pension Accumulation Fund* is the only Fund into which the remaining moneys

14    credited to any *Accrued Liability Fund* may be transferred.

15    (e) *Pension Reserve Fund.* ~~132~~ [133] The *Pension Reserve Fund* shall be the fund from which

16    pensions shall be paid to beneficiaries. Should a Disability Retiree be reinstated to active service,

17    the Retiree's pension reserve at that time, shall be transferred from the *Pension Reserve Fund* to the

18    *Pension Accumulation Fund.*

19    (f) *Expense Fund.* ~~133~~ [134] The *Expense Fund* shall be the fund to which shall be credited all

20    money provided by the City to pay the administrative expenses of the Retirement System, and from

---

[133] 1918 Detroit City Charter, T.9, C. VI, A. 7, §4.

[134] 1918 Detroit City Charter, T.9, C. VI, A. 7, §5.

24

1   which shall be paid all the expenses necessary in connection with the administration and operation

2   of the System.

3         (g) *Income Fund.*[135]   The *Income Fund* shall be the Fund to which shall be credited all

4   interest, dividends, and other income derived from the investments of the System (other than those

5   derived from the investments credited to any *Accrued Liability Fund*), all gifts and bequests received

6   by the System, and all other moneys the disposition of which is not specifically provided for in this

7   Article.   There shall be paid or transferred from the *Income Fund,* all amounts required to credit

8   Regular Interest to the various Funds of the Retirement System, except for the *Accrued Liability*

9   *Fund* which is to be credited with interest, dividends and other earnings pursuant to Section 47-2-

10  18(d)(2) of this Code in accordance with the limitations that are contained in Section 47-1-18 of this

11  Code. ~~Whenever the balance of the *Income Fund* is more than sufficient to cover current charges~~

12  ~~to the fund, such excess amount may be used for contingency reserves or may be transferred to any~~

13  ~~of the other Charter-created funds of the Retirement System within this *Article II* except the *Expense*~~

14  ~~*Fund,* to cover special needs of the Funds as the Board shall determine; provided, however, that in~~

15  ~~determining whether the balance of the *Income Fund* is more than sufficient to cover current charges~~

16  ~~to the Fund, the balance credited to any *Accrued Liability Fund* shall not be taken into account. In~~

17  ~~the event the balance in the Income Fund is insufficient to cover the charges to the Fund, the amount~~

18  ~~of the insufficiency shall be transferred from the *Pension Accumulation Fund* to the *Income Fund.*~~

19        (h) *Maintenance of Reserves.*[136]

20        (1)    The maintenance of proper reserves in the various Charter-based funds of the

---

[135]  1918 Detroit City Charter, T.9, C. VI, A. 7, §6.

[136]  1918 Detroit City Charter, T.9, C. VI, A. 7, §7.

25

1    Retirement System within this *Article II* except the *Expense Fund* are hereby made

2    obligations of the *Pension Accumulation Fund.*

3    (2)    City contributions to the Retirement System to the extent necessary to provide

4    pensions on account of members who are employees of a revenue-supported division

5    of the City shall be made from the revenues of the said division. Any City

6    contribution to the Retirement System from any Fund by law with a certain and

7    definite purpose shall at the direction of the Finance Director, be accounted for

8    separately.

9    Section 2.  All ordinances, parts of ordinances, that conflict with this ordinance are repealed.

10    Section 3.  This ordinance is declared necessary to preserve the public peace, health, safety,

11    and welfare of the People of the City of Detroit.

12    Section 4.  In the event that this ordinance is passed by a two-thirds (2/3) majority of the City

13    Council Members serving, it shall be given immediate effect and become effective upon publication

14    in accordance with Section 4-116 of the 1997 Detroit City Charter.  In the event that this ordinance

15    is passed by a less than two-thirds (2/3) majority of the City Council Members serving, it shall

16    become effective no later than thirty (30) days after enactment in accordance with Section 4-115 of

17    the 1997 Detroit City Charter.

18

19    Approved as to form:

20

21    *[signature]*

22    Krystal A. Crittendon

23    Corporation Counsel        DAM

26