UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE:  CITY OF DETROIT,        .       Docket No. 13-53846
        MICHIGAN,               .
                                .       Detroit, Michigan
                                .       November 10, 2014
                     Debtor.    .       12:00 p.m.
. . . . . . . . . . . . . . . .

        HEARING RE. FORM OF ORDER OF CONFIRMATION AND STATUS
        CONFERENCE RE. EIGHTH AMENDED CHAPTER 9 PLAN FOR THE
        ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT FILED BY
          DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN
             BEFORE THE HONORABLE STEVEN W. RHODES
             UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:         Jones Day
                        By:  HEATHER LENNOX
                        222 East 41st Street
                        New York, NY  10017
                        (212) 326-3837

                        Jones Day
                        By:  JEFFREY B. ELLMAN
                        1420 Peachtree Street, N.E., Suite 800
                        Atlanta, GA  30309
                        (404) 521-3939

                        City of Detroit Law Department
                        By:  CHARLES RAIMI
                             MELVIN BUTCH HOLLOWELL
                        2 Woodward Avenue, Suite 500
                        Detroit, MI  48226
                        (313) 237-5037

                        Foley & Lardner
                        By:  JOHN SIMON
                        500 Woodward Avenue, Suite 2700
                        Detroit, MI  48226
                        (313) 234-7117

For Financial           Weil, Gotshal & Manges, LLP
Guaranty Insurance      By:  ALFREDO PEREZ
Company:                700 Louisiana, Suite 1600
                        Houston, TX  77002
                        (713) 546-5040

APPEARANCES (continued):

```
For the Detroit        Clark Hill, PLC
Retirement             By:  ROBERT D. GORDON
Systems:               151 South Old Woodward Avenue, Suite 200
                       Birmingham, MI  48009
                       (248) 988-5882

                       Clark Hill, PLC
                       By:  RONALD A. KING
                       212 East Grand River Avenue
                       Lansing, MI  48906
                       (517) 318-3015

For the Detroit        Legghio & Israel, PC
Fire Fighters          By:  CHRISTOPHER LEGGHIO
Association:           306 South Washington, Suite 600
                       Royal Oak, MI  48067
                       (248) 398-5900

For the Official       Dentons US, LLP
Committee of           By:  CLAUDE D. MONTGOMERY
Retirees:              1221 Avenue of the Americas, 25th Floor
                       New York, NY  10020-1089
                       (212) 632-8390

For the State of       Dickinson Wright
Michigan:              By:  STEVEN HOWELL
                       500 Woodward Avenue, Suite 4000
                       Detroit, MI  48226-3245
                       (313) 223-3033

For the Detroit        Erman, Teicher, Zucker &
Police Officers          Freedman, P.C.
Association:           By:  BARBARA A. PATEK
                       400 Galleria Officentre, Suite 444
                       Southfield, MI 48034
                       (248) 827-4100

For Detroit Retired    Lippitt O'Keefe, PLLC
City Employees         By:  RYAN C. PLECHA
Association,           370 East Maple Road, 3rd Floor
Retired Detroit        Birmingham, MI  48009
Police and Fire        (248) 723-6263
Fighters Associa-
tion, Shirley V.
Lightsey, and
Donald Taylor:
```

APPEARANCES (continued):

For T&T Management,    Demorest Law Firm, LLP
HRT Enterprises,       By:  LISA OKASINSKI
and the John and       322 West Lincoln Avenue, Suite 300
Vivian Dennis          Royal Oak, MI  48067
Trust:                 (248) 723-5500

For John P. Quinn:     JOHN P. QUINN
                       2003 Military Street
                       Detroit, MI  48209

For AFSCME:            Lowenstein Sandler, LLP
                       By:  SHARON L. LEVINE
                       65 Livingston Avenue
                       Roseland, NJ  07068
                       (973) 597-2374

Also Present:          ROBERT M. FISHMAN, Fee Examiner
                       Shaw Fishman
                       321 North Clark Street
                       Chicago, IL  60654
                       (312) 541-0151

Court Recorder:        Letrice Calloway
                       United States Bankruptcy Court
                       211 West Fort Street, 21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1    THE CLERK:  All rise.  Court is in session.  Please

2  be seated.  Case Number 13-53846, City of Detroit, Michigan.

3    THE COURT:  Good afternoon.  One moment, please.

4  Okay.  We have several matters on our agenda for this

5  afternoon.  If it's okay with you, I would actually like to

6  begin with the fee review process rather than the order of

7  confirmation --

8    MS. LENNOX:  Certainly, your Honor.

9    THE COURT:  -- because Mr. Fishman is on the line,

10  and so I want to get him taken care of first.  Mr. Fishman,

11  are you on the line?

12    MR. FISHMAN:  Yes, your Honor.  I'm here.

13    THE COURT:  Okay.  I have actually created a draft

14  of an order.  Can we distribute that to everyone, please?  We

15  only have a certain number of copies, so please share, if

16  necessary.  So, like I say, please share.  So I'd like to

17  walk through this with you and get your comments about it.

18  Okay?  So my understanding is that for services through June

19  of this year, the fee statements of all of the professionals

20  whose fees are subject to this process are attached to what

21  Mr. Fishman filed, so those are already accessible to whoever

22  is interested in them, so that's paragraph 1.  Paragraph 2

23  submits the issues to mediation.  Have a seat, sir.  I'll get

24  your comments when we're done going through the process.

25    MR. RAIMI:  Very well.  Thank you.

1          THE COURT:  Paragraph 2 submits all issues regarding

2    disclosure and reasonableness of the fees to mediation.

3    Paragraph 3 requires anyone who intends to file an objection

4    to disclosure or reasonableness to notify the mediator and

5    the fee examiner in a private written communication by the

6    close of business -- I guess this is Thursday, and it further

7    provides that the failure to do so will be deemed a waiver of

8    any objection under 943(b)(3).  And then paragraph 4 requires

9    participation in the mediation in good faith or there is a

10   deemed waiver.  Paragraph 5 is the one we may have to talk

11   about.  It requires all final fee statements to be submitted

12   to the fee examiner by December 1st.  I put that date in

13   there just so you'll be contemplating it because of the

14   schedule of the mediation.  Paragraph 6 then opens up

15   objections to fees for public filing on December 15th to

16   allow mediation an opportunity to address any issues, and

17   then it actually sets a deadline for objections to fees and

18   briefs on the waiver issue that I pointed out the other day

19   of a week later, December 22nd, so there's that seven-day

20   window within which to file objections and then a deadline to

21   file responses and a hearing date.  The draft would also

22   provide for no discovery except upon motion establishing good

23   cause and that the Court's previous order of October 31st of

24   this year is still in effect.  Okay.  So now, please, your

25   comments regarding this.

1      MS. LENNOX:  So a couple of questions and a couple

2  of initial thoughts, your Honor.  So we are assuming, but

3  perhaps we should not be assuming, that the process that the

4  Court put in place with respect to the fee examiner at the

5  beginning of this case -- is that continuing in process from

6  and after a certain date, or how did your Honor think that

7  that would be integrated into this?

8      THE COURT:  Well, it wasn't clear exactly how to do

9  that --

10      MS. LENNOX:  Right.

11      THE COURT:  -- and the mediation process --

12      MS. LENNOX:  Um-hmm.

13      THE COURT:  -- in the schedule that Judge Rosen set.

14      MS. LENNOX:  Um-hmm.

15      THE COURT:  And that may be something that Mr.

16  Fishman and Judge Rosen and I have to work out, but --

17      MS. LENNOX:  Okay.

18      THE COURT:  -- if the mediation is going to be on

19  the dates he set --

20      MS. LENNOX:  Um-hmm.

21      THE COURT:  -- I don't really know what else to do

22  than this.

23      MS. LENNOX:  Um-hmm.  Okay.

24      THE COURT:  How big of a problem is it?

25      MS. LENNOX:  It's not -- well, normally that

1  process, the way it's set up, lags for several months, and so
2  if that lag is going to continue, then that could make an
3  abbreviated process, which, frankly, we think makes sense at
4  this point, a little more problematic.  I think that -- well,
5  certainly Mr. Fishman has been through everything through
6  June, which is substantial, almost a year's worth of time,
7  and I think he's beginning -- I think we've just received
8  initial comments on July, so -- but I think it would be a
9  pretty extraordinary amount of work for him to try to play
10  catch-up in a couple of weeks.
11          THE COURT:  Mr. Fishman, is there anything you'd
12  like to share with us on this question?
13          MR. FISHMAN:  Well, I think it would be --
14          THE COURT:  Can you make him louder, please?
15          MR. FISHMAN:  -- impossible -- I think it would be
16  impossible for me to go through the existing process in time
17  for a December 3rd mediation.  The amount of paper that would
18  have to be reviewed simply is implausible.  Whether we
19  continue with the detailed review process after the mediation
20  or not I suppose is an open question.  There's certainly a
21  lot that I can do that is not as extensive as the current
22  process between now and December 3rd if all of those invoices
23  are submitted to me so that I see them in time to do that.
24  The December 1st deadline, of course, leaves me basically a
25  day and a half to review whatever comes in at the end, but

1   the time lags set in the original orders, we've all been

2   adhering to them, and, unfortunately, that's a 90-day period.

3   We can go a little faster but not fast enough to be all done

4   by December 3rd.

5           THE COURT:  All right.  Then because this whole

6   schedule hinges on the mediation, Mr. Fishman, it strikes me

7   that you and I and he ought to have a conversation about

8   how -- excuse me -- how realistic it is to go to mediation

9   that promptly, as much as I would like it.

10          MR. FISHMAN:  I don't disagree with you.

11          THE COURT:  Okay.  Any other comments about the

12  order other than the pacing of it?

13          MS. LENNOX:  Right.  I would encourage -- well, with

14  respect to the mediation and the timing of that and with

15  respect to the last colloquy you had with Mr. Fishman, I

16  think it's really imperative, given that what we're dealing

17  with here is kind of a confirmation standard that the

18  emergency manager needs to be involved in, that the timetable

19  that's set for that mediation probably stay as is, so maybe

20  there's a way to deal with things that have occurred up to

21  that point and a way to deal with fees that have occurred

22  after that point, but --

23          THE COURT:  Normally the goal of mediation is to

24  settle --

25          MS. LENNOX:  Which would be certainly our goal, your

1   Honor.

2           THE COURT:  -- all of the issues, not leave anything

3   open and lingering.

4           MS. LENNOX:  Certainly would be our goal in that,

5   your Honor, too, but given that this is sort of a necessary

6   prerequisite, we think, to the effective date, we don't want

7   to leave that hanging for a long period of time.  We think

8   the time frame that it's in right now is probably

9   appropriate.  And related to that, your Honor, is a question

10  on number five, final fee statements due December 1st.  We

11  can probably have actuals through the end of October

12  submitted by that date, and we could probably do our best

13  estimate of estimateds through November on that date or

14  maybe -- and even estimateds through December if that's

15  necessary, but I think the last couple of months are probably

16  going to have to be estimated with maybe true-ups later on if

17  that's the way people want to do that just simply because

18  mechanically there's just not going to be enough time to sort

19  of spit those bills out.

20          THE COURT:  Well, under the Code and your plan and

21  my ruling, the review is for fees through the effective date.

22          MS. LENNOX:  Correct.

23          THE COURT:  And are you still talking about an

24  effective date before Thanksgiving?  I think that's what

25  Mr. Orr indicated the other day.

1       MS. LENNOX:  That is currently our goal, and where

2   our thinking on that is -- again, it's also partially

3   dictated by the mediation schedule, but we think we must go

4   effective by the end of the year because that's a deadline

5   for the foundation funding, which really means, in

6   practicality, the latest date we could possibly go effective

7   is the middle of December because people will disappear in

8   the last two weeks of the year, so we are still -- and we

9   think we could have all the documents done in terms of

10  documenting everything by Thanksgiving.  There are two things

11  that might cause the effective date to slip past

12  Thanksgiving.  One is the mediation schedule.  Two is the

13  city is currently putting together a two-year budget that's

14  required under PA 436 for a final EM order, and so they're

15  reconciling the restructuring budgets to the city budgets,

16  and that's taking a little bit longer than they expected.  I

17  should get a better sense of that early this week, but it

18  shouldn't delay too much.

19      THE COURT:  Well, on the first point, is it your

20  thought that resolution of all of these fee issues is a

21  necessary prerequisite to the effective date?

22      MS. LENNOX:  I think so, your Honor.  It is a

23  confirmation standard.

24      THE COURT:  What's your logic there?

25      MS. LENNOX:  I'm sorry.

1          THE COURT:  What's your rationale there?

2          MS. LENNOX:  Well, there's a couple of things.  One,

3     it is a confirmation standard.  I mean this isn't a normal

4     Chapter 11 process where this process is divorced from

5     confirmation.  In fact, this is the only place it comes up,

6     so in order to go effective, I understand we can have a

7     process after, but generally this -- we need to have some

8     resolution to at least the vast majority of these things.

9          Secondly and as a practical matter, in the agreement

10    which we filed with the Court for the transition from an EM

11    to regular city government, there has been an agreement

12    between the state, the city, and the emergency manager's

13    office that the emergency manager continues to have sort of

14    the exclusive purview over restructuring related matters, and

15    this, of course, is one of them.  So once we go effective,

16    the emergency manager, under that agreement, goes away, and

17    so our oversight or person responsible for this part of the

18    plan goes away, so there are a lot of --

19         THE COURT:  Well, this is confusing because, on the

20    one hand, you're asking for more time to get your final fees

21    in --

22         MS. LENNOX:  We can do -- we can certainly do

23    estimateds.

24         THE COURT:  -- and, on the other hand, you're asking

25    me to resolve the fee issue by the end of the year.

1    MS. LENNOX:  Well, we can certainly -- like I said,

2 if we're talking about the month of November, we can

3 certainly pull time off system and issue kind of a raw bill.

4 I mean normally when we submit things to the fee examiner, we

5 go through things.  We make sure people have categorized them

6 correctly.  We look at Mr. Fishman's guidelines and make sure

7 we've complied with that, so that requires a review process.

8 We can certainly pull an estimated and get that.  It would be

9 in much I would say rawer form than Mr. Fishman would

10 normally be accustomed to seeing.

11    THE COURT:  Well, if you want a decision on fees,

12 whether by litigation or mediation, by the end of the year,

13 it feels like you're going to have to do that, doesn't it?

14    MS. LENNOX:  Okay.  We can certainly -- we can

15 certainly do that, and then we can estimate -- if it looks at

16 that time like things might be moving into early December for

17 effective date, then we'll estimate that as well.

18    With respect to -- I had some questions, your Honor,

19 about what you were thinking in number three with respect to

20 any parties.  It seems to me, your Honor, that, again, as we

21 just indicated, that this is sort of a confirmation standard

22 that we're talking about, not a normal fee application

23 process that you'd see in Chapter 11, and so if this issue

24 were to be raised and people were to have objected, they

25 should have done it in the context of confirmation.

1     THE COURT:  I'm concerned about that.

2     MS. LENNOX:  I am as well, and so it would be

3 certainly unwieldy if all of a sudden we have people who did

4 not object to confirmation and yet we have 50 extra parties

5 who want to participate in this mediation process.  It sort

6 of seems to be a little backwards in terms of timing.  It

7 would seem to me that the appropriate people would be

8 certainly Mr. Fishman, city representatives, emergency

9 manager representatives, and then -- I mean ultimately your

10 Honor will see whatever comes out of that, but I think those

11 are the appropriate parties at this stage of the game.

12     THE COURT:  So you're saying that I should hold that

13 they have waived their objections if they haven't filed them

14 already without giving them a chance to be heard on that

15 question?

16     MS. LENNOX:  Well, they can be heard, but it seems

17 like they're being heard after they're already participating

18 in mediation.  That seems to have that sort of backwards.

19     THE COURT:  My thought was that it would be most

20 efficient to deal with the objections that anyone may have in

21 the mediation context whether they have waived the issue or

22 not.

23     MS. LENNOX:  Well, your Honor, I would suggest that,

24 one, that could open the door for an exceedingly unwieldy

25 mediation process depending on how many people think that

1  they now have a right to say something that they should have

2  said six months ago and did not, and it seems to me that if

3  they've waived, they've waived.

4     THE COURT:  Suppose mediation is limited in the way

5  you suggest and the mediation is successful and everyone

6  agrees on what the fees are that are reasonable.  The Court

7  would hold a hearing on that and make its own independent

8  determination of that.

9     MS. LENNOX:  Of course.

10    THE COURT:  At that hearing, would I have to --

11 would I have to hear from parties who did not participate in

12 the mediation, "A," on whether they, indeed, have waived and,

13 "B," on what their objections are?

14    MS. LENNOX:  I think that whether folks have a right

15 to be heard on this issue should be heard sooner -- I mean we

16 don't want to go through the process twice, to your point.  I

17 completely agree with that.  So I think this is an issue that

18 if your Honor thinks there might be some reasoning under

19 which people haven't waived this as an objection to

20 confirmation standards, we might want to figure that out

21 sooner rather than later.

22    THE COURT:  Nothing strikes me, but that doesn't

23 justify denying their due process rights to be heard.  They

24 could come up with something that I haven't thought of, so I

25 don't know.

1          MS. LENNOX:  Well, exactly.

2          THE COURT:  But if I hear you correctly, you're

3     suggesting that I resolve the waiver issue before mediation?

4          MS. LENNOX:  It would seem to me that that would

5     be --

6          THE COURT:  Talk about that.

7          MS. LENNOX:  -- the logical way to do it, although I

8     certainly understand why it would be better to -- or I

9     understand why your Honor proposed the procedure that you

10    did, so it's just -- it's kind of a threshold issue, so, you

11    know, we'll certainly be guided by the Court on that.  I just

12    wanted to throw that out for consideration.

13         THE COURT:  Can I consult with Judge Rosen on how

14    unwieldy he thinks it will be to invite the world to his

15    party instead of resolving the waiver issue first?

16         MS. LENNOX:  I certainly have no objection to your

17    consulting with the mediator.

18         THE COURT:  Mr. Fishman, do you have a thought on

19    whether it would advance the efficiency of the mediation to

20    resolve the waiver issue before we dive into mediation?

21         MR. FISHMAN:  Well, your Honor, I really don't have

22    a sense of how many people we would be maybe adding to the

23    mix.  Having engaged in plenty of mediations, I'm already

24    envisioning this one as being a particularly complicated one

25    with a lot of arms and legs.  I don't know how many other

1  people to expect and what kinds of objections they would be

2  raising to know if we would be going off in all kinds of

3  crazy directions or simply having more people making the

4  exact same points, which maybe makes it not that big of a

5  deal.  Maybe the time to --

6          THE COURT:  Well, but it's not --

7          MR. FISHMAN:  --  resolve this issue is --

8          THE COURT:  It's not as simple --

9          MR. FISHMAN:  -- after the 13th when you know who's

10 going to -- who thinks they're raising an objection.

11         THE COURT:  It's not as simple as many of the same

12 people raising the same points because everyone who is in

13 mediation adds to the complexity of a successful mediation.

14         MR. FISHMAN:  I certainly can't disagree with that.

15 I'm wondering if --

16         THE COURT:  I mean I think it's readily foreseeable

17 here that people will have a whole host of agendas, and they

18 may not all be compatible or consistent on that.  All right.

19 Well, let me --

20         MR. FISHMAN:  I agree that's a possibility, and I'm

21 probably in the worst position of anybody to guess --

22         THE COURT:  Okay.

23         MR. FISHMAN:  -- who will be raising issues and what

24 those issues will be.

25         THE COURT:  All right.  Did you have any other

1  comments?

2       MS. LENNOX:  Just a technical one, your Honor, and,

3  again, it relates to paragraph 3.  Whoever is participating

4  in these mediations has to give notice to the mediators of

5  who and what they object to.  I'm assuming -- it doesn't say,

6  but I'm assuming that the relevant professionals will then

7  get notified of that as well.

8       THE COURT:  Well, I want to leave all of that to the

9  mediation process, which Judge Rosen will supervise.

10       MS. LENNOX:  I meant in mediation.  I mean just so

11  we can be prepared to address it.

12       THE COURT:  Like I say, I mean this only requires

13  people to identify which fees they want to object to, not --

14       MS. LENNOX:  Right.

15       THE COURT:  -- the grounds.  I want to leave -- I

16  want to leave the issue of how that gets sorted out to Judge

17  Rosen.

18       MS. LENNOX:  Okay.  Understood, your Honor.

19       THE COURT:  It's not for me to dictate his process.

20       MS. LENNOX:  Okay.

21       THE COURT:  All right.  Thank you.

22       MS. LENNOX:  Thank you.

23       THE COURT:  Who else wants to be heard?  I know you

24  did, sir.  Go ahead.

25       MR. RAIMI:  Thank you, your Honor.  Charles Raimi.

1   I'm the deputy corporation counsel for the City of Detroit.

2   The corporation counsel, Mr. Hollowell, is present with me.

3   We had a couple concerns.  The first is on the timing.  I

4   have spent considerable time in the last week or ten days

5   taking a look at the fee statements we have, and they're

6   extremely voluminous.  They're very, very large.  Each one is

7   about a telephone book.  And I'm coming into this not having

8   participated in the bankruptcy, and I'm going to be working

9   with outside counsel, but it's going to be almost an

10  inconceivable task to be ready for litigation sometime in

11  December.  I mean even January is very, very soon.  And as I

12  understood it, my understanding from -- on this issue was

13  that as long as the Court had a plan and a procedure to

14  resolve the reasonableness of fees, that could be done post-

15  confirmation, post the effective date.  And we certainly

16  don't want to --

17          THE COURT:  This is just so interesting because here

18  we have two different lawyers for the City of Detroit --

19          MR. RAIMI:  Yes.

20          THE COURT:  -- taking opposite views.

21          MR. RAIMI:  Yes.

22          THE COURT:  How do I -- how do I possibly reconcile

23  that?

24          MR. RAIMI:  I think you should do what you believe

25  is fair and just, and I think the mayor is the one that is

1  going to have the task of actually successfully implementing

2  this plan after the emergency manager, for whom I have the

3  highest respect and the highest admiration -- after the

4  emergency manager is gone.

5        THE COURT:  Well, but if I hear you correctly, you

6  are saying that the Court can resolve this issue of the

7  reasonableness of fees after the plan goes effective.

8        MR. RAIMI:  That's what I understood was the law,

9  and I haven't researched it.  And if I'm wrong, I'm certainly

10  delighted to be corrected on that, but that would seem

11  logical to me and fair and just.

12        THE COURT:  Ms. Lennox just argued the opposite

13  representing the very same party.

14        MR. RAIMI:  Well, obviously we have the emergency

15  manager, and then we have the mayor.  And they obviously have

16  different views on this issue.

17        THE COURT:  Well, who represents the city for

18  purposes of resolving the fee dispute -- or I shouldn't say

19  the fee dispute because we don't have any yet -- the fee

20  reasonableness element of confirmation?

21        MR. RAIMI:  I would argue, your Honor, that the

22  emergency manager has -- I'm hesitant to speak, frankly, in

23  this forum, but I would argue that there are sound reasons

24  why only -- only the mayor and the corporation counsel can

25  properly advocate the city's position on the fee issue, and

1  I'm delighted to go into detail if your Honor wants, but I'm

2  concerned about the forum.

3         THE COURT:  I take it your transition agreement

4  doesn't carve out the issue that concerns you here?

5         MR. RAIMI:  No.  I think the emergency manager's

6  order -- I think Ms. Lennox is correct that under the

7  emergency manager order, the emergency manager retains

8  jurisdiction or retains oversight on the bankruptcy issues,

9  but there's nothing in that order that precludes the mayor

10  from pursuing that issue.  And, further, the charter makes

11  the corporation counsel the official lawyer for the city in

12  all litigation.

13         THE COURT:  Well, except that you have this

14  transition agreement that keeps Mr. Orr in place for

15  bankruptcy purposes.

16         MR. RAIMI:  You're absolutely right, but, again, I

17  believe there are sound reasons, and I'm delighted to pursue

18  those, which preclude --

19         THE COURT:  Well, I'm willing to accept that that's

20  true for purposes of this hearing, but it only raises the

21  question about why this wasn't dealt with in the transition

22  agreement.

23         MR. RAIMI:  Well, I think the transition agreement

24  predated certain events that have really precipitated this

25  dispute coming before the Court.

1          THE COURT:  All right.  Any other comments?

2          MR. RAIMI:  Yes, your Honor.  Paragraph 1, again,

3     going to the difficulty of the task that I have in trying to

4     prepare my arguments for mediation and ultimately, if

5     necessary, for litigation, it's really essential that the

6     city -- or corporation counsel, I should say, obtain

7     searchable copies of the invoices as quickly as possible.

8          THE COURT:  What do you mean by that?

9          MR. RAIMI:  Well, the invoices, as I understand it,

10    can be produced -- and I believe some of the consultants have

11    already done this -- in either a Word format or a searchable

12    PDF format.  If we have to get them off the --

13         THE COURT:  A searchable PDF on the Court's docket?

14         MR. RAIMI:  No, no, no.  And that is an essential

15    thing that we need obviously yesterday.  And the other thing

16    that we need are the contracts.  We're having --

17         THE COURT:  Why do you need searchable?

18         MR. RAIMI:  To do any sort of a -- I mean they're

19    too voluminous to look for certain attorneys, to look for

20    certain subjects.  It makes all the difference to be able to

21    do that in a searchable format so that we can find --

22         THE COURT:  I mean I have to express to you concern

23    here that while we all want to make ultimately a fair

24    judgment about the fees here -- and I want to emphasize

25    that -- there's a reason why we have required quarterly

1   statements all along so that they would have transparency and

2   so that people like the mayor and like corporation counsel

3   could have access to them all along.

4           MR. RAIMI:  Well, again, I get a --

5           THE COURT:  It's a little -- it's a little troubling

6   and hard to understand, frankly, why this issue is just now

7   being raised and asserted in such a way that will result in

8   significant delay here.

9           MR. RAIMI:  Your Honor, I had prepared a document

10  that I was prepared to send to the Court that addressed these

11  issues in some detail.

12          THE COURT:  Yeah.  It addressed why you object.  It

13  didn't address my question.

14          MR. RAIMI:  My original draft did, your Honor, and

15  at the request of counsel --

16          THE COURT:  What does it say?

17          MR. RAIMI:  It says, your Honor, number one, that

18  the fee examiner has cost the City of Detroit far more money

19  than has been saved; that the fee examiner took a view of his

20  role that was so narrow as to be, frankly, meaningless.

21          THE COURT:  And why are you just now bringing this

22  to my attention?  This fee examiner has been in place since

23  almost the beginning of the case.

24          MR. RAIMI:  Because until late September the last

25  information the mayor had was that the total fees would be in

1  the range of $130 million.  It was at that time that the
2  mayor learned that the estimates were wildly off and that the
3  numbers were going to be much more.

4          THE COURT:  So it's not the fee examiner's role that
5  the mayor objects to.  It's the amount of the fees.

6          MR. RAIMI:  Well, the two are interrelated.  The
7  fees --

8          THE COURT:  So he was willing -- he was willing to
9  excuse the inadequacy of the fee examiner's work as long as
10  the fees were 130 but not if they're much more than that?
11  Come on.

12          MR. RAIMI:  Well, no.  We're trying to look in the
13  future and trying to implement a plan of adjustment that, as
14  the Court has noted and the attorneys for Jones Day have
15  noted, is on the edge.  There's a very, very narrow margin
16  for error.  And that additional money, your Honor, could have
17  enormous impact on the city's ability to successfully
18  implement this plan, so, yes, the mayor had every reason to
19  be concerned.

20          THE COURT:  But he hasn't done anything about it
21  until now.

22          MR. RAIMI:  But he just learned --

23          THE COURT:  That's what I'm telling you my concern
24  is.

25          MR. RAIMI:  He just learned about it in late

1   September.  The issue here should be the successful

2   implementation of the plan as I know your Honor has the

3   highest concern for, and that's what the mayor -- long after

4   Mr. Orr leaves, after the lawyers leave, it's going to be the

5   mayor and his team that have to implement this plan.  You're

6   talking about potentially hundreds of police officers, fire

7   fighters, blight, and we have very, very serious and sound

8   reasons for questioning the fees, and we're entitled, I

9   believe, to a fair hearing on that.

10          THE COURT:  All right.  I still didn't quite hear

11  why you need searchable.

12          MR. RAIMI:  Because that's the only way with this

13  volume --

14          THE COURT:  What are you going to search for?

15          MR. RAIMI:  We're going to search for matters,

16  search for attorneys and matters and how much time was spent

17  on certain matters because the way the fee -- the invoices

18  are laid out, it is not easy.  It's almost impossible to

19  determine how much time was spent on a particular matter by

20  various attorneys.

21          THE COURT:  I thought the fee statements were by

22  matter.

23          MR. RAIMI:  In some respects they are, but in some

24  respects they're not.  But, your Honor, I believe everybody

25  has these, and I think some of the consultants have already

1  provided them.  I don't think it's a burden for them to --

2         THE COURT:  It's a matter of time.

3         MR. RAIMI:  Well, it's going to take much more time

4  to try to look through --

5         THE COURT:  Well, but that's your problem.

6         MR. RAIMI:  It is my problem.  It's the mayor's

7  problem.  It's the City of Detroit's problem.  That's

8  correct.

9         THE COURT:  Well, you know, I confirmed this plan.

10  I found it was feasible last Friday; right?

11         MR. RAIMI:  I understand.

12         THE COURT:  And now you're asking me to reconsider

13  it.  I mean what is that?

14         MR. RAIMI:  We're not asking you to reconsider.  You

15  expressly reserved the issue of the fees.

16         THE COURT:  Of the reasonableness of the fees.

17         MR. RAIMI:  The reasonableness of the fees, yes.

18         THE COURT:  And that was based on or included

19  projections that showed what the fees are.

20         MR. RAIMI:  I understand.

21         THE COURT:  I mean I --

22         MR. RAIMI:  But given the narrowness of that margin

23  that everybody has acknowledged, for the city to --

24         THE COURT:  Well, are you arguing to the Court here

25  today, sir, on behalf of the City of Detroit that if the fees

1  come in within the projected amounts in the city's

2  projections that this plan is not feasible?

3        MR. RAIMI:  I'm not saying that, your Honor.  I'm

4  saying the margin --

5        THE COURT:  Then what's the point?  I mean --

6        MR. RAIMI:  Well, the margin is so --

7        THE COURT:  -- why would you be arguing about the

8  infeasibility of this plan except as some sort of political

9  grandstand?

10       MR. RAIMI:  Oh, my goodness.  My goodness, your

11  Honor.

12       THE COURT:  I won't tolerate that, sir.

13       MR. RAIMI:  I'm 63 years old, your Honor.  I've been

14  doing this for --

15       THE COURT:  Sir, it's of no matter to me how old you

16  are, and I assure you I'm older than you are.

17       MR. RAIMI:  But I have never grandstanded for any

18  purpose.

19       THE COURT:  Well, good.

20       MR. RAIMI:  My only interest --

21       THE COURT:  I'm glad to have your commitment that

22  it's not going to happen again.

23       MR. RAIMI:  My only interest, your Honor, is what's

24  best for the City of Detroit.  That's why I joined the city.

25       THE COURT:  Well, then where have you been?

1          MR. RAIMI:  I'm sorry.  I didn't hear.

2          THE COURT:  Where have you been?

3          MR. RAIMI:  I wasn't -- the emergency manager --

4          THE COURT:  Well --

5          MR. RAIMI:  -- tightly controlled that process, your

6 Honor.  Corporation counsel wasn't a part of it.  The mayor

7 wasn't a part of it.

8          THE COURT:  All right.  What other comments do you

9 have about this fee process draft order?

10         MR. RAIMI:  That would be the comments, your Honor.

11         THE COURT:  All right.  So you want searchable and

12 you want more time to do --

13         MR. RAIMI:  That's correct.

14         THE COURT:  -- your work.  All right.

15         MR. RAIMI:  Thank you very much, your Honor.

16         THE COURT:  All right.  Any other comments?  Sir.

17         MR. PEREZ:  Your Honor, Alfredo Perez.  I just want

18 to be heard quickly.  I don't have an interest in the

19 reasonableness of the fees one way or the other.  I do have a

20 keen interest in having the effective date as soon as

21 possible.

22         THE COURT:  What is that interest, sir?

23         MR. PEREZ:  Your Honor, I think that in connection

24 with the confirmation creditors made agreements, and it

25 was -- we all thought that the goal was to try to get the

1  effective date by Thanksgiving realistically.  I think the

2  Court's ruling anticipated that it would try to be done by

3  Thanksgiving.  Creditors are going to get distributions.  I

4  mean there's economic consequences that follow that if we

5  push it to the end of the year --

6          THE COURT:  What do you think of Ms. Lennox's

7  assertion that this fee issue -- or these fee issues should

8  be resolved as a condition of the effective date?

9          MR. PEREZ:  Your Honor, I understood that the Court

10  actually dealt with that in your ruling that to the extent

11  that it was sufficient that you retain the jurisdiction and a

12  process.  That's how I understood your ruling, and I was

13  gratified by that, that we wouldn't have to wait.

14          THE COURT:  Yeah.

15          MR. PEREZ:  I wasn't really -- and in due -- you

16  know, in all respect, I wasn't really focusing on the fact

17  that Mr. Orr's tenure ends on the effective date, whatever

18  that is, but our focus had been -- so to some extent, I'm

19  kind of supporting both of them.  I just want this to be done

20  as quickly as possible because it is -- it has economic

21  consequences if we don't do it.

22          THE COURT:  Right.

23          MR. PEREZ:  Thank you.

24          THE COURT:  Mr. Gordon.

25          MR. GORDON:  Good afternoon, your Honor.  Robert

1  Gordon of Clark Hill.  Your Honor, I just have a point of
2  clarification that I need.  As you know, the Detroit
3  Retirement Systems, our clients, are not subdivisions of the
4  city.  They are separate nondebtor entities, and, as a
5  result, the professionals for the Retirement Systems have
6  never been identified as fee review parties.

7          THE COURT:  Yeah.  That was a huge mistake.  If I
8  had known that the city reimbursed the Retirement Systems for
9  your fees, I would have insisted that your fees be included
10  in the fee order.

11          MR. GORDON:  That's interesting, your Honor, because
12  I am not aware to this day, just like you, that our fees can
13  be reimbursed, so I have asked general counsel for both of
14  the Retirement Systems whether our fees can be reimbursed.  I
15  have not got an answer yet, and the city has stuck in this
16  order something that says that the GRS and the PFRS -- for
17  the first time our fees are suddenly subject to this fee
18  mediation process to the extent that they are reimbursed by
19  the city, but they don't say that they're being reimbursed by
20  the city.

21          THE COURT:  Are they?

22          MR. GORDON:  I don't know.  So if the city thinks
23  they're being reimbursed, I'd like to know now.

24          THE COURT:  What did they say?

25          MR. GORDON:  I've asked them, as I said.

1        THE COURT: What did they say?

2        MR. GORDON: I have not gotten a response back yet,

3 but I'd like to know if the city thinks they're supposed to

4 be reimbursed.

5        THE COURT: This would be a simple yes-no question

6 that the executive director of either one of them should

7 know.

8        MR. GORDON: Oh, I don't know if that's so simple.

9 I think it might not be that simple. All I can tell you is

10 that I've asked. I just for the first time have been

11 informed that the city may think that they can be reimbursed.

12 I'd like to know -- either they are reimbursable or they're

13 not. If they're not reimbursable, we shouldn't be subject to

14 this process.

15        THE COURT: What did your clients say when you asked

16 the question? "I don't know"?

17        MR. GORDON: I've sent e-mails to them. I have not

18 gotten responses.

19        THE COURT: You didn't get a response. Okay.

20        MR. GORDON: So if the city thinks that they're

21 subject to reimbursement and it's going to put us in this

22 order, I'm sure my client would be thrilled, but they're

23 saying to the extent they're reimbursed. The city isn't even

24 saying that they are reimbursable. They're trying to put us

25 in the mediation process before they've told us whether

1    they're reimbursable.

2              THE COURT:  Okay.  Let's just pause here.  That

3    language probably came from me --

4              MR. GORDON:  Okay.

5              THE COURT:  -- not the city.  Am I right?

6              MS. LENNOX:  That's correct, your Honor.

7              THE COURT:  Yeah.  Don't put this on the city.

8              MR. GORDON:  Well, I have no idea, your Honor.  I

9    have no idea where the language came from.  No one ever

10   talked to us about it, so wherever it came from it came from.

11             THE COURT:  Ms. Lennox, what is your understanding

12   or what is the city's position on whether it reimburses the

13   pension plans for the professional fees of the pension plans

14   in this case?

15             MS. LENNOX:  So I think at the end of the day the

16   city is ultimately responsible for them, and I say it this

17   way.  The city doesn't pay the bills directly of the

18   professionals.  We don't get a bill for Mr. Gordon's firm and

19   the city pays it out of the city's funds.  What happens is

20   that they'll get paid out of trust funds, so whatever assets

21   are in the pension plans themselves are used for

22   administration, and administration is professional fees, so

23   to the extent that that's money coming out that the city then

24   has to pay back later, that's how the city is involved in it.

25             MR. GORDON:  Your Honor, what I'm hearing is the

1  suggestion that because trust assets are going to be used --

2          THE COURT:  I wonder why you don't want your fees

3  subject to review for reasonableness.

4          MR. GORDON:  Because we're being paid by a third --

5  nondebtor third party, and we've never been part of this

6  process for 14 months.  Suddenly we're supposed to provide

7  everything in a heartbeat?  We are not subject to

8  reimbursement from the city.

9          THE COURT:  Well, I'll give you a couple of

10  heartbeats.

11          MR. GORDON:  That's not reimbursement.  Okay.

12          THE COURT:  Why?

13          MR. GORDON:  That's not reimbursement, your Honor.

14          THE COURT:  Why not?

15          MR. GORDON:  The argument is reimbursement would

16  mean that they're going to pay the Systems back for these

17  fees.  What is being suggested is that in 2023 if the pay --

18  somehow there's an ability to determine that the amount paid

19  to Clark Hill or any of the other professionals back in 2014

20  somehow contributed to an underfunding level that is higher

21  than was projected in the plan as of today in 2023, that

22  somehow the city is on the hook for those.  In other words,

23  that is completely speculative.  That is not reimbursement at

24  all.  That is an argument that somehow -- again, it's

25  completely speculative that somehow the --

1          THE COURT:  I don't follow that at all, but isn't it

2     the case that the city's contributions pay for the

3     administrative expenses of the pension plans?

4          MR. GORDON:  Not under the plan.  Under the plan

5     they are making --

6          THE COURT:  I'm not concerned about under the plan.

7     I'm talking about --

8          MR. GORDON:  I think --

9          THE COURT:  -- before now.

10          MR. GORDON:  I don't think -- I don't think that's

11     relevant, but, yes, they did.  Through the contribution, I'm

12     sure they did in some way, but under the plan they do not.

13          THE COURT:  Doesn't 503 -- I'm sorry -- 543(b)(3)

14     require the Court to approve those fees?

15          MR. GORDON:  No, because it only pertains to fees

16     being paid incident to the case.  They are not paying our

17     fees incident to this case.  There is no way that you can

18     make a nexus.

19          THE COURT:  Have you not charged the pension plans

20     for all the hundreds of hours --

21          MR. GORDON:  Yes.

22          THE COURT:  -- you've put into this case?

23          MR. GORDON:  Yes.  And the city is not paying them.

24          THE COURT:  And doesn't the city reimburse --

25          MR. GORDON:  No.

1          THE COURT:  -- the plans for that?

2          MR. GORDON:  No, not under the plan.

3          THE COURT:  Where does the money come from to pay

4    you then?

5          MR. GORDON:  Comes from investment returns, and it

6    comes from -- there are contributions being made, but they're

7    not being made specifically to pay attorneys' fees or

8    anything else.  There's a fixed amount being paid, as you

9    well know, for the next ten years.  It's not based upon any

10   particular expenses.

11         THE COURT:  I'm not concerned about the next ten

12   years.  I'm concerned about how you've gotten paid during

13   this case for your work in this case.

14         MR. GORDON:  Yes.  It's been paid by the Retirement

15   Systems.  It's not being paid by the city.  There's no bills

16   being submitted to the city to be reimbursed.

17         THE COURT:  Well, but the revenue of the pension

18   plan is from the city.

19         MR. GORDON:  No.  The revenue -- much of the

20   revenue -- a great portion of the revenue is also from earned

21   income on assets.  If the assets earn --

22         THE COURT:  Assets contributed by the city.

23         MR. GORDON:  Assets contributed by the city, yes,

24   and held in trust for the beneficiaries.  They're not the

25   city's assets at this point.

1          THE COURT:  Ms. Lennox, here's a slightly different

2    argument.  When's the last time the city made a contribution

3    to GRS or PFRS?

4          MS. LENNOX:  Your Honor, I don't think we have

5    contributed post-petition while we were resolving all the

6    pension issues.  I think the last time the city actually

7    contributed to the pension plans was pre-filing.

8          THE COURT:  So the argument you're making is

9    obviously not that the -- that any post-petition

10   contributions paid these fees because there weren't any.  It

11   was the existing assets on hand --

12         MS. LENNOX:  Correct.

13         THE COURT:  -- as of the petition date.

14         MS. LENNOX:  Correct.  It comes out of trust assets.

15         THE COURT:  How do you deal with the argument that

16   Mr. Gordon makes that that is only in part city contribution;

17   it's also the earnings on that?

18         MS. LENNOX:  Well, I mean the pension plans over the

19   years have been up and down.  They've earned.  They've lost.

20   And the ultimate bearer of the risk of earnings and losses is

21   the city, so whatever funding contributions need to be made,

22   ultimately at the end of the day it comes from the city.

23         MR. GORDON:  Again, your Honor --

24         THE COURT:  That's enough, Mr. Gordon.  I think

25   you're in.

1    MR. GORDON:  That's not reimbursement by the city.

2    THE COURT:  That's my ruling.

3    MR. GORDON:  I understand.  Now, then if that's the

4  case, which, by the way, we're just learning now --

5    THE COURT:  You are.

6    MR. GORDON:  And you realize we have not been

7  subjected to this --

8    THE COURT:  I wish I had had full disclosure of

9  this.

10    MR. GORDON:  Full disclosure of what?

11    THE COURT:  It doesn't matter, Mr. Gordon.

12    MR. GORDON:  Okay.

13    THE COURT:  You're in.

14    MR. GORDON:  Fair enough.

15    THE COURT:  How can I help you properly participate

16  in this process?

17    MR. GORDON:  I don't even know yet, your Honor.  I

18  mean logistically we have not been part of this process.

19    THE COURT:  Well, let me ask you this question.

20    MR. GORDON:  They're asking for fee statements.

21    THE COURT:  Well, let me ask you this question.  Do

22  you bill the plans monthly?

23    MR. GORDON:  We do bill the plans monthly.

24    THE COURT:  And are those time statements?

25    MR. GORDON:  Sure.  So we can get those together.

 1          THE COURT:  So why does it --

 2          MR. GORDON:  We can get them together.

 3          THE COURT:  Why does it take more than a heartbeat?

 4          MR. GORDON:  It takes more than a heartbeat, but we

 5  can get them together.  I just don't know what the dates are

 6  that we're working with right now, but we'll get them

 7  together.

 8          THE COURT:  Well, the dates we're talking about

 9  are -- I think the date of the filing of the petition is the

10  beginning.  Yes, Ms. Lennox?

11          MS. LENNOX:  Correct.

12          THE COURT:  And the end is the effective date of the

13  plan.

14          MR. GORDON:  I'm trying to think if there's any

15  other issue.

16          THE COURT:  Any other comments regarding the

17  proposal?

18          MR. GORDON:  Not at this time.  Thank you, your

19  Honor.

20          THE COURT:  All right.  Anyone else want to comment?

21          MR. LEGGHIO:  Good afternoon, your Honor.

22  Christopher Legghio on behalf of the Detroit Fire Fighters

23  Association, and thank you for your invitation to appear here

24  today.  I just have a couple points I want to make on the

25  issue raised by Ms. Lennox in terms of when you should assess

1    and make a decision on the waiver.  At the time of the cutoff

2    to object to the plan, there were only two fee examiner

3    reports issued, and it only covered the period through

4    December 31st of 2013, so to object to the plan at that

5    point -- we haven't seen a good share of the money that was

6    being charged.  In addition to that, your Honor, the second

7    fee examiner's report did not include the fact that Jones Day

8    had raised their hourly rates by eight percent after January

9    2014, so that wasn't available to make an objection in time

10   to challenge the confirmation of the plan.  Those are

11   significant jumps when you're talking about hourly rates of

12   $900 an hour, and the Consumer Price Index at that point is

13   1.5 percent.

14           The other issue, your Honor, is that if you -- and I

15   appreciate and we're grateful for the opportunity to brief

16   the issue of waiver, but if you spin out the argument that's

17   being asserted here by Ms. Lennox that there was a waiver

18   when they didn't object to the plan, then what you have is

19   that Jones Day has waived the city's rights to object to

20   Jones Day's fees and to object to the fee increases of eight

21   percent on $900 an hour and a thousand dollars an hour.  So

22   the other elements of the waiver issue can be covered by

23   brief, but I think the Court should be sensitized to the fact

24   that what was available to the parties in terms of the fees

25   objection come to -- the cutoff date for the plan of

1  adjustment wasn't the whole picture, and --

2          THE COURT:  Well, I can hold a waiver of the fees

3  that were noticed before the objection deadline but not

4  after.

5          MR. LEGGHIO:  Your Honor, I wouldn't argue that, and

6  I would argue that in some more detail in a brief, but I

7  think that the -- as I said, that a good part of the money

8  that was earned was earned after January 1, and those numbers

9  probably rolled up pretty big after June, so --

10         THE COURT:  Okay.  Thank you, sir.

11         MR. LEGGHIO:  Thank you, your Honor.

12         MR. MONTGOMERY:  Good afternoon, your Honor.  Claude

13  Montgomery, Dentons US, for the Retiree Committee.  I just

14  wanted to amplify this combination of practical concerns that

15  is being focused upon here.  If for any reason the

16  appropriate resolution of fees delays the effective date

17  until next year, not only do, of course, we lose the

18  foundation money -- at least it becomes up to somebody else

19  to decide whether to fund it -- but much smaller issues like

20  the practicality of the VEBA implementation start becoming

21  problems, and it's a string that starts to pull on a number

22  of practical issues, so I can only say if it is possible to

23  get the fee issue resolved in some material fashion either by

24  mediation or by resolution by the Court by this mid-December

25  date that Ms. Lennox identified, that would be of enormous

1  benefit to every creditor constituent, in particular, mine.

2      THE COURT:  Well, do you mean the fee issue resolved

3  by then or the effective date issue resolved by then?

4      MR. MONTGOMERY:  Whichever it is that's driving the

5  effective date, your Honor, you know.

6      THE COURT:  Okay.

7      MR. MONTGOMERY:  Ms. Lennox is correct.  There is a

8  tie.  There's a pretty good tie there, and it's both an

9  economic tie and it's a control tie.  I can't opine as to,

10  you know, which way those should go, but if there is

11  something the Court can do to sort of focus all that in so it

12  all gets resolved before middle of December, I think it would

13  help everybody.

14      THE COURT:  Okay.

15      MR. MONTGOMERY:  Thank you.

16      THE COURT:  Any other comments regarding this?  All

17  right.  I'm going to consult with Mr. Fishman and Judge Rosen

18  to come up with a date that -- or I should say a process that

19  tries to give fair consideration to all of these various

20  concerns.  Let's move on then and talk about -- so,

21  Mr. Fishman, you're all set.  Thank you very much for your

22  participation.

23      MR. FISHMAN:  Thank you, your Honor.

24      THE COURT:  So let's move on and talk about the

25  confirmation order itself.  Ms. Lennox, was there anything

1   you wanted to say about that before we launch in?

2           MS. LENNOX:  Sure.  I would like to just for the

3   record for everybody's benefit, we had taken a shot at

4   revising, in particular, the findings of fact in the proposed

5   order to conform with your Honor's bench decision, and thank

6   you very much for posting that on your website.  That made it

7   a lot easier.  We've also tried to shorten it and skinny it

8   down a lot because obviously your Honor is going to write a

9   very full opinion, and so we didn't want to be repeating

10  where we shouldn't be repeating.  We sent that out to all the

11  parties that we had told you we had sent it to in the first

12  notice last evening.  We actually, kudos to them, got back a

13  bunch of comments on that sort of thing.  They were not

14  major.  The ones that we were able to implement in time we

15  submitted to your Honor in mid-morning, and so your Honor has

16  that.  There are a couple that have come in afterwards.  I

17  have a two-page sheet, if I may approach.

18          THE COURT:  Okay.

19          MS. LENNOX:  It's just two pages.  And I cannot

20  represent that every creditor constituency has been through

21  this, but I think the Retirement Systems have looked at it.

22  The Retiree Committee has looked at it.  LTGO, UTGO, DWSD

23  parties, Barclays and the DIA I think we've all gotten

24  comments from so far, so people have been exceedingly prompt,

25  and I don't want to say that they may not have some more

1  because they haven't had a lot of time to look at it, but
2  this is sort of the current version we're working with.  I
3  don't imagine there will be many changes from this, very
4  minor, and we could certainly file something comprehensive, I
5  would think, tomorrow, and obviously whatever your Honor
6  wants us to do with this, too, we'll do, so procedurally
7  that's where we are.
8          THE COURT:  Okay.  All right.  So the question is
9  where to go from here with this.  Anybody have any thoughts
10  or comments to share on this?  Does anyone want more time to
11  look at the order, or should we just -- I mean I will say
12  this.  It is my intent to go through the findings of fact in
13  the order very, very carefully to make sure that they are
14  consistent with either, "A," what I said in court on Friday,
15  or, "B," what I intend to say in my subsequent written
16  opinion.
17          MS. LENNOX:  Of course, your Honor.
18          MR. HOWELL:  Good morning, your Honor.  Steven
19  Howell, special assistant attorney general, appearing on
20  behalf of the State of Michigan.  Your Honor, the only
21  comment I would have is we would like a little bit more time.
22  We think we could get back by tomorrow.  I've not had a
23  chance to review with my client because we've been running
24  down some of the other issues that we have, by the way,
25  resolved with respect to our contribution agreement, and

1   that's taken the weekend.  We have gone through it

2   preliminarily.  We just want to make sure that those things

3   in the contribution agreement called out -- and we're sure

4   they're in there.  They were in the last draft.  But we will

5   review that promptly and get back to Jones Day and confer

6   with our client and let them know no later than tomorrow.

7   Thank you.

8           MR. PEREZ:  Your Honor, we have reviewed the order.

9   I think we're generally fine with it.  And I would just

10  encourage the Court to set a deadline by which people have to

11  respond, you know, later today, tomorrow, so we can move the

12  process.

13          THE COURT:  Right, um-hmm.

14          MR. GORDON:  For the record, Robert Gordon again.

15  Your Honor, in terms of time to respond to this, it's true we

16  did submit comments last night as quickly as we could to

17  Ms. Lennox and her colleagues.  We haven't had a chance to

18  review the newest version.  However, I don't know exactly how

19  much time we need.  One of the things we've noticed is that

20  in this version -- let me back up.  The prior version of the

21  confirmation order envisioned a list of modifications from

22  the fourth amended to the final, which would allow us to see

23  what those modifications were, but, in particular, this ties

24  in with something I had mentioned back on the 27th of October

25  regarding plan implementation process.  The Retirement

1  Systems and the city are having constant discussions about

2  how to implement the plan and the timelines that are needed

3  for the ASF recoupment process, the ISF, which is the income

4  stabilization fund, process, the process of being able to

5  implement the benefit reductions and so forth.  Those need to

6  be memorialized into timelines, and so we're not sure how

7  those would get baked into this order.  There isn't a list of

8  modifications where it would go into now, but it's not in

9  here yet, and I would defer, quite frankly, to my colleague,

10  Ron King, who is in the room, or -- and/or people from the

11  city as to how long it's going to take them to get those

12  timelines together because it does seem that those need to go

13  into this confirmation order.  I don't know if --

14          THE COURT:  Ms. Lennox, any thoughts on this?

15          MS. LENNOX:  Your Honor, I've never seen an

16  implementation timeline for going effective or executing

17  things in a plan put in a confirmation order.  I don't think

18  that belongs in a confirmation order.  I think the parties

19  are working to make it happen, and they just need to make it

20  happen.  They should certainly have their own timelines for

21  getting things done, but I don't think that that goes into a

22  confirmation order.

23          With respect to the reference to modifications to

24  the plan, now that the eighth amended plan is final, it

25  incorporates all the prior modifications, so there was really

1   no need for that, so I guess I would disagree with Mr. Gordon

2   about the necessity of having a pension implementation

3   timeline in a confirmation order.

4           MR. GORDON: Two things. One, the implementation

5   here may be different than what Ms. Lennox has seen in other

6   cases. The implementation here is -- the onus for it is

7   being placed on a third party, the Retirement Systems, and

8   the plan provides some fairly significant impacts on the

9   beneficiaries potentially if the Retirement Systems somehow

10   are deemed to be in default of having implemented the plan,

11   so this is not your normal situation. This is important.

12   This is material to the plan, and it's material to the rights

13   of the beneficiaries. We do not want to be set up for

14   failure. We do not want to be set up for a technical

15   default.

16           THE COURT: Where's your timeline?

17           MR. GORDON: I'm sorry.

18           THE COURT: Where's your timeline?

19           MR. GORDON: Your Honor, I just said it's between --

20   the city and the Retirement Systems are having negotiations

21   about what's a reasonable timeline. They are working on it.

22           THE COURT: Why aren't those negotiations concluded?

23           MR. GORDON: I don't know. I would defer to others

24   who are involved in that process, your Honor.

25           THE COURT: Who would you defer to?

1          MR. GORDON:  Mr. Miller, Evan Miller, on behalf of

2     the Jones Day folks, I would assume, and possibly on the

3     retirement side -- I don't know if Mr. King can speak to

4     that.  The other thing I would mention, though, before we get

5     into that is also in terms of the list of modifications --

6     well, maybe you can even speak to this, Ron -- is the

7     restoration process.  We've never gotten a redline of the

8     changes between what was described for the restoration

9     program in the fourth amended plan and what is actually in

10    the restoration agreement that was finally agreed to.  We

11    wanted to make sure that the final version is the final

12    version, so that would have gone into that list of

13    modifications.  It's not there.

14         MR. KING:  Good afternoon, your Honor.  Ron King on

15    behalf of the Retirement Systems.  Our concern may have been

16    resolved a little bit just in terms of Ms. Lennox's

17    description of the movement of the effective date, but I can

18    just give you a hard example.  The income stabilization

19    program, for example, starts 120 days from the effective date

20    for implementation.  We have been working over the last

21    several weeks under the assumption that it's a pre-

22    Thanksgiving confirmation date.  Having said that and working

23    very --

24         THE COURT:  Effective date.

25         MR. KING:  Effective date.  I'm sorry.  And having

1 worked very closely with the state on the income

2 stabilization program because it is, in essence, their

3 program for the most part, you know, we're very concerned

4 that we have enough time to get notices out because we want

5 to maximize participation.  The state then will have to

6 process those notices and then transmit the information to

7 the Systems for ultimate implementation.  And what we want to

8 make sure we're doing is have the benefit cut, particularly

9 on the general side, coincide with a reimbursement if you're

10 eligible for the income stabilization benefit so that you --

11 it all happens at one time.

12          THE COURT:  Yeah.

13          MR. KING:  So if you have, let's say, a November 21

14 effective date, well, that throws us into March 21; right?

15 Well --

16          THE COURT:  Approximately, yeah.

17          MR. KING:  Approximately; right.  We can't get the

18 benefit payments -- you know, we end up -- the Systems end up

19 losing that three-week period because obviously the benefits

20 are paid at the first of the month, so if we can even have a

21 December 1st effective date if we have to move it -- and

22 obviously as it goes into December, it's even better -- it's

23 not going to stop us from driving forward on what we're

24 doing, but then that gives us to April 1st to make whatever

25 the benefit adjustment might be and make sure there's

1  adequate time for the income stabilization program to be put

2  in place, so that -- and those are the kind of concrete

3  examples, and so we have been working on this, so it's not

4  like we're starting from whole cloth.  In fact, we're a long

5  way down the road, but there are practical considerations.

6  　　　　THE COURT:  I'm glad to hear that because your

7  presentation makes it sound like you're just now starting the

8  process of figuring this out.

9  　　　　MR. KING:  No, but we've been working against a

10  moving target also, right, but plan confirmation, an

11  effective date, but, no, we -- I was on a two-hour call this

12  morning, so we're working through it.  I mean the benefit cut

13  is fairly straightforward, and the COLA adjustment is a

14  fairly straightforward exercise.  It's the one-offs that come

15  from the ASF and the income stabilization program, and we

16  want to get it right.

17  　　　　THE COURT:  Okay.  All right.

18  　　　　MR. KING:  Thanks.

19  　　　　MS. PATEK:  Good afternoon, your Honor.  Barbara

20  Patek, Erman, Teicher, Zucker & Freedman, on behalf of the

21  Detroit Police Officers Association.  We received a copy of

22  the changes to the confirmation order this morning with

23  respect to the Court's ruling on the employee indemnification

24  claims, and we are working with the city and expect to be

25  able to have that resolved fairly promptly, if not --

 1          THE COURT:  You have an issue with the way they
 2    characterized it?
 3          MS. PATEK:  We are still in the process of
 4    reviewing.  I don't think we have an issue with --
 5          THE COURT:  Okay.
 6          MS. PATEK:  But we want to make sure we're all on
 7    the same page because we're very concerned that these
 8    officers are protected obviously.
 9          THE COURT:  I think that's, once again, a situation
10    where you took language that I proposed to you.
11          MS. LENNOX:  That's correct, your Honor.
12          MR. PLECHA:  Good afternoon, your Honor.  Ryan
13    Plecha, Lippitt O'Keefe Gornbein, on behalf of the retiree
14    association parties.  I would just request, to the extent
15    that a deadline is imposed, that it not be until at least
16    close of business tomorrow.  I have not had a chance to see
17    the proposed changes as I was not on the preview list, and I
18    haven't had a chance to pull it from PACER this morning or
19    close of business today.  I haven't even had a chance to look
20    at it yet.  Thank you.
21          THE COURT:  All right.
22          MS. OKASINSKI:  Hello, your Honor.  Lisa Okasinski
23    from Demorest Law Firm.  We represent clients that have
24    condemnation claims against the city, and with regards to the
25    treatment of those plans, it wasn't -- or the treatment of

1   those claims, it wasn't clear from the plan how this Court
2   was going to treat those --
3           THE COURT:  Um-hmm.
4           MS. OKASINSKI:  -- and I wanted to see if you had
5   come to a decision.
6           THE COURT:  Oh, I announced my decision on Friday
7   that those claims are not subject to discharge in this
8   case --
9           MS. OKASINSKI:  Okay.
10          THE COURT:  -- and the city's proposed order says
11  that.
12          MS. OKASINSKI:  Okay.
13          THE COURT:  So I think you're all set.
14          MS. OKASINSKI:  All right.  Thank you.
15          MR. QUINN:  Good morning, your Honor.  John Quinn, a
16  holder of a Class 11 claim representing myself.  I have not
17  received the revised proposed order, so I'm in no position to
18  say whether it changes my position or not.
19          THE COURT:  Okay.  Thank you.  Well, it's clear
20  we're not going to be able to complete this today.  For those
21  who haven't seen the latest, Ms. Lennox, let me ask you to
22  get that to them as promptly as possible when we're done with
23  court here today.  Let me further ask that anyone who wants
24  to submit further comments regarding the proposed order do so
25  by noon tomorrow and that the city submit to the Court

```
1   through our order processing program the proposed final draft
2   by the close of business tomorrow.  Beyond that, we will
3   adjourn the hearing -- the Court's hearing on the form of the
4   order till Wednesday morning when we have a number of other
5   matters set for 9 a.m., and just in case there are any other
6   unresolved issues at that time, we can deal with them then,
7   and we'll get the order entered on Wednesday.  Okay.
8           I want to give anyone who's interested an
9   opportunity to be heard specifically on the city's request
10  for a waiver of the 14-day stay of the effectiveness of the
11  plan.  Anyone wish to be heard on that issue?
12          MR. PEREZ:  We would support that, your Honor,
13  obviously.
14          THE COURT:  Support the waiver, yes.
15          MR. PEREZ:  Absolutely, yes, your Honor.  And we
16  think it's kind of integral to trying to get this done as
17  quickly as possible consistent with the testimony, consistent
18  with the representations made by the city.
19          THE COURT:  All right.  Thank you.  Oh, Mr. Quinn?
20          MR. QUINN:  Your Honor, John Quinn again.  I'm just
21  concerned about how that would affect any party who may wish
22  to appeal and seek a stay pending the appeal.
23          THE COURT:  Is this your statement to the Court that
24  you do intend to file an appeal and to file a motion for stay
25  pending appeal?
```

MR. QUINN:  I'm considering an appeal, and if I
appeal, I will seek a stay.

THE COURT:  Well, it's not for me to give you legal
advice.  Now is your time to tell me whether or not you
object to the waiver of the 14-day automatic stay of the
effectiveness of the plan as the city has requested.

MR. QUINN:  I do, your Honor.

THE COURT:  And what are the grounds for that?

MR. QUINN:  The grounds are that a party who is
appealing has 14 days from the date of the plan to give
notice of their intent that they are appealing, and --

THE COURT:  To file the notice of appeal, yeah.

MR. QUINN:  Right, notice of appeal.  And that's the
point at which that party can move for a stay pending the
appeal.  If the stay is -- if the plan is already given
immediate effect before that 14 days expires, the stay may be
pointless at that point.

THE COURT:  Ms. Lennox.

MS. LENNOX:  Your Honor has heard our proposed
timeline, and we're still moving as fast as we can.  We'd
still like to try to get it done before Thanksgiving if we
can.  We've heard from other parties besides the city about
the importance of getting it done quickly.  We certainly
have -- it wouldn't affect the 14-day issue, but we do have
real, real deadlines in this case for getting things done and

1   closed and going effective for money that will come into the

2   pension plans.  If we can't get this done by the end of the

3   year, we're risking almost a billion dollars coming into the

4   pension plans, and I don't think anybody on the city's side

5   is willing to do it, so we do think that for the reasons

6   we've set forth in the briefing, which I know your Honor has

7   read, and for the practical effects for all the parties

8   involved in this, we would ask that your Honor include that

9   provision in the order.

10          THE COURT:  Does anyone else wish to be heard on

11   this 14-day stay issue?

12          MS. LEVINE:  Your Honor, if I might, Sharon Levine,

13   Lowenstein Sandler.

14          THE COURT:  Yes.  Go ahead.

15          MS. LEVINE:  We support the city in requesting that

16   the Court do away with the stay.  We think your Honor has

17   heard a lot today with regard to how important it is that all

18   these levers fall into place as quickly as possible to avoid

19   any harm to all the hard work that's been done to this point

20   in time, and, therefore, we would ask that your Honor waive

21   the stay.

22          THE COURT:  Thank you.  Anyone else?  All right.

23   I'll give a decision on this on Wednesday.  Let's turn to the

24   issue of implementation.  I had asked for a list of the tasks

25   that are involved in implementing this plan or at least in

1   terms of getting it to the effective date.

2          MS. LENNOX:  Yes, your Honor.  We actually have like

3   a 50-page checklist of exactly everything we need to do to

4   get to confirmation, and I'm happy to say that a lot of it is

5   complete.  We've scaled it down to something that's

6   manageable, if I may approach.

7          THE COURT:  Yes.

8          MS. LENNOX:  So I can go through this page by page,

9   but I'd like to give your Honor an overview.  Much of the

10  work to actually close the transactions contemplated by the

11  plan has already been completed.  From a legal perspective,

12  as I indicated, we think we could have things wrapped up in

13  the next few weeks.  The things that might cause it to delay

14  might be financial matters, reconciling budgets, and then, of

15  course, we have your Honor's mediation, so we also know that

16  the state settlement administration or authority -- I may

17  have the wrong title for that, but they're the ones that have

18  to go through the state contribution agreement and see are

19  all the conditions satisfied.  They are meeting sometime mid-

20  to late November to go through that, and then they would, I

21  think, intend to file something on the docket to make it

22  clear --

23         THE COURT:  Um-hmm.

24         MS. LENNOX:  -- that those conditions have been

25  satisfied.  I can report that all of the government approvals

1   for the transactions in the plan have been received except

2   for three.  Treasury's approval of the Syncora and FGIC

3   development agreements is still pending.  We don't see any

4   issues with that.  We expect to receive that timely.  We have

5   one approval on the UTGO deal that is still needed from the

6   local audit division of Treasury.  Again, we have been told

7   that we should get that this week, which would put all

8   government approvals in the completed column.  Everything

9   else we have sign-offs, approvals, everything else.  So in

10  terms of documentation, negotiation, finalization, we are in

11  good shape.  I am also told -- and maybe Mr. Howell can

12  confirm this, but I'm also told that the issues that were

13  raised on Friday -- in Friday's status conference with

14  respect to the state release agreements, those, I believe,

15  have been resolved.  So I can go through this quickly, your

16  Honor, if you like.  What this is generally is to have -- is

17  each big settlement agreement and/or financing that the plan

18  contemplates has a header with some major tasks and their

19  status in that, and then we also have at the back the

20  conditions precedent to the effective date that are listed in

21  the plan and where we stand in terms of satisfying those.  So

22  I could do a page turn if your Honor likes.

23          THE COURT:  No, no.  I really just wanted this for

24  my own reference.

25          MS. LENNOX:  Okay.

1          THE COURT:  My primary issue or concern here is

2 whether there are any potential effective date issues that

3 might require my resolution or my prompt resolution.

4          MS. LENNOX:  At this time, your Honor, I don't see

5 any other than the issue that we started the day out with.  I

6 would also like to just update your Honor that with respect

7 to the conditions precedent to the effective date, your Honor

8 will see that three of them have already been completed, and

9 I would say that once a confirmation order is entered,

10 another eight of them will have been completed, so we --

11 again, we don't see any hiccups to getting where we need to

12 be in a timely fashion.

13          THE COURT:  Do you see any value in holding a

14 periodic status conference on the issue of your progress in

15 making the plan effective?

16          MS. LENNOX:  I don't see any harm in it, and if your

17 Honor didn't want to hold something on the calendar

18 definitively, we could certainly commit to your Honor that if

19 a hiccup arises, we would notify the Court of it, and then

20 the Court could set something at your Honor's convenience.

21 If your Honor would just like a status update on a periodic

22 basis, we're happy to provide that as well.

23          THE COURT:  Well, it strikes me there may also be

24 some public interest in a brief update report on what your

25 status is periodically as you approach the effective date.

1        MS. LENNOX:  Understood, your Honor.

2        THE COURT:  All right.  Let me think about this some

3   more, and we'll discuss it further on Wednesday.

4        MS. LENNOX:  Okay.

5        THE COURT:  What else?  I want to -- I want to talk

6   about the status of the claims objection process.

7        MS. LENNOX:  And for that I'm going to turn that

8   over to Mr. Simon from Foley.

9        MR. SIMON:  Good afternoon, your Honor.  John Simon,

10  for the record, of Foley & Larder for the city on the claims

11  objection matters.  Your Honor, under the plan, as you know,

12  we have about six months until the deadline, unless it's

13  extended by the Court, for there to be claims objections

14  filed.  We've been working with Ernst & Young and with the

15  city's law department to identify the remaining claims that

16  will be the subject of objections.  You'll note we filed, I

17  think, seven omnis so far.  I expect on the next round there

18  will be a couple more omnibus objections.  The plan has

19  addressed some matters in a way that takes them out of the

20  purview of claims objections like takings won't be subject to

21  it, pension claims, workers' comp, so what we see as the

22  primary claims objections going forward, at least at this

23  time, based on our discussions with Ernst & Young, is some

24  subset of the trade.  There are about $30 million of trade

25  claims that are being reconciled now, and there's some

1   portion of those, 300 claims or so, where there may be issues

2   as to, you know, the amount disagreeing with the claimant,

3   the city disagrees with the claimant's amounts.

4           Also, rejection claims.  There are a significant

5   amount of rejection claims, and I think it's upwards of $30

6   million.  There's not a significant number, but there's a

7   significant amount, so we're trying to work through the

8   validity of those as well.  Those are the areas where right

9   now -- and I don't have a crystal ball, but I've tried to

10  identify, kind of understanding that the goal is to know up

11  front what the next few months is going to look like in this

12  process.  I see trade claims, and I see rejection claims.  I

13  know that --

14          THE COURT:  Are we done with the untimely claims or

15  the duplicative claims or those sort of administrative

16  issues?

17          MR. SIMON:  Your Honor, I wish I could say that we

18  were.  I just had a call this morning with some folks on the

19  team about that, and it seems like we might have some more

20  satisfied claims.  I think we're done with dups.  I think we

21  are done with duplicate claims.

22          THE COURT:  Yeah.  Let's call them duplicates.

23          MR. SIMON:  Right, duplicates.  So we'll be done

24  with the -- I think we're done with most of those.  I know

25  we're going to have some more satisfied claims, but people

1    are still actually working on updating our list so we can get

2    the next ones filed.  I think a lot of those routine ones we

3    are hopefully finished with.

4              THE COURT:  All right.  Thank you.

5              MR. SIMON:  I know Mr. Ellman has some things he

6    wants to address with the Court on the reserves for claims,

7    so if I could cede the podium unless you have questions, your

8    Honor.

9              THE COURT:  No.  I'm all set.  Thank you.

10             MR. SIMON:  Thank you.

11             MR. ELLMAN:  Good afternoon, your Honor.  Jeffrey

12   Ellman for the city from Jones Day.  Just one item briefly

13   that relates to the claims and also relates to the

14   implementation of the plan.  As the Court is aware, in Class

15   14 of the plan, which are the general unsecured claims or the

16   other unsecured claims, those claims share pro rata and a set

17   number of new B notes, and the pro rata calculation in the

18   plan, as defined, is basically a fraction taking the allowed

19   claim that you have as a claimant compared to all the allowed

20   claims in that class, so pretty straightforward.

21             THE COURT:  Right.

22             MR. ELLMAN:  The way you calculate an allowed claim

23   for pro rata purposes -- not all the claims are allowed, so

24   you have to come up with a way of figuring out how to do the

25   math, and what the plan says is for claims that are not

1   allowed, they're still subject to review and maybe objection.

2   We use the face amount, which is defined in Section 1.A.185,

3   and that is basically, for purposes of this discussion, one

4   of three things.  It's basically if the claim has a number in

5   it that's liquidated completely, it's easy to use that

6   number, so the hundred thousand dollars would use it.  If

7   it's unliquidated in whole or in part, you have to put a

8   number in there somewhere to do the math, and it says the

9   city can propose that number, or the third thing is that your

10  Honor estimates the claim under 502(c) for purposes of this

11  calculation.  So we have about 1,300 -- a little over 1,300

12  claims we think in Class 14.  1,318 is our current math.

13  About 913 appear to have a number on them we can use.  It's

14  liquidated.  We have 99 that are partially liquidated, so it

15  says a million dollars plus interest fees to be determined,

16  and we have 306 that are fully unliquidated, you know, amount

17  to be determined, you know, at trial or something.  So we

18  have about 405 claims.  We will need to put a number in

19  there, and we will also have things like rejection claims,

20  which may not be due yet because there's a bar date that's

21  beyond the effective date.  So rather than simply have the

22  city put a number -- a proposed number and implement that

23  number, we believe it's more appropriate to do that in a

24  public way to present it on notice to parties so that -- and

25  seek approval of the Court, so we're probably at least a few

1  weeks away from presenting that, but our hope and our plan

2  would be to put that in a motion for your Honor to approve

3  before we'd actually make distributions to that class.

4  That's all.

5          THE COURT:  Thank you, sir.

6          MR. ELLMAN:  Thank you.

7          THE COURT:  That's it on claims objections then?

8          MS. LENNOX:  Yes, your Honor.

9          THE COURT:  Okay.  The only other thing I have is

10  status of other post-confirmation litigation.  I know I have

11  a motion for reconsideration in connection with the water

12  litigation, and I have hearings on Wednesday on what I'll

13  call the Open Meetings Act litigation.  I think that's all

14  the ongoing or continuing litigation.  Is that all that's out

15  there?

16          MS. LENNOX:  To my knowledge, your Honor, I think

17  that's all that's in front of this Court.  We have some

18  appeals that we need to deal with, but, yeah.

19          THE COURT:  Okay.  Does the city foresee any other

20  kinds of post-confirmation litigation?

21          MS. LENNOX:  Unless it relates to claims, to which I

22  would defer to Mr. Simon, we don't.

23          THE COURT:  Apart from claims.

24          MS. LENNOX:  Yeah.  We don't foresee any.

25          THE COURT:  Oh-oh.  Here comes one.

1          MS. LENNOX:  Oh, oh, oh, oh, oh.  Yes.  We do, of
2    course, reserve the right in the plan to bring avoidance
3    actions, so there may be --
4          THE COURT:  Well, that's what I was asking.
5          MS. LENNOX:  Okay.  Well, shame on me for --
6          THE COURT:  What are we doing about that?
7          MS. LENNOX:  Shame on me for missing that.  I
8    believe the city is in the process -- Mr. Hollowell is here.
9    Mr. Hollowell is in the process of negotiating an arrangement
10   with outside counsel to review and bring those actions as
11   they deem appropriate.
12         THE COURT:  Okay.
13         MR. HOLLOWELL:  That is correct, your Honor.
14         THE COURT:  Step forward, please.
15         MR. HOLLOWELL:  Thank you, your Honor.  Melvin
16   Brooks Hollowell, corporation counsel, City of Detroit.  We
17   agree with Ms. Lennox.
18         THE COURT:  What is your timing on that?
19         MR. HOLLOWELL:  I don't think it's going to take
20   that long.  It could be within a week or two weeks.
21         THE COURT:  A week or two to come to a conclusion
22   regarding the arrangement?
23         MR. HOLLOWELL:  Yes, your Honor.
24         THE COURT:  Okay.  My question really was how long
25   till you actually file?

1          MR. HOLLOWELL:  If I could, your Honor, by Wednesday

2     when we reconvene I'll have a quick answer for you.

3          THE COURT:  Oh, all right.  That would be good for

4     my planning purposes.  Thank you.

5          MR. HOLLOWELL:  Thank you, Judge.

6          THE COURT:  All right.  So that's all I have.  Is

7     there anything else anyone would like to bring up?  Mr.

8     Howell.

9          MR. HOWELL:  Thank you, your Honor.  Again, Steven

10    Howell appearing on behalf of the state.  Your Honor, thank

11    you for the time on Friday.  We have 12 agreements that are

12    part of the implementation of this.  We now have 11 of those

13    12 signed up, 3 over the weekend.  We have one more that we

14    expect to receive.  The collective bargaining agreement of

15    the Detroit Fire Fighters Association has been ratified,

16    signed, and was delivered to the treasurer late Friday night

17    for approval.  We hope that'll get approved today.  And then

18    once that's approved, Detroit Fire Fighters Association has

19    indicated they will sign and send the last of those

20    agreements, so we are --

21          THE COURT:  Okay.

22          MR. HOWELL:  -- well along the way in terms of those

23    conditions.

24          THE COURT:  When do you expect that?

25          MR. HOWELL:  The last agreement?  I would hope we

1  would have it tomorrow.

2          THE COURT:  Okay.

3          MR. HOWELL:  I would hope we could tell you on

4  Wednesday morning, but we will -- it'll be dependent upon the

5  DFFA to -- once we tell them it's been signed, to get it over

6  to us.

7          THE COURT:  Okay.  Thank you.

8          MR. HOWELL:  Thank you, your Honor.  Oh, your Honor,

9  may I?

10          THE COURT:  Yes.

11          MR. HOWELL:  One other question.  With the Court's

12  ruling and where this stands now, I just want to make -- ask

13  for a clarification.  The mediation order and the

14  confidentiality of the mediation order continues in effect.

15  It's not been in any way impacted as a result of the

16  conclusion of the case or the rendering of the opinion.

17          THE COURT:  That's right.

18          MR. HOWELL:  Thank you.  That's what I wanted to

19  know.  Appreciate it.

20          THE COURT:  Ms. Lennox, remind me.  What does the

21  plan say about what happens with the proceeds of any

22  avoidance actions?

23          MS. LENNOX:  Well, they were not pledged to any

24  lender, so they're going to come into the city coffers.

25          THE COURT:  So it's not part of the Class --

1        MS. LENNOX:  No.

2        THE COURT:  -- 14 or 15 --

3        MS. LENNOX:  No.

4        THE COURT:  -- recovery?

5        MS. LENNOX:  No.  They get B notes.  So whatever is

6   recovered by the city will come into the city's general fund.

7        THE COURT:  Thank you.

8        MS. LENNOX:  Thank you.

9        THE COURT:  All right.  Is that it then?  All right.

10  We're in recess.

11       THE CLERK:  All rise.  Court is adjourned.

12     (Proceedings concluded at 1:23 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


       I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett            November 12, 2014
_____      _____
Lois Garrett