1                 UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF MICHIGAN
2                       SOUTHERN DIVISION

3 IN THE MATTER OF,            Case No. 13-53846
                               Detroit, Michigan
4 CITY OF DETROIT, MI         November 12, 2014
_____/    9:00 a.m.

5

6    OBJECTION TO CLAIM NUMBER OF CLAIMANT COALITION OF DETROIT
     UNIONS.  OBJECTION OF THE CITY OF DETROIT, PURSUANT TO
7        SECTIONS 105 AND 502(B) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM
8   NUMBER 2851 FILED BY THE COALITION OF DETROIT UNIONS FILED BY
   DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN, OBJECTION
9 TO CLAIM NUMBER OF CLAIMANT MICHIGAN AFSCME COUNCIL 25 AND ITS
   AFFILIATED DETROIT LOCAL. OBJECTION OF THE CITY OF DETROIT,
10   PURSUANT TO SECTIONS 105 AND 502(B) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1, TO PROOF OF CLAIM
11    NUMBER 2958 FILED BY THE MICHIGAN AFSCME COUNCIL 25 AND ITS
   AFFILIATED DETROIT LOCALS FILED BY DEBTOR IN POSSESSION
12     CITY OF DETROIT, MICHIGAN, OBJECTION TO CLAIM NUMBER OF
CLAIMANT FIFTH OMNIBUS OBJECTION TO LATE-FILED CLAIMS FILED BY
13    DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN - AS TO CLAIM
       NO. 3673 OF HENRY GESING, OBJECTION TO CLAIM NUMBER OF
14 CLAIMANT SIXTH OMNIBUS OBJECTION TO LATE-FILED CLAIMS FILED BY
  DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN - AS TO CLAIM
15   NO. 3644 OF JANET PEETE, MOTION FOR RECONSIDERATION/REHEARING
  (RELATED DOCUMENTS 7754 ORDER ON MOTION FOR RELIEF FROM STAY
16    AND WAIVING FRBP 4001 (A)(3)) FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN, 14-5059 EMERGENCY MOTION FOR REMAND
17    TO WAYNE COUNTY CIRCUIT COURT FILED BY PLAINTIFF CITIZENS
  UNITED AGAINST CORRUPT GOVERNMENT, 14-5059 EMERGENCY MOTION
18   FOR MANDATORY ABSTENTION PURSUANT TO 28 USC 1334(C)(2) FILED
  BY PLAINTIFF CITIZENS UNITED AGAINST CORRUPT GOVERNMENT, 14-
19    5086 ORDER TO FILE MOTION FOR CHANGE OF VENUE AS ADVERSARY
PROCEEDING COMPLAINT AND TO SHOW CAUSE WHY THIS MATTER SHOULD
20 NOT BE REMANDED. SHOW CAUSE HEARING TO BE HELD ON 11/5/2014 AT
       10:00 AM AT COURTROOM 716, U.S. COURTHOUSE, 231 W.
21   LAFAYETTE, DETROIT, MI 48226, HEARING REGARDING FORM OF ORDER
  OF CONFIRMATION, MOTION OF THE CITY OF DETROIT, PURSUANT TO
22 SECTION 105(A) OF THE BANKRUPTCY CODE, FOR AN ORDER CONFIRMING
   THAT THE AUTOMATIC STAY DOES NOT APPLY TO DISCIPLINARY
23    PROCEEDINGS INITIATED BY THE CITY AGAINST CITY OFFICERS AND
   EMPLOYEES FILED BY DEBTOR IN POSSESSION CITY OF DETROIT,
                    MICHIGAN.
24         BEFORE THE HONORABLE STEVEN W. RHODES
       TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

25

```
 1  APPEARANCES:

 2  For the City of Detroit, MI:   HEATHER LENNOX, ESQ.
                                   Jones, Day
 3                                 222 East 41st Street
                                   New York, NY 10017-6702
 4                                 212-326-3939

 5                                 JEFFREY ELLMAN, ESQ.
                                   Jones, Day
 6                                 1420 Peachtree Street NE
                                   Suite 800
 7                                 Atlanta, GA 30309
                                   404-521-3939
 8
     Corporation Counsel:          MELVIN HOLLOWELL, ESQ. (P37834)
 9                                 CHARLES RAIMI, ESQ. (P29746)
                                   City of Detroit Law Department
10                                 2 Woodward Avenue
                                   5th Floor
11                                 Detroit, MI 28226
                                   313-207-3890
12
                                   JOHN SIMON, ESQ. (P61866)
13                                 Foley & Lardner
                                   One Detroit Center
14                                 500 Woodward Avenue
                                   Suite 2700
15                                 Detroit, MI 48226-3489
                                   313-234-7117
16
     For the Official Committee:   CAROLE NEVILLE, ESQ.
17                                 Dentons, US, LLP
                                   1221 Avenue of the Americas
18                                 25th Floor
                                   New York, NY 10020
19                                 212-768-6700

20  For the General Retirement     ROBERT GORDON, ESQ. (P48627)
     System of the City of Detroit: Clark, Hill
21                                 151 South Old Woodward Avenue
                                   Suite 200
22                                 Birmingham, MI 48009
                                   248-988-5882
23


24


25
```

```
 1                              RONALD KING, ESQ. (P45088)
                                Clark, Hill
 2                              212 East Grand River Avenue
                                Lansing, MI 48906
 3                              517-318-3015

 4   For AFSCME:                RICHARD MACK, JR., ESQ.
                                (P58657)
 5                              JACK SCHULTZ, ESQ. (P24890)
                                Miller, Cohen
 6                              6700 West Lafayette Blvd.
                                4th Floor
 7                              Detroit, MI 48226-3191
                                313-964-4454
 8
     In Pro Per:               JANET PEETE
 9                              Claimant
                                174 Joel Court
10                              Inkster, MI 48141

11                              DARRELL MASHALL

12   PRESENT:                   JOHN QUINN

13   Court Recorder:            Letrice Calloway

14   Transcriber:               Deborah L. Kremlick

15
     Proceedings recorded by electronic sound recording, transcript
16   produced by transcription service.

17

18

19

20

21

22

23

24

25
```

1      (Court in Session)

2          THE CLERK:  All rise.  Court is in session.  Please

3   be seated.  Case number 13-53846, City of Detroit, Michigan.

4          THE COURT:  One moment, please.  Okay, good morning.

5   In the order of things for today I would propose that we deal

6   first with the form of the order confirming the plan.

7      And then with the issues surrounding the Citizens United

8   adversary proceeding.  And then Alexander versus Detroit Water

9   and Sewerage Department.  And then the objections to claims.

10  Is that okay?

11         MS. LENNOX:  Yes, Your Honor.

12         THE COURT:  Is that okay with everybody?  Okay.

13  Regarding the form of the order confirming the plan, the

14  record should reflect that the Court did receive from the city

15  a form of proposed order which I hope and assume is the last

16  proposed draft.  And I did go through it.  Please tell me it

17  is the last proposed draft.

18         MS. LENNOX:  There -- there is a typo that was

19  pointed out to us this morning which I can run Your Honor

20  through.  And then there is the finding of fact that the

21  retirement systems would like us to delete and I think it's

22  probably correct to delete it.

23     So with those two issues which I can run Your Honor

24  through, and I think Ms. Neville has one issue she wants to

25  bring to your attention.

1          THE COURT:  Okay.  One second.  Okay.  So what are

2    your two and then I will give you mine.

3          MS. LENNOX:  Okay.  So I'm referring to the black

4    line, Your Honor.  Is that -- is that acceptable, or are you

5    referring to the clean?

6          THE COURT:  I just have the clean one here.

7          MS. LENNOX:  Okay.  Well, then I'll do this.  I've

8    got the black line so I will do this by paragraph number if

9    that's acceptable to Your Honor.

10          THE COURT:  Yes.

11          MS. LENNOX:  The typo is easy.  It's in Paragraph 40

12    of the decretal paragraphs.

13          THE COURT:  Okay.

14          MS. LENNOX:  There is about halfway down that

15    paragraph in sub section (b) which starts with the word

16    convert such amount.

17          THE COURT:  Yes.

18          MS. LENNOX:  Into.  If you go toward after the --

19    the parenthesis and amortize using a 6.75% interest rate, the

20    GRS at the direction of the city and solely as agent of the

21    city and without any liability accruing to GRS, we're missing

22    a shall, shall deduct.

23          THE COURT:  Okay.

24          MS. LENNOX:  So that was a simple typographical

25    error.

1        THE COURT: I got that one.

2        MS. LENNOX: Okay. The -- the other change that the

3 retirement systems had asked us to make and -- and frankly we

4 missed, but we do agree with it. Is in findings of fact

5 letter R, number 3.

6        THE COURT: Okay. Give me a second.

7        MS. LENNOX: Uh-huh. I believe that's on Page 46,

8 Your Honor of the claim.

9        THE COURT: Okay.

10        MS. LENNOX: If you look at sub paragraph (d). The

11 finding in sub paragraph (d), I think we both agree that

12 that's probably overstating the case. So we're --

13        THE COURT: One second. Okay. So I'm in R which

14 you've called the DIA settlement. Yes?

15        MS. LENNOX: Yes, sir.

16        THE COURT: And then there is one, two, three --

17        MS. LENNOX: Right.

18        THE COURT: Where is (d)? (3)(d)?

19        MS. LENNOX: (3)(d).

20        THE COURT: (3)(d), okay.

21        MS. LENNOX: Yes, sir.

22        THE COURT: So just strike (3)(d)?

23        MS. LENNOX: Yes, sir.

24        THE COURT: And change (e) to (d)?

25        MS. LENNOX: Yes, sir.

1        THE COURT:  Okay.  Well, while we are there, there

2   was one that I was concerned about as well.  It's in the very

3   next paragraph (4).

4        MS. LENNOX:  Okay.

5        THE COURT:  I'm not quite sure I can find on this

6   record that the city will neither be insolvent on the date of

7   the transfer of the DIA assets nor by reason of the transfer

8   rendered insolvent or unable to meet its obligations as they

9   mature.  Is that an important finding?

10        MS. LENNOX:  Well, it goes to certainly obviously

11   the allegations that the transfer is a fraudulent conveyance

12   which we dispute.  We also think that by virtue of the Court's

13   finding of feasibility that that would buttress a finding that

14   the city wouldn't be insolvent on the effective date.  But

15   obviously that's Your Honor's call on findings of fact.

16        THE COURT:  Well, it's complex because in --

17   insolvency in Section 548 is a balance sheet insolvency,

18   right?

19        MS. LENNOX:  Right.

20        THE COURT:  It's not a service delivery insolvency.

21        MS. LENNOX:  Correct.

22        THE COURT:  As we have accepted for purposes of

23   eligibility for example.

24        MS. LENNOX:  Correct.

25        THE COURT:  We have no evidence here regarding

1  balance sheet solvency or insolvency here.

2          MS. LENNOX:  Well --

3          THE COURT:  We don't know what the city's assets are

4  worth.  We know what the debts are, but we don't know what the

5  city's assets are worth.

6          MS. LENNOX:  I -- I agree that there's no balance

7  sheet per se in evidence.  But I do think that with respect to

8  the findings on certainly at least the cash portions which are

9  the city revenue portions, we show that the revenues are

10 sufficient to cover the debts that are coming out of this

11 case.

12     So if you take revenues alone which would cause us not to

13 have to value the rest of the city assets, we think that Your

14 Honor might be able to make this finding if Your Honor is

15 comfortable with it.

16         THE COURT:  I take it that ultimately you are -- you

17 are looking for a conclusion that the DIA settlement is not a

18 fraudulent transfer?

19         MS. LENNOX:  Yes, Your Honor.

20         THE COURT:  I'm certainly willing to find that.

21         MS. LENNOX:  That -- then that solves the problem.

22         THE COURT:  Let me substitute that for this.

23         MS. LENNOX:  That solves the problem, Your Honor.

24         THE COURT:  Okay.  All right.  Did you have anything

25 else for --

1          MS. LENNOX:  No, Your Honor.

2          THE COURT:  Ms. Neville, was there something you

3   wanted to put on the record, or tell me about?

4          MS. NEVILLE:  Yes, Your Honor.  Good morning, Carole

5   Neville from Dentons.

6      I'm not exactly sure where it is now.  It was -- we had

7   put it in Paragraph 75.  It relates to post effective date

8   fees for the fee review process.  Our fees and I guess the

9   fees of other professionals are covered through the effective

10  date by the fee review process.

11     Post-confirmation -- post-effective date rather, not

12  post-confirmation.  Post-effective date, the city has granted

13  us standing to participate in the fee review process which we

14  have accepted, but will not agree to pay the fees for

15  participating in it.  And they are leaving it up to Your Honor

16  to make a decision about that.  So either when in Paragraph --

17          THE COURT: That end.

18          MS. NEVILLE:  -- 75 --

19          THE COURT:  Where -- where does that end?-

20          MS. NEVILLE:  Your Honor, I -- I don't know, but in

21  -- in an ordinary bankruptcy case if you have a fee dispute,

22  you're allowed to apply for reasonable fees for participating

23  in it.  Obviously if, you know, the fee dispute is huge.  And

24  it isn't a benefit to the --

25          THE COURT:  It won't be.  It won't be.

1         MS. NEVILLE:  We have been through the fee review

2   process.  We have vetted every entry in our invoices.

3         THE COURT:  Now is not the time to resolve that.

4         MS. NEVILLE:  No, I know.  I'm not trying to.  So

5   I'm not anticipating that it will be huge, but we are

6   participating in the mediation.  You know --

7         THE COURT:  But I have to ask again, where does it

8   end?   I mean this is -- this is not a flip question because

9   you're going to participate in the -- in the fee mediation

10  process and you're going to want fees for that.  And that's

11  going to have to be reviewed for reasonableness.

12        MS. NEVILLE:  Yes.

13        THE COURT:  And if there's an issue about that,

14  you're going to want your fees for participating in the

15  resolution of that issue.  And I ask again, where does it end?

16        MS. NEVILLE:  I think we could stop, we could cut it

17  off at that point.  That we can apply for fees for the

18  mediation and I think in Your Honor's order you've opened up

19  the -- the whole fee process to anybody to file a -- an

20  objection to fees.  So --

21        THE COURT:  Well, I haven't fixed a process yet.

22        MS. NEVILLE:  I know, I'm just dreaming that.  And

23  if I could weigh in on it, we didn't have to open it up, but

24  because we have actually participated in this as I keep

25  saying.  So I think at least for the mediation we should be

1  allowed to apply for fees.

2       THE COURT:  What's the city's position?  Stand at

3  the lectern for me, would you?

4       MS. LENNOX:  Your Honor, I just -- I simply don't

5  have authority.  I mean the committee itself goes away on the

6  effective date.  So I have no authority from the city or the

7  -- or the -- the client to extend sort of payment of fees for

8  professionals for a committee that's been disbanded.

9       So I -- I don't have authority to do it.  I understand

10 Ms. Neville's argument, but to your point again, Your Honor,

11 this could be sort of an open ended checkbook kind of thing

12 that we were a little concerned about.

13       MS. NEVILLE:  Your Honor --

14       THE COURT:  Somebody is standing.  I assume that's

15 because he wants to be heard.

16       MS. NEVILLE:  Your Honor, I'd -- I'd be prepared to

17 say just fees for the mediation.  We would apply for fees for

18 the mediation and nothing beyond that.

19       But, Your Honor, I just wanted to add one point.  At one

20 point in February you looked at me and said, Ms. Neville, when

21 are you going to declare a victory and go home.

22       THE COURT:  And I'm still asking that question.

23       MS. NEVILLE:  Well, I haven't been here for your --

24 for Your Honor's reading of the confirmation order and I

25 wanted to tell you that I'm prepared not to call it a victory,

1 | but to say job well done by everybody and go home.

2 | THE COURT:  Sir.

3 | MR. HOLLOWELL:  Good morning, Your Honor.  Melvin

4 | Butch Hollowell, corporation counsel.

5 | We agree with the Court's sentiment in terms of where

6 | does this end.  We do have a mediation order.  It would

7 | propose that all the fees be disposed of in that December 3rd

8 | and 4th mediation process.

9 | THE COURT:  Mr. Hollowell, I -- I just don't know

10 | what to make of that.  Because just two days ago, your office

11 | came before me and said you can't go to mediation on that date

12 | because you won't have the information you need.  Which is it?

13 | MR. HOLLOWELL:  We -- we think we can resolve this

14 | case in the mediation process that has been laid out, Judge.

15 | THE COURT:  You do?

16 | MR. HOLLOWELL:  We do.

17 | THE COURT:  All right.  All right.  Thank you.

18 | MR. HOLLOWELL:  Thank you.

19 | THE COURT:  Okay.  Well, let me think about this and

20 | I -- I have to say part of my concern here is that -- that the

21 | -- the premise on which the retiree committee professional

22 | fees have been paid throughout this case as far as I can

23 | remember, is a matter of the city's consent.

24 | And if the city is unwilling to give its consent for that

25 | last piece, I don't know what my authority to order it is.

1  Any thoughts on that question?

2  MS. NEVILLE:  No, Your Honor.  As I recall from that

3  hearing there was a little push from Your Honor on the matter

4  of fees when we were first established as a committee and

5  retained.  And I think the city is prepared to allow your --

6  your procedures to include some mention of how the fees are

7  paid.  I haven't heard Ms. -- Ms. Lennox say that they're --

8  they're not prepared to defer to Your Honor's decision here.

9  THE COURT:  Well, what she did say is she doesn't

10  have authority from her client to consent to this.  So that

11  tells me pretty strongly that the -- that the city doesn't

12  consent to that.

13  MS. NEVILLE:  Well, the issue just arose last night

14  actually, so I'm not sure that there was some fulsome

15  discussion about it.

16  THE COURT:  Is this an issue that has to be resolved

17  today, or perhaps could be included in the mediation?

18  MS. NEVILLE:  It could be included in the mediation,

19  Your Honor.

20  THE COURT:  What do you think of that, Ms. Lennox?

21  MS. LENNOX:  That's fine, Your Honor.  I'm happy to

22  have further discussions with the state on it.

23  THE COURT:  All right.  All right.  Ms. Lennox, let

24  me ask you to review with me certain other changes to the

25  proposed order that I have in mind.

1       Now keep in mind these proposed changes are the ones that

2  occurred to me upon my quick review of this last evening.  I

3  do intend to go through it much more thoroughly today with my

4  staff to see if there are any other changes we want to make.

5       MS. LENNOX:  Of course, Your Honor.

6       THE COURT:  First, how important is it to you to

7  have the plan of adjustment which is already docketed attached

8  to the order?

9       MS. LENNOX:  I think we normally do that, Your Honor

10 for a variety of reasons.  First of all, the order refers to

11 it, so it's helpful to have it as an appendix.

12      And -- and secondly, since we've had so many iterations

13 of the plan, if people were trying to find it on the docket,

14 it -- it could be confusing.  And so because there's

15 references to it, because there's -- and because there's been

16 so many versions, we thought it would be easiest for people to

17 have one package of here's the order, here's the plan that

18 it's approving.

19      THE COURT:  Okay.  Under the caption standards for

20 confirmation under 940 -- Section 943 of the Bankruptcy Code,

21 Paragraph G, there is a suggestion that I'm going to issue my

22 opinion contemporaneously with signing this order.  That's not

23 going to happen.

24      MS. LENNOX:  And that's fine.  That was our guess,

25 so obviously Your Honor will do what you -- what you want with

1  that.

2          THE COURT:  Okay.  All right.  So I'm going to say

3  the Court's supplemental opinion regarding confirmation of the

4  plan to be issued soon is incorporated fully herein.

5          MS. LENNOX:  That's fine, Your Honor.

6          THE COURT:  And I need to make a corresponding

7  change in Paragraph 28 which will say for the reasons to be

8  set forth in the confirmation opinion.

9          MS. LENNOX:  Of course.

10          THE COURT:  In Paragraph J which deals with Section

11  943(b)(3) the fee issue, I'm going to change the language

12  slightly and this change will actually appear in several

13  places.

14          MS. LENNOX:  Uh-huh.

15          THE COURT:  This -- this same change.  So in the

16  first sentence it says -- sentence it says, the Court with the

17  assistance -- assistance of counsel will establish an

18  expeditious mediation and Court review process you have to

19  resolve any issues regarding --

20          MS. LENNOX:  Uh-huh.

21          THE COURT:  -- the reasonableness and disclosure of

22  fees, et cetera.  I am going to change that to simply say,

23  process to determine the reasonableness and disclosure of

24  fees.

25          MS. LENNOX:  Fine.

1          THE COURT:  So wherever it says the resolution of

2    fee related issues, I'm striking that and -- and substituting

3    language that just refers to the Court's determination of the

4    reasonableness of the fees.

5          MS. LENNOX:  Understood.

6          THE COURT:  Just below (j) in I guess it's (1).

7          MS. LENNOX:  Yes.

8          THE COURT:  The second sentence says, the fee review

9    process established by the fee review order will continue, et

10   cetera.  I'm going to put -- I'm going to put an opening

11   clause on that which says, unless the Court subsequently

12   orders otherwise.

13         MS. LENNOX:  Okay.

14         THE COURT:  Because I'm -- I'm actually seriously

15   considering compressing the time frames in the fee review

16   order.

17         MS. LENNOX:  Certainly.

18         THE COURT:  To expedite the resolution of this.

19         MS. LENNOX:  Okay.

20         THE COURT:  In the findings regarding the DIA

21   settlement, I'm looking at finding number 6 which is just

22   below the one on insolvency we were talking about.

23         MS. LENNOX:  Yes.

24         THE COURT:  In the sentence that talks about the

25   merit of the defenses, you have the Court further finds the

1  defenses to ASF recoupment asserted by the objecting GRS

2  participants have little merit.  I want to put the word likely

3  in there.

4          MS. LENNOX:  Yes.

5          THE COURT:  Likely have little merit.

6          MS. LENNOX:  Yes.

7          THE COURT:  In Paragraph 86 which I think is in the

8  ordering portion of the order.

9          MS. LENNOX:  Yes.

10          THE COURT:  The second sentence says, all fees and

11  expenses of the fee examiner parties whether incurred before,

12  on, or after the effective date shall remain subject to review

13  and approval of the Court pursuant to the terms of the fee

14  review order.  I -- I have to add a clause there which says

15  something like, unless subsequently amended by the Court or

16  something like that.

17          MS. LENNOX:  Certainly, Your Honor.

18          THE COURT:  And with regard to the very next

19  sentence which concludes the fee examiner's duties --

20          MS. LENNOX:  Uh-huh.

21          THE COURT:  -- upon submitting all reports, I want

22  to leave open the option of the mediator to involve the fee

23  examiner even after he has submitted his reports.

24          MS. LENNOX:  You mean during the mediation process?

25          THE COURT:  In the mediation process.

1              MS. LENNOX:  Of course, of course.

2              THE COURT:  So I'll make an amendment to -- to that

3    sentence.

4              MS. LENNOX:  Uh-huh.

5              THE COURT:  To make that clear.  And that's all I

6    have so far.

7              MS. LENNOX:  Okay.

8              THE COURT:  For the record, the Court has concluded

9    that the waiver of the 14 day stay is absolutely critical

10   here.  The record overwhelmingly establishes cause to do so.

11   The prejudice to the city of staying this confirmation order

12   for the 14 days that the rules otherwise provide, would be

13   really devastating to the city.

14        The city needs to begin to implement this plan

15   immediately because of all the issues that the Court

16   identified when it gave its opinion last Friday.  Accordingly,

17   the Court will keep that portion of the order intact.

18        Regarding fees and how we're going to process that.  I'm

19   -- I'm going to -- I'm going to simply take into account that

20   every -- what everyone has said here today and enter an order

21   which resolves this in an effective and efficient way that is

22   the least publicly contentious.

23             MS. LENNOX:  Thank you, Your Honor.

24             THE COURT:  That's my goal here.  Is Mr. Gordon

25   here?  I did read your objection to the form of the order that

1 | you submitted.  Thank you for that.

2 |     Here is how I'd like to process your -- your issue.

3 | First of all, I want to assure you that this -- this issue of

4 | whether the professional fees of the plans is subject to the

5 | Court's review for reasonableness is not an issue that the

6 | city raised.

7 |     Your -- your filing suggested that, maybe even said it.

8 | It's an issue that the Court raised.  So it's on me, not --

9 | not them.

10 |     Having said that, I think we should take a bit of time

11 | here to resolve this issue.  I -- I couldn't help but notice

12 | that the paper that you filed was not supported by any kind of

13 | a declaration or affidavit from your client.

14 |     Now, I don't fault you for that because of the timing

15 | here.  So what I want to do in due course, but relatively

16 | expeditiously is have a fuller kind of a hearing where we can

17 | explore this issue.  And maybe take some evidence.  We'll have

18 | to see how that goes.  Is that okay with you?

19 |     MR. GORDON:  That's absolutely fine, Your Honor.

20 | Thank you very much.

21 |     THE COURT:  All right.  So, just so I can get an

22 | order entered, I'm going to -- I'm going to leave you in, but

23 | with my assurance to you that this issue is subject to

24 | complete de novo review, not motion for consideration kind of

25 | review.  And whatever the right thing to do at the conclusion

 1  of that hearing is, is what we will do.

 2          MR. GORDON:  Thank you, Your Honor.

 3          THE COURT:  All right.

 4          MR. GORDON:  Appreciate it.

 5          THE COURT:  Okay.  Anything else regarding the form

 6  of the confirmation order then?  I hope to get it entered

 7  sometime today.  Sir?

 8          MR. QUINN:  Good morning, Your Honor.  John Quinn

 9  representing myself.

10     I had some email correspondence with Ms. Lennox about

11  this yesterday.  In the revised version of the proposed

12  confirmation order, it's on, I believe it's Page 96, the same

13  language appears on both Page 95 and 96.  What I'm

14  particularly concerned with is what's on --

15          THE COURT:  Can you -- can you give me a paragraph?

16          MR. QUINN:  It's paragraph --

17          THE COURT:  Because I don't think my page numbers

18  are the same as what you all are working with.

19          MR. QUINN:  Okay.  It's Paragraph 41 -- or excuse

20  me, Paragraph 40.

21          THE COURT:  Okay, I have that.

22          MR. QUINN:  I believe it's under sub section (k).

23  Starts for each ASF distribution recipient.

24          THE COURT:  Okay, hold on.  Yes, I have Paragraph

25  40.

1          MR. QUINN:  All right.  The new language is maybe

2    about three or four if -- if your paging is the same as mine,

3    three or four lines above the page break.

4          And the GRS -- this is what's new, I believe.  At the

5    direction of the city and solely as agent of the city and

6    without any liability accruing to the GRS.  That's just before

7    where the word shall was suggested from --

8          THE COURT:  I have that, sir.

9          MR. QUINN:  All right.  This is not something that

10   was in the plan of adjustment and I think it's a substantive

11   matter.  That since it wasn't in the plan of adjustment, we

12   didn't get a chance to litigate it earlier.

13         First of all, we're talking about a decision to -- or a

14   -- a directive to disburse or not disburse funds that are in

15   the GRS trust.  The -- GRS cannot act as an agent of the city

16   when disbursing or not disbursing funds that are in its sole

17   control and the city has no right to -- to control.

18         And so the city may do it on the basis of -- of a

19   calculation.  Or excuse me, GRS may do it on the basis of a

20   calculation it gets from the city, but it would not be an

21   agent of the city.  It would be controlling its own property.

22         Secondly, without any liability accruing to the GRS, the

23   -- GRS is not the debtor here.  This -- GRS has a duty that

24   pre-existed this bankruptcy to distribute funds from the --

25         THE COURT:  Are you going to sue the GRS if they

1 comply with this order, is that what you're telling me?

2          MR. QUINN: Well, I -- I noted earlier, Your Honor,

3 that there was no injunction suggested in the plan of

4 adjustment which I thought was rather strange. And I -- I did

5 in my objection bring it to the Court's -- Court's objection

6 and there still is no injunction.

7      But it appears that this is an effort to -- to adjust a

8 debt of GRS which was not previously -- since as I mentioned

9 this language was not previously brought up until this point.

10 I think that leads the Court into error, but whether it does

11 or not it's not -- it's not --

12          THE COURT: Okay. So the change you seek is to

13 strike the language and solely as agent of the city and

14 without any liability accruing to the GRS, is that -- is that

15 what you like here?

16          MR. QUINN: I would also suggest striking at the

17 direction of the city since the city has no authority to

18 direct GRS in what it does with its own assets.

19          THE COURT: Okay. Thank you, sir.

20          MR. QUINN: Thank you, Your Honor.

21          THE COURT: Anyone like to address this?

22          MR. GORDON: Good morning, Your Honor. Robert

23 Gordon on behalf of the retirement systems.

24      That language that Mr. Quinn is referring to was

25 suggested by us to the city and the city graciously agreed

1 | that it should be inserted into the order.  All it is doing is

2 | reflecting the fact that the plan and the city are the ones

3 | who are directing the GRS to deduct these amounts.  We're

4 | doing it pursuant to the authority of the plan, we're not

5 | doing it on our own behalf.  Mr. Quinn's argument is --

6 | THE COURT:  It feels to me more like a direction of

7 | the Court than a direction of the city.

8 | MR. GORDON:  It -- we could have it say at the

9 | direction of the Court, but I didn't know if we wanted to say

10 | that or not.  But it could be at the direction of the Court,

11 | or pursuant to the plan and the order.

12 | But ultimately what we wanted to make clear was as to

13 | this particular function, that GRS is serving solely in a

14 | ministerial functioning capacity to implement something under

15 | the plan and shouldn't have any liability for that.

16 | THE COURT:  Well, I would proposed that -- that we

17 | -- that we change it to state after and the GRS, pursuant to

18 | the plan and at the direction of the Court.  Is that okay, Ms.

19 | Lennox?

20 | MS. LENNOX:  Yes, Your Honor.

21 | THE COURT:  Now with regard to the issue of

22 | liability, it -- it frankly seems to -- to the Court to be

23 | preposterous that the GRS could incur any liability under

24 | state law for complying with an order of the Federal Court.

25 | So I'm going to leave that part in.

1        In fact, in light of what's been placed on the record

2   here today, to the extent it isn't already in here, an

3   injunction against filing any action against the GRS for

4   complying with this order may well be in order.

5              MR. GORDON:  We would appreciate that.  That would

6   be terrific, Your Honor.  Thank you.

7              THE COURT:  I'll look -- I'll look for the

8   appropriate place to add that as well.  Let me make this

9   change right now while it's on my mind.  You have the word

10  plan capitalized in here, right?

11             MS. LENNOX:  Yes, sir.

12             THE COURT:  Okay.  Anything further on the order

13  confirming the plan then?

14             MR. QUINN:  John Quinn, Your Honor, again.  I --

15  this is an issue I have not raised before.  I probably should

16  have, but I'm not a tax lawyer, so it didn't occur to me.

17       But as I understand it, when I made contributions to my

18  ASF account, I made those contributions out of after tax

19  dollars.  And so when they're returned to me in any way that

20  they're returned, what I had already paid tax on is not

21  taxable.

22       Everything I get in my pension is taxable.  And so I'm

23  not quite sure what the tax consequences are going to be if

24  when the ASF comes out -- the ASF recoupment comes out of my

25  pension.

1        I don't know if that's an issue that should be addressed

2    in this order or not, I'd just bring it to the Court's

3    attention.  It could have some serious consequences for lots

4    of retirees.

5              THE COURT:  Mr. Gordon, has your client contemplated

6    this issue and how to – how to facilitate retirees getting

7    proper information for -- for tax purposes?

8              MR. GORDON:  Your Honor, I'm going to defer to my

9    partner Ron King.

10              THE COURT:  Okay.

11              MR. KING:  Good morning, Your Honor.  Ron King,

12    Clark, Hill on behalf of the retirement systems.

13        We did just start that dialogue yesterday afternoon

14    engaging Mr. Miller and also the general counsels of both

15    systems, tax counsel at Clark, Hill.  So I think we have an

16    answer that will probably be satisfactory to the plan

17    participants but we're trying to button that down.  So we're

18    -- we're working on it as we speak.

19              THE COURT:  Okay.  Well, I'm -- I'm glad to hear

20    you're working on it.

21              MR. KING:  We definitely are.

22              THE COURT:  It does seem to be a very significant

23    issue.

24              MR. KING:  It certainly is.  All right.  Thank you.

25              THE COURT:  All right.

1          MR. RAIMI:  Your Honor -=

2          THE COURT:  Sir?

3          MR. RAIMI:  I'm Charles Raimi, the deputy

4   corporation counsel for the City of Detroit.  Good morning,

5   Your Honor.

6          THE COURT:  Good morning.

7          MR. RAIMI:  Your Honor, the Mayor's position is that

8   before the Court establishes a procedure for disposing of the

9   fee issue, it would be very helpful to the Court to learn the

10  issues that we've been able to discern to date which are many

11  and serious.

12         And we didn't think that would inform the Court and help

13  the Court in drafting its order on the procedure for this

14  matter.  And obviously the Court has issued an injunction

15  prohibiting the filing of anything on the fees.  And so we're

16  left just to ask the Court before the procedure is established

17  to allow some process for the Court to obtain what we've been

18  able to discern to date.

19         THE COURT:  Uh-huh.  Ms. Lennox, do you have any

20  thoughts on this request?

21         MS. LENNOX:  Your Honor, I think it's pretty evident

22  that Your Honor is sending this whole shebang to mediation.  I

23  think whatever issues that Mr. Raimi would like to raise can

24  be raised and aired fully in the context of that mediation.

25         Since I think procedure number one is to go there,  I'm

1 not sure why that needs to inform any further exposition needs

2 to inform the Court's process order.

3          MR. RAIMI:  Your Honor, my point is this.  The Court

4 is going to set a -- set a number of time limits.  Now we're

5 -- we're delighted to go to mediation on -- on December 3rd and

6 4th and we sincerely hope that the matter will be resolved

7 there.  But if it's not, the Mayor's position is that he and

8 his lawyers will need reasonable time to prepare for a

9 hearing.

10     And -- and in making that determination of what is a

11 reasonable time, we think it would very much help the Court to

12 know --

13          THE COURT:  Uh-huh.

14          MR. RAIMI:  What the issues are, at least some of

15 the issues that we've been able to discern in a very short

16 time.

17          THE COURT:  Well, first I want to say for the record

18 here, that it's not abundantly clear to me that we need a

19 hearing.  I may just consider your written submissions.

20          MR. RAIMI:  Well, even our written submissions, you

21 know --

22          THE COURT:  But let me -- let me make -- let --

23 let's see if we can compromise this way.  Go to mediation on

24 the 3rd and the 4th, or however long it takes.  And then we'll

25 see where we are and then we'll set a procedure.

 1          MR. RAIMI:  I appreciate that very much, Your Honor.

 2   Thank you.

 3          THE COURT:  That work for you?

 4          MR. RAIMI:  Very -- very much.  Thank you, Your

 5   Honor.

 6          THE COURT:  All right.  All right.  Let -- let's --

 7   let me contemplate this to see whether that works.

 8      Okay.  We have one other open issue from Monday.  One

 9   more second, please.  Ms. Lennox.

10          MS. LENNOX:  Yes, sir.

11          THE COURT:  What do you think about having a status

12   conference regarding progress towards effective date on

13   Monday, the 24th?

14          MS. LENNOX:  That's the Monday following -- no, the

15   Monday before Thanksgiving.  That's fine, Your Honor, we're

16   happy to do it.

17          THE COURT:  Okay.  We'll find a time and a courtroom

18   and issue a notice of hearing for that.  Okay?

19          MS. LENNOX:  Thank you.

20      (Court in Recess at 9:41 a.m.; Resume at 10:47 a.m.)

21          THE COURT:  Okay.  Let's turn our attention to claim

22   -- claim objections, please.

23          MR. SIMON:  Good morning, Your Honor.  For the

24   record, John Simon of Foley and Lardner for the city.

25      Your Honor, we have up today two claims in respect of the

1  objection process.  By way of background in August, on the 29th

2  of August we filed our fifth and sixth objections, omnibus

3  objections to claims.

4      Those we're seeking disallowance of late filed claims.

5  Claims that were filed after the bar date and time barred by

6  this Court's November 21, 2013 bar date order.

7      We resolved a number of the objections and -- and claims

8  under those omnibus objections except for the two up today.

9  The two claimants up for hearing today are those -- it's

10  Reginald -- Mr. Reginald Gesing which is claim number 3673 in

11  an amount that isn't stated in the proof of claim, and Ms.

12  Janet Peete, claim number 3644 which was filed --

13          THE COURT:  I think the first fellow is Henry, isn't

14  it?

15          MR. SIMON:  Oh, I'm sorry, Henry, Henry Gesing.  And

16  Ms. Janet Peete for $20,000.

17      The bar date order, Your Honor, was November 21st, 2013

18  that generally provided proofs of claim were required to be

19  filed on or before February 21, 2014.  That bar date order

20  like all bar date orders clearly stated that if a party failed

21  to properly file a proof of claim by the bar date, that its

22  claim would be barred and forever enjoined.

23      The two creditors with claims up for hearing today were

24  notified of the bar date on November 29th, 2013 per the proof

25  of service dated December 27th, 2013 which was filed in the

1 docket at 2337.

2      Nonetheless, Your Honor, the claimants did not file their

3 claims timely.  Mr. Gesing filed his claim late on April 1,

4 2014.  And Ms. Peete filed her claim late on March 13th, 2014.

5      I would note, Your Honor, with respect to Mr. Gesing we

6 reviewed and we believe he's a pensioner and we would be

7 pleased to stipulate with him that his pension claim is

8 unaffected by this objection to claim.  The issue is his claim

9 form doesn't talk about his pension, it talks about -- and

10 it's hard to understand, Your Honor, but it talks about -- it

11 appears to talk about non-pension related claims for matters

12 somehow relating to the city's obtaining funds.  There's a –

13 there is a reference to the city obtaining $700,000.  There's

14 a reference to the city obtaining billions of dollars for its

15 plan of adjustment.  And it seems somehow that -- that Mr.

16 Gesing is saying he is entitled to something as a result of

17 the -- the city receiving those funds.

18      So to the extent that it's for anything other than his

19 pension though he's barred by the bar date order.

20      With respect to Ms. Peete, she also filed late on March

21 13th, 2014.  The city's claims agent, KCC stamps items as they

22 come in and it's noted on her proof of claim which was

23 submitted with our reply to Ms. Peete's response, that KCC

24 received it on March 13th, 2014.

25      They had did all their processing of it.  They received

1  it that day, they processed it, stamped it that day, scanned

2  it in their system that day, March 13th, 2014.

3      Ms. Peete alleges an injury she suffered on Belle Isle

4  and says someone in the city law department said she would get

5  $20,000.  I have with me in the courtroom Jim Nicita of the

6  law department and he has inquired with the attorneys in the

7  law department and the city has no knowledge or record of

8  that.

9      The claim is late and should be disallowed.  So, Your

10  Honor, with that, we would ask that both these claims are

11  disallowed, they were after the bar date.

12          THE COURT:  Thank you.  Is Ms. Peete here or anyone

13  representing her?

14          MS. PEETE:  Yes, sir, I am here.  Judge, I didn't

15  know -- Judge, I thought I was filing all my papers on time.

16  Every paper they sent to me even from California, they sent

17  papers to me for this Court in California and I filed -- I

18  filled out the papers and sent them back on time.

19      And I don't have any recollection of filing 13 and 14.

20  And I filed every paper that was sent to me that required a

21  answer.  And if it didn't require a answer, then I just filed

22  it away.

23      I have all the paperwork that was sent to me in this bag.

24  And I'm asking to please don't disallow the claim.  My feet

25  still swell from that fall.  And I -- I still have the

1    condition.

2        And the lawyer did say that I would get some money, but

3    now they have an emergency manager, Mr. Orr.  And we have to

4    see what he says first.  That was my first attorney with the

5    City of Detroit.  And he said that you have some money coming.

6    And because you did fall in an open sewage hole on the island.

7    So that's all I can say to you, sir.

8            THE COURT:  Excuse me.  Thank you.  Just stand by

9    for me for one second, please.  Chris, this computer is really

10   misbehaving again.  I'm just going to reboot ECF.  I'm sorry,

11   Ma'am, I'm having computer trouble here.

12       Mr. Simon.  Could you let Mr. Simon use that microphone

13   for me, please, Ma'am?

14           MS. PEETE:  Pardon?

15           THE COURT:  Could you let Mr. Simon use that

16   microphone, please?

17           MS. PEETE:  Oh, sure.

18           THE COURT:  Thank you.

19           MR. SIMON:  Yes, Your Honor.

20           THE COURT:   The city asserts that it was prejudiced

21   in any way by the delay in Ms. Peete's filing her proof of

22   claim on March 13th instead of by February 21st?

23           MR. SIMON:  Yes, Your Honor, we -- we do because the

24   bar date exists for a reason.  It exists to protect the estate

25   from late filed claims to make sure that things cannot be just

1 | filed after the bar date.

2 |      That we have certainty as to the amount of claims.  In

3 | this case there are other bases separate from the time delay

4 | why the city believes this claim will not end up being valid.

5 | It is -- from my understanding talking to Jim Nicita of the

6 | law department, it is a sidewalk matter and there has to be a

7 | notice filed of the claim by the -- by the claimant that was

8 | not filed by the claimant here either.

9 |           THE COURT:  But none of that is in -- is in this

10 | objection, right?

11 |           MR. SIMON:  Correct.  Because it's not -- this is

12 | only as to the late filed claim part, Your Honor.  I would

13 | also add --

14 |           THE COURT:  My question -- my question really was,

15 | is there anything about the delay that would impact your

16 | ability to defend it on its merits?

17 |           MR. SIMON:  Your Honor, there -- there is not

18 | anything that would -- that would affect our ability to defend

19 | it on its merits.  But it is just going to be costly --

20 | additional cost, additional expense so we are prejudiced by

21 | it.  Moreover, I would add --

22 |           THE COURT:  Well, if the -- if the claim had been

23 | filed timely those costs and that delay would have been

24 | incurred.

25 |           MR. SIMON:  Yes, Your Honor.  The costs of dealing

1  with it on a more substantive basis would have been incurred.

2  Part of our purpose of course is to try to make this as

3  efficient a process as possible.

4      There's -- there's one other thing I'd like to point out

5  to Your Honor if -- if Your Honor is willing to hear me on it.

6          THE COURT:  Go ahead.

7          MR. SIMON:  You know, I understand -- and no one --

8  no one takes pleasure in these kinds of claim objection

9  situations.  But I would -- I would note that -- that Ms.

10  Peete said she filled out the paperwork "right away" in her

11  reply and filed it, "way before my claim was due".

12      But, you know, looking at the record, there was notice

13  given of the bar date on November 29th, 2013.  You know, even

14  taking the documents that were -- that were filed and the

15  proof of claim on their face, the proof of claim wasn't signed

16  until two and a half months later on February 18th.  And it

17  wasn't submitted then until -- you know, assuming that -- that

18  that's correct what's in the proof of claim.  It wasn't

19  submitted until two days before or three days before the bar

20  date.

21          THE COURT:  All right.  The Court is going to allow

22  the claim to stand, but subject to the city's right to object

23  to it on its merits.

24      In -- in the <u>Pioneer</u> case the Court instructed a more

25  flexible standard for excusable neglect and requires the Court

1  to take into account not only the merit of the potential

2  claim, but the reason for the delay and the prejudice to the

3  debtor.

4      The Court must conclude that there is no record -- no

5  basis in the record, excuse me, for a finding of prejudice

6  here.  It's clear enough that the reason for the delay,

7  assuming there was any here, was the claimant's lack of

8  sophistication in how to deal with this process.

9      And we'll deal with the merit of the claim when the city

10  objects to that.  So the Court will overrule this objection

11  without prejudice.

12          MR. SIMON:  Thank you, Your Honor.

13          THE COURT:  All right.  Ma'am, if you'll stand back

14  at the microphone for me, please, if you can.  I just want to

15  be sure that you understand what I just said.  Okay?

16          MS. PEETE:  Okay.

17          THE COURT:  I'm overruling this objection to your

18  claim which asserted that the claim was late.  Okay.  I'm --

19  I'm giving you the benefit of the doubt and allowing --

20  allowing it to be filed even though it was late.  Okay?

21          MS. PEETE:  Okay.

22          THE COURT:  But the city can still object to your

23  claim and assert that they don't owe you any money.  Okay.  So

24  if they do that and you want to recover from the city here, I

25  would strongly urge you to retain an attorney to represent you

1  in that matter.  Because that will be a much more complex

2  matter than just deciding whether your claim was late or not.

3  Okay?

4           MS. PEETE:  Okay.

5           THE COURT:  All right.  That's all on this one.

6           MS. PEETE:  Well, I have to get a lawyer because I

7  am limited -- my funds is really limited and I have a -- live

8  only on a small amount of money.  And I did have a lawyer, Ms.

9  Ramsey and something happened with her that she didn't follow

10  through on the case.  But every paper that they sent me, I did

11  try to answer it.

12          THE COURT:  Okay.

13          MS. PEETE:  And if -- if I did something that was

14  wrong, I didn't understand the paperwork.

15          THE COURT:  Okay.

16          MS. PEETE:  That's all I can say.  I didn't

17  understand it, so --

18          THE COURT:  The only thing I can suggest to you is

19  to try some kind of legal aid.

20          MS. PEETE:  Okay.

21          THE COURT:  All right.  Let's turn our attention to

22  the other matter, Henry Gesing.  Is he here or anyone on his

23  behalf?  No response, all right.  The Court sustains that

24  objection to that proof of claim on the grounds that the city

25  asserts.

1        MR. SIMON:  Thank you, Your Honor.  I'll submit an

2   appropriate order on the objections.  I believe that the

3   Jones, Day folks have a couple more claims objections they've

4   been dealing with for some time, so I'll cede the podium.

5        THE COURT:  Okay.

6        MR. ELLMAN:  Good morning, Your Honor.  Jeffrey

7   Ellman from Jones, Day on behalf of the city.

8        We do have a status conference today.  It's actually not

9   a hearing, I guess with the notice of the status conference on

10  two claims.  This is a -- these are two claim objections we

11  filed back in May to the claims of 2958 of AFSCME, and claim

12  2851 which is a coalition of unions that filed that claim.

13  And the claims somewhat overlap, so they're related to each

14  other.

15       These together, and I guess the AFSCME claim individually

16  really are the largest unsecured claims in the case by quite a

17  margin.  The AFSCME claim was filed for 8.7 billion dollars

18  and even after it's been now reduced a bit, it's still,

19  although the math is hard to figure out exactly, hundreds of

20  millions let's say.

21       And as the Court is aware, I believe the Class 14, we've

22  estimated the end total for that class will be $150,000,000.

23  So this is obviously a fundamental -- of fundamental

24  importance to get this claim resolved.

25       We did have a mediation with Judge Roberts a number of

1  weeks ago.  We did in fact make some progress I would say in

2  -- in understanding a bit more of the claim and maybe vice

3  versa.  I guess that would be a question for the union.  But I

4  think there was some progress and certainly some of the claims

5  were withdrawn as a result of that process, but we did not

6  resolve the claim.

7      And we've had discussions among the parties over the last

8  number of days and weeks about how to proceed and very lengthy

9  discussions this week.  And I thought what I would do to start

10 is kind of give you a sense of where we are on this claim

11 because it has a number of components to it.

12     And there are actually 20 components that are listed in

13 AFSCME's claim and I don't know if the Court has a copy of the

14 proof of claim.  If you -- if you don't and would like it, I

15 can kind of like a score card I can sort of tick off the items

16 and the 20 elements.  And if you'd -- if you'd like a copy, I

17 have one.

18          THE COURT:  Sure.  That would be helpful.  Thank

19 you.

20          MR. ELLMAN:  If I could approach.

21          MR. SCHULTZ:  Your Honor, as a procedural statement,

22 I know Richard Mack from AFSCME from Miller, Cohen is supposed

23 to be on a call right now and teleconferencing.  I just wanted

24 to make sure that he is --

25          THE COURT:  Good point.  Mr. Mack, are you on the

1  phone?

2      MR. MACK:  Yes, Your Honor.  My apologies.  I'm

3  actually out of state at the moment, but I am -- I have been

4  participating and as he announced, Jack Schultz from our

5  office is present in the courtroom, Your Honor.

6      THE COURT:  Thank you, sir.

7      MR. ELLMAN:  If I might proceed then.  Your Honor,

8  so what I've done in a very low tech way, is I wrote the

9  numbers 1 through 20 in the margin there next to each of the

10  elements.  And so however you want to keep score of these, I

11  guess you can.

12      But, you know, I am happy to say that we've narrowed the

13  scope a bit at least in this, although we're certainly not

14  done.  So this is where I think we have agreement.  We have

15  claim item numbers 1, 2, and 12 again with my numbers there in

16  order.

17      So those three items have been withdrawn by the union.

18  So they're -- they're gone.  That includes the 8.1 billion

19  dollars of the pension under funding claim which is number 1.

20  So that is important.  But 1, 2, and 12 are -- are withdrawn.

21      And then items 7 and 17, Your Honor has already decided

22  those issues in a hearing that was conducted on the 13th check

23  and the OPEB claims and the treatment of those.  So 7 and 17

24  are also -- they've been addressed.

25      Then items 14, 15, and 18 are three items that really

1 relate to ordinary course grievances that are being resolved

2 in the normal course.  So when we look at 14, 15, and 18 we do

3 not believe we need the Court's assistance at this time.

4 Hopefully we will not at any point need the Court's assistance

5 to resolve those.  They appear to be being resolved in the

6 normal course.

7      And then in number 20 which is the very last claim, it

8 was a very small claim, or it's a small claim anyway for

9 wrongful termination of an employee.  Relates to a single

10 employee.  And the parties are confident they can work out the

11 right number without the assistance of Your Honor.

12      So that -- that's nine of the 20 right there.  That I

13 think there's consensus are we don't need help on, at this

14 point have already been addressed, or withdrawn.

15           MR. MACK:  And -- and, Your Honor, AFSCME concurs

16 with that assessment.

17           THE COURT:  Thank you, sir.

18           MR. ELLMAN:  Then we have three more that I think

19 are relatively in agreement as to where they stand.  And those

20 are first item 10 which the city believes is related to an

21 ongoing grievance discussion that might resolve item 10.

22 Without getting into the substance of it, we can certainly

23 talk on any of these, Your Honor, about the substance of it.

24      But the parties are discussing that and we're -- we're

25 trying to reach agreement whether that is true.  So it could

1  turn out that we have a dispute, but for now I think this

2  matter we would suggest we need a little more time to

3  determine if this is something that might get resolved in the

4  course of discussions or we would need assistance of the

5  Court.

6       And then items 13 and 19 -- items 13 and 19.  Those are

7  matters where the parties are still exchanging information to

8  kind of figure out exactly what's going on.  We're not sure if

9  we can resolve these, if we need to litigate them, there's a

10  little bit of an information gap between the parties that we

11  need to bridge.  And I think we would suggest -- I think the

12  parties agree that those should probably be deferred for a

13  short bit as we do that.

14      So that's -- those -- that's three more of the claims.

15  That's 12 total we've talked about now.  And so that leaves 8

16  components left.

17      Of those 8, I think we have a general framework on what

18  might happen to some of these and how we might approach it.

19  Although I know that the union has some other ideas about how

20  this proceeds.  In other words whether it should proceed in

21  front of Your Honor or not.

22      But assuming it proceeds here, I think there is relative

23  consensus that six of the items have threshold legal issues to

24  be addressed.  And those are items 3, 4, 5, 6, 8, and 11.

25      Three, 4, 5, 6, 8, and 11.

1       And number 8, Your Honor, in this claim by AFSCME is the

2  -- is essentially the same legal argument that is in the

3  coalition claims.  This would bring in the coalition claim as

4  well.  And most of these issues, all but one of them relate to

5  the duty to bargain and whether there was a duty to bargain

6  and when the city implemented certain employment terms or took

7  other actions, whether there was a duty to bargain that was

8  allegedly violated, or whether the city was acting

9  appropriately.

10      And there's one that actually was a -- arises out of an

11 ALJ decision governing changes in contracts.  But again we --

12 we think all these are legal issues as a -- as a threshold

13 matter.  In other words if the city is correct then the claim

14 goes away.  And if the city is wrong, then there may be a need

15 for some further proceeding, whether it's to determine damages

16 or calculation of damages or what have you.

17      I think there's somewhat of a disagreement on a couple of

18 these whether there might be a need for the -- for the parties

19 to work out a fact stipulation.  We believe the record

20 establishes the facts sufficiently for the Court to -- to rule

21 on these.

22      I think Mr. Mack will probably tell you that he would

23 like for the parties to work out some kind of a fact

24 stipulation.  I think on number 8 in particular which deals

25 with whether the city was required to -- or whether the city

1  acted appropriately in not approving a tentative agreement

2  that the unions entered into, whether that was appropriate and

3  there might be some facts.

4      We don't think the facts are disputed, but we might need

5  to confirm with Mr. Mack that we -- we have those facts agreed

6  to.  But either way I think those six items, what we would

7  suggest happen would be we've agreed with Mr. Mack that these

8  go forward in front of Your Honor.  That there -- there

9  probably could be supplemental briefing in the near term, you

10 know, December, January time frame and have a -- have a

11 argument if Your Honor would like to do that in January or

12 sometime promptly.

13     So that's -- that covers six more.  And that leaves two

14 left.  Item number 16 where there is already an arbitration

15 award of a -- a violation of the CBA.  And I think all we need

16 to do there is set an amount for the damages.

17     And the city would, we believe, would agree to some kind

18 of a discovery schedule to do that.  This actually is a matter

19 the city did appeal.  There is an appeal pending on this.

20     But our belief is that the city would agree not to pursue

21 that appeal and simply do the discovery and set the amount of

22 the claim.  We -- we were trying to confirm that definitively

23 this morning and we might learn that when we turn our devices

24 back on and leave the courtroom.  But I believe that's where

25 we're going to end up with number 16.

1      And the final item number 9 is an allegation that the

2  city violated a privatization ordinance.  And the city's view

3  is this is a extremely vague claim.  It doesn't really state a

4  claim.  We would suggest it should be disallowed.

5      I think Mr. Mack may wish to have time to amend the

6  claim.  We haven't really worked out how that would happen.

7  So I think item 9 is somewhat in dispute as to a process.

8      And as I said, I believe Mr. Mack is going to suggest

9  some -- perhaps that Your Honor should not hear any of these,

10  but to the extent that Your Honor hears them, I think we have

11  a rough agreement on what I just described, subject to what

12  Mr. Mack will tell you.

13          THE COURT:  Go ahead, sir.

14          MR. MACK:  Yes.  Thank you, Judge.  Just to back up.

15  As we've been discussing these matters, even after the

16  mediation effort, it's been apparent to me that, and what I'd

17  like to suggest to Your Honor, is the concept of permissive

18  abstention.

19      We're dealing with a number of B notes here.  None of

20  these claims are going to have any impact on the city's

21  property beyond what has already been agreed to within Class

22  14.  And so having Your Honor, although I hope Your Honor

23  doesn't think that my suggestion of permissive abstention

24  would somehow suggest that we're less than confident in Your

25  Honor's ability to grapple with these matters, but the matters

1  will involve a substantial amount of detail, particularly when

2  you get to the factual disputes which I do believe exist for

3  the -- the remaining, I believe it was 10 that Mr. Ellman just

4  missed it, the last 10.

5      In addition to the damage calculation, I mean having Your

6  Honor go through an evidentiary hearing concerning, you know,

7  80 plus members, and their overtime rate, and the appropriate

8  amount of back pay that they're entitled to, our suggestion

9  was that abstention -- actually our initial suggestion was

10  abstention to a handful of arbitrators who would

11  simultaneously carve up the remaining claims that haven't

12  already been withdraw or otherwise agreed to for settlement.

13  And hear them simultaneously and we can get to a much quicker

14  resolution.

15      The city hasn't at this point agreed to permissive

16  abstention for arbitration and, you know, but at -- at the

17  least, there are matters which are unique to state law and

18  this one matter in particular I think may be less than clear

19  within state law.

20      So having Your Honor issue rulings on those issues as

21  opposed to sending them back to the appropriate tribunals

22  within state law.  You know, the latter would be the better

23  route from our opinion.  But we -- we do suggest that -- that

24  abstention route, and I wanted to present that to Your Honor

25  because it does appear to me that since we're dealing with a

1  fine item on notes and even cash, but notes and we're dealing

2  with issues that are unique to state law, some of them fairly

3  esoteric that permissive abstention may be a good route to go

4  and -- and let those other matters be addressed by other

5  tribunals.

6      THE COURT:  Well, I think the best way to tee up the

7  abstention request is to file a motion for abstention and give

8  the city an opportunity to respond.  And I would suggest that

9  that would be done -- should be done sooner than later so that

10 everyone can understand what forum you're going to be in.

11     And we should probably do that before we tee up the

12 substantive issue of whether there is any viable claim that

13 arises out of the city's failure or refusal, however you

14 characterize it to enter into the collective bargaining

15 agreement that had been negotiated.

16     So Mr. Mack, let me ask you, is that a motion you can

17 file say within 14 days?

18         MR. MACK:  Absolutely, Your Honor.

19         THE COURT:  And then the city will respond in due

20 course and we'll set it for a prompt hearing after a response

21 is filed.

22         MR. ELLMAN:  I think that's fine, Your Honor.  And I

23 think it goes without saying that we will oppose that we'll --

24 we would like to have this done promptly.  It does just

25 emphasize the effect very significantly our ability to make

1    distributions to get this claim resolved.

2         THE COURT:  Right.  So if that is denied, I would

3    want to go to a hearing very promptly on this issue that

4    affects so many of these claims.

5         MR. ELLMAN:  Uh-huh.

6         THE COURT:  I'm not actually sure any further

7    briefing is required.  It seems to me --

8         MR. ELLMAN:  We -- we --

9         THE COURT:  The various pleadings that you all have

10   filed you have covered it.

11        MR. ELLMAN:  I'm sorry to interrupt, Your Honor.  I

12   was --

13        MR. MACK:  Well, Your Honor, if I can speak to that.

14   The -- the issue with further briefing comes up because the

15   original objection from the city's claim -- to the -- to the

16   union's claim rather, that the city filed back in May was very

17   generic and -- and -- and really didn't spell out the merits

18   of any of the particular claims.

19        The union's response was sort of here is the scope of

20   what the claim is, Your Honor, because we weren't really

21   responding to anything in particular.  The reply brief which

22   by the way was, you know, significantly longer than five

23   pages, did get into the merits of -- and really is what the

24   city should have filed in its original objection back in May.

25        So there are issues and arguments that the city has

1  raised for the first time in a reply brief --

2         THE COURT:  Okay.

3         MR. MACK:  -- that should have been addressed --

4         THE COURT:  All right.  So you -- you need another

5  opportunity to respond, huh?

6         MR. MACK:  Yes.

7         THE COURT:  Okay.  Well, we'll certainly build that

8  into a schedule then.  But let's start with this abstention

9  issue.  Hold on one second.  So let's see, two weeks from

10 today would be November 26th.

11        MR. ELLMAN:  Is that Thanksgiving?

12        THE COURT:  That's the day before.

13        MR. ELLMAN:  The day before, okay, good.

14        THE COURT:  So then the city would have a couple of

15 weeks to respond.  Chris, do we have a courtroom or anything

16 else going on December 17th?  All right.  Let's -- let's set a

17 tentative hearing date on the motion to abstain for Wednesday,

18 December 17th.  And we'll let you know the time and the place.

19        MR. ELLMAN:  Okay.  Thank you, Your Honor.

20        THE COURT:  Because we have to work with the

21 District Court.

22        MR. ELLMAN:  That's fine.  Thank you, Your Honor.  I

23 believe that's all we have on --

24        MR. MACK:  And just, Your Honor, I would was just

25 going to comment.  If -- if there are comments that we would

1 have to how the Court -- or how -- how the city just

2 characterized the remaining items, if it pleases the Court,

3 instead of us going through that now, we could either file

4 something, or file it in our supplemented papers.  Because

5 there are a number of factual issues that we'd like to point

6 out to the Court.  And however -- however, Your Honor wants to

7 deal with that.

8        THE COURT:  Well, the thing that would be most

9 helpful for me would be for the two of you to file some kind

10 of a joint statement in which you outline for me claim by

11 claim by claim --

12        MR. ELLMAN:  Uh-huh.

13        THE COURT:  -- through the -- how many of them are

14 there, twenty?

15        MR. ELLMAN:  Twenty.  Yes, Your Honor.

16        THE COURT:  You know, so -- so claim by claim for

17 the 20 what you do agree upon and what you don't agree upon.

18 And -- and to the extent you don't agree, what your respective

19 positions are.

20        MR. ELLMAN:  We can do that.  When would you like

21 that, Your Honor?

22        THE COURT:  Whenever it's convenient for you.

23        MR. ELLMAN:  Okay.  Thank you.  We will do that.

24        THE COURT:  Okay.  So I think -- I think that will

25 give you, Mr. Mack, the opportunity to say whatever you want

1  to say about each claim, okay?

2         MR. MACK:  Absolutely.  Thank you, Judge.

3         THE COURT:  All right.  Anything further then?  Are

4  we going to deal with the coalition union's objection or claim

5  and objection, or does this cover that?

6         MR. ELLMAN:  I think it covers that.  To be clear I

7  guess --

8         MR. MACK:  Probably.

9         MR. ELLMAN:  -- I should have -- I should have said

10  this.  But Mr. Mack has been representing the -- the coalition

11  -- or AFSCME is representing the coalition through Mr. Mack,

12  so I believe this all covers everything.

13         THE COURT:  Okay.  Do you agree with that, Mr. Mack?

14         MR. MACK:  I'm sorry.

15         THE COURT:  Do you agree with that, Mr. Mack?

16         MR. MACK:  Yes.  We also -- our office also

17  represents the coalition which is the 27 unions including

18  AFSCME and this joint statement, we can probably do the same

19  thing for the coalition having another joint statement.

20      But I agree with Mr. Ellman that claim 8 of the AFSCME

21  claim is identical to the entirety of the legal aspects of the

22  coalition claim, so they do go together.

23         THE COURT:  All right.  Anything else on our agenda

24  for today?  Sir?

25         MR. MARSHALL:  Your Honor, I have a -- an objection

1  that I filed in the clerk's office.  Do you have a copy of it?

2            THE COURT:  What is your name?

3            MR. MARSHALL:  Darrell Marshall.

4            THE COURT:  Mr. Marshall, what does your objection

5  relate to?

6            MR. MARSHALL:  It -- it relates -- it relates to the

7  classification of a claim that I filed.  And the disallowance

8  -- the disallowance and expungement of the claim.

9            THE COURT:  Oh.  Is Mr. Simon -- Mr. Simon, do you

10 know what this relates to?

11           MR. SIMON:  Your Honor, I -- I do know what this

12 relates to because Mr. Wilson caught me after the hearing on

13 Monday and tried to explain it.  It was a claim objection that

14 Jones, Day filed back in, I believe May, that was approved by

15 the Court on, I think, June 24th of this year.

16           THE COURT:  And what was the objection based on?

17           MR. SIMON:  The -- the objection was to Mr. Wilson's

18 claim which was a Section 1983 claim that I recall the -- the

19 6th Circuit had already ruled on that the city was not liable

20 before that.  And so there was, I believe, an opportunity at

21 that time to be heard.  But, you know, again, I didn't handle

22 that claims objection.

23           THE COURT:  Okay.

24           MR. SIMON:  So that's what I know about it.

25           THE COURT:  All right.  Thank you, sir.

1          MR. SIMON:  And then there was this subsequent

2    filing that was made more recently in respect of the -- the

3    plan settlement.

4          THE COURT:  Thank you.  All right.  Now what did you

5    want to tell me, sir?

6          MR. MARSHALL:  Now in -- in regards to the appellate

7    court dismissing the claim, they didn't actually state that

8    the city wasn't liable.  But on -- I filed a motion to vacate

9    the judgment so that I can file a independent civil rights

10   complaint under -- under Section 1983 in the District Court.

11         THE COURT:  And when -- and when did you file that?

12         MR. MARSHALL:  It was probably January of 2013.

13   There was some other motions filed.  The Judge in the District

14   Court finally denied my motion.  I filed a notice of appeal in

15   the 6th Circuit.

16       The 6th Circuit asked for a fee waiver.  I filed a motion

17   -- I filed an application for a fee waiver in the District

18   Court on 6-12 -- 6-12-2013 and the City of Detroit filed their

19   bankruptcy case I think -- what was the exact date of the

20   filing of the bankruptcy case?

21         THE COURT:  It was July 18th of 2013.

22         MR. MARSHALL:  Right.

23         THE COURT:  All right.  So Mr. Marshall, what I'm

24   going to do is I'm going to review all of the papers relating

25   to your situation and see if there's anything I can do for

1  you. Okay?

2         MR. MARSHALL: All right. Can I say --

3         THE COURT: Yeah.

4         MR. MARSHALL: Now, the -- I got a -- an up to date

5  docket sheet from the clerk's office this morning.

6         THE COURT: Okay.

7         MR. MARSHALL: But I -- you know, I had a previous

8  docket sheet which gives all the dates that these -- that the

9  pleadings was filed. And the City of Detroit actually filed

10  their bankruptcy case while the application was still

11  pending --

12         THE COURT: Uh-huh.

13         MR. MARSHALL: -- in the appellate court.

14         THE COURT: Uh-huh.

15         MR. MARSHALL: And the automatic stay went into

16  effect. And when the automatic stay went into effect then,

17  you know, the District Court -- I mean everything stops.

18         THE COURT: Yes.

19         MR. MARSHALL: And but there was -- the appeals

20  Court continued to make rulings in this case after the City of

21  Detroit had -- had filed the bankruptcy case. And well, you

22  know, that's the issue that I have on as far as the -- my

23  grounds for this claim.

24         THE COURT: Claim, right.

25         MR. MARSHALL: Now there -- when I filed this --

1  this motion to reinstate the case in the District Court, there

2  were several supporting documents attached to that motion.

3  And, you know, the understanding that I had when the city

4  first filed this bankruptcy case, all the 1983 cases was

5  supposed to be referred to Judge Rosen for review to determine

6  if the -- if the city was -- was liable.

7       And, you know, there's several supporting documents

8  that's attached to this -- to this motion and, you know, at

9  this point I've developed a brain disease that -- from a

10 injury that I -- that I directly received from a Detroit

11 police officer.

12      The guy hit me with a pistol.  I suffered hemorrhage on

13 the brain.  And for several years several doctors were stating

14 there was no hemorrhage.  I went over to Beaumont Hospital in

15 2013 and they did a MRI report, and the MRI that they did at

16 Beaumont Hospital revealed the -- this brain disease is called

17 hemosiderosis.

18      And it -- it -- it occurs through -- from -- from

19 hemorrhage on the brain.  And, you know, a lot of the evidence

20 that I have now was not available when I first filed that

21 motion, but I feel there's still supporting documents attached

22 to that motion that will prove that this is a 1983 claim.

23      And, you know, the -- the other objection that I have is

24 the -- is the fact -- is how this case was classified.  You

25 know, it was classified as a core proceeding, a tort claim

1  core proceeding.

2      And, you know, which states that the city had no contract

3  with me or, you know, it was -- the injury occurred through an

4  indirect -- through -- well, it was a indirect injury but, you

5  know, that's not the case.

6      You know, I was -- I was assaulted by a police officer.

7  When I was assaulted the Detroit Police Department destroyed

8  the arrest record and the information where I was transferred

9  from the 10th Precinct here in Detroit to Detroit Receiving

10  Hospital, the Detroit Police Department destroyed that

11  information and made it seem that, you know, I was having

12  hallucinations about the Detroit police, making it seem like

13  the incident never -- never occurred.

14      But, you know, I have -- there is several documents

15  attached to the motion that I filed --

16          THE COURT:  Uh-huh.

17          MR. MARSHALL:  -- that will prove otherwise.  And,

18  you know, 1983 claims again, you know, when this -- when the

19  bankruptcy case was first filed, I had the understanding that

20  1983 cases was supposed to be referred back to Judge Rosen,

21  the chief judge in the District Court for his review to

22  determine if there -- if a claim exists.  And, you know, I --

23          THE COURT:  And actually, sir, they were referred to

24  him to see if it could be settled.

25          MR. MARSHALL:  Right.

1           THE COURT:  In -- in mediation.

2           MR. MARSHALL:  All right.  And -- and based on the

3  fact that my claim was classified as a -- as a core

4  proceeding, you know, a tort claim, evidently my case didn't

5  go to him.

6           THE COURT:  Uh-huh.

7           MR. MARSHALL:  You know, and -- and the evidence

8  that's attached to my motion is just sitting there.  And, you

9  know, everyone is ignoring it, you know, and this stuff has

10  been going on for 30 years.  You know, I've been -- I've --

11  I'm -- you know, I submitted all --

12           THE COURT:  Let me ask you when was this injury that

13  -- that you say this police officer struck you with his --

14  with his pistol?

15           MR. MARSHALL:  It was on April 24 of 1984.

16           THE COURT:  Uh-huh, okay.

17           MR. MARSHALL:  And when I --

18           THE COURT:  Well, I'm going to -- I'm going to look

19  at all of the papers in your case and see if there's anything

20  I can do for you.

21           MR. MARSHALL:  Now the --

22           THE COURT:  All right.  So you -- you let me --

23           MR. MARSHALL:  All right.  The motion --

24           THE COURT:  You let me -- you let me do that for

25  you, okay, sir?

1    MR. MARSHALL:  All right.  The -- the motion that I

2  filed in the District Court, will you be -- be reviewing that?

3    THE COURT:  Yes, yes.  I have that on my computer.

4    MR. MARSHALL:  Yes.  All right.

5    THE COURT:  All right.  Thank you.  All right.

6  Anything further from anyone?  All right.  We're in recess.

7    THE CLERK:  All rise.  Court is adjourned.

8    (Court Adjourned at 11:31 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

We certify that the foregoing is a correct transcript from the

electronic sound recording of the proceedings in the

above-entitled matter.


/s/Deborah L. Kremlick, CER-4872          Dated: 11-16-14
Letrice Calloway