## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |
| | ) | Related to Doc. No. 8253 |

## BRIEF IN SUPPORT OF THE DETROIT RETIREMENT SYSTEMS' LIMITED OBJECTION TO ENTRY OF PROPOSED ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

The Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (together, the "Retirement Systems") hereby file this brief in support of The Detroit Retirement Systems' Limited Objection to Entry of Proposed Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (the "Limited Objection") [Dkt. No. 8253], stating as follows:

201584777

## Preliminary Statement

1.      As set forth in the Limited Objection[1], the Retirement Systems disagree with the notion that the Court has jurisdiction under Bankruptcy Code section 943(b)(3) to review the reasonableness of the professional fees they have incurred protecting their interests in this bankruptcy case.  Pursuant to the Court's invitation in its November 13, 2014 Order [Dkt. No. 8286] to brief the issues raised in the Limited Objection, the Retirement Systems respectfully submit this brief in support of the Limited Objection to elaborate on the following points.

2.      *First*, judicial review of professional fees pursuant to Bankruptcy Code section 943(b)(3) is limited only to those fees which constitute (a) administrative expenses payable by the debtor or (b) fees payable by the debtor or another party in connection with transactions "incident to" (*i.e.*, necessary to effectuate) the plan.  The Professional Fees incurred by the Retirement Systems are not administrative expenses payable by the Debtor and are not fees to be paid by the Debtor or another party in connection with effectuating the Plan.  The City has not offered, and the City's Plan certainly does not provide for, payment of such fees on the Effective Date as an administrative expense.

---

[1]  The Limited Objection is incorporated by reference herein.  All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Limited Objection.

3. Indeed, the City's own theory of the "reimbursement" obligation in this matter only describes a potentially larger payment obligation in July 2023 or thereafter for underfunding of one or more of the Retirement Systems, but that underfunding (defined in the Plan as "Pension Claims") is nothing more than a ***prepetition*** claim of the Retirement Systems. On the Petition Date, the Retirement Systems and their beneficiaries held prepetition claims for underfunding. The Plan seeks to discharge a portion of those prepetition underfunding claims, and to satisfy the remaining portion of each claim over a period of many years under the Plan.[2] Under the Plan, however, that undischarged portion of the underfunding is only a projection, and if the underfunding in 2023 is greater, the City is nonetheless obligated to amortize that greater amount of underfunding over the following 30 years to 2053. Thus, if the underfunding levels in July 2023 and/or beyond are in actuality higher than projected under the Plan, that simply means that the amounts of the undischarged *prepetition* underfunding claims that the City must amortize over the life of the Plan are greater. The City argues that some or all of a hypothetical higher-than-expected underfunding level in 2023 might be attributable to Professional Fees paid by the Retirement Systems in 2013-2014 during the case, and that the City would thus be indirectly reimbursing the

---

[2]   As the Court's own Oral Opinion notes, there is a recovery on those underfunding claims; however, the percentage recovery is somewhat indeterminate.

Retirement Systems on account of their Professional Fees. However, the hypothetically higher underfunding amount to be paid by the City would be in respect of the prepetition claim itself, not an administrative expense obligation whatsoever.

4. Moreover, the treatment of the City's obligations for underfunding is already part and parcel of the settlement that was negotiated between the Retirement Systems and the City, which is embodied in the Plan and its treatment of Class 10 and 11 Claims—a settlement that has been voted upon by creditors and approved by the Court. Whether the underfunding in 2023 or thereafter is higher or lower than the projections under the Plan, that issue is already addressed in the settlement. Moreover, that settlement and the Plan do not make any mention of submitting the Professional Fees to the Court's fee review process. To the extent that the City is seeking to incorporate this new requirement, it is essentially seeking to re-cut a settlement after it has been approved by the creditors and the Court.

5. Second, the City's indirect-reimbursement argument directly contradicts its previous acknowledgement that the Retirement Systems' own contracts with third parties for services are not affected by the Plan. The City has already entered into a stipulation with Bank of New York Mellon ("BNY Mellon") providing that any claims BNY Mellon may have against the Retirement Systems

arising out of contracts between those parties will not be subject to Court review or otherwise affected by the Plan. [Dkt. No. 5994]. The Court has entered an order approving this stipulation [Dkt. No. 6006], and the substance of that stipulation and order is also recited in the entered Confirmation Order [Dkt. No. 8272] at paragraph 81. However, the protected BNY Mellon fees could theoretically affect the funding levels of the Retirement Systems by reducing their total assets, just as would any other payments of expenses or fees by the Retirement Systems. Yet, it is being suggested that the same Confirmation Order (at paragraphs J and 88) should be interpreted to allow the City to intercede in the Retirement Systems' contractual relationships with some of their other third-party vendors by subjecting the fees arising under the Retirement Systems' contracts with their bankruptcy professionals to section 943(b)(3) review. These positions are wholly inconsistent, and the City should be estopped from arguing that the Plan entitles the City to interfere with or modify contracts between the Retirement Systems and their professionals.[3]

---

[3] In the Limited Objection, the Retirement Systems also argue that the City should be deemed to have waived this position by having established a fee review process that omitted (properly so) the Retirement Systems' professionals over these past 15 months of the case. The Retirement Systems submit that this argument does not require additional legal briefing here, but having incorporated the Limited Objection by reference, do not intend any waiver of that argument, particularly in light of the City's argument that parties may have waived objection to *its* professionals' fees by not interposing any such objections on or before the deadline for Plan objections.

6.     <u>Third</u>, any suggestion that, in the absence of an obligation of the City to directly reimburse the Professional Fees as an administrative expense, the Court may nonetheless review and possibly modify the fees payable by the Retirement Systems stretches section 943(b)(3) far beyond its intended scope and runs roughshod over the statutory independence of the non-Debtor Retirement Systems under Michigan law.  The engagement agreements of the Retirement Systems with their bankruptcy professionals, and the Professional Fees incurred pursuant thereto, have been reviewed and approved by the Boards of Trustees of each Retirement System, in the exercise of their fiduciary duties under Michigan's Public Employee Retirement System Investment Act, M.C.L. § 38.1132, *et seq.* ("<u>PERSIA</u>").  The determination of the reasonableness of the Professional Fees is the fiduciary duty of the Trustees under PERSIA, and there is simply no basis in law for permitting the City or this Court to invade the province of the Boards of the Retirement Systems in this regard.

## <u>Argument</u>

**A.     Section 943(b)(3) Review Of The Retirement Systems' Professional Fees Is Improper Because They Are Not Administrative Expenses Payable By The City Or Incident To Effectuating The Plan.**

7.     Section 943(b)(3) states that the Court shall confirm the Plan if "all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable."   11

U.S.C. § 943(b)(3). The Retirement Systems submit that this subsection refers only to those fees and expenses arising post-petition which are entitled to be paid as administrative expenses by the debtor or incident to transactions effectuating the plan.[4]

8.     A review of the case law indicates that courts have construed "amounts to be paid . . . for services or expenses in the case" to mean specifically *administrative expenses* and "amounts to be paid . . . incident to the plan" to refer to fees to be paid in connection with *transactions necessary to effectuate the plan*.

9.     For instance, in *In re Connector 2000 Association*, the Court confirmed the Debtor's chapter 9 plan and described how the debtor had satisfied section 943(b)(3). Specifically, the Court stated:

> Section 943(b)(3) requires that all amounts to be paid by the Debtor or other persons for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable. Debtor has been paying its administrative expenses in the case on a current basis and any open amounts are expected to be paid within 10 days of the Effective Date of the Plan. . . . [T]he only open amounts **expected to be paid as of confirmation** will be amounts due because of administrative time lag (which amounts are to be determined) and amounts to be paid incident to the issuance of the Amended and Restated Bonds and the related actions **incident to effectuating the Plan**. The additional amounts . . . are **reasonable and necessary to effectuate the Plan** . . . .

---

[4]  Entirely separate from any bankruptcy requirements, the actual amounts paid by the Retirement Systems to its professionals are a matter of public record, subject to the Michigan Freedom of Information Act, MCL 15.231, *et seq.*

*In re Connector 2000 Ass'n*, 447 B.R. 752, 764 (Bankr. D.S.C. 2011) (emphasis added). Thus, the court in *Connector 2000* clearly interpreted "amounts . . . for services or expenses in the case or incident to the plan" to mean (a) administrative expenses and (b) expenses expected to be paid as of the confirmation date incident to transactions necessary to effectuate the Plan.

10. Similarly, in *In re Bamberg County Memorial Hospital*, the bankruptcy court, in considering confirmation of the debtor's plan, and specifically in discussing section 943(b)(3), focused on "fees and expenses incurred by Debtor's professionals" and concluded that the amounts disclosed were "reasonable and necessary to effectuate the Plan." *In re Bamberg County Mem. Hosp.*, 2012 Bankr. LEXIS 2321, *19 (Bankr. D.S.C. May 23, 2012).

11. Here, the City is not arguing that the Retirement Systems' Professional Fees are an expense of administration that must be paid on or about the Effective Date in accordance with Bankruptcy Code section 943(b)(5). Nor is the City indicating that it expects to be obligated to pay the Professional Fees on or about the Effective Date incident to any transaction necessary to effectuate the Plan. Instead, the City merely suggests *the possibility* of a hypothetical "reimbursement" obligation on or after July 1, 2023 that is highly attenuated and fundamentally flawed. It is simply not possible to say in July 2023 or thereafter that any incremental underfunding of a Retirement System at that time, beyond

what is already projected in the Plan, would be the result of Professional Fees paid by that System in 2014, nearly a decade earlier - - as opposed to resulting from (a) the payment of any other administrative expenses of the System, or (b) any negative deviation from projected investment-return experience during those years, or (c) any negative deviation from projected actuarial experience during those years.

12.    Moreover, even if the payment of Professional Fees in 2014 could be causally linked to an incremental increase in the underfunding level in 2023, the Plan provides that any extra underfunding amount will be amortized over the next 30 years to 2053 under the Plan as part of the Plan payments for the *prepetition* Pension Claims in Classes 10 and 11.  In contrast, the professional fees payable to bankruptcy professionals for the City and the Retiree Committee qualify as administrative priority claims that are allowable under section 503(b) and entitled to priority under section 507(a)(2).  Section 943(b)(5) mandates that such claims must be paid in full in cash on the Effective Date, unless the professional agrees to different treatment.   It is those fees as to which section 943(b)(3) requires a determination of reasonableness.   The hypothetical higher-than-expected underfunding amount -- that (i) might occur in 2023, (ii) might be linked back to amounts paid to the Retirement Systems' professionals in 2013-14, and (iii) would be payable on an amortized basis over 30 years -- simply does not rise to the level

of a payment obligation for an administrative expense on the Effective Date of the Plan or incident to a transaction to effectuate the Plan that are the only matters over which this Court has jurisdiction under Bankruptcy Code section 943(b)(3).

13.     The City has not offered to pay any of the Retirement Systems' Professional Fees as administrative expenses, and the Plan does not provide for any such payments or reimbursements in order to effectuate the Plan.  Therefore, unless the City is willing to pay the Retirement Systems' Professional Fees as administrative expenses on the Effective Date, the Retirement Systems' Professional Fees cannot be subjected to review under section 943(b)(3).

14.     Additionally, limiting section 943(b)(3) to *administrative* professional fees makes sense given that section 943(b) outlines requirements for confirmation of a chapter 9 plan.  Claims by third parties for reimbursement of professional fees—*i.e.*, prepetition claims for professional fees arising under contractual attorney fees clauses or other fee-shifting statutes or provisions—are handled during the standard claims objection process.  *See, e.g., Travelers Cas. & Sur. Co. v. Pacific Gas & Elec. Co.*, 127 S. Ct. 1199 (2007) (attorneys' fees incurred in litigating bankruptcy issues may be allowed as part of contract-based unsecured claims); *Ogle v. Fidelity & Deposit Co.*, 586 F.3d 143 (2d Cir. 2009) (claim for attorneys' fees authorized by prepetition contract arises prepetition and constitutes a prepetition claim).  A debtor's objections to the reasonableness of attorneys' fees

that are included in prepetition claims are not determined as part of the confirmation process.

15.     In contrast, the claims of the debtor and committee's professionals are required to be paid in full as administrative expenses of the case, once they are allowed.  The issue to be mediated is the amount to be allowed for each of those professionals.  Thus, the settled prepetition Pension Claims, resolving the City's liability for the unfunded amount, are entirely separate and wholly unlike the City's current and post-petition obligation to pay the fees of its own bankruptcy professionals and the Retiree Committee's professionals, or to pay the fees of any other entity seeking payment of a substantial contribution claim under section 503(b)(3), in amounts that have not been settled and that will be entitled to payment in full as administrative claims.

16.     Just as importantly, the City's alleged harm is actually a hypothetical increase in the amount of the unfunded liability as of 2023 that the City is obligated to pay under the terms of the Plan—*i.e.*, an increase in the amount of the prepetition Pension Claims.  But the City has not filed an objection to the amount of the Pension Claims.  The eleventh-hour insertion of the provision into the Confirmation Order to include the Retirement Systems in the fee mediation process does not constitute a procedurally proper objection to a prepetition claim.  On the contrary, the City has already entered into a settlement with the Retirement

Systems and the Retiree Committee, approved by the employees and retirees who voted to accept the Plan as to the amount and treatment of the Pension Claims. That settlement is embodied in the Plan as confirmed and in the Confirmation Order itself. In effect, the City is belatedly trying to object to the amount of the Pension Claims, which is contrary to the terms of the "Grand Bargain" settlement.

17. The risk that any of the variables or assumptions underlying the Plan may turn out to have been wrong and could lead to a larger underfunded amount as of 2023 has already been factored into the terms of the "Grand Bargain" and the Plan settlement of the prepetition Pension Claims. No part of the Pension Claims is being treated as an administrative priority claim under the Plan. Rather, under the Plan, the Pension Claims are entirely prepetition unsecured claims that are not being paid in full on the Effective Date.

**B.     The City Should Be Estopped From Arguing That The Retirement Systems' Third-Party Contractual Relationships With Their Professionals May Be Affected By The City's Plan.**

18. As noted above, the City has stipulated, and the Court has so-ordered, that any claims that third-party vendor BNY Mellon may have against the Retirement Systems for payment pursuant to any contracts between the Retirement Systems and BNY Mellon will not be affected by the Plan. Moreover, the Confirmation Order again reflects that position.

19. The Retirement Systems' payments to BNY Mellon have the same speculative potential to affect the Retirement Systems' underfunding levels in 2023 as the Retirement Systems' payments for their Professional Fees, so for purposes of Plan confirmation there is no difference between the Retirement Systems' contractual relationship with BNY Mellon and the contractual relationships between the Retirement Systems and any other of their professionals.

20. However, while the City has incorporated into the Confirmation Order its agreement that any payments to be made from the Retirement Systems to BNY Mellon are unaffected by the Plan, in the same document the City suggests that the payments to be made from the Retirement Systems to its third-party bankruptcy professionals *should be* affected by the Plan by seeking to subject the Retirement Systems' professional fees to section 943(b)(3) review. No principled justification has been offered for the inconsistent treatment that the City is now proposing for the Retirement Systems' professionals: *i.e.*, that the City be allowed to interfere with and modify the terms of the contracts between the professionals and the Retirement Systems. These are patently inconsistent positions. Therefore, the City should be estopped from asserting that the Plan has any effect on the Retirement Systems' contractual relationships with their professionals.

21. The doctrine of judicial estoppel is "intended to protect the integrity of the judicial process." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th

Cir. 1982). "The essential function of judicial estoppel is to prevent intentional inconsistency." *Id.* at 599.

22. The Supreme Court has developed three factors to consider when determining whether judicial estoppel should apply: (1) a party's later position must be "clearly inconsistent" with its previous position; (2) whether the party had successfully persuaded a court to adopt the previous position such that judicial acceptance of the later position would create the perception that the first court was misled; and (3) whether the party seeking to assert the later position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). The two inconsistent positions are not required to be asserted in two different proceedings for judicial estoppel to apply—they can be asserted in the same proceeding. *See Greaves v. Office of the Del. AG* (*In re Two Springs Membership Club*), 408 B.R. 475, 480 (Bankr. N.D. Ohio 2009).

23. Here, the City is clearly asserting two inconsistent positions relative to the Court's jurisdiction over the Retirement Systems' payment obligations to BNY Mellon, on the one hand, and the Retirement Systems' bankruptcy professionals on the other hand. Both sets of obligations stand in precisely the same legal position: they arise under contracts solely between the Retirement Systems and a third party, to which the City is not a party and under which the City has no rights. Yet, while

the City has stipulated to, and persuaded the Court to adopt, the position that the Court and the Plan may not interfere with the contractual rights between the Retirement Systems and BNY Mellon, it is now somehow arguing that the same should not hold true for the contractual rights between the Retirement Systems and their professionals. This is an affront to the judicial process and should not be permitted.

24. Further, the City's later position would impose an unfair detriment on the Retirement Systems. The suggestion that the economics of a third-party contract of a Retirement System could somehow affect the level of underfunding of that System such that the City and the Court should have the right to interfere in that contractual relationship is inappropriate and threatens the fundamental independence of the Retirement Systems as statutory trusts separate and distinct from the City, governed by trustees with fiduciary obligations to the Systems' participants. To hold otherwise would set an inappropriate precedent.

25. The Court in *New Hampshire* made clear that the three factors outlined above are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751.

26. Indeed, some courts have held that the doctrine can apply "even if the Litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing 'fast and loose' with the court . . . . In either case, the purpose of the doctrine is to protect the integrity of the judicial process." *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993); *see also* 18 Moore's Federal Practice—Civil, § 134.33[4]n.12 (Matthew Bender 3d Ed.) (citing *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) (application of judicial estoppel does not depend on whether party benefitted from its attempt to play "fast and loose" with the court).

27. Here, the equities clearly weigh in favor of finding that the City is estopped from claiming that the Plan affects the Retirement Systems' contractual relationships with its bankruptcy professionals. Absent a commitment from the City to pay or reimburse the Retirement Systems for their Professional Fees as an administrative expense on the Effective Date, there is no basis for the City to invade the independence and established processes of the Retirement Systems in contracting with their professionals and reviewing and approving professional fees.

**C. Absent An Obligation Of The City To Reimburse The Retirement Systems' Professional Fees As An Administrative Expense, Section 943(b)(3) Does Not Grant The Court Jurisdiction Over The Non-Debtor Retirement Systems' Contracts With Its Professionals.**

28. The Retirement Systems were established in accordance with, and are governed by, PERSIA. Under PERSIA, the Retirement Systems operate as trusts,

separate and distinct from the City. The Retirement Systems' authority to hire professionals arises under, *inter alia*, section 13(6) of PERSIA, which provides:

> Subject to section 13g, **an investment fiduciary** may use a portion of the income of the system to defray the costs of investing, managing, and protecting the assets of the system; may retain investment and all other goods and services necessary for the conduct of the affairs of the system, including investment advisors, consultants, custodians, accountants, auditors, attorneys, actuaries, investment personnel, administrators, and physicians; and may enter into contracts for and pay reasonable compensation for those services. Subject to an annual appropriation by the legislature, a deduction from the income of a state-administered system resulting from the payment of those costs shall be made.

M.C.L. § 38.1133(6) (emphasis added).

29.     In the Response of the City of Detroit (Represented By Its Mayor And Corporation Counsel) filed today [Dkt. No. 8389], the City points out that the above statute expressly limits the Retirement Systems to paying only "reasonable compensation" to its professionals, but the City fails to point out that the statute contemplates that such hiring and payment is to be done by "an investment fiduciary" of the Retirement Systems. There is no indication in the statute that anyone other than the Systems' fiduciaries have authority over the determination of reasonable pay, nor does the City even try to argue otherwise.

30.     Nonetheless, the City argues that the Court has jurisdiction to intercede in the affairs of the Retirement Systems solely on the basis that the language of section 943(b)(3) includes a review of amounts "to be paid by the

debtor *or by any person* for services in the case or incident to the plan." Notably, however, the City cites no authority for its interpretation of this language as granting the Court broad jurisdiction over fees being paid by non-Debtor third parties to their professionals.

31.    As stated earlier in this Brief, the case law indicates quite clearly that courts have consistently interpreted section 943(b)(3) as applying solely to fees which the debtor is obligated to pay as administrative expenses or incident to effectuating the plan.  In addition, the legislative history of section 943(b)(3) is instructive.  In connection with the adoption and incorporation of this section into the Bankruptcy Code, a House Report stated:

> The inclusion of the phrase "by any person" is intended solely to prevent the petitioner from circumventing the requirement of this paragraph by making payments indirectly through some third person for the benefit of the petitioner. It is not intended that the court examine all payments made to all attorneys and agents that are in any way connected with the case. That might take far too much time for the expeditious confirmation of the plan.

H.R. Rep. No. 94-686, 94th Cong., 1st Sess. 33 (1975).  Thus, it is clear that the City's interpretation of and reliance on the "by any person" phrase is misplaced, and no basis exists for extending the Court's jurisdiction under section 943(b)(3) to non-Debtor third parties and their professionals.

32.     The clear weight of authority reflects that the Retirement Systems' Professional Fees do not fall within the scope of section 943(b)(3), and there is no basis for such an extraordinary extension of the Court's jurisdiction.  The Retirement Systems are non-Debtor entities created under state law.  The Bankruptcy Code's sensitivity to Tenth Amendment considerations, reflected in part in section 903, therefore also counsel against the exercise of federal jurisdiction over such a non-debtor entity.

33.     The Boards of the Retirement Systems, in the exercise of their independent fiduciary duties, have already approved the contracts of their bankruptcy professionals and the Professional Fees incurred thereunder as necessary and reasonable to protect the interests of the Systems in this bankruptcy case.  Declaration of Cynthia A. Thomas, attached hereto as Exhibit A.[5]  Those contracts were actively negotiated by the Retirement Systems, and the fees were reviewed by independent counsel and reviewed and approved by each Board in accordance with their fiduciary duties under PERSIA.  Id.  Thus, no further review of the Professional Fees is warranted.

---

[5] The Retirement Systems intend to submit a signed version of the Declaration of Cynthia A. Thomas prior to the hearing on November 24, 2014.

## Conclusion

34.    For the reasons set forth herein and in the Limited Objection, the Confirmation Order should be amended to delete the provisions of paragraphs J and 88 which contemplate subjecting the Retirement Systems' Professional Fees to the Court's fee review process, or a separate order should be entered effectively granting the same relief.

Respectfully submitted,

CLARK HILL PLC

/s/ Robert D. Gordon
Robert D. Gordon (P48627)
Ronald A. King (P45088)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
Telephone: (248) 988-5882
Facsimile: (248) 988-2502
rgordon@clarkhill.com
rking@clarkhill.com

-and-

ARNOLD & PORTER LLP
Lisa Hill Fenning
777 South Figueroa Street
44th Floor
Los Angeles, California 90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199
lisa.fenning@aporter.com

Dated:  November 21, 2014

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

# EXHIBIT A

201584777

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | Case No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | ) | |
| | ) | Hon. Steven W. Rhodes |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF CYNTHIA A. THOMAS

I, Cynthia A. Thomas, being duly sworn, make the following declaration:

1. My declaration is based upon my personal knowledge and understanding of the policies and practices of the General Retirement System and the Police and Fire Retirement System of the City of Detroit (the "GRS" and "PFRS" respectively, and together, the "RSCD").

2. I am presently employed as the Executive Director of the RSCD which is located at 500 Woodward Avenue, Suite 3000, Detroit, MI 48226. I have been employed by RSCD for 26 years. I have been employed in a management capacity since 2002.

3. As Executive Director, I am responsible for the administration of the RSCD, management and supervision of staff, serving each system's Board of Trustees and working with the Boards in implementing their policies and directives.

4. In my position as Executive Director, I am fully familiar with the policies and practices of the GRS and PFRS in interviewing, selecting, retaining and compensating outside professionals to assist the GRS and PFRS in the discharge of their duties to preserve and administer the plan assets in a manner which is in the best interests of the plans and their participants.

5. Pursuant to the Public Employees Retirement System Investment Act, MCL 38.1132, *et. seq.* ("PERSIA"), the GRS and PFRS may retain investment advisors and any other professionals to invest, manage and protect the assets of the systems. The GRS and PFRS may enter into contracts and pay reasonable compensation for these services out of the investment income from the plan assets.

6. In addition to investment professionals, in the normal course of business, the GRS and PFRS retain the services of general counsel, actuarial consultants, auditors and, from time to time, other professionals to assist in the management and protection of the assets of the plans.

7. Any contracts or retainer agreements with these professionals are solely between the GRS or PFRS and their respective professional or professional services firm.

8. The plans' sponsor, the City of Detroit (the "City"), has no role whatsoever in the selection or contracting of these professional services.

Exhibit B). At that time, GRS and PFRS sought and obtained certain financial concessions from Greenhill as a condition of this engagement.

14. Following the City's initiation of the Chapter 9 Bankruptcy proceeding in July 2013, the RSCD conducted an extensive search and interview process for purposes of retaining appellate counsel to pursue a potential appeal of any adverse decision by this Court in these proceedings. The RSCD retained Arnold & Porter LLP to serve as appellate counsel and provide bankruptcy counsel from time to time (a copy of the Arnold & Porter LLP retainer agreement is attached as Exhibit C). At that time, GRS and PFRS sought and obtained certain financial concessions from Arnold & Porter LLP as a condition of this engagement.

15. The GRS and PFRS sought and obtained professional services from several of their other professionals retained in the normal course of their business, including their general counsels and actuarial consultants, to also assist on any restructuring and/or bankruptcy matters related to the City (a resolution evidencing this course of action is set forth in Exhibit D).

16. In each instance, these professional services were retained to assist the RSCD in protecting plan assets of their plans and for the benefit of plan participants and beneficiaries.

17. In each instance, these engagements for professional services were negotiated solely and exclusively by GRS and PFRS and the terms of the

engagements are binding solely on the GRS and PFRS and the respective professionals.

18.  At no time did the City have any involvement or role in the retention of the RSCD restructuring professionals, and these professionals were retained solely and exclusively to provide services for the benefit of the RSCD.

19.  At no time during the negotiation of these engagements was there ever any discussion or understanding whatsoever that the costs and fees for these professional services would be borne by any party other than the RSCD.

20.  To the best of my knowledge and belief, the City of Detroit has never offered to reimburse the RSCD in any manner for the fees and costs incurred in the retention of the RSCD's restructuring professionals.

21.  During the pendency of this bankruptcy case, I have had occasion to interact with City's Finance Director and other City staff.  On none of these occasions has there been any discussion about the City's willingness or ability to reimburse the RSCD for the professional fees incurred by its restructuring professionals.

22.  Leading up to and following the City's July 18, 2013 Chapter 9 filing, the RSCD restructuring professionals have performed the requested services and have been compensated consistent with the respective retainer agreements.

23. In this regard, the RSCD's restructuring professionals submit invoices to the RSCD monthly. These invoices are reviewed by an independent attorney on behalf of the PFRS and GRS who make a recommendation for payment as appropriate. The disbursements to the RSCD professionals are ultimately reviewed and approved by the respective Boards of the PFRS and GRS consistent with their independent fiduciary duties under PERSIA.

24. Presently, myself and RSCD staff are focused on efficiently and diligently implementing the Plan of Adjustment confirmed by this Court on November 7, 2014, and it is critically important that all of our time and efforts be focused on these implementation efforts.

25. I declare that the foregoing is true and accurate and can testify competently to these facts.

By: Cynthia A. Thomas

Subscribed and sworn to before me
this _____ day of November, 2014.

_____
_____, Notary Public,
_____ County, State of Michigan.
Acting in _____ County, Michigan.
My Commission Expires: _____.

# EXHIBIT A

**MEETING NUMBER 2926**

JOURNAL OF PROCEEDINGS OF THE BOARD OF TRUSTEES OF THE POLICE
AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT
◆ ◆ ◆

**PROCEEDINGS HELD THURSDAY, MARCH 14, 2013**
9:00 A.M.
IN THE CONFERENCE ROOM OF THE RETIREMENT SYSTEMS
910 COLEMAN A. YOUNG MUNICIPAL CENTER
DETROIT, MICHIGAN 48226
◆ ◆ ◆

PRESENT

| | |
|---|---|
| Michael Bridges | Ex/Officio Trustee/Deputy Treasurer |
| Mark Diaz | Elected Trustee |
| James Edwards | Ex/Officio Trustee/Deputy Corporation Counsel Alternate |
| Matthew Gnatek | Elected Trustee/Chairman |
| Edsel Jenkins | Ex/Officio Trustee/Deputy Fire Commissioner |
| Cheryl R. Johnson | Ex/Officio Trustee/Finance Director |
| James Moore | Elected Trustee |
| Sean P. Neary | Elected Trustee |
| Medina Noor | Ex/Officio Trustee/Budget Director Alternate |
| George Orzech | Elected Trustee/Vice Chairman |
| Jeffrey Pegg | Elected Trustee |
| Lamont D. Satchel | Ex/Officio Trustee, Labor Relations Director |
| Michael Simon | Elected Retirant Trustee |
| Louis Sinagra | Elected Retirant Trustee |
| Tanya Stoudemire | Ex/Officio Trustee/Finance Director Alternate |
| | |
| Cynthia A. Thomas | Executive Director |
| David Cetlinski | Assistant Executive Director |
| Ryan C. Bigelow | Investment Officer |
| Janet S. Lenear | Recording Secretary |
| Joe Turner | Special Legal Counsel |

EXCUSED

| | |
|---|---|
| Angela R. James | Ex/Officio Trustee |
| Brenda Jones | Ex/Officio Trustee/City Council Representative |

ABSENT

None

<u>CONTINUATION OF OPEN SESSION</u>

The Board returned to Open Session at 1:28 P.M.

## **RESOLUTION REGARDING RESTRUCTURING TEAM**

## **BY TRUSTEE PEGG – SUPPORTED BY TRUSTEE ORZECH**

**WHEREAS**, by Memorandum dated March 13, 2013, Special Counsel set forth a number of considerations related to the possible appointment of an Emergency Financial Manager under 1990 PA 72 and the likely actions of an Emergency Manager following the effective date of 2012 PA 436, and

**WHEREAS**, Special Counsel advised the Board at its regularly scheduled meeting on March 14, 2013 of certain steps the Board might consider related to the efforts of an Emergency Manager to develop a restructuring plan for the City of Detroit, including the retention of certain professionals to advise and assist the Board, and

**WHEREAS**, the Board has considered this matter, NOW THEREFORE BE IT

**RESOLVED**, that the Board approves the recommendations of Special Counsel as set forth in the Memorandum, and be it further

**RESOLVED**, that Special Counsel is directed to implement the recommendations contained in the Memorandum, to take such further actions in furtherance thereof as Special Counsel deems appropriate and reasonably necessary to protect and further the interests of the Retirement System, and to communicate its progress and actions taken to the Board as appropriate, and be it further

**RESOLVED**, that the Board shall provide a copy of this resolution to Clark Hill, PLC as Special Counsel in this matter:

Yeas – Trustees Diaz, Edwards, Moore, Neary, Orzech, Pegg, Simon, Sinagra
         and Chairman Gnatek – 9

Nays – Trustees Bridges and Johnson – 2

<u>PUBLIC FORUM</u>

AT **1:32 P.M.**, CHAIRMAN GNATEK DECLARED THE MEETING IN OPEN FORUM FOR GENERAL DISCUSSION BY THE PUBLIC ATTENDING THE MEETING.

# EXHIBIT B

As of June 7, 2013

To:  Clark Hill PLC ("Counsel") in connection with its representation of the General Retirement System of the City of Detroit ("GRS") and the Police and Fire Retirement System of the City of Detroit ("PFRS"; jointly with GRS, the "Detroit Retirement Systems" or "DRS") related to the potential financial restructuring of the City of Detroit ("City" or "Detroit").

1.  **Scope of Engagement.**  This letter agreement (this "Agreement") confirms the engagement of Greenhill & Co., LLC ("Greenhill" or "Advisor") as of the date indicated above (the "Effective Date") by Counsel on behalf of the Detroit Retirement Systems to provide financial advisory services to the Detroit Retirement Systems, and to assist Counsel in its representation of the Detroit Retirement Systems, with respect to all pension and associated financial agreements, contracts and claims of the Detroit Retirement Systems and the enforcement of the Detroit Retirement Systems' rights in view of the City's potential restructuring. Such services may include, as appropriate and requested:

    a.  reviewing the budget, financial plan, cash flow projections, assets and operations (including the review of proposed operational expense reductions and of proposed improvements, if any, to cash management practices) of the City and its historical and projected financial condition;

    b.  reviewing the current and projected debt capacity of the City and analyzing capital structure alternatives;

    c.  reviewing and assessing the potential for other sources of financing such as asset sales, borrowings from internal and external pools and / or postponing payments;

    d.  analyzing affordability of pension and other post-employment benefits ("OPEB") obligations, including retiree healthcare, in view of the City's financial condition and projections including sensitivity analysis and stress-testing of cash flows;

1

e.     advising with respect to and attending meetings with the Detroit Retirement Systems and its Counsel as well as due diligence meetings with the City or other third parties as appropriate;

f.     assisting in reviewing actuarial and plan funding status of the Detroit Retirement Systems based on the reports of third party actuaries;

g.     analyzing and reviewing information regarding the financial performance of the GRS and PFRS relative to other public pension systems, including but not necessarily limited to Michigan's Municipal Employees' Retirement System, and relative to relevant industry benchmarks and standards (provided, however, that such services shall not include any actuarial-based analyses);

h.     if the City determines to undertake a restructuring transaction, advising and assisting Counsel and the Detroit Retirement Systems in structuring and effecting the financial aspects of such a transaction and the resulting treatment of the parties' claims and obligations, subject to the terms and conditions of this agreement;

i.     if necessary, assisting the Detroit Retirement Systems and its Counsel in developing and seeking approval of a restructuring plan;

j.     reviewing and providing financial analyses of, and alternative options to, all restructuring proposals put forward by the City or any third party, including, but not limited to, the treatment of the City's past-due 2012 employer contributions and upcoming 2013 employer contributions;

k.     reviewing and analyzing any new securities, other consideration or other inducements to be offered or issued to the Detroit Retirement Systems under a restructuring proposal;

l.     preparing financial analyses to assist the Detroit Retirement Systems and its Counsel in assessing alternative restructuring plans for the City;

m.     participating in restructuring negotiations and other meetings as requested by the Detroit Retirement Systems and its Counsel;

n.     in the event that the City commences a case under Chapter 9 of the Bankruptcy Code, or any other litigation or administrative law proceeding arises in connection with the City's restructuring, preparing and/or providing expert reports or expert testimony as mutually agreed upon; and

o.     providing such other financial advisory and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Detroit Retirement Systems, its Counsel, and Greenhill.

The foregoing services shall be referred to collectively herein as the "Scope of Services."

2

Advisor understands and agrees that its work on this matter will be performed solely for the Detroit Retirement Systems and its Counsel for the benefit of the Detroit Retirement Systems and not for the City or any other party. The fees, expenses and costs (inclusive of the Retainer (as defined below)) shall be paid exclusively by the Detroit Retirement Systems. Under no circumstances shall Counsel have any liability for the payment of Advisor's fees and expenses.

2.    **Fees; Expenses; Invoicing and Payment**

Fees.   In consideration of Advisor's acceptance of this engagement, the Detroit Retirement Systems shall pay to the Advisor the following:

*Monthly Retainer Fees:* A Retainer Fee of US$150,000 per month for the term of this engagement, payable monthly in arrears (promptly upon DRS' receipt of an invoice therefor) in cash during the term of this engagement commencing upon execution of this letter. If the first or last month of this engagement is a partial month, then the retainer fee for such month shall be prorated.

*Transaction Fee:* If, during the term of this engagement or within the eighteen (18) full months following the termination of this engagement, a Restructuring (as defined below) is consummated by the City, or an agreement or plan is entered into with respect to a Restructuring which is subsequently consummated at any time, the Advisor shall be entitled to receive a Transaction Fee of US$3,550,000 payable in cash at the time the Restructuring is consummated, the agreement or plan for the Restructuring is entered into by the DRS and other requisite parties, or if the agreement or plan calls for approval by a bankruptcy court, then upon entry of a final and non-appealable order of the bankruptcy court approving said agreement or plan.

For purposes of this agreement, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, rescheduling, cancellation, settlement, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of all or a material portion of the City's debt securities and/or other indebtedness, obligations or liabilities (which may include, without limitation, lease obligations, collective bargaining agreements, pension obligations, OPEB obligations, and other contract or tort obligations), however such result is achieved, including, without limitation, pursuant to exchange transactions, a plan for the adjustment of debts pursuant to Chapter 9 of the U.S. Bankruptcy Code, covenant relief, rescheduling of debt maturities, or any other solicitation of consents, waivers, acceptances or authorizations from the City's creditors, and/or other similar transactions or series of transactions, and which (in any event) includes a resolution, agreement or understanding on the treatment of pension obligations (for the avoidance of doubt, if any such recapitalization or restructuring includes a resolution, agreement or understanding on the treatment of pension obligations, including an understanding that the pension obligations would remain unaltered, it will in and of itself satisfy the minimum condition to be deemed a Restructuring for purposes hereof). Notwithstanding the foregoing, if within one (1) year after an out-of-court Restructuring goes into effect, such Restructuring is not successful and further out-of-court negotiations

3

resume, or litigation or Chapter 9 proceedings ensue, and the Detroit Retirement Systems request the Advisor resume rendering services, Advisor shall do so pursuant to the terms of this Agreement, subject to the Advisor and the Detroit Retirement Systems agreeing on customary and mutually acceptable fees for such additional services, taking into account prior fees paid hereunder to the Advisor, the complexity of the transaction and the time and effort to be expended by the Advisor.

No fee payable to any other financial advisor by the Detroit Retirement Systems or any other person in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Greenhill hereunder.

**Expenses.** In addition to all of the other fees and expenses described in this Agreement and regardless of whether any Restructuring is consummated, Advisor shall be reimbursed by the Detroit Retirement Systems for its reasonable and actual out-of-pocket expenses incurred from time to time in connection with its services hereunder (promptly upon DRS' receipt of an invoice therefor, with reasonable supporting documentation for the expenses). Advisor bills its clients for its reasonable and actual out-of-pocket expenses including, but not limited to travel-related and certain other expenses such as lodging, meals and transportation.

In the event Advisor, any of its affiliates, or any of their respective officers, directors, employees, agents and each other entity or person, if any, controlling Advisor, or any of its affiliates (collectively, the "Greenhill Parties") is: (i) required to appear as a witness or to produce documents in any Proceeding brought by or against the Detroit Retirement Systems or any participant in a transaction covered hereby in which a Greenhill Party is not named as a defendant; or (ii) requested by Counsel or by the Detroit Retirement Systems to appear as a witness, to produce documents or to assist Counsel or the Detroit Retirement Systems in the preparation of its position in any action brought by or against the Detroit Retirement Systems or any participant in a transaction covered hereby in which a Greenhill Party is not named as a defendant, the Detroit Retirement Systems agree to reimburse Advisor or such Greenhill Party, as appropriate, for all reasonable expenses (including, without limitation, fees and expenses of legal counsel) as incurred by it in connection with such party's preparing and appearing as a witness, producing documents or in its assistance to Counsel or the Detroit Retirement Systems, as applicable for the preparation of their position. The obligations set forth in this paragraph shall survive any termination of this Agreement.

**Invoicing and Payment.** All amounts payable to Advisor shall be made promptly in lawful money of the United States in accordance with the payment instructions set forth on the applicable invoice, or to such accounts as Advisor shall direct, and the Detroit Retirement Systems shall provide contemporaneous written notice of each such payment to Advisor. Monthly fees and expenses that have not yet been invoiced shall be invoiced concurrently pursuant to the same invoice.

3.  **Bankruptcy Proceedings.** In the event that the City files for protection under Chapter 9 of the U.S. Bankruptcy Code, Advisor's obligations to provide services under this Agreement shall continue until it is terminated pursuant to the terms hereof.

4. **Term and Termination**. The term of Greenhill's engagement as financial advisor and agent to the Detroit Retirement Systems shall commence on the date hereof and continue until terminated by either party. Counsel may terminate the engagement effective immediately upon giving written notice (or such later time as may be provided in such notice), and Greenhill may terminate the engagement upon 30 days' prior written notice; provided, however, that no such termination shall affect (i) the indemnification, contribution and confidentiality obligations of the Detroit Retirement Systems as set forth in this Agreement, (ii) the right of Greenhill to receive the Transaction Fee or fees that have accrued prior to such termination, or (iii) the right of Greenhill to receive reimbursement for its out-of-pocket expenses as described above. Notwithstanding anything to the contrary in the foregoing sentence, if the Detroit Retirement Systems elect to terminate this engagement within thirty (30) days of the date hereof, the Detroit Retirement Systems will have no liability in respect of the Transaction Fee or any future monthly fees.

5. **Default and Termination**. Notwithstanding paragraph 4 of this Agreement, the DRS shall have the right to terminate this Agreement in the event of a default that is not cured as provided for herein. An event of default shall be deemed to occur in the event Advisor materially breaches its obligations under this Agreement. If the DRS finds an event of default has occurred, it may issue a notice of termination to Advisor, setting forth the grounds for terminating the Agreement. Upon receiving such notice, the parties shall submit such issue to a panel of three American Arbitration Association ("AAA") arbitrators located in Southeast Michigan (with one arbitrator being chosen by each party and the third being chosen jointly by the parties or, if the parties cannot agree, chosen by the AAA) for determination, in accordance with the Rules of the AAA. Such arbitration shall be placed on the AAA's calendar for an expedited hearing. In the event such arbitration determines that such an event of default has occurred, Advisor shall have ten (10) calendar days within which to cure the default. If the default is cured within said 10-day period, the right to terminate this Agreement based upon said default shall cease. If the default is not cured to the reasonable satisfaction of the DRS, this Agreement shall terminate immediately upon expiration of the 10-day period, or such later date as the parties mutually agree to, without further obligation or liability to Advisor whatsoever in respect of the Transaction Fee or any future monthly fees.

6. **Reasonableness of Fees**. The parties hereto acknowledge that a substantial professional commitment of time and effort will be required of Advisor and its professionals hereunder, and that such commitment may foreclose other opportunities for Advisor. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Advisor. Given the numerous issues which may arise in engagements such as this, Advisor's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Advisor that will be required in this engagement, and the market rate for Advisor's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Advisor, and provides the requisite certainty to the Detroit Retirement Systems and Counsel.

5

7. **Information.** The Detroit Retirement Systems will use its reasonable efforts to cause the City to provide Advisor access to information from and representatives of the City and other participants in the transaction, as reasonably requested by Advisor. The Detroit Retirement Systems will promptly notify Advisor in writing of any known material inaccuracy or misstatement in, or, material omissions from, any information previously delivered to, or discussed with, Advisor, or any materials provided to any interested party. Advisor may rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information that has been furnished to it by or on behalf of the Detroit Retirement Systems, the City or any other potential party to any transaction, or filed by any party with any local, state or federal court or regulator, or any information from published market quotations and other filings, reports, databases and media customarily relied upon by top-tier investment banks in providing financial advisory services. Counsel and the Detroit Retirement Systems understand and agree that Advisor will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. For the avoidance of doubt, Advisor will review the reasonableness of any analyses and conclusions in any reports produced by the City. Counsel and the Detroit Retirement Systems acknowledge that Advisor has no obligation to conduct any appraisal of any assets or liabilities of the City or any other party. Counsel and the Detroit Retirement Systems acknowledge that Advisor's ability to render services hereunder will depend upon the extent of cooperation that it receives from the City and its advisors. Any advice (whether written or oral) rendered by Advisor pursuant to this Agreement is intended solely for the use of Counsel and the Detroit Retirement Systems and their relevant affiliates in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Advisor may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner except for the internal purposes of Counsel and/or the Detroit Retirement Systems without the prior consent of Advisor (such consent not to be unreasonably withheld). In addition, neither Advisor nor the terms of this Agreement may otherwise be referred to without Advisor's prior consent (such consent not to be unreasonably withheld). Advisor will consider all work done with respect to this engagement to be confidential, protected by the attorney-client privilege, and protected by the attorney work product doctrine. If access to any of the materials in Advisor's possession relating to this engagement is sought by a third party, Advisor shall promptly notify Counsel of such action, tender to Counsel Advisor's defense or response to such request, to the extent such defense or response is required, and cooperate with Counsel (at the Detroit Retirement Systems' sole expense) concerning Advisor's response thereto. For the avoidance of doubt, nothing in this Agreement shall in any way limit the ability of the Detroit Retirement Systems to comply with any laws or legal process concerning disclosures by public bodies; provided however Detroit Retirement Systems provide prior written notice of basis for such required disclosure, the party to whom such disclosure shall be made and the content of such disclosure. The parties acknowledge that any responses, materials, correspondence or documents provided to the Detroit Retirement Systems are subject to the State of Michigan Freedom of Information Act ("Act") and may be released to third parties in compliance with that

6

Act or any other law and will not constitute a breach or threatened breach of this Agreement; provided however Detroit Retirement Systems provide prior written notice of basis for such required disclosure, the party to whom such disclosure shall be made and the content of such disclosure.

8. <u>Limitations on Services as Advisor.</u> Advisor's services are limited to those specifically provided in this Agreement, or subsequently agreed upon, in writing, by the parties hereto. Advisor shall have no obligation or responsibility for any other services including, without limitation, any crisis management, actuarial or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. Advisor is providing its services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency or fiduciary relationship between Advisor, on the one hand, and Counsel, the Detroit Retirement Systems, the City or any other person, on the other hand. In performing its services pursuant to this Agreement, Advisor is not assuming any responsibility for any decision by Counsel or the Detroit Retirement Systems on whether to pursue, endorse, or support, any strategy, or to effect, or not to effect, any transaction(s), which decision shall be made by such party in its sole discretion; provided, that, for the avoidance of doubt, the foregoing is not intended to be a waiver of the provisions and standard of care set forth in Section 12 of this Agreement. Advisor is being retained on behalf of, and will report solely to, Counsel and the Detroit Retirement Systems. It is understood that Advisor is providing the services hereunder solely to, and will take direction solely from Counsel and the Detroit Retirement Systems.

9. <u>Additional Services.</u> To the extent Advisor is requested by Counsel or the Detroit Retirement Systems to perform and agrees to perform any financial advisory or investment banking services which are not within the scope of this engagement, the Detroit Retirement Systems shall pay Advisor such fees as shall be mutually agreed upon by Counsel, the Detroit Retirement Systems and Advisor in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

10. <u>Credit.</u> After the announcement or closing of any transaction, Advisor may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including naming the Detroit Retirement Systems or using other identifying marks) describing its services in connection therewith.

11. <u>Choice of Law; Jury Trial Waiver; Jurisdiction.</u> SUBJECT TO PARAGRAPH 5 ABOVE, ALL OTHER DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF MICHIGAN WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. ALL SUCH DISPUTES SHALL BE SUBMITTED TO THE FEDERAL OR STATE COURTS LOCATED IN WAYNE COUNTY, MICHIGAN, HAVING SUBJECT MATTER JURISDICTION OVER THE DISPUTE, AND ALL PARTIES AGREE TO

7

PERSONAL JURISDICTION IN SUCH COURTS. EACH OF THE PARTIES IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF ADVISOR PURSUANT TO, OR THE PERFORMANCE BY ADVISOR OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. THE DETROIT RETIREMENT SYSTEMS AND GREENHLL IRREVOCABLY CONSENT TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS: (A) IF TO THE DETROIT RETIREMENT SYSTEMS, AT [2 WOODWARD AVENUE, SUITE 908, DETROIT, MI 48226], WITH COPIES TO: (i) JOSEPH E. TURNER, CLARK HILL PLC, 500 WOODWARD AVENUE, SUITE 3500, DETROIT, MI 48226 (WITH RESPECT TO BOTH GRS AND PFRS); AND (ii) MICHAEL VANOVERBEKE, VANOVERBEKE, MICHAUD AND TIMMONY PC, 79 ALFRED STREET, DETROIT, MI 48201 (AS TO GRS ONLY); AND (B) IF TO GREENHILL, TO BRADLEY A. ROBINS, 300 PARK AVENUE, 17TH FLOOR, NEW YORK, NY 10022.

12.  **Indemnification and Standard of Care.** The Detroit Retirement Systems agree to indemnify Greenhill and related persons in accordance with the indemnification letter attached hereto as Schedule A, the provisions of which are incorporated herein by reference in their entirety. The Detroit Retirement Systems acknowledge and agree that their obligations pursuant to this letter (including those set forth in Schedule A hereto) are joint and several.

The standard of care required of Advisor in rendering the Scope of Services under this Agreement shall be that standard of care expected to be exercised by similarly-situated, well-respected financial advisors in the same or reasonably similar areas of expertise as are involved in the rendering of services under this Agreement.

Advisor agrees to indemnify, defend, and hold the Detroit Retirement Systems harmless against and from any and all direct and actual losses and expenses incurred by the Detroit Retirement Systems based upon or arising out of any activities performed by Advisor under this Agreement, to the extent such losses or expenses are directly attributable to Advisor's gross negligence or willful misconduct in performing the Scope of Services under this Contract; provided, however, Advisor's indemnity obligation shall be limited to an amount equal to the lesser of (i) fees under this Agreement actually received by Advisor and (ii) $200,000. The Advisor shall not be liable to indemnify the Detroit Retirement Systems for any claims settled by the Detroit Retirement Systems without the written consent of the Advisor.

In no event shall Advisor be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs), whether or not such are foreseeable or Advisor has been advised of the possibility of such damage.

8

13. **Work Product.** Advisor will act at the direction of and under the supervision of the attorneys of Counsel, to assist such attorneys in their rendering of legal advice and performing legal services for the Detroit Retirement Systems. Advisor will submit its evaluations and analyses to Counsel pursuant to this Agreement in periodic oral or written reports. Advisor understands that work performed by it as part of this engagement, including, without limitation, any reports it may prepare, constitute privileged and confidential communications. Advisor understands that any document prepared by Advisor is prepared as agents for Counsel and is the property of Counsel. Written reports will not be given to any person without Counsel's prior approval.

14. **Advisor Core Team.** Advisor currently envisages that the senior team of professionals that will be assigned to work on this engagement will include Bradley A. Robins, Managing Director, Eric Mendelsohn, Managing Director, and Christopher T. Grubb, Principal. Such individuals will have overall responsibility to deliver the Scope of Services outlined in Section 1 hereof. The senior team will be supported by a group of vice presidents, associates and analysts as appropriate for each stage of the engagement, with a core group of junior professionals being assigned to the engagement at all times. If circumstances require any of the senior team members to be replaced, Advisor will promptly discuss any transition with Counsel prior to making any changes to the senior team.

15. **Insurance.** Advisor will obtain and maintain Professional Liability/Errors and Omissions Insurance with limits not less than $1 million per occurrence and $2 million annual aggregate. The insurance policy shall include an endorsement naming each of GRS and PFRS as additional named insureds and shall provide coverage to the DRS with respect to any liability arising out of or relating to Advisor's performance of this Agreement. Advisor will agree to notify the DRS within thirty (30) days if such insurance policy is to be canceled or reduced. The insurance carrier shall be a reputable national carrier, authorized to provide insurance in the State of Michigan. The certificate of insurance and endorsement shall be provided to DRS before commencement of any services under this Agreement. Thereafter, Advisor will provide evidence of such insurance from time to time as reasonably requested by DRS. Failure to provide the certificate within a reasonable time period after executing this Agreement may, in the sole discretion of DRS, after notice thereof and a reasonable opportunity to cure, constitute cause for terminating this Agreement without further obligation or liability to Advisor whatsoever in respect of the Transaction Fee or any future monthly fees.

16. **Assignment/Subcontracting.** Advisor shall not assign, transfer, convey, subcontract, or otherwise dispose of any interest in this Agreement without the prior written consent of each of GRS and PFRS.

17. **Conflicts.** Advisor represents and warrants that neither it nor any of its employees actively working on this engagement presently has or shall acquire at any time during the term of this Agreement any interest, direct or indirect, that would materially conflict with the performance of the Scope of Services under this Agreement.

9

18. **Compliance with Laws.** In connection with this Agreement and the transactions contemplated thereby, each party shall comply with all applicable federal, state and local laws in all material respects.

19. **Waivers.** The DRS shall not be deemed to waive any of its rights under this Agreement unless such waiver is in writing and signed by GRS and PFRS. No delay or omission on the part of the DRS in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a waiver of any right on any future occasion. The rights and remedies set forth in this Agreement are not exclusive and are in addition to any rights and remedies provided by law or equity.

20. **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets.

21. Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties (to the extent permitted by law) and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Advisor hereunder.

22. This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended; and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

23. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

24. This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

25. Each of the Detroit Retirement Systems and Advisor has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. Counsel has the requisite power and authority to enter into this Agreement in the capacity as counsel to the Detroit Retirement Systems. This Agreement has been duly and validly authorized by all necessary action on the part of the Detroit Retirement Systems and Advisor and has been duly executed and delivered by the Detroit Retirement Systems and Advisor and constitutes a legal, valid and binding agreement of the Detroit Retirement Systems and Advisor, enforceable in accordance with its terms.

26. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Advisor (or the Detroit Retirement

10

Systems) because this Agreement was drafted by Advisor, and the parties waive any statute or rule of law to such effect.

27. The Detroit Retirement Systems agree that they will be solely responsible for ensuring that any transaction complies with applicable law. Advisor is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice.

28. The Detroit Retirement Systems understand and acknowledge that Advisor and its affiliates (collectively, the "Advisor Group"), engage in providing investment banking and financial advisory services to a wide range of institutions and individuals. In the ordinary course of business, the Advisor Group and certain of its employees, as well as investment funds in which they may have financial interests, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, one or more entities comprising the City or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion, and no non-public information gained by Advisor, or any analyses or other work product prepared by Advisor, in connection with this engagement shall be shared with any other client of the Advisor Group. In addition, the Advisor Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to one or more entities comprising the City, a Restructuring or other parties involved in a Restructuring, from which conflicting interests or duties may arise. Although the Advisor Group in the course of such other activities and relationships may acquire information about the City, a Restructuring or such other parties, the Advisor Group shall have no obligation to, and may not be contractually permitted to, disclose such information, including the fact that the Advisor Group is in possession of such information, to Counsel and or the Detroit Retirement Systems or to use such information on Counsel's and or the Detroit Retirement Systems' behalf.

11

If the foregoing correctly sets forth our agreement, please sign and return to us a copy of this Agreement.

Very truly yours,

GREENHILL & CO., LLC

By: _Bradley A. Robins_
Bradley A. Robins
Managing Director

We agree to engage Advisor upon the terms set forth herein:

Acknowledged and agreed to as of the Effective Date:

CLARK HILL PLC, solely in its capacity as counsel to, and on behalf of, the Detroit Retirement Systems

By: _____
Name: R. GORDON
Title: MEMBER

The undersigned agree to pay to Advisor the fees and expenses as provided above and to the indemnification as provided in Schedule A hereto and be bound by the applicable provisions of the foregoing Agreement and Schedule A hereto.

THE GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT

By: _____
    Name: Lou Hatty
    Title: Trustee

By: _____
    Name: Cynthia A. Thomas
    Title: Executive Director

THE POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT

By: _____
    Name: Cynthia A. Thomas
    Title: Executive Director

By: _____
    Name: James E. Moore
    Title: Trustee

13

## SCHEDULE A

Recognizing that transactions of the type contemplated in the attached letter agreement sometimes result in litigation and that Greenhill's role is advisory, the Detroit Retirement Systems agree, to the fullest extent permissible under applicable law, to indemnify and hold harmless Greenhill, its affiliates, and their respective officers, directors, employees, agents and each other entity or person, if any, controlling Greenhill, or any of its affiliates (collectively, the "Indemnified Parties"), from and against any losses, claims, damages, demands and liabilities (or actions or proceedings in respect thereof), joint or several, related to or arising in any manner out of any activities performed or services furnished pursuant to the attached letter agreement, the transactions contemplated thereby or Greenhill's role in connection therewith (the "Indemnified Activities").   In addition, the Detroit Retirement Systems will promptly reimburse the Indemnified Parties for all expenses (including, without limitation, fees and expenses of legal counsel), as incurred, in connection with (i) the investigation of, preparation for or defense or pursuit of any pending or threatened investigative, administrative, judicial, or regulatory or other claim, action or proceeding or any arbitration or investigation in any jurisdiction related to or arising in any manner out of any Indemnified Activities, whether or not in connection with pending or threatened litigation to which Greenhill (or any other Indemnified Party) or the Detroit Retirement Systems or any of their security holders is a party (collectively, "Proceedings") and (ii) enforcing any Indemnified Parties right under the attached letter agreement (including this Schedule A). Notwithstanding the foregoing, the Detroit Retirement Systems shall not be liable in respect of any losses, claims, damages, demands, liabilities or expenses that a court of competent jurisdiction shall have determined by final nonappealable judgment resulted solely from the gross negligence or willful misconduct of an Indemnified Party.

Upon receipt by an Indemnified Party of actual notice of a Proceeding against such Indemnified Party in respect of which indemnity may be sought hereunder, such Indemnified Party shall promptly notify the Detroit Retirement Systems with respect thereto. In addition, an Indemnified Party shall promptly notify the Detroit Retirement Systems after any Proceeding is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnified Party in respect of which indemnity may be sought hereunder. In any event, failure to notify the Detroit Retirement Systems shall not relieve the Detroit Retirement Systems from any liability which the Detroit Retirement Systems may have on account of this indemnity or otherwise, except to the extent the Detroit Retirement Systems shall have been materially prejudiced by such failure. The Detroit Retirement Systems will, if requested by any Indemnified Party, assume the defense of any Proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to Greenhill and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Detroit Retirement Systems shall not be liable for the fees and expenses of any other counsel retained by any Indemnified Party in connection with such Proceeding. In any such Proceeding the defense of which the Detroit Retirement Systems shall have so assumed, any Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (i) the Detroit Retirement Systems and such Indemnified Party

14

shall have mutually agreed in writing to the retention of such counsel or (ii) the named parties to any such Proceeding (including any impleaded parties) include the Detroit Retirement Systems and such Indemnified Party and representation of both parties by the same counsel would, in the opinion of counsel to such Indemnified Party, be inappropriate due to actual or potential differing interests between the Detroit Retirement Systems and such Indemnified Party. The Detroit Retirement Systems shall not be liable for any settlement of any Proceeding effected without its written consent, but if settled with such consent or if there is a final judgment against an Indemnified Party, the Detroit Retirement Systems agree to indemnify the Indemnified Party from and against any loss or liability by reason of such settlement or judgment as and to the extent contemplated by this Schedule A (other than, in any such case, as a result of the last sentence of the first paragraph of this Schedule A). The Detroit Retirement Systems will not settle any Proceeding of which the Detroit Retirement Systems have assumed the defense in accordance with the foregoing, whether or not any Indemnified Party is an actual or potential party to such Proceeding, without Greenhill's written consent, unless such settlement includes an unconditional release of each Indemnified Party from all liability arising out of such Proceeding and does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of any Indemnified Party.

The Detroit Retirement Systems and Counsel further agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Detroit Retirement Systems, the City, Counsel or any of their security holders or creditors for or in connection with Greenhill's engagement hereunder or the transactions contemplated by the attached letter agreement except for losses, claims, damages, liabilities or expenses that a court of competent jurisdiction shall have determined by final nonappealable judgment resulted solely from the gross negligence or willful misconduct of such Indemnified Party.

The indemnity and reimbursement obligations of the Detroit Retirement Systems shall be in addition to any liability which the Detroit Retirement Systems may otherwise have to an Indemnified Party, shall not be limited by any rights that an Indemnified Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Detroit Retirement Systems or an Indemnified Party.

The indemnity and reimbursement provisions set forth herein shall remain operative and in full force and effect regardless of (i) any withdrawal, termination or consummation of or failure to initiate or consummate any transaction contemplated by the attached letter agreement, (ii) any investigation made by or on behalf of any party hereto or any person controlling (within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) any party hereto, (iii) any amendment or other modification or termination or the completion or expiration of the attached letter agreement or Greenhill's engagement and (iv) whether or not Greenhill shall, or shall not be called upon to, render any formal or informal advice in the course of such engagement.

# EXHIBIT C

# ARNOLD & PORTER LLP

Lisa S. Blatt
Lisa.Blatt@aporter.com

+1 202.942.5842
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

October 1, 2013

**BY EMAIL AND REGULAR MAIL**

Joseph Turner
General Counsel for the Police and Fire
  Retirement System of the City of Detroit
Clark Hill PLC
500 Woodward Ave., Suite 3500
Detroit, Michigan 48226

Email: jturner@clarkhill.com

Michael J. VanOverbeke
General Counsel for the General Retirement
  System of the City of Detroit
VanOverbeke Michaud & Timmony PC
79 Alfred Street
Detroit, Michigan 48201

Email: mvanoverbeke@vmtlaw.com

Re:    In re City of Detroit, Chapter 9 Case No. 13-53846 (Bankr. E.D. Mich.)

Dear Messrs. Turner and VanOverbeke:

We are very pleased that, effective as of September 6, 2013, the Police and Fire
Retirement System of the City of Detroit and General Retirement System of the City of
Detroit (collectively, the "Retirement Systems" or "you") have engaged Arnold & Porter
LLP, a limited liability partnership organized under the laws of the District of Columbia
(the "Firm") to provide legal services to you in connection with the above entitled
Chapter 9 bankruptcy case (the "Case") and any appeals in the Case (collectively,
"Appeals"). The purpose of this letter is to set forth our mutual understanding as to the
basis on which we will represent you with respect to this matter and such additional

34109811

13-53846-tjt    Doc 8393    Filed 11/21/14    Entered 11/21/14 22:26:00    Page 47 of 68

matters as we may mutually agree. The parties have agreed that the billing in this matter will be subject to special arrangements, as set forth below, that are limited to the Case and Appeals. Each party shall be severally liable for one half of the total fees and expenses billed in this matter, except that each party shall be solely responsible for any fees and expenses that have been incurred at its direction for its sole benefit.

1. <u>Fee Calculation</u>. The Firm will charge the Retirement Systems for professional services based on the time we spend on your matters. The hourly rates for the attorneys anticipated to work on your matters are attached. By special agreement with you, the Firm has agreed to cap the hourly rates for each of its professionals at $700 per hour (the "Rate Cap") for 2013 rates. This represents a substantial reduction in the hourly rates of the partners who will be principally involved in this representation. Counsel and associates will generally be billed at their ordinarily applicable rates, subject to the Rate Cap. However, you should be aware that our billing rates are reviewed at least annually, usually in January of each year, and also may be modified to reflect changes in our cost structure (including those related to changes in seniority levels), market conditions, and such other factors as the Firm deems appropriate. The Firm has agreed that, in connection with its annual review of rates, it will not increase the Rate Cap or the rate for individual professionals by more than $50 per hour, provided, however, after accounting for any such rate increases, the overall blended rate of each bill shall reflect at least a 10% discount from the then-prevailing standard hourly rates for the attorneys involved. We have also agreed that our attorneys will bill you for non-working travel time at 50% of the applicable hourly rates for this matter.

Our charges will include billings for the time of attorneys and, where applicable, other professionals and paraprofessionals. We will be pleased to indicate to you, if you wish, our current standard hourly rates for attorneys and others at various levels of seniority.

2. <u>Reimbursement for Expenses</u>. In performing this engagement, we may make disbursements and incur internal charges on your behalf. These are likely to include disbursements or charges for such items as travel and transportation expenses (including subsistence expenses while on travel); express delivery and express postage charges; expenses associated with overtime work; and any special computer, data processing, or similar expenses that are beyond the capacity of the Firm's existing system. We will bill you at cost for charges paid to third parties, and charges for internal services will be billed at the Firm's usual and customary rates for such services. Please note that we do not pay third party vendor invoices in excess of $10,000.00 until we have received

34109811

# ARNOLD & PORTER LLP

payment from you for such services. A schedule of our current charges for expenses is attached.

If, in the course of the engagement it is necessary for the Firm to arrange for the services of other outside counsel, experts, or consultants, or to incur other major expenses on your behalf, we will arrange to have the charges for such services or items billed directly to the Retirement Systems, unless other arrangements are agreed to between us.

3.    <u>Statements for Fees and Expenses</u>.  On a regular basis, generally every month, the Firm will send you a statement covering our fee charges and expenses, providing such reasonable detail as you may require. All such statements are due and payable within 30 days following your receipt of them. While you may wish to decide as between you how you wish to allocate our charges for fees and expenses, we will look to both of you, jointly and severally, for payment. We understand that internal accounts payable processing may occasionally cause delays in the payment of our statements, and I am sure that you understand that undue delays in the payment of our statements increase our costs in providing legal services to all of our clients.    Furthermore, if our fees are not paid timely, we reserve the right to terminate our services and withdraw from any matter, proceeding or case then pending, so long as our withdrawal can be accomplished in accordance with applicable Rules of Professional Responsibility. Additionally, should it become necessary, you will be responsible for any costs and attorneys' fees incurred by this Firm in collecting any unpaid and outstanding balances owed. Except where prohibited, we shall have a lien on all of your documents, property, or money in our possession for the payment of all sums due us from you under the terms of this engagement. The disadvantage of the lien to you is that, should we have a dispute over our fees and costs, it could delay your receipt of the funds that are in dispute. However, we ask for such a lien to protect our right to payment of our fees and costs, and should a dispute over our fees or costs arise, we will make every effort to resolve that dispute promptly.

Pursuant to Part 137 of the Rules of the Chief Administrator of the New York Courts, we advise all our clients that, if a dispute arises over our fees, and our representation has involved work by a New York attorney and a material amount of work in New York, the Retirement Systems may have the right to arbitration of this dispute.

<u>Waiver of Future Conflicts</u>.  Arnold & Porter LLP is a national and international law firm that represents a diverse array of individuals, companies and other entities. For example, the Firm regularly represents debtors, secured and unsecured creditors, and

# ARNOLD & PORTER LLP

other interested parties in bankruptcy cases, financial restructuring, and other lending and contractual matters. Thus, although a comprehensive list of all creditors of the City of Detroit has not been available, the Firm may have represented or may currently represent some other creditors listed in the bankruptcy pleadings and schedules, but not in connection with their dealings with the City of Detroit or this Case. In addition, a summary of our current practice areas and the industries in which we represent clients can be found on our web site at www.arnoldporter.com. Some of our current or future clients including OneWest Bank and various of its affiliates, among others, may have matters in conflict with you, your company or one or more of its parent, subsidiary or affiliated entities. Such matters could pose a variety of risks, direct or indirect, to your business, legal, financial or other interests. So that we are not unnecessarily conflicted from representing you or our other clients, we routinely ask clients for advance waivers of conflicts of interest in matters distinct from the matters on which we represent them. Thus, by accepting this letter, you agree that we will not be disqualified by reason of our representation of you from representing any client with interests adverse to you in litigation, transactions or other matters that are not substantially related to the matters on which we have been retained by you.

The Retirement Systems also acknowledge that with respect to information that the Firm acquires during the representation of other clients, neither the Retirement Systems nor any other person or entity will have any right or expectation of access to or use of such information. And, of course, we will similarly hold your information and secrets in confidence.

The occasion might arise for us to consult regarding our engagement for you with our own counsel – our General Counsel or other firm lawyers – or with our own outside counsel at our expense. To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between us and you as to such consultation. Accordingly, a condition of this engagement is that you consent to such consultation occurring, and waive any claim of conflict of interest based on such consultation. You also acknowledge that such communications are protected by our own attorney-client privilege from disclosure to you.

In addition, this letter will confirm our understanding that, unless we reach an explicit understanding to the contrary, we are being engaged by, and will represent, the Retirement Systems and not any parent, subsidiary or affiliated entities.

34109811

# ARNOLD & PORTER LLP

4. <u>Promotional Materials.</u> You agree that the Firm may identify you as a client in the Firm's promotional materials, including its web site, and may describe the general nature of the Firm's representation of you. The Firm will not disclose any specific nonpublic matters in any promotional materials without your prior approval.

5. <u>Conclusion of Our Representation</u>. If, at any time we conclude that there are no active matters in which we are representing you, you will be considered a former, rather than a current client of the Firm, unless and until you ask us to perform additional services, and we agree to perform them.

You are free, of course, to terminate our services at any time. In addition to the reasons described in Section 3, we reserve the same right so long as our withdrawal can be accomplished in accordance with applicable law.

6. <u>Retention of Records</u>. The Firm adopts policies from time to time concerning the retention or destruction of records relating to engagements by clients. When we complete a particular matter that you have assigned to us, we may destroy any records as we believe appropriate, absent a written agreement between us to the contrary. If we are required by applicable law to retain records for a particular period of time, the applicable law will supersede this general rule. In referring to records, we include electronic and 'hard copy' records.

7. <u>Joint Representation.</u> It is our understanding that you wish us to jointly represent both Retirement Systems. We are pleased to represent both clients. The Rules of Professional Conduct provide that a lawyer may not represent multiple clients if our representation of one client will be or is likely to be adversely affected by our representation of another client. We do not believe that such an adverse effect currently exists or is likely to arise with respect to our representation of the Retirement Systems. However, you should be aware that in the future conflicts of interests might arise if the interests of each of the Retirement Systems become inconsistent. We will be alert to the potential for such conflicts, as should you. Should you believe that such conflicts have arisen or are likely to arise, you should let us know. We will do the same. At that point, we will discuss the situation fully so that you can decide whether one or both Retirement Systems wish to obtain independent counsel.

You should be aware that certain potential conflicts exist in nearly all cases of multiple or joint representation. For example, multiple representation may result in divided or at least shared attorney-client loyalties. Although we are not currently aware

34109811

# ARNOLD & PORTER LLP

of any actual or reasonably foreseeable adverse effects of such divided or shared loyalty, it is possible that issues may arise as to which our representation of the Police and Fire Retirement System of the City of Detroit may be materially limited by our representation of General Retirement System of the City of Detroit, or vice-versa.

Notwithstanding the risks outlined in this letter, you have advised us that at the present time you do not desire to seek other counsel but instead you desire that we jointly represent the Retirement Systems in connection with the Case and Appeals.

This letter will confirm our understanding that, during the course of the representation, we may take directions from either or both of you. By signing this letter, you agree that, if a conflict arises among the interests of the Retirement Systems such that the Firm no longer can represent one or both of you, then, in light of all of the relevant circumstances that exist at the time and the Rules of Professional Conduct applicable to us, the Firm may withdraw from further representation of either or both of the Retirement Systems. You agree that you shall each have the right to receive a copy of the file at the end of the representation.

In addition, because we will represent both of the Retirement Systems, it is agreed that each of the Retirement Systems has a right to learn the substance of the communications that we have with the other with respect to the Case or Appeals. In other words, if one of you tells us something related to the Case or Appeals, that information may be disclosed to the other jointly represented party. Although the attorney/client privilege will bar disclosure of our conversations with you to the outside world, the privilege does not bar disclosure to the other jointly represented party of what any one of you tells us. Indeed, if the information is significant, we may have a duty to disclose information from or about one jointly represented party to the other.

Finally, this will also confirm our understanding that, unless we reach an explicit understanding to the contrary, we are being engaged by, and will represent the Retirement Systems, and not any other parent, subsidiary or affiliated entities.

8.    Resolution of Disputes.

Any dispute, claim or controversy (a "Dispute") between or among the Retirement Systems, including any third party the Retirement Systems may agree to pay the Firm to represent, and the Firm (including any of our partners, counsel, associates, employees, agents and representatives) arising out of or in any way relating to this

agreement, any services we provide or our fees and costs for providing such services shall be determined by confidential, binding arbitration in Detroit, Michigan before a panel of three neutral arbitrators, with one arbitrator being selected by each party and the third jointly or, if the parties cannot agree, chosen by the AAA, as defined below. The arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its Commercial Arbitration Rules and Procedures (Regular Track Procedures) in force at the time the arbitration is commenced. The arbitrator shall decide any issue of the breach, termination, enforcement, interpretation or validity of this entire agreement, including the determination of the scope or applicability of the agreement to arbitrate. Any court proceedings related to the arbitration shall take place in the state court (or federal court, if jurisdiction exists) located in [Washington, D.C.] This clause shall not preclude parties from seeking provisional remedies in aid or arbitration from a court of appropriate jurisdiction.

By agreeing to this binding arbitration provision, the parties understand that they are waiving certain important rights and protections that otherwise may have been available if a Dispute were determined by a judicial action including, without limitation, the right to a jury trial, and certain rights of appeal.

In any Dispute, other than one for which applicable law forbids it, the prevailing party shall recover its reasonable attorneys' fees and costs, except that the parties shall bear equally all costs and fees of AAA and the arbitrator.

The parties shall maintain the confidential nature of the arbitration proceedings and the arbitration award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision. Each party agrees that it shall use its reasonable best efforts to cause its directors, officers, partners, associates, employees, affiliates and agents to abide by this confidentiality agreement.

This agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the [District of Columbia], exclusive of conflict or choice of law rules. The parties acknowledge that this agreement evidences a transaction involving interstate commerce and, notwithstanding the provision in the preceding sentence, any arbitration conducted pursuant to the terms of this agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1-16.

34109811

# ARNOLD & PORTER LLP

* * * *

  If you have any questions about the matters described above, please let us know. This agreement contains important information about your rights, obligations and agreements with us, so we encourage you to consult independent counsel or any other advisor you wish about the information set forth above, including the conflict of interest waivers sought in this letter, the financial and other obligations that you are undertaking in this agreement, and the procedures for resolution of disputes.

  Once again, we appreciate the opportunity to work together.

Sincerely,

*Lisa S. Blatt*

Lisa S. Blatt

Enclosures

ACCEPTED AND AGREED TO:

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By: _____
  Name: _____
  Title: _____

GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By: _____
  Name: _____
  Title: _____

Attachment (Expenses Charged to Clients; Principal Attorneys and Hourly Rates)

34109811

# ARNOLD & PORTER LLP

\* \* \* \*

If you have any questions about the matters described above, please let us know. This agreement contains important information about your rights, obligations and agreements with us, so we encourage you to consult independent counsel or any other advisor you wish about the information set forth above, including the conflict of interest waivers sought in this letter, the financial and other obligations that you are undertaking in this agreement, and the procedures for resolution of disputes.

Once again, we appreciate the opportunity to work together.

Sincerely,

*Lisa S. Blatt*

Lisa S. Blatt

Enclosures

ACCEPTED AND AGREED TO:

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By:
    Name: _Joseph E. Turner_
    Title: _General Counsel_

GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By: _____
    Name: _____
    Title: _____

Attachment (Expenses Charged to Clients; Principal Attorneys and Hourly Rates)

34109811

## ARNOLD & PORTER LLP

\* \* \* \*

If you have any questions about the matters described above, please let us know. This agreement contains important information about your rights, obligations and agreements with us, so we encourage you to consult independent counsel or any other advisor you wish about the information set forth above, including the conflict of interest waivers sought in this letter, the financial and other obligations that you are undertaking in this agreement, and the procedures for resolution of disputes.

Once again, we appreciate the opportunity to work together.

Sincerely,

*Lisa S. Blatt*

Lisa S. Blatt

Enclosures

ACCEPTED AND AGREED TO:

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By: _____
    Name: _____
    Title: _____

GENERAL RETIREMENT SYSTEM
OF THE CITY OF DETROIT

By: _____
    Name: _Michael J. VanOverbeke_
    Title: _General Counsel_

Attachment (Expenses Charged to Clients; Principal Attorneys and Hourly Rates)

34109811

# EXPENSES CHARGED TO CLIENTS
## As of January 1, 2013

**CHARGES PAID TO THIRD PARTIES**

| Disbursement Category | Standard Client Charge | Description |
|---|---|---|
| Transportation Allowance | cost | Taxi, Parking or Subway charge for employees who work in excess of 2 hours overtime |
| Meal Allowance | cost | Meal reimbursement (not to exceed $10 ($20 - NY) for staff) for meals incurred by employees who work in excess of 2 hours overtime |
| Other Computer Research | cost | Excludes Lexis and Westlaw; includes Dun & Bradstreet, Courthouse News Service, etc. |
| Telephone | n/c | No charge |
| Travel | cost | Costs of airfare, travel agency fees, meals, lodging, etc. |
| Local Transportation | cost | Costs of taxis, subways, etc. |
| Local Meals | cost | Costs of meals not incurred on travel status |
| Outside Duplicating | cost | Costs of duplicating jobs sent to outside vendors |
| Equipment & Furniture Rental | cost | Only charged when preauthorized by client |
| Postage | n/c | No charge |
| Air Delivery Services | cost | Includes Federal Express, DHL, etc. |
| Meetings & Functions | cost | Costs of meals and beverages provided at meetings |
| Local Counsel/Outside Counsel | cost | Cost of local/outside counsel fees and disbursements |
| Arbitrators | cost | Costs of arbitration fees |
| Consulting Fees | cost | Costs of consultants, outside experts, etc. |
| Depositions & Transcripts | cost | Costs of depositions, transcripts, etc. |
| Filing Fees | cost | Costs of court and agency, filing fees |
| Litigation Support | cost | Costs of case technology/e-discovery |
| Witness Fees | cost | Costs of witness fees |

| CHARGES FOR INTERNAL SERVICES | |
|---|---|
| Category | Standard Client Charge |
| Lexis and Westlaw Computer Research | Clients benefit from the Firm's favorable flat fee arrangements with Lexis and Westlaw. |
| | The Firm obtains favorable rates for computerized research by paying Lexis and Westlaw a flat fee. The effective discount off the standard Lexis and Westlaw rates will, however, depend on usage. The Firm, generally on a quarterly basis, calculates the effective discount based on actual usage and applies that discount to charges for computer research until the next accounting period. Lexis is currently discounted by 40% and Westlaw is currently discounted by 85%. |
| Duplicating | $0.15 per copy<br>$0.75 per copy – Color<br>Note: Pricing for individual duplicating jobs in excess of 25,000 prints may be individually negotiated |
| Binding | No charge |
| Telecopy | No charge |

34109811

## ATTORNEYS PRINCIPALLY INVOLVED IN THIS REPRESENTATION

| Attorney | Office/Status | Regular Hourly Rate | Agreed Hourly Rate for this Representation* |
|---|---|---|---|
| Lisa S. Blatt | DC - Partner | $935 | $700 |
| Michael L. Bernstein | DC - Partner | $935 | $700 |
| Lisa Hill Fenning | LA - Partner | $925 | $700 |
| Charles Malloy | DC - Counsel | $695 | $695 |
| Stanton Jones | DC - Associate | $590 | $590 |
| Dana Yankowitz | DC - Associate | $590 | $590 |

*Subject to periodic adjustments, within the agreed $700 per hour cap

34109811

EXECUTIVE DIRECTOR'S REPORTS

EXECUTIVE DIRECTOR CYNTHIA A. THOMAS BRIEFLY DISCUSSED THE BOARD'S OFFICE SPACE RFP AS WELL AS PLANTE MORAN'S RESPONSE TO THE BOARD'S RFP FOR ACCOUNTING SERVICES. PLANTE MORAN'S RFP RESPONSE WILL BE DISCUSSED NEXT WEEK, PER THE REQUEST OF TRUSTEE PEGG.

RECESS

THE BOARD RECESSED FROM 10:40 A.M. UNTIL 11:20 A.M.

TRUSTEE SATCHEL EXCUSED HIMSELF DURING RECESS (AT 10:40 A.M.).

TRUSTEES NOOR AND ORZECH EXCUSED THEMSELVES AT 11:20 A.M.

CLARK HILL

RON KING AND ROBERT GORDON APPEARED BEFORE THE BOARD TO DISCUSS TWO (2) MATTERS INVOLVING ATTORNEY/CLIENT PRIVILEGE, SO CHAIRMAN GNATEK ASKED THE BOARD TO ENTER INTO CLOSED SESSION.

CLOSED SESSION

BY TRUSTEE PEGG – SUPPORTED BY TRUSTEE JOHNSON

Resolved, That the Board enter into Closed Session for the purpose of discussing matters involving attorney/client privilege:

A Roll Call vote was taken as follows:

YEAS – TRUSTEES BRIDGES, DIAZ, EDWARDS, JENKINS, JOHNSON, MOORE, NEARY, PEGG, SIMON, SINAGRA AND CHAIRMAN GNATEK – 11

NAYS – NONE

The Board entered into Closed Session at 11:21 A. M.

TRUSTEE ORZECH RE-JOINED THE MEETING DURING CLOSED SESSION (AT 11:22 A.M.).

TRUSTEE **SATCHEL** RE-JOINED THE MEETING DURING CLOSED SESSION (AT 11:32 A.M.) AND THEN EXCUSED HIMSELF AT 11:33 A.M.

CONTINUATION OF CLOSED SESSION

AT 11:40 A.M., CHAIRMAN **GNATEK** RELINQUISHED THE CHAIR TO VICE CHAIRMAN **ORZECH** DURING CLOSED SESSION AND TEMPORARILY EXCUSED HIMSELF.

CHAIRMAN **GNATEK** RE-JOINED THE MEETING DURING CLOSED SESSION (AT 11:50 A.M.) AND VICE CHAIRMAN **ORZECH** RELINQUISHED THE CHAIR TO HIM.

TRUSTEE **SATCHEL** RE-JOINED THE MEETING DURING CLOSED SESSION (AT 11:58 A.M.) AND THEN EXCUSED HIMSELF AT 12:12 P.M.

SPECIAL COUNSEL **JOE TURNER** EXCUSED HIMSELF DURING CLOSED SESSION (AT 12:15 P.M.).

DURING CLOSED SESSION, TRUSTEE **JOHNSON** RELINQUISHED HER CHAIR TO HER ALTERNATE, TRUSTEE **STOUDEMIRE**, AT 12:21 P.M. AND THEN TEMPORARILY EXCUSED HERSELF.

TRUSTEE **BRIDGES** EXCUSED HIMSELF DURING CLOSED SESSION (AT 12:35 P.M.) AND THEN RE-JOINED THE MEETING AT 12:41 P.M.

TRUSTEE **JENKINS** EXCUSED HIMSELF DURING CLOSED SESSION (AT 12:42 P.M.).

TRUSTEE **JOHNSON** RE-JOINED THE MEETING DURING CLOSED SESSION (AT 1:15 P.M.) AND TRUSTEE **STOUDEMIRE** RELINQUISHED HER CHAIR TO HER.

OPEN SESSION

BY TRUSTEE ORZECH – SUPPORTED BY TRUSTEE SINAGRA

Resolved,  That the Board return to Open Session:

A Roll Call vote was taken as follows:

YEAS – TRUSTEES BRIDGES, DIAZ, EDWARDS, JOHNSON, ORZECH, MOORE, NEARY, PEGG, SIMON, SINAGRA AND CHAIRMAN GNATEK – 11

NAYS – NONE

# EXHIBIT D

**MEETING NUMBER 2941**

JOURNAL OF PROCEEDINGS OF THE BOARD OF TRUSTEES OF THE POLICE
AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT

◆ ◆ ◆

**PROCEEDINGS HELD THURSDAY, JUNE 27, 2013**
**9:00 A.M.**

IN THE CONFERENCE ROOM OF THE RETIREMENT SYSTEMS
910 COLEMAN A. YOUNG MUNICIPAL CENTER
DETROIT, MICHIGAN 48226

◆ ◆ ◆

PRESENT

| | |
|---|---|
| Mark Diaz | Elected Trustee |
| James Edwards | Ex/Officio Trustee/Alternate for Corporation Counsel |
| Matthew Gnatek | Elected Trustee/Chairman |
| Angela R. James | Ex/Officio Retirant Trustee (Police) (Mayoral Designee) |
| Edsel Jenkins | Ex/Officio Retirant Trustee (Fire) (Mayoral Designee) |
| Cheryl R. Johnson | Ex/Officio Trustee/Treasurer |
| Brenda Jones | Ex/Officio Trustee/City Council Representative |
| James Moore | Elected Trustee |
| Sean P. Neary | Elected Trustee |
| Jeffrey Pegg | Elected Trustee |
| Lamont D. Satchel | Ex/Officio Trustee/Alternate for Mayor |
| Michael Simon | Elected Retirant Trustee |
| Louis Sinagra | Elected Retirant Trustee |
| Tanya Stoudemire | Ex/Officio Trustee/Alternate for Finance Director |
| | |
| David Cetlinski | Assistant Executive Director |
| Ryan C. Bigelow | Investment Officer |
| Janet S. Lenear | Recording Secretary |
| TaKneisha Johnson | Recording Secretary |
| Joe Turner | General Counsel |

EXCUSED

| | |
|---|---|
| Medina Noor | Ex/Officio Trustee/Alternate for Budget Director |
| George Orzech | Elected Trustee/Vice Chairman |
| Cynthia A. Thomas | Executive Director |

ABSENT

None

CHAIRMAN GNATEK RECONVENED THE MEETING AT 11:05 A.M., DURING WHICH TIME TRUSTEE JONES RE-JOINED THE MEETING.

DROP APPLICATION

BY TRUSTEE DIAZ – SUPPORTED BY TRUSTEE NEARY

RESOLVED, THAT MICHAEL D. HINTON'S DROP APPLICATION BE APPROVED:

DROP APPLICATION

| | |
|---|---|
| NAME, TITLE, DEPARTMENT: | MICHAEL D. HINTON – LIEUTENANT - POLICE |
| RETIREMENT, PLAN: | DROP - NEW |
| SERVICE CREDIT, EFFECTIVE DATE: | 25 00 00 – 05 18 13 |

YEAS – TRUSTEES DIAZ, EDWARDS, JAMES, JENKINS, JOHNSON, JONES, MOORE, NEARY, PEGG, SATCHEL, SIMON, SINAGRA, STOUDEMIRE AND CHAIRMAN GNATEK - 14

NAYS – NONE

**APPROVAL OF FEES FOR PROFESSIONAL SERVICES SUPPORT TO RESTRUCTURING COUNSEL AND FINANCIAL ADVISOR**

**BY TRUSTEE PEGG – SUPPORTED BY TRUSTEE NEARY**

**WHEREAS**, the Board has appointed Clark Hill PLC as the Board's Restructuring Counsel, who has advised the Board on the contemplated complex negotiations with the Detroit Emergency Manager ("EM") and on pension contributions and City of Detroit restructuring issues, and that the Board (through its Restructuring Counsel), in conjunction with PFRS, engaged Greenhill & Co., LLC as its Restructuring Advisor for all pension fund restructuring discussions with the EM, and

**WHEREAS**, the Board's Restructuring Counsel and the Board's Restructuring Advisor (the "Restructuring Team") anticipate the need for direct support and assistance from various professional service providers to the PFRS; and

**WHEREAS**, the Board recognizes that direct support and assistance by PFRS professional service providers to the Restructuring Team may involve services not contemplated by existing engagement agreements with PFRS professional service providers, including, but not limited to, the PFRS's Actuary, Gabriel Roeder, Smith & Co., the PFRS's Consultant, Wilshire Associates Incorporated, the PFRS's Auditor, Plante & Moran, PLLC, and the PFRS's Real Estate Consultant, Courtland Partners, Ltd.; and

**APPROVAL OF FEES FOR PROFESSIONAL SERVICES SUPPORT TO
RESTRUCTURING COUNSEL AND FINANCIAL ADVISOR - CONTINUED**

**WHEREAS**, the Board has considered this matter in open session, **NOW THEREFORE BE IT**

**RESOLVED**, that the Board approves various PFRS professional service providers to provide assistance to the Restructuring Team as requested by the Restructuring Team, and be it further

**RESOLVED**, that with respect to such additional services, which may exceed the scope of existing engagements with PFRS professional service providers, including, but not limited to, the PFRS's Actuary, Gabriel Roeder, Smith & Co., the PFRS's Consultant, Wilshire Associates Incorporated, the PFRS's Auditor, Plante & Moran, PLLC, and the PFRS's Real Estate Consultant, Courtland Partners, Ltd., the Board hereby approves compensation for PFRS professional service providers at a fair and reasonable rate or fee, plus costs; and be it further

**RESOLVED**, that a copy of this resolution shall be provided to the Board's Restructuring Counsel, the Board's Restructuring Advisor, the Board's Actuary, the Board's Consultant, the Board's Auditor, and the Board's real estate consultant:

RONALD A. KING
CLARK HILL
212 EAST GRAND RIVER AVENUE
LANSING, MICHIGAN  48906

BRADLEY A. ROBINS
GREENHILL & CO., LLC
300 PARK AVENUE
NEW YORK, NEW YORK  10022

NORM JONES
GABRIEL, ROEDER, SMITH & COMPANY
ONE TOWN SQUARE – SUITE 800
SOUTHFIELD, MICHIGAN  48076

WILLIAM G. BENSUR
WILSHIRE ASSOCIATES
210 SIXTH AVENUE – SUITE 3720
PITTSBURGH, PENNSYLVANIA  15222

BETH BIALY
PLANTE & MORAN, PLLC
27400 NORTHWESTERN HIGHWAY
POST OFFICE BOX 307
SOUTHFIELD, MICHIGAN  48037-00307

**APPROVAL OF FEES FOR PROFESSIONAL SERVICES SUPPORT TO
RESTRUCTURING COUNSEL AND FINANCIAL ADVISOR - CONTINUED**

MICHAEL MURPHY
COURTLAND PARTNERS
200 PUBLIC SQUARE
SUITE 2530
CLEVELAND, OHIO  44114

YEAS – TRUSTEES DIAZ, EDWARDS, JAMES, JENKINS, JOHNSON, JONES, MOORE,
      NEARY, PEGG, SATCHEL, SIMON, SINAGRA, STOUDEMIRE AND
      CHAIRMAN GNATEK - 14

NAYS – NONE

BAB ASSOCIATES, LLC

BY TRUSTEE PEGG – SUPPORTED BY TRUSTEE NEARY

RESOLVED,   THAT THE FOLLOWING BE EFFECTUATED ON BEHALF OF BAB
ASSOCIATES, LLC:

1. PERMIT BAB ASSOCIATES, LLC TO SPEAK REGARDING MESSAGES WHICH
   HAVE BEEN VETTED, SUBJECT TO THE RESTRUCTURING TEAM'S
   CONTINUED APPROVAL OF "KEY" MESSAGES

2. PROVIDE A TOOL-BOX STUDY OF VETTED ISSUES BY THE BOARD'S
   GENERAL COUNSEL AND PUBLIC RELATIONS TEAM THAT BAB ASSOCIATES,
   LLC CAN USE TO SPEAK TO THE MEDIA ON THE RECORD

3. PLACE BAB ASSOCIATES, LLC ON THE BOARD'S WEEKLY AGENDA
   FOLLOWING INVESTMENT OFFICER'S REPORTS

YEAS – TRUSTEES DIAZ, EDWARDS, JAMES, JENKINS, JOHNSON, JONES, NEARY,
      PEGG, SATCHEL, SIMON, SINAGRA, STOUDEMIRE AND CHAIR-
      MAN GNATEK - 13

NAYS – TRUSTEE MOORE – 1

**CHAIRMANSHIP – JULY 1, 2012 – JUNE 30, 2013**

THE BOARD EXTENDS ITS APPRECIATION AND THANKS TO **MATTHEW GNATEK**
FOR HIS FAITHFUL AND DEVOTED INTEREST AND SERVICE TO THE POLICE AND FIRE
RETIREMENT SYSTEM OF THE CITY OF DETROIT DURING HIS TENURE AS CHAIRMAN
FROM **JULY 1, 2012** THROUGH **JUNE 30, 2013**.

# EXHIBIT B

201584777

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                   )          Chapter 9

                            )

CITY OF DETROIT, MICHIGAN,  )        Case No. 13-53846

                            )

                            )          Hon. Steven W. Rhodes

        Debtor.          )

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 21, 2014, the Brief in Support of The Detroit Retirement Systems' Limited Objection to Entry of Proposed Order Confirming Eight Amended Plan for the Adjustment of Debts of the City of Detroit was filed using the Court's CM/ECF system, which CM/ECF system will send notification of such filing to all parties of record.

                            CLARK HILL PLC

                            /s/ Robert D. Gordon
                            Robert D. Gordon (P48627)
                            151 S. Old Woodward Avenue, Suite 200
                            Birmingham, Michigan 48009
                            Telephone: (248) 988-5882
                            rgordon@clarkhill.com

*Counsel to the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit*

Dated: November 21, 2014