# ITEM 10

ATI-102628129v1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .        Docket No. 13-53846
        MICHIGAN,             .
                             .        Detroit, Michigan
                             .        October 17, 2014
                Debtor.       .        9:00 a.m.
. . . . . . . . . . . . . . . .

HEARING RE. (#4876) OBJECTION TO CLAIM NUMBER OF CLAIMANT
MICHIGAN AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT
LOCAL/OBJECTION OF THE CITY OF DETROIT PURSUANT TO
SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE,
BANKRUPTCY RULE 3007 AND LOCAL RULE 3007-1, TO
PROOF OF CLAIM NUMBER 2958 FILED BY THE MICHIGAN
AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALS
FILED BY DEBTOR IN POSSESSION CITY OF DETROIT, MICHIGAN
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:        Jones Day
                       By:  HEATHER LENNOX
                       222 East 41st Street
                       New York, NY  10017
                       (212) 326-3837

For AFSCME:            Miller Cohen, PLC
                       By:  RICHARD MACK, JR.
                       6700 West Lafayette Blvd., 4th Floor
                       Detroit, MI  48226-3191
                       (313) 566-4787


Court Recorder:        LaShonda Moss
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1     THE CLERK:  All rise.  Court is in session.  You may

2  be seated.  Calling the matter of City of Detroit, Michigan,

3  13-53846.

4     MS. LENNOX:  Good morning, your Honor.  For the

5  record, Heather Lennox of the city on behalf -- or Heather

6  Lennox of Jones Day on behalf of the city.  We're here before

7  your Honor this morning on an objection to two parts of the

8  omnibus claim that AFSCME filed against the city in this

9  case.  That's Claim Number 2958.  Specifically, we are here

10 on the first issue, which is line 7 in the description of

11 claims filed by AFSCME, and that relates to a proceeding -- a

12 grievance that the -- that AFSCME had filed with respect to

13 the 2011 change to the city ordinances that prohibited the

14 payment of 13th checks and also limited the amount of

15 interest that could be credited to a participant's annuity

16 savings fund account.  That would be the line 7 claim.

17     The line 17 claim is a claim for -- it's an unfair

18 labor practice with respect to changes in retiree healthcare

19 benefits that the city implemented back in 2006.

20     I should say that with respect to the line 7 claim,

21 the 13th check claim, AFSCME is asking for damages related to

22 the years 2011 and 2012, but what we're doing here

23 fundamentally today, your Honor, is objecting to these

24 portions of the claim, and I say this because, although it

25 seems obvious, after reading AFSCME's brief, I got the

1    impression that they were a bit confused about what a
2    bankruptcy claim is and what effect bankruptcy has on those
3    claims, so while I know the Court understands this, I want to
4    make a few things clear for the claimant.  The definition of
5    the claim that will be treated by the plan of adjustment, we
6    define that in the plan, and we define that as a claim as
7    defined in Section 1015 of the Bankruptcy Code against the
8    city.  The definition of claim under Section 1015 of the
9    Bankruptcy Code is, "any right to payment, whether or not
10   such right is reduced to judgment, liquidated, unliquidated,
11   fixed, contingent, matured, unmatured, disputed, undisputed,
12   legal, equitable, secured or unsecured," or it is, "any right
13   to an equitable remedy for breach of performance if such
14   breach gives rise to a right to payment, whether or not such
15   right to an equitable remedy is reduced to judgment, fixed,
16   contingent, matured, unmatured, disputed, undisputed,
17   secured, or unsecured."  It's an exceedingly broad definition
18   and deliberately so, as your Honor found in the In re. Lipa
19   case.  I hope I pronounced that name correctly.  But this
20   includes both claims for past due amounts and for future or
21   prospective payments on account of any liability or
22   obligation of a debtor that accrued or arose prior to the
23   petition date.  That's what a claim is.  It encompasses all
24   rights to payment or any payments that were due whether they
25   were due pre-petition or whether they come due post-petition

1    or in the future as long as it's related to a liability or an

2    obligation that arose prior to the petition date.

3            So here -- and I'll take the two claims separately.

4    I'll start with Item 7, which is the 13th check claim.  Here

5    AFSCME's claim for damages in Item Number 7, which, if

6    granted, would be increased pension payments for the years

7    2011 and 2012, that claim is a claim that has to be addressed

8    in the plan of adjustment.  I think AFSCME seemed to indicate

9    in the brief that the plan of adjustment only deals with

10   future pension payments, and, again, that really

11   misapprehends the nature of what a claim in bankruptcy is,

12   and, in fact, it is a claim that is addressed already in the

13   plan of adjustment.  And, of course, everything I say, your

14   Honor, assumes that the plan of adjustment will eventually be

15   confirmed by your Honor and its terms become operative, but

16   that claim in the plan of adjustment is called a GRS pension

17   claim.  And, again, in keeping with the concept of a claim,

18   the GRS pension claim definition is exceedingly broad and

19   deliberately so, so it would capture all aspects of pension

20   payments or other pension obligations and leave nothing out.

21   In fact -- and we cited the definition in our papers -- but

22   the operative language is that it's a claim based upon,

23   arising under or related to any agreement, commitment, or

24   other obligation, whether evidenced by contract, agreement,

25   rule, regulation, ordinance, statute, or law for (a) any

pension, disability or other post-retirement payment or
distribution in respect to the employment of current or
former employees or (b) the payment by the GRS to persons who
at any time participated in, were beneficiaries of or accrued
post-retirement pension or financial benefits under the GRS.
That is all-encompassing.  And this definition, which is
embodied in the plan, which, as you know, your Honor, for --
at least with respect to the global pension settlement and
the grand bargain, that arose from the global pension
settlement.  And the agreement that arose from it is embodied
in the language in the plan.  That settlement was negotiated
with all of the union and retiree representatives in the
case, including GRS and including AFSCME.  AFSCME has never
objected to this definition in the plan.  AFSCME, in fact,
supported the plan and encouraged its members to vote in
favor of the plan, and, in fact, AFSCME has signed up to a
new CBA with the city that is faithful to the terms of the
plan and, in fact, makes no mention whatsoever of ASF or 13th
check payments or references the applicable ordinance.

However, now AFSCME wants to claim that somehow its
claim for the 2001 and 2012 13 check pension payment survives
and somehow morphs into a Class 14 general unsecured claim,
and that argument has to fail for several reasons.  The
first -- and in its brief AFSCME asserts this.  It asserts
that it filed its proof of claim and they filed it as a Class

1   14 claim, but when a claimant files a claim, all it is is a
2   filed claim.  It is the plan that classifies the claims as
3   they are filed, and just as a creditor files an omnibus proof
4   of claim that can encompass many different kinds of claims --
5   in fact, in this case, we've had the insurers for various
6   bond debt issuances that filed one claim, and they filed
7   claims for UTGOs and LTGOs and COPs, and all of those claims,
8   although they were contained in one piece of paper, are
9   classified in separate classes under the plan of adjustment.
10  So too here AFSCME filed several claims.  Some are for
11  ordinary grievances under the labor agreements.  Some are for
12  OPEB benefits.  Some are for pension benefits.  And they are,
13  likewise, separately classified in the plan.  So our position
14  is that any pension-related claims or claims where increased
15  pension benefits would be a remedy go into Class 11, at least
16  for GRS, because of the broad definition of GRS pension
17  claim, and claims for enhanced pension benefits under a 13th
18  check practice are included in the definition that I went
19  through before.  AFSCME suggests that, quote, crediting of an
20  account with excess interest doesn't count as a payment I
21  believe is an unavailing argument for a couple of reasons.
22  First, 13th checks are more than just crediting.  They're
23  actual payments.  People get an actual check.  That's why
24  it's called a 13th check.  Secondly, even if it were just
25  crediting, this is simply an unmatured claim for a payment in

1    the future, which is within the definition of claim under

2    Section 1015 of the Bankruptcy Code.  Secondly, whether a

3    claim for the 13th checks would be due in payment today or in

4    the future, the fact that the alleged liability for this

5    cause of action arose prior to the city's petition date --

6    specifically, it would have accrued in 2011 when the

7    ordinance was changed, and that makes these types of claims

8    pre-petition claims that can be and are treated in the plan

9    and can be discharged in this bankruptcy case.  I think, your

10   Honor, that that's all the analysis that's really needed with

11   respect --

12          THE COURT:  Well, let's pause here and ask do you

13   actually object to the claims, or do you object to the

14   treatment that the proof of claim asks for --

15          MS. LENNOX:  Well, that's --

16          THE COURT:  -- as being applicable instead of the

17   treatment that you say the plan would provide?

18          MS. LENNOX:  So I think we object to both, your

19   Honor.  In the brief we focused on -- although the reason for

20   no liability is also in there as well, but in the brief we

21   focused on that these are really subsumed in Class 11 of the

22   plan and should not be independently Class 14 claims.  Our

23   brief, as you may know about, the full claim is due tomorrow,

24   and your Honor has a hearing scheduled on November 5th on

25   account of it, but we also believe that there's no liability

1  for this claim because we believe --

2       THE COURT:  Well, but what difference does it make

3  if there's no liability or not -- if there is liability or

4  not if you are correct that the plan will treat whatever the

5  liability is in the way that the plan proposes to treat it?

6       MS. LENNOX:  You're correct, your Honor.  If your

7  Honor would find, as we believe is appropriate, that this is

8  subsumed within Class 11, that treatment is already

9  specified, and so the actual liability on it would never have

10  to be determined because that was settled and was in there.

11       THE COURT:  Because neither the pension claimants

12  nor the OPEB claimants were required to file claims; right?

13       MS. LENNOX:  That is correct because they were going

14  to be treated in the plan, and they had multiple

15  representatives negotiating for them.

16       THE COURT:  Right.

17       MS. LENNOX:  Now, that did not prohibit some of

18  their representatives from filing a claim, but they were not

19  required to.

20       THE COURT:  Okay.

21       MS. LENNOX:  That's correct.  If, however, your

22  Honor would disagree with me today and find that this really

23  is a Class 14 claim, we would absolutely assert before your

24  Honor --

25       THE COURT:  Okay.

1          MS. LENNOX:  -- that there's no liability.  So I

2    can, if you'd like, your Honor -- we set forth in our brief

3    why we think these were illegal and why there's no liability,

4    but for purposes of today about -- which is the issue about

5    whether they're subsumed in Class 11, I can either rest on

6    the papers if your Honor has questions or I can certainly go

7    through it.  I'm prepared to do it.

8          THE COURT:  Well, AFSCME asserts that under Michigan

9    law --

10          MS. LENNOX:  Um-hmm.

11          THE COURT:  -- a plan sponsor like the city here --

12          MS. LENNOX:  Um-hmm.

13          THE COURT:  -- doesn't have standing to assert a

14    breach of fiduciary obligation claim against the

15    administrators of the plan and that under that law only plan

16    beneficiaries can assert a breach of fiduciary obligation.

17          MS. LENNOX:  Yeah.

18          THE COURT:  How do you deal with that?

19          MS. LENNOX:  I would refer to the section of the

20    ordinance, which actually provides standing to the financial

21    officer of the City of Detroit, and I'm looking for that cite

22    right now, your Honor.  Yes.  It would be Detroit Municipal

23    Code 47-4-3, Enforcement Civil Action Number 4.  The finance

24    director on behalf of the city, as plan sponsor, may maintain

25    a civil action for relief.  Now, in the case -- in the <u>Estes</u>

1    case that was cited by Mr. Mack, those were individual

2    plaintiffs who were asserting standing, and in some cases,

3    not all cases, the Court in that case found that they didn't

4    have standing, notwithstanding what this Code section said,

5    because of governmental immunity.  Here if the city, as a

6    governmental agent, is asserting that, it is unclear to me

7    whether a governmental immunity defense would arise with

8    respect to that, so I do think the city very clearly has

9    standing by virtue of the ordinance that's out there.

10          THE COURT:  Well, what is the financial impact on

11   the city if the trustees of the GRS pension plan do breach

12   their fiduciary obligation and overpay beneficiaries?

13          MS. LENNOX:  I would say -- I will answer the

14   question, but I'd also say it's not just a breach of

15   fiduciary obligation.  It's a violation of the Code.  It's an

16   ultra vires act because there is no authority in the Code --

17   in Article -- in Chapter 47, which is the Retirement System

18   Code, for them to increase, augment benefits at all or

19   otherwise distribute investment income to participants, so

20   putting aside --

21          THE COURT:  Okay.  Well, no.  Let's not put it

22   aside.  Let's assume that this 13th check is a violation of

23   that --

24          MS. LENNOX:  Um-hmm.

25          THE COURT:  -- and a breach of fiduciary obligation.

1      MS. LENNOX:  Breach of fiduciary duty, um-hmm.

2      THE COURT:  The question that I want to address

3  isn't the merits of that.

4      MS. LENNOX:  Correct.

5      THE COURT:  It's the standing question.  What is the

6  financial impact on the city --

7      MS. LENNOX:  Um-hmm.

8      THE COURT:  -- if the Code is violated by means of

9  this 13th check and/or if there's a breach of fiduciary duty

10  that arises from the issuance of these 13th checks?

11      MS. LENNOX:  So the financial impact to the city,

12  your Honor, as the plan sponsor who has to contribute to this

13  plan was actually laid out -- and we attached this as Exhibit

14  C to our brief.  When the city council went to amend the

15  ordinance to try to curtail and prohibit some of these

16  practices in 2011, they retained an actuary to do an analysis

17  of just exactly what effect that would have had on the city.

18  And as of -- he evaluated the impact through 2008, and so

19  obviously this would continue after 2008, but Mr. Esuchanko

20  found that as of 2008, as a result of these practices, it

21  cost the city about $1.9 billion in the form of increased

22  contributions that it had to make and in sort of lost asset

23  value, you know.  Assets, had they been in the plan, would

24  have appreciated, so he valued that, and that is attached to

25  our exhibit.  That was a report that was presented to city

1  council that as of 2008 it had already cost the city almost

2  $2 billion, and that would have continued, so there's great

3  harm in these practices, and we allege -- and we believe it's

4  very true that they're illegal practices.  Part of the reason

5  that we are cleaning this all up in bankruptcy is to help

6  curtail these practices once and for all.

7       THE COURT:  So the city's position is that benefits

8  payable to GRS beneficiaries are fixed as a matter of city

9  ordinance.

10      MS. LENNOX:  They are fixed as a matter of city

11 ordinance and obviously the terms of the pension accruals

12 that are negotiated with the unions in their collective

13 bargaining agreements, but once those payments and those

14 accruals are determined by both of those sources, the GRS

15 pension board -- remember, they're not part of the city.

16 They're the board of a trust, which is separate from the

17 city.  They have no authority to augment them, which is

18 essentially what's been happening, and so they -- you know,

19 they would be violating, in our view, city law, and they

20 would be acting contrary to the collective bargaining

21 agreements.  So that's our position obviously with respect to

22 the 13th check matter.

23      I can turn now to Item Number 17, which is Claim 4,

24 retiree healthcare benefits from changes which happened in

25 2006, and the analysis, again, is very similar.  All claims

1  related to any obligations or liabilities associated with the

2  city's obligations to provide retiree healthcare are entirely

3  subsumed within the definitions that make up the Class 12

4  OPEB claim class.  The plan defines OPEB claims as any

5  claim -- again, that very broad definition of claim -- any

6  claim against the city for OPEB benefits, which is a defined

7  term, held by a retiree who retired on or before December

8  31st, 2014, and is otherwise eligible for OPEB benefits and

9  any eligible surviving beneficiaries of such retiree.  In

10 turn, the plan defines OPEB benefits as follows.  Post-

11 retirement health, vision, dental, life, and death benefits

12 provided to retired employees of the city and their surviving

13 beneficiaries pursuant to the employee health and life

14 insurance benefit plan and the employee's death benefit plan,

15 including the members of the certified class in the action

16 captioned Weiler et al. versus City of Detroit, case number,

17 pursuant to the, quote, consent judgment and order of

18 dismissal, end quote, entered in that action on August 26,

19 2009, again, a comprehensive definition for any kind of post-

20 retirement welfare benefit as opposed to pension benefit,

21 and, again, claim includes a right to payment of these

22 benefits whether it was due in the past or is due in the

23 future.  So based on everything that AFSCME has described in

24 its proof of claim with respect to this Item 17, we can only

25 conclude that the OPEB modifications that included -- that

1    occurred in 2006 for which AFSCME seeks redress are included

2    in the definition of OPEB claim and, again, are subsumed in

3    Class 12.  Again, we don't need to worry about whether there

4    is or is not liability for this if your Honor agrees with me

5    that they are subsumed in this class, and if your Honor

6    doesn't, we would certainly assert later on that there's no

7    liability for this.

8         I would also state at this point because this is

9    clearly a claim on behalf of the retirees -- and I only say

10   this as a footnote, but it may be relevant.  It is not clear

11   to us whether AFSCME has established its standing to

12   represent these retirees.  As your Honor may recall, prior to

13   the petition date AFSCME had sent the city a letter

14   specifically disavowing its ability to or desire to represent

15   retirees in this case, which is one of the reasons we have

16   the Retiree Committee that's been appointed, and the Retiree

17   Committee did negotiate OPEB benefits and the treatment of

18   OPEB benefits under the plan, so I raise that standing issue

19   for your Honor's consideration.  So the argument on this one,

20   your Honor, is the same.  We believe these are Class 12

21   claims.  They are treated under the plan that way.  They

22   shouldn't be deemed to be Class 14 claims, and even if they

23   were, we would further object to their liability.

24        THE COURT:  Thank you.

25        MR. MACK:  Good morning, your Honor.  Richard Mack

1  on behalf of AFSCME.  I'll start off, your Honor, by saying,

2  as I started in our brief, we, AFSCME, has gone to great

3  lengths to work with the city in an effort to help with its

4  financial situations.  We've been doing that since the 1980s,

5  frankly.  We did it in 2011 and 2012.  We did it in 2014 in

6  the effort to resolve the plan of adjustment that's now

7  before your Honor, which calls for very significant cuts to

8  pension and retiree healthcare, so -- and I bring that up

9  because obviously this particular issue is something that

10  concerns a claim that we have against the City of Detroit,

11  but that does not detract from our efforts to seek to work

12  with the city to resolve it with its financial problems.

13  Matter of fact, your Honor, I started off -- I really feel

14  like this is deja vu.  In 2011 when the city asked for the

15  assistance of the unions, AFSCME led and pulled the coalition

16  together, and we put together hundreds of millions of dollars

17  in savings only to learn that this 13th check benefit had

18  been surreptitiously taken without being put on the

19  bargaining table.  And we're here today, your Honor, after

20  having gone through great lengths to, as Ms. Lennox

21  indicated, send out letters, encourage -- and I myself

22  personally, all of us working to have this plan approved only

23  to learn now that there's a brand new argument that was never

24  raised before, never brought up in any context that somehow

25  what had been filed is no longer valid but is now subsumed in

1  the definitions of the plan.  We just think that's an

2  unfortunate development.  It's what leads us here today.

3  　　　　With respect to the definitions themselves, I think

4  it's important, your Honor, to look at the context of the

5  definition even -- we cited the --

6  　　　　THE COURT:  I'd rather look at the words.

7  　　　　MR. MACK:  Yes.  You can look at the words, your

8  Honor, but even in looking at the words, it's important, as

9  your Honor knows, interpreting contracts you look at the

10  words and how the words are being used.  And in this --

11  　　　　THE COURT:  What is it about the words that suggests

12  that the claims you assert here are not included?

13  　　　　MR. MACK:  About the words themselves, first of all,

14  in the GRS pension claim definition, as we mentioned --

15  Ms. Lennox is right.  A 13th check is a check, but an annuity

16  savings fund credit is a credit.  It's not a, quote, payment

17  or distribution that takes place at present time.  It's a

18  credit for when that person retires or hits their 25th year

19  and you're able to draw it down.  You will have that money --

20  you will have access to that money.  It's not something that

21  you have access to at the present time.  So at the very

22  least, your Honor, there is an ambiguity with respect to

23  whether or not a future credit is a, quote, payment or

24  distribution that's within the definition of GRS claim.

25  　　　　THE COURT:  And what's the relationship between ASF

1    or this ASF credit that you talk about and the 13th check?

2              MR. MACK:  Well, the two -- the 13th check -- we're

3    using that as the nomenclature.  That really involved three

4    buckets that this money was placed into, an ASF credit that

5    was given to active employees for them to access in the

6    future, a 13th check that was a check cut for retirees, and

7    then a reduction in the City of Detroit's contribution to the

8    plan.  So the claim is obviously not over the city's

9    contribution, but it's over --

10             THE COURT:  How does the 13th check result in a

11   reduction in the city's contribution?

12             MR. MACK:  Well, no, no.  I'm using the whole notion

13   of what happened with the excess earnings.  Whenever there

14   was an investment return in the market beyond 7.9 percent,

15   they would call it excess earnings under the prior practice.

16             THE COURT:  But, of course, they weren't excess

17   earnings.

18             MR. MACK:  Under the prior practice, that's exactly

19   what they were considered, and the board was given

20   specific --

21             THE COURT:  But they weren't excess earnings.

22             MR. MACK:  Well, your Honor, I'm not here to defend

23   the wisdom of what took place, and as Judge O'Connor laid out

24   in his pleading -- in his opinion, rather, the plan was what

25   it was, and it was something that was negotiated.  As a

1 matter of fact, your Honor, importantly, on that point the

2 motion --

3          THE COURT:  The 13th check was negotiated?

4          MR. MACK:  The 13th check practice absolutely was

5 put into the bargaining agreement where it says whatever is

6 taking place within the present ordinance system shall remain

7 in place.  That was the language in the bargaining agreement

8 that was -- and that's what Judge O'Connor found.  It was, in

9 fact -- it was a negotiated benefit.  More importantly,

10 though, Judge, the last contract term was imposed by the

11 city.  And in labor law when you have union and employee

12 negotiating, when you get to an impasse, the employer puts in

13 place what it wants.  The employer put the 13th check in

14 place in 2010.  It was the employer's doing that of the last

15 contract we have to put the 13th check program in place, so

16 to suggest that, well, now, we're supposed to, you know, look

17 back retrospectively and say how wise was that, the blame

18 lays at least as much on the city.

19          THE COURT:  You say the city did it or wasn't it the

20 reality that the pension board did it?

21          MR. MACK:  No.  The city put in place a contract

22 provision which called for the continuation of the board

23 having discretion to issue 13th checks.  That's absolutely

24 what happened on September 28, 2010.

25          THE COURT:  Where is that language?

1          MR. MACK:  The language is -- we've attached it to

2   our pleadings, your Honor.  It is -- no.  That's the wrong

3   one.  If you look at Exhibit B to our pleadings, it is the

4   Article 47, coincidentally, retirement article, and the very

5   last paragraph, T, which reads, quote, "All retirement and

6   pension plan provisions provided for by the City Charter and

7   Municipal Code are incorporated herein by reference unless

8   otherwise specifically modified by this Agreement and

9   Ordinance 2-93-J.C.C. page 133," so it references the --

10         THE COURT:  I don't see 13th check in there.

11         MR. MACK:  Well, your Honor, in labor law you place

12  a provision of an existing ordinance, of an existing law into

13  the contract by reference.

14         THE COURT:  All right.  Then let's look at the code.

15  What in the code authorizes 13th check?

16         MR. MACK:  What in the code at the time authorized

17  the 13th check was --

18         THE COURT:  Right, at the time.

19         MR. MACK:  -- the board having the discretion to do

20  what it had been doing.

21         THE COURT:  What's the language?  Let's look at the

22  language because that's what we lawyers do.

23         MR. MACK:  Okay.  If you'll give me a second, your

24  Honor, I will find it.  It is in -- Judge O'Connor actually

25  laid out very thoroughly the specific language in his -- give

1  me one second.  I apologize, your Honor.  Of course it would
2  be the last one.

3          THE COURT:  That's all right.  Take your time.

4          MR. MACK:  One second.

5          THE COURT:  Yeah.

6          MR. MACK:  I'll get some assistance here.

7          THE COURT:  Yeah.  Take your time.

8          MR. MACK:  Your Honor, in all candor, I'm not
9  finding where the judge specifically quoted --

10         THE COURT:  Okay.

11         MR. MACK:  -- the section of the ordinance, but we
12 absolutely can provide the essential -- well, hang on.  In
13 Exhibit C we attached the cover letter to the change of the
14 ordinance.  Because the issue was addressed by Judge
15 O'Connor, albeit apparently without citing the specific -- or
16 quoting the specific section, it does -- Section 41-1-18 and
17 41-1-21, and then again it amends Section 42- -- 47-2-18 of
18 the code, and we are absolutely able to provide that to your
19 Honor.  It was just because we were addressing a narrow issue
20 and the issue as to the precise language was not raised by
21 the city's pleading, we felt it necessary only to attach ALJ
22 O'Connor's opinion, but I don't think there's any dispute,
23 though, your Honor, that the board at the time under the old
24 ordinance --

25         THE COURT:  Oh, I think the city very definitely

1    disputes that.  In fact, I think the city's brief did quote

2    from the language of the ordinance and argued that it did not

3    give the discretion that you suggested it did.

4           MR. MACK:  As I recall it, it quoted from the --

5    they quoted language in the ordinance with respect to the

6    board of trustees vested with the general administration

7    management responsibility for the operation of the system.

8           THE COURT:  All right.  Well, we've wandered --

9           MR. MACK:  But I have --

10          THE COURT:  We've wandered off into whether the

11   payments were legal or not.  I want to focus back on the

12   issue of whether the two claims that are at issue here this

13   morning are within the language of Classes 11 and 12 here.

14          MR. MACK:  Yes.  And with respect to, as I

15   indicated, the pension or the ASF credits are -- at the least

16   there's an ambiguity with respect to payment or distribution.

17   As to the -- again, as to the OPEB claim or even the ASF or

18   the 13th check claim, if you look at the context of how those

19   terms were used throughout the code, throughout Classes 11

20   and 12, they deal with impairment of benefits that are owed

21   in the future.  They don't deal with prior contingent

22   liability claims for things that have been filed, and I think

23   it's --

24          THE COURT:  Well, but you're talking about -- you're

25   talking about how they're treated, how these claims are

1    treated.

2            MR. MACK:  They're modified.

3            THE COURT:  That's a separate question from defining

4    the class that is to be treated.

5            MR. MACK:  Well, they're modified, but there is no

6    modification of a 13th check program in the plan.  There is

7    no modification of a prior --

8            THE COURT:  Right, but the city says --

9            MR. MACK:  -- liability for a --

10           THE COURT:  The city says here's the claim, which

11   includes what you're asserting here, and that's set forth in

12   the definition of the class.  Separate from that is the

13   treatment of that class.  Now, it is true that that treatment

14   may not provide any payment on the 13th check for the OPEB

15   that you assert here, but that doesn't mean it isn't being

16   treated.

17           MR. MACK:  Well, but if it's not addressed, how is

18   it treated?

19           THE COURT:  It's treated by not being paid anything.

20   That's how.

21           MR. MACK:  It doesn't say that.  There's nothing in

22   the plan which says that if their prior --

23           THE COURT:  It says here's how we're treating these

24   claims.  We're giving them these benefits.  That's how we're

25   treating all these claims.  Plans do that all the time.

1    That's bankruptcy.

2          MR. MACK:  In order to take that logic, your Honor,

3    the next step would necessarily be that the 95-1/2 percent of

4    the pension check of an individual aside from the ASF

5    recoupment -- or the ASF impairment, so forth, is also

6    somehow treated by that and, therefore, subsumed within the

7    $1.8 billion.

8          THE COURT:  I'm sorry.  Could you repeat that?

9          MR. MACK:  Sure.  There's no language addressing

10   prior payments that were due for 13th check or annuity

11   savings fund credits.  The only thing that it addresses is

12   pension payments which are due in the future are going to be

13   impaired by 4-1/2 percent, so under the logic to say, well,

14   we've had this broad definition, and even though we don't

15   address it with respect to the treatment, you have to assume

16   that that means that it's treated by being eliminated, well,

17   if that logic were true, your Honor, that would be the same

18   logic for the rest of the pension check that's not treated

19   also, that's not impaired because if that's not specifically

20   addressed, you get 4-1/2 percent cut, oh, by the way, 95-1/2

21   percent you still get to keep --

22         THE COURT:  Well, but here's how bankruptcy works.

23   Every single claim of any kind against a debtor is discharged

24   upon plan confirmation.  It's gone.  It's just no longer

25   legally enforceable.  Those obligations are replaced by the

1   obligations that the debtor includes in the plan and that the
2   Court confirms.  Why isn't that the answer to this argument
3   you make?

4           MR. MACK:  Well, it's not because, your Honor, if
5   you look at the city's own pleadings, it suggests that the
6   city itself concurred with AFSCME's opinion in this matter
7   when it filed its initial objection on May the 15th.  This
8   is, at the very least, an ambiguity.  In fact, it was so
9   ambiguous that the city took a different position when it
10  filed its first objection from the position that they're
11  taking now.

12          THE COURT:  I guess you need to show that to me
13  because I don't -- I didn't see that at all.

14          MR. MACK:  Okay.  Here's the timeline.

15          THE COURT:  I'm not even -- I'm not sure it makes a
16  difference, but show me anyway.

17          MR. MACK:  Sure.  Well, it makes a difference
18  because it demonstrates that, at the very least, there's an
19  ambiguity with respect to how this is defined and the
20  assumption that has --

21          THE COURT:  Well, but it's for the Court to
22  determine whether there's an ambiguity.  I mean even if the
23  parties agree that there's an ambiguity, that isn't binding
24  on the Court.

25          MR. MACK:  Well, let me walk through the factual

1  history.

2          THE COURT:  Okay.

3          MR. MACK:  February 21st you have the plan of

4  adjustment, their first plan of adjustment filed, which has

5  this very language, by the way, with respect to GRS pension

6  claim.  There was a --

7          THE COURT:  Has the same claim definition?

8          MR. MACK:  Yes, same claim definition.  There was a

9  modification from OPEB claim from February 21st until a later

10 claim, but it was inconsequential with respect to what we're

11 dealing with today.

12         THE COURT:  Okay.

13         MR. MACK:  There was robust negotiation between

14 AFSCME and the City of Detroit and all of the creditor

15 interest groups, and obviously I can't disclose all of the

16 particulars of that because of the confidentiality order.  We

17 do believe, though, that it is important for your Honor in

18 ruling on this issue to have some factual revelation

19 regarding the details, but --

20         THE COURT:  The argument you raised is in a pleading

21 filed by the city --

22         MR. MACK:  Yes.

23         THE COURT:  -- it agreed with your position.

24         MR. MACK:  Yes.

25         THE COURT:  Where is that?  What is that?

1          MR. MACK:  On May -- the deal was reached.  AFSCME,

2    in fact, was the first employee creditor group to agree to

3    the plan.  May 5th the city files its fourth amended plan of

4    adjustment, the very plan of adjustment that the retiree

5    groups voted on, along with the fourth amended disclosure

6    statement, has the same plan definition.  Ten days later on

7    May the 15th the city files its objection to AFSCME's proof

8    of claim which had also been filed back on February 21st, so

9    the February 21st proof of claim that AFSCME filed,

10   appropriately timely filed, preserved this 13th check issue,

11   the retiree healthcare grievance issue, preserved that and

12   laid out specifically the nature of the claim.  The first

13   objection came from the city ten days after it filed its own

14   proof of claim.

15          THE COURT:  Right.  Got that.

16          MR. MACK:  Nowhere in the objection of May the 15th

17   did the city say, "Hey, the reason we're objecting to the

18   13th check proof of claim is because it's already subsumed in

19   the deal we just cut with AFSCME, and it's already subsumed

20   in the plan of adjustment that we just sent out to retirees

21   to vote on," but as a matter of fact, they did in one portion

22   of the proof of claim, your Honor, say that the matter was

23   subsumed --

24          THE COURT:  You mean objection, objection to the

25   claim.

1          MR. MACK:  I'm sorry.  Yes.  Forgive me.  They did

2     say, your Honor, in one portion of their objection that part

3     of AFSCME's proof of claim was subsumed within the plan of

4     adjustment, but that wasn't the 13th check.  The portion of

5     the plan of -- of the proof of claim that the city felt was

6     subsumed within the plan of adjustment was the overarching

7     line one of the proof of claim, which AFSCME filed, again,

8     back on February 21st asking for $8.1 billion for all pension

9     and all retiree benefits.  And that was a catch-all claim

10    that was filed.  Obviously at that time there had been no

11    arrangements or agreements as to how the pension and

12    healthcare benefits were going to be impaired, so it was

13    filed at the time just to represent the impairment that the

14    city had been speaking of in the present before the Court.

15    The city made the argument there's no need for this line one

16    proof of claim which deals with general individual pension

17    and healthcare impairments because we've already got a plan

18    of adjustment which now addresses that, and it cited the very

19    sections that it's now relying on in line one.  Line seven,

20    as Ms. Lennox indicated, addresses the 13th check claim.  The

21    only thing that the city said with respect to why it was

22    objecting to the 13th check claim was not that it was

23    subsumed within the plan of adjustment but that there had not

24    yet been a ruling from MERC.  It gathered all of the claims.

25    It made a mention in -- I'll give you the specific paragraph.

1   One second.  In paragraph 18, your Honor, of the city's May

2   15th objection to AFSCME's proof of claim, it says, quote,

3   "In a similar vein, the Claim identifies several alleged

4   liabilities related to various other proceedings identified

5   in Exhibit 1 to the Claim," which is our outline of the

6   various claim elements, "including a number of proceedings

7   before the Michigan Employment Relations Commission," this

8   being the 13th check, which was, in fact, a dispute before

9   MERC.  "To the extent any such proceedings have not been

10  adjudicated on a full and final basis before the applicable

11  tribunal, the City disputes its liability to the Claimant or

12  the individuals it represents on account of such

13  liabilities," so it's saying we don't yet have a final ruling

14  from MERC on the 13th check, and that was the position that

15  the city took May the 15th, not that it was subsumed within

16  the plan agreement that we just filed ten days earlier.  I

17  can tell your Honor is reading, so --

18          THE COURT:  Well, I'm reading the paragraph just

19  before that, 17.

20          MR. MACK:  Yes.

21          THE COURT:  "AFSCME and the city have reached a

22  tentative agreement on all outstanding prepetition grievances

23  asserted on behalf of individual employees for which AFSCME

24  seeks monetary relief.  As a part of the settlement, City

25  expects AFSCME to withdraw its bankruptcy claims related to

1   these settled matters."

2          MR. MACK:  Yes.  That reference, your Honor, is with

3   respect to -- you have to go up to actually paragraph 16 to

4   see what that's talking about.  That references to -- there

5   was an Exhibit 2 to the proof of claim which listed over 700

6   grievances that had been outstanding, and the parties had

7   been for months prior actually working through those and

8   resolving those, and many of them had been resolved at the

9   time.  So, again -- oh, I'm sorry -- your Honor, I can tell

10  you're reading, so I'll --

11         THE COURT:  No, no.  Go ahead.

12         MR. MACK:  Well, I was just going to say that that

13  is -- again, the city's position here is new, and, again,

14  there are other documents which were produced in confidential

15  mediations which, in our position, would indicate that,

16  again, as late as September the city did not take the

17  position that it now takes, but this is a new creation where

18  once the attention was shifted to the proof of claim, the

19  city said, "Wait a minute.  We can argue.  We can get rid of

20  this 13th check liability by simply arguing that it's

21  subsumed within the claim," but prior to that, the city did

22  not take that position.  When the parties bargained, they did

23  not take that position, and, again, that would involve

24  factual development with respect to the understanding between

25  the parties on that score.

1          Allow me to shift to the PERSIA argument that the

2     city raises as to why it's -- whether or not it's illegal.

3     The city -- oh, I'm sorry.  Your Honor was right.  We do

4     argue that there is a standing question.  The Wayne County

5     case, the Court of Appeals case that we cited in our brief,

6     specifically addressed that.  That was a case where there

7     actually was a 13th check that was being paid out by the

8     Wayne County Retirement System, and the county

9     counterclaimed.  After the Retirement System sued the county,

10    the county counterclaimed and said it's a breach of duty to

11    pay out this 13th check.  They had a little different

12    situation where they would put money in a reserve account and

13    then pay out of that reserve, but other than that, it was

14    very similar facts.  And the Court found there's no standing

15    for Wayne County to raise that claim, but beyond that, your

16    Honor, the Court found that there's no evidence that the

17    system breached its fiduciary duty because it relied on the

18    same notion that's commonly relied on with respect to 13th

19    checks, that 13th checks are used as a way for retirement

20    systems to avoid a more hefty inflationary factor in order to

21    pay up a little bump when the investments come in, so --

22          THE COURT:  Well, "A," how can there be no standing

23    when every dollar that the pension plan pays out either in

24    violation of the Code or in breach of its fiduciary duty is a

25    dollar more that the city has to pay into the plan?

1    MR. MACK:  Well, "A," there'd be no standing because

2  the courts have said so, and I would suggest --

3    THE COURT:  Well, but how can that be?

4    MR. MACK:  Because as the Court did an analysis with

5  respect to the treatment of this inflationary EIF account,

6  they looked at the fact that the Retirement System actually

7  was quite prudent and quite --

8    THE COURT:  But that mixes up the merits of the

9  claim with the standing to pursue it.   When you examine

10  standing, you assume the merit of the claim.  You have to.

11  Otherwise no one would ever have standing.

12    MR. MACK:  Well, the Court quoted specifically the

13  statute with respect to a duty that is to the beneficiaries

14  of the benefits under the system due to those individuals,

15  and that's what the Court relied on with respect to the

16  standing question.

17    THE COURT:  So this Court would say that the law

18  would rely upon those very individuals who are getting the

19  benefit of the breach of fiduciary duty to bring a claim for

20  breach of fiduciary duty?  What?

21    MR. MACK:  Your Honor --

22    THE COURT:  Seriously?

23    MR. MACK:  No.  Your Honor, the point is that this

24  brand new argument would have to be addressed and ferreted

25  out not only with respect to the standing question but with

1  respect to the merits on the issue, and if we're going to

2  entertain that notion, then we do need a more full-blown

3  hearing to address it more specifically, but as to that

4  particular standing question, again, the Court didn't write

5  the law.  The legislature wrote the law.

6         THE COURT:  Why isn't the --

7         MR. MACK:  The law was written with respect to the

8  duty to run to those beneficiaries, and when courts have

9  addressed that, they addressed it with respect to who has the

10  standing to bring the claim.  The city has not presented any

11  case to counter the notion that somehow the sponsor would

12  have the ability to have standing nor has the city addressed

13  the point about whether or not the three-year statute of

14  limitations that applies in the State of Michigan could

15  apply.  I mean certainly they've known about this for much

16  longer than three years.  So all of these issues had not been

17  yet addressed by the city, and it would have to be --

18         THE COURT:  So here's a party who is harmed to the

19  extent of $1.9 billion and has no remedy?

20         MR. MACK:  Well, in essence.  Again, the courts are

21  interpreting --

22         THE COURT:  Am I right; sir?

23         MR. MACK:  Under the way that the courts have

24  interpreted the statute, they would not be able to bring the

25  claim under PERSIA, under that particular provision of the

1  statute that they cite.

2         THE COURT:  What claim would they have?

3         MR. MACK:  Ask the city.  I'm not their lawyer.  I

4  mean they'd have to find appropriate -- a proper claim to

5  bring under the proper statute, but certainly the way that

6  the Michigan courts have interpreted that statute, which

7  would have precedent, I believe, in this situation, they

8  would not have the right to bring that claim.

9         THE COURT:  Do they have standing to assert a

10 violation of their own ordinance?

11        MR. MACK:  Well, you know, what's interesting about

12 the ordinance is I --

13        THE COURT:  I want an answer to my question.

14        MR. MACK:  Under the --

15        THE COURT:  I'm not asking about the merits.  I'm

16 asking about standing.

17        MR. MACK:  Could the city sue?

18        THE COURT:  Does the city have standing to assert

19 that the 13th check violates its own ordinance --

20        MR. MACK:  Potentially.

21        THE COURT:  -- separate from the breach of fiduciary

22 duty issue?

23        MR. MACK:  Potentially.  I'd have to look into the

24 specifics of it.  Potentially.

25        THE COURT:  Okay.  You haven't objected to that.

1          MR. MACK:  Well, but what's interesting --

2          THE COURT:  Have you objected to that?

3          MR. MACK:  Have I objected to the city's notion that

4   there was a breach of the --

5          THE COURT:  To the city's standing to assert a claim

6   arising from a breach of -- a violation of its ordinance.

7          MR. MACK:  Under the old ordinance?  It's important

8   to --

9          THE COURT:  Answer my question, Mr. Mack.  Come on.

10         MR. MACK:  Your Honor, the reason that I say that --

11         THE COURT:  Please answer my question.

12         MR. MACK:  We do not assert that the city would have

13  a standing issue to raise a problem under its old ordinance.

14  The problem comes in when you try to take a new ordinance and

15  apply it to a collective bargaining unit which --

16         THE COURT:  Oh, I understand you dispute the merits

17  of the claim.

18         MR. MACK:  Yes.

19         THE COURT:  That's a separate question.

20         MR. MACK:  Yes.  No.  We do not have any reason to

21  dispute at this time --

22         THE COURT:  Okay.

23         MR. MACK:  -- that the city could not flag a concern

24  of its old ordinance.  I will point out that under the old

25  ordinance the city not only felt that it could not raise the

1  claim but felt that it took the vote of the citizens of the

2  City of Detroit in order to change the practice, and that was

3  the 1996 AFSCME versus City of Detroit matter that's cited by

4  Judge O'Connor where the city acknowledged that we have this

5  issue.  We don't believe that this is a proper practice.  And

6  they felt that they couldn't just simply change the

7  ordinance.  They couldn't just simply flag a -- they couldn't

8  just simply sue under the ordinance, but they had to get a

9  change of the charter in order to stop the practice, so I

10  guess in that --

11       THE COURT:  Why isn't the record before the Court

12  adequate for it to determine that this concept of excess

13  earnings is a fiction because the concept of assumed rate of

14  return assumes that in some years the actual returns will be

15  higher than projected and in some years the returns will be

16  lower than projected, and you need the higher returns to save

17  the assets of the system -- or to protect the assets of the

18  system against the years in which there will be lower than --

19  lower returns than assumed?

20       MR. MACK:  The reason is because, your Honor, in

21  doing so -- excuse me -- respectfully, you would be ruling

22  counter to published Michigan Court of Appeals opinion, the

23  Wayne County case.  In that case specifically they addressed

24  this issue.  They looked at evidence.  They went through the

25  specifics of what the board considered, what the board did

1   not consider, the distributions that were made into this

2   inflation equity fund.  They looked at specifically the

3   interest earnings each year that came in.  They looked at a

4   lot of facts concerning whether or not the 13th check should

5   have been paid out or whether or not it breached the

6   fiduciary duty of the system in order to do so, and they

7   ultimately came to the conclusion after looking at all those

8   facts that, in fact, it wasn't appropriate.

9            THE COURT:  What case is that or cases?

10           MR. MACK:  The case, your Honor, is Wayne County

11  Employees' Retirement System versus Wayne County, 301 Mich.

12  App. 1.  That's a 2013 case.  And, again --

13           THE COURT:  You say they decided it was not a breach

14  of fiduciary duty?

15           MR. MACK:  They decided -- they went through and

16  looked at the 13th check and decided it was not -- there was

17  not enough to find a breach of fiduciary duty.

18           THE COURT:  And they found that even though they

19  found that the county didn't have standing?

20           MR. MACK:  They answered the question, and then they

21  went on to address the merits of the issue.

22           THE COURT:  Okay.

23           MR. MACK:  I'll turn to the --

24           THE COURT:  So which holding is dicta?

25           MR. MACK:  Pardon?

1          THE COURT:  Which holding is dicta?

2          MR. MACK:  It's not dicta.

3          THE COURT:  Well, if there's no standing, then

4     there's no reason to address the merits, so I ask which

5     holding is dicta?

6          MR. MACK:  There was standing on -- one moment, your

7     Honor.  Let me --

8          THE COURT:  Sure.

9          MR. MACK:  Let me pull the opinion for you.

10          THE COURT:  Okay.

11          MR. MACK:  We actually give a fairly thorough

12    analysis of the case in our pleadings, your Honor, on page --

13          THE COURT:  Right.  I read that.  I'm just asking

14    you beyond what you stated in your brief whether either of

15    those holdings is dicta because the Court didn't need both to

16    get to the --

17          MR. MACK:  Well, here's --

18          THE COURT:  -- ultimate result that it reached.

19          MR. MACK:  There were a number of issues concerning

20    the inflation equity fund, and with respect to the issue of

21    the actual payment of the monies into the 13th -- into the

22    EIF, there was a standing issue.  There was a problem with

23    standing with respect to the System.  With respect to the

24    setting of the rates of return for purposes of funding the

25    EIF during the unfunded years, they assumed that their System

1  had standing and went on to find that the practice was

2  proper.

3          THE COURT:  Okay.

4          MR. MACK:  So there are three -- there were three --

5  there are three issues that the Court addressed with respect

6  to the inflation equity fund in that score -- in that part of

7  the opinion, and on one of them, with respect to the payment

8  of the 13th check, they found that the System didn't have

9  standing.

10          THE COURT:  Okay.

11          MR. MACK:  They went through other two, and then on

12  those they found that there was no breach of the duty that

13  was found, so I think it's an important opinion, your Honor,

14  because it deals with both of the issues, the standing

15  question and what is necessary for your Honor in order to

16  make a finding with respect to whether the excess earnings

17  was proper.  We have absolutely no facts on the record.  We

18  don't know what they've reviewed.  We don't know what they

19  haven't reviewed.  And with respect to the filing of an

20  objection, your Honor, if it's going to be based on

21  substantive grounds, the city should have included some sort

22  of declaration, some sort of facts, something for your Honor

23  to rely upon in order to make a determination that the excess

24  earnings was improper, and we have none of that in this

25  record, your Honor, at this time.

1          THE COURT:  Well, we have a statement from Mr.

2     Roeder --

3          MR. MACK:  Well, we have a letter from Mr. Roeder.

4          THE COURT:  -- who says it is laughably plain that

5     this was improper.

6          MR. MACK:  We have a letter.  We have a letter from

7     Mr. Roeder, which may very well be considered hearsay.  We

8     don't have evidence on the record.

9          THE COURT:  It is hearsay.  I agree with you.

10         MR. MACK:  Thank you.  On the issue of the OPEB

11    claim, again, there's no question that the definition is

12    broad, but, again, if you look at the context of the

13    treatment, on the OPEB claim the treatment specifically says

14    that there's a VEBA set up, and then it specifically says

15    that there will be no further responsibility in the future of

16    the city for retiree healthcare, so it couldn't be more clear

17    that in reading those definitions -- and you have to read.

18    You don't just read that paragraph.  Even without considering

19    parol evidence, in interpreting the contract you read the

20    contract for it as a whole because you can't read one section

21    of a contract to be adverse to another section of a contract.

22    You have to read them in harmony to the best extent possible

23    if we're even assuming that this is a contract, but you have

24    to read them together.  In looking at the context of the use

25    of those terms, it's crystal clear that it's talking about

1  future liabilities, not with respect to what has been owed

2  and already filed again as a contingent claim under Class 14.

3  And, your Honor, there was some discussion of the merits

4  of -- second time -- some discussion of the merits of whether

5  or not there was a violation of the Public Employment

6  Relations Act in the city's pleadings, and so, very briefly,

7  what we have here is the state labor board, the Michigan

8  Employment Relations Commission, by action of a recommended

9  decision by an appointed ALJ, administrative law judge,

10 making a finding of fact on the law and on the facts of that

11 issue.  It is clear that the city cannot hide behind an

12 ordinance and ignore its collective bargaining rights.  It is

13 clear that the MERC actually has the jurisdiction to

14 interpret the Public Employment Relations Act, and if the

15 city is going to ask this Court again to delve into the

16 specifics of whether or not that statute was violated by what

17 the city did, it's going to take a whole lot more than a

18 simple oral argument and some pleadings on the issue.  Your

19 Honor will have to be -- well, one of two things could happen

20 obviously.  Obviously your Honor could send the matter back

21 to MERC to have the issue finalized, and then the city could

22 contest liability, and we can have the hearing or, you know,

23 the pleading and go forth from that, but if your Honor is

24 going to address this issue, it's going to take a lot more to

25 deal with.  And I don't think -- the city doesn't have any

credible argument with respect to the fact that the city

couldn't -- the city could simply eliminate the ordinance.

As a matter of fact, the city's only argument on that score

was that the elimination -- the ordinance was now the new law

and, therefore, they had the right to follow the new law, and

they could ignore their collective bargaining rights.  And

quite frankly, Judge O'Connor found that argument to be

frivolous.  It was frivolous because the city took the exact

opposite position in a published Court of Appeals case in

1996, and in that case, AFSCME versus City of Detroit -- we

cited it in our pleadings -- in that case, the city put this

13th check issue on the ballot because it said in order for

us to make this change in the 13th check practice, it's now

on the ballot, which, your Honor, leads me to, I guess,

question the whole standing notion because obviously at that

point in time the city lawyers, you know, good lawyers,

didn't feel that they had the ability to challenge the

practice by simply filing a lawsuit.  Okay.  So, you know, in

answer to that question, obviously that needs more briefing

as to whether or not they have standing under the ordinance,

but what they argued in that position -- in that case, your

Honor, after the unions went into court and they said you

cannot put this issue in front of the voters because it

involves our collective bargaining rights and we have a right

to pass on that at the bargaining table first, the position

1  the city took was there's no need for an injunction.  We know

2  that if this charter amendment passes, we still have to go to

3  the union to bargain.  They took that position, and the Court

4  of Appeals said because the city acknowledges that they could

5  not simply make the change of the law and have that apply to

6  the union represented employees without bargaining, we're not

7  going to issue the injunction.  And so what we argued before

8  Judge O'Connor was that the city is bound by judicial

9  estoppel where you can't make an argument and win in a case

10 and then come back and make an opposite argument in a later

11 proceeding, and he found that there was, in fact, judicial

12 estoppel in that case.

13       Your Honor, again, we've -- and I've been saying I

14 think it's appropriate for -- if this matter before your

15 Honor conclusively resolves the matter to have a hearing on

16 this issue, to permit -- whether it be discovery, whether it

17 be, you know, all of what the rules entail us to have to get

18 to the bottom of how this 13th check and these OPEB claims

19 should be treated.  I know that when we spoke, we were going

20 to have some discussion concerning what we would have and

21 what we would ask for.  Well, we're asking for the full gamut

22 of it with respect to discovery, with respect to an

23 evidentiary hearing.  We believe that that's appropriate and

24 not to have this matter ruled on without any evidence in the

25 record whatsoever when the only thing that's in the record is

1    hearsay.

2              THE COURT:  Thank you, sir.

3              MR. MACK:  Thank you, your Honor.

4              MS. LENNOX:  I'll be brief, your Honor.  I only want

5    to address a couple of technical points that Mr. Mack raised.

6    The first is with respect to your Honor's questions of Mr.

7    Mack about where in the collective bargaining agreements or

8    where in the ordinance did it say that you could have annuity

9    savings fund credits and 13th checks, and the answer is

10   nowhere, and they've never said it anywhere.  Mr. Mack is

11   correct.  What the old collective bargaining agreements used

12   to say is that the ordinance, Chapter 7 of the Detroit

13   Municipal Code, is encompassed within the collective

14   bargaining agreement, so your Honor asked the next logical

15   question.  Well, then what did the code say?  The code only

16   said before the amendments in 2011 two things.  One is the

17   provision that we quoted in our brief, 47-103, that says the

18   board of trustees of the General Retirement System is hereby

19   created.  The board is vested with the general

20   administration, management and responsibility for the proper

21   operation of the System and for making effective the

22   provisions of this chapter.  Didn't say anything about

23   increasing benefits, augmenting benefits or anything of the

24   sort.  Section 47-1-11 of the code says something similar,

25   that they have to set up rules for the administration of the

 1   pension plan.  That's it.  There was never any discussion
 2   anywhere in the ordinance of these practices.  Where these
 3   practices came from was the board of trustees, who is not
 4   AFSCME's employer and who is not the city.  The board of
 5   trustees of this trust decided that this might be a nifty
 6   thing to do.  They have no authority to do it statutorily or
 7   otherwise, yet they did it anyway, and in 2011 the city woke
 8   up, and now the concept of 13th checks and annuity savings
 9   fund credits do appear in the code.  They were added to
10   Section 47-118 of the Detroit Municipal Code as prohibitions.
11   That is the ordinance of which Mr. Mack and his client
12   complain.  Before the addition of the last section of 47-118-
13   A -- and they added Sections B and C, which are the
14   prohibitions -- all 47-118 consisted of prior to this
15   amendment was a statement that said the board shall adopt
16   such mortality and other tables of experience and a rate or
17   rates of regular interest as shall be necessary for the
18   operation of the System on an actuarial basis, period.  There
19   was nothing ever in the statutes that authorized these
20   practices.
21          Secondly, we were talking about our initial
22   objection filed on May 15th.  If your Honor looks at that
23   objection, it is very clearly kind of a cursory objection
24   that was designed to -- and we specifically requested it in
25   this motion -- or in this objection.  We gave the Court a

1   flavor of the breadth and the magnitude of the claim and
2   said, "Your Honor, we kind of need a process that's not a
3   court process to try to resolve this."  We've engaged in that
4   to large measure.  So far it's proven unsuccessful.  And then
5   your Honor set a briefing schedule that said, well, this is
6   all very nice, but I need to see what your real objections
7   are.  And, in fact, our brief on that is due today, and your
8   Honor set a hearing on that.

9       I would also point out that in Section -- or
10  paragraph 18 of the claim, we did reference that there were
11  MERC disputes that needed to be addressed.  The ALJ opinion
12  is a MERC dispute.  We also said in paragraph 21 of that that
13  we requested an initial hearing as a status conference to
14  report on progress and to set up further process, and in
15  paragraph 23 we specifically reserve the right to amend or
16  supplement our objection as necessary, so I don't think any
17  of this is or at least should have been a surprise to Mr.
18  Mack and his client.

19      THE COURT:  Well, he doesn't argue surprise.  What
20  he argues is that in your original objection that you're
21  referring to here, you agree that either the claims that are
22  at issue here are not within the plan definition of claim --
23      MS. LENNOX:  Um-hmm.
24      THE COURT:  -- or you admit it's ambiguous.
25      MS. LENNOX:  Well, your Honor, I looked through this

1  objection while Mr. Mack was speaking, and I don't see

2  anywhere in this objection where we agreed to any of that or

3  asserted any ambiguity.  I don't see that anywhere in it.  In

4  fact, I categorically deny we ever did it or do it today.  I

5  don't think there's been a gotcha here particularly because,

6  as your Honor knows, in the claims process, claims are

7  routinely addressed usually post-confirmation, and so what

8  matters is what does the plan of adjustment say about the

9  treatment of these claims and how are they classified, as

10  your Honor went through with Mr. Mack before, so this is the

11  normal claims process.  We have proceeded as would be

12  normally expected.  We don't think there's any ambiguity.  We

13  think the plain language of the plan will control.

14          Finally, with respect to the Wayne County case, it

15  was an interesting colloquy, but I'd like to point out a

16  couple of important points with respect to that.  First of

17  all, I believe this decision is on appeal at Michigan Supreme

18  Court.  Secondly, whatever statute existed in Wayne County

19  are not the statutes that exist in Detroit, and I already

20  pointed out that the Detroit city statute gives the city

21  finance director standing if they ever wanted to bring a

22  claim, but, importantly, we aren't bringing a claim.  What is

23  before your Honor today is an objection to a claim that has

24  been filed by another party, and we are arguing two things

25  with respect to that.  One is that it's already subsumed in

1    Class 11 treatment, and, two, if your Honor were to tell me

2    that I'm wrong, there is no liability.

3          So, finally, I also think that AFSCME is precluded

4    from arguing the merits of this claim because it has agreed

5    to the treatment of this claim in the plan.  Thank you.

6          THE COURT:  All right.  The Court will take this

7    under advisement, and I will give you a decision in open

8    court Monday morning at nine o'clock.

9          MS. LENNOX:  Thank you, your Honor.

10         MR. MACK:  Your Honor --

11         THE COURT:  Sir.

12         MR. MACK:  -- may I ask if -- the question that you

13   had asked concerning the provisions of the ordinance -- of

14   the old ordinance with respect to allowing the board of

15   trustees to issue these 13th checks and to treat the excess

16   earnings, I would like to -- if your Honor was okay with

17   that, to provide that to you whether it be in a supplement

18   or --

19         THE COURT:  You mean a copy of the ordinance?

20         MR. MACK:  Provide a section of that -- of the

21   ordinance --

22         THE COURT:  Oh, no.  We can track that down.  That's

23   all right.  Thank you.

24         MR. MACK:  -- because I believe it's in -- I believe

25   I found it.  I believe it's in 42-2- -- it's in the

1  definition section of accrued liability -- one second --
2  accrued liability fund, paragraph 10.
3          THE COURT:  So what's the section number you want us
4  to look at?
5          MR. MACK:  The definition of accrued liability fund,
6  Section 10, and it addresses any such remaining monies.
7          THE COURT:  What's the section number, sir?  Detroit
8  city ordinance --
9          MR. MACK:  The definitional section.
10          THE COURT:  What's the number?  I need a number.
11          MR. MACK:  I'm looking for the number here.
12          THE COURT:  Okay.
13          MR. MACK:  Let's see.  The document that I'm looking
14  at has actually been component two of the sixth amended plan
15  of adjustment.  Of course, they don't have the number listed.
16          THE COURT:  Oh, you're not looking at the Detroit
17  City Code.  You're looking at the plan.
18          MR. MACK:  They quote -- they copy the Detroit City
19  Code on component two of the plan of adjustment.  That's what
20  I'm looking at.
21          THE COURT:  Do you know what he's talking about?
22          MS. LENNOX:  No, I don't, but I do have my plan with
23  me.  If you want to point out the section, we can read it to
24  the Judge.
25          MR. MACK:  Actually, because it doesn't -- it looks

49

1  like page 632.

2          MS. LENNOX:  Your Honor, I believe what Mr. Mack --

3  oh, sorry.  Your Honor, I believe what Mr. Mack is looking at

4  is an exhibit to the plan that we filed that purports to

5  implement the new provisions of the charter -- or of the Code

6  that needed to be amended by virtue of the amendments we're

7  making in the plan.

8          MR. MACK:  Well, there's also -- we quote the old

9  provisions of it as well, and that was the quickest way for

10  me to --

11          THE COURT:  Okay.

12          MR. MACK:  -- find the code without --

13          THE COURT:  All right.  So what exhibit is it that

14  you're looking at?

15          MR. MACK:  I think, your Honor, what would be

16  better, if I could provide it to your Honor, is to provide

17  the specific --

18          THE COURT:  If you can do it today, that's fine.

19          MR. MACK:  I can do it this morning, yes.

20          THE COURT:  All right.  And copy Ms. Lennox on that.

21          MR. MACK:  Absolutely.

22          THE COURT:  All right.  Thank you.

23          MR. MACK:  Thank you.

24          MS. LENNOX:  Thank you, your Honor.

25          THE CLERK:  All rise.  Court is adjourned.

1        (Proceedings concluded at 10:16 a.m.)

2                                    *  *  *



                                  INDEX



<u>WITNESSES:</u>

        None

<u>EXHIBITS:</u>

        None



        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    November 19, 2014
_____              _____
Lois Garrett