# ITEM 14

```
 1                    UNITED STATES BANKRUPTCY COURT
                       EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3  IN THE MATTER OF,              Case No. 13-53846
                                   Detroit, Michigan
 4  CITY OF DETROIT, MI            October 20, 2014
    _____/   9:00 a.m.
 5
        IN RE: CONTINUED TRIAL RE: OBJECTIONS TO CHAPTER 9 PLAN
 6            BEFORE THE HONORABLE STEVEN W. RHODES
               TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
 7
    APPEARANCES:
 8
    For the City of Detroit, MI:   HEATHER LENNOX, ESQ.
 9                                 Jones, Day
                                   222 East 41st Street
10                                 New York, NY 10017-6702
                                   212-326-3939
11
    For AFSCME:                    RICHARD MACK, JR., ESQ.
12                                 (P58657)
                                   Miller, Cohen
13                                 6700 West Lafayette Blvd.
                                   4th Floor
14                                 Detroit, MI 48226-3191
                                   313-964-4454
15
    For the Official Committee:    SAM ALBERTS, ESQ.
16                                 Dentons, US, LLP
                                   1301 K Street, N.W.
17                                 Suite 600, East Tower
                                   Washington, D.C. 20005-3364
18                                 202-408-6400

19  Court Recorder:                Letrice Calloway

20  Transcriber:                   Deborah L. Kremlick

21

22  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
23

24

25
```

1  (Court in Session)

2  THE CLERK: All rise. Court is in session. Please
3  be seated. Case number 13-53846, City of Detroit, Michigan.

4  MS. LENNOX: Good morning, Your Honor. Heather
5  Lennox of Jones, Day on behalf of the city.

6  I thought I would start this morning by reporting to Your
7  Honor that the UAW and AFSCME have informed the city that they
8  will each withdraw their objections to the plan confirmation
9  with prejudice as to the city only.

10  And the city will amend the plan of adjustment in the
11  Detroit general VEBA trust to add language to make clear that
12  the library retirees and six Cobo Hall retirees will be in the
13  general retiree VEBA.

14  Now we have negotiated the plan language with the library
15  and with the UAW and AFSCME, so we are all agreed on that. I
16  understand now that the retiree committee may have an issue
17  with some of this language but as to the city and the library
18  unions we are agreed.

19  THE COURT: Will there be a process to bring a final
20  conclusion to that?

21  MS. LENNOX: Well, we were certainly discussing that
22  issue before Court today and I don't -- I don't think the
23  language in the plan is going to change. That's what we've
24  negotiated. The issue is -- is frankly that is coming up is
25  an issue that is beyond the scope of the plan.

1  It involves what -- what benefits will be provided by the
2  VEBA trust and that is not something that the city decides.
3  So to me it's not a plan issue.
4           THE COURT:  How many library employees are there?
5           MS. LENNOX:  We -- we expect that there will be
6  about 330 or so library retirees that are in the VEBA and six
7  Cobo Hall retirees.
8           THE COURT:  Who is here for the retiree committee?
9  I just have one question for you.  Sir, for the record, sir --
10          MR. ALBERTS:  Sam Alberts from Dentons.
11          THE COURT:  Here's my question.
12          MR. ALBERTS:  Yes.
13          THE COURT:  Really?
14          MR. ALBERTS:  Yes.  And I'll -- and I'll --
15          THE COURT:  Seriously?
16          MR. ALBERTS:  Yes.
17          THE COURT:  Three hundred and thirty-six employees
18 out of --
19          MR. ALBERTS:  Yes.
20          THE COURT:  -- 10,000?
21          MR. ALBERTS:  Yes.  May I explain?
22          THE COURT:  I don't want an explanation, I want you
23 to resolve it.
24          MR. ALBERTS:  Well, Your Honor, I actually offered
25 that --

1       THE COURT: I want you to resolve it now, go resolve
2  it.
3       MR. ALBERTS: Your Honor, we tried this morning. We
4  have a mediation at 1:30. I would suggest that the parties
5  meet in mediation to try to resolve the issue.
6       THE COURT: Go resolve it. Okay. Okay. Anything
7  further before I give my decision regarding the AFSCME matter?
8       MS. LENNOX: No, Your Honor. That was the only
9  other matter on for this morning.
10      THE COURT: All right. May I have appearances
11 regarding the AFSCME matter?
12      MS. LENNOX: Heather Lennox for the city.
13      MR. MACK: Richard Mack, Your Honor, AFSCME.
14      THE COURT: This matter is before the Court on the
15 city's action to proof of claim number 2958 filed by AFSCME 25
16 and its affiliated locals.
17      The core of the dispute is whether the settlement entered
18 into between the city and AFSCME early in the case includes
19 AFSCME's thirteenth check claim and related claims and its
20 health care modification claim. The parties refer to this as
21 Line 7 and 17 on AFSCME's proof of claim.
22      AFSCME filed its proof of claim on February 21st, 2014 in
23 the total amount of over 8.7 billion dollars. This includes
24 several claims other than the two that are presently before
25 the Court. In April of 2014, AFSCME and the city reached a

settlement agreement.

On May 15, 2014 the city filed its fourth amended plan in which it provides for the allowance of Class 11, the GRS pension claims in the amount of $8,879,000,000 and the allowance of Class 12, the OPEB claims in the amount of $4,303,000,000.

The plan provides the definition of the GRS pension claim as follows:

"Any claim (other than an OPEB claim), whether asserted by current or former employees of the city, their heirs or beneficiaries, or by the GRS, or any trustee thereof, or any other entity acting on the GRS' behalf against the city, or any fund managed by the city (including but not limited to the general fund, the water fund, the sewage disposal fund, the Detroit General Retirement System Service Corporation fund, or the pension funds), based upon, arising under, or related to any agreement, commitment, or other obligation whether evidenced by contract, agreement, rule, regulation, ordinance, or statute -- statute or law for A, any pension, disability, or other post-retirement payment or distribution in respect of the employment of current or former employees, or B, the payment by the GRS to persons who may at any time participated in, were beneficiaries of, or accrued post-retirement pension or financial benefits under the GRS".

This is in the plan at Section (I)(A)203. The plan

provides the definition of OPEB claims as:

"Any claim against the city for OPEB benefits held by a retiree who retired on or before December 31, 2014 and is otherwise eligible for OPEB benefits and any eligible surviving beneficiaries of such retiree". This is at plan Section (I)(A)255.

The plan further states at (I)(A)254:

"OPEB benefits means collectively post-retirement health, vision, dental, life and death benefits provided to retired employees of the city and their surviving beneficiaries pursuant to employee health life -- health and life insurance benefit plan, and employee's death benefits plan, including the members of the certified class in the action captioned Weiler, et al v City of Detroit, case number 06-619737-CK (Wayne County Circuit Court), pursuant to the 'consent judgment and order of dismissal' entered in that action on August 26th, 2019".

The Bankruptcy Code defines a claim as:

"A, right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. Or B, right to an equitable remedy for breach of performance if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured,

1 disputed, undisputed, secured, or unsecured". And that's in
2 11 USC Section 105(5).
3     The city asserts that pursuant to the plain language of
4 the plan, the pension claim in the claim at issue is included
5 in Class 11. Likewise the city argues that AFSCME's health
6 care modification claim in the proof of claim before the
7 Court, is included in Class 12.
8     AFSCME contends that both claims were intended to be in
9 Class 14 which is the class for unsecured claims. It asserts
10 that the language in the plan is at the very least ambiguous
11 and that the Court should consider the way the phrase GRS
12 pension claim is used throughout the plan and its context in
13 the plan.
14     AFSCME contends that the definition of pension claim is
15 intended to include only the claimant's rights to prospective
16 plan payments, rather than the credits and disbursements that
17 should have been made in the past that were covered in its
18 proof of claim.
19     Likewise with respect to the health care modification
20 claim, AFSCME asserts that it is not included in Class 12
21 because Class 12 deals exclusively with prospective payments
22 or distributions and is not intended to include past due
23 benefits.
24     In the <u>Official Committee of Unsecured Creditors v Dow</u>
25 <u>Corning</u>, (In Re: Dow Corning Corp.) 456 F 3d 668, 676, 6th

Circuit, 2006, the Court stated:

"In interpreting a confirmed plan, Courts use contract principals since the plan is effectively a new contract between the debtor and its creditors".

Absent ambiguity the plan, "is to be enforced as written unless -- I'm sorry, regardless of whether it is in line with the parties' prior obligations". Id. The Court concludes that the language of the plan is not ambiguous and that the definitions of GRS claim and OPEB claim in the plan plainly include the claims at issue here.

The Court finds that AFSCME's attempt to distinguish between the claimant's rights to prospective payments, and the rights to past due claims is not consistent with the broad definitions of the claims in Classes 11 and 12, or with the broad definition of a claim in the Bankruptcy Code.

By operation of Section 944(b) of the Bankruptcy Code, the debts that AFSCME seeks to assert through these two claims will be discharged. By operation of Section 944(a), the city's only debts coming out of bankruptcy will be those set forth in the confirmed plan if of course it is confirmed.

AFSCME relies in part upon the city's May 15, 2014 objection to its proof of claim in support of its argument that the pension claim at issue here was not included in the settlement. Specifically it asserts that the city's objection does not argue that the claim is included in classes -- in

1  Class 11 as the city now asserts.

2  It also argues that the Court should consider evidence
3  from the confidential mediations regarding the negotiations
4  that led to the settlement. The Court rejects this argument.

5  First, the Court finds that the city did raise this issue
6  in Paragraph 19 of its objection. Second, and more important,
7  in <u>Shachachner v Blue Cross and Blue Shield of Ohio</u>, 77 F 3d
8  889, 6th Circuit 1996.

9  The 6th Circuit held that extrinsic evidence of contract
10 intent is admissible only if the contract is ambiguous on its
11 face. Meaning that it is subject to -- to two reasonable
12 interpretations.

13 And the Court further held that extrinsic evidence cannot
14 be used to create an ambiguity. Further, the mere fact that
15 the parties argue two different interpretations is not
16 sufficient to establish that the contract is ambiguous.

17 As found earlier, the Court finds no ambiguity here.
18 Accordingly, the task before the Court is only to determine
19 the intent of the plan from its language and to apply it.

20 AFSCME also relies on its proof of claim as classifying
21 these pensions -- pension and health care claims in Class 14.
22 However, under Section 941 only the city can propose a plan
23 and under Section 1123(a)(1), only the plan can classify
24 claims.

25 Accordingly, the city -- the city's plan governs the

1  classification of claims and not AFSCME's proof of claim.  The

2  Court will enter an appropriate order.  Is there anything else

3  on our agenda for today?

4          MS. LENNOX:  No, Your Honor.

5          THE COURT:  All right.  I'd like to review with you

6  the balance of our schedule here.  What does the city foresee

7  for tomorrow, please?

8          MS. LENNOX:  My understanding for tomorrow, Your

9  Honor, is that we will introduce -- I'm not sure if we've

10 confirmed whether it's three or four witnesses, but we'll have

11 obviously just the witnesses required to substantiate the FGIC

12 settlement that we announced in Court last week.  And we would

13 expect that, I would think not to take much time at all.

14         THE COURT:  Okay.  All right.  And then Wednesday we

15 will take the testimony of Ms. Kopacz.

16         MS. LENNOX:  Uh-huh.

17         THE COURT:  And then if it's okay with everyone we

18 will have closing arguments a week from today at 8:30.  I

19 assume that will be arguments on behalf of the city plan

20 supporters and whatever pro se objectors the Court concludes

21 should be given an opportunity for closing argument.

22     And then the Court will foresee giving an oral decision

23 on the record here in open Court, one second, I don't want to

24 pin myself down exactly at this point in time, but sometime

25 towards the end of the week of November 3rd.  Any objections to

```
 1  that schedule?
 2          MS. LENNOX:  No, Your Honor.
 3          THE COURT:  Okay.  If there is nothing further,
 4  we'll be in recess for today.
 5          THE CLERK:  All rise.
 6          MR. ALBERTS:  Your Honor, is it 8:30 on Wednesday?
 7          THE COURT:  Yes, 8:30 Wednesday, please.
 8          MR. ALBERTS:  Thank you.
 9          THE COURT:  So 9:00 tomorrow, 8:30 Wednesday.  No,
10  what?  What?  Well, if it won't take very long, can we start
11  at 9:00 instead of 8:30?
12          MS. LENNOX:  That's fine, Your Honor.
13          MR. ALBERTS:  Sure.  So 9:00 tomorrow, 9:00
14  Wednesday.
15          THE COURT:  No.  I don't know how long Ms. Kopacz is
16  going to take, so I want to start at 8:30 on Wednesday.
17          MR. ALBERTS:  Okay.  9:00.
18          THE COURT:  9:00 tomorrow.
19          MR. ALBERTS:  That's perfect, Your Honor.
20          THE COURT:  All right.
21          THE CLERK:  Court is adjourned.
22       (Court Adjourned at 9:15 a.m.)
23
24
25
```

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11 /s/Deborah L. Kremlick, CER-4872          Dated: 10-21-14
   Letrice Calloway

12

13

14

15

16

17

18

19

20

21

22

23

24

25