UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| _____ | ) | |

**AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALS MOTION FOR ABSTENTION AND TO REMAND THE CLAIMS CONTAINED IN PROOF OF CLAIM #2958 (Dkt. #4876)**

NOW COMES AFSCME Council 25 and its Affiliated Detroit Locals (AFSCME or Claimant) for its Motion for Abstention and to Remand the Claims Contained in Proof of Claim #2958 (Dkt. #4876) and states as follows:

**INTRODUCTION**

AFSCME filed proof of claim number 2858 (AFSCME Claim), alleging varied sources of liability under State law. In response, the City objected to the AFSCME Claim under the broad cover of the purported lack of legal merit and the alleged duplicity of claims. On September 25, 2014, Hon. Stephen Rhodes ordered the parties to participate in Facilitative Mediation before the Hon. Victoria Roberts regarding these the AFSCME Claim. The parties attempted to resolve these claims through mediation, however, mediation proved to be unfruitful and the Mediator returned the matter to Judge Rhodes after having been unsuccessful. Without

1

divulging the content of the confidential mediation discussions, the parties maintained varying interpretations of state labor and employment law, and disagreed about the proper calculation of damages for many of the claims.

The claims contained within the AFSCME Claim involve specific aspects and decisions of Michigan public sector labor law. For those claims which interpret or involve the Public Employment Relations Act, the Michigan legislature specifically assigned these claims to be adjudicated before the Michigan Employment Relations Commission. M.C.L.A. § 423.201 et seq.

Pursuant to Section 1334(c)(1), bankruptcy courts may abstain from hearing any proceeding, including core matters, "in the interest of comity with State courts or respect for State law." Removing the items on appeal or for which the parties have agreed to resolve outside this proceeding, the AFSCME Proof of Claim contains fourteen (14) items, each with separate legal issues and damage calculation. The mediation process revealed that significant discovery between the parties is necessary, to develop the legal merit and financial losses incurred for each component of the Claim. There will likely be a need for expert testimony to prove the specifics of the losses. Getting through evidentiary presentation for fourteen claims will prove lengthy.

As such, AFSCME requests that this Honorable Court, pursuant to Section 1334, abstain from deciding these claims. AFSCME suggests that the matters be

2

adjudicated before several simultaneously-assigned labor arbitrators with experience in the fields of law surrounding the legal claims. In the alternative, the claims can be returned to their respective state fora. Having multiple individuals preside over the discovery and evidentiary processes of these claims, at once, will provide a much quicker resolution.

Even more, the outcome of these claims will not have significant impact on the property of the City. As these Claims are within Class 14, they will derive their relief from the "B Notes" to be issued by the City. The chief impact of the resolution of these claims involves distribution of the share of B Notes within the Class 14 creditor pool.[1] Thus, it will not negatively impact the City for this Honorable Court to assign these issues to be litigated before elsewhere.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 USC § §1408 and 1409.

---

[1] None of the other creditors within Class 14 challenged the AFSCME Class 14 Proof of Claim; the objections have come from the City.

# RELIEF REQUESTED

AFSCME contends this Court should permissively abstain from adjudicating the AFSCME Claim in the interest of comity with State courts and tribunals, and the establishment of state precedent.

## A. Specifics of the Proof of Claims

The Court has asked for a Joint Position Statement from the parties, concerning the nature of the dispute for each claim and necessary steps toward resolution for each. The parties will soon present this document to the Court, which will outline what has to be determined factually and legally. This should also edify the Court concerning this motion. Until such time, the below summarizes some of the open legal and factual issues for each item:

| ISSUE NAME | DESCRIPTION | OPEN LEGAL AND FACTUAL ISSUES (not comprehensive list) |
|---|---|---|
| 3) Refusal to bargain AFSCME Local 1023: MERC Case Number D13 C-0331 | AFSCME Local 1023 is a public safety local, and therefore its bargaining disputes must be resolved with binding arbitration pursuant to state law, if so requested by a negotiating party. This is referred to as Act 312. Under Act 312, the City cannot impose changes in employment conditions for public safety unions which request Act 312 arbitration, until the conclusion of the arbitration. The City refused to participate in Act 312 with | AFSCME contends that the state statute requiring arbitration in union contract negotiation disputes, concerning public safety employees (Act 312), was not supplanted by the emergency manager statute (Public Act 436) which relieved a public employer from complying with one section of PERA concerning bargaining. While MERC has decided that an employer's Act 312 obligation is mitigated when PA 436 is in effect, Michigan Courts have not so decided this novel legal issue. |

| | | |
|---|---|---|
| | Local 1023, and imposed employment conditions unilaterally. | Factually, the assessment of back and front pay and benefits must be calculated for the 80+ employees in the unit, including straight and overtime losses. |
| 4) Local 207, 2394 and 2920 DWSD refusal to bargain / Case Number C13 D-069 | AFSCME water department locals were refused the opportunity to bargain a new contract, and in October 2012, the City imposed employment conditions on the Locals unilaterally. | Factually, the parties disagree as to when the City imposed the changes on the union employees. While AFSCME contends it took place in October 2012, the City claims it was earlier. This issue is important because Public Act 4 (the prior emergency manager law which lessened the City's duty to bargain before employment changes are made) was stayed on August 8, 2012 – due to petition signatures having been collected to repeal the law. Also factually, hundreds of employees are entitled to back and front pay and benefits, factoring in straight and overtime rates. As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. |
| 5) Imposition of furloughs days in February 2013 | In February 2013, the City unilaterally imposed furlough days, in violation of its obligation to bargain with its unions. The City required employees to take unpaid days off work at least twice per month. These furlough days were realized through the bulk of the 2013 calendar year, causing significant losses in wages and benefits that would | There is no dispute that Public Act 4 had been rejected by the voters as of February 2013. However, the City claims the right to impose such furlough days due to the City-State consent agreement, which had been signed April 4, 2012. This unique – albeit non-meritorious – legal issue must be addressed. As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. Factually, the |

| | | |
|---|---|---|
| | have been earned or accrued during the lost time. | claim question whether the City engaged sufficient bargaining which would enable it to impose the furlough days. Also factually, the question of the back pay and benefits must be litigated. |
| 6) Detroit refusal to bargain concerning Transportation Locals: Case Number C12 H-157 | The City has committed to bargain with AFSCME Locals 214 and 312. The members of these Locals work in the Detroit Department of Transportation. These locals, however, are part of a city-wide bargaining unit, as determined by Michigan courts. By refusing to bargain with the entire bargaining unit, but only select portions of the bargaining unit, the City is violating state labor law. Any changes in employment conditions realized by the entire unit – due to the City's failure to bargain – represent a claim. | As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. The legal issue concerns whether the city-wide bargaining unit can be severed as such, and the issue is somewhat unique in Michigan law. Factually, the City claims that the bargaining history is consistent with the manner in which the bargaining took place in this instance, but AFSCME disagrees. Thus, the bargaining history must be litigated. |
| 8) City of Detroit 2012 negotiations and implementation with Coalition: MERC Case No. C12 D-065, C12 F-125, C13 G-129 | Following the negotiation of a Coalition tentative agreement in February 2012, the City violated state labor laws by refusing to execute that contract but illegally imposing other terms and conditions of employment. This includes wage and benefit concessions for all AFSCME members, which remain in existence today. | As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. There are several factual and legal disputes. First, the legal issue is whether the City's refusal to advocate and seek ratification of the Coalition Tentative Agreement (from February 2012) violated PERA, both before and after the consent agreement was signed on April 4, 2012. Further, the City announced the City Employment Terms, which were not actually imposed until |

| | | |
|---|---|---|
| | | after August 8, 2012 – the date Public Act 4 was stayed. Thus, implementation after August 8th made such imposition illegal, without prior bargaining. |
| 9) Violation of Privatization Ordinance | The City has repeatedly violated the City's Privatization Ordinance, prior to letting contracts to vendors to perform work normally performed by unionized employees. These claims are held by individual members of the Unions, as opposed to the union itself. Nonetheless, the claims seek all relief available to the employees under the law. | The legal and factual issues surround the specifics of the contracts which were violated. |
| 10) City of Detroit/DFFA/ MERC: MERC Case No. C11 K-201 | The union filed an unfair labor practice charge concerning removal of work from the applicable bargaining unit. This change impacted the employees who had previously performed the work. | As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. The factual issue concerns the appropriate calculation of back and benefits pay for employees denied the right to work, and the number of work hours must be derived through litigation. Also, the question is whether factually and legally AFSCME was entitled to work the hours of work given to non-AFSCME employees. |

| | | |
|---|---|---|
| 11) City of Detroit longevity claim for AFSCME employees: Claim number 12-000522 and 12-000523; Wayne County Circuit Court Number 13-003430-AA | Under the 2005-2008 AFSCME union contract, employees had received a yearly payment, in December, based upon the number of hours they worked since the previous December; receiving the full longevity payment for hitting 1600 hours. Effective October 2010, the City imposed new contract terms on AFSCME employees, which removed the longevity pay. However, many AFSCME members had already worked the 1600 hours since the December 2009, entitling them to full longevity pay. Further, for members who had worked less than the 1600 hour threshold, they were entitled to prorated longevity payments for hours worked in each month during that year. The City refused any AFSCME members longevity pay, despite the clear contractual obligation. AFSCME members filed claims with the state for this payment, and the City challenged the payments. The claims were initially denied by the administrative law judge, and placed on appeal before Wayne County Circuit Court. | This legal issue questions whether compensation earned prior to imposed conditions can be taken away from those employees who earned it, due to the imposition. Factually, the calculation of the appropriate back pay is required. |

| | | |
|---|---|---|
| 13) Detroit & SEMHA: MERC Case No. C05 H-194 | The charge was filed to protest the layoff of four individuals from the Detroit Health Department and rehiring of them by a Detroit contractor, to perform the same work. The charge alleged a violation of state labor law. In the process of the hearing (despite repeated appeals, ancillary litigation and cancelations), the Union learned of other positions for which this occurred. The charge sought back pay and benefits for those impacted employees. The Union lost dues for those laid off members as well. | As this is an unfair labor practice charge, it is within MERC's exclusive jurisdiction, as reviewable by Michigan courts. The issue also involves a unit clarification petition, seeking to include individuals into AFSCME's bargaining unit, also an issue addressed by MERC. |
| 16) City of Detroit/Human Services department: Grievance No. 25-01-12 / COA: 12-0077708-CL | In July and October, 2012, approximately 174 AFSCME Locals 1642 and 457 members, working at the Detroit Health Department and Workforce Development Department, were permanently laid off and replaced with employees from third party companies. The arbitrator found the City's actions to be in violation of the union contract, and awarded back pay and benefits to the members. The arbitrator's decision, confirmed by Circuit Court, is now on appeal. | Factually the appropriate back and front pay and benefits must be calculated for all employees. |

| 19) Detroit Service and Maintenance Outsourcing in Downtown Detroit: Grievance Number C09-078 | In 2009, the City reduced the overtime of AFSCME members, due to work performed by private contractors, in the downtown Detroit area. This violation of Article 19 of the AFSCME Master Agreement continued for years after the fact. The violations impacted 40-60 employees throughout the period. | The factual issue has to be determined whether the City inappropriately used contractors which reduced the compensation of AFSCME-represented employees. If so, the appropriate back pay and benefits for each employee, for each year involved, must be determined. |
|---|---|---|

**B.    Argument for Permissive Abstention**

Section 1334(c)(1), governs permissive abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1); *see also In re Lowenbraun,* 453 F.3d 314, 320 (6th Cir.2006). Courts consider the following factors in determining whether permissive abstention is appropriate:

> "(1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this

court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; and (13) any unusual or other significant factors."

*In re Kmart Corp.*, 307 B.R. 586, 596-597 (Bkrtcy. E.D.Mich., 2004)

In the *In re Kmart Corp* case (Id., 596-597), Judge McIvor indicated that permissive abstention was appropriate (after deciding in favor of mandatory abstention) for many of the same reasons this Court should permissively abstain. The below discussion quotes her analysis of the permissive abstention factors, and analyzes the facts in the instant case:

"(1) there appears to be no effect on the efficient administration of the estate if this Court abstains". In the instant case, this Court has now confirmed the City's Plan of Adjustment, including the treatment of Class 14 creditors. The Plan of Adjustment establishes a set amount of "B Notes" to be distributed to the creditors within the class. As such, the outcome of the proof of claim litigation will not impact the City, financially, beyond the allocation of these B Notes amongst these creditors. Thus, the effect on the "administration of the estate (or property in a Chapter 9 case)" is minimal, if existent at all.

"(2) state law issues clearly predominate over bankruptcy issues". In the instant matter, the chief "bankruptcy issue[]" is the appropriate allocation of the B Notes among the Class 14 creditors. By contrast, virtually all of the legal and factual

decisions which must be made involve interpretation and application of state law. The state law issues are quite esoteric in many instances.

Further, for many of the claims, they involve legal interpretations of the Public Employment Relations Act (PERA), M.C.L.A., § 423.201, et seq. Under Michigan law, the Michigan Employment Relations Commission is vested with "exclusive jurisdiction" to rule upon interpretations of PERA:

> "The PERA governs public sector labor law, and its provisions have been held to take precedence over other conflicting laws to ensure uniformity, consistency, and predictability in the critically important and complex field of public sector labor law. Rockwell v. Crestwood School Dist. Bd. of Ed., 393 Mich. 616, 629, 227 N.W.2d 736 (1975). The MERC is the sole state agency charged with the interpretation and enforcement of this highly specialized and politically sensitive field of law. Id., at 630, 227 N.W.2d 736; MCL 423.216; MSA 17.455(16).

*Kent County Deputy Sheriffs' Ass'n v. Kent County Sheriff*, 238 Mich.App. 310, 313 (1999).

The *Kent County Sheriff* case cited to *Rockwell v. Board of Ed. of School Dist. of Crestwood*, 393 Mich. 616 (1975), an earlier opinion of the Michigan Supreme Court addressing a potential conflict between the PERA and another state statute: Teacher Tenure Act. The state circuit court had issued rulings under the Teacher Tenure Act, but the Supreme Court reversed. *Id.,* at 628-629. The Supreme Court underscored that PERA has consistently been deemed the "dominant law regulating public employee labor relations" in the state, and cited several even earlier examples. Id. The Court further explained that

> "[t]he supremacy of the provisions of the PERA is predicated on the [Michigan] constitution (Const.1963, art. 4, s 48) and the apparent legislative intent that the PERA be the governing law for public employee labor relations."

Id., at 630. The Court continued by reserving for MERC the exclusive right to interpret the PERA:

> "The State Tenure Commission has no authority to entertain an unfair labor practice charge against a school board. Its jurisdiction and administrative expertise is limited to questions traditionally arising under the Teachers' Tenure Act.
>
> MERC alone has jurisdiction and administrative expertise to entertain and reconcile competing allegations of unfair labor practices and misconduct under the PERA."

Id., at 630.

Of the fourteen claims in AFSCME's Proof of Claim, eight of them involve an interpretation of PERA to be made by MERC. Some of the PERA interpretation issues involve novel or unusual determinations that need to be made by MERC. Thus, this Court should permit abstention and allow for MERC to assume its exclusive jurisdictional role in establishing precedent in state labor law. Even the other six claims involve interpretations of state law or the union contract, typically made by a labor arbitrator or state courts. Abstention is appropriate for these claims as well, for the establishment of state law precedent by these arbitrators and state courts.

(3) the difficulty or unsettled nature of the applicable state law[2] - In this case, the AFSCME claims involve legal issues which would be novel or at least unique to Michigan law, which should be left for determination by MERC and its reviewing Michigan courts. See the chart above.

"(6) the state law causes of action are not particularly related to the main bankruptcy case". In the instant matter, the state law causes of action are not related to the main bankruptcy case, except to the extent they involve allocation of the Class 14 claims.

"(7) the state law causes of actions are not core matters" and "(8) there are no core matters at issue in this case, other than potential defenses, and therefore, state law claims may be easily severed from core bankruptcy matters; further, the state courts may interpret bankruptcy court documents, including, but not limited to, the Plan". The *In re Kmart* case indicated that "[a] proceeding is considered 'core' only if it 'invokes a substantive right created by federal bankruptcy law or one which could not exist outside of bankruptcy.'" The Court continued:

> "Claims that arise under the Bankruptcy Code or arise in a bankruptcy case are core matters; claims that relate to a bankruptcy case, but do not arise in a bankruptcy case or under the Bankruptcy Code are non-core."

Id., at 591.

---

[2] The In re Kmart case did not have information concerning the unsettled or difficult nature of this law.

Here, Claimant acknowledges the state law claims are related to the bankruptcy to the extent that they require satisfaction from property of the Debtor. However, the claims do not themselves invoke rights created by federal bankruptcy law, and have existed outside of the bankruptcy proceeding. Regardless of whether or not the claims themselves are "core", they certainly can be "easily severed from core bankruptcy matters" because all that is left, given confirmation of the Plan of Adjustment, is the City's defenses to these state law matters. Nor is there any challenge with the MERC and state courts interpreting the bankruptcy documents. Thus, factors 7 and 8 of *In re Kmart* weigh in favor of abstention.

(9) the burden of this court's docket – This Honorable Court is well aware of its docket, even given the Plan confirmation.

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties – Claimant's interest here is not forum shopping, but the concerns addressed within this brief.

"(12) the proceeding involves non-debtor parties." In this matter, a number of the claims require the involvement of non-debtor parties. For instance, the City imposed "furlough days" in February 2013, in an act done by a labor relations director. This individual is no longer employed by the City, and the evidentiary hearing may involve his testimony. Given the significant turnover of City labor relations and other agents, this problem will likely exist for several of the items

within the Proof of Claim, in addition to the need for non-party witnesses in the normal course of litigation.

"(13) any unusual or other significant factors". As to factor number 13, the posture of the bankruptcy case makes abstention appropriate, in addition to the existence of a confirmed Plan of Adjustment, with a specific allotment of B Notes for Class 14 creditors. Each of the items involves a certain level of intricacy in resolution. For instance, item number 16, below concerns well over 100 employees who were improperly laid off from the City[3]. Each employee is entitled to back and front pay and benefits, which involves an assessment of typical straight and overtime hours worked and appropriate adjustment of accrued benefits, for each employee, in order to attain complete "make whole" relief. Even more, the City has made a mitigation defense, requiring the City to demonstrate interim earnings which legally require reduction of relief, for each employee. Permissive abstention would have these determinations made by other courts / tribunals.

WHEREFORE, Michigan AFSCME Council 25 respectfully request this Court grant its motion to abstain from hearing these matters.

---

[3] AFSCME claim City of Detroit/Human Services department: Grievance No. 25-01-12 / COA: 12-0077708-CL

16
13-53846-tjt    Doc 8492    Filed 11/26/14    Entered 11/26/14 17:24:23    Page 16 of 18

Dated: November 26, 2014

    /s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
Jack W. Schulz, Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com
jschulz@millercohen.com

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | ) | |
|---|---|---|
| In re | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| | ) | Hon. Steven W. Rhodes |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 26, 2014, the *AFSCME Council 25 and Its Affiliated Detroit Locals Motion for Abstention and to Remand the Claims Contained In Proof of Claim #2958 (Dkt. #4876)*, with the Clerk of the Court for the United States District Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr.
Jack W. Schulz
MILLER COHEN, P.L.C.
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 566-4787
Facsimile: (313) 964-4490
richardmack@millercohen.com