# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

## CONSOLIDATED RESPONSE OF THE OFFICIAL COMMITTEE OF RETIREES IN OPPOSITION TO MOTIONS FOR STAY PENDING APPEAL OF ORDER OF CONFIRMATION OF THE CITY'S EIGHTH AMENDED PLAN OF ADJUSTMENT

Claude D. Montgomery
Carole Neville
DENTONS US LLP
1221 Avenue of the Americas
New York New York 10020
Tel: (212) 768-6700
Fax: (212)-768-6800
claude.montgomery@dentons.com
carole.neville@dentons.com

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW, Suite 600 East Tower
Washington, DC 20005
Tel: (202) 408-6400
Fax: (202) 408-6399
sam.alberts@dentons.com
dan.barnowski@dentons.com

Matthew E. Wilkins
Paula A. Hall
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Tel: (248) 971-1800
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    THE STANDARD FOR STAY PENDING APPEAL ................................................. 2

    II.    STAY OF CONFIRMATION THREATENS SUBSTANTIAL HARM TO RETIREES ................................................................................................................... 4

        A.    Risk of Harm to Retiree Healthcare ................................................................. 4

        B.    Risk of Harm to Retiree Pension Funding ....................................................... 6

    III.    THE STAY MOTIONS FAIL TO SET FORTH COUNTERBALANCING HARM TO THE APPELLANTS ABSENT A STAY ................................................. 6

    IV.    THE STAY MOTIONS FAIL TO DEMONSTRATE THAT THE COURT ABUSED ITS DISCRETION IN APPROVING THE PENSION SETTLEMENT ..... 7

CONCLUSION .......................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Akron v. Akron Thermal, L.P. (In re Akron Thermal, L. P.)*,
 414 B.R. 193 (N.D. Ohio 2009) ..................................................................................3

*In re Calpine Corp.*,
 No. 05-60200, 2008 Bankr. LEXIS 217 (Bankr. S.D.N.Y. Jan. 24, 2008) ...............3

*Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*,
 945 F.2d 150 (6th Cir. 1991) ....................................................................................3

*Hindelang v. Mid-State Aftermarket Body Parts, Inc. (In re MQVP, Inc.)*,
 477 Fed.Appx. 310 (6th Cir. Apr. 13, 2012) ............................................................7

*In re Pub. Serv. Co. of N.H.*,
 116 B.R. 347 (Bankr. D.N.H. 1990) .....................................................................3, 4

*Weingarten Nostat, Inc. v. Service Merchandise Co., Inc.*,
 396 F.3d 737 (6th Cir. 2005) ....................................................................................7

**Other Authorities**

Fed. R. Bankr. P. 8005 ........................................................................................................2

Fed. R. Bankr. P. 9019 ........................................................................................................7

The Official Committee of Retirees (the "Committee") of the City of Detroit, Michigan (the "City") submits this Consolidated Response in Opposition (the "Response") to all motions to stay the Order approving the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. 8045] (the "Plan"), including the *Second Amended Motion for Limited Stay Pending Appeal* filed by Jaime S. Fields on behalf of the Ochaleus appellants [Dkt. 8341] (the "Fields Motion") and *John P. Quinn's Motion for Partial Stay Pending Appeal* [Dkt. 8413] (the "Quinn Motion," collectively with all joinders thereto and the Fields Motion, the "Stay Motions"),[1] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. The sacrifices and settlements by retirees are at the center of this the largest municipal debt adjustment case in United States history. The retiree classes under the Plan comprised of classes 10 (PFRS Pension Claims), 11 (GRS Pension Claims) and 12 (OPEB) overwhelmingly favored implementation of the settlements embodied in the Plan. Notwithstanding, the settlements and the Plan that embodied them were attacked by certain other retirees who thought the sacrifices agreed to by retirees were either generally unfair to retirees or specifically unfair to them.

2. However, it was only after an exhaustive 24-day trial, in which the Court considered 2,327 exhibits and testimony from more than 40 witnesses offered by the City, the Committee and various other parties-in-interest, that this Court confirmed the Plan on November 7, 2014. In confirming the Plan, the Court found that the pension settlement agreed upon between the City and Class 10 and 11 pension creditors which contemplates a consensual, bilateral reduction in the City's future pension obligations was reasonable. Now, on the cusp of

---

[1] Several joinders to the Quinn Motion were filed on November 24, 2014. [Dkts. 8429, 8432, 8434, 8435, 8436, 8438, 8439, 8440, 8441, 8442, 8443, 8444, 8445, 8446, 8448, 8449, 8450, 8451, 8452, 8453, 8454]. One additional joinder was filed on November 25, 2014. [Dkt. 8464]. This Response opposes all joinders to the Quinn Motion.

the Plan's consummation and the closing of multiple financing arrangements that contribute (i) more than $600 million from third parties to fund retiree pension claims and (ii) more than $10 million from third parties to fund initial retiree healthcare costs, the appellants seek to rehash arguments considered (and rejected) at trial and to indefinitely delay, and perhaps scuttle, implementation of the Plan.

3. The Stay Motions are insufficient to justify the extraordinary stay relief that they seek. Any harm incurred by appellants absent a stay (if any) pales in comparison to the substantial harm faced by retirees and City residents associated with the delay of crucial financing arrangements that are necessary to fund pension and immediate healthcare costs. The weight of these interests alone justifies denial of the Stay Motions.

## ARGUMENT

### I. THE STANDARD FOR STAY PENDING APPEAL

4. The standard to obtain a stay pending appeal under Fed. R. Bankr. P. 8005 is amply set forth in this Court's January 29, 2014 order:

> In determining whether a stay pending appeal should be granted pursuant to Fed. R. Bankr. P. 8005, a court considers the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction. *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). In determining whether to issue an injunction, a bankruptcy court must consider:
>
> > 1. Whether the movant has shown a strong or substantial likelihood of success of the merits;
> >
> > 2. Whether the movant has demonstrated irreparable injury;
> >
> > 3. Whether the issuance of an injunction would cause substantial harm to others; and
> >
> > 4. Whether the public interest is served by the issuance of an injunction.
>
> *Am. Imaging Serv., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 858-59 (6th Cir. 1992) (citing *In re Delorean Motor Co.*, 755

F.2d 1223, 1228 (6th Cir. 1985)). The moving party bears the burden of proving by a preponderance of the evidence that a stay should issue. "[A] court's decision to [grant or] deny a Rule 8005 stay is highly discretionary." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997).

Order Denying Motion to Stay Pending Appeal [Dkt. 2594].

5. While the factors to be considered for a preliminary injunction and a stay pending appeal are the same, the Sixth Circuit has explained that a stay motion places a higher burden on the movant:

> [A] motion for a stay is generally made after the [trial] court has considered fully the merits of the underlying action and issued judgment, usually following completion of discovery. As a result a movant seeking a stay pending review on the merits of a [trial] court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits. In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal. Presumably, there is a reduced probability of error, at least with respect to a court's findings of fact, because the [trial] court had the benefit of a complete record that can be reviewed by this court when considering the motion for a stay.

*Griepentrog*, 945 F.2d at 153-54; *see City of Akron v. Akron Thermal, L.P. (In re Akron Thermal, L.P.)*, 414 B.R. 193, 203-07 (N.D. Ohio 2009) (denying stay as to matters that were previously decided and ruled upon by the Bankruptcy Court).

6. This burden is particularly onerous for a stay of plan confirmation, which often, as is the case here, involves reconsideration of factual determinations that are subject to limited appellate review and significant harm to creditors by delaying payment. *See In re Pub. Serv. Co. of N.H.*, 116 B.R. 347, 349-50 (Bankr. D.N.H. 1990) (finding that factual issues at confirmation are subject to a "clearly erroneous" standard of review and that "the delay caused to creditors receiving their payments is . . . a significant harm warranting denial of a stay."); *In re Calpine Corp.*, No. 05-60200, 2008 Bankr. LEXIS 217, at *18-20 (Bankr. S.D.N.Y. Jan. 24, 2008) (denying stay of confirmation order where objecting parties simply "rehash[ed] the same

arguments" that the court already rejected).  Here, the Stay Motions fail to satisfy the appellants' heavy burden to warrant stay of plan confirmation and therefore should be denied.

## II. STAY OF CONFIRMATION THREATENS SUBSTANTIAL HARM TO RETIREES

7. A stay of confirmation, if granted, would jeopardize and unnecessarily delay external financing arrangements that are essential to retiree healthcare and pension recoveries. *See Pub. Serv. Co. of N.H.*, 116 B.R. at 350 ("[D]elay caused to creditors receiving their payments is … a significant harm warranting denial of a stay.").

### A. Risk of Harm to Retiree Healthcare

8. Stay of confirmation would jeopardize the payment and administration of healthcare benefits for thousands of retirees on or after January 1, 2015.  Pursuant to the Retiree Healthcare Settlement Agreement (as defined and approved in the Plan), the City agreed to maintain a mutually agreed upon level of healthcare benefits for retirees through December 31, 2014.  (Plan Ex. I.A.298.)  The Plan contemplates that a Detroit General VEBA (as defined in the Plan) and the Detroit Police and Fire VEBA (as defined in the Plan, collectively with the Detroit General VEBA, the "VEBAs") will assume the City's responsibility to fund and design retiree healthcare benefits.  (*See* Plan at 43.)  Pursuant to the Plan, the VEBAs can only be established after the "Effective Date", (*id.* at 42-43), which can only occur if "[t]he Confirmation Order is not stayed ***in any respect***." *Id.* at 54 (emphasis added).

9. The mechanics to establish and implement the VEBAs prior to December 31, 2014 are set forth in that certain letter agreement, dated November 4, 2014, between the City and the Committee (the "VEBA Letter").[2] It provides that "[t]he City will be responsible for all retiree health benefit costs incurred up to and including December 31, 2014" and "[t]he VEBAs,

---

[2] The VEBA Letter was filed with this Court on November 12, 2014. [Dkt. 8183] and is attached hereto as Exhibit 1.

acting through their respective trustees, will be responsible for design and funding of retiree health coverage benefits on and after January 1, 2015." (*Id.*) To fund the first six months of retiree healthcare benefits, the VEBAs are expected to receive six third-party grants in an approximate aggregate amount of $10.63 million. (*Id.*) Four of the grants totaling roughly $10.28 million are payable on the Effective Date. An additional two grants, each in the amount of $175,000, are payable by December 31, 2014 and January 31, 2015, respectively. (*Id.*) Moreover, the City has agreed to "provide one-year of third party benefits administration services to each VEBA" <u>provided that</u> "the trustees of each requesting VEBA agree [to the VEBA Letter] by December 31, 2014." (*Id.*) Absent formation of the VEBAs prior to December 31, 2014, neither the Plan nor the VEBA Letter sets forth a procedure for retirees to receive the $175,000 grant due December 31, 2014 or administer healthcare benefits after January 1, 2015.[3] In sum, stay of confirmation would threaten the continuity of retiree healthcare benefits, jeopardize $350,000 in third-party healthcare funding (due on or before January 31, 2015), and unnecessarily delay more than $10 million of additional third-party healthcare funding for retirees. A further effect in 2015 caused by delay of the "Effective Date" beyond December 31, 2014 is a loss of $1.6 million each month in interest that would have been received by the VEBAs on account of the New B Notes (as defined in the Plan). Taken together, delay of the "Effective Date" beyond December 31, 2014 could result in the loss of retiree healthcare during that delay as well as for several months beyond the delay to the "Effective Date".

---

[3] Absent an "Effective Date" due to the grant of an indefinite stay, it is possible that the City may argue that it is no longer responsible for funding healthcare after December 31, 2014. The Committee reserves its rights to compel the City to administer retiree healthcare benefits in the event that the VEBAs have not been established on or before December 31, 2014.

### B. Risk of Harm to Retiree Pension Funding

10. Stay of confirmation similarly jeopardizes the availability of third-party funding for the benefit of retiree pensions. Pursuant to the Plan, the State of Michigan (the "State") will contribute the net present value of $350 million (at a 6.75% discount rate) payable over 20 years to the GRS and PFRS in order to fund future pension claims. (Plan at 55.) However, the State's contribution is expressly conditioned upon, *inter alia*, the Confirmation Order becoming a "Final Order" (*i.e.* an order that has not been stayed) by December 31, 2014. (*Id.* at 16, 56.) By preventing the Confirmation Order from becoming a "Final Order," a stay prevents satisfaction of a condition precedent to the State Contribution Agreement (as defined in the Plan) and thereby jeopardizes the availability of state funding to retirees. Moreover, "the agreement of the State to provide the State Contribution" is an express condition of the DIA Settlement (as defined in the Plan), by which third-parties will contribute more than $450 million payable over 20 years for the benefit of pension creditors. (*Id.* at 57). Therefore, by preventing the Confirmation Order from becoming a "Final Order" by December 31, 2014, any stay jeopardizes more than $600 million of funding for retiree pension claims.

11. Accordingly, the potential loss and/or delay of essential Plan financing constitutes significant harm warranting denial of the Stay Motions.

### III. THE STAY MOTIONS FAIL TO SET FORTH COUNTERBALANCING HARM TO THE APPELLANTS ABSENT A STAY

12. The Stay Motions cite the risk of "mootness," but fail to explain how each of the respective appeals might become moot. (Fields Mot. at 10; Quinn Mot. at 5). Even assuming that the Stay Motions persuasively described how their respective appeals are at risk of becoming moot, such harm is not sufficient to warrant a stay pending appeal where, as here, such harm is

otherwise outweighed by the other stay factors. (Fields Mot. at 10) (citing *Weingarten Nostat, Inc. v. Serv. Merchandise Co., Inc.*, 396 F.3d 737, 741 (6th Cir. 2005)).[4]

## IV. THE STAY MOTIONS FAIL TO DEMONSTRATE THAT THE COURT ABUSED ITS DISCRETION IN APPROVING THE PENSION SETTLEMENT

13. To the extent that the appellants intend to contest the pension settlement as unreasonable, the Stay Motions fail to detail how the settlement is subject to a likelihood of reversal on appeal. To approve a bankruptcy settlement as reasonable, a "bankruptcy judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision." *Hindelang v. Mid-State Aftermarket Body Parts Inc. (In re MQVP, Inc.)*, 477 Fed. App'x. 310, 312 (6th Cir. Apr. 13, 2012). The Sixth Circuit has "distilled four factors for bankruptcy courts [to evaluate whether a settlement is just and equitable]: (a) the probability of success the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the interest of creditors." *Id.* Approval of a bankruptcy settlement pursuant to Fed. R. Bankr. P. 9019 is only reviewed for abuse of discretion. *Id.*

14. At the conclusion of a 24-day trial and consideration of testimony from more than 40 witnesses, the Court concluded that it would be a "vast understatement to say that the pension settlement is reasonable. It borders on the miraculous." (Confirmation Opinion at 7.) To support its approval, the Court found that (i) pension classes overwhelmingly voted to accept the Plan by 82% in class 10 (PFRS) and 73% in class 11 (GRS), (ii) pension creditors had only a 25% chance of success to appeal the eligibility decision, and (iii) even if pension creditors were successful on appeal, the City would still have no ability to pay their claim. (*Id.* at 6-7.) The

---

[4] In *Weingarten*, the Sixth Circuit affirmed a district court decision that denied stay of a § 363 sale even though the district court determined that appeal would be potentially moot absent a stay. *Id.*

Stay Motions fail to articulate why any of the Court's rulings in support of the pension settlement were an abuse of discretion as would be necessary to justify reversal of the pension settlement on appeal. For this additional reason, the Stay Motions should be denied.

## CONCLUSION

For the reasons set forth herein, the Committee requests that Stay Motion be denied.

Dated: November 26, 2014  
New York, New York

Respectfully submitted,

By: */s/ Claude D.Montgomery*  
Claude Montgomery  
Carole Neville  
DENTONS US LLP  
1221 Avenue of the Americas  
New York, New York 10020  
Tel: (212) 768-6700  
Fax: (212) 768-6800  
claude.montgomery@dentons.com  
carole.neville@dentons.com  
BROOKS WILKINS SHARKEY & TURCO PLLC  
Matthew E. Wilkins  
Paula A. Hall  
401 South Old Woodward, Suite 400  
Birmingham, Michigan 48009  
Tel: (248) 971-1711  
Fax: (248) 971-1801  
wilkins@bwst-law.com  
hall@bwst-law.com

Sam Alberts  
DENTONS US LLP  
1301 K Street, NW, Suite 600 East Tower  
Washington, DC 20005  
Tel: (202) 408-6400  
Fax: (202) 408-6399  
sam.alberts@dentons.com  
dan.barnowski@dentons.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

## CERTIFICATE OF SERVICE

  I, Claude D. Montgomery, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on November 26, 2014.

By:  */s/ Claude D. Montgomery*
Claude D. Montgomery
