```
 1              UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF MICHIGAN
 2                  SOUTHERN DIVISION

 3   IN THE MATTER OF,           Case No. 13-53846
                                 Detroit, Michigan
 4   CITY OF DETROIT, MI         December 1, 2014
     _____/   2:00 p.m.
 5
        IN RE: (#8341) AMENDED MOTION – SECOND AMENDED MOTION FOR
 6    LIMITED STAY PENDING APPEAL FILED BY CREDITOR JAMIE FIELDS
        (#8429) JOINT MOTION TO JOIN JOHN P. QUINN'S MOTION FOR
 7       PARTIAL STAY PENDING APPEAL, FILED BY CREDITORS IRMA
     INDUSTRIOUS, DENNIS TAUBITZ, (#8426) PETITIONER'S MOTION TO
 8   STAY AND MEMORANDUM OF LAW ON THE CONFIRMATION OF THE PLAN AND
        OPINION OF MAGISTRATE JUDGE STEVEN W. RHODES FILED BY
 9     CREDITORS DOROTHEA HARRIS, HASSAN ALEEM, CARL WILLIAMS,
        (#8413) JOHN P. QUINN'S MOTION FOR PARTIAL STAY PENDING
10   APPEAL, NOTICE OF JOHN P. QUINN'S MOTION, BRIEF IN SUPPORT AND
      CERTIFICATE OF SERVICE (#8483) MOTION TO STAY PENDING APPEAL
11           BEFORE THE HONORABLE STEVEN W. RHODES
               TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
12
     APPEARANCES:
13
     For the City of Detroit, MI:   HEATHER LENNOX, ESQ.
14                                  Jones, Day
                                    222 East 41st Street
15                                  New York, NY 10017-6702
                                    212-326-3939
16
     For State of Michigan:         STEVEN HOWELL, ESQ. (P28982)
17                                  Dickinson, Wright
                                    500 Woodward Avenue
18                                  Suite 4000
                                    Detroit, MI 48226-3425
19                                  313-223-3033

20   For the Official Committee:    SAM ALBERTS, ESQ.
                                    Dentons, US, LLP
21                                  13001 K Street, N.W.
                                    Suite 600, East Tower
22                                  Washington, D.C. 20005-3364
                                    202-408-6400
23
     For the Ochadleus Appellants:  JAMIE S. FIELDS, ESQ. (P52808)
24                                  555 Brush 2409
                                    Detroit, Michigan 48226
25                                  313-570-3906
```

```
1 | In Pro Per:                    JOHN P. QUINN
  |                                2003 Military Street
2 |                                Detroit, MI 48209
  |
3 | Court Recorder:                Letrice Calloway
  |
4 | Transcriber:                   Deborah L. Kremlick
  |
5 |
  |
6 | Proceedings recorded by electronic sound recording, transcript
  | produced by transcription service.
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
```

1       (Court in Session)

2           THE CLERK:  Court is in session.  Please be seated.

3   Case number 13-53846, City of Detroit, Michigan.

4           THE COURT:  We are here this afternoon on the

5   various motions for stay pending appeal.  Who would like to be

6   heard on this matter, please?

7           MR. FIELDS:  For the record, Your Honor, Jamie

8   Fields appearing on behalf of the Ochadleus appellants.  And

9   this is a motion for a limited stay pending appeal.

10      It's come to my attention that the city has said they're

11  not going to implement the pension reductions until March 1st.

12  So therefore my stay is even more limited.  A couple of issues

13  I want to bring to the attention of the Court.

14      One is the plan of adjustment says that the city has the

15  right to go back until June 30th of last year to take back

16  excess COLA that's been paid.  And first, there is no

17  discussion about how they're going to do that, if they're

18  going to do it in one chunk, if they're going to take it back

19  in payments, or if they're going to charge 6.75% interest to

20  take it back.

21      So, I think those things have to be resolved.  But other

22  than that, in effect this not implementing the pension cuts

23  till March 1st has satisfied my stay as far as that goes.  But

24  I still need to have clarification on the rest.

25          THE COURT:  Thank you, sir.

1          MR. FIELDS:  All right.

2          THE COURT:  Sir.

3          MR. QUINN:  Good afternoon, Your Honor.  John Quinn

4   representing myself.  With the Court's permission I'd like to

5   address the four factors that need to be considered in this

6   order.

7          THE COURT:  Yes.

8          MR. QUINN:  First factor, two the irreparable

9   injury.  Then three and four.  And then finally factor one and

10  after that I'll discuss the bond briefly.

11     On the question of irreparable injury.  It's true that

12  ordinarily monetary harms are not -- are not irreparable

13  because they can be remedied by money damages.

14     However, in this case Paragraph 71 on Page 115 of the

15  confirmation order seems as I read it to direct that even if I

16  am successful on my appeal, I will be unable to recover any of

17  the money that will by then have been withheld from my monthly

18  pension payments pursuant to the confirmation order and the

19  plan.

20     So the order itself forecloses an award of monetary

21  damages and makes the injuriable cause even though it's

22  monetary in nature, irreparable even if the order is reversed

23  in part as -- as I intend to seek.

24     Regarding harm to others.  The city argues that a delay

25  in the effective date of the plan of adjustment would

1  essentially cancel the grand bargain and all the other

2  settlements.  But I'm seeking a stay of only portions of the

3  plan of adjustment in the confirmation order that implement

4  reductions in GR pension -- GRS pension payments.

5      As Mr. Fields noted, we already know that those

6  reductions will not occur until several months after the

7  effective date.  That being the case, what I am asking is at

8  most a very brief extension in the period of time after the

9  effective date.  I'm not asking to change the effective date

10  during which the pension reductions do not take effect.  So it

11  simply is not the case as I -- as far as I can see that

12  granting the stay puts all of those settlements into jeopardy

13  and takes us back to square one.

14      On the public interest, I agree that the public has a

15  significant interest in Detroit's financial survival.  As a

16  long time Detroit resident and taxpayer, who have devoted most

17  of my career to serving the citizens of Detroit, I very much

18  am part of that public and -- and share that interest.

19  However, as I just noted, the stay I seek would not put the

20  city's financial service survival in any greater jeopardy than

21  already exists.

22      The public also has an interest in assuring that the

23  city's financial viability is assured by legal means.  That is

24  by a plan that complies with existing law including the

25  Bankruptcy Code.  If there is at least a serious question

1  whether the specific provisions of the plan of adjustment that

2  I intend to attack on appeal, violate the Bankruptcy Code,

3  then it is in the public interest to delay implementation of

4  those provisions for the short time needed to permit a higher

5  Court to review the legality of those provisions.

6      Now on through the first factor, the likelihood of

7  success on the merits.  First, with regard to the ASF

8  recoupment.

9      In their responses to the motion for stay as earlier, the

10  plan proponents argue that ASF recoupment does not violate

11  Section 1123(a)(4) because it does not affect the claims in

12  Class 11 but is a means of collecting money owed GRS by the

13  affected creditors.  For example consider the State of

14  Michigan's response to the motion.

15      At Page 3 of that response, the state correctly states

16  that Class 11 is comprised of GRS pension claims.  The term

17  GRS pension claim is defined in Paragraph 212 of the eighth

18  amendment plan starting on Page 17.  The definition is long

19  and grammatically complex.  But it is at least clear that the

20  term includes claims for payments by GRS for "post retirement

21  pension or financial benefits".

22      Nonetheless the state goes on to assert on Page 4 of its

23  response, that the ASF recoupment is not being deducted from

24  Class 11 claims, it is being deducted from pension benefit

25  payments.  And again on Page 6, that the ASF recoupment is a

1  reduction from the retirees pension benefits -- pension

2  benefits payments, not a reduction in the retirees Class 11

3  claim.

4      Given that a claim for payment of pension benefits is a

5  Class 11 claim, this is equivalent to say that the ASF

6  recoupment is a deduction from the retirees pension benefit

7  payments, not a reduction from the retirees claim for pension

8  benefit payments.  And with due respect to the Attorney

9  General, I can't see how that makes sense.  It's -- it's

10 really Alice in Wonderland kind of stuff.

11     The issue is whether the plan -- or the issue on appeal

12 will be whether the plan provides the same treatment for the

13 claims of creditors affected by the ASF recoupment as it does

14 to other claims in Class 11.  And if the plan deducts more

15 from the pension benefits payments that constitute the claims

16 of some claims in Class 11 than it does from pension benefit

17 payments of other claims in Class 11 and it does, then it does

18 not provide the same treatment to all those claims.

19     Now I realize the Court has already held that ASF

20 recoupment does not violate Section 1123(a)(4) so the Court's

21 unlikely to agree that I am likely to succeed on appeal.

22 However, if the -- as the city notes at Page 7 of its response

23 when an appellant raises "serious questions going to the

24 merits, and the other three factors favor a stay, then the

25 stay should be granted"

1    On the -- with regard to the bond.  The purpose of a bond

2  is to protect the appellant from costs associated with the

3  delay occasioned by a stay if the appeal is unsuccessful.

4    I've already argued that the limited stay I seek would

5  lead to no such costs.  So that gives no -- no grounds for a

6  bond so far as I can see.  Unless the Court has questions, I'm

7  done.

8         THE COURT:  Thank you, sir.

9         MR. QUINN:  Thank you, Your Honor.

10         THE COURT:  Would anyone else like to speak in favor

11  of a stay?  Ms. Lennox.

12         MS. LENNOX:  Thank you, Your Honor.  A few

13  preliminary housekeeping matters.

14    It was not clear to me whether Mr. Fields is withdrawing

15  his motion, or not.  So I guess I'll -- I'll just address --

16  I'll address what -- what I planned to address, another couple

17  of housekeeping matters.

18    Mr. Squires who evidently isn't here today filed a motion

19  but didn't argue any of the points, so -- or even make an

20  attempt to address the standards.  So we think that should be

21  overruled.

22    Also as we -- we've pointed out in our response, most of

23  the people other than Mr. Taubitz and Ms. Industrious who

24  sought to join Mr. Quinn's motion have not in fact filed

25  notices of appeal.  So without notices of appeal as a

1  predicate there is no basis for their motions to stay pending

2  appeal.  So we think those should be overruled on those

3  grounds.

4      And so that leaves the motions filed by Mr. Fields'

5  clients, Mr. Quinn, and Messrs Williams and Aleem who

6  evidently are not here today either.  Obviously the city

7  objects to the imposition of a stay and without reiterating

8  all the points that we had in our papers, I'd like to address

9  the four factors required to be balanced in order for this

10 Court to exercise its discretion to impose a stay.  I also

11 note that the burden is on the movants to show that these

12 factors are satisfied and that the burden is higher than it

13 would ordinarily be in a preliminary injunction context

14 because these motions are being heard with the backdrop of a

15 24 day trial on the merits.

16     So first, and again I'm not going to reiterate everything

17 we said in our papers which I know Your Honor has read.  With

18 respect to the likelihood that any appellant seeking a stay

19 will prevail on the merits pending appeal.

20     The 6th Circuit in the Michigan Coalition of Radioactive

21 Material Users v Griepentrog basically likened this to

22 likelihood of reversal on appeal, or if an appellant movant

23 can show irreparable harm to -- to himself that standard can

24 be read as serious questions going to the merits.

25     So taking the three appeals, or the three movant papers

1  one by one, in the motion -- and today I really don't -- Mr.

2  Fields did not really identify for his clients what issues

3  they sought to appeal.  That there was just kind of a vague

4  reference to pension cuts.

5     And so by not identifying the issues that they seek to

6  appeal or following from that why those issues are likely to

7  be reversed on appeal, or even raise serious questions to the

8  merits they failed to carry the burden on this prong.  Now Mr.

9  Fields did file on Friday after the briefing on these motions

10 were closed, a statement of issues on appeal.  But again none

11 of those issues were mentioned in his motion and no effort was

12 made to discuss how this Court's ruling would be reserved on

13 appeal with respect to those or any other newly identified

14 issues.

15    In fact with respect to pension cuts, Mr. Fields admits

16 that the issue of whether the cuts could be made has no more

17 or had no more than a 25% chance of winning which is not

18 likelihood of reversal on appeal.  And in fact it's actually

19 not part of this Court's bench decision, or it's not part of

20 the confirmation order at all.

21    The decision about whether pensions could be cut was

22 based -- was made back in December of 2013 in this Court's

23 eligibility ruling.  And it's too late now to commence a

24 challenge to a ruling that happened a year ago.  Indeed Your

25 Honor noted this at Page 5 of the bench opinion.

1    And I quote, "in the Court's eligibility opinion it held

2  that the federal bankruptcy power could impair pension rights

3  in a municipal case, even if state constitution protects them.

4  The Court stands by that decision".  So the Court merely

5  followed a decision that it made a year ago.

6    The Court goes on to say -- Your Honor, goes on to say at

7  Page 6 of the opinion, "that you had determined as part of

8  this proceeding whether treatment of pension claims meets the

9  legal requirements for plan confirmation and settlement

10  approval".  Because the pension issues were of course settled

11  in this case.  And Your Honor did so find that it was.  That

12  the pension settlement is a reasonable settlement that borders

13  on the miraculous and that the other standards for

14  confirmation were met.

15    Similarly the confirmation order itself never addresses

16  the legal issues of whether pensions can be impaired because

17  that issue was decided a year ago.  It simply addresses the

18  treatment of the pension claims as part of the key

19  foundational settlement of the plan.  So Mr. Fields' clients

20  could not prevail on the merits of an issue that's actually

21  not even appealable because it's not addressed squarely in the

22  confirmation order.

23    With respect to the merits suggested by Messrs Williams

24  and Aleem, as we noted they referenced some vague notion of

25  fraud but they don't develop any argument or even expand on

1 that so they don't carry their burden on this point.

2      With respect to Mr. Quinn.  Mr. Quinn raises his

3 1123(a)(4) arguments again with respect to ASF recoupment, but

4 nothing -- but offers nothing more than Your Honor has already

5 heard and considered.  Again I'd note here that this Court

6 found that the ASF recoupment is part of a -- part and parcel

7 of the pension settlement.  You cannot pull out one piece of

8 the settlement and leave the other parts standing because the

9 settlement settles all issues.

10      Mr. Quinn doesn't address and offers no argument why ths

11 settlement would not -- what is likely to be reversed on

12 appeal.  Also Mr. Quinn suggests that the plan might impair

13 certain obligations of GRS but he doesn't develop this issue

14 or identify just what obligations he thinks the plan impairs.

15      To be clear as we stated in our papers, the city doesn't

16 think -- believe that the plan does this.  It doesn't affect

17 or impair any of the obligations of GRS, so we're a little

18 mystified on that point.

19      So we think as to this very critical element of the

20 factors for motions for stay pending appeal that all three

21 groups of appellants have failed to carry their burden on this

22 issue.

23      Moving to irreparable harm.  Messrs Williams and Aleem

24 did not address this issue at all.  Mr. Quinn again suggests

25 monetary harm.  He does note that the 6th Circuit finds that

1 monetary harm does not constitute irreparable harm.

2      Frankly if monetary harm could satisfy that standard in

3 bankruptcy, every single impaired claimant would suffer

4 irreparable harm but that's not the standard.  Impairment of

5 claims does not constitute irreparable harm.

6      Moreover, the plan does provide for the possibility of

7 restoration if some or all of the pension benefits as this

8 Court noted in your bench opinion at Page 5.

9      Finally, Mr. Fields' clients apparently suggest but then

10 they deny that the fact that the effective date would allow an

11 argument for equitable mootness to arise constitutes

12 irreparable harm.  Cases are split on this.  Most Courts find

13 that this issue without more is insufficient to establish

14 irreparable harm and more is not shown here.

15      Even those that would find that this constitutes

16 irreparable harm still say that you have to balance this harm

17 against the harm to the other parties in the case and third

18 parties.  So as I noted earlier, because the movants Mr.

19 Fields' clients do not even elucidate what claims of error

20 they wish to appeal or why they might be significant, we don't

21 think even under more exacting standards that this is shown.

22      But even if you assume, Your Honor, that irreparable harm

23 did exist for the appellants, it is certainly not outweighed

24 by the serious and irreparable harm to the city, it's 700,000

25 residents, and other creditors in this case.

1    First and foremost, Your Honor, if -- if the confirmation

2  order is stayed, it delays the re-investment initiatives and

3  the funding for those which would extend the inadequate

4  services that the city's 700,000 residents are already

5  receiving.  You cannot quantify the harm that inadequate

6  safety services inflict upon the citizens, it's incalculable.

7  And as Your Honor found, it's inhumane.

8    The inefficient IT systems are leading to huge

9  inefficiencies and costs of operations which is more of a

10  burden to the taxpayers.  You also cannot quantify the harm to

11  the employee morale from the frustrations that they have from

12  the inability to do their jobs properly because they have

13  insufficient resources, technology, training, and equipment.

14    Growth for the city can logically be stymied from this.

15  The stay continues this unacceptable status quo for an

16  indefinite period of time, perhaps years.

17    And testimony with respect to all of this stuff is

18  already in the record.  Your Honor heard about the harms that

19  are befalling the city and its citizenry from Mayor Duggan,

20  from Ms. Niblock, from Mr. Hill, from police Chief Craig, and

21  from fire Commissioner Jenkins.

22    Your Honor, a stay would also harm the appellants

23  themselves.  The outside pension funding is going to disappear

24  if we do not close this deal by the end of this year.  Almost

25  $1,000,000,000 in outside help to the pension funds will go

1 away if this is not closed by the end of this year.

2     This in turn would destroy the plan.  And if we had to go

3 back to the drawing board, would force even higher pension

4 cuts.  Also as the retiree committee pointed out in its

5 filing, a failure to close would jeopardize the outside

6 funding that the VEBAs are expecting if they don't receive

7 that by the end of the year.

8     And it would also jeopardize the clear continuation of

9 health care benefits for all retirees, including the

10 appellants past the end of this calendar year.   There are

11 about 150 appellants from all three groups and what they're

12 asking for is a bigger recovery on their claims.  A hundred

13 and fifty appellants should not jeopardize the pension and

14 health care of over 20,000 other retirees, especially when the

15 retiree classes voted overwhelmingly to accept this plan, 82%

16 in Class 10, 73% in Class 11, and 88% in Class 12.

17     Then we have the exit financing.  The exit financing

18 commitment had expired on November 26th, but given where we

19 were, we have an extension until December 26th.

20     If this -- if Your Honor were to enter a stay in this

21 case, an indefinite stay, it's exceedingly likely that this

22 extension of the commitment would disappear.  The lenders

23 aren't going to wait around for as long as it takes to finish

24 the appeals to figure out what the economic conditions are

25 when they decide to loan money.  And they have no obligation

1  to extend the commitment past December 26th.

2      Finally, the other creditors in this case are harmed.  If

3  the pension settlement falls apart so does the plan.  This is

4  not as Mr. Quinn suggests something where you can take out one

5  little piece of this plan and everything else stands.

6      All of these settlements are -- are basically

7  interrelated.  What the city can afford to pay for each group

8  of creditors is dependent on what the other group of creditors

9  are getting.

10      So you cannot just pull out the pension piece and expect

11  the rest of the plan to stand.  You also cannot pull out the

12  pension piece, especially without the outside funding and

13  expect the rest of this plan to stand.

14      The ASF recoupment is part of the plan.  The outside

15  funding is part of the plan.  And all of the settlements flow

16  from the funds available based on what the city can pay for

17  pensions, that dictates what they have to pay for everything

18  else.

19      So unfortunately this is not a simple uninterconnected

20  puzzle that we've put together where if you remove one piece

21  the rest of it will stay.  Finally, if this plan is stayed,

22  the city could lose and will likely lose the development

23  opportunities afforded by the FGIC and the Syncora

24  settlements.

25      All of that leads to the fourth factor which is the

1  public interest.  In this case, Your Honor, the public

2  interest almost demands the denial of a stay.  The public

3  interest factor requires the Bankruptcy Court to consider the

4  good of the case as a whole and not individual creditor's

5  investments or monetary concerns, especially if incremental

6  recoveries are expected to be modest.

7      And I would say frankly especially here where any victory

8  that the appellants might have may very well prove to be peric

9  because if they win it's more likely that their recoveries

10  will be lower than for those that exist in the plan.

11      So based on the harms to the citizenry, to the employees,

12  to the other creditors, I think Judge Gerber in GM summed up

13  this -- this case as well pretty well.  Where he said, this

14  isn't a case like Adelphia where the estates here or the

15  city's monetary loss can be quantified.  We are here faced

16  with irreparable injury.

17      Here to hundreds and thousands of third parties, the

18  residents of the city to over 20,000 retirees and to the other

19  creditors.  This is so clearly a case where a stay should not

20  issue.  Where a stay actually would harm the interests of the

21  movants.

22      But if a stay were to issue, it would also be

23  unconscionable not to require a bond and as set forth in the

24  papers, we think the bond has to be in the billions of

25  dollars.  Thank you.

1          THE COURT:  Thank you.  Any rebuttal?

2          MR. FIELDS:  Your Honor, just real briefly.

3          THE COURT:  One second.  I should ask first, is

4    there anyone else who'd like to speak against the motion?

5    We'll -- we'll get you back up, Mr. Fields.

6          MR. FIELDS:  Right.

7          THE COURT:  Sorry about that.

8          MR. ALBERTS:  Your Honor, Sam Alberts on behalf of

9    the Official committee of retirees.  We rise in opposition to

10   the motion to stay for the same reasons as stated by Ms.

11   Lennox on behalf of the city.  We agree with that.

12       I just want to highlight one point.  The -- the real

13   detrimental effect that delaying the effective date would have

14   on retirees with respect to their health care is very real and

15   there is no plan in place.  In fact the city has disavowed any

16   responsibility to retirees to provide health care beyond the

17   31st of December which would mean that if the plan doesn't go

18   into effect we may have an emergency situation, not unlike

19   last year where there was an attempt to compel the city to

20   provide health care and if the city did provide that health

21   care, we're talking about 2.7 million dollars a month for each

22   month which is harm to the city.

23       And if the city took the position that they may provide

24   it, but they would look back to the VEBAs for the payment,

25   then we're -- we have a problem with the VEBAs paying for it

1  because the VEBAs don't have that kind of liquidity.  And so,

2  you know, for that reason on top of everything else and we --

3  we attached in our papers the mechanics and -- and -- and you

4  would see in that clearly that everything is conditioned on an

5  effective date occurring by the 31st of December.

6       So for that very real reason I would add the committee's

7  support to the city and in opposition to the motions.  Thank

8  you.

9            THE COURT:  Thank you.  Sir.

10           MR. HOWELL:  Good afternoon, Your Honor.  Steven G.

11  Howell of Dickinson, Wright, Special Assistant Attorney

12  General appearing on behalf of the State of Michigan.  I'll be

13  very brief, Your Honor.

14       The state rises also to support the city's opposition and

15  to oppose the imposition of a stay.  We believe it would be

16  very detrimental to the city and the state and all involved if

17  this order is stayed in order to try to continue this forward

18  momentum as I think I've previously advised the Court.

19       The Michigan Settlement Administration Authority has

20  waived the final non-appealable requirement by December 31

21  because it's unlikely this appeal would be resolved by then

22  and the state through the Michigan Settlement Administration

23  Authority has waived that condition.

24       There are still two more that need to be satisfied

25  effective date and the entry of some orders that we have

1  signed stipulations for in our possession at Dickinson,

2  Wright.  So believe these motions should all be denied, Your

3  Honor.  Thank you.

4          THE COURT:  Thank you.  Now Mr. Fields.

5          MR. FIELDS:  Your Honor although I -- I don't agree

6  with the -- the chicken little the sky is falling approach, or

7  argument, I would like to address something Ms. Lennox said

8  about the eligibility ruling.

9      Neither the Governor's authorization for the city to file

10 Chapter 9, the emergency manager's petition to file Chapter 9,

11 or the Court's eligibility ruling impaired pensions.  The only

12 people that can propose preparing -- impairing pensions is the

13 City of Detroit.

14     And the eligibility ruling was in December.  And the

15 first plan wasn't offered until February 28th.  So therefore

16 until there's a plan confirmed, pensions have not been

17 impaired.  Once the plan was confirmed, pensions have been

18 impaired and gives the appellants rights to appeal on that

19 issue.  Thank you, Your Honor.

20         THE COURT:  Mr. Quinn, anything further?

21         MR. QUINN:  Nothing further, Your Honor.

22         THE COURT:  All right.  The Court will take this

23 matter under advisement and issue an order shortly.  Anything

24 further for today?

25         MS. LENNOX:  No, Your Honor.

1          THE COURT:  All right.  We're in recess.

2          THE CLERK:  All rise.  Court is adjourned.

3      (Court Adjourned at 2:26 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 12-3-14
    Letrice Calloway
12

13

14

15

16

17

18

19

20

21

22

23

24

25