UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

------------------------------------------------------------- x
                                                  :

In re                                                :          Chapter 9

CITY OF DETROIT, MICHIGAN,          :          Case No. 13-53846

                     Debtor.                 :          Hon. Steven W. Rhodes

------------------------------------------------------------- x

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING EIGHTH
AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE
CITY OF DETROIT AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

      **1.**      **Confirmation of the Plan and Occurrence of the Effective Date.**

      On November 12, 2014, the United States Bankruptcy Court for the Eastern District of Michigan (the "<u>Bankruptcy Court</u>") entered an order (Docket No. 8272) (the "<u>Confirmation Order</u>") confirming the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (as it may have been amended, supplemented or modified, the "<u>Plan</u>"), in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "<u>City</u>"). The Effective Date of the Plan occurred on December 10, 2014. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

      **2.**      **Discharge of Claims.**

      a.      Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, the City is discharged from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt was Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt was allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt accepted the Plan.

      b.      In accordance with the foregoing, except as expressly provided otherwise in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination, as of the Effective Date, of a discharge of all debts of the City, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge voids any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; <u>provided</u> that, in accordance with section

944(c)(1) of the Bankruptcy Code, such discharge does not apply to (i) debts specifically exempted from discharge under the Plan; (ii) debts held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case; (iii) claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983; or (iv) Claims of (A) T&T Management, Inc., (B) HRT Enterprises and (C) the John W. and Vivian M. Denis Trust related to condemnation or inverse condemnation actions against the City alleging that the City has taken private property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

   **3.   Releases.**

   a.   <u>General Releases by Holders of Claims</u>.  Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), each holder of a Claim that voted in favor of the Plan, to the fullest extent permissible under law, is deemed to forever release, waive and discharge (which release will be in addition to the release and discharge of Claims otherwise provided herein and under the Confirmation Order and the Bankruptcy Code):

   i.   all Liabilities in any way relating to the City, the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), the Plan, the Exhibits or the Disclosure Statement, in each case that such holder has, had or may have against the City or its current and former officials, officers, directors, employees, managers, attorneys, advisors and professionals, each acting in such capacity (and, in addition to and without limiting the foregoing, in the case of any Emergency Manager, in such Emergency Manager's capacity as an appointee under PA 436); <u>provided</u> <u>further</u>, for the avoidance of doubt, that any person or entity designated to manage the Chapter 9 Case for the City after the Emergency Manager's term is terminated, whether such person or entity acts as an employee, advisor or contractor to the City or acts as an employee, agent, contractor or appointee of the State under any applicable state law, shall be treated the same as an employee of the City hereunder; and

   ii.   all Liabilities in any way relating to (A) Claims that are compromised, settled or discharged under or in connection with the Plan, (B) the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), (C) the Plan, (D) the Exhibits, (E) the Disclosure Statement or (F) the DIA Settlement, in each case that such holder has, had or may have against the City's Related Entities, the State, the State Related Entities and the Released Parties; <u>provided</u>, <u>however</u>, that any such Liability of the Foundations, the DIA Funders and the CFSEM Supporting Organization and their Related Entities are released only to the extent that such Liability, if any, arises from any such entity's participation in the DIA Settlement;

<u>provided</u>, <u>however</u>, that the foregoing provisions shall not affect the liability of the City, its Related Entities and the Released Parties that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct; <u>provided</u>, <u>further</u>, that nothing in Section III.D.7.a of the Plan shall release (i) the City's obligations under the Plan or (ii) any defenses that any party may have against the City, its Related Entities, the State, the State Related Entities or the Released Parties.  Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 shall not be released.

   b.   <u>Release by Holders of Pension Claims</u>.  Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases,

agreements or documents entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), if the State Contribution Agreement is consummated, each holder of a Pension Claim is deemed to forever release, waive and discharge all Liabilities arising from or related to the City, the Chapter 9 Case, including the authorization given to file the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution that such party has, had or may have against the State and any State Related Entities. For the avoidance of doubt, the Plan does not release, waive or discharge obligations of the City that are established in the Plan or that arise from and after the Effective Date with respect to (i) pensions as modified by the Plan or (ii) labor-related obligations. Such post-Effective Date obligations shall be enforceable against the City or its representatives by active or retired employees or their collective bargaining representatives to the extent permitted by applicable non-bankruptcy law or the Plan, or, with respect to pensions only, GRS or PFRS.

Notwithstanding Sections III.D.5-7 and IV.L of the Plan, except as set forth in the COP Swap Settlement, nothing in the Plan or the Confirmation Order shall or shall be deemed to provide a release by the COP Swap Counterparties of any Liabilities related to the COPs, the COP Service Corporations, the Transaction Documents (as defined in the COP Swap Settlement), the COP Swap Settlement or the COP Swap Settlement Approval Order. For the avoidance of doubt, notwithstanding Section III.D.6 of the Plan, a vote of DWSD Bond Claims or DWSD Revolving Bond Claims in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such DWSD Bond Claims, a Holder of any such DWSD Revolving Bond Claims or the Bond Insurer insuring any such Claims of any Liabilities against the City or its Related Entities that do not arise in connection with the DWSD Bonds or the DWSD Revolving Bonds. For the further avoidance of doubt, notwithstanding anything in the Plan to the contrary, a vote of a Claim other than a DWSD Bond Claim or DWSD Revolving Bond Claim in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such voted Claim or the Bond Insurer insuring such voted Claim of any Liabilities against the City or any other Entity arising in connection with the DWSD Bonds or DWSD Revolving Bonds.

4. **Injunctions.**

**On the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order:**

**a. All Entities that have been, are or may be holders of Claims against the City, Indirect 36th District Court Claims or Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity, along with their Related Entities, are permanently enjoined from taking any of the following actions against or affecting the City or its property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property and the Related Entities of each of the foregoing, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims and (C) Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the City or its property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,**

any encumbrance of any kind against the City or its property; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the City or its property; (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth therein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 are not enjoined. In addition, all individuals affected by the ASF Recoupment are enjoined from commencing any proceeding against the GRS and its trustees, officers, employees or professionals arising from the GRS's compliance with the Plan or the Confirmation Order.

b. All Entities that have held, currently hold or may hold any Liabilities released pursuant to the Plan are permanently enjoined from taking any of the following actions against the State, the State Related Entities, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, and the Released Parties or any of their respective property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the State, a State Related Entity, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, or a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. Notwithstanding the foregoing and without limiting the injunctions in sub-paragraph 4(a) above, the Holders of Indirect 36th District Court Claims shall not be enjoined from taking any of the foregoing actions against the State or the State Related Entities with respect to Indirect 36th District Court Claims to the extent such Claims are not satisfied pursuant to the Plan.

5. **Treatment of Executory Contracts and Unexpired Leases.**

a. <u>Assumption</u>. Except for Executory Contracts and Unexpired Leases rejected in the Plan or by other court order, or as requested in any motion Filed by the City on or prior to the Effective Date, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City has been deemed to assume all Executory Contracts and Unexpired Leases to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations have not been assumed under the Plan and have been discharged. For the avoidance of doubt, the City has assumed the Tunnel Lease pursuant to Section II.D.1 of the Plan.

b. <u>Assumption of Ancillary Agreements</u>. Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 of the Plan includes any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 of the Plan or designated for rejection in accordance with Section II.D.3 of the Plan.

c. <u>Approval of Assumptions and Assignments</u>. The Confirmation Order constitutes an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 of the Plan (and any related assignment) as of the

Effective Date, except for Executory Contracts or Unexpired Leases that (a) have been rejected pursuant to a Final Order of the Bankruptcy Court, (b) are subject to a pending motion for reconsideration or appeal of an order authorizing the rejection of such Executory Contract or Unexpired Lease, (c) are subject to a motion to reject such Executory Contract or Unexpired Lease Filed on or prior to the Effective Date, (d) are rejected pursuant to Section II.D.6 of the Plan or (e) are designated for rejection in accordance with the last sentence of this paragraph.  On November 21, 2014, in accordance with the Contract Procedures Order, the City filed with the Bankruptcy Court a non-exclusive list (Docket No. 8387) (the "Non-Exclusive Plan Assumption List") of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan.  On December 5, 2014, the City filed a notice of amendment to the Non-Exclusive Plan Assumption List (Docket No. 8573).  The City has provided separate notice to each party whose Executory Contract or Unexpired Lease is identified on the Non-Exclusive Plan Assumption List of:  (a) the Executory Contract or Unexpired Lease being assumed; (b) the Cure Amount Claim, if any, that the City believes it would be obligated to pay in connection with such assumption; (c) any assignment of an Executory Contract or Unexpired Lease; and (d) the procedures for such party to object to the assumption of the applicable Executory Contract or Unexpired Lease, the amount of the proposed Cure Amount Claim or any assignment of an Executory Contract or Unexpired Lease are set forth in the Contract Procedures Order (Docket No. 6512).  **For Executory Contracts or Unexpired Leases assumed under the Plan but not identified in the Non-Exclusive Plan Assumption List, the counterparty to such an agreement must file any written objection, setting forth the basis for opposing assumption or assignment of the applicable agreement or the proposed Cure Amount Claim, no later than 20 days after the Effective Date of the Plan, i.e., December 30, 2014.**  If an objection to a proposed assumption, assumption and assignment or Cure Amount Claim is not resolved in favor of the City, the applicable Executory Contract or Unexpired Lease may be designated by the City for rejection, which shall be deemed effective as of the Effective Date.

        d. Payments Related to the Assumption of Executory Contracts and Unexpired Leases.  To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the City:  (a) by payment of the Cure Amount Claim in Cash on the Effective Date or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease.  If there is a dispute regarding:  (a) the amount of any Cure Amount Claim, (b) the ability of the City or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to the assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within 30 days following the entry of a Final Order resolving the dispute and approving the assumption.

        e. Contracts and Leases Entered Into After the Petition Date.  Contracts, leases and other agreements entered into after the Petition Date by the City, including (a) any Executory Contracts or Unexpired Leases assumed by the City and (b) the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

        f. Rejection of Executory Contracts and Unexpired Leases.  Each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 to the Plan was deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code.  The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the later of:  (a) the Effective Date or (b) the resolution of any objection to the proposed rejection of an Executory Contract or Unexpired Lease.  Each contract or lease listed on Exhibit II.D.6 to the Plan is rejected only to the extent that any such contract or lease constitutes an

Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit II.D.6 to the Plan does not constitute an admission by the City that such contract or lease is an Executory Contract or Unexpired Lease or that the City has any liability thereunder. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code.

g. **Rejection Damages Bar Date. Except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served upon counsel to the City on or before the later of: (a) 45 days after the Effective Date, *i.e.*, January 26, 2015; or (b) 45 days after such Executory Contract or Unexpired Lease is rejected pursuant to a Final Order or designated for rejection in accordance with Section II.D.3 of the Plan. Any Claims not Filed within such applicable time periods will be forever barred from receiving a Distribution from, and shall not be enforceable against, the City. Proof of claim forms and instructions for filing claims can be found at the City's restructuring website, https://www.kccllc.net/detroit.**

h. Preexisting Obligations to the City Under Rejected Executory Contracts and Unexpired Leases. Pursuant to section 365(g) of the Bankruptcy Code, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall constitute a breach of such contract or lease and not a termination thereof, and all obligations owing to the City under such contract or lease as of the date of such breach shall remain owing to the City upon rejection. Notwithstanding any applicable non-bankruptcy law to the contrary, the City expressly reserves and does not waive any right to receive, or any continuing obligation of a non-City party to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased, or services previously received, by the City from non-City parties to rejected Executory Contracts or Unexpired Leases, and any such rights shall remain vested in the City as of the Effective Date.

i. Insurance Policies. From and after the Effective Date, each of the City's insurance policies (other than welfare benefits insurance policies) in existence as of or prior to the Effective Date are reinstated and continue in full force and effect in accordance with their terms and, to the extent applicable, are deemed assumed by the City pursuant to section 365 of the Bankruptcy Code and Section II.D.1 of the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the City may hold against any Entity, including any insurer under any of the City's insurance policies. For the avoidance of doubt, nothing contained in Section II.D.9 of the Plan shall apply to reinstate or continue any obligation of the City or any fund thereof to any Bond Insurer.

6. **Payment of Administrative Claims.**

a. Administrative Claims in General. Except as specified in Section II.A.1 of the Plan, and subject to the bar date provisions therein, unless otherwise agreed by the Holder of an Administrative Claim and the City, or ordered by the Bankruptcy Court, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim either: (1) on the Effective Date or as soon as reasonably practicable thereafter; or (2) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Claim becomes an Allowed Claim. No Claim of any official or unofficial creditors' committee or any member thereof for professionals' fees or other costs and expenses incurred by such creditors' committee or by a member of such creditors' committee shall constitute an Allowed Administrative Claim, except that the Retiree Committee's members and the Retiree Committee Professionals shall be entitled to payment in accordance with the Fee Review Order and any additional fee process established by the Court.

7. **Bar Dates for Administrative Claims.**

a. <u>General Bar Date Provisions</u>. Except as otherwise provided in subparagraphs 7(b) or 7(c) below or in a Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the City no later than 45 days after the Effective Date, <u>i.e.</u>, January 26, 2015. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the City and the requesting party by the later of (i) 150 days after the Effective Date, <u>i.e.</u>, May 11, 2015 , (ii) 60 days after the Filing of the applicable request for payment of Administrative Claims or (iii) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Administrative Claims.

b. <u>Ordinary Course Claims</u>. Holders of Claims based on Liabilities incurred by the City after the Petition Date in the ordinary course of its operations are not required to File or serve any request for payment or application for allowance of such Claims. Such Claims will be paid by the City, pursuant to the terms and conditions of the particular transaction giving rise to such Claims, without further action by the Holders of such Claims or further action or approval of the Bankruptcy Court.

c. <u>Claims Under the Postpetition Financing Agreement</u>. Holders of Administrative Claims that are Postpetition Financing Claims are not required to File or serve any request for payment or application for allowance of such Claims. Such Administrative Claims will be satisfied as set forth in subparagraph 7(b) above.

d. <u>No Modification of Bar Date Order</u>. The Plan does not modify any other Bar Date Order, including Bar Dates for Claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

8. **ASF Recoupment Cash Option.**

a. <u>ASF Recoupment Cash Option Election</u>. No later than seven days following the Effective Date, <u>i.e.</u>, December 17, 2014, the City, through its Claims and Balloting Agent, will send the ASF Election Notice and the ASF Election Form by first-class U.S. mail to each ASF Distribution Recipient. The ASF Election Notice will notify ASF Distribution Recipients that each ASF Distribution Recipient may elect to pay the total amount of his or her ASF Recoupment in a single lump sum by timely returning a properly-completed ASF Election Form. The ASF Election Form will explain that the amount of the ASF Recoupment Cash Payment shall be equal to the total amount of ASF Recoupment shown on the ASF Distribution Recipient's Ballot, unless the aggregate amount of ASF Recoupment for all ASF Distribution Recipients electing the ASF Recoupment Cash Option exceeds $30,000,000, in which case (i) the ASF Recoupment Cash Payment will be the ASF Distribution Recipient's Pro Rata portion of $30,000,000, and (ii) the remaining portion of the ASF Distribution Recipient's ASF Recoupment will be annuitized and deducted from the ASF Distribution Recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan. ***An ASF Distribution Recipient must return his or her ASF Election Form to the Claims and Balloting Agent so that it is actually received by the Claims and Balloting Agent by the ASF Election Date, <u>i.e.</u>, 35 days after the date on which the ASF Election Form is mailed.***

b. <u>ASF Recoupment Cash Payment</u>. GRS will mail the ASF Final Cash Payment Notice no later than 14 days after the ASF Election Date. The ASF Final Cash Payment Notice

is a notice that will be sent to each ASF Distribution Recipient who timely elects the ASF Recoupment Cash Option, and will indicate the amount of such ASF Distribution Recipient's ASF Recoupment Cash Payment. ***ASF Distribution Recipients shall have until the ASF Final Cash Payment Date – i.e., the later of (i) 90 days after the Effective Date, i.e., March 10, 2015 or (ii) 50 days after the date of mailing of an ASF Final Cash Payment Notice – to make the ASF Recoupment Cash Payment, which payment must be made by cashier's check or wire transfer and may not be made by personal check. If an ASF Distribution Recipient's ASF Recoupment Cash Payment is not received by the ASF Final Cash Payment Date, GRS will notify the ASF Distribution Recipient of the failure to timely pay, and ASF Recoupment will be effected through diminution of such recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan.*** The calculation of each electing ASF Distribution Recipient's ASF Recoupment Cash Payment shall not be adjusted under any circumstances, including as a result of default by any other electing ASF Distribution Recipient to remit his or her ASF Recoupment Cash Payment by the ASF Final Cash Payment Date.

        **9.**     **Copies of the Plan and Confirmation Order.** Copies of the Plan, Confirmation Order and all other documents Filed in the Chapter 9 Case may be obtained, free of charge, from the City's restructuring website at https://www.kccllc.net/detroit or from Kurtzman Carson Consultants LLC by calling (877) 298-6236 (toll-free).

BY ORDER OF THE COURT

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

# CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date was filed and served via the Court's electronic case filing and noticing system on this 10th day of December, 2014.

/s/ Heather Lennox