UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
---------------------------------------------------------

In re                                                    Chapter 9

CITY OF DETROIT, MICHIGAN,                               Case No. 13-53846

　　　　　　Debtor.                                       Hon. Steven W. Rhodes

## OBJECTIONS OF CREDITORS DWAYNE PROVIENCE, RICHARD MACK, AND GERALD AND ALECIA WILCOX, INTERESTED PARTIES, TO AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

NOW COME DWAYNE PROVIENCE, RICHARD MACK, AND GERALD and

ALECIA WILCOX, interested parties and object to the *"Amended Plan for the Adjustment of*

*Debts of the City of Detroit (March 31, 2014)."* **[Dkt. #3380**]  In support of these objections, the

interested parties state the following:

1.　　　Each of the four petitioners are individuals whose lives have been adversely

affected by the unconstitutional acts of the City of Detroit ("Debtor") and its officials.  The

Petitioners have brought actions in the United States District Court for the Eastern District of

Michigan to vindicate their rights, to wit:

　　　　a.　　*Dwayne Provience v City of Detroit, et al.*, **Civ. Action No. 10-cv-11719**;

　　　　b.　　*Richard Mack v City of Detroit, et al.*, **Civ. Action No. 12-cv-10300**;

　　　　c.　　*Gerald and Alecia Wilcox v City of Detroit, et al.*, **Civ. Action No. 13-cv-41679**.

**[Exhibits 1, 2, and 3; underlying Complaints filed in the Eastern District of Michigan]**

2.　　　Each of the aforementioned complaints was filed pursuant to the Civil Rights Act

of 1871, 42 U.S.C. §§ 1983, 1985, and 28 U.S.C. § 1343.  The cases all share certain

characteristics, including:

a. **Dwayne Provience (C.A. # 10-cv-11719):** In 2001, Dwayne Provience was wrongfully convicted for the crime of second degree murder which he did not commit, resulting in almost 10 years of prison. He filed claims against the City of Detroit and its official, Sgt. David Moore, arising out of his unconstitutional wrongful conviction. Specifically, Plaintiff alleged violations of his constitutional right to due process, as set forth in the 14th Amendment and *Brady v Maryland*, 373 U.S. 83 (1963). **[See Complaint, Exhibit 1].**

b. **Richard Mack (C.A. # 12-cv-10300):** Mr. Mack was severely beaten by Detroit Police Officers Mia Nikolich and Robert Nill, after contacting police to come to the aid of his daughter, who was involved in a domestic violence incident with her then-boyfriend. Mr. Mack suffered severe back and neck injuries, resulting in multiple surgeries and life long impairments. Mr. Mack's claims against the City of Detroit and its officials implicate the 4th Amendment of the United States Constitution with the officials' use of excessive force. **[See Complaint, Exhibit 2].**

c. **Gerald and Alecia Wilcox (C. A. # 13-cv-41679):** Gerald and Alecia Wilcox filed claims against the City of Detroit and its officials, Samuel Dunigan, Eric Smigielski, and Brian Headapohl, for the unconstitutional false arrest and malicious prosecution in connection with the robbery of a Family Dollar store. Defendants knowingly arrested and jailed Gerald Wilcox because he had the same name of the suspect in the robbery. The Wilcoxes' claims implicate the 4th and 14th Amendment of the United States Constitution. **[See Amended Complaint, Exhibit 3].**

3. On July 18, 2013, the Debtor filed for an adjudication of bankruptcy, pursuant to Chapter 9 of the Bankruptcy Code. **[Dkt. #1]**

4. On July 25, 2013, this Court entered both automatic and extended Stays of Proceedings **[Dkt. #s 166 and 167].** The Stays had the effect of stopping all proceedings in the aforementioned cases.

5. To date, there has been no relief from the Stays imposed by this Court for the petitioners identified in these objections. Thus, each of the instant petitioners anticipate that the

violations of their constitutional rights, as set forth above, will never be fully vindicated.

6.      The Debtor's March 31, 2014, Amended Plan of Adjustment, specifically, Paragraph 191, proposes that § 1983 claims "are included within the definition of Other Unsecured Claims." **[Dkt. #3380, Paragraph 191]**

7.      Debtor's Amended Plan runs counter to the purpose and intent of the 14th Amendment § 1983, as explained by the Supreme Court. See *Felder v Casey*, 487 U.S. 131, 148 (1988) (recognizing that civil rights actions "belong in court") (quoting *Burnett v Grattan,* 468 U.S. 42, 50, (1984)).

8.      The Debtor's *Amended Plan of Adjustment*, **[Dkt. #3380]**, diminishes Petitioners' rights to full vindication of the egregious violations of their constitutional rights, including full compensation for their damages, as well their right to recover attorney fees and punitive damages. The Debtor's *Amended Plan* is unconstitutional to the extent that it diminishes, in any fashion, the Petitioners' constitutional rights, as well those of other petitioners who have claims arising from violations of their constitutional rights currently pending against the City of Detroit.

9.      The instant Petitioners expressly incorporate by reference the objections and reasoning set forth by Creditors, Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli, set forth in their Objections and supporting brief, filed on April 15, 2014. **[Dkt. #4099 and 4099-2, respectively]**.

WHEREFORE, for the reasons stated above, the Petitioners request that this Court provide the following relief:

    A.      Determine that the *Amended Plan* **[Dkt. #3380]** is in violation of the Fourteenth Amendment of the United States Constitution as it aplies to Petitioners herein and may apply to all persons asserting claims against the debtor pursuant to 42 U.S.C. §1983 and the United States Constitution;

B.	Issue an Order that rejects the *Amended Plan* **[Dkt. #3380]** and denies the relief sought therein as it applies to Petitioners herein and all persons asserting claims against the Debtor pursuant to 42 U.S.C. §1983 and the United States Constitution;

C.	Require the Debtor to set forth a revised Amended Plan that exempts claims brought under 42 U.S.C. §§1983 and 1988 from any resolution short of full and complete compensation, including their damages, attorney fees and punitive damages, where appropriate.

Respectfully submitted,

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

/s/Wolfgang Mueller
WOLFGANG MUELLER
Attorney for Creditors, Dwayne Provience,
Richard Mack and Gerald and Alecia Wilcox
2684 W. 11 Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
(P43728)

Date: April 22, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
----------------------------------------------------------

In re                                              Chapter 9

CITY OF DETROIT, MICHIGAN,                          Case No. 13-53846

                        Debtor.                    Hon. Steven W. Rhodes

## **EXHIBIT LIST**

Exhibit #          Description

1              Complaint in *Dwayne Provience v City of Detroit, et al.*

2              Complaint in *Richard Mack v City of Detroit, et al.*

3              Amended Complaint in *Gerald and Alecia Wilcox v City of Detroit,*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
---------------------------------------------------------

In re                                                          Chapter 9

CITY OF DETROIT, MICHIGAN,                                     Case No. 13-53846

                          Debtor.                             Hon. Steven W. Rhodes

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2014, I served the following Paper:

Objections of Creditors Dwayne Provience, Richard Mack, and Gerald
and Alecia Wilcox, Interested Parties, to Amended Plan for the
Adjustment of Debts of the City of Detroit

on the following parties:

| | | |
|---|---|---|
| David G. Heiman | Bruce Bennett | Jonathan S. Green |
| Heather Lennox | JONES DAY | Stephen S. LaPlante |
| Thomas A. Wilson | 555 South Flower Street | MILLER, CANFIELD, |
| JONES DAY | Fiftieth Floor | PADDOCK AND STONE, PLC |
| North Point | Los Angeles, CA 90071 | 150 West Jefferson |
| 901 Lakeside Avenue | bbennett@jonesday.com | Suite 2500 |
| Cleveland, OH 44114 | | Detroit, MI 48226 |
| dgheiman@jonesday.com | | green@millercanfield.com |
| hlennox@jonesday.com | | laplante@millercanfield.com |
| tawilson@jonesday.com | | |

by the following means:          the Court's ECF system.

                                 Respectfully submitted,

                                 /s/Wolfgang Mueller
                                 Attorney for Creditors, Dwayne Provience,
                                 Richard Mack and Gerald and Alecia Wilcox
                                 2684 West Eleven Mile Road
                                 Berkley, MI 48072
                                 (248) 591-2300
                                 wmueller@olsmanlaw.com
                                 (P43728)

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE PROVIENCE, individually;

        Plaintiff,

                                       No.
-v-                                    Hon.

CITY OF DETROIT, a Municipal corporation;
COUNTY OF WAYNE, a Municipal corporation;
DAVID MOORE, in his individual capacity;

        Defendants.

_____

**JULES B. OLSMAN (P28958)**
**WOLFGANG MUELLER (P43728)**
**DONNA M. MacKENZIE (P62979)**
Olsman, Mueller, Wallace & MacKenzie, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
jbolsman@olsmanlaw.com
dmackenzie@olsmanlaw.com

_____

## **COMPLAINT AND JURY DEMAND**

      NOW COMES the Plaintiff, DWAYNE PROVIENCE, individually, by and through his

attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN

and WOLFGANG MUELLER, and does hereby complain against the Defendants in this civil

action, stating unto this Court as follows:

      1.      This is an action for damages brought pursuant to 42 USC §§1983 and 1998, the

Fourth, Sixth and Fourteenth Amendments to the United States Constitution and under the

statutory and common law of the State of Michigan against Defendant, DAVID MOORE, in his

individual capacity; and the CITY OF DETROIT and COUNTY OF WAYNE.   Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

2.      Venue is proper based on the situs of the incident, which occurred in the City of Detroit.

3.      That at all pertinent times Plaintiff, DWAYNE PROVIENCE, was a resident of the City of Detroit,  State of Michigan.

4.      That the Defendant, DAVID MOORE, is a citizen of the State of Michigan and, at all times relevant hereto, was employed as a police officer for the City of Detroit Police Department, a department of the CITY OF DETROIT, a Municipal corporation.

5.      That at the time of the events alleged in this Complaint, the Defendant, DAVID MOORE, was at all times acting in his individual capacity and within the scope of his employment as a police officer employed by the Detroit Police Department and under color of law.

6.      That at all times relevant hereto, the Defendant, CITY OF DETROIT, a Municipal corporation, was the employer of Defendant, DAVID MOORE.

7.      That at all times relevant hereto, the Defendant, COUNTY OF WAYNE, a Municipal corporation, was the employer of Assistant Prosecuting Attorneys, Lamar Moreland, Vincent Toussaint, and Eric Restuccia, who at all times were acting under color of law and within the scope of their employment.

## GENERAL ALLEGATIONS

8.      On March 24, 2000, at approximately 6:30 p.m., Rene Hunter, a known drug

2

dealer, was murdered at the intersection of Greenfield Road and Pembroke Street in the City of Detroit.  Numerous witnesses at the scene saw Mr. Hunter speaking to two black males who were sitting in an older model gray 4-door Chevrolet Caprice Classic.  The passenger in the gray Caprice Classic, while still sitting in the vehicle, pulled out a hand gun and fired several shots at Mr. Hunter, fatally wounding him.  The gray Caprice, which had been facing west on Pembroke, turned right ("north") on Greenfield Avenue and then made a left turn down a nearby side street. Witnesses from the neighborhood also told the police that immediately before the shooting, Mr. Hunter had been taken from his close friend, Courtney Irving's, house on Rutherford Street, just south of Pembroke, and placed in a white Cadillac.  The white Cadillac drove away from Rutherford Street, turned right on Pembroke and headed toward Greenfield.  The white Cadillac was followed by a grey 4-door Caprice Classic occupied by Antrimone "Terry" Mosley and two other men.

9.     The numerous eyewitnesses to the Hunter shooting, including at least one off-duty Oakland County Sheriff's Department deputy, were consistent in their description of the shooters' vehicle and the direction the vehicle headed following the shooting.

10.     On or about April 24, 2000, Courtney Irving (nickname "Wease") was found murdered at the intersection of Fenmore and Pembroke in Detroit.  Several witnesses indicated a white Cadillac and gray-colored vehicle were seen firing shots into the windshield of the vehicle in which Mr. Irving was sitting.  Irving was then pulled out of the vehicle and placed into the Cadillac where he was conveyed to Pembroke and Fenmore.  His body was dumped in the street at Fenmore and Pembroke where he was again shot by a black male with two other black males standing in the street.  Two vehicles later returned and told witnesses to move away from Irving

3

and not to call the police.  The passenger of one of the vehicles then got out and fired one more

shot into the body of Mr. Irving and before driving off.

11.     Defendant, DAVID MOORE, a sergeant with the Detroit Police Department, was

the officer-in-charge ("OIC") of the Hunter murder investigation, while Sgt. Gregory Thomas

was the OIC on the Irving murder investigation.

12.     Based upon information from all the eye witnesses, as well as lengthy discussions

with police officers familiar with the neighborhood and individuals involved, a "Progress Note"

was written by Sgt. DAVID MOORE before May 15, 2000, detailing the Hunter and Irving

murders and the motive behind the murders.  The Progress Note stated, in pertinent part:

> *These to (sic) Homicide files are joined at the hip, because the two
> complainants were together when Rene got killed and Courtney
> was going to tell who and why they killed Rene.  Bangy has gotten
> a lwayer (sic) and wants to talk to us now (attorney Blank 313-
> 275-1551).  He is going to come in on Monday at 11:00 a.m.,
> 5/15/00.  Maurice Sutherland, aka Bangy has the info we need to
> close these cases.  Mr. Sutherland is the key.  He is the set up
> person on Rene Hunter's case.*
> (Progress Note, **Exhibit 1**)

13.     All of the individuals named in the Progress Note and in witness statements

obtained immediately following the Hunter and Irving murders were well known to Detroit

police officers as dealers of large amounts of marijuana in the 7 Mile/Greenfield Rd. area.  The

information obtained by the police clearly pointed to Sorrell "Reddy" Mosley and his nephew,

Antrimone "Terry" Mosley,  as the persons responsible for the Hunter murder, as Reddy Mosley

blamed Hunter for the theft of a large amount of marijuana from trucks used to transport the

drugs in connection with Mosley's drug trade.  The Mosleys lived next door to Courtney Irving.

14.     Maurice Sutherland (a/k/a "Bangy"), the man mentioned in the Progress Note as

4

being the "key" to solving the Hunter and Irving murders, was murdered during the late spring of 2000, shortly after meeting with Sgt. MOORE on May 15, 2000.

15.     Not a single witness or document following the Hunter and Irving murders ever mentioned Plaintiff, Dwayne Provience, or his brother, De-Al Provience.

16.     On June 22, 2000, Larry J. Wiley, a known crack cocaine addict with a felony criminal record going back to the 1970s, was arrested and questioned regarding a series of break-ins of numerous Jiffy Lube stores.  Mr. Wiley claimed he knew nothing about the Jiffy Lube break-ins but allegedly volunteered that he was a witness to the Rene Hunter murder.

17.     Mr. Wiley provided a written statement claiming that he was riding his bicycle in the area.  He claimed that Plaintiff, Dwayne Provience, and his brother, De-Al Provience, were driving in a "beige or yellow (Buick) Regal" and that he had seen the victim jump out of the beige or yellow Buick Regal and saw Dwayne Provience shoot the victim in the head.  Wiley further claimed that Dwayne Provience killed Rene Hunter over "some money, drug money" and that "everybody" in the neighborhood "knew" that Provience and Hunter had a "beef" over the drug money.

18.     Defendant, MOORE, the OIC in charge of the Hunter murder case, reviewed Mr. Wiley's statement.  MOORE knew that the information provided by Wiley about  Rene Hunter's actions, the shooter's  vehicle, the direction it was headed, and the motive for the killing was completely contradicted by every eyewitness to the murder and every neighborhood informant spoken to by police officers.  Wiley's story was also contradicted by the Progress Note MOORE wrote shortly before May 15, 2000 and by information provided to MOORE by beat cops familiar with the Mosleys and their drug trade.

19.     Defendant, MOORE, also knew that the "Progress Note" memo, written in early May, 2000, was apparent exculpatory evidence.

20.     On June 22, 2000, immediately following the statement by the known drug addict, Larry Wiley, De-Al Provience, was arrested.

21.     On June 25, 2000, Plaintiff, Dwayne Provience, was arrested and subsequently charged with the murder of Rene Hunter.  De-Al Provience was also charged with the Hunter murder.

22.     Vincent Toussaint was the Assistant Prosecuting Attorney handling the Preliminary Examination in the criminal case against Plaintiff.

23.     Lamar Moreland was the Assistant Prosecuting Attorney for Wayne County at the trial in the criminal case against Plaintiff.

24.     Defendant, DAVID MOORE, was in the court throughout the criminal trial of Dwayne Provience, which resulted in a verdict of guilty on the charge of second degree murder and felony firearm use following a jury trial on February 5, 2001.  De-Al Provience, who elected to have a bench trial instead of a jury, was found not guilty by the judge, Hon. Timothy Kenny. Plaintiff was sentenced to serve 32-62 years in the Michigan prison system.

25.     Larry Wiley was the only witness at trial who identified Dwayne Provience and his brother, De-Al, as being involved in the Hunter murder.

26.     Defendant, DAVID MOORE, chose not to tell the defense lawyers that Larry Wiley had been offered a deal to testify against Dwayne and De-Al Provience; namely, that he would not be prosecuted for the burglaries for which he had been jailed.

27.     Despite the Progress Note having been authored before May 15, 2000, the

document listed in Exhibit 1 was not provided to Mr. Provience's defense counsel at any time during the criminal action or during Mr. Provience's appeals of his conviction.

28.     In 2002, a known drug dealer, Eric Woods, was arrested for the murder of Courtney Irving.  He was tried before a jury, with defendant, MOORE, watching the trial.  Eric Restuccia, the Assistant Prosecuting Attorney in the case against Eric Woods, stated that Mr. Irving was murdered by Woods, who was the hired "hit man" for Antrimone "Terry" Mosley and Sorrell "Reddy" Mosley, because Irving was going to give information to the police about Rene Hunter's murder.  It was the prosecution's position that Irving knew that the Mosleys were involved in Hunter's murder and was about to give that information to the police.  "As a result of having that knowledge, the Mosleys told (Woods) that if he killed Irving, then his life would be spared.  According to the prosecution, consequently, the Mosleys orchestrated Irving's murder." *Woods v McKee*, No. 06-cv-13741, 2009 WL 804148 at *1 (E.D. Mich., Mar. 24, 2009).

29.     On August 18, 2002, Eric Woods gave a written confession to ATF Agent, Michael Yott, who was working with Detroit Police Dept. on operation "2nd Shot", to solve "cold cases."  Woods' confession detailed how Woods killed Courtney Irving at the request of Terry Mosley because Irving was going to tell the police of the Mosley's involvement in having Rene Hunter murdered.

30.      The Woods confession was not turned over to defense counsel for Dwayne Provience, despite it being apparent and material exculpatory evidence, and despite Provience's case still being on appeal.

31.     The Progress Note referenced in Exhibit 1 was provided to the Defendant, Woods, in his murder trial.  The Progress Note was never provided to counsel for Dwayne Provience.

32.     In 2006, Larry Wiley provided an affidavit in which he recanted his prior statements claiming he was at the scene of the shooting and witnessed Dwayne Provience shoot Rene Hunter.

33.     In 2009, Plaintiff's conviction was reviewed by lawyers for the Michigan Innocence Clinic, who agreed to represent him.  Their discovery of the above-referenced Progress Note and the recantation by Larry Wiley of his prior testimony, led to the filing of Motions for Relief from Judgment and a New Trial.

34.     On October 31, 2009, current Wayne County Prosecutor, Kim Worthy, was quoted in the Detroit Free Press, after learning of the Progress Note that had not been turned over to Dwayne Provience's defense counsel.  Ms. Worthy stated *"That this evidence does entitle the defendant to a new trial."*

35.     On November 3, 2009, Judge Timothy Kenny granted Dwayne Provience's motion and vacated his criminal conviction.  Judge Kenny also ordered a new trial.

36.     On March 24, 2010, the Wayne County Prosecutor's Office dismissed all charges against Plaintiff.

37.     That due to the conduct of DAVID MOORE, the CITY OF DETROIT and COUNTY OF WAYNE, as set forth below, DWAYNE PROVIENCE, has suffered the following injuries and damages:

> A.     Being wrongfully incarcerated and imprisoned for a period of over nine years;
>
> B.     Severe emotional distress for the period from his arrest to the present, including, but not limited to: the emotional distress of being charged with first degree murder and facing a possible sentence of life in prison without the possibility of parole; being wrongfully convicted; facing re-trial on

charges of first degree murder for a crime the police knew he did not commit;

C.  Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

D.  Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged and imprisoned for murder;

E.  Loss of enjoyment of daily activities including, but not limited to, seeing his children grow up;

F.  Loss of employment opportunity;

G.  Payment of significant attorney fees;

H.  Many of Plaintiff's injuries and damages are likely to be permanent;

I.  Other damages which may be revealed through discovery.

## COUNT I

## <u>CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS</u>

38.  Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

39.  Defendant, MOORE, was under an absolute legal duty to disclose to the prosecutors all exculpatory and impeachment evidence where its value was apparent, including, but not limited to, the May 15, 2000, Progress Note.  MOORE's failure to disclose the Progress Note to the prosecutors resulted in material exculpatory evidence not being turned over to Dwayne Provience's defense counsel, in violation of the State's *Brady* obligations.

40.  Defendants violated DWAYNE PROVIENCE's constitutionally-protected rights, including his right to liberty protected by the Due Process clause of the Fourteenth Amendment

9

to the U. S. Constitution, as well as his right to be free from unlawful detention without probable

cause, guaranteed by the Fourth Amendment, and his right to a fair trial, guaranteed by the Sixth

Amendment, by the following conduct :

A.  Deliberately and consciously failing to disclose material exculpatory and
impeachment evidence in their files to Plaintiff's criminal defense counsel,
pursuant to *Brady v Maryland*, 373 US 83 (1963), which would have
resulted in a finding of lack of probable cause at the preliminary exam or
an acquittal at trial including, but not limited to, the above-referenced
Progress Note, and the fact that the police and prosecutors would not
charge Larry Wiley for breaking and entering Jiffy Lube stores in
exchange for his testimony implicating Plaintiff and Plaintiff's brother,
De-al Provience in the Hunter murder;

B.  Defendant, MOORE, deliberately and consciously failed to disclose
exculpatory evidence in his files to the prosecutors, before the Preliminary
Exam and trial, which was apparent exculpatory evidence, pursuant to
*Brady, supra.*, and would have resulted in a finding of lack of probable
cause at the preliminary exam or an acquittal at trial;

C.  Defendant, MOORE, deliberately and knowingly supplied false
information and omitted information which showed a reckless disregard
for the truth in requesting an arrest warrant which was material to a finding
of probable cause;

D.  Defendant, CITY OF DETROIT, created policies, practices and customs,
including a failure to provide adequate training to its police officers,
including Defendant, MOORE, regarding the police department's
constitutional obligation to turn over apparent exculpatory and
impeachment evidence to the prosecutors, which demonstrated "deliberate
indifference" to the constitutional rights of its citizens, and was the
moving force behind Defendant, MOORE's violations of Plaintiff's
constitutional rights;

F.  Defendant, COUNTY OF WAYNE, created policies, practices and
customs, including a failure to provide adequate training to its prosecutors,
regarding the government's constitutional *"Brady"* obligation to turn over
material exculpatory evidence to the criminal defendant and his counsel,
which demonstrated "deliberate indifference" to the constitutional rights of
its citizens, and was the moving force behind individual prosecutors'
violations of Plaintiff's constitutional rights.

10

G.   Defendant, COUNTY OF WAYNE, refused to dismiss murder charges against Plaintiff, from the time of the Order for a New Trial through March 24, 2010, despite knowledge of Larry Wiley's recantation of his prior testimony, and his recantation of his recantation, such that there was no probable cause to believe that Plaintiff had committed the criminal act in question, i.e., the facts and circumstances were not sufficient to warrant a prudent person, or one of reasonable caution, in believing that Plaintiff had committed the crime in question, and there was an absence of sufficient admissible evidence to support a conviction.  COUNTY OF WAYNE's actions, through its chief-policymaker for the Office of Prosecutor, Kym Worthy, violated Plaintiff's constitutional rights to Due Process and to be free from illegal seizure and displayed deliberate indifference to Plaintiff's constitutional rights.

H.   COUNTY OF WAYNE's decision to illegally continue prosecution and detention of Plaintiff from November 3, 2009, through March 24, 2010, despite lack of probable cause, was made by Prosecutor Kym Worthy, the individual with final policy-making authority for the Office of Prosecutor, and represented official government policy regarding the prosecution of Plaintiff.

I.   Other acts of constitutional violations that will be discovered through the process of discovery.

41.   The constitutional rights which were violated by Defendants, as set forth above, were clearly established before June 25, 2000.

42.   That as a direct and proximate result of the Defendants' willful violation of DWAYNE PROVIENCE's constitutionally protected rights, Plaintiff was detained without probable cause, charged with two crimes he did not commit, and wrongfully convicted and imprisoned, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such compensatory damages as are available pursuant to federal law. Plaintiff further seeks punitive damages pursuant to 42 USC §1983 as to the individual Defendant, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

11

## COUNT II

## MALICIOUS PROSECUTION BY DEFENDANT DAVID MOORE

43.    Plaintiff incorporates by reference each preceding paragraph as if fully stated

herein.

44.    Defendant, MOORE, initiated criminal prosecution against Plaintiff in state court.

45.    The criminal proceedings ultimately terminated in his favor with a dismissal of

the charges in state court.

46.    MOORE initiated the prosecution by deliberately stating false and misleading

facts in his Request for Warrant, which were relied upon by the Wayne County Prosecutor's

Office.  MOORE showed reckless disregard for the truth; namely that the police knew the Hunter

murder was related to the theft of drugs belonging to a well-known drug gang in the area, and had

nothing to do with Plaintiff.  Defendant, MOORE, knew that disclosing the information

contained in the Progress Note to the prosecutor would result in a finding of lack of probable

cause to arrest.

47.    The prosecution was undertaken without probable cause, as well as with malice

and to charge someone with the unsolved murder, not with the intention of bringing Plaintiff to

justice for having committed the alleged murder, especially as Detroit police officers familiar

with the neighborhood and the Mosley drug gang's operations, had informed Defendant,

MOORE, that Plaintiff was not connected to the Hunter murder and that Hunter was killed by the

Mosleys for having stolen a load of marijuana from in front of their house.

48.    As a direct and proximate result of Defendant's malicious prosecution, Plaintiff

was charged and convicted for two crimes he did not commit, causing him to suffer the injuries

12

and damages set forth above.

WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, as well as treble damages pursuant to MCL 600.2907, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT III

### GROSS NEGLIGENCE OF DEFENDANT  DAVID MOORE

49.     Plaintiff incorporates by reference each preceding paragraph as if fully stated herein.

50.     Defendant, MOORE, was at all times, under a duty to act reasonably to avoid causing injury with respect to Dwayne Provience's constitutional rights in his criminal case.

51.     Defendant's conduct, by deliberately concealing and failing to disclose the above-described Progress Note, and other apparent exculpatory and impeachment evidence, breached that duty and demonstrated "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

52.     Defendant's conduct constitutes gross negligence as defined in MCL §691.1407(7)(a) and is an exception to the defense of governmental immunity.

53.     Defendant's conduct was the proximate cause of Plaintiff's injuries and damages set forth above.

WHEREFORE, Plaintiff, DWAYNE PROVIENCE, prays for such damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

13

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Jules B. Olsman (P28958)
jbolsman@olsmanlaw.com
Wolfgang Mueller (P43728)
wmueller@olsmanlaw.com
Donna MacKenzie (P62979)
dmackenzie@olsmanlaw.com
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300

Dated: April 28, 2010

## JURY DEMAND

Plaintiff, DWAYNE PROVIENCE, by and through his attorneys, OLSMAN, MUELLER,

WALLACE & MacKENZIE, P.C., by JULES B. OLSMAN and WOLFGANG MUELLER,

demands a jury trial in the instant matter.

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Jules B. Olsman (P28958)
jbolsman@olsmanlaw.com
Wolfgang Mueller (P43728)
wmueller@olsmanlaw.com
Donna MacKenzie (P62979)
dmackenzie@olsmanlaw.com
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300

Dated:  April 28, 2010

14

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD MACK, individually,

       Plaintiff,

                                      No.

-v-                                      Hon.

CITY OF DETROIT, a Municipal corporation;
OFFICER MIA NIKOLICH, individually; and
OFFICER R. NILL, individually;

       Defendants.

**WOLFGANG MUELLER (P43728)**
**DONNA M. MacKENZIE (P62979)**
Olsman, Mueller, Wallace
& MacKenzie  P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com
dmackenzie@olsmanlaw.com

## **COMPLAINT AND JURY DEMAND**

      NOW COMES the Plaintiff, RICHARD MACK, individually, by and through his

attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., by WOLFGANG

MUELLER, and does hereby complain against the Defendants in this civil action, stating

unto this Court as follows:

      1.     This is an action for damages brought pursuant to 42 USC §§1983 and

1998, the Fourth and Fourteenth Amendments to the United States Constitution and

under the common law of the State of Michigan against Defendant, Officer R. NILL, in

his individual capacity, Officer MIA NIKOLICH, in her individual capacity, and the CITY of DETROIT, the individual Defendants' employer.

2.  Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

3.  Venue is proper based on the situs of the incident, which occurred in the City of Detroit.

4.  That at all pertinent times Plaintiff, RICHARD MACK, was a citizen of the State of Michigan.

5.  That the Defendant, Officer R. NILL, is a citizen of the State of Michigan and was, at all times relevant hereto, employed as a police officer for the City of Detroit Police Department, a department of the CITY of DETROIT, a Municipal corporation.

6.  That the Defendant, Officer MIA NIKOLICH, is a citizen of the State of Michigan and was at all times relevant hereto, employed as a police officer for the City of Detroit Police Department, a department of the CITY of DETROIT, a Municipal corporation.

7.  That on April 23, 2011, at the time of the events alleged in this Complaint, the Defendants, Officers R. NILL and MIA NIKOLICH, were at all times acting in their individual capacities and within the scope of their employment as police officers employed by the Detroit Police Department and under color of law.

8.  That at all times relevant hereto, the Defendant, CITY OF DETROIT, was the employer of Defendants, NILL and NIKOLICH.

9.      That on or about April 23, 2011, Easter Sunday, shortly before 11:00 a.m., Plaintiff was contacted by his daughter, who was living in an apartment at 19265 Shiawassee, that she shared with her boyfriend.  She told Plaintiff that her boyfriend was armed with weapons and threatened to harm her, as she was moving out of the apartment.  At 10:57 a.m., Plaintiff made a call to 911 to advise the Detroit Police Department of the situation and proceeded to the gated complex.

10.      As Plaintiff waited outside the security gate, a police car pulled up, with two police officers inside. The officers were Defendant, Nikolich, and her partner, Officer Scott Tofil.   Plaintiff signaled them over to explain that he was the person who made the 911 call.  He pointed them in the general direction of the apartment, as Plaintiff was somewhat unfamiliar with the complex.

11.      Shortly thereafter, as Plaintiff waited in his car, another squad car pulled up, with defendant, R. Nill, and another officer.  Plaintiff told the two officers that he was the one who had called 911.  The male officer, Nill, asked how to get to the apartment.  Plaintiff responded *"I'm not sure, I've only been here once."*  Officer Nill then told him to show them the way.  When Plaintiff, who was concerned about the armed gunman, responded *"I'd rather not, I'm not sure where the apartment is",* Officer Nill replied *"Let's go",* as if commanding him to show them the way.

12.      Despite their having been informed of an armed person in the apartment, Officer Nill and his partner, a female officer, had Plaintiff lead the way up the apartment stairs and onto a balcony on the second floor.  Plaintiff's daughter appeared, telling Plaintiff and the officers that her boyfriend had assaulted her, showing Plaintiff bruises

on her neck.  Officer Nikolich was standing in the hallway speaking to Plaintiff's daughter, Alicia, and taking notes while officer Tofil was inside.  Plaintiff's daughter had already showed Officer Tofil where two guns were located.

13.   Suddenly and without warning, Officer Nill, who was standing behind Plaintiff, violently grabbed Plaintiff in a choke hold and threw him to the ground.  Plaintiff fell into Defendant, Nikolich.  Nikolich then charged at Plaintiff, who was on the ground, and kneed him at least twice in the neck and torso.  Other residents of the apartments, who had seen the incident unfold, screamed at the officers to stop the attack on Plaintiff.

14.   The officers placed Plaintiff in handcuffs, and escorted him to the back of the squad car, with the male officer, Nill, bragging to the female officer, *"That's how you do a choke hold, baby; twist the neck and the body will follow."*

15.   Officer Nill also told Plaintiff that he was under arrest for assaulting a police officer, while Officer Nikolich repeatedly called Plaintiff a *"punk" and "You goin' to jail. . . You come up here like Billy Badass, wanting to get all bad and shit after we got everything under control. . . When we pulled up, your punk ass was sitting in the car, Mr. Wannabe big and bad!"*  Nikolich also repeatedly called Plaintiff's daughter, Alicia, a "bitch" and "whore."

16.   Plaintiff was taken to the police precinct in handcuffs.  While at the station, when police supervisors heard what had happened, Plaintiff was not charged with assaulting a police officer.  Instead, he was charged with interfering with police officers in the performance of their duties, a misdemeanor.  Defendant, Mikolich's incident

report simply noted that *"Richard Mack, B/M . . . was issued a citation for interfering with a police investigation by P.O. Nill who made our scene for moral support."*

     17.    As a direct and proximate result of Defendants, Nill and Nikolich's assault and battery, Plaintiff suffered the following injuries and damages:

        A.    Herniated discs in the lumbar vertebrae, which will require surgery;

        B.    Fracture of the little finger in his right hand;

        C.    Contusions about the neck and torso from being kneed;

        D.    Tremendous pain and suffering;

        E.    Incurring significant medical bills;

        F.    Fright, shock, humiliation and embarrassment;

        G.    Severe emotional distress;

        H.    Other damages which may yet be undiscovered and may be permanent.

     18.    Defendants, Nill and Nikolich recklessly or intentionally misrepresented the events of April 23, when their reports did not describe the incident giving rise to the citation issued by Defendant, Nill, and failed to note that force was used on Plaintiff during the incident.

     19.    Plaintiff subsequently lodged a formal citizen's complaint with the Detroit Police Department.  He was later summoned to police headquarters, where he identified Officers Nill and Nikolich from a photo lineup, as part of the Internal Affairs Force Investigation Unit's investigation of the incident, Case # 11-081.

     20.    On September 22, 2011, Commander Brian Stair wrote to Plaintiff, and stated *"An investigation by Internal Affairs was conducted regarding your complaint of*

*Assault and Battery/Demeanor and concluded with a finding of **"SUSTAINED."***

*Furthermore, this matter has been forwarded to Disciplinary Administration for*

*Adjudication."*

21.    As a direct and proximate result of Defendants, Nill and Nikolich's conduct in covering up and misrepresenting the actual event, causing Plaintiff to be charged with a crime, Plaintiff suffered the following injuries and damages:

    A.    Being handcuffed and taken away to the police station in front of his daughter;

    B.    Extreme humiliation and embarrassment;

    C.    Severe emotional distress from being charged with a crime for the first time in his life;

    D.    Incurring legal expenses for attorney fees and bond; and

    E.    Other injuries and damages that may be discovered in the course of the lawsuit.

## <u>COUNT I</u>

### <u>CONSTITUTIONAL VIOLATIONS BY DEFENDANTS,<br>R. NILL, MIA NIKOLICH, AND THE CITY OF DETROIT</u>

22.    Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

23.    Defendants violated RICHARD MACK's constitutionally-protected rights, including:

    A.    His right to liberty protected in the substantive components of the Due Process clause of the Fourteenth Amendment to the U. S. Constitution, including his right to personal safety and bodily integrity, as well as protection from unreasonable seizure, pursuant to the Fourth Amendment;

6

B.    Defendants, NILL and NIKOLICH'S conduct was objectively unreasonable, as Plaintiff was unarmed and did not pose any threat of injury to Defendant or others, and did nothing to provoke the savage attack;

C.    Plaintiff's right to be free from assault and battery by a police officer when Plaintiff was unarmed and did not provoke the attack, was clearly established as of April 23, 2011;

D.    Defendant, CITY OF DETROIT, acting under color of state law, authorized, tolerated, ratified, permitted, and/or acquiesced in the creation of policies, practices and customs, including inadequate training, especially in making decisions on the use of less-lethal force, which was the moving force behind the individual defendants' violation of Plaintiff's constitutional rights and demonstrated "deliberate indifference" to the constitutional rights of its citizens;

E.    Defendant, CITY OF DETROIT, acting under color of state law, authorized, tolerated, ratified, permitted, and/or acquiesced in the creation of policies, practices and customs, involving fabrication of police reports to create probable cause to charge victims of police assaults with crimes, including assaulting a police officer and interfering with officers in the performance of their duties, which was the moving force behind the individual defendants' violation of Plaintiff's constitutional rights and demonstrated "deliberate indifference" to the constitutional rights of its citizens;

F.    Defendants, NILL and NIKOLICH, deliberately and knowingly supplied false information and omitted information in their police reports, in order to manufacture probable cause for Plaintiff to be charged with a crime.  Such conduct violated Plaintiff's Fourth Amendment rights, which were clearly established as of April 23, 2011, and constitutes malicious prosecution under federal law;

G.    Other acts of constitutional violations that will be discovered through the process of discovery.

24.    That as a direct and proximate result of the Defendants' willful violation of

RICHARD MACK's constitutionally protected rights, Plaintiff suffered the injuries and

damages set forth above.

7

WHEREFORE, Plaintiff, RICHARD MACK, prays for such compensatory damages as are available pursuant to Michigan law. Plaintiff further seeks punitive damages pursuant to 42 USC §1983 as to the individual Defendants, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court; wherefore, he brings this suit.

## COUNT II

### STATE LAW ASSAULT AND BATTERY BY DEFENDANT OFFICERS R. NILL AND MIA NIKOLICH

25.     Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

26.     Defendants, Officers R. NILL and MIA NIKOLICH, intentionally choked and beat Plaintiff, who had not provoked such an attack, as he was directing the officers to his daughter's apartment, at the officers' request.  RICHARD MACK did not consent to Defendant's use of force and his invasion of his bodily integrity.   Defendants' conduct constitutes assault and battery under the law of the State of Michigan.

WHEREFORE, Plaintiff, RICHARD MACK, prays for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan,  together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court; wherefore, he brings this suit.

## COUNT III

### STATE LAW MALICIOUS PROSECUTION BY DEFENDANT R. NILL

27.     Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

28.     Defendant, NILL, initiated and continued criminal prosecution against Plaintiff in state court.

29.     The criminal proceedings ultimately terminated in Plaintiff's favor with a dismissal of the charges in state court.

30.     Defendant initiated and carried out the prosecution, deliberately, and, with reckless disregard for the truth, withheld material evidence from the Prosecutor.

31.     The prosecution was undertaken with malice and to protect NILL and NIKOLICH, as it was apparent that they assaulted and battered Plaintiff, who had done nothing to provoke the beating.  The prosecution was not undertaken with the intention of bringing Plaintiff to justice for having committed any crime.  Instead, it was undertaken to cover up and justify their senseless attack on Plaintiff.

32.     As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged with a crime, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, RICHARD MACK, prays for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, as well as treble damages pursuant to MCL 600.2907, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

## COUNT IV

### STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANTS, NILL AND NIKOLICH

33.     Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

34.     Defendants, NILL and NIKOLICH, intentionally misrepresented the facts surrounding the incident, in order to conceal the unprovoked beating by Defendants and in order to establish probable cause to arrest Plaintiff.   Moreover, Defendant, NIKOLICH's demeaning and derogatory post-incident comments to Plaintiff and his daughter were intentional and meant to, and did, cause emotional distress to Plaintiff.

35.     Defendants' conduct went beyond all possible bounds of decency and was intended to, and did, cause emotional distress.

36.     Defendants' conduct would be regarded as atrocious and utterly intolerable in a civilized community.

37.     Each individual Defendant's conduct was a proximate cause of Plaintiff's injuries and damages set forth above.

WHEREFORE, Plaintiff prays for such compensatory and exemplary damages as are available pursuant to the common-law of the State of Michigan, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

OLSMAN, MUELLER, WALLACE
& MACKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
wmueller@olsmanlaw.com
Donna MacKenzie (P62979)
dmackenzie@olsmanlaw.com
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300

Dated: January 23, 2012

10

**JURY DEMAND**

Plaintiff, RICHARD MACK, by and through his attorneys, OLSMAN, MUELLER, WALLACE & MACKENZIE, P.C., by WOLFGANG MUELLER, demands a jury trial in the instant matter.

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
wmueller@olsmanlaw.com
Donna MacKenzie (P62979)
dmackenzie@olsmanlaw.com
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300

Dated: January 23, 2012

11

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD WILCOX, individually; and
ALECIA WILCOX, individually;

       Plaintiff,

                                No.    2:13-cv-11679

-v-                              Hon. Arthur J. Tarnow

CITY OF DETROIT, a Municipal corporation;
SAMUEL DUNAGAN, in his individual capacity;
ERIC SMIGIELSKI, in his individual capacity; and
BRIAN HEADAPOHL, in his individual capacity;

       Defendants.

_____

**WOLFGANG MUELLER (P43728)**
Olsman, Mueller, Wallace &
MacKenzie, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com

_____

### <u>FIRST AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND</u>

      NOW COME the Plaintiffs, GERALD WILCOX and ALECIA WILCOX,

individually, by and through their attorneys, OLSMAN, MUELLER, WALLACE &

MacKENZIE, P.C., by WOLFGANG MUELLER, and do hereby complain against the

Defendants in this civil action, stating unto this Court as follows:

      1.     This is an action for damages brought pursuant to 42 USC §§1983 and

1998, the Fourth and Fourteenth Amendments to the United States Constitution and

under the statutory and common law of the State of Michigan against Defendants,

SAMUEL DUNAGAN, in his individual capacity; ERIC SMIGIELSKI, in his individual

capacity; BRIAN HEADAPOHL, in his individual capacity; and the CITY OF DETROIT, a municipal corporation.   Jurisdiction is founded upon 28 USC §1331 and 28 USC §1343 and upon the pendent jurisdiction of this Court to adjudicate claims arising under Michigan law.

2.      Venue is proper based on the situs of the incident, which occurred in the City of St. Clair Shores and City of Detroit.

3.      That at all pertinent times Plaintiffs, GERALD WILCOX and ALECIA WILCOX, were residents of the City of St. Clair Shores, State of Michigan.

4.      That the Defendants, SAMUEL DUNAGAN, ERIC SMIGIELSKI, and BRIAN HEADAPOHL, were citizens of the State of Michigan and, at all times relevant hereto, were employed as  police officers for the City of Detroit Police Department, a department of the CITY OF DETROIT, a Municipal corporation.

5.      That at the time of the events alleged in this Complaint, the individual Defendants were at all times acting in their individual capacities and within the scope of their employment as police officers employed by the Detroit Police Department and under color of law.

6.      That at all times relevant hereto, the Defendant, CITY OF DETROIT, a Municipal corporation, was the employer of the individual Defendants.

## GENERAL ALLEGATIONS

7.      On January 30, 2013, at approximately 5:58 p.m., the Family Dollar store, located at 15495 Schaefer in Detroit, was robbed by a man employees described as being African-American, approximately 6'0", 250 – 300 pounds, in his early-to-mid-twenties, with a bushy afro and mustache.  He was wearing a black hooded jacket with

a partial ski mask covering his mouth.  The robber, who had a pistol in his hand, escaped with approximately $75 and drove away in a blue Dodge Durango.

8.      A retired police officer, Pride Johnson, was in the Family Dollar parking lot at the time of the robbery.  He got a good look at the robber and followed the robber's vehicle as it sped away.  Mr. Johnson was able to record the license plate of the vehicle, #CCJ44792.

9.      Mr. Johnson reported the information to the Detroit police officers who responded to the crime scene.  Mr. Johnson described the robber as being in his early 20's, approximately 6'0", 300 pounds, with a large afro haircut and medium complexion.

10.     Armed with the license plate number of the getaway vehicle, police were able to track the vehicle to a house in Detroit, where they interviewed the owner of the vehicle, Beatrice McKinney.

11.     Ms. McKinney told police officers that her nephew, Gerald Wilcox, who had been staying with her for a few days, had taken the keys to the vehicle that day. Ms. McKinney also told police she had a license to carry a pistol. When she showed the officers the location of her pistol, they discovered it was missing.  Ms. McKinney told the officers that Gerald must have taken the pistol as well.

12.     Ms. McKinney described her nephew, Gerald Wilcox, to the police as follows:  a black male, 22-23 years old, 250 to 270 pounds, brown complexion, full beard with mustache.

13.     Defendant, SAMUEL DUNAGAN, a sergeant with the Detroit Police Department, was the officer-in-charge ("OIC") of the Family Dollar robbery investigation. Also involved in the investigation was Sgt. Diaz Graves.

14.     Incredibly, despite all of the eyewitnesses to the crime describing the robber as being in his early twenties to thirty years old, and Beatrice McKinney telling police that her nephew, Gerald Wilcox, was 22-23 years old, the police report issued by Officer Melissa Adams at 7:32 p.m. on the night of the robbery, described suspect Gerald Wilcox as being 45 years old. Similarly, police officer Charles Racz, who took the information from Beatrice McKinney, filed his initial police report at 8:11 p.m. on the night of the robbery, also described suspect Gerald Wilcox as being 45 years old.

15.     Having the name and description of the suspect, Gerald Wilcox, Sgt. Diaz Graves alerted police officer, Defendant, ERIC SMIGIELSKI, of the situation. Defendant, SMIGIELSKI, and his partner, Defendant, BRIAN HEADAPOHL, ran a LEIN/Crisnet search of the name, Gerald Wilcox. They located a Gerald Wilcox, 43 years old, 5'10", 300 pounds, living in St. Clair Shores.

16.     Plaintiff, Gerald Wilcox, 43 years old, resides in St. Clair Shores with his wife, Alecia, and three children. His children range in age from 19 to 8 years old. He has been retired from the City of Detroit Water Dept. since 2002, when he took a duty-disability retirement. His only contact with the criminal justice system occurred 24 years ago, when he was 19 and was charged with driving on a suspended license.

17.     On January 31, 2013, at approximately 1:45 p.m., with the authorization and consent of Defendant, DUNAGAN, but without a search warrant or arrest warrant, Defendants, SMIGIELSKI and HEADAPOHL, went to Plaintiffs' home in St. Clair Shores, with four other Detroit police officers. The officers were there for the purpose of arresting Gerald Wilcox.

4

18.     The officers knocked on Plaintiffs' door, which was opened by the Wilcox's 15 year-old son.  Plaintiff, Alecia Wilcox, Gerald Wilcox's wife, also came to the door. Mrs. Wilcox repeatedly inquired why the police wanted to know where Gerald Wilcox was, and refused the police entrance until they answered her questions.  The officers refused to tell Mrs. Wilcox the reason for their presence.

19.     When Plaintiff, Gerald Wilcox, came out of a back bedroom in shorts and walked into the living room, the police officers intentionally and deliberately barged into the house, without consent and with guns drawn.  They pointed their pistols at Gerald Wilcox and his son.

20.     Defendants, SMIGIELSKI and HEADAPOHL, then arrested Plaintiff, Gerald Wilcox, and took him to the precinct lockup in Detroit.  He was not allowed to make a telephone call and was not informed of the charges against him until February 2, 2013.

21.     On February 1, 2013, while Gerald Wilcox was sitting in a precinct jail cell, Defendant, DUNAGAN, oversaw a photo lineup, showing Plaintiff and five other individuals, all in their early-to-mid forties, to the three Family Dollar store employees who encountered the robber.

22.     Employee, Lashawnda Everett, picked out Plaintiff from the lineup. Employees, Cynthia Jackson and David Windon, both affirmatively told DUNAGAN that the robber was not in the photo array.

23.      On February 2, 2013, defendant, DUNAGAN, filed his Investigator's Report, seeking an arrest warrant for Plaintiff on two counts of armed robbery, as the robber had pointed his pistol at two employees and threatened to kill them, as well as a

felony firearm charge.  Each armed robbery count carried a penalty of up to life in prison.

24.    In his Investigator's Report, DUNAGAN stated that *"the aunt (Beatrice McKinney) stated her nephew Gerald Wilcox B/M took her vehicle keys without her permission and left the house on foot in an unknown direction."*

25.    DUNAGAN deliberately, or with reckless disregard for the truth, did not mention that Beatrice McKinney described her nephew, Gerald Wilcox, as 22 or 23 years old, not 43 years old, the age of the Gerald Wilcox who had just been arrested.

26.    In his Investigator's Report, DUNAGAN stated *"OIC (Officer-in-Charge) held photo show ups with defense attorney Susan Dunn, overseen (sic) the lineup and victim teller #1 Lashawnda Everett identified suspect Gerald Wilcox as the person who robbed her at gunpoint on 1/30/13."*

26.    In his Investigator's Report, DUNAGAN deliberately, or with reckless disregard for the truth, did not mention two store employees who had viewed the photo array, Cynthia Jackson and David Windon, affirmatively denied that the robber was included in the photographs.

27.    Also on February 2, DUNAGAN showed a picture of Plaintiff, Gerald Wilcox, to Beatrice McKinney, and asked if she knew the person in the photo.  Ms. McKinney responded, *"No."* Ms. McKinney told DUNAGAN that the man depicted in the photograph was not her relative.  Thus, on February 2, 2013, the day the arrest warrant request was filed, DUNAGAN, the OIC of the case, knew that the police had arrested the wrong Gerald Wilcox.

28.     Once Beatrice McKinney told Defendant, DUNAGAN, that the photo of Plaintiff, Gerald Wilcox, was not her nephew, DUNAGAN told her that he had interviewed the Plaintiff in jail, believed his claim of innocence, and that they had arrested the wrong man.  He further told Beatrice McKinney that they let Gerald Wilcox go free.

29.     Despite the knowledge that the police officers had arrested the wrong Gerald Wilcox, DUNAGAN chose not to disclose that fact to the Wayne County Prosecutor's office, or the magistrate who approved the arrest warrant, prior to Plaintiff's arraignment on February 3.  Due to the severity and violent nature of the crime, a $100,000 cash bond was set by the magistrate.  Plaintiff, who was unable to come up with $100,000 cash, was remanded to the Wayne County Jail.

30.      The Preliminary Examination was scheduled for February 15, 2013.  It was adjourned to February 21 at the request of the prosecutor, but not before Judge Shannon Holmes of the 36th District Court ascertained the rudimentary facts of the case. Judge Holmes asked Defendant, DUNAGAN, whether anyone had confirmed with Beatrice McKinney that the Gerald Wilcox who had been arrested was, in fact, her relative.  For the first time, Defendant, DUNAGAN, disclosed that he showed Ms. McKinney a photo of the Defendant, and she confirmed that it was not her relative. Judge Holmes, highly upset, lowered Plaintiff's bond from $100,000 cash to a $10,000 personal bond.

31.     The Preliminary Exam was further rescheduled at the request of the Prosecutor's Office and due to a court scheduling conflict, and ultimately did not take place until March 7, 2013.

32.     On March 7, 2013, witness Pride Johnson, the retired police sergeant, came to court.  When he saw the defendant, he told Defendant, DUNAGAN, and the prosecutor that Plaintiff was not the robber.  Charges were immediately dismissed by the prosecutor.

33.     Due to the conduct of defendants, SAMUEL DUNAGAN, ERIC SMIGIELSKI and BRIAN HEADAPOHL, and the CITY OF DETROIT, as set forth below, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, have suffered the following injuries and damages:

      A.    Being wrongfully arrested in front of family members and incarcerated for a period of 16 days;

      B.    Plaintiffs' severe emotional distress for the period from Gerald's arrest to the present, including, but not limited to: the emotional distress of being charged with two counts of armed robbery and facing a possible sentence of life in prison for a crime the police knew he did not commit;

      C.    Physical manifestations of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

      D.    Fright, shock, indignity, humiliation and embarrassment of being wrongfully charged and jailed for armed robbery;

      E.    Payment of significant attorney fees;

      F.    Many of Plaintiffs' injuries and damages are likely to be permanent;

      G.    Other damages which may be revealed through discovery.

## COUNT I
## CONSTITUTIONAL VIOLATIONS BY ALL DEFENDANTS

34.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

35.     The individual Defendants  were under a legal obligation, secured by the United States' Constitution, and particularly the Fourth Amendment, to refrain from unlawfully seizing and arresting Gerald Wilcox without probable cause and entering his home for the purpose of arresting him, without an arrest warrant, without consent, and absent exigent circumstances.  They were under further legal duty to refrain from making false and or materially misleading statements in a request for arrest warrant, which would be relied upon by the prosecutor and magistrate judge in making probable cause determinations for an arrest warrant to be issued.

36.     Defendants violated GERALD WILCOX's constitutionally-protected rights, including his right to liberty protected by the Due Process clause of the Fourteenth Amendment to the U. S. Constitution, as well as his right to be free from unlawful detention without probable cause, guaranteed by the Fourth Amendment, by the following conduct :

> A.     Defendants, SMIGIELSKI and HEADAPOHL, deliberately and wrongfully seized and arrested Gerald Wilcox without probable cause, and entered Plaintiffs' home for the purpose of arresting Gerald Wilcox, without probable cause, without consent, and absent exigent circumstances;
>
> B.     Defendant, DUNAGAN, is liable for federal malicious prosecution, a violation of the Fourth Amendment, as he deliberately and intentionally, or with reckless disregard for the truth, made false statements and/or material omissions in his Investigator's Report in order to obtain probable cause, which was relied upon by the Wayne County Prosecutor's Office in issuing an arrest warrant, and the magistrate in approving the warrant; and further made, influenced, or participated in the decision to prosecute Plaintiff; there was a lack of probable cause for the prosecution; and, as a result of the prosecution, Plaintiff suffered a deprivation of liberty, as set forth above.
>
> C.     Defendant, DUNAGAN, deliberately withheld from the Prosecutor and Defendant's counsel, the fact that on February 2, Beatrice

9

McKinney had told DUNAGAN that the Gerald Wilcox in custody was not her relative, Gerald Wilcox;

D.     Defendant, DUNAGAN, deliberately withheld from the Prosecutor the fact that on February 1, store employees, Cynthia Jackson and David Windon, had affirmatively stated to Defendant, DUNAGAN, that the robber was not one of the individuals depicted in the photo lineup;

E.     Defendant, CITY OF DETROIT, created policies, practices and customs, including a failure to provide adequate training to its police officers, including the individual defendants, regarding the police department's constitutional obligation to arrest an individual only with probable cause, and to refrain from entering an individual's home for the purpose of arrest, without first having an arrest warrant, or consent of the homeowner, or exigent circumstances; turn over apparent exculpatory and impeachment evidence to the prosecutors; or to be truthful with the prosecutor in participating in the initiation of criminal charges; all of which demonstrated "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendants' violations of Plaintiff's constitutional rights;

F.     Other acts of constitutional violations that will be discovered through the process of discovery.

37.    The constitutional rights which were violated by Defendants, as set forth above, were clearly established before January 31, 2013.

38.    That as a direct and proximate result of the Defendants' willful violation of GERALD WILCOX's constitutionally protected rights, Plaintiff was detained without probable cause, charged with two crimes he did not commit, and jailed, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiff, GERALD WILCOX, prays for such compensatory damages as are available pursuant to federal law. Plaintiff further seeks punitive damages pursuant to 42 USC §1983 as to the individual Defendants, together with pre-judgment interest, costs and attorney fees in an amount to be determined by the Court.

10

**COUNT II**
**COMMON LAW MALICIOUS PROSECUTION BY**
**DEFENDANT SAMUEL DUNAGAN**

39.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

40.     Defendant, DUNAGAN, initiated criminal prosecution against Plaintiff in state court.

41.     The criminal proceedings ultimately terminated in his favor with a dismissal of the charges in state court.

42.     DUNAGAN initiated the prosecution by deliberately stating false and misleading facts in his Request for Warrant, which were relied upon by the Wayne County Prosecutor's Office and magistrate who approved the warrant.  Defendant, DUNAGAN, knew that disclosing the information about the age discrepancy to the prosecutor, as well as the two store employees stating that the robber's photo was not in the photo lineup, would result in a finding of lack of probable cause to arrest Plaintiff, whom the police had already arrested without a warrant two days before.

43.     The prosecution was undertaken without probable cause, as well as with malice, and to charge someone with the robbery, not with the intention of bringing Plaintiff to justice for having committed the alleged robbery.

44.     As a direct and proximate result of Defendant's malicious prosecution, Plaintiff was charged with three crimes he did not commit, causing him to suffer the injuries and damages set forth above.

WHEREFORE, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, pray for such compensatory and exemplary damages as are available pursuant to the common-

law of the State of Michigan, together with pre-judgment interest, costs and attorney

fees in an amount to be determined by the Court.

### COUNT III
### COMMON LAW FALSE ARREST BY
### DEFENDANTS SMIGIELSKI AND HEADAPOHL

45.     Plaintiffs incorporate by reference each preceding paragraph as if fully

stated herein.

46.     Defendants, SMIGIELSKI and HEADAPOHL, arrested Plaintiff without

probable cause, without an arrest warrant, without consent and without exigent

circumstances.

47.     As a direct and proximate result of Defendants' false arrest, Plaintiffs

suffered the injuries and damages set forth above.

WHEREFORE, Plaintiffs, GERALD WILCOX and ALECIA WILCOX, pray for

such compensatory and exemplary damages as are available pursuant to the common-

law of the State of Michigan, together with pre-judgment interest, costs and attorney

fees in an amount to be determined by the Court.


OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com

Dated: April 29, 2013

## RELIANCE ON PREVIOUSLY FILED JURY DEMAND

Plaintiffs, GERALD WILCOX and ALECIA WILCOX, by and through their attorneys, OLSMAN, MUELLER, WALLACE & MacKENZIE, P.C., hereby rely on the previously filed demand a jury trial in this matter.

OLSMAN, MUELLER, WALLACE
& MacKENZIE, P.C.

s/Wolfgang Mueller
Wolfgang Mueller (P43728)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
(248) 591-2300
wmueller@olsmanlaw.com

Dated:   April 29, 2013

13