UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

-------------------------------------------------------------------x
In re
                                          :
                                          :
                                          :   Chapter 9
                                          :
CITY OF DETROIT, MICHIGAN,                 :
                                          :   Case No. 13-53846
                     Debtor.              :
                                          :   Hon. Stephen W. Rhodes
                                          :
-------------------------------------------------------------------x


**OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES
TO ELIGIBILITY OF THE CITY OF DETROIT, MICHIGAN TO
BE A DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

I.     PA 436 AND THE GOVERNOR'S APPOINTMENT OF THE EMERGENCY
       MANAGER ................................................................................................................... 2

II.    THE EMERGENCY MANAGER MARCHES DETROIT TOWARDS CHAPTER 9
       INTENDING TO IMPAIR PENSIONS ............................................................................ 4

III.   SEVERAL CURRENT AND FORMER EMPLOYEES OF THE CITY SEEK
       PROTECTION FOR THEIR RETIREMENT COMPENSATION BENEFITS IN
       MICHIGAN COURTS .................................................................................................... 7

IV.    THE EMERGENCY MANAGER'S COMMENCEMENT OF CHAPTER 9
       PROCEEDINGS. ........................................................................................................... 9

V.     THE CITY'S ELIGIBILITY MOTION .......................................................................... 9

LEGAL ARGUMENT .............................................................................................................. 13

I.     ACCEPTANCE OF THE CITY'S AUTHORIZATION TO FILE ITS PETITION
       WOULD RENDER CHAPTER 9 UNCONSTITUTIONAL ............................................. 13

       A.     If Chapter 9 Permits the City to Ignore the Pension Clause, Chapter 9 Grants
              Authorization not Available Under the Michigan Constitution............................ 13

       B.     If Chapter 9 Permits Michigan's Executive Branch to Consent to a Limitation on
              its Sovereignty not Authorized by its People, the Federal Statute is
              Unconstitutional .................................................................................................. 18

II.    IT IS NOT NECESSARY FOR THE COURT TO REVIEW THE
       CONSTIUTIONALITY OF CHAPTER 9 BECAUSE THE EMERGENCY
       MANAGER'S PETITION FOR THE CITY OF DETROIT DOES NOT MEET THE
       BANKRUPTCY CODE REQUIREMENTS FOR ELIGIBILITY ................................... 23

       A.     The Burden is on the Debtors to Show Compliance With Sections 109(c) and
              921(c) .................................................................................................................. 24

       B.     The Authorizations Relied Upon by the Emergency Manager Were Flawed Under
              the Michigan Constitution.................................................................................... 27

1.     PA 436 is Squarely at Odds With the Pension Clause of Michigan's Constitution and Therefore Unconstitutional............................................ 27

2.     The Conflict Between PA 436 and the Pension Clause of the Michigan Constitution Cannot be Reconciled ......................................................... 28

     a.     The Attorney General's Position Should not be Adopted ............ 28

     b.     The City of Detroit Cannot Rescue the Unconditional Authorizations............................................................................... 29

C.     The Governor's Authorization Pursuant to PA 436 is not Valid and Void *Ab Initio* Under Michigan's Constitution, and so is That of the Emergency Manager........ 31

D.     The City Cannot Satisfy Bankruptcy Code 109(c)(5) and is Subject to Dismissal Under Bankruptcy Code 921(c) .......................................................... 35

CONCLUSION ..................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Ass'n. of Professional and Technical Employees v. City of Detroit,*
398 N.W.2d 436 (Mich. 1986) ............................................................................. 15

*Attorney Gen ex rel Eaves v. State Bridge Com.,*
269 N.W. 388 (Mich. 1936) ................................................................................. 34

*Baltimore Teachers Union v. Mayor of Baltimore,*
6 F.3d 1012 (4th Cir. 1993) ................................................................................. 16

*Bd. Of Trustees of Policemen's and Firemen's Retirement Fund of City of Gadsen v. Cary,*
373 So.2d 841 (Ala. 1979) .................................................................................... 16

*Bond v. United States,*
131 S.Ct. 2355 (2011) .................................................................................... 20, 21

*City of Pontiac Retired Employees Ass'n v. Schimmel, et al.,*
No. 12-2087, 2013 WL 4038582 (6th Cir. Aug. 9, 2013) ............................... passim

*Dullam v. Willson,*
19 N.W. 112 (Mich. 1984) ................................................................................... 33

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,*
459 U.S. 400 (1983) ........................................................................................ 15,16

*Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,*
No. 143374, 2013 WL 3924324 (Mich. July 30, 2013) ...................................... 29

*Flowers, et al. v. Snyder, et al.,*
Case No. 13-729-CZ (Ingham Cty. Cir.Ct.  2013) ................................................ 7

*Flowers et al. v. State of Michigan et al.,*
Case No. 13-374-C2 (Ingham Cty. Cir.Ct. 2013) .................................... 8, 9, 11, 23

*Webster, et al. v. Michigan, et al.,*
Case No. 13-734-CZ (Ingham Cty. Cir.Ct.  2013) ........................................... 8, 11

*In re City of Bridgeport,*
129 B.R. 332 (Bankr. D. Conn. 1991) ............................................................ 23, 24

*In re City of Cent. Falls, R.I.,*
468 B.R. 36 (Bankr. D.R.I. 2012) ........................................................................ 26

*In re City of Colorado Springs Spring Creek General Imp. Dist.*,
177 B.R. 684 (Bankr.D.Colo. 1995) ...............................................................25

*In re City of Harrisburg*,
465 B.R. 744 (Bankr. M.D. Pa. 2011) .........................................................23, 26

*In re City of Stockton, Cal.*,
475 B.R. 720 (Bankr. E.D. Cal. 2012).............................................................25

*In re City of Stockton, Cal.*,
493 B.R. 772 (Bankr. E.D. Cal. 2013).............................................................36

*In re City of Vallejo*,
403 B.R. 72 (Bankr. E.D. Cal. 2009) ...............................................................25

*In re County of Orange*,
183 B.R. 594 (Bankr. C.D. Cal. 1995).............................................................35

*In re Enrolled Senate Bill 1269 (Advisory Opinion re Constitutionality of 1972 PA 258)*,
209 N.W.2d 200 (Mich. 1973).....................................................................4, 28

*In re McCurtain Mun. Auth.*,
2007 WL 4287604 (Bankr. E.D. Okla. Dec. 4, 2007) ...........................................34

*In re New York City Off-Track Betting Corp.*,
427 B.R. 256 (Bankr. S.D.N.Y. 2010)............................................................25

*In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*,
806 N.W.2d 683 (Mich. 2011)..........................................................................28

*In re Suffolk Regional Off-Track Betting Corp.*,
462 B.R. 397 (Bankr. E.D.N.Y. 2011).........................................................25, 34

*In re Sullivan County Regional Refuse Disposal District*,
25 B.R. 60 (Bankr. D. N.H. 1994) ..................................................................35

*In re Valley Health System*,
383 B.R. 156 (Bankr. C.D. Cal. 2008).............................................................25

*In re Villages at Castle Rock Metro Dist. No.*
4,145 B.R. 76 (Bankr. D. Colo. 1990) .............................................................35

*Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*
408 B.R. 280 (9th Cir. B.A.P. 2009).............................................................25,35

*Kim v. JPMorgan Chase Bank, N.A.*,
825 N.W.2d 329 (Mich. 2012).........................................................................33

ii

*Koontz v. Ameritech Services, Inc.,*
   645 N.W.2d 34 (Mich. 2002) ..................................................................15

*Maracich v. Spears,*
   133 S.Ct. 2191 (2013) ............................................................................15

*Marbury v. Madison,*
   2 L.Ed. 60 (1803) ...................................................................................15

*McDougall v. Schanz,*
   597 N.W.2d 148 (Mich. 1999) ................................................................28

*McKane v. City of Lansing*,
   1998 U.S. App. LEXIS 649 (6th Cir. Jan. 14, 1998) ..............................34

*Musselman v. Governor of Mich.*,
   533 N.W.2d 237 (Mich. 1995) .............................................32, 33, 34, 35

*New York v. United States,*
   505 U.S. 144 (1992) .........................................................................19, 20

*Olson v. Cory,*
   636 P.2d 532 (Cal. 1980) ........................................................................16

*Patterson v. Shumate*,
   504 U.S. 753 (1992) ................................................................................25

*People ex rel Metevier v. Therrien,*
   45 N.W. 78 (Mich. 1890) ........................................................................31

*People v. Perkins,*
   703 N.W.2d 448 (Mich. 2005) ................................................................15

*Printz v. United States,*
   521 U.S. 898 (1997) .........................................................................20, 21

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
   490 US 477 (1989) ..................................................................................19

*Romein v. General Motors Corp.,*
   462 N.W.2d 555 (Mich. 1990) ................................................................15

*Seitz v. Probate Judges Retirement System*,
   474 N.W. 2d 125 (Mich. 1991) ...............................................................28

*Sittler v. Bd. of Control*,
   53 N.W.2d 681 (Mich. 1952) ..................................................................31

*Smith v. Michigan*,
    410 N.W.2d 749 (Mich. 1987)..................................................................30

*Subway-Surface Supervisors Ass'n. v. New York Transit Authority*,
    375 N.E.2d 384 (N.Y. 1978)..................................................................16

*Sun Valley Foods Co. v. Ward*,
    460 Mich. 230 (Mich. 1999)..................................................................28

*The General Retirement Sys. of the City of Detroit, et al v. Orr et al.*,
    Case No 13-768-CZ (Ingham Cty. Cir.Ct. 2013)..................................7

*Twp. of Dearborn v. Dearborn Twp. Clerk*,
    55 N.W.2d 201 (Mich. 1952)..................................................................31

*United States v. Bekins*,
    304 U.S. 27 (1938)..................................................................... passim

*United States v. Felts*,
    674 F.3d 599 (6th Cir. 2012) .................................................................21

### STATUTES

11 U.S.C. § 101....................................................................................................1

11 U.S.C. § 109.......................................................................................... passim

11 U.S.C. § 901..................................................................................................13

11 U.S.C. § 921.......................................................................................... passim

11 U.S.C. § 922..................................................................................................10

11 U.S.C. § 1102................................................................................................10

18 U.S.C. § 157....................................................................................................9

29 U.S.C. § 1302..................................................................................................7

29 U.S.C. § 1321..................................................................................................7

M.C.L. § 15.151..................................................................................................32

M.C.L. § 141.1201................................................................................................2

M.C.L. §§ 141.1501..............................................................................................3

M.C.L. §§ 141.1501-1531.................................................................................3, 27

M.C.L. §141.1541 ..................................................................................... passim

M.C.L. § 141.1549 ..................................................................................... 3

M.C.L. § 141.1551 .................................................................................6, 28

M.C.L. § 141.1552 .................................................................................... 28

M.C.L. § 141.1553 .................................................................................... 28

M.C.L. § 141.1558 .................................................................................4, 28

M.C.L. § 141.1566 .................................................................................... 4

M.C.L. § 168.64 ....................................................................................... 31

ALA. CONST. art. I, § 22 ........................................................................... 17

CAL. CONST. art. I, § 9 ............................................................................. 16

MICH. CONST. art. I, § 10 ......................................................................... 13

MICH. CONST. art. V, § 8 .......................................................................... 31

MICH. CONST. art. V, § 20 .................................................................... 31, 32

MICH. CONST. art. IX, § 24 .................................................................. passim

MICH. CONST. art. XI, § 1 .......................................................... 2, 3, 30, 32

U.S. CONST. art. I, § 10 ............................................................................ 14

U.S. CONST. amend. X .............................................................................. 13

Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107 Stat. 1536 ................................ 19

## OTHER AUTHORITIES

Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9* Amer.
    Bank. Law Journal 363 (Fall 2011) ...................................................... 19

2 COLLIER ON BANKRUPTCY ¶ 921.04[2] .................................................... 25

The Official Committee of Retirees ("Committee") objects to and contests the eligibility of the City of Detroit, Michigan (the "City") to be a debtor under Chapter 9 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

1.      The Retiree Committee of the City of Detroit was appointed by the United States Trustee on August 23, 2013. Included among the persons represented by the Committee are individuals who are more than 100 years old who completed their service with the City (or their spouses did) more than 35 years ago. Such individuals and many others between the ages of 65 and 100 are not eligible for social security benefits, rendering their entire economic existence dependent upon retirement compensation promised by the City.

2.      Following a declaration of financial emergency on March 28, 2013 by the Governor of the State of Michigan, the State appointed Kevyn Orr as the receiver for the City. Shortly thereafter, the Governor denominated Mr. Orr the Emergency Manger pursuant to PA 436, M.C.L. §141.1541, *et seq.* From the record available to the Committee, the appointment of the Emergency Manager was part of a plan developed well before his appointment to unilaterally alter, reduce or eliminate retirement compensation benefits promised by the City. Acting under the assertion of improving the City's much deteriorated health and safety, on July 18, 2013 the Emergency Manager took a further step in the plan to alter, reduce or eliminate promised retirement compensation benefits and authorized the filing of a petition initiating a case under Chapter 9 of the United States Bankruptcy Code for the City of Detroit.

3.      This Objection to Eligibility challenges the existence of the required authorization under 11 U.S.C. §109(c)(2) for the Chapter 9 petition as well as the existence of relevant factual findings necessary for a determination of eligibility under 11 U.S.C. §109(c)(5) and 11 U.S.C. § 921. To that extent, the Committee joins in the following objections: (i) The Michigan Counsel

25 of the American Federation of State and County and Municipal Employees, AFL-CIO and Subchapter 98, City of Detroit Retirees' Objection to the City of Detroit's Eligibility to Obtain Relief Under Chapter 9 of the Bankruptcy Code (Dkt. 505); (ii) Objection of International Union, UAW to the City of Detroit, Michigan's Eligibility for an Order for Relief Under Chapter 9 of the Bankruptcy Code (Dkt. 506); (iii) Consolidated Objection of the Retiree Association Parties to Eligibility (Dkt. 497); (iv) Objection of the Retired Detroit Police Members Association to city of Detroit Chapter 9 Petition (Dkt. 520); and (v) the Objection of the Detroit Retirement Systems to the Eligibility of the City of Detroit, Michigan to be a Debtor Under Chapter 9 of the Bankruptcy Code (Dkt. 519). In addition, should the Court determine that such authorization can be found as a matter of state law, notwithstanding the proscriptions of the MICH. CONST. art IX, § 24 ( the "Pension Clause"), then Chapter 9 must be found to be unconstitutional as permitting acts in derogation of Michigan's sovereignty and the right of the people of Michigan to define and control the acts of their elected and appointed officials.

## FACTUAL BACKGROUND

### I. PA 436 AND THE GOVERNOR'S APPOINTMENT OF THE EMERGENCY MANAGER

4. On March 14, 2013, Governor Richard D. Synder appointed Kevyn D. Orr as the City's Emergency Financial Manager pursuant to Public Act 72 of 1990, the Local Government Fiscal Responsibility Act, M.C.L. § 141.1201, *et seq*. At the time of the Emergency Manager's appointment, Mr. Orr sweared to the following oath, which was later filed with the Michigan Secretary of State: "I do solemnly swear that I will support the Constitution of the United States *and the Constitution of this State*, and that I will faithfully discharge the duties of the office of Emergency Financial Manager – City of Detroit according to the best of my ability." MICH.

CONST. art. XI, § 1 (emphasis added).[1]  On March 28, 2013, Mr. Orr automatically became

emergency manager ("Emergency Manager") upon the effectiveness of Michigan's most recent [2]

emergency manager law, Public Act 436, the Local Financial Stability and Choice Act, M.C.L.

§141.1541, *et seq.* ("PA 436").

5.      PA 436  authorizes the governor of Michigan to appoint an emergency manager

"to address a financial emergency within [a] local government." M.C.L. § 141.1549(1).  In such

capacity, the emergency manager allegedly may "act for and in the place and stead" of the

democratically elected Detroit Mayor and City Council.  M.C.L. § 141.1549(2).  An emergency

manager is, therefore vested with "broad powers in receivership to rectify the financial

emergency and to assure the fiscal accountability of the local government and the local

government's capacity to provide or cause to be provided necessary governmental services

essential to the public health, safety, and welfare." M.C.L. § 141.1549(2).

6.      PA 436 authorizes a municipality to file a chapter 9 petition upon the

recommendation of the emergency manager if, in his judgment, "no reasonable alternative to

---

[1]Governor Snyder was required to swear the same oath upon his appointment as Governor of the State of Michigan.  *See* MICH. CONST. art. XI § 1 (requiring oath of "[a]ll officers, legislative executive and judicial").

[2]In March 2011, Public Act 72, the "Local Government Fiscal Responsibility Act," was repealed and replaced with Public Act 4, the "Local Government and School District Fiscal Accountability Act."  M.C.L. §§ 141.1501 et seq.  "Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency managers to break collective bargaining agreements and to ignore retirement commitments." *See City of Pontiac Retired Employees Ass'n v. Schimmel, et al*., No. 12-2087, 2013 WL 4038582, *1-2 (6th Cir. Aug. 9, 2013) (citing M.C.L. §§ 141.1501-1531).  PA was rejected by voters in a referendum shortly after passage in March 2011.  *Id*. at *3-4.  "Apparently unaffected that the voters had just rejected Public Act 4, the Michigan Legislature enacted, and the Michigan Governor signed, Public Act 436. Public Act 436 largely reenacted the provisions of Public Act 4, the law that Michigan citizens had just revoked.  In enacting Public Act 436, the Michigan Legislature included a minor appropriation provision, apparently to stop Michigan voters from putting Public Act 436 to a referendum."  *Id*. (citations omitted).  The Sixth Circuit's statement

rectifying the financial emergency of the local government which is in receivership exists" and the governor provides written approval. M.C.L. § 141.1566(1).[3] However, PA 436 permits the governor to "place contingencies on a local government in order to proceed under chapter 9." M.C.L. § 141.1558(1).

## II. THE EMERGENCY MANAGER MARCHES DETROIT TOWARDS CHAPTER 9 INTENDING TO IMPAIR PENSIONS

7.       Prior to his appointment, the Emergency Manager knew that "the new [emergency manager] law is a clear run around the prior initiative that was rejected by the voters in November" in an effort to terminate employee retirement benefits. *See* January 31, 2013 e-mail addressed from Kevyn Orr, Ex. 3 to Declaration of Steven Kreisberg (Dkt. 509).

8.       Shortly after his appointment, the Emergency Manager informed both Detroit's creditors and the media of his intent to modify pension benefits in a Chapter 9 proceeding. On May 12, 2013, during an interview with WWJ News radio, in discussing his anticipated course of action, the Emergency Manager stated:

---

raises a serious question as to the validity of PA 436, which is in fact so critical that the Committee is in the process of filing a separate motion to withdraw the reference.

[3]In its entirety, PA 436(18) provides:

> If, in the judgment of the emergency manager, no reasonable alternative to rectifying the financial emergency of the local government which is in receivership exists, then the emergency manager may recommend to the governor and state treasurer that the local government be authorized to proceed under chapter 9. If the governor approves of the recommendation, the governor shall inform the state treasurer and emergency manager in writing of the decision. Upon receipt of this written approval, the emergency manager is authorized to proceed under chapter 9. This section empowers the local government for which an emergency manager has been appointed to become a debtor under title 11 of the United States Code, 11 USC 101-1532, as required by section 109 of title 11 of the United States Code, 11 USC 109, and empowers the emergency manager to act exclusively on the local government's behalf in any such case under chapter 9.

The public can comment, but it is under the statute, it is my [restructuring] plan and it's within my discretion and obligation to do it. This isn't a plebiscite, we are not, like, negotiating the terms of the plan. It's what I'm obligated to do.

Detroit EM Releases Financial Plan; City Exceeding Budget By $100M Annually, May 12, 2013, available at http://detroit.cbslocal.com/2013/05/12/kevin-orr-releases-financial-plan-for-city-of-detroit/.

9.      On June, 13, 2013, during an interview the Detroit Free Press, the Emergency Manager asserted his belief that accrued pension benefits could be impaired in a Chapter 9 proceeding:

Q:  You said in this report that you don't believe there is an obligation under our state constitution to pay pensions if the city can't afford it?

A:  The reason we said it that way is to quantify the bankruptcy question. We think federal supremacy trumps state law.

See Q & A with Kevyn Orr: Detroit's Emergency Manager Talks About City's Future, Detroit Free Press (June 14, 2013), available at

http://www.freep.com/article/20130616/OPINION05/306160052/kevyn-orrdetroit- emergency-manager-creditors-fiscal-crisis.[4]

10.     The following day, on June 14, 2013 the Emergency Manager presented his "Proposal for Creditors" (the "City Proposal"). See Proposal for Creditors, Ex. A to Declaration of Kevyn Orr (Dkt. 11). The City Proposal estimates the City's unfunded pension liabilities at $3.5 billion and provides that "claims for the underfunding will be exchanged for a pro-rata (relative to all unsecured claims) principal amount of new [Limited Recourse Participation]

---

[4] In its omnibus response to eligibility objections, the City asserts the remarkable position that separately protected pension benefits constitute a mere contract that can be abrogated under Chapter 9. This premise is both novel and a direct threat to various constitutional and legal concerns including federalism. These issues are so important that they warrant withdrawal.

Notes." *Id.* The City Proposal also notes that "[b]ecause the amounts realized on the underfunding claims will be substantially less than the underfunding amount, there *must be significant cuts in accrued, vested pension amounts for both active and currently retired persons.*" *Id.* at 116 (emphasis added).[5] The Emergency Manager also proposes to modify the medical benefits of current retirees and to satisfy those claims as well with a pro-rata distribution of Notes. *Id.* Furthermore, the Emergency Manager did not provide for in his proposal the "timely deposit of required payments to the pension fund for the local government or in which the local government participates," M.C.L. § 141.1551, § 11 (1)(d). Indeed, the City Proposal provides that such payments "will not be made under the plan." Ex. A to Declaration of Kevyn Orr (Dkt. 11).

11. Thereafter, the Emergency Manager held "discussions" with certain large associations. These discussions appear to have been largely without any meaningful exchange of information. *See* July 2, 2013 from Steven Kreisberg to Brian Easterly, Ex. 8 to Declaration of Steven Kreisberg (Dkt. 509) (stating access to data room does not provide requested information necessary for "meaningful opportunity to engage in good faith negotiation on these issues. Missing is a "description of the proposed retiree health care plan that will rely upon Medicare Advantage and Exchange Marketplace under the Affordable Care Act and the basis of the estimated City cost of between $27.5 million and $40 million"); July 3, 2013 from Brian Easterly to Steven Kreisberg, Ex. 9 to Declaration of Steven Kreisberg (Dkt. 509) (describing July 10 meeting as a "discussion between the Emergency Managers advisers and a relatively small group

---

[5] This amount does not include more than $5 billion in health care and other obligations that the City claims constitute separate "OPEB." The Committee is just beginning its investigation but, based on information and belief, understands that the alleged "OPEB" may be intertwined with cash benefits, as to constitute, in this case, constitutionally protected pension.

6

13-53846-swr Doc 67445 Filed 09/15/14 Entered 09/15/14 23:11:25 Page 14 of 47
13-53846-swr Doc 6605 Filed 09/10/14 Entered 09/10/14 23:14:17 Page 14 of 47

of key stakeholders who may include, the GRS and its advisor only team, high level representatives of up to four (4) non uniform unions, and representatives from the Detroit Retired City Employees Association.").

12.     If the City Proposal is implemented it will have dire consequences for the City's retirees.  The protections of the Federal Retirement Income Security Act ("ERISA") apply only to private, not public workers.  *See* 29 U.S.C. § 1321(b)(2) ("This section does not apply to any plan . . . established and maintained for its employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing . . . .").  The Pension Benefit Guaranty Corporation, which was established under ERISA, *see* 29 U.S.C. § 1302, to guarantee the pension obligations of failed private pension plans, will not protect the City's employees.  Furthermore, many of the City's retired police officers and firefighters do not receive social security.  *See* Objection of the Detroit Retirement Systems at p. 5 (Dkt. 519).

13.     On July 16, 2013 the Emergency Manager submitted a recommendation to the Governor, which recommend a Chapter 9 proceeding to implement his City Proposal. *See* Ex. J to Declaration of Kevyn Orr (Dkt. 11).

## III.     SEVERAL CURRENT AND FORMER EMPLOYEES OF THE CITY SEEK PROTECTION FOR THEIR RETIREMENT COMPENSATION BENEFITS IN MICHIGAN COURTS

14.     In July 2013, in response to the City Proposal, and anticipating that the Emergency Manager would seek to effectuate his plan to impair pension benefits in Chapter 9, several current and former employees of the City commenced actions in the Michigan Circuit Court.  The plaintiffs sought both declaratory and injunctive relief.  *See Flowers, et al. v. Snyder, et al.*, Case No. 13-729-CZ (Ingham Cty. Cir.Ct. July 8, 2013) (seeking to enjoin the Governor

---

In addition, whether or not protected by the Pension Clause, such benefits are also protected by the Contract Clause which would prohibit such impairment.

from authorizing the Emergency Manager to file a Chapter 9 petition and other declaratory relief); *Gracie Webster, et al. v. The State of Michigan, et al*., Case No. 13-734-CZ (Ingham Cty. Cir.Ct. July 3, 2013) (seeking to enjoin same and a declaration that PA 436 is unconstitutional in violation of Article IX, Section 24 of the Michigan Constitution); *The General Retirement Sys. of the City of Detroit, et al v. Orr et al*., Case No 13-768-CZ (Ingham Cty. Cir.Ct. July 17, 2013) (seeking (i) declarations that PA 436 does not permit the Governor to authorize and the Emergency Manager to take any actions to impair the City's pension obligations under Chapter 9, or in the alternative declarations PA 436 unconstitutional, and (ii) enjoining the Emergency Manager from acting pursuing to future unconstitutional authorization by the Governor) (together, the "State Court Lawsuits").

15.     The Ingham County Circuit Court found that the Chapter 9 for Detroit would impair plaintiffs "accrued financial benefits" in violation of Art. IX §24 of the Michigan Constitution and entered  a preliminary injunction against the State and Treasurer enjoining them from taking further action on behalf of the City of Detroit through Chapter 9 where plaintiff's pension benefits may be impaired. *See Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-768-CZ (Preliminary Injunction dated July 18, 2013),  Ex. 13 to Declaration of Steven Kreisberg (Dkt 509).

16.     One day later, on July 19, 2013, Judge Rosmarie Aquilina issued an Order of Declaratory Judgment that:

<blockquote>

a.      PA 436 is unconstitutional and in violation of Article IX Section 24 of the Michigan Constitution to the extent that it permits the Governor to authorize and Emergency Manager to proceed under Chapter 9 in any manner which threatens to diminish or impair accrued pension benefits; and PA 436 is to that extent of no force and effect;

b.      The Governor is prohibited by Article IX Section 24 of the Michigan Constitution from authorizing an emergency manager under PA 436 to proceed under Chapter 9 in a manner which threatens to diminish or

</blockquote>

impair accrued pension benefits, and any such action by the Governor is without authority and in violation of Article IX Section 24 of the Michigan Constitution; and

c.  By authorizing the Emergency Manager to proceed under Chapter 9 to diminish or impair accrued pension benefits, [Governor] Snyder acted without authority under Michigan law and in violation of Article IX Section 24 of the Michigan Constitution.

*Flowers et al. v. State of Michigan et al.*, Case No. 13-374-C2 (Order of Declaratory Judgment

dated July 19, 2013), Ex. 14 to Declaration of Steven Kreisberg (Dkt. 509).

17.     Judge Aquilina further issued an injunction (1) directing the Emergency Manager

"to immediately withdraw the Chapter 9 petition filed on July 18," and (2) to "not authorize any

further Chapter 9 filing which threatens to diminish or impair accrued pension benefits."

## IV.  THE EMERGENCY MANAGER'S COMMENCEMENT OF CHAPTER 9 PROCEEDINGS.

18.     The Governor's July 18 authorization letter in response to the Emergency

Manager's request did not place any contingencies on the filing, such as requiring the

Emergency Manager to comply with the Michigan Constitution.  *See* Chapter 9 Voluntary

Petition (Dkt. 1 at 16).  On July 18, 2013 the Emergency Manager issued an Order authorizing

the City to file a petition for relief under Chapter 9 in the United States Bankruptcy Court in the

Eastern District of Michigan, effective immediately.  *Id.* at 10-11.  The Emergency Manager

filed a Chapter 9 petition on behalf of the City later that same day.  *Id.*

## V.  THE CITY'S ELIGIBILITY MOTION

19.     On July 19, 2013, the City filed a motion (the "Eligibility Motion") for entry of an

order establishing a deadline for objections to the City's eligibility to be a Chapter 9 debtor.

(Dkt. 18).  On August 6, 2013, the Bankruptcy Court determined that the Eligibility Motion was

a core proceeding pursuant to 18 U.S.C. § 157(b), approved a notice to creditors, and established

a deadline of August 19, 2013 for filing objections to the City's Chapter 9 Petition (the

9

13-53846-swr Doc 674-3 Filed 09/15/13 Entered 09/15/13 29:22:25 Page 17 of 47
13-53846-swr Doc 605 Filed 09/10/13 Entered 09/10/13 23:11:27 Page 17 of 47

"Eligibility Objections"). *See* Order (A) Directing and Approving Form of Notice of Commencement of Case and Manner of Service and Publication of Notice and (B) Establishing Deadline for Objections To Eligibility and a Schedule for Their Consideration (Dkt. 296 at 1,3). The Bankruptcy Court has not stayed proceedings in the Chapter 9 case pending the Court's adjudication of the Eligibility Objections and the entry of an order for relief. *Id.* at 10. On July 25, 2013, the Bankruptcy Court entered two orders staying the State Court Actions and confirming that the automatic stay under 11 U.S.C. § 922 applies to the City and the Emergency Manager and extending the stay to the Governor of the State of Michigan and the Local Emergency Financial Assistance Loan Board. *See* Order Pursuant to Section 105(a) of the Bankruptcy Code Extending The Chapter 9 Stay to Certain (A) State Entities, (B) Non Officer Employees and (C) Agents and Representatives of the Debtors (Dkt. 166); Order Pursuant to Section 105(a) of the Bankruptcy Code Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code (Dkt. 167).

20.     On August 2, 2013, the Bankruptcy Court issued an order directing the appointment of an Official Committee of Retirees pursuant to Section 1102(a)(2) of the Bankruptcy Code. *See* Order Pursuant to Section 1102(A)(2) of the Bankruptcy Code Directing the Appointment of a Committee of Retired Employees (Dkt. 279.)  On August 22, 2013, the United States Trustee for Region 9 filed a notice of appointment the Official Committee of Retirees.[6]  The Committee represents Detroit's approximately 23,500 retirees in the City's Chapter 9 proceedings.  According to the Debtor, there are more than 20,000 current, retired and

---

[6]The Committee is composed of the following persons: (1) Edward L. McNeil (Detroit, Michigan, Retiree Sub-Chapter 98 of the American Federation of State, County and Municipal Employees, AFL-CIO – Edward L. McNeil), (2) Michael J. Karwoski, (3) Shirley V. Lightsey, (4) Terri Renshaw, (5) Robert A. Shinske, (6) Donald Taylor, (7) Gail Wilson Turner, (8) Gail M. Wilson and (9) Wendy Fields-Jacobs (International Union, UAW).  (Dkt. 575).

10

surviving beneficiaries. There are also approximately 2,400 deferred vested retirement eligible former employees of the City in the retiree community. *See* Declaration of Charles M. Moore In Support of City of Detroit, Michigan's Statement of Qualifications Pursuant to Section 109(c) of the Bankruptcy Code at ¶ 9 (Dkt. 13).[7]

21.     On August 26, 2013 the Bankruptcy Court issued an Order classifying the various Eligibility Objections and Notices of Hearings. *See* Order Regarding Eligibility Objections Notices of Hearing and Certifications Pursuant to 28 U.S.C. Section 3403(a)&(b) (Dkt. 642). One hundred-and-nine parties timely objected to the City's eligibility, including the City's various unions, employee and retiree associations and individuals. (Dkt. 642 at 1).[8] The objections are both legal and factual in nature. As categorized by the Bankruptcy Court, the legal objections (the "Legal Eligibility Objections") are:

    i.       Chapter 9 of the Bankruptcy Code violates the United States Constitution.

    ii.      The Bankruptcy Court does not have the authority to determine the constitutionality of Chapter 9 of the Bankruptcy Code.

    iii.     PA 436 violates the Michigan constitution and therefore the City was not validly authorized to file the Chapter 9 bankruptcy case as required by 11 U.S.C. 109(c)(2).

---

[7] There may be approximately 7,000 active vested current employees of the City.

[8] Among the objecting parties are:

Local 324, International Union of Operating Engineers, (Objection at Dkt. 484); Local 517M, Service Employees International Union, (Objection at Dkt. 486); Retired Detroit Police and Firefighter's Association, Donald Taylor, the Detroit Retired City Employees Association and Shirley V. Lightsey (Objection at Dkt. 502); Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees, (Objection at Dkt. 505); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (Objection at Dkt. 506); the Detroit Fire Fighters Association, the Detroit Police Officer's Association, the Detroit Police Lieutenants & Sergeants Association, the Detroit Police Command Officer's Association (Objection at Dkt. 512); General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit (Objection at Dkt. 519); Retired Detroit Police Members Association Objection at Dkt. 520).

11

13-53846-swr   Doc 867-3   Filed 09/15/13   Entered 09/15/13 23:44:25   Page 19 of 47
13-53846-swr   Doc 867-3   Filed 09/15/13   Entered 09/15/13 23:44:25   Page 19 of 47

iv.     The Bankruptcy Court does not have the authority and jurisdiction to determine the constitutionality of PA 436.

v.      The Emergency Manager is not an elected official and therefore did not have valid authority to file the bankruptcy case as required for eligibility by 11 U.S.C. § 109(c)(2).

vi.     The Governor's authorization to file this bankruptcy case was not valid under the Michigan constitution because it did not prohibit the City from impairing the pension rights of its employees and retirees, as required for eligibility by 11 U.S.C. § 109(c)(2).

vii.    Because of the proceedings and judgment in *Gracie Webster, et al. v. The State of Michigan, et al.*, Case No. 13-734-CZ (Ingham County Circuit Court), the City is precluded by law from claiming that the Governor's authorization to file this bankruptcy case was valid, as required for eligibility by 11 U.S.C. § 109(c)(2). (Dkt. 642 at 1-3.)

22.     The Bankruptcy Court also categorized the various factual objections (the "Factual Eligibility Objections") made to the petition.  These include objections that (i) the City was not insolvent, as required by 11 U.S.C. § 109(c)(3), (ii) that the City does not "desire to adjust its debts," as required by 11 U.S.C. § 109(c)(4), (iii) that the City did not negotiate in good faith with creditors, as required by 11 U.S.C. § 109(c)(5)(B), (iv) that the City was not "unable to negotiate with creditors because such negotiation is impracticable, as required by 11 U.S.C. § 109(c)(5)(C), and (v) that the City's bankruptcy petition should be dismissed pursuant 11 U.S.C. § 921(c) because it was filed in bad faith.  (Dkt. 642 at 4-5.)

23.     The Legal Eligibility Objections are scheduled to be heard by the Bankruptcy Court on September 18, 2013.  (Dkt. 642 at 3.)  A trial on the Factual Eligibility Objections is scheduled for October 23, 2013.  (Dkt. 642 at 4.)

## LEGAL ARGUMENT

I.  **ACCEPTANCE OF THE CITY'S AUTHORIZATION TO FILE ITS PETITION WOULD RENDER CHAPTER 9 UNCONSTITUTIONAL**

> A.  **If Chapter 9 Permits the City to Ignore the Pension Clause, Chapter 9 Grants Authorization not Available Under the Michigan Constitution**

24.  MICH. CONST. art. IX, § 24 provides that vested pension rights "shall not be diminished or impaired." The Emergency Manager contends that he may use Chapter 9 of the Bankruptcy Code, 11 U.S.C. § 901 *et seq.* to "trump" the Pension Clause, and intends to ask the Bankruptcy Court to approve a plan that would diminish those vested rights. (Ex. A to Dkt. 11 at 116). But that application of Chapter 9 would violate the Tenth Amendment to the U.S. Constitution.[9]

25.  In *United States v. Bekins,* 304 U.S. 27 (1938), the Supreme Court held that a federal statute permitting municipalities to file in bankruptcy (a predecessor to Chapter 9) did not violate the Tenth Amendment, because no municipality could seek federal bankruptcy relief unless its doing so was "authorized by state law." 304 U.S. at 51. The Supreme Court held that in granting such authorization "The State acts in aid, and not in derogation, of its sovereign powers." 304 U.S. at 54. *Bekins* thus established a simple principle: a State may consent to a municipality entering federal bankruptcy proceedings if its doing so is in aid of the State's sovereign powers, but not if its doing so is in derogation of the State's sovereign powers. But if, as the Emergency Manager contends, Chapter 9 can be used to " trump" provisions of the Michigan Constitution, specifically the Pension Clause, then Michigan's consent to the

---

[9]The Tenth Amendment provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

Emergency Manager's filing in Chapter 9 is an act "in derogation" of Michigan's sovereign powers.[10]

26.     The Pension Clause provides in part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
>
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

MICH. CONST. art. IX, § 24. The Michigan Constitution also contains a Contracts Clause (similar in language to that in the U.S. Constitution[11]), which provides that, "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted." MICH. CONST. art. I, § 10.

27.     The Pension Clause thus provides a separate protection than the state's Contracts Clause and does not render pensions, as the City asserts mere contracts.[12] Therefore, if the Pension Clause had been intended merely to establish that accrued pension rights were contractual obligations and thus protected by the Contract Clause, the Pension Clause would have ended with the phrase "… shall be a contractual obligation." That would have been sufficient to lay to rest the concept that "pensions granted by public authorities were not contractual obligations but gratuitous allowances." *In re Enrolled Senate Bill 1269(Advisory*

---

[10] The Committee does not believe this Court has the statutory, or under Article III the constitutional, subject matter jurisdiction to hear the state or federal constitutional challenges to the City's Chapter 9 Petition. Concurrently with the filing of this Objection, the Committee is filing a motion to withdraw the jurisdictional reference over the eligibility dispute.

[11] The parallel language of Article I, Section 10 of the U.S. Constitution provides, "No State shall … pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, …." U.S. CONST. art. I, § 10.

[12] (Dkt. 765 at 22-27).

*Opinion re Constitutionality of 1972 PA 258),* 389 Mich. 659, 662, 209 N.W.2d 200, 202 (Mich. 1973).

28.     The additional language of the Pension Clause - "which shall not be diminished or impaired thereby" - has the evident purpose of giving pension rights special and greater protection than mere contractual rights.  To argue - as the Emergency Manager does - that the Pension Clause did nothing more than establish that pension rights are contractual obligations is to argue that the phase in the Pension Clause "which shall not be diminished or impaired thereby" is mere surplusage.  But since *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803), it has been a basic principle of constitutional (and statutory) construction that "[i]t cannot be presumed that any clause in the constitution is intended to be without effect." *Marbury v. Madison,* 1 Cranch at 174; *Maracich v. Spears,* 133 S.Ct. 2191, 2205 (2013) (rejecting proffered statutory construction which would render some statutory language "mere surplusage."). That same principle of construction applies under Michigan law. *Koontz v. Ameritech Services, Inc.,* 466 Mich. 304, 312, 645 N.W.2d 34, 38 (Mich. 2002) ("Courts must give effect to every word, phrase, and clause in a statute, and must avoid an interpretation that would render any part of the statute surplusage or nugatory."); *People v. Perkins,* 473 Mich. 626, 638, 703 N.W.2d 448, 455 (Mich. 2005).

29.     The additional language in the Pension Clause - "which shall not be diminished or impaired thereby" - is critical.  The prohibition in the Contract Clause, under both the Michigan and U.S. Constitutions, is not absolute and must be "accommodated to the inherent police power of the State to 'safeguard the vital interest of its people.'" *Romein v. General Motors Corp.,* 436 Mich. 515, 462 N.W.2d 555, 565 (Mich. 1990), *quoting Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410 (1983).  In contrast, the Pension Clause is absolute.

15

13-53846-swr  Doc 674-3   Filed 09/16/13   Entered 09/16/13 18:44:27   Page 23 of 47
13-53846-swr  Doc 665   Filed 09/15/13   Entered 09/15/13 19:22:25   Page 23 of 47

*Ass'n. of Professional and Technical Employees v. City of Detroit,* 154 Mich. App. 440, 445-46, 398 N.W.2d 436, 439-40 (Mich. 1986). An adjustment of contract rights which caused *any* diminution in vested pension rights would violate the Pension Clause even if the adjustment might not violate the Contracts Clause.[13]

30. In an attempt to denigrate the importance of the Pension Clause, the Emergency Manager, citing *Olson v. Cory,* 27 Cal.3d 532, 636 P.2d 532 (Cal. 1980), seeks to compare Michigan's Pension Clause with provisions of the California constitution that, the Emergency Manager argues, "prohibit[] the diminishment or impairment of pension benefits unless some 'new comparable or offsetting benefit'" is provided, which have been held not to preclude the filing of municipal bankruptcies in California. (Dkt. 765 at 26-27). The Emergency Manager, however, fails to note that the California constitutional provision at issue in *Olson v. Cory* was California's Contracts Clause - virtually identical in language to Michigan's Contracts Clause[14] - and not a Pension Clause. The conclusion that California's Contract Clause did not preclude a California municipal bankruptcy sheds no light on the effect of Michigan's Pension Clause. The Emergency Manager goes even further in his argument with respect to Alabama, citing *Bd. of Trustees of Policemen's and Firemen's Retirement Fund of City of Gadsden v. Cary,* 373 So.2d 841 (Ala. 1979), to argue that "[s]imilar constitutional protection for pensions applies in Alabama," where, nevertheless, Chapter 9 has "been used to reduce pensions." (Dkt. 765 at 27).

---

[13] In this case, however, the City's proposed 80% reduction in retiree benefits constitutes a substantial impairment in violation of the Contracts Clause. *See Energy Reserves Group, Inc. v. Kansas City & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697 (1983). The present situation contrasts sharply with temporary cuts that have been held lawful and modest reductions in compensation. *e.g., Subway-Surface Supervisors Ass'n. v. New York Transit Authority*, 375 N.E.2d 384 (N.Y. 1978); *Baltimore Teachers Union v. Mayor of Baltimore*, 6 F.3d 1012 (4th Cir. 1993) (compensation reduction of less than 1%).

[14] California's Contracts Clause provides, "A bill of attainder, ex post facto law, or law impairing the obligation of contracts may not be passed." CAL. CONST. art. I, § 9.

But, as in California, the provision of the Alabama Constitution at issue was merely a Contracts Clause - again similar in language to Michigan's Contracts Clause[15] - and not a Pension Clause. The most that the Emergency Manager's argument might establish is that if the Michigan Constitution had only a Contracts Clause, and not a Pension Clause, then pensions might have no greater protection than other contracts. However the fact is that the Michigan Constitution contains a Pension Clause and protects pensions absolutely.

31.     Because the Pension Clause is part of the Constitution of the State of Michigan, no statute of the State may violate the Pension Clause, and no statute of the State may authorize anyone acting on behalf of the State or its municipalities to violate the Pension Clause. Put another way, when acting in aid of its sovereign powers, a State cannot violate its own Constitution. Any action by a State in violation of its own Constitution is, in the words of *Bekins,* an action "in derogation of its sovereign powers." If, as the Emergency Manager contends, Chapter 9 authorizes the Emergency Manager to submit and the bankruptcy court to approve a plan which violates the Pension Clause, then the State of Michigan's consent to the bankruptcy petition is in derogation of its sovereign powers, and the constitutional basis for Chapter 9 - that a State's consent is given in aid of its sovereign powers - collapses.

32.     This conclusion is also compelled by the underlying analysis in *Bekins,* in which the Supreme Court grounded a State's ability to consent to federal bankruptcy proceedings on a State's right, as a sovereign, to enter into contracts. The Supreme Court held:

> It is of the essence of sovereignty to be able to make contracts and give consents bearing upon the exertion of governmental power. This is

---

[15]Alabama's Contracts Clause provides, "That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment." ALA. CONST. art. I, § 22.

constantly illustrated in treaties and conventions in the international field by which governments yield their freedom of action in particular matters in order to gain the benefits which accrue from international accord.

\* \* \*

The reservation to the States by the Tenth Amendment protected, and did not destroy, their right to make contracts and give consents where that action would not contravene the provisions of the Federal Constitution. The States with the consent of Congress may enter into compacts with each other and the provisions of such compacts may limit the agreeing States in the exercise of their respective powers. Nor did the formation of an indestructible Union of indestructible States make impossible cooperation between the Nation and the States through the exercise of the power of each to the advantage of the people who are citizens of both.

*Bekins,* 304 U.S. at 51-53.

33.     The right of a Sovereign State (or country) to enter into contracts is necessarily limited by its own constitution.  To illustrate: the United States, as a sovereign country, has the sovereign right to enter into "treaties and conventions in the international field by which [it would] yield [its] freedom of action in particular matters," but the United States could not enter into a treaty under which it agreed, for example, to suspend freedom of speech as guaranteed by the First Amendment, "in order to gain the benefits which accrue from international accord."  By like reasoning, Michigan, as a sovereign State, may be able to grant consent to its municipalities to file federal bankruptcy proceedings, but it cannot do so if, as a result of its so doing, Chapter 9 would suspend the Pension Clause.

34.     In other words, if Chapter 9 is as broad as the Emergency Manager contends, then Chapter 9 is unconstitutional and the City cannot be a debtor in Chapter 9.

**B.     If Chapter 9 Permits Michigan's Executive Branch to Consent to a Limitation on its Sovereignty not Authorized by its People, the Federal Statute is Unconstitutional**

35.     There  is a serious fundamental question whether, in light of recent Supreme Court precedent, Chapter 9 violates the Tenth Amendment to the U.S. Constitution in a broader

manner. It may not be necessary to reach this question because the case can be resolved on any or all of the narrower grounds set forth below.[16] If it is necessary to reach this question, however, its resolution will have profound implications for municipalities, and creditors of municipalities, across the nation.

36.    The foundation of *Bekins* was that a State's authorization of a bankruptcy petition filed by one of its municipalities eliminated any violation of the Tenth Amendment:

> The bankruptcy power is competent to give relief to debtors in such a plight and, if there is any obstacle to its exercise in the case of districts organized under state law it lies in the right of the State to oppose federal interference. The State steps in to remove that obstacle.

304 U.S. at 54. There has been a recognized and significant shift in the position of the Court on issues of federalism.

37.    Critically, the Supreme Court has weakened if not rejected the entire foundation of *Bekins*—that a State's consent can remedy any violation of the Tenth Amendment and principles of federalism as they affect individual citizens.[17]

38.    In *New York v. United States,* 505 U.S. 144 (1992), in holding unconstitutional a federal statute which compelled States to take certain steps to dispose of radioactive waste generated within their borders, the Supreme Court held:

> The Constitution does not protect the sovereignty of States for the benefit of the States or state governments as abstract political entities, or even for the benefit of the public officials governing the States. To the contrary, ***the Constitution divides authority between federal and state governments for***

---

[16] The Emergency Manager has also argued, in reliance on *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 US 477, 484 (1989), that even if this Court reaches the conclusion that *Bekins* is no longer good law—and that Chapter 9 is therefore unconstitutional—it should nevertheless follow Bekins, "leaving to [the Supreme] Court the prerogative of overruling its own decisions." (Dkt. 765 at 12.) That argument is a compelling reason to resolve this case on one of the narrower grounds set forth above.

[17] Mayer, *State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9*, 85 Amer. Bank. Law Journal 363 (Fall 2011).

19

13-53846-swr Doc 8745 Filed 09/15/14 Entered 09/15/14 19:22:25 Page 27 of 47
13-53846-swr Doc 6065 Filed 07/15/14 Entered 07/15/14 23:42:17 Page 27 of 47

*the protection of individuals.* State sovereignty is not just an end in itself: "Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." *Coleman v. Thompson,* 501 U. S. 722, 759 (1991) (Blackmun, J., dissenting). "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft,* 501 U. S. [452,] 458 [(1991)]. See The Federalist No. 51, p. 323 (C. Rossiter ed. 1961). *Where Congress exceeds its authority relative to the States, therefore, the departure from the constitutional plan cannot be ratified by the "consent" of state officials.*

505 U.S. at 149. (emphasis added).

39.     In *Printz v. United States,* 521 U.S. 898 (1997), the Supreme Court held

unconstitutional a portion of the Brady Handgun Violence Prevention Act, Pub. L. 103-159, 107

Stat. 1536, commanding state and local law enforcement officers to conduct background checks

on prospective handgun purchasers and to perform certain related tasks.

40.     In so doing, the Supreme Court reiterated the federalism principles set forth in

*New York v. United States,* holding:

It suffices to repeat the conclusion: "the Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States."[*New York v. United States*, 505 U.S.] at 166. The great innovation of this design was that "our citizens would have two political capacities, one state and one federal, each protected from incursion by the other"—"a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, *its own set of mutual rights and obligations to the people who sustain it and are governed by it*." *U. S. Term Limits, Inc. v. Thornton,* 514 U. S. 779, 838 (1995) (Kennedy, J., concurring).

521 U.S. at 920.  And in *Bond v. United States,* which raised the question whether Congress

could enact a federal criminal statute to govern activity traditionally subject to only State law, the

Supreme Court stated yet again:

The limitations that federalism entails are not therefore a matter of rights belonging only to the States. States are not the sole intended beneficiaries of federalism. See *New York [v. United States,* 505 U.S. 144, 181 [(1992)].

> ***An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable.*** Fidelity to principles of federalism is not for the States alone to vindicate.

131 S.Ct. 2355, 2364 (2011) (emphasis added); *See also United States v. Felts,* 674 F.3d 599, 607 (6th Cir. 2012) (applying *Bond*).

41.     When these principles are applied in the municipal bankruptcy context, it is apparent that the concepts under which the Supreme Court upheld the constitutionality of municipal bankruptcy in *Bekins* have been soundly rejected by the Court. This can be demonstrated by three points of analysis.

42.     **First,** in *Bekins,* the Supreme Court found a predecessor statute to Chapter 9 constitutional specifically because no municipality could seek federal bankruptcy relief unless its doing so was "authorized by state law." 304 U.S. at 51.  In *New York,* the Supreme Court held that "Where Congress exceeds its authority relative to the States, therefore, the departure from the constitutional plan cannot be ratified by the 'consent' of state officials." 505 U.S. at 149.

43.     **Second,** in *Bekins,* the Supreme Court analogized a State's granting to consent to the exercise of the federal bankruptcy power over its municipalities to a country's exercise of its treaty power, under which "governments yield their freedom of action in particular matters in order to gain the benefits which accrue from international accord." 304 U.S. at 52.  In *Printz,* the Supreme Court held that there could be no reallocation of power between the state and federal governments because each has "its own set of mutual rights and obligations to the people who sustain it and are governed by it." 521 U.S. at 920.

44.     **Third,** in *Bekins,* the Supreme Court evaluated the Tenth Amendment and federalism issues as though the only rights at stake were those of the States—even though the appellees were bondholders affected by the bankruptcy of an irrigation district.  304 U.S. at 46.

In *Bond,* the Supreme Court held that "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable." 131 S.Ct. at 2364.

45.     Therefore, Chapter 9 "upset[s] the constitutional balance between the National Government and the States." *Id.* Retired employees of the City of Detroit, with vested pension rights protected by the Pension Clause of the Michigan Constitution, will suffer "concrete, particular, and redressable" injury if those rights are made subject to federal bankruptcy law. *Id.* Therefore, subjecting individual members of the retiree community with vested rights to the vagaries of federal bankruptcy law despite the express protections of their state constitution as reflected in the Pension Clause violates their Tenth Amendment and federalism rights. In this context, Chapter 9 appears to recognize and authorize a state official's actions derogation of the sovereignty limits adopted by the people of Michigan. Such derogation cannot be consented to by state officials. Under federalism, the retirees cannot be asked to endure a federal bankruptcy proceeding in the hope that a plan to be proposed by the very officials who have openly championed the demise of retirement compensation will, nonetheless, respect the Pension Clause. The state promised and state protected rights afforded retired employees of the City of Detroit, a municipality of the State of Michigan, under the Constitution of the State of Michigan, simply cannot be subject to any review, let alone elimination or alteration in a federal bankruptcy court.

## II. IT IS NOT NECESSARY FOR THE COURT TO REVIEW THE CONSTITUTIONALITY OF CHAPTER 9 BECAUSE THE EMERGENCY MANAGER'S PETITION FOR THE CITY OF DETROIT DOES NOT MEET THE BANKRUPTCY CODE REQUIREMENTS FOR ELIGIBILITY

46. The Committee does not believe that it is necessary for this Court to reach the question of whether Chapter 9, as applied to the City of Detroit's petition, is unconstitutional under the Tenth Amendment or as a matter of Michigan's sovereignty preserved to its Citizens. As shown below, the authorization itself is flawed as a matter of Michigan law and thus inadequate under 11 U.S.C. 109(c)(2) and lacks good faith under 11 U.S.C.§921(c).

47. At the root of the distress evidenced by the 109 objections filed by various organizations and citizens of Michigan and creditors of the City, is that the authorizations that proceeded the filing were intended and do in fact violate the Michigan Constitution with respect to its single largest economic constituency – the retiree community.

48. Indeed, the only court thus far to have addressed this issue has held that the City's actions are constitutionally violative. *See Flowers, et al. v. State of Michigan, et al.*, Case No. 13-000734-C2-C30 (Temporary Order dated July 18, 2013) and *Flowers, et al. v. State of Michigan, et al.*, Case No. 13-734-C2 (Order of Declaratory Judgment dated July 19, 2013).

49. It is because the authorizations that preceded the action by the Emergency Manager have been ruled unlawful, so is the Emergency Manager's actual authorization of the Chapter 9 petition. *e.g. In re City of Bridgeport*, 129 B.R. 332, 339 (Bankr. D. Conn. 1991) (sustaining objection that Chapter 9 was unauthorized where debtor was not insolvent); *In re City of Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011) (holding city council failed to show state authorization statute overrode Pennsylvania's charter law and only mayor had the right to initiate legal action, including a chapter 9 petition).

50.     The Emergency Manager possesses and has shown to the Court an authorization from the Governor dated July 18, 2013, an appointment letter addressed to Kevyn Orr as Emergency Manager, the existence of a Financial Review Board determination of a financial crisis for the City of Detroit and the existence of a statute (PA 436) requiring such steps in advance of a Chapter 9 petition for a municipality with the State of Michigan (the "Authorization Papers").  However, the Authorization Papers are neither dispositive or even persuasive on the issue of authorization under 11 U.S.C.§109(c)(2) and related provisions.

**A.     The Burden is on the Debtors to Show Compliance With Sections 109(c) and 921(c)**

51.     It is the City's burden to show *all* of the elements of eligibility *and* good faith.  *In re City of Bridgeport*, 129 B.R. at 334 (holding that the City failed to meet its burden of proving insolvency).  Those elements are set forth in 11 U.S.C. §109(c) and 11 U.S.C. §921(c). The City may be a debtor under Chapter 9 of the Bankruptcy Code if and only if it:

> (1) is a municipality;
>
> (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State Law to authorize such entity to be a debtor under such chapter;
>
> (3) is insolvent;
>
> (4) desires to effect a plan to adjust such debts; ***and***
>
> (5) (A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
>
> (B) has negotiated in good faith with creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
> (C) is unable to negotiate with creditors because such negotiation is impracticable; or

(D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

11 U.S.C. § 109(c)(1-5) (emphasis added).

52.     Section 921(c) of the Bankruptcy Code provides that "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of [the Bankruptcy Code]." 11 U.S.C. § 921(c).   Courts have ruled that after an objection to the petition, the bankruptcy court *must* dismiss the case if the petition does not meet the requirements of the Bankruptcy Code, notwithstanding the seemingly permissive language of section 921(c). *See, e.g., In re New York City Off-Track Betting Corp.*, 427 B.R. 256, 264 (Bankr. S.D.N.Y. 2010) (citing *Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 289 (9th Cir. B.A.P. 2009) for proposition that "Courts must dismiss the petitions of debtors filing under chapter 9 who fail to satisfy [the] requirements [of section 109(c)]"); *In re Suffolk Regional Off-Track Betting Corp.*, 462 B.R. 397, 421 (Bankr. E.D.N.Y. 2011) (citation omitted) ("Despite the permissive statutory language, courts have construed § 921(c) to require the mandatory dismissal of a petition filed by a debtor who fails to meet the eligibility requirements under §109(c).").

53.     With the exception of the section 109(c)(2) requirement the eligibility requirements are "federal questions based on, and created by, the federal Bankruptcy Code and subject to a federal rule of decision." *In re City of Stockton, Cal.*, 475 B.R. 720, 729 (Bankr. E.D.Cal. 2012).   Section 109(c)(2) is unequivocal, however, that the question of a municipality's authorization to commence a Chapter 9 case "presents a question of pure state law." *Id.*; *See Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (citing to 109(c)(2) as an example of how "Congress, when it desired to do so, knew how to restrict the scope of applicable law to 'state

law' and did so with some frequency"); *In re City of Cent. Falls, R.I.*, 468 B.R. 36, 74 (Bankr. D.R.I. 2012) ("A municipality, if it is eligible at all, is eligible as it exists in state law."); *In re Suffolk Regional Off-Track Betting Corp.*, 462 B.R. at 415 (chapter 9 petition dismissed because entity was "not specifically authorized by state law to file its bankruptcy petition"); *In re City of Colorado Springs Spring Creek General Imp. Dist.*, 177 B.R. 684, 694 (Bankr.D.Colo. 1995) ("It is state law rather than the federal law which determines the eligibility of municipalities to seek relief under Chapter 9.").

54. As one bankruptcy court has observed, a "state serves as a municipality's gatekeeper into Chapter 9." *Harrisburg*, 465 B.R. 744, 752 (Bankr. M.D. Pa. 2011); *In re City of Vallejo*, 403 B.R. 72, 76 (Bankr. E.D. Cal. 2009), *aff'd IBEW, Local 2376 v. City of Vallejo (In re City of Vallejo)*, 432 B.R. 262 (E.D. Cal. 2010). Bankruptcy courts exercise jurisdiction carefully[18] when the authority to file bankruptcy under state law is questioned "in light of the interplay between Congress' bankruptcy power and the limitations on federal power under the Tenth Amendment." *Harrisburg*, 465 B.R. at 754 (internal citation omitted); *see also Suffolk Regional Off-Track Betting Corp.*, 462 B.R. at 420 (internal citations omitted) (emphasis added) ("Although §109(c) should be construed broadly to give effect to Congress'[s] intent 'to expand the applicability of chapter IX as much as possible' . . . the Court may not accomplish this by turning a blind eye to New York law governing the scope of a county's authority."). "If the petitioner is unable to demonstrate that all of the elements have been satisfied, the petition must be dismissed." *Harrisburg*, 465 B.R. at 752.

---

[18] The Committee does not accept the jurisdiction of this court to rule on matters of state constitutional law or US constitutional law. *See* note 7, *supra*.

**B. The Authorizations Relied Upon by the Emergency Manager Were Flawed Under the Michigan Constitution**

55. The Bankruptcy Code is explicit as to who may be a debtor under Chapter 9. Pursuant to Bankruptcy Code section 109(c)(2), the only entity that may be a Chapter 9 debtor is one that is *specifically authorized* by State law or by a governmental officer or organization *empowered by State law* to authorize such entity to be a debtor under Chapter 9. 11 U.S.C. § 109(c)(2) (emphasis added).

56. The City argues that it satisfied section 109(c)(2) because the Emergency Manager has received and submitted the Authorization Papers. (Dkt. 765 at 19-21). The City's argument, however, seeks to elevate form over substance and does not meet its heavy burden.

**1. PA 436 is Squarely at Odds With the Pension Clause of Michigan's Constitution and Therefore Unconstitutional**

57. The Emergency Manager contends that it may use the powers granted to him under PA 436 and Chapter 9 to modify constitutionally protected rights. In fact, all of the mentioned limitations contained within PA 436, are found only in those sections of the statute that apply to receiverships and consent agreements with municipalities. In contrast, there are no express statutory limitations on the manner or purpose of a chapter 9 filing once the requisite financial emergency has been found. As noted by the Sixth Circuit in *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *1-2, the Michigan legislature evidenced an unconstitutional, and undemocratic purpose in crafting PA 436.[19] Moreover, legislative contemplation to modify pension benefits through PA 436 is a direct and unconstitutional assault on the Pension Clause of the Michigan Constitution, which categorically prohibits all state

---

[19] "Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency managers to break collective bargaining agreements and to ignore retirement commitments. M.C.L. §§ 141.1501-1531 (rejected by referendum 2012)." *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3.

governmental authorities and its municipal subdivisions from modifying accrued retirement benefits. *See* Part I.A., *supra; see also Seitz v. Probate Judges Retirement System*, 189 Mich. App. 445, 474 N.W. 2d 125, 128 (1991) ("[U]nder Art. 9, § 24, a retirement benefit cannot be reduced."); *In re Enrolled Senate Bill 1269*, 209 N.W.2d 200, 202 (Mich. 1973) ("[U]nder [art. IX, § 24] constitutional limitation the legislature cannot diminish or impair accrued financial benefits."); *In re Request for Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 806 N.W.2d 683, 694 (Mich. 2011) ("The obvious intent of § 24 . . . was to ensure that public pensions be treated as contractual obligations that, once earned, could not be diminished."). In short, to the extent that PA 436 does not protect pension benefits from impairment in bankruptcy, it violates the Michigan Constitution.

58. The unconstitutionality of PA 436 therefore renders the purported authorization under Section 109(c) of the Bankruptcy Code a nullity. Therefore, neither the City of Detroit, nor the Emergency Manager, has been "specifically authorized … by State law" to file a bankruptcy petition.

2. **The Conflict Between PA 436 and the Pension Clause of the Michigan Constitution Cannot be Reconciled**

a. The Attorney General's Position Should not be Adopted

59. In a statement filed in the Bankruptcy Court, Michigan Attorney General Schuette has taken the position that because "[t]he Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution," PA 436 should be construed to require that any bankruptcy plan submitted by the Emergency Manager comply with the Pension Clause. (Dkt. 481 at 6). If PA 436 were ambiguous in this respect, then the Attorney General's proposed construction would be supported by the principle that any ambiguity in a statute should be construed in a manner that renders the statute constitutional. *McDougall v. Schanz,* 461 Mich.

28

13-53846-swr  Doc 67445-3  Filed 09/15/14  Entered 09/15/14 28:42:25  Page 36 of 47
13-53846-swr  Doc 67445-3  Filed 09/15/14  Entered 09/15/14 28:42:25  Page 36 of 47

15, 24, 597 N.W.2d 148, 153 (Mich. 1999). However, PA 436 is not ambiguous on this point and cannot be saved by the principle that any ambiguity in a statute should be construed in a manner that renders the statute constitutional.

60.     PA 436 provides that actions taken by the Emergency Manager outside of bankruptcy be in full compliance with the Pension Clause, PA 436, §§ 11, 12(m), 13, M.C.L. §§ 141.1551, 1552(m), 1553, but it contains no such restriction on actions by the Emergency Manager taken in a bankruptcy proceeding. PA 436 § 18, M.C.L. § 141.1558.

61.     The Michigan Legislature, the Governor, and the Emergency Manager have each made clear that abrogation of municipal retirement compensation rights was the legislative intent of the Act and is a central purpose of this bankruptcy. That intent also has recently been recognized by the 6th Circuit in *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3. PA 436 is as clear (and as unconstitutional, under the Michigan Constitution) as if it explicitly stated, "Outside of a bankruptcy proceeding, the Emergency Manager must abide by the Pension Clause, but in any bankruptcy proceeding, the Emergency Manager is hereby authorized to violate the Pension Clause." Because PA 436 is unambiguous, it must be construed as written. *Fisher Sand and Gravel Co. v. Neal A. Sweebe, Inc.,* No. 143374, 2013 WL 3924324, at *5 (Mich. July 30, 2013) (citing *Sun Valley Foods Co. v. Ward,* 460 Mich. 230, 236, 596 N.W.2d 119 (Mich. 1999)).

62.     While it is true, as the Attorney General states, that "[t]he Michigan Legislature cannot enact laws that authorize local governments to violate the Michigan Constitution," the conclusion is inescapable that, by enacting PA 436, the Michigan Legislature has attempted to do just that. Indeed, the Legislature did worse - it enacted a law that authorized an appointed Emergency Manager, acting in place of a local government, to violate the Michigan Constitution.

> b.  The City of Detroit Cannot Rescue the Unconditional Authorizations

63.  The City of Detroit attempts to reconcile PA 436 with the Pension Clause by suggesting the mere act of authorization does not "diminish or impair" pension benefits in that the City's pension obligations remain unimpaired after the petition. *See* (Dkt. 765 at 21-22). That logic must be seen to fail for several reasons.

64.  First, the City conveniently ignores that the authorization of bankruptcy is an essential step in an orchestrated attack to unilaterally modify retiree rights.  The Michigan Legislature,[20] the Governor, and the Emergency Manager each have made clear that the intent in authorizing bankruptcy is to modify pension and retiree healthcare rights.  The Legislature omitted any obligation to abide by the Pension Clause in the bankruptcy provisions of PA 436. Although authorized by PA 436 to "place contingencies" on a local government's proceeding under Chapter 9—and thus could have made explicit that any bankruptcy plan must respect the Pension Clause—the Governor explicitly chose "not to impose any such contingencies." (Dkt. 1 at 16).  The Emergency Manager has expressly stated that "there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons," which he states are permissible because "federal supremacy trumps state law." (Dkt. 505 at ¶12).  The fact remains that unilateral impairment of pension rights is not possible without authorization of a bankruptcy petition, therefore the mere act of authorization is properly considered an impairment.

---

[20]"But Public Act 72 did not give emergency managers the power to modify collective bargaining agreements or pension rights.  Critics of Public Act 72 complained that it did not give emergency managers the powers sometimes necessary to address municipalities' structural budget problems, especially financial problems flowing from pension commitments. Critics called for a new law, and Public Act 4 was born." *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3(emphasis added).

65.     Second, the City argues that the Pension Clause does not conflict with PA 436 because it does not prohibit modification of pension rights in a Chapter 9 bankruptcy.  As more fully set forth in Part II.A below, the City's interpretation of the Pension Clause fails to afford meaning to its plain meaning and must be rejected as a matter of law.[21]

### C.     The Governor's Authorization Pursuant to PA 436 is not Valid and Void *Ab Initio* Under Michigan's Constitution, and so is That of the Emergency Manager

66.     The Governor is duty bound to uphold not stray from the Michigan Constitution. The Michigan Constitution demands that "the governor shall take care that the laws be faithfully executed." MICH. CONST. art. V, § 8.[22]  The single most important law for the Governor to uphold is the Michigan Constitution.  "[T]he plain provisions of the Constitution are paramount." *Twp. of Dearborn v. Dearborn Twp. Clerk*, 55 N.W.2d 201, 207 (Mich. 1952).  The proposition that the "Michigan Constitution is a limitation on the plenary power of government" is one "so basic as to require no citation." *Smith v. Michigan*, 410 N.W.2d 749 (Mich. 1987) (J. Boyle, concurring in part and dissenting in part).  It "is the fundamental law to which all other laws must conform." *Id.* "Public officers have and can exercise only such powers as are conferred on them by law." *Sittler v. Bd. of Control*, 53 N.W.2d 681, 684 (Mich. 1952) (citations omitted).  It is thus clear that the Michigan Constitution provides clear limitations on actions that may be taken by each branch of government, and no branch has the authority to eradicate constitutional

---

[21]*See Infra*  Part II.A.

[22]The Michigan Constitution requires that all officers—legislative, executive and judicial—in the state of Michigan must take an oath to support the Constitution of the United States and the Constitution of the state of Michigan. MICH. CONST. 1963 art. XI, § 1. Michigan law also requires that "[e]very person elected to the office of governor . . . before entering upon the duties of his office, shall take and subscribe to the oath as provided in section 1 of article 11 of the state constitution and deposit same with the secretary of state." M.C.L. § 168.64. In addition: "All persons now employed, or who may be employed by the state of Michigan . . .

guarantees. *See Musselman v. Governor of Mich.*, 533 N.W.2d 237, 244-45 (Mich. 1995); *People ex rel Metevier v. Therrien*, 45 N.W. 78, 80 (Mich. 1890) ("The Governor cannot, by any act of his own, enlarge the power granted him by the Legislature . . . [and] cannot foreclose the right of the courts to preserve . . . constitutional rights."). Accordingly, the Governor can only exercise the power granted to him by law, and he is unable to act in violation of the State Constitution.

67. As established above, the Governor is required to uphold the Michigan Constitution and, therefore, is duty-bound to prevent the City from diminishing or impairing the "accrued financial benefits" of its pension plan and retirement systems. Moreover, financial distress is not grounds for the Legislature or the Executive branch to abrogate the Michigan Constitution. Indeed, the Michigan Supreme Court has specifically ruled that the Governor cannot violate Article IX, section 24 - even if only done so "temporarily" or in response to a financial crisis. In *Musselman, supra,* a former Michigan governor attempted to reduce expenditures by decreasing appropriations to the schools' retirement system by $54 million. The plaintiffs, a group of current and retired public school employees, argued that the governor's actions violated the second sentence of Article IX, section 24, which requires "financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities." The governor argued that his power under Michigan Constitution article 5, section 20 (which permits the governor to "reduce expenditures") authorized him to do so. *Musselman*, 533 N.W.2d at 239-40.

68. The court disagreed with the governor and started by acknowledging the unique status of pension benefits: "pension obligations differ from nearly every other type of government spending insofar as they simply cannot be reduced or cut . . . Michigan

_____

shall . . . take and subscribe to the oath or affirmation required of members of the legislature and

32

13-53846-swr Doc 67445 Filed 09/15/11 Entered 09/15/11 29:22:25 Page 40 of 47
13-53846-swr Doc 67445 Filed 09/15/11 Entered 09/15/11 28:14:17 Page 40 of 47

governmental units do not have the option . . . of not paying retirement benefits." *Musselman*, 533 N.W.2d at 243. The Court ruled that although the Michigan Constitution expressly allowed the Governor to reduce expenditures and that "education has not been immunized from emergency reductions," the governor still could not reduce expenditures if it ran afoul of another constitutional provision (namely, Article IX, section 24). *Id.* at 244. Further, "[Article 5, section 20] certainly would not authorize the government to refuse to satisfy its contractual obligations, such as pension payments to retirees," even "in an emergency." Id. The court also rejected the governor's argument that the violation was merely "temporary," holding that Governor lacks "authority to violate other constitutional provisions even temporarily." *Id.* at 245. Lastly, the court ruled that the Legislature was likewise barred from adopting the governor's unconstitutional strategy: "Insofar as it authorizes the Governor to select and implement spending cuts in an emergency, it simply affords him legislative power. But the Legislature does not have authority to fail to prefund a pension fund, even temporarily." *Id.*

69. Michigan Courts have long held that a Governor's actions outside the confines of the Michigan Constitution are "null and void." *Dullam v. Willson*, 19 N.W. 112 (Mich. 1984) . Moreover, such acts are deemed void ab initio. *See, e.g., McKane v. City of Lansing*, No. 96-2228, 1998 U.S. App. LEXIS 649, at *12-15 (6th Cir. Jan. 14, 1998) (affirming district court determination that city council's adoption of an early retirement plan was void *ab initio* when adopted via resolution, not ordinance). If an act is void *ab initio*, it is as though the act never occurred in the first place. *See Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 330 (Mich. 2012) (citing Black's Law Dictionary (9th ed.) and defining void *ab initio* as "[n]ull from the beginning, as from the first moment. . .").

---

other public officers by [MICH. CONST. art. XI, § 1]." M.C.L. § 15.151.

70.     In the municipal bankruptcy context, if the government official or entity authorizing the bankruptcy is acting *ultra vires*, then the bankruptcy filing is *not* "specifically authorized" and the petition must be dismissed. *See Suffolk Off-Track Betting Corp.*, 462 B.R. at 420-21 ("The County Resolution exceeded Suffolk County's authority and is therefore unconstitutional and void . . . Accordingly, Suffolk OTB has not complied with § 109(c)(2), and is therefore ineligible to be a debtor under chapter 9.") (internal citations omitted).

71.     Despite the Governor's obligation to the Michigan Constitution and in full knowledge of the Emergency Manger's recommendation to impair pensions and other retirement compensation benefits, on July 18, 2013 the Governor unconditionally authorized  the City's Chapter 9 filing.   In this case, the Governor exceeded his authority under the Michigan Constitution by authorizing the Emergency Manager to file a Chapter 9 petition without conditioning that authorization upon the preservation of the State constitutional protection of accrued pension benefits, and his action was therefore *ultra vires* and void *ab initio*. *McKane v. City of Lansing*, No. 96-2228, 1998 U.S. App. LEXIS 649, at *12-15. Because the Governor's action was void *ab initio*, the Emergency Manager had no authority to file a Chapter 9 petition under PA 436, and his actions in doing so were similarly void *ab initio.Id.*

72.     The Governor is not capable of delegating authority that he does not have to a third party (*i.e.*, the Emergency Manager) to take actions that would result in an abrogation of constitutional provisions.   In essence, the Governor cannot do indirectly what he cannot do directly. *See Attorney Gen ex rel Eaves v. State Bridge Com.,* 269 N.W. 388, 392 (Mich. 1936) ("It is a fundamental and familiar proposition of law that the State may not do indirectly that which it is forbidden to do directly.").

73.     It therefore follows that neither the Legislature nor the Governor may delegate to the Emergency Manager the authority to impair or diminish the accrued financial benefits of the Retirement Systems and their participants because Article IX, section 24 of the Michigan Constitution expressly denies the Governor that power. *See Musselman*, 533 N.W.2d at 245.

### D.     The City Cannot Satisfy Bankruptcy Code 109(c)(5) and is Subject To Dismissal Under Bankruptcy Code 921(c)

74.     The City's bankruptcy petition is subject to dismissal pursuant to section 921(c) of the Bankruptcy Code because the filing was in bad faith, and not in compliance with section 109(c)(5). Section 921(c) of the Bankruptcy Code provides that "[a]fter any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the debtor did not file the petition in good faith or if the petition does not meet the requirements of this title." 11 U.S.C. § 921(c). While this section is written in the permissive "may," courts have held that this section *requires* dismissal if the chapter 9 petition was not filed in good faith or the debtor does not meet the requirements of chapter 9. *In re Valley Health System,* 383 B.R. 156, 160 (Bankr. C.D. Cal. 2008); *In re County of* Orange, 183 B.R. 594, 599 (Bankr. C.D. Cal. 1995); *Int'l Ass'n of Firefighters, Local 1186*, 408 B.R. at 289.

75.     "Good faith is not defined in the Bankruptcy Code." *In re McCurtain Mun. Auth.*, No. 07-80363, 2007 WL 4287604, at *4 (Bankr. E.D. Okla. Dec. 4, 2007). However, the essence of the good faith requirement is to "prevent abuse of the bankruptcy process." *In re Villages at Castle Rock Metro Dist. No.* 4, 145 B.R. 76, 81 (Bankr. D. Colo. 1990). Courts have looked to the good faith requirements for Chapter 11 cases to determine whether a Chapter 9 Petition has been filed in good faith. *McCurtain Mun. Auth.*, 2007 WL 4287604 at *4 (referencing chapter 11 good faith standards to determine whether chapter 9 petition was filed in good faith) (quoting *Villages at Castle Rock*, 145 B.R. at 81); *County of Orange*, 183 B.R. at 608

(observing that "courts have ... applied to chapter 9 cases the judicial reasoning that developed in chapter 11 cases" regarding good faith). Relevant considerations regarding good faith under chapter 9 include "whether the City's financial problems are of a nature contemplated by chapter 9, whether the reasons for filing are consistent with chapter 9, the extent of the City's pre-petition efforts to address the issues, the extent that alternatives to chapter 9 were considered, and whether the City's residents would be prejudiced by denying chapter 9 relief." *Stockton*, 493 B.R. 772, 794 (Bankr. E.D. Cal. 2013) (citing 2 COLLIER ON BANKRUPTCY ¶ 921.04[2]). There is no good faith negotiation if a party "choose to ignore clear, unambiguous contractual rights of the other party." *In re Sullivan County Regional Refuse Disposal District*, 25 B.R. 60, 78 (Bankr. D.N.H. 1994). *A fortiori*, there can be no finding of good faith if an appointed state official consciously ignores the Michigan constitutional proscriptions under the Pension Clause.

76. That the Emergency Manager and the Governor) consciously ignored "clear, unambiguous" contractual rights protected by the Pension clause was manifested on many occasions. The prepetition actions of the Emergency Manger tend to indicate that at all times since his appointment the City was on a path careening towards a Chapter 9 filing. Both the Governor and Emergency manager evidenced a desire to achieve a result that they knew was unconstitutional as a matter of Michigan law. Even before the appointment of Kevyn Orr as Emergency Manager, Mr. Orr put in writing his views that the planning for a chapter 9 was a "run around" the Michigan constitution and the repeal of PA 4. PA 4 was crafted with the intent of impairing retirement compensation due to retired municipal employees. *City of Pontiac Retired Employees Ass'n.*, 2013 WL 4038582 at *3. The Emergency Manager waited until five weeks before obtaining authorization to file to submit his first "creditor proposal" to creditors, more than fifteen months after a financial review team issued its initial report advising that the

36

13-53846-tjt Doc 867-3 Filed 09/15/13 Entered 09/15/13 19:22:25 Page 44 of 47
13-53846-swr Doc 605 Filed 09/10/13 Entered 09/10/13 23:41:27 Page 44 of 47

city was "in a condition of severe financial distress." The Emergency Manager's June 14, 2013 City Proposal specifically stated "there *must be significant cuts in accrued, vested pension amounts for both active and currently retired persons*." (Ex A. to Dkt. 11 at 116) (emphasis added).

77.     Further, while retiree associations, the Retirement System and various unions all evidenced a desire to "negotiate" to avoid a chapter 9 filing,   rendering negotiations practicable,[23] there were no negotiations with creditors – merely a take it or leave it proposal. See (Dkts. 497, 506 and 512).[24]  There is no evidence that the City investigated  other alternatives to chapter 9.  It was preparing for a chapter 9 filing months before any creditor meetings to discuss restructuring options even started, and refused to negotiate with major creditor constituencies as required. Simply put, the predetermined filing was not done in good faith as required by Section 109(c)(5) and should be dismissed under Section 921(c).

---

[23]Despite the existence of the Weiler Class Settlement, and the presence of several retiree associations, the possibility of a defendants class action to bind all retirees to an agreed proposal seems never to have occurred to the City.

[24]The sole exception may have been the Swap Counterparties, whose negotiations led to the Forbearance Agreement and the assumption motion.  *See* Motion to Assume Lease or Executory Contract, *In re City of Detroit, Michigan*, Debtor, No. 13-53846 (Bankr. E.D. Mich. Aug. 19, 2013) (Dkt. 505 at ¶ 12).

## CONCLUSION

Wherefore, for the above reasons, the City of Detroit, Michigan's Chapter 9 petition should be dismissed and the Committee afforded all further relief that is just and equitable.

Dated: New York, New York
September 10, 2013

| | | |
|---|---|---|
| Carole Neville | Sam J. Alberts | By: /s/ Claude D. Montgomery |
| DENTONS US LLP | DENTONS US LLP | Claude D. Montgomery (P29212) |
| 1221 Avenue of the Americas | 1301 K Street, NW | SALANS FMC SNR DENTON |
| New York, New York 10020 | Suite 600, East Tower | EUROPE LLP |
| Tel: (212) 768-6700 | Washington, DC 20005-3364 | Rockefeller Center |
| Fax: (212) 768-6800 | Tel: (202) 408-6400 | 620 Fifth Avenue |
| carole.neville@dentons.com | Fax: (202) 408-6399 | New York, New York 10020 |
| | sam.alberts@dentons.com | Direct: (212) 632-8390 |
| | | claude.montgomery@dentons.com |

By: /s/ Matthew E. Wilkins
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 South Old Woodward, Suite 400
Birmingham, Michigan 48009
Direct: (248) 971-1711
Cell: (248) 882-8496
Fax: (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Counsel for the Official Committee of Retiree*

## CERTIFICATE OF SERVICE

I, Matthew E. Wilkins, hereby certify that service of the Objection of the Official Committee of Retirees to Eligibility of the City of Detroit, Michigan to be a Debtor Under Chapter 9 of the Bankruptcy Code was filed and served via the Court's electronic case filing and noticing system on September 10, 2013.

/s/ Matthew E. Wilkins
