**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| _____ | ) | |

# UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF CONSTITUTIONALITY OF CHAPTER 9 OF TITLE 11 <u>OF THE UNITED STATES CODE</u>

1353846131011000000000004

# TABLE OF CONTENTS

Procedural Background…………………………………………………………. 1

The AFSCME Objection…………………………………………………….... 2

The Committee Objection…………………………………………………. 2

Summary of Argument…………………………………………………. 3

Relevant History of Chapter 9……………………………………………….. 3

    I.    *Ashton* and *Bekins*……………………………………………. 3

    II.    Relevant Amendments to the 1937 Act………………………… 6

Argument……………………………………………………………….. 9

    I.    AFSCME's Facial Challenge Must Satisfy a Heavy Burden for Completely Invalidating Chapter 9…………………………….. 9

    II.    *Bekins* Binds This Court……………………………………….. 10

    III.    The Supreme Court Has Not Overruled *Bekins*………..………. 10

        A.    States Are Not Empowered to Adjust Municipal Debts…………………………………….... 10

        B.    The Supreme Court's Anti-Commandeering Decisions Have Not Overruled *Bekins*………………… 12

        C.    Chapter 9 Does Not Violate the Uniformity Requirement of the Bankruptcy Clause………………… 15

    IV.    The Committee Lacks Standing to Challenge Chapter 9………. 16

    V.    The Committee's Constitutional Challenge Is Not Ripe………. 17

    VI.    The Committee's Constitutional Challenge Lacks Merit……... 18

Conclusion…………………………………………………………… 19

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967)................................................................. 17

*Agostini v. Felton*, 521 U.S. 203 (1997) ......................................................................... 10

*Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513 (1936) ........... 4

*Ass'n of Retired Emps. of the City of Stockton v. City of Stockton* (*In re City of Stockton*),

    478 B.R. 8 (Bankr. E.D. Cal. 2012)...................................................................... 5, 8, 14

*Bailey v. Callaghan*, 715 F.3d 956 (6th Cir. 2013)............................................................ 9

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ................................................................... 9

*Brown v. Ferro Corp.*, 763 F.2d 798 (6th Cir. 1985) ....................................................... 18

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)......................................... 9

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) ......... 12

*Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*, 316 U.S. 502 (1942).............. 6, 11

*Grutter v. Bollinger*, 288 F.3d 732 (6th Cir. 2002)......................................................... 10

*Hutto v. Davis*, 454 U.S. 370 (1982).............................................................................. 10

*In re Barnwell County Hospital*, 459 B.R. 903 (Bankr. D.S.C. 2011) ............................ 17

*In re City of Stockton*, 486 B.R. 194 (Bankr. E.D. Cal. 2013)......................................... 13

*In re County of Orange*, 183 B.R. 594 (Bankr. C.D. Cal. 1995) ....................................... 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 16

*Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010) . 17

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)........................... 17

*National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998)..................................... 9

*New York v. United States*, 505 U.S. 144 (1992)............................................................. 12

*Printz v. United States*, 521 U.S. 898 (1997)................................................................. 12, 13

*Railway Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457 (1982) ........................................ 15

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989) ........................... 10

*Schultz v. United States*, 529 F.3d 343 (6th Cir. 2008)................................................... 15

*United States Trust Company of New York v. New Jersey*, 431 U.S. 1 (1977).......... 11, 12

*United States v. Bekins*, 304 U.S. 27 (1938).......................................................... passim

## Statutes

102 Stat. 3028 ................................................................................................................. 8

108 Stat. 4106 ................................................................................................................. 9

11 U.S.C. § 109(c)(2)...................................................................................................... 13

11 U.S.C. § 903................................................................................................................ 13

11 U.S.C. § 904................................................................................................................ 13

119 Stat. 23 ..................................................................................................................... 8

48 Stat. 798 ..................................................................................................................... 4

50 Stat. 653 ..................................................................................................................... 3

60 Stat. 409 ..................................................................................................................... 6

90 Stat. 315 ..................................................................................................................... 7

92 Stat. 2549 ................................................................................................................... 8

Ga. Code Ann. §  36-80-5 ............................................................................................... 13

## Other Authorities

H.R. Rep. No. 2246, 79th Cong., 2nd Sess. at 4 (1946)..................................................... 7

H.R. Rep. No. 835, 103rd Cong., 2nd Sess. at 45-46 (1994) ............................................. 8

**Treatises**

6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*, ¶ 900.LH[3]  (16th ed.

2013) ................................................................................................................ 6, 7

**Constitutional Provisions**

U.S. Const., art. I, § 10, cl. 1 ............................................................................. 4

Pursuant to this Court's *First Amended Order Regarding Eligibility Objections Notice of Hearings and Certifications Pursuant to 28 U.S.C. § 2403(a) & (b)* (the "Certification Order") (Docket No. 821) entered September 12, 2013, the United States of America hereby files this memorandum in support of the constitutionality of chapter 9 of title 11 of the United States Code (the "Bankruptcy Code").

## PROCEDURAL BACKGROUND

Pursuant to its *First Order Establishing Dates and Deadlines* (Docket No. 280), the Court fixed August 19, 2013, as the deadline for parties to file objections to the Debtor's eligibility for relief under chapter 9 of the Bankruptcy Code, except that any Committee of Retired Employees would have fourteen days after retention of counsel to file an eligibility objection.

The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees (collectively, "AFSCME") timely filed such an objection (Docket No. 505) (the "AFSCME Objection"), in which AFSCME alleged, among other things, that chapter 9 violates the United States Constitution.[1]  AFSCME also filed the notice required under Rule 5.1(a)(1) of the Federal Rules of Civil Procedure, as made applicable to this case by Rule 9005.1 of the Federal Rules of Bankruptcy Procedure, giving notice of its constitutional challenge to chapter 9 (the "Notice") (Docket No. 453).

On September 10, 2013, the Official Committee of Retirees (the "Committee") timely filed its *Objection to Eligibility of the City of Detroit, Michigan to Be a Debtor*

---

[1] Two other parties, Local 324, International Union of Operating Engineers and Local 517M, Service Employees International Union filed joinders (the "Joinders") (respectively, Docket Nos. 484 and 486) to the AFSCME Objection.

1

*Under Chapter 9 of the Bankruptcy Cod* (the "Committee Objection") in which it raised a constitutional challenge to chapter 9.

In its Certification Order, the Court (a) identified the AFSCME Objection, the Joinders and the Committee Objections as raising a legal issue as to whether "Chapter 9 of the Bankruptcy Code violates the United States Constitution," *Certification Order* at 1-2, and (b) pursuant to 28 U.S.C. § 2403(a), certified to the Attorney General of the United States the constitutional challenge to chapter 9 and ordered that the United States is permitted to intervene in this case for argument on that constitutional question, *Certification Order* at 7.

Accordingly, the United States hereby submits this memorandum to defend the constitutionality of chapter 9.

## THE AFSCME OBJECTION

AFSCME mounts a facial challenge to the constitutionality of chapter 9, i.e., the entire statute is unconstitutional regardless of how the provisions of chapter 9 are applied in this, or any other chapter 9, proceeding. In the AFSCME's view, "Chapter 9 . . . is an unconstitutional violation of federalism because [it] allows Congress to set the rules controlling State fiscal self-management." *AFSCME Objection* at ¶ 40; *Notice* at 1 ("[Chapter 9] violates the United States Constitution by infringing on individual rights to federalism as a result of interfering with the sovereignty of individual states (and their political subdivisions) to control their own fiscal affairs.").

## THE COMMITTEE OBJECTION

The Committee makes two main arguments. First, the Committee "challenges the existence of the required authorization under 11 U.S.C. § 109(c)(2) for the Chapter 9

2

petition." *Committee Objection* at ¶ 3.  The premise for this challenge is that the Debtor lacks authorization under the Michigan State Constitution to impair pension rights, *id*. at ¶¶ 55-65,  which it may ask the Bankruptcy Court to do in a plan of adjustment, *id*. at ¶ 24.  Second, the Committee argues that, if the Court "determine[s] such authorization can be found as a matter of state law, notwithstanding the [Michigan State Constitution], then Chapter 9 must be found to be unconstitutional as permitting acts in derogation of Michigan's sovereignty and the right of the people of Michigan to define and control the acts of their elected and appointed officials." *Id*. at ¶ 3.  Hence, the Committee asserts an "as-applied" challenge to chapter 9's constitutionality.   *Id*. at ¶ 46.  Pursuant to the Certification Order, we take a position only on the second argument.

## SUMMARY OF ARGUMENT

Neither the AFSCME Objection nor the Committee Objection is well founded. As to the former, the Supreme Court directly addressed and rejected the same type of federalism-based challenge to chapter 9's substantially similar predecessor statute, and as shown below, AFSCME's contention that subsequent Supreme Court decisions have effectively overruled that decision, *AFSCME Objection* at 18, is unavailing.  As to the Committee's as-applied challenge, the Committee lacks standing to assert such a challenge which, in any event, is not ripe for adjudication.

## RELEVANT HISTORY OF CHAPTER 9

**I.**      ***Ashton* and *Bekins***

In *United States v. Bekins*, 304 U.S. 27 (1938), the Supreme Court upheld a federal municipal bankruptcy act, Act of August 16, 1937, 50 Stat. 653 (the "1937 Act").

3

With the relevant exceptions noted below, the 1937 Act has, in large part, become the current version of chapter 9 in the Bankruptcy Code.

Congress enacted the 1937 Act in response to *Ashton v. Cameron County Water Improvement Dist. No. 1*, 298 U.S. 513 (1936), in which the Supreme Court declared Congress' previous municipal bankruptcy act, Act of May 24, 1934, ch. 345, 48 Stat. 798 (the "1934 Act"), unconstitutional as improperly interfering with state sovereignty. *Ashton*, 298 U.S. at 531 ("If obligations of states or their political subdivisions may be subjected to the interference here attempted, they are no longer free to manage their own affairs; the will of Congress prevails . . . [a]nd really the sovereignty of the state . . . does not exist.").

In upholding the 1937 Act in *Bekins*, the Supreme Court framed the issue as:

> whether the exercise of the federal bankruptcy power in dealing with a composition of the debts of [a municipality], upon its voluntary application of and with the State's consent, must be deemed to be an unconstitutional interference with the essential independence of the State as preserved by the Constitution.

*Bekins*, 304 U.S. at 49. Answering that question, the court held that the 1937 Act was "carefully drawn so as not to impinge upon the sovereignty of the State [which] retain[ed] control of its fiscal affairs" and that the bankruptcy power under it was "exercised . . . only in a case where the action of the [municipality] in carrying out a plan of composition approved by the bankruptcy court is authorized by state law." *Bekins*, 304 U.S. at 51. This careful line drawing, necessary to make the federal bankruptcy power available to financially distressed municipalities, arose from the Constitution's restriction on the states' ability to impair contracts under the Contracts Clause, U.S. Const., art. I, § 10, cl. 1. And if states did not want their municipalities to have this federal power, they could

4

decline to accept it. *Bekins*, 304 U.S. at 54. ("The bankruptcy power is competent to give relief to [municipal] debtors . . . and, if there is any obstacle to its exercise . . . it lies in the right of the State to oppose federal interference."); *see also Ass'n of Retired Emps. of the City of Stockton v. City of Stockton* (*In re City of Stockton*), 478 B.R. 8, 18 (Bankr. E.D. Cal. 2012) ("The Supreme Court . . . reason[ed] that [the 1937 Act] was a cooperative enterprise by state and federal sovereigns that was carefully drawn so as not to infringe state sovereignty [and] emphasized that a state 'retains control of its fiscal affairs' and that no 'control or jurisdiction over that property and those revenues of the petitioning agency necessary for essential governmental purposes is conferred' on the federal court.").

Notably, the 1937 Act contained two provisions embodying this respect for state sovereignty which remain part of chapter 9 of the Bankruptcy Code. First, section 83(c) of the 1937 Act made clear that the federal court could not "interfere with (a) any of the political or governmental powers of the [municipality]; or (b) any of [its] property or revenues . . . necessary for essential governmental purposes; or (c) any income-producing property, unless the plan of composition so provides." Second, section 83(i) stated that "[n]othing contained in this chapter shall be construed to limit or impair the power of any State to control, by legislation or otherwise, any municipality . . . in the exercise of its political or governmental powers, including expenditures therefor."[2]

---

[2] As explained below, sections 83(c) and 83(i) have become sections 904 and 903, respectively, in the Bankruptcy Code.

## II.     Relevant Amendments to the 1937 Act

The 1937 Act was originally intended to be temporary but after extending its expiration date several times, Congress in 1946, made it a permanent part of chapter IX of the Bankruptcy Act of 1898 (the "Bankruptcy Act").  60 Stat. 409 (1946).  When it did so, it amended section 83(i) of the 1937 Act to add a clause prohibiting state laws that "prescribe[ed] a method of composition of indebtedness" that would bind nonconsenting creditors.[3]  The amendment responded to the Supreme Court's decision in *Faitoute Iron & Steel Co. v. City of Asbury Park, N.J.*, 316 U.S. 502 (1942).  6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy*, ¶ 900.LH[3] at 900-29 (16th ed. 2013).   There, the Court rejected a Contracts Clause challenge to a New Jersey statute permitting a municipality to propose of a plan of composition of creditors' claims, subject to approval by 85% in amount of the creditors and a state agency, that was binding on nonconsenting creditors if a state court found that the municipality could not otherwise pay off its creditors and the plan was in the best interest of all creditors.  316 U.S. at 514-15.  In amending section 83(i), Congress acknowledged:

> State adjustment acts have been held to be valid, but a bankruptcy law under which bondholders of a municipality are required to surrender or cancel their obligations should be uniform throughout the 48 States, as the bonds of almost every municipality are widely held.  Only under a Federal

---

[3] The clause was added to the end of section 83(i) and provided:

> Provided, however, That no State law prescribing a method of composition of indebtedness of such agencies shall be binding upon any creditor who does not consent to such composition, and no judgment shall be entered under such State law which would bind a creditor to such composition without his consent.

law should a creditor be forced to accept such an adjustment without his consent.

H.R. Rep. No. 2246, 79th Cong., 2nd Sess. at 4 (1946).

Congress further amended chapter IX in 1976, Act of April 8, 1976, 90 Stat. 315 (1976) (the "1976 Act"), in response to New York City's financial crisis. *Collier on Bankruptcy*, ¶ 900.LH[4] at 900-29. While the 1976 Act made significant changes to chapter IX, those changes sought to make bankruptcy more feasible for larger municipalities with widely held debt and multitudinous contractual and financial relationships. For example, Congress (1) eliminated the consent requirements from both bondholders and all creditors needed to commence a case and (2) granted municipalities the power to reject executory contracts, avoid transfers and issue certificates of indebtedness. 1976 Act §§ 82(b)(1), (2) and 85(h).

Reflecting Congress' continued sensitivity to preserving state sovereignty and limiting the court's power, as expressed in the 1937 Act and acknowledged in *Bekins*, Congress also added new Bankruptcy Act section 82(c) (replacing the old section 83(c)), that deleted the phrase "necessary for essential government services" from the subsection's second paragraph.[4] Hence, "Congress made plain [in new section 82(c)]

---

[4] The new section 82(c) provided in full:

> Limitation.—Unless the petitioner consents or the plan so provides, the court shall not, by any stay, order or decree, in the case or otherwise, interfere with—,
> (1) any of the political or governmental powers of the petitioner;
> (2) any of the property or revenues of the petitioner; or
> (3) the petitioner's use or enjoyment of any income-producing property.

that it was preserving the strict limitation on judicial interference with political or governmental powers, property or revenue, or income producing property based on *Ashton* and *Bekins*." *In re City of Stockton*, 478 B.R. at 18 (citing H.R. Rep No. 94-260, 94th Cong., 1st Sess. at 18).

In 1978, Congress replaced the Bankruptcy Act with the Bankruptcy Code and incorporated chapter IX, as revised by the 1976 Act, into the new statute, renaming it chapter 9.  92 Stat. 2549.  When it did so, section 82(c) became section 904 with the addition of the preambular phrase "[n]otwithstanding any power of the court." *Stockton*, 478 B.R. at 19, and section 83(i) became section 903 of the Bankruptcy Code.

In 1994, Congress made further amendments to the Bankruptcy Code.  108 Stat. 4106.[5]  In the only amendment relevant here, it revised section 109(c)(2) regarding a municipality's eligibility to file a chapter 9 petition.  Congress deleted the requirement that a municipality be "generally authorized" by state law to file chapter 9 and inserted the requirement that it be "specifically authorized" to do so.  Previously, the 1976 Act added (and the 1978 Bankruptcy Code kept in section 109(c)(2)) the requirement that a municipality be "generally authorized" under state law to be eligible for chapter 9.  1976 Act § 84.  Congress made the 1994 change to resolve a court split over whether "generally authorized" required express authorization as opposed to authorization inferred from a municipality's general powers to control finances and sue and be sued. H.R. Rep. No. 835, 103rd Cong., 2nd Sess. at 45-46 (1994); *In re County of Orange*, 183 B.R. 594, 603-04 (Bankr. C.D. Cal. 1995).  With the change, "courts could no longer find

---

[5]  Congress amended chapter 9 in 1988 and 2005, as well, 102 Stat. 3028; 119 Stat. 23, but such amendments are not relevant to the constitutional challenges raised here.

the requisite authorization for the filing by implication," 183 B.R. at 604; instead, a state had to give a municipality express authority to file.

In sum, the 1937 Act upheld in *Bekins* is substantially the same municipal bankruptcy law that is now chapter 9 of the Bankruptcy Code which, like the 1937 Act, scrupulously respects state sovereignty and the principles of federalism.

## ARGUMENT

## I.     AFSCME's Facial Challenge Must Satisfy a Heavy Burden for Completely Invalidating Chapter 9

AFSCME must satisfy a heavy burden given the outcome it seeks – complete invalidation of chapter 9 without regard to the facts of, or parties to, any particular chapter 9 case.  As the Supreme Court recently held, "the distinction between facial and as-applied [constitutional] challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case. . . .  The distinction is both instructive and necessary, for it goes to *the breadth of the remedy employed by the Court*, not what must be pleaded in a complaint."  *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (emphasis added).  Given the breadth of the remedy AFSCME seeks, it bears "a heavy burden" because "invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort."  *National Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)); *Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013) (same).

As shown below, AFSCME cannot satisfy its heavy burden because *Bekins* remains good law that the Supreme Court has not *sub silentio* overruled in later decisions.

9

Accordingly, the Court should reject AFSCME's facial constitutional challenge to chapter 9.

## II.     *Bekins* Binds This Court

Since it decided *Bekins* over seventy-five years ago, the Supreme Court has not overruled its decision or even revisited it. As explained above, the municipal bankruptcy law it upheld has remained largely intact through chapter 9's enactment in the Bankruptcy Code. Indeed, the changes that have been made more clearly preserve state sovereignty and federalism. The AFSCME Objection cites no change from the provisions of the 1937 Act justifying a result here different than that in *Bekins*. The decision is directly on point and controls. Hence, this Court must follow *Bekins* and overrule the objection as only the Supreme Court, and not any lower court, may overrule Supreme Court decisions. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (reaffirming holding from *Rodriguez de Quijas*); *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam) (noting that lower federal courts must follow Supreme Court precedent lest "anarchy . . . prevail within the federal judicial system"); *Grutter v. Bollinger*, 288 F.3d 732, 744 (6th Cir. 2002) (citing *Agostini* and *Rodriguez de Quijas*).

## III.    The Supreme Court Has Not Overruled *Bekins*

*Bekins* controls the outcome of this challenge. AFSCME claims, however, that subsequent Supreme Court decisions effectively overruled *Bekins*. That is not correct.

### A.     States Are Not Empowered to Adjust Municipal Debts

Citing *Asbury Park*, AFSCME asserts that states possess a broad power to enact legislation to adjust municipal debts in a financial emergency, *AFSCME Objection* at 18,

undermining *Bekin's* holding that the Contracts Clause barred such enactments, 304 U.S. at 54. This is incorrect for three reasons. First, as explained above, Congress specifically overruled *Asbury Park* in 1946, when it amended section 83(i) of the 1937 Act and that amendment is now section 903 of the Bankruptcy Code. Second, as the Debtor correctly notes in its *Consolidated Reply to Objections to the Entry of an Order for Relief* ("Debtor's Reply") (Docket No. 765), if *Asbury Park* were read as AFSCME suggests, the Constitution's Contracts Clause would be a nullity. *Debtor's Reply* at 13. Third, *Asbury Park* was a unique case presenting extraordinary circumstances that the Court itself acknowledged in limiting its holding. 316 U.S. at 516 ("We do not go beyond the case before us.").

*Asbury Park* stands for the very limited proposition that disgruntled municipal bondholders cannot raise a viable Contracts Clause challenge when a state enacts a debt adjustment statute binding on those creditors that:

> (1) converts their bonds with little value and no chance of repayment into,

> (2) new bonds without a reduction in principal but with lower interest rates and longer maturities,

> (3) that increased 25% in value from the time of refunding to the time of filing suit.

*Asbury Park*, 316 U.S. at 513 (noting the refunding bonds "were selling at around 69 at the time of the refunding, while at about the time of the present suit was brought commanded a market at better than 90").

In fact, in the only other case AFSCME cites on this point, *United States Trust Company of New York v. New Jersey*, 431 U.S. 1 (1977), the Supreme Court reaffirmed *Asbury Park's* uniqueness and its inapplicability to virtually any other facts other than

those before it in 1942.  431 U.S. at 27 ("The only time in this century that alteration of a municipal bond contract has been sustained by this Court was in [*Asbury Park*].").  The Court thus rejected application of *Asbury Park* because the "instant case involve[d] a much more serious impairment than occurred in [*Asbury Park*]," *id*. at 28, and reiterated that "a State is not completely free to consider impairing the obligations of its own contracts on par with other policy alternatives," *id*. at 30; *see also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 n.14 (1983) ("When a State itself enters into a contract, it cannot simply walk away from its financial obligations.  In almost every case, the Court has held a governmental unit to its contractual obligations when it enters financial or other markets.").

Contrary to AFSCME's assertion, *Asbury Park* is not a writ large for states to enact municipal debt adjustment schemes notwithstanding the Contracts Clause and section 903 of the Bankruptcy Code.

B.      The Supreme Court's Anti-Commandeering Decisions Have Not
        Overruled *Bekins*

AFSCME also relies on the Supreme Court's anti-commandeering cases, *New York v. United States*, 505 U.S. 144 (1992), and *Printz v. United* State, 521 U.S. 898 (1997), to argue that the Supreme Court has silently overruled *Bekins*.  *AFSMCE Objection* at 18-26.  Not so.

*New York* and *Printz* involved federal legislation commandeering or coercing state legislatures, or state officers, to enact and enforce federal regulatory programs.  In *New York*, Congress had expressly directed states to take title to low level radioactive waste or enact legislation regulating it according to Congress' instructions.  505 U.S. at 175.  In *Printz*, the Brady Handgun Violence Prevention Act required state and local law

12

enforcement officers to conduct background checks on prospective handgun purchasers. 521 U.S. at 903-04. The Supreme Court held both enactments violated the Constitution because the "Federal Government may neither issue directives requiring the State to address particular problems, nor command the State's officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Id*. at 935.

Chapter 9 clearly does not fall within this type of constitutionally suspect legislation. In it, Congress has not compelled states to enforce, administer or even participate in federal bankruptcy proceedings. In fact, the opposite is true -- federal courts administer chapter 9 proceedings, and states voluntarily control whether their municipalities can file chapter 9 and under what terms. 11 U.S.C. § 109(c)(2).[6] Indeed, as discussed above, Congress amended chapter 9 in 1994, to require specific state authorization to file in order to curb a federal court's implying such authorization from more general powers granted a municipality. Moreover, once a municipality files, chapter 9 dutifully respects state sovereignty -- only municipalities can propose a plan of adjustment, *id*. at § 941; section 363's restrictions on use, sale or lease of property are inapplicable, *id*. at § 901; the court cannot appoint a trustee, *id*.; and municipalities can expend monies to settle lawsuits without prior court approval, *id*. at § 904; *In re City of Stockton*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013). Most significantly, chapter 9 specifically preserves state control over its municipalities in bankruptcy, 11 U.S.C. § 903, and expressly limits the court's control over a chapter 9 debtor, 11 U.S.C. § 904; *In re*

---

[6] The extent of the "non-coerciveness" of chapter 9 is seen in state legislation barring municipalities' access to chapter 9. *E.g.*, Ga. Code Ann. § 36-80-5 (statute denying municipalities' authorization "to file a petition for relief from payment of its debts as they mature or a petition for composition of its debts under any federal statute").

*City of Stockton*, 478 B.R. at 20 (Section 904 "is so comprehensive . . . that a federal court can use no tool in its toolkit . . . to interfere with a municipality regarding political or governmental powers."). In contrast to the statutes in the anti-commandeering cases, the manifest object of chapter 9 is <u>not</u> to direct the functioning of state government. *Printz*, 521 U.S. at 932. These provisions, almost all present in chapter 9 since *Bekins*, reflect the highest sensitivity of Congress not to overstep its bounds in respecting states' right and power to control their municipalities.

Despite this, AFSCME alleges that chapter 9 "obfuscate[es] the system of direct accountability" federalism must protect "[b]y outsourcing to the federal judiciary the problem of a state reorganizing its obligations," thereby providing states' unconstitutional "cover from its citizens by confusing them as to whom to accord 'blame' and 'credit' for the results." *AFSCME Objection* at 21. But how is assigning the oversight of a municipal debt reorganization to a federal court, with a state's consent, the equivalent of compelling a state to enforce a federal regulatory scheme? It is not. And how does chapter 9 even constitute outsourcing to a federal court when the court can use no "tool in its toolkit" to interfere with a municipality's political or governmental powers or property or revenue? It does not. And can there be any doubt who AFSCME and other eligibility objectors believe bears the responsibility for the Debtor's bankruptcy filing and the adverse impact it might have on their interests through a plan of adjustment? Certainly not – it is the State of Michigan's officials acting under state law enacted by the Michigan legislature. And chapter 9 does not interfere with the fundamental political process, the individual citizen's right to vote, through which those officials can be held accountable for providing the framework and authorization under which the Debtor entered

bankruptcy. Contrary to AFSCME's contention, Chapter 9 does not "eviscerate" accountability or harm "individual rights to federalism."

Thus, the anti-commandeering decisions have not implicitly overruled *Bekins*, and chapter 9 remains constitutional today as it was when *Bekins* was decided.

C.    Chapter 9 Does Not Violate the Uniformity Requirement of the Bankruptcy Clause

Ironically, after claiming chapter 9 infringes on states' sovereignty, AFSCME then argues the opposite – it purportedly affords states too much power in deciding whether and under what terms their municipalities may file chapter 9, thus violating the uniformity requirement of the Bankruptcy Clause. *AFSCME Objection* at 58 ("But by ceding the ability to define its own qualifications for a municipality to declare bankruptcy, chapter 9 permits the promulgation of non-uniform bankruptcies within states.").

No decision supports this argument, and for the reasons stated in the Debtor's Reply, *Debtor's Reply* at 18-19, AFSCME is incorrect. The "uniformity requirement was drafted in order to prohibit Congress from enacting private bankruptcy laws," *Schultz v. United States*, 529 F.3d 343, 352 (6th Cir. 2008) (quoting *Railway Labor Execs. Ass'n v. Gibbons*, 455 U.S. 457, 472 (1982)); that is not the case with chapter 9. No federal court has interpreted the uniformity requirement in the manner AFSCME suggests, and indeed, the Supreme Court has only once invalidated a federal statute on uniformity grounds when the statute, by its express terms, applied to only one entity. *Gibbons*, 455 U.S. at 472-73. Hence, the uniformity challenge should be rejected.

## IV. The Committee Lacks Standing to Challenge Chapter 9

Standing is an "indispensable" component of any litigant's attempt to present any dispute for judicial determination. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To meet the "the irreducible constitutional minimum of standing," *id.*, the Committee must show (1) that it has suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action, and not the result of the independent action of some third party not before the court; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. at 560-61. The Committee has not made this showing.

The Committee does not allege that the Debtor's filing of its chapter 9 petition violated the Constitution. Instead, the conduct complained of is the <u>possibility</u> that the Debtor may "use Chapter 9 . . . to 'trump' the Pension Clause [of the Michigan Constitution], and intends to ask the Bankruptcy Court to approve a plan that would diminish those rights" in violation of the Tenth Amendment of the Constitution. *Committee Objection* at ¶ 24. But the Debtor has not yet even proposed a plan of adjustment. More significantly, neither the Debtor's filing of its chapter 9 petition nor this Court's determination of its eligibility to do so diminishes or impairs the Committee's pension rights. That the Debtor <u>might</u> propose a plan impairing pension rights is not even conduct, and the mere threat of that possibility is too conjectural or hypothetical to give rise to an injury in fact.

16

For example, in *In re Barnwell County Hospital*, 459 B.R. 903 (Bankr. D.S.C. 2011), the bankruptcy court rejected a chapter 9 eligibility objection due, in part, to a lack of standing under *Lujan*.[7]  The court held that the proposed sale and consolidation of the debtor hospital with another hospital, which might lead to the debtor's closure, did not constitute an actual injury.  459 B.R. at 909 ("It has not been shown that the Committee's members will experience an actual, imminent injury if Debtor's plan is effectuated.").  The same rationale applies here, i.e., the Debtor has not even filed a plan of adjustment purporting to diminish or impair pension rights.  Hence, there is no constitutionally suspect action to challenge or any actual or imminent injury, and this Court should dismiss the Committee's constitutional challenge for lack of standing.

## V.     The Committee's Constitutional Challenge Is Not Ripe

"The ripeness doctrine is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003).  It serves to avoid premature adjudication of legal questions and to prevent courts from entangling themselves in abstract questions that resolve differently in different settings.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (same).  To determine ripeness, a court must evaluate (1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration.  *Nat'l Park Hospitality*, 538 U.S. at 808.  A dispute is fit for judicial decision "in the sense that it arises in 'a concrete factual context' and involves 'a dispute that is likely to come to pass.'"  *Miles Christi*, 629 F.3d at 537.

---

[7] The court also held the objecting committee was not a party in interest.  459 B.R. at 909.

17

The Committee's challenge fails this standard. As the Committee concedes, the concrete factual context arises only if the Debtor seeks to diminish or impair pension rights in a plan of adjustment. *Committee Objection* at ¶ 24. Yet, the Debtor has not filed its plan and when it does so, may <u>not</u> seek to diminish or impair pension rights. The Debtor's filing of its petition and the Court's determination of its eligibility to do so do not provide the concrete factual context since those actions do not diminish or impair pension rights. For these reasons as well, no hardship will come to the Committee if the Court withholds consideration of its challenge.

Prudential reasons likewise countenance the Court staying its hand. *Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir. 1985) ("The ripeness doctrine . . . requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances."). Ongoing mediation between the Debtor, the Committee and others could provide a resolution of the Debtor's treatment of pension rights or, short of that, produce settlement(s) that alter the factual landscape in which challenges to the Debtor's treatment of pension rights is resolved. Given these possibilities, judicial resolution of the Committee's challenge at this time is <u>not</u> desirable and may, in fact, impede a productive mediation. Accordingly, the Committee's as-applied constitutional challenge is not ripe for review.

## VI. The Committee's Constitutional Challenge Lacks Merit

As explained above, the Committee lacks standing to assert its constitutional challenge that is also not ripe for review. For those reasons alone, the Court should reject

the challenge.[8]  If, however, the Court does consider the substance of the Committee's challenge, it should reject it.

The premise for the Committee's  as-applied constitutional challenge is that "the Supreme Court has weakened if not rejected the entire foundation of *Bekins* - - that a State's consent can remedy any violation of the Tenth Amendment and principles of federalism as they affect individual citizens." *Committee Objection* at ¶ 37.  For support, the Committee relies principally on the *New York* and *Printz* anti-commandeering decisions.  *Id.* at ¶¶ 38-40.  As explained above, those decisions have no applicability to *Bekins* and chapter 9's continued  constitutionality.   The Committee's challenge substantively, therefore, has no merit.[9]

## CONCLUSION

For all the foregoing reasons, the Court should reject the constitutional challenges to chapter 9 in the AFSCME Objection and the Committee Objection.

Dated:  October 11, 2013                    Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

---

[8]  The Committee itself acknowledges that the Court need not review the constitutionality of chapter 9 because the Debtor does not satisfy the Bankruptcy Code's statutory requirements for eligibility.  *Committee Objection* at 23.

[9]  Both the Committee and AFSCME contend that this Court lacks jurisdiction both statutorily and under Article III to resolve their eligibility objection, *Committee Objection* at 14 n.10; *AFSCME Objection* at 29-31, and the Committee has moved separately to withdraw the reference of  its challenge to the District Court for the Eastern District of Michigan (Docket No. 805).  At this time, the United States is not taking a position on the extent of the Court's jurisdiction over these two eligibility objections or the withdrawal motion.

BARBARA L. MCQUADE
United States Attorney

J. CHRISTOPHER KOHN
Director

/s/ Matthew J. Troy
TRACY J. WHITAKER
JOHN T. STEMPLEWICZ
MATTHEW J. TROY
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Tel: (202) 514-9038
Fax: (202) 514-9163
Tracy.whitaker@usdoj.gov
John.Stemplewicz@usdoj.gov
Matthew.Troy@usdoj.gov
Attorneys for the United States

## CERTIFICATE OF SERVICE

I, Matthew J. Troy, hereby certify that the service of this Memorandum in Support of Constitutionality of Chapter 9 of Title 11 of the United States Code was filed and served via the Court's electronic case filing and noticing system on October 11, 2013.


/s/ Matthew J. Troy