UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | ) ) ) | Case No. 13-53846 |
| Debtor. | ) ) | Hon. Steven W. Rhodes |

# REQUEST FOR CERTIFICATION[1]

Pursuant to 28 U.S.C. § 158(d)(2) and Fed. R. Bankr. P. 8001(f), the Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees (the AFSCME retiree chapter for City of Detroit retirees) (collectively, "**AFSCME**"),[2] submits this request for certification of a direct appeal to the Sixth Circuit Court of Appeals (the "**Request**") of this Court's decision, announced from the bench on December 3, 2013, finding the City of Detroit, Michigan (the "**City**" or "**Debtor**") eligible for relief under chapter 9 of the Bankruptcy Code (the "**Eligibility Decision**").

This request for certification is properly before this Court under the plain terms of Bankruptcy Rule 8001(f)(2) and 8001(3)(A), because although AFSCME has already filed a notice of appeal from this Court's Order together with a motion for leave to appeal, *see* Docket

---

[1] AFSCME notes that the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit (together, the "**GRS**") filed the *Motion of the Detroit Retirement Systems to Certify This Court's Eligibility Ruling for Direct Appeal to the Sixth Circuit Court of Appeals* [Docket No. 1933] (the "**GRS Motion**"), including a request for an expedited hearing [Docket No. 1934]. To the extent the Court deems it appropriate, AFSCME requests that this Request for Certification be considered contemporaneously with the GRS Motion.

[2] AFSCME serves as the representative of the interests of between at least forty and fifty percent (40-50%) of the about 11,943 retired City of Detroit non-uniformed employees (the "**Retired AFSCME Employees**"), and about 2,523 active City employees (the "**Active AFSCME Employees**", or about seventy percent (70%) of the active non-uniformed union-represented employees, and together with the Retired AFSCME Employees, collectively, the "**AFSCME Detroit Employees**").

1

Nos. 1907 and 1909, that motion for leave to appeal has not yet been transmitted to and acted upon by the district court as provided for under Bankruptcy Rule 8003.[3]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Because chapter 9 of the Bankruptcy Code "severely curtail[s] the power of bankruptcy courts . . . once a petition is approved," *In re New York Off-Track Betting Corp.,* 427 B.R. 256, 264 (Bankr. S.D.N.Y. 2010), this Court's Eligibility Decision in favor of the City of Detroit unquestionably is the watershed event in this landmark chapter 9 bankruptcy case. In short, because the City of Detroit's eligibility for chapter 9 relief undeniably is a matter of the utmost public importance, and because this Court's Eligibility Decision disposes of several questions of law as to which there is no controlling Supreme Court or Sixth Circuit decision, certification of a direct appeal to the Sixth Circuit is required here under the plain terms of 28 U.S.C. § 158(d)(2).

---

[3] This Court has jurisdiction to certify a direct appeal to the Sixth Circuit under 28 U.S.C. § 158(d)(2) and the above-cited Bankruptcy Rule 8001(f)(2) and 8001(3)(A) regardless of the pendency of AFSCME's motion for leave to appeal, even assuming *arguendo* and contrary to the argument in the motion for leave that the Eligibility Decision at issue here is interlocutory. It cannot possibly be the law that the bankruptcy court never gets to rule on a request for certification of an interlocutory order entered by that bankruptcy court -- notwithstanding a recent decision of the bankruptcy court in the *San Bernardino* chapter 9 case effectively concluding just that. The *San Bernardino* court's view that "[t]he better procedure is to allow the District Court to rule on [a] Motion for Leave" before consideration may be given to a request for certification of an interlocutory order entered by the bankruptcy court, *see In re City of San Bernardino, California*, No. 12-28006 (Bankr. C.D. Cal.) (Dkt. No. 878), flies in the face of Bankruptcy Rules 8001(f)(2) and 3(A). The *San Bernardino* decision likewise cannot be squared with the recent (and controlling here) decision of the Sixth Circuit in *In re Lindsey,* 726 F.3d 857, 858 (6th Cir. 2013), explicitly recognizing that under the governing statute, 28 U.S.C. § 158(d)(2), a bankruptcy court order that is interlocutory, and thus appealable to the district court only with leave of that court, may properly be certified for direct appeal to the Sixth Circuit *by the bankruptcy court itself. See also e.g. In re OCA, Inc.*, 552 F.3d 413, 418 (5th Cir. 2008) (direct appeal of interlocutory order certified by bankruptcy court). Indeed, once a district court grants leave to appeal, the bankruptcy court loses jurisdiction over that appeal and with it the jurisdiction to issue a certification under Rule 8001(f)(2); thus, the procedural approach suggested by the *San Bernardino* court is entirely nonsensical and unworkable in that it would completely divest the bankruptcy courts of their statutory authority -- explicitly recognized by the Sixth Circuit in *In re Lindsey* – to certify interlocutory appeals**.** *See also* Bankruptcy Rule 8003(d) (providing that a court of appeals may authorize a direct appeal of a certified interlocutory order of the bankruptcy court without regard for whether a motion for leave to appeal that interlocutory order to the district court has been granted by that court). In any event, the *San Bernardino* decision is distinguishable from the case at bar even on its own nonsensical terms, inasmuch as that decision ultimately rests on the reasoning that an order for relief issued by a bankruptcy court under 11 U.S.C. § 921 is an interlocutory order. Even assuming this reasoning were to hold in the Ninth Circuit where the *San Bernardino* court sits, *see Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 339 F.3d 782 (9th Cir. 2003), this is decidedly not the case in the Sixth Circuit where this Court sits, *see* AFSCME Motion for Leave to Appeal [Docket No. 1909] at pages 3-8.

2

Moreover, given the speed with which the City apparently intends to seek confirmation and implementation of a plan of adjustment, a failure to certify this matter for a direct appeal to the Sixth Circuit could, as a practical matter, threaten AFSCME's ability to obtain meaningful Sixth Circuit review of the legality of this historic bankruptcy case. Conversely, certification of a direct appeal would serve the most basic interests of justice by ensuring that monumentally important legal issues of first impression affecting the interests of hundreds of thousands of Detroit residents, millions of Michigan residents, and indeed the people of the entire Sixth Circuit and United States, are decided by the Sixth Circuit before the time realistically available for judicial review potentially runs out. In the interest of transparency and legitimacy, as well as to guide municipal debtors and creditors in the future, the public deserves the most conclusive answer possible regarding the lawfulness of these proceedings, the effects of which will be felt nationwide for years to come.

On the other side of the equation, AFSCME is hard-pressed to conceive of any valid objection that the City might have to certification of the Court's Eligibility Decision. As this Court observed on the record when delivering its oral ruling, chapter 9 stands in the way of this court issuing a stay of that ruling pending appeal, *see* 11 U.S.C. § 921(e), such that a direct appeal to the Sixth Circuit would not under any scenario have the effect of slowing down the proceedings in this Court in any way. At the same time, a direct appeal would benefit all interested parties, including the City itself, inasmuch as it would bring more immediate closure to the critical and hotly-contested eligibility question, thereby enabling all interested parties to structure their affairs accordingly. Indeed, it stands to reason that a final and conclusive resolution of that eligibility question by the Sixth Circuit, one way or the other, would create the best possible environment in which all interested parties, being fully apprised of their legal

3

13-53846-tjt  Doc 8746-2   Filed 12/15/14   Entered 12/15/14 19:08:08   Page 3 of 13
13-53846-swr  Doc 1986    Filed 12/04/13   Entered 12/04/13 19:09:26   Page 3 of 13

rights, can sit down together in an effort to achieve a mutually agreeable and workable solution to the City's financial woes. *See Weber v. U.S. Trustee,* 484 F.3d 154, 158 (2d Cir. 2007) (direct appeal especially appropriate where "the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear").

## ARGUMENT

Under Bankruptcy Rule 8001(f)(3)(C), AFSCME's Request for Certification must include:

> (i) the facts necessary to understand the question presented; (ii) the question itself; (iii) the relief sought; (iv) the reasons why the appeal should be allowed and is authorized by statute or rule, including why a circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)–(iii) exists; and (v) an attached copy of the judgment, order, or decree complained of and any related opinion or memorandum.

This Request addresses each of the first four requirements. As to the fifth, AFSCME reserves the right to amend this Request to include copies of the Court's written order and accompanying opinion upon their issuance.

### I. Question Presented

The over-arching question presented on appeal is whether this Court's ruling that the City of Detroit is eligible for relief under chapter 9 is legally erroneous and should be reversed. Subsumed within this over-arching question presented are the multitude of legal issues identified by this Court in its Eligibility Decision, including—of particular note for present purposes—the "pure" legal issues described *infra* at pages 11-12.[4]

---

[4] AFSCME reserves the right to raise on appeal any and all of the legal issues identified by this Court in its written opinion, but the "pure" legal issues highlighted in this Request for Certification will be the focus of AFSCME's appeal.

4

## II. Relief Sought

AFSCME seeks an order from the Sixth Circuit reversing the Eligibility Decision and directing that the City's chapter 9 petition be dismissed, thereby terminating this bankruptcy case.

## III. Statement of Facts Necessary To Understand The Question Presented

### A. Events Leading To The City's Bankruptcy Filing

Michigan Governor Richard Snyder (the "**Governor**") appointed Kevyn Orr as the City's Emergency Manager ("**EM**") under PA 436 effective as of March 28, 2013. PA 436 purports to grant the EM virtually limitless powers, in excess even of those collectively possessed by the mayor and city council, including the power to seek authorization from the Governor to file a chapter 9 bankruptcy petition and, if the EM receives such permission, to file it.

The Governor and EM both understood as of at least June 14, 2013 that a bankruptcy filing by the City would involve cuts to vested pension benefits which would otherwise be "sacrosanct" under the Michigan Constitution. Nevertheless, on July 16, 2013, the EM sought authorization from the Governor to commence the City's chapter 9 case. On July 18, 2013, the Governor issued a letter granting the EM permission to file for bankruptcy with no contingencies (e.g., that vested pension benefits not be reduced) despite the Governor's statutory ability to attach such contingencies under Section 18 of PA 436. As this Court has held, the evidence establishes that the EM intended to propose a plan that impairs vested pension benefits. The Governor was aware of this fact before authorizing this bankruptcy.

As this Court likewise has held, prior to filing for bankruptcy, the EM did not even attempt to negotiate in good faith with AFSCME or the City's other principal creditors. While the City did hold a handful of "discussions" with AFSCME and other creditors, it clearly

5

13-53846-tjt  Doc 8746-2  Filed 12/05/14  Entered 12/05/14 19:08:08  Page 5 of 13
13-53846-swr  Doc 1986   Filed 12/04/13  Entered 12/04/13 19:09:26  Page 5 of 13

articulated in those "discussions" that they were *not* "negotiations." Moreover, the City's proposed plan was "summary" in nature; creditors were not provided adequate resources or time to evaluate the proposal; and the City's presentation-style mode of communication did not call for meaningful creditor input. While the Court has held that negotiating with AFSCME and other creditors was nevertheless "impracticable" within the meaning of the statute, it remains a fact that prior to the installation of Mr. Orr as EM, Detroit had negotiated concessionary agreements affecting retiree benefits with a coalition of city unions acting in concert for the sake of efficient labor-management relations during periods of financial difficulty for the City.

B.   **Procedural History**

Over 100 persons and entities, including AFSCME, filed objections to the City's eligibility for relief under chapter 9 in accordance with 11 U.S.C. § 921. AFSCME's objections, as amended by permission of this Court, raised two "pure" (*i.e.*, non-fact-intensive) legal issues of monumental importance, both to this particular chapter 9 case and chapter 9 jurisprudence generally. First, AFSCME argued that chapter 9 violates the federal Constitution. Second, AFSCME argued that even assuming the validity of chapter 9 under the federal Constitution, the City is not authorized to be a chapter 9 debtor under state law as required by 11 U.S.C. § 109(c)(2) for at least two independent legal reasons: (1) Public Act 436, the state statute purporting to authorize the City's petition, violates Article IX, Section 24 of the Michigan constitution (the **"Pensions Clause"**) insofar as it permits the City to use chapter 9 to impair or diminish vested pension benefits, and (2) PA 436 violates the strong Home Rule provisions of the Michigan Constitution.

AFSCME's objections also raised several additional legal arguments that are not "pure" legal arguments in the same sense, but that raise important and unsettled questions of chapter 9 law in their own right. Specifically, AFSCME argued that the City is not eligible for chapter 9

6

protection (i) under 11 U.S.C. § 109(c)(5), because the City failed even to attempt any good faith negotiations with creditors such as AFSCME prior to the filing of its chapter 9 petition, and such good faith negotiations were not "impracticable" within the meaning of this statutory provision; (ii) under 11 U.S.C. § 921(c), because the City did not file its petition "in good faith" as that term is used in this provision of the statute; and (iii) under 11 U.S.C. § 109(c)(3), because the City failed to prove "insolven[cy]" within the meaning of this statutory provision.

On September 12, 2013, the Court entered an amended order scheduling oral argument on what it deemed to be "pure" legal issues raised by AFSCME and the other objectors, including AFSCME's legal arguments that chapter 9 violates the federal Constitution and that the City is not eligible to be a chapter 9 debtor under state law by virtue of the Pensions Clause and the strong Home Rule provisions of the Michigan Constitution. On the other hand, the Court ordered discovery and a trial on those eligibility objections raising mixed questions of law and fact, including AFSCME's arguments regarding good faith negotiations, good faith filing, and insolvency.

Following three full days of oral argument on the "pure" legal issues, the Court ordered and the parties submitted supplemental briefs addressing various eligibility issues. The parties then filed pre-trial briefs and conducted a nine-day trial addressing fact-related issues. During the trial, the Court *sua sponte* requested further briefing on the issue of the proper legal standard to be applied to the mixed question of whether the City engaged in "good faith" negotiations within the meaning of 11 U.S.C. § 109(c)(5). AFSCME's November 13, 2013 filing on the statutory meaning of "good faith" negotiations concluded its briefing on eligibility.

On December 3, 2013, the Court ruled from the bench that the City is eligible for relief under chapter 9.

7

13-53846-tjt  Doc 8746-2  Filed 12/15/14  Entered 12/15/14 10:08:02  Page 7 of 13
13-53846-swr  Doc 1956  Filed 12/04/13  Entered 12/04/13 19:03:26  Page 7 of 13

## IV. Reasons For Direct Appeal

The statute governing direct appeals of bankruptcy court orders provides that a bankruptcy court "shall" certify an order for direct appeal to the appropriate court of appeals if the bankruptcy court determines that *any one* of the following four circumstances are present: (1) the order "involves a matter of public importance"; (2) the order involves "a" question of law as to which there is no "controlling" Supreme Court or court of appeals decision; (3) the order involves a question of law requiring resolution of conflicting decisions; *or* (4) an immediate appeal "may materially advance the progress of the case or the proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2). Because the statute uses the mandatory word "shall," this Court "must certify an appeal if [any] one of the [four separate] statutory conditions is met." *In re Qimonda AG,* 470 B.R. 374, 83 (E.D. Va. 2012). *See also generally Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (a statute's use of "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion.").

Plainly (and at a bare minimum), the first two circumstances dictating certification of a direct appeal are present here—as we now show.

### A. Matter of "Public Importance"

Whether Detroit, by far the largest and most economically significant city ever to file for Chapter 9 bankruptcy, is eligible for chapter 9 relief undeniably is a matter of the utmost "public importance." "Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Mark IV Indus. v. New Mexico Env. Dept.,* 452 B.R. 385, 388-89 (S.D.N.Y 2011) (quotations omitted). One leading treatise has identified helpful examples of matters of "public importance," including three that are directly relevant here: (1) "the constitutionality of a provision of title 11"; (2) "the applicability of nonbankruptcy law to

8

13-53846-tjt Doc 8746-2 Filed 12/15/14 Entered 12/15/14 19:08:02 Page 8 of 13
13-53846-swr Doc 1986 Filed 12/04/13 Entered 12/04/13 20:03:26 Page 8 of 13

matters arising in a bankruptcy case"; and (3) a matter which "could impact a large number of jobs or other vital interest in a community." Collier on Bankruptcy ¶ 5.06[4][b].

As a basic threshold matter, it is beyond reasonable debate that Detroit's eligibility for chapter 9 relief is a matter impacting a large number of jobs and other vital interests in the Detroit community – and, indeed, in the state, regional, and national community. In short, given "the substantial ramifications that any decision [on eligibility] will cause in the" future financial actions of Detroit, other financially-strapped municipalities and those who provide services to Detroit and other financially-strapped municipalities – both via employment and financing – it is an understatement to say that the eligibility issue presented here is an issue of "substantial public importance" of the kind that demands certification of a direct appeal. *In re Quimoda,* 470 B.R. at 388.

Turning to the specific legal issues presented, if the constitutionality of a single provision of the Code is a matter of public importance, certainly the constitutionality of chapter 9 *in its entirety* is a matter of paramount public importance. Indeed, because the constitutionality *vel non* of chapter 9 by definition affects "every petition for Chapter [9] bankruptcy," that constitutional issue is peculiarly appropriate for direct appeal. *Blausey v. U.S. Trustee,* 552 F.3d 1124, 1131 (9th Cir. 2011) (exercising discretion to hear direct appeal in analogous circumstances). If chapter 9 is affirmed as constitutional, financially-strapped municipalities can continue to consider chapter 9 an option of last resort but with increased confidence; if not, those states which currently permit access to chapter 9 will have to consider alternative ways to address the financial problems confronting such municipalities. Regardless of the result, the landscape of possibilities available to state and municipal governments will be profoundly affected.

9

13-53846-tjt  Doc 8746-2  Filed 12/15/14  Entered 12/15/14 19:08:08  Page 9 of 13
13-53846-swr  Doc 1986  Filed 12/04/13  Entered 12/04/13 19:09:26  Page 9 of 13

Finally, whether and to what extent state constitutional provisions like the Pensions Clause in the Michigan Constitution limit the ability of state legislatures to enact a statute authorizing municipalities within that state to petition for chapter 9 relief – either because the state statute at issue violates the state constitution, or because chapter 9 violates the federal Constitution as applied in such circumstances – likewise is a legal issue of substantial public importance. Indeed, the role that state law plays in defining a specific provision of the Code is a quintessential question for direct appeal. *See, e.g., In re Long,* 519 F.3d 288 (6th Cir. 2008) (authorizing a direct appeal on the legal issue of whether a gap in the Code created by an obvious drafting error in the statute should be filled by recourse to state law or federal law). Currently, "bankruptcy courts lack a clear precedent for interpreting" the impact of state constitutional law on chapter 9 bankruptcies, making direct appeals raising legal issues of this sort a vital and appropriate tool to establish clear guidelines for bankruptcy courts. *Blausey,* 552 F.3d at 1131. The pressing need for such clear guidelines is further demonstrated by the large number of bankruptcy court decisions addressing the issue of chapter 9 eligibility, *see In re Ransom*, 380 B.R. 809, 812 (9th Cir. BAP 2007), and the relative paucity of court of appeals' precedents on that issue.

The role of state constitutional law under chapter 9 is especially important as presented in this case because Michigan is not the only state whose constitution explicitly protects pensions or provides for strong home rule by its municipalities. In the former regard, at least six states besides Michigan have specific clauses in their constitutions protecting public employee pensions: Alaska, Arizona, Hawaii, Illinois, Louisiana, and New York. Needless to say, the outcome of this case will have a profound impact on how municipal employees and retirees in those states view the strength of their constitutional pension rights, as well as how the

10

13-53846-swr Doc 8746-2 Filed 12/05/14 Entered 12/05/14 19:08:26 Page 10 of 13
13-53846-tjt Doc 7986 Filed 12/04/14 Entered 12/04/14 19:03:26 Page 10 of 13

municipalities responsible for those pensions treat their obligations to fund and pay them. The need for appellate guidance on this issue is especially pressing at this moment in time now that the Court has held that the Pensions Clause – which resembles other states' constitutional provisions protecting pensions – creates a mere contract right which can be discharged as an unsecured claim in bankruptcy.

B.  **Lack of "Controlling" Decision**

Where "there is *at least one* question of law as to which there is no controlling decision," a bankruptcy court order "must be certified" regardless of whether there are other legal issues in the case which are controlled by precedent. *In re Qimonda AG,* 470 B.R. at 386 (emphasis added).

Here, there is no Sixth Circuit or Supreme Court decision that even addresses, much less "control[s]" the disposition of, *several* of the questions of law that have been raised by AFSCME and the other objectors to the City's eligibility for chapter 9 relief, including but not limited to the following "pure" questions of law that will be the focus of AFSCME's appeal as previously noted:

(1)     The question of whether Article I of the Federal Constitution empowers Congress to create a vehicle—chapter 9—the purpose and effect of which is to afford the states a form of "relief" from the prohibitions imposed upon them by the Federal Contracts Clause;

(2)     The question of whether the federalism principles embodied in the Tenth Amendment to the Federal Constitution, as informed by the post-*Bekins* decisions in *Asbury Park* and *New York* and taking into account post-*Bekins* amendments to the Code, foreclose the City from obtaining any form of relief in this chapter 9 case; or, at a minimum, foreclose the City from obtaining a

11

13-53846-tjt   Doc 8746-2   Filed 12/05/14   Entered 12/05/14 19:08:26   Page 11 of 13

form of relief that entails the impairment of vested pension rights protected by the Pensions Clause of the Michigan Constitution;

(3) The question of whether PA 436 is unconstitutional under the Pensions Clause and/or the strong Home Rule provisions of the Michigan Constitution;

(4) The question of whether the Pensions Clause creates a right which is merely contractual in nature and thus can be discharged as an unsecured claim in bankruptcy; and

(5) The legal meaning of the statutory eligibility factors set out in § 109 of the Code, specifically including whether the impracticability provision at 11 U.S.C. § 109(c)(5)(C) is applicable even where, as found by the Court here, a debtor makes no effort whatsoever to negotiate in good faith with its creditors.

That being so, certification of a direct appeal plainly is appropriate in the circumstances presented here, wholly without regard for the undeniable "public importance" of the eligibility issue at hand. *See generally Weber v. U.S. Trustee*, *supra*, 484 F.3d at 158 (one of Congress' primary purposes in providing for direct appeals under 28 U.S.C. § 158(d)(2) was to "facilitate" the "provision of guidance" by the courts of appeals "on pure questions of law" in order to combat "widespread unhappiness at the paucity of settled bankruptcy-law precedent"); *Blausey,* 552 F.3d at 1131-32 (direct appeal appropriate where "there are no circuit court decisions interpreting" a question of law).

12

13-53846-tjt Doc 8746-2 Filed 12/05/14 Entered 12/05/14 19:08:02 Page 12 of 13
13-53846-swr Doc 7986 Filed 12/04/13 Entered 12/04/13 20:03:26 Page 12 of 13

## CONCLUSION

For the foregoing reasons, certification of a direct appeal to the Sixth Circuit is required here under the plain terms of 28 U.S.C. § 158(d)(2).[5]

Dated: December 4, 2013

**LOWENSTEIN SANDLER LLP**

By: /s/ *Sharon L. Levine*
Sharon L. Levine, Esq.
Philip J. Gross, Esq.
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-6247 (Facsimile)
slevine@lowenstein.com
pgross@lowenstein.com

-and-

Herbert A. Sanders, Esq.
THE SANDERS LAW FIRM PC
615 Griswold St., Suite 913
Detroit, MI 48226
(313) 962-0099 (Telephone)
(313) 962-0044 (Facsimile)
hsanders@miafscme.org

-and-

Richard G. Mack, Jr., Esq.
Miller Cohen, P.L.C.
600 West Lafayette Boulevard
4th Floor
Detroit, MI 48226-3191

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO and Sub-Chapter 98, City of Detroit Retirees*

---

[5] Although not required to do so under Bankruptcy Rule 8001(f)(3)(E), on December 4, 2013, AFSCME nonetheless sought the City's concurrence in this Request, which has not as of yet been given or denied.

13

13-53846-tjt Doc 8746-2 Filed 12/05/14 Entered 12/05/14 19:38:02 Page 13 of 13
13-53846-swr Doc 1986 Filed 12/04/13 Entered 12/04/13 19:03:26 Page 13 of 13