UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Chapter 9
Case No. 13-53846-swr
Hon. Steven W. Rhodes

## MOTION OF THE RETIRED DETROIT POLICE MEMBERS ASSOCIATION TO CERTIFY THIS COURT'S ELIGIBILITY RULING FOR DIRECT APPEAL TO THE SIXTH CIRCUIT COURT OF APPEALS

The Retired Detroit Police Members Association (RDPMA), by and through its attorneys, Strobl & Sharp, P.C hereby moves, pursuant to Federal Rules of Bankruptcy Procedure 8001(a), for direct appeal to the Sixth Circuit of the bankruptcy court's *Order for Relief* [Docket No. 1946] (the "Eligibility Order") rand *Opinion Regarding Eligibility* [Docket No. 1945] (the "Eligibility Opinion") (collectively the "Eligibility Ruling"). The Eligibility Ruling renders a final adjudication with respect to the discrete legal issues of the City's eligibility for relief under the chapter 9 of Bankruptcy Code and therefore is final and may be appealed as a matter of right. RDPMA has filed its notice of appeal under 28 U.S.C. § 158(a) (1) and FRBP 8001(a). In support thereof, RDPMA files this Motion and Brief requesting a direct appeal to the Sixth Circuit Court of Appeals (the "Sixth Circuit"). For the reasons set forth below, RDPMA respectfully requests that the Court grant this Motion and exercise its discretion and allow this appeal to proceed expeditiously to the Sixth Circuit.

### RDPMA'S APPEAL IS OF RIGHT BECAUSE THE ORDER FROM WHICH RDPMA APPEALS IS "FINAL."

RDPMA's appeal is one of right because the Eligibility Ruling resolves the discrete legal issues which it addresses. The Eligibility Ruling determines that the City may be a debtor under chapter 9 of the Bankruptcy Code, a matter RDPMA has contested from the outset

of the City's filing for chapter 9 protection. The Eligibility Order, absent an appeal, is not interim in nature, will not be further litigated by the parties, and will not be considered again by the bankruptcy court. In short, it is final and therefore appealable as a matter of right.

Under 28 U.S.C. § 158(a) (1), district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees. The standard for determining whether a bankruptcy court's disposition is "final" is more flexible than in an ordinary civil case.

The finality of bankruptcy orders involves a unique analysis and must be considered in a more pragmatic and less technical sense than in other cases. Among other things, the concepts of finality "that easily apply to lawsuits typically brought in the district courts do not readily translate into the more far reaching proceedings that characterize bankruptcy cases." *In re: Cyberco Holdings and Teleservices Group*, 734 F.d3d 432, (6th Cir, 2013). Bankruptcy cases are "sprawling events" made up of smaller discreet proceedings, each with a start, middle, and end. *Id.*

The Eligibility Ruling resolved and determined the discrete legal issues of the City's ability to be a debtor under chapter 9 and allowed for the potential significant impairment of the substantive rights of the interested parties. The Eligibility Opinion specifically provides that the pension rights of the City's retirees' are subject to impairment in the City's bankruptcy proceeding. *See, i.e.,* Eligibility Opinion at p. 80. The RDPMA has no ability to further object to the City's eligibility under Section 109 and the City now is free to take advantage of the provisions of the Bankruptcy Code subject to only limited control by the bankruptcy court.

That the Eligibility Order is "final" as underscored by the fact that the eligibility determination is one of the keystone events of a chapter 9 case. The eligibility determination in a chapter 9 proceeding is particularly important because many of the protections available to

2

creditors in a chapter 7 or 11 case are absent in chapter 9 proceeding. The Tenth Amendment concerns reflected in 11 U.S.C. 903 and 904 limit the control that the bankruptcy court has over the actions of a municipal debtor. Given the limited role of the bankruptcy court, Congress, aware of the important constitutional issues in a municipal bankruptcy case, imposed strict eligibility requirements under 11 U.S.C. § 109(c) "to limit accessibility to the bankruptcy court by municipalities." *In re Cottonwood Water & Sanitary Dist., Douglas County*, Colo., 138 B.R. 973, 979 (Bankr. D. Colo. 1992).

## STATEMENT OF FACTS

### A. The History of the Emergency Manager Law

In 1990, the Michigan Legislature enacted PA 72, the Local Government Fiscal Responsibility Act. PA 72 established a procedure for Michigan's Governor to appoint emergency managers, and gave those emergency managers the power to address a local government's financial crises. However, PA 72 failed to provide such emergency managers with a mechanism through which they could effectively modify collective bargaining acts and pension agreements, two municipal obligations that are frequently cited as the largest causes of the fiscal strain leading to the appointment of an emergency manager.

On March 16, 2011, Snyder signed Public Act 4, the Local Government and School District Fiscal Accountability Act into law ("PA 4). M.C.L. §141.1503. PA 4 not only repealed PA 72, it also provided emergency managers with specific authority to temporarily reject modify or terminate existing collective bargaining agreements. *Id.* (citing M.C.L. §141.1519(1)(k)). On February 29, 2012, Stand Up for Democracy filed a referendum petition with the Michigan Secretary of State to invoke a referendum with respect to PA 4. On August 3, 2012, the Michigan Supreme Court issued a writ of mandamus to the Board of State Canvassers to certify

3

the petition as sufficient thereby placing PA 4 on the November 2012 ballot. On November 6, 2012, Michigan voters voted to reject PA 4, thereby canceling PA 4.

In cavalier defiance of the will of the people, on December 13, 2012, barely five weeks after the general election and during a "lame duck" session of the Legislature, the Michigan House and Senate passed PA 436, essentially a replacement to PA 4 which largely reenacts the same provisions in PA 4 that were rejected by voter referendum. On December 27, 2012, Governor Snyder signed Public Act 436, the Local Financial Stability and Choice Act ("PA 436"), into law. PA 436, unlike its predecessor, included two *de minimis* appropriation provisions apparently intended to immunize the new law from the citizens' constitutional right of referendum. See *Mich. Comp. Laws §§ 141.1574, 1575*. PA 436 became effective on March 28, 2013.

**B. The Appointment of Kevyn Orr and the City's Bankruptcy Filing**

On March 1, 2013, Governor Snyder announced his determination, based on the February 19, 2013 report of the Financial Review Team that a "financial emergency" existed in the City of Detroit. On March 14, 2013, the Governor announced his selection of Kevyn Orr as the City's Emergency Manager. On March 25, 2013, Mr. Orr executed his contract as the City's Emergency Manager under PA 72. He became the Emergency Manager pursuant to PA 436 on its effective date of March 28th. To the extent PA 436 contained additional options for the City, the appointment of Orr under PA 72 which effectively prohibited the City from taking advantage of any such additional provisions in PA 436.

On July 18, 2013, Governor Snyder authorized the City of Detroit's bankruptcy petition and Detroit became the largest city in the nation to file a chapter 9 petition for relief.

4

## C. The Bankruptcy Court's Determination of the City's Eligibility

On August 26, 2013, this Court entered its Order Regarding Eligibility Objections [Docket No. 6422] which was amended on September 12, 2013 [Docket No. 821] (the "Objections Orders") The Objections Orders classified the objections to eligibility into those presenting purely legal issues and those that raised issues of fact. Oral arguments were heard on the legal issues identified by the Court, including RDPMA's arguments that PA 436 violates article 2 section 9 of the Michigan Constitution. At the conclusion of the oral arguments on the legal issues, the court determined that evidence regarding the inclusion of the appropriations provisions in PA 436 was necessary. The court also held a nine-day trial addressing the factual issues raised in the objections to eligibility, including the issue identified at the conclusion of oral argument. On December 3, 2013, the Court issued its opinion from the bench finding that the City is eligible for relief under chapter 9. On December 5, 2013, the Court entered the Eligibility Order and the Eligibility Opinion.

## QUESTIONS PRESENTED BY RDPMA

The RDMPA seeks, without limitation, to certify the following issues on direct appeal:

1. Did the Bankruptcy Court err in finding that PA 4 is not unconstitutional as a violation of the right to referendum in article II, section 9 of the Michigan Constitution.

2. Did the Bankruptcy Court err in finding that the City was properly authorized under PA 436 to be a debtor under chapter 9.

## BASIS FOR A DIRECT APPEAL

Section 158(d)(2) provides, in relevant part, that the court of appeals has the jurisdiction to hear an appeal directly from a final order of the bankruptcy court if:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

5

> **(ii)** the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>
> **(iii)** an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken
>
> then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

The Eligibility Ruling turns on the meaning of key sections of the Bankruptcy Code including sections 921(c) and 109 (c) (2) and the determination that PA 436 is constitutional under the Michigan Constitution. If PA 436 is not in fact constitutional under the Michigan Constitution, the petition must be dismissed as the City would not be able to meet the requirements of section 109 (c) (2).

As the Court notes, the Michigan Supreme Court has not addressed the constitutionality of PA 436. Moreover, Sixth Circuit has not addressed the meaning of sections 921(c) or 109(c)(2) in the context of PA 436. Given the federalism concerns that are ever present in chapter 9 cases, courts must scrutinize chapter 9 petitions with "a jaded eye" See e.g., *In re New York City Off- Track Betting Corp., 427 B.R. 256, 264* (Bankr. S.D.N.Y. 2010), See also *In re Cottonwood Water & Sanitary Dist. Douglas County, Colo.*, 138 B.R. 973, 979 (Bankr. D. Colo. 1992).

Direct appeal should be granted because the eligibility determination is the threshold decision in chapter 9 that allows the City to take advantage of the panoply of provisions in the Bankruptcy Code to the potential detriment of the members of the RDPMA as well as many other creditors of the City. Should the Court grant the RDPMA direct appeal, the consideration of these largely untested legal issues in an expeditious appeal will have the added benefit of providing meaningful guidance to municipalities, in Michigan as well as in other states, that are financially distressed and contemplating bankruptcy.

6

### A. The right to referendum is fundamental right reserved to the citizens under the Michigan Constitution.

The Michigan Supreme Court in *Kuhn v. Dep't. of Treas.*, 382 Mich. 378 (1971), noted specifically that "under a system of government based on grants of power from the people, constitutional provisions by which the people reserve to themselves a direct legislative voice ought to be liberally construed." *Kuhn,.* 384 Mich. at 385. In other words, the right of referendum as provided for in the Michigan Constitution is to be liberally construed in favor of the people. The Michigan Constitution reserves to the people the specific rights to initiative and to referendum. Mich. Const. art. II, § 9. The only laws immune to a referendum are measures including appropriation provisions.. The people's general power of referendum serves as an important check on the legislative branch of government, enhances legislative accountability, and increases public participation in government. Moreover, the Michigan Attorney General recognized the power of referendum when he wrote that "the rejection of a law by referendum is more powerful than the repeal of a law because the rejection erases the Legislature's and Governor's original enactment." *See Davis v. Roberts, 810 N.W.2d 555 (Mich. 2012) (No. 146187).*

The Eligibility Opinion relies heavily on opinion in *Michigan United Conservation Clubs v. Secretary of State*, 464 Mich. 359 (2001), to assert that the motive of the Legislature in passing a statute was irrelevant. *Id.* However, the facts of *Michigan United*, as identified by Justice Young in his concurring opinion, are significantly different from the facts involved in the passage of PA 436. *Michigan United* involved the enactment of 2000 PA 381, a statute involving the issuance of concealed weapons permits. *Id.* at 369. Michigan voters signed and submitted a petition to the Secretary of State requesting a referendum on 2000 PA 381 and the Board of Canvassers initially declined to certify the petition. *Id.* at 369. Plaintiffs, organizations

7

that lobbied for the passage of 2000 PA 381, requested that the Court of Appeals prevent the Board of Canvassers from certifying the petition based on the fact that 2000 PA 381 was not subject to referendum. *Id.* at 370. The plaintiffs argued that two provisions within 2000 PA 381 contained appropriations to the Department of State Police and stated that the Michigan Constitution does not allow referendums on "acts making appropriations for state institutions." *Id.*; Const 1963, Art 2, § 9. The Court of Appeals found that 2000 PA 381 was "not an act making appropriations for state institutions as contemplated by Const 1963, art 2, § 9, and that it therefore was subject to referendum." *Id.* at 372. The Michigan Supreme Court reversed the decision of the Court of Appeals. *Id.* at 365. *Michigan United* did not involve an act that had been referred to the referendum process but simply addressed whether the appropriation provisions in fact rendered the bill beyond the reach of the referendum provision. The Court in *Michigan United* did not address the issue of an inclusion of appropriation provisions in a previously rejected law. The *Michigan United* Court found that the appropriations added to the act removed the act from the referendum process. The RDPMA has not challenged that PA 436 is not subject to referendum due to the appropriations provisions.

The Eligibility Opinion also relies on *Reynolds v. Bureau of State Lottery*, 240 Mich. App. 84, 610 N.W. 2d 597 (2000) for the specific proposition that the rejection of PA 4 did not deprive the Michigan legislature from enacting a law addressing the same subject matter as PA 4. Despite concluding that "there certainly was some credible evidence in support of the RDPMA's assertion that the appropriations provisions in P.A. 436 was motivated by a desire to immunize it from referendum," but ruled that the referendum rejection of P.A. 4 did not prohibit the legislature from enacting P.A. 436, even though P.A. 436 addressed the same subject matter as P.A. 4 and contained very few changes," *Reynolds v. Martin*, 240 Mich. App. 84 (2000).

8

13-53846-swr Doc 2246-3 Filed 12/15/13 Entered 12/15/13 18:40:08 Page 8 of 14

The Bankruptcy Court's reliance on *Reynolds* is misplaced. This case is readily distinguished from *Reynolds*. The Court of Appeals in *Reynolds* stated:

> "[S]hould legislators not be responsive to the will of the people expressed at the referendum vote, **the second legislation itself is "'subject . to the same right of reference as was the original act.'"** *Michigan Farm Bureau*, supra at 396, 151 N.W.2d 797, quoting *McBride*, supra at 523, 260 P. 435. ..... Although the appellants complain that this approach is unduly burdensome on the right to referendum."

*Id.*, at 100 (emphasis added). The *Reynolds* court relied specifically on the right of the people to refer the subsequently enacted law to the referendum process. In the instant case, the legislature specifically intended to deny that right to the people. Consequently, the Reynolds decision is not instructive in connection with an analysis of the constitutionality PA 436.

**B. The Eligibility Ruling Meets the Standards for a Certification of Direct Appeal**

The Eligibility Ruling satisfies the criteria for certifying a direct appeal to the Sixth Circuit under Section 158(d)(2). This matter involves two issues of significant public importance. First, the people's right to referendum under the Michigan Constitution has been significantly undercut by the passage of PA 436. If left to stand, the constitutional right of referendum has absolutely no impact in Michigan. The Eligibility Opinion would leave legislature is free to enact laws in direct derogation of the peoples' right of referendum

More directly, the City's eligibility to be a chapter 9 Debtor is clearly a matter of significant public importance. The City's ability to proceed with the filing and confirmation of a Plan of Adjustment is of immense importance to the City, its citizens and its creditors. Consequently, pursuant to Section 158(d)(2)(A)(i) this matter should be certified for a direct appeal to the Sixth Circuit.

Moreover, a direct appeal will certainly advance the progress of this case. The resolution of the most fundamental issue in the case – whether the City is even eligible to remain in

9

13-53846-swr Doc 2163 Filed 12/15/13 Entered 12/15/13 18:30:08 Page 9 of 14

bankruptcy – must be resolved in an expeditious fashion. Time is of the essence for all parties in interest in this matter. An appeal through the district court will only result in delay and unnecessary expense for all parties. The status of the eligibility determination is critical to the progress of this case towards confirmation or dismissal if appropriate. Therefore, under Section 158(d)(2)(A)(iii) a direct appeal is appropriate.

Furthermore, the lack of controlling authority on the constitutionality of PA 436 under the referendum clause of the Michigan Constitution creates an independent basis for a direct certification. The Supreme Court has held that the federal government cannot override a State's sovereignty on the issue of authority of a municipality to seek bankruptcy protection. *Ashton v. Cameron County Dist.*, 298 U.S. 513, 531-32 (1936). The questions surrounding the constitutionality of the law upon which the Governor and Emergency Manager rely for the authorization to file this bankruptcy must be resolved. The passage of PA 436 was in complete derogation of the people's will in rejecting PA 4. If allowed to stand, PA 436 and the Eligibility Ruling have effectively obliterated the peoples' right of referendum and rendered the referendum provisions in Article II, Section 9 of the Constitution meaningless.

## CONCLUSION

For the foregoing reasons, the Court should grant the RDPMA'S request for certification of the issues it raised directly to the Sixth Circuit.

Respectfully Submitted,

**STROBL & SHARP, P.C.**

/s/ *Lynn M. Brimert*
LYNN M. BRIMER (P43291)
MEREDITH E. TAUNT (P69698)
MALLORY FIELD (75289)
Attorneys for the Retired Detroit
Police Members Association
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Facsimile: (248) 645-2690
E-mail: lbrimer@stroblpc.com
mtaunt@stroblpc.com

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN

Chapter 9
Case No. 13-53846-swr
Hon. Steven W. Rhodes

## ORDER CERTIFYING APPEAL TO THE COURT OF APPEALS

Upon the motion (Doc. No. [ ]) (the "Motion") of the Retired Detroit Police Members Association for entry of an order certifying their appeal of the Court's order determining that the City of Detroit is eligible to be a debtor under Chapter 9 of the Bankruptcy Code (Doc. No. [ ]) (the "Order") directly to the United States Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 158(d)(2)(B)(i) and Rule 8001(f)(3) of the Federal Rules of Bankruptcy Procedure; and the Court having determined that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and the Court having been fully advised in the premises; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore; it is hereby

ORDERED that:

1. The Motion is GRANTED.

2. The Court certifies that the requirements set forth in 28 U.S.C. § 158(d)(2)(B)(i) are met and at least one of the circumstances specified in 28 U.S.C. § 158(d)(2)(A)(i)-(iii) exists.

3. Pursuant to 28 U.S.C. § 158(d)(2)(A)(i), the Court finds that the Order being appealed from involves a question of law as to which there is no controlling decision of the Sixth Circuit Court of Appeals or of the Supreme Court of the United States.

4. Pursuant to 28 U.S.C. § 158(d)(2)(A)(i), the Court finds that the Order being appealed from involves a matter of public importance.

5. Pursuant to 28 U.S.C. § 158(d)(2)(A)(iii), the Court finds that an immediate appeal from the Order would materially advance the progress of the City's Chapter 9 bankruptcy proceeding.

6. The appeal styled _____ shall be transmitted directly to the United States Court of Appeals for the Sixth Circuit for determination pursuant to 28 U.S.C. § 158(d)(2)(A).