## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re | ) Chapter 9 |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
| | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
| | ) |

## MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE RELATING TO (A) THE RECOVERIES OF CLASSES 10 AND 11 INDEPENDENT OF THE FUNDS FROM THE DIA FUNDING PARTIES AND THE STATE AND (B) THE TOPICS IDENTIFIED IN SYNCORA'S SUBPOENAS TO THE FOUNDATIONS

Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") hereby submit this motion *in limine* (the "Motion") to preclude the City of Detroit (the "City" or the "Debtor") from offering evidence relating to (a) the City's contention that funds received from the DIA Funding Parties[1] and the State are "outside the Plan" and should be excluded from the Court's unfair discrimination analysis; and (b) the topics in Syncora's subpoenas to the DIA Funding Parties.  In support of their motion, Syncora respectfully states as follows:

## INTRODUCTION

1.      In an effort to reduce the significant discrimination between Classes 9 and 14, on the one hand, and Classes 10 and 11, on the other, the City contends

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the *Corrected Fifth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 6379].

that the DIA Settlement proceeds the City will receive — which are earmarked exclusively for Classes 10 and 11 — should not be included in the Court's unfair discrimination analysis. *See* Consol. Reply [Dkt. No. 5034], ¶ 56. According to the City, the proceeds from the DIA Settlement are not "City funds" and would not otherwise be available to the City. *Id*. ¶ 54. Furthermore, the City claims that the "DIA Funding Parties receive nothing in exchange for their contributions." *Id.* Excluding the DIA Settlement proceeds from the recoveries of Classes 10 and 11 creates the optical illusion of reducing the percentage recoveries of those classes to 39% and 48%, respectively. *Id.* ¶ 56.

2.     To obtain discovery and defend against the City's contentions regarding the DIA Settlement proceeds, Syncora issued subpoenas to each of the Foundations.[2] In response, the Foundations filed a Joint Motion to Quash, arguing that the subpoenas sought irrelevant information. The City filed a statement in support of the Foundations' motion to quash wherein it also argued against the relevance of the requested discovery.

---

[2] The foundations funding the DIA Settlement are the Community for Southeast Michigan, William Davidson Foundation, the Fred A. and Barbara M. Erb Family Foundation, Max M. and Marjorie S. Fisher Foundation, Ford Foundation, Hudson-Webber Foundation, The Kresge Foundation, W.K. Kellogg Foundation, John S. and James L. Knight Foundation, McGregor Fund, Charles Stewart Mott Foundation, and A. Paul and Carol C. Schaap Foundation. *See Fourth Am. Disclosure Statement* [Dkt. No. 4391], Exhibit I.A.91, Exhibit B ("Foundation Funders").

3. On June 26, 2014, the Court granted the Foundations' motion to quash. According to the Court, the discovery Syncora sought was not relevant to unfair discrimination or any other plan confirmation issue. With respect to the source of the funds, the Court explained — in accordance with well-established case law — that "the issue of unfair discrimination is based upon not where the money comes from but where the money goes to." (Ex. 6A, Hr'g Tr. at 40:4-5, June 26, 2014.) As to the remaining topics in Syncora's subpoena, the Court held that they were "not even arguably relevant to" plan confirmation analysis. (*Id.* at 126:23-127:5.)

4. In light of the Court's prior rulings regarding the relevancy of the topics in Syncora's subpoena, the City should not be permitted to introduce any evidence on those topics during the confirmation hearing. Specifically, the City should not be permitted to introduce evidence regarding the recoveries of Classes 10 and 11 independent of the DIA Proceeds. Nor should the City be able to introduce evidence regarding, *inter alia*, the negotiations surrounding the DIA Settlement, the Foundations' reasons for entering into the DIA Settlement, or the City's claim that the Foundations required that their funds go only to the City's retirees — all of which were topics contained in Syncora's subpoenas. According to the Court, none of these inquiries are relevant to the unfair discrimination analysis or any other plan confirmation issues. There is no doubt as to "where the

money goes to." Every penny of it goes to satisfy Class 10 and 11 claims. None of its goes to satisfy Class 9 and 14 claims.

5.     Accordingly, Syncora respectfully requests that the Court bar the City from introducing evidence relating to (a) the City's contention that funds received from the DIA Funding Parties and the State are "outside the plan" and should be excluded from the Court's unfair discrimination analysis and (b) the topics in Syncora's subpoenas to the DIA Funding Parties.

## JURISDICTION

6.     The Court has jurisdiction over this matter pursuant to 38 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

7.     Syncora respectfully moves the Court to bar the City from introducing evidence relating to (a) the City's contention that funds received from the DIA Funding Parties and the State are "outside the plan" and should be excluded from the Court's unfair discrimination analysis and (b) the topics in Syncora's subpoenas to the DIA Funding Parties, and enter an order substantially in the form of Exhibit 1 attached hereto.

## BACKGROUND

8.     On the face of the Plan, PFRS Pension Claims (Class 10) are set to receive 59% recoveries and GRS Pension Claims (Class 11) are set to receive 60%

4

recoveries. *See Fourth Am. Disclosure Statement* [Dkt. No. 4391], at 37, 39. Included in these recoveries are the funds that the City will receive in exchange for transferring its ownership of the DIA Assets. *Id.* at 37, 39, 66.

9. According to the City, the "DIA Settlement offers an unprecedented opportunity for the City to obtain significant value from third parties on account of its interests in the DIA Assets, while also ensuring that the DIA Assets will remain in Detroit." Consol. Reply [Dkt. No. 5034], ¶ 29. Pursuant to the terms of the DIA Settlement, "the City shall irrevocably transfer all of its right, title and interest in and to the DIA Assets to DIA Corp., as trustee, to be held in perpetual charitable trust." *Corrected Fifth Am. Plan* [Dkt. No. 6379], at 51. In exchange for the transfer of the DIA Assets, the City will receive $816 million from the Foundations, the State, and DIA Corp., all of which is earmarked for Classes 10 and 11. *Id.* at 52. The City claims that "[t]he Foundations have required that their funds be applied to fund the City's restructured legacy pension obligations" and that those funds would not otherwise be available to the City. *Fourth Am. Disclosure Statement* [Dkt. No. 4391], at 65.

10. In its reply, the City contends that the stated recoveries for Classes 10 and 11 are not as large as they appear because — notwithstanding the City's own admission that the proceeds are "on account of its interest in the DIA Assets" — the DIA Settlement proceeds "are not made with City funds and are not made on

account of claims against the City, they are 'outside the Plan' and, therefore, [are] properly excluded from the Court's unfair discrimination analysis." Consol. Reply [Dkt. No. 5034], at ¶ 51. According to the City, because the "DIA Funding Parties receive *nothing* in exchange for their contributions," *id.* ¶ 54 (emphasis added), "the effect of such funding on the aggregate recoveries of Class 10 and Class 11 claimants should be ignored for purposes of any unfair discrimination analysis." *Id.*

11.     On June 4, 2014, Syncora issued deposition and document subpoenas to each of the Foundations requesting the following information:

30(b)(6) Deposition Topics

- The negotiations between You, the City, and any other parties (including other Foundations) regarding the DIA Settlement.

- The terms of the DIA Settlement.

- Your contribution to the DIA Settlement.

- Your involvement with the DIA.

- Your reasons for entering into the DIA Settlement.

- The purpose or mission of Your foundation.

- Your prior donations or contributions, including donations or contributions to the arts.

- The importance and value of the Detroit Institute of Arts and Collection.

(*See, e.g.,* Ex. 6B, John S. and James L. Knight Foundation Subpoena, Schedule A at 3.)

Document Requests

- All documents and communications relating to the DIA Settlement.

- All documents and communications relating to the negotiations surrounding the DIA Settlement.

- All documents and communications relating to the transfer of the Collection to the DIA Corp. pursuant to the DIA Settlement.

- All documents and communications describing the reasons for entering into the DIA Settlement.

- Documents sufficient to show the causes or charities You have previously supported or provided money to from January 1, 1990 to the present.

- Your mission statement.

- Documents sufficient to show Your current process for evaluating potential partners or causes.

- All communications between You and the DIA from January 1, 2001 to the present.

(*See, e.g., id.*, Schedule B at 6-7.)

12.     In response, the Foundations filed a Joint Motion to Quash the subpoenas on June 13, 2014.  *See* Joint Mot. to Quash [Dkt. No. 5300].  The Foundations argued, *inter alia,* that the subpoenas sought irrelevant information. *Id.* at 7.   On June 20, 2014, the City filed a Statement in Support of the Foundations' motion, arguing that the subpoenas sought "information that is *far afield* from what could reasonably be considered relevant in the upcoming confirmation hearing."  Statement [Dkt. No. 5494], at 4 (emphasis added).  The City further argued that "Syncora's deposition topics and requests for . . .

7

production of documents . . . [were] *fundamentally irrelevant* to the Court's task of assessing whether [the DIA Settlement] falls within the 'range of reasonableness.'"[3]  *Id.* at 6 (emphasis added).

13.    On June 26, 2014, the Court heard argument on the Foundations' motion to quash.  During that hearing, the Court explained that "the issue of unfair discrimination is based upon not where the money comes from but where the money goes to."  (Ex. 6A, Hr'g Tr. at 40:4-5, June 26, 2014.)   The Court concluded that hearing by granting the Foundations' motion and holding that:

> [N]one of the 30(b)(6) subjects and none of the documents that are sought from the foundations are ***relevant to or even arguably relevant*** to the issues of whether the plan is discriminatory or whether it is unfairly discriminatory, the best interest of creditors or even the extent to which the so-called grand bargain settlement protects the art of the city.

(*Id.* at 126:23-127:5 (emphasis added).)[4]

## BASIS FOR RELIEF

14.    "The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial and to focus the issues the [trier of fact] will

---

[3]   Of course, Syncora sought this information principally in the context of the confirmation standards of section 1125 of the Bankruptcy Code.

[4]   The Court held that "information relating to the foundations' ability to pay . . . is a relevant subject on which the Court would allow limited discovery." (Ex. 6A, Hr'g Tr. at 127:7-9, June 26, 2014.)

consider." *Goldman v. Healthcare Mgmt. Sys., Inc.,* 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Brawner,* 173 F.3d 966, 970 (6th Cir. 1999)). Evidence that is not relevant is not admissible. FED. R. EVIDENCE 402.

15. In this case, the Court has already held that information relating to the topics identified in Syncora's subpoena is irrelevant. Accordingly, the City should not be permitted to introduce evidence relating to (a) its contention that funds received from the DIA Funding Parties and the State are "outside the Plan" and therefore should be excluded from the Court's unfair discrimination analysis and (b) the topics in Syncora's subpoenas to the DIA Funding Parties.

## I. The City Should Not Be Permitted to Introduce Evidence Regarding the Recoveries of Classes 10 and 11 That Do Not Include the Contributions from the DIA Funding Parties and the State.

16. Based on its reply, it is clear that the City intends to introduce evidence regarding the recoveries of Classes 10 and 11 independent of the contributions of the DIA Funding Parties and the State. Pursuant to the Court's ruling, however, that evidence is not relevant and is therefore inadmissible.

17. *First*, as the Court explained, "the issue of unfair discrimination is based upon not where the money comes from but where the money goes to." (Ex. 6A, Hr'g Tr. at 40:4-5, June 26, 2014.) However, the City's argument that the contributions from the DIA Funding Parties and the State should be excluded from any unfair discrimination necessarily goes to the issue of "where the money comes

9

from."  Indeed, in its reply, the City goes to great lengths to emphasize for the Court that "[t]hese distributions are _not_ from the City and do _not_ make use of City _funds._"  Consol. Reply [Dkt. No. 5034], ¶ 54 (original emphasis).  This argument is nonsensical of course — the City itself acknowledges the DIA Settlement proceeds are "on account of its interest in the DIA Assets."  But the larger point is that — as this Court has clearly ruled — the relevant inquiry is not the source of the funds the City is receiving, but rather, where, and to what claims, the funds are being applied.

18.    Indeed, this is a well-established principle in bankruptcy law.  As one bankruptcy court has noted:

> "[o]utside the plan" is a phrase that has crept into the bankruptcy vernacular which is not only misleading but also falsely implies some substantive meaning that it does not actually have.  A debtor's plan must specify how each creditor's claim will be treated and paid. Since all payments must be made according to the terms of the plan, there is really no such thing as payments being made outside the plan.

_In re Citrowske_, 72 B.R. 613, 615 (Bankr. D. Minn. 1987).

19.    Further, contrary to the City's assertions, the DIA Settlement does not constitute a "gifting plan," such that the DIA Settlement proceeds and State contribution can be excluded from the Court's unfair discrimination analysis.  _See_ Consol. Reply [Dkt. No. 5034], at 30-31 (citing _See In re Parke Imperial Canton, Ltd._, No. 93-61004, 1994 WL 842777 (Bankr. N.D. Ohio Nov. 14, 1994); _In re MCorp. Fin., Inc._, 160 B.R. 941 (S.D. Tex. 1993); _In re Worldcom, Inc._, 02-13533,

2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003)). "Gifting" occurs when "*senior secured creditors* voluntarily offer a portion of *their recovered property* [under a plan] to junior stakeholders." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 97 (2d Cir. 2011) (emphasis added); *see also In re Armstrong World Indus., Inc.*, 320 B.R. 523, 538–40 (D. Del. 2005); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 618 (Bankr. D. Del. 2001). Put simply, the DIA Funding Parties are not creditors and are not receiving a distribution under the Plan, and thus have no "gifts" to bestow.

20.    In any event, the viability of the "gifting" doctrine is questionable. *See In re DBSD N. Am., Inc.*, 634 F.3d at 97 (holding that the gifting doctrine "does not square with the text of the Bankruptcy Code."). Specifically, the *DBSD* court held that "[t]he Code extends the absolute priority rule to 'any property' [and the] Code focuses entirely on who 'receives' or 'retains' the property." *Id.* This rule remains in force "regardless of whether other reasons might support the distribution." *Id.* at 98; *see also In re Armstrong*, 320 B.R. at 540 ("to the extent that *In re WorldCom* . . . [stands] for the unconditional proposition that 'creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including sharing them with other creditors, so long as recoveries received under the plan by other creditors are not impacted' without adherence to the

strictures of [the Bankruptcy Code], that contention is flatly rejected here"), *aff'd,* 432 F.3d 507 (3d Cir. 2005).

21.     *Second*, the premise underlying the City's argument — namely, that City is not making any contribution and the DIA Funding Parties are receiving nothing in exchange — is factually incorrect.   To begin, as the City itself acknowledged, the City has agreed to transfer all of its interests in the DIA Assets — an essential element of the DIA Settlement.   In exchange, <u>the City</u> will be receiving the $816 million from the DIA Funding Parties and the State.  *See Notice of Filing Plan Supplement: Exhibit I.A.103 (Form of DIA Settlement Documents)* [Dkt. No. 6576], at 8 ("[T]he City will convey all of its right, title and interest (including legal title it may hold as trustee and legal title and beneficial interest it otherwise holds) to the Museum and the Museum Assets (as defined in the Charitable Trust Agreement) to The DIA in exchange for fair value by virtue of…(iii) the contributions through the Supporting Organizations by The DIA (and through it, DIA Indirect Funders, DIA Direct Funders and Special Foundation Funders of $100 million, by Foundation Funders (excluding Special Foundation Funders) of $366 million, and an additional contribution by the State of Michigan (the "**State**") of $350 million, which total $816 million …."); *Corrected Fifth Am. Plan* [Dkt. No. 6379], at 9 (noting that DIA Proceeds Payments are "amounts scheduled to be *paid to the City* in accordance with the DIA Settlement (emphasis

added)); *id.,* Ex.1.A.91 ("All payments by the Funders shall be made directly to the Supporting Organization which shall hold such payments in a segregated account pending *payment to the City*"); *id.* ("The Funders' obligations to continue to fund the settlement (and the Supporting Organization's obligation to continue to *pay funds provided by the Funders to the City*) are conditioned on the following . . . "); *id.*, Ex. B ("this will result in *an annual payment of $18,300,000 . . . to the City of Detroit*");  Consol. Reply [Dkt. No. 5034], ¶¶ 29-30.

22.    In return for their contributions, the Foundations will receive "the certainty that the City will not attempt to sell the DIA Assets and that such assets will remain available for the enjoyment and benefit of the City and its residents in the future," Consol. Reply [Dkt. No. 5034], at ¶ 30, as well as a seat on the DIA's to-be-established Governance Committee.  *Fourth Am. Disclosure Statement* [Dkt. No. 4391]*,* Exhibit I.A.91 at 17.  The State, on the other hand, purportedly receives a release from the pension-holders for any claims they may have against the State and a seat on the DIA Governance Committee.  *Id.*

23.    In short, not only does the City mischaracterize the terms of the DIA Settlement, it also incorrectly argues that the Court can exclude the contributions from the DIA Funding Parties and the State as part of its unfair discrimination analysis.  Thus, any evidence proffered by the City to show (a) that the DIA

Settlement proceeds are "not City funds," and (b) the recoveries of Classes 10 and 11 independent of these proceeds is irrelevant and inadmissible.

## II. The City Should Not Be Permitted to Introduce Evidence Regarding Any of the Topics in Syncora's Subpoena.

24. As noted above, Syncora's subpoena sought information and documents on a number of different topics. During the June 26, 2014 hearing, counsel for Syncora explained the types of evidence that it would be seeking from the Foundations:

- "Whether the foundations would have contributed the money if the City had not agreed to transfer its art collection." (Ex. 6A, Hr'g Tr. at 22:19-21, June 26, 2014.)

- "Whether the foundations were the ones that imposed on the city the requirement that all monies go to the retiree classes or whether the city was the one that proposed that to the foundations." (*Id.* at 22:22-25.)

- The importance of the DIA to the Detroit Community. (*Id.* at 23:10-11.)

- "[W]hat went into the deal and how it was structured. Could it have been structured differently in a way that allows either the art collection to be preserved as a city asset, or alternatively, monetized, or part of the art collection and/or whose idea was it that all your money had to go to the retirees?" (*Id.* at 23:19-25.)

25. Syncora's attempt to obtain discovery regarding the structure of the Grand Bargain arose, at least in part, out of the City's repeated assertions that the contributions from the Foundations and the State would not otherwise be available because the "Foundations have required that their funds be applied to fund the

14

City's restructured legacy pension obligations." *See Fourth Am. Disclosure Statement* [Dkt. No. 4391], at 65.

26.     After Syncora articulated the evidence that it would be seeking from the Foundations, the Court subsequently granted the Foundations' motion to quash, finding that "none of the 30(b)(6) subjects…are relevant to or even arguably relevant to the issues of whether the plan is discriminatory or whether it is unfairly discriminatory, the best interest of creditors or even the extent to which the so-called grand bargain settlement protects the art of the city." (Ex. 6A, Hr'g Tr. at 126:24-127:5, June 26, 2014.)

27.     Specifically, the City should not be able to introduce any evidence relating to its assertions or belief that the funds provided by the Foundations and the City would not otherwise be available to the City. By granting the Foundations' motion to quash, the Court prevented Syncora from testing this assertion via the depositions of the Foundations. Thus, were the City allowed to introduce evidence relating to this topic, Syncora would suffer prejudice given its inability to conduct any discovery.

28.     Furthermore, the City has taken the position that the negotiations surrounding the Grand Bargain are covered by the Mediation Order. And, as explained in Syncora's *Motion in Limine Barring the City from Introducing Communications Protected by the Court's Mediation Order*, the City should not be

13-53846-swr  Doc 6978  Filed 08/25/14  Entered 08/25/14 21:01:31  Page 15 of 57

able to circumvent the Court's Mediation Order and introduce "state of mind" testimony relating to these negotiations.

29.     Accordingly, in light of the Court's ruling, the evidence sought by Syncora's subpoena to the Foundations has been deemed to be irrelevant and, as a result, the City should be barred from offering any evidence related to those topics.

## CONCLUSION

30.     For the foregoing reasons, Syncora respectfully requests that the Court bar the City from offering evidence relating to (a) the City's contention that funds received from the DIA Funding Parties and the State are "outside the Plan" and should be excluded from the Court's unfair discrimination analysis and (b) any of the topics identified by Syncora in its subpoenas to the Funding Parties.

[*Remainder of the Page Intentionally Left Blank*]

Dated: August 22, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: _/s/ Stephen C. Hackney_____
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and
Syncora Capital Assurance Inc.*

## <u>Summary of Exhibits</u>

Exhibit 1 - Proposed Order

Exhibit 2 - Notice of Motion and Opportunity to Object

Exhibit 3 - None [Brief Not Required]

Exhibit 4 - None [Separate Certificate of Service to be Filed]

Exhibit 5 - Affidavits [Not Applicable]

Exhibit 6 A - June 26, 2014 Hearing Transcript

Exhibit 6 B - John S. and James L. Knight Foundation Subpoena

KE 33055994.1

13-53846-tjt  Doc 8754-3  Filed 12/15/14  Entered 12/15/14 21:21:34  Page 18 of 57
13-53846-swr  Doc 6973-1  Filed 08/22/14  Entered 08/22/14 16:51:42  Page 1 of 1

**Exhibit 1**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
|  | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) |

## ORDER GRANTING MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE RELATING TO (A) THE RECOVERIES OF CLASSES 10 AND 11 INDEPENDENT OF THE FUNDS FROM THE DIA FUNDING PARTIES AND THE STATE AND (B) THE TOPICS IDENTIFIED IN SYNCORA'S SUBPOENAS TO THE FOUNDATIONS

This matter having come before the Court on Syncora's Motion *in Limine* to Preclude the Debtor from Offering Evidence Relating to (a) the Recoveries of Classes 10 and 11 Independent of the Funds from the DIA Funding Parties and the State and (b) the Topics Identified in Syncora's Subpoenas to the Foundations (the "Motion"), the Court having reviewed Syncora's Motion, and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

**IT IS HEREBY ORDERED THAT:**

1.       Syncora's Motion is GRANTED.

2.       The City is barred from introducing evidence relating to:

(a)     the City's contention that funds received from the DIA Funding

Parties and the State are "outside the Plan" and should be excluded

from the Court's unfair discrimination analysis; and

(b)     the topics identified in Syncora's subpoenas to the Foundations.

3.     Syncora is authorized to take all actions necessary to effectuate the

relief granted pursuant to this Order in accordance with the Motion.

4.     The terms and conditions of this Order shall be immediately effective

and enforceable upon its entry.

5.     The Court retains jurisdiction with respect to all matters arising from

or related to the implementation of this Order.

**IT IS SO ORDERED.**

## Exhibit 2

**Notice of Motion and Opportunity to Object**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
|  | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) |

## NOTICE OF MOTION *IN LIMINE* TO PRECLUDE DEBTOR FROM OFFERING EVIDENCE RELATING TO (A) THE RECOVERIES OF CLASSES 10 AND 11 INDEPENDENT OF THE FUNDS FROM THE DIA FUNDING PARTIES AND THE STATE AND (B) THE TOPICS IDENTIFIED IN SYNCORA'S SUBPOENAS TO THE FOUNDATIONS

**PLEASE TAKE NOTICE** that on August 22, 2014 Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") filed the *Motion* in Limine *to Preclude Debtor from Offering Evidence Relating to (a) the Recoveries of Classes 10 and 11 Independent of the Funds from the DIA Funding Parties and the State and (b) the Topics Identified in Syncora's Subpoenas to the Foundations* (the "Motion") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") seeking entry of an order to bar the City from introducing evidence relating to (a) the City's contention that funds received from the DIA Funding Parties and the State are "outside the Plan" and should be excluded from the Court's unfair discrimination analysis and (b) the topics in Syncora's subpoenas to the DIA Funding Parties.

**PLEASE TAKE FURTHER NOTICE that your rights may be affected by the relief sought in the Motion. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Bankruptcy Court to grant the Syncora's Motion or you want the Bankruptcy Court to consider your views on the Motion, by **September 5, 2014,** you or your attorney must:

File with the Court a written response to the Motion explaining your position with the Bankruptcy Court electronically through the Bankruptcy Court's electronic case filing system in accordance with the Local Rules of the Bankruptcy Court or by mailing any objection or response to:[1]

United States Bankruptcy Court
Theodore Levin Courthouse
231 West Lafayette Street
Detroit, MI 48226

You must also serve a copy of any objection or response upon:

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

If an objection or response is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

**PLEASE TAKE FURTHER NOTICE that if you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the Motion and may enter an order granting such relief.**

---

[1]    A response must comply with F. R. Civ. P. 8(b), (c) and (e).

Dated: August 22, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: */s/ Stephen C. Hackney*
James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone:  (248) 646-5070
Facsimile:   (248) 646-5075

*Attorneys for Syncora Guarantee Inc. and*
*Syncora Capital Assurance Inc.*

**<u>Exhibit 3</u>**

**None [Brief Not Required]**

**<u>Exhibit 4</u>**

**Certificate of Service [To be filed separately]**

**Exhibit 5**

**Affidavits**
**[Not Applicable]**

# Exhibit 6A

**June 26, 2014 Hearing Transcript**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,      .      Docket No. 13-53846
        MICHIGAN,             .
                              .      Detroit, Michigan
                              .      June 26, 2014
            Debtor.           .      9:00 a.m.
. . . . . . . . . . . . . . . .

          HEARING RE. (#5259) STATUS CONFERENCE ON PLAN
          CONFIRMATION PROCESS (RE. FIFTH AMENDED ORDER
       ESTABLISHING PROCEDURES, DEADLINES AND HEARING DATES
       RELATING TO THE DEBTOR'S PLAN OF ADJUSTMENT.  STATUS
        HEARINGS REGARDING PLAN CONFIRMATION PROCESS; (#5285)
         CORRECTED MOTION TO QUASH SYNCORA'S SUBPOENA TO
           DEPOSE ATTORNEY GENERAL BILL SCHUETTE FILED BY
        INTERESTED PARTY BILL SCHUETTE; (#5250) MOTION OF THE
         CITY OF DETROIT FOR SITE VISIT BY COURT IN CONNECTION
      WITH THE HEARING ON CONFIRMATION OF THE CITY'S PLAN OF
         ADJUSTMENT FILED BY DEBTOR IN POSSESSION CITY OF
          DETROIT, MICHIGAN; (#5300) JOINT MOTION TO QUASH
          SUBPOENAS DUCES TECUM FILED BY INTERESTED PARTIES
           A. PAUL AND CAROL C. SCHAAP FOUNDATION, CHARLES
        STEWART MOTT FOUNDATION, COMMUNITY FOUNDATION FOR
       SOUTHEAST MICHIGAN, HUDSON-WEBBER FOUNDATION, MAX M
        AND MARJORIE S. FISHER FOUNDATION, MCGREGOR FUND,
       THE FORD FOUNDATION, THE FRED A. AND BARBARA M. ERB
        FAMILY FOUNDATION, W.K. KELLOGG FOUNDATION, WILLIAM
         DAVIDSON FOUNDATION; (#5478) MOTION OF THE GENERAL
            RETIREMENT SYSTEM OF THE CITY OF DETROIT TO
           DESIGNATE AND DETERMINE ADDITIONAL LEGAL ISSUE
           REGARDING METHODOLOGY FOR ASF RECOUPMENT FROM
          RETIREES FILED BY CREDITOR GENERAL RETIREMENT
        SYSTEM OF THE CITY OF DETROIT; (#5442) MOTION FOR
         PROTECTIVE ORDER CITY OF DETROIT'S MOTION FOR
          ENTRY OF A PROTECTIVE ORDER STRIKING SYNCORA'S
          DEMAND IN ITS RULE 30(b)(6) DEPOSITION NOTICE
        FOR THE PERSONAL FINANCIAL INFORMATION OF ALL CITY
          RETIREES FILED BY DEBTOR IN POSSESSION CITY OF
       DETROIT, MICHIGAN; (#5436) MOTION TO COMPEL FULL AND
       FAIR RESPONSES TO SYNCORA'S INTERROGATORIES FILED BY
        INTERESTED PARTIES SYNCORA CAPITAL ASSURANCE, INC.,
                    SYNCORA GUARANTEE, INC.
            BEFORE THE HONORABLE STEVEN W. RHODES
            UNITED STATES BANKRUPTCY COURT JUDGE

 1   me about the foundations' objections to the subpoenas, I said

 2   to him, "I can imagine how your clients feel," and he

 3   actually used the phrase that I used.  I said, "I'm sure they

 4   feel like no good deed goes unpunished," that they're coming

 5   to the bankruptcy and giving money to the city's retirees and

 6   trying to do something helpful, and I can understand that

 7   from their perspective, but I laid out for him my perspective

 8   and why we had issued the subpoenas, and I laid out the

 9   substantive issues for him about what it is that the

10   foundations have become involved in.  And I'd like to frame

11   that, if I could, and then lay out the key points that go

12   towards the motion.  But what we're talking about here in the

13   grand bargain is something that the city itself has described

14   as the cornerstone of the plan, so you pull out the

15   cornerstone, the foundation falls.  That's how important the

16   transaction they've involved themselves is.  The assets in

17   question that are being conveyed are multi-billion dollar

18   assets that are going away from the city.  It's currently in

19   the city.  The city has title to the assets.  After the

20   transaction, they will be in public trust forever.  And it

21   is -- the foundation contribution piece for the assets is --

22   dials directly into the unfair discrimination argument

23   because the city has now said that those are not city funds

24   and should not be considered when you do the unfair

25   discrimination analysis, and it has a dramatic impact on the

```
 1   calculation of what the recoveries are under the plan if you
 2   include or exclude that.  So I explained that to
 3   Mr. Bernstein, and we explained that in our motion for the
 4   purpose of showing that the foundations are in -- have
 5   involved themselves in the centerpiece of the most important
 6   part of the plan and that our discovery is aimed at exploring
 7   that for multiple reasons that I will go into but, in
 8   particular, for testing the assertion that these are, quote,
 9   unquote, not city funds, which is the first argument that
10   they make in connection with the unfair discrimination point.
11   So I will respectfully disagree with counsel here today that
12   says we're trying to harass people, we're trying to
13   intimidate people.  It's not fair, and it's not a description
14   of how I operate in this case.  I will get to the issue of
15   burden in a moment, if I could, but I think with respect to
16   the issue of relevance, these are -- this is relevant
17   information that we believe that the foundations possess.
18   I'll speak to burden and then the privilege, if I could, at
19   the end, your Honor.  Whether the foundations would have
20   contributed the money if the city had not agreed to transfer
21   its art collection, that's relevant state of mind evidence
22   that they possess.  Whether the foundations were the ones
23   that imposed on the city the requirement that all monies go
24   to the retiree classes or whether the city was the one that
25   proposed that to the foundations.  The ability of the
```

1  foundations to pay their respective amounts is an important

2  question that we want to explore.  The sources of the funds

3  that they are contributing to the grand bargain is also an

4  important one that we want to explore for reasons I'll

5  explain, the importance of the foundations of obtaining the

6  exculpation they receive under the plan because the

7  foundations actually do, I believe, under the plan receive an

8  exculpation in connection with their contribution, so they

9  actually are getting something from the plan.  And then we

10  have also sought information regarding the importance of the

11  DIA to the Detroit community because that is something that

12  has separately been raised by the city.  Many of these

13  foundations are ones that have contributed to the DIA in the

14  past, and we are, thus, seeking to understand their view on

15  the importance of the DIA to the community as an economic

16  entity.  That's a relevant issue to things the city has put

17  at issue.

18         The two broad categories of information that we are

19  seeking here can be roughly divided into, number one, what

20  went into this deal and how it was structured.  Could it have

21  been structured differently in a way that allows either the

22  art collection to be preserved as a city asset or,

23  alternatively, monetized, or part of the art collection

24  and/or whose idea was it that all of your money had to go to

25  the retirees?  You can imagine as a creditor who is on the

 1    outside looking in that those are very important questions,

 2    and the city has already put these at issue because you'll

 3    remember in our pretrial conference before you where they

 4    described and laid out their arguments, they were saying

 5    things like, "It is the foundations that were requiring us to

 6    do this. We are -- you know, we're limited here. This is

 7    what they're insisting upon." And we want to test that

 8    assertion, so this goes to the fairness and equitableness of

 9    the grand bargain and the plan. It goes to the question of

10    whether these are city funds or are not city funds, and it

11    also goes to the business judgment exercised by the city with

12    respect to the way it structured the grand bargain. There is

13    no question in my mind that the subpoena seeks relevant and

14    discoverable evidence relating to the cornerstone of the

15    plan. There is no basis to find us as seeking to harass or

16    intimidate these foundations.

17         I'd like to turn to the question of burden, your

18    Honor, and end on the question of privilege because I think

19    the privilege is going to be an important issue to resolve,

20    but on the question of burden, one of the things I want to --

21    I want to point out two things. Mr. Bernstein and I did not

22    have an opportunity to speak meaningfully about -- it was

23    never on the table that if we narrowed this request this way

24    or if we narrowed this request this way or the sorts of horse

25    trading that go into a recovery that they would then sit for

1  is, oh, look, it's only four -- it's only, you know, six

2  times as much as you're getting, and so it doesn't trigger

3  that heightened level of scrutiny.  Now, I don't agree with

4  their formulation of the legal test, which is why I'm

5  portraying it this way, but the question --

6         THE COURT:  Assume it's the heightened level of

7  scrutiny, as you phrase it.

8         MR. HACKNEY: Yeah.

9         THE COURT:  Still what's the relevance?

10        MR. HACKNEY:  Well, the relevance is what -- number

11  one, what goes into that calculation of who's getting what

12  because argument 1-A under the city's brief --

13        THE COURT:   Assume for a moment that the pensioners

14  are getting 90-some percent and you're getting 10 percent.

15  Assume that.

16        MR. HACKNEY:  Yes.

17        THE COURT:  And the heightened level, whatever that

18  level is, of scrutiny is triggered.  Still, what's the

19  relevance?

20        MR. HACKNEY:  Well, you've assumed away the

21  relevance because of the way you set up the hypothetical.

22  For example, if the city will stipulate that the funds by the

23  foundations are city funds that are calculated in the unfair

24  discrimination either because they're transferred on

25  account -- they're contributed on account of the transfer of

1   a city asset --

2           THE COURT:  And you've lost me already, and maybe

3   the city has lost me.  I don't know.  But I would have

4   assumed that the issue of unfair discrimination is based upon

5   not where money comes from but where money goes to.

6           MR. HACKNEY:  That is definitely how Syncora views

7   the world.

8           THE COURT:  All right.

9           MR. HACKNEY:  But the city --

10          THE COURT:  Let's view the world that way since

11  you're the one at the lectern.

12          MR. HACKNEY:  Yes.  No.  Well, remember, you were

13  asking me relevance, and I'm describing the city's case.  I'm

14  trying to discover and defend their case.

15          THE COURT:  Okay.  So is this your concession that

16  this has nothing to do with the issue of whether the

17  discrimination is justified or not?  It's only an issue of

18  whether there is discrimination.

19          MR. HACKNEY:  No.  It goes to the amount --

20          THE COURT:  And explain to me how it's relevant to

21  the issue of whether the discrimination, whatever it is,

22  however you characterize it, however the city characterizes

23  it, is justified or not.

24          MR. HACKNEY:  Okay.  So there are two issues going

25  on here that I think are relevant.  The information from the

1  foundations is definitely relevant to the amount of

2  discrimination that's going on, which is absolutely something

3  that the city is attempting to litigate and is absolutely

4  something that the city says is relevant to your application

5  of the test.  In fact, the city has, in my judgment, when

6  they interpret the Markell test, they are basically waving

7  the white flag on the Markell test, but they have absolutely

8  said to you, "Oh, you know, the Markell test, that doesn't

9  really apply until you get to about 85-5."  Okay.  That's the

10  one instance where Mr. Markell proposed it.  Now, ironically,

11  if you include the foundation amounts in the calculation,

12  guess what you find out?  You find out pretty quickly that

13  the recoveries are 95 to 100 versus 4 to 5 cents depending on

14  how you think of it, so it is absolutely relevant to the

15  amount of discrimination, which the city says is absolutely

16  relevant.  Now, it is also relevant to the application of the

17  test putting aside the amount of discrimination.  That's

18  because the Aztec test has been summarized by courts in this

19  district to say however you construe the fact -- the Aztec

20  test, which I would describe as a slightly more amorphus

21  four-factor test, but they say however you apply the four

22  factors, you must show that the discrimination is necessary

23  to confirming a plan.  Now, you can see that the negotiations

24  with the foundations and how they went down in terms of whose

25  idea this all was is critical to whether the grand bargain,

 1 | saying that I have studied the DIA's collection and I know
 2 | the rest of the information to be there, which is why I
 3 | said -- because I can read their letter agreements with the
 4 | DIA in terms of the scope of the subpoenas and the agreement
 5 | on the production that was going to be made, which track a
 6 | lot of these issues very closely -- I say the DIA, if anyone,
 7 | is going to be the person or the entity with knowledge of
 8 | these matters, so, no, we have never -- we have said to --
 9 | I've said to Mr. Hackney a number of times the question as
10 | it's posed to me, which I was pleased to hear Mr. Hackney
11 | agreed because we've talked about this -- the question as
12 | originally designed was simply to elicit information about
13 | art so that experts could use it, identify all works of art
14 | worth more than a million dollars.  The city does not know
15 | the answer to that.  It has some information.  It has
16 | provided it.  But it does not know the answer to all pieces
17 | of art.
18 |             THE COURT:  All right.  I'm going to take this
19 | matter under advisement with the others.  We'll take our
20 | lunch break now and reconvene at 1:15, please.  I'll give you
21 | my decisions at that time, and then we'll continue with the
22 | two status conferences.
23 |             THE CLERK:  All rise.  Court is in recess.
24 |      (Recess at 12:17 p.m., until 1:15 p.m.)
25 |             THE CLERK:  All rise.  Court is in session.  Please

1    be seated.  Recalling Case Number 13-53846, City of Detroit,

2    Michigan.

3            THE COURT:  All right.  It appears that everyone is

4    present.  Addressing first the attorney general's motion to

5    quash the subpoena that was issued to him by Syncora, the

6    Court concludes that this motion should be granted.  The

7    Court concludes that the attorney general's opinion that is

8    the subject of that subpoena is for all functional purposes

9    the equivalent of a brief, and it will be given weight by the

10   Court only to the extent that the facts on which it relies

11   are established in the evidence and the law on which it

12   relies is persuasive.

13           In weighing any settlements in the case, including

14   what's been called the grand bargain here, the Court will

15   weigh the merits of the opposing facts and law and not take

16   into account the position or authority of the people who may

17   have taken positions on one side or the other of the issues.

18   So in these circumstances, there is no basis for questioning

19   the attorney general regarding his legal opinion, so that

20   motion is granted.

21           Addressing next the foundations' motion to quash the

22   subpoenas that were issued to them, the Court again concludes

23   that this motion should be granted.  The Court concludes that

24   none of the 30(b)(6) subjects and none of the documents that

25   are sought from the foundations are relevant to or even

1   arguably relevant to the issues of whether the plan is

2   discriminatory or whether it is unfairly discriminatory, the

3   best interest of creditors or even the extent to which the

4   so-called grand bargain settlement protects the art of the

5   city.  Accordingly, that motion is granted.

6        Now, having said that, it was mentioned during

7   argument that Syncora is interested in information relating

8   to the foundations' ability to pay.  That is a relevant

9   subject on which the Court would allow limited discovery.  It

10  is not, however, as far as the Court could determine, a part

11  of the discovery that was, in fact, served.  The Court hopes

12  that Syncora's counsel and counsel for the several

13  foundations can work out a streamlined and efficient way for

14  Syncora to get the information it needs to evaluate this

15  issue of their ability to pay.

16       In the motion to quash the foundations' requested

17  costs, the Court will ask counsel for those foundations to

18  file a separate motion for costs if they wish to pursue that.

19       Turning now to the motion for a site visit, the

20  Court is inclined to exercise its discretion to grant that

21  motion and to go on a site inspection as requested.  The

22  Court believes it is likely that the value of such an

23  inspection would be outweighed by the effort it would take to

24  organize and execute the tour, so it will take, however,

25  further discussion and planning here in the meantime, so,

1   while I'm not prepared yet to enter an order granting the

2   motion, I do think it is appropriate to move the discussions

3   forward.  And so to that end, I am going to ask the creditors

4   who are objecting to the plan at this point to nominate one

5   or two of them to attend a meeting with one or two

6   representatives of the city, me, and the Marshals Office to

7   discuss and conclude the details necessary to effectuate this

8   site inspection.  And if the creditors are unable to agree

9   upon one or two representatives for that purpose, the Court

10  will identify someone for you.  So I think that's as much on

11  that motion as we can do at this point in time.

12          Turning then to the city's motion for a protective

13  order regarding the retirees' personal information, the Court

14  did state on the record earlier that it would find that

15  Syncora had withdrawn this request based on the Court's

16  ruling that the retirees' hardships was not at all relevant

17  to the issue of either unfair discrimination or fair and

18  equitable.  And just to elaborate on that a bit, as the Court

19  stated earlier, it is unaware of any case law interpreting

20  Section 1129 that holds that it is appropriate to consider

21  the relative hardships of creditors in evaluating the issues

22  under that section of the Bankruptcy Code.  And, indeed, as

23  the Court suggested in the hearing, if that door were opened

24  here and that subject were relevant here, it would literally

25  open up every single retiree as well as Syncora itself to

# Exhibit 6B

**John S. and James L. Knight Foundation Subpoena**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| In re | ) Chapter 9 |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) Case No. 13-53846 |
|  | ) |
| Debtor. | ) Hon. Steven W. Rhodes |
|  | ) |

## NOTICE OF SUBPOENAS TO FOUNDATION FUNDERS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(a)(4)

**PLEASE TAKE NOTICE** that, on the date hereof, Syncora Guarantee and Syncora Capital Assurance ("Syncora") will file and serve the attached subpoenas pursuant to Federal Rule of Civil Procedure 45, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9016, on the following parties:

1. Community Foundation for Southeast Michigan

2. William Davidson Foundation

3. The Fred A. and Barbara M. Erb Family Foundation

4. Max M. and Marjorie S. Fisher Foundation

5. The Ford Foundation

6. Hudson-Webber Foundation

7. Kresge Foundation

8. W.K. Kellogg Foundation

9. John S. and James L. Knight Foundation

10. McGregor Fund

11. Charles Stewart Mott Foundation

12. A. Paul and Carol C. Schaap Foundation

Dated: June 4, 2014

Respectfully submitted,

**KIRKLAND & ELLIS LLP**

By: _/s/ Stephen C. Hackney_

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett
Stephen C. Hackney
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

- and -

Stephen M. Gross
David A. Agay
Joshua Gadharf
MCDONALD HOPKINS PLC
39533 Woodward Avenue
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075

_Attorneys for Syncora Guarantee Inc. and_
_Syncora Capital Assurance Inc._

# UNITED STATES BANKRUPTCY COURT

Eastern District of Michigan

In re  City of Detroit, Michigan
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No.  13-53846

Chapter  9

Adv. Proc. No.  _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

John S. and James L. Knight Foundation, 200 S. Biscayne Boulevard, Miami, FL 33131-2349
To:  Resident Agent:  Juan J. Martinez
_____
*(Name of person to whom the subpoena is directed)*

[X]  *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment: SEE SCHEDULE A

| PLACE    McDonald Hopkins PLC 39533 Woodward Avenue, Suite 318 Bloomfield Hills, MI 48304 | DATE AND TIME  June 27, 2014 at 9:00 a.m. |
|---|---|

The deposition will be recorded by this method:

Stenographic recording and video recording.

[X]  *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

SEE SCHEDULE B

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  6/4/2014

CLERK OF COURT

_____        OR        _____
*Signature of Clerk or Deputy Clerk*                                  *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Interested Party Syncora et al._____ , who issues or requests this subpoena, are:

Stephen C. Hackney, 300 N. LaSalle, Chicago, IL 60654 (312) 862-2000  stephen.hackney@kirkland.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
    (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
    *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
    *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
    *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# Schedule A

## DEFINITIONS

1.      "You" or "Your" mean the parties to whom this request is directed, and shall include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

2.      The term "DIA Settlement" refers to the settlement regarding the DIA Assets, as those terms are defined in the City of Detroit's Plan of Adjustment [Doc. No. 4391].

3.      The term "Foundations" means the entities listed on Exhibit B to the summary of the material terms of the DIA Settlement, which is attached to the Fourth Amended Plan of Adjustment [Doc. No. 4391] as Exhibit I.A.91.

4.      The term "City" shall mean the City of Detroit, Michigan, as well as any of its past or present divisions, such as, but without limitation, the Detroit Arts Commission, and departments, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, advisors, representatives, and all other persons acting or purporting to act on their behalf, including Kevyn D. Orr acting as Emergency Manager and any successors.

5.     The term "Plan of Adjustment" means the City's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, filed on May 5, 2014 [Doc. No. 4391-1].

6.     The term "Detroit Institute of Arts" means the Detroit Institute of Arts, a museum and cultural facility located at 5200 Woodward Avenue, Detroit, Michigan 48202, and any and all of its predecessors, officials, trustees, agents, affiliates, employees, attorneys, advisors, professionals, representatives, and all other persons acting or purporting to act on its behalf.

7.     The term "Collection" shall mean the collection of over 60,000 works of art displayed or stored at the Detroit Institute of Arts, and any other Detroit Institute of Arts works of art in off-site storage facilities.

### INSTRUCTIONS

1.     Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, you are directed to designate one or more of your officers, directors, managing agents, or other persons who consent to testify on your behalf and who have knowledge of and are adequately prepared to testify concerning the topics enumerated below.

2.     The use of the singular form includes the plural and vice versa, any use of gender includes both genders, and a verb tense includes all other verb tenses.

3.    All terms and phrases used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

## DEPOSITION TOPICS

1.    The negotiations between You, the City, and any other parties (including other Foundations) regarding the DIA Settlement.

2.    The terms of the DIA Settlement.

3.    Your contribution to the DIA Settlement.

4.    Your involvement with the DIA.

5.    Your reasons for entering into the DIA Settlement.

6.    The purpose or mission of Your foundation.

7.    Your prior donations or contributions, including donations or contributions to the arts.

8.    The importance and value of the Detroit Institute of Arts and Collection.

# Schedule B

## DEFINITIONS

As used in these Document Requests, the following terms are to be interpreted in accordance with these definitions:

1.     "You" or "Your" mean the parties to whom this request is directed, and shall include anyone acting on behalf of those parties, over whom the parties have control, or which is, or may be subrogated to the parties' interests, including, without limitation, any officer, agent, servant, employee, attorney, insurance company, investigator, independent adjusting company, or other person or entity.

1.     The term "City" shall mean the City of Detroit, Michigan, as well as any of its past or present divisions, departments, commissions, officials, trustees, agents, affiliates, employees, attorneys, professionals, advisors, representatives, and all other persons acting or purporting to act on their behalf, including Kevyn D. Orr acting as Emergency Manager and any successors.

2.     The term "Collection" shall mean the collection of over 60,000 works of art displayed or stored at the Detroit Institute of Arts museum located at 5200 Woodward Avenue, Detroit, Michigan 48202, and on-site and off-site storage facilities.

3.     "Concerning" means relating to, referring to, describing, evidencing, reflecting, embodying, or constituting.

4.     The term "DIA" means The Detroit Institute of Arts, a nonprofit corporation organized under the laws of the State of Michigan and any and all of its predecessors.

5.     The term "DIA Settlement" refers to the settlement regarding the DIA Assets, as those terms are defined in the City of Detroit's Plan of Adjustment [Doc. No. 4391].

6.     The term "Documents" and "Document" have the same full meaning as in Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure and include the original, any draft (whether disseminated or not) and any copy, regardless of origin or location, of any correspondence, letter, memorandum, electronic mail (e-mail), statement, summary, outline, contract, agreement, book, pamphlet, periodical, telegram, telecopy, telefax, wire, cable, record, study, report, schedule, diary, desk calendar, organizer, appointment book, photograph, reproduction, map, survey, drawing, chart, model, index, tape, data sheet or data processing card, computerized information, data base or disk (including without limitation hard, soft, floppy, or compact), invoice, purchase order, ledger, journal, check (front and back), check

stub, note, bond, assignment, transfer, account statement, tax report, tax schedule, financial statement, workpaper, business form, timesheet, log, inventory, print-out, computer tape and notes of meetings, conferences, conversations or telephone conversations and any and all other written, printed, telecopied, telefaxed, transcribed, punched, taped, stored, filmed and graphic matter, however produced or reproduced, and specifically includes any preliminary note, outline, or draft of any of the foregoing in your custody, possession, or control.

7.     The term "Foundations" refers to any entity that is a contributing party to the DIA Settlement, other than the City of Detroit or State of Michigan, specifically the entities listed on Exhibit B to the summary of the material terms of the DIA Settlement, which is attached to the Fourth Amended Plan of Adjustment [Doc. No. 4391] as Exhibit I.A.91.

8.     The term "Plan" means the City's filed Fourth Amended Plan of Adjustment [Doc. No. 4391].

9.     The terms "relate," "relate to," "relating to," and/or "refer," with respect to any given subject mean anything that concerns, constitutes, contains, compromises, consists of, discloses, describes, discusses, explains, evidences, embodies, reflects, identifies, states, summarizes, refers to, pertains to, deals with,

implies or authorizes directly or indirectly, or is in any manner whatsoever pertinent to that subject.

10. The term "State" means the State of Michigan.

## **INSTRUCTIONS**

1. Production shall be made as the records are kept in the usual course of business, or shall be organized and labeled to correspond with the categories of this request.

2. If any documents are not available for production because they have been misplaced, discarded, or destroyed, identify which documents cannot be produced for these reasons, and state fully in writing the reasons that the documents are unavailable.

3. If any document cannot be produced in full, it shall be produced to the maximum extent possible and DIA Corp. shall specify in writing the reasons for its inability to produce the remainder.

4. If any documents are available but are not produced because of an objection, including an objection based on privilege, identify such documents with particularity as to date, subject matter and the nature of the objection or privilege claim.

5.    If documents called for are not available to you because they are in the custody or in control of a third person, identify such documents and the third person in whose possession or control said documents are to be found.

6.    Produce original documents whenever such documents are available to you.

7.    Produce all documents available by virtue of being in possession of your attorneys or other agents.

8.    In accordance with Fed. R. Bankr. P. 7026, where a claim of privilege is asserted in objecting to any Document Request or part thereof, the responding party shall, in the objection, identify (a) the nature of the privilege that is being claimed; (b) the type of document; (c) the general subject matter of the document; (d) the date of the document; and (e) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

9.    The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all."  "Any" means "any and all."  "Including" means "including but not limited to."

"And" and "or" encompasses both "and" and "or." Words in the masculine, feminine or neuter shall include each of the other genders.

10.  Unless otherwise stated, the time period applicable to the documents called for is July 18, 2013, through the date of this document request, subject to the City's ongoing obligation to supplement its responses under the applicable rules.

## **Document Requests**

1.  All documents and communications relating to the DIA Settlement.

2.  All documents and communications relating to the negotiations surrounding the DIA Settlement.

3.  All documents and communications relating to the transfer of the Collection to DIA Corp. pursuant to the DIA Settlement.

4.  All documents and communications describing the reasons for entering into the DIA Settlement.

5.  Documents sufficient to show the causes or charities You have previously supported or provided money to from January 1, 1990 to the present.

6.  Your mission statement.

7. Documents sufficient to show Your current process for evaluating potential partners or causes.

8. All communications between You and the DIA from January 1, 2001 to the present.