**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

**OPPOSITION OF THE OFFICIAL COMMITTEE OF RETIREES**
**TO SYNCORA'S MOTION *IN LIMINE* TO BAR THE CITY FROM**
**INTRODUCING EVIDENCE REGARDING THE COMBINED**
**RECOVERIES OF PENSION AND OPEB CLAIMS [DKT. 6975]**

The Official Committee of Retirees of the City of Detroit, Michigan (the "Committee")

files this response in opposition to the Motion *in Limine* of Syncora Capital Assurance Inc. and

Syncora Guarantee Inc. (collectively, "Syncora") to Bar the City of Detroit (the "City") from

Introducing Evidence Regarding the Combined Recoveries of the Pension and OPEB Claims (the

"Motion") [Dkt. 6975], and states as follows:[1]

**PRELIMINARY STATEMENT**

In its Motion, Syncora takes the position that the City should not be allowed to introduce,

for any purpose, any evidence showing what the recovery of Classes 10, 11 and 12 would be on a

combined basis.  That position is untenable.  While, under the Plan of Adjustment (the "POA"),

the claims of Classes 10 and 11 (relating to PFRS and GRS pensions) are addressed distinctly

---

[1] Shortly prior to the filing of this response, the City entered into a stipulation with Syncora that prevents the City, but not other parties, from introducing evidence on the combined recoveries of the pension and OPEB claims and requested that the Court enter an order implementing same and resolving the Motion [Dkt. 7109]. Because the Court has not as of this time entered the requested order, the Motion is not moot and the Committee is accordingly filing its response to it. The Committee further notes that, irrespective of whether the Court enters the order as requested by Syncora and the City: the Motion seeks preclusion of evidence as against the City only; neither the stipulation between Syncora and the City nor the order requested for entry by them purports in any way to affect rights of other parties, such as the Committee, to introduce evidence of combined recoveries of the pension and OPEB claims; and, the Committee reserves all rights to introduce such evidence if and as it deems appropriate.

from those of Class 12 (relating to OPEB), the undeniable reality is that the bulk of all three classes is composed of retirees -- who make up the vast majority of Classes 10 and 11[2] and the whole of Class 12.[3] Syncora asks this Court to ignore this fundamental reality. Irrespective of whether it is dispositive, it is clearly relevant.

As indicated in the City's Disclosure Statement for the Fourth Amended Plan of Adjustment [Dkt. 4391] ("Disclosure Statement") and as will be brought out at the confirmation hearing, pension benefit reductions, pension funding mechanisms and commitments, pension benefit restoration opportunities, releases given to the State and the treatment and funding of OPEB obligations were part of a global settlement with the Committee. [*See* Dkt. 4391, at 167-170.] Thus, from both the perspective of the City and the Committee, evidence of the connected nature of the pension and OPEB settlements reflects an economic reality. As the Disclosure Statement indicates, other retiree representatives also settled their pension and OPEB issues simultaneously and on a global basis. (*Id*. at 169-170.) Such connectedness was only logical from the retirees' perspective since the vast majority of retirees with claims protected by the Pension Clause[4] also have OPEB claims.[5]

---

[2] The Committee's actuary will show by claim value, retirees make up 82.2% of Class 10 and 72.4% of Class 11. (*See* Expert Report of Nicholl Report, dated July 22, 2014 ("Nicholl Report"), ¶ 68, Tables 68A and 68B.) The Nicholl Report was served on the City and the objectors on July 22, 2014, but not filed on the docket. Per the Court's instructions, it has not been filed with this brief as an exhibit. The vast majority of retirees in Classes 10 and 11 also have OPEB claims.

[3] Syncora incorrectly suggests that the Class 10 and 11 pension claims are held by the Retirement Systems, not the retirees themselves. (Motion, at ¶ 4 n.3.) The right to receive benefits obviously is held by the retirees and actives, not the Retirement Systems which is merely the vehicle through which the City delivers its promises. The POA defines "Retiree Classes" as all of Classes 10, 11 and 12. (*See* Sixth Amended Plan of Adjustment of the City of Detroit [Dkt. 6908, at ¶ 281.]) The Disclosure Statement explicitly states that retirees are claim holders. (*E.g.,* [Dkt. 4391, at 17] ("IF YOU ARE **RETIRED** OR SEPARATED FROM THE CITY OF DETROIT AND ARE RECEIVING OR ENTITLED TO RECEIVE A PENSION, OR ARE AN ACTIVE EMPLOYEE ENTITLED TO A PENSION UPON YOUR RETIREMENT, OR ARE RECEIVING RETIREE HEALTH BENEFITS FROM THE CITY, YOU ARE A **HOLDER OF A CLAIM** IN CLASS 10, CLASS 11 AND/OR CLASS 12… .") (emphasis added). Indeed, the POA provides that, upon confirmation, the City was released from claims held by retirees, including pension claims. [*See*, *e.g.*, Dkt. 4391, at 43-44] (the "Plan Releases".)

[4] Mich. Const. art. IX, § 24.

The City's acknowledgement that the impact of the pension and OPEB cuts is combined and collective is not new or created for the confirmation trial. In its June 14, 2013 Proposal to Creditors, the City treated both pensions and OPEB as subsets of what the City called "legacy liabilities." [Dkt. 11-1, at 30-31, 36-41, 104.] In its first proposed plan of adjustment, the City even classified pensions and OPEB together (which was later changed at the Committee's request to reflect that the pension and OPEB claims are legally distinct both as to the source of the obligation and the protections afforded the related promises). [*See* Dkt. 2708, at ¶ 139 (definition of "GRS Claim"), ¶ 194 (definition of "PFRS Claim"), 37, 38.] In the end, the City was able to obtain Class 10 and 11 support for the POA **only** by reaching agreements that the Committee felt were acceptable to retirees on **both** pensions **and** OPEB—as the Committee would not have agreed to the very low recovery on the OPEB claims absent the appropriately greater recovery on the pension claims. As part of the hearing on confirmation, the City is further expected to introduce evidence that acceptance from the individuals who make up Classes 10, 11 and 12 was and is critical to its revitalization efforts to, *inter alia*, show Detroit's public employees and citizens that the City does not simply abandon those who dedicated years or decades to City service. (*See generally* Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Dkt. 5034, at 57-60, 69.])

Syncora complains that, under the City's calculations, Classes 10 and 11 (PFRS and GRS) will recover what Syncora contends is a relatively high percentage of their allowed claim

---

[5] Syncora also completely ignores that one of the public reasons for the combined use of the State and DIA Settlement contributions is that the State desires to purchase a release from retiree claims. [*See* Dkt. 4391, at 75.] Under the Sixth Circuit's reasoning of *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002), to buy a release the non-debtor must, *inter alia*, contribute substantial assets to the reorganization. *Id.* at 658.

3

amounts.[6]  While not disputing that the percentage recovery for Class 12 (OPEB) is very low,

Syncora argues that the Court should not be given any information on the aggregate recovery, or

percentage recovery, that, under the POA, Classes 10-12 will receive as a whole.  However, this

information is directly relevant for at least three reasons:  it pertains to (i) the Court's review of,

and the City's justifications for, the Global Pension and OPEB Settlements under Bankruptcy

Rule 9019, (ii) whether the POA was proposed by the City in *good faith* for purposes of

Bankruptcy Code Section 1129(a)(3) and (iii) whether the POA *unfairly* discriminates for

purposes of Bankruptcy Code Section 1129(b)(1).  Syncora's Motion ignores the first two

grounds and exclusively focuses its relevance argument on the third.

## LEGAL STANDARD

Motions *in limine* face a particularly exacting and challenging burden of proof.  First,

Movants bear the burden of demonstrating that they are entitled to relief requested in their

motion *in limine*.  *Design Basics, L.L.C. v. DeShano Companies, Inc.,* No. 10-14419, 2012 WL

5265388, at *2 (E.D. Mich. Oct. 23, 2012).  Second, courts will not grant motions *in limine*

"unless the moving part meets its burden of showing that the evidence in question is clearly

inadmissible." *Id.* (internal quotations omitted) (emphasis added).  Anything short of movant

making such a showing that the identified evidence is "clearly inadmissible," and the motion *in*

*limine* should not be granted.  *See Id.*  If a movant fails to make such a showing, then the court

should defer until trial any evidentiary ruling.  *Id.*

Moreover, the Sixth Circuit has admonished that a motion *in limine* should be denied

where, as here, a movant seeks a blanket exclusion of evidence.  *See Sperberg v. Goodyear Tire*

---

[6] The Committee does not agree with the numerical percentages cited in ¶ 8 of the Motion. The proper calculation of the percent recoveries is a matter that is addressed in part in the Committee's response to Syncora's Motion *in Limine* Preclude Debtor From Offering Evidence Relating to (A) the Recoveries of Classes 10 and 11 Independent of the Funds From the DIA Funding Parties and the State and (B) the Topics Identified in Syncora's Subpoenas to the Foundations [Dkt. 6978], and also will be addressed at the confirmation hearing.

& *Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("[o]rders *in limine* which exclude broad categories of evidence should rarely be employed . . . [and the] better practice is to deal with questions of admissibility of evidence as they arise.")  Trial courts heed the Sixth Circuit.  *See, e.g. Innotext, Inc. v. Petra Lex USA, Inc.*, No. 08-11077, 2010 WL 2560063, at *2 (E.D. Mich. Jun. 15, 2010) (denying motion that on grounds that "[m]otions *in limine* are meant to deal with discrete evidentiary issues related to trial and are not substitutes for dispositive motions", and denying motion); *Englar v. 41B Dist. Court*, No. 04-CV-73977, 2010 WL 5015343, at *7 (E.D. Mich. Dec. 3, 2010) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed."); *Zugowitz v. Davis*, No. 2:06-CV-727, 2008 WL 619357, *1 (S.D. Ohio Mar. 03, 2008) (noting that "[c]ourts . . . are generally reluctant to grant broad exclusions of evidence *in limine*" and denying motion).

## ARGUMENT

### A.     Evidence on Combined Recoveries on the Pension and OPEB Claims is Relevant to the Court's Review of the Pension and OPEB Settlements Under Bankruptcy Rule 9019.

The recoveries afforded retirees on their pension and OPEB claims may appropriately be viewed on a combined basis for purposes of assessing the reasonableness of the Global Settlement reached between the City and the Committee under Bankruptcy Rule 9019.

Specifically, as set out in the Disclosure Statement, on or about April 25, 2014, the City and the Committee entered into a Global Settlement that resolves both the pension and the OPEB claims. [*See* Dkt. 4391, at 123, 167-70.]  As part of plan confirmation, the City will ask the Court to approve the Global Settlement as fair and equitable pursuant to Bankruptcy Rule 9019. Therefore, the collective treatment of retiree pension and OPEB claims under Classes 10-12 is germane to the City's justification for, and the Court's evaluation of, the Global Settlement under

Bankruptcy Rule 9019. Stated differently, the Committee would not have accepted the OPEB component of the Global Settlement absent the pension component.

      **B.**    **Evidence on Combined Recoveries on the Pension and OPEB Claims is Relevant to Whether the POA was Proposed in Good Faith for Purposes of Bankruptcy Code Section 1123(a)(3).**

In its Objection to the City's Plan of Adjustment [Dkt. 4679], Syncora argued that the POA was not proposed in good faith for purposes of Bankruptcy Code Section 1129(a)(3) because the City was, *inter alia*, using it as a mechanism to "divert" resources to pension claimants at the expense of other unsecured creditors like the COP holders. (*Id.* at ¶¶ 85-86.)[7]

Whether a plan has been proposed in good faith for purposes of Section 1129(a)(3) is determined based, *inter alia*, on "the totality of the circumstances" taking into account the particular facts at issue, 6 *Collier on Bankruptcy* ¶ 943.03[1][b], and whether the plan terms at issue are "fundamentally fair." *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 40-41 (Bankr. D. Colo. 1999).[8] Evidence of the combined effect of the retirees' recoveries for pension and OPEB will help put Syncora's objection under Section 1129(a)(3) into its proper perspective and, the Committee submits, further disprove any contention that the POA's provisions concerning the pension claims were anything other than part of a good-faith resolution that allowed the City to come to terms with its single largest creditor group.

---

[7] Substantively the same objection has also been made by Financial Guaranty Insurance Co. (*See* Objection of Financial Guaranty Insurance Company to Plan for the Adjustment of Debts of the City of Detroit [Dkt. 4660, at ¶ 37.]

[8] *See also Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988), in which the Sixth Circuit interpreted Section 1325(a)(3) of the Bankruptcy Code--which employs language identical to that in Section 1129(a)(3)--as follows:

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation … . The decision should be left simply to the bankruptcy court's common sense and judgment.

Accordingly, the evidence that Syncora here seeks to exclude is relevant for this additional reason, which the Motion has also failed to address.

### C. Contrary to Syncora's Contentions, Evidence on Combined Recoveries on Pension and OPEB Claims is Relevant to Whether the POA Unfairly Discriminates for Purposes of Bankruptcy Code Section 1129(b)(1).

In its Motion, Syncora argues at length that the combined recovery for Classes 10-12 is not relevant for assessing unfair discrimination under Bankruptcy Code Section 1129(b)(1). While, for the reasons set out in Sections A and B above, evidence on the combined recovery is relevant for other, independent reasons, Syncora's argument is misplaced and such evidence is relevant for purposes of a Section 1129(b)(1) unfair discrimination assessment as well.

In particular, Syncora's argument fails to appreciate the scope of relevance under Federal Rule of Evidence 403.[9] While the Committee believes that there is no unfair discrimination in favor of Classes 10 and 11 when considered on their own, for reasons set out in Official Committee of Retirees' Memorandum of Law in Support of Confirmation of Fifth Amended Plan for Adjustment of Debts Filed by the City of Detroit, Michigan [Dkt. 6508, at 28-41] ("RC Mem.") evidence on the aggregate recovery when Class 12 is included can help properly inform the Court's resolution of the objectors' "unfair discrimination" argument.[10] That is so under both the so-called "*Aztec*" and "Markell" approaches. (*See* RC Mem., at 28-30.)

With respect to the *Aztec* approach, as set out in RC Mem. at 28-29, that test asks, *inter alia*, whether the alleged discrimination is supported by a reasonable basis and is proposed in

---

[9] *See* F.R.E. 403: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

[10] The relevance of the comparison is only enhanced when non-City sources are excluded from the Class 10 and 11 percentage recovery calculations. *See, e.g., In re Jersey City Med. Ctr.*, 817 F.2d 1055 (3rd Cir. 1987) (100% payment to some unsecured creditors and 30% payment to other unsecured creditors was not unfair where funds were made available to the favored class from a third party pursuant to a contract). *See generally* Retiree Committee's Response to the Motion *In Limine* to Preclude Debtor From Offering Evidence Relating to (A) the Recoveries of Classes 10 and 11 Independent of the Funds From the DIA Funding Parties and the State and (B) the Topics identified in Syncora's Subpoenas to the Foundations [Dkt. 6978], which is filed concurrently herewith.

good faith. At minimum, the fact that, when the OPEB claims are taken into account, retirees will receive, for their claims as a whole, a far lower percentage recovery than they will for the pension component viewed in isolation provides additional perspective on whether the POA's treatment of the pension claims—which were themselves subject to very substantial cuts—discriminate "unfairly."

As will be shown at the hearing, the average pension for GRS retirees is approximately $20,000 and the average pension for PFRS retirees is approximately $30,000. [*See* Dkt. 4391, at 11.] The Committee has demonstrated elsewhere and will further show at the confirmation hearing that the retiree pension cuts proposed under the POA are themselves very substantial. However, in addition to the pension cuts, under the POA the same group of creditors who make up the vast majority of Classes 10 and 11 – the retirees – are also taking very substantial cuts to OPEB which will now undoubtedly have to be made up out-of-pocket, including, for many of the retirees, from the already-reduced pensions. As stated above, the City concluded that it needed the support of Classes 10 and 11 as a precondition to a successful revitalization, and it ultimately proffered settlements on both pension and OPEB that the retirees as a group were able to accept. The evidence to be adduced at the confirmation hearing will show that such conclusion had a reasonable basis and was reached in good faith.

With respect to the "Markell" approach, the situation is similar. Prof. Markell has recognized that the need to retain the goodwill of a creditor group may justify paying that group more than its ratable share of available assets. *See* B. Markell, *A New Perspective on Unfair Discrimination in Chapter 11*, 72 Am. Bankr. L.J. 227, 261 (1998). If so, there is no unfair discrimination within the meaning of Bankruptcy Code Section 1129(b)(1). *Id.* Thus, while the recovery allowed for the pension claims, standing alone, passes muster under the test advocated

8

by Prof. Markell, to obtain the affirmative vote of the retirees, the City needed to present them with proposals that were acceptable on **both** pensions **and** OPEB, and the percentage recovery disparity complained of by Syncora is appropriately viewed in that collective light.

Thus, evidence of the combined recovery for Classes 10-12 is pertinent to Syncora's "unfair discrimination" contention. Rhetoric aside, Syncora cites no case holding that that it is improper for a Court to consider, in evaluating whether a **plan** discriminates unfairly with respect to a class, the plan's overall impact on a creditor group alleged to be unfairly benefitted by one particular plan provision. To the Committee's knowledge, none exists.[11]

---

[11] Syncora spills much ink noting that, during his deposition, Emergency Manager Orr could not recall whether he reviewed the Class 10-12 recoveries on a combined basis. (Motion, at ¶¶ 12-14, 21.) However, whether or not Mr. Orr recalls having done that particular analysis at a prior point in time has nothing to do with the admissibility of evidence on the combined recovery so long as that evidence is itself relevant, which as demonstrated herein it plainly is. Moreover, as Syncora acknowledges (Motion, at ¶ 11), Mr. Buckfire, the City's chief financial advisor, testified that he took the collective recovery to be afforded the pension and OPEB claimants into account not only in formulating his advice concerning their recovery in general, but also specifically in the context of advising on their recovery relative to the recovery proposed for the COP holders. (Motion, at ¶ 11; Ex. 1 hereto, K. Buckfire Depo., 96:3-98:9, 100:9-16, Jul. 16, 2014)

## CONCLUSION

For the reasons stated above, Syncora's motion *in limine* to bar the City from introducing

evidence regarding the combined recoveries of the pension and OPEB claims should be denied.

Dated:  August 27, 2014                          Respectfully submitted,

By: */s/ Claude D. Montgomery*
Claude D. Montgomery                          Sam J. Alberts
Carole Neville                                          DENTONS US LLP
DENTONS US LLP                                 1301 K Street, NW, Suite 600 East Tower
1221 Avenue of the Americas              Washington, DC 20005
New York, New York 10020                  Tel: (202) 408-6400
Tel:    (212) 768-6700                            Fax: (202) 408-6399
Fax:    (212) 768-6800                           sam.alberts@dentons.com
claude.montgomery@dentons.com
carole.neville@dentons.com


BROOKS WILKINS SHARKEY & TURCO PLLC
Matthew E. Wilkins
Paula A. Hall
401 South Old Woodward, Suite 400
Birmingham, Michigan  48009
Direct:  (248) 971-1711
Cell:  (248) 882-8496
Fax:  (248) 971-1801
wilkins@bwst-law.com
hall@bwst-law.com

*Attorneys for the Official Committee of Retirees of the City of Detroit, Michigan*

**CERTIFICATE OF SERVICE**

I, Claude D. Montgomery, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on August 27, 2014.

By:     _/s/ Claude D. Montgomery_
        Claude D. Montgomery

# Exhibit 1

1                  KENNETH BUCKFIRE, VOLUME 2

2              IN THE UNITED STATES BANKRUPTCY COURT

3             FOR THE EASTERN DISTRICT OF MICHIGAN

4

5

6

7    In Re:                      )      Chapter 9

8

9    CITY of DETROIT, MICHIGAN, )    Case No. 13-53846

10

11                 Debtor.   )   Hon. Steven Rhodes

12    _____

13

14                     VOLUME 2

15

16       The Videotaped Deposition of KENNETH BUCKFIRE,

17       a Rule 30(b)(6) witness,

18       Taken at 1114 Washington Boulevard,

19       Detroit, Michigan,

20       Commencing at 8:09 a.m.,

21       Wednesday, July 16, 2014,

22       Before Leisa M. Pastor, CSR-3500, RPR, CRR.

23

24

25

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2    APPEARANCES:

 3

 4    THOMAS F. CULLEN, JR., ESQ.

 5    Jones Day

 6    51 Louisiana Avenue, N.W.

 7    Washington, D.C. 20001

 8         Appearing on behalf of the Debtor.

 9

10

11

12    CORINNE BALL, ESQ.,

13    BENJAMIN ROSENBLUM, ESQ.

14    Jones Day

15    222 East 41st Street

16    New York, New York 10017

17         Appearing on behalf of the Debtor.

18

19

20

21

22

23

24

25
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt  Doc 8700-1  Filed 12/15/14  Entered 12/15/14 22:07:43  Page 4 of 22
13-53846-swr  Doc 7103-1  Filed 08/27/14  Entered 08/27/14 22:02:38  Page 3 of 21

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2

 3

 4    CLAUDE D. MONTGOMERY, ESQ.

 5    Dentons US LLP

 6    1221 Avenue of the Americas

 7    New York, New York 10020

 8         Appearing on behalf of the Retirement Committee.

 9

10

11

12    JENNIFER K. GREEN, ESQ.

13    Clark Hill, PLC

14    500 Woodward Avenue, Suite 3500

15    Detroit, Michigan 48226

16         Appearing on behalf of the Retirement Systems for the

17         City of Detroit.

18

19

20

21

22

23

24

25
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt  Doc 8700-5  Filed 12/5/14  Entered 12/5/14 22:07:43  Page 15 of 22
13-53846-swr  Doc 7095-1  Filed 08/27/14  Entered 08/27/14 22:02:48  Page 4 of 11

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2    ROBIN D. BALL, ESQ.

 3    Chadbourne & Parke, LLP

 4    350 South Grand Avenue, 32nd Floor

 5    Los Angeles, California 90071

 6         Appearing on behalf of Assured Guaranty Municipal

 7         Corporation.

 8

 9

10

11    GUY S. NEAL, ESQ.

12    Sidley Austin, LLP

13    1501 K Street, N.W.

14    Washington, D.C. 20005

15         Appearing on behalf of National Public Financing.

16

17

18

19

20

21

22

23

24

25
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt  Doc 8700-51  Filed 12/15/14  Entered 12/15/14 22:07:43  Page 16 of 22
13-53846-swr  Doc 7193-1  Filed 08/27/14  Entered 08/27/14 22:02:48  Page 6 of 11

```
1                KENNETH BUCKFIRE, VOLUME 2

2      PAUL S. DAVIDSON, ESQ.

3      Waller, Lansden, Dortch & Davis, LLP

4      511 Union Street, Suite 2700

5      Nashville, Tennessee 37219

6           Appearing on behalf of U.S. Bank National Association

7           as Trustee for the Water and Sewer Boards.

8

9

10

11     ROBERT A. WEISBERG, ESQ.

12     Carson Fischer, PLC

13     4111 Andover Road West

14     Second Floor

15     Bloomfield Hills, Michigan 48302

16           Appearing on behalf of Oakland County.

17

18

19     FARAYHA ARRINE, ESQ.

20     Dickinson Wright

21     500 Woodward Avenue, Suite 4000

22     Detroit, Michigan 48226

23           Appearing on behalf of the State of Michigan.

24

25
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-tjt  Doc 8700-5  Filed 12/15/14  Entered 12/15/14 22:07:43  Page 7 of 22
13-53846-swr  Doc 7903-1  Filed 08/27/14  Entered 08/27/14 22:02:38  Page 6 of 21

1          KENNETH BUCKFIRE, VOLUME 2

2

3      EDWARD SOTO, ESQ.,

4      COREY D. BERMAN, ESQ.

5      Weil, Gotshal & Manges, LLP

6      1395 Brickell Avenue, Suite 1200

7      Miami, Florida  33131

8          Appearing on behalf of FGIC.

9

10

11

12

13     CHRISTOPHER L. FILBURN, ESQ. (VIA TELEPHONE)

14     Paul, Weiss, Rifkind, Wharton & Garrison LLP

15     1285 Avenue of the Americas

16     New York, New York 10019

17          Appearing on behalf of UBS.

18

19

20

21

22

23

24

25

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjr  Doc 8700-3  Filed 12/15/14  Entered 12/15/14 22:07:43  Page 18 of 22
13-53846-swr  Doc 7005-1  Filed 08/27/14  Entered 08/27/14 22:02:48  Page 7 of 11

1                    KENNETH BUCKFIRE, VOLUME 2

2        A.W. PHINNEY, III, ESQ. (VIA TELEPHONE)

3        Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.

4        One Financial Center

5        Boston, Massachusetts 02111

6              Appearing on behalf of Fidelity, Franklin & Eaton

7              Vance as Members of the Ad Hoc Bondholders Committee.

8

9

10

11       ALSO PRESENT:

12       John Schmitzer - Video Technician

13

14

15

16

17

18

19

20

21

22

23

24

25

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjt  Doc 8700-51  Filed 12/5/14  Entered 12/5/14 22:07:43  Page 19 of 21
13-53846-swr  Doc 7105-1  Filed 08/27/14  Entered 08/27/14 22:02:48  Page 8 of 11

```
 1              KENNETH BUCKFIRE, VOLUME 2
 2    A.   All right, would you please repeat the question?
 3    Q.   Sure, and maybe I can make it clearer.  What I'm
 4         trying to determine and see if you have facts on --
 5         facts on is the process and the elements that went
 6         into distinguishing classes 10 and 11 as compared to
 7         class 9 and the recoveries that they were going to
 8         get?
 9    A.   I see.  Well, as a purely financial or banking matter,
10         it was our judgment that the status of the class 9
11         claims and the pension and so-called OPEB claims was
12         basically the same, that is they were general
13         unsecured claims of the City of lesser priority than
14         the general obligation claims, certain other claims of
15         the City.  And so that was the starting point of our
16         analysis and indeed was the basis for the City's
17         original proposal in June of '13 where all these
18         claims would be in the same pool and would share pro
19         rata.
20              It also became clear to us that as part of
21         our financial analysis that even though we believed
22         that the claims were general unsecured claims, the
23         fact that the COPs claims were indirect obligations of
24         the City and not direct obligations to the City had to
25         be given some consideration, and that is how we ended
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022
13-53846-tjr Doc 8700-31 Filed 12/15/14 Entered 12/15/14 22:07:43 Page 20 of 22
13-53846-swr Doc 7703-1 Filed 09/27/14 Entered 09/27/14 22:02:48 Page 9 of 11

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2         up recommending to the emergency manager that only 40

 3         percent of the COPs claims be allowed because we were

 4         uncertain about what their ultimate status would be

 5         because again, I'm -- I'm making a legal conclusion,

 6         but the claim of the COPs against the service

 7         corporations would result in the service

 8         corporations's claim being an asset of the COPs and

 9         that was sufficiently in dispute as to a financial

10         matter as to what value would be, we felt 40 percent

11         was the appropriate allowed claim.

12              Then the distinction we had to draw with

13         the class 10 and 11 claims had to take into account

14         from a financial matter, the proposed treatment of

15         OPEB as a practical matter from the City's prospective

16         the financial obligations due to its retirees were

17         both pension and healthcare related and because we

18         were proposing to substantially impair or eliminate

19         our healthcare plans and in consideration for doing so

20         move our retirees to new insurance programs of much

21         lesser cost, that resulted in a very large claim, but

22         therefore, as a practical matter, rather than

23         throwing -- using the OPEB claim and the pension

24         claims to be pari passu with respect to recovery.

25              Part of the settlement discussion with the retiree --
```

```
 1              KENNETH BUCKFIRE, VOLUME 2

 2         I'm trying to be careful --

 3              MR. CULLEN:  Okay.

 4    A.   -- from a financial prospective, we viewed those

 5         claims as being part of the same pool for purposes of

 6         arranging an overall recovery and therefore how that

 7         recovery would be applied would be up to the

 8         beneficiaries which is now reflected in the plan of

 9         adjustment.

10    BY MR. SOTO:

11    Q.   Let me break that down.  That was a --

12    A.   Yeah.

13    Q.   -- pretty cool answer so --

14    A.   It's complicated.

15    Q.   So taking -- taking the first thing that you

16         highlighted, you highlighted the distinction between

17         direct and indirect claims and the class 9 claims you

18         viewed as indirect and there were other direct claims.

19         You said that led to you -- and again, if I'm saying

20         something wrong, you correct me, you said that allowed

21         to allowing only 40 percent of that claim.

22              So can you explain to me what analysis you

23         did of what analysis you did of what those claimants

24         you mentioned that they had claim -- it would result

25         in claims against the surface corporations is I think
```

Elisa Dreier Reporting Corp.  (212) 557-5558
950 Third Avenue, New York, NY 10022

13-53846-swr  Doc 8700-31  Filed 10/15/14  Entered 10/15/14 22:07:48  Page 22 of 22