# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------x
:
In re                      :        Chapter 9
:
CITY OF DETROIT, MICHIGAN,  :        Case No. 13-53846
:
           Debtor.    :        Hon. Steven W. Rhodes
:
:
------------------------------------------------------x

## CONSOLIDATED OBJECTION OF THE CITY OF DETROIT TO CORRECTED MOTIONS FOR ABSTENTION AND REMAND FILED BY (I) AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALS AND (II) THE COALITION OF DETROIT UNIONS

The City of Detroit, Michigan (the "City") hereby files this

consolidated objection (this "Objection") to: (i) the *Corrected AFSCME*

*Council 25 and Its Affiliated Detroit Locals Motion for Abstention and to Remand*

*the Claims Contained in Proof of Claim #2958* (Docket No. 8537) (the "AFSCME

Abstention Motion"), filed by AFSCME Council 25 and Its Affiliated Detroit

Locals ("AFSCME"); and (ii) the *Corrected Coalition of Detroit Unions Motion*

*for Abstention and to Remand the Claims Contained in Proof of Claim #2581*

(Docket No. 8536) (the "Coalition Abstention Motion" and, together with the

AFSCME Abstention Motion, the "Abstention Motions"), filed by the Coalition of

Detroit Unions (the "Coalition" and, together with AFSCME, the "Unions")

ATI-102629826

because the Abstention Motions fail to establish any grounds for permissive

abstention under section 1334(c)(1) of title 28 of the United States Code

(the "Judicial Code"). In support of this Objection, the City respectfully represents

as follows:

## PRELIMINARY STATEMENT

1. By the Abstention Motions, the Unions ask this Court to

exercise its discretion to abstain from adjudicating the various remaining elements

of AFSCME's proof of claim number 2958 (the "AFSCME Claim") and

the Coalition's proof of claim number 2581 (the "Coalition Claim" and, together

with the AFSCME Claim, the "Claims") under section 1334(c)(1) of the Judicial

Code in favor of either (a) a vaguely described and hypothetical arbitration

proceeding proposed by the Unions or (b) the numerous pending or potential state

proceedings in which the various elements of the Claims would have been

adjudicated in the absence of this chapter 9 case. AFSCME Abstention Motion,

at 2-3.[1]

---

[1]     In the Coalition Abstention Motion, the Coalition merely incorporates by reference all of the arguments raised by AFSCME in the AFSCME Abstention Motion. See Coalition Abstention Motion, at 1. Moreover, the counsel that represents both AFSCME and the Coalition conceded on the record in this chapter 9 case that the legal basis for the liabilities asserted in the Coalition Claim replicate certain of those asserted in the AFSCME Claim. See Tr. of 11/12/2014 Hr'g, at 50:20-22 (statement of counsel to AFSCME and the Coalition that "claim 8 of the AFSCME [C]laim is identical to the entirety of the legal aspects of the [C]oalition [C]laim").

2.     The City does not consent to the proposed arbitration of the remaining liabilities asserted in the Claims "before several simultaneously-assigned labor arbitrators" (id.), nor can the City be forced to forgo its Constitutional right to a court determination.  As such, the Unions' primary suggested method of avoiding this Court's adjudication of the Claims is procedurally – and constitutionally – unavailable.

3.     The Unions' secondary suggestion of fragmenting adjudication of the Claims among numerous other pending or potential proceedings fails to satisfy any of the requirements for permissive abstention under section 1334(c)(1) of the Judicial Code.  The Unions' notion of distributing the liabilities asserted in the Claims for determination among various outside forums:  (a) is wholly unnecessary, particularly since many of the liabilities asserted in the Claims can be adjudicated by the Court's determination of a single legal issue; (b) undermines the important bankruptcy policy of centralizing claims against the estate (or the debtor in chapter 9); and (c) would significantly multiply costs, delay implementation of the City's confirmed plan of adjustment[2] and encumber the City's ability to make

---

Accordingly, although the City references the arguments raised by AFSCME in the AFSCME Abstention Motion throughout this Objection, the City objects equally to the relief requested in the Coalition Abstention Motion on all of the same applicable grounds.

[2]     On November 12, 2014, the Court entered the *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket

meaningful distributions to the holders of allowed unsecured claims. As such, the City requests that (a) the Abstention Motions be denied and (b) the Court move forward with the prompt and efficient adjudication and liquidation of the remaining elements of the Claims.

## **BACKGROUND**

4. On February 21, 2014, AFSCME filed the AFSCME Claim asserting liabilities against the City in the aggregate amount of more than $8.7 billion.[3] Although certain of the alleged liabilities in the AFSCME Claim are identified with some degree of particularity, the AFSCME Claim is largely protective in nature, identifying a series of broad categories of claims, as well as "any other claims which arise before July 18, 2013." AFSCME Claim, at 2. Also on February 21, 2014, the Coalition filed the Coalition Claim asserting liabilities in the aggregate amount of more than $242 million.

---

No. 8272), confirming the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 8045) (the "Plan"). On December 10, 2014 (the "Effective Date"), the Plan became effective in accordance with its terms. See *Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* (Docket No. 8649). Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

[3] The AFSCME Claim is comprised of 20 claims listed on a chart attached thereto. As has become the convention between the parties, the City may refer to the elements of the AFSCME Claim as Claims 1 through 20 herein, based on the order presented in the AFSCME Claim.

5.	AFSCME has withdrawn certain of the liabilities asserted in the AFSCME Claim. See, e.g., *Order Dismissing Claims From Mediation* (Docket No. 7877) (withdrawing Claim #1 for "underfunded pension and post employment benefit obligations" and Claim #12 for "negotiation of Local 542 Supplemental Agreement MERC Case Number C07 LO-033").  The Court also has ruled that (a) the liabilities referred to as "AFSCME Council 25 (13th Check ULP). MERC Case No. C12-E-092" (Claim #7) in the AFSCME Claim are subject to treatment in Class 11 under the Plan and (b) the liabilities referred to as "City of Detroit Retirees Health Care: Grievance No. C10 A-025" (Claim #17) in the AFSCME Claim are subject to treatment in Class 12 under the Plan.  See *Order Regarding City's Objection to Proof of Claim #2958* (Docket No. 8015).[4]

6.	The remaining liabilities asserted in the AFSCME Claim and the Coalition Claim, if valid, would be classified in Class 14 under the Plan.  Even as modified and before liquidating the unliquidated elements of the Claims, the AFSCME Claim and the Coalition Claim are, respectively, the largest and second largest claims in Class 14 under the Plan.  In fact, these Claims dwarf the City's other Class 14 liabilities, still totaling hundreds of millions of dollars.  By contrast, the City's estimate of all allowed claims in Class 14 in its approved

---

[4]	AFSCME has filed a notice of appeal of this order (see Docket No. 8139). Regardless, the applicable liabilities are not subject to the AFSCME Abstention Motion.

ATI-102629826
13-53846-tjt   Doc 8797   Filed 12/16/14   Entered 12/16/14 14:06:56   Page 5 of 28

disclosure statement was only $150 million.  See *Fourth Amended Disclosure*

*Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the*

*City of Detroit* (Docket No. 4391), at § II.B (estimating the aggregate allowed

amount of claims in Class 14 at $150 million).

   7. The City reviewed the AFSCME Claim and, based upon the

limited information provided by AFSCME, determined that the vast majority of

the liabilities asserted therein are either:  (a) resolved by the terms of the Plan; or

(b) legally infirm and, therefore, subject to disallowance pursuant to section 502(b)

of title 11 of the United States Code (the "Bankruptcy Code").  In connection with

this review, the City further determined that there was no basis for the related

liabilities asserted in the Coalition Claim.  Therefore, to avoid the Unions' unfair

domination of voting in Class 14 under the Plan,[5] on May 15, 2014 the City filed:

(a) the *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the*

*Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim*

---

[5] The City and the Unions ultimately agreed that the Unions would be
permitted to vote in the aggregate amount of $20 million in Class 14 under
the Plan.  See *Order, Pursuant to Bankruptcy Rule 3018(a), Temporarily*
*Allowing, for Voting Purposes Only, (A) Proof of Claim Number 2958 Filed*
*by Michigan AFSCME Council 25 and Its Affiliated Detroit Locals and*
*(B) Proof of Claim Number 2851 Filed by the Coalition of Detroit Unions*
(Docket No. 5540).  The Unions voted in favor of the Plan.  See *Declaration*
*of Michael J. Paque Regarding the Solicitation and Tabulation of Votes on,*
*and the Results of Voting with Respect to, Fourth Amended Plan for the*
*Adjustment of Debts of the City of Detroit*, at Ex. J.

*Number 2851 Filed by the Coalition of Detroit Unions* (Docket No. 4874)

(the "Coalition Claim Objection"); and (b) the *Objection of the City of Detroit,*

*Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule*

*3007 and Local Rule 3007-1, to Proof of Claim Number 2958 Filed by Michigan*

*AFSCME Council 25 and Its Affiliated Detroit Locals* (Docket No. 4876)

(the "AFSCME Claim Objection" and, together with the Coalition Claim

Objection, the "Claim Objections").

8.      By the Coalition Claim Objection, the City sought

the disallowance of the Coalition Claim because the City has no liability to

the Coalition on account of the Coalition Claim.  Coalition Claim Objection, at

¶ 15.  By the AFSCME Claim Objection, the City objected to the AFSCME Claim

on various grounds and requested that the Court establish a process for

the adjudication or liquidation of the various liabilities asserted therein.  See Claim

Objection, at ¶ 20 (requesting that, to the extent not resolved by the parties,

the Court assist them in developing an "efficient process … to adjudicate or

liquidate the various elements of the [AFSCME] Claim on a rational and timely

basis.").  The Unions filed responses to the Claim Objections, and the City filed

further briefing in support thereof.  See Docket Nos. 7235, 7240, 7981, 7982,

7994, 8002, 8003.

ATI-102629826

9.    By the Abstention Motions, the Unions ask this Court to abstain from adjudicating the 14 remaining claims asserted in the AFSCME Claim and the liabilities asserted in the Coalition Claim.  See AFSCME Abstention Motion, at 4-10; Coalition Abstention Motion, at 1.

10.    An assessment of whether there is any liability associated with a majority of the open issues in the AFSCME Claim, as well as the Coalition Claim, requires a legal determination as to whether the City had the right to unilaterally implement employment terms or whether it was required instead to bargain with the Unions pursuant to the Michigan Public Employment Relations Act ("PERA"), MCL §§ 423.201, et seq.

11.    AFSCME has submitted to the Court a summary of the open legal and factual issues in the AFSCME Claim.  See AFSCME Abstention Motion, at 4-10.  In response, the City has distilled the open issues to the items described in the chart attached hereto as Exhibit A (the "Claim Summary Chart").[6]

## ARGUMENT

### A.    Arbitration Is Not Available for the Claim Objections

12.    As a threshold matter, "a court may submit for arbitration only those disputes that the parties have agreed to submit."  Granite Rock Co. v. Int'l

---

[6]    As the Court is aware and at the Court's request, the parties are working on a joint submission to identify the remaining open issues for resolution or Court determination.

Broth. of Teamsters, 561 U.S. 287, 302 (2010) (quotation marks and citations omitted); accord Arrow Overall Supply Co. v. Peloquin Enters., 414 Mich. 95, 99 (Mich. 1982) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting J. Brodie & Son, Inc. v. George A. Fuller Co., 167 N.W.2d 886, 890 (Mich. Ct. App. 1969) and Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241 (1962)).

13.     The City has not consented to the ill-defined arbitration proceeding or proceedings suggested in the AFSCME Abstention Motion.  To the contrary, when AFSCME has raised the possibility of arbitration of these claims over the past several weeks, the City repeatedly has informed counsel to the Unions that it does not so consent.  Accordingly, whether couched in terms of abstention or other relief, the City cannot be compelled to participate in any such arbitration proceeding or program.

**B.     Permissive Abstention Is Not Justified**

14.     The Unions seek abstention pursuant to the permissive abstention provision of section 1334(c)(1) of the Judicial Code.  See Abstention Motion, at 10-16.  This provision provides as follows:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

ATI-102629826
13-53846-tjt   Doc 8797   Filed 12/16/14   Entered 12/16/14 14:06:56   Page 9 of 28

28 U.S.C. § 1334(c)(1).

15.     "Abstention from the exercise of federal jurisdiction is the exception, not the rule." McDaniel v. ABN Amro Mortg. Group, 364 B.R. 644, 649 (S.D. Ohio 2007) (quoting In re Nationwide Roofing & Sheet Metal, Inc., 130 B.R. 768, 778 (Bankr. S.D. Ohio 1991)).  "Federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.  Abstention is an extraordinary and narrow exception to that duty.  Only the clearest of justifications will support abstention." RSM Richter, Inc. v. Behr America, Inc., 729 F.3d 553, 557 (6th Cir. 2013) (internal citations and quotation marks omitted).

16.     The existence of state law claims, inextricably tied to traditional bankruptcy matters, without more, does not warrant abstention in light of the congressional interest in having all bankruptcy matters adjudicated in one forum.  Allard v. Benjamin (In re DeLorean Motor Co.), 49 B.R. 900, 910-11 (Bankr. E.D. Mich. 1985).  Moreover, "the mere difficulty in ascertaining state law," even if established, "is an insufficient basis to decline to hear a case properly before this Court." Id. at 911 (denying defendants' motion for permissive abstention).

17.     The criteria to be considered by bankruptcy courts in determining whether permissive abstention is appropriate pursuant to section 28 of the Judicial Code are well established.

In considering whether to permissively abstain, courts look to multiple factors, as follows:

(1) the effect or lack of effect on the efficient administration of the estate if a court abstains;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable state law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of this court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of nondebtor parties; and
(13) any unusual or other significant factors.

Villages of Capital Pointe, LLC v. Huntington Bank, No. 13-13334, 2013 WL 4523305, at *2 (E.D. Mich. Aug. 27, 2013); accord In re Greektown Holdings, L.L.C., No. 08-53104, 2013 WL 2285763, at *3 (Bankr. E.D. Mich. May 16, 2013); Kmart Creditor Trust v. Conaway (In re Kmart Corp.), 307 B.R. 586, 588 (Bankr. E.D. Mich. 2004).

18.    An examination of the foregoing factors demonstrates conclusively that the Court should not exercise its discretion to abstain from adjudicating the Claims.

ATI-102629826

*The Effect on the Efficient Implementation of the Plan (Factor 1)*[7]

19.     The Unions' allegation that the outcome of any litigation over the liabilities asserted in the Claims will have a minimal or nonexistent impact on the City's efficient implementation of the Plan is simply wrong.  See AFSCME Abstention Motion, at 11.  In fact, at this point in the City's chapter 9 case, the Claims may be the single greatest obstacle to the City's ability to implement the Plan with respect to distributions to Class 14 creditors.

20.     The Unions recognize, as they must, that the Plan contemplates the pro rata distribution of a fixed amount of New B Notes among the holders of Allowed Other Unsecured Claims in Class 14 under the Plan.  See AFSCME Abstention Motion, at 11.  As such, the City cannot make distributions to the holders of legitimate and Allowed Class 14 Claims unless it simultaneously reserves appropriate allocations for all unliquidated or disputed claims.  See Plan, at § VI.B (requiring the City to "establish and maintain a reserve of property equal to (1) the Distributions to which Holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in the Face Amount

---

[7]     This factor typically is expressed as the "effect on the efficient administration of the estate."  Although there is no estate to administer in chapter 9, the City submits, and the Unions appear to concede, that, at this stage in the City's chapter 9 case, this consideration addresses the effect of abstention on the City's ability to implement the Plan.  See AFSCME Abstention Motion, at 11 (arguing incorrectly that abstention will have no effect on the City's implementation of the Plan).

of such Disputed Claims or (2) such lesser amount as required by an order of the Bankruptcy Court").[8]

21.    The Unions and, in particular, AFSCME have asserted enormous disputed claims against the City that dwarf all other pending claims in Class 14 under the Plan and that – to the extent valid – would themselves be subject to treatment in whole or in part in Class 14.  Thus, while the Claims remain pending and in the absence of a ruling to the contrary by this Court, the City must reserve a disproportionate amount of New B Notes on account of the Claims in the event that they may become allowed.  This prevents the City from making meaningful distributions to the holders of Allowed Other Unsecured Claims in Class 14 until the Claims are either liquidated or disallowed.

***The Existence and Nature of State Law Issues (Factors 2, 3)***

22.    Just like the majority of claims asserted in the City's chapter 9 case – and in every bankruptcy case – the Claims allege liabilities that are themselves grounded in state law.  This fact alone, however, is insufficient to overcome the Court's strict duty to exercise the jurisdiction conferred on it, even where state law issues are complex.  "As the U.S. Supreme Court has observed, 'bankruptcy courts consult state law in determining the validity of most claims.'"

---

[8]    The City is finalizing its review of disputed Class 14 claims and expects shortly to file a motion for Court approval of an appropriate reserve on account of Class 14 Claims.

In re City of Detroit, Mich., 498 B.R. 776, 786 (Bankr. E.D. Mich. 2013) (quoting

Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co., 549 U.S. 443, 444

(2007)).  To hold otherwise would undermine the important bankruptcy policy of

centralizing claims against the debtor or its estate.  Id.

       23.     AFSCME claims that abstention is appropriate because

(a) adjudication of the Claims may require interpretation of the PERA, which is

an important state labor law; and (b) the interpretation of PERA is vested with the

Michigan Employment Relations Commission ("MERC") over other state

tribunals.  AFSCME Abstention Motion, at 12-13.  AFSCME alleges generally that

the issues presented are "quite esoteric" and "novel, or at least unique to Michigan

law."  AFSCME Abstention Motion, at 12, 14.

       24.     Adjudication of the Claims does not require extensive

interpretation of PERA.  Rather, to the extent PERA is implicated at all,

the validity of the Claims depends upon a single issue – that is, the suspension of

the duty to bargain otherwise provided for under PERA and other state statutes by,

respectively:  (a) Michigan Public Act 4 of 2011, MCL § 141.1501, et seq.

("PA 4"); (b) the Financial Stability Agreement entered into by the City and

the State of Michigan in April 2012, which served as a consent agreement under

PA 4; and (c) Michigan Public Act 436 of 2012, MCL § 141.1541, et seq.

("PA 436").  See Claim Summary Chart; see also similar chart in AFSCME

Abstention Motion, at 4-10.

25.    AFSCME does not attempt to argue that this Court lacks

jurisdiction to adjudicate this issue and otherwise fails to explain how this Court is

ill-equipped to make this straightforward determination.  See IRS v. Luongo (In re

Luongo), 259 F.3d 323, 331 n.5 (5th Cir. 2001) ("Bankruptcy courts routinely

interpret state law in order to resolve disputes in bankruptcy cases.") (quoting In re

Wilson, 85 B.R. 722, 727 (Bankr. E.D. Pa. 1988)); accord In re Driesenga, No. DG

09–00925, 2010 WL 2105185, at *2 (Bankr. W.D. Mich. May 24, 2010) (stating

that "bankruptcy courts regularly address and resolve complicated issues of state

property law, even novel ones").  In fact, the Court has addressed questions of law

arising from these and other state authorities throughout the course of the City's

chapter 9 case.  See, e.g., In re City of Detroit, Mich., 504 B.R. 97, 154-66 (Bankr.

E.D. Mich. 2013) (interpreting at length the provisions and constitutionality of

PA 436 in response to various legal arguments, including with respect to the

relationship between PA 4 and PA 436).

26.    AFSCME also draws the Court's attention to various factual

disputes that may exist with respect to the liabilities asserted in the Claims.  See

AFSCME Abstention Motion, at 4-10.  The majority of the alleged factual issues,

however, relate to the calculation of damages only in the event that AFSCME

prevails in demonstrating the viability of the applicable claim under the law.  See id. (highlighting factual issues with respect to the calculation of damages for seven of the 14 remaining claims); see also Claim Summary Chart.  In the unlikely event that the claims cannot be resolved as a matter of law, the Court is eminently capable of receiving testimony or taking any other evidence, as necessary and appropriate, to resolve such issues.  The second and third factors, therefore, weigh in favor of the Court declining to abstain.

### The Absence of a Single State Proceeding to Adjudicate the Claims (Factor 4)

27.    No single state proceeding exists to adjudicate the Claims. Instead, as described above, the Unions suggest that the Court create one from whole cloth—albeit an arbitration proceeding that is not viable without the City's consent.  In the alternative, the Unions request that the Court abstain in favor of numerous proceedings pending before MERC, various state courts and other tribunals and, in certain cases, in favor of proceedings that have not even been initiated.  The fragmentation of the Claims in this manner will impose a significant and unnecessary burden on the City, increase any risk of conflicting judgments with respect to the various interrelated elements of the Claims, hinder implementation of the Plan and delay distributions to the City's Class 14 creditors.

ATI-102629826

### The Relationship Between the Allowance or Disallowance
### of the Claims and the Chapter 9 Case (Factors 5-8)

28. The allowance or disallowance of claims is a core proceeding under the Judicial Code. See 11 U.S.C. § 157(b)(2)(B). As such, the liquidation or disallowance of the Claims is at the heart of the City's chapter 9 case even though, in the absence of bankruptcy, many of the liabilities would be adjudicated in state forums.[9]

29. Here, the allowance or disallowance of the Claims is particularly integral to the City's chapter 9 case. Because the Claims dominate Class 14 under the Plan, the City's implementation of the Plan will be directly implicated by the ultimate treatment of these Claims. The fragmentation of the various components of the Claims among multiple other tribunals therefore is unwarranted and will serve only to unnecessarily multiply litigation, increase costs, cause delays and risk inconsistent or incomplete rulings among various state tribunals. Ultimately, these risks, costs and delays will have a material and adverse effect on the City's case. Accordingly, factors 5 through 8 weigh in favor of the Court declining to abstain.

---

[9]     The City notes, however, that a federal jurisdictional basis other than section 1334 of the Judicial Code likely would exist with respect to any liabilities that allegedly arise under the Federal Transit Act, 49 U.S.C. § 5301, et seq. See AFSCME Abstention Motion, at 6.

### The Effect on the Court's Docket (Factor 9)

30.     By agreement, following the filing of the Objections, the City and the Unions postponed adjudication of the Claims while the Court considered confirmation of the Plan.  The Court now having confirmed the Plan, and the Effective Date having occurred, the City submits that the liquidation or disallowance of the Claims is one of the few significant issues remaining before the Court.  Accordingly, this factor weighs in favor of the Court declining to abstain.

### The Unions' Attempts at Forum Shopping (Factor 10)

31.     Patently, the City is not forum shopping because, as the Court has recognized, it commenced this chapter 9 case to address its service delivery insolvency, mammoth legacy liabilities and substantial funded debt that far exceed the portions of the Claims that remain subject to adjudication.  Similarly, seeking to adjudicate proofs of claim in the bankruptcy court is the process contemplated by the Bankruptcy Code, except in cases where the Court lacks jurisdiction. Objecting to proofs of claim filed in this Court to seek a determination of this Court is not forum shopping.

32.     By contrast, the Unions' attempts at forum shopping are laid bare by their request for the establishment of an alternative form of proceeding to adjudicate the Claims outside of this Court – i.e., a new arbitration before a group

ATI-102629826

of "simultaneously assigned labor arbitrators with experience in the fields of law surrounding the legal claims." AFSCME Abstention Motion, at 3. It is unclear how this proposed arbitration would proceed and, as described above, there is no legal basis for such a proceeding. Nevertheless, it is apparent that the Unions do not object to centralizing the liquidation of the Claims as long any such liquidation is conducted by a group of arbitrators and not this Court. This factor, therefore, weighs in favor of the Court declining to abstain.

### The Absence of Any Right to a Jury Trial (Factor 11)

33.     The Unions do not allege that they would possess a right to a jury trial of any of the remaining Class 14 liabilities asserted in the Claims, and the City believes that no such right exists. Accordingly, this factor weighs in favor of the Court declining to abstain.

### The Absence of Nondebtor Parties, Other Than the Unions (Factor 12)

34.     The Unions allege that the testimony of certain individuals may be required to establish certain of the liabilities asserted in the Claims. See AFSCME Abstention Motion, at 15. Such witnesses would not, of course, be *parties* to any of the pending or potential proceedings contemplated by the Unions. Moreover, the Unions fail to demonstrate how the adjudication of the liabilities asserted in the Claims by this Court would in any way prejudice their access to such witnesses. Thus, this factor weighs in favor of the Court declining to abstain.

ATI-102629826

***Other Significant Considerations (Factor 13)***

35.     As described above, the Effective Date of the City's Plan has recently occurred.  The City needs to press forward with a prompt and efficient adjudication of the Claims to be able to make meaningful distributions to the holders of valid claims in Class 14 under the Plan.  In good faith, the City has negotiated extensively and attempted mediation with the Unions regarding the liabilities asserted in the Claims.  Unfortunately, to date, these efforts have proven unavailing.  It is appropriate, therefore, that the City now be permitted to move forward with a prompt and efficient adjudication of the Claims in this centralized forum and that the Court determine *not* to abstain pursuant to section 1334(c)(1) of the Judicial Code.

WHEREFORE, for the foregoing reasons, the City respectfully requests that this Court (i) deny the Abstention Motions and (ii) grant such other and further relief to the City as the Court may deem proper.

Dated:  December 16, 2014          Respectfully submitted,


 /s/ Heather Lennox                
David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 243-2382
Facsimile:  (213) 243-2539
bbennett@jonesday.com

ATTORNEYS FOR THE CITY

# EXHIBIT A

ATI-102629826

| Claim No./Issue | Description | Open Legal and Factual Issues |
|---|---|---|
| Claim No. 3<br><br>Refusal to Bargain Concerning AFSCME Local 1023 (MERC Case Number D13 C-0331) | AFSCME alleges that the Michigan Employment Relations Commission's ("MERC") erred in administratively dismissing AFSCME Local 1023's petition for binding arbitration. In dismissing the petition, MERC relied on its 2013 decision that Michigan Public Act 436 of 2012, the Local Financial Stability and Choice Act, MCL §§ 141.1541, *et seq.* ("PA 436"), suspended the City's obligation to engage in binding arbitration under Michigan Public Act 312 of 1969, MCL §§ 423.231-247, as amended ("Act 312"). | **Legal:** Did PA 436 suspend the City's duty to engage in Act 312 arbitration?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary *only* if AFSCME prevails on the threshold legal issue. |
| Claim No. 4<br><br>Refusal to Bargain Concerning AFSCME Locals 207, 2394 and 2920 (DWSD) (Case Number C13 D-069) | On July 18, 2012, the City imposed City Employment Terms ("CETs") City-wide, including imposition on employees represented by AFSCME Locals 207, 2394 and 2920 that work for the Detroit Water and Sewerage Department ("DWSD"). AFSCME contends that implementation of the CETs violated State labor law. | **Legal:** At the time the City imposed the CETs, was it subject to a State law duty to bargain, or was that duty suspended?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary *only* if AFSCME prevails on the threshold legal issue. |

---

[1]   This chart addresses the same items described in a chart included as part of the AFSCME Abstention Motion. Certain components of the AFSCME Claim are not addressed on this chart: (a) Claim Nos. 1, 2 and 12 have been withdrawn by AFSCME; (b) Claim Nos. 7 and 17 already have been addressed by the Court; (c) Claim Nos. 14, 15 and 18 are being addressed by the parties as the ordinary course grievance process; and (d) Claim No. 20 is subject to an informal resolution process.

| Claim No./Issue | Description | Open Legal and Factual Issues |
|---|---|---|
| <u>Claim No. 5</u><br><br>Imposition of Furlough Days in February 2013 | In February 2013, the City imposed furlough days on various employee groups. AFSCME contends that the implementation violated a State law duty to bargain. | **Legal:** Was the City subject to a State law duty to bargain at the time the City imposed the furlough days, or was that duty suspended?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary *only* if AFSCME prevails on the threshold legal issue. |
| <u>Claim No. 6</u><br><br>Refusal to Bargain Concerning Transportation Locals (Case Number C12 H-157) | On July 18, 2012, the City imposed CETs City-wide on many AFSCME local unions, but did not impose CETs on AFSCME Locals 214 and 312 representing employees in the Detroit Department of Transportation ("<u>DDOT</u>"). The City chose not to impose on these DDOT locals because of the special bargaining requirements associated with Section 13(c) of the Federal Transit Act, 49 U.S.C. § 5333(b) ("<u>Section 13(c)</u>"), through which DDOT receives federal funding, and the related agreements entered into between the City and AFSCME (together, the "<u>Section 13(c) Agreements</u>"). AFSCME contends that imposing CETs on some AFSCME local unions, but not Locals 214 and 312, violated State labor law. | **Legal:** Did the City's decision not to impose CETs on the DDOT AFSCME locals in light of the Section 13(c) Agreements and federal funding requirements under Section 13(c), obligate the City to refrain from imposing the CETs on any other AFSCME locals?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary *only* if AFSCME prevails on the threshold legal issue. |

ATI-102629826

| Claim No./Issue | Description | Open Legal and Factual Issues |
|---|---|---|
| Claim No. 8<br><br>Negotiations and Implementation with Coalition in 2012 (MERC Case No. C12 D-065, C12 F-125, C13 G-129) | This claim is identical to, and subsumed within, the Coalition claim.  See note 1 of the Objection.  In the Spring of 2012, the City and the unions in the Coalition reached a tentative labor agreement.  Before the City could submit the tentative agreement to a vote before City Council, the State informed the City that the tentative agreement was unacceptable and provided the City with two options (neither of which allowed for the execution or implementation of the tentative agreement):  (a) the City could enter into a consent agreement with the State, which would preclude the execution of the tentative agreement; or (b) the State would appoint an emergency manager at that time who could implement CETs in lieu of the tentative agreement.  Given these options, on April 10, 2012, the City entered into a financial stability agreement (the "<u>Consent Agreement</u>") with the State, which served as a consent agreement under PA 4, and thereby suspended the City's duty to bargain.  On July 18, 2012, the City imposed CETs on many of the Coalition bargaining units.  AFSCME contends that the City's failure to submit the tentative agreement to City Council for ratification and the imposition of CETs violated State labor law, including any obligation to bargain in good faith<br><br><br>. | **Legal:**  In light of the decision in *Valenti v. Snyder*, 853 F. Supp. 2d 691, 693-94 (E.D. Mich. 2012), and given the futility of any attempt to have the tentative agreement approved, did the City violate State labor law by failing to submit the tentative agreement to City Council for approval?  Was the City subject to a State law duty to bargain when it imposed the CETs?<br><br>**Factual:**  Facts related to the calculation of any appropriate damages will be necessary ***only*** if AFSCME prevails on the threshold legal issue. |

| Claim No./Issue | Description | Open Legal and Factual Issues |
|---|---|---|
| Claim No. 9<br><br>Violation of Privatization Ordinance | AFSCME alleges, generally, without specifying any particular violation, that the City has violated its privatization ordinance. | **Legal:** Has AFSCME alleged this claim with sufficient particularity?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary **only** if AFSCME prevails on the threshold legal issue. Whether other facts are relevant may depend on AFSCME's amendment to this claim, if permitted. |
| Claim No. 10<br><br>DFFA Work Assignment Issues (MERC Case No. C11 K-201) | AFSCME alleges that the City allowed employees represented by the Detroit Fire Fighters Association ("DFFA") to perform certain work that should have been performed by AFSCME members in violation of State labor law. | **Legal:** Has this unfair labor practice charge been resolved through the resolution of grievances regarding the same underlying issue?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary **only** if this matter is not resolved by the related grievance procedure. |
| Claim No. 11<br><br>Longevity Claim (Claim number 12-000522 and 12-000523; Wayne County Circuit Court Number 13-003430-AA) | AFSCME alleges that an Administrative Law Judge ("ALJ") erred in a January 15, 2013 decision dismissing AFSCME's complaint alleging that employees were entitled to a 2010 longevity payment under State law. AFSCME appealed the decision to the Wayne County Circuit Court. The appeal remains pending, but is subject to the stay under sections 362 and 922 of the Bankruptcy Code, as modified and extended by orders of the Court. | **Legal:** Did the City's decision not to issue a longevity payment in 2010 violate Section 3 of the Wage and Fringe Benefit Act, Michigan Public Act 390 of 1978, as amended?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary **only** if AFSCME prevails on the threshold legal issue. |

ATI-102629826

| Claim No./Issue | Description | Open Legal and Factual Issues |
|---|---|---|
| Claim No. 13<br><br>SEMHA Layoffs (MERC Case No. C05 H-194) | AFSCME alleges that the City laid off certain AFSCME-represented employees in violation of State labor law. | **Legal:** Did the layoffs violate State labor law?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary ***only*** if AFSCME prevails on the threshold legal issue. |
| Claim No. 16<br><br>City of Detroit Human Services Department (Grievance No. 25-01-12 / COA: 12-0077708-CL) | AFSCME obtained an arbitration decision finding that the City laid off various AFSCME-represented employees in violation of the then-current collective bargaining agreement. The City appealed the decision to the Wayne County Circuit Court. The appeal remains pending, but is subject to the stay through sections 362 and 922 of the Bankruptcy Code, as modified and extended by orders of the Court. | **Legal/Factual:** The City does not intend to further pursue its appeal. The parties therefore have agreed that the only outstanding issue is determining the amount of damages owed by the City pursuant to the arbitration award. |
| Claim No. 19<br><br>Service and Maintenance Outsourcing in Downtown Detroit (Grievance Number C09-078) | AFSCME alleges that the City reduced the amount of overtime available to certain of its members by outsourcing certain work in violation of the then-current collective bargaining agreement. | **Legal:** Has AFSCME alleged this claim with sufficient particularity?<br><br>**Factual:** Facts related to the calculation of any appropriate damages will be necessary ***only*** if AFSCME prevails on the threshold legal issue. Whether other facts are relevant may depend on AFSCME's amendment to this claim, if permitted. |

ATI-102629826

## <u>CERTIFICATE OF SERVICE</u>

I, Heather Lennox, hereby certify that the foregoing *Consolidated Objection of the City of Detroit to Corrected Motions for Abstention and Remand Filed by (I) AFSCME Council 25 and Its Affiliated Detroit Locals and (II) the Coalition of Detroit Unions* was filed and served via the Court's electronic case filing and noticing system on this 16th day of December, 2014.

/s/  Heather Lennox