1  city's papers stated that in all three cases we obtained ex

2  parte injunctive relief.  In none of those three cases did we

3  obtain ex parte injunctive relief.  In fact, we gave the

4  state and its officers notice of everything we did, and the

5  matter was fully briefed.  Nothing happened ex parte.  Let me

6  leave it at that.

7  THE COURT:  Okay.

8  MR. WERTHEIMER:  And, finally, consistent with that,

9  in my declaration I indicated that I was attaching the

10  transcript from the proceedings of July 18.  I neglected to

11  do that electronically.  We provided copies to everybody last

12  night by e-mail.  We will make sure that that's also done

13  electronically, and I'd like to, if I may, approach the bench

14  and provide a copy to the Court.

15  THE COURT:  Yes, sir.  That's fine.  Thank you.

16  THE CLERK:  Thank you.

17  MR. WERTHEIMER:  That's all I have, your Honor.

18  Thank you.

19  THE COURT:  Thank you.  And before we proceed with

20  the city's rebuttal, I'd like to ask if there's anyone in the

21  courtroom who would also like to address the Court.  And

22  briefly, please, sir.

23  MR. BRENT:  Good morning, your Honor.  My name is

24  Nathaniel Brent.  I represent myself pro se in a current

25  lawsuit against the City of Detroit in this Eastern District

1    of Michigan in front of Julian Cook.  One thing that I'm
2    surprised at with all of these learned attorneys here is
3    nobody has mentioned the issue of this declaratory judgment
4    actually collaterally estops the City of Detroit from
5    relitigating the issue of whether they had authority to even
6    file this petition.
7        THE COURT:  Actually, that is mentioned in the
8    briefs.  It's more than mentioned.  It's argued forcefully in
9    the briefs.
10       MR. BRENT:  That's not my primary argument here,
11   your Honor.  My primary argument is regarding the stay that's
12   been in place and the extensions they're seeking to grant a
13   blanket stay for any Detroit employee, present or --
14       THE COURT:  Let me ask you what is your claim and
15   who is it against?
16       MR. BRENT:  My claim is against the City of Detroit
17   police officers and two police officers in both their
18   individual and official capacity for violations of my Fourth
19   Amendment rights.  The issue here, your Honor, is this case
20   has been pending for the last two and a half years.
21       THE COURT:  Um-hmm.
22       MR. BRENT:  And now that the stay is in effect and
23   they're trying to extend this even further, the issue
24   cannot -- of liability cannot even be litigated in order to
25   bring it in front of this Court.

1      THE COURT:  Um-hmm.

2      MR. BRENT:  Granted, as for the execution of any

3  orders to enforce any judgment entered would clearly be

4  within the jurisdiction of this Court.  I don't contest that

5  at all.  The issue of whether or not they are liable and

6  committed the violations of the Fourth Amendment, those are

7  issues that should be allowed to be continued to be

8  litigated.

9      THE COURT:  Um-hmm.

10      MR. BRENT:  On that issue, even if an award is

11  granted, it would not be part of the reorganization of the

12  City of Detroit in the first place.  The City of Detroit's

13  charter -- in Chapter 9 of the City of Detroit's charter they

14  have what is called a risk management fund, which is a

15  dedicated fund which is required to have a minimum of $20

16  million in it to pay for civil lawsuits and workmen

17  compensation claims.  This isn't part of the reorganization.

18  This is going to exist regardless.

19      As for their claim regarding the indemnifying

20  employees under Chapter 13-11-1, that gives the City of

21  Detroit the option to indemnify.  It does not require that

22  they indemnify these employees.

23      THE COURT:  Um-hmm.

24      MR. BRENT:  And, now, in my present case, City

25  Council did vote to elect to indemnify the employees.

1          THE COURT:  Um-hmm.

2          MR. BRENT:  However, this is the city's option.

3    This isn't a requirement of law that they indemnify these --

4          THE COURT:  Um-hmm.

5          MR. BRENT:  -- just as -- my lawsuit is also against

6    various state actors within the State of Michigan, which --

7    but, again, their wanting to extend this to them would

8    prevent me from litigating my claims against the state

9    officials that have already been denied immunity, and it is

10   currently pending.  Those portions they've appealed to the

11   Circuit Court.  So now that they're trying to extend this

12   stay, now the Sixth Circuit Court of Appeals case of Brent

13   versus Wayne County, et al. will be stayed as well where the

14   different state defendants -- state employees have uphill

15   decision to deny their qualified and absolute immunity.

16         THE COURT:  The defendants in your particular suit

17   are both city employees and other defendants are state

18   employees?

19         MR. BRENT:  Yes, and there's also state contractors

20   involved in the lawsuit.

21         THE COURT:  Contractors also.  Thank you, sir.

22   Would anyone else like to be heard?

23         MR. SANDERS:  Good morning, your Honor.  My name is

24   Herb Sanders, and I represent the plaintiffs in the case of

25   Phillips versus Snyder pending before this Court, Case Number

1    2:13-CV-11370, before Judge Steeh. That is a case that

2    challenges the constitutionality of PA 436. Motions for

3    summary -- for at least one summary disposition or summary

4    judgment argument have been scheduled. As I initially read

5    the request for stay extension motion filed by the city, it

6    appeared that the city was seeking an extension of stay

7    concerning financial matters that were being litigated, but

8    pursuant to the oral presentation of the city's attorney, it

9    concerns me when she has indicated -- and I paraphrase --

10   that she seeks relief concerning any litigation that might

11   interfere with the city's rights as a Chapter 9 debtor. And

12   I would suggest to the Court to the extent that it might be

13   proposed or suggested that the litigation which I have

14   referenced in which the constitutionality of PA 436 is to be

15   determined by another judge in this court interferes with the

16   rights of the city as a Chapter 9 debtor, that that case not

17   be included as part of the stay order that this Court would

18   issue. I believe it's imperative to this community, to this

19   state that those issues be determined and, in fact, should

20   probably be determined before the bankruptcy proceeds, but I

21   would encourage the Court to not give a broad order if any

22   order were to issue that would be inclusive of matters that

23   are not financial matters such as there are other matters

24   that I know that the union, AFSCME, and others are a part of

25   seeking FOIA requests from the city, injunctive relief as it

1   relates to these types of matters, and I would ask the Court

2   to consider not giving such a broad order --

3         THE COURT: Um-hmm.

4         MR. SANDERS: -- that that type of information could

5   not be obtained and we could not have a determination as to

6   the constitutionality of PA 436 by this Court.

7         THE COURT: Um-hmm.

8         MR. SANDERS: Thank you, your Honor.

9         THE COURT: Thank you. Sir, can you just give me

10  your name again, please?

11        MR. SANDERS: Herb Sanders.

12        THE COURT: Mr. Sanders. Thank you, sir.

13        MR. SCHNEIDER: May it please the Court, Matthew

14  Schneider, chief legal counsel to the Attorney General. I'm

15  here on behalf of the State of Michigan. Your Honor, I'm

16  here for a very, very limited purpose. As counsel to the

17  debtor has indicated, they are not seeking to abrogate the

18  exceptions in Section 362(b), and I know that this is a

19  motion regarding Section 362, so our position is is that if

20  the Court is, indeed, inclined to grant the motion regarding

21  the stay, that the Court's order reflect that nothing in the

22  Court -- nothing what the Court is doing will actually

23  abrogate the exceptions afforded under 362(b).

24        THE COURT: Is there a specific exception you're

25  concerned about?

1        MR. SCHNEIDER:  Well, your Honor, the state has a
2   great interest in ensuring that our departments and agencies
3   can continue their administrative functions, which is really
4   not unusual, and we just want to be sure that that's the
5   case, and that's all I have, your Honor.
6        THE COURT:  Well, but which provision in Section
7   362(b) --
8        MR. SCHNEIDER:  It's subsection (4).
9        THE COURT:  -- is implicated?  Oh, (4).  Okay.
10       MR. SCHNEIDER:  Subsection (4) --
11       THE COURT:  Of course.
12       MR. SCHNEIDER:  -- which indicates that, you know,
13  commencement or continuation of an action or proceeding by a
14  governmental unit isn't going to -- isn't going to impair a
15  governmental unit to have its regulatory power in --
16       THE COURT:  It's the police powers exception.
17       MR. SCHNEIDER:  Correct.
18       THE COURT:  Thank you, sir.
19       MR. SCHNEIDER:  Thank you.
20       THE COURT:  Would anyone else like to be heard?  All
21  right.  Ms. Lennox.
22       MS. LENNOX:  Thank you, your Honor.
23       THE COURT:  And by the way, my very efficient staff
24  provided me by computer here a copy of the ordinance.
25       MS. LENNOX:  Oh, thank you, your Honor.  I have one,

1    too, so that --

2         THE COURT:  I'm all set.

3         MS. LENNOX:  Great.

4         THE COURT:  And it does raise a question.  The

5    language appears to be discretionary as concerns indemnity.

6    Yes?

7         MS. LENNOX:  It is discretionary, but it's the

8    city's policy that if the employee is performing its duties

9    in good faith in the scope of its employment that indemnity

10   will issue, and that discretion now is the discretion of the

11   emergency managers, your Honor, which I would point out I was

12   very --

13        THE COURT:  Well, what impact does the fact that

14   it's discretionary rather than mandatory have on your

15   argument that the stay should be extended to employees who

16   might not otherwise be covered?

17        MS. LENNOX:  I think, your Honor, it doesn't have

18   much of an impact at all because, as I said, it's a matter of

19   city policy that if the employee was performing his or her

20   duties in good faith and the conduct that gave rise to the

21   action occurred in the performance of those duties, then the

22   indemnity will issue.

23        THE COURT:  Is that a policy in writing that we can

24   refer to, or is it just a matter of --

25        MS. LENNOX:  I would have --

1      THE COURT:  -- this is what the city always does?

2      MS. LENNOX:  I would have -- I would have to check

3  with corporation counsel on that, your Honor, but regardless,

4  the extension should certainly apply to the employees for

5  whom the city has agreed to indemnify for the reasons that I

6  stated earlier.

7      I would like, your Honor, just at the outset -- I

8  was very remiss because we didn't make opening statements to

9  neglect to introduce to you the emergency manager, who is

10  here in the courtroom today.  Mr. Orr is here.  Obviously he

11  has a great interest in these proceedings.  Okay.  Thank you,

12  your Honor.

13      Perhaps a couple of housekeeping matters before I

14  get into argument.  First, your Honor, I do have a copy of

15  the order that was issued by the Court of Appeals in the

16  State of Michigan in the Webster case in which the

17  declaratory judgment was entered, and perhaps that order --

18  the declaratory judgment has been appealed, and perhaps we

19  were misreading the order, but the order does say that the

20  motion for stay pending appeal is granted, and the Circuit

21  Court's July 18th, 2013, temporary restraining order and all

22  further proceedings are stayed, so that's where we got that

23  understanding, your Honor.  I have a copy if your Honor would

24  like to see it.

25      THE COURT:  Please.

1          MS. LENNOX:  May I approach?

2          THE COURT:  Yes.

3          MR. CANZANO:  Judge, I know it's a little bit

4     unorthodox here, but I --

5          THE COURT:  I have to ask you to stand by the

6     microphone because of the limitations of our equipment here,

7     sir.  Sir, actually this microphone, and my apologies to you

8     for that inconvenience.

9          MR. CANZANO:  I'm the attorney that got the

10    declaratory judgment, John Canzano, representing the --

11         THE COURT:  Canzano?

12         MR. CANZANO:  -- Webster plaintiffs.  I can speak

13    very briefly to why the declaratory judgment is not stayed.

14         THE COURT:  Okay.  Let me ask you --

15         MR. CANZANO:  There's four appeals.

16         THE COURT:  Let me ask you -- let me ask you to do

17    that after Ms. Lennox speaks.

18         MS. LENNOX:  As another housekeeping matter, your

19    Honor, I believe when Mr. Bennett was speaking, he indicated

20    that his firm in the Collins & Aikman case had filed a motion

21    to extend the stay but then they withdrew it because it was

22    procedurally improper.  Respectfully, I would beg to differ.

23    I have the transcript of that motion.  That motion was heard.

24    It was argued before your Honor, and it was denied.  If your

25    Honor would care to see the transcript, I do have it with me.

1          THE COURT:  No, thanks.

2          MS. LENNOX:  Thank you.  In our colloquy, your

3     Honor, as an initial matter, you had asked what if the

4     preliminary injunction standards applied, and, as I

5     indicated, if you're going to apply preliminary injunctions,

6     you sort of have to have a matter to --

7          THE COURT:  That wasn't exactly my question.  My

8     question was how do you deal with the argument that they

9     should apply?

10          MS. LENNOX:  I think, your Honor, under the Section

11     105 extension case law that exists out there where you extend

12     by motion, the courts have created a standard that is

13     different than the preliminary injunction four-part standard,

14     and, in fact, in cases in which this is presented by motion,

15     the preliminary injunction standards aren't even discussed,

16     and that standard is the standard that I --

17          THE COURT:  Well, but didn't Eagle-Picher address

18     them?

19          MS. LENNOX:  Eagle-Picher was brought by a

20     preliminary injunction.  That was a preliminary injunction

21     case.  It noted in dicta that many courts permit extensions

22     of the stay by motion, but that particular case they had

23     brought by preliminary injunction, so, therefore, they went

24     through the standards.  If we had to go through the standards

25     here, I think we meet them, and if your Honor is interested,

1    I can articulate that for you.

2              THE COURT:  Go ahead.

3              MS. LENNOX:  But in any event, I don't think we need

4    to go through them under the circumstances, but if we had to

5    meet the preliminary injunction standards, I believe that

6    there would be -- at least with respect to the three lawsuits

7    that we have out there, I think there would be a great chance

8    of success on the merits because by the plaintiffs attempting

9    to condition the authorization to file a municipal bankruptcy

10   on that municipal -- that municipality's foregoing rights

11   under Chapter 9 once in Chapter 9 is a violation of the

12   bankruptcy clause and the supremacy clause.  I think we'd win

13   on that, your Honor.

14             Secondly, with respect to irreparable harm, if these

15   actions are not stopped, the city would be irreparably

16   harmed.  We would be preventing -- we would be prevented from

17   accessing necessary protections that we are otherwise wholly

18   entitled to access under Chapter 9 and under applicable law,

19   and it would be harmed by our inability to have the

20   appropriate forum, this forum, to decide the matter because

21   the matter presents federal issues for federal jurisdiction.

22   The issues that are presented have to do with can the

23   authorization be conditioned upon limiting a municipality's

24   rights in Chapter 9.  That clearly and squarely presents

25   federal issues of this Court's jurisdiction that can only be

1  decided by this Court under the supremacy and the bankruptcy

2  clauses, so without -- an inability for us to pursue that

3  would be irreparable harm to the city.  A state court simply

4  does not have jurisdiction to decide those.

5        Third, your Honor, the injunction, if one would call

6  this an injunction, is not going to harm others because, as

7  your Honor pointed out, they do have a forum, indeed the only

8  appropriate forum, in which to decide the issues that can

9  arise only in a bankruptcy case, issues like eligibility,

10  contract rejections, what should go in a plan of adjustment,

11  all of which are addressed by the three lawsuits that are

12  filed.  As your Honor pointed out, these litigants will have

13  due process.  They will have their day in court.  They will

14  have these issues decided, but they will have them decided in

15  the tribunal with proper jurisdiction.

16        And then fourth, your Honor, public policy clearly

17  favors the resolution of issues that exist only under the

18  Bankruptcy Code in the Bankruptcy Courts.  Any attempts to

19  have courts that are not of competent jurisdiction determine

20  these issues actually, your Honor, would offend public

21  policy, so while I don't think that we need to go through the

22  preliminary injunction standards in this case and by virtue

23  of the relief that we asked for, if we had to, we would meet

24  them.

25        Now, your Honor, I think I would like to, if it

1   please the Court, address sort of collectively the arguments

2   that were made about should the state courts determine this

3   or should the federal courts determine this, and

4   ultimately -- certainly at least what Ms. Levine was arguing

5   down to, they're arguing the merits of eligibility, and, as

6   your Honor pointed out, that's not before the Court today.

7   Nothing prevents -- as your Honor also pointed out, nothing

8   prevents anybody from seeking to lift the stay in any

9   particular case in any particular matter, and that's a

10   question that can be addressed to this Court.

11        More particularly -- and I'd like to go into this in

12   some detail -- the Court has jurisdiction to hear and

13   consider state court matters in this court.  Since the days

14   of Erie versus Tompkins back in 1938, federal courts have

15   applied state law when required to to determine the matters

16   before them.  It's very clear that now that this case is

17   filed, this Court -- under Section 921 of the Bankruptcy Code

18   and under its jurisdiction granted by 28 U.S.C. 1334(a) and

19   (b), this Court is the only court that is authorized to

20   determine eligibility issues.  As part of the eligibility

21   issues, Section 109(c)(2) necessitates the interpretation of

22   state law, and Bankruptcy Courts have done that in virtually

23   every Chapter 9 case that has been filed.  In Jefferson

24   County they went through the Alabama statutes for authorizing

25   the case.  In the New York City Off-Track Betting Corp. in

1   New York in 2010, the Bankruptcy Court found that the
2   governor had adequate power under the state constitution to
3   issue the order authorizing the filing.  In the Suffolk
4   County Regional Off-Track Betting Corporation case, an
5   Eastern District of New York in 2011, the Court, interpreting
6   state law, found that the debtor did not comply because the
7   county resolution violated the -- Suffolk's County's
8   authority and was unconstitutional and dismissed the
9   petition.  In the Barnwell County Hospital case in the
10  District of South Carolina in 2012, they examined state law
11  to determine whether the County Hospital Board had
12  authorization to file Chapter 9, and they determined -- they
13  did the inquiry as to whether the authorization was void in
14  light of the state constitutional prohibition against dual
15  office holding, and they concluded it was not.  That case,
16  along with other cases, absolutely involved an interpretation
17  of state constitutional issues.
18       So given that the Bankruptcy Court's authority
19  includes the authority to decide state law issues when
20  required in exercising its jurisdiction under the Bankruptcy
21  Code and it is competent to do so, there is absolutely no
22  reason to disrupt the efficient resolution of this bankruptcy
23  case by having the state court cases go forward.
24       Your Honor, if you look at PA 436, Section 18.1,
25  nothing in that authorization statute mentions pensions.  It

1   simply mentions a process by which the city had to go through

2   to -- for the governor to make a determination whether we

3   were authorized to file nor, if your Honor would read it, is

4   anything in the governor's authorization letter conditioning

5   the filing on taking any action, not taking any action, or it

6   does not even mention what might happen to pensions in this

7   case, so this Court clearly has jurisdiction to determine the

8   state constitutionality issues.

9         On the other hand and respectfully, the state courts

10  have no jurisdiction to determine the issues of authorization

11  or eligibility under Section 109(c)(2) of the Bankruptcy

12  Code.  They have no jurisdiction to determine whether this

13  city had the right to file this case or, more importantly,

14  the rights that this city can exercise now that it is in

15  bankruptcy, and that, your Honor, is exactly what the

16  plaintiffs seek to do in their constitutionality challenges

17  in the three actions that are pending in state court.  This

18  is not a secondary jurisdiction matter.  This is a matter of

19  primary jurisdiction under Section 1334(a), (b), and Section

20  921 of the Bankruptcy Code for this Court.  This is the only

21  Court competent to make those determinations.

22        Mr. Gordon suggested that we don't need to decide

23  the stay issues today because the -- because we should wait

24  to determine eligibility first.  First of all, I would say

25  that there's no prejudice to pensioners in this case because

1   pensions are continuing to be paid.  There's no change to
2   that, so the delay shouldn't be a factor.  Secondly,
3   eligibility has nothing to do with the fact that the
4   automatic stay is in effect.  It arose by operation of law on
5   the day that we filed the petition on July 18th, and it is in
6   effect.  The only motions before this Court today have to do
7   with that stay that's already in effect, so there's nothing
8   improper about determining those matters today.

9         It has been suggested that Judge Aquilina's
10  declaratory judgment in the Webster case -- remember, your
11  Honor, the Webster case is the case in which the city is not
12  named.  The city is not a defendant.  It is a case only
13  against the governor and the state treasurer, so the city is
14  not a party.  The city didn't litigate any of the issues.
15  Collateral estoppel, therefore, cannot apply to the city in
16  the declaratory judgment in the Webster case.  We're not
17  bound by that.  Moreover, I would suggest to your Honor that
18  that is one trial court's view -- trial court's view -- that
19  was issued without briefing, without argument, without
20  reasoning, and in haste.  That decision is not even binding
21  on any other trial court in the State of Michigan let alone
22  any courts of higher jurisdiction, and it is certainly not
23  binding on this Court.
24        One other procedural issue that I would like to
25  point out that Mr. Gordon and none of the other objectors did

1    point out, but it is noted on the summary sheet that I
2    gave -- the demonstrative that I gave to your Honor earlier
3    today.  The pension funding case, the GRS and PFRS case that
4    Mr. Gordon's firm -- in which Mr. Gordon's firm represents
5    the plaintiffs, has been removed to federal court.  The city
6    removed it because that is the one case in which the city is
7    the defendant.  That case was removed to federal court on
8    July 21st, and so it was removed to the Western District of
9    Michigan, the United States District Court for the Western
10   District of Michigan.  State courts don't even have
11   jurisdiction over this case anymore.  And in that case the
12   city moved to transfer venue to the District Court in this
13   district so that it will eventually be moved down to your
14   Honor.

15            With respect to a concern that Ms. Ceccotti raised,
16   we are not seeking to stay the courts.  We are seeking to
17   stay the litigation by extending the stay protections to the
18   defendants without -- the effect of that -- that that would
19   have, your Honor, is to prevent the parties from acting.  We
20   are not seeking to do anything extraordinary under court's
21   jurisprudence.

22            Finally, your Honor, with respect to the arguments
23   that Mr. Bennett made on behalf of Syncora, I think there may
24   be some confusion on Syncora's part.  Neither of the motions
25   seek to assert or to extend the stay in favor of the swap

1  counterparties, which are banks that have nothing -- no
2  relationship with the city, or the service corporations
3  themselves or any other party related to those entities other
4  than a couple of city officers that serve as directors of the
5  service corporations, and they do that because they're
6  required to do that in the performance of their duties as
7  city officers pursuant to a city ordinance, which is
8  Ordinance Number 0305. We are not seeking to protect the
9  corporations themselves. We are not seeking to protect any
10  swap counterparties, so I want to make that clear. Syncora
11  offers no evidence about how it will be prejudiced,
12  particularly because, again, nothing in the motions prevents
13  Syncora from coming in and seeking to lift the stay if one is
14  imposed.
15      We also don't seek in the stay confirmation motion
16  to seek relief behind actions to enforce a claim against the
17  debtor. Paragraph 4 of the proposed order makes that very
18  clear. It simply parrots the statute, and that's in the stay
19  confirmation motion. Because the city is a party to the
20  Syncora suit, the only stay issue that would apply to that
21  would be the stay confirmation issue. We're not seeking any
22  extension with respect to that lawsuit, and, frankly,
23  counterclaims may be asserted in that case, which would be
24  stayed, and the case started, your Honor, because Syncora was
25  illegally attempting to trap some of the city's revenues, so,

1  you know, if that kind of behavior would continue, that

2  absolutely is a stay violation.

3         Let me just check my notes quickly, your Honor.  All

4  right.  I believe, your Honor, that that's all I wanted to

5  address.

6         THE COURT:  I have to ask you one additional

7  question.  How do you deal with the argument made that if

8  your motions are granted as you have requested, lawsuits

9  against the State of Michigan or to the extent the lawsuits

10  are against the State of Michigan, they would not be stayed?

11         MS. LENNOX:  The State of Michigan, your Honor, acts

12  through its officials.  The State of Michigan -- well, with

13  respect to the three lawsuits that we are talking about right

14  now -- and I can't talk in the -- you know, I'd have to know

15  the facts for the other ones, but we -- again, when we

16  tailored this relief, we tailored it narrowly to what we knew

17  was out there and what we could anticipate coming out there.

18  We believe and we reserve the rights in our reply to argue

19  that the lawsuits themselves, including the ones in which the

20  city is not a named defendant, are direct violations of the

21  automatic stay, direct violations under 362(a)(3) and (6),

22  and if that's the case, then those cases and any actions

23  taken within those cases are void ab initio.  So to the

24  extent that the named parties in there are the governor and

25  the treasurer, the state acts through those officials.  Those

1    are the officials that were sued.  That is what we're

2    addressing.  Again, we are only seeking to extend the stay to

3    lawsuits that affect this case, not to any other actions

4    against state entities.  The State of Michigan can only act

5    though its officials, and we believe that the relevant

6    officials are identified in our pleading.

7        THE COURT:  Another sort of scope question was

8    raised by Mr. Sanders.  If your motions are granted here,

9    what impact would you argue that would have or should have on

10   the lawsuit in which he represents parties who assert the

11   unconstitutionality of PA 436?

12       MS. LENNOX:  Your Honor, I don't have, as we stand

13   here, enough facts about what Mr. Sanders' lawsuit says, the

14   arguments that it makes, or the defendants in that case,

15   whether the city or any city officials are defendants in that

16   case, so I would have to reserve judgment until I knew the

17   facts about his lawsuit.

18       THE COURT:  He's also concerned, perhaps a bit more

19   hypothetically, that lawsuits, for example, to seek

20   disclosure under the Freedom of Information Act and other

21   sorts of administrative matters should not be stayed.  What's

22   your position on that?

23       MS. LENNOX:  Well, if I understood what Mr. Sanders

24   said, he said those were lawsuits against the city.  If

25   they're lawsuits against the city, they're already stayed.  I

1    don't have to extend the stay to do that. It exists. If

2    they want to seek relief from the stay with respect to their

3    lawsuits, they can certainly come before the Court and do it.

4          THE COURT: All right. Thank you.

5          MS. LENNOX: Thank you, your Honor.

6          THE COURT: All right. At this time -- oh, I want

7    to hear from you, sir. Yes. Thank you.

8          MR. CANZANO: Thank you. Just a very brief point of

9    clarification. In the -- the three orders that were entered

10    by the Court of Appeals yesterday are in three different

11    cases, 317286, which is Webster; 317285, which is Flowers;

12    and 317284, which is the General Retirement System case.

13    Each of those were emergency appeals of TRO's that were

14    issued on last Thursday, the 18th. There was another case

15    where there was a straight claim of appeal of the final

16    declaratory judgment, which is 317292. There is no order in

17    that case at all. That claim of appeal is going forward as a

18    normal claim of appeal.

19          THE COURT: Um-hmm.

20          MR. CANZANO: So -- and if you look at the three

21    orders, you can see that the Webster refers only to July

22    18th. The other two refer to July 18th and 19th actions, and

23    the declaratory judgment was issued in Webster on the 19th.

24    The transcript of the 19th reflects that the TRO in Webster

25    was vacated when the declaratory judgment was entered.

1    THE COURT:  All right.  The Court -- was there

2   something you wanted to add, sir?

3    UNIDENTIFIED SPEAKER:  Your Honor, I would just add

4   that counsel in her reply indicated that the state judge

5   issued her orders with no briefing.  They were fully briefed.

6    THE COURT:  All right.  The Court would propose to

7   take a recess at this time to consider these motions and

8   reconvene at two o'clock for a decision, so that is what

9   we'll do, and we'll be in recess for now.

10    THE CLERK:  All rise.  Court is in recess.

11    (Recess at 11:47 a.m., until 2:11 p.m.)

12    THE CLERK:  All rise.  Court is in session.  Please

13   be seated.  Recalling Case Number 13-53846, City of Detroit,

14   Michigan.

15    THE COURT:  Counsel appear to be present.  As the

16   Court explained earlier, there are two motions before it

17   today, the stay confirmation motion and the stay extension

18   motion.  As to both motions, several creditors object and

19   contend that the motions should be denied on the grounds that

20   this bankruptcy case is not properly before the Court because

21   the governor did not authorize the bankruptcy consistent with

22   state law and the state constitution.  The Court concludes

23   that this objection to both of these motions must be

24   overruled.

25    The Court concludes that the issue of eligibility

1   and each of the elements relating to eligibility are within

2   this Court's exclusive jurisdiction under 28 U.S.C., Section

3   1334(a).  Under that statute, United States District Courts

4   have original and exclusive jurisdiction of all cases under

5   Title 11, that original and exclusive jurisdiction referred

6   to the Bankruptcy Courts of each jurisdiction under 28

7   U.S.C., Section 157.  Our District Court has referred all

8   matters relating to bankruptcy jurisdiction to the Bankruptcy

9   Court under Local Rule 83.30.  This is not a proceeding

10  within 28 U.S.C., Section 1334, over which Bankruptcy Courts

11  would have concurrent jurisdiction with the state courts.

12          I was just advised that my microphone wasn't

13  working, but now it is; right?

14          THE CLERK:  Yes.

15          THE COURT:  Did we have a record of the first part

16  of that, Letrice?  I can't hear you.

17          THE CLERK:  No.

18          THE COURT:  We don't?

19          THE CLERK:  No.

20          THE COURT:  Okay.  So we'll start over.

21  Fortunately, we didn't get too far in it, and hopefully I can

22  say the same thing twice.  Okay.

23          So there are two motions before the Court, the stay

24  confirmation motion and the stay extension motion.  Certain

25  creditors object to both motions on the grounds that this

 1   bankruptcy case is not properly before the Court because the

 2   governor's authorization to file this bankruptcy case was not

 3   consistent with state law and the state constitution.  The

 4   Court concludes that this objection to both motions must be

 5   overruled.

 6        The issue of eligibility and the elements that the

 7   debtor needs to establish in order for the Court to find its

 8   eligibility are within this Court's exclusive jurisdiction

 9   under 28 U.S.C., Section 1334(a).  Under that section, the

10   District Courts have, quote, "original and exclusive

11   jurisdiction of all cases under Title 11," close quote.  The

12   District Court's jurisdiction in bankruptcy cases can, in the

13   District Court's discretion, be referred to the Bankruptcy

14   Court within its jurisdiction under 28 U.S.C., Section 157,

15   and our District Court has referred cases in its bankruptcy

16   jurisdiction to the Bankruptcy Court under Local Rule 83.30.

17        The Court further concludes that this issue of

18   eligibility would be determined in the case and not in a

19   proceeding within Section 1134(b) of Title 28 and over which

20   the state courts and the Bankruptcy Courts would have

21   concurrent jurisdiction.  The reference in Section 1334(b) to

22   a proceeding is a technical reference and refers to adversary

23   proceedings such as preference actions, fraudulent transfer

24   actions, lien avoidance actions, et cetera.  The effect of

25   Section 1334(a) of Title 28, therefore, is that all of the

1    elements of eligibility in a Chapter 9 case must be decided

2    by the Bankruptcy Court exclusively.  In this regard, the

3    Court would note that there is no case law that holds

4    otherwise.

5         It has been argued here today that perhaps this

6    exclusive grant of jurisdiction to the Bankruptcy Court to

7    determine eligibility in the context of a Chapter 9 case is

8    unconstitutional.  However, the Court finds nothing in the

9    Tenth Amendment or in the more ambiguous concept of

10   federalism to support that argument, and there is no case law

11   that holds that.  Accordingly, the Court rejects that

12   argument as well.  In this regard, the Court would note, for

13   what it's worth, that in all of the other recent Chapter 9

14   cases with which we are all familiar, it was the Bankruptcy

15   Court that determined all of the eligibility issues raised by

16   the parties there.

17        The Court concludes that the Congressional grant of

18   jurisdiction to the Bankruptcy Court to determine the issue

19   of eligibility of a municipal debtor is entirely consistent

20   with the bankruptcy clause of the Constitution and the

21   supremacy clause as well.  In this regard, the Court would

22   further note that there is nothing in the jurisdictional

23   provisions of Title 28 or elsewhere that suggests that

24   Congress intended for the state courts to have concurrent

25   jurisdiction on the issue of eligibility to file a Chapter 9

1  case, so these arguments by the creditors to both motions are
2  overruled.
3       Turning then to the stay confirmation order, it
4  appears to the Court that the only potential issue -- the
5  only other potential issue here is whether the emergency
6  manager, Kevyn Orr, is an officer within the meaning of 11
7  U.S.C., Section 922, because if he is, then the stay already
8  applies to him, and it is appropriate for the stay
9  confirmation order to say that.  If he's not an officer, then
10 stays of action against him would be appropriate, if at all,
11 only in the context of the stay extension motion.
12      The record fully establishes that Kevyn Orr is the
13 emergency financial manager of the City of Detroit pursuant
14 to Public Act 436 of 2012, Michigan Compiled Laws, Section
15 141.1541 and following.  Pursuant to Section 141.159(2),
16 quote, "Upon appointment, an emergency manager shall act for
17 and in the place and stead of the governing body and the
18 office of chief administrative officer of the local
19 government.  The emergency manager shall have broad powers in
20 the receivership to rectify the financial emergency and to
21 assure the fiscal accountability of the local government and
22 the local government's capacity to provide or cause to be
23 provided necessary governmental services essential to the
24 public health, safety, and welfare," close quote.  It goes on
25 to say, quote, "Following the appointment of an emergency

1   manager and during the pendency of the receivership, the

2   governing body and the chief administrative officer of the

3   local government shall not exercise any of the powers of

4   those offices except as may be specifically authorized in

5   writing by the emergency manager or as otherwise provided by

6   this act and are subject to any conditions required by the

7   emergency manager," close quote.

8           Therefore, according to Michigan law, the emergency

9   manager steps into the shoes of the governing body and its

10  chief administrative officer.  Accordingly, the Court readily

11  finds that the emergency manager is an officer within the

12  definition and scope of Section 922.

13          It does not appear that there are any other

14  substantive objections -- I should say any substantive

15  objections to this finding, and, accordingly, the Court

16  concludes that it is appropriate to grant the stay

17  confirmation motion and to have it state explicitly that the

18  emergency manager, Mr. Orr, is an officer covered by the

19  Section 922 stay.

20          The other motion is the stay extension motion.  This

21  motion is filed pursuant to Section 105 of the Bankruptcy

22  Code, and it seeks an extension of the stay otherwise

23  effective as to acts against the city under Section 362 and

24  as to acts against the city, its officers and inhabitants,

25  under Section 922, and it seeks the extension to the

1  governor, the treasurer, the loan board, and their agents and
2  representatives.  As to this motion, it is initially argued
3  that principles of federalism, as embodied in the Tenth
4  Amendment, require a more stringent analysis of a request for
5  a Section 105 injunction in a Chapter 9 case compared to a
6  Chapter 11 case.  Again, the Court overrules this argument
7  and finds nothing in either the Tenth Amendment or principles
8  of federalism that suggests that any different or more
9  stringent analysis should be invoked.  The Court concludes,
10  rather, that in either event, whether Chapter 9 or Chapter
11  11, the Court has the authority to extend the scope of the
12  stay when necessary and appropriate.  Section 105(a) of the
13  Bankruptcy Code provides that the Bankruptcy Court may,
14  quote, "issue any order, process, or judgment that is
15  necessary or appropriate to carry out the provisions of this
16  title," close quote, and the Sixth Circuit has held that a
17  court may utilize its equitable power under Section 105(a) to
18  extend the automatic stay to nondebtor entities in unusual
19  circumstances, Parry versus Mohawk Motors of Michigan, 236
20  F.3d 299, Sixth Circuit, 2000, and American Imaging Services,
21  Inc. versus Eagle-Picher Industries, Inc., In re. Eagle-
22  Picher Industries, Inc., 963 F.2d 855, Sixth Circuit, 1992.
23  The Court also so held in Patton versus Bearden, 8 F.3d 343,
24  Sixth Circuit, 1993.
25        The case law is ambiguous on the standard that the

1   Court should apply in evaluating a request to extend the stay
2   under Section 105.  Is it this unusual circumstances test, or
3   is it the more traditional preliminary injunction four-factor
4   test?  The Court concludes that it is unnecessary to resolve
5   that ambiguity in this case.  Rather, the Court concludes
6   that under either of those standards, it is appropriate to
7   find that the stay extension motion requested by the debtor
8   should be granted.
9           The case law applying the unusual circumstances test
10  has noted that it should be and has been rare for a court to
11  find unusual circumstances.  Some courts say that the
12  automatic stay may be extended if the unusual circumstances
13  make the interests of the debtor and the nondebtor defendant
14  inextricably interwoven.  In this case, the Court readily
15  finds that the debtor -- the interests of the debtor and the
16  interests of those potential defendants to whom the debtor
17  seeks to extend the automatic stay are so intertwined that
18  the unusual circumstances test is met.  Any attempt by really
19  anyone to litigate the issues that the creditors have raised
20  or might raise regarding this bankruptcy case or the debtor's
21  eligibility to file this bankruptcy case against other
22  nondebtor parties such as the governor or the treasurer or
23  others may well have an ability on the debtor's -- may well
24  have an impact -- excuse me -- on the debtor's ability to
25  reorganize, so the Court finds that the unusual circumstances

1  test is met.

2       The Court further concludes that, to the extent it's

3  applicable, the traditional four-factor preliminary

4  injunction test is met as well.  Traditionally those four

5  factors are the likelihood of success on the merits of the

6  plaintiff's claim, the extent to which the moving party will

7  be prejudiced if the motion is denied, the extent to which

8  the party opposing the motion will be prejudiced if the

9  motion is granted, and any public interest considerations.

10  The case law firmly establishes that these are not each

11  elements that must be met.  They are, rather, factors and

12  considerations that the Court should take into account in

13  weighing its discretion on whether to grant the requested

14  relief.

15       Addressing first, therefore, the issue of the

16  debtor's likelihood of success on the merits, in the

17  circumstances of this case, the Court finds that it would be

18  entirely inappropriate to comment on the likelihood of the

19  debtor's success on the merits of any of the substantive

20  issues relating to eligibility or plan confirmation except to

21  say that the issues raised are very serious questions and

22  that these questions should be addressed, to the extent that

23  they are raised, in the context of eligibility to file this

24  case or perhaps in the plan confirmation context.  In any

25  event, the state court proceedings that the city of court --

1  specifically seeks to stay and enjoin are proceedings which
2  could conceivably have and may well have an impact on the
3  bankruptcy case here and the administration of this case or
4  on the debtor's assets.  As the Sixth Circuit noted in <u>Eagle-</u>
5  <u>Picher</u>, it is enough for this Court to find that there are
6  serious questions going to the merits, and the Court
7  certainly so finds here.

8       The Court further noted in that case, interestingly,
9  the following, quote, "The bankruptcy court's primary
10  emphasis on the last three factors," parenthetically not
11  including the likelihood of success on the merits, "for
12  granting a preliminary injunction was not error, especially
13  when considering the source of its authority to grant such an
14  injunction emanates from section 105 whose purpose is to
15  assist the court in carrying out the provisions of the
16  Bankruptcy Code, one of which is to oversee the
17  reorganization of a debtor's business.  In addition, as we
18  stated in <u>Friendship Materials</u>, a court may, in its
19  discretion, grant a preliminary injunction even when the
20  plaintiff fails to show a strong or substantial probability
21  of ultimate success on the merits of his claim, but where he
22  at least shows serious questions going to the merits and
23  irreparable harm which decidedly outweighs any potential harm
24  to the defendant if an injunction is issued."  As noted, the
25  second question -- oh, first, before concluding the first

1    element, the Court is -- the Court would find readily that

2    this factor, therefore, weighs in favor of granting the

3    requested stay and injunction.

4         The second factor, as noted, is the extent to which

5    the city will suffer prejudice if the requested injunction is

6    denied.  The Court readily finds that the city will suffer

7    substantial prejudice if this stay is denied.  The record

8    reflects that the creditors have already obtained temporary

9    restraining orders and a declaratory judgment and that the

10   city has felt compelled to appeal those.  Clearly, addressing

11   these issues both in the state court and in this Bankruptcy

12   Court is costly, expensive, and inefficient, and really

13   causes prejudice not only to the debtor but to the other

14   parties as well.  There is also, of course, a danger of

15   potentially inconsistent results.  So, accordingly, again,

16   the Court concludes that this favor -- does weigh in favor of

17   granting the requested injunction.

18        The third factor is the harm to others, which will

19   or may occur if the requested injunction is granted.  Again,

20   the Court readily finds that the creditors who have opposed

21   this extension will not really be harmed at all if this

22   motion is granted.  There is no prejudice to the substantive

23   rights of any party if this stay is extended, as the city has

24   requested.  All of the arguments, issues, and claims that

25   they could and might seek to make they can raise in this

1  court.  None of their procedural and substantive rights to
2  make their claims and arguments in this course -- in this
3  court in the course of this case are foreclosed by granting
4  this motion.  Further, the Court will fully retain the
5  opportunity and right of any creditor to seek relief from
6  this stay on an individual case-by-case basis, which, of
7  course, if granted, will permit that creditor to litigate
8  whatever their issues are in the appropriate court.  So,
9  again, the Court concludes that this factor weighs in favor
10 of granting the requested injunction.
11         The fourth consideration is whether granting the
12 requested injunction would serve the public interest.  In
13 normal two-party litigation or even in many bankruptcy cases,
14 this is not a significant consideration, but in the context
15 of a Chapter 9 case and especially this Chapter 9 case, the
16 Court concludes that it is probably the most important factor
17 of all.  Granting this motion will, the Court readily
18 concludes, enhance the debtor's likelihood of reorganization.
19 It will also create efficiency.  It will also assist in
20 expediting this reorganization, and it will reduce the city's
21 costs as well as those of other parties.  Accordingly, the
22 Court finds that this injunction is in the public interest,
23 and for all of these reasons, the Court readily concludes in
24 its discretion that the requested extension of the stay under
25 Section 105 should be granted.

1  Now, several creditors have objected on the grounds
2  that the debtor should have filed an adversary proceeding to
3  obtain this relief.  The Court concludes that this objection,
4  too, should be overruled.  The Court is satisfied that there
5  was sufficient notice and opportunity to be heard, and the
6  Court further observes that the imposition of this stay will
7  only have the effect of requiring those parties who seek
8  relief from it to file a motion for relief from it.  And in
9  rejecting this objection, the Court notes that there is
10  substantial merit in the city's concern that it would be
11  impossible for it to file an adversary proceeding naming as
12  defendants all of the parties that might be impacted by this
13  injunction.  Indeed, it would be a procedural and
14  administrative nightmare.

15  Finally, the Court rejects the argument that Section
16  105 cannot serve as the basis for an extended stay because it
17  creates new rights.  The Court finds that this injunction
18  does not create any new rights.  It simply assists the Court
19  in making the bankruptcy process more efficient and gives the
20  Court control over all of the issues that will have to be
21  resolved through the course of the bankruptcy.  In this
22  regard, the Court would further note that no cases have
23  rejected a Section 105 stay extension on this ground.

24  Before concluding, the Court would like to review
25  and state on the record what is not being decided here today.

1  Perhaps this is just as important for the record to reflect
2  as what is being decided here today.

3          The Court is making no ruling whatsoever on whether
4  the City of Detroit is eligible to be a debtor in Chapter 9.
5  The Court is making no ruling on whether the state
6  constitution prohibited the emergency manager's appointment
7  or prohibited the emergency -- excuse me -- prohibited the
8  governor from authorizing this Chapter 9 filing without
9  excepting from it the constitutionally protected pension
10  rights of its citizens.  The Court is not ruling on whether
11  the state court orders that were entered either pre- or post-
12  bankruptcy should be given preclusive effect under principles
13  of res judicata, collateral estoppel, Rooker-Feldman, or any
14  other preclusive doctrine.  The Court is not ruling on
15  whether any orders entered by the state court after this
16  bankruptcy case was filed violated the automatic stay.  The
17  Court is not ruling on whether the City of Detroit can
18  propose a feasible or confirmable plan in light of the state
19  constitution or any other consideration, for that matter.

20          All of these issues on which the Court is not ruling
21  today are fully preserved.  Of course, when and if these
22  issues are raised in an appropriate way, the Court will rule
23  on them in due course with adequate notice and opportunity to
24  be heard, and, of course, we will address the procedure for
25  dealing with some of these issues in our status conference on

1 August 2nd.

2      The Court will, therefore, grant both of these

3 motions. The Court wants the opportunity to review the

4 proposed orders that were attached to the debtor's motions.

5 In the event the Court wants to tweak or edit any of them, I

6 would ask debtor's counsel to submit those orders in Word or

7 WordPerfect form through the Court's order processing

8 program. I know for sure that one of the things I want the

9 stay extension order to do is to be sure it explicitly

10 preserves the opportunity for parties to file motions for

11 relief from it under Section 362(d), but we'll take care of

12 that, so just submit the orders in the order processing

13 program as they were attached to the motion.

14      That's all I have. Is there anything that anyone

15 else would like to raise at this time?

16      MS. PATEK: Your Honor, on behalf of the public

17 safety unions, we did ask to broaden --

18      THE COURT: You should identify yourself for the

19 record.

20      MS. PATEK: I'm sorry. Barbara Patek on behalf of

21 the public safety unions. We did make a request for

22 affirmative relief, which was not listed among the items that

23 your Honor did not rule on with respect --

24      THE COURT: Yes. Thank you for reminding me of

25 that. In the interest of due process, the Court must

1   conclude that it is necessary for you to file a specific

2   motion requesting that relief.  If you think that expedited

3   consideration is appropriate, you can request that.

4           MS. PATEK:  Thank you, your Honor.

5           THE COURT:  Would anyone else like to raise

6   anything?  Yes, ma'am.

7           MS. LENNOX:  Thank you, your Honor.  For the record,

8   Heather Lennox of Jones Day on behalf of the City of Detroit.

9   A procedural question, your Honor, about the matters that

10  you've set for hearing on August 2nd.  There was no objection

11  deadline set for the four motions.  Would your Honor wish to

12  set one?

13          THE COURT:  I didn't set one in light of the

14  expedited consideration of them, so I'm really not inclined

15  to.  If a party wants me to consider a written objection,

16  they should get it to me in time for me to consider it.

17  There was more specifically a question about a response time

18  on the 365 assumption motion, and we got a request -- a

19  motion for clarification as to that.  I think that was

20  mentioned earlier today.

21          MS. LENNOX:  Yes.

22          THE COURT:  And I will deal with that separately in

23  a separate order that I will enter later today or tomorrow.

24          MS. LENNOX:  Thank you, your Honor.

25          THE COURT:  All right.  Anything further?  Mr.

1  Gordon.

2  MR. GORDON:  Thank you, your Honor.  For the record,

3  Robert Gordon on behalf of the Detroit pension systems.  I

4  just want one more item of clarification, if I could.

5  THE COURT:  Sir.

6  MR. GORDON:  You've referenced for the August 2

7  hearings that there's going to be a status conference, and I

8  know that there's some procedural motions that are to be

9  considered.  I believe there's also a motion seeking to

10  assume a forbearance agreement.

11  THE COURT:  That's the Syncora motion that we were

12  just talking about.

13  MR. GORDON:  I'm sorry.  I missed that.  I couldn't

14  hear her well.  Is that going to be a status conference then

15  or an actual --

16  THE COURT:  No.  I'm going to clarify that in my

17  order that I'm going to enter this afternoon.

18  MR. GORDON:  Very good.  Thank you, your Honor.

19  Sorry.

20  THE COURT:  Yeah.  Okay.  We'll be in recess.

21  THE CLERK:  All rise.  Court is adjourned.

22  (Proceedings concluded at 2:48 p.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


       I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                 July 29, 2013
_____         _____
Lois Garrett

# EXHIBIT 4

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

GRACIE WEBSTER and
VERONICA THOMAS,

      Plaintiffs,

vs

                              Case No. 13-734-CZ
                              Hon.

THE STATE OF MICHIGAN;               **CLINTON CANADY III**
RICHARD SNYDER, as Governor
of the State of Michigan; and
ANDY DILLON, as Treasurer of
the State of Michigan,

      Defendants.

JOHN R. CANZANO (P30417)
McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.
Attorneys for Plaintiffs
400 Galleria Officentre, Suite 117
Southfield, MI 48034
248-354-9650
jcanzano@michworklaw.com

A civil action between these parties or
other parties arising out of the transaction
or occurrence alleged in the Complaint has
been previously filed in this Court,
where it was given docket number 13-729-CZ
and was assigned to Judge Aquilina.
The action remains pending.

**VERIFIED COMPLAINT FOR
DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**NATURE OF ACTION**

1.    This action seeks a declaratory judgment that the "Local Financial Stability and

Choice Act," 2012 PA 436, MCL 141.1541 *et seq* ("PA 436") is unconstitutional and in violation of

Article IX Section 24 of the Michigan Constitution because PA 436 permits accrued pension benefits to be diminished or impaired by bankruptcy proceedings in direct contravention of the Constitution. This action also seeks a preliminary and/or final injunction enjoining the Governor and/or the State Treasurer from authorizing a bankruptcy proceeding permitting an unconstitutional diminishment or impairment of accrued pension benefits under PA 436.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff Gracie Webster is a retiree from the City of Detroit. She retired in 2000 and is receiving a pension benefit under the City of Detroit's General Retirement System Pension Plan. She resides in Detroit and is a citizen of the State of Michigan.

3.     Plaintiff Veronica Thomas is an employee of the City of Detroit. She has worked for the City for 17 years. She is a participant in the City of Detroit's General Retirement System Pension Plan. Although she has not yet retired, based on her years of service Plaintiff Thomas has earned the right to an accrued vested pension benefit under the terms of the pension plan.

4.     Defendant State of Michigan is a governmental entity and sovereign state of the United States, retaining all powers reserved to it under the 10th Amendment to the United States Constitution.

5.     Defendant Richard Snyder is the Governor of the State of Michigan acting in his official capacity.

6.     Defendant Andy Dillon is Treasurer of the State of Michigan acting in his official capacity.

7.     The Governor may delegate his duties under Section 9 of PA 436, MCL 141.1549 to the State Treasurer.

8.     This court has jurisdiction under MCL 600.6419(4), which provides for the jurisdiction of circuit courts in proceedings for declaratory or equitable relief against the State, and

MCL 600.605, which provides original jurisdiction in the circuit courts.

9.    Venue is proper in this court under MCL 600.1621(a), because Defendants conduct business in Ingham County.

COUNT I:  DECLARATORY JUDGMENT

**PA 436 Is Unconstitutional Because It Permits Accrued Pension Benefits To Be Diminished Or Impaired In Direct Violation Of Article IX, Section 24 Of The Michigan Constitution**

10.    Article IX Section 24 of the Michigan Constitution provides in pertinent part:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof **which shall not be diminished or impaired** thereby.

11.    PA 436 was enacted by the Michigan Legislature on December 28, 2012 and became effective March 28, 2013.

12.    Among the purposes of PA 436, as stated in its preamble, are to "prescribe remedial measures to address a financial emergency within a local unit of government;" "to prescribe the powers and duties of an emergency manager for a local unit of government;" and "to provide a process by which a local unit of government . . . may file for bankruptcy."

13.    On March 14, 2013, Defendant Snyder appointed Kevyn Orr as Emergency Financial Manager for the City of Detroit, pursuant to 1990 PA 72, MCL 141.1201 *et seq* ("PA 72"). PA 436 is a successor statute to, and expressly repeals, PA 72.

14.    Pursuant to Sec 9(10) of PA 436, MCL 141.1549(10), Kevyn Orr, as an emergency financial manager appointed under former 1990 PA 72 "and serving immediately prior to the effective date of this act, shall be considered an emergency manager under this act [PA 436] and shall continue under this act to fulfill his or her powers and duties."

15.    Chapter 9 of the U.S. Bankruptcy Code, 11 USC §§901 *et seq*, provides a process by

3

which a municipality may file for bankruptcy and become a debtor under Chapter 9 in federal bankruptcy court.

16.    However, in order to protect state sovereignty and in recognition of federalism principles under the 10th Amendment to the U.S. Constitution, Chapter 9 of the Bankruptcy Code prohibits municipalities from filing for bankruptcy unless the municipality "is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." Absent such authorization, federal bankruptcy courts have no jurisdiction under Chapter 9 over a municipality as a debtor. 11 USC §109(c)(2). See *Ashton v Cameron County Water Improvement Dist No 1*, 298 US 513; 56 S Ct 892; 80 L Ed 1309 (1936); and *United States v Bekins*, 304 US 27, 58 S Ct 811; 82 L Ed 1137 (1938).

17.    Section 18 of PA 436, MCL 141.1558, specifically authorizes a local unit of government to become a debtor in a Chapter 9 bankruptcy proceeding if the emergency manager for the local government recommends to the Governor and the State Treasurer that the local government be authorized to proceed under Chapter 9, and if the Governor approves the recommendation by informing the emergency manager and State Treasurer in writing of his decision.

18.    PA 436 nowhere requires that in considering whether to approve an emergency manager's recommendation to proceed under Chapter 9, the Governor shall not approve such recommendation if accrued pension benefits may be diminished or impaired in violation of Article IX Section 24 of the Michigan Constitution.

19.    Accordingly, because PA 436 does not prohibit a municipality from proceeding under Chapter 9 of the U.S. Bankruptcy Code if accrued pension benefits may be unconstitutionally diminished or impaired , PA 436 is unconstitutional on its face in violation of Article IX Section 24 of the Michigan Constitution.

20.     Section 11 of PA 436, MCL 141.1551, provides that "an emergency manager shall develop and may amend a written financial operating plan for the local government [and that] [t]he financial and operating plan shall provide for . . . [t]he timely deposit of required payments to the pension fund for the local government or in which the local government participates."

21.     On May 12, 2013, Emergency Manager Orr issued a financial and operating plan pursuant to Section 11 of PA 436. (Available at www.freep.com/assets/freep/pdf/C4205233512.pdf.) The plan does not schedule the "timely deposit of required payments" to the pension funds as required by Section 11 of PA 436, but instead notes that payments have been deferred to manage a liquidity crisis.

22.     On June 14, 2013, Emergency Manager Orr issued a "Proposal for Creditors" in which he presents various restructuring options. (Available at http://www.freep.com/assets/freep/pdf/C4206913614.pdf.) Nowhere in this document does Emergency Manager Orr indicate any intent to comply with Article IX Sec 24 of the Michigan Constitution. Instead, in direct contravention of the Michigan Constitution, the proposal expressly states that "*there must be significant cuts in accrued, vested pension amounts for both active and currently retired persons.*"

23.     Emergency Manager Orr has publicly threatened, in a June 14 interview with the Detroit Free Press Editorial Board, that vested pension benefits will be abrogated in a Chapter 9 proceeding authorized by the Governor pursuant to PA 436, and that any state law protecting vested pension benefits is "not going to protect" retirees or employees with vested pension benefits in bankruptcy court. (See www.freep.com/article/20130616/OPINION05/306160052/kevyn-orr-detroit-emergency-manager-creditors-fiscal-crisis.)

24.     Article IX Section 24 of the Michigan Constitution is such a state law, which Emergency Manager Orr has asserted will "not . . . protect" vested pension benefits.

25.     Under PA 436, the only way Emergency Manager Orr could impose his desired "significant cuts in accrued, vested pension amounts for both active and currently retired persons" is through a Chapter 9 bankruptcy filing.

26.     Plaintiffs are entitled to a declaratory judgment that PA 436 is unconstitutional under Article IX Section 24 of the Michigan Constitution because PA 436 does not prohibit the Governor from authorizing a Chapter 9 bankruptcy filing which threatens to unconstitutionally diminish or impair the Plaintiffs' accrued pension benefits, and a final judgment ordering that Defendant Snyder and/or Defendant Dillon not authorize a Chapter 9 filing which threatens to diminish or impair accrued pension benefits in violation of the Michigan Constitution.

27.     This case presents an actual controversy entitling Plaintiffs to a declaratory judgment because the facts stated above indicate " an adverse interest necessitating the sharpening of the issues raised." *Lansing School Education Ass'n v Lansing Bd of Educ*, 487 Mich 349, 372 n20; 792 NW2d 686 (2010), quoting *Associated Builders and Contractors v Dep't of Consumer and Indus Servs Dir*, 472 Mich 117, 126; 693 NW2d 374 (2005). Plaintiffs are entitled to a declaratory judgment here "to obtain adjudication of rights before an actual injury occurs [and] to settle a matter before it ripens into a violation of the law . . ." *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006).

28.     Plaintiff's need for a Declaratory Judgment is urgent.  Based on the above facts, a request by the Emergency Manager to proceed under Chapter 9 is imminent, because he has credibly threatened – indeed, has given every indication – that he intends to impair or diminish accrued pension benefits in contravention of Article IX Section 24 of the Michigan Constitution, and that Chapter 9 bankruptcy proceedings are the mechanism by which he can do so. Thus Plaintiffs' rights under the Michigan Constitution not to have their pension benefits "diminished or impaired" can

only be guaranteed if this Court acts *before* the Governor approves a request to proceed under Chapter 9. Moreover, Emergency Manager Orr's threats that he will unconstitutionally diminish or impair Plaintiffs' vested pension rights have themselves harmed Plaintiffs by instilling in Plaintiffs a reasonable fear that their constitutional rights will be trampled upon and, in the process, their future source of income drastically eroded.

29.     Accordingly, Plaintiffs are entitled to a speedy hearing under MCR 2.605(D) on their request for declaratory relief.

## COUNT II: PRELIMINARY INJUNCTION

30.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 29 above.

31.     Plaintiffs will suffer irreparable harm if Defendants Snyder and Dillon are not enjoined from authorizing the Emergency Manager to proceed under Chapter 9 of the U.S. Bankruptcy Code and thereby seeking to abrogate Plaintiffs' rights under the Michigan Constitution and the source of livelihood it guarantees them in a forum which the Emergency Manager contends does not protect those rights.

32.     The harm to Plaintiffs absent injunctive relief outweighs the harm to Defendants if an injunction is granted because the Governor and Treasurer will not be harmed if they are enjoined from authorizing the Emergency Manager to file under Chapter 9.

33.     Plaintiffs are likely to succeed on the merits.

34.     There will be harm to the public interest absent an injunction, as the accrued vested pension rights of thousands of City of Detroit retirees and employees will be threatened with abrogation in violation of the Michigan Constitution.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

A.      A declaratory judgment that PA 436 is unconstitutional in violation of Article IX Section 24 of the Michigan Constitution.

B.      A preliminary and/or permanent injunction enjoining Defendant Snyder and Defendant Dillon from authorizing the Detroit Emergency Manager to commence proceedings under Chapter 9 of the U.S. Bankruptcy Code.

C.      An award to Plaintiffs of their costs and expenses, including attorneys' fees, incurred in this action.

Respectfully submitted,

McKNIGHT, McCLOW, CANZANO,
SMITH & RADTKE, P.C.

By: _____
            John R. Canzano (P30417)
            Attorneys for Plaintiffs
            400 Galleria Officentre, Suite 117
            Southfield, MI 48034
            248-354-9650
            jcanzano@michworklaw.com

Date: July 3, 2013

## VERIFICATION

STATE OF MICHIGAN       )
                              )ss
COUNTY OF OAKLAND      )

John R. Canzano, being first duly sworn, deposes and states he is the attorney representing Plaintiffs herein; that he has read the foregoing verified complaint by him subscribed for and on

8

13-53846-swr   Doc 8608   Filed 12/16/14   Entered 12/16/14 15:23:20   Page 49 of 75
13-53846-swr   Doc 919-5   Filed 08/19/13   Entered 08/19/13 23:58:20   Page 9 of 50

behalf of Plaintiffs; that he knows the contents thereof to be true except as to those matters stated upon information and belief, and as to those matters, he believes them to be true, and he is authorized to sign said Verified Complaint on behalf of Plaintiffs.

John R. Canzano

Subscribed and sworn to before me this 3rd day of July 2013.

Karen Ann Purslow, Notary Public
County of Oakland, State of Michigan
My Commission Expires:     April 19, 2014

9

# EXHIBIT 5

*STATE OF MICHIGAN*
*30TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF INGHAM*
*CIVIL DIVISION*

GRACIE WEBSTER and
VERONICA THOMAS,

                    Plaintiffs,

     v                                    Case No. 13-734-CZ
                                          Hon. Rosemarie Aquilina
THE STATE OF MICHIGAN; RICHARD
SNYDER, as Governor of the State
of Michigan; and ANDY DILLON,
as Treasurer of the State of
Michigan,
                    Defendants.
_____/
ROBBIE FLOWERS, MICHAEL WELLS,
JANET WHITSON, MARY WASHINGTON,
and BRUCE GOLDMAN,

                    Plaintiffs,

     v                                    Case No. 13-729-CZ
                                          Hon. Rosemarie Aquilina
RICK SNYDER, as the Governor of the
State of Michigan; ANDY DILLON, as
the Treasurer of the State of Michigan;
and the STATE OF MICHIGAN,

                    Defendants.
_____/

*MOTION TO AMEND PRELIMINARY INJUNCTION*

*MOTION FOR DEFAULT JUDGMENT*

*MOTION FOR SUMMARY DISPOSITION*

*BEFORE THE HON. ROSEMARIE AQUILINA, CIRCUIT JUDGE*

*Ingham County, Michigan - Friday, July 19, 2013*

1

```
 1        APPEARANCES:

 2

          For Plaintiffs Webster, et al.:
 3                                   JOHN R. CANZANO (P30417)
                                     Smith & Radtke, PC
 4                                   400 Galleria Officentre, Ste. 117
                                     Southfield, MI  48034
 5
          For Plaintiffs Flowers, et al.:
 6                                   WILLIAM A. WERTHEIMER (P26275)
                                     Attorney at Law
 7                                   30515 Timberbrook Lane
                                     Bingham Farms, MI  48025
 8
          For State Defendants:
 9                                   THOMAS QUASARANO (P27982)
                                     BRIAN DEVLIN (P34685)
10                                   Assistant Attorney General
                                     State Operations Division
11                                   P.O. Box 30754
                                     Lansing, MI 48909
12

13

14
          REPORTED BY:               Melinda I. Dexter, RMR, RPR, CSR-4629
15                                   Official Court Reporter
                                     313 W. Kalamazoo
16                                   Post Office Box 40771
                                     Lansing, MI  48901-7971
17

18

19

20

21

22

23

24

25

                                                                    2
```

```
 1                 T A B L E   O F   C O N T E N T S

 2

 3

 4

 5     WITNESSES:

 6          None

 7

 8

 9

10

11     EXHIBITS:

12          None

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4:

```
 1              Ingham County, Michigan
 2          Friday, July 19, 2013 - At 11:25 a.m.
 3          THE COURT:  Okay.  All right.  Robert Flowers,
 4   Michael Wells, Janet Whitson, Mary Washington, and Bruce
 5   Goldman versus Rick Snyder, as the Governor of the State
 6   of Michigan; Andy Dillon, as the Treasurer of the State
 7   of Michigan; and the State of Michigan, Docket 13-729-CZ.
 8          Counsel, your appearance for the record.
 9          MR. WERTHEIMER:  William Wertheimer,
10   your Honor, on behalf of Plaintiffs.
11          MR. CANZANO:  Your Honor, John Canzano.  I'm
12   not counsel in that case.  I'm here on the Webster case.
13          THE COURT:  Okay.  Thank you.
14          MR. QUASARANO:  Thomas Quasarano, Assistant
15   Attorney General on behalf of the State Defendants.
16          MR. DEVLIN:  And Brian Devlin, Assistant
17   Attorney General.
18          THE COURT:  Thank you.
19          Counsel?
20          MR. WERTHEIMER:  Your Honor, Plaintiffs are
21   here today in order to request that the Court enter
22   either a corrected or amended preliminary injunction
23   order.  The Court, I'm sure, recalls the circumstances
24   yesterday.  We have had a chance to have your order
25   typed.  We reviewed it.  There were some mistakes in it.
                                                          4
```

Page 5:

```
 1   For example, the heading still said temporary restraining
 2   order from the other case where it was clear from the
 3   record and from the body, even, of the order that it was
 4   a preliminary injunction.  So we made that change.  We
 5   typed everything.  We put in the attorneys' names and the
 6   case name.
 7          We made a couple of other changes, which I have
 8   indicated to the Court off the record on another copy of
 9   the injunctive order.  And I would -- we would -- I'm
10   happy to go over each of those, if the Court needs.
11   Otherwise, I would request that the Court issue this
12   preliminary injunction.  I did not know whether the Court
13   would want to refer to it as corrected, amended, or not
14   refer to it at all.  So I left that blank.  But we would
15   ask that the Court enter the order that we presented
16   today to conform to the Court's ruling yesterday.
17          THE COURT:  Counsel?
18          MR. QUASARANO:  Yes, your Honor.  As your Honor
19   knows, we moved for a stay, and so I would ask either
20   that the stay that was denied yesterday be identified in
21   the modified order, or we can present another stay.  I
22   would assume that the Court would not grant a stay of
23   this order consistent with yesterday.  So either to
24   identify it in this modified order as a stay was
25                                                          5
```

Page 6:

```
 1   whatever the Court's preference would be.
 2          THE COURT:  Well, I'm going to sign this, and I
 3   haven't compared the two.  I think we probably should
 4   call it an amended order.
 5          MR. WERTHEIMER:  Okay.
 6          THE COURT:  But let me just say that your stay
 7   is denied.
 8          MR. QUASARANO:  Thank you, your Honor.
 9   Maybe --
10          THE COURT:  Counsel?
11          MR. QUASARANO:  Maybe doing another separate
12   order makes the most sense, and we can do that using the
13   forms provided by the Court.
14          THE COURT:  Okay.  Thank you.
15          MR. QUASARANO:  Thank you.
16          MR. WERTHEIMER:  Your Honor, one other thing
17   that may be related to that, and that is, the order the
18   Court is entering, consistent with the order the Court
19   entered yesterday, provides us with the relief that we
20   were seeking by our motion which was scheduled for
21   hearing Monday at 9 o'clock.
22          The Attorney General had also noticed a motion
23   to dismiss for Monday at 9 o'clock.  It was not timely in
24   the sense that he did not give the appropriate time
25   period for us to respond.  In the reply brief I filed
                                                          6
```

Page 7:

```
 1   yesterday, we objected to that and said that we did not
 2   agree to expedited.  There was no order expediting and
 3   suggested that the Court deny the -- their motion for
 4   that reason, but I raise it now just to indicate that
 5   that also is out there and that maybe we want -- we want
 6   another order dealing with that issue.
 7          Our position is that it's not timely and that
 8   it shouldn't be heard Monday in any event.  I don't know
 9   whether the Attorney General intends to proceed on Monday
10   on it.
11          MR. QUASARANO:  Your Honor, we do understand
12   that under MCR 2.119, the motion for summary disposition
13   is a 21-day period.  We sought stipulation of counsel.
14   They were kind enough to look at the briefs first to
15   decide whether they would stipulate.  They chose not to.
16          We also sought the endorsement on our notice of
17   hearing from the Court to allow the hearing on Monday.
18   Yesterday at bench we discussed if we needed to -- we
19   needed to set a hearing date on the dispositive motions.
20   The Court is at liberty to have those heard today or on
21   Monday or at such other time.  Our notice of hearing did
22   say "or at such other time as the Court may order" on the
23   notice of hearing itself.  Thanks.
24          MR. CANZANO:  Your Honor, if I could make a
                                                          7
```

**8**

1　　　THE COURT: Yes, sir.

2　　　MR. CANZANO: We've -- we've presented a motion

3　this morning, an emergency motion, to advance the hearing

4　on our motion for declaratory judgment that's set for

5　Monday to today. It would be my intention to deal only

6　with the declaratory judgment part of it today, not the

7　injunction part of it. And they've already -- they've

8　agreed that that can be expedited. I don't know that

9　they've agreed that it can be expedited to today, but

10　they agree that it could be expedited to Monday.

11　　　So if -- that part of it, either today or

12　Monday, that would be a final declaratory judgment. My

13　preference is to do it today.

14　　　THE COURT: Is that correct?

15　　　MR. QUASARANO: Well, I believe under 2.605(D),

16　they can seek an expedited hearing, and certainly the

17　Court has the authority to issue that. I think by not

18　entertaining a dispositive motion, we're not going to

19　have a complete argument. Mr. Devlin will be arguing for

20　the State. But we do acknowledge what the court rule

21　says, that's correct.

22　　　THE COURT: Well, are you objecting to having

23　it heard today?

24　　　MR. QUASARANO: We will not object in the

25　interest of judicial economy.

**9**

1　　　THE COURT: And your motion deals with that

2　issue?

3　　　MR. QUASARANO: It's a (C)(8) motion that would

4　address whether there are grounds for a declaratory

5　judgment, yes.

6　　　THE COURT: Well, then --

7　　　I'm sorry?

8　　　MR. WERTHEIMER: I'm sorry. I may be confused

9　now. Their motion that they filed in the Flowers case to

10　dismiss deals with issues like ripeness. It's a (C)(4)

11　and (C)(8) motion. Many of the facts have changed. I

12　would think they would want to refile that, in any event.

13　I mean, you know, to make an argument based on -- based

14　on ripeness given what happened yesterday afternoon seems

15　to me to be just, to use a lawyer's word, moot at this

16　point. But I'm concerned only with their motion to

17　dismiss in the Flowers case, not with anything related to

18　Webster and whether we're to appear here Monday at 9 to

19　-- per their notice or whether they've withdrawn that

20　motion or not.

21　　　THE COURT: Okay. Well, let's deal with the

22　Flowers case.

23　　　What is your intention in regard to Monday?

24　Are you still asking the Court to hear your motion? It

**10**

1　that, or will you be amending that?

2　　　MR. QUASARANO: No. I'll speak for Mr. Devlin

3　here for a moment only. In the notice of hearing, we

4　indicated to advance it to that date because of all the

5　other activities in this case or such other time as the

6　Court may order.

7　　　I do point out that in the Flowers case in the

8　prayer for relief is a reference to declaratory judgment.

9　Both cases are asking for both reliefs; preliminary and

10　declaratory judgment. Preliminary injunction motions

11　were granted. Our brief talks about the alternative,

12　assuming arguendo there were a filing, a Chapter 9

13　filing, and then we go into the basis for why there are

14　grounds not to declare judgment, why there is some

15　jurisdictional grounds.

16　　　So I think that the brief is sufficiently

17　adequate to address all of the issues that are still at

18　issue in this case. Certainly there has been a factual

19　change and those factual changes don't need to be

20　addressed.

21　　　MR. WERTHEIMER: I guess I just would reiterate

22　if -- I need to know whether counsel is going forward on

23　Monday with its motion to dismiss. I still haven't heard

24　a yes or no.

25　　　THE COURT: His answer is yes, Counsel.

**11**

1　　　MR. WERTHEIMER: Well, okay. If the answer is

2　yes, I would just point out that it's clear under the

3　rules that it is not timely; that no order has entered

4　from this Court.

5　　　THE COURT: You're right.

6　　　MR. WERTHEIMER: Okay.

7　　　THE COURT: You know what we're doing? We are

8　under siege here. Well, we aren't; I'm not. Technically

9　I am through paper, but all of you are. Detroit is. The

10　State is. So I'm not going to go through the usual court

11　rules and the time and all of that. You are all going to

12　spend your weekend doing what lawyers do, and that's a

13　lot of homework because we're going to have that hearing

14　Monday unless you're asking me to do it now.

15　　　I'm going to hear everything because we're not

16　going to piecemeal this. You all know the case. I know

17　the case. I've done the homework. I don't think myself

18　or my staff got any sleep last night. We've been doing

19　research. I bet if I called all of your wives and asked

20　if you got any sleep, they'd be saying, "No. When is my

21　husband going to get some sleep," right? So we're going

22　to have a hearing, and I don't care if it's today or

23　Monday. I'll come here Saturday, if you would like. I

24　don't care. Let's get some answers, let's get a bottom

**Page 12**

1   because that's where you all are headed.  I don't care
2   what side you're on.  Someone is going up, right?  So I
3   have answers for you.  Tell me your story.  I've got the
4   solution.  You might not like it.
5        Can we move on?
6        MR. QUASARANO:  We're prepared to go today, or
7   we'll defer to brother counsel for Monday if more time is
8   needed.
9        MR. WERTHEIMER:  I'll go today.  We can go
10  right now, I mean.
11       THE COURT:  Okay.  I can go right now too.
12       How about you, sir?
13       MR. CANZANO:  I think we already agreed that
14  Webster could go today.
15       MR. DEVLIN:  Very well.
16       THE COURT:  We have an agreement.  I think that
17  might be the only thing you all agree on.  Hallelujah.
18       MR. QUASARANO:  Other than it's very hot
19  outside.
20       THE COURT:  Yeah.  We can agree on that too.
21  Okay.
22       Counsel?  Well, let's let these gentlemen enter
23  so we don't make noise for the court reporter before we
24  proceed.
25       Anybody else need to make an appearance?

12

**Page 13**

1        THE COURTROOM:  (No verbal response.)
2        THE COURT:  No?  Okay.
3        MR. CANZANO:  Which case would you like to go
4   first; Webster or Flowers?
5        THE COURT:  Mr. --
6        MR. WERTHEIMER:  Well, he goes first on Flowers
7   because it's his motion, so it's not my --
8        THE COURT:  Okay.  Whatever you'd like.
9        MR. DEVLIN:  Thank you, your Honor.  My name
10  is Brian Devlin, Assistant Attorney General.
11       THE COURT REPORTER:  Could you approach the
12  podium, please?
13       THE COURT:  Yeah.  If everybody would speak
14  from the podium.  The mikes work better.  The court
15  reporter has better access to hear you.  We'll make a
16  better record, and obviously the Court of Appeals and the
17  Supreme Court will need your record, please.
18       MR. DEVLIN:  Thank you, your Honor.  Brian
19  Devlin appearing on behalf of the Defendants.
20       As Mr. Quasarano has mentioned, that obviously
21  there's been a very dramatic change in circumstances
22  since the brief was filed.  The petition in bankruptcy
23  has been filed as of yesterday.  It changes some aspects
24  of this case from the State's perspective, but not all.
25

13

**Page 14**

1   Flowers will apply to Webster as well.  The fact that
2   this case is now before the bankruptcy court means that
3   there is a court of competent jurisdiction that can hear
4   many of the concerns of the Plaintiffs.  And that fact
5   alone changes a lot of the ripeness arguments and things
6   that you will see.
7        Nonetheless, it is the position of the State
8   that there has not been harm at this point to the
9   Plaintiffs.
10       THE COURT:  Sir, there hasn't been harm because
11  they haven't acted.  What we have here, and I would like
12  you to get to the point, because -- and you can make your
13  record.  I'm a very patient judge.  I think most people
14  will agree with that.  But I have two very serious
15  concerns because there was this rush to bankruptcy court
16  that didn't have to occur and should not have occurred.
17  And certainly Plaintiffs should not have been blind-
18  sided, and this Court and this process should not have
19  been ignored.
20       We have the Michigan Constitution Article IX, §
21  24 that forbids the Emergency Manager to file bankruptcy
22  if pension plans or retirement system of this State or
23  its political subdivisions are diminished or impaired.
24  And the Constitution states:
25       The accrued financial benefits of

14

**Page 15**

1             each pension plan and requirement
2             system of the state and its
3             political subdivisions shall be a
4             contractual obligation thereof
5             which shall not be diminished or
6             impaired.
7        And the bankruptcy court will be doing exactly
8   that in its reorganization because the pensions are an
9   unsecured asset.  And under the bankruptcy
10  reorganization, under a reorganization Chapter 9, there
11  is no reaffirmation of debt.  If I were doing a Chapter 7
12  and wanted to go in and reaffirm payments on my car, I
13  could do so.  But there is no way that you can go into
14  bankruptcy court and say, "I am going to reaffirm the
15  pension so that we don't disrupt that."
16       So what we're doing here is violating the
17  Constitution.  And then we have Michigan Complied Law
18  141.1552, which precludes the Emergency Manager from
19  taking such actions.  It states specifically in m -- (m)
20  and (ii):
21             The emergency manager shall fully
22             comply with the public employee
23             retirement system investment
24             act --
25

15

1 -- 1965 PA 314, and § 24 of
2 Article IX of the State
3 Constitution of 1963, and any
4 actions taken shall be consistent
5 with the pension fund's qualified
6 plan status under the federal
7 internal revenue code.
8 So tell me, sir, how do you get into bankruptcy
9 court and not violate the Constitution of Michigan and
10 not violate how the Emergency Manager is supposed to
11 operate? Haven't we jumped the gun? What are you doing
12 here, sir?
13 MR. DEVLIN: I can understand your Honor's
14 concerns. The position of the State is that none of
15 these impairments have occurred yet.
16 THE COURT: Only because the bankruptcy trustee
17 hasn't got his teeth into it. It will occur. It's
18 imminent, isn't it? Tell me how it's not imminent, sir?
19 MR. DEVLIN: I can't predict the future.
20 THE COURT: Yes, you can.
21 MR. DEVLIN: I cannot.
22 THE COURT: The bankruptcy court -- the
23 bankruptcy court has a certain function. You're a
24 lawyer. You understand the function of the bankruptcy
25 court. That's why you ran there yesterday not slowly but

1 that they have the power to address under 943, is just
2 that; it's just speculation.
3 THE COURT: It's a certainty, sir. You filed
4 in bankruptcy court, which is federal because you know
5 that certainty. I don't know how you get around it
6 because it's an unsecured asset that cannot be
7 reaffirmed, and there is no case law, and you know that
8 as well because all of us stayed up all night looking for
9 case law, and there is no case law. You can't tell me
10 that it can be segregated out and reaffirmed.
11 So these people that have this pension where it
12 is supposed to be protected under the Constitution and
13 under the legislative intent under the emergency manager
14 legislation, it cannot survive. It cannot survive
15 federal bankruptcy, and I have no jurisdiction there, and
16 you know that. And that's why everybody made us wait as
17 -- slowly we were waiting for your office to come here
18 out of courtesy. We waited so we would have both sides
19 present, which is what we do. We honor civility, and it
20 was filed in order to bind everybody so this could occur,
21 and it's cheating, sir, and it's cheating good people who
22 worked.
23 And so what's going to happen is we're not
24 honoring the Constitution, we're not honoring the
25 emergency manager legislation, and we're not honoring

1 in your running shoes, right?
2 MR. DEVLIN: I can't speak to that. I had
3 nothing to do with it. But I can tell you about § 943 of
4 the Bankruptcy Code, which affords all of the protections
5 that we discussed in the brief that I've alluded to
6 today.
7 None of those injuries have occurred at this
8 point. For that reason, we believe the claim is still
9 speculative. Of course those are legitimate concerns,
10 but the court, the bankruptcy court can address them.
11 I referred to -- I'd also refer to *Straus*, the
12 case cited in our brief too. If that injury has not
13 occurred, as we contend, then it's an inappropriate
14 remedy that the Plaintiffs are asking for today.
15 Now, obviously you and I don't see this injury
16 in quite the same terms, but that is the position of the
17 State. The injury has not occurred at this point.
18 THE COURT: That would be because the
19 bankruptcy judge has not sat at his bench like I have and
20 heard the case and started the reorganization, and that's
21 the only reason. For me to believe what you're saying
22 would be -- would make me Helen Keller who's not yet
23 learned the alphabet.
24 MR. DEVLIN: I think anything that you and I
25 [illegible]

1 good citizens, and we're also not honoring the President
2 who took Detroit out of bankruptcy. What are we doing,
3 sir?
4 MR. DEVLIN: Your Honor, I understand what
5 you're saying, but I would take exception to the motion
6 that somehow the Attorney General's Office delayed or
7 dragged its feet or in any way tampered with the
8 proceedings yesterday. Now, I wasn't here. I wasn't
9 part of them, but I don't believe that's the case.
10 THE COURT: It looks that way, sir. If somehow
11 that's not the case, I apologize, but it's the old saying
12 if it looks like a duck, you know the rest.
13 MR. DEVLIN: Well, I don't want to speculate on
14 who did what yesterday. As I said, I wasn't here.
15 THE COURT: Thank you.
16 MR. DEVLIN: But it is our position that until
17 that injury occurs and in light of *Straus*, in light of
18 the jurisdiction of the bankruptcy court, that this
19 motion should be -- er, the motion is inappropriate. The
20 State's motion should be granted --
21 THE COURT: Sir --
22 MR. DEVLIN: -- thank you.
23 THE COURT: Let me ask you this: If the injury
24 occurs, isn't it then too late, much too late, way too

1  injury. The leg has been amputated, and we cannot fix
2  it.
3  MR. DEVLIN: We don't know, is my position on
4  that. We don't know, and there is opportunity for this
5  very issue to be heard in the bankruptcy court.
6  THE COURT: But there is no opportunity in the
7  bankruptcy court for them to fix the harm. Do you have
8  any law that says the bankruptcy court can fix the
9  pension fund because I haven't found that either, and
10 I've looked?
11 MR. DEVLIN: Again, I understand the pension
12 fund to be tremendously under funded. There are many
13 problems here, far beyond what's gone on in the last
14 24 hours. But the court, the bankruptcy court does have
15 jurisdiction to hear these arguments, to note the
16 Michigan Constitutional provisions, and to order what it
17 feels it must order.
18 THE COURT: Okay.
19 MR. DEVLIN: Thank you.
20 THE COURT: Thank you.
21 MR. WERTHEIMER: Your Honor, I'll be brief.
22 First, I would just point out to the Court that this is a
23 motion under C -- MCR 2.116(C)(4), (5), and (8): That
24 is, it's a claim that there is no jurisdiction over the
25 subject matter; it's a claim that my clients have no

20

1  capacity to sue because apparently they're not being
2  injured; and it's a claim that we have failed to state a
3  claim.
4  As to the law relating to those three points, I
5  would rely upon the briefs that I have filed, including
6  the reply brief that I filed yesterday in which I did
7  take the position that we should not hear -- that the
8  Court should not hear the motion to dismiss but in which
9  I dealt with all of those issues, and I won't repeat
10 those arguments.
11 I would just point out a couple of things:
12 First of all, counsel says that he cannot predict the
13 future. The Detroit Emergency Manager, who is a
14 competent lawyer familiar with bankruptcy, has predicted
15 the future, and we quoted him in our complaint as saying,
16 essentially, that once he gets into bankruptcy, the
17 constitutional rights of our clients will disappear, will
18 be "trumped" in his words or in the words of the reporter
19 quoting him. And I think that was -- there was an
20 interview and there was also his statements made to the
21 Detroit Free Press Editorial Board.
22 But the point being that the Detroit Emergency
23 Manager has had no reluctance to predict the future, and
24 his prediction is consistent with our claim and with the

21

1  just simply is not credible for an attorney for the
2  Governor and the State Treasurer to come here today and
3  say he can't predict the future when we indicated in our
4  complaint that the future could be predicted.
5  I would also point out that since we were in
6  court yesterday, we now have not just the bankruptcy but
7  filings related to that bankruptcy. I'm not going to
8  introduce these documents, but I understand that counsel
9  in the Webster case that will be argued when we're done
10 here will be introducing them. I would simply point out
11 that we've got correspondence back and forth between the
12 Detroit Emergency Manager and the Governor requesting the
13 authorization and the Governor approving the
14 authorization, in which there is not a word mentioned
15 about Article IX, § 24 of the Michigan State
16 Constitution.
17 Our Governor does not feel that that's
18 relevant. He goes on for pages in his authorization,
19 obviously for public relation's purposes, talking about
20 how deeply he cares about the city of Detroit, etcetera,
21 etcetera, but not one word about Article IX, § 24 of the
22 Constitution. And, of course, no such word from Mr. Orr
23 in his request to the Governor.
24 So counsel's essentially saying "No harm yet.
25 Don't worry. Maybe bankruptcy court will take care of

22

1  it." But the people who are taking it into bankruptcy,
2  have taken it into bankruptcy have made very clear
3  they're not going to take care of it in bankruptcy.
4  And finally just the obvious point, but I think
5  needs to be reiterated with all the flurry going on that
6  the whole point of injunctive relief is to prevent a harm
7  that has not yet occurred, and that's all we're seeking
8  with our overall lawsuit and all we were seeking with our
9  motion for preliminary injunction, which this Court has
10 already granted. Thank you.
11 MR. QUASARANO: Your Honor, I think that the
12 State's briefing and argument sufficiently presents the
13 State's position, but I know the Court is patient, and I
14 would ask the Court's indulgence on the one matter of my
15 appearance here yesterday, and I would like to make this
16 clear for the record, if I may, but for Mr. Wertheimer,
17 who is counsel for the Flowers and others case, I would
18 not have known that the General Retirement System of the
19 City of Detroit, et al., even had a TRO motion scheduled.
20 The only communication I had with counsel for
21 that, those Plaintiffs, was the night before asking if we
22 could accept service on the Governor, which, as the Court
23 knows, we're barred from accepting service on behalf of a
24 State Defendant. Until the State Defendant is served, we

23

13-53846-tjt   Doc 8306   Filed 08/06/43   Entered 08/06/43 23:53:20   Page 60 of 75

**Page 24**

```
 1        I was told there would not be any preliminary
 2  injunction or TRO sought in that case.  I do understand
 3  that situation had changed in the hours after that.  But,
 4  but for Mr. Wertheimer calling me, counsel in another
 5  case, I would not have known.  When he called me, and the
 6  transcript yesterday says it was around 3:30 or so, and
 7  then I arrived as quickly as I could walk over here.  So
 8  there was no delay on behalf of the Attorney General's
 9  Office to be here, to represent the State's interest, to
10  be here to answer this Court's questions.  And any delay
11  at all was because we were notified by counsel for the
12  Plaintiffs yesterday that they intended to bring the
13  motion.  Thank you for letting me clarify that.
14        THE COURT:  Thank you.
15        Anything further, sir?
16        MR. DEVLIN:  Nothing further.  Thank you.
17        THE COURT:  Defendants have filed a motion for
18  summary disposition pursuant to (4), which is:
19            The Court lacks jurisdiction of
20            the subject matter.
21        This Court absolutely has jurisdiction of the
22  subject matter.  It's a state question.  I know they've
23  removed it to federal bankruptcy court, but we still have
24  very serious state questions.  We have the State
25  Constitution, Article IX, § 24.  We have an emergency
```

**Page 26**

```
 1        The opposing party has failed to
 2        state a claim on which relief can
 3        be granted.
 4        I see problems all over the place.  I stated
 5  them.  I don't think I need to be redundant.  Clearly
 6  there are numerous claims and issues.  I won't be
 7  redundant.  The relief requested is denied.  Motion for
 8  summary disposition is denied.
 9        MR. WERTHEIMER:  Thank you, your Honor.
10        THE COURT:  Who's preparing the order?
11        MR. QUASARANO:  I'll be preparing it for you,
12  Judge.
13        THE COURT:  Thank you, very much, sir.
14        MR. QUASARANO:  Thank you.
15        THE COURT:  Next matter?
16        MR. WERTHEIMER:  We are -- I am done relative
17  to the Flowers case.
18        THE COURT:  Thank you, very much, sir.
19        MR. WERTHEIMER:  I'll vacate.  I think there
20  are others lawyers in the room with another related case.
21  So I'll wait in the courtroom but vacate counsel table.
22        THE COURT:  Thank you.
23        MR. WERTHEIMER:  Thank you.
24        MR. CANZANO:  Your Honor, John Canzano on
25  behalf of the Plaintiffs in the Webster case.  I would
```

**Page 25**

```
 1  manager statute, and we have a Constitution at issue.
 2  State issues are within the purview of this Court.  I
 3  don't care that it was removed to bankruptcy court.
 4  There is nothing here that tells me it was properly
 5  removed to federal bankruptcy court because there is a
 6  procedure in place of how it gets removed.  And this
 7  Court does not believe it was properly placed in the
 8  hands of the bankruptcy court because it is going to
 9  affect pensions.  Once it affects pensions, which is
10  clearly what it's going to do, it's in violation, and the
11  Governor can't give permission for it to go to bankruptcy
12  court.  It's very clear.  I think a first-year law
13  student understands the concept.  And I know the Governor
14  is not a lawyer, but he has very well paid lawyers who do
15  understand the concept.
16            The party asserting the claim
17            lacks the legal capacity to sue.
18        That is MCR 2.116(5).  A party asserting the
19  claim lacks the legal capacity to sue?  How is that
20  possible?  They're interested parties.  Absolutely they
21  have capacity to sue.  The pension's involved, the
22  pension related to the parties.  I don't see any problems
23  there.
24        And then we have (8), which is always a
```

**Page 27**

```
 1  like to clarify the relief that we are seeking here
 2  today.  We -- our complaint sought declaratory judgment
 3  and preliminary injunction.  Today we are seeking only a
 4  declaratory judgment.
 5        I have taken the liberty of preparing an order
 6  for declaratory judgment which I can present when I'm
 7  done, and the Court may or may not want to say everything
 8  that I've said in there, but I think we are entitled to
 9  that relief.  The briefs -- this has all been briefed
10  already.  I don't need to go over that.
11        The State's defense to our motion did not
12  contest the facts and did not contest the substance of
13  the merits of the law, which is that the Constitution
14  prohibits diminishment of pension -- accrued pension
15  benefits.  They simply -- they simply said the case is
16  not ripe, and there is not an actual controversy for a
17  declaratory judgment.
18        Now, after yesterday, it's obviously ripe.  We
19  cited a case in our reply brief, *City of Lake Angelus*,
20  which amazingly is almost on all fours with this case.  I
21  won't describe that case again except to say that that
22  was a case where the Attorney General made the argument
23  that there was no injury and there was no need for
24  declaratory judgment because a request to a tribunal had
```

court correctly ruled that the -- there is an actual
controversy because the parties need the court to tell
them what their rights and obligations are so they know
what to do in the future; whether this tribunal could
overrule a local ordinance which prohibited sea planes on
Lake Angelus, even though they hadn't been asked and they
hadn't ruled. So that part is exactly what we have. Now
we have the bankruptcy has been filed.

I would like to offer a couple exhibits, which
are the July 16th letter from Emergency Manager Orr
requesting authorization to file for Chapter 9, which
amazingly this happened on Tuesday, and none of our --
none of our crack reporters knew about this. Nobody knew
about this until yesterday. This was a secret letter.

And the July 18th letter from yesterday of the
Governor authorizing Emergency Manager Orr to file for
Chapter 9. And I think if you look at these two letters,
it is crystal clear what the judge has already concluded
in the prior case; that not only does the bankruptcy
threaten to impair but that that is the goal and the
intent of the emergency manager is to impair accrued
pension benefits in bankruptcy.

I'll give these to opposing counsel. These are
-- they're a matter of public record now. I just wrote
Exhibit A and Exhibit B on them.

28

(Approaching the bench.)

THE COURT: All right. Thank you.

MR. CANZANO: As to the merits, I think again
it is very clear this isn't a case where you need case
law. You just read the Constitution. It says accrued
pension benefits shall not be diminished or impaired.
The Constitution says that. The Emergency Manager law
says the Governor can authorize the Emergency Manager to
file for Chapter 9. And it doesn't prohibit that -- it
doesn't require that pension benefits be protected when
he files for Chapter 9. And it is, therefore,
unconstitutional to that extent.

THE COURT: Is there any objection to the Court
receiving Exhibit A and B?

MR. DEVLIN: No objection, your Honor.

THE COURT: A and B are received. Thank you.

(At 12:04 p.m., Exhibit A and
Exhibit B is received.)

MR. CANZANO: So the emergency manager law is
unconstitutional to the extent that it allows the
Governor to authorize a Chapter 9 filing which threatens
to diminish or impair pension benefits. And the Governor
is prohibited by Article IX, § 24 from authorizing an
emergency manager to proceed under Chapter 9 in a manner

29

such action by the Governor is without authority and in
violation of Article IX, § 24. And what happened
yesterday was a violation of the Constitution.

Now, my declaratory judgment order declares
these statements. It also has a paragraph at the end
that says:

    In order to rectify his
    unauthorized and unconstitutional
    actions described above, the
    Governor must: One, direct the
    Emergency Manager to immediately
    withdraw the Chapter 9 petition
    filed on July 18th. And, two,
    not authorize any further Chapter
    9 filing which threatens to
    diminish or impair accrued
    pension benefits.

Now, this is just a declaratory judgment. So
it is my hope that if the Court is willing to enter this,
that the Governor will obey his oath of office and follow
what the Constitution requires. And so -- and if he does
not, then we may be back here on -- with another
iteration of this that requires some type of injunctive
relief.

At this time we're not seeking injunctive

30

relief, so I would -- I would withdraw our request for
preliminary injunction without prejudice. And I'd also
ask, if this order is entered, that the temporary
restraining order entered yesterday be vacated or
expired, and all we want is a declaratory judgment right
now.

THE COURT: And the reason to vacate or expire
the temporary restraining order?

MR. CANZANO: Because now we have the default
judgment and the TRO. I don't remember what the court
rule says, but it cannot only exist for a short period of
time on its own, and this is the fact that we would like
to take because we would like to tell the Governor, "This
is what you're supposed to do." And then if he doesn't
do that, then we'll then -- we'll reassess our options.

THE COURT: Okay. Thank you.

MR. CANZANO: May I present my draft order?

THE COURT: Yes. Have you presented it to the
other side?

MR. CANZANO: I have not.

THE COURT: Thank you.

MR. QUASARANO: We've looked at this,
your Honor.

MR. CANZANO: Just as to the matter of the

31

13-53846-tjt   Doc 8106   Filed 06/06/43   Entered 06/06/43 23:63:30   Page 62 of 75

```
 1   anyone is arguing -- I don't think the Attorney General
 2   is arguing that our case is stayed by the bankruptcy
 3   court because we're not suing the Emergency Manager.
 4   We're only suing the Governor and the Treasurer and the
 5   State of Michigan, and they're not -- they're not in the
 6   bankruptcy court.  They're not the debtor, so that's an
 7   argument that has been raised.  But, just for clarity, I
 8   wanted to point that out.  That's all I have.
 9            THE COURT:  Thank you.
10            Response?
11            MR. DEVLIN:  Thank you, your Honor.  Brian
12   Devlin again on behalf of the Defendants.  I won't repeat
13   the discussion we had on the Flowers case.  Much of that
14   applies.  The relief sought in each of these cases is the
15   same position of the State, is that the bankruptcy court
16   jurisdiction has a great effect on this, and that the
17   reliefs that might be desired by the Plaintiffs are
18   available through that court.  Furthermore, we'd cite the
19   Straus case as well in this reply.
20            I would like to call the Court's attention to
21   just one other thing:  There was reference made to the
22   Governor's obligation to uphold the terms of the United
23   States -- of the State Constitution but that also applies
24   to the United States Constitution, and bankruptcy court
25   is certainly someone he may have to answer to as well.
                                                        32
```

```
 1   So that should not be lost sight of.
 2            Finally, I wanted to point out that we do have
 3   a motion for summary disposition pending in this case as
 4   well.  And I would rely on the arguments in the brief.
 5   And the ones I've just restated as well to ask that that
 6   relief be granted.  Thank you.
 7            THE COURT:  Are you asking that that be heard
 8   now, or would you like me to make a ruling on that now?
 9            MR. DEVLIN:  I think you could probably make a
10   ruling on it without further argument.
11            THE COURT:  I think so too.
12            MR. DEVLIN:  All right.
13            THE COURT:  Okay.
14            MR. DEVLIN:  Thank you.
15            THE COURT:  Anything further?
16            MR. CANZANO:  Nothing further, your Honor.
17            THE COURT:  All right.
18            As to the motion for summary disposition in
19   regard to Defendants' motion is denied.  I'm going to
20   incorporate the transcript, the arguments of the Flowers
21   matter into this file.  I think that in order to have a
22   complete argument, we're going to consolidate the
23   arguments and the files for the purpose of today because
24   they are really united.  They are part and parcel of the
                                                        33
```

```
 1   transcript without looking at both.
 2            So I'm going to direct the court reporter to
 3   treat today as one transcript despite there being two
 4   docket numbers, and I didn't even call both of them, but
 5   we just sort of started, but we're really dealing with
 6   Dockets 13-734-CZ and 13-729-CZ.
 7            So the motion for summary disposition in regard
 8   to 13-734-CZ, and that's Defendants' motion for summary
 9   disposition is denied based on the same rationale the
10   Court had and reasoning in the prior case.
11            In regard to the request for declaratory
12   judgment, I think it is imperative that the Court sign
13   this.  It's absolutely needed.  And the Governor, I have
14   to believe, took his oath in all sincerity to uphold the
15   United States Constitution and the State of Michigan
16   Constitution.  I hope he rereads certain sections and
17   reconsiders his actions.
18            I am finding the actions that have been taken
19   in regard to filing this action in the bankruptcy court
20   as overreaching and unconstitutional as it applies to
21   what the Detroit Emergency Manager Kevyn Orr has done in
22   conjunction with the Governor.
23            So I find it absolutely necessary to sign this
24   order of declaratory judgment.  I am also going to order,
25   in addition to what you have crafted here, that a copy of
                                                        34
```

```
 1   this order be forwarded to President Obama.  I know that
 2   he's watching this, and he's bailed out Detroit.  If this
 3   is going to ultimately proceed to bankruptcy without
 4   anyone paying attention to Michigan's Constitution and to
 5   what the legislature drafted and to what the Governor
 6   himself signed into law, then there will ultimately be a
 7   request that Obama will have to look at the pension, so
 8   he might as well follow this.  He said in the news that
 9   he's following this.  He might as well see what we've all
10   done here.  It's that important to the State of Michigan
11   and to the thousands of people who will be affected, and
12   ultimately all of the taxpayers of the state of Michigan
13   are going to be affected because we will all have to pick
14   up the tab if this is not honored as it should be.
15            Additionally, I am asked that the temporary
16   restraining order be quashed and nullified, so that is
17   now withdrawn, and it expires today at 12:15.  And the
18   order of declaratory judgment is being signed as that
19   expires.
20            Is there anything else for the record?
21            MR. WERTHEIMER:  Not for the Plaintiffs in
22   Flowers, your Honor.
23            MR. QUASARANO:  I'm obliged, your Honor, to
24   move for a stay of enforcement of the order of
                                                        35
```

```
 1          THE COURT:  You are obliged.  I am obliged as
 2   well to deny.
 3          MR. QUASARANO:  I'll have an order ready.
 4   Thank you, Judge.
 5          THE COURT:  I look forward to signing all of
 6   those orders today.  I will be in until 5 or so.  And I
 7   haven't looked at Monday's docket.  Have we taken care of
 8   all of Monday or not?
 9          MR. WERTHEIMER:  I think, as to the Plaintiffs
10   in Flowers, you have because our motion was for
11   preliminary injunction, which you have granted and will
12   be providing us with that order, and their motion was for
13   summary disposition, which you've denied.  I believe that
14   was all that was up in Flowers.  So that the Flowers case
15   continues, but there is nothing up for Monday in Flowers.
16          MR. QUASARANO:  Defendants concur in Flowers.
17          THE COURT:  Okay.  My law clerk is making
18   copies, multiple copies, of the order I've just signed.
19          I am here on a moment's notice as you all have
20   become accustomed to if you need me.
21          MR. WERTHEIMER:  Thank you, your Honor.
22          THE COURT:  That's all for the record.
23          MR. CANZANO:  Thank you, your Honor.
24   Appreciate the Court's ability and willingness to help us
25   out on this urgent time.
```

```
 1          THE COURT:  Thank you.
 2               (At 12:16 p.m., the matter is
 3               concluded.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1      STATE OF MICHIGAN)
                         ) SS.
 2       COUNTY OF INGHAM)

 3

 4                    CERTIFICATE OF REPORTER

 5

 6            I, Melinda I. Dexter, Certified Shorthand

 7      Reporter, do hereby certify that the foregoing

 8      37 pages comprise an accurate, true, and complete

 9      transcript of the proceedings and testimony taken in the

10      case of Gracie Webster, et al. versus Richard Snyder, et

11      al., Case Nos. 13-734-CZ and 13-729-CZ, on Friday,

12      July 19, 2013.

13            I further certify that this transcript of the

14      record of the proceedings and testimony truly and

15      correctly reflects the exhibits, if any, offered by the

16      respective parties.  WITNESS my hand this the nineteenth

17      day of July, 2013.

18

19

20

21

22      _____
        Melinda I. Dexter, RMR, RPR, CSR-4629
23      Official Court Reporter
        313 West Kalamazoo
24      Post Office Box 40771
        Lansing, Michigan 48901-7971
25
```

38

# EXHIBIT 6

9318306.1.14893/165083

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

| Case Number | Status | Judge |
|---|---|---|
| 13-000734-CZ-C30 | CLOSED | AQUILINA, ROSEMARIE E. |

| In The Matter Of | | Action |
|---|---|---|
| WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al | | COMPLAINT W/ SUMMONS |

| Party | Type | Attorneys |
|---|---|---|
| THOMAS, VERONICA | PLNTF | CANZANO, JOHN R. 400 GALLERIA OFFICENTER #117 SOUTHFIELD, MI 48034 |
| WEBSTER, GRACIE | PLNTF | CANZANO, JOHN R. 400 GALLERIA OFFICENTER #117 SOUTHFIELD, MI 48034 |
| GOV MI | DFNDT | |
| MI STATE OF | DFNDT | |
| TREASURER MI | DFNDT | |

| Opened | Judgment Date | Case Type |
|---|---|---|
| 07/03/2013 | | CZ - OTHER GENERAL CIVIL |

Comments:

| No. | Date of Filing | Operator | Pleadings and Actions / Journal Book-Page-Nbr   Ref Nbr | Original Amt Due/ Amt Dismissed | Balance Due |
|---|---|---|---|---|---|
| 1 | 07/03/13 | ATIMMER | COMPLAINT FILED  Receipt: 322485  Date: 07/03/2013 | 150.00 | 0.00 |
| 2 | 07/03/13 | ATIMMER | SUMMONS ISSUED | 0.00 | 0.00 |
| 3 | 07/03/13 | MKAHARI | MISCELLANEOUS MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING OR IN THE ALT FOR PRELIM INJUNCTION | 0.00 | 0.00 |
| 4 | 07/03/13 | MKAHARI | BRIEF IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING OR IN THE ALT FOR PRELIM INJUNCTION | 0.00 | 0.00 |
| 5 | 07/03/13 | KAMILTON 1 | ORDER OF REASSIGNMENT FROM JUDGE CANADY TO JUDGE AQUILINA | 0.00 | 0.00 |
| 6 | 07/05/13 | MKAHARI | ORDER TO SHOW CAUSE ON JULY 22, 2013 AT 9 | 0.00 | 0.00 |
| 7 | 07/05/13 | MKAHARI | SUMMONS ISSUED | 0.00 | 0.00 |
| 8 | 07/09/13 | KAMILTON 1 | CASE REASSIGNED FROM TO The judge was changed from CANADY III, CLINTON | 0.00 | 0.00 |

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30   WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al

| No. | Date of Filing | Operator | Pleadings and Actions<br>Journal Book-Page-Nbr     Ref Nbr | Original Amt Due/<br>Amt Dismissed | Balance Due |
|-----|----------------|----------|-----------------------------------------------------------|-------------------------------------|-------------|
| 9 | 07/09/13 | DCLINE | HEARING SET:<br>Event: SHOW CAUSE HEARING<br>Date: 07/22/2013   Time: 9:00 am<br>Judge: AQUILINA, ROSEMARIE E.    Location:<br>COURTROOM 5 - VETERANS MEMORIAL<br><br>Result: CANCELLED | 0.00 | 0.00 |
| 10 | 07/11/13 | KAMILTON<br>1 | PROOF OF SERVICE ON 070513 A COPY OF SUMMONS &<br>COMPLAINT PERSONALLY SERVED UPON GOVERNOR<br>SYNDER; STATE OF MICHIGAN; DEPT OF TREASURY | 0.00 | 0.00 |
| 11 | 07/15/13 | AMARES | PROOF OF SERVICE ON 07/15/13 BY EMAIL AND FIRST<br>CLASS MAIL- A COPY OF THE DEFS' RESPONSE TO<br>PLTS' MOTION FOR DECLARATORY JUDGMENT OR<br>PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT OF<br>DEFS' MOTION FOR SUMMARY DISPOSITION UPON<br>COUNSEL FOR PLTS | 0.00 | 0.00 |
| 12 | 07/15/13 | AMARES | DEFS' MOTION FOR SUMMARY DISPOSITION<br>Attorney: QUASARANO, THOMAS (27982) | 0.00 | 0.00 |
| 13 | 07/15/13 | AMARES | DEFS' RESPONSE TO PLTS' MOTION FOR DECLARATORY<br>JUDGMENT OR PRELIMINARY INJUNCTION AND BRIEF IN<br>SUPPORT OF DEFS' MOTION FOR SUMMARY DISPOSITION<br>Attorney: QUASARANO, THOMAS (27982) | 0.00 | 0.00 |
| 14 | 07/15/13 | AMARES | NOTICE OF HEARING FOR DEFS' MOTION FOR SUMMARY<br>DISPOSITION ON 07/22/13 @ 9AM<br>Attorney: QUASARANO, THOMAS (27982) | 0.00 | 0.00 |
| 15 | 07/16/13 | KAMILTON<br>1 | REQUEST FOR FILM AND ELECTRONIC MEDIA COVERAGE<br>OF COURT PROCEEDINGS / DETROIT NEWS PHOTOGRAPHER<br>TO APPEAR ON 7/22/13 @ 9AM | 0.00 | 0.00 |
| 16 | 07/18/13 | RLMONTRO<br>Y | ORDER DENYING DEFS' REQUEST FOR STAY | 0.00 | 0.00 |
| 17 | 07/18/13 | RLMONTRO<br>Y | TEMPORARY RESTRAINING ORDER | 0.00 | 0.00 |
| 18 | 07/18/13 | RLMONTRO<br>Y | REPLY BRIEF IN SUPPORT OF MOTION FOR DECLARATORY<br>JUDGMENT AND EXPEDITED HEARING PURSUANT TO MCR<br>2.605(D), OR IN THE ALTERNATIVE FOR PRELIMINARY<br>IINJUNCTION; W/POS<br>Attorney: CANZANO, JOHN R. (30417) | 0.00 | 0.00 |
| 19 | 07/19/13 | SBARKLEY | MOTION FEE   Receipt: 323438   Date: 07/19/2013 | 20.00 | 0.00 |

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30   WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al

| No. | Date of Filing | Operator | Pleadings and Actions<br>Journal Book-Page-Nbr    Ref Nbr | Original Amt Due/<br>Amt Dismissed | Balance Due |
|-----|------|------|------|------|------|
| 20 | 07/19/13 | RLMONTRO Y | ORDER - DEFS' MOTION TO STAY PENDING APPEAL, THE ENFORCEMENT OF COURT'S ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AND ORDER OF PRELIMINARY INJUNCTION IS DENIED FOR REASONS STATED ON THE RECORD | 0.00 | 0.00 |
| 21 | 07/19/13 | RLMONTRO Y | ORDER - DEFS' MOTION FOR SUMMARY DISPOSITION IS DENIED FOR REASONS STATED ON THE RECORD | 0.00 | 0.00 |
| 22 | 07/19/13 | RLMONTRO Y | ORDER OF DECLARATORY JUDGMENT (3PGS) - GOVERNOR MUST DIRECT EMERGENCY MANAGER TO IMMEDIATELY WITHDRAW THE CHAPTER 9 PETITION FILED ON 07/18 AND NOT AUTHORIZE ANY FURTHER CHAPTER 9 FILING WHICH THREATENS TO DIMINISH OR IMPAIR PENSION BENEFITS, COPY OF ORDER SHALL BE TRANSMITTED TO PRESIDENT OBAMA | 0.00 | 0.00 |
| 23 | 07/19/13 | RLMONTRO Y | NOTICE OF SUGGESTION OF PENDENCY OF BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY<br>Attorney: LEVINE, JACLYN SHOSHANA (58938) | 0.00 | 0.00 |
| 24 | 07/19/13 | RLMONTRO Y | REQUEST FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS FOR HEARING ON 07/22/13 - WDIV-TV | 0.00 | 0.00 |
| 25 | 07/19/13 | RLMONTRO Y | EMERGENCY MOTION TO ADVANCE HEARING ON MOTION FOR DECLARATORY JUDGMENT OR IN THE ALTERNATIVE FOR PRELIMINARY INJUNCTION<br>Attorney: CANZANO, JOHN R. (30417) | 0.00 | 0.00 |
| 26 | 07/22/13 | DCLINE | EVENT CANCELLED<br>The following event: SHOW CAUSE HEARING scheduled for 07/22/2013 at 9:00 am has been resulted as follows:<br><br>Result: CANCELLED<br>Judge: AQUILINA, ROSEMARIE E.    Location: COURTROOM 5 - VETERANS MEMORIAL<br>Result Staff:<br>  Staff: COURT REPORTER: HAMLIN, JEAN ANN<br>Certification Number: 3218 | 0.00 | 0.00 |
| 27 | 07/22/13 | DCLINE | HEARING SET:<br>Event: HEARING<br>Date: 07/19/2013    Time: 9:00 am<br>Judge: AQUILINA, ROSEMARIE E.    Location: COURTROOM 5 - VETERANS MEMORIAL<br><br>Result: HEARING HELD ON THE RECORD | 0.00 | 0.00 |

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30   WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al

| No. | Date of Filing | Operator | Pleadings and Actions<br>Journal Book-Page-Nbr    Ref Nbr | Original Amt Due/<br>Amt Dismissed | Balance Due |
|-----|------|------|------|------|------|
| 28 | 07/22/13 | DCLINE | C30 HEARING HELD ON THE RECORD<br>The following event: HEARING scheduled for 07/19/2013 at 9:00 am has been resulted as follows:<br><br>Result: HEARING HELD ON THE RECORD<br>Judge: AQUILINA, ROSEMARIE E.    Location: COURTROOM 5 - VETERANS MEMORIAL<br>Result Staff:<br>   Staff:  COURT REPORTER: DEXTER, MELINDA<br>Certification Number:  4629 | 0.00 | 0.00 |
| 29 | 07/22/13 | AMARES | REQUEST FOR FILM AND ELECTRONIC MEDIA COVERAGE OF COURT PROCEEDINGS ON 7/22/13 @ 9AM/DETROIT FREE PRESS | 0.00 | 0.00 |
| 30 | 07/22/13 | AMARES | TRANSCRIPT OF PROCEEDINGS ON 07/19/13 FOR MOTION TO AMEND PRELIMINARY INJUNCTION, MOTION FOR DEFAULT JUDGMENT, AND MOTION FOR SUMMARY DISPOSITION | 0.00 | 0.00 |
| 31 | 07/22/13 | AMARES | PROOF OF SERVICE ON 07/19/13 BY ELECTRONIC MAIL AND FIRST CLASS US MAIL- A COPY OF THE NOTICE OF SUGGESTION OF PENDENCY OF BANKRUPTCY CASE AND APPLICATION OF THE AUTOMATIC STAY AND POS UPON COUNSEL FOR PLT AND DEF | 0.00 | 0.00 |
| 32 | 07/22/13 | AMARES | TRANSCRIPT OF PROCEEDINGS ON 07/18/13-- MOTION FOR PRELIMINARY INJUNCTION-- REPORTED BY MELINDA DEXTER CSR- 4629 | 0.00 | 0.00 |
| 33 | 07/22/13 | AMARES | PROOF OF SERVICE 7/22/13 RE: MEDIA REQUEST(EDIV-TV) UPON PLT'S AND DEF'S COUNSEL TABLES IN COURTROOM | 0.00 | 0.00 |
| 34 | 07/23/13 | SBARKLEY | MOTION FEE  Receipt: 323642  Date: 07/23/2013 | 20.00 | 0.00 |
| 35 | 07/25/13 | AMARES | PROOF OF SERVICE 072213 BY FIRST CLASS US MAIL- COPY OF THE ORDER OF DECLARATORY JUDGMENT UPON PRESIDENT BARACK OBAMA | 0.00 | 0.00 |
| 36 | 07/25/13 | RLMONTRO Y | 07/23/13 ORDER FROM COURT OF APPEALS - MOTION FOR STAY PENDING APPEAL IS GRANTED, ALL FURTHER PROCEEDINGS ARE STAYED PENDING RESOLUTION OF APPEAL | 0.00 | 0.00 |
| 37 | 07/30/13 | RLMONTRO Y | 07/29/13 ORDER FROM COURT OF APPEALS - APPEALS COURT ORDERS CIRCUIT COURT CASE CLOSED W/O PREJUDICE PENDING BANKRUPTCY, WHEN BANKRUPTCY STAY HAS BEEN REMOVED CASE MAY BE REOPENED ON MOTION | 0.00 | 0.00 |

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30    WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al

| No. | Date of Filing | Operator | Pleadings and Actions | | Original Amt Due/ | Balance Due |
|---|---|---|---|---|---|---|
| | | | Journal Book-Page-Nbr | Ref Nbr | Amt Dismissed | |
| 38 | 08/01/13 | RLMONTRO Y | CASE CLOSED C30 | | 0.00 | 0.00 |

|  | Totals By: | COURT COSTS | | |
|---|---|---|---|---|
| | | | 190.00 | 0.00 |
| | | INFORMATION | | |
| | | | 0.00 | 0.00 |

INGHAM COUNTY 30TH CIRCUIT
313 W. Kalamazoo St.

LANSING, MICHIGAN 48933

13-000734-CZ-C30    WEBSTER, GRACIE et al VS DEFENDANT: MI STATE OF et al
                              *** End of Report ***

# EXHIBIT 7-1

9318306.1 14893/165083

13-58846-swr    Doc 8608-8    Filed 12/16/14    Entered 12/16/14 15:12:50    Page 72 of 75
13-58846-swr    Doc 919-8    Filed 08/19/13    Entered 08/19/13 23:53:20    Page 2 of 36

**CITY OF PONTIAC RETIRED EMPLOYEES ASSOCIATION; DELMER AN-
DERSON; THOMAS HUNTER; HENRY C. SHOEMAKER; YVETTE TALLEY;
DEBRA WOODS; JOHN CLAYA, Plaintiffs - Appellants, v. LOUIS SCHIMMEL,
Individually and in his capacity as Emergency Manager of the City of Pontiac;
CATHY SQUARE, Individually and in her official capacity as the Director of Hu-
man Resources and Labor Relations for the City of Pontiac; CITY OF PONTIAC,
Defendants - Appellees.**

No. 12-2087

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

13a0215p.06; 2013 U.S. App. LEXIS 16519; 2013 FED App. 0215P (6th Cir.)

January 15, 2013, Argued
August 9, 2013, Decided
August 9, 2013, Filed

**PRIOR HISTORY:** [*1]

Appeal from the United States District Court for the
Eastern District of Michigan at Detroit. No.
2:12-cv-12830--Lawrence P. Zatkoff, District Judge.
City of Pontiac Retired Emples. v. City of Pontiac, 2012
U.S. Dist. LEXIS 98858 ( E.D. Mich., July 17, 2012)

**COUNSEL:** ARGUED:Alec Scott Gibbs, LAW OF-
FICE OF GREGORY T. GIBBS, Flint, Michigan, for
Appellants.

Stephen J. Hitchcock, GIARMARCO, MULLINS &
HORTON, P.C., Troy, Michigan, for Appellees.

ON BRIEF: Alec Scott Gibbs, Gregory Thomas Gibbs,
LAW OFFICE OF GREGORY T. GIBBS, Flint, Michi-
gan, for Appellants.

Stephen J. Hitchcock, GIARMARCO, MULLINS &
HORTON, P.C., Troy, Michigan, for Appellees.

**JUDGES:** Before: COLE and GRIFFIN, Circuit Judges;
GWIN, District Judge.[*] GWIN, D. J., delivered the opin-
ion of the court, in which COLE, J., joined. GRIFFIN, J.,
delivered a separate dissenting opinion.

   * The Honorable James S. Gwin, United States
District Judge for the Northern District of Ohio,
sitting by designation.

**OPINION BY:** James S. Gwin

**OPINION**

[**2] GWIN, District Judge. Like many Michigan
municipalities, the City of Pontiac has experienced sig-
nificant economic difficulties, especially since the 2008
financial collapse. To address Pontiac's problems, Mich-
igan's Governor appointed Louis Schimmel as Pontiac's
emergency manager. Acting under Public Act 4, Michi-
gan's then-existing emergency manager [*2] law,
Schimmel modified the collective bargaining agreements
of Pontiac's retired employees. He also modified sever-
ance benefits, including pension benefits, that Pontiac
had given to other retirees not covered by collective bar-
gaining agreements. In this case, those retired employees
challenge the emergency manager's power to reduce their
retirement benefits.

The retired employees say that Schimmel and Pon-
tiac violated their federal constitutional rights, including
rights given under the Contracts Clause, the Due Process
Clause, and the Bankruptcy Clause. The retired employ-
ees do not specifically argue that Schimmel violated
Michigan's Constitution when he changed their pension
rights. But, the Michigan Legislature may have violated
the Michigan Constitution when it passed Public Act 4.
In addition, Michigan voters rejected Public Act 4 by
referendum, and this rejection may have rendered
Schimmel's actions void.

Despite the parties' inadequate briefing of these
state-law issues, we decline to decide the case on federal
constitutional grounds. Because state law could provide
an alternative basis for deciding this case, we **VACATE**
and **REMAND** to the district court to conduct additional
fact-finding [*3] and consider these state-law issues.

Specifically, did two-thirds of both houses of the Michigan Legislature vote to make Public Act 4 immediately effective? And, since Michigan voters rejected Public Act 4 in a referendum, do the acts taken under the rejected law have any power? Because similar [**3] issues face many Michigan municipalities, we ask the district court to expedite consideration of the remanded case.

## I. Background

### A. Michigan's Emergency Manager Laws

Emergency Manager Louis Schimmel (the "Emergency Manager") changed contractual and pension commitments under Public Act 4. Public Act 4 is not Michigan's first law governing emergency managers, but it is the first legislation that allowed emergency managers to break collective bargaining agreements and to ignore retirement commitments. Mich. Comp. Laws §§ 141.1501-1531 (rejected by referendum 2012). In 1990, the Michigan Legislature enacted a predecessor to Public Act 4, the Local Government Fiscal Responsibility Act ("Public Act 72"). Mich. Comp. Laws § 141.1519(1)(j) (2005). Public Act 72 established a procedure for Michigan's Governor to appoint emergency managers, and gave those emergency managers the power to address local [*4] governments' financial crises. But Public Act 72 did not give emergency managers the power to modify collective bargaining agreements or pension rights. Critics of Public Act 72 complained that it did not give emergency managers the powers sometimes necessary to address municipalities' structural budget problems, especially financial problems flowing from pension commitments. Critics called for a new law, and Public Act 4 was born.

In March 2011, Michigan's Governor signed Public Act 4 into law. § 141.1503. Unlike Public Act 72, Public Act 4 gave emergency managers the power to temporarily reject, modify, or terminate existing collective bargaining agreements. Id. at §§ 141.1519(1)(k), (k)(iv). Public Act 4 also repealed Public Act 72. Id. at § 141.1503 (enacting § 1).

As we discuss, Michigan's Constitution purposely makes it difficult for laws to take immediate effect. Generally, laws do not become effective until ninety days after the end of the legislative session in which they are passed. Mich. Const. art. IV, § 27. [**4] However, this general rule does not apply if two-thirds of each house in the Legislature vote to make the law take immediate effect. Id. Public Act 4 passed by only [*5] a narrow margin. Nevertheless, the Michigan Legislature claims that two-thirds of its members voted to make Public Act 4 become immediately effective.

Michigan also has a voter rejection procedure that allows citizen-initiated rejection of Michigan legislation. In response to Public Act 4, critics collected enough signatures to have Michigan citizens vote on whether Public Act 4 should be rejected.[1] On November 6, 2012, Michigan voters rejected Public Act 4 by a fifty-two percent to forty-eight percent margin. Michigan's citizens cancelled Public Act 4.

> [1] In August 2012, after litigation over the petition, the Michigan Supreme Court ordered the Board of State Canvassers to certify the referendum for the November ballot. Stand Up for Democracy v. Sec'y of State, 492 Mich. 588, 822 N.W.2d 159, 161 (Mich. 2012). That certification suspended the operation of Public Act 4 pending the outcome of the referendum. Mich. Comp. Laws § 168.477(2) ("a law that is the subject of the referendum continues to be effective until the referendum is properly invoked").

Apparently unaffected that voters had just rejected Public Act 4, the Michigan Legislature enacted, and the Michigan Governor signed, Public Act 436. Public [*6] Act 436 largely reenacted the provisions of Public Act 4, the law that Michigan citizens had just revoked. In enacting Public Act 436, the Michigan Legislature included a minor appropriation provision, apparently to stop Michigan voters from putting Public Act 436 to a referendum.[2] Mich. Comp. Laws §§ 141.1574, 1575.

> [2] See Mich. Const. Art. II, § 9 ("The power of referendum does not extend to acts making appropriations for state institutions or to meet deficiencies in state funds").

### B. City of Pontiac

In March 2009, Michigan's Governor appointed Schimmel as Pontiac's emergency manager under Public Act 72, Michigan's then-controlling emergency manager law. Although Schimmel has managed Pontiac for a number of years, Pontiac continues to struggle. Currently, Pontiac's liabilities to the benefit plans of its employees is its greatest expense, totaling $302 million.

[**5] With the passage of Public Act 4 and for the first time, Michigan gave emergency managers the power to change collective bargaining agreements and the power to stop pension benefits. In December 2011, the Emergency Manager modified Pontiac's collective bargaining agreements to shift a large portion of the city's benefits obligations [*7] onto its employees.[3] Among the changes, Pontiac cancelled disability, vision, and hearing coverage; increased annual deductibles; and cut pensions. This case resulted.

Page 2

13-53846-swr   Doc 8808   Filed 12/16/14   Entered 12/16/14 15:23:20   Page 74 of 75
13-53846-swr   Doc 919-8   Filed 08/19/13   Entered 08/19/13 23:55:20   Page 3 of 36

3   The Pontiac collective bargaining agreements at issue deal primarily with healthcare benefits.

### C. Procedural History

In June 2012, the City of Pontiac Retired Employees Association and a group of retired employees (collectively the "Retired Employees") filed this putative class action. They alleged several federal claims, including the unconstitutional impairment of contract, preemption under federal bankruptcy law, and deprivation of a property interest without due process of law. With the complaint, the Retired Employees filed a motion for a temporary restraining order ("TRO") and a motion for a preliminary injunction to stop certain Emergency Manager orders from taking effect. In July 2012, the district court denied the TRO motion and denied the motion for a preliminary injunction. The Retired Employees appealed.

### II. Law and Analysis

As became clear during oral argument, both parties ask this Court to reach the substantive merits of their dispute. But doing so requires us to resolve important federal constitutional issues, [*8] which are closer questions than the dissent suggests. Unlike the district court here, another Michigan federal district granted injunctive relief when faced with similar federal questions.[4] Against this backdrop, the better course of action asks the district court to see if state-law issues could avoid the need to rule on the federal claims. Because state law could provide an alternative basis for deciding this case, the [**6] more prudent approach is to allow the district court to conduct additional fact-finding and to consider the state-law issues.

4   See Welch v. Brown, No. 12-13808, 2013 U.S. Dist. LEXIS 45681, 2013 WL 1292373, at *13 (E.D. Mich. March 29, 2013).

### A. Constitutional Avoidance

Under the doctrine of constitutional avoidance, we avoid constitutional determinations when a case can be resolved on other grounds. See Ashwander v. TVA, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (internal citation and quotation marks omitted); see also Muller Optical Co. v. EEOC, 743 F.2d 380, 386 (6th Cir. 1984) ("The duty to avoid decisions of constitutional questions . . . [is] [*9] based upon the general policy of judicial restraint."). When a case can be resolved on state constitutional grounds, we should decide the state issue so as to avoid rendering a decision under the Federal Constitution. See Siler v. Louisville & Nashville R.R. Co., 213

U.S. 175, 191, 29 S. Ct. 451, 53 L. Ed. 753 (1909) ("This court has the same right, and can, if it deem it proper, decide the local questions only, and omit to decide the federal questions, or decide them adversely to the party claiming their benefit.") (citations omitted).

The dissent would decide the Retired Employees' contracts clause and due process claims. But these federal constitutional issues are closer questions than the dissent suggests. If the Michigan Legislature gave Public Act 4 immediate effect in violation of the Michigan Constitution, or if the voters' rejection of Public Act 4 by referendum rendered the Emergency Manager's actions void, we could avoid the federal constitutional issues. Doing otherwise forces us to decide federal constitutional questions and potentially render an advisory opinion. We should avoid this if we can.

### B. Waiver

What should a court do when the parties fail to raise an obvious issue? Here, neither the Retired [*10] Employees nor Schimmel raised the issue of whether the Michigan Legislature's giving Public Act 4 immediate effect violated the Michigan Constitution. [**7] Nor did they raise the issue of whether the voters' referendum rejection of Public Act 4 rendered the Emergency Manager's actions void. Both issues are potentially dispositive of this appeal.

Generally, we have found that a party waives an issue when they have not raised it or sufficiently addressed it. See, e.g., Marks v. Newcourt Credit Grp., Inc., 342 F.3d 444, 462 (6th Cir. 2003) (holding that a party "waives an issue when he fails to present it in his initial briefs") (citations omitted). But, the waiver rule is neither jurisdictional nor is it absolute. See, e.g., In re Morris, 260 F.3d 654, 664 (6th Cir. 2001) (holding that the waiver rule is "an accepted practice or rule of procedure rather than a jurisdictional bar to hearing issues for the first time on appeal") (citations omitted).

The dissent says that we are bound by the parties' framing of the issues. But the United States Supreme Court rejects a blanket rule. In Independent Insurance Agents of America, the Court held that courts of appeals have the discretion to consider [*11] issues sua sponte despite the parties' failure to raise the issue in the district court, the court of appeals, or at oral argument. U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 445-47, 113 S. Ct. 2173, 124 L. Ed. 2d 402 (1993) ("The contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court on hypothetical Acts of Congress or dubious constitutional principles, an opinion that would be difficult to characterize as anything but advisory.").[5]