UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | No. 13-53846 |
| Debtor, | HON. STEVEN W. RHODES |

**STATE OF MICHIGAN'S CONSOLIDATED RESPONSE IN OPPOSITION TO MOTIONS TO STAY CONFIRMATION ORDER PENDING APPEAL**

The State of Michigan, through its undersigned attorneys, files this consolidated response in opposition to the Motions to Stay the Confirmation Order.

## ARGUMENT

In deciding upon a motion to stay pursuant to Federal Rule of Bankruptcy Procedure 8005, a court is required to balance four factors: (1) the likelihood that the party seeking the stay will prevail on the merits on appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991); *In re DeLorean*

*Motor Co.*, 755 F.2d 1223, 1128 (6th Cir. 1985).  Because the Movants have failed to show that the balancing of these factors weighs in favor of imposing a stay pending appeal of the Confirmation Order, the Motions to Stay must be denied.

I. **It is unlikely that the Movants will prevail on their appeals.**

In order to satisfy the requirement of demonstrating that they are likely to succeed on appeal, the Movants must do more than simply state the bases for their appeals – they must demonstrate that there is a likelihood that the Confirmation Order will be *reversed*.  *Griepentrog*, 945 F.3d at 153 ("a movant seeking a stay pending a review on the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits.  In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal.").  The Movants have not met this burden.

Although some of the bases are not clearly stated in the Motions to Stay, it appears that the primary bases for the Movants respective appeals are that: (1) the Plan violates 11 U.S.C. § 1123(a)(4) because it

2

13-53846-tjt  Doc 8874-1   Filed 12/26/14   Entered 12/26/14 16:46:43   Page 2 of 14
13-53846-swr  Doc 8489    Filed 12/17/14   Entered 12/17/14 18:47:48   Page 2 of 14

imposes less favorable treatment to holders of Class 11 claims who are subject to the ASF recoupment than on those holders of Class 11 claims who are not subject to the ASF recoupment (John P. Quinn's Motion for Partial Stay Pending Appeal, Dkt. #8413 at 12); (2) the Plan violates 11 U.S.C. § 941 because it purports to adjust the debts of the GRS (Dkt. #8413 at 12); (3) reductions to retiree pensions are improper (Motion for Limited Stay Pending Appeal, Dkt. #8319 at 4); and (4) the Bankruptcy Court lacked jurisdiction (Petitioner's Motion to Stay and Memorandum of Law on the Confirmation of the Plan and Opinion of Magistrate Judge Steven W. Rhodes, Dkt. #8426 at 3).

### A. The Plan does not violate § 1123(a)(4).

Section 1123(a)(4) of the Bankruptcy Code requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).

Class 11 of the City's Plan is comprised of GRS Pension Claims. Each GRS Pension Claim in Class 11 is being compromised by the City in precisely the same manner, and thus, every claim in Class 11 is

3

13-53846-tjt·wr Doc 8874·1 Filed 12/17/14 Entered 12/17/14 16:47:48 Page 3 of 14
13-53846-swr Doc 8489 Filed 12/17/14 Entered 12/17/14 16:46:48 Page 3 of 14

receiving the *same* treatment – in other words, each claim is receiving the same percentage reduction.

However, there are some claimants who hold claims in Class 11 who were also participants in the Annuity Savings Fund ("ASF") and received excess interest payments on account of that participation. Under its Plan, the City seeks to recoup these excess interest payments by deductions from the participants' respective GRS pension benefits payments (unless the participant elects to make lump-sum repayment of the excess interest received).

The Quinn Movants assert that those claimants who are subject to ASF recoupment are receiving less favorable treatment of their GRS Pension Claims than those claimants who are not subject to the ASF recoupment because the ASF recoupment is being deducted from their Class 11 claims. This is simply untrue. The ASF recoupment is not being deducted from Class 11 claims, it is being deducted from pension benefit payments. The Movants "confuse[ ] equal treatment of *claims* with equal treatment of *claimants*." *In re UNR Indus. Inc.*, 143 B.R. 506, 523 (Bankr. N.D. Ill. 1992) (emphasis in original), *rev'd on other*

4

13-53846-tjt Doc 8874-1 Filed 12/26/14 Entered 12/26/14 16:46:43 Page 4 of 14
13-53846-swr Doc 8849 Filed 12/17/14 Entered 12/17/14 16:47:48 Page 4 of 14

*grounds sub nom. UNR-Rohn, Inc. v. Bloomington Factory Workers (In re UNR Indus. Inc.)*, 173 B.R. 149 (N.D. Ill. 1994).

There is no disparity in the treatment of *claims* in Class 11. Rather, the treatment of those *claimants* who are subject to the ASF recoupment is different than the treatment of those claimants who are not.

Courts have held that disparity in treatment of claimants does not violate § 1123(a)(4) when the disparity arises not on account of the claimant's claim but for other legitimate reasons. In *In re Heron, Burchette, Ruckett & Rothwell*, 148 B.R. 660 (Bankr. D.D.C. 1992), the chapter 11 plan provided that the debtor's partners could elect to make contributions toward the funding of the plan and in exchange, receive certain releases and other protections. The objectors asserted that the more favorable treatment for partners who made plan contributions violated § 1123(a)(4). The court overruled these objections on the basis that the protections and releases provided to the contributing partners was not part of the treatment of the contributing partners' claims. *Id*. at 671-672.

> The objectors fail to distinguish between a partner's treatment under the plan on account of a claim or interest

5

> and treatment for other reasons. Only the former is
> governed by § 1123(a)(4).... The plan's provisions dealing
> with partner contributions, releases, and the permanent
> injunction have no connection to a partner's status as a
> claim or interest holder within a particular class. These
> provisions constitute a separate feature of the plan, designed
> to allow adequate funding of the plan. Every partner who
> wants to receive the protection of the permanent injunction
> must agree to contribute to the plan and to release any
> claims against the other partners and creditors. This policy
> is applied to every partner without regard to his status as a
> claim or interest holder. As such, it does not constitute
> treatment of a claim of a particular class for purposes of
> § 1123(a)(4).

*Id.* at 672. *See also In re Piece Goods Shops Co.*, 188 B.R. 778, 789 (Bankr. M.D.N.C. 1995)(holding that negotiated corporate governance provisions that favored one of the debtor's creditors over another did not constitute disparate treatment of claims because the governance provisions "[are] not part of the treatment of claims").

Similarly, the ASF recoupment constitutes a separate feature of the City's Plan and does not constitute treatment of a Class 11 claim. The ASF recoupment does not reduce a retiree's Class 11 claim or the percentage distribution on the claim. The ASF recoupment is a deduction from the retiree's pension benefits payments, not a reduction of the retiree's Class 11 claim. Thus, there is no disparate treatment of

Class 11 claims, the Plan does not violate § 1123(a)(4), and the Confirmation Order is unlikely to be reversed on appeal.

B.  **The Plan does not violate § 941.**

Section 941 provides that "[t]he debtors shall file a plan for the adjustment of the debtor's debts." The Quinn Movants contend that the Plan violates § 941 because it "purports to adjust the liabilities of a party other than the debtor" (meaning the GRS). The Quinn Movants do not make clear which "liabilities" of GRS the Plan purports to adjust, particularly since the City, not GRS, has liability to fund the pension plans. The Plan adjusts the City's pension obligations, not the obligations of third parties and the Quinn Movants have failed to establish that they are likely to be successful on appeal of this issue.

C.  **Pensions can be impaired in a chapter 9 bankruptcy proceeding.**

The Ochadleus Movants assert that reductions to retiree pensions violate the Pensions Clause of the Michigan Constitution, art. IX, § 24. Dkt. #8319 at 4. This assertion was raised, in various forms by various parties, during the eligibility stage of the chapter 9 proceedings and were addressed by the Court in its Eligibility Opinion in which the

7

Court held that the Pensions Clause confers "contractual obligations" that may be impaired in a chapter 9 bankruptcy proceeding. *In re City of Detroit, Michigan*, 504 B.R. 191, 224 (Bankr. E.D. Mich. 2013). The Ochadleus Movants have not demonstrated that a reviewing court is likely to reverse this decision.

### D. The Bankruptcy Court has jurisdiction.

The Williams Movants assert that the Bankruptcy Court lacks jurisdiction over the City's chapter 9 case. Dkt. #8426 at 3. This assertion was also raised during the eligibility stage of the chapter 9 proceedings and the Court held that it has jurisdiction over this chapter 9 proceeding. *City of Detroit*, 504 B.R. at 201. The Williams Movants have not demonstrated that a reviewing court is likely to reverse this decision.

## II. It is unlikely that the Movants will be irreparably harmed absent a stay.

The Quinn Movants assert they will be irreparably harmed if the Confirmation Order is not stayed because they will be required to pay the ASF recoupment before the appeal process is completed. Dkt. #8413 at 5. It is well established that monetary harms alone do not constitute

8

13-53846-tjt wr Doc 8874-1 Filed 12/17/14 Entered 12/17/14 16:46:43 Page 8 of 14
13-53846-swr Doc 8489 Filed 12/16/14 Entered 12/16/14 16:46:43 Page 8 of 14

irreparable harm because they are fully compensable by money damages. See *Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992); *In re Plastech Engineered Prods., Inc.*, 382 B.R. 90, 115 (Bankr. E.D. Mich. 2008). Thus, the Quinn Movants have not demonstrated irreparable injury.

### III. Others will be harmed if the court grants the stay.

The Movants assert that the imposition of a stay "will have no impact on the City during the foreseeable duration of a stay pending appeal." Dkt. #8413 at 6; see also Dkt. #8319 at 5 (stating that the City "will suffer no harm"); see Dkt. #8426 at 4 (stating that the City "will not be irreparably harmed by a stay pending appeal").

Some of the Movants seek to stay the entire Confirmation Order (see Dkt. #8319; Dkt. #8429), but other Movants seek to stay only those portions of the Confirmation Order that relate to the ASF recoupment. In either case, other parties, including the City, its creditors, its employees and its residents, will be substantially harmed if the Confirmation Order is stayed, whether in whole or in part.

The Court determined that "good cause exists to support a waiver of the stay imposed by Bankruptcy Rule 3020(e)" in order "[t]o enable

9

the City to (1) consummate the DIA Settlement and the State Contribution Agreement expeditiously, both of which settlements are conditioned upon the occurrence of the Effective Date; (2) begin implementing, and making distributions to the City creditors pursuant to the Plan; and (3) emerge from bankruptcy as expeditiously as possible to minimize costs to all parties and remedy its service delivery insolvency." *Confirmation Order*, Dkt. #8272 at 72. The "good cause" that supports the waiver of the 3020(e) stay also supports a finding that the City, and others, will be substantially harmed if the Confirmation Order is stayed.

All of the settlements that were approved under the Confirmation Order, including the State Contribution Agreement and DIA Settlement, are integral to the success of the City's Plan and, in turn, its revitalization. The finality of the Confirmation Order and the occurrence of the Effective Date are conditions precedent to each of these settlement agreements. The State Contribution Agreement, in particular, provides that the Authority is authorized to disburse the State Contribution to the GRS and PFRS only if, among other things,

10

13-53846-swr Doc 8870-1 Filed 12/17/14 Entered 12/17/14 18:46:48 Page 10 of 14
13-53846-swr Doc 8489 Filed 12/26/14 Entered 12/26/14 16:47:48 Page 10 of 14

the Confirmation Order becomes final by no later than December 31, 2014, and that the Effective Date occurs no later than April 1, 2015.

The imposition of a stay jeopardizes the entire Plan. If the Plan fails, the City will be unable to reverse its financial decline, eliminate its service delivery insolvency, restore adequate municipal services to its residents or meet its enormous financial obligations. As the Court stated: "a large number of Detroit residents are suffering hardship due to the City's service delivery insolvency. This condition is inhumane and intolerable, and can only be successfully addressed if the Plan is confirmed." *Confirmation Order*, Dkt. #8272 at 30. Without the reinvestment initiatives provided for by the Plan, the City will be unable to reverse its service delivery insolvency and City's residents will continue to suffer severe hardship.

The Movants have failed to demonstrate that other parties will not suffer substantial hardship if the stay is granted.

## IV. Denial of the stay is in the public interest.

Courts recognize the strong public interest in the "finality of decisions, especially in a bankruptcy proceeding." *In re Calpine Corp.* 2008 Bankr. LEXIS 217 (Bankr. S.D.N.Y. 2008), citing *In re Twenty-Six*

*Realty Assocs., L.P.*, 1995 U.S. Dist. LEXIS 22747 (E.D.N.Y. Apr. 4, 1995); see also *First Nat. Bank of Maryland v. Markoff*, 70 B.R. 264, 265 (S.D.N.Y. 1987) (recognizing the "public interest in timeliness and finality of bankruptcy proceedings").

The public interest in the expeditious resolution of bankruptcy proceedings is even greater in the chapter 9 context. *In re City of Detroit, Michigan*, 501 B.R. 702, 710 (Bankr. E.D. Mich. 2013) (in the context of a motion for relief from stay to pursue litigation against the city in which plaintiff alleged that the state's emergency manager statute impaired the right to vote, the court stated that "the public has a substantial interest in the speedy and efficient resolution of a municipal bankruptcy case that affects as many people and institutions, and as much of the local, regional and national economy, as this case does").

There can be no question that there is a substantial public interest in the City's immediate implementation of its Plan. The revitalization initiatives contained in the Plan are vital to curing the City's service delivery insolvency. The adjustment of the City's debts and the exit financing provided for under the Plan will enable the City

to provide for the health, safety, and welfare of its residents – the very purpose of a city's existence.  Thus, the public interest favors denying the Motions to Stay.

V.  **In the event the Court grants the Motions to Stay, the Court should condition such grant on the Movants filing a bond.**

The State concurs in the City's argument that if the Court grants the Motions to Stay it should condition such grant on the Movants filing a bond to secure against all losses that might be sustained by the City, and all parties to the settlement agreements, including the State Contribution Agreement and the DIA Settlement.  In addition to those amounts that the City set out in its response, the bond should also be sufficient to cover the amount of the State Contribution and the amounts contributed pursuant to the DIA Settlement.
13

13-53846-tjt   Doc 8870-1   Filed 12/17/14   Entered 12/17/14 18:46:48   Page 13 of 14
13-53846-swr   Doc 8489    Filed 11/20/14   Entered 11/20/14 16:47:48   Page 13 of 14

## CONCLUSION

Because the factors overwhelming weigh toward denial of the stay, the Court should deny the Motions to Stay.

    Respectfully submitted,

    */s/ Matthew Schneider*
    Matthew Schneider
    Chief Legal Counsel
    P.O. Box 30754
    Lansing, Michigan 48909
    (517) 373-3203
    SchneiderM7@michigan.gov
    [P62190]

    Steven G. Howell
    Special Assistant Attorney General
    Dickinson Wright PLLC
    500 Woodward Avenue, Suite 4000
    Detroit, Michigan 48226-3425

Dated: November 26, 2014    Attorneys for the State of Michigan

14

13-53846-tjt / 13-53846-swr    Doc 8870-1 / Doc 8489    Filed 12/17/14 / 11/26/14    Entered 12/17/14 / 11/26/14 16:46:48    Page 14 of 14