UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re | No. 13-53846 |
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

# EXHIBIT 26

## APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL
in connection with Notice of Appeal filed by Lucinda Darrah
[Dkt. #8812]

| Item | Date Filed | Docket Number | Description |
|---|---|---|---|
| 26 | 7/11/2014 | 5975 | Objection to Chapter 9 Plan Filed by Creditor Lucinda J. Darrah |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In the matter of:

CITY OF DETROIT, MICHIGAN

_____Debtor____/

Case No. 13-53846-swr
Chapter 9
Hon. STEVEN W. RHODES

## OBJECTION TO CITY OF DETROIT'S PLAN OF ADJUSTMENT [DOCKET 2708]

FILED BY:_____

_Lucinda J. Darrah_ hereby states his/her/their OBJECTION TO:

CITY OF DETROIT'S PLAN OF ADJUSTMENT

for the following reasons.

1.  I / we am/are interested in the Bankruptcy of the City of Detroit because _we are retirees, citizens of Detroit, Michigan, United States of America, and we want justice and fairness for all Detroiters now and in the future._

2.  I / we object to the above filing ~~because:~~ for some of the following reasons: _The Retirees did not ~~valid~~ vote for the retiree committee; The committee was appointed by the Court Trustee. The election is like no other democratic election in the United States; Only one view is held; The retiree committee which agreed to reduce our medical & pension benefits is given tax payer funded Bankruptcy court money to mail out letters urging us to vote yes._

3.  I (have) have not attached additional sheets to explain and establish my position.

I hereby certify that the statements made herein are true and correct under penalty of perjury and contempt of Court under the laws of the United States of America.
Wherefore I/ we request the Court will deny the relief sought in said filing.

Name: _Lucinda J. Darrah_
Signature: _Lucinda J. Darrah_
Address: _792 Peterboro Street #820_
_46201_
Email: _cindydarrah@gmail.com_

Dated:

The committee held publicized meetings to indoctrinate the workers; after many of us used the microphones provided in the audience to urge our fellow retirees to vote No during the first two public meetings in Cobo Hall, the retiree committee representatives eliminated the microphones for us to question and comment and only allowed us to write questions out on cards that media mogul Mildred Gaddis read off at the end of the formal indoctrination.

Kevin Orr stated the ballots that we have to mail to California were coming in 2 to 1 in favor of the Plan of Maladjustment. Jones Day ordered their former employee, EmKevin Orr to be quiet. What election have you seen where the ballots are opened up everyday and retiree voters are being mailed letters from the retiree committee recommending

a "yes" vote and advising retirees that they can change their vote by requesting a new ballot. By having the ballots mailed to California, it curtails the average retiree the ability to monitor the election, and prevents "all eyes on deck."

Ameer Somad has asked for a contact list [via a Freedom of Information Request] so that we can present our own concerns about this plan to retirees and to urge them to vote to Reject like we are doing. As a candidate for Wayne Co. Executive, I mailed to a portion of Wayne County voters; I was not limited by lack of contact information, but by lack of money to mail to more. The appointed retiree committee lacks neither contact lists nor unlimited mailing and meeting revenue money.

Twenda J Danah
7/9/14

Exibit 1

letter from general retirement fund



RETIREMENT SYSTEMS
OF THE
CITY OF DETROIT

**To:**     **Beneficiaries of the Detroit General Retirement System, as holders of claims in Class 11**

**From:**    **General Retirement System of the City of Detroit**

**Dated:**    **June 19, 2014**

---

This letter is being sent to you on behalf of the General Retirement System of the City of Detroit (the "GRS" or the "Retirement System") in connection with the City's proposed *Fourth Amended Plan of Adjustment* (the "Plan"). If you are a beneficiary of the GRS, you are the holder of a claim in Class 11 of the Plan. All holders of claims in Class 11 are entitled to vote for or against the Plan.[1]

**BASED ON THE INFORMATION BELOW, PLEASE BE ADVISED THAT THE RETIREMENT SYSTEM BELIEVES THAT THE CITY'S PROPOSED PLAN IS IN THE BEST INTERESTS OF THE BENEFICIARIES OF THE RETIREMENT SYSTEM AND URGES THE BENEFICIARIES, AS HOLDERS OF PENSION CLAIMS IN CLASS 11, TO VOTE IN FAVOR OF THE PLAN BY PROPERLY COMPLETING AND RETURNING THEIR BALLOTS INDICATING THEIR ACCEPTANCE OF THE PLAN, IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH ON THE BALLOT.**

**PLEASE NOTE THAT IF YOU HAVE ALREADY RETURNED YOUR BALLOT AND YOU WISH TO CHANGE YOUR VOTE, YOU CAN SUBMIT A NEW BALLOT PRIOR TO THE VOTING DEADLINE OF JULY 11, 2014.[2]**

**WHILE THE RETIREMENT SYSTEM RECOMMENDS ACCEPTANCE OF THE PLAN, EACH BENEFICIARY MUST MAKE HIS/HER OWN INDEPENDENT DETERMINATION AS TO WHETHER OR NOT THE PLAN IS ACCEPTABLE TO THAT BENEFICIARY AND IS URGED TO READ THE PLAN AND ACCOMPANYING DISCLOSURE STATEMENT CAREFULLY AND CONSULT COUNSEL OF HIS/HER CHOOSING.**

## A.    Role of the Retirement System

The GRS is responsible for administering the City's pension plan for both active and retired general City employees and their survivors. One of the Retirement System's most

---

[1] You may also be the holder of a claim for other post-employment benefits ("OPEB"), which primarily pertain to post-retirement healthcare and death benefits. Such claims are separately treated and entitled to vote on the Plan under Class 12 of the Plan.

[2] You can obtain another ballot by contacting the Balloting Agent at (877) 298-6236 or via email at detroitinfo@kccllc.com or via mail at Detroit Balloting Center c/o KCC, 2335 Alaska Avenue, El Segundo, CA 90245.

important duties is to collect all City contributions required to properly fund the pensions. Once the City filed for bankruptcy, that duty took on a new focus. The law and good judgment required the GRS to seek, through negotiation and/or litigation, to obtain a commitment for as much funding as practicable from the City to minimize any impact on pension benefits for beneficiaries.

To that end, the Retirement System assembled a team of professionals to protect the interests of the System's beneficiaries, including: Clark Hill PLC, as restructuring counsel; Greenhill & Co., LLC, as financial advisor; Arnold & Porter LLP, as appellate counsel; and Gabriel Roeder Smith & Company, the long-time actuarial firm of the Retirement System.

**B.      The Pensions Clause vs. the City's Bankruptcy**

The so-called Pensions Clause of the Michigan Constitution states that accrued public pension benefits "shall not be impaired or diminished." Before the City filed for bankruptcy, the Retirement System filed a state-court lawsuit to prevent the State from authorizing the City to file a bankruptcy that would seek to reduce accrued pensions. When the City filed for bankruptcy, the Retirement System played a central role in arguing to the Bankruptcy Court that the City was not eligible to be in bankruptcy - - unless its filing was explicitly conditioned on upholding the Pensions Clause. The matter was heavily litigated. Unfortunately, on December 5, 2013, the Bankruptcy Court issued its decision, ruling that the Pensions Clause did not prohibit the City from filing for bankruptcy and seeking to reduce accrued pension benefits.

The Retirement System, along with others, have appealed the Bankruptcy Court's ruling directly to the U.S. Court of Appeals for the Sixth Circuit. The Appeal is pending at this time, written arguments are still being completed, and the timing of a decision from the Court of Appeals is unknown. While we believe that our interpretation of the Michigan Constitution is correct, the Sixth Circuit may not agree and may allow the City to reduce pensions. If the Sixth Circuit reversed the Bankruptcy Court decision and ruled in favor of the Retirement System, the City could seek further appeal. If the City did not file any other appeal or if it lost any additional appeal, the City could not proceed with a Plan that reduces pensions.

It is important to keep in mind, however, that the outcome of this litigation is highly uncertain, and the general statistics regarding success on appeal do not favor the Retirement System as the appellant. In spite of the risks in the appeal, we believe that the Retirement System's aggressive assertion of its legal arguments in this matter has given the City pause for thought and has helped create significant leverage in negotiations with the City.

**C.      Prior Plan Proposals**

On June 14, 2013, prior to the bankruptcy filing, the City issued a Proposal for Creditors. Under the Proposal, the Retirement System's defined benefit plan would be promptly frozen and closed, and claims for underfunding liability would receive a pro rata share, along with various bond claims, healthcare claims, and other miscellaneous claims in a $2 Billion 20-year Note. Other than the payment of 1.5% interest on the Note starting in the second full year, all other

distributions to creditors on the Note were entirely speculative. As such, the Proposal would have been disastrous for the Retirement System's beneficiaries.

On February 21, 2014, the City filed its initial Plan of Adjustment in the bankruptcy case. Under that Plan, it was proposed that GRS beneficiaries would experience benefit cuts of 26%-34%, plus loss of COLAs. Again, such cuts would have a devastating impact on beneficiaries.

## D.    Mediation and the Current Plan Proposal

From roughly October through mid-April, the Retirement System, along with others, engaged in numerous and intensive mediation negotiations with the City, conducted by a team of mediators, regarding the City's ability to fund the Retirement System while limiting the City's obligation and risk for any underfunding liability. Ultimately, these lengthy, hard-fought negotiations produced a current version of the proposed Plan that provides the following to GRS beneficiaries: a modest *4.5% cut* in benefits, and a loss of future COLAs. With respect to GRS beneficiaries, the Plan also provides for a limited (capped) amount of recoupment by the City of alleged excess payments made by the City from 2003 through 2013 with respect to the Annuity Savings Fund program ("ASF recoupment").[3] Importantly, the Plan also includes a mechanism for *restoration* of cuts in benefits and COLAs in the event that the Retirement System's financial performance exceeds projections in the years to come. As such, the current Plan represents a *vast improvement* in the proposed treatment of pension claims relative to the City's prior proposals.

The favorable treatment of pension claims described above, which minimizes cuts in benefits and COLAs, is referred to as "Alternative A" under the Plan. The Alternative A treatment is dependent upon significant cash contributions from the State, certain charitable foundations, and the Detroit Institute of Arts (the "Outside Funding"). As discussed below, however, those contributions depend upon *both* Class 10 (PFRS claimants) and Class 11 (GRS claimants) voting in favor of the Plan. If either Class 10 or Class 11 does not vote in favor of the Plan, then the Outside Funding will not be made, and the treatment of pension claims under the Plan becomes far less favorable: for GRS beneficiaries, a *27% cut* in benefits, loss of future COLAs, plus ASF recoupment (with less restriction on the recoupment amount). The opportunity for restoration of benefits or COLAs in the future would be more uncertain. This treatment of pension claims is referred to as "Alternative B" under the Plan.

The Plan groups the various claims against the City into 16 classes. The percentage recovery differs by class, but, in particular, general unsecured creditors and some bondholders will receive only approximately 10% recovery on their claims. Relative to Alternative A, many of those creditors have filed objections to the Plan, arguing that the GRS pension claims are being treated *too well* in comparison to these other creditors and that the difference is unfair. The Retirement System strongly disagrees and opposes any such objection.

---

[3] For clarity, the Annuity Savings Fund recoupment was and is a deal point demanded by the City, not the GRS. The GRS, in working with this demand, negotiated to reduce the amount of the potential recoupment to limit its impact on GRS beneficiaries.

**E. Voting on the Plan**

Under the City's Plan, if either Class 10 (PFRS) or Class 11 (GRS) votes to reject the Plan, Alternative A will not take effect because the Outside Funding will not be contributed. The harsher pension cuts of Alternative B would be put into effect if the Plan is then confirmed without the support of both Classes 10 and 11.

*You are only being asked whether Alternative A under the Plan is acceptable to you, and a vote in favor of the Plan is only a vote in favor of Alternative A.*[4] The City has agreed that, if the Outside Funding is not made available, any vote in Classes 10 or 11 to accept the Plan will be treated as rejecting the Plan instead. In other words, the Court will assume that a favorable vote in Classes 10 or 11 is a vote for Alternative A only, not an acceptance of Alternative B.[5]

**F. Recommendation**

In summary, the Retirement System and its team of professionals have worked very hard to get the best result possible for the GRS pension beneficiaries. Those efforts are reflected in Alternative A of the current Plan. The Alternative A treatment represents a very substantial improvement in the proposed treatment of pension claims relative to the City's prior proposals, and the Retirement System believes it represents a fair and equitable treatment of pension claims, taking into account all of the financial and legal circumstances involved in this matter. If Alternative A is rejected by either Class 10 or Class 11, then one or more of the Retirement Systems and/or their beneficiaries and other representatives may (it is not entirely clear under the Plan) seek to continue to pursue the Sixth Circuit appeal and claims arising under the Pensions Clause. However, the possibility of success in the appeal and any related litigation is highly risky, and the result is by no means certain.

---

[4] The Retirement System does not support the harsher proposed treatment of Alternative B under the Plan, but you are not being asked to vote on Alternative B.

[5] Alternative A of the Plan seeks to prevent all holders of pension claims from bringing any claims against the State for cut pension benefits if the Plan is confirmed by the Bankruptcy Court. While the Retirement System recognizes that an argument may exist to make a claim against the State directly, under an interpretation of the Pensions Clause that would indicate that the State may be a guarantor of all public pensions in Michigan, it should be noted that there is no case law on this issue, and the only authority on the subject is a letter opinion of then-Attorney General Frank Kelley concluding that the State is not a guarantor and has no obligation for the pensions of its cities. Therefore, the Retirement System believes the treatment of pension claims provided by Alternative A should be supported, despite this bar in the Plan to suing the State.

Accordingly, in light of the City's financial condition, the current situation in the bankruptcy case, and the risks involved in the Sixth Circuit appeal and any related litigation, **THE RETIREMENT SYSTEM, IN CONSULTATION WITH ITS RESTRUCTURING COUNSEL AND FINANCIAL ADVISOR, BELIEVES THAT THE PROPOSED PLAN IS IN THE BEST INTERESTS OF THE SYSTEM'S BENEFICIARIES AND RECOMMENDS THAT CLASS 11 GRS CLAIMANTS VOTE TO ACCEPT THE PLAN BY RETURNING THEIR BALLOTS INDICATING THEIR ACCEPTANCE OF THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS ON THE BALLOT.[6]**

*The General Retirement System of the City of Detroit*

---

[6] The Retirement System may make certain objections to the Plan to ensure that it ultimately meets all of the legal requirements for confirmation by the Bankruptcy Court. Nonetheless, subject to making such objections, the Retirement System submits that the Plan's treatment of pension claims under Alternative A is in the best interests of beneficiaries and urges beneficiaries to vote in favor of the Plan.

# Exhibit II

Election and representation rules from
Michigan Employment Relations Commission (MERC)

R 423.147 Elections; general procedures

Rule 147 (1) "An election ... shall be done by secret ballot." It is one thing A basic american right in labor law and in general public elections, that the elections are by secret ballot, to offer people protection from retribution from possible punishment and prejudicial treatment.

R 423.148 Observers and challenges.

"An authorized observer, the Commission, or the election agent before the time the voter's ballot is cast, or before the ballots are counted in the case of a mail ballot election, may challenge for good cause the eligibility of any person to participate in the election." Does Kevin Orr chose the company conducting the elections, the retirees did not choose their challengers and retirees and contested workers had no list of challenge from.

R 423.149

Rule 149. (1) Ballot boxes shall be examined before the opening of the polls, in the presence of observers, and shall be sealed at the opening of the polls.

Section 9(2) of PA 436 grants the ~~EM~~ Emergency Manager (EM) "broad powers in receivership to rectify the financial emergency and to assure the fiscal responsibility of the (city) and the (city's) capacity to provide or cause to be provided necessary governmental services essential to the public health, safety, and welfare;"

I am asking the bankruptcy court to order the EM to cancel the city's 2010 contract with the incinerator owners to guarantee that they ~~~~ city continues to deliver trash to the incinerator until 2020 something. I ask for this striking down of this trash delivery contract in the name of my own and the public's health. ~~~~

The incinerator is unhealthy and the ~~surrounding~~ area is very sparsely populated; people

still living in the immediate area are also afraid to eat food grown in gardens there, and rightfully so. The zip codes surrounding the incinerator have a higher asthma and cancer rate than the rest of the county.

We have good weather, and water, but are allowing corporations and contractors profits to come before public health. ~~Representatives~~

... an once of prevention is a good investment for the ~~future~~ financial stability and inhabitation of Detroit. Do you want to move downtown or to Midtown Cass corridor, or Woodbridge or Brush Park etc. if you will be injuring your health by ~~breathing~~ the intake of incinerator poisons in your air, water and food.

This week I woke up each morning about 5 am, smelly a burnt dusty spell. Today 7/10/14, I drove over to the incinerator and noticed it going full blast out of all stacks and the wind was carrying the exhaust

*Ron Siegel's article*

toward the southwest, toward ~~where~~
the vicinity I live in 492 Peterboro, near
Masonic Temple. I felt the urge to get up
and go somewhere; ~~Now~~ I realize I need
to get upstream from the incinerator air
flow when it is blowing toward Southwest;
i.e. a place to go ~~rather~~ northeast when
the wind is blowing toward the southeast
and visa versa, ~~2~~ i.e. 2 places are
needed.

Castenella Lopas' volunteers & pd. coordinators are distributing
"The zero waste" ~~coalition~~ fliers
instructing people how to recycle. The fliers
say absolutely "no plastic bags in the
recycle bin."

The best garbage management solution for public health
is to ~~scrap~~ reduce volume by recycling and to
land fill ~~the~~ ~~remains~~ what remains re used

The recycle center used for the 2 pilot recycle
programs burned down a week before Advanced
~~Disposal~~ neighborhood ~~2nd~~ at the DPW/Bosman
yard.

Detroit Councilwoman,

accorded to the Advance General Manager.

The siting of the incinerator ~~with the~~ so close to the Medical Center, Wayne State's medical school, Eastern Market foods, Wayne State, the New Center Area, Cass Corridor, Midtown, Woodbridge, and Downtown, areas the city is pouring ~~money~~ tax payers money into to try to Revive Detroit is an albatross around the city's neck.

Incinerators are being discouraged due to the negative impact on health and. ~~its~~ because they contribute to global warming. The water department had to reduce incineration of sludge by 2014, and that was how they justified wasting money ~~on~~ on the New England Fertilizer (NEFCO) contract ~~as a replacem~~ driers as a replacement for some old sludge incinerators. This is another waste of money to make our bottom line look worse. #6d3 $143 million for NEFCO to design and build the driers (NEFCO contract)

and another $540 million to operate them for 20 years; despite a water workers in Minneapolis say Mr. said the NEFCO driers there, "really didn't work very well until they bought anerobic digesters to digest predigest the sludge before it goes went into the drier. NEFCO, formerly Bay State Organics, is located in Quincy, Ma, across the Boston Harbor from Deer Island where Boston's anerobic digesters sit. Before Boston installed the Army Corp of Engineered the anerobic digesting sludge digesters, the fish in Boston Harbor were mutating and sickly. Boston used to barge the sludge digested sludge to Quincy where Bay State Organics made fertilizer pellets. used natural gas feed driers to make Then an under water pipeline was built between the two locations. Last year the Boston water quirk sending its digested sludge to Quincy; Boston is able to offset some of the water treatment costs by selling the methane that is a byproduct of the digestion process. Scientists are developing other uses for

the digested sludge and perhaps that is why. Boston q no longer contracts to send sludge remains to NEFCO. see exhibit one (1) ___ ie. its obsolete technology that won't even work witout the horses (anerobic digesters) ...like putting the cart before the horse, to buy a cart without a horse to pull it, and the cart is absolute anyway, but the horse isn't and the horse does the work. This is a contract pushed thru under the consent agreement, before the appointment of the EM. The EM and bankruptcy court should stop this waste of tax payers credit, halt this project in its tracks, and (bonding) encourage the utilization of competant and honest engineers to design, and oversee the infrastructure changes and operations at the water department; thus the water department used to be run by engineers not politicians and gansters making money hauling sludge to their land fills.

The city and county should own their own landfills that they connect to via rail by which they take garbage trash left after reuse and recycling, and sludge that exists left over after anerobic digestion that can't be used for sundried fertilizer or other products,

to their own land fills. Rail transport with a rail depo could be used for both trash and sewage sludge residue
liquid spray fertilizer
left over

DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES

EMPLOYMENT RELATIONS COMMISSION

GENERAL RULES

(By authority conferred on the director of the department of consumer and industry services by sections 7, 9a, 9c, and 27 of 1939 PA 176, MCL 423.7, 423.9a, 423.9c, and 423.27, sections 12 and 14 of 1947 PA 336, MCL 423.212 and 423.214, and Executive Reorganization Order No. 1996-2, MCL 445.2001)

PART 1. GENERAL PROVISIONS

R 423.101   Definitions: A to C.
Rule 101. As used in these rules: (1) "Administrative law judge" means a commission member or an employee designated by the commission to perform hearing functions and duties under PERA and LMA in the commission's labor relations division.
(2) "Applicant" means a person or duly authorized agent thereof who files an application for fact finding under PERA and LMA.
(3) "Charge" means the document containing the information specified in R 423.151.
(4) "Charging party" means a person, or duly authorized agent thereof, who files a charge alleging an unfair labor practice under LMA or PERA.
(5) "Commission" means the employment relations commission as established in section 3 of LMA.

History: 2002 AACS.


R 423.102   Definitions; E to L.
Rule 102. As used in these rules: (1) "Election agent" means a commission member or an employee designated by the commission to perform election functions and duties under LMA and PERA.
(2) "Fact finder" means a commission member, an employee, or other individual, whether or not a member of the commission's staff, designated by the commission to perform fact finding functions and duties under section 25 of LMA.
(3) "LMA" means 1939 PA 176, MCL 423.1 et seq.

History: 2002 AACS.


R 423.103   Definitions; M to P.
Rule 103. As used in these rules: (1) "Mediator" means the commission, a commission member, or an employee designated by the commission to perform the functions and duties of mediation under LMA and PERA in the commission's mediation division.
(2) "PERA" means the 1947 PA 336, MCL 423.201 et seq.
(3) "Petition" means the document containing the information specified in R 423.141.
(4) "Petitioner" means a person or duly authorized agent thereof who files a petition under LMA or PERA.

History: 2002 AACS.


R 423.104   Definitions; R.
Rule 104. As used in these rules: "Respondent" means a person charged with having engaged in or engaging in unfair labor practices under LMA or PERA as set forth in a complaint issued by the commission.

History: 2002 AACS.

R 423.137   Fact finders' reports.
Rule 137.   (1)  After the close of the hearing,  the  fact   finder   shall prepare a fact finding report, which shall contain:
(a) The names of the parties.
(b) A statement of findings of fact and conclusions  upon  all  material issues presented at the hearing.
(c) Recommendations with respect to the issues in dispute.
(d)  Reasons and basis for the findings, conclusions and recommendations. However, the parties may waive the requirements of this subdivision and  the fact finder may then issue a report containing  only  items set forth in subdivisions (a), (b) and (c) of this subrule.
(e)  The date the report issued.
(f)  The signature of the fact finder.
(2)  The fact finder shall file the fact finding report and 6  copies  with the commission in accordance with commission requirements  and  at  the  same time serve a copy on each of the parties.

History: 2002 AACS.


R 423.138   Costs.
Rule 138.  (1) The parties to  a  hearing  may  obtain  information  with regard to the per diem and other charges of the fact finder  upon  filing  a request with the commission.  A fact finder shall  not  charge  more  than  2 preparation days for each day of hearing.
(2)  The costs of subpoenas and witness fees shall be borne by the   party at whose request subpoenas are issued and at whose request witnesses appeared.
(3)  A transcript of a deposition may be ordered at the  expense  of  the party who ordered the transcript. The party who requests a deposition  shall  pay the costs for the court reporter and for a copy of the transcript of  the deposition for the fact finding hearing record.

History: 2002 AACS.


PART 4. REPRESENTATION PROCEEDINGS


R 423.141   Petitions for elections.
Rule 141.  (1)  A  petition  for  election  to  determine  a  collective bargaining representative or a petition for decertification  of  a  collective bargaining representative shall be  prepared  on  a  form  furnished  by  the commission.  An original and 4 copies of the petition shall be filed with the commission in accord with section 14 of PERA, section 29 of LMA, and  subrule
(3) of this rule.
(2)  A petition for an election to determine  the   collective  bargaining representative or for decertification shall include, insofar as known, at least all of the following information:
(a) The name of the employer.
(b) The address of the establishment involved.
(c) A description of the bargaining unit claimed to be appropriate.
(d) The name and address of persons  or  labor  organizations  who  claim  to represent     employees in the alleged appropriate unit,   and   brief descriptions of the contracts, if any, covering the  employees  in  the unit.
(e) The number of employees in the alleged appropriate unit.
(f) The name, affiliation, if any, and address of the petitioner.
(g) Any other relevant facts.
(h) Signature of petitioner or its duly  authorized  agent  if  filed  by  an employer.
(i) A statement that 1 or more individuals or  labor  organizations  have presented a claim to be recognized as the bargaining representative.
(3)  Where there is a collective bargaining agreement  covering  employees in the bargaining unit, a petition for election  may  be  filed  during  the following periods:

(5) An absentee ballot shall be mailed to an individual eligible to vote upon written notice to the commission of inability to be present at the election because of either sickness or physical disability, or upon the agreement of the parties to the election with the approval of the election agent. The voted ballot shall be mailed or delivered by the absentee voter to the election agent in the official envelopes provided for this purpose. The envelopes containing the ballot shall be opened at the time of the counting of the ballots and placed in the ballot box. The ballot shall be in possession of the election agent before closing of the election at the place of balloting in order to be counted.

(6) In a mail ballot election, to be valid, each voted ballot shall be personally and individually mailed or delivered by the voter to the election agent in the official envelopes provided for this purpose.

History: 2002 AACS.

R 423.149a  Counting of ballots; election results.

Rule 149a. The election agent shall count the ballots as soon after the polls have closed as practicable. The election agent shall announce the results of the election as soon as the complete results have been tabulated. The election agent shall furnish to the parties a tabulation of results signed by the observers and the election agent. The commission shall furnish the parties with a certification of representative or results.

History: 2002 AACS.

R 423.149b  Objections to elections; rerun and runoff elections.

Rule 149b. (1) Within 5 days after the election results have been tabulated and furnished to the parties, excluding Saturdays, Sundays, and legal holidays, an interested party may file objections to the conduct of the election or to conduct improperly affecting the results of the election. Objections shall be in writing and shall contain a statement of facts upon which the objections are based and the reasons for the objections. A signed original and 4 copies of the objections shall be filed with the commission, and the party filing objections shall at the same time serve a copy upon each of the other parties to the election with proof of service to the commission.

(2) R 423.171, R 423.172, R 423.173, and R 423.174 shall apply to all hearings conducted under this rule. After the close of the hearing, the commission shall issue its decision with regard to the challenges or objections, or both.

(3) If the commission orders that any challenged ballots be opened and counted, an amended tabulation of election results and an appropriate certificate of results of the election shall be issued.

(4) If the commission sustains objections to an election, it may direct a new election, to be held at such time and under such circumstances and conditions as it deems appropriate. For a runoff or rerun election, the commission may maintain the same eligibility date or establish a new eligibility date for voters.

(5) A runoff election shall be conducted without further order of the commission when an election in which the ballot provided for fewer than 3 choices (for example, at least 2 representatives and "neither") resulted in no choice receiving a majority of the valid votes cast and no objections are filed as provided in this rule.

(6) Employees who were eligible to vote in the election and who are in an eligible category on the date of the runoff election shall be eligible to vote in the runoff election.

(7) The ballot in the runoff election shall provide for a selection between the 2 choices receiving the largest and second largest number of valid votes cast.

(8) Upon the conclusion of the runoff election, this rule shall govern, insofar as applicable.

History: 2002 AACS.

PART 5. UNFAIR LABOR PRACTICE CHARGES

R 423.151  Filing, contents, and service.

Rule 151. (1) A charge that a person has engaged in or is engaging in an unfair labor practice in violation of LMA or PERA, may be filed with the commission. The charge shall, except for good cause shown, be prepared on a form furnished by the commission. An original and 4 copies of the charge shall be filed with the commission.

such other matters as the commission considers appropriate. The time and place of the election shall be determined by the commission or its election agent after consultation with the parties.

History: 2002 AACS.


R 423.145   Showing of interest; intervenors.
   Rule 145. (1) A petition for an election to determine a collective bargaining representative, except when filed by an employer, or a decertification petition shall be supported by a showing of interest existing at the time of the filing of the petition of 30% of the employees in the unit claimed to be appropriate. A showing of interest is not required for a self-determination election petition.
   (2) Evidence of interest shall be submitted at the time of filing a petition. Unless an original showing of interest is received within 48 hours of the filing, the petition will be dismissed.
   (3) An employee, group of employees, individual, or labor organization which makes a showing of interest not less than 10% of the employees within the unit claimed to be appropriate may intervene in the proceedings and attend and participate in all conferences and any hearing that may be held. The signature of an intervenor is not required on a consent election agreement unless the intervenor demonstrates to the commission that 30% or more of the employees in the unit claimed to be appropriate wish to be represented by the intervenor, in which event, the intervenor's signature on the consent election agreement is required. The determination with respect to the statutory 30% or an intervenor's 10% showing of interest is an administrative action and shall be made exclusively by the commission or its agent. Once a consent election agreement has been signed by all required parties known to the commission, an interested party shall file a written request to intervene and provide a showing of interest within 2 business days of the date of the consent. The date of the consent is the date on which the last required signed copy of the consent agreement is received by the commission. Intervention may be permitted after 2 business days with the agreement of all parties and the approval of the commission or its agent or with the approval of the commission upon a showing of good cause. An intervenor who has not less than a 10% showing of interest but less than 30%, may file a motion with the commission and serve a copy on each of the other parties within 48 hours after a consent election agreement is signed alleging reasons for disallowance of the consent election agreement and requesting a hearing. The commission or its agent shall determine whether the petition establishes good cause for holding a hearing. If the commission or its agent decides that a hearing should be held on the petition, then the consent election agreement shall be suspended pending disposition of the case by the commission.
   (4) Intervention will not be allowed after the close of the hearing without the agreement of all parties and the approval of the commission or its agent, or the approval of the commission upon a showing of good cause.

History: 2002 AACS.


R 423.146   Hearing on election petition.
   Rule 146. (1) If a consent election agreement is not executed by the required parties, the petition for election shall be referred to an administrative law judge, who, after due notice, shall hold a hearing for the purpose of gathering facts on the matters in dispute. R 423.171, R 423.172, R 423.173, and R 423.174 apply to all hearings conducted under this rule. A notice of hearing shall be served upon all interested parties including any intervenor. The notice shall set the time, date, and place of the hearing, and, unless by agreement of the parties or in case of special circumstances, the time shall be not less than 5 days after service of the notice.
   (2) In appropriate cases, the commission or its agent may consolidate representation and unfair labor practice proceedings for hearing and decision.
   (3) After the hearing closes, the commission shall determine the matters in dispute and direct an election, dismiss the petition, or make other disposition of the matter as the commission deems appropriate. The commission may reopen a proceeding in accord with R 423.166 or R 423.167.
   (4) If a motion for reconsideration or rehearing of a commission order directing an election is filed, then the commission, during its consideration of the motion, shall proceed to conduct the election in accord with its original direction, count the ballots and issue a certification of results or representation unless and until a party makes a written request to stay the election or impound the ballots, or both, and the commission determines that it would not effectuate the purpose of the statute to conduct an election or count the ballots, or both, while the motion is pending.

History: 2002 AACS.

# PART 3. FACT FINDING

## R 423.131 Definitions.

Rule 131. As used in this part: (a) "Advocate" means an individual who has represented management or a union in the past 5 years before his or her appointment to the fact finder panel. Advocate also means an attorney who is associated with a firm that has represented management or a union in the past 5 years before his or her appointment to the fact finder panel.

(b) "Commission's panel of fact finders" means those members who are appointed to the Michigan employment relations commission panel of fact finders by the commission.

(c) "Dispute" means a disagreement regarding mandatory subjects of bargaining concerning rates of pay, wages, hours of employment, or other conditions of employment.

History: 2002 AACS.

## R 423.132 Petitions and initiation by commission of fact finding.

Rule 132. (1) Pursuant to section 25 of LMA, a petition for fact finding may be filed by a public employer, a collective bargaining representative of public employees, or, if no representative has been designated or selected, by a majority of any given group of public employees. The petition shall be signed by an authorized agent of the petitioner. An original and 3 copies shall be filed with the commission and the petitioner shall serve a copy of the petition on the other party or its representative. Petitions for fact finding shall be filed in conformance with R 423.181 and service shall be in accord with R 423.182.

(2) The petition may be withdrawn by the applicant with the consent of the commission.

(3) The commission, on its own motion, may institute fact finding if it is apparent to the commission that matters in disagreement between the parties might be more readily settled if the facts involved in the disagreement were determined and publicly known. When the commission institutes fact finding, it shall so advise the parties.

History: 2002 AACS.

## R 423.133 Contents of petitions.

Rule 133. The petition shall contain all of the following information:

(a) The name and address of the public employer involved and the name and telephone number of its principal representative.

(b) The name and address of the collective bargaining representative involved; or, if there is no collective bargaining representative, the name and address of the principal representative of the majority of the members of a given group on whose behalf the petition is being filed.

(c) A description of the certified or recognized collective bargaining unit, or, if there is no such unit, a description of the given group.

(d) The approximate number of employees in the unit or given group.

(e) Contract expiration date.

(f) A statement that the applicant has attempted to engage in good faith collective bargaining and mediation and that the parties have not succeeded in resolving the matters in dispute.

(g) A statement that the applicant has exhausted the contractual grievance procedure, if applicable.

(h) A listing of any unresolved issue in dispute and the facts relating thereto.

(i) A statement of reasons why publicizing the facts and recommendations would assist in resolving the issues in dispute.

(j) If applicable, the name of the fact finder from the commission's panel of fact finders that the parties have mutually selected.

(k) The name and address of the petitioner and the signature and telephone number of the persons executing the petition.

**R 423.155 Answers.**

Rule 155. (1) Each respondent may file with the commission a signed original and 4 copies of an answer to the complaint and attached charge within 10 days after receipt thereof, and at the same time shall serve a copy of the answer on each party. Upon good cause shown, the commission or administrative law judge designated by the commission may grant an extension of time in which to file the answer. Failure to file an answer shall not constitute an admission of any fact alleged in the charge, nor shall it constitute a waiver of the right to assert any defense.

(2) The answer shall include a specific admission, denial, or explanation of each allegation of the complaint and attached charge, or if the respondent is without knowledge thereof, it shall so state and the statement shall operate as a denial. An admission or denial may be to all or any part of any allegation, but shall fairly meet the substance of the allegation. The answer shall include a specific, detailed statement of each affirmative defense.

History: 2002 AACS.

**R 423.156 Amendments to answers.**

Rule 156. (1) The commission or administrative law judge designated by the commission may permit a respondent to amend the answer before or during the hearing, or at any time prior to issuance of the administrative law judge's recommended order, within a period of time fixed by the administrative law judge.

(2) An original and 4 copies of the amended answer shall be filed with the commission and a copy served on each party.

History: 2002 AACS.

**R 423.157 Joinder of parties.**

Rule 157. Persons having such an interest in the subject of the action that their presence in the action is essential to permit the commission to render complete relief shall be made parties and aligned as charging parties or respondents in accordance with their respective interests. If the persons have not been made parties, then the commission or administrative law judge shall, on motion of either party, order them to appear in the action, and may prescribe the time and order of pleading.

History: 2002 AACS.

**R 423.158 Prehearing conference.**

Rule 158. The commission or an administrative law judge designated by the commission may direct the parties to appear for a prehearing conference. The prehearing conference may resolve any matter upon which the parties agree or which the commission or administrative law judge may determine is proper for resolution.

History: 2002 AACS.

## PART 6. MOTION PRACTICE

**R 423.161 General provisions.**

Rule 161. (1) An application to the commission for an order other than that sought for by the unfair labor practice charge shall be by motion. Examples of such motions are set forth in R 423.162 to R 423.167.

(2) All motions made before or after hearing shall be in writing and shall state with particularity the grounds upon which the motion is based and the relief sought. A motion that presents an issue of law shall be accompanied by a brief citing the authority on which it is based. All motions and briefs made before the hearing shall be served as provided in R 423.182.

(b) The commission lacks jurisdiction over the subject matter of the charge.

(c) The charge is barred because of the expiration of the applicable period of limitations.

(d) The charging party has failed to state a claim upon which relief can be granted.

(e) The respondent has filed an answer under R 423.155, which fails to state a valid defense to the charge.

(f) Except as to the relief sought, there is no genuine issue of material fact.

(g) The charge has been abandoned for failure to appear for hearing or prehearing conference.

(3) If the motion for summary disposition is filed before the hearing, then the commission or administrative law judge designated by the commission may issue an order to the nonmoving party to show cause why summary disposition should not be granted. If a response to the order is not filed in a timely manner, then the motion shall be considered and decided without oral argument.

(4) If the motion for summary disposition is denied, or if the proposed decision and order does not dispose of the entire action or grant all of the relief demanded, then the action shall proceed to hearing according to part 7 of these rules.

History: 2002 AACS.


R 423.166   Motion for reopening of the record.

Rule 166. (1) A party to a proceeding may move for reopening of the record following the close of a hearing conducted under Part 7 of these rules. A motion for reopening of the record will be granted only upon a showing of all of the following:

(a) The additional evidence could not with reasonable diligence have been discovered and produced at the original hearing.

(b) The additional evidence itself, and not merely its materiality, is newly discovered.

(c) The additional evidence, if adduced and credited, would require a different result.

(2) Any motion pursuant to this rule shall be filed not later than 21 days after the issuance of the commission's final order.

History: 2002 AACS.


R 423.167   Motion for reconsideration.

Rule 167. A party to a proceeding may move for reconsideration after a decision and order is issued by the commission. A motion for reconsideration shall state with particularity the material error claimed and, with respect to any finding of material fact, shall specify the page of the record relied upon. Generally, and without restricting the discretion of the commission, a motion for reconsideration which merely presents the same issues ruled on by the commission, either expressly or by reasonable implication, will not be granted. Any motion pursuant to this rule shall be filed not later than 20 days after the issuance of the commission's final order. The filing and pendency of a motion under this rule shall not operate to stay the effectiveness of the action of the commission unless so ordered.

History: 2002 AACS.


PART 7. HEARINGS


R 423.171   General provisions.

Rule 171. (1) A hearing for the purpose of taking evidence upon a petition or complaint and attached charge shall be conducted by the commission or administrative law judge designated by the commission. The hearing shall be public unless otherwise ordered by the commission or administrative law judge for good cause shown.

(2) A party may appear at a hearing in person, by counsel, or by other representative; may call, examine, and cross-examine witnesses; and may introduce into the record documentary or other evidence.

(3) Stipulations of fact may be introduced into evidence at a hearing with respect to any issue at the discretion of the commission, administrative law judge, or fact finder.

Rule 175. In an unfair labor practice case, the administrative law judge shall prepare a recommended decision and order setting forth findings of fact, conclusions of law, and the reasons for his or her determination on all material issues. The administrative law judge may recommend dismissal or sustain the complaint and attached charge, in whole or in part, and recommend that respondent cease and desist from the unlawful acts found and take action to remedy their effects, including reinstatement of employees with or without back pay, as appropriate.

History: 2002 AACS.

R 423.176    Exceptions to administrative law judge's decision and    recommended orders; cross exceptions; brief in support.
Rule 176.  (1)  Any party may file written exceptions to the    decision and recommended order of the administrative law judge, or to any other part of the record or proceedings, including rulings upon motions or objections, and a brief in support thereof. An original and 4 copies of the exceptions and brief, along with 2 copies of each exhibit, if any, submitted at hearing, shall be filed with the commission. At the same time, copies of the exceptions and brief shall be served on each party to the proceedings.
(2) Exceptions shall be filed within 20 days of service of the decision and recommended order.
(3) Exceptions shall be in compliance with all of the following provisions:
(a) Set forth specifically the question of procedure, fact, law, or policy to which exceptions are taken.
(b) Identify that part of the administrative law judge's decision and recommended order to which objection is made.
(c) Designate, by precise citation of page, the portions of the record relied on.
(d) State the grounds for the exceptions and include the citation of authorities, if any, unless set forth in a supporting brief.
(4) A brief in support of exceptions shall contain only matter included within the scope of the exceptions and shall contain, in the sequence indicated, all of the following:
(a) A title page, stating the full title of the case, including the name of the administrative law judge and the case number.
(b) An index of authorities, listing, in alphabetical order, all case authorities cited, with the complete citations including the years of decision, and all other authorities cited, with the number of the pages where they appear in the brief.
(c) A statement of the questions involved and to be argued.
(d) A clear and concise statement of facts. All material facts, both favorable and unfavorable, shall be fairly stated without argument or bias.The statement shall contain specific page references to the transcript and the legal or other material relied on.
(e) The argument, presenting clearly the points of fact and law relied on in support of the position taken on each question, with specific page references to the transcript and the legal or other material relied on.
(5) An exception to a ruling, finding, conclusion, or recommendation that is not specifically urged is waived. An exception that fails to comply with this rule may be disregarded.
(6) Within 10 days after service of exceptions, a party may file 1 original and 4 copies of cross exceptions and briefs in support thereof, or 1 original and 4 copies of a brief or legal memorandum in support of the decision and recommended order. Copies of these documents shall be served on each party to the proceedings.
(7) An amicus curiae brief may be filed on motion granted by the commission. The motion shall be filed within 20 days after the brief in support of the decision and recommended order is filed. If the motion is granted, the order will state the date by which the brief shall be filed.The brief is limited to the issues raised by the parties.
(8) A request for extension of time in which to file exceptions, cross exceptions or briefs in support of the decision and recommended order shall be filed in writing and filed with the commission before expiration of the required time for filing. At the same time, copies of the request for extension shall be served on each of the other parties. One extension of not longer than 30 days will be granted to the moving party upon the filing of the request. Subsequent extensions will be granted only upon a showing of good cause. Good cause does not include inexcusable neglect by a party or a representative thereof.
(9) The commission may, on its own motion, reopen a record in any case and receive further evidence, may close the case upon compliance with the administrative law judge's recommended order, or may make other disposition of the case.

History: 2002 AACS.

## PART 8. FILING AND SERVICE OF DOCUMENTS

R 423.181   Filing of documents and other pleadings.

Rule 181. (1)   "Filing" of a document, pleading, or other paper with the commission is considered complete on the date it is delivered to any office of the commission and received and accepted by the commission, administrative law judge, or other agent designated to receive the document, with the intent to enter it in the record. Filing may be accomplished by hand delivery, registered, certified or regular mail, private delivery service, or any other means specifically authorized by the commission or an administrative law judge designated by the commission.

(2)   When LMA, PERA, or any of these rules require the filing of an original and extra copies of a document, filing is considered complete on the date a copy is filed, but the original and remaining copies shall be filed within 5 business days.

History: 2002 AACS.

R 423.182   Service of documents and other pleadings.

Rule 182. (1)   Service on any party or parties, other than the commission, of any document authorized or required by LMA, PERA, or these rules, except service required by section 9 of LMA, may be effected by hand delivery, registered, certified or regular mail, private delivery service, or by leaving a copy thereof at the principal office or place of business of the person required to be served. With the permission of the person receiving the charge, service may be made by facsimile transmission or by any other agreed-upon method. Service required by section 9 of LMA shall be made as prescribed therein.

(2)   Where service of any document or pleading, other than an unfair labor practice charge filed under R 423.151, is effected by mail or private delivery service, the date of service is the date of deposit with the United States post office or other carrier. For service of an unfair labor practice charge filed under R 423.151, or where service of any document or pleading is effected by hand, by facsimile transmission, or by any other method authorized by these rules, the date of service is the date of receipt.

(3)   The person or party serving the papers or process on other parties in conformance with this rule shall submit a written statement of service thereof to the commission or administrative law judge designated by the commission stating the names of the parties served and the date and manner of service. The statement of service may be included at the end of the document as filed. Failure to submit the statement of service will not affect the validity of service.

(4)   If, subsequent to the receipt of the statement of service, a question is raised with respect to proper service, then the person or party serving the papers or process on other parties in conformance with this rule shall submit a proof of service. When service is made by registered or certified mail, the return post office receipt shall be proof of service. When service is made by private delivery service, the receipt from that service showing delivery shall be proof of service. When service is made in any other manner authorized by these rules, verified proof of service shall be made by oath or affirmation of the person or party serving the papers or process. Disputes with respect to proper service will be resolved by the commission or administrative law judge designated by the commission.

(5)   The commission or administrative law judge designated by the commission may decline to consider any document or pleading not served in accordance with these rules. The commission or administrative law judge designated by the commission shall decline to consider any unfair labor practice charge filed under R 423.151 that is not served within the applicable period of limitations.

History: 2002 AACS.

R 423.183   Computation of time.

(4) A bargaining representative representing public school employees alleging an illegal lockout of public school employees under section 2a of PERA shall notify the commission, in writing, on a form provided by the commission, which shall be accompanied by an affidavit signed by an agent of the bargaining representative.

(5) The initial notice shall contain both of the following:

(a) The name and address of the public school employer allegedly liable under section 2a of PERA.

(b) An affidavit which is signed and dated by an agent of the bargaining representative and which includes all of the following information supported by specific facts:

(i) A statement of how the affiant has personal knowledge of the facts recited in the affidavit.

(ii) A statement of the actions of the public school employer taken in order to bring pressure upon the affected employees or the bargaining representative, or both, to accept the employer's terms of settlement of a labor dispute.

(iii) The date of commencement of the lockout.

(iv) The number of days of the lockout.

(v) Whether the lockout is continuing.

(6) Upon filing a written notice and affidavit with the commission, the bargaining representative shall simultaneously serve the public school employer with a copy of the written notice and affidavit by first-class mail, with postage prepaid. The notice shall state that the bargaining representative has filed a written notice with the commission that an illegal lockout has occurred and that statutory penalties are being sought. Proof of service shall be filed with the commission together with the initial notice.

History: 2002 AACS.


R 423.192  Compliance; notice of hearing; service; postponement.

Rule 192. Upon receipt of notice and affidavit, the commission or its representatives shall review the notice and affidavit for compliance with R 423.191. If a filing is not in compliance with these rules, a filing may be rejected and proceedings shall not be held on the filing. Within 5 days of receipt of sufficient notice and affidavit, the commission shall serve a notice of hearing on the public school employer, the bargaining representative, and public school employees named in the notice. The notice of hearing shall fix the date of hearing not less than 15 days from the date of service by mail. The hearing will be conducted before the commission or an administrative law judge designated by the commission and shall be on the record. A postponement of the hearing will not be granted without the consent of the commission.

History: 2002 AACS.


R 423.193  Answers; defenses.

Rule 193. (1) A person or party alleged in the initial notice to have violated section 2 of PERA shall file an answer and any affirmative defenses with the commission within 10 days of the date of service of notice of hearing and shall simultaneously serve the party filing the initial notice.

(2) Only pleadings filed in a timely fashion in accordance with this rule shall be considered unless good cause is shown for late filing.

History: 2002 AACS.


R 423.194  Hearings.

Rule 194. (1) A hearing shall be convened, in accordance with proper notice, at which the parties shall be given the opportunity to present evidence of their claims and defenses.

(2) The commission decision and order shall be based on the record of the hearing.

(3) The commission or a designated administrative law judge shall conduct the hearing under R 423.171(2) to R 423.172. The hearing shall be public unless otherwise ordered by the commission or administrative law judge for good cause shown. If an administrative law judge or commissioner designated to conduct the hearing becomes unavailable after the hearing has opened, the commission may transfer the case to another administrative law judge or commissioner. A party is entitled, upon request, to a reasonable period at the close of the hearing for

R 423.431   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.432   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.433   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.434   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.435   Rescinded.

History: 1979 AC; 2002 AACS.

PART 4. ELECTIONS

R 423.441   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.442   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.443   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.444   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.445   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.446   Rescinded.

History: 1979 AC; 2002 AACS.

R 423.461   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.462   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.463   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.464   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.465   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.466   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.467   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.468   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.469   Rescinded.

History:  1979 AC; 2002 AACS.

R 423.470   Rescinded.

History:  1979 AC; 2002 AACS.

PART 7. SERVICE OF DOCUMENTS

R 423.471   Rescinded.

## TERM SHEET

GRS Participants who are subject to an ASF Recoupment (as defined in the Plan[1]) through reduction of their monthly pension (each, an ASF Distribution Recipient as defined in the Plan) but who wish to pay in a single lump sum the total amount of their ASF Recoupment, shall be provided a one-time opportunity to do so, subject to the following terms and conditions (the "ASF Recoupment Cash Option"):

1. No later than 7 days following the Effective Date, the City, through KCC, shall send a notice (the "Election Notice"), by first-class U.S. mail, to each ASF Distribution Recipient, notifying the recipient of the ASF Recoupment Cash Option and providing such recipient with an election form. The election form shall explain that the amount of the cash payment shall be the total amount of their ASF Recoupment as shown on their ballot unless the aggregate amounts of ASF Recoupment for recipients wishing to participate in the ASF Recoupment Cash Option exceeds the ASF Recoupment Cash Option Cap, in which case the cash payment will be as set forth in Paragraph 3 below.

2. Each ASF Distribution Recipient shall have 35 days from the date on the election form (which shall be the date on which the election form is mailed) (the "Election Date") to return the election form to KCC. For an election form to be valid, it must be received by KCC by the Election Date.

3. The ASF Recoupment Cash Option shall be capped at $30 million (the "ASF Recoupment Cash Option Cap"). If ASF Distribution Recipients timely return properly completed election forms by the Election Date that represent ASF Recoupment amounts that, in the aggregate, exceed the ASF Recoupment Cash Option Cap, then each such ASF Distribution Recipient will be permitted to participate in the ASF Recoupment Cash Option for his or her Pro Rata portion of the ASF Recoupment Cash Option Cap; such recipient's remaining portion of his or her ASF Recoupment amount will be annuitized as provided for in the Plan.

4. ASF Distribution Recipients who timely elect the ASF Recoupment Cash Option Cap shall be notified by GRS (the "Final Cash Payment Notice") of their final ASF Recoupment Cash Option amount following the Pro Rata analysis in Paragraph 3, which notice shall be mailed by the GRS no later than 14 days after the Election Date. ASF Distribution Recipients will be given the later of 90 days after the Effective Date or 50 days following GRS mailing of the Final Cash Payment Notice to make their payment. The payment must be by cashier's check or wire transfer. No personal checks will be accepted. If the payment is not timely wired or received by the deadline, GRS will notify the ASF Distribution Recipient of the failure to timely pay, and ASF Recoupment will be made through diminution of their monthly pension as currently provided in the Plan. The deadline will be absolute. There will be no exceptions for any reason for a late payment. The calculation of each electing ASF Distribution Recipient's ASF Recoupment Cash

---

[1]   Capitalized terms used herein and not defined have the meanings ascribed to them in the Plan.

Option payment amount shall not be adjusted under any circumstances, including as a result of any default by any other electing ASF Distribution Recipient to timely remit payment pursuant to the Final Cash Payment Notice.

Dear General

If someone holds a gun to your head, and says you have a choice, "give me some of your money or give me that sum plus 8x times 4.5%+cola plus 6 X more money plus Cola or 27% reduction plus loss of cola plus unlimited recoupment of your annuity. Do you argue with a gun at your head? I dont. This is analogous to contract under duress. You are consenting to your own robbery because you afraid of being thrown into poverty. A retiree who worked for the auditor generals office said the health care plan reductions were even worse than this travesty of general pension reductions, loss of Cola, and claw back on the annuities.

Exibit 1 :

June 19, 2014 Letter from the General Retirement System of the City of Detroit. to Beneficiaries of the Detroit General Retirement System, as holders of Claims in Class 11 (eleven)

note :

"Please note that if you have already returned your ballot and you wish to change your vote, you can submit a new ballot prior to the voting deadline of July 11, 2014."

While the retirement system reccomends acceptance of the plan, .... read the plan and accompaning disclosure statement carefully and consult counsel of his/her choosing."

..(@ _? per hour, an expense not covered by the bankruptcy court.)

This agreement is unfair to people still working for the City of Detroit. If they have anything less than 10 years of work experience, they are not vested for those years, regardless of whether they work another 10 years, etc. They did not choose to go into bankruptcy. Snyder, Orr, Jones Day & Barefire choose to put the City of Detroit into bankruptcy (illegally), and as controllers of the budget they have done what they could since they took power, to spend Detroit into deficits, and cash flow imbalances that were not there until after they took control.

I talked with a fire battalion chief who has worked 30 years, is not ready to retire, but by not retiring by the end of this year, he will lose his rights to health care coverage under the proposed Vebra. So no benefits of getting a better rate by being in a group will be there for our future retirees. By then if Alex et al are

successful in right to work ~~cost~~ for and
retire with LESS, everyone will be working
at will, and controlled by the contractor with
the biggest bribe or club, whichever ~~is~~
needed,

As a comparison of ~~this~~ election ~~is~~
procedures on the acceptance or Rejection
of the plan of Mal-Adjustment, I offer the
exhibit from Denise Hennieburg, who
works in the Department of Consumer and Industry
Services for the ~~Michigan~~ Employment Relations Commission;
under ~~its~~ ~~Rules~~ "General Rules," Part 4,;
R 423.132
"Rule 132 (1) Pursuant to section 25 of LMA,
a petition for fact finding may be filed by a
public employer, a collective bargaining Representative
of public employees, or, if no representative has
been designated or selected, by a majority of
any given group of public employees."
We did not pick the Emergency Manager,
Snyder did; we did not pick Jones Day, the emergency
~~the citizens & workers of Detroit~~
~~manager did,~~ we ~~did~~ the ~~city~~ retirees did not pick

the general retirement committee, the court trustee did; We could not a majority of we retirees could not petition to choose our own representatives, without a list of retirees and the contact information. The appointed retiree committee and part elected, part appointed by the politicians (mayor and city council) who are employees at will under the EM's thumb, General Retirement Fund board is only partially elected by the pensioners whose interest they are supposed to protect and represent.

Jones Day does not represent the true long and short term interests of the city, nor does the Retirement Committee and General Pension Board represent the true short & long term interests of the city. The bankruptcy is being used to colonize the city (town) and bankrupt the pensioners, while saving the art for the Gentrifiers.

(4) "A voter shall fold the ballot so that no part of its face is exposed, and, on leaving the polling booth, shall personally deposit the ballot in the ballot box. If the election is continued for more than one (1) period the ballot box shall remain sealed until the subsequent opening of the polls, and shall so remain in possession of the election agent until time for the counting of the ballots.

Kevin Orr could not have truthfully said the ballots were coming in 2-to-one in favor of accepting the plan of Maladjustment if they were not opening the ballots up as they came in. Why else would they continue their indoctrination barage and tell us we can change our vote on a new ballot and by the way we reccomend you vote for the lessor of two evils, or the lessor, at least in the beginning take away.

How can we afford to observe or challenge an election mailed to California. The bankruptcy court did not agree to cover OUR expenses just the appointee's.

(5) "An absentee ballot shall be mailed to an individual eligible to vote..." "The voted ballot shall be mailed ~~to~~ or delivered by the absentee voter to an election agent in the official envelopes provided for this purpose. The envelopes containing the ballots shall be opened at the time of counting of the ballots and placed in the ballot boxes."

(6) "In a mail ballot election, to be valid, each voted ballot shall be personally & individually mailed or delivered by the voter to the election agent in the official envelopes provided for this purpose." (2 envelopes to provide a secret ballot Which is particularly important for vested ~~to~~ voters still working. The lack of secrecy may make them afraid to Reject the plan in the fact of possible employment discrimination.

The person who is younger, has worked more years at a higher salary, gets a weightier vote than someone who is older, worked the same no. of years at the same salary; a person who worked fewer years at a high salary, may get a weightier vote than someone who worked many more years but at a lesser salary. A worker who worked many years but at a low salary probably could not even afford to put money into an annuity, and certainly should not be penalized by having his pension reduced and the COLA eliminated on the monthly pension check.

A current worker who has less than 10 years for vesting as of the bankruptcy cut off date should be able to keep the pension credits they have, up to the time of the cutoff date which was set by the Emergency Bankruptcy;

the unvested employee did not break the contract with the city as presently represented by the EM and Jones Day. The EM, Jones Day, & the bankruptcy court are breaking the contract with the employee; thus the employee should be eligible for the pension they have earned so far, whether they have met the "10 year vesting rule or not."

The pensioners are asking for justice. The city of Detroit (Jones Day & EM) are saying they will issue new bonds that may cause some bond holders losses which they will deduct from their taxes. But per Snyder, the retirees will pay taxes on their pensions and will not be able to write off their loss of part of their pension.

The city of Detroit, under the EM rule has OK'ed wasteful use of our money on capital projects that give Welfare to