UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re | No. 13-53846 |
|---|---|
| CITY OF DETROIT, MICHIGAN, | Chapter 9 |
| Debtor. | HON. STEVEN W. RHODES |

**EXHIBIT 15 – PART 2**

**APPELLEE STATE OF MICHIGAN'S DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL**
In connection with Notice of Appeal filed by Johnathan Brown
[Dkt. #8469]

| Item | Date Filed | Docket Number | Description |
|---|---|---|---|
| 15 | 8/20/2014 | 6908 | Sixth Amended Chapter 9 Plan Sixth Amended Plan for the Adjustment of Debts of the City of Detroit Filed by Debtor In Possession City of Detroit, Michigan (Attachments: # 1 Exhibit I.A.9 through I.A.279 # 2 Exhibit I.A.285 through I.A.334 # 3 Exhibit I.A.341 through III.D.2) |

conditions contained in the last sentence of Part I(5) occur, then Plaintiffs are free to reinstate the Adversary Proceeding. Solely for purposes of an Enforcement Action, the City consents, pursuant to 11 U.S.C. § 904, to the Bankruptcy Court's hearing and deciding such Enforcement Action.

**3.** **Counterparts.** This Agreement may be signed in counterparts, and each counterpart shall be treated as an original.

**4.** **Good Faith.** As evidenced by the undersigned acknowledgment of Judge Wiley Daniel, Mediator, this Agreement was negotiated and entered into by all parties in good faith.

**5.** **Plan of Adjustment.** The terms of this Agreement, including Part III(4), shall be incorporated into any plan of adjustment filed by the City and confirmed by the Bankruptcy Court in 2014 in this bankruptcy case.

Agreed,

_____
Evan Miller, attorney for Defendants

_____
Sam J. Alberts, attorney for the Committee

_____
Brian O'Keefe, attorney for Detroit Retired City Employees Association and Retiree Police and Fire Fighters Association

_____
Richard Mack, attorney for AFSCME Sub-Chapter 98, City of Detroit Retirees

Acknowledged:

_____
Judge Wiley Daniel, Mediator

conditions contained in the last sentence of Part I(5) occur, then Plaintiffs are free to reinstate the Adversary Proceeding. Solely for purposes of an Enforcement Action, the City consents, pursuant to 11 U.S.C. § 904, to the Bankruptcy Court's hearing and deciding such Enforcement Action.

      **3.**    <u>**Counterparts.**</u>  This Agreement may be signed in counterparts, and each counterpart shall be treated as an original.

      **4.**    <u>**Good Faith.**</u>  As evidenced by the undersigned acknowledgment of Judge Wiley Daniel, Mediator, this Agreement was negotiated and entered into by all parties in good faith.

      **5.**    <u>**Plan of Adjustment.**</u>  The terms of this Agreement, including Part III(4), shall be incorporated into any plan of adjustment filed by the City and confirmed by the Bankruptcy Court in 2014 in this bankruptcy case.


Agreed,


_____

Evan Miller, attorney for Defendants


_____

Sam J. Alberts, attorney for the Committee


_____

Brian O'Keefe, attorney for Detroit Retired City Employees Association and Retiree Police and Fire Fighters Association


_____

Richard Mack, attorney for AFSCME Sub-Chapter 98, City of Detroit Retirees


Acknowledged:


_____

Judge Wiley Daniel, Mediator

ATI-2594662v5

-10-

conditions contained in the last sentence of Part I(5) occur, then Plaintiffs are free to reinstate the Adversary Proceeding. Solely for purposes of an Enforcement Action, the City consents, pursuant to 11 U.S.C. § 904, to the Bankruptcy Court's hearing and deciding such Enforcement Action.

      **3.**    **Counterparts.** This Agreement may be signed in counterparts, and each counterpart shall be treated as an original.

      **4.**    **Good Faith.** As evidenced by the undersigned acknowledgment of Judge Wiley Daniel, Mediator, this Agreement was negotiated and entered into by all parties in good faith.

      **5.**    **Plan of Adjustment.** The terms of this Agreement, including Part III(4), shall be incorporated into any plan of adjustment filed by the City and confirmed by the Bankruptcy Court in 2014 in this bankruptcy case.

Agreed,

_____

Evan Miller, attorney for Defendants

_____

Sam J. Alberts, attorney for the Committee

_____

Brian O'Keefe, attorney for Detroit Retired City Employees Association and Retiree Police and Fire Fighters Association

_____

Richard Mack, attorney for AFSCME Sub-Chapter 98, City of Detroit Retirees

Acknowledged:

_____

Judge Wiley Daniel, Mediator

conditions contained in the last sentence of Part I(5) occur, then Plaintiffs are free to reinstate the Adversary Proceeding. Solely for purposes of an Enforcement Action, the City consents, pursuant to 11 U.S.C. § 904, to the Bankruptcy Court's hearing and deciding such Enforcement Action.

3. **Counterparts.** This Agreement may be signed in counterparts, and each counterpart shall be treated as an original.

4. **Good Faith.** As evidenced by the undersigned acknowledgment of Judge Wiley Daniel, Mediator, this Agreement was negotiated and entered into by all parties in good faith.

5. **Plan of Adjustment.** The terms of this Agreement, including Part III(4), shall be incorporated into any plan of adjustment filed by the City and confirmed by the Bankruptcy Court in 2014 in this bankruptcy case.

Agreed,

_____
Evan Miller, attorney for Defendants


_____
Sam J. Alberts, attorney for the Committee


_____
Brian O'Keefe, attorney for Detroit Retired City Employees Association and Retiree Police and Fire Fighters Association


_____
Richard Mack, attorney for AFSCME Sub-Chapter 98, City of Detroit Retirees


Acknowledged:

_____
Judge Wiley Daniel, Mediator

# EXHIBIT 1

(See next page)

January 2014



# Certificate of Coverage
# City of Detroit Retirees

## CLASS I
### Diagnostic and Preventive:
Exams, X-Rays, Prophylaxis, Fluoride -up to age 19                                **100%**

## CLASS II
### Restorative:
Fillings, Root Canals, Routine Extractions                                        **100%**

## CLASS III
### Prosthetics:
Crowns, Bridges, Partials, Dentures, Space Maintainers                            **80%**

## CLASS IV
### Specialty Care:
Periodontics
Endodontics
Oral Surgery                                                                      **70%**

## ORTHODONTICS (Interceptive excluded)
Lifetime Benefit Maximum: Dependents up to age 19                                 **$3,000**
Lifetime Benefit Maximum: Subscriber and Spouse                                   **$3,000**

**Out-Of-Area Emergency Coverage $100 reimbursement**

**Annual Maximum:**          $1,600.00
**Annual Renewal:**          **07/01**
**Membership Card Reads:**   Detroit Retirees

| Rate Type | Current Rates |
|---|---|
| Single Person | $23.73 |
| Family of two | $38.83 |
| Family | $57.17 |

13-53846-tjt   Doc 8906-19   Filed 12/19/14   Entered 12/19/14 12:46:59   Page 7 of 50
13-53846-swr   Doc 8906-2-9   Filed 08/20/14   Entered 08/20/14 23:27:94   Page 17 of
165

**EXHIBIT I.A.292**

SCHEDULE OF SECURED GO BOND DOCUMENTS

## SCHEDULE OF SECURED GO BOND DOCUMENTS

| Secured GO Bond Documents | Series of Secured GO Bonds | Balance as of Petition Date |
|---|---|---|
| Resolution of the City Council adopted February 23, 2010<br><br>Finance Director's Order dated March 11, 2010<br><br>Master Debt Retirement Trust Indenture dated as of March 1, 2010, as supplemented and amended (the "Master Indenture"), between the City of Detroit and U.S. Bank National Association, as trustee | Distributable State Aid General Obligation Limited Tax Bonds, Series 2010 | $252,475,366 |
| Resolution of the City Council adopted July 20, 2010<br><br>Finance Director's Order dated December 9, 2010<br><br>Master Indenture | Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010(A) (Taxable-Recovery Zone Economic Development Bonds – Direct Payment) | $101,707,848 |
| Resolution of the City Council adopted March 27, 2012<br><br>Finance Director's Order dated March 28, 2012 (Series 2012(A2) and Series 2012(B2))<br><br>Finance Director's Order dated July 3, 2012 (Series 2012 (A2) and  Series 2012(B2))<br><br>Finance Director's Order dated August 16, 2012 (Series 2012(A2-B), Series 2012 (A2) and Series 2012(B2))<br><br>Master Indenture | Self Insurance Distributable State Aid Third Lien Bonds (Limited Tax General Obligation), Series 2012(A2) | $39,254,171 |
| Resolution of the City adopted March 27, 2012<br><br>Finance Director's Order dated August 16, 2012 (Series 2012(A2-B), Series 2012 (A2) and Series 2012(B2))<br><br>Master Indenture | Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(A2-B) | $31,037,724 |

| Secured GO Bond Documents | Series of Secured GO Bonds | Balance as of Petition Date |
|---|---|---|
| Resolution of the City Council adopted March 27, 2012<br><br>Finance Director's Order dated March 28, 2012 (Series 2012(B))<br><br>Finance Director's Order dated July 3, 2012 (Series 2012(B))<br><br>Finance Director's Order dated August 16, 2012 (Series 2012(B))<br><br>Master Indenture | General Obligation Distributable State Aid Third Lien Capital Improvement Refunding Bonds (Limited Tax General Obligation), Series 2012(B) | $6,469,135 |
| Resolution of the City Council adopted March 27, 2012<br><br>Finance Director's Order dated March 28, 2012 (Series 2012(A2) and Series 2012(B2))<br><br>Finance Director's Order dated July 3, 2012 (Series 2012 (A2) and Series 2012(B2))<br><br>Finance Director's Order dated August 16, 2012 (Series 2012(A2-B), Series 2012 (A2) and Series 2012(B2))<br><br>Master Indenture | Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(B2) | $54,055,927 |

**EXHIBIT I.A.318**

STATE CONTRIBUTION AGREEMENT

13-53846-tjt   Doc 8904-19  Filed 12/09/14  Entered 12/09/14 23:24:59  Page 11 of 50
13-53846-swr   Doc 6906-2  Filed 08/20/14  Entered 08/20/14 13:27:34  Page 11 of 50
165

# CONTRIBUTION AGREEMENT

This Contribution Agreement ("Agreement"), dated as of _____, 2014, is made by and among the Michigan Settlement Administration Authority, a Michigan body public corporate (the "Authority"), the General Retirement System for the City of Detroit, the Police and Fire Retirement System for the City of Detroit and the City of Detroit (the "City").

## RECITALS

A.    The City filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code on July 18, 2013 (the "Chapter 9 Case") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Court").

B.    During the course of the Chapter 9 Case, the City has asserted that the City's Police and Fire Retirement System (the "PFRS" or a "System") and the General Retirement System (the "GRS" or a "System" and collectively with the PFRS, the "Systems") are underfunded.

C.    During the course of the Chapter 9 Case, there have been suggestions that the State of Michigan (the "State") may be obligated to pay all or a portion of the underfunding of pension benefits payable to retirees, a suggestion the State vigorously disputes.

D.    As part of the mediation process in the Chapter 9 Case, the mediators asked the State and other parties to assist in reducing the amount of underfunding in the PFRS and GRS pension funds by providing settlement funds for the benefit of pensioners that would not be otherwise available.

E.    As part of its determination that the City was eligible to file the Chapter 9 Case, the Court determined that pension obligations of the City can be impaired or diminished in the Chapter 9 Case and are not protected from such impairment or diminution by the State Constitution.

F.    In support of confirmation of the City's Fourth Amended Plan of Adjustment dated May 5, 2014 (as may be further amended from time to time, the "Plan"), the State has agreed, subject to satisfaction of the terms and conditions set forth herein and in the Plan, to make a contribution to the GRS and PFRS in return for releases from, among others, the GRS and PFRS as set forth in the Support and Release Agreement entered into by the State and each of the Systems in connection with this matter.

G.    On June 20, 2014, the Authority was established as the disbursement agent for the State with respect to the State Contribution (as defined below).

H.    Capitalized terms used in this Agreement but not defined have the same meanings as set forth in the Plan.

NOW THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

1

1.     State Contribution.    On the later of (a) the date on which the Conditions Precedent have been satisfied, and (b) 60 days after the Effective Date of the Plan, the Authority shall disburse $98,800,000 to GRS and $96,000,000 to PFRS (collectively, the "State Contribution") for the purpose of increasing the assets of the PFRS and GRS.   The total aggregate State Contribution is equal to the net present value of $350,000,000 payable over 20 years determined using a discount rate of 6.75%, which results in a total contribution by the State of $194,800,000.  The State Contribution shall only be used to fund payments to holders of GRS Pension Claims and PFRS Pension Claims, each as defined in the Plan.

2.     Governance Requirements of the GRS and PFRS.  At all times during the 20 year period following the disbursement of the State Contribution to the GRS and PFRS, the GRS and PFRS each must establish an investment committee (the "Investment Committee") for the purpose of making recommendations to, and approving certain actions by, the respective System's board of trustees and/or making determinations and taking action under and with respect to Investment Management, as set forth in the terms and conditions enumerated on **Exhibit A** and **Exhibit B**, respectively, each attached to and incorporated by reference into this Agreement.

3.     Income Stabilization Funds and Income Stabilization Payments.  The City, GRS and PFRS shall establish an income stabilization program and amend the governing documents for GRS and the governing documents for PFRS to include the following:

a.     A supplemental pension income stabilization payment (the "Income Stabilization Payments") payable on an annual basis beginning not later than 120 days after the Effective Date, to each Eligible Pensioner equal to the lesser of (a) the amount needed to restore the Eligible Pensioner's reduced pension benefit to the amount of the pension benefit that the Eligible Pensioner received from GRS or PFRS in 2013, or (b) the amount needed to bring the total annual household income of the Eligible Pensioner up to 130% of the Federal Poverty Level in 2013.

b.     In addition, to the extent an Eligible Pension's Estimated Adjusted Annual Household Income in any calendar year is less than 105% of the Federal Poverty Level in that year, the Eligible Pensioner will receive an additional benefit ("Income Stabilization Benefit Plus"). The Income Stabilization Benefit Plus shall be equal to the lesser of either (a) 100% restoration of pension benefits, including escalators and cost of living adjustments; or (b) the amount needed to bring the Eligible Pensioner's Estimated Adjusted Annual Household Income in that calendar year up to 105% of the Federal Poverty Level in that year.

c.     An Eligible Pensioner's "Estimated Adjusted Annual Household Income" shall be calculated as follows:  (i) the annual pension benefit amount paid in 2013 shall be subtracted from the Eligible Pensioner's 2013 total household income (per their (or in the case of minor children, their legal guardian's) 2013 income tax returns or equivalent documentation) as adjusted for inflation or Social Security COLA increases to create a base

2

additional income amount, plus (ii) the following three items as applicable, (x) the reduced pension benefit that GRS will pay the Eligible Pensioner for that year, (y) any GRS pension restoration due to an improved GRS funding level, and (z) the Eligible Pensioner's Income Stabilization Benefit. Notwithstanding the foregoing, Income Stabilization Payments, including the Income Stabilization Benefit Plus, under both GRS and PFRS shall not exceed $20 million in aggregate.

d.  A separate recordkeeping sub-account called the "Income Stabilization Fund" will be set up under each of GRS and PFRS for the sole purpose of paying the Income Stabilization Payments to Eligible Pensioners. The assets credited to the sub-accounts will be invested on a commingled basis with the applicable System's assets and will be credited with a pro-rata portion of the System's earnings and losses.

e.  Amounts credited to the Income Stabilization Fund, including the Assigned UTGO Bond Tax Proceeds, may not be used for any purpose other than the payment of Income Stabilization Payments to Eligible Pensioners, except as expressly provided in subparagraph (f) below.

f.  In 2022, provided that the State has not issued a certificate of default with respect to a System at any time prior to 2022, the Investment Committee for that System shall conduct a valuation to determine the Income Stabilization Payments anticipated to be made from the System in the future, in order for the System to fulfill the obligation to make Income Stabilization Payments (the "Estimated Future Liability"). In the event that 75% of the independent members of the Investment Committee determine that the GRS or PFRS Income Stabilization Fund is credited with assets in excess of its Estimated Future Liability (the "Excess Assets"), the Investment Committee may, in its sole discretion, recommend to the Board of Trustees that the Excess Assets, but not more than $35 million, be used to fund that System's Adjusted Pension Benefits. The Investment Committee shall have the right to engage professionals to assist in this task as necessary, and such expenses shall be paid by the Systems. If any funds remain in the GRS or PFRS Income Stabilization Fund on the date upon which no Eligible Pensioners under their respective System are living, the remainder of that System's Income Stabilization Fund shall be used to fund that System's Adjusted Pension Benefits.

g.  "Eligible Pensioners" are those retirees or surviving spouses who are at least 60 years of age or those minor children receiving survivor benefits from GRS or PFRS, each as of the Effective Date, whose pension benefit from GRS or PFRS will be reduced by the confirmed Plan, and who have a total household income equal to or less than 140% of the Federal Poverty Line in 2013 (per their (or in the case of minor children, their legal guardian's) 2013 income tax returns or equivalent documentation).

3

13-53846-swr  Doc 8904-19  Filed 12/09/14  Entered 12/09/14 23:48:59  Page 14 of 50
13-53846-tjt  Doc 8904-19  Filed 12/09/14  Entered 12/09/14 23:48:59  Page 14 of 50
165

No new persons will be eligible to receive an Income Stabilization Payment at any time in the future, and any minor child receiving survivor benefits shall cease to be an Eligible Pensioner after he or she turns 18 years of age.

h.   The initial determination of Eligible Pensioners, and the amounts of Income Stabilization Payments payable to Eligible Pensioners shall be made by the State in its sole discretion. The State shall transmit the list of Eligible Pensioners to the Investment Committee and the Board of Trustees of GRS and PFRS, as applicable. The Board of Trustees, with the assistance of the Investment Committee of GRS and PFRS, shall be responsible for properly administering the respective Income Stabilization Fund and annually certifying to the Treasurer that it has properly administered the requirements for eligibility and payment of benefits with respect to Eligible Pensioners.

4.   <u>Conditions Precedent</u>.  The Authority's obligations under this Agreement are not effective or enforceable until each of the following conditions (the "<u>Conditions Precedent</u>") have been met to the satisfaction of the Authority and the Treasurer, unless any one or more of such conditions are waived in a writing executed by the Authority and the Treasurer:

a.   The Authority receives the State Contribution from the State.

b.   An endorsement of the Plan by the Official Retiree Committee which will include a letter from the Official Retiree Committee as part of the Plan solicitation package recommending to Classes 10 and 11 a vote in favor of the Plan, or equivalent assurances from member organizations representing a majority of retirees in the respective classes.

c.   Cessation of all litigation, including the cessation of funding of any litigation initiated by any other party, as it related to the City (a) challenging PA 436 or any actions taken pursuant to PA 436, including but not limited to, a dismissal with prejudice of the cases set forth on **Exhibit D**, or (b) seeking to enforce Article IX, Section 24 of the Michigan Constitution; provided, however, (i) until the State Contribution is received by the Systems, the Systems agree to stay any pending litigation described in this subparagraph, and (ii) that as a condition precedent to the GRS and the PFRS dismissing any pending litigation described in this subparagraph that they are prosecuting, the GRS and the PFRS have the right to receive written confirmation from the Authority that the Authority is prepared and authorized to disburse the State Contribution in accordance with this Agreement and the Plan, subject only to the dismissal by the GRS and PFRS of any pending litigation described in this subparagraph that they are prosecuting.

d.   Active support of the Plan by, a release of and covenant not to sue the State from, and an agreement not to support in any way (including

4

funding) the litigation described in subparagraph 4(c) by the parties listed on **Exhibit C**, or equivalent assurance of litigation finality (which, as to the Systems, shall be deemed satisfied by the execution of the Support and Release Agreement to be entered into by the State and each of the Systems in connection with this matter).

e.    Classes 10 and 11 accept the Plan.

f.    By December 31, 2014, the Court enters a final, non-appealable order confirming the Plan that includes, at a minimum, the following:

    i.    A release of the State and State Related Entities by each holder of a Pension Claim of all Liabilities arising from or related to the City, the Chapter 9 Case, including the authorization given to file the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution that such party has, had or may have against the State and any State Related Entities.

    ii.    A requirement that the governing documents of GRS and the governing documents of PFRS be amended to include:

        a)    the governance terms and conditions set forth in Paragraph 2, Exhibit A and Exhibit B of this Agreement; and

        b)    the Income Stabilization Payments and Income Stabilization Fund described in Paragraph 3 of this Agreement.

    iii.    Approval of, and authority for the City to enter into, the UTGO Settlement.

    iv.    A requirement that the City irrevocably assigns the right to receive not less than an aggregate amount of $20,000,000 of the payments on the Reinstated Stub UTGO Bonds to the Income Stabilization Funds of the GRS and PFRS. Such payments will be made to the Income Stabilization Funds in the form of annual installment payments over a 14 year period, pursuant to a payment schedule approved by the State.

    v.    Approval of, and authority for the City to enter into, the DIA Settlement.

    vi.    Agreement to and compliance with MCL 141.1561 and cooperation with the transition advisory board appointed pursuant to MCL 141.1563, or compliance with any new legislation that is enacted regarding post-bankruptcy governance.

g.   Evidence satisfactory to the State of an irrevocable commitment by:

   i.   The Foundations to fund $366,000,000 (or the net present value thereof) as part of the DIA Settlement; and

   ii.  The DIA Corp. to fund $100,000,000 (or the net present value thereof) as part of the DIA Settlement.

h.   The Plan Effective Date occurs on or before April 1, 2015.

5.   <u>Non-occurrence of Conditions Precedent</u>.   If the Conditions Precedent are not met to the satisfaction of the Authority and the Treasurer on or before April 1, 2015, upon written request of the Treasurer, the Authority shall remit the State Contribution to the Department and shall have no further obligations under this Agreement.

6.   <u>Default by GRS and PFRS and Remedies</u>.

a.   A System will be in default if the System has not complied with any of the terms and conditions set forth in the Plan, each System's respective governing documents, or this Agreement, including but not limited to failing to make the required Income Stabilization Payments or using funds in the Income Stabilization Fund for unauthorized purposes.

b.   In the event of default by a System, and failure of the System to promptly cure such default to the satisfaction of the Treasurer within the time period reasonably established by the Treasurer, no portion of the total State Contribution to the defaulting system, as adjusted for earnings and losses, may be taken into consideration by the System during the remainder of the 20 year period following the date of such default for purposes of determining whether benefits reduced by the Plan may be restored. Notwithstanding the foregoing, in the event that a default is cured in a subsequent year, the Treasurer may determine in his or her sole discretion (taking into consideration such factors as the financial impact of the default on the System) that the defaulting system may once again include its State Contribution, as adjusted for earnings and losses, for purposes of determining whether benefits reduced by the Plan may be restored.

c.   Each Board of Trustees shall provide reports to the Treasurer on a semi-annual basis and at such other times as the Treasurer reasonably may request in order for the Treasurer to determine that the conditions set forth herein have been satisfied. The Treasurer shall provide either a certificate of compliance, or in the event of a default that has not been cured to the Treasurer's satisfaction, a notice of default, upon request of the System or any of the independent members of the Board of Trustees.

6

d.　Notwithstanding the foregoing, in the event of a default, the Treasurer and the Authority shall have the right to pursue all available legal and equitable remedies against the Board of Trustees for the defaulting System, the Investment Committee, or any other person.

7.　Execution in Counterparts.　This Agreement may be executed in counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

8.　Governing Law/Jurisdiction.　This Agreement shall be construed in accordance with the laws of the State of Michigan, without reference to its conflict of law provisions, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.　The Bankruptcy Court of the Eastern District of Michigan shall have exclusive jurisdiction over any action or proceeding solely with respect to this Agreement, and each party, to the extent permitted by law, agrees to submit to such jurisdiction and to waive any defense based on venue or jurisdiction of such court.

9.　Amendment.　This Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

10.　Limitation of Liability.　The obligation to make the State Contribution is not a general obligation or indebtedness of the State or the Authority and is subject to satisfaction of the conditions described herein.　Furthermore, neither the State nor the Authority has any liability or obligation arising from or related to the contributions and funding of the Income Stabilization Fund of each System.　Notwithstanding anything contained herein to the contrary, no State Related Entity or board member of the Authority shall have any liability for the representations, warranties, covenants, agreements or other obligations of the State or the Authority hereunder or in any of the certificates, notices or agreements delivered pursuant hereto.

11.　Severability.　If any one or more of the covenants, agreements or provisions of this Agreement shall be determined by a court of competent jurisdiction to be invalid, the invalidity of any such covenants, agreements and provisions shall in no way affect the validity or effectiveness of the remainder of this Agreement, and it shall continue in force to the fullest extent permitted by law.

12.　Headings.　Any headings preceding the text of the several articles and sections hereof, and any table of contents or marginal notes appended to copies hereof, shall be solely for convenience or reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

[Remainder of Page Intentionally Left Blank – Signatures on Following Page]

7

**MICHIGAN SETTLEMENT ADMINISTRATION AUTHORITY**


By: _____
Title: Authorized Officer


**GENERAL RETIREMENT SYSTEM OF THE CITY OF DETROIT**


By: _____
Title: Authorized Officer


By: _____
Title: Authorized Officer


**POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT**


By: _____
Title: Authorized Officer


By: _____
Title: Authorized Officer


**CITY OF DETROIT**

By: _____
Title: Emergency Manager

**EXHIBIT A – GRS Governance Terms**

13-53846-tjt   Doc 8904-19   Filed 12/09/14   Entered 12/09/14 21:46:59   Page 20 of 50
13-53846-swr   Doc 6904-2   Filed 08/20/14   Entered 08/20/14 23:27:34   Page 30 of 50
165

*In re City of Detroit, Michigan*

# INVESTMENT COMMITTEE GOVERNANCE
## FOR GENERAL RETIREMENT SYSTEM

| | |
|---|---|
| PREAMBLE | This document was prepared to set forth the pension governance requirements under the State Contribution Agreement (as that term is defined in the City's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, as amended from time to time) applicable to the General Retirement System of the City of Detroit (GRS). |
| SCOPE OF SETTLEMENT | The GRS is currently administered by a ten (10) member Board of Trustees (the "Board") that is vested with the fiduciary authority for the general administration, management and operation of the Retirement System. The Board currently makes all administrative, actuarial and investment related decisions for the GRS. Upon the Effective Date under the POA, but subject to consummation of the State Contribution Agreement, there shall be established, by appropriate action and amendments to governing documents, an Investment Committee ("IC") at GRS which shall be vested with the authority and responsibilities as outlined herein for a period of twenty (20) years after the Effective Date of the POA. All administrative, managerial, and operational matters not addressed in this Term Sheet shall continue to be addressed by the Board in the ordinary course of its affairs. |
| INVESTMENT COMMITTEE | The IC shall consist of seven (7) voting members consisting of:<br>  i.  Five (5) Independent Members;<br>  ii.  One (1) Employee Member; and<br>  iii.  One (1) Retiree Member.<br>Collectively, or individually, "Members" or "Member."<br><br>At least two (2) of the five (5) Independent Members of the committee shall be residents of the State of Michigan. None of the Independent Members shall be a party in interest as defined by MCL 38.1132d (4) to the City or the GRS.<br><br>Each Independent Member of the IC shall have expert knowledge or extensive experience with respect to either: (a) economics, finance, or institutional investments; or (b) administration of public or private retirement plans, executive management, benefits administration or actuarial science. At least one (1) of the IC Independent Members shall satisfy the requirements of (a) above and at least one (1) of the IC Independent Members shall satisfy the requirements of (b) above.<br><br>The five (5) initial IC Independent Members shall be selected by mutual agreement of the appropriate representatives of the State, the City and the Board, in consultation with the Foundation for Detroit's |

Future, and named in the POA. Successor Independent Members shall be recommended by a majority of the remaining Independent Members and confirmed by the Board and the State Treasurer in consultation with the Foundation for Detroit's Future, in accordance with such rules and regulations as may be adopted by the IC, provided such rules and regulations are not inconsistent with the POA and this agreement. In the event the Board and the State Treasurer cannot agree on the successor Independent Member within thirty (30) days of the receipt of the recommendation of the IC, the remaining Independent Members of the IC shall appoint the successor Independent Member.

If no mutual agreement is reached as to the selection of one or more of the initial IC Independent Members by the time of confirmation of the City's Plan of Adjustment, then the Bankruptcy Court shall select the Independent Members necessary to fill the five (5) initial IC Independent Member positions for which no agreement has been reached.

In the event the Bankruptcy Court selects the initial Independent Members as described immediately above, successor Independent Members shall be appointed in the same manner as the Independent Member being replaced, as described immediately above, after three (3) weeks' notice to the Board of the individuals chosen, in accordance with such rules and regulations as may be adopted by the IC, provided such rules and regulations are not inconsistent with the POA and this agreement.

The Employee Member shall be an employee-elected Member from the Board appointed by the Board. The initial Employee Member will be _____.

The Retiree Member shall be a retiree-elected Member from the Board appointed by the Board. The initial Retiree Member will be _____.

The terms of office of the initial IC Independent Members shall be staggered at the time of appointment so that Independent Members shall have varying initial terms of office, with one each having a 2, 3, 4, 5 and 6 year term. Each initial Independent Member shall serve until the expiration of his/her initial term. After the initial term of office, the term of office of the IC Independent Members shall be six years. Each successor Independent Member shall be selected in accordance with the provisions above and shall serve until his or her death, incapacity, resignation or removal in accordance with the paragraph below. Upon expiration of his or her term of office, an Independent Member shall continue to serve until his or her successor is appointed. Nothing herein shall bar an initial Independent Member from becoming a successor Independent Member after his/her initial term.

The terms of office of the Employee Members and Retiree Members of

2

the IC shall conform to their respective terms of office on the Board.

A Member may be removed by the remaining Members for any of the following reasons: (a) the Member is legally incapacitated from executing his or her duties as a Member of the IC and neglects to perform those duties, (b) the Member has committed a material breach of GRS provisions, policies or procedures and the removal of the Member is in the interests of the system or its participants or its participants' beneficiaries, (c) the Member is convicted of a violation of law and the removal shall be accomplished by a vote of the IC in accordance with the voting procedures in this agreement, (d) if the Member holds a license to practice and such license is revoked for misconduct by any State or federal government, or (e) if an IC Member shall fail to attend scheduled meetings of the IC for four (4) consecutive meetings, unless in each case excused for cause by the remaining Members attending such meetings, the Member shall be considered to have resigned from the IC, and the IC shall, by resolution, declare the office of the Member vacated as of the date of adoption of such resolution. In addition, a Member of the IC may have voting privileges temporarily suspended by a 70% or higher vote of the other members if the Member is indicted or sued by a State or federal government for an alleged violation of the law that relates to his or her service on the IC, or for other alleged financial crimes, including fraud. Any vacancy occurring in the office of Member shall be filled within sixty (60) days following the date of the vacancy, for the unexpired portion of the term, in the same manner in which the office was previously filled.

All members of the IC shall be reimbursed for the reasonable, actual and necessary expenses incurred in the performance of their duties. All reasonable and proper expenses related to the administration of the IC, including but not limited to the purchase of insurance, shall be payable out of the assets of the GRS. The IC may retain actuarial, legal counsel, audit or other professional or support personnel to provide advice to the IC as it deems reasonably necessary to perform its functions and such parties or persons may be reasonably compensated from the assets of the Plan; such engagements shall not be subject to the approval of the Board.

The IC shall be an investment fiduciary to the GRS. An IC Member or other fiduciary under the GRS shall discharge his or her duties with respect to the GRS in compliance with the provisions of Public Act 314 of 1965, as amended. An IC Member shall discharge his or her duties with the care, skill, and caution under the circumstances then prevailing which a prudent person, acting in a like capacity and familiar with those matters, would use in the conduct of an activity of like character and purpose. Members of the IC shall comply with all Board governance policies and procedures, including the Ethics and Code of Conduct Policies, unless such compliance violates the Member's fiduciary duties or conflicts with the terms and conditions of this agreement.

| | |
|---|---|
| IC MEETINGS | The IC shall meet at least once every other month. The Members shall determine the time for the regular meetings of the IC and the place or places where such meetings shall be held. The Secretary or his or her designee shall be responsible for giving notice of the time and place of such meetings to the other Members.<br><br>Notice and conduct of all meetings of the IC, both regular and special, shall be held within the City of Detroit and in accordance with applicable law including the Michigan Open Meetings Act (MCL §15.261 et seq.).<br><br>The IC shall adopt its own rules of procedure and shall keep a record of its proceedings. Five (5) Members shall constitute a quorum at any meeting of the IC, so long as at least three (3) Independent Members are present. Each Member shall be entitled to one vote on each question before the IC and at least four (4) concurring votes shall be necessary for a decision of the committee except as otherwise provided in this Term Sheet. |
| INVESTMENT COMMITTEE - RESPONSIBILITY | The IC shall serve in a fiduciary capacity with respect to the Investment Management of all GRS Plan Assets, determination of the investment return assumption, and Board compliance with benefit plan provisions, as set forth more fully below. The IC shall have all the powers as a fiduciary under the first sentence of MCL §38.1133(5) and (6).<br><br>All Investment Management decisions approved by the Board shall require a recommendation by an affirmative vote of the IC, in accordance with the provisions of this agreement. All actions and recommendations of the IC shall be forwarded to the Board for consideration and are subject to Board approval. The Board shall take no action with respect to any matter for which the IC has responsibility and authority, including the Investment Management matters described in the next paragraph, unless and until such action has been approved by affirmative vote of the IC. If (a) the Board fails to approve or disapprove an Investment Management decision that has been recommended by an affirmative vote of the IC, and such failure continues for 45 days after the date that the recommendation was made to the Board, or (b) the Board disapproves an Investment Management decision within such 45-day period but fails to provide to the IC within such 45-day period a detailed written response outlining the reasons for such disapproval, then the IC and the Chief Investment Officer are authorized to implement the decision. If the Board disapproves an Investment Management decision within such 45-day period and provides to the IC within such 45-day period a detailed written response outlining the reasons for such disapproval, then the IC shall have 45 days after the receipt of the Board response to either (a) withdraw the recommended Investment Management decision, or |

(b) request, in writing, a conference with the Board to be held within ten (10) days, but not less than five (5) business days, of such request by the IC, unless a later date is agreed to in writing by the Board and the IC, to discuss the disapproval by the Board described in the written response. Any such conference shall be conducted with at least three (3) Independent Members present in person or by phone. Within ten (10) days of the commencement of the conference, or twenty (20) days following the IC's request for a conference if no conference is held, the IC shall either withdraw the recommended Investment Management decision or provide the Board a written explanation of the IC's decision to proceed with the recommended Investment Management decision. After delivery of such written explanation by the IC, the IC and the Chief Investment Officer are authorized to implement the decision. Any action taken by the Board or the IC in violation of the terms of this agreement shall constitute an ultra vires act and the IC or the Board, whichever is applicable, is granted the express right to seek to preliminarily enjoin such violation of the breaching party without the need to show irreparable harm.

"Investment Management" with respect to plan assets shall mean:

1. Developing an Investment Policy Statement with sound and consistent investment goals, objectives and performance measurement standards which are consistent with the needs of the Plan.

2. Within 120 days after the Effective Date of the POA, all of the plan assets not already under qualified management, if any, must be managed by qualified managers selected by the IC.

3. Evaluating, retaining, terminating, and selecting qualified managers to invest and manage the plan assets.

4. Reviewing and affirming or rejecting the correctness of any and all calculations, actuarial assumptions and/or assessments used by the Plan Actuary including, but not limited to, (i) those underlying the restoration of pension benefits, funding levels and amortization thereof, all in accordance with the Pension Restoration Program attached to the City's Plan of Adjustment, (ii) those underlying the determination of annual funding levels and amortization thereof, and (iii) on or after fiscal year 2024 the recommended annual contributions to GRS in accordance with applicable law.

5. In accordance with approved actuarial work as provided in the immediate preceding paragraph and based on the annual actuarial valuation reports and any other projections or reports as applicable from the Plan Actuary or other professional advisors, the determination of the extent of restoration of pension

5

benefits, including but not limited to the payment of a portion of the 4.5% reduction in base monthly pension amounts and the payment of lost COLA payments, all in conformance to the Pension Restoration Program between the City and the Board attached to the Plan of Adjustment.

6. Communicating the investment goals, objectives, and standards to the investment managers; including any material changes that may subsequently occur.

7. Determining and approving the Plan's investment and asset allocation guidelines, taking into account the appropriate liquidity needs of the Plan.

8. Any interpretation of Plan documents, existing law, the POA or other financial determination that could affect funding or benefit levels.

9. Taking whatever corrective action is deemed prudent and appropriate when an investment manager fails to perform as expected.

10. Complying with the provisions of pertinent federal, state, and local laws and regulations, specifically Public Act 314 and Plan Investment Guidelines.

11. Reviewing and approving, prior to final issuance, the annual audit and all financial reports prepared on behalf of the GRS and meet and confer with the Plan's outside auditor or other professional advisors as necessary prior to approving the annual audit or other financial reports.

12. Causing an asset/liability valuation study to be performed for GRS every three (3) years, or as requested by the IC or Board.

The IC shall give appropriate consideration to and have an understanding of the following prior to the adoption of the investment guidelines and asset allocation policies, the selection of manager(s), and/or the adoption of investment return assumptions:

1. The fiduciary best practices and institutional standards for the investment of public employee retirement system plan assets.

2. The objective to obtain investment returns above the established actuarial investment return assumption to support the restoration of benefits under the Pension Restoration Program, to the extent that is prudent and consistent with the overall funding, liquidity needs and actuarial assumptions governing the Plan.

3. The liquidity needs of the GRS Plan.

6

13-53846-tjt   Doc 8904-19   Filed 12/09/14   Entered 12/09/14 23:24:59   Page 26 of 50
13-53846-swr   Doc 6906-2   Filed 08/20/14   Entered 08/20/14 21:48:34   Page 26 of 165
165

| | |
|---|---|
| CHIEF INVESTMENT OFFICER (CIO) | The IC shall evaluate and select the CIO, set and approve any and all compensation for, and terms of employment of, the CIO. With respect to plan assets, the CIO shall report directly to the IC and the Executive Director of the Board. The CIO shall be responsible for assisting the IC and the Board in overseeing the GRS's investment portfolio.<br><br>The initial CIO is Ryan Bigelow [subject to State due diligence.] |
| PLAN ACTUARY | The current Plan Actuary is Gabriel Roeder Smith & Company. In the event the Board desires to retain a new actuary, the Board and IC shall collectively participate in the evaluation and selection of a qualified Plan Actuary. The Plan Actuary shall be responsible for assisting the Board and IC in performing its actuarial duties and shall comply with all requests for information or modeling requested by the IC, and shall attend meetings of the IC as requested, so as to allow the IC to perform satisfactorily the rights and duties set forth herein. Furthermore, the Board shall not act on any recommendation made by the Plan Actuary based on any calculation, assumption or assessment rejected by the IC.<br><br>Nothing herein shall be interpreted as limiting the IC's authority to engage an actuarial consulting firm other than the Plan Actuary to perform actuarial services deemed necessary to fulfill its fiduciary duties to the GRS and other duties to GRS as set forth herein. |
| CONSISTENCY WITH PLAN OF ADJUSTMENT | Nothing herein shall be interpreted as permitting the IC or the Board to alter or depart from the requirements set forth in the confirmed Plan of Adjustment. |

DETROIT 56620-1 1315511v9

**EXHIBIT B – PFRS Governance Terms**

## *In re City of Detroit, Michigan*

# INVESTMENT COMMITTEE GOVERNANCE
# FOR POLICE AND FIRE RETIREMENT SYSTEM

| | |
|---|---|
| PREAMBLE | This document was prepared to set forth the pension governance requirements under the State Contribution Agreement (as that term is defined in the City's Fourth Amended Plan for the Adjustment of Debts of the City of Detroit, as amended from time to time) applicable to the Police and Fire Retirement System of the City of Detroit (PFRS). |
| SCOPE OF SETTLEMENT | The PFRS is currently administered by a seventeen (17) member Board of Trustees (the "Board") that is vested with the fiduciary authority for the general administration, management and operation of the Retirement System. The Board currently makes all administrative, actuarial and investment related decisions for the PFRS. Upon the Effective Date under the POA, but subject to consummation of the State Contribution Agreement, there shall be established, by appropriate action and amendments to governing documents, an Investment Committee ("IC") at PFRS which shall be vested with the authority and responsibilities as outlined herein for a period of twenty (20) years after the Effective Date of the POA. All administrative, managerial, and operational matters not addressed in this Term Sheet shall continue to be addressed by the Board in the ordinary course of its affairs. |
| INVESTMENT COMMITTEE | The IC shall consist of nine (9) voting members consisting of:<br>  i. Five (5) Independent Members;<br>  ii. Two (2) Employee Members; and<br>  iii. Two (2) Retiree Members.<br>Collectively, or individually, "Members" or "Member."<br><br>At least two (2) of the five (5) Independent Members of the committee shall be residents of the State of Michigan. None of the Independent Members shall be a party in interest as defined by MCL 38.1132d (4) to the City or the PFRS.<br><br>Each Independent Member of the IC shall have expert knowledge or extensive experience with respect to either: (a)economics, finance, or institutional investments; or (b) administration of public or private retirement plans, executive management, benefits administration or actuarial science. At least one (1) of the IC Independent Members shall satisfy the requirements of (a) above and at least one (1) of the IC Independent Members shall satisfy the requirements of (b) above.<br><br>The five (5) initial IC Independent Members shall be selected by mutual agreement of the appropriate representatives of the State, the |

City and the Board, in consultation with the Foundation for Detroit's Future, and named in the POA. Successor Independent Members shall be recommended by a majority of the remaining Independent Members and confirmed by the Board and the State Treasurer in consultation with the Foundation for Detroit's Future, in accordance with such rules and regulations as may be adopted by the IC, provided such rules and regulations are not inconsistent with the POA and this agreement. In the event the Board and the State Treasurer cannot agree on the successor Independent Member within thirty (30) days of the receipt of the recommendation of the IC, the remaining Independent Members of the IC shall appoint the successor Independent Member.

If no mutual agreement is reached as to the selection of one or more of the initial IC Independent Members by the time of confirmation of the City's Plan of Adjustment, then the Bankruptcy Court shall select the Independent Members necessary to fill the five (5) initial IC Independent Member positions for which no agreement has been reached.

In the event the Bankruptcy Court selects the initial Independent Members as described immediately above, successor Independent Members shall be appointed in the same manner as the Independent Member being replaced, as described immediately above, after three (3) weeks' notice to the Board of the individuals chosen, in accordance with such rules and regulations as may be adopted by the IC, provided such rules and regulations are not inconsistent with the POA and this agreement.

The Employee Members shall consist of one active police member and one active fire member from the Board, appointed by the Board. The initial Employee Members will be _____ and _____.

The Retiree Members shall consist of one retired police member and one retired fire member from the Board, each receiving a pension from PFRS and appointed by the Board. The initial Retiree Members will be _____ and _____.

Each of the four (4) uniformed Members shall have one-half (1/2) vote.

The terms of office of the initial IC Independent Members shall be staggered at the time of appointment so that Independent Members shall have varying initial terms of office, with one each having a 2, 3, 4, 5 and 6 year term. Each initial Independent Member shall serve until the expiration of his/her initial term. After the initial term of office, the term of office of the IC Independent Members shall be six years. Each successor Independent Member shall be selected in accordance with the provisions above and shall serve until his or her death, incapacity, resignation or removal in accordance with the paragraph below. Upon expiration of his or her term of office, an

Independent Member shall continue to serve until his or her successor is appointed. Nothing herein shall bar an initial Independent Member from becoming a successor Independent Member after his/her initial term.

The terms of office of the Employee Members and Retiree Members of the IC shall conform to their respective terms of office on the Board.

A Member may be removed by the remaining Members for any of the following reasons: (a) the Member is legally incapacitated from executing his or her duties as a Member of the IC and neglects to perform those duties, (b) the Member has committed a material breach of PFRS provisions, policies or procedures and the removal of the Member is in the interests of the system or its participants or its participants' beneficiaries, (c) the Member is convicted of a violation of law and the removal shall be accomplished by a vote of the IC in accordance with the voting procedures in this agreement, (d) if the Member holds a license to practice and such license is revoked for misconduct by any State or federal government, or (e) if an IC Member shall fail to attend scheduled meetings of the IC for four (4) consecutive meetings, unless in each case excused for cause by the remaining Members attending such meetings, the Member shall be considered to have resigned from the IC, and the IC shall, by resolution, declare the office of the Member vacated as of the date of adoption of such resolution. In addition, a Member of the IC may have voting privileges temporarily suspended by a 70% or higher vote of the other members if the Member is indicted or sued by a State or federal government for an alleged violation of the law that relates to his or her service on the IC, or for other alleged financial crimes, including fraud. Any vacancy occurring in the office of Member shall be filled within sixty (60) days following the date of the vacancy, for the unexpired portion of the term, in the same manner in which the office was previously filled.

All members of the IC shall be reimbursed for the reasonable, actual and necessary expenses incurred in the performance of their duties. All reasonable and proper expenses related to the administration of the IC, including but not limited to the purchase of insurance, shall be payable out of the assets of the PFRS. The IC may retain actuarial, legal counsel, audit or other professional or support personnel to provide advice to the IC as it deems reasonably necessary to perform its functions and such parties or persons may be reasonably compensated from the assets of the Plan; such engagements shall not be subject to the approval of the Board.

The IC shall be an investment fiduciary to the PFRS. An IC Member or other fiduciary under the PFRS shall discharge his or her duties with respect to the PFRS in compliance with the provisions of Public Act 314 of 1965, as amended. An IC Member shall discharge his or her duties with the care, skill, and caution under the circumstances then prevailing which a prudent person, acting in a like capacity and

3

| | familiar with those matters, would use in the conduct of an activity of like character and purpose. Members of the IC shall comply with all Board governance policies and procedures, including the Ethics and Code of Conduct Policies, unless such compliance violates the Member's fiduciary duties or conflicts with the terms and conditions of this agreement. |
|---|---|
| IC MEETINGS | The IC shall meet at least once every other month. The Members shall determine the time for the regular meetings of the IC and the place or places where such meetings shall be held. The Secretary or his or her designee shall be responsible for giving notice of the time and place of such meetings to the other Members.<br><br>Notice and conduct of all meetings of the IC, both regular and special, shall be held within the City of Detroit and in accordance with applicable law including the Michigan Open Meetings Act (MCL §15.261 et seq.).<br><br>The IC shall adopt its own rules of procedure and shall keep a record of its proceedings. Five (5) Members shall constitute a quorum at any meeting of the IC, so long as at least three (3) Independent Members are present. Each Member shall be entitled to one vote on each question before the IC and at least four (4) concurring votes shall be necessary for a decision of the committee except as otherwise provided in this Term Sheet. |
| INVESTMENT COMMITTEE - RESPONSIBILITY | The IC shall serve in a fiduciary capacity with respect to the Investment Management of all PFRS Plan Assets, determination of the investment return assumption, and Board compliance with benefit plan provisions, as set forth more fully below. The IC shall have all the powers as a fiduciary under the first sentence of MCL §38.1133(5) and (6).<br><br>All Investment Management decisions approved by the Board shall require a recommendation by an affirmative vote of the IC, in accordance with the provisions of this agreement. All actions and recommendations of the IC shall be forwarded to the Board for consideration and are subject to Board approval. The Board shall take no action with respect to any matter for which the IC has responsibility and authority, including the Investment Management matters described in the next paragraph, unless and until such action has been approved by affirmative vote of the IC. If (a) the Board fails to approve or disapprove an Investment Management decision that has been recommended by an affirmative vote of the IC, and such failure continues for 45 days after the date that the recommendation was made to the Board, or (b) the Board disapproves an Investment Management decision within such 45-day period but fails to provide to the IC within such 45-day period a detailed written response outlining the reasons for such disapproval, then the IC and the Chief Investment Officer are authorized to implement the decision. If the Board disapproves an |

Investment Management decision within such 45-day period and provides to the IC within such 45-day period a detailed written response outlining the reasons for such disapproval, then the IC shall have 45 days after the receipt of the Board response to either (a) withdraw the recommended Investment Management decision, or (b) request, in writing, a conference with the Board to be held within ten (10) days, but not less than five (5) business days, of such request by the IC, unless a later date is agreed to in writing by the Board and the IC, to discuss the disapproval by the Board described in the written response.  Any such conference shall be conducted with at least three (3) Independent Members present in person or by phone.  Within ten (10) days of the commencement of the conference, or twenty (20) days following the IC's request for a conference if no conference is held, the IC shall either withdraw the recommended Investment Management decision or provide the Board a written explanation of the IC's decision to proceed with the recommended Investment Management decision.  After delivery of such written explanation by the IC, the IC and the Chief Investment Officer are authorized to implement the decision.  Any action taken by the Board or the IC in violation of the terms of this agreement shall constitute an ultra vires act and the IC or the Board is granted the express right to seek to preliminarily enjoin such action without the need to show irreparable harm.

"Investment Management" with respect to plan assets shall mean:

1. Developing an Investment Policy Statement with sound and consistent investment goals, objectives and performance measurement standards which are consistent with the needs of the Plan.
2. Within 120 days after the Effective Date of the POA, all of the plan assets not already under qualified management, if any, must be managed by qualified managers selected by the IC.
3. Evaluating, retaining, terminating and selecting qualified managers to invest and manage the plan assets.
4. Reviewing and affirming or rejecting the correctness of any and all calculations, actuarial assumptions and/or assessments used by the Plan Actuary including, but not limited to, (i) those underlying the restoration of pension benefits, funding levels and amortization thereof, all in accordance with the Pension Restoration Program attached to the City's Plan of Adjustment, (ii) those underlying the determination of annual funding levels and amortization thereof, and (iii) on or after fiscal year 2024, the recommended annual contributions to PFRS in accordance with applicable law.
5. In accordance with approved actuarial work as provided in the immediate preceding paragraph and

5

based on the annual actuarial valuation reports and any other projections or reports as applicable from the Plan Actuary or other professional advisors, the determination of the extent of restoration of pension benefits, including but not limited to the payment of lost COLA payments, all in conformance to the Pension Restoration Program between the City and the Board attached to the Plan of Adjustment.

6. Communicating the investment goals, objectives, and standards to the investment managers; including any material changes that may subsequently occur.
7. Determining and approving the Plan's investment and asset allocation guidelines, taking into account the appropriate liquidity needs of the Plan.
8. Any interpretation of Plan documents, existing law, the POA or other financial determination that could affect funding or benefit levels.
9. Taking whatever corrective action is deemed prudent and appropriate when an investment manager fails to perform as expected.
10. Complying with the provisions of pertinent federal, state, and local laws and regulations, specifically Public Act 314 and Plan Investment Guidelines.
11. Reviewing and approving, prior to final issuance, the annual audit and all financial reports prepared on behalf of the PFRS and meet and confer with the Plan's outside auditor or other professional advisors as necessary prior to approving the annual audit or other financial reports.
12. Causing an asset/liability valuation study to be performed for PFRS every three (3) years, or as requested by the IC or Board.

The IC shall give appropriate consideration to and have an understanding of the following prior to the adoption of the investment guidelines and asset allocation policies, the selection of manager(s), and/or the adoption of investment return assumptions:

1. The fiduciary best practices and institutional standards for the investment of public employee retirement system plan assets.
2. The objective to obtain investment returns above the established actuarial investment return assumption to support the restoration of benefits under the Pension Restoration Program, to the extent that is prudent and consistent with the overall funding, liquidity needs and actuarial

| | |
|---|---|
| | assumptions governing the Plan.<br>3.  The liquidity needs of the PFRS Plan. |
| CHIEF INVESTMENT OFFICER (CIO) | The IC shall evaluate and select the CIO, set and approve any and all compensation for, and terms of employment of, the CIO.  With respect to plan assets, the CIO shall report directly to the IC and the Executive Director of the Board.  The CIO shall be responsible for assisting the IC and the Board in overseeing the PFRS's investment portfolio.<br><br>The initial CIO is Ryan Bigelow [subject to State due diligence.] |
| PLAN ACTUARY | The current Plan Actuary is Gabriel Roeder Smith & Company.  In the event the Board desires to retain a new actuary, the Board and IC shall collectively participate in the evaluation and selection of a qualified Plan Actuary.  The Plan Actuary shall be responsible for assisting the Board and IC in performing its actuarial duties and shall comply with all requests for information or modeling requested by the IC, and shall attend meetings of the IC as requested, so as to allow the IC to perform satisfactorily the rights and duties set forth herein.  Furthermore, the Board shall not act on any recommendation made by the Plan Actuary based on any calculation, assumption or assessment rejected by the IC.<br><br>Nothing herein shall be interpreted as limiting the IC's authority to engage an actuarial consulting firm other than the Plan Actuary to perform actuarial services deemed necessary to fulfill its fiduciary duties to the PFRS and other duties to PFRS as set forth herein. |
| CONSISTENCY WITH PLAN OF ADJUSTMENT | Nothing herein shall be interpreted as permitting the IC or the Board to alter or depart from the requirements set forth in the confirmed Plan of Adjustment. |

DETROIT 56620-1 1315534v6

**EXHIBIT C**

1. General Retirement System

2. Police and Fire Retirement System

3. AFSCME

4. UAW

5. Detroit Police Officers Association

6. Detroit Police Command Officers Association

7. Detroit Police Lieutenants and Sergeants Association

8. Detroit Fire Fighters Association

9. Retired Detroit Police and Fire Fighters Association

10. Retired Detroit Police Members Association

11. Detroit Retired City Employees Association

12. Official Retirees Committee

13. City of Detroit

## EXHIBIT D

Cases to be dismissed:

1. GRS et al. v. Emergency Manager of Detroit (Ingham County Circuit Court)
2. Webster et al. v. State of Michigan, Governor, and State Treasurer (Ingham County Circuit Court)
3. Detroit Library Commission v. Governor, State Treasurer, and Detroit Public Schools Emergency Manager (Ingham County)
4. Flowers et al. v. Governor, State Treasurer, and State of Michigan (Ingham County Circuit Court)
5. DPOA v. City of Detroit (Michigan Court of Appeals)

The settling parties will not attempt to amend to include the City of Detroit or its Emergency Manager as a defendant, or collaterally or retroactively attack the Detroit bankruptcy or actions of Detroit or its EM, or otherwise participate, support, fund or appeal in the following cases:

1. Phillips et al v. Governor and State Treasurer (E.D. Mich.)
2. Michigan AFSCME Council 25 v. Governor, State Treasurer, et al. (E.D. Mich.)
3. NAACP v. Governor, State Treasurer, and Secretary of State (E.D. Mich.)
4. Robert Davis/Citizens United Against Corrupt Government v. Governor, State of Michigan, Dept. of Treasury, Dept. of State Police, et al. (Ingham County Circuit Court)
5. Robert Davis/Citizens United Against Corrupt Government v. Michigan Department of Treasury and Carla Robert (Wayne County Circuit Court)
6. Robert Davis v. Local Emergency Financial Assistance Loan Board (Ingham Court)
7. Robert Davis v. Weatherspoon, Governor, Attorney General, and State Treasurer (E.D. Mich.)
8. Allen Park Retirees v. EM Parker, City of Allen Park (Wayne Circuit)
9. Allen Park Retirees v. State (Court of Claims)
10. Deborah Moore-El v. Snyder (E.D. Mich.)
11. Faith, et al. v. Snyder (E.D. Mich.)
12. Sarella Johnson, et al. v. Snyder (E.D. Mich.)
13. United Retired Government Employees (URGE) et al. v. Governor, et al. (E.D. Mich.)

DETROIT 56620-1 1314985v5

13-53846-swr Doc 8904-19 Filed 12/09/14 Entered 12/09/14 23:24:59 Page 37 of 50
13-53846-swr Doc 8904-19 Filed 12/09/14 Entered 12/09/14 23:24:59 Page 37 of 50
165

**EXHIBIT I.A.334**

SCHEDULE OF UNLIMITED TAX GENERAL OBLIGATION BOND
DOCUMENTS & RELATED UNLIMITED TAX GENERAL OBLIGATION BONDS

13-53846-tjt    Doc 8004-19    Filed 12/09/14    Entered 12/09/14 12:46:59    Page 38 of
13-53846-swr    Doc 6906-2    Filed 08/20/14    Entered 08/20/14 23:27:34    Page 48 of 50
165

## SCHEDULE OF UNLIMITED TAX GENERAL OBLIGATION BOND
## DOCUMENTS & RELATED UNLIMITED TAX GENERAL OBLIGATION BONDS

| Unlimited Tax General Obligation Bond Documents | Series of Unlimited Tax General Obligation Bonds | Balance as of Petition Date |
|---|---|---|
| Resolution of the City Council adopted March 3, 1999<br><br>Finance Director's Order dated April 1, 1999 | Series 1999-A | $18,747,364 |
| Amended and Restated Resolution of the City Council adopted April 6, 2001 and Supplement No. 1 to Amended and Restated Resolution, adopted June 13, 2001 (collectively, "2001 UTGO Resolution")<br><br>Finance Director's Order dated August 1, 2001 ("2001 UTGO Sale Order") | Series 2001-A(1) | $78,787,556 |
| 2001 UTGO Resolution<br><br>2001 UTGO Sale Order | Series 2001-B | $4,063,616 |
| Resolution of the City Council adopted July 24, 2002<br><br>Finance Director's Order dated August 2, 2002 | Series 2002 | $6,745,767 |
| Resolution of the City Council adopted September 19, 2003<br><br>Finance Director's Order dated October 9, 2003 | Series 2003-A | $34,908,150 |
| Bond Authorizing Resolution adopted June 14, 2004 ("2004 UTGO Resolution")<br><br>Finance Director's Order dated August 27, 2004 ("2004 UTGO Sale Order") | Series 2004-A(1) | $39,872,258 |
| 2004 UTGO Resolution<br><br>2004 UTGO Sale Order | Series 2004-B(1) | $38,206,678 |
| 2004 UTGO Resolution<br><br>2004 UTGO Sale Order | Series 2004-B(2) | $736,241 |
| Resolution of the City Council adopted July 6, 2005 ("2005 UTGO Resolution")<br><br>Finance Director's Order dated December 5, 2005 ("2005 UTGO Sale Order") | Series 2005-B | $45,452,501 |
| 2005 UTGO Resolution<br><br>2005 UTGO Sale Order | Series 2005-C | $18,671,105 |

| Unlimited Tax General Obligation Bond Documents | Series of Unlimited Tax General Obligation Bonds | Balance as of Petition Date |
|---|---|---|
| Resolution of the City Council adopted November 17, 2006 ("2008 UTGO Resolution") <br><br> Finance Director's Order dated May 30, 2008 ("2008 UTGO Sale Order") | Series 2008-A | $59,487,564 |
| 2008 UTGO Resolution <br><br> 2008 UTGO Sale Order | Series 2008-B(1) | $28,982,532 |

**EXHIBIT I.A.341**

FORM OF UTGO SETTLEMENT AGREEMENT

13-53846-tjt   Doc 8904-19   Filed 12/09/14   Entered 12/09/14 12:46:59   Page 41 of 272
13-53846-swr   Doc 6900-3   Filed 08/20/14   Entered 08/20/14 23:27:34   Page 41 of 272
165

# SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is entered into as of July 18, 2014, among the City of Detroit (the "**City**"), Ambac Assurance Corporation ("**Ambac**"), Assured Guaranty Municipal Corp. and Assured Guaranty Corp. (together, "**Assured**"), and National Public Finance Guarantee Corporation ("**NPFG**"). In this Agreement, each of the City, Ambac, Assured, and NPFG is referred to individually as a "**Party**"; Ambac, Assured, and NPFG (including their successors and assigns) are referred to collectively as the "**Bond Insurers**"; and the City and the Bond Insurers are referred to collectively as the "**Parties**."

## RECITALS

**WHEREAS**, as of the close of Fiscal Year 2013 (*i.e.*, June 30, 2013), the City had $369.115 million in outstanding principal amount of unlimited tax general obligations bonds, excluding the 2010 Series A Bonds hereinafter mentioned (the "**Prior UTGO Bonds**");

**WHEREAS,** more than 90% of the Prior UTGO Bonds are insured by one of the three Bond Insurers under financial guaranty insurance policies (the "**Bond Insurance Policies**") that were issued contemporaneously with the respective Prior UTGO Bonds;

**WHEREAS**, the Governor of the State of Michigan determined on March 1, 2013 that a financial emergency existed in the City, and the Emergency Manager (together with any successors, the "**Emergency Manager**") was appointed for the City on March 14, 2013;

**WHEREAS**, on July 18, 2013 (the "**Petition Date**"), the City filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing Bankruptcy Case No. 13-53846 (the "**Bankruptcy Case**") before the United States Bankruptcy Court for the Eastern District of Michigan (the "**Bankruptcy Court**");

**WHEREAS**, as of the Petition Date, the balance due on the Prior UTGO Bonds, including prepetition interest accrued as of that date, was $374,686,297;

**WHEREAS,** on October 1, 2013, the City defaulted on its obligation to make interest payments on the Prior UTGO Bonds in the amount of $9,372,276 and the Bond Insurers paid claims and were subrogated to the rights of the owners for such payments, and the insurance documents contemplate the assignment of the Prior UTGO Bonds to the Bond Insurers upon payment of a claim;

**WHEREAS**, on April 1, 2014, the City defaulted on its obligations on the Prior UTGO Bonds to pay interest in the amount of $9,372,276 and to pay principal in the amount of $38,205,000, and the Bond Insurers paid claims and were subrogated to the

rights of the owners for such payments, and the insurance documents contemplate the assignment of the Prior UTGO Bonds to the Bond Insurers upon payment of a claim;

**WHEREAS**, on November 8, 2013, Assured and NPFG filed an adversary proceeding against the City seeking declaratory relief with regard to their rights in respect of the Prior UTGO Bonds pending before the Bankruptcy Court (Adv. Proc. No 13-05309) (the "**Assured/NPFG Action**"), and Ambac filed an adversary proceeding against the City seeking declaratory relief with regard to its rights in respect of, *inter alia*, the Prior UTGO Bonds pending before the Bankruptcy Court (Adv. Proc. No 13-05310) (the "**Ambac Action**");

**WHEREAS**, on or about February 21, 2014, each of the Bond Insurers filed proofs of claim in the Bankruptcy Case (the "**UTGO Claims**") asserting claims against the City for the full amount of principal and interest due under the documents pursuant to which the Prior UTGO Bonds were issued (including post-petition interest), amounts due the Bond Insurers for payments pursuant to the Bond Insurance Policies, and contractual reimbursements due for charges, fees, costs, losses, liabilities and expenses incurred by the Bond Insurers in connection with the Bond Insurance Policies; and

**WHEREAS**, the Parties have engaged in good faith and arms' length negotiations regarding a consensual resolution of their disputes under or in respect of the Prior UTGO Bonds, the Assured/NPFG Action, the Ambac Action, and the UTGO Claims;

**NOW, THEREFORE**, in consideration of the foregoing and the promises, mutual covenants, and agreements set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1.  Recitals.  The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2.  Definitions.  In addition to the capitalized terms defined in the preamble and recitals, the following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"**Act 436**" shall mean the Local Financial Stability and Choice Act of the State, Act 436 of 2012, Public Acts of Michigan, 2012.

"**Additional Bonds**" shall mean any unlimited tax general obligation bonds issued on a parity with the Prior UTGO Bonds, the UTGO Bonds and the 2010 Series A Bonds as to the Aggregate UTGO Tax Levy.

"**Additional DSA Debt**" has the meaning ascribed to it in Section 2.6(a).

"**Agreement to Deposit State Aid**" shall mean the agreement, dated as of the date of the issuance of the MFA Bonds, among the City, the State Treasurer and U.S. Bank National Association, as Master Trustee, providing for the deposit of Distributable State Aid payments by the State Treasurer directly into the funds and accounts held by the Master Trustee pursuant to the Master Indenture for purposes of retiring the Municipal Obligation for so long as the Municipal Obligation remains outstanding.

"**Aggregate UTGO Tax Levy**" shall mean all proceeds of the ad valorem tax millage levies, including delinquent millage payments received from Wayne County or otherwise, on account of unlimited tax general obligation bonds of the City, including the Prior UTGO Bonds (or after the Effective Date, the UTGO Bonds), the 2010 Series A Bonds and any Additional Bonds hereafter issued by the City.

"**Allowed Claim**" has the meaning ascribed to it in the Plan.

"**Ambac Action**" has the meaning ascribed to it in the recitals hereof.

"**Approval Motion**" shall mean a motion filed by the City with the Bankruptcy Court in accordance with Section 2.8(c), seeking entry of the Approval Order pursuant to Federal Rule of Bankruptcy Procedure 9019, which motion shall be in form and substance reasonably satisfactory to the Parties.

"**Approval Order**" shall mean an order of the Bankruptcy Court (other than the Plan Confirmation Order) approving the compromise and settlement set forth in this Agreement authorizing and directing the consummation of the transactions contemplated herein, which order shall be in a form and substance reasonably satisfactory to the Parties.

"**Assigned UTGO Bond Tax Proceeds**" has the meaning ascribed to it in Section 2.1(b)(i).

"**Assured/NPFG Action**" has the meaning ascribed to it in the recitals hereof.

"**Bankruptcy Case**" has the meaning ascribed to it in the recitals hereof.

"**Bankruptcy Code**" has the meaning ascribed to it in the recitals hereof.

"**Bankruptcy Court**" has the meaning ascribed to it in the recitals hereof.

"**Bond Insurance Policies**" has the meaning ascribed to it in the recitals hereof.

"**Bond Insurer Claims**" has the meaning ascribed to it in Section 2.1.

"**Bond Insurer Exculpated Parties**" means the Bond Insurers solely in their capacity as insurers of the Prior UTGO Bonds, and their respective parents, affiliates, shareholders, directors, officers, managers, employees, agents, attorneys, advisors, accountants, restructuring consultants, financial advisors and investment bankers, solely in their capacity as such.

"**Claim**" shall mean a "claim" as defined in Section 101(5) of the Bankruptcy Code.

"**Class**" means each class of Claims established under the Plan.

"**Debt Millage Escrow Agreement**" shall mean an escrow agreement substantially in the form of Exhibit A hereto between the City and U.S. Bank National Association as escrow trustee providing, among other things, for the deposit and distribution of the Aggregate UTGO Tax Levy collected by the City, to be executed and delivered on the date of this Agreement.

"**Debt Millage Escrow Trustee**" has the meaning ascribed to it in Section 2.4(a).

"**Distributable State Aid**" shall mean the shared revenue payments that the City is entitled to receive from the State under the Michigan Constitution and the provisions of the Glenn Steil State Revenue Sharing Act, Act 140, Public Acts of Michigan, 1971, as amended ("**Act 140**") in each City fiscal year ending June 30.

"**DSA Deposit**" has the meaning ascribed to it in Section 2.5(c).

"**DSA Deposit Date**" has the meaning ascribed to it in Section 2.5(c).

"**Deposit Date Balance Requirement(s)**" has the meaning ascribed to it in Section 2.5(c).

"**Deposit Date Balance Requirement for the Municipal Obligation**" has the meaning ascribed to it in Section 2.5(e).

"**DSA Escrow Funds**" has the meaning ascribed to it in Section 2.5(b).

"**DTC System**" shall mean the system maintained by the Depository Trust Company used for trading municipal securities.

"**Effective Date**" shall mean the effective date of any Plan.

"**Emergency Manager**" has the meaning ascribed to it in the recitals hereof.

"**Emergency Manager Order**" shall mean an order of the Emergency Manager in substantially the form attached hereto as Exhibit B.

"**Event of Default**" has the meaning ascribed to it in Section 4.1.

"**Existing DSA Debt**" has the meaning ascribed to it in Section 2.6(a).

"**Final Order**" shall mean an order or judgment including any associated findings of fact and conclusions of law of the Bankruptcy Court or other court of competent jurisdiction with respect to the applicable subject matter which has not been reversed, stayed, modified or amended and as to which (a) any right to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending, or (b) an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought or (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending; provided, however, that the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Federal Rule of Bankruptcy Procedure 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

"**Financial Terms**" has the meaning ascribed to it in Section 2.2.

"**Hard Pay Instruments**" has the meaning ascribed to it in Section 2.11(a)(i).

"**Holders Restructured UTGO Bonds**" has the meaning ascribed to it in Section 2.1(a).

"**Holder**" shall mean the holder of a Claim under or evidenced by the Prior UTGO Bonds.

"**Impaired Financial Creditors**" has the meaning ascribed to it in Section 2.11(a).

"**Insurer Owned Restructured UTGO Bonds**" has the meaning ascribed to it in Section 2.1(a).

"**Master Indenture**" shall mean the Master Debt Retirement Trust Indenture dated as of March 1, 2010 by and between the City and U.S. Bank National Association, Detroit, Michigan, as Master Trustee, as supplemented by the First Supplemental Debt Retirement Trust Indenture dated as of March 1, 2010, by the Second Supplemental Debt Retirement Trust Indenture dated as of December 1, 2010, the Third Supplemental Debt Retirement Trust Indenture dated as of March 1, 2012, the Fourth Supplemental Debt Retirement Trust Indenture dated as of August 1, 2012 and by the Fifth Supplemental Debt Retirement Trust Indenture to be dated as of the first day of the

month of the issuance of the MFA Bonds, by and between the City and the Master Trustee.

"**Master Trustee**" shall mean U.S. Bank National Association, Detroit, Michigan, as trustee under the Master Indenture or any successor trustee appointed pursuant to the terms of the Master Indenture.

"**MFA Bonds**" has the meaning ascribed to it in Section 2.2.

"**Municipal Obligation**" has the meaning ascribed to it in Section 2.2.

"**Plan**" shall mean the chapter 9 plan of adjustment filed by the City and incorporating the terms and conditions set forth in this Agreement, in substantially the form of the draft thereof dated May 5, 2014, as such plan may be amended, modified or supplemented from time to time, which plan, as it relates to this Settlement Agreement, shall be in form and substance reasonably satisfactory to the Bond Insurers.

"**Plan Confirmation Order**" shall mean findings of fact and an order of the Bankruptcy Court confirming the Plan and meeting the requirements of Section 2.9 of this Agreement.

"**Plan Documents**" shall mean the Plan, the Plan Confirmation Order and any Plan related documents effectuating this Agreement.

"**Plan Instruments**" shall have the meaning ascribed to it in Section 2.11(a)(ii).

"**Prior UTGO Bonds**" has the meaning ascribed to it in the recitals hereof.

"**Pro Rata**" shall mean the proportion that a claim of one Holder of Restructured UTGO Bonds bears to the aggregate of all claims of all of the Holders of Restructured UTGO Bonds.

"**Restructured UTGO Bonds**" has the meaning ascribed to it in Section 2.1.

"**Series 2014 DSA Escrow Fund**" has the meaning ascribed to it in Section 2.5(d).

"**Settlement Escrow Agreement**" has the meaning ascribed to it in Section 2.8.

"**Settlement-Related Documents**" shall mean this Agreement, the Plan Documents, the Approval Order (if applicable), the Debt Millage Escrow Agreement, the Settlement Escrow Agreement, the Restructured UTGO Bonds, the Stub UTGO Bonds, the Municipal Obligation, the MFA Bonds and all documents related to the MFA Bonds

(other than a Bond Insurer's insurance policies related to the MFA Bonds, Restructured UTGO Bonds and the Stub UTGO Bonds), each of which shall be in form and substance reasonably satisfactory to the Parties (and, in the case of the Plan Documents, solely as they relate to this Agreement).

"**Shared Credit Rating Act**" shall mean the Shared Credit Rating Act, Act No. 227 of the Public Acts of 1985 of the State, as from time to time amended.

"**Soft Pay Instruments**" has the meaning ascribed to it in Section 2.11(a)(ii).

"**State**" shall mean the State of Michigan.

"**State Treasurer**" shall mean the State Treasurer of the State.

"**Stub UTGO Bonds**" has the meaning ascribed to it in Section 2.1(b).

"**Stub UTGO Challenge**" has the meaning ascribed to it in Section 6.3(b).

"**Syncora**" shall mean Syncora Capital Assurance Inc. and Syncora Guarantee Inc. as insurer of the Series 2003(A) Unlimited Tax General Obligation Bonds.

"**2010 Senior Bonds**" has the meaning ascribed to it in Section 2.3(d)(i).

"**2010 Series A Bonds**" shall mean the City's $100,000,000 Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010 (A) (Taxable Recovery Zone Economic Development Bonds-Direct Payment).

"**Third Lien Bonds**" has the meaning ascribed to it in Section 2.3(d)(iii).

"**Top-Off Payments**" has the meaning ascribed to it in Section 2.11(b).

"**Trigger Event**" has the meaning ascribed to it in Section 2.11(b).

"**Trigger Payments**" has the meaning ascribed to it in Section 2.11(b).

"**UTGO Bond Tax Levy**" shall mean that portion of the Aggregate UTGO Tax Levy in the amount that was allocable to the Prior UTGO Bonds.

"**UTGO Bonds**" shall mean the Municipal Obligation and the Stub UTGO Bonds.

"**UTGO Claims**" has the meaning ascribed to it in the recitals hereof.

"**UTGO Litigation**" has the meaning ascribed to it in Section 2.13.

Section 1.3.  Interpretation.  The Parties have participated jointly in the negotiation and drafting of this Agreement. If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any Party hereto because of the authorship of any provision of this Agreement.

Section 1.4.  General Rules of Construction.  For all purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires

(a)  Defined terms in the singular shall include the plural as well as the singular, and vice versa.

(b)  All accounting terms not otherwise defined herein shall have the meanings assigned to them, and all computations herein provided for shall be made, in accordance with generally accepted accounting principles.  All references herein to "generally accepted accounting principles" refer to such principles as they exist at the date of application there.

(c)  All references in this instrument to designated "Articles", "Sections" and other subdivisions are to the designated Articles, Sections and subdivisions of this instrument as originally executed.

(d)  The terms "herein", "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision.

(e)  All references in this instrument to a separate instrument are to such separate instrument as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(f)  The term "person" shall include any individual, corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization and any government or agency or political subdivision thereof.

## ARTICLE II
## SETTLEMENT TERMS

Section 2.1.  Claim Treatment.  The City hereby agrees that the total Allowed Claim relating to the Prior UTGO Bonds will be $388,000,000, allocated as follows:

(a)  $287,560,790 of the Prior UTGO Bonds which mature on or after April 1, 2015 will be restructured and allocated (i) among the Holders of the Prior UTGO Bonds which mature on or after April 1, 2015 on a Pro Rata basis, as set forth on

Schedule 1a annexed hereto (the "**Holders Restructured UTGO Bonds**") and (ii) the Bond Insurers and Syncora, as set forth on Schedule 1b (the "**Insurer Owned Restructured UTGO Bonds**" and, together with the Holders Restructured UTGO Bonds, the "**Restructured UTGO Bonds**"), and the Restructured UTGO Bonds will be restructured by delivery of the Municipal Obligation to the MFA and the delivery by the MFA of the MFA Bonds as described in Section 2.2 below, which, as restructured through the MFA, will be a full faith and credit general obligation payable from all legally available resources and secured, to the extent permitted by law, including Section 12(1)(x) of Act 436, by a lien upon the UTGO Bond Tax Levy, and payable and further secured by a lien on Distributable State Aid as provided in Section 2.3(a)(iii); and

(b)     The remainder of the Prior UTGO Bonds (the "**Stub UTGO Bonds**") which mature on or after April 1, 2015, in the principal amount of $43,349,210, will be reinstated and remain outstanding, and will be payable from the UTGO Bond Tax Levy, subject to the following terms and conditions:

(i)     The Holders' rights to the proceeds of the UTGO Bond Tax Levy in an amount equal to the principal and interest payable on the Stub UTGO Bonds (but subject to the prior rights of the holders of the Municipal Obligation) will be assigned under and pursuant to the Plan (without any consent or action on the part of, or additional consideration payable to, the Bond Insurers or the Holders) to a designee or designees of the City (the "**Assigned UTGO Bond Tax Proceeds**"), and such proceeds will not be paid to the paying agent for the UTGO Bonds.

(ii)     The obligations of the Bond Insurers to the Holders of the Prior UTGO Bonds that are not Holders Restructured UTGO Bonds under the existing applicable Bond Insurance Policies shall be unchanged.

(c)     The Bond Insurers shall be granted Allowed Claims for all amounts actually paid by the Bond Insurers to Holders of the Prior UTGO Bonds together with any policy advances made from and after the Effective Date by the Bond Insurers in respect of the Stub UTGO Bonds pursuant to this Agreement up to an aggregate amount of $100.5 million (the "**Bond Insurer Claims**"), which Allowed Claims shall receive distributions only when and if the Most Favored Nations clause set forth in Section 2.11 becomes operative and only pursuant to the terms of such Most Favored Nations clause.

Section 2.2.     Restructuring of Restructured UTGO Bonds by Delivery of Municipal Obligation to MFA and Delivery of MFA Bonds.

(a)     On or before the Effective Date (i), the Restructured UTGO Bonds will be restructured as follows:  By execution of the Emergency Manager Order the City will authorize the issuance and delivery of a local government municipal obligation (the "**Municipal Obligation**") to the Michigan Finance Authority ("**MFA**"), in accordance with applicable law, (ii) the City will request the MFA to issue its Local Government Loan Program Revenue Bonds, Series 2014 (City of Detroit Unlimited Tax General Obligation Restructured Local Project Bonds) (the "**MFA Bonds**"), and (iii) the

MFA Bonds shall be distributed Pro Rata to the Holders of the Holders Restructured UTGO Bonds as set forth on Schedule 1a annexed hereto and among the Bond Insurers and Syncora as set forth on Schedule 1b annexed hereto. The Municipal Obligation and the MFA Bonds will have the same principal amount (rounded down for each denomination to the nearest whole dollar), interest rate, payment dates, amortization schedule, prepayment terms (including first call date) and other financial terms (other than the pledge of Distributable State Aid and the priority of payment from the UTGO Bond Tax Levy relative to the Stub UTGO Bonds) as the Restructured UTGO Bonds (the "**Financial Terms**"). The MFA Bonds will be limited obligations of the MFA, payable from and secured by (i) payments made by the City on the Municipal Obligation and all right, title and interest in and to the Municipal Obligation, which shall include, to the extent permitted by applicable law, including without limitation Section 12(1)(x) of Act 436, a lien on the portion of the UTGO Bond Tax Levy allocable to the Municipal Obligation, pledged by the City to secure the Municipal Obligation as required by Section 2.3(a), and (ii) a lien, made a statutory lien as provided by the Shared Credit Rating Act, on moneys in the funds and accounts established for the MFA Bonds under the authorizing resolution for such bonds, including payments pledged by the City and received and held by the MFA or its trustee for the MFA Bonds, which include, without limitation, all payments of (x) the proceeds of the UTGO Bond Tax Levy and (y) Distributable State Aid deposited as described in Sections 2.4 and 2.5.

> (b)     All documents relating to the Municipal Obligation and the MFA Bonds will be in form and substance reasonably satisfactory to the Bond Insurers. Such documentation will include that the Master Indenture will not be amended in any manner which adversely affects the MFA Bonds or the rights of the Bond Insurers. Each Bond Insurer will insure the Series of MFA Bonds relating to the Holders Restructured UTGO Bonds originally insured by such Bond Insurer set forth on Schedule 1a attached hereto by either (i) issuing a new bond insurance policy (and to the extent applicable canceling the existing policy), (ii) endorsing its existing Bond Insurance Policy or (iii) amending its existing Bond Insurance Policy.

> (c)     Each of the MFA Bonds will be freely transferable through the DTC System under a unique CUSIP identification number that is separate and distinct from the CUSIP identification number for the Stub UTGO Bonds or, if the DTC System is discontinued with respect to the MFA Bonds, in such other manner as is permitted in accordance with their terms.

> (d)     The paying agent for the Prior UTGO Bonds shall issue new certificates representing the Stub UTGO Bonds to the Holders in principal amounts representing the balance of each Holder's Prior UTGO Bonds not restructured through the delivery of the MFA Bonds.

> Section 2.3.     The Municipal Obligation and Distributable State Aid. The City agrees, with the cooperation of the MFA, to restructure the Restructured UTGO Bonds as the Municipal Obligation as of the Effective Date. The City covenants and agrees that:

(a)    The Municipal Obligation:

(i)    will be approved pursuant to the Emergency Manager Order and in accordance with all applicable laws;

(ii)    will be payable from the unlimited tax full faith, credit and resources of the City and the UTGO Bond Tax Levy and secured, to the extent permitted by law, including without limitation Section 12(1)(x) of Act 436, by a lien granted by the City on the UTGO Bond Tax Levy pursuant to the Emergency Manager Order, the grant of which will be confirmed by the Bankruptcy Court in the Plan Confirmation Order (or, if applicable, the Approval Order);

(iii)    also will be secured by and payable from a portion of the City's Distributable State Aid, subject to a statutory lien and trust as provided in section 15(2) of the Shared Credit Rating Act;

(iv)    will have the same rights (other than priority) in and to the Distributable State Aid, and have the same protections (including, without limitation, a statutory lien to the same extent the 2010 Series A Bonds are secured by a statutory lien), as the 2010 Series A Bonds, except that the City's Deposit Date Balance Requirement (as defined in Section 2.5) with respect to the Municipal Obligation shall be as described in paragraph 2.5(e) below;

(v)    will have the identical Financial Terms as the Restructured UTGO Bonds; and

(vi)    will be pledged by the MFA to the bond trustee for the holders of the MFA Bonds pursuant to a resolution of the MFA authorizing the issuance of the MFA Bonds.

(b)    The UTGO Bond Tax Levy shall be escrowed and used to pay the Municipal Obligation prior to the use of Distributable State Aid in the same manner as provided for the 2010 Series A Bonds, as described herein.

(c)    Distributable State Aid will be pledged by the City and secured by a lien under the Master Indenture to be used for the purpose of paying principal of and interest on the Municipal Obligation and any additional bonds or other future obligations issued by the City and secured by Distributable State Aid.

(d)    The lien on Distributable State Aid for the Municipal Obligation will be a fourth priority lien, subordinate, as of the MFA Bonds issuance date, only to the following:

(i)    the first priority lien on Distributable State Aid for the City's $249,790,000 Distributable State Aid General Obligation Limited Tax Bonds, Series 2010 (the "**2010 Senior Bonds**");

CLI- 2220387v14

11

13-53846-swr  Doc 8904-3  Filed 12/10/14  Entered 12/10/14 12:46:59  Page 52 of 105
13-53846-tjr  Doc 8304-3  Filed 02/20/14  Entered 02/20/14 13:20:54  Page 52 of 165

(ii)     the second priority lien on Distributable State Aid for the City's 2010 Series A Bonds, which lien in favor of the 2010 Series A Bonds is subordinate to the lien in favor of the 2010 Senior Bonds; and

(iii)     the third priority lien on Distributable State Aid for the City's third-lien limited tax general obligations bonds (the "**Third Lien Bonds**") securing the MFA's $129,520,000 Local Government Loan Program Revenue Bonds, Series 2012C (City of Detroit Limited Tax General Obligation Local Project Bonds Third Lien), which lien in favor of the Third Lien Bonds is subordinate to the lien in favor of the 2010 Series A Bonds.

(e)     The Emergency Manager shall issue the Emergency Manager Order in substantially the form attached hereto as Exhibit B.

Section 2.4.     <u>Escrow and Application of Aggregate UTGO Tax Levy</u>.

(a)     The City agrees that, pursuant to documentation in form and substance satisfactory to the Parties, proceeds of the Aggregate UTGO Tax Levy collected by the City will be segregated and transmitted no less often than as provided in the schedule of Statutory Tax Collection Distribution Dates published by the Bureau of Local Government Services of the Michigan Department of Treasury, and in any event, no less often than (x) bi-monthly during the period beginning each July 1 and ending the following March 31, and (y) monthly during the period beginning April 1 and ending the following June 30 of each year, to U.S. Bank National Association as escrow trustee (the "**Debt Millage Escrow Trustee**"), to be held and distributed pursuant to the terms and conditions of the Debt Millage Escrow Agreement. The Debt Millage Escrow Trustee shall be required to allocate the revenue pro rata, as required by the Debt Millage Escrow Agreement, among the outstanding UTGO Bonds, the 2010 Series A Bonds, and any Additional Bonds.

(b)     Proceeds of the Aggregate UTGO Tax Levy allocated to the UTGO Bonds will be transferred promptly by the Debt Millage Escrow Trustee (i) first, for deposit to the Tax Levy Account held by the Master Trustee for the Municipal Obligation in an amount sufficient, together with funds already on deposit therein to pay debt service due on the Municipal Obligation on or before the April 1 following such deposit, together with any past due debt service on the Municipal Obligation, and (ii) second, to the assignee of the rights to payment from the Assigned UTGO Bond Tax Levy of amounts payable on the Stub UTGO Bonds on or before the April 1 following such deposit, an amount equal to the scheduled debt service on the Stub UTGO Bonds. Proceeds of the Aggregate UTGO Bond Tax Levy transferred to the Master Trustee for the purpose of paying debt service on the Municipal Obligation will be held in trust under applicable State law.

(c)     Neither the Holders of the MFA Bonds nor the Bond Insurers will seek payment from the proceeds of the UTGO Bond Tax Levy in excess of the amounts necessary to pay the Municipal Obligation scheduled annual debt service

plus any amount necessary to pay past due Municipal Obligation debt service plus any amounts required by Section 2.14(b).

Section 2.5.    Distributable State Aid and Flow of Funds.

(a)    Pursuant to the Agreement to Deposit Distributable State Aid, the State Treasurer has agreed to deliver 100% of the Distributable State Aid due the City to the Master Trustee for deposit under the Master Indenture for as long as the Municipal Obligation is outstanding.  Payments by the State Treasurer of Distributable State Aid will be deposited directly into the funds and accounts held by the Master Trustee in accordance with and as provided by the Agreement to Deposit Distributable State Aid and  the Master Indenture.  Distributable State Aid payments made to the Master Trustee for the purpose of paying debt service on the Municipal Obligation will be held in trust and subject to a statutory lien under applicable State law.

(b)    The Master Trustee will be required to deposit all of the City's Distributable State Aid in the Debt Retirement Fund established under the Master Indenture and allocate and set aside Distributable State Aid into the various Distributable Aid Escrow Funds as provided in the Master Indenture, including, without limitation, the Series 2014 DSA Escrow Fund defined in Section 2.5(d) below (the "**DSA Escrow Funds**") created pursuant to one or more supplemental indentures to the Master Indenture for the purpose of accumulating Distributable State Aid in amounts required by such supplemental indentures to be deposited in the DSA Escrow Funds by the dates specified in such supplemental indentures to pay debt service on the bonds and obligations of the City secured by a pledge of Distributable State Aid.

(c)    On each date that the State Treasurer deposits a payment of the City's Distributable State Aid (each a "**DSA Deposit**") with the Master Trustee (each a "**DSA Deposit Date**"), the Master Trustee shall set-aside such amounts as shall be sufficient to fund the minimum balances required to be on deposit in each DSA Escrow Fund to pay the then current annual principal and interest requirements on the related obligation as provided in the Master Indenture (each, a "**Deposit Date Balance Requirement**" and collectively the "**Deposit Date Balance Requirements**").  Any amounts remaining in the Debt Retirement Fund after the setting aside of the amounts necessary to satisfy the Deposit Date Balance Requirements of all DSA Escrow Funds, shall be released to the City for deposit to the General Fund of the City.

(d)    On or before the Effective Date, the City pursuant to a supplemental indenture to the Master Indenture shall establish with the Master Trustee a Series 2014 DSA Escrow Fund (the "**Series 2014 DSA Escrow Fund**") for the purpose of accumulating Distributable State Aid in sufficient amounts to pay debt service on the Municipal Obligation.  Moneys on deposit in the Series 2014 DSA Escrow Fund shall be held and withdrawn by the Master Trustee solely for the purpose of paying to the bond trustee for the holders of the MFA Bonds (as assignee of the MFA) the principal of and interest on the Municipal Obligation when due and payable, which payments will be used to make corresponding payments of principal and interest on the MFA Bonds.  Within the

Series 2014 DSA Escrow Fund there shall be created three separate and segregated sub-accounts designated the "Distributable Aid Account," the "Tax Levy Account," and the "General Account." Proceeds of the Aggregate UTGO Tax Levy allocated to the Municipal Obligation and transferred to the Master Trustee by the Escrow Agent pursuant to Section 2.4(b)(i) shall be deposited to the Tax Levy Account and used as described in subsection (f) below. That portion of Distributable State Aid necessary to pay the principal of and interest on the Municipal Obligation when due, shall be set aside and maintained in the Distributable Aid Account and used as described in subsection (e) below. All other moneys deposited to the Series 2014 DSA Escrow Fund from time to time by the City shall be set aside and maintained in the General Account and used as described in subsection (f) below.

(e)     To the extent the Master Trustee does not have on deposit in the Tax Levy Account the required portions of principal and interest due on the next October 1 or April 1 on the first day of each month set forth below (the "**Deposit Date Balance Requirement for the Municipal Obligation**"), the Master Indenture will provide for the deposit of all, or such lesser amount as is necessary to correct the deficiency in the Deposit Date Balance Requirement for the Municipal Obligation, of that month's distribution of Distributable State Aid into the Distributable State Aid Account of the Series 2014 DSA Escrow Fund (after all deposits to DSA Escrow Funds established to pay debt service on obligations of the City having priority over the Municipal Obligation) . The Deposit Date Balance Requirement for the Municipal Obligation will be as follows:

DEPOSIT DATE BALANCE REQUIREMENT

| MONTH OF DSA PAYMENT | PORTION OF NEXT MUNICIPAL OBLIGATION INTEREST PAYMENT | PORTION OF NEXT MUNICIPAL OBLIGATION PRINCIPAL PAYMENT |
|---|---|---|
| November | 1/3 | 4/6 |
| January | 2/3 | 5/6 |
| March | 100% | 100% |
| September | 100% | 3/6 |

(f)     Amounts on deposit in the Series 2014 DSA Escrow Fund shall be withdrawn from the DSA Escrow Fund for the purpose of paying debt service on the Municipal Obligation when due to the bond trustee for the holders of the MFA Bonds (as assignee of the MFA), which payments will be used to make corresponding payments of principal and interest on the MFA Bonds. Amounts shall be debited first from the Tax Levy Account in an amount necessary to pay the principal of and interest on the

Municipal Obligation on the corresponding payment date, and thereafter, if the amount on deposit in the Tax Levy Account is not sufficient to make the payments required, the amount necessary to satisfy the deficiency shall be debited, first, from the Distributable Aid Account, and second, from the General Account.

Section 2.6.    Additional Indebtedness.  From and after the date of this Agreement and, pursuant to documentation in form and substance satisfactory to the Parties, until the MFA Bonds have been paid in full:

(a)     the City shall not incur, or permit to be outstanding, debt secured by a lien on the Distributable State Aid that is senior to the lien securing the Municipal Obligation, other than debt secured by a lien on the Distributable State Aid on the date of this Agreement ("**Existing DSA Debt**") and additional debt ("**Additional DSA Debt**") secured on a second or third lien level so that the aggregate principal amount of (x) Existing DSA Debt (as of the effective date of this Agreement – i.e., $479,310,000) plus (y) the Additional DSA Debt thereafter issued will not exceed $560,000,000, provided that, with respect to any Additional Debt the existing financial covenants in the Master Indenture restricting the issuance of additional bonds under the Master Indenture are satisfied.

(b)     Notwithstanding clause (a), the City may issue first, second or third lien refunding bonds secured pursuant to the Master Indenture so long as any such refunding issuance results in debt service savings by the City in each year that such refunding bonds will be outstanding (based upon the amortization schedule in effect prior to the time of such refunding) or, if the last maturity of the MFA Bonds is prior to final maturity of the refunding bonds then to be issued, then in each year during which the MFA Bonds are outstanding.

(c)     The City shall not incur debt secured by a lien on the Distributable State Aid that is pari passu with the lien securing the Municipal Obligation.

(d)     The City may incur debt secured by a lien on the Distributable State Aid that is junior and subordinate to the lien securing the Municipal Obligation.

Section 2.7.    Levy and Collection of the Ad Valorem Debt Millage.

The Settlement-Related Documents will provide that:

(a)     The City shall impose in each year a separate debt millage levy reasonably projected to be in an amount necessary to pay the debt service coming due on all unlimited tax general obligation bonds (including both the Municipal Obligation and the Stub UTGO Bonds) before the next annual tax levy, including any past due amounts, plus any amounts necessary to reimburse the City for other City funds used to pay prior debt service, less any millage proceeds or other funds already on deposit with the Debt Millage Escrow Trustee which are available to pay the debt service next

coming due.  The City shall comply with applicable law in levying and collecting ad valorem millage levied to pay all unlimited tax general obligation bonds.

(b)     The City shall certify annually not later than June 30 in each year that it has imposed the debt millage levy as required by and in accordance with Section 2.7(a).  Such annual certification shall be in the form attached hereto as Exhibit C and shall be promptly provided to the Bond Insurers.

(c)     The City shall furnish to the Bond Insurers promptly upon request such information reasonably requested by the Bond Insurers to confirm the imposition of the debt millage levy and to monitor collections.  The Bond Insurers shall have the right to discuss such information with the City, and the City will use reasonable efforts to explain the collection process to the Bond Insurers, including the allocation methods used for partial property tax payments.

Section 2.8.     Plan Effectiveness and Escrowing of Payments.

(a)     If the Effective Date of the Plan does not occur on or prior to September 30, 2014 for any reason other than proximately by reason of the actions or positions taken by any of the executing Bond Insurers, or their failure to support the Plan as provided in Section 3.1 below, solely in their capacity as the insurers of the Prior UTGO Bonds and not in any other capacity (including, for the avoidance of doubt in their capacity as insurers of any other obligations of the City), the City will pay into an escrow to be established with the current paying agent for the Prior UTGO Bonds the pro rata portion of the October 2014 scheduled interest debt service payment and any pro rata payments of principal and interest due thereafter, which would otherwise be paid on the Restructured UTGO Bonds, as if the transaction contemplated by this Agreement (other than the MFA Bond issuance) had closed.  Specifically, and for clarification of the City's obligation under this paragraph, the City will pay into escrow the pro rata portion of scheduled debt service payments on the $287.56 million of Restructured UTGO Bonds due after September 30, 2014 through the Effective Date of the Plan, on the same terms and schedule as set forth in the current documents governing the Prior UTGO Bonds, which, subject to Section 2.8(b) below, such escrowed funds shall be released to the Bond Insurers on the Effective Date of the Plan.  Such escrow shall be pursuant to the Settlement Escrow Agreement ("**Settlement Escrow Agreement**") in the form of Exhibit D attached hereto, which will be executed and delivered on the date of the execution and delivery of this Agreement.

(b)     If the Plan is not effective by March 31, 2015, and the Bankruptcy Court has issued an Approval Order (that is not stayed pending appeal) approving the settlement embodied in this Agreement, then on [March 31, 2015] the monies in such escrow will be released to the Bond Insurers, and the City will make all subsequent debt service payments, including the payment due on April 1, 2015, directly to the paying agent for the Prior UTGO Bonds as if the Restructured UTGO Bonds transaction (other than the MFA Bond issuance) had closed. If an Approval Order is entered but is subject to a stay pending appeal, the City shall continue to pay into escrow

the scheduled debt service on the Prior UTGO Bonds for so long as such stay remains in effect, and shall release all monies in the escrow accounts as soon as such order is no longer subject to stay.

(c)     If the Plan is not effective by September 30, 2014, then within fifteen (15) days of a request by the Bond Insurers, the City shall file an Approval Motion pursuant to Bankruptcy Rule 9019 with the Bankruptcy Court. The City and the Bond Insurers may mutually make an Approval Motion pursuant to Bankruptcy Rule 9019 at any time upon mutual agreement of the City and the Bond Insurers.

Section 2.9.    Confirmation Order and Findings. The Plan Confirmation Order shall include provisions substantially in the form of Exhibit E. Any material modification to such provisions shall be reasonably satisfactory to the Parties.

Section 2.10.   Conditions to Plan Effectiveness. The Plan shall provide that the effectiveness of the Plan is subject to the following conditions:

(a)     The Michigan Finance Authority board shall have approved the issuance of the MFA Bonds and such bonds shall have been issued; and

(b)     The City shall have obtained all governmental and Emergency Manager consents and approvals required to carry out the terms of this Agreement.

Section 2.11.   Most Favored Nation. In recognition of the unique features of the UTGO Bonds and in consideration of the settlement, the City agrees that the Bond Insurers will benefit from a "most favored nation" provision consisting of the two fundamental protections below and that such provision will be described in the Plan. Further, the City agrees that, if a class of Impaired Financial Creditors receives treatment other than the current treatment in the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014)* [Docket No. 4392], such class' treatment in the Plan will include the existence of this "most favored nation" provision.

(a)     Recovery Percentage Projected as of Confirmation Date. Under no circumstances shall the terms of the Plan permit either of the Limited Tax General Obligation Claims or the COP Claims (each as defined in the Plan and collectively, the "**Impaired Financial Creditors**") to recover more on a percentage basis than the UTGO Claims as projected at Plan confirmation. In determining whether a Class of Impaired Financial Creditors will recover more on a percentage basis than the UTGO Claims as projected at Plan confirmation, the recovery percentage for each of the Impaired Financial Creditors' Claims will be the sum of:

(i)     the percentage that any cash payments and the principal amount of any "hard pay" instrument, combination of instruments or any other evidences of indebtedness or payment obligations of any kind (collectively, the "**Hard Pay Instruments**") provided to such Impaired Financial Creditor Class under the Plan is

CLI- 2220387v14

17

of the aggregate amount of all the Allowed Claims in such Impaired Financial Creditor Class; and

(ii)     the percentage that the reasonably anticipated recovery (as reasonably determined by the City as of Plan confirmation and as disclosed to creditors subject to the Bond Insurers' right to contest such determination as part of the confirmation hearing) on account of any "soft pay", contingent, or similar type of instrument, combination of instruments or any other evidences of indebtedness, contracts or settlements creating payment obligations of any kind including, without limitation, payment obligations relating to a sale, lease, privatization, public private partnership or similar arrangement or the value of any assets projected to be distributed or promised revenue streams or recoveries of any kind (collectively, the "**Soft Pay Instruments**" and together with the Hard Pay Instruments, the "**Plan Instruments**") provided to such Impaired Financial Creditor Class under the Plan is of the aggregate amount of all the Allowed Claims in such Impaired Financial Creditor Class.

(b)     Actual Recovery Percentage Post-Confirmation.  In the event the actual recovery percentage of any Impaired Financial Creditor Class on the aggregate Plan Instruments provided to such Impaired Financial Creditor's Class would result in such Class receiving 69.5% or more of the aggregate amount of all the Allowed Claims in any such Class (the "**Trigger Event**"), then payments that contribute to the Impaired Financial Creditor Class receiving a recovery over 69.5% (the "**Trigger Payments**") shall be made under such Plan Instruments to the Bond Insurers ("**Top-Off Payments**") on account of the Bond Insurer Claims in amounts equal to the following:

(i)     the amount of the Trigger Payment, multiplied by

(ii)     the quotient of

(A)     $100.5 million, divided by

(B)     the sum of (x) 30.5% of the aggregate amount of all the Allowed Claims in the particular Impaired Financial Creditor Class, and (y) $100.5 million.

For purposes of this sub-section, all actual recoveries for Impaired Financial Creditor Classes shall be determined by discounting the payments using a 5% discount rate back to the date of Plan confirmation.  Amounts payable to the Bond Insurers pursuant to the provisions of this Section 2.11 will be allocated to the Bond Insurers as set forth on Schedule 2 attached hereto.

(c)     Reporting.  The City shall deliver to the Bond Insurers:

(i)     promptly after the first payment is made thereunder, a written notice of any payment under any Soft Pay Plan Instrument benefiting any Impaired Financial Creditor Class, including the amount and date of such payment;

(ii) on each January 15 of every year beginning in the year after the first payment is made on any Soft Pay Plan Instrument benefiting any Impaired Financial Creditor Class and until the maturity date of the Soft Pay Instrument, a written report calculating the aggregate recovery percentage of each Impaired Financial Creditor Class;

(iii) after any Impaired Financial Creditor Class achieves a recovery percentage on the aggregate amount of all the Allowed Claims in such class equal to or greater than 60%, on each January 15 and July 15, a written report calculating the aggregate recovery percentage of each Impaired Financial Creditor Class;

(iv) after a Trigger Event occurs, a written report on each date that a payment is made under any Plan Instruments held by or benefiting an Impaired Financial Creditor Class that explains the calculation for the Trigger Payment and the Top-Off Payment and demonstrates compliance with the terms of this Agreement; and

(v) written notice in the event any Impaired Financial Creditor challenges or disagrees in any manner with the determination of any payments related to a Trigger Payment.

The City official executing any written notice or written report described above will respond within a reasonable time to written inquiries from any Bond Insurer regarding such notice or report. In the event any Bond Insurer or Insurers make a written request to meet with such City official, such City Official will meet within a reasonable time period with such Bond Insurer or Insurers to answer their reasonable questions regarding any such notice or report.

(d) <u>Dispute Resolution</u>. In the event any of the Bond Insurers provides a written notice to the City articulating disagreement with the City's determination of whether a Trigger Event has occurred or with the amount of shared payments after a Trigger Event pursuant to subsection 2.11(c)(iv), the City will notify all Bond Insurers and meet with the Bond Insurers within 15 business days of such written notice. At the meeting the Parties will attempt in good faith to resolve the differences. If the Parties are unable to reach a resolution of the differences the Bond Insurers will have the right to bring an enforcement action in the Bankruptcy Court.

Section 2.12. <u>Legal Opinions</u>.

Bond counsel will provide at closing customary legal opinions relating to the validity, priority and enforceability of any MFA transaction in form and substance reasonably satisfactory to the Bond Insurers; such opinions to include standard bankruptcy opinion exceptions. Bond counsel will also provide a customary opinion in form and substance reasonably satisfactory to the Bond Insurers, on the exemption of interest from Federal and State taxation of the MFA Bonds and the Municipal Obligation.

No opinion will be provided with respect to any aspect of any lien on the UTGO Bond Tax Levy.

Section 2.13. <u>Stay of Litigation, Proofs of Claim</u>.

(a)    The Assured/NPFG Action and Ambac Action (the "**UTGO Litigation**") as it relates to the Prior UTGO Bonds shall be stayed pending the issuance of an Approval Order or Plan Confirmation Order and the occurrence of the Effective Date, whereupon the Parties shall ask the Bankruptcy Court to dismiss the UTGO Litigation without prejudice until the Approval Order or the Plan Confirmation Order, as applicable, is a Final Order, when such dismissal shall be deemed to be with prejudice.

(b)    As soon as practicable subsequent to the execution and delivery of this Agreement by each of the Parties, but in no event later than five (5) business days subsequent thereto, the Parties shall take any and all action as is appropriate to (i) stay the UTGO Litigation as provided in subsection (a) above, (ii) maintain the status quo of the Parties in the UTGO Litigation as of the execution of this Agreement, and (iii) ensure that no action (including separate litigation and any objection to proofs of claim filed by the Bond Insurers relating to the Prior UTGO Bonds) is undertaken or commenced inconsistent with seeking a stay of and maintaining the status quo of the UTGO Litigation; <u>provided</u>, <u>however</u>, that any such stay shall terminate on the first (1st) business day following termination of this Agreement.

(c)    In the event (i) an Approval Motion is made by the City and denied by the Bankruptcy Court, (ii) an Approval Order is issued but is not consistent with this Agreement in any material respect or is overturned on appeal, (iii) a Plan consistent with this Agreement in all material respects is not confirmed by the Bankruptcy Court other than changes regarding payments relating to the Stub UTGO Bonds, or (iv) a Plan Confirmation Order is entered by the Bankruptcy Court but is not consistent in all material respects with this Agreement, or is overturned on appeal, then any Party (including one or more of the Bond Insurers as to such Bond Insurer or Bond Insurers) may resume the UTGO Litigation and terminate this Agreement as to such Party by written notice to the Parties.

(d)    The Bond Insurers agree that all proofs of claims filed by any of them with respect to Prior UTGO Bonds shall be deemed resolved and fully satisfied by approval of this Agreement in the Plan Confirmation Order, which is a Final Order or an Approval Order, which is a Final Order, as applicable.

Section 2.14. <u>Additional Covenants</u>

(a)    <u>City Will Not Contest</u>. The City shall not contest the validity or enforceability of any of the liens or interests granted under this Agreement or any of the obligations of the City set forth in this Agreement.

(b)     Paying Agent, Master Trustee and Escrow Agent Fees.
The City shall pay the reasonable and customary fees and expenses (including reasonable attorneys' fees) of (i) the paying agent with respect to the Prior UTGO Bonds (including the paying agent relating to the Prior UTGO Bonds that are not Holders Restructured UTGO Bonds) and (ii) of the paying agent, the Master Trustee, the Debt Millage Escrow Trustee and the escrow agent identified in the Settlement Escrow Agreement in respect of all transactions contemplated by this Agreement.

(c)     Further Action. To the extent that the City has not taken all necessary action to authorize the execution, delivery and performance of this Agreement, it will do so.


# ARTICLE III
# PLAN OF ADJUSTMENT AND PLAN SUPPORT

Section 3.1.     Plan Support Commitment. From and after the date hereof, and so long as the City has complied, and is complying, with its covenants and obligations under this Agreement, the Bond Insurers will each support the treatment of the Prior UTGO Bonds in the Plan by, at a hearing or in a court filing, expressing such support solely as insurers of the Prior UTGO Bonds and, if each Bond Insurer has established its right to vote, will each vote Prior UTGO Bonds and reimbursement claims in support of such Plan treatment. The Plan shall provide that such treatment, consistent with this Agreement, is the treatment for all holders of the Prior UTGO Bonds. For the absence of doubt, nothing contained in this Agreement shall require any Bond Insurer to support or vote for the treatment of any class of claims under the Plan other than the UTGO Bonds.

Section 3.2.     Solicitation Required in Connection with Plan. Notwithstanding anything contained in this Article III or elsewhere in this Agreement to the contrary, this Agreement is not, and shall not be deemed to be, a solicitation of acceptances of the Plan. The City and the Bond Insurers acknowledge and agree that the acceptance of the Plan will not be solicited until the Bankruptcy Court has approved the Disclosure Statement and related ballots, and such Disclosure Statement and ballots have been transmitted to parties entitled to receive same.

Section 3.3.     Plan Document Provisions. All Plan Documents, as they relate to the settlement embodied in this Agreement must (i) be in form and substance reasonably satisfactory to the Bond Insurers and to the City and be consistent with this Agreement, (ii) provide that the Plan treatment for Prior UTGO Bonds is part of a settlement of the pending UTGO Litigation.

# ARTICLE IV
## DEFAULTS AND REMEDIES

Section 4.1.    <u>Events of Default</u>.  The breach by any Party of any material agreement or covenant set forth in this Agreement or the Settlement Escrow Agreement will be an event of default ("**Event of Default**") under this Agreement.

Section 4.2.    <u>Remedies</u>.  The Parties acknowledge and agree that a breach of the provisions of this Agreement by any Party would cause irreparable damage to the other Parties and that such other Parties would not have an adequate remedy at law for such damage.  Therefore, the obligations of the Parties set forth in this Agreement and the Settlement Escrow Agreement shall be enforceable by an order compelling specific performance issued by the Bankruptcy Court, and appropriate injunctive relief may be applied for and granted in connection therewith.  Upon an Event of Default by the City, any Bond Insurer will have the right to compel immediate payment of amounts held under the Settlement Escrow Agreement by order of the Bankruptcy Court.  Such remedies shall be cumulative and not exclusive and shall be in addition to any other remedies that the Parties may have under this Agreement, the Settlement Escrow Agreement or otherwise. Any Bond Insurer may exercise its rights hereunder on its own. Consistent with Section 904 of the Bankruptcy Code, the City hereby consents to the Bankruptcy Court enforcing the terms of this Agreement and the Settlement Escrow Agreement.

Section 4.3.    <u>Termination</u>.

(a)    This Agreement may be terminated by the mutual agreement of all of the Bond Insurers upon an Event of Default caused by the City.  This Agreement may be terminated by less than all of the Bond Insurers as to such Bond Insurer or Bond Insurers upon an Event of Default caused by the City  if (i) an action or proceeding seeking to enforce the material agreement or covenant purported to be breached is brought by one or more Bond Insurers before the Bankruptcy Court, (ii) the Bankruptcy Court, after notice and a hearing, finds that an Event of Default caused by the City has occurred <u>and</u> (iii) either (A) the Bankruptcy Court declines to issue an order compelling specific performance by the City of the applicable agreement or covenant purported to be breached or (B) the Bankruptcy Court issues such an order compelling specific performance but the City fails to comply with the order.

(b)    This Agreement may be terminated by the City if any of the Bond Insurers fails to (i) support the Plan with respect to Class 8 – UTGO Claims or (ii) if it has the right to vote its Class 8 Claims as determined by the voting procedures process approved by the Bankruptcy Court in an order entered on March 11, 2014 (Docket No. 2984) (as such order may have been amended from time to time), vote its Class 8 Claims to accept the Plan.  This Agreement may be terminated by the City upon an Event of Default caused by the Bond Insurers, or any of them, if (i) an action or proceeding seeking to enforce the material agreement or covenant purported to be breached is brought by the City before the Bankruptcy Court, (ii) the Bankruptcy Court finds, after

notice and a hearing, that an Event of Default caused by the applicable Bond Insurer has occurred and (iii) either (A) the Bankruptcy Court declines to issue an order compelling specific performance by the applicable Bond Insurer of the applicable agreement or covenant purported to be breached or (B) the Bankruptcy Court issues such an order compelling specific performance but the applicable Bond Insurer fails to comply with the order.

(c)     Upon any such termination, any Party (including one or more of the Bonds Insurers as to such Bond Insurer or Bond Insurers) may resume the UTGO Litigation unless it has been previously dismissed with prejudice or has been previously deemed dismissed with prejudice.


ARTICLE V
REPRESENTATIONS AND WARRANTIES

Section 5.1.     Representations and Warranties of the City.  The City represents and warrants to the Bond Insurers that:

(a)     It is a municipal corporation of the State of Michigan.

(b)     It has the power to execute and deliver this Agreement and to perform its obligations hereunder and it has taken or will take all necessary action to authorize such execution, delivery and performance.

(c)     Such execution, delivery and performance do not violate or conflict with any law applicable to it, any order or judgment of any court or other agency of government applicable to it, or any material agreements specifically applicable to it or any of its assets.

(d)     Other than (i) approvals by the MFA, the State Treasurer, the execution of the Emergency Manager Order, and the approvals required by Section 19 of Act 436 to be obtained prior to delivery of the Municipal Obligation, all of which the City reasonably expects to be obtained prior to the Effective Date, and (ii) the approval of the Bankruptcy Court, all governmental and Emergency Manager consents and approvals that are required to have been obtained by it as of the date of execution of this Agreement with respect to the execution, delivery and performance of this Agreement have been obtained and are in full force and effect and all conditions of any such consents and approvals have been complied with.

Section 5.2.     Representations and Warranties of the Bond Insurers.  Each of the Bond Insurers represents to the City that:

(a)     It is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation.

(b)     It has the power to execute and deliver this Agreement and to perform its obligations under this Agreement and it has taken all necessary corporate action to authorize such execution, delivery and performance.

(c)     Such execution, delivery and performance do not violate or conflict with any law applicable to it, any provision of its constitutional documents, any order or judgment of any court or other agency of government applicable to it, or any agreements specifically applicable to it or any of its assets.

(d)     All corporate or governmental consents and approvals that are required to have been obtained by it with respect to this Agreement have been obtained and are in full force and effect and all conditions of any such consents and approvals have been complied with.

(e)     Each of the respective Bond Insurers had and has standing to bring and resolve the UTGO Litigation related to the Prior UTGO Bonds that it insures (Assured and NPFG represent that each had and has standing to bring and resolve the Assured/NPFG Action, and Ambac represents that it had and has standing to bring and resolve the Ambac Action).

Section 5.3.    Mutual Representations and Warranties.  Unless otherwise noted, each Party makes the following representations, warranties and covenants (on a several basis, with respect to such Party only) to each of the other Parties:

(a)     Each person signing this Agreement warrants that he or she is legally competent and authorized to execute this Agreement on behalf of the Party whose name is subscripted at or above such person's signature.

(b)     The Parties have not made any statement or representation to each other regarding any facts relied upon by them in entering into this Agreement, and each of them specifically does not rely upon any statement, representation or promise of the other Parties hereto or any other person in entering into this Agreement, except as expressly stated herein or in the exhibits hereto.  Each party has relied upon its own investigation and analysis of the facts and not on any statement or representation made by any other party in choosing to enter into this Agreement and the transactions contemplated herein.

(c)     The Parties and their respective attorneys have made such investigation of the facts pertaining to this Agreement and all of the matters pertaining thereto as they deem necessary.

## ARTICLE VI
## EXCULPATION

Section 6.1.    Exculpation.  The Plan will include the Bond Insurer Exculpated Parties as exculpated parties for acts and omissions (other than those

constituting gross negligence or willful misconduct) in connection with (i) the Plan as it relates to this Agreement and (ii) this Agreement.

Section 6.2.  Releases.  Upon the dismissal with prejudice or deemed dismissal with prejudice of the applicable UTGO Litigation, the Parties to the applicable UTGO Litigation shall be deemed to have released each other, and the Parties' officials, officers, directors, employees and representatives, of and from any and all claims and causes of action related to the applicable UTGO Litigation and the Prior UTGO Bonds.

Section 6.3.  Defense Against Challenges.  (a) Subject to the terms of Section 6.3(b) below, if, after the issuance of the Plan Confirmation Order or the Approval Order, the validity or enforceability of any term or provision of this Agreement or the Settlement-Related Documents (as they relate to the settlement set forth in this Agreement) is challenged in any action, suit or proceeding, each of the named Parties in such action, suit or proceeding shall assume its own defense of such action, suit or proceeding.

(b) If, after the issuance of the Plan Confirmation Order or the Approval Order, an action, suit or proceeding is brought, an issue in which is the validity or enforceability of the Stub UTGO Bonds, including, without limitation, a challenge to the Assigned UTGO Bond Tax Proceeds (a "**Stub UTGO Challenge**"), the City shall assume the defense of such issue in any such action, suit or proceeding.  If any of the Bond Insurers are named as a party in a Stub UTGO Challenge, the City will appoint counsel to the named Bond Insurers, which may or may not be counsel to the City.  In all events, such counsel must be reasonably acceptable to the named Bond Insurers, and the City will pay the reasonable costs of such counsel.

## ARTICLE VII
## DISMISSAL OF CASE AND TERMINATION

Section 7.1.  Effect of Dismissal of the Bankruptcy Case.  In the event the Bankruptcy Case is dismissed, any Party may at any time within 60 days after such dismissal immediately terminate this Agreement by written notice to the other Parties.

Section 7.2.  Effect of Termination.  In the event of the termination of this Agreement by any Party pursuant to any provisions of this Agreement, this Agreement shall become null and void and be deemed of no force and effect, with no liability on the part of any Party hereto (or of any of its elected or appointed officials, directors, officers, employees, consultants, contractors, agents, legal and financial advisors or other representatives) arising from such termination, and no Party shall have any obligations to any other Party arising out of this Agreement.  Upon termination, neither this Agreement nor any terms or provisions set forth herein shall be admissible in any dispute, litigation, proceeding or controversy among the Parties and nothing contained herein shall constitute or be deemed to be an admission by any Party as to any matter, it being understood that the statements and resolutions reached herein were as a result of negotiations and compromises of the respective positions of the Parties.  If this

Agreement is terminated, then no Party hereto may (i) use this Agreement, any of its terms or any discussions or negotiations conducted in respect of this Agreement, or any part of the foregoing, in the UTGO Litigation; (ii) seek discovery with respect to any of the matters described in subsection (i) in the UTGO Litigation; or (iii) seek to admit any of the matters described in subsection (i) into evidence in the UTGO Litigation.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.1.  <u>Amendments</u>.  This Agreement may not be modified, amended or supplemented except by a written agreement executed by each Party to be affected by such modification, amendment or supplement.

Section 8.2.  <u>No Admission of Liability</u>.

(a)  The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any claim or defense) by any Party to any other Party or any other person with respect to any of the matters addressed in this Agreement.

(b)  None of this Agreement (including, without limitation, the recitals and exhibits hereto), the settlement or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:  (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any claim or of any wrongdoing or liability of any Party; or (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any Party in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. None of this Agreement, the settlement, or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement shall be admissible in any proceeding for any purposes, except to enforce the terms of the Agreement, and except that any Party may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense of counterclaim.

Section 8.3.  <u>Good Faith Negotiations</u>.  The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement.  Each of the Parties acknowledges that the negotiations leading up to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; that each knows all of the relevant facts and his or its rights in connection therewith, and that he or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party to this

Agreement. The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the claims between the Parties settled by the execution of this Agreement.

Section 8.4.    <u>Rights and Remedies</u>.  Nothing in this Agreement is intended to augment or impair any rights, remedies and interests, including without limitation, liens, of any of the Parties hereto other than with respect to the Prior UTGO Bonds.

Section 8.5.    <u>Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 8.6.    <u>Governing Law; Retention of Jurisdiction; Service of Process</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Michigan, without giving effect to any principles of conflicts of law and applicable federal law.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding between any or all of the foregoing with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Bankruptcy Court for that purpose only, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 8.11 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 8.11 hereof. The City agrees that the Bankruptcy Court will have exclusive post-confirmation authority and power to enforce this Agreement and all Settlement-Related Documents and to hear and adjudicate any challenge, action, suit or proceeding brought by any third party challenging the validity or enforceability of any provision of this Agreement, until all UTGO Bonds have been paid in full and all Plan Instruments are no longer outstanding. Pursuant to Section 904 of the Bankruptcy Code, the City hereby consents to the Bankruptcy Court enforcing the terms of this Agreement and the Settlement Escrow Agreement.

Section 8.7.    <u>Headings</u>.  The headings of the Articles and Sections of this Agreement are inserted for convenience only and are not part of this Agreement and do

not in any way limit or modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 8.8. <u>Binding Agreement Successors and Assigns; Joint and Several Obligations</u>. This Agreement shall be binding upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives. The agreements, representations, covenants and obligations of the Parties under this Agreement are several only and not joint in any respect and none shall be responsible for the performance or breach of this Agreement by another.

Section 8.9. <u>Entire Agreement</u>. This Agreement shall constitute the full and entire agreement among the Parties with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

Section 8.10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 8.11. <u>Notices</u>. All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (a), when personally delivered by courier service or messenger, (b) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted electronically (by e-mail transmission), by facsimile or telecopier, with confirmation of receipt, or (c) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid-return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

If to the City, to:

> Chief Financial Officer
> City of Detroit
> 1126 Coleman A. Young Municipal Center
> Two Woodward Avenue
> Detroit MI 48226
> Phone: (313) 224-3382
> Fax: (313) 224-2827

with a copy given in like manner to:

> Corporation Counsel
> City of Detroit Law Department
> Coleman A. Young Municipal Center
> 2 Woodward Avenue
> Detroit MI 48226
> Phone: (313) 237-3018
> Fax: (313) 224-5505

> Miller, Canfield, Paddock and Stone, PLC
> 150 West Jefferson, Suite 2500
> Detroit, MI 48226
> Attention: Jonathan Green
> Email: green@millercanfield.com
> Attention: Amanda Van Dusen
> Email: vandusen@millercanfield.com

If to the Bond Insurers, to:

> Ambac Assurance Corporation
> One State Street Plaza
> New York, New York 10004
> Attention: Surveillance Department and General Counsel's Office
> Fax: (212) 208-3384

with a copy given in like manner to:

> Arent Fox LLP
> 1675 Broadway
> New York, New York 10019
> Attention: David L. Dubrow, Esq.
> Telecopy: (212) 484-3990
> Email: david.dubrow@arentfox.com

> Assured Guaranty Municipal Corp and Assured Guaranty Corp.
> 31 West 52nd Street
> New York, NY 10019
> Attention: Kevin J. Lyons
> Email: klyons@assuredguaranty.com
> Attention: Terence Workman
> Email: tworkman@assuredguaranty.com

with a copy given in like manner to:

Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
Attention: Lawrence A. Larose
Fax: (212) 541-5369
Email: llarose@chadbourne.com
Attention: Samuel S. Kohn
Fax: (212) 541-5369
Email: skohn@chadbourne.com

National Public Finance Guarantee Corporation
113 King Street
Armonk, NY 10504
Attention: Kenneth Epstein and William J. Rizzo
Telecopy: (914) 765-3259
Email: kenneth.epstein@optinuityar.com
Email: bill.rizzo@nationalpfg.com

with a copy given in like manner to:

Sidley Austin LLP
555 West 5th Street
40th Floor
Los Angeles, CA 90013
Attention: Jeffrey E. Bjork
Telecopy: (213) 896-6600
Email: jbjork@sidley.com

Sidley Austin LLP
555 California Street
Suite 2000
San Francisco, CA 94104
Attention: Eric D. Tashman
Telecopy: (415) 772-7400
Email: etashman@sidley.com

Section 8.12. <u>Further Assurances</u>. Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

Section 8.13. <u>Non-Severability of Agreement</u>. This Agreement is to be construed as a whole, and all provisions of it are to be read and construed together. Notwithstanding anything in this Agreement, the Approval Order (if applicable) or the Plan Confirmation Order to the contrary, and in light of the integrated nature of the settlements and compromises embodied in this Agreement, in the event that (i) a court of

competent jurisdiction enters a Final Order ruling that any of the transactions contemplated in this Agreement are void, invalid, illegal or unenforceable in any material respect, (ii) any of the transactions contemplated by this Agreement are reversed, vacated, overturned, voided or unwound in any material respect, or (iii) the Approval Order or Plan Confirmation Order as it relates to the transactions contemplated in this Agreement is reversed, vacated, overturned or amended in any material respect, then in each case, the entirety of this Agreement (other than this Section 8.13) shall be void ab initio and of no force and effect and, during any subsequent proceeding, the Parties shall not assert claim preclusion, issue preclusion, estoppel or any similar defense in respect of rights and claims of the Parties that were the subject of this Agreement prior to this Agreement being of no force or effect.

(Signature page follows)

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

THE CITY OF DETROIT, as Debtor

By: _____
      Name:
      Title:

AMBAC ASSURANCE CORPORATION

By: _____
      Name:
      Title:

ASSURED GUARANTY CORP.

By: _____
      Name:
      Title:

ASSURED GUARANTY MUNICIPAL CORP.

By: _____
      Name:
      Title:

NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION

By: _____
      Name:
      Title:

**Schedule 1**


**(Pro Rata Allowed Claims for Restructured UTGO Bonds and Stub UTGO Bonds)**

## Schedule 1a - Holders Restructured UTGO Bonds

| Series | Outstanding UTGO Bond Principal | Restructured % | Holders Restructured UTGO Bond Principal |
|---|---|---|---|
| UTGO1999A (Assured) | $15,765,000 | 84.50% | $13,321,425 |
| UTGO2001A1 (National) | 74,800,000 | 84.50% | 63,206,000 |
| UTGO2001B (National) | - | - | - |
| UTGO2002 (National) | 6,645,000 | 84.50% | 5,615,025 |
| UTGO2003A (Syncora) | 31,675,000 | 84.50% | 26,765,375 |
| UTGO2004A1 (Ambac) | 39,270,000 | 84.50% | 33,183,150 |
| UTGO2004B1 (Ambac) | 29,365,000 | 84.50% | 24,813,425 |
| UTGO2004B2 (Ambac) | 575,000 | 84.50% | 485,875 |
| UTGO2005B (Assured) | 42,615,000 | 84.50% | 36,009,675 |
| UTGO2005C (Assured) | 15,525,000 | 84.50% | 13,118,625 |
| UTGO2008A (Assured) | 55,895,000 | 84.50% | 47,231,275 |
| UTGO2008B1 (Assured) | 18,780,000 | 84.50% | 15,869,100 |
| Total | $330,910,000 | | $279,618,950 |

**Schedule 1b - Insurer Owned Restructured UTGO Bonds**

| Series | UTGO Bond Principal | Restructured % | Ambac | Assured | National | Syncora | Total |
|---|---|---|---|---|---|---|---|
| | | | Insurer Owned Restructured UTGO Bond Principal | | | | |
| UTGO1999A (Assured) | $15,765,000 | 2.4% | - | 378,360 | - | - | $378,360 |
| UTGO2001A1 (National) | 74,800,000 | 2.4% | 249,977 | 1,545,223 | - | - | 1,795,200 |
| UTGO2001B (National) | - | 2.4% | - | - | - | - | - |
| UTGO2002 (National) | 6,645,000 | 2.4% | 22,207 | 137,273 | - | - | 159,480 |
| UTGO2003A (Syncora) | 31,675,000 | 2.4% | 99,245 | 613,476 | - | 47,479 | 760,200 |
| UTGO2004A1 (Ambac) | 39,270,000 | 2.4% | 942,480 | - | - | - | 942,480 |
| UTGO2004B1 (Ambac) | 29,365,000 | 2.4% | 704,760 | - | - | - | 704,760 |
| UTGO2004B2 (Ambac) | 575,000 | 2.4% | 13,800 | - | - | - | 13,800 |
| UTGO2005B (Assured) | 42,615,000 | 2.4% | - | 1,022,760 | - | - | 1,022,760 |
| UTGO2005C (Assured) | 15,525,000 | 2.4% | - | 372,600 | - | - | 372,600 |
| UTGO2008A (Assured) | 55,895,000 | 2.4% | - | 1,341,480 | - | - | 1,341,480 |
| UTGO2008B1 (Assured) | 18,780,000 | 2.4% | - | 450,720 | - | - | 450,720 |
| Total | $330,910,000 | | $2,032,469 | $5,861,892 | $ - | $47,479 | $7,941,840 |

**Schedule 2**

**(Pro Rata Payments to Bond Insurers)**

**Schedule 2 - Allocation of Amount Payable to Bond Insurers**

| Insurer | Pro Rata Share |
|---------|----------------|
| Ambac | 23.209% |
| Assured | 50.400% |
| National | 26.391% |
| Total | 100.000% |

**Exhibit A**

**FORM OF DEBT MILLAGE ESCROW AGREEMENT**

A-1

# DEBT MILLAGE DEPOSIT ESCROW AGREEMENT
## CITY OF DETROIT, COUNTY OF WAYNE
## STATE OF MICHIGAN

THIS ESCROW AGREEMENT (the "Agreement") dated as of the ___ day of _____, 2014, made by and between the City of Detroit, County of Wayne, State of Michigan (the "City") and U. S. Bank National Association, Detroit, Michigan (the "Escrow Trustee").

## WITNESSETH:

WHEREAS, on March 1, 2013, the Governor (the "Governor") of the State of Michigan (the "State") determined that a financial emergency existed within the City pursuant to the Local Government Fiscal Responsibility Act, Act 72, Public Acts of Michigan, 1990, as amended ("Act 72"); and

WHEREAS, on March 14, 2013, the Governor confirmed that a financial emergency existed within the City and, pursuant to Act 72, assigned to the Local Emergency Financial Assistance Loan Board established pursuant to the Emergency Municipal Loan Act, Act 243 Public Acts of Michigan, 1980, as amended (the "Board") the responsibility for managing the financial emergency; and

WHEREAS, on March 14, 2013, pursuant to Act 72, the Board appointed Kevyn D. Orr as Emergency Financial Manager for the City; and

WHEREAS, by operation of law the financial emergency continues to exist within the City pursuant to the Local Financial Stability and Choice Act, Act 436, Public Acts of Michigan, 2012 ("Act 436") and the Emergency Financial Manager continues in the capacity of the Emergency Manager for the City (the "Emergency Manager"); and

WHEREAS, on July 18, 2013 (the "Petition Date"), in accordance with Act 436 and the approval of the Governor, the Emergency Manager filed on behalf of the City a petition for relief pursuant to Chapter 9 of title 11 of the United States Code, 11 U.S.C. Sections 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"); and

WHEREAS, as of the close of Fiscal Year 2013 (*i.e.*, June 30, 2013), the City had $369.115 million in outstanding principal amount of unlimited tax general obligation bonds, excluding the 2010A UTGO Bonds hereinafter mentioned (the "Prior UTGO Bonds"); and

WHEREAS the City has previously issued and delivered its Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation) Series 2010A (Taxable Recovery Zone Economic Development Bonds Direct Payment) (the "2010A UTGO Bonds") which, together

with the Prior UTGO Bonds, are outstanding in the amounts, bear interest at the rates, are payable on such dates and have the redemption provisions shown on Exhibit A hereto; and

WHEREAS, more than 90% of the Prior UTGO Bonds are insured by either Ambac Assurance Corporation, Assured Guaranty Municipal Corp. or National Public Finance Guarantee Corporation (each a "Bond Insurer" and collectively, the "Bond Insurers"), as shown on Exhibit A; and

WHEREAS, the City and the Bond Insurers have entered into a settlement agreement entered into as of July ___, 2014 (the "UTGO Settlement Agreement"); and

WHEREAS, the City intends to restructure $287,560,790 of the Prior UTGO Bonds which mature on or after April 1, 2015 (the "Restructured UTGO Bonds") as described below; and

WHEREAS, on _____, 2014, pursuant to Section 12(1) and Section 19(1) of Act 436, the Emergency Manager filed with the City Council of the City (the "City Council") his Order No. ___ Approval of _____ (Order No. ___"), in part, to accomplish the restructuring of the Restructured UTGO Bonds as the Distributable State Aid Fourth Lien Restructured Bonds (Unlimited Tax General Obligation), Series 2014 (the "Bonds" or the "Municipal Obligation") in the amounts shown on Exhibit B attached hereto; and

WHEREAS, on _____, 2014, in accordance with Section 19(1) of Act 436, the City Council adopted a resolution entitled ["Resolution of the City Council of the City of Detroit, County of Wayne, State of Michigan Approving the Emergency Manager of the City of Detroit Order No. ___ Approval of UTGO _____"] (the "Council Resolution") under which the City Council approved the issuance and delivery of the Municipal Obligation to the Michigan Finance Authority ("MFA"); and

WHEREAS, the Restructured UTGO Bonds will be restructured as described in Section 2.2 of the UTGO Settlement Agreement: and

WHEREAS, on _____, 2014, the Bankruptcy Court issued an order approving the UTGO Settlement Agreement (the "Confirmation Order"); and

WHEREAS, the portion of the Prior UTGO Bonds not restructured through the issuance of the Municipal Obligation, which mature on or after April 1, 2015, in the principal amount of $43,410,000 (the "Stub UTGO Bonds" and together with the 2010A UTGO Bonds, the Municipal Obligation and any Additional Bonds (defined below), the "UTGO Bonds") will be reinstated and shall remain Outstanding in the amounts and will remain payable as shown on Exhibit C hereto and as provided in Order No. _____; and

WHEREAS, pursuant to the Prior UTGO Bonds and the 2010A UTGO Bonds and Order No. ___ and Section 4a of Act 279, the City has pledged, and to the extent permitted by applicable law, including without limitation Section 12(1)(x) of Act 436, in Order No. __, has created a lien upon the Debt Millage Revenues (as hereinafter defined) to pay the debt service on the UTGO Bonds; and

2

WHEREAS, pursuant to Section 4a of Act 279, and Section 701 of the Revised Municipal Finance Act, Act No. 34, Public Acts of Michigan, 2001, as amended, Order No. ___ provides for the deposit of the Debt Millage Revenues into a separate escrow account to be used for the sole purpose of paying principal of and interest on the UTGO Bonds and the administrative costs related to the deposit and escrow of Debt Millage Revenues; and

WHEREAS, in order to effectuate the pledge of the Debt Millage Revenues in favor of the owners of the UTGO Bonds, it is necessary for the City to provide for the deposit with the Escrow Trustee of the proceeds of 100% of its debt millage levy to satisfy the Debt Service Requirements to be held by the Escrow Trustee in trust, to further secure payment of the debt service on the UTGO Bonds;

NOW, THEREFORE, in consideration of the mutual undertakings, provisions and agreements herein contained, the sufficiency of which are hereby acknowledged, that in order to provide for the payment of the UTGO Bonds, for the benefit of the owners thereof and the Bond Insurers, and to secure the performance and observance of the conditions and covenants herein set forth and for other valuable consideration, the receipt of which is hereby acknowledged, the City covenants and agrees with the Escrow Trustee for the benefit of the respective owners from time to time of the UTGO Bonds and the Bond Insurers as follows:

## ARTICLE I
## DEFINITIONS

Section 101.   Definitions.  In addition to the terms defined in the preambles to this Escrow Agreement , the following terms shall have, unless the context otherwise requires, the meanings herein specified:

"Act 279" means Act No. 279, Public Acts of Michigan, 1909, as amended.

"Additional Bonds" means any series of unlimited tax general obligation bonds issued by the City on a parity as to Debt Millage Revenue levies with the 2010A UTGO Bonds, the Municipal Obligation and the Stub UTGO Bonds.

"Business Day" means a day which is not (i) a Saturday, Sunday or legal holiday on which banks located in either the State of Michigan or the state or states in which the principal corporate trust office of the Escrow Trustee, is located are authorized or required by law to be closed, or (ii) a day on which the New York Stock Exchange is closed.

"Debt Millage Deposit" or "Debt Millage Deposits" means whenever used herein singularly, each payment of Debt Millage Revenues, and collectively all payments of Debt Millage Revenues by the City to the Escrow Trustee for deposit in the UTGO Debt Millage Fund in accordance with Section 204 hereof.

"Debt Millage Revenues" means the proceeds of the debt millage levies, including interest subsidy payments received by the City in respect of the 2010A UTGO Bonds, delinquent millage payments received from Wayne County, Michigan or otherwise, pledged to and on

3

account of unlimited tax general obligation bonds of the City for the payment of debt service on the Prior UTGO Bonds, or after the Effective Date of the UTGO Bonds, and the 2010A UTGO Bonds and any Additional Bonds.

"Debt Retirement Schedule" means the table attached as Exhibit D hereto, showing the dates Debt Service Requirements are due and payable on each series of the UTGO Bonds.

"Debt Service Requirement" means an amount equal to the principal of and/or interest due on any series of UTGO Bonds (including the Stub UTGO Bonds) semi-annually on each payment date as set forth in Exhibit D.

"Effective Date" mean the effective date of the City's chapter 9 plan of adjustment.

"Escrow Trustee" means initially, U.S. Bank National Association, Detroit, Michigan, or any successor in trust or assignees, as Escrow Trustee hereunder.

"Event of Default" means the breach by the City of any material agreement or covenant set forth in the UTGO Settlement Agreement or this Agreement, written notice of which has been provided by a Bond Insurer to the City and the Escrow Trustee.

"Fiscal Year" means the City's fiscal year, commencing July 1 and ending June 30.

"General Retirement System" means the General Retirement System of the City of Detroit, _____ Fund.

"Income Stabilization Funds" means the Police & Fire Retirement System of the City of Detroit, Income Stabilization Fund, and the General Retirement System of the City of Detroit, Income Stabilization Fund.

"Master Trustee" means U. S. Bank National Association, Detroit, Michigan, as trustee under the Master Debt Retirement Trust Indenture dated as of March 1, 2010, as supplemented, between the City and the Master Trustee.

"Outstanding" when used with respect to the UTGO Bonds, means, as of the date of determination, the UTGO Bonds theretofore authenticated and delivered pursuant to the resolution, indenture and/or order for that series, except:

(a) UTGO Bonds theretofore canceled by the trustee or paying agent for such UTGO Bonds or delivered to such trustee or paying agent for cancellation;

(b) UTGO Bonds for whose payment money in the necessary amount, without the need for reinvestment thereof, has been theretofore deposited with the trustee or paying agent for such UTGO Bonds in trust for the registered owners of such UTGO Bonds;

(c) UTGO Bonds delivered to the trustee or paying agent for such UTGO Bonds for cancellation in connection with (i) the exchange of such UTGO

4

Bonds for other bonds or (ii) the transfer of the registration of such UTGO Bonds;

(d)  UTGO Bonds alleged to have been destroyed, lost or stolen which have been paid or replaced pursuant to the resolution, indenture or order for that series or otherwise pursuant to law; and

(e)  UTGO Bonds deemed paid as provided in the resolution, indenture or order for that series.

"Permitted Investments" means those investments specified in Article III of this Escrow Agreement.

"Plan Assignees" means the Income Stabilization Funds and the General Retirement System.

"Set Aside Ledger" means the table attached as Exhibit D hereto, showing the allocation of each Debt Millage Deposit to the UTGO Debt Millage Fund in such fractional amounts determined in accordance with Section 204(a) herein.

"Stub UTGO Bonds Paying Agent" means U. S. Bank National Association, Detroit, Michigan.

"UTGO Debt Millage Fund" means the City of Detroit UTGO Debt Millage Fund created and described in Section 201 of this Agreement.

## ARTICLE II
## ESTABLISHMENT OF FUNDS AND ACCOUNTS

Section 201.  Establishment of UTGO Debt Millage Fund.  There is hereby created and established with the Escrow Trustee, pursuant to Order No. ___ and this Escrow Agreement, a single and common trust fund designated the "UTGO Debt Millage Fund."

Section 202.  Establishment of Accounts and Subaccounts.  (a) There are hereby created within the UTGO Debt Millage Fund three (3) separate and segregated accounts, designated as follows:

1.  "2010A UTGO Bonds Debt Millage Account" ("2010A UTGO Account").  The Escrow Trustee shall deposit Debt Millage Revenues allocable to the Debt Service Requirements on the 2010A UTGO Bonds, as set forth on Exhibit D, in the 2010A UTGO Account.

2.  "2014 UTGO Bonds Debt Millage Account" ("2014 UTGO Bonds Account").  The Escrow Trustee shall deposit Debt Millage Revenues allocable to the Debt Service Requirements on the Municipal Obligation and the Stub UTGO Bonds, as set forth on Exhibit D, in the 2014 UTGO Bonds Account.

5

3. "Additional Bonds Debt Millage Account" ("Additional Bonds Account"). The Escrow Trustee shall deposit Debt Millage Revenues allocable to the Debt Service Requirements (to be reflected in a supplement to Exhibit D) on any series of Additional Bonds in a subaccount established for such series in the Additional Bonds Account pursuant to a supplement to this Agreement.

(b) There are hereby created within the 2014 UTGO Bonds Account two separate and segregated subaccounts, designated as follows:

1. The 2014 UTGO Municipal Obligation Subaccount ("2014 Municipal Obligation Subaccount").

2. The Stub UTGO Bonds Subaccount ("Stub UTGO Bonds Subaccount").

The Escrow Trustee shall allocate and deposit Debt Millage Revenues deposited in the 2014 UTGO Bonds Account among the 2014 Municipal Obligation Subaccount and the Stub UTGO Bonds Subaccount as provided in Section 204(a).

Section 203. Deposits to the UTGO Debt Millage Fund. Commencing on the Effective Date, and thereafter in accordance with the distribution schedule published by the Michigan Department of Treasury, and in any event, no less often than (x) bi-monthly during the period beginning each July 1 and ending the following March 31, and (y) monthly during the period beginning April 1 and ending the following June 30 of each year, the City shall remit the Debt Millage Revenues to the Escrow Trustee for deposit in the UTGO Debt Millage Fund. In the Order, the City has covenanted that it shall cause to be deposited with the Escrow Trustee, in accordance with the terms of this Escrow Agreement, 100% of the Debt Millage Revenues received by the City for as long as the Municipal Obligation and the Stub UTGO Bonds remain outstanding. The Escrow Trustee shall deposit any Debt Millage Revenues received by it from the City into the UTGO Debt Millage Fund and allocate such deposits in accordance with the provisions of Section 204 below.

Section 204. Allocation and Deposit. (a) Each Fiscal Year, commencing with the Effective Date and for as long as any UTGO Bonds remain outstanding, within one (1) Business Day of receipt by the Escrow Trustee of each Debt Millage Deposit, the Escrow Trustee shall set aside in the UTGO Debt Millage Fund each Debt Millage Deposit received, and make transfers from the UTGO Debt Millage Fund, as follows:

1. FIRST, a percentage of each Debt Millage Deposit received shall be allocated and set aside in each of the 2010A UTGO Account, the 2014 UTGO Bonds Account and any Additional Bonds Account that corresponds to the percentage that the Debt Service Requirement payable on the related series of UTGO Bonds as shown on Exhibit D bears to the Debt Service Requirement payable (or past due) on all UTGO Bonds on or before May 1 of each Fiscal Year until the sum of the aggregate Debt Millage Deposits (when taken together with any investment earnings on deposit) equals the Debt Service Requirement on all UTGO Bonds for such Fiscal Year. Once the Debt Service Requirement has been satisfied for all UTGO Bonds for payments due on or before May 1 of each Fiscal Year, any excess shall be allocated to the same accounts in

6

proportion to the Debt Service Requirements payable on such UTGO Bonds in the next Fiscal Year.

2. SECOND, the Escrow Trustee shall allocate deposits made to the 2014 UTGO Bonds Account (i) first to the 2014 Municipal Obligation Subaccount until the Debt Service Requirement payable (or past due) on the Municipal Obligation as shown on Exhibit D on or before April 1 of the then current Fiscal Year has been satisfied and (ii) second, to the Stub UTGO Bonds Subaccount until the Debt Service Requirement payable (or past due) on the Stub UTGO Bonds on or before April 1 of the then current Fiscal Year has been satisfied. Once the Debt Service Requirement for all Prior UTGO Bonds has been satisfied for the then current Fiscal Year, any excess shall be allocated first to the 2014 Municipal Obligation Subaccount for application to the next Fiscal Year's Debt Service Requirements for the Municipal Obligation and then to the next Fiscal Year's Debt Service Requirements for the Stub UTGO Bonds.

3. THIRD, within three Business Days after a deposit is made to any account or subaccount in the UTGO Debt Millage Fund the Escrow Trustee shall transfer the funds in such account or subaccount as follows:

(a) Funds on deposit in the 2010A UTGO Debt Millage Account shall be transferred to the Master Trustee for application to Debt Service Requirements for the 2010A UTGO Bonds.

(b) Funds on deposit in the 2014 Municipal Obligation Subaccount shall be transferred to the Master Trustee for deposit in the Series 2014 Tax Levy Account for application to Debt Service Requirements for the Municipal Obligation.

(c) Funds on deposit in the Stub UTGO Bonds Subaccount shall be transferred to the Plan Assignees pursuant to the direction and in the amounts shown on Exhibit F. In the event insufficient funds are on deposit in the Stub UTGO Bonds Subaccount on the date set for any transfer, the Escrow Trustee shall allocate and transfer the funds then on deposit in the Stub UTGO Bonds Subaccount to the Plan Assignees pro rata, in proportion to the amount due to each Plan Assignee on such date.

(d) Funds on deposit in the Additional Bonds Account shall be transferred to the paying agent or trustee for the related series of Additional Bonds.

(b) The Escrow Trustee shall keep and maintain a ledger on its books and records showing each Debt Millage Deposit into the Debt Millage Fund of the UTGO Debt Millage Fund, all transfers of funds from one account to another or from the UTGO Debt Millage Fund to the Master Trustee or the Income Stabilization Funds or the paying agent or trustee for any Additional Bonds, which ledger shall be substantially in the form attached hereto as Exhibit D-2 (the "Set Aside Ledger"). Not later than one (1) Business Days after the receipt of each Debt Millage Deposit, the Escrow Trustee shall promptly confirm electronically or in writing to the

7

City the receipt of each Debt Millage Deposit and provide with such notice a copy of the Set Aside Ledger which shall include the deposit entries for the then most recent Debt Millage Deposit, all prior deposits for the Fiscal Year and entries for any inter-fund transfers during the Fiscal Year. While any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, upon request of the Bond Insurers, the Escrow Trustee shall furnish a copy of the Set Aside Ledger to the Bond Insurers.

(c) Upon receipt of the Set Aside Ledger from the Escrow Trustee, the Finance Director of the City shall allocate on the books and records of the City a fractional amount of each Debt Millage Deposit shown in the Set Aside Ledger equal to the percentage of each Debt Millage Deposit that corresponds to the Debt Service Requirement by the City for the payment of that portion of debt service due on the UTGO Bonds in accordance with the ratios of the Debt Service Requirements for each series of UTGO Bonds to the total Debt Service Requirement for all UTGO Bonds set forth in Exhibit D hereto.

## ARTICLE III
## INVESTMENT OF FUNDS

Section 301. <u>Permitted Investments</u>. All money held by the Escrow Trustee pursuant to this Agreement shall be invested by the Escrow Trustee, without the need for further direction by the City, in accordance with written instructions from the City in mutual funds registered under the investment company act of 1940, title I of chapter 686, 54 Stat. 789, 15 USC 80a-1 to 80a-3 and 80a-4 to 80a-64, that have been rated at the time of purchase within the highest classification established by not less than two standard rating services and so long as the portfolio of such mutual funds is limited to bonds, and other obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by the full faith and credit of the United States. In the absence of written direction delivered to the Escrow Trustee by the City, the Escrow Trustee shall hold funds uninvested. The Escrow Trustee shall be entitled to rely on any written direction from the City as to the suitability and legality of the directed investment.

## ARTICLE IV
## THE ESCROW TRUSTEE

Section 401. <u>Powers and Duties of Escrow Trustee</u>. (a) The Escrow Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents, receivers or employees, and shall be entitled to act upon the opinion or advice of its counsel concerning all matters hereof, and may in all cases be reimbursed hereunder for reasonable compensation paid to all such attorneys, agents, receivers and employees as may reasonably be employed in connection with the trust hereof. The Escrow Trustee may act upon an opinion of counsel and shall not be responsible for any loss or damage resulting from any action or nonaction by it taken or omitted to be taken in good faith in reliance upon such opinion of counsel.

(b) The Escrow Trustee shall not be responsible for any recital herein, or for the validity of the execution by the City of this Escrow Agreement, or of any supplements thereto or

8

instruments of further assurance, or for the validity or sufficiency of, or filing of documents related to the security for the UTGO Bonds intended to be secured hereby.

(c)    The Escrow Trustee shall not be responsible or liable for any loss suffered in connection with any investment of funds made by it in accordance with this Escrow Agreement .

(d)    The Escrow Trustee shall be protected in acting upon any notice, request, consent, certificate, order, affidavit, letter, telegram or other paper or document reasonably believed by it to be genuine and correct and to have been signed or sent by the proper person or persons.

(e)    As to the existence or non-existence of any fact or as to the sufficiency or validity of any instrument, paper or proceeding, the Escrow Trustee shall be entitled to rely upon a certificate believed in good faith to be genuine and correct, signed on behalf of the City by an authorized officer of the City as sufficient evidence of the facts therein contained. The Escrow Trustee may also accept a similar certificate to the effect that any particular dealing, transaction or action is necessary or expedient, but may at its discretion secure such further evidence deemed necessary or advisable, but shall in no case be bound to secure the same.

(f)    The permissive right of the Escrow Trustee to do things enumerated in this Escrow Agreement, as amended, shall not be construed as a duty and the Escrow Trustee shall not be answerable for other than its gross negligence or willful misconduct. The immunities and exceptions from liability of the Escrow Trustee shall extend to its officers, directors, employees and agents.

(g)    The Escrow Trustee shall not be required to give any bond or surety in respect to the execution of its rights and obligations hereunder.

(h)    All moneys received by the Escrow Trustee shall, until used or applied or invested as herein provided, be held in trust in the manner and for the purpose for which they were received, but need not be segregated from other funds except to the extent required by this Escrow Agreement, as amended, or by law. The Escrow Trustee shall not be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

(i)    The Escrow Trustee shall not be under any obligation to initiate any suit or to take any remedial proceeding under this Escrow Agreement or to take any steps in the execution of the trusts created by this Escrow Agreement or in the enforcement of any rights and powers under this Escrow Agreement until it has been indemnified to its satisfaction against any and all fees, costs and expenses and other reasonable disbursements and against all liability.

(j)    The Escrow Trustee shall have no responsibility or liability with respect to any information, statement or recital in any official statement, offering memorandum or other disclosure material prepared or distributed with respect to the issuance of the UTGO Bonds, except for liability for its own gross negligence or willful misconduct.

(k)    The Escrow Trustee may become the holder of any of the UTGO Bonds with the same rights it would have if it were not Escrow Trustee, and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of holders, whether or

not such committee shall represent the holders of a majority in principal amount of any of the UTGO Bonds of such series then outstanding.

(l)     The Escrow Trustee shall not be liable for any error of judgment made in good faith by any of its officers, employees, agents or representatives, unless it shall be proved that the Escrow Trustee was negligent in ascertaining the pertinent facts.

(m)     The Escrow Trustee has no obligation or liability to the holders for the payment of interest on, principal of or redemption premium, if any, with respect to the UTGO Bonds from its own funds; but rather the Escrow Trustee's obligations shall be limited to the performance of its duties hereunder.

(n)     Whether or not therein expressly so provided, every provision of this Agreement or related documents, relating to the conduct or affecting the liability of or affording protection to the Escrow Trustee shall be subject to the provisions of this Article.

Section 402.   <u>Fees and Expenses of Escrow Trustee</u>.  (a) The Escrow Trustee shall be entitled to reasonable fees for services rendered under this Escrow Agreement, as amended, and shall be reimbursed for all expenses reasonably incurred in connection with such services.  Such fees and expenses shall be payable by the City and shall be determined in accordance with the Fee Schedule attached as Exhibit E of this Agreement or as otherwise may be agreed to by the City and the Escrow Trustee.

(b)     The City shall be liable for all fees, expenses, charges, losses, costs, liabilities and damages incurred by the Escrow Trustee pursuant to this Agreement except for those which are adjudicated to have resulted from the gross negligence or willful misconduct of the Escrow Trustee, and shall pay such amounts to or at the direction of the Escrow Trustee.

Section 403.   <u>Resignation; Appointment of Successor Escrow Trustee; Successor Escrow Trustee Upon Merger, Consolidation or Sale</u>.  (a)  The Escrow Trustee and any successor Escrow Trustee may resign only upon giving 60 days' prior written notice to the City and, while any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, the Bond Insurers.  Such resignation shall take effect only upon the appointment of a successor Escrow Trustee as described in Section 403(b) below and the acceptance of such appointment by the successor Escrow Trustee.  Upon appointment of a successor Escrow Trustee, the resigning Escrow Trustee shall, after payment of its fees, costs and expenses, assign all of its right, title and interest in the Debt Millage Revenues, and transfer and assign its right, title and interest in the Escrow Agreement to the successor Escrow Trustee.  The successor Escrow Trustee shall meet the requirements of Section 403(b) below and shall accept in writing its duties and responsibilities hereunder and file such acceptance with the City.

(b)     In case the Escrow Trustee shall give notice of resignation or be removed, or be dissolved, or shall be in the course of dissolution or liquidation, or otherwise become incapable of acting hereunder, or in case it shall be taken under the control of any public office or offices, or of a receiver appointed by a court, a successor may with the prior written consent of the City (so long as no Event of Default shall have occurred and be continuing under this Escrow Agreement ) and, while any of the Municipal Obligation or the Stub UTGO Bonds remains

10

Outstanding, the Bond Insurers, be appointed by the owners of a majority in aggregate principal amount of UTGO Bonds then Outstanding, by an instrument or concurrent instruments in writing signed by such owners, or by their duly authorized attorneys in fact, a copy of which shall be delivered personally or sent by first class mail, postage prepaid, to the City, the retiring Escrow Trustee, and the successor Escrow Trustee, which, while any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding must be acceptable to the Bond Insurers insuring such Outstanding Bonds. In the absence of an appointment by the bondholders, the City may appoint a successor Escrow Trustee, by an instrument in writing signed by an authorized officer of the City, a copy of which shall be delivered personally or sent by first class mail, postage prepaid, to the retiring Escrow Trustee and the successor Escrow Trustee. If the owners of the UTGO Bonds and the City fail to so appoint a successor Escrow Trustee, hereunder within thirty (30) days after the Escrow Trustee has given notice of its resignation, has been removed, has been dissolved, has otherwise become incapable of acting hereunder or has been taken under control by a public officer or receiver, the Escrow Trustee shall have the right to petition a court of competent jurisdiction to appoint a successor hereunder. Every such Escrow Trustee appointed pursuant to the provisions of this Section 403(b) (i) shall at all times be a bank having trust powers or a trust company, (ii) shall at all times be organized and doing business under the laws of the United States of America or of any state, (iii) shall have, or be wholly owned by an entity having, a combined capital and surplus of at least $75,000,000, (iv) shall be authorized under such laws to exercise corporate trust powers, and (v) shall be subject to supervision or examination by federal or state authority.

(c)     Any corporation or association into which the Escrow Trustee may be merged or converted or with or into which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any merger, conversion, sale, consolidation or transfer to which it is a party, provided such company shall be eligible under Section 403(b) hereof, shall be and become successor Escrow Trustee hereunder and shall be vested with all the trusts, powers, rights, obligations, duties, remedies, immunities and privileges hereunder as was its predecessor, without the execution or filing of any instrument or any further act on the part of any of the parties hereto.

Section 404.   Removal of Escrow Trustee. The Escrow Trustee may be removed at any time by an instrument or concurrent instruments in writing delivered to the Escrow Trustee and signed by the City; provided that if an Event of Default has occurred and is continuing hereunder, then, while any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, the Escrow Trustee may not be removed without the consent of the holders of a majority in aggregate principal amount of the UTGO Bonds then Outstanding and the Bond Insurers. No removal of the Escrow Trustee and no appointment of a successor Escrow Trustee shall become effective until the successor Escrow Trustee has accepted its appointment in the manner provided in Section 403 hereof. Upon such removal and the payment of its fees, costs and expenses, the Escrow Trustee shall assign to the successor Escrow Trustee all of its right, title and interest in the Trust Estate in the same manner as provided in Section 403 hereof.

11

# ARTICLE V
## ADDITIONAL BONDS

Section 501.   Issuance of Additional Bonds.   The City reserves the right to issue unlimited tax full faith and credit bonds payable on a parity basis with the pledge of the City's unlimited tax full faith and credit as security for the UTGO Bonds.  While any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, the debt millage levy with respect to any such parity bonds shall be subject to the terms of this Agreement.

Section 502.   Notices Regarding Additional Bonds.   The City hereby covenants to provide notice to the Escrow Trustee and, while any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, the Bond Insurers, of the issuance of each series of Additional Bonds.  The City may enter into additional agreements or supplements hereto with the Escrow Trustee to provide for the remittance of Debt Millage Revenues to the Escrow Trustee to be held and transferred for the payment of principal of and interest on any Additional Bonds pursuant to this Agreement.

Section 503.  Defeasance or Redemption.  The City hereby covenants to provide notice to the Escrow Trustee of the defeasance or redemption of all or any portion of the UTGO Bonds. In the event that the City issues Additional Bonds as described in Section 501 hereof, the City hereby covenants to provide notice to the Escrow Trustee of the defeasance or redemption of all or any portion of the Additional Bonds.

# ARTICLE VI
## AMENDMENTS

Section 601.   Modifications and Amendments Not Requiring Consent.  Any provision of this Agreement may be amended at any time by the parties hereto, and while any of the Municipal Obligation or the Stub UTGO Bonds remains Outstanding, with the prior written consent of the Bond Insurers, for any one or more of the following purposes:

(a)   To cure any ambiguity or formal defect or omission in this Agreement.

(b)   To grant to or confer upon the Escrow Trustee any additional rights, remedies, powers, authority or security that may lawfully be granted to or conferred upon the Escrow Trustee.

(c)   To accomplish, implement or give effect to any other action which is authorized or required by this Agreement.

(d)   To comply with the requirements of the Internal Revenue Code of 1986, as amended, applicable to the UTGO Bonds or any Additional Bonds.

(e)   To appoint separate or successor trustees.

(f)   To provide for the deposit of Debt Millage Revenues with respect to any Additional Bonds.

12

(g)     To make any other change which, in the judgment of the Escrow Trustee, is not to the material prejudice of holders of the UTGO Bonds, upon the opinion of bond counsel or other professionals.

(h)     To create obligation specific Escrow Funds and sub-accounts in accordance with Article II herein for further securing and establishing deposit and set-aside requirements of all UTGO Bonds issued by the City.

Within thirty (30) days after the execution of any amendment pursuant to this Section 601, the Escrow Trustee shall cause notice thereof to be mailed, postage prepaid to the Master Trustee, the Stub UTGO Paying Agent and the trustee or paying agent for any Additional Bonds at their addresses shown in Section 701. The notice shall briefly set forth the nature of the supplement and shall state that copies thereof are on file at the corporate trust office of the Escrow Trustee for inspection by all such holders. Any such supplement so executed shall be valid and binding notwithstanding any failure of the Escrow Trustee to mail the notice herein required and notwithstanding any objections which may be received pursuant to any mailed notice.

Upon the execution of any Amendment pursuant to the provisions of this Section, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, duties and obligations under this Agreement of the City, the Escrow Trustee, the Bond Insurers, and all registered holders of the UTGO Bonds shall thereafter be determined, exercised and enforced hereunder, subject in all respects to such modifications and amendments.

# ARTICLE VII
## MISCELLANEOUS

Section 701. Notices. Except as other provided, all notices, certificates, requests, complaints, demands or other communications under this Agreement shall be deemed sufficiently given when sent by first class mail or overnight mail postage prepaid, addressed as follows:

If to the City, to:

City of Detroit
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 1126
Detroit MI 48226
Attention: Chief Financial Officer

If to the Escrow Trustee, the Master Trustee or the Stub UTGO Bonds Paying Agent, to:

U.S. Bank National Association
535 Griswold, Suite 550
Detroit, Michigan 48226
Attention: Corporate Trust Services

13

If to the Bond Insurers, to:

Ambac Assurance Corporation
One State Street Plaza
New York, New York 10004
Attention: Surveillance Department and
General Counsel's Office


Assured Guaranty Municipal Corp and
Assured Guaranty Corp.
31 West 52nd Street
New York, NY 10019
Attention: Kevin J. Lyons
Attention: Terence Workman

National Public Finance Guarantee
Corporation
113 King Street
Armonk, NY 10504
Attention: Kenneth Epstein and William J.
Rizzo

The City, the Escrow Trustee or the Bond Insurers may, by giving notice hereunder, in writing, designate any further or different addresses to which subsequent notices, certificates, requests, complaints, demands or other communications hereunder shall be sent.

Section 702.   Termination. This Agreement shall terminate following delivery of written direction from the City to the Escrow Trustee to so terminate, together with written notice: (1) that all of the Municipal Obligation and the Stub UTGO Bonds have been paid in full at maturity or defeased (and for each series of UTGO Bonds that have been or are to be defeased prior to termination, such notice shall include written certification by an independent verification agent for the City that sufficient cash or obligations necessary to defease such UTGO Bonds in accordance with the applicable defeasance requirements are on deposit with the Master Trustee, in the case of the Municipal Obligation, and the Income Stabilization Funds, in the case of the Stub UTGO Bonds to be defeased, as of the date of the City's notice), and  (2) that all fees owed to the Escrow Trustee have been paid in full.  Upon termination of this Agreement, any money remaining on deposit in the funds and accounts created and established hereunder shall be paid to the City.

Section 703.   Severability.  If any one or more sections, clauses or provisions of this Escrow Agreement  shall be determined by a court of competent jurisdiction to be invalid or ineffective for any reason, such determination shall in no way affect the validity and effectiveness of the remaining sections, clauses and provisions of the Agreement.

Section 704.   Headings.  Any headings shall be solely for convenience of reference and shall not constitute a part of the Agreement, nor shall they affect its meaning, construction or effect.

14

Section 705. <u>Escrow Agreement Executed in Counterparts</u>. This Escrow Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, and such counterparts together shall and will constitute one and the same instrument.

Section 706. <u>Parties Interested Herein</u>. Nothing in this Escrow Agreement expressed or implied is intended or shall be construed to confer upon, or to give to, any person or entity, other than the Escrow Trustee, the City, the Bond Insurers and the registered owners of the UTGO Bonds, any right, remedy or claim under or by reason of this Escrow Agreement or any covenant, condition or stipulation hereof, and all covenants, stipulations, promises and agreements in this Agreement on behalf of the City shall be for the sole and exclusive benefit of the Escrow Trustee, the City, the Bond Insurers and the registered owners of the UTGO Bonds.

IN WITNESS WHEREOF, this Escrow Agreement has been signed on behalf of the City by its Emergency Manager and U.S. Bank National Association to evidence the acceptance of the trust, has caused this Escrow Agreement to be executed in its behalf by its authorized officer, all as of the date first above written.

CITY OF DETROIT

By _____

  Kevyn D. Orr
  Its: Emergency Manager

U.S. BANK NATIONAL ASSOCIATION,
as Escrow Trustee

By _____

  Its: _____

16

**EXHIBIT A**
**DEBT RETIREMENT SCHEDULES**
**(BY SERIES)**

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
| **UTGOB1999-A** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.250% | $2,950,000.00 | Assured | $74,812.50 | $74,812.50 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | $2,995,000.00 | Assured | $74,875.00 | $74,875.00 | $74,875.00 | $74,875.00 | | | | | | | | | | |
| | 4/1/17 | 5.375% | $3,145,000.00 | Assured | $78,625.00 | $78,625.00 | $78,625.00 | $78,625.00 | $78,625.00 | $78,625.00 | | | | | | | | |
| | 4/1/18 | 5.000% | $3,305,000.00 | Assured | $82,625.00 | $82,625.00 | $82,625.00 | $82,625.00 | $82,625.00 | $82,625.00 | $82,625.00 | $82,625.00 | | | | | | |
| | 4/1/19 | 5.000% | $3,470,000.00 | Assured | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | $86,750.00 | | | | |
| | | | $15,765,000.00 | | $397,687.50 | $397,687.50 | $322,875.00 | $322,875.00 | $246,000.00 | $246,000.00 | $165,375.00 | $165,375.00 | $86,750.00 | $86,750.00 | | | | |
| **UTGOB2001-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.375% | $5,540,000.00 | NPFG | $159,637.50 | $159,637.50 | | | | | | | | | | | | |
| | 4/1/16 | 5.375% | $6,200,000.00 | NPFG | $168,237.50 | $168,237.50 | $168,237.50 | $168,237.50 | | | | | | | | | | |
| | 4/1/17 | 5.375% | $6,000,000.00 | NPFG | $177,375.00 | $177,375.00 | $177,375.00 | $177,375.00 | $177,375.00 | $173,375.00 | | | | | | | | |
| | 4/1/18 | 5.375% | $14,690,000.00 | NPFG | $376,750.00 | $376,750.00 | $376,750.00 | $376,750.00 | $376,250.00 | $376,250.00 | $376,250.00 | $376,250.00 | | | | | | |
| | 4/1/19 | 5.000% | $14,000,000.00 | NPFG | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | | | | |
| | 4/1/20 | 5.000% | $14,000,000.00 | NPFG | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | |
| | 4/1/21 | 5.000% | $14,030,000.00 | NPFG | $150,000.00 | $150,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $350,000.00 | $700,000.00 | $700,000.00 | $350,000.00 | $350,000.00 |
| | | | $74,880,000.00 | | $1,531,000.00 | $1,531,000.00 | $1,371,862.50 | $1,371,862.50 | $1,603,625.00 | $1,605,625.00 | $1,426,250.00 | $1,426,250.00 | $1,050,000.00 | $1,050,000.00 | $700,000.00 | $700,000.00 | $350,000.00 | $350,000.00 |
| **UTGOB 2002** | | | | | | | | | | | | | | | | | | |
| | 4/1/31 | 5.125% | $3,240,000.00 | NPFG | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 | $83,025.00 |
| | 4/1/32 | 5.125% | $3,405,000.00 | NPFG | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 | $87,253.13 |
| | | | $6,645,000.00 | | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 | $170,278.13 |
| **UTGOB 2003-A** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 4.000% | $300,000.00 | Syncora | $6,000.00 | $6,000.00 | | | | | | | | | | | | |
| | 4/1/16 | 5.250% | $2,550,000.00 | Syncora | $66,937.50 | $66,937.50 | $76,618.75 | $76,618.75 | | | | | | | | | | |
| | 4/1/16 | 5.250% | $2,995,000.00 | Syncora | $78,618.75 | $78,618.75 | $78,618.75 | $78,618.75 | $76,618.75 | $82,687.50 | | | | | | | | |
| | 4/1/17 | 5.250% | $3,150,000.00 | Syncora | $82,687.50 | $82,687.50 | $82,687.50 | $82,687.50 | $82,687.50 | $82,687.50 | $82,687.50 | | | | | | | |
| | 4/1/18 | 5.250% | $3,475,000.00 | Syncora | $87,018.75 | $87,018.75 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $87,018.75 | $87,018.75 | | | | | | |
| | 4/1/19 | 5.500% | $3,490,000.00 | Syncora | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | $91,612.50 | | $11,250.00 | | | |
| | 4/1/20 | 5.250% | $3,435,000.00 | Syncora | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | $11,250.00 | | |
| | 4/1/21 | 5.250% | $3,175,000.00 | Syncora | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $83,343.75 | $101,375.00 | $101,375.00 |
| | 4/1/22 | 5.250% | $3,860,000.00 | Syncora | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 | $101,325.00 |
| | 4/1/22 | 4.625% | $1,350,000.00 | Syncora | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 | $11,562.50 |
| | 4/1/23 | 4.625% | $1,565,000.00 | Syncora | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 | $93,581.25 |
| | 4/1/24 | 5.250% | $3,270,000.00 | Syncora | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 |
| | | | $31,675,000.00 | | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 |
| | | | | | $821,468.75 | $821,468.75 | $745,531.25 | $745,531.25 | $669,912.50 | $669,912.50 | $557,225.00 | $557,225.00 | $500,206.25 | $500,206.25 | $468,593.75 | $468,593.75 | $331,000.00 | $331,000.00 |
| **UTGOB 2004-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.250% | $4,500,000.00 | Ambac | $118,125.00 | $118,125.00 | | | | | | | | | | | | |
| | 4/1/16 | 4.250% | $185,000.00 | Ambac | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | $3,931.25 | | |
| | 4/1/17 | 5.250% | $6,085,000.00 | Ambac | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | $159,731.25 | | |
| | 4/1/18 | 5.250% | $6,600,000.00 | Ambac | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 | $165,000.00 |
| | 4/1/19 | 5.250% | $6,000,000.00 | Ambac | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 | $181,912.50 |
| | 4/1/20 | 4.500% | $375,000.00 | Ambac | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 | $8,437.50 |
| | 4/1/21 | 4.500% | $6,020,000.00 | Ambac | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 | $181,650.00 |
| | 4/1/22 | 4.250% | $6,030,000.00 | Ambac | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 |
| | 4/1/24 | 5.250% | $6,850,000.00 | Ambac | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 |
| | | | $39,270,000.00 | | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $1,017,705.00 | $899,580.00 | $899,580.00 | $735,417.50 | $735,417.50 |

Subject to Mandatory Redemption

# UTGO Bond Series Debt Retirement Schedules

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-A(1)** | | | | | | | | | | | | | | | | | | |
| 297P8 | 4/1/15 | 5.000% | $8,675,000.00 | Ambac | $216,875.00 | $216,875.00 | | | | | | | | | | | | |
| 297Q6 | 4/1/16 | 5.250% | $9,105,000.00 | Ambac | $239,006.25 | $239,006.25 | $239,006.25 | $239,006.25 | | | | | | | | | | |
| 297R4 | 4/1/17 | 4.000% | $305,000.00 | Ambac | $6,100.00 | $6,100.00 | $6,100.00 | $6,100.00 | $6,100.00 | $6,100.00 | | | | | | | | |
| 297S2 | 4/1/17 | 5.250% | $9,280,000.00 | Ambac | $243,600.00 | $243,600.00 | $243,600.00 | $243,600.00 | $243,600.00 | $243,600.00 | | | | | | | | |
| 297T0 | 4/1/18 | 5.250% | $2,000,000.00 | Ambac | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | $52,500.00 | | | | | | |
| | | | **$29,365,000.00** | | **$758,081.25** | **$758,081.25** | **$541,206.25** | **$541,206.25** | **$302,200.00** | **$302,200.00** | **$52,500.00** | **$52,500.00** | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| 25 …ZCX1 | 4/1/15 | 5.240% | $575,000.00 | Ambac | $15,065.00 | $15,065.00 | | | | | | | | | | | | |
| | | | **$575,000.00** | | | | | | | | | | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| G33 | 4/1/15 | 5.000% | $2,290,000.00 | Assured | $57,250.00 | $57,250.00 | | | | | | | | | | | | |
| G41 | 4/1/16 | 5.000% | $2,425,000.00 | Assured | $60,625.00 | $60,625.00 | $60,125.00 | $60,125.00 | | | | | | | | | | |
| G58 | 4/1/17 | 5.000% | $2,545,000.00 | Assured | $63,625.00 | $63,625.00 | $63,875.00 | $63,875.00 | $54,180.00 | $54,180.00 | | | | | | | | |
| G66 | 4/1/18 | 5.000% | $2,635,000.00 | Assured | $65,875.00 | $65,875.00 | $65,875.00 | $65,875.00 | $65,875.00 | $65,875.00 | $65,875.00 | $65,875.00 | | | | | | |
| G74 | 4/1/19 | 5.000% | $2,765,000.00 | Assured | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $69,125.00 | $60,125.00 | | | | |
| H15 | 4/1/20 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | | |
| H23 | 4/1/21 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 |
| H31 | 4/1/22 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 |
| H49 | 4/1/23 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 |
| H56 | 4/1/24 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 |
| H64 | 4/1/25 | 5.000% | $5,000,000.00 | Assured | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 |
| | | | **$42,615,000.00** | | **$1,056,555.00** | **$1,056,555.00** | **$999,305.00** | **$999,305.00** | **$939,180.00** | **$939,180.00** | **$885,000.00** | **$885,000.00** | **$879,125.00** | **$879,125.00** | **$750,000.00** | **$750,000.00** | **$625,000.00** | **$625,000.00** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 392 | 4/1/15 | 5.000% | $2,300,000.00 | Assured | $57,625.00 | $57,625.00 | | | | | | | | | | | | |
| M25 | 4/1/16 | 5.000% | $2,425,000.00 | Assured | $60,625.00 | $60,625.00 | $60,625.00 | $60,625.00 | | | | | | | | | | |
| M33 | 4/1/17 | 5.000% | $2,545,000.00 | Assured | $54,717.50 | $54,717.50 | $54,717.50 | $54,717.50 | $54,717.50 | $54,717.50 | | | | | | | | |
| M41 | 4/1/18 | 5.000% | $2,630,000.00 | Assured | $65,750.00 | $65,750.00 | $65,750.00 | $65,750.00 | $65,750.00 | $65,750.00 | $65,750.00 | $65,750.00 | | | | | | |
| M58 | 4/1/19 | 5.000% | $2,735,000.00 | Assured | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | $71,793.75 | | | | |
| M66 | 4/1/20 | 5.250% | $2,885,000.00 | Assured | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | $75,731.25 | | |
| | | | **$55,525,000.00** | | **$386,242.50** | **$386,242.50** | **$328,617.50** | **$328,617.50** | **$267,992.50** | **$267,992.50** | **$213,275.00** | **$213,275.00** | **$147,525.00** | **$147,525.00** | **$75,731.25** | **$75,731.25** | | |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | |
| B56 | 4/1/15 | 5.000% | $2,875,000.00 | Assured | $71,875.00 | $71,875.00 | | | | | | | | | | | | |
| B64 | 4/1/16 | 5.000% | $3,035,000.00 | Assured | $75,375.00 | $75,375.00 | $75,375.00 | $75,375.00 | | | | | | | | | | |
| B72 | 4/1/17 | 4.000% | $3,325,000.00 | Assured | $75,250.00 | $75,250.00 | $72,250.00 | $72,250.00 | $79,250.00 | $79,250.00 | | | | | | | | |
| B80 | 4/1/18 | 5.000% | $3,460,000.00 | Assured | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | $66,500.00 | | | | | | |
| C98 | 4/1/19 | 5.000% | $3,630,000.00 | Assured | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | $86,500.00 | | | | |
| C23 | 4/1/20 | 5.000% | $3,815,000.00 | Assured | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | $90,750.00 | | |
| C31 | 4/1/21 | 5.000% | $4,005,000.00 | Assured | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 | $95,375.00 |
| C49 | 4/1/22 | 5.000% | $14,005,000.00 | Assured | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 | $100,125.00 |
| C56 | 4/1/23 | 5.000% | $8,620,000.00 | Assured | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 |
| C64 | 4/1/24 | 5.000% | $19,080,000.00 | Assured | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 | $495,000.00 |
| | | | **$65,195,000.00** | | **$1,380,750.00** | **$1,380,750.00** | **$1,368,875.00** | **$1,368,875.00** | **$1,233,500.00** | **$1,233,500.00** | **$1,234,250.00** | **$1,234,250.00** | **$1,287,750.00** | **$1,287,750.00** | **$1,601,250.00** | **$1,601,250.00** | **$990,500.00** | **$990,500.00** |
| **UTGO 2008-B(3)** | | | | | | | | | | | | | | | | | | |
| P93 | 4/1/15 | 5.000% | $1,270,000.00 | Ambac | $199,250.00 | $199,250.00 | | | | | | | | | | | | |
| Q27 | 4/1/16 | 5.000% | $1,985,000.00 | Ambac | $86,000.00 | $86,000.00 | $86,000.00 | $86,000.00 | | | | | | | | | | |
| Q35 | 4/1/17 | 5.000% | $1,580,000.00 | Ambac | $89,500.00 | $89,500.00 | $89,500.00 | $89,500.00 | $89,500.00 | $89,500.00 | | | | | | | | |
| Q43 | 4/1/18 | 5.000% | $3,390,000.00 | Ambac | $94,750.00 | $94,750.00 | $94,750.00 | $94,750.00 | $94,750.00 | $94,750.00 | $94,750.00 | $94,750.00 | | | | | | |
| | | | **$38,780,000.00** | | **$469,500.00** | **$469,500.00** | **$270,250.00** | **$270,250.00** | **$184,250.00** | **$184,250.00** | **$94,750.00** | **$94,750.00** | | | | | | |
| **UTGO 2010-A** | | | | | | | | | | | | | | | | | | |
| P/CX7 | 11/1/14 | 5.12% | $1,885,000.00 | Ambac | $48,303.03 | $53,882.83 | $53,882.83 | $53,882.83 | | | | | | | | | | |
| P/CX7 | 11/1/15 | 5.42% | $1,985,000.00 | Ambac | $53,882.83 | $54,065.68 | $54,065.68 | $54,065.68 | $54,065.68 | $54,065.68 | | | | | | | | |
| P/CY5 | 11/1/16 | 6.08% | $2,105,000.00 | Ambac | $64,065.68 | $64,065.68 | $70,974.40 | $70,974.40 | $70,974.40 | $70,974.40 | $70,974.40 | $70,974.40 | | | | | | |
| P/CZ2 | 11/1/17 | 6.33% | $2,240,000.00 | Ambac | $70,974.40 | $70,974.40 | $70,974.40 | $70,974.40 | $499,566.00 | $499,566.00 | $499,566.00 | $499,566.00 | $499,566.00 | $499,566.00 | $413,489.70 | $413,489.70 | $330,944.20 | $330,944.20 |
| P/D39 | 11/1/20 | 7.18% | $13,000,000.00 | Ambac | $499,566.00 | $499,566.00 | $499,566.00 | $499,566.00 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $231,570.10 |
| P/D46 | 11/1/35 | 8.50% | $77,855,000.00 | Ambac | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,259,097.83 | | | | | | | | | $3,380,942.03 | $3,480,042.03 |
| | | | **$100,000,000.00** | | **$3,995,927.75** | **$3,947,586.73** | | | **$3,893,703.90** | **$3,893,703.90** | **$3,670,638.23** | **$3,670,638.23** | **$3,176,663.83** | **$3,176,663.83** | **$3,672,587.53** | **$3,672,587.53** | **$3,480,042.03** | **$3,480,042.03** |
| **GRAND TOTAL** | | | **$430,920,000.00** | | **$12,400,760.68** | **$12,352,419.65** | **$11,438,096.15** | **$11,384,213.53** | **$10,557,023.03** | **$10,472,942.35** | **$9,602,473.35** | **$9,531,498.95** | **$8,638,603.20** | **$8,551,526.90** | **$7,678,120.65** | **$7,535,475.15** | **$6,685,737.65** | **$6,586,363.55** |

* Subject to Mandatory Redemption

# UTGO Bond Series Debt Retirement Schedules

|  | Maturity Date | Rate | Principal | Insurer | Interest |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 |
| **UTGO2004-A** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/15 | 5.250% | $2,850,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/16 | 5.000% | $2,995,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/17 | 5.000% | $3,145,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/18 | 5.000% | $3,305,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/19 | 5.000% | $3,470,000.00 | Assured | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/20 | 5.000% |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  | **$15,765,000.00** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **UTGO2005-A(H)** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/15 | 5.375% | $5,940,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/16 | 5.375% | $6,260,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/17 | 5.375% | $6,600,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/18 | 5.375% | $14,000,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/19 | 5.000% | $14,000,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/20 | 5.000% | $14,000,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/21 | 5.000% | $14,000,000.00 | NPFG | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
|  |  |  | **$74,690,000.00** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **UTGO2002** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/21 | 5.125% | $3,240,000.00 | NPFG | $87,253.13 | $87,253.13 | - | - | - | - | - | - | - | - | - | - | - | - |
|  | 4/1/22 | 5.125% | $3,405,000.00 | NPFG | $87,253.13 | $87,253.13 | - | - | - | - | - | - | - | - | - | - | - | - |
|  |  |  | **$6,645,000.00** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **UTGO2003-A** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/15 | 4.000% | $500,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/15 | 5.250% | $2,550,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/16 | 5.250% | $2,995,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/17 | 5.250% | $3,150,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/18 | 5.250% | $3,315,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/19 | 5.250% | $3,490,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/20 | 4.500% | $300,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/20 | 5.250% | $3,175,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/21 | 5.250% | $3,860,000.00 | Syncora | $11,562.50 | $11,562.50 |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/22 | 4.625% | $500,000.00 | Syncora | $93,581.25 | $93,581.25 |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/22 | 5.250% | $3,565,000.00 | Syncora | $34,687.50 | $34,687.50 | $34,687.50 | $34,687.50 |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/23 | 4.625% | $1,500,000.00 | Syncora | $72,843.75 | $72,843.75 | $72,843.75 | $72,843.75 |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/23 | 5.250% | $4,175,000.00 | Syncora |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  | **$33,075,000.00** |  | $232,675.00 | $232,675.00 | $107,531.25 | $107,531.25 |  |  |  |  |  |  |  |  |  |  |
| **UTGO2004-A(II)** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/19 | 5.250% | $4,500,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/20 | 4.250% | $185,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/20 | 5.250% | $6,085,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/21 | 5.000% | $6,600,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/22 | 5.250% | $375,000.00 | Ambac | $181,912.50 | $181,912.50 | $8,437.50 | $8,437.50 |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/22 | 4.500% | $6,925,000.00 | Ambac | $8,437.50 | $8,437.50 | $181,650.00 | $181,650.00 |  |  |  |  |  |  |  |  |  |  |
|  | 4/1/23 | 5.250% | $185,000.00 | Ambac | $181,650.00 | $181,650.00 | $18,055.00 | $18,055.00 | $18,055.00 | $18,055.00 |  |  |  |  |  |  |  |  |
|  | 4/1/23 | 4.600% | $7,530,000.00 | Ambac | $18,055.00 | $18,055.00 | $180,862.50 | $180,862.50 | $180,862.50 | $180,862.50 |  |  |  |  |  |  |  |  |
|  | 4/1/24 | 5.250% | $6,890,000.00 | Ambac | $180,862.50 | $180,862.50 |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  | **$39,270,000.00** |  | $570,917.50 | $570,917.50 | $389,005.00 | $389,005.00 | $196,917.50 | $196,917.50 |  |  |  |  |  |  |  |  |

\* Due to Mandatory Redemption

# UTGO Bond Series Debt Retirement Schedules

| Maturity Date | Rate | Principal | Issuer | Interest 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO4-B(1)** | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $8,675,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/16 | 5.250% | $9,105,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/17 | 4.000% | $305,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/17 | 5.000% | $9,280,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/18 | 5.250% | $2,000,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/18 | 5.750% | | | | | | | | | | | | | | | | |
| Total | | $29,365,000.00 | | | | | | | | | | | | | | | |
| **UTGO4-B(2)** | | | | | | | | | | | | | | | | | |
| 4/1/19 | 5.240% | $575,000.00 | Ambac | | | | | | | | | | | | | | |
| Total | | $575,000.00 | | | | | | | | | | | | | | | |
| **UTGO5-B** | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $2,290,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/16 | 5.000% | $2,405,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/17 | 5.000% | $2,520,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/18 | 5.000% | $2,655,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/19 | 5.000% | $2,765,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/20 | 5.000% | $5,300,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/21 | 5.000% | $5,000,000.00 | Assured | $175,000.00 | $125,000.00 | $125,000.00 | | | | | | | | | | | |
| 4/1/22 | 5.000% | $5,000,000.00 | Assured | $175,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | | | | | | | | | |
| 4/1/23 | 5.000% | $5,000,000.00 | Assured | $175,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | | | | | | | |
| 4/1/24 | 5.000% | $5,000,000.00 | Assured | $175,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $125,000.00 | $175,000.00 | $175,000.00 | $175,000.00 | | | | | | |
| 4/1/25 | 5.000% | | Assured | | | | | | | $175,000.00 | $125,000.00 | $125,000.00 | | | | | |
| Total | | $42,605,000.00 | | $500,000.00 | $375,000.00 | $375,000.00 | $375,000.00 | $250,000.00 | $250,000.00 | $250,000.00 | $125,000.00 | $125,000.00 | | | | | |
| **UTGO5-C** | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $2,305,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/16 | 5.000% | $2,475,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/17 | 4.300% | $2,545,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/18 | 5.000% | $2,630,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/19 | 5.250% | $2,735,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/20 | 5.750% | $2,855,000.00 | Assured | | | | | | | | | | | | | | |
| Total | | $15,525,000.00 | | | | | | | | | | | | | | | |
| **UTGO6-A** | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $2,875,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/16 | 5.000% | $3,015,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/17 | 5.000% | $3,170,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/18 | 4.000% | $3,325,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/19 | 4.000% | $3,440,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/20 | 5.000% | $3,630,000.00 | Assured | | | | | | | | | | | | | | |
| 4/1/21 | 5.000% | $3,815,000.00 | Assured | $100,125.00 | $100,125.00 | | | | | | | | | | | | |
| 4/1/22 | 5.000% | $4,095,000.00 | Assured | $215,500.00 | $215,500.00 | $215,500.00 | $215,500.00 | | | | | | | | | | |
| 4/1/23 | 5.000% | $8,620,000.00 | Assured | $715,000.00 | $715,000.00 | $715,000.00 | $715,000.00 | $110,375.00 | $110,375.00 | | | | | | | |
| 4/1/24 | 5.000% | $19,700,000.00 | Assured | $495,500.00 | $495,500.00 | $495,500.00 | $495,500.00 | $495,500.00 | $495,500.00 | $495,500.00 | $495,500.00 | | | | | | |
| Total | | $55,875,000.00 | | $831,125.00 | $831,125.00 | $715,000.00 | $715,000.00 | $609,875.00 | $609,875.00 | $495,500.00 | $495,500.00 | | | | | | |
| **UTGO6-B(1)** | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $7,170,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/16 | 5.000% | $5,170,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/17 | 5.000% | $5,380,000.00 | Ambac | | | | | | | | | | | | | | |
| 4/1/18 | 5.000% | $3,790,000.00 | Ambac | | | | | | | | | | | | | | |
| Total | | $38,780,000.00 | | | | | | | | | | | | | | | |
| **UTGO6-B(2)** | | | | | | | | | | | | | | | | | |
| 11/1/14 | 5.125% | $1,885,000.00 | Ambac | | | | | | | | | | | | | | |
| 11/1/15 | 5.429% | $1,985,000.00 | Ambac | | | | | | | | | | | | | | |
| 11/1/16 | 6.087% | $2,105,000.00 | Ambac | | | | | | | | | | | | | | |
| 11/1/22 | 6.137% | $5,240,000.00 | Ambac | $221,570.10 | $114,828.30 | $114,828.30 | | | | | | | | | | | |
| 11/1/24 | 7.148% | $13,300,000.00 | Ambac | $3,259,097.83 | $3,259,097.83 | $1,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,114,523.35 | $3,114,523.35 | $2,957,195.38 | $2,957,195.38 | $2,786,458.55 | $2,786,458.55 | $2,600,666.75 | $2,600,666.75 | $2,398,764.63 | $2,398,764.63 |
| 11/1/34 | 8.369% | $77,285,000.00 | Ambac | $3,489,667.93 | $3,373,926.13 | $1,259,097.83 | $3,259,097.83 | $3,259,097.83 | $3,114,523.35 | $3,114,523.35 | $2,957,195.38 | $2,957,195.38 | $2,786,458.55 | $2,786,458.55 | $2,600,666.75 | $2,600,666.75 | $2,398,764.63 | $2,398,764.63 |
| Total | | $100,000,000.00 | | $3,489,667.93 | $5,559,896.75 | $4,960,662.38 | $4,845,434.08 | $4,517,890.33 | $4,773,315.85 | $3,739,923.35 | $3,381,895.38 | $3,341,020.38 | $3,170,283.55 | $3,046,333.55 | $2,862,541.75 | $2,734,791.75 | $2,532,889.63 | |

* Subject to Mandatory Redemption

# UTGO Bond Series Debt Retirement Schedules

| Maturity Date | Rate | Principal | Insurer | Interest 10/1/28 | 4/1/29 | 10/1/29 | 4/1/30 | 10/1/30 | 4/1/31 | 10/1/31 | 4/1/32 | 10/1/32 | 4/1/33 | 10/1/33 | 4/1/34 | 10/1/34 | 4/1/35 | 10/1/35 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO2010-A(I)** | | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.250% | $2,850,000.00 | Assured | | | | | | | | | | | | | | | | $149,625.00 | $2,999,625.00 |
| 4/1/16 | 5.000% | $2,995,000.00 | Assured | | | | | | | | | | | | | | | | $299,500.00 | $3,294,500.00 |
| 4/1/17 | 5.000% | $3,145,000.00 | Assured | | | | | | | | | | | | | | | | $411,750.00 | $3,636,750.00 |
| 4/1/18 | 5.000% | $3,505,000.00 | Assured | | | | | | | | | | | | | | | | $641,000.00 | $3,366,000.00 |
| 4/1/19 | 5.000% | $2,470,000.00 | Assured | | | | | | | | | | | | | | | | $867,500.00 | $3,317,500.00 |
| | | **$15,965,000.00** | | | | | | | | | | | | | | | | | **$2,499,375.00** | **$18,364,375.00** |
| **UTGO2010-A(II)** | | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.375% | $3,940,000.00 | NPFG | | | | | | | | | | | | | | | | $319,275.00 | $6,259,275.00 |
| 4/1/16 | 5.375% | $6,260,000.00 | NPFG | | | | | | | | | | | | | | | | $672,950.00 | $6,372,950.00 |
| 4/1/17 | 5.375% | $6,600,000.00 | NPFG | | | | | | | | | | | | | | | | $1,064,250.00 | $7,664,250.00 |
| 4/1/18 | 5.375% | $14,000,000.00 | NPFG | | | | | | | | | | | | | | | | $3,010,000.00 | $17,010,000.00 |
| 4/1/19 | 5.000% | $14,000,000.00 | NPFG | | | | | | | | | | | | | | | | $3,500,000.00 | $17,500,000.00 |
| 4/1/20 | 5.000% | $14,000,000.00 | NPFG | | | | | | | | | | | | | | | | $4,200,000.00 | $18,200,000.00 |
| 4/1/21 | 5.000% | $14,000,000.00 | NPFG | | | | | | | | | | | | | | | | $4,300,000.00 | $18,300,000.00 |
| | | **$74,800,000.00** | | | | | | | | | | | | | | | | | **$17,666,475.00** | **$92,466,475.00** |
| **UTGO2012** | | | | | | | | | | | | | | | | | | | | |
| 4/1/21 | 5.125% | $3,240,000.00 | NPFG | | | | | | | | | | | | | | | | $1,162,350.00 | $4,402,350.00 |
| 4/1/22 | 5.125% | $3,405,000.00 | NPFG | | | | | | | | | | | | | | | | $1,396,050.00 | $4,803,050.00 |
| | | **$6,645,000.00** | | | | | | | | | | | | | | | | | **$2,558,400.00** | **$9,205,400.00** |
| **UTGO2010-B-A** | | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 4.000% | $700,000.00 | Syncora | | | | | | | | | | | | | | | | $12,000.00 | $372,000.00 |
| 4/1/15 | 4.000% | $2,550,000.00 | Syncora | | | | | | | | | | | | | | | | $133,875.00 | $2,683,875.00 |
| 4/1/16 | 5.250% | $2,995,000.00 | Syncora | | | | | | | | | | | | | | | | $314,475.00 | $3,307,475.00 |
| 4/1/17 | 5.250% | $3,150,000.00 | Syncora | | | | | | | | | | | | | | | | $496,125.00 | $3,646,125.00 |
| 4/1/18 | 5.250% | $3,315,000.00 | Syncora | | | | | | | | | | | | | | | | $696,150.00 | $4,011,150.00 |
| 4/1/19 | 5.250% | $3,490,000.00 | Syncora | | | | | | | | | | | | | | | | $916,125.00 | $4,406,125.00 |
| 4/1/20 | 4.500% | $500,000.00 | Syncora | | | | | | | | | | | | | | | | $135,000.00 | $635,000.00 |
| 4/1/20 | 5.250% | $3,175,000.00 | Syncora | | | | | | | | | | | | | | | | $1,000,125.00 | $4,175,125.00 |
| 4/1/20 | 5.250% | $3,860,000.00 | Syncora | | | | | | | | | | | | | | | | $1,418,550.00 | $5,578,550.00 |
| 4/1/21 | 4.625% | $500,000.00 | Syncora | | | | | | | | | | | | | | | | $185,000.00 | $685,000.00 |
| 4/1/22 | 5.250% | $3,565,000.00 | Syncora | | | | | | | | | | | | | | | | $1,497,900.00 | $5,062,900.00 |
| 4/1/23 | 4.625% | $1,550,000.00 | Syncora | | | | | | | | | | | | | | | | $624,375.00 | $2,174,375.00 |
| 4/1/23 | 4.625% | $2,775,000.00 | Syncora | | | | | | | | | | | | | | | | $1,311,187.50 | $4,086,187.50 |
| | | **$31,675,000.00** | | | | | | | | | | | | | | | | | **$8,740,887.50** | **$40,433,287.50** |
| **UTGO2004-A(II)** | | | | | | | | | | | | | | | | | | | | |
| 4/1/19 | 5.250% | $4,500,000.00 | Ambac | | | | | | | | | | | | | | | | $1,181,250.00 | $5,681,250.00 |
| 4/1/20 | 4.250% | $185,000.00 | Ambac | | | | | | | | | | | | | | | | $47,375.00 | $232,375.00 |
| 4/1/20 | 5.250% | $6,085,000.00 | Ambac | | | | | | | | | | | | | | | | $1,936,775.00 | $8,001,775.00 |
| 4/1/21 | 5.000% | $6,600,000.00 | Ambac | | | | | | | | | | | | | | | | $2,310,000.00 | $8,910,000.00 |
| 4/1/22 | 5.550% | $6,570,000.00 | Ambac | | | | | | | | | | | | | | | | $2,910,600.00 | $5,846,600.00 |
| 4/1/23 | 5.000% | $375,000.00 | Ambac | | | | | | | | | | | | | | | | $371,875.00 | $352,875.00 |
| 4/1/23 | 5.250% | $6,970,000.00 | Ambac | | | | | | | | | | | | | | | | $3,260,700.00 | $10,189,700.00 |
| 4/1/23 | 5.250% | $185,000.00 | Ambac | | | | | | | | | | | | | | | | $351,000.00 | $3,220,700.00 |
| 4/1/24 | 4.500% | | Ambac | | | | | | | | | | | | | | | | | $1,346,000.00 |
| 4/1/24 | 4.600% | $185,000.00 | Ambac | | | | | | | | | | | | | | | | $3,617,250.00 | $3,617,250.00 |
| 4/1/24 | 5.250% | | Ambac | | | | | | | | | | | | | | | | | |
| | | **$39,270,000.00** | | | | | | | | | | | | | | | | | **$15,765,252.00** | **$49,035,252.00** |

* Subject to Mandatory Redemption

# UTGO Bond Series Debt Retirement Schedules

|  |  |  |  | Interest | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Maturity Date | Rate | Principal | Insurer | 10/1/28 | 4/1/29 | 10/1/29 | 4/1/30 | 10/1/30 | 4/1/31 | 10/1/31 | 4/1/32 | 10/1/32 | 4/1/33 | 10/1/33 | 4/1/34 | 10/1/34 | 4/1/35 | 10/1/35 | Total Interest | Total Principal & Interest |

**UTGO 2004-B(1)**
| 4/1/15 | 5.000% | $8,675,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $433,750.00 | $9,108,750.00 |
| 4/1/16 | 5.250% | $10,105,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $956,025.00 | $11,061,025.00 |
| 4/1/16 | 4.000% | $335,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $6,600.00 | $341,600.00 |
| 4/1/17 | 5.750% | $9,280,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,461,600.00 | $10,741,600.00 |
| 4/1/17 | 5.250% | $2,000,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $520,000.00 | $2,520,000.00 |
| 4/1/18 | 5.250% | $32,000,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $523,000.00 | $32,523,000.00 |
|  |  | $29,565,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $4,307,975.00 | $33,672,975.00 |

**UTGO 2005-B(2)**
| 4/1/19 | 5.240% | $575,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $69,954.00 | $644,954.00 |

**UTGO 2005-B**
| 4/1/15 | 5.000% | $2,250,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $114,500.00 | $2,364,500.00 |
| 4/1/16 | 5.000% | $2,405,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $340,500.00 | $2,645,500.00 |
| 4/1/17 | 4.300% | $2,520,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $325,080.00 | $2,845,080.00 |
| 4/1/18 | 5.000% | $2,585,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $577,000.00 | $3,102,000.00 |
| 4/1/19 | 5.000% | $2,705,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $691,250.00 | $3,456,250.00 |
| 4/1/20 | 5.000% | $2,765,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,500,000.00 | $6,500,000.00 |
| 4/1/21 | 5.000% | $5,000,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,750,000.00 | $6,750,000.00 |
| 4/1/22 | 5.000% | $5,000,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,500,000.00 | $5,000,000.00 |
| 4/1/23 | 5.000% | $5,000,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $2,250,000.00 | $7,250,000.00 |
| 4/1/24 | 5.000% | $5,000,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $2,500,000.00 | $7,500,000.00 |
| 4/1/25 | 5.000% | $5,000,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $2,750,000.00 | $7,750,000.00 |
|  |  | $42,415,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $14,649,330.00 | $57,265,330.00 |

**UTGO 2005-C**
| 4/1/15 | 5.000% | $2,305,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $115,250.00 | $2,420,250.00 |
| 4/1/16 | 5.000% | $2,425,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $242,500.00 | $2,667,500.00 |
| 4/1/17 | 4.300% | $2,545,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $328,365.00 | $2,873,365.00 |
| 4/1/18 | 5.000% | $2,630,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $526,000.00 | $3,156,000.00 |
| 4/1/19 | 5.000% | $2,735,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $717,937.50 | $3,452,937.50 |
| 4/1/20 | 5.250% | $2,885,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $398,773.00 | $3,283,773.00 |
|  |  | $15,525,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $2,838,767.50 | $18,363,767.50 |

**UTGO 2008-A**
| 4/1/15 | 5.000% | $2,875,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $143,750.00 | $3,018,750.00 |
| 4/1/16 | 5.000% | $3,015,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $301,500.00 | $3,316,500.00 |
| 4/1/17 | 5.000% | $3,170,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $475,500.00 | $3,645,500.00 |
| 4/1/18 | 5.000% | $3,325,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $532,000.00 | $3,857,000.00 |
| 4/1/19 | 5.000% | $3,460,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $865,500.00 | $4,325,000.00 |
| 4/1/20 | 5.000% | $3,630,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,089,000.00 | $4,719,000.00 |
| 4/1/21 | 5.000% | $3,851,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,335,250.00 | $5,150,250.00 |
| 4/1/22 | 5.000% | $4,095,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $1,602,000.00 | $5,697,000.00 |
| 4/1/23 | 5.000% | $8,620,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $4,091,750.00 | $12,711,750.00 |
| 4/1/25 | 5.000% | $19,780,000.00 | Assured |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $12,548,250.00 | $32,328,250.00 |
|  |  | $55,895,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $22,992,000.00 | $78,887,000.00 |

**UTGO 2008-B(1)**
| 4/1/15 | 5.000% | $7,170,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $398,500.00 | $8,368,500.00 |
| 4/1/16 | 5.425% | $3,580,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $344,000.00 | $3,784,000.00 |
| 4/1/17 | 5.000% | $3,440,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $337,000.00 | $4,317,000.00 |
| 4/1/18 | 5.000% | $3,790,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $758,000.00 | $4,548,000.00 |
|  |  | $18,780,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $2,037,500.00 | $20,817,500.00 |

**UTGO 2008-A**
| 4/1/15 | 5.125% | $1,885,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $48,340.83 | $1,933,340.83 |
| 4/1/16 | 5.425% | $1,985,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $161,648.48 | $2,146,648.48 |
| 4/1/17 | 6.087% | $2,105,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $370,328.38 | $2,475,328.38 |
| 11/1/17 | 6.337% | $2,240,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $496,820.80 | $2,736,820.80 |
| 11/1/23 | 7.184% | $13,900,000.00 | Ambac |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $6,637,758.60 | $20,537,758.60 |
| 11/1/34 | 8.369% | $77,285,000.00 | Ambac | $2,398,764.63 | $2,398,764.63 | $2,179,078.38 | $2,179,078.38 | $1,940,352.65 | $1,940,352.65 | $1,680,704.43 | $1,680,704.43 | $1,399,250.68 | $1,399,250.68 | $1,091,317.60 | $1,091,317.60 | $757,603.73 | $757,603.73 | $394,598.35 | $108,182,287.58 | $185,467,287.58 |
|  |  | $100,000,000.00 |  | $2,398,764.63 | $2,398,764.63 | $2,179,078.38 | $2,179,078.38 | $1,940,352.65 | $1,940,352.65 | $1,680,704.43 | $1,680,704.43 | $1,399,250.68 | $1,399,250.68 | $1,091,317.60 | $1,091,317.60 | $757,603.73 | $757,603.73 | $394,598.35 | $116,351,184.65 | $209,265,973.65 |

|  |  | $435,930,000.00 |  |  |  |  |  |  |  |  |  |  |  |  |  |  | $394,598.35 | $394,598.35 | $394,598.35 | $209,263,973.65 | $646,073,973.65 |

* Prior to Mandatory Redemption

# UTGO Series - Prior Bonds

Bond Series Subject to Mandatory Redemption

## Issuance: 2004-B(2) — CUSIP 25809ZX1

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | - | $575,000.00 | 5.240% | $15,065.00 |
| 4/1/15 | Ambac | 6/30/15 | $155,000.00 | $420,000.00 | 5.240% | $15,065.00 |
| 10/1/15 | Ambac | 6/30/16 | - | $420,000.00 | 5.240% | $11,004.00 |
| 4/1/16 | Ambac | 6/30/16 | $165,000.00 | $255,000.00 | 5.240% | $11,004.00 |
| 10/1/16 | Ambac | 6/30/17 | - | $255,000.00 | 5.240% | $6,681.00 |
| 4/1/17 | Ambac | 6/30/17 | $170,000.00 | $85,000.00 | 5.240% | $6,681.00 |
| 10/1/17 | Ambac | 6/30/18 | - | $85,000.00 | 5.240% | $2,227.00 |
| 4/1/18 | Ambac | 6/30/18 | $85,000.00 | - | 5.240% | $2,227.00 |
| Total | | | $575,000.00 | | | $69,954.00 |

## Issuance: 2008-A — CUSIP 25809NS5

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/15 | Assured | 6/30/15 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/15 | Assured | 6/30/16 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/16 | Assured | 6/30/16 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/16 | Assured | 6/30/17 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/17 | Assured | 6/30/17 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/17 | Assured | 6/30/18 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/18 | Assured | 6/30/18 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/18 | Assured | 6/30/19 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/19 | Assured | 6/30/19 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/19 | Assured | 6/30/20 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/20 | Assured | 6/30/20 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/20 | Assured | 6/30/21 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/21 | Assured | 6/30/21 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/21 | Assured | 6/30/22 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/22 | Assured | 6/30/22 | - | $8,620,000.00 | 5.000% | $215,500.00 |
| 10/1/2022 | Assured | 6/30/23 | $4,205,000.00 | $8,620,000.00 | 5.000% | $215,500.00 |
| 4/1/2023 | Assured | 6/30/23 | - | $4,415,000.00 | 5.000% | $110,375.00 |
| 10/1/2023 | Assured | 6/30/24 | $4,415,000.00 | $4,415,000.00 | 5.000% | $110,375.00 |
| 4/1/2024 | Assured | 6/30/24 | - | - | 5.000% | $110,375.00 |
| Total | | | $8,620,000.00 | | | $4,059,750.00 |

## Issuance: 2008-A — CUSIP 25809NS3

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/15 | Assured | 6/30/15 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/15 | Assured | 6/30/16 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/16 | Assured | 6/30/16 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/16 | Assured | 6/30/17 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/17 | Assured | 6/30/17 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/17 | Assured | 6/30/18 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/18 | Assured | 6/30/18 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/19 | Assured | 6/30/19 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/19 | Assured | 6/30/19 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/20 | Assured | 6/30/20 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/20 | Assured | 6/30/20 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/21 | Assured | 6/30/21 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/21 | Assured | 6/30/21 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/22 | Assured | 6/30/22 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/22 | Assured | 6/30/22 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/2022 | Assured | 6/30/23 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/2023 | Assured | 6/30/23 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/2024 | Assured | 6/30/24 | | $19,980,000.00 | 5.000% | $499,500.00 |
| 10/1/2025 | Assured | 6/30/24 | $4,635,000.00 | $19,980,000.00 | 5.000% | $499,500.00 |
| 4/1/2026 | Assured | 6/30/25 | | $15,345,000.00 | 5.000% | $383,625.00 |
| 4/1/2026 | Assured | 6/30/25 | $4,870,000.00 | $15,345,000.00 | 5.000% | $383,625.00 |
| 10/1/2026 | Assured | 6/30/26 | | $10,475,000.00 | 5.000% | $261,875.00 |
| 4/1/2026 | Assured | 6/30/27 | $5,110,000.00 | $10,475,000.00 | 5.000% | $261,875.00 |
| 10/1/2027 | Assured | 6/30/28 | | $5,365,000.00 | 5.000% | $134,125.00 |
| 4/1/2028 | Assured | 6/30/28 | $5,365,000.00 | $5,365,000.00 | 5.000% | $134,125.00 |
| Total | | | $19,980,000.00 | | | $12,248,250.00 |

# UTGO Series – 2010A

### Bond Series Subject to Mandatory Redemption

## Issuance: 2010-A

CUSIP 59447PD84

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 11/1/14 | Ambac | | | $13,900,000.00 | 7.188% | $499,566.00 |
| 5/1/15 | Ambac | 6/30/15 | | $13,900,000.00 | 7.188% | $499,566.00 |
| 11/1/15 | Ambac | | | $13,900,000.00 | 7.188% | $499,566.00 |
| 5/1/16 | Ambac | 6/30/16 | | $13,900,000.00 | 7.188% | $499,566.00 |
| 11/1/16 | Ambac | | | $13,900,000.00 | 7.188% | $499,566.00 |
| 5/1/17 | Ambac | 6/30/17 | | $13,900,000.00 | 7.188% | $499,566.00 |
| 11/1/17 | Ambac | | | $13,900,000.00 | 7.188% | $499,566.00 |
| 5/1/18 | Ambac | 6/30/18 | | $13,900,000.00 | 7.188% | $499,566.00 |
| 11/1/18 | Ambac | | $2,395,000.00 | $11,505,000.00 | 7.188% | $499,566.00 |
| 5/1/19 | Ambac | 6/30/19 | | $11,505,000.00 | 7.188% | $413,489.70 |
| 11/1/19 | Ambac | | $2,575,000.00 | $8,930,000.00 | 7.188% | $413,489.70 |
| 5/1/20 | Ambac | 6/30/20 | | $8,930,000.00 | 7.188% | $320,944.20 |
| 11/1/20 | Ambac | | $2,765,000.00 | $6,165,000.00 | 7.188% | $320,944.20 |
| 5/1/21 | Ambac | 6/30/21 | | $6,165,000.00 | 7.188% | $221,570.10 |
| 11/1/21 | Ambac | | $2,970,000.00 | $3,195,000.00 | 7.188% | $221,570.10 |
| 5/1/22 | Ambac | 6/30/22 | | $3,195,000.00 | 7.188% | $114,828.30 |
| 11/1/22 | Ambac | | $3,195,000.00 | | 7.188% | $114,828.30 |
| | | 6/30/23 | **$13,900,000.00** | | | **$6,637,758.60** |

## Issuance: 2010-A

CUSIP 59447PD16

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 11/1/14 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/15 | Ambac | 6/30/15 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/15 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/16 | Ambac | 6/30/16 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/16 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/17 | Ambac | 6/30/17 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/17 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/18 | Ambac | 6/30/18 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/18 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/19 | Ambac | 6/30/19 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/19 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/20 | Ambac | 6/30/20 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/20 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/21 | Ambac | 6/30/21 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/21 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/22 | Ambac | 6/30/22 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/22 | Ambac | | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 5/1/23 | Ambac | 6/30/23 | | $77,885,000.00 | 8.369% | $3,259,097.83 |
| 11/1/23 | Ambac | | $3,455,000.00 | $74,430,000.00 | 8.369% | $3,259,097.83 |
| 5/1/24 | Ambac | 6/30/24 | | $74,430,000.00 | 8.369% | $3,114,523.35 |
| 11/1/24 | Ambac | | $3,755,000.00 | $70,675,000.00 | 8.369% | $3,114,523.35 |
| 5/1/25 | Ambac | 6/30/25 | | $70,675,000.00 | 8.369% | $2,957,395.38 |
| 11/1/25 | Ambac | | $4,085,000.00 | $66,590,000.00 | 8.369% | $2,957,395.38 |
| 5/1/26 | Ambac | 6/30/26 | | $66,590,000.00 | 8.369% | $2,786,458.55 |
| 11/1/26 | Ambac | | $4,440,000.00 | $62,150,000.00 | 8.369% | $2,786,458.55 |
| 5/1/27 | Ambac | 6/30/27 | | $62,150,000.00 | 8.369% | $2,600,666.75 |
| 11/1/27 | Ambac | | $4,825,000.00 | $57,325,000.00 | 8.369% | $2,600,666.75 |
| 5/1/28 | Ambac | 6/30/28 | | $57,325,000.00 | 8.369% | $2,398,764.63 |
| 11/1/28 | Ambac | | $5,250,000.00 | $52,075,000.00 | 8.369% | $2,398,764.63 |
| 5/1/29 | Ambac | 6/30/29 | | $52,075,000.00 | 8.369% | $2,179,078.38 |
| 11/1/29 | Ambac | | $5,705,000.00 | $46,370,000.00 | 8.369% | $2,179,078.38 |
| 5/1/30 | Ambac | 6/30/30 | | $46,370,000.00 | 8.369% | $1,940,352.65 |
| 11/1/30 | Ambac | | $6,205,000.00 | $40,165,000.00 | 8.369% | $1,940,352.65 |
| 5/1/31 | Ambac | 6/30/31 | | $40,165,000.00 | 8.369% | $1,680,704.43 |
| 11/1/31 | Ambac | | $6,750,000.00 | $33,415,000.00 | 8.369% | $1,680,704.43 |
| 5/1/32 | Ambac | 6/30/32 | | $33,415,000.00 | 8.369% | $1,398,350.68 |
| 11/1/32 | Ambac | | $7,335,000.00 | $26,080,000.00 | 8.369% | $1,398,350.68 |
| 5/1/33 | Ambac | 6/30/33 | | $26,080,000.00 | 8.369% | $1,091,317.60 |
| 11/1/33 | Ambac | | $7,975,000.00 | $18,105,000.00 | 8.369% | $1,091,317.60 |
| 5/1/34 | Ambac | 6/30/34 | | $18,105,000.00 | 8.369% | $757,603.73 |
| 11/1/34 | Ambac | | $8,675,000.00 | $9,430,000.00 | 8.369% | $757,603.73 |
| 5/1/35 | Ambac | 6/30/35 | | $9,430,000.00 | 8.369% | $394,598.35 |
| 11/1/35 | Ambac | | $9,430,000.00 | | 8.369% | $394,598.35 |
| | | 6/30/36 | | | | |
| | | **Total** | **$77,885,000.00** | | | **$108,522,287.58** |

**EXHIBIT B**
**MUNICIPAL OBLIGATION**

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Interest | | | | | | | | |
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | |
| 0333SN3 | 4/1/15 | 5.250% | $3,476,650.00 | Assured | 65,012.06 | 65,012.06 | — | — | — | — | — | — | — | — | — | — | — | — |
| 0333SN1 | 4/1/16 | 5.000% | $2,602,655.00 | Assured | 65,066.38 | 65,066.38 | 65,066.38 | 65,066.38 | — | — | — | — | — | — | — | — | — | — |
| 0333SS6 | 4/1/17 | 5.000% | $2,733,035.00 | Assured | 68,325.13 | 68,325.13 | 68,319.69 | 68,325.13 | 68,325.13 | 68,325.13 | — | — | — | — | — | — | — | — |
| 0333SS4 | 4/1/18 | 5.000% | $2,872,045.00 | Assured | 71,801.13 | 71,801.13 | 71,801.13 | 71,801.13 | 71,801.13 | 71,801.13 | 71,801.13 | 71,801.13 | — | — | — | — | — | — |
| 0333SZ2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | 75,385.75 | — | — | — | — |
| | | | $15,699,785.00 | | 345,590.44 | 345,590.44 | 280,578.38 | 280,578.38 | 215,512.00 | 215,512.00 | 147,186.88 | 147,186.88 | 75,385.75 | 75,385.75 | — | — | — | — |
| **UTGO 2001-A(D)** | | | | | | | | | | | | | | | | | | |
| 0333O6 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | 138,724.99 | 138,724.99 | 146,198.39 | 146,198.39 | — | — | — | — | — | — | — | — | — | — |
| 0333Q6 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | 146,198.39 | 146,198.39 | 154,138.88 | 154,138.88 | 154,138.88 | 154,138.88 | — | — | — | — | — | — | — | — |
| 0333VL1 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | 154,138.88 | 154,138.88 | 326,961.25 | 326,961.25 | 326,961.25 | 326,961.25 | 326,961.25 | 326,961.25 | — | — | — | — | — | — |
| 0333VM9 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | 326,961.25 | 326,961.25 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | — | — | — | — |
| 0333VN7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | — | — |
| 0333VP2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 |
| 0333VQ0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 304,150.00 | 609,300.00 | 609,300.00 | 304,150.00 | 304,150.00 |
| | | | $65,001,200.00 | | 1,678,473.50 | 1,678,473.50 | 1,639,748.51 | 1,639,748.51 | 1,393,550.13 | 1,393,550.13 | 1,239,411.25 | 1,239,411.25 | 912,650.00 | 912,650.00 | 608,300.00 | 608,300.00 | 304,150.00 | 304,150.00 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| 0333W5 | 4/1/21 | 5.125% | $2,851,560.00 | NPFG | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 | 72,148.73 |
| 0333W6 | 4/1/22 | 5.125% | $2,922,405.00 | NPFG | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 | 75,822.97 |
| | | | $5,774,595.00 | | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 | 147,971.69 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | |
| 0333X8 | 4/1/15 | 4.000% | $260,700.00 | Syncora | 5,214.00 | 5,214.00 | — | — | — | — | — | — | — | — | — | — | — | — |
| 0333X4 | 4/1/16 | 5.250% | $2,215,950.00 | Syncora | 58,168.09 | 58,168.09 | 68,319.69 | 68,319.69 | — | — | — | — | — | — | — | — | — | — |
| 0333X6 | 4/1/17 | 5.250% | $2,602,655.00 | Syncora | 68,319.69 | 68,319.69 | 71,855.44 | 71,855.44 | 71,855.44 | 71,855.44 | — | — | — | — | — | — | — | — |
| 0333XT2 | 4/1/18 | 5.250% | $2,730,350.00 | Syncora | 71,855.44 | 71,855.44 | 75,619.29 | 75,619.29 | 75,619.29 | 75,619.29 | 75,619.29 | 75,619.29 | — | — | — | — | — | — |
| 0333XU9 | 4/1/19 | 5.250% | $2,880,735.00 | Syncora | 75,619.29 | 75,619.29 | 79,611.26 | 79,611.26 | 79,611.26 | 79,611.26 | 79,611.26 | 79,611.26 | 79,611.26 | 79,611.26 | — | — | — | — |
| 0333XV7 | 4/1/20 | 5.250% | $3,022,810.00 | Syncora | 79,611.26 | 79,611.26 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | 72,425.72 | — | — |
| 0333XW5 | 4/1/21 | 4.900% | $434,500.00 | Syncora | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 | 9,776.25 |
| 0333XX3 | 4/1/21 | 5.250% | $2,759,075.00 | Syncora | 72,425.72 | 72,425.72 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 | 88,051.43 |
| 0333XX3 | 4/1/22 | 5.250% | $3,334,340.00 | Syncora | 88,051.43 | 88,051.43 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 | 10,047.81 |
| 0333XY1 | 4/1/22 | 4.625% | $434,500.00 | Syncora | 10,047.81 | 10,047.81 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 | 81,322.11 |
| 0333XZ8 | 4/1/23 | 4.625% | $3,097,785.00 | Syncora | 81,322.11 | 81,322.11 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 | 30,143.44 |
| 0333XZ9 | 4/1/23 | 4.625% | $1,303,500.00 | Syncora | 30,143.44 | 30,143.44 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 | 63,301.22 |
| 0333XP0 | 4/1/23 | 5.250% | $2,411,475.00 | Syncora | 63,301.22 | 63,301.22 | — | — | — | — | — | — | — | — | — | — | — | — |
| | | | $27,525,575.00 | | 713,856.54 | 713,856.54 | 650,473.66 | 650,473.66 | 582,153.96 | 582,153.96 | 530,298.53 | 530,298.53 | 434,479.23 | 434,479.23 | 355,067.97 | 355,067.97 | 272,866.00 | 272,866.00 |
| **UTGO 2004-A(D)** | | | | | | | | | | | | | | | | | | |
| 0333YX2 | 4/1/15 | 5.250% | $3,910,500.00 | Ambac | 102,650.63 | 102,650.63 | 102,650.63 | 102,650.63 | — | — | — | — | — | — | — | — | — | — |
| 0333YW2 | 4/1/16 | 4.250% | $160,765.00 | Ambac | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | 3,416.26 | — | — |
| 0333YY0 | 4/1/17 | 5.250% | $5,287,865.00 | Ambac | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 138,806.46 | 143,385.00 | 143,385.00 |
| 0333ZA1 | 4/1/18 | 5.000% | $5,735,400.00 | Ambac | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 | 143,385.00 |
| 0333ZA1 | 4/1/19 | 5.000% | $3,022,100.00 | Ambac | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 | 158,081.96 |
| 0333ZG0 | 4/1/20 | 4.500% | $315,705.00 | Ambac | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 | 7,332.19 |
| 0333ZE3 | 4/1/21 | 5.250% | $6,011,480.00 | Ambac | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 | 157,853.85 |
| 0333ZJ5 | 4/1/23 | 5.250% | $602,165.00 | Ambac | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 | 15,689.80 |
| 0333ZH2 | 4/1/24 | 4.600% | $5,967,410.00 | Ambac | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 | 157,169.51 |
| | | 5.250% | | | | | | | | | | | | | | | | |
| | | | $34,125,630.00 | | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 884,385.65 | 781,735.02 | 781,735.02 | 639,532.31 | 639,532.31 |

\* Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Issuer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
| 9298 | 4/1/15 | 5.000% | $7,538,575.00 | Ambac | $188,464.38 | $188,464.38 | | | | | | | | | | | | |
| 92Q6 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | $207,696.43 | $207,696.43 | $207,696.43 | $207,696.43 | | | | | | | | | | |
| 92W3 | 4/1/17 | 5.000% | $8,385,045.00 | Ambac | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | | | | | | | | |
| 92X2 | 4/1/18 | 5.250% | $8,064,320.00 | Ambac | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | | | | | | |
| 92T0 | 4/1/18 | 5.250% | $1,718,000.00 | Ambac | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | | | | | | |
| | | | **$25,538,185.00** | | $658,772.61 | $658,772.61 | $470,308.23 | $470,308.23 | $262,611.90 | $262,611.90 | $45,622.50 | $45,622.50 | $1,935.26 | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| 92X1 | 4/1/19 | 5.240% | $499,675.00 | Ambac | $13,091.49 | $13,091.49 | $9,562.48 | $9,562.48 | $5,895.79 | $5,895.79 | $1,935.26 | $1,935.26 | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| 92JZ2 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | $49,750.25 | $49,750.25 | | | | | | | | | | | | |
| 92K53 | 4/1/16 | 5.000% | $2,089,945.00 | Assured | $52,248.63 | $52,248.63 | $52,248.63 | $52,248.63 | | | | | | | | | | |
| 92G61 | 4/1/17 | 4.500% | $2,189,850.00 | Assured | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | | | | | | | | |
| 92G79 | 4/1/18 | 5.000% | $2,389,915.00 | Assured | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | | | | | | |
| 92G87 | 4/1/19 | 5.000% | $2,402,765.00 | Assured | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | | | | |
| 92G95 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | | |
| 92H29 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 92H37 | 4/1/22 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 92H45 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 92H52 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 92H60 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| | | | **$37,032,435.00** | | $918,146.30 | $918,146.30 | $868,396.05 | $868,396.05 | $816,147.42 | $816,147.42 | $769,065.00 | $769,065.00 | $711,819.63 | $711,819.63 | $651,750.00 | $651,750.00 | $543,125.00 | $543,125.00 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 92J92 | 4/1/15 | 5.000% | $2,003,040.00 | Assured | $50,076.13 | $50,076.13 | | | | | | | | | | | | |
| 92K53 | 4/1/16 | 5.000% | $2,107,345.00 | Assured | $52,683.13 | $52,683.13 | $52,683.13 | $52,683.13 | | | | | | | | | | |
| 92G61 | 4/1/17 | 4.300% | $2,211,605.00 | Assured | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | | | | | | | | |
| 92K341 | 4/1/18 | 5.000% | $2,285,470.00 | Assured | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | | | | | | |
| 92H96 | 4/1/19 | 5.000% | $2,376,715.00 | Assured | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | | | | |
| 92J66 | 4/1/20 | 5.250% | $2,507,065.00 | Assured | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | | |
| | | | **$13,491,225.00** | | $335,644.73 | $335,644.73 | $285,569.61 | $285,569.61 | $232,955.48 | $232,955.48 | $185,335.98 | $185,335.98 | $128,199.23 | $128,199.23 | $65,810.46 | $65,810.46 | | |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | |
| 93S56 | 4/1/15 | 5.000% | $2,498,375.00 | Assured | $62,459.38 | $62,459.38 | | | | | | | | | | | | |
| 93S64 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | $65,500.88 | $65,500.88 | $65,500.88 | $65,500.88 | | | | | | | | | | |
| 93S72 | 4/1/17 | 5.000% | $2,474,750.00 | Assured | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | | | | | | | | |
| 93S80 | 4/1/18 | 4.000% | $3,006,740.00 | Assured | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | $57,788.50 | | | | | | |
| 93T08 | 4/1/19 | 5.000% | $3,154,470.00 | Assured | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | | | | |
| 93S3P | 4/1/20 | 5.000% | $3,154,470.00 | Assured | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | | |
| 93S3Q | 4/1/21 | 5.000% | $3,315,235.00 | Assured | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 |
| 93N37 | 4/1/22 | 5.000% | $3,480,360.00 | Assured | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 |
| 93N52 | 4/1/23 | 5.000% | $7,490,780.00 | Assured | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 |
| 93N65 | 4/1/24 | 5.000% | $17,362,620.00 | Assured | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 |
| | | | **$48,572,755.00** | | $1,199,671.75 | $1,199,671.75 | $1,137,412.38 | $1,137,412.38 | $1,071,911.50 | $1,071,911.50 | $1,003,043.25 | $1,003,043.25 | $945,254.75 | $945,254.75 | $870,086.25 | $870,086.25 | $791,224.50 | $791,224.50 |
| **UTGO 2006-B(1)** | | | | | | | | | | | | | | | | | | |
| 93Y53 | 4/1/15 | 5.000% | $6,925,930.00 | Assured | $173,148.25 | $173,148.25 | | | | | | | | | | | | |
| 93Y61 | 4/1/16 | 5.000% | $2,989,360.00 | Assured | $74,734.00 | $74,734.00 | $74,734.00 | $74,734.00 | | | | | | | | | | |
| 93J3P7 | 4/1/17 | 5.000% | $3,111,020.00 | Assured | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | | | | | | | | |
| 2310933P7 | 4/1/18 | 5.000% | $3,293,510.00 | Assured | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | | | | | | |
| | | | **$16,319,820.00** | | $407,995.50 | $407,995.50 | $234,947.25 | $234,947.25 | $160,113.25 | $160,113.25 | $82,337.75 | $82,337.75 | | | | | | |
| | | | **$287,560,790.00** | | $7,303,799.99 | $7,303,799.99 | $6,599,232.86 | $6,599,232.86 | $5,773,048.66 | $5,773,048.66 | $5,106,593.72 | $5,106,593.72 | $4,230,145.92 | $4,230,145.92 | $3,480,721.39 | $3,480,721.39 | $2,698,849.50 | $2,698,849.50 |

* Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | | | |
| 25...SA3 | 4/1/15 | 5.250% | $2,476,650.00 | Assured | | | | | | | | | | | | | | | $130,024.13 | $2,606,674.13 |
| 25...SN1 | 4/1/16 | 5.000% | $2,602,655.00 | Assured | | | | | | | | | | | | | | | $260,265.50 | $2,862,920.50 |
| 25...SP6 | 4/1/17 | 5.000% | $2,733,655.00 | Assured | | | | | | | | | | | | | | | $409,950.75 | $3,142,955.75 |
| 25...SQ4 | 4/1/18 | 5.000% | $2,872,245.00 | Assured | | | | | | | | | | | | | | | $574,409.00 | $3,446,454.00 |
| 25...SR2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | | | | | | | | | | | | | | | $753,837.50 | $3,769,267.50 |
| | | | **$13,699,785.00** | | | | | | | | | | | | | | | | **$2,128,506.88** | **$15,828,291.88** |
| **UTGO 2001-A(I)** | | | | | | | | | | | | | | | | | | | | |
| 25...6 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | | | | | | | | | | | | | | | $277,449.98 | $5,439,309.98 |
| 25...G3 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | | | | | | | | | | | | | | | $584,793.55 | $6,024,733.55 |
| 25...L1 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | | | | | | | | | | | | | | | $922,833.25 | $6,660,233.25 |
| 25...M9 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | | | | | | | | | | | | | | | $2,615,690.00 | $14,781,690.00 |
| 25...N7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | | | | | | | | | | | | | | | $3,041,500.00 | $15,207,500.00 |
| 25...P2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | | | | | | | | | | | | | | | $3,649,800.00 | $15,815,800.00 |
| 25...Q0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | | | | | | | | | | | | | | | $4,258,100.00 | $16,424,100.00 |
| | | | **$65,001,200.00** | | | | | | | | | | | | | | | | **$15,352,566.78** | **$80,353,766.78** |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | | | |
| 25...W8 | 4/1/21 | 5.125% | $2,815,560.00 | NPFG | $75,822.97 | | | | | | | | | | | | | | $1,010,082.15 | $3,825,642.15 |
| 25...W6 | 4/1/22 | 5.125% | $2,958,995.00 | NPFG | $75,822.97 | $75,822.97 | | | | | | | | | | | | | $1,213,167.45 | $4,172,112.45 |
| | | | **$5,774,505.00** | | **$75,822.97** | **$75,822.97** | | | | | | | | | | | | | **$2,223,249.60** | **$7,997,754.60** |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | | | |
| 25...X9 | 4/1/15 | 4.000% | $262,700.00 | Syncora | | | | | | | | | | | | | | | $10,428.00 | $271,178.00 |
| 25...N8 | 4/1/16 | 5.250% | $2,215,950.00 | Syncora | | | | | | | | | | | | | | | $116,337.38 | $2,332,287.38 |
| 25...P6 | 4/1/16 | 5.250% | $2,602,655.00 | Syncora | | | | | | | | | | | | | | | $272,275.78 | $2,875,593.78 |
| 25...S4 | 4/1/17 | 5.250% | $2,737,350.00 | Syncora | | | | | | | | | | | | | | | $431,132.63 | $3,168,482.63 |
| 25...T2 | 4/1/18 | 5.250% | $2,880,735.00 | Syncora | | | | | | | | | | | | | | | $604,954.35 | $3,485,689.35 |
| 25...U9 | 4/1/18 | 5.250% | $3,032,910.00 | Syncora | | | | | | | | | | | | | | | $796,112.63 | $3,829,022.63 |
| 25...X3 | 4/1/19 | 5.250% | $2,439,500.00 | Syncora | | | | | | | | | | | | | | | $117,315.00 | $353,815.00 |
| 25...W5 | 4/1/20 | 5.250% | $2,759,075.00 | Syncora | | | | | | | | | | | | | | | $869,108.63 | $3,628,183.63 |
| 25...X3 | 4/1/21 | 5.250% | $3,354,340.00 | Syncora | | | | | | | | | | | | | | | $1,232,719.95 | $4,587,059.95 |
| 25...Y1 | 4/1/22 | 4.625% | $434,500.00 | Syncora | $10,047.81 | $10,047.81 | | | | | | | | | | | | | $160,765.00 | $595,265.00 |
| 25...Z8 | 4/1/22 | 4.625% | $3,097,985.00 | Syncora | $81,352.11 | $81,352.11 | | | | | | | | | | | | | $1,301,153.70 | $4,399,138.70 |
| 25...J0 | 4/1/23 | 4.625% | $1,303,500.00 | Syncora | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | | | | | | | | | | | $542,581.88 | $1,846,081.88 |
| 25...30 | 4/1/23 | 5.250% | $2,411,475.00 | Syncora | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | | | | | | | | | | | $1,170,421.94 | $3,580,896.94 |
| | | | **$27,325,575.00** | | **$184,834.58** | **$184,834.58** | **$93,444.66** | **$93,444.66** | | | | | | | | | | | **$7,595,309.84** | **$35,120,884.84** |
| **UTGO 2004-A(I)** | | | | | | | | | | | | | | | | | | | | |
| 25...X9 | 4/1/19 | 5.250% | $3,910,500.00 | Ambac | $158,081.96 | $158,081.96 | | | | | | | | | | | | | $1,026,506.25 | $4,937,006.25 |
| 25...Y0 | 4/1/20 | 4.250% | $160,765.00 | Ambac | | | | | | | | | | | | | | | $40,995.08 | $201,760.08 |
| 25...Y7 | 4/1/20 | 5.250% | $5,287,865.00 | Ambac | | | | | | | | | | | | | | | $1,665,677.48 | $6,953,542.48 |
| 25...Z1 | 4/1/21 | 5.000% | $5,735,400.00 | Ambac | $157,332.19 | $157,332.19 | $157,332.19 | $7,332.19 | | | | | | | | | | | $2,007,390.00 | $7,742,790.00 |
| 25...Z9 | 4/1/22 | 5.250% | $6,032,170.00 | Ambac | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | | | | | | | | | | | $2,529,311.40 | $8,551,481.40 |
| 25...C7 | 4/1/23 | 5.250% | $6,031,480.00 | Ambac | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | | | | | | | | | $2,843,369.30 | $8,854,849.30 |
| 25...D5 | 4/1/23 | 5.250% | $313,795.00 | Ambac | | | | $15,689.80 | $15,689.80 | $15,689.80 | | | | | | | | | $313,795.00 | $995,560.00 |
| 25...D3 | 4/1/24 | 4.600% | $682,165.00 | Ambac | | | | | | | | | | | | | | | $3,143,590.25 | $9,130,800.25 |
| 25...F0 | 4/1/24 | 5.250% | $5,087,410.00 | Ambac | | | | | | | | | | | | | | | | |
| | | | **$34,125,630.00** | | **$496,127.31** | **$496,127.31** | **$338,045.35** | **$338,045.35** | **$172,859.31** | **$172,859.31** | | | | | | | | | **$13,700,415.63** | **$47,826,045.63** |

* Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| Cusip | Maturity Due | Rate | Principal | Insurer | Interest 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | | | |
| 5278 | 4/1/15 | 5.000% | $7,538,575.00 | Ambac | | | | | | | | | | | | | | | $376,928.75 | $7,915,503.75 |
| 2626 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | | | | | | | | | | | | | | | $830,785.73 | $8,743,030.73 |
| 5G61 | 4/1/16 | 4.000% | $265,345.00 | Ambac | | | | | | | | | | | | | | | $31,805.40 | $296,850.40 |
| 5252 | 4/1/17 | 5.250% | $8,064,320.00 | Ambac | | | | | | | | | | | | | | | $1,270,140.40 | $9,334,460.40 |
| 2T0 | 4/1/19 | 5.250% | $1,738,000.00 | Ambac | | | | | | | | | | | | | | | $364,080.00 | $2,102,080.00 |
| | | | **$25,518,185.00** | | | | | | | | | | | | | | | | **$2,874,630.28** | **$28,392,815.28** |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | | |
| 5Z21 | 4/1/19 | 5.240% | $499,675.00 | Ambac | | | | | | | | | | | | | | | $60,790.03 | $560,465.03 |
| | | | **$499,675.00** | | | | | | | | | | | | | | | | **$60,790.03** | **$560,465.03** |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | | |
| G53 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | | | | | | | | | | | | | | | $95,500.50 | $2,085,510.50 |
| G61 | 4/1/16 | 5.000% | $2,089,945.00 | Assured | | | | | | | | | | | | | | | $208,994.50 | $2,298,939.50 |
| G79 | 4/1/17 | 4.300% | $2,189,880.00 | Assured | | | | | | | | | | | | | | | $282,494.52 | $2,472,374.52 |
| G87 | 4/1/18 | 5.000% | $2,289,815.00 | Assured | | | | | | | | | | | | | | | $457,963.00 | $2,747,774.00 |
| G95 | 4/1/19 | 5.000% | $2,402,285.00 | Assured | | | | | | | | | | | | | | | $600,696.25 | $3,003,481.25 |
| H29 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | | | | | | | | | | | | | | | $1,303,500.00 | $5,648,500.00 |
| H37 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | | | | | | | | | | | | | | | $1,520,750.00 | $5,865,750.00 |
| H45 | 4/1/22 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | | | | | | | | | | | | | $1,738,000.00 | $6,083,000.00 |
| H52 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | | | | | | | | | | | $1,955,250.00 | $6,300,250.00 |
| H60 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | | | | | | | | | $2,172,500.00 | $6,517,500.00 |
| H78 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | | | | | | | $2,389,750.00 | $6,734,750.00 |
| | | | **$37,032,435.00** | | $434,500.00 | $434,500.00 | $325,875.00 | $325,875.00 | $217,250.00 | $217,250.00 | $108,625.00 | $108,625.00 | | | | | | | **$12,725,398.77** | **$49,764,833.77** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | | |
| 392 | 4/1/15 | 5.000% | $2,003,045.00 | Assured | | | | | | | | | | | | | | | $100,152.25 | $2,103,197.25 |
| 351 | 4/1/16 | 5.000% | $2,107,325.00 | Assured | | | | | | | | | | | | | | | $210,732.50 | $2,318,057.50 |
| 33 | 4/1/17 | 4.300% | $2,211,605.00 | Assured | | | | | | | | | | | | | | | $285,297.05 | $2,496,902.05 |
| 341 | 4/1/18 | 5.000% | $2,285,470.00 | Assured | | | | | | | | | | | | | | | $457,094.00 | $2,742,564.00 |
| 358 | 4/1/19 | 5.250% | $2,376,715.00 | Assured | | | | | | | | | | | | | | | $623,887.69 | $3,000,602.69 |
| 366 | 4/1/20 | 5.250% | $2,507,965.00 | Assured | | | | | | | | | | | | | | | $780,725.48 | $3,296,790.48 |
| | | | **$13,491,235.00** | | | | | | | | | | | | | | | | **$2,466,888.96** | **$15,958,113.96** |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | | | |
| 356 | 4/1/15 | 5.000% | $2,498,375.00 | Assured | | | | | | | | | | | | | | | $124,918.75 | $2,623,293.75 |
| 364 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | | | | | | | | | | | | | | | $262,003.50 | $2,882,038.50 |
| 372 | 4/1/17 | 4.000% | $2,754,730.00 | Assured | | | | | | | | | | | | | | | $413,209.50 | $3,167,939.50 |
| 380 | 4/1/18 | 4.000% | $2,889,425.00 | Assured | | | | | | | | | | | | | | | $462,308.00 | $3,351,733.00 |
| 398 | 4/1/19 | 5.000% | $3,006,740.00 | Assured | | | | | | | | | | | | | | | $731,685.00 | $3,738,425.00 |
| 22 | 4/1/20 | 5.000% | $3,154,470.00 | Assured | | | | | | | | | | | | | | | $946,341.00 | $4,100,811.00 |
| 30 | 4/1/21 | 5.000% | $3,315,255.00 | Assured | | | | | | | | | | | | | | | $1,160,312.25 | $4,475,567.25 |
| 48 | 4/1/22 | 5.000% | $3,480,345.00 | Assured | $87,008.63 | $87,008.63 | | | | | | | | | | | | | $1,392,138.00 | $4,672,483.00 |
| 55 | 4/1/23 | 5.000% | | Assured | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | | | | | | | | | | | | |
| 93 | 4/1/24 | 5.000% | $12,362,620.00 | Assured | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $95,015.88 | $95,015.88 | $434,065.50 | $434,065.50 | $333,370.13 | $333,370.13 | $227,569.38 | $227,569.38 | $116,554.63 | $116,554.63 | $19,980,048.00 | |
| | | | **$68,552,803.00** | | $708,343.63 | $708,343.63 | $621,335.00 | $621,335.00 | $529,981.38 | $529,981.38 | $434,065.50 | $434,065.50 | $333,370.13 | $333,370.13 | $227,569.38 | $227,569.38 | $116,554.63 | $116,554.63 | | |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | | | |
| 953 | 4/1/15 | 5.000% | $6,925,930.00 | Assured | | | | | | | | | | | | | | | $346,296.50 | $7,272,226.50 |
| 961 | 4/1/16 | 5.000% | $2,985,360.00 | Assured | | | | | | | | | | | | | | | $298,936.00 | $3,284,296.00 |
| 979 | 4/1/17 | 5.000% | $5,311,070.00 | Assured | | | | | | | | | | | | | | | $466,653.00 | $5,777,723.00 |
| 987 | 4/1/18 | 5.000% | | Assured | | | | | | | | | | | | | | | $658,702.00 | $3,952,212.00 |
| | | | **$16,319,820.00** | | | | | | | | | | | | | | | | **$1,770,587.50** | **$18,090,407.50** |
| **Total** | | | **$279,560,790.00** | | $1,959,608.47 | $1,959,608.47 | $1,378,700.00 | $1,378,700.00 | $920,090.68 | $920,090.68 | $542,691.50 | $542,691.50 | $333,370.13 | $333,370.13 | $227,569.38 | $227,569.38 | $116,554.63 | $116,554.63 | **$80,881,991.64** | **$360,442,781.64** |

* Subject to Mandatory Redemption

13-53846-tjt   Doc 8396-3   Filed 11/21/14   Entered 11/21/14 12:45:34   Page 109 of 165

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

**Bond Series Subject to Mandatory Redemption**

## Issuance: 2004-B(2)

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | | $499,675.00 | 5.240% | $13,091.49 |
| 4/1/15 | Ambac | 6/30/15 | $134,695.00 | $364,980.00 | 5.240% | $13,091.49 |
| 10/1/15 | Ambac | 6/30/16 | | $364,980.00 | 5.240% | $9,562.48 |
| 4/1/16 | Ambac | 6/30/16 | $143,385.00 | $221,595.00 | 5.240% | $9,562.48 |
| 10/1/16 | Ambac | 6/30/17 | | $221,595.00 | 5.240% | $5,805.79 |
| 4/1/17 | Ambac | 6/30/17 | $147,730.00 | $73,865.00 | 5.240% | $5,805.79 |
| 10/1/17 | Ambac | 6/30/18 | | $73,865.00 | 5.240% | $1,935.26 |
| 4/1/18 | Ambac | 6/30/18 | $73,865.00 | | 5.240% | $1,935.26 |
| **Total** | | | **$499,675.00** | | | **$60,790.03** |

## Issuance: 2008-A

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/15 | Assured | 6/30/15 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/15 | Assured | 6/30/16 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/16 | Assured | 6/30/16 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/16 | Assured | 6/30/17 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/17 | Assured | 6/30/17 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/17 | Assured | 6/30/18 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/18 | Assured | 6/30/18 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/18 | Assured | 6/30/19 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/19 | Assured | 6/30/19 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/19 | Assured | 6/30/20 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/20 | Assured | 6/30/20 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/20 | Assured | 6/30/21 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/21 | Assured | 6/30/21 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/21 | Assured | 6/30/22 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/22 | Assured | 6/30/22 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/2022 | Assured | 6/30/23 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/2023 | Assured | 6/30/23 | $3,654,145 | $3,836,635.00 | 5.000% | $187,269.50 |
| 10/1/2023 | Assured | 6/30/24 | | $3,836,635.00 | 5.000% | $95,915.88 |
| 4/1/24 | Assured | 6/30/24 | $3,836,635 | | 5.000% | $95,915.88 |
| **Total** | | | **$7,490,780.00** | | | **$3,562,682.75** |

## Issuance: 2008-A

| Date | Issuer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/15 | Assured | 6/30/15 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/15 | Assured | 6/30/16 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/16 | Assured | 6/30/16 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/16 | Assured | 6/30/17 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/17 | Assured | 6/30/17 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/17 | Assured | 6/30/18 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/18 | Assured | 6/30/18 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/18 | Assured | 6/30/19 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/19 | Assured | 6/30/19 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/19 | Assured | 6/30/20 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/20 | Assured | 6/30/20 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/20 | Assured | 6/30/21 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/21 | Assured | 6/30/21 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/21 | Assured | 6/30/22 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/22 | Assured | 6/30/22 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2022 | Assured | 6/30/23 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2023 | Assured | 6/30/24 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2024 | Assured | 6/30/25 | $4,027,815.00 | $13,334,805.00 | 5.000% | $434,065.50 |
| 4/1/2025 | Assured | 6/30/25 | | $13,334,805.00 | 5.000% | $434,065.50 |
| 10/1/2025 | Assured | 6/30/26 | $4,232,030.00 | $9,102,775.00 | 5.000% | $333,370.13 |
| 4/1/2026 | Assured | 6/30/26 | | $9,102,775.00 | 5.000% | $333,370.13 |
| 10/1/2026 | Assured | 6/30/27 | $4,440,590.00 | $4,662,185.00 | 5.000% | $227,569.38 |
| 4/1/2027 | Assured | 6/30/27 | | $4,662,185.00 | 5.000% | $227,569.38 |
| 10/1/2027 | Assured | 6/30/28 | $4,662,185.00 | | 5.000% | $116,554.63 |
| 4/1/2028 | Assured | | | | 5.000% | $116,554.63 |
| **Total** | | | **$17,362,620.00** | | | **$10,904,429.25** |

**EXHIBIT C
STUB UTGO BONDS**

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Interest | | | | | | | | |
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | |
| 745190NX3 | 4/1/15 | 5.250% | $373,350.00 | Assured | $9,800.44 | $9,800.44 | | | | | | | | | | | | |
| 745190NN1 | 4/1/15 | 5.000% | $392,345.00 | Assured | $9,808.63 | $9,808.63 | $9,808.63 | $9,808.63 | | | | | | | | | | |
| 745190NP6 | 4/1/16 | 5.000% | $411,995.00 | Assured | $10,299.88 | $10,299.88 | $10,299.88 | $10,299.88 | $10,299.88 | $10,299.88 | | | | | | | | |
| 745190NQ4 | 4/1/17 | 5.000% | $432,955.00 | Assured | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | | | | | | |
| 745190NR2 | 4/1/19 | 6.000% | $455,570.00 | Assured | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | | | | |
| | | | $2,066,215.00 | | $52,097.06 | $52,097.06 | $42,296.63 | $42,296.63 | $32,488.00 | $32,488.00 | $22,188.13 | $22,188.13 | $11,364.25 | $11,364.25 | | | | |
| **UTGO 2001-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.375% | $778,140.00 | NPFG | $20,912.51 | $20,912.51 | | | | | | | | | | | | |
| | 4/1/16 | 5.375% | $820,060.00 | NPFG | $22,039.11 | $22,039.11 | $22,039.11 | $22,039.11 | | | | | | | | | | |
| | 4/1/17 | 5.375% | $864,940.00 | NPFG | $23,326.13 | $23,326.13 | $23,326.13 | $23,326.13 | $23,326.13 | $23,326.13 | | | | | | | | |
| | 4/1/18 | 5.000% | $1,834,000.00 | NPFG | $40,288.75 | $40,288.75 | $40,288.75 | $40,288.75 | $40,288.75 | $40,288.75 | $40,288.75 | $40,288.75 | | | | | | |
| | 4/1/19 | 5.000% | $1,834,000.00 | NPFG | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | | | | |
| | 4/1/20 | 5.000% | $1,834,000.00 | NPFG | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | | |
| | 4/1/21 | 6.000% | $1,834,000.00 | NPFG | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 |
| | | | $9,798,800.00 | | $253,026.50 | $232,113.99 | $232,113.99 | $210,074.88 | $210,074.88 | $186,838.75 | $186,838.75 | $137,550.00 | $137,550.00 | $91,700.00 | $91,700.00 | $45,850.00 | $45,850.00 | $45,850.00 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 4.000% | $39,300.00 | Syncora | $786.00 | $786.00 | | | | | | | | | | | | |
| | 4/1/16 | 5.350% | $334,050.00 | Syncora | $8,768.81 | $8,768.81 | $8,768.81 | | | | | | | | | | | |
| | 4/1/17 | 5.250% | $392,345.00 | Syncora | $10,299.06 | $10,299.06 | $10,299.06 | $10,299.06 | $10,299.06 | | | | | | | | | |
| | 4/1/18 | 5.250% | $412,610.00 | Syncora | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | | | | | | | | |
| | 4/1/19 | 5.250% | $434,265.00 | Syncora | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | | | | | | | |
| | 4/1/20 | 5.250% | $457,100.00 | Syncora | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | | | | | | |
| | 4/1/20 | 5.250% | $66,500.00 | Syncora | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | | | | | |
| | 4/1/21 | 5.250% | $415,925.00 | Syncora | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | $10,918.03 | | | | | |
| | 4/1/22 | 5.250% | $505,660.00 | Syncora | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | |
| | 4/1/22 | 4.625% | $65,500.00 | Syncora | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | |
| | 4/1/22 | 5.250% | $467,015.00 | Syncora | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | |
| | 4/1/23 | 4.625% | $106,500.00 | Syncora | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 |
| | 4/1/23 | 5.250% | $363,525.00 | Syncora | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 |
| | | | $4,149,825.00 | | $107,602.41 | $107,602.41 | $98,057.59 | $96,057.59 | $87,758.54 | $87,758.54 | $76,926.48 | $65,527.02 | $53,525.78 | $41,134.00 | | | | |
| **UTGO 2004-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.250% | $389,500.00 | Ambac | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | $15,474.38 | | | | |
| | 4/1/20 | 4.250% | $24,235.00 | Ambac | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | $514.99 | | |
| | 4/1/21 | 5.250% | $57,135.00 | Ambac | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | $20,974.79 | |
| | 4/1/21 | 5.000% | $866,010.00 | Ambac | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 |
| | 4/1/22 | 5.350% | $907,830.00 | Ambac | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 |
| | 4/1/22 | 4.500% | $49,125.00 | Ambac | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 |
| | 4/1/23 | 5.250% | $906,520.00 | Ambac | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 |
| | 4/1/24 | 4.600% | $102,835.00 | Ambac | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 |
| | 4/1/24 | 4.250% | $902,290.00 | Ambac | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 |
| | | | $5,144,370.00 | | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $133,339.36 | $117,844.98 | $117,844.98 | $96,405.19 | $96,405.19 |

Subject to Mandatory Redemption

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | **Interest** | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $1,136,425.00 | Ambac | $28,410.63 | $28,410.63 | | | | | | | | | | | | |
| | 4/1/16 | 5.250% | $1,192,755.00 | Ambac | $31,309.82 | $31,309.82 | $31,309.82 | $31,309.82 | | | | | | | | | | |
| | 4/1/17 | 4.000% | $39,955.00 | Ambac | $799.10 | $799.10 | $799.10 | $799.10 | $799.10 | $799.10 | | | | | | | | |
| | 4/1/18 | 5.250% | $1,215,640.00 | Ambac | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | | | | | | |
| | 4/1/18 | 5.250% | $262,500.00 | Ambac | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | | | | | | |
| | | | $3,846,815.00 | | $99,308.64 | $99,308.64 | $70,899.62 | $70,899.62 | $39,588.20 | $39,588.20 | $6,877.50 | $6,877.50 | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| | 4/1/19 * | 5.340% | $75,325.00 | Ambac | $1,973.52 | $1,973.52 | $1,441.52 | $1,441.52 | $875.21 | $875.21 | $291.74 | $291.74 | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $299,990.00 | Assured | $7,499.75 | $7,499.75 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | $315,055.00 | Assured | $7,876.38 | $7,876.38 | $7,876.38 | $7,876.38 | | | | | | | | | | |
| | 4/1/17 | 4.300% | $330,120.00 | Assured | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | | | | | | | | |
| | 4/1/18 | 5.000% | $345,185.00 | Assured | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | | | | | | |
| | 4/1/19 | 5.000% | $362,215.00 | Assured | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | | | | |
| | 4/1/20 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | |
| | 4/1/21 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
| | 4/1/22 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
| | 4/1/23 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
| | 4/1/24 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
| | 4/1/25 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
| | | | $5,582,565.00 | | $138,408.71 | $138,408.71 | $130,908.96 | $130,908.96 | $123,032.58 | $123,032.58 | $115,935.00 | $115,935.00 | $107,305.38 | $107,305.38 | $98,250.00 | $98,250.00 | $81,875.00 | $81,875.00 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $301,955.00 | Assured | $7,548.88 | $7,548.88 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | $317,675.00 | Assured | $7,941.88 | $7,941.88 | $7,941.88 | $7,941.88 | | | | | | | | | | |
| | 4/1/17 | 4.300% | $333,395.00 | Assured | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | | | | | | | | |
| | 4/1/18 | 5.000% | $344,530.00 | Assured | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | | | | | | |
| | 4/1/19 | 5.250% | $358,285.00 | Assured | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | | | | |
| | 4/1/20 | 5.250% | $377,935.00 | Assured | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | | |
| | | | $2,033,775.00 | | $50,597.77 | $50,597.77 | $43,048.89 | $43,048.89 | $35,107.02 | $35,107.02 | $27,939.03 | $27,939.03 | $19,325.78 | $19,325.78 | $9,920.79 | $9,920.79 | | |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $376,625.00 | Assured | $9,415.63 | $9,415.63 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | $394,965.00 | Assured | $9,874.13 | $9,874.13 | $9,874.13 | $9,874.13 | | | | | | | | | | |
| | 4/1/17 | 5.000% | $415,270.00 | Assured | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | | | | | | | | |
| | 4/1/18 | 4.000% | $435,575.00 | Assured | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | | | | | | |
| | 4/1/19 | 5.000% | $452,360.00 | Assured | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | | | | |
| | 4/1/20 | 5.000% | $475,530.00 | Assured | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | | |
| | 4/1/21 | 5.000% | $499,765.00 | Assured | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 |
| | 4/1/22 | 5.000% | $524,655.00 | Assured | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 |
| | 4/1/24 | 5.000% | $1,129,220.00 | Assured | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 |
| | 4/1/28 | 5.000% | $2,617,380.00 | Assured | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 |
| | | | $7,322,245.00 | | $180,878.25 | $180,878.25 | $171,462.63 | $171,462.63 | $161,588.50 | $161,588.50 | $151,206.75 | $151,206.75 | $142,495.25 | $142,495.25 | $131,163.75 | $131,163.75 | $119,275.50 | $119,275.50 |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $1,044,070.00 | Assured | $26,101.75 | $26,101.75 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | $450,640.00 | Assured | $11,266.00 | $11,266.00 | $11,266.00 | $11,266.00 | | | | | | | | | | |
| | 4/1/17 | 5.000% | $468,980.00 | Assured | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | | | | | | | | |
| | 4/1/18 | 5.000% | $496,490.00 | Assured | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | | | | | | |
| | | | $2,460,180.00 | | $61,504.50 | $61,504.50 | $35,402.75 | $35,402.75 | $24,136.75 | $24,136.75 | $12,412.25 | $12,412.25 | | | | | | |
| | | | **$43,349,210.00** | | $1,003,033.14 | $1,101,033.14 | $981,256.76 | $981,256.76 | $870,273.66 | $870,273.66 | $756,241.40 | $756,241.40 | $639,193.46 | $639,193.46 | $534,711.74 | $534,711.74 | $406,646.13 | $406,646.13 |

\* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service

*Subject to Mandatory Redemption

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.250% | $373,350.00 | Assured | | | | | | | | | | | | | | | $19,600.88 | $392,950.88 |
| | 4/1/16 | 5.000% | $392,345.00 | Assured | | | | | | | | | | | | | | | $39,234.50 | $431,579.50 |
| | 4/1/17 | 5.000% | $411,995.00 | Assured | | | | | | | | | | | | | | | $61,799.25 | $473,794.25 |
| | 4/1/18 | 5.000% | $432,955.00 | Assured | | | | | | | | | | | | | | | $86,591.00 | $519,546.00 |
| | 4/1/19 | 5.000% | $454,570.00 | Assured | | | | | | | | | | | | | | | $113,642.50 | $568,212.50 |
| | | | $2,065,215.00 | | | | | | | | | | | | | | | | $320,868.13 | $2,386,083.13 |
| **UTGO 2001-A(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.375% | $778,140.00 | NPFG | | | | | | | | | | | | | | | $41,825.03 | $819,965.03 |
| | 4/1/16 | 5.375% | $820,060.00 | NPFG | | | | | | | | | | | | | | | $88,156.45 | $908,216.45 |
| | 4/1/17 | 5.375% | $864,600.00 | NPFG | | | | | | | | | | | | | | | $139,416.75 | $1,004,016.75 |
| | 4/1/18 | 5.375% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $394,310.00 | $2,228,310.00 |
| | 4/1/19 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $458,500.00 | $2,292,500.00 |
| | 4/1/20 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $550,200.00 | $2,384,200.00 |
| | 4/1/21 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $641,950.00 | $2,475,950.00 |
| | | | $9,798,800.00 | | | | | | | | | | | | | | | | $2,314,360.23 | $12,113,108.23 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/21 | 5.125% | $424,440.00 | NPFG | $11,430.16 | $11,430.16 | | | | | | | | | | | | | $152,267.85 | $576,707.85 |
| | 4/1/22 | 5.125% | $446,055.00 | NPFG | | | | | | | | | | | | | | | $182,883.55 | $628,937.55 |
| | | | $870,495.00 | | $11,430.16 | $11,430.16 | | | | | | | | | | | | | $335,150.40 | $1,205,645.40 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 4.000% | $39,300.00 | Syncora | | | | | | | | | | | | | | | $1,572.00 | $40,872.00 |
| | 4/1/16 | 5.250% | $334,050.00 | Syncora | | | | | | | | | | | | | | | $17,537.63 | $351,587.63 |
| | 4/1/17 | 5.250% | $392,345.00 | Syncora | | | | | | | | | | | | | | | $41,196.23 | $433,541.23 |
| | 4/1/18 | 5.250% | $412,650.00 | Syncora | | | | | | | | | | | | | | | $64,992.38 | $477,642.38 |
| | 4/1/19 | 5.250% | $434,265.00 | Syncora | | | | | | | | | | | | | | | $91,195.65 | $525,460.65 |
| | 4/1/19 | 5.250% | $457,190.00 | Syncora | | | | | | | | | | | | | | | $120,007.38 | $577,202.38 |
| | 4/1/20 | 4.500% | $65,500.00 | Syncora | | | | | | | | | | | | | | | $37,085.00 | $81,185.00 |
| | 4/1/20 | 5.250% | $415,975.00 | Syncora | | | | | | | | | | | | | | | $131,016.38 | $546,941.38 |
| | 4/1/21 | 5.250% | $505,660.00 | Syncora | | $1,514.69 | $1,514.69 | | | | | | | | | | | | $185,830.05 | $691,490.05 |
| | 4/1/21 | 4.625% | $65,500.00 | Syncora | | $12,259.14 | $12,259.14 | | | | | | | | | | | | $24,235.00 | $89,735.00 |
| | 4/1/22 | 5.250% | $467,015.00 | Syncora | | $4,544.06 | $4,544.06 | $4,544.06 | | | | | | | | | | | $196,146.30 | $603,161.30 |
| | 4/1/22 | 4.625% | $506,500.00 | Syncora | | $3,543.53 | $3,543.53 | $3,543.53 | $3,543.53 | | | | | | | | | | $89,735.00 | $278,293.13 |
| | 4/1/23 | 5.250% | $563,525.00 | Syncora | | | | | | | | | | | | | | | $171,765.56 | $735,290.56 |
| | | | $4,149,425.00 | | | $27,860.43 | $27,860.43 | $14,086.59 | $14,086.59 | | | | | | | | | | $1,144,977.66 | $5,294,402.66 |
| **UTGO 2004-A(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.250% | $389,500.00 | Ambac | | | | | | | | | | | | | | | $154,743.75 | $744,243.75 |
| | 4/1/20 | 4.250% | $24,235.00 | Ambac | | | | | | | | | | | | | | | $6,179.93 | $30,414.93 |
| | 4/1/21 | 5.000% | $391,135.00 | Ambac | | | | | | | | | | | | | | | $253,097.53 | $1,048,232.53 |
| | 4/1/22 | 5.250% | $907,830.00 | Ambac | | $23,830.54 | $23,830.54 | | | | | | | | | | | | $302,610.00 | $1,107,210.00 |
| | 4/1/22 | 4.500% | $49,125.00 | Ambac | | $1,105.31 | $1,105.31 | $1,105.31 | | | | | | | | | | | $19,895.63 | $69,020.63 |
| | 4/1/23 | 5.250% | $896,520.00 | Ambac | | $23,796.15 | $23,796.15 | $23,796.15 | $1,105.31 | | | | | | | | | | $428,330.70 | $1,334,850.70 |
| | 4/1/23 | 4.500% | $102,835.00 | Ambac | | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | | | | | | | | | $43,204.10 | $158,239.10 |
| | 4/1/24 | 5.250% | $902,590.00 | Ambac | | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | | | | | | | | | $473,859.75 | $1,376,449.75 |
| | | | $5,144,370.00 | | | $74,790.19 | $74,790.19 | $50,959.66 | $26,858.19 | $26,858.19 | | | | | | | | | $2,065,309.98 | $7,209,679.98 |

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Interest | | | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $1,136,425.00 | Ambac | | | | | | | | | | | | | | | $56,821.25 | $1,193,246.25 |
| | 4/1/16 | 5.250% | $1,192,755.00 | Ambac | | | | | | | | | | | | | | | $125,239.28 | $1,317,994.28 |
| | 4/1/17 | 4.000% | $39,955.00 | Ambac | | | | | | | | | | | | | | | $4,794.60 | $44,749.60 |
| | 4/1/17 | 5.250% | $1,215,680.00 | Ambac | | | | | | | | | | | | | | | $191,469.60 | $1,407,149.60 |
| | 4/1/18 | 5.250% | $262,000.00 | Ambac | | | | | | | | | | | | | | | $55,020.00 | $317,020.00 |
| | | | **$3,846,815.00** | | | | | | | | | | | | | | | | **$433,344.73** | **$4,280,159.73** |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.240% | $75,325.00 * | Ambac | | | | | | | | | | | | | | | $9,163.97 | $84,488.97 |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $299,900.00 | Assured | | | | | | | | | | | | | | | $14,999.50 | $314,989.50 |
| | 4/1/16 | 5.000% | $315,055.00 | Assured | | | | | | | | | | | | | | | $31,505.50 | $346,560.50 |
| | 4/1/17 | 4.300% | $330,120.00 | Assured | | | | | | | | | | | | | | | $42,585.48 | $372,705.48 |
| | 4/1/18 | 5.000% | $345,185.00 | Assured | | | | | | | | | | | | | | | $69,037.00 | $414,222.00 |
| | 4/1/19 | 5.000% | $362,215.00 | Assured | | | | | | | | | | | | | | | $90,553.75 | $452,768.75 |
| | 4/1/20 | 5.000% | $655,000.00 | Assured | | | | | | | | | | | | | | | $196,500.00 | $851,500.00 |
| | 4/1/21 | 5.000% | $655,000.00 | Assured | | | | | | | | | | | | | | | $229,250.00 | $884,250.00 |
| | 4/1/22 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | | | | | | | | | | | | | $262,000.00 | $917,000.00 |
| | 4/1/23 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | | | | | $294,750.00 | $949,750.00 |
| | 4/1/24 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | | | $327,500.00 | $982,500.00 |
| | 4/1/25 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | $360,250.00 | $1,015,250.00 |
| | | | **$5,582,565.00** | | **$65,500.00** | **$65,500.00** | **$49,125.00** | **$49,125.00** | **$32,750.00** | **$32,750.00** | **$16,375.00** | **$16,375.00** | | | | | | | **$1,918,931.23** | **$7,501,496.23** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $301,955.00 | Assured | | | | | | | | | | | | | | | $15,997.75 | $317,052.75 |
| | 4/1/16 | 5.000% | $317,675.00 | Assured | | | | | | | | | | | | | | | $31,767.50 | $349,442.50 |
| | 4/1/17 | 4.300% | $333,395.00 | Assured | | | | | | | | | | | | | | | $43,007.96 | $376,402.96 |
| | 4/1/18 | 5.000% | $344,520.00 | Assured | | | | | | | | | | | | | | | $68,906.00 | $413,436.00 |
| | 4/1/19 | 5.250% | $358,385.00 | Assured | | | | | | | | | | | | | | | $94,949.81 | $453,334.81 |
| | 4/1/20 | 5.250% | $377,935.00 | Assured | | | | | | | | | | | | | | | $112,049.53 | $489,946.53 |
| | | | **$2,033,775.00** | | | | | | | | | | | | | | | | **$371,878.54** | **$2,405,653.54** |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $376,625.00 | Assured | | | | | | | | | | | | | | | $18,831.25 | $395,456.25 |
| | 4/1/16 | 5.000% | $394,505.00 | Assured | | | | | | | | | | | | | | | $39,406.50 | $434,461.50 |
| | 4/1/17 | 5.000% | $415,270.00 | Assured | | | | | | | | | | | | | | | $62,270.50 | $477,560.50 |
| | 4/1/18 | 4.000% | $435,575.00 | Assured | | | | | | | | | | | | | | | $69,692.00 | $505,267.00 |
| | 4/1/19 | 5.000% | $453,260.00 | Assured | | | | | | | | | | | | | | | $113,315.00 | $566,575.00 |
| | 4/1/20 | 5.000% | $475,530.00 | Assured | | | | | | | | | | | | | | | $142,659.00 | $618,189.00 |
| | 4/1/21 | 5.000% | $499,765.00 | Assured | | | | | | | | | | | | | | | $174,917.75 | $674,682.75 |
| | 4/1/22 | 5.000% | $524,655.00 | Assured | $13,116.38 | $13,116.38 | | | | | | | | | | | | | $209,862.00 | $734,517.00 |
| | 4/1/23 | 5.000% | $1,129,220.00 | Assured | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | | | | | | | | | | | $337,087.25 | $1,466,207.25 |
| | 4/1/28 | 5.000% | $2,617,380.00 | Assured | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $79,993.63 | $79,993.63 | $65,434.50 | $65,434.50 | $50,254.88 | $50,254.88 | $34,305.63 | $34,305.63 | $17,570.38 | $17,570.38 | | |
| | | | **$7,322,245.00** | | **$106,781.38** | **$106,781.38** | **$93,665.00** | **$93,665.00** | **$79,993.63** | **$79,993.63** | **$65,434.50** | **$65,434.50** | **$50,254.88** | **$50,254.88** | **$34,305.63** | **$34,305.63** | **$17,570.38** | **$17,570.38** | **$3,011,952.00** | **$10,334,197.00** |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $1,044,070.00 | Assured | | | | | | | | | | | | | | | $52,203.50 | $1,096,273.50 |
| | 4/1/16 | 5.000% | $450,640.00 | Assured | | | | | | | | | | | | | | | $45,064.00 | $495,704.00 |
| | 4/1/17 | 5.000% | $468,980.00 | Assured | | | | | | | | | | | | | | | $70,347.00 | $539,327.00 |
| | 4/1/18 | 5.000% | $496,470.00 | Assured | | | | | | | | | | | | | | | $99,298.00 | $595,768.00 |
| | | | **$2,460,180.00** | | | | | | | | | | | | | | | | **$266,912.50** | **$2,727,092.59** |
| **Total** | | | **$43,349,210.00** | | **$286,362.15** | **$286,362.15** | **$207,836.25** | **$207,836.25** | **$138,701.82** | **$138,701.82** | **$81,809.50** | **$81,809.50** | **$50,254.88** | **$50,254.88** | **$34,305.63** | **$34,305.63** | **$17,570.38** | **$17,570.38** | **$12,192,797.36** | **$55,542,007.36** |

\* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service

## Bond Series Subject to Mandatory Redemption

### Issuance: 2004-B(2) — CUSIP 23909Z2X1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | | | $75,525.00 | 5.240% | $1,973.52 |
| 4/1/15 | Ambac | 6/30/15 | - | $75,525.00 | 5.240% | $1,973.52 |
| 10/1/15 | Ambac | | | $55,020.00 | 5.240% | $1,441.52 |
| 4/1/16 | Ambac | 6/30/16 | $20,505.00 | $55,020.00 | 5.240% | $1,441.52 |
| 10/1/16 | Ambac | | | $33,405.00 | 5.240% | $875.21 |
| 4/1/17 | Ambac | 6/30/17 | $21,615.00 | $33,405.00 | 5.240% | $875.21 |
| 10/1/17 | Ambac | | | $11,135.00 | 5.240% | $291.74 |
| 4/1/18 | Ambac | 6/30/18 | $22,270.00 | $11,135.00 | 5.240% | $291.74 |
| | | | $11,135.00 | - | | |
| **Total** | | | **$75,525.00** | | | **$9,163.97** |

### Issuance: 2008-A — CUSIP 23909NN55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/15 | Assured | 6/30/15 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/15 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/16 | Assured | 6/30/16 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/16 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/17 | Assured | 6/30/17 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/17 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/18 | Assured | 6/30/18 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/18 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/19 | Assured | 6/30/19 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/19 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/20 | Assured | 6/30/20 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/20 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/21 | Assured | 6/30/21 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/21 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/22 | Assured | 6/30/22 | - | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/22 | Assured | | | $1,129,220.00 | 5.000% | $28,230.50 |
| 4/1/2023 | Assured | 6/30/2023 | $550,855.00 | $1,129,220.00 | 5.000% | $28,230.50 |
| 10/1/2023 | Assured | | | $578,365.00 | 5.000% | $14,459.13 |
| 4/1/2024 | Assured | 6/30/2024 | $578,365.00 | $578,365.00 | 5.000% | $14,459.13 |
| **Total** | | | **$1,129,220.00** | | | **$537,067.25** |

### Issuance: 2008-A — CUSIP 23909NGS

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/15 | Assured | 6/30/15 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/15 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/16 | Assured | 6/30/16 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/16 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/17 | Assured | 6/30/17 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/17 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/18 | Assured | 6/30/18 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/18 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/19 | Assured | 6/30/19 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/19 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/20 | Assured | 6/30/20 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/20 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/21 | Assured | 6/30/21 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/21 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/22 | Assured | 6/30/22 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2022 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/2023 | Assured | 6/30/2023 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2023 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/2024 | Assured | 6/30/2024 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2024 | Assured | | | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/2025 | Assured | 6/30/2025 | $607,185.00 | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2025 | Assured | | | $2,010,195.00 | 5.000% | $50,254.88 |
| 4/1/2026 | Assured | 6/30/2026 | $637,970.00 | $2,010,195.00 | 5.000% | $50,254.88 |
| 10/1/2026 | Assured | | | $1,372,225.00 | 5.000% | $34,305.63 |
| 4/1/2027 | Assured | 6/30/2027 | $669,410.00 | $1,372,225.00 | 5.000% | $34,305.63 |
| 10/1/2027 | Assured | | | $702,815.00 | 5.000% | $17,570.38 |
| 4/1/2028 | Assured | 6/30/2028 | $702,815.00 | $702,815.00 | 5.000% | $17,570.38 |
| **Total** | | | **$2,617,380.00** | | | **$1,643,820.75** |

**EXHIBIT D**
**DEBT SERVICE REQUIREMENTS AND SET ASIDE LEDGER**

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds
## Property Tax Set Asides

| Month | Year | Interest Set-Aside | Principal Set-Aside | Total Set-Aside | Interest Payments | Principal Payments | Balance Requirements |
|---|---|---|---|---|---|---|---|
| September | 2014 | $7,303,799.99 | $15,602,895.00 | $22,906,694.99 | - | - | $22,906,694.99 |
| October | 2014 | - | - | - | $7,303,799.99 | - | $15,602,895.00 |
| November | 2014 | $2,434,600.00 | $5,200,965.00 | $7,635,565.00 | - | - | $23,238,460.00 |
| January | 2015 | $2,434,600.00 | $5,200,965.00 | $7,635,565.00 | - | - | $30,874,024.99 |
| March | 2015 | $2,434,600.00 | $5,200,965.00 | $7,635,565.00 | - | - | $38,509,589.99 |
| April | 2015 | - | - | - | $7,303,799.99 | $31,205,790.00 | |
| September | 2015 | $6,509,252.86 | $14,253,772.50 | $20,763,025.36 | - | - | $20,763,025.36 |
| October | 2015 | - | - | - | $6,509,252.86 | - | $14,253,772.50 |
| November | 2015 | $2,169,750.95 | $4,751,257.50 | $6,921,008.45 | - | - | $21,174,780.95 |
| January | 2016 | $2,169,750.95 | $4,751,257.50 | $6,921,008.45 | - | - | $28,095,789.41 |
| March | 2016 | $2,169,750.95 | $4,751,257.50 | $6,921,008.45 | - | - | $35,016,797.86 |
| April | 2016 | - | - | - | $6,509,252.86 | $28,507,545.00 | |
| September | 2016 | $5,773,048.66 | $14,975,042.50 | $20,748,091.16 | - | - | $20,748,091.16 |
| October | 2016 | - | - | - | $5,773,048.66 | - | $14,975,042.50 |
| November | 2016 | $1,924,349.55 | $4,991,680.83 | $6,916,030.39 | - | - | $21,891,072.89 |
| January | 2017 | $1,924,349.55 | $4,991,680.83 | $6,916,030.39 | - | - | $28,807,103.28 |
| March | 2017 | $1,924,349.55 | $4,991,680.83 | $6,916,030.39 | - | - | $35,723,133.66 |
| April | 2017 | - | - | - | $5,773,048.66 | $29,950,085.00 | |
| September | 2017 | $5,016,593.72 | $15,244,432.50 | $20,261,026.22 | - | - | $20,261,026.22 |
| October | 2017 | - | - | - | $5,016,593.72 | - | $15,244,432.50 |
| November | 2017 | $1,672,197.91 | $5,081,477.50 | $6,753,675.41 | - | - | $21,998,107.91 |
| January | 2018 | $1,672,197.91 | $5,081,477.50 | $6,753,675.41 | - | - | $28,751,783.32 |
| March | 2018 | $1,672,197.91 | $5,081,477.50 | $6,753,675.41 | - | - | $35,505,458.72 |
| April | 2018 | - | - | - | $5,016,593.72 | $30,488,865.00 | |
| September | 2018 | $4,240,145.92 | $14,955,490.00 | $19,195,635.92 | - | - | $19,195,635.92 |
| October | 2018 | - | - | - | $4,240,145.92 | - | $14,955,490.00 |
| November | 2018 | $1,413,381.97 | $4,985,163.33 | $6,398,545.31 | - | - | $21,354,035.31 |
| January | 2019 | $1,413,381.97 | $4,985,163.33 | $6,398,545.31 | - | - | $27,752,580.61 |
| March | 2019 | $1,413,381.97 | $4,985,163.33 | $6,398,545.31 | - | - | $34,151,125.92 |
| April | 2019 | - | - | - | $4,240,145.92 | $29,910,980.00 | |
| September | 2019 | $3,480,721.39 | $15,407,370.00 | $18,888,091.39 | - | - | $18,888,091.39 |
| October | 2019 | - | - | - | $3,480,721.39 | - | $15,407,370.00 |
| November | 2019 | $1,160,240.46 | $5,135,790.00 | $6,296,030.46 | - | - | $21,703,400.46 |
| January | 2020 | $1,160,240.46 | $5,135,790.00 | $6,296,030.46 | - | - | $27,999,430.92 |
| March | 2020 | $1,160,240.46 | $5,135,790.00 | $6,296,030.46 | - | - | $34,295,461.39 |
| April | 2020 | - | - | - | $3,480,721.39 | $30,814,740.00 | |
| September | 2020 | $2,698,849.50 | $15,865,767.50 | $18,564,617.00 | - | - | $18,564,617.00 |
| October | 2020 | - | - | - | $2,698,849.50 | - | $15,865,767.50 |
| November | 2020 | $899,616.50 | $5,288,589.17 | $6,188,205.67 | - | - | $22,053,973.17 |
| January | 2021 | $899,616.50 | $5,288,589.17 | $6,188,205.67 | - | - | $28,242,178.83 |
| March | 2021 | $899,616.50 | $5,288,589.17 | $6,188,205.67 | - | - | $34,430,384.50 |
| April | 2021 | - | - | - | $2,698,849.50 | $31,731,535.00 | |
| September | 2021 | $1,899,608.47 | $10,169,472.50 | $12,069,080.97 | - | - | $12,069,080.97 |
| October | 2021 | - | - | - | $1,899,608.47 | - | $10,169,472.50 |
| November | 2021 | $633,202.82 | $3,389,824.17 | $4,023,026.99 | - | - | $14,192,499.49 |
| January | 2022 | $633,202.82 | $3,389,824.17 | $4,023,026.99 | - | - | $18,215,526.48 |
| March | 2022 | $633,202.82 | $3,389,824.17 | $4,023,026.99 | - | - | $22,238,553.47 |
| April | 2022 | - | - | - | $1,899,608.47 | $20,338,945.00 | |
| September | 2022 | $1,378,700.00 | $9,026,737.50 | $10,405,437.50 | - | - | $10,405,437.50 |
| October | 2022 | - | - | - | $1,378,700.00 | - | $9,026,737.50 |
| November | 2022 | $459,566.67 | $3,008,912.50 | $3,468,479.17 | - | - | $12,495,216.67 |
| January | 2023 | $459,566.67 | $3,008,912.50 | $3,468,479.17 | - | - | $15,963,695.83 |
| March | 2023 | $459,566.67 | $3,008,912.50 | $3,468,479.17 | - | - | $19,432,175.00 |
| April | 2023 | - | - | - | $1,378,700.00 | $18,053,475.00 | |
| September | 2023 | $920,090.68 | $7,425,605.00 | $8,345,695.68 | - | - | $8,345,695.68 |
| October | 2023 | - | - | - | $920,090.68 | - | $7,425,605.00 |
| November | 2023 | $306,696.89 | $2,475,201.67 | $2,781,898.56 | - | - | $10,207,503.56 |

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds
## Property Tax Set Asides

| Month | Year | Interest Set-Aside | Principal Set-Aside | Total Set-Aside | Interest Payments | Principal Payments | Balance Requirements |
|---|---|---|---|---|---|---|---|
| January | 2024 | $306,696.89 | $2,475,201.67 | $2,781,898.56 | - | - | $12,989,402.12 |
| March | 2024 | $306,696.89 | $2,475,201.67 | $2,781,898.56 | - | - | $15,771,300.68 |
| April | 2024 | - | - | - | $920,090.68 | $14,851,210.00 | - |
| September | 2024 | $542,690.50 | $4,186,407.50 | $4,729,098.00 | - | - | $4,729,098.00 |
| October | 2024 | - | - | - | $542,690.50 | - | $4,186,407.50 |
| November | 2024 | $180,896.83 | $1,395,469.17 | $1,576,366.00 | - | - | $5,762,773.50 |
| January | 2025 | $180,896.83 | $1,395,469.17 | $1,576,366.00 | - | - | $7,339,139.50 |
| March | 2025 | $180,896.83 | $1,395,469.17 | $1,576,366.00 | - | - | $8,915,505.50 |
| April | 2025 | - | - | - | $542,690.50 | $8,372,815.00 | - |
| September | 2025 | $333,370.13 | $2,116,015.00 | $2,449,385.13 | - | - | $2,449,385.13 |
| October | 2025 | - | - | - | $333,370.13 | - | $2,116,015.00 |
| November | 2025 | $111,123.38 | $705,338.33 | $816,461.71 | - | - | $2,932,476.71 |
| January | 2026 | $111,123.38 | $705,338.33 | $816,461.71 | - | - | $3,748,938.42 |
| March | 2026 | $111,123.38 | $705,338.33 | $816,461.71 | - | - | $4,565,400.13 |
| April | 2026 | - | - | - | $333,370.13 | $4,232,030.00 | - |
| September | 2026 | $227,569.38 | $2,220,295.00 | $2,447,864.38 | - | - | $2,447,864.38 |
| October | 2026 | - | - | - | $227,569.38 | - | $2,220,295.00 |
| November | 2026 | $75,856.46 | $740,098.33 | $815,954.79 | - | - | $3,036,249.79 |
| January | 2027 | $75,856.46 | $740,098.33 | $815,954.79 | - | - | $3,852,204.58 |
| March | 2027 | $75,856.46 | $740,098.33 | $815,954.79 | - | - | $4,668,159.38 |
| April | 2027 | - | - | - | $227,569.38 | $4,440,590.00 | - |
| September | 2027 | $116,554.63 | $2,331,092.50 | $2,447,647.13 | - | - | $2,447,647.13 |
| October | 2027 | - | - | - | $116,554.63 | - | $2,331,092.50 |
| November | 2027 | $38,851.54 | $777,030.83 | $815,882.38 | - | - | $3,146,974.88 |
| January | 2028 | $38,851.54 | $777,030.83 | $815,882.38 | - | - | $3,962,857.25 |
| March | 2028 | $38,851.54 | $777,030.83 | $815,882.38 | - | - | $4,778,739.63 |
| April | 2028 | - | - | - | $116,554.63 | $4,662,185.00 | - |
| **Total** | | | | | **$80,881,992** | **$287,560,790** | |

**EXHIBIT E**
**FEE SCHEDULE**



**U.S. Bank Customer Confidential**

## Schedule of Fees for Services as
## ESCROW TRUSTEE
### For
### City of Detroit Debt Millage Deposit Escrow Agreement

| | | |
|---|---|---|
| CTS01010A | **Acceptance Fee** The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing.  This is a one-time, non-refundable fee, payable at closing. | $1,000.00 |
| CTS04460 | **Escrow Trustee** Annual fee for the standard escrow agent services associated with the administration of the account.  Administration fees are payable in advance. | $5,000.00 |
| | **Direct Out of Pocket Expenses** Reimbursement of expenses associated with the performance of our duties, including but not limited to publications, legal counsel after the initial close, travel expenses and filing fees. | At Cost |
| | **Extraordinary Services** Extraordinary Services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the services and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect. | |

Account approval is subject to review and qualification. Fees are subject to change at our discretion and upon written notice. Fees paid in advance will not be prorated.  The fees set forth above and any subsequent modifications thereof are part of your agreement. Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice.  In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly. Absent your written instructions to sweep or otherwise invest, all sums in your account will remain uninvested and no accrued interest or other compensation will be credited to the account.  Payment of fees constitutes acceptance of the terms and conditions set forth.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**Dated:  July 21, 2014**

**EXHIBIT F**
**PAYMENTS TO PLAN ASSIGNEES**

**Wire Instructions for the Plan Assignees:**

Police & Fire Retirement System of the City of Detroit, Income Stabilization Fund

General Retirement System of the City of Detroit, Income Stabilization Fund

General Retirement System of the City of Detroit, _____ Fund

**Schedule of Payments**

| Date | PFRS ISF | GRS ISF | GRS | Fund |
|------|----------|---------|-----|------|

A-6

## AGGREGATE PAYMENTS TO PLAN ASSIGNEES

| Date | Income Stabilization Funds | | GRS Pension | Total Payment |
| | PFRS | GRS | | |
|---|---|---|---|---|
| 10/1/14 | $99,248.43 | $297,220.18 | $704,564.52 | $1,101,033.14 |
| 4/1/15 | $523,291.50 | $1,567,105.81 | $3,714,845.83 | $5,805,243.14 |
| 10/1/15 | $88,451.65 | $264,886.95 | $627,918.16 | $981,256.76 |
| 4/1/16 | $475,829.33 | $1,424,970.44 | $3,377,911.98 | $5,278,711.76 |
| 10/1/16 | $78,447.66 | $234,927.93 | $556,899.87 | $870,275.46 |
| 4/1/17 | $485,427.45 | $1,453,714.01 | $3,446,049.00 | $5,385,190.46 |
| 10/1/17 | $68,168.50 | $204,144.82 | $483,928.09 | $756,241.40 |
| 4/1/18 | $482,469.55 | $1,444,855.96 | $3,425,050.88 | $5,352,376.40 |
| 10/1/18 | $57,617.66 | $172,548.12 | $409,027.68 | $639,193.46 |
| 4/1/19 | $464,066.06 | $1,389,742.87 | $3,294,404.53 | $5,148,213.46 |
| 10/1/19 | $47,298.14 | $141,644.17 | $335,769.44 | $524,711.74 |
| 4/1/20 | $466,027.38 | $1,395,616.44 | $3,308,327.92 | $5,169,971.74 |
| 10/1/20 | $36,673.59 | $109,826.74 | $260,345.79 | $406,846.13 |
| 4/1/21 | $467,860.80 | $1,401,106.99 | $3,321,343.34 | $5,190,311.13 |
| 10/1/21 | $25,813.02 | $77,302.50 | $183,246.63 | $286,362.15 |
| 4/1/22 | $302,190.86 | $904,973.71 | $2,145,252.59 | $3,352,417.15 |
| 10/1/22 | $18,734.61 | $56,104.69 | $132,996.95 | $207,836.25 |
| 4/1/23 | $264,056.09 | $790,771.19 | $1,874,533.96 | $2,929,361.25 |
| 10/1/23 | $12,502.75 | $37,442.09 | $88,756.98 | $138,701.82 |
| 4/1/24 | $214,309.93 | $641,795.90 | $1,521,385.99 | $2,377,491.82 |
| 10/1/24 | $7,374.41 | $22,084.20 | $52,350.90 | $81,809.50 |
| 4/1/25 | $121,149.26 | $362,806.78 | $860,038.46 | $1,343,994.50 |
| 10/1/25 | $4,530.03 | $13,566.13 | $32,158.71 | $50,254.88 |
| 4/1/26 | $62,037.41 | $185,783.98 | $440,403.48 | $688,224.88 |
| 10/1/26 | $3,092.35 | $9,260.69 | $21,952.59 | $34,305.63 |
| 4/1/27 | $63,433.76 | $189,965.66 | $450,316.20 | $703,715.63 |
| 10/1/27 | $1,583.81 | $4,743.06 | $11,243.50 | $17,570.38 |
| 4/1/28 | $64,936.39 | $194,465.60 | $460,983.38 | $720,385.38 |
| | $5,006,622.37 | $14,993,377.63 | $35,542,007.36 | $55,542,007.36 |

# UTGO Series STUB Bonds - Debt Service (PFRS ISF Allocation)

Interest columns span the dates 10/1/14 through 4/1/21.

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | |
| 5M3 | 4/1/15 | 5.250% | $33,654.21 | Assured | 883.42 | 883.42 | | | | | | | | | | | | |
| 5N1 | 4/1/16 | 5.000% | $35,366.44 | Assured | 884.16 | 884.16 | 884.16 | 884.16 | | | | | | | | | | |
| 5W6 | 4/1/17 | 5.000% | $37,137.72 | Assured | 928.44 | 928.44 | 928.44 | 928.44 | 928.44 | 928.44 | | | | | | | | |
| 5P6 | 4/1/18 | 5.000% | $39,027.08 | Assured | 975.68 | 975.68 | 975.68 | 975.68 | 975.68 | 975.68 | 975.68 | 975.68 | | | | | | |
| 5R2 | 4/1/19 | 5.000% | $40,975.48 | Assured | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | 1,024.39 | | | | |
| | | | $186,160.93 | | 4,696.09 | 4,696.09 | 3,812.67 | 3,812.67 | 2,928.51 | 2,928.51 | 2,000.06 | 2,000.06 | 1,024.39 | 1,024.39 | | | | |
| **UTGO 2001-A(D)** | | | | | | | | | | | | | | | | | | |
| 3L6 | 4/1/15 | 5.375% | $70,142.46 | NPFG | 1,885.08 | 1,885.08 | | | | | | | | | | | | |
| 3K3 | 4/1/16 | 5.375% | $73,921.18 | NPFG | 1,986.63 | 1,986.63 | 1,986.63 | 1,986.63 | | | | | | | | | | |
| 3M3 | 4/1/17 | 5.375% | $77,936.07 | NPFG | 2,094.53 | 2,094.53 | 2,094.53 | 2,094.53 | 2,094.53 | 2,094.53 | | | | | | | | |
| 3N7 | 4/1/18 | 5.375% | $165,318.93 | NPFG | 4,442.95 | 4,442.95 | 4,442.95 | 4,442.95 | 4,442.95 | 4,442.95 | 4,442.95 | 4,442.95 | | | | | | |
| 3N7 | 4/1/19 | 5.000% | $165,318.93 | NPFG | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | | | | |
| 3P2 | 4/1/20 | 5.000% | $165,318.93 | NPFG | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | | |
| 3Q0 | 4/1/21 | 5.000% | $165,318.93 | NPFG | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 | 4,132.97 |
| | | | $883,275.45 | | 22,808.11 | 22,808.11 | 20,923.03 | 20,923.03 | 18,936.40 | 18,936.40 | 16,841.87 | 16,641.87 | 12,398.92 | 12,398.92 | 8,265.95 | 8,265.95 | 4,132.97 | 4,132.97 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| 7WV6 | 4/1/21 | 5.125% | $38,259.52 | NPFG | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 | 980.40 |
| 7WW4 | 4/1/22 | 5.125% | $40,207.93 | NPFG | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 | 1,030.33 |
| | | | $78,467.45 | | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 | 2,010.73 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | |
| 3Q8 | 4/1/15 | 4.000% | $3,543.55 | Syncora | 70.85 | 70.85 | | | | | | | | | | | | |
| 3S2 | 4/1/16 | 5.250% | $30,111.66 | Syncora | 790.43 | 790.43 | 790.43 | 790.43 | | | | | | | | | | |
| 3S3A | 4/1/17 | 5.250% | $35,366.44 | Syncora | 928.37 | 928.37 | 928.37 | 928.37 | 928.37 | 928.37 | | | | | | | | |
| 3T2 | 4/1/17 | 5.250% | $37,196.70 | Syncora | 976.41 | 976.41 | 976.41 | 976.41 | 976.41 | 976.41 | | | | | | | | |
| 3X3 | 4/1/18 | 5.250% | $39,145.16 | Syncora | 1,027.56 | 1,027.56 | 1,027.56 | 1,027.56 | 1,027.56 | 1,027.56 | 1,027.56 | 1,027.56 | | | | | | |
| 3X1 | 4/1/19 | 5.250% | $41,211.65 | Syncora | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | 1,081.81 | | | | |
| 3XN7 | 4/1/20 | 4.500% | $5,904.25 | Syncora | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | 132.85 | | |
| 3WX5 | 4/1/20 | 5.250% | $37,491.97 | Syncora | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | 984.16 | | |
| 3W3 | 4/1/21 | 5.250% | $45,580.79 | Syncora | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 | 1,196.50 |
| 3X3A | 4/1/21 | 4.625% | $5,904.25 | Syncora | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 | 136.54 |
| 3Z8 | 4/1/22 | 4.625% | $42,007.29 | Syncora | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 | 1,105.05 |
| 3ZA3 | 4/1/22 | 4.625% | $17,712.74 | Syncora | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 | 409.61 |
| 3Y0 | 4/1/23 | 5.250% | $32,708.57 | Syncora | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 | 860.18 |
| | | | $374,034.09 | | 9,700.31 | 9,700.31 | 8,839.03 | 8,839.03 | 7,910.66 | 7,910.66 | 6,934.24 | 6,934.24 | 5,906.68 | 5,906.68 | 4,824.88 | 4,824.88 | 3,707.87 | 3,707.87 |
| **UTGO 2004-A(D)** | | | | | | | | | | | | | | | | | | |
| 3X2 | 4/1/19 | 5.350% | $53,138.23 | Ambac | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | 1,394.88 | | | | |
| Y0 | 4/1/20 | 4.250% | $2,184.57 | Ambac | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | 46.42 | | |
| Y27 | 4/1/20 | 5.250% | $71,854.69 | Ambac | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | 1,886.19 | | |
| A1 | 4/1/21 | 5.000% | $77,936.07 | Ambac | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 | 1,948.40 |
| A3 | 4/1/21 | 5.250% | $81,303.87 | Ambac | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 | 2,148.11 |
| C7 | 4/1/21 | 4.500% | $4,428.19 | Ambac | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 | 99.63 |
| Z5 | 4/1/23 | 5.250% | $81,714.79 | Ambac | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 | 2,145.01 |
| E2 | 4/1/24 | 4.600% | $79,309.67 | Ambac | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 | 213.20 |
| 2F0 | 4/1/25 | 5.750% | $81,360.53 | Ambac | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 | 2,135.71 |
| | | | $463,739.61 | | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 12,017.56 | 10,622.69 | 10,622.69 | 8,690.08 | 8,690.08 |

Subject to Mandatory Redemption

| CUSIP | Maturity Date | Rate | Insurer | Principal | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Interest | | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Ambac | $102,438.70 | $2,560.97 | $2,560.97 | | | | | | | | | | | | |
| | 4/1/16 | 5.250% | Ambac | $107,516.35 | $2,822.30 | $2,822.30 | $2,822.30 | $2,822.30 | | | | | | | | | | |
| | 4/1/17 | 4.000% | Ambac | $3,601.59 | $72.03 | $72.03 | $72.03 | $72.03 | $72.03 | $72.03 | | | | | | | | |
| | 4/1/18 | 5.250% | Ambac | $109,583.94 | $2,876.55 | $2,876.55 | $2,876.55 | $2,876.55 | $2,876.55 | $2,876.55 | | | | | | | | |
| | 4/1/18 | 5.250% | Ambac | $23,616.09 | $619.95 | $619.95 | $619.95 | $619.95 | $619.95 | $619.95 | $619.95 | $619.95 | | | | | | |
| | | | | $346,756.46 | $8,951.80 | $8,951.80 | $6,390.83 | $6,390.83 | $3,568.53 | $3,568.53 | $619.95 | $619.95 | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.240% | Ambac * | $6,789.88 | $177.89 | $177.89 | $129.94 | $129.94 | $78.89 | $78.89 | $26.30 | $26.30 | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $27,041.45 | $676.04 | $676.04 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | Assured | $28,399.43 | $709.99 | $709.99 | $709.99 | $709.99 | | | | | | | | | | |
| | 4/1/17 | 4.300% | Assured | $22,757.41 | $489.78 | $489.78 | $489.78 | $489.78 | $489.78 | $639.78 | | | | | | | | |
| | 4/1/18 | 5.000% | Assured | $31,115.39 | $777.88 | $777.88 | $777.88 | $777.88 | $777.88 | $777.88 | $777.88 | $777.88 | | | | | | |
| | 4/1/19 | 5.000% | Assured | $32,650.49 | $816.26 | $816.26 | $816.26 | $816.26 | $816.26 | $816.26 | $816.26 | $816.26 | $816.26 | | | | | |
| | 4/1/20 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | | | | |
| | 4/1/21 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | | |
| | 4/1/22 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 |
| | 4/1/23 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 |
| | 4/1/24 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 |
| | 4/1/25 | 5.000% | Assured | $59,042.48 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 |
| | | | | $503,270.03 | $12,476.32 | $12,476.32 | $11,800.29 | $11,800.29 | $11,090.30 | $11,090.30 | $10,450.52 | $10,450.52 | $9,672.63 | $9,672.63 | $8,856.37 | $8,856.37 | $7,380.31 | $7,380.31 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $27,218.58 | $680.46 | $680.46 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | Assured | $28,635.60 | $715.89 | $715.89 | $715.89 | $715.89 | | | | | | | | | | |
| | 4/1/17 | 4.300% | Assured | $30,052.62 | $646.13 | $646.13 | $646.13 | $646.13 | $646.13 | $646.13 | | | | | | | | |
| | 4/1/18 | 5.000% | Assured | $31,056.34 | $776.41 | $776.41 | $776.41 | $776.41 | $776.41 | $776.41 | $776.41 | $776.41 | | | | | | |
| | 4/1/19 | 5.250% | Assured | $32,296.23 | $847.78 | $847.78 | $847.78 | $847.78 | $847.78 | $847.78 | $847.78 | $847.78 | $847.78 | | | | | |
| | 4/1/20 | 5.250% | Assured | $34,067.51 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | $894.27 | | |
| | | | | $183,326.89 | $4,560.94 | $4,560.94 | $3,880.48 | $3,880.48 | $3,164.59 | $3,164.59 | $2,518.46 | $2,518.46 | $1,742.05 | $1,742.05 | $894.27 | $894.27 | | |
| **UTGO 2008-A** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $33,949.42 | $848.74 | $848.74 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | Assured | $35,602.61 | $890.07 | $890.07 | $890.07 | $890.07 | | | | | | | | | | |
| | 4/1/17 | 5.000% | Assured | $37,432.93 | $935.82 | $935.82 | $935.82 | $935.82 | $935.82 | $955.82 | | | | | | | | |
| | 4/1/18 | 5.000% | Assured | $39,263.25 | $785.26 | $785.26 | $785.26 | $785.26 | $785.26 | $785.26 | $785.26 | $785.26 | | | | | | |
| | 4/1/19 | 5.000% | Assured | $40,857.39 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | $1,021.43 | | | | | |
| | 4/1/20 | 5.000% | Assured | $42,364.84 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | $1,071.62 | | |
| | 4/1/21 | 5.000% | Assured | $45,049.41 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 | $1,126.24 |
| | 4/1/22 | 5.000% | Assured | $47,293.02 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 | $1,183.33 |
| | 4/1/23 | 5.000% | Assured | $101,789.23 * | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 |
| | 4/1/24 | 5.000% | Assured | $235,933.74 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 |
| | | | | $660,035.84 | $16,304.58 | $16,304.58 | $15,455.84 | $15,455.84 | $14,565.78 | $14,565.78 | $13,629.96 | $13,629.96 | $12,844.69 | $12,844.69 | $11,823.26 | $11,823.26 | $10,751.63 | $10,751.63 |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $54,113.71 | $2,352.84 | $2,352.84 | | | | | | | | | | | | |
| | 4/1/16 | 5.000% | Assured | $40,621.22 | $1,015.53 | $1,015.53 | $1,015.53 | $1,015.53 | | | | | | | | | | |
| | 4/1/17 | 5.000% | Assured | $42,274.41 | $1,056.86 | $1,056.86 | $1,056.86 | $1,056.86 | $1,056.86 | $1,056.86 | | | | | | | | |
| | 4/1/18 | 5.000% | Assured | $44,754.20 | $1,118.85 | $1,118.85 | $1,118.85 | $1,118.85 | $1,118.85 | $1,118.85 | $1,118.85 | $1,118.85 | | | | | | |
| | | | | $221,763.54 | $5,544.09 | $5,544.09 | $3,191.25 | $3,191.25 | $2,175.72 | $2,175.72 | $1,118.85 | $1,118.85 | | | | | | |
| | | | | $3,907,549.17 | $99,248.43 | $99,248.43 | $88,451.65 | $88,451.65 | $78,447.66 | $78,447.66 | $68,168.50 | $68,168.50 | $57,617.66 | $57,617.66 | $47,298.14 | $47,298.14 | $36,673.59 | $36,673.59 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (PFRS ISF Allocation)

| CUSIP | Maturity Date | Rate | Insurer | Principal | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.250% | Assured | $33,654.21 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,766.85 | $35,421.06 |
| | 4/1/16 | 5.000% | Assured | $35,366.44 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $3,533.64 | $38,900.09 |
| | 4/1/17 | 5.000% | Assured | $37,137.72 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $5,570.66 | $42,708.38 |
| | 4/1/18 | 5.000% | Assured | $39,027.08 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $7,805.42 | $46,832.49 |
| | 4/1/19 | 5.000% | Assured | $40,975.48 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $10,243.87 | $51,219.35 |
| | | | | **$186,160.93** | | | | | | | | | | | | | | | **$28,923.43** | **$215,084.36** |
| **UTGO 2001-A(I)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/16 | 5.375% | NPFG | $70,142.46 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $3,770.16 | $73,912.62 |
| | 4/1/16 | 5.375% | NPFG | $73,921.18 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $7,946.53 | $81,867.71 |
| | 4/1/17 | 5.375% | NPFG | $77,936.07 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $12,567.19 | $90,503.26 |
| | 4/1/18 | 5.375% | NPFG | $165,318.93 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $35,543.57 | $200,862.50 |
| | 4/1/19 | 5.000% | NPFG | $165,318.93 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $41,329.73 | $206,648.67 |
| | 4/1/19 | 5.000% | NPFG | $165,318.93 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $49,595.68 | $214,914.61 |
| | 4/1/21 | 5.000% | NPFG | $165,318.93 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $57,861.63 | $223,180.56 |
| | 4/1/21 | 5.000% | NPFG | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | | |
| | | | | **$883,275.45** | | | | | | | | | | | | | | | **$206,614.49** | **$1,091,889.93** |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/21 | 3.125% | NPFG | $38,259.52 | $1,030.33 | $1,030.33 | - | - | - | - | - | - | - | - | - | - | - | - | $13,725.60 | $51,985.13 |
| | 4/1/22 | 3.125% | NPFG | $40,207.93 | $1,030.33 | $1,030.33 | - | - | - | - | - | - | - | - | - | - | - | - | $16,485.25 | $56,693.18 |
| | | | | **$78,467.45** | $1,030.33 | $1,030.33 | | | | | | | | | | | | | **$30,210.85** | **$108,678.31** |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 4.000% | Syncora | $3,542.55 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $141.70 | $3,684.25 |
| | 4/1/15 | 5.250% | Syncora | $30,111.66 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,580.86 | $31,692.53 |
| | 4/1/16 | 5.250% | Syncora | $35,366.44 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $3,713.48 | $39,079.92 |
| | 4/1/17 | 5.250% | Syncora | $37,196.76 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $5,858.49 | $43,055.25 |
| | 4/1/18 | 5.250% | Syncora | $39,145.16 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $8,220.48 | $47,365.65 |
| | 4/1/19 | 5.250% | Syncora | $41,211.65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $10,818.06 | $52,029.71 |
| | 4/1/20 | 5.250% | Syncora | $5,504.25 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $1,594.15 | $7,498.39 |
| | 4/1/20 | 4.500% | Syncora | $37,493.97 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $11,809.97 | $49,303.94 |
| | 4/1/20 | 5.250% | Syncora | $45,586.79 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $16,750.94 | $62,331.73 |
| | 4/1/21 | 5.250% | Syncora | $5,904.25 | $136.54 | $136.54 | - | - | - | - | - | - | - | - | - | - | - | - | $2,104.57 | $8,008.82 |
| | 4/1/22 | 4.625% | Syncora | $42,097.29 | $1,105.05 | $1,105.05 | - | - | - | - | - | - | - | - | - | - | - | - | $17,680.86 | $59,778.15 |
| | 4/1/22 | 5.250% | Syncora | $17,712.74 | $409.61 | $409.61 | $409.61 | - | - | - | - | - | - | - | - | - | - | - | $7,372.93 | $25,085.67 |
| | 4/1/23 | 4.625% | Syncora | $32,768.57 | $860.18 | $860.18 | $860.18 | $860.18 | - | - | - | - | - | - | - | - | - | - | $15,483.15 | $48,251.73 |
| | | | | **$376,034.09** | $2,531.37 | $2,531.37 | $1,269.78 | $1,269.78 | | | | | | | | | | | **$103,209.64** | **$477,243.73** |
| **UTGO 2004-A(I)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.250% | Ambac | $53,138.23 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $13,948.79 | $67,087.01 |
| | 4/1/19 | 4.250% | Ambac | $2,184.57 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $557.07 | $2,741.64 |
| | 4/1/20 | 4.250% | Ambac | $71,854.60 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $22,634.23 | $94,488.92 |
| | 4/1/21 | 5.000% | Ambac | $77,936.07 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $27,277.62 | $105,213.69 |
| | 4/1/21 | 5.250% | Ambac | $81,832.87 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $34,369.81 | $116,202.68 |
| | 4/1/22 | 5.250% | Ambac | $44,528.19 | $99.63 | $99.63 | $99.63 | - | - | - | - | - | - | - | - | - | - | - | $1,793.42 | $6,321.60 |
| | 4/1/23 | 5.250% | Ambac | $81,714.79 | $2,148.11 | $2,145.01 | $2,145.01 | $2,145.01 | - | - | - | - | - | - | - | - | - | - | $38,410.24 | $120,125.02 |
| | 4/1/23 | 4.600% | Ambac | $9,269.67 | - | - | - | $213.20 | $213.20 | $213.20 | - | - | - | - | - | - | - | - | $4,264.15 | $13,533.72 |
| | 4/1/24 | 5.250% | Ambac | $81,360.53 | $2,135.71 | $2,135.71 | $2,135.71 | $2,135.71 | $2,135.71 | $2,135.71 | - | - | - | - | - | - | - | - | $42,714.28 | $124,074.81 |
| | | | | **$463,739.61** | $6,741.68 | $6,741.68 | $4,593.56 | $4,593.56 | $2,348.92 | $2,348.92 | | | | | | | | | **$186,169.49** | **$649,889.10** |

*Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (PFRS ISF Allocation)

The 14 dated columns (10/1/21 through 4/1/28) fall under the heading **Interest**.

| Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $102,438.70 | Ambac | | | | | | | | | | | | | | | $5,121.93 | $107,560.63 |
| 4/1/16 | 5.250% | $107,516.35 | Ambac | | | | | | | | | | | | | | | $11,289.22 | $118,805.57 |
| 4/1/17 | 4.000% | $3,601.59 | Ambac | | | | | | | | | | | | | | | $432.19 | $4,033.78 |
| 4/1/17 | 5.250% | $109,582.84 | Ambac | | | | | | | | | | | | | | | $17,259.30 | $126,842.13 |
| 4/1/18 | 5.250% | $23,616.09 | Ambac | | | | | | | | | | | | | | | $4,959.57 | $28,576.56 |
| | | $346,756.46 | | | | | | | | | | | | | | | | $39,062.21 | $385,818.67 |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | |
| 4/1/19 | 5.240% | $6,789.88 * | Ambac | | | | | | | | | | | | | | | $826.65 | $7,615.94 |
| | | $6,789.88 | | | | | | | | | | | | | | | | $826.65 | $7,615.94 |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $27,041.45 | Assured | | | | | | | | | | | | | | | $1,352.07 | $28,393.53 |
| 4/1/16 | 5.000% | $28,399.43 | Assured | | | | | | | | | | | | | | | $2,839.94 | $31,239.37 |
| 4/1/16 | 5.000% | $29,757.41 | Assured | | | | | | | | | | | | | | | $3,838.71 | $33,596.11 |
| 4/1/17 | 4.300% | $31,115.39 | Assured | | | | | | | | | | | | | | | $6,223.08 | $37,338.46 |
| 4/1/18 | 5.000% | $32,630.49 | Assured | | | | | | | | | | | | | | | $8,310.62 | $40,941.11 |
| 4/1/19 | 5.000% | $59,042.48 | Assured | | | | | | | | | | | | | | | $17,712.74 | $76,755.22 |
| 4/1/20 | 5.000% | $59,042.48 | Assured | | | | | | | | | | | | | | | $20,664.87 | $79,707.34 |
| 4/1/21 | 5.000% | $59,042.48 | Assured | | | | | | | | | | | | | | | $23,616.99 | $82,659.47 |
| 4/1/22 | 5.000% | $59,042.48 | Assured | $1,476.06 | $1,476.06 | | | | | | | | | | | | | $26,569.11 | $85,611.59 |
| 4/1/23 | 5.000% | $59,042.48 | Assured | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | | | | | | | | | | | $29,521.24 | $88,563.71 |
| 4/1/24 | 5.000% | $59,042.48 | Assured | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | | | | | | | | | $32,473.36 | $91,515.84 |
| 4/1/25 | 5.000% | $59,042.48 | Assured | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | $1,476.06 | | | | | | | $35,425.xx | — |
| | | $593,219.03 | | $5,904.25 | $5,904.25 | $4,428.19 | $4,428.19 | $2,952.12 | $2,952.12 | $1,476.06 | $1,476.06 | | | | | | | $172,574.74 | $670,193.76 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $27,218.58 | Assured | | | | | | | | | | | | | | | $1,360.93 | $28,579.51 |
| 4/1/16 | 5.000% | $28,635.60 | Assured | | | | | | | | | | | | | | | $2,863.56 | $31,499.16 |
| 4/1/17 | 4.300% | $30,053.62 | Assured | | | | | | | | | | | | | | | $3,876.79 | $33,929.41 |
| 4/1/18 | 5.000% | $31,056.34 | Assured | | | | | | | | | | | | | | | $6,211.27 | $37,267.61 |
| 4/1/19 | 5.250% | $32,296.23 | Assured | | | | | | | | | | | | | | | $8,477.76 | $40,774.00 |
| 4/1/20 | 5.250% | $34,067.51 | Assured | | | | | | | | | | | | | | | $10,731.27 | $44,798.77 |
| | | $183,326.89 | | | | | | | | | | | | | | | | $33,521.57 | $216,848.46 |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $33,949.42 | Assured | | | | | | | | | | | | | | | $1,697.47 | $35,646.90 |
| 4/1/16 | 5.000% | $35,602.61 | Assured | | | | | | | | | | | | | | | $3,560.26 | $39,162.87 |
| 4/1/17 | 4.300% | $37,432.93 | Assured | | | | | | | | | | | | | | | $5,614.94 | $43,047.87 |
| 4/1/18 | 4.000% | $39,263.25 | Assured | | | | | | | | | | | | | | | $6,282.12 | $45,545.37 |
| 4/1/19 | 5.000% | $40,857.39 | Assured | | | | | | | | | | | | | | | $10,214.35 | $51,071.74 |
| 4/1/20 | 5.000% | $42,864.84 | Assured | | | | | | | | | | | | | | | $12,859.45 | $55,724.29 |
| 4/1/21 | 5.000% | $45,049.41 | Assured | | | | | | | | | | | | | | | $15,567.29 | $60,616.70 |
| 4/1/22 | 5.000% | $47,293.02 | Assured | $1,182.33 | $1,182.33 | | | | | | | | | | | | | $18,917.21 | $66,210.23 |
| 4/1/23 | 5.000% | $101,780.23 | Assured | $2,544.73 | $2,544.73 | $2,544.73 | $2,544.73 | | | | | | | | | | | $48,411.88 | $150,201.11 |
| 4/1/24 | 5.000% | $235,933.74 * | Assured | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $5,898.34 | $1,303.36 | $1,303.36 | | | | | | | $148,175.55 | $384,109.29 |
| | | $659,035.84 | | $9,625.40 | $9,625.40 | $8,443.07 | $8,443.07 | $7,201.71 | $7,201.71 | $1,303.36 | $1,303.36 | | | | | | | $271,500.92 | $931,536.77 |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | | |
| 4/1/15 | 5.000% | $94,113.71 | Assured | | | | | | | | | | | | | | | $4,705.69 | $98,819.39 |
| 4/1/16 | 5.000% | $40,621.22 | Assured | | | | | | | | | | | | | | | $4,062.35 | $44,683.35 |
| 4/1/17 | 5.000% | $42,274.41 | Assured | | | | | | | | | | | | | | | $6,341.16 | $48,615.57 |
| 4/1/18 | 5.000% | $44,734.20 | Assured | | | | | | | | | | | | | | | $8,950.84 | $53,705.04 |
| | | $221,743.54 | | | | | | | | | | | | | | | | $24,059.81 | $245,823.55 |
| | | $23,907,549.17 | | $25,813.02 | $25,813.02 | $18,734.61 | $18,734.61 | $12,502.75 | $12,502.75 | $7,574.41 | $7,574.41 | $4,530.03 | $4,530.03 | $3,092.35 | $3,092.35 | $1,583.81 | $1,583.81 | $1,099,073.20 | $25,006,622.37 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (PFRS ISF Allocation)

## Bond Series Subject to Mandatory Redemption

### Issuance 2004-B(2)

CUSIP: 2SJ0J3ZX1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | | $6,789.88 | 5.240% | $177.89 |
| 4/1/15 | Ambac | 6/30/15 | $1,830.32 | $4,959.57 | 5.240% | $177.89 |
| 10/1/15 | Ambac | 6/30/16 | | $4,959.57 | 5.240% | $129.94 |
| 4/1/16 | Ambac | 6/30/16 | $1,948.40 | $3,011.17 | 5.240% | $129.94 |
| 10/1/16 | Ambac | 6/30/17 | | $3,011.17 | 5.240% | $78.89 |
| 4/1/17 | Ambac | 6/30/17 | $2,007.44 | $1,003.72 | 5.240% | $78.89 |
| 10/1/17 | Ambac | 6/30/18 | | $1,003.72 | 5.240% | $26.30 |
| 4/1/18 | Ambac | 6/30/18 | $1,003.72 | - | 5.240% | $26.30 |
| **Total** | | | **$6,789.88** | | | **$826.05** |

### Issuance 2008-A

CUSIP: 2SJ0J3N55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/15 | Assured | 6/30/15 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/15 | Assured | 6/30/16 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/16 | Assured | 6/30/16 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/16 | Assured | 6/30/17 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/17 | Assured | 6/30/17 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/17 | Assured | 6/30/18 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/18 | Assured | 6/30/18 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/18 | Assured | 6/30/19 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/19 | Assured | 6/30/19 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/19 | Assured | 6/30/20 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/20 | Assured | 6/30/20 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/20 | Assured | 6/30/21 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/21 | Assured | 6/30/21 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/21 | Assured | 6/30/22 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/22 | Assured | 6/30/22 | | $101,789.23 | 5.000% | $2,544.73 |
| 10/1/2022 | Assured | 6/30/2023 | | $101,789.23 | 5.000% | $2,544.73 |
| 4/1/2023 | Assured | 6/30/2023 | $49,654.72 | $52,134.51 | 5.000% | $2,544.73 |
| 10/1/2023 | Assured | 6/30/2024 | | $52,134.51 | 5.000% | $1,303.36 |
| 4/1/2024 | Assured | 6/30/2024 | $52,134.51 | - | 5.000% | $1,303.36 |
| **Total** | | | **$101,789.23** | | | **$48,411.88** |

### Issuance 2008-A

CUSIP: 2SJ0J3N63

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/15 | Assured | 6/30/15 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/15 | Assured | 6/30/16 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/16 | Assured | 6/30/16 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/16 | Assured | 6/30/17 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/17 | Assured | 6/30/17 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/17 | Assured | 6/30/18 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/18 | Assured | 6/30/18 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/18 | Assured | 6/30/19 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/19 | Assured | 6/30/19 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/19 | Assured | 6/30/20 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/20 | Assured | 6/30/20 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/20 | Assured | 6/30/21 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/21 | Assured | 6/30/21 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/21 | Assured | 6/30/22 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/22 | Assured | 6/30/22 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/2022 | Assured | 6/30/2023 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/2023 | Assured | 6/30/2023 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/2023 | Assured | 6/30/2024 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/2024 | Assured | 6/30/2024 | | $235,933.74 | 5.000% | $5,898.34 |
| 10/1/2024 | Assured | 6/30/2025 | | $235,933.74 | 5.000% | $5,898.34 |
| 4/1/2025 | Assured | 6/30/2025 | $54,732.38 | $181,201.36 | 5.000% | $5,898.34 |
| 10/1/2025 | Assured | 6/30/2026 | | $181,201.36 | 5.000% | $4,530.03 |
| 4/1/2026 | Assured | 6/30/2026 | $57,507.37 | $123,693.99 | 5.000% | $4,530.03 |
| 10/1/2026 | Assured | 6/30/2027 | | $123,693.99 | 5.000% | $3,092.35 |
| 4/1/2027 | Assured | 6/30/2027 | $60,341.41 | $63,352.58 | 5.000% | $3,092.35 |
| 10/1/2027 | Assured | 6/30/2028 | | $63,352.58 | 5.000% | $1,583.81 |
| 4/1/2028 | Assured | 6/30/2028 | $63,352.58 | - | 5.000% | $1,583.81 |
| **Total** | | | **$235,933.74** | | | **$148,175.95** |

# UTGO Series STUB Bonds - Debt Service (GRS ISF Allocation)

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | |
| 53383A5 | 4/1/15 | 5.250% | 100,784.57 | Assured | 2,645.60 | | | | | | | | | | | | | |
| 53383N1 | 4/1/16 | 5.000% | 105,912.21 | Assured | 2,647.81 | 2,647.81 | 2,647.81 | | | | | | | | | | | |
| 53383P6 | 4/1/17 | 5.000% | 111,216.66 | Assured | 2,780.42 | 2,780.42 | 2,780.42 | 2,780.42 | 2,780.42 | | | | | | | | | |
| 53383R2 | 4/1/18 | 5.000% | 116,874.74 | Assured | 2,921.87 | 2,921.87 | 2,921.87 | 2,921.87 | 2,921.87 | 2,921.87 | 2,921.87 | | | | | | | |
| 53383Z2 | 4/1/19 | 5.000% | 122,709.64 | Assured | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | 3,067.74 | | | | | |
| | | | 557,497.83 | | 14,063.43 | 11,417.83 | 11,417.83 | 8,770.03 | 8,770.03 | 5,989.61 | 5,989.61 | 3,067.74 | 3,067.74 | | | | | |
| **UTGO 2001-A(I)** | | | | | | | | | | | | | | | | | | |
| 53383K6 | 4/1/15 | 5.375% | 210,056.27 | NPFG | 5,645.26 | | | | | | | | | | | | | |
| 53383V3 | 4/1/16 | 5.375% | 221,372.43 | NPFG | 5,949.38 | 5,949.38 | 5,949.38 | | | | | | | | | | | |
| 53383U1 | 4/1/17 | 5.375% | 233,395.86 | NPFG | 6,272.51 | 6,272.51 | 6,272.51 | 6,272.51 | 6,272.51 | | | | | | | | | |
| 53383V9 | 4/1/18 | 5.375% | 495,082.12 | NPFG | 13,305.33 | 13,305.33 | 13,305.33 | 13,305.33 | 13,305.33 | 13,305.33 | 13,305.33 | | | | | | | |
| 53383W7 | 4/1/19 | 5.000% | 495,082.12 | NPFG | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | | | | | |
| 53383W5 | 4/1/20 | 5.000% | 495,082.12 | NPFG | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | | | |
| 53383WQ0 | 4/1/21 | 5.000% | 495,082.12 | NPFG | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | 12,377.05 | |
| | | | 2,645,153.02 | | 68,303.65 | 62,658.39 | 62,658.39 | 56,709.00 | 56,709.00 | 50,436.49 | 50,436.49 | 37,131.16 | 37,131.16 | 24,754.11 | 24,754.11 | 12,377.05 | 12,377.05 | |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| 53383WV4 | 4/1/21 | 5.125% | 114,570.15 | NPFG | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | 2,936.01 | |
| 53383WW6 | 4/1/22 | 5.125% | 120,411.04 | NPFG | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 | 3,085.53 |
| | | | 234,981.19 | | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 6,021.55 | 3,085.53 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | |
| 53393PN0 | 4/1/15 | 4.000% | 10,608.90 | Syncora | 212.18 | | | | | | | | | | | | | |
| 53393QR0 | 4/1/16 | 5.250% | 90,175.67 | Syncora | 2,367.11 | 2,367.11 | 2,367.11 | | | | | | | | | | | |
| 53393QS8 | 4/1/17 | 5.250% | 105,912.21 | Syncora | 2,780.20 | 2,780.20 | 2,780.20 | 2,780.20 | 2,780.20 | | | | | | | | | |
| 53393S4 | 4/1/18 | 5.250% | 111,393.48 | Syncora | 2,924.08 | 2,924.08 | 2,924.08 | 2,924.08 | 2,924.08 | 2,924.08 | 2,924.08 | | | | | | | |
| 53393T2 | 4/1/19 | 5.250% | 117,228.37 | Syncora | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | 3,077.24 | | | | | |
| 53393V7 | 4/1/20 | 5.250% | 123,416.90 | Syncora | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | 3,239.69 | | | |
| 53393W5 | 4/1/20 | 4.500% | 17,681.50 | Syncora | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | 397.83 | | | |
| 53393X3 | 4/1/21 | 5.250% | 112,277.55 | Syncora | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | 2,942.29 | |
| 53393X2 | 4/1/21 | 4.625% | 17,681.50 | Syncora | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | 408.88 | |
| 53393Z6 | 4/1/22 | 5.250% | 136,501.21 | Syncora | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 | 3,583.16 |
| 53393ZG8 | 4/1/22 | 5.250% | 126,007.12 | Syncora | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 | 3,309.31 |
| 53393ZJ2 | 4/1/23 | 4.625% | 53,044.51 | Syncora | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 | 1,226.65 |
| 53393YB0 | 4/1/23 | 5.250% | 98,132.33 | Syncora | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 | 2,575.97 |
| | | | 1,120,023.29 | | 29,049.61 | 26,470.32 | 26,470.32 | 23,609.12 | 23,609.12 | 20,766.04 | 20,766.04 | 17,688.80 | 17,688.80 | 14,449.10 | 14,449.10 | 11,103.98 | 11,103.98 | 11,103.98 |
| **UTGO 2004-A(I)** | | | | | | | | | | | | | | | | | | |
| 53093XY2 | 4/1/19 | 5.250% | 159,133.54 | Ambac | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | 4,177.26 | | | | | |
| 53093YY9 | 4/1/20 | 4.250% | 6,542.16 | Ambac | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | 139.02 | | | |
| 53093Y27 | 4/1/20 | 5.250% | 215,183.01 | Ambac | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | 5,648.58 | | | |
| 53093ZA1 | 4/1/21 | 5.000% | 233,395.86 | Ambac | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | 5,834.90 | |
| 53093ZC7 | 4/1/21 | 5.250% | 245,076.66 | Ambac | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | 6,432.57 | |
| 53093ZD5 | 4/1/22 | 4.500% | 13,261.13 | Ambac | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 | 298.38 |
| 53093ZE3 | 4/1/22 | 5.250% | 244,712.02 | Ambac | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 | 6,423.69 |
| 53093ZE3 | 4/1/23 | 4.600% | 27,759.96 | Ambac | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 | 638.48 |
| 2510932F0 | 4/1/23 | 5.250% | 243,625.13 | Ambac | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 | 6,395.84 |
| | | | 1,388,705.54 | | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 35,989.11 | 31,811.86 | 31,811.86 | 26,024.26 | 26,024.26 | 13,756.39 |

Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS ISF Allocation)

| CUSIP | Maturity Date | Rate | Insurer | Principal | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Interest | | | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
| 2692V278 | 4/1/15 | 5.000% | Ambac | $306,774.10 | $7,669.35 | $7,669.35 | | | | | | | | | | | | |
| 2692V286 | 4/1/16 | 5.250% | Ambac | $321,980.19 | $8,451.98 | $8,451.98 | $8,451.98 | $8,451.98 | | | | | | | | | | |
| 2692V284 | 4/1/17 | 4.000% | Ambac | $10,785.72 | $215.71 | $215.71 | $215.71 | $215.71 | $215.71 | $215.71 | | | | | | | | |
| 2692V292 | 4/1/18 | 5.250% | Ambac | $328,168.72 | $8,614.43 | $8,614.43 | $8,614.43 | $8,614.43 | $8,614.43 | $8,614.43 | | | | | | | | |
| 2692V2T0 | 4/1/18 | 5.250% | Ambac | $70,729.02 | $1,856.56 | $1,856.56 | $1,856.56 | $1,856.56 | $1,856.56 | $1,856.56 | $1,856.56 | $1,856.56 | | | | | | |
| | | | | $1,038,434.74 | $26,808.03 | $26,808.03 | $19,138.68 | $19,138.68 | $10,686.70 | $10,686.70 | $1,856.56 | $1,856.56 | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| 2692V2X1 * | 4/1/19 | 5.340% | Ambac | $20,333.73 | $532.74 | $532.74 | $389.13 | $389.13 | $236.26 | $236.26 | $78.75 | $78.75 | | | | | | |
| | | | | $20,333.73 | | | | | | | | | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| 2509G553 | 4/1/15 | 5.000% | Assured | $80,981.29 | $2,024.53 | $2,024.53 | | | | | | | | | | | | |
| 2509G561 | 4/1/16 | 5.000% | Assured | $85,048.04 | $2,126.20 | $2,126.20 | $2,126.20 | $2,126.20 | | | | | | | | | | |
| 2509G5J0 | 4/1/17 | 4.300% | Assured | $89,114.78 | $1,915.97 | $1,915.97 | $1,915.97 | $1,915.97 | $1,915.97 | $1,915.97 | | | | | | | | |
| 2509G587 | 4/1/18 | 5.000% | Assured | $93,181.53 | $2,329.54 | $2,329.54 | $2,329.54 | $2,329.54 | $2,329.54 | $2,329.54 | $2,329.54 | $2,329.54 | | | | | | |
| 2509G595 | 4/1/19 | 5.000% | Assured | $97,778.72 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | $2,444.47 | | | | |
| 2509G5K7 | 4/1/20 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | | |
| 2509G5L5 | 4/1/21 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 |
| 2509G5M3 | 4/1/22 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 |
| 2509G5N1 | 4/1/23 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 |
| 2509G560 | 4/1/24 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 |
| 2509G578 | 4/1/25 | 5.000% | Assured | $176,815.04 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 | $4,420.38 |
| | | | | $1,506,994.60 | $37,362.96 | $37,362.96 | $35,338.43 | $35,338.43 | $33,212.23 | $33,212.23 | $31,296.26 | $31,296.26 | $26,966.72 | $26,966.72 | $26,522.26 | $26,522.26 | $22,101.88 | $22,101.88 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 2509G5C8 | 4/1/15 | 5.000% | Assured | $81,511.73 | $2,037.79 | $2,037.79 | | | | | | | | | | | | |
| 2509G5D6 | 4/1/16 | 5.000% | Assured | $85,755.30 | $2,143.88 | $2,143.88 | $2,143.88 | $2,143.88 | | | | | | | | | | |
| 2509G5E4 | 4/1/17 | 4.300% | Assured | $89,998.86 | $1,934.98 | $1,934.98 | $1,934.98 | $1,934.98 | $1,934.98 | $1,934.98 | | | | | | | | |
| 2509G5F1 | 4/1/18 | 5.000% | Assured | $93,004.71 | $2,325.12 | $2,325.12 | $2,325.12 | $2,325.12 | $2,325.12 | $2,325.12 | $2,325.12 | $2,325.12 | | | | | | |
| 2509G5G8 | 4/1/19 | 5.250% | Assured | $96,717.83 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | $2,538.84 | | | | |
| 2509G5H6 | 4/1/20 | 5.250% | Assured | $102,022.28 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | $2,678.08 | | |
| | | | | $549,010.70 | $13,658.70 | $13,658.70 | $11,620.90 | $11,620.90 | $9,477.02 | $9,477.02 | $7,542.05 | $7,542.05 | $5,216.93 | $5,216.93 | $2,678.08 | $2,678.08 | | |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | |
| 2509G3S6 | 4/1/15 | 5.000% | Assured | $101,668.65 | $2,541.72 | $2,541.72 | | | | | | | | | | | | |
| 2509G3T4 | 4/1/16 | 5.000% | Assured | $106,619.47 | $2,665.49 | $2,665.49 | $2,665.49 | $2,665.49 | | | | | | | | | | |
| 2509G3U1 | 4/1/17 | 4.000% | Assured | $112,100.74 | $2,802.52 | $2,802.52 | $2,802.52 | $2,802.52 | $2,802.52 | $2,802.52 | | | | | | | | |
| 2509G3V9 | 4/1/18 | 4.000% | Assured | $117,582.00 | $2,351.64 | $2,351.64 | $2,351.64 | $2,351.64 | $2,351.64 | $2,351.64 | $2,351.64 | $2,351.64 | | | | | | |
| 2509G3W7 | 4/1/19 | 5.000% | Assured | $122,356.01 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | $3,058.90 | | | | |
| 2509G3X5 | 4/1/20 | 5.000% | Assured | $128,367.72 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | $3,209.19 | | |
| 2509G3Y3 | 4/1/21 | 5.000% | Assured | $134,909.88 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 | $3,372.75 |
| 2509G3Z0 | 4/1/22 | 5.000% | Assured | $141,628.85 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 | $3,540.72 |
| 2509G3N3 * | 4/1/24 | 5.000% | Assured | $304,820.13 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 | $7,620.73 |
| 2509G3N3 | 4/1/28 | 5.000% | Assured | $706,552.91 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 | $17,663.82 |
| | | | | $1,976,615.35 | $48,827.47 | $48,827.47 | $46,285.76 | $46,285.76 | $43,620.27 | $43,620.27 | $40,877.75 | $40,877.75 | $38,466.11 | $38,466.11 | $35,407.21 | $35,407.21 | $32,198.02 | $32,198.02 |
| **UTGO 2006-B(1)** | | | | | | | | | | | | | | | | | | |
| 2509G3P3 | 4/1/15 | 5.000% | Assured | $281,843.18 | $7,046.08 | $7,046.08 | | | | | | | | | | | | |
| 2509G3M1 | 4/1/16 | 5.000% | Assured | $121,648.75 | $3,041.22 | $3,041.22 | $3,041.22 | $3,041.22 | | | | | | | | | | |
| 2509G3R3 | 4/1/17 | 5.000% | Assured | $126,599.57 | $3,164.99 | $3,164.99 | $3,164.99 | $3,164.99 | $3,164.99 | $3,164.99 | | | | | | | | |
| 2509G3P7 | 4/1/18 | 5.000% | Assured | $134,025.80 | $3,350.65 | $3,350.65 | $3,350.65 | $3,350.65 | $3,350.65 | $3,350.65 | $3,350.65 | $3,350.65 | | | | | | |
| | | | | $664,117.30 | $16,602.93 | $16,602.93 | $9,556.85 | $9,556.85 | $6,515.63 | $6,515.63 | $3,350.65 | $3,350.65 | | | | | | |
| | | | | $11,701,973.09 | $297,220.18 | $297,220.18 | $264,886.95 | $264,886.95 | $234,927.93 | $234,927.93 | $204,144.82 | $204,144.82 | $172,548.12 | $172,548.12 | $141,644.17 | $141,644.17 | $109,826.74 | $109,826.74 |

\* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS ISF Allocation)

The columns labeled 10/1/21 through 4/1/28 fall under the span heading **Interest**. Most interior interest cells are shown as placeholder dots (·); readable values are given below.

| Maturity Date | Rate | Insurer | Principal | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|
| **UTGO1999-A** | | | | | |
| 4/1/15 | 5.250% | Assured | $100,784.57 | $5,291.19 | $106,075.76 |
| 4/1/16 | 5.000% | Assured | $105,912.21 | $10,591.22 | $116,503.43 |
| 4/1/17 | 5.000% | Assured | $111,243.66 | $16,682.50 | $127,899.16 |
| 4/1/18 | 5.000% | Assured | $116,874.74 | $23,374.95 | $140,249.69 |
| 4/1/19 | 5.000% | Assured | $122,720.64 | $30,677.41 | $153,387.05 |
| | | | $557,497.83 | $86,677.27 | $644,115.10 |
| **UTGO2001-A(II)** | | | | | |
| 4/1/15 | 5.375% | NPFG | $210,056.27 | $11,290.52 | $221,346.79 |
| 4/1/16 | 5.375% | NPFG | $221,372.43 | $23,797.54 | $245,169.97 |
| 4/1/17 | 5.375% | NPFG | $233,395.86 | $37,635.08 | $271,030.94 |
| 4/1/18 | 5.375% | NPFG | $495,082.12 | $106,442.66 | $601,524.77 |
| 4/1/19 | 5.000% | NPFG | $495,082.12 | $123,770.53 | $618,852.65 |
| 4/1/20 | 5.000% | NPFG | $495,082.12 | $148,524.64 | $643,606.75 |
| 4/1/21 | 5.000% | NPFG | $495,082.12 | $173,278.74 | $668,360.86 |
| | | | $2,645,153.02 | $624,739.70 | $3,269,892.73 |
| **UTGO2002** | | | | | |
| 4/1/21 | 5.125% | NPFG | $114,576.15 | $41,104.19 | $155,680.34 |
| 4/1/22 | 5.125% | NPFG | $120,411.04 | $49,368.53 | $169,779.57 |
| | | | $234,987.19 | $90,472.72 | $325,459.91 |
| **UTGO2003-A** | | | | | |
| 4/1/15 | 4.000% | Syncora | $10,608.90 | $424.36 | $11,033.26 |
| 4/1/16 | 5.250% | Syncora | $90,175.67 | $4,734.22 | $94,909.89 |
| 4/1/16 | 5.250% | Syncora | $105,912.21 | $11,120.78 | $117,032.99 |
| 4/1/17 | 5.250% | Syncora | $111,393.48 | $17,544.47 | $128,937.95 |
| 4/1/18 | 5.250% | Syncora | $117,228.37 | $24,617.96 | $141,846.33 |
| 4/1/19 | 5.250% | Syncora | $123,416.90 | $32,396.94 | $155,813.84 |
| 4/1/20 | 4.500% | Syncora | $17,681.50 | $4,774.01 | $22,455.51 |
| 4/1/20 | 5.250% | Syncora | $112,277.55 | $35,367.43 | $147,644.98 |
| 4/1/21 | 5.250% | Syncora | $136,501.21 | $50,164.20 | $186,665.41 |
| 4/1/22 | 4.625% | Syncora | $17,681.50 | $6,542.16 | $24,223.66 |
| 4/1/22 | 5.250% | Syncora | $126,060.12 | $53,249.03 | $179,018.16 |
| 4/1/23 | 4.625% | Syncora | $53,044.51 | $22,079.78 | $75,124.29 |
| 4/1/23 | 5.250% | Syncora | $98,132.35 | $46,367.53 | $144,499.88 |
| | | | $1,220,123.29 | $309,082.86 | $1,429,206.15 |
| **UTGO2004-A(II)** | | | | | |
| 4/1/15 | 5.250% | Ambac | $159,133.54 | $41,772.55 | $200,906.09 |
| 4/1/15 | 4.250% | Ambac | $6,342.16 | $1,968.25 | $8,310.41 |
| 4/1/20 | 5.250% | Ambac | $215,183.91 | $67,782.93 | $282,966.84 |
| 4/1/21 | 5.000% | Ambac | $233,595.86 | $81,688.55 | $315,084.40 |
| 4/1/22 | 5.250% | Ambac | $245,065.65 | $102,927.57 | $347,993.22 |
| 4/1/22 | 5.250% | Ambac | $13,261.13 | $5,370.76 | $18,631.89 |
| 4/1/23 | 4.500% | Ambac | $244,712.02 | $115,626.43 | $360,338.45 |
| 4/1/23 | 5.250% | Ambac | $27,759.96 | $12,760.58 | $40,520.54 |
| 4/1/24 | 5.250% | Ambac | $243,651.13 | $127,916.84 | $371,567.97 |
| | | | $1,388,705.34 | $557,523.46 | $1,946,228.80 |

Selected interest payment column values (readable):

- UTGO2002 total — 10/1/21: $3,085.53; 4/1/22: $3,085.53
- UTGO2003-A total — 10/1/21: $7,520.83; 4/1/22: $7,520.83; 10/1/22: $3,802.63; 4/1/23: $3,802.63
- UTGO2004-A(II) total — 4/1/22: $20,189.36; 10/1/22: $13,756.39; 4/1/23: $13,756.39; 10/1/23: $6,395.84; 4/1/24: $7,034.32

\* Subject to Mandatory Redemption

13-53846-swr Doc 8396-3 Filed 11/08/2014 Entered 11/08/2014 12:40:54 Page 132 of 165

| Maturity Date | Rate | Insurer | Principal | Interest (10/1/21 – 10/1/28) | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|
| **UTGO2004-B(1)** | | | | | | |
| 4/1/15 | 5.000% | Ambac | $296,774.10 | — | $15,338.70 | $322,112.80 |
| 4/1/16 | 5.250% | Ambac | $331,980.19 | — | $33,807.92 | $355,788.11 |
| 4/1/17 | 4.000% | Ambac | $10,785.72 | — | $1,294.29 | $12,080.00 |
| 4/1/18 | 5.250% | Ambac | $328,168.72 | — | $51,686.57 | $379,855.29 |
| 4/1/19 | 5.250% | Ambac | $70,726.02 | — | $14,852.46 | $85,578.48 |
| | | | $1,038,434.74 | | $116,979.95 | $1,155,414.69 |
| **UTGO2004-B(2)** | | | | | | |
| 4/1/19 | 5.240% | Ambac | $20,333.73 * | — | $2,473.78 | $22,807.51 |
| **UTGO2005-B** | | | | | | |
| 4/1/15 | 5.000% | Assured | $80,081.29 | — | $4,949.06 | $85,030.35 |
| 4/1/16 | 4.300% | Assured | $85,048.04 | — | $8,504.80 | $93,552.84 |
| 4/1/16 | 4.300% | Assured | $89,114.78 | — | $11,495.81 | $100,610.59 |
| 4/1/17 | 5.000% | Assured | $93,181.53 | — | $18,636.31 | $111,817.83 |
| 4/1/18 | 5.000% | Assured | $97,778.72 | — | $24,444.68 | $122,223.40 |
| 4/1/18 | 5.000% | Assured | $176,815.04 | — | $53,040.51 | $229,855.55 |
| 4/1/19 | 5.000% | Assured | $176,815.04 | — | $61,895.36 | $238,700.31 |
| 4/1/19 | 5.000% | Assured | $176,815.04 | — | $70,726.02 | $247,541.06 |
| 4/1/20 | 5.000% | Assured | $176,815.04 | — | $79,566.77 | $256,381.81 |
| 4/1/22 | 5.000% | Assured | $176,815.04 | $4,420.38 | $88,407.52 | $265,222.56 |
| 4/1/24 | 5.000% | Assured | $176,815.04 | $4,420.38 | $97,248.27 | $274,063.31 |
| | | | $1,506,994.60 | $17,681.50 | $318,009.02 | $2,025,003.62 |
| **UTGO2005-C** | | | | | | |
| 4/1/15 | 5.000% | Assured | $81,511.73 | — | $4,075.59 | $85,587.32 |
| 4/1/16 | 5.000% | Assured | $85,755.50 | — | $8,575.53 | $94,330.82 |
| 4/1/17 | 4.300% | Assured | $89,098.86 | — | $11,609.85 | $101,608.71 |
| 4/1/18 | 4.300% | Assured | $93,004.71 | — | $18,600.94 | $111,605.65 |
| 4/1/19 | 5.250% | Assured | $96,717.83 | — | $25,388.43 | $122,106.26 |
| 4/1/20 | 5.250% | Assured | $102,022.28 | — | $32,137.00 | $134,159.30 |
| | | | $549,090.70 | | $100,387.36 | $649,398.06 |
| **UTGO2006-A** | | | | | | |
| 4/1/15 | 5.000% | Assured | $101,668.65 | — | $5,083.43 | $106,752.08 |
| 4/1/16 | 5.000% | Assured | $106,619.47 | — | $10,661.95 | $117,281.42 |
| 4/1/17 | 4.000% | Assured | $112,100.74 | — | $16,815.11 | $128,915.85 |
| 4/1/18 | 4.000% | Assured | $117,582.00 | — | $18,813.12 | $136,395.12 |
| 4/1/19 | 5.000% | Assured | $122,356.01 | — | $30,589.00 | $152,945.01 |
| 4/1/20 | 5.000% | Assured | $128,367.72 | — | $38,510.32 | $166,878.04 |
| 4/1/21 | 5.000% | Assured | $134,909.88 | — | $47,218.46 | $182,128.33 |
| 4/1/22 | 5.000% | Assured | $141,628.85 | $3,540.72 | $56,651.54 | $198,280.39 |
| 4/1/23 | 5.000% | Assured | $304,829.13 | $7,620.73 | $144,929.90 | $449,808.63 |
| 4/1/28 | 5.000% | Assured | $706,552.01 * | $17,663.82 | $443,743.87 | $1,150,296.78 |
| | | | $1,076,635.35 | | $813,066.29 | $2,789,681.64 |
| **UTGO2006-B(1)** | | | | | | |
| 4/1/15 | 5.000% | Assured | $281,843.18 | — | $14,092.16 | $295,935.34 |
| 4/1/16 | 5.000% | Assured | $121,648.75 | — | $12,164.87 | $133,813.62 |
| 4/1/17 | 5.000% | Assured | $126,599.57 | — | $18,989.94 | $145,589.51 |
| 4/1/18 | 5.000% | Assured | $134,025.80 | — | $26,805.16 | $160,830.96 |
| | | | $664,117.30 | | $72,052.13 | $736,169.43 |
| **Total** | | | $11,701,973.09 | 10/1/21 $77,302.50; 4/1/22 $56,104.69; 10/1/22 $56,104.69; 4/1/23 $37,442.09; 10/1/23 $37,442.09; 4/1/24 $22,094.20; 10/1/24 $22,094.20; 4/1/25 $13,566.13; 10/1/25 $13,566.13; 4/1/26 $9,260.69; 10/1/26 $9,260.69; 4/1/27 $9,260.69; 4/1/28 $4,743.06; 10/1/28 $4,743.06 | $3,251,604.54 | $14,993,577.63 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS ISF Allocation)

## Bond Series Subject to Mandatory Redemption

### Issuance 2004-B(2)

CUSIP 25109J2X1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | - | $20,333.73 | 5.240% | $532.74 |
| 4/1/15 | Ambac | 6/30/15 | $5,481.27 | $14,852.46 | 5.240% | $532.74 |
| 10/1/15 | Ambac | 6/30/16 | - | $14,852.46 | 5.240% | $389.13 |
| 4/1/16 | Ambac | 6/30/16 | $5,834.90 | $9,017.57 | 5.240% | $389.13 |
| 10/1/16 | Ambac | 6/30/17 | - | $9,017.57 | 5.240% | $236.26 |
| 4/1/17 | Ambac | 6/30/17 | $6,011.71 | $3,005.86 | 5.240% | $236.26 |
| 10/1/17 | Ambac | 6/30/18 | - | $3,005.86 | 5.240% | $78.75 |
| 4/1/18 | Ambac | 6/30/18 | $3,005.86 | - | 5.240% | $78.75 |
| **Total** | | | **$20,333.73** | | | **$2,473.78** |

### Issuance 2008-A

CUSIP 25109JN55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/15 | Assured | 6/30/15 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/15 | Assured | 6/30/16 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/16 | Assured | 6/30/16 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/16 | Assured | 6/30/17 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/17 | Assured | 6/30/17 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/17 | Assured | 6/30/18 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/18 | Assured | 6/30/18 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/18 | Assured | 6/30/19 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/19 | Assured | 6/30/19 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/19 | Assured | 6/30/20 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/20 | Assured | 6/30/20 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/20 | Assured | 6/30/21 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/21 | Assured | 6/30/21 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/21 | Assured | 6/30/22 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/22 | Assured | 6/30/22 | - | $304,829.13 | 5.000% | $7,620.73 |
| 10/1/2022 | Assured | 6/30/2023 | - | $304,829.13 | 5.000% | $7,620.73 |
| 4/1/2023 | Assured | 6/30/2023 | $148,701.45 | $156,127.68 | 5.000% | $7,620.73 |
| 10/1/2023 | Assured | 6/30/2024 | - | $156,127.68 | 5.000% | $3,903.19 |
| 4/1/2024 | Assured | 6/30/2024 | $156,127.68 | - | 5.000% | $3,903.19 |
| **Total** | | | **$304,829.13** | | | **$144,979.49** |

### Issuance 2008-A

CUSIP 25109JN63

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/15 | Assured | 6/30/15 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/15 | Assured | 6/30/16 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/16 | Assured | 6/30/16 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/16 | Assured | 6/30/17 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/17 | Assured | 6/30/17 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/17 | Assured | 6/30/18 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/18 | Assured | 6/30/18 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/18 | Assured | 6/30/19 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/19 | Assured | 6/30/19 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/19 | Assured | 6/30/20 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/20 | Assured | 6/30/20 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/20 | Assured | 6/30/21 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/21 | Assured | 6/30/21 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/21 | Assured | 6/30/22 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/22 | Assured | 6/30/22 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/2022 | Assured | 6/30/2023 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/2023 | Assured | 6/30/2023 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/2023 | Assured | 6/30/2024 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/2024 | Assured | 6/30/2024 | - | $706,552.91 | 5.000% | $17,663.82 |
| 10/1/2024 | Assured | 6/30/2025 | - | $706,552.91 | 5.000% | $17,663.82 |
| 4/1/2025 | Assured | 6/30/2025 | $163,907.54 | $542,645.36 | 5.000% | $17,663.82 |
| 10/1/2025 | Assured | 6/30/2026 | - | $542,645.36 | 5.000% | $13,566.13 |
| 4/1/2026 | Assured | 6/30/2026 | $172,217.85 | $370,427.51 | 5.000% | $13,566.13 |
| 10/1/2026 | Assured | 6/30/2027 | - | $370,427.51 | 5.000% | $9,260.69 |
| 4/1/2027 | Assured | 6/30/2027 | $180,704.97 | $189,722.54 | 5.000% | $9,260.69 |
| 10/1/2027 | Assured | 6/30/2028 | - | $189,722.54 | 5.000% | $4,743.06 |
| 4/1/2028 | Assured | 6/30/2028 | $189,722.54 | - | 5.000% | $4,743.06 |
| **Total** | | | **$706,552.91** | | | **$443,743.87** |

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
| **UTGO1999-A** | | | | | | | | | | | | | | | | | | |
| 25…S3 | 4/1/15 | 5.250% | $238,011.21 | Assured | $6,271.42 | $6,271.42 | | | | | | | | | | | | |
| 25…S1 | 4/1/16 | 5.350% | $251,066.35 | Assured | $6,276.66 | $6,276.66 | $6,276.66 | $6,276.66 | | | | | | | | | | |
| 25…P6 | 4/1/17 | 5.000% | $263,640.62 | Assured | $6,591.02 | $6,591.02 | $6,591.02 | $6,591.02 | $6,591.02 | $6,591.02 | | | | | | | | |
| 25…U8 | 4/1/18 | 5.000% | $277,053.18 | Assured | $6,026.33 | $6,026.33 | $6,026.33 | $6,026.33 | $6,026.33 | $6,026.33 | $6,026.33 | $6,026.33 | | | | | | |
| 25…R2 | 4/1/19 | 5.000% | $290,864.88 | Assured | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | $7,272.12 | | | | |
| | | | $1,321,256.25 | | $33,337.55 | $33,337.55 | $27,066.13 | $27,066.13 | $20,789.47 | $20,789.47 | $14,198.45 | $14,198.45 | $7,272.12 | $7,272.12 | | | | |
| **UTGO2001-A(I)** | | | | | | | | | | | | | | | | | | |
| 25…XG | 4/1/15 | 5.375% | $497,941.27 | NPFG | $13,382.17 | $13,382.17 | | | | | | | | | | | | |
| 25…V3 | 4/1/16 | 5.375% | $524,766.39 | NPFG | $14,103.10 | $14,103.10 | $14,103.10 | $14,103.10 | | | | | | | | | | |
| 25…W1 | 4/1/17 | 5.375% | $553,268.08 | NPFG | $14,860.08 | $14,860.08 | $14,860.08 | $14,860.08 | $14,860.08 | $14,860.08 | | | | | | | | |
| 25…V9 | 4/1/18 | 5.375% | $1,173,598.95 | NPFG | $31,540.47 | $31,540.47 | $31,540.47 | $31,540.47 | $31,540.47 | $31,540.47 | $31,540.47 | $31,540.47 | | | | | | |
| 25…T2 | 4/1/19 | 5.000% | $1,173,598.95 | NPFG | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | | | | |
| 25…U5 | 4/1/20 | 5.000% | $1,173,598.95 | NPFG | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | | |
| 25…Q0 | 4/1/21 | 5.000% | $1,173,598.95 | NPFG | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 | $29,339.97 |
| | | | $6,270,371.53 | | $161,914.74 | $161,914.74 | $148,532.57 | $148,532.57 | $134,429.47 | $134,429.47 | $119,560.39 | $119,560.39 | $88,019.92 | $88,019.92 | $58,679.95 | $58,679.95 | $29,339.97 | $29,339.97 |
| **UTGO2002** | | | | | | | | | | | | | | | | | | |
| 25…W8 | 4/1/21 | 5.125% | $271,694.33 | NPFG | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 | $6,959.86 |
| 25…W6 | 4/1/22 | 5.125% | $285,436.03 | NPFG | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 | $7,314.30 |
| | | | $557,040.36 | | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 | $14,274.16 |
| **UTGO2003-A** | | | | | | | | | | | | | | | | | | |
| 25…N9 | 4/1/15 | 4.000% | $25,148.55 | Syncora | $502.97 | $502.97 | | | | | | | | | | | | |
| 25…P0 | 4/1/16 | 5.250% | $213,762.67 | Syncora | $5,611.27 | $5,611.27 | $5,611.27 | $5,611.27 | | | | | | | | | | |
| 25…R5 | 4/1/17 | 5.250% | $251,066.35 | Syncora | $6,590.49 | $6,590.49 | $6,590.49 | $6,590.49 | $6,590.49 | $6,590.49 | | | | | | | | |
| 25…S4 | 4/1/18 | 5.250% | $264,059.76 | Syncora | $6,931.57 | $6,931.57 | $6,931.57 | $6,931.57 | $6,931.57 | $6,931.57 | $6,931.57 | $6,931.57 | | | | | | |
| 25…T2 | 4/1/19 | 5.250% | $277,891.47 | Syncora | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | $7,294.65 | | | | |
| 25…U9 | 4/1/20 | 5.250% | $292,561.45 | Syncora | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | $7,679.74 | | |
| 25…V5 | 4/1/20 | 4.500% | $41,914.25 | Syncora | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | $943.07 | | |
| 25…X5 | 4/1/21 | 5.250% | $266,155.48 | Syncora | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 | $6,986.58 |
| 25…Y5 | 4/1/21 | 5.250% | $323,578.00 | Syncora | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 | $8,493.92 |
| 25…Z8 | 4/1/22 | 4.625% | $41,914.25 | Syncora | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 | $909.27 |
| 25…X2 | 4/1/22 | 5.250% | $298,848.59 | Syncora | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 | $7,844.78 |
| 25…Z1 | 4/1/23 | 5.250% | $125,742.74 | Syncora | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 |
| 25…Y0 | 4/1/23 | 5.250% | $332,624.08 | Syncora | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 |
| | | | $2,655,267.62 | | $68,862.49 | $68,862.49 | $62,748.25 | $62,748.25 | $56,157.76 | $56,157.76 | $49,226.19 | $49,226.19 | $41,931.54 | $41,931.54 | $34,251.80 | $34,251.80 | $26,322.15 | $26,322.15 |
| **UTGO2004-A(I)** | | | | | | | | | | | | | | | | | | |
| 25…X2 | 4/1/15 | 5.250% | $177,228.23 | Ambac | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 | $9,002.24 |
| 25…Y0 | 4/1/20 | 4.250% | $15,508.27 | Ambac | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 | $329.55 |
| 25…W3 | 4/1/20 | 5.250% | $510,096.40 | Ambac | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 | $13,390.03 |
| 25…A1 | 4/1/21 | 5.000% | $555,268.08 | Ambac | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 | $13,831.70 |
| 25…B9 | 4/1/21 | 5.250% | $237,091.48 | Ambac | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 | $15,240.45 |
| 25…Z7 | 4/1/22 | 5.250% | $580,093.20 | Ambac | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 | $707.30 |
| 25…D5 | 4/1/23 | 5.250% | $31,435.69 | Ambac | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 |
| 25…E3 | 4/1/23 | 4.600% | $65,805.37 | Ambac | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 |
| 25…F9 | 4/1/23 | 5.250% | $577,578.34 | Ambac | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 |
| | | | $3,291,945.95 | | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $85,312.68 | $75,410.44 | $75,410.44 | $61,690.86 | $61,690.86 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS Pension Allocation)

| CUSIP | Maturity Date | Rate | Insurer | Principal | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(I)** | | | | | | | | | | | | | | | | | | |
| 29X78 | 4/1/15 | 5.000% | Ambac | $727,217.21 | $18,180.31 | $18,180.31 | | | | | | | | | | | | |
| 29X26 | 4/1/16 | 5.350% | Ambac | $763,258.46 | $20,035.53 | $20,035.53 | $20,035.53 | $20,035.53 | | | | | | | | | | |
| 29X84 | 4/1/17 | 4.000% | Ambac | $25,567.69 | $511.35 | $511.35 | $511.35 | $511.35 | $511.35 | $511.35 | | | | | | | | |
| 29Y52 | 4/1/17 | 5.250% | Ambac | $772,938.45 | $20,420.62 | $20,420.62 | $20,420.62 | $20,420.62 | $20,420.62 | $20,420.62 | | | | | | | | |
| 29Z10 | 4/1/18 | 5.250% | Ambac | $167,550.99 | $4,401.00 | $4,401.00 | $4,401.00 | $4,401.00 | $4,401.00 | $4,401.00 | $4,401.00 | $4,401.00 | | | | | | |
| | | | | $2,461,623.80 | $63,548.81 | $63,548.81 | $45,368.51 | $45,368.51 | $25,332.97 | $25,332.97 | $4,401.00 | $4,401.00 | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
| 29X31 | 4/1/19 | 5.240% | Ambac | $48,201.39 * | $1,262.88 | $1,262.88 | $922.45 | $922.45 | $560.06 | $560.06 | $186.69 | $186.69 | | | | | | |
| | | | | $48,201.39 | | | | | | | | | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| 2XG53 | 4/1/15 | 5.000% | Assured | $191,967.26 | $4,799.18 | $4,799.18 | | | | | | | | | | | | |
| 2XG61 | 4/1/16 | 5.000% | Assured | $301,607.53 | $7,540.19 | $7,540.19 | $7,540.19 | $7,540.19 | | | | | | | | | | |
| 2XG79 | 4/1/17 | 4.300% | Assured | $211,247.81 | $4,541.83 | $4,541.83 | $4,541.83 | $4,541.83 | $4,541.83 | $4,541.83 | | | | | | | | |
| 2XG87 | 4/1/18 | 5.000% | Assured | $230,888.09 | $5,522.20 | $5,522.20 | $5,522.20 | $5,522.20 | $5,522.20 | $5,522.20 | $5,522.20 | $5,522.20 | | | | | | |
| 2XG95 | 4/1/19 | 5.000% | Assured | $231,785.79 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | $5,794.64 | | | | |
| 2XH29 | 4/1/20 | 5.000% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | | |
| 2XH37 | 4/1/21 | 5.020% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 |
| 2XH45 | 4/1/22 | 5.000% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 |
| 2XH52 | 4/1/23 | 5.000% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 |
| 2XH60 | 4/1/24 | 5.000% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 |
| 2XH78 | 4/1/25 | 5.000% | Assured | $419,142.48 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 |
| | | | | $3,572,351.37 | $91,069.42 | $91,069.42 | $86,270.24 | $86,270.24 | $78,730.05 | $78,730.05 | $74,188.22 | $74,188.22 | $68,666.02 | $68,666.02 | $62,871.37 | $62,871.37 | $52,392.81 | $52,392.81 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 2XK92 | 4/1/15 | 5.000% | Assured | $193,224.08 | $4,830.62 | $4,830.62 | | | | | | | | | | | | |
| 2XK84 | 4/1/16 | 5.000% | Assured | $203,284.10 | $5,082.10 | $5,082.10 | $5,082.10 | $5,082.10 | | | | | | | | | | |
| 2XK25 | 4/1/17 | 4.300% | Assured | $213,343.52 | $4,586.89 | $4,586.89 | $4,586.89 | $4,586.89 | $4,586.89 | $4,586.89 | | | | | | | | |
| 2XK41 | 4/1/18 | 5.000% | Assured | $220,468.95 | $5,511.72 | $5,511.72 | $5,511.72 | $5,511.72 | $5,511.72 | $5,511.72 | $5,511.72 | $5,511.72 | | | | | | |
| 2XK58 | 4/1/19 | 5.250% | Assured | $229,270.94 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | $6,018.36 | | | | |
| 2XK33 | 4/1/20 | 5.250% | Assured | $241,845.21 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | $6,348.44 | | |
| | | | | $1,301,437.41 | $32,378.13 | $32,378.13 | $27,547.51 | $27,547.51 | $22,465.41 | $22,465.41 | $17,878.52 | $17,878.52 | $12,366.80 | $12,366.80 | $6,348.44 | $6,348.44 | | |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | |
| 2XM56 | 4/1/15 | 5.000% | Assured | $241,006.93 | $6,025.17 | $6,025.17 | | | | | | | | | | | | |
| 2XM64 | 4/1/16 | 5.000% | Assured | $252,742.92 | $6,318.57 | $6,318.57 | $6,318.57 | $6,318.57 | | | | | | | | | | |
| 2XM72 | 4/1/17 | 5.000% | Assured | $265,736.33 | $6,643.41 | $6,643.41 | $6,643.41 | $6,643.41 | $6,643.41 | $6,643.41 | | | | | | | | |
| 2XM98 | 4/1/18 | 4.000% | Assured | $278,729.75 | $5,574.60 | $5,574.60 | $5,574.60 | $5,574.60 | $5,574.60 | $5,574.60 | $5,574.60 | $5,574.60 | | | | | | |
| 2XN22 | 4/1/19 | 5.000% | Assured | $290,046.60 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | $7,251.16 | | | | |
| 2XN30 | 4/1/20 | 5.000% | Assured | $304,297.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | $7,607.44 | | |
| 2XN48 | 4/1/21 | 5.000% | Assured | $319,885.71 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 | $7,995.14 |
| 2XN55 | 4/1/22 | 5.000% | Assured | $335,733.13 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 | $8,393.33 |
| 2XN63 | 4/1/24 | 5.000% | Assured | $722,601.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 | $18,065.04 |
| 2XN71 | 4/1/28 | 5.000% | Assured | $1,674,893.36 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 |
| | | | | $4,685,593.81 | $115,746.20 | $115,746.20 | $109,721.02 | $109,721.02 | $103,402.45 | $103,402.45 | $96,759.04 | $96,759.04 | $91,184.45 | $91,184.45 | $83,933.28 | $83,933.28 | $76,323.85 | $76,323.85 |
| **UTGO 2006-B(I)** | | | | | | | | | | | | | | | | | | |
| 2XP53 | 4/1/15 | 5.000% | Assured | $668,113.12 | $16,702.83 | $16,702.83 | | | | | | | | | | | | |
| 2XP61 | 4/1/16 | 5.000% | Assured | $288,370.03 | $7,209.25 | $7,209.25 | $7,209.25 | $7,209.25 | | | | | | | | | | |
| 2XP79 | 4/1/17 | 5.000% | Assured | $300,106.02 | $7,502.65 | $7,502.65 | $7,502.65 | $7,502.65 | $7,502.65 | $7,502.65 | | | | | | | | |
| 2XP87 | 4/1/18 | 5.000% | Assured | $317,710.00 | $7,942.75 | $7,942.75 | $7,942.75 | $7,942.75 | $7,942.75 | $7,942.75 | $7,942.75 | $7,942.75 | | | | | | |
| | | | | $1,574,299.16 | $39,357.48 | $39,357.48 | $22,654.65 | $22,654.65 | $15,445.40 | $15,445.40 | $7,942.75 | $7,942.75 | | | | | | |
| | | | | $27,170,687.74 | $704,564.52 | $704,564.52 | $627,918.16 | $627,918.16 | $556,899.87 | $556,899.87 | $483,928.09 | $483,928.09 | $409,027.68 | $409,027.68 | $335,769.44 | $335,769.44 | $260,245.79 | $260,245.79 |

* Subject to Mandatory Redemption

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO Series 2009-A** | | | | | | | | | | | | | |
| M3 | 4/1/15 | 5.250% | $238,911.21 | Assured | | | | | | | | $12,542.84 | $251,454.05 |
| N1 | 4/1/16 | 5.000% | $251,066.35 | Assured | | | | | | | | $25,106.63 | $276,172.98 |
| P6 | 4/1/17 | 5.000% | $263,640.62 | Assured | | | | | | | | $39,546.09 | $303,186.71 |
| Q4 | 4/1/18 | 5.000% | $277,053.18 | Assured | | | | | | | | $55,410.64 | $332,463.82 |
| R2 | 4/1/19 | 5.000% | $290,884.88 | Assured | | | | | | | | $72,721.22 | $363,606.10 |
| | | | $1,321,556.23 | | | | | | | | | $205,327.42 | $1,526,883.67 |
| **UTGO Series 2001-A(U)** | | | | | | | | | | | | | |
| X6 | 4/1/15 | 5.375% | $497,941.27 | NPFG | | | | | | | | $26,764.34 | $524,705.61 |
| Y3 | 4/1/16 | 5.375% | $524,766.39 | NPFG | | | | | | | | $56,412.39 | $581,178.77 |
| L1 | 4/1/17 | 5.375% | $553,268.08 | NPFG | | | | | | | | $89,214.48 | $642,482.55 |
| M9 | 4/1/18 | 5.375% | $1,173,598.95 | NPFG | | | | | | | | $252,323.77 | $1,425,922.72 |
| N7 | 4/1/19 | 5.000% | $1,173,598.95 | NPFG | | | | | | | | $293,399.74 | $1,466,998.69 |
| P2 | 4/1/20 | 5.000% | $1,173,598.95 | NPFG | | | | | | | | $352,079.68 | $1,525,678.63 |
| Q0 | 4/1/21 | 5.000% | $1,173,598.95 | NPFG | | | | | | | | $410,759.63 | $1,584,358.58 |
| | | | $6,270,371.53 | | | | | | | | | $1,480,954.04 | $7,751,325.57 |
| **UTGO Series 2002** | | | | | | | | | | | | | |
| W8 | 4/1/21 | 5.125% | $271,694.33 | NPFG | $7,314.30 | $7,314.30 | | | | | | $97,438.05 | $369,042.38 |
| W6 | 4/1/22 | 5.125% | $285,436.03 | NPFG | $7,314.30 | $7,314.30 | | | | | | $117,028.77 | $402,464.80 |
| | | | $557,040.36 | | $7,314.30 | $7,314.30 | | | | | | $214,466.83 | $771,507.18 |
| **UTGO Series 2003-A** | | | | | | | | | | | | | |
| X0 | 4/1/15 | 4.000% | $25,148.55 | Syncora | | | | | | | | $1,005.94 | $26,154.49 |
| Y7 | 4/1/16 | 5.250% | $213,762.67 | Syncora | | | | | | | | $11,222.54 | $224,985.21 |
| X4 | 4/1/16 | 5.250% | $251,066.35 | Syncora | | | | | | | | $26,361.97 | $277,428.31 |
| N4 | 4/1/17 | 5.250% | $264,059.76 | Syncora | | | | | | | | $41,589.41 | $305,649.18 |
| T2 | 4/1/18 | 5.250% | $277,891.47 | Syncora | | | | | | | | $58,357.21 | $336,248.67 |
| U9 | 4/1/19 | 5.350% | $292,561.45 | Syncora | | | | | | | | $76,797.38 | $369,358.83 |
| V7 | 4/1/20 | 4.500% | $41,974.25 | Syncora | | | | | | | | $11,316.85 | $53,231.10 |
| W5 | 4/1/20 | 5.250% | $266,355.68 | Syncora | | | | | | | | $83,838.97 | $349,094.45 |
| X3 | 4/1/21 | 5.250% | $323,578.00 | Syncora | | | | | | | | $118,914.91 | $442,492.91 |
| X1 | 4/1/22 | 4.625% | $41,914.25 | Syncora | $969.27 | $969.27 | | | | | | $15,508.27 | $57,422.52 |
| Z8 | 4/1/22 | 5.250% | $298,848.39 | Syncora | $7,844.78 | $7,844.78 | | | | | | $125,516.61 | $424,365.00 |
| A2 | 4/1/23 | 4.625% | $125,742.74 | Syncora | $2,907.80 | $2,907.80 | $2,907.80 | $2,907.80 | | | | $52,340.42 | $178,083.16 |
| B0 | 4/1/23 | 5.250% | $232,624.08 | Syncora | $6,106.38 | $6,106.38 | $6,106.38 | $6,106.38 | | | | $109,914.88 | $342,538.95 |
| | | | $2,653,267.62 | | $17,828.23 | $17,828.23 | $9,014.18 | $9,014.18 | | | | $732,685.36 | $3,387,952.78 |
| **UTGO Series 2004-A(U)** | | | | | | | | | | | | | |
| X2 | 4/1/19 | 5.250% | $377,228.23 | Ambac | | | | | | | | $99,022.41 | $476,250.65 |
| Y0 | 4/1/20 | 4.250% | $15,508.27 | Ambac | | | | | | | | $3,954.61 | $19,462.88 |
| Z7 | 4/1/21 | 5.350% | $510,096.40 | Ambac | | | | | | | | $160,680.37 | $670,776.77 |
| A1 | 4/1/22 | 5.050% | $553,368.88 | Ambac | $15,249.45 | $15,249.45 | | | | | | $193,643.83 | $746,011.90 |
| C7 | 4/1/22 | 5.250% | $580,593.44 | Ambac | $707.30 | $707.30 | | | | | | $243,591.22 | $824,923.70 |
| C7 | 4/1/23 | 4.500% | $31,435.69 | Ambac | $707.30 | $707.30 | $707.30 | $707.30 | | | | $12,731.45 | $44,167.14 |
| D5 | 4/1/23 | 5.250% | $580,093.30 | Ambac | $15,227.45 | $15,227.45 | $15,227.45 | $15,227.45 | | | | $274,094.03 | $854,187.23 |
| E3 | 4/1/24 | 4.600% | $65,805.37 | Ambac | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | $1,513.52 | | $30,270.47 | $96,075.84 |
| F0 | 4/1/24 | 5.250% | $577,578.34 | Ambac | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | $15,161.43 | | $303,228.63 | $880,806.97 |
| | | | $3,291,945.05 | | $47,859.16 | $47,859.16 | $32,609.70 | $32,609.70 | $16,674.95 | $16,674.95 | | $1,321,672.02 | $4,613,562.08 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS Pension Allocation)

| CIP | Maturity Date | Rate | Principal | Insurer | 4/1/21 | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | Interest | | | | | | | |
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $732,212.21 | Ambac | | | | | | | | | | | | | | | | $36,360.61 | $768,572.82 |
| | 4/1/16 | 5.250% | $763,358.46 | Ambac | | | | | | | | | | | | | | | | $80,042.14 | $843,400.60 |
| | 4/1/17 | 4.000% | $25,567.09 | Ambac | | | | | | | | | | | | | | | | $3,068.72 | $28,635.81 |
| | 4/1/17 | 5.250% | $777,928.45 | Ambac | | | | | | | | | | | | | | | | $122,523.73 | $900,452.18 |
| | 4/1/18 | 5.250% | $167,566.99 | Ambac | | | | | | | | | | | | | | | | $35,297.97 | $202,864.96 |
| | | | $2,461,623.90 | | | | | | | | | | | | | | | | | $277,302.57 | $2,738,926.37 |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.240% | $48,201.39 * | Ambac | | | | | | | | | | | | | | | | $5,864.14 | $54,065.52 |
| | | | $48,201.39 | | | | | | | | | | | | | | | | | $5,864.14 | $54,065.52 |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $191,967.26 | Assured | | | | | | | | | | | | | | | | $9,598.36 | $201,565.62 |
| | 4/1/16 | 5.000% | $201,007.53 | Assured | | | | | | | | | | | | | | | | $20,760.75 | $221,768.29 |
| | 4/1/17 | 4.300% | $211,247.81 | Assured | | | | | | | | | | | | | | | | $27,250.97 | $238,498.78 |
| | 4/1/17 | 5.000% | $220,888.09 | Assured | | | | | | | | | | | | | | | | $44,177.62 | $265,065.71 |
| | 4/1/18 | 5.000% | $231,785.79 | Assured | | | | | | | | | | | | | | | | $57,946.45 | $289,732.24 |
| | 4/1/19 | 5.000% | $419,142.48 | Assured | | | | | | | | | | | | | | | | $125,742.74 | $544,885.23 |
| | 4/1/20 | 5.000% | $419,142.48 | Assured | | | | | | | | | | | | | | | | $146,699.87 | $565,842.35 |
| | 4/1/21 | 5.000% | $419,142.48 | Assured | $10,478.56 | | | | | | | | | | | | | | | $167,656.99 | $586,799.47 |
| | 4/1/22 | 5.000% | $419,142.48 | Assured | $10,478.56 | $10,478.56 | $10,478.56 | | | | | | | | | | | | | $188,614.12 | $607,756.60 |
| | 4/1/23 | 5.000% | $419,142.48 | Assured | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | | | | | | | | | | | $209,571.24 | $628,713.72 |
| | 4/1/24 | 5.000% | $419,142.48 | Assured | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | | | | | | | | | $230,528.37 | $649,670.85 |
| | 4/1/25 | 5.250% | $419,142.48 | Assured | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | $10,478.56 | | | | | | | $1,227,947.48 | $4,800,298.85 |
| | | | $3,572,263.37 | | $41,914.25 | $41,914.25 | $41,914.25 | $31,435.69 | $31,435.69 | $20,957.12 | $20,957.12 | $10,478.56 | $10,478.56 | | | | | | | | |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $193,224.68 | Assured | | | | | | | | | | | | | | | | $9,661.23 | $202,885.92 |
| | 4/1/16 | 5.000% | $203,784.10 | Assured | | | | | | | | | | | | | | | | $30,328.41 | $233,612.51 |
| | 4/1/17 | 4.300% | $313,343.32 | Assured | | | | | | | | | | | | | | | | $27,521.31 | $240,864.84 |
| | 4/1/17 | 5.000% | $320,468.95 | Assured | | | | | | | | | | | | | | | | $44,993.79 | $333,336.51 |
| | 4/1/19 | 5.250% | $229,270.94 | Assured | | | | | | | | | | | | | | | | $60,183.62 | $362,538.25 |
| | 4/1/20 | 5.250% | $241,845.21 | Assured | | | | | | | | | | | | | | | | $76,181.24 | $318,105.45 |
| | | | $1,501,437.41 | | | | | | | | | | | | | | | | | $337,969.61 | $1,539,407.02 |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $241,060.93 | Assured | | | | | | | | | | | | | | | | $12,050.35 | $253,057.27 |
| | 4/1/16 | 5.000% | $252,742.92 | Assured | | | | | | | | | | | | | | | | $25,274.29 | $278,017.21 |
| | 4/1/17 | 4.000% | $265,736.33 | Assured | | | | | | | | | | | | | | | | $39,869.45 | $305,596.78 |
| | 4/1/18 | 4.000% | $278,729.75 | Assured | | | | | | | | | | | | | | | | $44,596.76 | $333,326.51 |
| | 4/1/19 | 5.000% | $290,046.60 | Assured | | | | | | | | | | | | | | | | $72,511.65 | $362,558.25 |
| | 4/1/20 | 5.000% | $304,207.44 | Assured | | | | | | | | | | | | | | | | $91,280.23 | $395,386.67 |
| | 4/1/21 | 5.000% | $310,905.77 | Assured | | | | | | | | | | | | | | | | $111,932.00 | $431,737.71 |
| | 4/1/22 | 5.000% | $335,733.13 | Assured | | | | | | | | | | | | | | | | $134,205.35 | $470,020.38 |
| | 4/1/24 | 5.000% | $722,601.04 | Assured | $18,065.04 | $18,065.04 | $18,065.04 | $9,252.57 | $9,252.57 | | | | | | | | | | | $343,675.88 | $1,066,277.52 |
| | 4/1/28 | 5.000% | $1,674,893.36 | Assured | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $41,872.33 | $32,158.71 | $32,158.71 | $21,952.59 | $21,952.59 | $11,243.50 | | $1,051,900.93 | $2,726,794.29 |
| | | | $4,685,593.81 | | $68,330.70 | $68,330.70 | $59,937.37 | $59,577.37 | $51,124.90 | $51,124.90 | $41,872.33 | $41,872.33 | $41,872.33 | $32,158.71 | $32,158.71 | $21,952.59 | $21,952.59 | $11,243.50 | | $1,927,384.79 | $6,612,978.60 |
| **UTGO 2006-B(1)** | | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | $668,113.12 | Assured | | | | | | | | | | | | | | | | $33,405.66 | $701,518.77 |
| | 4/1/16 | 5.000% | $288,370.03 | Assured | | | | | | | | | | | | | | | | $28,837.00 | $317,207.03 |
| | 4/1/17 | 5.000% | $300,106.02 | Assured | | | | | | | | | | | | | | | | $45,015.50 | $345,131.92 |
| | 4/1/18 | 5.000% | $317,700.00 | Assured | | | | | | | | | | | | | | | | $63,542.00 | $381,253.00 |
| | | | $1,574,289.16 | | | | | | | | | | | | | | | | | $170,800.56 | $1,745,099.72 |
| **Totals** | | | $27,739,687.74 | | $183,246.63 | $183,246.63 | $132,996.95 | $132,996.95 | $88,756.98 | $88,756.98 | $53,350.90 | $53,350.90 | $41,872.33 | $32,158.71 | $32,158.71 | $21,952.59 | $21,952.59 | $11,243.50 | | $7,802,319.61 | $35,542,007.36 |

* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service (GRS Pension Allocation)

## Bond Series Subject to Mandatory Redemption

### Issuance: 2004-B(2) — CUSIP 25093ZX1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | | | $48,201.39 | 5.240% | $1,262.88 |
| 4/1/15 | Ambac | 6/30/15 | $12,993.42 | $35,207.97 | 5.240% | $1,262.88 |
| 10/1/15 | Ambac | | | $35,207.97 | 5.240% | $922.45 |
| 4/1/16 | Ambac | 6/30/16 | $13,831.70 | $21,376.27 | 5.240% | $922.45 |
| 10/1/16 | Ambac | | | $21,376.27 | 5.240% | $560.06 |
| 4/1/17 | Ambac | 6/30/17 | $14,250.84 | $7,125.42 | 5.240% | $560.06 |
| 10/1/17 | Ambac | | | $7,125.42 | 5.240% | $186.69 |
| 4/1/18 | Ambac | 6/30/18 | $7,125.42 | - | 5.240% | $186.69 |
| Total | | | $48,201.39 | | | $5,864.14 |

### Issuance: 2008-A — CUSIP 25093NN3

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/15 | Assured | 6/30/15 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/15 | Assured | 6/30/16 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/16 | Assured | 6/30/16 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/16 | Assured | 6/30/17 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/17 | Assured | 6/30/17 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/17 | Assured | 6/30/18 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/18 | Assured | 6/30/18 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/18 | Assured | 6/30/19 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/19 | Assured | 6/30/19 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/19 | Assured | 6/30/20 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/20 | Assured | 6/30/20 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/20 | Assured | 6/30/21 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/21 | Assured | 6/30/21 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/21 | Assured | 6/30/22 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/22 | Assured | 6/30/22 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/2022 | Assured | 6/30/2023 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/2023 | Assured | 6/30/2023 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 10/1/2023 | Assured | 6/30/2024 | | $1,674,893.36 | 5.000% | $41,872.33 |
| 4/1/2024 | Assured | 6/30/2024 | $388,545.08 | $1,286,348.28 | 5.000% | $41,872.33 |
| 10/1/2024 | Assured | 6/30/2025 | | $1,286,348.28 | 5.000% | $32,158.71 |
| 4/1/2025 | Assured | 6/30/2025 | $408,244.78 | $878,103.50 | 5.000% | $32,158.71 |
| 10/1/2025 | Assured | 6/30/2026 | | $878,103.50 | 5.000% | $21,952.59 |
| 4/1/2026 | Assured | 6/30/2026 | $438,363.62 | $449,739.88 | 5.000% | $21,952.59 |
| 10/1/2027 | Assured | 6/30/2027 | | $449,739.88 | 5.000% | $11,243.50 |
| 4/1/2028 | Assured | 6/30/2028 | $449,739.88 | | 5.000% | $11,243.50 |
| Total | | | $1,674,893.36 | | | $1,051,900.93 |

### Issuance: 2008-A — CUSIP 25093NS5

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/15 | Assured | 6/30/15 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/15 | Assured | 6/30/16 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/16 | Assured | 6/30/16 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/16 | Assured | 6/30/17 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/17 | Assured | 6/30/17 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/17 | Assured | 6/30/18 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/18 | Assured | 6/30/18 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/18 | Assured | 6/30/19 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/19 | Assured | 6/30/19 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/19 | Assured | 6/30/20 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/20 | Assured | 6/30/20 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/20 | Assured | 6/30/21 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/21 | Assured | 6/30/21 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/21 | Assured | 6/30/22 | | $722,601.64 | 5.000% | $18,065.04 |
| 4/1/22 | Assured | 6/30/22 | | $722,601.64 | 5.000% | $18,065.04 |
| 10/1/2022 | Assured | 6/30/2023 | $352,498.83 | $370,102.81 | 5.000% | $18,065.04 |
| 4/1/2023 | Assured | 6/30/2023 | | $370,102.81 | 5.000% | $9,252.57 |
| 10/1/2023 | Assured | 6/30/2024 | $370,102.81 | | 5.000% | $9,252.57 |
| 10/1/2024 | Assured | 6/30/2025 | | | 5.000% | |
| Total | | | $722,601.64 | | | $343,675.88 |

13-53846-tjt   Doc 8914-3   Filed 06/20/14   Entered 06/20/14 12:45:54   Page 138 of 165

**Exhibit B**

**EMERGENCY MANAGER ORDER**

ORDER NO. ____

ORDER OF THE EMERGENCY MANAGER OF THE CITY OF DETROIT,
COUNTY OF WAYNE, STATE OF MICHIGAN, AUTHORIZING THE
ISSUANCE AND RESTRUCTURING OF CERTAIN UNLIMITED TAX
GENERAL OBLIGATION BONDS OF THE CITY OF DETROIT BY THE
ISSUANCE BY THE CITY OF DETROIT OF NOT TO EXCEED $287,560,790
DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS
(UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 IN ONE OR
MORE SUB-SERIES FOR THE PURPOSE OF PROVIDING CERTAIN
BANKRUPTCY PLAN OF ADJUSTMENT FINANCING FOR THE CITY
RELATED TO UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS;
AUTHORIZING A FIFTH SUPPLEMENT TO THE OUTSTANDING
MASTER DEBT RETIREMENT TRUST INDENTURE TO SECURE
REPAYMENT OF SAID BONDS; IMPLEMENTING THE ASSIGNMENT OF
PAYMENTS ON NOT TO EXCEED $43,349,210 OF THE CITY'S
OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS
(STUB UTGO BONDS) PURSUANT TO THE PLAN OF ADJUSTMENT;
AND AUTHORIZING THE AUTHORIZED OFFICERS TO MAKE CERTAIN
DETERMINATIONS AND TO TAKE CERTAIN ACTIONS IN CONNECTION
WITH THE TRANSFER OF A PORTION OF THE CITY'S OUTSTANDING
UNLIMITED TAX GENERAL OBLIGATION BONDS IN CONSIDERATION
FOR BONDS ISSUED BY THE MICHIGAN FINANCE AUTHORITY.

# TABLE OF CONTENTS

ARTICLE I      DEFINITIONS AND INTERPRETATION ................................. 6
     Section 101. Definitions.................................................................... 6
     Section 102. Interpretation ............................................................. 11

ARTICLE II DETERMINATIONS.................................................................. 11
     Section 201. Finding, and Declaration of Need to Issue Bonds; Authorized
             Denominations ................................................................... 11
     Section 202. Declaration of Borrowing ...................................... 12

ARTICLE III      AUTHORIZATION, REDEMPTION AND ASSIGNMENT OF THE
            BONDS ............................................................................... 12
     Section 301. Authorization of Bonds and Pledge ........................ 12
     Section 302. Designations, Dates, Interest Rates, Maturities, Redemption and
             Other Terms of the Bonds and Stub UTGO Bonds ........... 13
     Section 303. Execution, Authentication and Delivery of Bonds ................. 15
     Section 304. Authentication of the Bonds ................................... 15
     Section 305. The MFA's Depository ............................................ 15
     Section 306. Mutilated, Destroyed, Stolen or Lost Bonds............. 15
     Section 307. Form of the Bonds .................................................. 15

ARTICLE IV SPECIAL COVENANTS ........................................................ 19
     Section 401. Tax Exemption Covenant for Tax-Exempt Bonds...................... 19
     Section 402. Arbitrage Covenant ................................................ 19

ARTICLE V FUNDS AND ACCOUNTS; DISPOSITION OF BOND PROCEEDS............... 19
     Section 501. Establishment of Accounts and Funds..................... 19
     Section 502. Debt Retirement Fund-All Bonds ........................... 20
            Section 503. Debt Retirement Fund – Series 2014 Escrow
             Fund ................................................................................. 20
     Section 504. Investment of Monies in the Funds and Accounts ................... 20

ARTICLE VI THE MASTER TRUSTEE ....................................................... 20
Section 601. Master Trustee. ............................................................... 20

Section 602. Fifth Supplemental Indenture. ....................................... 21

ARTICLE VII SUPPLEMENTAL ORDERS OR RESOLUTIONS ......................... 21
     Section 701. Supplemental Orders or Resolutions Not Requiring Consent of
             Holders of the Bonds ......................................................... 21
     Section 702. Opinion and Filing Under Act 34 ............................ 22

ARTICLE VIII DEFEASANCE............................................................... 22

    Section 801. Defeasance ........................................................................................... 22

ARTICLE IX    OTHER PROVISIONS OF GENERAL APPLICATION ........................... 22

    Section 901. Approval of Other Documents and Actions .............................................. 22

    Section 902. Continuing Disclosure Undertaking ....................................................... 23

    Section 903. Delegation of City to, and Authorization of Actions of the Mayor and the Finance Director .................................................................. 23

    Section 904. Act 34 Approval of the Bonds ................................................................ 23

    Section 905. Approving Legal Opinions with Respect to the Bonds ............................ 23

    Section 906. Negotiated Transaction .......................................................................... 24

    Section 907. Delivery of Bonds ................................................................................. 24

    Section 908. Official Statement .................................................................................. 24

    Section 909. Appointment of Bond Counsel; Engagement of Other Parties. ................ 24

    Section 910. Parties in Interest .................................................................................. 24

    Section 911. No Recourse Under Order ...................................................................... 24

    Section 912. Severability ........................................................................................... 25

    Section 913. Cover Page, Table of Contents and Article and Section Headings ........... 25

    Section 914. Conflict ................................................................................................. 25

    Section 915. Governing Law and Jurisdiction ............................................................ 25

    Section 916. Order and Supplemental Order are a Contract ........................................ 25

    Section 917. Effective Date ....................................................................................... 25

    Section 918. Notices ................................................................................................. 25

EXHIBIT A    OUTSTANDING PRIOR UTGO BONDS ................................................. A-1

EXHIBIT B    RESTRUCTURED UTGO BONDS AND MUNICIPAL OBLIGATIONS ................................................................................... B-1

EXHIBIT C    STUB UTGO BONDS ............................................................................. C-1

EXHIBIT D    FORM OF CONTINUING DISCLOSURE UNDERTAKING ................. D-1

ORDER NO. _____

ORDER OF THE EMERGENCY MANAGER OF THE CITY OF DETROIT,
COUNTY OF WAYNE, STATE OF MICHIGAN, AUTHORIZING THE
ISSUANCE AND RESTRUCTURING OF CERTAIN UNLIMITED TAX
GENERAL OBLIGATION BONDS OF THE CITY OF DETROIT BY THE
ISSUANCE BY THE CITY OF DETROIT OF NOT TO EXCEED $287,560,790
DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS
(UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 IN ONE OR
MORE SUB-SERIES FOR THE PURPOSE OF PROVIDING CERTAIN
BANKRUPTCY PLAN OF ADJUSTMENT FINANCING FOR THE CITY
RELATED TO UNLIMITED TAX GENERAL OBLIGATION BOND CLAIMS;
AUTHORIZING A FIFTH SUPPLEMENT TO THE OUTSTANDING
MASTER DEBT RETIREMENT TRUST INDENTURE TO SECURE
REPAYMENT OF SAID BONDS; IMPLEMENTING THE ASSIGNMENT OF
PAYMENTS ON NOT TO EXCEED $43,349,210 OF THE CITY'S
OUTSTANDING UNLIMITED TAX GENERAL OBLIGATION BONDS
(STUB UTGO BONDS) PURSUANT TO THE PLAN OF ADJUSTMENT;
AND AUTHORIZING THE AUTHORIZED OFFICERS TO MAKE CERTAIN
DETERMINATIONS AND TO TAKE CERTAIN ACTIONS IN CONNECTION
WITH THE TRANSFER OF A PORTION OF THE CITY'S OUTSTANDING
UNLIMITED TAX GENERAL OBLIGATION BONDS IN CONSIDERATION
FOR BONDS ISSUED BY THE MICHIGAN FINANCE AUTHORITY.

WHEREAS, at elections held on November 7, 1978, August 5, 1980, November 4, 1986,
August 2, 1988, August 4, 1992, August 5, 1996, November 4, 1997, November 7, 2000,
November 6, 2001, April 29, 2003, November 2, 2004 and February 24, 2009 (the "Prior
Elections"), the qualified electors of the City of Detroit, County of Wayne, State of Michigan
(the "City") authorized the issuance and sale of general obligation unlimited tax bonds of the
City to finance certain public capital improvement projects of the City; and

WHEREAS, pursuant to the authorizations provided by certain of the Prior Elections, the
City Charter, Act 279, Public Acts of Michigan, 1909, as amended ("Act 279"), Act 202, Public
Acts of Michigan, 1943, as amended ("Act 202"), and Act 34, Public Acts of Michigan, 2001, as
amended ("Act 34"), the City issued certain general obligation unlimited tax bonds (collectively,
but not including the 2010A UTGO Bonds, as hereinafter defined, the "Prior UTGO Bonds")
outstanding in the amounts set forth on Exhibit A attached hereto; and

WHEREAS, on March 18, 2010, pursuant to Act 80, Public Acts of Michigan, 1981, as
amended ("Act 80") the City issued $249,790,000 of its Distributable State Aid General
Obligation Limited Tax Bonds, Series 2010 (the "DSA Bonds") secured by and payable from
money received or to be received by the City derived from the imposition of taxes by the State of
Michigan (the "State") and returned or to be returned to the City as provided by law
("Distributable Aid"); and

WHEREAS, in connection with the issuance of the DSA Bonds, the City entered into a Master Debt Retirement Trust Indenture (the "Master Indenture") and a First Supplemental Debt Retirement Trust Indenture, each dated as of March 1, 2010, (the "First Supplemental Indenture") between the City and U.S. Bank National Association, Detroit, Michigan, as master trustee (the "Master Trustee" or the "Trustee"), that provides for the escrow of Distributable Aid payments received by the Trustee on behalf of the City to pay the debt service on obligations of the City secured by Distributable Aid (the "Distributable Aid Obligations"); and

WHEREAS, pursuant to Act 80, the Master Indenture and the First Supplemental Indenture, the DSA Bonds have a first lien on the City's Distributable Aid to secure the payment of the DSA Bonds and to provide for the direct payment to the Master Trustee of the Distributable Aid to be held in trust and used solely for payment of principal of and interest on Distributable Aid Obligations, and for that purpose, the City, the Master Trustee and the State Treasurer of the State of Michigan (the "State Treasurer") entered into an Agreement dated as of March 1, 2010 (the "DSA Bonds Deposit Agreement"); and

WHEREAS, on December 16, 2010, pursuant to the City Charter, Act 279 and Act 34, the City issued $100,000,000 Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010(A) (Taxable-Recovery Zone Economic Development Bonds-Direct Payment) (the "2010A UTGO Bonds") and sold them to the Michigan Finance Authority (the "MFA") under Act 227, Public Acts of Michigan, 1985, as amended ("Act 227"); and

WHEREAS, in connection with the issuance of the 2010A UTGO Bonds, the City entered into a Second Supplemental Debt Retirement Trust Indenture, dated as of December 1, 2010 (the "Second Supplemental Indenture") with the Trustee, to further provide for the security and payment of the 2010A UTGO Bonds with the unlimited tax levy and a second lien on Distributable Aid; and

WHEREAS, pursuant to Act 227, in order to provide for the direct payment of Distributable Aid to the Trustee to pay the debt service on the 2010A UTGO Bonds, the City, the MFA and the State Treasurer entered into an Agreement to Deposit Distributable State Aid with the Master Trustee for payment of the 2010A UTGO Bonds (the "UTGO Bonds Deposit Agreement"); and

WHEREAS, pursuant to Resolutions adopted on March 27, 2012 by the City Council of the City, certain Sale Orders of the Finance Director and Act 34, the City issued: (i) $38,865,000 Self Insurance Distributable State Aid Third Lien Bonds (Limited Tax General Obligation), Series 2012(A2) (the "Series 2012(A2) Bonds"); (ii) $30,730,000 Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(A2-B) (the "Series 2012(A2-B) Bonds"); (iii) $6,405,000 General Obligation Distributable State Aid Third Lien Capital Improvement Refunding Bonds (Limited Tax General Obligation) Series 2012B (the "Series 2012B Bonds"); and (iv) $53,520,000 Self Insurance Distributable State Aid Third Lien Refunding Bonds (Limited Tax General Obligation), Series 2012(B2) (the "Series 2012(B2) Bonds, and collectively with the Series 2012(A2) Bonds, the Series 2012(A2-B) Bonds and the Series 2012B Bonds, the "Third Lien Bonds"); and

WHEREAS, the Third Lien Bonds were sold to the MFA and pursuant to Act 227 and Act 140, in order to provide for the direct payment of Distributable Aid to the Master Trustee to

pay the debt service on the Third Lien Bonds, the City, the MFA and the State Treasurer entered into an Agreement to Deposit Distributable State Aid (as amended the "2012 Deposit Agreement") with the Master Trustee and the City and the Master Trustee entered into a Third Supplemental Debt Retirement Trust Indenture, dated as of March 1, 2012, as amended (the "Third Supplemental Indenture") and a Fourth Supplemental Debt Retirement Trust Indenture dated as of August 1, 2012 (the "Fourth Supplemental Indenture") for payment of the Third Lien Bonds on a third lien basis subordinate to the first lien on Distributable State Aid securing the DSA Bonds and subordinate to the second lien on Distributable Aid securing the Series 2010A UTGO Bonds; and

WHEREAS, on March 1, 2013, the Governor (the "Governor") of the State of Michigan (the "State") determined that a financial emergency existed within the City pursuant to the Local Government Fiscal Responsibility Act, Act 72, Public Acts of Michigan, 1990, as amended ("Act 72"); and

WHEREAS, on March 14, 2013, the Governor confirmed that a financial emergency existed within the City and, pursuant to Act 72, assigned to the Local Emergency Financial Assistance Loan Board established pursuant to the Emergency Municipal Loan Act, Act 243 Public Acts of Michigan, 1980, as amended (the "Board") the responsibility for managing the financial emergency; and

WHEREAS, on March 14, 2013, pursuant to Act 72, the Board appointed Kevyn D. Orr as Emergency Financial Manager for the City; and

WHEREAS, by operation of law the financial emergency continues to exist within the City pursuant to the Local Financial Stability and Choice Act, Act 436, Public Acts of Michigan, 2012 ("Act 436") and the Emergency Financial Manager continues in the capacity of the Emergency Manager for the City (the "Emergency Manager"); and

WHEREAS, on July 18, 2013 (the "Petition Date"), in accordance with Act 436 and the approval of the Governor, the Emergency Manager filed on behalf of the City a petition for relief pursuant to Chapter 9 of title 11 of the United States Code, 11 U.S.C. Sections 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"); and

WHEREAS, on _____, 2014, the Emergency Manager filed on behalf of the City a _____ Amended Plan for the Adjustment of the Debts of the City of Detroit (now and as subsequently amended, the "Plan of Adjustment") in the Bankruptcy Court to provide for the adjustment of the debts of the City pursuant to and in accordance with Chapter 9 of the Bankruptcy Code; and

WHEREAS, more than 90% of the Prior UTGO Bonds are insured by Ambac Assurance Corporation; Assured Guaranty Municipal Corp. together with Assured Guaranty Corp.; and National Public Finance Guarantee Corporation (each a "Bond Insurer" and collectively, the "Bond Insurers"); and

WHEREAS, pursuant to the Plan of Adjustment and a settlement agreement dated July 18, 2014 among the City and the Bond Insurers (the "UTGO Settlement Agreement") the City intends to restructure a portion of the outstanding Prior UTGO Bonds (the "Restructured UTGO

Bonds") as provided in this Order; and

WHEREAS, pursuant to a bond purchase contract (the "Purchase Contract") between the City and the MFA, the City shall deliver the Bonds authorized hereunder (the "Bonds" or the "Municipal Obligation") to the MFA, and in consideration thereof, the MFA will deliver its [Local Government Loan Program Revenue Bonds, Series 2014 (City of Detroit Unlimited Tax General Obligation Local Project Bonds)] (the "MFA Bonds") to (i) the holders of the Holders Restructured UTGO Bonds (as defined in the UTGO Settlement Agreement) and (ii) the Bond Insurers and the Dissenting Bond Insurer as holders of the Insurer Owned Restructured UTGO Bonds (as defined in the UTGO Settlement Agreement) in consideration for the transfer of the Restructured UTGO Bonds to the MFA; and

WHEREAS, the MFA Bonds will be issued by the MFA in Authorized Denominations in the same aggregate principal amounts per maturity as the Restructured UTGO Bonds, rounded down as provided in this Order, for each denomination to the nearest Authorized Denomination; and on the Effective Date, as hereinafter defined, the holders of the Holders Restructured UTGO Bonds shall be paid the difference in principal amount, if any, between the Holders Restructured UTGO Bonds and the principal amount of MFA Bonds allocated and transferred to them as provided herein by the City from its General Fund or by the Master Trustee at the direction of the City from available funds on deposit in the Debt Retirement Fund (the "Debt Retirement Fund") established hereunder, as determined by an Authorized Officer; and

WHEREAS, a portion of the Prior UTGO Bonds not restructured by the Municipal Obligation which mature on or after April 1, 2015, in the principal amount of $43,349,210 (the "Stub UTGO Bonds" and collectively with the 2010A UTGO Bonds, the Municipal Obligation and any Additional Bonds (defined below), the "UTGO Bonds") shall be reinstated, remain Outstanding in the amounts and will remain payable as shown on Exhibit C hereto; and

WHEREAS, the Stub UTGO Bonds also will be in Authorized Denominations; and

WHEREAS, upon satisfaction of all of the terms and conditions required of the City related to the confirmation of the Plan of Adjustment, the City shall establish the Business Day upon which the Plan of Adjustment shall become effective (the "Effective Date"); and

WHEREAS, on or after the Effective Date, the City shall issue and deliver the Municipal Obligation to the MFA and pursuant to the Plan of Adjustment, the Assigned UTGO Bond Tax Proceeds (as hereinafter defined), will be assigned to the Income Stabilization Funds and the GRS (collectively, the "Plan Assignees") as such terms are defined in the Plan of Adjustment; and

WHEREAS, the Emergency Manager deems it necessary to authorize the issuance of the Bonds in one or more series in the aggregate principal amount of not to exceed Two Hundred Eighty-Seven Million Five Hundred Sixty Thousand Seven Hundred Ninety Dollars ($287,560,790); and

WHEREAS, pursuant to the resolutions authorizing the Prior UTGO Bonds and the 2010A UTGO Bonds, this Order and Section 4a of Act 279, the City has pledged, and to the

extent permitted by applicable law, including without limitation, Section 12(1)(x) of Act 436, will create a lien upon the Debt Millage Revenues (as hereinafter defined) to pay the debt service on the UTGO Bonds; and

WHEREAS, pursuant to Section 4a of Act 279, and Section 701 of the Revised Municipal Finance Act, Act No. 34, Public Acts of Michigan, 2001, as amended, the Emergency Manager desires to provide for the deposit of the Debt Millage Revenues into a separate escrow account to be used for the sole purpose of paying principal of and interest on the UTGO Bonds and the administrative costs related to the deposit and escrow of Debt Millage Revenues; and

WHEREAS, in order to effectuate a lien, to the extent permitted by law, upon the debt millage revenues (the "Debt Millage Revenues") derived from the unlimited tax pledge in favor of the Registered Owners of the Bonds, it is necessary for the City to provide for the deposit of the proceeds of 100% of the City's unlimited tax general obligation debt millage levy in trust to further secure payment of the debt service on the Bonds, with U.S. Bank National Association, as Debt Millage Escrow Trustee (the "Debt Millage Escrow Trustee"), pursuant to a Debt Millage Deposit Escrow Agreement (the "Debt Millage Escrow Agreement") between the City and the Debt Millage Escrow Trustee; and

WHEREAS, the Emergency Manager recommends that the Bonds be secured by a fourth lien pledge of Distributable Aid under a Fifth Supplemental Debt Retirement Trust Indenture (the "Fifth Supplemental Indenture"), in addition to a pledge of the City's unlimited tax full faith and credit; and

WHEREAS, the Emergency Manager desires the Debt Millage Revenues to constitute special revenues under Section 902 of the Bankruptcy Code and to afford the holders of the UTGO Bonds the protection provided to "pledged special revenues," as that term is used in Section 922(d) of the Bankruptcy Code.

WHEREAS, the MFA may distribute one or more preliminary official statements (together with any supplements thereto, each a "Preliminary Official Statement") and final official statements (together with any supplements thereto, each an "Official Statement") to the holders of the MFA Bonds; and

WHEREAS, the Emergency Manager also desires to authorize the submission of disclosure information to the MFA, as applicable, if necessary in connection with the issuance and delivery of the Municipal Obligation and the issuance and delivery of the MFA Bonds; and

WHEREAS, the MFA will require, as a condition precedent to accepting the Municipal Obligation, that the City agree to provide continuing disclosure as required by Section (b)(5) of Rule 15c2-12 ("Rule 15c2-12") promulgated by the Securities and Exchange Commission under the Securities and Exchange Act of 1934, as amended; and

WHEREAS, the Emergency Manager also desires to authorize the submission of disclosure information to the holders of the Stub UTGO Bonds, if necessary in connection with the secondary marketing, if any, of the Stub UTGO Bonds by the holders thereof on the Effective Date; and

WHEREAS, pursuant to the authority of Section 315(1)(d) of Act 34, the Emergency Manager desires to delegate to the Finance Director the authority to make certain determinations with respect to the Bonds, if necessary, within the parameters of this Order and to take such other actions and make such other determinations as may be necessary to accomplish the delivery of the Bonds and the transactions contemplated by this Order, as shall be confirmed by the Finance Director in the Supplemental Order; and

WHEREAS, prior to the issuance of the Bonds, pursuant to Sections 12(1) (u) and 19(1) of Act 436, the Emergency Manager must obtain the approval of the issuance of the Bonds by the City Council, and if the City Council disapproves of the issuance of the Bonds, the issuance of the Bonds must be approved by the Board.

NOW, THEREFORE, BE IT ORDERED BY THE EMERGENCY MANAGER OF THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN, PURSUANT TO THE CHARTER, ACT 34, ACT 227, ACT 279, AND ACT 436 AS FOLLOWS:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

Section 101. <u>Definitions</u>. The words and terms defined in the preambles and recitals hereof and the following words and terms as used in this Order shall have the meanings ascribed therein, herein or in the Plan of Adjustment unless a different meaning clearly appears from the context:

"Act 34" means Act 34, Public Acts of Michigan, 2001, as amended.

"Act 80" means Act 80, Public Acts of Michigan, 1981, as amended.

"Act 227" means Act 227, Public Acts of Michigan, 1985, as amended.

"Act 279" means Act 279, Public Acts of Michigan, 1909, as amended.

"Act 436" means Act No. 436, Public Acts of Michigan, 2012.

"Additional Bonds" shall mean any unlimited tax general obligation bonds issued under Act 279 on a parity with the Prior UTGO Bonds, the 2010A UTGO Bonds, the Municipal Obligation and the Stub UTGO Bonds as to the Aggregate UTGO Tax Levy.

"Aggregate UTGO Tax Levy" means all proceeds of the Debt Millage Revenues.

"Ambac" means Ambac Assurance Corporation.

"Assigned UTGO Bond Tax Proceeds" means that portion of the Aggregate UTGO Tax Levy designated to pay the principal of and interest on the Stub UTGO Bonds.

"Assured" means Assured Guaranty Municipal Corp. and Assured Guaranty Corp.

"Authorized Denominations" shall mean denominations of Bonds and Stub UTGO Bonds equal to multiples of $1.00.

"Authorized Officer" means (i) the Emergency Manager or his designee or successor, or if the City is no longer operating under a financial emergency pursuant to Act 436, the Mayor of the City, the Finance Director or his or her designee, or (ii) any other person authorized by a Certificate of an Authorized Officer to act on behalf of or otherwise represent the City in any legal capacity, which such certificate shall be delivered, if at all, in the City's sole discretion.

"Bankruptcy Case" means the City's Bankruptcy Case No. 13-53846 in the U.S. Bankruptcy Court for the Eastern District of Michigan.

"Bankruptcy Court Order" has the meaning set forth in the recitals hereto.

"Board" has the meaning set forth in the recitals hereto.

"Bond" or "Bonds" means the Municipal Obligations.

"Bond Counsel" means Miller, Canfield, Paddock and Stone, P.L.C., attorneys of Detroit, Michigan, or such other nationally recognized firm of attorneys experienced in matters pertaining to municipal bonds and appointed to serve in such capacity by the City with respect to the Bonds.

"Bond Insurer" means Ambac, Assured or NPFG, as the case may be, as an issuer of a bond insurance policy with respect to that portion of the Restructured UTGO Bonds such entity insures.

"Bond Orders" means collectively this Order and the Supplemental Order.

"Bond Registry" means the books for the registration of Bonds maintained by the Master Trustee.

"Bondowner", "Owner" or "Registered Owner" means, with respect to any Bond, the person in whose name such Bond is registered in the Bond Registry.

"Business Day" means a day which is not (i) a Saturday, Sunday or legal holiday on which banks located in either the State of Michigan or the state or states in which the principal corporate trust office of the Master Trustee, is located are authorized or required by law to be closed, or (ii) a day on which the New York Stock Exchange is closed.

"Charter" means the Charter of the City, as amended from time to time.

"City" means the City of Detroit, County of Wayne, State of Michigan.

"Closing Date" means the date or dates upon which the Restructured UTGO Bonds are transferred to the MFA in consideration for the MFA Bonds.

"Code" means the Internal Revenue Code of 1986, as amended.

"Constitution" means the Constitution of the State of Michigan of 1963, as amended.

"Council" means the City Council of the City of Detroit, Michigan.

"Debt Millage Deposit" or "Debt Millage Deposits" means whenever used herein singularly, each payment of Debt Millage Revenues, and collectively all payments of Debt Millage Revenues by the City to the Debt Millage Escrow Trustee for deposit in the UTGO Debt Millage Fund in accordance with the Debt Millage Escrow Agreement.

"Debt Millage Escrow Agreement" means the Debt Millage Deposit Escrow Agreement, between the City and the Debt Millage Escrow Trustee, for the collection of 100% of the City's unlimited tax general obligation bond debt millage.

"Debt Millage Escrow Trustee" means U.S. Bank National Association, Detroit, Michigan, as Debt Millage Escrow Trustee, and any successor to the Debt Millage Escrow Trustee substituted in its place pursuant to the provisions of the Debt Millage Escrow Agreement.

"Debt Millage Revenues" means the proceeds of the ad valorem debt millage levies, including interest subsidy payments received by the City in respect of the 2010A UTGO Bonds delinquent millage payments received from Wayne County, Michigan, or otherwise, pledged to and on account of unlimited tax general obligation bonds of the City for the payment of debt service on the Prior UTGO Bonds (or after the Effective Date, the UTGO Bonds), and the 2010A UTGO Bonds, the Municipal Obligation, the Stub UTGO Bonds and any Additional Bonds.

"Debt Retirement Fund" means the fund so designated and established under Section 501 hereof.

"Dissenting Bond Insurer" means Syncora Guarantee, Inc.

"Distributable Aid" has the meaning given in Act 80.

"DSA Bonds" means the City's $249,790,000 original principal amount Distributable State Aid General Obligation Limited Tax Bonds, Series 2010.

"Effective Date" has the meaning set forth in the recitals hereto.

"Fifth Supplemental Indenture" means the Fifth Supplemental Debt Retirement Trust Indenture, dated as of the date of issuance of the Bonds, between the City and the Master Trustee providing for the escrow of Distributable State Aid payments received by the Master Trustee on behalf of the City to pay the debt service on the Bonds.

"Finance Director" means the Finance Director of the City or his/her deputy or designee.

"First Lien Bonds" means the DSA Bonds.

"First Supplemental Indenture" means the First Supplemental Debt Retirement Trust Indenture dated as of March 1, 2010, between the City and the Master Trustee, providing for the

escrow of Distributable Aid payments received by the Master Trustee on behalf of the City to pay the debt service on the DSA Bonds.

"Fiscal Year" means the fiscal year of the City as in effect from time to time.

"Fourth Supplemental Indenture" has the meaning set forth in the recitals hereto.

"GRS" means General Retirement System for the City of Detroit.

"Income Stabilization Fund" means the Income Stabilization Funds as defined in the Plan of Adjustment.

"Interest Payment Date" has the meaning given such term in Section 302.

"Master Indenture" shall mean the Master Debt Retirement Trust Indenture dated as of March 1, 2010 by and between the City and U.S. Bank National Association, Detroit, Michigan, as Master Trustee, as supplemented by (i) the First Supplemental Indenture; (ii) the Second Supplemental Indenture; (iii) the Third Supplemental Indenture; (iv) the Fourth Supplemental Indenture; and (v) the Fifth Supplemental Indenture, by and between the City and the Master Trustee.

"Master Trustee" means U.S. Bank National Association, Detroit, Michigan, as Master Trustee under the Master Indenture, and successors to the Master Trustee substituted in its place pursuant to the provisions of the Master Indenture.

"Maximum Aggregate Principal Amount" has the meaning given such term in Section 201.

"MFA" means the Michigan Finance Authority, as successor to the Michigan Municipal Bond Authority.

"MFA Bonds" means has the meaning set forth in the recitals hereto.

"Municipal Obligation" has the meaning set forth in the recitals hereto.

"Non-Arbitrage and Tax Compliance Certificate" means the Non-Arbitrage and Tax Compliance Certificate of the City, dated the Closing Date, regarding rebate requirements and other tax responsibilities of the City relating to the Tax-Exempt Bonds under the Code.

"NPFG" means National Public Finance Guaranty Corporation.

"Order" means this Order of the Emergency Manager as supplemented by the Supplemental Order, and as amended from time to time pursuant to Article VII.

"Outstanding" when used with respect to:

(1)     the Bonds, means, as of the date of determination, the Bonds theretofore authenticated and delivered under this Order, except:

(A)     Bonds theretofore canceled by the Master Trustee or delivered to the Master Trustee for cancellation;

(B)     Bonds for whose payment money in the necessary amount, without the need for reinvestment thereof, has been theretofore deposited with the Master Trustee in trust for the registered owners of such Bonds;

(C)     Bonds delivered to the Master Trustee for cancellation in connection with (x) the exchange of such Bonds for other Bonds or (y) the transfer of the registration of such Bonds;

(D)     Bonds alleged to have been destroyed, lost or stolen which have been paid or replaced pursuant to this Order or otherwise pursuant to law; and

(E)     Bonds deemed paid as provided in Section 801.

"Permitted Investments" means those investments specified in Article III of the Debt Millage Escrow Agreement.

"Plan of Adjustment" has the meaning set forth in the recitals hereto.

"Plan Assignees" means the Income Stabilization Funds and the GRS.

"Prior DSA Bonds" means, collectively, the First Lien Bonds, the Second Lien Bonds and the Third Lien Bonds.

"Prior UTGO Bonds" has the meaning set forth in the recitals hereto.

"Pro Rata" means the proportion that a claim of one Holder of Restructured UTGO Bonds bears to the aggregate of all claims of all Holders of Restructured UTGO Bonds.

"Purchase Contract" means the purchase contract negotiated by the Finance Director between the City and the MFA, providing for the terms and conditions of the delivery of the Municipal Obligation to the MFA in anticipation of the transfer of the Restructured Bonds to the MFA in consideration for the MFA Bonds on the terms and conditions and in form and substance reasonably acceptable to the Bond Insurers.

"Regular Record Date" has the meaning given such term in Section 302.

"Restructured UTGO Bonds" has the meaning set forth in the recitals hereto.

"Second Lien Bonds" means the 2010A UTGO Bonds.

"Second Supplemental Indenture" has the meaning set forth in the recitals hereto.

"State" means the State of Michigan.

"State Treasurer" means the Treasurer of the State.

"Stub UTGO Bonds" has the meaning set forth in the recitals hereto.

"Supplemental Order" means, to the extent necessary, the order or orders of the Authorized Officer making certain determinations and/or confirming the final details of the Bonds upon the sale thereof in accordance with the parameters of this Order and the terms of the Purchase Contract.

"Tax-Exempt Bonds" means those Bonds, if any, the interest on which is excluded from gross income for federal tax purposes, as determined by the Authorized Officer in the Supplemental Order.

"Third Lien Bonds" has the meaning set forth in the recitals hereto.

"Third Supplemental Indenture" has the meaning set forth in the recitals hereto.

"UTGO Bonds" has the meaning in the recitals hereto.

"UTGO Bond Tax Levy" means that portion of the Aggregate UTGO Tax Levy at a level that was pledged to pay the Prior UTGO Bonds.

"UTGO Debt Millage Fund" means the fund so designated and authorized by Section 501 hereof and established under the Debt Millage Escrow Agreement.

"2010A UTGO Bonds" means the City's outstanding Distributable State Aid Second Lien Bonds (Unlimited Tax General Obligation), Series 2010(A).

Section 102. Interpretation. (a) Words of the feminine or masculine genders include the correlative words of the other gender or the neuter gender.

(b)     Unless the context shall otherwise indicate, words importing the singular include the plural and vice versa, and words importing persons include corporations, associations, partnerships (including limited partnerships), trusts, firms and other legal entities, including public bodies, as well as natural persons.

(c)     Articles and Sections referred to by number mean the corresponding Articles and Sections of this Order.

(d)     The terms "hereby, "hereof", "hereto", "herein", "hereunder" and any similar terms as used in this Order, refer to this Order as a whole unless otherwise expressly stated.

## ARTICLE II

## DETERMINATIONS

Section 201.    Finding, and Declaration of Need to Issue Bonds; Authorized Denominations. (a) The Emergency Manager hereby finds and declares that it is necessary for the City to restructure and refund (under applicable state law) $287,560,790 of the Prior UTGO Bonds which mature on or after April 1, 2015, by restructuring them as Restructured UTGO Bonds to be transferred to the MFA and in such form issuing them in the principal amounts as

shown on Exhibit B as Municipal Obligations, in Authorized Denominations and leaving $43,349,210 of the Prior UTGO Bonds remaining outstanding as Stub UTGO Bonds in Authorized Denominations as shown on Exhibit C, pursuant to and in accordance with the provisions of Act 34 and Act 279, for the purpose of satisfying the Class 8 claims as required by the Plan of Adjustment. The MFA Bonds will, in the aggregate, mature or be subject to mandatory redemption and optional redemption in the same principal amounts per maturity, and bear interest at the same interest rates as the Restructured UTGO Bonds.

(b)     On the Effective Date, that portion of the Aggregate UTGO Tax Levy designated to pay the principal of and interest on the Stub UTGO Bonds (but subject to the prior rights of the holders of the Municipal Obligation) (the "Assigned UTGO Bond Tax Proceeds") shall be assigned by the Plan of Adjustment (without any further consent or action on the part of, or additional consideration payable to, the Bond Insurers, the Dissenting Bond Insurer or the holders of the Stub UTGO Bonds) to the Plan Assignees, and such proceeds shall not be paid to the paying agent for the UTGO Bonds, but shall be paid to the Plan Assignees directly by the Debt Millage Escrow Trustee.

Section 202. Declaration of Borrowing. The City shall issue the Bonds as hereinafter provided and as finally confirmed by the Authorized Officer in the Supplemental Order, secured by the unlimited tax full faith, credit and resources of the City which will be payable from ad valorem taxes levied on all taxable property within the City without limitation as to rate or amount, for the purposes stated herein.

## ARTICLE III

## AUTHORIZATION, REDEMPTION AND ASSIGNMENT OF THE BONDS

Section 301. Authorization of Bonds and Pledge. (a)   The City hereby authorizes the issuance of the Bonds in such series and in such principal amounts as shall be confirmed in the Supplemental Order. The Bonds shall be payable from and secured, to the extent permitted by applicable law, including, without limitation, Section 12(1)(x) of Act 436, by a lien on the Debt Millage Revenues derived from an annual levy of ad valorem taxes on all taxable property in the City without limitation as to rate or amount. Pursuant to authorization provided in Act 227, the City hereby pledges as additional security for the payment of principal of and interest on the Bonds, Distributable Aid payments that the City is eligible to receive on a fourth lien basis subordinate to the pledge thereof for the payment of the Prior DSA Bonds. The Finance Director is hereby authorized and directed to negotiate, approve and execute the Fifth Supplemental Indenture for and on behalf of the City with U.S. Bank National Association, Detroit, Michigan, as Master Trustee, to provide for a fourth lien pledge of Distributable Aid to secure payment of the Bonds. Nothing in this Order shall restrict or be construed as restricting the City's ability to make additional pledges or assignments of Distributable Aid as security for current or future bonds or obligations of the City, subject to the requirements for the issuance of additional bonds and obligations set forth in the Master Indenture.

(b)     The Debt Millage Revenues as pledged by the City to secure payment of the Bonds, shall constitute "special revenues," as defined in Section 902 of the Bankruptcy Code and "pledged special revenues," as the term is used in Section 922(d) of the Bankruptcy Code.

Section 302.  Designations, Dates, Interest Rates, Maturities, Redemption and Other Terms of the Bonds and Stub UTGO Bonds.

(a)    The Bonds shall be designated as "DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BONDS (UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014 and may bear such later or earlier dates and additional or alternative designations as the Authorized Officer may determine in the Supplemental Order, shall be issued in fully registered form and shall be consecutively numbered from "R-1" upwards, respectively unless otherwise provided by the Authorized officer in the Supplemental Order.  The Bonds shall be dated and issued in Denominations all as determined by the Authorized Officer and confirmed by the Authorized Officer in the Supplemental Order.

(b)    The Bonds shall be issued in multiple separate series, each one corresponding to the related series of the Prior UTGO Bonds listed on Exhibit A hereto.  Each separate series of the Municipal Obligations shall be issued in a principal amount equal to 86.9% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds in Authorized Denominations as provided in Section 201(a).  Each series of Municipal Obligations shall be further subdivided into two subseries, with one subseries equal to 84.5% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds, in Authorized Denominations, and the second subseries equal to 2.4% of the outstanding principal amount of each maturity of the related series of Prior UTGO Bonds, in Authorized Denominations.

(c)    The Bonds and the Stub UTGO Bonds shall bear interest from _____, 201_, at the same interest rate per annum as the related Prior UTGO Bonds; be subject to amortization on the same schedule as the related Prior UTGO Bonds; mature on the same dates; and be subject to redemption in the same manner as the related Prior UTGO Bonds.  Unless otherwise provided by the Authorized Officer in the Supplemental Order, interest on the Bonds shall be calculated on the basis of a 360 day year consisting of twelve, 30 day months.  In the event that a calculation of interest is not an integral multiple of $0.01, the Paying Agent shall round all amounts less than or equal to $0.0049 down to the nearest $0.01 and round all amounts greater than $.0049 up to the nearest $0.01.  The Bonds shall be payable, as to principal and interest, in lawful money of the United States of America.

(d)    On or after the Effective Date, the Municipal Obligations shall be delivered to the MFA in consideration for bonds to be issued by the MFA (the "MFA Bonds") and the following additional provisions shall apply:

(1)    Each subseries of Municipal Obligations shall be in the form of a single fully-registered, nonconvertible bond in the denomination of the full principal amount thereof, dated as of the date of delivery of the Municipal Obligations, payable in principal installments serially shown on Exhibit B and approved by the MFA and the Authorized Officer.  The obligation to deliver the Municipal Obligations to the MFA shall be evidenced by execution of a Purchase Contract (the "Purchase Contract") between the City and the MFA providing for the transfer of the Municipal Obligations to the MFA in consideration for the MFA Bonds, and an Authorized Officer is authorized and directed to execute and deliver the Purchase Contract when it is in final form and to make the

determinations set forth above. An Authorized Officer is authorized and directed to approve of a series designation with respect to each series of Municipal Obligations.

(2) Each subseries of the Municipal Obligations shall not be convertible or exchangeable into more than one fully-registered bond. Principal of and interest on the Municipal Obligations shall be payable as provided in the Bond form in this Order as the same may be amended to conform to MFA requirements.

(3) The Master Trustee shall record on the registration books payment by the City of each installment of principal or interest or both when made and the cancelled checks or other records evidencing such payments shall be returned to and retained by the City Treasurer.

(4) Upon payment by the City of all outstanding principal of and interest on a Municipal Obligation, the MFA shall deliver the respective Municipal Obligation to the City for cancellation.

(e) Concurrently with the restructuring of a portion of the Prior UTGO Bonds and issuance of the MFA Bonds, the Stub UTGO Bonds, in Authorized Denominations as provided in Section 201(a), will be reinstated and remain Outstanding and will be payable from the UTGO Bond Tax Levy, provided that the Assigned UTGO Bond Tax Proceeds as assigned by the Plan of Adjustment shall be paid by the Debt Millage Escrow Trustee to the Plan Assignees and such proceeds shall not be paid to the paying agent for the Stub UTGO Bonds.

Section 303. Execution, Authentication and Delivery of Bonds. The Bonds shall be executed in the name of the City by the manual or facsimile signatures of the Mayor and the Finance Director and authenticated by the manual signature of the Finance Director, and the seal of the City (or a facsimile thereof) shall be impressed or imprinted on the Bonds. After the Bonds have been executed and authenticated for delivery, they shall be delivered by the Finance Director to the MFA in consideration for the issuance of the MFA Bonds.

Section 304. Authentication of the Bonds. Anything in this Order to the contrary notwithstanding, the Bonds bearing the manual or facsimile signatures of the Mayor and the Finance Director shall require no further authorization.

Section 305. The MFA's Depository. Notwithstanding any other provision herein to the contrary, as long as the MFA is the owner of the Bonds, the Bonds are payable as to principal, premium, if any, and interest at the corporate trust office of _____ _____, _____, Michigan, or such other qualified bank or financial institution as shall be designated in writing to the City by the MFA (the "Authority's Depository"). The City will deposit, or cause the Master Trustee, to deposit with the MFA's Depository payments of the principal of, premium, if any, and interest on the Bonds in immediately available funds at least five business days prior to the date on which any such payment is due whether by maturity, redemption or otherwise. Written notice of any redemption of the Bonds shall be given by the City and received by the MFA's Depository at least 40 days prior to the date on which such redemption is to be made.

Section 306.  Mutilated, Destroyed, Stolen or Lost Bonds.  (a)  Subject to the provisions of Act 354, Public Acts of Michigan, 1972, as amended and any other applicable law, if (i) any mutilated Bond is surrendered to the City, and the City receives evidence to its satisfaction of the destruction, loss or theft of any Bond and (ii) there is delivered to the City such security or indemnity as may be required by it to save the City harmless, then, in the absence of notice to the City that such Bond has been acquired by a bona fide purchaser, the City shall execute and deliver in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Bond, a new Bond of like tenor and principal amount, bearing a number not contemporaneously outstanding.

(b)    If any such mutilated, destroyed, lost or stolen Bond has become or is about to become due and payable, the City in its discretion may, instead of issuing a new Bond, pay such Bond.

(c)    Any new Bond issued pursuant to this Section in substitution for a Bond alleged to be mutilated, destroyed, stolen or lost shall constitute an original additional contractual obligation on the part of the City, and shall be equally secured by and entitled to equal proportionate benefits with all other Bonds of like tenor issued under this Order.

Section 307.  Form of the Bonds.  The Bonds shall be in substantially the following form with such insertions, omissions, substitutions and other variations as shall not be inconsistent with this Order or required by the Michigan Attorney General and the MFA or permitted by the Supplemental Order or as approved by an Authorized Officer and Bond Counsel:

[Form of Bond]

United States of America
State of Michigan
County of Wayne

CITY OF DETROIT
DISTRIBUTABLE STATE AID FOURTH LIEN RESTRUCTURED BOND
(UNLIMITED TAX GENERAL OBLIGATION), SERIES 2014__

REGISTERED OWNER:     Michigan Finance Authority

PRINCIPAL AMOUNT:     _____ Dollars ($___,000)

DATE OF ORIGINAL ISSUE:     _____, 2014

The CITY OF DETROIT, County of Wayne, State of Michigan (the "City"), for value received, hereby promises to pay to the Michigan Finance Authority (the "Authority"), or registered assigns, the Principal Amount shown above, in lawful money of the United States of America, unless prepaid prior thereto as hereinafter provided. Capitalized terms used herein, but not defined herein, shall have the meanings ascribed to them in the Order, as hereinafter defined.

The Principal Amount shall be payable on the dates and in the annual principal installment amounts set forth in Schedule A attached hereto and made a part hereof, or if a portion of the Principal Amount is prepaid as provided below, with interest on said principal installments from the [Date of Original Issue] shown above, until paid at the rate [of interest as set forth on the attached schedule] [of _____ percent (_____%) per annum]. Interest is first payable on _____ 1, 20__, and semiannually thereafter on the first day of _____ and _____ of each year, as set forth in the Purchase Contract.

Notwithstanding any other provision of this bond, as long as the MFA is the owner of this bond, (a) this bond is payable as to principal, premium, if any, and interest at the corporate trust office of _____, _____, _____, or at such other place as shall be designated in writing to the City by the MFA (the "Authority's Depository"); (b) the City agrees that it will cause the Master Trustee to deposit with the MFA's Depository payments of the principal of, premium, if any, and interest on this bond in immediately available funds at least five business days prior to the date on which any such payment is due whether by maturity, redemption or otherwise; and (c) written notice of any redemption of this bond shall be given by the City and received by the MFA's Depository at least 40 days prior to the date on which such redemption is to be made.

Additional Interest

[In the event of a default in the payment of principal or interest hereon when due, whether at maturity, by redemption or otherwise, the amount of such default shall bear interest

(the "additional interest") at a rate equal to the rate of interest which is two percent above the MFA's cost of providing funds (as determined by the MFA) to make payment on the bonds of the MFA issued to provide funds to purchase this bond but in no event in excess of the maximum rate of interest permitted by law. The additional interest shall continue to accrue until the MFA has been fully reimbursed for all costs incurred by the MFA (as determined by the MFA) as a consequence of the City's default. Such additional interest shall be payable on the interest payment date following demand of the MFA. In the event that (for reasons other than the default in the payment of any municipal obligation purchased by the MFA) the investment of amounts in the reserve account established by the MFA for the bonds of the MFA issued to provide funds to purchase this bond fails to provide sufficient available funds (together with any other funds which may be made available for such purpose) to pay the interest on outstanding bonds of the MFA issued to fund such account, the City shall and hereby agrees to pay on demand only the City's pro rata share (as determined by the MFA) of such deficiency as additional interest on this bond.]

This bond is a single, fully-registered, non-convertible bond in the principal sum of $___,000, issued pursuant to and in accordance with Act 34, Public Acts of Michigan, 2001, as amended, and Act 279, Public Acts of Michigan, 1909, as amended, Act 227, Public Acts of Michigan, 1985, as amended ("Act 227") and pursuant to and in accordance with an Order duly adopted by the Emergency Manager of the City on _____, _____ [and a Supplemental Order of the Authorized Officer of the City issued on _____, ____ (together,] the "Order"). The Bonds are issued for the purpose of restructuring certain unlimited tax general obligation bonds of the City as described in the Order, pursuant to the City's Plan of Adjustment under the Bankruptcy Case.

[Optional and/or Mandatory Redemption Provisions]

This Bond is payable out of the City's Debt Retirement Fund for this issue (which will be held by the Master Trustee), and the City is obligated to levy annually sufficient taxes to provide for the payment of the principal of and interest on the bonds of this issue as they mature on all taxable property in the City without limitation as to rate or amount (the revenues of such levy, the "Debt Millage Revenues").

The Bonds shall be payable from and secured, to the extent permitted by applicable law, including without limitation, Section 12(1)(x) of Act 436, by a lien on the Debt Millage Revenues.

The Debt Millage Revenues as pledged by the City to secure payment of the Bonds, shall constitute "special revenues," as defined in Section 902 of the Bankruptcy Code and "pledged special revenues," as the term is used in Section 922(d) of the Bankruptcy Code.

As additional security for the City's obligation to pay the Bonds, pursuant to Act 227 the City has pledged the payments that the City is eligible to receive from the State of Michigan under Act 140, Public Acts of Michigan, 1971, as amended ("Distributable Aid"), and certain monies in the funds and accounts established by the City with U.S. Bank National Association, as master trustee (the "Trustee"), pursuant to the terms and conditions of a Master Debt Retirement Trust Indenture dated as of March 1, 2010, as supplemented, by (i) the First Supplemental Debt Retirement Trust Indenture dated as of March 1, 2010; (ii) the Second

Supplemental Debt Retirement Trust Indenture dated as of December 1, 2010; (iii) the Third Supplemental Debt Retirement Trust Indenture dated as of March 1, 2012; (iv) the Fourth Supplemental Debt Retirement Trust Indenture dated as of August 1, 2012; and (v) the Fifth Supplemental Debt Retirement Trust Indenture, dated as of _____, 2014, by and between the City and the Master Trustee (collectively, the "Trust Indenture"). The pledge and lien on Distributable Aid securing the Bonds is on a fourth lien basis to a lien on Distributable Aid securing the City's outstanding Prior DSA Bonds. The City has reserved the right to make additional pledges or assignments of Distributable Aid on a prior, parity or subordinate basis with the pledge of Distributable Aid securing the Prior DSA Bonds and the Bonds as security for future bonds or obligations of the City, subject to the requirements for the issuance of additional bonds and obligations as provided in the Trust Indenture.

This bond is transferable only upon the registration books of the City by the registered owner of record in person, or by the registered owner's attorney duly authorized in writing, upon the surrender of this bond together with a written instrument of transfer satisfactory to the City duly executed by the registered owner or the registered owner's attorney duly authorized in writing, and thereupon a new registered bond or bonds in the same aggregate principal amount and of the same maturity shall be issued to the transferee in exchange therefor as provided in the resolution authorizing this bond and upon the payment of the charges, if any, therein prescribed.

It is hereby certified and recited that all acts, conditions and things required by law to be done, precedent to and in the issuance of this bond and the series of bonds of which this is one, exist and have been done and performed in regular and due form and time as required by law, and that the total indebtedness of the City, including this bond and the series of bonds of which this is one, does not exceed any constitutional, statutory or charter debt limitation.

IN WITNESS WHEREOF, the City of Detroit by authority of its Mayor, has caused this bond to be signed for and on its behalf and in its name by the manual or facsimile signature of the Mayor of the City and the manual or facsimile signature of its Finance Director and the official seal of the City to be impressed hereon, all as of the Date of Original Issue.

**CITY OF DETROIT**
County of Wayne
State of Michigan


By_____

Its Mayor




(SEAL)


By_____

Its Finance Director

## ARTICLE IV

## SPECIAL COVENANTS

Section 401. <u>Tax Exemption Covenant for Tax-Exempt Bonds</u>. The City covenants that it will not take any action, or fail to take any action required to be taken, if taking such action or failing to take such action would adversely affect the general exclusion from gross income of interest on any Tax-Exempt Bonds, from federal income taxation under the Code.

Section 402. <u>Arbitrage Covenant</u>. (a) The City will not directly or indirectly (1) use or permit the use of any proceeds of any Tax-Exempt Bonds or other funds of the City or (2) take or omit to take any action required by Section 148(a) of the Code in order to maintain the exclusion from gross income of the interest on any Tax-Exempt Bonds for federal income tax purposes. To that end, the City will comply with all requirements of Section 148 of the Code to the extent applicable to the Tax-Exempt Bonds and the requirements set forth in the Non-Arbitrage and Tax Compliance Certificate of the City.

(b) Without limiting the generality of subsection (a), above, the City agrees that there shall be paid by the City from time to time all amounts, if any, required to be rebated to the United States pursuant to Section 148(f) of the Code. This covenant shall survive payment in full or defeasance of the Tax-Exempt Bonds.

(c) Notwithstanding any provision of this Section, if the City obtains an opinion of Bond Counsel to the effect that any action required under this Section is no longer required, or that some further action is required, to maintain the exclusion from gross income of the interest of any Tax-Exempt Bonds for federal income tax purposes pursuant to Section 103 of the Code, the City may conclusively rely on such opinion in complying with the provisions hereof.

## ARTICLE V

## FUNDS AND ACCOUNTS; DISPOSITION OF BOND PROCEEDS

Section 501. <u>Establishment of Accounts and Funds</u>. (a) The City hereby establishes and creates the following special, separate and segregated accounts and funds which shall be held in trust by the Master Trustee for the benefit of the Bondholders:

     A.    Debt Retirement Fund; and
     B.    Series 2014 Escrow Fund.

(b) Pursuant to Section 201(b) of the Fifth Supplemental Indenture, the Master Trustee shall establish within the Series 2014 Escrow Fund, the separate and segregated sub-accounts designated the "Distributable Aid Account," the "Series 2014 Tax Levy Account" and the "General Account," the deposits into which and withdrawals from which shall be governed by Article II of the Fifth Supplemental Indenture.

(c) The UTGO Debt Millage Fund shall be established with the Debt Millage Escrow Trustee by the Finance Director of the City under the Debt Millage Escrow Agreement which is

hereby authorized. The Finance Director is hereby authorized to negotiate the terms of the Debt Millage Escrow Agreement and to execute and deliver it for and on behalf of the City. The Finance Director is further hereby authorized to establish such accounts, subaccounts or other funds as shall be required for the Bonds, if any, to accommodate the requirements of such series of Bonds.

Section 502. <u>Debt Retirement Fund-All Bonds</u>. Proceeds of the Debt Millage Revenues levied pursuant to Section 301 hereof and transferred by the Debt Millage Escrow Trustee to the Master Trustee in accordance with the terms of the Debt Millage Escrow Agreement shall be used to pay the principal of and interest on the Bonds when due. The foregoing amounts shall be placed in the Debt Retirement Fund and held in trust by the Master Trustee, and so long as the principal of or interest on the Bonds shall remain unpaid, no moneys shall be withdrawn from the Debt Retirement Fund except to pay such principal and interest. Any amounts remaining in the Debt Retirement Fund after payment in full of the Bonds shall be retained by the City to be used for any lawful purpose.

Section 503. <u>Debt Retirement Fund – Series 2014 Escrow Fund</u>. As additional security for Bonds, Distributable Aid payments to be received by the City from time to time shall be distributed by the State Treasurer to the Master Trustee and deposited by the Master Trustee in the Debt Retirement Fund (designated the "Distributable State Aid – Common Debt Retirement Fund" in the Master Indenture), and allocated and set-aside by the Master Trustee into the Series 2014 Escrow Fund in accordance with the provisions of the Master Indenture and the related Fifth Supplemental Indenture for the payment of the principal of and interest on the Bonds when due. Any amounts remaining in the Debt Retirement Fund after the setting aside of the amounts necessary to satisfy the Deposit Date Balance Requirements (defined in the Master Indenture) of all DSA Escrow Funds (defined in the Master Indenture), shall be released to the City for deposit to the General Fund of the City.

Section 504. <u>Investment of Monies in the Funds and Accounts</u>. (a) The Finance Director shall direct the investment of monies on deposit in the Funds and Accounts established hereunder, and the Master Trustee, upon written direction or upon oral direction promptly confirmed in writing by the Finance Director, shall use its best efforts to invest monies on deposit in the Funds and Accounts in accordance with such direction.

(b) Monies on deposit in the Funds and Accounts may be invested in such investments and to the extent permitted by applicable law.

## ARTICLE VI

## THE MASTER TRUSTEE

Section 601. <u>Master Trustee</u>. Except as otherwise required by the MFA, the Master Trustee for the Bonds shall act as bond registrar, transfer agent and trustee for the Bonds, and shall be initially U.S. Bank National Association, Detroit, Michigan, or such other bank or trust company located in the State of Michigan which is qualified to act in such capacity under the laws of the United States of America or the State of Michigan. The Master Trustee means and includes any company into which the Master Trustee may be merged or converted or with which

it may be consolidated or any company resulting from any merger, conversion or consolidation to which it shall be a party or any company to which the Master Trustee may sell or transfer all or substantially all of its corporate trust business, provided, that such company shall be a trust company or bank which is qualified to be a successor to the Master Trustee as determined by the Finance Director, shall be authorized by law to perform all the duties imposed upon it by this Order, and shall be the successor to the Master Trustee without the execution or filing of any paper or the performance of any further act, anything herein to the contrary notwithstanding. The Finance Director is authorized to enter into a Fifth Supplement to the Master Trust Indenture in the form of a Fifth Supplemental Indenture with the Master Trustee, and from time to time as required, may designate a similarly qualified successor Master Trustee and enter into an agreement therewith for such services.

Section 602. <u>Fifth Supplemental Indenture</u>.  The Authorized Officers are each hereby authorized and directed on behalf of the City to take any and all other actions and perform any and all acts that shall be required, necessary or desirable to enter into and implement the Fifth Supplemental Indenture with the Master Trustee, including, but not limited to, entering into an agreement with the State Treasurer in accordance with Act 227 to provide for the direct payment of Distributable Aid by the State Treasurer to the Master Trustee as additional security for the Bonds.

**ARTICLE VII**

**SUPPLEMENTAL ORDERS OR RESOLUTIONS**

Section 701. <u>Supplemental Orders or Resolutions Not Requiring Consent of Holders of the Bonds</u>.  The City may with the prior written consent of the Bond Insurers, which in the opinion of the independent Bond Counsel are affected by such order or resolution, but without the consent of any Bondowner, adopt orders or resolutions supplemental to this Order for any one or more of the following purposes:

(i)  to confirm or further assure the security hereof or to grant or pledge to the holders of the Bonds any additional security;

(ii)  to add additional covenants and agreements of the City for the purposes of further securing the payment of the Bonds;

(iii)  to cure any ambiguity or formal defect or omission in this Order;

(iv)  to amend provisions in the Order relating to rebate to the United States Government or otherwise, which in the opinion of Bond Counsel are required in order to maintain the exclusion of interest on the Tax-Exempt Bonds from gross income for federal income tax purposes; and

(v)  such other action not materially, adversely and directly affecting the security of the Bonds;

provided that the effectiveness of any supplemental order or resolution is subject to Section 702 to the extent applicable.

Section 702.  <u>Opinion and Filing Under Act 34</u>.  Before any supplemental order or resolution under this Article shall become effective, a copy thereof shall be filed with the Master Trustee, together with an opinion of Bond Counsel that such supplemental order or resolution is authorized or permitted by this Article; provided that Bond Counsel in rendering any such opinion shall be entitled to rely upon certificates of the Finance Director or other City official, and opinions or reports of consultants, experts and other professionals retained by the City to advise it, with respect to the presence or absence of facts relative to such opinion and the consequences of such facts.

## ARTICLE VIII

## DEFEASANCE

Section 801.  <u>Defeasance</u>.  Bonds shall be deemed to be paid in full upon the deposit in trust of cash or direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States of America, or any combination thereof, not redeemable at the option of the issuer thereof, the principal and interest payments upon which, without reinvestment thereof, will come due at such times and in such amounts, as to be fully sufficient to pay when due, the principal of such Bonds and interest to accrue thereon, as confirmed by a verification report prepared by an independent certified public accountant; provided, that if any of such Bonds are to be called for redemption prior to maturing, irrevocable instructions to call such Bonds for redemption shall be given only with the prior written consent of the MFA and on such terms as may be required by the MFA.  Such cash and securities representing such obligations shall be deposited with a bank or trust company and held for the exclusive benefit of the Owners of such Bonds.  After such deposit, such Bonds shall no longer be entitled to the benefits of this Order (except for any rights of transfer or exchange of Bonds as therein or herein provided for) and shall be payable solely from the funds deposited for such purpose and investment earnings, if any, thereon, and the lien of this Order for the benefit of such Bonds shall be discharged.

## ARTICLE IX

## OTHER PROVISIONS OF GENERAL APPLICATION

Section 901.  <u>Approval of Other Documents and Actions</u>.  The Mayor, the Finance Director, the Treasurer and the City Clerk are hereby authorized and directed on behalf of the City to take any and all other actions, perform any and all acts and execute any and all documents that shall be required, necessary or desirable to implement this Order.

The Finance Director is authorized to file applications with and to pay the related fees, if any, to the Michigan Department of Treasury at his discretion under Act 34 for an Order or Orders of Approval to issue all or a portion of the Bonds, and apply for such waivers or other Treasury approvals as necessary to implement the issuance, delivery and security for the Bonds, and as required by the Michigan Department of Treasury and Act 34.  The Finance Director is authorized and directed to apply for ratings on the Bonds, if necessary, and pay any post closing filing fees required by Act 34 to the Michigan Department of Treasury or other specified agency, from legally available funds.

Section 902.  Continuing Disclosure Undertaking.  The City shall enter into a continuing disclosure undertaking pursuant to Rule 15c2-12 promulgated by the Securities and Exchange Commission (the "Rule") for the benefit of the MFA and the holders and beneficial owners of the MFA Bonds in connection with the delivery of the Bonds as to which the Rule is applicable, as more specifically set forth in Exhibit D hereto (the "Undertaking"); provided, however, that the terms of the Undertaking are subject to completion and modification prior to delivery of the Bonds by the Finance Director to such extent as the Finance Director shall deem necessary to comply with law or market requirements.  The Finance Director is authorized to execute and deliver the Undertaking after completion and modification as provided in this Order and the Supplemental Order.

Section 903.  Delegation of City to, and Authorization of Actions of the Mayor and the Finance Director.  (a) Prior to the delivery date for the Bonds, the Finance Director may cause the preparation and approve the form and distribution of City disclosure, if necessary, for any Preliminary Official Statement or Official Statement of the MFA and offering materials to be used in conjunction with the transfer of the Municipal Obligations to the MFA in form and substance reasonably acceptable to the Bond Insurers, and the issuance of the MFA Bonds, and the Mayor or Finance Director shall deem the City's disclosure "final" for purposes of Rule 15c2-12 of the Securities and Exchange Commission.

(b)    The Finance Director is hereby authorized and directed to do and perform any and all acts and things with respect to the Bonds which are necessary and appropriate to carry into effect, consistent with this Order, the authorizations therein and herein contained, including without limitation, the securing of ratings by bond rating agencies, if cost effective, the negotiation for and acquisition of bond insurance and/or other credit enhancement, if any, to further secure the Bonds or any portions thereof, the acquisition of an irrevocable surety bond to fulfill the City's obligation to fund any reserve account, the printing of the Bonds and the incurring and paying of reasonable fees, costs and expenses incidental to the foregoing and other costs of issuance of the Bonds including, but not limited to fees and expenses of bond counsel, financial advisors, accountants and others, from Bond proceeds or other available funds, for and on behalf of the City.

(c)    Except as otherwise provided herein, all determinations and decisions of the Finance Director with respect to the issuance and sale of the Bonds as permitted or required by this Order shall be confirmed by the Authorized Officer in a Supplemental Order or Supplemental Orders, and such confirmations shall constitute determinations that any conditions precedent to such determinations and decisions of the Authorized Officer have been fulfilled.

Section 904.  Act 34 Approval of the Bonds.  The Bonds shall neither be issued nor delivered unless and only so long as the issuance of the Bonds as provided herein shall have been authorized and approved in accordance with the applicable provisions of Act 34.

Section 905.  Approving Legal Opinions with Respect to the Bonds.  Transfer of the Bonds to the MFA shall be conditioned upon receiving, at the time of delivery, the approving opinion of Bond Counsel, approving legality of the Bonds and, with respect to Bonds determined by the Finance Director to be issued on a tax-exempt basis, the exclusion from gross income of the interest paid thereon from federal and State income taxation only.