UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


| | | |
|---|---|---|
| IN RE:  CITY OF DETROIT, | . | Docket No. 13-53846 |
| MICHIGAN, | . | |
| | . | Detroit, Michigan |
| | . | December 15, 2014 |
| Debtor. | . | 10:00 a.m. |

. . . . . . . . . . . . . . .


HEARING RE. (#8272) STATUS CONFERENCE RE. ORDER
CONFIRMATION EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS
OF THE CITY OF DETROIT; (#7581) MOTION TO FILE LATE CLAIM
BEFORE THE HONORABLE STEVEN W. RHODES
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

| | |
|---|---|
| For the Debtor: | Jones Day<br>By:  JEFFREY ELLMAN<br>1420 Peachtree Street, N.E., Suite 800<br>Atlanta, GA  39309<br>(404) 581-8309 |
| For the City of<br>Detroit –<br>Corporation<br>Counsel: | City of Detroit Law Department<br>By:  MELVIN HOLLOWELL<br>      CHARLES RAIMI<br>2 Woodward Avenue, Suite 500<br>Detroit, MI  48226<br>(313) 224-4550 |
| For AFSCME: | Miller Cohen, PLC<br>By:  RICHARD MACK, JR.<br>6700 West Lafayette Blvd., 4th Floor<br>Detroit, MI  48226-3191<br>(313) 566-4787 |
| For Thomasena<br>Barge: | THOMASENA BARGE<br>In pro per |

```
Court Recorder:      Kristel Trionfi
                     United States Bankruptcy Court
                     211 West Fort Street
                     21st Floor
                     Detroit, MI  48226-3211
                     (313) 234-0068

Transcribed By:      Lois Garrett
                     1290 West Barnes Road
                     Leslie, MI  49251
                     (517) 676-5092
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1      THE CLERK:  All rise.  Court is in session.  Please
2  be seated.  Case Number 13-53846, City of Detroit, Michigan.
3      THE COURT:  Good morning.
4      MR. ELLMAN:  Good morning, your Honor.  Jeffrey
5  Ellman from Jones Day on behalf of the city.  We're here on a
6  status conference, and there are a couple of items before the
7  Court today.  I guess I would defer to your Honor how you'd
8  like to proceed and what you'd like to cover today in what
9  order.
10      THE COURT:  I think I'd first like to set the
11  procedure to close out the issue of the disclosure and
12  reasonableness of fees.
13      MR. ELLMAN:  Okay, your Honor.
14      THE COURT:  I had suggested to you all a proposed
15  order.  It struck me that the only addition to that proposed
16  order that would be necessary perhaps even at the very
17  beginning of it is a date by which the city would make a full
18  and final disclosure of the fees as required.  Do you have
19  any comments regarding this order?
20      MR. ELLMAN:  Well, your Honor, I think the process
21  at the end of the day is obviously up to the Court.  I think
22  our view of this, since this order was presented some things
23  have happened, the main one of which is the completion of a
24  mediation which was conducted here on the 3rd and 4th, and I
25  think there was a subsequent day after that.  Our view of

1  this order, I think, is that there has been a rigorous
2  process with the fee examiner.  There has now been a fully
3  vetted mediation that I believe has led to resolution of the
4  issues among the parties that the city participated in
5  through the mayor, and obviously the mediators were very
6  instrumental, and the fee examiner participated.  We've had
7  numerous opportunities for parties to participate through the
8  confirmation process.  It is ultimately a confirmation issue,
9  and, of course, the fee reports have been filed routinely.
10  And your Honor has put in place a procedure to expedite the
11  review of fees through at least September and the filing of
12  these through November, December, so the only thing I would
13  say about this order is it doesn't seem to me that we need
14  more parties to comment.  I do think that it is appropriate
15  for your Honor to review what has happened and to review the
16  settlements and review the reports of the fee examiner, and
17  there should be a procedure to do that.  How your Honor would
18  like to do that obviously is up to the Court because the
19  Court needs to feel comfortable that the settlements are
20  appropriate, that the fees have been disclosed, so our only
21  real comment on this process I think is that I think that can
22  be somewhat expedited in the sense that the mediation is
23  concluded and I believe has resolved the issues with respect
24  to all the professionals who were participants in that.
25           THE COURT:  All right.  Thank you.

1          MR. HOLLOWELL:  Good morning, your Honor.  Melvin

2    Butch Hollowell, corporation counsel.  I agree with Mr.

3    Ellman, and it was -- I wanted to thank Judge Rosen for the

4    mediation process.  We do believe the Bankruptcy Code

5    requires the disclosure of the fees and expenses, and then

6    this Court -- we would then put it in a report and just file

7    it with your Honor for the determination as to whether or not

8    the fees are reasonable.  We do believe that we've come up

9    with a resolution of all the claims.  It certainly is within

10   your Honor's discretion as to whether or not it would be

11   opened up for comment and whatever reasonable period of

12   comment that that would be.  I would ask that, though, in the

13   procedure that's outlined for this reasonableness

14   determination that we get all of the professionals to submit

15   their final invoices through the stub period through December

16   10, the confirmation date, and that would help greatly in

17   making sure --

18          THE COURT:  The effective date?

19          MR. HOLLOWELL:  The effective date, so that we can

20   make sure that all the I's are dotted and the T's are

21   crossed.

22          THE COURT:  So you foresee getting final statements

23   from the professionals and then submitting a report to the

24   Court?

25          MR. HOLLOWELL:  I think that would be best because

1   then it would be all-inclusive, Judge.

2           THE COURT:  Um-hmm.  Okay.  So what dates for that

3   would you suggest?

4           MR. HOLLOWELL:  Well, I would say, again, if we

5   could get a -- you know, within a week maybe of today of the

6   final invoices through the effective date, and then we can

7   reconcile that with the settlements that we've reached in

8   each one of the cases and then have a report prepared for

9   your Honor within five days of that.  The report is largely

10  prepared.  We just need to plug in the numbers and make

11  sure --

12          THE COURT:  Right.

13          MR. HOLLOWELL:  -- that the numbers are right.

14          THE COURT:  Okay.  Mr. Ellman, do you have any

15  objection to that?

16          MR. ELLMAN:  I don't have an objection to filing our

17  final bill through the effective date in the next week or so.

18  The only thing I will just point out, depending on what we

19  consider a final bill, there are expenses that invoices come

20  in that we have to pay over time.  They don't always come in

21  immediately on the date that -- as of a certain date, so --

22          THE COURT:  Well, perhaps you can estimate them as

23  best you can.

24          MR. ELLMAN:  So we will just have to reserve our

25  right to deal with that issue because we can't really control

1  that, but other than that, I think it would be appropriate

2  for us to get those bills submitted.

3        THE COURT:  Would anyone in the courtroom like to

4  address Mr. Hollowell's suggestion?  All right.  In the

5  circumstances then, I will enter an order requiring final fee

6  and expense statements to be submitted to the city within

7  seven days and for the city to file its final disclosure of

8  the fees within five days after that.  I think what I'll do

9  then is have a look at what is submitted and then determine

10  what further process is required to determine reasonableness.

11        MR. HOLLOWELL:  Your Honor --

12        THE COURT:  Sir.

13        MR. HOLLOWELL:  -- if I may also -- I would assume

14  that the confidentiality order as it relates to mediation is

15  still in place --

16        THE COURT:  Yes.

17        MR. HOLLOWELL:  -- and that there should not be any

18  discussion as to what is in that whatsoever.  Wanted to

19  confirm that with the Court.

20        THE COURT:  Right.  Absolutely.

21        MR. HOLLOWELL:  Thank you, Judge.

22        THE COURT:  All right.  Let's move on then --

23        MR. ELLMAN:  With that, your Honor -- I'm sorry.

24  Jeffrey Ellman again.  Just so I understand, the final report

25  that'll be filed, is it the intention of the Court that the

1  settlements that were achieved in mediation will be somehow

2  submitted?  I realize they are subject to a mediation order.

3  We have not disclosed certainly ours to anyone.  They have

4  been filed.

5         THE COURT:  Well, the results of the mediation,

6  which are subject to court approval, do have to be disclosed.

7         MR. ELLMAN:  And is that the intention that this

8  will be in the report that --

9         THE COURT:  Yes.

10         MR. ELLMAN:  -- is to be filed?

11         THE COURT:  Yes, not the discussions that led up to

12  them or the considerations that led up to them, but the

13  results of the mediation are subject to court approval.

14         MR. ELLMAN:  Fair enough.  I just wanted to make

15  sure --

16         THE COURT:  All right.  Thank you for clarifying

17  that.

18         MR. ELLMAN:  -- that was appropriate.  Thank you.

19         MR. RAIMI:  Charles Raimi.  Just one point of

20  clarification on the numbers.  So that will be a list, firms,

21  fees, expenses.

22         THE COURT:  Yes.

23         MR. RAIMI:  Okay.

24         THE COURT:  All of the firms whose fees have been

25  required to be paid by the city, including those for the

1  pension plans which the Court previously ruled on, would be

2  included in this.  Okay?  It also includes the fee examiner

3  and the court-appointed expert.

4         Now, Mr. Ellman, you had discussed briefly before

5  issues regarding estimations of claims in Class 14.  Can you

6  bring me up to date on what the latest is with that?

7         MR. ELLMAN:  I can, your Honor, yes.  We have a

8  motion that we are in very good shape, I would say, in

9  preparing.  The open issue is the detailed estimates by

10  claim, which we've been working with the city law department

11  on, primarily because the largest group of these claims are,

12  in fact, the litigation-related claims that were subject to

13  the ADR process and the settlement process.  A number of

14  these matters the stay has been lifted.  So I would say we

15  have from the city now -- it's a very large project, I think,

16  to go through these claims and to get them organized, but I

17  would say from the city we have the substantial majority of

18  the information we need.  We were looking at this last week,

19  and it looks like there's still some follow-up on a small

20  number -- a moderate number, I would say, of claims we will

21  need to confirm the appropriate treatment.  My belief is --

22  in the plan is to have something filed before Christmas so

23  the Court can consider that early in the new year and we can

24  move forward with the distributions.

25         THE COURT:  Okay.  Thank you.  If there will be any

1    change in that, could you please let my office know?

2              MR. ELLMAN:  I will certainly do that, yes.

3              THE COURT:  All right.  It's been announced that the

4    plan did become effective.  Is there anything else in regard

5    to plan implementation to put on the record at this time?

6              MR. ELLMAN:  Not unless the Court has questions.  We

7    did become -- we did go effective, as the Court is well

8    aware, and there are certainly some post-closing items that

9    are being addressed but nothing that we believe is necessary

10   for the Court to consider today.

11             THE COURT:  Okay.  No.  I don't have any questions.

12             MR. ELLMAN:  Okay.  Thank you.

13             THE COURT:  We do have the motion for abstention

14   that was filed on behalf of AFSCME and the coalition of

15   Detroit unions.

16             MR. ELLMAN:  Correct.

17             THE COURT:  Has the city responded to that motion

18   yet?

19             MR. ELLMAN:  No.  Responses are due tomorrow.  We

20   will file a response either late today or first thing

21   tomorrow is our plan.  The hearing is on Wednesday.  We do

22   intend to respond.  We have a draft that is --

23             THE COURT:  Okay.

24             MR. ELLMAN:  -- the city is reviewing.

25             THE COURT:  Since your response has not yet been

1   filed, it's unrealistic to go to a hearing on Wednesday --

2          MR. ELLMAN:  Okay.

3          THE COURT:  -- so we'll have to find a new date for

4   that.

5          MR. ELLMAN:  Okay.  I apologize, your Honor.  This

6   was -- it was noticed for a response tomorrow, so we --

7          THE COURT:  I know.  I know.

8          MR. ELLMAN:  We intended to file it early today,

9   but --

10         THE COURT:  So I'll have to consult with my staff

11  and look at my schedule to come up with a new date.  Is Mr.

12  Mack here?  Can I have your attention for just a moment, sir?

13  Can the two of you just sort of -- or whoever tell me just

14  generally what your availability is in the next two or three

15  weeks?  Are you around, or are there periods of time that we

16  should not consider for this hearing?

17         MR. MACK:  If you'd give me one moment, your Honor.

18  Let me get my --

19         THE COURT:  Sure.

20         MR. ELLMAN:  Your Honor, from my perspective, I

21  believe the end of this week on Friday and probably the first

22  couple of days -- I don't have a calendar in front of me, but

23  I don't know when -- before Christmas Eve basically.

24         THE COURT:  Okay.

25         MR. ELLMAN:  But I don't have -- you know, I think

1  there's -- how about Monday, Tuesday next week perhaps?

2          THE COURT:  I'll open up my calendar, and we'll see

3  here.

4          MR. MACK:  Monday or Tuesday of next week works for

5  me as well, your Honor.

6          MR. ELLMAN:  I think that does.  If I'm permitted to

7  turn my device on, I can confirm it, but I believe it does.

8          THE COURT:  All right.  Well, why don't we schedule

9  it for next Monday, the 22nd, then?  Is that okay?

10          MR. ELLMAN:  I believe so, again, subject to

11  confirming my calendar.

12          THE COURT:  Okay.  What time suits you all?

13          MR. ELLMAN:  Right.  To the convenience of the

14  Court, yeah, any time.

15          MR. MACK:  Ten o'clock works.

16          THE COURT:  All right.  Ten o'clock it is then.  If

17  that time doesn't work for you, let us know, Mr. Ellman.

18          MR. ELLMAN:  I don't know what the rules are.

19          THE COURT:  Oh, yeah.  You have it right there?

20          MR. ELLMAN:   If I'm permitted to turn my device on,

21  I will --

22          THE COURT:  Sure.  Okay.  Yeah.  Go ahead.

23          MR. ELLMAN:  I turn it off routinely.

24          THE COURT:  Go ahead.  Check it right now then.

25          MR. ELLMAN:  Thank you.

1    MR. MACK:  I apologize.  I guess I presumed it was
2  okay to turn mine on, so -- didn't mean to make --
3          THE COURT:  It is okay to turn them on.  What's not
4  okay is for them to emit distracting sounds.
5          MR. ELLMAN:  I hope it doesn't.  So I presume, your
6  Honor, that filing our paper by tomorrow is still
7  acceptable --
8          THE COURT:  Yes, yes, absolutely.
9          MR. ELLMAN:  -- for that schedule.  Okay.  Well, my
10  device is now on, so if you'll give me one moment.  Okay.
11  That's the 22nd.
12          THE COURT:  Yes, please.
13          MR. ELLMAN:  And that will be perfectly fine for my
14  calendar.
15          MR. MACK:  That works.
16          MR. ELLMAN:  Thank you.
17          THE COURT:  Okay.  See you then.  Okay.  Is there
18  anything that anyone else would like to bring up in terms of
19  status conference matters?
20          MR. ELLMAN:  Well, I believe -- I don't know.  Oh,
21  Ms. Barge is here.  I believe we were going to talk about Ms.
22  Barge's claim again.
23          THE COURT:  Yes.
24          MR. ELLMAN:  I intended to get here early to speak
25  with her before the hearing, but the security line delayed me

1  a bit, so I haven't spoken to her today.  We have

2  communicated with her by telephone and by letter from the

3  Retiree Committee.  I don't know if you'd like me --

4         THE COURT:  Would you like me to sit here for a

5  moment while you communicate with her off line?

6         MR. ELLMAN:  Well, really the question ultimately

7  is -- the question we didn't get answered when we talked to

8  Ms. Barge is whether she was satisfied with the information

9  we provided.  We did our best working with the --

10        THE COURT:  Right.

11        MR. ELLMAN:  -- Retirement Systems and the committee

12  and ourselves to answer as many questions as we could -- as

13  we could come up with answers for, and the question is

14  with --

15        THE COURT:  Let me just sit here while you talk with

16  her, and you'll let me know when you're ready.

17        MR. ELLMAN:  Okay.  Thank you.

18        THE COURT:  Sir.

19        MR. ELLMAN:  Your Honor, Jeffrey Ellman again for

20  the city.  I thank you for your patience in that delay.  We

21  did spend some time talking to Ms. Barge obviously in the

22  other room.  She is I think understandably upset with the

23  situation, but I think she does understand and I think she's

24  comfortable that her pension will continue at the level that

25  the plan provides.  She has some concerns about the income

1   stabilization process, especially since she doesn't have tax

2   returns.  Mr. Gallagher from Clark Hill on behalf of the

3   Retirement Systems was with me and explained to her how we

4   can help her with the information she'll need to submit to

5   the state.  She already has submitted the forms, but there is

6   some additional follow-up, so we've committed to do that for

7   her.  I know she also was particularly upset that the letter

8   that Ms. Neville sent her, not so much the content of it, but

9   was -- her name was misspelled on the letter, so we certainly

10  apologize for that, but beyond that I believe we've answered

11  her questions at this point, and she does not appear to wish

12  to address the Court, but she is still here if the Court has

13  questions.

14          THE COURT:  Okay.  Ms. Barge, is there anything

15  you'd like to say to the Court at this time?

16          MS. BARGE:  Good morning.  Good morning, your Honor.

17  And I just want to briefly say I thank you for letting me

18  have a voice, and I didn't want to not appear today and

19  disrespect you, and that's the main reason I'm here today.

20          THE COURT:  Okay.

21          MS. BARGE:  Now, I'm not totally satisfied with

22  everything, but the attorneys did write me an extensive

23  letter and explained it, and I do understand it.

24          THE COURT:  Okay.

25          MS. BARGE:  But I just wanted to say thank you so

1   much.

2           THE COURT:  Well, you're welcome.

3           MS. BARGE:  All right now.

4           THE COURT:  Anything further for today then?

5           MR. ELLMAN:  No, your Honor.  Thank you.

6           THE COURT:  All right.  We're in recess.

7           THE CLERK:  All rise.  Court is adjourned.

8       (Proceedings concluded at 10:24 a.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


      I certify that the foregoing is a correct transcript from the sound recording of the proceedings in the above-entitled matter.


/s/ Lois Garrett          December 21, 2014
_____     _____
Lois Garrett