# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:                                              Chapter 9

City of Detroit, Michigan,                          Case No. 13-53846

    Debtor.                     Hon. Steven W. Rhodes

_____/

**AFFIDAVIT OF PUBLICATION OF THE NOTICE OF (I) ENTRY OF ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT AND (II) OCCURRENCE OF EFFECTIVE DATE IN THE DETROIT NEWS & THE DETROIT FREE PRESS**

# AFFIDAVIT OF DISTRIBUTION

STATE OF __Michigan__

COUNTY OF __Wayne__

I, __Jennifer Blonde__, being duly sworn on oath say he/she is and during all times herein stated has been the publisher of the publisher's designated agent in charge of the publication known as

__The Detroit News & The Detroit Free Press__ ("Publisher")

And has full knowledge of the facts herein stated as follows:

The ad for __City of Detroit__ ("Advertiser") was distributed to Publisher's full circulation on the __18th__ day of __December__, 20__14__.

By: _____

Subscribed and sworn to before me
this __19__ day of __DECEMBER__, 20__14__.    Notary Seal:

_____
Notary Public

K.A. MARZOLF
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Dec 9, 2020
ACTING IN COUNTY OF __WAYNE__

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

In re
CITY OF DETROIT, MICHIGAN,
    Debtor.

Chapter 9
Case No. 13-53846
Hon. Steven W. Rhodes

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT AND (II) OCCURRENCE OF EFFECTIVE DATE**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. **Confirmation of the Plan and Occurrence of the Effective Date.** On November 12, 2014, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. 8272) (the "Confirmation Order") confirming the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (as it may have been amended, supplemented or modified, the "Plan"). In the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"). The Effective Date of the Plan occurred on December 10, 2014. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan or the Confirmation Order.

2. **Discharge of Claims.**

   a. Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for, and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on such Claims from and after the Petition Date. Except as provided in the Plan or the Confirmation Order, as of the Effective Date, the City is discharged from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt was Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt was allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt accepted the Plan.

   b. In accordance with the foregoing, except as expressly provided otherwise in the Plan or the Confirmation Order, the Confirmation Order: (i) is a judicial determination, as of the Effective Date, of a discharge of all debts of the City, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge voids any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; provided that, notwithstanding section 944(c)(1) of the Bankruptcy Code, such discharge does not apply to (i) debts specifically exempted from discharge under the Plan; (ii) debts held by any Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case; (iii) claims against officers or employees of the City for money borrowed by or property obtained from the City by false pretenses, false representations, or actual fraud, as further set forth in section 944(c)(3) of the Bankruptcy Code; or (iv) Claims of (A) T&T Management, Inc., (B) HRT Enterprises and (C) the John W. and Vivian M. Denis Trust related to condemnation or inverse condemnation actions against the City alleging that the City has taken private property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

3. **Releases.**

   a. General Releases by Holders of Claims. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Holder of a Claim that has voted in favor of the Plan, to the fullest extent permissible under law, is deemed to forever release, waive and discharge all Claim-related Liabilities... against the City Released Parties; provided, however, that any such release (i) shall not operate as a release or waiver of or against any Claims that are Unimpaired under the Plan and (ii) is in addition to the discharge of Claims provided herein and under the Confirmation Order and the Bankruptcy Code.

   b. Releases by Holders of Pension Claims. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents entered into or delivered in connection with the Plan, as of the Effective Date, in consideration of the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), if the State Contribution Agreement is consummated, each holder of a Pension Claim is deemed to forever release, waive and discharge all Liabilities arising from or related to the City, the Chapter 9 Case, including the authorization given to file the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution that such party has, had or may have against the State and any State Related Entities. For the avoidance of doubt, the Plan does not release, waive or discharge obligations of the City that are established in the COPs, the Plan or an order of the Bankruptcy Court.

4. **Injunctions.** On the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order:

   a. All Entities that have been, or may be holders of Claims against the City, the Indirect 36th District Court Claims or Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity, along with their Related Entities, are permanently enjoined from taking any of the following actions against the City or its property, the DIA Assets, the Released Parties or the property of the Released Parties on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing any Lien; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to such Entity; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

   b. All Entities that have held, currently hold or may hold any Liabilities released pursuant to the Plan, are permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind...; (ii) enforcing, levying, attaching...; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any Lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

   c. Notwithstanding the foregoing, Persons that are or become Holders of Indirect 36th District Court Claims shall not be enjoined from continuing to prosecute actions against the State or the State Related Entities with respect to Indirect 36th District Court Claims to the extent such Claims are asserted pursuant to the Plan.

5. **Treatment of Executory Contracts and Unexpired Leases.**

   a. Assumption. Except for Executory Contracts and Unexpired Leases (i) rejected by the City on or prior to the Effective Date, as of the Effective Date, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the City shall be deemed to assume each Executory Contract and Unexpired Lease to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations have not been assumed under the Plan and have been discharged. For the avoidance of doubt, all Executory Contracts and Unexpired Leases pursuant to Section II.D.1 of the Plan.

   b. Assumption of Ancillary Agreements. Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 of the Plan includes any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any way affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 of the Plan or designated for rejection in accordance with Section II.D.3 of the Plan.

   c. Approval of Assumptions and Assignments. The Confirmation Order constitutes an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 of the Plan (and any related assignments) as of the Effective Date, pursuant to section 365 of the Bankruptcy Code.

6. **Contracts and Leases Entered Into After the Petition Date.** Contracts and leases entered into after the Petition Date by the City, including any Executory Contracts and Unexpired Leases assumed by the City, will be performed by the City in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

   d. Payments Related to the Assumption of Executory Contracts and Unexpired Leases. To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, at the option of the City, or its assignee: (a) by payment of the Cure Amount Claim in Cash on or after the Effective Date or as soon thereafter as is practicable; or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If there is a dispute regarding: (i) the amount of any Cure Amount Claim, (ii) the ability of the City or any assignee to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to the proposed assumption, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within 30 days following the entry of a Final Order resolving the dispute and approving the assumption.

   e. Rejection of Executory Contracts and Unexpired Leases. Each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 to the Plan was deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code. The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the later of (i) the Effective Date or (ii) the resolution of any objection to the rejection of an Executory Contract or Unexpired Lease. Each contract or lease listed on Exhibit II.D.6 to the Plan is rejected only to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit II.D.6 to the Plan, will not constitute an admission by the City that such contract or lease is an Executory Contract or Unexpired Lease or that the City has any liability thereunder. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code.

   f. Rejection Damages Bar Date. Except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served upon counsel to the City on or before the later of (i) 45 days after the Effective Date, i.e., January 26, 2015, or (ii) 45 days after a Final Order of the Bankruptcy Court approving such rejection. Any Claim not Filed within such applicable time periods will be forever barred from receiving a Distribution from, and shall not be enforceable against, the City. Proof of claim forms and instructions for filing claims can be found at the City's restructuring website, https://www.kccllc.net/detroit.

   g. Pre-existing Obligations to the City Under Rejected Executory Contracts and Unexpired Leases. Pursuant to section 365(g) of the Bankruptcy Code, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall constitute a breach of such contract or lease as of the date of such breach shall remain owing to the City upon rejection. Notwithstanding any applicable non-bankruptcy law to the contrary, the City expressly reserves and does not waive any right to receive, or any continuing obligation of a non-City party to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased, or services previously received, by the City from non-City parties to rejected Executory Contracts or Unexpired Leases.

   h. Insurance Policies. From and after the Effective Date, each of the City's Insurance Policies (other than welfare benefits insurance policies) in existence as of or prior to the Effective Date are reinstated and continue in full force and effect in accordance with their terms and, to the extent applicable, are deemed assumed by the City pursuant to section 365 of the Bankruptcy Code and Section II.D.1 of the Plan. Nothing contained in Section II.D.9 of the Plan shall constitute or be deemed a waiver of any Causes of Action that the City may hold against any Entity, including any insurer under any of the City's Insurance Policies, nor shall anything contained herein be deemed a waiver by the City from any Insurance Policies.

7. **Bar Dates for Administrative Claims.**

   a. General Bar Date Provisions. Except as otherwise provided in subparagraphs 7(b) or 7(c) below or in a Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the City no later than 45 days after the Effective Date, i.e., January 26, 2015. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve a request by the Administrative Claims Bar Date will be forever barred from asserting such Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the requesting party by the later of (i) 150 days after the Effective Date, i.e., May 11, 2015, and (ii) 60 days after the Filing of the applicable request for payment of Administrative Claims.

   b. Ordinary Course Liabilities. Holders of Administrative Claims based on Liabilities incurred in the ordinary course of the City's operations are not required to File or serve any request for payment or application for allowance of such Claims. Such Claims will be paid by the City in the ordinary course of business and in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, without further action by the Holders of such Claims or further action or approval of the Bankruptcy Court.

   c. Claims Under the Postpetition Financing Agreement. Holders of Administrative Claims that are Postpetition Financing Claims are not required to File or serve any request for payment of such Claims. Such Administrative Claims will be satisfied as set forth in subparagraph 7(d) above.

8. **ASF Recoupment Cash Option.**

   a. ASF Recoupment Cash Option Election. No later than seven days following the Effective Date, i.e., December 17, 2014, the City, through its Claims and Balloting Agent, will mail each ASF Distribution Recipient the ASF Election Form by first-class U.S. mail to each ASF Distribution Recipient. The ASF Election Notice will notify ASF Distribution Recipients that each ASF Distribution Recipient may elect to pay the total amount of his or her ASF Recoupment in a single lump sum by timely returning a properly-completed ASF Election Form. An ASF Distribution Recipient's Ballot, unless the aggregate amount of such Recoupment at ASF Distribution Recipient is $30,000,000 or less, the ASF Final Cash Payment will be the ASF Distribution Recipient's Pro Rata portion of $30,000,000, and (ii) the remaining portion of the ASF Recoupment Cash Payment will be deducted from the ASF Recoupment Cash Payment Notice in Section II.B.3.r.II.D.2 of the Plan. An ASF Distribution Recipient electing this ASF Final Cash Payment Option must return his or her ASF Election Form to the Claims and Balloting Agent so that it is actually received by the Plan on the ASF Election Form no later than Form is mailed.

   b. ASF Recoupment Cash Payment Date. The ASF Distribution Recipient's ASF Recoupment Cash Payment will be payable in cash on the ASF Distribution Recipient Cash Payment Date, i.e., March 10, 2015, or (i) 90 days after the date of mailing of an ASF Final Cash Payment Notice, whichever is later. If the ASF Distribution Recipient's Cash Payment is not received by a cashier's check or wire transfer and may not be made by personal check. If an ASF Distribution Recipient has not paid, and GRS will notify the ASF Recoupment Cash Payment Recipient's monthly pension check, as provided for in Section II.B.3.r.II.D.2 of the Plan. The calculation of each election of ASF Distribution Recipient's cash payment shall not be adjusted under any circumstances, including as a result of default by any other participating ASF Distribution Recipient to remit his or her ASF Recoupment Cash Payment.

9. **Copies of the Plan and Confirmation Order.** Copies of the Plan and Confirmation Order and all other documents Filed in the Chapter 9 Case may be obtained, free of charge, from the City's restructuring website at https://www.kccllc.net/detroit or from Kurtzman Carson Consultants LLC by calling (877) 298-6236 (toll-free).

BY ORDER OF THE COURT

Heather Lennox (OH 0038211), Thomas A. Wilson (OH 0077047), JONES DAY, North Point, 901 Lakeside Avenue, Cleveland, Ohio 44114, Telephone: (216) 586-3939, Facsimile: (216) 579-0212, hlennox@jonesday.com -and- Bruce Bennett (CA 105520), JONES DAY, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071, Telephone: (213) 243-2382, bbennett@jonesday.com -and- Jonathan S. Green (MI P33140), Stephen S. LaPlante (MI P48063), MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., 150 West Jefferson, Suite 2500, Detroit, Michigan 48226, Telephone: (313) 963-6420, Facsimile: (313) 496-7500, green@millercanfield.com, laplante@millercanfield.com, ATTORNEYS FOR THE CITY