**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

_____/

| | |
|---|---|
| AFSCME Council 25 and its Affiliated Detroit Locals | |
| Appellant, | Case No. 2:14-cv-14548-BAF-RSW |
| v | Hon. Bernard A. Friedman |
| City of Detroit, Michigan, | Mag. Judge R. Steven Whalen |
| Appellee. | |

_____/

**APPELLANT MICHIGAN AFSCME COUNCIL 25's
BRIEF ON APPEAL**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................... iii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION......................v

STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW..................................................................................................vi

I.  STATEMENT OF THE CASE ........................................................................1

    A. Procedural Background ...............................................................................1

    B. Statement of Facts Concerning Claims .....................................................3

        1.  13th Check Claim .................................................................................3

        2.  City of Detroit Retirees Health Care: Grievance No. C10 A-025..............4

    C. Fourth Amended Plan of Adjustment Language ...........................................5

        1.  Definitions .........................................................................................5

        2.  4th Plan Classes of Creditors...............................................................6

            a.  Class 11 – GRS Pension Claims ..........................................................7

            b.  Class 12 – OPEB Claims.....................................................................9

            c.  Class 14 ............................................................................................10

    D. Judge Rhodes' Ruling on City Supplemental Objection to AFSCME POC.11

II. SUMMARY OF THE ARGUMENT ................................................................13

III.ARGUMENT.....................................................................................................14

    A. Proper Standard of Review.........................................................................14

    B. The Bankruptcy Court Misinterpreted the 4th Plan .......................................18

        1.  Misinterpretation Regarding the 13th Check Claim..................................19

i

     2.  Proper Interpretation of the 4th Plan Regarding the Retiree Healthcare Claim ......................................................................................21

     3.  The AFSCME Proofs of Claim are Protected Within the Plan Language .................................................................................................22

     4.  The Plan is at the Least Ambiguous .......................................................23

  C. The Bankruptcy Court Misapplied Additional Provisions of the Bankruptcy Code and Rules ..........................................................................26

  D. The City Failed to Meet Its Burden in Objecting to AFSCME's POC .........29

IV.   CONCLUSION................................................................................................30

# INDEX OF AUTHORITIES

**Cases**                                                            **Page**

*City of Covington v. Covington Landing Ltd. Partnership*,
71 F.3d 1221 (6th Cir. 1995) ...............................................16

*Detroit Police Officers Ass'n. v. Detroit*, 391 Mich. 44, 54-55 (1974) .......11, 12, 13

*Dobbelaere v. Auto–Owners Ins. Co.*, 740 N.W.2d 503, 505 (2007) .....................18

*Edoff v. Hecht*, 270 Mich. 689, 695, 260 N.W. 93, 96 (1935) ...............................24

*Fisk v. Fisk*, 328 Mich. 570, 574, 44 NW2d 184 (1950) .........................................19

*Heritage Broadcasting Co. v. Wilson Communications*,
170 Mich. App. 812, 818, 428 N.W.2d 784 (1988).............................................19

*In re Beta Intern., Inc.,* 210 B.R. 279, 282 (E.D.Mich.,1996)...........................14, 18

*In re County of Orange,* 203 B.R. 977 (Bankr.C.D.Cal.1996).................................28

*In re Dabaja* (Bkrtcy.E.D.Mich. June 25, 2014 Slip Copy) ...................................18

*In re Dow Corning Corp.*, 456 F.3d 668, 674-675 (6th Cir 2006) ....................14, 16

*In re Empire Coal Sales Corp.,* 45 F.Supp. 974, 976 (S.C.N.Y.)...........................28

*In re LRI III, Ltd.*, 464 Fed.Appx. 263, 267 (5th Cir 2012)................................17, 18

*In re McLaughlin*, 320 B.R. 661, 665 (Bankr. N.D. Ohio 2005) ...........................30

*In re Monclova Care Center, Inc.,* 59 Fed.Appx. 660, 662 (6th Cir 2003)..15, 16, 18

*In re Morris*, 260 F.3d 654, 662-663 (6th Cir 2001) .................................................14

*In re Settlement Facility Dow Corning Trust*, 628 F.3d 769 (6th Cir 2010) ............17

*In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir 1993) ...................................14, 15, 16

*In re Tucker*, 231 B.R. 284 (E.D. Tenn. 1999) .......................................................23

*Jamaica Ave., LLC v. S & R Playhouse Realty Co.*,
540 F3d 433, 440 (6th Cir.2008) .......................................................................19

*Kelso v. MacLaren*, 122 F.2d 867, 870 (8th Cir.1941)...........................................28

*Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (2003) ...............18

*Kleid v. Ruthbell Coal Co.,* 131 F.2d 372, 373 (2d Cir.1942)................................28

*Omnicom Group, Inc. v. 880 West Long Lake Associates*,
    504 Fed.Appx. 487, p. 491 (6th Cir. 2012)........................................................23

*Roots v. City of Detroit*, Case No. 12-12848 (E.D. Mich., Cohn)............................5

*Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir.1996)........18

*Schachner v. Blue Cross and Blue Shield of Ohio*,
    77 F.3d 889, 893 (6th Cir 1996) ..................................................................17, 18

*Vushaj v. Farm Bureau Gen. Ins. Co. of Mich.*, 773 N.W.2d 758, 760 (2009).......18

*Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) ............................30

## Statutes / Rules

11 U.S.C. § 101(5) .......................................................................................11, 15, 29

11 U.S.C. § 101(10) ...............................................................................................29

11 U.S.C. § 502(b) ..................................................................................................30

11 U.S.C. § 502(b)(1)..............................................................................................29

11 U.S.C. § 901 .......................................................................................................29

11 U.S.C. § 941 .......................................................................................................15

11 U.S.C. § 944(a) ..................................................................................................15

11 U.S.C. 944(b) .....................................................................................................15

11 U.S.C. § 1122 .....................................................................................................29

11 U.S.C. § 1123(a) ................................................................................................15

11 U.S.C. 1123(a)(1)...............................................................................................15

11 U.S.C. § 1123(a)(3).......................................................................................19, 21

11 U.S.C. § 1125(a)(1)..............................................................................................2

28 U.S.C. § 158(a) ..................................................................................................vi

FRBP, Rule

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

Pursuant to 28 U.S.C. § 158(a) and the Federal Rules of Bankruptcy Procedure, Rules 8001(a), 8002(a) and 8003(a), AFSCME asserts jurisdiction for filing this appeal as of right, to the United States District Court for the Eastern District of Michigan, Southern Division.

On October 16, 2014, the Debtor City of Detroit filed a Supplemental Objection to the AFSCME Proof of Claim, Claim Number 2958. (Docket No 7981) The objection challenged two items within AFSCME's Proof of Claim. On October 20, 2014, the Bankruptcy Court issued an order sustaining the City of Detroit's Objection the two issues within AFSCME's Proof of Claim. (Docket No. 8015) On October 30, 2014, AFSCME filed a Notice of Appeal of the Bankruptcy Court's Order. (Docket No. 8139)

## STATEMENT OF THE ISSUES PRESENTED
## AND STANDARD OF REVIEW

1.  Did the Bankruptcy Court err when it interpreted the Plan of Adjustment and Bankruptcy Code to place Creditor-Appellant AFSCME Council 25's item number 7 (MERC Case No. C12 E-092), of the AFSCME Proof of Claim, within Plan of Adjustment Class 11 instead of Class 14?

  Creditor-Appellant:  Yes
  Debtor-Appellee:  No

  Standard of Review: Appellant submits that the standard of review for this question is *de novo*, as explained in Section III.A of the attached Appellate Brief.

2.  Did the Bankruptcy Court err when it interpreted the Plan of Adjustment and Bankruptcy Code to place Creditor-Appellant AFSCME Council 25's item number 17 (Grievance No. 25-01-12/case number 12-0077708-CL), of the AFSCME Proof of Claim, within Class 12 instead of Class 14?

  Creditor-Appellant:  Yes
  Debtor-Appellee:  No

  Standard of Review: Appellant submits that the standard of review for this question is *de novo*, as explained in Section III.A of the attached Appellate Brief.

# I. STATEMENT OF THE CASE

## A.    Procedural Background

On July 18, 2013, the City filed a petition for relief in Bankruptcy Court, commencing its chapter 9 municipal bankruptcy case. On November 21, 2013, the Court entered an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Docket No. 1782)[1], by or before February 21, 2014. On February 21, 2014, American Federation of State, County and Municipal Employees Council 25 ("AFSCME") filed proof of claim number 2958 (App. Record Ex. 5)[2] ("AFSCME POC").

Included in AFSCME's POC was a claim known as the "13th Check Claim", MERC Case No. C12-E-092. Therein AFSCME asserted that the City passed an ordinance which curtailed payments into employee annuity accounts and stopped annual 13th pension checks being paid to retirees. An administrative law judge (ALJ) of the Michigan Employment Relations Commission (MERC) held the changes violated labor law, and recommended a finding in AFSCME's favor and suggested having $174,240,000 reserved for satisfaction of the charge. (App. Record Ex. 4) Also included in AFSCME's POC was a grievance (Grievance No. C10 A-025) asserting that, in 2006, the City illegally changed retiree health care

---

[1] Docket references are to the bankruptcy court docket, In re City of Detroit, 13-53846, unless otherwise noted.
[2] References to the Appellant's Designated Record are referenced as "App. Record Ex. __" followed by the page number reference if applicable.

benefits. ("Retiree Healthcare Claim") AFSCME filed a grievance on behalf of City retirees. The retirees later contested the changes in a federal lawsuit, also contained within the AFSCME POC. (App. Record Ex. 3)

In April 2014, AFSCME and the City reached a settlement agreement in the bankruptcy case, concerning the future pension payments to be paid to City retirees. (App. Record Ex. 10, pgs. 4-5) On May 5, 2014, the City filed the Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (App. Record Ex. 6) ("4th Plan") and the Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustments of Debts of the City of Detroit (App. Record Ex. 12) (the "Disclosure Statement").[3]

On May 15, 2014, the City filed its Objection to the AFSCME POC. (App. Record Ex. 7) On September 25, 2014, per stipulation of the parties, the AFSCME POC was referred to facilitative mediation before the Honorable Judge Victoria A. Roberts. (Docket No. 7663) After September 25's referral to mediation, the City asserted for the first time that portions of the AFSCME POC were resolved by AFSCME in the April 2014 settlement. The 4th Plan, filed May 5, 2014, included a class of civilian retirees who were entitled to monthly pensions (Class 11) and a class of retirees who were entitled to retiree healthcare (Class 12). The City

---

[3] That same day, the Court entered the Order Approving the Proposed Disclosure Statement (Docket No. 4401), thereby affirming the Disclosure Statement contained adequate information on the Plan. 11 U.S.C. § 1125(a)(1)

asserted that AFSCME's April 2014 settlement placed the 13th Check Claim into Class 11, and placed the Retiree Healthcare Claim into Class 12, thereby resolving those elements of the AFSCME POC. The legal issue of whether these matters were resolved was referred back to the Bankruptcy Court.

On October 20, 2014, Honorable Steven W. Rhodes interpreted the Bankruptcy Code and the 4th Plan, and held that the 13th Check Claim and Retiree Healthcare Claim were within Classes 11 and 12 of the Plan, respectively. (App. Record Ex. 10). On October 30, 2014, AFSCME filed its Notice of Appeal of Order Regarding City's Objection to Proof of Claim #2958 Filed by AFSCME Council 25 and Its Affiliated Detroit Locals. (App. Record Ex. 11)

B.    **Statement of Facts Concerning Claims**

1.    **13th Check Claim**

Prior to November 30, 2011, the City of Detroit and its General Retirement System (GRS) supplemented the compensation to active employees, if investment earnings from the assets of GRS were sufficient to do so (aka "excess earnings"). This is referred to as a "13th check", since it was another check given to retirees beyond the 12 monthly pension checks. It also called for enhancement credits to active employees' annuity accounts. This practice, in place for decades, granted the GRS board the discretion to award this supplemental compensation, and in what amount. (App. Record Ex. 4, pgs. 5-8)

On November 30, 2011, the City Council passed an ordinance eliminating this practice. (App. Record Ex. 2) AFSCME filed an unfair labor practice charge with the MERC, asserting that the change violated state labor law and repudiated language within AFSCME's contract. (App. Record Ex. 1) The ALJ of MERC issued a recommended order in AFSCME's favor (App. Record Ex. 4): that the GRS board should be allowed to disburse excess earnings, and that affected GRS participants should be made whole (App. Record Ex. 4, pg. 24)  While the dispute was not ripe for conclusive evaluation, the ALJ suggested that the City reserve $174,240,000 to satisfy the claims. (App. Record Ex. 4, pg. 18)

### 2. City of Detroit Retirees Health Care: Grievance No. C10 A-025

In 2006, the City changed retiree health care benefits, requiring retirees to incur greater cost for health care. These changes violated the vested retiree health care benefits which were promised to City employees at retirement, per the union bargaining agreements. When unionized City employees retired, the union contract outlined certain retiree healthcare benefits which the employees would receive in retirement for life. The 2006 changes eroded a number of those benefits. (App. Record Ex. 3) In response to the changes, AFSCME filed a grievance on behalf of retirees. The AFSCME grievance was placed before an arbitrator. Ultimately, the parties held the grievance in abeyance since the retirees were filing the litigation in federal court, *Roots v. City of Detroit*, Case No. 12-12848 (E.D. Mich., Cohn).

4

## C.    Fourth Amended Plan of Adjustment Language

As stated above, on May 5, 2014, the City filed its Fourth Amended Plan of Adjustment ("4th Plan"). This 4th Plan contained a settlement agreement of the future pension and retiree healthcare liability between the City and creditor groups representing retired City employees, such settlement having been reached in April 2014. The City asserted, and the Bankruptcy Court ruled, that this settlement agreement also included a settlement of two elements of the AFSCME POC: the AFSCME 13th Check Claim and Retiree Healthcare Claim.

### 1.    Definitions

The 4th Plan defined GRS Pension Claim as follows:

> "GRS Pension Claim" means any Claim (other than an OPEB Claim), whether asserted by current or former employees of the City, their heirs or beneficiaries or by the GRS or any trustee thereof or any other Entity acting on the GRS's behalf, against the City or any fund managed by the City (including, but not limited to, the General Fund, the water fund, the sewage disposal fund, the Detroit General Retirement System Service Corporation fund or the pension funds) based upon, arising under or related to any agreement, commitment or other obligation, whether evidenced by contract, agreement, rule, regulation, ordinance, statute or law for (a) any pension, disability or other post-retirement payment or distribution in respect of the employment of current or former employees or (b) the payment by the GRS to persons who at any time participated in, were beneficiaries of or accrued postretirement pension or financial benefits under the GRS."

(App. Record Ex. 6, pg. 13, ¶ 155)  The definition uses the word "Claim", as used in section 101(5) of the Bankruptcy Code. (App. Record Ex. 6, pg. 5, ¶ 45)

The phrase "OPEB Claim" is defined in the 4th Plan as "any Claim against the City for OPEB Benefits held by a retiree who retired on or before

December 31, 2014 and is otherwise eligible for OPEB Benefits, and any eligible surviving beneficiaries of such retiree." (App. Record Ex. 6, pg. 16, ¶ 196). The definition given in the 4th Plan of OPEB Benefits to include (in pertinent part): "collectively, post-retirement health, vision, dental, life and death benefits provided to retired employees of the City and their surviving beneficiaries pursuant to the Employee Health and Life Insurance Benefit Plan and the Employees Death Benefit Plan …" (App. Record Ex. 6, pg. 16, ¶ 195)

### 2. 4th Plan Classes of Creditors

These definitions are properly read within the context as used in the Plan. In the 4th Plan, the Debtor City of Detroit divided creditors into 16 different classes. Pertinent here are the classes 11, 12, and 14. Class 11 addresses and impairs the pension payments which civilian retirees will receive in the future from the GRS. Class 12 addresses retiree healthcare coverage of City retirees, following the Plan's Effective Date (which occurred December 10, 2014). In the 4th Plan, each Class outlines the "treatment" that the Plan gives to the debts within the class. Class 14 is entitled "Other Unsecured Claims", and is the class addressing proofs of claim filed, including AFSCME's POC. (App. Record Ex. 6, pg. 16)

### a. Class 11 – GRS Pension Claims

The Class 11 treatment of claims follows: (App. Record Ex. 6, pgs. 32-34):

a. subsection II.B.3.r.i – this subsection is entitled "Allowance", and indicates that "[t]he GRS Pension Claims shall be <u>allowed</u> in an aggregate amount …" of more than $1.8 billion. (<u>emphasis</u> added)

This section clearly defines the Class 11 pension claims as "allowed" claims. Creditors have two forms of claims against the City – allowed or disputed. The Plan defines an "Allowed" Claim to include "[a] Claim, proof of which has been timely filed … provided that such Claim shall be considered allowed only if and to the extent that [] no objection to the allowance thereof has been interposed …" (App. Record Ex. 6, pg. 2, ¶ 14) Thus, "allowed" claims are defined to exclude any claim over which there has been an objection. Conversely, a Disputed Claim is "any Claim that is not Allowed." (App. Record Ex. 6, pg. 8, ¶ 97) Here, the City's objection over the 13th Check Claim deems it a "disputed" claim.

a. subsection II.B.3.r.ii.A - addresses contributions to fund pension liability;
b. subsection II.B.3.r.ii.B - establishes an investment rate return and "discount rate" for the GRS from the Effective Date through June 30, 2023;
c. subsection II.B.3.r.ii.C - is entitled "Modification of Benefits for GRS Participants", and describes specifically how the pension payments to retirees are modified going forward. This subsection specifically addresses the impairment of the pension, stating as follows in part:

"During the period that ends no earlier than June 30, 2023, the pension benefits payable to each Holder of a GRS Pension Claim shall be equal to the GRS Adjusted Pension Amount for such Holder …"

(App. Record Ex. 6, pgs. 33-34)(<u>emphasis</u> in original). The above modification uses the phrase "GRS Pension Claim" to identify the individual who will receive the GRS Adjusted Pension Amount – "each Holder of a GRS Pension

Claim". The phrase "GRS Adjusted Pension Amount" is used to describe the impairment in retiree pensions, defined as "the Current Accrued Annual Pension payable to such Holder as adjusted in accordance with the following formulas". (App. Record Ex. 6, pgs. 12-13) The referenced formulas include,

> "(a) If Classes 10 and 11 vote to accept the Plan, and funding is received from the DIA Settlement and the State Contribution Agreement: for a Holder of a GRS Pension Claim who is (i) either retired and receiving a <u>monthly pension</u> or a surviving beneficiary or (ii) an Active Employee or a terminated employee with a right to receive a GRS pension in the future, elimination of the right to supplemental pension benefits to be paid after July 1, 2014 in respect of COLAs, plus an additional 4.5% reduction in the Current Accrued Annual Pension amount, plus the ASF Recoupment, provided that ASF Recoupment shall not apply to a surviving beneficiary of a retiree who died prior to June 30, 2014" (<u>emphasis</u> added)

(App. Record Ex. 6, pgs. 12-13) No other impairments are listed.

d. subsection II.B.3.r.ii.D - addresses the annuity savings fund recoupment. This section limits the annuity savings fund "excess earnings" paid to individuals by the GRS, into their annuity savings fund account.

e. subsection II.B.3.r.ii.E - concerns potential, additional funding for pensions.

f. subsection II.B.3.r.ii.F - indicated that retirees are entitled to their GRS Adjusted Pension Amount plus any pension benefits for service after July 1, 2014, the date the new pension plan was negotiated and effective.

g. subsection II.B.3.r.ii.G - forms an Investment Committee, to invest GRS assets, "for a period of 20 years following the Effective Date."

h. subsection II.B.3.r.ii.H - prohibits changes in the operational aspects of pension benefit calculation, until at least June 30, 2023.

i. subsection II.B.3.r.ii.I - provides the conditions upon which the State of Michigan will make its contributions toward pension benefits.

### b.    Class 12 – OPEB Claims

Class 12 provides for the impairment to other post-employment benefits (OPEB), inclusive of retiree healthcare: (App. Record Ex. 6, pgs. 35-36)

   a. subsection II.B.3.s.i - the section entitled "Allowance" explains the OPEB Claims which are being "allowed". The section reads: "As a result of a settlement between the City and the Retiree Committee, the OPEB Claims shall be <u>allowed</u> in an aggregate amount equal to $4,303,000,000."

(App. Record Ex. 6, pg. 35) (<u>emphasis</u> added) The Retiree Committee was appointed to represent all City retirees (App. Record Ex. 6, pg. 19, ¶ 233), and is an entity separate and apart from Claimant Michigan AFSCME Council 25.

   b. subsection II.B.3.s.ii.A – this "Treatment" subsection created a voluntary employee benefit association (VEBA) to provide retiree healthcare benefits to civilian retirees. As of the Effective Date, the City commits to distribute, to this VEBA, notes "in the aggregate principal amount of $218,000,000, in satisfaction of the <u>Allowed OPEB Claims</u> held by Detroit General VEBA Beneficiaries."

(App. Record Ex. 6, pg. 35) (<u>emphasis</u> added) The 4th Plan does define the phrase "Allowed Claim", which is defined to exclude any claim over which an objection has been filed. (App. Record Ex. 6, pg. 2, ¶ 14) As such, the Class 12 treatment excludes AFSCME's POC, defined as disputed. (App. Record Ex. 6, pg. 8, ¶ 97)

   c. subsection II.B.3.s.ii.B - this subsection forms a VEBA for retiree healthcare to public safety retirees.

   d. subsection II.B.3.s.ii.B – this subsection is entitled "No Further Responsibility", and states "From and after the Effective Date, the City shall have no further responsibility to provide retiree healthcare or any other retiree welfare benefits."

   c.    **Class 14**

Class 14 is entitled "Other Unsecured Claims", and provides for the holder of an "Allowed Other Unsecured Claim" to receive a pro rata share of B Notes in satisfaction of such claim. (App. Record Ex. 6, pg. 35) An "Allowed" claim is defined to exclude any proof of claim over which the City has an objection. (App. Record Ex. 6, pg. 2, ¶ 14) The Plan states "[u]ntil all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their Face Amount for purposes of calculating the Unsecured Pro Rata Share of property to be distributed to Holders of Allowed Claims in such Class, unless otherwise ordered by the Bankruptcy Court." (App. Record Ex. 6, pg. 23, ¶ 282)

The 4th Plan also outlines a process for resolving Disputed Claims, found in Article VI of the 4th Plan (App. Record Ex. 6, pgs. 55-57). It allows the City to select ADR procedures for certain disputed claims, and allows the City to file objections to claims, in order "[t]o facilitate the efficient resolution of Disputed Claims …" (App. Record Ex. 6, at pg. 56) Thus, a disputed claim remains so, until withdrawn or otherwise resolved. The City is also required to maintain a "reserve" of property equal to the "Face Amount" of the Disputed Claim, "until such time as all Disputed Claims have been compromised and settled or determined by Final Order and before making any Distributions …" (App. Record Ex. 6, pg. 56)

**D.    Judge Rhodes' Ruling on City Supplemental Objection to AFSCME POC**

On October 20, 2014, Judge Rhodes ruled from the bench on the City's Supplemental Objection to the 13th Check and Retiree Healthcare elements of the AFSCME Proof of Claim. The Court characterized the issue as "whether the settlement entered into between the city and AFSCME early in the case includes AFSCME's thirteenth check claim and related claims and its health care modification claim." (App. Record Ex. 10, pg. 4) The Court then quoted the 4th Plan definitions of GRS Pension Claims and OPEB Claims (Id., at 5-6), and quoted the Code definition of "Claim". 11 U.S.C. § 101(5); (App. Record Ex. 6, pgs. 6-7)

The Court addressed AFSCME's argument that the claims within Classes 11 and 12 of the 4th Plan were impairing individuals' rights to benefits prospectively, in contrast to the rights for benefits within the AFSCME POC which addressed past due claims. The Court concluded that the argument is "not consistent with the broad definitions of the claims in Classes 11 and 12, or with the broad definition of a claim in the Bankruptcy Code." (App. Record Ex. 10, pg. 8) The Court then relied on Sections 944(b) and 944(a) of the Code as justification for its ruling:

> "By operation of Section 944(b) of the Bankruptcy Code, the debts that AFSCME seeks to assert through these two claims will be discharged. By operation of Section 944(a), the city's only debts coming out of bankruptcy will be those set forth in the confirmed plan if of course it is confirmed."

(App. Record Ex. 10, pg. 8)

The Court denied AFSCME's request to present extrinsic evidence to demonstrate that AFSCME did not settle the 13th Check and Retiree Healthcare

Claims. (App. Record Ex. 10, pg. 9) Notwithstanding this denial, the Court relied upon the extrinsic evidence within the May 15, 2014 City Objection to the AFSCME POC. (App. Record Ex. 7) AFSCME had cited the May 15th Objection to demonstrate that the City, on that date, did not assert the 13th Check and Retiree Healthcare Claims were subsumed within Classes 11 and 12 of the 4th Plan. The Court found that the City raised the issue that these claims were settled by the 4th Plan in paragraph 19 of the May 15th Objection. (App. Record Ex. 10, pg. .9)

The Court then addressed AFSCME's claim that the 13th Check and Retiree Healthcare Claims were part of the Class 14 Proof of Claim, and should be treated as claims within that class as opposed to Classes 11 and 12. In rejecting that argument, the Court cited to Sections 941 and 1123(a) of the Bankruptcy Code:

"[U]nder Section 941 only the city can propose a plan and under Section 1123(a)(1), only the plan can classify claims. Accordingly, the city – the city's plan governs the classification of the claims and not AFSCME's proof of claim." (App. Record Ex. 10, pg. 9)

## II. SUMMARY OF THE ARGUMENT

First the Appellant assesses the proper standard of review. . While the Appellee will surely argue that the Bankruptcy Court's decision should be reviewed for "abuse of discretion", the cases cited therein clarify that the review is appropriately de novo.

In this matter the 4th Plan is being reviewed as a "contract" between AFSCME and the City. Yet, the City – as the drafter and against whom ambiguities are construed – failed to "specify" the resolution of the AFSCME 13th Check and Retiree Healthcare Claims. The City maintained that those claims were subsumed by the settlements contained within Classes 11 and 12 of the Plan. However, both Class 11 and 12 specifically excluded the 13th Check Claim and Retiree Healthcare Claim respectively. Those Classes are reserved for "allowed" claims, and the 13th Check and Retiree Healthcare Claims are not allowed, but "disputed". Further, as disputed claims, these claims are entitled to protection within Article VI of the Plan, against unilateral discharge by the City.

Further, the Bankruptcy Court erred in interpreting the phrases GRS Pension Claim and OPEB Claim. The Court neglected to interpret the phrases in the proper context, within the Plan language itself. Further, these phrases are at least ambiguous and warrant the introduction of parole evidence. The Bankruptcy

Court refused AFSCME's request to present such parole evidence improperly. The Court also misinterpreted several sections of the Bankruptcy Code in its decision.

## III.  ARGUMENT

### A.  Proper Standard of Review

In the Sixth Circuit, the standard of review of a bankruptcy court's decision depends, in part, on the actions of the bankruptcy court. If, the bankruptcy court relied on or interpreted the Bankruptcy Code, then its ruling is subject to de novo review. *In re Dow Corning Corp*., 456 F.3d 668, 674-675 (6th Cir 2006) ("bankruptcy court decisions that rely on or interpret the Bankruptcy Code are subject to *de novo* review."); *In re Terex Corp*., 984 F.2d 170, 172 (6th Cir 1993). Further, when "there is no dispute as to the relevant facts", and the "issue presented is purely a legal question", the district court review is de novo. *In re Beta Intern., Inc.,* 210 B.R. 279, 282 (E.D.Mich.,1996)

Conversely, if the court only interpreted the plan of confirmation, the bankruptcy court's decision is entitled to "full deference". *In re Terex, supra* at 172; *In re Monclova Care Center, Inc.,* 59 Fed.Appx. 660, 662 (6th Cir 2003) (attached) A bankruptcy court's decision in equity is reviewed for an abuse of discretion. *In re Terex, supra* at 172.  In the instance of "mixed questions of law and fact", the reviewing court should "break the question down into its constituent

14
13-53846-tjt    Doc 8996    Filed 01/01/15    Entered 01/01/15 21:46:47    Page 21 of 38

elements and apply the appropriate standard of review to each." *In re Morris*, 260 F.3d 654, 662-663 (6th Cir 2001)

For several reasons de novo review is the appropriate here, as opposed to abuse of discretion. Abuse of discretion is only appropriate when the bankruptcy court does "not rely on or interpret the Bankruptcy Code" and when it exercises its "equitable" powers. *In re Terex*, *supra* at 172. The Bankruptcy Court in this instance relied on five specific provisions of the Bankruptcy Code in arriving at its decision: 11 U.S.C. §§ 101(5), 941, 944(a), 944(b), and 1123(a). It quoted Section 101(5), the definition of Claim, into the record. (App. Record Ex. 10, pgs. 6-7) Further, in rejecting AFSCME's argument that the 4th Plan only impaired pension and healthcare benefits prospectively, the Bankruptcy Court held that such argument was "not consistent with the broad definitions of the claims in Classes 11 and 12, or with the broad definition of a claim in the Bankruptcy Code." (App. Record Ex. 10, pg. 8) In discharging AFSCME's 13th Check Claim and Retiree Healthcare Claim, the Court relied upon Code Section 944(b). (App. Record Ex. 10, pg. 8) In ruling that the 13th Check and Retiree Healthcare Claims were not debts of the City post-bankruptcy, the Court relied on Code Section 944(a). (App. Record Ex. 10, pg. 8) The Court used Section 941 to hold that only the City can propose a plan, not a creditor. (App. Record Ex. 10, pg. 9). Finally, the Court held,

using Section 1123(a)(1), that only a plan can classify claims. (App. Record Ex. 10, pg. 9)

By contrast, the Bankruptcy Court mentioned only two sections of the 4th Plan as justification for its ruling: the definitions of GRS Pension Claim and OPEB Claim. The Bankruptcy Court's heavy reliance on its interpretation of the bankruptcy code requires de novo review as most appropriate. *In re Monclova Care Center, supra* at 662 (6th Cir 2003) (attached)

Second, the Bankruptcy Court, by its own words, was interpreting an agreement which became a court order. Unlike *In re Terex, supra* and *In re Dow Corning, supra,* the Bankruptcy Court here was interpreting an agreement between Creditor AFSCME and the Debtor City of Detroit: declaring that "[t]he core of the dispute is whether the settlement entered into between the city and AFSCME early in the case includes AFSCME's thirteenth check claim and related claims and its health care modification claim". (App. Record Ex. 10, pg. 4) This settlement was folded into the 4th Plan. In *City of Covington v. Covington Landing Ltd. Ptshp*, 71 F.3d 1221 (6th Cir. 1995), the bankruptcy court approved an agreed upon order, and then approved certain contracts while confirming the plan of reorganization. Id., at 1224-1225.  Concerning the standard of review of the bankruptcy court's decision:

> "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation. This court recently has clarified that the interpretation of a consent decree is question of law reviewed de novo. [citation omitted] The lower court's

findings of fact are reviewed for clear error, but the legal import of those findings is assessed in light of the parties' contractual agreement, a matter which is entitled to plenary review. *Id.* We review the bankruptcy court's decision under these standards."

Id., at 1227. Thus, decisions on "agreed orders", are reviewed "de novo". Id.

Third, a bankruptcy court's decision on whether a bankruptcy plan provision is ambiguous is reviewed with a lower threshold of deference. *In re Settlement Facility Dow Corning Trust*, 628 F.3d 769 (6th Cir 2010) stated the following:

"A basic principle of contractual interpretation is that '[a] term is deemed ambiguous when it is capable of more than one reasonable interpretation.' [citation omitted] Our court is reasonably well-equipped to determine whether a plan provision is ambiguous—we construe contracts all the time—though in this case we should be mindful that our blind spots with respect to how one provision might interrelate with others are likely much larger than are the district court's. On the whole, however, the determination whether a plan provision is ambiguous is not a point on which we substantially defer."

Id., at 772 (underline emphasis added). Indeed, the case cited by the Bankruptcy Court in this instant matter, *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir 1996), confirmed that "[w]e review a district court's conclusions regarding ambiguity in contract language *de novo*."[4] Here, the Bankruptcy Court's decision that the Plan was not ambiguous should be reviewed de novo.

---

[4] The Fifth Circuit held that "[w]e interpret bankruptcy plans in accordance with the rules of contract interpretation. A district court's determination regarding whether a contract is clear or ambiguous presents a question of law, which we review de novo." *In re LRI III, Ltd.*, 464 Fed.Appx. 263, 267 (5th Cir 2012)

Finally, the Bankruptcy Court's ruling here was akin to granting the City's motion for summary judgment, especially given its refusal to accept extrinsic evidence on the record. When the bankruptcy court makes a ruling on summary judgment, the review is de novo. *In re Monclova Care Center, supra* at 662; see also *Schachner, supra* at 892. Furthermore, there is no dispute as to the facts involve here, justifying *de novo* review. *In re Beta Intern., Inc., supra* at 282.

## B.    The Bankruptcy Court Misinterpreted the 4th Plan

The Bankruptcy Court was correct in its holding that a plan of adjustment (or reorganization) is interpreted as a contract. A contract should be read as a whole instrument and with the goal of enforcing the intent of the parties. *Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1350 (6th Cir.1996) The objective of contract interpretation is to read the document as a whole and apply the plain language to honor the intent of the parties. *Dobbelaere v. Auto–Owners Ins. Co.*, 740 N.W.2d 503, 505 (2007). "Contracts must be construed so as to give effect to every word or phrase as far as practicable," *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 453 (2003), and terms used in a contract must be read in context, *Vushaj v. Farm Bureau Gen. Ins. Co. of Mich.*, 773 N.W.2d 758, 760 (2009).[5] See also *In re Dabaja* (Bkrtcy.E.D.Mich. June 25, 2014 Slip Copy).[6]

---

[5] *See* also *In the Matter of LRI III*, 464 Fed. Appx. 263, 269 (5th Cir. 2012) ("Under Texas law, however, we must interpret plan's terms not simply as they exist in isolation but as they function within the document as a whole.")

### 1.    Misinterpretation regarding the 13th Check Claim

According to the Bankruptcy Code, 11 U.S.C. § 1123(a)(3), a bankruptcy plan for the adjustment of debts must "specify the treatment of any class of claims or interests that is impaired under the plan". The Plan indeed "specif[ied]" the treatment of the AFSCME pension claims – in that it left the 13th Check claim unimpaired until resolution as a Disputed Claim under Article VI of the Plan (see below). Class 11 impairs pension claims due to retirees in the future. The Plan never addresses, explicitly or implicitly, the debts alleged within the 13th Check Claim.

First, the 4th Plan excluded the 13th Check Claim from Class 11. Class 11 repeatedly indicates it applies to "allowed" pension claims. (App. Record Ex. 6, pg. 32-34), which does not include claims subject to objection. (App. Record Ex. 6, pg. 2, ¶ 14)  The 13th Check Claim is excluded from Class 11 because it is "Disputed".

The Bankruptcy Court only considered the definition of GRS Pension Claim. However, that phrase was not used to define the level of impairment. If anything, it helped define – with other phrases – the individuals being impaired. The essence of the impairment is that "the pension benefits payable to each Holder of a GRS

---

[6] Even with a "contractual" relationship between AFSCME and the City, there must exist a meeting of the minds on all material facts. *Fisk v. Fisk*, 328 Mich. 570, 574, 44 NW2d 184 (1950). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Heritage Broadcasting Co. v. Wilson Communications*, 170 Mich. App. 812, 818, 428 NW2d 784 (1988); See also *Jamaica Ave., LLC v S. & R. Playhouse Realty Co.*, 540 F3d. 433, 440 (6th Cir.2008)

Pension Claim shall be equal to the GRS Adjusted Pension Amount …" (App. Record Ex. 6, pgs. 33-34, Section II.B.3.r.ii.C) The GRS Adjusted Pension Amount is the actual impairment in benefits. Within that definition, the phrase GRS Pension Claim is used again, to narrow the definition of who will receive this impairment: which is "a Holder of a GRS Pension Claim who is (i) either retired and receiving a <u>monthly pension</u> or a surviving beneficiary or (ii) an Active Employee or a terminated employee with a right to receive a GRS pension in the future …" (App. Record Ex. 6, pgs. 12-13, ¶ 154)(<u>emphasis</u> added) Thus, not all GRS Pension Claim holders are being impaired, but only those who (1) currently receive a "monthly" pension, or (2) active employees who have a right to a pension in the future. Even if holders of the 13th Check Claim are within the definition of GRS Pension Claim (a point AFSCME does not concede), such does not necessitate impairment of their 13th Check Claim.

Unfortunately, the Court's analysis of "GRS Pension Claim" ended at two definitions and the Code. Yet the language of the Plan clarifies that the impairment is to monthly pension checks due in the future: providing that the GRS Pension Claim holders receive the GRS Adjusted Pension Amount "[d]uring the period that ends no earlier than June 30, 2023 …" (App. Record Ex. 6, pgs. 12-13)

The impairments described within the definition of GRS Adjusted Pension Amount are three specific measures: 1) "elimination of the right to supplemental

pension benefits to be paid after July 1, 2014 in respect of COLAs", 2) "an additional 4.5% reduction in the Current Accrued Annual Pension amount", and 3) "the ASF Recoupment". (App. Record Ex. 6, pgs. 12-13, ¶ 154) *See* also the ASF/GRS Reduction definition. (App. Record Ex. 6, pg. 2, ¶ 17) The Plan contains no further impairments incurred by GRS Pension Claim holders, other than debts owed to them in the future. There are no impairments of the 13th Check Claim whatsoever.

## 2. Proper Interpretation of the 4th Plan Regarding the Retiree Healthcare Claim

As required in 11 U.S.C. § 1123(a)(3), the Plan specified that the Class 12 claims would be comprised of retiree health care claims which pensioners were otherwise entitled to in the future. On this point, the Bankruptcy Court's relied in error upon the Code and OPEB Claim definition. (App. Record Ex. 10, pgs. 5-6)

Class 12 states OPEB Claims "shall be allowed in an aggregate amount equal to $4,303,000,000", and that the VEBA notes shall be paid "in satisfaction of the Allowed OPEB Claims…" (App. Record Ex. 6, pg. 35, II.B.3.s.ii.A) Thus, the definition of Class 12 claims is narrower than merely an OPEB Claim, but defined to consist of "Allowed" OPEB Claims. As stated, a claim is deemed "allowed" "only if and to the extent that (x) no objection to the allowance thereof has been interposed …" (App. Record Ex. 6, pg. 2, ¶ 14) Since the Retiree Healthcare Claim of AFSCME was subject to an objection from the City, it is expressly excluded from the definition of the Class 12 claim, because it is "Disputed".

Further, the Plan language makes clear that the Class 12 Claims are comprised only of future retiree healthcare benefits – as opposed to past due debts for a unilateral modification of Retiree Healthcare. In the section of Class 12 entitled "No Further Responsibility", it indicates that the City shall no longer be responsible for retiree healthcare benefits "From and after the Effective Date …" (App. Record Ex. 6, pg. 36) The Class 12 impairment is ending retiree healthcare after the Effective Date. However, AFSCME's Retiree Healthcare Claim is a claim incurred from 2006 through 2013, not after the Effective Date (App. Record Ex. 3). Thus, the Class 12 Plan language excludes the Retiree Healthcare Claim.

Finally, according to the Plan, the Retiree Committee settled the Class 12 claim. (App. Record Ex. 6, pg. 35, section II.B.3.s.i) This is a different entity than AFSCME and, therefore, it would not have authority to resolve the AFSCME POC or any of its elements. In fact, it did not, as extrinsic evidence will show.

### 3. The AFSCME Proofs of Claim are Protected Within the Plan Language

Under the 4th Plan language, the 13th Check Claim and Retiree Healthcare Claims were protected from unilateral impairment by the City. The Class 14 claims are "Other Unsecured Claims", which is where the AFSCME POC was placed when filed. Class 14 provides notes for "allowed" claims, again defined to exclude proofs of claim over which there is an objection. (App. Record Ex. 6, pg. 2, ¶ 14), AFSCME's POC is considered a "Disputed Claim" – defined as any claim which is

not "Allowed". (App. Record Ex. 6, pg. 8, ¶ 97)  Disputed Claims are resolved within Article VI of the Plan. (App. Record Ex. 6, pgs. 55-57) The City is also required to maintain a "reserve" of property equal to the "Face Amount" of the Disputed Claim, "until such time as all Disputed Claims have been compromised and settled or determined by Final Order and before making any Distributions …" (App. Record Ex. 6, pg. 56) In other words, the City cannot unilaterally resolve the claim, and the City cannot disregard the existence of such claim until resolved.

Upon AFSCME settling the future pension claims of Class 11 creditors, in April 2014, the Article VI protections for Disputed Claims were contained within the same 4th Plan. The Debtor City of Detroit, the drafter of the Plan, clearly "specified" (per Section 1123(a)(3) of the Code) treatment of all AFSCME Proofs of Claim – including the 13th Check Claim and Retiree Healthcare Claim – providing that they must be settled or resolved.

### 4.    The Plan is at the least ambiguous

The Plan language makes the use of the phrase GRS Pension Claim at the least ambiguous, with respect to the impairment of the 13th Check claim. *See Omnicom Group, Inc. v. 880 West Long Lake Associates*, 504 Fed.Appx. 487, 491 (6th Cir. 2012), where the court found a term ambiguous and interpreted the term using parol evidence. Further, a plan that lacks specificity is facially ambiguous. In *In re Tucker*, 231 B.R. 284 (E.D. Tenn. 1999) the court held the plan "did not

contain a provision specific enough to bind the debtor and creditor …" *Id*. at 287.[7] The general rule that ambiguous documents are construed against the drafters applies to debtors in a bankruptcy case. *Id*. at 287.

Here, the plan is at least ambiguous, given its silence concerning the treatment of the 13th Check Claim and exclusion from Class 11. Similarly, there is at least an ambiguity with respect to the Retiree Healthcare Claim, which is excluded from Class 12. Also, the Plan fails to specify, explicitly or implicitly, the resolution or elimination of either AFSCME claim.

The extrinsic evidence which was considered by the Court shows that the omission of the 13th Check Claim from the language of Class 11 was intentional. The City filed its Objection to AFSCME's POC on May 15, 2014, ten days after filing the 4th Plan embodying the settlement between AFSCME and the City. Within its May 15th Objection, the City never indicated that the 13th Check and Retiree Healthcare Claims had been conclusively resolved within the 4th Plan just filed. (App. Record Ex. 7) In fact, in its May 15th Objection, the City expressly distinguished between the 13th Check Claim from the proposed pension impairment of retirees in the future.

---

[7] See also *Edoff v Hecht*, 270 Mich 689, 695 (1935) (parol evidence may be used for ambiguous contract provisions "for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement."

24

The first item on the AFSCME February 21st POC concerned the potential impairment to all City retirees regarding their pension and OPEB, valued at $8.1 billion. The City responded to that item by indicating that "the Plan addresses all pension and OPEB liabilities independent of the Claim by providing for the continuation of modified post-employment benefits for the individuals that the Claimant seeks to protect by filing the Claim." It continued by saying that portion of the AFSCME POC is "unnecessary to preserve these individuals' rights to payment on account of such liabilities" and therefore that "portion of the Claim may be disallowed." (App. Record Ex. 7, ¶ 14) (emphasis added) Thus, the City considered Sections II.B.3.r and II.B.3.s of the plan to "preserve" the "continuation of modified post-employment benefits"; in other words, the future pension and OPEB benefits were being continued but modified. Those sections of the Plan set out specifically the modifications of the future pension and OPEB benefits; these were Classes 11 and 12 in the Plan. However, that item within the POC did not address the 13th Check Claim.

The May 15th Objections, conversely, did address 13th Check Claim by stating that AFSCME's POC includes "a number of proceedings before the Michigan Employment Relations Commission." The City's basis for its objection to these claims was "[t]o the extent any such proceedings have not been adjudicated on a full and final basis before the applicable tribunal, the City

disputes its liability to the Claimant or the individuals it represents on account of such liabilities." (App. Record Ex. 7, pg. 9, ¶ 18) Thus, when the City filed this May 15th Objection, it did not believe that the 13th Check claim had been resolved by the Class 11 of 4th Plan (of May 5th). Instead, its objection to the 13th Check Claim was that it had yet to be resolved by MERC.

The Fourth Amended Disclosure Statement also discusses the GRS Pension Claim phrase. (App. Record Ex. 12, pg. 14, 174)   Much like the Plan, the Disclosure Statement confirms that the pension benefit impairment is due to the "unfunded" – or future liability – of the City.

## C.    The Bankruptcy Court Misapplied Additional Provisions of the Bankruptcy Code and Rules

As stated, the Bankruptcy Court relied on five specific provisions of the Bankruptcy Code in reaching its decision. Unfortunately, these sections were applied in error. Section 101(5) offers the Code definition of "Claim", which is essentially a "right to payment". Because the definition of GRS Pension Claim and OPEB Claim are used in Classes 11 and 12, the Bankruptcy Court falsely assumed those Classes had to include AFSCME's POC claims. However, the Court failed to consider the more appropriate treatment of the POC claims – Disputed Claims, also defined within the Plan and found within Class 14.

The Court interpreted Section 941 to preclude AFSCME from "propos[ing] a plan". (App. Record Ex. 10, pg. 9) Section 941 permits the "debtor" to "file a

plan for the adjustment of the debtor's debts." The Court erred, however, in interpreting this Section to preclude AFSCME from disputing improper placement of its POC claims into Classes 11 and 12, which the City cannot do unilaterally. The Court also interpreted Section 1123(a) as preventing AFSCME from "reclassifying" its claims, in a manner differently than within the Plan. Section 1123(a)(1) states that the "plan shall designate … classes of claims …" Again, nothing in this Section permits the City to designate claims in a manner different than laid out in the Plan.

Further, the Court discharged AFSCME's POC claims at issue here citing Section 944(b), which states that "[e]xcept as provided in subsection (c) of this section, the debtor is discharged from all debts as of the time when (1) the plan is confirmed …" (App. Record Ex. 10, pg. 8) Similarly, the Court also interpreted Section 944(a) to provide that the confirmed Plan would bind AFSCME "whether or not a proof of [its] claim is filed …" However, the Court did not have the power to discharge AFSCME's debt, because Section 944(c)(1) excludes from discharge any debt which "excepted from discharge by the plan …" Article VI of the Plan deems AFSCME's POC a Disputed Claim, not subject to discharge but preserved.

Also, the Bankruptcy Court's ruling disregards FRPB, Rule 3016(c), stating:

"If a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction."

By unilaterally placing the 13th Check and Retiree Healthcare Claims into Classes 11 and 12, the Court enjoined AFSCME from pursuing those claims, and released the City from any liability under such claims. Since these issues within the AFSCME POC were "not otherwise enjoined under the Code", the Plan had to contain "specific and conspicuous language" to clarify the resolution of the claims.

There is no dispute that AFSCME never withdrew any portion of its POC. Federal Rule of Bankruptcy Procedure ("FRBP"), Rule 3006 speaks to the withdrawal or release of a proof of claim, indicating that "[i]f after a creditor has filed a proof of claim an objection is filed thereto … the creditor may not withdraw the claim except on order of the court …" *See also In re County of Orange,* 203 B.R. 977 (Bankr.C.D.Cal.1996). Federal Rules of Civil Procedure ("FRCP") Rule 41 governs the interpretation of this Rule, concerning the withdrawal of a proof of claim. *In re Empire Coal Sales Corp.,* 45 F.Supp. 974, 976 (S.C.N.Y.), aff'd sub nom. *Kleid v. Ruthbell Coal Co.,* 131 F.2d 372, 373 (2d Cir.1942); *Kelso v. MacLaren*, 122 F.2d 867, 870 (8th Cir.1941). After an objection has been filed a proof of claim may be withdrawn only subject to approval by the court. *Id.*

Similar to FRCP Rule 41(a), it is the filing of an objection to the claim which initiates a contest that must be disposed of by the court. Thus, a leave of court is required in order for a party to obtain dismissal over the objection of a

defendant. *See* Rule FRCP 41(a)(2). Because the City filed its objection to AFSCME's POC, Court approval was required for withdrawal of the claim.

The Bankruptcy Court's ruling also violated 11 U.S.C. § 1122. This Section provides that a claim is only placed in a class if the "claim or interest is substantially similar to the other claims or interests of such class." The 13th Check and Retiree Healthcare claims are not substantially similar to the Class 11 and 12 claims. By the Bankruptcy Court placing the AFSCME POC claims for past due debt into classes where the impairment was prospective, the Court created a dissimilarity amongst these two Classes, violating the Code.

**D.     The City Failed to Meet Its Burden in Objecting to AFSCME's POC**

Under section 101 of the Bankruptcy Code, a creditor holds a claim against a debtor to the extent that it has a "right to payment" for the asserted liability. *See* 11 U.S.C. §§ 101(5), 101(10). Section 502(b)(1) of the Bankruptcy Code provides that a claim asserted in a proof of claim shall be allowed except to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. §502(b)(1). Claims include "a cause of action or right to payment that has not yet accrued or become cognizable." 2 COLLIER ON BANKRUPTCY ¶ 101.05 at 101-38 (2011). A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). A claim is deemed allowed unless a party in interest

objects. 11 U.S.C. § 502(a). Objections may be based upon one of the specific, statutory grounds. 11 U.S.C. § 502(b).

The party objecting to a proof of claim bears the burden of proof to overcome the prima facie validity of the claim. 4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] at 502-17. "To defeat the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *In re McLaughlin*, 320 B.R. 661, 665 (Bankr. N.D. Ohio 2005)(quoting *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991)). The City's Objection fell short of reaching the necessary burden of proof. It presented vaguely worded assertions which had no application within the Plan with respect to AFSCME's POC. Instead, the Class 11 and 12 claims specifically excluded the AFSCME POC.

## IV. CONCLUSION

For its relief, Appellant AFSCME requests that this Court reverse the decision of the Bankruptcy Court, and overrule the above-referenced objections of the Debtor City of Detroit to the 13th Check and Retiree Healthcare Claims.

Dated: January 1, 2015 /s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
Jack W. Schulz, Esq.
*Counsel to Appellant AFSCME*
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
richardmack@millercohen.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

Chapter 9

CITY OF DETROIT, MICHIGAN,      Case No. 13-53846
        Debtor.            Hon. Steven W. Rhodes

_____/

AFSCME Council 25 and its Affiliated Detroit Locals

        Appellant,      Case No. 2:14-cv-14548-BAF-RSW
     v               Hon. Bernard A. Friedman

City of Detroit, Michigan,      Mag. Judge R. Steven Whalen
        Appellee.

_____/

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 1, 2015, the *Appellant Michigan AFSCME Brief On Appeal* and the *Appendix for Brief On Appeal*, was filed with the Court Clerk for United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr.
Jack W. Schulz
MILLER COHEN, P.L.C.
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
richardmack@millercohen.com