# EXHIBIT 10

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 9 |
| | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
| | ) | |
| Debtor. | ) | Hon. Steven W. Rhodes |
| | ) | |
| _____ | ) | |

### CREDITOR AFSCME COUNCIL 25's SECOND SUPPLEMENTAL SUBMISSION IN SUPPORT OF PROOF OF CLAIM 2958 PURSUANT TO SECTIONS 105 AND 502(b) OF THE BANKRUPTCY CODE 3007 AND LOCAL RULE 3007-1

NOW COMES Creditor, AFSCME Council 25, by and through its attorneys, with its Second Supplemental Submission in Support of Proof of Claim 2958, and states as follows:

AFSCME attaches the Proposed Ordinance to Amend Chapter 47 of the 1984 Detroit City Code, promulgated by the City on November 8, 2011 (Exhibit A). The Notice attaches the changes to the Code which the City made November 30, 2011. The pertinent section is Section 47-2-18, entitled Method of Financing, which includes paragraph (g), entitled Income Fund, where the ordinance revision eliminated the discretion of the Board to "transfer[]" "excess" funds beyond that needed "to cover current charges to the fund".

13-53846-tjt   Doc 8996-3   Filed 01/01/15 1 Entered 01/01/15 21:44:41   Page 1 of 63
13-53846-swr   Doc 7994   Filed 10/17/14   Entered 10/17/1

1353846141017000000000005

Appendix 203

As the Court evaluates the merits of the City's Supplemental Objection, filed October 16, 2014, Creditor again requests discovery followed by an evidentiary hearing, and all other rights of Federal Rule of Bankruptcy Procedure, Rule 9014.

## I. CONCLUSION

WHEREFORE, the Coalition of Detroit Unions respectfully requests that this Honorable Court overrule the City of Detroit's Objections.

Dated: October 17, 2014

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com

*Counsel to Michigan Council 25 of the American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO*

2

13-53846-tjt  Doc 8996-3  Filed 01/01/15  Entered 01/01/15 21:46:47  Page 3 of 63
13-53846-swr  Doc 7994  Filed 10/17/14  Entered 10/17/14 12:55:40  Page 2 of 2

Appendix 204

# EXHIBIT A

Appendix 205



CITY OF DETROIT
LAW DEPARTMENT

FIRST NATIONAL BUILDING
660 WOODWARD AVENUE, SUITE 1650
DETROIT, MICHIGAN 48226-3535
PHONE 313•224•4550  TTY:311
FAX 313•224•5505
WWW.DETROITMI.GOV

November 8, 2011

Detroit City Council
1340 Coleman A. Young
Municipal Center
Detroit, Michigan

    RE:    Proposed Ordinance to Amend Chapter 47 of the 1984 Detroit City Code,
*Retirement Systems*, Article I. *Common Provisions of the General Retirement
System*, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of
the General Retirement System*

Honorable City Council:

    The above-referenced proposed ordinance was requested by Your Honorable Body through
Council Member Saunteel Jenkins. This proposed ordinance has been approved as to form.

    Pursuant to the applicable provisions of the 1997 Detroit City Charter, the above-referenced
proposed ordinance is being submitted to Your Honorable Body for consideration. This proposed
ordinance amends Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I. *Common
Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21, and
Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement System*,
by amending Section 47-2-18, to limit payments by the General Retirement System so that neither
the General Retirement System nor the trustees charged with management of the System may
provide any savings plan, annuity plan, or other participant investment or savings vehicle that
provides an annual return to investing participants which in any year is greater than the actual
investment return net of expenses of the Retirement System invested reserves for the year in which
the return is earned and accrued, provided, that such return shall neither be greater than the assumed
annual return as expressed in the plan's valuation for that year nor less than zero; to amend the
definition of 'regular interest' to be commensurate with the limitation to be contained in Section 47-
1-18 of this Code, and to make provisions concerning the income fund commensurate with the
limitation to be contained in Section 47-1-18 of this Code.

    We are available to answer any questions that you may have concerning this proposed
ordinance. Thank you for your consideration.

Respectfully submitted,

Krystal A. Crittendon
Corporation Counsel

KAC: DAM
Attachment

G:\DOCS\MUNIC\MAZUD\A52000\LTR\DMZ2256.WPD

13-53846-tjt   Doc 8996-31   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 5 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:53:40   Page 2 of 29

Appendix 206

# SUMMARY

This proposed ordinance amends Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I. *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement System*, by amending Section 47-2-18, to limit payments by the General Retirement System so that neither the General Retirement System nor the trustees charged with management of the System may provide any savings plan, annuity plan, or other participant investment or savings vehicle that provides an annual return to investing participants which in any year is greater than the actual investment return net of expenses of the Retirement System invested reserves for the year in which the return is earned and accrued, provided, that such return shall neither be greater than the assumed annual return as expressed in the plan's valuation for that year nor less than zero; to amend the definition of 'regular interest' to be commensurate with the limitation to be contained in Section 47-1-18 of this Code, and to make provisions concerning the income fund commensurate with the limitation to be contained in Section 47-1-18 of this Code.

G:\DOCS\MUNIC\MAZUD\A23000\ORDLEG\DMZ2255.WPD

13-53846-tit   Doc 8996-3   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 6 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:55:40   Page 3 of 29

Appendix 207

1    BY COUNCIL MEMBER SAUNTEEL JENKINS:

2
3            AN ORDINANCE to amend Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*,

4    Article I. *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and

5    47-1-21, and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General*

6    *Retirement System*, by amending Section 47-2-18, to limit payments by the General Retirement

7    System so that neither the General Retirement System nor the trustees charged with management of

8    the System may provide any savings plan, annuity plan, or other participant investment or savings

9    vehicle that provides an annual return to investing participants which in any year is greater than the

10   actual investment return net of expenses of the Retirement System invested reserves for the year in

11   which the return is earned and accrued, provided, that such return shall neither be greater than the

12   assumed annual return as expressed in the plan's valuation for that year nor less than zero; to amend

13   the definition of 'regular interest' to be commensurate with the limitation to be contained in Section

14   47-1-18 of this Code, and to make provisions concerning the income fund commensurate with the

15   limitation to be contained in Section 47-1-18 of this Code.

16           IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF DETROIT THAT:
17
18           Section 1.   Chapter 47 of the 1984 Detroit City Code, *Retirement Systems*, Article I.

19   *Common Provisions of the General Retirement System*, by amending Sections 47-1-18 and 47-1-21,

20   and Article II. *Defined Benefit / Defined Contribution (Annuity) Plan of the General Retirement*

21   *System*, by amending Section 47-2-18, to read as follows:

1

13-53846-tjt   Doc 8996-3   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 7 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:55:40   Page 4 of 29

Appendix 208

Sec. 47-1-18.   Board of Trustees; Adoption of Mortality and Other Tables of Experience and Rates of Interest : Limitations on Payments By Retirement System.

(a)   The Board shall adopt such mortality and other tables of experience, and a rate or rates of regular interest, as shall be necessary for the operation of the System on an actuarial basis, provided, that the authority granted by this section shall not permit or be used to provide for an interest rate which would violate the prohibitions of Subsections (b) and (c) of this section.

(b)   The Retirement System and the trustees charged with management of the System shall not make any payment to active or retired participants other than payments that are required by the Retirement System plan as established by this Code to govern the System.  This prohibition applies to all payments that are not authorized by this Code, whether such payments be those commonly referred to as a "thirteenth check" or by any other name.

(c)   The Retirement System and the trustees charged with management of the System shall not provide any savings plan, annuity plan, or other participant investment or savings vehicle that provides an annual return to investing participants which in any year is greater than the actual investment return net of expenses of the Retirement System invested reserves for the year in which the return is earned and accrued, provided, that such return shall neither be greater than the assumed annual return as expressed in the plan's valuation for that year nor less than zero.  This prohibition shall apply to all payments made to participants in the Defined Contribution Plan of 1973 from the effective date of this amendment.

2

13-53846-tjt   Doc 8996-3   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 8 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:53:40   Page 5 of 29

Appendix 209

1    Sec. 47-1-21. Definitions.

2         Unless a different definition is contained within Section 47-3-2 of this Code, or a different

3    meaning is plainly required by context, for purposes of this Chapter the following words and phrases

4    have the meanings respectively ascribed to them by this section:

5         *Accrued Service*[24] means a member's credited service for employment rendered before the

6    date of an actuarial valuation of the Retirement System.

7         *Accumulated Contributions*[25] means the sum of all amounts deducted from the compensation

8    of a member and credited to the member's individual account in the Annuity's Savings Fund, together

9    with regular interest thereon.

10        *Administrative Board of Trustees*[26] means the Board of Trustees of the General Retirement

11   System.

12        *Administrative Rules and Regulations*[27] means rules and regulations promulgated by the

13   Administrative Board of Trustees pursuant to Section 47-1-11[28] of this Code for the administration

14   of the System and for the transaction of its business.

15        *Age, Attainment of*[29] means the age an individual reaches on the day of his or her birthday.

---

[24] 1964 Detroit City Code, Section 54-1-1, as amended by Ordinance 83-H, effective February 10, 1976, retroactive to July 1, 1975.

[25] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2.

[26] This is a new definition.

[27] This is a new definition.

[28] Section 47-1-11 gives the Board of Trustees the authority to establish rules and regulations for the administration of the pension system.

[29] This is a new definition.

3

Appendix 210

1    *Annuity*[30] means the portion of the retirement allowance which is paid for by a member's

2    accumulated contributions.

3    *Annuity Reserve*[31] means the present value of all payments to be made on account of any

4    annuity or benefit in lieu of any annuity. Such annuity reserve shall be computed upon the basis of

5    such mortality table and regular interest as shall be adopted by the Board.

6    *Average Final Compensation*[32] means:

7    (1)    On or before June 30, 1992. For those members who retired or separated from active

8           service with vested pension rights on or before June 30, 1992, the highest average

9           compensation received by a member during any period of five consecutive years of

10          credited service selected by the member from the ten years of credited service which

11          immediately precede the date of the member's last termination of City employment.

12          If a member has less than five years of credited service, the Average Final

13          Compensation shall be the average of the annual compensation received during the

14          members total years of credited service.

15   (2)    *On or after July 1, 1992 but before July 1, 1998.* For those members who retired or

16          separated from active service with vested pension rights on or after July 1, 1992 but

17          before July 1, 1998, the highest average compensation received by a member during

---

[30] 1918 Detroit City Charter, T.9, C. VI, A. 3, § 1, 1.15, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[31] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.19.

[32] 1918 Detroit City Charter T.9, C. VI, A. 3, §1, 1.13, as amended.

4

13-53846-tjt   Doc 8996-3   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 10 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:55:40   Page 7 of 29
Appendix 2.11

1         any period of four consecutive years of credited service selected by the member from

2         the ten years of credited service which immediately precede the date of the member's

3         last termination of City employment. If a member has less than four years of credited

4         service, the Average Final Compensation shall be the average of the annual

5         compensation received during the member's total years of credited service.

6    (3)    *On or after July 1, 1998.* For those members who retire or separate from active

7         service with vested pension rights on or after July 1, 1998, the highest average

8         compensation received by a member during any period of three consecutive years of

9         credited service selected by the member from the ten years of credited service which

10        immediately precede the date of the member's last termination of City employment.

11        If a member has less than three years of credited service, the Average Final

12        Compensation shall be the average of the annual compensation received during the

13        member's total years of credited service.

14   (4)    *On or after July 1, 1999.* For those members with a regular or early service

15        retirement who retire on or after July 1, 1999, in computing the highest average

16        compensation received by a member, the member shall have the option of adding the

17        value of twenty-five percent (25%) of the member's unused accrued sick leave at the

18        time of retirement to the earnings used in computing the Average Final

19        Compensation. Any member choosing to exercise this option shall be entitled to

20        receive a lump sum payment of the value of twenty-five percent (25%) of the

21        member's unused accrued sick leave at the time of retirement.

5

1        *Beneficiary*[33] means any person who is entitled to receive a retirement allowance or pension

2    payable from funds of the General Retirement System.[34]

3        Board of Trustees or Board[35] means the Board of Trustees of the General Retirement System

4    as provided in Section 47-1-4[36] of this Code.

5        *City*[37] means the City of Detroit, Michigan, a municipal corporation.

6        *City Council or Council*[38] means the legislative body of the City.

7        *Compensation*[39] means:

8    (1)    *On or before June 30, 1992.* For those members retired or separated from active

9        service with vested pension rights, on or before June 30, 1992, all remuneration,

10        *excluding* longevity payments, paid to a member because of personal services

11        rendered by the member to the employer. Compensation in excess of the limitations

12        set forth in Section 401(a)(17)[40] of the Internal Revenue Code shall be disregarded.

---

[33] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.10, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83 H, effective February 26, 1976, retroactive to July 1, 1975.

[34] A retiree is also a "beneficiary".

[35] 1918 Detroit City Charter, T.9, C. VI, A. 2, §1, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[36] Section 47-1-4 lists membership of the Board.

[37] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.4.

[38] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.5.

[39] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.6.

[40] 26 USC 401(a)(17). The current maximum compensation is $200,000.00 Pub. L. 99-514, Title XI, §1106(d)(1), (i)(5), October 22, 1986, 100 Stat 2423, 2425, Applicable to years

6

1     (2)     *On or after July 1, 1992.* For those members who retire on or after July 1, 1992, all

2              remuneration, *including* longevity payments, paid to a member because of personal

3              services rendered by the member to the employer. Compensation in excess of the

4              limitations set forth in Section 401(a)(17)[41] of the Internal Revenue Code shall be

5              disregarded.

6     *Conversion* means that date on which a member's benefits change from disability retirement

7 benefits to normal retirement benefits.

8     *Credited Service*[42] means membership service credited to a member to the extent provided

9 in this Article.

10     *1998 Defined Contribution Plan Implementation Date*[43] means that date after the Plan is

11 established on which it is open for participation by eligible members.

12     *Detroit General Retirement System or DGRS*[44] means the General Retirement System of the

13 City of Detroit established under Section 47-1-2 of this Code which consists of:

14     (1)     The *Defined Benefit Plan,* which plan is a qualified plan and trust pursuant to

15              applicable sections of the Internal Revenue Code;

16     (2)     The *1973 Defined Contribution Plan,* which Plan is a qualified plan and trust

---

beginning after December 31, 1988.

[41] Ibid.

[42] This is a new definition.

[43] This is a new definition.

[44] 1918 Detroit City Charter, T.9, C. VI, A. 1, as amended by 1964 Detroit City Code Section 54-1-1.

7

1                          pursuant to applicable sections of the Internal Revenue Code; and

2        (3)     The *1998 Defined Contribution Plan. A Defined Contribution Plan,* which is hereby

3                 designated *the 1998 Defined Contribution Plan,* the components of which are the

4                 (a) *Employee Contribution Account,*

5                 (b) The *Employee Rollover Account,*

6                 (c) The *Employer Contribution Account,* and

7                 (d) The *Annuity Savings Account,*

8                 all of which constitute the *1998 Defined Contribution Plan Retirement Trust,* which

9                 Plan is intended to be a qualified plan and trust pursuant to applicable sections of the

10                Internal Revenue Code.

11           *Employee*[45] means any regular and/or permanent officer, agent, or person in the employ of

12  the employer, as defined in this section, but does not include:

13        (1)     Individuals whose City services are compensated on a contractual or fee basis;

14        (2)     Persons who are employed in positions normally requiring less than six hundred

15                 hours of work per annum, or

16        (3)     The medical director of the pension system.

17           *Employee*[46] means the City, or any board, commission, or court serving the City, to the extent

18  that both the City, through the action of City Council, and the governing authority of such board,

19  commission or court, shall mutually agree to include the employees of such board, commission, or

20  court, as City employees under the provisions of this Chapter at such time as they are eligible. To

---

[45] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2.

[46] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.2(d)(e).

8

13-53846-tit   Doc 8996-3   Filed 01/01/15   Entered 01/01/15 21:46:47   Page 14 of 63
13-53846-swr   Doc 7994-1   Filed 10/17/14   Entered 10/17/14 12:55:40   Page 11 of 29
Appendix 215

1    the extent that any employees of a board, commission, or court are considered City employees for

2    this purpose, all employees of such Board, commission, or court, shall be so included. However, only

3    City board members and commissioners who are also employees of the City are eligible to be

4    included, unless otherwise specifically provided for by an ordinance passed or a resolution adopted

5    by the Council. In all cases of doubt, the Board of Trustees shall decide who is an employee within

6    the meaning of the provisions of this Article.

7         *Final Compensation*[47] means a member's annual rate of compensation at the time City

8    employment is last terminated.

9         *Member*[48] means any employee who has not retired.

·10        *Notice to Members, Beneficiaries, and Retirees*[49] means a mailing using First Class United

11   States Mail to the members, beneficiaries, and retirees at their last known address.

12        *Pension*[50] means the portion of a retirement allowance which is paid for by appropriations

13   made by the City into the appropriate funds.

14        *Pension Reserve*[51] means the present value of all payments to be made on account of any

15   pension, or benefit in lieu of any pension. Such pension reserve shall be computed upon the basis

---

[47] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.14.

[48] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.3, as amended by 1964 Detroit City Code Section 54-1-1.

[49] This is a new definition.

[50] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.16, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[51] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.20.

9

13-53846-tit    Doc 8996-3    Filed 01/01/15    Entered 01/01/15 21:46:47    Page 15 of 63
13-53846-swr    Doc 7994-1    Filed 10/17/14    Entered 10/17/14 12:55:40    Page 12 of 29
Appendix 216

1    of such mortality and other tables of experience, and regular interest, as shall be adopted by the

2    Board.

3        *Regular Interest*[52] means such rate or rates per annum, compounded annually, as the Board

4    of Trustees shall determine in accordance with the limitations contained in Section 47-1-18 of this

5    Code.

6        *Retiree*[53] means a former member who is receiving a retirement allowance from the *DGRS*

7    *Article II* plan or is eligible to receive fringe benefits from the *DGRS Article III* Plan.

8        *Retirement*[54] means a member's withdrawal from the employ of the City with a retirement

9    allowance or pension paid by the system.

10        *Retirement Allowance*[55] means the sum of the annuity and the pension.

11        *Retirement System or System*[56] means the general employees retirement system of the City

12    created and established by Title IX, Chapter VI, of the 1918 Detroit City Charter, as amended,[57]

13    continued in effect through the 1974 and 1997 Detroit City Charters and codified in this Article. *See*

---

[52] This is a new definition.

[53] Formerly referred to as "retirant," 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.23, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975. A "retiree" is also a beneficiary.

[54] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.18.

[55] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.17.

[56] 1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.1, as amended by 1964 Detroit City Code Section 54-1-1, as amended by Ordinance 83-H, effective February 26, 1976, retroactive to July 1, 1975.

[57] 1918 Detroit City Charter, T.9, C. VI, A. 1, as amended by 1964 Detroit City Code Section 54-1-1.

10

13-53846-tit    Doc 8996-3    Filed 01/01/15    Entered 01/01/15 21:46:47    Page 16 of 63
13-53846-swr    Doc 7994-1    Filed 10/17/14    Entered 10/17/14 12:55:40    Page 13 of 29
Appendix 217

1    *DGRS.*

2    *Service*[58] means personal services rendered to the City by a person as an employee of the City

3    as defined in Section 47-1-21 of this Code, who is compensated by the City.

4    *Service credit for purposes of the 1973 Defined Benefit/Defined Contribution (Annuity)*

5    *Plan*[59] means that in accordance with such rules and regulations as the Board shall adopt, each

6    member shall be credited with service as follows: 1) One month of service credit is earned when the

7    member is paid for eighty hours of work during the month; 2) A full year of credit is earned for nine

8    months of credit in any calendar year, except the member's last year of work. Less than nine months

9    of service rendered in a calendar year shall neither be credited as a full year of service, nor shall more

10   than one year of service be credited to any member for service rendered in any one calendar year.

11   Service credit is used to determine eligibility for service retirement, vesting, non-duty disability and

12   survivor benefits. Service credit is also earned by a member retired on a duty disability or while

13   receiving Workers' Compensation benefits.

14   **ARTICLE II.  DEFINED BENEFIT / DEFINED CONTRIBUTION (ANNUITY) PLAN**
15   **OF THE GENERAL RETIREMENT SYSTEM.**

16   Sec. 47-2-18.  Method of financing.[129]

17        (a)   *Annuity Savings Fund of the 1973 Defined Contribution Plan.*[130]

18        (1)   The *Annuity Savings Fund* of the *1973 Defined Contribution Plan* shall be the fund

---

[58]  1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.7.

[59]  1918 Detroit City Charter, T.9, C. VI, A. 3, §1, 1.22.

[129]  1918 Detroit City Charter, T.9, C. VI, A. 7.

[130]  1918 Detroit City Charter, T.9, C. VI, A. 7, §1.

11

13-53846-tit    Doc 8996-3    Filed 01/01/15    Entered 01/01/15 21:46:47    Page 17 of 63
13-53846-swr    Doc 7994-1    Filed 10/17/14    Entered 10/17/14 12:55:40    Page 14 of 29
Appendix 218

1      in which shall be accumulated at regular interest <u>in accordance with the limitations</u>

2      <u>that are contained in Section 47-1-18 of this Code,</u> the contributions of Members to

3      provide their annuities.  At the election of the Member, the amount of the basic

4      contribution of a Member to the Retirement System may be zero percent (0%), three

5      percent (3%), five percent (5%), or seven percent (7%) of annual compensation.  If

6      a Member elects three percent (3%), his or her contribution shall be that amount

7      which is subject to taxation under the provisions of the *Federal Insurance*

8      *Contribution Act,* 26 USC 3101 *et seq.* (Act), plus five percent (5%) of the portion

9      of annual compensation, if any, which exceeds the amount subject to taxation under

10      that Act.

11    (2)    The contribution rate elected by the Member under Section 47-2-18(a)(1) of this

12      Code shall be deducted from the Members' compensation notwithstanding that the

13      minimum compensation provided by law for any Member shall be reduced thereby.

14      Payment of compensation, less said deductions, shall be a complete discharge of all

15      claims and demands whatsoever for the services rendered by the said Member during

16      the period covered by such payment, except as to benefits provided under this

17      Article.

18    (3)    Upon retirement of a Member with a *Retirement Allowance,* the Member's

19      accumulated contributions shall be transferred from the *Annuity Savings Fund* to the

20      *Annuity Reserve Fund,* refunded to the Member, or a combination thereof.

21    (b) *Annuity Reserve Fund.*[131] The *Annuity Reserve Fund* shall be the fund, from which all

---

[131] 1918 Detroit City Charter, T.9, C. VI, A. 7, §2.

12

1      annuities and benefits in lieu of annuities payable as provided in this Article, shall be paid. If a

2      disability retiree is reinstated to active City service, the retiree's Annuity Reserve at that time shall

3      be transferred from the *Annuity Reserve Fund* to the *Annuity Savings Fund* and credited to his or her

4      individual account therein.

5.         (c) *Pension Accumulation Fund.*[132] The *Pension Accumulation Fund* shall be the fund in

6      which shall be accumulated reserves for the pensions and other benefits payable from the

7      contributions made by the City, and from which shall be paid pensions and other benefits on account

8      of Members with prior service credit, and transfers as provided in this Section, Contributions to and

9      payments from the *Pension Accumulation Fund* shall be made as follows:

10         (1)     Upon the basis of such mortality and other tables of experience and Regular Interest,

11              as the Board shall adopt from time to time, the Actuary shall annually compute the

12              amount of contributions, which, when made annually by the City during the entire

13              prospective City service of Members without prior service credit, will be sufficient

14              to provide the pension reserves required at the time the Members leave City

15              employment, to cover the pensions to which they might be entitled or which might

16              be payable because of their City employment. Upon the retirement of a Member

17              without prior service credit, or upon a Member's death in the performance of duty,

18              the *Pension Reserve Fund* for the pension or pensions to be paid on the Member's

19              account shall be transferred from the *Pension Accumulation Fund* to the *Pension*

20              *Reserve Fund.*

---

[132] 1918 Detroit City Charter, T.9, C. VI, A. 7, §3, as amended by Ordinance 84-7, effective February 10, 1976, retroactive to July 1, 1975.

13

1      (2)    Upon the basis of such mortality and other tables of experience and regular interest

2             as the Board shall adopt from time to time, the Actuary shall compute annually the

3             pension reserve liabilities for pensions being paid to Retirees and Beneficiaries.

4      (3)    On an annual basis, the Board shall ascertain and report to the Mayor and the Council

5             the amount of City contributions due to the System. The Council shall appropriate

6             and the City shall pay such contributions during the ensuing Fiscal year. When paid,

7             such contributions shall be credited to the *Pension Accumulation Fund.*

8      (4)    If the amount appropriated by the City and paid to the System for any Fiscal year is

9             insufficient to make the transfers and pay the pensions from the *Pension*

10           *Accumulation Fund* as provided in this Section, the amount of such insufficiency

11           shall be provided by the appropriating authorities of the City.

12    (d) *Accrued Liability Fund.* Pursuant to Ordinance No. 5-05, which authorizes the creation

13  of the Detroit General Retirement Service Corporation, the City has entered into a transaction (the

14  "Pension Funding Transaction") to obtain funds as an alternative to those available through the

15  traditional funding mechanism described above in Subsection (c). The proceeds generated by the

16  Pension Funding Transaction (or any Additional Pension Funding Transactions, as described below)

17  that will be deposited into the System will be termed the "Funding Proceeds." The Funding

18  Proceeds will be deposited into a new fund in the System to be called the *Accrued Liability Fund.*

19  The purpose of the Funding Proceeds will be to fund all or part of the heretofore unfunded actuarial

20  accrued liability ("UAAL") of the System, as determined as of a date certain, ~~i.e.~~ that is, the

21  "Determination Date," pursuant to the System's actuarial valuation as of that date. The Funding

22  Proceeds will be assets of the System and will be applied, together with all other assets of the

14

1    System, to fund the System's obligation to pay accrued benefits.

2    This *Accrued Liability Fund* shall contain only the Funding Proceeds of this Pension Funding

3    Transaction, and any earnings thereon. Should the City, by future ordinance, choose to raise

4    additional moneys by additional pension funding transactions ("Additional Pension Funding

5    Transactions") in order to fund the then existing UAAL of the System as of a future date certain, a

6    new and separate *Accrued Liability Fund* shall be created within the System to contain the proceeds,

7    and any earnings thereon, of any Additional Pension Funding Transactions, and a new *Accrued*

8    *Liability Fund* will be created for each successive Additional Pension Funding Transaction

9    undertaken by the City, if any. The treatment of any Additional *Accrued Liability Fund* shall be the

10    same as described below:

11        (1)    The Funding Proceeds deposited in the *Accrued Liability Fund* will be subject to the

12                oversight and investment direction of the Board of Trustees of the General

13                Retirement System, consistent with the Board's obligations under Section 47-2-20 <u>of</u>

14                <u>this Code</u> (Management of Funds). The Board will invest the Funding Proceeds as

15                part of the System's overall assets, and will not differentiate the Funding Proceeds

16                from other System assets for investment purposes.

17        (2)    All interest, dividends and other income derived from the investment of the Funding

18                Proceeds shall be credited annually to the applicable *Accrued Liability Fund* on a

19                total System rate of return basis determined by crediting the applicable *Accrued*

20                *Liability Fund* with the investment return experienced by the System in total for all

21                of its investments for the year. This shall be done by first determining the rate of

22                return for the total assets in the System for the fiscal year, and then crediting back to

15

1       each *Accrued Liability Fund* an amount that is determined by multiplying that rate

2       of return times the balance in the *Accrued Liability Fund* as of the beginning of the

3       fiscal year, less an amount obtained by multiplying one-half of the System's rate of

4       return times the amount transferred to the *Pension Accumulation Fund* for that year.

5       As provided in Section 47-2-18(g) of this Code, the interest, dividends and other

6       income derived from the investment of the Funding Proceeds deposited in any

7       *Accrued Liability Fund* are "other moneys" the disposition of which is specifically

8       provided for in this Article, and these moneys will not be credited to the *Income*

9       *Fund.* The interest, dividends and other income derived from the investment of the

10      Funding Proceeds deposited in any *Accrued Liability Fund* will not be credited to any

11      Funds other than the *Pension Accumulation Fund.*

12    (3)   Upon the creation of the *Accrued Liability Fund* and the deposit of the Funding

13       Proceeds into the applicable *Accrued Liability Fund,* there shall be established a

14       schedule for transferring assets of the *Accrued Liability Fund* by crediting them to

15       the *Pension Accumulation Fund* on a regular basis over the period required to fully

16       amortize that portion of the System's UAAL determined as of the applicable

17       Determination Date.

18           The System's UAAL determined as of the applicable Determination Date

19       shall be the "Determined Accrued Liability." The period over which the Determined

20       Accrued Liability is to be fully amortized, as specified in the System's actuarial

21       valuation as of the applicable Determination Date, is the "Amortizing Period." The

22       amount to be transferred each fiscal year (or monthly portion thereof) to the *Pension*

16

1    *Accumulation Fund* from the *Accrued Liability Fund* is the "Scheduled Amortizing

2    Amount."

3                    With respect to the Pension Funding Transaction and any Additional Pension

4    Funding Transactions, the Scheduled Amortizing Amount will equal a level

5    percentage of the City's monthly payroll during the fiscal year, as determined by the

6    City's weekly payroll reports made available to the Board. The level percentage of the

7    City's monthly payroll that will be used to determine the Scheduled Amortizing

8    Amount will be a level percentage that is equal to the level percentage that is

9    specified in the actuarial valuation as of the applicable Determination Date as being

10   the percentage of the City's monthly payroll required to amortize the Determined

11   Accrued Liability over the Amortizing Period multiplied by a fraction. The numerator

12   of the fraction shall be the amount of the applicable Funding Proceeds up to the full

13   amount of the Determined Accrued Liability as of the Determination Date. The

14   denominator of the fraction shall be the System's Determined Accrued Liability on

15   that date.

16                   *Commentary*: By way of example only, the Scheduled Amortizing Amount

17   would be determined as follows: (1) the Determination Date is June 30, 2004; (2) the

18   Funding Proceeds are deposited into the System during the 2004-2005 Fiscal Year,

19   (3) the June 30, 2004 actuarial valuation produced a UAAL of $800 million, (4) the

20   City's contribution required to amortize that UAAL is 16% of the City's payroll, and

21   (5) the Funding Proceeds are $600 million, then the Scheduled Amortizing Amount

22   for Fiscal Year 2005-06 would be 16% times ($600 million/$800 million) times the

17

| | |
|---|---|
| 1 | City's payroll for 2005-2006. This would be 12% times the City's payroll for that |
| 2 | fiscal year. |
| 3 | With respect to the Pension Funding Transaction, or any Additional Pension |
| 4 | Funding Transactions, where the applicable Determination Date occurs after the date |
| 5 | of the actuarial valuation that determines the City's contribution for the fiscal year |
| 6 | during which the applicable Funding Proceeds are deposited into the System, for such |
| 7 | fiscal year, there will be transferred from the applicable *Accrued Liability Fund* to |
| 8 | the *Pension Accumulation Fund* an amount that is specified in such actuarial |
| 9 | valuation as being the City's required contribution needed to amortize the System's |
| 10 | UAAL as of the date of such actuarial valuation, multiplied by a fraction. The |
| 11 | numerator of the fraction shall be the amount of the applicable Funding Proceeds up |
| 12 | to the full amount of the UAAL specified in such actuarial valuation, and the |
| 13 | denominator of the fraction shall be the System's total UAAL as set forth in that same |
| 14 | actuarial valuation. |
| 15 | *Commentary*: By way of example only, the Scheduled Amortizing Amount |
| 16 | in this case would be determined as follows: (1) the Determination Date is June 30, |
| 17 | 2004, (2) the Funding Proceeds had been deposited into the System during the 2004- |
| 18 | 2005 Fiscal Year, (3) the June 30, 2003 actuarial valuation produced a UAAL of |
| 19 | $733 million, (4) the City's contribution required to amortize that UAAL is 13.9% |
| 20 | of the City's payroll, and (5) the Funding Proceeds are $600 million, then the |
| 21 | Scheduled Amortizing Amount for Fiscal Year 2004-05 would be 13.9% times ($600 |
| 22 | million/$733 million) times the City's payroll for 2004-2005. This would be 11.4% |

18

1    times the City's payroll for that fiscal year.

2              Should the Board at some future time adopt a different period for amortizing

3         the System's UAAL (a "Revised Amortizing Period"), the Scheduled Amortizing

4         Amount for ensuring years may change. If the Revised Amortizing Period provides

5         for a longer period during which to amortize the System's UAAL (~~i.e.~~ that is, an

6         "Extended Amortizing Period"), then the Amortizing Period initially used to

7         amortize the applicable Determined Accrued Liability will also be revised. There

8         will then be established a new schedule for amortizing the Determined Accrued

9         Liability, and the Scheduled Amortizing Amount will be based on the level

10        percentage of the City's monthly payroll being equal to what it would be if the then

11        unamortized balance of the Determined Accrued Liability were re-amortized over the

12        Extended Amortizing Period. If the Revised Amortizing Period is changed so that

13        the System's UAAL is to be amortized over a shorter period than the one initially

14        used to amortize the applicable Determined Accrued Liability, then that Scheduled

15        Amortizing Amount will not be changed.

16    (4)  Each year (or monthly portion thereof), when the City is required to make its regular

17        contribution to the System -- the amount of which is to be determined pursuant to

18        Subsection (c) and the timing of which is set forth in Section 47-2-19(b) of this Code

19        -- the Board will transfer the Scheduled Amortizing Amount from the *Accrued*

20        *Liability Fund* and credit it to the *Pension Accumulation Fund;* provided, however,

21        that this transfer cannot occur unless and the until the Board has been notified

22        pursuant to the Pension Funding Transaction, or any Additional Pension Funding

19

| | | |
|---|---|---|
| 1 | | Transaction, if applicable, that the City is current on the service payments required |
| 2 | | under the applicable Pension Funding Transaction. |
| 3 | (5) | Should the Scheduled Amortizing Amount not be available for transfer because of |
| 4 | | the City's failure to make a timely service payment pursuant to the applicable |
| 5 | | Pension Funding Transaction, the Board will take any permitted action, including the |
| 6 | | filing of a civil action against the City, as contemplated in Section 47-4-3(3) of this |
| 7 | | Code, to effectuate the transfer of the Scheduled Amortizing Amount. |
| 8 | | Should the City's Finance Director certify to the Board by a duly attested |
| 9 | | notice that the City has no available funds to make the service payments required by |
| 10 | | the applicable Pension Funding Transaction, in that specific circumstance, the Board |
| 11 | | shall be authorized to transfer the Scheduled Amortizing Amount for that fiscal year |
| 12 | | (or monthly portion thereof) to the *Pension Accumulation Fund,* absent the notice |
| 13 | | requirement set forth in Section 47-2-18(d)(4) of this Code. |
| 14 | (6) | Since the Funding Proceeds are to be considered assets of the System and are |
| 15 | | intended to fund the applicable Determined Accrued Liability, the City shall be |
| 16 | | required to make only a proportional contribution for any fiscal year (or monthly |
| 17 | | portion thereof) ending after the date the Funding Proceeds are deposited into the |
| 18 | | applicable Accrued Liability Fund, but prior to a fiscal year whose corresponding |
| 19 | | actuarial valuation includes the Funding Proceeds in the System's total assets. The |
| 20 | | proportional contribution to fund the System's then existing UAAL, if any, shall be |
| 21 | | the level percentage of the City's payroll specified in the actuarial valuation for the |
| 22 | | applicable fiscal year as the City's required contribution needed to amortize the |

20

1  System's then existing UAAL, multiplied by a fraction. The numerator of the

2  fraction shall be the amount of the System's total UAAL as determined in such

3  actuarial valuation minus the amount of the applicable Funding Proceeds, but not less

4  than zero. The denominator of the fraction shall be the amount of the System's total

5  UAAL in such valuation. Actuarial valuations following the deposit of the

6  applicable Funding Proceeds into the System shall include the Funding Proceeds in

7  the total assets of the System to determine any ensuing UAAL of the System, and the

8  Funding Proceeds shall offset any such actuarial liability accordingly.

9  *Commentary*: By way of example only, the following indicates how the

10  procedure described above would operate. Assume the following facts -- (1) the

11  Determination Date is June 30, 2004; (2) the June 30, 2004 actuarial valuation

12  produced a UAAL of $800 million and a contribution toward the UAAL of 16% of

13  the City's payroll; (3) the Funding Proceeds were $600 million and were deposited

14  in the System during the 2004-2005 Fiscal Year; (4) the first actuarial valuation

15  which included the Funding Proceeds in the System's assets was as of June 30, 2005

16  and (5) the June 30, 2003 valuation which determines the City's required

17  contribution for fiscal 2004-05 produced a total UAAL of $733 million and a

18  contribution toward that UAAL of 13.9% of the City's payroll. Then:

19  •       The fiscal year ending after the date of deposit would be the year ending June

20          30, 2005, or the 2004-2005 Fiscal Year.

21  •       The first fiscal year whose corresponding valuation reflected the Funding

22          Proceeds in its assets would be the 2006-2007 year.

21

1     •     Thus, the City's required UAAL contribution for fiscal 2004-2005 would be

2                  13.9% of the City's payroll times ($733 million -- $600 million) divided by

3                  $733 million, or 2.5% of payroll. The City's required UAAL contribution for

4                  fiscal 2005-06 would be 16% of the City's payroll times ($800 million --

5                  $600 million) divided by $800 million, or 4% of the City's payroll.

6     •     Beginning with the Fiscal Year 2006-2007, whose contribution is determined

7                  by the June 30, 2005 actuarial valuation, the City's required UAAL

8                  contribution would be the percentage of its payroll developed in the

9                  corresponding actuarial valuation that included the Funding Proceeds as

10                  being part of the System's assets.

11      Any contribution the City has made to the System for any fiscal year during which

12      the Funding Proceeds from any applicable Pension Funding Transaction have become

13      assets of the System. Where the amount of the contribution is equal to or less than

14      the normal cost of that fiscal year, the City's contribution shall be deemed to have

15      been made in satisfaction of its obligation to contribute an amount equal to the

16      System's normal cost for that fiscal year, and not as payment towards any portion of

17      its obligation to pay an amortized portion of the System's UAAL due in that fiscal

18      year. The term "normal cost" as used in this Section 47-2-18(d)(6) of this Code, shall

19      be given its generally accepted actuarial meaning.

20      To the extent the City's contribution for that fiscal year exceeds its required

21      contribution for normal cost owed in that fiscal year, its excess contributions shall be

22      deemed as having been made for the immediately following fiscal year, and shall

| | | |
|---|---|---|
| 1 | | offset the City's normal cost contribution for the immediately following |
| 2 | | fiscal year. |
| 3 | | *Commentary*: By way of example only, the following indicates how the |
| 4 | | procedure described in the preceding paragraphs would operate. Assuming the same |
| 5 | | facts as in the prior *Commentary*, and the City contributed $40 million for the 2004- |
| 6 | | 2005 Fiscal Year and the total normal cost for that year was $40 million: |
| 7 | | •    The entire $40 million would be deemed as payment of the required normal |
| 8 | | cost for 2004-2005, and |
| 9 | | •    No part of the $40 million contribution would be deemed payment toward |
| 10 | | UAAL. |
| 11 | | Now assume that the facts remain the same, but that the City had contributed a total |
| 12 | | of $45 million for 2004-2005: |
| 13 | | •    The City's total required contribution for 2004-2005 would be deemed paid |
| 14 | | in full, and |
| 15 | | •    $5 million, ~~i.e.~~ that is, $45 million minus $40 million, would be deemed |
| 16 | | prepayment of the City's required normal cost for 2005-2006 and its required |
| 17 | | normal cost contribution for 2005-2006 would be reduced accordingly. |
| 18 | (7) | The System's auditor shall verify (a) the assets credited to the *Pension Accumulation* |
| 19 | | *Fund* and any *Accrued Liability Fund* at the beginning and end of each fiscal year, |
| 20 | | (b) that each Fund had been properly credited, and (c) that transfers from the *Accrued* |
| 21 | | *Liability Fund(s)* to the *Pension Accumulation Fund* had occurred as intended under |
| 22 | | this Section 47-2-18(d) of this Code. |

23

1.       (8)    Should the System's auditor certify that the total assets then existing in the System,

2.       not including the assets in any *Accrued Liability Fund,* together are insufficient to

3.       pay the benefits then due under the System, the System's auditor will then determine

4.       and certify the minimum amount needed to fund the benefits then due and owing (the

5.       "Minimum Necessary Amount"). In this limited circumstance, the Board is

6.       authorized to transfer the Minimum Necessary Amount from the *Accrued Liability*

7.       *Fund* to the *Pension Accumulation Fund* absent the notification required pursuant to

8.       Section 47-2-18(d)(4) of this Code.

9.       (9)    At the end of the Amortizing Period, or the end of the Extended Amortizing Period,

10.       if applicable, should there be any moneys that remain credited to the *Accrued*

11.       *Liability Fund,* the Board may transfer, at its discretion, any such remaining moneys,

12.       in whole or in part, by crediting them to the *Pension Accumulation Fund.* The

13.       *Pension Accumulation Fund* is the only Fund into which the remaining moneys

14.       credited to any *Accrued Liability Fund* may be transferred.

15.       (e) *Pension Reserve Fund.* ~~132~~ [133] The *Pension Reserve Fund* shall be the fund from which

16. pensions shall be paid to beneficiaries. Should a Disability Retiree be reinstated to active service,

17. the Retiree's pension reserve at that time, shall be transferred from the *Pension Reserve Fund* to the

18. *Pension Accumulation Fund.*

19.       (f) *Expense Fund.* ~~132~~ [134] The *Expense Fund* shall be the fund to which shall be credited all

20. money provided by the City to pay the administrative expenses of the Retirement System, and from

---

[133] 1918 Detroit City Charter, T.9, C. VI, A. 7, §4.

[134] 1918 Detroit City Charter, T.9, C. VI, A. 7, §5.

24

1    which shall be paid all the expenses necessary in connection with the administration and operation

2    of the System.

3         (g) *Income Fund.*[135] The *Income Fund* shall be the Fund to which shall be credited all

4    interest, dividends, and other income derived from the investments of the System (other than those

5    derived from the investments credited to any *Accrued Liability Fund*), all gifts and bequests received

6    by the System, and all other moneys the disposition of which is not specifically provided for in this

7    Article. There shall be paid or transferred from the *Income Fund,* all amounts required to credit

8    Regular Interest to the various Funds of the Retirement System, except for the *Accrued Liability*

9    *Fund* which is to be credited with interest, dividends and other earnings pursuant to Section 47-2-

10    18(d)(2) of this Code in accordance with the limitations that are contained in Section 47-1-18 of this

11    Code. ~~Whenever the balance of the *Income Fund* is more than sufficient to cover current charges~~

12    ~~to the fund, such excess amount may be used for contingency reserves or may be transferred to any~~

13    ~~of the other Charter-created funds of the Retirement System within this *Article II* except the *Expense*~~

14    ~~*Fund,* to cover special needs of the Funds as the Board shall determine; provided, however, that in~~

15    ~~determining whether the balance of the *Income Fund* is more than sufficient to cover current charges~~

16    ~~to the Fund, the balance credited to any *Accrued Liability Fund* shall not be taken into account. In~~

17    ~~the event the balance in the Income Fund is insufficient to cover the charges to the Fund, the amount~~

18    ~~of the insufficiency shall be transferred from the *Pension Accumulation Fund* to the *Income Fund.*~~

19         (h) *Maintenance of Reserves.*[136]

20         (1)    The maintenance of proper reserves in the various Charter-based funds of the

---

[135] 1918 Detroit City Charter, T.9, C. VI, A. 7, §6.

[136] 1918 Detroit City Charter, T.9, C. VI, A. 7, §7.

25

1                  Retirement System within this *Article II* except the *Expense Fund* are hereby made

2                  obligations of the *Pension Accumulation Fund.*

3        (2)       City contributions to the Retirement System to the extent necessary to provide

4                  pensions on account of members who are employees of a revenue-supported division

5                  of the City shall be made from the revenues of the said division. Any City

6                  contribution to the Retirement System from any Fund by law with a certain and

7                  definite purpose shall at the direction of the Finance Director, be accounted for

8                  separately.

9           **Section 2.** All ordinances, parts of ordinances, that conflict with this ordinance are repealed.

10           **Section 3.** This ordinance is declared necessary to preserve the public peace, health, safety,

11 and welfare of the People of the City of Detroit.

12           **Section 4.** In the event that this ordinance is passed by a two-thirds (2/3) majority of the City

13 Council Members serving, it shall be given immediate effect and become effective upon publication

14 in accordance with Section 4-116 of the 1997 Detroit City Charter. In the event that this ordinance

15 is passed by a less than two-thirds (2/3) majority of the City Council Members serving, it shall

16 become effective no later than thirty (30) days after enactment in accordance with Section 4-115 of

17 the 1997 Detroit City Charter.

18

19 Approved as to form:

20

21 *Krystal A. Crittendon*

22 Krystal A. Crittendon     *DAM*

23 Corporation Counsel

26

13-53846-tit  Doc 8996-3  Filed 01/01/15  Entered 01/01/15 21:46:47  Page 32 of 63
13-53846-swr  Doc 7994-1  Filed 10/17/14  Entered 10/17/14 12:55:40  Page 29 of 29

Appendix 283

# EXHIBIT 11

```
 1              UNITED STATES BANKRUPTCY COURT
               EASTERN DISTRICT OF MICHIGAN
 2                  SOUTHERN DIVISION

 3  IN THE MATTER OF,          Case No. 13-53846
                               Detroit, Michigan
 4  CITY OF DETROIT, MI        October 20, 2014
    _____/  9:00 a.m.
 5

 6      IN RE: CONTINUED TRIAL RE: OBJECTIONS TO CHAPTER 9 PLAN
             BEFORE THE HONORABLE STEVEN W. RHODES
 7           TRANSCRIPT ORDERED BY: ROBIN WYSOCKI

    APPEARANCES:
 8
    For the City of Detroit, MI:   HEATHER LENNOX, ESQ.
 9                                  Jones, Day
                                    222 East 41st Street
10                                  New York, NY 10017-6702
                                    212-326-3939
11
    For AFSCME:                     RICHARD MACK, JR., ESQ.
12                                  (P58657)
                                    Miller, Cohen
13                                  6700 West Lafayette Blvd.
                                    4th Floor
14                                  Detroit, MI 48226-3191
                                    313-964-4454
15
    For the Official Committee:     SAM ALBERTS, ESQ.
16                                  Dentons, US, LLP
                                    1301 K Street, N.W.
17                                  Suite 600, East Tower
                                    Washington, D.C. 20005-3364
18                                  202-408-6400

19  Court Recorder:                 Letrice Calloway

20  Transcriber:                    Deborah L. Kremlick

21

22  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
23

24
```

1    (Court in Session)

2         THE CLERK:  All rise. Court is in session.  Please

3    be seated.  Case number 13-53846, City of Detroit, Michigan.

4         MS. LENNOX:  Good morning, Your Honor.  Heather

5    Lennox of Jones, Day on behalf of the city.

6         I thought I would start this morning by reporting to Your

7    Honor that the UAW and AFSCME have informed the city that they

8    will each withdraw their objections to the plan confirmation

9    with prejudice as to the city only.

10        And the city will amend the plan of adjustment in the

11   Detroit general VEBA trust to add language to make clear that

12   the library retirees and six Cobo Hall retirees will be in the

13   general retiree VEBA.

14        Now we have negotiated the plan language with the library

15   and with the UAW and AFSCME, so we are all agreed on that.  I

16   understand now that the retiree committee may have an issue

17   with some of this language but as to the city and the library

18   unions we are agreed.

19        THE COURT:  Will there be a process to bring a final

20   conclusion to that?

21        MS. LENNOX:  Well, we were certainly discussing that

22   issue before Court today and I don't -- I don't think the

23   language in the plan is going to change.  That's what we've

24   negotiated.  The issue is -- is frankly that is coming up is

1       It involves what -- what benefits will be provided by the

2   VEBA trust and that is not something that the city decides.

3   So to me it's not a plan issue.

4           THE COURT:  How many library employees are there?

5           MS. LENNOX:  We -- we expect that there will be

6   about 330 or so library retirees that are in the VEBA and six

7   Cobo Hall retirees.

8           THE COURT:  Who is here for the retiree committee?

9   I just have one question for you.  Sir, for the record, sir --

10          MR. ALBERTS:  Sam Alberts from Dentons.

11          THE COURT:  Here's my question.

12          MR. ALBERTS:  Yes.

13          THE COURT:  Really?

14          MR. ALBERTS:  Yes.  And I'll -- and I'll --

15          THE COURT:  Seriously?

16          MR. ALBERTS:  Yes.

17          THE COURT:  Three hundred and thirty-six employees

18  out of --

19          MR. ALBERTS:  Yes.

20          THE COURT:  -- 10,000?

21          MR. ALBERTS:  Yes.  May I explain?

22          THE COURT:  I don't want an explanation, I want you

23  to resolve it.

24          MR. ALBERTS:  Well, Your Honor, I actually offered

1          THE COURT:  I want you to resolve it now, go resolve

2  it.

3          MR. ALBERTS:  Your Honor, we tried this morning.  We

4  have a mediation at 1:30.  I would suggest that the parties

5  meet in mediation to try to resolve the issue.

6          THE COURT:  Go resolve it.  Okay.  Okay.  Anything

7  further before I give my decision regarding the AFSCME matter?

8          MS. LENNOX:  No, Your Honor.  That was the only

9  other matter on for this morning.

10          THE COURT:  All right.  May I have appearances

11  regarding the AFSCME matter?

12          MS. LENNOX:  Heather Lennox for the city.

13          MR. MACK:  Richard Mack, Your Honor, AFSCME.

14          THE COURT:  This matter is before the Court on the

15  city's action to proof of claim number 2958 filed by AFSCME 25

16  and its affiliated locals.

17      The core of the dispute is whether the settlement entered

18  into between the city and AFSCME early in the case includes

19  AFSCME's thirteenth check claim and related claims and its

20  health care modification claim.  The parties refer to this as

21  Line 7 and 17 on AFSCME's proof of claim.

22      AFSCME filed its proof of claim on February 21st, 2014 in

23  the total amount of over 8.7 billion dollars.  This includes

24  several claims other than the two that are presently before

1 settlement agreement.

2    On May 15, 2014 the city filed its fourth amended plan in

3 which it provides for the allowance of Class 11, the GRS

4 pension claims in the amount of $8,879,000,000 and the

5 allowance of Class 12, the OPEB claims in the amount of

6 $4,303,000,000.

7    The plan provides the definition of the GRS pension claim

8 as follows:

9    "Any claim (other than an OPEB claim), whether asserted

10 by current or former employees of the city, their heirs or

11 beneficiaries, or by the GRS, or any trustee thereof, or any

12 other entity acting on the GRS' behalf against the city, or

13 any fund managed by the city (including but not limited to the

14 general fund, the water fund, the sewage disposal fund, the

15 Detroit General Retirement System Service Corporation fund, or

16 the pension funds), based upon, arising under, or related to

17 any agreement, commitment, or other obligation whether

18 evidenced by contract, agreement, rule, regulation, ordinance,

19 or statute -- statute or law for A, any pension, disability,

20 or other post-retirement payment or distribution in respect of

21 the employment of current or former employees, or B, the

22 payment by the GRS to persons who may at any time participated

23 in, were beneficiaries of, or accrued post-retirement pension

24 or financial benefits under the GRS".

1 provides the definition of OPEB claims as:

2     "Any claim against the city for OPEB benefits held by a

3 retiree who retired on or before December 31, 2014 and is

4 otherwise eligible for OPEB benefits and any eligible

5 surviving beneficiaries of such retiree". This is at plan

6 Section (I)(A)255.

7     The plan further states at (I)(A)254:

8     "OPEB benefits means collectively post-retirement health,

9 vision, dental, life and death benefits provided to retired

10 employees of the city and their surviving beneficiaries

11 pursuant to employee health life -- health and life insurance

12 benefit plan, and employee's death benefits plan, including

13 the members of the certified class in the action captioned

14 <u>Weiler, et al v City of Detroit</u>, case number 06-619737-CK

15 (Wayne County Circuit Court), pursuant to the 'consent

16 judgment and order of dismissal' entered in that action on

17 August 26th, 2019".

18     The Bankruptcy Code defines a claim as:

19     "A, right to payment whether or not such right is reduced

20 to judgment, liquidated, unliquidated, fixed, contingent,

21 matured, unmatured, disputed, undisputed, legal, equitable,

22 secured or unsecured. Or B, right to an equitable remedy for

23 breach of performance if such breach gives rise to a right to

24 payment whether or not such right to an equitable remedy is

1  disputed, undisputed, secured, or unsecured". And that's in

2  11 USC Section 105(5).

3      The city asserts that pursuant to the plain language of

4  the plan, the pension claim in the claim at issue is included

5  in Class 11. Likewise the city argues that AFSCME's health

6  care modification claim in the proof of claim before the

7  Court, is included in Class 12.

8      AFSCME contends that both claims were intended to be in

9  Class 14 which is the class for unsecured claims. It asserts

10  that the language in the plan is at the very least ambiguous

11  and that the Court should consider the way the phrase GRS

12  pension claim is used throughout the plan and its context in

13  the plan.

14      AFSCME contends that the definition of pension claim is

15  intended to include only the claimant's rights to prospective

16  plan payments, rather than the credits and disbursements that

17  should have been made in the past that were covered in its

18  proof of claim.

19      Likewise with respect to the health care modification

20  claim, AFSCME asserts that it is not included in Class 12

21  because Class 12 deals exclusively with prospective payments

22  or distributions and is not intended to include past due

23  benefits.

24      In the Official Committee of Unsecured Creditors v Dow

1  Circuit, 2006, the Court stated:

2      "In interpreting a confirmed plan, Courts use contract

3  principals since the plan is effectively a new contract

4  between the debtor and its creditors".

5      Absent ambiguity the plan, "is to be enforced as written

6  unless -- I'm sorry, regardless of whether it is in line with

7  the parties' prior obligations".  Id.  The Court concludes

8  that the language of the plan is not ambiguous and that the

9  definitions of GRS claim and OPEB claim in the plan plainly

10  include the claims at issue here.

11      The Court finds that AFSCME's attempt to distinguish

12  between the claimant's rights to prospective payments, and the

13  rights to past due claims is not consistent with the broad

14  definitions of the claims in Classes 11 and 12, or with the

15  broad definition of a claim in the Bankruptcy Code.

16      By operation of Section 944(b) of the Bankruptcy Code,

17  the debts that AFSCME seeks to assert through these two claims

18  will be discharged.  By operation of Section 944(a), the

19  city's only debts coming out of bankruptcy will be those set

20  forth in the confirmed plan if of course it is confirmed.

21      AFSCME relies in part upon the city's May 15, 2014

22  objection to its proof of claim in support of its argument

23  that the pension claim at issue here was not included in the

24  settlement.  Specifically it asserts that the city's objection

1| Class 11 as the city now asserts.

2| It also argues that the Court should consider evidence

3| from the confidential mediations regarding the negotiations

4| that led to the settlement.  The Court rejects this argument.

5| First, the Court finds that the city did raise this issue

6| in Paragraph 19 of its objection.  Second, and more important,

7| in <u>Shachachner v Blue Cross and Blue Shield of Ohio</u>, 77 F 3d

8| 889, 6th Circuit 1996.

9| The 6th Circuit held that extrinsic evidence of contract

10| intent is admissible only if the contract is ambiguous on its

11| face.  Meaning that it is subject to -- to two reasonable

12| interpretations.

13| And the Court further held that extrinsic evidence cannot

14| be used to create an ambiguity.  Further, the mere fact that

15| the parties argue two different interpretations is not

16| sufficient to establish that the contract is ambiguous.

17| As found earlier, the Court finds no ambiguity here.

18| Accordingly, the task before the Court is only to determine

19| the intent of the plan from its language and to apply it.

20| AFSCME also relies on its proof of claim as classifying

21| these pensions -- pension and health care claims in Class 14.

22| However, under Section 941 only the city can propose a plan

23| and under Section 1123(a)(1), only the plan can classify

24| claims.

1   classification of claims and not AFSCME's proof of claim.  The

2   Court will enter an appropriate order.  Is there anything else

3   on our agenda for today?

4           MS. LENNOX:  No, Your Honor.

5           THE COURT:  All right.  I'd like to review with you

6   the balance of our schedule here.  What does the city foresee

7   for tomorrow, please?

8           MS. LENNOX:  My understanding for tomorrow, Your

9   Honor, is that we will introduce -- I'm not sure if we've

10  confirmed whether it's three or four witnesses, but we'll have

11  obviously just the witnesses required to substantiate the FGIC

12  settlement that we announced in Court last week.  And we would

13  expect that, I would think not to take much time at all.

14          THE COURT:  Okay.  All right.  And then Wednesday we

15  will take the testimony of Ms. Kopacz.

16          MS. LENNOX:  Uh-huh.

17          THE COURT:  And then if it's okay with everyone we

18  will have closing arguments a week from today at 8:30.  I

19  assume that will be arguments on behalf of the city plan

20  supporters and whatever pro se objectors the Court concludes

21  should be given an opportunity for closing argument.

22       And then the Court will foresee giving an oral decision

23  on the record here in open Court, one second, I don't want to

24  pin myself down exactly at this point in time, but sometime

1  that schedule?

2         MS. LENNOX:  No, Your Honor.

3         THE COURT:  Okay.  If there is nothing further,

4  we'll be in recess for today.

5         THE CLERK:  All rise.

6         MR. ALBERTS:  Your Honor, is it 8:30 on Wednesday?

7         THE COURT:  Yes, 8:30 Wednesday, please.

8         MR. ALBERTS:  Thank you.

9         THE COURT:  So 9:00 tomorrow, 8:30 Wednesday.  No,

10  what?  What?  Well, if it won't take very long, can we start

11  at 9:00 instead of 8:30?

12         MS. LENNOX:  That's fine, Your Honor.

13         MR. ALBERTS:  Sure.  So 9:00 tomorrow, 9:00

14  Wednesday.

15         THE COURT:  No.  I don't know how long Ms. Kopacz is

16  going to take, so I want to start at 8:30 on Wednesday.

17         MR. ALBERTS:  Okay.  9:00.

18         THE COURT:  9:00 tomorrow.

19         MR. ALBERTS:  That's perfect, Your Honor.

20         THE COURT:  All right.

21         THE CLERK:  Court is adjourned.

22      (Court Adjourned at 9:15 a.m.)

23

24

25

1

2

3

4

5

6

7   We certify that the foregoing is a correct transcript from the

8   electronic sound recording of the proceedings in the

9   above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872       Dated: 10-21-14
     Letrice Calloway

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 12

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Chapter 9
City of Detroit, Michigan,                      Case No. 13-53846
     Debtor.                                Hon. Steven W. Rhodes
_____/

**Order Regarding City's Objection to Proof of Claim #2958
Filed by AFSCME Council 25 and its Affiliated Detroit Locals
(Dkt. #4876)**

For the reasons set forth in open Court on October 20, 2014, AFSCME's claim entitled

"AFSCME Council 25 (13th Check ULP). MERC Case No. C12-E-092" set forth on line #7 of its

proof of claim shall be in Class 11.  AFSCME's claim entitled "City of Detroit Retirees Health

Care: Grievance No. C10 A-025" set forth on line #17 shall be in Class 12.

It is so ordered.


**Signed on October 20, 2014**

                                                **/s/ Steven Rhodes**
                                               **Steven Rhodes
United States Bankruptcy Judge**

# EXHIBIT 13

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
| Debtor. | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

## NOTICE OF APPEAL OF ORDER REGARDING CITY'S OBJECTION TO PROOF OF CLAIM #2958 FILED BY AFSCME COUNCIL 25 AND ITS AFFILIATED DETROIT LOCALS (Dkt. #4876)

**PLEASE TAKE NOTICE THAT** AFSCME Council 25 and its Affiliated Detroit Locals ("AFSCME"), pursuant to 28 U.S.C. § 158(a) and Rules 8001(a) and 8002(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), file this notice of appeal to the United States District Court for the Eastern District of Michigan, Southern Division from the order of the United States Bankruptcy Court for the Eastern District of Michigan (the Honorable Steven W. Rhodes, presiding) [Docket No. 8015, entered October 20, 2014] (the attached). This notice of appeal is timely filed pursuant to Bankruptcy Rule 8002(a). The names of the parties to the Order appealed from and the names, addresses, telephone and facsimile numbers of their respective attorneys are as follows:

## Appellants

AFSCME Council 25 and its affiliated Detroit Locals, represented by:

Richard G. Mack, Jr., Esq.
Jack W. Schulz, Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com
jschulz@millercohen.com

**Appellee**

City of Detroit, represented by:

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

Dated: October 30, 2014                 Respectfully submitted,

                                        /s/ Richard G. Mack, Jr.
                                        Richard G. Mack, Jr., Esq.
                                        Jack W. Schulz, Esq.
                                        MILLER COHEN PLC
                                        600 West Lafayette Blvd., 4th Floor
                                        Detroit, MI 48226-3191
                                        Telephone: (313) 964-4454
                                        Facsimile: (313) 964-4490
                                        richardmack@millercohen.com
                                        jschulz@millercohen.com

                                        *Counsel to Michigan Council 25 of the
                                        American Federation of State, County and
                                        Municipal Employees (AFSCME), AFL-CIO*

| United States District Court<br>Eastern District of Michigan | Bankruptcy Matter<br>Civil Case Cover Sheet | District Court Label |
|---|---|---|

In re:

**CITY OF DETROIT, MICHIGAN**

Case No.: 13-53846

Debtor.

_____/

**AFSCME Council 25**
**and its Affiliated Detroit Locals**

Appellant,

Adv. No.:

v.

City of Detroit, Michigan,

Appellee.

---

**CAUSE OF ACTION/NATURE OF SUIT:** (This matter is referred to the district court for the following reasons)

| | | |
|---|---|---|
| __X__ | [422] 28 U.S.C. 158 | Bankruptcy Appeal |
| _____ | [422] 28 U.S.C. 158 | Motion for Leave to Appeal |
| _____ | [423] 28 U.S.C. 157(d) | Motion for Withdrawal of Reference |
| _____ | [423] 28 U.S.C. 157(c) (1) | Proposed Findings of Fact and Conclusions of Law |
| _____ | [423] 28 U.S.C. 158 (c) (a) | Order of Contempt |

Date: _____     Name: _____

Dated: October 30, 2014                Respectfully submitted,

                                         /s/ Richard G. Mack, Jr.
                                         Richard G. Mack, Jr., Esq.
                                         Jack W. Schulz, Esq.
                                         MILLER COHEN PLC
                                         600 West Lafayette Blvd., 4th Floor
                                         Detroit, MI 48226-3191
                                         Telephone: (313) 964-4454
                                         Facsimile: (313) 964-4490
                                         richardmack@millercohen.com
                                         jschulz@millercohen.com

                                             *Counsel to Michigan Council 25 of the*
                                             *American Federation of State, County and*
                                             *Municipal Employees (AFSCME), AFL-CIO*

Name and Address of Interested Parties:

Richard G. Mack, Jr., Esq.
Jack W. Schulz, Esq.
MILLER COHEN PLC
600 West Lafayette Blvd., 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 964-4454
Facsimile: (313) 964-4490
richardmack@millercohen.com
jschulz@millercohen.com

**Appellee**

City of Detroit, represented by:

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Thomas F. Cullen, Jr. (DC 224733)
Gregory M. Shumaker (DC 416537)
Geoffrey S. Stewart (DC 287979)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700
tfcullen@jonesday.com
gshumaker@jonesday.com
gstewart@jonesday.com

Robert S. Hertzberg (P30261)
Deborah Kovsky-Apap (P68258)
PEPPER HAMILTON LLP
4000 Town Center, Suite 1800
Southfield, MI 48075
Telephone: (248) 359-7300
Facsimile: (248) 359-7700
hertzbergr@pepperlaw.com
kovskyd@pepperlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                Chapter 9
City of Detroit, Michigan,                            Case No. 13-53846
            Debtor.                                   Hon. Steven W. Rhodes

_____/

## Order Regarding City's Objection to Proof of Claim #2958
## Filed by AFSCME Council 25 and its Affiliated Detroit Locals
## (Dkt. #4876)

For the reasons set forth in open Court on October 20, 2014, AFSCME's claim entitled

"AFSCME Council 25 (13th Check ULP). MERC Case No. C12-E-092" set forth on line #7 of its

proof of claim shall be in Class 11.  AFSCME's claim entitled "City of Detroit Retirees Health

Care: Grievance No. C10 A-025" set forth on line #17 shall be in Class 12.

It is so ordered.

Signed on October 20, 2014

                                            /s/ Steven Rhodes
                                        _____
                                            Steven Rhodes
                                            United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 9 |
|  | ) |  |
| CITY OF DETROIT, MICHIGAN, | ) | Case No. 13-53846 |
|  | ) |  |
|  | ) | Hon. Steven W. Rhodes |
|  | ) |  |
|  | ) |  |

## PROOF OF SERVICE

The undersigned certifies that on October 30, 2014, the American Federation of State, County and Municipal Employees Council 25 (AFSCME) filed *Notice of Appeal of Order Regarding City's Objection to Proof Of Claim #2958 Filed By AFSCME Council 25 and Its Affiliated Detroit Locals (Dkt. #4876)* electronically with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

/s/ Richard G. Mack, Jr.
Richard G. Mack, Jr., Esq.
MILLER COHEN PLC
600 West Lafayette Boulevard, 4th Floor
Detroit, MI 48226-3191
Telephone: (313) 566-4787
Facsimile: (313) 964-4490
richardmack@millercohen.com

# EXHIBIT 14

59 Fed.Appx. 660
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also
Sixth Circuit Rule 28. (Find CTA6 Rule 28)
United States Court of Appeals,
Sixth Circuit.

In re: MONCLOVA CARE CENTER, INC., Debtor.
United States of America, Appellee,
v.
John M. GRAHAM, Disbursing Agent for
Monclova Care Center, Inc., Appellant.

No. 01–3636. | Feb. 18, 2003.

Chapter 11 trustee moved to confirm distribution of debtor's assets, and Internal Revenue Service (IRS) objected and moved for summary judgment. The Bankruptcy Court, Richard L. Speer, Chief Judge, 254 B.R. 167, granted motion in part and denied it part. IRS appealed and debtor's disbursing agent cross-appealed. The United States District Court for the Northern District of Ohio, Carr, J., 266 B.R. 792, modified the bankruptcy court's judgment. Disbursing agent appealed portion of order that claims filed by IRS be paid with interest until fully paid. The Court of Appeals, Collier, J., held that: (1) debtor's plan, which described secured claims and unsecured priority claims as unimpaired, required payment of interest on IRS' secured and unsecured priority claims, and (2) interest that IRS was entitled to receive would accrue until date that claims were fully paid, and did not stop accruing as of plan's effective date.

Affirmed.

West Headnotes (2)

[1]     **Bankruptcy**



Construction, execution, and performance

Chapter 11 debtor's plan, which described secured claims and unsecured priority claims

as unimpaired, required payment of interest on Internal Revenue Service's (IRS') secured claim and its unsecured priority claim; debtor's plan would impair the IRS claims if it did not include the statutory interest the IRS was entitled to receive, and because the plan said such claims were unimpaired, interest had to be paid on IRS's secured claim and its unsecured priority claim.

3 Cases that cite this headnote

[2]     **Bankruptcy**



Post-petition interest

**Bankruptcy**



Construction, execution, and performance

Interest that Internal Revenue Service (IRS) was entitled to receive on its claims under Chapter 11 plan would accrue until date that claims were fully paid, and did not stop accruing as of plan's effective date; IRS was entitled to statutory interest on its secured claim and unsecured priority claim, and because that legal right to payment was not altered by debtor's plan, interest had to be paid on IRS' claims through date that claims were fully paid. 26 U.S.C.A. §§ 6621, 6622.

3 Cases that cite this headnote

**\*661** On Appeal from the United States District Court for the Northern District of Ohio.

Before BATCHELDER and MOORE, Circuit Judges; and COLLIER, District Judge. \*

**Opinion**

COLLIER, District Judge.

This appeal comes from the Northern District of Ohio (Western J.). Appellant John Graham, disbursing agent for Monclova Care Center, Inc., a debtor under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.*, appeals the district court's order that the claims filed by Appellee

WestlawNext © 2014 Thomson Reuters. No claim to original U. S. Government Works.

United States be paid with interest until the claims are fully paid. Because the bankruptcy court reasonably interpreted the debtor's plan to include payments of interest on the Internal Revenue Service's ("IRS") claims and because the IRS's legal right to interest payments would be impaired if the interest does not accrue until the claims are paid, we AFFIRM the district court's order.

## I. BACKGROUND

Debtor Monclova Care Center, Inc. filed a voluntary petition for Chapter 11 bankruptcy in July 1993, and Appellant John Graham was appointed as the debtor's trustee (JA at 336–37). On March 1, 1994, the Internal Revenue Service filed a proof of claim for $252,608.00 (JA at 328). The IRS designated $238,765.71 as a secured claim (the "secured claim") and $13,842.29 as an unsecured priority claim (the "unsecured priority claim") (JA at 328).

On April 4, 1996, the bankruptcy court confirmed the debtor's Chapter 11 plan of liquidation (JA at 235). In this plan, the debtor treated secured claims as unimpaired:

> Class 1 Allowed Secured Claims are not impaired under the Plan. There are only two asserted Class 1 Claims against the Debtor. To the extent they are determined to be secured, the defaults, if any, respecting such security interests shall be cured on the Effective Date and the legal, equitable and contractual rights to which Class 1 Claims entitle the holders thereof shall remain unaltered by the Plan or, at the option of the Trustee, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

(JA at 246). The plan also treated unsecured priority claims as unimpaired:

> Class 2 Allowed Priority Claims are not impaired under the Plan. Class 2 Allowed Claims will be paid in cash the allowed amount of their claims on the Effective Date of the Plan.

(JA at 246). The debtor's plan did not define the term "impaired" (JA at 244). Rather, the plan provided undefined terms *662 would have the meaning assigned to the term in the bankruptcy code or bankruptcy rules (JA at 240–41). The bankruptcy code explains impairment of claims in 11 U.S.C. § 1124. Because the IRS held a Class 1 secured claim and a Class 2 priority claim, the IRS claims were unimpaired. Under the plan and under the bankruptcy code, creditors with unimpaired claims are conclusively presumed to have accepted the debtor's plan (JA at 237; 11 U.S.C. § 1126(f)).

Between June 1994 and August 1999, Appellant distributed $6,613,615.68 to creditors of Monclova Care Center, Inc. (JA at 317). According to Appellant, he delayed making any payment to the IRS because there was some dispute whether certain penalties and interest had to be paid. Appellant eventually distributed $197,628.97 to the IRS (JA at 338).

On April 26, 1999, Appellant filed a motion to confirm the distribution to the IRS, requesting the bankruptcy court confirm the $197,628.97 payment as the total amount to be distributed to the IRS under the debtor's plan (JA at 257). The IRS objected to the motion to confirm (JA at 304) and moved for summary judgment, claiming it was entitled to receive interest on its secured claim and its unsecured priority claim (JA at 320–21). The bankruptcy court issued a decision on May 25, 2000, requiring Appellant pay interest on the IRS claims through the effective date of the plan because the unimpaired IRS claims included a right to statutory interest (JA at 336). Both parties appealed to the district court.

The district court ruled on March 19, 2001, holding the IRS's secured claim and unsecured priority claim were not impaired under the confirmed Chapter 11 plan and the entitlement to interest did not cease on the effective date of the plan (JA at 368). The district court ordered Appellant to pay both IRS claims with all interest due under 26 U.S.C. §§ 6621 and 6622 until paid in full (JA at 368).

## II. STANDARD OF REVIEW

When the Court reviews an appeal from the decision of a district court in a case originating in bankruptcy court, the Court directly reviews the decision of the bankruptcy court rather than the district court's review of that decision. *In re Morris,* 260 F.3d 654, 662 (6th Cir.2001). The Court applies the clearly erroneous standard to findings of fact and de

*novo* review to conclusions of law. *Id.* at 662–63. When reviewing mixed questions of law and fact, the Court breaks the question down into its component parts and applies the proper standard of review to each part. *Id.* at 663. A grant of summary judgment is a question of law, so the standard of review is *de novo. Id.* The Court reviews a bankruptcy court's interpretation of the debtor's plan with full deference. *In re Terex*, 984 F.2d 170, 172 (6th Cir.1993).

## III. DISCUSSION

[1] The bankruptcy court interpreted the debtor's plan to require the payment of interest on the IRS's secured claim and on its unsecured priority claim. Reviewing the bankruptcy court's interpretation of the plan with full deference, we uphold this interpretation. However, the bankruptcy court held the interest should cease accruing on the effective date of the plan. Because the IRS's unimpaired claims would be altered if interest ceases to accrue before the claims are paid, we REVERSE that portion of the bankruptcy court's decision and AFFIRM the district court order that the IRS claims be paid with all interest due until the claims are fully paid.

### A. The debtor's plan, describing the IRS claims as unimpaired, requires Appellant to pay interest on the IRS claims.

The IRS contends Appellant should pay interest on its secured claim and on its *663 unsecured priority claim because the debtor's confirmed plan indicated the IRS claims were not impaired. The bankruptcy court interpreted the plan to require interest payment on the IRS claims because the debtor's plan did not alter the right to payment held by the IRS.

Under Title 11, "claim means—right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The IRS filed claims against the debtor for $252,608.00, comprised of unpaid taxes, penalties, and interest that had accrued on those amounts. The IRS designated $238,765.71 as a secured claim and $13,842.29 as an unsecured priority claim. According to the tax code, interest on unpaid taxes, penalties, and interest compounds daily from the last date for payment through the date the amounts are paid, and interest shall be paid for that period. 26 U.S.C. §§ 6601(a), (e), 6621, 6622. While this unmatured right to interest payments is subject to disallowance under 11

U.S.C. § 502(b) in most cases, it remains part of both IRS claims. *In re Butler*, 242 B.R. 553, 555 (Bankr.S.D.Ga.1999).

When the bankruptcy court confirmed debtor's Chapter 11 plan, the plan became binding on all the parties, including the IRS.[1] 11 U.S.C. § 1141(a);[2] *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 463 (6th Cir.1991). Regarding the IRS's secured and unsecured priority claims, the plan provided the claims were unimpaired:

> 3.1. Class 1 Allowed Secured Claims are not impaired under the Plan. There are only two asserted Class 1 Claims against the Debtor. To the extent they are determined to be secured, the defaults, if any, respecting such security interests shall be cured on the Effective Date and the legal, equitable and contractual rights to which Class 1 Claims entitle the holders thereof shall remain unaltered by the Plan or, at the option of the Trustee, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code.

> 3.2. Class 2 Allowed Priority Claims are not impaired under the Plan. Class 2 Allowed Claims will be paid in cash the allowed amount of their claims on the Effective Date of the Plan.

(JA at 246).[3]

The debtor's plan did not provide a definition of the term "impaired," but it did provide that undefined terms in the plan *664 would have the meaning assigned to them in the bankruptcy code or in the bankruptcy rules. The bankruptcy code discusses impairment of a claim at 11 U.S.C. § 1124. The statute explains a claim is considered impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1); *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n. 14, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999) ( "Claims are unimpaired if they retain all of their prepetition legal, equitable, and contractual rights against the debtor."). The bankruptcy court determined the plan meant the IRS retained its legal right to receive statutory interest until Appellant paid the sums owed to the IRS. Otherwise, reasoned the bankruptcy court, the plan would impair—alter —the IRS claims, yet the plan specifically said the secured claim and the unsecured priority claim were not impaired.

A number of courts have held a claim is impaired under 11 U.S.C. § 1124(1) if the plan deprives the creditor of interest to which the creditor is entitled. For example, in *In re The Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 956, 960 (Bankr.W.D.La.1997) a debtor's plan impaired a creditor's claim because the plan did not include payment of the postpetition interest the creditor was entitled to receive. Discussing 11 U.S.C. § 1124(1), the court in *In re New Midland Plaza Assocs.*, 247 B.R. 877, 896 (Bankr.S.D.Fla.2000) explained a class of claims would be impaired by a plan if the claims would not be paid in full with interest on the effective date of the plan. Likewise, the bankruptcy court in this case determined the debtor's plan would impair the IRS claims if it did not include the statutory interest the IRS is entitled to receive. Because the plan said such claims were unimpaired, the bankruptcy court held Appellant should pay interest on the IRS's secured claim and its unsecured priority claim.

The Court gives deference to a bankruptcy court's interpretation of a debtor's plan. *In re Terex*, 984 F.2d 170, 172 (6th Cir.1993). Upon review of the bankruptcy court's interpretation of the plan in this case, we uphold the bankruptcy court's decision that Appellant must pay the IRS interest on its claims.

**B. Interest accrues on both IRS claims until the claims are paid.**

[2]   The IRS contends interest accrues on its claims through the date the IRS claims are paid because its statutory right to interest would be impaired if interest for that period were not paid. The bankruptcy court, however, determined interest should stop accruing as of the effective date of the debtor's plan. For this decision, the bankruptcy court relied upon *Rake*

*v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), which explained "the interest allowed by [11 U.S.C.] § 506(b) will accrue until payment of the secured claim or until the effective date of the plan." The bankruptcy court's reliance on *Rake* was erroneous. *Rake* recognizes a limitation on the accrual of interest that is payable pursuant to § 506(b), *see* 508 U.S. at 468, 471, 113 S.Ct. 2187, but that limitation does not apply to the IRS's unimpaired, unaltered claims that are entitled to interest under 26 U.S.C. § 6601.[4]  The district court properly **\*665** recognized this distinction and modified the bankruptcy court's judgment, holding interest would accrue on the IRS claims until the claims are paid. Because the IRS is entitled to statutory interest on its secured claim and unsecured priority claim, and because this legal right to payment was not altered by the debtor's plan, interest must be paid on the IRS claims through the date the claims are fully paid. *See* 26 U.S.C. §§ 6621, 6622.

## IV. CONCLUSION

Upon review of the bankruptcy court's interpretation of the debtor's plan, we agree the plan preserved and did not alter the IRS's right to interest payments on its secured claim and on its unsecured priority claim. Further, the interest the IRS is entitled to receive accrues until the date the claims are fully paid. Therefore, we AFFIRM the district court's order that modified the judgment of the bankruptcy court.

### Parallel Citations

2003 WL 463486 (C.A.6 (Ohio)), 91 A.F.T.R.2d 2003-1105, 2003-1 USTC P 50,266

Footnotes

\*      The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1      Because the plan listed the IRS claims as unimpaired, the IRS was conclusively presumed to have accepted the plan. 11 U.S.C. § 1126(f) ("[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.").

2      Section 1141(a) provides in pertinent part: "[T]he provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan." 11 U.S.C. § 1141(a).

3      Appellant argues the plan treated the IRS claims as unimpaired under § 1124(3) in that he could pay the allowed amount of the claim on the effective date of the plan (Appellant's brief at 25). Section 1124(3) was repealed effective October 22, 1994, but it is effective for this case because it was filed prior to that date. However, there is no evidence Appellant treated the IRS claims as unimpaired

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

according to these provisions, by paying the claim on the plan's effective date. "Unless § 1124(3) is complied with, it cannot be used as a basis for categorizing a class as unimpaired...." *In re Ralph C. Tyler, P.E., P.S., Inc.,* 156 B.R. 995, 997 (Bankr.N.D.Ohio 1993).

4    11 U.S.C. § 506(b) allows interest on an "oversecured" claim, a claim that is secured by property with a value greater than the value of the claim. Because the Court concludes the debtor's plan did not impair the IRS's statutory right to interest payments on its claims, the Court does not reach the issue whether the IRS's secured claim constituted an oversecured claim.

---

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.