# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x

In re                        :

                             :     Chapter 9

                             :

CITY OF DETROIT, MICHIGAN,   :     Case No. 13-53846

                             :

                  Debtor.     :     Hon. Steven W. Rhodes

-------------------------------------------------------x

## JOINT STATEMENT OF THE CITY OF DETROIT, AFSCME COUNCIL 25 AND THE COALITION OF DETROIT UNIONS REGARDING OPEN ISSUES IN CONNECTION WITH <u>OBJECTIONS TO PROOFS OF CLAIM NUMBERS 2958 AND 2851</u>

The City of Detroit, Michigan (the "<u>City</u>"), AFSCME Council 25 and Its

Affiliated Detroit Locals ("<u>AFSCME</u>") and the Coalition of Detroit Unions

(the "<u>Coalition</u>"[1] and, together with AFSCME, the "<u>Unions</u>") hereby file this Joint

Statement with respect to AFSCME's proof of claim number 2958 (the "<u>AFSCME</u>

<u>Claim</u>") and the Coalition's proof of claim number 2851 (the "<u>Coalition Claim</u>"

---

[1]    If the Court finds that the Coalition Claim has any value after assessing the applicable legal issue(s), further clarification may be necessary regarding which members of the Coalition are seeking relief through the Coalition Claim.

and, together with the AFSCME Claim, the "Claims").  For their Joint Statement, the City and the Unions (collectively, the "Parties") agree and state as follows:

## Background

1.     On February 21, 2014, AFSCME filed the AFSCME Claim asserting liabilities against the City in a claim comprised of 20 items.[2]  On the same date, the Coalition filed the Coalition Claim against the City, asserting the same legal issues raised by Claim No. 8 of the AFSCME Claim.

2.     On May 15, 2014 the City filed:  (a) the *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 2851 Filed by the Coalition of Detroit Unions* (Docket No. 4874) (the "Coalition Claim Objection"); and (b) the *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 2958 Filed by Michigan AFSCME Council 25 and Its Affiliated Detroit Locals* (Docket No. 4876) (the "AFSCME Claim Objection" and, together with the Coalition Claim Objection, the "Claim Objections").

3.     By the Coalition Claim Objection, the City sought the disallowance of the Coalition Claim because the City asserts that it has no liability to the Coalition

---

[2]     As has become the convention between the Parties, the Parties refer to the elements of the AFSCME Claim as Claim Nos. 1 through 20 herein, based on the order presented in the AFSCME Claim.

on account of the Coalition Claim.  Coalition Claim Objection, at ¶ 15.  By the AFSCME Claim Objection, the City objected to the AFSCME Claim on various grounds and requested that the Court establish a process for the adjudication or liquidation of the various liabilities asserted therein.  <u>See</u> Claim Objection, at ¶ 20 (requesting that, to the extent not resolved by the parties, the Court assist them in developing an "efficient process … to adjudicate or liquidate the various elements of the [AFSCME] Claim on a rational and timely basis.").  The Unions filed responses to the Claim Objections, and the City filed further briefing in support thereof.  <u>See</u> Docket Nos. 7235, 7240, 7981, 7982, 7994, 8002, 8003.

4.     By an Order dated September 25, 2014 (Docket No. 7663), the Court ordered the Parties to participate in facilitative mediation before the Honorable Judge Victoria Roberts.  The mediation was conducted, but did not result in a resolution of the Parties' disputes.

5.     In connection with the mediation process, AFSCME withdrew certain of the liabilities asserted in the AFSCME Claim.  <u>See</u>, <u>e.g.</u>, *Order Dismissing Claims From Mediation* (Docket No. 7877) (withdrawing Claim No. 1 for "underfunded pension and post employment benefit obligations" and Claim No. 12 for "negotiation of Local 542 Supplemental Agreement MERC Case Number C07 LO-033"); <u>see</u> <u>also</u> *Order Dismissing Claim From Mediation* (undocketed)

attached as Exhibit 1 to the *Corrected Reply in Support of Objection to Proof of Claim Number 2958 Filed by Michigan AFSCME Council 25 and its Affiliated Detroit Locals* (Docket No. 8003) (the "<u>Corrected Objection Reply</u>") (withdrawing Claim No. 2 relating to violations of federal, state and local law).

6. Following a hearing on October 20, 2014, the Court ruled that (a) the liabilities referred to as "AFSCME Council 25 (13th Check ULP) MERC Case No. C12-E-092" (Claim No. 7) in the AFSCME Claim are subject to treatment in Class 11 under the City's plan of adjustment (the "<u>Plan</u>"); and (b) the liabilities referred to as "City of Detroit Retirees Health Care: Grievance No. C10 A-025" (Claim No. 17) in the AFSCME Claim are subject to treatment in Class 12 under the Plan. <u>See</u> *Order Regarding City's Objection to Proof of Claim #2958* (Docket No. 8015) ("<u>Classification Order</u>"). AFSCME has filed a Notice of Appeal of the Classification Order (<u>see</u> Docket No. 8139), and this appeal (the "<u>Classification Appeal</u>") is pending in the United States District Court for the Eastern District of Michigan.

7. On December 2, 2014, (a) AFSCME filed the *Corrected AFSCME Council 25 and Its Affiliated Detroit Locals Motion for Abstention and to Remand the Claims Contained in Proof of Claim #2958* (Docket No. 8537) (the "<u>AFSCME Abstention Motion</u>"); and (b) the Coalition filed the *Corrected Coalition of Detroit*

*Unions Motion for Abstention and to Remand the Claims Contained in Proof of Claim #2581* (Docket No. 8536) (together with the AFSCME Abstention Motion, the "Abstention Motions"). The Abstention Motions seek permissive abstention of this Court with respect to 11 components of the Claims. The City filed a consolidated objection to the Abstention Motions (Docket No. 8797). The Parties presented oral argument on these issues at a hearing conducted on December 22, 2014 (the "Abstention Hearing"). As of the date of this Joint Statement, the Abstention Motions remain pending.

8.     At a status hearing on the Claim Objections to the remaining components of the Claims conducted on November 12, 2014, the Court requested that the Parties submit a joint statement of the status and issues relating to the Claims. At the Abstention Hearing, the Court set January 5, 2015 as the deadline to make such a filing. This Joint Statement is filed in response to the Court's request and to assist in developing a procedure and schedule to resolve or adjudicate the Claim Objections.

## Summary Status Chart for Certain Claim Components

9.     The chart below provides a brief overview of the status of certain components of the AFSCME Claim. The parties do not seek Court assistance for items identified in the chart below at the present time; however, for any claims that have not been withdrawn or previously addressed by this Court, the City and

AFSCME expressly reserve their rights to request the Court's assistance or ruling as deemed necessary or appropriate.

10.     Following the chart is a more detailed description of the remaining components of the AFSCME Claim and the Coalition Claim where the Parties are seeking Court involvement, assuming that the Parties cannot resolve the issues and the Court decides not to abstain as requested by the Unions.

| Claim No./Issue | Description | Open Legal and Factual Issues | Proposed Action |
|---|---|---|---|
| Claim No. 1<br><br>Underfunded Pension and Post-Employment Benefit Obligations | This claim has been withdrawn by AFSCME.  See *Order Dismissing Claims From Mediation* (Docket No. 7877). | None. | None. |
| Claim No. 2<br><br>Violations of Local, State or Federal Law | This claim has been withdrawn by AFSCME.  See *Order Dismissing Claim From Mediation* (undocketed), attached as Exhibit 1 to Docket No. 8003. | None. | None. |
| Claim No. 7<br><br>13th Check Unfair Labor Practice Charge (MERC Case No. C12 E-092) | This claim has already been resolved by an order of the Court.  See *Order Regarding City's Objection to Proof of Claim #2958* (Docket No. 8015).  AFSCME has appealed the Court's decision. | None. | None.  The parties will address this issue on appeal and take whatever action is necessary following resolution of the appeal. |

| Claim No./Issue | Description | Open Legal and Factual Issues | Proposed Action |
|---|---|---|---|
| Claim No. 10<br><br>DFFA Work Assignment Issues (MERC Case No. C11 K-201) | AFSCME alleges that the City allowed employees represented by the Detroit Fire Fighters Association ("DFFA") to perform AFSCME work in violation of State labor law. | Issues relate to whether this unfair labor practice charge has been resolved through the resolution of related grievances. | The City and AFSCME currently are discussing whether they can agree that this component of the AFSCME Claim has been resolved through the normal grievance settlement process. As such, the City and AFSCME currently are not seeking any adjudication by the Court with respect to this component of the AFSCME Claim, but will notify the Court if further Court involvement becomes necessary. |
| Claim No. 12<br><br>Negotiation of Local 542 Supplemental Agreement (MERC Case No. C07 L-033) | This claim has been withdrawn by AFSCME. See Order Dismissing Claims From Mediation (Docket No. 7877). | None. | None. |
| Claim No. 14<br><br>Breach of Contract Claims | AFSCME alleges numerous breaches of various collective bargaining agreements. | None. | None. This claim is being addressed through the normal grievance resolution process. |
| Claim No. 15<br><br>Exhibit 2 Listing of Specific Grievances | This claim is composed of numerous grievances filed by AFSCME. | None. | None. This claim is being addressed through the normal grievance resolution process. |

NYI-524632137

| Claim No./Issue | Description | Open Legal and Factual Issues | Proposed Action |
|---|---|---|---|
| Claim No. 17<br><br>City of Detroit Retiree Health Care (Grievance No. 25-01-12 / COA: 12-0077708-CL) | This claim already has been resolved by an order of the Court. See *Order Regarding City's Objection to Proof of Claim #2958* (Docket No. 8015). AFSCME has appealed the Court's decision. | None. | None. The parties will address this issue on appeal and take whatever action is necessary following resolution of the appeal. |
| Claim No. 18<br><br>Payroll Disputes | AFSCME alleges that the City committed various payroll errors. | None. | None at this time. |
| Claim No. 20<br><br>Tree Artisan Failure to Secure a License | This claim involves a grievance over the discharge of a single AFSCME employees. | Issues involve the amount of damages owed by the City with respect to this single employee. | None. This claim is small and amenable to informal resolution. |

## Detailed Statement Regarding Open Items

For the components of the Claims where the Parties seek (or may seek) the assistance of the Court, they have agreed on the following detailed description of the open issues. In instances where the Parties could not reach agreement or where a position is held or asserted by one particular Party, that is so noted where appropriate.[3]

---

[3]    The statements of the legal issues herein are summaries of the key issues for the convenience of the Court and are not intended to, and shall not, limit the Parties in making arguments and providing facts in support of their positions in any adjudication of these matters.

**A.     Claim No. 3 — Refusal to Bargain Concerning AFSCME Local 1023 (MERC Case Number D13 C-0331)**

1.     _Procedural Facts_

(a)     On March 12, 2013, AFSCME Local 1023 requested mediation by the Michigan Employment Relations Commission ("MERC") to assist in labor negotiations with the City and made a written request to the City to bargain a new collective bargaining agreement.  AFSCME submits that these requests were made (i) after the rejection of Michigan Public Act 4 of 2011 ("PA 4") through a voter referendum and (ii) before the effective date of Michigan Public Act 436 of 2012 ("PA 436").

(b)     On March 28, 2013, PA 436 took effect.  The City was placed in financial receivership, and an emergency manager was appointed.[4]  As a result, the City's obligation to comply with Section 15(1) of the Michigan Public Employment Relations Act, MCL 423.201, _et seq._ ("PERA"), was suspended.  See Section 27(3) of PA 436 ("A local government placed in receivership under this act is not subject to section 15(1) of 1947 PA 336, MCL 423.215, for a period of 5 years from the date the local government is placed in receivership or until the time the receivership is terminated, whichever occurs first").

---

[4]     The City notes that, pursuant to Section 2(e) of PA 436, the emergency financial manager previously appointed for the City under Michigan Public Act 72 of 1990 and who was acting in that capacity as of the effective date of PA 436 became the emergency manager under PA 436.

(c)    On June 3, 2013, Local 1023 requested that MERC initiate binding arbitration under Michigan Public Act 312 of 1969, MCL §§ 423.231-247, as amended ("Act 312").

(d)    Act 312 applies to public safety unions negotiating labor agreements with the City and contains a procedure through which MERC appoints an arbitrator to issue a binding arbitration award regarding the terms of such agreements.

(e)    In requesting Act 312 arbitration, despite the suspension of the City's duty to comply with Section 15(1) of PERA, AFSCME took the position that Act 312 — a State statute separate from PERA — mandated the binding arbitration process, irrespective of PA 436.  The City took the position that PA 436 obviated its Act 312 obligation to participate in binding arbitration.

(f)    In response to a request for Act 312 arbitration from other public safety unions, MERC held that, pursuant to PA 436, the City had no obligation to bargain or arbitrate under Act 312.  Following and based upon that decision, MERC administratively dismissed the AFSCME Local 1023 petition for Act 312 arbitration.

(g)    AFSCME alleges that MERC's dismissal of Local 1023's petition was in error and that PA 436 did not excuse the City's bargaining and arbitration obligations under Act 312.  AFSCME asserts that the City then imposed

a number of unilateral changes in employment conditions in 2013, which AFSCME further contends violated Act 312's requirements regarding the maintenance of the *status quo* pending the results of Act 312 arbitration. The City disputes these allegations.

2.   Legal Issues to Be Determined

(a)   Whether PA 436 suspended (i) the City's duty to bargain under PERA and (ii) the City's duty to bargain or arbitrate under Act 312.

(b)   Whether the City was obligated under Act 312 to refrain from implementing unilateral changes in employment conditions, particularly in light of PA 436.

3.   Position of the Parties Concerning Resolution

(a)   If the Court decides against abstention with respect to this component of the AFSCME Claim, the City and AFSCME agree that the Court may first decide the threshold legal issues, *provided that* the parties will work in good faith to present stipulated facts to aid in the determination of the legal issues. The parties believe that an evidentiary hearing on the legal issues may be unnecessary, but each party reserves the right, pursuant to title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Eastern District of Michigan (the "Local Rules"), to either (i) request an

evidentiary hearing if the parties cannot agree upon stipulated facts or (ii) contest such a request or otherwise argue that no additional disputed facts exist that would prevent the Court's determination of the legal issues. In addition, the parties will provide the Court with any additional information it may find necessary to render a decision.

(b)     Before the Court rules on the legal issues, AFSCME renews and reserves its request to file a sur-reply because it asserts that it has not had the opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply. If the City desires further briefing in response, the parties will propose an expedited briefing schedule to the Court.

(c)     If the Court decides the threshold legal issues in favor of AFSCME, the City and AFSCME agree that discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any).

## B.     Claim No. 4 — Refusal to Bargain Concerning AFSCME Locals 207, 2394 and 2920 (DWSD) (MERC Case Number C13 D-069)

1.     Procedural Facts

(a)     The City executed the Financial Stability Agreement with the State of Michigan on or about April 4, 2012 (the "Consent Agreement"), which served as a consent agreement under PA 4. PA 4 suspended the City's obligation to comply with Section 15(1) of PERA. See, e.g., Section 14(a)(10) of PA 4

("Unless the state treasurer determines otherwise, beginning 30 days after the date a local government enters into a consent agreement under this act, that local government is not subject to Section 15(1) of 1947 PA 336, MCL 423.215, for the remaining term of the consent agreement.").

(b)     On August 8, 2012, the question of whether PA 4 should be rejected was certified by Michigan's Board of Canvassers to be placed on the statewide ballot.  As of that date, the effect of PA 4 was suspended pursuant to Michigan Constitution, Article II, § 9.

(c)     In 2012, the City imposed new employment conditions on employees represented by AFSCME Locals 207, 2394 and 2920 that work for the Detroit Water and Sewerage Department ("DWSD").  AFSCME contends that the parties may disagree on the date such employment terms were imposed upon the DWSD bargaining unit members.  AFSCME contends it took place in October 2012, but the City contends the imposition took place earlier when (according to the City) the City Employment Terms ("CETs") were announced and effective pursuant to their terms in July 2012.

(d)     AFSCME filed an unfair labor practice charge with MERC (Case Number C13 D-069) over the unilateral imposition of employment conditions on DWSD employees.  The unfair labor practice charge was pending before MERC as of the date that the City commenced its chapter 9 case.

2.    Legal Issue(s) to Be Determined

(a)    Whether PA 4 or PERA authorized the City to impose employment conditions (including any CETs)[5] on the DWSD Locals at the time the City did so.

(b)    AFSCME submits, as a related issue, the question of whether a consent agreement signed under PA 4 eliminates the City's obligation to bargain with the unions representing City employees, given AFSCME's view that that PA 4 relieved the City of compliance with a single section of PERA (Section 15(1)).

3.    Position of the Parties Concerning Resolution

(a)    The City and AFSCME disagree over (i) the effect of the August 8, 2012 suspension of PA 4 on the City's right to impose employment conditions on the DWSD AFSCME Locals, (ii) the effective date of the new employment conditions with respect to the DWSD Locals and (iii) the existence of CETs applicable to the DWSD Locals.

(b)    If the Court decides against abstention with respect to this component of the AFSCME Claim, the City contends that the Court should first decide the threshold legal issues, *provided that* the parties will work in good faith to present stipulated facts to aid in the determination of the legal issues. Currently, the City does not expect that there will be disputed factual issues that would impact

---

[5]    Contrary to the City's view, AFSCME contends that no CETs were imposed on the DWSD locals.

the Court's ability to determine the threshold legal issue. Conversely, AFSCME contends that an evidentiary hearing likely is necessary to determine, at a minimum, the date upon which the new employment conditions were implemented upon the DWSD union locals because it further alleges that the answer to that factual question could impact the legal issue to be resolved. The City believes that the Court can determine the date that the new employment conditions were imposed based on facts that are (or can be) agreed upon by the parties. In any event, each party reserves the right, pursuant to the Bankruptcy Code, the Bankruptcy Rules and Local Bankruptcy Rules, to either (i) request an evidentiary hearing if the parties cannot agree upon stipulated facts or (ii) contest such a request or otherwise argue that no additional disputed facts exist that would prevent the Court's determination of the legal issues.

(c)     Before the Court rules on the legal issues, AFSCME renews and reserves its request to file a sur-reply because it asserts that it has not had the opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply. If the City desires additional briefing in response, the parties will propose an expedited briefing schedule to the Court.

(d)     The City and AFSCME agree that, if the Court decides the legal issue in favor of AFSCME, discovery and further briefing may be necessary to

determine damages, if the parties cannot agree on the appropriate claim amount (if any).

**C.    Claim No. 5 — Imposition of Furloughs Days in February 2013**

    1.    <u>Procedural Facts</u>

      (a)    In November 2012, the voters of the state of Michigan rejected PA 4.  In December 2012, the State legislature passed PA 436, which took effect on March 28, 2013.

      (b)    In February 2013, the City unilaterally imposed furlough days on AFSCME-represented employees.  AFSCME contends that this action was taken without bargaining to "impasse" beforehand, as required by PERA. The furlough days required affected employees to take unpaid days off from work at least twice per month.  The City contends that it had no duty to bargain at the time the furloughs were imposed based on the Consent Agreement that remained in effect at the time.

    2.    <u>Legal Issue to Be Determined</u>

      Whether the City had the right to impose furlough days on AFSCME-represented employees in February 2013.  AFSCME alleges that this issue raises the following questions:  (a) did the City violate PERA at the time it imposed the furlough days upon the unionized employees? and (b) did the City have a legal

obligation to bargain with its unionized employees concerning employment conditions in February 2013?

        3.     <u>Position of the Parties Concerning Resolution</u>

        (a)     If the Court decides against abstention with respect to this component of the AFSCME Claim, the City and AFSCME agree that the Court may first decide the threshold legal issues, *provided that* the parties will work in good faith to present stipulated facts to aid in the determination of the legal issues. The parties believe that an evidentiary hearing on the legal issues may be unnecessary, but each party reserves the right, pursuant to the Bankruptcy Code, the Bankruptcy Rules and Local Bankruptcy Rules, to either (i) request an evidentiary hearing if the parties cannot agree upon stipulated facts or (ii) contest such a request or otherwise argue that no additional disputed facts exist that would prevent the Court's determination of the legal issues.  In addition, the parties will provide the Court with any additional information it may find necessary to render a decision.

        (b)     Before the Court rules on the legal issues, AFSCME renews and reserves its request to file a sur-reply because it asserts that it has not had the opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply.  If the City desires further briefing in response, the parties will propose an expedited briefing schedule to the Court.

(c)     The City and AFSCME agree that, if the Court decides the legal issue in favor of AFSCME, discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any).

**D.     Claim No. 6 — Refusal to Bargain Concerning Transportation Locals (Case Number C12 H-157)**

1.     <u>Procedural Facts</u>

(a)     The City executed the Consent Agreement with the State of Michigan on or about April 4, 2012.  PA 4 suspended the City's obligation to comply with Section 15(1) of PERA.  <u>See</u>, <u>e.g.</u>, Section 14(a)(10) of PA 4 (quoted above).

(b)     On August 8, 2012, the question of whether PA 4 should be rejected was certified by Michigan's Board of Canvassers to be placed on the statewide ballot.  As of that date, the effect of PA 4 was suspended pursuant to Michigan Constitution, Article II, § 9.

(c)     In 2012, the City imposed CETs on City employees represented by AFSCME.  The City did not impose CETs on AFSCME Locals 214 and 312, which represent employees working for the Detroit Department of Transportation ("<u>DDOT</u>").

(d)     AFSCME contends that Locals 214 and 312 are part of a city-wide bargaining unit, as determined by Michigan courts, and that the City violated State labor law by refusing to bargain with the entire bargaining unit as opposed to only two locals within that unit.

(e)     The City contends that it is required to bargain with the DDOT AFSCME locals because of the special bargaining requirements associated with Section 13(c) of the Federal Transit Act, 49 U.S.C. § 5333(b) ("Section 13(c)"), through which DDOT receives federal funding, and the related agreements entered into between the City and AFSCME (together, the "Section 13(c) Agreements"). The City contends that (i) its obligation to bargain with the DDOT locals did not prevent the imposition of CETs on other non-DDOT AFSCME locals, (ii) the City has treated the DDOT and other AFSCME locals differently in the past and (iii) the City and AFSCME historically have not treated all of the City AFSCME locals as a single unit for bargaining purposes.

2.     Legal Issue to Be Determined

Whether the City's decision to bargain with AFSCME Locals 214 and 312 required it, under applicable law, to also bargain with the remaining AFSCME locals representing City employees.

3.      Position of the Parties Concerning Resolution

(a)      If the Court decides against abstention with respect to this
component of the AFSCME Claim, the City and AFSCME agree that the Court
may first decide the threshold legal issues, *provided that* the parties will work in
good faith to present stipulated facts to aid in the determination of the legal issues.
The City believes that such facts can be agreed upon and an evidentiary hearing on
the legal issues will be unnecessary.  By contrast, AFSCME contends that an
evidentiary hearing on the merits likely will be necessary.  As one example,
AFSCME contends that the parties disagree about the "bargaining history" between
AFSCME and the City, and that the resolution of that factual issue weighs on
whether the City had the right to bargain as it did in 2013-2014.  The City
disagrees.  In any event, each party reserves the right, pursuant to the Bankruptcy
Code, the Bankruptcy Rules and Local Bankruptcy Rules, to either (i) request an
evidentiary hearing if the parties cannot agree upon stipulated facts or (ii) contest
such a request or otherwise argue that no additional disputed facts exist that would
prevent the Court's determination of the legal issues.  In addition, the parties will
provide the Court with any additional information it may find necessary to render a
decision.

(b)      Before the Court rules on the legal issues, AFSCME renews
and reserves its request to file a sur-reply because it asserts that it has not had the

opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply.  If the City desires further briefing in response, the parties will propose an expedited briefing schedule to the Court.

(c)     The City and AFSCME agree that, if the Court decides the legal issue in favor of AFSCME, discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any).

**E.     Claim No. 8 and Coalition Claim— Negotiations and Implementation of Tentative Labor Agreement with the Coalition in 2012 (MERC Case No. C12 D-065, C12 F-125, C13 G-129)**

1.     <u>Procedural Facts</u>

(a)     In February 2012, a coalition of Detroit unions comprised of certain of the unions that are members of the Coalition, including AFSCME, agreed to a tentative labor agreement with the City (the "<u>Coalition TA</u>"). The Coalition TA included a number of economic concessions by the Parties.

(b)     On March 22, 2012, the Coalition informed the City that its member unions had ratified the Coalition TA.

(c)     The City administration did not present the Coalition TA to the Detroit City Council ("<u>City Council</u>") for ratification.  Instead, the City determined to negotiate the Consent Agreement with the State, which was executed on or

about April 4, 2012.  The City contends that ratification of the Coalition TA would have violated the terms required by the State for the Consent Agreement.

(d)     PA 4 suspended the City's obligation to comply with Section 15(1) of PERA.  See, e.g., Section 14(a)(10) of PA 4 (quoted above).

(e)     The City did not bargain further with the Coalition following execution of the Consent Agreement.

(f)     Instead, in July 2012, the City prepared the CETs, governing certain employment conditions for Coalition members.

(g)     On August 8, 2012, the question of whether PA 4 should be rejected was certified by Michigan's Board of Canvassers to be placed on the statewide ballot.  As of that date, the effect of PA 4 was suspended pursuant to Michigan Constitution, Article II, § 9.

(h)     The City contends that the CETs were issued and effective in July 2012.  AFSCME contends that certain employment conditions in the CETs were not imposed on the Coalition members until after August 8, 2012.

2.     Legal Issues to Be Determined

(a)     Whether the City violated PERA by refusing to present the Coalition TA to City Council for ratification and refusing to advocate for City Council ratification.

(b)     Whether the City violated PERA by bargaining in bad faith with the Coalition, both before the execution of the Consent Agreement.

(c)     Whether the City violated PERA by executing the Consent Agreement with the State pursuant to PA 4.

(d)     Whether PA 4 or PERA authorized the City to impose the CETs. AFSCME further submits that a related legal question is whether any components of the CETs determined to have been first implemented after August 8, 2012 violate applicable law (contrary to the City's argument that the CETs were implemented in July 2012) and whether the City bargained in bad faith after executing the Consent Agreement.

3.     Position of the Parties Concerning Resolution

(a)     If the Court decides against abstention with respect to this component of the AFSCME Claim, the City and AFSCME agree that the Court may first decide the threshold legal issues, *provided that* the parties will work in good faith to present stipulated facts to aid in the determination of the legal issues.

The City believes that such facts can be agreed upon and an evidentiary hearing on the legal issues will be unnecessary, while AFSCME believes that agreement on stipulated facts, for all facts necessary, may not be possible. In any event, each party reserves the right, pursuant to the Bankruptcy Code, the Bankruptcy Rules and Local Bankruptcy Rules, to either (i) request an evidentiary hearing if the parties cannot agree upon stipulated facts or (ii) contest such a request or otherwise argue that no additional disputed facts exist that would prevent the Court's determination of the legal issues. In addition, the parties will provide the Court with any additional information it may find necessary to render a decision.

(b) Before the Court rules on the legal issues, AFSCME renews and reserves its request to file a sur-reply because it asserts that it has not had the opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply. If the City desires further briefing in response, the parties will propose an expedited briefing schedule to the Court.

(c) The Parties agree that, if the Court decides the legal issues in favor of the Unions, discovery and additional briefing may be necessary to determine damages, if the Parties cannot agree on the appropriate claim amount (if any).

## F. Claim No. 9 — Violation of Privatization Ordinance

### 1. <u>Procedural Facts</u>

(a)    The City generally is subject to a privatization ordinance, Detroit City Code, §§ 18-5-100, *et. seq.* (the "Privatization Ordinance").   Under certain circumstances, prior to hiring a vendor to perform services otherwise performed by City employees, the City must comply with the approval process set forth in the Privatization Ordinance.[6]

(b)    AFSCME asserts that the City violated multiple court orders requiring it to comply with the Privatization Ordinance.

2.    Legal Issues to Be Determined

(a)    The City presents as a legal issue whether AFSCME pleaded this component of its claim with sufficient particularity and, if AFSCME did not plead the claim with sufficient particularity, whether AFSCME should be permitted to amend its claim.  AFSCME asserts the Proof of Claim is sufficiently pleaded, but has offered to supplement its proof of claim if necessary (particularly given the information provided to the City during mediation).

(b)    If the claim was sufficiently pleaded, or if AFSCME is permitted to amend the claim, whether the City violated the Privatization Ordinance.

---

[6]    The City contends that its obligation to comply with the Privatization Ordinance at times was suspended or modified, such as when the City was in financial receivership and operating under an emergency manager or a consent agreement with the State.

3.    Position of the Parties Concerning Resolution

(a)    If the Court decides against abstention with respect to this component of the AFSCME Claim, the City contends that the Court should decide the threshold legal issue about whether a claim has been stated.  AFSCME asserts that the claim is sufficiently pleaded, yet requests an opportunity to amend the AFSCME Claim, if the Court deems it necessary, given the fact that this is a relatively new defense to the claim.  AFSCME also contends that it provided a significant amount of information to the City concerning specifics about the claim during mediation.

(b)    Before the Court rules on the legal issues, AFSCME renews and reserves its request to file a sur-reply because it asserts that it has not had the opportunity to submit a written response to some of the arguments set forth in the City's Corrected Objection Reply.  If the City desires further briefing in response, the parties will propose an expedited briefing schedule to the Court.

(b)    If the Court finds that AFSCME pleaded this component of its claim with sufficient particularity, or permits AFSCME to amend its claim to remedy any such deficiency, the City and AFSCME will discuss whether they can stipulate to facts sufficient to allow the Court to decide whether the City violated the Privatization Ordinance, or whether discovery would be needed.  In this event, the City and AFSCME also will propose an agreed-upon briefing schedule.

**G.** **Claim No. 11 — Longevity Claim for AFSCME Employees (State of Michigan Department of Licensing and Regulatory Affairs, Wage and Hour Division, Claim No. 12-000522 and 12-000523; Wayne County Circuit Court Case No. 13-003430-AA)**

1. <u>Procedural Facts</u>

(a)     Under Article 25 of the 2005-2008 AFSCME collective bargaining agreement with the City, employees who worked a minimum amount of hours received an annual "longevity payment."  The amount of the payment was based upon the number of years of seniority, and ranged from $150 to $750 per eligible employee.

(b)     After engaging in bargaining and factfinding and receiving a factfinding opinion, the City imposed contract terms on AFSCME employees, which removed the longevity pay.[7]  AFSCME contends that its members should have received a longevity payment for 2010, in either the full amount after working the required hours or a pro-rated amount.

(c)     AFSCME filed claims with the State of Michigan's Department of Licensing and Regulatory Affairs, Wage and Hour Division (the "<u>Division</u>") in an attempt to recover the 2010 longevity payments.

(d)     By a decision dated March 8, 2012, the Division rejected AFSCME's claim.

---

[7]     The City contends that the new contract was imposed after complying with its bargaining obligations under PERA.  AFSCME disagrees.

(e)     AFSCME alleges that the Division erred in its decision dismissing AFSCME's complaint.  AFSCME appealed the decision to the Wayne County Circuit Court.

2.     Legal Issue to Be Determined

Whether the City's decision not to issue longevity payments in 2010 violated the Michigan Wage and Benefit Act.

3.     Position of the Parties Concerning Resolution

(a)     If the Court decides against abstention with respect to this component of the AFSCME Claim, the City and AFSCME agree that the existing evidentiary record from the prior proceeding is sufficient for the Court to resolve the applicable legal issue.  In this event, the City and AFSCME will propose an agreed-upon briefing schedule.

(b)     If the Court rules in AFSCME's favor on the merits, the City and AFSCME agree that discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any).

## H.     Claim No. 13 — Health Department Layoffs (MERC Case No. C05 H-194)

1.     Procedural Facts

AFSCME contends that the City (a) improperly laid off individuals within the City's Health Department and (b) caused an outside contractor to

employ them to perform the same work, thereby removing work from the bargaining unit unlawfully.

2.      Legal Issue to Be Resolved

Whether the layoff of the affected City employees working in the Health Department, and the utilization of non-City employees, violated PERA.

3.      Position of the Parties Concerning Resolution

(a)      If the Court decides against abstention with respect to this component of the AFSCME Claim, the City and AFSCME will discuss whether they can submit a fact stipulation sufficient for the Court to resolve the applicable legal issues, or whether an evidentiary hearing will be necessary to resolve the underlying factual issues.  If the Court agrees that further briefing is necessary, the City and AFSCME will propose an agreed-upon expedited briefing schedule.

(b)      If the Court rules in AFSCME's favor on the merits, the City and AFSCME agree that discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any).

## I.      Claim No. 16 — Human Services Department (Grievance No. 25-01-12 / COA: 12-0077708-CL)

1.      Procedural Facts

(a)      In July and October 2012, the City laid off approximately 174 AFSCME members, represented by Locals 1642, 273 and 457, employed at

the Health Department, the Department of Human Services and the Workforce Development Department for the City of Detroit. AFSCME alleges that the layoffs violated the then-applicable collective bargaining agreements.

(b)     AFSCME filed a grievance and obtained an arbitration decision in its favor. The arbitrator awarded an unspecified amount of back pay and benefits to affected union members.

(c)     The City appealed the decision to the Wayne County Circuit Court. However, the City has determined not to continue pursuing this appeal.

2.     Legal Issue to Be Determined

The amount of damages owed by the City as a result of the applicable arbitration decision finding that the 2012 layoffs violated the then-applicable collective bargaining agreements.

3.     Positions of the Parties Concerning Resolution

The City and AFSCME have agreed that the only outstanding issue is a determination of the amount of damages owed by the City pursuant to the arbitration award. The parties agree that discovery and additional briefing may be necessary to determine damages, if the parties cannot agree on the appropriate claim amount (if any). In such event, the City and AFSCME will propose an agreed-upon expedited briefing schedule.

**J.    Claim No. 19 — Detroit Service and Maintenance Outsourcing in Downtown Detroit (Grievance No. C09-078)**

1.    Procedural Facts

(a)    AFSCME alleges that:  (i) beginning in 2009 and successively each year thereafter, the City has reduced the overtime of AFSCME members who work in the downtown area; and (ii) the overtime reduction is a result of the work performed by private contractors.

(b)    AFSCME contends that the City's alleged outsourcing was in violation of the collective bargaining agreement that was in effect at the time.

2.    Legal Issues to Be Determined

(a)    The City presents as a legal issue whether AFSCME pleaded this component of its claim with sufficient particularity and, if not, whether AFSCME should be permitted to amend its claim.  AFSCME contends that it has done so, and requests the opportunity to amend the claim if deemed necessary, especially since this defense is relatively new.

(b)    If the claim was sufficiently pleaded, or if AFSCME is permitted to amend the claim, whether the City violated the applicable collective bargaining agreement.

3.    Positions of the Parties Concerning Resolution

(a)    If the Court decides against abstention with respect to this component of the AFSCME Claim, the City contends that the Court should decide the threshold legal issue about whether a claim has been stated.  AFSCME contends the claim is sufficiently pleaded, yet requests an opportunity to amend this claim, if the Court deems it necessary, given the fact that this is a relatively new defense to the claim.

(b)    If the Court finds that AFSCME pleaded this claim with sufficient particularity, or permits AFSCME to amend its claim to remedy any deficiency, the parties will discuss whether they can stipulate to facts sufficient to allow the Court to decide whether the City violated the applicable collective bargaining agreement, or whether discovery would be needed.  In this event, the City and AFSCME will propose an agreed-upon briefing schedule.

## Conclusion

The Parties are available to discuss these issues with the Court at the Court's convenience.

Dated: January 5, 2015                    Respectfully submitted,


/s/  Richard G. Mack                       /s/  Heather Lennox
Richard G. Mack, Jr., Esq.                 David G. Heiman (OH 0038271)
Jack Schulz                                Heather Lennox (OH 0059649)
MILLER COHEN PLC                           JONES DAY
600 West Lafayette Boulevard               North Point
4th Floor                                  901 Lakeside Avenue
Detroit, MI 48226-3191                     Cleveland, Ohio  44114
Telephone:  (313) 566-4787                 Telephone:  (216) 586-3939
Facsimile:  (313) 964-4490                 Facsimile:  (216) 579-0212
richardmack@millercohen.com                dgheiman@jonesday.com
                                           hlennox@jonesday.com

ATTORNEYS FOR AFSCME AND
THE COALITION                              ATTORNEYS FOR THE CITY

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Joint Statement of the City of Detroit, AFSCME Council 25 and the Coalition of Detroit Unions Regarding Open Issues in Connection with Objections to Proofs of Claim Numbers 2958 and 2851 was filed and served via the Court's electronic case filing and noticing system on this 5th day of January, 2015.

/s/  Heather Lennox