LAZARD
COMMENT ON REASONABLENESS OF FEES – 11 U.S.C. § 943(B)(3)

# City of Detroit

## Preamble

On January 5, 2015 an Order Regarding Process to Determine the Reasonableness of Fees Under 11 U.S.C. § 943(b)(3) was filed in re: City of Detroit, Michigan, Debtor. The order provides the opportunities for professionals to comment on the reasonableness of their own fees. Lazard hereby submits the following:

## Executive Summary

In September of 2013 Lazard Frères & Co. LLC ("Lazard") was engaged by the Official Committee of Retirees of the City of Detroit ("Retiree Committee") to represent its interests in Detroit's chapter 9 case. The Retiree Committee is the Court-appointed entity responsible for representing the interest of Detroit Retirees regarding both their pension and post-retirement health care (OPEB) claims, which together represent approximately 80% of the total unsecured claims pool in the case.

Since our engagement, Lazard has played a lead role in both framing the issues and in all of the key negotiations between the Retiree Committee and other creditors as well as the direct and mediated negotiations with the City.

Lazard has agreed, through mediation, to an aggregate fee (comprised of both Monthly Fees and a Transaction Fee as defined below) of $5.56 million which has been disclosed by the City. This aggregate fee is a 37% reduction from the $8.44 million in aggregate fees approved by the Retiree Committee.

Our Bankruptcy Court approved Engagement Letter with the Retiree Committee provides that Lazard be paid a Monthly Fee of $175,000 and a Transaction Fees as described below.

> Transaction Fee: In addition to the Monthly Fee, upon the earlier of approval by the Bankruptcy Court of a settlement of the material claims of the Retiree Committee and the consummation of the City's chapter 9 proceedings, Lazard shall be paid an additional fee that will appropriately compensate Lazard in light of the magnitude and complexity of the issues in the chapter 9 proceedings, which fee will be mutually agreed in good faith by Lazard and Retiree Committee, taking into account the results achieved, and subject to approval of the City.

By letter dated July 24, 2014, the Retiree Committee agreed to support a Transaction Fee in the amount of $6 million, payable upon consummation of a confirmed Plan of Adjustment.

By letter dated October 7, 2014, the City waived its right to require its affirmative consent to the Transaction Fee and represented that upon approval of the reasonableness of the Transaction Fee by the Fee Examiner or the Court, it will deem the requirements of the Fee Review Order to have been met.

The aggregate fee supported by the Retiree Committee was $8.44 million[a] including the Monthly Fees earned by Lazard during the Bankruptcy Case.

Lazard believes the $5.56 million in fees as disclosed by the City, including both Monthly Fees and a Transaction Fee, for our work on behalf of the Retiree Committee is appropriate in light of: (i) the magnitude and impact of the work Lazard performed, (ii) a comparison to fees earned by the City's financial advisors and the fees typically earned by financial advisors to the largest creditors in restructurings of a similar scale to Detroit's, and (iii) the substantial reduction in the aggregate fees disclosed by the City as compared to the fee Lazard was seeking prior to the mediation process.

Regarding the Transaction Fee, we would note that it is typical for investment bankers in a bankruptcy to be paid a monthly retainer and a transaction fee. In contrast to a set hourly rate for other professionals, the transaction fee, also known as a "success fee", requires the investment banker to take the risk that a case will be successfully concluded. If the matter is not successfully concluded, then a transaction fee is not paid, thus protecting the Estate from that expense. The quid pro quo for this, of course, is that when there is a successful resolution, the total compensation should reflect the risk taken.

## Summary of Lazard's Work on the Case

Following our retention, Lazard began its work by conducting a detailed review of the City's financial forecast. This review was updated periodically as the case progressed and the City refined and updated its thinking, many times as a result of suggestions and observations made by Lazard.

After completing our initial assessment, Lazard created a series of unique proposals designed to balance the City's need to reduce its financial burden and invest in its revitalization with the needs of the Retirees and other creditors. These proposals, which were of course modified and refined as the case progressed, were used as the basis for the various negotiations in which the Retiree Committee participated.

Among others, Lazard helped lead:

- Mediation sessions in November and December of 2013 that set the stage for the more substantive negotiations that followed;

- Numerous mediation sessions in January – March of 2013 which focused on specific asset monetization alternatives, Pension, OPEB and other creditor treatments and various

---

(a) Lazard waived its retainer for the month of November 2014 and any month thereafter which would be due and payable under its Engagement Letter. The Monthly Fees invoiced through November 2014 totaled $2.44 million, which, when added to the $6.0 million Transaction Fee, led to a total fee request of $8.44 million.

> financing alternatives; and

- The final sessions in April of 2014 that ultimately led to the "grand bargain" that served as the basis for the City's Plan of Adjustment.

In addition to discussions with the City, the Lazard team was also heavily involved in:

- Discussions with other creditors about inter-creditor matters;

- Extensive discussions with the Governor's office regarding the State's role in the "Grand Bargain";

- Discussions regarding DWSD, including various proposals to unlock value for retirees;

- Outreach to other stakeholders including State Officials, Media and the Mediators;

- Assistance with respect to the new Trusts that are being set up to provide health care benefits for Retirees; and

- Assistance to the Retiree Committee in evaluating and responding to the various settlements reached with other creditors.

## Summary of Lazard's Impact on the Chapter 9 Case

We believe a fair way to measure our contribution is to look at the fact that the Retirees were able to substantially improve their treatment from the First to the Eighth Amended Plan while at the same time preserving the City's re-investment initiatives and the Plan's feasibility. Specifically, from the First to the Eighth Amended Plan of Adjustment, pension cut-backs were reduced by 60% and funds available for Retiree healthcare were increased by 60%. While this obviously would not have been possible without the resources created by the Grand Bargain, the Retirees were able to responsibly take full advantage of this opportunity.

## Lazard's Fees in Comparison to the Fees of City Professionals and Fees in Comparable Chapter 11 Cases

Another measure of the reasonableness of $5.56 million of Lazard's fee disclosed by the City would be a comparison of its fees with the fees expected to be paid to the financial advisors to the City and in comparison to fees earned by investment bankers in bankruptcy cases with similar sized claim pools.

CITY OF DETROIT

**Debtor and UCC Investment Banker Fees, Chapter 11 in excess of $10 billion of debt**
($ in millions)

| Total Debt | Debtor | Date Filed | Court | UCC Investment Banker | | |
|---|---|---|---|---|---|---|
| | | | | Total Fee | As a percent of the total debt in the Case | As a percent of the Debtors' Investment Banker Fees |
| $27,300 | General Growth | 4/16/09 | NY-S | $15.9 | 0.06% | 55% |
| 18,000 | Calpine Corp. | 12/20/05 | NY-S | 15.6 | 0.09% | 54% |
| 14,082 | Delta Airlines | 9/14/05 | NY-S | 8.6 | 0.06% | 61% |
| 12,972 | Tribune Co. | 12/8/08 | DE | 13.5 | 0.10% | 65% |
| 10,900 | AMR Corporation | 11/29/11 | NY-S | 14.9 | 0.14% | 50% |
| | | | | Average | 0.09% | 57% |

As the above chart shows, in these recent large cases, the financial advisor to the Unsecured Creditors Committee (the functional equivalent of the Retiree Committee) received fees which were, on average, .09% of the total debt in the case and was paid 57% of the amount paid to the Debtor's financial advisor.

In Detroit, Lazard's fee request represents approximately .03% of the City's total liabilities, or a roughly 66% discount to the average earned by investment bankers in bankruptcy cases with similar sized claim pools. In comparison to the UCC's advisor receiving an average of 57% of the amount paid to the Debtor's advisors, Lazard's $5.56 million request represents just 9% of the ~$60 million that the City's advisors are requesting.

## Reductions in Lazard's Aggregate Fees

Finally, as stated above, inclusive of the Monthly Fees, the Retiree Committee supported an aggregate fee of $8.44 million for Lazard. This figure incorporates Lazard voluntarily waiving the Monthly Fees due to it for the months of November and December of 2014 in the amount of ~$350,000. Without such a waiver Lazard's total fee, as negotiated in its engagement letter, would have been ~$8.79 million.

Through the mediation process, Lazard agreed to an additional $3 million reduction in its overall fee for the case. Inclusive of the ~$350,000 of Monthly Fees waived, Lazard has taken a ~37% reduction in the fees it was originally seeking.

In light of the facts above, Lazard submits that the $5.56 fees as disclosed by the City are reasonable.

4 | LAZARD