UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---------------------------------------------------------x
                                               :     Chapter 9

In re                                  :

                                         :     Case No. 13-53846

CITY OF DETROIT, MICHIGAN,     :

                        Debtor.     :     Hon. Steven W. Rhodes

                                         :
---------------------------------------------------------x

**STATEMENT OF DENTONS US LLP IN SUPPORT OF ITS COMPENSATION FOR SERVICES AS LEAD COUNSEL TO THE OFFICIAL COMMITTEE OF RETIREES**

Pursuant to the Court's Order Regarding Process To Determine Reasonableness of Fees, dated and entered on January 5, 2015, Dentons US LLP ("Dentons") hereby submits its comments in support of its fees for services to the Official Committee of Retirees (the "Committee") from August 28, 2013 through December 10, 2014, the Effective Date of the Plan.[1]

**PRELIMINARY STATEMENT**

The bankruptcy case of the City of the Detroit was historic in its size, scope and significance. It was the largest municipal bankruptcy in the history of the United States and resulted in the effective elimination of billions of dollars of debt, most of which was owed, directly or otherwise, to the City's approximately 23,500 former retirees and 9,000 dependents for pension and other post employment benefits ("OPEB").

Because of the human and economic significance of the divergent interests of the retirees, upon filing for bankruptcy, the City was compelled to move for the formation of an official creditors committee for retirees. The motion was granted and the Office of the United States

---

[1] Dentons reserves its right to respond to objections, if any, and any questions of the Court.

Trustee formed a nine-member Official Committee of Retirees (the "Committee").[2] Faced with the threat by the City to cut substantially all pension and OPEB claims, as well as controversies regarding the eligibility of the City to be a chapter 9 debtor and a proposed settlement with the SWAP Counterparties, the Committee interviewed several firms to serve as its lead legal counsel in the case and on August 28, 2013, selected Dentons as its counsel.[3]

Following its retention, Dentons worked to protect the interests of all City retirees. The work was complex, challenging, time sensitive and until actual confirmation of the City's plan of adjustment, required near-constant effort by the lawyers involved.

By most measures, the Chapter 9 case of the City of Detroit was a success. However, the success of the restructuring was attributable in large part to the sacrifices of the retirees, which allowed the City to reduce its future obligations by billions of dollars in health benefit and pension costs. Although the City's restructuring required very real sacrifices by retirees, the efforts of the Committee helped to significantly minimize the retirees' loss of pension benefits and to provide a mechanism for continuing retiree health care. And, in no small part due to the efforts of the Committee and Dentons, such results were achieved in approximately 17 months through a confirmed plan that was approved by all retiree classes (Classes 8, 9 and 10). For its efforts, Dentons received $14,600,317.38 in compensation for more than 26,300 hours of

---

[2] The Committee's members represented a true cross section of the retiree population, including the heads of three retiree associations, representatives of the UAW, AFSCME and the Firefighters unions, and retirees from the City's Law, Water and Sewer, and Transportation departments. While the US Trustee did a good job of creating a representative and hardworking Committee, its diverse composition reflected differing views and interests ensured that the Committee position represented carefully vetted and hard fought compromises.

[3] Dentons is a international law firm created by the combination of SNR Denton, Fraser Milner Casgrain, and Salans. The retention of Dentons included and contemplated the retention of Dentons' verein affiliate Salans FMC SNR Denton Europe LLP ("Dentons Europe") and lawyers and non-lawyer staff in its New York office. Effective October 1, 2013, Claude Montgomery, and other individuals from Dentons Europe, who assisted in this engagement, relocated to the New York office of Dentons and joined Dentons.

- 2 -
83674296\V-3

13-53846-tjt    Doc 9080    Filed 01/16/15    Entered 01/16/15 17:27:53    Page 2 of 11

services to the Committee and reimbursement of $831,464.00 of expenses. These amounts exclude significant, *i.e.,* multi-million dollar, voluntary reductions to its fees and costs. All of the amounts invoiced by, reduced by and paid to Dentons were reviewed by the Court appointed Fee Examiner, the City professionals and, more recently by the Mayor's representatives in mediation (which in turn resulted in additional voluntary concessions). Dentons submits that its compensation has been disclosed and is fair and reasonable under the standards of 11 U.S.C. §943(b)(3).

A.  **DENTONS' SERVICES FOR THE COMMITTEE**

The Committee retained Dentons on August 28, 2013 to assist the Committee in representing the largest creditor constituency (both in terms of the number of claimants and their aggregate claim values) on pension and health benefit claims.[4] Dentons qualifications to represent the Committee were unchallenged and include, among other things, (i) a strong, well-respected restructuring group with significant retiree and creditor committee experience, (ii) a pension and benefits group familiar with controversies in bankruptcy cases, (iii) financing and capital markets practices with understanding of municipal bonds, swaps and other financing mechanisms, (iv) tax, corporate and litigation practices experienced in complex bankruptcy matters, and (v) public policy and attorney general practitioners who understand the workings of governments. As evidenced by the monthly invoices filed with the reports of the Fee Examiner, Dentons was required to draw on a number of firm practice group resources to address the issues facing the Committee and to assist in the resolution of disputes with the City. other creditors and parties in interest through the plan confirmation process.

Dentons work benefitted all retirees and their collective interest in the City as creditors and citizens. Among other things, Dentons along with the Committee's actuaries and financial

---

[4] The Committee was the only official creditors committee appointed in the case.

advisors, analyzed and valued retiree claims for pension and health benefits as well as the City's resources for meeting those obligation. That information formed the basis for the City's settlements with the retirees.

Dentons engaged in litigation that resulted in both short term and long term benefits to retirees. By way of example, the argument advanced at the two month eligibility trial that the Governor lacked authority to permit a violation of the State's constitution, had sufficient traction to cause the State's involvement (and financial concessions) in the retiree settlements and plan process generally. Dentons participation in the eligibility issues, which continued on appeal to the Court of Appeals for the Sixth Circuit, was a key to resolution of this case.[5] From the vantage point of retirees, the Foundation settlement alone would not have created a consensual plan framework.

When threatened with unilateral healthcare benefit cuts, retirees led by the Committee and Dentons, filed suit (twice). The first suit resulted in continuation of the then-existing benefits to February 2014. The second action resulted in a settlement that provided less onerous benefit reductions and the framework for ultimate plan treatment of OPEB benefits.

The Committee, led by Dentons, assessed and filed proof of claims on behalf of the retirees for health care and pension benefits, and negotiated the treatment of such claims. The Committee, with Dentons' hands on efforts, took on the task of explaining the claims and voting process to retirees who were unfamiliar and largely hostile (at least at first) to the bankruptcy case and treatment of their claims. These efforts included town hall and other retiree meetings, and responding to hundreds of separate inquiries through a retiree hotline and website. These

---

[5] Dentons also met with legislators in Lansing and submitted statements to the State Committees to drum up support for the State contribution.

- 4 -
83674296\V-3

13-53846-tjt    Doc 9080    Filed 01/16/15    Entered 01/16/15 17:27:53    Page 4 of 11

efforts were instrumental in building widespread retiree confidence in the City's proposals and the retiree settlements.

Once the framework of an agreement on pension modification was reached with the City, Dentons was instrumental in memorializing the agreement in the plan and special supplement for the retirees. During voting, Dentons monitored the process and moved swiftly to correct critical errors, including, incorrect balloting based on a plan language inconsistency, and a lack of full disclosure of the terms of ASF Recoupment. With the Retirement Systems, the Committee obtained an alternative of a lump sum option for the ASF Recoupment.

Until the vote was received in July 2014, the Committee (and Dentons) was required to prepare both to support the plan at confirmation (if the requisite retiree support occurred) and, in the alternative, oppose plan confirmation (if retirees voted to oppose confirmation). This required Dentons to actively participate in the plan discovery and briefing process. Once the favorable vote occurred, the Committee became a prime supporter of plan confirmation, with Dentons' providing assistance to help achieve and effectuate this result. With retiree's claim treatment under attack by several large creditors, the City delegated to Dentons a significant part of the defense of the treatment of retiree claims at confirmation. Dentons prepared and defended the witnesses on the treatment of pension claims and the validity of the settlements reached with the Committee. Dentons made the arguments for approval of the retiree settlements in confirmation briefs, pretrial submissions and opening and closing arguments in support of plan confirmation.

As the Emergency Manager testified and the Court found, reduction of skyrocketing health care costs was central to the City's future. Dentons led the effort in the resolution of retiree health care issues, which enabled the City to reduce its cost by billions of dollars and eliminate its obligation to administer health care benefits long term while also maintaining future

- 5 -
83674296\V-3

13-53846-tjt    Doc 9080    Filed 01/16/15    Entered 01/16/15 17:27:53    Page 5 of 11

benefits for such retirees.  Many of the details of formulating and implementing first of its kind health care VEBAs created under the plan were left to the Committee and Dentons.  With the invaluable assistance of the Mediators Chief Judge Rosen, Judge Victoria Roberts, Judge Wiley Daniel, Eugene Driker and others, these continuing negotiation and implementation challenges (including meeting millions of dollars in initial, post-confirmation funding requirements so that there would be no additional disruptions in retiree health care) were met.  In addition, Dentons helped ensure that the VEBA trustees and plan structure was in place to take over the City's role of providing such health care claim payments.  Without the Committee and the role played by Dentons, such a result could not have been achieved consensually or in such little time.

The description of services above is a brief overview of the services for the Committee, which are detailed in the invoices submitted every month for review by the Fee Examiner and the City and filed with the Court in the Fee Examiner's reports and incorporated herein by reference.

**B.    DENTONS' REQUESTS FOR COMPENSATION WERE THOROUGHLY REVIEWED BY THE FEE EXAMINER AND THE CITY**

At the outset of this case, the Court adopted the Fee Review Order [Dkt. No. 810].  The Fee Review Order established a comprehensive review procedure with the consent of the City to ensure that the fees paid by the City to the City and the Committee's professionals were thoroughly reviewed by an independent fee examiner, fully disclosed to the Court, to the City, creditors and the public and reasonable.  The Court's Fee Review Order established guidelines for the professionals to record and disclose their fees and expenses, and to work with the Fee Examiner (as defined at Dkt. No. 810 ¶1) to resolve any issues, as defined in the Fee Review Order, and for the Fee Examiner to record and disclose his findings.  Once the procedure was approved, the City, the Committee and the Fee Examiner, who was tasked with the responsibility of ensuring compliance with the requirements of section 943(b)(3), have complied with the

detailed obligations imposed by the Fee Review Order. In addition, Dentons participated in the Court ordered mediation, during which the City, through its elected officials, reviewed the invoices and conferred with Dentons. The fees of the Committee's professionals, including Dentons, throughout the case have been reviewed, discussed and settled, fully disclosed, found to be reasonable and paid.

### C. DENTONS HAS AGREED TO SIGNIFICANT REDUCTIONS IN COMPENSATION

Dentons made a number of concessions with respect to its compensation initially in its retention agreement with the Committee, throughout the case through the fee review process and finally in mediation.

First, Dentons agreed to a reduced rate for the three lead professionals--Carole Neville, Claude Montgomery and Sam J. Alberts. Dentons also agreed that its hourly rate for each of the other Dentons' attorneys would not exceed the hourly rates charged by Jones Day attorneys of comparable year of admission to the bar. To accommodate the Fee Examiner and the City, Dentons agreed that its rate concession would be at least 10 percent below its standard rates. Dentons' billings also reflect agreements reached with the City, as contained in the Fee Review Order dated September 11, 2013 (ECF #810), as well as discounts and other reductions reached with the Fee Examiner each month.

The fee review process throughout the case has been robust. In preparation of certain Fee Examiner's Quarterly Reports, Dentons would provide further explanations and significant reductions. Including the rate reduction, Dentons voluntary concessions totaled $3,417,282.65 in fees and $418,597.58 in costs through October, 2014.

Dentons participated in the mediation with the City's law department and agreed to further concessions. The mediation terms and documentation, remain subject to the confidentiality order of the Court.

**D.  COMPARISON WITH OTHER BANKRUPTCY CASES**

The Court's request for comparison with comparable chapter 9 and chapter 11 cases presents certain challenges. There has not been another chapter 9 case of the size of Detroit's chapter 9 case that would serve as a reasonable comparison. Moreover, the professional fees paid by the other chapter 9 debtors are not easily ascertained, if at all, because the professionals are not required to follow chapter 11 compensation procedures. The City of Stockton, for example, in its chapter 9 pending in the United States Bankruptcy Court for the Eastern District of California [Case No. 12-32118], will not disclose fees paid during the case or subject them to court review. Pursuant to the confirmed plan [Dkt. No. 1645], the City will only submit for review those fees for services or expenses in the Chapter 9 Case or incident to the plan paid <u>after</u> the effective date of the Plan:

> Pursuant to section 943(b)(3), all amounts paid following the Effective Date or to be paid following the Effective Date for services or expenses in the Chapter 9 Case or incident to this Plan must be disclosed to the Bankruptcy Court and must be reasonable. There shall be paid to each holder of a Professional Claim, in full satisfaction, release, and discharge of such Claim, Cash in an amount equal to that portion of such Claim that the Bankruptcy Court approves as reasonable, on or as soon as reasonably practicable following the date on which the Bankruptcy Court enters a Final Order determining such reasonableness. The City, in the ordinary course of its business, and without the requirement for Bankruptcy Court approval, may pay for professional services rendered and costs incurred following the Effective Date. *Id* at 32

*See* Modified Disclosure Statement and First Amended Plan of Adjustment of Debts of the City of Stockton, California Dated November 18, 2013.[Dkt. 1215] at 71.

The City of Stockton has taken the position that fees paid to professionals during the course of its case are not professional fees subject to review:

> During the course of the Chapter 9 Case, the City has, in the ordinary course of business, paid the fees (and reimbursed the costs) of its various counsel (including bankruptcy counsel, labor counsel, litigation counsel, and elections counsel). The City has also paid the fees of management and financial professionals, as well as the fees of counsel for the Retirees Committee, on a regular basis during the Chapter 9 Case.
>
> The fees described in the preceding paragraph are not Professional Fees because they have been paid prior to the Effective Date. Nor are such fees subject to Bankruptcy Court review or approval, as sections 326 et seq . do not apply in chapter 9 cases. As of the date of this Disclosure Statement, the City is not aware of any Claims for Professional Fees.

*Id.*

Comparisons to comparably sized chapter 11 cases are also challenging. In many chapter 11 cases where retiree committees are formed, the retiree committee is not the only creditors committee. In such cases, the retiree committee's role was limited in duration and to specific issues, and the pension and health benefit issues were a subset of the collective bargaining and/or section 1113 process. For example, in the *American Airlines* case (*AMR Corporation*, Case No. 11-15463 (SHL)) filed in the United States Bankruptcy Court for the Southern District of New York, two committees were appointed--a creditors' committee representing bondholder, trade and employee claims, including pension claims, and later in the case, a Section 1114 committee. The pension claims were resolved during the Section 1113 process in a settlement with the Pension Benefit Guaranty Corporation by which AMR, like Detroit, froze the existing pensions for active employees, but agreed to continue funding the accrued benefits. In that case, the lead creditors committee counsel received $27,780,840 in fees [Dkt. No. 11662], the lead retiree committee counsel received $4,032,541 in fees [Dkt No. 11655], and debtors' lead counsel received $77,001,439 in fees [Dkt. No. 11663]. Both committees retained several law firms to deal with conflicts and discrete issues that arose during the case and also had accountants, actuaries and financial advisors for assistance. The debtor also retained multiple law firms.

## CONCLUSION

Based on the above, Dentons submits that the fees and expenses for which it has received payment from the City have been disclosed and are fair and reasonable within the meaning of 11 U.S.C.§943(b)(3).

Dated:  January 16, 2015  Respectfully submitted,

DENTONS US LLP

By:  /s/ Carole Neville
Carole Neville
Claude D. Montgomery
1221 Avenue of the Americas
New York New York 10020
Tel:  (212) 768-6700
carole.neville@dentons.com
claude.montgomery@dentons.com

and

Sam J. Alberts
DENTONS US LLP
1301 K Street, NW  Suite 600, East Tower  Washington, DC 20005-3364
Tel: (202) 408-6400
sam.alberts@dentons.com

*Attorneys for the Retirees Committee*

## CERTIFICATE OF SERVICE

I, Carole Neville, hereby certify that the foregoing document was filed and served via the Court's electronic case filing and noticing system on January 16, 2015.

By: _/s/ Carole Neville_
Carole Neville