# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                                     Chapter 9

City of Detroit, Michigan,                                 Case No. 13-53846

      Debtor.                                       Hon. Steven W. Rhodes

_____/

## Amended Opinion and Order Regarding the Reasonableness of Fees Under 11 U.S.C. § 943(b)(3)

Section 943(b)(3)[1] of the bankruptcy code requires the Court to find, as a condition of confirmation of a plan of adjustment of municipal debts, that "all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable." For the reasons stated in this opinion, the Court finds that the City has met this confirmation requirement.

## I. BACKGROUND

In its opinion confirming the City of Detroit's eighth amended plan of adjustment of debts, the Court held that § 943(b)(3) requires the Court to independently review all professional fees and expenses for which the City is responsible to pay and which were incurred between the filing of the petition and the effective date of the plan, regardless of whether the fees were paid or unpaid at the time of confirmation. *See* Trial Tr. 35:17-22, Nov. 7, 2014 (Dkt. #8257); Supplemental Op. at 81-93. (Dkt. #8993) This includes the professionals who represented and advised the City generally as well as those who advised specific departments, such as the police

---

[1] All references to code sections in this opinion are to the bankruptcy code, title 11 of the United States Code.

department and the water and sewerage department.  It also includes the professionals who represented and advised the Official Committee of Retirees, the court-appointed professionals,[2] and the court-appointed mediators.[3]  Subsequently, the Court held that the review mandate in § 943(b)(3) extends to the fees paid in connection with the City's bankruptcy case to US Bank in its capacity as trustee for certain DWSD bonds, *see* Order Amending and Clarifying Fee Review Order, ¶ 2 at 1 (Dkt. #5150), and professionals retained by the City's two retirement systems. *See* Op. and Order at 5.  (Dkt. #8470)

The Court further determined it was necessary to delay consideration of the § 943(b)(3) issue until after the plan was confirmed, as the plan's post-confirmation implementation required substantial effort on behalf of City-paid professionals.  Supplemental Op. at 93.  (Dkt. #8993)

On November 12, 2014, the Court entered an order confirming the City's plan (Dkt. #8272), and the plan became effective on December 10, 2014.  *See* Notice of Effective Date, ¶ 1 at 1.  (Dkt. #8649)

To facilitate the Court's review of professional fees under § 943(b)(3), the Court ordered "all professionals to submit to the City final statements for fees and expenses incurred through the plan effective date" by December 22, 2014, and ordered the City to file its final disclosure of fees and expenses by December 30, 2014.  *See* Scheduling Order at 1.  (Dkt. #8710)  In the

---

[2] The City consented to paying fees and expenses incurred by the Official Committee of Retirees and its professionals, *see* Order Directing Appt. of Committee of Retired Emp'ees (Dkt. #279); Order Authorizing Retention of Lazard (Dkt. #2250), and did not object to paying the fees and expenses incurred by the fee examiner professionals, *see* Fee Review Order, ¶ 27 at 7-8 (Dkt. #810), or the Court's appointed expert witness on feasibility and her team, *see* Order Appt'ing Expert Witness, ¶ 12 at 2.  (Dkt. #4215)

[3] The City was required to pay a portion of the fees and expenses of "any non-judicial mediator," as directed by Chief Judge and Judicial Mediator Gerald Rosen.  Mediation Order, ¶ 3 at 1.  (Dkt. #322)

meantime, and in the midst of a wave of negative publicity regarding the fees charged, the professionals and the City, represented by its elected leadership rather than the emergency manager, successfully mediated reductions in fees.

The City timely filed its disclosure of fees and expenses (Dkt. ##8986, 8997), and the Court subsequently invited parties to the case, as well as any professional subject to the fee review process, to submit comments on the reasonableness of the disclosed fees. *See* Order re: Fee Process at 1. (Dkt. #8999)

Several professionals filed comments supporting a finding of reasonableness, including:

- Jones Day, the law firm that represented the City throughout the bankruptcy proceedings (Dkt. #9076);

- Pepper Hamilton, the City's local counsel (Dkt. #9074);

- Miller Buckfire, the City's investment banking and financial advisory firm (Dkt. #9078);

- Dentons LLP, the law firm that represented the Official Committee of Retirees (Dkt. ##9080, 9081);

- Lazard, the Retiree Committee's financial advisor (Dkt. #9057);

- the Segal Company, which provided actuarial services to the Retiree Committee (Dkt. #9075);

- Clark Hill, the law firm that represented the City's two retirement systems throughout the bankruptcy proceedings (Dkt. #9068); and

- Greenhill, the retirement systems' financial advisor (Dkt. #9079).

Christie's, which appraised a portion of the art collection housed at the Detroit Institute of Arts Museum, also filed a comment in support of Debevoise & Plimpton, the law firm that represented Christie's during the discovery phase of the confirmation hearing. (Dkt. #9077)

Only one party filed a comment against the reasonableness of the fees, Ms. Angles Hunt. (Dkt. #9002)

3

## II. THE APPLICABLE LAW

Consistent with the limitations placed on this Court's authority by §§ 903 and 904, and the Tenth Amendment to the United States Constitution, *see* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."), the Court's review of professional fees and expenses in chapter 9 is limited to a determination of whether they have been "fully disclosed," and whether they are "reasonable." 11 U.S.C. § 943(b)(3).

The chapter 9 fee review process is therefore not accompanied by the detailed statutory framework found in other sections of the bankruptcy code. *See, e.g.*, §§ 326-331; *see also* § 901 (incorporating provisions of other chapters of the bankruptcy code into chapter 9, but not including § 330); *In re Cnty. of Orange*, 241 B.R. 212, 216 (Bankr. C.D. Cal. 1999) (holding that, "[b]ecause [§ 901] excludes § 330 from the list of statutes applicable to chapter 9 cases, it does not apply here.").

Moreover, few courts have expanded upon § 943(b)(3)'s sparse language; they often confirm municipal debt adjustment plans with little discussion of how or why they found the fees at issue are "fully disclosed" or "reasonable." *See, e.g.*, Findings of Fact, Conclusions of Law, and Order Confirming Chapter 9 Plan, ¶ 7 at 42-43, *In re Jefferson Cnty.*, No. 11-05736-TBB9 (Bankr. N.D. Ala. Nov. 22, 2013) (Dkt. #2248) ("The Court has reviewed and considered such amounts paid and to be paid and has determined, based on the unique facts, circumstances, and context of the Case, the Plan, and the transactions contemplated by the Plan, that all such amounts are reasonable . . . . The Plan therefore satisfies Bankruptcy Code section 943(b)(3)."); *In re Barnwell Cnty. Hosp.*, 471 B.R. 849, 868 (Bankr. D.S.C. 2012) ("There have been no objections to the Plan based upon these disclosures [of fees]. The foregoing amounts are

4

reasonable and necessary to effectuate the Plan and reorganization in this complex case, and thus

§ 943(b)(3) is satisfied.").

Collier on Bankruptcy describes a court's role under § 943(b)(3) as follows:

> The courts will monitor the payment of fees and the reimbursement of expenses in or in connection with a chapter 9 case to insure that the fees and expenses are reasonable, that there is no overreaching by attorneys or agents either of the debtor or of creditors, and that there is full disclosure so that those whose rights are affected directly by the plan and directly or indirectly by compensation arrangements are aware of the practice in a particular case and *can determine whether the plan is being proposed for the benefit of the debtor and its creditors or is a scheme to benefit private interests at the expense of the debtor and/or its creditors.*

6 Collier on Bankruptcy ¶ 943.03 (emphasis added).

This interpretation from Collier aligns with the Court's conclusions regarding § 943(b)(3)

set forth in the Court's Supplemental Opinion confirming the City's plan:

> [A]s a court of equity, a bankruptcy court has the authority, "guided by equitable doctrines and principles," to "safeguard the public interest" as a condition of granting relief, unless the condition is inconsistent with the bankruptcy code. *Id.* at 145. It also has the authority, inherent in its jurisdiction and "not dependent on express statutory provisions" to remedy the "existence of unfair dealing, a breach of fiduciary obligations, profiting from a trust, special benefits for the reorganizers," all as part of the Court's responsibility to ensure that the plan is "fair and equitable" and "devoid of overreaching." *Id.* at 146. Of course, as much in the professional fee context as in another context, a bankruptcy court must zealously protect against "unfair dealing, a breach of fiduciary obligations, profiting from a trust, [or] special benefits for the reorganizers." *Id.*

Supplemental Opinion at 91 (quoting *Am. United Mut. Life Ins. Co. v. City of Avon Park*, 311

U.S. 138, 145-46 (1940)).  (Dkt. #8993)

The fee examiner in this case identified the following considerations in his quarterly fee

examiner reports:

5

Due to the magnitude and complexity of the Case, the novelty of the legal issues, the extremely tight time frames imposed by the Court and the strong differences in opinion between the various parties about what to do and how to do it, it was (and continues to be) inevitable that the costs associated with the services provided by the various Professionals were going to be significant. It is impossible (and inappropriate) to view [the amount of the professional fees and expenses] in the abstract. They must be tested against the circumstances of the Case, such as the amount of debt being addressed, the number of competing interests that have to be considered, the number of diverse problems and public interest issues that must be simultaneously considered and solved and the uncharted waters of a Chapter 9 case of this magnitude.

Fee Examiner's Quarterly Report, ¶ 13 at 8. (Dkt. #2642)

The Court agrees, and with these principles in mind, will turn to the fees at issue in this case.

## III. THE FEES

The grand total for professional fees and expenses subject to the Court's review under § 943(b)(3) in this case is $177.91 million.[4] *See* City of Detroit's Disclosure of Fees & Expenses at 3-4 ("City Disclosure"). (Dkt. #8997) This amount includes payments made from the City's general fund as well as from certain enterprise funds and the City's retirement systems. For the general fund, the breakdown per professional is as follows:

|  | City Professionals & Advisors | |
|---|---|---|
| 1. | Jones Day | $57.90 (in millions) |
| 2. | Miller Buckfire | $22.82 |
| 3. | Ernst & Young | $20.22 |
| 4. | Conway MacKenzie | $17.28 |
| 5. | Miller Canfield | $7.12 |
| 6. | Kurtzman Carson Consultants | $3.85 |
| 7. | Pepper Hamilton | $2.69 |

---

[4] The actual total is $183.2 million; however, the State of Michigan reimbursed the City $5.29 million, bringing the total down to $177.91. City Disclosure at 2-3. (Dkt. #8997)

6

| | | |
|---|---|---|
| 8. | Milliman | $1.97 |
| 9. | Black Letter | $1.33 |
| 10. | Plante Moran | $1.21 |
| 11. | Manhattan Institute & Bratton | $0.59 |
| 12. | Abernathy MacGregor | $0.48 |
| 13. | AlphaLit | $0.47 |
| 14. | Debevoise & Plimpton | $0.42 |
| 15. | Foley & Lardner | $0.33 |
| 16. | Christie's Appraisals Inc. | $0.30 |
| 17. | Butzel Long | $0.29 |
| 18. | Galardi Rothstein Group | $0.26 |
| 19. | Xact Data Discovery | $0.25 |
| 20. | Duffey Petrosky | $0.22 |
| 21. | RR Donnelly | $0.22 |
| 22. | UHY Advisors | $0.17 |
| 23. | Kessler International | $0.15 |
| 24. | Nowling & Company | $0.15 |
| 25. | Hodges-Mace Benefits Group | $0.05 |
| 26. | Detroit Institute of Arts | $0.04 |
| 27. | State reimbursement | ($5.29) |
| | Total: | $135.49 |

**Retiree Committee**

| | | |
|---|---|---|
| 1. | Dentons | $15.41 |
| 2. | Lazard | $5.56 |
| 3. | Brooks Wilkins Sharkey & Turco PLLC | $1.00 |
| 4. | Segal | $3.62 |
| | Total retiree committee: | $25.59 |

**Mediators**

| | | |
|---|---|---|
| 1. | Barris, Sott, Denn & Driker PLLC | $0.81 |
| 2. | Gina M. Torielli | $0.13 |
| 3. | JAMS | $0.04 |
| | Total mediators | $0.98 |

**Court-Appointed Professionals**

| | | |
|---|---|---|
| 1. | Phoenix Management Services | $1.31 |
| 2. | Shaw Fishman Glantz & Towbin LLC | $1.05[5] |
| 3. | Kapila Mukamal LLP | $0.27 |

---

[5] The Court has been advised that Shaw Fishman intends to file a final fee request shortly. Therefore, this amount may not be the final fee amount for this professional. Upon receipt of that request, the Court will review it for reasonableness under § 943(b)(3) and enter an appropriate order.

| 4. | Squire Patton Boggs | $0.22 |
| | Total Court-appointed professionals: | $2.85 |

Thus, the total amount paid from the City's general fund for professional fees and expenses is $164.91 million. *See* City Disclosure 3-4. (Dkt. #8997) The per-professional breakdown for fees and expenses paid from enterprise funds and the retirement systems is as follows:

City Professionals & Advisors Paid from Enterprise Funds

| 1. | Dykema Gossett PLLC | $0.42 | (in millions) |
| 2. | Kilpatrick & Associates | $0.41 | |
| 3. | Ottenwess, Allman & Taweel | $0.21 | |
| | Total enterprise funds: | $1.04 | |

Retirement Systems Professionals

| 1. | Clark Hill | $6.25 |
| 2. | Greenhill | $5.71 |
| | Total retirement systems: | $11.96 |

## IV. THE FEES ARE REASONABLE

The Court finds that the fees are reasonable. This finding is based primarily on the number and complexity of the issues in the case, the City's extreme financial challenges, the results obtained, the substantial reductions to which many professionals have agreed, and the lack of objections or negative comments regarding fees filed with this Court.

### A. The Complexity of the Case

#### 1. Motions

Motions were filed on a daily basis, totaling in the thousands. A list of the substantive motions is set forth below:

8

1. Motion to assume Lease or Executory Contract /Motion of Debtor for Entry of an Order (I) Authorizing the Assumption of that Certain Forbearance and Optional Termination Agreement Pursuant to Section 365(a) of the Bankruptcy Code, (II) Approving Such (Dkt. #17)

2. Motion of Debtor for Entry of an Order Appointing Kurtzman Carson Consultants, LLC as Claims and Noticing Agent Pursuant to 28 U.S.C. § 156(c), Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 2002 (Dkt. #19)

3. Motion of Debtor, Pursuant to Section 1102(a)(2) of the Bankruptcy Code, for Entry of an Order Directing the Appointment of a Committee of Retired Employees (Dkt. #20)

4. Motion of Debtor for Entry of an Order Establishing Case Management and Scheduling Procedures (Dkt. #39)

5. Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order Confirming the Protections of Sections 362, 365 and 922 of the Bankruptcy Code (Dkt. #53)

6. Motion of Debtor, Pursuant to Section 105(a) of the Bankruptcy Code, for Entry of an Order, Extending the Chapter 9 Stay to Certain (A) State Entities, (B) Non-Officer Employees and (C) Agents and Representatives of the Debtor (Dkt. #56)

7. Motion by Syncora for Clarification Regarding the Court's July 22, 2013 Order and Leave to Conduct Limited Discovery (Dkt. #142)

8. Syncora Guarantee Inc.'s Emergency Motion to Dissolve the Temporary Restraining Order and Conduct Expedited Discovery (Dkt. #317)

9. Motion of Debtor, Pursuant to Sections 105(A) and 107 of the Bankruptcy Code, for Entry of an Order (A) Authorizing and Directing City Officials to Release Certain Information Regarding Potential Tax Creditors and (B) Authorizing Filing of Such Info (Dkt. #706)

10. Motion for Withdrawal of Reference re: Objection to Eligibility to Chapter 9 Petition filed by Retiree Committee Official Committee of Retirees (Dkt. #806)

11. Motion To Stay Objection to Eligibility to Chapter 9 Petition Deadlines and the Hearings Concerning a Determination of Eligibility Pending decision on Motion to Withdraw the Reference (Dkt. #837)

12. Motion of The Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees Motion to Compel Testimony of Kevyn Orr and All Other City and State Witnesses Regarding City-State Communications (Dkt. #920)

13. Objectors' Motion in Limine to Preclude Debtor from Offering Evidence Regarding the Likelihood of Success, Complexity, and Expense of Claims the City Seeks to Settle with the Forbearance and Optional Termination (Dkt. #933)

14. The Objectors' Motion in Limine to Preclude Debtor from Offering Evidence Regarding the City's Need to Obtain Casino Revenues in Connection with Its Debtor-In-Possession Financing Efforts (Dkt. #935)

15. Motion of Debtor for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (Dkt. #1146)

16. Police and Fire Retirement Systems' Motion to Compel Production of Documents Withheld on the Grounds of Privilege (Dkt. #1269)

17. Official Committee of Retirees' Motion in Limine to Exclude Opinions or Conclusions as to the City of Detroit, Michigan's Underfunding of Pension Liability (Dkt. #1276)

18. Debtor's Motion for Entry of an Order (I) Authorizing the Debtor to Enter into and Perform under Certain Transaction Documents with the Public Lighting Authority and (II) Granting Other Related Relief (Dkt. #1341)

19. Motion of the Debtor for a Final Order Approving Post-Petition Financing (Dkt. #1520)

20. Motion of Syncora for Leave to Conduct Limited Discovery in Connection with Motion of the Debtor for Post-Petition Financing (Dkt. #1640)

21. Motion of Debtor, Pursuant to Sections 105 and 502 of the Bankruptcy Code, for Entry of an Order Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims (Dkt. #1665)

22. Motion of Creditors for Entry of an Order Pursuant to Section 105(A) of the Bankruptcy Code Appointing and Directing the Debtor to Cooperate with a Committee of Creditors and Interested Persons to Assess the Art Collection of The Detroit Institute of Arts (Dkt. #1833)

23. Motion by Syncora to Compel the Production of Privilege Log (Dkt. #1899)

24. Motion by Syncora to Stay Pending Appeal (Dkt. #2516)

25. City of Detroit's Motion for Entry of an Order Vacating the Appointment of Official Committee of Unsecured Creditors (Dkt. #2626)

26. Motion of the City of Detroit for Approval of the Proposed Disclosure Statement (Dkt. #2713)

27. Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment (Dkt. #2789)

28. Motion of Debtor for Entry of an Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving a Settlement and Plan Support Agreement with SWAP Counterparties and Granting Related Relief (Dkt. #2802)

29. Motion by Committee of Retirees to Compel the Production of Documents Requested in Connection with the Deposition of Kevyn Orr as Relates to the City's Proposed Settlement and Plan Support Agreement with the Swap Counterparties (Dkt. #3072)

30. Motion to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (Dkt. #3079)

31. Motion by Financial Guaranty Insurance Company for Entry of an Order Pursuant to Section 105(a) of the Bankruptcy Code Directing the Debtor to Cooperate with Interested Parties Seeking to Conduct Due Diligence on the Art Collection Housed at the Detroit Institute of Arts (Dkt. #3923)

32. Motion of the City of Detroit Water & Sewerage Department for an Order Amending and Clarifying Fee Review Order (Dkt. #3929)

33. Motion by City of Detroit for Entry of an Order Establishing Supplemental Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment with Respect to Pension and OPEB Claims  (Dkt. #3932)

34. Joint Motion by Assured Guaranty Municipal Corp. and Berkshire Hathaway Assurance Corporation to Amend the Solicitation Procedures Order (Dkt. #3954)

35. Syncora Capital Assurance Inc. Motion to Compel the Debtor to Provide More Specific Descriptions of the Subjects That Each Fact Witness Will Address (Dkt. #4409)

36. Motion by Assured Guaranty Municipal Corp. to Compel Full Clawback of Debtor's Document Production (Dkt. #4560)

37. Syncora Guarantee Inc. Motion to Compel the Production of Documents (Dkt. #4565)

38. Motion for Temporary Allowance of Claim of the Macomb Interceptor Drain Drainage District Pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure for Purposes of Accepting or Rejecting the Plan (Dkt. #5155)

39. Motion by Hyde Park Co-Operative, et al. for Class Certification of Proof of Claims ## 2638, 2651, 2654, 2659, 2676, 2683, 2689 and 2692 (Dkt. #5157)

40. Motion of The City of Detroit for Site Visit by Court in Connection With The Hearing on Confirmation of The City's Plan of Adjustment (Dkt. #5250)

41. Motion For Entry of an Order Approving Claim Objection Procedures (Dkt. #5270)

42. Motion by Assured Guaranty Municipal Corp. for Costs Relating to Clawback of Debtor's Document Production (Dkt. #5326)

43. Motion by Hyde Park Co-Operative, et al. for Class Certification of Proof of Claims ## 2638, 2651, 2654, 2659, 2676, 2683, 2689 and 2692 (Dkt. #5354)

44. Motion by Syncora Guarantee Inc. to View Or, in the Alternative, Unseal Supplemental Order Regarding Mediation Confidentiality (Dkt. #5358)

45. Motion to Compel Full and Fair Responses to Syncora's Interrogatories (Dkt. #5436)

46. City of Detroit's Motion for Entry of a Protective Order Striking Syncora's Demand in Its Rule 30(b)(6) Deposition Notice for the Personal Financial Information of All City Retirees (Dkt. #5442)

47. Motion of Syncora to Enforce the Solicitation Procedures Order (Dkt. #5444)

48. Motion to Assume Lease or Executory Contract of Nonresidential Real Property (Dkt. #5461)

49. Motion of the General Retirement System to Designate and Determine Additional Legal Issue Regarding Methodology for ASF Recoupment From Retirees (Dkt. #5478)

50. Motion of the City of Detroit for an Order (A) Establishing Procedures with Respect to the Proposed Assumption and Rejection of Executory Contracts and Unexpired Leases and (B) Approving Notice (Dkt. #6008)

51. Motion by Michigan Welfare Rights Organization for Permissive Intervention, Etc. (Dkt. #6143)

52. Motion Of The Debtor For A Final Order (A) Approving Postpetition Financing And (B) Granting Liens (Dkt. #6644)

53. Motion by Jamie Fields to Participate in the Confirmation Hearing (Dkt. #6778)

54. Motion by Syncora to Exclude the Testimony of Kenneth A. Buckfire Regarding Creditor Recoveries Upon Dismissal of the Bankruptcy Case (Dkt. #6787)

55. Motion by Michael Joseph Karwoski for Participation in Confirmation Hearing (Dkt. #6811)

56. Financial Guaranty Insurance Company's Motion to Exclude the Opinion of Kenneth Buckfire Regarding Plan Treatment Compared to Treatment Upon Dismissal (Dkt. #6826)

57. Motion by Syncora Guarantee Inc. for Clarification of Post-Confirmation Procedures (Dkt. #6946)

58. Motion in Limine by Syncora Guarantee Inc. Barring the City from Introducing Evidence Regarding the Combined Recoveries of Pension and OPEB Claims (Dkt. #6975)

59. Motion in Limine by Syncora Guarantee Inc. Barring the City and Plan Supporters from Introducing Evidence Regarding the Potential Personal Hardship of Pensioners (Dkt. #6982)

60. Financial Guaranty Insurance Company's Motion to Exclude the Expert Opinion of Michael Plummer Regarding Discount Factors (Dkt. #6983)

61. Financial Guaranty Insurance Company's Motion in Limine to Preclude the Introduction of Evidence or Testimony Regarding Matters Withheld from Discovery on the Basis of the Mediation Order (Dkt. #6985)

62. Financial Guaranty Insurance Company's Motion in Limine to Preclude the Introduction of Evidence or Testimony Regarding Certain Matters Previously Deemed Irrelevant by the Court or the City of Detroit (Dkt. #6990)

63. Motion by Oakland County To Exclude Testimony Of Martha Kopacz Under Fed. R. Evid. 702 In Connection With Certain Of Her Expert Opinions Contained In Her Expert Report (Dkt. #6993)

64. Motion by Syncora Guarantee Inc. and Syncora Capital Assurance Inc.'s Motion to Exclude the Testimony of John W. Hill (Dkt. #6997)

65. Motion by Syncora to Exclude Certain of the Expert Opinions of Martha Kopacz Under Federal Rule of Evidence 702 (Dkt. #6999)

66. Motion by City of Detroit to Exclude Testimony of Victor Wiener (Dkt. #7000)

67. Motion in Limine by City of Detroit to Preclude Its Counsel, Evan Miller, from Being Called as a Trial Witness (Dkt. #7001)

68. Motion in Limine by City of Detroit to Preclude Its Counsel, Heather Lennox, From Being Called as a Trial Witness (Dkt. #7002)

69. Motion by Syncora Guarantee Inc. to Exclude the Testimony of the City's Forecasting Experts Under Federal Rule of Evidence 702 (Dkt. #7004)

70. Motion by General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit to Exclude Portions of Martha Kopacz's Testimony (Dkt. #7061)

71. The Detroit Retirement Systems' Motion in Limine to Preclude Evidence Relating to Alleged Historical Mismanagement/Misconduct (Dkt. #7062)

72. City of Detroit's Motion in Limine to Exclude Deposition Testimony of Gary Evanko and Michael Hall (Dkt. #7848)

73. Motion For Summary Judgment filed by City of Detroit In Further Support Of Its Objection To Macomb Interceptor Drain Drainage Districts Claim No. 3683 (Dkt. #7885)

74. Joint Motion of the City of Detroit, FGIC and COP Holders for a Limited Order Modifying the Mediation Order (Dkt. #7963)

75. Motion of the City of Detroit, Pursuant to Section 105(a) of the Bankruptcy Code, for an Order Confirming that the Automatic Stay Does Not Apply to Disciplinary Proceedings Initiated by the City Against City Officers and Employees (Dkt. #8060)

76. Motion by Michigan Council 25 of the American Federation of State, County & Municipal Employees, AFL-CIO for Abstention and to Remand the Claims Contained in Proof of Claim #2958 (Dkt. #8492)

77. Motion by Coalition of Detroit Unions for Abstention and to Remand the Claims Contained in Proof of Claim #2851 (Dkt. #8493)

In addition to the motions listed, there were over 50 motions for relief from the automatic stay, or to enforce or clarify the automatic stay, approximately 45 objections to claims, and hundreds of random motions and objections filed by pro se creditors.

## 2. Eligibility

The City's eligibility for chapter 9 relief was highly contentious. Over one hundred unrepresented parties filed objections to the City's eligibility. Parties represented by attorneys, both individuals and organizations, filed dozens of briefs in several rounds. The United States Attorney General and the Michigan Attorney General both intervened and actively participated. Between oral argument and presentation of factual proof, the parties litigated the City's eligibility over the course of nine days. The myriad legal and factual issues raised, and the parties who raised them, are as follows:

1. Chapter 9 of the bankruptcy code violates the United States constitution; specifically, the uniformity requirement of the Bankruptcy Clause, the Contracts Clause, and the Tenth Amendment.

   Asserted by:
   - Dkt. #484 Local 324, International Union of Operating Engineers
   - #486 Local 517M, Service Employees International Union
   - #505 Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees
   - #805 Official Committee of Retirees

2. The bankruptcy court does not have the jurisdiction to determine the constitutionality of chapter 9 of the bankruptcy code.

   Asserted by:
   - #484 Local 324, International Union of Operating Engineers
   - #486 Local 517M, Service Employees International Union
   - #505 Michigan Council 25 Of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees
   - #805 Official Committee of Retirees

3. Michigan Public Act 436 of 2012 violates the Michigan constitution and therefore the City was not validly authorized to file this bankruptcy case as required for eligibility by § 109(c)(2). Creditors raising this issue argued that Michigan voters' rejection of Public Act 4 prohibited the legislature from enacting Public Act 436, that the statute is unconstitutional because the legislature included an appropriations provision to evade the voters' right to a referendum, and that the statute violates the Home Rule provisions and the Pension Clause of the Michigan constitution.

15

                 Asserted by:

     #484    Local 324, International Union of Operating Engineers

     #486    Local 517M, Service Employees International Union

     #504    Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman

     #505    Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees

     #506    International Union, United Automobile, Aerospace and Agricultural Implement Workers of America

     #519    General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit

     #520    Retired Detroit Police Members Association

     #805    Official Committee of Retirees

4.  The bankruptcy court does not have the jurisdiction to determine the constitutionality of Michigan Public Act 436 of 2012.

                 Asserted by:

     #384    Krystal Crittendon

     #805    Official Committee of Retirees

5.  Detroit's emergency manager is not an elected official and therefore did not have valid authority to file this bankruptcy case as required for eligibility by § 109(c)(2).

                 Asserted by:

     #384    Krystal Crittendon

     #505    Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees

     #805    Official Committee of Retirees

6.  Because the Governor's authorization to file this bankruptcy case did not prohibit the City from impairing the pension rights of its employees and retirees, the authorization violates the Michigan Constitution and is therefore not valid, as required for eligibility by § 109(c)(2).

                 Asserted by:

     #484    Local 324, International Union of Operating Engineers

     #486    Local 517M, Service Employees International Union

     #495    David Sole

     #502    Retired Detroit Police & Fire Fighters Association, Donald Taylor, the Detroit Retired City Employees Association, and Shirley V. Lightsey

     #504    Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman

16

| #505 | Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees |
| #506 | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America |
| #512 | The Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association, and the Detroit Police Command Officers Association |
| #514 | Center for Community Justice and Advocacy |
| #519 | General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit |
| #520 | Retired Detroit Police Members Association |
| #805 | Official Committee of Retirees |

7. Because of the proceedings and judgment in *Webster v. State of Michigan,* Case No. 13-734-CZ (Ingham County Circuit Court, filed July 3, 2013), the City is precluded by law from claiming that the Governor's authorization to file this bankruptcy case was valid, as required for eligibility by § 109(c)(2).

   Asserted by:
   | #495 | David Sole |
   | #519 | General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit |

8. The City is not "insolvent," as defined in § 101(32)(c), and as required for eligibility by § 109(c)(3).

   Asserted by:
   | #484 | Local 324, International Union of Operating Engineers |
   | #486 | Local 517M, Service Employees International Union |
   | #502 | Retired Detroit Police & Fire Fighters Association, Donald Taylor, the Detroit Retired City Employees Association, and Shirley V. Lightsey |
   | #505 | Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees |
   | #520 | Retired Detroit Police Members Association |

9. The City does not desire "to effect a plan to adjust such debts," as required for eligibility by § 109(c)(4).

   Asserted by:
   | #484 | Local 324, International Union of Operating Engineers |
   | #486 | Local 517M, Service Employees International Union |
   | #504 | Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman |

| | #506 | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America |
| | #520 | Retired Detroit Police Members Association |

10. The City did not negotiate in good faith with creditors, as required (in the alternative) for eligibility by § 109(c)(5)(B).

               Asserted by:

| | #484 | Local 324, International Union of Operating Engineers |
| | #486 | Local 517M, Service Employees International Union |
| | #502 | Retired Detroit Police & Fire Fighters Association, Donald Taylor, the Detroit Retired City Employees Association, and Shirley V. Lightsey |
| | #504 | Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman |
| | #505 | Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees |
| | #506 | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America |
| | #512 | The Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association, and the Detroit Police Command Officers Association |
| | #517 | Michigan Auto Recovery Service |
| | #519 | General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit |
| | #520 | Retired Detroit Police Members Association |
| | #805 | Official Committee of Retirees |

11. The City was not "unable to negotiate with creditors because such negotiation is impracticable," as required (in the alternative) for eligibility by § 109(c)(4)(C).

               Asserted by:

| | #484 | Local 324, International Union of Operating Engineers |
| | #486 | Local 517M, Service Employees International Union |
| | #502 | Retired Detroit Police & Fire Fighters Association, Donald Taylor, the Detroit Retired City Employees Association, and Shirley V. Lightsey |
| | #504 | Robbie Flowers, Michael Wells, Janet Whitson, Mary Washington and Bruce Goldman |
| | #505 | Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees |
| | #506 | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America |

18

      #512    The Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association, and the Detroit Police Command Officers Association

      #519    General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit

      #805    Official Committee of Retirees

12. The City's bankruptcy petition should be dismissed because it was filed in bad faith under § 921(c).

      Asserted by:

      #484    Local 324, International Union of Operating Engineers

      #486    Local 517M, Service Employees International Union

      #505    Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees

      #506    International Union, United Automobile, Aerospace and Agricultural Implement Workers of America

      #512    The Detroit Fire Fighters Association, the Detroit Police Officers Association, the Detroit Police Lieutenants & Sergeants Association, and the Detroit Police Command Officers Association

      #519    General Retirement System of the City of Detroit, Police and Fire Retirement System of the City of Detroit

      #520    Retired Detroit Police Members Association

      #805    Official Committee of Retirees

13. The rights created by the pensions clause of the Michigan constitution should survive bankruptcy under the Supreme Court decision in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 502 (1986), because the pensions clause is an exercise of the right to enact "state or local laws designed to protect public health and safety," which the City cannot disregard.

      Asserted by:

      #1467  Michigan Council 25 of The American Federation of State, County & Municipal Employees, AFL-CIO and Sub-Chapter 98, City of Detroit Retirees

14. Kevyn Orr was not validly appointed because his initial emergency manager contract, under P.A. 72, expired before P.A. 436 took effect.

      Asserted by:

      #1222  Krystal Crittendon

Ultimately, each of these issues was resolved in the City's favor, with the exception of issue number 10, above. Accordingly, on December 5, 2013, the Court held that the City met the requirements to be eligible for relief under chapter 9. *See* Opinion Regarding Eligibility at 1. (Dkt. #1945)

### 3. Adversary Proceedings

The resolution of the City's eligibility was followed by an onslaught of new issues to be litigated and mediated. Many of the motions have already been identified. The following is a list of adversary proceedings filed in the case, the parties involved, the issues considered, and the disposition of each:

1. No. 13-05244, Official Committee of Retirees of Detroit v. City of Detroit, filed 10/22/13.

The Official Committee of Retirees, the Detroit Retired City Employees Association, the Retired Detroit Police and Fire Fighters Association, and AFSCME Sub Chapter 98, City of Detroit Retirees filed this adversary proceeding in response to the City's decision to "unilaterally reduce its funding" of retiree healthcare plans by approximately 80% beginning January 1, 2014. The plaintiffs argued that the City's actions violated the Michigan and United States Constitutions, and they sought, *inter alia*, an injunction requiring the City to maintain the 2013 levels of health care coverage.

The Court granted the plaintiffs' motion for an expedited hearing and discovery schedule on October 23, 2013. Order Setting Expedited Hr'g. (Dkt. #6)

The plaintiffs filed a Notice of Voluntary Dismissal on November 8, 2013 (Dkt. #34), and the case was closed on November 12, 2013.

However, the Committee filed the same claims seeking the same relief against the City again on January 9, 2014, case No. 14-04015. That case was adjourned in February for the parties to resume mediation. They settled, and the Court entered an Order of Dismissal on March 31, 2014. (Dkt. #49)

2. No. 13-05309, National Public Finance Guarantee Corp. v. City of Detroit, filed 11/8/13.

In this highly contentious adversary proceeding, National Public Finance Guarantee Corp. and Assured Guaranty Municipal Corp. sought a declaratory judgment regarding their "rights and interests in," and the City's "obligation with respect to," a specific property tax the City collects for the purpose of repaying certain unlimited tax obligation bonds, which bonds National and Assured insure.

The parties stipulated to a stay of the litigation in September 2014 (Dkt. #85), and the Court entered an order dismissing the case without prejudice on October 6, 2014, after the parties settled. (Dkt. #87)

3. No. 13-05310, Ambac Assurance Corp. v. City of Detroit, filed 11/8/13.

Ambac Assurance Corp. filed an adversary proceeding similar to that of National and Assured. In case no. 13-05310, Ambac sought a declaratory judgment regarding its interest in property tax revenues the City collected for the purpose of repaying certain unlimited, as well as limited, tax obligation bonds which Ambac insured.

The litigation was stayed pursuant to the parties' agreement in September 2014, and the Court entered an order dismissing the case without prejudice on October 6, 2014. (Dkt. #108)

4. No. 13-05395, Syncora Guarantee Inc. v. UBS AG, filed 12/2/13.

This action was filed by Syncora Guarantee, Inc. against Merrill Lynch and UBS AG in July 2013, in New York state court. The suit concerned the parties' respective interests in the City's wagering tax revenues, in which the City had granted a security interest to the defendants in 2009; the City was thus forced to intervene in the action to protect its access to this vital revenue stream. *See* Order Granting Mot. to Intervene at 2. (Dkt. #51) The case was removed to this Court in December 2013, and Syncora filed a Notice of Voluntary Dismissal in February 2014. (Dkt. #54)

5. No. 14-04112, City of Detroit v. Detroit Retirement System Service Corporations, filed 1/31/14.

This adversary proceeding relates to the certificates of participation the City issued in 2005 and 2006 in an attempt to address the underfunding in the City's two retirement systems. The City filed a complaint against the "service corporations" and "funding trusts" (both are entities the City created to facilitate the issuance of the COPs), seeking a declaratory judgment that the contracts between the City and these entities were void *ab initio* and thus unenforceable.

The Court permitted holders and insurers of the COPs to intervene and to file counterclaims, with limitations. *See* Op. and Order Granting Mot. To Intervene at 13 (Dkt. #73); Order Granting FGIC's Mot. to File Counterclaims at 2. (Dkt. #114) After confirming the City's Eighth Amended Plan for the Adjustment of Debts, the Court entered an order dismissing this complex and highly contentious proceeding, concluding that all issues were resolved in the plan. (Dkt. #175)

6. No. 14-04732, Lyda v. City of Detroit, filed 7/21/14.

This highly publicized proceeding concerned the Detroit Water and Sewerage Department's decision in 2014 to terminate water service to large numbers of delinquent

22

residential customers. Ten individuals and four organizations filed suit against the City and the DWSD. The plaintiffs sought an injunction requiring the City to halt the shut-offs, restore service to customers whose service had already been terminated, and directing the City to implement a water affordability plan for low-income customers. They also requested a declaratory judgment that the DWSD's actions violated their constitutional rights.

After a two-day evidentiary hearing, the Court denied the requested injunctive relief, and granted the City's motion to dismiss. The plaintiffs subsequently filed a flurry of motions for reconsideration, which the Court denied. *See* Supp. Op. Clarifying Bench Op. & Denying Mots. for Recons. at 2. (Dkt. #107) The plaintiffs appealed the Court's decision, and the appeal is currently before Judge Friedman at the United States District Court for the Eastern District of Michigan, case no. 15-cv-10038. *See* Notice of Receipt of Appeal. (Dkt. #122)

7. No. 14-5059, Citizens United Against Corrupt Government v. Detroit City Council, filed 10/9/14.

Citizens United Against Corrupt Government originally filed this action against the Detroit City Council in the Wayne County Circuit Court, alleging the City Council violated the Michigan Open Meetings Act, M.C.L. § 15.268 *et seq.* The plaintiff sought an injunction requiring the City Council to publish minutes from certain meetings held September 23-25, 2014, as well as court costs and attorney fees.

On the City's motion, the case was removed to this Court on October 9, 2014. Plaintiff filed emergency motions seeking to have the case remanded back to the state court and/or abstention by this Court. The Court denied both motions. *See* Op. and Order at 1. (Dkt. #25)

Meanwhile, the Council filed a motion for summary judgment, arguing that the meetings were covered by the exemption to the Open Meetings Act for attorney/client privilege, M.C.L.

23

§ 15.268(e), that the matters discussed were exempt from disclosure under the Michigan Freedom of Information Act, and that the matters were covered by this Court's mediation confidentiality order. The Court agreed with the Council, and entered an order granting the Council's motion for summary judgment on December 31, 2014. (Dkt. #24)

The plaintiff subsequently filed a motion for reconsideration and a motion for attorney fees and court costs, both of which the Court denied.

8. No. 14-05086, Alexander v. Detroit Water and Sewerage Department, filed 10/16/14.

William Alexander instituted this action against the DWSD in the 36th District Court in January 2014, seeking damages allegedly arising from a ruptured water pipe, and filing a lien against property of the DWSD. In October 2014, Mr. Alexander, acting pro se, filed several pleadings in the bankruptcy court in an apparent attempt to have this Court hear his claim.

Following a hearing on November 12, 2014, the Court concluded that Mr. Alexander's claims against the DWSD should be dismissed in their entirety and all liens declared void, because in filing the action, Mr. Alexander violated the automatic stay under 11 U.S.C. § 362(a). *See* Order Dismissing Adv. Pro. and Voiding Liens. (Dkt. #20)

## 4. Confirmation

The final stage of the bankruptcy was the hearing on confirmation of the City's plan. The following represented parties objected to confirmation of the plan but subsequently withdrew their objections due to settlements with the City:

- Oakland County (Dkt. ##4627 and 6648);

- The United States (Dkt. #4629);

- Macomb County (Dkt. ##4636, 6666 and 7039);

- U.S. Bank National Association (Dkt. ##4647 and 6679);

- BlackRock Financial Management, Inc., Eaton Vance Management, Fidelity Management & Research Company, Franklin Advisers, Inc. and Nuveen Asset Management (the "DWSD Bondholders") (Dkt. ##4650, 4671 and 6681);

- Hypothekenbank Frankfurt AG, Hypothekenbank Frankfurt International S.A., Erste Europäische Pfandbrief- und Kommunalkreditbank Aktiengesellschaft in Luxemburg S.A., Deutsche Bank AG, London; Dexia Crédit Local, Dexia Holdings, Inc., and FMS Wertmanagement AöR (Dkt. ##4653 and 5979);

- Wilmington Trust, N.A. (Dkt. ##4656, 6678, 7050 and 7603);

- Berkshire Hathaway Assurance Corporation (Dkt. ##4657 and 6680);

- Financial Guaranty Insurance Company ("FGIC") (Dkt. ##4660, 6674 and 7611);

- Wayne County (Dkt. #4663);

- National Public Finance Guarantee Corporation ("NPFG") (Dkt. ##4665 and 6687);

- Merrill Lynch Capital Services, Inc. and UBS AG ("the Swap Counterparties") (Dkt. #4668);

- Assured Guaranty Municipal Corp. (Dkt. ##4674 and 6677);

- Ambac Assurance Corp. (Dkt. #4677);

- Syncora Capital Assurance Inc. and Syncora Guarantee Inc. ("Syncora") (Dkt. ##4679, 6651, 7041 and 7213);

- BlackRock Financial Management, Inc. (Dkt. #4681);

- The Detroit Police Officers Association (Dkt. ##4901 and 4938);

- The Detroit Fire Fighters Association (Dkt. #4918);

- The UAW (Dkt. #6464);

- AFSCME Council 25 (Dkt. ##6466, 6468 and 7063);

- BlueMountain Capital Management, LLC (Dkt. #6506);

- The Detroit Retirement Systems (Dkt. ##6659, 6676, 6762 and 7052);

- FGIC, Dexia Crédit Local and Dexia Holdings, Inc., Panning Capital Management, LP, Monarch Alternative Capital LP, Bronze Gable, L.L.C., Aurelius Capital Management, LP, Stone Lion Capital Partners L.P., BlueMountain Capital Management, LLC, and Deutsche Bank AG, London ("the COPs Holders") (Dkt. ##7046 and 7615); and

- The Macomb Interceptor Drain Drainage District. (Dkt. #7612)

These parties raised numerous issues, including:

1. The plan is inconsistent with the Swap Settlement Agreement.

2. The plan does not specifically exclude from treatment the City's potential liabilities not within the definition of a claim under 11 U.S.C. § 101(5).

3. The classes of creditors are confusing and claimants cannot determine to which class they belong.

4. Objections to the treatment of certain types of claims.

5. Improper third party releases/injunctions/exculpations.

6. Objections arising under § 365(b)(1) and (c).

7. Objections arising under § 942: the debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of this chapter.

8. Settlements in the plan are not reasonable under bankruptcy rule 9019.

9. The plan cannot be confirmed because it does not comply with provisions of chapter 9, and the bankruptcy code generally.

10. The plan cannot be confirmed because it requires the City to take actions that are prohibited by law in violation of § 943(b)(4).

11. The plan cannot be confirmed because it was not proposed in good faith and/or because it proposed by means prohibited by law as required by §1129(a)(3).

12. The plan cannot be confirmed because the City has failed to obtain necessary regulatory or electoral approval relating to certain provisions of the plan and has not made such provisions of the plan conditioned on such approval as required under § 943(b)(6).

13. The plan cannot be confirmed because it is not in the best interest of creditors or feasible under §943(b)(7).

14. The plan cannot be confirmed because it either is not fair and equitable or it discriminates unfairly against unsecured creditors under §1129(b)(1) and (2)(B).

The objecting parties who were represented by attorneys and who maintained their objections included:

- Ben McKenzie, Jr. (Dkt. #3230);

- T&T Management, Inc., HRT Enterprises, and the John W. and Vivian M. Denis Trust (Dkt. #3412);

- Hyde Park Cooperative (Dkt. #3497);

- The Housing Is a Human Rights Coalition (Dkt. #3511);

- Deborah Ryan, Walter Swift, Cristobal Mendoza and Annica Cuppetelli (Dkt. ##4099, 4608 and 5690);

- Dwayne Provience, Richard Mack, and Gerald and Alecia Wilcox (Dkt. ##4224, 4226, 4228, 6764 and 6900);

- David Sole (Dkt. #4318);

- John Cato (Dkt. #4376);

- Carlton Carter, Bobby Jones, Roderick Holley and Richard T. Weatherly (Dkt. #4625);

- Robert Cole (Dkt. ##4930 and 4950);

- The Ochadleus parties (Dkt. ##5788, 5964, 6642, 6671, 6995 and 7523);

- The Section 1983 Plaintiffs (Dkt. #6911); and

- Johnathan Brown.  (Dkt. #8170)

Unrepresented creditors filed 1159 objections to confirmation of the City's plan.  Of these, 836 were timely filed.  After reviewing all of these objections, the Court invited 79 individuals, constituting a cross-section of the objecting parties and their objections, to state and argue their objections at a hearing on July 15, 2014.  At the hearing, 46 of these 79 objectors appeared before the Court.

The Court also invited unrepresented parties to file motions requesting to participate in the confirmation hearing. Parties filed 36 such motions. Upon its review of each motion, the Court allowed seven parties to testify and an additional eight parties to participate in the confirmation trial.

The objections filed by unrepresented parties are summarized below:

1. The ASF recoupment is improper.

2. The plan is not in the best interests of creditors.

3. The plan unfairly discriminates.

4. The plan violates § 1123(a)(4) by providing different treatment among class 11 creditors.

5. The plan is not feasible.

6. The plan violates the funding clause of the Michigan constitution because it does not require the City to make up missed payments to the pension fund if outside funding does not happen.

7. The City did not provide adequate notice of amended plans and disclosure statements, objection deadlines, or voting rights.

8. The due process rights of creditors have been violated by the Court's haste in this entire process.

9. The plan impairs pension holders' claims against the retirement systems.

10. The DWSD and library pensions were fully funded so they should not be impaired.

11. The vote solicitation and balloting procedures were unlawful and unfair.

12. The plan's third-party release provisions are improper.

13. The plan improperly offers a higher recovery to classes 10 and 11 if they vote in favor of the plan.

14. The UTGO settlement violates state law.

15. The plan violates the Blighted Area Rehabilitation Act (Mich. Comp. Laws. §§ 125.71-125.84).

16. The Grand Bargain is an improper use of tobacco settlement money.

17. The plan violates the Federal Transit Act (49 U.S.C. § 5333(b)) with respect to DDOT employees.

18. The pension underfunding is overstated and therefore the pensions are improperly impaired.

19. The use of a 6.75% discount rate in the pension settlement is improper.

## 5. Appeals

There were a number of appeals, both to the district court and the Sixth Circuit. The majority of the appeals were voluntarily dismissed as part of the various settlements between the parties. Some of the appeals were dismissed by the presiding court. The appeals and their dispositions are set forth below.

Appeals to District Court:

1. 13-14305, Syncora v. City of Detroit, filed 10/10/13: Syncora appealed this Court's order finding that the casino revenues are property of the estate and subject to automatic stay. The district court issued a stay, which was vacated by order of the 6th circuit. The district court affirmed this Court's order. Syncora appealed the decision to 6th circuit. The parties filed briefs and oral arguments were held on 7/14/14. The parties stipulated to hold the case in abeyance. A stipulated order of dismissal was entered on 1/14/15.

2. 13-15270, NAACP v. City of Detroit, filed 12/30/13: The NAACP appealed the order denying relief from automatic stay. Briefs were filed. The case was stayed pending outcome of direct appeals to the 6th circuit. NAACP filed notice of appeal of stay order. Appeal filed in 6th circuit (see below).

3. 14-10503, City of Detroit v. Various Town House Cooperatives, filed 2/3/14, closed 3/14/14: City's appeal from order lifting stay to allow class action suit filed by cooperatives to proceed. On stipulation, appeal dismissed with prejudice.

4. 14-10434, AFSCME v. City of Detroit, filed 1/30/14, closed 3/25/14: AFSCME's appeal from Eligibility Order and Order for Relief. City's motion to consolidate 7 of the appeals from eligibility order and order for relief is denied and motion to stay briefing deadline until requests to appeal to 6th circuit are resolved is granted.

5. 14-10435, Police and Fire Retirement System v. City of Detroit, filed 1/30/14, closed 3/25/14: Retirement System's appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

6.  14-10436, Retiree Committee v. City of Detroit, filed 1/30/14, closed 3/25/14: Committee's appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

7.  14-10437, Retired Detroit Police and Firefighters Assoc. v. City of Detroit, filed 1/30/14, closed 3/25/14: Assoc.'s appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

8.  14-10438, Retired Detroit Police Members Assoc. v. City of Detroit, filed 1/30/14, closed 3/25/14: Assoc.'s appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

9.  14-10439, Detroit Fire Fighters Assoc. v. City of Detroit, filed 1/30/14, closed 3/25/14: Assoc.'s appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

10. 14-10440, UAW and Flowers Plaintiffs v. City of Detroit, filed 1/30/14, closed 3/25/14: UAW and Flowers' appeal from Eligibility Order and Order for Relief. Scheduling order entered. Briefing deadline stayed.

11. 14-10441, Williams and Aleem v. City of Detroit, filed 1/30/14: Williams and Aleem's appeal from Eligibility Order and Order for Relief. City filed response that appeal is untimely and should be filed with the 6th circuit. City filed motion to dismiss. Appellants filed reply to City's original response and response to motion to dismiss and motion to strike motion to dismiss. Appellants filed objection to motion to consolidate (which was not filed in this case). Case stayed pending outcome of direct appeals to 6th circuit. Order dismissing case 1/16/15.

12. 14-10501, Syncora v. City of Detroit, filed 2/3/14: Syncora's appeal from order authorizing City to enter into transaction documents with Public Lighting Authority. Scheduling order entered. Syncora filed brief. City filed motion to dismiss for mootness. City filed motion for a status conference and Syncora filed response to motion to dismiss. PLA filed concurrence to motion to dismiss. Appellee brief and appellant reply filed. Case stayed pending outcome of direct appeals to 6th circuit. Syncora's motion to lift stay denied. Syncora filed new motion to lift stay based on 6th Circuit decision in 14-1719 (see below). Response filed. Reply to motion to dismiss filed. Stayed pending confirmation. Stipulated order dismissing case entered 1/14/15.

13. 14-10509, Syncora v. City of Detroit, filed 2/4/14: Syncora's motion to withdraw reference of action now pending as Adversary Proceeding 13-4942 (City's suit against Syncora and Casinos for interference with contractual and advantageous relations). This is Syncora's second motion to withdraw the reference of this matter. First motion withdrawn in 13-14759. Response filed by City. Syncora filed reply brief. Case stayed pending outcome of direct appeals to 6th circuit. Dismissed by stipulation 1/20/15.

14. 14-10630, Gov. Snyder v. AFSCME et al, filed 2/11/14: Gov. Snyder's appeal from order denying NAACP relief from stay and granting Phillips relief from stay. Appellant brief filed. Appellants filed motion to stay bankruptcy order pending this appeal and appellee filed response. Appellee brief filed. Request for oral arguments filed. Case stayed pending outcome of direct appeals to 6th circuit. Appellant filed motion for certification for interlocutory appeal regarding stay and response filed. Dismissed by stipulation 1/9/15.

15. 14-10637, City of Detroit v. Phillips, AFSCME et al, filed 2/11/14: City's appeal from order denying NAACP relief from stay and granting Phillips relief from stay. Appellant brief filed; appellee brief filed. Request for oral arguments filed. Case stayed pending outcome of direct appeals to 6th circuit. Court denied City's motion to reconsider stay order. Dismissed by stipulation 1/16/15.

16. 14-11542, Jeffrey Sanders v. City of Detroit, filed 4/16/14, closed 5/16/14: Appeal from order denying "Motion for Incumbent Judgment and Relief." Case dismissed.

17. 14-11782, Jeffrey Sanders v. City of Detroit, filed 5/5/2014, closed 6/30/14: Appeal from order denying application to proceed in district court without prepaying fees. Case dismissed.

18. 14-11995, Syncora v. City of Detroit, filed 5/19/14, closed 9/17/14: Appeal from order approving post-petition financing. Case stayed pending outcome of direct appeals to 6th circuit. Syncora filed motion for certification of direct appeal to 6th circuit. Syncora's motion to lift stay denied. Syncora filed new motion to lift stay based on 6th Circuit decision in 14-1719 (see below). Response filed. City's motion to dismiss granted, motion for direct appeal denied as moot.

19. 14-11997, EEPK et al v. City of Detroit, filed 5/20/14: Appeal from order approving post-petition financing. Case stayed pending outcome of direct appeals to 6th circuit. Order dismissing case 1/27/15

20. 14-12062, Syncora v. City of Detroit, filed 5/22/14: Appeal from order approving settlement with Swap Counterparties. Syncora filed motion for certification of direct appeal to 6th circuit. Case stayed pending outcome of direct appeals of eligibility to 6th circuit. Syncora filed new motion to lift stay based on 6th Circuit decision in 14-1719. Swap Counterparties permitted to intervene. Court granted motions to lift stay and certify direct appeal. Dismissed by stipulation 1/14/15.

21. 14-12163, COPs Holders v. City of Detroit, filed 6/2/14: Appeal from order approving settlement with Swap Counterparties. Case stayed pending outcome of direct appeals of eligibility to 6th circuit. Swap Counterparties permitted to intervene. Dismissed by stipulated order 1/27/15.

22. 14-13044, Syncora v. City of Detroit, filed 8/6/14: Syncora's appeal from order denying motion to unseal mediation order. Case dismissed for failure to file briefs. Syncora filed

motion to reconsider order of dismissal. Motion granted, case reinstated and briefs filed. Stayed pending confirmation. Stipulation of dismissal filed 1/9/15.

23. 14-13118, Albert O'Rourke v. City of Detroit, filed 8/13/14, closed 9/24/14: Appeal from denial of Mr. O'Rourke's proof of claim. Case dismissed and closed 9/24/14. O'Rourke has filed an appeal to the 6th Circuit (Case #14-2329)

24. 14-13471, City of Detroit v. Allen Park Retirees Assoc., filed 9/8/14: Appeal from order granting relief from stay regarding Allen Park emergency manager lawsuit. Briefs filed. Dismissed by stipulated order 1/14/15.

25. 14-13562, City of Detroit v. Allen Park Retiree Assoc., filed 9/15/14: Appeal from order lifting stay regarding Allen Park emergency manager lawsuit. This case was consolidated with 14-13471 and closed on 9/29/14.

26. 14-14020, Gloria Jones v. City of Detroit, filed 10/20/14: Appeal from order denying Ms. Jones participation in confirmation hearing. Order dismissing appeal as frivolous 11/20/14.

27. 14-14346, City of Detroit v. AFSCME, filed 11/12/14: Appeal from order lifting stay regarding Flint emergency manager lawsuit. Voluntarily dismissed by order 12/18/14.

28. 14-14548, AFSCME v. City of Detroit, filed 12/2/14: Appeal from order regarding City's objection to proof of claim #2958. Currently pending.

29. 14-14651, Deborah Taitt v. City of Detroit, filed 12/9/14: Appeal of order denying motion for reconsideration. Order dismissing appeal entered 1/8/15 for failure to pay filing fee.

30. 14-14706, Greenhill & Co. v. City of Detroit, filed 12/12/14: Appeal from opinion and order determining that fees of retirement systems' professionals are subject to § 943(b)(3). Currently pending. Briefs due in March.

31. 14-14872, William Ochadleus, et al. v. City of Detroit, filed 12/23/14: Appeal from order confirming plan. Currently pending.

32. 14-14899, John Quinn v. City of Detroit, filed 12/29/14, appeal of order confirming plan. Currently pending.

33. 14-14910, Thomas Cipollone v. City of Detroit, filed 12/29/14: Appeal of order confirming plan. Currently pending.

34. 14-14917, Dennis Taubitz and Irma Industrious v. City of Detroit, filed 12/30/14: Appeal of order confirming plan. Currently pending.

35. 14-14919, Jonathan Aaron Brown v. City of Detroit, filed 12/30/14: Appeal of order confirming plan. Currently pending.

36. 14-14920, William Davis v. City of Detroit, filed 12/30/14: Appeal of order confirming plan. Currently pending.

37. 14-14923, Cornell E. Squires v. City of Detroit, filed 12/30/14: Appeal of order confirming plan. Order of dismissal entered 1/30/15 due to appellant's failure to designate the record and file statement of issues.

38. 15-10036, Lucinda Darrah v. City of Detroit, filed 1/7/15: Appeal of order confirming plan. Currently pending.

39. 15-10038, Lyda v. City of Detroit, filed 1/7/15: Appeal of this Court's dismissal of AP #14-04732, which involved the DWSD's termination of water services to delinquent customers. Briefs have been filed. Currently pending.

In addition, on September 11, 2013, the Official Committee of Retirees, filed a motion to withdraw the reference of its eligibility objection. (13-13873) The City filed a response. The matter was dismissed by stipulation 12/18/14.


Appeals to the Sixth Circuit:

1. 14-1208 and 14-1209, 14-1211 through 14-1215, Police and Fire Retirement System et al v. City, filed 12/26/13: Consolidated direct appeals of eligibility. Amicus briefs filed by multiple parties, mostly retirement associations from other states. Appellee briefs filed by City, State, Attorney General, and the United States. On request of the parties, cases held in abeyance without date. Case No. 14-1209 dismissed by stipulated order on 12/12/14; Case Nos. 14-1208, 14-1211 through 14-1215 dismissed by stipulated order 1/09/14.

2. 14-0106, In re: Carl Williams, filed 2/19/14: Williams and Aleem filed petition for leave to appeal from Eligibility Order and Order for Relief. City filed objection to petition for leave to appeal. Petition denied. Appellants filed petition for rehearing before original panel. Request denied 6/26/14. No further action to be taken by 6th Circuit.

3. 14-1560, NAACP v. City of Detroit, filed 5/5/14: NAACP's appeal relating to 13-15270 pending in district court (appeal from order denying relief from automatic stay). City's motion to dismiss for lack of jurisdiction granted 7/24/14.

4. 14-1652, Jeffrey Sanders v. City of Detroit, filed 5/23/14: Sanders filed appeal relating to 14-11542 (dismissal of appeal of bankruptcy order denying "Motion for Incumbent Judgment and Relief"). Case dismissed for lack of prosecution 7/29/14.

5. 14-1719, Syncora v. City of Detroit, filed 6/10/14: Syncora filed petition for writ of mandamus relating to 13-14305 pending in district court (appeal from order that casino revenues are part of the bankruptcy estate). City filed a response. Syncora filed a reply.

Petition granted; District Court ordered to adjudicate appeal by 7/14/14. Case No. 13-14305 dismissed on 1/14/15 (see above).

6. 14-1864, Syncora v. City of Detroit, filed 7/14/14: Syncora filed appeal of decision in 13-14305. Expedited briefing schedule set: briefs filed. Oral arguments held 7/30/14. Case held in abeyance. Stipulated order of dismissal 1/14/15.

7. 14-0109, In re: Syncora, filed 7/24/14: Syncora filed petition for direct appeal of order approving settlement with Swap counterparties. (Certification for direct appeal granted in district court case 14-12062.) Dismissed by stipulated order 1/14/15.

8. 14-2327, Syncora v. City of Detroit, filed 10/14/14: Syncora filed appeal of order approving post-petition financing. Case held in abeyance pending confirmation. Case dismissed by stipulation 1/13/15.

9. 14-112, In re: Carl Williams, filed 12/30/2014: Williams filed a petition for direct appeal of the Court's eligibility determination.

### 6. Mediation

In its Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing (Dkt. #8993), the Court described that at the same time that many City-paid professionals litigated and testified in court regarding these motions, objections to eligibility, adversary proceedings and objections to confirmation (not to mention appeals), "another process that was fundamental to the City's plan and its revitalization was unfolding." *Id.* at 15. That process was the hugely complex mediation among the City's elected leadership, the office of the emergency manager, and the City's many creditors, unions and other stakeholders.

The mediation process began on August 18, 2013, exactly one month after the City filed its petition for relief, with the appointment of Chief United States District Judge Gerald Rosen. *See* Mediation Order. (Dkt. #322) Chief Judge Rosen then appointed a team of mediators—District Judge Victoria Roberts, District Judge Sean Cox, District Judge Wiley Daniel, Bankruptcy Judge Elizabeth Perris, and attorney Eugene Driker—to assist in the mediations. *See*

Detroit Chapter 9 Mediation Team Announced at 2. (Dkt. #542) The mediations covered eight different major topics (and countless sub-topics), as reflected in the Court's various orders referring matters to facilitative mediation:

1. The treatment of claims of the various creditor classes and negotiation/re-negotiation of several city collective bargaining agreements (Dkt. #333);

2. The unwinding of the interest rate Swap agreements related to the 2005-06 certificates of participation and the resulting encumbrance of the City's casino tax revenue (Dkt. #562);

3. Labor-related issues (Dkt. #1101);

4. Limited tax obligation bond matters (Dkt. #2344);

5. Unlimited tax obligation bond matters (Dkt. #2345);

6. Matters related to bonds issued by the Detroit Water and Sewerage Department (Dkt. #2346);

7. Matters related specifically to the 2005-2006 certificates of participation (Dkt. #5612);

8. The formation of the Great Lakes Water Authority (Dkt. #8468).

The Court has little insight into the mediation sessions because they were confidential. Nevertheless, the Court did observe the effort required by many of the City-paid professionals as reflected in the number of parties ordered by Chief Judge Rosen to participate in the mediation and the numerous orders to continue mediation sessions. For example, the City, the retirement systems, and the retiree committee, all of whose professional fees and expenses are all subject to § 943(b)(3), were directed to appear for mediation sessions related to the first mediation order, along with at least eleven other parties on at least four different days. *See* Orders to Appear for Mediation. (Dkt. ##334, 527, 704, 738, 1291) In many of these instances, they were required to appear with counsel and with party representatives possessing the authority to settle claims.

In the second mediation, the City and the retirement systems were ordered to appear and mediate with approximately sixteen different parties on three different days, including December

35

23 and 24, 2013. *See* Orders to Appear for Mediation. (Dkt. ##593, 2262) In the third mediation, which began in October 2013, the City was ordered to mediate labor issues with over twenty different unions. *See* Third Order Referring Matters to Facilitative Mediation at 1. (Dkt. #1101) The City was also ordered to continue mediation specifically with the Detroit Fire Fighters Association again in the summer of 2014, and with AFSCME Council 25 in late September/early October. *See* Order to Appear for Continued Mediation (Dkt. #5920); Orders re: Facilitative Mediation. (Dkt. ##7663, 7876)

The remaining mediation sessions appear to be of similar size and scope. Indeed, between mediation over DWSD bonds and the formation of the Great Lakes Water Authority, the City was ordered to mediate with at least twenty parties over the course of eight different sessions between January and October 2014 on DWSD-related issues alone. *See* Orders re: Mediation. (Dkt. ##2346, 4156, 4206, 4207, 5452, 6068, 6131, 6484, 7732, 8468)

However, the best evidence of the immense effort that the City-paid professionals put into mediation is the fact that the City's confirmed plan is entirely consensual by those parties that participated in mediation. The Court approved three settlements with major creditor groups during the course of the proceedings, resulting in the withdrawal of these creditors' plan objections. In confirming the City's plan, the Court approved an additional ten settlements with major creditor groups. The City also executed a framework and memorandum of understanding with Wayne, Macomb, and Oakland Counties for the formation of the Great Lakes Water Authority, which resulted in those parties withdrawing their objections to the City's plan.

In addition, with the assistance of mediation, the City negotiated collective bargaining agreements with its multiple unions.

Finally, the City mediated the resolution of the claims of a number of potential judgment creditors. *See, e.g.,* Alternative Dispute Resolution Notices, each designating multiple claims for facilitative mediation. (Dkt. ##5674, 5676, 5677, 5678, 5679, 5680, 5681, 5683, 5684, 5686, 5687, 6123, 6124, 6125, 6126, 6164, 6165, 6181, 6187, 6224, 6347, 6685, 8430)

Even after the parties reached settlements in mediation, the professionals and their advisors had to participate in negotiating, drafting and executing the agreements that memorialized and implemented the many settlements. Many of these are reflected as exhibits to the plan, including:

1. The Principal Terms of the 36th District Court Settlement, plan exhibit I.A.9;

2. the Retiree Health Care Settlement Agreement, which dealt with retiree health care coverage through the pendency of the bankruptcy and settled the related adversary proceedings, plan exhibit I.A.298;

3. the Detroit General Retirement System VEBA Trust Agreement, which deals with the healthcare and other post-employment benefit claims for general retirees post-bankruptcy, plan exhibit I.A.108;

4. the Detroit Police and Fire VEBA Trust Agreement, which deals with the same post-employment benefits, but for uniformed retirees, plan exhibit I.A.112;

5. the Omnibus Transaction Agreement by and among the City of Detroit, the Detroit Institute of Arts, and Foundation for Detroit's Future, which is one component of the Grand Bargain, and which itself encompasses the Settlement, Conveyance and Charitable Trust Agreement between the City and the DIA, the Foundation FDF Agreement, the DIA Direct Funder FDF Agreement, and the DIA FDF Agreement. Each of these components is also made up of several different agreements, all of which are reflected in plan exhibit I.A.127;

6. the State Contribution Agreement, which is another component of the Grand Bargain, plan exhibit I.A.332;

7. the Restoration Trust Agreement, which relates to the restoration of pension benefits in the event of a certain DWSD transaction, plan exhibit I.A.292;

8. the PFRS Pension Restoration Agreement, which relates to the restoration of pension benefits depending on the performance of investments in the police and fire retirement system, plan exhibit II.B.3.q.ii.C;

9. the GRS Pension Restoration Agreement, which is similar to the PFRS Pension Restoration Agreement, except for general retirees, plan exhibit II.B.3.r.ii.C;

10. the UTGO Settlement Agreement, plan exhibit I.A.360;

11. the LTGO Settlement Agreement, plan exhibit I.A.237;

12. the Syncora COP settlement agreement documents, including the Settlement Agreement, the Tunnel Lease Amendment, and the Option Agreement, which relates to the Grand Circus Garage, plan exhibit I.A.344;

13. the Syncora Development Agreement/Option to Purchase and Develop Land by and between the City of Detroit and Pike Pointe Holdings, LLC, plan exhibit I.A.340;

14. the FGIC/COP claim settlement agreement, plan exhibit I.A.197;

15. the FGIC Development Agreement/Option to Acquire and Development Land by and among the City of Detroit, the State of Michigan, and Financial Guaranty Insurance Company, plan exhibit I.A.198;

16. documents related to the DWSD bond settlement, including the Water Bond Purchase Agreement, Sewer Bond Purchase Agreement, Water MFA Purchase Agreement, Sewer MFA Purchase Agreement, Water Bond Purchase Agreement (Direct Placement), Sewer Bond Purchase Agreement (Direct Placement), the Assured Insurance Commitment, the 2014 DWSD Refunding Bonds Insurance Policies, the 2014 DWSD Refunding Bonds Surety Policies, and the National insurance commitment, which were not filed as exhibits to the plan, but which are available in the Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing, (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections, entered on August 25, 2014. (Dkt. #7028)

In addition, many City-paid professionals were required to participate in negotiating, drafting and executing documents related to the sourcing and execution of the exit financing (plan exhibit I.A.183); the issuance of new notes under the plan, including New B Notes (plan

exhibits I.A.246, I.A.247) and New C Notes (plan exhibits I.A.248, I.A.249); and establishing the new pension plans for active city employees (plan exhibits I.A.250.a & .b, I.A.254.a & .b). The City and the DWSD, together, executed approximately 47 new, modified, or supplemental collective bargaining agreements with the City's unions between the time the City's petition was filed and the effective date of the plan. *See* Schedule of Postpetition Collective Bargaining Agreements, plan exhibit II.D.5. (Dkt. #8045)

## B. The Results for the City

The City filed ten plans of adjustment. Most of the amended plans were the result of successive creditor settlements and agreements.

The City filed its first plan and disclosure statement on February 21, 2014 (Dkt. ##2708 and 2709), ahead of the March 1, 2014, deadline that this Court first set.

On March 31, 2014, the City filed an amended plan and disclosure statement. (Dkt. ##3380 and 3382) This plan incorporated the Court-approved Swap settlement agreement and the initial stages of the Grand Bargain.

On April 16, 2014, the City filed its second amended plan and disclosure statement. (Dkt. ##4140 and 4141) It clarified and expanded on aspects of the Grand Bargain and added the settlements relating to the restoration of benefits, the ASF recoupment and the income stabilization program. It also clarified and expanded on aspects of the OPEB settlement, incorporated the UTGO settlement, and introduced the concept of post-effective date oversight for the City.

On April 25, 2014, the City filed its third amended plan and disclosure statement. (Dkt. ##4271 and 4272) This plan incorporated the parties' agreements that clarified and expanded

39

upon the provisions for restoration of PFRS pension benefits and other aspects of the Grand Bargain and the OPEB settlement. It also clarified the treatment of claims relating to the operation of City vehicles, tax refund claims, utility deposits and pass-through claims.

On May 5, 2014, the City filed its fourth amended plan and disclosure statement. (Dkt. ##4391 and 4392) The Court approved that disclosure statement. (Dkt. #4401) The City served solicitation packages, including this plan and disclosure statement, and plan ballots. (Dkt. ##4421 and 6179) It also published notice of the plan and the disclosure statement in the Detroit News, the Detroit Free Press, USA Today and the Wall Street Journal. (Dkt. ##6209, 6211 and 6253) This amended plan incorporated the final aspects of the Grand Bargain, including final agreements relating to restoration of pension benefits and pension plan governance, as well as the OPEB settlement.

On July 25, 2014, the City filed a fifth amended plan. (Dkt. #6257) This plan incorporated the LTGO settlement and the 36th District Court settlement. It also added the cash payment option for the ASF recoupment settlement, and specified the composition of the two Voluntary Employee Benefit Association ("VEBA") boards created as part of the OPEB settlement. Clarifications and changes were also made to the Grand Bargain and the UTGO settlement.

On July 29, 2014, the City filed a corrected fifth amended plan. (Dkt. #6379) This plan removed the provisions for post-confirmation reporting to the bankruptcy court that were apparently included in the fifth amended plan by mistake.

On August 20, 2014, the City filed its sixth amended plan. (Dkt. #6908) This plan incorporated the DWSD bondholders' settlement.

On September 16, 2014, the City filed its seventh amended plan. (Dkt. #7502) This plan incorporated the Syncora global settlement and set forth the treatment of COPs claims in class 9. It also incorporated agreements with the retiree committee and the LTGO parties regarding the residual interests in the COP claims reserve. It also reflected the closing and completion of the DWSD bond tender offer and further specified how the two VEBA boards would be comprised. It also provided for the prepayment to creditors in classes 7, 12 and 14 of the October 2015 interest payment on the Excess New B Notes.

On October 22, 2014, the City filed its eighth and last amended plan. (Dkt. #8045) This final plan reflects the City's settlement with FGIC, its last objecting financial creditor. It also reflects the settlement with the UAW and AFSCME regarding the treatment of retirees of the Detroit Public Library and the Detroit Regional Convention Facility Authority. This plan represents a complete restructuring of the City's debt. The City settled with every major creditor group.

Because of the plan, the City eliminated approximately $7 billion in liabilities. Trial Tr. 70:4-7, Sept. 30, 2014. (Dkt. #7821)

Upon exiting bankruptcy, the City proposed to issue "New B Notes" in the aggregate face amount of $632 million and "New C Notes" in the aggregate face amount of $88 million. These new notes will be used to restructure the City's obligations for post-retirement health benefits, debt service on several types of bonds and other unsecured liabilities. Ex. 791. The City also restructured its unlimited tax general obligation bonds at a significant savings and proposed the use of exit financing to retire many of its limited tax general obligation bonds. Ex. 791. In addition, the settlements with FGIC, the City's largest creditor, and Syncora include real estate development agreements that give these creditors vested stakes in the City's recovery.

41

The plan also contemplates post-bankruptcy financial oversight of the City to ensure that the fiscal exigencies that resulted in the City's chapter 9 bankruptcy never happen again. The state legislation that implemented the Grand Bargain created a financial review commission to review the City's finances and budgets to ensure that the City adheres to the plan and continues to implement needed financial and operational reforms. Mich. Comp. Laws § 141.1631 *et seq*.

The GRS and PFRS are also required to create investment committees whose role will be to make recommendations to, and approve certain actions by, the respective system's board of trustees. Mich. Comp. Laws § 38.1133g; Eighth Am. Plan of Adjustment (hereafter cited as "Plan"), Ex. I.A.332 at 2. (Dkt. #8045)

Finally, because of the financial reforms contained in the plan, the City is able to invest approximately $1.7 billion in several reinvestment and restructuring initiatives ("RRIs") over ten years to help improve the City government's infrastructure and its provision of services. Ex. 579. These RRIs are designed to "substantially improve and provide adequate levels of services, as well as enhance revenue and reduce costs." Trial Tr. 42:11-12, Sept. 5, 2014. (Dkt. #7434) The City believes these RRIs will also result in approximately $841 million in revenue savings and that they are critical to the City's recovery after bankruptcy. Ex. 592; *see also* Fourth Am. Disclosure Statement (hereafter cited as "Disc. Stmt.") at 160. (Dkt. #4391) The RRIs will, among other things:

> (a) Provide basic, essential services to City residents; (b) attract new residents and businesses to foster growth and redevelopment; (c) reduce crime; (d) demolish blighted and dangerous properties; (e) provide functional streetlights that are aligned with the current population footprint; (f) improve information technology systems, thereby increasing efficiency and decreasing costs; and (g) otherwise set the City on a path toward a better future.

Disc. Stmt. at 10. (Dkt. #4391)

## C. The Fee Review Process

On August 19, 2013, the Court entered an order appointing Robert Fishman as the fee examiner for this case (the "Fee Examiner Order"). (Dkt. #383) Under that order, Mr. Fishman was required "to assure the Court, the City, the creditors, and the public that the City's Professional Fee Expenses are fully disclosed and are reasonable, as required by § 943(b)(3)." *Id.*, ¶ 3 at 1. "Professional Fee Expenses" are defined to include "professional compensation and reimbursement of expense obligations . . . that the City incurs in connection with this case whether payable to professionals employed by the City or by others." *Id.*, ¶ 2 at 1.

The Fee Examiner Order was followed by an order on September 11, 2013, which established the fee review process (the "Fee Review Order"). (Dkt. #810) Under the Fee Review Order, certain professionals[6] were required to submit detailed monthly fee statements to Mr. Fishman and his staff. Mr. Fishman then responded to the professionals with a preliminary

---

[6] The Fee Review Order required the City and the Retiree Committee to submit "a list of all professionals who have been retained to render services in connection with the Case and who seek payment of compensation and expenses from the City for post-petition services, excluding ordinary course professionals hired by the City not in conjunction with the Case, but rather in the same contexts and capacities as such professionals were typically hired prior to the commencement of the Case." *Id.*, ¶ 1 at 2. (Dkt. #810)

The City identified: 1) Conway MacKenzie, Inc., 2) Dykema Gossett, PLLC, 3) Ernst & Young PLLC, 4) Jones Day, 5) Foley & Lardner LLP, 6) Kilpatrick & Associates, PC, 7) Kurtzman Carson Consultants LLC, 8) Miller Buckfire & Co. LLC, 9) Miller, Canfield, Paddock & Stone, P.L.C., 10) Milliman, Inc., 11) Ottenwess, Allman & Taweel, PLLC, and 12) Pepper Hamilton LLP; and the Retiree Committee identified: 1) Dentons US LLP, 2) Brooks Wilkins Sharkey & Turco PLLC, 3) Lazard Freres & Co. LLC, and 4) Segal Consulting. *See* Fee Examiner's Quarterly Report, ¶ 2 at 2. (Dkt. #2642)

As discussed earlier in this opinion, the Court subsequently held that § 943(b)(3)'s review mandate extends to the fees paid in connection with the City's bankruptcy case to US Bank in its capacity as trustee for certain DWSD bonds, and professionals retained by the City's two retirement systems. The Court notes here that these are not all of the professionals subject to the Court's § 943(b)(3) review; rather, these are the only professionals subject to the fee examiner process.

report regarding whether he found the fees and expenses reasonable. If he identified any issues, the professional had the opportunity to meet and confer with Mr. Fishman in an effort to resolve these issues. Examples of the issues Mr. Fishman identified, and which the professionals subject to his review subsequently addressed, include insufficient detail in invoices, use of senior level professionals for certain kinds of tasks, whether certain tasks were necessary or beneficial, and the lumping together of substantively different kinds of tasks which made meaningful review more difficult. *See, e.g.*, Fee Examiner's Final Monthly Report at 4-7, Ex. Group 1, Part 1, *in* Fee Examiner's First Quarterly Report. (Dkt. #2642) This process resulted in substantial reductions in fees and expenses each month.

Thereafter, the fee examiner filed quarterly reports, and sometimes supplemental reports, on the Court's docket, disclosing the fees and stating his opinion regarding whether the fees were reasonable. (Dkt. ## 2642, 3457, 4498, 6528, 7332, 7574, 7575, 8186) These reports were also posted on the Emergency Manager's website.

If Mr. Fishman identified any fees in his quarterly reports that he did not find were reasonable, he did not have the authority to order the professional to reduce the fees; rather, he could simply report his findings, and the affected professional would then have had the opportunity to challenge Mr. Fishman's findings before the Court. Thankfully, this procedure was never deployed.

Mr. Fishman was excused from filing his final report, in light of the fact that the City and the professionals subject to the fee examiner process engaged in voluntary mediation for final fee reductions in early December 2014. *See* Order Further Modifying Fee Review Order, ¶1 at 1. (Dkt. #8957)

## D. The Professionals' Voluntary Fee Reductions

Most of the professionals involved in this case agreed to fee concessions, both in connection with their initial retention and with the fee mediation. From the comments filed, the Court is able to ascertain the information set forth below.

Jones Day's fees for the period from the petition date (July 18, 2013) through the effective date of the plan (December 10, 2014) total $53.7 million. This reflects a reduction of approximately $17.7 million. This reduction is comprised of 1) a 10% reduction in all fees agreed to by Jones Day as part of its original engagement; 2) voluntary reductions by Jones Day in reviewing its invoices and in response to comments of the City and the Court-appointed fee examiner; 3) a reduction of 50% of non-working travel time, per the Court's fee review order; 4) reductions for rate increases that Jones Day was otherwise authorized to charge; and 5) reductions agreed upon as part of the Court-ordered fee mediation.

Miller Buckfire was initially retained by the City in December 2012 to provide advice on the restructuring of debts. The fee was to be $1.8 million, paid over 12 months. After it was determined that the City's financial situation was dire, the City and Miller Buckfire amended their agreement leading to prospective fees of $31.6 million. This reflected a significant reduction from Miller Buckfire's $37 million proposal. In June 2014, the City and Miller Buckfire entered into another amendment to their agreement which had the effect of reducing Miller Buckfire's prospective fees to $29.1 million, while increasing the work it was doing for the City to include a restructuring of the DWSD funded debt and the arrangement of exit financing. The fee mediation in December 2014 led to a further reduction in Miller Buckfire's prospective fees to $22 million.

Pepper Hamilton agreed to a 10% reduction of its 2013 rates when it was retained. In January 2014, Pepper Hamilton's rates for all other clients rose by 10%, but remained the same for the City of Detroit. Pepper Hamilton agreed to further fee reductions following the fee mediation.

Lazard was retained by the Official Committee of Retirees as its financial advisor. Lazard's initial agreement with the committee contemplated a monthly fee of $175,000 plus a transaction fee of $6 million, to be paid upon settlement of the committee's various claims and consummation of the chapter 9 case. Lazard voluntarily waived it monthly fees for November and December of 2014. Additionally, following mediation, Lazard agreed to reduce its total fees from $8.44 million to $5.56 million.

Dentons was retained as counsel for the Official Committee of Retirees. For its services, Dentons was paid $15.4 million in fees and expenses. This amount represents a voluntary reduction in actual fees and expenses of $3.8 million, as well as additional reductions following mediation.

Clark Hill was retained as counsel for the retirement systems. From the outset, Clark Hill agreed to provide a 15% discount on all its fees.

Greenhill was retained by the retirement systems as its financial advisor. Its initial agreement with the retirement systems contemplated a monthly fee of $150,000 plus a transaction fee of $3.55 million upon confirmation of the City's plan. The retirements systems also agreed to reimburse Greenhill for reasonable expenses. Pursuant to its fee agreement, Greenhill would have invoiced the retirement systems for $6,262,500 plus expenses of $199,928. Following mediation, Greenhill agreed to reduce its fees by $750,000.

## V. Conclusion

In its oral opinion confirming the plan on November 7, 2014, the Court stated:

> Profound thanks to the attorneys and other professionals in the case. You conducted yourselves with the highest degree of civility, respect, and professionalism, both to each other and to the Court. At the same time, you demonstrated zealous advocacy as well as loyalty to your oaths and to your clients. Your work in this case is a model of the public service role that lawyers and the legal profession perform in our society. It has made me proud to be a part of the judicial process and of the legal profession and each of you should share in that pride.

Trial Tr. 63:7-17, Nov. 7, 2014. (Dkt. #8257)

In its eligibility opinion near the beginning of the case, the Court made detailed and, frankly, depressing findings about the City's fiscal and service delivery insolvency. Those findings reflected the awesome challenges that the professionals in the case faced, embraced, met and overcame. They understood from the beginning the profound personal stake that each of the 700,000 residents of the City of Detroit had in the outcome of their work.

It is perhaps too easy now to fast-forward through the play-back that is necessary to comprehend the magnitude of the accomplishments of the professionals in this case. But now is the time to appreciate and credit that accomplishment and all of the effort and skill of those professionals in achieving it. The City is now on a path to success precisely because of the expertise, skill, commitment, endurance, personal sacrifice, civility and proficiency of all of the professionals in the case, including most certainly those whose fees are subject to review in this opinion.

In utter contrast to the community sense when the case was filed, the residents of the City as well as its community and political leaders now justly feel and express a strong and genuine

sense of enthusiasm, optimism and confidence about the City's future. They should also feel and express a strong and genuine sense of appreciation for these professionals and their service.

The Court, and for that matter the City itself, must acknowledge that the City's own professionals bore the burden of the many challenges in this case. It is therefore proper now to recognize in particular the contribution of the City's advisors, Ernst & Young, Conway MacKenzie, and Miller Buckfire. It is also proper now to specially recognize the singular and extraordinary contribution of the City's attorneys, Jones Day.

The fees of the professionals in the case are reasonable, as required by 11 U.S.C. § 943(b)(3).

For Publication

.

**Signed on February 12, 2015**

                        **/s/ Steven Rhodes**
                     **Steven Rhodes**
                     **United States Bankruptcy Judge**