# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:                                                Chapter 9

CITY OF DETROIT, MICHIGAN                             Case No. 13-53846

        Debtor.                                Hon. Thomas J. Tucker

_____/

## STATE OF MICHIGAN'S RESPONSE TO STATUS REPORT ON THE IMPLEMENTATION OF THE PLAN FILED BY THE GENERAL RETIREMENT SYSTEM FOR THE CITY OF DETROIT

The State of Michigan (the "State"), in response to the *Status Report on the Implementation of the Plan filed by the General Retirement System for the City of Detroit*, states as follows:

1. On February 26, 2015, the General Retirement System for the City of Detroit (the "GRS") filed its *Status Report on Implementation of the Plan* [Dkt. No. 9307] to comment on three discrete issues relating to Plan implementation. All three issues relate to the treatment of the Annuity Savings Fund ("ASF") recoupment payments under the Plan[1].

---

[1] Capitalized terms used but not defined in this pleading have the same meanings as in the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (October 22, 2014)[Dkt. NO. 8045] (the "Plan"), which was confirmed by the *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* [Dkt. No. 8272](the "Confirmation Order").

2. The State has no comment with respect to the first two issues raised by GRS.

3. With respect to the third issue, GRS requests that "the State, the City and the Court address whether the Income Stabilization Fund Program (the "ISF Program") contemplates that Income Stabilization Benefits will be paid to Eligible Pensioners in order to restore Eligible Pensioners' monthly pension benefits reduced specifically on account of ASF Recoupment."

4. The State files this response to inform the Court on its position on this issue. First and foremost, the State Contribution Agreement provides that "the amounts of Income Stabilization Payments payable to Eligible Pensioners shall be made by the State in its sole discretion." *See* State Contribution Agreement, Paragraph 3(h).

5. The State further contends that Income Stabilization Benefits were never intended to restore ASF Recoupment payments. To do so now would (a) require an interpretation of the State Contribution Agreement that was not intended by the parties, (b) perpetuate the issues and concerns raised about the legality of the ASF program, notably the diversion of assets intended to benefit all pensioners to benefit only certain individuals, and (c) risk that the ISF Program will have insufficient assets in the later years of the program.

2

13-53846-tjt    Doc 9348    Filed 03/03/15    Entered 03/03/15 15:49:07    Page 2 of 6

A. The ASF Program and ASF Recoupment under the Plan

6. According to the Disclosure Statement, ASF is a voluntary, individual account investment program that operates within the GRS pension plan, more particularly described as follows:

> If an employee chooses to participate in the ASF, a pension account is established for the employee, and he or she may voluntarily contribute 3%, 5% or 7% of gross pay, on an after-tax basis, to that account. The GRS trustees invest these contributions with other GRS assets. The GRS trustees are granted discretion to determine the annual interest to be credited on the employee contributions to the ASF accounts, and each employee's ASF account increases in value based upon the interest amounts that the GRS trustees credit to the ASF accounts.

*See* Disclosure Statement [Dkt. No. 4391 at p.23-24].

7. The Disclosure Statement also describes the practice of the GRS trustees to credit to employee ASF accounts annual interest of not less than 7.9%. "The ASF accounts essentially were treated as a guaranteed investment program, where, each year, ASF account holders would be credited with interest of at least 7.9%, regardless of the actual market investment returns on the assets in GRS." *Id.* at p.24.

8. During the Chapter 9 case, the City questioned this practice and took the position that (a) as a result of this practice over $387 million of excess interest was credited to the ASF accounts collectively during the period from July 1, 2003

through June 30, 2013, and (b) that the funds used to pay this excess interest were diverted from the general GRS asset pool during this period.

9. The Plan provides a mechanism to recoup a portion of the excess interest payments for the benefit of all GRS pension participants. ASF participants have the option of either making a lump sum payment, or having a payment recouped from the ASF participants' future monthly pension checks.

10. This recoupment is separate and distinct from the reduction in pension benefits and elimination of COLAs that all GRS retirees will experience under the Plan.

**B. The State Contribution Agreement Requires Creation of the Income Stabilization Fund**

11. Paragraph 3 of the State Contribution Agreement establishes the ISF Program. See Plan Ex. I.A.322 at ¶ 3; Disclosure Statement at p.25.

12. The intention of the ISF Program was to ensure that the reduced pension benefits in the Plan did not cause retirees (or minor children receiving survivor benefits) to fall below the federal poverty level at any time during their lives (or in the cases of minors, until they reached adulthood).

13. The key term here is "reduced pension benefit". Neither the Plan nor the State Contribution Agreement defines "reduced pension benefit". The State contends that this term was intended to incorporate only the reduction in pension amounts and COLAs applied to all GRS retirees, and not the ASF Recoupment

4

payments that ASF participants will be required to make as a result of receiving a rate of return in excess of market rates. GRS, however, argues a possible alternative interpretation, that ASF Recoupment payments should be included in that term as well, without stating whether it would support such an interpretation.

14. To adopt this position, the Court and parties would be required to find that "reduced pension benefit" is synonymous with "GRS Adjusted Pension Amount" which is defined in the Plan to include ASF Recoupment as well as the 4.5% reduction in pension benefits and elimination of COLAs.

15. If the parties to the State Contribution Agreement, however, intended these two terms to be synonymous then the parties would have used "GRS Adjusted Pension Amount" in lieu of "reduced pension benefit" in the State Contribution Agreement, but they did not.

16. Furthermore, it was never the intent of the State that the Income Stabilization Fund would be used to perpetuate a questionable "guaranteed investment program" that proved to be extremely detrimental to the general GRS asset pool. In fact, as part of the State Contribution Agreement, the State required that the City and GRS amend the GRS plan documents to provide for an Investment Committee to provide oversight to the GRS Trustees on investment decisions to ensure that such questionable practices did not occur in the future.

17. Adopting a broad interpretation of reduced pension benefits would also undermine funding for the ISF program. When determining the level of funding needed to implement the ISF program, the parties used looked to only the 4.5% reduction in accrued pension amount and elimination of COLA. Recovery of ASF recoupment payments was never contemplated. If the Court adopts GRS's interpretation and permits ISF to be used to repay ASF recoupment payments, then there is a risk that the ISF will have insufficient assets in later years, or in any event, any excess funds would not be able to be utilized to pour over into the general pension fund for the benefit of all pensioners in the GRS pension system.

18. For these reasons, the State's position is that Income Stabilization Benefits should not be used to restore ASF Recoupment payments.

Dated: March 3, 2015

Respectfully Submitted:

/s/ Steven G. Howell
Steven G. Howell (P28982)
Special Assistant Attorney General
Dickinson Wright PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
showell@dickinsonwright.com

Matthew Schneider (P62190)
Chief Legal Counsel
P.O. Box 30754
Lansing, Michigan 48909
(517) 373-3203

Attorneys for the State of Michigan

DETROIT 56620-1 1342917v3