# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                                         : Chapter 9
:
CITY OF DETROIT, MICHIGAN,     : Case No. 13-53846
:
                         Debtor.     : Hon. Thomas J. Tucker
:
-------------------------------------------------------x

## MOTION OF THE CITY OF DETROIT, PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3021, FOR AN ORDER APPROVING RESERVE AMOUNTS FOR CERTAIN DISPUTED OR UNLIQUIDATED UNSECURED CLAIMS IN CONNECTION WITH DISTRIBUTIONS TO BE MADE UNDER THE EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

The City of Detroit, Michigan (the "City") hereby moves the Court,

pursuant to sections 105(a) and 502(c) of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 3021 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the entry of an order[1] approving reserve

amounts for certain disputed or unliquidated unsecured claims in connection with

---

[1]     This Motion includes certain attachments that are labeled in accordance with
Rule 9014-1(b)(1) of the Local Rules of the Bankruptcy Court for the
Eastern District of Michigan (the "Local Rules").  Consistent with Local
Rule 9014-1(b), a copy of the proposed form of order granting this Motion is
attached hereto as Exhibit 1 (the "Proposed Order").  A summary identifying
each included attachment by exhibit number is appended to this Motion.

distributions to be made under the *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 8045) (the "Plan").[2]  In support of this Motion, the City respectfully represents as follows:

### Background Regarding the Claims Process and the Disputed Unsecured Claims Reserve

1.      On July 18, 2013 (the "Petition Date"), the City filed a petition for relief in this Court, thereby commencing the largest chapter 9 case in history. On December 5, 2013, the Court entered (a) the *Opinion Regarding Eligibility* (Docket No. 1945) finding that the City is eligible to be a debtor under chapter 9 of the Bankruptcy Code and (b) an order for relief (Docket No. 1946) with respect to the City.

2.      On September 30, 2013, the City filed its *Second Amended List of Creditors and Claims, Pursuant to Sections 924 and 925 of the Bankruptcy Code* (Docket No. 1059) (the "List of Claims").

3.      By an order dated November 21, 2013 (Docket No. 1782) (the "Bar Date Order"), the Court established February 21, 2014 at 5:00 p.m., Eastern Time, as the general bar date for creditors to file proofs of claim asserting prepetition liabilities against the City (the "General Bar Date").  The Bar Date

---

[2]      Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

Order also, among other things, established bar dates (collectively with the General Bar Date, the "Bar Dates") for the filing of proofs of claim (a) by any governmental units holding claims against the City, (b) in response to any amendments to the List of Claims and (c) with respect to any claims for damages arising from the rejection of executory contracts and unexpired leases ("Rejection Damages Claims").

4. After the entry of the Bar Date Order, the City provided notice of the Bar Dates to all known creditors and potential creditors in accordance with the requirements of the Bar Date Order.[3] As of February 28, 2015, a total of 3,830 proofs of claim have been filed against the City, many of which are disputed or unliquidated in whole or in part.

5. On October 22, 2014, the City filed the Plan. On November 12, 2014, the Court entered the *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (Docket No. 8272) confirming the Plan. On December 10, 2014 (the "Effective Date"), the Plan became effective in accordance with its terms. See *Notice of (I) Entry of Order Confirming Eighth*

---

[3] The City filed various certificates of service and affidavits of publication in this regard. See, e.g., Certificates of Service and Supplemental Certificates of Service (Docket Nos. 2337, 2387, 2432, 2449, 2485, 2624, 2647, 2676, 2716, 2761, 2818, 2822, 3341, 4328, 4963, 5176, 5187, 5189, 5269, 5655, 5861, 6043, 6346, 6531 and 7054); Affidavits of Publication (Docket Nos. 3007, 3008 and 3009).

*Amended Plan for the Adjustment of Debts of the City of Detroit and*

*(II) Occurrence of Effective Date* (Docket No. 8649).

      6.    The Plan provides a <u>pro</u> <u>rata</u> distribution of certain New B Notes to the holders of Allowed Other Unsecured Claims in Class 14. Specifically, the Plan provides that holders of Allowed Class 14 claims are entitled to receive, unless they agree otherwise and in full satisfaction of such claims, "on or as soon as reasonably practicable after the Effective Date, a Pro Rata share of approximately $16.48 million in New B Notes" in addition to certain Excess New B Notes in the amount of $4,116,429 provided in connection with the Plan COP Settlement. Plan § II.B.3.u.i.

      7.    To permit Distributions to holders of Allowed Class 14 claims as expeditiously as practicable following the Effective Date, the Plan provides for the establishment and maintenance of a reserve (the "<u>Disputed Unsecured Claims</u> <u>Reserve</u>") to provide a source of recovery to holders of Disputed Claims[4] in

---

[4]    The Plan defines the term "Disputed Claim" as "any Claim that is not an Allowed Claim." Plan § I.A.134. The Plan defines "Allowed Claims" as follows:

    (a) a Claim, proof of which has been timely Filed by the applicable Bar Date (or for which Claim under express terms of the Plan, the Bankruptcy Code or a Final Order of the Bankruptcy Court, a proof of Claim is not required to be Filed); (b) a Claim (i) that is listed in the List of Creditors, (ii) that is not identified on the List of Creditors as contingent, unliquidated or disputed and (iii) for which no proof of Claim has been timely Filed; (c) a Claim allowed pursuant

Class 14 that eventually become Allowed Claims.  In particular, the Plan provides that:

> On and after the Effective Date, until such time as all Disputed Claims have been compromised and settled or determined by Final Order and before making any Distributions, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, the City shall establish and maintain a reserve of property equal to (1) the Distributions to which Holders of Disputed Claims would be entitled under the Plan *if such Disputed Claims were Allowed Claims in the Face Amount of such Disputed Claims or (2) such lesser amount as required by an order of the Bankruptcy Court* ....  Each Holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the assets held in the disputed claims reserve and not to any other assets held by the City, its property or any property previously distributed on account of any Allowed Claim.

Plan § VI.B (emphasis added).

---

> to the Plan or a Final Order of the Bankruptcy Court; (d) a Claim designated as allowed in a stipulation or agreement between the City and the Holder of the Claim that is Filed; or (e) a Claim designated as allowed in a pleading entitled "Designation of Allowed Claims" (or a similar title of the same import) that is Filed; <u>provided</u> that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered allowed only if and to the extent that (x) no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) if an objection is so interposed, the Claim shall have been allowed by a Final Order. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed to be an Allowed Claim unless and until such Entity pays in full the amount that it owes the City.  "Allow" and "Allowing" shall have correlative meanings.

Plan § I.A.19.

8.     To that end, the Plan expressly provides that the Court may estimate the Face Amount of any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code.

> "Face Amount" means either (a) the full stated amount claimed by the holder of such Claim in any proof of Claim Filed by the Bar Date or otherwise deemed timely Filed under applicable law, if the proof of Claim specifies only a liquidated amount; (b) if no proof of Claim is Filed by the Bar Date or otherwise deemed timely Filed under applicable law, the full amount of the Claim listed on the List of Creditors, provided that such amount is not listed as disputed, contingent or unliquidated; or (c) *the amount of the Claim* (i) acknowledged by the City in any objection Filed to such Claim, (ii) *estimated by the Bankruptcy Court for such purpose pursuant to section 502(c) of the Bankruptcy Code*, or (iii) proposed by City, if (A) no proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law and such amount is not listed in the List of Creditors or is listed in List of Creditors as disputed, contingent or unliquidated or (B) the proof of Claim specifies an unliquidated amount (in whole or in part).

Plan § I.A.185 (emphasis added).

9.     As of the Effective Date, the substantial majority of the claims in Class 14 under the Plan were Disputed Claims insofar as they remain subject to pending or potential claim objections, or adjudication in a nonbankruptcy forum, and had not yet been designated as Allowed Claims pursuant to Section I.A.19 of the Plan.  As the City continues its evaluation of claims (and accelerates this review), it anticipates that more Class 14 claims will become Allowed Claims in the near term.  Therefore, to permit interim distributions to these creditors, the City

must establish the Disputed Unsecured Claims Reserve in accordance with Sections I.A.185 and VI.B of the Plan.

## Jurisdiction

10.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Article VII of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

11.     Pursuant to sections 105(a) and 502(c) of the Bankruptcy Code, Bankruptcy Rule 3021 and the terms of the Plan, the City hereby seeks the entry of an order approving the establishment of reserve amounts for inclusion in the Disputed Unsecured Claims Reserve on account of disputed or unliquidated Class 14 claims filed in the Chapter 9 Case, or any such potential claim, as described herein.

## The Proposed Disputed Unsecured Claims Reserve Amounts

12.     Consistent with the terms of the Plan, this Motion seeks approval of the establishment of an initial Disputed Unsecured Claims Reserve reflecting aggregate potential Class 14 claim liabilities in the amount of $1.035 billion as of the date of this Motion (subject to change over time as claims are allowed, expunged, filed, reclassified or liquidated).  The components of this

initial reserve amount are described below.  Consistent with the Plan, Allowed

Claims will be included in the calculation of pro rata distributions in the full

allowed amount of such claims.[5]

13.    In reviewing the Disputed Claims in Class 14, the City

identified three general categories of potential liability that must be accounted for

in the Disputed Unsecured Claims Reserve.  These categories consist of:

(a) amounts that are liquidated within Class 14 Disputed Claims (the "Liquidated

Class 14 Amounts"); (b) amounts that are unliquidated within Class 14 Disputed

Claims (the "Unliquidated Class 14 Amounts"); and (c) claims that have not yet

been asserted against the City (or that otherwise are not currently in Class 14), but

that may in the future become valid Class 14 liabilities ("Unasserted Class 14

Claims").[6]  For purposes of this Motion, the City has rounded proposed aggregate

---

[5]    Currently, the amount of Allowed Claims in Class 14 totals $28,183,960.
The City anticipates filing Designations of Allowed Claims in the near term
with respect to additional claims that have been reconciled, resolved or
adjudicated.  At that time, the Disputed Claims Reserve will be adjusted
consistent with the Reserve Administration Rules set forth below.

[6]    Certain unsecured claims (including Unlimited Tax General Obligation
Claims, Limited Tax General Obligation Claims, COP Claims, Pension
Claims, OPEB Claims, Downtown Development Authority Claims,
Convenience Claims, Subordinated Claims and Indirect 36th District Court
Claims) are provided specific treatment under the Plan in Classes other than
Class 14.  See, e.g., Plan §§ II.B.3.n-t, v-x.

Certain unsecured claims (including, for example, certain Indirect Employee
Indemnity Claims, workers' compensation claims, ordinary course

reserves for each category of claim to the nearest $1 million.  Additional rules for administering the Disputed Unsecured Claims Reserve also are described below.

### *Initial Reserves for Liquidated Class 14 Amounts*

14.     Consistent with the terms of the Plan, the City proposes that reserves for Liquidated Class 14 Amounts be established as the portion of such liquidated amounts that would be subject to treatment in Class 14 under the Plan if the relevant claim becomes an Allowed Claim.  This rule would apply both to fully liquidated claims and to the liquidated portion of claims that also include unliquidated amounts.  Under this rule, the City initially would reserve the full amount asserted by the claimant in Class 14 in the Disputed Unsecured Claims Reserve.  The City reserves the right, however, to seek the Court's estimation of

---

compensation claims, certain Claims relating to the operation of City motor vehicles, income and property tax refund claims, utility deposit claims and Pass-Through Obligations) are being satisfied in the ordinary course by the City or are otherwise not subject to impairment in Class 14 under the Plan (together, the "Unimpaired Claims").  See, e.g., id. at §§ IV.Q, S-V. Because such claims generally are not receiving a pro rata share of the "pot" of New B Notes to be distributed among the holders of Allowed Class 14 claims, the City does not intend to reserve any amount of New B Notes in the Disputed Unsecured Claims Reserve on account of such claims.

In certain cases, the holder of a Claim that otherwise would have been an Unimpaired Claim previously agreed, in connection with a settlement entered into between the City and the claimant, to accept treatment of the Claim as an Allowed Class 14 claim.  In such cases, the City will reserve the applicable amount of New B Notes to provide the claimant with the agreed-upon treatment of the Claim.

any Liquidated Class 14 Amount at a lower amount for this purpose. To the extent

identified by the City as of the date hereof, duplicate claims will be counted only

once for purposes of these reserve calculations.

15.     Certain of the Liquidated Class 14 Amounts are expressly

identified as estimated in the applicable proofs of claim. Although lacking a

definitive and final claim amount, for purposes of the Disputed Unsecured Claims

Reserves, the City intends to utilize the amounts estimated by the applicable

claimants (to the extent such amounts would be classified in Class 14 under the

Plan), subject to the City's right to seek the Court's estimation of these claims at a

different amount for reserve purposes.

16.     On the General Bar Date, Michigan AFSCME Council 25 and

its affiliated Detroit Locals ("AFSCME") filed a proof of claim (No. 2958)

(the "AFSCME Claim") asserting liabilities in the aggregate amount of "not less

than $8,718,697,854.82." As of the date of this Motion, pursuant to admissions by

AFSCME and orders of this Court, the City believes that AFSCME's liquidated

Class 14 liability asserted in the AFSCME Claim is $300 million.[7] Accordingly,

---

[7]     In particular, AFSCME has conceded that $8.1 billion of the asserted
        amount of the AFSCME Claim constitutes a Pension Claim subject to
        treatment in Class 9 under the Plan. See *Order Dismissing Claims From
        Mediation* (Docket No. 7877). In addition, AFSCME concedes in the
        AFSCME Claim itself that approximately $146 million of the AFSCME
        Claim (60% of the amount of the Coalition Claim, as defined below) is

although the City disputes substantially all of the Class 14 liabilities asserted in the AFSCME Claim, consistent with its approach with respect to other Liquidated Class 14 Amounts and the Reserve Administration Rules set forth below, the City initially will reserve for a maximum potential Class 14 liability in the amount of $300 million on account of the AFSCME Claim.

17.     Attached hereto as <u>Exhibit 6.1</u> is a schedule of pending Class 14 Disputed Claims for which the City proposes to establish a specific reserve amount in the Disputed Unsecured Claims Reserve for Liquidated Class 14 Amounts.  Exhibit 6.1 identifies, with respect to each such proof of claim:  (a) the claim number; (b) the claimant; and (c) the applicable Liquidated Class 14 Amount after accounting for any adjustments, including amounts withdrawn, adjudicated or settled.[8]

---

duplicative of AFSCME's share of the liabilities asserted in the Coalition Claim.  <u>See</u> AFSCME Claim, at 2.  This Court also has ruled that $174 million in liquidated liabilities asserted in the AFSCME Claim arising from the City's elimination of the so-called "13th check program" constitutes a Pension Claim subject to treatment in Class 9 under the Plan.  <u>See</u> *Order Regarding City's Objection to Proof of Claim #2958* (Docket No. 8015). AFSCME has appealed this ruling.  <u>See</u> Notice of Appeal (Docket No. 8139).  Deducting these amounts from the total asserted amount of the AFSCME Claim leaves approximately $298.7 million, which the City has rounded to $300 million.

[8]     The City's efforts to resolve claims are ongoing.  As a result, certain settlements may not be reflected on Exhibit 6.1.  The City reserves the right to update Exhibit 6.1 to reflect settlements and other developments in advance of the hearing on this matter.

18.    As reflected on Exhibit 6.1, in the aggregate, the City proposes to reserve for a total potential Class 14 liability of $968 million on account of Liquidated Class 14 Amounts (including with respect to the AFSCME Claim) as of the date of this Motion (the "Liquidated Claim Reserve").

19.    Note that Allowed Claims as of the date of this Motion and wholly unliquidated claims are excluded from Exhibit 6.1.  Likewise Unimpaired Claims that otherwise would be in Class 14 (as identified to date) are excluded from Exhibit 6.1 and will not be provided for in the Disputed Unsecured Claims Reserve.  The City reserves the right to amend or supplement Exhibit 6.1 prior to the hearing on this Motion as necessary or appropriate to update the information therein.

### *Initial Reserves for Unliquidated Class 14 Amounts*

20.    Certain Disputed Claims in Class 14 are unliquidated in whole or in part.  The City has evaluated these claims and has determined that it should reserve for a total potential Class 14 liability of $47 million on account of the Unliquidated Class 14 Amounts asserted in such Disputed Claims (the "Unliquidated Claim Reserve").  The City made this determination in good faith, based on its review and analysis of the Class 14 Disputed Claims, including, to the extent feasible, appropriate and/or necessary:  (a) the City's books and records; (b) the underlying proofs of claim; (c) the known, assumed or believed

facts and circumstances related to these claims; (d) the legal issues, if any, associated with these claims; (e) communications, if any, with the holders of these claims; (f) the City's historical experience with similar claims (both prior to and during the Chapter 9 Case); and (g) other factors the City deemed relevant.

21.     The components of the Unliquidated Claim Reserve are as follows:

(a)     <u>Litigation Claims Asserting Unliquidated Class 14 Amounts</u>. The majority of Class 14 claims are litigation claims (including Tort Claims) in various stages of adjudication (collectively, "<u>Litigation Claims</u>").[9] Most of the Litigation Claims currently are asserted in the specific liquidated amounts reflected on Exhibit 6.1. Approximately 45 Litigation Claims, however, are asserted for Unliquidated Class 14 Amounts in whole or in part.[10] The City's Law Department has reviewed each of these Litigation Claims and, based on the factors described above and their experience in defending litigation against the City, has established a reserve for these claims. In many cases involving claims with liquidated and unliquidated components, the Law Department determined that any Liquidated Class 14 Amounts asserted in a claim significantly exceeded the City's estimated liability with respect to the claim even before considering the unliquidated amounts. As a result, the Law Department determined that no further

---

[9]     Many of these claims are Tort Claims that will be adjudicated in non-bankruptcy tribunals consistent with stay modification notices filed pursuant to the *Order, Pursuant to Sections 105 and 502 of the Bankruptcy Code, Approving Alternative Dispute Resolution Procedures to Promote the Liquidation of Certain Prepetition Claims* (Docket No. 2302).

[10]    An additional approximately 400 Litigation Claims assert liabilities that, based upon the City's review of the applicable proofs of claim to date, would not be subject to treatment in Class 14 under the Plan because they constitute:  (a) Convenience Claims, as resolved, subject to treatment in Class 15; or (b) Unimpaired Claims.

reserve over and above the Liquidated Class 14 Amount set forth on Exhibit 6.1 was necessary or appropriate. Because these Litigation Claims involve active litigation, the City determined that establishing and disclosing to claimants claim-by-claim reserve amounts would not be appropriate and could adversely impact settlement discussions. The total initial reserve for all Unliquidated Class 14 Amounts asserted in Litigation Claims is proposed to be $1 million. A schedule of wholly unliquidated Litigation Claims asserting liabilities that, if liquidated, would be classified in Class 14 under the Plan, as identified by the City to date, is attached hereto as Exhibit 6.2. A similar schedule of partially unliquidated Litigation Claims is attached hereto as Exhibit 6.3.[11]

(b)     Unliquidated Employee Benefits Claims. Numerous City employees and several unions filed claims (collectively, the "Employee Benefit Claims") asserting liabilities against the City arising from the City's modification of employment terms and conditions of City employees prior to the Petition Date, including through the imposition of the so-called "City Employment Terms" (the "CETs"). In particular, the Coalition of Detroit Unions (the "Coalition") filed a liquidated Employee Benefit Claim in the total amount of approximately $243 million (No. 2851) (the "Coalition Claim"), which is included in the Liquidated Claim Reserve as indicated on Exhibit 6.1.[12] The City disputes the liabilities asserted in the Employee Benefit Claims, including the Coalition Claim and the related portion of the AFSCME Claim,[13] and believes that many of the Employee Benefit Claims are

---

[11]    The applicable Liquidated Class 14 Amounts with respect to such partially liquidated Litigation Claims are set forth on Exhibit 6.1.

[12]    As noted above, AFSCME is part of the Coalition. As such, the City did not separately reserve for the portion of the AFSCME Claim that it has acknowledged is duplicative of the Coalition Claim. See ¶ 16 n.7, supra.

[13]    The City's objections to the Coalition Claim and the AFSCME Claim are currently pending before the Court. See *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim Number 2851 Filed by the Coalition of Detroit Unions* (Docket No. 4874); *Objection of the City of Detroit, Pursuant to Sections 105 and 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1, to Proof of Claim*

duplicative of the Coalition Claim or other claims. Moreover, the City believes that the alleged liabilities asserted in the Coalition Claim – even if found to be valid – are substantially overstated.[14] Nevertheless, out of an abundance of caution, liquidated Employee Benefit Claims are reserved in their full amounts as set forth on Exhibit 6.1.

With respect to Employee Benefit Claims asserted for Unliquidated Class 14 Amounts in whole or in part (collectively, the "Unliquidated Employee Benefit Claims"), the City proposes to reserve for an additional $45 million in alleged liabilities arising from the imposition of the CETs. This amount represents the portion of the $102 million prepetition CET savings disclosed in the Creditor Presentation that is allocable to employees who were (a) subject to the CETs and (b) members of unions that were *not* members of the Coalition according to the Coalition Claim (i.e., parties not already covered by the liquidated Coalition Claim).[15] A list of the Unliquidated Employee Benefit Claims is attached hereto as Exhibit 6.5.

---

*Number 2958 Filed by Michigan AFSCME Council 25 and Its Affiliated Detroit Locals* (Docket No. 4876).

[14] The Emergency Manager's June 14, 2013 Proposal for Creditors (the "Creditor Presentation"), an excerpted copy of which is attached hereto as Exhibit 6.4, disclosed estimated savings in the amount of $102 million realized on account of the CETs from their imposition on July 17, 2012 through the Petition Date. Although the City disputes all of the Employee Benefits Claims, it believes that the $102 million disclosed in the Creditor Presentation would constitute the absolute maximum of potential liabilities for all of these Claims.

[15] Exhibit I to the Creditor Presentation identifies the number of employees that are subject to the CETs by bargaining unit. The bargaining unit identified as "AFSCME Non-Supervisory" was erroneously identified on Exhibit I to the Creditor Presentation as not being subject to the CETs. For purposes of establishing the Disputed Unsecured Claims Reserve, the City has included this bargaining unit among those that were in fact subject to the CETs.

(c)    Other Unliquidated Claims.  A variety of other claims have been filed in the Chapter 9 Case asserting Unliquidated Class 14 Amounts in whole or in part (collectively, the "Other Unliquidated Claims"). These claims include, for example, (i) trade claims, (ii) other union claims, (iii) other employee claims, (iv) Rejection Damages Claims, (v) blank claims and (vi) other claims that assert unliquidated liabilities in whole or in part.  The City proposes to reserve for an additional $1 million in alleged liabilities arising from the Other Unliquidated Claims.

***Contingency Reserves, Including for Unasserted Class 14 Claims***

22.    The General Bar Date for most claims passed on February 21, 2014; the Bar Date for governmental units was June 3, 2014; and the Bar Date for Rejection Damages Claims asserting damages arising from Executory Contracts and Unexpired Leases rejected under the Plan was January 26, 2015.  Claims filed at this juncture generally would be untimely and, therefore, (a) automatically subordinated in Class 16 under the Plan and (b) subject to disallowance and discharge on that basis alone.  Nevertheless, the City believes that it is appropriate and necessary to establish contingency reserves (the "Contingency Reserves") for liabilities that have not been specifically identified to date, but that could become Allowed Class 14 claims.  Such Contingency Reserves would permit the City to satisfy currently unknown liabilities that become Allowed Class 14 claims on par with other holders of Allowed Claims in Class 14, even though the City is not aware of the liabilities at this time.

23. Liabilities subject to the Contingency Reserves potentially include Unasserted Class 14 claims, such as claims under section 502(h) of the Bankruptcy Code resulting from the avoidance and recovery of any avoidable transfers ("Section 502(h) Claims") and other new or amended claims that otherwise are determined to be properly filed and not disallowed as untimely. The Contingency Reserve also would account for any claims not identified to date that may be reclassified into Class 14 ("Unidentified Class 14 Claims"). Finally, the Contingency Reserve provides for the possibility that the City has under-reserved for any other Class 14 claims due to changed circumstances.

24. The City has determined in good faith to reserve for an additional $20 million in Unasserted Class 14 Claims and Unidentified Class 14 Claims. Of this amount, the City has determined to reserve for approximately $10 million in Section 502(h) Claims. The City is in the early stages of evaluating its prepetition transactions for the availability of potential avoidance actions. As of the date of filing of this Motion, the City cannot predict with confidence (a) the number of avoidance actions that may be asserted, (b) the amount of assets that the City may recover pursuant to such avoidance actions or (c) the extent to which such recoveries will result in the assertion of Section 502(h) Claims. As a result of these uncertainties, the City is unable to reserve with precision on account of Section 502(h) Claims. Nevertheless, in consultation with preference counsel, the

City believes that initially reserving for approximately $10 million in Section 502(h) Claims will be ample to provide recoveries with respect to any such liabilities.[16]

25.     In addition to Section 502(h) Claims, it may be necessary for the City to provide recoveries to holders of other Unasserted Class 14 Claims or Unidentified Class 14 Claims.  The City cannot foresee the nature and aggregate amount of any such claims as of the date of this Motion.  Nevertheless, the City believes that reserving for such liabilities in the amount of an additional $10 million likely will be more than sufficient to provide recoveries to the holders of such claims.

***Additional Rules for Administration of the Disputed Unsecured Claims Reserve***

26.     The City proposes the following additional rules to assist in the administration of the Disputed Unsecured Claims Reserve (the "Reserve Administration Rules"):

(a)     If a Class 14 Disputed Claim subject to the Disputed Unsecured Claims Reserve is allowed, liquidated, disallowed or reclassified out of Class 14 by an agreement of the parties or a Final Order of the Court, the Disputed Unsecured Claims Reserve will be modified accordingly (i.e., any specific reserve for such claim will be removed

---

[16]     Even if ultimate preference recoveries are greater than $10 million, the City expects that the settlement of preference claims in many cases will include waivers of Section 502(h) Claims and that the proposed reserve will be sufficient.

from the Disputed Unsecured Claims Reserve).  Similarly, if a Class 14 Disputed Claim subject to the Disputed Unsecured Claims Reserve is allowed, liquidated, disallowed or reclassified out of Class 14 only in part by an agreement of the parties or a Final Order of the Court, the Disputed Unsecured Claims Reserve will be modified accordingly.

(b)     Upon at least five Business Days advance written notice to the claimant, the City may eliminate any reserve identified on Exhibit 6.1 for any portion of a Class 14 Disputed Claim that is allowed, liquidated, disallowed or reclassified out of Class 14 by order of the Court before such order becomes a Final Order.

(c)     For the avoidance of doubt, claims that initially were classified as Class 14 claims in the City's claims database for noticing or other purposes and that relate to Unlimited Tax General Obligation Bonds, Limited Tax General Obligation Bonds, COP Documents, COP Swap Agreements, HUD Installment Notes or related insurance (collectively, the "Reclassification Claims") will be reserved at $0.00 and will not be treated as Class 14 claims.  A schedule of the Reclassification Claims identified by the City to date is attached hereto as Exhibit 6.6.

(d)     The City may add reserves for the liquidated amount of any new proof of claim filed.

(e)     Notwithstanding the foregoing, the City may adjust the Contingency Reserve in its discretion over time (either to increase or decrease the reserve), *provided that* the overall Disputed Unsecured Claims Reserve does not exceed the initial Disputed Unsecured Claims Reserve without further order of the Court.

(f)     Not fewer than ten Business Days prior to any Distribution Date for Class 14 claims, the City shall file with the Court a notice of the calculation of the then-current Disputed Unsecured Claims Reserve. This notice may be in addition to or part of the Disbursing Agent's report required by Section V.F of the Plan.

(g)     The City may seek Court relief on any issues or disputes that arise in connection with the administration of the Disputed Unsecured Claims

Reserve, including the implementation of the Reserve Administration Rules.

*No Admission of Liability*

27.     The City has established the reserve amounts herein in good faith and on a reasonable basis, based on the information available as of the date of this Motion.  These proposed reserve amounts are not a reflection or admission of actual liabilities that the City believes are owed.  Nothing herein constitutes an admission as to the validity, nature, amount or priority of any claim, and the City reserves all of its rights to dispute the validity, nature, amount or priority of any claim reserved for in the Disputed Unsecured Claims Reserve.  In addition, the inclusion or omission of any claim on the exhibits attached hereto does not constitute an admission by the City that such claim is, or is not, properly classified in Class 14 under the Plan in whole or in part, and the City reserves all of its rights with respect to such arguments.

28.     Although no assurances can be made, the City believes that the reserve amounts (including those identified herein) may be reduced, perhaps materially, prior to the initial distributions in these cases as a result of additional efforts in the claims process.

## Argument

29.     Section 105(a) of the Bankruptcy Code provides in part that "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

30.     Section 502(c) of the Bankruptcy Code ("Section 502(c)"), provides:

> There shall be estimated for purpose of allowance under this section–
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
>
> (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11 U.S.C. § 502(c).

31.     Although Section 502(c) refers to the estimation of claims for the purposes of allowance, courts have estimated claims for other purposes, including to set reserves for plan distributions.  See, e.g., In re Chemtura Corp., 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) ("Claims estimation under Section 502(c)(1) … can be used for a variety of purposes, including … setting claim distribution reserves."); In re Adelphia Commc'ns Corp., 368 B.R. 140, 279 (Bankr. S.D.N.Y. 2007) (estimating a creditor's claim for future expenses for purposes of establishing a reserve); In re Enron Corp., No. 01-16034, 2006 WL 544463 (Bankr. S.D.N.Y. Jan. 17, 2006) (approving the debtors' motion

to estimate claims for purposes of establishing reserves, and setting the reserve amount as the maximum amount of recovery); In re Lomas Fin. Corp., 172 B.R. 3, 4 (S.D.N.Y. 1994) (noting that the court had estimated a claim to set a reserve and cap on the recovery on the claim).

      32.     Further, courts have recognized the ability to estimate disputed claims under Section 502(c). See In re Wallace's Bookstores, Inc., 317 B.R. 720, 724 (Bankr. E.D. Ky. 2004) (holding that a liquidating supervisor had the right under Section 502(c) to seek estimation of disputed claims pursuant to a plan of reorganization); Owens v. Murray, 365 B.R. 835, 848 (M.D. Tenn. 2007) ("[Section] 502(c) of the Bankruptcy Code concerns the estimation of disputed claims, that is, the estimation of the value of a right to payment."); In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 422-23 (Bankr. S.D.N.Y. 2003) (estimating, under Section 502(c), the disputed unliquidated amounts of an administrative claim). Consistent with this case law, the Plan expressly contemplates the estimation of claims for purposes of establishing the Disputed Unsecured Claims Reserve. In particular, the Plan (a) defines the "Face Amount" of any claim to include amounts estimated by the Court pursuant to section 502(c) of the Bankruptcy Code and (b) provides that the Disputed Unsecured Claims Reserve is calculated with reference to the Face Amount of the applicable claims. See Plan §§ I.A.185; VI.B.

-22-

33.     Section 502(c) permits a bankruptcy court to utilize any valuation model that best suits the circumstances of the case at hand when estimating the value of claims.  See, e.g., Owens, 365 B.R. at 839-40 (stating that bankruptcy courts "have broad discretion to employ a method that best fits the circumstances"); Wallace's Bookstores, 317 B.R. at 725 ("[T]he bankruptcy court has broad discretion to fashion estimation procedures using whatever method is best suited to the circumstances.") (quotation marks omitted) (collecting cases); Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC), 410 B.R. 710, 717 (Bankr. M.D. Fla. 2009) ("In outlining estimation procedures pursuant to Section 502(c)(1) of the Bankruptcy Code, a bankruptcy court should use whatever method is best suited to the circumstances of the case.") (citation omitted); Foster v. Granite Broad. Corp. (In re Granite Broad. Corp.), 385 B.R. 41, 49 (S.D.N.Y. 2008) ("Bankruptcy judges have wide discretion in selecting a method for estimating claims, and may use whatever method is best suited to the circumstances.") (citations and quotation marks omitted).  The wide discretion afforded bankruptcy courts in their choice of claims estimation procedures "embodies Congress' determination that the bankruptcy courts are better equipped to evaluate the evidence supporting a particular claim within the context of a particular bankruptcy proceeding."  Bittner v. Borne Chem. Co., 691 F.2d 134, 136 (3d Cir. 1982).

34.     The City arrived at its potential liability estimates to calculate the Disputed Unsecured Claims Reserve in good faith based on appropriate review and analysis.  In the majority of cases, the reserve is based on the asserted amounts provided by the claimant.  In other cases, the reserve was determined based on an evaluation of relevant factors by the City in its business judgment and in good faith, as described above.

35.     Prompt determinations in connection with establishing the Disputed Unsecured Claims Reserve are needed to prevent delay in the implementation and administration of the Plan and the distribution of New B Notes to the holders of Allowed Claims in Class 14.  The City's proposed estimates for the Disputed Unsecured Claims Reserve seek to balance the need to make prompt and material distributions to holders of Allowed Claims in Class 14 while ensuring that sufficient New B Notes remain earmarked for the benefit of holders of Class 14 Disputed Claims, to the extent that such Disputed Claims may become Allowed Claims.  Accordingly, the relief requested in this Motion is necessary and appropriate to facilitate distributions under the Plan.

36.     Relief similar to that requested herein has been granted by bankruptcy courts in numerous cases.  See, e.g., Chemtura, 448 B.R. at 668-69 (estimating claim for purposes of establishing reserve); *Order Estimating Maximum Amount of Certain Claims for Purposes of Establishing Claims Reserves*

*Under the Debtors' Amended Joint Chapter 11 Plan*, In re Motors Liquidation Co., No. 09-50026 (Bankr. S.D.N.Y. Mar. 23, 2011) (Docket No. 9877) (estimating claims for purposes of establishing claims reserve); *Order Approving (A) Disputed Unsecured Claims Reserves for Certain Unliquidated Claims in Connection with Distributions to Be Made Under the Debtors' Third Amended Joint Plan of Reorganization, as It May Be Amended; and (B) Additional Procedures Related to Plan Reserves*, In re Dana Corp., No. 06-10354 (Bankr. S.D.N.Y. Nov. 28, 2007) (Docket No. 7236) (establishing plan distribution reserve and estimating claims in connection with same); *Order Establishing a Distribution Reserve Amount in Connection with Confirmation of the Debtors' First Amended Joint and Consolidated Plan of Reorganization*, In re N.W. Airlines Corp., No. 05-17930 (Bankr. S.D.N.Y. May 25, 2007) (Docket No. 7035) (establishing a plan distribution reserve based on the debtors' estimates of claims); *Order Granting Reorganized Debtors' Motion to Estimate Claims for Reserve and Distribution Purposes*, In re Delta Air Lines, Inc., No. 05-17923 (Bankr. S.D.N.Y. Dec. 6, 2010) (Docket No. 7605) (same).

## Notice

37.     Notice of this Motion has been given to all known Class 14 claimants, including the parties identified on Exhibits 6.1, 6.2, 6.3, 6.5 and 6.6 attached hereto, and to all entities that have requested notice pursuant to

Bankruptcy Rule 2002. The City submits that no other or further notice need be provided.

## Statement of Concurrence

38.     Local Rule 9014-1(g) provides that "in a bankruptcy case unless it is unduly burdensome, the motion shall affirmatively state that concurrence of opposing counsel in the relief sought has been requested on a specified date and that the concurrence was denied." Local Rule 9014-1(g). The City submits that it would be unduly burdensome (and infeasible) to request and obtain the concurrence of each of the hundreds of parties potentially affected by relief requested herein. Accordingly, the City did not seek the concurrence of such parties.

## No Prior Request

39.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, for the reasons set forth herein the City respectfully requests that this Court (a) enter the Proposed Order and (b) grant such other and further relief to the City as the Court may deem proper.

Dated: March 3, 2015          Respectfully submitted,


/s/ Heather Lennox
Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
hlennox@jonesday.com

ATTORNEYS FOR THE CITY

# SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).

| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | Notice of Motion |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6.1 | Schedule of Liquidated Amounts of Class 14 Disputed Claims |
| Exhibit 6.2 | Schedule of Wholly Unliquidated Class 14 Litigation Claims |
| Exhibit 6.3 | Schedule of Partially Unliquidated Class 14 Litigation Claims |
| Exhibit 6.4 | Excerpt of Creditor Presentation |
| Exhibit 6.5 | Schedule of Employee Benefits Claims |
| Exhibit 6.6 | Schedule of Reclassification Claims |

# **EXHIBIT 1**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

```
------------------------------------------------------x
                                        :
In re                                   : Chapter 9
                                        :
CITY OF DETROIT, MICHIGAN,              : Case No. 13-53846
                                        :
                        Debtor.         : Hon. Thomas J. Tucker
                                        :
                                        :
------------------------------------------------------x
```

## ORDER, PURSUANT TO SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3021, APPROVING RESERVE AMOUNTS FOR CERTAIN DISPUTED OR UNLIQUIDATED UNSECURED CLAIMS IN CONNECTION WITH DISTRIBUTIONS TO BE MADE UNDER THE EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

This matter coming before the Court on the *Motion of the City of Detroit, Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code and Bankruptcy Rule 3021, for an Order Approving Reserve Amounts for Certain Disputed or Unliquidated Unsecured Claims in Connection with Distributions to Be Made Under the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* (the "Motion"),[1] filed by the City of Detroit, Michigan (the "City"); the Court having reviewed the Motion and having considered the statements of

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Article VII of the Plan, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (c) notice of the Motion and the Hearing was sufficient under the circumstances, (d) the establishment of the Disputed Unsecured Claims Reserve based upon a total potential liability for Disputed Claims in Class 14, as described in the Motion, is necessary and appropriate to avoid undue delay to the administration of the City's chapter 9 case and the initial distributions to holders of Allowed Other Unsecured Claims in Class 14 under the Plan and (e) the relief requested in the Motion and granted herein is necessary and appropriate to carry out the provisions of the Bankruptcy Code and the Plan and is in the best interests of the City, its creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED.

2.     The City's establishment of the Disputed Unsecured Claims Reserve, as set forth in the Motion, is hereby authorized and approved in all

respects.  As such, the initial Disputed Unsecured Claims Reserve will be $1.035 billion, subject to modification as set forth in the Motion.

3.      The Reserve Administration Rules described in the Motion are hereby approved in all respects.

4.      The City is authorized to take any and all actions that are necessary or appropriate to establish and administer the Disputed Unsecured Claims Reserve consistent with the Motion and the terms of the Plan.

5.      Nothing herein or in the Motion, nor any action by the City to implement this Order, shall constitute an admission of the validity, nature, amount, classification or priority of any Claim, and all rights of the City to dispute the validity, nature, amount, classification or priority of any Claim included in the Disputed Unsecured Claims Reserve are hereby preserved.

**EXHIBIT 2**

Form B20A(Official Form 20A)
12/1/10

**UNITED STATES BANKRUPTCY COURT**
**Eastern District of Michigan**

**In re:**

**CITY OF DETROIT, MICHIGAN,**

                **Debtor.**

**Chapter: 9**

**Case No.: 13-53846**

**Judge:  Hon. Thomas J. Tucker**

Address:  2 Woodward Avenue, Suite 1126
          Detroit, Michigan  48226

Last four digits of Social Security or
Employer's Tax Identification (EIN) No(s).(if any):  38-6004606

**NOTICE OF MOTION OF THE CITY OF DETROIT, PURSUANT TO SECTIONS 105(a)
AND 502(c) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3021, FOR AN
ORDER APPROVING RESERVE AMOUNTS FOR CERTAIN DISPUTED OR UNLIQUIDATED
UNSECURED CLAIMS IN CONNECTION WITH DISTRIBUTIONS TO BE MADE UNDER THE
EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT**

      The City of Detroit, Michigan (the "City") has filed papers with the Court seeking entry of an
order, pursuant to sections 105(a) and 502(c) of title 11 of the United States Code and Rule 3021 of the
Federal Rules of Bankruptcy Procedure, approving reserve amounts for certain disputed or unliquidated
unsecured claims in connection with distributions to be made under the City's confirmed plan of
adjustment.

      **Your rights may be affected.  You should read these papers carefully and discuss them with
your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may
wish to consult one.)**

      If you do not want the court to grant the relief sought in the motion, or if you want the court to
consider your views on the motion, **on or by March 18, 2015,** you or your attorney must:

1.         File with the court a written response or an answer, explaining your position at:[1]

**United States Bankruptcy Court**
United States Bankruptcy Court
211 W. Fort Street, Suite 2100
Detroit, Michigan  48226

---

[1]      Any response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically. You must also mail a copy to:

Heather Lennox (OH 0059649)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

2.      If a response or answer is timely filed and served, the Court will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Dated:     March 3, 2015               Respectfully submitted,

                                        /s/  Heather Lennox
                                        Heather Lennox (OH 0059649)
                                        JONES DAY
                                         North Point
                                         901 Lakeside Avenue
                                         Cleveland, Ohio  44114
                                         Telephone:  (216) 586-3939
                                         Facsimile:  (216) 579-0212
                                         hlennox@jonesday.com

                                         ATTORNEYS FOR THE CITY

# **EXHIBIT 4**

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing *Motion of the City of Detroit, Pursuant to Sections 105(a) and 502(c) of the Bankruptcy Code and Bankruptcy Rule 3021, for an Order Approving Reserve Amounts for Certain Disputed or Unliquidated Unsecured Claims in Connection with Distributions to Be Made Under the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* was filed and served via the Court's electronic case filing and noticing system on this 3rd day of March, 2015.

/s/ Heather Lennox

# **EXHIBIT 6.1**

## SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the*
*applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 1784 | Poe, Cassandra E. | $120,000.00 |
| 3316 | Richmond, Farrad | $50,000.00 |
| 1269 | 16600 Greenfield, LLC | $58,365.18 |
| 1841 | 415 East Congress, LLC | $1,563,107.76 |
| 880 | Adams, Eddie | $277,550.61 |
| 3577 | Adams, Tanora | $50,000.00 |
| 3208 | Adedokun, Silifat | $250,000.00 |
| 2534 | Adler Stilman, PLLC | $500,000.00 |
| 1062 | ADP, INC. | $29,644,827.50 |
| 909 | Advance Digital Systems, LLC | $65,747.50 |
| 910 | Advance Digital Systems, LLC | $115,330.03 |
| 1366 | AdvisaCare Healthcare Solutions, Inc. | $138,669.42 |
| 297 | Affiliated Diagonostics | $289,500.00 |
| 776 | Agar Lawn Sprinkler Systems Inc | $189,752.63 |
| 3066 | Ahmad, Khadijah | $209,085.85 |
| 3676 | Airgas USA LLC | $55,793.34 |
| 491 | Aj & Associates At Law | $50,000.00 |
| 1135 | Albert, Randal | $225,000.00 |
| 2192 | Alford, Marlon | $104,354.17 |
| 1743 | Al-Talaqani, Ali | $100,000.00 |
| 1742 | Al-Talaqani, Jabir | $100,000.00 |
| 3175 | Amos, Seville | $100,000.00 |
| 971 | Anderson, Patrice | $237,500.00 |
| 1258 | Anderson, Patricia | $300,000.00 |
| 551 | Anderson, Perry | $50,000.00 |
| 3578 | Andrews, Renee | $40,000.00 |
| 3579 | Andrews, Sean Derrick | $40,000.00 |
| 2852 | Association of Prof. Construction Inspectors & Cleveland Gregory | $40,000.00 |
| 1066 | AT&T Services, Inc. | $8,487,525.24 |
| 1649 | Atkins, Faye | $48,000.00 |
| 1811 | Bagby, Lloyd | $250,000.00 |
| 1129 | Baker, Anthony | $55,000.00 |
| 2926 | Balfour, Delshone | $29,176.02 |
| 1994 | Banks, Ladonna | $40,000.00 |
| 1018 | Barrett Paving Materials Inc | $45,394.51 |
| 1436 | Barthel Contracting Co | $26,304.97 |
| 586 | Baugh, Laura J. | $47,000.00 |
| 2260 | Bell, Shelton (estate Of) P/r, Tammy Howard | $75,000.00 |
| 2704 | Benson,Terryton | $110,900.00 |
| 1655 | BeVelle, Glenn | $60,000.00 |
| 201 | Beydoun, Michael & his attorney- Raymond Guzall III | $2,273,668.23 |
| 1790 | Bishop Real Estate, L.L.C | $55,667.53 |
| 758 | Blaze Contracting Inc | $354,143.68 |
| 2835 | Boland, S.R. | $25,914.21 |
| 2373 | Bolton, Dinah Lynn | $49,793.19 |
| 3259 | Bonner, Michael | $100,000.00 |
| 2051 | Booker, Marie Cynthia | $250,000.00 |
| 186 | Boone, Therone | $500,000.00 |
| 396 | Borden, James | $500,000.00 |
| 1211 | Bradford Jr., Comit | $1,000,000.00 |
| 2277 | Brandt, Charlotte | $75,000.00 |
| 1338 | Brannon,Mitchell | $100,000.00 |
| 999 | Bratcher,Shannon | $27,500.00 |
| 1608 | Brazell, Gregory | $300,000.00 |
| 1618 | Brazell, Gregory | $800,000.00 |
| 1246 | Bricest, Ernest | $100,000.00 |
| 1245 | Bricest, Tammy | $100,000.00 |
| 1007 | Brooks, Christopher | $35,000.00 |
| 1544 | Brooks, I-chauntay | $75,000.00 |
| 1643 | Brooks, Latonya | $150,000.00 |
| 345 | Brooks, Ruth | $60,000.00 |
| 398 | Brooks, Ruth B. | $60,000.00 |
| 2161 | Brovold,Thor | $350,000.00 |
| 1221 | Brown, Jessica Et Al | $30,000.00 |
| 3667 | Brown, Johnathan (on behalf of himself and a class of others similarly situated) | $143,437,440.00 |
| 1805 | Brown,Ruffell | $100,000.00 |
| 826 | Burrell,Sharanda | $320,000.00 |

# SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the
applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---:|---|---:|
| 1001 | Burton, Jennifer | $55,000.00 |
| 1537 | Cade, Alyse | $55,000.00 |
| 682 | Cadoura, Richard | $100,000.00 |
| 1438 | Calloway, Lorraine | $32,500.00 |
| 1832 | Campbell,Taylor | $2,000,000.00 |
| 1823 | Cannon, Gladys M. | $27,481.72 |
| 85 | Canon Financial Services, Inc. | $43,366.38 |
| 841 | Carmichael, Jonathan | $100,000.00 |
| 520 | Cato, John | $339,326.97 |
| 411 | Cellco Partnership D/B/A Verizon Wireless | $46,198.34 |
| 2532 | Chandler, Albert W. | $90,000.00 |
| 3026 | Charter County of Wayne | $700,000.06 |
| 3031 | Charter County of Wayne | $418,555.95 |
| 3035 | Charter County of Wayne | $132,790.00 |
| 3823 | Charter County of Wayne | $30,000,000.00 |
| 2625 | Cherry, Jerome | $33,201.00 |
| 2202 | Childers, Debra | $150,000.00 |
| 2790 | Clark, Articia | $1,000,000.00 |
| 3354 | Clark, Bennie E. | $350,000.00 |
| 3467 | Clarke, Janice E. | $38,000.00 |
| 3213 | Clement, Fern | $41,128.50 |
| 2851 | Coalition Of Detroit Unions Et Al, | $242,586,116.50 |
| 2278 | Coalition of Public Safety Employees Health Trust | $453,465.52 |
| 2819 | Cohen, Lamont S. | $200,000.00 |
| 2690 | Coleman, Marcel | $50,000.00 |
| 164 | Collier, Anthony | $200,000.00 |
| 2007 | Collins, John | $65,000.00 |
| 914 | Conaway, Brenda | $55,000.00 |
| 3646 | Consolidated Rail Corporation | $36,038.73 |
| 1893 | Cook, Harriet A. | $30,000.00 |
| 2180 | Cook, William | $100,000.00 |
| 2912 | Cooney, Plunkett | $72,288.74 |
| 1979 | Cooper, Michael | $30,000.00 |
| 395 | Cooper, Monique | $500,000.00 |
| 1967 | Corbin-Johnson, Michele | $28,000.00 |
| 2040 | Corker, Katherine | $140,000.00 |
| 1830 | Craig, Kevin | $75,000.00 |
| 1466 | Crutcher, Leon | $40,000.00 |
| 1059 | Cummings, McClorey, Davis & Acho, PLC | $106,524.94 |
| 1489 | Cunningham, Darshay | $75,000.00 |
| 3197 | Curry, Jacqueline | $100,000.00 |
| 3015 | Dandridge, Doris B. | $250,000.00 |
| 2911 | Danforth Brown, Tara R. | $27,665.46 |
| 1009 | Daniels, Joyce | $125,000.00 |
| 967 | Davis, Diane | $500,000.00 |
| 3387 | Davis, Eduardo A. | $28,926.10 |
| 3146 | Davis, Marie A. | $60,000.00 |
| 1156 | Davis, Sherrod | $150,000.00 |
| 1334 | Davis,Susan K. | $65,000.00 |
| 966 | Davistion, Frank | $60,000.00 |
| 397 | Delfine,Robert T. | $500,000.00 |
| 3074 | Demoss, Donald Herman | $50,000.00 |
| 1578 | Denson, Velma | $40,000.00 |
| 2217 | Detroit Electrical Services, LLC | $248,607.10 |
| 3487 | Detroit Fire Fighters Association, IAFF Local 344 | $186,382.00 |
| 842 | Dillard, James | $200,000.00 |
| 1745 | Dixon,Tiffany | $300,000.00 |
| 1276 | DTE Electric Company f/k/a/ the Detroit Edison Company | $40,257.24 |
| 1274 | DTE Energy Company | $3,240,924.00 |
| 2330 | Duff, Michelle | $39,997.50 |
| 3345 | Duncan,Warren T. | $33,074.05 |
| 2894 | Easley, Gloria | $37,862.50 |
| 2014 | Edwards, Brittany B/h/n/f Dwayne Witheringon | $1,500,000.00 |
| 846 | Edwards, Brittany B/h/n/f Dwyane Witheringon | $300,000.00 |
| 627 | Edwards, Darrick | $150,000.00 |
| 603 | Edwards,Vergiline | $75,000.00 |
| 3685 | Electrical Workers Fringe Benefit Funds of Local #58, IBEW | $175,013.39 |

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the*
*applicable proofs of claim.  These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 1965 | Ellis, Belinda F. | $500,000.00 |
| 2206 | Ellis, Lunitrice | $450,000.00 |
| 3169 | Ellison, James | $100,000.00 |
| 1033 | Emerson Process Management Power & Water Solutions, Inc. | $468,462.13 |
| 2031 | Estes, Dominica | $65,000.00 |
| 2716 | Evans, Mary | $100,000.00 |
| 759 | Examworks Inc | $38,820.78 |
| 559 | Exander, Poe | $50,000.00 |
| 665 | Fakhoury Law Firm Pc | $88,637.41 |
| 1131 | Farris, Branda | $400,000.00 |
| 2183 | Fenroy, Tammy | $125,000.00 |
| 227 | Fields, Delta | $300,000.00 |
| 552 | Fields,Vincent | $50,000.00 |
| 1484 | Fletcher, Kim D. | $25,914.21 |
| 2574 | Frank Haron Weiner PLC | $28,280.56 |
| 553 | Freeman, Arnold | $50,000.00 |
| 1335 | Garcia, Ricardo | $100,000.00 |
| 3195 | Gardner, Edward D. | $100,000.00 |
| 13 | Gargalino, Shawn | $75,000.00 |
| 1259 | Garrett, Bobbie | $250,000.00 |
| 1990 | Garza, Kimberley A. | $80,000.00 |
| 1075 | General Shale Brock Company | $27,271.94 |
| 3163 | Gerhard, Eady | $32,981.44 |
| 1600 | Ghaleb, Theresa | $200,000.00 |
| 2525 | Gibson, Brian J. | $80,000.00 |
| 976 | Gilstrap, Jenniger | $60,000.00 |
| 2032 | Gjergji, Gjush | $55,000.00 |
| 554 | Glenn Jr., Ralph | $50,000.00 |
| 3118 | Godbott, Darrin | $50,000.00 |
| 2346 | Gonzalez, Carolyn T. | $55,400.00 |
| 927 | Goodwin, Philomena | $637,500.00 |
| 1975 | Gouch, Antoinette | $27,000.00 |
| 1507 | Goudy, Larentinna | $200,000.00 |
| 2314 | Governing Board of the City of Detroit Employee Benefit Plan | $36,314.14 |
| 598 | Government Jobs.Com | $77,800.00 |
| 2727 | Gowens, Shante | $3,000,000.00 |
| 1910 | Green, Glenn | $55,000.00 |
| 1064 | Greer, Abraham and Sandra | $1,500,000.00 |
| 1932 | Grice, Linda | $130,000.00 |
| 699 | Grier & Copeland Pc | $89,049.35 |
| 928 | Guest, Shuntina | $40,000.00 |
| 2357 | Guilbeaux, Debra F | $50,000.00 |
| 177 | Gustafson, Barbara, as Next Friend for Shawn Gustafson, a minor | $35,000.00 |
| 1845 | H.D.V. Greektown, LLC | $1,563,107.76 |
| 1645 | Hall, Angela | $150,000.00 |
| 474 | Hall, Richard | $100,000.00 |
| 1097 | Hall, Richard | $1,000,000.00 |
| 1373 | Hampton, Crystal | $30,000.00 |
| 285 | Hardricks, Elijah | $750,000.00 |
| 3309 | Harold W. Taylor | $37,752.50 |
| 1420 | Harper, Tony A. | $30,000.00 |
| 2169 | Harris, Jerry | $400,000.00 |
| 2533 | Harris, Kimberly | $30,000.00 |
| 1928 | Harris, Lord | $1,000,000.00 |
| 3458 | Harris, Lorraine | $40,000.00 |
| 2733 | Harris, Sammie Kevin | $100,000.00 |
| 1575 | Harris-Barnes, Jennifer | $250,000.00 |
| 1375 | Harvey, Gregory | $75,000.00 |
| 108 | Hassan Hassan | $20,000,000.00 |
| 1574 | Hassan, Henry | $500,000.00 |
| 2908 | Hawkins, Aisha | $30,000.00 |
| 1771 | Heard, Casadaria | $45,000.00 |
| 3081 | Heard, Darwin L. | $35,000.00 |
| 2927 | Hearn, Charlene | $25,750.00 |
| 1389 | Hill, Clark | $45,000.00 |
| 1759 | Holt, Kenneth | $37,500.00 |
| 485 | Horton, Akeila and Thornton, Anthony | $490,000.00 |

# SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the
applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---:|---|---:|
| 2244 | Houston Jr., Dwight | $150,000.00 |
| 1068 | Howard & Howard Attorneys PLLC | $90,028.30 |
| 3405 | Hubbard, Daniel | $26,145.48 |
| 2232 | Hunt, Scecilla | $300,000.00 |
| 2945 | Hunter-Rosier, Elizabeth | $500,000.00 |
| 2651 | Hyde Park Co-Operative | $5,000,000.00 |
| 89 | IBM CORPORATION | $119,726.23 |
| 1302 | Inland Waters Pollution Control, Inc. | $2,000,000.00 |
| 1367 | Iron Mountain Information Management, Inc. | $217,366.80 |
| 3825 | Iron Mountain Information Management, LLC | $227,430.78 |
| 2930 | Ivory, Ebonie | $500,000.00 |
| 3497 | Jackies Transport, Inc. | $53,725.50 |
| 2414 | Jackson, Jacueline M. | $45,287.29 |
| 1074 | Jackson, Lue David | $71,825.81 |
| 2042 | Jackson, Vernell | $75,000.00 |
| 2276 | Jacob, Jessy S. | $505,635.76 |
| 120 | Jarrett,Zenda via her attorneys Gursten, Koltonow, Gursten, Christensen & Raitt PC | $55,000.00 |
| 672 | Jbahi, Ibraham K. | $103,151.20 |
| 2266 | Jefferson, Wendy | $75,000.00 |
| 670 | Jenkins, Albert | $90,000.00 |
| 467 | Jenkins, Albert H. | $90,000.00 |
| 555 | Jennings, Jamal | $50,000.00 |
| 673 | Jiddou, Firas | $202,755.00 |
| 3346 | Joe-Davis, Stephanie | $42,200.00 |
| 2030 | Johnson, Brandy | $33,000.00 |
| 2187 | Johnson, Darton | $100,000.00 |
| 3461 | Johnson, Herman R. | $30,000.00 |
| 3382 | Johnson, Randy | $50,000.00 |
| 1325 | Johnson, Rosalind | $40,000.00 |
| 1412 | Johnson, Shawntay Marlo | $1,000,000.00 |
| 3156 | Johnson, William G. | $500,000.00 |
| 402 | Johnson, William L. | $500,000.00 |
| 1257 | Johnson,Timothy | $250,000.00 |
| 1160 | Jones, Elliot | $250,000.00 |
| 556 | Jones, Lee | $50,000.00 |
| 1817 | Jordan, Sharon K | $29,039.40 |
| 2636 | Joshua III, David | $35,486.84 |
| 1925 | K and P, Incorporated | $1,563,107.76 |
| 1000 | Karcher, Matthew | $35,000.00 |
| 683 | Kearns,Michael | $100,000.00 |
| 2145 | Kelso, Lana | $500,000.00 |
| 3429 | King, Aaron | $30,000.00 |
| 1485 | Knight, Deborah A. | $25,914.21 |
| 1644 | Knight, Roosevelt | $30,000.00 |
| 3106 | Koziara, Joseph S. | $73,555.00 |
| 1922 | Kuplicki, Stephen | $181,495.19 |
| 2312 | Larsen Melvin Lyle | $30,000.00 |
| 539 | Laze, Xhensila | $500,000.00 |
| 2479 | Leaks, Vanda M. | $30,000.00 |
| 2114 | Ledbetter, Joann | $500,000.00 |
| 1002 | Legette, Charnita | $65,000.00 |
| 1150 | Lewis, Antoine | $100,000.00 |
| 766 | Lewis, Walter | $1,000,000.00 |
| 1901 | Limbach Company LLC | $186,837.50 |
| 3476 | Living Arts | $122,500.00 |
| 792 | Llanes, James | $60,000.00 |
| 2562 | Loevy & Loevy | $227,850.00 |
| 170 | Lovati, Susan | $250,000.00 |
| 2717 | Loving, Courtney, Et Al | $35,000.00 |
| 1617 | Lowe, Veina | $325,000.00 |
| 1008 | Luckett, Moses | $55,000.00 |
| 1482 | Lukasik, Robert A. | $32,218.82 |
| 1903 | Lyons, George - Property Owner | $99,712.72 |
| 2496 | Mack, Donell | $50,000.00 |
| 2372 | Macuga, Liddle & Dubin P.C. | $95,418.42 |
| 2372 | Macuga, Liddle & Dubin P.C. | $95,418.42 |
| 2374 | Macuga, Liddle & Dubin P.C. | $520,357.82 |

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the*
*applicable proofs of claim.  These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 3067 | Macuga, Liddle & Dubin, P.C. | $395,622.09 |
| 2198 | Malone, Mickey | $125,000.00 |
| 151 | Manos, Dino | $30,000.00 |
| 567 | Mansfield Patterson JR. as p.r. | $100,000.00 |
| 3008 | Mariners Inn | $49,695.53 |
| 199 | Marks, Robert, Sr. | $32,500.00 |
| 2159 | Martin, Rodney | $100,731.27 |
| 1141 | Mathis, James | $40,000.00 |
| 2133 | McCaa, Kennedy | $500,000.00 |
| 3618 | McClain, Archie | $50,000.00 |
| 3379 | McClain, Kanard D | $30,000.00 |
| 557 | McCloud, Anthony | $50,000.00 |
| 685 | McCracken,Thomas | $100,000.00 |
| 3122 | McCrary, Sarah M. | $27,686.00 |
| 2769 | McDonald, Kendra | $55,393.00 |
| 1605 | Mcdonald, Kevin | $300,000.00 |
| 1640 | McGee, Chantinique | $200,000.00 |
| 3282 | McGore, Sarina | $25,669.44 |
| 2853 | McIntosh, Rebecca | $450,000.00 |
| 2848 | McIntosh, Scott | $125,000.00 |
| 1573 | Mckay, Michael | $42,500.00 |
| 2471 | McKinney, Edgar | $100,000.00 |
| 1133 | McLemore, Tangela | $175,000.00 |
| 3123 | McMillon, Phyllis | $33,971.13 |
| 2274 | Mcpherson, Randall | $30,000.00 |
| 2735 | Members of Association of Professional & Technical Employees | $3,585,000.00 |
| 1762 | Mendelson Orthopedics, PC | $27,964.80 |
| 2044 | Mendez-Velez, Carmen | $250,000.00 |
| 3041 | Mercer,Terence Lamont | $65,000.00 |
| 2958 | Michigan AFSCME Council 25 and its affiliated Detroit Locals | $300,000,000.00 |
| 852 | Michigan Auto Recovery Service | $48,525.00 |
| 187 | Michigan Biotech Partners LLC | $45,600.00 |
| 1464 | Michigan Center for Physical Therapy | $26,440.40 |
| 10 | Michigan Community Action Agency Association | $77,014.00 |
| 806 | Michigan Economic Dev Corp | $402,438.92 |
| 807 | Michigan Economic Dev Corp | $5,081,780.82 |
| 808 | Michigan Economic Dev Corp | $2,000,000.00 |
| 3733 | Michigan State Police | $194,079.00 |
| 2971 | Mid America Evaluation Group Inc | $72,872.00 |
| 630 | Migliori, Sebastian | $30,000.00 |
| 1930 | Miles II, Shawn D. | $40,000.00 |
| 3174 | Milewski, Brendan J | $190,000.09 |
| 3001 | Miller, Jason E | $55,000.00 |
| 1525 | Milliner, Mary | $36,479.01 |
| 1534 | Milliner, Mary | $245,000.00 |
| 3289 | Minniefield, Cheryl | $2,000,000.00 |
| 3294 | Minniefield, Cheryl | $500,000.00 |
| 2992 | Mitchell Jr., Alvin J. | $40,010.00 |
| 2632 | Mitchell, LaQuitsha D | $100,000.00 |
| 141 | Mitchell, Vivian | $250,000.00 |
| 440 | Moore, Christopher | $40,000.00 |
| 2098 | Moore, JaJuan | $50,000.00 |
| 1795 | Moore, Nedria G. | $30,000.00 |
| 3071 | Moore, Sharon | $50,000.00 |
| 2120 | Moore, Woodrow | $250,000.00 |
| 88 | Morton Salt | $288,483.55 |
| 843 | Mosley, Shelia | $2,750,000.00 |
| 654 | Neal, Bridgette | $52,500.00 |
| 1550 | Nelson, Shira, by Guardian Equania Nelson | $200,000.00 |
| 2686 | New Grace Spinal Rehabilitation, PLLC | $143,569.47 |
| 394 | Newell, Jamal | $500,000.00 |
| 3210 | Nixon-Lewis, Serina | $250,000.00 |
| 1271 | Noblett, Michael | $80,000.00 |
| 142 | Norfolk Southern Railway Company | $36,128.73 |
| 3416 | Norman, Twain | $75,000.00 |
| 2780 | Nunley,Thomas M. | $28,724.24 |
| 836 | Ohakpo, Simeon | $1,400,000.00 |

# SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the applicable proofs of claim.  These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 2979 | Oliver Jr, Robert L | $62,000.00 |
| 1740 | Oliver Jr., Bill | $100,000.00 |
| 3786 | Omega Rehab Services, LLC | $36,316.96 |
| 3203 | Oneal, Sandra R. | $56,685.84 |
| 2295 | Onuigbo, Diane L | $60,805.40 |
| 3211 | Ortiz, Stacey, Personal Representative of the Estate of Jason D. Baker, Deceased | $1,000,000.00 |
| 1604 | Parnell, Taesean a minor by his next friend Corliss Thomas | $350,000.00 |
| 12 | Payne, Jessie | $2,980,000.00 |
| 2194 | Peagler, Norman | $150,000.00 |
| 558 | Peeples, Eric | $50,000.00 |
| 1792 | Pembroke-Brown,Teresa | $40,298.06 |
| 2966 | Pennington, Audrey | $90,000.00 |
| 1520 | Pennington, LaTonya | $25,498.35 |
| 3079 | Perry, Vivian S. | $33,695.76 |
| 2091 | Person, Rodney | $500,000.00 |
| 2265 | Peterson, Heidi (plaintiff in Wayne County Circuit Court) | $205,043.77 |
| 2269 | Peterson, Heidi (Plaintiff in Wayne County Circuit Suit Against Water Department/City et. al.) | $250,000.00 |
| 2275 | Peterson, Heidi (Plaintiff in Wayne County Circuit Suit Against Water Department/City et. al.) | $40,000.00 |
| 2015 | Peterson, Jeffrey | $400,000.00 |
| 1465 | Peterson, Ronnie | $75,000.00 |
| 1732 | Pettway, Sharon | $55,000.00 |
| 1255 | Pharr, Patricia | $35,000.00 |
| 2221 | Physiomatrix, Inc. | $28,535.00 |
| 2225 | Physiomatrix, Inc. | $41,105.00 |
| 2313 | Pitt McGehee Palmer & Rivers, PC | $29,375.00 |
| 1006 | Poindexter, Jessica | $50,000.00 |
| 3378 | Porter, Alphonso | $90,000.00 |
| 849 | Powell, Mary | $75,000.00 |
| 1947 | Prather II, Hayward R. | $35,500.00 |
| 2458 | Prodigy Spinal Rehabilitation Inc | $177,810.80 |
| 2352 | Property Owner | $80,000.00 |
| 2965 | Pryor, Gail | $41,240.34 |
| 1882 | Purcell, Demetira | $30,000.00 |
| 2814 | Purdue, Estate of Jo Ella | $250,000.00 |
| 3 | Quill.com | $68,283.70 |
| 102 | Rainbow Rehabilitation Center | $32,082.00 |
| 1739 | Ramirez, Patricia | $1,500,000.00 |
| 1858 | Randle, Zachary | $29,733.58 |
| 1650 | Rasnick, Donald | $296,606.03 |
| 3131 | Ratliff, Antonio D. | $300,000.00 |
| 3583 | Readous, Wendy n/f of Tamiah Green | $50,000.00 |
| 889 | Record Copy Services | $56,291.95 |
| 2106 | Rhone, Sidney | $1,500,000.00 |
| 2181 | Rias, Dwayne | $195,000.00 |
| 669 | Riggins, Robert | $82,500.00 |
| 561 | Rivera, David | $50,000.00 |
| 2961 | Robbins,Tanzia | $93,525.00 |
| 864 | Robertson, Ivas | $300,000.00 |
| 2002 | Robinson, Jennifer | $45,000.00 |
| 2027 | Robinson, Lucreasi | $75,000.00 |
| 3395 | Rogers Davis,Robert | $90,578.00 |
| 1518 | Rogers, Jason | $40,000.00 |
| 694 | Rose, Jonathan Thomas-gregory | $500,000.00 |
| 3207 | Ross, Gregory | $250,000.00 |
| 609 | Roulo, Thomas | $250,000.00 |
| 922 | Rubenstein Isaacs Pc | $101,422.30 |
| 1729 | Rupert, Erin | $200,000.00 |
| 1405 | Russell, Major L. | $1,000,000.00 |
| 2859 | SAAA Union - Members | $198,734.00 |
| 1348 | Sawsan, Mohamed | $250,000.00 |
| 1776 | Scaife, Thelma | $50,000.00 |
| 1849 | Schenburn, Edward | $30,000.00 |
| 925 | Scott, Marvella | $100,000.00 |
| 1397 | Scott, Tamesha, a minor by her litigation guardian, Shawntay Marlo Johnson | $75,000.00 |
| 1395 | Scott, Terry, a minor by his litigation guardian Shawntay Marlo Johnson | $75,000.00 |
| 560 | Shack, Samuel | $50,000.00 |
| 1857 | Shafer & Associates, P.C. | $1,563,107.76 |

# SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 2203 | Shahid, Mohamed | $185,000.00 |
| 1974 | Shelton, Dewitt | $28,000.00 |
| 354 | Shelton, Maxine | $2,000,000.00 |
| 86 | Siemens Water Technologies, LLC | $70,000.00 |
| 3068 | Simmons, Anthony | $241,325.00 |
| 802 | Sims, Alicia | $225,000.00 |
| 145 | Sisco, Lonciann | $75,000.00 |
| 1208 | Sky Group Grand, LLC | $1,465,409.79 |
| 3816 | Sky Group Grand, LLC | $5,447,749.44 |
| 2403 | Smith & Wesson Corp | $113,811.88 |
| 2667 | Smith II, Jermaine | $30,000.00 |
| 1775 | Smith, Anthony Derrick | $60,805.40 |
| 2849 | Smith, Autumn | $450,000.00 |
| 2200 | Smith, Clarence D. | $137,500.00 |
| 2415 | Smith, Gregory K.S. | $25,914.21 |
| 2205 | Smith, Gretchin | $450,000.00 |
| 1827 | Smith, Keenan | $380,015.36 |
| 2424 | Smith, Lisa | $26,000.00 |
| 1440 | Smith, Reno | $75,000.00 |
| 1594 | Smith, Taralyn | $75,000.00 |
| 1818 | Smith, Taralyn | $150,000.00 |
| 693 | Southeast Michigan Council of Governments (SEMCOG) | $28,130.00 |
| 1632 | Spencer, Yvette | $300,000.00 |
| 3451 | Spicer, Kim | $204,272.75 |
| 628 | Sprint Corp. | $277,784.77 |
| 871 | St. Martins Cooperative | $390,940.75 |
| 2185 | Stallworth, Lula | $100,000.00 |
| 787 | Stanley, Sherell S. | $750,000.00 |
| 2603 | Stanley, Sherell Shawnee | $987,525.00 |
| 2329 | Starkey, DeAndre | $40,000.00 |
| 3697 | State of Michigan | $366,514.10 |
| 3712 | State of Michigan, Department of Community Health | $1,805,725.77 |
| 3767 | State of Michigan, Department of Community Health | $789,924.00 |
| 3764 | State of Michigan, Department of Human Services | $11,949,405.00 |
| 3766 | State of Michigan, Department of Human Services | $597,040.00 |
| 3709 | State of Michigan, Department of Human Services, Bureau of Comm. Action & Economic Opp. | $2,114,768.70 |
| 3731 | State of Michigan, Department of Transportation | $62,132.00 |
| 3742 | State of Michigan, Department of Transportation | $673,096.87 |
| 3750 | State of Michigan, Dept. of Environmental Quality | $203,810.63 |
| 3751 | State of Michigan, Dept. of Environmental Quality | $1,505,684.00 |
| 3283 | Steele, Natasha | $30,000.00 |
| 827 | Stenbom, Maria | $2,000,000.00 |
| 2094 | Stewart, LaNeta | $80,000.00 |
| 1772 | Strange, Hope | $39,698.06 |
| 844 | Street-Gilbert, Joera | $250,000.00 |
| 1454 | Suell, Geraldine | $45,000.00 |
| 3222 | Sumo, Quewou | $33,000.00 |
| 856 | Superior Investment Group, Llc | $44,960.00 |
| 1852 | Synergy Spine and Orthopedic Surgery Center LLC | $34,008.00 |
| 3048 | Talbert, Sheree | $30,302.50 |
| 2041 | Taylor,Tamara | $40,000.00 |
| 282 | Tech Town | $966,472.00 |
| 1599 | Tharpe, Phyllis | $500,000.00 |
| 894 | The Detroit Medical Center, as agent for Harper-Hutzel Hospital | $69,247.40 |
| 1390 | The Realty Company | $589,490.02 |
| 481 | The Sam Bernstein Law Firm | $165,000.00 |
| 1378 | Thomas, Laverne | $400,000.00 |
| 2323 | Thomas, Randall | $39,997.10 |
| 1646 | Thompson, Keith | $30,000.00 |
| 1641 | Thompson, Raymond | $150,000.00 |
| 2964 | Thornton, Marvin | $200,000.00 |
| 530 | Todd, Jr., Ira Lee | $3,297,471.00 |
| 2201 | Torres, Daniel | $100,000.00 |
| 3440 | Townsend, Evangeline | $30,000.00 |
| 1441 | Tramel, Norman | $36,350.00 |
| 3154 | Trivedi, Ranna K. | $27,437.00 |
| 2279 | Tulik, Mark | $40,000.00 |

# SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---:|---|---:|
| 3116 | Turner, Christopher | $100,000.00 |
| 848 | Turner, Corey | $350,000.00 |
| 496 | Turner, Omar Jackson, Renette, AJ & Associates at Law | $50,000.00 |
| 3464 | Turner, Pamela | $350,000.00 |
| 114 | Turner, Rhonda | $1,000,000.00 |
| 3657 | U.S. Equal Employment Opportunity Commission | $200,000.00 |
| 3658 | U.S. Equal Employment Opportunity Commission | $204,572.41 |
| 3659 | U.S. Equal Employment Opportunity Commission | $207,587.67 |
| 3660 | U.S. Equal Employment Opportunity Commission | $55,658.90 |
| 3661 | U.S. Equal Employment Opportunity Commission | $100,000.00 |
| 3662 | U.S. Equal Employment Opportunity Commission | $115,769.80 |
| 3663 | U.S. Equal Employment Opportunity Commission | $200,000.00 |
| 3664 | U.S. Equal Employment Opportunity Commission | $100,000.00 |
| 3665 | U.S. Equal Employment Opportunity Commission | $122,531.55 |
| 112 | Uddin, Rafuth, a Minor, by His Next Friend, Rehan Uddin | $50,000.00 |
| 3719 | United States Department of Housing and Urban Development | $112,384.28 |
| 3773 | United States Department of Housing and Urban Development | $2,670,774.06 |
| 23 | USAA Insurance | $47,079.29 |
| 2601 | Van Dyke Spinal Rehabilitation | $61,829.19 |
| 1003 | Vann, Lolita | $55,000.00 |
| 822 | Varnum Riddering Schmidt | $43,148.91 |
| 1798 | Vaughn, Tamiko | $75,000.00 |
| 2109 | Walker, Kevin | $500,000.00 |
| 3073 | Walker, Laurie | $60,000.00 |
| 2898 | Walker, Lenetta | $25,223.00 |
| 3381 | Walker,Shirley W | $29,000.00 |
| 132 | Wallace, Wilda | $50,000.00 |
| 996 | Warren, Joy as next friend of Jalen Warren, a minor | $100,000.00 |
| 1307 | Washington, Jaylen | $50,000.00 |
| 392 | Washington, Johnnie | $500,000.00 |
| 2497 | Weaver, Daryl | $50,000.00 |
| 2506 | Weaver, Daryl | $50,000.00 |
| 3097 | Weber Block LLC | $1,000,000.00 |
| 5 | Wells Fargo Financial Leasing, Inc. | $26,588.81 |
| 633 | Weston, Cab C. | $75,000.00 |
| 863 | Wheeler, Fred Douglas | $57,360.00 |
| 1589 | White, Bernard | $60,000.00 |
| 862 | White, Ramona F. | $50,000.00 |
| 1653 | White, Terecia | $175,000.00 |
| 2110 | Whitfield, Carlton | $130,000.00 |
| 1595 | Wilburn, Tarita | $170,000.00 |
| 1613 | Wilburn-Little, Jenita | $200,000.00 |
| 1802 | William Acosta, PLLC | $168,075.40 |
| 2282 | Williams Acosta, PLLC | $139,752.01 |
| 2184 | Williams Jr., Charley | $100,000.00 |
| 121 | Williams, Angelia | $5,000,000.00 |
| 393 | Williams, Anthony | $500,000.00 |
| 407 | Williams, Charles W. | $500,000.00 |
| 1898 | Williams, Denise | $30,000.00 |
| 2524 | Williams, Gloria | $2,000,000.00 |
| 3279 | Williams, Keith | $10,000,000.00 |
| 965 | Williams, La-sheryl, | $40,000.00 |
| 1689 | Williams, Mark | $50,000.00 |
| 1434 | Williams, Michael A | $26,500.00 |
| 3362 | Williams, Shannon | $75,000.00 |
| 3437 | Williams, Shawn | $50,000.00 |
| 2190 | Williams, Troy | $50,000.00 |
| 2182 | Williams,Vashay | $150,000.00 |
| 2045 | Williams-Carter, Katrinia | $80,000.00 |
| 573 | Williamson, Decarlos | $1,000,000.00 |
| 572 | Williamson, Tracy (p.r. Of Williamson, Decarlos) | $100,000.00 |
| 2118 | Willis, Deborah | $100,000.00 |
| 3596 | Wilson, Reginald | $90,000.00 |
| 1734 | Wilson, Victoria | $200,000.00 |
| 335 | Winston, Quincy L. | $1,900,000.00 |
| 2353 | Wojnarski, Joanne | $750,000.00 |
| 2397 | Wojnarski, JoAnne, Personal Representative of the Estate of Jerry Willcockson, Deceased | $150,000.00 |

## SCHEDULE OF LIQUIDATED AMOUNTS

*Note that, in most cases, the Liquidated Amounts set forth below reflect the amounts asserted in the applicable proofs of claim. These amounts may be reduced by any resolution or adjudication of such proofs of claim.*

| Claim Number | Claimant | Liquidated Amount |
|---|---|---|
| 3100 | Wojnarski, JoAnne, Personal Representative of the Estate of Jerry Willcockson, Deceased | $150,000.00 |
| 3232 | Wolak, Steven, as Personal Representative of the Estate of Christopher Wolak, Deceased | $3,000,000.00 |
| 2552 | Wolf Jr., Cloyd | $50,000.00 |
| 1039 | Wolske, Michael Allen | $2,000,000.00 |
| 1603 | Woods, Jay | $210,750.00 |
| 2546 | Woody, John | $125,473.00 |
| 3340 | Wooten, Walter | $80,000.00 |
| 2231 | Worde, Mark | $200,000.00 |
| 128 | Wright, Anna c/o Leonard M. Koltonow | $430,000.00 |
| 116 | Xerox Corporation | $106,507.79 |
| 3010 | Yarborough, Shardaye, a Minor, by Her Mother and Next Friend Charmane Alvis | $250,000.00 |
| 3121 | Zyrron Demetric Collins | $100,000.00 |
| **TOTAL** | | **$967,107,874.39** |

**EXHIBIT 6.2**

## SCHEDULE OF WHOLLY UNLIQUIDATED LITIGATION
## CLAIMS SUBJECT TO TREATMENT IN CLASS 14 UNDER THE PLAN

| Claim Number | Claimant |
|---:|---|
| 2259 | Armstrong, Alexis |
| 1728 | Cannon, Vincent via his attorneys, Gursten, Koltonow, Gursten, Christensen & Raitt, P.C. |
| 2273 | Chambers, Theotrice |
| 124 | Charter Township of Plymouth |
| 2833 | Class Claimants |
| 2994 | Darrah, Lucinda J. |
| 1735 | Doe, K.S. |
| 866 | Fountain Court Consumer Housing Cooperative |
| 2931 | Johnson-woods, Linda |
| 2822 | Joliet Town Houses Cooperative Association |
| 2490 | Jones, Valine B/n/f Jones, Arnaz |
| 1631 | Kelly, Toyia Personal Rep of Estate of Kevin Ivie |
| 2863 | Lafayette Town Houses, Inc. |
| 2825 | Lasalle Town Houses Cooperative Association |
| 2264 | McCormick, Letha |
| 3426 | Miller, Kevin |
| 2706 | Moore Jr., David |
| 3428 | Moore, Jerome |
| 3798 | Murriel, Bridget |
| 3799 | Murriel, Bridget |
| 2828 | Nicolet Town Houses Cooperative Association |
| 3468 | Roseman, Mark and Luzater |
| 1624 | Soto, Daniel |
| 2823 | St. James Cooperative |
| 2268 | Stevenson, Kenyata |
| 2263 | Truelove, Omar |
| 323 | Whitaker, Mary |
| 1468 | Williams Jr., Ronald |

# EXHIBIT 6.3

## SCHEDULE OF PARTIALLY UNLIQUIDATED LITIGATION
## CLAIMS SUBJECT TO TREATMENT IN CLASS 14 UNDER THE PLAN

| Claim Number | Claimant |
|---:|---|
| 1135 | Albert, Randal |
| 201 | Beydoun, Michael & his attorney- Raymond Guzall III |
| 3667 | Brown, Johnathan (on behalf of himself and a class of others similarly situated) |
| 520 | Cato, John |
| 1131 | Farris, Branda |
| 1928 | Harris, Lord |
| 1160 | Jones, Elliot |
| 1133 | McLemore, Tangela |
| 141 | Mitchell, Vivian |
| 843 | Mosley, Shelia |
| 1740 | Oliver Jr., Bill |
| 3686 | Porter, Cedric |
| 1650 | Rasnick, Donald |
| 669 | Riggins, Robert |
| 2205 | Smith, Gretchin |
| 848 | Turner, Corey |
| 3787 | Williams, Estate of Lilian Joan |

**EXHIBIT 6.4**

CITY OF DETROIT
# PROPOSAL FOR CREDITORS

JUNE 14, 2013



CITY OF DETROIT
# PROPOSAL FOR CREDITORS

JUNE 14, 2013

This proposal is based on numerous projections and assumptions concerning future uncertain events including estimates of tax revenues and forecasts of future business and economic conditions in the city, all of which are beyond the control of the city. Actual results may differ from the assumptions and projections presented herein, and such differences could be material.

Additional data are being gathered or developed, and various critical financial and operational analyses remain in process. Thus, this proposal remains subject to material change.

# CONTENTS

DETROIT FACES STRONG ECONOMIC HEADWINDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

KEY OBJECTIVES FOR A FINANCIAL RESTRUCTURING AND REHABILITATION OF DETROIT . . . . . . .41

CURRENT FINANCIAL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

THE CITY HAS TAKEN ACTION TO ADDRESS ITS FINANCIAL CHALLENGES. . . . . . . . . . . . . . . . . . .53

RESTRUCTURING AND REINVESTING IN CITY GOVERNMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .61

REVENUE ADJUSTMENTS AND TAX REFORM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .79

REALIZATION OF VALUE OF ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .83

TEN-YEAR PROJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .90

RESTRUCTURING PROPOSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101

CEMENTING THE CITY'S RESTRUCTURING: DETROIT AFTER THE EMERGENCY MANAGER . . . . . .111

CALENDAR AND CONTACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .113

# THE CITY HAS TAKEN ACTION TO ADDRESS ITS FINANCIAL CHALLENGES

The City has already taken numerous steps to improve its financial position including expense savings and revenue increases. These initiatives save the City an estimated $200 million per year but they also impose substantial burdens on the City's workforce and residents.

**Headcount Reductions.**

- Since 2011, the City has reduced its headcount by more than 2,700 employees (from 12,302 employees as of close of FY 2010 to approximately 9,560 as of May 31, 2013).

- The City's headcount reductions have resulted in annual savings of over $100 million.

**Reductions of Labor Costs through Implementation of City Employment Terms.**

- On July 12, 2012, the Financial Advisory Board approved the CETs for (i) employees in unions with expired CBAs and (ii) nonunion employees, effective as of July 17, 2012.

- Among other things, the CETs provide for (i) wage reductions (implemented through imposition of furlough days); (ii) caps/reductions on vacation/holiday pay/overtime/sick days; (iii) the reduction of pension multipliers; and (iv) changes to healthcare coverage.

- Implementation of the CETs provides for an estimated $102 million in annual savings.

  - $25 million in savings attributable to wage reductions (24% of savings).

  - $59 million in savings attributable to reduced active and retiree benefits (59% of savings).

  - $9 million in savings attributable to reduced pension costs (9% of savings).

  - $8 million in savings attributable to changes to work rules (8% of savings).

## APPENDIX I — City Bargaining Units

| Category | Name of Bargaining Unit | Active CBA? | CBA Expiration | Subject to CETS? | No. of Employees Represented |
|---|---|---|---|---|---|
| Uniform | AFSCME - ESOs | Yes | 6/30/13 | No | 93 |
| | Detroit Fire Fighters Ass'n | Yes | 6/30/13 | No | 927 |
| | Detroit Police Command Officers Ass'n | | As of 9/30/12 | Yes | 24 |
| | Detroit Police Lieutenants and Sergeants Ass'n | Yes | 6/30/13 | No | 530 |
| | Detroit Police Officers Ass'n | | 6/30/12 | Yes | 1,991 |
| | Emergency Medical Service Officers Ass'n (EMS) | | As of 9/30/12 | Yes | 10 |
| | Police Officers Ass'n of Michigan (EMS) | | As of 9/30/12 | Yes | 187 |
| Coalition and other nonuniform | AFSCME Crossing Guards | | 6/30/12 | Yes | 157 |
| | AFSCME Forestry and Landscape Foreman | | 6/30/12 | Yes | 4 |
| | AFSCME Motor City Seasonals | | 6/30/12 | Yes | 240 |
| | AFSCME Non-Supervisory | | 6/30/12 | No | 1,656 |
| | AFSCME Paving Foreperson's | | 6/30/12 | Yes | 9 |
| | AFSCME Supervisory, Local 2394 | | 6/30/12 | Yes | 47 |
| | Assist. Supervisors of Street Maint. & Constr. | | 6/30/12 | Yes | 4 |
| | Ass'n of Munic. Engineers (Supervisors of ADE) | | 6/30/12 | Yes | 15 |
| | Ass'n of City of Detroit Supervisors | | 6/30/12 | Yes | 35 |
| | Ass'n of Detroit Engineers | | As of 9/30/12 | Yes | 82 |
| | Ass'n of Municipal Inspectors | | 6/30/12 | Yes | 12 |
| | Ass'n of Prof. & Technical Employees | | As of 9/30/12 | Yes | 102 |
| | Ass'n of Prof. Construction Inspectors | | 6/30/12 | Yes | 37 |
| | Building Construction Trades – Foreman | | 6/30/12 | Yes | 14 |
| | Building Construction Trades - Non-Supervisory | | 6/30/12 | Yes | 172 |
| | Building Construction Trades - Special Service | | 6/30/12 | Yes | 26 |
| | Buildings and Safety Inspectors – Tripartite | | 6/30/12 | Yes | 19 |
| | Detroit Income Tax Investigators Ass'n | | 6/30/12 | Yes | 15 |
| | Detroit License Investigators Ass'n | | 6/30/12 | Yes | 0 |
| | Field Engineers Ass'n | | 6/30/12 | Yes | 2 |

| Category | Name of Bargaining Unit | Active CBA? | CBA Expiration | Subject to CETS? | No. of Employees Represented |
|---|---|---|---|---|---|
| | International Union of Op. Engineers - Local 324 | | 9/30/12 | Yes | 27 |
| | Local 324 Park Management Ass'n | | 6/30/12 | Yes | 7 |
| | Local 324 Principal Clerks Unit | | 6/30/12 | Yes | 64 |
| | Police Officers Labor Council (Detroit Fac. Officers) | | 6/30/12 | Yes | 9 |
| | Police Officers Labor Council (Health Department) | | 6/30/12 | Yes | 1 |
| | SEIU Local 517M - Non-Supervisory | | 6/30/12 | Yes | 5 |
| | SEIU Local 517M – Prof. & Tech. Unit | | 6/30/12 | Yes | 22 |
| | SEIU Local 517M - Supervisory | | 6/30/12 | Yes | 11 |
| | Senior Accountants, Analysts & Appraisers | | 6/30/12 | Yes | 141 |
| | Teamsters, Local 214 | | 6/30/12 | Yes | 430 |
| | UAW Local 212 (Civilian Police Investigators) | | 6/30/12 | Yes | 14 |
| | UAW Local 2211 (Public Attorneys Ass'n) | | 6/30/12 | Yes | 37 |
| | UAW Local 412-Unit 86 (Law Dep't Paralegals) | | 6/30/12 | Yes | 8 |
| 13(c) protected employees | AFSCME Non-supervisory Locals 214 & 312 | | 6/30/12 | No | 317 |
| | Amalgamated Transit Union (ATU) | | 6/30/12 | No | 622 |
| | Building Construction Trades – Non-supervisory | | 6/30/12 | No | 4 |
| | DOT Foreman's Ass'n | | 6/30/12 | No | 6 |
| | International Union of Op. Engineers | | 9/30/12 | No | 2 |
| | Supervisor Chapter of DOT Foreman's Ass'n | | 6/30/12 | No | 24 |
| | Teamsters, Local 214 | | 6/30/12 | No | 9 |
| **Total** | | | | | **8,270** |

**EXHIBIT 6.5**

# SCHEDULE OF EMPLOYEE BENEFIT CLAIMS

| Claim Number | Claimant |
|---|---|
| 3206 | Association of Detroit Engineers (ADE) |
| 3125 | Association Of Municipal Engineers (AME) |
| 3337 | Belk, Shawn M. |
| 2704 | Benson, Terryton |
| 3522 | Bolton, Dinah L |
| 3339 | Braziel, Karen |
| 1805 | Brown, Ruffell |
| 3332 | Buford, Darlena |
| 3305 | Canty, Darryl |
| 1386 | Carey, Anthony |
| 3329 | Coleman, Valeria Davis |
| 2040 | Corker, Katherine |
| 3486 | Detroit Fire Fighters Association, IAFF Local 344 |
| 1884 | Detroit Police Command Officers Association (DPCOA) |
| 3777 | Detroit Police Command Officers Association (DPCOA) |
| 1861 | Detroit Police Lieutenants and Sergeants Association (DPLSA) |
| 1864 | Detroit Police Officers Association (DPOA) |
| 3335 | Dolley, Charnell L. |
| 2031 | Estes, Dominica |
| 3449 | Fayson, Eulie Lamar |
| 1990 | Garza, Kimberley A. |
| 2615 | Gray, Michael A |
| 2616 | Gray, Michael A |
| 1896 | Green, Deirdre |
| 1932 | Grice, Linda |
| 2596 | Hayes, Michael V. |
| 2604 | Hayes, Michael V. |
| 2042 | Jackson, Vernell |
| 3488 | Jenkins, Pamela D. |
| 3382 | Johnson, Randy |
| 1817 | Jordan, Sharon K. |
| 2583 | King, Aaron |
| 3191 | Koch, David G. |
| 1457 | Kwilas, Christopher E. |
| 2462 | Martin, Debra A. |
| 3282 | McGore, Sarina |
| 2471 | McKinney, Edgar |
| 2575 | Moore, Michelle |
| 2576 | Moore, Michelle |
| 3413 | Parker Jr., James E |
| 3353 | Patterson, Cynthia |
| 1784 | Poe, Cassandra E. |
| 1676 | Pratt, Michelle A. |
| 2829 | Rubio, Maria Elena |
| 2830 | Rubio, Maria Elena |
| 2832 | Rubio, Maria Elena |
| 2834 | Rubio, Maria Elena |
| 2425 | Sanitary Chemists and Technicians Association (SCATA) |
| 1776 | Scaife, Thelma |
| 3366 | Scott, Reginald |
| 2935 | Senior Accountants, Analysts, and Appraisers Association (SAAA) |
| 1972 | Shelton, Dewitt |
| 1293 | Spencer, Jerry E. |
| 2623 | Stewart, Carine M. |
| 2643 | Stewart, Carine M. |
| 2094 | Stewart, LaNeta |
| 2041 | Taylor, Tamara |

## SCHEDULE OF EMPLOYEE BENEFIT CLAIMS

| Claim Number | Claimant |
|---|---|
| 2760 | Whitfield II, Bruce A. |
| 3340 | Wooten, Walter |
| 2231 | Worde, Mark |

# **EXHIBIT 6.6**

# SCHEDULE OF RECLASSIFICATION CLAIMS

| Claim Number | Claimant | Claim Amount |
|---|---|---|
| 1171 | Assured Guaranty Corp | Unliquidated |
| 1169 | Assured Guaranty Municipal Corp. | $2,037,867.00 |
| 2970 | Dexia Credit Local | $255,000,000.00 |
| 3592 | Fitzgerald, Susan | $50,000.00 |
| 806 | Michigan Economic Dev Corp | $402,438.92 |
| 807 | Michigan Economic Dev Corp | $5,081,780.82 |
| 808 | Michigan Economic Dev Corp | $2,000,000.00 |
| 3508 | Morreale, Jerome | $5,000.00 |
| 3652 | Murowski, Marie C  & Andrea Murowski JT | $45,000.00 |
| 3496 | Salgado-Galicia, Hector J. | $8,695.00 |
| 3690 | Shaw, James G. | $50,000.00 |
| 3714 | United States Department of Housing and Urban Development | $1,837,217.00 |
| 3716 | United States Department of Housing and Urban Development | $10,371,138.25 |
| 3655 | Westerbeck, Kent | $30,000.00 |
| 1138 | Wilmington Trust, National Association, as successor Contract Administrator | $803,702,214.66 |