**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re | Chapter 9 |
| CITY OF DETROIT, MICHIGAN, | Case No. 13-53846 |
| Debtor. | Hon. Thomas J. Tucker |

DETROIT POLICE LIEUTENANTS
AND SERGEANTS ASSOCIATION,

        Plaintiff,                                Adv. Case No._____

v.

CITY OF DETROIT, MICHIGAN

        Respondent/Defendant.

## NOTICE OF REMOVAL

       Pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027, the City of Detroit ("City") removes *Detroit Police Lieutenants and Sergeants Association v. City of Detroit* ("MERC Case"), from the Michigan Employment Relations Commission, Labor Relations Division, to the Bankruptcy Court. Pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1), copies of all process and pleadings in the MERC Case are attached as Exhibit 1 to this Notice. In the MERC Case, the Detroit Police Lieutenants and Sergeants Association seek, among other things, an order "directing the City to cease and desist from refusing to allow retired spouses of active DPLSA members to participate in the active medical plan; notice posting; a make-whole provision; an award of litigation expenses; and such other relief as it finds just and proper in this case." Ex. 1, Charge at 3.

The MERC Case thus qualifies for removal under 28 U.S.C. § 1452(a) because it is a civil action that is neither "a proceeding before the United States Tax Court" nor "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." Removal is timely under Federal Rule of Bankruptcy Procedure 9027(a)(3). The Bankruptcy Court has jurisdiction over the claims alleged in the MERC Case pursuant to 28 U.S.C. § 1334, Article VII of the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan"), and the Order confirming the Plan. [Doc. Nos. 8045 & 8272]. The MERC Case is a core proceeding under 28 U.S.C. § 157(b)(2).

Respectfully submitted,

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
swanson@millercanfield.com
green@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY

Dated: March 5, 2015



# CHARGE

Authority: P.A. 380 of 1965, as amended.

Michigan Department of Licensing and Regulatory Affairs
Employment Relations Commission (MERC)
Labor Relations Division
313-456-3510

**INSTRUCTIONS:** File an original and 4 copies of this charge (including attachments) with the Employment Relations Commission at: Cadillac Place, 3026 W. Grand Boulevard, Suite 2-750, PO Box 02988, Detroit MI 48202-2988 or 611 W. Ottawa St, 2nd Floor, PO Box 30015, Lansing, MI 48909. The Charging Party must serve the Charge on the opposing side within the applicable statute of limitations, and must file a statement of service with MERC.
*(Refer to the "How to File a Charge" document under the "Forms" link at www.michigan.gov/merc.)*

Complete Section 1 if you are filing charges against an employer and/or its agents and representatives. —or—
Complete Section 2 if you are filing charges against a labor organization and/or its agents and representatives.

| 1. EMPLOYER AGAINST WHICH THE CHARGE IS BROUGHT | Check appropriate box: ☐ Private ☑ Governmental |
|---|---|

Name and Address:

City of Detroit
Attn: Michael Hall, Director Human Resources and Labor Relations
Coleman A. Young Municipal Center
2 Woodward Avenue, Suite 316
Detroit, Michigan 48226

**2. LABOR ORGANIZATION AGAINST WHICH THE CHARGE IS BROUGHT**

Name and Address:

**RECEIVED**

FEB 0 3 2015

CITY OF DETROIT
LABOR RELATIONS DIVISION

**3. CHARGE**

Pursuant to the Labor Mediation Act (LMA) or Public Employment Relations Act (PERA) *(cross out one)*, the undersigned charges that the above-named party has engaged in or is engaging in unfair labor practices within the meaning of the Act.

**On an attached sheet** you must provide a clear and concise statement of the facts which allege a violation of the LMA or PERA, including the date of occurrence of each particular act and the names of the agents of the charged party who engaged in the complained of conduct. The charge should describe who did what and when they did it, and **briefly** explain why such actions constitute a violation of the LMA or PERA.

The Commission may reject a charge for failure to include the required information. However, it is not necessary to present your case in full at this time. Documentary material and exhibits ordinarily **should not** be submitted with this charge form.

| 4. Name and Address of Party Filing Charge (Charging Party)<br>(if labor organization, give full name, including local name and number)<br><br>**Detroit Police Lieutenants and Sergeants Association** | Telephone Number:<br><br>( 313 ) 961-5990 |
|---|---|

5. List ALL related MERC case(s) (if any): None

(Name of parties)

Case No.:_____ Judge:_____
Case No.:_____ Judge:_____

| I have read this charge and it is true to the best of my knowledge and belief.<br><br>Signature of Representative/Person Filing Charge | Email:<br>psudnick@sudnicklaw.com<br>Telephone/Cell No.:<br>(248) 643-8533<br>Fax No.:<br>(248) 643-0417 |
|---|---|
| Print Name and Title:<br>Peter P. Sudnick, Attorney for DPLSA | |
| Street Address:<br>2555 Crooks Road, Suite 150 | City: Troy | State: MI | Zip Code: 48084 |

The Department of Licensing and Regulatory Affairs will not discriminate against any individual or group because of race, sex, religion, age, national origin, color, marital status, disability, or political beliefs. If you need assistance with reading, writing, hearing, etc., under the Americans with Disabilities Act, you may make your needs known to this agency.

BER_____ (5/27)

# CHARGE

The Charging Party, Detroit Police Lieutenants and Sergeants Association ("DPLSA"), alleges a violation of Sections 10(1)(e) and (a) of the Public Employment Relations Act, MCL 423.201 et seq., stating as follows:

1. The DPLSA is the exclusive bargaining representative for employees of the City of Detroit ("City") in the classifications of Detective, Police Investigator, Police Sergeant, Police Sergeant-Promotion List, Senior Communications Officer-Police Sergeant, Senior Radio Maintenance Officer-Police Sergeant, Police Sergeant-Chemist, Master Sergeant, Police Lieutenant, Supervisor of Radio Systems and Planning-Police Lieutenant, Supervisor of Operations-Police Lieutenant, Supervisor of Radio Maintenance-Police Lieutenant, and Supervisor of Firearms Identification and Explosives-Police Lieutenant.

2. The City is an employer as defined under Section 2(f) of the Labor Mediation Act, MCL 423.1 et seq., and as used in Section 10(1) of the Public Employment Relations Act, MCL 423.201 et seq.

3. On November 6, 2014, the City and DPLSA executed a collective bargaining agreement ("Agreement") which was incorporated into the Chapter 9 City of Detroit Plan of Adjustment in U.S. Bankruptcy Court Case No. 13-53846. The Agreement was duly authorized and approved by the State Treasurer and City of Detroit Emergency Manager and continues in full force and effect through June 30, 2019 [Exhibit 1].

4. Under Article VII, paragraph B, of the Eighth Amended Plan of Adjustment of Debts of the City of Detroit ("Plan"), U.S. Bankruptcy Court, Eastern District of Michigan, Chapter 9 Case No. 13-53846, that addresses the Retention of Jurisdiction of the Bankruptcy Court, the enforcement, interpretation, and resolution of disputes of the terms of the contracts [collective bargaining agreements identified on Exhibit II. D. 5 of the Plan, including the Agreement between the City and DPLSA] shall proceed under applicable state law [Exhibit 2].

5. Article 43 of the Agreement between the City and DPLSA [Medical Insurance, and Optical Care] states that covered active employees will be eligible to participate in the group medical, prescription drug, dental and vision plans ("Medical Plans") as described in the City's 2014 medical plan designs for the term of the Agreement.

6. In accordance with the terms of Article 43, paragraph B of the Agreement, eligible active employees are entitled to select the coverage tier under the Medical Plans, i.e., single, two-person or family coverage. The two-person and family coverage tiers include the spouse of the active employee. During the applicable enrollment period, active employees list the persons included in the two-person and family coverage tiers, including the spouse of the active employee.

7. The plain terms of the executed Agreement covering active DPLSA members permits the eligible active member to select a coverage tier that includes the spouse of the active member without restriction. The participation of the spouse of the active DPLSA member under either the

two-person or family tier coverage is an unrestricted contractual right that inures to the benefit of the active DPLSA member.

8. The medical benefits language of the DPLSA Agreement does not contain any language that denies or restricts an active DPLSA member from including his or her spouse under the two-person or family medical coverage. Neither Article 43 nor any other provision of the Agreement permits the City to deny coverage under the active medical plan to a spouse of an active DPLSA member because the spouse is a retiree of the City.

9. Notwithstanding the plain language of Article 43 of the Agreement, the City has unilaterally and arbitrarily, without the consent or agreement of the DPLSA, notified spouses of active DPLSA members who are retirees of the City that they will no longer be eligible for medical coverage under the active member plan and that their medical coverage will terminate effective February 1, 2015 [Exhibit 4].

10. The City has refused to rescind the notices terminating the medical coverage of retired spouses of active DPLSA members.

11. The action of the City terminating the medical coverage of retired spouses of active DPLSA members amounts to a repudiation of the DPLSA Agreement as it pertains to active medical coverage and constitutes a violation o f Sections 10(1)(a) and (e) of the Public Employment Relations Act, MCL 423. 210(1)(a) and (e).

12. The action of the City terminating the medical coverage of retired spouses of active DPLSA members is causing immediate and irreparable harm in that spouses wrongfully denied participation in active medical coverage are without the means to obtain replacement coverage in order to secure necessary medical care and treatment. In some cases, health care and medical treatment can only be obtained at considerable cost creating undue financial and medical hardship on the families of active DPLSA members.

**WHEREFORE,** the Charging Party, Detroit Police Lieutenants and Sergeants Association, respectfully requests that the Commission:

(1)   Compel the Respondent City to answer the Charge;

(2)   Schedule an immediate hearing in this matter;

(3)   Petition the Circuit Court for the 3rd Judicial Circuit, Wayne County, Michigan, for a preliminary injunction or temporary restraining order in aid of the Commission's jurisdiction enjoining the City from terminating the medical coverage of retired spouses of active DPLSA members until the Commission can conduct a hearing on the charge and issue a final order in this case;

(4)   Sustain the Charge in its entirety;

(5)     Fashion an appropriate remedial order to include directing the City to cease and desist from refusing to allow retired spouses of active DPLSA members to participate in the active medical plan; notice posting; a make-whole provision; an award of litigation expenses; and such other relief as it finds just and proper in this case.

# EXHIBIT 1

## 56. EFFECTIVE DATES/DURATION

This Agreement shall be effective and binding on the Union and the City upon the approval of the Treasurer of the State of Michigan ("Effective Date") and shall continue in full force and effect through June 30, 2019 (the "Term"). This Agreement, including the Term, shall be incorporated into and become a part of both the plan of adjustment and order confirming the plan of adjustment, and the Agreement shall be subject to the post-confirmation ongoing jurisdiction of the Bankruptcy Court for the full Term, including without limitation, whatever jurisdiction the Bankruptcy Court's retains to enforce the Term. This Agreement, including specifically, the Term, shall be duly authorized and approved by and consented to by the State Treasurer and the Emergency Manager, with these consents reflected by duly authorized signatures.

If either party desires to modify this Agreement, it may give written notice to the other party during the month of March 2019.

In the event that the Department and the Association fail to arrive at an agreement on wages, fringe benefits, other monetary matters, and non-economic items by June 30, 2019, this Agreement will remain in effect on a day-to-day basis. Either party may terminate this Agreement by giving the other party a ten (10) day written notice on or after June 30, 2019.

IN WITNESS WHEREOF, the parties hereto have executed this

Agreement on this _6_ day of November 2014.

DETROIT POLICE LIEUTENANTS
AND SERGEANTS ASSOCIATION:

Mark Young, President

Rodney Sizemore, Vice President

Brian Harris, Secretary-Treasurer

John F. Kennedy, Sergeant-at-Arms

CITY OF DETROIT:

Michael E. Duggan, Mayor

Kevyn Orr, Emergency Manager

Michael A. Hall, Director of Labor Relations

James Craig, Chief of Police

Office of the State Treasurer, Michigan

CHI-1904260v18                    61

# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

```
-------------------------------------------------- x
                                                   :
In re                                              :        Chapter 9
                                                   :
CITY OF DETROIT, MICHIGAN,                          :        Case No. 13-53846
                                                   :
                Debtor.                            :        Hon. Steven W. Rhodes
                                                   :
                                                   :
-------------------------------------------------- x
```

---

### EIGHTH AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT
#### (October 22, 2014)

---

DAVID G. HEIMAN
HEATHER LENNOX
THOMAS A. WILSON
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

BRUCE BENNETT
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
bbennett@jonesday.com

JONATHAN S. GREEN
STEPHEN S. LAPLANTE
MILLER, CANFIELD,
    PADDOCK AND STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE DEBTOR

entitled to under the Plan on account of such Allowed Claim had such Claim been Allowed as of the Effective Date. If a Disputed Claim is disallowed by Final Order, the property reserved on account shall become available for Distribution to the Holders of Allowed Claims within the Class(es) entitled to receive such property. Each Holder of a Disputed Claim that ultimately becomes an Allowed Claim will have recourse only to the assets held in the disputed claims reserve and not to any other assets held by the City, its property or any property previously distributed on account of any Allowed Claim.

## C. Objections to Claims.

### 1. Authority to Prosecute, Settle and Compromise.

The City's rights to object to, oppose and defend against all Claims on any basis are fully preserved. As of the Effective Date, only the City shall have the authority to File, settle, compromise, withdraw or litigate to judgment objections to Claims, including pursuant to the ADR Procedures or any similar procedures approved by the Bankruptcy Court. Any objections to Claims shall be Filed no later than the Claims Objection Bar Date. On and after the Effective Date, the City may settle or compromise any Disputed Claim or any objection or controversy relating to any Claim without any further notice or any action, order or approval of the Bankruptcy Court.

### 2. Expungement or Adjustment of Claims Without Objection.

Any Claim that has been paid, satisfied or superseded shall be expunged from the Claims Register by the Claims and Balloting Agent at the request of the City, and any Claim that has been amended by the Holder of such Claim shall be adjusted on the Claims Register by the Claims and Balloting Agent at the request of the City, without the Filing of an objection and without any further notice or any action, order or approval of the Bankruptcy Court.

### 3. Extension of Claims Objection Bar Date.

Upon motion by the City to the Bankruptcy Court, the City may request, and the Bankruptcy Court may grant, an extension to the Claims Objection Bar Date generally or with respect to specific Claims. Any extension granted by the Bankruptcy Court shall not be considered to be a modification to the Plan under section 1127 of the Bankruptcy Code.

### 4. Authority to Amend List of Creditors.

The City will have the authority to amend the List of Creditors with respect to any Claim and to make Distributions based on such amended List of Creditors without approval of the Bankruptcy Court. If any such amendment to the List of Creditors reduces the amount of a Claim or changes the nature or priority of a Claim, the City will provide the Holder of such Claim with notice of such amendment and such Holder will have 20 days to File an objection to such amendment with the Bankruptcy Court. If no such objection is Filed, the Disbursing Agent may proceed with Distributions based on such amended List of Creditors without approval of the Bankruptcy Court.

## ARTICLE VII
## RETENTION OF JURISDICTION

Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A. Allow, disallow, estimate, determine, liquidate, reduce, classify, re-classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the amount, allowance, priority or classification of Claims;

-69-

13-53846-swr   Doc 8045   Filed 10/22/14   Entered 10/22/14 03:48:29   Page 76 of 82
13-53846-tjt   Doc 9368   Filed 03/05/15   Entered 03/05/15 11:59:10   Page 12 of 22

B. Confirm the maturity date and the terms as written of the collective bargaining agreements identified on Exhibit II.D.5 of the Plan, which agreements are incorporated as part of the Plan (it being understood that the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law);

C. Resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease and to hear, determine and, if necessary, liquidate any Claims arising therefrom, including claims for payment of any cure amount;

D. Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

E. Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the City that may be pending on the Effective Date or brought thereafter;

F. Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G. Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

H. Approve any modification of the Plan or approve any modification of the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any order, the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or enter any order in aid of confirmation pursuant to sections 945 and 1142(b) of the Bankruptcy Code, in such manner as may be necessary or appropriate to consummate the Plan;

I. Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

J. Adjudicate, decide or resolve any matters relating to the City's compliance with the Plan and the Confirmation Order consistent with section 945 of the Bankruptcy Code;

K. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or Distributions pursuant to the Plan are enjoined or stayed;

L. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

M. Resolve any matters, cases, controversies, suits or disputes that may arise in connection with the FGIC Development Agreement;

N. Resolve any matters, cases, controversies, suits or disputes that may arise in connection with the Syncora Development Agreement

O. Enforce or clarify any orders previously entered by the Bankruptcy Court in the Chapter 9 Case;

-70-

# EXHIBIT 3

## 41. UNIFORMS

A.     Employees shall continue to be provided with uniforms and accessories in accordance with present practice.

B.     Employees shall receive an annual uniform cleaning allowance of two hundred and fifty dollars ($250) per year payable the first payroll period each fiscal year.

C.     The Department will no longer issue replacement uniforms and accessories. Employees will instead receive a uniform allowance of eight hundred and fifty dollars ($850) annually for the procurement and maintenance of all of the member's required uniforms and accessories. The Employee shall be responsible for procuring uniforms and equipment according to Department specifications. This allowance shall not include maintenance and procurement of bulletproof vests or other specialty equipment, which the Department shall continue to procure and issue directly to the Employees. Employees shall continue to receive the annual two hundred and fifty dollar ($250) cleaning allowance. These allowances shall continue to be payable the first payroll period each fiscal year.

## 42. COPIES OF AGREEMENT

The City agrees to furnish the Association with an electronic copy of this Agreement and 100 paper copies of this Agreement.

## 43. HOSPITALIZATION, MEDICAL INSURANCE AND OPTICAL CARE

A.     During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("Medical Plans") offered by the City. Unless the parties mutually agree otherwise, the City's 2014 medical plan designs ("Medical Plan Designs") will remain in place during the term of this Agreement. For purposes of this Section, the term Medical Plan Design will collectively refer to deductibles, co-payments, covered services, networks, and third party administrators or insurers.

1.     Notwithstanding this section A, the City will promptly analyze providing ScriptGuideRx, Inc. as a pharmacy benefits manager ("PBM") for the self-insured PPO option provided to police and firefighter active employees who enroll for health insurance. The City agrees to include ScriptGuide as a PBM for its self-insured option for active police and firefighter enrollees if (i) the City concludes - in its sole discretion - that ScriptGuide can be provided on a cost neutral or lower cost basis for the City relative to the continued use of Caremark during its first contract year of use and the Contract term, and (ii) following an analysis by the City respecting ScriptGuide's applicable managed formulary, generic utilization, network and co-payment structure, and sharing of that analysis and discussion with the Association, the DPLSA approves the City's use of ScriptGuide as the PBM for its self-insured option for DPLSA, even if the co-pay structure for generic, brand or specialty prescription drugs necessary for cost

CHI-1904260v18

neutrality requires higher active employee co-pays for certain forms of prescription drugs. Notwithstanding the above, the City agrees prior to any final determination, that it will meet and confer with the DPLSA to discuss its findings. The City shall determine whether ScriptGuide will be cost neutral or lower prescription drug costs based on the cost for the entire active population. If ScriptGuide is substituted for Caremark, any savings resulting therefore will be determined and distributed in accordance with Section J(1)(b) of this Article.

B.    Employees will be required to make monthly contributions for their benefits based upon the plan and coverage tier selected by the Employee. Monthly contributions will be deducted from Employee payroll disbursements on a pre-tax basis (if authorized by the employee), in accordance with applicable law.

1.    For calendar year 2014, Employees' monthly contributions under the City's Medical Plans will remain at the levels in place as of the Effective Date of this Agreement.

2.    For subsequent calendar years during the term of this Agreement, Employees' monthly contributions under the City's Medical Plans will be adjusted annually to the level necessary to maintain an 80/20 proportional share of the cost of the medical coverage, subject to the terms and conditions and limitations set forth in this Article. Under this cost sharing arrangement, the City will pay eighty percent (80%) of the costs of each coverage tier in the City's Medical Plans, and Employees participating in each coverage tier will pay twenty percent (20%) of the costs for such coverage tier. Premiums will be calculated as follows:

a.    For the Health Alliance Plan ("HAP") health maintenance organization ("HMO") plan, a participating Employee will pay 20% of the premium charged by HAP for his/her coverage tier. Such premiums will be established by HAP, subject to confirmation by an independent enrolled actuary retained by the City ("Enrolled Actuary").

b.    For the Blue Cross/Blue Shield ("BCBS") preferred provider organization ("PPO") plan, monthly contributions will be set such that Employees in each coverage tier collectively pay twenty (20%) of the costs for that coverage tier. Such monthly contributions will be calculated by the Enrolled Actuary. Monthly contributions will be calculated in accordance with generally accepted actuarial principles, and will take into account claims experience from the prior fiscal year, inflation, actual and anticipated administrative costs, actual and anticipated fees and surcharges (including those associated with compliance with the Patient Protection and Affordable Care Act ("ACA")), and any other relevant costs or factors as determined by the Enrolled Actuary.

C.    C.O.P.S. Health Trust: For calendar year 2015 and for subsequent calendar years during the term of this Agreement, Employees may elect to participate in medical benefit plans

offered by C.O.P.S. Health Trust ("COPS Trust") in lieu of the City's Medical Plans subject to the following conditions:

1. An Employee who participates in COPS Trust may not concurrently participate in any City Medical Plan.

2. For each Employee who elects to be covered by COPS Trust, the City will make a monthly contribution to COPS Trust that is equal to the lesser of (a) the City's *pro rata* contribution under the HAP Plan in the corresponding coverage tier (*e.g.* single, two person, family) or (b) the City's *pro rata* contribution under the BCBS Plan for the corresponding coverage tier. Under no circumstances will the City's monthly contribution to COPS Trust exceed the City's monthly contribution for coverage under the lowest cost City plan for the applicable coverage tier.

3. The City will have no obligations in connection with COPS Trust other than to make the payments described in this Section C. Specifically, the City will not have any administrative involvement whatsoever in connection with employee participation in COPS Trust, and any employee participating in COPS Trust will be responsible for paying any additional monthly premium payments beyond the City's monthly contribution pursuant to Section C.2 of this Article directly to COPS Trust. Under no circumstances will the City be deemed to be an administrator or fiduciary with respect to any medical plans provided by COPS Trust.

4. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee participation in COPS Trust, any medical plans offered by COPS Trust, including but not limited to any claims for benefits provided to, or denied, City employees by COPS Trust, as well as any and all claims that are in any way related to any acts or omissions by COPS Trust, or its officers, directors, trustees, employees, or agents.

D. VSP: For calendar year 2015 and for subsequent calendar years during the term of this Agreement, Employees may elect to participate in vision benefit plans offered by VSP in lieu of the City's vision plan subject to the following conditions:

1. An Employee who participates in VSP may not concurrently participate in any City vision plan.

2. For each Employee who elects to be covered by VSP, the City will make a monthly contribution to VSP that is equal to the the City's *pro rata* contribution under the Heritage vision plan in the corresponding coverage tier (*e.g.* single, two person, family). Under no circumstances will the City's monthly contribution to VSP exceed the City's monthly contribution for coverage under the lowest cost City plan for the applicable coverage tier.

3. The City will have no obligations in connection with VSP other than to make the payments described in this Section C. Specifically, the City will not have any administrative involvement whatsoever in connection with employee participation in VSP, and any employee participating in VSP will be responsible for paying any additional monthly premium payments beyond the City's monthly contribution pursuant to Section C.2 of this Article directly to VSP. Under no circumstances will the City be deemed to be an administrator or fiduciary with respect to any medical plans provided by VSP.

4. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee participation in VSP, any vision plans offered by VSP, including but not limited to any claims for benefits provided to, or denied, City employees by VSP, as well as any and all claims that are in any way related to any acts or omissions by VSP, or its officers, directors, trustees, employees, or agents

E. Except as provided in this Article, the extent of coverage under the City's Medical Plans will be governed by the terms and conditions set forth in the applicable Medical Plans offered by the City during the term of this Agreement. Plan documents may be modified or amended by the City from time to time in accordance with the terms of the applicable plan documents, provided that such amendments do not violate the terms of this Article. Any questions or disputes concerning any City Medical Plans will be resolved in accordance with the terms and conditions set forth in the applicable insurance policies or plan documents and will not be subject to the Grievance & Arbitration Procedures set forth in Articles 8 and 9 of this Agreement.

F. The failure of any insurance carrier(s), PBM, or plan administrator(s) to provide any benefit for which it has contracted or is obligated will not result in any liability to the City, nor will such failure be considered a breach by the City of any obligation undertaken under this or any other Agreement. However, nothing in this Agreement will be construed to relieve any insurance carrier(s) or plan administrator(s) from any liability it may have to bargaining unit Employees or beneficiaries of bargaining unit Employees.

G. Except as set forth in this Article, during the term of this Agreement, the City Medical Plans will provide benefits with an actuarial value as determined by the Enrolled Actuary that are at the "Gold" level (i.e., approximate actuarial value of 80%), as defined by the ACA. In the event that the actuarial value of a City Medical Plan's benefits falls below the "Gold" level as determined by the Enrolled Actuary during the term of the Agreement, the City will meet and confer with the Union to discuss potential modifications to the Medical Plan during the subsequent plan year to raise the actuarial value of the benefits to the "Gold" level.

H. Notwithstanding any provision in this Article that could be construed to the contrary, this Article will not be construed to require the City to fall out of compliance with the requirements Public Act 152 of 2011 ("PA 152"), MCL § 15.561 et. seq. The City's

CHI-1901260v18
34

Enrolled Actuary will be responsible for periodically monitoring compliance with the requirements of PA 152. In any event where the Enrolled Actuary determines that the City is reasonably likely to fall out of compliance with PA 152, the City will meet and confer with the Union for a period not longer than thirty (30) days in order to discuss potential modifications to the terms of the Medical Plans or to the allocation of premium payments by the City and the Employees. To the extent the City and the Union are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 152.

I.     Surviving Spouses/Dependents.     Current and future spouses and dependents of bargaining unit employees who are killed in the line of duty will be eligible to continue to participate in the City's Hospitalization, Medical Insurance, Optical and Dental care plans on the same terms and conditions as active bargaining unit members.

J.     Retiree Medical Benefits.

     1.     Retiree Medical Subsidy. The City will contribute the following amounts towards the cost of retiree health benefits for Eligible Retirees (the "Retiree Medical Subsidy"):

          a.     On or before January 31, 2015 (and each subsequent January 31 during the term of this Agreement), the City will contribute a total sum of one million dollars and no cents ($1,000,000.00) to the COPS Trust VEBA to fund retiree medical benefits for City of Detroit employees (and Eligible Retirees) in the bargaining units represented by the DPLSA, the Detroit Fire Fighters Association (DFFA), the Detroit Police Command Officers Association (DPCOA), and the Detroit Police Officers Association (DPOA) (collectively, the "Public Safety Unions"). The amount contributed on behalf of the DPLSA will be determined by: (a) dividing the total DPLSA bargaining unit headcount as of July 1, 2014, by (b) the total active employee headcount in the four Public Safety Unions as of July 1, 2014, and then (c) multiplying the quotient by $1,000,000.00 (DPLSA headcount ÷ total Public Safety Union headcount) × $1,000,000.00).

          b.     In addition, if, pursuant to the May 5, 2014 Term Sheet, ScriptGuide is substituted for Caremark for DPLSA employees in connection with the self-insured PPO option, no later than 90 days after the close of a calendar year, the City shall direct an independent third party prescription drug audit specialist of the City's choosing-- which may include Remedy Analytics or Trivantage Pharmacy Strategies LLC -- to conduct a PBM pricing audit. The audit specialist shall obtain individual prescription drug claim data and pricing data from ScriptGuide, and a reasonable sampling of similar data from the City employee population that is covered by Caremark, and shall examine the contract provisions and actual pricing application and compare such data. Based on such information and other relevant information as the audit specialist determines, the audit specialist

shall then determine in its sole discretion the extent of the cost savings to the City from using ScriptGuide in comparison to Caremark. The third party audit specialist's determination shall be binding and the union shall not be able to grieve, arbitrate, mediate or otherwise litigate that determination. Any cost savings determined by the third party specialist shall be split 50-50 between the City and the covered employees in the following manner; An amount equal to 50% of the cost savings shall be applied in the year following the determination to retiree health benefits for DPLSA active members.

c.  Any foundation money available to fund medical benefits for Public Safety Union retirees shall also be contributed to the COPS Trust VEBA.

2.  No Additional Liability. Other than the Retiree Medical Subsidy, the City shall not be required to pay any additional amounts including, but not limited to start-up costs, to the COPS Trust VEBA, or to pay any other sums (including but not limited to administration expenses), in connection with retiree health coverage for Eligible Retirees during the term of the Agreement. Moreover, the parties agree that COPS Trust shall have sole responsibility for maintaining and investing all funds contributed by the City pursuant to this Article 43, Section J, and shall be solely responsible for determining the benefit design and form, amount, and timing of all benefit payments to Eligible Retirees pursuant to this Agreement, and COPS Trust shall have sole responsibility to ensure that all of COPS Trust's acts or omissions with respect to the provision of benefits to Eligible Retirees comply with applicable law. As such, other than its obligation to timely pay the Retiree Medical Subsidy, the City shall have no responsibility and shall face no liability to any party with respect to the provision of benefits to Eligible Retirees pursuant to Article 43, Section J.

3.  Indemnification. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with employee or Eligible Retiree participation in the COPS Trust VEBA, including but not limited to any claims for benefits provided to, or denied, City employees or Eligible Retirees (or their spouses or dependents) by the COPS Trust VEBA, as well as any and all claims by other persons that are in any way related to any acts or omissions by the COPS Trust VEBA, or its officers, directors, trustees, employees, or agents.

4.  Eligibility. Employees who retire on or before December 31, 2014 shall participate in the OPEB settlement available to existing retirees in accordance with the Plan of Adjustment in In re City of Detroit, Case No. 13-53846. Employees who retire and receive pension benefits from the PFRS on or after January 1, 2015 ("Eligible Retirees") shall be eligible for retiree health care benefits from the COPS Trust VEBA as determined by such VEBA and as set forth herein.

# EXHIBIT 4

**City of Detroit**
**Benefits Administration Office**
**2 Woodward Room 304, Detroit, MI 48206**

## CONFIRMATION NOTICE OF HEALTH/DENTAL/VISION CARE COVERAGE CHANGE

January 8, 2015

Dan Headapohl
52507 Robins Nest
Chesterfield, MI 48047

Dear Dan Headapohl,

This notice is to inform you that the City of Detroit's Benefits Administration Office has conducted an audit and our records indicate that you are a retiree of the City of Detroit and that you are enrolled in an active City of Detroit employee medical plan. As a retiree of the City of Detroit, you are not eligible to be enrolled on the City's active medical plan. The Benefits Administration Office's records indicate that you are however eligible for the Non Medicare Eligible Stipend offered to the City retirees. Therefore, your medical coverage on the City of Detroit's active medical plan will terminate effective 2/1/2015 and will be replaced by the aforementioned stipend you are eligible for. Please keep this notice for your records.

**Reason for the change:**
- ☐ Retiree's request.
- x Audit
- ☐ Failure to provide appropriate documentation.
- ☐ Not Eligible for active City of Detroit medical coverage
- ☐ Enrollment into Medicare Parts A & B effective
- ☐ Disenrollment from Medicare Parts A and B.
- ☐ Wayne County Rescission of Health Care Coverage for dependent.
- ☐ Other:

Your medical coverage and retiree contribution amount will be as follows effective February 2015:

Plan Description & Coverage Type:    Non Medicare Eligible Stipend

You may contact Benefits Express at (855) 224-6200 with any questions or concerns.

Sincerely,

Benefits Administration Office

cc:    file