UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In Re: )
)
) Case No:13-53846-tjt
City of Detroit, Michigan )
Debtors, )
)

## NOTICE OF WITHDRAWAL OF CLAIM FILED BY WELLS FARGO FINANCIAL LEASING, INC.

COMES NOW Wells Fargo Financial Leasing, Inc. and withdraws its claim pursuant to Federal Rules of Bankruptcy Procedure § 3006, filed in the City of Detroit, Michigan; Case No: 13-53846-tjt. Wells Fargo Financial Leasing, Inc. filed a Proof of Claim in August 2013 in the amount of $26,588.81.

The claim filed by Wells Fargo Financial Leasing, Inc. ("Wells Fargo") has not been objected to, no adversary proceeding has been filed against Wells Fargo, and Wells Fargo has not voted on a plan or otherwise participated significantly in the case.

This Notice serves as Wells Fargo Financial Leasing, Inc.'s withdraw of its proof of claim.

Respectfully submitted,

Paige Behounek
Loan Adjustor
Wells Fargo Financial Leasing, Inc.
MAC N0005-055
800 Walnut Street
Des Moines, IA 50309
Phone: (515) 557-4871
Facsimile: (877) 861-4390

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT EASTERN DISTRICT OF MICHIGAN | PROOF OF CLAIM |
|---|---|
| Name of Debtor: City of Detroit, Michigan | Case Number: 13-53846 |

FILED
2013 AUG -2 A 11: 28
U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Wells Fargo Financial Leasing, Inc.

Name and address where notices should be sent:
800 Walnut Street
MAC N0005-055
Des Moines, IA 50309

Telephone number: 800-247-0032   email:

Name and address where payment should be sent (if different from above):

Telephone number:   email:

**COURT USE ONLY**

☐ Check this box if this claim amends a previously filed claim

Court Claim Number: _____
(If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed:   $ 26,588.81

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: __Lease Agreement__
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: 5 1 7 1 | 3a. Debtor may have scheduled account as: (See instruction #3a) | 3b. Uniform Claim Identifier (optional): (See instruction #3b) |
|---|---|---|

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe: _____

Value of Property: $_____

Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim:   $_____

Amount Unsecured:   $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)          2

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted copies of documents** providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☒ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Richard Behling
Title: Loan Adjustor
Company: Wells Fargo Financial Leasing, Inc.
Address and telephone number (if different from notice address above):

(Signature)    7/30/13 (Date)

Telephone number          email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# Copier Usage Agreement

Agreement No.: 5171

**WELLS FARGO**

### CUSTOMER INFORMATION:
Customer's Full Legal Name:
DETROIT WAYNE JOINT BUILDING AUTHORITY
Address:
2 WOODWARD AVE
City/State/Zip Code:
DETROIT/MI/48226

| Telephone Number | Federal Tax ID # | County |
|---|---|---|
| 313.309.2300 | | WAYNE |

### SUPPLIER INFORMATION:
Supplier Name:
MICHIGAN OFFICE SOLUTIONS
Address:
2859 WALKENT DR NW
City/State/Zip Code:
GRAND RAPIDS MI 49544

### EQUIPMENT INFORMATION: ☐ See Attached Equipment Schedule
Equipment Location (if different than address shown above):

| Quantity | Equipment Make, Model & Serial Number (Required) | Quantity | Equipment Make, Model & Serial Number (Required) |
|---|---|---|---|
| 1 | XEROX W7530P | | |

### TERM AND PAYMENT INFORMATION:
Initial Term: 60 months
Minimum Payment Per Payment Period: $634.21
Check here ☐ if Minimum Payment included sales/use tax.

| Image Type | Images Included Per Payment Period | Excess Per Image Charge |
|---|---|---|
| Black & White | 3,785 | .0087 |
| Color | 4,000 | .0675 |

Payment Period is "Monthly" unless noted here: _____
Excess image charges billed "Quarterly" unless noted here: _____

☐ See attached schedule for additional meters.

Advance Payment: $_____ applied to ☐ 1st Minimum Payment ☐ Last Minimum Payment ☐ 1st and Last Minimum Payments
Security Deposit: $_____
Documentation / Processing Fee: $75.00

In this agreement (as amended from time to time, the "Agreement"), "You" and "Your" mean the customer named above. "We," "Us" and "Our" mean the owner, Wells Fargo Financial Leasing, Inc. "Supplier" means the equipment supplier named above. You acknowledge and agree that this Agreement represents the complete and exclusive agreement between You and Us regarding the subject matter herein and supersedes any other oral or written agreements between You and Us. This Agreement can be changed only by written agreement between You and Us. Other agreements not stated herein (including, without limitation, those contained in any purchase order or service agreement between You and the Supplier) are not part of this Agreement and are not binding on Us.

1. **LEASE OF EQUIPMENT.** You agree to lease from Us the personal property listed above (together with all existing and future accessories, attachments, replacements and embedded software, the "Equipment") upon the terms stated herein. You promise to pay to Us all of the charges and fees stated herein. This Agreement is binding on You as of the date You sign it. You agree that after You sign, We may insert or correct any information missing on this Agreement, including Your proper legal name, serial numbers and any other information describing the Equipment, and change the payment amount by up to 15% due to a change in the Equipment or its cost or a tax or payment miscalculation.

2. **EQUIPMENT SERVICE; SUPPLIES; YOUR UNCONDITIONAL OBLIGATIONS.** The Supplier named above has agreed with You to provide Equipment service during normal business hours and to provide You with all toner, developer and parts necessary for You to produce images, all of which are included in the Minimum Payment Per Payment Period. However, You agree that: (a) You must separately purchase all other supplies, including, without limitation, copier paper, at Your own cost, and (b) You must separately purchase Equipment service outside the Supplier's normal business hours and any service, parts or supplies required by your misuse of the Equipment or failure to follow the manufacturer's suggested use instructions. You agree that: (i) We are a separate and independent company from the Supplier, manufacturer and any other vendor (collectively, "Vendors"), and the Vendors are NOT Our agents; (ii) No statement or warranty by any Vendor is binding on Us, and no Vendor has authority to waive or alter any term of this Agreement; (iii) You, not We, selected the Equipment and the Vendor(s) based on Your own judgment; (iv) Your obligations hereunder are absolute and unconditional despite any Equipment failure or any Vendor's failure to provide You with any Equipment service, parts or supplies (including any service, parts or supplies that are included in the Minimum Payment Per Payment Period), or any other adverse condition; (v) We are NOT a party to the Supplier's agreement to provide You with service, parts or supplies, such contract is NOT part of this Agreement (even though We will, as a convenience to You and the Supplier, bill and collect monies owed by You to the Supplier), and no breach by the Supplier will excuse You from performing Your obligations to Us hereunder; and (vi) If the Equipment is unsatisfactory or if any Vendor fails to provide any service or fulfill any other obligation to You, You shall not make any claim against Us and shall continue to fully perform under this Agreement.

3. **IMAGE CHARGES.** Each Payment Period, You agree to pay Us, by the due date set forth on Our invoice to You (i) the Minimum Payment shown above, (ii) the applicable Excess Per-Image Charge for each metered image in excess of the applicable number of images included, and (iii) applicable taxes and other charges provided for herein. You agree to pay such Minimum Payment each Payment Period even if You do not make the applicable number of images included. There are no "credits" that carry over from any Payment Period during which You make fewer than the applicable number of images included. You agree that We may increase the Minimum Payment and/or the applicable Excess Per-Image Charges once each year during the Initial Term and once each year for any Renewal Term, by an amount not to exceed 15% per year. At Our option, You will (a) provide Us by telephone or facsimile with the actual meter readings when We so request, (b) allow Us to attach an automatic meter reading device to the Equipment, or (c) allow Us access to the Equipment to obtain meter readings or audit the meter reading device. If We request You to provide Us with meter readings and You fail to do so within 7 days of Our request, then (i) We may estimate the number of images made and invoice you accordingly, and (ii) We will adjust the estimated charge for excess images upon receipt of actual meter readings. Restrictive endorsements on checks will not be binding on Us. All payments received will be applied to past due amounts and to the current amount due in such order as We determine. Any security deposit or estimated future Governmental Charge that You pay is non-interest bearing, may be commingled with Our funds, may be applied by Us at any time to cure any default by You, and the unused portion will be returned to You within 90 days after the end of the Agreement. If We do not receive a payment in full on or before its due date, You shall pay a fee equal to the greater of 10% of the amount that is late or $29.00. If any check is dishonored, You shall pay Us a fee of $20.00.

4. **TERM; AUTOMATIC RENEWAL.** This Agreement is effective on the date that it is accepted by Us, and the term will begin on that date or any later date that We designate (the "Commencement Date") and will continue for the number of months shown above (the "Initial Term"). As used herein, "Present Term" means the term presently in effect at any time, whether it is the Initial Term or a Renewal Term (defined below). Unless You notify Us in writing at least 60 days but not more than 120 days before the end of a Present Term that You intend to return the Equipment at the end of such Present Term, then: (a) this Agreement will automatically renew for an additional one-year period (a "Renewal Term") and (b) the payment terms and other terms of this Agreement will continue to apply. If You do notify Us in writing within such time that You intend to return the Equipment at the end of a Present Term, then promptly upon the expiration of such Present Term You shall return the Equipment pursuant to Section 12. This Agreement is non-cancelable for the full Initial Term and for any and all Renewal Terms.

| Customer: | Wells Fargo Financial Leasing, Inc., Des Moines, Iowa |
|---|---|
| By: X [signature] Date: 2/18/11 | By: X [signature] |
| Print name: GREGORY R. YU____ Title: Executive Director | Print name: _____ Date: 11/3/11 |
| BY SIGNING ABOVE, CUSTOMER ACKNOWLEDGES RECEIPT OF PAGE 2 OF THIS AGREEMENT AND AGREES TO THE TERMS ON BOTH PAGES 1 & 2 | |

GISX

Page 1 of 2

1100AR OA - Rev. 09/09

5. **INDEMNIFICATION.** You shall indemnify and defend Us against, and hold Us harmless for, any and all claims, actions, damages, liabilities, losses and costs (including but not limited to reasonable attorneys' fees) made against Us, or suffered or incurred by Us, arising directly or indirectly out of, or otherwise relating to, the delivery, installation, possession, ownership, use, loss of use, defect in or malfunction of the Equipment. This obligation shall survive the termination of this Agreement.

6. **NO WARRANTIES.** WE ARE PROVIDING THE EQUIPMENT TO YOU "AS IS". WE HAVE NOT MADE AND HEREBY DISCLAIM ANY AND ALL WARRANTIES, EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. We hereby transfer to You, without recourse to Us, all automatically transferable warranties, if any, made to Us by the Vendor(s) of the Equipment. The parties hereto agree that the transaction documented in this Agreement is a "finance lease" under Article 2A of the Uniform Commercial Code (the "UCC"). You hereby waive any and all rights and remedies conferred upon You by Article 2A of the UCC. If this Agreement is deemed to be a secured transaction, You hereby grant to Us a security interest in the Equipment and all proceeds thereof. You authorize Us to record a UCC financing statement to protect Our interests in the Equipment. You may be entitled under Article 2A of the UCC to the promises and warranties (if any) provided to Us by the Supplier(s) in connection with or as part of the contract (if any) by which We acquire the Equipment. You acknowledge that You are aware of the name of the Supplier of each item of Equipment and You may contact the Supplier(s) for an accurate and complete statement of those promises and warranties (if any), including any disclaimers and limitations of them or of remedies.

7. **DELIVERY, LOCATION, OWNERSHIP, USE, MAINTENANCE OF EQUIPMENT.** We are not responsible for delivery or installation of the Equipment. You are responsible for Equipment maintenance to the extent the Supplier does not provide the same. You will not remove the Equipment from the Equipment Location unless You first get Our permission. If the Equipment is moved to a new location, We may increase the "Minimum Payment" and/or "Excess" per-image charges by a reasonable amount in order to account for any increased costs in providing covered service, parts and supplies to You. You shall give Us reasonable access to the Equipment Location so that We may inspect the Equipment, whether performed prior to or after the Commencement Date, and You agree to pay Our costs in connection therewith. We will own and have title to the Equipment (excluding any software) during the Agreement. If the Equipment includes any software (i) We don't own the software, (ii) You are responsible for entering into any necessary software license agreements with the owners of such software, (iii) You shall comply with the terms of all such agreements, if any, and (iv) any default by You under any such agreements shall constitute a default by You under this Agreement. You represent that the Equipment will be used solely for commercial purposes and not for personal, family or household purposes. You will use the Equipment in accordance with all laws, operation manuals, service contracts (if any) and insurance requirements, and shall not make any permanent alterations. At Your own cost, You will keep the Equipment in good working order and warrantable condition, ordinary wear and tear excepted ("Good Condition").

8. **LOSS; DAMAGE; INSURANCE.** You shall, at all times during this Agreement, (i) bear the risk of loss and damage to the Equipment and shall continue performing all Your obligations to Us even if it becomes damaged or suffers a loss, (ii) keep the Equipment insured against all risks of damage and loss ("Property Insurance") in an amount equal to its replacement cost, with Us named as sole "loss payee," and (iii) carry public liability insurance covering bodily injury and property damage ("Liability Insurance") in an amount acceptable to Us, with Us named as "additional insured." You have the choice of satisfying these insurance requirements by providing Us with satisfactory evidence of Property and Liability Insurance ("Insurance Proof"), within 30 days of the Commencement Date. Such Insurance Proof must provide for at least 30 days prior written notice to Us before it may be cancelled or terminated and must contain other terms satisfactory to Us. If you do not provide Us with Insurance Proof within 30 days of the Commencement Date, or if such insurance terminates for any reason, then (a) You agree that We have the right, but not the obligation, to obtain such Property Insurance and/or Liability Insurance in such forms and amounts from an insurer of Our choosing in order to protect Our interests ("Other Insurance"), and (b) You agree that We may charge you a periodic charge for such Other Insurance. This periodic charge will include reimbursement for premiums advanced by Us to purchase Other Insurance, billing and tracking fees, charges for Our processing and related fees associated with the Other Insurance, and a finance charge of up to 18% per annum (or the maximum rate allowed by law, if less) on any advances We make for premiums (collectively, the "Insurance Charge"). We and/or one or more of our affiliates and/or agents may receive a portion of the Insurance Charge, which may include a profit. We are not obligated to obtain, and may cancel, Other Insurance at any time without notice to You. Any Other Insurance need not name You as an insured or protect Your interests. The Insurance Charge may be higher than if You obtained Property and Liability Insurance on Your own.

9. **ASSIGNMENT.** You shall not sell, transfer, assign or otherwise encumber (collectively, "Transfer") this Agreement, or Transfer or sublease any Equipment, in whole or in part, without Our prior written consent. We may, without notice to You, Transfer Our interests in the Equipment and/or this Agreement, in whole or in part, to a third party (a "New Owner"), in which case the New Owner will, to the extent of such Transfer, have all of Our rights and benefits but will not have to perform Our obligations (if any). Any Transfer by Us will not relieve Us of Our obligations hereunder. You agree not to assert against the New Owner any claim, defense or offset You may have against Us.

10. **TAXES AND OTHER FEES.** You are responsible for all taxes (including, without limitation, sales and personal property taxes, excluding only taxes based on Our income), assessments, license and registration fees and other governmental charges relating to this Agreement or the Equipment (collectively "Governmental Charges"). You agree to promptly pay Us, on demand, estimated future Governmental Charges. You authorize Us to pay any Governmental Charges as they become due, and You agree to reimburse Us promptly upon demand for the full amount (less any estimated amounts previously paid by You). You agree to pay Us a fee for preparing and filing personal property tax returns. You also agree to pay Us upon demand (i) for all costs of filing, amending and releasing UCC financing statements, and (ii) a documentation/processing fee as set forth on Page 1 (or as otherwise agreed to) to cover Our investigation, documentation and other administrative costs in originating this Agreement. You also agree to pay Us a fee, in accordance with Our current fee schedule, which may change from time to time, for additional services We may provide to You at Your request. You acknowledge that We may (on behalf of the Supplier) bill You for any supply freight fee that the Supplier charges for shipping supplies to You. You agree that the fees set forth in this Agreement may include a profit.

11. **DEFAULT.** You will be in default hereunder if You (1) fail to pay any amount due hereunder within 15 days of the due date, (2) breach or attempt to breach any other term, representation or covenant set forth herein or in any other agreement between You and Us, (3) die (if You are an individual), go out of business or commence dissolution proceedings, (4) become insolvent, admit Your inability to pay Your debts, make an assignment for the benefit of Your creditors (or enter into a similar arrangement), file (or there is filed against You) a bankruptcy, reorganization or similar proceeding or a proceeding for the appointment of a receiver, trustee or liquidator, or (5) suffer an adverse change in Your financial condition and, as a result thereof or for any other reason, We deem Ourselves insecure. If You default, We may do any or all of the following: (A) cancel this Agreement, (B) require You to return the Equipment pursuant to Section 12 below, (C) take possession of and/or render the Equipment (including any software) unusable (and for such purposes You hereby authorize Us and Our designees to enter Your premises, with or without prior notice or other process of law), and sell, lease or otherwise dispose of the Equipment on such terms and in such manner as We may in Our sole discretion determine, (D) require You to pay to Us, on demand, an amount equal to the sum of (i) all Minimum Payments and other amounts then due and past due, (ii) all remaining Minimum Payments for the remainder of the then Present Term discounted at a rate of 6% per annum, (iii) the residual value of the Equipment estimated by Us at the inception of this Agreement (as shown in Our books and records), discounted at a rate of 6% per annum, and (iv) all other amounts that may thereafter become due hereunder to the extent that We will be obligated to collect and pay such amounts to a third party (such amounts specified in sub-clauses "i" through "iv" referred to below as the "Balance Due"), and/or (E) exercise any other remedy available to Us under law. You also agree to reimburse Us on demand for all reasonable expenses of enforcement (including, without limitation, reasonable attorneys' fees and other legal costs) and reasonable expenses of repossessing, holding, preparing for disposition, and disposition ("Remarketing") of the Equipment, plus Time-Value Interest on the foregoing amounts from the date of demand to the date paid. In the event We are successful in Remarketing the Equipment, We shall give You a credit against the Balance Due in an amount equal to the present value of the proceeds received and to be received from Remarketing minus the above-mentioned costs (the "Net Proceeds"). If the Net Proceeds are less than the Balance Due, You shall be liable for such deficiency. Any delay or failure to enforce Our rights under this Agreement shall not constitute a waiver thereof. We shall not be liable for any losses, directly or indirectly arising out of, or by reason of the presence and/or use of any and all proprietary information residing on or within any Equipment returned to Us or repossessed by Us. The remedies set forth herein are cumulative, are in addition to any other remedies provided for by applicable law, and may be exercised concurrently or separately.

12. **RETURN OF EQUIPMENT.** If You are required to return the Equipment under this Agreement, You shall, at Your expense, promptly upon demand, send the Equipment to any location(s) that We may designate and pay Us a handling/restocking fee of $250.00. The Equipment must be properly packed for shipment, freight prepaid and fully insured, and must be received in Good Condition (defined in Section 7 above). If the Equipment is not received within 15 days of the date of demand, You agree to continue paying Minimum Payments and all other amounts due hereunder until the Equipment is received by Us.

13. **APPLICABLE LAW; VENUE; JURISDICTION; SEVERABILITY.** This Agreement shall be deemed fully executed and performed in the State of Iowa and shall be governed and construed in accordance with the laws thereof. You consent to and agree to the exclusive jurisdiction and venue of federal and state courts located in the State of Iowa. YOU AND WE HEREBY WAIVE YOUR AND OUR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY LEGAL ACTION. If any amount charged or collected under this Agreement is greater than the amount allowed by law (an "Excess Amount"), then (i) any Excess Amount charged but not yet paid will be waived by Us and (ii) any Excess Amount collected will be refunded to You or applied to any other amount then due hereunder. Each provision hereof shall be interpreted to the maximum extent possible to be enforceable under applicable law. If any provision is construed to be unenforceable, such provision shall be ineffective only to the extent of such unenforceability without invalidating the remainder hereof.

14. **INTERIM RENT.** As you will have possession of the Equipment from the date of its delivery to You, You agree to pay Us an interim rent charge as reasonably calculated by Us for the period from the date the Equipment is delivered to You until the Commencement Date. The payment for this interim period will be based on the Minimum Payment prorated on a 30-day calendar month and will be added to Your first invoice.

15. **MISCELLANEOUS.** You shall furnish Us with current financial statements upon Our request. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the same document. You acknowledge that You have received a copy of this Agreement and agree that a facsimile or other copy containing Your faxed or copied signature may be treated as an original and will be admissible as evidence of this Agreement. You waive notice of receipt of a copy of this Agreement with Our original signature. You hereby represent to Us that this Agreement is legally binding and enforceable against You in accordance with its terms.

Customer's Initials: ___

GtSX    Page 2 of 2    1100AR QA - Rev 09/00

Case 13-53846-tjt  Claim 5-1  Filed 08/02/13  Page 4 of 8
13-53846-tjt  Doc 9395  Filed 03/10/15  Entered 03/10/15 11:12:22  Page 5 of 7


**Michigan Office Solutions**
A Xerox Company

2859 Walkent Dr. NW
Grand Rapids, MI 49544-1400

40000 Grand River Ave Ste 500
Novi, MI 48357-2176

# REMITTANCE COPY

Web www.mos-xerox.com
Phone (616) 459-1161
Fax (616) 459-8705

**SHIP TO:**
DETROIT-WAYNE JOINT BUILD
2 WOODWARD AVE RM 1316
DETROIT MI 48226

**INVOICE NO**
7AX27A 1

**INVOICE DATE**
08/31/11

**TERMS: NET 10 DAYS FROM INVOICE**

| CUSTOMER NO. | CUST. ORDER NO. | DATE ORDERED | DATE SHIPPED | SHIP VIA | REPRESENTATIVE | |
|---|---|---|---|---|---|---|
| 705853 | 801621 | 08/17/11 | 08/24/11 | OUR TRUCK | 70MC62 | BB |

| ORDERED | PKG | SHIPPED | PROD. NO. | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|---|
| 1 | EA | 1 | 2XNC04 | XEROX W7530P WORKCENTRE X7530 XKK390962 VENDOR # W7530P | | 15,709.00 |
| 1 | EA | 1 | PXZH3S | 1 LINE FAX 20-H-20 VENDOR # 497K06230 | | * |
| 1 | EA | 1 | PXZA0X | HI CAP TANDAM TRAY VENDOR # 097S04160 | | |
| 1 | EA | 1 | WSETU1 | SETUP VENDOR # SETUP | | |
| 1 | EA | 1 | WBUY03 | *LEASE BUY OUT* VENDOR # LEASE BUYOUT | | |
| 1 | EA | 1 | WOVER1 | LEASE OVERRIDE VENDOR # OVERRIDE | | |

SUBTOTAL
15,709.00

TOTAL DUE
15,709.00

COMMENTS:


**BILL TO:**
WELLS FARGO FINANCIAL
MAC #F4031-040
800 WALNUT ST
DES MOINES IA 50309-2331


**REMIT TO:**
MICHIGAN OFFICE SOLUTIONS
PO BOX 140587
GRAND RAPIDS, MI 49514-0587

PLEASE PAY FROM THIS INVOICE
OVERDUE ACCOUNTS WILL BE CHARGED A LATE PAYMENT FEE OF 1.0% PER MONTH WHICH EQUALS 12% PER YEAR.

# Delivery & Acceptance Certificate



| Lessee/Renter/Customer: DETROIT WAYNE JOINT BUILDING AUTHORITY | Title of lease, rental or other agreement dated |
|---|---|
| Lessor or Lender: Wells Fargo Financial Leasing, Inc. | Lease, contract or schedule #: 5171 |

The above Customer hereby unconditionally represents and certifies to Wells Fargo Financial Leasing, Inc. ("Wells Fargo"), and agrees, that:

1. The following equipment, other personal property and software, if any, leased or otherwise provided to Customer or otherwise constituting collateral relating to the above lease, contract or schedule (the "Goods"), has been fully delivered and installed at Customer's place of business, has been inspected and tested by Customer and is operating in good working order to Customer's complete satisfaction, meets all of Customer's requirements and specifications, and is hereby irrevocably accepted by Customer:

| Quantity | Make or other description | Model name (if any) | Serial # (if any) |
|---|---|---|---|
| 1 | XEROX W7530P | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

*Attach additional page if necessary*

2. There are no side agreements between Customer and any third party relating to the subject matter of the Contract, and no cancellation rights have been granted to Customer by Wells Fargo or any third party. There is no "free demonstration" or "test" period for the Goods.

3. Customer has reviewed and understands all of the terms of the Contract, and Customer agrees that the Contract cannot be revoked or cancelled or terminated early for any reason.

Customer hereby directs Wells Fargo to pay the vendor/supplier of the Goods. Customer agrees that (i) Wells Fargo may insert the Contract or Lease number above and the Delivery Date below if either is missing following the Customer's signature below and (ii) a facsimile of this document containing a facsimile of the Customer's signature shall be considered as valid and binding as the original for all purposes.

*Instruction to Customer: Do NOT sign this Certificate until ALL of the Goods have been delivered, installed, inspected and tested to your satisfaction.*

X _____    _____
Customer Authorized Signature        Print name

9-14-11
Delivery Date of the Goods

120331 v1 D&A 07-05