# EXHIBIT 6
## (PART 1)

# LIST OF DOCUMENTARY EXHIBITS

| Exhibit | Description |
| --- | --- |
| A | RDPFFA Term Sheet |
| B | Statement of Detroit Bankruptcy Mediators |
| C | City of Detroit and DFFA Master Agreement |

# EXHIBIT A

This Term Sheet memorializes the material terms of the agreement between the RDPFFA and the City of Detroit. Except for Paragraphs 5-7, below, which relate to support for the City's Plan of Adjustment, as amended ("POA"), the terms herein either shall be incorporated in the POA or the POA shall contain terms consistent with those below. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the POA:

1. PFRS will freeze all accrued benefits as of June 30, 2014. Holders of PFRS Pension Claims who are retirees, surviving spouses, or dependents thereof will continue to receive their Current Accrued Annual Pension. Holders of PFRS Pension Claims who are retirees, surviving spouses, or dependents thereof, will receive future cost of living adjustments ("Future COLA Payments") (which are sometimes called escalators in the police and firefighter bargaining agreements) from and after June 30, 2014 consistent with the agreements to which such holders were a party, but equal in aggregate value to 45% of the value of such Future COLA Payments. For the sake of clarity, the reduced Future COLA Payments will be applied prospectively and will not impair or reduce already accrued COLA enhancements included in retirees', surviving spouses', or dependents' Current Accrued Annual Pensions.

2. The governance of PFRS will be restructured in a manner acceptable to the State and Foundations providing aid. Resulting from that restructuring, there will be two retiree representatives on the PFRS Board of Trustees, one democratically elected by police retirees, and the second democratically elected by firefighter retirees. Each such trustee will be able to cast a one-half vote on all Board of Trustees issues subject to a vote. With the exception of a one- half vote for each of the two retiree representatives, the retiree representatives on the PFRS Board of Trustees will otherwise be entitled to the same rights and benefits as all other members of the PFRS Board of Trustees. Elections for these retiree representatives will be held as soon as practicable following Bankruptcy Court confirmation of the POA.

3. Future COLA Payments that are reduced as described herein and in the POA will be restored in accordance with a variable COLA restoration program. The variable restoration program will generally work as follows: (1) a restoration reserve will be established as a book-keeping account in PFRS; (2) if the projected funding level of PFRS as of June 30, 2023 exceeds 78%, certain assets above the amount needed to achieve

{00207088}

WAI-3172879v1

BSDO QM
04/25/14

the projected 78% funding will be allocated to the restoration reserve account; (3) additional amounts will be allocated to the restoration reserve account each year based on investment performance; (4) if the amounts in the restoration reserve account equal the projected cost to provide a COLA restoration payment for a category of recipients over the remainder of their actuarially projected lives (see the allocation and restoration categories described below), then a COLA restoration payment will be made in the next following year and the restoration account will be debited by the value of that year's payment. Restoration payments will not be made if the projected funding level of the PFRS on June 30, 2023 is below 76%, and assets allocated to the restoration reserve account will be debited from that account in the event that the projected funding level of the PFRS falls below 75%. The allocation and restoration payments will be made in the following manner:

a. Before any assets are allocated for accounting purposes to fund COLA restoration for active employees, restoration amounts will be used to fund and make an annual payment to retirees, surviving spouses, and beneficiaries in pay status as of June 30, 2014, until an annual restoration payment for such group can be made that equals in the aggregate 66% of the value of their Future COLA Payments (e.g., if 45% of the value of John Smith's Future COLA Payment in 2017 is $45.00, and John Smith is eligible for a COLA restoration payment under this subsection, he would receive a $66.00 Future COLA Payment in 2017);

b. Before any assets are allocated for accounting purposes to fund COLA restoration for active employees, restoration amounts will be used to fund and make an annual payment to retirees, surviving spouses, and beneficiaries in pay status as of the date that restoration is determined but who were not in pay status as of June 30, 2014, until an annual restoration payment for such group can be made that equals in the aggregate 66% of the value of their Future COLA Payments;

c. Once restoration payments for COLA benefits to groups (a) and (b) have been funded in the restoration reserve account equal to 66% of their Future COLA Payments, then assets in such account will be allocated to fund COLA restoration equally to retirees, surviving spouses, beneficiaries and all other PFRS participants not in pay status (that is, active employees in connection with their frozen 2014 benefits). Once restoration payments for Future COLA Payments to all retirees, surviving spouses and beneficiaries in pay status have been funded so as to allow 100% COLA restoration for such retirees, surviving spouses, and beneficiaries in pay status, then any additional

{00207088}

WAI-3172879v1

BDO

04/25/14

amounts in the restoration reserve account may be allocated to active employees in connection with their frozen June 30, 2014 benefits.

COLA restoration payments granted and funded as of June 30, 2023 will become permanent as of that date, provided that the funding target level as of that date of at least 78% has been satisfied. COLA restoration will otherwise operate as described in the POA, provided that COLA restoration for the period after June 30, 2023 shall be consistent with the priorities set forth in this Paragraph 3.

4.   In connection with retiree health (OPEB) claims – Class 12 -- there will be a separate VEBA established for retired police and firefighters ("P&F VEBA") in the POA. The RDPFFA and Retiree Committee will each be able to appoint P&F VEBA Board members in equal numbers, and such appointees will constitute a majority of the P&F VEBA Board ; the City will appoint the remaining members. Replacement Board members will be appointed by the RDPFFA for retiree representatives and by the City for City representatives. The City will issue a note to the P&F VEBA, or a share of a note, all as otherwise described in the POA, and the value of the note will be equal to the aggregate value of each and every retired police officer's and firefighter's pro rata recovery on the amount of his or her individual OPEB claim.

5.   The RDPFFA's support of the POA is expressly conditioned on the PFRS pension treatment set forth in Paragraphs 1-3 above and on the OPEB treatment set forth in Paragraph 4 above (including the bankruptcy court determining that all such treatment is feasible), and the City's agreement herein respecting Paragraphs 1-4 is contingent on the Outside Funding.

6.   All other terms not provided for herein will be consistent with the next iteration of the POA relating to claims under Classes 10 (PFRS Pension) and 12(OPEB) to be filed approximately on April 25, 2014 and no terms in the POA will be materially inconsistent with the terms of this Term Sheet.

7.   The RDPFFA will timely prepare a letter executed by the President of the Board advising all RDPFFA members that the Board unanimously recommends that they vote in favor of the POA so long as it incorporates, and is otherwise consistent with, all of the terms set forth herein. Further, the RDPFFA will engage in such other activities supporting the POA as may be mutually agreed by RDPFFA and the City. The letter of support will be included in the POA solicitation materials.

8.   Police and firefighter retirees are entitled to the benefits of any other agreement entered into by the City of Detroit that covers such retired police and fire fighters and which is more advantageous to them than the

{00207084}

WAI-3172879v1

terms of this agreement as it relates to Classes 10 (PFRS Pensions) and 12 (OPEB).

9. The POA and/or Confirmation Order will exculpate officer and Board members of RDPFFA, RDPFFA counsel and its professional financial advisor hired by the RDPFFA for the purposes of this bankruptcy proceeding from liability in connection with their negotiation of a settlement and support of the POA, and will enjoin any litigation against them in connection with their officer or Board or counsel or financial advisor status with respect to such efforts to settle and support the POA.

Signed this ___ day of April, 2014

Evan Miller
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Counsel to the City of Detroit

Brian O'Keefe
Lippitt O'Keefe Gornbein, PLLC
370 E. Maple Rd., 3rd Floor
Birmingham, MI 48009
Counsel to RDPFFA

{00207088}

WAI-3172879v1

# EXHIBIT B



# UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF MICHIGAN
### THEODORE LEVIN UNITED STATES COURTHOUSE
231 W. LAFAYETTE BOULEVARD
DETROIT, MICHIGAN 48226

DIVISIONAL OFFICES
ANN ARBOR
BAY CITY
FLINT
PORT HURON

April 15, 2014

## STATEMENT OF DETROIT BANKRUPTCY MEDIATORS

The Mediators are pleased to announce that the City of Detroit and the Retired Detroit Police and Fire Fighters Association ("RDPFFA") have reached an agreement on the treatment of pension and health benefits for retired Detroit and firefighters. The agreement between the RDPFFA is the first agreement that the City has reached with a group of its retired workers and is particularly significant as the RDPFFA is the one of the City's oldest and largest employee associations, dating back to 1946. It has approximately 6500 members, which is more than 80% of Detroit's eligible retired police officers and firefighters.

The mediated agreement approved unanimously by the RDPFFA's board today is contingent upon full funding of the so-called Grand Bargain, and under this agreement, the uniformed retirees would experience no cuts to their current pension benefits, and would receive almost half of their COLA benefits going forward. Further, depending upon the performance of the Police and Firefighters Retirement System ("PFRS"), there is also the possibility of full restoration of COLA benefits under the Plan of Adjustment. In addition, a separate PFRS Voluntary Employee Beneficiary Association plan ("VEBA") for PFRS retiree healthcare will be established. Finally, the PFRS retirees will have a meaningful voice and retain a vote on the new pension board.

This settlement agreement was reached after intensive negotiating sessions over the past several months in which the parties interests were fully and vigorously represented by counsel and all issues robustly negotiated. The Mediators wish to express their appreciation to the parties, their counsel and advisors for the good faith spirit and professionalism in which they engaged the Mediators and each other in the many mediation sessions.

The Mediators are privileged to have assisted the parties to find common ground in reaching a resolution that reflects not only a fair settlement for the parties, but also recognizes the years of faithful service and the important role the police and fire fighter retirees have played in serving and protecting the City over so many years. As the mediation process accelerates, the Mediators hope that this settlement will encourage all of the remaining parties to the bankruptcy to re-double their mediation efforts to reach meaningful agreements which can be incorporated into a fair and balanced agreed-upon Plan of Adjustment to be presented to the Bankruptcy Court for confirmation.

Updates will be provided if and when appropriate.

# EXHIBIT C

# MASTER AGREEMENT

**BETWEEN THE**

# CITY OF DETROIT

**AND THE**

## DETROIT FIRE FIGHTERS ASSOCIATION

# 2014 - 2019

CHI-181946346v3

# TABLE OF CONTENTS

Page

1. PURPOSE AND INTENT ................................................................... 1
2. RECOGNITION .............................................................................. 1
3. MANAGEMENT RIGHTS ................................................................ 2
4. UNION SECURITY ......................................................................... 4
5. BASIS OF REPRESENTATION ....................................................... 5
6. SPECIAL CONFERENCES .............................................................. 6
7. APPOINTMENTS ............................................................................ 6
8. GRIEVANCE PROCEDURE – NON-DISCIPLINARY GRIEVANCES ...................... 8
9. ARBITRATION – NON-DISCIPLINARY MATTERS .......................... 10
10. DISCIPLINE PROCEDURE ............................................................. 12
11. NO STRIKE CLAUSE ..................................................................... 16
12. SENIORITY ................................................................................... 17
13. DEFENSE AND INDEMNIFICATION .............................................. 28
14. RESIDENCY .................................................................................. 28
15. VETERANS - RESERVES - EDUCATION ........................................ 28
16. MISCELLANEOUS ......................................................................... 28
17. COMPLIANCE WITH CITY LAW ................................................... 35
18. CONVENTIONS ............................................................................. 35
19. HOURS AND LEAVE DAYS ........................................................... 36
20. TEMPORARY ASSIGNMENTS ....................................................... 37
21. WORK RELIEFS ............................................................................ 38
22. FURLOUGHS SELECTION ............................................................. 38
23. ELECTRONIC COPY OF AGREEMENT ......................................... 44
24. ECONOMIC PROVISIONS ............................................................. 44
25. COMPANY STAFFING ................................................................... 63
26. SAFETY ........................................................................................ 63
27. SUBSTANCE ABUSE ..................................................................... 69
28. WORKPLACE VIOLENCE .............................................................. 69
29. EXTENT OF AGREEMENT/SAVINGS CLAUSE ............................... 70
30. DURATION .................................................................................... 71

SCHEDULE I ........................................................................................ 72
EXHIBIT I ............................................................................................ 74
EXHIBIT II ........................................................................................... 79

CHI-181946346v3

# AGREEMENT

This Agreement is entered into between the City of Detroit, a Michigan Municipal Corporation (the "Employer" or the "City"), and the Detroit Fire Fighters Association, Inc., a labor organization existing under the laws of the State of Michigan (the "Union" or the "Association").

## 1.    PURPOSE AND INTENT

A.    This Agreement sets forth the terms and conditions of employment to promote orderly and peaceful labor relations for the mutual interest of the City of Detroit in its capacity as an Employer, the City employees, the Union, and the people of the City of Detroit.

B.    The parties recognize that the interest of the community and the job security of the Employees depend upon the Employer's success in establishing proper services to the community.

C.    To these ends the Employer and the Union encourage to the fullest degree friendly and cooperative relations between their respective representatives at all levels and among all Employees.

D.    The City is legally and morally obligated to provide equality of opportunity, consideration, and treatment to all employees of the City and, accordingly, to establish policies, practices and rules that insure such equality of opportunity, consideration and treatment of all persons employed in all phases of the employment process, without regard to race, color, creed, national origin, citizenship status, religion, age, political orientation, sex, sexual orientation, genetic information, arrest record, height, weight, familial status, marital status, or disability, in  accordance with applicable State and Federal laws.

## 2.    RECOGNITION

A.    Pursuant to and in accordance with all applicable provisions of Act 336 of the Public Acts of 1947, as amended, the City of Detroit hereby recognizes the Detroit Fire Fighters Association as the exclusive representative for the purposes of collective bargaining with respect to wages, hours, and other terms and conditions of employment of all non-civilian employees and civilian employees of the Detroit Fire Department in the classifications enumerated in Schedule I attached.

B.    The Association recognizes that positions such as the Chief of Fire Operations, Deputy Fire Chiefs, Fire Marshal, Chief of Fire Prevention, Chief of the Training Division, Chief of the Community Relations Division, Fire Investigator Chief – Arson, Supervising Fire Dispatcher – Chief, Chief of Plans and Examinations, and Senior Chiefs constitute an integral part of the senior leadership team of the Detroit Fire Department. Consequently, the Executive Fire Commissioner shall have the discretion to appoint qualified individuals for such leadership positions and to demote or replace Employees performing such positions at any time for any reason, subject to the requirements of applicable law. And, like all other members of the Detroit Fire Department, employees holding these

leadership positions are expected to maintain the highest standards of dedication, integrity, and professionalism in the interest of promoting public safety.

### 3.    MANAGEMENT RIGHTS

A.    The Union recognizes the prerogatives of the City to operate and manage its affairs in all respects in accordance with the law.

B.    Both the Department and the Association acknowledge their shared responsibility for assuring the health and safety of the citizens of the City of Detroit, and agree to work together cooperatively to maintain the highest standards of professionalism and integrity in the service of the City and its citizens. The Association recognizes the prerogatives of the Department to operate and manage its affairs in all respects in accordance with its responsibilities and powers of authority and the terms and provisions of this Agreement. Except as specifically limited by the provisions of this Agreement or applicable law, the Department will have the discretion and authority:

1.    to hire, direct, classify, assign, reassign, schedule, promote, demote, evaluate, transfer, layoff and/or recall Employees, including the assignment or reassignment of Employees, on a temporary or permanent basis;

2.    to determine the size of its workforce, including the number of Employees, the type and number of job classifications, departments, and shifts of work, whether increased or decreased;

3.    to develop, establish, or modify job descriptions and job postings for positions in the Department provided that the City first provides notice of any proposed changes to the Union and, if requested by the Union, meets and confers with the Union prior to implementation;

4.    to determine policies affecting the selection, promotion, evaluation, and training of Employees;

5.    to establish and modify hours of work, including the beginning and ending time for shifts of work, whether increased or decreased, and the establishment of the hours of the shifts, whether increased or decreased;

6.    to determine the content and nature of the work to be performed, and the competencies and qualifications needed to perform the work, including but not limited to the right to require Employees to become qualified as emergency medical technicians (EMT), at no cost to the Employees, and to perform medical first responder work as assigned by the Department;

7.    to determine the organizational structure of the Department, including the planning, direction, control, increase, decrease, or discontinuance of operations or services, and the organization of the same;

8. to determine the location and types of facilities, including the establishment of new units, companies, departments, battalions, divisions, or subdivisions thereof and the right to transfer and assign Employees and equipment between and among the Department's various facilities;

9. to establish, regulate, determine, revise, or modify at any time the policies, practices, protocols, processes, techniques, methods, means and procedures used in the Department, including, but not limited to machinery, materials, methods, facilities, tools, and equipment;

10. to transfer, relocate, merge, consolidate, or close its facilities and operations, in whole or in part, and to separate its Employees in connection with said transferring, relocation, merger, consolidation, or closing after discussing the effects of such decision with the Association to the extent required by law;

11. to create and maintain special units or companies and to select Employees to work within such special units or companies;

12. to establish and enforce policies pertaining to drug testing and substance abuse, including but not limited to zero tolerance policies and random drug testing policies;

13. to assign an Employee to work in a restricted or light duty capacity for good cause;

14. to enforce state and local licensing, certifications, and other requirements;

15. to determine and control the budget of the Department;

16. to subcontract or civilianize any job or job function outside the Fire Fighting Division, provided that the City first provide notice of any such action to the Union and, if requested by the Union, meets and confers with the Union prior to implementation;

17. with respect to any other matter related to the enforcement of the laws of the City of Detroit or the State of Michigan and the protection of its citizens and their property.

C. The Department reserves the right to discipline, discharge, demote, and/or suspend Employees for just cause. The Department reserves the right to lay off Employees for lack of work or funds or the occurrence of conditions beyond the control of the Department or when such continuation would be wasteful and unproductive.

D. The City shall also have the right to maintain discipline and efficiency among Employees; to establish work rules and rules of conduct; to fix and determine the penalties for the violation of such rules, provided they do not conflict with the terms of this Agreement. The Union shall have the right to grieve on the interpretation and application of these provisions.

E.  Except as specifically abridged, delegated, granted or modified by this Agreement, all of the rights, powers, and authority the City had prior to the signing of this Agreement are retained by the City and remain exclusively without limitation within the rights of the City.

F.  The Department has the right to schedule overtime work as required in a manner most advantageous to the Department and consistent with requirements of municipal employment and the public safety and consistent with the provisions of this Agreement.

G.  It is understood by the parties that every incidental duty connected with operations enumerated in job descriptions is not always specifically described.

## 4.  UNION SECURITY

A.  Employees are free to join or not to join the Union. Employees who are members of the recognized bargaining unit but who are not members of the Union may join the Union by initiating their Union application form and dues deduction authorization form.

B.  The City agrees to deduct from the wages of an Employee, who is a member of the Union, all Union membership dues uniformly required, as provided in a written authorization in accordance with the standard form used by the City, provided that the said form shall be executed by the Employee. The written authorization for Union dues deduction shall remain in full force and effect during the period of this Agreement unless revoked by written notice. The revocation notice must be given to both the Finance Department and to the Union.

C.  Any person employed with the City and covered by this Agreement, who is not a member of the Union and who does not make application for membership within ninety (90) calendar days from the Effective Date of this Agreement or from the date he/she first becomes a member of the bargaining unit, whichever is later, shall as a condition of employment, pay to the Union a service fee as a contribution towards the administration of this Agreement. Employees who fail to comply with this requirement shall be discharged within thirty (30) work days after receipt of written notice by the Department from the Union unless otherwise notified by the Union in writing within said thirty (30) work days and provided that the Union shall release the Department from fulfilling the obligation to discharge if during such thirty (30) day period the employee pays the membership dues or service fee retroactive to the due date and confirms his/her intention to pay the required membership dues or service fee in accordance with this Agreement.

D.  The City agrees to deduct from the wages of any employee covered by this Agreement, who is not a member of the Union, all Union service fees uniformly required as provided in a written authorization in accordance with the standard form used by the City, provided that the said form shall be executed by the employee. The written authorization for Union service fee deduction shall remain in full force and effect during the period of this Agreement unless revoked by written notice. The revocation notice must be given to both the Finance Department and to the Union.

E.     All Union membership dues and service fees will be authorized, levied, and certified in accordance with the by-laws of the Union. Each Employee and the Union hereby authorizes the City to rely upon and to honor certifications by the Treasurer of the Union regarding the amounts to be deducted and the legality of the adopting action specifying such amounts of Union dues and service fees, which dues and service fees shall be sent reasonably promptly to the Treasurer of the Union. The Treasurer of the Union shall not request the City to change the amounts so deducted more often than four (4) times each City fiscal year.

F.     The Union shall have no right or interest whatsoever in any money authorized withheld until such money is actually paid over to them. The City or any of its officers and employees shall not be liable for any delay in carrying out such deductions, and upon forwarding a check in payment of such deductions by mail to the Union, the City and its officers and employees shall be released from all liability to the Employee assignors, and to the Union under such assignments (Chapter 13, Article 4, Section 4 of the Municipal Code of the City of Detroit).

G.     The Union shall refund to Employees, dues and service fees erroneously deducted by the City and paid to the Union. The City may offset any amount erroneously or improperly deducted and paid to the Union from any subsequent remittance to the Union.

H.     The Union agrees to save and hold harmless the City from any damages or other financial loss which the City may be required to pay or suffer as a consequence of enforcing the above provisions.

## 5.     BASIS OF REPRESENTATION

A.     In accordance with the appropriate step of the grievance procedure provided herein the Employer agrees, after adequate notification to the Office of Chief of Fire Operations, that any one (1) officer of the executive board, or the director of the battalion where the grievance is involved, or one (1) grievance committee member, may during his or her working hours without loss of pay, investigate and present grievances, all in accordance with their proper place in the grievance procedure. Arrangements for their release from their job will be made by the Office of Chief of Fire Operations.

B.     The Union officers may be permitted to discuss union business with Employees during their duty hours, provided such discussions shall not interfere with the performance of the Employee's duties. Upon the granting of this privilege, there shall be no abuse thereof.

C.     The Union will be provided a copy of each inter-office order of a general nature and all Commissioner's Bulletins which are sent to all Chiefs or Commanding Officers. Copies of all charges against an Employee, when signed by the Employee charged, shall promptly be furnished to the Union through departmental mail. The results of the hearing shall also be furnished to the Union through departmental mail.

D.     The officers of the Union (i.e., President, Vice-President, Secretary and Treasurer) shall be permitted time off on a full time basis with compensation to which their rank otherwise entitles them, including without limitation: salary, pension credits and

contributions, seniority, etc. The Association may request time off without loss of pay for other Union Officers for purposes of conducting legitimate Union business.

## 6. SPECIAL CONFERENCES

Special conferences on important matters will be arranged upon the request of either party. An agenda of matters to be taken up in the conference shall be presented in writing at the time the conference is requested. Matters taken up in special conferences shall be confined to those included in the agenda. Wherever possible, such special conferences shall be held within five (5) calendar days of the request. The party of whom the conference is requested shall confirm arrangements for the conference in writing; provided, however, that the Department shall not be required to grant any Employee time off to attend a special conference. Promptly after the conclusion of the conference, the party of whom the conference is requested shall provide a brief written statement documenting the results of the conference.

## 7. APPOINTMENTS

A.   Employees in the following classifications (the "Designated Job Classifications") shall be appointed by and serve at the discretion of the Executive Fire Commissioner, subject only to the provisions of Article 10.C and 10.F. The Executive Fire Commissioner may make appointments from any rank. There shall be a mandatory retirement age of 65 for the Designated Job Classifications.

B.   The Designated Job Classifications shall include the following:
1. Chief of Fire Operations;
2. Deputy Fire Chiefs (2);
3. Fire Marshal;
4. Chief of Fire Prevention;
5. Chief of the Training Division;
6. Chief of the Community Relations Division;
7. Fire Investigator Chief – Arson;
8. Supervising Fire Dispatcher – Chief;
9. Senior Chiefs (2); and
10. Chief of Plans and Examinations.

C.   Qualifications:

The designated job classifications shall have the following qualifications:

1. Chief of Fire Operations;
   a. Executive Fire Officer (EFO) Certification Preferred
   b. Bachelor's Degree Preferred
   c. 3 years experience Captain or above in DFD
   d. Active DFD Employee

2. Deputy Fire Chiefs (2);
   a. Executive Fire Officer (EFO) Certification or Bachelor's Degree Preferred
   b. 1 year experience as Captain or above in DFD

    c.  Active DFD Employee

3. Fire Marshal;
   a. Bachelor's Degree Preferred
   b. Fire Inspector Certification from a nationally recognized organization preferred
   c. State of Michigan Certified Fire Inspector
   d. 5 years in Fire Prevention
   e. Active DFD Employee

4. Chief of Fire Prevention;
   a. Bachelor's Degree Preferred
   b. State of Michigan Certified Fire Inspector preferred
   c. 3 years of experience in Fire Prevention and 1 year as Captain in DFD
   d. Active DFD Employee

5. Chief of the Training Division;
   a. Bachelor's Degree Preferred
   b. State of Michigan Instructor Coordinator – Fire preferred
   c. EMS certification preferred; as of July 1, 2017 required
   d. 3 years in Training Academy
   e. Active DFD Employee

6. Chief of Community Relations Division
   a. Bachelor's Degree Preferred
   b. Demonstrated participation in community driven activities including work with children, civil and/or other community groups
   c. 10 years experience in DFD
   d. Active DFD Employee

7. Fire Investigator Chief – Arson;
   a. Bachelor's Degree Preferred
   b. State of Michigan Certification Arson Investigator preferred
   c. State of Michigan certified police officer
   d. 3 years experience in Arson; 1 year experience as Captain
   e. Active DFD Employee

8. Supervising Fire Dispatcher – Chief;
   a. Bachelor's Degree Preferred
   b. EMD and EFD Certification preferred; as of July 1, 2017
   c. 10 years experience in DFD
   d. Active DFD Employee

9. Senior Chiefs (2);
   a. Bachelor's Degree or Eastern Michigan University Staff and Command or EFO preferred
   b. 1 year experience as battalion chief
   c. Active DFD Employee

10. Chief of Plans and Examinations
    a. Bachelor's Degree Required
    b. 3 years experience in Fire Marshall Division
    c. Active DFD Employee

D.    Reversion Rights. If an Employee is removed from a Designated Job Classification (for a reason other than discharge for just cause), he/she shall revert to their prior position once a vacancy exists.

E.    Position Postings. All open positions for designated job classifications will be posted a minimum of seven (7) days internally to the entire Department. The Executive Fire Commissioner will select individuals from the eligible pool of candidates to interview.

F.    No Candidate Promotion. In the event that no candidate is available, a person in a lower rank can be considered for the open position provided that person meets the qualifications for the next higher position as stated in Article 7, Section B (e.g., a Captain can be considered for promotion to Senior Chief (bypassing Battalion Chief) if the Captain meets the qualifications for Battalion Chief). This can continue down the ranks in reverse order until the promotion is filled.

## 8.    GRIEVANCE PROCEDURE – NON-DISCIPLINARY GRIEVANCES

A.    Subject to Section B of this Article, Employees will have the right to present grievances in accordance with the procedure provided herein.

B.    Employees in the Designated Job Classifications shall have no right to present grievances under this Article. Probationary Employees shall have no right to present grievances under this Article, except that such Employees may present grievances concerning their pay.

C.    The Association will deliver grievances directly to the Executive Fire Commissioner or his/her designee via e-mail or hand delivery. The written grievance will set forth the name(s) of the Employee or Employees involved and the provisions of this Agreement, if any, that the grievant claims have been violated. Receipt of the grievance will be acknowledged by the Executive Fire Commissioner or his/her designee who receives the grievance. Any grievance not filed within ten (10) calendar days of the occurrence of the alleged violation or within ten (10) calendar days of an Employee or the Association becoming aware of an alleged violation will be considered untimely and will not be processed.

D.    The informal resolution of differences or grievances is urged and encouraged to be resolved at the lowest possible level of supervision.

E.    Immediate supervisors, Division Heads, and reviewing officers shall consider promptly all grievances presented to them and, within the scope of their authority, take such timely action as is required.

F.    Grievances shall be processed according to the following procedure:

**STEP 1 – Written – Division Head:**
An Employee's Division Head shall hear grievances at Step 1 of this grievance procedure and respond to grievances on behalf of the City. The Division Head will provide a written answer to the Director or Union Officer within seven (7) calendar days after receipt. Acceptance or rejection of the Division Head's answer will be written on the grievance form by the Director or Union Officer.

**STEP 2 – Appeal to the Executive Fire Commissioner:**
If the grievance is not satisfactorily adjusted at Step 1 or acted upon by the Division Head within seven (7) calendar days, it may be appealed by the Director or Union Officer to the Executive Fire Commissioner or his designee within three (3) calendar days. A meeting to discuss the grievance will be held between the President or his/her designee, the grievance committee, and the Executive Fire Commissioner or his/her designee within ten (10) calendar days after receipt of the grievance by the Executive Fire Commissioner. A written decision will be rendered within ten (10) calendar days of the meeting.

G. <u>Medical Grievance Procedure</u>. All grievances involving medical issues, including but not limited to sick leave, qualifications to perform work, requests for light duty assignments, or accommodation of disabilities, will be filed with the Executive Fire Commissioner or his/her designee, with a copy to the President of the Association. The Department and the Association will select a neutral physician to resolve any disputes concerning medical issues. Such a neutral physician must be licensed to practice and currently practicing medicine. To the extent that the Department and Association cannot agree on a neutral physician, the neutral physician will be mutually selected by the Employee's treating physician and the Fire Department's designated physician. The decision of the neutral physician shall be final and binding with no right of appeal.

H. Notwithstanding any other provisions herein, individual Employees may present their own grievances to their Division Head and have them adjusted without the intervention of the Director or Union Officer, provided, however, that the Department has given the Director or Union Officer notice and an opportunity to be present at such adjustment. Further, the Association has the exclusive authority to submit a member's unresolved grievance to arbitration under Article 9.

I. A decision issued by the Department at a step of the grievance procedure shall be final unless appealed within the time limits set forth above. Any grievance not responded to by the Department within the time limits set forth above will be automatically moved to the next step in the grievance procedure.

J. In instances wherein the subject matter of the grievance lies within the jurisdiction of specific City agencies (e.g., payroll, etc.), the grievance steps may be reduced in order to bring the grievance to the agency's immediate attention for a recommendation as to the action to be taken. Further, the Executive Fire Commissioner and the President of the Association will be permitted at their discretion to participate at any step of the grievance procedure.

K.   The City shall not be required to pay back wages more than ten (10) working days prior to the date a written grievance is filed, except as to shortages. In the case of a pay shortage of which the Employee could not have been aware before receiving his/her pay, any adjustment shall be retroactive to the beginning of the pay period covered by such pay, if the Employee files his/her grievance within ten (10) working days after receipt of such pay.

## 9.   ARBITRATION – NON-DISCIPLINARY MATTERS

A.   Subject to Section B of this Article, any unresolved grievance relating only to the interpretation, application, or enforcement of a specific article and section of this Agreement or any Supplementary Agreement, hereto having been processed fully through the last step of the grievance procedure, may be submitted to arbitration by the Department or the Association in strict accordance with the procedure provided herein.

B.   The Designated Job Classifications shall have no right to arbitration under this Article.

C.   Grievances may be submitted to arbitration according to the following procedure:

1.   Arbitration may be initiated by written notice to the other party of an intention to arbitrate. Such written notice of intent to arbitrate must be made within ten (10) calendar days after receipt of the Step 2 answer. Upon receipt of notice to arbitrate, the parties will refer the grievance to an arbitrator on its permanent panel. Failure to adhere to these time limitations will result in the matter being considered settled on the basis of the last decision.

2.   It will be within the authority of the arbitrator to make a decision binding upon the parties regarding the interpretation, application, or enforcement of the Agreement.

3.   The arbitrator will not consider any evidence submitted by either party, which was not produced in the grievance procedure unless such evidence was not then known to the party submitting the same.

4.   The costs of the arbitration will be shared equally by the parties, except that each party will make arrangements to pay its own attorneys and witnesses. In cases where the arbitrator provides that either party has filed or denied a grievance in bad faith, the arbitrator will have the discretion to assess all costs and expenses of the arbitration hearing, including reasonable attorneys' fees, against the non-prevailing party.

5.   The parties may request in writing of each other co-operation to have available at the arbitration proceedings any witnesses requested by the other party.

6.   If the unresolved grievance pertains to a medical issue, including but not limited to sick leave, qualifications to perform work, requests for light duty assignments, or accommodation of disabilities, the arbitration procedure specified in this Article will not apply, and the parties will instead select a neutral physician to

resolve any disputes concerning medical issues. Such a neutral physician must be licensed to practice and currently practicing medicine. The neutral physician will be jointly selected by the Department and the Association. To the extent the Department and Association cannot agree on a neutral physician, the neutral physician will be mutually selected by the Employee's treating physician and the Fire Department's designated physician.

D.     Selection of Arbitrator and Permanent Panel.

    1.    Within thirty (30) calendar days after the execution of this Agreement, the parties shall convene and select five (5) disinterested persons qualified in labor-management relations to serve as permanent umpires. If the parties are unable to agree upon five (5) individuals to serve as permanent umpires, for each unfilled position, the Director of the Michigan Employment Relations Commission (MERC) shall be requested to submit the names of five (5) disinterested persons qualified and willing to act as impartial arbitrators. From each list, the City and Union shall each alternately strike one name until four (4) names have been eliminated and the person whose name remains on the list shall be selected to act as one of the five (5) permanent umpires.

    2.    If at any time either party desires to terminate the service of an umpire, it shall give notice in writing to that effect to the other party, specifying the date of termination. The parties shall then send a joint written notice to the umpire of his/her termination. Neither party may terminate the services of an umpire unless he/she has heard at least one (1) case.

    3.    Once the umpire has received written notice that his services are terminated, he shall not hear any further cases. However, he shall render decisions on all cases that he has heard prior to receiving such notice.

    4.    In the event an umpire is terminated, a new umpire shall be immediately selected in accordance with the procedure described in Section D.1.

    5.    The arbitrators will hear cases on a chronological rotation.

E.     There shall be no appeal from the decision of an arbitrator if made in accordance with his/her jurisdiction and authority under this Agreement. It shall be final and binding on the Association, on all bargaining unit members, and on the City. The Association will actively discourage attempts by any bargaining unit Employee to appeal a decision of the arbitrator to any Court or labor board, and will not aid or abet in any such attempt.

F.     In the event a case is appealed to the arbitrator and he/she finds that the arbitrator has no power or authority to rule on such case, the matter shall be referred back to the parties without decision or recommendation on the merits of the case.

G.     The decision of an arbitrator in any case shall not require a retroactive wage adjustment in any other case. Either party may, prior to the submission of a dispute to arbitration,

state, and the opposite party is bound to agree, that the award not be binding precedent in analogous situations pending at that time.

H.   The arbitrator shall limit his/her decision strictly to the interpretation, application, or enforcement of the specific articles and sections of this Agreement, and he/she shall be without power or authority to make any decisions:

1.   Contrary to, or inconsistent with or modifying or varying in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law.

2.   Involving the exercise of discretion by the City under the provisions of this Agreement, its Charter, or applicable law.

3.   Limiting or interfering in any way with the powers, duties, or responsibilities of the City under its Charter, applicable law, and rules and regulations having the force and effect of law.

4.   Changing, altering, or modifying any practice, policy, or rule presently or in the future established by the City as long as such practice, policy, or rule does not conflict with this Agreement.

5.   Implying any restriction or condition binding upon the City from this Agreement, it being understood that, except as such restrictions or conditions upon the City are specifically set forth herein, or are fairly inferable from the express language of any article or section hereof, the matter in question falls within the City's management rights under Article 3.

6.   Concerning the establishment of wage scales, rates on new or changed jobs, or change in any wage rate.

7.   Providing agreement for the parties in those cases, where by their contract, they may have agreed that further negotiations should occur to cover the matters in dispute.

8.   Granting any right or relief for any period of time whatsoever prior to the Effective Date of this Agreement or subsequent to the date upon which this Agreement shall terminate.

## 10.   DISCIPLINE PROCEDURE

A.   The Department reserves the right to discipline, discharge, demote, and/or suspend Employees for just cause. Subject to Section B of this Article, every Employee will have the right to contest discipline in accordance with the procedure provided herein.

B.   Probationary Employees and Employees in Designated Job Classifications

1.  Notwithstanding any other provisions of this Agreement, probationary employees shall have no right to contest discipline under this Article.

2.  Notwithstanding any other provision of this Agreement, Employees in the Designated Job Classifications shall have no right to contest discipline, except in cases of discharge. If an Employee serving in one of the Designated Job Classifications is discharged, the Employee shall have the right to contest only his/her discharge. An Employee in a Designated Job Classification shall not be discharged from employment without just cause.

C.  <u>Investigation/Discipline</u>. Investigations regarding any potential or alleged misconduct, actions, or omissions that may result in discipline will be completed as expeditiously as practicable. If it determines that disciplinary action is warranted, the Department will provide the Employee with written notice of potential disciplinary action (with a copy to the Association) as soon as practicable after the completion of the investigation but in no event more than twenty-one (21) days after the Department knew or should have known about the act that forms the basis for the disciplinary action. Except as provided in Section H, no discipline will be implemented or incorporated into an Employee's file until the completion of the applicable procedures set forth below.

D.  <u>Preliminary Hearing</u>. Within seven (7) days of the notice of potential discipline, the Employee may appeal the matter to a Preliminary Hearing (which will be presided over by a Deputy Commissioner or his/her designee).

1.  The Preliminary Hearing is a non-adversarial proceeding, which must be held within fourteen (14) days of the date the notice of potential disciplinary action is issued.

2.  Prior to the Preliminary Hearing, an Employee will have the right to review the charges against him and make a statement of explanation. The Employee shall have the right to representation by the Association during the Preliminary Hearing.

3.  The Deputy Commissioner or his/her designee presiding over the Preliminary Hearing will have the authority to rescind, reduce, affirm, or increase any disciplinary penalty.

4.  An Employee may elect to appeal any decision from a Preliminary Hearing to expedited arbitration when a suspension of more than twenty-four (24) hours has been rendered.

5.  Subject only to the Executive Fire Commissioner's discretion, any written reprimand or disciplinary suspension of twenty-four (24) hours or less will be considered final and binding with no right of appeal.

E.  <u>Mediation</u>. Within two (2) calendar days of the Preliminary Hearing, an Employee may request disciplinary mediation. If both parties agree to proceed to mediate, the mediation will be held within fourteen (14) calendar days of the date the discipline was issued.

Whenever possible, the parties will utilize mediators referred by the Michigan Employee Relations Commission (MERC) or the Federal Mediation and Conciliation Service (FMCS). If a mediator is not available within the allotted time period, the parties may decide to schedule a meeting between the disciplined Employee, the Association, and any representatives the Department deems appropriate in an attempt to resolve pending disciplinary issues. The sole purpose of the mediation will be to attempt to amicably resolve any disciplinary disputes. The mediator will have no authority to issue any ruling or to otherwise bind the parties. In the event that the parties fail to settle the dispute at the mediation, no statements made by the Employee or on the Employee's behalf during the mediation will be used against the Employee in connection with any arbitration.

In the event a settlement is reached, immediately following the mediation, the Department will prepare correspondence to the Employee and his/her bargaining representatives summarizing the settlement including: date and time met, parties present, and final disciplinary disposition, including level of discipline, and any other information pertinent to the discipline and/or the reduction in discipline (if applicable). In no event should the discussions between the parties be memorialized. The date of the correspondence will serve as the date of the implementation of the disciplinary action.

F.   Expedited Arbitration. To the extent that a dispute regarding a suspension of more than twenty-four (24) hours or the discharge of an Employee cannot be resolved through the Preliminary Hearing or mediation (if applicable), an Employee will have the right to appeal the disciplinary action to expedited arbitration. The Employee must appeal the case to arbitration by providing written notice to the Department within three (3) days of the date of the Preliminary Hearing, and the arbitration hearing must be held within forty-five (45) days of the date the appeal was filed by the Employee, so long as an arbitrator on the panel has availability within a forty-five (45) day period.

1.   Both the Employee and the Department will have the right to be represented by counsel and to present and cross-examine witnesses.

2.   The arbitrator will issue his/her decision in writing within seven (7) calendar days of the hearing. The arbitrator's decision will be limited to determining whether the Employee committed the offense or infraction which precipitated the disciplinary action. The arbitrator will have no authority to reduce or mitigate disciplinary penalties.

3.   The costs of the arbitration will be shared equally by the parties.

4.   The parties may request in writing of each other cooperation to have available at the arbitration proceedings any witnesses requested by the other party.

5.   The decision of the arbitrator will be final and binding on the Employee and the Department.

G.	Selection of Arbitrators for Expedited Arbitration.

    1.	Within thirty (30) calendar days after the execution of this Agreement, the parties shall convene and select five (5) disinterested persons qualified in labor-management relations to serve as arbitrators. If the parties are unable to agree upon five (5) individuals to serve as arbitrators, for each unfilled position, the Director of the Michigan Employment Relations Commission (MERC) shall be requested to submit the names of five (5) disinterested persons qualified and willing to act as impartial arbitrators. From each list, the City and Union shall each alternately strike one name until four (4) names have been eliminated and the person whose name remains on the list shall be selected to act as one of the five (5) arbitrators.

    2.	If at any time either party desires to terminate the service of an arbitrator, the party shall give notice in writing to that effect to the other party, specifying the date of termination. The parties shall then send a joint written notice to the arbitrator notifying him/her of his/her termination from the panel. Neither party may terminate the services of an arbitrator unless he/she has heard at least one (1) case.

    3.	Once the arbitrator has received written notice that his/her services are terminated, he/she shall not hear any further cases. However, he/she shall render decisions on all cases that he/she has heard prior to receiving such notice.

    4.	In the event an arbitrator is terminated, a new arbitrator shall be immediately selected in accordance with the procedure described in Section G.1.

    5.	The arbitrators will hear cases on a chronological rotation. With respect to Expedited Arbitration cases, to the extent no arbitrator on the panel is available to hear the case within forty-five (45) days, the arbitrator with the next available date to hear the case will be selected.

H.	Discharge Cases. An Employee who is discharged will have the right to appeal his/her discharge to expedited arbitration. Where a decision is made to discharge an Employee, that Employee will be suspended without pay pending the outcome of the disciplinary process set forth in this Article.

I.	Written Reprimand. All written reprimands will be issued and implemented as soon as practicable following an investigation. Written reprimands may only be used as a basis for progressive discipline for two (2) years after they are issued.

J.	After an Employee is ordered to make a written statement in response to any alleged misconduct or possible misconduct on his/her part, he/she shall make such written statement prior to completion of his/her tour of duty, but in no event more than twenty-four (24) hours from the time of the order in which to comply. If the Employee submits his/her written statement after his/her tour of duty ends, he/she shall receive no compensation for any overtime or mileage required to make his/her statement.

K.     The Director or Union Officer shall have the right to be present at all disciplinary hearings at the request of the Employee, but shall not have the right to be present during administrative proceedings in the preliminary stages of investigation.

L.     An Employee will be notified in writing (with a copy to the Association) of the results of any departmental investigation of him/her within ninety (90) days after the investigation is completed.

M.     <u>Criminal Charges</u>.

In the event criminal felony charge(s) are brought against a member, during the period of time that the criminal felony charge(s) are pending, the Commissioner has the discretion to (a) keep the member working in his regular position, (b) assign the member to a 40-hour work week with no loss of pay, benefits, or seniority, or (c) place the member on a leave without pay (LWOP), or any combination of the foregoing. Pending felony charge(s) include deferred felony charge(s) as to which no final disposition has yet been made. Any LWOP imposed shall be in accordance with past practice with respect to seniority and benefits.

Should the member ultimately be convicted of a felony (or felonies), the member shall be discharged, without make whole relief for any LWOP period imposed while the felony charge(s) were pending. A felony conviction includes a plea of guilty or nolo contendere to a felony.

Should the member ultimately no longer have a felony charge(s) pending against him/her for any reason other than a felony conviction (e.g., because felony charges were withdrawn or dismissed, or the member was found not guilty of any felony, or the member plead guilty to a misdemeanor with felony charge dismissed, or for any other reason), once the felony charge(s) are no longer pending against the member, the member shall immediately be made whole for all pay and benefits withheld during any LWOP period, and the member shall be immediately returned to his/her regular position (if not already so working); after that has occurred, the Department may institute disciplinary proceedings against the member.

## 11.    NO STRIKE CLAUSE

A.     No Employee covered by this Agreement shall engage in, induce or encourage any strike, work stoppage, slowdown, sit down, stay in, or withholding of services. The Union agrees that neither it nor any of its officers or agents will call, institute, authorize, participate in, sanction, ratify or encourage any such strike, work stoppage, slowdown, sit down, stay in, or withholding of services.

B.     Should any Employee or group of Employees covered by this Agreement engage in any strike, work stoppage, slowdown, sit down, stay in, or withholding of services, the Union shall forthwith disavow any such strike, work stoppage, slowdown, sit down, stay in, or withholding of services and shall refuse to recognize any picket line established in connection therewith. Furthermore, at the request of the City, the Union shall take all reasonable means to induce such Employee or group of Employees to terminate the

strike, work stoppage, slowdown, sit down, stay in, or withholding of services and to return to work forthwith.

C.  The City shall have the right to discipline or discharge any Employee(s) participating in such interference, and the Union agrees not to oppose such action when properly taken. It is understood, however, that the Union may grieve the discipline or discharge of any Employee(s) disciplined or discharged by the City for participating in those actions listed in Sections A and B of this Article.

D.  To the extent that the Union, and all its officers and agents, fully comply with Sections A and B of this Article, there shall be no liability on the part of the Union or its officers and agents for any damages resulting from the unauthorized breach of this Article by individual members of the Union.

## 12.  SENIORITY

A.  <u>Seniority</u>. Seniority is defined as the length of continuous service within the Department without interruption or breaks. Seniority, as defined above, is established to serve as a basis for determining Employee seniority rights provided for in this Agreement including the order of demotion or lay off in the event of a reduction in force and the reemployment rights of Employees.

B.  <u>Continuous Service</u>. Continuous service shall mean employment with the Department without interruption or breaks.  The following shall not be considered breaks in service.

   1.  Service in the Armed Forces of the United States up to five (5) years, or longer if such service is exempt under applicable law.

   2.  Absence from work due to injuries compensated for under the Workers' Compensation Act of the State of Michigan.

   3.  Lay off as a result of a reduction in force for a period not exceeding two (2) years.

   4.  Other approved leaves of absence for a period not exceeding one (1) year.

C.  <u>Personal Leave of Absence</u>. Employees may be granted a personal leave by the City for up to one (1) year. Seniority accrued prior to the leave will be retained but Employees will not accumulate additional seniority for the period of the leave, except that this provision shall not apply to leaves related to the military.

D.  <u>Loss of Seniority</u>. An Employee shall lose his/her seniority for the following reasons only:

   1.  Resignation.

   2.  Retirement.

   3.  Discharge.

4. If an Employee working 8- or 10-hour shifts fails to report to work for five (5) consecutive calendar days, an Employee working 12-hour shifts fails to report to work for four (4) consecutive tours of duty, or an Employee working 24-hour shifts fails to report to work for two (2) consecutive tours of duty, without providing proper notice to the Department, unless the Employee, in the judgment of the Department, is completely incapacitated through no fault of his/her own or subject to some other emergency situation that, through no fault of his/her own, makes him/her unable to report said absence and is able to supply sufficient proof thereof.

5. If an Employee working 8- or 10-hour shifts fails to report within three (3) consecutive calendar days, or an Employee working 12- or 24-hour shifts fails to report to work within two (2) consecutive tours of duty, after leave of absence, vacation, or suspension.

6. Failure of a laid-off Employee to notify the Department of his/her intent to return to work within seven (7) days after notice has been sent by the Department to the laid-off Employee at his/her last address on the Department's records at time of layoff.

7. Absence from work for any reason (including lay-off) in excess of two (2) years, except as set forth in Section B.1 of this Article.

E. Resolving Ties in Seniority. Where two (2) or more persons have the same seniority date, the Employee who was first hired, according to the time stamp on his/her job application, shall be deemed as having the greater seniority.

F. Seniority Lists. The City will e-mail to the Union, upon request (limited to two (2) times per year), a seniority list showing each Employee's name, address, department, classification, and Department seniority date.

G. Probationary Employees.

1. The probationary period for Employees commencing employment in the Fire Department shall be the first twelve (12) months of their employment in the Department. Such Employees are hereafter referred to as Trial Firefighters.

2. The Union shall represent Trial Firefighters for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment; provided, however, that Trial Firefighters shall have no right to present grievances under Article 8, except that such Employees may present grievances concerning their pay.

3. The Department may, in accordance with Human Resources Department and Civil Service Rules, extend a Trial Firefighter's probationary period or take action to separate the Trial Firefighter as a probationary employee.

4. The Department shall notify the Union of the reasons for any extension of probation.

H. Promotions Involving Positions Other Than Designated Job Classifications.

1. Up to and including June 30, 2015, the promotional criteria and procedures set forth in the parties' 2009-2013 collective bargaining agreement shall apply to all promotional vacancies within the Union's bargaining unit, except for vacancies within the Designated Job Classifications (which are addressed in Article 7). Starting on July 1, 2015, the promotional criteria and procedures set forth in the parties' 2009-2013 collective bargaining agreement shall be null and void.

2. Promotions Within The Firefighting Division On and After July 1, 2015. Starting on July 1, 2015, promotional vacancies within the Firefighting Division, except for vacancies within the Designated Job Classifications (which are addressed in Article 7), shall be filled in accordance with the following terms:

a. Subject to Section H.2.m, promotional vacancies within the Firefighting Division (except for designated Job Classifications) shall be filled by the Executive Fire Commissioner, or his or her designee, based exclusively upon the promotion eligibility list rankings described below in Sections H.2.c and H.2.l. The Department shall develop and maintain a promotion eligibility list for each classification. A promotion eligibility list shall remain effective for two (2) years, as long as active employee names remain on the list.

b. The number of slots on the promotion eligibility list for a classification shall be determined by the Department, based upon the number of promotions that the Department reasonably expects to make into that classification during the two (2) year period that the list will be effective. The Department will inform the Union of this number prior to the announcement of the Administered Examination for the position.

c. Employees shall be placed on the promotion eligibility list for a classification based upon performance on an Administered Examination. The Employee with the highest score on the Administered Examination shall be placed first on the promotion eligibility list, the person with the next highest score shall be placed second, and so on, until all slots on the list are filled. Seniority shall be used to break any ties in scores on the Administered Examination. The Department shall provide the Union with a copy of each promotion eligibility list within thirty (30) days of its completion, prior to publicly posting the list. When the Department updates eligibility lists, remaining names not promoted will be placed on top of the list in their existing order.

d. The Department shall announce each Administered Examination at least ninety (90) days in advance of its commencement, unless the parties agree

to a shorter time period. To be eligible for an Administered Examination for a classification an Employee:

i.    Must submit to the Department a letter of application (resume optional) for promotion to the classification within the time period stated in the examination announcement.

ii.    Must satisfy the educational prerequisites applicable to the classification to which he/she seeks to be promoted:

    1.    For promotions to Sergeant classifications:

        a.    Fire Officer I & II certification;
        b.    EMT licensure for any promotions after July 1, 2016.

    2.    For promotions to Lieutenant and Captain classifications:

        a.    Fire Officer I, II, & III certification;
        b.    EMT licensure for any promotions after July 1, 2016.

    3.    For promotions to Battalion Chief classifications:

        a.    Fire Officer I, II, & III certification;
        b.    EMT licensure for any promotions after July 1, 2016.
        c.    At least an Associate's Degree for any promotions after July 1, 2017.

iii.    Upon request, and on a one-time basis, the City will provide each Employee with Fire Officer certification and EMT training selected by the City. Additionally, the City shall reimburse Employees for EMT licensing costs. In addition, the City will pay the state registry test fees up to three times for each employee.

e.    The Department will provide the Union with the Administered Examination announcement at the time of posting. Following the closure of the time period stated in the examination announcement, the Department will provide the Union with a list of Employees who submitted a letter of application and a list of Employees who are eligible for the Administered Examination.

f.    Each Administered Examination shall consist of the following four (4) criteria: (1) Seniority; (2) Assessment of Candidate's Evaluation and Discipline History; (3) Written Examination; and (4) Oral/Proficiency Interview.

g. The weights assigned to the four (4) criteria that compose the Administered Examination shall be as follows:

    i. The total weight assigned to the Seniority criteria shall be 45%;

    ii. The total weight assigned to the Evaluation and Discipline History criteria shall be 15%;

    iii. The total weight assigned to the Written Examination criteria shall be 25%; and

    iv. The total weight assigned to the Oral/Proficiency Interview criteria shall be 15%.

h. For the Seniority criteria, full marks shall be given as follows:

    i. For promotions to Sergeant classifications: 96 months experience in the Detroit Fire Department;

    ii. For promotions to Lieutenant classifications: 132 months experience in the Detroit Fire Department;

    iii. For promotions to Captain classifications: 168 months experience in the Detroit Fire Department; and

    iv. For promotions to Battalion Chief classifications: 204 months experience in the Detroit Fire Department.

Notwithstanding the foregoing:

    i. No Employee may be promoted to a position covered by this Section H.2 unless he/she has completed at least thirty (30) months in the classification immediately below the vacancy.

    ii. An Employee must have 96 months' experience in the Detroit Fire Department Firefighting Division to apply for promotion to Sergeant classifications within the Firefighting Division.

i. For the Evaluation and Discipline History criteria, the following considerations shall apply:

    i. For each candidate, the Department shall average the candidate's overall rating on his or her last three (3) evaluations. A candidate shall receive full marks in the Evaluation and Disciplinary History criteria if his or her average rating is a 5.0 (highest), and pro rata marks for lower average ratings.

ii.  The Department shall conduct evaluations every six (6) months, and each evaluation shall consider an Employee's job performance during the preceding six (6) months. The Employee will receive a copy of the evaluation. If the Employee disagrees with the evaluation, the Employee may appeal the evaluation to the next superior officer.

iii.  Each evaluation shall rate an Employee's performance on a five point scale, from 1.0 (lowest) to 5.0 (highest). Criteria for evaluation shall include professional knowledge, performance of job duties, mentorship of other Employees, self-improvement, teamwork, leadership, professional appearance, adherence to safe work practices, effectiveness in reporting and administrative duties, disciplinary history and attendance record. Each Employee shall receive an overall rating based upon scores in the individual evaluation criteria.

j.  For the Written Examination criteria, a candidate will receive full marks for passage of the exam. A candidate passes the exam when he/she receives 70% of the available points. Upon release of a candidate's Written Examination score, the Department will provide the candidate with his/her Written Examination answers and the Written Examination answer key.

k.  For the Oral/Proficiency Interview criteria, the following considerations shall apply:

i.  The Panel that administers and scores the Oral/Proficiency Interview will consist of persons outside the Detroit Fire Department.

Each interview shall consist of a mix of oral and written questions, and each candidate for a rank shall be asked uniform and identical questions. The Department will provide the Union with a list of interview questions prior to the interviews, that may be asked.

ii.  Questions may relate to any factor indicative of leadership ability including the following: knowledge of Department policies and procedures, knowledge of Department rules and regulations, knowledge of Department SOPs and SOGs, knowledge of ICS, courage and commitment to duty, and ability to handle personnel problems. Additionally, candidates may be asked to conduct a teaching demonstration and may be provided emergency simulations to assess.

iii.  The evaluators shall rate the quality of a candidate's responses on a five point scale, from 1.0 (lowest) to 5.0 (highest). A candidate

shall receive full marks for the Oral/Proficiency Interview criteria based upon a score of 5.0, and a pro rata mark for a lesser score.

    iv.    Each interviewee shall be notified of his/her results by letter within ten (10) days after the Oral/Proficiency Interviews are completed. Thereafter, any candidate may review his/her results.

l.    At any time, an individual on a promotion eligibility list may request to be removed from that eligibility list. Additionally, Employees may be removed from a promotion eligibility list by the Department, or receive a lower ranking on an eligibility list, for cause. To the extent that any Employee is removed from a promotion eligibility list, or receives a lower ranking on an eligibility list by operation of this Section H, the Department shall furnish the Union with an amended promotion eligibility list.

m.    <u>Performance Promotions</u>. Notwithstanding any other provision of this Agreement:

    i.    Starting from the first promotion going forward, the Executive Fire Commissioner may choose every sixth promotion to each rank (Sergeant, Captain, Lieutenant, Battalion Chief) at his discretion, on the basis of performance. Every sixth promotion will be counted on a consecutive basis and counting will carry over from eligibility list to eligibility list.

    ii.    To be eligible for a performance selection promotion, an Employee must be on the promotion eligibility list for the Classification at issue.

    iii.    In selecting from among such individuals, the Executive Fire Commissioner, or his or her designee, may take into account any factor indicative of performance or leadership ability. The Department will notify the Union, in writing, of the identity of the Employee who receives a performance selection promotion at the time of promotion.

3.    <u>Transfers and Promotions in Divisions Other Than the Fire Fighting Division On and After July 1, 2015</u>. Starting on July 1, 2015, transfers to and promotions within divisions other than the Firefighting Division, except for vacancies within the Designated Job Classifications (which are addressed in Article 7), shall be based upon Employees' ascertained qualifications and shall be filled in accordance with the following terms:

a.    <u>Posting of Notice.</u> Where a vacancy exists for a position outside the Firefighting Division (other than a Designated Job Classification), the Department will post notice of the job vacancy for ten (10) days in the Commissioner's Bulletin. Each such notice shall identify the vacant job

classification, the qualifications for the position, the salary, the location of any written examination for the position, and the date and time when the written examination will be held.

b.  To be eligible for transfer or promotion to a classification outside of the Firefighting Division, an Employee must satisfy the following prerequisites:

    i.  For all promotions to Lieutenant and Captain:

        1.  Fire Officer I, II & III certification.

    ii.  For promotions to Lieutenant classifications (arson, fire prevention, community relations): Sixty (60) months experience in the Detroit Fire Department.

    iii.  For promotions to Lieutenant classifications (training academy): Ninety-six (96) months experience in the Detroit Fire Department, with sixty (60) months experience in the Firefighting Division.

    iv.  For promotions to Fire Investigation Lieutenant (arson), Employees must have sixty (60) months experience in the Detroit Fire Department. Employees will be subject to a background check prior to placement in a Fire Investigation Lieutenant position. Qualifying applicants will be required to attend and pass the basic police training course, which is a 26-week training program to remain in the classification after being promoted. An Employee placed in the Fire Investigation Lieutenant position who fails to pass the basic police training course will revert back to the position that the Employee held immediately prior to the Fire Investigation Lieutenant position.

    v.  For promotions to Central Communications Division:

        1.  Assistant Fire Dispatcher: None

        2.  Senior Asst. Fire Dispatcher: Two (2) years in lower position

        3.  Fire Dispatcher: Two (2) years in lower position; Emergency Fire Dispatcher (EFD) certification after July 1, 2016; Emergency Medical Dispatcher (EMD) certification after July 1, 2016; with EFD and EMD training provided by the City.

        4.  Senior Fire Dispatcher: Two (2) years in lower position; Emergency Fire Dispatcher (EFD) certification after July 1, 2016; Emergency Medical Dispatcher (EMD) certification

after July 1, 2016 with EFD and EMD training provided by the City.

     5.    Asst. Supervising Fire Dispatcher: Two (2) years in lower position; at least an Associate's degree after July 1, 2017.

vi.    No Employee may be promoted to a position covered by this Section H.3 unless he or she has completed at least thirty (30) months in the classification immediately below the vacancy, except for promotion to the Communications Division.

vii.    Seniority in the non-firefighting positions will not apply as seniority in the firefighting positions. Seniority in the firefighting positions will not apply in the non-firefighting positions.

c.    <u>Application.</u> Employees interested in applying for the vacant position outside the Firefighting Division must meet the prerequisites and qualifications listed on the posting and must submit a letter of application (resume optional) to the Department during the ten (10) day posting period. The Department will provide the Union with each notice of job vacancy prior to posting. After the conclusion of the ten (10) day posting period, the Department will provide the Union with a list of employees who have submitted a letter of application.

d.    <u>Selection.</u> In filling vacancies outside the Firefighting Division that are subject to this Section H.3, the Executive Fire Commissioner, or his or her designee, will make a selection based upon performance upon an Administered Examination. The weights assigned to the four (4) criteria that compose the Administered Examination shall be as follows:

i.    Seniority: 45%

ii.    Written Examination: 25%

iii.    Evaluation and Discipline History: 15%

iv.    Oral/Proficiency Interview: 15%

The Employee with the highest score on the Administered Examination shall be placed first on a vacancy or transfer eligibility list, the person with the next highest score shall be placed second, and so on, until all slots on the list are filled. The Executive Fire Commissioner, or his or her designee, will make a selection based exclusively upon the vacancy or transfer list rankings.

e.    In assessing the criteria in H.3.d. the Executive Fire Commissioner, or his or her designee, shall apply the considerations described in Section H.2 above.

f.   If an Employee transfers from the firefighting division to another division and has an EMT license at the time of the transfer, that Employee is required to maintain the EMT license.

4.   <u>Miscellaneous Provisions.</u>   As of the Effective Date of this Agreement, the following miscellaneous provisions shall apply:

a.   <u>Executive Fire Commissioner's Discretion.</u>

i.   Notwithstanding any other provision of this Agreement, the Executive Fire Commissioner shall have the discretion to deploy, assign, and reassign individuals in Lieutenant, Captain, and Battalion Chief classifications in a manner consistent with the needs of the Department, but in no case for disciplinary reasons or if it results in a change in work hours or schedule.

ii.   Resumes will be required for the position of Battalion Chief and above.

b.   <u>Performance of Essential Functions.</u>   To be selected for any job vacancy, an Employee on leave of absence due to injury must be able to immediately return to full duty and to perform the essential functions of his/her new position, as certified by a physician designated by the Department.   An individual passed over for a promotion within the Firefighting Division by operation of this Section H.4.b shall remain on the applicable promotion eligibility list while it is in effect, except as provided in Section H.2.m.

c.   <u>Physical Examination/Drug Test.</u>   Employees selected for promotion shall be required to pass a physical examination and a drug test.

d.   <u>Increases in Pay.</u>   An Employee selected to fill a job vacancy shall fill that position within twenty-four (24) hours.   The selected Employee shall not receive an increase in pay until he/she begins work on the new job classification.

e.   <u>Probationary Period.</u>   Employees who are promoted or placed in accordance with the terms of this Section H shall serve a six (6) month probationary period in the new rank or classification, except that Employees promoted to the position of Fire Investigation Lieutenant shall serve a twelve (12) month probationary period in the new rank. Employees shall be paid in accordance with their new rank during this probationary period.   Upon conclusion of the probationary period and recommendation of the Officer in Charge of the Division, the Employee may be retained or returned to his/her prior position at the discretion of the Executive Fire Commissioner or his/her designee.   In all events, Employees will receive seniority credit for work performed during promotional probationary periods.

f.    <u>Return to Prior Classification</u>. An Employee promoted or placed in accordance with the terms of this Section H who wishes to return to his or her prior classification may do so if a vacancy exists in the prior classification and provided further that the Employee shall not be eligible for promotion or placement on a promotion eligibility list for two (2) years thereafter. If no vacancy exists, the Employee must wait until a vacancy opens.

g.    <u>Anti-Nepotism Policy</u>. All Employee advancement decisions made in accordance with this Section H will be made on the basis of the criteria stated herein. It is inappropriate for individuals to be promoted on the basis of a close family relationship with any other City employee. However, no Employee who is eligible for a promotion shall be denied that promotion on the basis of a family relationship with another individual employed by the City.

h.    <u>Review Board</u>. The Department and the Union shall meet to develop a Review Board, which shall discuss the details, practices, and procedures associated with the promotion process described in this Section H, as well as any issues associated with the promotions process.

I.    <u>Transfers</u>.

1.    <u>Transfers Within the Fire Fighting Division</u>. Transfers between locations within the Firefighting Division shall be made based on seniority within rank. Company transfers shall be processed according to the following procedure:

a.    On a bi-annual basis (i.e., prior to the winter furlough drawing and prior to the summer furlough drawing), the Department shall post a list of vacancies for ten (10) calendar days. Employees interested in transferring locations must submit a transfer request to the Chief of Fire Operations during the ten (10) calendar day posting period.

b.    When an Employee's request for transfer is granted, his original position within a company will be considered a vacancy during the next transfer period.

c.    Mutual trades between Employees by way of the transfer procedure are not permitted.

d.    Transfer requests for a vacancy in a specific location shall have priority over promotees to the rank in which that vacancy occurs.

2.    <u>Employees Injured On Duty</u>. To be selected for voluntary transfer under this Section, an Employee on leave of absence due to injury or illness must be able to immediately return to full duty and to perform the essential functions of his/her new position, as certified by a physician designated by the Department.

3. <u>Executive Fire Commissioner's Authority</u>. The Executive Fire Commissioner may exclude transfers involving any division, section, entity, company, or location from the above procedure. Employees may be transferred (either temporarily or permanently) to any other division, section, entity, company, or location, except that Directors of the Union will not be involuntarily transferred from the Battalion they have been elected to serve during their term of office. Seventy-two (72) hours' notice will be provided in advance of any permanent transfer.

J. <u>Reduction In Force</u>. When there is an impending reduction in force within the bargaining unit, the City shall inform and consult with the Union as soon as there is any possibility of said reduction in force.

1. In the event of a reduction in force in the Department, it shall be made among all Employees in the same classification, according to seniority. The Employees with the least amount of service shall be the first laid off and the last to be recalled.

2. Any grievance submitted concerning a layoff will be submitted at Step 2 of the grievance procedure and the parties expressly agree that they will expedite the final resolution thereof.

## 13. DEFENSE AND INDEMNIFICATION

Chapter 13, Article 11 of the Municipal Code of the City of Detroit is incorporated by reference into this Agreement as if its terms were specifically set forth herein.

## 14. RESIDENCY

There is no requirement for bargaining unit members to reside within the City of Detroit. During the life of this contract, residency shall not be a condition of employment for any member of the bargaining unit.

## 15. VETERANS - RESERVES - EDUCATION

Nothing in this Agreement shall abridge the rights and preferences of veterans and members of the armed forces reserves, as provided by Federal, State, and Local Laws, Rules and Regulations.

## 16. MISCELLANEOUS

A. <u>Bulletin Boards</u>. The City will furnish, for the use of the Union, space for a bulletin board at each location where bargaining unit members are assigned. The bulletin boards shall not contain anything of a political or libelous nature.

B. <u>Physical Abilities Test</u>. Employees returning from leaves of absence lasting longer than one (1) year, including Employees returning from duty disability, must pass the Physical Abilities Test prior to returning to work.

C.  M.F.R. and E.M.T. Training, Licensure, and Work.

1.  Subject to the provisions of this Section and as a condition of employment, Employees must be licensed by the State of Michigan to perform Medical First Responder (M.F.R.) and Emergency Medical Technician (E.M.T.) work. Additionally, as a condition of employment, the Department may require Employees to perform M.F.R. and E.M.T. work.

2.  M.F.R. and E.M.T. Training. The Department shall require all Employees, at the City's expense, to complete training in M.F.R. and E.M.T. skills, subject to the terms of this Section.

    a.  Employees Hired Prior To The Effective Date Of This Agreement:

        i.  By October 1, 2014, the Department shall begin providing M.F.R. training to Employees hired prior to the Effective Date of this Agreement. Such Employees must complete M.F.R. training by December 31, 2015.

        ii. By January 1, 2015, the Department shall begin providing Employees hired prior to the Effective Date of this Agreement with E.M.T. training. Such employees must complete E.M.T. training by June 30, 2017.

    b.  Employees Hired After The Effective Date of This Agreement:

        i.  The Department shall provide Employees hired after the Effective Date of this Agreement with M.F.R. training as part of their required training at the Regional Training Center.

        ii. The Department shall provide Employees hired after the Effective Date of this Agreement with E.M.T. training within a reasonable period of time. The Department may make E.M.T. training part of required training at the Regional Training Center. Notwithstanding the foregoing, the Department shall not be obligated to provide E.M.T. training to new hires who are already licensed to perform E.M.T. work.

3.  M.F.R. and E.M.T. Licensure.

    a.  Beginning January 1, 2016, all Employees must be licensed to perform M.F.R. work. The Department may lay off any Employee who fails to become licensed by January 1, 2016, provided that the Department shall not layoff an employee who has not been offered M.F.R. training. An Employee laid off in accordance with this Section shall be promptly reinstated, with no loss of seniority, if he or she becomes licensed to perform M.F.R. work within 12 months of layoff. An Employee laid off

in accordance with this Section shall be discharged if he or she fails to become licensed to perform M.F.R. work within 12 months of layoff.

b.     Beginning July 1, 2017, all Employees must be licensed to perform E.M.T. The Department may lay off any Employee who fails to become licensed by July 1, 2017, provided that the Department shall not layoff an Employee who has not been offered E.M.T. training. An Employee laid off in accordance with this Section shall be promptly reinstated if he or she becomes certified to perform E.M.T. work within 12 months of layoff. An Employee laid off in accordance with this Section shall be discharged if he or she fails to become certified to perform E.M.T. work within 12 months of layoff.

c.     The Department shall have no obligation to provide to or otherwise pay for additional M.F.R. or E.M.T. training to an Employee laid off in accordance with this provision.

4.     Performance of M.F.R. and E.M.T. Work.

a.     The Department may assign M.F.R. work to Employees licensed to perform such work, and the Department may assign E.M.T. work to Employees licensed to perform such work.

b.     The Department may develop policies and procedures related to M.F.R. and E.M.T. assignments. The Department will meet and confer with the Union prior to developing, implementing, or amending any such policies and procedures.

c.     Those Employees performing M.F.R. or E.M.T. work must maintain, at the Department's expense, their license or certification as a condition of employment. Upon expiration of any stipulated licensure or certificate, the Employee shall have ninety (90) days to renew or restore the license or certificate. Employees not fulfilling those requirements are subject to discharge.

5.     Notwithstanding the foregoing, Employees with more than fifteen (15) years seniority as of the Effective Date of this Agreement shall not, as a condition of employment, be required to become licensed to perform E.M.T. work. This Section shall not impact or diminish the requirements for promotion set forth in Article 12.

6.     Notwithstanding any other provision of this Agreement, the Department may assign members of the Police Officers Association of Michigan and the Emergency Medical Service Officers Association (or any successors to those organizations) to any fire apparatus and assign to such individuals the following functions:

a.     Providing training on any aspect of M.F.R. or E.M.T. work;

b. Providing oversight or quality assurance on any aspect of M.F.R. or E.M.T. work;

c. Working as the fourth person on any fire apparatus team qualified to provide basic life support;

d. Working as the fifth person on any fire apparatus team qualified to provide advanced life support.

Individuals assigned the functions described in Section C.6.c or Section C.6.d of the Article must have Fire Fighter I & II certification. Employees may receive such certification from the DFD Training Academy. Employees who receive such certification outside of the DFD Training Academy will be required by the Department to complete refresher training specific to Detroit Fire Department operations.

7. The DFD shall provide the Association with thirty (30) days' notice prior to the Effective Date of the M.F.R. program pursuant to Section C.4.b of this Article.

8. When fifty percent (50%) of the bargaining unit members required to complete E.M.T. certification have successfully obtained such certification, the Department will meet and confer with the Association for the sole purpose of discussing wages.

9. Rapid Response Vehicles shall primarily be used for medical runs, but may respond as extra manpower to fire scenes. If a Rapid Response Vehicle is dispatched to a fire scene, it will assist the Rapid Intervention Team and/or address any medical emergencies on the fire scene.

D. <u>Injury-on-Duty Status</u>. Members who are injured on duty shall be carried on injured-on-duty status from the hour the injury is incurred, regardless if the following tour of duty is a Leave day, Extra leave day, or Extra-extra leave day.

E. <u>Mutual Benefit Fund</u>. At the request of the Union, the City shall deduct from the check of each member of the Active Mutual, an amount as determined by the Secretary of the Detroit Fire Department Mutual Benefit Fund, at the occurrence of any assessments of premiums due to the active death by any member.

F. <u>Fire Helmets and Shields</u>. Helmets and shields currently issued to retiring members may be kept by those members.

G. <u>Direct Deposit Program</u>. A member of the bargaining unit shall participate in a direct deposit program offered by the City to the extent that the program includes a financial institution at which the member has an account.

H. <u>Arson Division Weapons</u>. All Arson Division Employees with a full service retirement shall be provided at no charge with their Department-issued service weapon upon retirement. An Employee will have no more than thirty (30) days after separation to make

such request to the Executive Fire Commissioner. The Department may refuse to give Employees their weapons for good cause shown. Good cause will be established where an Employee has pending criminal charges or has been convicted of a crime, is subject to Departmental investigations or psychological restrictions. Employees who are involuntarily discharged will not receive a service weapon.

I.     <u>Outside Employment</u>. An Employee engaged in outside employment shall annually notify the Executive Fire Commissioner of the type of such employment and the name and address of such employer(s). Employees engaged in casual (i.e., sporadic) outside employment need only provide such information once per year unless the nature or type of outside employment substantially changes.

J.     <u>Parking</u>. The Department shall supply free parking for all non-civilian members assigned to Fire Department Headquarters during the hours of such assignments.

K.     <u>Payment of Banked Time on Separation</u>. Whenever an Employee leaves employment with the City, such Employee will be paid for all banked time, other than sick time, at the prevailing rate of pay in effect at the time of separation. This includes, but is not limited to, separation with a deferred vested pension or under a disability. DROP plan participants will only receive payout for banked time when they permanently retire, not when they enter the DROP plan. Payments will be paid within ninety (90) days if the amount is less than ten thousand dollars ($10,000), and if in excess of ten thousand dollars ($10,000), the amount will be made in semi-annual installments over a three (3) year period with the installments due on February 1 and August 1 with no interest due.

L.     <u>Meals</u>. Employees shall, as a condition of employment, contribute financially to congregate meals in the firehouse at a charge equal to the value of the meals, irrespective of whether the Employee chooses to eat the meal. The City shall be held harmless from any circumstances that may flow from this provision and the City is not required to maintain any records whatsoever referable to this provision.

M.     <u>Lunch Breaks</u>.

     1.     All Employees who work a 10-hour tour of duty shall have a thirty (30) minute lunch period and two (2) fifteen (15) minute breaks during each tour of duty. The Employee, if his/her schedule or personal business requires it, may opt to combine the two (2) fifteen (15) minute breaks with their thirty (30) minute lunch for a total of a one (1) hour break. If such option is selected, the Employee shall notify and secure permission to do so prior to the beginning of his/her tour of duty. In no case shall the combined break time exceed one (1) hour. At the beginning of each thirty (30) minute lunch, the Employee shall notify Central Office upon going out of service and upon returning to service.

     2.     Central Office Employees who work a 12-hour tour of duty shall receive three (3) fifteen (15) minute breaks and one (1) sixty (60) minute lunch.

N.   Light Duty.

1.   An Employee placed on light duty by a physician will report immediately with his/her light duty authorization letter to his/her division head. The Executive Fire Commissioner or his/her designee will determine an appropriate light duty assignment based on the restriction. Employees assigned to light duty may be placed on any shift and/or schedule within the Employee's restrictions. Employees who have requested an assignment to light duty from a non-duty related injury may be examined by a Department-designated physician if deemed necessary by the Department.

2.   Subject to the language in Section T, the Department may determine the number, location, and duration of restricted duty assignments, as well as whether a restricted duty assignment vacancy exists.

3.   To the extent permitted under applicable law, the Department may give preference for restricted duty assignments to an Employee whose injury or illness is determined to have occurred while the Employee was on duty over an Employee whose injury or illness is determined to have occurred while the Employee was off duty. When the Department determines that the number of restricted duty Employees exceeds the available number of restricted duty assignments or no light duty assignment is available within the Employees' restrictions, in accordance with the limitations enumerated below, Employees having or seeking a restricted duty position for a non-duty related medical condition may be required to utilize sick time benefits, as determined by the Department. An Employee who is required to utilize sick time benefits by operation of this Section but who has no accumulated sick time will be allowed to use other accumulated time to cover the absence.

4.   Light duty assignments shall not be permanent. Employees may only remain on light duty for one (1) year or less. Employees may be subject to a duty or non-duty disability if: (i) they are unable to perform the essential functions of their permanent position within one (1) year of being assigned to light duty; or (ii) they are unable to perform the essential functions of an existing vacant position for which they are qualified within one (1) year of being assigned to light duty.

5.   Return to Duty.   To assure proper safeguards for Department personnel, Employees who are ordered off duty by either the Employee's treating physician or a physician designated by the Department due to a non-duty related illness or injury, will not be returned to full or light duty assignments without being certified for such assignment by either the Employee's treating physician or a Department-designated physician. Employees who are ordered off duty based on a duty related injury or illness will not be returned to full or light duty assignments without being certified for such assignment by a Department-designated physician.

If the Employee-selected physician and the City-selected physician disagree on whether the Employee can return to work, the provisions of Article 9, Section C.6 shall apply.

O.    Determination of Sick or Injured-on-Duty Status.

    1.    Initial Determination.  It is the responsibility of the physician designated by the Department to determine initially whether an illness or injury of an Employee is duty incurred.  When an Employee sustains an original injury in the performance of duty during his/her regular duty hours, and is unable to complete his/her tour of duty, he/she shall be carried injured-on-duty status.  Except in accordance with the provisions of Article 9, Section C.6, under no circumstances shall the status of an Employee being carried sick or injured-on-duty status be changed in the time book or other Department records without the written authorization of a physician designated by the Department.  A physician designated by the Department shall authorize such change by preparing an inter-office memorandum.

        If the Department designated physician determines that the Employee's injury/illness is not work-related, the Employee has a right to be examined by a physician of his/her own choice.  If the Employee-selected physician and the City-selected physician cannot agree on the origin of the injury/illness, the provisions of Article 9, Section C.6 shall apply.

    2.    Treatment.  After twenty-eight (28) days from the inception of medical care by a City-selected physician for an injury/illness that occurred in the line of duty, an Employee shall have the right to be treated by a physician of his/her own choice.  The City shall pay pre-approved medical expenses.  If the Employee-selected physician and the City-selected physician disagree as to the proposed treatment and the parties cannot agree on the treatment, the provisions of Article 9, Section C.6 shall apply.

P.    Payroll Errors and Adjustments.  When by payroll error an Employee is underpaid or overpaid, the City is expressly authorized to correct the underpayment or overpayment by payroll adjustment as well as taking any steps permitted by applicable law.  The City shall notify an Employee in writing prior to making any payroll recovery.  Each deduction by the City shall be substantiated in the records of the City and, where practicable, shall be identified as to the individual Employee.  Prorating of deductions between two (2) or more Employees is not permitted.  For overpayment of two thousand six hundred dollars ($2,600) or less, the City is authorized to deduct up to one hundred dollars ($100) bi-weekly.  For overpayment of more than two thousand six hundred dollars ($2,600), the City may recoup the total amount of overpayment in equal bi-weekly deductions, to ensure recoupment of the entire amount within one (1) year.  If the Employee separates from City service, the entire unpaid balance shall be recoverable immediately.  Notwithstanding the above requirements, in those cases where an overpayment is made by direct deposit, the City may recoup such overpayment in its entirety within twenty-four (24) hours, provided that the City makes correct payment within that twenty four (24) hour period.