# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS

The City of Detroit, Michigan ("City") files this motion asking this Court to (i) determine that the Detroit Police Lieutenants and Sergeants Association ("DPLSA") violated the terms of the City's confirmed Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan," Doc. No. 8045) and the Court's Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City Of Detroit ("Confirmation Order," Doc. No. 8272); and (ii) enter an order (a) enjoining the DPLSA from committing further violations (b) requiring the dismissal of Case No. C15 B-014 Docket No. 15-005055-MERC filed with the Michigan Employment Relations Commission and removed to this Court as adversary proceeding number 15-04209 and Case No. 15-001851-CL filed with the Circuit Court for the County of Wayne, Michigan and removed to this Court as adversary proceeding number 15-04207 (collectively, the "State Actions").

As discussed in greater detail in the attached brief, the Plan provides for specific treatment of City retiree health care benefits as part of the OPEB[1] settlement. Both the Plan and Confirmation Order enjoin any parties from proceeding in any manner which does not comply

---

[1] OPEB is common shorthand for Other Postemployment Benefits.

23985277.7\022765-00211

with the provisions of the Plan or the OPEB settlement.  Despite these provisions, the DPLSA

has initiated two actions in state forums, each seeking to compel more favorable treatment for

City retirees who happen to be spouses of active DPLSA members than the treatment provided

for in the Plan.

For these reasons, the City asks this Court to (1) find that DPLSA has violated the Plan

and the Confirmation Order and (2) enter an order (a) enjoining the DPLSA from committing

future violations and (b) requiring the dismissal of the State Actions.


March 25, 2015                          Respectfully submitted,


                                        By: /s/ Marc N. Swanson
                                            Jonathan S. Green (P33140)
                                            Marc N. Swanson (P71149)
                                            MILLER, CANFIELD, PADDOCK AND
                                            STONE, P.L.C.
                                            150 West Jefferson, Suite 2500
                                            Detroit, Michigan 48226
                                            Telephone: (313) 496-7591
                                            Facsimile: (313) 496-8451
                                            green@millercanfield.com
                                            swansonm@millercanfield.com

                                            Charles N. Raimi (P29746)
                                            Deputy Corporation Counsel
                                            City of Detroit Law Department
                                            2 Woodward Avenue, Suite 500
                                            Coleman A. Young Municipal Center
                                            Detroit, Michigan  48226
                                            Telephone: (313) 237-5037
                                            Facsimile: (313) 224-5505
                                            raimic@detroitmi.gov


                                        ATTORNEYS FOR THE CITY OF DETROIT

**EXHIBIT 1 – PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS**

This matter, having come before the court on the *City of Detroit's Motion for (I) Determination That the Detroit Police Lieutenants and Sergeants Association Has Violated the Terms of the City Of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions* ("Motion") and the Brief in Support of the Motion, upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT**

1.      The Motion is granted.

2.      Within five days of the entry of this Order, the Detroit Police Lieutenants and Sergeants Association ("DPLSA") will dismiss, or cause to be dismissed, with prejudice (a) Case No. C15 B-014 Docket No. 15-005055-MERC filed with the Michigan Employment Relations Commission and removed to this Court as adversary proceeding number 15-04209, (b) Case No. 15-001851-CL filed with the Circuit Court for the County of Wayne, Michigan and removed to

this Court as adversary proceeding number 15-04207, and (c) any other similar proceedings initiated by the DPLSA.

3.       As of the date of this Order, the DPLSA is enjoined from initiating or continuing any proceeding that seeks to alter the health care benefits the City is required to provide to any City retiree pursuant to the Plan.

4.       The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS**

The City of Detroit has filed papers with the Court for an Order requesting a determination that the Detroit Police Lieutenants and Sergeants Association ("DPLSA") has violated the City of Detroit's confirmed plan of adjustment and the order confirming it. The City of Detroit thus seeks an order enjoining further violations and the dismissal of the actions initiated in the Michigan Employment Relations Commission and the Circuit Court for the County of Wayne, Michigan and removed to this Court.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the *City of Detroit's Motion for (I) Determination That the Detroit Police Lieutenants and Sergeants Association Has Violated the Terms of the City Of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions*, within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
      Marc N. Swanson (P71149)
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      Telephone: (313) 496-7591
      Facsimile: (313) 496-8451
      swansonm@millercanfield.com

Dated:  March 25, 2015

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

EXHIBIT 3 – BRIEF

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**BRIEF IN SUPPORT OF THE CITY OF DETROIT'S MOTION FOR (I)
DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND
SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF
DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER
CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND
(B) REQUIRING DISMISSAL OF STATE ACTIONS**

I.      **Introduction**

In February, 2015, the Detroit Police Lieutenants and Sergeants Association ("DPLSA")

filed two actions in state forums to compel the City of Detroit ("City") to allow active DPLSA

members to include their City retiree spouses on their medical plan.  This relief, however, is

barred by the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan,"

Doc. No. 8045), the order confirming the Plan ("Confirmation Order," Doc. No. 8272), and the

Master Agreement Between the City of Detroit and the Detroit Police Lieutenants and Sergeants

Association 2014-2019 ("CBA"), the terms of which are incorporated into the Plan.  *See* CBA,

Ex. 6A.

Class 12 of the Plan provides the exclusive health care option available to City retirees

that are eligible for retiree health benefits.  It states that health care for City retirees is to be

provided through voluntary employees' benefits associations ("VEBA").  Plan, Part II.B.3.s, pp.

42-43.   The Plan emphasizes that "From and after the Effective Date, the City shall have no

further responsibility to provide retiree health care or any other retiree welfare benefits."  Plan,

Part II.B.3.s.ii.C, p.43. This Plan language is consistent with the CBA and the incorporated City Medical Plan Document (as defined below on page 5) provided to City retirees which states that "...a retiree of the City may not be enrolled as a spouse of an active employee. A retiree will receive retiree health coverage." *See* Ex. 6B, City Medical Plan Document, p. 6. In violation of the Plan injunction, the DPLSA now seeks to have two state forums rewrite both the Plan and the CBA.

The City asks this Court to enter an order (1) determining that the DPLSA has violated the Plan and the Confirmation Order; (2) requiring the DPLSA to dismiss, or cause to be dismissed, with prejudice the State Actions (as defined below on page 6); (3) enjoining the DPLSA from committing further violations; and (4) granting such other relief as the Court should deem appropriate to enforce the Plan and the Confirmation Order.

## II.    Background

### A.    The Retiree Committee

On July 18, 2013, the City filed its petition for relief under chapter 9 of the Bankruptcy Code. (Doc. No. 1.) The next day, the City requested the appointment of an official committee to represent retiree interests. (Doc. No. 20.) The Court granted the motion on August 2, and directed the United States Trustee ("UST") to form a retiree committee. (Doc. No. 279.) A few weeks later, the UST filed its notice of appointment of the committee ("Retiree Committee"). (Doc. No. 575.)

### B.    The Plan and the OPEB Settlement

In its opinion confirming the Plan, the Court summarized the interactions between the City and the Retiree Committee after its appointment:

> The amount of the City's outstanding obligation related to OPEB claims has been the subject of intense dispute, described more fully below. However, all estimates put the liability in the multi-billion

dollar range. OPEB claims represent the single largest portion of the City's unsecured debt obligation.

In early 2014, the City notified its retirees that it would drastically change the health care plans that it offered to them, resulting in significantly lower benefit payments. In response, the retiree committee filed an adversary proceeding against the City seeking an injunction to prohibit it from unilaterally changing the health care benefits that it provided to retirees. The committee asserted largely equitable grounds relating to the hardship that terminating these benefits would naturally cause retirees. There did not appear to be any substantial legal grounds for the requested relief.

The City and the retiree committee disputed the present value of the OPEB claims. The City estimated the amount of the claim to be roughly $3.77 billion. The retiree committee estimated it to be approximately $5 billion. The difference in the estimated values of the claim is the result of differing actuarial assumptions and discount rates that the parties used.

The City and the retiree committee also disagreed on the characterization of payments that the City made on OPEB benefits after the City filed this case. The City's position was that these payments were a partial satisfaction of the OPEB claim and should reduce the amount of New B Notes that, under the plan, would be distributed on account of the allowed OPEB claim on a dollar-for-dollar basis. The retiree committee argued that the payments should be ignored for purposes of calculating the OPEB claim amount.

Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing (the "Confirmation Opinion," Doc. No. 8993), pp. 46-47 (citations omitted).

The City and the Retiree Committee resolved their differences. *Id.*, p. 47. This resolution was integral to the Plan. *Id.* The OPEB Claim was fixed at $4.303 billion, and is to be satisfied through the establishment of voluntary employees' benefits associations ("VEBA"), which the City is funding pursuant to the provisions of the Plan. *Id.*, Fourth Amended Disclosure Statement ("Disclosure Statement," Doc. No. 4391), p. 26-28. It is estimated that retirees' will recover approximately 10% of the value of the OPEB Claim in this fashion.

Confirmation Opinion, p. 47. The OPEB Settlement was put to a vote, and 88% of City retirees accepted it. *Id.*

The City sought approval of the OPEB Settlement. Plan, Part IV.G, p. 58. The Court examined the OPEB Settlement and found it to be fair and reasonable. Confirmation Opinion, p. 47. In particular, the Court found that the OPEB Settlement reduced the City's OPEB liabilities to approximately 3% of general fund expenditures, whereas without the OPEB Settlement, the City's OPEB liabilities were projected to eventually account for as much as 26% of City general fund expenditures. *Id.* The Court found that this explosive growth in OPEB liabilities "would destroy the City's ability to make the financial and operational changes necessary to provide adequate municipal services." *Id.* Consistent with the Plan and the CBA, the Court stated: "As a result of this settlement and the creation of the VEBAs, the City will have no further responsibility to provide retiree healthcare or other benefits to retirees." *Id.* at 48. The Court thus approved the OPEB Settlement. *Id.*, Plan, Part IV.G; Confirmation Order, ¶¶ U, U.1, 5-6.

The Plan incorporates the terms of the OPEB Settlement in its treatment of class 12 OPEB claims. Plan, Part II.B.3.s, p. 42-44. This section of the Plan describes the creation, funding, and operation of the VEBAs. *Id.* At the end of this section of the Plan, under a heading entitled "**C. No Further Responsibility**," the Plan states that "From and after the Effective Date, the City shall have no further responsibility to provide retiree health care or any other retiree welfare benefits." *Id.* This settlement was an integral part of the Plan and a linchpin in the successful restructuring of the City's finances.

### C. The DPLSA Collective Bargaining Agreement.

In June, 2013, the City notified the DPLSA that its collective bargaining agreement was due to expire on July 6, 2013, and would be terminated. After months of negotiations, the City

and the DPLSA entered into the CBA. The CBA's terms were incorporated into the Plan. Plan, Part VII.B; Plan, Exhibit II.D.5, contract number II.A.1.

The CBA allows active DPLSA employees to participate in the medical plans offered by the City. CBA, section 43.A, pp. 48-49. The medical plans in which DPLSA members are entitled to participate are, in turn, set forth in a publication entitled "2014 City of Detroit Active Employee Benefits" ("City Medical Plan Document"). Under the title "**Coordination of Benefits**," the City Medical Plan Document reiterates that retirees only source of health care is the VEBA:

> **Note:** The reimbursement for Medicare does not apply to City retirees who are married to active employees of the City. Retirees of the City are only eligible for the City's retiree health care options. **An active employee may not enroll his or her City of Detroit retired spouse in his or her active employee health care coverage.** All retirees of the City are only eligible for coverage under the City of Detroit's retiree health care program.

City Medical Plan Document, p. 6 (emphasis added). To ensure that this provision does not accidentally escape notice, page six of the City Medical Plan Document highlights it further, as shown below:



**NO DUPLICATE MEDICAL COVERAGE**
If the City employs more than one member of a family, or the family unit includes a retiree of the City, the spouse and eligible dependents of that family shall only be covered by one City employee – no duplicate coverage will be permitted. Furthermore, a retiree of the City may not be enrolled as a spouse of an active employee. A retiree only will receive retiree health coverage. It is the responsibility of the family to select a single health plan. Under no circumstances shall the City be obligated to provide more than one health policy or plan, or duplicate coverage for any employee or dependent.

This is the health care plan in which the CBA allows DPLSA members to enroll. This is the health care plan in which the DPLSA claims its active members may enroll retiree spouses.

### D. The State Actions Initiated by the DPLSA.

On February 3, 2015, the DPLSA, eschewing seeking relief from this Court, filed a charge ("Charge") with the Michigan Employment Relations Commission ("MERC") alleging that "the plain terms" of the CBA allow active DPLSA members to enroll their spouses in the City's health care plan, regardless of whether or not the spouse is a City retiree ("MERC Action"). Ex. 6C, Charge, ¶ 7. The Charge further alleges that, by its failure to allow these spouses to enroll in the City health care plan, the City has repudiated the CBA. *Id.*, ¶ 11. Nine days later, on February 12, the DPLSA filed a complaint ("Complaint") with the Circuit Court for the County of Wayne ("State Court Action", and together with the MERC Action, the "State Actions"), making essentially the same allegations and seeking injunctive relief against the City. *See* Ex. 6D, Complaint. Remarkably, neither of the State Actions makes any mention of Class 12 of the Plan or of the City Medical Plan Document (which is incorporated into the CBA), both of which emphatically deny coverage to active employees' retired spouses. The City promptly removed both State Actions to this Court, creating two new adversary proceedings.[1]

## III. Argument

### A. The DPLSA Violated the Plan Injunction

Through the filing of the State Actions, the DPLSA has violated the Plan injunction set forth in Article III.D.5, which provides in pertinent part:

**5. Injunction**

> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

---

[1] These proceedings are Adversary Proceeding Number 15-04207-TJT, *Detroit Police Lieutenants and Sergeants Association v. City of Detroit, Michael Duggan*, *and Michael Hall*, and 15-04209-TJT, *Detroit Police Lieutenants and Sergeants Association v. City of Detroit*.

> **a.** all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…
>
> **1.** commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…
>
> **5.** proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and
>
> **6.** taking any actions to interfere with the implementation or consummation of the Plan.

Plan, Article III.D.5 (emphasis supplied).

Class 12 of the Plan provides that "From and after the Effective Date, the City shall have no further responsibility to provide retiree healthcare or other retiree welfare benefits." Plan, Part II.B.3.s.ii.C, p. 43. The State Actions violate that provision by seeking healthcare for retirees beyond, and far more expensive than, that which is provided for by Class 12 of the Plan.[2]

The State Actions also violate the CBA, which was incorporated into the Plan. Section 43.A of the CBA allows active employees to participate in the City's Medical Plans: "**During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("Medical Plans") offered by the City**." CBA, section 43.A, pp. 48-49.

The City's Medical Plans are, in turn, set out in the City Medical Plan Document. The City Medical Plan Document provides "Retirees of the City are only eligible for the City's

---

[2] The City estimates that more than 300 active City employees are married to retired City employees, and that if such retired spouses were provided coverage under the active employee's City healthcare (contrary to the provisions of the Plan), the additional cost would be some $3 million annually.

retiree health care options.  An active employee may not enroll his or her City of Detroit retired spouse in his or her active employee health care coverage.  All retirees of the City are only eligible for coverage under the City of Detroit's retiree health care program."  City Medical Plan Document, p. 6.  The Medical Plan emphasizes "Furthermore, a retiree of the City may not be enrolled as a spouse of an active employee.  A retiree only will receive retiree health coverage." *Id.*  Both the Plan and the CBA with the incorporated City Medical Plan Document prohibit City retirees from participating in medical coverage provided to active City employees.

### B. DPLSA's Substantive Arguments Ignore Both the Plan and the City Medical Plan Document Incorporated into the CBA

The DPLSA's State Action papers make no mention of either Class 12 of the Plan or the City Medical Plan Document.  Instead, the DPLSA's argument appears to be:  (1) section 43.A of the CBA states that active DPLSA members can participate in the City's health care plan; (2) section 43.B gives active DPLSA members the right to select any coverage tier under the City's health care plan that they wish without any restrictions; (3) there is no language in the CBA saying that they DPLSA members may not designate a spouse for coverage; ergo (4) active DPLSA members have a right to designate their spouse for coverage, even if he or she is a City retiree.

The entire premise of this argument is unsound.  Nothing in section 43 of the CBA purports to authorize active DPLSA employees to obtain any health care benefits other than those provided in the City Medical Plan Document.  Again, the very first sentence of section 43.A of the CBA states: "**During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("<u>Medical Plans</u>") offered by the City**."  CBA, section 43.A, p. 48.

Section 43.B of the CBA, cited by the DPLSA, does not purport to give members any benefits beyond those provided in the City Medical Plan Document. Rather, section 43.B simply provides that *once the member selects a plan and coverage level from a City health care plan*, he or she must then make the appropriate monthly contributions required by that plan and coverage level. CBA, section 43.B, p. 49. Nothing in the CBA purports to create any benefit rights beyond those provided in the City Medical Plan Document and that document specifically states that "An active employee may not enroll his or her City of Detroit retired spouse in his or her active employee health care coverage." City Medical Plan Document, p. 6.

In short, the CBA provides DPLSA members with the right to *participate* in the City's Medical Plan, it does not create rights beyond those provided in the City Medical Plan Document. And, finally, if there were any possible doubt on this issue, which there is not, the CBA (which is part of the Plan) must be construed in a manner consistent with the Plan – i.e. City retirees are not allowed to obtain City health care coverage. The DPLSA has violated the Plan injunction.

**C.     The Jurisdiction Plan Provision Cited by the DPLSA does not Divest this Court of Jurisdiction to Enforce the Plan**

DPLSA's State Actions cite Article VII.B of the Plan (quoted below) in support of the proposition that state forums have jurisdiction to hear DPLSA's claims. However, section B is merely one of a number of sections of Article VII, and the controlling fact here is that the DPLSA seeks relief directly contrary to the Plan. Accordingly, under Article VIII, the Bankruptcy Court has exclusive jurisdiction over the State Actions.

Article VII of the Plan, entitled "**RETENTION OF JURISDICTION**," provides in pertinent part:

> Pursuant to sections 105(c), 945 and 1142(b) of the Bankruptcy
> Code and notwithstanding entry of the Confirmation Order and the

occurrence of the Effective Date, **the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 9 Case and the Plan to the fullest extent permitted by law**, including, among other things, jurisdiction to:

. . .

B.   Confirm the maturity date and the terms as written of the collective bargaining agreements identified on Exhibit II.D.5 of the Plan, which agreements are incorporated as part of the Plan (it being understood that the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law);

. . .

D.   Ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

. . .

F.   **Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements** or documents entered into or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

G.   **Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan** or any contract, instrument, release or other agreement or document that is entered into or delivered pursuant to the Plan or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents.

. . .

I.   Issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order.

Plan, Art. VII, pp. 69-70 (emphasis added).

This Court retained exclusive jurisdiction over the State Actions because the relief sought by the DPLSA is contrary to the treatment provided to holders of claims in Class 12 of the Plan. If the DPLSA succeeded in the State Actions, "Distributions to Holders of Allowed Claims" in Class 12 would not be "accomplished pursuant to the provisions of the Plan." Plan, Art. VII.D. Rather, City retiree spouses of active DPLSA members would receive more favorable treatment than the balance of class 12 claim holders. Article VII.F also provides that this Court retained jurisdiction over the "implementation or consummation the provisions of the Plan," which, of course, includes Class 12 of the Plan. Plan, Art. VII.F. Additionally, the State Actions qualify as "cases, controversies, suits or disputes" that have arisen with respect to the "consummation, interpretation or enforcement" of Class 12 of the Plan and the CBA. Plan, Art. VII.G. In sum, the Plan provides that the Bankruptcy Court has exclusive jurisdiction over the State Actions.

## IV.    Conclusion

For the reasons stated above, the City ask this Court to (a) enter the proposed order attached as Exhibit 1 and (b) grant such other and further relief as the Court may deem proper. The City sought, but did not obtain, the DPLSA's concurrence to this relief.

March 25, 2015                    Respectfully submitted,

                                  By: /s/ Marc N. Swanson
                                      Jonathan S. Green (P33140)
                                      Marc N. Swanson (P71149)
                                      MILLER, CANFIELD, PADDOCK AND
                                      STONE, P.L.C.
                                      150 West Jefferson, Suite 2500
                                      Detroit, Michigan 48226
                                      Telephone: (313) 963-6420
                                      Facsimile: (313) 496-7500
                                      green@millercanfield.com
                                      swansonm@millercanfield.com

                                      Charles N. Raimi (P29746)
                                      Deputy Corporation Counsel
                                      City of Detroit Law Department
                                      2 Woodward Avenue, Suite 500
                                      Coleman A. Young Municipal Center
                                      Detroit, Michigan  48226
                                      Telephone: (313) 237-5037
                                      Facsimile: (313) 224-5505
                                      raimic@detroitmi.gov


                                  ATTORNEYS FOR THE CITY OF DETROIT

## EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 25, 2015, he served a copy of the foregoing *CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS* upon counsel as listed below, via electronic mail:

Peter P. Sudnick, Esq.
SUDNICKLAW, P.C.
2555 Crooks Road, Suite 150
Troy, MI 48084
psudnick@sudnicklaw.com

Barbara A. Patek & Julie Beth Teicher
ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.
400 Galleria Officeentre, Suite 444
Southfield, MI 48034
jteicher@ermanteicher.com
bpatek@ermanteicher.com

DATED: March 25, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

## **EXHIBIT 5 – AFFIDAVITS**

## **NONE**