UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
2                  SOUTHERN DIVISION

3  IN THE MATTER OF,              Case No. 13-53846
                                  Detroit, Michigan
4  CITY OF DETROIT, MICHIGAN      March 4, 2015
   _____/   1:32 p.m.
5
                    IN RE: STATUS CONFERENCE
6          BEFORE THE HONORABLE THOMAS J. TUCKER
             TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
7
   APPEARANCES:
8
   For the City of Detroit, MI:   JEFFREY ELLMAN, ESQ.
9                                  Jones, Day
                                   1420 Peachtree Street NE
10                                 Suite 800
                                   Atlanta, GA 30309
11                                 404-521-3939

12                                 JOHN SIMON, ESQ. (P61866)
                                   LEAH IMBROGNO, ESQ.
13                                 Foley & Lardner
                                   One Detroit Center
14                                 500 Woodward Avenue
                                   Suite 2700
15                                 Detroit, MI 48226-3489
                                   313-234-7117
16
                                   MARC SWANSON, ESQ. (P71149)
17                                 DAVID MASSARON, ESQ. (P67463)
                                   Miller, Canfield, Paddock &
18                                 Stone
                                   150 W. Jefferson
19                                 Suite 2500
                                   Detroit, MI 48226
20                                 313-496-7591

21                                 MELVIN HOLLOWELL, ESQ. (P37834)
                                   400 Monroe Street
22                                 Detroit, MI 48226
                                   313-962-7777
23

24

25

```
 1                                NEAL BERGER, ESQ.
                                  Togut, Segal & Segal
 2                                One Penn Plaza
                                  Suite 3335
 3                                New York, NY 10119
                                  212-594-5000
 4
                                  CHUCK RAIMI, ESQ. (P29746)
 5                                JAMES NOSEDA, ESQ. (P52563)
                                  City of Detroit Law Department
 6                                2 Woodward Avenue
                                  CAYMC, Suite 500
 7                                Detroit, MI 28226
                                  313-237-5037
 8
     For the State of Michigan:   STEVEN HOWELL, ESQ. (P28982)
 9                                Dickinson, Wright, PLLC
                                  500 Woodward Avenue
10                                Suite 4000
                                  Detroit, MI 48226
11                                313-223-3500

12   For the General Retirement   ROBERT GORDON, ESQ. (P48627)
     System of the City of Detroit: SHANNON DEEBY, ESQ. (P60242)
13                                SEAN GALLAGHER, ESQ. (P73108)
                                  MICHAEL VANOVERBEKE (P42641)
14                                Clark, Hill
                                  151 South Old Woodward Avenue
15                                Suite 200
                                  Birmingham, MI 48009
16                                248-988-5882

17   For Assured Guaranty         SAMUEL KOHN, ESQ.
     Municipal Corp.:             LAWRENCE LAROSE, ESQ.
18   (By Phone):                  Chadbourne & Parke
                                  30 Rockefeller Plaza
19                                New York, NY 10112
                                  212-408-1060
20
     For AFSCME:                  RICHARD MACK, JR., ESQ.
21   (By Phone):                  (P58657)
                                  JACK SCHULZ, ESQ. (P24890)
22                                Miller, Cohen
                                  6700 West Lafayette Blvd.
23                                4th Floor
                                  Detroit, MI 48226-3191
24                                313-964-4454

25   PRESENT: (By Phone):         MARTHA KOPACZ
```

1 | Court Recorder:                Jamie Laskaska

2 | Transcriber:                   Deborah L. Kremlick

3 |

4 |
  | Proceedings recorded by electronic sound recording, transcript
5 | produced by transcription service.

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1       (Court in Session)

2               THE CLERK:  Please rise.  This Court is now in

3       session.  The Honorable Thomas J. Tucker is presiding.  You

4       may be seated.  The Court calls the case of the City of

5       Detroit, Michigan, case number 13-53846.

6               THE COURT:  All right.  Good afternoon to everyone

7       and welcome.  And I guess welcome to me.  New to the case, so

8       I'll welcome myself while I'm at it.

9           I'd like to have appearances entered for the record.

10      Let's start with those in the courtroom and then we'll go to

11      those who are on the -- on the phone.

12              MR. ELLMAN:  Your Honor, thank you.  It's good to be

13      here.  This is Jeffrey Ellman from Jones, Day on behalf of the

14      city.

15              MR. SIMON:  Your Honor, John Simon of Foley and

16      Lardner for the city.

17              MR. SWANSON:  Your Honor, Marc Swanson from Miller,

18      Canfield on behalf of the city.

19              MR. HOLLOWELL:  Your Honor, Melvin Butch Hollowell,

20      corporation counsel for the City of Detroit.

21              MR. BERGER:  Good afternoon, Judge.  Neal Berger Of

22      Togut, Segal & Segal for the city.

23              MR. RAIMI:  Chuck Raimi corporation counsel, City of

24      Detroit.

25              MR. NOSEDA:  Good afternoon, Your Honor.  Jim Noseda

1  for the City of Detroit.

2          MR. MASSARON:  Good afternoon, Dave Massaron chief

3  corporation counsel for the City of Detroit.

4          MR. HOWELL:  Your Honor, Steven Howell, Dickinson,

5  Wright --

6          THE COURT:  Come up to the microphone, would you,

7  please?

8          MR. HOWELL:  Your Honor, Steve Howell, Dickinson,

9  Wright, Special Assistant Attorney General appearing on behalf

10 of the State of Michigan.

11         MR. GORDON:  Good afternoon, Your Honor.  Robert

12 Gordon of Clark, Hill on behalf of the General Retirement

13 System of the City of Detroit.

14         THE COURT:  All right.  For those who are on the

15 phone, I understand through Court call we have a few people

16 who are listening on a -- in on a listen only basis and who

17 can't be heard who are muted, I guess for purposes of this

18 participation in the hearing today.

19     But we do have some others who are scheduled as listening

20 live who can be heard and speak.  So let ask those attorneys

21 to enter your appearance, please.  Let's start with counsel

22 for Assured Guaranty Municipal Corp.

23         MR. KOHN:  Yes, good afternoon, Your Honor.  Thank

24 you.  This is Samuel Kohn of Chadbourne and Parke on behalf of

25 Assured Guaranty Municipal Corp.  Welcome to the case, Your

1  Honor.

2          THE COURT:  Thank you.  And do we have Mr. Larose on

3  the phone too for that -- that party?

4          MR. KOHN:  Mr. Larose is with me, Your Honor.

5          THE COURT:  All right.  And counsel for AFSCME.  Do

6  we have anyone on the phone, Mr. Mack for example for AFSCME?

7          MR. SCHULZ:  Your Honor, I'm actually here for

8  AFSCME Council 25, but I think Richard Mack is also on the

9  phone.

10         THE COURT:  Well, you've got to speak into the

11 microphone or you won't be on the record.

12         MR. SCHULZ:  Okay.

13         THE COURT:  So come on up.

14         MR. SHULTZ:  Jack Schulz for AFSCME Council 25 and

15 the coalition of unions.

16         THE COURT:  And then do we have Mr. Mack on the

17 phone?  All right, I guess not.  All right.  Is anyone else on

18 the phone who has not yet entered an appearance who is -- is

19 participating on a live basis?  No?  Have I gotten everybody

20 in the courtroom?  All right.  Thank you.

21    Let me ask -- start with a question of -- sort of a

22 housekeeping question.  Mr. Simon, I understand one of your

23 colleagues wants me to swear her in as a Bar -- as a member of

24 the Bar of the Court of the district.

25         MR. SIMON:  Yes, Your Honor.  That would be

1  fantastic.  My colleague Leah Imbrogno.

2          THE COURT:  Ms. Imbrogno, are you going to argue or

3  speak today, or not?

4          MS. IMBROGNO:  I am not, Your Honor.  I'm here for

5  informational purposes.

6          THE COURT:  All right.  Then -- then just to save

7  everyone else's time if you don't mind, I'll ask you to please

8  come around to chambers after we finish this status conference

9  and I'll -- I'll swear you in there.

10          MS. IMBROGNO:  Thank you.  I appreciate that, Your

11  Honor.

12          THE COURT:  If that's all right.

13          MS. IMBROGNO:  Yes.

14          THE COURT:  Okay.

15          MR. SIMON:  Thank you, Your Honor.

16          THE COURT:  Although it might be well to remind

17  everyone of the part of the oath, not in this case, I'm sure

18  it's not a problem in this case, but the part of the oath that

19  requires parties to swear that they will abide by the civility

20  principles approved by the Court.  I can use reminders of

21  folks in some cases of that, but I doubt it's necessary in

22  this case.

23          So, good afternoon to everyone.  I will say that I did

24  review the status report filed by the city in response to my

25  order of February 19th.  I also reviewed the status report

1 filed the same day, February 26th by the General Retirement

2 System of the city.  And then I also reviewed the State of

3 Michigan's response to that status report that was filed

4 yesterday.

5      And I have noticed that late last night there was a

6 motion filed by the city which has to do with the establishing

7 a reserve for Class 14.  And I also saw there was a

8 stipulation filed earlier today having to do with a dispute

9 between the city and Wayne County.

10      Those latter two matters I have not had a chance to

11 review in any sort of depth because I've been -- in part

12 because I've been on the bench today hearing motions in other

13 cases and so I have not had a chance to really study those.  I

14 did take a quick look at them though.

15      So I'm at least partly informed about those.  And I do

16 want to talk to -- address one notice related matter having to

17 do with the motion filed last night by the city when we --

18 when we get to that in the discussion today.

19      So let me start by saying just a couple of things.  One

20 is, my thought for this status conference is that I -- and I

21 hope it's -- it's not a surprise to anyone that I -- I don't

22 intend to make any sort of substantive rulings in this status

23 conference today, or rule on any sort of substantive issues.

24 That's done of course normally by -- the normal motion

25 process, motion hearing process.

1     But I -- I do want to allow those here who -- who want to

2   speak on this to say what you'd like to say to me regarding

3   status of the case, what needs to be done going forward in

4   terms of anything that I should be aware of or can do to

5   facilitate matters in this case in terms of scheduling,

6   procedure, and the like.  Although the status report filed by

7   the city on February 26th was very comprehensive and -- and

8   helpful as were the other status report items filed by the

9   others.  And answered many of the questions that I had when I

10  issued the February 19 order scheduling this conference and

11  asking the city to address the nine categories of matters in

12  that order.

13     So let me -- having said that, let me call on counsel for

14  the city, whoever wants to speak -- whatever attorney wants to

15  speak for the city.  And ask what you would like to say or add

16  to the status report or discuss today.  Mr. Ellman.

17         MR. ELLMAN:  Thank you, Your Honor.  Again Jeffrey

18  Ellman from Jones, Day.

19     We were hopeful that the status report that we did file

20  would answer the questions the Court had.  We don't have a

21  lot, I think to add, other than to answer the Court's further

22  questions.

23     I was going to point out four -- four items sort of to

24  update our report.  One, we have a very long list as you no

25  doubt saw of the steps taken to implement the plan.  It is not

1  in any way intended to be a comprehensive list, it's intended

2  to be a list of some of the major activities.

3       But I did notice in going through it that we

4  inadvertently, if you look at the various claims that have

5  been satisfied and paid, in case you were wondering we -- we

6  neglected to mention Class 5 which are the COP swap claims

7  which there was a payment due to them which was in fact made.

8  It was not in the report, not because it didn't happen, but

9  for that -- just for an oversight.

10      And there was also I noticed in the Class 9 description

11  for the COP claims, it does mention some of the consideration

12  that was distributed.  It neglected to mention the -- the new

13  B notes that also were distributed consistent with the plan.

14  So I wanted to make just clear for the record that those were

15  inadvertent omissions.

16      The other two items were the ones that Your Honor has

17  already mentioned.  On Wayne County taking that one first,

18  that really resolved that issue completely.  It was a dispute

19  over the rejection of a -- an agreement between the city and

20  Wayne County.  Wayne County filed an opposition to the

21  rejection of that agreement.

22      And the stipulation we filed withdraws the opposition.

23  The opposition will stay solely on the claims register because

24  although it had an opposition to the rejection of the contract

25  in it, it also was thought as a proof of claims, as a proof of

1 claim embedded in it as well.  So it will stay on the claims

2 register as a proof of claim, but the -- it will be withdrawn

3 with prejudice as to the dispute over rejection.

4     So there is an order, I believe we've uploaded for Your

5 Honor.  But that's -- that should resolve that matter

6 completely.

7     And then the claims reserve motion was filed last

8 evening.  We'll need a -- a hearing on that.  I know Your

9 Honor said you had a notice question, or issue you'd like to

10 raise about that.  Be happy to address that.

11     But we -- we have served that on all the claimants who

12 are listed in the motion who would be subject potentially to

13 the relief as well as to the general service list, the ECF

14 parties and the like.  But if the Court has a question about

15 service, I'll be happy to answer it.

16     We do need a hearing date, I -- I suppose for that motion

17 which -- which Your Honor, I'm sure will set.  Or we'd be

18 happy to talk about what date would be appropriate for that.

19         THE COURT:  Well, let me -- let me just say a couple

20 things at this juncture.  One is, in case you -- you haven't

21 guessed it by now, I -- I intend and hope to have any hearings

22 in this case, other than evidentiary hearings, on Wednesday

23 afternoons.

24     Wednesday is my normal weekly motion day in which I hear

25 -- have hearings on motions in Chapter 7, and in Chapter 11

1   cases, now Chapter 9, and Chapter 12 cases typically scheduled

2   in the morning.  And then I reserve the afternoon on

3   Wednesdays for hearings that are likely to take more time than

4   -- than the average.

5       And so I -- I was thinking we would have hearings in this

6   case generally, not evidentiary hearings on Wednesday

7   afternoons.  And so that's sort of the pattern you'll -- you

8   saw there when I -- I set out the dates that are available for

9   claim objection hearings in April and at 1:30 on Wednesdays

10  and adjourned the claim objections that were scheduled for

11  March 19, to April 8 at 1:30.

12      With respect to -- I guess before we talk about a hearing

13  date on this claims reserve motion -- and by the way if -- if

14  you -- you said you served the motion on all the claimants

15  involved in that motion.

16          MR. ELLMAN:  I -- I --

17          THE COURT:  I didn't see a certificate of that

18  service on file this morning when I took a quick look at this.

19          MR. ELLMAN:  That probably is not on file yet.  That

20  would have been done by our claims agent and they will

21  separately file a certificate of service once that's complete.

22          THE COURT:  Okay.  That's what I -- I assumed you've

23  got a claims agent who does --

24          MR. ELLMAN:  Right.

25          THE COURT:  -- the service like this, at least on

1  any numerous motions requiring a universe of parties to be

2  served.

3          MR. ELLMAN:  That's correct.

4          THE COURT:  Do they generally serve notices and

5  motions the same day, or the next day after the motion is

6  filed?  Is that the general pattern?

7          MR. ELLMAN:  With respect to a hearing for example?

8          THE COURT:  No, a motion and a notice of a motion.

9          MR. ELLMAN:  They would file those together

10  typically, you know, as promptly as possible.

11          THE COURT:  In other words they're quick about the

12  service -- getting the service out.

13          MR. ELLMAN:  They're very prompt about it, yes.

14          THE COURT:  Okay.

15          MR. ELLMAN:  I believe, Your Honor, this was filed

16  last night.

17          THE COURT:  Right.

18          MR. ELLMAN:  And I believe based on the time it was

19  filed, the service was going to go out this morning.

20          THE COURT:  Right.

21          MR. ELLMAN:  So I believe it was served -- filed

22  yesterday and served this morning.

23          THE COURT:  But it's either the day of or the day

24  after.

25          MR. ELLMAN:  Depends on the time of day, but if it's

1 | -- if it's later in the day, it will be the next day.  If it's

2 | early in the day --

3 |         THE COURT:  Okay.

4 |         MR. ELLMAN:  -- it will be the same day.

5 |         THE COURT:  So they're a little quicker than the BNC

6 | for example is what -- kind of what I'm getting at there.

7 |         MR. ELLMAN:  I think they're fairly prompt, yes.

8 |         THE COURT:  All right.  Well, the -- the -- the

9 | motion that was filed last night, I -- I did take a quick

10 | look.  The notice that was attached to the motion --

11 |         MR. ELLMAN:  Uh-huh.

12 |         THE COURT:  -- seems to set a deadline for

13 | objections to the motion that it's too soon, March 18th.  It

14 | says on or by March 18 that parties must file any objections.

15 | That's 15 days after the date in which the motion was filed

16 | last night.  I'm not sure where that date came from, but it

17 | strikes me as too soon if it's a 14 day notice matter which I

18 | assume this -- this appears to be.

19 |     Is 14 days plus three after the date of service is the

20 | deadline under our local rules.  Even with -- for parties who

21 | are served by notice of electronic filing from our ECF system.

22 |         MR. ELLMAN:  Uh-huh.

23 |         THE COURT:  I could walk through the details of that

24 | if you'd like, but part of the -- part of the problem I -- I

25 | think is that our -- our local rule on motions, Rule 9014, if

1  you read that it -- it says to use the form on our web site.

2         MR. ELLMAN:  Uh-huh.

3         THE COURT:  For notice and opportunity to object.

4  You go to the form on our web site and that's -- says at the

5  top that it's official Form 20(a) of the National Bankruptcy

6  official forms.

7         MR. ELLMAN:  Uh-huh.

8         THE COURT:  But then it changes the wording of the

9  national form.  The national form says the on or before date

10  and you fill in the date for the objection deadline.  Our

11  local rule form, at least on the web site, says, within blank

12  days you must.  And then our local Rule 9014-1 says, that you

13  have to say within blank days after service.

14      And so it's a -- it's a little -- there's a little

15  confusion I think there and it's something that I think we

16  need to address with our local rules.  But I -- I didn't see

17  how March 18 could be -- possibly be the correct objection

18  deadline for this motion.  It seems to me it's -- it's 14 days

19  after the date on which you're going to mail out service.

20         MR. ELLMAN:  Uh-huh.

21         THE COURT:  Or your agent is going to mail out

22  service to all of these affected creditors plus three days for

23  mailing under Rule 9006.

24         MR. ELLMAN:  I think it probably neglects to add the

25  three days which I -- I think has probably been our practice

1 | in the past in some cases.

2 | THE COURT: Yeah.

3 | MR. ELLMAN: But assuming the Court intends to set a

4 | hearing on this motion, we would send a notice out and we

5 | certainly could correct the response date to whatever --

6 | whatever date the Court found appropriate.

7 | THE COURT: Well --

8 | MR. ELLMAN: And I do know there was a hearing on

9 | April 8th. We could use that if that works for Your Honor, or

10 | we can use a different date.

11 | THE COURT: The -- you know, the notice would need

12 | to be retooled, I think and resent in any event because if I

13 | am going to schedule a hearing now rather than waiting to

14 | see --

15 | MR. ELLMAN: Uh-huh.

16 | THE COURT: -- waiting for objections before we

17 | schedule a hearing, then what we say in Paragraph 2 of the

18 | form notice doesn't apply either.

19 | The -- let me be clear though. I -- I have no problem

20 | with a -- a practice of putting in your notice a specific date

21 | by which is a deadline to object, a calendar date, you know,

22 | that's clear for everyone.

23 | But -- but the point I want to make about it is, you got

24 | to get it right. And -- and to me right means consistent with

25 | rule -- Bankruptcy Rule 9006(f) and also our ECF procedure

1  12(f) which says you add the three days under Rule 9006 even

2  for parties served electronically by ECF notice rather than by

3  mail.  And so it's got to be the 14 days plus three --

4          MR. ELLMAN:  Understood.

5          THE COURT:  After service.

6          MR. ELLMAN:  Understood.

7          THE COURT:  So if you know you're going to get it

8  served today, you know, it's -- it's 17 days after today

9  unless that ends on a weekend or holiday and then you go to

10  the next day.  You know, you figure it out.

11          MR. ELLMAN:  Of course, yes.  Of course.

12          THE COURT:  And you put that date in.  So let me

13  just -- let me just ask you to just for future reference I --

14  I just wanted to get that out there.  It's --

15          MR. ELLMAN:  I appreciate that, thank you.

16          THE COURT:  It's elementary and but I -- I did want

17  to make clear that I -- I have no problem with you putting in

18  a date certain even though you can read our local Rule 9014-1

19  as -- as requiring that the forms say within 14 days after

20  service rather than a specific date.

21          MR. ELLMAN:  Right.

22          THE COURT:  So you're -- you're asking for a hearing

23  date on the motion anticipating that somebody is going to

24  object, I guess.

25          MR. ELLMAN:  No, Your Honor.  It's really up to Your

1  Honor if you'd like to have a hearing date.  We could

2  certainly wait.  We can re-notice the objection date and

3  simply say if there are objections the Court will schedule a

4  hearing, or if there are objections the Court will conduct a

5  hearing on such and such a time.  It's really -- it's really

6  up to Your Honor.

7          THE COURT:  Well, unless this is a matter of

8  particular urgency, I'd like to leave it and follow our normal

9  local rule practice.  And -- and that being as suggested by

10 our form of -- of notice, that if objections are -- timely

11 objections are filed, the Court will schedule a hearing rather

12 than set a hearing now.  Now if you -- if there is some

13 urgency then, you know, I'd certainly want to accommodate

14 that.

15         MR. ELLMAN:  I don't think there's urgency of the

16 type that would require changing the normal process, Your

17 Honor.

18         THE COURT:  All right.

19         MR. ELLMAN:  We will -- we will fix that.

20         THE COURT:  All right.  So then we won't do any sort

21 of notice of deficiency on this notice.  You'll -- you'll fix

22 it.

23         MR. ELLMAN:  We'll fix it, yes.

24         THE COURT:  And so you'll serve a new notice on

25 everyone.

1        MR. ELLMAN:  Correct, the corrected notice.

2        THE COURT:  If it goes out tomorrow, then just

3  calculate the date from that and --

4        MR. ELLMAN:  We will do that.

5        THE COURT:  -- take care of it.  Okay, good.  So --

6        MR. ELLMAN:  And there may be a chance, Your Honor,

7  I don't know.  They were supposed to go out this morning and

8  if for some reason they haven't, you know, actually been

9  picked up by the postal carrier or whatever, maybe we can

10  correct it before it even goes out.

11        THE COURT:  Okay, great.  So that's the end of the

12  -- hopefully the end of the Judge being a pain in the neck

13  part of this status conference.

14        And let me go back to if -- if there's anything else

15  about the claim reserve motion you wanted to mention, go

16  ahead.

17        MR. ELLMAN:  No.  Not at all, Your Honor.  And

18  really --

19        THE COURT:  Okay.

20        MR. ELLMAN:  -- as the entire post-confirmation

21  report, I think my approach to this would be if you have

22  further questions that you feel like were not answered, or

23  just want follow up, I'd be happy to try to answer them.  We

24  also know there are people here who are available for their

25  areas of expertise.  So I have nothing else to present other

1 | than that, Your Honor.

2 | THE COURT: I -- I had a question or two that I

3 | wanted to ask you while you were up.

4 | MR. ELLMAN: Sure.

5 | THE COURT: Mr. Ellman. I -- I believe a thing --

6 | having to do with things that are in your status report.

7 | First, I -- I want to make sure -- I think this is

8 | correct, but I -- I want to make sure of it. The -- you're

9 | aware of the claims objections that are currently scheduled

10 | for April 8 at 1:30 -- hearing April 8 at 1:30.

11 | MR. ELLMAN: That's correct.

12 | THE COURT: I've recently caused to be adjourned

13 | from March 19. I want to make sure there are --

14 | MR. ELLMAN: I'm aware of that, yes.

15 | THE COURT: -- there are no other claim objections

16 | that I -- that I haven't covered with a hearing date that need

17 | a hearing date at this point.

18 | MR. ELLMAN: Not that I'm aware of other than there

19 | is -- and I will also point out that my firm is not handling

20 | very many of these, but there is an objection that we filed to

21 | the claims of AFSCME and the coalition of unions that there

22 | was a request for abstention that the Court denied and it's

23 | still pending before this Court. We'll probably need at some

24 | point some kind of a status conference.

25 | I would defer to the Miller, Canfield folks who are going

1  to be -- we're going to be transitioning that matter over to

2  them.  So we probably need to coordinate how we approach that.

3  But it's -- it's a pending matter that doesn't have a place on

4  the docket or a schedule at this point.

5      I would think it would be appropriate at some point to

6  figure out how that's going to be adjudicated.  I don't -- I'm

7  not sure that's today, but at some point in the near -- near

8  term it is a very, you know, very large claim, actually very

9  large pair of claims that will have to be addressed.  So that

10 is -- that is pending.

11     Other than that matter, I'm not aware of any other claims

12 objections that are -- that need to be scheduled, but I would

13 of course defer to others who may be more familiar with things

14 they're working on.

15          THE COURT:  All right.  I did see reference to, and

16 some discussion that you had in your status report about --

17          MR. ELLMAN:  We did mention it, yes.

18          THE COURT:  -- those claims and the -- their very

19 large amount.  And there's an appeal pending in District

20 Court.

21          MR. ELLMAN:  For part of it, yes.

22          THE COURT:  On part of it.

23          MR. ELLMAN:  The AFSCME claim itself had 20 -- I

24 think 20 components to it.  And there was a related claim by a

25 coalition of unions.  Two components of the claim were

1  addressed by Judge Rhodes in an opinion that dealt with the

2  classification of those components of the claim under the plan

3  which plan class they really should be in.

4      Judge Rhodes issued that opinion, I think it was in

5  October or November and then that's now on appeal in the

6  District Court.  We just filed our brief on behalf of the city

7  on the 2nd this week on Monday.  And that -- that's still

8  pending.

9      But the remainder of the claim which is still a

10  significant claim, is -- is still in front of this Court and

11  there's a claim objection filed, the responses.  So it's teed

12  up to some extent.  There may need to be additional briefing.

13  I think these are all the kinds of things that the parties and

14  the Court will have to determine as far as a schedule goes.

15      THE COURT:  Well, are -- are you -- if -- if not

16  you, is anyone representing the city prepared to or want to

17  talk about further proceedings in that -- on that matter

18  today?

19      MR. ELLMAN:  I don't think so.  We -- we have at

20  Jones, Day been working on this matter.  It's going to be

21  transitioned over to Miller, Canfield.  I don't think we're

22  probably in a position today to talk about the details of

23  scheduling.

24      I know AFSCME is here, but I think it would probably be

25  better to set a time to give us a little bit of an opportunity

1  to discuss it among ourselves and show up prepared to set a

2  schedule for -- with Your Honor, or on the phone.

3          THE COURT:  Well, do you want me to set a status

4  conference now to discuss that specific topic?

5          MR. ELLMAN:  I'll --

6          THE COURT:  Or -- or would you rather wait?

7          MR. SWANSON:  We're fine setting a status

8  conference, Your Honor, if -- if you'd like to do so today.

9          THE COURT:  I'm sorry?

10         MR. SWANSON:  Yes.

11         THE COURT:  How soon would you like it?

12         MR. ELLMAN:  We could do it at the claims hearing on

13  the 8th of April I would think if that's convenient for the

14  Court.  I mean I don't think it's --

15         THE COURT:  All right.  Does that work?

16         MR. SWANSON:  That works, Your Honor.

17         THE COURT:  You're Mr. Schlosser.

18         MR. SWANSON:  Yes.

19         THE COURT:  Yeah.  All right.  So let's -- status

20  conference April 8 at 1:30.  And do you happen to have handy

21  an identifier, or a docket number for example for the -- is it

22  objection to claim?

23         MR. ELLMAN:  I don't know that I have it handy, but

24  I can provide that to chambers of you would like or after the

25  hearing.

```
 1            THE COURT:  I want to be a little more precise in

 2   our -- our notice.

 3            MR. ELLMAN:  I understand.  I don't -- I don't know

 4   off the top of my head, but it would be easy enough to find

 5   it.

 6            THE COURT:  All right.  Mr. Schlosser.

 7            MR. SWANSON:  Yes, Your Honor.  With respect to

 8   AFSCME, I believe the objection is docket number 4876.  And

 9   the coalition of the Detroit unions is 4874.  Thank you.

10            THE COURT:  Those are the two matters that should be

11   set for this status conference we're talking about?

12            MR. ELLMAN:  That's correct.

13            THE COURT:  All right.  Okay.  All right.  I'll --

14   I'll if -- if this -- counsel for AFSCME who is present have

15   any problem with that date as the status conference date?  By

16   the way, say your name again because -- just for the record

17   because there's a lot of people that are going to be talking

18   today.

19            MR. SCHULZ:  It's Jack Schulz, S-c-h-u-l-z.  I'm not

20   sure if Mr. Mack is on the -- on the phone, but it's my

21   understanding that there wouldn't be a problem with the status

22   conference.

23            THE COURT:  Mr. Mack, are you on the phone yet?

24   Okay, I guess not.  Or maybe he's there --

25            MR. MACK:  This is my new blue tooth.  Yes, April 8th
```

1 is fine.

2          THE COURT:  Are you Richard Mack?

3          MR. MACK:  I am sir, yes.

4          THE COURT:  Okay.  Do you want to enter your

5 appearance?  I don't think you did earlier.

6          MR. MACK:  Richard Mack here on behalf of AFSCME and

7 the coalition of Detroit unions, Your Honor.  Jack Schulz is

8 there live.

9          THE COURT:  Yes, yes.  All right.  We'll -- we'll

10 get that noticed.  Thank you.  Mr. Ellman.

11          MR. ELLMAN:  Yes.

12          THE COURT:  Other than these claim objections, is

13 there anything else that you think the Court should be

14 scheduling for hearings on claim objections other than what

15 we've already got set for the 8th?

16          MR. ELLMAN:  I'm not aware of any.  Most of the

17 claim objections are being handled by Mr. Simon's firm.

18          THE COURT:  Right.

19          MR. ELLMAN:  And so he's -- I think indicating that

20 there's nothing else needed, so I'm -- I think we're fine.

21          THE COURT:  By the way we'll keep -- Mr. Simon, I

22 guess for your reference too, we're going to -- my intention

23 is to keep adding to the Court's web site in that place where

24 we have it now, continuing available dates for claim objection

25 hearings, so you'll have that when you -- to refer to when you

1  go to file claim objections and cite a hearing in your notice.

2        MR. SIMON:  Okay, fantastic, Your Honor.  I was

3  going to ask if -- if we could get a certain -- a few certain

4  dates.  So if Your Honor wants me to give a head's up at this

5  time of what I would ask for, I could do that, or we could

6  just refer to the web site if you'd prefer that.

7        THE COURT:  Well, right now I think the web site has

8  three -- the three available dates in April --

9        MR. SIMON:  Uh-huh.

10        THE COURT:  -- that I mentioned in my status

11  conference order of February 19.  I don't think we've added

12  any into May yet, but I can -- I can certainly do that.  So

13  you were saying you need a reference, something to refer to

14  when you're doing your notice.

15        MR. SIMON:  Yes, Your Honor.  I was hoping to

16  perhaps get some in May since we're -- we're getting very into

17  the process here.  We have a six month window under the plan.

18  It's a tight amount of time under a plan like this.

19        THE COURT:  Yes.

20        MR. SIMON:  And I know there's a lot of work ongoing

21  on these.  So I was going to request April 29th, May 13th, and

22  May 27th over the next couple months if that was okay with Your

23  Honor.

24        THE COURT:  All right.  One second.  April 29 has

25  already -- has already been slated as available for that in

1 the February 19 order, docket 9292 footnote 1.  So that should

2 be on the web site already.  April -- that's April 29 at 1:30.

3     May 13, hold on.  May 13 is no good for me because the 6th

4 Circuit judicial conference will be in town that day and I

5 will be attending it.  But we could do -- in lieu of that we

6 could do the prior day -- Wednesday in May.  May 6th at 1:30.

7     May 27 was the other date you asked for in May.  Let me

8 check that one.  And that was -- that will be fine too.  So

9 we've got April 29, May 6, and May 27 all at 1:30 p.m.  Does

10 -- does that give you enough, or do you want more?

11         MR. SIMON:  Your Honor, I think for now that's --

12 that's enough.  Thank you.

13         THE COURT:  Okay.  Mr. Ellman, I think -- I think

14 that's all I have that I wanted to ask you about at this

15 point.

16         MR. ELLMAN:  Okay.

17         THE COURT:  We do have these issues raised by Mr.

18 Gordon in his, I guess, response or status report he filed on

19 February 26 and to which the state responded in part

20 yesterday.

21     And I -- I assume we'll be getting into that -- or

22 talking about that a bit later in the -- in the conference.

23 So I'll -- I'll wait on that.  Is there anything else that you

24 think we should talk about today?

25         MR. ELLMAN:  I don't think so.  I'd be happy to

1   respond when Mr. Gordon speaks if there's something to talk

2   about.  I think as you saw from our report, the plan really

3   has been substantially implemented, so we don't expect there

4   will be a lot of motion practice or a substantial need for

5   Court involvement outside the claims process and, you know, an

6   occasional administrative matter.  So I think we are covered

7   from our perspective.

8               THE COURT:  Are you speaking now for the city as a

9   whole, or is there -- entirely, or is there -- are there other

10  attorneys for the city who are here today that want to speak

11  about anything?

12              MR. ELLMAN:  I think they're all available to answer

13  questions.  From talking to everyone, I believe that they're

14  available for Your Honor's questions.  I do not believe they

15  have anything they feel compelled to say.

16              THE COURT:  All right.

17              MR. ELLMAN:  So I'm standing up on behalf of the

18  city for that purpose.  But we have a group here and they're

19  at your disposal if you have questions.

20              THE COURT:  All right.

21              MR. ELLMAN:  Thank you.

22              THE COURT:  So I take it then that we've heard from

23  the city.

24              MR. ELLMAN:  Thank you, Your Honor.

25              THE COURT:  Mr. Gordon, why don't I call on you next

1  and ask whether you wanted to say anything, including anything

2  about the issues that you raise in your status report.

3       MR. GORDON:  Thank you, Your Honor.  Again for the

4  record, Robert Gordon of Clark, Hill on behalf of the General

5  Retirement System of the City of Detroit.

6       And if I may I was remiss in not mentioning for the

7  record that we also have in attendance in the courtroom today

8  Shannon Deeby and Sean Gallagher from Clark, Hill and Michael

9  VanoverBeke who is the general counsel for the General

10  Retirement System.

11       Your Honor, I -- I recognize that this is a status

12  conference and as you indicated no one expects that we're

13  going to be determining substantive issues today.  However, if

14  it please the Court, I would -- I would like to provide some

15  background to these issues, perhaps a little more fulsome than

16  was in our papers.  Our papers were -- we kept them simple

17  because we recognize it was a status conference and didn't

18  want it to look too much like a motion.  But the reason why --

19       THE COURT:  Plus you were -- you were writing

20  something to me, so you got to keep it simple.  Go ahead.

21       MR. GORDON:  So but if it please the Court, I'd like

22  to give a little more background because as -- as you'll see,

23  some of these issues, or all these issues, may implicate case

24  management things that we could discuss today as opposed to

25  actual relief today.  In other words how do we move from the

1  issues we have today to resolving those issues.

2       THE COURT:  Well, are these issues that you intend

3  to file one or more motions about to seek relief?

4       MR. GORDON:  Well, I think that's the ultimate

5  question at the end of this is -- is do we start to file

6  motions, or do we head down a certain process that may lead to

7  the filing of motions, but in the meantime may involve other

8  activities as -- as I'll describe.

9       THE COURT:  Okay, go ahead.

10       MR. GORDON:  Thank you, Your Honor.  As the status

11  report indicates there's really three issues that we wanted to

12  apprise the Court of and -- and make sure the Court was at

13  least aware of at this point in time.  And again, also to see

14  if there's some way that can move forward with those issues in

15  -- in a way that is productive and constructive and acceptable

16  to the Court.

17       The first two are issues that really pertain more to the

18  city and a third issue pertains more to the state.  The first

19  two issues circle around the ASF recoupment program and the

20  specific lump sum cash payment option under that program.

21       So if I may, the ASF recoupment program, Your Honor, is a

22  program that is part of the plan of adjustment that was

23  confirmed that aims to recover or recoup certain so-called

24  excess interest payments received by current and retired

25  General Retirement System employees during the period from

1 | July 1, 2003 through I believe it's June 30th, 2012.  There was

2 | some discrepancy between 2012 and 2013, but in any event

3 | within that period of time that's relevant.

4 |     The -- the -- as to retirees, the recoupment -- well,

5 | first of all, the recoupment there's two caps on the amount of

6 | recoupment in the plan.  That will become important later in

7 | the discussion.

8 |     One cap on the amount of recoupment is a cap that is 20%

9 | of the highest balance that any recipient of ASF distributions

10 | had in that account during this relevant ten year time frame.

11 | So the amount of the recoupment cannot exceed 20% of the

12 | highest balance of that account.

13 |     There is also another cap in the plan that indicates that

14 | the combined reduction in pension benefit for GRS retirees

15 | when you combine the 4 1/2% base retirement cut and the impact

16 | of ASF recoupment, cannot exceed 20% of the monthly benefit

17 | for any such GRS retiree.  So it's really 15 -- you can't have

18 | a recoupment on a monthly basis on a retiree's pension benefit

19 | that is more than 15 1/2% essentially of their monthly

20 | benefit.

21 |     As I mentioned there is a -- there was put in place in

22 | the plan, a lump sum cash payment option because many retirees

23 | wished to have the opportunity to pay their ASF recoupment

24 | amount in full up front and avoid the incurring of 6.75%

25 | interest which is what would accrue on the balance as it would

1 otherwise be annuitized and -- and deducted on a monthly basis

2 from their -- their pension benefits.

3     The lump sum -- there's a -- there's a cap also on the

4 aggregate amount of ASF recoupment that can be paid in a lump

5 sum. So that cap is $30,000,000. So if retirees who exercise

6 the lump sum option, if the -- if the total amount of their

7 ASF recoupment in the aggregate is more than $30,000,000 then

8 they would be permitted to make a lump sum payment of their

9 pro rata share of $30,000,000 and then the rest of their ASF

10 recoupment would be deducted on a monthly basis from their

11 monthly pension benefit.

12     So the -- the city is required to send out a notice to

13 the -- to the -- the GRS retirees to allow them to exercise

14 this option which the city duly did. There was a deadline for

15 the retirees to fill out that form and submit it to Kurtzman,

16 Carson, KCC the -- the balloting and notice agent for the city

17 in this case. That deadline was January 21, 2015.

18     The -- if you did not want to exercise the lump sum

19 option, you did not need to fill out the form at all. You

20 need to do nothing and then you would be subject to the

21 monthly deductions which started this month on March 1.

22     One thousand and fifty-four ballots were received

23 according to KCC by the deadline of January 21. Of that

24 1,054, 239 of them were filled out, timely received by KCC,

25 but there's a box at the top of the form, and the form by the

1  way, a copy of the form is attached as Exhibit 1 to our -- our

2  status report.

3          THE COURT:  Yeah, I saw that.

4          MR. GORDON:  The box isn't checked off.  Now there

5  can be a -- it just raises issues.  Okay.  So for instance

6  does the box need to be checked off.

7      But ultimately the question is, did these people

8  materially comply with the requirements by sending in their

9  ballots, signing it, but not checking that box.  There could

10 be an argument that says, why do I need to check the box.  If

11 I'm sending the form in at all it means I want to exercise the

12 option.

13     There could be an argument on the other side of course

14 that says the -- the form is clear and you're supposed to

15 check the box and you didn't check the box.  So the retirement

16 system of course just wants to get it right.  They don't want

17 to do it the wrong way.  They want to implement the plan in --

18 in the way that is deemed appropriate.  So we have that gray

19 area, Your Honor, to deal with.

20     The -- there are I believe approximately 815 parties that

21 did fill out the form, checked off the box, and -- and

22 submitted their form timely.  Their aggregate claims, the ASF

23 recoupment amounts total approximately 26.5 million dollars, I

24 am told.

25     The 239 ballots that were timely filed without the

1  checked box, I am told represent an aggregate amount of ASF

2  recoupment of approximately 5.3 million dollars. Those two

3  numbers together bring you to 31.8 million dollars roughly.

4  So it would exceed the cap, it implicates the cap issue under

5  the plan.

6      Now it is not clear, Your Honor, that -- oh, let me back

7  up. So as to those 815 that timely submitted their forms and

8  there's no issue about whether they checked off the box, the

9  retirement system duly sent out a notice of final cash payment

10 as they were required to do under the plan.

11     So those parties are scheduled to make that payment

12 within 50 days of sending out that notice. And I believe that

13 date is somewhere around March 24 to March 26. So later this

14 month those lump sum payments are due.

15     It's not clear of course that all of the people who said

16 that they want to make a lump sum payment will indeed make the

17 lump sum payment. And if they don't, then they will be part

18 of the other group where they will proceed to see their

19 recoupment deducted on a monthly basis from their pension

20 benefit.

21     So we don't know whether the 26.5 million dollars really

22 will come in. And we don't know for sure if all of the 239

23 people who didn't check the box really intended to exercise

24 their option -- their lump sum option.

25     So with that, Your Honor, what we would like to do, and

1  we didn't want to do it without everyone's blessing, but what

2  the General Retirement System would like to do, and -- and --

3  and remind you, this isn't just at the impetus of the General

4  Retirement System.  There are people who have come to the

5  board and expressed their concern.  They reached out to KCC

6  and were informed that their ballots may not -- may not be

7  deemed valid.  And so we were asked to -- to bring this before

8  the Court.

9       You know, with 239 which is roughly 23% of all the

10 ballots that were filed, not being checked off, certainly

11 there could be an argument that a ballot even though it may be

12 clear to all of us, wasn't clear to people.  On the other hand

13 there could be an argument that says hey, you know, the -- the

14 form was clear and those 239 people are, you know,

15 unfortunately out of luck.

16      But there may be -- that those are legal issues that we

17 may have to argue about.  But there may be practical issues

18 that come into play here.  So what we wanted to do was to send

19 out a letter in consultation with the city to those 239 people

20 basically indicating that we need them to indicate again on --

21 in this letter and check off the box saying yes, I want lump

22 sum -- lump sum option, or no, I don't want the lump sum

23 option.

24      And also put in that letter that to make clear that --

25 that this letter does not mean that they will indeed be able

1  to participate in the lump sum program, that that still needs

2  to be determined before this Court.  But we would like to find

3  out say within the next three weeks or so, you know, how many

4  of those 239 really intended to participate in the program.

5     And with that kind of a time frame, and we can talk about

6  the exact dates with the city because we really haven't had

7  time to do so.  It will somewhat dovetail with the time frame

8  for the other 815 parties to make their lump sum payments.  So

9  sometime around the end of the month we should have a better

10 picture of whether indeed the $30,000,000 cap is implicated

11 here or not.

12    Now again I'm saying this -- I'm not -- I'm not trying to

13 argue the issue.  There still is of course possibly an

14 argument here on the city's part that it doesn't matter

15 whether the cap is implicated or not because these people

16 didn't check off the box therefore they shouldn't be able to

17 participate.

18    But from our perspective we think it's relevant.  We

19 think it's relevant also for being able to discuss this and

20 see if we can reach a consensual resolution on these issues.

21    So for today procedurally that's what we're seeking some

22 authority to do with the blessing of the city or without the

23 blessing of the city, but hopefully with the blessing of the

24 city to send out a letter in consultation with them to those

25 239 people to at least find out what their intentions were and

1 to maybe bring this issue back before the Court if we have to

2 in the month of April after we see how many of the 815 ballot

3 retirees actually made their lump sum payments as well.

4          THE COURT:  And bringing the issue back in April as

5 you just referred to it, I suppose you would think at that

6 point of doing it by motion.  And the body of claimants or

7 people that you would need to serve with notice of that motion

8 will depend, I guess, on whether or not the 815 who did it

9 right, could be adversely affected by the outcome and that in

10 turn depends upon whether the cap, the $30,000,000 aggregate

11 cap to the recoupment is implicated any more.

12          MR. GORDON:  Yes, Your Honor.

13          THE COURT:  Which you'll know more about after this

14 March 24, 26 payment deadline, lump sum payment deadline

15 passes.  Right.  Is that -- is that the idea?

16          MR. GORDON:  That's -- that's exactly right, Your

17 Honor.  That's correct.

18          THE COURT:  But in the meantime what you're

19 proposing to do it sounds like is send a letter that -- that

20 -- that makes the inquiry of the 215 -- 239 rather, folks who

21 didn't check the box without -- and make clear then though

22 that it -- it may still be that -- that even if they say that

23 they did -- they do -- did intend and do want the cash, lump

24 sum cash option for themselves, they won't necessarily get it.

25          So it sounds like you don't need any sort of authority

1  from the Court to send this letter.  If -- if you make clear

2  to the recipients that the -- there has been no determination

3  yet that there -- that they will have a right to the lump sum

4  cash payment option.

5      MR. GORDON:  That's correct, Your Honor.

6      THE COURT:  Does that make sense to you?

7      MR. GORDON:  Yes, exactly.  That's exactly what we

8  intend to do it make it clear.

9      THE COURT:  So this is really presented to me in

10  this status conference it sounds like, you at this point for

11  informational purposes and to give me a head's up of what may

12  be coming down the road, but you're not asking me for any sort

13  of -- of ruling or authorization today, right?

14      MR. GORDON:  That is correct.  I -- I guess I also

15  raised it because if -- if someone does have an issue with it,

16  obviously this plan is the city's plan.  The Court is -- is --

17  is -- is charged with protecting the integrity of the plan and

18  I -- and certainly we didn't want to take a step to reach out

19  to these people regarding a program under that plan without at

20  least giving due notice to all involved of that issue of -- of

21  that process.

22      THE COURT:  All right.  So that's issue one.

23      MR. GORDON:  Yes.

24      THE COURT:  What do you want to say about issue two?

25      MR. GORDON:  Issue two, Your Honor, is also

1  regarding ballots submitted with respect to the lump sum

2  program.

3          THE COURT:  These are the late received?

4          MR. GORDON:  These are the late ones, correct, Your

5  Honor.

6          THE COURT:  Yeah.

7          MR. GORDON:  And I will add some information that I

8  didn't have until today about late filed ballots.  Our status

9  report indicates that there were some 39 ballots that were

10 mailed before the January 21 deadline, but apparently received

11 by KCC on January 22 and 23.  Almost all of them on January

12 23.

13     And this is mind you the week of -- this -- this would be

14 -- January 21 is a Wednesday.  It is the Wednesday after the

15 federal holiday for the birthday of Dr. Martin Luther King,

16 Jr. on -- on January 19.

17     So there could have been an issue there with mail.  It --

18 you know, I -- this is -- you know, there's a different legal

19 issue here about whether that's something that can be

20 addressed or not.

21     So those ballots did come in late.  I don't think there's

22 any dispute about that.  They were mailed beforehand and so we

23 -- we wanted to apprise the Court that that was at least out

24 there and something that we wanted to discuss with the city.

25     I have learned that there are -- were additional late

PAG ___40___

1 ballots that were received later in January and in February, I

2 think they total about 38 in number. However, I don't believe

3 those ballots were mailed before the deadline, so there may be

4 a basis for differentiating between two classes, or there may

5 not be. So, but we wanted to at least apprise the Court that

6 that's out there.

7        THE COURT: Well, so what are you planning to do if

8 anything about this issue?

9        MR. GORDON: On that issue, I'm -- I'm not sure yet.

10 I don't have a -- a proposal today. You know, I'm not sure

11 how that's going to be brought before the Court or not. We

12 would like to certainly discuss it also with the city to see

13 if -- how -- whether there is a consensual way to deal with it

14 or not. I -- I just don't -- I don't have an answer for you

15 today on that.

16        THE COURT: You said in your -- I think you said in

17 your status report that the -- because January 19 was a

18 federal holiday, the city agreed to extend the deadline to

19 January 21?

20        MR. GORDON: That's correct.

21        THE COURT: Two days after the holiday.

22        MR. GORDON: That's correct.

23        THE COURT: Not the day after. And so what's stated

24 on the form which is in bold letters that they have to be

25 received by 5:00 p.m., pst on January 19, has already been

13-53846-tjt Doc 9554 Filed 03/28/15 Entered 03/28/15 08:22:09 Page 40 of 64

1 loosened by -- apparently by agreement between the city and --

2 and your client.

3          MR. GORDON:  That's correct.

4          THE COURT:  Right?

5          MR. GORDON:  Yes.

6          THE COURT:  So you both must feel that you have some

7 leeway, at least by agreement between yourselves, to do that

8 sort of thing under the terms of the confirmed plan.

9          MR. GORDON:  I -- I believe that's correct, yes.

10          THE COURT:  Well, so I'm happy to have heard the

11 information and have read about it in your report, but you're

12 not -- again you're not asking the Court to do anything or

13 authorize anything, or make any ruling today on this.

14          MR. GORDON:  No, that -- that was sort of if you

15 will, sort of an adjunct to the -- related but not really

16 related issue to the first issue.  The first issue was the one

17 that was really I think more important to bring before the

18 Court today because I think there's an action we actually we

19 want to take to try to -- a step we want to take start to try

20 to resolve that issue, so --

21          THE COURT:  All right.  What about your issue three,

22 this one involves more of the state, you said.

23          MR. GORDON:  Yes, Your Honor.

24          THE COURT:  I did -- I did read the state's and I'm

25 sure you did, the state's response to that issue three that

1   was filed yesterday.

2        MR. GORDON:  Correct.  And again I -- I -- I

3   certainly don't want to get too far into the argument of it

4   all, because this is a status conference, but I'll try my best

5   just to sort of lay out what I -- I see as the issues there.

6        So the third issue involves implementation of the income

7   stabilization fund program, or what we'll call the ISF

8   program.  The ISF program, first of all, it was funded by a --

9   just for background for the Court, it was funded -- the funds

10  for that originated out of a settlement by the city with the

11  unlimited tax general obligation bond holders regarding the

12  treatment of their claims, referred to by the acronym the UTGO

13  bonds.

14       To -- before the bankruptcy they were -- the debt service

15  on those bonds was generally paid ostensibly from a special

16  tax levy that the city would levy each year to -- to pay that

17  debt service.  In the settlement of their claims not all of

18  that tax revenue was going to be needed to make distributions

19  on their claims essentially.  So a portion of those bonds were

20  assigned back to the city, what we'll call the stub UTGO

21  bonds.  And the tax revenue that goes with those bonds

22  essentially gets assigned back to the city.

23       The ISF program in general as we understood it, was

24  targeted at trying to mitigate or alleviate the impact of the

25  plan on the pension benefits of those people who are most

1  vulnerable and at risk in the city.  The -- just -- and -- and

2  by way of timing as far as a time line chronology in the case,

3  this may be important at some point.

4       The UTGO settlement occurred I want to say in the first

5  quarter, or early in the second quarter of 2014.  And that

6  settlement and the ISF program and the ASF recoupment program

7  were all in some form or another reflected in the plan of

8  adjustment at least as early as the second amended plan that

9  was filed on April 16th, 2014.

10      And it shows up in the next seven iterations of it that

11 lead to the eighth amended plan that got approved in the fall

12 of 2014.  So the ASF and the ISF were -- were there in the

13 plan from fairly early on.

14      Now the ISF program is described in the plan of course,

15 but it is also described in the state contribution agreement.

16 The state contribution agreement was -- was the agreement that

17 governed the terms on which the state made its contribution to

18 the pension systems under the plan.

19      And the state wanted to be involved in administering or

20 -- or implementing, or defining the ISF program.  And so

21 discussion of the ISF program would be found in the state

22 contribution agreement as well.  So those two documents, the

23 plan and the state contribution agreement have relevant

24 language as to the ISF program.  So --

25           THE COURT:  So there's not a separate settlement

1 | document approved by the Court regarding the UTGO settlement

2 | that -- that speaks to this also?  It's -- it's just the plan

3 | -- for present purposes, the eighth amended plan that was

4 | confirmed and in the state contribution agreement.

5 |         MR. GORDON:  That's correct, Your Honor.

6 |         THE COURT:  Okay.

7 |         MR. GORDON:  If you look at the UTGO settlement, all

8 | it says is -- it mentions the stub bonds and the assignment of

9 | those back to the city.  But it doesn't get into any

10 | discussion of how that would be used.  You really then have to

11 | look separately to the ISF program itself.

12 |         THE COURT:  Okay.

13 |         MR. GORDON:  So the first question is, eligible

14 | pensioners are -- are -- is a defined term as to who is

15 | eligible to participate in the -- the -- the ISF program.  An

16 | eligible pensioner is defined -- hold on one second, Your

17 | Honor.

18 |     Is defined in the plan at definition number 170 on Page

19 | 14 of the plan.  And -- and that eligible pensioner is defined

20 | and I'll quote, "eligible pensioner means a holder of a

21 | pension claim who is eligible to receive an income

22 | stabilization payment because such holder A, is, as of the

23 | effective date, at least 60 years of age, or is a minor child

24 | receiving survivor benefits, and B, has an aggregate annual

25 | household income equal to or less than 140% of the federal

1 poverty level in 2013 as determined by reference to their 2014

2 income tax returns".

3      I'm -- I'm -- and I won't finish the paragraph off.  But

4 that's in large part what that provides.  End of quote.

5      So it's a formula.  You unless you are a survive -- a

6 surviving minor -- a minor child with survivor benefits,

7 basically you have to be 60 years or older, and you have to be

8 -- you have to have had 2013 income, this is before the -- the

9 pension benefit reductions take effect under the plan.

10     But looking at 2013, your income had to be at 140% of the

11 federal poverty level or less.  And that makes you an eligible

12 pensioner under the plan.

13     And then the income stabilization benefit itself is

14 defined to mean and I quote, "a supplemental pension benefit

15 in an amount necessary to insure that A, each eligible

16 pensioner's total household income is equal to 130% of the

17 poverty level in 2013, or B, the annual pension benefit

18 payment payable to each eligible pensioner equals 100% of the

19 annual pension benefit payment actually received by the

20 eligible pensioner in 2013 whichever amount is lower".  End

21 quote.  So again, it's a formula --

22          THE COURT:  This again is a definition in the plan?

23          MR. GORDON:  Yes, I'm sorry.  It's -- it's

24 definition number 219 on Page 18 of the plan.  Sorry, I should

25 have mentioned that.

1          THE COURT:  Thank you.  Go ahead.

2          MR. GORDON:  Yes.  So again it's a formula.  And it

3   specifically says that the plan -- that the -- I'm sorry.

4   Both of these formulas don't take into account, don't make any

5   exception relative to -- I'm sorry, hang on one second.

6          THE COURT:  I think what you're going to say is they

7   don't draw a distinction between what causes the income

8   reduction.

9          MR. GORDON:  That's correct, Your Honor.  The income

10  stabilization benefit --

11         THE COURT:  Is that right?

12         MR. GORDON:  -- aims to bring -- the income

13  stabilization benefit aims to bring the eligible pensioner

14  back up to a certain level of income.  It doesn't say net of

15  any ASF recoupment.  There is no mention of it whatsoever.

16      So what does the state contribution agreement say?  Well,

17  the state contribution agreement, Paragraph 3G has a

18  definition of eligible pensioner as well.  And its language is

19  slightly different, but it's -- it's -- it's consistent with

20  the plan.

21      Because it says, "that an eligible pensioner -- eligible

22  pensioners are those retirees or surviving spouses who are at

23  least 60 years of age, or those minor children receiving

24  survivor benefits, whose pension benefit from GRS or PFRS will

25  be reduced by the confirmed plan and who have a total

1 household income of equal to or less than 140% of the federal

2 poverty line in 2013".

3      The language here is really simple.  It just says "these

4 are people 60 years or older whose pension benefit will be

5 reduced by the confirmed plan.  It doesn't say reduced only by

6 the 4 1/2% base cut in benefits or by COLA and not by the ASF

7 recoupment amount.  It talks about just any pension benefit

8 reduction under the confirmed plan.

9      Similarly the definition of an income stabilization

10 payment under the state contribution agreement which appears

11 at Paragraph 3A, talks about the -- the -- the income

12 stabilization payment being an amount equal to or -- equal to

13 or lesser of A, the amount needed to restore the eligible

14 pensioner's reduced pension benefit to the amount of the

15 pension benefit that the eligible pensioner received from the

16 GRS or PFRS in 2013, or B, the amount needed to bring the

17 total annual household income of the eligible pensioner up to

18 130% of the federal poverty level in 2013".

19      And so that's very consistent with the plan.  Again, it's

20 just looking to what it's going to take to bring that eligible

21 pensioner back up to a level of income that is 130% of the

22 poverty level, or what they were receiving in 2013.  It

23 doesn't say less or excluding ASF recoupment.  There is no

24 mention of it whatsoever.

25      So, the -- I mentioned that the ASF and the ISF programs

1  were in the plans starting the first -- the iterations of the

2  plan and starting in April of 2014.  This state contribution

3  agreement was being negotiated at least into August of 2014

4  and wasn't executed and it could have been even into the fall,

5  I can't remember anymore.  This case is taking a little toll

6  on -- on the memory bank.  But it was executed in November of

7  2014, long after the ASF and the -- and the ISF programs were

8  -- were there in seven or eight versions of the plan.

9      So then in January, the General Retirement System and the

10  state are talking about implementation of the ISF program and

11  for the first time it comes out that there is an apparent

12  disconnect between the parties as to who should receive ISF

13  payments and in what amounts.

14      And specifically as mentioned in the status report the

15  state has said that they don't believe that ISF payments

16  should be made to people who would otherwise be eligible

17  pensioners, people, you know, at risk to restore a pension

18  benefit reduction that happens to be as a result specifically

19  of the ASF recoupment program.

20      We disagree but we also of course as I've said, we just

21  want to get it right.  We -- we don't want to be implementing

22  a program in a way that's not appropriate.

23      So we have this disagreement, Your Honor.  March 1 was

24  the date to begin implementation of the program.  And so what

25  we did was we complied with the state's view of the world for

1 now so that we weren't at cross purposes with them at this

2 point in time.

3      So ISF payments went out only to the group that as I

4 understand it, that the state believes are entitled to receive

5 it, and in the amounts that the state believes are entitled to

6 receive it.

7      But we made it clear that we -- this issue was an issue

8 that we still wanted to resolve one way or another.  And

9 that's essentially where we stand, Your Honor.  I can tell you

10 that, you know, one of the concerns raised by the state was

11 that, you know, this might -- if you -- if you allowed that --

12 if you allowed ISF benefits to be used to restore pension

13 reductions as a result of ASF recoupment, that it might impact

14 and bankrupt the ISF program.

15      Again, we're more than happy to talk with the state about

16 this more.  But I am told that the amount we're talking about

17 is approximately $16,000 per month or $192,000 per year for a

18 program that will be funded by no less than $20,000,000 over

19 the next 14 years.

20      So there is reason to believe that there is sufficient

21 funds to -- to meet whatever view of ISF and how it should be

22 applied.  So, Your Honor, again, it is a status conference and

23 we come back around to that fact.  But we -- we're looking for

24 guidance.  This is an issue that needs to be resolved --

25           THE COURT:  How -- how do you think this should be

1   teed up for any sort of ruling by the Court?

2           MR. GORDON:  Well, Your Honor --

3           THE COURT:  Is somebody going to file a motion, or

4   what are -- what are you thinking?

5           MR. GORDON:  This is what I am thinking.  And we can

6   do this on parallel paths.  I -- and I don't want to sound at

7   all patronizing about this.

8       But recognizing that you're -- you're being brought in

9   from the side to this case and there's a lot of complexity to

10  it and what and -- and so forth.  We were thinking about two

11  things.

12      One, filing a motion but we were also wondering whether

13  it made sense, and again, I'm just -- we're just trying to

14  figure out the best way to deal with this on a practical

15  level, whether it made sense to have some mediation of this

16  with the mediators who have, you know, lived with this -- this

17  process for -- for -- for quite a bit of time now.

18      We have suggested that to this date and so far

19  unfortunately they have expressed no interest in -- in

20  engaging in mediation.  But we thought maybe mediation would

21  be an appropriate way to go.

22      If -- if the Court is not planning to avail itself of

23  that -- those mediators and that mediation process that

24  existed previously, so be it, then we'll just file our motion.

25  But we wanted to at least broach it with you.

 1          THE COURT:  All right.  I -- I think I should give a

 2  chance for the -- at least for the counsel for the city to

 3  respond as they would like and also for the state to respond

 4  as it likes.

 5      Mr. Gordon has -- the -- the level of detail you've given

 6  in the hearing is helpful to me, although obviously I'm not --

 7  I'm going to be open to any further argument when the time

 8  comes for me to actually make a ruling and I -- and I did read

 9  the argument made by the state in their response filed

10  yesterday.

11      And today obviously is not the day for everybody to do

12  comprehensive oral arguments for their position.  But I do --

13  I think in light of the leeway I gave you, I should let the

14  city and the state respond a little bit at least if they want

15  to.

16      So why don't we start with the city.  Mr. Ellman, you're

17  going to speak?

18          MR. ELLMAN:  Yes, I will, Your Honor.  Thank you.

19  Jeffrey Ellman from Jones, Day on behalf of the city.

20      And there is -- we did not file anything in response.

21  There's no pending request.  But I guess I'll just make a

22  couple of points.

23      I think the main one we -- we appreciate what Mr. Gordon

24  is saying on behalf of his client.  We -- we read his paper

25  and we think he -- he laid out his concern well in that paper.

1 | Our concern I guess is that these are all procedures and

2 | deadlines that by the parties' agreement were embedded

3 | directly into the plan. This isn't a side agreement. This is

4 | something that is in section -- it's a long section, Section

5 | (II)(B)(3), ®) like Ralph (ii)(D)(2) and then another (ii).

6 | Probably easier to refer to as Page 41 of the plan.

7 | That's the -- because everything is on that page. But that is

8 | the section number.

9 | So I mean if you look at that section of the plan and

10 | that page of the plan, it goes through a process that has all

11 | these deadlines embedded in it. And the form we sent out is

12 | the form that was negotiated and agreed to by the parties,

13 | including Mr. Gordon and his client. And it does say you have

14 | to check a box to affirm that this is what you mean to do,

15 | it's not an accident. And you just sign it. Those are really

16 | only two things you have to do.

17 | And we know people did send back forms and didn't check

18 | the box and they wrote no, I don't want to do this. So we

19 | needed some mechanism. I thought it was appropriate to have a

20 | box to check, but regardless of whether it was a good idea or

21 | a bad idea, that was the agreement as what was established.

22 | And these deadlines in the plan are all happening when it

23 | happened in real time. There was a deadline to send out the

24 | notice, there was a deadline to get back the election forms,

25 | not only ballots, they're really just election forms.

1   There was a deadline to send out the notice to people if

2  -- if you were going to pay the cash amount, and how much it's

3  going to be.  And there is a deadline to pay it.  And you've

4  heard about some of those.

5   And pretty much all the deadlines have passed except for

6  the -- the deadline to pay for most people.  And even the date

7  that was moved back to the 21st of January, I don't know that

8  it was because we think we have so much discretion to change

9  the plan, but if you do the math in the plan, January 21st was

10  the latest date that that date could have been in the plan.

11   So it -- it -- it seemed rational to use the later date

12  which is consistent with it was 35 days after notice was sent.

13  And the last day the notice could have been sent was seven

14  days after the effective date which is December 17.

15   So we were really just trying to implement this plan.

16  And I don't know that there's an easy way to change both

17  what's in the plan, and modify effectively the plan, and also

18  change what's already happened.

19   For example March 1st, and this is in our status report,

20  the first pension checks went out.  And a few had not elected

21  the lump sum.  Or if we certainly didn't believe you have

22  complied to do so, then deductions started to be made from

23  your pension check.

24   So if we start changing these things, we have to deal

25  with the fact that they're in the plan.  You have to

1  unscramble the egg to some extent to some greater or lesser

2  extent.

3      So I just wanted to point that out to the Court.  As far

4  as sending a letter, I did just hear about that in probably

5  the -- the 60 seconds before you walked out, Your Honor, Mr.

6  Gordon mentioned that to me.  I've talked to my client in the

7  sense of, you know, during the presentation here having a very

8  brief discussion.

9      I -- I think my concern is that it seems like it's going

10 to be a little confusing to people to suggest that we might

11 honor the election that was not honored so far.  Maybe that

12 would happen by virtue of an order of the Court or some other

13 process.  But right now our view is that the election forms

14 came in, we fulfilled the terms of that form in the plan and

15 we're going forward.

16     People wanted this to happen quickly.  And -- and these

17 dates were all negotiated, I think that GRS also wanted things

18 to move quickly.  And I guess the down side of that is it

19 doesn't leave a lot of leeway either in the dates or the time

20 line to make a lot of changes.

21     So perhaps this is something we'd wait to see what kind

22 of motion might be filed.  We could address it then.  We're

23 certainly happy to talk to Mr. Gordon in the meantime, see if

24 we can resolve something.  But there are some challenges to it

25 and I wanted to at least let the Court know that that was the

1 case.

2      As to the second piece on the income stabilization, that

3 really is not the city's issue.  I think that the state is

4 correct in what they filed.  This is something that the

5 discretion to implement this program under the contribution

6 agreement with the state, it isn't in the state's discretion.

7      And this is how they're exercising their discretion which

8 -- which sounds rational to me, but the state is represented

9 were and will speak -- speak for themselves on that issue.

10 Unless you have any questions, that's all I have, Your Honor.

11           THE COURT:  All right.  Thank you.  Mr. Howell, did

12 you want say anything --

13           MR. ELLMAN:  Thank you.

14           THE COURT: -- for the state?

15           MR. HOWELL:  I would, Your Honor.  Thank you, Your

16 Honor.  Again, Steven Howell, Dickinson, Wright, Special

17 Assistant Attorney General appearing on behalf of the State of

18 Michigan.

19      Again, a status conference.  If there's relief sought, we

20 believe a motion should be filed and it should be teed up.

21 And like Mr. Ellman, we've heard some things here today that I

22 certainly haven't heard before in any of the discussions.

23      But let's for like -- it's kind of like shadow boxing.

24 But what -- what I'd like to start out with is that the state

25 opposes using the ISF fund to restore ASF recoupment dollars.

1  And as Mr. Ellman mentioned and as we say in our papers, the

2  agreement is very clear we think on this point.

3      And it says that the amounts of income stabilization

4  payments payable to eligible petitioner -- pensioners, shall

5  be made by the state in its sole discretion.  State

6  contribution agreement Paragraph 3H.

7      And the reason this program was championed by the state,

8  it was one that the state worked extensively on in terms of

9  the amount of money necessary, estimates in terms of paying

10 people that were taken below the poverty level, what we call

11 sizing the program.  This was done extensively by -- by the

12 state without addressing the ASF portion of this.

13     And we can get into it more when we argue, but when Mr.

14 Gordon says the agreement was negotiated over many months, we

15 thought the agreement was done in May and we've been asked

16 repeatedly to revisit these in here and we've said no.  I

17 remember when we thought we had it done the first time, I was

18 actually -- found myself trying to deal with this on a cruise

19 ship in Italy when I was trying to get away when we thought

20 that we had this done.  We thought we had it done in May.

21     What I think it's important to understand is that the ISF

22 program was structured to address reductions in the monthly

23 payments, the pension payments and COLA payments caused by the

24 under funding of the pension plan.  The plan was under funded

25 for a host of different reasons that have been published on

1  this.  But it was under funded.

2       And the idea was to take a sum of money that came

3  available out of the UTGO settlement and dedicate it in an

4  amount estimated to cover the needs and the impact of those

5  most vulnerable and that were taken below the poverty level or

6  would be very shortly by this 4.5% and COLA.  And this was a

7  way to try to mitigate the plan treatment arising out of its

8  under funding.

9       Now, the ASF program contributed to the under funding of

10 this plan.  By diverting pension dollars away from the pool

11 for all, to a smaller sub set of pensioners.

12      And into in effect personal savings accounts of certain

13 members but not all at the expense of others.  Because the

14 entire pool was managed together and the entire pool had ups

15 and downs over time.  Some years as we all have lived through

16 the great recession, some good, some bad.

17      That fund went up and down.  The ASF accounts did not.

18 They had -- were paid at the discretion of the board.  They

19 guaranteed for, as I recall, and again details we can get into

20 later, of 7.9%.  So even when the fund went down 20%, they got

21 7.9%.  Well, where did that come from?  It came from the

22 common pool and therefore it took away from others.

23      So the idea was to craft a program that would take those

24 dollars, negotiate based on a -- a question of the propriety

25 of those.  That was never -- that was never determined.  But a

1  question of the propriety and negotiated settlement and then

2  those dollars would be brought back into the fund,

3  redistributed to again mitigate the impact of the under

4  funding on pensioners.

5       To now take these dollars that were meant to, we think,

6  to -- to handle that problem, and to allow people to recover

7  some of this amount of money that was questioned in the case

8  and that was negotiated to come back in for the benefit of

9  all, and allow this -- these dollars to be used for that

10 purpose, is contrary we think to the whole structure of what

11 was set up.

12      And again, the recoupment was part of the plan to address

13 this under funding.  And it brought in a significant -- it

14 will bring in a significant amount of money to mitigate the

15 reduction in pension benefits across the board.

16      Now I -- I would also just say that Mr. Gordon likes to

17 use the term mitigate pension reductions.  The benefit, the

18 monthly benefit of these parties has not been changed.  It is

19 4.5% reduced.

20      What is happening, however, as a mechanism negotiated in

21 a separate settlement, that -- that the mechanism for

22 recovering is either lump sum payment, or deduction from this

23 payment.  It's a mechanism to pay this other obligation.  It's

24 not reducing the pension benefit because we know that that's

25 something that could have been handled in the fashion that it

1  was handled.

2       So we think this is a reduction -- this is a mechanism to

3  pay this other obligation and is outside of this program.  And

4  I guess this is not a preference or a fraudulent conveyance,

5  but it's somewhat analogous to that.  Where there are benefits

6  that certain people got that others didn't at the expense of

7  the common group.

8       They were negotiated, they were brought back in, and they

9  were redistributed for all.  It seems to us contrary to now go

10 back in and take these ISF dollars who were meant to cover

11 this certain sub set and give it to people, even though they

12 may have done nothing wrong, but these payments that were

13 questioned is a breach of fiduciary duty, you know, in the

14 case.

15      We think that is inappropriate.  We strongly oppose it.

16 And the plan that was negotiated stopped the practice, brought

17 this money back in, and put it for all.  This would be almost

18 like restarting it, but then restarting it in a way that

19 benefits not the people even that -- I mean not -- it doesn't

20 benefit, it takes away from potentially all the others for

21 this sub set that's now even smaller because those that make

22 their lump sum payments don't get a benefit from this possible

23 restoration which we believe is inappropriate.

24      We don't really see that mediation serves a purpose

25 because we don't think there's a reason for it.  We think the

1 plan again along the lines of Mr. Ellman, we think -- we think

2 the plan and it's structure was done very thoughtfully.  It is

3 a very complex document as I'm sure you're -- you're seeing as

4 you get involved in this.

5      It was the product of a lot of agreements and a lot of

6 effort.  And to now come back and whether it's in the form of

7 asking the Court for a question or guidance, it's an attempt

8 to change the plan in various ways.

9      And we just think that's not something that should be

10 done and if the Court is inclined to -- or if the pension

11 systems want to bring a motion, they should bring a motion

12 before this Court.  And the -- the state opposes using ISF

13 dollars to restore ASF payments that were questionable to

14 begin with, Your Honor.  Unless you have any questions, Your

15 Honor, that concludes my remarks.

16           THE COURT:  No, thank you.  Well, thank you all for

17 your remarks on this.

18      With respect to this -- this issue, this -- it's the

19 third issue raised in Mr. Gordon's status report filed

20 February 26th.  The issue involving the ISF program that's just

21 been discussed and -- and argued in this status conference.

22 And probably not for the last time before this Court.

23      The -- my view is that as Mr. Gordon suggested, the --

24 the way to tee this up so to speak for a ruling by the Court

25 is for a motion to be filed.  It has not been yet, but for a

1 motion to be filed.

2      Mr. Gordon also mentioned the possibility of sending this

3 dispute or this issue to -- back to the mediators who did such

4 a wonderful job in this case leading up to the confirmation of

5 the plan.  And some -- some of the mediators of course

6 continue to work post-confirmation.

7      But the -- with respect to that mediation, I -- I am

8 certainly a Judge who -- who favors mediation in general and

9 often encourages parties to mediate their disputes or think

10 about engaging in mediation.  In fact I just gave my little

11 mini talk encouraging mediation in a case -- in the very last

12 case I heard at the 11:00 call this morning before I had this

13 status conference at 1:30.

14      But I'm not going to order mediation of this dispute at

15 this time.  And I don't know if I will order it at all.  But I

16 certainly am not going to order it before the time when a

17 motion is filed, an opportunity for objections is given,

18 objections are filed, and the Court has a hearing on the

19 motion.

20      And it -- it -- if -- if we -- we -- I'm not closing the

21 door to mediation on this, but I'm not going to open it yet in

22 the absence of a motion and a hearing on the motion.  So, it

23 sounds like that will likely be the next step unless the state

24 and the General Retirement System are able to resolve their

25 differences.  And perhaps even then some sort of motion might

1 be necessary, we'll have to -- we'll have to see.

2    But so that's where I'll leave that.  And thank you

3 though for your both written and oral expression of views on

4 -- on these issues.

5    So I think at that point -- at this point then, I -- I

6 would just say -- would just ask whether -- just one more

7 time, whether there's anything that -- first of all, if any of

8 the attorneys for the city think we ought to talk about

9 further in this status conference today.  Mr. Ellman.

10        MR. ELLMAN:  I do not, Your Honor.

11        THE COURT:  All right.  Does any other attorney or

12 party in interest who is in the courtroom -- we'll ask -- I'll

13 ask the same question to the folks on the telephone in a

14 minute.  But those in the courtroom, is there anything else

15 that anyone else here thinks that the Court should discuss or

16 address, or that you want to say in today's status conference?

17 Nothing.

18    Same question to those on the phone.  Let me -- let me

19 ask you, Mr. Mack, first that question.  Are you there?

20        MR. MACK:  Yes, I'm here, Your Honor.

21        THE COURT:  Anything further that you want to say?

22        MR. MACK:  No, nothing that can't wait until the 8th,

23 Your Honor.

24        THE COURT:  All right.  Mr. Kohn and Mr. Larose,

25 same question of you.

1          MR. KOHN:  No, Your Honor.  Thank you.

2          THE COURT:  I believe I have on the list that Martha

3 Kopacz was going to participate live by telephone.  Are -- are

4 you there, Ms. Kopacz?  She didn't enter an appearance

5 earlier.  I guess she's not there.

6          A VOICE:  That line is open, Your Honor.

7          MS. KOPACZ:  Your Honor, it is Marty Kopacz.  I

8 actually was just listening in as a favor to the new executive

9 director of the --

10          THE COURT:  I'm sorry.  Listening as a -- listening

11 in as a favor to who?  I didn't hear you.

12          MS. KOPACZ:  To Mr. Rose.

13          THE COURT:  All right.  All right.  Well, so thank

14 you then.  All right.  Well, thank you all.  I appreciate your

15 discussion and written and oral comments here.  It's been very

16 helpful to me at least.  And --

17          (Court Adjourned at 3:02 p.m.)

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8  We certify that the foregoing is a correct transcript from the

9  electronic sound recording of the proceedings in the

10  above-entitled matter.

11

12  /s/Deborah L. Kremlick, CER-4872          Dated: 3-28-15
    Jamie Laskaska
13

14

15

16

17

18

19

20

21

22

23

24

25