**EXHIBIT D**

# MASTER AGREEMENT

BETWEEN THE

# CITY OF DETROIT

AND THE

# DETROIT POLICE COMMAND OFFICERS ASSOCIATION

# 2014 – 2019

CHI-1916808v6

# TABLE OF CONTENTS

LAW ENFORCEMENT CODE OF ETHICS ........................................................................... 1

1.    PREAMBLE ........................................................................................................ 2

2.    RECOGNITION OF ASSOCIATION ............................................................... 2

3.    ASSOCIATION SECURITY ............................................................................. 2

4.    BASIS OF REPRESENTATION ........................................................................ 4

5.    MANAGEMENT RIGHTS AND RESPONSIBILITIES .................................. 4

6.    ASSOCIATION RESPONSIBILITIES .............................................................. 6

7.    GRIEVANCE PROCEDURE .............................................................................. 7

8.    DISCIPLINE PROCEDURE .............................................................................. 8

9.    EMPLOYEES' RIGHTS ..................................................................................... 9

10.   DEPARTMENT FILES ....................................................................................... 10

11.   LEGAL COUNSEL ............................................................................................. 11

12.   CHIEF'S DUTY OFFICER ................................................................................ 11

13.   OUTSIDE EMPLOYMENT ............................................................................... 11

14.   POLITICAL OFFICES ....................................................................................... 12

15.   HEALTH AND SAFETY ................................................................................... 12

16.   LEAVES OF ABSENCE .................................................................................... 12

17.   ABSENT WITH LEAVE AND ABSENT WITHOUT LEAVE ..................... 13

18.   DISABLED TIME ............................................................................................... 14

19.   SERVICE WEAPON .......................................................................................... 14

20.   SICK TIME ......................................................................................................... 14

21.   FUNERAL LEAVE ............................................................................................ 18

22.   HOLIDAYS ......................................................................................................... 18

23.   LEAVE COMING DAYS ................................................................................... 19

29.   EXCUSED TIME DAYS .................................................................................... 19

24.   FURLOUGH ........................................................................................................ 19

25.   JURY DUTY ........................................................................................................ 20

26.   UNIFORMS ......................................................................................................... 21

27.   MISCELLANEOUS ........................................................................................... 22

28.   MEDICAL, DENTAL, AND OPTICAL HEALTH CARE ............................ 22

| | | |
|---|---|---|
| 29. | DEATH BENEFITS AND LIFE INSURANCE | 25 |
| 30. | PENSION AND RETIREMENT BENEFITS | 26 |
| 31. | WAGES | 26 |
| 32. | SAVINGS CLAUSE | 26 |
| 33. | EXTENT OF AGREEMENT | 27 |
| 34. | EFFECTIVE DATES/DURATION | 28 |

## LAW ENFORCEMENT CODE OF ETHICS

As a Law Enforcement Officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or my agency. I will maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my Department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession – Law Enforcement.

The Law Enforcement Code of Ethics, by agreement of the parties, is not a provision or article of this contract but rather is included herein to remind all who read this document of the dedication, sacrifice, courage, valor, judgment, wisdom, responsibility, accountability, loyalty, and professionalism which is displayed by the membership of the Detroit Police Command Officers Association while serving the citizens of the City of Detroit.

CHI-1916808v6

# 1. PREAMBLE

This Agreement entered into between the CITY OF DETROIT, a Michigan Municipal Corporation (hereinafter referred to as the "City," Department," or "Employer") and the DETROIT POLICE COMMAND OFFICERS ASSOCIATION, an organization existing under the laws of the State of Michigan (hereinafter referred to as the "Association" or "Union") has as its purpose the promotion of harmonious relations between the City and the Association; the establishment of an equitable and peaceful procedure for the resolution of differences; orderly resolution of grievances; and the establishment of rates of pay, hours of work, and other terms and conditions of employment both economic and non-economic.

# 2. RECOGNITION OF ASSOCIATION

A.  Pursuant to and in accordance with all applicable provisions of Act 336 of the Public Acts of 1947, as amended, the Employer hereby recognizes the Association as the sole and exclusive representative for the purposes of collective bargaining with respect to wages, hours, and other terms and conditions of employment both economic and non-economic as follows:

> All full-time and regular part-time Captains and Commanders employed by the City of Detroit Police Department, excluding confidential Employees.

The use of confidential Employees shall be for necessary and appropriate purposes only, and confidential Employees shall not be used to undermine or reduce the scope of the bargaining unit. The use of up to three confidential Employees for necessary and appropriate purposes will not be considered an improper action to undermine or reduce the scope of the bargaining unit.

B.  The Association recognizes that Captains and Commanders constitute an integral part of the senior leadership team of the Detroit Police Department. Employees holding these leadership positions are expected to maintain the highest standards of dedication, integrity, and professionalism in the interest of promoting public safety. Consequently, the Chief of Police shall have the discretion to appoint qualified individuals for these positions and to demote or replace Employees performing these positions at any time for any reason, subject to the requirements of applicable law.

# 3. ASSOCIATION SECURITY

A.  All Employees, or who become Employees who are not already members of the Association shall within sixty (60) days of the effective date of this Agreement (as to present Employees), or within sixty (60) days of their date of promotion (as to future Employees), become members; or in the alternative shall, as a continuing condition of employment, pay to the Association each month a service fee in an amount equal to the regular monthly Association membership dues uniformly required of Employees of the Detroit Police Department who are members of the Union.

B.    The City upon receiving a signed statement from the Association indicating that an Employee has failed to comply with this condition shall immediately notify said Employee that his/her services shall be discontinued at the end of sixty (60) days, and shall dismiss said Employee accordingly.

C.    An Employee who shall tender or authorize the deduction of membership dues (or service fees) uniformly required as a condition of acquiring or obtaining membership in the Association shall be deemed to meet the conditions of this agreement so long as the Employee is not more than sixty (60) days in arrears in payment of such dues (or fees).

D.    The City shall be notified, in writing, by the Association of any Employee who is sixty (60) days in arrears in payment of membership dues (or fees).

E.    If any provision of this agreement is invalid under federal or state law, said provision shall be modified to comply with the requirements of said federal or state law.

F.    The City shall deduct from the pay of each Employee from whom it receives an authorization to do so the required amount for the payment of Association dues or agency shop fees. Checked off dues or fees, accompanied by a list of Employees from whom they have been deducted and the amount deducted from each, and by a list of Employees who had authorized such deductions and from whom no deduction was made and the reason therefore, shall be forwarded to the Association no later than thirty (30) days after such deductions were made. Employees who have not authorized a check off of Association dues or agency shop fees may pay such dues or fees semi-annually, in advance, directly to the Union, not later than thirty (30) days after the Employee's first work day after January 1st and June 1st of each year.

G.    The Association shall have no right or interest whatsoever in any money authorized withheld until such money is actually paid to the Union. The City or any of its officers and Employees shall not be liable for any delay in carrying out such deductions, and upon forwarding a check in payment for such deductions by mail to the Union, the City and its officers and Employees shall be released from all liability to the Employee-assignors, and to the Association under such assignments. (Chapter 13, Article 4, Section 4 of the Municipal Code of the City of Detroit.)

H.    The Association shall refund to the Employees any dues and service fees erroneously deducted by the City and paid to the Union. The City may offset any amount erroneously or improperly deducted and paid to the Association from any subsequent remittance to the Union.

I.    The Association agrees to save and hold harmless the City from damages or other financial loss which the City may be required to pay or suffer as a consequence of enforcing the above provisions.

3

# 4. BASIS OF REPRESENTATION

A.    Employees shall be represented by an Association Board Member who shall be a regularly assigned bargaining unit Employee.

B.    The Department will grant a necessary and reasonable amount of time off, during working hours, and with regular pay for lost time, to Association officers and grievance committee members, who must necessarily be present for direct participation in the grievance adjustments, special conferences, and any other necessary business with the Department. This privilege shall not interfere with vital police service.

C.    The officers of the Association may be permitted to discuss Association business with members during duty hours, provided such discussions do not interfere with such member's or officer's duties.

D.    The Association officer and the Board of Directors shall be released from duty to attend Board meetings.

E.    If the President of the Association is authorized or required to appear or perform any duties under this Agreement, he/she may appoint a designee to represent him/her.

F.    The Association President shall not be prohibited from speaking publicly through any form of communication.

G.    A copy of each special order, general order, personnel order, teletype order, or training bulletins, or their equivalents, shall be provided to the Association President.

# 5. MANAGEMENT RIGHTS AND RESPONSIBILITIES

A.    The Association recognizes the prerogatives of the City to operate and manage its affairs in all respects in accordance with the law.

B.    Both the Department and the Association acknowledge their shared responsibility for assuring the health and safety of the citizens of the City of Detroit, and agree to work together cooperatively to maintain the highest standards of professionalism and integrity in the service of the City and its citizens. The Association recognizes the prerogatives of the Department to operate and manage its affairs in all respects in accordance with their responsibilities and powers of authority and the terms and provisions of this Agreement. Except as specifically limited by the provisions of this Agreement or applicable law, the Department will have the unlimited discretion and authority:

    1.    to determine the organizational structure of the Department, including the planning, direction, control, increase, decrease, or discontinuance of operations or services, and the organization of the same;

    2.    to determine the location and types of facilities, including the establishment of new units, precincts, departments, divisions, subdivisions, or sections thereof and

the right to transfer Employees and equipment between and among the Department's various facilities;

3. to create and maintain special units and to select Employees to work within such special units;

4. to establish, regulate, determine, revise, or modify at any time the policies, practices, protocols, processes, techniques, methods, means, and procedures used in the Department, including, but not limited to machinery, materials, methods, facilities, tools, and equipment;

5. to transfer, relocate, merge, consolidate, or close its facilities and operations, in whole or in part, and to separate its Employees in connection with said transferring, relocation, merger, consolidation, or closing after discussing the effects of such decision with the Association to the extent required by law;

6. to hire, direct, classify, assign, reassign, promote, demote, evaluate, transfer, layoff and/or recall Employees, including the assignment or reassignment of Employees, on a temporary or permanent basis;

7. to determine the size of its workforce, including the number of Employees, the number of job classifications, departments, and shifts of work, whether increased or decreased;

8. to develop, establish, or modify job descriptions and job postings for positions in the Department;

9. to determine policies affecting the selection, promotion, evaluation, and training of Employees;

10. to establish and modify hours of work, including the beginning and ending time for shifts of work, whether increased or decreased, and the establishment of the hours of the shifts, whether increased or decreased;

11. to determine the content and nature of the work to be performed, and the competencies and qualifications needed to perform the work;

12. to establish and enforce policies pertaining to drug testing and substance abuse;

13. to assign an Employee to work in a restricted or light duty capacity for good cause;

14. to enforce state and local licensing, certifications, and other requirements;

15. to determine and control the budget of the Department;

16. to subcontract or civilianize any job or job function;

CHI-1916808v6

17.   with respect to any other matter related to the enforcement of the laws of the City of Detroit or the State of Michigan and the protection of its citizens and their property.

C.   The City, in addition to the rights set forth in Section B, above, shall have the right to suspend, discipline, discharge, schedule, assign, transfer, layoff, recall, or relieve Employees from duty for any legitimate reason and to maintain discipline and efficiency among Employees; to establish work rules and rules of conduct; to fix and determine the penalties for the violation of such rules, provided they do not conflict with the terms of this Agreement.

D.   Except as specifically abridged, delegated, granted, or modified by this Agreement, all of the rights, powers, and authority the City had prior to the signing of this Agreement are retained by the City and remain exclusively without limitation within the rights of the City.

E.   The City retains and reserves all rights, powers, and authority given to it under any Federal, State, or Local law, unless otherwise negotiated in this Agreement.

F.   It is understood by the parties that every incidental duty connected with operations enumerated in job descriptions is not always specifically described.

G.   In the exercise of the enumerated rights under this Article, the City agrees to comply with applicable federal, state and local laws requiring equal employment opportunities without regard to race, color, national origin, ethnicity, sex, sexual orientation, marital status, religious belief, mental or physical disability, veteran's status, or other protected characteristics under applicable law.

H.   The Department will not interfere with, restrain, or coerce Employees based upon their membership or non-membership in the Association or any other labor organization.

## 6. ASSOCIATION RESPONSIBILITIES

A.   Recognizing the crucial role of law enforcement in the preservation of the public health, safety, and welfare of a free society, the Association agrees that it will take all reasonable steps to cause the Employees covered by this Agreement, individually and collectively, to perform all police duties, rendering loyal and efficient service to the very best of their abilities.

B.   The Association, therefore, agrees that there shall be no interruption of these services for any cause whatsoever by the Employees it represents; nor shall there be any concerted failure by them to report for duty; nor shall they absent themselves from their work or abstain, in whole or in part, from the full, faithful, and proper performance of all the duties of their employment.

6

CHI-1916808v6

C.     The Association further agrees that it shall not encourage any strikes, sit-downs, stay-ins, slow-downs, stoppages of work, malingering, or any acts that interfere in any manner or to any degree with the continuity of the police services.

## 7. GRIEVANCE PROCEDURE

A.     Every Employee will have the right to present grievances in accordance with the procedure provided herein. The Association will hand deliver grievances directly to an Assistant Chief. The written grievance will set forth the name(s) of the Employee or Employees involved and the provisions of this Agreement, if any, that the grievant claims have been violated. Receipt of the grievance will be acknowledged by signature of the Assistant Chief who receives the grievance. Any grievance not filed within fifteen (15) calendar days of the occurrence of the alleged violation or within fifteen (15) calendar days of an Employee or the Association becoming aware of an alleged violation will be considered untimely and will not be processed.

B.     The informal resolution of differences or grievances is urged and encouraged to be resolved at the lowest possible level of supervision.

C.     Grievances shall be processed according to the following procedure:

### STEP 1 – Written – Assistant Chief:

The Assistant Chief will provide a written answer to the Association within seven (7) calendar days after receipt. Acceptance or rejection of the Assistant Chief's answer will be written on the grievance form by the Association.

### STEP 2 – Appeal to the Chief of Police:

If the grievance is not satisfactorily adjusted at Step 1 or acted upon by the Assistant Chief within seven (7) calendar days, it may be appealed by the Association to the Chief of Police or his/her designee within three (3) calendar days. A meeting to discuss the grievance will be held between the President or his/her designee, the grievance committee, and the Chief of Police or his/her designee within ten (10) calendar days after receipt of the grievance by the Chief of Police. A written decision will be rendered within ten (10) calendar days of the meeting. The decision of the Chief of Police shall be final and binding with no right of appeal.

D.     Medical Grievance Procedure.

All grievances involving medical issues, including but not limited to sick leave, qualifications to perform work, requests for light duty assignments, or accommodation of disabilities, will be filed with the President of the Association. The Assistant Chief will be made aware of the grievance. The parties will select a neutral physician to resolve any disputes concerning medical issues. Such a neutral physician must be licensed to practice and currently practicing medicine. The neutral physician will be jointly selected by the Department and the Association. To the extent the Department and Association cannot

agree on a neutral physician, the neutral physician will be mutually selected by the Employee's treating physician and the Police Department's designated physician. The decision of the neutral physician shall be final and binding with no right of appeal.

E.  Discharge Cases. An Employee who is discharged will have the right to appeal his/her discharge to expedited arbitration under Article 8.

F.  Notwithstanding any other provisions herein, individual Employees may present their own grievances to the Department and have them adjusted without the intervention of the Association, provided, however, that the Department has given the Association notice and an opportunity to be present at such adjustment. In no event shall any such adjustment be contrary to or inconsistent with the terms of any agreement between the Department and the Association.

## 8. DISCIPLINE PROCEDURE

A.  Investigations/Discipline.

1.  Investigations regarding any acts or omissions by Employees that may result in disciplinary action will be completed as expeditiously as practicable. If disciplinary action is warranted, such discipline will be issued as soon as practicable after completion of the investigation. Where a decision is made to discharge an Employee, that Employee will be suspended without pay pending the outcome of the disciplinary process.

2.  The Chief of Police shall have the right to promote, demote, or discipline Employees for any legitimate reason. All matters involving any promotion, demotion, or disciplinary action (other than discharge) will be determined at the sole discretion of the Chief of Police.

3.  Employees will not be discharged from employment with the Department without Cause. For purposes of this Agreement, "cause" shall mean: (i) violation of any Federal, State, or Local law; (ii) violation of any Department rule or policy (other than minor infractions that do not significantly impact Department operations); (iii) insubordination; (iv) dereliction of duty; or (v) failure to comply with any lawful order of the Chief of Police or commanding officer.

B.  Expedited Arbitration (Discharge). An Employee subject to discharge must appeal the case to expedited arbitration by providing written notice to the Department within three (3) days of the date of his/her discharge, and the arbitration hearing must be held within thirty (30) days of the date the appeal was filed by the Employee, so long as the arbitrator has availability within a thirty (30) day period.

1.  Both the Employee and the Department will have the right to be represented by counsel and to present and cross-examine witnesses.

2.  The arbitrator will issue his or her decision in writing within five (5) business days after conclusion of the hearing. The arbitrator's decision will be limited to determining whether the Employee committed the offense or infraction which precipitated the discharge. If the arbitrator determines that the Employee did not commit the offense or infraction, the arbitrator may require that the Department reinstate the Employee with backpay.

3.  Employees shall have the right to be represented by the Association at all steps during the disciplinary process.

4.  The costs of the arbitration will be shared equally by the parties.

5.  The parties may request in writing of each other cooperation to have available at the arbitration proceedings any witnesses requested by the other party.

6.  The decision of the arbitrator will be final and binding on the Employee and the Department. If the arbitrator's decision requires that the Employee be reinstated to his/her position within the Department, the Chief of Police retains the right to demote the Employee in his/her sole discretion, as set forth in Section A.2. above.

7.  The Department and the Association will confer to select a permanent arbitrator to hear cases on the expedited basis set forth herein. The arbitrator will hear cases on a chronological rotation subject to arbitrator availability. In the event that the arbitrator is unavailable to hear the case within thirty (30) days, the parties may select an alternative arbitrator by mutual agreement or pursuant to the rules of the Michigan Employment Relations Commission.

## 9. EMPLOYEES' RIGHTS

Each Employee shall be guaranteed the following rights but this section shall not be construed as a section of limitation:

A.  Any Employee who is accused of violating any criminal law, City, State or Federal shall be entitled to his/her full rights under the State and Federal Constitutions without being disciplined for exercising such rights unless specifically excepted in this Agreement.

B.  An Employee who is indicted or charged with a crime will be placed on unpaid administrative leave without pay but with medical benefits pending the outcome of the criminal proceeding. At the conclusion of the criminal proceeding, if the Department chooses not to pursue disciplinary action, the Employee will be reinstated. If the Department pursues disciplinary action for a matter arising out of the same set of facts and circumstances as those surrounding the criminal proceedings, the Employee will be subject to the disciplinary action determined at the sole discretion of the Chief of Police.

C.  After an Employee is ordered to make any written statement in response to any alleged misconduct or possible misconduct on his/her part, he/she shall have at least thirty-six (36) hours from the time of the order in which to comply.

9

If any Employee is ordered to make an oral statement, he/she shall comply subject to the receipt of *Miranda* or *Garrity* warnings or both and shall be given a reasonable time to act in accordance with such rights.

D.     An Association officer, counsel or both shall further have the right to be present during all administrative and investigatory proceedings when the investigated officer must be present.

E.     No Employee shall be disciplined, discriminated against, or transferred because he/she exercises any of his/her constitutional rights before any grand jury, investigative body, court or law enforcement agency - Federal, State, and Local as well as any investigative committee of any legislative body - Federal, State, and Local.

F.     The Investigative staff of the Board of Police Commissioners will have the right to interrogate and investigate Employees and such right will in no way abridge or change the rights of Employees under this Agreement or under any Local, State, or Federal law or the Constitution of the United States, or State of Michigan. In no event will any recommendations or actions resulting from such interrogation or investigation lead to any discipline outside or inconsistent with any discipline procedures or discipline matters maintained in this Agreement.

G.     No Employee, after he/she has been once disciplined by the Department, will be re-disciplined, for any reason whatsoever for any matters arising out of the same set of facts and circumstances surrounding the first disciplinary action.

## 10. DEPARTMENT FILES

A.     All personnel records which include home addresses, phone numbers, and pictures of Employees shall be kept confidential and never released to any person other than officials of the Department or upon the written authorization of the Employee involved.

B.     An Employee shall have the right to inspect his/her official personnel record wherever kept, twice a year or more often for good cause shown.

C.     Inspection shall be during regular business hours of the respective repository and be conducted under supervision of the Department. Said Employee shall have the right to make duplicate copies for his/her own use at his/her own expense. No records, reports, investigations, evaluations, or similar data belonging in the Personnel File or Medical File shall be hidden from an Employee's inspection.

D.     An Employee shall have the right to include in his/her personnel record and in any other file kept by the Department, a written refutation of any material he/she considers to be detrimental and to request its removal.

E.     Employees may inspect their personnel file upon retirement and nothing shall be inserted in such files after the date of retirement.

13-53846-tjt   Doc 9571-6   Filed 03/30/15   Entered 03/30/15 18:33:33   Page 14 of 33

F.    The Department need not comply with the above provisions for inspection in those areas where there is a current investigation of the Employee. The Employee must be told, however, that he/she is being investigated and apprised of the subject matter of the investigation.

## 11. LEGAL COUNSEL

The City will provide legal counsel and pay any costs and judgments that arise out of lawsuits filed against Employees of the Detroit Police Command Officers' Association alleging any act committed while said Employee was in the good faith performance of his/her duties.

The City shall promptly undertake the defense of an action on behalf of an Employee pending determination of the "good faith" question.

This provision shall otherwise be in accordance with Section 13-11-1 of the Municipal Code of the City of Detroit.

## 12. CHIEF'S DUTY OFFICER

The Chief of Police shall have the authority to designate Employees holding the rank of Captain as Chief's Duty Officers, both on a permanent basis and on a periodic basis to provide coverage during leave days and furloughs.

## 13. OUTSIDE EMPLOYMENT

A.    An Employee may engage in an outside business activity or outside employment provided it is not inconsistent or incompatible with or does not interfere with the proper discharge of the Employee's duties and responsibilities as a police officer.

B.    Approval for outside employment must be obtained from the Chief of Police, and will be for a period of one (1) year. The Employee may request it to be renewed after one (1) year. If an Employee is on Attendance Control Program (DPD 350), that Employee cannot be approved for outside employment, and prior approval can be revoked at the discretion of the Chief of Police.

C.    Approval will not be granted for an outside business activity or outside employment which would involve more than thirty (30) hours per week of work, or for work in businesses that are regulated by the Detroit Police Department (i.e., bars, adult movies or adult book stores, etc).

Employee may not be in uniform when engaged in any outside employment. Employees may not carry or use any equipment or accessories issued by the Department when engaged in any outside business activity or outside employment in private or personal security.

D.    Approval to engage in outside employment shall not be unreasonably withheld.

## 14. POLITICAL OFFICES

A.    An Employee of the bargaining unit covered by this Agreement may become a candidate for political office, partisan or non-partisan, as long as he/she restricts his/her campaign activities to off-duty time.

B.    An Employee running for political office is not required to resign or take a leave of absence from the Detroit Police Department, provided that this activity does not interfere with his/her normally assigned duties.

C.    While off-duty and not in uniform any Employee may fully participate in any political activity either partisan or non-partisan.

D.    If an Employee is elected to a political office, which requires his/her full-time work, the Employee shall take a leave of absence without pay for the term of office the Employee was elected to, or he/she shall resign.

## 15. HEALTH AND SAFETY

A.    Safety glasses and ear protectors shall be provided at all police firing ranges and Employees shall not be required to fire without same.

B.    The City will provide and maintain clean, sanitary buildings and will repair unsafe work facilities in an expeditious manner.

C.    This Section shall not be construed to impair or limit the applicability of any State or Federal law or regulation affecting health and safety in Department buildings and work facilities.

## 16. LEAVES OF ABSENCE

A.    General Leaves of Absence.

A leave of absence without pay may be granted to Employees with at least five (5) years of continuous service with the City as a sworn member of the Detroit Police Department for a period not to exceed one (1) year. The Employee shall submit the request for the leave of absence, in writing, to the Chief of Police through channels. The request shall include the reason(s) for the leave and the length of time requested. All recipients of educational leaves must present continuing proof of enrollment for the specified period of absence. The Association shall be notified when a leave of absence has been granted.

B.    Medical Leaves of Absence.

1.    To be eligible for a medical leave of absence, an Employee must have a minimum of five (5) years of continuous service with the City as a sworn member of the Detroit Police Department from the date of appointment to the effective date of

the leave of absence. No Employee shall be required to exhaust banked sick time or other accrued benefits as a condition of taking a medical leave of absence.

2.   A medical leave of absence without pay shall be granted to an Employee who is suffering from a non-service connected sickness or disability for which the Employee's physician prescribes extended treatment or rest.

3.   A written request for a medical leave of absence shall be submitted to the Chief of Police. The request shall contain the diagnosis, treatment prescribed, and length of absence required. It must be accompanied by a signed endorsement from a physician describing a complete medical diagnosis. The Chief of Police shall approve all medical leaves of absence.

4.   In no case may a medical leave of absence extend beyond six (6) months except with the permission of the Chief of Police. Before an Employee on medical leave is returned to duty, a physician designated by the Department shall make a written recommendation to the Chief of Police. Upon return to active duty an Employee shall be restored to his/her rank and shall retain all seniority rights including longevity privileges.

C.   Family and Medical Leave.   The City shall comply with the requirements of all applicable laws relating to leaves of absences including the Family and Medical Leave Act.

D.   Termination of Leaves of Absence.

Except as otherwise provided by law, at least thirty (30) days prior to the expiration date of a leave of absence, the Employee shall submit to the Chief of Police written notice of intent to return to duty. Failure to submit the above notice or failure to report at the expiration of the leave will result in the Employee being considered to be absent without leave.

E.   Conduct on Leave.

Employees on leaves of absence shall maintain the same standards of conduct that are required of sworn Police Officers. Acts of misconduct of a serious or grave nature that are committed by an Employee while on a leave of absence may subject the Employee to disciplinary action in accordance with this Agreement up to and including discharge from the Department.

# 17. ABSENT WITH LEAVE AND ABSENT WITHOUT LEAVE

A.   Absent With Leave.   Absent with leave is considered a full duty status with all related benefits. The Employee is on authorized absence to attend certain types of conventions, special training, seminars, or is on contractually granted absences authorized for certain union officials.

B.  Absent Without Leave. Personnel who fail to report for duty without prior authorization will be considered absent without leave. Any such absence for three (3) consecutive days will be deemed a resignation.

## 18. DISABLED TIME

A.  Disabled time is time not worked when an Employee has sustained an injury or illness in the performance of duty.

B.  During periods of disability, Employees remain fully accredited in that they continue to draw their regular salaries, accumulate sick leave and furlough time and all other benefits, and are subject to the rules and regulations of the Department insofar as their condition permits.

C.  The Employee shall not be returned to duty if he/she is unable to properly perform his/her assigned duties.

## 19. SERVICE WEAPON

A.  All Employees with a full service retirement will be provided with their department-issued service weapon. An Employee will have no more than thirty (30) days after separation to make such request to the Chief of Police.

B.  The Department may refuse to give an Employee his or her weapon for good cause shown. Good cause will be established where an Employee has pending criminal charges or has been convicted of a crime, is subject to departmental investigations or physiological restrictions. Employees who are involuntarily discharged will not be eligible to purchase their service weapons.

## 20. SICK TIME

A.  Sick Banks.

1.  Current sick bank is designated as that sick time accumulated at the rate of one (1) day for every calendar month in which a member has been credited for not less than eighteen (18) paid time days, excluding overtime.

2.  Current sick leave banks will be frozen at existing levels. Future accrual of current sick leave banks will be capped at three hundred (300) hours. Hours currently banked that exceed three hundred (300) will be retained, with no additional accrual unless the bank falls below three hundred (300), and any accrual thereafter shall not exceed the three hundred (300) hours cap.

3.  The award of seniority sick days is eliminated and existing seniority sick banks are frozen.

B.  Sick Time Credit. The term "sick time" shall be defined as absence due to illness or injury of the member, to exposure to a contagious disease, and to the attendance upon immediate members of the family of the member of the Department living within his/her household, including husband, wife, children, father, mother, sister, brother, and relatives living in the same household regardless of degree of relationship. The granting of sick time for attendance upon these relatives is not limited to any given number of days per fiscal year; however, no more than three (3) days will be granted in one instance. This sick time is granted to permit the member to make arrangements for care of the ill person so that he/she may return to duty. The Chief of Police may investigate any suspected abuse of sick leave, which may result in disciplinary action, consistent with this Agreement.

C.  Deductions from the Sick Bank. Sick banks, both current and seniority, are designed to provide for non-duty connected illness or disability. No deduction from either the current or the seniority sick banks shall be made for any sick time resulting from a service connected illness or disability which is certified by a physician designated by the Department.

Sick time will be charged first to the current sick bank and secondly, to the seniority sick bank, in periods of not less than half-days.

When an Employee starts his/her shift but is unable to finish the shift because of sickness, sick time will be deducted based on the actual hours worked such that an Employee will be charged for sick time only for those hours not worked and will be credited for those hours worked.

During a period of illness, only that time which would be actual working time will be deducted from the sick bank. Illness or injury during furlough time may be changed to sick time in lieu of the Employee's furlough, provided such illness or injury during the furlough will be reported forthwith to the Employee's commanding officer and to a physician designated by the Department. Such illness or injury will be verified by the physician designated by the Department. The unused portion of the Employee's furlough will be rescheduled and used immediately following recovery from the illness or injury, which made the change necessary.

D.  Reporting Illness or Disability. When any Employee becomes sick, the officer in charge must be notified without delay and informed where the Employee is confined. If an Employee is hospitalized, the officer in charge shall be notified and will cause a physician designated by the Department to be notified, during the next regular office hours, of the nature of the illness and the hospital to which the Employee was admitted.

E.  Restricted Duty. Restricted duty assignments are made by the Chief of Police under the authority granted by Title IV, Chapter 21, Section 14, paragraph (g) of the City Charter and are subject to the limitations thereof. The number, location, and duration of restricted duty assignments, as well as whether a restricted duty

assignment vacancy exists, shall be within the discretion of the Department, subject to the requirements of applicable law.

The Department may give preference for restricted duty assignments to those Employees whose injury or illness is determined to have occurred in the line of duty over Employees whose injury or illness is determined to have occurred not in the line of duty. When the Department determines that the number of restricted duty Employees exceeds the available number of restricted duty assignments, in accordance with the limitations enumerated below, Employees having or seeking a restricted duty position for a non-duty related medical condition may be required to utilize sick time benefits. An Employee who is required to utilize sick time benefits by operation of this Section but who has no accumulated sick time will be allowed to use other accumulated time to cover the absence.

When an Employee having a non-duty related injury or illness is displaced from a restricted duty position, or when no restricted duty position is currently available, the Employee shall be placed on a waiting list for assignment to an available restricted duty position. Placement on this waiting list shall be by departmental seniority and placement in restricted duty positions shall be made in seniority order provided the Employee is able to perform the duties of the particular restricted duty position.

Notwithstanding the provisions of this Article, Employees on restricted duty for a non-duty related injury or illness and who are able to perform the duties of their regularly assigned job shall not be subject to being displaced by either an Employee having a duty related injury or illness or by a more senior Employee having a non-duty related injury or illness.

The Department shall maintain a continuous listing of those Employees who are on restricted duty which shall indicate their duty assignment, seniority date, whether the status is for a duty or non-duty related reason, and other relevant data the parties may from time to time agree upon. The Department shall provide the Association with a copy of the list on any day that a change has been made.

Nothing in this Article shall affect the right of the Department under the Charter of the City of Detroit to refer Employees for duty or non-duty disability pensions.

F.  Determination of Sick or Disability Status. It is the responsibility of a physician designated by the Department to determine whether the illness or injury of an Employee is duty incurred. When an Employee sustains an original injury in the performance of duty during his/her regular duty hours, and is unable to complete his/her tour of duty, he/she shall be carried disabled. At all other times, he/she shall be carried sick until a final determination is made by a physician designated by the Department. Under no circumstances shall the status of an Employee being carried sick or disabled be changed in the time book or other Department records without the written authorization of a physician designated by the Department. A physician designated by the Department shall authorize such change by preparing an inter-office

CHI-1916808v6

memorandum. Any dispute concerning sick or disability status shall be resolved in accordance with the grievances procedures in Article 7.D. of this Agreement.

G.  Report for Duty When Ordered. Any Employee reported fit for duty by a physician designated by the Department who does not report for duty on the date indicated by the physician shall be considered absent without leave.

H.  Return to Duty. To assure proper health safeguards for Department personnel, Employees who are ordered off duty by a physician designated by the Department due to illness or injury, whether service connected or not, shall not be returned to active or limited duty assignments without being certified for such assignment by a physician designated by the Department.

I.  Illness or Injury Services. In non and/or post emergency cases, police personnel who have incurred a service connected illness or injury must obtain approval from a physician designated by the Department before securing any type of medical attention or treatment for the illness or injury, including x-rays and dental care. The Department will not be liable for costs so incurred unless prior approval is obtained.

Employees who are duty disabled or on limited duty shall report for physical examinations when directed by a physician designated by the Department. Furthermore, as a condition for continuing disabled or limited duty status and the benefits thereof, members must submit to all reasonable examinations ordered by the Department. Failure to do so will lead to immediate termination of such status and benefits.

L.  Bonus Vacation Days: Bonus vacation days are granted for unused current sick time. Members who have accumulated a minimum of fifty (50) sick days including both current and seniority days and have a minimum of six (6) years of service on July 1st of each year will be credited with one-half of the unused current sick time from the previous fiscal year up to six (6) days. A member may request to take his/her bonus vacation days in any sequence by submitting a request in writing to his/her commanding officer. Bonus vacation days which are not used prior to the end of the fiscal year will be lost.

J.  Retirement and Death Sick Leave Payment. Immediately preceding the effective date of an Employee's retirement, exclusive of duty and non-duty disability retirement, or at the time of an Employee's death, he/she or his/her estate shall be entitled to pay for his/her unused accumulated sick banks as follows:

1.  A member shall receive full pay for one hundred percent (100%) of the unused accumulated sick bank accrued prior to July 18, 2012. All sick leave accumulated after July 18, 2012 and remaining unused upon retirement or death shall not be paid. This payment shall be made pursuant to City policy, which may be amended at the City's discretion.

2.  The City reserves the right, for purposes of retirement payouts, to cap the number of hours a member may accumulate in his/her sick leave and compensatory time

banks or, to the extent allowed by law, cap the amounts of payout from such banks upon retirement.

3. If an Employee is granted a duty or non-duty disability retirement, he/she shall be entitled to a reimbursement of unused sick time according to the preceding formula, upon attaining his/her normal full duty retirement date and petitioning the Chief of Police for such reimbursement.

## 21. FUNERAL LEAVE

A. If a death occurs among the Employee's immediate family such Employee will be granted three (3) days funeral leave, not to be deducted from his/her sick bank provided that such leave may be extended to five (5) days within the discretion of the Chief of Police based on individual circumstances.

B. The immediate family is defined as wife, husband, son, daughter, step-son, step-daughter, brother, sister, father, mother, step-father, step-mother, or other relatives that are members of the Employee's household.

C. If a death occurs among the relatives of the Employee, such Employee will be granted one (1) day funeral leave not to be deducted from his/her sick bank.

D. Relatives are defined as grandson, granddaughter, grandmother, grandfather, brother-in-law, sister-in-law, uncle, aunt, mother-in-law, or father-in-law.

## 22. HOLIDAYS

A. Schedule of Holidays. Employees will be entitled to the following holidays:

| | |
|---|---|
| New Year's Day | January 1st |
| Memorial Day | Last Monday in May |
| Independence Day | July 4th |
| Labor Day | First Monday in September |
| Veterans' Day | November 11th |
| Thanksgiving Day | Fourth Thursday in November |
| Christmas Day | December 25th |

B. Holiday Premium. If an Employee works on a designated holiday, he/she shall receive his/her normal pay plus a holiday premium equal to one and one-half times (1½ X) his/her regular daily rate of pay. The regular daily rate of pay will be calculated by dividing the Employee's annual salary by fifty-two (52) to determine a weekly rate of pay, and then dividing the weekly rate of pay by five (5) to determine the daily rate of pay.

## 23. LEAVE COMING DAYS

A. Members who do not qualify for overtime pay may be authorized to carry leave days forward to succeeding work periods.

B. Leave coming days may be accrued in accordance with current practices, except that accruals of leave coming days shall be capped at one hundred and twenty (120) hours, including any leave coming days accrued as of the effective date of this Agreement.

C. A member will not be entitled to compensation in lieu of leave coming days, except that a member may elect to be paid for up to one hundred and twenty (120) hours of accrued but unused leave coming days upon retirement or other separation from employment with the City.

## 29. EXCUSED TIME DAYS

A. Members shall be granted eight (8) hours of "Excused Time" on Good Friday or the last scheduled paid day prior to Good Friday, eight (8) hours of "Excused Time" on Easter or the last scheduled paid day before Easter, and eight (8) hours of "Excused Time" on the last scheduled paid day before Christmas Day and before New Year's Day provided they are on the payroll through the holiday in question. Members shall also be granted eight (8) hours of "Excused Time" on Martin Luther King's birthday.

B. Members may request to work on an "Excused Time" day with the permission of his/her commanding officer. If that permission is granted, or if the member is required to work for unanticipated circumstances, the member will be carried working and the "Excused Time" will be banked. No holiday premiums will be paid for work on these days.

## 24. FURLOUGH

A. The annual furlough shall be divided into two (2) seasons, summer and winter. Each furlough season shall consist of thirteen (13) furlough periods, corresponding with the bi-weekly payroll periods. Each furlough period shall contain ten (10) consecutive days that begin with the first day of the payroll period. The furlough shall also include the leave days granted in connection with the furlough.

B. Leave days added to a furlough shall not be cancelled unless the accompanying furlough is cancelled.

C. Furlough drawings shall be made by special arrangement with the Deputy Chief of the involved bureau, or in the case of the Personnel Bureau, with the Director of Personnel. The date by which this process is to be completed will be published by special order. Once selected, the scheduled furlough periods for Employees will be forwarded to the Chief of Police and the Assistant Chief for their review and approval. Once approved, scheduled furloughs shall not be changed except by mutual consent or unanticipated extraordinary circumstances.

19

CHI-1916808v6

D.   An Employee shall take furloughs in daily or one (1) week increments as long as his/her command/assignment is adequately staffed and his/her absence does not compromise the daily operation of that command. Additionally, the furlough must be used within the furlough period or there must be permission from the Chief of Police to carry over a furlough to the next furlough period. All furlough must be exhausted before separation from the Department.

## 25. JURY DUTY

A.   All Employees who serve on jury duty on regularly scheduled work days exclusive of leave days, furlough days, and holidays will be paid the difference between their pay for jury duty and their regular straight time pay for all days they are required to serve on jury duty.

B.   In the event that an Employee reports for jury duty but does not actually serve on a jury, the Employee will be paid the difference between the jury pay received and his/her regular day's pay and be excused for the day.

C.   In order to receive payment for jury duty supplementation, an Employee must have been regularly scheduled to work, must give reasonably prompt prior notice to his/her commanding officer that he/she has been summoned for jury duty, and must furnish satisfactory evidence that he/she reported for or performed jury duty on the days for which he/she claims such payment, provided that the commanding officer shall have discretion in seeking to have the Employee excused when his/her services are essential.

D.   Employees shall have the option when called to jury duty to use vacation, bonus vacation, or compensatory time for such service. In that event, the Employee will not be required to turn in his/her jury pay. However, the Employee must notify the Department of his/her desire to exercise this option prior to the first date of jury service.

E.   For payroll purposes, jury duty shall be considered as time worked.

F.   An Employee on jury duty will be continued on the payroll and be paid at his/her straight time hourly rate of his/her normally scheduled hours of work. Upon return from jury duty, the Employee shall present evidence of the amount received from such jury duty and return that amount to the City, less any mileage allowance paid for the jury service.

If an Employee fails to turn in his/her jury duty payment, the City will hold subsequent payments due to the Employee until the City is reimbursed for all time lost due to the alleged jury duty service.

G.   Where Employees once impaneled are excused for days or parts of days, reimbursement shall be made only for time served. Employees should otherwise be expected to report for work.

CHI-1916808v6

## 26. UNIFORMS

A.  Initial Uniform Allowance. At time of hire and/or promotion, Employees shall receive an initial uniform allowance of eight hundred and fifty dollars ($850) or, in the alternative, the Department may institute a uniform voucher system and issue Employees uniform vouchers in lieu of a cash payment. In the event that the Department changes its specifications regarding uniforms and/or equipment, Employees shall receive an initial uniform allowance as provided above. The initial uniform allowance that Employees receive at the time of hire, at the time of promotion, and/or in the event of a change in Department specifications shall be provided in lieu of the annual uniform allowance as set forth in Section B. In no event shall any Employee receive both an initial uniform allowance and an annual uniform allowance in the same year.

B.  Annual Uniform Allowance. The Department will no longer issue replacement uniforms and accessories. Except as provided in Section A, members will instead receive a uniform allowance of eight hundred and fifty dollars ($850) annually for the procurement and maintenance of all of the member's required uniforms and accessories. Alternatively, the Department may institute a uniform voucher system and issue Employees uniform vouchers in lieu of cash payments. The member shall be responsible for procuring uniforms and equipment according to Department specifications. This allowance shall not include maintenance and procurement of bulletproof vests or other specialty equipment, which the Department shall continue to procure and issue directly to members.

C.  Annual Cleaning Allowance. Employees shall receive an annual uniform cleaning allowance of two hundred and fifty dollars ($250) per year payable the first payroll period each fiscal year. Alternatively, the Department may institute a uniform cleaning voucher system and issue Employees uniform cleaning vouchers in lieu of cash payments.

D.  The annual uniform allowance shall be payable on July 1st to Employees who were hired or promoted into the DPCOA bargaining unit on or before April 1st of that year. Employees who were hired or promoted into the DPCOA bargaining unit after April 1st of that year will not receive an annual uniform allowance until the subsequent July 1st.

E.  For purposes of calculating eligibility for payment of these allowances, all members shall receive payment of these allowances with the following exceptions:

   1.  A member shall be considered off the payroll and ineligible for this allowance if he/she has retired, resigned or has been discharged with an effective date before July 1st of the fiscal year payment is to be made.

   2.  Members discharged and suspended without pay who have a pending appeal of the discharge shall not receive payment of the uniform cleaning allowance unless and until the discharge is overturned at an appellate level, at which time they shall be made whole.

21

CHI-1916808v6

3.  Members on extended AWOL or ANP status on July 1st of the fiscal year payment is to be made will not receive the uniform cleaning allowance unless they return to active regular duty during the fiscal year at which time they will receive full payment.

4.  Members on an unpaid leave of absence on July 1st of the fiscal year will not be entitled to payment for the uniform cleaning allowance until the next fiscal year.

## 27. MISCELLANEOUS

A.  The Department will furnish for the use of the Association, space for a bulletin board at Police Headquarters.

B.  Nothing in this Agreement shall abridge the rights and preferences of veterans, and members and retirees of the armed forces reserves, as provided by Federal, State and Local laws and rules and regulations.

C.  An Employee shall not be required to use his/her privately owned vehicle for any police purpose.

D.  If during the term of this Agreement, a federal mandatory social security act is enacted affecting members of the bargaining unit, the parties shall promptly enter into negotiations toward the implementation of said act.

E.  Offices and desks shall not be opened for inspection except in the presence of the officer or a representative designated by him/her for that purpose. In the event the officer or his/her designee refuses to be present, the Department will have the right to inspect the locker or the desk after notification to the commanding officer of the refusal.

F.  Lump Sum for Banked Time. Whenever an Employee leaves employment with the Department, such Employee will be paid for all banked time, other than sick time, at the prevailing rate of pay in effect at the time of separation.

G.  Use of Department Vehicles. Employees are prohibited from using their Department vehicles to travel more than forty (40) miles beyond the limits of the City of Detroit, provided, however, that if the Employee lives more than forty (40) miles beyond the limits of the City of Detroit, the Employee may nevertheless use the Department vehicle to travel to and from his/her residence.

## 28. MEDICAL, DENTAL, AND OPTICAL HEALTH CARE

A.  During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("Medical Plans") offered by the City. Unless the parties mutually agree otherwise, the City's 2014 medical plan designs ("Medical Plan Designs") will remain in place during the term of this Agreement. For purposes of this Section, the term Medical Plan Design will collectively refer to

deductibles, co-payments, covered services, networks, and third party administrators or insurers.

1. Notwithstanding this Section A, the City will promptly analyze providing ScriptGuideRx, Inc. as a pharmacy benefits manager ("PBM") for the self-insured PPO option provided to police and firefighter active employees who enroll for health insurance. The City agrees to include ScriptGuide as a PBM for its self-insured option for active police and firefighter enrollees if: (i) the City concludes - in its sole discretion - that ScriptGuide can be provided on a cost neutral or lower cost basis for the City during its first contract year of use and the contract term, and (ii) following an analysis by the City respecting ScriptGuide's applicable managed formulary, generic utilization, network, and co-payment structure, and sharing of that analysis and discussion with the Unions, the Unions approve the City's use of ScriptGuide as the PBM for its self-insured option for active police and firefighter enrollees, even if the co-pay structure for generic, brand or specialty prescription drugs necessary for cost neutrality requires higher active employee co-pays for certain forms of prescription drugs. The City shall determine whether ScriptGuide will be cost neutral or lower prescription drug costs based on the cost for the entire active population.

B. Employees will be required to make monthly contributions for their benefits based upon the plan and coverage tier selected by the Employee. Monthly contributions will be deducted from Employee payroll disbursements on a pre-tax basis (if authorized by the Employee), in accordance with applicable law.

1. For calendar year 2014, Employees' monthly contributions under the City's Medical Plans will remain at the levels in place as of the effective date of this Agreement.

2. For subsequent calendar years during the term of this Agreement, Employees' monthly contributions under the City's Medical Plans will be adjusted annually to the level necessary to maintain an 80/20 proportional share of the cost of the medical coverage, subject to the terms and conditions and limitations set forth in this Article. Under this cost sharing arrangement, the City will pay eighty percent (80%) of the costs of each coverage tier in the City's Medical Plans, and Employees participating in each coverage tier will pay twenty percent (20%) of the costs for such coverage tier. Premiums will be calculated as follows:

a. For the Health Alliance Plan ("HAP") health maintenance organization ("HMO") plan, a participating Employee will pay 20% of the premium charged by HAP for his/her coverage tier. Such premiums will be established by HAP, subject to confirmation by an independent enrolled actuary retained by the City ("Enrolled Actuary").

b. For the Blue Cross/Blue Shield ("BCBS") preferred provider organization ("PPO") plan, monthly contributions will be set such that Employees in each coverage tier collectively pay twenty (20%) of the costs for that

coverage tier. Such monthly contributions will be calculated by the Enrolled Actuary. Monthly contributions will be calculated in accordance with generally accepted actuarial principles, and will take into account claims experience from the prior fiscal year, inflation, actual and anticipated administrative costs, actual and anticipated fees and surcharges (including those associated with compliance with the Patient Protection and Affordable Care Act ("ACA")), and any other relevant costs or factors as determined by the Enrolled Actuary.

C. C.O.P.S. Health Trust: For calendar year 2015 and for subsequent calendar years during the term of this Agreement, Employees may elect to participate in medical benefit plans offered by C.O.P.S. Health Trust ("COPS Trust") in lieu of the City's Medical Plans subject to the following conditions:

1. An Employee who participates in COPS Trust may not concurrently participate in any City Medical Plan.

2. For each Employee who elects to be covered by COPS Trust, the City will make a monthly contribution to COPS Trust that is equal to the lesser of (a) the City's *pro rata* contribution under the HAP Plan in the corresponding coverage tier (*e.g.* single, two person, family) or (b) the City's *pro rata* contribution under the BCBS Plan for the corresponding coverage tier. Under no circumstances will the City's monthly contribution to COPS Trust exceed the City's monthly contribution for coverage under the lowest cost City plan for the applicable coverage tier.

3. The City will have no obligations in connection with COPS Trust other than to make the payments described in this Section C. Specifically, the City will not have any administrative involvement whatsoever in connection with Employee participation in COPS Trust, and any Employee participating in COPS Trust will be responsible for paying any additional monthly premium payments beyond the City's monthly contribution pursuant to Section C.2 of this Article directly to COPS Trust. Under no circumstances will the City be deemed to be an administrator or fiduciary with respect to any medical plans provided by COPS Trust.

4. The Union agrees to indemnify the City, and hold the City harmless, against any and all claims asserted by Employees or third parties against the City or any of its elected or appointed officials, employees, agents, attorneys, or consultants that are in any way related to or connected with Employee participation in COPS Trust, any medical plans offered by COPS Trust, including but not limited to any claims for benefits provided to, or denied, City employees by COPS Trust, as well as any and all claims that are in any way related to any acts or omissions by COPS Trust, or its officers, directors, trustees, employees, or agents.

D. Except as provided in this Article, the extent of coverage under the City's Medical Plans will be governed by the terms and conditions set forth in the applicable Medical Plans offered by the City during the term of this Agreement. Plan documents may be modified

or amended by the City from time to time in accordance with the terms of the applicable plan documents, provided that such amendments do not violate the terms of this Article. Any questions or disputes concerning any City Medical Plans will be resolved in accordance with the terms and conditions set forth in the applicable insurance policies or plan documents and will not be subject to the Grievance Procedure set forth in Article 7 of this Agreement.

E.   The failure of any insurance carrier(s), PBM, or plan administrator(s) to provide any benefit for which it has contracted or is obligated will not result in any liability to the City, nor will such failure be considered a breach by the City of any obligation undertaken under this or any other Agreement. However, nothing in this Agreement will be construed to relieve any insurance carrier(s) or plan administrator(s) from any liability it may have to bargaining unit Employees or beneficiaries of bargaining unit Employees.

F.   Except as set forth in this Article, during the term of this Agreement, the City Medical Plans will provide benefits with an actuarial value as determined by the Enrolled Actuary that are at the "Gold" level (i.e., approximate actuarial value of 80%), as defined by the ACA. In the event that the actuarial value of a City Medical Plan's benefits falls below the "Gold" level as determined by the Enrolled Actuary during the term of the Agreement, the City will meet and confer with the Union to discuss potential modifications to the Medical Plan during the subsequent plan year to raise the actuarial value of the benefits to the "Gold" level.

G.   Notwithstanding any provision in this Article that could be construed to the contrary, this Article will not be construed to require the City to fall out of compliance with the requirements of Public Act 152 of 2011 ("PA 152"). MCL § 15.561 *et. seq.* The City's Enrolled Actuary will be responsible for periodically monitoring compliance with the requirements of PA 152. In any event where the Enrolled Actuary determines that the City is reasonably likely to fall out of compliance with PA 152, the City will meet and confer with the Union for a period not longer than thirty (30) days in order to discuss potential modifications to the terms of the Medical Plans or to the allocation of premium payments by the City and the Employees. To the extent the City and the Union are unable to reach an agreement within thirty (30) days, the City may make any necessary modifications to ensure compliance with PA 152.

# 29. DEATH BENEFITS AND LIFE INSURANCE

A.   Death Benefits. Death benefits for all regular City Employees are authorized by the City Charter, Title IX, Chapter VIII. The City Code, Chapter 13, Article 8, Section 13-8 2 currently provides a death benefit of ten thousand dollars ($10,000).

1.   Membership shall be mandatory for regular Employees.

2.   Contributions:

By the City - $13.30 per year per Employee.

CHI-1916808v6

By the Employee - $.20 per week or $10.40 per year.

B.   Payment for Employees killed or permanently disabled in line of duty.

1.   A lump sum duty death benefit of ten thousand dollars ($10,000) will be paid to the beneficiaries or estate of Employees who are killed or who die as a direct result of injuries sustained in the actual performance of their duties as determined by City policy which may be amended in the discretion of the City.

2.   Employees who receive a permanent disability payment under this Article shall be ineligible for the ten thousand dollars ($10,000) death benefit described above.

C.   Employees Killed in the Line of Duty. In the event an Employee is killed in the line of duty during the term of this Agreement, the City shall make a one-time payment of forty thousand dollars ($40,000) (in addition to any other applicable payments set forth in this Section) to the Employee's designated beneficiary of record.

## 30. PENSION AND RETIREMENT BENEFITS

During the term of this Agreement Employees will be entitled to retirement benefits in accordance with the terms of the Memorandum of Understanding Regarding the Police and Fire Retirement System of the City of Detroit, Michigan. The terms of the Memorandum of Understanding may be modified to conform with any plan of adjustment approved by the United States Bankruptcy Court.

## 31. WAGES

A.   Wages - June 18, 2014 through June 30, 2019 - Base Salary.

o   5% wage increase effective July 1, 2014.

o   2% lump sum bonus effective January 1, 2015.

o   1% lump sum bonus effective July 1, 2015.

o   2.5% wage increase effective July 1, 2016.

o   2.5% wage increase effective July 1, 2017.

o   2.5% wage increase effective July 1, 2018.

## 32. SAVINGS CLAUSE

If any article or section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any article or section should be restrained by such tribunal, the remainder of this Agreement shall not be affected

CHI-1916808v6

thereby, and the parties shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement for such article or section.

## 33. EXTENT OF AGREEMENT

The parties acknowledge that, during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matters not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement.

## 34. EFFECTIVE DATES/DURATION

This Agreement shall be effective and binding on the Union and the City upon the approval of the Emergency Manager and the Treasurer of the State of Michigan, and shall continue in full force and effect through June 30, 2019 (the "Term"). This Agreement, including the Term, shall be incorporated into and become a part of both the plan of adjustment and order confirming the plan of adjustment, and the Agreement shall be subject to the post-confirmation ongoing jurisdiction of the Bankruptcy Court for the full Term, including without limitation, whatever jurisdiction the Bankruptcy Court's retains to enforce the Term. This Agreement, including specifically, the Term, shall be duly authorized and approved by and consented to by the State Treasurer and the Emergency Manager, with these consents reflected by duly authorized signatures.

If either party desires to modify this Agreement, it may give written notice to the other party during the month of March 2019.

In the event that the Department and the Association fail to arrive at an agreement on wages, fringe benefits, other monetary matters, and non-economic items by June 30, 2019, this Agreement will remain in effect on a day-to-day basis. Either party may terminate this Agreement by giving the other party a ten (10) day written notice on or after June 30, 2019.

IN WITNESS WHEREOF, the parties hereto have affixed their signatures below:

Dated this 18 day of June, 2014.

DETROIT POLICE COMMAND OFFICERS
ASSOCIATION

Aric Tosqui, President

Charles Fitzgerald, Vice President

CITY OF DETROIT

Kevyn Orr, Emergency Manager
City of Detroit

James E. Craig
Chief, Detroit Police Department

Michael A. Hall, Director of Labor Relations
City of Detroit

Office of the Treasurer of the State of Michigan

CHI-1916808v6

# EXHIBIT 1

## DETROIT POLICE COMMAND OFFICERS ASSOCIATION
## OFFICIAL SALARY SCHEDULE

| CLASSIFICATION | June 18, 2014 – June 30, 2014 | 5% Effective July 1, 2014 | 0% Effective July 1, 2015 | 2.5% Effective July 1, 2016 | 2.5% Effective July 1, 2017 | 2.5% Effective July 1, 2018 |
|---|---|---|---|---|---|---|
| Captain | $90,000 | $94,500 | $94,500 | $96,963 | $99,284 | $101,766 |
| Commander | $99,000 | $103,950 | $103,950 | $106,549 | $109,212 | $111,943 |

CHI-191680/8x6