City of Detroit
vs.
Hunter L. Todd — Plaintiff
Honorable: Judge Tucker
Case # 13-53846
Legal Brief
4/8/15 Hearing
Total of 5 pages

§ 1[b] Introduction—Related annotations
Related Annotations are located under the Research References heading of this Annotation.
§ 2[a] Summary and comment—Generally
[Cumulative Supplement]

The answer to the question whether a debtor can exempt from the bankruptcy estate funds in individual retirement accounts involves, in addition to state exemption laws, the interaction of three laws passed by Congress during the 1970's: (1) the Bankruptcy Code (11 U.S.C.A. §§ 1 et seq.), (2) the statutes establishing individual retirement accounts (26 U.S.C.A. §§ 219, 408) and (3) the Retirement Income Security Act of 1974 (29 U.S.C.A. §§ 1001 et seq.)("ERISA"). Under the Bankruptcy Act of 1898 debtors were entitled to exempt from the bankruptcy estate property that was exempt from execution under the laws of the states in which they resided.[2] In 1978 Congress enacted the Bankruptcy Code (11 U.S.C.A. §§ 1 et seq.) in place of the Bankruptcy Act and under § 522 of the Bankruptcy Code the debtor is given the choice of the exemptions set forth in paragraph (d) of § 522 unless the state law that is applicable to the debtor forbids the debtor to use such exemptions (i.e. the state has "opted out" of the federal exemptions) or the exemptions under the law of the state in which the debtor resides.[3] Under § 522(d)(10)(E) of the Bankruptcy Code a debtor's right to receive a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, on account of illness, disability, death, age or length of service, is exempt to the extent reasonably necessary for the support of the debtor or any dependent of the debtor unless (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose, (ii) such payment is on account of age or length of service, and (iii) such plan or contract does not does not qualify under § 401(a), § 403(a), § 403(b) or § 408 of the Internal Revenue Code ("IRC")(26 U.S.C.A. § 401(a), 403(a), (b), or 408).

In 1974 Congress provided for individual retirement accounts pursuant to which individuals could contribute up to $2,000 per year, deduct the contribution, and taxation on the interest earned by the account would be deferred until it was distributed to the owner of the account (26 U.S.C.A. §§ 219, 408). Over the years the ability to deduct the contribution has been restricted in the case of employees who are active participants in qualified pension, profit-sharing or stock bonus plans, a qualified annuity plan, a simplified employee pension plan, a government pension plan, certain pension funds funded solely by employee contributions and a plan established by a self-employed taxpayer (such as a Keogh plan) but the use of individual retirement accounts has ballooned partly as a result of the ability of employees whose employment terminates to roll-over amounts in 401(k) plans or lump-sum distributions from pension plans into IRAs without incurring tax on the rollover. As a result of annual contributions to IRAs and such rollovers, many individuals, as evidenced by the cases in this annotation, have well in excess of $100,000 in IRAs and the amounts in IRAs may be the principal, if not the only, financial assets owned by a debtor in bankruptcy.

In 1974 Congress adopted ERISA which provides a comprehensive regulatory framework for employee benefits of private employers in interstate commerce. Although the regulation of pension plans is at the heart of ERISA, the act applies to any employee benefit plan established or maintained by an employer or employee organization engaged in commerce except governmental or church plans, plans maintained solely for the purpose of complying with applicable workers compensation and unemployment compensation laws, or excess benefit

FILED 2015 APR -8 PM 12:18 U.S. BANKRUPTCY COURT E.D. MICHIGAN DETROIT

plans; the term "employee benefit plan" is defined as an "employee benefit pension plan" or an "employee welfare benefit plan" or a plan which is both an employee benefit pension plan and an employee welfare benefit plan. However, the distinction between "employee pension benefit plan" or "pension plan" and "employee welfare benefit plans" is central to ERISA since portions of ERISA such as those dealing with participation and vesting (including the requirement that pension benefit plans include anti-alienation provisions) apply only to pension plans (29 U.S.C.A. § 1002(1), 1003).

A cursory reading of the exemption for retirement benefits contained in § 522(d)(10)(E) of the Bankruptcy Code indicates that it is does not specifically address the exemption of IRAs. Not surprisingly, there has been considerable litigation concerning the application of § 522(d)(10)(E) and state exemption statutes modeled upon it to IRAs. However, there are a number of issues which must be resolved before the statutory exemptions for retirement benefits are considered. First, are funds in IRAs excluded from the bankruptcy estate by virtue of § 541(c)(2) of the Bankruptcy Code which provides that a restriction on the transfer of the beneficial interest of the debtor in a trust which is enforceable under applicable nonbankruptcy law is enforceable in bankruptcy with the result that the beneficial interest of the debtor in the trust is excluded from the estate and retained by the debtor free of any claim of creditors? A much litigated issue prior to the decision of the Supreme Court in Patterson v Shumate (1992) 504 US 753, 119 L Ed 2d 519, 112 S Ct 2242, 92 CDOS 4996, 92 Daily Journal DAR 7949, 22 BCD 89, 26 CBC2d 1119, 15 EBC 1481, CCH Bankr L Rptr ¶74621A, 6 FLW Fed S 416, motion gr, reh den (US) 120 L Ed 2d 940, 113 S Ct 13, was whether the term "applicable nonbankruptcy law" in § 541(c)(2) was restricted to state law (primarily, spendthrift trust law) or whether it includes federal law such as ERISA. The Supreme Court granted certiorari in the Patterson case because of a split in the Circuit Courts of Appeal on the issue and held that (1) the term includes federal law, (2) the anti-alienation provisions which ERISA requires to be in the pension plan at issue satisfied the literal requirements of § 541(c)(2) and (3) results in the exclusion of the debtor's interest in the plan from the bankruptcy estate. With regards to whether individual retirement accounts are excluded from the bankruptcy estate by § 541(c)(2), the courts have held with few exceptions that individual retirement accounts which are not part of simplified employee pension plans[4] are not excluded from the bankruptcy estate (§ 3[a], infra) since IRAs created and funded by individuals for their own benefit are not "employee benefit plans" subject to ERISA (29 U.S.C.A. § 1002). Though there is limited authority to the contrary ( § 3[c], infra), most courts have held that individual retirement accounts which are part of simplified employee pension plans are also not excluded from the bankruptcy estate (§ 3[b], infra) because though simplified employee pensions plans are subject to ERISA as they are "employee benefit plans" the provisions of ERISA requiring pension plans to contain anti-assignment and anti-alienation clauses do not apply to simplified employee pension plans (29 U.S.C.A. § 1051(6)).

An issue somewhat related to the exclusion of assets from the bankruptcy estate under § 541(c)(2) is whether IRAs are exempted from the bankruptcy estate by virtue of § 522(b)(2)(A) of the Bankruptcy Code which provides that a debtor who elects (or is required to use by his state's "opting out" of the federal exemptions set forth in § 522(d)) the exemptions under the law of the state in which he resides is also entitled to exemptions available under federal law other than § 522(d) of the Bankruptcy Code which contains the federal bankruptcy exemptions. The courts have divided on the issue of whether the term "federal law" in § 522(b)(2)(A) includes ERISA with most courts taking the view that it does not on the grounds that an illustrative list of "federal law" contained in the House Committee Report does not include ERISA (§ 4[a], infra)

while other courts have held that the term includes ERISA (§ 4[b], infra). It is worth noting, however, that many of the courts which have taken the view that ERISA is not included within "federal law" are the same courts which took the view repudiated by the Supreme Court in Patterson v Shumate (1992) 504 US 753, 119 L Ed 2d 519, 112 S Ct 2242, 92 CDOS 4996, 92 Daily Journal DAR 7949, 22 BCD 89, 26 CBC2d 1119, 15 EBC 1481, CCH Bankr L Rptr ¶74621A, 6 FLW Fed S 416, motion gr, reh den (US) 120 L Ed 2d 940, 113 S Ct 13, that the term "applicable nonbankruptcy law" in § 541(c)(2) does not include federal law. Although there are few decisions on the matter, the courts which have addressed the issue of whether, assuming that it is included within the term "federal law" for purposes of § 522(b)(2)(A), ERISA has the effect of exempting IRAs from the estate of the debtor have held that it does not (§ 4[c], infra). The courts have reached differing results with respect to whether IRAs are covered by the exemption provided by § 522(d)(10)(E), the retirement benefits exemption contained in the federal bankruptcy exemptions, with some courts holding that IRAs are covered by the provision (§ 5[a], infra), some holding that IRAs are exempt only if the beneficiary has the right at the time of the filing of the bankruptcy petition to withdraw funds without paying a tax penalty (§ 5[b], infra, and some holding that IRAs are not exempt if the debtor has the right to withdraw funds from the IRA at any time subject only to a withdrawal penalty (§ 5[c], infra). The courts which have held that IRAs are covered by the exemption have found that IRAs are similar to stock bonus, pension, profit-sharing and annuity plans, the types of plans expressly exempted in § 522(d)(10)(E), because, like the types of plans expressly exempted, IRAs enjoy favorable tax treatment and are intended to provide funds for use in retirement and have rejected the view taken by the Third Circuit Court of Appeals in In re Clark (1983, CA3 NJ) 711 F2d 21, 10 BCD 968, 8 CBC2d 1133, 4 EBC 1701, CCH Bankr L Rptr ¶69260, § 5[b], infra, that a debtor who is not entitled to receive benefits under a retirement plan pension at the time the petition for bankruptcy is filed can not exempt his interest in the plan from the bankruptcy estate. Some of the courts which have held that IRAs are not covered by § 522(d)(10)(E) have followed the lead of the Third Circuit (§ 5[b], infra) while others have held that IRAs are not "similar" to the types of plans expressly exempted in the provision and that payments under an IRA are not "on account of illness, death, disability, age or length of service " as required by the provision because funds in IRAs generally can be withdrawn at any time by the depositor if the depositor is willing to pay the withdrawal penalty of 10% assessed upon withdrawals prior to the age of 59 1/2 (§ 5[c], infra). The Supreme Court's statement in the Patterson case that pension plans that qualify for preferential tax treatment under 26 U.S.C.A. § 408could be exempt under § 522(d)(10)(E) was apparently a reference to simplified pension plans which are authorized under § 408(k) rather than to IRAs created and funded by individuals since the latter clearly would not seem not to be "pension plans." In determining whether amounts in an IRA are reasonably necessary for the support of the debtor and dependents of the debtor as required by § 522(d)(10)(E), the courts are more likely to determine that funds are necessary in the case of older debtors and debtors with low earnings capacities (§ 6[a], infra) and less likely in cases where the debtors are young or have substantial earning capacities (§ 6[b], infra). Under bankruptcy procedure, the trustee has the burden of proving that an exemption is not available to a debtor.[5]

Before interpreting the various state statutes exempting IRAs, it is necessary to consider whether such statutes are preempted by ERISA in view of the many cases which have that held state statutes relating to employee benefits are pre-empted by § 514 of ERISA (29 U.S.C.A. § 1144) which provides that any state law that relates to an employee benefit plan as defined in ERISA is

superseded. The courts in cases where individual retirement accounts were not part of simplified employee pension plans have held that state statutory provisions exempting IRAs are not pre-empted by ERISA (§ 7[a]), infra) while there is authority holding that a state statutory provision exempting an IRA which is part of a simplified employee pension plan is preempted by ERISA (§ 7[b], infra).

Another issue which has arisen from time to time is whether state exemption statues covering IRAs violate the Contracts clause of the federal Constitution which forbids states to enact laws impairing the obligation of contracts. The majority of cases and the only Circuit Court of Appeal has held that the statute in question did not violate the clause (§ 8, infra). A small number of states have enacted a separate set of exemptions for their residents which come into play only in the case of bankruptcy. The validity of this practice has been considered in a few cases involving IRAs with most cases validating the practice (§ 9, infra).

Slightly more than half of the states expressly exempt amounts in IRAs subject only to the requirement in most cases that contributions must be deductible for federal income tax purposes or limiting the amounts of contributions in the year or years immediately preceding bankruptcy (§ 10, infra) and another approximately ten states expressly exempt amounts in IRAs subject to additional limitations (§ 11, infra). The remaining states (except for the few which have no exemption for retirement benefits, § 15, infra) have exemption statutes which are modeled upon § 522(d)(E)(10) of the Bankruptcy Code and which do not, therefore, expressly address the exemption of IRAs.[6] As was true of cases under § 522(d)(10)(E) itself, the courts involving state exemption provisions modeled upon § 522(d)(10)(E) have divided concerning the exemption of IRAs with some holding that IRAs are exempt (§ 12[a], infra), some taking the view that IRAs are exempt only if the debtor can withdraw funds from the account at the time of the filing of the bankruptcy petition without penalty (§ 12[b], infra) and others taking the view that IRAs are not generally exempt (§ 12[c], infra). Courts which have found IRAs to be covered by the exemption have found them to be "similar" to the specified types of plans because of their tax advantages and their intent to provide assets for retirement while courts which have found them not covered by the statutes have held that (1) the exemption applies only to arrangements making periodic payments like a pension or an annuity, (2) the payments of benefits under an IRA is not "on account of illness, death, disability, age or length of service" since funds can be taken out of them at any time upon payment of the withdrawal penalty or (3) an IRA is not "similar" to a stock bonus, pension, profit-sharing or annuity plan because there is no employment relationship involved. As was true in cases decided under § 522(d)(10)(E), cases decided under state exemption provisions requiring that funds in an IRA be reasonably necessary for the support of the debtor and any dependent of the debtor have found the funds to be reasonably necessary for support more often when the debtor is older or has limited earnings prospects (§ 13[a], infra) than when the debtor is younger or has good earnings prospects (§ 13[b], infra). Some decision have allowed debtors to retain hundred of thousands of dollars in IRAs.[7]

The courts have generally held that rollovers of funds from other tax-qualified retirement plans such as pension plans, profit-sharing plans and § 401(k) plans into IRAs are exempt from the bankruptcy estate under either the relatively few statutes expressly exempting such rollovers (§ 14[a], infra) or under the more common statutes which expressly exempt (partially or fully) IRAs without expressly exempting rollovers (§ 14[b], infra) provided that the plan from which the funds are rolled-over over was tax-qualified and the rollover is tax-free. Under statutes which do not expressly exempt IRAs [§ 14[c], infra), there are cases holding that the fact that the funds in the IRA in question have been rolled over from other plans did not prevent the IRA from being

exempted from the estate while in other cases the fact that the funds rolled over came from tax-qualified retirement plans has been held to result in the funds in the IRA being exempt even though the IRA would not otherwise be exempt. There do not appear to be any cases holding that the fact that the funds were rolled over into the IRA jeopardized or limited an IRA's exempt status except for cases where the exemption of the IRA is conditioned on its tax qualification and funds are rolled into it from a non-qualified plan and a case in which a decision affirming the constitutionality under state law of an exemption statute which did not limit the amount which could be exempted was limited to non-rollover contributions because the Minnesota Constitution which authorizes the legislature to enact exemption laws exempting "reasonable" amounts of property and non-rollover contributions, unlike rollover contributions, are limited in amount by federal income tax law.[8] It has also been held that a rollover of funds from an individual retirement annuity from the spouse of the debtor to an individual retirement annuity of the debtor other than in connection with divorce or death was not exempt under the applicable exemption statute because such a rollover is not tax-free under the Internal Revenue Code (§ 14[d], infra).

133 A.L.R. Fed. 1 (Originally published in 1996)

*Signed Hunter F Todd*