UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

         Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**DPLSA's RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS**

The Detroit Police Lieutenants and Sergeants Association ("DPLSA"), by its counsel, Erman, Teicher, Zucker & Freedman, P.C., states the following in opposition to the City of Detroit's Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions (the "Motion"):

The City's Motion must be denied in its entirety. When this Court confirmed the City's consensual plan of adjustment and gave the City its "fresh start," it turned the City's governance and democratic processes, including the state law rights and remedies granted its public safety employees, back to the City. See Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing [Docket No. 8993, pp. 218-219]. The Confirmation Order explicitly provides that, "[c]ontracts, leases and other agreements entered

1

into after the Petition Date by the City, including . . . the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts . . . will survive and remain unaffected by this Order." See Confirmation Order [Docket No. 8272, pp. 105-06]. The DPLSA collective bargaining agreement (the "DPLSA CBA") is among the collective bargaining agreements identified on Plan Exhibit II.D.5 [Docket No. 8045-10, p.30]. The Plan further requires that "the enforcement, interpretation and resolution of disputes of the terms of the contracts <u>shall</u> proceed under applicable state law." See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77] (emphasis added).

As the Plan and applicable Michigan law require, the State Actions[1] were filed under Michigan's Public Employment Relations Act, MCL 423.201, *et seq* (PERA). Specifically, the DPLSA filed its unfair labor practice charge with the Michigan Employee Relations Commission pursuant to MCL 423.210(1)(a) and its preliminary injunction action with the Wayne County Circuit Court as required by MCL 423.216(h). The State Actions seek to enforce its active members' post-confirmation contract rights to family medical coverage. Contrary to the position advanced by the City's Motion, the rights asserted by the State Actions are not City Retiree rights, nor do they seek "more favorable treatment" for City Retirees. Rather, the State Actions seek to have twelve DPLSA active members' right to family (spousal) medical coverage under the DPLSA CBA determined and enforced under applicable state law. The City's effort to import a non-contractual document of uncertain date into the terms of the DPLSA CBA does not change the nature of the claims asserted by the State Actions or the jurisdiction for their appropriate resolution.

---

[1] Unless otherwise indicated, capitalized terms are used as defined in the City's Motion and accompanying brief.

2

13-53846-tjt    Doc 9656    Filed 04/13/15    Entered 04/13/15 14:41:39    Page 2 of 17

The City, by virtue of the consent it chose to give in the Plan, limited this Court's jurisdiction to resolve the State Actions. See 11 U.S.C. §§ 106(a), 944(a) and 945. The City's effort to re-characterize the claims made by the State Actions as retiree claims cannot enlarge the Plan's mandate regarding that jurisdiction. Consistent with the Plan, the Confirmation Order, and the "terms as written" of the DPLSA CBA, the DPLSA filed the State Actions under applicable state law in the forms mandated by that law.

Nothing in the Plan, the treatment of Class 12 claims, the "terms as written" of the DPLSA CBA or the Confirmation Order contradict the DPLSA's right to proceed with the State Actions under applicable state law in the appropriate state forum. As set forth more fully in the attached brief in support of this response, the City's effort to use the City Plan Document, City Exhibit 6B [Docket No. 9523-2] to challenge that right must be rejected. The State Actions were filed as required by the Plan and do not violate the Plan Injunction. The City's effort to manufacture a jurisdictional issue in order to claim a Plan Injunction violation by importing a document of uncertain origin that is indisputably neither part of the Plan nor part of the DPLSA CBA cannot and does not change the DPLSA's right (and, indeed, obligation) to seek enforcement of the DPLSA CBA under applicable Michigan law in the forum provided by that law.

WHEREFORE, the DPLSA respectfully requests that this Court deny the City's Motion and enter an order finding that (i) the State Actions, which involves the enforcement, interpretation or resolution of a dispute under the DPLSA CBA do not violate the Plan Injunction, and (ii) that, as required by applicable bankruptcy law, the Plan and the Confirmation Order, the State Actions and any other matters which involve the enforcement, interpretation or

3

resolution of a dispute under the DPLSA CBA shall proceed under applicable state law and before the tribunal which state law provides for the resolution of such disputes.

        ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

        By:   /s/ Barbara A. Patek
            Barbara A. Patek (P34666)
            Counsel for the Detroit Police Lieutenants
              and Sergeants Association
            400 Galleria Officentre, Suite 444
            Southfield, MI 48034
            Telephone: (248) 827-4100
            Facsimile: (248) 827-4106
            E-mail: bpatek@ermanteicher.com

            -and-

            Peter P. Sudnick (P30768)
            SUDNICKLAW, P.C.
            2555 Crooks Road, Suite 150
            Troy, Michigan 48084
            Telephone: (248) 643-8533
            psudnick@sudnicklaw.com
            Co-Counsel for the Detroit Police Lieutenants
              and Sergeants Association

DATED: April 13, 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

Debtor.

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____/

**DPLSA's BRIEF IN SUPPORT OF ITS RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS**

**INTRODUCTION**

The City's Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions (the "Motion") asks this Court to ignore the Plan's requirement that disputes regarding the enforcement and interpretation of City collective bargaining agreement approved by the Plan "shall proceed under applicable state law." See Plan, Art. VII, Sec. B, [Docket No. 8045, p. 77]. The State Actions are indisputably an effort by the DPLSA to have the terms of its Court-approved collective bargaining agreement with the City interpreted and enforced. The Motion seeks to manufacture a Plan Injunction violation by mischaracterizing the DPLSA's efforts to enforce its active members' right to health care coverage as one to enlarge retiree's OPEB rights under the Plan. As set forth more fully herein, the City Plan Document

upon which the City relies in its effort to do so does not support that effort. Furthermore, the Michigan Public Employment Relations Act, MCL 423.201, *et seq* ("PERA") required the State Actions to be filed in the state forums where they were originally filed. The State Actions were filed as required by the Plan and PERA. They indisputably do not violate the Plan Injunction. For those reasons and as more fully set forth herein, the City's Motion must be denied.

## PROCEDURAL AND FACTUAL BACKGROUND

The DPLSA is the exclusive bargaining representative of the City's active lieutenants and sergeants. See City Exhibit 6A, Docket No. 9523-1, p.6. The DPLSA currently consists of 571 active lieutenants and sergeants serving in the City's police department, doing their best to provide effective public safety to the City of Detroit under improving, but still difficult conditions. See **Exhibit A**, Declaration of Mark Young, DPLSA President ("Young Declaration"), ¶ 3. The DPLSA estimates that 12 of those active police lieutenants and sergeants had spouses who are City retirees (the "Retired Spouses") that were enrolled in family coverage under one of the health plans available to DPLSA members under the DPLSA CBA. **Exhibit A**, Young Declaration, ¶4.

The DPLSA CBA was the result of nearly fourteen months of intensive negotiations through the court-ordered mediation process in these proceedings. After nearly eight months of intensive court-ordered mediation, on or about May 5, 2014, the DPLSA executed a term sheet with the City through which its leadership agreed to certain economic terms, agreed to support the Plan (including pension reductions) and agreed to continue negotiating the terms of what ultimately became the DPLSA's collective bargaining agreement with the City (the "DPLSA CBA"). **Exhibit A**, Young Declaration, ¶5. The finalized CBA was signed by the DPLSA and ratified by its members on November 6, 2015. *Id.*

On November 12, 2014, this Court entered its Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 8272]. On December 10, 2014, the Effective Date of the Plan occurred, and the City of Detroit filed its Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date [Docket No. 8649].

The Confirmation Order provides that, "[c]ontracts, leases and other agreements entered into after the Petition Date by the City, including . . . the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts . . . will survive and remain unaffected by this Order." See Confirmation Order [Docket No. 8272, pp. 105-06]. The DPLSA CBA is among the collective bargaining agreements identified on Plan Exhibit II.D.5 [Docket No. 8045-10, p.30].

While Article VII, Section B the Plan incorporates the DPLSA CBA into the Plan, it also expressly limits this Court's retention of jurisdiction over the DPLSA CBA to "[c]onfirm[ing] the maturity date and terms as written of the . . . [DPLSA CBA]." See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77]. Article VII, Section B goes on to state that it is "understood that the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law." *Id.*

With respect to the "terms as written" of the DPLSA CBA, Section 43 is devoted to "Hospitalization, Medical Insurance and Optical Care." See City Exhibit 6A, Docket 9523-1, p. 53-55. That section identifies three separate medical plans available to DPLSA members: BCBS, HAP and C.O.P.S. Trust. The City's Motion claims that the City Plan Document, City Exhibit 6B, Docket No. 9523-2, supplements the terms as written of the DPLSA CBA and further that the City Plan Document controls the rights of DPLSA members whose spouses are

3

also City Retirees.  See City Motion at pp. 4-5.  The City's Motion does not provide the origin of the City Plan Document, which includes footers on some pages that indicate that it is the "2014 Retiree Health Care Plan," City Exhibit 6B, pp. i-iii and p. 1, and on others, that indicate that it summarizes "2014 Active Employee Benefits," City Exhibit 6B, pp. 2-39.

The section of the DPLSA CBA that provides DPLSA members with the right to medical coverage is Section 43.A.  That section states:  "Unless the parties mutually agree otherwise, the City's 2014 medical plan designs (the "Medical Plan Designs") will remain in place during the term of this Agreement. For the purpose of this Section, the term Medical Plan Design will collectively refer to deductibles, co-payment, covered services, networks, and third party administrators or insurers."  City Exhibit 6A, [Docket No. 9523-1, p. 53].  As defined by the DPLSA CBA, Medical Plan Design does not include any reference to retiree coverage or to coordination of benefits.

Exhibit 6A contains a section denominated, "Employee Medical Plan Design."  That section provides summary information for two of the three plans available to DPLSA members. City Exhibit 6B [Docket No. 9523-2, pp. 38-39]. The Employee Medical Plan Design section references family coverage but makes no explicit reference to any spousal coverage and further specifically states: "[t]his comparison chart describes the essential features of the above health plans in general terms  It is not intended to be a full description of coverage.  All efforts have been made to correctly summarize the level of benefits, however, if an error has been made in the summary description, the Certificate of Coverage issued by the plan will supersede (sic) this document. **The complete plans are described in the Certificate of Coverage issued by each plan, and are available on request to all interested parties**." City Exhibit 6B, [Docket No. 9523-2, pp. 38-39] (emphasis added).  In other words, the City Plan Document expressly

4

disclaims that it is the (or one of the) defining plan documents referenced by Section 43.A of the DPLSA CBA.

Attached to this response is the 2015 City of Detroit Employee Health Care Plan Options Booklet (the "2015 Summary Booklet"), which, upon information and belief, would have been the summary document available to City employees during the open enrollment period for 2015. See attached **Exhibit B**. The 2015 Summary Booklet contains the same general information and disclaimer as the City Plan Document with respect to the Employee Medical Plan Designs. **Exhibit B**, pp. 6, 35-36. However, at the front of the 2015 Summary Booklet (where the City Plan Document inexplicably refers to the 2014 Retiree Health Care Plan) and consistent with the disclaimer in the City Plan Document, the 2015 Summary Booklet contains an introduction that unequivocally states that it, ". . . is intended to be an easy to read summary guide for City employees. **It is not a contract**. The statements contained in this booklet regarding eligibility for coverage apply generally to all City employee*s. However, these statements are not intended to replace or supersede any* City Code provisions, City Council resolutions or *language in labor agreements governing health care or life insurance benefits.*" See **Exhibit B**, p. 2 (Bold emphasis in original; italics and underline emphasis added.)

On January 8, 2015, the City notified spouses of certain DPLSA members who are also City retirees that it was terminating the family health care coverage in which their actively employed spouses had enrolled them. See City Exhibit 6D [Docket No. 9523-4, p. 26]. The DPLSA disputed the City's right to terminate that coverage and made demands on the City that it be reinstated. **Exhibit A**, Young Dec., ¶ 8. Specifically, it notified the Mayor's Office, the City Human Resources Department and the City Council. *Id.* When its efforts to resolve the issue were unsuccessful, the DPLSA filed the State Actions. City Exhibits 6C and 6D [Docket Nos.

5

9523-3 and 9523-4]. The City then removed the State Actions to this Court [Docket Nos. 9366, 9368]. When further negotiations between the City and the DPLSA failed to resolve the dispute raised by the State Actions, the City filed its Motion. This is the DPLSA's brief in support of its opposition to the Motion.

## ARGUMENT

The City's Motion must be denied in its entirety, as the post-confirmation contract rights asserted by the State Actions[2] were filed as required by the Plan and do not violate the Plan Injunction. Consistent with the Plan, through the State Actions, the DPLSA seek to assert the democratic rights returned to their members by this Court when it confirmed the Plan. The State Actions seek interpretation and enforcement of the DPLSA CBA under applicable Michigan labor law. They do not seek more favorable "treatment" for City retirees than that provided by the Plan's OPEB settlement. The State Actions assert active DPLSA members' rights to family (and, hence, spousal) medical coverage under the DPLSA CBA, not retiree rights.

Although Section 945 of the Bankruptcy Code allows this court to ". . . retain jurisdiction over the case for such period of time as is necessary for the successful implementation of the plan," principles of state sovereignty limit that jurisdiction to those matters to which the City consents under the terms of the Plan and Confirmation Order. See 11 U.S.C. §§106(a) and 944(a). The DPLSA CBA has been incorporated into the Plan and was approved by this Court [Docket No. 8045, p. 77], but the Plan expressly limits this Court's retention of jurisdiction over the DPLSA CBA to "[c]onfirm[ing] the maturity date and terms as written of the . . . [DPLSA CBA]." See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77]. The Plan further provides that

---

[2] Unless otherwise indicated, capitalized terms are used as defined in the City's Motion and Brief.

matters involving "the enforcement, interpretation and resolution of disputes of the terms of the contracts shall proceed under applicable state law."[3] *Id.*

The DPLSA CBA references neither the Plan nor the treatment of Class 12 OPEB claims. Furthermore, the Claims asserted in the State Actions are not Class 12 OPEB Claims.[4] Rather, they are post-petition contract claims made on behalf of active DPLSA members whose legal spouses have been denied family medical coverage. See City Exhibits 6C, 6D. Under the Plan's plain statement of this Court's limited jurisdiction over them, the State Actions must proceed "under applicable state law." While the Confirmation Order provides that the post-Effective Date jurisdiction retained by this Court under Article VII of the Plan is to "the fullest extent permitted by law," see Confirmation Order, [Docket No. 8272, ¶92, pp. 129-30], the state law applicable to State Actions requires them to proceed before the Michigan Employment Relations Commission ("MERC") and the Wayne County Circuit Court. See MCL 423.216 (a) and (h).

MCL 423.416(a) requires unfair labor practice charges brought under MCL 423.210 to be brought before MERC. In response to the unfair labor practice filed by the DPLSA against the City, MERC issued a complaint. See MERC Complaint, **Exhibit C**. MCL 423.216(h) provides that upon the issuance of a complaint by MERC, the charging party may petition "any circuit

---

[3] It is also worthy of note that, on the matter of pension benefits, where the DPLSA CBA does intersect with the Plan, the DPLSA CBA specifically references a Memorandum of Understanding regarding DPLSA members' entitlement to retirement benefits and expressly provides that the terms set forth therein "may be modified to conform with any plan of adjustment approved by the United States Bankruptcy Court. City Exhibit 6A, Section 47 [Docket 9523-1, p. 60]. There is no similar language or memorandum regarding health care benefits.

[4] The Plan specifically defines an "OPEB Claim" as, " . . . any Claim against the City for OPEB Benefits held by a retiree who retired on or before December 31, 2014 and is otherwise eligible for OPEB Benefits, and any eligible surviving beneficiaries of such retiree." [Docket No. 8272, p. 161].

court where the unfair labor practice is alleged to have occurred" for injunctive relief, and that circuit court "shall have jurisdiction" to grant temporary relief.

When it consented to the jurisdiction to be retained by this Court under the Plan, the City chose to have matters relating to the interpretation and enforcement of its collective bargaining agreements proceed "under applicable state law." The State Actions properly seek the interpretation and enforcement of the DPLSA CBA under PERA in the forums that PERA provides for their resolution. They do not violate the Plan Injunction. Neither does anything in the Plan, the treatment of Class 12 claims, the "terms as written" of the DPLSA CBA or the Confirmation Order contradict the DPLSA's right to proceed with the State Actions under applicable state law in the appropriate state forum. The City's effort to use the City Plan Document, City Exhibit 6B [Docket No. 9523-2] to turn the question of the DPLSA members' rights to family health care coverage into a Plan issue must be rejected because that document, by its terms (and as confirmed even more explicitly by the 2015 Summary Document) is not contractual in nature.

Furthermore, it is worthy of note that while DPLSA members are also holders of Class 10 pension claims, they are not holders of Class 12 (OPEB) claims. The specific plan release which governs DPLSA members as holders of pension claims explicitly provides that "the Plan does not release, waive or discharge obligations of the City that are established in the Plan with respect to . . . labor related obligations." Docket 8272, ¶24, p.85. Those labor-related obligations include the City's obligation to conform to "applicable state law."

Finally, the Plan's requirement that post-confirmation disputes regarding the interpretation and enforcement of the City's collective bargaining agreements proceed "under applicable state law" is consistent with general bankruptcy principles. See e.g. *In re Eastland*

*Partners Ltd. Partnership,* 199 B.R. 917, 920-21 (E.D. Mich. Bankr. 1996). That the City emerged from bankruptcy with highly negotiated, ratified and state approved collective bargaining agreements with its public safety unions, including the DPLSA, is one of the least acknowledged yet most remarkable feats of the City's successful, largely consensual emergence from bankruptcy. That success must not be diminished by allowing the City to manufacture a Plan Injunction issue to avoid its obligation to comply with the required procedures for the resolution of disputes under the DPLSA CBA.

As established by the record in these proceedings, when the Petition was filed, "the City had reduced the number of City employees by more than 22% since fiscal year 2010," and had imposed wage and benefit cuts on union employees under expired collective bargaining agreements. Orr Declaration, R. 11, pg. 14. This Court's Eligibility Opinion recognized that the City could not, ". . . reduce its employee expenses without further endangering public safety," Eligibility Opinion, R. 1945, pg. At the eligibility trial, Chief Craig addressed the challenges the City and its police officers faced in their efforts to provide essential police protection. Oct. 25 Trial Transcript, R. 1501, pgs. 177-215.

Among those challenges was the very low morale of City public safety workers. According to Craig, the morale of the City's police officers ". . . was the lowest . . . [he had] . . . seen of any police department [he'd] ever worked, including when . . . [he] . . . worked . . . [in Detroit] . . . in the 70's." *Id.*, pg. 192. That low morale was caused, in significant part, by a ten percent pay cut and 12 hour work day schedule forced on them and their lack of voice and decision making in the department. *Id.,* pg. 193. The chief told the court that the City's police department was undermanned, its officers underpaid and their working conditions "deplorable." *Id*. It was in the face of these challenges and only after extraordinary effort on the part of union

9

leaders, City leaders and the mediators that the City and its police unions, including the DPLSA were able to negotiate, ratify and obtain state approval of collective bargaining agreements, including the DPLSA CBA, that were then incorporated into the Plan.

When this Court confirmed the City's consensual plan of adjustment and gave the City its "fresh start," it turned the City's governance and democratic processes, back to the City. See Supplemental Opinion Regarding Plan Confirmation, Approving Settlements, and Approving Exit Financing [Docket No. 8993, pp. 218-219]. As the Court noted, "The current leadership of the City is now getting the City back from the emergency manager and from us in the bankruptcy world." *Id*. at 218. Under Section VII of the Plan, that "fresh start" included the reinstatement of the state law rights and remedies that govern the City and its public safety employees and the interpretation and enforcement of their collective bargaining agreements. The Plan requirement that collective bargaining disputes proceed under applicable state law is entirely consistent "'with the goal of weaning the [City] from its dependence on the bankruptcy court in order to stand on its own feet with respect to post-confirmation matters.'" *Eastland Partners* at 920, internal citations omitted.

The DPLSA properly filed the State Actions with the appropriate state tribunals as required by the Michigan Public Employment Relations Act, MCL 423.201, et seq ("PERA"). Nothing in the Plan, Confirmation Order or "terms as written" of the DPLSA CBA contradict this requirement, and the City's claim that the State Actions violate the Plan Injunction is without merit. The Confirmation Order explicitly provides that, "[c]ontracts, leases and other agreements entered into after the Petition Date by the City, including . . . the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts . . . will survive and remain unaffected by

this Order." See Confirmation Order [Docket No. 8272, pp. 105-06]. The DPLSA CBA is among the collective bargaining agreements identified on Plan Exhibit II.D.5 [Docket No. 8045-10, p.30].

The City's Motion claims that the DPLSA violated the Plan Injunction when it exercised its right under applicable state law, as required by the Plan, to have its collective bargaining agreement interpreted and enforced by filing the State Actions on behalf of its affected members. Those members are indisputably not Class 12 claimants. The Plan expressly allows (and, indeed, requires) the DPLSA to seek enforcement of the DPLSA CBA under applicable state law. PERA, the applicable state law, provides the mechanisms for that enforcement, and those are the mechanisms pursuant to which the State Actions were brought. Under the plain terms of the Plan, the Confirmation Order, terms as written of the DPLSA CBA and applicable Michigan law, this Court must deny the relief requested by the City's Motion.

## **RELIEF REQUESTED**

WHEREFORE, the DPLSA respectfully requests that this Court deny the City's Motion and enter an order finding that (i) the State Actions, which involves the enforcement, interpretation or resolution of a dispute under the DPLSA CBA does not violate the Plan Injunction and (ii) that, as required by applicable bankruptcy law, the Plan and the Confirmation Order, the State Actions and any other matters which involve the enforcement, interpretation or resolution of a dispute under the DPLSA CBA shall proceed under applicable state law and before the tribunal which state law provides for the resolution of such disputes.

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: /s/ Barbara A. Patek
    Barbara A. Patek (P34666)
    Counsel for the Detroit Police Lieutenants
     and Sergeants Association
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    Telephone: (248) 827-4100
    Facsimile: (248) 827-4106
    E-mail: bpatek@ermanteicher.com

    Peter P. Sudnick (P30768)
    SUDNICKLAW, P.C.
    2555 Crooks Road, Suite 150
    Troy, Michigan 48084
    Telephone: (248) 643-8533
    psudnick@sudnicklaw.com
    Co-Counsel for the Detroit Police Lieutenants
      and Sergeants Association

DATED: April 13, 2015

12

13-53846-tjt    Doc 9656    Filed 04/13/15    Entered 04/13/15 14:41:39    Page 16 of 17

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on April 13, 2015, the DPLSA's Response in Opposition to City of Detroit's Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions, Brief in Support and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

                ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

                By:   /s/ Barbara A. Patek
                    Barbara A. Patek (P34666)
                    Counsel for the Detroit Police Lieutenants
                     and Sergeants Association
                    400 Galleria Officentre, Suite 444
                    Southfield, MI 48034
                    Telephone: (248) 827-4100
                    Facsimile: (248) 827-4106
                    E-mail: bpatek@ermanteicher.com

DATED: April 13, 2015

1