UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,     .        Docket No. 13-53846
        MICHIGAN,            .
                             .        Detroit, Michigan
                             .        April 15, 2015
                 Debtor.     .        1:43 p.m.
. . . . . . . . . . . . . . . .

HEARING RE. MOTION OF THE CITY OF DETROIT, PURSUANT TO
SECTIONS 105(a) AND 502(c) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 3021, FOR AN ORDER APPROVING RESERVE
AMOUNTS FOR CERTAIN DISPUTED OR UNLIQUIDATED
UNSECURED CLAIMS IN CONNECTION WITH DISTRIBUTIONS
TO BE MADE UNDER THE EIGHTH AMENDED PLAN FOR THE
ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:     Jones Day
                    By:  JEFFREY ELLMAN
                    1420 Peachtree Street, N.E., Suite 800
                    Atlanta, GA  39309
                    (404) 581-8309

For Wilmington      Drinker, Biddle & Reath, LLP
Trust Company:      By:  HEATH ROSENBLAT
                    1177 Avenue of the Americas, 41st Floor
                    New York, NY  10036-2714
                    (212) 248-3248

For Steven Wolak,   Fieger Law
Personal            By:  DAVID DWORETSKY
Representative of   19390 W. 10 Mile Road
the Estate of       Southfield, MI  48075
Steven Wolak:       (248) 355-5555

APPEARANCES (continued):

In pro per:        WANDA JAN HILL
                   CARL WILLIAMS
                   DOROTHEA HARRIS
                   JANICE PICKETT
                   HASSAN ALEEM
                   CINDY DARRAH
                   VERA MAGEE
                   DEBRA PICKETT
                   LOU DAVEY JACKSON
                   LARRY JOHNSON
                   KIM SPICER
                   BELINDA HERNANDEZ
                   RAPHAEL ROBINSON


Court Recorder:    Jamie Laskaska
                   United States Bankruptcy Court
                   211 West Fort Street
                   21st Floor
                   Detroit, MI  48226-3211
                   (313) 234-0068

Transcribed By:    Lois Garrett
                   1290 West Barnes Road
                   Leslie, MI  49251
                   (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1          THE CLERK:  Please rise.  This Court is back in

2     session.  You may be seated.  Court will call the matter of

3     the City of Detroit, Michigan, Case Number 13-53846.

4          MR. ELLMAN:  Good morning, your Honor.

5          THE COURT:  Good afternoon to everyone.

6          MR. ELLMAN:  Should say good afternoon.

7          THE COURT:  Go ahead.  Your appearances?

8          MR. ELLMAN:  Thank you, your Honor.  Jeffrey Ellman

9     from Jones Day on behalf of the City of Detroit.

10         THE COURT:  Any other appearances?  We have at least

11    one person on the phone who's listening on a participating

12    basis.  Who's that?

13         MR. ROSENBLAT:  Your Honor, you have Heath Rosenblat

14    from Drinker, Biddle & Reath on behalf of Wilmington Trust

15    National Authority.  We were the COP trustee and contract

16    administrator.

17         THE COURT:  All right.  Thank you.  Mr. Ellman --

18         MR. ROSENBLAT:  Thank you, your Honor.

19         THE COURT:  I'm sorry.

20         UNIDENTIFIED SPEAKER:  Can I ask why you're

21    considering doing it?

22         THE COURT:  Somebody just said something on the

23    phone.  I didn't hear you.  What was that?  All right.  I

24    guess nothing.  Mr. Ellman, of course we're here for a

25    hearing on the city's motion regarding approval of reserve

1  amounts for --

2          MR. ELLMAN:  We are.

3          THE COURT:  -- disputed and unliquidated claims

4  relating to Class 14 of the confirmed plan.  What would you

5  like to say?

6          MR. ELLMAN:  Well, I would like to give a little

7  background and maybe run through a few highlights.  I'm not

8  going to try to go into too much detail because the motion is

9  very extensive, as your Honor is aware.  We were here last

10 time -- at least I was here last time.  I know there's been a

11 hearing intervening, but the last time I was here we were on

12 a status conference about the case, and we were talking about

13 the numerous steps we've taken to implement the plan, and

14 this is really another step in that litany of things we're

15 doing.  And this is to allow the city to begin to make

16 distributions sometime hopefully soon for Class 14, which is

17 the unsecured claims class, and this is really about Class

18 14.  That's what this motion deals with.  And as the Court

19 may recall, we have about $20.6 million in new B notes issued

20 under the plan that will be shared pro rata by the Class 14

21 claimants once they have allowed claims.  Now, we still at

22 this point have a substantial number of disputed claims, and

23 although I think we've made very significant progress and we

24 will continue to make progress in advance of our June 8th

25 deadline to object to claims, there's still more work to be

1  done. And by the way, your Honor, I believe that you'll

2  probably be seeing sometime soon a motion to extend that

3  deadline to object to claims just to provide more time

4  because there are several thousand claims, and it is a

5  complicated process.

6          But having said all that, the plan contemplates that

7  we would make distributions to allowed claims before we would

8  have to resolve every disputed claim, and it does that by

9  this mechanism referred to as the disputed claims reserve.

10  And, your Honor, that's in Section VI.B, VI.B of the plan,

11  and that effectively, your Honor, establishes what I would

12  call the denominator for the pro rata calculation, so we

13  could wait till every claim gets allowed and then figure out

14  how to divide up the B notes, but the plan allows us to

15  figure out what we think the rational denominator could be

16  and do the math sooner and effectively assuming that all the

17  disputed claims become allowed in some amount. The plan

18  refers to that amount as the face amount, which is a defined

19  term. It's in Section I.A.185, and that -- within that

20  definition and within the description of the disputed claims

21  reserve, it contemplates that the Court has the ability to

22  approve or set the amounts for the claims reserve for this

23  denominator, so the predicates for relief, your Honor, are

24  105(a) and Section 502(c) of the Bankruptcy Code, Bankruptcy

25  Rule 3021, and, of course, in particular, the plan and the

1    sections I just cited, Sections I.A.185, and VI.B.

2          We did serve the motion.  We talked about this, I

3    think, last time I was here.  We served the motion on all

4    Class 14 creditors, and that included parties who would be in

5    Class 14 except for the fact that the plan allows their

6    claims to pass through the plan.  They'll be paid in the

7    normal course, but we did give them to those parties as well

8    and to the entire 2002 list who had asked for notice in this

9    case, the parties requesting notice.

10          We did receive a number of formal and informal

11    responses.  I'll get to those in a moment.  The only thing I

12    would say at this juncture is just that none of those

13    responses, as far as I can tell, are really challenging the

14    overall relief requested or the methodology we've used.

15    They're really focusing more on the substance of claims,

16    which we're not dealing with today at all, and they're

17    dealing with in many cases matters unrelated to this motion

18    at all, things about the plan and pensions and the like that

19    have no bearing on what we're asking the Court to do.

20          So just to give the Court a couple of highlights of

21    what we're trying to do with this motion, of course, the goal

22    is to create a fair and conservative reserve so we can make

23    sure that if we start to distribute B notes there will be

24    enough left for everyone but not make it so gigantic that

25    it's unfair to parties getting a distribution.  We'd like to

1    make the best distribution we reasonably can.

2         Now, the motion asks for a reserve of 1.035 billion,

3    which is obviously very significant, much larger than the

4    $150 million we estimate this class to end up being at the

5    end of the day, which is in the disclosure statement, but

6    it's largely based on the fact that there are very large

7    filed claims now that are still not resolved.  The way we've

8    approached this is we've created three fairly simple

9    categories, I think, to deal with this.

10        THE COURT:  Before you get into the categories --

11        MR. ELLMAN:  Yeah, sure.

12        THE COURT:  -- let me ask you a question --

13        MR. ELLMAN:  Um-hmm.

14        THE COURT:  -- or two about how this reserve works.

15   First of all, you mentioned at the outset that there's

16   roughly $20.6 million worth of new B notes that are -- that

17   is --

18        MR. ELLMAN:  Um-hmm; correct.

19        THE COURT:  -- basically the pot that's ultimately

20   to be distributed to the allowed Class 14 claims.

21        MR. ELLMAN:  That's correct.

22        THE COURT:  All right.  And I think I saw in the

23   confirmed plan where that number comes from, but in each

24   place where the two components of that number are in the

25   plan -- and rather than sections, I have page numbers in the

1   confirmed plan, pages 37 to 44 -- in each place it states the

2   amount of the new B notes as approximate.  For example, the

3   treatment of Class 14 refers to the class receiving a pro

4   rata share of approximately 16.48 million in new B notes --

5         MR. ELLMAN:  Um-hmm.

6         THE COURT:  -- plus the distribution that's on page

7   37 relating to the COP settlement, which says that the class

8   also is to get approximately 4.12 million to be distributed

9   pro rata among holders of Class 14 allowed claims, so both

10   numbers are stated as approximations in the plan.  Is there

11   some -- how is the exact amount -- dollar value of the new B

12   notes that is the total pot --

13         MR. ELLMAN:  Right.

14         THE COURT:  -- for Class 14 determined?

15         MR. ELLMAN:  Well, and it is all within the

16   confines, I think, of all the various exhibits and the like.

17   We have actually issued all those B notes, so there is a

18   precise number that has been issued.  The way it worked, your

19   Honor, is we have a disbursing agent that was hired to

20   coordinate disbursements to creditors.  That is a third

21   party.  And the B notes had to be issued on the effective

22   date, and they, in fact, were issued to the disbursing agent

23   on behalf of this group, and that math was done consistent

24   with the plan and the various exhibits.  I would have to

25   piece through exactly where the exact numbers came from,

1  which I don't think I could do standing here at the podium,

2  but there was a precise number.  It's not at this point

3  subject to change.  It is a specific amount and was issued.

4  The notes are being held by U.S. Bank as the disbursing

5  agent, and I'd be happy to provide the Court with an exact

6  number, which I didn't bring with me today, but it is -- for

7  example, in the disbursing agent agreement that was approved,

8  it has the precise number in there, and those shares -- or

9  excuse me -- those bonds have been issued.

10         THE COURT:  Was that one of the exhibits to the

11  confirmed plan?

12         MR. ELLMAN:  I don't think it was a -- I don't think

13  it was filed with the Court, your Honor, but it was part of

14  the plan effective date transactions that we signed of that

15  agreement.

16         THE COURT:  I just couldn't find it, you know, and I

17  know there's a lot of exhibits.

18         MR. ELLMAN:  I appreciate that.

19         THE COURT:  I couldn't find looking at it and being

20  fairly new to the case where these approximate numbers were

21  actually made exact in the confirmed plan.

22         MR. ELLMAN:  Yes.  And I know they were made exact,

23  and it is complicated to piece a lot of this together, but

24  we'd be happy to try to do that for the Court.  I don't think

25  I'm prepared to do that while I stand here, but --

1          THE COURT:  I'll ask you to file a supplement --

2          MR. ELLMAN:  Okay.

3          THE COURT:  -- to this motion which states precisely

4    where in the plan and plan exhibits the Court -- one may

5    ascertain the exact amount of the total pot of new B notes

6    for Class 14.

7          MR. ELLMAN:  Okay.  Where within the plan or

8    otherwise I guess would be the --

9          THE COURT:  Pardon?  Yeah, sure.

10         MR. ELLMAN:  -- within the plan or otherwise.

11         THE COURT:  Well, exhibits are part of the confirmed

12   plan.

13         MR. ELLMAN:  Right.

14         THE COURT:  And exhibits -- yeah, sure.

15         MR. ELLMAN:  And effectively how we calculated that

16   number and where it came from.

17         THE COURT:  Yeah.  And, you know, cite me where in

18   the docket entries these things are, and I just would like to

19   have a citation.  While awaiting that -- you know, I'm not

20   going to hold up this motion while awaiting that, but I would

21   like to have that, and so --

22         MR. ELLMAN:  Okay.

23         THE COURT:  -- I'm not going to delay any action on

24   this motion for you to file that, but I would like to have

25   that, so how soon --

1      MR. ELLMAN:  I appreciate that, your Honor.

2      THE COURT:  -- do you think you might be able to

3  file that?

4      MR. ELLMAN:  I don't think it will be very hard, but

5  I guess I'd like at least -- what's today -- Wednesday --

6  maybe by Monday or something.

7      THE COURT:  How about a week?

8      MR. ELLMAN:  A week is fine, Judge, sure.

9      THE COURT:  Okay.  April 22.

10      MR. ELLMAN:  April 22?

11      THE COURT:  And, you know, there's no great urgency

12  for that for me, but it's just for my own -- make sure I have

13  a good understanding of everything relevant to this motion.

14      MR. ELLMAN:  Absolutely.

15      THE COURT:  I'd like to have that, so thank you for

16  that.

17      MR. ELLMAN:  That is not a problem, your Honor.

18      THE COURT:  I had another question, and this has to

19  do with a little bit about how the reserve -- this reserve is

20  to work under the confirmed plan.  If I understand it

21  correctly, the plan provision which you cite, which you

22  quoted in your motion, required -- one second -- Section

23  VI.B --

24      MR. ELLMAN:  Um-hmm; correct.

25      THE COURT:  -- required for this reserve that the

1    city establish and maintain a reserve of property equal to

2    and the rest of the provision.  The property being reserved

3    is the new B notes; right?

4              MR. ELLMAN:  That's correct.  That's the only

5    property that this --

6              THE COURT:  Yeah.

7              MR. ELLMAN:  -- class is entitled to.

8              THE COURT:  Right.

9              MR. ELLMAN:  That's correct.

10             THE COURT:  Okay.  And so if I understand this

11   correctly, with this reserve what you would do -- let's say

12   the reserve is approved in an initial amount of the one

13   point -- round numbers, one billion.  One billion.  And I

14   think your motion said that currently -- and this was as of

15   March 3 when you filed your motion.  This may have changed

16   since then, but you said there that allowed claims in Class

17   14 currently is a total amount of 28.2 million, roughly --

18             MR. ELLMAN:  Um-hmm.

19             THE COURT:  -- so you got -- you take the 28.2

20   million of allowed claims, you take the one billion reserve,

21   add those two together, and then from that total you

22   determine what amount or percentage of the 20.6 million worth

23   of new B notes can be distributed right now to the allowed

24   secured claim pool.

25             MR. ELLMAN:  Unsecured, yes.

1           THE COURT:  Allowed unsecured.

2           MR. ELLMAN:  Yes.

3           THE COURT:  The 28.2 million or whatever it is.

4           MR. ELLMAN:  I mean effectively the disputed reserve

5  number plus that allowed number together would be the

6  denominator --

7           THE COURT:  Right.

8           MR. ELLMAN:  -- of the pro rata calculation, so if

9  you had a million dollar claim that was allowed, you would be

10  sharing -- your pro rata piece would a million out of one

11  billion something, and that would be your percent of the new

12  B notes.

13          THE COURT:  And the new B notes, that would be of

14  the total 20.6 million.

15          MR. ELLMAN:  Of the total, yeah.  Right.  Exactly.

16          THE COURT:  The total B notes.

17          MR. ELLMAN:  The total B notes.

18          THE COURT:  Okay.  So then moving forward, as your

19  motion contemplates, as claims become -- some claims become

20  allowed, Class 14 claims, that were as part of the reserve,

21  you're going to take those -- whatever the reserve amount for

22  those claims were out of the reserve, and then at some point

23  you're going to make a distribution to those newly allowed

24  claims.

25          MR. ELLMAN:  That's correct.

1    THE COURT:  And that's going to be based on what?

2    The percentage dividend that the previously -- previous

3    distribution of allowed claims was?

4        MR. ELLMAN:  Typically, the way we would do this --

5    and the plan provides some flexibility on the city's behalf

6    in doing this, but typically what you would do is have set

7    distribution dates, and the plan, in fact, says -- I can try

8    to find the provision for your Honor.  I think it's on page

9    65 of the plan, Article V, Section F.  What it says is that

10   the city or in this case through the disbursing agent will

11   make an informed decision about how to make payments as

12   quickly as possible while also, you know, minimizing the

13   cost.  We're not going to do a distribution every day.  So

14   when we make those distributions, everyone will get

15   effectively the same percent.  And if we've made, let's say,

16   a couple distributions and we are making a new one today and

17   your claim just got allowed, we will redo the math for what

18   the reserve is today.  Our procedures say we'll file that two

19   weeks before we do distributions.  People can look at it.  If

20   anyone has a problem, they'll at least have a chance to come

21   tell us or come to the Court, and then we will do the math

22   and say, okay, you get this percent pro rata of the B notes.

23   We'll send you your B notes.  We'll go back to the people

24   who -- the parties, allowed creditors, who had received

25   distributions in the past.  We'll say, well, if we made a

1  distribution today, based on the new numbers, you would have

2  received, you know, ten dollars in B notes, and you've

3  already received three from the prior two times you've gotten

4  something.  You'll get seven more.  So everyone will always

5  stay caught up to each other, but under Section V.F of the

6  plan, when those dates are is not set in stone.  It's going

7  to be kind of a judgment call based on when it's most

8  efficient to do that as quickly as we can.

9          THE COURT:  And, by the way, when does the city want

10  to -- or hope to do the first distribution to --

11          MR. ELLMAN:  Well, it hasn't been --

12          THE COURT:  -- allowed Class 14 claims?

13          MR. ELLMAN:  It hasn't been set yet.  They're still

14  working out some mechanics of the distribution.  This is

15  obviously one of the key steps in doing that.  I would

16  imagine in the next number of months.  I don't have a date

17  for your Honor.  We did talk about this earlier today, and I

18  think the commitment is as soon as we can be ready after the

19  reserve is set, but that may require a couple things still to

20  happen, one of which is we have a number of claims that are

21  going to be designated as allowed.  The city -- and Mr.

22  Noseda is here from the law department -- they are going

23  through a lot of data at the moment so they can carefully

24  make sure we're allowing the right claims in Class 14.  That

25  may take a bit of time, so I imagine it still might be a

1  couple months away, maybe sooner, maybe longer, just

2  depending.

3          THE COURT:  So there's a batch of Class 14 claims

4  that soon will be designated as allowed.

5          MR. ELLMAN:  We're hopeful of that, yes.  That's our

6  plan.  It has not happened between the time we filed this

7  motion and today.  We were hoping to have done that maybe as

8  of today, but that hasn't happened, but we're still working

9  on that.

10         THE COURT:  Has the pool or the amount of the

11  allowed claims changed from the 28.2 million that was --

12         MR. ELLMAN:  Not to my knowledge, no.

13         THE COURT:  -- stated in the motion?

14         MR. ELLMAN:  I don't believe it has.

15         THE COURT:  No.  Okay.  Okay.  So I interrupted you

16  with questions.  Go ahead with where you were.

17         MR. ELLMAN:  No.  That's fine.  I would much prefer

18  to answer your questions than just talk.

19         THE COURT:  I will display my ignorance -- I'll

20  display my ignorance at every opportunity in this case.

21         MR. ELLMAN:  Well, I was just going to give the

22  overview of the program, which I'm sure you're already aware

23  is -- and the simplest part of it is the fact that -- and

24  it's very consistent with how the plan defines face amount.

25  We didn't try to change it because we each have a group of

1   claims that have numbers in them, and we just -- we're using
2   those numbers.  If it was called an estimate, if it was
3   called a precise number, if it was called a demand --
4   whatever they called that number, if a claimant put a number
5   in the proof of claim form and it's in Class 14, we used that
6   number, and that comprises $968 million of this reserve, and
7   that's by far the biggest piece of this.  And there are a
8   number of large claims.  I will point out -- I know the Court
9   had a status -- I can't recall the exact date, but maybe last
10  week -- on the AFSCME and the coalition union claims.  Those
11  two claims alone are roughly 545 million of that 968, so --
12          THE COURT:  And those are listed as are the others
13  in your exhibit --
14          MR. ELLMAN:  They are, yes.
15          THE COURT:  -- your revised Exhibit 6.1.
16          MR. ELLMAN:  Correct.
17          THE COURT:  Yeah.  Okay.
18          MR. ELLMAN:  They are.  And they were in the
19  original one as well, those two claims, and so the number is
20  kind of a very large number, but we do have claims such as
21  those, which, as the Court is already aware, we do contest,
22  and we think those should be zero, so we don't know where
23  they'll end up.  We're going to reserve the full amount at
24  this point so that if they for whatever reason became
25  allowed, we could pay them their full pro rata share.

1        The second group were the unliquidated claims or

2   claims that had unliquidated amounts in them.  We set that at

3   47 million.  The biggest piece of that also relates to the

4   same issues that you see in the coalition and in the AFSCME

5   claim because we have a number of other unions and

6   individuals raising claims related to the CETs or the

7   citywide employment terms, and as we explained in our papers,

8   we came up with a number of $45 million for everyone who

9   wasn't already covered by the coalition, and it's based on

10  what we've announced were cost savings under the CETs or the

11  citywide employment terms, again, not that we agree with that

12  number, but that is another significant number, the biggest

13  part of the unliquidated reserve, if those were to be

14  allowed.  And the litigation claims were reviewed by the law

15  department very carefully, and we've added a million dollars

16  for the remaining amounts and another million dollars for

17  things like trade claims and rejection damage claims that

18  didn't have numbers in them, again, based on our internal

19  valuation and a good faith estimate.

20       And then the last category was just a contingency

21  category, which we thought was prudent in the circumstances,

22  for unknown claims, and that would include 502(h) claims that

23  were filed.  We do have -- again, at our status conference we

24  revealed that we were looking at about 100, $110 million of

25  possible preferences.  We don't know if there will be 502(h)

1    claims, but we felt like we should reserve a not

2    insignificant amount for that, claims that might get

3    reclassified into Class 14 and other issues that we just

4    don't contemplate, so we concluded that 20 million was a

5    rational and fair way to reserve for that.

6         And so, again, the city believes that this is a fair

7    and appropriate approach.  They've used their business

8    judgment in good faith.  In most cases, we simply used the

9    claimant's number, so we think that is both rational and

10   appropriate and also consistent with the plan.  And, again,

11   this is an approach that hasn't been challenged by anyone in

12   any of the filings I've seen to date.  And 502(c) is a very

13   flexible standard, and we cited in our papers cases where

14   502(c) has been used to establish these types of plan

15   reserves.  The other thing we've asked for in our papers --

16        THE COURT:  And, of course -- and I think, as you --

17   I think, as you made clear in your motion papers, this motion

18   doesn't ask the Court to actually estimate a claim for

19   allowance purposes at all --

20        MR. ELLMAN:  Absolutely not.

21        THE COURT:  -- any claim.  It's strictly for

22   establishing a total reserve --

23        MR. ELLMAN:  That's correct.

24        THE COURT:  -- for disputed claims --

25        MR. ELLMAN:  Absolutely correct.

1          THE COURT:  -- or unliquidated.  Okay.  All right.

2          MR. ELLMAN:  We're not asking the Court to find or

3    limit in any way a future finding about the amount or

4    classification or treatment of a claim.  That's all outside

5    the scope of this motion.  But we did ask the Court to do one

6    other thing in the motion, which was to approve what we had

7    proposed as some rules for administering this reserve.  There

8    are a number of them.  I guess the couple I want to just

9    point out, which you've already mentioned, your Honor, is

10   once claims are resolved, we will revise the reserve

11   accordingly, so that number is going to start to come down as

12   we resolve claims.  We have built in some flexibility to

13   maybe reduce the amount slower depending on what we're seeing

14   in the claims process.  The number can never go up above

15   where we set it today, but we have some flexibility on the

16   contingency reserve to adjust that over time in good faith,

17   and the notice -- I already mentioned the notice.  We will

18   file a notice of what we do in advance of any distribution by

19   ten business days, so basically two weeks, so we wanted to

20   make sure this was a transparent process and people had a

21   chance to see it, including your Honor, and so we proposed

22   doing that notice.

23          THE COURT:  The last thing, I guess, to talk about

24   were the responses because there were a number of filings.

25   In fact, as I was traveling here, I understand there were

1    maybe another 30-some that ended up on the docket this

2    morning.

3              THE COURT:  Well, there were a whole slew of them

4    that came in yesterday --

5              MR. ELLMAN:  Yeah.

6              THE COURT:  -- were filed yesterday, I think, in the

7    afternoon --

8              MR. ELLMAN:  Okay.

9              THE COURT:  -- and then this morning they were put

10   on the docket but dated as filed April 14 because they --

11             MR. ELLMAN:  Okay.

12             THE COURT:  -- came in yesterday, a whole bunch of

13   these form notices --

14             MR. ELLMAN:  Yeah.  That's what I heard, yes.

15             THE COURT:  -- that you've been seeing, which I

16   caused those notices -- notice documents to be docketed and

17   filed but not docketed as being associated with or linked to

18   or responses to this motion because --

19             MR. ELLMAN:  Okay.

20             THE COURT:  -- I looked them over, and I didn't

21   think they ought to be characterized that way.

22             MR. ELLMAN:  Okay.

23             THE COURT:  So we just said motion filed by so-and-

24   so, period.

25             MR. ELLMAN:  Okay.

1          THE COURT:  And, you know, I looked at all those,

2     those notice documents, and none of them -- if they were

3     intended as objections or responses to your motion, they

4     don't say anything --

5          MR. ELLMAN:  Okay.  Well, if they were --

6          THE COURT:  -- about the motion, so they're not --

7     those documents, although you may not have had a chance to

8     review them -- and I'll just say they're -- let me give you

9     the docket numbers of those.  Here I'm talking about Docket

10    Numbers 9685 through 9690, the documents that say notice

11    filed by so-and-so.

12         MR. ELLMAN:  Yeah.

13         THE COURT:  Those are out.  They're not -- they're

14    disregarded.  I'm not going to consider them as objections or

15    responses to your motion.

16         MR. ELLMAN:  Right.

17         THE COURT:  Aside from the fact they don't say

18    anything, they're very untimely obviously filed --

19         MR. ELLMAN:  Obviously.

20         THE COURT:  -- the day before the hearing and long

21    after the response deadline, but -- and then you have the

22    other ones that are --

23         MR. ELLMAN:  On a form.

24         THE COURT:  -- I think 27, 28, 31, something --

25         MR. ELLMAN:  I was told -- I was told 28.

1     THE COURT:  -- pile of papers -- yeah --

2     MR. ELLMAN:  Yeah.  I was told 28.

3     THE COURT:  -- that came in the mail yesterday,

4  again, very untimely, and I'm not sure any of those say

5  anything substantive, but have you had a chance to review

6  those?

7     MR. ELLMAN:  They were described to me on the

8  telephone by one of my colleagues, who said that there were

9  28 that were the same form we had seen already filed and 6

10  that were just a notice that didn't have an objection in

11  them, so I think that's consistent with what your Honor is

12  telling me, so I don't think that's going to slow us down

13  today.

14     We did file a reply on the docket -- 9652 is the

15  docket number -- your Honor probably has seen, and we tried

16  to -- at that time, we had 33 objections we were responding

17  to.

18     THE COURT:  Yeah, I did see that, and I reviewed

19  that, yes.

20     MR. ELLMAN:  Yeah.  And we did a little chart at the

21  back summarizing where we are with each of these.  We did

22  resolve a few, including the Wilmington Trust, who's on the

23  phone, the DFFA, which is one of our unions, and a couple of

24  other people we explained the motion to, and they're not

25  going to pursue their objections.  We listed those in our

1  chart, but a number of them we didn't resolve or weren't able

2  to resolve despite trying to call most of the people we could

3  find, but most of the remaining objections are in kind of one

4  of two groups, which are the ones raising something

5  substantive about their claim, about the amount or what class

6  it should be in or treatment, and, again, our motion doesn't

7  deal at all with that.  It's simply if your claim ends up in

8  Class 14, we're reserving something maybe for it if it's

9  appropriate, and those objections are about something else,

10 and those are all issues reserved for another day.  And there

11 are a number of them that are not objections to our motion

12 but objections to the bankruptcy process or the plan or

13 pensions or something that is beyond the scope of the motion.

14 Many of them are collateral attacks on the confirmation order

15 or the confirmation process, and, again, we don't see those

16 as relevant to today's motion.  There are a number of them

17 also, I guess, in the form of a notice, as your Honor

18 mentioned, that don't say anything other than, "I object,"

19 or, "I do not accept the relief," and then obviously the --

20         THE COURT:  Some of them don't even say that.

21         MR. ELLMAN:  Some of them don't even say that, and,

22 of course, there are some that are just actually late or

23 maybe substantially late, so, in our view, there's really

24 nothing in those objections of substance that would prevent

25 the Court from overruling -- or from granting our motion, and

1    they should all be overruled.  Our motion should be granted.

2         I'm happy to answer questions about them.  I guess

3    otherwise I would simply reserve time to respond to anyone

4    who ends up speaking today to raise an issue about any of

5    those remaining objections and, of course, answer any

6    questions of the Court, but I don't feel like it's necessary

7    for me to speak further about any of the filings.

8         THE COURT:  So have you -- as you know, in your --

9    as attachments to your reply that you filed last Friday,

10   Docket 9652, you attached revised Exhibits --

11        MR. ELLMAN:  Correct.

12        THE COURT:  -- 6.1, 6.2, 6.6, to update what you had

13   filed --

14        MR. ELLMAN:  Correct.

15        THE COURT:  -- with your original motion on March

16   3rd.  Do you have any other changes, or does that, combined

17   with the unchanged exhibits attached to your motion,

18   constitute the current list of schedules for purposes of

19   granting the motion?

20        MR. ELLMAN:  That would be the current set of

21   schedules for granting the motion, and if the Court were

22   inclined to grant the motion, we would be prepared to -- I

23   don't have it with me today, but we would be prepared to

24   submit an order that grants the motion.  Basically the form

25   of order that was attached to the motion probably with some

1  modest changes to reflect that the objections would be
2  overruled would be what we would like it to say to the extent
3  not -- to the extent those objections were not resolved, but
4  the schedules you have now between the motion and the revised
5  schedules we filed are, in our view, the current and most
6  accurate schedules.
7          THE COURT:  All right.  Anything else before we hear
8  from others?
9          MR. ELLMAN:  No.  Unless you have questions, your
10 Honor, I'm done.
11         THE COURT:  Not at the moment I don't.
12         MR. ELLMAN:  Thank you.
13         THE COURT:  All right.  Let me start by asking
14 whether -- Mr. Rosenblat on the telephone, whether you wanted
15 to say anything about this motion.
16         MR. ROSENBLAT:  No, your Honor.  He represented what
17 they did with our claim just fine, and we have nothing
18 further.  Thank you.
19         THE COURT:  All right.  Let me ask whether there are
20 any people in the courtroom, either counsel for parties in
21 interest or parties themselves who are representing
22 themselves, who want to say anything today about this motion
23 that is before the Court today.  Come on up to the podium if
24 you want to say something.
25         UNIDENTIFIED SPEAKERS:  We can't hear you.

1          THE COURT:  If you want to say anything about the
2     motion, come on up to the podium.
3          MR. DWORETSKY:  Thank you, your Honor.
4          THE COURT:  Just a minute.
5          MR. DWORETSKY:  Sure.
6          THE COURT:  Come on up.  Line up.  You can sit in
7     the chairs there, but we'll just take you in turn.  Just a
8     minute.  All right.  I'll ask each of you as you come to the
9     podium to speak into the microphone and begin by identifying
10    yourself for me, please, and for the record.  Sir, go ahead.
11    You are who?
12         MR. DWORETSKY:  David Dworetsky.  I'm an attorney
13    for Fieger Law.  We represent Steven Wolak, personal
14    representative of the estate of Christopher Wolak.
15         THE COURT:  All right.  One second.  David -- your
16    name again?  David what?
17         MR. DWORETSKY:  Dworetsky, D-w-o-r-e-t-s-k-y.
18         THE COURT:  And the creditor you represent you said
19    is Wolak?
20         MR. DWORETSKY:  Claimant is the estate of
21    Christopher Wolak.
22         THE COURT:  All right.  One second, please.  And
23    you, sir, filed, if I've got it correct, an objection on
24    March 23, 2015, titled "Objection of Stephen Wolak as
25    personal representative of the estate of Christopher Wolak,

1  deceased," et cetera?

2          MR. DWORETSKY:  Correct.

3          THE COURT:  Okay.  Go ahead.  What do you want to

4  say?

5          MR. DWORETSKY:  Your Honor, after discussion with

6  counsel for the city and listening to the proceedings herein,

7  it's the estate's understanding that we are not -- that we

8  are here to establish a total reserve amount.  There is no

9  challenge to any individual amounts or challenge to the

10  individual claims themselves.  My concern is that an

11  overruling of our objection and granting of the motion would

12  somehow impair my client's right to enforce a settlement

13  agreement that he entered into with the city prior to the

14  bankruptcy.  As long as our rights are reserved to challenge

15  the amount of the claim based upon the settlement agreement,

16  we have no further objection to today's motion.

17          THE COURT:  Thank you.  Mr. Ellman, is it correct

18  that the debtor does not intend for the granting of this

19  motion to in any way impair or prejudice the claim filed by

20  Mr. Wolak as personal representative?

21          MR. ELLMAN:  That's correct, your Honor.  They filed

22  a claim for $3 million.  There was also a pre-petition

23  settlement, I think, for 375,000, which occurred before the

24  petition date.  We've reserved for the full amount of their

25  filed claim, the $3 million, and whether their claim should

 1   be 3 million or 375,000 or treated in some other way -- all
 2   those issues are reserved, but if their claim were allowed as
 3   filed, then 3 million we have reserved for that claim.  Thank
 4   you.
 5        THE COURT:  Thank you.  Mr. Dworetsky, does that
 6   resolve your concerns?
 7        MR. DWORETSKY:  Yes, it does, your Honor.
 8        THE COURT:  All right.  Thank you.  Who wants to
 9   speak next?
10        MS. HILL:  I'll get it over with.
11        THE COURT:  Come on up, ma'am.  You are?
12        MS. HILL:  My name is Wanda Jan Hill, and I'm a
13   retiree for the City of Detroit, and --
14        THE COURT:  Just a minute, ma'am.  Your last name is
15   what?
16        MS. HILL:  Hill, H-i-l-l, Wanda Jan, J-a-n, Hill,
17   H-i-l-l.
18        THE COURT:  All right.  Good afternoon.  Go ahead,
19   ma'am.
20        MS. HILL:  Yes.  I just want to say that I have
21   several concerns.  One is since the distribution of the B
22   notes is incomplete and not ready to come before your
23   Honorable body, I'd like to ask that I be considered or --
24   and/or the other retirees be considered for distribution of
25   that fund.  We are unsecured claim, and I believe that we're

1   duly entitled to any set-aside money.

2           And the other thing relative to that is I'd like

3   to -- for the record, I'd like to know how will -- I guess

4   this is Jones Day here.  How are they going to determine how

5   much people are going to get?  And I take, for example, the

6   guy that was just here.  His initial request was for 3

7   million, and somehow or another 325,000 is included, so how

8   do you -- who's going to make the decision how much people

9   are going to get?  That's a concern for the record.  I'm not

10  expecting an answer now, but I'd like to receive an answer

11  relative to that.

12          My other concern is that I have to object to the

13  notice that we sent -- that we received for the Docket 9652

14  from Jones Day.  It was very untimely.  And I do understand

15  that timeliness is an issue with the Court, and I believe

16  that we should be treated as fairly as all that are involved

17  in this Court.  We received our notice Monday to be here

18  today, so that doesn't allow us any time.  It gives me the

19  impression that we're not being taken seriously, and we have

20  a grave concern about that.  We were -- and I'm not going to

21  take up a lot of time.  We were run roughshod during the

22  bankruptcy, and we would appreciate if we're not treated like

23  that now.  This is very important, and our earnings have been

24  removed.  And I understand that you are taking the place of

25  Judge Rhodes, but you probably need to hear from the people

1    that are affected.  You should hear the human touch of what's
2    happening.  We do not want to be run ramshodded again.
3    That's unfair.  So if we're to receive notices, we need to
4    get them timely.  And I'm still trying to figure out --
5    according to this Docket 9652, they claim that they notified
6    people.  I don't know which form of media or -- be it
7    printed, be in video or how -- I want to know how do they
8    notify people because some things are not coming through the
9    mail to some -- to a lot of us, so that's a matter of record,
10   too.  I want to -- I want to get that clear.  We're not
11   receiving notification, although they put it in print that
12   they are.  That's not happening.
13         And the other thing is -- let me see.  Yeah.  I want
14   to reiterate the part that we do want to be considered for
15   any set-aside money, and we'd like to know how that is
16   calculated.
17         THE COURT:  Ma'am, do you happen to know whether you
18   have a claim that you have filed that is in Class 14 of the
19   confirmed plan?
20         MS. HILL:  No, I don't.  No, I don't, but I do
21   understand that there is some set-aside money, and
22   according --
23         THE COURT:  Excuse me.  Excuse me.
24         MS. HILL:  Um-hmm.
25         THE COURT:  You need to understand that this motion

1  concerns only a reserve for disputed or unliquidated claims

2  that are in Class 14 under the confirmed plan --

3           MS. HILL:  Um-hmm.

4           THE COURT:  -- no other classes, no other creditors,

5  just that class.

6           MS. HILL:  Um-hmm.

7           THE COURT:  And if you don't have a claim in that

8  class that you filed that's in Class 14 under the confirmed

9  plan --

10          MS. HILL:  Um-hmm.

11          THE COURT:  -- the motion really doesn't concern you

12  at all, and you certainly would not have any entitlement

13  under the confirmed plan to any part of this reserve that's

14  being proposed for --

15          MS. HILL:  Um-hmm.

16          THE COURT:  -- for the new B notes that are to be

17  distributed to the holders of allowed claims --

18          MS. HILL:  Um-hmm.

19          THE COURT:  -- in Class 14.

20          MS. HILL:  Okay.

21          THE COURT:  So I want to make sure you understand

22  that.  Now, if you want to say anything else, go ahead, and

23  then we'll hear from Mr. Ellman --

24          MS. HILL:  I will, and I will --

25          THE COURT:  -- to see if he wants to address what

1  else you've said.

2          MS. HILL:  And I want to address what you just said.

3  I do understand that it's Class 14, but we also understand

4  that this bankruptcy is being conducted as we go.  There are

5  no hard set rules.  Now, if Class 14 --

6          THE COURT:  I disagree with you strongly about that,

7  ma'am.

8          MS. HILL:  Well, I've been --

9          THE COURT:  Now, go on.  I disagree with you, and

10  I'm not --

11          MS. HILL:  Okay.

12          THE COURT:  -- going to agree with that.

13          MS. HILL:  I'm not going to -- that's how you feel.

14          THE COURT:  This is governed by laws and rules and

15  by the confirmed plan, which is very detailed.

16          MS. HILL:  I understand that.

17          THE COURT:  Go ahead.

18          MS. HILL:  But there is room for improvement, and

19  there is room for changes, and my concern is relative to any

20  improvement and any change that may come about as it relates

21  to this unsecured -- set-aside money for unsecured claims, so

22  I want the record to note that if there are rooms -- if room

23  does become available for improvements and changes that the

24  retirees for the City of Detroit be considered, and thank you

25  very much.

1          THE COURT:  All right.  Thank you, Ms. Hill.

2    Mr. Ellman, what would you like to say in response to what

3    Ms. Hill has said?

4          MR. ELLMAN:  Again, Jeffrey Ellman for the record

5    from Jones Day.  Not a lot, your Honor.  I will say, as far

6    as the notice, we did give notice to all creditors that we

7    believed would be in Class 14.  I know Ms. Hill said she

8    didn't have notice of this hearing until Monday, but she did

9    file her response on the docket on March 23rd, so I believe

10   she had notice of this hearing.  I don't believe that --

11         THE COURT:  Well, that was her response to the

12   motion.  I believe she was complaining about receiving only

13   on Monday notice of today's hearing on the motion.

14         MR. ELLMAN:  Yeah.  Well, that's outside of my

15   knowledge, but certainly that notice went out timely as well,

16   so --

17         THE COURT:  Well, when was --

18         MR. ELLMAN:  -- in any event --

19         THE COURT:  Excuse me.  When was notice of today's

20   hearing served and how?  Do you know?

21         MR. ELLMAN:  It would have been served at the time

22   that your Honor set the hearing, whenever that was.

23         THE COURT:  Well, at the time I caused this hearing

24   to be noticed, notice of hearing to be issued, there had only

25   been a couple of filed objections at that point.

1          MR. ELLMAN:  Um-hmm.

2          THE COURT:  Whole bunch of objections came in after

3   that, and so I'm wondering what the city did to serve the

4   notice of hearing on the parties who later responded.  Do you

5   know the answer to that?

6          MR. ELLMAN:  Well, I know we served it as soon as we

7   could on all the parties who had responded, all the parties

8   on --

9          THE COURT:  Okay.

10          MR. ELLMAN:  -- the regular service list.

11          THE COURT:  You obviously served it on Ms. Hill.

12   She got it.

13          MR. ELLMAN:  Right, so it would have been served at

14   the time, so --

15          THE COURT:  Right.

16          MR. ELLMAN:  In any event, I just wanted to respond

17   that we did our best to give notice to people as timely as we

18   could.

19          THE COURT:  All right.

20          MR. ELLMAN:  As far as the rest of it, I would be

21   happy to answer any questions.

22          THE COURT:  Does Ms. Hill have a claim in Class 14

23   potentially?

24          MR. ELLMAN:  I'm not aware of what her claim is.  If

25   it's a pension-related claim, then it would not be in Class

1  14.  That would be in the -- one of the pension classes, so

2  it would not be subject to treatment in Class 14.  I also

3  wanted to point out that we're not reserving -- there's a

4  couple references to a fund of money that we're putting

5  aside, and we are not putting aside a fund of money.  We are

6  simply holding the new B notes, which are an instrument

7  that's a security but it's not money just so there's no

8  confusion over that.  And as far as her claim if it's in

9  Class 14 it's covered by a reserve, if it's a pension claim,

10  which it might be, it would not be.

11           THE COURT:  Is she in the list of --

12           MR. ELLMAN:  I'm just looking now to see if she has

13  a --

14           THE COURT:  -- the schedules?

15           MR. ELLMAN:  -- if she has a claim that was

16  liquidated that would have been listed on our list.

17           THE COURT:  I see a Clark Hill, but I don't see in

18  the alphabetical list Wanda Jan Hill.

19           MR. ELLMAN:  Yeah.  I don't see it either, your

20  Honor, and I don't have a copy of the claim, although I could

21  try to get one.  And we could ask Ms. Hill what kind of claim

22  she's filed, but if it's for benefits and pensions, then it

23  would not be in this class and would not be -- that would be

24  the reason it's not reserved for specifically.

25           THE COURT:  All right.  Anything else you'd like to

1  say at this point, Mr. Ellman?

2         MR. ELLMAN: No. Thank you, your Honor. No.

3         THE COURT: You're in the hot seat today for all

4  these folks, and so all right. Who would like to speak next?

5  Anyone? Good afternoon, sir. You are?

6         MR. WILLIAMS: Carl Williams.

7         THE COURT: All right. Good afternoon, Mr.

8  Williams. What would you like to say?

9         MR. WILLIAMS: Well, one thing that I would like to

10  say is that I just received a response from the city

11  yesterday in response to our motion and objection, and one

12  thing that I want to make clear is according to the

13  Bankruptcy Code and the bankruptcy federal rules of

14  procedures 923 and 2002(l) it states that your notices are

15  supposed to be published in the newspaper and to the

16  individuals. That never was done. From the beginning of

17  this bankruptcy up until this present time, that never have

18  been done. They continue to violate 11 U.S.C. 923 and the

19  federal rule of bankruptcy procedure, which is 2002(l).

20         And also this plan of adjustment -- eighth plan of

21  adjustment never have been voted on. It wasn't by consent of

22  the people, which is a violation of 11 U.S.C. 903, which is

23  the creditors, and that's these people that's sitting out

24  here, or the City of Detroit, for all that go, 11 U.S.C. 904,

25  which is the municipality. Neither one of them consented.

1 Kevyn Orr filed this here, and all this stemmed from what

2 Kevyn Orr did. He's an agent of the state representing the

3 state, not the City of Detroit, and that also brings fraud

4 into it because everybody is saying that --

5         THE COURT: Excuse me. Mr. Williams, pardon me.

6         MR. WILLIAMS: Sir.

7         THE COURT: Excuse me. Let me just interrupt you

8 with a question.

9         MR. WILLIAMS: Um-hmm.

10         THE COURT: I've seen in papers you have filed with

11 this Court since I've been assigned to the case as the

12 judge --

13         MR. WILLIAMS: Um-hmm.

14         THE COURT: You make many of these same arguments in

15 writing. I know you're one of the creditors that has an

16 appeal pending in the District Court from the --

17         MR. WILLIAMS: Right.

18         THE COURT: -- order confirming the plan, and I've

19 addressed as a motion for reconsideration and denied your

20 motion that contained many of these arguments. And none of

21 the things that you have just said seem to have anything

22 whatsoever to do with the particular motion that's before me

23 today for hearing. Is there anything you want to say about

24 that motion, that's relevant to that motion today because

25 that's all we're here for today?

1          MR. WILLIAMS:  You did -- we get a notice; right?
2    It was -- the motion was noticed; right?  They have a
3    procedure that they're supposed to go by.  That's what I'm
4    talking about.  It don't -- it only talks about notice in one
5    section of this whole bankruptcy procedure, and that's 923 --
6    I mean 11 U.S.C. 923.  It has to be published.  It never was
7    published.  We're talking about notice.  That's why half of
8    these people didn't get their stuff, and you received it five
9    or ten, fifteen at the last minute because it never was
10   published.  It should have been published in the newspaper as
11   the Bankruptcy Code and the Federal Rules of Bankruptcy
12   Procedure state.  It's there for a reason.  It said for three
13   consecutive weeks.  It should be published in the paper for
14   three consecutive weeks.  That never have been done.  From
15   the beginning to the present date, that never have been done,
16   so that's a violation right there.  So how you going to make
17   a claim on something that is null and void?
18          THE COURT:  All right.  Anything else you want to
19   say then about this motion?
20          MR. WILLIAMS:  Well, that's the main thing that I
21   wanted to say --
22          THE COURT:  All right.
23          MR. WILLIAMS:  -- that it violates the Bankruptcy
24   Code.  It also violates the bankruptcy rule, and I don't see
25   how you going to make a judgment on something that is -- and

1  fraud on top of that because the city never filed for it.

2  The citizens never filed for it.  So I mean that's fraud.

3  Kevyn Orr is a citizen -- is an agent of the state.  He was

4  appointed by --

5          THE COURT:  Mr. Williams, hold it.

6          MR. WILLIAMS:  Well, you don't want me to --

7          THE COURT:  Mr. Williams --

8          MR. WILLIAMS:  I can't speak?

9          THE COURT:  Mr. Williams, stop.  You're going back

10  into the area that you were in before where I tried to cut

11  you off because it has nothing to do with this particular

12  motion that we're hearing today.

13          MR. WILLIAMS:  Okay.

14          THE COURT:  You've got the same arguments you're

15  making on appeal to the District Court, I'm sure, and you've

16  made --

17          MR. WILLIAMS:  No.  It's a little different.

18          THE COURT:  You've made many of these arguments to

19  me in the form of a motion -- or two motions, I think, for

20  reconsideration of the order confirming plan, and I denied

21  those motions.  Your recourse at this point if you're unhappy

22  with the confirmation of the plan is -- if you've got that

23  appeal still pending in the District Court, that's your

24  recourse, your place to go, not this Court.  This Court is

25  not going to revisit issues about whether there's properly a

1   confirmed plan or the confirmed plan in this case is going to

2   be changed.

3        Now, today we're dealing with one thing only, this

4   motion that's before me today, and as I understand it,

5   your -- the only argument you've made today here is that

6   notice -- you seem to be saying that notice of this motion

7   that's before me today should have been published in the

8   newspaper and not noticed just in the way that it was done in

9   this case, and I must reject that argument.  There's nothing

10   in Section 923 or Federal Bankruptcy Rule 2002(f) or 2002

11   generally --

12        MR. WILLIAMS:  What?

13        THE COURT:  -- that requires publication in any

14   newspaper of anything, any notice having to do with this

15   motion.  Section 923 of the Bankruptcy Code, 28 U.S. Code

16   923, requires that notice of the commencement of a Chapter 9

17   case, notice of an order for relief under Chapter 9, and

18   notice of dismissal of the case, if that happens, under

19   Chapter 9 shall be published in newspapers, and it gives us

20   rules for that.  This motion is none of those things, so

21   there's nothing in the law that requires this -- anything

22   having to do with this motion today that's before me today to

23   be published in the newspaper.

24        MR. WILLIAMS:  Well --

25        THE COURT:  Now, that's it.  We're done.  Have a

1   seat.

2           MR. WILLIAMS:  What about 105 and 502?

3           THE COURT:  Mr. Williams --

4           MR. WILLIAMS:  Don't it stem from bankruptcy?

5           THE COURT:  Mr. Williams --  Mr. Williams --

6           MR. WILLIAMS:  Don't it stem from the eighth amended

7   plan?

8           THE COURT:  -- you're done.

9           MR. WILLIAMS:  Okay.  I just want it on the record.

10          THE COURT:  You're done for today.  Your objections

11  are overruled.  Have a seat.  Who wants to speak next?

12  Anyone?

13          MS. HARRIS:  Good afternoon, your Honor.  My name is

14  Dorothea Harris.  How are you?

15          THE COURT:  Good.  Thank you.  Ms. Harris, what

16  would you like to say?

17          MS. HARRIS:  Okay.  We won a case regarding a

18  settlement, and I don't know if this is the right class, but

19  we won a settlement with Judge Doyle O'Connor, and we were

20  told they put a stay on it.  Judge Rhodes put a stay on that

21  regarding our 13th checks and our annuity accounts.  And I

22  wanted to find out because you might have with this reserve

23  account money left over after you pay the claims, if that can

24  be addressed again in this courtroom that we did win in, as I

25  say, Judge Doyle O'Connor's courtroom, and Judge Rhodes put a

1    stay on it.  And if money is left over because I think you're

2    going to have like -- you're going to have maybe close to

3    $500 million left over once you pay these claims, could it be

4    possible for them to address our 13th checks that we did win?

5    Wayne County, they won in the Michigan Supreme Court

6    regarding that.  It was just a -- I just wanted to ask.

7              THE COURT:  Well, thank you, Ms. Harris.  There

8    appears to be no possibility that there will be, as you put

9    it, money left over or, for that matter, new B notes left

10   over after distribution of the new B notes that is required

11   under the confirmed plan to creditors holding allowed claims

12   in Class 14 under the confirmed plan.  Quite the contrary.

13   The order -- the opinion of the Court by Judge Rhodes that --

14   the published written opinion estimated that recovery of

15   about 13 percent or 13 cents on the dollar for allowed claims

16   in Class 14.  There's nothing to suggest that the class of

17   allowed claims in Class 14, as it ultimately is comprised, is

18   going to be less than the $20.6 million in total value of new

19   B notes that are available for pro rata distribution to Class

20   14 allowed claims under the confirmed plan.  In fact, the

21   city recorded in their motion that's before me today, Docket

22   9351, page 8, note 5 -- footnote 5, that there's already as

23   of March 3rd, the date of the motion, allowed Class 14 claims

24   totaling roughly $28.2 million.  That exceeds alone the total

25   amount, the value of new B notes that are available under the

1 confirmed plan for Class 14, so there certainly won't be any

2 new B notes left over, as you put it, after Class 14 allowed

3 claims are all paid what they're entitled to under the

4 confirmed plan. I don't know if that fully answers your

5 question, but that's all I have to say about that. Anything

6 else you wanted to say today?

7         MS. HARRIS: No. Thank you, your Honor.

8         THE COURT: Thank you, ma'am. All right. Anyone

9 else want to say anything? By the way, Mr. Ellman, if you

10 wanted to add anything to anything I've said to Mr. Miller or

11 Ms. Harris -- I didn't give you a chance. Do you want to say

12 anything further about them, what they've said?

13         MR. ELLMAN: No, your Honor. I think you have it

14 exactly correct, and I have nothing to add. Thank you.

15         THE COURT: All right. I don't mean to leave you

16 out of this discussion. All right. Ma'am, you are?

17         MS. PICKETT: Hi. Good afternoon. My name is

18 Janice Pickett, and I had a different agenda set to talk

19 about today, but now that I'm here, I'm hearing about this

20 Class 14, so I have a question regarding it. If it was part

21 of the bankruptcy, why is there a distinction now between the

22 classes that was all grouped together within the bankruptcy?

23 Why is there separation between them to where the B notes are

24 considered making Class 14 somewhat whole? And my general

25 question also is why isn't there some consideration for Class

1   10, 11, and 12?  So if I could just get an --

2          THE COURT:  Well, I'm not sure I quite understand

3   your --

4          MS. PICKETT:  Well, there's various --

5          THE COURT:  Excuse me.

6          MS. PICKETT:  -- classes within the bankruptcy.

7          THE COURT:  Excuse me.  Excuse me.

8          MS. PICKETT:  Uh-huh.

9          THE COURT:  I'm not sure I quite understand your

10  first point.  There were 17, I believe, classes, different

11  classes --

12         MS. PICKETT:  Right.  Okay.

13         THE COURT:  -- under the plan --

14         MS. PICKETT:  Um-hmm.

15         THE COURT:  -- groupings of creditors who were

16  treated -- each class was treated a certain way.  Class 14,

17  which is all the current motion we're hearing -- I'm hearing

18  today deals with, is other allowed unsecured claims, and

19  it's -- it has a specific definition of what types of claims

20  are in it and which are not.  And you mentioned Class 10.

21  This motion that's before me today has nothing whatsoever to

22  do with Class 10.

23         MS. PICKETT:  I understand.

24         THE COURT:  So I'm not sure I understand your first

25  point, but the plan from the very beginning and as confirmed

1   has -- I think it's 17 classes --

2          MR. ELLMAN:  Correct.

3          MS. PICKETT:  Okay.

4          THE COURT:  -- of claims of which this motion today

5   deals only with one, Class 14.

6          MS. PICKETT:  Okay.

7          THE COURT:  Did you want to say anything else now?

8          MS. PICKETT:  Well, like I was saying, I wasn't

9   sure.  I thought it was pertaining to everything that

10  involved the bankruptcy until I get here.  Now you guys are

11  speaking on Class 14, so --

12         THE COURT:  No.  Today's motion has no effect on any

13  class except Class 14.

14         MS. PICKETT:  Exactly.  That's what I'm saying.

15         THE COURT:  All right.

16         MS. PICKETT:  I just got that understanding since

17  I've been here, so I was just wondering why was it just

18  particularly one?  Was it because it was unsecured claims?

19         THE COURT:  Well, the reason for the motion today,

20  as explained by the city, is because the confirmed plan

21  requires that -- with respect to this class certainly, 14,

22  that there be established as soon as practicable a disputed

23  and unliquidated claim reserve, and so to establish such a

24  reserve, as required by the confirmed plan, the total amount

25  of the reserve has to be determined, and the rules -- some

1    rules related to that reserve have to be determined, so the

2    city filed a motion proposing an amount, a total amount of

3    reserve, and some rules regarding the reserve and asked the

4    Court to approve them, and so that's what this motion today

5    is about.  And it's really part of the city trying to

6    implement the confirmed plan, but this motion at least

7    relates only to Class 14.  I don't know if that answers your

8    question, but anything else you wanted to say?

9            MS. PICKETT:  No.  That's all.  Thank you.

10           THE COURT:  Mr. Ellman, did you want to add anything

11   here now?

12           MR. ELLMAN:  Not directly to that, your Honor, but

13   I've been sitting here trying to get information about Ms.

14   Hill's claim that you asked about earlier, and so we were

15   able to have someone pull that proof of claim, and that's

16   proof of claim Number --

17           THE COURT:  By Wanda Jan Hill?

18           MR. ELLMAN:  Yes, exactly.

19           THE COURT:  Yes.  Go ahead.

20           MR. ELLMAN:  And the question you had posed to me

21   was what kind of claim it was, and it's Claim Number 1851,

22   and it is filed for -- and the quote is "present and future

23   healthcare costs," $430 monthly, so that appears to me to be

24   a healthcare claim, which would be in Class 12, and not a

25   claim that would be in Class 14, and so I just wanted to let

1    the Court know that.  I don't have anything further to add on
2    the most recent colloquy the Court had.
3              THE COURT:  All right.  Thank you.  Who would like
4    to speak next?  Anyone?
5              MR. ALEEM:  Good afternoon, your Honor.
6              THE COURT:  Good afternoon, sir.  You are?
7              MR. ALEEM:  Hassan Aleem.  And one of the things
8    that I see -- one of the things by myself and others not
9    receiving the notice, we were left out of the discussion of
10   the plan and for those post-employment benefits and other
11   pension benefits because I read in one of Jones Day documents
12   that the money -- they have money set aside for the pension,
13   and they're still negotiating with the pensions -- I mean not
14   the pension but the unions.  And as pensioners, we're not
15   part of that negotiation.  They're only negotiation for their
16   members, and we're no longer members of unions, and many of
17   us -- many of us City of Detroit employees, pensioners, have
18   never been in unions.  They have union employees and nonunion
19   employees mainly in supervision, but we don't -- like myself,
20   I'm here about some of the money.  I've never -- they've
21   taken money out of my check.  I've never received how they
22   calculated it, come up with anything, so I would think that
23   this was part of it.  They're negotiating with other people,
24   and I have a claim that I'm not able to find out how much
25   money they are taking, why they're taking it, where they got

1    it from, anything.  And it's almost like it's ambush.  We
2    don't know because we weren't given the information that the
3    other people have to even disagree with it.  It appears that
4    Class 14 has been set up as we go as, you know, a work in
5    progress.  And they said, well, no, you were bound by the
6    confirmation plan, which we never voted on, so we're not
7    bound by that.

8         And the other thing is it's interesting that we're
9    here because now we see that we don't get the notices.  They
10   determine, meaning the city, Jones Day determine who they're
11   going to give a notice to, and obviously if you don't have an
12   attorney, you're not going to get a notice.  And one way it
13   came up is some lady wrote the Court, wrote the judge, which
14   I'm just assuming it was you, and she was given a claim or
15   the file, and that's how we became aware of it.

16        Now, how did this person get the special treatment
17   but we don't get any treatment?  We're not aware of anything.
18   We're in the blind, which is an ambush.  They're not going to
19   negotiate with us.  That's obvious.  But we're entitled to
20   it.  We're entitled to know how the Class 14 come about, and
21   they specifically said -- I just don't have it with me; I
22   didn't know I needed it -- that they have set aside money for
23   the pensioners, so they're only negotiating with certain
24   pensioners whether they're fire-fighters, whether they're
25   AFSCME, they're the police, but we're pensioners, and we're

1   left off, and they're not -- it's not the same thing.  And

2   that's what we hear, and that's what we're objecting to, the

3   fact that we were not notified.  We're not aware of it, and,

4   you know -- and we knew we'd have a better defense to put

5   forward to the Court.  We'll have time -- and I believe

6   that's what their game is all about, not allowing us an

7   opportunity to exercise our grievances or just disagreement.

8   Jones Day -- this is something that's going to affect us for

9   the rest of our lives.  They just move on to the next case.

10  That's very simple.  And most of us here it's about a

11  clawback where somebody takes your money for no reason.  They

12  claim they lost money, which we know better.  We know they're

13  being disingenuous just flat out because the stock market has

14  went up.  If this money was invested in the stock market and

15  it had a historic five-year run, then there was no money

16  lost.  There's no money lost, so they need to explain how

17  these are the only people, and they weren't qualified.  They

18  weren't any kind of actuaries.  They didn't take an exam.  If

19  they could come into this Court, don't have to take the same

20  exam if they went to the Federal Guaranty Pension Corporation

21  they would have to take before they would be allowed to

22  testify, so Judge Rhodes said they didn't have any expert.

23  We didn't have any expert testimony from Buckfire or Jones

24  Day, so all that's hearsay.  That's hearsay.  Most of us

25  didn't know that at the time.  They are peddling theirself

1    off as expert actuaries.  That's the claim, the pension was

2    underfunded.  That's far from the truth.

3            THE COURT:  Mr. Aleem, you need to -- you need to

4    shorten it up a bit.  We've got to let other people talk.

5            MR. ALEEM:  Okay.  Thank you.

6            THE COURT:  Go ahead.  Finish up briefly if you have

7    anything that you want to --

8            MR. ALEEM:  Okay.  But that's the thing, and that's

9    what we're here for, and we feel -- I know I do and other

10   people that I've talked to, but they can speak for themselves,

11   that we need to see what these negotiations are about.  How

12   they're going to take over $300,000 from me over my lifetime

13   if I live another 30 years, and I'm not supposed to know how

14   they figured it out, take their word for it.  Thank you very

15   much.

16           THE COURT:  All right.  Thank you.  Mr. Ellman, did

17   you want to say anything?  Just a point?

18           MR. ELLMAN:  I don't think I have a lot to say, your

19   Honor.  I would point out again that we did give notice.  I

20   think a lot of this is a notice issue that's been raised by

21   parties who have pension-related claims, which is what you

22   just heard about, and we did not need to nor did we serve

23   notice on all the pension holders of this motion.  It

24   certainly was available on the docket and available to anyone

25   who sought notice in the case, but I think that's part of the

1  confusion.  Again, this is not a motion that's about pensions

2  or Class 10, 11, or 12.

3          THE COURT:  Does Mr. Aleem have a claim in Class 14,

4  allowed or disputed or otherwise?

5          MR. ELLMAN:  Not to my knowledge.  Certainly his

6  filing is about pension.  It sounds like he's talking about

7  maybe ASF recoupment, which is a different issue.  Those are

8  all pension-related matters.  His filing is about that, so,

9  as far as I'm aware, that's what his concern is about.

10         THE COURT:  All right.  All right.  Well, thank you.

11 Thank you, Mr. Aleem.  To the extent Mr. Aleem's remarks can

12 be construed as objections on any ground to the motion that's

13 presently before me today for hearing, those objections are

14 overruled.  I didn't hear anything in what Mr. Aleem said

15 that had anything to do with the merits or the issue of

16 whether or not or to what extent the Court should grant or

17 deny the motion that's before me today.  I did hear lots of

18 complaints and issues raised in Mr. Aleem's remarks that have

19 to do with -- perhaps with whether or not the plan that was

20 confirmed by this Court through Judge Rhodes back in November

21 and which became effective on December 10, 2014, in this case

22 should have been confirmed or not, and that is, of course, a

23 matter that's final as far as this Court is concerned subject

24 only to the outcome of pending appeals, which appeals are

25 currently pending in the U.S. District Court from the order

1    confirming the plan, and that is -- I believe Mr. Aleem is

2    one of the parties with a pending appeal in the District

3    Court.  Those issues all really have to do with those things

4    and nothing to do, in my view, with whether or not the Court

5    should grant the motion that's before me today, which is

6    limited only to this -- issues regarding this reserve for

7    disputed and unliquidated claims that would fit into Class

8    14, none of which -- Class 14, none of which the relief would

9    have any effect on Mr. Aleem.  So, ma'am, you are?

10            MR. DARRAH:  I'm Cindy Darrah.

11            THE COURT:  I'm sorry.  Say it again.

12            MR. DARRAH:  Cindy Darrah.

13            THE COURT:  D-a -- how do you spell it?

14            MR. DARRAH:  D-a-r-r-a-h.

15            THE COURT:  All right.  Thank you.  Ms. Darrah, what

16   would you like to say?

17            MR. DARRAH:  Yeah.  I have a FOIA that I gave to the

18   retirement board today that I'd like entered into the record

19   if you can or I can file it downstairs if you want on 17, but

20   I had asked you --

21            THE COURT:  A FOIA?  You mean a Freedom of

22   Information Act request of some sort?

23            MR. DARRAH:  Pardon?

24            THE COURT:  What --

25            MR. DARRAH:  Well, I had asked before the Court, but

1    they thought it was frivolous when I asked for names of

2    people who had to do with the pension money and investments,

3    and so I went to the pension board meeting today and gave

4    them a FOIA request, which I've got a kind of short --

5              THE COURT:  By FOIA, you mean Freedom of Information

6    Act request of some sort?

7              MR. DARRAH:  Pardon?

8              THE COURT:  Do you mean a Freedom of Information --

9              MR. DARRAH:  Well, I just want -- I want that in --

10             THE COURT:  Excuse me.

11             MS. DARRAH:  Yeah.

12             THE COURT:  Do you mean a Freedom of Information Act

13   request of some sort?

14             MR. DARRAH:  Yeah.

15             THE COURT:  That's what you mean?

16             MR. DARRAH:  To the pension --

17             THE COURT:  What does that have to do with this

18   hearing today, ma'am?

19             MR. DARRAH:  Well, because it has to do with --

20   well, first of all, getting back to where I wanted to start

21   was where is the city going to get the money to fund this

22   reserve fund if we -- do we have to borrow a billion dollars

23   and then pay interest on that billion because a billion, I

24   think, is more than our annual budget, so I just wondered are

25   they selling these B notes to set up the reserve fund or just

1  how is that going about?  And so that's one of my questions.

2  But I want to object to the plan.  I feel that they've seized

3  my and other people's pension illegally violating the Fourth

4  Amendment, and we were not debtors.  They didn't -- we had no

5  warrant.  Jones Day claims that we had a hearing, that we had

6  ample due process, which we did not, you know.  The first

7  time we spoke to Rhodes was before -- at the very beginning.

8  Anybody who wanted to come could speak to him for two, three,

9  five minutes.  I can't remember.  Then we had July 15th,

10  which we could come and speak, and that was not even given a

11  docket number in the court record, and there was -- it was

12  just like here only -- the only difference here today is we

13  have this attorney that once in awhile will come up and argue

14  the other side, but on those occasions there was nothing.

15  Then I -- Jones Day claimed that I had my due process, but,

16  again, you had to apply to the Court to be allowed to be --

17  participate in the confirmation hearing, which I did and was

18  turned down, and so I and others -- many people didn't get a

19  chance, but the thing that I -- I started doing the math, and

20  even if you allowed that it was an illegal search and seizure

21  and taking our property without a court trial and just

22  through mediation where we had -- the general retirees had

23  appointed representatives that were appointed by the Court --

24  Shirley Lightsey, I think, was one of them, and she used to

25  be in the Water Department as a supervisor.  Well, the

1   supervisors -- the appointees -- the political appointees,

2   administrators of departments and the City Council, those

3   people, they don't work 30 years generally.  Well, the

4   supervisors might, but they are the ones that make more

5   because I used to negotiate for Motor City Seasonal Workers

6   Union.  It was the recreation and zoo part-time workers.  And

7   when they would go to negotiate, we finally affiliated with

8   AFSCME because I couldn't -- I got tired of it.  I wouldn't

9   get much help.  So their contracts were always percentage, so

10   the, you know, percentage of a big amount gets bigger, and it

11   spreads out to different -- so you get this income inequality

12   that grows over the years, so that's what -- those annuities

13   that were capped -- now, I don't know how much Shirley

14   Lightsey had in the annuity, but some of the -- those are the

15   things that if you're an appointee or you're on the City

16   Council, you -- it's to your advantage to let those annuities

17   grow and pay.  See, they pay --

18           THE COURT:  Ms. Darrah --

19           MR. DARRAH:  -- .049 percent --

20           THE COURT:  Ms. Darrah -- Ms. Darrah --

21           MR. DARRAH:  -- bigger --

22           THE COURT:  Ms. Darrah, I have to interrupt.

23           MR. DARRAH:  Yeah.

24           THE COURT:  I have to interrupt you.

25           MR. DARRAH:  Yeah.

1          THE COURT:  The only thing before the Court today

2     for hearing --

3          MR. DARRAH:  Yeah.

4          THE COURT:  -- is this motion that we've been

5     discussing of the city --

6          MR. DARRAH:  Okay.  But what I'm --

7          THE COURT:  Excuse me.

8          MR. DARRAH:  Yeah.  Oh, I'm sorry.

9          THE COURT:  Don't interrupt me.

10         MR. DARRAH:  Yeah.

11         THE COURT:  This motion in which the city seeks

12    court approval to establish the total amount of a reserve for

13    Class 14 claims that are currently disputed and unliquidated

14    and to set some rules relating to that reserve.  All this has

15    to do with Class 14 and the reserve issues relating to the

16    new B notes that have already been issued by the city

17    after -- several months ago after confirmation of the plan,

18    and it really has only to do with facilitating the city's

19    ultimate ability to distribute to holders of allowed Class 14

20    claims their pro rata shares of the new B notes.

21         Now, much of what you've been talking about sounds

22    like simply unhappiness with -- by you with the confirmed

23    plan, and I certainly can understand there's a lot of people

24    that are not happy with the confirmed plan in this case, but

25    that's --

1          MR. DARRAH:  Well, it's not fair.  Yeah.

2          THE COURT:  That's not before the Court today.

3    That's not relevant to the issue before the Court today in

4    this hearing, and so I would ask you, please, to stick to

5    that issue --

6          MR. DARRAH:  Okay.

7          THE COURT:  -- the motion that's before me today.

8    Is there anything else you'd like to say in particular about

9    that motion?

10         MR. DARRAH:  Well, that motion also -- I looked at

11   the list, and you've got Detroit Economic Growth Commission

12   Corporation, and that's part of DDA, and they have the same

13   office and the same exact people on their staff.  And I

14   object to the idea that they're in our city budget.  They get

15   money out of the city budget.  They take all the tax money

16   from the Wayne County and from the city on the property tax

17   and keep it in their little Downtown Development Authority,

18   which bleeds the fund -- the general fund for the city and

19   for Wayne County, and so that's the problem I have is why are

20   we paying these people that are actually part of the cause of

21   the financial problem?  In China the government wouldn't

22   allow this to happen to their cities, but they did tell them

23   you got to start taking back all those tax breaks because

24   you're all in debt, you know.  The city is trying to attract

25   investments, and it's not -- it started way back when Cockrel

1   was on the council and he fought Mary Young, who wanted to

2   give a tax break to a riverfront property there over -- that

3   East, you know, Fisher, which is a beautiful building, but

4   that doesn't --

5          THE COURT:  Ms. Darrah, I'm going to have to ask you

6   to wrap it up now, please.

7          MR. DARRAH:  Okay.  All right.  So --

8          THE COURT:  We've got to let others talk today.

9          MR. DARRAH:  And the other thing I want to bring up,

10  though, is the Court has an obligation to find the fraud, and

11  the Court has an obligation to make sure that we really get

12  out of but not going into another bankruptcy, and this plan

13  has taken our sources of income away more than it -- both

14  under Kevyn Orr and -- the only thing you're going to get an

15  increase is the parking tickets, but they sold -- you know,

16  they're going to have to -- we have to pay the state back to

17  tear down Joe Louis Arena and then build an arena where

18  they -- under Kevyn Orr, which I consider that's part of the

19  plan of adjustment.  He got us to backdate a new lease that

20  saved Ilitch two or three million dollars a year.  They used

21  to pay ten percent at --

22         THE COURT:  Ms. Darrah, I don't think you --

23         MR. DARRAH:  Yeah.

24         THE COURT:  You're not listening to me.

25         MR. DARRAH:  Okay.

1          THE COURT:  You got to wrap it up.  Please conclude.

2          MR. DARRAH:  Well, okay.  Well, I object, and I want

3     it on record, for the illegal search and seizure and the lack

4     of due process.  This is the first time that we've even

5     talked before where there's a lawyer that can -- on the other

6     side that can object, and I object to the fact that what

7     happened that we owe all of this money -- I looked at the

8     list.  EEOC, the Department of -- all these --

9          THE COURT:  You're not wrapping it up, ma'am.  You

10    got to wrap it up.

11         MR. DARRAH:  Okay.

12         THE COURT:  Ten seconds.

13         MR. DARRAH:  Well, how do we know that these debts

14    are even right?  Is this part of the mediation that they

15    settle this stuff in secret, or do we see who really deserves

16    that money because I know the Economic Growth Corporation,

17    they don't deserve a damn dime from us, you know, and so they

18    lent us money for the People Mover.  Who did that benefit?

19    That benefitted them, you know.

20         THE COURT:  All right.

21         MR. DARRAH:  It's just a --

22         THE COURT:  I've got to stop you, Ms. Darrah.  Thank

23    you.  I will say in response to your remarks a couple of

24    things.  One is that this motion, as the city has made clear

25    and is clear to me in this motion and the proposed order

1   that's before me today, the city does not seek to establish
2   as allowed anybody's claim or disallowed as anybody's claim
3   or set the amount of any allowed claim.  That's not part of
4   today's motion, and so to the extent you're saying you object
5   to somebody -- some other creditor or claimed creditor
6   getting paid, this motion has nothing to do with that.

7          I will also say that nothing you have said, ma'am --
8   while it's interesting, none of what you said is a basis -- a
9   valid basis for objecting to this motion that's before me
10  today, in my view, and so your written objection and your
11  objections stated today, if that's what they are, to this
12  motion are overruled.  Thank you.

13         Mr. Ellman, is there anything you wanted to say in
14  response to anything Ms. Darrah has said?

15         MR. ELLMAN:  No, your Honor.

16         THE COURT:  All right.  Thank you.  Who would like
17  to speak next?

18         MR. DARRAH:  So we can't get an answer from them?

19         THE COURT:  We're finished, ma'am.

20         MR. DARRAH:  Okay.

21         THE COURT:  Who would like to speak next?  Anyone?

22         MS. MAGEE:  Yeah, I would.

23         MS. DARRAH:  So how do we -- do you think --

24         THE COURT:  Sit down, please, ma'am.

25         MS. DARRAH:  -- it's proper to close --

1          THE COURT:  Ma'am --

2          MS. DARRAH:  -- this out before these appeals are

3    settled across the street?

4          THE COURT:  Ma'am -- you're done, ma'am.

5          MS. DARRAH:  Is that your prerogative?

6          THE COURT:  You're done.  Please don't make me have

7    you removed from the courtroom.

8          MS. DARRAH:  I'm just asking you.

9          THE COURT:  Please leave the podium.

10         MS. DARRAH:  Can you answer that question?  Should

11   this be done before the -- in other words, should the reserve

12   set up before you've resolved the complaints across the

13   street because --

14         THE COURT:  You mean the appeals?

15         MS. DARRAH:  -- you may have to change the plan?

16         THE COURT:  You mean the appeals?

17         MS. DARRAH:  Huh?

18         THE COURT:  You mean the appeals?

19         MS. DARRAH:  Yeah.

20         THE COURT:  Yeah.  The answer to that is yes.

21         MS. DARRAH:  Why?

22         THE COURT:  Yes.  There's no stay of the confirmed

23   plan pending appeal.  That's the short answer.  Now, please

24   leave the podium, ma'am.  All right.  Thank you.  Ma'am, you

25   are?

1          MS. MAGEE:  My name is Vera Magee, and I'm a

2     pensioner from City of Detroit.

3          THE COURT:  I'm sorry.  Your name again, please?

4          MS. MAGEE:  My name is Vera, V-e-r-a  Last name is

5     Magee, M as in Mary, A as in apple, G as in George, E as in

6     Edward, E as in Edward.  And I am a pensioner from the City

7     of Detroit.

8          THE COURT:  All right.  Thank you.  Go ahead, ma'am.

9          MS. MAGEE:  Okay.  I'm a victim of the clawback,

10    which I'm very upset about.  Since the city is still moving

11    forward with this plan of adjustment, I'm asking that the

12    pensioners should be included in the reserve amounts for

13    certain disputed unliquidated unsecured claims in connection

14    with the distributions to be made under the eighth amended

15    plan.  The whole process was flawed to begin with because of

16    the election process, but obviously the bankruptcy has gone

17    forward anyway, so according to, I guess, the city, there was

18    968 million -- $968 million set aside for liquidated amounts.

19    So far the amount of liquidated amounts has come to nine

20    million, 670 thousand, 997 thousand $152 and five cents, so

21    that leaves about a million dollars.  Where does that money

22    go, and can the pensioners be included in that?  That's all I

23    have to say.

24         THE COURT:  All right.  Well, thank you.  The motion

25    today has to do with a reserve that's established for

1    purposes of permitting the city -- allowing the city to go

2    forward with implementing the part of the plan that involves

3    distribution to the holders of allowed claims in Class 14 of

4    the confirmed plan of their pro rata share of new B notes.

5    Pensioners are not included in Class 14 of the confirmed

6    plan, and under the confirmed plan, therefore, they have no

7    right and cannot share in the distribution of new B notes

8    that is to be made for the benefit of and to allowed

9    claimholders in Class 14 of the plan.  The reserve amount,

10   while the number one billion and 900-plus million dollars

11   that's been mentioned in today's hearing by the city's

12   counsel regarding the amounts that go into in total in this

13   reserve that's being discussed, that's not -- those numbers

14   are not to suggest that there's some 900 million or $1

15   billion out there that's going to be paid someday to any

16   creditors in this case, particularly to Class 14 creditors.

17   Again, I want to reiterate that the situation is that Class

18   14 members who have allowed claims under the confirmed plan

19   are going to get pro rata shares only of a total amount of

20   $20.6 million worth of new B notes that have been issued by

21   the city under the confirmed plan, and the purpose of

22   establishing a reserve in this case, roughly $1 billion, is

23   simply to help the city calculate how much of those new B

24   notes the city has to hold back from distribution to -- and

25   not distribute yet to the allowed members of Class 14 because

1   there are other members who may eventually have allowed

2   claims in Class 14, and to give a proper pro rata share --

3   that is, equal percentage share -- to everyone, dividend

4   percentage share to everyone, a reserve like this is

5   necessary.  The alternative under these circumstances would

6   be for the city to hold off and not make any distribution of

7   any new B notes in any amount to any member who has an

8   allowed claim in Class 14 until all claims in Class 14 have

9   been resolved, allowed, disallowed, liquidated, resolved in

10  one way or another, a process that is likely to take some

11  time, and this is designed in the plan.  This is built into

12  the confirmed plan.  This process regarding this reserve is

13  simply to allow the city to make what amounts to a partial

14  distribution to holders of allowed Class 14 claims now, but

15  the short answer to your question, Ms. Magee, whether

16  pensioners such as yourself can be -- can share in the

17  amounts that are going to be distributed in new B notes to

18  members of Class 14 who have allowed claims, is no.  If you

19  have a separate claim in Class 14 and it is allowed as a

20  Class 14 claim, then you will share in a pro rata

21  distribution of new B notes under that class but otherwise

22  not, and that's the way the new -- or the amended -- or the

23  confirmed plan, rather, is what it says requires.  Thank you,

24  ma'am.

25          MS. MAGEE:  Okay.

1          THE COURT:  Did you want to add anything,

2    Mr. Ellman?

3          MR. ELLMAN:  I do not, your Honor.  Thank you.

4          THE COURT:  Anyone like to speak further?

5          MS. PICKETT:  Good afternoon.

6          THE COURT:  Good afternoon, ma'am.  You are?

7          MS. PICKETT:  Debra Pickett.

8          THE COURT:  Would you spell your last name for me?

9          MS. PICKETT:  P as in Paul i-c-k-e-t-t.

10         THE COURT:  All right.  Thank you.  Ms. Pickett, go

11   ahead.  What would you like to say?

12         MS. PICKETT:  I got a question is I keep hearing

13   about Class 14.  My question is to the attorney representing

14   Jones Day.  How did they come about this Class 14, and when

15   did they notify the people to file for impaired pension or

16   whatever, whatever the group is?  How did they establish the

17   list?  And me being a retiree, my pension has been impaired.

18   The city says I got to pay back $34,000, so my question is to

19   the attorney.  How did they come about the class?  Was

20   certain people notified to join this class since that's all

21   they're talking about is Class 14 because I feel that I'm

22   impaired also?

23         THE COURT:  Well, thank you.  To the extent you're

24   asking how is it that the creditors get grouped in Class 14,

25   in part it's a function of the fact that there was a deadline

set for everyone who had a claim in this case to file a proof
of claim, and then after all those claims were filed -- and
there were several thousand of them -- the plan was -- a plan
was proposed, and several amended versions of the plan were
filed. Ultimately, the eighth amended plan was confirmed
last November by my predecessor judge in this case, and that
plan, like any other Chapter 9 plan and like many Chapter 11
plans, reorganization plans, divides creditors into classes,
classes of similar or similarly situated claims, and then
describes the treatment of each of the classes. And Class 14
happens to be one of the classes. The pension claims are
other different classes, and they received a treatment
different and the city probably would argue much better than
the treatment received by Class 14 claims. Now, that's all I
have to say about that, and we're not here today to have a
discussion about why did Jones Day and the city design the
plan the way they did and why did they group it the way they
did instead of some other way. I mean that's really not up
for discussion today. The plan is confirmed, and it's final
subject only to whatever may happen on appeal -- in the
appeals of the confirmation. And what we're talking about
today with this motion is a matter -- this reserve account
designed to enable the city to continue moving forward in
implementing the confirmed plan, and it has to do only with
Class 14, of which it sounds like you're not a member of

1    Class 14.  Your claim is in a different class.  So,

2    Mr. Ellman, is there anything you want to add?

3              MR. ELLMAN:  No, your Honor.

4              THE COURT:   All right.  Thank you, Ms. Pickett.

5              MS. PICKETT:  But my question still is how did they

6    determine that class?  That's what I want to know.  Is it any

7    retirees in Class 14?  Is it any pensioners in Class 14?

8              THE COURT:  Well, I presume the answer to that

9    Mr. Ellman would give -- and he can speak to this -- the only

10   way someone would have a claim --

11             MS. PICKETT:  He can't speak to that?

12             THE COURT:  Excuse me.

13             MS. PICKETT:  He can't speak to that?

14             THE COURT:  Excuse me.  Don't interrupt me.  The

15   only way someone in Class -- who's a pensioner who has a

16   pension claim in this case would be in Class 14 is if they

17   had a claim of the type covered by Class 14, other unsecured

18   claims, in addition to their pension claim.  Then they might

19   potentially be in two classes, the pension claim class and

20   the Class 14.  Did you want to add anything, Mr. Ellman?

21             MR. ELLMAN:  I can briefly, your Honor.  We did -- I

22   was trying to find the date.  I don't remember it, but we did

23   file a motion for a bar date in this class, which was, as the

24   Court is aware, an opportunity for all creditors to file any

25   kind of claim they would like.  That was done, I believe,

1   toward the end of 2013.  I believe the bar date was in
2   February of 2014.  I could look those dates up, but roughly
3   speaking that's what we did.  Class 14 was established based
4   on the negotiations and determination of how to classify
5   claims.  Pension claims and retiree benefit claims are not in
6   Class 14.  Does not mean a retiree could not have had a claim
7   that would have been in that class for some other reason
8   based on some other relationship with the city.  If they did,
9   they had an opportunity to file that claim back at the
10  beginning of 2014.  I believe that answers the question.
11          THE COURT:  February 21, 2014, was the claim bar
12  date.
13          MR. ELLMAN:  Thank you.
14          THE COURT:  All right.  Thank you, Ms. Pickett.
15          MS. PICKETT:  You're welcome.
16          THE COURT:  Anyone else want to speak?
17          MR. JACKSON:  Excuse me.
18          THE COURT:  Yes, sir.  You are?
19          MR. JACKSON:  My name is Lou Davey Jackson, and I'm
20  classified in the liquidation amounts, Docket 9351.
21          THE COURT:  What is your last name?  I'm sorry.  I
22  missed it.
23          MR. JACKSON:  Jackson, J-a-c-k-s-o-n, Lou.
24          THE COURT:  All right.  Thank you.  Go ahead, Mr.
25  Jackson.

1           MR. JACKSON: Yes. I'm filed under the -- I'm

2    scheduled under the liquidation amounts on Docket 5351, and

3    what I want to note is, now, this claim was filed not really

4    by me, but it was claimed by the city. This is what I'm

5    thinking. And they asked me to file a claim myself. It's

6    about principals and interest on property, and I received

7    this notice. It say that the mortgage company should be

8    responsible, but I don't believe the mortgage company should

9    be responsible because the city let the State of Michigan

10    place liens on me before I even -- before I even bought a

11    home in the City of Detroit, and what -- my claim is about

12    titles, the title that I bought. I bought a home here in

13    2007, and the title that I bought here, when I received the

14    title, I had to pay a certain amount of money, which was

15    $3,707, which I have here. And the city allowed the bank to

16    come in, and most of the property that was -- most of the

17    property was under-appraised and everything, and I'm paying

18    interest. I'm paying more interest and more principal than

19    I'm really supposed to, and I can show you in my life. Each

20    year I paid since 2007, and it's close to $8,000 a year.

21           THE COURT: Mr. Jackson, you have filed a proof of

22    claim in the bankruptcy case, I believe.

23           MR. JACKSON: Yes.

24           THE COURT: And the amount is shown here as

25    $71,825.81. Is that right?

1          MR. JACKSON:  Yes.

2          THE COURT:  You're listed in Exhibit 6.1, the

3     schedule of liquidated amounts, for purposes of this reserve

4     motion that we're hearing today, so the full amount of your

5     claim is being included in the total of liquidated amount of

6     claims that the city uses to -- has used to calculate the

7     total reserve that they want the Court to approve, so it

8     doesn't look like you filed any objection to this motion.  Do

9     you have any objection to the motion that's before the Court

10    today, or is there anything you want to say about that

11    motion?

12         MR. JACKSON:  Yeah.  I wrote the Court, and I filed

13    an objection because the city had disapproved of it.  It

14    disapproved.  The city had disapproved of the amount, but,

15    now, in filing in this amount I have two -- in the Class 14 I

16    have, what, 3,764.19, and in the conventional claim I have

17    71,825.81, so really I have two claims that are filed.  They

18    only have listed one in the Class 14 adjustment.

19         THE COURT:  All right.  So the $71,000 one is in the

20    list.

21         MR. JACKSON:  Yes.

22         THE COURT:  What's the amount of the other one, you

23    say?

24         MR. JACKSON:  3,764.19.  They didn't list that one.

25         THE COURT:  All right.  Well, I'll just say this.

1    MR. JACKSON:  Yeah.  It's in the Class 14.

2    THE COURT:  Let me just say this.  Let me just say

3  this about that, Mr. Jackson.  If that claim was left out of

4  the list of liquidated claims in Schedule -- or Exhibit 6.1,

5  while they left in and did include the $71,000 claim for

6  purposes of calculating this reserve, the omission of a claim

7  in that amount, as small as that amount, would make

8  absolutely no difference in the total amount of the reserve

9  that the city is asking the Court to approve, the one

10  billion -- slightly more than one billion dollar reserve

11  amount, so if your objection is that your $3,000 -- $3,764

12  claim was left out of the list --

13    MR. JACKSON:  Yes.

14    THE COURT:  -- of schedule of liquidated amounts in

15  Exhibit 6.1 to the motion, there's absolutely no prejudice or

16  harm to you that will occur because of that.

17    MR. JACKSON:  Okay.

18    THE COURT:  And your claim being left out of that

19  list, if that's what happened -- and if I grant this motion

20  with that list as it is, it's not going to have any adverse

21  affect on your claim or either of your claims.

22    MR. JACKSON:  Okay.

23    THE COURT:  That's for another day.  If the city

24  objects to one or both of your claims, you'll have a chance

25  to respond to that objection, and we'll have a hearing

1  dealing with that particular issue, but that's not before the

2  Court today.

3       MR. JACKSON:  Okay.

4       THE COURT:  Do you understand?  I don't believe

5  anything the Court will do today on this motion will have any

6  adverse effect on the allowance ultimately of either of your

7  claims.  Do you agree, Mr. Ellman?

8       MR. ELLMAN:  Yes.  I was just going to add one

9  clarification, your Honor.  If you look at Schedule 6.1, you

10  should see no claims at all that are less than $25,000 --

11       THE COURT:  Oh, sure, yeah.  Convenience class,

12  yeah.

13       MR. ELLMAN:  -- because those would be in Class 15,

14  so --

15       THE COURT:  Yeah.

16       MR. ELLMAN:  -- the reason that that claim is not on

17  the list is because it is not in Class 14 and is not reserved

18  for in this class.

19       THE COURT:  Class 15 is the class that's called

20  convenience claims.  As I recall, Mr. Ellman --

21       MR. ELLMAN:  That's correct.

22       THE COURT:  -- that's for claims of $25,000 or less.

23       MR. ELLMAN:  That's correct.

24       THE COURT:  And those are going to be paid in cash,

25  not with new B notes.

1          MR. ELLMAN:  They'll be paid in cash at a 25-

2    percent -- --

3          THE COURT:  Right.

4          MR. ELLMAN:  -- rate, yes.

5          THE COURT:  But in cash --

6          MR. ELLMAN:  In cash.

7          THE COURT:  -- not with new B notes.

8          MR. ELLMAN:  And there's no reserve.  There's no pro

9    rata payment, so no reserve.

10         THE COURT:  Right.  Okay.

11         MR. ELLMAN:  We just pay those in cash.

12         THE COURT:  All right.  Thank you for that

13   clarification.

14         MR. ELLMAN:  Thank you.

15         THE COURT:  You know, I had forgotten about that.

16   You're right.  So, Mr. Jackson, is there anything else you

17   wanted to say today about this motion?

18         MR. JACKSON:  No, just that am I still listed in the

19   liquidation amounts?  I really don't know.  The people

20   that --

21         THE COURT:  Your $71,825.81 claim is listed in the

22   schedule of liquidated amounts in Exhibit 6.1 to the city's

23   motion if that's what you're asking me.

24         MR. JACKSON:  Is it approved?

25         THE COURT:  The claim is not being allowed or

1    disallowed or approved or disapproved by anything we do today

2    with this motion.  That's not what this motion is about.

3              MR. JACKSON:  Okay.  You just wanted to hear --

4              THE COURT:  Anything else you want to say about this

5    motion?

6              MR. JACKSON:  No.

7              THE COURT:  All right.  Thank you, Mr. Jackson.

8              MR. JACKSON:  Thank you.

9              THE COURT:  Anyone else want to speak?

10             MR. JOHNSON:  Yes, I do.  Yeah.  My name is Larry

11   Johnson, and under this Class 14 -- I retired from the city,

12   and I was wondering if some sort of way you could put a stay

13   or grant me some type of motion where I can get in on this

14   Class 14 settlement based on the fact that Jones Day didn't

15   give me enough information soon enough.  I wasn't able to get

16   my response in soon enough, and it would be based on the fact

17   that in the plan of adjustment on the ballots that they sent

18   out they sent out maybe three, 4,000 ballots that were

19   inaccurate, and that was made known, you know, throughout the

20   court through that other judge.  And what I'd like to do is

21   is that they said that what they were going to do is that

22   they were going to dismiss those old claims and that people

23   would not have to pay back anything, and they still -- I was

24   one of those people, and they're still taking money out of my

25   check, so I was wondering if I could get in on this Class 14

1    adjustment.

2          THE COURT:  Thank you, Mr. Johnson.  The answer --

3    the short answer to your question is that unless you have a

4    claim that fits within Class 14, you cannot get into Class

5    14, and if what you have is a pension claim, that's not Class

6    14, so the answer, I believe, to your question is no.  And

7    you mentioned a stay.  If you're asking for some sort of stay

8    of the order confirming plan, that's certainly denied.  Judge

9    Rhodes issued a detailed opinion and denied numerous motions

10   for stay pending appeal of the order confirming the plan

11   several months ago.  I think at least one creditor or one

12   group of creditors after I was assigned to the case asked me

13   to reconsider that -- I think that's right -- and I denied

14   that.  I'm not going to grant any stay under any

15   circumstances of the order confirming the plan, which is

16   currently on appeal in the District Court.  That doesn't

17   preclude anyone from asking the District Court to issue a

18   stay pending appeal if they have an appeal pending over

19   there, but this Court won't do that.  So, you know, unless

20   you have a claim that -- apart from your pension claim

21   that -- some separate claim that falls within the description

22   of Class 14 under the confirmed plan, you're not part of

23   Class 14.

24         MR. JOHNSON:  You mentioned the fact that there's a

25   chance that the pensions' claims can be in that Class 14.

1          THE COURT:  No, I didn't say that.  No.  Pension
2     claims are not in Class 14.
3          MR. JOHNSON:  Whether there's some claims that were
4     disputable that -- pension claims that may have -- wasn't
5     settled correctly where we can go over there and -- instead
6     of going to this other court and work it out in the Class 14.
7          THE COURT:  I'm not sure what you're saying, but
8     Class 14 is not -- does not include pension claims.
9     Mr. Ellman, did you want to add anything to or respond to
10    anything Mr. Johnson has said?
11         MR. ELLMAN:  I have nothing further to add, your
12    Honor.
13         THE COURT:  All right.  Thank you, Mr. Johnson.
14         MR. JOHNSON:  All right.
15         THE COURT:  Anyone else want to speak?
16         MS. DARRAH:  I have something to add to that.
17         THE COURT:  Sorry, ma'am.  You're done.  Who's next?
18         MS. DARRAH:  Okay.  Well, there's a case that Jones
19    Day took --
20         THE COURT:  Sorry, ma'am.  You're finished.  Sorry.
21    Don't talk.
22         MR. SPICER:  Good afternoon, your Honor.
23         THE COURT:  Just a minute.  Hold on.  Hold on.  Hold
24    on.
25         MR. SPICER:  Yes, sir.

1          THE COURT:  I'm sorry.  Your name is?

2          MR. SPICER:  Kim Spicer.

3          THE COURT:  Yes, sir.  Mr. Spicer.

4          MR. SPICER:  S-p-i-c-e-r.  I have no objection to

5     the motion, but I would like to add what everybody else said

6     that there does need to have a little better notification

7     process.  I've been coming down here, and I get letters after

8     the court date.  I have to come down, take off work and go to

9     the clerk.  And the other counsel sent stuff saying that the

10    cases are closed, and, you know, it's all kind of stuff going

11    on, but a little more timely fashion, I think, should be --

12    would be appreciated by everybody.  That's all I have to say.

13         THE COURT:  Well, all right.  Thank you.  I

14    certainly want to try to make sure that parties receive

15    notices -- required notices in this case on a timely basis,

16    for example, notices of hearings in which someone has either

17    filed a motion or responded to a motion timely and notices of

18    motions that the parties who are adversely affected by a

19    given motion or could be adversely affected get reasonable

20    and proper and timely notice of their opportunity to object,

21    and so I certainly want to do what I can to make sure that

22    parties in interest in this case do get timely and proper

23    notice that they're supposed to get under the law.  Now, did

24    you want to add anything, Mr. Ellman?

25         MR. SPICER:  Thank you, your Honor.

1    MR. ELLMAN:  Just briefly, to answer a question your

2  Honor had asked me earlier about notice of this hearing, in

3  the time I've had I've been able to figure out that the -- if

4  you look at Docket Number 9542, that is the certificate of

5  service for the notice of hearing.  It was mailed by first-

6  class mail, I believe, on March 27th, 2015.  I know Ms. Hill

7  had raised that question.  We had confirmed that it went to

8  her address.  As far as how long it takes to get in the mail

9  to someone, I guess that's outside of our control, but it was

10  timely mailed on that date, and there is a certificate of

11  service on the docket.

12    MS. HARRIS:  Excuse me, your Honor.  May I make

13  one -- have one minute?

14    THE COURT:  Just a moment.  Hold on.

15    MS. HARRIS:  Thank you.

16    THE COURT:  All right.  Thank you, Mr. Ellman.

17  Anyone who has not yet spoken want to say anything?  Yes.

18  You are?

19    MS. HERNANDEZ:  My name is Belinda Farhat then.  Now

20  I'm Belinda Hernandez.

21    THE COURT:  Yes.  Thank you.  Go ahead.

22    MS. HERNANDEZ:  I came today thinking that retirees

23  are included in this motion, and I came here to object

24  because I feel that I'm a creditor and Class 10 should be

25  included in Class 14 motion today.  And I just want to

1   express that because why is Class 10 being unfairly treated
2   and not being considered in this Class 14?  And I remember
3   and I know that you have explained that, Judge, but I still
4   feel that being a retiree, they're taking a lot of our money
5   and using it at our expense, you know, on our backs, and I
6   just want to make you feel that it is -- we are unfairly
7   treated at this point in time since the beginning of the
8   bankruptcy.  We are shouldering the debt of the city, which
9   is -- we have nothing to do with it.  And I believe that I
10  want to be considered for the set-aside money still beyond
11  what you said that this is not for Class 10 motion.  Thank
12  you.
13          THE COURT:  All right.  Well, thank you, ma'am.
14  I'll simply reiterate again that -- or say it a different
15  way, I suppose, that under the confirmed plan, which is
16  binding on all parties, the Court and all parties in
17  interest, including all the creditors in this case, Class 10
18  is not part of Class 14, and the members who -- the creditors
19  who have claims in Class 10 do not, because of that, have any
20  right to any part of the distribution that is allotted under
21  the confirmed plan for claims in Class 14, and so there's --
22  the Court is precluded by the terms of the confirmed plan and
23  by law, therefore, from granting the relief you just asked me
24  to grant.  And, of course, that type of relief anyway is not
25  properly before the Court today on the motion that's before

1    me today.  Is there anyone else who has --

2              MR. ROBINSON:  Yes.  I have a comment.

3              THE COURT:  -- not spoken yet who would like to say

4    something?

5              MR. ROBINSON:  Brief comment.  My name is Raphael

6    Robinson.  I've got a number of comments.  I don't appreciate

7    having to come down here for nothing.  I did receive this

8    communication late, and why was the communication sent in the

9    first place if that's the case?  I spent money to come down

10   here.  I lost money by coming down here.  But I don't

11   appreciate this reply.  The form requested -- the late form

12   requested -- that Jones requested and Darrah response are

13   attempted collateral attacks on the confirmation order and

14   communication of the plan.  This is not an -- I think we had

15   that right to protest or contest.

16             THE COURT:  You're referring to what the city said

17   in their reply to -- filed last Friday to your response to

18   this motion; right?

19             MR. ROBINSON:  Yes, page 9, one of it, and then I

20   wanted to know -- same question some of the others had, how

21   was Class 14 determined, and never got an answer on that.

22             THE COURT:  Anything else, Mr. Robinson?

23             MR. ROBINSON:  Then I was designated as a late

24   response, and I know that I got my paperwork in the same time

25   others did, so how was that determined also when they didn't

1   have any previous notification?  Those are questions.

2          THE COURT:  All right.  Well, thank you, Mr.

3   Robinson.  The objection that you filed is at Docket Number

4   9584 on the Court's docket.  That was filed on March 31,

5   2015.  The deadline, as stated in the notice, the amended or

6   corrected notice of this motion for responses to be filed and

7   objections to be filed to this motion was March 23, 2015, and

8   that's why the city says your response was late.  I will

9   not --

10          MR. ROBINSON:  What was that date again?

11          THE COURT:  I will not -- March 23, 2015.  Now, with

12   respect to your question about how did -- how was Class 14

13   created and how was that -- where did that come from

14   essentially, I've already spoken what I'm going to say to

15   that --

16          MR. ROBINSON:  I heard that, but --

17          THE COURT:  -- earlier, response to earlier

18   questions.

19          MR. ROBINSON:  -- we never got an answer.

20          THE COURT:  Excuse me.  Don't interrupt me, Mr.

21   Robinson.

22          MR. ROBINSON:  I'm not interrupting you.

23          THE COURT:  I have nothing further to add to what

24   I've already said.  This is a bit repetitive, and there's

25   nothing more the Court is going to say today about this, that

1    subject.  Mr. Ellman, did you want to say anything in

2    response to Mr. Robinson has said?

3              MR. ELLMAN:  Just in an effort to try to answer the

4    question again, I do think we've answered it, but all

5    creditors, retirees, everyone, got notice and an opportunity

6    to file a claim back in February 2014.  Class 14 was

7    determined based on what the plan had in it.  Again, notice

8    of the plan went to everyone, and that process is completed,

9    but that's how that was determined.  Thank you.

10             MR. ROBINSON:  Okay.  No other comments.

11             THE COURT:  All right.  Thank you, Mr. Robinson.

12   Anyone else who's not spoken yet want to speak, want to say

13   anything?  I hear nothing.  All right.  Mr. Ellman, I'm going

14   to grant this motion that's before me today.

15             MR. ELLMAN:  Thank you, your Honor.

16             THE COURT:  First of all, all of the written

17   objections that were filed, both ones filed on a timely basis

18   on or before March 23, 2015, and those filed on an untimely

19   basis after that response deadline, including the ones that

20   were filed yesterday, are -- all those objections, to the

21   extent they actually object to the motion, are overruled.

22   None of the objections filed and none of the objections, to

23   the extent they are actually objections to the motion that

24   were stated in oral comments today by various creditors,

25   constitute any valid ground for denying or modifying the

1    relief granted -- requested in this motion, and so I have

2    reviewed the motion and the basis for the motion and the

3    exhibits filed, including the city's reply filed last Friday

4    with respect to the motion, and I will grant the motion.  I

5    find it well-taken, and there's good cause to grant the

6    motion on the grounds alleged in the motion.  So, Mr. Ellman,

7    I'll ask you to prepare a revised order.  I think you said

8    you want to prepare a proposed revised order that takes

9    account of the -- into account the amended schedules that you

10    filed with your reply.

11          MR. ELLMAN:  And to refer to the overruling of the

12    objections to the extent not resolved, and then I know we

13    also have committed to filing the supplement by next week as

14    well.

15          THE COURT:  Yes.  So I'll ask you to prepare the

16    amended order.  I'll waive presentment of the amended or

17    revised order you're going prepare.  I'll review it when it

18    comes in.  You don't need to wait to submit that order to

19    file the supplement --

20          MR. ELLMAN:  Okay.

21          THE COURT:  -- or vice versa.  In other words,

22    submit the order as soon as possible.  You got to wait to

23    file the supplement.

24          MR. ELLMAN:  They're separate.

25          THE COURT:  You can take the week.

1          MR. ELLMAN:  Basically they're separate.

2          THE COURT:  I'm not going to hold the order up for

3    the supplement.

4          MR. ELLMAN:  I got you.

5          THE COURT:  I'm sure and I trust that you will file

6    the supplement and I will understand it when you file it, and

7    it'll take care of my -- it'll answer my question.

8          MR. ELLMAN:  Thank you, your Honor, very much.

9          THE COURT:  So anything else about this motion that

10   you think we need to discuss today, Mr. Ellman?

11         MR. ELLMAN:  Not from me, your Honor.  Thank you.

12   No.

13         THE COURT:  All right.  Thank you all.

14         MR. ROSENBLAT:  Thank you, your Honor.

15         THE CLERK:  Please rise.

16      (Proceedings concluded at 3:34 p.m.)

INDEX


<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


        I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett                    April 22, 2015
_____             _____
Lois Garrett