# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS**

Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
green@millercanfield.com
swansonm@millercanfield.com

-and-

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

May 21, 2015                    ATTORNEYS FOR THE CITY OF DETROIT

One of the fundamental cornerstones of the confirmed Plan of Adjustment ("POA") is the section on retiree health care. The City agreed to fund the Detroit General VEBA with $218 million in New B notes, and to fund the Detroit Police and Fire VEBA with $232 million in New B notes. That funding – which has now been made – was expressly conditioned on the agreement that the City "shall have no further responsibility to provide retiree healthcare * * *." POA, Art. II(B)(3)(s). These provisions – resulting in critical cost savings to the City – were a key factor in the Court's determination that the Plan was feasible. Confirmation Opinion, D.E. 8993, pp. 46 – 47.

Although finding the POA was feasible, the Court stressed that the City had no margin for error. The Court appointed expert wrote: "While my opinion is the Plan of Adjustment remains feasible and there is not yet a 'significant probability of default' as described in the Standard, there is no denying the possibility of default has increased. It is not realistic or prudent to believe that the City could take on any additional Plan obligations and remain within the continuum of reasonableness necessary to establish feasibility." *Id.* at 125 (*quoting* Martha Kopacz, Ex. 12002 at 6). The Court adopted that conclusion in its Confirmation Opinion. *Id.*

DPLSA contends that notwithstanding the unambiguous provisions of the POA, and the City's funding of the VEBAs, the City now is liable for additional retiree health care payments for certain retirees – namely, City retirees who happen to be married to active DPLSA members. DPLSA's position is a frontal assault on the POA.

I.     **The POA's retiree health care provisions – which flatly reject DPLSA's position - are embodied in the City's Medical Plan Document which, in turn, is incorporated by reference in the CBA.**

The City was surprised and disappointed to see DPLSA's argument characterizing the City Medical Plan as a "document of uncertain origin" which, according to DPLSA, has no relevance to this lawsuit. DPLSA response, D.E. 9565, p. 3. Exhibit 1 appended to this reply is

1

the declaration of Michael Hall, the City's Director of Labor Relations. The 2015 Medical Plan Document is appended as exhibit A to Hall's declaration ("2015 Plan Document"). Hall's declaration confirms the following points:

The 2015 Plan Document was created in fall 2014 under Hall's supervision. A hard copy of the 2015 Plan Document was mailed to all active employees in connection with the City's open enrollment period in the fall of 2014. Hall dec'l, sec. 3 – 4. With respect to the issue raised in the litigation, coverage of retiree spouses, the provisions of the 2015 Plan Document are the same as the 2014 plan document. *Id.*

The 2015 Plan Document governs the determination of which individuals are eligible for coverage under the City's health care plan. The 2015 Plan Document also provides a general summary of benefits and advises participants that they can obtain a full description of the applicable benefits from benefit certificates issued by Blue Cross and HAP which are available upon request. Hall dec'l, section 5 and ex. A, page 35.[1]

The POA provides that an individual is not eligible for coverage under an active employee's City health coverage if the individual is retired from the City and is the spouse of an active employee ("Retiree Spouse"). POA, Art. II(B)(3)(s). The 2015 Plan Document is consistent with the POA in prohibiting Retiree Spouses from obtaining coverage under the active employee's City health coverage. The 2015 Plan Document makes this clear at page 6 which states "a retiree of the City may not be enrolled as a spouse of an active employee." Hall dec'l, section 6.

---

[1] DPLSA cites language in the 2015 Plan Document advising that it is not "contractual." That is correct in that the actual benefits provided are spelled out in detailed benefit certificates issued by Blue Cross and HAP. Moreover, the 2015 Plan Document is incorporated by reference in the DPLSA CBA. DPLSA CBA sections 43(A) & 43(E) and Hall dec'l, sec. 7.

The 2015 Plan Document (which includes the prohibition on coverage for Retiree Spouses) is incorporated by reference in the City's collective bargaining agreements including the CBA for DPLSA. DPLSA CBA sections 43(A) & 43(E), D.E. 9523-1. None of the City's collective bargaining agreements, including the CBA for DPLSA, contain any provision authorizing coverage of Retiree Spouses. Hall dec'l, section 7.

As mentioned above, the 2015 Plan Document was mailed to all employees at the time of the fall 2014 open enrollment. Open enrollment itself was conducted through a benefits webpage established by the City. After logging on to the site, the first step in the process is to answer questions posed in the document attached as exhibit B to Hall's declaration. The document advises the employee that "If you are an Active Employee of the City, you may not cover your Retiree spouse on the City 2015 Plans." To ensure that a Retiree Spouse is not covered, the employee is asked to enter the spouse's social security number. Hall dec'l, section 8 and exhibit B.

*         *         *         *         *

There is nothing in the DPLSA CBA that addresses coverage for retiree spouses, let alone purports to allow a retiree spouse to enroll in her or his spouse's City health care plan. Moreover, there is nothing in the CBA that provides any information as to the medical benefits to which DPLSA members are entitled. Instead, to address those and related issues, the CBA incorporates by reference the Medical Plan Document. The first sentence of CBA section 43(A) provides that "* * * Employees will be eligible to participate in the group medical * * * plans ("Medical Plans") offered by the City. " Likewise, CBA section 43(E) states "Except as provided in this Article, the extent of coverage under the City's Medical Plans will be governed by the terms and conditions set forth in the applicable Medical Plans offered by the City* * *."

3

The 2015 Plan Document provides, at pages 38 - 39, a summary of available benefits –

such as physician services, preventative services, hospital care, emergency care, etc. However,

the same 2015 Plan Document that summarizes available benefits also prominently makes clear

– as required by the POA – that active DPLSA employees cannot enroll their retired spouse in

the City's health care coverage. 2015 Plan Document, page 6.

DPLSA's assertion, that the 2015 Plan Document is "neither part of the Plan nor part of

the DPLSA CBA * * *," DPLSA response, p. 3, is demonstrably false. The 2015 Plan

Document is incorporated by reference into the CBA and implements the POA's prohibition on

coverage for retired spouses.

**II.      This Court has exclusive jurisdiction to protect and implement the POA and, hence, has exclusive jurisdiction over this dispute.**

DPLSA contends that state procedures should govern the "interpretation and

enforcement" of the CBA. But here, the CBA is silent on coverage of retired spouses. The CBA

incorporates by reference the Plan Document which – consistent with the POA – denies such

coverage. There is nothing in the CBA to "interpret" or "enforce," rather, DPLSA's position is a

naked assault on the POA and its provisions on retiree health care.

This Court retains jurisdiction to "enter such orders as may be necessary or appropriate to

implement or consummate the provisions of the Plan * * *;" and "resolve any cases,

controversies, suits or disputes that may arise in connection with the consummation,

interpretation or enforcement of the Plan * * *." POA, Art VII(F), (G). This Court has exclusive

jurisdiction to defend the POA from the DPLSA's attack.

This Court faced a similar jurisdictional issue a few months ago. On September 30,

2014, the Court lifted the stay to allow an entity named Citizens United Against Corrupt

Government to file an Open Meetings Act (OMA) lawsuit against the City in the Wayne County

Circuit Court. D.E. 7754. The OMA lawsuit argued that the City Council had improperly closed three lengthy sessions involving discussions relating to bankruptcy and other issues.

After the suit was filed, the City removed the case to this Court. D.E. 7907. Citizens United filed a motion to remand and a motion for mandatory abstention arguing, as DPLSA does here, that its OMA lawsuit was a state law matter. D.E. 3, 5 in Adversary Proceeding 14-05059. The City opposed those motions arguing that a state court judge, unfamiliar with the bankruptcy, would not appreciate how disclosure of the closed session discussions could impair the City's implementation of the POA. D.E. 11, 12. The Court agreed with the City's position and issued its Opinion and Order Denying Plaintiff's Motion to Remand and Denying Plaintiff's Motion for Mandatory Abstention. Exhibit 2, D.E. 25.

This case presents a far more direct assault on the POA, and the City's efforts to successfully exit from bankruptcy, than did the OMA action. Moreover, whereas the OMA lawsuit stated a tenable state law claim based on the closure of the three City Council sessions, in this case there is no documentary or other support for DPLSA's position. DPLSA's claim is flatly rejected by both the POA and the 2015 Plan Document incorporated into the CBA. For those reasons, the City respectfully asks the Court to grant the relief requested in the City's motion.

Respectfully Submitted,

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

Dated:    May 21, 2015

5