# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>Debtor. | Bankruptcy Case No. 13-53846<br>Honorable Thomas J. Tucker<br>Chapter 9 |

## CITY OF DETROIT'S OBJECTION TO SHERELL STANLEY'S MOTION FOR THE EXTENSION OF TIME/LATE-FILING OF HER APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM IN RESPONSE TO THE CITY OF DETROIT'S OBJECTION

The City of Detroit, Michigan ("City") objects to Ms. Sherell Stanley's ("Stanley") *Motion for the Extension of Time/Late-Filing of her Application for Administrative Expense Claim in Response to the City of Detroit's Objection* ("Motion," Doc. No. 9875) because no basis for excusable neglect has been shown. In support of this Objection, the City respectfully states as follows.

## Summary of Objection

Stanley admits that that she did not file her *Application for Administrative Expense Claim* ("Application," Doc. No. 9189) in a timely manner. Rather than accompany her untimely filing with a request for an extension of the deadline, she chose to do nothing for months. Only after the City objected to her Application does she now belatedly seek a retroactive extension of the deadline based on what she claims is excusable neglect. However, the reasons Stanley provides do not justify her initial late filing or her delay in seeking Court approval for it. Thus, she has not shown excusable neglect. In any event, allowing Stanley to late file a $1 million expense claim unsupported by any evidence other than her say-so would be improper and prejudicial to the City and to other claimants—both those who properly filed claims on time and those who did not and are time-barred like Stanley. Her Motion should be denied.

## Statement of Facts

1. The City's Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan," Docket Number 8045) provides that applications for administrative expenses needed to be "[f]iled and served on the City no later than 45 days after the Effective Date." Plan,[1] Art. II.A.2.a. An applicant who does not submit his or her claim by that date "will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date." *Id.*

2. On November 12, 2014, this Court entered its *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit.* (Doc. No. 8272). The Effective Date of the Plan occurred on December 10, 2014. *Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* (Doc. No. 8649, "Notice of Effective Date"). The occurrence of the Effective Date was widely reported in the news.[2]

3. Thus, under the Plan, administrative expense applications were due by January 26, 2015. This deadline and the effect of noncompliance with it were repeated in the Notice of Effective Date. Notice of Effective Date at 7.

4. Stanley received the Notice of Effective Date by first class mail, likely multiple times. *See* Certificate of Service, Doc. No. 8970-4 at Pages 295, 348, and 437 of 569 (listing

---

[1] Capitalized terms not defined here have the definitions assigned to them in the City's confirmed Plan.

[2] *See, e.g., Orr says Detroit to Exit Bankruptcy Today*, DETROIT FREE PRESS, (Dec. 10, 2014, 11:09 AM), http://www.freep.com/story/news/local/detroit-bankruptcy/2014/12/09/kevyn-orr-resignation-wednesday/20149061/; *By Midnight, Detroit Exits Bankruptcy and Emergency Manager Kevyn Orr Leaves Office*, MLIVE (Dec. 10, 2014, 11:46 AM), http://www.mlive.com/news/detroit/index.ssf/2014/12/by_midnight_detroit_exits_bank.html; *Detroit to Exit Historic Bankruptcy Later Wednesday*, REUTERS, (Dec. 10, 2014, 11:21 AM), http://www.reuters.com/article/2014/12/10/usa-detroit-bankruptcy-idUSL1N0TU1AS20141210.

Stanley repeatedly); Declaration of Michael J. Paque, Ex. 2. She also admits receiving the Plan and submitting a ballot voting her unsecured claim. Motion, p. 4.

5. Stanley did not file her Application until February 6, 2015.

6. Stanley did not file her Motion, seeking extension of the deadline, until May 22, 2015, four months after administrative expense claims were due and three months after she filed her untimely Application. She offers no explanation for this delay.

7. Stanley implies that the City should have, and failed to, serve her by certified or registered mail. Motion, p. 3. She asserts issues with her mail service, but provides no support for this allegation. *Id.* She notes that she requested that the City provide future correspondence to her "certified to ensure delivery" by handwriting this request on the bottom of her Application, allegedly to ensure proper delivery going forward. *Id.*, p. 4.

## **Legal Standards**

8. Section 503(b)[3] allows creditors to file claims seeking administrative expense priority. Claims which meet the requirements of Section 503(b) are entitled to administrative, rather than general unsecured, priority.

9. In ordinary bankruptcy cases, courts give "strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992). "[C]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 838 (6th Cir. 2010) (quoting *City of White Plains, N.Y. v. A&S Galleria Real Estate, Inc. (In re Federated Dept. Stores, Inc.)*, 270 F.3d 994, 1000 (6th Cir. 2001)). "The party

---

[3] 11 U.S.C. § 901 makes 11 U.S.C. § 503 applicable to this chapter 9 case. 11 U.S.C. § 901.

seeking the priority 'has the burden of proving that his claim constitutes an administrative expense.'" *Id.* (quoting *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009)).

10. Administrative expense claims are certainly no less strictly construed in chapter 9 cases. *See In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131,141-42 (Bankr. S.D.N.Y. 2010) (suggesting that administrative expenses in chapter 9 are limited to those consented to by the debtor or expenses directly incurred in the chapter 9 case).

11. Thus, at the outset, an application for an administrative expense must at least be facially proper. It must be timely filed in accordance with bar dates and further demonstrate that the expense asserted is valid and should leapfrog ahead of other claimants.

12. Bar dates are designed to promote finality and efficient administration of the bankruptcy process. *In re Nat'l Steel Corp.*, 316 B.R. 510, 514 (Bankr. N.D. Ill. 2004). "Case administration in large bankruptcy cases such as this one is more often than not a long and complex road to travel. For this reason, fixing a bar date is not merely a routine step, but rather it promotes efficiency in the reorganization process by promptly identifying claims that the plan must consider for the Debtor and other plan proponents." *Id.* (citations and internal quotation marks omitted). Although a court may extend a bar date for "excusable neglect," a "*pro se* litigant[']s failure to timely meet a deadline because of '[i]nadvertence, ignorance of the rules, or mistakes construing the rules do[es] not usually constitute "excusable neglect."'" *In re Settlement Facility Dow Corning Trust*, No. 08-12019, 2009 WL 4506433 at *2 (E.D. Mich. Nov. 25, 2009) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)). Indeed, where a creditor is informed of a deadline in multiple ways, it will have a difficult time establishing excusable neglect of that deadline. *In re D.A. Elia Constr. Corp.*, 246 B.R. 164, 171 (Bankr. W.D.N.Y. 2000); *see also In re Lehmen Bros. Holdings Inc.*, 433 B.R.

113, 126 (Bankr. S.D.N.Y. 2010) ("Neglect in filing a claim before the expiration of a clear bar date is excusable when the creditor, *after conducting a reasonable amount of diligence*, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order.") (emphasis added). And, even when a court considers extending a bar date after it has passed, it will only do so if, in addition to not being prejudicial to the debtor and its bankruptcy case, there is no prejudice on other timely or late filed claims that remain barred. *Settlement Facility Dow Corning Trust*, 2009 WL 4506433 at *2-3.

13. Of course, even if an application is timely filed, it still must be valid. It must be for a post-petition expense incurred in connection with the chapter 9 case. *See N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42; *Emp. Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987).

## Argument

14. Here, Stanley does not deny that her Application was untimely. Her untimeliness should be excused, she asserts, because (1) she was unaware of the Notice of Effective Date, (2) the City never served any papers on her via registered or certified mail, and further, she has mail issues, (3) she filed an unsecured claim, thus putting the City on notice that she would file an administrative expense claim, (4) she is entitled to be excused from her neglect because her circumstances are similar to those in *Whyco Finishing Tech., LLC*, 500 B.R. 517, 537 (Bankr. E.D. Mich, 2013), and finally, (5) she filed only "eleven (11) days after the target date." Motion, pp. 3-4. As shown below, these excuses do not add up to "excusable neglect."

15. First, although she claims to have been unaware of the Notice of Effective Date, she was served at least one copy. *See* Certificate of Service, Doc. No. 8970-4 at Page 295, 348, and 437 of 569; Declaration of Michael J. Paque, Ex. 2. It takes more than a simple denial to contest service, yet Stanley provides nothing more. *E.g.*, *Mountain Nat'l Bank v. Brackett (In re*

*Brackett)*, 243 B.R. 910, 914-15 (Bankr. N.D. Ga. 2000). Further, even if Stanley had not received the Notice of Effective Date, she still had notice of the deadline. Stanley knew of the City's case and participated in it, filing a claim and a ballot. Motion, pages 3-4. Having voted on the Plan, she presumably was familiar with its contents, at least as applicable to her—and the Plan stated in no uncertain terms that administrative expense applications would be due within 45 days of the Effective Date. Plan, Art. II.A.2.a. Stanley does not claim she was unaware that City's Plan became effective on December 10, 2014, which makes sense, given the publicity at the time. Having reviewed (and voted on) the Plan, having almost certainly heard that the Effective Date had occurred, and allegedly holding a $1 million claim, Stanley should have exercised reasonable diligence based on the information in the Plan, even if she had not received the Notice of Effective Date. *D.A. Elia Constr. Corp.*, 246 B.R. at 171 *Lehmen Bros. Holdings Inc.*, 433 B.R. at 126. Of course, Stanley provides no evidence to rebut the presumption that she in fact *did* receive the Notice of Effective Date in the first place. *Brackett*, 243 B.R. at 914-15.

16. Thus, her explanation—that the reason her Application was untimely was because she did not receive the Notice of Effective Date—rings hollow. The uncontested evidence shows that she received service of the Notice of Effective Date, and further, as a voting participant in the City's case, she presumably received and read the Plan, which provided similar information. She cannot use unsupported allegations now to pretend she did not receive sufficient notice to file her Application on time.

17. Stanley's second assertion, that the City never served her via certified or registered mail, is irrelevant. Service by first class mail suffices for contested matters and adversary proceeding complaints, and thus is more than sufficient for other notices. *See* Fed. R. Bankr. P. 9014(b); 7004(b). Stanley points to no rule indicating that service by certified or

registered mail was required here. As for Stanley's alleged woes with the Post Office, her naked allegations do not defeat the presumption of proper service established here by the proof of service filed and the Declaration of Michael J. Paque. *Brackett*, 243 B.R. at 914-15.

18. Her third allegation suggests that, by filing her unsecured claim, she somehow put the City on notice that she would file for an administrative expense later. This is preposterous on a number of levels. First, filing one type of claim does not provide "notice" of another. Unsecured claims and administrative expense applications are very different and are governed by different statutes. *Compare* 11 U.S.C. § 502 *with* 11 U.S.C. § 503. And second, even if the City had "notice" that Stanley might or would file an application for an administrative expense, Stanley identifies no law suggesting that having such notice in any way substitutes for an actual application, timely filed. This throwaway allegation is thus irrelevant.

19. Fourth, Stanley compares her situation to that in *Whyco Finishing*, a comparison which fails on its face. As Stanley herself notes, the creditor in *Whyco Finishing* learned of a bankruptcy case after the bar date had passed. Motion, p. 4. Stanley, however, knew of the Detroit case and had already filed an unsecured claim in it. *Id.*, pp. 3-4. She also reviewed the Plan and Disclosure Statement and voted her ballot. *Id.* Thus, unlike the unfortunate *Whyco Finishing* creditor, Stanley knew of and actively participated in the City's bankruptcy case. Her situation simply does not compare to that of *Whyco Finishing*.

20. Stanley next argues, "but it was only 11 days." Motion, p. 4. This ignores the purpose of a bar date, which is to bring finality to matters. If she can file late with such flimsy (or rather, non-existent) evidence, then what justification is there for preventing other late creditors from filing or having a bar date at all? Allowing her Application would be prejudicial, not just for its substantial $1 million price tag, but also because it could open the floodgates for

other late filers to come forward with equally weak justification. *In re Settlement Facility Dow Corning Trust*, No. 08-12019, 2009 WL 4506433 at *2-3. And moreover, her belated request for Court permission is itself four months late, with no excuse or justification presented for the delay. Apparently, she hoped it would just "slide through" without comment and only comes forward now because that did not work out as hoped. Thus, even if the lateness of the original Application might have been excusable—which it does not appear to be under the circumstances—Stanley's subsequent delay in seeking Court permission is not.

21. Finally, extending the deadline to allow Stanley's application is a futile proposition, given that her Application is nothing more than a $1 million dollar demand based on unfounded allegations. Although the focus here is on the City's timeliness objection,[4] the Application itself is prima facie invalid. The Application patently has nothing to do with the administration of the City's bankruptcy case, and is only supported by Stanley's own self-serving accusations. Neither of these comes close to demonstrating that Stanley is entitled to a $1 million payout ahead of all other unsecured creditors. *N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42; *White Motor Corp.*, 831 F.2d at 110.

22. For all of these reasons, both the Motion and the underlying Application should be denied.

---

[4] As noted, there are other reasons to object, such as the fact that it may not qualify as an administrative expense in the first instance—*N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42—which objections the City explicitly reserved. (Doc. No. 9789, ¶¶ 5-7.)

May 29, 2015                                   Respectfully submitted,

                                               By: /s/ Marc N. Swanson
                                                   Jonathan S. Green (P33140)
                                                   Marc N. Swanson (P71149)
                                                   MILLER, CANFIELD, PADDOCK AND
                                                   STONE, P.L.C.
                                                   150 West Jefferson, Suite 2500
                                                   Detroit, Michigan 48226
                                                   Telephone: (313) 496-7591
                                                   Facsimile: (313) 496-8451
                                                   green@millercanfield.com
                                                   swansonm@millercanfield.com

                                                   ATTORNEYS FOR THE CITY OF DETROIT

# EXHIBIT 1 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2015, he served a copy of the foregoing

*City of Detroit's Objection to Sherell Stanley's Motion for the Extension of Time/Late-Filing of Her Application for Administrative Expense Claim in Response to the City of Detroit's Objection*

as listed below, via First Class United States Mail:

Ms. Sherell Stanley
P.O. Box 321032
Detroit, MI 48232


DATED: May 29, 2015

                                          By: /s/ Marc N. Swanson
                                               Marc N. Swanson
                                               150 West Jefferson, Suite 2500
                                               Detroit, Michigan 48226
                                               Telephone: (313) 496-7591
                                               Facsimile: (313) 496-8451
                                               swansonm@millercanfield.com

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**DECLARATION OF MICHAEL J. PAQUE IN SUPPORT OF
CITY OF DETROIT'S OBJECTION TO SHERELL STANLEY'S MOTION
FOR THE EXTENSION OF TIME/LATE-FILING OF HER
APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM
IN RESPONSE TO THE CITY OF DETROIT'S OBJECTION**

1. I am Michael J. Paque, Director of Corporate Restructuring Services for Kurtzman Carson Consultants ("KCC").

2. I am over the age of 18 years old, have personal knowledge of the facts contained in this declaration, and if called as a witness, can competently testify to the facts it contains.

3. KCC was engaged by the City of Detroit to provide services to the City in connection with its bankruptcy cases, including providing service of certain documents filed in the City's bankruptcy case.

4. In particular, the City asked KCC to serve its *Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* filed at docket number 8649 (the "Notice") in the City's bankruptcy case.

5. I worked with Lydia Pastor Nino in serving the Notice. I personally oversaw the mailing of the Notice.

6. In preparing the certificate of service, I directed that many of the residential addresses be redacted to protect the privacy of recipients. KCC retained the unredacted list, however, so that it could provide the addresses served if necessary.

7. The City has asked me to provide the addresses for Sherell S. Stanley to which KCC mailed the Notice. On due inspection of KCC's records, I have confirmed that, on or before December 16, 2014, KCC mailed the Notice to the following addresses by First Class mail, postage prepaid:

Stanley, Sherell S
Po Box 321032
Detroit, MI 48232

STANLEY, SHERELL S,
PO BOX 321032
DETROIT, MI 48232-1032

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

By: *[signature]*
Michael J. Paque
Director of Corporate Restructuring Services for
Kurtzman Carson Consultants

Executed on May 29, 2015