UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re:<br>City of Detroit, Michigan,<br>Debtor. | Bankruptcy Case No. 13-53846<br>Honorable Thomas J. Tucker<br>Chapter 9 |

**CITY OF DETROIT'S OBJECTION TO THE
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR
LATE-FILING OF NOTICE OF CLAIM FOR ADMINISTRATIVE EXPENSES**

The City of Detroit, Michigan ("City") objects to the *Equal Employment Opportunity Commission's Answer to Objection to and Motion for Late-Filing of Notice of Claim for Administrative Expenses* ("Motion," Doc. No. 9864) because excusable neglect has not been shown. In support of this Objection, the City respectfully states as follows.

## Summary of Objection

The Equal Employment Opportunity Commission ("EEOC") admits that its *Consolidated Notice of Claim and Memorandum in Support of Claim for Administrative Expenses* ("Application," Doc. No. 9139) was not filed in a timely manner. Rather than accompany its untimely filing with a request for an extension of the deadline, however, the EEOC did nothing for months, waiting until the City objected to its Application. Only now does the EEOC belatedly seek a retroactive extension of the deadline based on a claim of excusable neglect. However, the reasons the EEOC provides justify neither its initial late filing nor its delay in seeking Court approval for it. Thus, it has not shown excusable neglect. In any event, allowing the EEOC to late file a nearly $184,000 expense application would be improper and prejudicial to the City and to other claimants—both those who properly filed claims on time and those who did not and are time-barred like the EEOC. The EEOC's Motion should be denied.

**Statement of Facts**

1. The City's Eighth Amended Plan for the Adjustment of Debts of the City of Detroit ("Plan," Docket Number 8045) provides that applications for administrative expenses needed to be "[f]iled and served on the City no later than 45 days after the Effective Date." Plan,[1] Art. II.A.2.a. An applicant who does not submit his or her claim by that date "will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date." *Id.*

2. On November 12, 2014, this Court entered its *Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit.* (Doc. No. 8272). The Effective Date of the Plan occurred on December 10, 2014. *Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* (Doc. No. 8649, "Notice of Effective Date"). The occurrence of the Effective Date was widely reported in the news.[2]

3. Thus, under the Plan, administrative expense applications were due by January 26, 2015. This deadline and the effect of noncompliance with it were repeated in the Notice of Effective Date. Notice of Effective Date at 7.

4. The EEOC admits receiving the Notice of Effective Date. Motion, p. 3. Thus, proper service is not an issue.

5. The EEOC did not file its Application until January 30, 2015.

---

[1] Capitalized terms not defined here have the definitions assigned to them in the City's confirmed Plan.

[2] *See, e.g., Orr says Detroit to Exit Bankruptcy Today*, DETROIT FREE PRESS, (Dec. 10, 2014, 11:09 AM), http://www.freep.com/story/news/local/detroit-bankruptcy/2014/12/09/kevyn-orr-resignation-wednesday/20149061/; *By Midnight, Detroit Exits Bankruptcy and Emergency Manager Kevyn Orr Leaves Office*, MLIVE (Dec. 10, 2014, 11:46 AM), http://www.mlive.com/news/detroit/index.ssf/2014/12/by_midnight_detroit_exits_bank.html; *Detroit to Exit Historic Bankruptcy Later Wednesday*, REUTERS, (Dec. 10, 2014, 11:21 AM), http://www.reuters.com/article/2014/12/10/usa-detroit-bankruptcy-idUSL1N0TU1AS20141210.

6. The EEOC did not file its Motion seeking extension of the deadline until May 21, 2015, four months after administrative expense claims were due and three months after it filed its untimely Application. No explanation for this delay is proffered.

7. The EEOC notes in its Motion that its Application is duplicative of the rights of the individuals on whose behalf it is filing. Motion, p. 4 ("[The EEOC's] suit rights are intended to supplement, and not supercede, private actions under Title VII and similar statutes.")

## Legal Standards

8. Section 503(b)[3] allows creditors to file claims seeking administrative expense priority. Claims which meet the requirements of Section 503(b) are entitled to administrative, rather than general unsecured, priority.

9. In ordinary bankruptcy cases, courts give "strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses." *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992). "[C]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants." *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 838 (6th Cir. 2010) (quoting *City of White Plains, N.Y. v. A&S Galleria Real Estate, Inc. (In re Federated Dept. Stores, Inc.)*, 270 F.3d 994, 1000 (6th Cir. 2001)). "The party seeking the priority 'has the burden of proving that his claim constitutes an administrative expense.'" *Id.* (quoting *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 226 (6th Cir. 2009)).

10. Administrative expense claims are certainly no less strictly construed in chapter 9 cases. *See In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131,141-42 (Bankr. S.D.N.Y. 2010) (suggesting that administrative expenses in chapter 9 are limited to those consented to by the debtor or expenses directly incurred in the chapter 9 case).

---

[3] 11 U.S.C. § 901 makes 11 U.S.C. § 503 applicable to this chapter 9 case. 11 U.S.C. § 901.

11.     Thus, at the outset, an application for an administrative expense must at least be facially proper.  It must be timely filed in accordance with bar dates and further demonstrate that the expense asserted is valid and should leapfrog ahead of other claimants.

12.     Bar dates are designed to promote finality and efficient administration of the bankruptcy process. *In re Nat'l Steel Corp.*, 316 B.R. 510, 514 (Bankr. N.D. Ill. 2004).  "Case administration in large bankruptcy cases such as this one is more often than not a long and complex road to travel.  For this reason, fixing a bar date is not merely a routine step, but rather it promotes efficiency in the reorganization process by promptly identifying claims that the plan must consider for the Debtor and other plan proponents." *Id.* (citations and internal quotation marks omitted).  Although a court may extend a bar date for "excusable neglect," a "litigant[']s failure to timely meet a deadline because of '[i]nadvertence, ignorance of the rules, or mistakes construing the rules do[es] not usually constitute "excusable neglect."'" *In re Settlement Facility Dow Corning Trust*, No. 08-12019, 2009 WL 4506433 at *2 (E.D. Mich. Nov. 25, 2009) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)).  Indeed, where a creditor is informed of a deadline in multiple ways, it will have a difficult time establishing excusable neglect of that deadline. *In re D.A. Elia Constr. Corp.*, 246 B.R. 164, 171 (Bankr. W.D.N.Y. 2000); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010) ("Neglect in filing a claim before the expiration of a clear bar date is excusable when the creditor, *after conducting a reasonable amount of diligence*, is justifiably confused or uncertain as to whether a particular transaction giving rise to a claim is or is not subject to the bar date order.") (emphasis added).  And, even when a court considers extending a bar date after it has passed, it will only do so if, in addition to not being prejudicial to the debtor and its

bankruptcy case, there is no prejudice on other timely or late filed claims that remain barred. *Settlement Facility Dow Corning Trust*, 2009 WL 4506433 at *2-3.

13. Of course, even if an application is timely filed, it still must be valid. It must be for a post-petition expense incurred in connection with the chapter 9 case. *See N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42; *Emp. Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106, 110 (6th Cir. 1987).

**Argument**

14. Here, the EEOC does not deny that its Application was untimely. Its untimeliness should be excused, it asserts, because (1) the filing attorney did not have personal notice of the bar date, (2) any neglect on the EEOC's part is excusable, and finally, (3) it would not be fair to penalize one of the EEOC's claimants for the EEOC's negligence. As shown below, these excuses do not add up to "excusable neglect."

15. First, although the EEOC's counsel, Dale Price, claims to have been personally unaware of the administrative expense bar date, the EEOC itself admits that it received the Notice of Effective Date. Motion, p. 2. And further, Dale Price himself received a solicitation package with a copy of the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Dated May 5, 2014)* [Docket No. 4392] ("4th Amended Plan") which also gave notice of the bar date.[4] Certificate of Service, Doc. No. 6177, pp. 1-2 (describing packet served on class 14 claimants, which included the plan and disclosure statement), p. 4 (noting May 12, 2014, service of class 14 packing on people listed on Exhibit F), and p. 50 of 1828 / p. 33 of Ex. F (showing service of a class 14 packet on Dale Price at the EEOC office). The 4th Amended Plan,

---

[4] The EEOC received this package because it has filed claims and otherwise participated in the City's bankruptcy case. *E.g.*, Doc. No. 8182 (noting some of the claims filed by the EEOC).

while not the version ultimately confirmed, noted that administrative expenses were due no later than 30 days past the Effective Date.[5]

16. Presumably Mr. Price (or someone on the EEOC's behalf) read this information, because the EEOC returned nine ballots voting the class 14 claims. Second Supplemental Tabulation Declaration, Doc. No. 8072, p. 22. Thus, the EEOC and Mr. Price were on notice that there would be a bar date for administrative expense applications, to be set once the Effective Date occurred. The Notice of Effective Date conveyed only two new pieces of information–the exact Effective Date and administrative expense bar dates,[6] and the fact that the administrative expense bar date would be 15 days later than Mr. Price and the EEOC had earlier been told. Notice of Effective Date at 7 (setting filing deadline at 45 days after the Effective Date). The EEOC cannot (and does not) claim it was harmed by having this bar date extended.

17. In short, it would appear that Mr. Price was perhaps too busy to read the plan or disclosure statement he was served or to note the administrative expense deadline therein. Be that as it may, the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship* has held that it is not excusable neglect for an attorney to be too busy to act in a timely fashion. *See* 507 U.S. 380, 397 (1993) ("[W]e give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."). If the issue was that the EEOC did not apprehend that it might wish to submit an administrative claim until the bar date had come and gone, that, also, is not excusable neglect. *Lehman Bros. Holdings Inc.*, 433 B.R. at 126.

---

[5] In fact, every version of the plan and the disclosure statement announced that the administrative expense application bar date would follow the Effective Date by either 30 or 45 days. *See* Art. II.A.2.a of First Plan, Doc. No. 2709; Amended Plan, Doc. No. 3380; Second Amended Plan, Doc. No. 4140; Third Amended Plan, Doc. No. 4271; Fourth Amended Plan, Doc. No. 4392; Fifth Amended Plan, Doc. No. 6257; Corrected Fifth Amended Plan, Doc. No. 6379; Sixth Amended Plan, Doc. No. 6908; Seventh Amended Plan, Doc. No. 7502; Plan, Doc. No. 8045. *See also* Disclosure Statement, Doc. No. 4391, p. 44 / p. 59 of 197 of filed document. This deadline was thus repeatedly announced throughout the case.

[6] The EEOC does not claim it was unaware that the City's Plan became effective on December 10, 2014. With that date and the a copy of the Plan, calculation of the administrative bar date is a simple exercise.

18. Indeed, if the EEOC's Application is as important as it states, it was obligated to exercise reasonable due diligence to ascertain and act on its rights.[7] *Id.* However, as noted previously, the EEOC claim is not as critical as it may seem. The EEOC itself admits that its claim is merely supplemental to an individual claimant's other remedies; thus, holding the EEOC strictly to the bar date does *not*, by itself, operate to deprive individual claimants of whatever rights they may assert. Motion, p. 4 ("[The EEOC's] suit rights are intended to supplement, and not supercede, private actions under Title VII and similar statutes."). Thus, the EEOC's citation of *Springer Partners*, *Davis*, and *White* on pages five and six of its Motion are inapposite, as requiring the EEOC to comply with the administrative expense bar date does not penalize creditors unduly; they still may file individual claims. Indeed, at least some have done so. *See*, *e.g.,* Doc. No. 9189 (application for administrative expense filed by Sherell Stanely).

19. The EEOC's citation of excusable neglect cases in support of its Motion also falls short, as none of the cases cited mirror the situation here. All are thus distinguishable. For instance, the EEOC cites to *Bli Farms* for the idea that missing a deadline by only nine days can be excused. Motion, p. 5; *In re Bli Farms*, 294 B.R. 703, 706-07 (Bankr. E.D. Mich. 2003). Perhaps so, but in *Bli Farms*, the neglectful party participated in a hearing only <u>three days after its late filing</u>. *Bli Farms*, 294 B.R. at 706 ("Plaintiffs filed a notice of appeal on **June 10, 2003**, more than 10 days, but less than 20 days, after the May 21, 2003 judgment. . . . The Court has considered Plaintiffs' Motion [to extend deadline] . . . at the hearing which took place on **June 13, 2003**.") (emphasis added). Here, the EEOC sat on its hands for four months after filing its belated Application, and offers no explanation for doing so. The idea in *Bli Farms*, that a

---

[7] It is worth noting that the EEOC's approach toward its Application is mirrored by its Motion. The Motion is buried within the EEOC's response to the City's objection and omits any notice of the Motion.

creditor may be excused if it quickly seeks court help after learning it has missed a critical date, does not apply here.

20. The EEOC also cites to *Pioneer Investment Services* for support, but in that case, a critical issue was that bar date in question was placed in a "peculiar and inconspicuous" spot in the notice involved. *Pioneer Inv. Servs.* 507 U.S. at 398. That is not the case here, where the administrative expense bar date at issue was prominently noted in bold type. *See* Notice of Effective Date at 7.

21. The EEOC even compares its situation to that in *Whyco Finishing*, a comparison which fails on its face. As the EEOC itself notes, the creditor in *Whyco Finishing* learned of a bankruptcy case after the bar date had passed. Motion, p. 5. The EEOC, however, knew of the Detroit case, had been served with a solicitation packet with the City's plan and disclosure statement (each of which discussed the deadline at issue here), had filed a number of claims and stipulations, and had submitted nine ballots regarding Plan confirmation. Unlike the unfortunate *Whyco Finishing* creditor, the EEOC has been an active participant. Its situation simply does not compare to that of *Whyco Finishing*.

22. Finally, the EEOC argues that it was only a few days late. This ignores the purpose of a bar date, which is to bring finality to matters. If a creditor can file a claim late even if it was active in the case and received copies of the plan and disclosure statement (which note the deadline at issue and its importance), then what justification is there for preventing other late creditors from filing or having a bar date at all? Allowing this Application would be prejudicial, not just for its alleged $184,000 price tag, but also because it could open the floodgates for other late filers to come forward with equally weak justifications. *In re Settlement Facility Dow Corning Trust*, No. 08-12019, 2009 WL 4506433 at *2-3. And, moreover, the EEOC's belated

request for Court permission is itself four months late, with no excuse or justification presented for the delay.

23. Finally, extending the deadline to allow the EEOC's application is a futile proposition, given that its Application is nothing more than a demand based on unproven and inconclusive allegations submitted by a number of other individuals. The EEOC has no independent knowledge of the truth of these allegations. Although the focus here is on the City's timeliness objection,[8] the Application itself is prima facie invalid. The Application patently has nothing to do with the administration of the City's bankruptcy case, and is only supported by self-serving accusations of parties other than the EEOC. This does not come close to demonstrating that the EEOC's Application is entitled to be paid at all, much less ahead of all other unsecured creditors. *N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42; *White Motor Corp.*, 831 F.2d at 110.

24. For all of these reasons, both the Motion and the underlying Application should be denied.

---

[8] As noted, there are other reasons to object, such as the fact that it may not qualify as an administrative expense in the first instance—*N.Y.C. Off-Track Betting Corp.*, 434 B.R. at 141-42—which objections the City explicitly reserved. (Doc. No. 9788, ¶¶ 5-7.)

May 29, 2015	Respectfully submitted,

By: /s/ Marc N. Swanson
    Jonathan S. Green (P33140)
    Marc N. Swanson (P71149)
    MILLER, CANFIELD, PADDOCK AND
    STONE, P.L.C.
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    green@millercanfield.com
    swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

# EXHIBIT 1 – CERTIFICATE OF SERVICE

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re:<br><br>City of Detroit, Michigan,<br><br>Debtor. | Bankruptcy Case No. 13-53846<br>Honorable Thomas J. Tucker<br>Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 29, 2015, he served a copy of the foregoing *City of Detroit's Objection to the Equal Employment Opportunity Commission's Motion For Late-Filing of Notice of Claim for Administrative Expenses* as listed below, via First Class United States Mail and electronic mail.

Dale Price, Esq.
Equal Employment Opportunity Commission
477 Michigan Ave
Room 65
Detroit, MI 48226
dale.price@eeoc.gov


DATED: May 29, 2015

                                        By: /s/ Marc N. Swanson
                                              Marc N. Swanson
                                              150 West Jefferson, Suite 2500
                                              Detroit, Michigan 48226
                                              Telephone: (313) 496-7591
                                              Facsimile: (313) 496-8451
                                              swansonm@millercanfield.com