```
1                    UNITED STATES BANKRUPTCY COURT
                      EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3  IN THE MATTER OF,              Case No. 13-53846
                                  Detroit, Michigan
4  CITY OF DETROIT, MICHIGAN      June 3, 2015
   _____/  4:36 p.m.

5
        IN RE: APPLICATION FOR ADMINISTRATIVE EXPENSE, FILED BY
6   CREDITOR SHEILA REED, APPLICATION FOR ADMINISTRATIVE EXPENSE,
    FILED BY CREDITOR SHERELL STANLEY, SHERELL STANLEY'S MOTION
7  FOR THE EXTENSION OF TIME/LATE FILING OF HER APPLICATION FOR
    ADMINISTRATIVE EXPENSE CLAIM, APPLICATION FOR ADMINISTRATIVE
8     EXPENSES FILED BY CREDITOR EQUAL EMPLOYMENT OPPORTUNITY
       COMMISSION AND CORRECTED APPLICATION FOR ADMINISTRATIVE
9     EXPENSES AND ANSWER TO OBJECTION TO NOTICE OF CLAIM FOR
                    ADMINISTRATIVE EXPENSES.
10            BEFORE THE HONORABLE THOMAS J. TUCKER
               TRANSCRIPT ORDERED BY: ROBIN WYSOCKI
11
    APPEARANCES:
12
    For the City of Detroit:    MARC SWANSON, ESQ. (P71149)
13                              Miller, Canfield, Paddock &
                                Stone
14                              150 West Jefferson
                                Suite 2300
15                              Detroit, MI 48226
                                313-496-7591
16
    For the EEOC:               DALE PRICE, JR., ESQ. (P55578)
17                              Equal Employment Opportunity
                                Commission
18                              477 Michigan Avenue
                                Room 865
19                              Detroit, MI 48226
                                313-226-7808
20
    PRESENT:                    Sheila Reed
21                              Sherell Stanley

22  Court Recorder:             Jamie Laskaska

23  Transcriber:                Deborah L. Kremlick

24
    Proceedings recorded by electronic sound recording, transcript
25  produced by transcription service.
```

1      (Court in Session)

2           THE CLERK:  All rise.  This Court is now in session.

3  The Honorable Thomas J. Tucker is presiding.  You may be

4  seated.  The Court calls the case of the City of Detroit,

5  Michigan, case number 13-53846.

6           THE COURT:  All right.  Good afternoon everyone.

7  Let's have entries of appearance for the record.  I understand

8  we don't have anyone on the telephone today.  We'll start with

9  the debtor's side and then go from there.

10           MR. SWANSON:  Thank you, Your Honor.  Marc Swanson

11  from Miller, Canfield, Paddock, and Stone here on behalf of

12  the City of Detroit.

13           MR. PRICE:  Yes, Your Honor.  Dale Price on

14  behalf --

15           THE COURT:  Wait, come up to the mike -- microphone.

16           MR. PRICE:  Oh, to the microphone, sure.

17           THE COURT:  Say it again.

18           MR. PRICE:  Dale Price on behalf of the EEOC.

19           THE COURT:  All right.  And then we may have some

20  persons who are parties in interest, claimants who are not

21  represented by counsel.  I'll ask you to -- when -- when you

22  get a chance to come up to the podium and speak, I'll ask you

23  to say your name for the record, please.

24      Let's then turn to our agenda of matters to be heard

25  today.  Mr. Swanson, there are basically three matters

1  involving three administrative claimants scheduled for hearing

2  today.

3      I don't care what order we take them in.  If you have a

4  preference, you go ahead, otherwise we'll just take them in

5  the order they are listed.

6          MR. SWANSON:  Sure, Your Honor.  With -- with the

7  Court's permission, I think the -- the arguments of the city

8  advances apply almost equally to all three.  So I was going to

9  address all three at -- at once if the -- if the Court will

10  allow.

11          THE COURT:  No, one at a time.

12          MR. SWANSON:  One at a time, okay.

13          THE COURT:  So Sheila Reed.

14          MR. SWANSON:  Sure.  Your Honor --

15          THE COURT:  If you -- are you Ms. Reed?

16          MS. REED:  Yes.

17          THE COURT:  Come on up.  You can come up, stand at

18  the podium and I'll give you a chance to speak after we hear

19  from Mr. Swanson for the city.

20          MS. REED:  Yes, sir.

21          THE COURT:  So identify yourself please for the

22  record.

23          MS. REED:  Sheila Reed, police officer, City of

24  Detroit Police Department.

25          THE COURT:  All right.  Thank you.  Go ahead Mr.

1  Swanson.  Then we're -- we're hearing first then the city's

2  objection to Sheila Reed's application for administrative

3  expense claim.  Go ahead.

4       MR. SWANSON:  Thank you, Your Honor.  Ms. Reed filed

5  her application on January 30th, 2015.  Pursuant to the plan

6  which was confirmed by this Court, the deadline to file

7  administrative expenses was January 26th, 2015.

8       Ms. Reed did not file a request to extend that date or

9  file a motion citing any sort of excusable neglect.  The

10  notice of the effective date which quite clearly stated the

11  deadline for filing administrative expense was mailed to Ms.

12  Reed.  We've cited the certificate of service and -- and --

13  and it -- it was mailed to her timely.

14       Your Honor, we would ask that the application be

15  disallowed because it was not filed on time.  Further, Your

16  Honor, this is not the type of expense that is an

17  administrative expense in a Chapter 9 case.  As this Court

18  held last week, only costs of administration in a Chapter 9

19  case constitute administrative expenses.

20       Ms. Reed's, it's a discrimination case.  I believe that's

21  not a cost of administration.  So even if the Court were to

22  allow Mrs. Reed to make a timely filing the city advances of

23  that would be fruitless because the application would be

24  denied in any event.  Thank you.

25       THE COURT:  Well, this futility argument or

1   fruitlessness argument you just made was not in your written

2   objection, right?

3           MR. SWANSON:  That as correct, Your Honor.

4           THE COURT:  The only thing --

5           MR. SWANSON:  It was a timeliness objection.

6           THE COURT: Yeah, the thing you argue in there was

7   that the -- Ms. Reed's administrative claim, expense claim was

8   filed untimely.  All right.

9       Well, by the way, while we're on the subject, Mr.

10  Swanson, what -- what's the city's view on how these -- how

11  discrimination claims or Title 7 claims of various kinds, how

12  -- how -- that arised based on conduct that occurred after the

13  bankruptcy petition date, how they are to be properly handled.

14          MR. SWANSON:  Sure.

15          THE COURT:  And -- and considered and treated.

16          MR. SWANSON:  Your Honor, there is a provision in

17  the plan regarding ordinary course claims.  I think most of

18  these claim B of C have not even determined whether there was

19  cause to go forward.  You know, if and when there is cause to

20  go forward, we would ask claimants to contact the city and as

21  was explained last week, the city will -- will look into those

22  claims and investigate those claims.

23          THE COURT:  Well, so are -- are you saying that

24  these post-petition Title 7 claims, that's just an example,

25  are ordinary course claims under the confirmed plan of

1 | adjustment?

2 | MR. SWANSON: Your Honor, I have not researched that

3 | point. I mean if and when a valid claimant would come forward

4 | we could opine on that at that point, or we could -- I think

5 | the safest course would be for the claimant to come back here.

6 | But we have not -- I don't have an opinion on that question.

7 | THE COURT: But what -- what I'm trying to

8 | understand is what the city's position is on -- on what a

9 | claimant who has a post-petition Title 7 claim should do to

10 | prosecute the claim if the city refuses to pay it.

11 | MR. SWANSON: I believe lots of claims --

12 | THE COURT: And you know you've argued it's not an

13 | administrative expense claim.

14 | MR. SWANSON: Sure.

15 | THE COURT: And it's obviously not a pre-petition

16 | claim. Assume -- assuming somebody has a post-petition, that

17 | is a Title 7 claim that arises after the filing of the

18 | petition in the Chapter 9 case.

19 | MR. SWANSON: Sure.

20 | THE COURT: And they -- they get a -- they get even

21 | a notice of right to sue from the EEOC. What do they do? Do

22 | they just sue the city? There's nothing to prevent them from

23 | suing the city. The claims aren't discharged and there's no

24 | injunction against them suing the city, is that the -- the --

25 | the city's position?

1    MR. SWANSON: I don't believe, you know, the -- the

2  stay would apply. The stay has gone away. With respect to

3  the plan injunction, I would have to -- to -- to look at that

4  to see what types of claims were -- were discharged.

5    But to the extent that there are valid post-petition

6  claims, I don't believe the stay applies. They're certainly

7  not administrative expense claims. But to the extent that

8  there's any question on -- on what to do, I think the safest

9  course of action would be to come back here and we can deal

10  with that issue at -- at that point.

11    THE COURT: Come back here how?

12    MR. SWANSON: File a motion to allow a -- a -- an

13  action post-petition, pre-effective date action to proceed

14  because of some ordinary course claim, or it fits within the

15  -- the plan in -- in some other manner.

16    THE COURT: Well, it -- it has to be either be a

17  claim that's treated in one of the classes of the plan.

18    MR. SWANSON: Sure.

19    THE COURT: Or if it isn't, because it's a

20  post-petition claim, maybe it's an ordinary course claim.

21    MR. SWANSON: Sure.

22    THE COURT: Or maybe there's some other way it needs

23  to be treated, but if it's not an administrative claim as

24  you've argued and it's not a claim -- a claim that's treated

25  by the plan, or otherwise discharged by the confirmed plan,

1 then the claimant has -- must have the right to pursue the

2 claim and how do they do that. Well, if they get an EEOC

3 notice of right to sue and they can't resolve their claim with

4 the city, don't they sue the city?

5          MR. SWANSON: If it's not treated by the plan, it's

6 not discharged by the plan, then I would -- I -- I don't see

7 any other impediment to allowing them to sue.

8          THE COURT: Are -- are these claims discharged by

9 the plan, or you're not sure?

10          MR. SWANSON: I am not sure. I would like to -- to

11 take a look at that. I mean --

12          THE COURT: All right. Well, okay. Now I've asked

13 these questions because this issue is -- is coming up.

14          MR. SWANSON: Sure.

15          THE COURT: With regularity. You've argued this

16 sort of futility argument with respect to the other

17 administrative claims that we're going to talk about today

18 too, I think.

19          MR. SWANSON: Sure.

20          THE COURT: Futility meaning you've argued that

21 these are not, whatever they may be, these post-petition

22 discrimination claims are not properly viewed as an

23 administrative claim -- administrative expense claims in a

24 Chapter 9 case.

25          MR. SWANSON: Sure.

1          THE COURT:  Because they're not costs of

2    administering the Chapter 9 bankruptcy case.  That's been the

3    argument the city is -- is making on that.

4        Okay.  Well, in the case of -- of Ms. Reed, as I said,

5    I'm not going to rule on that or consider that futility

6    argument at this point because that wasn't in the city's

7    written objection.  The only thing in the objection was

8    timeliness.

9        If I -- if I don't disallow or deny the -- sustain the

10   city's objection to the claim on timeliness grounds, then that

11   would not preclude the city from later arguing any grounds,

12   other grounds for objecting to the claim I would think.

13   Although you've got a deadline, I guess that you've had in the

14   confirmed plan for objecting to administrative expense claims.

15   And we're going to have to talk about that.  But we'll --

16   we'll get to that if we need to.

17          MR. SWANSON:  Okay.

18          THE COURT:  Okay.  Anything else you want to say

19   about the objection to this administrative claim before we

20   hear from Ms. Reed?

21          MR. SWANSON:  No, Your Honor.

22          THE COURT:  All right.  Ms. Reed, what would you

23   like to say about this?

24          MS. REED:  Good afternoon, Your Honor.  Initially I

25   had -- I filed a claim through the EEOC.  Mr. Dale Price he

1  was notified -- he was not notified in a timely manner that

2  the deadline I think was around the 21st of January.

3      So the day that he called me and also emailed me to

4  advise me.  We talked on the phone.  He said you need to go

5  file it on that day that's why I can't -- I left work and came

6  and filed it on that particular day.

7      This case, the whole case stems from a incident that I

8  was involved in, a shots fired incident, on a domestic

9  violence, Your Honor.  And they render -- the department

10  rendered that me and my partner was both sustained misconduct.

11      However they decided not to charge my partner criminally.

12  They charged me criminally.  They got denied.  They charged me

13  departmentally only me.  Suspended me for ten days.  They

14  didn't do the proper investigation through the department.

15  The guy had like five guns in the house, didn't do a gun

16  residue test.  They failed to do the proper investigation so

17  that's why I filed an initial EEOC complaint.

18          THE COURT:  Your administrative expense claim that

19  you filed on January 30, 2015, and for the record it's docket

20  number 9135, and which the city is objecting to, says that the

21  -- the city's actions that you have said -- claim are sex --

22  sex discrimination violated with Title 7 began on January 14,

23  2014.

24          MS. REED:  Yes.

25          THE COURT:  So that's -- that's -- it's from that

1  date forward that --

2          MS. REED:  Yes.

3          THE COURT:  -- through the -- and after that -- that

4  is the time period when the --

5          MS. REED:  Yes.

6          THE COURT:  -- the alleged discrimination occurred.

7          MS. REED:  Yes.

8          THE COURT:  Right?  Okay.  Now what -- what were you

9  saying earlier?  You said --

10         MS. REED:  Uh, it --

11         THE COURT:  Excuse me.  Excuse me.

12         MS. REED:  Oh.

13         THE COURT:  Yeah. You said Dale Price.  Now he's the

14  attorney for the EEOC of course.

15         MS. REED:  Yes.

16         THE COURT:  Dale Price was not notified in a timely

17  manner of the deadline for filing administrative expense

18  claims.  We're going to deal -- I think we're going to hear

19  more about that issue when we deal with the EEOC's claims --

20         MS. REED:  Okay.

21         THE COURT:  -- in today's hearing.  But the -- the

22  question really is whether you were notified properly of the

23  January 26th, 2015 deadline for everyone to file administrative

24  expense claims.  You have to speak out.  You can't shake your

25  head.

1          MS. REED:  No, Your Honor.  I'm sorry.

2          THE COURT:  Why do you say that?

3          MS. REED:  Because I was notified by the EEOC.  I

4   was never notified by -- well, and I didn't sign anything.  He

5   said, sort of -- I was -- a process server.  I was never

6   served by them.  I was notified --

7          THE COURT:  I'm not -- the city is not saying they

8   served you by a process server.  They said they mailed the

9   notice --

10         MS. REED:  They --

11         THE COURT:  Excuse me.

12         MS. REED:  Okay.

13         THE COURT:  Don't interrupt me when I'm talking.

14         MS. REED:  I'm sorry.

15         THE COURT:  Wait till I'm done.  Don't interrupt me.

16  As I was saying, the city is saying they mailed to you by

17  first class mail a copy of this document that was filed on

18  December 10, notice of entry of order confirming eighth

19  amended plan for the adjustment of debts of the City of

20  Detroit and occurrence of effective date.

21      That notice is a eight page document, single spaced.  It

22  clearly says that the effective date of the confirmed plan of

23  adjustment was December 10, 2014.  It clearly says in

24  Paragraph 7A on Page 7, that the deadline -- that all requests

25  for payment of administrative claims must be filed and served

1  on the city no later than January 26, 2015 or those claims

2  will be forever barred.

3       Now the city says that -- that that was mailed to you by

4  first class mail.  Did you receive that notice?

5            MS. REED:  I don't recall, Your Honor.

6            THE COURT:  You don't recall?

7            MS. REED:  No.  I received the bankruptcy paperwork

8  that the city filed that all the City of -- City of Detroit

9  employees received regarding all the updates from the

10  bankruptcy filing through the Courts.  And never regarding the

11  filing of the administrative claim, no.

12            THE COURT:  Well, you don't recall whether you

13  received it, you don't recall receiving it, or you're --

14            MS. REED:  I don't --

15            THE COURT:  -- you're certain you did not receive

16  it?  What's the answer?

17            MS. REED:  I don't recall receiving it.  I don't

18  believe I received it because I was only notified -- I read

19  all my mail.  I was only notified through the EEOC that the

20  deadline -- about that they were notified late.  So that's how

21  the claim was filed late.

22            THE COURT:  Now what -- what you heard from Dale

23  Price was something that you heard sometime soon after January

24  26th?

25            MS. REED:  Yes.

1          THE COURT:  Yeah.

2          MS. REED:  The day that I filed.

3          THE COURT:  All right.  Well, what else did you want

4    to say about this objection by the city?  Anything?

5          MS. REED:  The reason for the administrative claim

6    was due to the time that I lost and getting involuntary

7    transferred to a whole nother shift.  And respect to the fact

8    of well, I wasn't notified properly.  That it -- they wanted

9    to dismiss the whole thing.  I just got a letter a couple

10   weeks ago saying they wanted to dismiss the -- the whole

11   administrative claim that I filed it late.  That's what I

12   received from them.  I didn't receive anything --

13         THE COURT:  And the issue today on your claim,

14   administrative expense claim, is limited to whether or not you

15   timely filed it and if you clearly didn't timely file it, and

16   then the issue becomes and is limited to whether you -- you

17   have -- basically have a good excuse for -- for not filing it

18   by the January 26 deadline, but rather filing it on January 30

19   is when you filed it, four days late.

20         And -- and as I gather you were arguing that -- you have

21   a good excuse for not filing it sooner than January 30 because

22   you didn't receive the December 10 notice of the deadline even

23   though the city says it was mailed to you.  Right?  Is that --

24   is that what you're saying?

25         MS. REED:  Yes, Your Honor.

1           THE COURT:  All right.  All right.  Well, Mr.

2  Swanson, what do you want to say about -- further about this?

3           MR. SWANSON:  Well, Your Honor, the certificate of

4  service was -- indicates that it was mailed to Ms. Reed.  Ms.

5  Reed has not denied that she received it.  She received other

6  bankruptcy paperwork.

7           THE COURT:  Well, I think she is denying she

8  received it, isn't she?

9           MR. SWANSON:  I think she said she didn't -- she

10 didn't --

11          THE COURT:  She didn't recall it and she said she

12 reads all of her mail.

13          MR. SWANSON:  Sure.  Well, the case law I think is

14 fairly clear that -- that the certificate of service is valid

15 and that is evidence that it was received by the claimant

16 unless there is an indication by the claimant otherwise.

17      If -- and -- and we can argue Ms. -- Ms. Reed received

18 all other bankruptcy paperwork, why -- why would this one go

19 missing.  But it was filed late.  There was a clear deadline.

20 We're enforcing the deadline equally to everyone and it -- and

21 it -- and it simply wasn't timely filed.  And the Court should

22 deny it on -- on that basis.  And that's it.

23          THE COURT:  Well, do you -- do you agree or disagree

24 with this proposition that if a -- if Ms. Reed can -- can

25 prove and the Court finds based on evidence, testimony,

1  evidence that Ms. -- even though the city has -- has -- their

2  -- their serving and servicing agent has certified that --

3  that the notice, the December 10 notice, was mailed to her by

4  first class mail, the -- if the Court nonetheless finds that

5  she did not actually receive it, is -- is that sufficient to

6  establish excusable neglect for her failure to file her

7  administrative expense claim before January 30th?  File it that

8  -- four days late like that.

9        MR. SWANSON:  If the -- if the Court finds that she

10  did not receive it based on testimony that establishes

11  excusable neglect, I believe there's also an attorney from the

12  EEOC who was representing her in -- in this matter and a

13  notice was also mailed to him.  I mean how many times can the

14  city --

15        THE COURT:  Well, wait a minute.  Mr. Price --

16  you're referring to Mr. Price.

17        MR. SWANSON:  Yeah.

18        THE COURT:  He's not representing Ms. Reed --

19        MR. SWANSON:  I'm sorry.  He's investigating her

20  charge.

21        THE COURT:  -- individually, is he?

22        MR. SWANSON:  No.  I -- I think you could ask him,

23  but I believe he's just investigating her charge.

24        THE COURT:  He's an attorney for the EEOC, not for

25  Ms. Reed, isn't that right?

1          MR. SWANSON:  Correct.  That is correct, Your Honor.

2          THE COURT:  Okay.  So and I -- I assume you -- you

3  agree that the -- the order confirming the plan required at

4  Page 104, it required the paragraph where it sets this

5  deadline, required that the procedures, including procedures

6  regarding these administrative expenses, notice of that be

7  mailed to all claimants.

8          MR. SWANSON:  Okay.

9          THE COURT:  Okay.  So if the notice, that is the

10 December 10 notice, 8649 docket number, was mailed -- was

11 actually received by Ms. Reed within a reasonable time after

12 it was mailed by the servicing agent according to their

13 certificate of service, then she had plenty of advance notice

14 by virtue of that notice of the January 26th deadline and you

15 would argue she -- there's no excusable neglect.

16         MR. SWANSON:  Correct, Your Honor.

17         THE COURT:  Right?  Okay.  So the -- the so-called

18 mailbox rule and presumption under 6th Circuit authority and

19 under the <u>Yoder</u> case, <u>Bratton v the Yoder Company</u>, holds that

20 there is a rebuttable presumption that a document mailed to an

21 addressee properly addressed and proper postage was received.

22      But it's a rebuttable presumption.  It can be rebutted by

23 among other things simply testimony of the -- the addressee

24 that they never received it.

25      And now we don't have testimony yet from Ms. Reed, of

1  course, but do -- do we need an evidentiary hearing in her

2  case and in the case of any other claimants like her who say

3  they will testify that they never received the notice of the

4  January 26th, 2015 administrative expense deadline, filing

5  deadline.

6          MR. SWANSON:  Well, that's certainly --

7          THE COURT:  How should the Court handle this?  And

8  by the way just for the record, the Yoder case is Bratton v

9  the Yoder Company, In Re: Yoder Company, 758 F 2d Page 1114,

10 6th Circuit decision from 1985.  That's what I mean by the

11 Yoder case.  Go on, you were -- you were saying.

12          MR. SWANSON:  Your Honor, I think first off the

13 proper procedure would be for Ms. Reed to file a motion to

14 excuse her late filing like the EEOC.

15     And Ms. Stanley to the extent that after such a filing

16 the Court would find that there is an evidentiary issue, then

17 I believe the proper procedure would be to have an evidentiary

18 hearing.  I don't think that's necessary here today.  We're

19 not there.

20     We had a deadline.  There's been no motion filed to

21 extend that deadline.  And -- and the city views this as a --

22 as a cut and dry matter.

23          THE COURT:  Are you -- are you arguing that I should

24 not give Ms. Reed now a chance to file such a motion?

25          MR. SWANSON:  In the city's view it would be a -- it

1 would not be a fruitful motion for both the reason that the

2 certificate of service is clear that it was mailed to her.

3 She's obviously received other pleadings in this bankruptcy

4 case.

5      And it was on Page 7 of -- of this notice.  I don't know

6 if there's any issue or if -- or if Ms. Reed read every single

7 piece of paper she received front to back.  But even if the

8 Court were to allow this motion, and I think the city has

9 argued -- or I know the city has argued, these are not costs

10 of administration in a Chapter 9 bankruptcy case.

11      Ms. Reed may have an ordinary course claim against the

12 city, but it's -- it -- we're here today on a very narrow

13 issue, on whether any of these are administrative expenses.

14 And none of them are administrative expenses.

15      THE COURT:  Well, I've already ruled that we're not

16 here today on that issue as -- as concerns Sheila Reed because

17 the city's objection -- only objection to her administrative

18 expense claim that was filed only argued timeliness.

19      MR. SWANSON:  I'm sorry, Your Honor.  I was trying

20 to reply to your question of whether the Court should allow

21 her to file a motion.

22      THE COURT:  I mean perhaps what you're saying is,

23 the whole thing is a futile exercise because in the end, even

24 if she filed it timely her -- her late filing is excused on

25 grounds of excusable neglect.  Her administrative expense

1  claim is going to have to be denied because it's not properly

2  an administrative expense claim under the law, right?

3      MR. SWANSON:  That is correct, Your Honor.

4      THE COURT:  So I guess you're arguing why go through

5  all of this exercise when that's where it's going to end up.

6      MR. SWANSON:  That was the question I was trying to

7  respond to, Your Honor.

8      THE COURT:  Okay.  Well, now you know Ms. Reed of

9  course hasn't had herself notice of that argument, proper

10  notice of that argument.

11      MR. SWANSON:  Sure.

12      THE COURT:  And an opportunity to respond to it.  So

13  it's a little hard and I think in fairness -- there's fairness

14  and notice problems with me making a ruling like that that's

15  made when the argument was made right the first time at the

16  hearing, particularly in the case of a pro se claimant.

17      So what do you think is the most efficient way to move

18  this forward toward an ultimate decision on this

19  administrative expense claim?  Do you want for example -- so I

20  guess for these reasons, is what I'm saying is, I'm not

21  willing to rule in favor of your futility argument today for

22  notice reasons.

23      MR. SWANSON:  Sure.

24      THE COURT:  Ms. Reed has to have to respond to that

25  before I can rule on that.  Should I give her that chance and

1   then at the same time tell her -- give her a deadline to file

2   the motion to extend the deadline, the January 26th deadline to

3   January 30 after the fact on the grounds of excusable neglect?

4   You know, what -- what's -- what is the most efficient way of

5   proceeding in your view?

6         MR. SWANSON:  Well, in -- in my view I -- I think

7   the Court can -- the only thing in front of the Court today is

8   whether or not this administrative expense claim was timely

9   filed.

10        It wasn't timely filed.  I think the Court can make a

11  ruling on that issue today.  That there's been no motion to

12  excuse the late filing.  To the extent that Ms. Reed files a

13  motion to excuse the late filing, then we can address it at

14  that point.

15        But I think today we're here on a very narrow issue,

16  whether this was timely filed.  And -- and certainly I don't

17  think anything here today would establish excusable neglect.

18  To the extent that Ms. Reed wants to supplement this at -- at

19  a later date, the city will respond to that motion at that

20  time, but today it's a very narrow issue.  It was not filed on

21  time.  The Court can enter an order sustaining the city's

22  objection.

23        THE COURT:  By the way I just -- I noticed -- I was

24  -- I was looking at the certificate of service that you cite

25  in Paragraph 3 of your objection to Ms. Reed's claim.  That's

1  the servicing agent's certificate of service regarding the

2  notice of the effective date and the administrative claims bar

3  date and so forth, the December 10 notice.

4       And Ms. Reed's, I look at the page that you cited there

5  in Paragraph 3 of your objection to the certificate of service

6  exhibits.  Ms. Reed's address is one of those that's redacted,

7  perhaps because she's police -- police?

8            MR. SWANSON:  Correct, Your Honor.

9            THE COURT:  It's redacted and unlike with -- with

10  what you filed regarding Sherell Stanley, there is no

11  affidavit from Michael Pakai or Pakai or anyone else from KCC

12  that says what address it is, or addresses it is that the

13  notice was sent to Ms. Reed.

14       So we all have a problem with the record that way I guess

15  as well.  So all right.  Anything else you want to say about

16  Ms. Reed's matter?

17            MR. SWANSON:  If it -- if it would assist the Court,

18  Your Honor, we're certainly willing to obtain a similar

19  declaration from Mr. Pakai.

20            THE COURT:  All right.  Well, thank you.  With

21  respect to the objection to the claim of Sheila Reed, as I

22  said on grounds of -- of -- of due process and proper notice

23  to Ms. Reed, the only issue before the Court today with

24  respect to the city's objection to her administrative expense

25  claim that was filed January 30, 2015 is the -- what the city

1   argued in its May 4, 2015 objection to her administrative

2   expense claim docket 9791, namely that the claim -- expense

3   claim should be denied because it was not timely filed.  It

4   was filed January 30 rather than by the January 26, 2015

5   deadline established by the Court.

6        The so-called futility arguments, arguments essentially

7   that even if it was timely filed this is not properly

8   considered an administrative expense claim and should be

9   denied for that reason is an issue that's not before the Court

10  with respect to Ms. Reed's matter or expense -- administrative

11  expense claim today, so I'm not going to rule one way or the

12  other on that case, in the case of Ms. Reed.

13       Although the city is free to make that argument as part

14  of the further proceedings they're going to argue regarding

15  her -- the city's objection to her administrative expense

16  claim.  The further proceedings are going to be number one,

17  and I'll prepare and enter an order reflecting these further

18  proceedings.

19       Number one, the city must file a supplement to its

20  objection.  Well, let's do it -- scratch that.  I'm going to

21  do a little different order.

22       Number one, Ms. Reed must file a motion seeking an

23  extension of the January 26, 2015 deadline to January 30, the

24  day on which she filed her administrative expense claim on the

25  grounds of excusable neglect.  Which means on the ground that

1  among other grounds, possible grounds, the ground that she did

2  not actually receive the December 10, 2014 notice, document

3  number 8649.

4      That the city's servicing agent certified that it mailed

5  to her.  The -- that was the notice of the confirmation, the

6  notice of the effective date of the plan, and the notice of

7  the administrative expense filing deadline, January 26, 2015.

8      That -- that motion must be supported by an affidavit or

9  a declaration under penalty of perjury by Ms. Reed swearing or

10  declaring under penalty of perjury that she did not receive in

11  the mail that notice.

12      Ms. Reed, I think to -- to help matters, help move

13  matters along and facilitate matters, I will cause to be

14  printed while you're still here today a copy of the December

15  10 notice that I've been talking about.  So you will now have

16  it and you can look at it and you'll know what notice we're

17  talking about.

18          MS. REED:  Yes, Your Honor.

19          THE COURT:  When I'm -- when I'm talking about this

20  notice that had in it Paragraph 7, the January 26, 2015 filing

21  deadline.  So I'll ask my courtroom deputy to print that

22  please.  It's docket 8649, the seven -- eight page notice.

23  And we'll get that to you.  So don't leave until we can give

24  you that copy.

25          MS. REED:  Yes, Your Honor.

1          THE COURT:  So that's number one.  And I want to set

2     a deadline for Ms. Reed to file that motion, such a motion if

3     you're going to.  Ms. Reed, do you want -- is seven days from

4     now enough time, June 10 to -- to do that?

5          MS. REED:  Yes, Your Honor.

6          THE COURT:  All right.  So June 10, 2015 will be the

7     deadline for Ms. Reed to file such a motion.  The city, if she

8     does timely file such a motion, the city must file a response

9     to it no later than -- is June 17 enough time, Mr. Swanson?

10          MR. SWANSON:  Yes, Your Honor.  Thank you.

11          THE COURT:  June 17, 2015.  As far as part of that

12     response if you wish to Mr. Swanson, and I assume you will

13     from what you've argued, you will -- you may want to put in --

14     include an affidavit from the servicing agent that gives the

15     actual address, that that notice was mailed to -- for Ms. Reed

16     here.

17       If you think for security reasons that -- that such

18     document should be filed in redacted form or under seal,

19     because you don't want to on the public record the address of

20     Ms. Reed, that's fine.  So what I'll say is that that response

21     may be filed under seal.

22       Actually the exhibit, the KCC affidavit or declaration

23     may be filed under seal so as not to make part of the public

24     record the address of Ms. -- Ms. Reed here.

25          MR. SWANSON:  Your Honor if I may.

1          THE COURT:  Yeah.

2          MR. SWANSON:  I believe when we file something under

3   seal we need a -- a Court order.  So if you could put -- put

4   that in the order setting these deadlines, I believe we can

5   show that to the Court clerk.

6          THE COURT:  Yes, I will.  I'll put that in the

7   order.

8          MR. SWANSON:  Okay.  Thank you.

9          THE COURT:  And I'm only talking about that -- that

10  exhibit.

11         MR. SWANSON:  Exactly.

12         THE COURT:  Not the rest of what you file by June

13  17th.  All right.  Then Ms. Reed then may file a reply to the

14  city's response no later than June 24, 2015.

15      The city may include in its response to this motion,

16  anticipated motion from Ms. Reed as one of its arguments for

17  denying the motion to extend the deadline that it would be

18  futile to do so because the claim is not properly brought as

19  an administrative expense claim on the merits in any event.

20      So you -- you can raise that argument in writing and that

21  will be sufficient notice to Ms. Reed of the argument.  She

22  can then respond to it in the reply that she's going to have

23  the right to file by June 24th.

24      Then -- hold on one second.  I'd like to set a further

25  hearing date on the -- the city's objection to the claim and

1  also a hearing date now in advance on the anticipated motion

2  that Ms. Reed will file, both.

3      We have a hearing date coming up on July 22, but there's

4  a growing list of matters for that date.  I'd like to do this

5  -- this one on the week before, July 15 at 1:30.  Is that a

6  date and time that works on your calendar, Mr. Swanson?

7          MR. SWANSON:  Your Honor, if I may have a second.

8          THE COURT:  Sure.

9          MR. SWANSON:  Yes, Your Honor, that's acceptable to

10  the city.  Thank you.

11         THE COURT:  Ms. Reed, any reason you couldn't make a

12  July 15 hearing at 1:30 here?

13         MS. REED:  No, Your Honor, I work midnights.

14         THE COURT:  By the way Ms. Reed, I noticed that

15  you've got an address that's listed on the administrative

16  expense claim that you filed on January 30, 336 Pinecrest,

17  Ferndale, Michigan 48220.  Is that your current address?

18         MS. REED:  Yes, Your Honor.

19         THE COURT:  All right.  Well, that's already in the

20  public record, so there's no need to file this exhibit from

21  the servicing agent under seal, Mr. Swanson.  So I'll -- I

22  won't put in any stuff about that in the order.

23      So, all right.  So I'm going to prepare and enter an

24  order that reflects all of these further proceedings.  And Ms.

25  Reed and Mr. Swanson, because this is a bit complicated, this

1 whole thing I just went through, you know, just -- I would --

2 I would urge you to take a look at the order that will lay

3 everything out, the sequence exactly what further proceedings

4 are in the order that I'm going to prepare and enter.

5 And Ms. Reed, in your case you should get a copy of that

6 order from our clerk's office within the next few days in the

7 mail.

8 MS. REED: Yes, Your Honor.

9 THE COURT: So read that and have you given her the

10 notice yet? Okay. We're handing -- my clerk is handing you

11 the copy of the notice, the December 10, 2014 notice. In

12 particular at Paragraph 7A on Page 7 is the -- the provision

13 that has the January 26, 2015 deadline in it.

14 So that's for your reference. And then as I said you'll

15 get the order from today's hearing in the mail and we'll have

16 further proceedings. If the parties manage to for any reason

17 to settle this dispute of course you'll -- you'll let the

18 Court know by some sort of stipulation and order that you

19 submit, I'm sure. But otherwise we'll look for the -- the

20 further matters to be filed.

21 I will say in the order that I'm going to enter that if

22 -- if Ms. Reed does not comply with the order by filing this

23 motion to extend the deadline with an affidavit or declaration

24 of penalty of perjury attached by the deadline of June 10, the

25 Court will enter an order sustaining the city's objection on

1 | grounds of an untimely filing.

2 |     So Ms. Reed, it is important that you get this motion

3 | filed by that deadline if you want to keep pursuing this

4 | claim, this administrative claim.

5 |           MS. REED:  Yes, Your Honor.

6 |           THE COURT:  All right.  So Ms. Reed, any questions

7 | about what we're doing going forward with this?

8 |           MS. REED:  No, Your Honor.

9 |           THE COURT:  Same thing to you, Mr. Swanson.  Any

10 | questions?

11 |           MR. SWANSON:  Yes, Your Honor.  You mentioned an

12 | evidentiary hearing.  Should the city be prepared for an

13 | evidentiary hearing on -- on July 15th?

14 |           THE COURT:  No.

15 |           MR. SWANSON:  No, okay.  Thank you.

16 |           THE COURT:  No.  Before I'm convinced that we need

17 | an evidentiary hearing I want to see what gets filed.

18 |           MR. SWANSON:  Thank you.

19 |           THE COURT:  And what it's -- what these further

20 | filings say.  We may need one.  If -- if we do, I would expect

21 | to schedule such an evidentiary hearing in the fairly near

22 | future after July 15.  So that this wouldn't drag on much

23 | longer than that before we can have any necessary evidentiary

24 | hearing and I can make a -- an ultimate decision on the

25 | timeliness issue.  You know, we're also going to be dealing at

1  the July 15 hearing, I assume also with the futility argument

2  as well.

3           MR. SWANSON:  Yes, Your Honor.

4           THE COURT:  So I have not -- I don't see -- I'm not

5  convinced we're going to need an evidentiary hearing

6  ultimately yet, but it may end up there.

7           MR. SWANSON:  Thank you.

8           THE COURT:  Any other questions, Mr. Swanson?

9           MR. SWANSON:  No, Your Honor.  Thank you.

10          THE COURT:  All right.  Thank you.

11      The next matter then is -- are the -- there's two matters

12  dealing with the administrative expense claim filed by Sherell

13  Stanley.  One is the -- the application for administrative

14  expense filed by Sherell Stanley.

15      And then the other -- the other matter -- to which the

16  City of Detroit has objected and -- and the other is Sherell

17  Stanley's motion filed on May 21 to extend the deadline for

18  filing of an administrative expense claim.  Essentially

19  arguing excusable neglect for Ms. Stanley's not having filed

20  her administrative expense claim until February 6th, 2015 after

21  the January 26th deadline.  So you are?

22          MS. STANLEY:  Sherell Stanley, sir.

23          THE COURT:  All right.  So -- and of course Mr.

24  Swanson for the city.  So Ms. Stanley, you reviewed the city's

25  objection to your motion to extend the deadline, I assume,

 1  right?

 2          MS. STANLEY:  Yes, sir.

 3          THE COURT:  Okay.  So let me start with Mr. Swanson

 4  and hear you -- what you'd like to argue on these -- both of

 5  these matters, the objection to the administrative expense

 6  claim and the city's objection to Ms. Stanley's motion to

 7  extend the deadline.  And then we'll hear from Ms. Stanley on

 8  this.  Mr. Swanson.

 9          MR. SWANSON:  Yes, Your Honor.  In this case with

10  respect to Ms. Stanley, we do have an affidavit from Mr. Pakai

11  which indicates this notice was served at least once on Ms.

12  Stanley.

13          THE COURT:  Yes.  I reviewed that -- that

14  certificate of service that you're referring to.  You've cited

15  that in your -- I believe in your brief opposing the motion to

16  extend, right?

17          MR. SWANSON:  Yes, Your Honor.

18          THE COURT:  Yes.  I did review that.  It looks like

19  from the pages you cited and the exhibit to that certificate

20  of service, it looks like it was -- it might have been served

21  in the three or four different mailings, but all to that same

22  P.O. Box 321032, Detroit, Michigan, right?

23          MR. SWANSON:  That's correct, Your Honor.  In this

24  case it was mailed at least once and as Your Honor indicates,

25  probably more than once.

1          THE COURT:  And that was mailed on -- on or before

2    December 16, 2014 according to the certificate of service.

3          MR. SWANSON:  That's correct, Your Honor.

4          THE COURT:  Okay.  All right.  Go ahead.

5          MR. SWANSON:  Ms. Stanley also admits to receiving

6    the plan and submitting a ballot on her unsecured claim.  Your

7    Honor, the plan contained these same deadlines.

8        The city thus provided Ms. Stanley with notice at least

9    three or four times of these deadlines.  And -- and the city

10   asserts that no excusable neglect could possibly exist when

11   you provide someone notice of a deadline at least three or

12   four times.

13         THE COURT:  Well, what notice other than the

14   December 10 notice notified Ms. Stanley of the -- what the

15   effective date of the plan was and/or what the -- therefore

16   based on the effective date, what the actual deadline was for

17   filing administrative expense claims.

18         MR. SWANSON:  Sure.

19         THE COURT:  I know the December 10 notice did that.

20   Isn't that the only one?

21         MR. SWANSON:  Well, Your Honor, the -- the plan

22   obviously contains the provision which provides that

23   administrative expense claims must be filed within so many

24   days of the effective date.  At that point it was widely

25   reporting in the news that the city's plan had been confirmed.

1 The city's plan had gone effective thus there was notice that

2 something had to be done.  And it would --

3           THE COURT:  So you're relying on news media reports?

4           MR. SWANSON:  Your Honor, we're relying on the

5 certificate of service and the notice that was sent to her

6 house.

7           THE COURT:  Well, I understand that.  But --

8           MR. SWANSON:  Yeah.

9           THE COURT:  But my question is, if you're arguing

10 that there were other ways that she learned or was notified of

11 the January 26th, 2015 deadline, I want to know what you're

12 arguing.  If you're saying because she should have known it

13 from the news reports, what -- what news reports?-

14           MR. SWANSON:  Well, there was no specific notice of

15 the effective date other than the December 10th notice that

16 Your Honor indicates.  There was certainly a -- a plan that

17 was sent to her which said that administrative expense claims

18 need to be filed within a certain number of days.  And I

19 believe if you look at the version of the plan that always

20 range from 30 to 45 days.

21      So although the effective date was a moving target, there

22 was certainly several notices provided that something would

23 have to be done after the bankruptcy case was concluded.  And

24 that was sent to Ms. Stanley as well.

25      So the only notice as Your Honor indicates with respect

1  to the effective date was a notice of effective date.  And

2  that was mailed to Ms. Stanley three or four times.  Thus

3  there -- there is no excusable neglect.

4           THE COURT:  Well, three or four separate mailings on

5  the same date presumably by roughly on or before December 16,

6  right?

7           MR. SWANSON:  Correct.

8           THE COURT:  All to this -- this P.O. Box.

9           MR. SWANSON:  Yes.

10          THE COURT:  Right?

11          MR. SWANSON:  Yes.

12          THE COURT:  Okay.  Go on.

13          MR. SWANSON:  And -- and in response to Ms.

14  Stanley's motion to excuse untimely filing, the city did raise

15  the futility argument that this is not an administrative

16  expense claim in a Chapter 9 case.  It is not a cost of

17  administration.  There is no estate, thus there can be no cost

18  to preserve the estate.

19      And it also appears that Ms. Stanley's claim is based on

20  events which occurred entirely before the filing of the

21  bankruptcy case.  Thus all of these -- all -- the entire claim

22  is an unsecured claim to the extent it's valid and Ms. Stanley

23  has filed unsecured claims in this case.

24          THE COURT:  Wait a minute.  Wait a minute.  I missed

25  -- I missed the -- did you argue that in your response to her

1 | motion?

2 |         MR. SWANSON:  I did not -- I did not raise the

3 | argument that it was.  I raised the argument that this is not

4 | the type of claim that is an administrative claim.

5 |         THE COURT:  Yeah, I -- I saw that.  If -- if you're

6 | also arguing that this is not an administrative expense claim

7 | because it arose entirely pre-petition, I missed that.  Is

8 | that --

9 |         MR. SWANSON:  No, I did not make that specific

10 | argument.

11 |         THE COURT:  Is there a basis for the Court to find

12 | that based on what -- anything that's in the record?

13 |         MR. SWANSON:  Your Honor could look at the

14 | administrative expense claim filed by -- oh, I apologize, Your

15 | Honor.  Let me find it here.

16 |         THE COURT:  There is --

17 |         MR. SWANSON:  It is in the --

18 |         THE COURT:  Perhaps you were thinking of the

19 | discrimination charge that's attached to Ms. Stanley's

20 | administrative expense claim is that -- is that it?

21 |         MR. SWANSON:  I was -- actually, Your Honor, I can

22 | refer to that, but I was thinking of the EEOC's administrative

23 | expense claim where it says beginning in October of 2012.

24 | That's when the discrimination occurred.

25 |         But I -- I do see in Ms. Stanley's -- well, yes, in Ms.

1  Stanley's charge it also talks about how this discrimination

2  occurred in the fall of 2012 which would be prior to the --

3           THE COURT:  You're looking at her charge of

4  discrimination that's attached to the administrative expense

5  claim that she filed, docket --

6           MR. SWANSON:  Correct.

7           THE COURT:  -- 9189?

8           MR. SWANSON:  Yeah, that's correct.

9           THE COURT:  Is that right?

10          MR. SWANSON:  Yes.

11          THE COURT:  Okay.  So that says since the fall of

12  2012 through November 2013 had been retaliated against subject

13  to different terms, et cetera.  So it sounds like she's

14  alleging a continuing series of -- of sex discrimination

15  actions, retaliatory actions, some which occurred pre --

16  pre-bankruptcy petition, and some which occurred

17  post-petition, right?

18          MR. SWANSON:  Agreed, Your Honor.

19          THE COURT:  So at least to some extent, at least as

20  -- as alleged the -- the claim arose post-petition.

21          MR. SWANSON:  Certain of the acts as alleged arose

22  post-petition.

23          THE COURT:  We don't know to what extent, but to

24  some extent, right?

25          MR. SWANSON:  Certainly.

1          THE COURT:  Okay.  So -- all right. So go on, you

2  were saying.

3          MR. SWANSON:  That -- that irregardless of when the

4  -- whether these acts occurred post-petition, this is not an

5  administrative expense in a Chapter 9 case.  This is not a

6  cost of administration.

7      The city filed its objection to Ms. Stanley's motion last

8  weeks and the city had additional time to reply but it wanted

9  everything to be heard today for all parties' convenience,

10  raised this argument and -- and it is not an administrative

11  expense.  That's the narrow issue we're here on today.

12      One was it filed on time.  No, it was not filed on time.

13  Two, under -- could this conceivably be an administrative

14  expense.  The answer is no.  Thus the city asks this Court to

15  sustain its objection to both the administrative expense claim

16  and the motion to excuse late filing.  Thank you.

17          THE COURT:  One moment.  You also made this same

18  futility argument in your objection that you filed to the

19  EEOC's motion.

20          MR. SWANSON:  That's correct.

21          THE COURT:  That's scheduled for hearing today to

22  excuse their late filing, right?

23          MR. SWANSON:  That's correct, Your Honor.

24          THE COURT:  Okay.  And that was -- each of these

25  documents, your objection to Ms. Stanley's extension motion

1  your objection to the EEOC's extension motion were filed May

2  29.

3       MR. SWANSON:  That's correct, Your Honor.

4       THE COURT:  Yeah.  And you know, the reason the

5  motions are scheduled so quickly after that is because of me.

6  I saw that they were obviously related to the objection to the

7  administrative expense claims and the timeliness issue.  So I

8  thought we ought to hear them all at the same time.  And

9  that's the reason that those motions were scheduled for

10  hearing so quickly after Ms. -- or the EEOC and Ms. -- Ms.

11  Stanley would have received in the mail in her case the --

12  your response to her motion and this futility argument that's

13  in there as part of it.

14      Should I give Ms. Stanley and the EEOC an opportunity to

15  respond to that -- that argument before I rule on it?

16  Futility argument, I mean right now.

17       MR. SWANSON:  That is fine with the city, Your

18  Honor, if the Court is inclined to give them additional time.

19  Based on this Court's ruling last week, the city believes it's

20  fairly clear that discrimination claims of any kind could

21  never constitute costs of administration in a -- in a Chapter

22  9 case.  And --

23       THE COURT:  I -- I have a vague recollection that

24  somebody ordered a transcript already of last week's hearing,

25  is that right?

1          MR. SWANSON:  I believe that's correct, Your Honor.

2          THE COURT:  Yeah.  In any case Ms. Stanley and the

3    EEOC can listen to the audio of last week's hearing where this

4    issue came up and hear what I -- I ruled and what I said about

5    it.

6          Although it was kind of a very long hearing and it's

7    going to be kind of buried in there.  Perhaps the thing to do

8    -- let me -- hold on one second.  Yeah, the city ordered a

9    transcript of last Wednesday's hearing, the same day, whatever

10   the same day, Stephen LaPlante ordered it, I believe.  A

11   couple of transcripts, yeah, he ordered docket 9889, no

12   transcript has been filed yet.  Let's see.

13         He ordered an expedited transcript of the entire hearing.

14   So that's -- presumably that's going to be filed pretty

15   quickly, pretty soon, although it was about a four hour

16   hearing, so it's going to take a little bit of time to get a

17   transcript.

18         Perhaps the thing to do just to -- to fairly put the city

19   and Ms. Stanley and the EEOC all on sort of a level playing

20   field with respect to what I ruled last week during the

21   hearing last week on this futility subject, is to -- is for me

22   to once that transcript is filed, for me to pull out the --

23   the part -- the parts where I made rulings about this and --

24   and file that part as a memorandum that would go to the EEOC

25   and Ms. -- Ms. Stanley so they can read it and be aware in

1  that way of what I ruled previously before they respond to the

2  city's argument.

3      I think in fairness, I assume -- I don't think they were

4  here last week at the hearing.  I -- I think perhaps in

5  fairness I'll let them have that transcript.  Of course you

6  can see it also, exactly what I said on this subject and use

7  that in your further your argument as well if you want to do

8  that.

9      So, all right.  One second.  Okay.  So this discussion

10  we've just been having has to do with this what I'll call this

11  futility argument.  Did you want to say anything more about

12  the timeliness issue apart from the futility issue here?

13          MR. SWANSON:  No, Your Honor.  Thank you.

14          THE COURT:  All right.  Ms. Stanley, what would you

15  like to say about these matters?

16          MS. STANLEY:  I would like to first thank the Court

17  for having us and giving us an opportunity to address this.

18  The city's objection to my motion by the way, I never received

19  either but for the EEOC having emailed it to me.

20          THE COURT:  You never received what?

21          MS. STANLEY:  I never received the city's objection

22  to -- to the motion.

23          THE COURT:  The objection to --

24          MS. STANLEY:  Via U.S. Mail anyway.  I did receive

25  it from the --

1          THE COURT:  You mean the objection they filed last

2    week to your motion to extend the deadline?

3          MS. STANLEY:  Yes, sir.

4          THE COURT:  Oh, I see.

5          MS. STANLEY:  Yeah.

6          THE COURT:  Well, it was only filed on May 29 about

7    6:00 p.m.  So --

8          MS. STANLEY:  But I do have a copy, sir.

9          THE COURT:  Yeah.  That's last Friday, it was late

10   last Friday, so you may still get it in the mail.  But you

11   have a copy you've reviewed it?

12         MS. STANLEY:  Yes, sir.

13         THE COURT:  All right.  Go on.

14         MS. STANLEY:  Okay.  And I'd also like to say that

15   I'm -- I'm -- I'm not denying that the city mailed me the

16   correspondence, however I'm unable to confirm receipt.  I was

17   out of town during that particular period in December and part

18   of January.  And someone else was collecting my mail.

19        So I'd also like to say that the correspondence that I've

20   been receiving, I compile all of my correspondence regarding

21   this matter, the city's bankruptcy case that I receive anyway

22   and my EEOC claims in -- in one binder.

23        And I've gone through it and I have not found the notice

24   that the city has referred to.  However, I did pull a copy of

25   it from the internet as I indicated in my motion.

1        Additionally, the correspondence --

2            THE COURT:  Now the notice you're talking about now

3  is the December 10, 2014 notice?

4            MS. STANLEY:  Yes, sir.

5            THE COURT:  This -- the eight page notice?

6            MS. STANLEY:  Yes, I believe that's how many pages

7  it is.

8            THE COURT:  Yeah.  Paragraph 7A of which had the

9  January 26, 2015 deadline in it?

10           MS. STANLEY:  Yes, sir.

11           THE COURT:  That notice.  So you have that now, you

12  know what that notice says now.  And you're saying what, that

13  you can't confirm that that was actually received in the mail

14  by you?

15           MS. STANLEY:  Affirmed that.  But I can't confirm

16  receipt.  Again I compile all of my documents in this one

17  binder and I have yet to locate that other than the copy that

18  I procured and printed off from the internet.  The

19  correspondence was --

20           THE COURT:  Well, was -- as of December, last

21  December, was this P.O. Box that's listed for you the correct

22  address for your mail, P.O. Box 321032, Detroit, Michigan?

23           MS. STANLEY:  Yes, sir.

24           THE COURT:  44238?

25           MS. STANLEY:  Yes, sir.

1          THE COURT:  44232, I guess.

2          MS. STANLEY:  Strike that.  What is my number there?

3   Post Office Box 321032, Detroit, 48232.

4          THE COURT:  Yeah.

5          MS. STANLEY:  Yes, sir.

6          THE COURT:  Okay.  So they -- the servicing agent

7   certified that on or before December 16, it mailed to you four

8   different copies of that notice all to that P.O. Box.  And you

9   said somebody else was collecting your mail from that P.O. Box

10  in December?

11         MS. STANLEY:  Yes, sir.  I was -- again I was out of

12  town during that period and they were collecting the mail.

13         THE COURT:  Who was collecting your mail?

14         MS. STANLEY:  A friend of mine.  Her name is Sharita

15  Black.

16         THE COURT:  And then at some point you came back to

17  town and got your mail?

18         MS. STANLEY:  Yes, sir.

19         THE COURT:  From her.

20         MS. STANLEY:  Yes, sir.

21         THE COURT:  And when was that?

22         MS. STANLEY:  That would have been sometime in

23  January, early January.

24         THE COURT:  And from reviewing that pile of mail

25  you're saying you don't -- you didn't see in there and have

1  not found anywhere in there or anywhere in your mail that you

2  received at this P.O. Box any copies of this December 10

3  notice.

4        MS. STANLEY:  I -- not of the December 10 notice.

5  Many -- all of the correspondence that I've received from the

6  city anyway is -- is poorly marked.  In that it doesn't

7  indicate that it's a -- a Court notice of any kind.

8        Like for example I have one here.  That's from Alaska --

9  what was this, Alaska Avenue in -- in California.  And -- and

10  most of them are coming from that address.

11        So it's very possible -- and I can get an affidavit if

12  the Court will grant me an adjournment from Ms. Black to

13  determine what she may have done with it if anything if it was

14  actually mailed and -- and received by her.

15        But again the -- the correspondence received from the

16  city regarding this matter is just not marked.  You would

17  never know that it was related to a -- a Court proceeding

18  unlike correspondence I received from the Court that

19  specifically state that's a notification of a -- of a Court

20  proceeding.

21        So it's very possible she discarded it, I don't know.

22  But what I can tell you is that I cannot confirm receipt of

23  that correspondence.

24        THE COURT:  It's possible Ms. Black discarded the

25  December 10 notice that was -- that was received at your P.O.

1 | Box, is that what you're saying?

2 |     MS. STANLEY: I don't know. I would have to request

3 | that the Court give me an opportunity to speak with her about

4 | it considering again that the mail that I received from the

5 | city regarding this bankruptcy case is poorly marked. But I

6 | do know I never received it.

7 |     THE COURT: I'm not sure what you mean by that,

8 | poorly marked. What do you mean?

9 |     MS. STANLEY: The envelopes that I've received

10 | regarding this matter, all of them are just white in color and

11 | just have a return address of this location on Alaska Avenue

12 | in California.

13 |     THE COURT: Well, that's where the servicing agent

14 | was mailing these things from. The servicing agent for the

15 | city in this case is Kurtzman, Carson Consultants, LLC. I

16 | believe they are in California.

17 |     MS. STANLEY: Okay.

18 |     THE COURT: But you -- you -- you would have gotten

19 | a lot of mail in the case from the very same place.

20 |     MS. STANLEY: Well, I have received a -- a lot of

21 | mail. But again, I -- I compile it all here and I -- I simply

22 | don't have it here.

23 |     THE COURT: All right. So go ahead, what -- what

24 | else did you want to say? Anything else?

25 |     MS. STANLEY: Yes, sir. In response to the city

1  indicating within its objection to my motion, that I was made

2  privy of the plan because of the vote that I submitted back in

3  July, that was well before December.

4      I voted in July and made the city -- I think that was the

5  second time that I brought the matter of my claim to the

6  city's attention. And that was in July of 2014. It wasn't

7  until apparently December that this was filed and I was not

8  aware of the effective date.

9      They also indicated -- they alluded to that I should have

10 been placed on notice somehow because of the media, however I

11 work the midnight shift and I don't have a lot of opportunity

12 to watch TV. So I -- I wasn't made aware of it until I was

13 apprised by the EEOC's office via electronic mail.

14     Also the city indicates in Paragraph 7 of its objection

15 that I provide no supporting -- no support with regard to the

16 mail not having been misrouted or some such, however I do

17 within my motion actually attach a correspondence that they

18 mailed to me that was apparently intended for Ms. Reed on

19 Pinehurst.

20     And I have another mailing that went out to one of my

21 associates who indicated that he didn't receive my mail, that

22 something that I sent to him until a month later and it was

23 all ripped up. And I can present that to the Court too if

24 given an opportunity to do that. So I do provide some support

25 of documentation or information with regard to the misrouting

1   and mismailing of these things.

2       Additionally, counselor has indicated in Paragraphs 11,

3   12 -- 11 and 12 of its objection to my motion, that this

4   bankruptcy case is -- is complex.  It is complex.

5       And then on Page 5 it goes on to say that after

6   conducting a reasonable amount of diligence, it is justifiably

7   confused or uncertain as to where a particular transaction

8   giving rise to the claim is or is not subject to the bar date.

9       My response to that is, I totally agree that this matter

10  is complex, it is convoluted, and extremely confusing.  Within

11  my application of administrative expense claim and in my

12  motion, I referred to the fact that I had notified the -- the

13  city on two different occasions and that was pursuant to that

14  paragraph, I think it's Paragraph 7 -- 7 within the notice

15  that says that if you file prior you would not be required to

16  file again.  And I attached both my proof of claim which

17  clearly --

18          THE COURT:  I don't know where Paragraph 7 says

19  that.  What are you talking about?

20          MS. STANLEY:  In Paragraph 7A, sir.  General bar

21  date provisions except as --

22          THE COURT:  Yeah.  Where?

23          MS. STANLEY:  Within the notice.

24          THE COURT:  Yeah, where is that?  What is the

25  language --

1            MS. STANLEY:  On Page 7.

2            THE COURT:  Yeah, I see it.  What --

3            MS. STANLEY:  Okay.

4       `   THE COURT:  What does it say that --

5            MS. STANLEY:  Paragraph A there.

6            THE COURT:  Yeah.

7            MS. STANLEY:  Except as otherwise provided in sub

8   paragraph 7B or 7C below.

9            THE COURT:  Right.

10            MS. STANLEY:  Or any bar date order or other order

11   of the Bankruptcy Court that's previously filed requests for

12   payment of administrative claims must be filed and served on

13   the city no later than 45 days after the effective date.  So

14   unless previously filed.

15       So again once I read that after pulling this document

16   from the internet, I was under the impression that I wasn't

17   even required to file an administrative expense claim.  And

18   was just urged to do so by the EEOC, hence the reason I did.

19            THE COURT:  Well, you didn't previously file an

20   administrative expense claim, you filed a proof of claim,

21   didn't you?

22            MS. STANLEY:  I filed --

23            THE COURT:  Previously?

24            MS. STANLEY:   -- a proof of claim sir, that

25   included language in Paragraph 1.  It says check this box if

1 | the claim includes interest or other charges in addition to

2 | the principal amount of the claim.  And that's what --

3 |          THE COURT:  You filed a proof of claim on a proof of

4 | claim form with the -- in the case, didn't you?

5 |          MS. STANLEY:  Pardon me, sir?

6 |          THE COURT:  You filed a proof of claim.

7 |          MS. STANLEY:  Yes, sir.

8 |          THE COURT:  Back in 2014.

9 |          MS. STANLEY:  Yes, sir.

10 |          THE COURT:  In the bankruptcy case.

11 |          MS. STANLEY:  Yes, sir.

12 |          THE COURT:  So you filed both a proof of claim and

13 | this application for administrative expense.

14 |          MS. STANLEY:  Yes, sir.

15 |          THE COURT:  All right.  And the reference to 7A is

16 | if you've previously filed a request for payment of

17 | administrative claim you don't have to file it again.  It

18 | doesn't -- it's not referring to previously filing a proof of

19 | claim on the proof of claim form.

20 |      But what you're saying is, that when you read this and --

21 | and you're saying you didn't actually read this and -- and get

22 | confused by it until well after -- until after the January 26

23 | deadline, I guess.  But at that point you were confused by it.

24 |          MS. STANLEY:  Yes, sir.

25 |          THE COURT:  All right.

1          MS. STANLEY:  In that I thought it was inclusive of

2    this claim.  And that again I didn't -- I was obviously

3    confused in that I thought this -- this phrase, or this --

4    this -- this sentence within the proof of claim meant that it

5    was all inclusive of -- of those claims and I would not be

6    required to -- to file an administrative expense claim.  But

7    again I -- I went ahead just for good measure per the urging

8    of the EEOC office and filed it anyway.

9          THE COURT:  Okay.  What else did you want to say

10   then?

11         MS. STANLEY:  And as a matter of good faith too.

12         THE COURT:  Okay.  What else did you want to say?

13      (Off the Record Comments)

14         THE COURT:  All right.  Go on, Ms. Stanley.

15         MS. STANLEY:  Yes, sir.  I want to say too that

16   until I filed my motion that the city didn't indicate that

17   there was any prejudice to them with regard to extending the

18   -- the time of the filing of administrative claim.

19      And that although the city indicates within their

20   objection that my claim is unfounded, is -- is based on

21   unfounded allegations.  My response to that is that my EEOC

22   complaint is currently under investigation.  It's a -- for

23   violations of my civil rights by my employer the City of

24   Detroit.

25      And it's based on discrimination, harassment, and

1 retaliation.  It also includes some medical expenses and

2 illness that I have suffered because -- because of it.  And

3 really that goes to whether or not too I would guess would

4 fall under -- or within the provisions of being an

5 administrative claim at all.

6      One last thing, sir, if you would.  Okay.  Just in

7 closing I just want to urge the Court to consider the true

8 intent of excusable neglect.  And that it was intended to

9 excuse claimants like myself who number one, did not become

10 aware of the deadline until after the fact.

11      And number two, file just a mere week after the target

12 date and further that did not prejudice the -- the city, nor

13 did it allege or claim that it -- that it prejudiced the

14 city's case until now.

15      And finally, I've acted in good faith.  Any

16 correspondence that I've personally mailed to the city with

17 regard to this matter, I have mailed certified to confirm

18 receipt.  And I requested the same courtesy within my

19 application for administrative expense claims.

20      I'd like to add that -- I guess to reiterate that the

21 proceedings are complex and somewhat confusing for I think

22 anybody.  And I've just -- I've navigated my way through this

23 as best I can and compiled these documents as best I can.  And

24 that it's a matter based on the -- the standard actually as a

25 matter of equity, sir.  And I request that the Court if you

1  would, consider that and that my case is still under the --

2  under investigation.  A lawsuit has not been filed in this

3  matter.

4      My case was filed -- my EEOC complaint was filed in

5  November of 2013 and it's still ongoing.  And -- and in fact

6  has been delayed because of -- of the filing of the bankruptcy

7  by the City of Detroit.  So everything is relative in -- in

8  that as a matter of equity this -- this claim is based on a

9  civil rights violation and I have not up until this point to

10  my knowledge anyway because of course I wouldn't know if I

11  didn't receive anything, but to my knowledge I have not missed

12  any other deadlines, so there's no pattern here.

13      And that's all I have for you, sir.  Just that I would

14  just like to urge the Court to consider the actual standards

15  of excusable neglect and allow this matter to go forward in

16  granting my motion.

17          THE COURT:  All right.  Thank you.  Mr. Swanson, did

18  you want to briefly reply?

19          MR. SWANSON:  Yes, Your Honor.  The one consistent

20  thing that exists here, Your Honor, the city has mailed

21  notices and proof of claim deadline to Ms. Stanley.  She filed

22  two proofs of claim.  Mailed the plan.  She filed a ballot on

23  the plan.

24      Mailed this administrative expense notice.  Notice of

25  effective date four times to her.  What else could the city

1 | have done.

2 |         THE COURT:  Part of what you're saying now I think

3 | with this point you just made is that this is -- these facts

4 | are -- are circumstantial evidence supporting the proposition

5 | that -- that Ms. Stanley actually did receive in her P.O. Box

6 | the notice, the December 10 notice that was mailed to her by

7 | the noticing agent.

8 |         MR. SWANSON:  That's correct, Your Honor.  And I --

9 | I don't think -- you know, Ms. Stanley said someone else was

10 | in charge of her mail.  She didn't raise this in -- in her

11 | motion.  And she wanted this other person to file an affidavit

12 | or something, you know, the time has passed.

13 |     We -- we mailed this to her four separate times.  If she

14 | had someone else in charge of her mail at this point that's --

15 | that frankly is not the city's issue, that's Ms. Stanley's

16 | issue.  The city did everything that was required by the rules

17 | and the plan, sent the notice to her, and she didn't file

18 | anything.

19 |         THE COURT:  All right.  Anything else?

20 |         MR. SWANSON:  No, Your Honor.

21 |         THE COURT:  All right.  Thank you.

22 |     Well, in these two matters involving Sherell Stanley, the

23 | two matters being the city's objection to Ms. Stanley's

24 | application for administrative expense claim that was filed

25 | February 6, 2015 at docket number 9189.  And the second

1 | related thing being Ms. Stanley's motion filed May 21, 2015

2 | docket 9875 for an extension of the January 26, 2015 deadline

3 | to the date that she actually filed the administrative expense

4 | claim, February 6ᵗʰ based on excusable neglect.

5 |     I -- I would -- I want to say -- start by saying the

6 | following.  The -- the -- there's really two -- two main

7 | levels to the city's argument here as I perceive it.

8 |     One is the objection to the claim that the -- the

9 | administrative expense claim on the ground that it wasn't

10 | timely filed.  And related to that in the city's arguments

11 | opposing the debtor's -- or the creditor's claim -- or

12 | extension motion which are there is not excusable neglect.

13 | The Court should not find excusable neglect and should not

14 | essentially excuse the late filing of the administrative

15 | expense claim and -- and this is also of course further

16 | support of the city's argument that the claim should be denied

17 | as untimely.  That's level one.

18 |     Level two is these what I've referred to earlier in this

19 | hearing as futility argument which is the argument the city

20 | has made -- first made with respect to Ms. Stanley's

21 | administrative expense claim in their objection filed last

22 | Friday, May 29 at docket 9909 at Page 8 and Paragraph 21.

23 |     Arguing that even if Ms. Stanley's -- even if the Court

24 | were to excuse Ms. Stanley's late filing of her administrative

25 | expense claim on grounds of excusable neglect, it would be

1 futile to do so.  It would be a waste of time because even if

2 it's deemed as timely filed Ms. Stanley's administrative

3 expense claim must be denied because it is not properly under

4 the law to be treated as an administrative expense claim.

5      Now I'll -- I'll just refer to that in shorthand -- for

6 shorthand purposes as the futility argument.  With respect to

7 the arguments having to do with timeliness of the filing of

8 the proof of claim, in the case of Ms. Stanley's claim and her

9 motion, a -- an important, very important consideration in

10 determining whether Ms. Stanley has demonstrated excusable

11 neglect for the late filing of her administrative expense

12 claim is whether in fact the December 10, 2014 notice, docket

13 8649 which included in Paragraph 7A, the notice of the January

14 26, 2015 deadline for filing administrative expense claims was

15 actually received at Ms. Stanley's P.O. Box to which the

16 city's servicing agent has certified it mailed four copies of

17 the notice, P.O. Box 321032, Detroit, Michigan 48232 which Ms.

18 Stanley admits is her correct mailing address, both December

19 2014 and -- and -- well, in December 2014 when KCC the

20 servicing agent mailed the December 10 notice to that address.

21      That's an important issue because if the Court ultimately

22 finds that the notice, the December 10 notice of the January

23 26 deadline was not actually received in P.O. Box mailing

24 address for Ms. Stanley, then the Court most likely would find

25 excusable neglect that would excuse the late filing of the

1   administrative expense claim under Federal Bankruptcy Rule

2   9006 at least unless there was some other evidence that Ms.

3   Stanley had actual knowledge before January 26 of that

4   deadline, none of which is -- is apparent to the Court from

5   the parties' arguments so far.

6        So the issue -- an important issue will be -- would be

7   with respect to the timeliness issue and the motion filed by

8   Ms. Stanley, whether in fact that notice actually was received

9   at her P.O. Box.

10       If it was received at that P.O. Box and because of

11  actions of Ms. Black, or Ms. Stanley or anyone else, it was

12  later lost or for some reason never read by Ms. Stanley, that

13  is Ms. Stanley's problem, it is not the city's problem.

14       And the issue of excusable neglect will -- will -- may

15  well come out the other way.  That is the Court may well

16  reject the excusable neglect argument and find that the filing

17  of the administrative expense claim was untimely and that

18  untimeliness is not to be excused.

19       But it -- it really is an important issue which the Court

20  cannot make a finding on yet based on the present record.  And

21  I do want to just briefly describe a in bit -- in a bit more

22  detail perhaps than what I've alluded to and described in the

23  hearing regarding Ms. Reed's claim earlier this afternoon

24  about the presumption that arises with respect to items that

25  are mailed.

1    The case I referred to earlier is a 6th Circuit case of

2  <u>Bratton</u>, B-r-a-t-t-o-n <u>v the Yoder Company</u>, <u>In Re: The Yoder</u>

3  <u>Company</u>, U.S. Court of Appeals for the 6th Circuit, a decision

4  from 1985 reported at 768 F 2d 1114.

5    In that case the 6th Circuit held that under the federal

6  common law there is a presumption that an item properly mailed

7  was received by the addressee.  According to the 6th Circuit,

8  and this is at Page 1118 of the Court's opinion in the <u>Yoder</u>

9  case, "the presumption arises upon proof that the item was

10  properly addressed, had sufficient postage, and -- and was

11  deposited in the mail".

12    Once that presumption arises according to the Court in

13  the <u>Yoder</u> case, it may be rebutted and such rebuttal may

14  consist of -- of the testimony of non-receipt of the addressee

15  that they in fact did not receive it.  That -- that testimony

16  if it is -- if it is given is sufficient alone to rebut the

17  presumption of receipt that arises under this common law

18  presumption.

19    There is other ways the presumption can be rebutted.  In

20  general what's required to rebut the presumption of receipt is

21  to introduce -- the addressees introduce in evidence which

22  would support a finding of the non-existence of the presumed

23  fact, that is of the non-receipt.

24    Now the 6th Circuit held that once that presumption of

25  receipt is rebutted for example by testimony from the

1   addressee that the item was in fact not -- not received, then

2   the presumption has no probative effect any longer under

3   federal evidence Rule 301 and the burden remains where it was

4   to begin with on the party asserting non-receipt with the --

5   to prove the item was not received.  So the burden in this

6   instance would be on Ms. -- if she could rebut the presumption

7   of receipt, she still would have the burden of proof proving

8   -- and burden of persuasion proving that she in fact did not

9   receive in her P.O. Box this December 10 notice.

10      I -- I -- I've walked through these aspects of law

11  because I want the parties to be -- both sides to be aware of

12  my view at least of what the 6th Circuit case law is that

13  governs and is binding on this Court regarding this

14  presumption that's sometimes referred to as the mailbox rule.

15      And it does -- it is clear from the certificate of

16  service that was filed on December 29, 2014 at docket number

17  8970 in this bankruptcy case that Kurtzman, Carson

18  Consultants, the city's noticing and servicing agent did serve

19  on or before December 16, 2014 by first class mail, the

20  December 10 notice to Ms. Stanley at least four copies of it,

21  separate copies of it, to Ms. Stanley's address, the P.O. Box

22  that I mentioned earlier.

23      And so based on that the presumption of receipt by Ms.

24  Stanley at her P.O. Box of that notice does arise.  It is a

25  rebuttable presumption as I said but it has to be rebutted

1  with evidence which may include testimony from Ms. Stanley or

2  other evidence that in fact it -- that notice -- no copy of

3  that notice was ever received at her P.O. Box.

4      The -- the notice itself the December 10 notice docket

5  8649 at Page 7, Paragraph 7A in my view clearly gives notice

6  and says -- informs the reader that January 26, 2015 was the

7  deadline to file all requests for payment of administrative

8  claims and there's nothing confusing or misleading, or unclear

9  about the language in that paragraph in my view.

10     And it's also clear and clearly says that if a claim,

11 administrative claim is not filed by the January 26 deadline,

12 that such an administrative expense claim would be forever

13 barred against -- and the claimant could not assert such

14 administrative claims against the city or its property.

15     So this issue of receipt is -- is an important issue

16 having -- with respect to the timeliness of facets of this

17 dispute.  And the further proceedings that I'm going to order

18 will be geared in part toward moving the -- this dispute of

19 this matter of this issue of receipt and timeliness forward

20 toward an ultimate decision by the Court on that issue.

21     I'm not making an ultimate decision on that issue today.

22 I'm simply ruling that the law is what I have explained it so

23 far that it is today.

24     With respect to this futility -- futility issue, I will

25 consider that issue as another possible ground and make a

1  ruling on it with respect to the -- the city's arguing that as

2  a ground -- another ground for objecting to the administrative

3  expense claim here of Ms. Stanley. But I -- I will give, and

4  I think it's fair to say, I need to give, and certainly want

5  to give Ms. Stanley a fair opportunity to file a written

6  response to that argument.

7      Again that argument is found in writing in Paragraph 21

8  on Page 8 of the city's response to Ms. Stanley extension

9  motion. And that response by the city was filed last Friday,

10 May 29, docket 9909. Ms. Stanley has said in today's hearing

11 that she did not receive a copy of that in the mail yet, but

12 that she did otherwise in a different way obtain a copy of

13 that and review it.

14     The further proceedings then I'm going to order, and I'll

15 prepare and enter an order reflecting this, are the -- the

16 following. First, I will order that Ms. Stanley must file a

17 reply in support of her motion for extension of the January 26

18 deadline which must exclude -- include, whatever response Ms.

19 Stanley wishes to make to the city's -- what I've referred to

20 as the city's futility argument. And which also must include

21 as an attachment to the reply, an affidavit or declaration

22 under penalty of perjury, one or the other, that from Ms.

23 Stanley and from any other person that Ms. Stanley wishes to

24 have such an affidavit or declaration from, for example her

25 friend Ms. Black in support of any argument she wishes to make

1 that she did not receive at her P.O. Box the December 10, 2014

2 notice that I referred to earlier.

3     In order to rebut the presumption that she did receive

4 that document at that P.O. Box, as I said discussing the Yoder

5 case and the mailbox rule and the presumption of receipt, Ms.

6 Stanley does have the burden of coming forward with testimony

7 or evidence tending to show that she did not receive it.  And

8 so I'm requiring an affidavit or a declaration under penalty

9 of perjury at this point at a minimum from her on that subject

10 if she wants to persist in any argument that she did not

11 receive the December 10 notice.

12     Now, as I said earlier in the hearing, in fairness to Ms.

13 Stanley so that she is aware of what I have ruled a week ago

14 and during the -- as part of the proceedings and during the

15 long hearing that I had a week ago today on May 27 on other

16 matters in this case, that -- that the city is arguing

17 supports their futility argument.

18     I'm going to obtain an excerpt of the transcript of the

19 May 27 hearing that the parts that -- that contain rule -- any

20 rulings by me during that hearing on this subject, or that are

21 relating to this subject and file that excerpt of the

22 transcript as a -- a -- a memorandum relating to these matters

23 in the hearing today and see that Ms. Stanley is mailed a copy

24 of that excerpt from the transcript so that she will be aware

25 of that before she has to file a -- her reply in support of

1 the -- her -- her extension motion before she has to respond

2 in writing then to the futility argument.

3      So I will do that.  The transcript has not been filed yet

4 but I expect that I will be able to get my hands on at least

5 that excerpt of the transcript within the next few days.  And

6 I get that out.

7      So what I have in mind is -- in terms of scheduling is to

8 give for this reply that Ms. Stanley is being required to file

9 that I have described here, I have in mind giving her two

10 weeks from today which would be June 17, 2015 as the deadline

11 to file that reply.  So Ms. Stanley, that will be your

12 deadline for filing this reply that I have been describing.

13 And -- and I'm going to spell this out in a written order that

14 I'm going to prepare and enter and which our clerk will mail

15 to you and you should receive within the next few days in the

16 mail.  And that P.O. Box that we've been talking about is

17 still your permanent mailing address.

18           MS. STANLEY:  Yes, sir.

19           THE COURT:  All right.  So keep your eye on that.

20 You'll get a -- there will be a written copy of this order.

21 The order will be filed, if not today, no later than tomorrow.

22 If you have access to the docket through -- over the internet

23 some way, you can -- you'll be able to see the order and pull

24 it up that way as well for yourself.  But in any case it's

25 going to be mailed to you.

1      The further provision of the order I'm going to prepare

2  then is, I will allow the city to file a response to this

3  reply that Ms. Stanley is due to file no later than June 17.

4  Mr. Swanson, is one week enough time after June 17 for that?

5  Or do you want more?

6           MR. SWANSON:  Yes.  My son will be born maybe the

7  day before that, so I would request maybe another week.

8           THE COURT:  Oh.  No, no problem.  So that -- another

9  week -- and so it will be two weeks after Ms. Stanley's

10  deadline.  So that would be July 1.

11           MR. SWANSON:  Thank you, Your Honor.

12           THE COURT:  Of 2015.  And congratulations on your

13  upcoming son --

14           MR. SWANSON:  Thank you.

15           THE COURT:  -- being born.  Actually I have a

16  grandson who was born on June 24th.

17           MR. SWANSON:  The --

18           THE COURT:  So he has a birthday that -- that day,

19  the 24th.  But that's totally beside the point here.  But

20  anyway so that will be the deadline for the city's response.

21  And then I'm going to set a further, and this will be a

22  non-evidentiary hearing at this point, further hearing on

23  these matters, both the matters that we've heard today

24  regarding Ms. Stanley for July 15, 2015 at 1:30 p.m.  Ms.

25  Stanley, any reason you could not -- cannot be here at that

1 further hearing on that date and time?

2          MS. STANLEY:  Sir, I don't have a calendar in front

3 of me.  What -- what date?

4          THE COURT:  July 15, it's a Wednesday at 1:30 p.m.

5          MS. STANLEY:  Wednesday.  That should be fine.

6          THE COURT:  All right.  So I'll do this order.  It's

7 a little complicated but the order will spell everything out

8 hopefully in clear language and will be clear to everyone once

9 -- when you read it.  And we will proceed from there.

10     So really the issues going forward continue to be the

11 timeliness issue raised by the city and the further

12 proceedings on that.  And the futility argument raised by the

13 city in what they filed last Friday.  Those are going to be

14 the two issues going forward and you know, within those

15 issues, especially timeliness issues of course there are a

16 number of arguments and sub issues.  Those are laid out in the

17 papers filed by the parties already I think.

18     So that's it for today on these matters involving Ms.

19 Stanley, although I -- I did notice that -- with respect to

20 the EEOC administrative expense claim which we're going to

21 hear about next, one of the persons that the EEOC filed an

22 administrative expense claim about -- for is Ms. Stanley.

23     So to that extent that Ms. Stanley is involved at least

24 somewhat in -- in that matter.  But we're going to hear that

25 matter next, so thank you.  So that brings us --

1          MS. STANLEY:  Sir, as a point of clarification.  The

2    excerpt from the transcript you said that that's going to be

3    made available?

4          THE COURT:  My intention is to cause a copy of that,

5    once it's filed, to be mailed to you in time so that you have

6    it in time before -- before you have to file your reply brief.

7          MS. STANLEY:  Okay.

8          THE COURT:  Responding to, among other things

9    responding to the futility argument.  So that's -- that's my

10   game plan on that.

11         MS. STANLEY:  Okay.

12         THE COURT:  Does that answer your question?

13         MS. STANLEY:  Yes, sir.  Thank you.

14         THE COURT:  All right.  Thank you.

15      So then we come to the EEOC related matters.  And that is

16   the city's objection to the EEOC's administrative expense

17   claim.  And then also the what I've construed at least in part

18   as a motion by the EEOC to docket 9139 to retroactively extend

19   the deadline for filing the administrative expense claim to

20   the date on which the EEOC filed that which was January 30,

21   2015.  So Mr. Swanson, let's start with you on this one.

22         MR. SWANSON:  Sure, Your Honor.  And -- and just to

23   be clear while Ms. Stanley is still in the courtroom.  The --

24   the city obviously disputes the underlying allegations.  So if

25   -- if there was no futility and the Court found that it was

1  timely, the city still disputes that the claim is actually

2  valid.  But I just wanted to -- to make sure that the Court

3  was aware of that.

4       With respect to the EEOC, this is very similar to Mrs.

5  Stanley in that it was mailed to the EEOC.  The difference

6  here is, Your Honor, is that the EEOC admits that it received

7  the notice.

8            THE COURT:  The December 10 notice.

9            MR. SWANSON:  The December 10 notice.

10           THE COURT:  Yeah.

11           MR. SWANSON:  The EEOC like Ms. Stanley was an

12  active participant in the bankruptcy case.  The EEOC filed

13  numerous proofs of claim.  The EEOC cast nine ballots in

14  opposition to the plan.  And thus was very familiar with the

15  procedures, the way the mail was received, dates and deadlines

16  that needed to be followed.

17       Nevertheless the EEOC did not file its administrative

18  expense claim in a timely fashion, it filed late.  The city

19  does not believe that excusable neglect has been shown.  The

20  cases cited by the EEOC are distinguishable because they -- in

21  those cases a party's active as soon as they realize that they

22  have missed a deadline and file a proper motion with the Court

23  to excuse the late filing.

24       Here that didn't occur, Your Honor.  The EEOC filed its

25  administrative expense claim, did not file any sort of motion

1    or brief to excuse the late filing until four months later.

2    None of the cases cited by the EEOC have facts that are even

3    close to -- to -- to the facts present here.  Thus the city

4    does not believe the Court under existing precedent even

5    assuming everything the EEOC said was true, could make a

6    finding of excusable neglect.

7        The city also reiterates that it would be futile to allow

8    a late filing here because the claims asserted by the EEOC in

9    its application are not administrative expenses in a Chapter 9

10   case.  Thank you, Your Honor.

11           THE COURT:  All right.  Thank you.  Mr. Price, what

12   would you like to say about these matters?

13           MR. PRICE:  Yes, Your Honor.  Dale Price on behalf

14   of the commission.  Yes, it's true we did get a copy of the

15   letter.

16           THE COURT:  The December 10 notice you mean?

17           MR. PRICE:  The December 10th notice.  We did find

18   that.  It was not logged in to our system.  We found it two

19   weeks ago.

20       We have a system by which correspondence comes in and

21   it's added to a mail log which is if we get mail a mail log is

22   emailed out every day to all the attorneys in the office.

23   There is no reflection that we ever got -- it was never logged

24   in, it was never time stamped.  I can't say when we got it,

25   but yes, we did get it.

1    The January 29th which --

2           THE COURT:  Is it fair to say from what you just

3    said therefore that the EEOC cannot prove and has no evidence

4    that it did not receive the December 10 notice back in

5    December.

6           MR. PRICE:  I can't prove it, Your Honor, no.  I

7    can't say when we got it.  I honestly can't say one way or the

8    other.

9           THE COURT:  So really then what it comes down to is

10    your -- your argument that you personally weren't consciously

11    aware of that -- of that notice and that deadline until I

12    guess the day before you filed your -- the January 30, EEOC

13    administrative expense claim.

14           MR. PRICE:  That's correct, Your Honor.  That was

15    the date that I became aware of the -- the deadline.  I

16    emailed out to all of our then claimants.  By the way we do

17    have -- just to clear up one thing.

18       There are -- we're not pursuing two of the claims, two of

19    the investigations have concluded.  There may be a third, but

20    I'm not clear on that.  So we're not talking about six claims,

21    we're talking about four at this point.  So I can clarify that

22    with -- with counsel.  At some point we can stipulate to that.

23           THE COURT:  Which ones are you -- are you dropping?

24           MR. PRICE:  Thank you.  We are not pursuing because

25    the investigation is closed.  But let me just explain that

1      Once we dismiss a charge our interest as an agency, that

2  breaks with the dismissal, so that's why we're not pursuing

3  it.  It would be Mr. Lyle Kidd and I believe it's Teresa

4  Hopkins.  Robin Hopkins, I'm sorry are the two that --

5            THE COURT:  So you're dropping those sub claims from

6  the administrative expense claim?

7            MR. PRICE:  That is correct.  We will not be

8  pursuing those, right.

9            THE COURT:  And I suppose it's -- it's possible that

10  even if I find your claim timely, or -- or excuse the late

11  filing and it otherwise survives the administrative expense

12  claim, it's still possible the rest of them may get -- the

13  rest of that claim may get dropped if the EEOC dismisses the

14  other charges.

15            MR. PRICE:  That is quite possible, Your Honor.

16  That has happened.

17            THE COURT:  When will you -- when will you know if

18  that -- if that happened -- if that's going to happen?

19            MR. PRICE:  Well, I can follow up on a third.  I

20  will know within a week whether one is -- one of the other

21  ones has been dismissed.  To be honest, Your Honor, I can't

22  speak to the other ones.

23      I have been told that they are being processed.  They are

24  in the advanced state of processing, but with our office and

25  its resources, I -- nobody can give me a date and I really

1  couldn't demand one of them.

2        THE COURT:  Okay.  Go ahead.  You were saying.

3        MR. PRICE:  Sure.  So there was the 29th when I

4  became aware of it as I stated.  Emailed out to all of our

5  claimants, our charging parties.  I prepared the -- or the

6  application as quickly as possible and filed it.

7        We -- we don't -- and we do have a notice problem, Your

8  Honor.  As I said, I can't prove we didn't get it in a timely

9  fashion.  I can't say when we got it because it was not logged

10 or stamped.

11       However, I would just emphasize that I -- I don't --

12 there was no allegation of prejudice on behalf of the city

13 which is one of the acts.  We have to look at the prejudice as

14 a possible issue in evaluating excusable neglect.  And there's

15 also the shortness of the delay.

16       We're talking about a filing that was four days after the

17 deadline.  Your Honor, I think those at least we have an

18 argument in our favor on that, the commission under an

19 excusable neglect analysis.

20       THE COURT:  The Pioneer Investment factors.

21       MR. PRICE:  Yes.

22       THE COURT:  Basically.

23       MR. PRICE:  The Supreme Court, yeah Pioneer

24 Investment, yes, Your Honor.

25       THE COURT:  Well, the specific factors listed by the

1 | Supreme Court in the _Pioneer Investment_ case, excusable

2 | neglect, do include as you've alluded to the factor, the

3 | danger of prejudice to the party opposing relief, the length

4 | of the delay and its potential impact on judicial proceedings.

5 | And you're arguing that those two factors weigh in favor

6 | of finding excusable neglect.  Another factor listed by the

7 | Supreme Court in _Pioneer_ is whether the movant acted in good

8 | faith.  Let's assume that's the case here just for purposes of

9 | further discussion.

10 | MR. PRICE:  Yes.

11 | THE COURT:  Another factor listed though is the --

12 | the reason for the delay including whether it was within the

13 | reasonable control of the movant, the movant being the EEOC.

14 | Wasn't the delay here within the reasonable control of the

15 | EEOC?

16 | MR. PRICE:  I think I already --

17 | THE COURT:  Because the EEOC can't prove it didn't

18 | get the notice that was certified as being mailed to it.

19 | MR. PRICE:  That certainly could be the case, Your

20 | Honor.  I -- I think that factor does -- does weigh against

21 | us.  I -- I can't prove when I got it.

22 | THE COURT:  So if that factor weighs against the

23 | EEOC, a finding of excusable neglect in favor of the EEOC, but

24 | you -- you argue the other factors weigh in favor.  How -- how

25 | should these be balanced out?

1    There is case law that says that this factor and whether

2  the delay was within the reasonable control of the movant is

3  the most important of the factors.  The Supreme Court didn't

4  say that in Pioneer though.

5    And Pioneer also said the Court must take account of all

6  relevant circumstances surrounding the party's omission.  If

7  it's reasonable control of the movant factor that weighs

8  against excusable neglect.  So how should the Court rule --

9        MR. PRICE:  Well, if --

10        THE COURT:  -- given -- given that?

11        MR. PRICE:  Well, if -- I don't think it's

12  dispositive, Your Honor.  I think if Pioneer itself that

13  wasn't dispositive and they found excusable neglect in Pioneer

14  where it was the overworked attorney who it's dispositive.

15        THE COURT:  But that -- in Pioneer that was only

16  because the Supreme Court found that the notice that had been

17  given was confusing and ambiguous.  The notice of the claims

18  bar date at issue in that case.  Wasn't -- isn't that -- isn't

19  that correct?

20        MR. PRICE:  I think that was a factor yes, Your

21  Honor, as I recall reading the case.

22        THE COURT:  That seemed to be the factor in Pioneer.

23  It wasn't -- I mean the Supreme Court seemed to go out of its

24  way to say that it would give little weight to any sort of

25  problems with the respondents, the party's attorney and

1  problems he was having, office upheaval in his law practice

2  and so forth.  They were giving little weight to that.

3      It really was -- seemed to turn on the -- what the Court

4  called "the unusual form of notice employed in this case"

5  which the Court found to be ambiguous regarding the bar --

6  claim bar date.  And that was a Chapter 11 case.  Isn't that

7  right?

8          MR. PRICE:  As I recall -- recall the case, yes.

9  They did -- the Court did spend a lot of time analyzing the --

10  the form of the notice, that is correct.

11          THE COURT:  And the Supreme Court didn't -- in

12  Pioneer didn't suggest anywhere did it, that the moving -- if

13  the moving party's delay was caused by its attorney making a

14  mistake or collecting a matter, or missing a deadline because

15  they were overworked and they were having problems in their

16  law practice, those sorts of reasons that that would weigh in

17  favor of granting a finding of excusable neglect, did it?

18          MR. PRICE:  No, it did not say that.

19          THE COURT:  All right.  Okay.  So go on you were

20  saying.

21          MR. PRICE:  But I do believe the other three factors

22  do.  I mean I -- obviously this maybe sounds self serving, but

23  I believe I did act in good faith.  I acted as quickly as I

24  could upon learning it after finding it on PACER and filed it.

25  We didn't have an objection or even the objection we didn't

1  hear anything about prejudice.

2      And the length of the delay, Your Honor, I -- I recognize

3  the purpose that bar dates serve, but that's -- there is also

4  excusable neglect, Your Honor.  And --

5          THE COURT:  Didn't the EEOC also get notice of the

6  January 26 bar date from the -- at least that the bar date

7  would be 45 days after the effective date of the confirmed

8  plan from the order confirming plan that was filed November

9  21, 2013, Page 104 and also from the eighth amended plan

10 itself?

11         MR. PRICE:  We would have received those documents.

12         THE COURT:  Didn't they both say that?

13         MR. PRICE:  They do say that, Your Honor.

14         THE COURT:  So the EEOC and -- and presumably you

15 too, you also as the EEOC attorney knew that you had -- you

16 knew as early as November 10 in the order confirming plan --

17 I'm sorry, November 12, 2014, the order confirming plan that

18 was filed, docket 8272, that there was looming out there this

19 45 day post-effective date deadline that was going to happen

20 when filing any administrative expense claims.

21      The only thing you didn't know at that point was exactly

22 when was going to be the effective date of the plan but you

23 knew -- you knew enough to know that you better watch for

24 that, didn't you --

25         MR. PRICE:  Yes, Your Honor.

1          THE COURT:  -- didn't you?

2          MR. PRICE:  Yes, Your Honor, I did.

3          THE COURT:  And -- and so did the EEOC in general,

4  right?

5          MR. PRICE:  Yes, I -- I would think yes.  If it's

6  logged in, that's correct.

7          THE COURT:  Okay.  So even though you are saying you

8  were not consciously aware of what the December 10 notice said

9  and didn't consciously see that, didn't see that, read it

10  before the January 26 deadline for filing administrative

11  claims, you did know about that such a deadline was coming and

12  to watch for it, didn't you?

13          MR. PRICE:  I was -- yeah, I was actually in

14  communications with headquarters about you know that yes, that

15  there's administrative expense issue and deadline that's

16  forthcoming, I just didn't know the date, but yes.

17          THE COURT:  So and -- and if you had looked at the

18  docket for the case to look for any indication of when the

19  effective date was, as early as December 10 you would have

20  seen this notice that says the effective date is December 10,

21  2014.

22          MR. PRICE:  Yes.

23          THE COURT:  It was filed at docket 8649, December

24  10, 2014.  So you would have -- you would have seen this and

25  you could have pulled it up and seen Paragraph 7A which has in

1  it explicitly the January 26, 2015 deadline, right?

2          MR. PRICE:  Correct.

3          THE COURT:  And you received electronic notices --

4  notices of electronic filing for this case all along, I

5  assume.

6          MR. PRICE:  No, I did not.

7          THE COURT:  Oh, you did not.

8          MR. PRICE:  No.

9          THE COURT:  Okay.  But you had access to PACER and

10 the ability to look at the docket and see what was happening

11 in the case at all times, right?

12         MR. PRICE:  I did have access to PACER, yes.

13         THE COURT:  And therefore you could see the docket

14 and pull up any documents that were filed.

15         MR. PRICE:  Correct.

16         THE COURT:  And read them.  Okay.  So anyway, go on.

17 You were -- what else do you want to say about this excusable

18 neglect concept.

19         MR. PRICE:  That is -- that basically that is --

20 that's it.  I mean I think that the defendant's argument with

21 respect to prejudice, I mean that it is somewhat conjectual

22 that there's going to be a flood of claims, late

23 administrative expense claims out.  I don't know if there's

24 any proof of that.

25         Under the circumstances I don't see where that -- that

1  would be the case.  And that at this point that's all I have

2  is to --

3          THE COURT:  Do you know how many administrative

4  expense claims were filed after the January 26, 2015 deadline?

5          MR. PRICE:  I only know the other two that I was

6  told about with Ms. Stanley and --

7          THE COURT:  So you don't know about there being a

8  flood of -- of these late filed administrative expense claims.

9          MR. PRICE:  I have no idea, Your Honor, no.

10          THE COURT:  All right.  What else did you want to

11  say, anything?

12          MR. PRICE:  Nothing at this point, Your Honor.

13          THE COURT:  All right.  Mr. Swanson, did you want to

14  reply?

15          MR. SWANSON:  Your Honor, I think Mr. Price has been

16  very candid with the Court and I think based on the things

17  that he said there just can't be a finding of excusable

18  neglect here.  He admits that the EEOC received the notice.

19  That no -- there's no ambiguity in the notice.   And thus

20  there's no basis to find excusable neglect.

21      As Your Honor indicated, the most important factor with

22  respect to the excusable neglect is -- is whether this was in

23  the control of the movant and -- and -- and it certainly was.

24  Then the city would also raise the futility argument again

25  here even as Mr. Price indicated and as the city indicated in

1  its reply, the -- the charge was -- was basically based on the

2  unfounded allegations.  Or the -- the application was based on

3  charges with unfounded allegations.

4      And -- and as Mr. Price indicated, three of them have

5  already been disposed of.  Two, I'm sorry, two.  And -- and

6  further it's -- these are not the type of claims that are

7  administrative expenses in a Chapter 9 case because they are

8  not costs of administration.  That's a very very very narrow

9  category type of claim and -- and that doesn't fit here.

10          THE COURT:  All right.  Well, thank you both.

11      The -- with respect to the administrative expense claim

12  request filed by the Equal Employment Opportunity Commission,

13  the EEOC, it was filed January 30, 2015, docket number 9139.

14  That was four days after the January 26, 2015 deadline set by

15  the Court for the filing of such administrative expense claim

16  requests and therefore it was untimely.

17      There is -- it's -- it's absolutely clear in my view and

18  is in both the eighth amended plan that was the plan that was

19  confirmed in this bankruptcy case and in the Page 104 of the

20  order confirming plan, and as reiterated in the December 10,

21  2014 notice of the confirmation of the plan and of the

22  occurrence of the effective date, docket number 8649.  I'll

23  refer to that as the December 10 notice of that administrative

24  expense claims -- request for payment of administrative

25  expenses had to be filed no later than January 26, 2015 which

1  was 45 days after the effective date of December 10, 2014 of

2  the confirmed plan of adjustment.

3      And that if the administrative claim creditors who -- who

4  filed -- the administrative claim creditors who filed a

5  request for payment of administrative claims after the January

6  26ᵗʰ deadline would be barred from asserting such claims,

7  forever barred against asserting such claims against the city

8  its property as administrative claims.  Basically the

9  administrative claims would be denied.

10      That's absolutely clear from Paragraph 7A of the December

11  10 notice.  As I said earlier, it's also absolutely clear from

12  both the order confirming plan of -- of November 12, 2014 at

13  Page 104 and the -- the actual eighth amended plan that that

14  order confirmed.

15      The EEOC does not contend or claim and based on what Mr.

16  Price, its attorney has said in today's hearing, it is clear

17  that the EEOC cannot colorably claim and cannot prove or

18  present any evidence that the EEOC did not actually receive in

19  the mail from the city's noticing agent a copy of the December

20  10 notice which gave -- clearly gave notice to the EEOC and

21  other parties of the December 10, 2014 effective date of the

22  plan.  And also of the -- of January 26, 2015 deadline,

23  Paragraph 7A of that notice for filing administrative expense

24  claims.

25      So the EEOC did receive in my view and cannot show

1 otherwise, did receive within a reasonable and short time

2 after the notice, December 10 notice was mailed to it by the

3 city's noticing agent on or -- on or before December 16, 2014,

4 the December 10 notice, well before the January 26, 2015

5 filing deadline for administrative expenses came and went.

6     Now Mr. Price, the attorney representing the EEOC with

7 respect to the administrative claims, sub claims at issue, has

8 said in his declaration filed with his -- the EEOC's motion

9 for an extension of the claim filing deadline, that he himself

10 did not see the December 10 notice and did not himself

11 personally know of the -- that January 26, 2015 was the

12 administrative expense filing deadline until after that

13 deadline passed.

14     And he said he first discovered that bar date as he put

15 it by independent research on PACER by looking at the Court's

16 docket on January 29, 2015.  That of course was three days

17 after the deadline had passed.

18     For reasons unknown to both Mr. Price and presumably to

19 the EEOC as far as the Court can tell and certainly unknown to

20 the Court, the -- while the EEOC received the December 10

21 notice, it did not make Mr. Price its attorney in this matter,

22 aware, consciously aware of the notice so that he could read

23 it and be aware of its contents that way.

24     Mr. Price, however, admits in today's hearing that he was

25 aware back in November and December time frame that there was

1  an administrative expense claim filing deadline established,

2  that it was 45 days after the effective date of the confirmed

3  plan and the only thing he didn't know at that point was what

4  that effective date was going to be.

5      He does further admit, however, that he had access to the

6  Court's docket obviously through PACER and could have checked

7  the docket and learned of the December 10 notice as early as

8  December 10 when it was filed 2014 which is the notice that --

9  that gave notice to the world that December 10, 2014 was the

10 effective date of the plan and that's in Paragraph 1 on Page 1

11 of that notice and therefore and as stated in Paragraph 7A on

12 Page 7 of that notice, that the administrative expense filing

13 deadline was January 26, 2015.

14     But Mr. Price did not sufficiently review and keep an eye

15 on the docket to find that notice, and read it and become

16 aware of these things until January 29, 2015 according to what

17 he has said in today's hearing and in his declaration.  That

18 of course was after the deadline had passed.

19     Now what we have here is a situation where both the EEOC

20 in general and Mr. Price its attorney in particular, neglected

21 -- are guilty of neglect in failing to file or cause to be

22 filed an administrative expense claim for these claimants by

23 the January 26, 2015 deadline.

24     The question then of course is whether the Court should

25 grant relief in part by claiming that that neglect was -- is

1  excusable neglect.  And the rule that applies of course, is

2  federal bankruptcy Rule 9006(b)(1) which says that the Court

3  for cause may shown -- cause shown may extend a deadline on a

4  motion made after the expiration of the deadline where the

5  failure to act by the moving party was the result of excusable

6  neglect.

7      The leading case on what excusable neglect means in this

8  context is the Supreme Court's decision in the <u>Pioneer</u>

9  <u>Investment</u> case which is cited in the papers filed by the

10 parties and which we have discussed in today's hearing.

11     As we have discussed in today's hearing, the Supreme

12 Court said that excusable neglect requires consideration of

13 all relevant circumstances surrounding the moving party's

14 omission, "including the danger of prejudice to the party

15 opposing relief, the length of the delay, and its potential

16 impact on judicial proceedings, the reason for the delay,

17 including whether it was within the reasonable control of the

18 movant, and whether the movant acted in good faith".

19     I will assume for purposes of ruling on this motion by

20 the EEOC that the EEOC acted in good faith.  It's not guilty

21 of bad faith in any way in its neglect and in its attorney's

22 neglect.

23     And by the way, <u>Pioneer Investments</u> is clear that a party

24 whose attorney has neglected a matter leading to the missing

25 of the deadline is responsible for their attorney's, their

1  chosen attorney's neglect.  That is such neglect is

2  attributable to the attorney's client as well.  And so

3  excusable neglect has to be evaluated with respect to both the

4  party and the attorney.

5      With respect to the factors under Pioneer Investment, the

6  danger of prejudice to the party opposing relief and the

7  length of the delay and its potential impact on judicial

8  proceedings, these factors do somewhat favor the Court finding

9  excusable neglect on the party EEOC since the administrative

10  expense claim was filed January 30, only four days after the

11  deadline.  And since there does not appear to be a -- the city

12  is not arguing that there is a large number of administrative

13  expense claims that were filed after the January 26 deadline

14  so that if the Court found excusable neglect in this case it

15  might open the flood gates to allowing a number of untimely

16  administrative expense claims.

17      Although there is the same kinds of issues might come up

18  with respect to proofs of claim that were not timely filed by

19  the proof of claim filing deadline back in 2014.  And the

20  Court has already had to rule on at least one of those proof

21  -- late filing proof of claim issues in a recent hearing and

22  refused to find excusable neglect in that case.  But in

23  general these factors do somewhat at least favor a finding of

24  excusable neglect under the Pioneer Investment standards.

25      So what we're left with is, the factor -- the reason for

1  the delay by the EEOC here missing the deadline, including

2  whether it was within the reasonable control of the movant.

3  This factor in my view strongly weighs against finding

4  excusable neglect here by the EEOC and its attorney under

5  Pioneer because it clearly was within the reasonable control

6  of the EEOC and its attorney both to meet the January 26, 2015

7  filing deadline for administrative expenses.  And the delay in

8  missing the deadline and doing so was within the reasonable

9  control of -- of the EEOC and its attorney Mr. Price here.

10      So that factor which I do view as being the most

11  important of the specific factors listed in Pioneer, that

12  factor in my view tips the balance against the Court being

13  able to find excusable neglect here by the EEOC or its

14  attorney.

15      And so the EEOC's administrative expense claim must be

16  denied in all of its aspects, all of its sub parts, and the

17  city's objection to that administrative expense claim must be

18  sustained in its entirety on the ground that the claim was not

19  timely filed as the city has argued.  And because that

20  timeliness is not the subject or the result of excusable

21  neglect in the Court's view.  So the city's objection to the

22  administrative expense claim is sustained.  The administrative

23  expense claim is denied and disallowed.  And the EEOC's motion

24  for -- to allow the late filing of the claim is denied for

25  these reasons.

1      I'll prepare and enter an order reflecting this ruling.

2 Thank you.  I believe that concludes matters for today then.

3 Thank you all.

4         MR. SWANSON:  Thank you, Your Honor.

5         THE CLERK:  All rise.  Court is adjourned.

6      (Court Adjourned at 3:44 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 6-5-15
    Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25