# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT ACTION FILED BY TANYA HUGHES

The City of Detroit, Michigan ("City"), by its undersigned counsel, files its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action filed by Tanya Hughes ("Motion"). In support of this Motion, the City respectfully states as follows:

## I.   Introduction

1.      On February 27, 2015, Tanya Hughes ("Hughes") filed a state court lawsuit against the City seeking monetary damages on account of a pre-petition claim. By Hughes own admission, the alleged conduct giving rise to the claim occurred in 2012, almost a full year before the commencement of the bankruptcy case. Furthermore, despite both personal and published notice of the claims bar date established in the case, Hughes failed to file a proof of claim by the claims bar date (or, for that matter, at any time thereafter). Consequently, filing and continuing to prosecute the state court lawsuit violates both the Bar Date Order (as defined in paragraph 3 below) and the injunction set forth in the confirmed Plan (as defined in paragraph 9 below). The City informed Hughes of both of these violations and asked Hughes to voluntarily dismiss her state court lawsuit, but to no avail. As a result, the City is left with no choice but to seek an order barring and permanently enjoining Hughes from asserting the claims arising from

or related to the state court action against the City or property of the City and requiring her to dismiss the state court action with prejudice.

## II.  Background

### A.  The Bar Date Order

2.  On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

3.  On November 21, 2013, this Court entered its Order, Pursuant to Sections 105, 501, and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Order").  [Doc. No. 1782].

4.  The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

5.  As used in the Bar Date Order, "the term 'claim' has the meaning given to such term in section 101(5) of the Bankruptcy Code." Bar Date Order ¶ 2.

6.  Paragraph 22 of the Bar Date Order also provided that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled

Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Bar Date Order ¶ 22 (emphasis added).

7. The Bar Date Order approved the form and manner of notice of the Bar Dates. *See e.g.* Bar Date Order ¶¶ 3, 23-26. Hughes was personally served in accordance with the Bar Date Order. *See* Doc. No. 2337-4 at page 50 of 134. Further, notice of the General Bar Date was published in several newspapers. [Doc. Nos. 3007, 3008, 3009].

8. The Bar Date Order also provides that this Court retained "jurisdiction with respect to all matters arising from or related to the interpretation, implementation and/or enforcement of this Order." Bar Date Order ¶ 29.

**B. The Plan of Adjustment**

9. On October 22, 2014, the City filed its Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) ("Plan"). [Doc. No. 8045].

10. On November 12, 2014, this Court entered an order confirming the Plan ("Confirmation Order"). [Doc. No. 8272].

11. The discharge provision in the Plan provides

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is

allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4.

12.     With certain exceptions not applicable here, the Plan does not afford any right to distributions or payments to claimants that did not timely file proofs of claim.  Plan Art. I.A.19; Art. I.A.134; Art. VI.A.1. Such claims are not Allowed Claims under the Plan and thus are not entitled to distributions under the Plan.   *Id.*   ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.").

13.     The Plan enjoins parties that did not timely file proofs of claim from taking actions that are contrary to the Plan. The injunction set forth in Article III.D.5 provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

**a.      all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…**

**1.      commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…**

**5.      proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**

**6.      taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5 (emphasis supplied).

14.     The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan.  Plan, Art. VII. F, G, I.

### C.     State Court Action

15.     On February 27, 2015, Hughes filed a complaint ("Complaint") against the City in Wayne County Circuit Court, case number 15-002536 ("State Court Action"). The Complaint is attached as Exhibit 6A.

16.     On March 23, 2015, the City filed an answer to the Complaint ("Answer").  The Answer is attached as Exhibit 6B.

17.     On May 6, 2015, the City sent a letter to Hughes' counsel requesting that Hughes agree to the dismissal of the State Court Action because Hughes failed to file a proof of claim in the case. The May 6 letter is attached as Exhibit 6C.

18.     On May 14, 2015, Hughes responded to the May 6 letter. The May 14 letter is attached as Exhibit 6D.  In the May 14, letter, Hughes alleges that she "suffered pregnancy and disability discrimination on October 5, 2012 when she was required unnecessarily to remove all of her clothes in order to void a urine specimen as part of the Detroit Police Department's drug testing program." May 14 letter at 1.   Immediately following this event, Hughes was placed on leave with pay. *Id.*

19.     After Hughes was placed on leave with pay, on December 3, 2012, a police trial board (disciplinary) hearing took place.  Answer ¶ 18; May 14 letter at 1-2. At this hearing, Hughes was terminated from the department. Answer ¶ 18; May 14 letter at 2. Hughes appealed her termination and on April 30, 2013 and May 6, 2013, a *de novo* arbitration hearing was conducted.  Answer ¶ 18; May 14 letter at 2.

20.     On October 22, 2014, the City filed its Motion for an Order Confirming that the Automatic Stay Does Not Apply to Disciplinary Proceedings Initiated by the City Against City Officers and Employees.  [Doc. No. 8060]. As explained in the Motion, the arbitrator presiding over Hughes' disciplinary proceeding (a) expressed concern over whether the arbitration was subject to the automatic stay and (b) requested an order of the Court confirming that the City may continue to prosecute the arbitration notwithstanding the automatic stay.  *Id.* at ¶ 5.   On November 12, 2014, the Court entered an order granting the motion. [Doc. No. 8256].

21.     After the entry of this order, on December 15, 2014, a decision was issued to uphold Hughes' termination from the police department.  Answer ¶ 18; May 14 letter at 2.

22.     In the May 14 letter Hughes alleges that

> … Umpire Ashford issued her opinion a month later on December 15, 2014, sustaining the Chief's determination and ordering Sgt. Hughes dismissed from the Detroit Police Department. The next day, Sgt. Hughes was removed from payroll for the first time since she commenced employment, and her employment benefits ended.   Accordingly, December 16, 2014 was the first day Sgt. Hughes suffered adverse employment action, and it was the day her cause of action for pregnancy and disability discrimination accrued to her.

May 14 letter at 2.

23.     Hughes further alleges that she did not have a cause of action for disparate treatment discrimination until she suffered an adverse employment action under December 16, 2014.  *Id.* at 3. Thus, Hughes asserts that she was not required to file a proof of claim because "she did not have a claim within the meaning of the Bankruptcy Code prior to the filing of the petition or the claim bar date, or indeed, December 16, 2014." *Id.* at 3-4.

## III.    <u>Argument</u>

24.     Hughes was required to file a proof of claim by the General Bar Date.  As a result of her failure to file a proof of claim, Hughes is barred, estopped and enjoined from asserting any claim against the City or property of the City under the Bar Date Order. Pursuant to the Plan,

Hughes' claim was discharged and she has violated the Plan injunction by filing and continuing to prosecute the State Court Action.

25. Under the Bankruptcy Code, "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). The term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured [.]" 11 U.S.C. § 105(5)(A). "Congress gave these terms the broadest possible definitions so as to enable a debtor to deal with all legal obligations in a bankruptcy case." *In re Lipa*, 433 B.R. 668, 669-70 (Bankr. E.D. Mich. 2010) (*citing Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990)). "Courts have been careful to distinguish between when a right to payment arises for bankruptcy purposes, and when the cause of action accrues." *In re Dixon*, 295 B.R. 226, 229-30 (Bankr. E.D. Mich. 2003) (*citing Kilbarr Corp. v. G.S.A. (In re Remington Rand Corp.),* 836 F.2d 825, 830–31 (3d Cir. 1988) ("recogniz[ing] that a party may have a bankruptcy claim and not possess a cause of action on that claim" and noting, for example, that "an indemnity or surety agreement creates a right to payment, albeit contingent, between the contracting parties immediately upon the signing of the agreement")). As such, it is "well settled that federal law governs *when* a claim arises." *In re Parks*, 281 B.R. 899, 902 (Bankr. E.D. Mich. 2002) (emphasis supplied).

26. Although the term "contingent" is not defined in the Bankruptcy Code, "courts have concluded that contingent claims are those in which a debtor will be required to pay only upon the occurrence of a future event triggering the debtor's liability. The inclusion of a contingent right to payment in the definition of a bankruptcy claim clarifies that a right to payment that is not yet enforceable under non-bankruptcy law at the time of the bankruptcy filing may still constitute a claim that is dischargeable in the bankruptcy case." *Lipa*, 433 B.R. at

670 (internal citations omitted). "Thus, a right to payment need not be currently enforceable in order to constitute a claim that is dischargeable in bankruptcy." *Parks*, 281 B.R. at 902 (*citing Riverwood Int'l Corp. v. Olin Corp. (In re Manville Forest Prod. Corp.),* 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998) ("Because contingent and unmatured rights of payment are 'claims' under the Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Code.")). Generally "[t]he classic example of a contingent debt is a guaranty because the guarantor has no liability unless and until the principal defaults." *In re Pennypacker,* 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990)

27.     In *In re Huffy Corp.,* 424 B.R. 295 (Bankr. S.D. Ohio 2010), the court explained

> That contingent claims are dischargeable in bankruptcy makes sense for reasons well-stated by the court in *Baldwin–United* noting that the combined effect of a broad definition of claim and a process for estimating certain remote claims is to:
>
>> ... bring all claims of whatever nature into the bankruptcy estate, and to give all claimants the same opportunity to share in any distribution from the estate. No longer will some creditors enjoy a windfall or effectively be denied any recovery based upon the provability or allowability of their claims and the financial status of the debtor after bankruptcy. Equally important, Congress has insured that the debtor will receive a complete discharge of his debts and a real fresh start, without the threat of lingering claims "riding through" the bankruptcy.
>
> *In re Baldwin–United Corp.,* 55 B.R. 885, 898 (Bankr.S.D.Ohio 1985). In other words, a broad definition of claim allows a bankruptcy court to deal fairly and comprehensively with all creditors in the case and, without which, a debtor's ability to reorganize would be seriously threatened by the survival of lingering remote claims and potential litigation rooted in the debtor's prepetition conduct.

*Lipa*, 433 B.R. at 670 (*quoting In re Huffy Corp.,* 424 B.R. at 301).

28.     For bankruptcy purposes, there are two approaches for determining when a claim arises.[1]  *In re Spencer*, 457 B.R. 601, 606 (E.D. Mich. 2011); *Parks*, 281 B.R. at 902.

29.     Under the "debtor's conduct" approach, a claim arises when the conduct by the debtor occurs, even if the actual injury is not suffered until much later.  *Spencer*, 457 B.R. at 606; *Parks*, 281 B.R. at 903.  The other approach looks at whether there was a prepetition relationship between the debtor and the creditor such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed.  *Id.*  This has been alternately termed the "fair contemplation," "foreseeability," "pre-petition relationship," or "narrow conduct" test.  *Id.*  Although the Court of Appeals for the Sixth Circuit has yet to address the various tests, the emerging consensus appears to adopt some version of the "fair contemplation" approach.  *Spencer*, 457 B.R. at 606 (*citing  In re Huffy Corp.,* 424 B.R. 295, 305 (Bankr.S.D.Ohio 2010)).

30.     However, under either approach, Hughes' claim arose prior to the Petition Date.  As Hughes admits, the City's conduct which led to the alleged discrimination occurred approximately nine months prior to the Petition Date in October, 2012.  Immediately following the alleged discrimination, Hughes was suspended with pay.  Shortly after the suspension, in December 2012, a police trial board (disciplinary) hearing took place.  At this hearing, Hughes was terminated from the department.  Hughes appealed her termination and an arbitration

---

[1] The Third Circuit had followed a third approach – the accrual approach – prior to its decision in *In re Grossman's Inc.*, 607 F.3d 114, 117 (3d Cir. 2010).  In *Grossman's*, the Third Circuit overruled its prior decision in *Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co.),* 744 F.2d 332 (3d Cir.1984), which employed the accrual approach.  *Id.*  The *Grossman's* court overruled *Frenville* because the decision had been "universally rejected" and the "courts of appeals that have considered *Frenville* have uniformly declined to follow it." *Id.* at 117-121.

hearing took place on April 30 and May 6, 2013. All of these events and hearings took place many months before the Petition Date.

31. Hughes' claim arose prior to the Petition Date under the "debtor's conduct" approach because the underlying conduct which led to the alleged discrimination claim occurred in October, 2012. Similarly, under the "fair contemplation" Hughes claim arose prior to the City's bankruptcy filing. Prior to the Petition Date, Hughes was suspended and then terminated from the police department after her disciplinary hearing. Hughes' appeal of this termination and the resulting arbitration hearing also occurred prior to the Petition Date. Hughes' claim for alleged discrimination was thus within her "fair contemplation" prior to the Petition Date. Courts have uniformly rejected the argument advanced by Hughes in her May 14 letter that a claimant must possess a cause of action under state law to have a claim under the Bankruptcy Code.

32. Hughes was thus required to file a proof of claim in the bankruptcy case because her claim arose prior to the Petition Date. Her failure to do so resulted in the discharge of her claim pursuant to the Plan without any right to receive a distribution. As set forth in the Plan injunction, any actions that do not conform or comply with the plan -- such as the State Court Action -- are enjoined. In short, by filing and refusing to dismiss the State Court Action, Hughes has violated the terms of both the Bar Date Order and the injunction set forth in the Plan

## IV. Conclusion

33. As such, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1, (a) granting the Motion; (b) requiring Hughes to dismiss, or cause to be dismissed, with prejudice the State Court Action; (c) permanently barring, estopping and enjoining Hughes from asserting any claims arising from or

related to the State Court Action, or the alleged conduct forming the basis of the State Court Action, against the City or property of the City; and (d) prohibiting Hughes from sharing in any distribution in this bankruptcy case. The City sought, but did not obtain, concurrence to the relief sought in the Motion.

June 15, 2015

Respectfully submitted,

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
green@millercanfield.com
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## EXHIBIT LIST

| | |
|---|---|
| Exhibit 1 | Proposed Order |
| Exhibit 2 | Notice of Opportunity to Object |
| Exhibit 3 | None |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None |
| Exhibit 6-A | Complaint |
| Exhibit 6-B | Answer to Complaint |
| Exhibit 6-C | Letter, May 6, 2015 |
| Exhibit 6-D | Letter, May 14, 2015 |

## EXHIBIT 1 – PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## [PROPOSED] ORDER GRANTING THE CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT ACTION FILED BY TANYA HUGHES

This matter, having come before the court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action filed by Tanya Hughes ("Motion"), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

### THE COURT ORDERS THAT

1.      The Motion is granted.

2.      Within five days of the entry of this Order, Tanya Hughes shall dismiss, or cause to be dismissed, with prejudice, Case No 15-002536 filed with the Wayne County Circuit Court, Michigan and captioned *Tanya Hughes, Plaintiff, v. City of Detroit, Defendant* ("State Court Action").

3.      As of the date of this order, Tanya Hughes is permanently barred, estopped and enjoined from asserting any claims arising from or related to the State Court Action, or the alleged conduct forming the basis of the State Court Action, against the City of Detroit or property of the City of Detroit.

4.      Tanya Hughes is prohibited from sharing in any distribution in this bankruptcy case.

5.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

**EXHIBIT 2 – NOTICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT ACTION FILED BY TANYA HUGHES**

The City of Detroit has filed its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action filed by Tanya Hughes.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action filed by Tanya Hughes  ("Motion") within 14 days, you or your attorney must:

1.   File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

---

[1]  Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on

the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not**

**oppose the relief sought in the motion or objection and may enter an order granting that**

**relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
    Marc N. Swanson (P71149)
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

Dated:  June 15, 2015

**EXHIBIT 3 – NONE**

**EXHIBIT 4 – CERTIFICATE OF SERVICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 15, 2015, he served a copy of the foregoing Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action filed by Tanya Hughes upon counsel as listed below, via first class mail and electronic mail:

Jeffrey J. Ellison, PLLC
Jeffrey J. Ellison
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
ellisonesq@aol.com

DATED: June 15, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

## EXHIBIT 5 – AFFIDAVITS

## NONE

**EXHIBIT 6A – COMPLAINT**

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND<br>RETURN OF SERVICE | CASE NO.<br>15-002536-CD |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-5231

**THIS CASE IS ASSIGNED TO JUDGE**   Daniel P. Ryan   **Bar Number:** 42249

| Plaintiff<br><br>Hughes, Tanya | v | Defendant<br><br>City of Detroit |
|---|---|---|
| Plaintiff's Attorney<br><br>Jeffrey J. Ellison, P-35735<br>214 S Main St Ste 210<br>Ann Arbor, MI 48104-2122 | | Defendant's Attorney<br><br>RECEIVED<br>MAR 03 2015<br>CITY OF DETROIT<br>LAW DEPARTMENT |

| CASE FILING FEE | JURY FEE |
|---|---|
| X   Case Filing Fee - $150.00 | X   Jury Fee - $85.00 |

| ISSUED | THIS SUMMONS EXPIRES | DEPUTY COUNTY CLERK |
|---|---|---|
| 2/27/2015 | 5/29/2015 | File & Serve Tyler |

*This summons is invalid unless served on or before its expiration date.

CATHY M. GARRETT - WAYNE COUNTY CLERK

**NOTICE TO THE DEFENDANT:**  In the name of the people of the State of Michigan you are notified:

1.  You are being sued.

2.  YOU HAVE 21 DAYS after receiving this summons to file an answer with the court and serve a copy on the other party or take other lawful action (28 days if you were served by mail or you were served outside this state).

3.  If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

X   There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

___  A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

___  There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

___  An action within the jurisdiction of the family division of circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The docket number and assigned judge of the civil/domestic relations action are:

| Docket No. | Judge | Bar No. |
|---|---|---|
| | | |

The action ☐ remains ☐ is no longer  pending.

I declare that the complaint information above and attached is true to the best of my information, knowledge, and belief.

February 27 2015
Date

Signature of attorney/plaintiff

Jeffrey J. Ellison   P35735

**COMPLAINT IS STATED ON ATTACHED PAGES.  EXHIBITS ARE ATTACHED IF REQUIRED BY COURT RULE.**
If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE** OR ☐ **AFFIDAVIT OF PROCESS SERVER**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that: (notarization not required)

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that: (notarization not required)

☐ I served personally a copy of the summons and complaint,

☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____

on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare that the statements above are true to the best of me information, knowledge and belief.

| Service fee $ | Miles traveled $ | Mileage fee $ | Total fee $ | Signature |
|---|---|---|---|---|

Name (type or print)

Title

Subscribed and sworn to before me on _____ , _____ County, Michigan.
                                              Date

My commission expires: _____ Signature: _____
                            Date                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                                                          Attachments

_____ on _____
                                          Day, date, time

_____ on behalf of _____

Signature

**MC 01-3CC (09/2008) SUMMONS AND RETURN OF SERVICE**
MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

DB

TANYA HUGHES,

    **Plaintiff,**

v.                      **Case No. 2015-    -CD**

CITY OF DETROIT,

    **Defendant.**

**JEFFREY J. ELLISON, PLLC**
BY: Jeffrey J. Ellison (P35735)
Attorney for Plaintiff
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
(734) 761-4300
(734) 528-4159 fax
EllisonEsq@aol.com

15-002536-CD

~~FILED IN MY~~ OFFICE
WAYNE COUNTY CLERK
2/27/2015 2:51:20 PM
CATHY M. GARRETT

## COMPLAINT AND JURY DEMAND

**There is no other pending or resolved civil action arising out of
the same transaction or occurrence as alleged in this complaint**

    **TANYA HUGHES**, by counsel, states her complaint against defendant **CITY OF DETROIT** as follows:

### Jurisdictional Allegations

1. This is a civil action seeking declaratory relief and money damages against defendant for adverse employment actions it took against plaintiff in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* and the Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.*

2. This Court has jurisdiction of these claims pursuant to MCL 37.2801, MCL 37.1606, and MCL 600.605 as the amount in controversy exceeds $25,000.

3. The violations alleged in this complaint occurred in Detroit, Wayne County, Michigan. Venue is proper in this Court pursuant to MCL 600.1629, 37.2801, and 37.1606(2).

## Circumstances

4. Defendant City of Detroit is a political subdivision of the State of Michigan.

5. In May 1996, plaintiff Hughes commenced employment as a sworn law enforcement officer employed by the Detroit Police Department ("Department"), an agency of defendant City of Detroit. Subsequently, plaintiff Hughes was promoted to and performed the duties of the rank of sergeant in the Department.

6. At all times relevant to this complaint, plaintiff Hughes performed the duties of her employment in a satisfactory manner.

7. Despite performing her duties satisfactorily at all times, plaintiff Hughes was dismissed from employment with the Department by personnel action taken dated December 15, 2014.

8. The Department dismissed plaintiff Hughes from employment because it claimed she refused to comply with an order to submit to random drug testing.

9. The Department maintained a policy requiring sworn personnel employed by the Department to submit to random urinalysis testing for drugs of abuse.

10. The Department's drug testing protocol required sworn personnel to completely disrobe of all clothing before voiding their urine into the urine specimen collection cup.

11. At the time plaintiff Hughes was ordered to submit to random drug testing, she was seven months pregnant.

12. Plaintiff Hughes' pregnancy was accompanied by the complication of onset of edema and phlebitis, with the potential for thrombosis in her lower extremities. As a result, plaintiff's treating physician prescribed her to wear a compression stockings garment daily. This one-piece elastic medical garment extended from the toes to above the waist and had the effect of compressing the legs by exerting pressure on them, thereby reducing the diameter of distended veins in the legs and increasing venous blood flow capacity and valve

2

effectiveness. Such compression therapy had the medical purpose and effect of decreasing venous pressure, preventing venous stasis and impairment of venous walls, and thereby reducing the likelihood of edema, phlebitis, and thrombosis.

13. Because of plaintiff Hughes' advanced condition of pregnancy at the time she was ordered to submit to drug testing, she could not don the medical garment without assistance, assistance which her husband provided each morning.

14. When plaintiff Hughes reported as ordered to the drug testing center for urinalysis, she informed the urine collection employee that she was wearing a medical garment prescribed by her physician that she could not remove. The employee directed her nonetheless to remove the garment. Plaintiff Hughes declined the instruction because of her physician's prescription that she wear the garment at all times except when lying down for sleep. Had plaintiff Hughes complied with the employee's instruction to remove the medical garment, she would not have been able to put it back on, which would have exposed her to the risk of medical consequences.

15. The compression garment plaintiff Hughes was prescribed to wear did not interfere with her ability to produce a urine specimen as ordered under the Department's random drug testing order.

16. At no time did plaintiff Hughes decline or refuse to produce a urine specimen as ordered. Indeed, she repeatedly stated, both orally and in writing, her willingness to produce a urine specimen so long as the urine collection employee permitted her to do so without removing the medical garment prescribed by her physician. The urine collection employee refused to accommodate plaintiff Hughes's pregnancy-related medical condition.

17. The urine collection employee had discretion to permit drug testing subjects to continue to wear medical garments, notwithstanding the rule requiring all drug testing subjects to

3

completely disrobe of all clothing before voiding their urine into the urine specimen collection cup. The urine collection employee abused her discretion by refusing to permit plaintiff Hughes to retain her medical garment, even though the garment did not interfere with plaintiff Hughes's ability to void urine.

18. With the personnel action taken on December 15, 2014, the Department took adverse employment action against plaintiff Hughes by halting her pay and benefits and removing her from employment status with the Department.

### Count I
### Violation of Elliott-Larsen Civil Rights Act – Disparate Impact

19. Plaintiff hereby incorporates paragraphs 1. through 18. here.

20. The Elliott-Larsen Civil Rights Act (ELCRA) prohibits, *inter alia*, discrimination in employment "because of ... sex." MCL 37.2202(1).

21. The ELCRA defines "sex" as including "pregnancy, ... or a medical condition related to pregnancy."

22. At the time plaintiff Hughes was ordered to submit to random drug testing, she was pregnant and had a medical condition related to pregnancy that required her to wear a prescribed compression garment.

23. Defendant maintained a policy of requiring all drug testing subjects to completely disrobe before voiding urine into urine collection cups. As applied, defendant's policy imposed a disparate impact on the basis of sex (pregnancy) as to plaintiff Hughes and all women employed at Defendant's police department who had medical conditions related to pregnancy that required them to wear physician-prescribed medical garments. Defendant's policy violated the ELCRA because of its disparate impact on women.

4

24. Less restrictive policies and practices were available that would not cause disparate impact, and defendant refused to adopt them.

25. As the direct and proximate result of defendant's unlawful actions, plaintiff Hughes has suffered loss of earnings, earning capacity, fringe benefits, opportunities for advancement, overtime and shift differential pay, and has suffered emotional distress, humiliation and embarrassment, and loss of professional reputation.

### Count II
### Violation of Elliott-Larsen Civil Rights Act – Disparate Treatment

26. Plaintiff hereby incorporates paragraphs 1. through 18. here.

27. Defendant City of Detroit violated ELCRA's prohibition of sex discrimination by requiring plaintiff Hughes to fully disrobe for drug testing, and thereby remove a medical garment prescribed for her by her physician on account of her pregnancy, while defendant did not require similarly situated police personnel who had conditions other than pregnancy to fully disrobe for drug testing.

28. As such, defendant's policy excluded plaintiff Hughes from the benefit afforded to non-pregnant police personnel of being permitted to comply with an order of drug testing while also complying with her physician's pregnancy-related medical prescription.

29. In its treatment of plaintiff Hughes, defendant used plaintiff Hughes's sex (pregnancy) as a factor that made a difference in its actions.

30. Defendant's action with respect to plaintiff Hughes constituted intentional discrimination against her on the basis of sex (pregnancy) in violation of ELCRA.

31. As a direct and proximate result of defendant's unlawful actions, plaintiff Hughes suffered loss of earnings, earning capacity, fringe benefits, opportunities for advancement, overtime

5

and shift differential pay, and has suffered emotional distress, humiliation and embarrassment, and loss of professional reputation.

## Count III
### Violation of Persons With Disabilities Civil Rights Act

32. Plaintiff incorporates paragraphs 1. through 18. here.

33. Plaintiff Hughes had a "disability" within the meaning of Section 103(d)(i)(A) of the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1103(d)(i)(A), because she had a "determinable physical characteristic" – pregnancy-related edema of the lower extremities – that when untreated substantially limited the blood flow and venous function in her lower extremities, but when treated with physician-prescribed compression garment was unrelated to and did not interfere with or impair her ability to perform the duties of her position.

34. Under the PWDCRA, an employer shall not, *inter alia*, discharge or otherwise discriminate against an individual "because of a disability ... that is unrelated to the individual's ability to perform" the duties of her job. MCL 37.1202(1)(b).

35. Under the PWDCRA, an employer is required to accommodate the disability of an employee unless doing so would impose an undue hardship on the employer.

36. Permitting plaintiff Hughes to wear the physician-prescribed medical garment during drug testing would not have imposed an undue hardship on defendant.

37. Defendant violated the PWDCRA by refusing to accommodate plaintiff Hughes' disability by permitting her to wear the physician-prescribed medical garment during drug testing and then discharging her from employment for failing or refusing to remove the garment.

### Relief Requested

WHEREFORE, Tanya Hughes requests relief against defendant as follows:

    A.    Declaration that defendant has violated the ELCRA in its treatment of her;

6

B.     Declaration that defendant has violated the PWDCRA in its treatment of her;

C.     Restoration to the full duty status and work assignment she previously held;

D.     Reimbursement for lost past and future wages, overtime, and benefits;

E.     Damages for mental anguish, humiliation, emotional distress, damage to her reputation, loss of wages, seniority and benefits and standing in the community;

F.     Attorneys fees and costs;

G.     Interest as authorized by law;

H.     Such further relief as justice may require.


## Jury Demand

Tanya Hughes demands trial by jury of all issues so triable.

Respectfully submitted,

**JEFFREY J. ELLISON, PLLC**

/s/ Jeffrey J. Ellison
     Jeffrey J. Ellison (P35735)
     Attorney for Plaintiff
     214 S. Main Street, Suite 210
     Ann Arbor, MI 48104
     (734) 761-4300
     (734) 528-4159 fax
     EllisonEsq@aol.com

Dated: February 27, 2015

7

TANYA HUGHES,

      Plaintiff,

v.

                                       Case No. 2015-002536-CD
                                       Hon. Daniel P. Ryan

CITY OF DETROIT,

      Defendant.

**JEFFREY J. ELLISON, PLLC**
BY: Jeffrey J. Ellison (P35735)
Attorney for Plaintiff
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
(734) 761-4300
(734) 528-4159 fax
EllisonEsq@aol.com

## PLAINTIFF'S FIRST INTERROGATORIES
## TO DEFENDANT CITY OF DETROIT

Within the time permitted by MCR 2.309(B)(4), please respond to the following interrogatories.

When used in reference to persons, the term "identify" requires defendant City of Detroit to provide the persons' names, employers, job titles, home addresses, work addresses, home telephone numbers, work telephone numbers, and mobile telephone numbers. When used in reference to documents, the term "identify" requires defendant to describe in detail the documents, to state the dates the documents were created, to state the authors of the documents, to state the documents' locations, and to identify the persons who are in possession or control of them.

**INTERROGATORY 1:** Please identify all individuals who will sign the responses to these interrogatories, and all individuals who contributed to and/or were consulted in connection with

the preparation and/or drafting of the responses to these interrogatories, including those individuals from whom the information needed for the responses was obtained.

**RESPONSE:**

**INTERROGATORY 2:** For each individual identified in response to Interrogatory 1, above, please state in detail all information obtained from that individual.

**RESPONSE:**

**INTERROGATORY 3:** Please state in detail the full and complete factual and legal bases for each affirmative defense pleaded by defendant.

**RESPONSE:**

**INTERROGATORY 4:** Please identify each and every person who has knowledge of the any fact or circumstance alleged in the Complaint. For each such person, please provide the following information:

  a) The person's name;

  b) If employed by defendant at present, the employee's date of hire, job title, and assignment;

  c) A description of the person's knowledge of the fact(s) or circumstance(s) alleged in the Complaint.

2

d) A description of the action(s), if any, the person took with respect to the fact(s) or circumstance(s) alleged in the Complaint.

e) A description of all documents, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and recordings, the person has created, generated, sent, received, obtained, acquired, accumulated, or maintained that concern or relate to the fact(s) or circumstance(s) alleged in the Complaint.

**RESPONSE:**

Respectfully submitted,

**JEFFREY J. ELLISON, PLLC**

Dated: February 27, 2015

    /s/Jeffrey J. Ellison

BY:   Jeffrey J. Ellison (P35735)
       Attorney for Plaintiff
       214 South Main Street, Suite 210
       Ann Arbor, MI 48104-2212
       (734) 761-4300
       (734) 528-4159 fax
       EllisonEsq@aol.com

3

## STATE OF MICHIGAN
## THIRD JUDICIAL CIRCUIT COURT

**TANYA HUGHES,**

    **Plaintiff,**

v.
                        **Case No. 2015-002536-CD**
                        **Hon. Daniel P. Ryan**

**CITY OF DETROIT,**

    **Defendant.**

**JEFFREY J. ELLISON, PLLC**
BY: Jeffrey J. Ellison (P35735)
Attorney for Plaintiff
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
(734) 761-4300
(734) 528-4159 fax
EllisonEsq@aol.com

### PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

Within the time permitted by MCR 2.310(C)(2), plaintiff Hughes requests that defendant City produce the documents and tangible things described in Exhibit A below, for inspection and copying at the offices of Jeffrey J. Ellison, 214 South Main Street, Suite 210, Ann Arbor, MI 48104-2122.

Defendant City shall respond separately and individually and label its documents to correspond with the categories of the request. In the event that a claim of privilege and/or work product is asserted with respect to any request herein, defendant City shall specify the basis of the assertion and provide sufficient information to permit the Court to rule as to its applicability. Defendant City has a duty to supplement any response in accordance with MCR 2.301(E)(1)(b).

## EXHIBIT A

Defendant City shall produce and permit plaintiff Hughes and her counsel to inspect and copy any and all records, statements, files, letters, e-mail, memoranda, reports, notes, correspondence, diaries, calendars, logs, lists, minutes, certificates, notes, books, manuals, pamphlets, brochures, handbooks, advertisements, books of account, balance sheets, financial statements, profit and loss statements, working papers, schedules, time records, equipment records, microfilms, transcripts, recordings, tapes, telexes, telegrams, files, proposals, bids, offers, contracts, agreements, change orders, worksheets, drawings, blue prints, designs, specifications, time cards, compilations, graphs, charts, bills, statements, invoices, receipts, bills of lading, shipping records, confirmations, applications, purchase orders, checks, canceled checks, checkbooks and other checking records, photographs, audio and video tape recordings, formulae, prescriptions, studies, projections, reports, computer programs, computer records, computer discs, CD-ROM, DVD, computer hard drives, information contained in computer banks, tapes, cards, printouts, and drafts to the extent they differ from the originals, and all other documents, records and papers in possession, custody or control of defendant City or of any agent, representative, servant, employee of defendant City or available to him or his whether originals, copies, drafts, typed, printed, handwritten, photographed, photocopied, recorded, or otherwise produced or reproduced, pertaining to the matters alleged in the Complaint and specifically including, without limitation, the following:

1. The complete personnel record of plaintiff Hughes.

2. The complete unit or section personnel record of plaintiff Hughes.

3. All documents created, obtained, acquired, accumulated, or maintained on plaintiff Hughes by the Medical Section (or its successor or equivalent) of the Detroit Police Department,

2

including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and recordings.

4. All documents created, obtained, acquired, accumulated, or maintained on plaintiff Hughes by the Drug Testing unit (or its successor or equivalent) of the Detroit Police Department, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and recordings.

5. All documents created, obtained, acquired, accumulated, or maintained on plaintiff Hughes by the Disciplinary Administration section (or its successor or equivalent) of the Detroit Police Department, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and audio or audio-visual recordings and transcripts, including such recordings and transcripts of trial board and arbitration proceedings.

6. All documents created, obtained, acquired, accumulated, or maintained by the Internal Affairs section of the Detroit Police Department concerning or related to plaintiff Hughes, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and audio or audio-visual recordings, including such recordings and transcripts of witness interviews, Garrity interviews, and trial board and arbitration proceedings.

7. All documents created, obtained, acquired, accumulated, or maintained on plaintiff Hughes by the Board of Police Commissioners (or its successor or equivalent) of the Detroit Police Department, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and audio or audio-visual recordings and transcripts, including such recordings and transcripts of hearings or proceedings before that body that concern or relate to plaintiff Hughes.

3

8. All documents, exhibits and recordings submitted to any Trial Board that considered any charge concerning or related to plaintiff Hughes.

9. All documents, exhibits and recordings submitted to any arbitrator that considered any charge concerning or related to plaintiff Hughes.

10. All documents created, obtained, acquired, accumulated, or maintained by or at the direction of the Chief of Police and/or the office of the Chief of Police concerning or related to plaintiff Hughes, including notes, memoranda, orders, email, text messages, call logs, case progress sheets, reports, recommendations, endorsements, and recordings.

11. All policies, procedures, standard operating procedures, guidelines, advice memoranda, and all other documents, concerning the random drug testing procedure applicable to sworn police personnel of the Detroit Police Department.

12. All personnel policies, handbooks, manuals, directives, memoranda, general orders, special orders, collective bargaining agreements and all other documents that were in effect at any time between January 2012 and December 2014 and that were applicable to sworn police personnel employed by defendant City, including the Detroit Police Manual.

13. All documents that concern, relate to, support, or substantiate defendant's response to Interrogatory 4 of Plaintiff's First Interrogatories to Defendant City of Detroit, including files of the Internal Affairs section, the Disciplinary Administration Section, the Medical Section, the Drug Testing unit, misconduct reports, witness statements, charge sheets, personnel orders, trial board findings, arbitration awards, and all other documents.

14. All documents defendant City will seek to admit into evidence at trial of this matter.

4

Respectfully submitted,

**JEFFREY J. ELLISON, PLLC**

Dated: February 27, 2015

/s/Jeffrey J. Ellison .
JEFFREY J. ELLISON (P35735)
Attorney for Plaintiff
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
(734) 761-4300
EllisonEsq@aol.com

5

**TANYA HUGHES,**

     **Plaintiff,**

v.                     **Case No. 2015-    -CD**

**CITY OF DETROIT,**

     **Defendant.**

15-002536-CD
~~FILED IN MY~~ OFFICE
WAYNE COUNTY CLERK
2/27/2015 2:51:20 PM
CATHY M. GARRETT

**JEFFREY J. ELLISON, PLLC**
BY: Jeffrey J. Ellison (P35735)
Attorney for Plaintiff
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
(734) 761-4300
(734) 528-4159 fax
EllisonEsq@aol.com

## PLAINTIFF'S FIRST REQUESTS FOR ADMISSION

Within the time permitted by MCR 2.312, plaintiff requests that defendant City of Detroit admit the following:

1. Please admit that the Court has jurisdiction of these claims pursuant to MCL 37.2801, MCL 37.1606, and MCL 600.605 as the amount in controversy exceeds $25,000.

2. Please admit that the violations alleged in the complaint occurred in Detroit, Wayne County, Michigan.

3. Please admit that venue is proper in this Court pursuant to MCL 600.1629, 37.2801, and 37.1606(2).

4. Please admit that defendant City of Detroit is a political subdivision of the State of Michigan.

5. Please admit that in May 1996, plaintiff Hughes commenced employment as a sworn law enforcement officer employed by the Detroit Police Department ("Department"), an agency of defendant City of Detroit.

6. Please admit that, plaintiff Hughes was promoted to and performed the duties of the rank of sergeant in the Department.

7. Please admit that at all times relevant to the complaint, plaintiff Hughes performed the duties of her employment in a satisfactory manner.

8. Please admit that despite performing her duties satisfactorily at all times, plaintiff Hughes was removed from the payroll and dismissed from employment with the Department by personnel action taken December 15, 2014.

9. Please admit that the Department dismissed plaintiff Hughes from employment because it claimed she refused to comply with an order to submit to random drug testing.

10. Please admit that the Department maintained a policy requiring sworn personnel employed by the Department to submit to random urinalysis testing for drugs of abuse.

11. Please admit that the Department's drug testing protocol required sworn personnel to completely disrobe of all clothing before voiding their urine into the urine specimen collection cup.

12. Please admit that at the time plaintiff Hughes was ordered to submit to random drug testing, she was seven months pregnant.

13. Please admit that plaintiff Hughes' pregnancy was accompanied by the complication of onset of edema, with the potential for phlebitis and thrombosis in her lower extremities.

14. Please admit that as a result of the edema onset, plaintiff's treating physician prescribed her to wear compression stockings daily.

15. Please admit that the one-piece elastic medical garment prescribed for plaintiff Hughes extended from the toes to above the waist and had the effect of compressing the legs by

2

exerting pressure on them, thereby reducing the diameter of distended veins in the legs, increasing venous blood flow capacity and valve effectiveness.

16. Please admit that the compression therapy prescribed for plaintiff Hughes had the medical purpose of decreasing venous pressure, preventing venous stasis and impairment of venous walls, and thereby reducing the likelihood of edema, phlebitis, and thrombosis.

17. Please admit that because of plaintiff Hughes' advanced condition of pregnancy at the time she was ordered to submit to drug testing, she could not don the medical garment without assistance, assistance which her husband provided each morning.

18. Please admit that at the drug testing center, plaintiff Hughes informed the urine collection employee that she was wearing a medical garment prescribed by her physician that she could not remove.

19. Please admit that despite plaintiff Hughes' statement to the urine collection employee that she could not remove the medical garment prescribed by her physician, the employee directed plaintiff Hughes nonetheless to remove the garment.

20. Please admit that plaintiff Hughes declined the instruction of the urine collection employee to remove the medical garment because plaintiff Hughes' physician prescribed that she wear the garment at all times except when laying down for sleep.

21. Please admit that had plaintiff Hughes complied with the employee's instruction to remove the medical garment, she would not have been able to put it back on, which would have exposed her to the risk of medical consequences.

22. Please admit that the compression garment plaintiff Hughes was prescribed to wear did not interfere with her ability to produce a urine specimen as ordered under the Department's random drug testing order.

3

23. Please admit that at no time did plaintiff Hughes decline or refuse to produce a urine specimen as ordered.

24. Please admit that plaintiff Hughes repeatedly stated, both orally and in writing, her willingness to produce a urine specimen so long as the urine collection employee permitted her to continue to wear the medical garment prescribed by her physician.

25. Please admit that the urine collection employee refused to accommodate plaintiff Hughes's pregnancy-related medical condition.

26. Please admit that the urine collection employee had discretion to permit drug testing subjects to continue to wear medical garments, notwithstanding the rule requiring all drug testing subjects to completely disrobe of all clothing before voiding their urine into the urine specimen collection cup.

27. Please admit that the urine collection employee abused her discretion by refusing to permit plaintiff Hughes to retain her medical garment, even though the garment did not interfere with plaintiff Hughes's ability to void urine.

28. Please admit that with the personnel action taken on December 15, 2014, the Department took adverse employment action against plaintiff Hughes by halting her pay and benefits and removing her from employment status with the Department.

29. Please admit that at the time plaintiff Hughes was ordered to submit to random drug testing, she was pregnant and had a medical condition related to pregnancy that required her to wear a prescribed compression garment.

30. Please admit that defendant maintained a policy of requiring all drug testing subjects to completely disrobe before voiding urine into urine collection cups.

4

31. Please admit that as applied, defendant's policy imposed a disparate impact on the basis of sex (pregnancy) as to plaintiff Hughes and all women employed at Defendant's police department who had medical conditions related to pregnancy that required them to wear physician-prescribed medical garments.

32. Please admit that defendant's policy violated the ELCRA because of its disparate impact on women.

33. Please admit that less restrictive policies and practices were available that would not cause disparate impact, and defendant refused to adopt them.

34. Please admit that as the direct and proximate result of defendant's unlawful actions, plaintiff Hughes has suffered loss of earnings, earning capacity, fringe benefits, opportunities for advancement, overtime and shift differential pay, and has suffered emotional distress, humiliation and embarrassment, and loss of professional reputation.

35. Please admit that defendant City of Detroit violated ELCRA's prohibition of sex discrimination by requiring plaintiff Hughes to fully disrobe for drug testing, and thereby remove a medical garment prescribed for her by her physician on account of her pregnancy, while defendant did not require similarly situated police personnel who had conditions other than pregnancy to fully disrobe for drug testing.

36. Please admit that defendant's policy excluded plaintiff Hughes from the benefit afforded to non-pregnant police personnel of being permitted to comply with an order of drug testing while also complying with her physician's pregnancy-related medical prescription.

37. Please admit that in its treatment of plaintiff Hughes, defendant used plaintiff Hughes's sex (pregnancy) as a factor that made a difference in its actions.

5

38. Please admit that defendant's action with respect to plaintiff Hughes constituted intentional discrimination against her on the basis of sex (pregnancy) in violation of ELCRA.

39. Please admit that as a direct and proximate result of defendant's unlawful actions, plaintiff Hughes suffered loss of earnings, earning capacity, fringe benefits, opportunities for advancement, overtime and shift differential pay, and has suffered emotional distress, humiliation and embarrassment, and loss of professional reputation.

40. Please admit that plaintiff Hughes had a "disability" within the meaning of Section 103(d)(i)(A) of the Persons With Disabilities Civil Rights Act (PWDCRA), MCL 37.1103(d)(i)(A), because she had a "determinable physical characteristic" – pregnancy-related edema of the lower extremities – that when untreated substantially limited the blood flow and venous function in her lower extremities, but when treated with physician-prescribed compression garment was unrelated to and did not interfere with or impair her ability to perform the duties of her position.

41. Please admit that under the PWDCRA, an employer shall not, *inter alia*, discharge or otherwise discriminate against an individual "because of a disability ... that is unrelated to the individual's ability to perform" the duties of her job. MCL 37.1202(1)(b).

42. Please admit that under the PWDCRA, an employer is required to accommodate the disability of an employee unless doing so would impose an undue hardship on the employer.

43. Please admit that permitting plaintiff Hughes to wear the physician-prescribed medical garment during drug testing would not have imposed an undue hardship on defendant.

44. Please admit that defendant violated the PWDCRA by refusing to accommodate plaintiff Hughes' disability by permitting her to wear the physician-prescribed medical garment

6

during drug testing and then discharging her from employment for failing or refusing to remove the garment.

Respectfully submitted,

**JEFFREY J. ELLISON, PLLC**

/s/ Jeffrey J. Ellison
    Jeffrey J. Ellison (P35735)
    Attorney for Plaintiff
    214 S. Main Street, Suite 210
    Ann Arbor, MI 48104
    (734) 761-4300
    (734) 528-4159 fax
    EllisonEsq@aol.com

Dated: February 27, 2015

RECEIVED

MAR 0 3 2015

CITY OF DETROIT
LAW DEPARTMENT

**EXHIBIT 6B – ANSWER**

TANYA HUGHES,

    Plaintiff,

v.

CITY OF DETROIT,

    Defendant.

Case No. 15-002536-CD
Hon. Daniel P. Ryan

15-002536-CD
FILED IN MY OFFICE
WAYNE COUNTY CLERK
3/23/2015 11:07:23 AM
CATHY M. GARRETT

| JEFFREY J. ELLISON, PLLC | CITY OF DETROIT LAW DEPT. |
|---|---|
| BY: Jeffrey J. Ellison (P35735) | Letitia C. Jones (P-52136) |
| Attorney for Plaintiff | Attorney for Defendant |
| 214 South Main Street, Suite 210 | 2 Woodward, Suite 500 |
| Ann Arbor, MI 48104-2122 | Detroit, MI 48226 |
| p. (734) 761-4300 | p. (313) 237-3002 |
| f. (734) 528-4159 | f. (313) 224-5505 |
| e. EllisonEsq@aol.com | e. jonelc@detroitmi.gov |

### CITY OF DETROIT'S ANSWER,
### ALONG WITH ITS SPECIAL AND AFFIRMATIVE DEFENSES

NOW COMES, Defendant CITY OF DETROIT, by and through the undersigned attorney, with its Answer, Special and Affirmative Defenses to Plaintiff's Complaint, pursuant to all applicable Michigan Court Rules, states the following:

#### Jurisdictional Allegations

1. Defendant admits

2. Defendant admits that this Court has jurisdiction over claims pursuant to Elliott Larsen Civil Rights Act, MCL 37.2101 et seq., and Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq.

3. Defendant admits in part that the Court has jurisdiction over matters brought under the Elliott Larsen Civil Rights Act, MCL 37.2101 et seq., and Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq. Defendant can neither admit nor deny as to the

1

remainder of the allegations.

**Circumstances**

4. Defendant admits

5. Defendant admits.

6. Defendant denies.

7. Defendant denies.

8. Defendant admits that Plaintiff was terminated for various violations of department regulations stemming from her refusal to submit to random drug screen.

9. Defendant admits.

10. Defendant admits.

11. Defendant admits in part, denies in part. At the time Plaintiff was ordered to submit for random drug testing, Defendant was unaware that she was seven months pregnant. It was since disclosed in the investigation and adjudication of the disciplinary action against Plaintiff.

12. Defendant can neither admit nor deny, leaving Plaintiff to her proofs.

13. Defendant can neither admit nor deny, leaving Plaintiff to her proofs.

14. Defendant denies

15. Defendant can neither admit nor deny, leaving Plaintiff to her proofs.

16. Defendant admits in part that Plaintiff stated she would provide a sample, but without removing all of her clothing as required; denies in part as she neither disclosed her pregnant status and the issue with the medical garment requiring assistance to don and doff.

17. Defendant denies.

18. Defendant admits that Plaintiff was suspended "with pay" from October 5, 2012 to the

date of her termination. During this time, an investigation took place and disciplinary action resulted. On December 3, 2012, a police trial board (disciplinary) hearing took place, wherein she was terminated from the department. However, pursuant to the collective bargaining agreement between the Detroit Police Lieutenant and Sergeants Association and the City, the discharge is not final and binding until all appeals have been completed. On April 30, 2013 and May 6, 2013, a de novo arbitration hearing was conducted. On December 15, 2014, a decision was issued to uphold the discharge. At which point, Plaintiff employment relationship with the City was completely severed.

**Count I – Violation of Elliott-Larsen Civil Rights Act – Disparate Impact**

19. Defendant repeats and incorporates its answers to paragraphs 1-19 above as if fully restated herein.

20. Defendant neither admits nor denies, calls for legal conclusion for which no answer is required.

21. Defendant neither admits nor denies, calls for legal conclusion for which no answer is required.

22. Defendant admits in part, denies in part. At the time Plaintiff was ordered to submit for random drug testing, Defendant was unaware that she was seven months pregnant. It was since disclosed in the investigation and adjudication of the disciplinary action against Plaintiff.

23. Defendant admits in part that it has a policy requiring all drug testing subjects to completely disrobe before viding urine into urine collection cups; denies the remainder of the allegation in paragraph 23.

24. Defendant denies that the City has other less restrictive methods of drug testing, and denies any disparate impact.

3

25. Defendant denies.

### Count II – Violation of Elliott-Larsen Civil Rights Act – Disparate Treatment

26. Defendant repeats and incorporates its answers to paragraphs 1-25 above as if fully restated herein.

27. Defendant denies

28. Defendant denies

29. Defendant denies

30. Defendant denies

31. Defendant denies

### Count III – Violation of Persons with Disabilities Civil Rights Act

32. Defendant repeats and incorporates its answers to paragraphs 1-31 above as if fully restated herein.

33. Defendant neither admits nor denies, as it calls for a legal conclusion for which no answer is required.

34. Defendant neither admits nor denies, as it calls for a legal conclusion for which no answer is required

35. Defendant neither admits nor denies, as it calls for a legal conclusion for which no answer is required

36. Defendant denies.

37. Defendant denies.

4

## RELIEF REQUESTED

Defendant denies the relief sought in paragraphs A through H.

WHEREFORE, Defendant CITY OF DETROIT, requests that this Honorable Court dismiss Plaintiff's Complaint, *in toto*; that this Court deny to Plaintiff her prayer for relief; and that this Court enter its Order awarding attorney fees and costs for the defense of this frivolous action and for what further relief this Court determines to be fair and equitable.

Respectfully, Submitted,
CITY OF DETROIT LAW DEPARTMENT

*/s/ Letitia C. Jones*
**Letitia C. Jones** [P-52136]
Assistant Corporation Counsel

Date: March 23, 2015

**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE**

TANYA HUGHES,

      Plaintiff,

v.

CITY OF DETROIT,

      Defendant.

Case No. 15-002536-CD
Hon. Daniel P. Ryan

| JEFFREY J. ELLISON, PLLC | CITY OF DETROIT LAW DEPT. |
|---|---|
| BY: Jeffrey J. Ellison (P35735) | Letitia C. Jones (P-52136) |
| Attorney for Plaintiff | Attorney for Defendant |
| 214 South Main Street, Suite 210 | 2 Woodward, Suite 500 |
| Ann Arbor, MI 48104-2122 | Detroit, MI 48226 |
| p. (734) 761-4300 | p. (313) 237-3002 |
| f. (734) 528-4159 | f. (313) 224-5505 |
| e. EllisonEsq@aol.com | e. jonelc@detroitmi.gov |

### CITY OF DETROIT'S SPECIAL AND AFFIRMATIVE DEFENSES

In further answer, and by way of special and affirmative defenses, Defendant CITY OF DETROIT, by and through the undersigned attorney, state that it will rely upon the following special and affirmative defenses, if applicable, and if supported by the facts to be determined through discovery.

1. Defendant CITY OF DETROIT's actions in all respects were legal and proper;

2. Except as to the amount of damages, there is no genuine issue of any material fact;

3. Plaintiff's claim are barred in whole or in part by the doctrine of unclean hands;

4. Plaintiff's claim is barred by the applicable statute of limitation;

6

5. Plaintiff has failed to state a claim upon which relief can be granted;

6. Defendant, CITY OF DETROIT, is entitled to governmental immunity pursuant to MCL §691.1407 and plaintiff has failed to plead in avoidance of the immunity;

7. Plaintiff is not disabled within the meaning of the Persons with Disabilities Civil Rights Act, MCL 37.1101 et seq.

8. Plaintiff failed to notify Defendant of any disability; as such, Defendant had no duty to accommodate.

9. Plaintiff failed to request an accommodation; as such, Defendant had no duty to accommodate.

10. The City of Detroit has promulgated ordinances, rules and executive orders prohibiting all city employees, appointees, commissions and agencies from discriminating or harassing any employee on the basis of his or her handicap;

11. Plaintiff's damages would be limited, having been suspended *"with pay"* from the date of the incident until the date of termination.

12. Plaintiff's damages were not proximately caused by Defendant's actions, but were caused by Plaintiff's failure to disclose her disability and need for accommodation;

13. Plaintiff's damages were not proximately caused by Defendant's actions, but were caused by Plaintiff's failure to adhere to the rules and regulations of the department;

14. Plaintiff's damages were not proximately caused by Defendant's actions, but were caused by Plaintiff's challenge to the department rules and regulations; challenge to her union's counsel to comply; challenge to ranking officials pleading with her to comply.

15. Plaintiff has failed to mitigate her damages;

16. Plaintiff has failed to exhaust her administrative remedies

17. Defendant's duties to Plaintiff were modified under the terms of the applicable collective bargaining agreement;

18. Plaintiff's claims are barred by the collective bargaining agreement;

19. Defendant CITY OF DETROIT reserves the right to amend, supplement or otherwise modify its answer and special and affirmative defenses pending completion of discovery.

WHEREFORE, Defendant CITY OF DETROIT, requests that this Honorable Court dismiss Plaintiff's Complaint, *in toto*; that this Court deny to Plaintiff her prayer for relief; and that this Court enter its Order awarding attorney fees and costs for the defense of this frivolous action and for what further relief this Court determines to be fair and equitable.

Respectfully, Submitted,
CITY OF DETROIT LAW DEPARTMENT

*/s/ Letitia C. Jones*
**Letitia C. Jones** [P-52136]
Assistant Corporation Counsel

Date: March 23, 2015

**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE**

TANYA HUGHES,

     Plaintiff,

                                    Case No. 15-002536-CD
                                    Hon. Daniel P. Ryan

v.

CITY OF DETROIT,

     Defendant.

| | |
|---|---|
| JEFFREY J. ELLISON, PLLC | CITY OF DETROIT LAW DEPT. |
| BY: Jeffrey J. Ellison (P35735) | Letitia C. Jones (P-52136) |
| Attorney for Plaintiff | Attorney for Defendant |
| 214 South Main Street, Suite 210 | 2 Woodward, Suite 500 |
| Ann Arbor, MI 48104-2122 | Detroit, MI 48226 |
| p. (734) 761-4300 | p. (313) 237-3002 |
| f. (734) 528-4159 | f. (313) 224-5505 |
| e. EllisonEsq@aol.com | e. jonelc@detroitmi.gov |

**CITY OF DETROIT'S RELIANCE ON**
**PLAINTIFF'S JURY DEMAND**

To:     All Attorneys of Record, Clerk of the Court

     NOW COMES, Defendant CITY OF DETROIT, by and through the undersigned

attorney, in reliance of Plaintiff's Demand for Jury Trial.

                     Respectfully, Submitted,
                     CITY OF DETROIT LAW DEPARTMENT

                     */s/ Letitia C. Jones*
                     **Letitia C. Jones** [P-52136]
                     Assistant Corporation Counsel

Date: March 23, 2015

## CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON **MONDAY, MARCH 23, 2015**, THE **CITY'S ANSWER, SPECIAL AND AFFIRMATIVE DEFENSES AND RELIANCE ON JURY DEMAND** WAS SERVED UPON ALL PARTIES BY CURTESY COPY TO THE ABOVE CAUSE BY ELECTONIC MEANS ADDRESSED TO THE ATTORNEYS OF RECORD AT THEIR RESPECTIVE EMAIL ADDRESS DISCLOSED ON THE PLEADINGS.

/s/ Letitia C. Jones
**Letitia C. Jones [P-52136]**
**Sr. Asst. Corp. Counsel**
**City of Detroit Law Department**

**EXHIBIT 6C – MAY 6 LETTER**



CITY OF DETROIT LAW DEPARTMENT
2 WOODWARD AVE., SUITE 500
DETROIT, MICHIGAN 48226
PHONE: 313.224.4550
FAX: 313.224.5505
www.detroitmi.gov

May 6, 2015

Jeffrey Ellison
214 S Main St. Suite 210
Ann Arbor, MI 48104-2122

Counselor:

Please see the attached Notice of Violation of Federal Bankruptcy Plan Injunction and Demand to Dismiss, along with a copy of the certificate of service that Plaintiff received notice to file a claim. I have also attached the injunction language, and an Order to Dismiss for your stipulation and signature.

Please sign and return the Order for filing with the Circuit Court. If I have not received this by the 15th, I will be forced to file a motion with the U.S. Bankruptcy Court.

Should you have any questions, please contact my office.

Sincerely,

*Letitia C. Jones*
*Assistant Corporation Counsel*
*Labor & Employment Law Group*
*jonelc@detroitmi.gov : email*
*(313) 237-3002: phone*
*(313) 224-5505: fax*

Enclosures\

May 4, 2015

## NOTICE OF VIOLATION OF FEDERAL BANKRUPTCY PLAN INJUNCTION AND DEMAND TO DISMISS

Counselor:

Demand is hereby made that you **sign and return by May 15, 2015** the enclosed stipulated order to dismiss the above referenced action ("the Lawsuit"). The Lawsuit is premised upon a claim that arose prior to the July 18, 2013 filing by the City of Detroit of a petition under Chapter 9 of the U.S. Bankruptcy Code, *In re City of Detroit, Michigan,* Case No. 13-53846, United States Bankruptcy Court, Eastern District of Michigan. Under federal law and orders entered in the City's bankruptcy, the claim alleged in the Lawsuit was subject to the bankruptcy stay. The Bankruptcy Court approved the Eight Amended Plan for the Adjustment of Debts of the City of Detroit ("the Plan"), by order dated November 12, 2014, and the Plan became effective on December 10, 2014. The Plan, and orders entered along with the Plan, include an injunction against commencing or continuing any actions except as allowed for or provided in the Plan.

The above lawsuit alleges discrimination claims based upon an October 5, 2012 incident, wherein Plaintiff refused to submit to a random drug test, which led to her termination from the City of Detroit Police Department on December 3, 2012. She appealed the termination and a hearing took place on April 30, 2013 and May 6, 2013. Subsequently, the City filed for bankruptcy on June 18, 2013, which resulted in an automatic stay of all proceedings. The appellate decision to uphold the termination was not issued until December 15, 2014. The above lawsuit was filed on February 27, 2015, and the summons and complaint served on the City on March 3, 2015.

On November 29, 2013, Plaintiff was served with the "Information about Deadlines to File Claims, along with a Proof of Claims form. As set forth in that notice, the act of filing of the complaint and effecting service, and any other act in that lawsuit, was done in violation of federal bankruptcy law and orders issued by bankruptcy Judge Steven W. Rhodes.

The bankruptcy court set a deadline of February 21, 2014 for the filing of claims in bankruptcy by those who had a pre-petition claim against the City, including its officers and employees. Based upon our investigation, Tanya L. Hughes did not file a timely bankruptcy claim and did not seek relief from the bankruptcy stay to file the lawsuit. Having failed to file a claim in the bankruptcy, any action taken in furtherance of the continuation of the above lawsuit violates the Plan injunction and related bankruptcy court orders confirming the Plan. See the enclosed Order and Plan excerpts.

If you fail to sign and return the dismissal order as requested, or provided us with proof that the action is not subject to the Plan, we will file a motion with the bankruptcy court to enforce the Plan's injunction. If we must file such a motion we will seek costs and sanctions.

**Letitia C. Jones** [P-52136]
Sr. Assistant Corporation Counsel
**Direct Tel. (313) 237-3002**
**E-Mail: jonelc@detroitmi.gov**

Encls.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| City of Detroit, Michigan, | Case No. 13-53846 |
| Debtor. | Hon. Steve W. Rhodes |

_____/

## CERTIFICATE OF SERVICE

I, Lydia Pastor Nino, certify and say that I am employed by Kurtzman Carson Consultants LLC (KCC), the proposed claims and noticing agent for the Debtor in the above-captioned case.

On November 26, 2013, at my direction and under my supervision, employees of KCC caused the following documents to be served via Overnight mail on the service list attached hereto as **Exhibit A**, for subsequent distribution to beneficial holders of the securities listed on **Exhibit B**; via First Class mail to the parties on the service list attached hereto as **Exhibit C**; and via Email on the service list attached hereto as **Exhibit D**:

- **Information About Deadlines to File Claims** [attached hereto as **Exhibit M**]

- **B10 Proof of Claim Form** [attached hereto as **Exhibit N**]

- **Schedule of GO Bonds** [attached hereto as **Exhibit O**]

Furthermore, on November 29, 2013, at my direction and under my supervision, employees of KCC caused to be served the following documents via First Class Mail on the service lists attached hereto as **Exhibit E**:

- **Information About Deadlines to File Claims** [attached hereto as **Exhibit M**]

- **(Customized) B10 Proof of Claim Form** [attached hereto as **Exhibit N**]

- **Schedule of GO Bonds** [attached hereto as **Exhibit O**]

Furthermore, on November 29, 2013, at my direction and under my supervision, employees of KCC caused to be served the following documents via First Class Mail on the service list attached hereto as **Exhibit F** and **Exhibit G**:

- **Information About Deadlines to File Claims** [attached hereto as **Exhibit M**]

- **(Customized) B10 Proof of Claim Form** [attached he

13-53846-swr   Doc 2337   Filed 12/27/13   Entered 12/27/1    1353846131227000000000008

Furthermore, on or before December 17, 2013, at my direction and under my supervision, employees of KCC caused to be served the following documents via First Class Mail on the service lists attached hereto as **Exhibit H**, **Exhibit I**, **Exhibit J**, **Exhibit K**, **Exhibit L**:

- **Information About Deadlines to File Claims** [attached hereto as **Exhibit M**]

- **B10 Proof of Claim Form** [attached hereto as **Exhibit N**]

Dated: December 27, 2013

/s/ Lydia Pastor Nino
Lydia Pastor Nino
KCC
2335 Alaska Ave
El Segundo, CA 90245
Tel 310.776.7386

# **EXHIBIT G**

13-53846-swr   Doc 2337-1   Filed 12/27/13   Entered 12/27/13 13:56:47   Page 1 of 134

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Hughes, Eddie F | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Emmily D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Emmily D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Emmily D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Eric J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Eric J | REDACTED | REOACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Eunice | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gary | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gary | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gawaine | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gawaine | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gerald C | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gina M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Gus | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Harry H | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Howard J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, James C | | 15492 Grandville Ave | | | Detroit | MI | 48223-1711 | |
| Hughes, Jantzen F | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Jerry D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Joan | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Joseph C | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Josephine | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Julius L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Karen | | 3687 Preston | | | Detroit | MI | 48207 | |
| Hughes, Kenneth E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Kwantaya | | 12335 Mapleridge St | | | Detroit | MI | 48204 | |
| Hughes, Ladelle | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Linda | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Linda | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Lionell J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Lionell J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Lisa | | 3210 Ewald Cir | | | Detroit | MI | 48238 | |
| Hughes, Lynette D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Martha | | 5800 Eastlawn St | | | Detroit | MI | 48213-3612 | |
| Hughes, Melvin | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Michael | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Michael | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Michael W | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Michelle | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Monick | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Nancy M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Patrick F | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Raymond D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Richard C | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Robert D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Samuel | | 31731 Northwestern Hwy | Suite 333 | | Farmington Hills | MI | 48334 | |
| Hughes, Tanya L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Torrey L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Tonia M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Tonia M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Hughes, Tyrese Tenelle | | 5090 Bedford St | | | Detroit | MI | 48224-2649 | |
| Hughes, Wanda | | 5776 Whittier St | | | Detroit | MI | 48224-2636 | |

**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE**

TANYA HUGHES,

      Plaintiff,

v.

CITY OF DETROIT,

      Defendant.

Case No. 15-002536-CD
Hon. Daniel P. Ryan

| | |
|---|---|
| JEFFREY J. ELLISON, PLLC | CITY OF DETROIT LAW DEPT. |
| BY: Jeffrey J. Ellison (P35735) | Letitia C. Jones (P-52136) |
| Attorney for Plaintiff | Attorney for Defendant |
| 214 South Main Street, Suite 210 | 2 Woodward, Suite 500 |
| Ann Arbor, MI 48104-2122 | Detroit, MI 48226 |
| p. (734) 761-4300 | p. (313) 237-3002 |
| f. (734) 528-4159 | f. (313) 224-5505 |
| e. EllisonEsq@aol.com | e. jonelc@detroitmi.gov |

## ORDER DISMISSING ACTION AND CLOSING CASE

      This matter comes before this Court by agreement of the undersigned counsel for the parties. The parties stipulate to the entry of this order, the Court being fully advised in the premises, **IT IS HEREBY ORDERED**:

    1.  This action is dismissed, with prejudice.

    2.  This is a final order and closes the case.

/s/ _____

Date: _____       **Judge Daniel P. Ryan**

The undersigned stipulate to entry of the above order:

/s/ Jeffrey J. Ellison            /s/ Letitia C. Jones
**Jeffrey J. Ellison** [P-35735]    **Letitia C. Jones** [P-52136]
Attorney for Plaintiff            Attorney for Defendant

**STATE OF MICHIGAN**
**IN THE THIRD CIRCUIT COURT FOR THE COUNTY OF WAYNE**

TANYA HUGHES,

     Plaintiff,

v.

CITY OF DETROIT,

     Defendant.

Case No. 15-002536-CD
Hon. Daniel P. Ryan

| JEFFREY J. ELLISON, PLLC | CITY OF DETROIT LAW DEPT. |
|---|---|
| BY: Jeffrey J. Ellison (P35735) | Letitia C. Jones (P-52136) |
| Attorney for Plaintiff | Attorney for Defendant |
| 214 South Main Street, Suite 210 | 2 Woodward, Suite 500 |
| Ann Arbor, MI 48104-2122 | Detroit, MI 48226 |
| p. (734) 761-4300 | p. (313) 237-3002 |
| f. (734) 528-4159 | f. (313) 224-5505 |
| e. EllisonEsq@aol.com | e. jonelc@detroitmi.gov |

### CERTIFICATE OF SERVICE

THE UNDERSIGNED CERTIFIES THAT ON **WEDNESDSAY, MAY 6, 2015**, THE CITY'S NOTICE OF VIOLATION OF FEDERAL BANKRUPTCY PLAN INJUNCTION AND DEMAND TO DISMISS, WITH SUPPORTING DOCUMENTATION (i.e., Certificate of Service to Tanya Hughes from the Bankruptcy Administrator, the Bankruptcy Court Injunction), ALONG WITH AN ORDER TO DISMISSED (to be approved as to form) WERE SERVED UPON THE ATTORNEY OF RECORD BY ELECTRONIC TRANSMISSION.

                    /s/ Letitia C. Jones
                     **Letitia C. Jones [P-52136]**
                    **Sr. Asst. Corp. Counsel**
                    **City of Detroit Law Department**

**EXHIBIT 6D – MAY 14 LETTER**

LAW OFFICES OF

# JEFFREY J. ELLISON

214 SOUTH MAIN STREET, SUITE 210
ANN ARBOR, MICHIGAN 48104-2122

TELEPHONE (734) 761-4300
FAX (734) 528-4159
E-MAIL ELLISONESQ@AOL.COM

May 14, 2015

Letitia Jones
Assistant Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, MI 48226

　　　　RE: Your letter of May 6, 2015 concerning Tanya Hughes v. City of Detroit

Dear Ms. Jones:

　　　　I have your letter, which contends that the action pending in the Third Judicial Circuit Court is barred by order of the Bankruptcy Court as a prepetition claim. You state your intention to move to enforce the injunction to dismiss the Circuit Court action absent my stipulation to dismiss the case.

　　　　I cannot agree to your request, and I ask that you reconsider your intended action. The claim Sgt. Hughes presses now in Circuit Court is not barred by the injunction because it arose when she was dismissed and removed from the City's payroll on December 16, 2014, some seventeen months after the City petitioned in bankruptcy and ten months after the claim bar date passed. The removal from the payroll was the first adverse employment action Sgt. Hughes suffered, and adverse employment action is a required element of the discrimination claim she now presses.

　　　　A review of the chronology provides a framework for the discussion that follows. Sgt. Hughes suffered pregnancy and disability discrimination on October 5, 2012 when she was required unnecessarily to remove all of her clothes in order to void a urine specimen as part of the Detroit Police Department's drug testing program. She offered to provide a specimen but declined to remove a medical garment before doing so because removing the garment was medically contraindicated to her health and that of her unborn child. Immediately following that event, Sgt. Hughes was placed on leave with pay; she suffered no loss of pay and therefore no adverse employment action as a result.

　　　　Subsequently, the Chief of Police petitioned the Board of Police Commissioners to convert the leave from "with pay" to "without pay." Had the Board concurred, Sgt. Hughes would have suffered pay loss and therefore adverse employment action. The Board did not concur, however, concluding to the contrary that Sgt. Hughes had not violated DPD policy or rules in the drug testing event. As the result of the Board's

action, Sgt. Hughes remained on leave with pay and suffered no adverse employment action.

A police trial board subsequently sustained the Chief's determination concerning Sgt. Hughes, but the trial board did not alter her status of leave with pay. Accordingly, Sgt. Hughes suffered no adverse employment action as the result of the trial board determination or anything else that had occurred to that point.

The matter proceeded to arbitration before Umpire Linda Ashford on April 30 and May 6, 2013. Post-hearing briefs were filed June 18, 2013, with Sgt. Hughes still in a leave with pay status.

The City petitioned in bankruptcy on July 18, 2013. At that point, the Code's automatic stay became operative, a fact confirmed by order entered July 25, 2013. Docket #167. The automatic stay order was served on Umpire Ashford on July 26, 2013. She concluded it barred her from proceeding with the determination of the matter involving Sgt. Hughes, and she advised the City of this conclusion. Hearing nothing in reply, Umpire Ashford again on August 23, 2013 renewed her inquiry of the City for advice as to whether her conclusion was correct. The City did not respond. In the meantime, Sgt. Hughes remained on leave with pay, continuing to collect her bi-weekly paycheck and utilize her employment benefits, and Umpire Ashford took no further action while the stay was in place to decide Sgt. Hughes' case.

The Bankruptcy Court subsequently set a claim bar date of January 21, 2014. Docket #1782. Sgt. Hughes did not file a claim because she had none. She was receiving full pay and benefits and, without adverse employment action, had no basis for arguing a claim against the City.

On October 22, 2014, well more than a year after petitioning in bankruptcy, the City finally moved the Bankruptcy Court for an order permitting Umpire Ashford to consider the matter involving Sgt. Hughes. The Court entered the requested order on November 12, 2014 (Docket #8265), the same day it approved the Eighth Amended Plan of Adjustment that effectively ended the bankruptcy matter (Docket #8272). Sgt. Hughes remained on leave with pay through and after the Court's orders of that date.

With the automatic stay lifted with respect to Sgt. Hughes' matter, Umpire Ashford issued her opinion a month later on December 15, 2014, sustaining the Chief's determination and ordering Sgt. Hughes dismissed from the Detroit Police Department. The next day, Sgt. Hughes was removed from the payroll for the first time since she commenced employment, and her employment benefits were ended. Accordingly, December 16, 2014 was the first day Sgt. Hughes suffered adverse employment action, and it was the day her cause of action for pregnancy and disability discrimination first accrued to her. This accrual date was one year and five months *after* the City petitioned in bankruptcy and ten months after the claim bar deadline set by the Bankruptcy Court. Sgt. Hughes filed her suit in Circuit Court on February 27, 2015.

The Bankruptcy Code defines "claim" as

(**A**) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(**B**) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
11 USC §101(5).

The Code further defines "debt" as "liability on a claim." 11 USC §101(12).

Under the precedents of statutory discrimination law, an employee can establish a *prima facie* case of disparate treatment discrimination by establishing each of these four elements: (1) membership in a protected group, (2) qualification for the position, (3) adverse employment action, and (4) replacement by a nongroup member or proof that similarly situated persons not in the protected class were treated differently. *Lytle v. Malady*, 458 Mich. 153 (1998); *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683 (1986); *Ewers v. Stroh Brewery Co*., 178 Mich.App. 371 (1989); *Sisson v. Board of Regents of Univ of Michigan*, 174 Mich.App. 742 (1989).

"Adverse employment action" within this proofs matrix is action that is "materially adverse," *Wilcoxon v. 3M*, 235 Mich.App. 347, 364 (1999), in the form of an ultimate employment decision such as termination, suspension, or demotion that carries with it loss of pay and material loss of benefits.

Here, Sgt. Hughes lost no pay or benefits as the result of the action of the Chief of Police or the Trial Board. Instead, by action of the Board of Police Commissioners, Sgt. Hughes was maintained in a status of full pay and benefits while suspended. In similar circumstances, five federal Circuit Courts of Appeals have held that placement of an employee on administrative leave with pay does not constitute adverse employment action for purposes of statutory discrimination. *Peltier v. U.S.*, 388 F.3d 984, 986, 988 (6th Cir. 2004) (administrative leave with pay pending internal investigation and grand jury proceedings); *Singletary v. Mo. Dept of Corr.*, 423 F.3d 886, 889, 892 (8th Cir. 2005) (suspension with pay pending investigation); *Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (administrative leave with pay pending investigation of complaint); *Breaux v. City of Garland*, 205 F.3d 150, 154-155, 158 (5th Cir. 2000) (administrative leave with pay pending Internal Affairs investigation); and *Joseph v. Leavitt*, 465 F.3d 87, 90-91 (2d Cir. 2006) (administrative leave with pay during pendency of criminal case and for five months thereafter). These precedents establish that Sgt. Hughes, in full pay status, could not allege discrimination under the ELCRA or the PWDCRA at any time prior to December 16, 2014, when she was for the first time removed from the payroll. Accordingly, she did not have a claim within the meaning of the Bankruptcy Code prior

to the filing of the petition or the claim bar date or, indeed, December 16, 2014. For this reason, her present claim is not implicated or barred by the injunction you cite.

An additional reason for you to reconsider your proposed action to seek dismissal of the case is that the City is equitably estopped from doing so by virtue of its representations concerning the automatic stay of proceedings. As noted above, counsel for the City served Umpire Ashford with the order of automatic stay on July 25, 2013. The umpire responded promptly with her conclusion that the automatic stay barred her from proceeding with deliberation and decision on Sgt. Hughes' matter. She followed up on that inquiry a short few weeks later. She received no reply, which caused her reasonably to conclude that her assessment of the order of automatic stay was correct.

More than a year later, the City moved and the Bankruptcy Court ordered that the automatic stay did not apply to Sgt. Hughes matter. The effect of the City's action in notifying Umpire Ashford of the stay, failing or refusing to advise her that the stay did not apply to Sgt. Hughes' matter, and then nineteen months later obtaining an order declaring that the automatic stay did not and never did apply to Sgt. Hughes' case was to delay the Umpire's decision on Sgt. Hughes's case to a point well beyond when she could have permissibly filed a claim against the bankruptcy estate, if indeed the decision caused Sgt. Hughes' matter to be converted to a prepetition claim.

Equitable estoppel arises where a party, by representations, admissions, or silence, intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on this belief, and prejudice results if the first party is permitted to deny the existence of those facts. *Southeastern Oakland Co. Incinerator Authority v. Dep't of Natural Resources*, 176 Mich.App. 434, 442.443 (1989).

The City here is equitably estopped to enforce the injuction against Sgt. Hughes because (1) the City engaged in words and conduct amounting to a misrepresentation or concealment of material facts – those being that the automatic stay applied to Sgt. Hughes' matter when it did not; (2) the City knew or had reason to know at the time the representations were made that the representations were misleading or untrue – proof that came in the form of Umpire Ashford's communications stating that she considered herself bound by the automatic stay; (3) the lack of knowledge on Umpire Ashford's part, at the time the representations of the City were made concerning the automatic stay and at the time that they were acted upon, that the representations were untrue; (4) the City intended or reasonably expected that the representations would be acted upon; (5) Umpire Ashford relied in good faith upon the representations to the detriment of Sgt. Hughes, especially given the City's failure even to respond to Umpire Ashford's inquiry about the automatic stay; and (6) prejudice to Sgt. Hughes resulted because of the City's representations in that she was denied the opportunity to file proof of claim.

A final reason for you to reconsider your proposed action to seek dismissal of the Circuit Court action is your failure to assert the bankruptcy injunction as an affirmative defense. Such an affirmative defense is governed by MCR 2.116(C)(7) – immunity

granted by law – a defense that must be raised in the first responsive pleading or in a pre-answer motion. It was not raised in the answer and affirmative defenses filed March 23, 2015 and therefore has been forfeited. Forfeiture is the failure to timely assert a known right. *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 279 (2003).

      Please call me to discuss this matter further.

      Thanks.

Very truly yours,

Jeffrey J. Ellison