UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

    Debtor.

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____/

**EXHIBIT E (HAP PLAN) IN SUPPORT OF DPLSA'S RESPONSE IN OPPOSITION TO CITY OF DETROIT'S MOTION FOR (I) DETERMINATION THAT THE DETROIT POLICE LIEUTENANTS AND SERGEANTS ASSOCIATION HAS VIOLATED THE TERMS OF THE CITY OF DETROIT'S CONFIRMED PLAN OF ADJUSTMENT AND THE ORDER CONFIRMING IT; AND (II) ORDER (A) ENJOINING FURTHER VIOLATIONS AND (B) REQUIRING DISMISSAL OF STATE ACTIONS [DOCKET NO. 9656]**

PART 5 OF 5

8.5 **Automatic Cancellation**

    a. Coverage under this Contract shall be cancelled for the Subscriber and any insured Dependents automatically in the following circumstances:

        1) When the Subscriber ceases to be an employee of the Group through which the Premium is paid.

        2) When the Subscriber no longer meets the Eligibility requirements of HAP or the Group.

        3) Upon the death of the Subscriber.

    b. Coverage under this Contract shall be cancelled for the following Dependents automatically in the following circumstances:

        1) The Subscriber's spouse in the event of divorce.

        2) A Dependent child who no longer meets the Eligibility requirements due to age.

8.6 **Conversion Privilege**

    a. You may be eligible for conversion to an individual policy if you have been continuously insured under this Contract or any group health coverage which it replaces, for at least 3 months, you live or work within HAP's Service Area and one of the following applies:

        1) This Contract is cancelled in its entirety with respect to all Subscribers. You are not eligible for a conversion policy if the Group replaces the coverage provided through HAP with coverage through another health plan or insurer or the Contract is cancelled for non-payment of the required Premium.

        2) The Subscriber ceases to be eligible for Group coverage, either through loss of employment or otherwise. You are not eligible for a conversion policy if your employment was terminated due to misconduct.

        3) You lose coverage under this Contract because of the death of the Subscriber.

        4) You lose coverage under this Contract because you are no longer an eligible Dependent. For example, the spouse of a Subscriber may be eligible for an individual conversion policy following a divorce.

    The Group must give written notice to the Member of the option to elect an individual conversion policy within 14 days after the occurrence of one of the above events.

    b. You are not eligible for conversion to an individual policy if issuance would result in overinsurance according to HAP Standards. HAP standards consider the following:

        1) The benefits of the conversion coverage.

        2) Similar benefits that the person is covered for under another policy or prepayment plan or program.

        3) Similar benefits that the person is eligible for under arrangements for coverage of persons in a group.

        4) Similar benefits for which the person is eligible under any law.

    c. The conversion coverage will provide medical coverage of the type HAP customarily issues in conversion of group coverage. The coverage will not be less than that required by law, but may be substantially less than that provided under this Contract.

    d. The conversion coverage will be issued without proof of good health subject to the following:

        1) You must apply and pay the Premium for a conversion policy within 31 days after your coverage under this Contract is cancelled. Contact the HAP Client

Services Department at (313) 872-8100 or toll free at (800) 422-4641 for an explanation of Group Conversion benefits and costs.

  2) The effective date of coverage under the individual conversion policy will be the day following the date coverage under this Contract ends.

 e. The state where delivery of the individual conversion coverage is to be made controls the plan HAP issues. The laws of the jurisdiction may require a special plan be provided or be available. If that is the case, HAP will either provide the coverage or refer you to the proper source for coverage.

### 8.7 Reinstatement

If your Premium is not paid within the time granted for payment by HAP, subsequent acceptance of your Premium by HAP shall reinstate this Contract. If HAP requires an application for reinstatement and issues conditional coverage for Premium received, this Contract will be reinstated after approval of your application or, lacking approval, on the 45th day following the date of conditional receipt, unless HAP has previously notified you in writing of the disapproval of your application. Your reinstated Contract will only cover an Injury sustained after the date of reinstatement and an Illness beginning more than 10 days after the date of reinstatement. In all other respects, HAP and you will have the same rights as those immediately before the due date of any unpaid Premium, subject to any provisions relating to your reinstatement.

### 8.8 Consolidated Omnibus Budget Reconciliation Act (COBRA) Coverage

If your Group employs at least 20 full-time equivalent employees on at least half of the working days during the previous year, you may be eligible for temporary continuation of your health coverage under COBRA if you no longer meet HAP's Eligibility requirements. Your continued coverage under COBRA will be based on the qualifying event that caused you to lose coverage.

Your Group is responsible for administering its COBRA plan. HAP will not act as the plan administrator under the provisions of COBRA. Please contact your Group for questions regarding your eligibility and the procedures for electing COBRA coverage.

## SECTION 9 – ADMINISTRATIVE PROCEDURES

### 9.1 Written Notice of Claim

Written notice of Claim must be given to HAP within 30 days after the loss begins. If notice cannot be reasonably given within that time, it must be given as soon as reasonably possible.

The notice will be sufficient if it identifies you and is sent to HAP at 2850 W. Grand Boulevard, Detroit, Michigan 48202-2692.

### 9.2 Claim Forms

After the written notice of Claim is received, on a standardized claim form, you will be considered to have met the requirements for written proof of loss if HAP is sent written proof as described below. The proof must describe occurrence, extent and nature of the loss.

### 9.3 Written Proof of Loss

The written proof of loss must be sent to HAP within 90 days after the date of such loss. If it is not reasonably possible to give the proof within 90 days, a claim is not affected if the proof is sent as soon as reasonably possible. Written proof of loss must be given within 1 year of the time it is otherwise required unless you are legally incapacitated.

### 9.4 Time of Payment of Claims

HAP will pay benefits due as soon as HAP receives due written proof of loss.

**9.5 Payment of Claims**

Benefits unpaid at your death may, at HAP's option, be paid either to your beneficiary or to your estate. All other benefits will be payable to you.

Subject to your written direction to the contrary, all or a portion of any benefits provided by this Contract for medical care or treatment may, at HAP's option, be paid directly to the provider of such services. Any such payment made in good faith shall fully discharge HAP to the extent of such payment.

**SECTION 10—GENERAL PROVISIONS**

**10.1 Contract Term**

This Contract begins on the first day of the month for which Premium was paid and shall remain in effect for one month. This Contract will be renewed on a monthly basis with timely payment of the Premium.

**10.2 Benefits Provided**

Your Premium for coverage under this Contract is set forth in the application. HAP will make available, or cause to be provided, the benefits in this Contract and any amendments thereto. HAP will furnish you with a copy of this Contract which will set forth the benefits, the limitations to those benefits, and the conditions under which those benefits will be provided.

**10.3 Changes in Contract**

HAP reserves the right to change benefits, terms and conditions provided under this Contract by giving your Group not less than a 30 day notice prior to the effective date of such change.

**10.4 Changes in Amount of Insurance**

A change in the amount of your insurance due to a change in benefits will be effective at 12:01 a.m. of the first day of the Contract Month coinciding with the date of the change in benefits or the first day of the Contract Month following the date of the change in benefits. The change is subject to the payment by you or your Group of any required Premium contribution.

**10.5 The Contract and Interpretation**

This Contract, including any Riders or amendments, the information provided by the Group in the application and the individual enrollment applications and reclassifications submitted with regard to Subscribers and Dependents in connection with this Contract constitute the entire agreement between the parties with respect to the subject matter and are hereby incorporated by this reference. All statements made by you will, in the absence of fraud, be deemed representations and not warranties, and no statement will be used in defense of a claim under this Contract unless it is contained in a written application.

You will have only the rights and benefits, subject to the terms and conditions, set forth in these documents. All statements contained in the individual enrollment applications and reclassifications submitted by employees in connection with this Contract will be deemed representations and warranties, and no such statements will void the coverage provided hereunder or reduce any benefits unless contained in a written application of which a copy is attached to this Contract. No waiver, modification or change in any provision of this Contract will be effective unless and until approved in writing by a duly authorized officer of HAP and evidenced by an amendment attached to this Contract. HAP may adopt reasonable policies, procedures, rules, and interpretations to promote orderly and efficient administration of this Contract. This Contract

will be governed by and construed in accordance with the law of the State of Michigan, and when applicable, ERISA, as amended.

**10.6 Successors and Assigns**

This Contract will be binding upon and ensure to the benefit of HAP, its successors and assigns. This Contract may be assigned by HAP to a HAP licensed insurance company. This Contract and the rights and obligations conferred hereunder will not be assignable by your Group, except that your Group may assign this agreement with the prior written consent of HAP.

**10.7 Invalidity**

In the event any of the provisions contained in this Contract will for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other provision and this Contract will be construed as if the invalid, illegal or unenforceable provision had never been contained herein.

**10.8 Release of Information**

You consent to the release of personal and health information by Affiliated Providers and by HAP for the administration of this Contract, including for purposes of treatment, payment and health care operations.

**10.9 Amendments**

Except as otherwise provided for in this Contract, no officer, agent or representative of HAP, Affiliated Provider, Group or Remitting Agent, nor any other individual or entity, is authorized to change or waive the terms and conditions of this Contract. No such change, waiver, promise or agreement will be binding upon HAP.

**10.10 Your Privacy at HAP**

HAP takes the security of your personal or health information very seriously and has established safeguards and procedures to prevent unauthorized access to, us of and disclosure of your information. We reserve the right to share your information as allowed by law. Federal law permits us to use and disclosed personal or health information for treatment, payment and health care operations activities. We will not use or disclosed your personal or health information for any other purpose without your written authorization.

For additional information on HAP's privacy practices refer to your member handbook or visit our website at **hap.org.**

**10.11 Entire Agreement**

The provisions of this Contract supersede all previous Contracts between HAP and the Subscriber regarding all aspects of coverage.

**10.12 Notification**

Any notice required or permitted to be given by HAP will be considered to have been properly given, if in writing and deposited in the United States postal mail with postage prepaid, addressed to the Group, Remitting Agent or to the Subscriber at the last address on record at the principal office of HAP. The required notice will be considered given within three days of mailing.

**10.13 Applicable Law**

This Contract is made in, and will be interpreted under, the laws of the State of Michigan.

**10.14 HAP Policies and Procedures**

HAP may adopt reasonable policies, procedures, rules and interpretations to promote the efficient administration of this Contract and may amend such policies from time to time.

### 10.15 Identification Cards as HAP Property

Your HAP Identification Card is the property of HAP and its return may be requested at any time. Possession of a HAP Identification Card does not mean that a Member has a right to Covered Services. If your Identification Card is lost or stolen, please immediately contact the HAP Client Services department by phone at (313) 872-8100 or (800) 422-4641.

### 10.16 Responsibility for Care

HAP does not practice medicine or any other licensed health profession. The physician treating a Member bears sole responsibility for the care provided to the Member in accordance with medically accepted standards of care. In no circumstance shall HAP be liable for any professional acts or failures to act by any HAP Affiliated Provider or for the acts or failures to act by a third party review entity. HAP shall not be liable for any claim or demand for injury or damage arising out of or in connection with the manufacturing, compounding, dispensing, or use of any medication or injectable insulin under this Contract.

### 10.17 Nonassignability of Contract

You may not assign or transfer any of your rights or responsibilities under this Contract without the prior written consent of HAP. Any attempt to make such an assignment without the required consent is void. The right to receive Covered Services under this Contract may not be assigned under any circumstances and any such assignment is void.

### 10.18 Coverage Determinations

HAP will make determinations that are required to carry out the terms and conditions of this Contract including determinations regarding Medical Necessity and Covered Services, to make factual findings and to explain and interpret this Contract whenever necessary according to its benefit, practice and referral policies.

### 10.19 Legal Action

No action at law or in equity shall be brought to recover on this Contract prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this Contract. No such action shall be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

### 10.20 Time Limit On Certain Defenses

After 3 years from the Effective Date of this Contract, no misstatements, except fraudulent misstatements, made by you in the application will be used to cancel this Contract or deny a claim for an Injury or Illness (as defined in this Contract) commencing after the expiration of the 3-year period.

No claim for an Injury or Illness occurring after 3 years from the Effective Date of this Contract will be reduced or denied on the ground that the Illness or Injury, not excluded as a Covered Service by name or specific description on the date of loss, existed prior to the Effective Date of coverage.

### 10.21 Unavailability of Certain Providers

You should join HAP because you prefer the benefits offered under the plan, not because a particular provider is an Affiliated Provider. You cannot change to another health plan or insurer because a provider leaves HAP. We cannot guarantee that any one physician, hospital or other provider will be available and/or remain Affiliated with us.

### 10.22 Continuity of Care

HAP ensures continuity of care for Members who have a voluntary or involuntary change in carrier/health plan or whose Affiliated Provider has terminated a contract with HAP, unless the Affiliated Provider was terminated due to failure to meet applicable quality standards or for fraud.

A provider, who is not an Affiliated Provider, may continue to treat you and HAP will pay for Covered Services under the circumstances and timeframes listed below:

    a.    If you are receiving an active course of treatment for an acute episode of chronic illness or an acute medical condition, you may remain with your treating provider for up to 105 days from the date the provider and/or the carrier/health plan communicated intent to terminate the contractual relationship. Active course of treatment is defined as one in which discontinuation of care could cause a recurrence or worsening of the condition under treatment and interfere with anticipated outcomes.

    b.    If you are receiving care for a terminal illness, you may remain with your treating provider for the remainder of your life for care directly related to the terminal illness.

    c.    If you are in your second or third trimester of pregnancy, you may continue to see your treating provider through post-partum care directly related to the pregnancy (not less than 6 weeks post-delivery).

The treating physician must agree to accept as payment in full the HAP contracted rate and adhere to HAP's quality standards and utilization policies and procedures.

**10.23  Vesting**

There is no vesting of benefits under this Contract. You are entitled only to the Covered Services in effect under this Contract at the time services are received. If Covered Services are reduced or modified, then you will be entitled only to the Covered Services in effect after the effective date of the reduction or modification, even if you previously were receiving a higher level or type of Covered Services.

**10.24  Independent Contractors**

HAP does not directly provide any health care services under this Contract, and we have no right or responsibility to make medical treatment decisions. Medical treatment decisions may only be made by health professionals in consultation with you. Affiliated Providers are responsible for making medical treatment decisions as independent contractors.

We are only obligated under this Contract to provide you with a network of Affiliated Providers to provide health care services. We are also responsible for making benefit determinations under this Contract.

Health professionals and you may choose to continue medical treatment even if we deny coverage for those treatments. In such event, you will be responsible for the cost of those treatments. Health professionals, on your behalf, and you may appeal any Adverse Benefit Determination by following HAP's Grievance Policy contained under section I of this Contract.

**SECTION 11—DEFINITIONS**

**11.1.**  **Adverse Benefit Determination** means a decision by HAP or its designee that coverage for an admission, availability of care, continued stay or other health care service has been reviewed and denied, reduced or terminated. Failure by HAP or its designee to respond to a request for a decision constitutes an Adverse Benefit Determination.

**11.2.**  **Affiliated** means a physician, hospital or other provider has signed a contract with HAP to provide Covered Services to Members.

**11.3.**  **Affiliated Hospital** means a hospital that has signed a contract with HAP to provide Covered Services to Members.

11.4. **Affiliated Provider** means a health professional, licensed hospital, licensed pharmacy or any other institution, organization, or person having a contract with HAP to provide Covered Services to Members.

11.5. **Benefit Period** means a 12 month period of coverage under this Contract. This 12 month period may not be the same as the calendar year. To find out when your Benefit Period begins, contact your Group or the HAP Client Services department by phone at (313) 872-8100 or (800) 422-4641.

11.6. **Chemical Dependency** or **Substance Use Disorder** means a condition characterized by a physiological or psychological dependence, or both, on alcohol or a controlled substance. It is further characterized by a frequent or intense pattern of pathological use, to the point that the user:

   a. Loses self-control over the amount and circumstances of use.
   b. Develops symptoms of tolerance, or psychological and/or physiological withdrawal if use is reduced or stopped.
   c. Substantially impairs or endangers his/her health or substantially disrupts his/her social or economic function.

   Chemical Dependency includes alcohol and drug psychoses, and alcohol and drug dependence syndromes.

11.7. **Coinsurance means** a percentage of HAP's reimbursement for Covered Services paid by the Member. Coinsurance may vary depending upon the Covered Services received. Coinsurance percentages are listed in Rider(s) and the Schedule of Benefits.

11.8. **Coinsurance Maximum** - means the maximum Coinsurance amount paid by a Member for Covered Services during a Benefit Period.

11.9. **Congenital Defects** means a deviation from the normal standards for growth or function as a direct result of conditions, clinical disease or attributes recognizable at birth.

11.10. **Contract** means the document(s) defining the relationship between HAP and its Members, including: (1) this HMO Subscriber Contract, (2) any applicable Rider(s), (3) Schedule of Benefits, (4) the application, questionnaires, forms and statements as completed by a Subscriber and submitted to HAP or the Remitting Agent to enroll and (5) Member identification card(s).

11.11. **Contract Month** means the period that starts on a Premium Due Date and ends on the day prior to the next Premium Due Date.

11.12. **Copayment** or **Copay** means the fixed dollar amount of charges a Member pays at the time of service for certain Covered Services in the amount set forth in the Schedule of Benefits. Not all Covered Services have a Copayment. The Copayment does not apply to the Coinsurance and/or Deductible amounts.

11.13. **Cosmetic Surgery** means surgery to reshape anatomical structures of the body in order to improve the patient's appearance and self-esteem, as determined by HAP or its designee. Cosmetic surgeries and services include but are not limited to:

   1) Surgery and services related to gynecomastia that is not Medically Necessary.
   2) Rhinoplasty.
   3) Liposuction.
   4) Face lifts.
   5) Treatment of vitiligo unless Medically Necessary.

6) Electrolysis.

7) Abdominal skin flap reduction (tummy tuck).

8) Skin tag or keloid removal or modification.

9) Breast implants, except as specified in Section 4.14.

10) Collagen or Botox injections, unless Medically Necessary.

11) Dermabrasion or chemobrasion.

12) Surgery to upper and/or lower eyelids such as blepharoplasty.

**11.14. Covered Services** means preventive services and the Medically Necessary diagnostic and treatment services described in Section 4 of this Contract, when approved and provided in accordance with this Contract.

**11.15. Custodial Care** means supportive, domiciliary care or basic care including Physician services and other ancillary services in a residential, institutional, or other setting or DME provided in such settings which is primarily for the purpose of meeting the patient's personal needs and which could be provided by persons without professional skills or training. Examples of Custodial Care include, but are not limited to, assistance with the activities of daily living such as bathing, dressing, eating, walking, getting in and out of bed, taking medication, housecleaning and maintenance of the house.

**11.16. Deductible** means the dollar amount that must be met with charges for Covered Services before payment of benefits begins. The Deductible applies to each insured Member and it must be met each Benefit Period. Copayments are not applied to the Deductibles. The Deductibles are shown in Rider(s) and/or in the Schedule of Benefits.

    a. **Individual Deductible**

    This is the dollar amount of charges for Covered Services each Member pays each Benefit Period. Charges for Covered Services are applied toward the Deductible for each Member individually. Once a Member's individual Deductible has been met, benefits are payable for that Member only.

    b. **Family Deductible**

    This is the combined dollar amount of charges for Covered Services all Members must pay each Benefit Period. Charges for Covered Services are applied toward the individual Deductibles until the family Deductible has been met. Once the family Deductible has been met benefits are payable for all Members.

**11.17. Dependent** means a Subscriber's family member who satisfies the Eligibility requirements contained in Section 2 of this Contract

**11.18. Effective Date** means the day on which the Subscriber or Dependent is entitled to receive Covered Services under this Contract as determined by HAP.

**11.19. Eligibility** means the provisions contained in Section 2 of this Contract that state requirements employees must satisfy to become covered Subscribers with respect to themselves and their Dependents.

**11.20. Emergency or Emergency Medical Condition** means a medical condition that starts suddenly and includes signs and symptoms so severe, including severe pain, that the absence of immediate medical attention could reasonably be expected to result in serious jeopardy to your health or to a pregnancy in the case of a pregnant woman, serious impairment of bodily functions, or serious dysfunction of any bodily organ or part. Emergency services are Medically Necessary services

provided to diagnose, treat and stabilize an Emergency Medical Condition. Emergency services end when your Emergency Medical Condition is stabilized.

11.21. **Experimental and Investigative**–means any medication, treatment, device, procedure, service or benefit that is experimental or investigational.

    a.    A medication, treatment, device, procedure, service or benefit may be considered experimental or investigational by HAP if it meets any one of the following criteria:

        1)    It cannot be lawfully marketed without the approval of the FDA and such approval has not been granted at the time of its use or proposed use.

        2)    It is the subject of a current investigational new medication or new device application on file with the FDA.

        3)    It is being provided pursuant to a written protocol that describes, among its objectives, determinations of safety, effectiveness and effectiveness in comparison to conventional alternatives or toxicity.

        4)    It is being delivered or should be delivered subject to the approval and supervision of an Institutional Review Board as required and defined by federal regulations, particularly those of the FDA or the Department of Health and Human Services.

        5)    The predominant opinion among experts as expressed in the published authoritative literature is that usage should be substantially confined to research settings.

        6)    The predominant opinion among experts as expressed in the published authoritative literature is that further research is necessary in order to define safety, toxicity, efficacy or efficacy in comparison to conventional alternatives.

        7)    It is not investigational in itself pursuant to any of the foregoing criteria and would not be Medically Necessary but for the provision of a medication, device, treatment, or procedure that is investigational or experimental.

11.22. **Grievance** means a complaint by a Member (or submitted on behalf of a Member by the Member's representative) concerning any of the following:

    a.    The availability, delivery or quality of health care services, including a complaint regarding an Adverse Benefit Determination made pursuant to utilization review.

    b.    Benefits or claims payment, handling, or reimbursement for health care services.

    c.    Matters pertaining to the contractual relationship between a Member and HAP.

11.23. **Group** means the employer, association or other entity that has contracted with HAP on behalf of its employees, retirees, or Members and their Dependents for Covered Services.

11.24. **Health Maintenance Organization** means an entity licensed by the State of Michigan that provides coverage for health care services that are Preventive Services and/or Medically Necessary, subject to the terms of a Subscriber's Contract, in exchange for a fixed prepaid sum or per capita prepayment.

11.25. **Home Health Care** means alternate skilled care provided in a home environment. Home Health Care must be ordered by an Affiliated Physician and be part of a formal treatment plan filed with and approved by HAP before the first day of care. HAP has the right to request a new treatment plan and written confirmation from the Physician of the Medical Necessity for continued Home Health Care

11.26. **Hospice** means a facility that:

a. Is licensed, accredited or approved by the proper licensing authority to provide a Hospice program; is Medicare certified; and

b. Administers care to sick or injured individuals who have, in the opinion of the attending Physician:

1) No reasonable prospect of a cure; and

2) A life expectancy of 210 days or less; and

c. Provides care by coordinating its service with the attending Physician and the family of the patient

**11.27. Hospital** means a state licensed institution which:

a. Provides diagnosis, treatment and medical care of injured and sick individuals on an Inpatient basis; and

b. Has a staff of 1 or more Physicians available at all times; and

c. Provides 24 hours nursing service; and

d. Complies with all applicable statutes; and

e. Is not, other than incidentally, a Skilled Nursing Facility or a place for aged individuals.

An institution accredited by the Joint Commission on Accreditation of Healthcare Organizations (or any successor organization) as a Hospital meets the requirements of this definition.

**11.28. Identification Card** means a printed card issued to those covered under this Contract. Possession does not guarantee coverage.

**11.29. Illness** means any disorder or disease of the body or mind, or complications of pregnancy, which are covered under this Contract.

**11.30. Injury** means an unexpected occurrence causing bodily harm by an external means. The injury must be the direct cause of the loss, independent of disease, bodily infirmity or other cause.

**11.31. Inpatient** means an uninterrupted stay of 24 hours or more in a Hospital, Skilled Nursing Facility, or licensed acute or subacute care facility which results in charges for room and board.

**11.32. Medical Necessity or Medically Necessary–** means a determination, made in accordance with well-established professional medical standards as reflected in scientific and peer-reviewed medical literature, that Covered Services are:

a. Consistent with and essential for diagnosis and treatment of the Member's condition, disease, ailment or injury;

b. The most appropriate supply or level of service that can be provided safely;

c. Provided for the diagnosis or direct care and treatment of the Member's condition, disease, injury or ailment;

d. Not provided primarily for the convenience of the Member, or the Member's family, physician or other caretaker; and

e. More likely to result in benefit than harm.

When applied to hospitalization, Medical Necessity means further that a determination has been made that the Member requires acute care as an Inpatient due to the nature of the services rendered or the Member's condition.

**11.33. Medicare** means the health insurance programs under Title XVIII of the United States Social Security Act of 1965, as then constituted or as later amended.

**11.34. Member** means a Subscriber or an eligible Dependent of the Subscriber who is entitled to receive Covered Services under this Contract.

**11.35. Mental Disorder** means a disorder or disease which impairs judgment, behavior, and capacity to recognize reality or the function or ability to cope with the ordinary demands of life. The specific disorder should be specified in the most current version of the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (DSM).

**11.36. Open Enrollment** means the period (usually annual) specified by the Group or Remitting Agent during which the Subscriber may select from among the health insurance and HMO programs offered by the Group.

**11.37. Out-of-Pocket Maximum** means the maximum dollar amount you must pay for Covered Services during the Benefit Period before this Contract begins to pay 100% of Covered Services incurred by the Member during that Benefit Period. The following amounts paid by you do not count toward the Out-of-Pocket Maximum:

   a. Charges in excess of the HAP's reimbursement.

   b. Charges in excess of any maximum benefit described in this Contract, attached Rider(s) or the Schedule of Benefits.

   c. Charges for anything listed in Section 5 of this Contract or anything listed as an excluded expense in any attached Rider.

   d. Copayments.

   e. Premiums.

**11.38. Physician Network or Medical Group** means providers who form a partnership or association and have an agreement with HAP to provide Covered Services to Members through PCPs and other health care providers within the group.

**11.39. Personal Care Physician or PCP** means the Affiliated Provider in a Physician Network or Medical Group who is primarily responsible for providing or arranging for the health care needs of a Member under this Contract. A PCP may be an Internal Medicine, Family Practice, General Practice or Pediatric physician.

**11.40. Premium** means the rate set by HAP and paid by the Group or Remitting Agent for the right of a Member to receive Covered Services under this Contract.

**11.41. Premium Due Date** means the day of each month on which the Premium payment is due and payable to HAP, usually the first day of each month.

**11.42. Qualified Medical Child Support Order** means any judgment, decree or order (including approval of a settlement order) which satisfies the requirements of Section 609(a) of ERISA, as amended and which is issued by a court of competent jurisdiction requiring this Program to provide coverage to an eligible Dependent of the Subscriber.

**11.43. Referral** means the recommendation or written pre-authorization by an Affiliated Provider (usually the PCP) for a Member to receive Covered Services from another health care provider, subject to the approval of HAP or its designee prior to receiving Covered Services.

**11.44. Remitting Agent** means the individual or organization authorized and designated by a Subscriber's Group to collect and remit Premiums to HAP and to receive notices from and deliver notices to the Subscriber.

**11.45. Rider** means a written attachment to this Contract purchased by or on behalf of a Subscriber that provides for additional, different or reduced Covered Services or that otherwise modify the terms of this Contract. In the event of a conflict between the terms and conditions stated in a Rider and the terms and conditions stated in this Contract, the terms and conditions in the Rider shall rule.

**11.46. Schedule of Benefits or Summary of Benefits and Coverage** means a schedule outlining Covered Services, Copayments, Coinsurance, Deductibles, Out-of-Pocket Maximums, maximum benefits and other Contract provisions.

**11.47. Service Area** means the geographic area, approved by the State of Michigan, where HAP is authorized to cover health services. HAP's current Service Area includes Genesee, Lapeer (excluding Burlington and Burnside townships), Livingston, Macomb, Monroe, Oakland, St. Clair, Washtenaw and Wayne counties in Southeastern Michigan. The Service Area is subject to change with the approval of the State of Michigan.

**11.48. Subscriber** means the employee or other Group member who is eligible for coverage under the Group and this Contract who submitted the application for coverage through the Group.

**11.49. Therapy Services** means the following prescribed medical services performed either in or out of the Hospital when such services are Medically Necessary for the diagnosis or treatment of a condition due to Illness or Injury:

Physical, Occupational, Pulmonary, Cardiac, and Speech Therapy - benefits are payable for care or treatment provided the:

a. Care is rendered by a licensed therapist acting within the scope of the therapist's state license; and

b. Treatment is prescribed in writing by a Physician; and

c. Treatment is post-operative or for the convalescent stage of an active Illness or Injury; and

d. Treatment is to restore function lost as a result of an Illness or Injury; and

e. Treatment is necessary as a result of an Illness or Injury for rehabilitation purposes.

**11.50. Urgent Care** means Medically Necessary services to treat a medical condition that is not life threatening but may require prompt attention.



# HEALTH ALLIANCE PLAN
## COMMERCIAL GROUP AND INDIVIDUAL APPEAL POLICY

**PURPOSE**
To provide any Health Alliance Plan (HAP) Member or the Member's Authorized representative a way to find a solution to a situation where the Member is not satisfied or feels wronged by the services, benefits and/or policies and procedures of HAP or its providers or receives an Adverse Benefit Determination (collectively "Appeal Process"). This policy applies to both pre-service and post service Appeals.

**SUMMARY**
The Grievance Policy allows members to file an Appeal when you receive a denial for payment or services. Individual Plan Members have a one level decision-making Appeal Process. Group Plan Members have a two level decision-making process.

The Member, their Authorized Representative or their practitioner may start the Appeal Process by sending a request in writing to:

**HAP**
**Attention: Manager of Grievance Department**
**2850 West Grand Boulevard**
**Detroit, MI 48202**

Members may also submit Appeals by fax to 313-664-5866 or in person at the HAP location at 2850 West Grand Boulevard or at this other HAP location: 21700 Northwestern Highway, Southfield, MI 48034.

Members may receive this policy in an alternative language (Arabic, Farsi, Spanish or another language) by contacting our Client Services Department at the number listed within this policy.

Members may submit an Appeal in writing within 180 days from the date of the initial denial. Group Plan Members may submit a request for 2nd level Appeal within 60 days from the date of the 1st level Appeal decision.

Members should include any extra information such as:
- Medical evaluation report
- Medical records
- Other important facts to support the request.

Once we receive the Appeal, the Grievance department will send a letter acknowledging that we have accepted the Appeal. Our Appeal policy allows HAP **thirty (30)** calendar days to make a final determination for Individual Plan Members. Individual Members have a one-step Appeal Process. Group Plan Members have a two-step Appeal Process and may Appeal at two separate internal levels. For Group Members, HAP has fifteen (15) calendar days to make a decision at each level.

If a Member approves HAP's request for an extension of time, HAP may be allowed up to ten (10) additional days for review if HAP has not received necessary and requested information from a health care facility or health professional. Additional extensions are available to a Member upon their request. If we go past the allowable time frame, Members can go straight to the State and use their right for an external review or if you are a Member of a group health plan subject to ERISA you may bring a lawsuit under section 502(a) of ERISA. Ask your employer if you are part of an ERISA group.

We also offer an expedited appeal Process where we will make a decision within 72 hours. Members may make a request for an Expedited Appeal if they believe that waiting for the routine timeframe for an internal appeal would seriously threaten them, their health or their ability to regain maximum function. We will ask a physician to review the request and the physician will determine if the Member's medical condition needs a decision within 72 hours. If the Member's physician makes the request for an Expedited Appeal or indicates that the Member needs an Expedited Appeal, we will provide the Member with a decision within 72 hours.

Members are allowed to have continued coverage during the Expedited Appeal Process for **approved** ongoing courses of treatment pending the outcome of an Internal Appeal.

Members may request and receive, at no cost, reasonable access to copies of documents, records and other information relevant to their Appeal.

During the Internal Appeal Process, Members or their Authorized Representative have the option to present their Appeal in person to the HAP Appeal Committee. Group Plan Members have this option at the 2nd level Appeal. In order for Members to present their Appeal before the Appeals Committee, we will provide them with copies of the file which includes documents, records and other information relevant to the Appeal and allowed by law.

At any time, Members may submit a request for reasonable access to copies of documents, records and other information relevant to the Appeal and allowed by law. This information will be provided at no cost to our Members.

A health care practitioner who has appropriate training and experience in the field of medicine involved in your case will review the Appeal when the Initial Adverse Benefit Determination was based on medical necessity.

People who were involved in the Initial Adverse Benefit Determination will not be included in making the decision for the Appeal. People who were involved in a level one Appeal for a Group Member will not be included in making a decision for a level two Appeal.

If a Member is still not satisfied with the final decision after the Internal Appeal Process or HAP has gone past the allowed review period, the Member can ask for an External Independent Review that is allowed under the Patient's Right to Independent Review Act. Members can request an External Review by contacting the Director of the Department of Insurance and Financial Services within **sixty (60) days** of exhausting the HAP Internal Appeal Process at:

**Department of Insurance and Financial Services**
**Healthcare Appeals Section**
**Office of General Counsel**
**611 Ottawa, Third Floor**
**P.O. Box 30220**
**Lansing, MI 48909-7720**

Members can also call the Director toll-free at (877) 999-6442.

HAP will automatically provide Members with the **FIS 0018 (8/12) - Health Care Request for External Review form after the final appeal decision.** This form is necessary to ask for an external review. You can also get a copy of the form anytime by going to the Department of Insurance and Financial Services website listed below. You can also call at the number listed below and ask for the form.

**Other Rights:**

If you are a Member of a Group Health Plan subject to ERISA, you may bring a lawsuit under section 502(a) of ERISA if you have exhausted the HAP Internal Appeal Process. Ask your employer if you are part of an ERISA group.

**For more information:**
- Members can call HAP's Client Services at (800) 422-4641.
- If you are deaf, hard of hearing or speech impaired, please use our toll-free TTY/TDD line at (800) 649-3777.
- Call the Department of Insurance and Financial Services directly at the number listed above or visit their website at www.michigan.gov/difs.
- For assistance you may contact the Michigan Health Insurance Consumer Assistance Program, 611 W. Ottawa Street, Lansing, MI 48933 at 877-999-6442 or email at DIFS-HICAP@Michigan.gov.