UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____/

## ANSWER IN OPPOSITION BY DPLSA TO CITY OF DETROIT'S MOTION SEEKING LEAVE TO FILE DECLARATIONS FROM REPRESENTATIVES OF HAP AND BCBSM IN FURTHER RESPONSE TO THIS COURT'S MAY 29, 2015 ORDER [DE 9901] REGARDING FURTHER PROCEEDINGS ON THE CITY OF DETROIT'S MOTION FOR CERTAIN RELIEF AGAINST THE DPLSA

The Detroit Police Lieutenants and Sergeants Association ("DPLSA"), by its counsel, Erman, Teicher, Zucker & Freedman, P.C., for its Answer in Opposition to City of Detroit's Motion Seeking Leave to File Declarations from Representatives of HAP and BCBSM in Further Response to This Court's May 29, 2015 Order [DE 9901] Regarding Further Proceedings on the City of Detroit's Motion for Certain Relief Against the DPLSA (the "Motion for Leave") [Docket No. 9986], states the following:

1.    The Motion for Leave must be denied because the relief it seeks – to submit supplemental declarations to establish what the Plan, the Confirmation Order, the DPLSA CBA and the Certificates of Coverage now in the record before this Court do not—does not support the proposition for which the relief is sought and further makes it abundantly clear that the State Actions[1] (which seek a determination of DPLSA members' right to spousal health care coverage

---

[1] Unless otherwise indicated, all capitalized terms are as defined by the City's original Motion for (I) Determination that the Detroit Police Lieutenants and Sergeants Association has Violated the Terms of the City of Detroit's Confirmed Plan of Adjustment and the Order Confirming It; and (II) Order (A) Enjoining Further Violations and (B) Requiring Dismissal of State Actions (the "Original Motion") [Docket No. 9523].

through the interpretation and enforcement of the DPLSA CBA under applicable Michigan labor law) were properly filed *as required* by the Plan and *do not* violate the Plan Injunction. See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77], Confirmation Order [Docket No. 8272, pp. 105-6].

2. The City's effort to enlarge the record before this Court and go outside the plain language of the Plan, the DPLSA CBA and the Certificates of Coverage that the City concedes are its "health care plans" makes the DPLSA's point that the issues raised by the State Action indisputably involve ". . . the enforcement, interpretation and resolution of disputes of the terms of the . . . [DPLSA CBA] . . . ," which, according to the Plan, ". . . shall proceed under applicable state law." See Plan, Art. VII, Sec. B [Docket No. 8045, p. 77] (emphasis added). Although the City does not dispute that PERA, MCL 423.201, *et seq.* is the applicable state law here, the premise of the Original Motion was that the relief sought by the State Actions violated the Plan Injunction because that relief was: (a) trumped and expressly precluded by the Plan's treatment of Class 12 (retiree OPEB) claims or, alternatively, (b) violated "the terms as written" of the DPLSA's CBA with the City, as incorporated into the Plan.

3. The Motion for Leave seeks to file supplemental declarations purportedly to support the Original Motion's claims. However, in what amounts to a tacit acknowledgment that neither the Plan nor the "terms as written" of the DPLSA CBA support the City's claim that the State Actions violated the Plan Injunction, the City now acknowledges, that "[m]atters of health care coverage are often complex and involve a language of their own. . . ." [Docket No.9986, p. 2]. The Motion for Leave further argues that the supplemental declarations are necessary because the DPLSA filed the actual City healthcare plan documents – i.e., the Certificates of Coverage—and made their terms a matter of record.

2

4.      The Motion for Leave ignores the facts that (a) it was the City and not the DPLSA that brought the Original Motion claiming a violation of the Plan Injunction, and (b) it was the City who came into this Court relying <u>not</u> on the actual City health care plan documents or the "terms as written" of the DPLSA CBA, but attempting to pass off an expressly non-contractual, summary document as <u>the</u> "City Health Medical Plan Document," or the "Medical Plan," see Docket No. 9523, pp. 14-15. The Motion for Leave goes on to improperly seek to shift the burden of coming forward with the <u>actual</u> city medical plan documents (which do <u>not</u> exclude coverage for spouses who are also City retirees) to the DPLSA as a justification for its belated effort to enlarge the record and submit declarations of HAP and BCBS administrators.

5.      However, the City's proffered declarations also directly contradict the Medical Plan Document they purport to identify and interpret. In spite of the express disclaimers in the Medical Plan Document that it "is not a contract," is ". . . not intended to replace or supersede any . . . language in labor agreements," [Docket No. 9656-2, p. 3], that ". . . the Certificates of Coverage supersede this document," and that, "[t]he complete plans are described in the Certificates of Coverage issued by each plan," [Docket No. 9656-2, p. 38], the declarants, using language directly from the City's Original Motion, each claim that they recognize the excerpts from the 2015 Medical Plan Document as "*the* Medical Plan for City of Detroit active employees." See Motion for Leave, Exhibits 2 and 3 [Docket No. 9986, pp. 17, 25] and Docket 9523, pp. 14-15.

6.      The proffered declarations do not (and could not) purport to be Plan documents. They do not support the City's assertion that active DPLSA members' healthcare benefits are limited by the Plan's treatment of Class 12 (OPEB) retiree claims. Finally, neither they nor the

3

document upon which they rely are "terms as written" of the DPLSA CBA that would be subject to enforcement by this Court under the terms of the Plan.

7. Instead, the declarations purport to interpret and limit the terms of the health care coverage required under the DPLSA CBA and the <u>actual</u> medical plan documents (i.e., the Certificates of Coverage, Exhibits D and E [Docket Nos. 9974, 9976]). The declarations aver that the 2015 Medical Plan Document is "*the* Medical Plan for City of Detroit active employees," and assert (in spite of its disclaimers to the contrary) that it is "*the* Medical Plan" and not the DPLSA CBA or the actual medical plan documents that supports the City's claim that active DPLSA members are not entitled to spousal coverage if their spouse happens to be a city retiree, Motion for Leave, Exhibits 2 and 3 [Docket No. 9986, pp. 17, 25], and the DPLSA CBA must be interpreted accordingly. As such, the City seeks to use the declarations to claim that the State Actions violate the Plan Injunction because the interpretation of the DPLSA CBA asserted by the State Actions is inconsistent with the City's interpretation.

8. However, by proffering extrinsic evidence in an attempt to explain why the DPLSA CBA should be interpreted to exclude spousal coverage for active DPLSA members whose spouses happen to be retired City employees, the City implicitly and necessarily concedes that this issue is not a question of enforcing the "terms as written" of the DPLSA CBA or of the Plan's treatment of Class 12 (OPEB) claims, but instead involves a matter of contract enforcement and interpretation which, according to the Plan, "shall proceed under applicable state law." As such, the proffered declarations contradict rather than support the City's claim that, by filing the State Actions, the DPLSA violated the Plan Injunction. For that reason, the Motion for Leave must be denied.

4

9. To date, the City has pointed to nothing in the Plan, the Plan Injunction, the Plan's treatment of Class 12 (retiree OPEB claims), the Confirmation Order or the terms as written of the DPLSA CBA that supports the Original Motion's contention that the DPLSA violated the Plan Injunction when it filed the State Actions to seek interpretation and enforcement of the DPLSA CBA as required by the Plan, Art. VII, Sec. B, supra.[2] While the evidence proffered by the City purports to support the merits of the City's claim that spousal coverage was excluded for active DPLSA members whose spouses happened to be City retirees, it provides no support for the merits of the City's claim that the State Actions violate the Plan Injunction. That issue turns on whether the City has met its burden of showing that, in spite of its plain language to the contrary, the Plan requires this Court rather than MERC to interpret and enforce the terms of the DPLSA CBA.

10. The City's proffered supplemental declarations compel the opposite conclusion. The declarations purport to "provide context" which modifies the otherwise express provisions of the Certificates of Coverage (the actual medical plan documents) [Docket No. 9986, p. 3] and the "terms as written" of the DPLSA CBA. If, as the Motion for Leave suggests, the City's proffered supplemental declarations are necessary to the correct interpretation of the DPLSA CBA, then the City's claim of a Plan Injunction violation must fail. In other words, because the relief sought by the Motion for Leave compels the conclusion that the remaining State Action involves a matter of contract interpretation, it also compels the conclusion that the relief sought

---

[2] In fact, as noted by the DPLSA's Response to the City's Original Motion's claim that the State Actions violated the Plan Injunction, the Confirmation Order expressly provides that "the collective bargaining agreements identified n Exhibit II.D.5 to the Plan [including the DPLSA CBA], will be performed by the City in the ordinary course of its business. Accordingly such contracts . . . will survive and remain unaffected by this Order." [Docket 8272, pp. 105-106.]

5

by the Motion for Leave is futile, since the State Actions were filed in the ordinary course under applicable state law just as the Plan requires.

11. In summary, because the Motion for Leave concedes that the issue of health care coverage as governed by the DPLSA CBA is a complex one, which goes far beyond the "terms as written" of the DPLSA CBA and the City health plans they incorporate (as set forth in the Certificates of Coverage, Exhibits D and E [Docket Nos. 9974, 9976]), it provides no support for the City's claim that the State Actions violated the Plan Injunction. Rather, it supports, as the DPLSA has consistently maintained, that the issues raised by the State Actions involve the interpretation and enforcement of the DPLSA's CBA which shall, consistent with the State Actions, proceed, "under applicable state law," Plan, Art. VII, Sec. B [Docket No. 8045, p. 77]. As such, the Motion for Leave must be denied.

12 Nevertheless, if, for any reason, this Court is inclined to grant the relief sought by the Motion for Leave and consider the declarations proffered by the City, then the DPLSA respectfully requests that this Court also consider (and allow the DPLSA to file in opposition to the Original Motion) the DPLSA's proposed supplemental declaration, attached hereto as Exhibit 1. Proposed supplemental Exhibit 1 is a declaration of a DPLSA member which describes the City's actual practice of providing health care coverage to spouses of active DPLSA members who were also City retirees during the time period the Original Motion claims such coverage was excluded by the City's health care plans. See Exhibit 1.

13. As the DPLSA's proposed supplemental declaration avers, while the City, through the non-contractual (and, hence, non-binding) information it provided for 2014 and 2015, may have indicated that there was no right to spousal coverage for an active employees whose spouse also happened to be a City retiree, such coverage was in fact provided by the City

6

during 2014. The facts set forth by proposed Exhibit 1 demonstrate a level of complexity to the interpretation of the DPLSA CBA and are offered for that limited purpose.

14. The DPLSA therefor respectfully requests that the Court deny the Motion for Leave. If, however, the Court, for any reason, is inclined to grant the Motion for Leave and consider the City's proffered declarations, the DPLSA asks that the Court also allow the DPLSA the opportunity to file its supplemental declaration in support of its position that the remaining State Action properly seeks the enforcement, interpretation and resolution of a dispute under the DPLSA CBA and does not violate the Plan Injunction. In addition the DPLSA would respectfully request that, if the Motion for Leave is granted, that the Court set the matters raised by the Original Motion for a further evidentiary hearing, to be proceeded by a status conference at which the parameters of such evidentiary hearing can be addressed.

WHEREFORE, the Detroit Police Lieutenants and Sergeants Association respectfully request that this Court deny the Motion for Leave in its entirety. If the Motion for Leave is not denied in its entirety, the DPLSA alternatively respectfully requests that this Court enter an order that (a) allows the DPLSA to file its proposed supplemental Exhibit 1 in support of its opposition to the Original Motion and (b) sets the Original Motion for a an evidentiary hearing, to be proceeded by a status conference at which the parties can address the parameters of that hearing.

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

By: /s/ Barbara A. Patek
    Barbara A. Patek (P34666)
    Counsel for the Detroit Police Lieutenants
    and Sergeants Association
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    Telephone: (248) 827-4100/ Facsimile: (248) 827-4106
    E-mail: bpatek@ermanteicher.com

7

DATED: July 1, 2015

-and-

Peter P. Sudnick (P30768)
SUDNICK LAW, P.C.
2555 Crooks Road, Suite 150
Troy, Michigan 48084
Telephone: (248) 643-8533
Email: psudnick@sudnicklaw.com

F:\CHAP 9\DETROIT\DPLSA (new) CBA Dispute\answer in opposition to mtn for leave to file declarations.bap.6 29 15.docx

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

        Debtor.
_____/

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 1, 2015, the Answer in Opposition to City of Detroit's Motion Seeking Leave to File Declarations from Representatives of HAP and BCBSM in Further Response to This Court's May 29, 2015 Order [DE 9901] Regarding Further Proceedings on the City of Detroit's Motion for Certain Relief Against the DPLSA, Proposed Exhibit 1 and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

        ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

        By:   /s/ Barbara A. Patek
            Barbara A. Patek (P34666)
            Counsel for the Detroit Police Lieutenants
            and Sergeants Association
            400 Galleria Officentre, Suite 444
            Southfield, MI 48034
            Telephone: (248) 827-4100/ Facsimile: (248) 827-4106

DATED: July 1, 2015         E-mail: bpatek@ermanteicher.com

# **PROPOSED EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

City of Detroit, Michigan

Bankruptcy Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

Debtor.

_____/

# DECLARATION OF SERGEANT NANCY HEADAPOHL IN OPPOSITION TO THE CITY'S MOTION CLAIMING THAT THE STATE ACTIONS VIOLATE THE PLAN INJUNCTION AND IN SUPPORT OF THE CLAIM OF THE DPLSA THAT THE CITY COVERED RETIREE SPOUSES OF ACTIVE DPLSA MEMBERS CONSISTENT WITH THE TERMS OF BOTH THE PREVIOUS AND CURRENT COLLECTIVE BARGAINING AGREEMENTS

I, Nancy Headapohl, a member of the Detroit Police Lieutenants and Sergeants Association, and an employee of the City of Detroit Police Department, declare as follows:

1. I am currently employed by the City of Detroit Police Department in the rank of Sergeant and I am assigned to midnight patrol, 3rd Precinct. I make this declaration based on my personal knowledge, and if called upon to do so, I could and would testify to the facts set forth herein.

2. My spouse, Dan Headapohl, worked for the City of Detroit Police Department approximately 35 years before his retirement in 2006.

3. Effective 2014 and in accordance with the medical plans and terms of the 2009-2013 DPLSA collective bargaining agreement which remained in effect while the City and DPLSA engaged in Court ordered mediation during the bankruptcy to arrive at a successor collective bargaining agreement, I elected two-person medical coverage that included my spouse, a Detroit Police Department retiree without objection from the City.

4. Throughout 2014 and continuing into 2015, my spouse and I received medical coverage under the terms of the contractual medical plan for active DPLSA members. During this time, I contributed $68.61 every two weeks as an active employee contribution for two person coverage. I understood that an active member was entitled under the terms of the medical plan to spousal coverage without restriction as was the case during the duration of the 2009-2013 collective bargaining agreement and as continued during mediation and then subsequently under the terms of the 2014-2019 successor agreement. It does not appear that there was any modification to the 2014-2019 medical plan that would have deprived an active member of spousal coverage for any reason.

5. Although my spouse was covered throughout 2014 and the beginning of 2015, the City, without any substantive modification to the collective bargaining agreement, sent out notice

that it would terminate my election and the participation of my spouse in the medical plan effective February 1, 2015. I was alarmed by this notification because my spouse had undergone bypass surgery and required medication for his condition. I was also concerned over the possibility of a medical emergency while we were without adequate medical coverage.

6. Although the medical plan contained in the collective bargaining agreement did not exclude a spouse based on retiree status, I was told by the City that my husband as a Detroit retiree was now entitled to only a retiree stipend of $125.00 a month. As such my active benefit was diminished even though other active members whose spouses were not City of Detroit retirees maintained full coverage for their spouses. The $125.00 stipend also made us ineligible for COBRA coverage. A considerable percentage of my husband's pension benefit must now be spent on health coverage.

7. While the City, before I elected and received spousal coverage in 2014, did send out information to employees indicating in an information packet that it intended to eliminate spousal coverage, I did not separately agree with the City to eliminate coverage because the DPLSA was my exclusive representative for the purpose of negotiating benefits, including medical benefits. Moreover, the City for its part honored my election in 2014. As far as I can determine, the DPLSA representatives did not agree to remove the spousal benefit with respect to Detroit retirees and the successor collective bargaining agreement reflects nothing to the contrary.

Dated:

                                                          Nancy Headapohl, Sergeant
                                                          Detroit Police Department