## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S SUPPLEMENTAL RESPONSE IN SUPPORT OF OBJECTION TO SHERELL STANLEY'S MOTION FOR THE EXTENSION OF TIME/LATE-FILING OF HER APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM AND APPLICATION FOR ADMINISTRATIVE EXPENSE[1]

The City of Detroit, Michigan ("City") responds to Sherell Stanley's ("Stanley") *Reply to the City of Detroit's Objection and in Support of Sherell Stanley's Motion for the Extension of Time/Late-Filing of Her Application for Administrative Expense Claim* ("Reply," Doc. No. 9978).

### INTRODUCTION

Stanley's Reply confirms that extending the deadline for her to file her *Application for Administrative Expense Claim* ("Application," Doc. No. 9189) would be futile. The Application does not set forth an expense incurred in connection with the actual administration of the City's bankruptcy case. That alone suffices for the Court to deny both the Application and *Sherell Stanley's Motion for the Extension of Time/Late-Filing of Her Application for Administrative Expense Claim in Response to the City of Detroit's Objection* ("Motion," Doc. No. 9875).

Further, Stanley has not rebutted the presumption that she actually received the *Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date* (Doc. No. 8649, "Notice") as required by the Court. During the Court's hearing on this matter and in its Order it directed Stanley to file a

---

[1] The response is being refiled because an incorrect ECF code was used on the initial filing. *See* Doc. No. 10118. Other than this footnote, no changes have been made.

declaration that she did not receive the Notice. Stanley, however, has never made this simple statement. Instead, the declarations she provides play with words by saying the Notice was not "observed" but never make the simple statement that Stanley did not receive the Notice. Stanley's statement that she keeps her bankruptcy mail all in one place, has looked through it, and that she did not "observe" the Notice until she downloaded a copy from the internet is entirely consistent with receiving them and then failing to open them, losing them, or simply ignoring them. If Stanley believes in her heart that she did not receive the Notice, why doesn't she say so, plainly and simply? She has not made a clean declaration to this effect, and thus there is no direct evidence to rebut the presumption of service of the Notice, especially in light of the multiple mailings addressed to her and her receipt of other bankruptcy materials sent to her. Further, an attorney that filed a proof of claim and ballot on her behalf in this bankruptcy case was also mailed a copy of the Notice.[2] It is simply inconceivable that not one of the four copies mailed to Stanley nor the copy mailed to her attorney at a different address were received. That is likely why Stanley never says that she did not receive the Notice despite the clear direction from this Court.

Last, Stanley declares that she was unaware of the January 26 deadline for filing her Application until the EEOC informed her of it. This also is not inconsistent with receipt of the Notice. As set forth on the certificate of service to the Notice, Kurtzman Carson Consultants ("KCC") confirmed that not only was Stanley served repeatedly with the Notice, but her attorney, who filed a proof of claim on her behalf, received multiple copies of the Notice as well. This service is imputed to Stanley, his client. Further, the solicitation materials KCC distributed

---

[2] The City has no objection to permitting Stanley to make a further filing to respond to this point. In its objections to the Application and the Motion, the City cited to the page in the certificate of service identifying her attorney as receiving the Notice but this point was not addressed during the first hearing.

for the City's *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* ("Plan," Doc. No. 8045) explained how to access the court's docket, which Stanley admits she did when she downloaded the Notice. Last, the Notice was published in multiple newspapers as well. Thus, the sheer amount of the evidence against Stanley's position makes it difficult for the City to believe that she somehow avoided receiving all notice of the Application deadline until the EEOC brought the issue to her intention.

For these reasons, both the Application and the Motion should be denied. If, however, the Court finds that consideration of the Application would not be futile and that Stanley has provided sufficient evidence to rebut a presumption of service of the Notice, then the matter should be set for an evidentiary hearing.

## **BACKGROUND**

By this point, the procedural history has become intricate, so the City provides this summary. In February of 2014, Stanley filed unsecured claim number 2603 for $1,000,000 ("Claim 2603"), largely based on claims of sexual discrimination and retaliation that allegedly occurred between the fall of 2012 and November 2013. Ex. 2. The same charge that was attached to the Application was also attached to Claim 2603. At or near the same time, Stanley's attorney, Lawrence W. Mason ("Mason"), filed unsecured claim number 787 for $750,000 ("Claim 787") in connection with a lawsuit he filed on Stanley's behalf, which also was largely based on claims of sexual discrimination and retaliation, albeit in relation to acts that allegedly occurred prior to the dates alleged in Claim 2603. Ex. 3.

On July 23, 2014, the City filed and served Stay Modification Notices with respect to the Claims 2603 and 787. ("Stay Notices," Doc. Nos. 6238 and 6239.) The Stay Notices indicated the City's willingness to liquidate the Claims in a non-bankruptcy forum so that they might then be resolved through the City's bankruptcy case. Claim 787 is being liquidated in the United

States District Court for Eastern District of Michigan where Mason has continuously represented Stanley since at least May 31, 2011, which is when Stanley sued the City. *See* Ex. 4 (brief in support of answer to City's summary judgment motion, filed by Mason on March 31, 2015).

The Equal Employment Opportunity Commission ("EEOC") also filed claims on Stanley's behalf. On February 21, 2014, the EEOC filed unsecured claim number 2481 ("Claim 2481") for Stanley in the amount of $135,006.55, designating $12,475.00 of this amount as a priority claim. On March 19, 2014, the EEOC filed unsecured claim number 3665 ("Claim 3665") for Stanley, also for $135,006.55, with $12,475.00 of this amount designated as a priority claim. Claim 3665 also attached the charge that was attached to Claim 2603 and the Application. Ex. 5. On May 21, 2014, the City filed a Stay Modification Notice with respect to Claim 3665, permitting it to be liquidated outside of the bankruptcy court. (Doc. No. 4977.) The City and the EEOC later stipulated to withdrawal of Claim 2481 as duplicative. (Doc. No. 8255.)

Despite the stay modification notices on Claims 3665 and Claim 2603, the EEOC is still investigating the charge to determine whether it will even be pursued. Reply, pp. 2-3; Transcript of June 3, 2015, hearing (Doc. No. 9939) ("Transcript"), 50:15-24, 69:19-70:1.

Also in the summer of 2014, the City solicited votes for its *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit* ("Plan," Doc. No. 8045). Stanley received the solicitation packet which included a letter from Emergency Manager Kevyn Orr identifying the KCC website address.[3] Ex. 6. Stanley then voted her ballots.[4] The City's Plan (also included in the solicitation package) provided that applications for administrative expenses were due no later

---

[3] The KCC website was also provided on the last page of the *Notice of (I) Approval of Disclosure Statement, (II) Hearing to Consider Confirmation of the Plan for the Adjustment of Debts of the City of Detroit and (III) Procedures and Deadlines Regarding Confirmation of the Plan* and on page 4 of the *Notice Regarding Proposed Changes to Pensions in the City's Plan of Adjustment and Your Right to Vote on the Plan*, both of which were included in the Plan solicitation package Stanley received.

[4] Her attorney, Mason, also submitted a ballot on Stanley's behalf.

than 45 days past the date when the Plan went effective or else they would be barred.  Plan, Art. II.A.2.a.

After the Plan was confirmed in November and went effective on December 10, 2014, the Notice was served on creditors.  The Notice was also published in the Wall Street Journal (Doc. No. 8973), USA Today (Doc. No. 8972), and both the Detroit News and Detroit Free Press (Doc. No. 8971).  The Notice announced the Plan's effective date and stated that the deadline for administrative expense applications was January 26, 2015.  Notice at p. 7.  On February 6, after the deadline had passed, Stanley filed her Application.  As set forth above, the Application is based on the same facts as alleged in support of Claim 2603.  Although Stanley admits that she downloaded and reviewed a copy of the Notice around the time she filed her Application, she did not move the Court for extension of the deadline or take any other related action at that time.

On May 4, the City objected to Stanley's Application.  (Doc. No. 9789.)  On May 21, Stanley responded with her Motion, asking the Court to extend the deadline with respect to her Application.  On July 1, the City objected, filing its *City of Detroit's Objection to Sherell Stanley's Motion for the Extension of Time/Late-Filing of Her Application for Administrative Expense Claim in Response to the City of Detroit's Objection* ("Motion Objection," Doc. No. 9909).  The Motion Objection noted that Stanley provided no evidence with her Motion to rebut the presumption that she had received with the Notice.  In further support, the City included a declaration from Michael J. Paque of Kurtzman Carson Consultants ("KCC"), showing that KCC had mailed multiple copies of the Notice to Stanley's residence. [5]  Motion Objection, Ex. A.  The Motion Objection also pointed out that extension of the deadline to file the Application would be

---

[5] Although a proof of service had been filed, many addresses, including Stanley's were redacted to protect the privacy of recipients.

futile, as the Application did not set forth a proper chapter 9 administrative expense and was based on unfounded allegations.

On June 3, the Court held a hearing on the matter. At the hearing the Court made it abundantly clear that the issue it wanted to address was whether or not Stanley (and the other parties at the hearing that day) <u>actually received</u> the Notice. Transcript, 55:9-18 ("[A]n important, very important consideration in determining whether Ms. Stanley has demonstrated excusable neglect for the late filing of her administrative expense claim is whether in fact the December 10, 2014 notice, docket 8649 . . . was actually received at Ms. Stanley's P.O. Box to which the city's servicing agent has certified it mailed four copies of the notice . . . which Ms. Stanley admits is her correct mailing address . . . ."); 56:6-9 ("[A]n important issue will be – would be with respect to the timeliness issue and the motion filed by Ms. Stanley, whether in fact that notice actually was received at her P.O. Box."); *see also* Transcript 15:23-16:8; 17:9-16; 23:22-24:11 ("Ms. Reed must file a motion seeking an extension of the January 26, 2015 deadline to January 30 . . . on the grounds of excusable neglect[, w]hich means on the ground that . . . she did not actually receive the December 10, 2014 notice, document number 8649."); 55:6-59:3; 61:3-12; 79:15-80:5.

After the hearing, the Court ordered Stanley to file a reply in support of her Motion responding to the City's futility argument. *Order Regarding Further Proceedings on (1) the Administrative Expense Claim Filed by Sherell Stanley; and (2) Sherell Stanley's Motion for Extension of Time to File Administrative Expense Claim* ("<u>Procedural Order</u>," Doc. No. 9929). To aid in addressing this issue, the Court provided a memorandum with excerpts from a prior hearing, at which the Court had clarified what would qualify as an administrative expense in the City's chapter 9 case. *Memorandum Regarding the Administrative Expense Claims Filed by*

*Sheila Reed and Sherell Stanley* ("Memo," Doc. No. 9934). The Court highlighted particularly relevant passages for the parties' convenience. *Id.*

In addition to addressing futility, the Procedural Order required that Stanley's reply include an affidavit or declaration supporting her contention that she did not actually receive the Notice. Procedural Order. Stanley filed her Reply by the Procedural Order deadline. The Reply includes her own declaration which, in summary, states that (1) Stanley was not home when the Notice was mailed; (2) Ms. Black collected Stanley's mail in Stanley's absence; (3) Stanley collects all her City bankruptcy mail in one place; (4) Stanley did not "observe" the Notice within the collected mail; and (5) Stanley did not "observe" the Notice until she downloaded a copy from the internet on or about January 29, 2015. Reply, Declaration of Sherell Stanley ("Stanley Declaration"). Stanley also declares that she was unaware of the deadline to file her Application. *Id.* However, even though the main question to address was whether Stanley actually received the Notice, Stanley never once states that she did not actually receive the Notice. *Id.*

In addition to the Stanley Declaration, the Reply includes a declaration from Ms. Black, stating that she collected Stanley's mail, does not recall seeing any envelopes from California,[6] and did not dispose of any of Stanley's mail. Reply, Declaration of Sherita Black ("Black Declaration"). Notably, the Black Declaration also does not say that Stanley did not receive the Notice.

---

[6] The return address on KCC's mailings is in California.

## ARGUMENT

**Stanley's Reply ignores the Court's Memo on what constitutes an administrative expense claim. This alone suffices to deny her Application and Motion.**

Stanley's argument on the futility of the Motion and Application completely misses the mark. Her entire statement on the matter is included below.

> I submit that my claim is based on a Federal EEOC Complaint of discrimination, harassment, and retaliation, while serving as a law enforcement officer. I have served in that capacity from June 1996, to date. However, my Federal EEOC Complaint against the City of Detroit was filed in November 2013, as a continuous action; it is supported by documentation, is anything but unfounded, and includes but is not limited to an allegation that I was denied overtime opportunities to which I was contractually entitled. The matter is still under investigation by the Federal EEOC, delayed in part because the City filed for bankruptcy. Hence, as a matter of equity, it is premature to declare my complaint invalid and to disallow my claim as either an Administrative Expense or General Unsecured.
>
> **Pursuant to 11 U.S.C. § 503(b), business expenses for debtors operating during a bankruptcy case qualify as Administrative Claims. My claim arose post-petition and so qualifies based on services rendered and inequitable treatment.**

Reply, pp. 2-3 (emphasis added). This argument ignores that the City's case is under chapter 9 of the Bankruptcy Code. Post-petition expenses incurred in a municipal bankruptcy are not administrative expenses unless they are directly related to administration of the bankruptcy case. *In re N.Y.C. Off-Track Betting Corp.*, 434 B.R. 131,141-42 (Bankr. S.D.N.Y. 2010).

Not only has this Court ruled consistently with this position, it *highlighted* this ruling for the parties' convenience. *See* Memo. The Court noted that, to qualify for an administrative expense, an applicant must show that the expense was "incurred in connection with the actual administration of the Chapter 9 case." Memo, last page. Following this reasoning, the Court found that post-petition wages did not qualify as administrative expenses in the City's bankruptcy case.

> It is not sufficient in a Chapter 9 case to obtain an allowed administrative expense merely to show and argue that an employee worked for the municipality and through their work was part of a workforce that allowed the city to continue to function while it was in Chapter 9 bankruptcy . . . .

*Id.* Stanley's contention, that she is entitled to an administrative expense because her claim arose post-petition while she was employed by the City, ignores case law and the Court's Memo.

Stanley's argument that "it is premature to . . . disallow my claim as either an Administrative Expense of General Unsecured [Claim]" is likewise misplaced, as it conflates two issues. As regards her Application, it absolutely is the proper time to determine whether it is valid. Her unsecured claims, however, are another matter; their validity is not properly before the Court at this time. Her unsecured claims will be liquidated, and if there is any merit to them, they will be allowed and resolved along with the other unsecured claims filed in the City's case. Indeed, the City's Stay Notices with respect to her claims remain in effect, allowing her claims to be liquidated. Thus, she is not without recourse, and the fact that her Application is invalid and untimely has no direct effect on those claims.

For this reason, the Motion and Application should be denied.

**Stanley's Reply, on its own, does not suffice to show that she did not receive the Notice and was unaware of the deadline to file her Application.**

In addition to showing that consideration of her Application would not be futile, Stanley must establish excusable neglect before the Court will extend the bar date and consider her Application. For the first time, Stanley has attempted to provide evidence, in the form of two declarations, the Stanley Declaration and the Black Declaration. As noted previously, despite this Court's focus on the singular issue of whether the Notice was actually received, neither declaration states that the Notice was not actually received. Instead, the Stanley Declaration and Black Declaration suggest that the copies of the Notice that were mailed to Stanley should be in

a certain three-ring binder Stanley keeps, and just are not there. This is not the same as outright denial of receipt of any copies of the Notice, and should not be taken as such.

It was emphasized repeatedly at the hearing and in the Procedural Order that whether or not the Notice was actually received at Stanley's post office box is a crucial issue. Transcript, 55:9-18; 56:6-9; *see also* Transcript 15:23-16:8; 17:9-16; 23:22-24:11; 55:6-59:3; 61:3-12; 79:15-80:5; *see also* Procedural Order (requiring "an affidavit or a declaration under penalty of perjury of Ms. Stanley, and of any other person, in support of any argument that Ms. Stanley did not <u>actually receive</u> the December 10, 2014 Notice of the Bar Date . . . .") (emphasis added). After all of the attention focused on this point, Stanley's refusal to directly address it is virtually an admission that she is either unable or unwilling to do so.

Further, Stanley's attorney also received the Notice. Ex. 7 (Excerpts from Certificate of Service for Notice, Doc. No. 8970-4, pages 348, 394, and 407 of 569). Service of the Notice on her attorney imputes service to Stanley herself. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir. 1982) ("The general rule for imputing an agent's notice or knowledge is applicable in bankruptcy cases."). Thus, service was provided both directly to Stanley *and* to her attorney, who was her agent in the City's bankruptcy case.

If the Court should find that consideration of the Application would not be futile, and that there remains an evidentiary question regarding Stanley's receipt of at least one copy of the Notice (which it should not), the Court should then set an evidentiary hearing. At that hearing, Stanley will need to prove that she "was unaware that . . . Applications for Administrative Expense Claims were due January 26m [sic] 2015, until [she] was contacted by the Federal EEOC on January 29, 2015." Reply, Declaration of Sherell Stanley, ¶ 5. This will be hard to do, considering that (1) multiple copies of the Notice were mailed to her Post Office box;

(2) multiple copies of the Notice were mailed to her attorney (Ex. 7); (3) she read the Plan (which noted the deadline) and filed ballots with respect to it; (4) she was aware that she could get information directly from KCC if she missed any notices; and (5) the Notice was published in the Wall Street Journal (Doc. No. 8973), USA Today (Doc. No. 8972), and both the Detroit News and Detroit Free Press (Doc. No. 8971).

## CONCLUSION

The Motion and Application should be denied. They should be denied because consideration of the Application would be futile, in that it does not set forth a claim related to actual administration of the City's chapter 9 bankruptcy case and it is based on unfounded allegations. Alternately, they should be denied because the declarations submitted with the Reply do not affirmatively state that the Notice was not received, and further, her attorney received service of the Notice.

If, however, the Court determines that consideration of Stanley's Application would not be futile, and that Stanley has submitted sufficient evidence to put her receipt of the Notice in question, then the City requests an evidentiary hearing on the issue.

July 2, 2015

Respectfully submitted,

By: /s/ Marc N. Swanson
      Jonathan S. Green (P33140)
      Marc N. Swanson (P71149)
      MILLER, CANFIELD, PADDOCK AND
      STONE, P.L.C.
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      Telephone: (313) 496-7591
      Facsimile: (313) 496-8451
      green@millercanfield.com
      swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

<u>**EXHIBIT 1 – CERTIFICATE OF SERVICE**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on July 2, 2015, he served a copy of the foregoing *City of Detroit's Supplemental Response in Support of Objection to Sherell Stanley's Motion for the Extension of Time/Late-Filing of Her Application for Administrative Expense Claim and Application for Administrative Expense* as listed below, via First Class United States Mail:

Ms. Sherell Stanley
P.O. Box 321032
Detroit, MI 48232

DATED: July 2, 2015

> By: <u>/s/ Marc N. Swanson</u>
> Marc N. Swanson
> 150 West Jefferson, Suite 2500
> Detroit, Michigan 48226
> Telephone: (313) 496-7591
> Facsimile: (313) 496-8451
> swansonm@millercanfield.com

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Eastern District of Michigan | | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor:<br>CITY OF DETROIT, MICHIGAN | Case Number:<br>13-53846 |
|---|---|

**NOTE:** *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
SHERELL SHAWNEE STANLEY

Name and address where notices should be sent:

Sherell S. Stanley
P.O. Box 321032
Detroit, MI 48232

Telephone number: (313) 570-2012    email: s.s.stanley@comcast.net

RECEIVED
FEB 2 4 2014
KURTZMAN CARSON CONSULTANTS

Name and address where payment should be sent (if different from above):



Telephone number:        email:

**FILED**

FEB 2 1 2014

US Bankruptcy Court
MI Eastern District
COURT USE ONLY

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
    (*If known*)

Filed on:_____

☑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**   $_____1,000,000.00

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Employm. discrimination (sex/gender), Harassment, Retaliation, Hostile Work Environment,
    (See instruction #2) Personal Injury, Intentional Infliction of Emotional Distress

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate_____% ☐ Fixed  or  ☐ Variable**
**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

Amount entitled to priority:

$_____12,475.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

1353846140221000000000540

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain: Confidential Health Care Information

RECEIVED

FEB 2 4 2014

**8. Signature:** (See instruction #8)

KURTZMAN CARSON CONSULTANTS

Check the appropriate box.

☑ I am the creditor.   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Sherell Shawnee Stanley
Title: An Individual/Police Lieutenant
Company: Detroit Police Department
Address and telephone number (if different from notice address above):
_____
_____
_____

Telephone number: _____ email: _____

(Signature)                    (Date) 02/20/2014

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 471-2014-00163 |

**Michigan Department Of Civil Rights** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Sherell S. Stanley** | **(313) 570-2012** | **07-18-1970** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 321032, Detroit, MI 48232** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CITY OF DETROIT, DETROIT POLICE DEPARTMENT** | **500 or More** | **(313) 596-5600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **11450 Warwick, Detroit, MI 48228** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10-24-2012**  Latest **10-08-2013**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began working for the above named employer on 6/24/96. I am currently employed as a Lieutenant at the 6th Precinct, Platoon One/Midnight Shift.

Since the fall of 2012, through November 2013, I have been retaliated against and subject to different terms and conditions of employment as compared to male supervisors due to my sex (female), both in violation of Title VII.

Specifically, I have been required to procure authorization in advance of working prescheduled overtime; my request to split my 2013 summer furlough was denied twice, supposedly due to overlapping with another sergeants,' which was not true; I was assigned more officers and responsibilities with less supervisory personnel than Platoons Two or Three, placing me at a disadvantage in completing assignments in a timely manner and subjecting me to disciplinary action (scheduled for six (6) disciplinary Trial Boards); I have been required to combine my monthly mobilization report and SOC sheet, following a specific format, not required of any male supervisor to procure approval of those particular monthly reports; I have been required to include an extra cover

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

11-07-13
*Date*  *Charging Party Signature*

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)* 11-14-2013

11-07-13

HEATHER DEHART
Notary Public, Wayne County, MI
Acting in ___ County

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **471-2014-00163** |

**Michigan Department Of Civil Rights** and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

memorandum in addition to the cover-memos already included within my package of Quarterly Equipment Inspection reports not mandated per Department policy or of any male supervisor; my authority as lieutenant has been constantly undermined by the Inspector. Lastly, I was retaliated against by being disciplined for complaining of inequities due to my gender. Males were not subject to the same treatment under the above mentioned same/similar circumstances.

I have been subjected to different terms/conditions of employment due to my sex (female) and in retaliation for filing previous charges of discrimination and for filing internal complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 11-07-13 | 11-07-13 |
| Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* 11-7-2013 |
| | HEATHER DEHART Notary Public, Wayne County, MI Acting in Wayne County My Commission Expires September 22, 2014 |

In its List of Claims, the .... .... your .... as a contingent, unliquidated ..... claim in an unknown amount. To determine if you need to file a claim, please refer to the enclosed Information About Deadlines to File Claims.

B10 (Official Form 10) (04/13) (Modified)

| UNITED STATES BANKRUPTCY COURT | EASTERN DISTRICT of MICHIGAN | CHAPTER 9 PROOF OF CLAIM |
|---|---|---|

Name of Debtor: **City of Detroit, Michigan**          Case Number: **13-53846**

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Stanley, Sherell S.

FILED

2014 FEB -5 P 2: 27

Name and address where notices should be sent:    NameID: 11702399
Stanley, Sherell S.
Mason, Lance W.
Lance W. Mason PC
615 Griswold St Ste 901
Detroit, MI 48226

U.S. BAN..... .....COURT
E.D. MICHIGAN-DETROIT

Telephone number: 967-9016     email: *lancewmason@yahoo.com*

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on:_____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement **RECEIVED**

Telephone number:      email:

**FEB 07 2014**

**KURTZMAN CARSON CONSULTANTS**

**1. Amount of Claim as of Date Case Filed:**     $ 750,000.00

If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** ~~Employment Discrimination/Personal~~ Injury
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 2399

**3a. Debtor may have scheduled account as:**_____
(See instruction #3a)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$_____

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
**Describe:**

**Basis for perfection:** _____

**Value of Property:** $_____

**Amount of Secured Claim:**     $_____

**Annual Interest Rate (when case was filed)_____% ☐Fixed or ☐Variable**

**Amount Unsecured:**     $_____

**5. Amount of Claim Entitled to Priority as an Administrative Expense under 11 U.S.C. §§ 503(b)(9) and 507(a)(2).**     $_____

**5b. Amount of Claim Otherwise Entitled to Priority. Specify Applicable Section of 11 U.S.C. § _____.**     $_____

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)* DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)
Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)      ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Lance W. Mason
Title: President
Company: Lance W. Mason, P.C.
Address and telephone number (if different from notice address above):

(Signature)   Lance W. Mason      (Date) Feb. 5 2014

Telephone number:     email:

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERELL S. STANLEY

           Plaintiff,

                            CASE NUMBER: 2:11-cv-12365-AJT-MKM

                            HONORABLE ARTHUR J. TARNOW

v.

CITY OF DETROIT.
a Municipal Corporation,

           Defendant.

---

LANCE W. MASON (P43926)
**LANCE W. MASON, P.C.**
Attorneys for Plaintiff
615 Griswold, Suite 901
Detroit, Michigan 48226-3894
(313) 967-9016 [office]
(313) 964-4789 [facsimile]
*lancewmason@yahoo.com*

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND RELIANCE ON JURY DEMAND

    **NOW COMES** the Plaintiff, SHERELL S. STANLEY, [hereinafter, Plaintiff] by and through her attorneys, **LANCE W. MASON, P.C.,** and for her First Amended Complaint against the Defendant states as follows:

### PARTIES

    1.    That at all pertinent times, Plaintiff was a resident of the State of Michigan and citizen of the United States.

    2.    That the Defendant, CITY OF DETROIT, [hereinafter, Defendant] is a

municipal corporation located in Wayne County, Michigan, and operates subject to the laws and the constitutions of both the State of Michigan and the United States of America.

## JURISDICTION AND VENUE

3.      That at all relevant times the Defendant was the Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC  Section 2000e, et seq. ("Title VII") and was the Plaintiff's employer within the meaning of the Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), MCL 37.2201, et seq.

4.      That in accordance with 28 U.S.C., Section 1331, this Court has original subject matter jurisdiction over the Plaintiff's claims arising under the Constitution, laws, or treatises of the United States.

5.      That in accordance with 28 U.S.C., Section 1367(a) this Court has supplemental jurisdiction over the Plaintiff's claims arising under state law.

6.      That the events giving rise to this litigation occurred  within the jurisdiction of this Court.

7.      That the amount in controversy exceeds $75,000.00. Jurisdiction is also determined by the Plaintiff's Title VII claim against the Defendant.

## COMMON ALLEGATIONS

8.      That the Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs as if fully restated herein.

9.      That the Plaintiff, an African-American female, began working for the Defendant's Police Department (hereinafter Defendant/DPD) in June, 1996, and currently

2.

holds the rank of Lieutenant.

10.    That the Defendant/DPD subjects its employees to a physical try-out to
qualify for the Special Response Team [hereinafter SRT].

11.    That on or about July 16, 2008, the Defendant/DPD issued teletype 08-
03532 advising employees that a physical agility test would be conducted August 11, 2008;
another test was conducted on September 25, 2008.

12.    That the aforementioned teletype specifically states that, "Any department
member wishing to participate in this physical fitness qualification should submit a blue slip
requesting a tryout to Lieutenant Randall Hampton, Commanding Officer of the Special
Response Team."

13.    That on or about July 24, 2008, the Plaintiff submitted a request to try-out for
the SRT for which her commanding officer, Deputy Chief John Clark, verified that she met
the requirements to participate.

14.    That (then Lieutenant) Randall Hampton advised the Plaintiff that no female
had ever passed the physical agility test for SRT in the history of the Department, but that
the Plaintiff could try-out.

15.    That on or about September 25, 2008, the Plaintiff tried out for the SRT but
did not qualify because she is female and because the physical criteria to qualify for SRT
is neither job related, nor consistent with business necessity, and is discriminatory against
females.

16.    That it was pre-determined that the Plaintiff would fail the physical try-out to
join the SRT which was confirmed by Sergeant Kevin Shepherd, a Sergeant assigned to

3.

SRT, who told the Plaintiff before the try-out that despite having hired a physical trainer to prepare for the try-out, "your best won't be good enough."

17.     That prior to the time of the Plaintiff's September 25, 2008, try-out for the SRT, the Defendant\DPD had no written policy prohibiting ranks other than that of Police Officer from trying-out for the SRT.

18.     That the physical criteria and\or standard utilized by the Defendant\DPD to qualify for SRT does not correspond with the duties of SRT.

19.     That the physical criteria to qualify for SRT is neither job related, nor consistent with business necessity, and is discriminatory against females.

20.     That no female has ever been assigned to the SRT.

21.     That no female has ever passed the physical agility (try-out) to qualify for the SRT.

22.     That females are discouraged from trying out for the SRT due to the Defendant's discriminatory practices and discriminatory criteria.

23.     That the Plaintiff is qualified for the SRT position.

24.     That the practice and criteria used to try-out to join the SRT has a disparate impact on female candidates.

25.     That the Defendant has a pattern and practice of prohibiting females in the SRT.

26.     That the Plaintiff was subjected to different terms and conditions of employment due to the criteria of the physical test for the SRT.

27.     That the Plaintiff was maliciously denied an opportunity for assignment

4.

to the SRT while male members of the DPD have been assigned to command the team without first having been assigned to it while holding the rank of police officer.

28.     That Defendant/DPD was asked to re-evaluate the physical criteria utilized to measure each candidate's knowledge, skills, and abilities to be assigned to the SRT, but refused to do so.

29.     That on or about July 20, 2009, the Plaintiff filed a complaint containing two separate charges with the United States Equal Employment Opportunity Commission (EEOC) for sex\gender discrimination and retaliation regarding this matter.

30.     That on or about April 27, 2010, based upon the Plaintiff's EEOC complaint, the District Director of the EEOC stated through correspondence that there was reasonable cause to believe that the Defendant\DPD violated the statutes enforced by the EEOC.

31.     That on about March 1, 2011, the Plaintiff received the Notice of Right to Sue regarding this matter from the United States Department of Justice, Civil Rights Division **(Exhibit 1).**

32.     That in September 2008, the Plaintiff was assigned Chief of Staff of the Fiscal Management Bureau of the DPD (now referred to as the Management Services Bureau/MSB).

33.     That although the Plaintiff was a Sergeant at the time of the Appointment, the position to which she was assigned was budgeted for the rank of Lieutenant.

34.     That pursuant to the collective bargaining agreement, specifically Article Number 28 of the Master Agreement between the City of Detroit and the Detroit Police Lieutenants and Sergeants, the Plaintiff is entitled to "out-of-class pay."

5.

35.     That the Plaintiff is qualified and entitled to out-of-class pay and has requested said pay on multiple occasions.

36.     That to date, the City of Detroit has failed to compensate the Plaintiff with out-of-class pay.

37.     That the Plaintiff filed a sexual harassment complaint with the Defendant\DPD Equal Employment Opportunity [EEO] office against a co-worker in 2009.

38.     That the Defendant/DPD EEO office sustained the Plaintiff's sexual harassment complaint and advised the Plaintiff that the offending employee would be both suspended and transferred out of the MSB in November, 2009, away from the Plaintiff.

39.     That after the Plaintiff filed a complaint with the EEOC for sex\gender discrimination regarding the physical criteria utilized to qualify for the SRT, the Defendant\DPD, reassigned the offending employee back to the MSB.

40.     That the Plaintiff inquired of Deputy Chief Benjamin Lee [hereinafter D.C. Lee] of the MSB why the employee was reassigned to the MSB in 2010, even though the Plaintiff's complaint was sustained and that it would hinder her ability to effectively manage the MSB.   D.C. Lee failed to provide an explanation.

41.     That reassignment of the employee back to MSB was done in retaliation of the Plaintiff's previously filed EEOC complaint for sex and gender discrimination regarding the physical criteria utilized for candidates to qualify for the SRT.

42.     That following said complaint, the Plaintiff was ordered by D.C. Lee to falsify documents by putting his name block on reports which were actually proffered by the Plaintiff.

6.

43.     That based upon this order the Plaintiff was relegated to refusing to put D.C. Lee's name block on her reports.

44.     That although the Plaintiff was assigned Chief of Staff of the MSB, she was arbitrarily ordered to complete reports assigned to other commands within the MSB.

45.     That although the Plaintiff was often compelled to work well beyond scheduled work hours to complete her assignments and those assigned to other commands within the MSD on many occasions, D.C. Lee denied the Plaintiff's requests for either overtime or compensatory time.

46.     That the Plaintiff took and passed the Lieutenant's Promotional Examination in both 2004 and 2008.

47.     That Plaintiff filed grievances based on bias as to both the 2004 and 2008 promotional processes.

48.     That both matters went before an arbitrator for resolution.

49.     That the Plaintiff's arbitration regarding the 2004 lieutenant's promotional examination was intentionally delayed by the Defendant\DPD from 2004 to 2008, compelling the Plaintiff to take the 2008 promotional examination.

50.     That before the matter involving the Plaintiff's complaint of bias as to the application of her 2004 promotional examination score and the 2008 promotional process was arbitrated, the Defendant/DPD offered to issue the Plaintiff's 2008 promotional examination scores to her if she would agree to withdraw her U.S. EEOC complaint of sex/gender discrimination regarding the physical criteria utilized for candidates to qualify for the SRT.

7.

51.     That DPD's failure to give the Plaintiff out-of-class pay, overtime and\or compensatory time, failure to release the Plaintiff's promotional examination scores, intentionally hindering her ability to effectively manage the MSB while also subjecting her to additional sexual harassment by reassigning the offending employee back within her command, and harassing the Plaintiff, were done in retaliation for filing her complaints for sex and gender discrimination regarding the physical criteria utilized for candidates to qualify for the SRT.

52.     That on April 27, 2011, regarding these retaliatory matters, the EEOC issued to the Plaintiff a Dismissal Notice of Rights to Sue. **(Exhibit 2).**

**COUNT I.**

**<u>SEX/GENDER DISCRIMINATION</u>**

53.     That the Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs as if fully restated herein.

54.     That the Plaintiff is a member of a protected group due to her sex\gender as a female.

55.     That the Plaintiff was subjected to adverse employment action, i.e. failure to pass the physical try-out for the SRT because of her sex/gender.

56.     That the Plaintiff applied for, and was qualified for the SRT position, for which the Defendant was seeking applicants.

57.     That male employees, similarly situated and outside of the Plaintiff's protected group were treated more favorably than the Plaintiff, or were unaffected by the Defendant's adverse conduct.

8.

58.     That pursuant to Title VII, the Elliott-Larsen Civil Rights Act, and the statutes and common law of the State of Michigan, the Defendant, and its employees, agents and representatives, had a duty not to discriminate against the Plaintiff, in the compensation, terms, conditions and privileges of employment on the basis of her sex\gender and Defendant owed the Plaintiff the following duties, among others:

a.      To refrain from discriminating against the Plaintiff on the basis of her sex/gender regarding the physical criteria utilized for candidates to qualify for the SRT;

b.      To refrain from treating the Plaintiff in a manner different from male employees regarding the physical criteria utilized for candidates to qualify for the SRT;

c.      To refrain from denying the Plaintiff equal promotions, promotional opportunities, and assignments given to male employees;

d.      To refrain from using a physical criteria and\or standard to qualify for the SRT that does not correspond with the duties of the SRT;

e.      To refrain from using a physical criteria to qualify for SRT that is neither job related, nor consistent with business necessity, and is discriminatory against females;

f.      To refrain from using a physical criteria to qualify for the SRT that has a disparate impact on female candidates;

g.      To refrain from using a criteria, plan and\or design to select candidates for a SRT position that has a disproportionate, negative effect upon the Plaintiff due to her sex/gender;

h.      To provide a representative percentage of females on the SRT; and

9.

i. To refrain from retaliating against the Plaintiff because she challenged the Defendant's practices regarding promoting females to the SRT position.

59. That the Defendant was grossly negligent, deliberate, wilful, intentional wanton and malicious, in its violation, breach, and disregard of each and every one of the aforementioned duties, obligations, and responsibilities, among others.

60. As a direct and proximate effect of the Defendant's conduct, Plaintiff suffered, and continues to suffer, the following injuries and damages among others:

        a.    Loss of promotion and assignment to the SRT;

        b.    Loss of professional standing and status;

        c.    Loss of income and benefits, past and future;

        d.    Loss of promotion, promotional opportunity and assignments;

        e.    Impairment of earning capacity, past and future;

        f.    Depression, anguish, emotional distress, humiliation, embarrassment and outrage, past and future;

        g.    Loss of the enjoyment of life, past and future; and

        h.    Violation of Plaintiff's statutory and common law rights.

**WHEREFORE**, Plaintiff, respectfully requests that this Honorable Court enter Judgment in her favor and against Defendant, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest, costs, attorney fees, punitive and exemplary damages, and for such other relief as is allowed by law.

10.

## COUNT II

### RETALIATION

61.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the previous paragraphs as if fully restated herein.

62.     That the Plaintiff was engaged in protected activity under Title VII and under Elliott-Larsen when she filed her U.S. EEOC complaint on or about July 20, 2009, charging that she was subjected to sex\gender discrimination and retaliation regarding the physical criteria utilized for candidates to qualify for the SRT.

63.     That the Plaintiff's aforementioned protected activities and others, were known by the Defendant during the course of the Plaintiff's employment with the Defendant.

64.     That the Plaintiff was subjected to adverse employment action, including, but not limited to, failure to qualify for promotion and assignment to the SRT, loss of overtime and compensatory pay, loss of out-of-class pay, bias in the promotional examination process for the Lieutenant's position, harassment, and other terms and conditions of employment, as a direct result of her complaint of sex/gender discrimination regarding the physical criteria utilized for candidates to qualify for the SRT

65.     As a result of the Defendant's actions the Plaintiff has suffered substantial economic and emotional distress damages, including, but not limited to:

a.      Loss of promotion and assignment to the SRT;

b.      Loss of professional standing and status;

c.      Loss of income and benefits, past and future;

11.

d.     Loss of promotion and promotional opportunity;

e.     Impairment of earning capacity, past and future;

f.     Depression, anguish, emotional distress, humiliation, embarrassment and rage, past, present and future;

g.     Loss of the enjoyment of life, past and future; and

h.     Violation of Plaintiff's statutory and common law rights.

**WHEREFORE**, Plaintiff, respectfully requests that this Honorable Court enter Judgment in her favor and against Defendant, in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest, costs, attorney fees, punitive and exemplary damages, and for such other relief as is allowed by law.

LANCE W. MASON, P.C.

By _____

LANCE W. MASON (P 43926)

Attorneys for Plaintiff

615 Griswold, Suite 901

Detroit, Michigan 48226-3894

(313) 967-9016 [office]

August 30, 2011

12.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERELL S. STANLEY

    Plaintiff,

            CASE NUMBER: 2:11-cv-12365-AJT-MKM

            HONORABLE ARTHUR J. TARNOW

v.

CITY OF DETROIT,
a Municipal Corporation,

    Defendant.

---

LANCE W. MASON (P43926)
**LANCE W. MASON, P.C.**
Attorneys for Plaintiff
615 Griswold, Suite 901
Detroit, Michigan 48226-3894
(313) 967-9016 [office]
(313) 964-4789 [facsimile]
_lancewmason@yahoo.com_

---

### PLAINTIFF'S RELIANCE OF JURY DEMAND

**NOW COMES** the Plaintiff, Sherell S. Stanley, by and through her attorneys,

**Lance W. Mason, P.C.,** and hereby respectfully relies upon a jury demand previously

filed in this matter.

          LANCE W. MASON, P.C.

          LANCE W. MASON (P43926)
          Attorneys for Plaintiff
          615 Griswold, Suite 901
          Detroit, Michigan 48226-3894
          (313) 967-9016 [office]

August 30, 2011

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERELL S. STANLEY
     Plaintiff,

v.                        CASE NUMBER: 2:11-CV-12365-AJT-MKM
                               HONORABLE ARTHUR J. TARNOW

CITY OF DETROIT
a  MunicipalCorporation,

     Defendant.

| | |
|---|---|
| **LANCE W. MASON, P.C.** | JUNE C. ADAMS (P43283) |
| Lance W. Mason (P43926) | **CITY OF DETROIT LAW DEPT.** |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 615 Griswold, Suite 901 | Two Woodward Avenue, Suite 500 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| (313) 967-9016 [office] | (313) 237-0540 [office] |
| (313) 964-4789 [facsimile] | (313) 224-5505 [facsimile] |
| lancewmason@yahoo.com | adamj@detroitmi.gov |

## PLAINTIFF'S ANSWER TO THE DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT
## ORAL ARUMENT REQUESTED

    **NOW COMES,** the Plaintiff, by and through her attorneys, LANCE W.MASON,

P.C., and in response to the Defendant's Motion for Summary Judgment, pursuant to Fed.

R. Civ. P 56 (c), requests this Honorable Court to deny Defendant's Motion in its entirety

for all the reasons stated in the Brief in Support of its Answer to the Defendant's Motion

for Summary Judgment, which is filed contemporaneously with this pleading, and for any

additional relief as may be proper.

                               *Respectfully submitted,*
                               **LANCE W. MASON, P.C.**

                               /s/Lance W. Mason
                               Lance W. Mason (P43926)
                               615 Griswold, Suite 901
                               Detroit, Michigan 48226

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERELL S. STANLEY

     Plaintiff,

v.

CITY OF DETROIT
a MunicipalCorporation,

     Defendant.

CASE NUMBER: 2:11-CV-12365-AJT-MKM
HONORABLEARTHUR J. TARNOW

| | |
|---|---|
| **LANCE W. MASON, P.C.** | JUNE C. ADAMS (P43283) |
| Lance W. Mason (P43926) | **CITY OF DETROIT LAW DEPT.** |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 615 Griswold, Suite 901 | Two Woodward Avenue, Suite 500 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| (313) 967-9016 [office] | (313) 237-0540 [office] |
| (313) 964-4789 [facsimile] | (313) 224-5505 [facsimile] |
| lancewmason@yahoo.com | adamj@detroitmi.gov |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS ANSWER TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS.................................................... i

INDEX OF AUTHORITIES.............................................. ii-iv

CONCISE STATEMENT OF ISSUES PRESENTED........................ v

I.      INTRODUCTION................................................... 1

II.     COUNTER-STATEMENT OF FACTS............................... 1

        A.      Factual Background............................................ 1

        B.      Special Response Team ("SRT").............................. 1

        C.      Plaintiff's attempt to obtain an SRT position................. 4

III.    STANDARD OF REVIEW............................................ 6

IV.     LEGAL ARGUMENTS............................................... 7

        A.  THE PLAINTIFF HAS A VIABLE GENDER
        DISCRIMINATIONCLAIM UNDER TITLE VII AND
                ELLIOTT-LARSEN.................................................. 7

        1.      Prima Facie Case................................................ 8

                a.  Member of a Protected Class............................ 9

                b.  Applied for and Qualified for Position/
                    Considered and Denied................................... 9

                c.  Favorable Treatment........................................ 10

        2.      Legitimate Nondiscriminatory Reason......................... 11

        3.      Pretext.......................................................... 13

        B.  THE PLAINTIFF HAS A VIABLE RETALIATION CLAIM
                UNDER TITLE VII AND ELLIOTT-LARSEN................... 14

V.      CONCLUSION AND REQUEST FOR RELIEF....................... 18

i.

# INDEX OF AUTHORITIES

<u>**CASES**</u>                                                                                         <u>**PAGE**</u>

*Amway Distributors Benefits Assn.  v.  Northfield Ins. Co.,*
   323 F.3d 386, 390 (CA 6 2003)……………………………………………   6

*Anderson  v. Liberty Lobby, Inc.,*
   477 U.S. 242, 252-53 (1986)………………………………………………   6

*Asmo v. Keane, Inc.,*
   471F.3d 588 (CA 6, 2006)………………………………………………...   14

*Barrett v. Kirtland Community College,*
   245 MA 306, 628 NW2d 63 (2001)…………………………………….   1

*Griggs  v.  Duke Power Co.,*
   *401 U.S. 424, 432 (1971))*…………………………………………….   12

*Hazle v. Ford Motor Co.,*
   464 Mich. 456 (2001)……………………………………………………...   8

*Hollins  v. Atlantic Co.,*
   188 F.3d 652, 662 (CA 1999)……………………………………………...   8

*Imwalle v. Reliance Medical Products,*
   515 F.3d at 543……………………………………………………………   15

*Lamoria   v.  Health Care & Retirement Corporation,*
   584 NW2d 589, 592 (1998)……………………………………………...   6

*Laster v. City of Kalamazaoo,*
   746 F.3d 714, 726 (CA 6 Cir, 2014)…………………………………….   8

*Lytle v. Malady (On Rehearing),*
   458 Mich. 153, 172-178, 576 NW2d 906 (1998)………………………   · 8

*Martinez  v. Cracker Barrel Old Country Store, Inc.,*
703 F.3d 911, 915-916 (CA 6 2013)……………………………………..   8

ii.

**CASES**                                                        **PAGE**

*Matsushita Elec. Indus. Co., Ltd  v. Zenith Radio Corp.,*
    475 US 574, 587 (1986)……………………………………….        6

*McDonnell Douglasv. Green,*
    411 US 792, 802 (1973)……………………………………….        7, 8, 15

*Mitchell  v. Vanderbilt Univ.,*
    389 F.3d 177, 183 (CA 6 2004). ……………………………….        9

*Morris  v. Oldham County Fiscal Court,*
    201 F.3d 784, 792 (CA 6 2000)…………………….…………….        15

*Nguyen v. City of Cleveland*
    229 F.3d 559, 562-563 (CA 6 2000). ………………….………….        8, 9

*Scott  v. Goodyear Tire & Rubber Co.,*
    160 F.3d 1121, 1126 (CA 6 1998)…………………………………        13

*Shazor  v. Prof'l Transit Mgmt., Ltd.,*
    744 F.3d 948, 955 (CA 6 2014)……………………………………        7

*Texas Dept of Community  Affairs  v. Burdine*
    450 US 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed 2d 207(1981)…..        7, 11

*Thurman  v. Yellow Freight System, Inc.,*
    90 F.3d 833 (CA 6) 1996…………………………………………..        14

*Univ. of Texas Sw. Med. Ctr.  v. Nassar,*
    133 S.Ct 2517, 2533 (2013)………………………………………..        15

*Vollrath v. Georgia-Pacific Corp.,*
    899 F.2d 533, 534 (CA Cir 1990)…………………………………        6

*Wheeler v. McKinley Enterprises,*
    937 F.2d 1158, 1162 (CA 6, 1991)…………………………………        13

*White v. Baxter Healthcare Corp.,*
    533 F.3d 381, 391 (CA 6 2008)……………………………………        8

*White v. Columbus Metro. Housing Authority*
    429 F.3d 232, 240 (CA 6 2005)……………………………………        8, 9

iii

**CASES**                                                      **PAGE**

*White v. Columbus Metro. Housing Authority*
    429 F.3d 232, 240 (CA 6 2005)............................   8, 9

*60 Ivy Street Corporationv.Alexander,*
    822 F.2d 1432 (CA 6 1987)...................................   7

**STATUTES**

Fed. R.  Civ. P. 56 (c)..............................................   6

MCL 37.2201, et seq., (Elliott-Larsen...........................   14

U.S.C. Section 2000e-2(a), et seq. (Title VII)...................   7, 14

iv.

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

A. WHETHER THE PLAINTIFF HAS A VIABLE CLAIM OF GENDER
DISCRIMINATION UNDER TITLE VII AND ELLIOTT-LARSEN

B. WHETHER THE PLAINTIFF HAS A VIABLE RETALIATION CLAIM
UNDER TITLE VII AND ELLIOTT-LARSEN

v.

## I.      INTRODUCTION

This is a gender discrimination and retaliation case arising out of the Plaintiff's attempt to become a member of the City of Detroit Police Department's Special Response Team ("SRT").

## II.     COUNTER-STATEMENT OF FACTS

## A.      FACTUAL BACKGROUND

Plaintiff, Sherell Stanley, an African-American female, began working for the Detroit Police Department ("DPD") in June, 1996, and currently holds the rank of Lieutenant. **Ex. 2, Plaintiff's Dep. Trans. P. 10-15; Ex. 3, Personnel Information.**During her then 12 year police career, the Plaintiff, for several years, performed the traditional functions of a patrol officer and investigator. *Id.* The Plaintiff was also a high school volleyball, tennis, and stand out basketball player. She was also a scholar basketball player, earning All Academic Big Ten Intercollegiate Athletic Honors while attending the University of Michigan in Ann Arbor, Michigan. **Ex. 4, Basketball Photograph.** Currently, in addition to her responsibilities as a Lieutenant and Officer in Charge of Platoon One of the Sixth Precinct, Lt. Stanley's credentials include, but are not limited to having been certified as a CPR/First Aid Instructor and an Ordnance Officer (weapons inspector). Lt. Stanley has also procured Certificates of Completion for Urban Street Survival Training and Federal Emergency Management Agency (FEMA) Training for Critical Incidents and Terrorist Threats, during which members of SRT were in attendance. Lt. Stanley is also a boys and girls high school, and women's college

1.

basketball official.   In fact, in 2014, Lt. Stanley was the only female to referee a Basketball Final at the Breslin Center in East Lansing in the entire state of Michigan. **Ex. 5, Referee Photographs.** She has been a referee for at least ten (10) years.

**B.     SPECIAL RESPONSE TEAM ("SRT")**

The SRT is an esteemed tactical unit within the DPD and is akin to a "SWAT" operation.   Since its inception in 1987, no woman has actually passed the arbitrary physical criteria for the position. **Ex. 6, July 17, 2008, Email, 12:55 PM.** From February 1993 until March 1994, a female Sergeant was assigned to the SRT. **Ex. 7, EEOC Response Letter, September 14, 1999, Pg. 3.** However, she was strictly relegated to administrative responsibilities for the commanding officer.**Ex. 8, January 13, 2010 Memorandum.** another female officer, was assigned to the SRT from May, 1996 until November, 1999. **Ex. 7,** *supra.*  Again, this second female officer was a clerk for another commanding officer, and was not a tactical operator. **Ex. 8, supra.**

The written criteria for admittance into the SRT requires three (3) years of seniority in a patrol or investigative capacity and the completion of a physical fitness qualification test **Ex. 9, SRT Criteria.**  The physical fitness qualification test consists of a three (3) mile run in 25 minutes, a minimum of sixty (60) sit-ups, a minimum of thirty (30) push-ups, and a minimum of five (5) pull-ups. **(*Id*).**  Candidates must pass each level before going to the next. **(*Id*).** SWAT teams in comparable law enforcement agencies do not have the physical requirements of the Defendant.   For example, the Boston Police Department, which helped capture the Boston Marathon bombers in 2013, has no physical requirements to join SWAT.  New York and St. Louis do not require a three (3)

2.

mile run, and only mandate a portion of the sit-ups, push-ups, and/or pull-ups. **Ex 10,** **Comparable Law Enforcement Agencies.** The Defendant's physical requirements exceed many of those required by even the United States Military and other law enforcement agencies of which it compares itself with documents it provided to the Federal EEOC. The Defendant has admitted that it did not conduct any studies, analysis, or research to develop the criteria used to join the SRT.**Ex. 11, Plaintiff's First Requests** **for Admissions to the Defendant.** The Defendant has admitted that it did not create or adopt any study evaluating the correlation between the successful run time (3) mile in (25) minutes, and the performance of the job tasks of a SRT. *(Id)* .The Defendant has admitted that it conducted no studies, analysis, or research to measure the minimum qualifications necessary for the successful performance of the SRT. **(Id).** The Defendant has also admitted that it conducted no analysis or studies, or research to determine the physical abilities necessary to perform the job as a SRT. *(Id).* The Defendant has also admitted that it conducted no analysis, study, or research to determine that the running of (3) miles in (25) minutes is an accurate measure of the physical or aerobic capacity necessary to perform the job of a SRT. *(Id).*

The written documentation explaining the requirements to become or maintain membership into the SRT is totally different as to what actually takes place. According to former DPD Officer Sgt. Walter Clement, who was assigned to the SRT from 1987 to 1993, a male police officer did not pass the entrance exam but was assigned to the team and given several opportunities to pass. **Ex. 12, Affidavit of Walter Clement.** Another male officer has no significant street experience. *(Id).* Mr. Clement also noted that several

3.

male members of the DPD have participated and/or commanded the SRT team without first having been assigned to it while holding the rank of police officer. *(Id)*. Further, some male members of the DPD have participated and\or commanded the team without having to maintain the physical standards of female candidates to join SRT. *(Id)*. Moreover, being an expert marksman is not a requirement to "try out" for SRT (or at least it has not been for male candidates).   *(Id)*. In fact, Mr. Clement notes that he was not an expert until after he joined SRT. *(Id)*.  It is only after a member makes the team that he is required to qualify as an expert marksman/shooter. *(Id)*.   Equally, male members assigned to the team were allowed to remain on it and simply subject to remedial training if/when they failed to qualify as an expert marksman during firearms qualification; they are given multiple opportunities to qualify if they fail. *(Id)*.   Mr. Clement notes that at one time he failed to physically qualify and failed to qualify as an expert marksman, and was given an opportunity to retry. *(Id)*.   Moreover, male officers assigned to SRT are allowed to remain on the team and simply remediate to pass timed runs. *(Id)*. In terms of the physical criteria necessary to perform the job as a SRT, Mr. Clement notes that he was not required to run three miles to take any suspect into police custody as a member of SRT or while assigned to an other command within the DPD; *(Id)*. Neither was Mr. Clement as a member of SRT, required to repeal down a rope, nor hoist himself on top of any object multiple times while in the performance of his duties on SRT or otherwise. *(Id)*.  Mr. Clement notes that the SRT does not require brawn and the criteria, i.e., 3 mile timed run, pull-ups, push-ups, and sit-ups are not job related. *(Id)*. Mr. Clement also refutes the "heavy equipment" criteria. *(Id)*.

4.

According to the Defendant, the candidate roster is developed from the rank of police officer. However, the written criteria merely requires that the candidate have three (3) years of police experience. There is no provision within the written criteria limiting applicants to the rank of police officer **Ex. 13, Personnel Manual, Selection of (SRT) Personnel.**In fact, the criteria specifically state that any member of the Department, underline the rank of inspector, with a minimum of three (3)years of seniority can request consideration to be on the SRT.  **Ex. 14, Special Order.**The criteria further states that "no officer should be placed in the unit, regardless of rank, until he or she can meet all of the standards", and that "failure to achieve a minimal level of proficiency will be cause for the applicant's removal and return to the unit of origin".**Ex. 9 ,14 _supra._** However, as noted by former officer Clement, this contention is untrue.  At least one male officer was placed on SRT without passing the fitness test and other officers were allowed to remain on SRT when they were not physically fit to be in the unit. **Ex. 12, supra.**

### C. PLAINTIFF'S ATTEMPT TO OBTAIN AN SRT POSITION

On July 16, 2008, a teletype was posted announcing that the SRT was updating its candidate roster and indicating that "**Any** department member wishing to participate in this physical fitness qualification" should submit a blue slip requesting a tryout to Lt. Hampton, who was the SRT Commanding Officer. **Ex. 15, July 16, 2008 Teletype.(emphasis added).** The physical agility test was scheduled for August 11, 2008. (**_Id_**). Interestingly, on October 30, 2008, the same teletype was later altered to indicate that "Any Department member **holding the rank of Police Officer**" wishing to

5.

participate in this…" (**Ex. 16, October 30, 2008 Teletype**).The reason this teletype was changed was to support the Defendant's earlier pre-textual argument that the SRT does not allow for supervisors to test to be placed on the candidate roster. **Ex. 8,** *supra.*

On July 17, 2008, the Plaintiff emailed Lt. Hampton inquiring about the fact the thatno female in the history of the SRT passed the qualifications for the admittance into the SRT. **Ex. 17, July 17, 2008, Email, 1:34 P.M.** In that email, Lt. Hampton confirms the Plaintiff's inquiry about no women passing the physical agility test, and Lt. Hampton told the Plaintiff to come and try out. *Id.* Due to a scheduling conflict for August 11, 2008, the Plaintiff was allowed to take the physical agility test on September 25, 2008. **Ex. 18, July 28, 2008, Email, 7:23 PM.** However, about six weeks before taking the test, the Plaintiff was informed by Sgt. Sheppard, a supervising member of SRT, that her best would not be enough and that although she hired a personal trainer it would not matter

5. either because the tryout was so different. **Ex. 19, August 12, 2008, Email, 2:48 PM.**

Prior to taking the agility test, the Plaintiff was cleared to take the physical examination by the Defendant's Medical Department. **Ex. 20, Medical Clearance.** The Deputy Chief, of the Plaintiff's Fiscal Management Bureau, reviewed the July 16, 2008 teletype and concluded that the Plaintiff met the minimum qualifications to be included in the physical fitness tryout for SRT. **Ex. 22, July 24, 2008 Memo.**On September 25, 2008, Plaintiff ran and **completed** the 3 mile run in 32 minutes and 40 seconds **Ex. 21, September 25, 2008, Tryout Times.** The Plaintiff did not "quit" the run as alleged by the Defendant. **Ex. 23, Videotape.**

On July 20, 2009, the Plaintiff filed an EEOC complaint against the Defendant for

6.

gender discrimination relative to the SRT qualifying process and a retaliation charge based upon the Defendant's handling of the Plaintiff's promotion to Lieutenant and other retaliatory actions, i.e. denying her request to be paid out of class pay. **Ex. 24.   EEOC Complaint.**  The EEOC concluded that there was reasonable cause to believe that the Defendant discriminated against the Plaintiff due to her gender as it relates to the physical agility test and tried to conciliate the dispute.  **Ex. 25, EEOC's Determination and Conciliation Agreement.** The Defendant rejected the EEOC's recommendation and thus, this present litigation ensued.  **Ex. 26, Plaintiff's First Amended Complaint.**

### III.   STANDARD OF REVIEW

The standard for determining an appropriate summary judgment, under Fed. R. Civ. P. 56 (c), is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Amway Distributors Benefits Assn. v. Northfield Ins. Co.,* 323 F.3d 386, 390 (CA 6 2003) (quoting) *Anderson v. Liberty Lobby, Inc.,* 477 US 242, 252-253 (1986). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus., Co., Ltd. v. Zenith Radio Corp.* 475 US 574, 587 (1986); *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432 (CA 6 1987). A material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party.  *Vollrath v. Georgia-Pacific Corp.,* 899 F.2d 533, 534 (CA Cir 1990).  The court is not respectfully required or permitted, however, to judge the evidence or make findings of fact. *Id.,* at 1435-36. *The moving party has the burden of showing conclusively that no genuine*

7.

_issues of material fact exists._Id., at 1535.  Additionally, granting a summary dismissal is especially suspect where motive and intent are at issue, or where the credibility of a witness or deponent is crucial.  _Lamoria  v. Health Care & Retirement Corporation,_  584 NW2d 589, 592 (1998).  Note that Lt. Kross could have potentially been propelled into an executive position for her testimony where (retired) Mr. Clement had and has nothing to gain.

## IV.   LEGAL ARGUMENTS

### A.   THE PLAINTIFF HAS A VIABLE GENDER DISCRIMINATION CLAIM UNDER TITLE VII AND ELLIOTT-LARSEN

Under Title VII it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  USC Section 2000e-2(a).  A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination or be proving by inferential and circumstantial evidence that will support an inference of discrimination._Shazor  v. Prof'l Transit Mgmt., Ltd.,_  744 F.3d 948, 955 (CA 6 2014).  If the claim is based on circumstantial evidence, the court employs the burden shifting framework set forth in _McDonnell Douglas Corp.  v. Green,_  411 US 792 (1973).  _See also, TexasDept of Community   Affairs   v. Burdine_450 US 248 (1981) (clarifying the_McDonnell Douglas_ burden-shifting framework).    Under  _McDonnell  Douglas,_ Plaintiff bears the initial burden of establishing a _prima facie_ case of discrimination. _Laster v. City of Kalamazoo,_746 F.3d 714, 726 (CA 6 Cir, 2014); _White v. Baxter Healthcare Corp.,_ 533 F.3d 381, 391 (CA 6 2008).

8.

### 1. *Prima Facie Case*

Under the traditional McDonnell-Douglas burden shifting framework, the Plaintiff must state a *prima facie* case of discrimination by showing that (1) she…is a member of a protected class; (2) she… is qualified for the position; (3) she…suffered an adverse employment action and (4) the circumstances indicate that race or sex played a role in the adverse employment action or that Plaintiff was treated differently than those outside the protected class. *Martinez v. Cracker Barrel Old Country Store, Inc.,* 703 F.3d 911, 915-916 (CA 6 2013); These are the same elements under Elliott-Larsen. *Hazle v. Ford Motor Co.,* 464 Mich. 456 (2001); *Lytle v. Malady (On Rehearing),* 458 Mich. 153, 172-178, 576 NW2d 906 (1998). In a failure to promote employment discrimination case, the Sixth Circuit has modified the elements of the test to fit the specific context. *White v. Columbus Metro. Housing Authority,* 429 F.3d 232, 240 (CA 6 2005) , citing *Nguyen v City of Cleveland,* 229 F.3d 559, 562-563 (CA 6 2000).

Defendant cannot dispute that the Plaintiff suffered an adverse employment action By not becoming a member of the esteemed SRT. The failure to promote a qualified candidate may constitute an adverse employment action under Title VII. *Nguyen v. City of Cleveland,* 229 F.3d 559, 562 (CA 6 2000). *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (CA 1999). Evidence that a position is a promotion includes increase salary, changed responsibilities, *a more distinguished title,* and additional benefits. *Mitchell v. Vanderbilt Univ.,* 389 F.3d 177, 183 (CA 6 2004), (emphasis added). Not only does the Defendant tout the SRT as a elite unit, Inspector Charles Wilson, testified at his deposition that from a departmental standpoint the SRT was considered a highly

9.

specialized and elite unit and that it was highly recognized in the country. **Ex. 27, Dep. Tran. of Insp. Wilson, p. 12-13.** Inspector Wilson also noted that the SRT was a highly esteemed unit and was highly sought by officers. *Id.*

To establish a *prima facie* case of discrimination based on failure to promote under *Nguyen,* Plaintiff must show, by a preponderance of the evidence, that: 1) she is a member of a protected class; 2) she applied for and was qualified for a promotion; 3) she was considered for and was denied that promotion; and 4) an individual of similar qualification who was not a member of the protected class received the job at the time Plaintiff's request for the promotion was denied. *Nguyen,* 229 F.3d at 562-63; *See also White, 429 F.3d at 24.*

## A.     Member of a Protected Class

There is no dispute that the Plaintiff, a female, is a member of a protected class. Comparable male employees were afforded more favorable treatment than the Plaintiff when they became members of the SRT.

## b.     Applied for and Qualified for the Position/Considered and Denied

The Plaintiff was qualified for the SRT position, which is established by the fact that she met the criteria for the job.  Specifically, she has the requisite three (3) years of police officer experience, and she passed the medical examination in order to take the examination, and she completed the run portion of the physical agility test that has no relationship to the functions of the position.  The Plaintiff was denied entry into the SRT based upon the arbitrary criteria established by the Defendant.The Defendant has conceded that the SRT criteria have not been quantified or correlated with the actual

10.

functions of the job. Mr. Clement confirms the lack of corroboration between the actual functions of the SRT and its selection criteria. Moreover, the Defendant's lack of uniformity in applying its written selection criteria to its SRT undermines the Defendant's argument that running the three (3) mile run is an automatic disqualification. Moreover, the Defendant's SRT criteria are inconsistent with SWAT criteria across the country.

**c.       Favorable Treatment**

As noted by Mr. Clements, at least one male officer was placed on the SRT despite not passing the entry requirement. **Ex. 12,** *supra.* Such officer was simply assigned to the team and allowed other opportunities to pass the entry requirements. **(Id).** More importantly, in terms of a comparable employee, male officer, Sgt. Anthony Potts, is mysteriously placed as a SRT member in 2008 with no record of taking the physical agility test in 2008. Specifically, the November, 2007 SRT manpower list identifies those officers who were members of SRT as of November, 2007. **Ex. 28,SRT Manpower November, 2007.** Sgt. Anthony Potts in not on this list.**(Id).** The August, 2008 SRT manpower list identifies those officers who were members of SRT as of August, 2008. **Ex. 29, SRT Manpower August, 2008.** Sgt. Anthony Potts is not on this list.**(Id).** However, the 2009 SRT list contains the name of Sgt. Anthony Potts. **Ex. 30, SRT Roster 2009.**Moreover, in terms of applicants trying out for SRT by participating in the physical agility test, Sgt. Anthony Potts is not on the August 11, 2008 try out list, the September 25, 2008 try out list, nor the December 5, 2008 try out list. **Ex. 21,** *supra,***August 11, 2008, Try Outs; Ex. 31, September 25, 2008, Try Outs;Ex. 32,**

11.

**December 5, 2008, Try Outs.** According to the Defendant, as of February 24, 2010 there were no fitness tests given after December 5, 2008, **Ex. 33, February 24, 2010 Response to EEOC.** Thus, either Mr. Potts was simply placed into SRT without taking the physical agility test or placed in the SRT without re-taking the physical agility test.Either way Mr. Potts was given more favorable treatment than the Plaintiff during the same relevant time period.Furthermore, Mr. Potts was a Sergeant in 2008. Thus, his rank undermines the Defendant contention that only police officers can be placed into SRT. Clearly, this is evidence that a male officer was given more favorable treatment than the Plaintiff. This creates at least a genuine issue of fact regarding comparability and the entire selection process. The Plaintiff has established a *prima facie* case of gender discrimination.

2.    **Legitimate, Nondiscriminatory Reasons**

Once the Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production shifts to Defendant to "articulate some legitimate, non-discriminatory reason" for its actions. *Texas Dept. of Community Affairs v. Burdine,* 450 US 248, 253 (1981).

The Defendant set forth two arguments that are best understood as providing a purported legitimate reason for not selecting the Plaintiff. The first has to do with the allegedly objective examination process itself and that allegedly the Plaintiff did not pass running portion of the examination because she did not complete the run in 25 minutes or less and quit. The Defendant also asserts hat the Plaintiff was not an expert marksman at the time of taking the physical agility test.

12.

As noted by the Defendant, the determination of whether a physical fitness test is job-related and consistent with business necessity is evaluated by whether the test bears a manifest relationship to the job. *Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971).* Concomitantly, the focus is whether there is a relationship between the test and the duties of the job.

In terms of the "objective" examination process, the Defendant has conceded that it conducted no studies or research to develop the criteria for the SRT or to correlate the criteria with the actual functions of the job. Thus, the Defendant cannot support an assertion that their arbitrary fitness criteria was designed to ensure that the members could successfully carry out the duties of the SRT officer. Thus, running three miles in less than 25 minutes is not indicative of probable success, especially considering that male officers have been placed or maintained a position in the SRT without taking the physical agility test or failing the physical agility test and still remaining on SRT. **Ex. 12, supra.** The fact that one female officer (Kristy Kross) passed the running portion of the test in 1990, is not dispositive, considering that Ms. Kross, in 1990, was a avid runner in 1990 and participated in 5K events. **Ex. 34, Dep. Trans. Kristy Kross, p. 19-20.**

Additionally, Ms. Kross failed the next portion of the physical agility test, which were the pull-ups. **Id.,p. 8.** Again, there was no relationship between the criteria and the functions of the SRT. Although, Ms. Kross did not challenge the process or feel the process was gender bias, she did not know that the process was not correlated to the actual functions of the job. Ms. Kross did not know that other males, during that time according to Mr. Clement, did not even take the physical fitness exam.

13.

### 3.   Pretext

Even if the Defendant produced evidence of purported legitimate reasons for the creation and implementation of the SRT, the Plaintiff has raised a genuine dispute of fact as to whether the stated reasons are pretextual.  A Plaintiff may establish that a proffered reason is a mere pretext by showing that (1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; or 3) the stated reason was insufficient to explain Defendant's action. *Scott  v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (CA 6 1998); *Wheeler v. McKinley Enterprises,* 937 F.2d 1158, 1162 (CA 6, 1991).   The pretext inquiry considers whether a legitimate reason offered by the Defendant was not its true reasons, but were a pretext for discrimination. *Burdine*, *supra,* 450 US at 253.

Many statements proffered by the Defendant regarding the admission criteria for The SRT are false, For example, in its response to the EEOC, the Defendant stated that:

> for the past twenty two (22) years, SRT has only conducted testing for police officer candidates.  Tactical supervisors are promoted from within the unit due to the need of tactical knowledge and experience achieved as a tactical operator from the required 640+ hours of training and certifications. **Ex. 35, January 15, 2010 correspondence; See also Ex. 36, January 13, 2010, interoffice Memo.**

However, this statement is inconsistent with the statement of Mr. Clement, who notesthat several male members of the DPD have participated and/or commanded the SRT team without first having been assigned to it while holding the rank of police officer. **Ex. 12, *supra,* para. 5.**  It is also false that the Plaintiff was taking the physical agility test for "experience purposes only".  Like her male counterparts, the Plaintiff went through the normal prequalification process to qualify to take the physical agility test.  Specifically, she obtained the requisite medical clearance, and her supervisor, Deputy

14.

Chief John Clark, signed off that the Plaintiff met the written requirements to take the physical agility test. **See Ex. 19 and 20** *supra.* Moreover, when the Plaintiff inquired about the lack of females in the SRT and expressed her intent in trying out, Lt. Randall of SRT told the Plaintiff to "come and try out." **Ex. 16,** *supra.* It is also false that being a expert marksman/shooter is a pre-condition for trying out for the SRT. Mr. Clement noted that he was not an expert when he joined the team and that only after making the team was he required to become an expert marksman\shooter. **Ex. 12,** *supra,* **para. 7.** Thus, the fact that the Plaintiff became an expert marksman/shooter later is not dispositive and does not equate to a disqualification for consideration into the SRT. Further, Plaintiff did not quit running as alleged by the Defendant which is evident in the video of the event recorded by the Defendant.

In *Asmo v. Keane, Inc.,* 471F.3d 588 (CA 6, 2006) it was noted that a Plaintiff, in surviving a motion for summary judgment, need not show that all factors articulated by the Defendant are false, but rather, only that some of the factors are false and mere pretext for discrimination. Moreover, an employer's changing rationale for making an adverse employment decision can be evidence of pretext. *Thurman   v. Yellow Freight System, Inc.,* 90 F.3d 833 (CA 6) 1996. Here the inconsistencies in the Defendant's stated reasons for eliminating the Plaintiff from the SRT is probative of pretext.

### B.   PLAINTIFF'S HAS A VIABLE RETALIATION CLAIM UNDER TITLE VII AND ELLIOTT-LARSEN

Title VII and Elliott-Larsen prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII or Elliott-Larsen. 42 USC 2000e-3(a). MCLA 23.2201, *et seq.* As with both a Title VII and Elliott-Larsen

15.

discrimination claim, a retaliation claim can be established either by introducing direct evidence of retaliation or be proffering circumstantial that would support an inference of retaliation. _Imwalle v. Reliance Medical Products,_515 F.3d at 54; _Barrett v. Kirtland Community College,_ 245 MA 306, 628 NW2d 63 (2001).   In terms of circumstantial evidence, the Plaintiff's claim is analyzed under the burden-shifting framework of _McDonnell Douglas,_ 411 US 792, _Id.,_ at 544.

To establish a _prima facie_ of retaliation under Title VII or Elliott-Larsen, the Plaintiff must demonstrate that 1) she engaged in activity protected by Title VII; 2) the Defendant knew that Plaintiff engaged in the protected activity; 3) Defendant took an action that was materially adverse to Plaintiff, (alternatively, Plaintiff may show that she "was subjected to severe or pervasive retaliatory, or other discrimination–based, harassment by a supervisor." _Morris v. Oldham County Fiscal Court,_ 201 F.3d 784, 792 (CA 6 2000)., and 4) a causal connection existed between the protected activity and materially adverse action. _Laster,supra,_ 746 F.3d at 730.;_Barrett_, _supra._   Retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." _Univ. of Texas Sw. Med. Ctr. v. Nassar,_ 133 S.Ct 2517, 2533 (2013).

The Plaintiff was engaged in protected activity by filing an EEOC complaint on July 20, 2009. **Ex. 23, _supra._**The Plaintiff was also engaged in protected activity when she filed a sexual harassment complaint against a co-worker in 2008. **Ex. 37, Plaintiff's Sexual Harassment Complaint.** Subsequent to filing these complaints, the Plaintiff,

16.

than a Sergeant, requested to be paid "Out of Class" pay for an assignment that previously was performed by two different Lieutenants. Although the request to be paid out of class pay had been approved by the Deputy Chief and was to be made retroactive to September 1, 2008, Defendant, i.e,, the Chief's office, still refused to pay the Plaintiff for working in an elevated job function.  **Ex. 38, November 10, 2010 memo from Benjamin Lee.** After Plaintiff filed her EEOC complaint, the Defendant also placed the previous sexual harasser back into the Plaintiff's bureau, even though the complaint levied against the harasser was sustained and an agreement to transfer the offender out of the Bureau previously. **Ex. 2,** *supra;* **see also Ex. 37,** *supra.*

In terms of further retaliatory actions, it should be noted that during the time of the Plaintiff 's filing of her July 20, 2009 EEOC complaint and subsequent investigation of this complaint, the Plaintiff was still in the mist of an administrative grievance and appeal process regarding the Plaintiff's scoring on the 2004 Lieutenant's examination. Specifically, although the Plaintiff had scored number one on the written examination, she was subsequently ranked lower on the final list due subjectively in the oral board process.**Ex. 2,** *supra,* **Plaintiff's Dep. Trans. P. 31-43.** The Plaintiff administratively appealed the results of the 2004 Lieutenant's examination issue and won the arbitration in 2008.**Ex. 2,** *supra,* **Plaintiff's Dep. Trans. P. 31-43.** However, due to the Plaintiff's EEOC complaint involving SRT, the arbitration award in favor of Plaintiff was not applied retroactively. **Plaintiff's Dep. Trans. p. 31-43.** Moreover, the Defendant delayed the Plaintiff's arbitration for four (4) years so that the Plaintiff was compelled to take another Lieutenant's examination in 2008. *Id.* The Defendant further retaliated against

17.

the Plaintiff when they would not release the results of the 2008 scores to the Plaintiff, like they had for every other candidate who took the exam in 2008, unless she withdrew her grievance/EEOC Complaint, which ultimately became part of present litigation. Note too that it was not until Arbitrator Thomas L. Gravelle directed that Plaintiff's 2008 score be provided to her in his decision dated November 2009, that Defendant did so. Hence, the reason is not one, but two Eligible Registers for the Rank of Lieutenant; the second with Plaintiff's adjusted score is dated June 25, 2010. Finally, after being compelled to promote Plaintiff in 2010, she was abruptly transferred from the day shift at the Management Services Bureau to the Tenth Precinct and is now on the midnight shift at the Sixth Precinct. *Id; See also,* **Ex. 39, Eligible Register for the Rank of Lieutenant.**

In terms of the requisite notice of the Plaintiff's protected activity, Inspector Charles Wilson testified that all EEO complaints and concomitant conclusions and recommendations involving the police department are eventually reviewed in the Chief's office. **(Ex. 26, *supra*. p. 26-27).** Temporal proximity can support the causation element in a retaliation claim. See ***Laster,*** supra. The failure to pay the Plaintiff overtime pay, the Plaintiff's grievance regarding the results of the 2004 and 2008 Lieutenant examination, and the Plaintiff's sexual harassment charges against a co-worker, all occurred and/or were pending during the time that the Plaintiff's EEOC investigation was pending, and during the time that the Defendant was responding to the EEOC complaint in either responses or providing requested documentation. It is a

18.

question of fact for the jury to determine whether any of the aforementioned events were adverse and whether there was causation to the Plaintiff's EEOC and sexual harassment allegations.    The Defendant has no reasonable explanation for having taken the aforementioned materially adverse actions against Plaintiff.

## V.    CONCLUSION AND REQUEST FOR RELIEF

As a matter of law, there are simply too many contested facts for a summary dismissal of this case.  The requirements of the Defendant's SRT are inconsistent with SWAT teams across the county, **Ex. 10,** *supra.*  They are also inconsistent with even the US Military requirements, as well as other law enforcement agencies to which the Defendant compares itself.**Exhibits 40 U.S. Marines Requirements; Ex. 41, Grand Rapid Police Department SRT; Ex. 42, Michigan Department State Police Physical Fitness Test for Emergency Support Team.** Under the applicable summary judgment standard, the Plaintiff is entitled to jury adjudication of this dispute.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion for Summary Judgment in its entirety Plaintiff's and allow this matter to proceed.

/s/Lance W. Mason
Lance W. Mason (P43926)
615 Griswold, Suite 901
Detroit, Michigan 48226-3894

19.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERELL S. STANLEY

      Plaintiff,

v.                     CASE NUMBER: 2:11-CV-12365-AJT-MKM
                             HONORABLE ARTHUR J. TARNOW

CITY OF DETROIT
a Municipal Corporation,
      Defendant.

| **LANCE W. MASON, P.C.** | JUNE C. ADAMS (P43283) |
|---|---|
| Lance W. Mason (P43926) | **CITY OF DETROIT LAW DEPARTMENT** |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 615 Griswold, Suite 901 | Two Woodward Avenue, Suite 500 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| (313) 967-9016 [office] | (313) 237-0540 [office} |
| (313) 964-4789 (facsimile) | (313) 224-5505 (facsimile) |
| lancewmason@yahoo.com | adamsj@detroitmi.gov |

## CERTIFICATE OF SERVICE

      Lance W. Mason, being duly sworn, deposes and says that on March 31, 2015,

he served a copy of the foregoing, **Plaintiff's Answer to the Defendant's Motion**

**for Summary Judgment, Plaintiff's Brief in Support of Its Answer to the**

**Defendant's Motion for Summary Judgment,** and **Proof of Service,** to be served

upon:

                         June C. Adams, Esquire
                         660 Woodward Avenue, Suite 1650
                         Detroit, Michigan 48226
                         adamj@detroitmi.gov

by having this court forward it by electronic mail this 31st day of March, 2015.

                         /s/ Lance W. Mason
                         Lance W. Mason (P43926)
                         615 Griswold, Suite 901
                         Detroit, Michigan 48226
                         (313) 967-9016

| UNITED STATES BANKRUPTCY COURT  Eastern District of Michigan | CHAPTER 9 |
| --- | --- |
| | **PROOF OF CLAIM** |

| Name of Debtor:  City of Detroit, Michigan | Case Number:  13-53846 |
| --- | --- |

FILED

2014 MAR 19 P 4: 19

U.S. BANKRUPTCY COURT
E.D. MICHIGAN-DETROIT

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
U.S. Equal Employment Opportunity Commission

**COURT USE ONLY**

Name and address where notices should be sent:
Dale Price, Trial Attorney
477 Michigan Avenue, Room 865
Detroit, Michigan 48226

Telephone number: (313) 226-7808   email: dale.price@eeoc.gov

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):
Sherell S. Stanley
P. O. Box 321032
Detroit, MI 48232

Telephone number: (313) 570-2012   email: S.S.Stanley@comcast.net

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

RECEIVED

MAR 2 4 2014

KURTZMAN CARSON CONSULTANTS

**1. Amount of Claim as of Date Case Filed:** $          135,006.55

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Discrimination based on sex (female) and Retaliation_____
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** | **3a. Debtor may have scheduled account as:**  _____  (See instruction #3a) | **3b. Uniform Claim Identifier (optional):**  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _  (See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Nature of property or right of setoff:** ☐Real Estate  ☐Motor Vehicle  ☐Other
Describe:

Basis for perfection: _____

**Value of Property:** $_____

**Amount of Secured Claim:** $_____

**Annual Interest Rate_____%** ☐Fixed  or  ☐Variable
(when case was filed)

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$          12,475.00

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of mak:



1353846140319000000000028

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

RECEIVED

MAR 2 4 2014

KURTZMAN CARSON CONSULTANTS

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Dale Price
Title:  Trial Attorney
Company:  Equal Employment Opportunity Commission
Address and telephone number (if different from notice address above):

*(Signature)*  03/18/2014   *(Date)*

Telephone number:                email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 471-2014-00163 |

| | |
|---|---|
| **Michigan Department Of Civil Rights** | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Sherell S. Stanley** | **(313) 570-2012** | ▓▓▓▓▓ |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 321032, Detroit, MI 48232** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **CITY OF DETROIT, DETROIT POLICE DEPARTMENT** | **500 or More** | **(313) 596-5600** |

| Street Address | City, State and ZIP Code |
|---|---|
| **11450 Warwick, Detroit, MI 48228** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

*(handwritten stamp: NOV -8 2013 EEOC)*

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | Earliest **10-24-2012** Latest **10-08-2013** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION | |
| ☐ OTHER (Specify) | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working for the above named employer on 6/24/96. I am currently employed as a Lieutenant at the 6th Precinct, Platoon One/Midnight Shift.

Since the fall of 2012, through November 2013, I have been retaliated against and subject to different terms and conditions of employment as compared to male supervisors due to my sex (female), both in violation of Title VII.

Specifically, I have been required to procure authorization in advance of working prescheduled overtime; my request to split my 2013 summer furlough was denied twice, supposedly due to overlapping with another sergeants,' which was not true; I was assigned more officers and responsibilities with less supervisory personnel than Platoons Two or Three, placing me at a disadvantage in completing assignments in a timely manner and subjecting me to disciplinary action (scheduled for six (6) disciplinary Trial Boards); I have been required to combine my monthly mobilization report and SOC sheet, following a specific format, not required of any male supervisor to procure approval of those particular monthly reports; I have been required to include an extra cover

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | *signature* 11-07-13 |
| 11-07-13  *signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) 11-7-2013 |
| Date   Charging Party Signature | HEATHER DEHART
Notary Public, Wayne County, MI
Acting In _____ County
My Commission Expires September 22, 2014 |

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 471-2014-00163 |

| **Michigan Department Of Civil Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*

memorandum in addition to the cover-memos already included within my package of Quarterly Equipment Inspection reports not mandated per Department policy or of any male supervisor; my authority as lieutenant has been constantly undermined by the Inspector. Lastly, I was retaliated against by being disciplined for complaining of inequities due to my gender. Males were not subject to the same treatment under the above mentioned same/similar circumstances.

I have been subjected to different terms/conditions of employment due to my sex (female) and in retaliation for filing previous charges of discrimination and for filing internal complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures

I declare under penalty of perjury that the above is true and correct

11-07-13                  *[signature]*
Date          Charging Party Signature

NOTARY – *When necessary for State and Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

*[signature]*                  11-07-13

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year) 11-7-2013

HEATHER DEHART
Notary Public, Wayne County, MI
Acting in _____ County
My Commission Expires September 22, 2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RECEIVED

MAR 1 9 2014

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:                              )
                                    )
                                    ) Chapter 9
CITY OF DETROIT,                    )
                                    ) Case No. 13-53846
                                    )
        Debtor.                     ) Hon. Steven W. Rhodes
                                    )
                                    ) GOVERNMENTAL BAR DATE
_____) CLAIM

## MEMORANDUM IN SUPPORT OF
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S
## <u>CONSOLIDATED PROOF OF CLAIM</u>

1.      The undersigned United States Equal Employment Opportunity
Commission ("Commission" or "EEOC") is the claimant herein.  The EEOC's
address is 477 Michigan Avenue, Room 865, Detroit, Michigan 48226.  The
Commission is the agency of the United States Government charged with the
interpretation and enforcement of, as relevant here, Title VII of the Civil Rights Act
of 1964 (Title VII), *as amended*, 42 U.S.C. § 2000e, *et seq.*; Title I of the Civil
Rights Act of 1991 (Title I), 42 U.S.C. § 1981a, *et seq.*; and Title I of the Americans
with Disabilities Act of 1990 (ADA), *as amended*, 42 U.S.C. § 12101, *et seq.*

2.      The Commission's undersigned Trial Attorney is an employee
authorized to file this Consolidated Proof of Claim and Memorandum in Support of
EEOC's Consolidated Proof of Claim on behalf of the EEOC.

3.      The Commission's Detroit Field Office is filing this Consolidated Proof

1

of Claim covering nine (9) Charges of employment discrimination, or sub-claims, for which monetary relief is sought.

4.  As specified on EEOC's Consolidated Proof of Claim, the Debtor, prior to the filing of the petition initiating this case became liable to this claimant for unsecured claims presently valued at $1,374,635. In support of EEOC's Consolidated Proof of Claim, EEOC has attached a copy of each of the Charges of Employment Discrimination in Exhibit 1.

5.  The proofs of claim are attached as Exhibit 2.

6.  If, upon completion of EEOC's investigation, EEOC determines that there is reasonable cause to believe the charges are true, Debtor will become liable for backpay, compensatory damages, punitive damages and interest to remedy unlawful discrimination as set forth in the sub-claims detailed below:

### Sub-Claim Re: Charge No. 471-2013-00912; **Colleen Davenport**

7.  Charging Party alleges that on December 10, 2012, the City of Detroit discharged her from her employment because of her pregnancy in violation of Title VII and failed to pay this Charging Party wages or salaries.

8.  No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

9.  This sub-claim consists of an unsecured claim of $217,047.41 in back pay, compensatory and punitive damages accrued from December 10, 2012 through July 18, 2013.

10.  No judgment has been rendered on this sub-claim.

11.  The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

2

12.  This sub-claim is not subject to any setoff or counterclaim.

### Sub-Claim Re: Charge No. 471-2013-03599; **Jerry D. Patrick**

13.  Charging Party alleges that since December 6, 2012, the City of Detroit has discriminated against him in his employment because of his association with a person with disabilities in violation of the ADA and failed to pay him wages or salaries.

14.  No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

15.  This sub-claim consists of an unsecured claim of $101,867.00 in back pay, compensatory and punitive damages accrued from December 6, 2012 through July 18, 2013.

16.  No judgment has been rendered on this sub-claim.

17.  The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

18.  This sub-claim is not subject to any setoff or counterclaim.

### Sub-Claim Re: Charge No. 471-2013-03183; **Joseph Fletcher**

19.  Charging Party alleges that since April 2012, the City of Detroit has discriminated against him in his employment because of his race and his complaints about race discrimination in violation of Title VII and failed to pay him wages or salary.

20.  No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

21.  This sub-claim consists of an unsecured claim of $68,133.90 in back

3

pay, compensatory and punitive damages accrued from April 2012 through July 18, 2013.

22.     No judgment has been rendered on this sub-claim.

23.     The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

24.     This sub-claim is not subject to any setoff or counterclaim.


Sub-Claim Re: Charge No. 471-2013-01577; **Khadijah Ahmad**

25.     Charging Party alleges that since October 2010, the City of Detroit has discriminated against her in her employment because of her sex and her complaints about sexual harassment in violation of Title VII, including discharging her on January 16, 2013 and failed to pay her wages or salaries.

26.     No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

27.     This sub-claim consists of an unsecured claim of $220,062.67 in back pay, compensatory and punitive damages accrued from October 2010 through July 18, 2013.

28.     No judgment has been rendered on this sub-claim.

29.     The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

30.     This sub-claim is not subject to any setoff or counterclaim.


Sub-Claim Re: Charge No. 471-2013-00823; **Kim Spicer**

31.     Charging Party alleges that since August 22, 2012, the City of Detroit has discriminated against him in his employment because of his race and his

4

complaints about racial discrimination in violation of Title VII, and failed to pay him wages or salaries.

32.    No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

33.    This sub-claim consists of an unsecured claim of $204,272.75 in back pay, compensatory and punitive damages accrued from August 22 through July 18, 2013.

34.    No judgment has been rendered on this sub-claim.

35.    The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

36.    This sub-claim is not subject to any setoff or counterclaim.

### Sub-Claim Re: Charge No. 471-2013-02956; **Major Russell**

37.    Charging Party alleges that since August 22, 2012, the City of Detroit has discriminated against him in his employment because of his race and his complaints about racial discrimination in violation of Title VII, and failed to pay him wages or salaries.

38.    No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

39.    This sub-claim consists of an unsecured claim of $100,000 in compensatory and punitive damages accrued from August 22 through July 18, 2013.

40.    No judgment has been rendered on this sub-claim.

41.    The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

42.    This sub-claim is not subject to any setoff or counterclaim.

### Sub-Claim Re: Charge No. 471-2013-02967; **Shannon Dekun**

43.     Charging Party alleges that since July 7, 2013, the City of Detroit has discriminated against her in her employment because of her sex in violation of Title VII, and failed to pay her damages.

44.     No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

45.     This sub-claim consists of an unsecured claim of $200,000 in compensatory and punitive damages accrued from July 7 through July 18, 2013.

46.     No judgment has been rendered on this sub-claim.

47.     The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

48.     This sub-claim is not subject to any setoff or counterclaim.


### Sub-Claim Re: Charge No. 471-2014-00163; **Sherell S. Stanley**

49.     Charging Party alleges that since October 24, 2012, the City of Detroit has discriminated against her in her employment because of her sex and because of her complaints about sexual discrimination in violation of Title VII, and failed to pay her wages or salaries.

50.     No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

51.     This sub-claim consists of an unsecured claim of $135,006.55 in backpay, compensatory and punitive damages accrued from October 24, 2012 through July 18, 2013.

52.     No judgment has been rendered on this sub-claim.

6

53. The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

54. This sub-claim is not subject to any setoff or counterclaim.

### Sub-Claim Re: Charge No. 471-2014-00473; **Tammy Barnes**

55. Charging Party alleges that since November 2011, the City of Detroit has discriminated against her in her employment because of her sex in violation of Title VII, and failed to pay this Charging Party wages or salaries.

56. No Determination has been made regarding this Charge and the EEOC's investigation is continuing.

57. This sub-claim consists of an unsecured claim of $128,244.80 in backpay, compensatory and punitive damages accrued from October 24, 2012 through July 18, 2013.

58. No judgment has been rendered on this sub-claim.

59. The amount of all payments on this sub-claim has been credited and deducted for the purpose of making this sub-claim.

60. This sub-claim is not subject to any setoff or counterclaim.

PENALTY FOR PRESENTING FRAUDULENT CLAIM. Fine of up to $500,000 or imprisonment for not more than 5 years, or both. 18 U.S.C. Sections 152 and 3571.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Dated: March 19, 2014

_/s/ Dale Price_
Dale Price (P55578)
Trial Attorney
DETROIT FIELD OFFICE
477 Michigan Ave., Room 865
Detroit, Michigan 48226
(313) 226-7808
dale.price@eeoc.gov

8



**EMERGENCY MANAGER
CITY OF DETROIT**

May 5, 2014

**To the Holders of Pension Claims and/or OPEB Claims in Classes 10, 11 and 12 under the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit*:**

As a holder of a claim against the City of Detroit (the "City") respecting pension benefits and/or retiree healthcare benefits, you have an opportunity to vote on the City's plan to adjust its pension and retiree healthcare obligations. The City is soliciting your acceptance of the *Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (May 5, 2014)* (as it may be amended, modified or supplemented, the "Plan"). Accordingly, please find enclosed the following materials:

(a) a plain language summary (the "Plain Language Summary") of information about your pension and/or retiree healthcare benefits and how your pension and/or retiree healthcare benefits will be affected by the Plan. This Plain Language Summary is provided to assist you with casting your vote on whether to accept the Plan;

(b) a notice that, among other things, contains information regarding the hearing to consider confirmation of the Plan, to be held before the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court");

(c) a CD-ROM containing:

(1) the Plan itself and all exhibits thereto that have been filed with the Bankruptcy Court to date; and

(2) the related *Fourth Amended Disclosure Statement with Respect to Fourth Amended Plan for the Adjustment of Debts of the City of Detroit* (as it may be amended, modified or supplemented, the "Disclosure Statement"), which was approved by the Bankruptcy Court pursuant to an order dated May 5, 2014 and all exhibits thereto that have been filed with the Bankruptcy Court to date;

(d) a ballot for voting on the Plan and a ballot return envelope;

(e) a copy of certain rules that govern how your vote on the Plan will be tabulated, which rules were approved by the Court by order entered on May 5, 2014 (the "<u>Supplemental Solicitation Procedures Order</u>"); and

(f) letters from some or all of the following parties, and possibly from other parties:  the Police and Fire Retirement System, the General Retirement System and the Retired Detroit Police and Fire Fighters Association.

THE CITY BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND PROVIDES THE BEST POSSIBLE RECOVERY FOR PENSION AND RETIREE HEALTH CLAIMANTS UNDER THE CIRCUMSTANCES.  AS SUCH, THE CITY ENCOURAGES ALL CREDITORS, INCLUDING PENSION AND RETIREE HEALTH CLAIMANTS, **TO VOTE IN FAVOR OF THE PLAN** BY RETURNING BALLOT(S) IN ACCORDANCE WITH THE BALLOT INSTRUCTIONS.

For further information concerning the Plan and your rights, you are encouraged to carefully read the Disclosure Statement, the Plan, the Plain Language Summary and all other materials included with this letter.  You also should read the instructions attached to the enclosed ballot(s) for information regarding the proper completion and submission of the ballot(s).

If you have any questions on how to properly complete the ballot(s), please contact Kurtzman Carson Consultants LLC (the "<u>Balloting Agent</u>") at (877) 298-6236 or via email at detroitinfo@kccllc.com.  Please note, however, that the Balloting Agent cannot provide you with legal advice.  In addition, copies of the Disclosure Statement, the Plan and all other relevant documents are available at no charge via the internet at http://www.kccllc.net/detroit.  Copies of the Disclosure Statement (including any exhibits thereto that have been filed with the Bankruptcy Court) and the Plan (including any exhibits thereto that have been filed with the Bankruptcy Court) are also available upon a request made to the Balloting Agent via telephone at (877) 298-6236, via email at detroitinfo@kccllc.com or via mail at Detroit Ballot Processing c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, CA 90245.

PLEASE NOTE THAT, IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT(S) MUST BE PROPERLY COMPLETED, EXECUTED AND RETURNED IN ACCORDANCE WITH THE BALLOT INSTRUCTIONS PROVIDED SO THAT THE BALLOTING AGENT ACTUALLY RECEIVES YOUR BALLOT BY **5:00 P.M. EASTERN TIME ON JULY 11, 2014**.  WE URGE YOU TO READ THE BALLOT INSTRUCTIONS CAREFULLY BEFORE VOTING.

Sincerely,

Kevyn D. Orr
Emergency Manager
City of Detroit

Enclosures

| EXHIBIT 7 | Docket #8970  Date Filed: 12/29/2014 |
|-----------|--------------------------------------|

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 9 |
| City of Detroit, Michigan, | Case No. 13-53846 |
| Debtor. | Hon. Steven W. Rhodes |

_____/

## CERTIFICATE OF SERVICE

I, Lydia Pastor Nino, certify and say that I am employed by Kurtzman Carson Consultants LLC (KCC), the claims and noticing agent for the Debtor in the above-captioned case.

On or before December 16, 2014, at my direction and under my supervision, employees of KCC caused to be served the following document via First Class mail on the service lists attached hereto as **Exhibit A** and **Exhibit B**:

- Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date [Docket No. 8649]

Furthermore, on December 22, 2013, at my direction and under my supervision, employees of KCC caused the following documents to be served via Overnight mail on the service list attached hereto as **Exhibit C**, for subsequent distribution to beneficial holders of the securities listed on **Exhibit D**; via First Class mail to the parties on the service list attached hereto as **Exhibit E**; and via Email on the service list attached hereto as **Exhibit F**:

- Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date [Docket No. 8649]

Dated: December 23, 2014

/s/ Lydia Pastor Nino
Lydia Pastor Nino
KCC
2335 Alaska Ave
El Segundo, CA 90245

Exhibit B
Served via First Class Mail

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| STANKIEWICZ, ROBERT | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanko, Helen E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley Brown | The Reizen Law Group | 333 West 7th Street, Suite 360 | | | Royal Oak | MI | 48067 | |
| Stanley Chiropractic | Attn Accounts Payable | 39915 Grand River Ave Ste 750 | | | Novi | MI | 48375 | |
| Stanley Security Solutions Best Access | | 57450 Travis Rd | | | New Hudson | MI | 48357 | |
| Stanley T Dobry | | P.O.Box 1244 | | | Warren | MI | 48090-0244 | |
| Stanley, Clinton | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Clinton | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, CLINTON | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Craig D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Craig D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, CRAIG D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Dawnzella P | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, DAWNZELLA P | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Eddy | | 9459 Camley St | | | Detroit | MI | 48224-1253 | |
| Stanley, Floyd | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Helen | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, HELEN | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Kenneth R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, KENNETH R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Larry J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, LARRY J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Lashanna | | 2101 E Outer Dr | | | Detroit | MI | 48234-1703 | |
| STANLEY, RENEE | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Renee M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Ronald | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, RONALD | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Sherell S | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, SHERELL S | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Sherell S. | Mason, Lance W. | Lance W. Mason PC | 615 Griswold St Ste 901 | | Detroit | MI | 48226 | |
| Stanley, Steven A | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANLEY, STEVEN A | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley, Tracie Db | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanley-jones, Aiyana Dec. Est | Fieger, Geoffrey | Fieger Fieger Kenney Giroux & Danzig PC | 19390 W 10 Mile Rd | | Southfield | MI | 48075 | |
| Stanley-jones, Aiyana Dec. Est | Nathan Law PLC | Thomas R. Nathan, Esq. | 29100 Northwestern Hwy #310 | | Southfield | MI | 48034 | |
| Stanley-jones, Charles As P/r Of The Est. Of Aiyana Stanley-jones, Dec. | Fieger, Geoffrey | Fieger Fieger Kenney Giroux & Danzig PC | 19390 W 10 Mile Rd | 660 Woodward Avenue | Southfield | MI | 48075 | |
| Stanne Consulting, LLC | A. Maria Sorensen | Honigman Miller Schwartz and Cohn LLP | 2290 First National Building | | Detroit | MI | 48226 | |
| Stano Sr., Thomas W | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stano, James E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANO, JAMES E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stano, Leonard | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANO, LEONARD | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stano, Mary A | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANO, MARY A | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stano, Patrick J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANO, PATRICK J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANO, THOMAS W SR. | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stansell, Stephen | | P.o. Box 117 | | | Roseville | MI | 48066 | |
| Stanton E Wells | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton Iii, David | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton III, David J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, April | | 4850 Haverhill St | | | Detroit | MI | 48224-3522 | |
| STANTON, DAVID J III | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, George | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Gregory | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Gregory | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Gregory | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANTON, GREGORY | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANTON, LONNIE | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Lora | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANTON, LORA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Melvin | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANTON, MELVIN | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton, Robert | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| STANTON, ROBERT | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Stanton-Studevant, Clarese | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Staples | Attn Accounts Payable | Dept Det P.O.Box 83689 | | | Chicago | IL | 60696-3689 | |
| Staples | | 2760 E Jefferson Ave | | | Detroit | MI | 48207 | |
| Staples | | 22275 Eureka | | | Taylor | MI | 48180 | |
| Staples Business Advantage | Attn Accounts Payable | P O Box A 3689 | | | Chicago | IL | 60690-3689 | |
| Staples Inc | Attn Accounts Payable | P.O.Box A3689 | | | Chicago | IL | 60690 | |

In re City of Detroit, Michigan
Case No. 13-53846

Page 2054 of 2275

13-53846-swr Doc 10019-4 Filed 07/22/15 Entered 07/22/15 16:29:28 Page 73 of 75

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Terhune, Fred David | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERHUNE, FRED DAVID | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terhune, Robert S | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terhune, Robert S | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERHUNE, ROBERT S | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terminal Supply Company | Attn Accounts Payable | P.O.Box 1253 | | | Troy | MI | 48099 | |
| Terminix International L L C | Attn Accounts Payable | P.O.Box 742592 | | | Cincinnati | OH | 45274 | |
| Ternes Supply Company Inc | Attn Accounts Payable | 1150 Mason St | | | Dearborn | MI | 48124 | |
| Ternes, Arthur G | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERNES, ARTHUR G | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRAN, FREDERICK | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrance Hollowell | Carl L Collins | 20755 Greenfield Rd. Suite 1100 | | | Southfield | MI | 48075 | |
| Terrell , Garries O | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell Haliburton | | 22920 Marter Rd | | | St. Clair Shores | MI | 48080 | |
| Terrell Ii, William R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Addie L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, ADDIE L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Alfred | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Anita | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, ANITA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Chrisjuan L | | 18500 Mark Twain St | | | Detroit | MI | 48235-2548 | |
| TERRELL, GARRIES O | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, John L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, JOHN L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Mellonie | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, MELLONIE | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Michael L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, MICHAEL L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, MONROE JR. | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Myron T | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, MYRON T | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Pamela D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Richard D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, RICHARD D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Sandra | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, SANDRA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Terry J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Victor L Jr | | 19410 Berg Rd | | | Detroit | MI | 48219-1715 | |
| Terrell, William R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, William R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, WILLIAM R II | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell, Willie F | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRELL, WILLIE F | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terrell-barrow, Keri Nicole | | 19169 Lauder | | | Detroit | MI | 48235 | |
| Terrence Evelyn | | 13021 Victoria Park Dr | | | Detroit | MI | 48215 | |
| Terrence M Steffes | | 4881 E Strong Ct | | | Orchard Lake | MI | 48323 | |
| Terrence Watters | | 16716 Tuller | | | Detroit | MI | 48221 | |
| Terri L. Renshaw | Attn Carole Neville | c/o Dentons US LLP | Chair of the Committee | 1221 Avenue of the Americas | New York | NY | 10020 | |
| Terry Avery | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Davenport | | 1001 Covington Dr Unit 2 | | | Detroit | MI | 48203 | |
| Terry Dawes, Esq. | | 19390 West 10 Mile Rd | | | Southfield | MI | 48075-2463 | |
| Terry Griffin | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Griffin | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Herbert | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Herbert | | 2509 Seminole | | | Detroit | MI | 48214 | |
| Terry Michael Stocker | | 1002 Balfour St | | | Grosse Pte | MI | 48230 | |
| Terry Moffett | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Moffett | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Scott, a minor by his litigation guardian Shawntay Mario Johnson | William C. Goldstein | Goldstein DeBiase Manzocco | 900-176 University Avenue West | | Windsor | ON | N9A 5P1 | Canada |
| Terry Strother-Dixon | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry Woods | Charters Heck ODonnell Petrulis & Tyler PC | Michael A. Heck | 888 West Big Beaver Road, Suite 1490 | | Troy | MI | 48084 | |
| Terry Woods | Mr. Terry Woods | 23595 Philip Drive | | | Southfield | Mi | 48075 | |
| Terry, Alicia | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry, Alicia L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry, Alicia L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRY, ALICIA L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry, Alicia L. | Mason, Lance W. | Lance W. Mason PC | 615 Griswold St Ste 901 | | Detroit | MI | 48226 | |
| Terry, Bertha | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| TERRY, BERTHA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Terry, Capitola | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Thompkins, Charles | Romano, Daniel G. | Romano Law PLLC | 23880 Woodward Ave | | Pleasant Ridge | MI | 48069 | |
| Thompkins, Ellen | | 20563 Albany St | | | Detroit | MI | 48234-2506 | |
| Thompkins, Iris J | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Jarae L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Jerremy | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Jerremy T | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPKINS, JERREMY T | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Lucinda | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPKINS, LUCINDA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Martain | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPKINS, MARTAIN | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Sheila M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPKINS, SHEILA M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompkins, Tory D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPKINS, TORY D | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson Hine Llp | Attn Accounts Payable | 1920 N St Nw Ste 800 | | | Washington | DC | 20036 | |
| THOMPSON HINE LLP | | 1920 N ST NW STE 800 | | | WASHINGTON | DC | 20036 | |
| Thompson Hine LLP | Michael Zimmer | 1920 N Street NW | Suite 800 | | Washington | DC | 20036-1600 | |
| Thompson Iii, Daniel | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson Jr, William | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson Jr., Paul R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson Jr., Roy | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Akecia | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Alonza | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, ALONZA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Angela M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Anna | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Annie | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, ANNIE | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Anthony | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Anthony E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, ANTHONY E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, ANTHONY E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Arthur L | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Barbara | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, BARBARA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Barbara Yvonne | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Barry | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Barry E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, BARRY E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Barry Eugene | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, BARRY R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Bennie | | 8336 Mendota St | | | Detroit | MI | 48204-3031 | |
| Thompson, Berrye | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, BERRYE | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Bruce R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, BRUCE R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carlton | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carmella M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CARMELLA M | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carolyn | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carolyn | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carolyn | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CAROLYN | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CAROLYN | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Carolyn | Mason, Lance W. | Lance W. Mason PC | 615 Griswold St Ste 901 | | Detroit | MI | 48226 | |
| Thompson, Charles | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Charles E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CHARLES E | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Christin | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Christina | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CHRISTINA | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Christine | Keller, Barry F. | Keller & Avadenka PC | 2242 S Telegraph Rd Ste 100 | | Bloomfield Hills | MI | 48302 | |
| Thompson, Cristal | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Curtis R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Curtis R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CURTIS R | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Curtis W | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, CURTIS W | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Daniel B | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| Thompson, Daniel III | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| THOMPSON, DANIEL III | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |