
Ex. 7

MEMORANDUM OF UNDERSTANDING
Between the
MICHIGAN DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES,
THE CITY OF DETROIT,
and the
MICHIGAN DEPARTMENT OF TREASURY

Regarding

RENEWAL OF THE CITY OF DETROIT'S
NO-FAULT SELF-INSURANCE CERTIFICATE

I. PURPOSE AND BACKGROUND

1. The purpose of this Memorandum of Understanding (MOU) is to describe the agreements between the Michigan Department of Insurance and Financial Services (DIFS), the City of Detroit (City), and the Michigan Department of Treasury (Treasury) concerning the conditions under which the Director of DIFS (Director) will exercise her discretion to renew the City's certificate to self-insure against motor vehicle-related claims that arise under Chapter 31 of the Michigan Insurance Code (Chapter 31) and for which Chapter 31 mandates insurance coverage. Motor vehicle-related claims that arise under Chapter 31 and for which Chapter 31 mandates insurance coverage are referred to hereafter as "No-Fault Claims," and the certificate issued by the Director to self-insure against these claims is referred to as a "No-Fault Self-Insurance Certificate."

2. On  8·7·14 , the City submitted to the Director an application to renew its No-Fault Self-Insurance Certificate under the authority of section 3101d of the Michigan Insurance Code, MCL 500.3101d. If approved and issued by the Director, the No-Fault Self-Insurance Certificate will enable the City to comply with state laws requiring insurance on the motor vehicles owned by, registered to, and/or operated by the City.

3. Effective January 1, 2013, the Michigan Legislature provided statutory qualifications for the issuance of a No-Fault Self-Insurance Certificate (and transferred issuance authority from the Michigan Secretary of State to the Director) by enacting 2012 PA 204, MCL 500.3101d.

4. MCL 500.3101d(1) provides that "[a] person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner (now Director) under subsection (2)." Under subsection (2), the Director "may, in his or her discretion...issue a certificate of self-insurance to the person if the (Director) is satisfied that the person has and will continue to have the ability to pay judgments obtained against the person."

5. Consistent with the foregoing defined terms, the Director interprets this statutory requirement to apply to the City's ability to pay No-Fault Claims only, i.e., claims that must be covered by insurance under Chapter 31 and therefore fall within the scope of a No-Fault Self-Insurance Certificate. Accordingly, the statute governing the issuance or renewal of No-Fault Self-Insurance Certificates grants the Director discretion to issue a certificate to "a person" (which includes the City, see MCL 500.114) as long as the Director is satisfied that the person has and will continue to have the ability to pay No-Fault Claims against it.

6. Additional rules applicable to No-Fault Self-Insurance Certificates are contained in R 257.531 – 257.540 of the Michigan Administrative Code, entitled "Certificates of No-Fault Self-Insurance."

7. As reported in the City's application and widely publicized, on July 18, 2013, the City filed a voluntary petition for relief under Chapter 9 of the United States Bankruptcy Code. The bankruptcy case was assigned Case No. 13-53846 and remains pending before the Honorable Steven W. Rhodes in the United States Bankruptcy Court, Eastern District of Michigan.

8. The City's ongoing bankruptcy and current financial condition validate the Director's legitimate concerns as to whether the City has and will continue to have the ability to pay No-Fault Claims against it, both in full and in a timely manner. Barring the agreements and satisfaction of the conditions set forth in this MOU, the Director would be justified in exercising her discretion to deny the City's application under MCL 500.3101d(2) and R 257.538.

9. However, in reliance on the City's and Treasury's agreements contained in this MOU and satisfaction of the conditions outlined below, the Director will renew the City's No-Fault Self Insurance Certificate under the authority vested by MCL 500.3101d.

II. AGREEMENTS AND CONDITIONS

A. THE CITY

1. The previous authority granted to the City to self-administer its No-Fault Claims is terminated. The City will contract with a DIFS-approved service provider/third-party administrator to manage its No-Fault Claims both pre- and post-bankruptcy petition to ensure appropriate and timely payment of benefits.

2. During the Certificate Term (defined in paragraph II.C.1. below), the City will provide DIFS with quarterly reports of No-Fault Claim liabilities and payments.

3. All No-Fault Claims against the City, whether arising pre- or post-bankruptcy petition, must be handled and paid by the City in full (if determined valid) in the

Memorandum of Understanding
Page 3

ordinary course of business. The City will amend its Plan for the Adjustment of Debts to reflect its intention to pay 100% of the determined value of all valid No-Fault Claims, as follows:

"From and after the Effective Date, the City will continue to administer (either directly or through a third party administrator) and pay valid prepetition Claims for liabilities with respect to which the City is required to maintain insurance coverage pursuant to MCL § 500.3101 in connection with the operation of the City's motor vehicles, as follows: (1) Claims for personal protection benefits as provided by MCL § 500.3107 and MCL § 500.3108, for which insurance coverage is required by MCL § 500.3101(1), shall be paid in full, to the extent valid, provided, however, that the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits; (2) tort claims permitted by MCL § 500.3135, for which residual liability insurance coverage is required by MCL § 500.3101(1) and MCL § 500.3131, shall be paid, to the extent valid, only up to the minimum coverages specified by MCL § 500.3009(1), i.e., up to a maximum of (a) $20,000 because of bodily injury to or death of one person in any one accident, and subject to that limit for one person, (b) $40,000 because of bodily injury to or death of two or more persons in any one accident and (c) $10,000 because of injury to or destruction of property of others in any accident; and (3) Claims for property protection benefits under MCL § 500.3121 and MCL § 500.3123 shall be paid, to the extent valid, only up to the maximum benefits specified in MCL § 500.3121; provided, however, for the avoidance of doubt, to the extent any valid Claim subject to subsections 2 and 3 above exceeds the applicable payment limits, the excess claim amount shall be treated as an Other Unsecured Claim or a Convenience Claim (as applicable). Nothing in the Plan shall discharge, release or relieve the City from any current or future liability with respect to Claims subject to insurance coverage pursuant to MCL § 500.3101 or Claims within the minimum coverage limits in MCL § 500.3009(1). The City expressly reserves the right to challenge the validity of any Claim subject to this Section (IV.O), and nothing herein shall be deemed to expand the City's obligations or claimants' rights with respect to these Claims under State law."

4. The City will purchase an excess insurance policy for its No-Fault Claims with a specific retention of no greater than $1,000,000 or an amount determined to be actuarially appropriate. The excess insurance policy must be written by a carrier authorized to transact such business in this state and comply with the requirements of R 257.537.

5. The City will accept and process any No-Fault Claims against it that have been filed against the Michigan Assigned Claims Plan, for adjudication and payment in the ordinary course subject to the provisions of paragraph II.A.3 above.

6. During the entire Certificate Term, the City will deposit in escrow with Treasury, to be held on behalf of DIFS: (a) the $16.2 million reserved for the City's current No-Fault Self-Insurance Certificate; or (b) such other amount determined by DIFS to be actuarially appropriate (the DIFS Escrow), to ensure the City's ability to pay No-Fault Claims during the Certificate Term. The DIFS Escrow will be funded by transferring the required escrow amount from existing funds in the City's Self-Insurance Escrow Account maintained by Treasury.

Funds on deposit in the DIFS Escrow may be requisitioned by the City only for the payment of valid No-Fault Claims, and any request by the City to requisition funds from the DIFS Escrow will be subject to DIFS' review and prior approval and compliance with the terms of this MOU. The City does not anticipate requisitioning any funds from the DIFS Escrow during the Certificate Term because it intends to adjudicate and pay valid No-Fault Claims in the ordinary course of business. However, if during the Certificate Term the City requests, and DIFS approves, any requisition of funds from the DIFS Escrow to pay the City's valid No-Fault Claims, the City will promptly replenish any funds disbursed in accordance with the schedule agreed to by DIFS and the City at the time the requisition request is approved.

7. The City will take all reasonable and necessary steps to investigate No-Fault Claims, and will seek to eliminate fraudulent or wasteful spending and ensure that claim payments are calculated correctly and paid only to claimants whose claims are valid, due and owing.

8. If, after conducting reasonable due diligence, the City determines and submits documentary evidence to the Director evidencing that the conditions contained in paragraphs II.A.1 and/or II.A.4 above cannot be satisfied despite its best efforts, the Director may in her discretion waive or modify the condition(s) or impose a reasonably equivalent alternative.

### B. TREASURY

1. Treasury will transfer the required funds and maintain the DIFS Escrow on behalf of DIFS in accordance with the provisions of paragraph II.A.6 above.

2. Treasury will maintain the DIFS Escrow funds in a separate and distinct escrow account, and will not commingle the DIFS Escrow funds with other City self-insurance funds or accounts.

3. Upon approval and instructions by DIFS, Treasury will disburse amounts from the DIFS Escrow to the City or other designated payee(s).

Memorandum of Understanding
Page 5

C. DIFS

1. DIFS will issue the City a No-Fault Self-Insurance Certificate for a period of one year, beginning June 9, 2014 at 12:01 a.m. and ending June 8, 2015 at 11:59 p.m. (the Certificate Term).

2. DIFS will perform its responsibilities under the Michigan Insurance Code.

III. EFFECTIVE DATE AND DURATION

1. This MOU goes into effect when each party has signed it and shall remain in effect during the entire Certificate Term.

The undersigned authorized representatives of the parties have caused this MOU to be executed as of the dates indicated by each signature:

DEPARTMENT OF INSURANCE AND FINANCIAL SERVICES

_____  Date 8/8/14
Annette E. Flood
Director
Department of Insurance and Financial Services

DEPARTMENT OF TREASURY

_____  Date
R. Kevin Clinton
Treasurer
Department of Treasury

CITY OF DETROIT

By: _____  Date 8/6/14
[Print Name] KEVYN D. ORR
Its: EMERGENCY MANAGER

Approved by C. Raimi
8/4/14