**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY BRIEF IN SUPPORT OF MOTION
SEEKING LEAVE TO FILE DECLARATIONS FROM
REPRESENTATIVES OF HAP AND BCBSM  IN FURTHER RESPONSE
TO THIS COURT'S MAY 29, 2015 ORDER [DE 9901] REGARDING
FURTHER PROCEEDINGS ON THE CITY OF DETROIT'S MOTION
FOR CERTAIN RELIEF AGAINST THE DPLSA**

In its citations to HAP and BCBSM coverage certificates [DE 9979], DPLSA cites a

laundry list of certificate provisions that purportedly support DPLSA's position in this case.  The

City's filing identifies certificate provisions that the City believes, on their face, reject DPLSA's

position.  [DE 9985].   However, because of the unusual fashion in which the certificates were

brought into this case – by last minute request of DPLSA – the City filed a motion to supplement

the record with declarations of HAP and BCBSM.

The declarations make clear that BCBSM and HAP, under their coverage certificates,

defer to the City's Medical Plan to determine whether retired spouses are eligible for coverage.

The declarants identify, as the controlling document for making that determination, the same

City Medical Plan Document to which Michael Hall refers in his declaration.  Consistent with

the HAP and BCBSM declarations, the Hall declaration states: "The 2015 [Medical] Plan

Document [a copy of which is appended to Hall's declaration] governs the determination of

which individuals are eligible for coverage under the City's health care plan."  Hall declaration,

DE 9855, exhibit 1, section 5.

1

DPLSA argues that the Medical Plan Document has a disclaimer that it is "not contractual." The overriding "contractual document" is the Plan of Adjustment. There, in exchange for millions of dollars in consideration paid by the City to fund the VEBAs, the POA provides that the City "shall have no further responsibility to provide retiree health care * * *." To implement the POA, both the 2014 and 2015 versions of the City's Medical Plan Document included the following language: "An active employee may not enroll his or her City of Detroit retired spouse in his or her active employee health care coverage." Later, in a highlighted section on the same page, this is repeated: "Furthermore, a retiree of the City may not be enrolled as a spouse of an active employee." Hall dec'l, para. 6.

DPLSA apparently argues that the HAP and BCBSM coverage certificates represent the totality of the City's medical plan. That makes no sense. It is contrary to the fundamental structure and nature of employer health plans. As explained in the declarations now before the Court, the City, as plan sponsor, and not the contracted parties (HAP and BCBSM), determine the plan structure, including those dependents that are eligible for coverage. HAP and BCBSM are engaged not to determine whether dependents are entitled to coverage; rather, they are engaged to implement the City's plan by creating provider networks and for administering claims.

Open enrollment occurs in the fall preceding the year in question. So the City's 2014 Medical Plan Document – which prohibits coverage for retiree spouses – was published and provided to all city employees in fall 2013. The City's CBA with DPLSA, which incorporates by reference the City's Medical Plan Document, was executed in November 2014. The Medical Plan Document was in place long before the November 2014 CBA was executed, and the relevant retiree spouse provision has remained unchanged. Hall dec'l, section 3. DPLSA was

2

fully aware that retiree spouses were not eligible for coverage and, indeed, DPLSA complained to City Council without success. Hall dec'l, para. 9.

Consistent with the coverage certificates, the DPLSA CBA is silent on coverage for retiree spouses and, instead, incorporates by reference the City's Medical Plan Document: "During the term of this Agreement, Employees will be eligible to participate in the group medical, prescription drug, dental, and vision plans ("Medical Plans") offered by the City." CBA section 43(A), and see section 43(E), "Except as provided in this Article, the extent of coverage under the City's Medical Plans will be governed by the terms and conditions set forth in the applicable Medical Plans offered by the City during the term of this Agreement." As quoted above, the City's Medical Plan Document, at page 6, provides specific "terms and conditions" addressing coverage issues – in particular, the retiree spouse coverage issue.

As mentioned, the Medical Plan Document has a disclaimer that it is "not contractual." That is customary for medical plan documents: to make clear that the plan sponsor (here, the City) can change the plan in the future. However, during the term of the CBA, the City could not reduce the benefits provided in the Medical Plan Document (and under the HAP and BCBSM coverage certificates) without bargaining with the DPLSA. But the critical point is that the City's Medical Plan document was in place before the CBA, the CBA (and the HAP and BCBSM coverage certificates) incorporate by reference the Medical Plan Document, and that Document, consistent with the POA, prohibits coverage of retiree spouses.

## CONCLUSION AND RELIEF

The Plan of Adjustment relieves the City of any future liability for retiree health care. All documents before the Court are consistent with the POA. The City's Medical Plan Document is consistent with and implements the POA by expressly and unambiguously

prohibiting coverage for retiree spouses. Both the CBA and the HAP/BCBSM coverage certificates incorporate by reference the Medical Plan Document and its prohibition on such coverage.

This case is a direct assault on a key provision of the Plan of Adjustment. DPLSA's strategy is clear – attempt to create sufficient confusion so as to somehow get this dispute before a state arbiter who has no familiarity with, or concern for, the Plan of Adjustment. And then, argue that the City's position is "unfair;" when, in fact, City employees and retirees litigated and bargained hard throughout the bankruptcy and, under the POA, emerged from this bankruptcy with significant continuing benefits. But City health coverage for retirees is not one of those continuing benefits. This Court has exclusive jurisdiction to defend the POA from DPLSA's attacks. The City respectfully asks the Court to grant its motion to supplement the record, and grant the underlying motion.[1]

_____

[1] DPLSA's answer attaches a proposed declaration of Sergeant Nancy Headapohl. The declaration primarily offers conclusory assertions improper for a declaration. However, one point needs to be addressed.

The declaration admits that Sgt. Headapohl received the City's Medical Plan Document (apparently during open enrollment in fall of 2013 and/or 2014) and was aware that by its terms, it precluded coverage of her retired spouse. Section 7. Nevertheless, the Sergeant signed up her retired spouse on her City medical coverage.

The City, in late 2014, learned that many City employees were improperly signing up retired spouses. The City conducted an audit to ensure this would not continue into 2015. The City also changed the open enrollment process so that the first screen accessed in open enrollment states "If you are an Active Employee of the City, you may not cover your Retiree spouse on the City plans." The screen also requires entry of the spouse's social security number so as to ensure retiree spouses are not covered. Hall dec'l., para. 8 and ex. B. The City presumably could have sought recoupment for its expenditures in 2014 for retiree spouses, but did not do so.

4

Respectfully submitted,

By: /s/ Marc N. Swanson
      Jonathan S. Green (P33140)
      Marc N. Swanson (P71149)
      MILLER, CANFIELD, PADDOCK AND
      STONE, P.L.C.
      150 West Jefferson, Suite 2500
      Detroit, Michigan 48226
      Telephone: (313) 496-7591
      Facsimile: (313) 496-8451
      green@millercanfield.com
      swansonm@millercanfield.com

      Charles N. Raimi (P29746)
      Deputy Corporation Counsel
      City of Detroit Law Department
      2 Woodward Avenue, Suite 500
      Coleman A. Young Municipal Center
      Detroit, Michigan  48226
      Telephone: (313) 237-5037
      Facsimile: (313) 224-5505
      raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

July 6, 2015

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 6, 2015, the foregoing **CITY OF DETROIT'S REPLY BRIEF IN SUPPORT OF MOTION SEEKING LEAVE TO FILE DECLARATIONS FROM REPRESENTATIVES OF HAP AND BCBSM IN FURTHER RESPONSE TO THIS COURT'S MAY 29, 2015 ORDER [DE 9901] REGARDING FURTHER PROCEEDINGS ON THE CITY OF DETROIT'S MOTION FOR CERTAIN RELIEF AGAINST THE DPLSA** was filed and served via the Court's electronic case filing and notice system and was also served upon the persons listed below via electronic mail.

Peter P. Sudnick, Esq.
SUDNICKLAW, P.C.
2555 Crooks Road, Suite 150
Troy, MI 48084
psudnick@sudnicklaw.com

Barbara A. Patek & Julie Beth Teicher
ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.
400 Galleria Officeentre, Suite 444
Southfield, MI 48034
jteicher@ermanteicher.com
bpatek@ermanteicher.com

By: /s/ Marc N. Swanson
Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
swansonm@millercanfield.com

DATED: July 6, 2015