UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY IN SUPPORT OF MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT ACTION FILED BY TANYA HUGHES**

The City of Detroit, Michigan ("City"), by its undersigned counsel, files this Reply to Tanya Hughes' Response and Brief Opposing City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action Filed by Tanya Hughes ("Response") [Doc. No. 10005], stating as follows:

1. As Hughes states in her May 14 letter, Complaint[1] or Response, prior to the City's bankruptcy filing:

- Hughes refused to take a random drug test. May 14 letter at 1; Complaint ¶¶ 8, 11-14; Response ¶ 5.

- Hughes allegedly suffered "pregnancy and disability discrimination." May 14 letter at 1; Complaint ¶¶ 16-17, Counts I-III; Response ¶ 5.

- Hughes was placed on leave with pay for her refusal to submit to the drug test. May 14 letter at 1; Response ¶ 5.

- The Chief of Police petitioned the Board of Police Commissioners to convert her leave from with pay to without pay. May 14 letter at 1; Response ¶ 6

- A police trial board (disciplinary) hearing took place. May 14 letter at 2; Response ¶ 7.

- Hughes was terminated from the Police Department at this hearing. May 14 letter at 2; Response ¶ 7.

- Hughes appealed her termination. May 14 letter at 2; Response ¶ 8.

---

[1] The May 14 letter and the Complaint are attached to the City's motion as Exhibits 6A and 6D. [Doc. No. 9970].

- An arbitration hearing was conducted. May 14 letter at 2; Response ¶ 8.
- Hughes and the City submitted post-hearings briefs to the arbitrator. May 14 letter at 2; Response ¶ 8.

2. Despite the fact that each of these events occurred prior to the City's bankruptcy filing, Hughes asserts that her claim was not within her "fair contemplation" as of the petition date.[2] However, Hughes' statements and the two decisions upon which she relies support the City's argument that her claim arose pre-petition. Response ¶ 19. In *In re Senczyszyn*, the Court explained that the "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, such as contract, exposure, impact or privity, such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed." 426 B.R. 250, 257 (Bankr. E.D. Mich. 2010) *aff'd on other grounds*, 444 B.R. 750 (E.D. Mich. 2011) (internal citations and quotations omitted). Using this test, the Court rejected the State of Michigan's argument that it had a post-petition claim for taxes solely because the taxes became due after the filing of the petition. *Id.* Similarly, in *Signature Combs v. U.S.*,[3] the court held that a claim arises pre-petition if it is "based on pre-petition conduct that can be fairly

---

[2] Hughes apparently concedes that she would have a pre-petition claim under the debtor's conduct because she did not address this argument in her Response.

[3] Hughes mischaracterizes the *Signature Combs* decision by stating that the court held "a CERCLA claim arises when the claimant can 'tie the bankruptcy debtor to a known release of hazardous substance which this potential claimant *knows will lead to CERCLA response costs*.'" Response ¶ 19. This was not the holding of the *Signature Combs* court. Instead, the *Signature Combs* court used the above quoted language to summarize the decision in *In re Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 974, F.2d 775, 786 (1992). *Signature Combs*, 253 F.Supp.2d at 1037. The *In re Chicago* decision is distinguishable on at least two grounds: First, the case was decided under the Bankruptcy Act of 1898, which had a different and more restrictive definition of the term "claim." *Id.* at 780; *see also* 2 COLLIER ON BANKRUPTCY ¶ 101.05[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The Code defines the term "claim" much more broadly in section 101(5) than under previous law."). Second, the *In re Chicago* court explicitly held that it was not "adopting… any rule" but instead stated that under the facts of the case "when a potential CERCLA claimant can tie the bankruptcy debtor to a known release of a hazardous substance which this potential claimant knows will lead to CERCLA response costs, and when this potential claimant has, in fact, conducted tests with regard to this contamination problem, then this potential claimant has, at least, a contingent CERCLA claim for purposes of Section 77." *Id.* at 786.

contemplated by the parties at the time of the debtors' bankruptcy." 253 F.Supp.2d 1028, 1037 (W.D. Tenn. 2003). Hughes mistakenly concludes that these holdings support her view that her claim arose post-petition because as of the filing she "did not know that she would suffer harm flowing from the October 2012 event." Response ¶ 20. The test, however, is not whether Hughes "knew" that she would have a claim as of the petition date, but instead whether a claim could have been fairly contemplated. Hughes in fact admits that there were only "two possible outcomes" from the pre-petition arbitration "one favoring Sgt. Hughes and one not." *Id.* ¶ 20. Hughes thus acknowledges that the "one not" outcome was within her fair contemplation as of the City's bankruptcy filing.[4]

3. Hughes also argues that her claim arose post-petition because she did not have an "actionable discrimination case against the City arising from the October 5, 2012 incident because she had not suffered adverse employment action,[5] without which she could not pursue a

---

[4] In fact, from a normative standpoint, bankruptcy law could work no other way. It cannot, and does not, protect the non-bankruptcy law entitlements of creditors (for example, the right to repossess and foreclose upon collateral security upon default or to exercise specific performance remedies under applicable law), but rather it *respects* and *values* those rights for treatment in a collective bankruptcy proceeding. The bankruptcy process is generally thought of as a collective debt-collection process designed to ameliorate a common pool problem, and thereby address and translate individual rights in and to the collective proceeding. To work, it must deal with assets and liabilities determined as of a particular moment in time. That is the purpose of the broad definition of "claim" in section 101(5) of the Bankruptcy Code, its statutory acceleration feature and other implementation provisions of the Bankruptcy Code. All creditors with claims against a debtor's assets, whether those claims are mature, unliquidated or contingent under state or other applicable non-bankruptcy law, must be accelerated (*i.e.* treated as "due and owing") and valued as of the petition date if those creditors are to have the right and, as importantly, the ability to share in a debtor's assets, or value of those assets, in the form of distributions in the bankruptcy process. Numerous other provisions in the Bankruptcy Code, such as the estimation procedures in section 502(c), are intended to facilitate that process. 11 U.S.C. § 502(c)(1) ("the fixing or liquidation of which . . . would unduly delay the administration of the case").

[5] Although not relevant to the determination of whether Hughes' claim arose prior to the City's bankruptcy filing, the City contests Hughes' assertion that the events which took place prior to the bankruptcy filing as alleged by Hughes could not have constituted an "adverse employment action." Three of the four cases cited by Hughes pre-date the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, (2006), where the Court held that an adverse employment action must be "materially adverse" in that it would "dissuade[ ] a reasonable worker from
*Continued on next page.*

lawsuit." Response ¶¶ 16-18. Hughes, however, cites no cases to support her view that a creditor must possess an actionable cause of action to have a claim under the Bankruptcy Code. This is likely because that approach has been "universally rejected." *See In re Grossman's Inc.*, 607, F.3d 114, 117-121 (3d Cir. 2010).

    4.    Hughes next argument -- that the City is equitably estopped from enforcing the Plan injunction due to the wording of the Notice and the Umpire's belief that the stay applied -- is not only wrong but also irrelevant. It is irrelevant because even if Hughes were correct in her belief that she was excused from filing a proof of claim (which she was not), this fact would not transform her pre-petition claim into a post-petition claim. The confusion over whether the stay applied is also irrelevant because neither the debtor's conduct nor the fair contemplation approach look at post-petition events to determine whether a claim arose prior to the bankruptcy filing.[6] Hughes' argument that the Notice excused her from filing her "pregnancy and disability discrimination" claims because it excepted "routine wages" is baseless. Claims for "pregnancy and disability discrimination" do not fall under any conceivable interpretation of the term "routine wages." *See* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary (last visited July 9, 2013), *Routine*, ("[O]f, relating to, or being in accordance with established procedure <*routine* business>."); *Wage*, ("[A]n amount of money that a worker is paid based on

---

*Continued from previous page.*
making or supporting a charge of discrimination." After the *Burlington* decision, the Sixth Circuit found that the brief placement of an employee on paid administrative leave and the establishment of a performance plan for her could meet the "relatively low bar" established by *Burlington Northern*. *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007). Similarly, in *Wharton v. Gorman–Rupp Co.*, 309 Fed.Appx. 990, 997–98 (6th Cir. 2009), the court found a threatening confrontation with a superior in a parking lot to be a materially adverse employment action. Also, in *Halfacre v. Home Depot, USA, Inc.*, 221 Fed.Appx. 424, 425 (6th Cir. 2007), the court found that low employee performance evaluation scores could constitute an adverse employment action if they actually impacted the employee's wages and professional advancement.

[6] If anything, the confusion over whether the automatic stay applied should have alerted Hughes to the fact that she was required to file a proof of claim because the automatic stay only applies to claims and actions against a debtor. 11 U.S.C. § 362(a).

the number of hours, days, etc., that are worked."). Further, page one of the Notice states "Please read the entire document carefully for further details" and then before describing the parties that are not required to file a proof of claim, the Notice states "for further information, see Section 1 of this document." Notice at 1. Section 1 of the Notice explains that

> Claims of active employees for ordinary course compensation and employment benefits including, without limitation, wages, salaries, employee medical benefits and insurance benefits ("<u>Ordinary Course Compensation Claims</u>"). The City intends to pay Ordinary Course Compensation Claims in the normal course. Accordingly, active employees need not file proofs of claim on account of Ordinary Course Compensation Claims. **For the avoidance of doubt, claims asserted or to be asserted in any lawsuit or similar proceeding are not Ordinary Course Compensation Claims even where the claims assert as damages an entitlement to wages, salaries, employee medical benefits and/or insurance benefits.**

Notice at 3-4 (emphasis added).[7] Hughes' claims do not fall within the definition of Ordinary Course Compensation Claims because she has asserted them in a lawsuit. Complaint ¶¶ 25, 31, Relief Requested, D, E. As such, Hughes' equitable estoppel argument fails on several counts.

5. Hughes' final argument that the City waived its rights to enforce the Plan injunction because it did not raise this as an affirmative defense also fails. It is well settled that actions taken in violation of a discharge injunction are void ab initio. *In re Mariner Post-Acute Network, Inc*., 303 B.R. 42, 47 (Bankr. D. Del. 2003). It is thus irrelevant whether the City raised the violation as an affirmative defense because Hughes' state court action is void ab initio.

Dated: July 10, 2015  Respectfully Submitted,

By:<u>/s/ Marc N. Swanson</u>
  Marc N. Swanson (P71149)
  Miller, Canfield, Paddock and Stone, PLLC
  150 West Jefferson, Suite 2500
  Detroit, MI 48226
  Phone: 313.496.7591; Fax: 313.496.8451
  swansonm@millercanfield.com

---

[7] The Notice also incorporates the Bankruptcy Code's definition of claim. Notice at 2.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>City of Detroit, Michigan,<br><br>Debtor. | Bankruptcy Case No. 13-53846<br><br>Honorable Thomas J. Tucker<br><br>Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2015 the City of Detroit's Reply in Support of Motion for the Entry of and Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring the Dismissal of the State Court Action Filed by Tanya Hughes was filed and served via the Court's electronic case filing and notice system and served upon counsel as listed below, via first class mail and electronic mail:

Jeffrey J. Ellison, PLLC
Jeffrey J. Ellison
214 South Main Street, Suite 210
Ann Arbor, MI 48104-2122
ellisonesq@aol.com

DATED: July 10, 2015

                              By: /s/ Marc N. Swanson
                                  Marc N. Swanson
                                  150 West Jefferson, Suite 2500
                                  Detroit, Michigan 48226
                                  Telephone: (313) 496-7591
                                  Facsimile: (313) 496-8451
                                  swansonm@millercanfield.com