```
1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF MICHIGAN
2                    SOUTHERN DIVISION


3  IN THE MATTER OF,            Case No. 13-53846
                                Detroit, Michigan
4  CITY OF DETROIT, MI          July 15, 2015
   _____/ 1:39 p.m.

5

   IN RE:  FURTHER, NON-EVIDENTIARY HEARING RE: SHERELL STANLEY'S
6    MOTION FOR THE EXTENSION OF TIME, FURTHER, NON-EVIDENTIARY
      HEARING RE: APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM,
7   FILED BY CREDITOR SHERELL STANLEY, FURTHER, NON-EVIDENTIARY
      HEARING RE: APPLICATION FOR ADMINISTRATIVE EXPENSE CLAIM,
8    FILED BY CREDITOR SHEILA REED, MOTION TO ALLOW LATE FILED
     CLAIM BY CREDITOR SHEILA REED, CITY OF DETROIT'S MOTION FOR
9   THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT
   INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT
10  ACTION FILED BY TANYA HUGHES AND CORRECTED MOTION OF STEVEN
   WOLAK, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER
11  WOLAK, DECEASED, TO COMPEL PAYMENT BY DEBTOR PURSUANT TO
       SETTLEMENT CONTRACT, OR ALTERNATIVELY, VOID SETTLEMENT
12              CONTRACT AND REINSTATE CASE.
             BEFORE THE HONORABLE THOMAS J. TUCKER
13             TRANSCRIPT ORDERED BY: ROBIN WYSOCKI


14  APPEARANCES:

15  For the City of Detroit, MI:  MARC SWANSON, ESQ. (P71149)
                                  JONATHAN GREEN, ESQ. (P33140)
16                                Miller, Canfield, Paddock &
                                  Stone
17                                150 West Jefferson
                                  Suite 2500
18                                Detroit, MI 48226
                                  313-496-7591
19
   For Tanya Hughes:             JEFFREY ELLISON, ESQ. (P35735)
20                                214 S. Main Street
                                  Suite 210
21                                Ann Arbor, MI 48104
                                  734-761-4300
22                                734-528-4159


23  For Steven Wolak, as         DAVID DWORETSKY, ESQ. (P67026)
   Personal Representative of    19390 W. Ten Mile Road
24  the Estate of Christopher    Southfield, MI 48075
   Wolak, Deceased:              248-355-5555

25
```

```
 1   PRESENT:                    SHERELL STANLEY
                                 SHEILA REED
 2
     Court Recorder:             Jamie Laskaska
 3
     Transcriber:                Deborah L. Kremlick
 4

 5

 6   Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       (Court in Session)

2           THE CLERK:  All rise.  This Court is now in session.

3   The Honorable Thomas J. Tucker is presiding.  You may be

4   seated.  The Court calls the case of the City of Detroit,

5   Michigan, case number 13-53846.

6           THE COURT:  All right.  Good afternoon, everyone.

7   Let's have appearance for the record starting with counsel for

8   the city, please.

9           MR. SWANSON:  Good afternoon, Your Honor.  Marc

10  Swanson and Jonathan Green from Miller, Canfield, Paddock, and

11  Stone.

12          MR. ELLISON:  Good afternoon, Your Honor.  Jeffrey

13  Ellison appearing on behalf of Tanya Hughes.

14          MR. DWORETSKY:  Good afternoon, Your Honor.  David

15  Dworetsky on behalf of Steven Wolak, personal representative

16  of the estate of Christopher Wolak, deceased.

17          THE COURT:  All right.  Good afternoon to everyone.

18  We have I think it's four matters scheduled for hearing today.

19  So let's begin with the -- I believe first matter listed --

20  actually there's four groups of matters.

21      The first matters I want to take up are the matters --

22  the two matters involving Sherell Stanley.  Is Sherell Stanley

23  here?  Those would be then the further hearing regarding

24  Sherell Stanley's motion for extension of the deadline to file

25  an administrative expense claim and Sherell Stanley's

1  application for administrative expense claim.

2      Ms. Stanley, you're here.  Would you enter your

3  appearance for the record?

4          MS. STANLEY:  Sherell Stanley.

5          THE COURT:  All right.  All right.  Good afternoon

6  to all of you.  Mr. Swanson, you're going to be arguing for

7  the city.

8          MR. SWANSON:  Yes, Your Honor.

9          THE COURT:  All right.  So the -- I believe the last

10  hearing we had on these matters was on June 3rd.  After that

11  hearing, the parties took advantage of the Court's requiring

12  actually, permitting and requiring the filing of further

13  written materials regarding these matters.  That's the Court's

14  order that was filed on June 4th at docket 9929 regarding

15  further proceedings on these matters.

16      I did see that Ms. Stanley filed a brief after the June

17  3rd hearing on June 17 at docket 9978.  The city filed a

18  response to that brief on July 2, 2015 at docket 10019.  That

19  was a corrected, I believe, version of -- of a document that

20  had been filed earlier.

21      And I have reviewed these papers.  So these are two

22  related matters obviously.  Let me hear from the parties next

23  about this.  Mr. Swanson, I'll start with you and then we'll

24  hear from Ms. Stanley.

25          MR. SWANSON:  Thank you, Your Honor.  Ms. Stanley's

1  application and her motion should be denied for two reasons.

2       First, Ms. Stanley's application does not set forth an

3  expense incurred in the actual administration of the city's

4  bankruptcy case.  Ms. Stanley offered two sentences in

5  response to the city's argument that her claim is not an

6  administrative expense under Chapter 9 of the Bankruptcy Code.

7       She argued pursuant to 11 USC 503(b), business expenses

8  for debtors operating during a bankruptcy case qualify as

9  administrative claims.  My claim arose post-petition and so

10 qualifies based on services rendered and inequitable

11 treatment.

12      This Court, however, held that costs "incurred" in

13 connection with the actual administration of the Chapter 9

14 case constitute administrative expenses and only those costs,

15 thereby excluding business expenses of the debtor.  Using this

16 definition the Court ruled that employee wage claims are not

17 administrative expenses.  If employee wage claims are not

18 costs --

19           THE COURT:  Now you're referring there to the ruling

20 that I made in the bench opinion in -- on May 27, 2015 in

21 connection with objections to certain other claims in this

22 case not involving Ms. Stanley.  That's the ruling that I

23 filed a transcript of in this case on June 4 for the reference

24 of the parties including Ms. Stanley, is that right?

25           MR. SWANSON:  That's correct, Your Honor.

1          THE COURT:  Yeah.

2          MR. SWANSON:  It appears at docket number 9934.

3          THE COURT:  All right.  Go ahead, you were saying.

4          MR. SWANSON:  Thank you.  The Court's holding means

5    that Ms. Stanley's alleged business expenses are not

6    administrative expenses in a Chapter 9 case because they do

7    not fall within the narrow category of costs of

8    administration.

9          And Ms. Stanley does not argue that her claims were

10   involved in the actual administration of the bankruptcy case

11   because they were not.  Thus, on this basis alone, Ms.

12   Stanley's application and her motion to permit an untimely

13   filing must be denied.

14         The second reason, Your Honor, that both the application

15   and motion must be denied is that Ms. Stanley has not rebutted

16   the presumption of receipt that this Court identified in the

17   Yoder case.  During the previous hearing on this matter, the

18   Court repeatedly stated that the key question under Yoder was

19   whether Ms. Stanley received the notice.

20         In fact the Court mentioned the words receive or receipt

21   at least 25 times just in seven pages of the transcript when

22   it was explaining the Yoder case.

23          `THE COURT:  I do tend to repeat myself I guess.

24         MR. SWANSON:  It re-emphasized that the crucial

25   point is whether Ms. Stanley received the notice in its order

1 because it said Ms. Stanley had to prove that she did not

2 "actually receive the notice". Despite this consistent and

3 clear direction from the Court, neither in her declaration,

4 nor in Ms. Black's declaration, was it ever once said, I did

5 not receive the notice. Or Ms. Stanley did not receive the

6 notice.

7     Instead Ms. Stanley contends that the notice was not

8 "observed" by her. And that it was not in one of her binders.

9 Not observing any of the four notices mailed to her

10 individually is entirely consistent with receiving them and

11 failing to open them, losing them, or simply ignoring them.

12     There can be no question that Ms. Stanley was aware that

13 the key question here was did she receive them. Saying that

14 she did not observe something is not the same thing as not

15 receiving it.

16     Further, Your Honor, the Court -- or the city took a

17 further review of the certificate of service that it cited to

18 in its original objections and it noticed that Ms. Stanley's

19 attorney was also mailed the notice, once on behalf of Ms.

20 Stanley, and two other times on behalf of different clients he

21 had on the case.

22     So it is simply inconceivable to the city, Your Honor,

23 that not one of the four notices that was mailed to Ms.

24 Stanley, or any of the three notices that was mailed to her

25 attorney, were not actually received. And this is almost

1  certainly why Ms. Stanley had never come out and made the

2  simple statement under penalty of perjury that she did not

3  receive the notice.  There is no excusable neglect here, Your

4  Honor.

5      In sum, Your Honor, the motion and application should be

6  denied for two reasons.  First, this is not an administrative

7  expense in a Chapter 9 claim.  These are unproven allegations

8  of discrimination.  The EEOC has not even made a determination

9  of whether it's going to go forward on this.

10     And second, Your Honor, the Court required -- the Court

11 emphasized, and the Court told Ms. Stanley that she had to

12 file a declaration under penalty of perjury saying she did not

13 receive the notice and she had failed to do so.  Thank you.

14         THE COURT:  All right.  Thank you.  Ms. Stanley,

15 what would you like to say?

16         MS. STANLEY:  Sir, at the risk of being redundant, I

17 can -- Attorney Swanson wants me to make a declaration that

18 this notice was received at my P.O. Box and that is simply a

19 declaration I cannot make.

20     I can -- I am not in good conscience make a declaration

21 of something I know nothing about and could not know about

22 considering that I was not available apparently when the

23 notice was -- was mailed.  And the individual who receives my

24 mail when I'm unavailable also indicated that she was unaware

25 of having received the envelopes, not that I would expect her

1  to know the contents of any envelopes received at my post

2  office box at any rate.

3       Attorney Swanson also indicates that I should have known

4  because the notice was posted in the *Daily News*, *Free Press*,

5  and/or *The Wall Street Journal*.  And he's making an assumption

6  there that I pay for the -- the *News* or the *free Press*, or *The*

7  *Wall Street Journal* which I do not.  And I did not download a

8  copy from the internet off of KCC's web site.  I actually

9  surfed the net in order to procure a copy of -- of the notice.

10 And that was only after having been advised of it by the

11 federal EEOC office.

12      Attorney Swanson also indicates that I should have known

13 because my attorney had been placed on notice.  I believe he

14 is referring to Attorney Mason, however --

15           THE COURT:  I believe he is, yes.  Go ahead.

16           MS. STANLEY:  Okay.  However, Attorney Mason is not

17 representing me in this particular matter.  Attorney Mason

18 represented me in a matter concerning the special response

19 team of the Detroit Police Department, and not this particular

20 matter.

21      With respect to this claim, the federal EEOC office filed

22 a claim on my behalf, however, I filed a claim separate and

23 distinct than of the federal EEOC office which I'm requesting

24 this case -- this Court to review on its face and again

25 separate and distinct of that -- from that of the EEOC office.

1     With respect to whether it qualifies as an

2   administrative --

3          THE COURT:  Does Attorney Mason represent you in

4   filing the proof of claim for your pre-petition unsecured

5   claim in the case?

6          MS. STANLEY:  With respect to SRT.  This is an

7   entirely separate claim with the EEOC office.

8          THE COURT:  So you're -- the pre -- the proof of

9   claim that you filed --

10          MS. STANLEY:  Yes, sir.

11          THE COURT:  -- was not -- did not include this

12   discrimination claim that you're seeking an administrative

13   expense claim treatment for, is that what you're saying?

14          MS. STANLEY:  I'm sorry, say that -- say that again,

15   please.

16          THE COURT:  You filed -- you filed a proof of claim.

17          MS. STANLEY:  Yes, sir.

18          THE COURT:  In addition to this motion for allowance

19   of administrative expense claim that we're hearing today,

20   right?

21          MS. STANLEY:  Yes, sir.

22          THE COURT:  Yeah.  And the application for

23   administrative expense claim is the one that was filed on

24   February 6 of 2015.  The proof of claim that was filed was

25   filed before the February -- I think it was February 21, 2014

1  deadline.

2          MS. STANLEY:  Yes, sir.

3          THE COURT:  Did Mr. Mason file that on your behalf?

4          MS. STANLEY:  With respect to the -- the claim that

5  I have concerning SRT.  There are two separate claims.

6          THE COURT:  Is that all that -- is that all the

7  proof of claim covered?

8          MS. STANLEY:  I have -- I have two separate claims,

9  sir.  Maybe I'm not understanding.

10          THE COURT:  Was there an employment discrimination

11  claim included in your proof of claim that you filed?

12          MS. STANLEY:  Was there -- I'm sorry?

13          THE COURT:  Do you understand my question?

14          MS. STANLEY:  No, I do not.

15          THE COURT:  Did your proof of claim that you

16  filed --

17          MS. STANLEY:  Uh-huh.

18          THE COURT:  Not the administrative expense claim

19  that we're hearing today, but your proof of claim that was

20  filed back in -- by the February 2014 deadline, did that

21  include a claim -- any claim of employment discrimination?

22          MS. STANLEY:  Yes, sir.

23          THE COURT:  It did?

24          MS. STANLEY:  Yes, sir.

25          THE COURT:  Are you saying that's a different

1  employment discrimination claim than the one you're -- that's

2  the subject of your administrative expense application?

3          MS. STANLEY:  Yes, sir.

4          THE COURT:  All right.  So Attorney Mason filed that

5  for you, that proof of claim?

6          MS. STANLEY:  Yes, sir.

7          THE COURT:  All right.  And what you're saying about

8  him is he doesn't -- or he didn't represent you, and doesn't

9  represent you in connection with your employment

10 discrimination claim that is the subject of the administrative

11 expense claim?

12         MS. STANLEY:  Correct.

13         THE COURT:  All right.  Go on.  You -- go ahead, you

14 were saying then.

15         MS. STANLEY:  Okay.  And I wanted to reiterate also

16 that Attorney Swanson indicated in his -- in his previous

17 objection to my motion, that my allegations of discrimination,

18 harassment, and retaliation against the City of Detroit were

19 unfounded allegations.  And I just want to reiterate that it's

20 premature to make that -- that contention considering that the

21 federal EEOC office is -- considering that the matters are

22 still under investigation.

23    And finally, with regard to whether my application for

24 the administrative claims qualify as such, I just want to

25 reiterate that my federal EEOC complaint does concern

1  discrimination, harassment, retaliation and that within that

2  context there was also an allegation that I was denied

3  overtime opportunities to which I was entitled.

4      And I would just ask that the Court make a ruling with

5  respect to whether it qualifies as an administrative claim.

6  And if not, obviously the -- the application with regard -- in

7  that regard would become a moot issue.  But I do ask the Court

8  to -- to make an exception and a ruling in that regard.

9          THE COURT:  Anything else?

10          MS. STANLEY:  No, sir.

11          THE COURT:  I've noticed -- and getting back to this

12  Attorney Mason.  Your application for administrative expense

13  claim that was filed on February 6, 2015, it's docket 9189.

14  It's been the subject of today's hearing and the June 3rd

15  hearing of which the handwritten document -- that's your --

16  that's your handwriting in there.

17          MS. STANLEY:  Yes, sir.

18          THE COURT:  Yeah.  You wrote it, and signed it, and

19  filed it.  It -- it says in the paragraph numbered one, it

20  talks about how you're stating that on or about November 7,

21  2013, you filed the attached federal EEOC complaint against

22  the city for gender discrimination, retaliation, and the

23  continued infliction of emotional distress.

24      And in paragraph number three, it says debtor requests,

25  and you wrote in $1,000,000 in relief, a claim filed

1 previously on at least two separate occasions with the

2 Bankruptcy Court (see claim 2603).  That seems to imply that

3 -- that -- that the subject matter of your administrative

4 expense claim was the same subject matter, same claim as -- or

5 included in the claim that you filed in the proof of claim,

6 claim number 2603.  Or is that a reference to an earlier

7 motion in the case?  2603, that's not a reference to your

8 proof of claim you're saying?

9            MS. STANLEY:  It does refer to my proof of claim,

10 however, I had more than one proof of claim that was filed.

11 The proof of claim that Attorney Mason was responsible for is

12 claim number 787 if I'm not mistaken.  And the proof of claim

13 that -- that the federal EEOC office filed --

14            THE COURT:  Is that claim 2603 that you're referring

15 to?

16            MS. STANLEY:  It appears to be 2481.

17            THE COURT:  All right.  Anything else you'd like to

18 say, Ms. Stanley?

19            MS. STANLEY:  No, sir.

20            THE COURT:  All right.  Thank you.  Mr. Swanson,

21 I'll -- I'll give you a brief opportunity to reply if you'd

22 like to regarding this.

23            MR. SWANSON:  Very briefly, Your Honor.  Ms. Stanley

24 was very candid with the Court.  She admitted she can't say I

25 did not receive the notice.  That's what this Court requires.

1  That's what <u>Yoder</u> requires.  And we'd ask the Court to deny

2  both the motion and application.  Thank you.

3         THE COURT:  All right.  Thank you both.  I'm going

4  to rule on these matters now.

5      On June 3rd and today the Court has held hearings on two

6  matters, related matters concerning Sherell Stanley.  One is

7  the application for administrative expense claim that she

8  filed with the Court on February 6th, 2015 at docket number

9  9189.  The City of Detroit filed an objection to that

10  application at docket number 9789.  The Court held hearings on

11  June 3rd and today regarding that.

12      The second matter relatedly is the motion that Ms.

13  Stanley filed for an extension of time or the deadline to file

14  her application for administrative expense claim.  Ms. Stanley

15  filed that motion on May 21, 2015 at docket number 9875.

16      The City of Detroit filed a timely objection to that

17  motion and the Court -- again held it hearing on that motion

18  on June 3 and has held one again today.  After the June 3rd

19  hearing the Court gave the parties deadlines for filing a

20  further brief regarding the specific specified matters or

21  issues.  Pardon me.

22      Ms. Stanley was required to file a written reply in

23  support of her motion for extension of time which must include

24  and was required to include any response Ms. Stanley has to

25  the City of Detroit's so-called futility argument.  That's an

1 argument by the city that was discussed during the June 3rd

2 hearing.  That is basically the city's argument that even if

3 Ms. Stanley were granted an extension of the deadline after

4 the fact to file an administrative expense claim, it would be

5 futile because her administrative expense claim would have to

6 be disallowed on the merits because it's not an appropriate

7 matter that could be allowed as an administrative expense

8 claim in this Chapter 9 case.  That's a -- an argument I'll

9 talk about more in a minute.

10     Ms. Stanley did file on a timely basis, on June 17th at

11 docket 9978, her written reply in support of her motion for

12 extension of time.  And in that written document she did

13 reply, rather briefly, but she did reply to the city's

14 futility argument.  She attached also to that reply a

15 declaration under penalty of perjury by herself and by Sherita

16 Black.  I've reviewed these items.

17     The city as I noted earlier ,then filed as permitted and

18 required by -- as permitted by the Court's June 4 order,

19 docket 9929, the city filed a response to Ms. Stanley's June

20 17 reply.

21     The -- the issue of whether or not Ms. Stanley has

22 successfully rebutted the presumption that arises in

23 connection with the so-called mailbox rule that I discussed at

24 the June 3rd hearing with the parties and which the parties

25 argue about, is a matter which I find unnecessary to decide as

1  it turns out given the ruling I'm going to make about the

2  futility argument.

3      The -- there is certainly substantial grounds upon which

4  -- and evidence upon which the Court could find that Ms.

5  Stanley's -- that the notice which -- that was mailed four

6  different occasions apparently, or four different times by the

7  city's noticing and service agent to Ms. Stanley's post office

8  box address back in December which included a notice of the

9  deadline for filing administrative expense claims, was in fact

10  actually received at Ms. Stanley's P.O. Box back in December,

11  well before the deadline for filing administrative expense

12  claims.  However, there is in my view and despite the city's

13  arguments on this, there is sufficient evidence in the

14  declarations under penalty of perjury of Ms. Stanley and Ms.

15  Black on this subject to, at a minimum, require the Court to

16  hold an evidentiary hearing if the Court concludes that it

17  must decide, in fact must decide the issue of whether or not

18  the notice was actually received at Ms. Stanley's post office

19  box.

20      That is the evidence does sufficiently overcome the

21  presumption of receipt such that the Court would need to have

22  an evidentiary hearing on that subject in order to decide that

23  question.  The -- that question is important as I described

24  and discussed in the June 3rd hearing to the broader question

25  of whether or not Ms. Stanley had demonstrated or could

1  demonstrate excusable neglect in her failure to file her

2  application for administrative expense by the January 26, 2015

3  deadline set by the Court in the confirmed plan, Chapter 9

4  plan of adjustment.  And that in turn was -- is an important

5  consideration in determining whether or not the Court should

6  grant Ms. Stanley's motion for an extension of the -- of that

7  deadline.

8      I want to turn though to the futility, the so-called

9  futility argument by the city.  It is that argument which in

10  my view is dispositive of Ms. Stanley's administrative expense

11  claim without the need for the Court to hold an evidentiary

12  hearing on this subject of whether or not her P.O. Box

13  actually was filled in December with the notice sent to that

14  P.O. Box or mailed to that P.O. Box of the deadline for filing

15  administrative expense claims.

16      After the -- after the discussion in the June 3rd hearing

17  of this matter, the Court filed on June 4th, 2015, a

18  memorandum, docket 9934 that attached for reference of the

19  parties, that is the city and Ms. Stanley, as well as the

20  reference of Sheila Reed who also was a creditor who had

21  matters that were heard on June 3rd, in which the Court

22  attached highlighted copies of the transcript, excerpt of the

23  transcript of the May 27, 2015 hearing that the Court held in

24  this case on various objections to claim and a claim that had

25  been filed by the city, matters not directly involving Ms.

1   Stanley.

2       As the Court pointed out in its June 4 memorandum, docket

3   9934, in the Court's -- in the course of the May 27 hearing,

4   the Court made certain rulings regarding what must be

5   demonstrated to show that a claim can qualify for treatment as

6   an allowed administrative claim, administrative expense claim

7   in a -- this Chapter 9 bankruptcy case.

8       And in particular in that transcript at Pages 57 to 58

9   and 65 to 66 as the Court's pointed out in its memorandum, the

10  Court made certain rulings on that subject in connection with

11  certain other claims, administrative claims that had been

12  filed in the case by other persons other than Ms. Stanley.

13      I later reiterate the rulings that I made in the May 27

14  hearing and which are in that transcript that I just referred

15  to.  And based on that ruling and also based upon the cases

16  and the authorities that I cited -- that I will cite, I -- I

17  reiterate that ruling and -- and the result of that ruling is

18  that Ms. Stanley's administrative expense claim even if it

19  were ruled ultimately to be timely filed rather than filed

20  late, would have to be disallowed.

21      It would have to be disallowed because it does not --

22  it's not the type of claim that qualifies for administrative

23  expense treatment in this Chapter 9 bankruptcy case.  Ms.

24  Stanley's claim is a claim that at various times including

25  time periods after the city filed its Chapter 9 bankruptcy

1  case in July 2013, Ms. Stanley was the victim of illegal

2  employment discrimination.

3      As she put it in her administrative expense claim, gender

4  discrimination, retaliation, and the continued infliction of

5  emotional stress, all of which relate to her employment with

6  the City of Detroit and the Detroit Police Department.

7      The -- the theory that Ms. Stanley seems to be arguing in

8  her written response to the city's futility argument and in

9  today's hearing seems to be simply that because she was an

10 employee and suffered discrimination as an employee of the

11 city, after the filing of this bankruptcy case that that

12 qualifies as an administrative expense to the extent the claim

13 -- claims of discrimination have merit.

14     I must -- I must reject that argument.  As I pointed out

15 in the May 27 ruling, in order to qualify as an administrative

16 expense in a Chapter 9 bankruptcy case unlike Chapter 11

17 cases, other cases under other chapters of the Bankruptcy

18 Code, a claim must be for expenses incurred in connection with

19 the actual administration of the Chapter 9 case.  See in

20 particular at Pages 57 to 58 and 65 to 66 of the May 27th

21 transcript, the bench opinion I gave there.  Again it's

22 attached to docket 9934, the memorandum I filed May 4 in which

23 I made sure was mailed to Ms. Stanley shortly thereafter.

24     The -- one of the cases that support the view that the

25 type of expense that Ms. Stanley is claiming is not a proper

1 basis for an administrative expense is the case that the city

2 -- it cited before my May 27 ruling In Re: New York City Off

3 Track Betting Corporation, 434 BR 131.  In particular at 141

4 to 142 of that opinion, a decision of the Bankruptcy Court for

5 the Southern District of New York from 2010.

6     In that case the -- the Court held that what are

7 sometimes referred to as operating expenses of the debtor,

8 that is expenses of the debtor that are incurred after the

9 filing of a Chapter 9 bankruptcy case, are not allowable

10 administrative expenses simply because they are expenses of

11 the -- of municipalities' operations after the filing of the

12 petition date.

13     I -- I agree with that and the Court in that case cited

14 numerous authorities for that proposition and for the

15 proposition that in a Chapter 9 case because there is no

16 bankruptcy estate under Section 541 unlike what -- what

17 happens in a Chapter 11 bankruptcy case for example, the Court

18 cannot allow as an administrative expense any claim on the

19 theory that it's a necessary expense in preserving the

20 bankruptcy estate under Section 503(b) and in fact a narrower

21 definition and test for allowance of administrative expenses

22 applies in Chapter 9 unlike the -- the broader definition

23 under Section 503(b)(1) and that is as I stated earlier the

24 expense must be -- expenses incurred in connection with the

25 actual administration of the Chapter 9 case.

1    As I -- as I put in the May 27 bench opinion, and I also

2    say, "it is not sufficient in a Chapter 9 case to obtain an

3    allowed administrative expense merely to show and argue that

4    an employee worked for the municipality and through their work

5    as part of a work force that allowed the city to continue to

6    function while it was in Chapter 9 bankruptcy".

7    The -- in like manner a claim that an employee who worked

8    for the city after the filing of a bankruptcy case in a

9    Chapter 9 case and suffered employment discrimination in the

10   course of that also would not qualify for that reason alone as

11   an administrative expense, no matter how much merit the claim

12   might have as a claim under the -- the discrimination laws.

13   The quote I read from a -- a minute ago is from Page 66

14   of the transcript of my May 27 bench ruling.  Again that's

15   attached as -- to docket number 9934 filed June 4, 2015.

16   And so the city's futility argument is correct.  It would

17   be a futile exercise for the Court to hold the necessary

18   evidentiary hearing and make a ruling all for the sole purpose

19   of being able to determine whether or not Ms. Stanley could

20   show the necessary excusable neglect for having filed her

21   application for administrative expense claims after the

22   January 26, 2015 deadline.  And furthermore the Court must and

23   will sustain the city's objection to Ms. Stanley's application

24   for administrative expense claim and deny that application for

25   the -- the reason that it's not the subject of a proper

1 administrative expense that could be allowed as such in -- in

2 this Chapter 9 bankruptcy case under the law, no matter how

3 much merit the claim might have under discrimination laws.

4     And so that's the ruling of the administrative expense

5 claim.  The ruling on the motion for extension of time to file

6 that administrative expense claim is, that that motion is

7 denied because it would be futile for the Court to grant the

8 motion and also similarly because the motion actually is

9 rendered moot by the ruling the Court has just made regarding

10 the administrative expense application.  I'm denying the

11 application for administrative expense then for reasons

12 unrelated to the alleged untimeliness of the date on which it

13 was filed.

14     So I'll prepare and enter orders reflecting these

15 rulings.  Thank you.

16         MS. STANLEY:  Thank you for being so thorough, sir.

17         THE COURT:  Thank you.  All right.  The next matters

18 that we have again for a second hearing, further hearing, are

19 the matters concerning Sheila Reed.  Is Sheila Reed present?

20         MS. REED:  Yes, Your Honor, I am.

21         THE COURT:  Please come on up, Ms. Reed.  For the

22 record these are two related matters.  One is the application

23 for administrative expense claim that Ms. Reed filed on

24 January 30, 2015 at docket 9135 on the Court's docket and to

25 which the city objected.

1    The Court held a hearing on that on June 3rd.  And

2  promptly after the hearing, I guess the same day, Ms. Reed

3  filed, as the Court permitted her to do, filed an application

4  or motion to allow a late filed claim it was called.  It's

5  docket 9921 filed on June 3rd, 2015.

6    The -- asking the Court to allow -- retroactively allow

7  Ms. Reed an extension of the January 26, 2015 deadline for

8  filing administrative expense claims to the date on which Ms.

9  Reed actually filed her application for administrative expense

10  claim which was four days later, January 30, 2015 and in that

11  motion Ms. Reed argues excusable neglect.  Pardon me.

12    The city filed a timely objection to that motion on June

13  17, 2015 at docket 9980.  And the Court last Friday caused to

14  be issued a notice of hearing for hearing today on that

15  motion.  So that that could be heard together with the further

16  hearing on Ms. Reed's application for administrative expenses

17  which the Court scheduled for further hearing today during the

18  June 3rd hearing.

19    So the -- the Court entered an order on June 4, 2015 at

20  docket 9931 after the June 3rd hearing which required Ms. Reed

21  to file a motion seeking retroactively an extension of the

22  deadline to file administrative expense claims and required

23  that she do that no later than June 10, 2015.  That's the

24  motion that Ms. Reed did file on June 3rd.

25    The order, June 4 order, set a deadline for the city to

1 | file a response to any such motion and the city did do that on

2 | a timely basis.  The order said the city could include, in

3 | responding to that motion, its so-called futility argument

4 | which we discussed during the June 3rd hearing.

5 | The order also permitted Ms. Reed, said she could -- may

6 | file, she didn't have to, but she may file, a reply to the

7 | city's response no later than June 24.  She did not do that.

8 | I didn't see any such reply.  And that's fine, she wasn't

9 | required to do -- to do that.  And then the order said the

10 | Court would hold a further hearing today on the administrative

11 | expense claim and on any such motion to extend the deadline

12 | for that if one were -- were filed.

13 | So I've reviewed the papers filed by the parties after

14 | the June 3rd hearing.  And of course I re-reviewed the papers

15 | filed by the parties before that hearing in preparation for

16 | today's hearing.  And so now we'll -- we'll have the further

17 | hearing on the administrative expense application and first

18 | hearing on Ms. Reed's motion to extend the deadline to file

19 | that application.

20 | I'll hear first from Mr. Swanson for the city and then

21 | we'll hear from Ms. Reed.  Mr. Swanson.

22 | MR. SWANSON:  Well, thank you, Your Honor.  I'd like

23 | to begin with that June 4th order that you referred to.  And

24 | that June 4th order stated that Ms. Reed's motion in paragraph

25 | 1, "must be supported by an affidavit or a declaration under

1  penalty of perjury" and which Ms. Reed swears that she did not

2  actually received the December 10ᵗʰ, 2014 notice.  There was no

3  affidavit or a declaration attached to the motion.

4      The Court told Ms. Reed at the hearing, "if Ms. Reed does

5  not comply with the order by filing this motion to extend the

6  deadline with an affidavit or declaration under penalty of

7  perjury, attached by the deadline of June 10, the Court will

8  enter an order sustaining the city's objection on the grounds

9  of an untimely filing.

10      THE COURT:  You know, you're absolutely right.  I

11  did say that during the June 3ʳᵈ hearing.  I reviewed the

12  transcript of the June 3ʳᵈ hearing.  I -- I reviewed that after

13  you pointed that out in your written response to the motion

14  and I realized that I -- I said in the hearing to the parties

15  that I was going to include that in the order that I was going

16  to prepare and enter and then I -- I didn't do that.  I didn't

17  include it in the order, the June 4 order.

18      So I didn't do one of the things I said I was going to do

19  in the order.  But I -- I did see that in the transcript and

20  recall that I said that.  So your argument is even though it

21  wasn't in the June 4 order, I should -- I should -- I should

22  disallow or -- or deny the motion because Ms. Reed didn't file

23  the required declaration.

24      MR. SWANSON:  Exactly, Your Honor.

25      THE COURT:  Okay.  Go on.

1          MR. SWANSON:  And -- and Ms. Reed's claim much like

2     Ms. Stanley's claim is an administrative expense claim

3     alleging discrimination for the reasons the Court just stated

4     with -- with -- with respect to Ms. Stanley's claim, this is

5     not a administrative expense in a Chapter 9 case and both the

6     motion and application should be denied on that further basis.

7     Thank you.

8          THE COURT:  All right.  Thank you.  Ms. Reed, what

9     would you like to say about these matters?

10         MS. REED:  Just the information provided during the

11    last Court hearing which was June 3rd, I was just made aware on

12    January 29th, 2015 from the EEOC department about the -- they

13    were just made aware regarding administrative claim and

14    expense that I went ahead and filed I believe on June --

15    January 30th.

16         They weren't aware that -- of the January 26 date until

17    after that.  They -- was provided to me.  That was due to the

18    original late filing which the last Court hearing that's why I

19    filed an extension.  I didn't receive -- most of the

20    bankruptcy documents I received at my home at the Pinecrest

21    address, however, the administrative claim part I didn't start

22    receiving until I filed my administrative claim as of January

23    30th.

24         THE COURT:  Why didn't you file with your motion an

25    affidavit or a declaration under penalty of perjury in which

1  you swear that you did not actually receive the December 10,

2  2014 notice of the bar date to file an administrative expense

3  claim.  You've said it or alluded to it in your handwritten

4  motion that you filed June 3rd.  I guess you went right from

5  the hearing to the clerk's office and filed this.

6      But you didn't include in there any affidavit or

7  declaration under penalty of perjury.  Now I -- I did tell you

8  during the hearing that you needed to do that and if you filed

9  such a motion and I put it in the June 4 order in Paragraph 1,

10  docket 9931 that you must do that.  That any such motion must

11  be supported by such an affidavit or a declaration under

12  penalty of perjury.

13      One of the reasons I did that is because as -- as we

14  discussed during the June 3rd hearing, there is what I've --

15  I've referred to occasionally as the mailbox rule.  That is

16  under 6th Circuit case law in the Yoder case which we talked

17  about during the June 3rd hearing, there is the presumption

18  that a document that was mailed with postage to someone's

19  correct address was actually received at that address.  That

20  presumption is rebuttable, it can be rebutted among other

21  things -- it has to be rebutted by evidence and that can

22  include testimony of the person who the item is addressed to

23  saying they didn't receive it.

24      So and -- and by the way we -- we discussed this at the

25  -- there is a copy of the transcript of the June 3rd hearing in

1  the record.  It was filed on June 5, 2015 at docket 9939.  And

2  the pages of which we discussed this presumption and the way

3  it could be rebutted includes Pages 17 to 18.  And I cited the

4  Bratton v the Yoder Company case on that subject.

5      But so why didn't you file an affidavit or a declaration

6  under penalty of perjury?  That -- that would have been

7  evidence, some evidence that I could point to if you had done

8  that that said okay, here's evidence which rebuts the

9  presumption of receipt that exists under the law.  But you

10 didn't do that.  So why didn't you do that?

11         MS. REED:  I didn't file it for the fact of I'm not

12 the only one in my home that receives the mail.  My husband

13 receives mail and -- and I wasn't sure when I went over with

14 the documents with him to see if he recalled receiving.  He

15 received bankruptcy documents too because he was a former city

16 worker.

17     So he wasn't clear or sure that we actually received the

18 -- the documentation regarding administrative claim, the

19 deadline process.  So I was -- I didn't submit the declaration

20 page because of the fact I didn't know if he misplaced it.  I

21 know I didn't personally receive it, but that wasn't an excuse

22 for to say that I know I didn't get it, but I know he didn't

23 give it to me.  And I don't recall reading it.  I read all of

24 my mail, my personal mail that I receive.

25         THE COURT:  It sounds like what you're saying is

1  you didn't file the declaration and affidavit that we're

2  talking about because you didn't feel you could truthfully say

3  in an affidavit or declaration under penalty of perjury, that

4  this notice was not actually received at your home.

5          MS. REED:  Correct.

6          THE COURT:  Is that right?

7          MS. REED:  Correct.

8          THE COURT:  It may have been.

9          MS. REED:  It may have been.

10         THE COURT:  All right.

11         MS. REED:  He may have gotten it and figured it

12  wasn't nothing important, you know.  I don't know, he -- he --

13         THE COURT:  All right.

14         MS. REED:  He couldn't recall and I wasn't going to

15  lie and say I got it if -- say I didn't get it if I actually

16  got it and he did something, misplaced it.  Because we went

17  all over -- we still have a lot of the bankruptcy paperwork

18  from -- that the City of Detroit had been sending out for the

19  past -- since they filed the bankruptcy.  So we're trying to

20  find it.  We couldn't find it, but I couldn't say -- say nay

21  or yea that I received it or not.

22         THE COURT:  All right.  What else would you like to

23  say about your motion or your administrative expense claim?

24         MS. REED:  Oh, initially the filing that I -- that

25  brought all this along in the Bankruptcy Court, initially was

1  from the EEOC complaint that was filed based on departments.

2  I received notice from the EEOC about the case that they don't

3  have the resources to investigate my EEOC complaint which is

4  -- I think is irrelevant to the fact that we filed a

5  discrimination case and they don't have the resources to

6  re-investigate what the city didn't do.  I don't think that

7  was proper procedure, that's why I'm here in the first place,

8  but that's all at this time, Your Honor.

9          THE COURT:  Did you want to say anything about this

10  what I've labeled as this futility -- the futility argument by

11  the city?  That is that your claim of employment

12  discrimination is not the type of claim that can qualify to be

13  treated as an administrative expense in -- in this Chapter 9

14  case?

15          MS. REED:  I understood what you have said on the

16  previous case from A to Z about the administrative portion and

17  dealing with Chapter 9 bankruptcy filed by the City of

18  Detroit.

19          THE COURT:  In other words you're saying -- you sat

20  through this hearing -- earlier hearing today where --

21          MS. REED:  Yes, sir.

22          THE COURT:  -- I made a ruling on Sherell Stanley's

23  claim?

24          MS. REED:  Yes, sir.

25          THE COURT:  Okay.  So you heard what I said about

1 | that.  Did you want to say anything about that -- this -- this

2 | issue or not?

3 |      MS. REED:  As to why it wouldn't be -- if the city

4 | wasn't in bankruptcy and there was an issue with the employees

5 | we're still -- my personal opinion that we're still

6 | representatives as well as employees that represent the City

7 | of Detroit.

8 |    So if anything if we went outside the content of doing

9 | something as in the city to an employee, then that would be

10 | against us and I guess the city feels that they're not

11 | responsible and -- and our claims that we make, you know,

12 | which I don't understand why not, that there is something

13 | discriminatory or as for outweighs the salaries, if I don't

14 | earn the salary, you know, if I work for it to earn the

15 | salary.  But then when we file the claim the paperwork now the

16 | city is saying that, you know, based on I guess the bankruptcy

17 | that they filed then they're not responsible which I -- I

18 | don't understand why not, but -- I don't know if it's based on

19 | the filing that they filed which doesn't make them responsible

20 | for any claimants, not just city employees, but residents of

21 | the city as well.

22 |    I mean it was like everything that's filed through the

23 | Courts will be thrown out because it's not part of their

24 | initial claim.  I don't understand why because we represent

25 | the city as employees of the city.

1          THE COURT:  All right.  Anything else you'd like to

2    say?

3          MS. REED:  No, Your Honor.

4          THE COURT:  Mr. Swanson, you can reply briefly if

5    you wish.

6          MR. SWANSON:  No, thank you, Your Honor.

7          THE COURT:  Well, I have a question, Mr. Swanson.

8    And perhaps we -- we did talk about this at the June 3rd

9    hearing that even in connection with Ms. Reed's claim or for

10   the matter or Ms. Stanley's.

11       But in Ms. Reed's case, and Ms. Stanley's for that

12   matter, where if the -- if the claim is that after the filing

13   of the bankruptcy case post-petition the city illegally

14   discriminated against one of its employees, employment

15   discrimination, that -- and that's -- and assume that's viewed

16   as a post-petition claim.

17       I mean we have a matter today later that deals with this

18   question of is it a pre-petition or is it a post-petition

19   claim.  Assume it's a post-petition claim everything --

20   everything occurred post-petition.  Is that -- and I've --

21   I've ruled in Ms. Stanley's case that that's not the kind of

22   claim that can be an allowed administrative expense.  It's not

23   a pre-petition claim.

24       It -- it is a claim that is -- do you agree it's a claim

25   that's not discharged in the city's case and it's a claim that

1  the city has -- will have to defend and -- and deal with on

2  the merits and -- and it can be pursued by the claimant.  In

3  other words that's their recourse if the claim is not allowed

4  as an administrative expense claim, that's the recourse

5  employees have for post-petition employment discrimination

6  claims.  Do you agree?

7          MR. SWANSON:  Well, Your Honor, by definition under

8  the plan other unsecured claims are claims that are not

9  administrative expense claims or any other claim that is

10 treated by the plan.  So the city would view these potential

11 claims as under unsecured claims.

12         THE COURT:  You're not saying -- you're saying

13 they're part of Class 14?

14         MR. SWANSON:  Definitionally under the plan I think

15 -- I think they are.

16         THE COURT:  So a post-petition employment

17 discrimination claim is part of Class 14?

18         MR. SWANSON:  Yes.

19         THE COURT:  And is discharged?  Or not discharged?

20         MR. SWANSON:   The discharge as -- except as

21 provided in the plan or in the confirmation order and the

22 rights afforded under the plan and the treatment of claims

23 under the plan will be in exchange for and in complete

24 satisfaction discharge and release of all claims arising on or

25 before the effective date.

1          THE COURT:  Arising on or before the effective date

2   is on or before December 10, 2014.

3          MR. SWANSON:  Correct.

4          THE COURT:  So if the discrimination claim arose on

5   or before that date you're saying, it's discharged under the

6   plan and concomitantly I guess it would be considered part of

7   Class 14.

8          MR. SWANSON:  That's how I read it.

9          THE COURT:  But if it -- if it arose after December

10  10, 2014, it's not discharged by the claim, is that what

11  you're saying?

12         MR. SWANSON:  That would be my interpretation.

13         THE COURT:  And someone who has a discrimination

14  claim that arose before December 10, 2014, could be -- could

15  have an allowed claim treated under -- it would be treated

16  under Class 14 of the confirmed plan.

17         MR. SWANSON:  That's correct, Your Honor.

18         THE COURT:  And is that true even if the claim arose

19  after February 21, 2014, the deadline for filing proofs of

20  claim yet but before December 10, 2014?  See what I'm asking?

21         MR. SWANSON:  Sure.  So you're --

22         THE COURT:  If their claim arose at a time when --

23  after the deadline for them to file a proof of claim, they

24  have an allowed claim in Class 14, the claim arose after that

25  but before the effective date of the plan, what's the claimant

1  to do?  What recourse would they have?

2          MR. SWANSON:  I think the recourse would be to come

3  here and -- and to assert and lodge a complaint.

4          THE COURT:  By doing what?  Filing a motion?  Filing

5  a proof of claim?

6          MR. SWANSON:  I think at that point -- I think at

7  that point they could file a proof of claim or file a motion.

8          THE COURT:  All right.  Now in the case of Ms. Reed

9  here, her application for administrative expense claim at

10 least, the one which she filed January 30th says that basically

11 the actions of the city that she says constitute employment

12 discrimination violating Title 7 began on January 14, 2014.

13     So that date, beginning date at least is before the

14 deadline for filing proofs of claim and well before the

15 effective date of the confirmed plan.  So I guess -- I don't

16 recall you saying anything in your papers about Ms. Reed

17 having filed a proof of claim.

18         MR. SWANSON:  I -- I don't -- I -- maybe the EEOC

19 filed a proof of claim on her behalf, but I -- I don't recall,

20 I'd have to check.

21         THE COURT:  Okay.  All right.  All right.  Well, I

22 guess -- I guess this discussion -- I was curious about the

23 city's position because I -- part of what Ms. Reed seemed to

24 be saying just now is, if I don't have an administrative

25 expense claim, what's my recourse if I'm discriminated against

1  illegally by the city in -- in my employment after the filing

2  of the bankruptcy case.  So is there anything else you want to

3  say about that subject?

4          MR. SWANSON:  No, Your Honor.

5          THE COURT:  All right.  Well, thank you.  That -- it

6  -- this subject is one that -- that may come up again in the

7  -- in the case of Ms. Reed's discrimination claim, perhaps in

8  others here.

9      But for now I'll leave it at -- at that and -- and you

10 know without making any ruling on whether what Mr. Swanson has

11 just said is the city's position is correct or to what extent

12 it's correct.

13     Ms. Reed, let me come back to you.  Is there anything

14 else you want to say here about the matters that are before

15 the Court today?

16         MS. REED:  No, Your Honor.

17         THE COURT:  All right.  Well, thank you both.  I'm

18 going to rule on these matters too now.

19     The -- with respect to Ms. Reed's motion, application to

20 -- let's start with her application for an allowed

21 administrative expense claim.  That's the application that was

22 filed on January 30, 2015, docket 9135.

23     That application to which the city has objected must be

24 denied and the city's objections sustained for two reasons.

25 First, because the application was not filed by the January

1   26, 2015 deadline for filing administrative expense

2   applications.  It was filed January 30 instead.  And for

3   reasons I'll discuss in a minute, Ms. Reed's motion asking the

4   Court to retroactively extend the deadline from January 26 to

5   January 30 must be denied.

6        And the second reason for denying her application for an

7   allowed administrative expense claim is based upon the city's

8   argument, which I agree with here, that her claim is not the

9   type of claim that can be granted or can be allowed as an

10  administrative expense claim in this Chapter 9 bankruptcy

11  case.

12       For that conclusion, I -- I would simply incorporate by

13  reference what I said earlier today in the hearing that we had

14  a few minutes ago in which Ms. Reed was present for and heard

15  and was listening to regarding the administrative expense

16  claim of Sherell Stanley.  Everything I said on that subject

17  in connection with Ms. Stanley's claim applies here.

18       And so for those reasons the application for

19  administrative expense claim by Ms. Reed must be denied.  And

20  I'll prepare and enter an order reflecting that ruling.

21       With respect to Ms. Reed's motion for an extension of the

22  deadline to file her administrative expense claim, that will

23  be denied for two reasons.  Number one, because it is -- it is

24  rendered moot by the Court's ruling that even if being timely

25  her application for an allowed administrative expense could

1 | not be allowed on the merits because of the nature of the

2 | claim and the nature of the claim is not such that would

3 | qualify for administrative expense treatment.

4 |     And secondly, because Ms. Reed has failed to demonstrate

5 | excusable neglect.  Her excusable neglect argument in support

6 | of her motion is that she didn't receive notice of the January

7 | 26, 2015 deadline to file administrative expense claims before

8 | that deadline had passed.

9 |     We discussed this argument at the June 3rd hearing on the

10 | city's objection to Ms. Reed's administrative expense claim.

11 | As discussed during that hearing and as reflected in the

12 | Court's order of June 4, docket 9931, Paragraph 1, the Court

13 | required Ms. Reed to file a motion seeking retroactively an

14 | extension of the January 26th deadline on the ground of

15 | excusable neglect.

16 |     And while Ms. Reed filed such a motion, and that's the

17 | motion I'm ruling on right now on June 3rd, docket 9921 shortly

18 | after the hearing, she did not comply with the rest of

19 | Paragraph 1 of the order, the June 4 order which required her

20 | to -- to support any such motion with an affidavit or a

21 | declaration under a penalty of perjury in which Ms. Reed

22 | swears that she did not actually receive the December 10, 2014

23 | notice of the bar date to file an administrative expense

24 | claim.

25 |     Ms. Reed has candidly acknowledged in today's hearing

1  that she did not file such a declaration or affidavit because

2  after talking to her husband, she could not be sure, could not

3  say and could not swear that the notice, the December 10, 2014

4  notice was not actually received in the mail at her home.

5      And so the -- the basis for Ms. Reed's excusable --

6  excusable neglect argument and her motion to extend the time

7  is unsupported by any evidence.  And therefore Ms. Reed, after

8  being given an opportunity to do so has not rebutted the

9  presumption that arises under the case law in the Bratton v

10  Yoder case which I talked about earlier in today's hearing and

11  also during the June 3rd hearing specifically regarding Ms.

12  Reed's administrative expense claim.

13      She has not rebutted the presumption that arises that the

14  notice of the December -- the December 10, 2014 notice was

15  actually received by her in the mail after it was mailed to

16  the correct address with proper postage by the city's

17  servicing and noticing agent back in December 2014.

18      The -- because of that presumption and the failure of Ms.

19  Reed to rebut the presumption, the Court must find and does

20  find that Ms. Reed did in fact receive that in the mail

21  shortly after it was mailed back in December 2014.  And that

22  December 10, 2014 notice did give clear notice of the deadline

23  to file administrative expense claims and that it was January

24  26, 2015.

25      And so Ms. Reed's motion must be denied for those

1  additional reasons, her motion to extend the deadline.  And so

2  I'll prepare and enter an order that's reflecting these

3  rulings on these two matters and as I said earlier I'm not

4  going to comment or rule at this time regarding any further

5  issues about what recourse, specific recourse Ms. Reed and

6  employees like herself have against the city if they have in

7  fact -- do in fact demonstrate that they suffered illegal

8  employment discrimination by the city that occurred after the

9  filing of the city's Chapter 9 bankruptcy case as opposed to

10  discrimination that occurred before.

11        That's an issue that may come up again in the context or

12  in connection with Ms. Reed and possibly others.  And the

13  Court will deal with that motion -- or that issue when it is

14  actually presented to the Court in the context of an actual

15  motion or other justiciable dispute that the Court has to hear

16  and decide in this case.  So, thank you.

17            MS. REED:  Thank you.

18            MR. SWANSON:  Your Honor, would you like to hear the

19  Wolak or the Hughes matter next?

20            THE COURT:  The -- I want to hear the Wolak matter

21  next.

22            MR. SWANSON:  Thank you, Your Honor.  First off,

23  Your Honor --

24            THE COURT:  Let me get it, just a second.

25            MR. SWANSON:  I'm sorry.

1          THE COURT:  Hold on just a second.  All right.

2   Thank you.

3      On this matter we have -- Mr. Swanson, you're going to

4   argue for the city.  And Mr. Dworetsky, am I saying that

5   right?

6          MR. DWORETSKY:  Yes.  Thank you, Your Honor.

7          THE COURT:  You're going to be arguing on behalf of

8   the -- the movant, Steven Wolak, personal representative, et

9   cetera.  So this is a motion by Mr. Wolak to which the city

10  has objected.  Mr. Swanson, you're on your feet.  You're going

11  to -- you're going to talk first about their motion?

12         MR. SWANSON:  Happy to let them talk, I apologize,

13  Your Honor.

14         THE COURT:  Okay.  I thought perhaps you had agreed

15  to a resolution of it and that's why you were up.

16         MR. SWANSON:  No, no, no.  No resolution.

17         THE COURT:  Well, I want to hear from -- in this

18  case I want to hear from moving counsel first, so thanks.

19         MR. SWANSON:  Apologize.  Thank you.

20         THE COURT:  Mr. Dworetsky can -- and please tell me

21  if I'm mispronouncing your name.

22         MR. DWORETSKY:  No, you're not, Your Honor.

23         THE COURT:  Okay.

24         MR. DWORETSKY:  That's great.

25         THE COURT:  What would you like to say about this

1  motion?  I have read the motion, the city's response to it,

2  the reply brief that you filed on January -- or July 10.  So

3  what would you like to say?

4        MR. DWORETSKY:  I -- I have nothing to add that's

5  not in -- in the brief, I would just stress to Your Honor that

6  really -- really at the core this is just a request of this

7  Court to exercise its inherent equitable power given the

8  circumstances of the treatment of this claim from -- from the

9  onset in that this is a settlement that was made to us before

10  petition.

11      After a year of litigation the city had claimant

12  compromise, compromise the claim at one time.  It was entered

13  on the record two months prior to the petition.  City council

14  approved the settlement, a release was signed promising prompt

15  payment, however it -- there was an insertion of a time is of

16  the essence clause at the same time.

17      The city then files its petition --

18        THE COURT:  Time is or is not?

19        MR. DWORETSKY:  Is not.

20        THE COURT:  Is not of the essence.

21        MR. DWORETSKY:  At the same time promising to -- to

22  -- to procure prompt payment.  Your Honor, it just -- it just

23  rubs the wrong -- the wrong way.

24        THE COURT:  Well, all of that happened pre-petition.

25        MR. DWORETSKY:  Absolutely.

1          THE COURT:  Before the filing of the bankruptcy

2   case.

3          MR. DWORETSKY:  It did.  And it all happened while

4   -- while this bankruptcy is looming.  They're on the brink of

5   bankruptcy.  They know this thing is coming yet they negotiate

6   with -- with my client to compromise the claim.

7          THE COURT:  Well, they're not -- the city isn't the

8   only entity that knew it was coming, were they?  You had no

9   inkling?

10         MR. DWORETSKY:  Understood, however, the city was

11  the one that was making the payment.

12         THE COURT:  I mean it's not -- it -- it -- it could

13  not have come as a terrible surprise to you or your client

14  that the city filed bankruptcy when they did, do you agree?

15         MR. DWORETSKY:  I think -- I think what comes as --

16  as a surprise is that the settlement was negotiated two months

17  prior and payment is not made even after city council

18  approval.  Even after execution of the release.  It's bad.  It

19  just rubs -- it's bad faith.

20     This -- this is an equitable determination through this

21  Court's discretion.  The objection to the response -- or the

22  objection to our motion was -- was frankly surprising given

23  what -- what had occurred at the reserve motion hearing.  This

24  is not something that has been ruled upon by this Court.

25         THE COURT:  I agree with you on that.

1          MR. DWORETSKY:  That was all on the record.

2          THE COURT:  No, I -- I agree with you -- your point

3  about that.  The city, to the extent the city has argued that

4  I have ruled on the merits of your arguments that are

5  presented by this motion is -- is just wrong, it's not

6  correct.  I agree with you about that.

7          MR. DWORETSKY:  Yeah.

8          THE COURT:  I don't think we need an extended

9  discussion of that.  That's clear from the transcript of the

10  -- I think it was April 15, was it?

11         MR. DWORETSKY:  That's correct.

12         THE COURT:  April 15 hearing on the so-called

13  reserve motion.

14         MR. DWORETSKY:  Reserve motion.

15         THE COURT:  Yeah.

16         MR. DWORETSKY:  Correct, correct.  I -- I have

17  nothing further to add to what's already -- already in the

18  papers.  Given the city's conduct, we are asking for what the

19  city will argue is extraordinary relief, however, we think

20  it's justified given its conduct.

21         THE COURT:  Well, you want -- it looks like -- if I

22  understand your motion correctly, you want the Court to order

23  the city to pay the settlement amount in full 100%.

24         MR. DWORETSKY:  Correct.

25         THE COURT:  Now, in cash

1          MR. DWORETSKY:  Correct.

2          THE COURT:  And if I won't do that for some reason

3  in the alternative you want me to enter an order, I guess

4  voiding the settlement or something to that effect.

5          MR. DWORETSKY:  That's correct.

6          THE COURT:  So that -- presumably so that your claim

7  is not limited to the $375,000 settlement amount --

8          MR. DWORETSKY:  Absolutely.

9          THE COURT:  -- that your client agreed to

10  pre-petition.

11          MR. DWORETSKY:  Correct.  That's correct.

12          THE COURT:  Okay.  As to the first piece of that,

13  ordering the city to pay your client's claim in full, the

14  $375,000, the -- the settlement in full, I don't -- I'm having

15  trouble understanding how I could possibly order that given

16  what the confirmed Chapter 9 plan of adjustment says.

17      Your client's claim, I -- I think the city is correct in

18  -- in arguing, that your client's claim is treated as part of

19  Class 14 under the confirmed plan of adjustment which was

20  confirmed back in November and became effective December 10,

21  2014.  And the plan says that claims, allowed claims in Class

22  14, it doesn't say they get cash at all.  It doesn't say they

23  get full payment of their claims.  It says they get a pro rata

24  share of a certain amount of -- of so-called new B notes, I

25  think is the term, maybe excess new B notes too, but notes

1        And it's a pro rata share.  And as the -- as my

2   predecessor Judge, Judge Rhodes' opinion, written opinion

3   regarding confirmation of the plan pointed out, that -- that

4   -- that treatment is -- was estimated at the time to be a pro

5   rata treatment to -- to result in a recovery on these allowed

6   claims of far less than 100%.  I think he gave a percentage,

7   estimate, or range in the -- and it is far less than 100%.

8   This is what the confirmed plan says, isn't it?

9            MR. DWORETSKY:  It is.

10           THE COURT:  Okay.  So why isn't your client bound by

11  the -- the confirmed plan just like everybody else under

12  Section 944(b)(1) of the Bankruptcy Code -- I'm sorry, 944(a)

13  which says that the provisions of a confirmed plan bind the

14  debtor and any creditor whether or not approved such

15  creditor's claim is filed or deemed filed, such claim is

16  allowed, or such creditor has accepted the plan.

17       In other words, the confirmed plan precludes the Court

18  from granting this sort of first part of the relief that

19  you're -- that you're seeking, doesn't it?

20           MR. DWORETSKY:  I don't think it does.

21           THE COURT:  Why not?

22           MR. DWORETSKY:  I -- I -- I think that what

23  distinguishes this claim is the consistent bad faith conduct

24  of the city with regards to this claim.  In its negotiation

25  and in its handling after -- after the negotiation -- the

1  negotiation, the handling, and the inability to -- to get it

2  paid when it should have.  I think that conduct is what

3  distinguishes this claim and -- and --

4           THE COURT:  But all of that --

5           MR. DWORETSKY:  -- should -- should permit --

6           THE COURT:  All of that is pre-petition conduct.

7           MR. DWORETSKY:  Agreed, agreed.  However, based upon

8  that conduct --

9           THE COURT:  And so all of that to the extent that

10 that's actionable, that bad faith is actionable in any way is

11 a pre-petition claim that your client has.

12          MR. DWORETSKY:  Yes.

13          THE COURT:  And it -- it is a pre-petition claim

14 the type that falls in Class 14, the other unsecured claims

15 and the plan provides how those claims are to be treated.

16          MR. DWORETSKY:  It does.  However, we're asking this

17 Court to -- to invoke its -- its equitable power to -- to

18 remove this claim from the plan, given -- given the unique

19 circumstance.

20          THE COURT:  You didn't -- you haven't cited

21 section --

22          MR. DWORETSKY:  It's an unjust result.

23          THE COURT:  You haven't cited Section 105(a) of the

24 Bankruptcy Code which is often cited by parties as a source of

25 the Bankruptcy Court's inherent equitable powers.  Maybe it's

1  to your credit you haven't cited Section 105(a).  People cite

2  that all the time for whenever they can't find a Code section

3  that gives them what they want otherwise.

4      But Section 105(a) says the Court may issue any order,

5  process, or judgment that is necessary or appropriate to carry

6  out the provisions of this title.  That's part of what it

7  says.

8      And the case law is pretty clear under Section 105(a)

9  that Courts -- the Bankruptcy Courts can't use section -- that

10  authority under Section 105(a) to order relief that is

11  inconsistent with some other expressed provision of the

12  Bankruptcy Code.  Which takes me back to 944(a).  Which says

13  creditors, including your client, is bound by the confirmed

14  plan.

15      Doesn't that prevent me from giving you the first part of

16  the relief that you're after?  That's what I'm getting at.

17          MR. DWORETSKY:  I would -- I understand.

18          THE COURT:  You -- you seem to be just saying well,

19  I don't know if it's 105(a) or what it is, but Bankruptcy

20  Courts are Courts of equity and they have this broad equitable

21  power and they can do what's right, and what's fair, and

22  what's just, even if it's inconsistent with a confirmed plan.

23          MR. DWORETSKY:  That's our argument.

24          THE COURT:  Do you have any authority for that

25  proposition?

1          MR. DWORETSKY:  Other -- other than the fact that

2   this -- this Court has equitable power, no.  No.

3          THE COURT:  All right.  Well, let's talk a minute

4   about the alternative relief in your motion.  If we get to

5   that level, as I understand it in that -- on that subject, as

6   I understand it your client has filed a proof of claim and

7   it's I think $3,000,000?

8          MR. DWORETSKY:  That's correct.

9          THE COURT:  Yeah.  It was discussed at the April 15

10  hearing at that --

11          MR. DWORETSKY:  Yes.

12          THE COURT:  And in the objection you filed in the

13  reserve motion.  I think it's -- and it might have been

14  mentioned in the papers for the motion today.  So you filed a

15  proof of claim for $3,000,000.  Obviously far more than the

16  $375,000 settlement amount.

17      And -- and your reply seemed to -- I guess your reply

18  seemed to suggest that that -- that's and I'm kind of reading

19  between the lines, that that was sort of a hedge against --

20  against the possibility that in the bankruptcy case your

21  client wouldn't get paid the $375,000 in cash in full as --

22  which is your first choice.

23      So you have this $3,000,000 proof of claim.  Has the -- I

24  don't think the city has -- or anyone else has actually

25  objected to that claim yet, have they?

1        MR. DWORETSKY:  I do not believe so.

2        THE COURT:  Okay.  The city still has several months

3   to go before the deadline for them to object to claim so that

4   may -- that may happen, but it hasn't happened yet.

5        And let's assume I -- I rule that you can't be -- your

6   client can't be ordered -- I can't order the city to pay the

7   three seventy-five cash to your client as -- as you wish among

8   other -- for among other possible reasons the fact that it's

9   inconsistent with the confirmed plan.  Where that leaves you I

10  think is, and the city too is -- would leave you is, you got

11  this proof of claim on file and the city -- if the city wants

12  to object to that they'll object to that.

13       If they object to that, then you could file a response to

14  the objection whatever their arguments may be but as of now

15  you have a claim -- a claim for $3,000,000 which not -- has

16  not been objected to.

17       The arguments you're making in this motion seems to me

18  might -- some of them may be arguments that you could also

19  make if the city were to object to the $3,000,000 claim at

20  some future point and say, it's not 3,000,000, it was settled

21  for three seventy-five.  And -- and if you already have by

22  ruling of this Court for example it might be made today, been

23  told you can't get the three seventy-five under the confirmed

24  plan, you get a pro rata share of new B notes shared pro rata

25  with the other allowed claims in Class 14 based on what the

1  allowed amount of your claim is and nothing more.

2      And some of the arguments you're making in your motion

3  and today might be arguments you would -- you would make if

4  the city tried to say in objecting to the $3,000,000 claim

5  hey, it's three seventy-five, it's not 3,000,000.  Should I --

6  should I leave that alternative relief piece for another day

7  and wait and see if the city objects to the claim and see what

8  the arguments are and see what your arguments are and deal

9  with it then?

10          MR. DWORETSKY:  I -- I would have no objection to

11  the Court's characterization of our alternative relief as

12  premature.

13          THE COURT:  I didn't say that, but --

14          MR. DWORETSKY:  Or ruling on it or considering it.

15          THE COURT:  You might have just said -- you might

16  have just captured it far more efficiently than I did in my

17  question, the point.

18          MR. DWORETSKY:  Yeah.

19          THE COURT:  All right.  Well, what else would you

20  like to say about this motion?  Anything?

21          MR. DWORETSKY:  Your Honor, I -- I trust that you

22  read the briefs in full.  I'm not going to take any more of

23  the Court's time.  Just plead on the Court's equitable power,

24  Your Honor.

25          THE COURT:  All right.  Well, thank you then.  We'll

1  hear from Mr. Swanson next.

2          MR. SWANSON:  Thank you, Your Honor.  Your Honor,

3  there is absolutely no basis to grant this motion.  It ignores

4  bankruptcy law, it ignores the plan, and it ignores the

5  confirmation order.

6      Mr. Wolak has not cited one case which comes even

7  remotely close to the relief he asks for.  He has a Class 14

8  claim under the plan.  The plan controls the treatment.  If

9  Mr. Wolak wanted to object to the plan, he could have done so.

10  He didn't.  The plan is controlling.  And -- and really the

11  city has nothing further.

12          THE COURT:  Is that -- I don't know if you mentioned

13  that in your response to the motion.  And I -- perhaps I

14  should have asked, Mr. Dworetsky.  But Mr. Wolak did not file

15  any objection to confirmation of the plan, is that what you're

16  saying?

17          MR. SWANSON:  Based on my review of the docket,

18  that's correct.

19          THE COURT:  Okay.  I mean he could have but he

20  didn't is what you're saying.

21          MR. SWANSON:  Exactly.

22          THE COURT:  Okay.  Go on.

23          MR. SWANSON:  The city has nothing further, Your

24  Honor.  The motion is completely unsupported, the plan

25  controls the treatment of -- of its claim.  The plan in Class

1  14 prescribes what he is entitled to receive if and when he

2  were to receive an allowed unsecured claim which he does not

3  have yet.  And -- and there's no authority to grant this

4  motion and it should be denied.

5       THE COURT:  Am I correct then in saying that the --

6  the city has not yet filed any objection to the proof of claim

7  filed by Mr. Wolak., the $3,000,000.

8       MR. SWANSON:  I believe that to be correct.

9       THE COURT:  Okay.  The city may, but they haven't

10 done it yet.

11      MR. SWANSON:  That's correct, Your Honor.

12      THE COURT:  And is it fair to say that you don't

13 know at this moment whether the city will object to that claim

14 and -- and if so what the objection will be?

15      MR. SWANSON:  That's correct, Your Honor.

16      THE COURT:  All that's correct?

17      MR. SWANSON:  Yes.

18      THE COURT:  All right.  Anything else, Mr. Swanson?

19      MR. SWANSON:  No, thank you.  No, Your Honor.

20      THE COURT:  All right.  Mr. Dworetsky, if you want

21 to reply briefly as counsel for the moving party here you may

22 do so.

23      MR. DWORETSKY:  Nothing further, Your Honor.

24      THE COURT:  All right.  Thank you both.  I'm going

25 to rule on this motion.

1      The motion must be denied for the following reasons.

2  First, to the extent the motions -- of the motion, the primary

3  relief sought by the motion which as I understand it is the

4  moving party, Mr. Wolak seeks an order compelling the city to

5  pay $375,000 in cash, 100% of that amount to Mr. Wolak which

6  would be 100% of the amount, the settlement amount that the

7  city and Mr. Wolak as personal representative agreed to before

8  the filing of the Chapter 9 bankruptcy case by the city back

9  in July 2013, albeit shortly before, but before.

10      To the extent of that relief, that primary relief that

11  Mr. Wolak seeks here, the Court simply cannot grant such

12  relief.  I agree with the city's argument that there is no

13  valid basis under the Bankruptcy Code, or bankruptcy law, or

14  -- or otherwise, no valid legal basis for the city -- for the

15  Court to order that relief.  And -- and beyond that the --

16  that relief is in my view barred, prohibited by the confirmed

17  Chapter 9 plan of adjustment in this bankruptcy case.

18      Under 11 USC Section 944(a), Section 944(a) of the

19  Bankruptcy Code, Mr. Wolak as a creditor is bound by the

20  provisions of the confirmed plan of adjustment and that means

21  he is bound by the treatment that is to be accorded to his

22  claim in this bankruptcy case to the extent the claim is

23  allowed in whatever amount it's allowed, and that treatment is

24  -- is not that the claim is to be paid 100% of the settled --

25  agreed settlement amount that is $375,000.  It's not even that

1   the claim is to be paid directly in cash at all.

2       The claim rather is to be -- to the extent it's an

3   allowed claim ultimately, is to be paid through as part of a

4   Class 14 -- one of the Class 14 claims to be paid a pro rata

5   share of the quantity of new B notes that are to be -- were

6   issued or are to be issued under the confirmed plan.  And the

7   amount or value of such notes is that -- are to go to Mr.

8   Wolak would be a pro rata share of -- of -- of such notes --

9   in the pot of such notes available for Class 14 creditors and

10  will depend upon the -- because it's a pro rata share, it will

11  depend upon the ultimate allowed -- actual allowed amount of

12  the claim and the actual allowed amounts of the other claims

13  that are allowed that are part of Class 14 which there are

14  many.

15      The -- and so what Mr. Wolak is asking for, is treatment

16  dramatically different from -- it's materially different from

17  that which is provided by the confirmed plan for his claim and

18  the Court simply cannot order such relief.

19      The -- all of the actions by the city that Mr. Wolak

20  complains of in the motion and characterizes as -- as part of

21  this argument that the city is guilty of bad faith, concerns

22  actions and omissions that occurred before the filing of the

23  city's Chapter 9 bankruptcy case on -- in July 2013.

24      So it is clearly and entirely a pre-petition claim that

25  Mr. Wolak has.  And in fact he filed a proof of claim in the

1   case not in the $375,000 settlement amount, but in the much

2   larger amount of $3,000,000.

3       So to the extent that claim and any amount that that

4   claim ultimately is allowed in this case, it would be treated

5   as all other allowed Chapter 14 claims that will be treated

6   under the plan of adjustment that was confirmed by the Court.

7       The alternative relief sought by the motion which is

8   well, if you don't -- if you don't order the city to pay me

9   the $375,000 settlement amount in full in cash, then as an

10  alternative -- as the motion says, "the settlement should be

11  voided for lack of bargained for consideration.  The claimant

12  should be permitted to further prosecute his claim in a

13  reinstated action".

14      The action in which the claim is asserted after the

15  filing of the city's bankruptcy case in which it has been

16  asserted is in the form of the proof of claim that Mr. Wolak

17  filed in this bankruptcy case for $3,000,000.  And to date no

18  one, including the city has filed any objection to that claim.

19      If and when the city objects to that claim for any

20  reason, then Mr. Wolak can respond and that -- such a claim

21  objection proceeding may lead to litigation between the

22  parties but unless and until there is an objection to the

23  claim, there is no need for litigation of that claim and there

24  is no need for any sort of reinstating of the pre-petition

25  State Court lawsuit for example that was filed apparently by

1  Mr. Wolak to pursue his claim.

2      Rather further proceedings on the claim will be in the

3  form of claim objection proceedings in this Court and in this

4  bankruptcy case if any to determine ultimately exactly what

5  the treatment will turn out to be for Mr. Wolak's claim under

6  the confirmed plan of adjustment.  So there is no occasion

7  given the ruling that I'm making about the $375,000 cash

8  amount requested, there is no occasion or basis for the Court

9  to permit the re-institution and litigation outside of this

10  Court of any pre-petition litigation between the parties.

11      And the -- the issue of what impact if any the

12  pre-petition settlement for $375,000 that the parties agreed

13  to has on the issue of the allowance and what -- what amount

14  of allowance that Mr. Wolak's $3,000,000 proof of claim filed

15  by the proof of claim in this case, otherwise are -- are

16  issues that the Court will leave to another day if and when

17  the city ever files a timely objection to that claim.

18      If that occurs, then Mr. Wolak will have the opportunity

19  to make whatever arguments he wants to make as to why the

20  $3,000,000 claim should be allowed in full contrary to the

21  city's objection to the claim.  What arguments precisely that

22  Mr. Wolak might make may include some of the same arguments

23  he's made in the current motion and I'm not ruling out his --

24  Mr. Wolak's ability at this point to make any such arguments

25  in response to an objection to the $3,000,000 claim here

1  today, the ruling on this motion.

2      And they may include other arguments and -- and it

3  depends I'm sure in part on exactly what the city's objections

4  to the claim are and what the city's arguments and objection

5  to the claim are if and when the city actually ever does

6  object to the claim.

7      So, as Mr. Dworetsky put it much more succinctly than I

8  have been able to manage, the alternative form of relief is in

9  some -- sought by the motion is in some sense is premature.

10 And so the issue of whether the settlement of $375,000 should

11 be disregarded for purposes of determining the allowed amount

12 of the claim, ultimately allowed, Mr. Wolak's claim is an

13 issue that I'm leaving for another day.  And so my ruling

14 today will have no prejudice upon any arguments that either

15 the city or Mr. Wolak might make regarding that subject in the

16 context of any objection to claim that may get filed by the

17 city to Ms. Wolak's proof of claim.

18     So then the motion before me today will -- will be denied

19 for these reasons.  And I will prepare and enter an order

20 reflecting this ruling.  And I will include language in the

21 order that I'm going to prepare which attempts to make clear

22 for the record so that none of us forgets it in the future,

23 make it clear that the order on this motion is without

24 prejudice to any arguments that the city or Mr. Wolak may make

25 in connection with any objection to Mr. Wolak's proof of claim

1  that may be filed in the future.  Thank you.

2          MR. DWORETSKY:  Thank you, Your Honor.

3          THE COURT:  All right.  I believe that leaves then

4  the -- the final matter scheduled for hearing today which is

5  the City of Detroit's motion for an order enforcing the plan

6  of adjustment and requiring the dismissal of the State Court

7  action filed by Tanya Hughes.

8      So we'll hear that motion now.  Mr. Swanson, I'll ask you

9  to speak first since you represent the moving party on this

10 one.

11         MR. SWANSON:  Thank you, Your Honor.  Your Honor,

12 the city's motion to enforce the plan injunction and require

13 the dismissal of the State Court action commenced by Tanya

14 Hughes should be granted because Ms. Hughes' claim is a

15 pre-petition claim.

16     There are three consequences of that determination.  One,

17 she is enjoined from suing the city on her claim pursuant to

18 the plan injunction.  Second, her claim was discharged under

19 the plan.  And third, because she did not file a proof of

20 claim, she's barred from recovering anything from the city

21 under the bar date order.

22     Now in adopting the definition of claim under Section

23 101-5(a), that was in Senate reports state that this was the

24 broadest possible definition.  The bill contemplates that all

25 legal obligations of the debtor no matter how remote or

1  contingent will be able to be dealt with in the bankruptcy

2  case and permits the broadest possible relief in the

3  Bankruptcy Court.

4      In accordance with the definition of claim and that

5  legislative history, the Supreme Court has repeatedly

6  reiterated that Congress intended to adopt the broadest

7  available definition of claim and have declined all

8  invitations to exclude rights to payment from the definition

9  of claim.

10      The reasoning behind the broad definition of claim is not

11  only fairness to debtors who are trying to reorganize, but

12  also fairness to the debtor's other creditors.  As the Huffy

13  Court explained, the purpose is to bring all claims of

14  whatever nature into the bankruptcy estate and to give all

15  claimants the same opportunity to share in any distribution

16  from the estate.

17      No longer will some creditors enjoy a windfall or

18  effectively be denied any recovery based upon the provability

19  or allowability of their claims and the financial status of

20  the debtor after the bankruptcy.  Equally important, Congress

21  has insured that the debtor will receive a complete discharge

22  of his debts and a real fresh start without the threat of

23  lingering claims riding through bankruptcy.

24      Your Honor, Courts have been careful to distinguish

25  between when a claim arises for federal bankruptcy purposes

1  and when a cause of action accrues.  Because those oftentimes

2  are two completely different things.

3     And two tests have been employed to determine when a --

4  when a claim arises.  There was a -- a third test on the

5  Frenville Court.  And that was essentially when the cause of

6  action accrued.  But that test has been widely criticized,

7  widely rejected and the 3rd Circuit in fact overruled itself

8  and rejected that approach.

9     So we're left with -- with two tests here.  The first

10 test, Your Honor, is the debtor's conduct test.  And this test

11 says a claim arises when the conduct by the debtor occurs,

12 even if the actual injury occurred long after the bankruptcy

13 filing and long after the discharge.

14    The next test has three or four different names.  Some

15 call it the fair contemplation, the foreseeability, the

16 pre-petition relationship, or the narrow conduct test.  And

17 this test looks at whether there is a pre-petition

18 relationship between the debtor and the creditor, "such as

19 contract, exposure, impact, or privity such that a possible

20 claim is within the fair contemplation of the creditor at the

21 time the petition is filed".

22    A broad definition of claim allows the Bankruptcy Court

23 to deal fairly and comprehensively with all creditors in the

24 case and without which a debtor's ability to reorganize would

25 be seriously threatened by the survival of lingering remote

1 | claims and potential litigation rooted in the debtor's

2 | pre-petition conduct.  And, Your Honor, that's exactly what we

3 | have here.  We have a claim that is completely rooted in the

4 | debtor's pre-petition conduct.

5 |     I looked through some of the facts which are uncontested.

6 | Uncontested in the respect that they happened prior to the

7 | petition date.  In October of 2012, Hughes refused to take a

8 | random drug test.  She allegedly suffered pregnancy and

9 | disability discrimination because the city required her to

10 | take this random drug test.

11 |     Hughes was placed on leave for her refusal to submit to

12 | the drug test.  The chief of police --

13 |          THE COURT:  Leave with pay.

14 |          MR. SWANSON:  Leave with pay.

15 |          THE COURT:  Full pay and benefits, right?

16 |          MR. SWANSON:  Correct.

17 |          THE COURT:  Yeah.

18 |          MR. SWANSON:  The chief of police petitioned the

19 | board of police commissioners to convert her leave from pay to

20 | without pay.  A police trial board hearing took place.  Hughes

21 | was terminated from the police department --

22 |          THE COURT:  At which as I understand it, at which

23 | you're saying the request to convert her with pay to without

24 | pay was denied.

25 |          MR. SWANSON:  That's correct, Your Honor.

 1          THE COURT:  And then there was another further

 2    hearing which you're about to talk about, right?

 3          MR. SWANSON:  That's correct, Your Honor.

 4          THE COURT:  Okay.  And this is all still

 5    pre-petition.

 6          MR. SWANSON:  It's all pre-petition.

 7          THE COURT:  Yeah, go on.

 8          MR. SWANSON:  So we have a police trial board

 9    disciplinary hearing which took place pre-petition.  And

10    Hughes was terminated from the police department at this

11    hearing.

12          THE COURT:  Well, I wanted to ask you about that

13    statement.  You said -- you said that in your motion too at

14    Paragraph 19 at this hearing, this December 3, 2012 hearing.

15    She was terminated from the department.

16          MR. SWANSON:  Terminated subject to her right to

17    appeal which she did and she kept her pay, you know,

18    throughout this process, there's no dispute.

19          THE COURT:  Well, was there some sort of written

20    decision made as a result of this December 3, 2012 hearing

21    that said she is terminated?

22          MR. SWANSON:  I don't know if there --

23          THE COURT:  There's nothing in the record about

24    that.

25          MR. SWANSON:  I don't know if there was a -- a

1 | written decision.

2 |        THE COURT:  Okay.

3 |        MR. SWANSON:  I'm certainly happy to supplement the

4 | record.

5 |        THE COURT:  Well, what form did this -- this

6 | decision and this termination decision take then?  Just

7 | somebody orally pronounced it at the end of the hearing or

8 | what?

9 |        MR. SWANSON:  I would have to check with the city

10 | and supplement the record, Your Honor.

11 |        THE COURT:  Is there a -- some sort of writing that

12 | says you are terminated?

13 |        MR. SWANSON:  I will --

14 |        THE COURT:  Addressed to Ms. Hughes, do you know?

15 |        MR. SWANSON:  I don't know if there was a -- a -- a

16 | letter or a communication.  I don't think it's disputed that

17 | she was in fact terminated, but --

18 |        THE COURT:  Well, I -- I didn't -- I was looking to

19 | see whether Mr. Ellison when he filed his response on behalf

20 | of Ms. Hughes to your motion, admitted that.  And I -- I don't

21 | think he actually admitted that in -- in the answer that he

22 | filed.  And so I'm not sure that that's undisputed.

23 |     We can -- well, I'll ask him -- we can ask him about this

24 | too when he gets up and talks.  But the -- you know, obviously

25 | I'm -- I'm -- I'm asking questions about this because

1  termination would be certainly a materially -- a materially

2  adverse employment action.

3          MR. SWANSON:  Sure, sure.

4          THE COURT:  For purposes of a discrimination claim.

5          MR. SWANSON:  Yeah.

6          THE COURT:  But -- but did it actually occur.  And

7  -- and, you know, you -- there is -- there is some suggestion

8  in the record that it was -- whatever happened at that

9  disciplinary hearing on December 3, 2012 on termination it was

10  not final and binding until all appeals have been completed.

11  That's what the city said in their answer filed in State Court

12  to the lawsuit filed by Ms. Hughes, right?

13          MR. SWANSON:  That's correct.

14          THE COURT:  So and -- and that's because apparently

15  provisions in the collective bargaining agreement on this

16  subject.

17          MR. SWANSON:  Yeah.  And -- and --

18          THE COURT:  And so there was a de novo arbitration

19  hearing that was conducted.  So but anyway that -- this is --

20  you know, it's -- I'm sure it's obvious to both of you why I'm

21  asking this question about was there -- actually was there --

22  did a termination occur on December 3, 2012.

23          MR. SWANSON:  Sure.  And I'm --

24          THE COURT:  Or otherwise at any point pre-petition.

25          MR. SWANSON:  I'm looking at the -- the letter from

1  Mr. Ellison to the city's counsel dated May 14th which referred

2  to the police trial board sustaining the chief's determination

3  concerning Sergeant Hughes.  But the trial board did not alter

4  her status of leave with pay.

5      So I don't really think there's a -- a dispute as to

6  termination.  But in any event after this event occurred, an

7  arbitration hearing was conducted.  Hughes and the city

8  submitted post hearing briefs to the arbitrator.  And thus as

9  of the petition date the only event which had not occurred was

10 the arbitrator issuing her decision.  And as Sergeant

11 Hughes --

12          THE COURT:  Now this arbitration decision once made

13 under the collective bargaining agreement is binding?

14          MR. SWANSON:  I believe so, yes.

15          THE COURT:  And -- and that makes a -- if the

16 termination is -- is upheld by the arbitrator there at that

17 stage, that's final?

18          MR. SWANSON:  I believe that's correct, Your Honor.

19          THE COURT:  And so that's --

20          MR. SWANSON:  That's --

21          THE COURT:  -- that's final termination.  Now -- I

22 mean subject to any lawsuit I suppose that could be filed

23 challenging the termination on whatever legal grounds,

24 including discrimination grounds.

25          But -- but so when did the -- the actual termination

1  occur?  Was it on December 3, 2012 when the disciplinary panel

2  said, you're terminated according to the city.  Or, was it

3  only when the arbitrator issued her decision upholding that

4  decision which was a post-petition event?

5          MR. SWANSON:  It occurred when the termination first

6  issued in December --

7          THE COURT:  December 3, 2012 or --

8          MR. SWANSON:  Around that date, yes, Your Honor.

9          THE COURT:  -- thereabouts.  Well before the

10  petition was filed.

11          MR. SWANSON:  Yes.  Subject to her right to appeal

12  which she took advantage of.

13          THE COURT:  All right.  So your -- there may be a

14  written decision on or about December 3, 2012 but it's not in

15  the record.

16          MR. SWANSON:  It is not in the record and -- and I

17  will endeavor to --

18          THE COURT:  Okay.  Well, for that matter the

19  arbitrator's decision is not in the record either, right?

20          MR. SWANSON:  That's correct, Your Honor.

21          THE COURT:  Yeah.  Okay.  It is -- do you agree with

22  the accuracy of what was stated by the city, the city's

23  counsel in the answer that was filed with the state lawsuit in

24  Ms. Tanya's -- Attorney Hughes' lawsuit, Paragraph 3 -- I'm

25  sorry, I'm looking at the -- this is Exhibit 6B to your

1  motion.  Part of Exhibit 6B, right, 6B, the city's answer to

2  the state lawsuit that the city filed -- this is docket 9970,

3  the city filed this on May -- or March 23, 2015 in the State

4  Court, Wayne County Circuit Court.

5      Page -- Page 3, part of Paragraph 18 is what I'm focusing

6  on.  Starting with the words in the top of Page 3, "on

7  December 3, 2012, a police trial board disciplinary hearing

8  took place wherein she was, meaning Ms. Hughes, was terminated

9  from the department.  However, pursuant to the collective

10 bargaining agreement between the Detroit Police Lieutenant and

11 Sergeants Association and the city, the discharge is not final

12 and binding until all appeals had been completed.

13     And then it goes on to say on December 15, 2014 a

14 decision was issued, and this is in the arbitration, to uphold

15 the discharge.  Then it says at which point plaintiff

16 employment relationship with the city was completely severed".

17 Is all of that -- do you agree with all of that as -- that all

18 of that is a correct statement?

19         MR. SWANSON:  I do, Your Honor.

20         THE COURT:  Okay.  All right.  So what do I do with

21 the fact that the discharge, the termination decision by the

22 -- that you say occurred in December 2012 by the police trial

23 board after the disciplinary hearing to terminate Ms. Hughes

24 was not -- was "not final and binding" basically until the

25 arbitration decision was issued.  What impact does that have

1  on this question of whether we're dealing with a pre-petition

2  or a post-petition claim here?

3      MR. SWANSON:  I don't think that has -- has any

4  impact on -- on -- or -- or would at all favor a determination

5  that -- that this is a -- a post-petition claim.  The events

6  giving rise as alleged by Hughes to the claim would have

7  occurred in October of 2012 when she was allegedly

8  discrimination against.  That was the conduct which -- which

9  led to this claim.

10     THE COURT:  Well, what conduct was that though?

11 That was -- wasn't that conduct the city saying, Ms. Hughes

12 you got to take a drug test and you got to take off all your

13 clothes no matter what you say.  You got to take off all your

14 clothes.

15     And when she didn't then the city began the process.

16 They suspended her with pay and began a process to terminate

17 her, right?  And the process didn't complete until the

18 post-petition arbitrator's decision was rendered.

19     So the -- the actual actions by the city that constitute

20 the discrimination were what?  They certainly included the

21 termination of Ms. Hughes' employment.  What else -- did they

22 include anything else?

23     MR. SWANSON:  I --

24     THE COURT:  Did they include for example the

25 efforts, the city's efforts to terminate her which occurred

1   pre-petition even though the termination that ultimately

2   occurred wasn't final and binding until after the petition?

3         MR. SWANSON: Yes. I would say that -- that --

4   that, you know, if we're going to use a fair contemplation

5   test here, you have to look at everything which occurred

6   pre-petition. The alleged discrimination occurred

7   pre-petition. At least a few hearings occurred pre-petition.

8      As Sergeant Hughes stated in her response the only thing

9   which had not occurred pre-petition is -- is -- is whether the

10   arbitrator would uphold the trial board's determination that

11   -- that she would be terminated. There -- there -- everything

12   but the final decision occurred pre-petition. And -- and the

13   fair contemplation test if the Court were to use that test,

14   looks at whether -- whether a creditor could have fairly

15   contemplated a claim as of the petition date.

16      It's very clear in -- in Hughes' response that there are

17   only two possible outcomes. One outcome, the arbitrator would

18   rule for her, no claim. Second outcome, the arbitrator would

19   rule against her, has a claim. Everything had occurred --

20         THE COURT: Did you view -- do you view that this

21   claim as -- this discrimination claim that was ultimately

22   filed in the form of this lawsuit which was last January, as

23   of the date of the petition, was a -- at that time a

24   contingent claim, but a contingent pre-petition claim? Or was

25   it unmatured, or was it both contingent and unmatured? Or how

1 would you characterize it?

2          MR. SWANSON:  I -- I would say that -- I mean it --

3 it was contingent to the extent that she did not arguably

4 possess a cause of action at -- at -- as of the petition date.

5 So it was contingent on something else occurring much like,

6 you know, in -- in the guarantee context.

7          THE COURT:  Her claim was contingent upon the

8 arbitration decision being in the city's favor?

9          MR. SWANSON:  Yes.

10          THE COURT:   Supporting a holding termination.

11          MR. SWANSON:  Yes.

12          THE COURT:  But it was a claim for purposes of

13 Section 101's definition of claim under the Bankruptcy Code

14 which includes contingent claims.

15          MR. SWANSON:  Yes, which includes --

16          THE COURT:  Albeit it a contingent claim as of the

17 petition date in your view.

18          MR. SWANSON:  Yes.

19          THE COURT:  Okay.  Go on.  I've -- I've interrupted

20 you with all these questions.  Go on, what else would you like

21 to say now?

22          MR. SWANSON:  Just to be clear, Your Honor, I think

23 the -- the contingent -- if -- if this Court were to find that

24 there was an adverse employment action prior to the petition

25 date that the claim would -- would no longer be contingent

1 because by definition there would be no further event which

2 would have had to occur for her to have -- have a claim.

3      But if we go by the -- as I said, Your Honor, there's two

4 different tests that Courts commonly employ here.  One is the

5 debtor's conduct test which looks at whether the debtor's

6 actions occurred pre or post-petition.  And here we have an

7 action that occurred pre-petition.

8      Hughes did not address this test in -- in her response

9 because I believe it's fairly clear that if the Court were to

10 adopt this approach that the claim would be treated as a -- a

11 -- a pre-petition claim.

12      Similarly under the fair contemplation approach, Hughes

13 has admitted that this claim was within her fair

14 contemplation.  There was one of two events which could occur.

15 She could have been -- the termination could have been upheld,

16 or the termination was not upheld.  She knew this as of the

17 petition date.  The claim was thus within her fair

18 contemplation.

19      Whichever approach this Court were to adopt it should

20 find that Hughes' claim was a pre-petition claim and that the

21 city can enforce this by an injunction requiring the dismissal

22 of the State Court action.  Thank you.

23      THE COURT:  Did you want to say anything Mr.

24 Swanson, while you're up about the -- anything further other

25 than what you said in your reply brief I guess regarding the

1   -- Ms. Hughes' arguments about I think what she may

2   characterize as confusion about whether this was a

3   pre-petition claim, whether she needed to file a proof of

4   claim, those types of arguments.

5           MR. SWANSON:  Well --

6           THE COURT:  The estoppel type arguments.

7           MR. SWANSON:  Yes, yeah.  I would -- to begin with

8   first off, that's what the city stated in its reply and thinks

9   that those arguments are wrong.  When you examined the notice

10  as a whole, it's -- it's clear that claims that you might

11  commence lawsuits on don't fall within, you know, ordinary

12  wages.  But even if --

13          THE COURT:  Do you think the notice -- and you're

14  talking about the claims bar date notice.

15          MR. SWANSON:  Yes.

16          THE COURT:  And -- and you think the -- the language

17  that you have cited in that notice was sufficient to

18  reasonably inform Ms. Hughes that if she wanted to assert a

19  discrimination claim, employment discrimination claim, that

20  she had to file a proof of claim.

21          MR. SWANSON:  Yes.

22          THE COURT:  By the -- by the claims bar date.  By

23  the claims bar date.

24          MR. SWANSON:  Yes, Your Honor.

25          THE COURT:  Yeah.

1          MR. SWANSON:  Yeah.

2          THE COURT:  Okay.

3          MR. SWANSON:  Even if the language wasn't clear

4   though, Your Honor, which the city believes it was crystal

5   clear, it would not transform a pre-petition claim into a

6   post-petition claim.  Whether or not the language in -- in the

7   bar date was clear or not.  Her claim is a pre-petition claim

8   and nothing that could be said in the bar date order could

9   transform it into a post-petition claim.

10         THE COURT:  I suppose that would have -- that

11  argument then in your view could only possibly have a bearing

12  on whether or not Ms. Hughes were allowed to file a late proof

13  of claim.

14         MR. SWANSON:  That's certainly an argument --

15         THE COURT:  Which she hasn't tried to do yet.

16         MR. SWANSON:  No.  Yeah.  Certainly an argument she

17  could make the city would contest it for, you know, the

18  reasons in its reply and probably some additional reasons.

19  But I don't think that -- this notice issue has -- has no

20  impact on the decision today of whether or not her claim is a

21  pre-petition claim or a post-petition claim.

22         THE COURT:  Well, your motion seemed to seek and the

23  proposed order attached to your motion asks me to order --

24  it's in Paragraph 4 of your proposed order.  It says Tanya

25  Hughes is prohibited from sharing in any distribution in this

1  bankruptcy case.

2     I think that presumes or implies a ruling that it's too

3  late now for Ms. Hughes to file a proof of claim and have it

4  be allowed.  And -- and so it presumes that her estoppel type

5  arguments cannot be used to -- to permit the filing of a late

6  filed proof of claim by -- on her part if I rule that this is

7  in fact a pre-petition claim as you say.

8         MR. SWANSON:  I wouldn't take that --

9         THE COURT:  Do you understand what I'm saying?

10         MR. SWANSON:  Yeah, I do.  I wouldn't take that

11  language to mean that if this Court were at some later date to

12  grant a motion to permit or to file an untimely claim that --

13  that because this Court would enter this order that any

14  subsequent order it would enter granting such a motion, you

15  know, she would -- it would be effectively no relief because

16  of this previous order.

17         THE COURT:  Well, should I say all that, or

18  something like that in this order, or should we just take

19  Paragraph 4 out of the order if I grant the motion otherwise.

20         MR. SWANSON:  Let me take a look at the order.

21         THE COURT:  That is just take out the language that

22  says that she's prohibited from sharing in any distribution in

23  the bankruptcy case.  I mean that's -- if she never files a

24  proof of claim, then that's obvious, isn't it?  If she files a

25  proof of claim, then the city may object.

1          MR. SWANSON:  Sure.

2          THE COURT:  And we'll have proceedings then about

3    timeliness issues among others and if she files a motion to

4    extend the deadline to file a proof of claim retroactively,

5    the city can object to that and we'll have a hearing and

6    proceedings on that.  But none of that has happened yet.

7          MR. SWANSON:  And -- and that was -- that was going

8    to be my response.  None of that has happened.  She hasn't

9    sought to file a claim.  I mean this has clearly been an issue

10   for four or five months.  She hasn't sought to file a proof of

11   claim.  She hasn't filed a motion to permit or to file an

12   untimely claim.

13       And on the record as we have it today, I don't see any

14   basis to take -- take out that paragraph.  As of right now if

15   the Court were to agree with the city's position, she would be

16   prohibited from sharing in any distribution in the bankruptcy

17   case.

18         THE COURT:  All right.  Anything else you want to

19   say then?

20         MR. SWANSON:  No, Your Honor.  Thank you.

21         THE COURT:  All right.  Mr. Ellison.

22         MR. ELLISON:  Yes.  Thanks very much, Your Honor.

23   You'll -- you'll forgive my -- I ask the Court's indulgence in

24   forgiving my ignorance of the niceties of bankruptcy law that

25   Mr. Swanson has demonstrated thus far.

1      I'm an employment law practitioner, Your Honor.  I -- I

2  come to this Court with no experience with bankruptcy and what

3  I have learned in the last couple of months is a -- a lifetime

4  of knowledge, Your Honor.  Or what I've tried to do is learn a

5  lifetime of knowledge of bankruptcy in -- in the short time

6  that I've been dealing with this issue.

7      What strikes me first off, Your Honor, is that if in fact

8  Mr. -- Mr. Swanson is correct about the -- the policy that

9  Congress attempted to adopt achieving the broadest possible

10  definition of claim, they would have put in language that in

11  fact did that.

12      And yet instead we have a split among the circuits.  It

13  used to be a three way split among the circuits, now it's a

14  two way split among the circuits.  Do we look only at the

15  underlying act of the debtor, or is there something more

16  that's required.

17      And up until not -- not that long ago the third test that

18  -- that the 3rd Circuit was the only one who adhered to, was

19  the accrued -- the accrued claim test.  The accrued claim test

20  is the one that I am most familiar with as an employment law

21  practitioner.  You don't have the right to file a lawsuit

22  until you have a statutory discrimination case that results in

23  adverse employment action to the plaintiff, to the employee.

24      In other words the employer can have all the

25  discriminatory animus that it wants to have, but until it

1  terminates an employee and that person is removed from the

2  payroll and suffers loss of pay, loss of job, because of that

3  discriminatory animus you don't have a statutory

4  discrimination case.  That was the 3rd Circuit's standard for

5  assessing whether the claim was pre-petition or not.

6      When the 3rd Circuit reversed in the Granville case, that

7  left the two splits -- or the -- the split that we have now

8  among the circuits.  The 6th Circuit interestingly to me has

9  never ruled.  The 6th Circuit Court of Appeals has never ruled.

10  And -- and instead we're left with District Bankruptcy Courts

11  and District Courts within the 6th Circuit to attempt to assess

12  what Congress really intended with the definition of claim.

13      And the -- the law within the 6th Circuit as I am able to

14  -- able to glean it is that there's a requirement of fair

15  contemplation.  And what the city has done here is conflate in

16  my estimation underlying act and fair contemplation to make

17  them the same thing.

18      What they have -- the fair contemplation, Your Honor, and

19  I -- I cite a couple of cases.  One is the Signature Combs

20  case which was an environmental case under -- under CERCLA.

21  There a cause of action accrues if we're using the accrual

22  test when there's a toxic release and response costs and in

23  Signature Combs the Bankruptcy Court said, a plaintiff has a

24  claim against the polluter under CERCLA if they actually incur

25  the response costs but for bankruptcy purposes we will say --

1  we'll look at whether both events, both the toxic release and

2  the response costs fall on the same side of the petition

3  filing date, but we will look at the response costs and say,

4  if the plaintiff knows that it is going to have response

5  costs, and if that knowledge comes on the same side of the

6  petition filing date as the release, then it is a pre-petition

7  claim.

8      Like -- likewise in <u>Senczyszyn</u>, and I beg Your -- Your

9  Honor's indulgence in mispronouncing that name.  An income tax

10  case where the state sought to recover unpaid taxes and the

11  debtors had -- these taxes were incurred pre-petition.  They

12  -- the -- the state responded to that saying well, they --

13  they didn't have to pay the taxes until after the petition was

14  filed, so it's a post-petition claim.  And the Court said no,

15  that's -- it was within the contemplation of the state that

16  once the -- once the income is earned, taxes are due even

17  though the payment doesn't come until later.

18      Again it's a situation where the taxing authority knows

19  that there's tax liability.  In contrast in the case at bar,

20  Your Honor, Sergeant Hughes doesn't know that she has a

21  discrimination case until she suffers adverse employment

22  action.

23      And the adverse employment action that is recognized by

24  the Courts of Appeals that are in -- decisions that are in my

25  brief, say that if you're suspended with pay, if you're on

1  leave collecting your full compensation, benefits, pension

2  accrual, et cetera, you don't have the right to file a

3  discrimination lawsuit because you have not suffered adverse

4  -- adverse employment action.  And it's only when the adverse

5  employment action occurs that -- that you are able to bring

6  your statutory discrimination case.

7      In this situation, Your Honor, that occurred after the

8  petition.  In fact after December 10, 2014 the -- the schedule

9  14 category that I heard Your Honor mention in a previous

10 motion.

11          THE COURT:  Class 14?

12          MR. ELLISON:  Class 14, thank you.  The -- the

13 policy consideration --

14          THE COURT:  So is part of what you're saying here,

15 Mr. Ellison today --

16          MR. ELLISON:  Yes, Your Honor.

17          THE COURT:  -- that everything the city did was

18 directed against Ms. Hughes in there and can be characterized

19 a having generally speaking as the city's effort to terminate

20 her because of her refusal to take this drug test with all her

21 clothes off.  That everything the city did to try to terminate

22 her, to -- to move toward termination, to follow the

23 procedures required by the collective bargaining agreement to

24 terminate her, that all of those actions are not actionable at

25 all and they're not employment discrimination.

1    They cannot be the basis for an employment discrimination

2  claim.  At least not unless and until the termination is

3  actually effective under the collective bargaining agreement

4  procedures.

5        MR. ELLISON:  That's exactly right.

6        THE COURT:  That is with the arbitration decision

7  upholding the termination.

8        MR. ELLISON:  Right.  That's exactly right.

9        THE COURT:  And so it's not -- is it -- is it -- is

10  it only the termination that is the adverse employment effect

11  that is -- that is the basis for the discrimination claim or

12  claims that -- that Ms. Hughes has -- has brought?

13        MR. ELLISON:  If -- if the chief of police -- if the

14  request for the chief of police through the board of police

15  commissioners to have the suspension converted from with pay

16  to without pay had been granted, she would have suffered loss

17  of pay back in October of 2012, obviously pre-petition.  That

18  would have been adverse employment action that's when her

19  claim would have arisen.  But it --

20        THE COURT:  But it didn't happen.  So --

21        MR. ELLISON:  It did not happen, right.

22        THE COURT:  So in terms of what actually did happen,

23  is -- is her termination which in your view became effective

24  only -- final only when the arbitrator occurred really you're

25  saying.  When -- when the arbitrator decision came out.  Her

1  termination from employment that occurred when that happened,

2  that's the only basis for the discrimination claims?

3          MR. ELLISON:  That's correct, Your Honor.

4          THE COURT:  And it's the only materially adverse

5  effect on her employment is the basis for the discrimination

6  claim she's brought.

7          MR. ELLISON:  Correct.

8          THE COURT:  Okay.  So what did happen pre-petition

9  in terms of her termination at this disciplinary hearing?  You

10 heard my questions of Mr. --

11         MR. ELLISON:  Yes, Your Honor.

12         THE COURT:  -- of Mr. Swanson about that, this

13 December 3, 2012 which the city says she was terminated.  As

14 he put it, subject to her right of appeal.

15         MR. ELLISON:  Subject to her right of appeal.  Your

16 Honor, again forgive me.  It's been a while since I've looked

17 at the contractual language between the Lieutenants and

18 Sergeants Association and the city as it existed pre-petition.

19     But essentially the chief of police has the authority to

20 fire subject to rights of appeal.  And in the usual case if

21 the chief's decision is not appealed timely under the

22 collective bargaining agreement, it becomes effective.  If it

23 is appealed timely it does not become effective until that

24 next appeal is adjudicated and resolved.

25     There are two levels of appeal under the collective

1  bargaining agreement.  There's an appeal to a police trial

2  board which is essentially three command level officials who

3  are subordinate to the chief who conduct an evidentiary

4  hearing, swearing of witnesses, cross examination of

5  witnesses, taking of documentation -- documentary evidence,

6  and reaching a deliberative conclusion.

7      But the trial board itself does not have authority to

8  impose a dismissal that the chief himself did not have the

9  authority to impose.  Any decision from the trial board does

10  not become effective unless and until it is not appealed.  If

11  it is appealed, the trial board decision also is stayed.

12      And so there were two appeals in this case.  There was

13  the appeal that Sergeant Hughes filed from the chief's

14  decision, and then there was the appeal that Sergeant Hughes

15  filed from the trial board decision.

16      The second appeal going to a civilian arbitrator who had

17  the authority to conduct a de novo hearing essentially calling

18  all of the same witnesses who were called at the police trial

19  board and subjecting those witnesses to cross examination,

20  reviewing the documentary evidence involved, and reaching a

21  deliberative conclusion based on the evidence presented to the

22  arbitrator, not any evidence that was previously presented to

23  any other authority.

24      The arbitrator's decision is final and binding with

25  respect to the collective bargaining agreement.  And the

1 collective bargaining agreement standard is whether there is

2 "just cause for dismissal".  The collective bargaining

3 agreement does not consider whether the grievant here,

4 Sergeant Hughes, had any other claim outside of the collective

5 bargaining agreement such a claim under the Elliott-Larsen

6 Civil Rights Act, or the Persons With Disabilities Civil

7 Rights Act, both of which are Michigan statutes that are

8 beyond the purview of the arbitrator.

9         THE COURT:  Does the collective bargaining agreement

10 say that determining whether there was "just cause for

11 dismissal" that arbitrator is not to consider whether there

12 might be a valid discrimination claim?

13         `MR. ELLISON:  The -- the collective bargaining

14 agreement does not get specific in that regard, Your Honor.

15 The --

16         THE COURT:  Just cause could include an argument

17 that -- an employee's argument could be to the -- is it

18 correct an employee could argue consistent with the collective

19 bargaining agreement to the arbitration panel, or arbitrator,

20 my termination was not for just cause because it was done in

21 violation of my rights under the Elliott-Larsen Act.

22         MR. ELLISON:  Well, the grievant could make that

23 argument.  I -- I grant Your Honor that point.  But the

24 arbitrator's decision on that would not be -- would not take

25 that issue away from a Court subsequently considering an

1  Elliott-Larsen claim.

2        THE COURT:  Well, I wasn't asking you that.  I

3  was --

4        MR. ELLISON:  Right.

5        THE COURT:  -- asking whether it can factor into

6  this just cause test under the collective bargaining

7  agreement.

8        MR. ELLISON:  It could.  I mean if the arbitrator

9  concluded there's a violation of Elliott-Larsen and therefore

10  there's not just cause and I'm reversing the dismissal, the

11  arbitrator's decision is final and binding as it relates to

12  just cause under the collective bargaining agreement.  It does

13  -- it does not end the analysis as it relates to any other

14  rights, in particular statutory rights that the employee may

15  have.

16        THE COURT:  So it takes away -- if the decision is

17  unfavorable to employee by the arbitrator, it's final and

18  binding in the sense that it precludes the -- in your view, it

19  precludes the employee from suing in a Court and claiming a

20  lawsuit in Court after that that the -- the city breached the

21  collective bargaining agreement by terminating.

22        MR. ELLISON:  Correct.

23        THE COURT:  But that's -- that's the only claim or

24  argument of the employee that that would take away.

25        MR. ELLISON:  Correct.

1          THE COURT: Okay. Go on.

2          MR. ELLISON: So, Your Honor, on Sergeant Hughes,

3    while she's awaiting the arbitrator's decision, doesn't know

4    in the way that the plaintiff in the Signature Combs pollution

5    case knew that she had a claim. The -- the plaintiff in the

6    Signature Combs pollution case knew that it was going to incur

7    response costs. And only question was when were they going to

8    hire the contractors to do the clean up.

9          The State of Michigan in the Senczyszyn the case knew

10   that the debtor owed taxes. Even though they may not be due

11   until after the petition was filed. Sergeant Hughes didn't

12   have that similar certainty of knowledge which is what's

13   required by the fair -- fair contemplation test.

14         She knew one of two things. But she needed to know that

15   she had a claim. And one of the things that she knew was that

16   she might not have a claim because she might win in front of

17   the arbitrator. And it was only when the arbitrator's

18   decision came in that said that she lost in front of the

19   arbitrator and then the very next day the city said, you are

20   off the payroll and cut off her health care, and her pension

21   accrual, and stopped her paycheck.

22         That's when she knew the thing that the plaintiffs in the

23   other two cases knew pre-petition. And that's what

24   distinguishes Sergeant Hughes' case and makes her case one

25   that does not fall within fair contemplation which is the

1  standard in the 6th Circuit.

2          THE COURT:  Is it -- are you arguing that the fair

3  contemplation test is the test that the Court should use,

4  first of all?

5          MR. ELLISON:  I am, Your Honor.

6          THE COURT:  But -- but that -- I gather you're

7  arguing that test, applying that test the Court should use

8  this -- the articulation of that test that the Signature Combs

9  Court gave.  You know, that -- that the debtor -- it focuses

10  on what the debtor knew at the time of the petition.

11          MR. ELLISON:  What the debtor knew?

12          THE COURT:  Yeah.  I'm sorry, what the creditor

13  knew.

14          MR. ELLISON:  Right.

15          THE COURT:  Yeah.  So what do you -- what do you do

16  with or make of the language in the cases other than Signature

17  Combs that the parties have cited and I think you cited, the

18  Senczyszyn case which characterized -- and that's 426 BR at

19  257, that Court, my colleague Judge Shefferly in that case

20  described the fair contemplation test as -- as this, "it looks

21  at whether there was a pre-petition relationship between the

22  debtor and the creditor such as a contract, exposure, impact,

23  or privity such that a possible claim is within the fair

24  contemplation of the creditor at the time the petition is

25  filed.  It uses this concept possible claim is within the fair

1  contemplation.

2      And then -- that's Senczyszyn, Senczyszyn whatever.  And

3  then in the Spencer case which I think was cited by the city

4  in their papers.  It was cited by one of you.  In the -- the

5  District Court in the Spencer case which is a decision of the

6  District Court from this district from 2011, uses that same

7  kind of language.  457 BR at 606, the District Court in

8  describing is quoting from the Dixon case with apparent

9  approval describing the -- this test as "looks at whether

10  there was a pre-petition relationship between the debtor and

11  the creditor such that a possible claim is within the fair

12  contemplation of the creditor at the time the petition is

13  filed".

14      Possible claim.  That -- that -- that sounds awfully

15  broad, doesn't it?

16          MR. ELLISON:  It is awfully broad, Your Honor.  But

17  when you apply it to the context that we have here, obviously

18  there's been a relationship between Sergeant Hughes and the

19  police department going back 20 years.  So what's the nature

20  of the relationship.

21          THE COURT:  No, but the -- yeah, the next -- the

22  next question though -- of course now we apply this -- this

23  standard if we use that wording to this case.  At the petition

24  date Ms. Hughes knew that -- the argument is she -- she could

25  fairly contemplate that she had a possible discrimination

1  claim against the city.  It was possible and not definite

2  because her termination had not yet been upheld by the final

3  binding arbitration decision.

4          MR. ELLISON:  Right.

5          THE COURT:  But she had lost up to that point on the

6  termination issue.

7          MR. ELLISON:  Well --

8          THE COURT:  Subject to the appeal rights.

9          MR. ELLISON:  But she had won it from the board of

10 police commissioners.  The board of police commissioners had

11 -- had passed on the chief's request to make the suspension

12 without pay and the board of police commissioners said no,

13 it's going to be with pay.

14         THE COURT:  She won on that issue, but --

15         MR. ELLISON:  Yeah.

16         THE COURT:  -- she -- she lost on -- didn't she, on

17 the police trial board disciplinary hearing in December 3,

18 2012 when they terminated her.  They decided to uphold the

19 chief's termination decision, didn't they?

20         MR. ELLISON:  They did, Your Honor.  And --

21         THE COURT:  Okay.

22         MR. ELLISON:  And  --

23         THE COURT:  So that's what she was appealing when --

24 to the arbitration.

25         MR. ELLISON:  She was -- she was appealing that

1  She was -- she was appealing the decision of three individuals

2  who are subordinate to the chief of police and who frankly,

3  Your Honor, never reversed the chief on a dismissal.  It's --

4        THE COURT:  Well, that's not -- there's no evidence

5  in the record on that, but --

6        MR. ELLISON:  I understand that, Your Honor.

7        THE COURT:  Of course there's no -- there's no --

8  there's no written termination decision from that board in the

9  record either yet.

10        MR. ELLISON:  Right.

11        THE COURT:  Was there a written decision by the way?

12        MR. ELLISON:  I believe that there was a written

13  decision, Your Honor.

14        THE COURT:  All right.  So --

15        MR. ELLISON:  And I will tell Your Honor that the

16  reason arbitration was added to the collective bargaining

17  agreement was to bring some confidence to the adjudicative

18  process under the grievance procedure.  Simply leaving it with

19  the trial boards was saying that the chief's decision stands.

20        THE COURT:  Okay.  So getting back to the fair

21  contemplation test as articulated by these cases I've

22  quoted --

23        MR. ELLISON:  Right.

24        THE COURT:  Why did Ms. Hughes at the petition date

25  July 2013 when -- when the decision to terminate her had been

1 upheld by this --

2          MR. ELLISON:  By the trial board.

3          THE COURT:  -- police trial board and her appeal

4 from that was not yet decided by the arbitrator but the matter

5 was pending and submitted to the arbitrator.  Why wasn't --

6 you know, why isn't it accurate to say that she -- a possible

7 discrimination claim, one that she would have in her view if

8 the arbitrator upheld the termination decision, was within her

9 fair contemplation at the petition date.  Do you see what I'm

10 getting at?

11          MR. ELLISON:  I -- I see what you mean.

12          THE COURT:  It's the concept of a possible claim is

13 -- is -- I mean it's -- it's kind of vague but it's a broad --

14 seems like a very broad standard.

15          MR. ELLISON:  I -- I -- I appreciate that it's

16 broad, but I also want to emphasize here, Your Honor's point

17 it's vague.  And to the extent that those cases follow

18 Signature Combs, Signature Combs is much more definite about

19 knowing that you have a claim and it's just a matter of in the

20 -- in -- in the case of the plaintiff in Signature Combs, they

21 know that they have a legal obligation to incur response

22 costs, they just haven't hired the contractor yet.

23      So if you know that then you've got a claim even though

24 you -- you couldn't sue under CERCLA until you actually hire

25 the contractor.  And it's not a question -- if -- if the

1  plaintiff in Signature Combs said well, I don't know if I'm

2  going to have to incur these costs because I don't know how

3  serious the toxic release is and I don't know if that triggers

4  my obligation under the law there would -- there would have

5  been a different outcome there.

6      But the -- the Court in Signature Combs said that there's

7  -- there's much more certainty involved as to when the claim

8  -- when notice to the plaintiff arises.  And here we just

9  don't have that certainty because it was an either/or.

10         THE COURT:  All right.  What else did you have to

11  say?

12         MR. ELLISON:  Well, Your Honor, I -- I addressed in

13  my brief as well the issues about the notice to her of her

14  right to file a claim and I think you've addressed it in your

15  colloquy with Mr. Swanson.  So I don't -- I don't have

16  anything further other than what I -- what's in the papers.

17         THE COURT:  Do you agree that your estoppel argument

18  is -- is -- really only addresses the question of whether Ms.

19  Hughes might be able to be allowed to file a late proof of

20  claim in the bankruptcy case and have it allowed even though

21  it's late if I rule that this is a pre-petition claim rather

22  than the issue of whether this is a pre-petition --

23         MR. ELLISON:  Yes.

24         THE COURT:  -- or it's a post-petition claim.

25         MR. ELLISON:  Correct.

1          THE COURT:  Okay.  Anything else?

2          MR. ELLISON:  No.  Thank you, sir.

3          THE COURT:  All right.  Thank you.  Mr. Swanson, if

4  you wanted to reply you may do so.

5          MR. GREEN:  Your Honor, with your permission, may I

6  -- I reply on behalf of the city?

7          THE COURT:  Mr. Green, sure.

8          MR. GREEN:  Thank you, Your Honor.  I just want to

9  step back and talk about the reply, but also talk about this

10 case in the context of the world of bankruptcy a little bit.

11 Because really what we have here is the collusion of two

12 different worlds, one being of course what would happen

13 outside of a bankruptcy case and what would happen inside of a

14 bankruptcy case.

15     And when we talk about when a claim accrues and when it

16 doesn't accrue, that works fine when you're dealing with a two

17 party dispute or a singular proceeding.  And it doesn't work

18 at all in the context of a collective proceeding and I think

19 that's what Congress when it passed the Bankruptcy Code

20 intended when it said, and did what it did and defined claim

21 as broadly as it could conceivably define it.

22     The legislative history as Mr. Swanson pointed out, it is

23 clear the definition of claim which has no temporal limitation

24 is as broad as one could -- could contemplate.  And -- and the

25 reason is because just as an estate is created on the filing,

1  the claim pool has to be fixed, whether it's -- whether these

2  claims have accrued, whether they're mature, whether they're

3  liquidated, whether they're contingent.  We have to deal with

4  assets at a point in time and claims at a point in time.

5       If accrual were the test, and I'm sure this is why

6  Grossman's, 3rd Circuit overruled Frenville and Grossman's were

7  the test you couldn't have your asbestos cases, you couldn't

8  have your products liability cases, you couldn't have a whole

9  host of cases unless one of two things happened.

10      You dealt with those claims as best as you could and

11 that's why we have the definition of claim and that's why we

12 have the estimation procedure in 502(c) and that's why we have

13 a lot of other things.  Where I guess theoretically we would

14 have to wait till the expiration of the longest statute of

15 limitations with respect to the accrual of any type of claim.

16      So the ruling here isn't really just important for this

17 singular matter, but it's important for this case and it's

18 important for bankruptcy jurisprudence generally.  And that's

19 why these claims all have to be -- if you had any knowledge of

20 this.  That's why we talk about possibility, fair

21 contemplation.

22      You're on notice that in May there may -- you may have a

23 claim and you'd better assert it.  Any other -- any other

24 interpretation that requires an actual accrual under state law

25 causes the collective bankruptcy proceeding to fail.  And in

1  fact I would posit that if this were a Chapter 7 and the

2  assets were immediately liquidated, everybody -- if accrual

3  was the test as opposed to fair contemplation or debtor's

4  conduct, everybody's claim that had not yet accrued including

5  Ms. Hughes' claim will receive no distribution because the

6  assets in a Chapter 7 case would be liquidated by a trustee

7  expeditiously, promptly as directed in 704.  The proceeds

8  distributed to all the claims that had accrued.  There would

9  be nothing left for parties with legitimate unmatured,

10 unliquidated contingent claims to recover.

11      So ironically anything that deals with any -- any system

12 that relies on the accrual of claims will leave those

13 claimants out of bankruptcy process at least in the Chapter 7

14 contract -- context.  And ironically forces a creditor to

15 argue for one test over the other test in the context of the

16 chapter that is filed.

17      So this issue is a very important issue.  It goes really

18 to the essence of what we're talking about.  And that's why

19 Courts say fair contemplation.  If you have any knowledge that

20 you may have a claim, file a claim.

21      And I think Your Honor is correct.  I think these claims

22 to the extent I'm not reading more into the questioning than I

23 may be reading, the answer is that this is undoubtedly a

24 pre-petition claim.  There may or may not be a basis for

25 allowing an extension under Pioneer or elsewhere to file a

1 late and have treated timely the claim as unsecured.

2      But there is little doubt that the conduct and the fair

3 contemplation are -- are overwhelmingly satisfied in this

4 case.  And that this proof of claim should have been filed for

5 our collective proceeding to work.

6      So understanding the questions that go to when the claim

7 accrued, frankly will be in -- in the city's view, would be of

8 -- of no moment.  If -- if -- if they were aware that there

9 was a possibility that the claim existed.  Because applicable

10 state law may define rights, but how those rights are treated

11 in bankruptcy for this collective proceeding to work overrides

12 or supersedes that.

13           THE COURT:  Well, you're arguing, I think against

14 using the accrual test that the 3rd Circuit adopted but later

15 rejected.  But you're -- you're -- you seem to be arguing more

16 than that in here.  And -- and perhaps -- perhaps without

17 saying so, you seem to be arguing that, at least implicitly,

18 that the formulation of the test if it -- if it's as Mr.

19 Ellison says is in the Signature Combs case, is not correct.

20 It does not take as broad a view of what's a claim under the

21 Bankruptcy Code as it ought to.

22      If -- if that's viewed as a minimum requirement.  That

23 the creditor knew that all the pieces were in place for them

24 to have a claim,

25           MR. GREEN:  I -- I believe for the system to work,

1  the -- the real test, forget whether it's -- and I -- and I

2  realize the cases don't say this, but I think from a normative

3  standpoint the test ought to be debtor's conduct or their

4  contemplation.

5      Because the whole objective of the process that the

6  statutory scheme that's put in place is to treat all claims as

7  pre-petition claims regardless of whether they have -- you

8  know, automatic acceleration of all debt.  Why?  Because we

9  have to deal with that debt.  Why do we have to deal with that

10  debt?  Because we believe something has a moment in time

11  within the state.

12      And if you don't deal with all that debt you have no

13  ability to do that.  So even though for instance, and I'll end

14  up reading it.  Even if the loan agreement didn't have a

15  contractual provision which it often does that says it's

16  accelerated upon the filing of the bankruptcy, the Bankruptcy

17  Code accelerates that debt.

18      When asked if it was contingent, it could be contingent.

19  It was unmatured, unliquidated.  It satisfied a number of

20  those components in 101-5(a).  But -- but they all go to the

21  same thing and other than in extreme due process cases, that's

22  really all you've got carved out is due process cases from a

23  pre-petition claim treatment.

24      If you knew or had reason enough -- the concepts of

25  constructive notice.  I don't know you exist.  You may have

1 been exposed to asbestos three years ago and you haven't

2 manifested a thing.  And I have to give you personal notice if

3 I know you and you're certainly going to be bound by that even

4 though you haven't manifest any injury, even though under --

5 under non-bankruptcy law you couldn't have asserted that

6 claim.

7      But if I don't know you, I can obtain notice by

8 publication because it's the best.  It's -- it's the only

9 notice that's reasonably calculated to apprise if I don't have

10 personal notice that you exist.  To bring you into the

11 bankruptcy forum to assert any claim you have.

12      So the distinctions we've been discussing about the

13 accrual of the claim from a bankruptcy standpoint are not

14 particularly relevant, shouldn't be particularly relevant, and

15 couldn't be particularly relevant for the statutory scheme to

16 work in a collective proceeding, particularly when you

17 translate it to a Chapter 7 case.  Not really in all cases and

18 we certainly aren't going to have a different rule for

19 determining when a claim is pre-petition as opposed to

20 post-petition based on the happenstance of what chapter the

21 debtor happens to file and commence its case in.

22           THE COURT:  Do you view Ms. Hughes' claim,

23 discrimination claim as of the petition date as being a -- a

24 yes, you're arguing it's a pre-petition claim.  So the claim

25 existed at the petition date.  Do you view it as a contingent

1 claim at that time?

2          MR. GREEN:  You know, I don't know.  I mean it

3 certainly required certain things to occur.  It -- it -- it

4 is, even though you can make the comparison with the

5 guarantee, how the guarantee has been executed although

6 certain actions have taken place that start that process.

7      We don't know yet if someone will default under a

8 guarantee.  We don't know yet how the Court will ultimately

9 rule.  But it's certainly a -- and certainly in addition to

10 that maybe -- what does unmatured mean?  What does unmatured

11 mean?  Non-accrued.

12          THE COURT:  Well, I'm focusing on contingent right

13 now.

14          MR. GREEN:  Okay.  Fair enough, Your Honor.

15          THE COURT:  So let's --

16          MR. GREEN:  Fair enough.  No, no, let's --

17          THE COURT:  So it's -- the answer is it could be,

18 you don't know.

19          MR. GREEN:  The answer is, I think it probably is a

20 contingent claim.  Because it requires an event outside the

21 power of the -- of the claimant him or herself or itself much

22 like I would say -- much like a default of a primary borrower

23 and the guarantor incurs liability under a document that had

24 been executed.

25          So you know, I guess I would say it is contingent but

1 it's a -- it's a -- it's a fine line where you stop one and

2 can go into the other where actually the disjunctive is used

3 in claim because it has to be one of -- it -- it -- it's

4 inclusive of all of these types of claims for the -- for the

5 -- for the jurisprudential reason that I tried to describe.

6 So the short answer is yes, I believe it's likely to be a

7 contingent claim.

8          THE COURT:  All right.  Anything else you'd like to

9 say, Mr. Green?

10          MR. GREEN:  No, Your Honor.  Thank you very much.

11          THE COURT:  Thank you.  Well, thank you to both

12 sides and all attorneys on this matter for your arguments

13 today.  That's very helpful to help me sort out the issues and

14 the arguments.  I'm going to try to do that.

15      I want to take a bit more time to think about the

16 arguments and the authorities and the issues that the parties

17 have presented, both orally and in writing in connection with

18 this motion by the city before I make a ruling.  And so I'm

19 not going to rule at this moment on the motion.

20      And I also want to -- I want the parties to put into the

21 record three documents if they -- if and to the extent they

22 exist before I make my ruling.  Which I can consider, I intend

23 to consider for whatever value and -- and impact they may

24 have.  And I'm not predicting how great an impact they'll

25 have, but I do want them in the record.  And I want to have a

1  chance to review them.

2     The three things are to the extent they exist.  First,

3  any writing by which the police trial board either terminated

4  Ms. Hughes or upheld the chief of police's decision to

5  terminate Ms. Hughes as a result of the hearing that occurred

6  on December 3, 2012 as alleged in Paragraph 19 of the city's

7  motion.  Second, the written decision of the arbitrator that

8  ultimately upheld that termination decision.  And third, the

9  particular provisions of the applicable collective bargaining

10  agreement in effect as of the bankruptcy petition date that

11  spell out the procedure, including appeal procedures that

12  apply -- that applied to the city's efforts to terminate Ms.

13  Hughes.

14     I don't need the entire collective bargaining agreement,

15  but just a copy of the provisions that spell out this -- this

16  procedural structure that the parties have described and

17  apparently agreed it sounds like existed at the time that

18  applied here to Ms. Hughes and the city's effort to terminate

19  her.  I can require the city to file these things, perhaps the

20  parties can stipulate to these things and jointly file them,

21  but I want them in the record.

22     So Mr. Swanson, any problem filing these things?  You

23  weren't sure if there's actually a written decision on the

24  board.

25     MR. SWANSON:  To the extent that they exist.

1        THE COURT:  Yeah, sure to the extent they exist.

2        MR. SWANSON:  I -- I --

3        THE COURT:  If -- if they don't exist, if they're

4  not in writing, any of this stuff, tell me.  It sounds like

5  the only thing that might apply to is the termination decision

6  of the police trial board.

7        MR. SWANSON:  That seems likely to me, but I -- I

8  don't have any -- I'm guessing there was a collective

9  bargaining agreement of course.  And, you know, so yeah, to

10  the extent they exist, I will file them.

11        THE COURT:  All right.  Mr. Ellison, I forget what

12  you said.  You said -- you said you thought that that decision

13  of the police trial board was written.  Did you say that?

14        MR. ELLISON:  I don't know if I said that, Your

15  Honor, but typically they are written.

16        THE COURT:  You're not sure if this one is.

17        MR. ELLISON:  Correct.

18        THE COURT:  All right.  Well, Mr. Ellison, I assume

19  that whatever Mr. Swanson finds in terms of these writings

20  that you will have no problem in stipulating to their

21  authenticity of these documents.  That's not necessarily

22  stipulating that these are relevant or how relevant they are,

23  what relevance they have, but simply stipulating to the

24  authenticity of the documents as part of the stipulation,

25  filing them as a supplement to the city's motion.  Do you have

1  any problem with that?

2      MR. ELLISON:  I -- I have no problem with that, Your

3  Honor.  I -- I expect that Mr. Swanson will send them to me

4  before he files them and ask me if they're accurate and then

5  I'll stipulate and if they are in fact accurate, I will freely

6  stipulate.

7      THE COURT:  Well, then what -- what I want then is

8  for Mr. Swanson for the city through counsel to file these

9  copies of these three things that I've said I want as a

10  supplement to the city's motion.

11     To the extent of that Mr. Ellison on behalf of Ms. Hughes

12  can stipulate to the authenticity of the documents.  I'd like

13  that to be filed also as part of this supplement.  Mr.

14  Swanson, I want to set a deadline for these things to be

15  filed.  How soon should I set that deadline for?

16     MR. SWANSON:  Two weeks from today, would that be

17  acceptable, Your Honor?

18     THE COURT:  That's fine with me.  That's July 29,

19  2015.  One moment.  I -- I have in mind announcing and

20  explaining my ruling on this motion orally through a bench

21  opinion rather than in a written opinion interest in getting

22  it out sooner rather than later.  Just because his one I want

23  to do this way.  I might change my mind later, but this is

24  what I want to do.

25      So I want to set a further hearing date for the purpose

1 of the Court giving a bench opinion on this motion.  I'd like

2 to do it on the first Wednesday after this supplement is filed

3 which would be Wednesday, August 5 at 1:30 p.m.  And if -- let

4 me know each side whether that date and time works on your

5 calendar.

6         MR. ELLISON:  Yes, Your Honor, it does.

7         MR. SWANSON:  Yes, Your Honor, it does.

8         THE COURT:  All right.  So we'll schedule the motion

9 for further hearing for the purposes of that -- solely for the

10 purpose of giving that bench opinion.  I'll prepare and enter

11 a procedural type order that reflects the -- the supplement

12 being filed and the further hearing date and so forth.

13     But it's just going to be a bench opinion.  It's not

14 going to be a further argument opportunity.  Because of that

15 as I usually do with bench opinions hearings, I'll -- I'll

16 extend to the parties a invitation if you want to take

17 advantage of it, of attending that hearing by telephone if you

18 want to.

19     You're certainly welcome to be here in person, but if you

20 want to attend by phone so it will save you some travel time

21 since it's not going to be an occasion for you to argue

22 anything, but rather just to listen to me talk, you're welcome

23 to do that.  But as I said, I'm always happy to have -- have

24 you here in person if you want to do it that way.

25     Either one can do -- one can go by phone, one can come in

1  person or both in person, however you want to do it.  If you

2  do want to attend by telephone, I just need you to make

3  arrangements with -- with my Court Recorder which for purposes

4  of the Detroit case is Ms. Siccula who is -- who you can reach

5  by calling -- you can call my chambers if you don't have her

6  number and make arrangements for -- to attend by phone.

7       And do that at -- at least a couple of days before the

8  August 5 date.  And otherwise just you can come in person and

9  we'll do it that way.  So all right.  So that's -- that's it

10 for this matter for the day.  Thank you and we'll see you all

11 next time or hear from you all next time, or you'll hear from

12 me.  So thanks.

13          MR. ELLISON:  Thank you..

14          MR. SWANSON:  Thank you.

15          MR. GREEN:  Thank you.

16          THE CLERK:  All rise.  Court is adjourned.

17       (Court Adjourned at 4:25 p.m.)

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 7-20-15
    Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25