# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

The City of Detroit, Michigan ("City"), by its undersigned counsel, files its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion"). In support of this Motion, the City respectfully states as follows:

## I.    Introduction

1.    On July 1, 2015, B&C Land Development Corporation ("B&C") filed a state court lawsuit against the City seeking monetary damages, specific performance and injunctive relief on account of a pre-petition claim. The City informed B&C that the filing and prosecution of the state court lawsuit violates both the Bar Date Order (as defined in paragraph 5 below) and the injunction set forth in the confirmed Plan (as defined in paragraph 10 below). Despite the City's request, B&C refused to voluntarily dismiss the state court lawsuit. As a result, the City is left with no choice but to seek an order barring and permanently enjoining B&C from asserting and prosecuting the claims described in the state court lawsuit against the City or property of the City and requiring it to dismiss the state court lawsuit with prejudice.

## II. **Background**

### A. **The City's Bankruptcy Case**

2.     On July 18, 2013 ("Petition Date"), the City filed this chapter 9 case.

3.     On October 10, 2013, the City filed its Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion").  [Doc. No. 1146].

4.     On November 21, 2013, this Court entered an order approving the Bar Date Motion ("Bar Date Order").  [Doc. No. 1782].  The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City.  Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City…

Bar Date Order ¶ 6.

5.     Paragraph 22 of the Bar Date Order also provided that:

> Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any

Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Bar Date Order ¶ 22 (emphasis added).

6.     On October 22, 2014, the City filed its Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) ("Plan").  [Doc. No. 8045].

7.     On November 12, 2014, this Court entered an order confirming the Plan ("Confirmation Order").  [Doc. No. 8272].

8.     The discharge provision in the Plan provides

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4.

9.     With certain exceptions not applicable here, the Plan does not afford any right to distributions or payments to claimants that did not timely file proofs of claim.  Plan Art. I.A.19; Art. I.A.134; Art. VI.A.1. Such claims are not Allowed Claims under the Plan and thus are not entitled to distributions under the Plan.  *Id.*  ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.").

10.    The Plan injunction set forth in Article III.D.5 also provides in pertinent part:

**Injunction**

**On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**

> a. all Entities that have been, are or may be holders of Claims against the City…shall be permanently enjoined from taking any of the following actions against or affecting the City or its property…
>
> 1. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property…
>
> 5. proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and
>
> 6. taking any actions to interfere with the implementation or consummation of the Plan.

Plan, Article III.D.5 (emphasis supplied).

11.     The Court also retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan.  Plan, Art. VII. F, G, I.

**B.     B&C Files a Complaint in State Court in 2015 Based on an Alleged Real Estate Purchase Agreement Entered into in 2006**

12.     On July 1, 2015, B&C filed a complaint ("Complaint") against the City in Wayne County Circuit Court, Michigan, case number 15-008602 ("State Court Lawsuit"). The Complaint is attached as Exhibit 6A.  A notice of lis pendens ("Lis Pendens") was attached to the complaint.

13.     Also, on July 1, 2015, the City wrote to B&C explaining that the filing of the Complaint violated the Plan and the Bar Date Order.  The July 1 correspondence is attached as Exhibit 6B.  In its July 1 correspondence, the City requested that B&C dismiss the State Court Lawsuit by July 8, 2015.  B&C refused to dismiss the State Court Lawsuit.  On July 21, 2015, the City filed its answer ("Answer") to the Complaint.  *See* Ex. 6C.

14.     In the Complaint, B&C asserts that it submitted a proposal in 2004 to the City's Department of Planning and Development to develop approximately 29 acres of land located at 5601, 5815 and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass ("Property").  Complaint ¶ 5.  In connection with the proposal, B&C alleges that throughout 2004, its President, Mr. Robert Carmack, met with various City and Detroit Water and Sewerage Department ("DWSD") representatives.  *Id.* ¶¶ 6-9.  B&C further alleges that in 2005, Mr. Carmack was instructed by the City to conduct environmental studies on the Property, which B&C subsequently completed.  *Id.* ¶ 10.

15.     After conducting negotiations on the Property, B&C alleges that in March 2006 the City presented Mr. Carmack with an offer of sale for $500,000.  *Id.* ¶ 11.  B&C alleges that on April 14, 2006, Mr. Carmack signed the offer to purchase and gave a deposit of $50,000.00 by check to the City. *Id.*¶ 12.

16.     The sale and transfer of the Property was stalled, however, between April 2005 and May 2008, according to B&C.  *Id.* ¶ 13.  In May 2008, B&C alleges that the City presented a new document to City Council seeking approval of a sale of the Property from the City to DWSD.  *Id.* ¶ 15.  At that point, B&C alleges that "City Council, without benefit of the history of this property and pending sale to B&C approved the sale for $5,000,000.00 to DWSD with no appraisal or due diligence." *Id.*  As set forth in the Answer, on or about June 30, 2008, the Detroit City Council did authorize the transfer of the Property from the Planning and Development Department to the DWSD in exchange for reimbursement from the DWSD of $5 million.  Answer ¶ 15.

17.     B&C continues to allege that at various points from 2010 through 2012, it was told that the DWSD needed the Property to build a combined sewer overflow facility but that there is not any evidence that the DWSD needed the Property for this purpose.  *Id.* ¶¶ 16-19.

18.     On May 10, 2012, Mr. Carmack did appear in front of the Detroit City Council raising many of the same allegations that are contained in the Complaint.  *See* Ex. 6D.

19.     In response to Mr. Carmack's comments to City Council, on May 15, 2012, Robert A. Anderson, the Director of the City's Planning and Development Department, submitted a public statement to City Council ("May 2012 Public Statement").  Ex. 6D.

20.     In the May 2012 Public Statement, Mr. Anderson stated that on June 18, 2008, the Board of Water Commissions authorized the DWSD director to approve the acquisition of the approximately 28.66 acre "Revere Copper & Brass" site as the location for a combined sewer overflow facility.  *Id.*   He further explained that on June 30, 2008, the City Council authorized the transfer of the approximately 28.66 acre "Revere Copper & Brass" site from the City's Planning and Development Department to DWSD for a combined sewer overflow facility in exchange for reimbursement from DWSD of $5 million.  *Id.*

21.     Mr. Anderson emphasized:

P&DD never took a deposit from Mr. Carmack for this site, never entered into a purchase agreement with Mr. Carmack for this site, and never entered into a development agreement with Mr. Carmack for this site.  P&DD never requested that this Honorable Body approve any sale of this site to Mr. Carmack, and Your Honorable Body never passed a land sale resolution or authorized the sale of the property to Mr. Carmack.

Since June of 2008, Your Honorable Body has requested P&DD report on the status of a sale of this site to Mr. Carmack no less than four times.  The information each time has been recited above, with no change since the original report of June 25, 2008 other than the transfer to DWSD.  We trust that this correspondence addresses with finality your concerns and inquiries to P&DD regarding the status of the former "Revere Coopper & Brass" property and the issues raised by Mr. Carmack.

*Id.*

22.     In the Complaint, B&C alleges that on February 5, 2013, the Detroit City Council then transferred jurisdiction over the property from the DWSD back to the Planning and Development Department because of a failure of consideration.  *Id.* ¶ 20.  In 2013, the City sold approximately 7 acres of the Property to Waterfront Terminal Holdings for a price of $1.16 million.  Answer ¶ 21. *See also* Complaint ¶ 21.  B&C also alleges that on June 30, 2031,[1] the City agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.  Complaint ¶ 22.

23.     Based on these facts, the Complaint asserts causes of action for Breach of Contract (Count I), Injunctive Relief/Specific Performance (Count II), and Declaratory Relief (Count III).  The Complaint is the first complaint filed by B&C against the City with respect to the alleged offer to purchase or the Property.

**C.     The Detroit City Council and Mayor Duggan Approve Two Purchase Agreements for Different Portions of the Property**

24.     In February, 2015, the City received two purchase offers for different portions of the Property.  Waterfront Terminal Holdings II, LLC ("Waterfront") offered to purchase approximately 6 acres of the Property ("Waterfront Property") for $735,000.  *See* Ex. 6E, True Copy Certificate of Resolution Approving Waterfront Offer to Purchase at 2. The terms of the Waterfront offer are set forth in a Purchase Agreement dated February 17, 2015 ("Waterfront Offer to Purchase").     *See* Ex. 6F.   Waterfront wishes to acquire the Waterfront Property to expand its vital marine liquid and bulk distribution operations.   Ex. 6E at 2.  Upon acquisition, Waterfront will remediate the Waterfront Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations.  *Id.*

_____

[1] This is not a typographical error. The complaint uses the year "2031."

25.     On June 30, 2015, the Detroit City Council passed a resolution approving the Waterfront Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution. Ex. 6E. Due to the filing of the State Court Lawsuit, on July 17, 2015, the sale closed in escrow. *See* Ex. 6G, Escrow Agreement.

26.     A separate purchaser, Revere Dock, LLC ("Revere Dock"), offered to purchase approximately 17 acres of the Property ("Revere Dock Property") for $2,280,000.00. *See* Ex. 6H, True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase at 2. The terms of the Revere Dock offer are set forth in a Purchase Agreement dated February 17, 2015 ("Revere Dock Offer to Purchase"). *See* Ex. 6I. Under the terms of the Revere Dock Offer to Purchase, the Revere Dock Property would be conveyed to Revere Dock under a development agreement by quit claim deed. *See* Ex. 6H at 2. Pursuant to the development agreement, Revere Dock's construction contracts will provide that Detroit residents must constitute at least 51% of the workforce and perform 51% of the hours worked on the project. *Id.* Revere Dock will also establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses or Detroit Emerging Businesses. *Id.* Revere Dock's development of the Revere Dock Property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment. *Id.*

27.     On June 30, 2015, the Detroit City Council passed a resolution approving the Revere Dock Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution. Ex. 6H.

28.     The City and the purchasers desire to complete the sale of these properties as soon as possible. Consummating these transactions will immediately remove the properties from the

City's maintenance responsibilities, relieving the City of the commensurate costs. Because these properties are owned by the City, the properties are currently tax-exempt but will be returned to the tax rolls after the sales. The improvements to be made by the purchasers will create construction jobs, and the business operations will create permanent jobs.

29.     The purchasers have informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the State Court Lawsuit. Further, one of the purchasers informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations.

## III.     Argument

30.     B&C violated the Plan injunction and discharge provisions when it filed the State Court Lawsuit asserting claims against the City. And, it continues to violate it by continuing to prosecute, and refusing to voluntarily dismiss, the State Court Lawsuit. Pursuant to the Plan, B&C's claims against the City are discharged and it is enjoined from, among other things, commencing any action against the City with respect to those claims. Plan, Art. III.D.4; Plan, Art. III.D.5.

31.     Furthermore, B&C did not file a proof of claim by the General Bar Date and has at no time after the General Bar Date filed an untimely proof of claim or a motion for permission to file an untimely proof of claim on the basis of "excusable neglect" under *Pioneer Inv. Services Co v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)("*Pioneer* Motion") and its

progeny. Thus, B&C is also barred, estopped and enjoined from asserting any claim against the City or property of the City under the Bar Date Order. Bar Date Order ¶ 22.[2]

32.     However, even if B&C were now to file and have granted a *Pioneer* Motion (which it has not filed or sought), the relief to be afforded B&C would not include permitting B&C to proceed with its State Court Lawsuit.  At most, B&C would be permitted to file a proof of claim which, if B&C were to succeed on the merits of its proof of claim, would afford it an "Other Unsecured Claim" under Class 14 of the Plan, and the right to a Pro Rata share of New B Notes and certain other distributions to the holders of Class 14 Claims described in the Plan. Under no scenario would B&C be permitted to commence or continue to prosecute the State Court Lawsuit in connection with its claims against the City alleged in the Complaint.

## IV.  **Conclusion**

33.     The City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1,  (a) granting the Motion; (b) requiring B&C to dismiss, or cause to be dismissed, with prejudice the State Court Lawsuit; (c) requiring B&C to withdraw the Lis Pendens filed by it with respect to the Property; and (d) permanently barring, estopping and enjoining B&C from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City or property of the City.  The City sought, but did not obtain, concurrence to the relief sought in the Motion.

---

[2] B&C's failure to timely file a proof of claim by the General Bar Date is an additional reason why B&C should be enjoined from continuing, and required to dismiss with prejudice, his claims against the City and its property.  However, it is not necessary for the Court to decide any bar date issues or address the Motion on that basis.  It is maintained as an alternative basis for granting the relief in the Motion.  As described in paragraph 32, even if B&C had filed a timely proof of claim and that proof of claim were Allowed under the Plan, B&C's sole right in connection with that claim would have been the right to receive distributions under the Plan on account of its Class 14 Claim (Other Unsecured Claim).  There is no set of circumstances under which B&C is or would have been permitted to commence and prosecute the State Court Lawsuit.

July 27, 2015                        Respectfully submitted,

                                     By: /s/ Marc N. Swanson
                                          Jonathan S. Green (P33140)
                                          Marc N. Swanson (P71149)
                                          MILLER, CANFIELD, PADDOCK AND
                                          STONE, P.L.C.
                                          150 West Jefferson, Suite 2500
                                          Detroit, Michigan 48226
                                          Telephone: (313) 496-7591
                                          Facsimile: (313) 496-8451
                                          green@millercanfield.com
                                          swansonm@millercanfield.com

                                          Charles N. Raimi (P29746)
                                          Deputy Corporation Counsel
                                          City of Detroit Law Department
                                          2 Woodward Avenue, Suite 500
                                          Coleman A. Young Municipal Center
                                          Detroit, Michigan  48226
                                          Telephone: (313) 237-5037
                                          Facsimile: (313) 224-5505
                                          raimic@detroitmi.gov


                                     ATTORNEYS FOR THE CITY OF DETROIT

## <u>EXHIBIT LIST</u>

Exhibit 1      Proposed Order

Exhibit 2      Notice

Exhibit 3      None

Exhibit 4      Certificate of Service

Exhibit 5      None

Exhibit 6A     Complaint

Exhibit 6B     July 1 Correspondence

Exhibit 6C     Answer

Exhibit 6D     May 2012 Public Statement

Exhibit 6E     True Copy Certificate of Resolution Approving Waterfront Offer to Purchase

Exhibit 6F     Waterfront Offer to Purchase

Exhibit 6G     Escrow Agreement

Exhibit 6H     True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase

Exhibit 6I     Revere Dock Offer to Purchase

## EXHIBIT 1 – PROPOSED ORDER

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This matter, having come before the court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion"), upon proper notice and a hearing, the Court being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1.      The Motion is granted.

2.      Within five days of the entry of this Order, B&C Land Development Corporation shall dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* ("State Court Lawsuit").

3.      Within five days of the entry of this Order, B&C Land Development Corporation shall withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4.      If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the Wayne County Register of Deeds which shall operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5.      B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

7.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarim DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING
DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT
THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT
VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF
THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE
WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO.
39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20,
PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND
ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT
SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO.
39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS;
THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON
AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE
NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE
PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E.
1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF
SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE;
THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST
OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND
BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

**EXHIBIT 2 – NOTICE**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

The City of Detroit has filed its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens, within 14 days, you or your attorney must:

1.  File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

---

[1]  Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on

the motion and you will be served with a notice of the date, time, and location of that hearing.


**If you or your attorney do not take these steps, the court may decide that you do not**

**oppose the relief sought in the motion or objection and may enter an order granting that**

**relief.**


MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
        Marc N. Swanson (P71149)
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        swansonm@millercanfield.com

Dated:  July 27, 2015

**EXHIBIT 3 – NONE**

# EXHIBIT 4 – CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2015 the foregoing City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens was filed and served via the Court's electronic case filing and notice system and served upon counsel as listed below, via first class mail and electronic mail:

Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

DATED: July 27, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

**EXHIBIT 5 – NONE**

**EXHIBIT 6A – COMPLAINT**

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-008602-CH<br>Hon. Annette J. Berry |
|---|---|---|

2 Woodward Ave., Detroit MI 48226                                          Court Telephone No. 313-224-4679

| **Plaintiff**<br><br>B & C Land Development Corporation | v | **Defendant**<br><br>City of Detroit |
|---|---|---|
| **Plaintiff's Attorney**<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | **Defendant's Attorney** |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/ 1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

_____        _____
Date                                              Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.



MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

                                              No. 15-008602-CH

                                              FILED IN MY OFFICE
                                             WAYNE COUNTY CLERK
The City of Detroit, a Municipal Corporation,         7/1/2015 7:53:55 AM
                                             CATHY M. GARRETT

        Defendant.

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com
_____/

## VERIFIED COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff, B&C Land Development Corporation, by and

through its attorney, Horace D. Cotton, and for its Complaint states:

**PARTIES**

1. Plaintiff B&C Land Development Corporation, ("B&C") is a Michigan

    corporation with its principal place of business in Wayne County,

    Michigan.

1

2. Defendant City of Detroit is a municipal corporation duly organized under the laws of the State of Michigan and is located in Wayne County, State of Michigan.

3. The amount in controversy exceeds $25,000 and is otherwise within the jurisdiction of this Court.

4. The acts complained of in this Complaint occurred in Wayne County, Michigan.

**COUNT I**
**BREACH OF CONTRACT**

5. On or about February 27, 2004  B&C Land Development Corporation submitted a proposal to the City of Detroit Department Planning (Planning and Development.) to develop the 28.665 acre parcel of land located at 5601, 5815, and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass.

6. Mr. Robert Carmack, the President of B&C, was informed by Mr. Alan Hayner, Project Manager for the property with Detroit's Planning and Development Department , that he would have to go to the Detroit Water and Sewerage Department ("DWSD") to get their

2

approval because they intended to build a Combined Sewer Overflow (CSO) system on that location.

7. On March 10, 2004 Mr. Carmack met with Victor Mercado, Director of DWSD and was told he could move forward with the project and that DWSD had no problem and no objections to putting the anticipated CSO on a different piece of property.

8. On March 29, 2004: Mr. Carmack received a letter from Mr. Hayner at Planning and Development advising him to prepare a proposal which was to include drawings, footprints, elevations, costs, financing, development team, construction of seawall, environmental costs and additional hard and soft costs.

9. On April 14, 2004: Mr. Hayner advised Mr. Carmack to bring in all documents to Planning Development by June 18, 2004 and they would reserve the property and not accept any new offers.

10. On February 24, 2005 Mr. Carmack was instructed by Mr. Hayner to conduct a Phase I and Phase II environmental study on the property which he subsequently initiated and completed.

11. After conducting negotiations regarding the purchase of the property, on March 28, 2006 Mr. Carmack was presented with an

3

offer of sale for $500,000.00 by Mr. Christopher Raschke, the new Project Manager (replacing Alan Hayner) with the Planning and Development Department.

12.   April 14, 2006: Mr. Carmack signed the offer to purchase and gave a deposit of $50,000.00 by check to the Project Manager, Mr. Christopher Raschke, who signed the offer and accepted the deposit on behalf of the City of Detroit. (Exhibit 1)

13.   Between April 14, 2005 and May 21, 2008 the sale and transfer of property stalled as Detroit Mayor Kwame Kilpatrick and his administration became embroiled in scandal and controversy.

14.   During that period, Mr. Carmack was solicited to make a $50,000.00 bribe by a high ranking city official.  When he refused his development proposal was placed on the back burner and eventually killed altogether.

15.   On May 21, 2008 the Kilpatrick Administration presented a new document to City Council seeking approval of a sale of the property from the City of Detroit to DWSD. City Council, without benefit of the history of this property and pending sale to B&C

4

approved the sale for $5,000.000.00 to DWSD with no appraisal or due diligence.

16.    When City Council approved the sale and contrary to previous statements and documentation, Mr. Carmack was informed that DWSD needed it for the CSO program and Right-of-Way. However there is no CSO either planned or actually being built on this property and the Right-of-Way has been in the possession of DWSD since 1936.

17.    On January 2010: Mr. Carmack brought this issue to the attention of Mr. Al Fields, Executive Director in the new Bing Administration in Detroit.

18.    On May 25, 2011: The new DWSD Director, Sue McCormick {replacing Victor Mercado), stated that they would be building a CSO on the property. There is no evidence to indicate this is a true statement. In fact, evidence points to the contrary.

19.    On February 21, 2012 New Bing Administration Executive Director Karla Henderson (replacing Al Fields) initiated the transfer of the property to DWSD advising Mr. Carmack that a CSO was being built.

5

20.  On February 5, 2013 the Detroit City Council by resolution transferred jurisdiction over the property from the Detroit Water and Sewerage Department back to the Planning and Development Department because of a failure of consideration.

21.  On August 6, 2013 Detroit agreed to sell 7 acres of the property to Waterfront Terminal Holdings, II LLC.

22.  On June 30, 2031 Detroit agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

## COUNT II
## INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE

23.  By this action, B&C seeks declaratory and injunctive relief requiring Detroit to perform under the terms of the Purchase Agreement. Injunctive relief is appropriate.

24.  Finally, B&C seeks specific performance of the Purchase Agreement requiring Detroit to convey the Revere Copper property to B&C. Detroit has impaired B&C's contractual rights by improperly agreeing to sell and convey the property to the Detroit

6

Water and Sewage Department, thereby destroying its own agreement.

25. Plaintiff adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

26. Detroit breached its obligations under the Purchase Agreement by failing and refusing to cooperate and negotiate in good faith. Specifically, Detroit has violated the Purchase Agreement by, among other things: (1) failing and refusing to present B&C with a Development Agreement; (2) failing and refusing to present the development proposal to City Council for final approval; (3) conveying the property to the Detroit Water and Sewage Department after the property was under contract to B&C; (4) conveying and agreeing to convey the property to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

27. B&C fully cooperated with Detroit in pursuit of the Purchase Agreement by expended substantial resources and time in conducting due diligence and preparing a complete development proposal.

28. B&C is entitled to mandatory injunctive relief requiring Detroit to perform under the Purchase Agreement.

7

29.   B&C is entitled to a mandatory injunction and/or specific performance of the Purchase Agreement.

## COUNT III
## DECLARATORY RELIEF

30.   Detroit breached the terms of the Purchase Agreement B&C

seeks specific performance of the Purchase Agreement, including, but not limited to, an order requiring Detroit to convey the property to B&C.

31.   B&C repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint as though fully set forth herein.

32.   Detroit has prevented B&C's performance under the Purchase Agreement. B&C has satisfied all other conditions precedent to conveyance of the property except as excused by Detroit's breach.

33.   An actual controversy has arisen and now exists between B&C and Defendants concerning their respective rights and duties.

34.   B&C requests a judicial determination of the parties' rights and duties as set forth herein. A judicial declaration is necessary and

8

appropriate in order that the parties may ascertain their respective rights, duties and obligations.

35.    Specifically, B&C requests a declaration that Detroit breached the Purchase Agreement by conveying the property to DWSD and repudiating the Purchase Agreement.

## PRAYER FOR RELIEF

WHEREFORE, B&C Land Development Corporation respectfully request the following relief:

1. For specific performance and declaratory relief as specified below.

2. For a declaration that the vote to convey the property to DWSD was improper and unconstitutional; and that the vote be declared null and void and set aside.

3. For specific performance, including an order requiring Detroit to convey the property to B&C.

4. For declaratory relief, including a declaration that Detroit breached the Purchase Agreement.

9

5. For a declaration that the votes to convey the property to DWSD, Waterfront Terminal Holdings II, LLC And Steven W. Erickson were improper and unconstitutional; and that the votes be declared null and void and set aside.

6. For compensatory damages in an amount not less than $25,000 to be determined by the jury.

7.    For attorneys' fees and costs of suit.

8. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through undersigned counsel, and hereby requests that all issues in this Verified Complaint be tried by jury.


DATED: June 30, 2015

*/s/ Horace D. Cotton* (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

10

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

March 28, 2006

Mr. Robert Carmack
B&C Land Development
8711 Michigan
Detroit, MI 48210

**RE:** **Property For Sale By Development Agreement**
**Development: 5601, 5815 & 5861 W. Jefferson**
**(Former Revere Copper & Brass Site)**

Dear Mr. Carmack:

Your Offer to Purchase the above-captioned property has been reviewed and as a result a price adjustment has been determined. Accordingly, the established price for this property has been set at Five Hundred Thousand and 00/100 Dollars ($500,000.00). We hope that this adjustment in the sales price will allow you to go forward with your proposed development.

This offer supersedes any previous offer and this opportunity will expire if it is not executed on or before April 14, 2006. Please note that all city owned property is sold on an "AS IS" basis. However, if you desire to make an environmental survey of the site prior to title transfer, you may request a Right of Entry to do so.

Prospective purchasers are hereby notified that the Planning and Development Department has not investigated the environmental condition of any of the properties included in this Offer. Various federal, state or other City agencies may have information regarding the environmental condition of one or more of the properties on this list. Each purchaser is encouraged to conduct its own due diligence regarding the environmental condition of the property which that purchaser proposes to acquire and is notified that the property may be the subject of environmental contamination. The City of Detroit makes absolutely no warranty or representation regarding the environmental condition of any property offered for sale.

I.    **Pursuant to your request, we are enclosing the following items:**

1.    A map of the area and legal description of the property.

2.    Two copies of an Offer to Purchase. Please complete and sign both copies making certain that your telephone number is correct and that your name(s) appear(s) exactly as it should be shown on the Deed.

KWAME M. KILPATRICK, MAYOR



    3.    Two (2) copies of an Offeror's Statement of Qualifications which must be completed and included as part of formal purchase offer submittal.

    4.    A copy of the Standard Procedure for the Purchase of Surplus Property under Development Agreement. This form explains what constitutes a formal purchase offer.

When property is sold for development purposes, standard City procedure requires that a formal Offer to Purchase be made before our Department can request authorization to proceed with a sale.

**II.**    **A formal offer to purchase and develop the captioned property must include all of the following information and all of it must be submitted at the same time. If your response does not address each of the items listed below, your entire package will be returned to you.**

    A.    A narrative statement describing the character and size of the development proposed along with preliminary site plans and/or elevation drawings at an appropriate scale to illustrate as clearly as possible the nature of the development.

    B.    A statement of financial resources available to the developer for the proposed development. This should include the amount and source of developer's equity capital and other financing which provides sufficient financial information to establish the approximate net worth and/or liquid assets available to the developer for the proposed development.

Along with the following:

    1.    A copy of the Developer's Articles of Incorporation, if applicable, so that the appropriate name will be used during the approval process and ultimately appear on the Deed at the Closing of the land sale.

    2.    Two (2) completed copies of the Offer to Purchase.

    3.    Three (3) copies of your **site plans, floor plans and elevation drawings**.

    4.    Two (2) completed Offeror's Statement of Qualifications.

KWAME M. KILPATRICK, MAYOR



Mr. Robert Carmack
March 28, 2006
Page 3

5. A cashier's or certified check payable to "Treasurer, City of Detroit" in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) to serve as a "Good Faith" deposit. This deposit will be held by the City until the purchaser has completed the improvements as set forth in the site plan.

15-008602-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

Upon receipt of the above, we shall review your proposed development package. If acceptable, we shall follow our Standard Procedure for sale of Surplus Property by Development Agreement to obtain City Council authorization to execute an Agreement to purchase and develop the property.

If you have any questions, please feel free to call **Christopher Raschke** at (313)224-6519 of the Development Division. **Your response to this Offer to Purchase should be mailed to:**

**Christopher Raschke**
**Planning & Development Dept.**
**65 Cadillac Square, Suite 2000**
**Detroit, MI 48226**

Sincerely,

Chidi Nyeche, Manager II
Planning & Development Department

CBN/CR/cdc

Enclosures

cc:     A. Bradby
        J. Marusich

KWAME M. KILPATRICK, MAYOR

## OFFER TO PURCHASE

(Expires if not executed on or before ___April 14, 2006___ )

(I, We), __B &C Land Development Corporation__

_____ hereby offer to purchase the property

known as __5601, 5815 & 5861 W. Jefferson (Former Revere Copper & Brass Site)__

_____ for the price of $ __500,000.00__ , subject to the

Development Agreement for the aforementioned property. (I, We)

plan to improve and use the property in the following manner:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer, City

of Detroit", in the amount of $ ___50,000.00___ which represents a

"Good Faith" Deposit which will be held by the City until the

development has been satisfactorily completed.

__4/14/06__
Date

Signed __Christopher Ross__

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer City
of Detroit" in the amount of $ __50,000.00__ which represents a
"Good Faith Deposit which will be held by the City until the
development has been satisfactorily completed.

_4-_-_16_         Signed _____
Date

        Date _____

        Telephone _____

_4/14/06_         Signed _____
Date

        Date _____

        Telephone _____

## STATE OF MICHIGAN
## IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

                                  15-008602CH
                                  Hon. Annette J. Berry

The City of Detroit, a Municipal Corporation,

        Defendant.

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com
_____/

## NOTICE OF LIS PENDENS

      NOTICE IS HEREBY GIVEN that the above-entitled action concerning and affecting real property as described herein was commenced on June 30, 2015 in the above-named court by Plaintiff B & C Land Development Corporation against Defendant the City of Detroit. The action is now pending in the above-named court.

1

The action affects the title of real property commonly known as:

5601, 5815 & 5851 W. Jefferson

War 16, Items 000006.001, 000006.002L &000008-9

And more particularly described as:

Land in the City of Detroit, County of Wayne and State of Michigan being part of Private Claim 39, also known as the Walter Crane Farm in the area formerly known as Springwells Township, and being more particularly described as follows:

All of that part of Private Claim 39 bounded on the North by the South line of West Jefferson Avenue, 80 feet wide; bounded on the West by the West line of Private Claim 39, which is common to the East line of Private Claim 39; and bounded on the South by the United States Harbor line as defined by the "Harbor Lines of Detroit and Vicinity Established by the Secretary of War, September 23, 1982:, as recorded in Liber 20, Pages 75 to 87, Wayne County Records, except for a triangular portion of said tract of land which is defined as being the South 338.25 feet on the West line of Private Claim 39 and the West 157 feet on the U.S. Harbor line of said tract of land.

This herein described tract of land is subject to a 30 feet Right of Way for a Sewer Easement that was granted to the City of Detroit on January 20, 1857 and recorded in Liber 289, Page 578 on February 9, 1883 and any other easements affecting the land. Said tract of land includes property formerly owned by the "Revere Copper Products Incorporated" which was deeded to the City of Detroit by Warranty Deed and recorded in Liber 23247, Pages 685 and 686, Wayne County Records, which was described as follows:

Parcel # 1:     Lots 1187 through 1200 inclusive and the Westerly 23 feet of Lot 1202 of the Sixth Plat of WALTER CRANE FARM, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 plats, Wayne County Records.

2

Parcel # 2:   Lots 1206 through 1215 inclusive of the Sixth Plat of WALTER CRANE FARM,, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 of plats, Wayne County Records, Campbell Avenue lying Southerly of the Southerly line of Jefferson Avenue West and Westerly of the above described premises also Lots 1 through 10, inclusive of Block 22, REEDER, JEROME AND DUFFIELDS SUBDIVISION, together with the adjoining vacated alley Southerly of said premises as recorded in Liber 7, Page 29 of plats, Wayne County Records, excepting that part of Lot 10 and the vacated alley deeded to the City of Detroit, Wayne County Records.

Parcel # 3:   The Westerly 385.36 feet in width of that part of Private Claim 39 South of Jefferson Avenue, excepting the Northerly 145 feet thereof as platted in the plat recorded in Liber 20, Page 55 of plats, Wayne County Register of Deeds records: together with accretions and additions thereof extending to the Detroit River and to the Harbor Line.

Parcel # 4:      Beginning at a point South 28° 8 minutes East 202.75 feet from a point in the Southerly line of said West Jefferson Avenue 97.52 feet distant on a course South 61° 52 minutes West from the intersection of the Southerly line of West Jefferson Avenue with the Westerly line of vacated, Campbell Avenue; running thence from said point of beginning North 61° 52 minutes East 71.40 feet to a point; thence North 27° 49 minutes West 57.75 feet to a point; thence 61 °52 minutes East 604.68 feet to a point; thence South 27 ° 50 minutes East 759. 52 feet to the United States harbor line, thence South 34 degrees 3 minutes West along said United States  Harbor line 635.59 feet to a point in the Easterly line or Parcel # 3 above; thence North 55 degrees 57 minutes West 302.57 feet along the Easterly line of Parcel # 3 above to a point which is the apex of an angle formed by the change of the courses of the Westerly boundary of the premises herein described in an Easterly direction; thence continuing along said Easterly line of Parcel # 3 above North 28 degrees 3

3

minutes West 730.73 feet to a point; thence North 61 degrees 52 minutes East 29.64 feet to the point of beginning, including all vacated streets and alleys lying within the boundaries of said premises above described, and together with all riparian rights thereunto belonging.

Horace D. Cotton (P33286)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517

4

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-008602-CH<br>Hon. Annette J. Berry |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-4679

| Plaintiff<br>B & C Land Development Corporation | v | Defendant<br>City of Detroit |
|---|---|---|
| Plaintiff's Attorney<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | Defendant's Attorney<br><br>_HO_<br>_GP_ |

*RECEIVED CITY OF DETROIT LAW 2015 JUN 31 PM 2:1*

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/ 1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |



_____        _____

Date                                    Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

# EXHIBIT 6B – JULY 1 CORRESPONDENCE

| | |
|---|---|
| **From:** | James Noseda <NoseJ@detroitmi.gov> |
| **Sent:** | Wednesday, July 1, 2015 4:21 PM |
| **To:** | HDCOTTON@YAHOO.COM |
| **Cc:** | Charles Raimi; Swanson, Marc N. |
| **Subject:** | B & C Land Development Corporation v City of Detroit, 15-008602-CH |
| **Attachments:** | B&C Land Develop..pdf; Bankruptcy.Notice.pdf |

Mr. Cotton:

You filed the attached lawsuit which seeks to enforce an alleged 2006 offer to purchase property from the City of Detroit.

The City Council never approved any such transaction, so no contract exists as a matter of law (and also by the very terms of the offer made by your client).

Also, the statute of limitations on a contract or any other claim has come and gone.

More importantly, your client did not file a claim in the City's bankruptcy. The deadline for filing a claim was February 24, 2014. Notice was given to all with known claims against the City, and to all others by means of multiple publications approved by the bankruptcy court.

The filing of the lawsuit, and any continuation of the lawsuit, violates the discharge injunction contained in the "Eight Amended Plan For the Adjustment of Debts of the City of Detroit" approved by the bankruptcy court on November 12, 2014 in Case No. 13-53846. See the attached Notice which contains a summary of the discharge and injunction.

Demand is made that you voluntarily dismiss the lawsuit by July 8, 2015, and send me a copy of the dismissal order.

In the event that the lawsuit is not dismissed, I have copied this e-mail to our bankruptcy counsel, Marc Swanson, and ask that he file a motion with the bankruptcy court to enforce the injunction and seek costs and sanctions as appropriate.


/s/ James D. Noseda
Supervising Assistant Corporation Counsel
City of Detroit Law Department
Coleman A. Young Municipal Building
2 Woodward Ave., 5th Floor
Detroit, Michigan 48226
Dir. Tel. 313-237-3057
Gen. Tel. 313-224-4550
Fax: 313-224-5505
nosej@detroitmi.gov

WARNING: This communication may include information protected by the attorney-client privilege, the attorney work product doctrine, the deliberative process privilege, or by other privilege. This communication is intended solely for the individual or entity to whom it is addressed. If you are not the intended recipient, use of the communication is neither allowed nor intended. If you received this e-mail in error, please securely delete it.

1

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS AND COMPLAINT | CASE NO.<br>15-008602-CH<br>Hon. Annette J. Berry |
|---|---|---|

2 Woodward Ave., Detroit MI 48226

Court Telephone No. 313-224-4679

| Plaintiff<br><br>B & C Land Development Corporation | v | Defendant<br><br>City of Detroit |
|---|---|---|
| Plaintiff's Attorney<br><br>Horace D. Cotton, P-33268<br>PO Box 19520<br>Detroit, MI 48219-0520 | | Defendant's Attorney |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C]).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>7/ 1/2015 | This summons expires<br>9/30/2015 | Court clerk<br>File & Serve Tyler |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☐ There is no other pending or resolved civil action arise out of the same transaction or occurrence as alleged in the complaint.

☐ An civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Place where action arose or business conducted | |

_____    _____
Date                           Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.



MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a),(b), MCR 3.206(A)

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-

The City of Detroit, a Municipal Corporation,

        Defendant.

CASE 15-008602-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

_____/

Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

_____/

## VERIFIED COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff, B&C Land Development Corporation, by and

through its attorney, Horace D. Cotton, and for its Complaint states:

**PARTIES**

1. Plaintiff B&C Land Development Corporation, ("B&C") is a Michigan

    corporation with its principal place of business in Wayne County,

    Michigan.

1

2. Defendant City of Detroit is a municipal corporation duly organized under the laws of the State of Michigan and is located in Wayne County, State of Michigan.

3. The amount in controversy exceeds $25,000 and is otherwise within the jurisdiction of this Court.

4. The acts complained of in this Complaint occurred in Wayne County, Michigan.

## COUNT I
## BREACH OF CONTRACT

5. On or about February 27, 2004  B&C Land Development Corporation submitted a proposal to the City of Detroit Department Planning (Planning and Development.) to develop the 28.665 acre parcel of land located at 5601, 5815, and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass.

6. Mr. Robert Carmack, the President of B&C, was informed by Mr. Alan Hayner, Project Manager for the property with Detroit's Planning and Development Department , that he would have to go to the Detroit Water and Sewerage Department ("DWSD") to get their

2

approval because they intended to build a Combined Sewer
Overflow (CSO) system on that location.

7. On March 10, 2004 Mr. Carmack met with Victor Mercado, Director of
DWSD and was told he could move forward with the project and
that DWSD had no problem and no objections to putting the
anticipated CSO on a different piece of property.

8. On March 29, 2004: Mr. Carmack received a letter from Mr. Hayner at
Planning and Development advising him to prepare a proposal
which was to include drawings, footprints, elevations, costs,
financing, development team, construction of seawall,
environmental costs and additional hard and soft costs.

9. On April 14, 2004: Mr. Hayner advised Mr. Carmack to bring in all
documents to Planning Development by June 18, 2004 and they
would reserve the property and not accept any new offers.

10. On February 24, 2005 Mr. Carmack was instructed by Mr. Hayner
to conduct a Phase I and Phase II environmental study on the
property which he subsequently initiated and completed.

11. After conducting negotiations regarding the purchase of the
property, on March 28, 2006 Mr. Carmack was presented with an

3

offer of sale for $500,000.00 by Mr. Christopher Raschke, the new Project Manager (replacing Alan Hayner) with the Planning and Development Department.

12.    April 14, 2006: Mr. Carmack signed the offer to purchase and gave a deposit of $50,000.00 by check to the Project Manager, Mr. Christopher Raschke, who signed the offer and accepted the deposit on behalf of the City of Detroit. (Exhibit 1)

13.    Between April 14, 2005 and May 21, 2008 the sale and transfer of property stalled as Detroit Mayor Kwame Kilpatrick and his administration became embroiled in scandal and controversy.

14.    During that period, Mr. Carmack was solicited to make a $50,000.00 bribe by a high ranking city official.  When he refused his development proposal was placed on the back burner and eventually killed altogether.

15.    On May 21, 2008 the Kilpatrick Administration presented a new document to City Council seeking approval of a sale of the property from the City of Detroit to DWSD. City Council, without benefit of the history of this property and pending sale to B&C

4

approved the sale for $5,000.000.00 to DWSD with no appraisal or due diligence.

16. When City Council approved the sale and contrary to previous statements and documentation, Mr. Carmack was informed that DWSD needed it for the CSO program and Right-of-Way. However there is no CSO either planned or actually being built on this property and the Right-of-Way has been in the possession of DWSD since 1936.

17. On January 2010: Mr. Carmack brought this issue to the attention of Mr. Al Fields, Executive Director in the new Bing Administration in Detroit.

18. On May 25, 2011: The new DWSD Director, Sue McCormick {replacing Victor Mercado), stated that they would be building a CSO on the property. There is no evidence to indicate this is a true statement. In fact, evidence points to the contrary.

19. On February 21, 2012 New Bing Administration Executive Director Karla Henderson (replacing Al Fields) initiated the transfer of the property to DWSD advising Mr. Carmack that a CSO was being built.

5

20. On February 5, 2013 the Detroit City Council by resolution transferred jurisdiction over the property from the Detroit Water and Sewerage Department back to the Planning and Development Department because of a failure of consideration.

21. On August 6, 2013 Detroit agreed to sell 7 acres of the property to Waterfront Terminal Holdings, II LLC.

22. On June 30, 2031 Detroit agreed to sell the remaining 21.665 acres to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

## COUNT II
## INJUNCTIVE RELIEF/SPECIFIC PERFORMANCE

23. By this action, B&C seeks declaratory and injunctive relief requiring Detroit to perform under the terms of the Purchase Agreement. Injunctive relief is appropriate.

24. Finally, B&C seeks specific performance of the Purchase Agreement requiring Detroit to convey the Revere Copper property to B&C. Detroit has impaired B&C's contractual rights by improperly agreeing to sell and convey the property to the Detroit

6

Water and Sewage Department, thereby destroying its own agreement.

25. Plaintiff adopts and incorporates by reference all prior paragraphs as though fully set forth herein.

26. Detroit breached its obligations under the Purchase Agreement by failing and refusing to cooperate and negotiate in good faith. Specifically, Detroit has violated the Purchase Agreement by, among other things: (1) failing and refusing to present B&C with a Development Agreement; (2) failing and refusing to present the development proposal to City Council for final approval; (3) conveying the property to the Detroit Water and Sewage Department after the property was under contract to B&C; (4) conveying and agreeing to convey the property to Waterfront Terminal Holdings II, LLC and Steven W. Erickson.

27. B&C fully cooperated with Detroit in pursuit of the Purchase Agreement by expended substantial resources and time in conducting due diligence and preparing a complete development proposal.

28. B&C is entitled to mandatory injunctive relief requiring Detroit to perform under the Purchase Agreement.

7

29.   B&C is entitled to a mandatory injunction and/or specific performance of the Purchase Agreement.

## COUNT III
## DECLARATORY RELIEF

30.   Detroit breached the terms of the Purchase Agreement B&C

seeks specific performance of the Purchase Agreement, including, but not limited to, an order requiring Detroit to convey the property to B&C.

31.   B&C repeats and realleges each and every foregoing and subsequent allegation contained in the Complaint as though fully set forth herein.

32.   Detroit has prevented B&C's performance under the Purchase Agreement. B&C has satisfied all other conditions precedent to conveyance of the property except as excused by Detroit's breach.

33.    An actual controversy has arisen and now exists between B&C and Defendants concerning their respective rights and duties.

34.   B&C requests a judicial determination of the parties' rights and duties as set forth herein. A judicial declaration is necessary and

8

appropriate in order that the parties may ascertain their respective rights, duties and obligations.

35.   Specifically, B&C requests a declaration that Detroit breached the Purchase Agreement by conveying the property to DWSD and repudiating the Purchase Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, B&C Land Development Corporation respectfully request the following relief:

1. For specific performance and declaratory relief as specified below.

2. For a declaration that the vote to convey the property to DWSD was improper and unconstitutional; and that the vote be declared null and void and set aside.

3. For specific performance, including an order requiring Detroit to convey the property to B&C.

4. For declaratory relief, including a declaration that Detroit breached the Purchase Agreement.

5. For a declaration that the votes to convey the property to DWSD, Waterfront Terminal Holdings II, LLC  And Steven W. Erickson were improper and unconstitutional; and that the votes be declared null and void and set aside.

6. For compensatory damages in an amount not less than $25,000 to be determined by the jury.

7.    For attorneys' fees and costs of suit.

8. For such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, by and through undersigned counsel, and hereby requests that all issues in this Verified Complaint be tried by jury.


DATED: June 30, 2015

*/s/ Horace D. Cotton* (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com

2300 CADILLAC TOWER
DETROIT, MICHIGAN 48226
PHONE 313•224•6380
FAX 313•224•1629
WWW.CI.DETROIT.MI.US

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

March 28, 2006

Mr. Robert Carmack
B&C Land Development
8711 Michigan
Detroit, MI 48210

RE:    **Property For Sale By Development Agreement**
       **Development: 5601, 5815 & 5861 W. Jefferson**
                    **(Former Revere Copper & Brass Site)**

Dear Mr. Carmack:

Your Offer to Purchase the above-captioned property has been reviewed and as a result a price adjustment has been determined. Accordingly, the established price for this property has been set at Five Hundred Thousand and 00/100 Dollars ($500,000.00). We hope that this adjustment in the sales price will allow you to go forward with your proposed development.

This offer supersedes any previous offer and this opportunity will expire if it is not executed on or before April 14, 2006. Please note that all city owned property is sold on an "AS IS" basis. However, if you desire to make an environmental survey of the site prior to title transfer, you may request a Right of Entry to do so.

Prospective purchasers are hereby notified that the Planning and Development Department has not investigated the environmental condition of any of the properties included in this Offer. Various federal, state or other City agencies may have information regarding the environmental condition of one or more of the properties on this list. Each purchaser is encouraged to conduct its own due diligence regarding the environmental condition of the property which that purchaser proposes to acquire and is notified that the property may be the subject of environmental contamination. The City of Detroit makes absolutely no warranty or representation regarding the environmental condition of any property offered for sale.

I.    **Pursuant to your request, we are enclosing the following items:**

      1.    A map of the area and legal description of the property.

      2.    Two copies of an Offer to Purchase. Please complete and sign both copies making certain that your telephone number is correct and that your name(s) appear(s) exactly as it should be shown on the Deed.

KWAME M. KILPATRICK, MAYOR



Mr. Robert Carmack
March 28, 2006
Page 2

     3.    Two (2) copies of an Offeror's Statement of Qualifications which must be completed and included as part of formal purchase offer submittal.

     4.    A copy of the Standard Procedure for the Purchase of Surplus Property under Development Agreement. This form explains what constitutes a formal purchase offer.

When property is sold for development purposes, standard City procedure requires that a formal Offer to Purchase be made before our Department can request authorization to proceed with a sale.

**II.    A formal offer to purchase and develop the captioned property must include all of the following information and all of it must be submitted at the <u>same time</u>. If your response does not address each of the items listed below, your entire package will be returned to you.**

     A.    A narrative statement describing the character and size of the development proposed along with preliminary site plans and/or elevation drawings at an appropriate scale to illustrate as clearly as possible the nature of the development.

     B.    A statement of financial resources available to the developer for the proposed development. This should include the amount and source of developer's equity capital and other financing which provides sufficient financial information to establish the approximate net worth and/or liquid assets available to the developer for the proposed development.

Along with the following:

     1.    A copy of the Developer's Articles of Incorporation, if applicable, so that the appropriate name will be used during the approval process and ultimately appear on the Deed at the Closing of the land sale.

     2.    Two (2) completed copies of the Offer to Purchase.

     3.    Three (3) copies of your <u>**site plans, floor plans and elevation drawings**</u>.

     4.    Two (2) completed Offeror's Statement of Qualifications.



Mr. Robert Carmack
March 28, 2006
Page 3

5. A cashier's or certified check payable to "Treasurer, City of Detroit" in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) to serve as a "Good Faith" deposit. This deposit will be held by the City until the purchaser has completed due improvements as set forth in the site plan.

15-008602-CH
FILED IN MY OFFICE
WAYNE COUNTY CLERK
7/1/2015 7:53:55 AM
CATHY M. GARRETT

Upon receipt of the above, we shall review your proposed development package. If acceptable, we shall follow our Standard Procedure for sale of Surplus Property by Development Agreement to obtain City Council authorization to execute an Agreement to purchase and develop the property.

If you have any questions, please feel free to call **Christopher Raschke** at (313)224-6519 of the Development Division. **Your response to this Offer to Purchase should be mailed to:**

**Christopher Raschke**
**Planning & Development Dept.**
**65 Cadillac Square, Suite 2000**
**Detroit, MI 48226**

Sincerely,

Chidi Nyeche, Manager II
Planning & Development Department

CBN/CR/cdc

Enclosures

cc: A. Bradby
    J. Marusich

KWAME M. KILPATRICK, MAYOR

## OFFER TO PURCHASE



(Expires if not executed on or before ___April 14, 2006___)

(I, We), __B JC Land Development Corporation__

_____ hereby offer to purchase the property

known as __5601, 5815 & 5861 W. Jefferson (Former Revere Copper & Brass Site)__

_____ for the price of $ __500,000.00__ , subject to the

Development Agreement for the aforementioned property. (I, We)

plan to improve and use the property in the following manner:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer, City

of Detroit", in the amount of $ __50,000.00__ which represents a

"Good Faith" Deposit which will be held by the City until the

development has been satisfactorily completed.

___4/14/06___
Date

Signed ___Christopher Rossi___

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Enclosed is a check or money order, payable to "Treasurer City of Detroit" in the amount of $ _____50,000.00_____ which represents a "Good Faith Deposit which will be held by the City until the development has been satisfactorily completed.

_____4 - 06_____
Date

_____4/14/06_____
Date

Signed _____

Date _____

Telephone _____

Signed _____

Date _____

Telephone _____

STATE OF MICHIGAN
IN THE THIRD JUDICIAL CIRCUIT COURT

B&C Land Development Corporation,
A Michigan Corporation,

        Plaintiff,

-vs-                             15-008602CH
                                      Hon. Annette J. Berry

The City of Detroit, a Municipal Corporation,

        Defendant.
_____/
Horace D. Cotton (P33268)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517
hdcotton@yahoo.com
_____/

## NOTICE OF LIS PENDENS

      NOTICE IS HEREBY GIVEN that the above-entitled action concerning and

affecting real property as described herein was commenced on June 30, 2015 in the above-

named court by Plaintiff B & C Land Development Corporation against Defendant the City

of Detroit. The action is now pending in the above-named court.

1

The action affects the title of real property commonly known as:

5601, 5815 & 5851 W. Jefferson

War 16, Items 000006.001, 000006.002L &000008-9

And more particularly described as:

Land in the City of Detroit, County of Wayne and State of Michigan being part of Private Claim 39, also known as the Walter Crane Farm in the area formerly known as Springwells Township, and being more particularly described as follows:

All of that part of Private Claim 39 bounded on the North by the South line of West Jefferson Avenue, 80 feet wide; bounded on the West by the West line of Private Claim 39, which is common to the East line of Private Claim 39; and bounded on the South by the United States Harbor line as defined by the "Harbor Lines of Detroit and Vicinity Established by the Secretary of War, September 23, 1982:, as recorded in Liber 20, Pages 75 to 87, Wayne County Records, except for a triangular portion of said tract of land which is defined as being the South 338.25 feet on the West line of Private Claim 39 and the West 157 feet on the U.S. Harbor line of said tract of land.

This herein described tract of land is subject to a 30 feet Right of Way for a Sewer Easement that was granted to the City of Detroit on January 20, 1857 and recorded in Liber 289, Page 578 on February 9, 1883 and any other easements affecting the land. Said tract of land includes property formerly owned by the "Revere Copper Products Incorporated" which was deeded to the City of Detroit by Warranty Deed and recorded in Liber 23247, Pages 685 and 686, Wayne County Records, which was described as follows:

Parcel # 1:    Lots 1187 through 1200 inclusive and the Westerly 23 feet of Lot 1202 of the Sixth Plat of WALTER CRANE FARM, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 plats, Wayne County Records.

2

Parcel # 2:  Lots 1206 through 1215 inclusive of the Sixth Plat of WALTER CRANE FARM,, P.C. 39, together with the adjoining vacated alley located at the rear of said lots, according to the Plat thereof as recorded in Liber 20, Page 55 of plats, Wayne County Records, Campbell Avenue lying Southerly of the Southerly line of Jefferson Avenue West and Westerly of the above described premises also Lots 1 through 10, inclusive of Block 22, REEDER, JEROME AND DUFFIELDS SUBDIVISION, together with the adjoining vacated alley Southerly of said premises as recorded in Liber 7, Page 29 of plats, Wayne County Records, excepting that part of Lot 10 and the vacated alley deeded to the City of Detroit, Wayne County Records.

Parcel # 3:  The Westerly 385.36 feet in width of that part of Private Claim 39 South of Jefferson Avenue, excepting the Northerly 145 feet thereof as platted in the plat recorded in Liber 20, Page 55 of plats, Wayne County Register of Deeds records: together with accretions and additions thereof extending to the Detroit River and to the Harbor Line.

Parcel # 4:  Beginning at a point South 28° 8 minutes East 202.75 feet from a point in the Southerly line of said West Jefferson Avenue 97.52 feet distant on a course South 61° 52 minutes West from the intersection of the Southerly line of West Jefferson Avenue with the Westerly line of vacated, Campbell Avenue; running thence from said point of beginning North 61° 52 minutes East 71.40 feet to a point; thence North 27° 49 minutes West 57.75 feet to a point; thence 61 °52 minutes East 604.68 feet to a point; thence South 27 ° 50 minutes East 759. 52 feet to the United States harbor line, thence South 34 degrees 3 minutes West along said United States  Harbor line 635.59 feet to a point in the Easterly line or Parcel # 3 above; thence North 55 degrees 57 minutes West 302.57 feet along the Easterly line of Parcel # 3 above to a point which is the apex of an angle formed by the change of the courses of the Westerly boundary of the premises herein described in an Easterly direction; thence continuing along said Easterly line of Parcel # 3 above North 28 degrees 3

3

minutes West 730.73 feet to a point; thence North 61 degrees 52 minutes East 29.64 feet to the point of beginning, including all vacated streets and alleys lying within the boundaries of said premises above described, and together with all riparian rights thereunto belonging.

Horace D. Cotton (P33286)
Attorney for Plaintiff
P.O. Box 19520
Detroit, MI 48219
(313) 595-1517

4

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

----------------------------------------------------------- x
                                 :

In re                               :       Chapter 9
                                   :

CITY OF DETROIT, MICHIGAN,        :       Case No. 13-53846
                                   :

               Debtor.           :       Hon. Steven W. Rhodes
                                   :
                                   :

----------------------------------------------------------- x

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING EIGHTH**
**AMENDED PLAN FOR THE ADJUSTMENT OF DEBTS OF THE**
**CITY OF DETROIT AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

     1.       **Confirmation of the Plan and Occurrence of the Effective Date.**

         On November 12, 2014, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") entered an order (Docket No. 8272) (the "Confirmation Order") confirming the Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (as it may have been amended, supplemented or modified, the "Plan"), in the above-captioned chapter 9 case of the City of Detroit, Michigan (the "City"). The Effective Date of the Plan occurred on December 10, 2014. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Plan and the Confirmation Order.

     2.       **Discharge of Claims.**

         a.       Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan are in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date, including any interest accrued on Claims from and after the Petition Date. Except as provided in the Plan or in the Confirmation Order, as of the Effective Date, the City is discharged from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt was Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt was allowed pursuant to section 502 of the Bankruptcy Code or (iii) the Holder of a Claim based on such debt accepted the Plan.

         b.       In accordance with the foregoing, except as expressly provided otherwise in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination, as of the Effective Date, of a discharge of all debts of the City, pursuant to sections 524(a)(1), 524(a)(2) and 944(b) of the Bankruptcy Code, and such discharge voids any judgment obtained against the City at any time, to the extent that such judgment relates to a discharged debt; provided that, in accordance with section



944(c)(1) of the Bankruptcy Code, such discharge does not apply to (i) debts specifically exempted from discharge under the Plan; (ii) debts held by an Entity that, before the Confirmation Date, had neither notice nor actual knowledge of the Chapter 9 Case; (iii) claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983; or (iv) Claims of (A) T&T Management, Inc., (B) HRT Enterprises and (C) the John W. and Vivian M. Denis Trust related to condemnation or inverse condemnation actions against the City alleging that the City has taken private property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

      3.    **Releases.**

      a.    <u>General Releases by Holders of Claims</u>. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), each holder of a Claim that voted in favor of the Plan, to the fullest extent permissible under law, is deemed to forever release, waive and discharge (which release will be in addition to the release and discharge of Claims otherwise provided herein and under the Confirmation Order and the Bankruptcy Code):

      i.    all Liabilities in any way relating to the City, the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), the Plan, the Exhibits or the Disclosure Statement, in each case that such holder has, had or may have against the City or its current and former officials, officers, directors, employees, managers, attorneys, advisors and professionals, each acting in such capacity (and, in addition to and without limiting the foregoing, in the case of any Emergency Manager, in such Emergency Manager's capacity as an appointee under PA 436); <u>provided further</u>, for the avoidance of doubt, that any person or entity designated to manage the Chapter 9 Case for the City after the Emergency Manager's term is terminated, whether such person or entity acts as an employee, advisor or contractor to the City or acts as an employee, agent, contractor or appointee of the State under any applicable state law, shall be treated the same as an employee of the City hereunder; and

      ii.    all Liabilities in any way relating to (A) Claims that are compromised, settled or discharged under or in connection with the Plan, (B) the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), (C) the Plan, (D) the Exhibits, (E) the Disclosure Statement or (F) the DIA Settlement, in each case that such holder has, had or may have against the City's Related Entities, the State, the State Related Entities and the Released Parties; <u>provided, however</u>, that any such Liability of the Foundations, the DIA Funders and the CFSEM Supporting Organization and their Related Entities are released only to the extent that such Liability, if any, arises from any such entity's participation in the DIA Settlement;

<u>provided, however</u>, that the foregoing provisions shall not affect the liability of the City, its Related Entities and the Released Parties that otherwise would result from any act or omission to the extent that act or omission subsequently is determined in a Final Order to have constituted gross negligence or willful misconduct; <u>provided, further</u>, that nothing in Section III.D.7.a of the Plan shall release (i) the City's obligations under the Plan or (ii) any defenses that any party may have against the City, its Related Entities, the State, the State Related Entities or the Released Parties. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 shall not be released.

      b.    <u>Release by Holders of Pension Claims</u>. Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases,

agreements or documents entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement), if the State Contribution Agreement is consummated, each holder of a Pension Claim is deemed to forever release, waive and discharge all Liabilities arising from or related to the City, the Chapter 9 Case, including the authorization given to file the Chapter 9 Case, the Plan, all Exhibits, the Disclosure Statement, PA 436 and its predecessor or replacement statutes, and Article IX, Section 24 of the Michigan Constitution that such party has, had or may have against the State and any State Related Entities. For the avoidance of doubt, the Plan does not release, waive or discharge obligations of the City that are established in the Plan or that arise from and after the Effective Date with respect to (i) pensions as modified by the Plan or (ii) labor-related obligations. Such post-Effective Date obligations shall be enforceable against the City or its representatives by active or retired employees or their collective bargaining representatives to the extent permitted by applicable non-bankruptcy law or the Plan, or, with respect to pensions only, GRS or PFRS.

Notwithstanding Sections III.D.5-7 and IV.L of the Plan, except as set forth in the COP Swap Settlement, nothing in the Plan or the Confirmation Order shall or shall be deemed to provide a release by the COP Swap Counterparties of any Liabilities related to the COPs, the COP Service Corporations, the Transaction Documents (as defined in the COP Swap Settlement), the COP Swap Settlement or the COP Swap Settlement Approval Order. For the avoidance of doubt, notwithstanding Section III.D.6 of the Plan, a vote of DWSD Bond Claims or DWSD Revolving Bond Claims in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such DWSD Bond Claims, a Holder of any such DWSD Revolving Bond Claims or the Bond Insurer insuring any such Claims of any Liabilities against the City or its Related Entities that do not arise in connection with the DWSD Bonds or the DWSD Revolving Bonds. For the further avoidance of doubt, notwithstanding anything in the Plan to the contrary, a vote of a Claim other than a DWSD Bond Claim or DWSD Revolving Bond Claim in favor of the Plan shall not, and shall not be deemed to, effect a release pursuant to Section III.D.7 of the Plan by a Holder of any such voted Claim or the Bond Insurer insuring such voted Claim of any Liabilities against the City or any other Entity arising in connection with the DWSD Bonds or DWSD Revolving Bonds.

    4.    **Injunctions.**

        **On the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order:**

        a.    **All Entities that have been, are or may be holders of Claims against the City, Indirect 36th District Court Claims or Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity, along with their Related Entities, are permanently enjoined from taking any of the following actions against or affecting the City or its property, DIA Corp. or its property, the DIA Assets, the Released Parties or their respective property and the Related Entities of each of the foregoing, with respect to such claims (other than actions brought to enforce any rights or obligations under the Plan and appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the City or its property (including (A) all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice, (B) Indirect 36th District Court Claims and (C) Indirect Employee Indemnity Claims asserted against officers or employees of the City in their official capacity); (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order against the City or its property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly,**

-3-

13-53846-swr   Doc 8649   Filed 12/10/14   Entered 12/10/14 14:52:52   Page 3 of 9
13-53846-tjt   Doc 10087   Filed 07/27/15   Entered 07/27/15 13:14:16   Page 69 of 92

any encumbrance of any kind against the City or its property; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the City or its property; (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan or the settlements set forth therein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, claims against officers or employees of the City in their individual capacity under 42 U.S.C. § 1983 are not enjoined. In addition, all individuals affected by the ASF Recoupment are enjoined from commencing any proceeding against the GRS and its trustees, officers, employees or professionals arising from the GRS's compliance with the Plan or the Confirmation Order.

        **b.** All Entities that have held, currently hold or may hold any Liabilities released pursuant to the Plan are permanently enjoined from taking any of the following actions against the State, the State Related Entities, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, and the Released Parties or any of their respective property on account of such released Liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the State, a State Related Entity, the officers, board of trustees/directors, attorneys, advisors and professionals of the RDPFFA or the DRCEA, or a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. Notwithstanding the foregoing and without limiting the injunctions in sub-paragraph 4(a) above, the Holders of Indirect 36th District Court Claims shall not be enjoined from taking any of the foregoing actions against the State or the State Related Entities with respect to Indirect 36th District Court Claims to the extent such Claims are not satisfied pursuant to the Plan.

        **5.** **Treatment of Executory Contracts and Unexpired Leases.**

        **a.** <u>Assumption</u>. Except for Executory Contracts and Unexpired Leases rejected in the Plan or by other court order, or as requested in any motion Filed by the City on or prior to the Effective Date, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, the City has been deemed to assume all Executory Contracts and Unexpired Leases to which it is a party. Notwithstanding the foregoing, Retirement System Indemnity Obligations have not been assumed under the Plan and have been discharged. For the avoidance of doubt, the City has assumed the Tunnel Lease pursuant to Section II.D.1 of the Plan.

        **b.** <u>Assumption of Ancillary Agreements</u>. Each Executory Contract and Unexpired Lease assumed pursuant to Section II.D.1 of the Plan includes any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Executory Contract or Unexpired Lease, unless any such modification, amendment, supplement, restatement or other agreement is rejected pursuant to Section II.D.6 of the Plan or designated for rejection in accordance with Section II.D.3 of the Plan.

        **c.** <u>Approval of Assumptions and Assignments</u>. The Confirmation Order constitutes an order of the Bankruptcy Court approving the assumption of Executory Contracts and Unexpired Leases pursuant to Sections II.D.1 and II.D.2 of the Plan (and any related assignment) as of the

Effective Date, except for Executory Contracts or Unexpired Leases that (a) have been rejected pursuant to a Final Order of the Bankruptcy Court, (b) are subject to a pending motion for reconsideration or appeal of an order authorizing the rejection of such Executory Contract or Unexpired Lease, (c) are subject to a motion to reject such Executory Contract or Unexpired Lease Filed on or prior to the Effective Date, (d) are rejected pursuant to Section II.D.6 of the Plan or (e) are designated for rejection in accordance with the last sentence of this paragraph. On November 21, 2014, in accordance with the Contract Procedures Order, the City filed with the Bankruptcy Court a non-exclusive list (Docket No. 8387) (the "Non-Exclusive Plan Assumption List") of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. On December 5, 2014, the City filed a notice of amendment to the Non-Exclusive Plan Assumption List (Docket No. 8573). The City has provided separate notice to each party whose Executory Contract or Unexpired Lease is identified on the Non-Exclusive Plan Assumption List of: (a) the Executory Contract or Unexpired Lease being assumed; (b) the Cure Amount Claim, if any, that the City believes it would be obligated to pay in connection with such assumption; (c) any assignment of an Executory Contract or Unexpired Lease; and (d) the procedures for such party to object to the assumption of the applicable Executory Contract or Unexpired Lease, the amount of the proposed Cure Amount Claim or any assignment of an Executory Contract or Unexpired Lease are set forth in the Contract Procedures Order (Docket No. 6512). **For Executory Contracts or Unexpired Leases assumed under the Plan but not identified in the Non-Exclusive Plan Assumption List, the counterparty to such an agreement must file any written objection, setting forth the basis for opposing assumption or assignment of the applicable agreement or the proposed Cure Amount Claim, no later than 20 days after the Effective Date of the Plan, i.e., December 30, 2014.** If an objection to a proposed assumption, assumption and assignment or Cure Amount Claim is not resolved in favor of the City, the applicable Executory Contract or Unexpired Lease may be designated by the City for rejection, which shall be deemed effective as of the Effective Date.

        d.     <u>Payments Related to the Assumption of Executory Contracts and Unexpired Leases</u>. To the extent that such Claims constitute monetary defaults, the Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the City: (a) by payment of the Cure Amount Claim in Cash on the Effective Date or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. If there is a dispute regarding: (a) the amount of any Cure Amount Claim, (b) the ability of the City or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to the assumption of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within 30 days following the entry of a Final Order resolving the dispute and approving the assumption.

        e.     <u>Contracts and Leases Entered Into After the Petition Date</u>. Contracts, leases and other agreements entered into after the Petition Date by the City, including (a) any Executory Contracts or Unexpired Leases assumed by the City and (b) the collective bargaining agreements identified on Exhibit II.D.5 to the Plan, will be performed by the City in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

        f.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Each Executory Contract and Unexpired Lease that is listed on Exhibit II.D.6 to the Plan was deemed rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code. The Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the later of: (a) the Effective Date or (b) the resolution of any objection to the proposed rejection of an Executory Contract or Unexpired Lease. Each contract or lease listed on Exhibit II.D.6 to the Plan is rejected only to the extent that any such contract or lease constitutes an

Executory Contract or Unexpired Lease. Listing a contract or lease on Exhibit II.D.6 to the Plan does not constitute an admission by the City that such contract or lease is an Executory Contract or Unexpired Lease or that the City has any liability thereunder. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be treated as Class 14 Claims (Other Unsecured Claims), subject to the provisions of section 502 of the Bankruptcy Code.

        g.     <u>Rejection Damages Bar Date</u>. **Except as otherwise provided in a Final Order of the Bankruptcy Court approving the rejection of an Executory Contract or Unexpired Lease, Claims arising out of the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served upon counsel to the City on or before the later of: (a) 45 days after the Effective Date, i.e., January 26, 2015; or (b) 45 days after such Executory Contract or Unexpired Lease is rejected pursuant to a Final Order or designated for rejection in accordance with Section II.D.3 of the Plan. Any Claims not Filed within such applicable time periods will be forever barred from receiving a Distribution from, and shall not be enforceable against, the City. Proof of claim forms and instructions for filing claims can be found at the City's restructuring website, https://www.kccllc.net/detroit.**

        h.     <u>Preexisting Obligations to the City Under Rejected Executory Contracts and Unexpired Leases</u>. Pursuant to section 365(g) of the Bankruptcy Code, rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall constitute a breach of such contract or lease and not a termination thereof, and all obligations owing to the City under such contract or lease as of the date of such breach shall remain owing to the City upon rejection. Notwithstanding any applicable non-bankruptcy law to the contrary, the City expressly reserves and does not waive any right to receive, or any continuing obligation of a non-City party to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased, or services previously received, by the City from non-City parties to rejected Executory Contracts or Unexpired Leases, and any such rights shall remain vested in the City as of the Effective Date.

        i.     <u>Insurance Policies</u>. From and after the Effective Date, each of the City's insurance policies (other than welfare benefits insurance policies) in existence as of or prior to the Effective Date are reinstated and continue in full force and effect in accordance with their terms and, to the extent applicable, are deemed assumed by the City pursuant to section 365 of the Bankruptcy Code and Section II.D.1 of the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Causes of Action that the City may hold against any Entity, including any insurer under any of the City's insurance policies. For the avoidance of doubt, nothing contained in Section II.D.9 of the Plan shall apply to reinstate or continue any obligation of the City or any fund thereof to any Bond Insurer.

      **6.**     **Payment of Administrative Claims.**

        a.     <u>Administrative Claims in General</u>. Except as specified in Section II.A.1 of the Plan, and subject to the bar date provisions therein, unless otherwise agreed by the Holder of an Administrative Claim and the City, or ordered by the Bankruptcy Court, each Holder of an Allowed Administrative Claim will receive, in full satisfaction of such Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim either: (1) on the Effective Date or as soon as reasonably practicable thereafter; or (2) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Claim becomes an Allowed Claim. No Claim of any official or unofficial creditors' committee or any member thereof for professionals' fees or other costs and expenses incurred by such creditors' committee or by a member of such creditors' committee shall constitute an Allowed Administrative Claim, except that the Retiree Committee's members and the Retiree Committee Professionals shall be entitled to payment in accordance with the Fee Review Order and any additional fee process established by the Court.

7. **Bar Dates for Administrative Claims.**

a. **General Bar Date Provisions.** Except as otherwise provided in subparagraphs 7(b) or 7(c) below or in a Bar Date Order or other order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the City no later than 45 days after the Effective Date, i.e., January 26, 2015. Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the City or its property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the City and the requesting party by the later of (i) 150 days after the Effective Date, i.e., May 11, 2015 , (ii) 60 days after the Filing of the applicable request for payment of Administrative Claims or (iii) such other period of limitation as may be specifically fixed by a Final Order for objecting to such Administrative Claims.

b. **Ordinary Course Claims.** Holders of Claims based on Liabilities incurred by the City after the Petition Date in the ordinary course of its operations are not required to File or serve any request for payment or application for allowance of such Claims. Such Claims will be paid by the City, pursuant to the terms and conditions of the particular transaction giving rise to such Claims, without further action by the Holders of such Claims or further action or approval of the Bankruptcy Court.

c. **Claims Under the Postpetition Financing Agreement.** Holders of Administrative Claims that are Postpetition Financing Claims are not required to File or serve any request for payment or application for allowance of such Claims. Such Administrative Claims will be satisfied as set forth in subparagraph 7(b) above.

d. **No Modification of Bar Date Order.** The Plan does not modify any other Bar Date Order, including Bar Dates for Claims entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

8. **ASF Recoupment Cash Option.**

a. **ASF Recoupment Cash Option Election.** No later than seven days following the Effective Date, i.e., December 17, 2014, the City, through its Claims and Balloting Agent, will send the ASF Election Notice and the ASF Election Form by first-class U.S. mail to each ASF Distribution Recipient. The ASF Election Notice will notify ASF Distribution Recipients that each ASF Distribution Recipient may elect to pay the total amount of his or her ASF Recoupment in a single lump sum by timely returning a properly-completed ASF Election Form. The ASF Election Form will explain that the amount of the ASF Recoupment Cash Payment shall be equal to the total amount of ASF Recoupment shown on the ASF Distribution Recipient's Ballot, unless the aggregate amount of ASF Recoupment for all ASF Distribution Recipients electing the ASF Recoupment Cash Option exceeds $30,000,000, in which case (i) the ASF Recoupment Cash Payment will be the ASF Distribution Recipient's Pro Rata portion of $30,000,000, and (ii) the remaining portion of the ASF Distribution Recipient's ASF Recoupment will be annuitized and deducted from the ASF Distribution Recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan. *An ASF Distribution Recipient must return his or her ASF Election Form to the Claims and Balloting Agent so that it is actually received by the Claims and Balloting Agent by the ASF Election Date, i.e., 35 days after the date on which the ASF Election Form is mailed.*

b. **ASF Recoupment Cash Payment.** GRS will mail the ASF Final Cash Payment Notice no later than 14 days after the ASF Election Date. The ASF Final Cash Payment Notice

-7-

13-53846-swr   Doc 8649   Filed 12/10/14   Entered 12/10/14 14:52:52   Page 7 of 9
13-53846-tjt   Doc 10087   Filed 07/27/15   Entered 07/27/15 13:14:16   Page 73 of 92

is a notice that will be sent to each ASF Distribution Recipient who timely elects the ASF Recoupment Cash Option, and will indicate the amount of such ASF Distribution Recipient's ASF Recoupment Cash Payment. *ASF Distribution Recipients shall have until the ASF Final Cash Payment Date – i.e., the later of (i) 90 days after the Effective Date, i.e., March 10, 2015 or (ii) 50 days after the date of mailing of an ASF Final Cash Payment Notice – to make the ASF Recoupment Cash Payment, which payment must be made by cashier's check or wire transfer and may not be made by personal check. If an ASF Distribution Recipient's ASF Recoupment Cash Payment is not received by the ASF Final Cash Payment Date, GRS will notify the ASF Distribution Recipient of the failure to timely pay, and ASF Recoupment will be effected through diminution of such recipient's monthly pension check, as provided for in Section II.B.3.r.ii.D.2.i of the Plan.* The calculation of each electing ASF Distribution Recipient's ASF Recoupment Cash Payment shall not be adjusted under any circumstances, including as a result of default by any other electing ASF Distribution Recipient to remit his or her ASF Recoupment Cash Payment by the ASF Final Cash Payment Date.

        **9.**     **Copies of the Plan and Confirmation Order.** Copies of the Plan, Confirmation Order and all other documents Filed in the Chapter 9 Case may be obtained, free of charge, from the City's restructuring website at https://www.kccllc.net/detroit or from Kurtzman Carson Consultants LLC by calling (877) 298-6236 (toll-free).

BY ORDER OF THE COURT

David G. Heiman (OH 0038271)
Heather Lennox (OH 0059649)
Thomas A. Wilson (OH 0077047)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
dgheiman@jonesday.com
hlennox@jonesday.com
tawilson@jonesday.com

Bruce Bennett (CA 105430)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 243-2382
Facsimile: (213) 243-2539
bbennett@jonesday.com

Jonathan S. Green (MI P33140)
Stephen S. LaPlante (MI P48063)
MILLER, CANFIELD, PADDOCK AND
   STONE, P.L.C.
150 West Jefferson
Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
Facsimile: (313) 496-7500
green@millercanfield.com
laplante@millercanfield.com

ATTORNEYS FOR THE CITY

## CERTIFICATE OF SERVICE

I, Heather Lennox, hereby certify that the foregoing Notice of (I) Entry of Order Confirming Eighth Amended Plan for the Adjustment of Debts of the City of Detroit and (II) Occurrence of Effective Date was filed and served via the Court's electronic case filing and noticing system on this 10th day of December, 2014.

/s/  Heather Lennox

**EXHIBIT 6C – ANSWER**

State of Michigan
Third Circuit Court

_____

B & C Land Development Corporation, ,

        Plaintiff,

v.                                   Case No. 15-008602-CH
                                   Judge Annette J. Berry

City of Detroit,

        Defendant.


_____

| | |
|---|---|
| James D. Noseda P-52563 | Horace D. Cotton P-33268 |
| Attorney for defendant | Attorney for plaintiff |
| City of Detroit Law Department | P.O. Box 19520 |
| Two Woodward Ave, Suite 500 | Detroit, MI 48219 |
| Coleman A. Young Municipal Center | 313-595-1517 |
| Detroit, MI 48226 | hdcotton@yahoo.com |
| 313-237-3057 | |
| nosej@detroitmi.gov | |

_____

### City Of Detroit's Answer And Affirmative Defenses

       The City of Detroit ("City") answers the complaint as follows.

1.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

2.     Admit.

1

3.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

4.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

5.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

6.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

7.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

8.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

9.      The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

10.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

11.     Denied as false.

12.     Defendant refers to Exhibit 1 for its true meaning and effect.  Denied that Exhibit 1 is a contract with the City of Detroit.  The City did not accept payment of a deposit as alleged. Plaintiff's principal, Robert Carmack, has admitted both in writing and recorded televised comments that the check for the deposit was returned to him uncashed.  Except as stated herein, The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

13.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

14.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

15.     On June 30, 2008, Detroit City Council authorized the transfer of the property known as the "Revere Copper & Brass" site from the Planning and Development Department to the Water & Sewerage Department in exchange for reimbursement from the Water & Sewerage Department of $5 million.  Except as stated herein, denied as false.

16.      Denied that there was sale of the subject parcel approved by City Council.  Otherwise, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

17.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

18.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

19.     The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

20.     Sometime after May of 2012, the subject property was returned to the surplus inventory of Planning & Development Department.  Except as stated

4

herein, the City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

21.    In 2013, the City sold approximately 7 acres of the "Revere Copper & Brass" site to Waterfront Terminal Holdings for a price of $1.16 million.

22.    Denied as false.  On June 30, 2015, Detroit City Council approved a contract of sale for 5.5137acres of of the Revere Copper & Brass Site to Waterfront Holdings II, LLC, and the sale of 17.1009 acres of the site to Revere Dock, LLC, for a total aggregate price of $3 million.

23.    Denied as false that plaintiff is entitle to any relief in this action, injunctive or otherwise.  Except as stated herein, The City lacks knowledge or information sufficient to form a belief as to the truth of the allegations of the corresponding paragraph of the complaint, which has the effect of a denial.

24.    Denied as false.  At no time did a contract exist between the City of Detroit and plaintiff with respect to the sale of any portion of the Revere Copper & Brass site.

25.    The City restates it answers to the preceding paragraphs of the complaint for its answer to the corresponding paragraph of the complaint.

5

26. Denied as false. No purchase agreement or contract of any kind with respect to the Revere Copper & Brass site was ever formed between the City of Detroit and either plaintiff or Robert Carmack.

27. Denied as false.

28. Denied as false.

29. Denied as false.

30. Denied as false.

31. The City restates it answers to the preceding paragraphs of the complaint for its answer to the corresponding paragraph of the complaint.

32. Denied as false.

33. Denied as false.

34. Denied as false.

35. Denied as false.

Wherefore, the City of Detroit prays that the Court dismiss this unfounded action and assess attorney fees and costs against plaintiff and its counsel under applicable statute and court rule for the filing and pursuit of this action which is not well founded in fact or in law.

## Affirmative Defenses

1. Plaintiff has failed to state a claim upon which relief can be granted.

6

2. No purchase agreement or other contract with plaintiff ever was formed between the City of Detroit and plaintiff because no resolution authorizing or approving any such contract was adopted by the Detroit City Council as required by law to form a contract with the City of Detroit.

3. To the extent that plaintiff alleges a claim or seeks a monetary award against the City of Detroit that sounds in tort, it is barred by governmental immunity.

4. All claims made in this action are barred by the applicable statute of limitations.

5. Plaintiff's claims are barred by laches, undue delay and unclean hands.

6. Plaintiff did not file a claim in *In re City of Detroit*, United States Bankruptcy Court, Eastern District of Michigan, Case No. 13-53846. The filing of this action violated the federal injunction contained in the "Eight Amended Plan for the Adjustment of Debts of the City of Detroit" ("the Plan") approved by the bankruptcy court on November 12, 2014. Any action taken in pursuit of this action is a continuing violation of the Plan and injunction.

7. The Lis Pendens filed in this action is void ab initio and violates the Plan and injunction. Any recording of the Lis Pendens violates the Plan and injunction, and also is a slander of title.

8. Any contract claim is barred by a lack of consideration.

9. Any contract claim is barred by a failure of consideration.

7

10.    Plaintiff never submitted a formal offer to purchase the property that was

approved by officials in the Executive Branch of the City or approved by the

Detroit City Council, as is required by the Detroit City Charter and Detroit City

Code.

11.    Plaintiff's claims are barred by impossibility.

12.    Plaintiff's claims are barred by the Statute of Frauds.

## DEMAND FOR REPLY

Under MCR 2.110(B)(5), Defendant demands a reply to its answers.

### City of Detroit


By: /s/ James D. Noseda
    James D. Noseda P-52563
    City of Detroit Law Department

### Certificate of Service

The undersigned certifies that on July 21, 2015, he served the foregoing paper
upon counsel of record by e-mail.  I declare that the foregoing is true to the best of
my knowledge, information, and belief.

/s/ James D. Noseda

**EXHIBIT 6D – MAY 2012 PUBLIC STATEMENT**

CITY OF DETROIT
PLANNING & DEVELOPMENT DEPARTMENT

May 15, 2012

Detroit City Council
200 Coleman A. Young Municipal Center
Detroit, Michigan 48226

RE:  **May 10, 2012 Public Comment – "Mr. Bob Carmack Offer to Purchase Property in
     Southwest Detroit of 27 acres on water (Revere Copper & Brass)"**

Honorable City Council:

In response to the above public comment, the Planning & Development Department (P&DD) no
longer has jurisdictional control over the subject property:

- On June 18, 2008, The Honorable Board of Water Commissioners, City of Detroit,
  Michigan authorized the then Detroit Water & Sewerage Department (DWSD) Director,
  Victor Mercado, to approve the acquisition of the approximately 28.66 acre "Revere
  Copper & Brass" site as the location for a CSO Control Facility (see attached Agenda of
  June 18, 2012),

- On June 30, 2008, Your Honorable Body authorized the transfer of the approximately
  28.66 acre "Revere Copper & Brass" site from P&DD to DWSD for a CSO facility in
  exchange for reimbursement from DWSD of $5 million dollars (see attached from Detroit
  Legal News),

P&DD never took a deposit from Mr. Carmack for this site, never entered into a purchase
agreement with Mr. Carmack for this site, and never entered into a development agreement with
Mr. Carmack for this site. P&DD never requested this Honorable Body approve any sale of this
site to Mr. Carmack, and Your Honorable Body never passed a land sale resolution or authorized
the sale of the property to Mr. Carmack.

Since June of 2008, Your Honorable Body has requested P&DD report on the status of a sale of
this site to Mr. Carmack no less than four times. The information each time has been as recited
above, with no change since the original report of June 25, 2008 other than the transfer to DWSD.
We trust that this correspondence addresses with finality your concerns and inquiries to P&DD
regarding the status of the former "Revere Copper & Brass" property and the issues raised by Mr.
Carmack.

Sincerely,

Robert A. Anderson
Director

RAA/JM/jm

Cc:  Denise Gardener, Mayor's Office

# **EXHIBIT 6E – TRUE COPY CERTIFICATE OF RESOLUTION APPROVING WATERFRONT OFFER TO PURCHASE**

# TRUE COPY CERTIFICATE

STATE OF MICHIGAN } SS
City of Detroit

### CITY CLERK'S OFFICE, DETROIT

I, _____Janice M. Winfrey_____, City Clerk of the City of Detroit, in said State, do hereby certify

that the annexed paper is a TRUE COPY OF _____RESOLUTION_____

adopted (passed) by the City Council at session of _____June 30,_____ 20_15

and approved by Mayor _____July 7,_____ 20_15

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the

original, and the same is a correct transcript therefrom, and of the whole of such original.


**In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at**

Detroit, this _**10th**_ day of _**July**_ A.D. 20_15_

CITY CLERK






CITY OF DETROIT
PLANNING AND DEVELOPMENT DEPARTMENT

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 808
DETROIT, MICHIGAN 48226
PHONE 313•224•1339
WWW.DETROITMI.GOV

May 29, 2015

Detroit City Council
1340 Coleman A. Young Municipal Center
Detroit, MI 48226

**Re:** **Real Property at 5851 W. Jefferson Avenue, Detroit, MI 48209**

Honorable City Council:

The City of Detroit Planning and Development Department has received an offer from Waterfront Holdings II, LLC, a Michigan limited liability company ("**Waterfront**") to purchase from the City the approximately 5.5137 acres of vacant real property described on the attached Exhibit A, being part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**").

The terms of the offer are set forth in a Purchase Agreement dated March 20, 2015 (the "**Offer to Purchase**"). Under the terms of the Offer to Purchase, the Property would be conveyed to Waterfront by Quit Claim Deed (the "**Deed**") for seven hundred thirty-five thousand and 00/100 Dollars (**$735,000.00**) (the "**Purchase Price**"). The Purchase Price is equal to the Property's current fair market value as determined by an independent appraisal obtained by the City.

Waterfront, an affiliate of the Detroit-based bulk fuel supply company Waterfront Petroleum Terminal Company, in 2007 purchased from the City the idled 11-acre fuel storage facility at the Mistersky Electric Generation Station, and in 2013 purchased from the City an additional adjacent 7 acres. Waterfront wishes to acquire the Property to expand the company's vital marine liquid and bulk distribution operations. Upon acquisition, Waterfront will remediate the Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations. The proposed use is permitted as a matter of right in an M-4 (Intensive Industrial) zone.

We request that your Honorable Body adopt the attached resolution approving the sale of the Property, and authorizing the Planning and Development Department Director to execute the Deed and such other documents as may be necessary or convenient in connection with the City's sale of the Property.

Respectfully submitted,

Maurice Cox, Director

MC:JB:kc

Cc: Aliyah Sabree, Mayor's Office
Val Upshaw, H&RD Liaison

By Council Member 

WHEREAS, the City of Detroit Planning and Development Department has received an offer from Waterfront Holdings II, LLC, a Michigan limited liability company, to purchase approximately 5.5137 acres of vacant real property described in the attached Exhibit A, part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**"); and

WHEREAS, in accordance with Section 14-8-10 of the Detroit City Code, it is deemed in the best interests of the City that the Property be sold without public advertisement or the taking of bids.

NOW, THEREFORE, BE IT RESOLVED, that the sale of Property to **Waterfront Holdings II, LLC, a Michigan limited liability company**, for the Purchase Price of **seven hundred thirty-five thousand dollars ($735,000.00)**, and otherwise in accordance with the terms of the Offer to Purchase is hereby approved; and be it further

RESOLVED, that customary closing costs up to two hundred dollars ($200.00), and real estate brokerage commissions not to exceed five percent (5%) of the Purchase Price may be deducted from the Purchase Price and paid from the sale proceeds as "Property Transaction Costs" in accordance with the terms of the Property Management Agreement dated October 31, 2014, by and between the City and the City of Detroit Building Authority (the "Property Management Agreement"); and be it further

RESOLVED, that a "Transaction Fee" may be deducted from the Purchase Price and be paid from the proceeds to the City of Detroit Building Authority in accordance with the terms of the Property Management Agreement; and be it further

RESOLVED, that the sale of Property to Waterfront Holdings II, LLC, a Michigan limited liability company, without public advertisement or the taking of bids is hereby approved in accordance with Sec. 14-8-10 of the Detroit City Code; and be it further

RESOLVED, that the Director of the Planning and Development Department, or his or her designee, is authorized to execute the Deed and such other documents as may be necessary or convenient for the consummation of the transaction pursuant to and in accordance with the Offer to Purchase; and be it further

RESOLVED, that the Director of the Planning and Development Department, or his or her designee, is authorized to execute any required instruments to make and incorporate technical amendments or changes to the Quit Claim Deed (including but not limited to corrections to or confirmations of legal descriptions, or timing of tender of possession of particular parcels) in the event that changes are required to correct minor inaccuracies or are required due to unforeseen circumstances or technical matters that may arise prior to the conveyance of the Property, provided that the changes do not materially alter the substance or terms of the transfer and sale; and be it finally

RESOLVED, that the Deed will be considered confirmed when executed by the Director of the Planning and Development Department, or his or her designee, and approved by the Corporation Counsel as to form.

EXHIBIT A
LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:



# ADOPTED AS FOLLOWS
# COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| Janee **AYERS** | ✓ | |
| Scott **BENSON** | ✓ | |
| Raquel **CASTANEDA-LOPEZ** | ✓ | |
| *George **CUSHINGBERRY, JR.** | ✓ | |
| Gabe **LELAND** | | ✓ |
| Mary **SHEFFIELD** | ✓ | |
| Andre **SPIVEY** | ✓ | |
| James **TATE** | ✓ | |
| Brenda **PRESIDENT JONES** | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 8 | 1 |