UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:  CITY OF DETROIT,       .       Docket No. 13-53846
        MICHIGAN,              .
                               .       Detroit, Michigan
                               .       July 22, 2015
                  Debtor.      .       1:43 p.m.
. . . . . . . . . . . . . . . .


HEARING RE. OBJECTION TO CLAIM OF CLAIMANT THOMAS AND
LINDA SIMMONS, CLAIM NO. 302 FILED BY DEBTOR IN POSSESSION
CITY OF DETROIT, MICHIGAN, AND THIRTEENTH OMNIBUS
OBJECTION TO CERTAIN NO BASIS CLAIMS, REGARDING CLAIM
NOS. 474 AND 1097 FILED BY RICHARD HALL
BEFORE THE HONORABLE THOMAS J. TUCKER
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:        Foley and Lardner, LLP
                       By:  JOHN SIMON
                            TAMAR N. DOLCOURT
                       500 Woodward Avenue, Suite 2700
                       Detroit, MI  48223
                       (313) 234-7117

For Richard Hall:      RICHARD HALL
                       In pro per
                       3752 Eastern Place
                       Detroit, MI  48208


Court Recorder:        Kathleen Wiacek
                       United States Bankruptcy Court
                       211 West Fort Street
                       21st Floor
                       Detroit, MI  48226-3211
                       (313) 234-0068

Transcribed By:        Lois Garrett
                       1290 West Barnes Road
                       Leslie, MI  49251
                       (517) 676-5092

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1        THE CLERK:  All rise.  Court is back in session.

2   You may be seated.  Court will call the case of the City of

3   Detroit, Michigan, Case Number 13-53846.

4        THE COURT:  All right.  Good afternoon.  Let's have

5   appearances by counsel, please.

6        MR. SIMON:  Your Honor, good afternoon.  John Simon

7   of Foley & Lardner for the city.

8        MS. DOLCOURT:  Good afternoon, your Honor.  Tamar

9   Dolcourt of Foley & Lardner on behalf of the City of Detroit.

10        THE COURT:  All right.  Good afternoon.  Looks like

11   we have two matters left for hearing today.  Why don't we

12   talk first about the city's objection to the claim of Thomas

13   and Linda Simmons?

14        MS. DOLCOURT:  Thank you, your Honor.  That claim

15   was filed to reclassify from administrative to a general

16   unsecured claim.  I think you'll recall at our last hearing

17   we had several claims like that.  The Simmons filed a $25,000

18   claim related to a Detroit school bond, but they had marked

19   it as an administrative claim.  And as we had previously

20   discussed at this hearing, administrative claims in Chapter 9

21   are very limited to those particularly related to the

22   administration of the Chapter 9 case.

23        I would also note that the Simmons did not file a

24   response, and we should have filed a CNO, and I apologize for

25   not doing that in advance of the hearing, but we will do that

1   if the Court wishes to do so.

2         THE COURT:  It's kind of strange there.  The proof

3   of claim by the Simmons that you attached to your objection

4   looks like it says that their claim is both an administrative

5   claim and a secured claim, and they seem to say it's secured

6   by a Detroit school bond, although -- I mean I don't think

7   you mentioned that in your objection, but in your proposed

8   order and in your motion you clearly asked the Court as

9   relief for the Court to reclassify the claim a general

10  unsecured --

11        MS. DOLCOURT:  Yes, your Honor.

12        THE COURT:  -- claim, and they didn't -- I didn't

13  see any response by them.

14        MS. DOLCOURT:  They did not file a response, to our

15  knowledge.

16        THE COURT:  Yeah.  They're some sort of bondholder

17  apparently?

18        MS. DOLCOURT:  They may be.  What I am concerned

19  about, your Honor, is that when they said a Detroit school

20  bond, I have to wonder, and we've not been able to ascertain

21  anything in a DPS bond --

22        THE COURT:  Yeah, yeah.

23        MS. DOLCOURT:  -- because that's a totally different

24  legal entity, so they may not actually have a claim against

25  the city.  Our objection at the first cut was simply to take

1 them out of the administrative claims pool because we had an

2 objection deadline for that, and, you know, as we discussed,

3 we're still investigating the claims that were reclassified

4 to determine whether or not there's a further objection as to

5 the basis for liability for the city, and I think that this,

6 if it ultimately is a DPS bond rather than a City of Detroit

7 bond, would be a no liability objection against that claim as

8 well.

9     THE COURT: All right. Well, I will sustain the

10 city's objection, and I will grant the relief you're seeking,

11 which is to enter an order reclassifying the claim as a

12 general unsecured claim both on the merits of the arguments

13 you made in your written objection and also because the

14 creditors have failed to file a timely response to the

15 objection, which was due no later than a week ago today, and

16 obviously they failed to appear today at the hearing. So I

17 would like you to file a certificate of no response, however,

18 and so please do that and also file -- submit the proposed

19 order. I'll make, I think, just probably some nonsubstantive

20 revisions to the order, and then I'll get it entered.

21     MS. DOLCOURT: Thank you, your Honor. I appreciate

22 that.

23     THE COURT: All right. And, of course, I'll waive

24 any further presentment of the order.

25     MS. DOLCOURT: Okay. Thank you, your Honor.

1     THE COURT:  Thank you.  All right.  So this brings

2  us then to the further hearing on the city's objections to

3  the two claims of Richard Hall.

4     MR. SIMON:  Yes, your Honor, and Mr. Hall is here --

5     THE COURT:  Mr. Hall.

6     MR. SIMON:  -- in the courtroom.

7     THE COURT:  Come on up to the counsel table, Mr.

8  Hall, if you would.  All right.  And you are, for the record?

9     MR. HALL:  Richard Hall.

10     THE COURT:  All right.  Good afternoon, Mr. Hall and

11  Mr. Simon.  So this is the further hearing.  We've had a --

12  we had a prior hearing on the city's objections to these two

13  claims filed by Mr. Hall on -- I think it was May 27th --

14  yeah -- May 27th, and the Court entered an order for

15  further -- some further briefing.  The parties did file

16  further briefs, and I reviewed those.  I have reviewed those.

17  We'll start with counsel for the city, Mr. Simon.  What would

18  you like to say now?

19     MR. SIMON:  Your Honor, the primary thing I'd like

20  to just point out is the plan did contain the description of

21  when the stay expired, and there was notice given of that on

22  several occasions to Mr. Hall.  He had access to the plan.

23  He had access to the documents.  Notice was provided of the

24  plan and disclosure statement.  I noted in the documents,

25  your Honor, you might have noticed in the documents that Mr.

1　Hall submitted he was on notice specifically of statute of

2　limitations issues by the counsel that he himself was

3　getting.  If you look at those documents he submitted with

4　his proof of claim, you'll see that he has a letter dated

5　December 18th, 2013, from Zamler, Mellen & Shiffman.  That

6　was about three months after this case was filed and before

7　the bar date and before a lot of time passed before the

8　effective date of the plan.  So back in December 18th, 2013,

9　he has a letter from Zamler, Mellen & Shiffman strenuously

10　and repeatedly stating they wouldn't be representing Mr. Hall

11　in any claim against the City of Detroit.  And the letter

12　expressly stated, quote, "There are certain time limits on

13　statutes of limitations which when they expire could prevent

14　you from ever filing a claim or getting any money from the

15　City of Detroit or any responsible party.  Therefore, you

16　should hire a lawyer immediately if you wish to pursue this

17　claim," end quote.  So just to point out beyond the notice

18　that Mr. Hall --

19　　　　　　THE COURT:  Where exactly is that in the record?

20　　　　　　MR. SIMON:  Your Honor, that is --

21　　　　　　THE COURT:  Is that an exhibit to your reply brief

22　in support of your 13th objection or where is that?

23　　　　　　MR. SIMON:  Yes, your Honor, I believe it was, and I

24　can confirm that for you in one second.

25　　　　　　THE COURT:  All right.

1          MR. SIMON:  That is in an exhibit to our reply

2     brief, which is just the proof of claim.  It was Exhibit 1 to

3     our reply in support of the city's objection to Claim Number

4     474 filed by Richard Hall.  It's at the end of that exhibit.

5          THE COURT:  Just a minute.  Your reply is Docket

6     9873, I think; correct?

7          MR. SIMON:  That's correct.

8          THE COURT:  All right.  Hold on.  Okay.  So where in

9     this 90-page exhibit is that letter you just referred to?

10         MR. SIMON:  It's the last page in my binder, your

11    Honor.

12         THE COURT:  Well, it looks like it is.  I'm looking

13    at the last page of the exhibit.  Looks like that's where it

14    is.

15         MR. SIMON:  Yes.

16         THE COURT:  All right.

17         MR. SIMON:  Exactly.

18         THE COURT:  Okay.  So that says what you read it

19    said, but it didn't otherwise tell Mr. Hall when the statute

20    of limitations expired on any claim; right?

21         MR. SIMON:  Yes, your Honor, and there's no

22    requirement in the Code --

23         THE COURT:  Yeah.

24         MR. SIMON:  -- to do so.  And obviously they're

25    different in every case, and statutes in every case are

1 things that plaintiffs live by and have to abide by without

2 necessarily knowing when they are. It's by their nature.

3 THE COURT: I know. I understand.

4 MR. SIMON: Yes, yes.

5 THE COURT: This is a letter from Mr. Hall's counsel

6 or former counsel.

7 MR. SIMON: That's correct, your Honor, so I just

8 want to point out that those -- all that notice was given.

9 He had all that --

10 THE COURT: Yeah.

11 MR. SIMON: -- notice of the issues and of the

12 expiration of the stay. And when the effective date of the

13 plan came and went, he got notice of that as well. And then

14 in terms of your questions on point, your question three as

15 to whether, if the 30-day period of 108(c)(2) began to run as

16 of the effective date, was Mr. Hall precluded by the

17 discharge injunction and the provisions of the plan from

18 filing suit, and what's the impact of that on his claims, we

19 provided some case law, your Honor, that I think is

20 illustrative and enlightening on those issues that a proof of

21 claim, you know, per -- per the Rhodes case, the filing of a

22 proof of claim is not sufficient to meet a statute of

23 limitations, and the complaint has to be filed by the end of

24 the 30-day extended period under 108(c)(2). That was a

25 personal injury claimant like in this case.

1    THE COURT:  Well, the Rhodes case didn't deal with

2  the issue that the WorldCom case did.

3    MR. SIMON:  The WorldCom case did squarely deal with

4  that issue.

5    THE COURT:  And the Sixth Circuit held -- and you

6  cited this in your papers that the Sixth Circuit has held

7  that filing a proof of claim is not the equivalent of a

8  complaint, the filing of a complaint, for statute of

9  limitations purposes.

10    MR. SIMON:  That's correct, your Honor.

11    THE COURT:  Right.  Okay.  So the WorldCom case is

12  the one -- of the cases you've cited, it looked like that's

13  the only one that deals directly with this issue of, okay,

14  108(c)(2), that time -- that tolling time expires, but if

15  it's replaced by a discharge injunction or an injunction that

16  nominally precludes the creditor from then filing an action

17  or taking the action, what's the impact of that; right?

18    MR. SIMON:  Yeah.  The impact of that under the

19  WorldCom reasoning by the chief judge of the Bankruptcy Court

20  for the Southern District of New York was that then the

21  claimant is required to file for relief from the discharge

22  injunction in order to get the ability to make its filing

23  required by 108(c)(2).  No.  That's the only case law.

24    THE COURT:  Is there any other case that says that?

25    MR. SIMON:  There's no other case contrary to it

1  that we found.

2         THE COURT:  Is this the only case you could find on

3  this point?

4         MR. SIMON:  Yeah.  That's correct.  We couldn't find

5  any other cases on point.

6         THE COURT:  That's it?

7         MR. SIMON:  Yes.  That's it.  And I have to note for

8  the record, your Honor -- I have to note because I did some

9  further looking at that myself, and there was a follow-up

10 opinion in the same case that had a different result because

11 of -- and it wasn't -- it was not a direct -- it did not

12 directly refute its own logic in this opinion that was cited,

13 but there was a conclusion that there was a factual

14 misunderstanding, and the lien that was sought to be enforced

15 in that WorldCom case actually was terminated as of the

16 effective date, so it was like a modification of the opinion.

17 I don't think it changed the Court's ruling in that opinion

18 that was cited here, but I just wanted to point that out for

19 the record, but that is the only case that discusses this

20 issue that we could find.  And it makes sense because in

21 every case, your Honor -- in every case if you look at the

22 plans from GM and if you look at the plans from LightSquared

23 recently, if you look at the plans from Rebel recently, this

24 is what happens.  There's a discharge injunction.  Nothing

25 specifically addresses 108.  Without this kind of reasoning,

1  you'd have a statute of limitations continue indefinitely,

2  which could never be the case.

3  THE COURT:  Well, unless the plan that's confirmed

4  says notwithstanding the discharge injunction, anybody that

5  needs to file a complaint to avoid a statute of limitations

6  running may do so and must do so no later than 30 days after

7  the effective date or whatever, you know, the 108(c)(2)

8  expiration is.  I mean plans can say that, but this one

9  didn't; right?

10  MR. SIMON:  This one didn't, and I couldn't find

11  other ones in some big cases that did.  I think this is

12  routine practice, and none of them did.  That said, they

13  could say that, but then again nothing ever sets forth --

14  again, nothing ever sets forth the statute of limitations

15  date for any individual plaintiff.  Nothing expressly

16  overruled and said, you know, notwithstanding 108, no one can

17  file because there's a discharge injunction.  It certainly

18  was the intention of the city here that if people brought

19  claims pursuant to 108, they would not use the discharge

20  injunction against them and that we did go back to the city

21  and discuss with the city to get that clarity.  So nothing in

22  the plan expressly said that 108 did not apply.

23  THE COURT:  Now, are you saying then that -- well,

24  is it the case that if Mr. Hall in early January 2015 had

25  filed a motion -- this was, you know, after the effective

1  date of the plan, December 10, 2014 -- filed a motion asking

2  for relief from the discharge injunction to permit him to

3  file a complaint in, you know, whatever nonbankruptcy court

4  you wanted to name on these claims against the city that the

5  city would not have opposed that?

6      MR. SIMON:  That's what we've been told by the city,

7  your Honor.

8      THE COURT:  And has any -- did anybody else file any

9  such a motion in this case?

10     MR. SIMON:  Not that I know of.

11     THE COURT:  Okay.  So does this holding make sense,

12  WorldCom?  I want to explore that a little bit more with you.

13     MR. SIMON:  Um-hmm.

14     THE COURT:  Does it make sense?  There's nothing --

15  there's no reason the plan can't explicitly say already, in

16  effect, give somebody permission, notwithstanding the

17  discharge injunction, to file a complaint if necessary to

18  preserve a statute of limitations by the end of the 108(c)(2)

19  period.  This plan didn't do that.  It could have but didn't.

20  There's nothing else -- there's nothing in the plan in this

21  case that was confirmed, is there, that even suggests that a

22  party could obtain such relief if they asked for it, is

23  there?

24     MR. SIMON:  There was -- excuse me, your Honor.  In

25  Article VI.3, your Honor, there's discussion of the

1  possibility of making a filing for relief after the effective

2  date, after the discharge injunction, in connection with some

3  of the ADR procedures.

4          THE COURT:  Where is this?

5          MR. SIMON:  Article VI.3.

6          THE COURT:  You got a page number for me?  I can

7  look it up, but --

8          MR. SIMON:  I think it's page 75.

9          THE COURT:  All right.  Hold on.  By the way, for

10  future reference, it would be -- it's very helpful if you

11  would -- when you cite a section of the confirmed plan, if

12  you also cite a page number in the plan.

13          MR. SIMON:  Will do.  Thank you.

14          THE COURT:  That's how I find stuff, by the page

15  number.

16          MR. SIMON:  Thank you, your Honor.  Will do.

17          THE COURT:  And I have to go to the table of

18  contents and then go find it.  It's just -- it would help me

19  if you would do that.  Nobody ever seems to do that in this

20  case so far.

21          MR. SIMON:  Yeah.  We definitely will keep that in

22  mind.

23          THE COURT:  Anyway, Article VI.3 I don't think -- if

24  you did it, I'm sorry, but I don't remember that.

25          MR. SIMON:  It does talk about the possibility under

1    certain circumstances at the end of the first paragraph.

2              THE COURT:  I'm sorry.  Page 75 is not right.

3              MR. SIMON:  Page 75 of 82 entered --

4              THE COURT:  That must be the order confirming plan.

5              MR. SIMON:  -- October 22nd, 2014.  It's Docket

6    Number 8045.  Okay.  Page 68 of the plan, your Honor --

7              THE COURT:  All right.

8              MR. SIMON:  -- to be clear.  Page 68 of the plan.

9    It was on the docket PDF 75 of 82, but it's page 68 of the

10   plan.

11             THE COURT:  All right.  68.  Hold on.  So it's

12   Article VI.A.  What number?

13             MR. SIMON:  Three.

14             THE COURT:  Three, 68.

15             MR. SIMON:  Tort claims.

16             THE COURT:  VI.A.3, page 68.  Okay.  What about that

17   section?

18             MR. SIMON:  You asked whether there's a reference in

19   the plan to the possibility of anyone filing for relief from

20   the discharge injunction, and this is an example in the plan

21   of that.

22             THE COURT:  Well --

23             MR. SIMON:  You asked are there any references to

24   that possibly happening, and this is where that's referenced

25   at the end of the first paragraph of 3 there.

1      THE COURT:  Okay.  Hold on.  Okay.  So how does

2  this -- I've read this first paragraph of this Section 3.

3  How does this relate to Mr. Hall's claims and the February 4,

4  2015, stay modification --

5      MR. SIMON:  The only way it relates --

6      THE COURT:  Excuse me.

7      MR. SIMON:  I'm sorry.

8      THE COURT:  Let me finish.

9      MR. SIMON:  Yes.

10      THE COURT:  -- stay modification notices that the

11  city filed and served on Mr. Hall regarding his two claims?

12  And you know what I'm talking about --

13      MR. SIMON:  Yes.

14      THE COURT:  -- right?  Go ahead.

15      MR. SIMON:  I don't think it does necessarily

16  relate.  I don't think this is necessary for the conclusion

17  that the Code compels because the city, when it filed its

18  stay modification notice as to Mr. Hall, it just did that as

19  a matter of routine.  It didn't do that with specific --

20  necessarily specific intent to change the interpretation of

21  108 or the impact 108 would have in this case.

22      THE COURT:  Well, I mean you argued in your papers

23  that the stay modification notices don't really matter.

24  They're almost nullities because by the time these were

25  served, the city is saying, Mr. Hall's statute of limitations

1  period had expired and he could do nothing further that would
2  be of any good or effectiveness by filing a complaint at that
3  point.

4          MR. SIMON:  That's correct, your Honor.  That's
5  absolutely correct.  And, again, I'm trying to explain that
6  that was filed as an administrative matter.  The stay
7  modification notice was filed administratively, and really
8  Mr. Hall's claim had already been subject to the statute of
9  limitations passing in January before that was even filed.
10  So, again, I wasn't raising this page 68 description for any
11  reason other than to answer your question about whether
12  anything in the plan referred to the possibility of getting
13  relief from the discharge injunction, and all this does, by
14  the way, this just sets an outside date for a motion to get
15  relief from the discharge injunction.  It doesn't say that
16  someone couldn't do it earlier.  And, in fact, again, the
17  only case that's interpreted this is WorldCom, and it makes
18  it clear that that relief is something that can be sought.
19  Mr. Hall should have had an attorney.  He should have
20  understood his rights better, unfortunately, and he didn't,
21  and this is how plans work.  They state almost exactly the
22  type of language that is stated in this plan with respect to
23  injunctions and discharge, and nothing changes.  It doesn't
24  say that 108 no longer applies, but certainly the right
25  course and the safe course is to make sure your claims are

1  preserved before the effectiveness of the plan or that 30-day
2  window passes.

3         THE COURT:  Let me just test an alternative view by
4  asking you a question or two, and I'm not ruling this way or
5  anything at this point.  I'm just asking this question just
6  to hear your response.  Why isn't the city estopped by the
7  plan it proposed and obtained confirmation of, which included
8  the discharge injunction?  Why isn't it estopped from arguing
9  that the statute of limitations in this instance bars Mr.
10 Hall's claim because the city included in its plan a
11 discharge injunction that barred Mr. Hall from filing a
12 complaint within that 30-day window after notice and the
13 termination of the automatic stay, and if that's the case, if
14 the city is so estopped, then what do we do about it?  That's
15 part two.  I mean the what do we do about it question really
16 is what's -- what do we do here with respect to the statute
17 of limitations issue and the liquidation of Mr. Hall's
18 claims?  Does the Court, for example, enter an order granting
19 Mr. Hall a relief from the discharge injunction to permit him
20 to file a complaint now in an appropriate nonbankruptcy
21 court -- two complaints, one for each claim, and require him
22 to do so by a specific date, date certain?  So what do you
23 want to say about these questions?

24         MR. SIMON:  Yeah.  I don't think the city is
25 estopped because there was no intention to avoid 108.  That

1  was not the intention of what was done here, as we have

2  stated, and nothing expressly says that 108 doesn't apply.

3  Nothing in the plan says that.  The city never says that 108

4  is trumped by the discharge injunction.  The Code says all

5  kinds of things that are --

6        THE COURT:  I don't follow what you just said.  I'm

7  not suggesting by my question that the ruling would be

8  anything about the plan depriving the debtor of his -- or the

9  creditor of his rights under Section 108.

10        MR. SIMON:  I'm sorry.  I thought --

11        THE COURT:  Rather, it is the estoppel -- the basis

12  for the estoppel would be something like this.  The city put

13  in a plan, proposed to the Court a plan and obtained

14  confirmation of a plan that made it impossible for the

15  debtor -- for the creditor to avoid losing his claim under

16  the statute of limitations because the automatic stay expired

17  on the effective date and also on the effective date the

18  discharge injunction barred Mr. Hall from filing a complaint

19  on either of his claims in any non -- any court and made it

20  impossible for him to avoid the running of the statute of

21  limitations.  Now, part of your answer to that, I suppose,

22  is, well, he could have asked for -- he could have filed a

23  motion for relief from the discharge injunction at any point

24  from after the effective date and before the 30-day window of

25  108(c)(2) closed, but he didn't do that, and it was incumbent

1  on him to do that.  That seems to be kind of the theme in the

2  WorldCom case.

3       MR. SIMON:  Yes, your Honor.

4       THE COURT:  Is that a good answer to the estoppel

5  argument?

6       MR. SIMON:  I think it is, your Honor, and more than

7  that, no one has even raised estoppel as an issue here.  I

8  mean --

9       THE COURT:  Well, Mr. Hall is pro se.  He doesn't

10 know the law.  He doesn't know this stuff.

11      MR. SIMON:  Well, but it's -- no one has raised that

12 108 doesn't apply, you know.  108 does apply.  The city has

13 agreed that 108 applies; that that's the time period that

14 should have governed.  Nothing in the plan -- and I would say

15 we didn't estop -- there's no estoppel of the city because

16 nothing in the plan says that 108 doesn't apply.

17      THE COURT:  Well, I don't understand your wording,

18 108 -- nobody is saying 108 doesn't apply.

19      MR. SIMON:  Nothing says --

20      THE COURT:  I don't understand what you mean by that

21 because all 108 does is extend a deadline.

22      MR. SIMON:  Right.  And nowhere in the plan does it

23 say that the discharge injunction trumps 108.  That's what

24 I'm trying to say.  I'm sorry if it's not clear.  Nowhere in

25 the plan does it say that, that a creditor has no rights

1    under Section 108 because of the discharge injunction.

2           THE COURT:  The wording of the discharge injunction

3    in the plan is broad and prohibited Mr. Hall from filing a

4    complaint on either of his claims from the effective date

5    forward, didn't it?

6           MR. SIMON:  I think the real question is --

7           THE COURT:  Literally, didn't it do that?

8           MR. SIMON:  I think if he had a attorney, he'd seek

9    a motion to get relief from the discharge injunction, and I

10   would ask the question of whether Mr. Hall knew what the

11   statute of limitations was for his claims.

12          THE COURT:  In other words, he would have to file a

13   motion to get relief from the terms of the confirmed plan

14   that the city proposed and fought for and obtained

15   confirmation of.  He would have to do that and succeed at

16   that in order to avoid being deprived of his claim by the

17   statute of limitations.  I mean is that what you're saying,

18   in effect?

19          MR. SIMON:  That's one approach, yes.

20          THE COURT:  Pardon?

21          MR. SIMON:  He could have --

22          THE COURT:  Yeah.

23          MR. SIMON:  He could have done that.  He could have

24   filed for relief from the stay during the case to bring his

25   claim then as well, but, you know, yes, he could have --

1          THE COURT:  Yeah. Sure, sure, yes.

2          MR. SIMON:  Right.

3          THE COURT:  Yeah.

4          MR. SIMON:  So at some time before that period --

5          THE COURT:  And the city, for that matter, could

6    have filed an ADR notice before the effective date of the

7    plan, too, right --

8          MR. SIMON:  The city could have, but --

9          THE COURT:  -- on his claim.  The city didn't have

10   to.

11         MR. SIMON:  -- the city had a lot going on and

12   didn't want to be --

13         THE COURT:  Sure.

14         MR. SIMON:  -- engaging in litigation.

15         THE COURT:  The city didn't have to do it.  It could

16   have.  Right, yeah.

17         MR. SIMON:  Yes.

18         THE COURT:  Okay.  There was no duty on Mr. Hall to

19   seek relief from stay before the stay terminated, and

20   where -- what gives rise to him having a duty to have to

21   affirmatively move the Court for relief from the confirmed

22   plan?

23         MR. SIMON:  Well, your Honor, I would say he had no

24   duty to file a lawsuit either, but the fact that he's bound

25   by a statute of limitations, just like he's bound by the

1  provisions of the Bankruptcy Code, just like he's bound by

2  the plan, they all tie together to the bundle of rights that

3  he had, and so I would say -- I would disagree that he didn't

4  have an obligation; that he didn't have a need to make those

5  kinds of filings.  I think he absolutely did have that need

6  just like people don't say you must file a proof of claim.

7  They say if you want to file a proof of claim, here's the

8  deadline.  Here's how you do it; right?  The Code says what

9  it says.  The plan provided notice.

10        THE COURT:  But those people aren't enjoined from

11 filing a proof of claim.

12        MR. SIMON:  I'm sorry.

13        THE COURT:  Those people aren't -- nobody is

14 enjoined from filing a proof of claim -- against filing a

15 proof of claim --

16        MR. SIMON:  But he wasn't enjoined --

17        THE COURT:  -- by a confirmed plan or a court order

18 confirming a plan.

19        MR. SIMON:  Well, your Honor, the automatic stay

20 works the same way throughout an entire case; right?

21        THE COURT:  Yeah.

22        MR. SIMON:  It just says you can't take these

23 actions.  It doesn't say you must seek relief anywhere.  It's

24 just your rights you have, and the rights are limited by law

25 for a reason because we have to have cases get to conclusion.

1  We can't have a statute of limitations, you know, extending

2  indefinitely; right?  So this is the balance the Code tries

3  to strike, and the city does not think it's estopped from

4  taking that position because of the language in the plan

5  because it didn't say that he couldn't seek relief.  It

6  didn't say he couldn't seek relief from the discharge

7  injunction in order to make the filing that he had to make in

8  order to meet the deadlines.  I think he wasn't aware of the

9  deadlines to begin with, and I think that's part of the issue

10  here, a bigger part of the issue.  I also think if that kind

11  of reasoning --

12         THE COURT:  Let me ask you about the provision in --

13  on page 68 of the plan that we talked about a little bit ago,

14  a question about that, again, Section VI.A.3 of the plan.

15  Now, the last -- or that first paragraph, the last sentence

16  says in substance that the city doesn't serve a notice,

17  notice informing the holder that the city has exercised the

18  option described above, upon the holder of a tort claim by

19  the claims objection bar date.  That originally was June of

20  2015.  It's been extended to, what, sometime in December.

21         MR. SIMON:  This December.

22         THE COURT:  Yeah.  If the city doesn't do it by that

23  time, then the creditor may file a motion within 30 days

24  after the claims objection bar date seeking relief from the

25  discharge injunction in order to liquidate and determine it's

1    the claim, so that last sentence seems to only give the
2    holder of a tort claim the right to file such a motion after
3    the claims objection bar date has passed --
4            MR. SIMON:  That's what that --
5            THE COURT:  -- not sooner.
6            MR. SIMON:  That's what that says.
7            THE COURT:  Yes.
8            MR. SIMON:  But it doesn't say that they can't file
9    one before that, and that's what people would do in this
10   circumstance.
11           THE COURT:  All right.  Now, is there -- I may have
12   already asked you this.  There's no hint in the confirmed
13   plan anywhere, is there, or the order confirming plan that a
14   creditor could seek relief from the discharge injunction for
15   any reason at any time other than what this VI.A.3 says?  Is
16   that the only place?
17           MR. SIMON:  I believe this is the only place.
18           THE COURT:  Okay.  All right.  Well, I've asked you
19   about estoppel.  Is there a -- you know, estoppel is one
20   possible theory that just came to mind.  I am not saying that
21   the doctrine of estoppel necessarily fits this situation or
22   would, but what about equitable tolling, equitable tolling of
23   the statute of limitations period because of this
24   situation -- that is, that he's -- the creditor was barred by
25   the discharge injunction or prohibited by the discharge

1  injunction from the effective date forward of filing a

2  complaint?

3          MR. SIMON:  Your Honor, I would say creditors had a

4  lot of notice in this case.  Okay.  This case was nationally

5  publicized.  It's obviously one -- the biggest case that's

6  ever happened here.  There was notice all the time that this

7  case was happening.  Notice of the hearings in the case is

8  given to creditors, notices of opportunities to get even more

9  notice, participate.  The time for those kinds of objections

10 to the process that was set up and approved by Judge Rhodes

11 and all the notices that were approved in connection with the

12 plan, that was really way back when in connection with

13 confirmation and effectiveness of the plan, not after that,

14 so I think the equities factor -- and on top --

15         THE COURT:  I don't know what you just -- how what

16 you just said has anything to do with my question.

17         MR. SIMON:  Well, I don't think there's an equitable

18 basis for tolling, an equitable tolling, when the creditor

19 has had so much notice of the plan provisions --

20         THE COURT:  The basis --

21         MR. SIMON:  -- of the case.

22         THE COURT:  The only basis would be that he -- that

23 the plan confirmed by the Court and which is binding on the

24 creditor enjoined the creditor from filing a complaint as of

25 the effective date, as of the very day when the stay that had

1  previously prevented him from filing one expired or was

2  terminated.  That would be the basis.  And so I don't know if

3  this is a document that would fit either, but, you know, I

4  throw it out there to ask you because, you know, obviously,

5  you know, we're kind of -- we're kind of moving along in the

6  analytical process here with each hearing and each -- I've

7  already had you guys brief -- file supplemental briefs, and,

8  you know, we just -- we can't keep going and going and going

9  on this.  I understand that.  I got to decide this thing, but

10  I want to -- I want to be fair to both sides, and -- but, you

11  know, there's something -- I mean as you can tell from the --

12  what I said at the May 27 hearing, I'm just -- I'm having

13  trouble getting comfortable with this concept that -- what's

14  happening here under the city's view of how this should work.

15       MR. SIMON:  Your Honor, I think what you're not

16  comfortable with is that the plan didn't say a certain date

17  under 108.  Okay.  And it just didn't.  It didn't say it.  I

18  don't think there's anything more we can do about that, the

19  fact that it did not, but it --

20       THE COURT:  See, I don't think that's it --

21       MR. SIMON:  Yeah.

22       THE COURT:  -- you know.  I don't think it's that.

23  What it is is the plan didn't -- at least nothing that the

24  plan says left any room for a creditor like Mr. Hall to file

25  his complaint before the statute of limitations ran under

1  your theory because he was enjoined by the discharge

2  injunction from the effective date forward from doing so.

3  That's what makes me uncomfortable about your position here,

4  I think.

5          MR. SIMON:  But, your Honor, the Code isn't known to

6  claimants generally; right?  The Code is not understood by

7  everyone.  It's understood by attorneys.  Mr. Hall should

8  have probably had an attorney in this situation, and he was

9  told by other attorneys he should get an attorney.  He didn't

10  do that.  People can misunderstand a lot of things about

11  bankruptcy cases without appropriate legal guidance, but it's

12  not an excuse.  The Code says what it says.  It says that he

13  had until 30 days after the effective date to file his claim,

14  and he did not.  And nowhere in the record does it say that

15  he was misled by the plan, that he didn't know, and meanwhile

16  when we're talking about the equities of the situation, if --

17          THE COURT:  No, no.  The concern I have is that he

18  was prohibited by the plan from doing what he needed to do to

19  avoid this running of the statute of limitations.

20          MR. SIMON:  He could have sought relief from the

21  provisions of the plan, your Honor.  That's what the

22  appropriate guidance was.

23          THE COURT:  Okay.  Come back to that WorldCom

24  answer.

25          MR. SIMON:  Yeah, and that is the -- and WorldCom

1    says no estoppel, and <u>WorldCom</u> --

2         THE COURT:  Well, estoppel was in a different

3    context.  It was a different argument; right?  I think it

4    was.  It was an argument a little later in the opinion of

5    <u>WorldCom</u>, I think, talking about estoppel where the creditor

6    was relying on something that an attorney for the debtor said

7    to them about their claim, I think.  That was estoppel in

8    that case, wasn't it?  At least the section on this issue, it

9    seemed like the Court didn't talk about estoppel at all.

10   Perhaps nobody made the argument -- the estoppel argument in

11   that context, or did I miss that?  It was a long opinion in

12   <u>WorldCom</u>.  Did I miss something there?

13        MR. SIMON:  It's a little unclear in the opinion,

14   your Honor, as to which part of the debtor's actions were the

15   cause of the estoppel argument.  They seem to argue that just

16   not under -- the creditor seemed to argue that being confused

17   about what the plan meant and getting some kind of material

18   misrepresentation were the basis for the estoppel argument

19   that the creditor had in that case.  In any event, that case

20   does talk about the elements of equitable estoppel, material

21   misrepresentation, reasonable reliance, and provable damages,

22   and in this case there's just -- there was no proof that

23   there's been reliance on that, on the contents of the plan.

24        THE COURT:  Let me, if I could for a minute, go to

25   my second --

1          MR. SIMON:  Certainly.

2          THE COURT:  -- question that I asked a minute ago of

3    the two.  The first was is there an estoppel here.  Second

4    is -- the question was if there is, what do we do about it?

5    And I'm not trying to telegraph that I'm going to rule that

6    there's an estoppel or equitable tolling.  I'm not there.  I

7    just want to talk about the second piece of this while you're

8    here, though, at this hearing, and that is what do you do

9    about this?  Is the appropriate remedy for the Court to say,

10   all right, Mr. Hall now may and must by "X" date file a

11   complaint in an appropriate nonbankruptcy court on each of

12   his claims --

13         MR. SIMON:  Yes, your Honor.

14         THE COURT:  -- for the purpose of liquidating the

15   claim --

16         MR. SIMON:  Right.

17         THE COURT:  -- in an appropriate nonbankruptcy

18   court?

19         MR. SIMON:  Yes.  I think that -- well, certainly I

20   think the answer is not that there's no statute of

21   limitations ever, so there has to be a statute of

22   limitations.  I think it should be prompt if this is the road

23   that the Court went down.  I think we need to clarify now

24   what Mr. Hall's -- you know, his position -- his position

25   seems to be -- and we've had countless conversations, the

1  office has, with Mr. Hall about his position, and what I

2  think part of his position is is that he didn't somehow have

3  enough information to file a lawsuit, so he's not complaining

4  about any of the estoppel or anything like that.  He's not

5  complaining about the contents of the plan necessarily.  He

6  was complaining about not getting information that he said

7  for some reason he needed to file a litigation, and so I

8  think we'd want to have a date.  I don't think there's any

9  kind of obligation on the city to do anything else.  I think

10  he's got the facts he has, which he submitted, you know, 90

11  pages with his claim.  I think he has to file a lawsuit by a

12  certain date under the second path you proposed -- that's how

13  I think that would go in -- 30 to 60 days let's say, and I

14  think that -- in considering that, I think we need to -- we

15  need to be careful that we don't know what other claimants

16  there might be, and we wouldn't want to open the floodgates.

17         THE COURT:  That was sort of my next question.

18         MR. SIMON:  Okay.

19         THE COURT:  What are we talking about here?  I think

20  Kim Spicer might be in this -- might be in this camp.  The

21  objection to his claim by the Detroit Water and Sewer

22  Department was adjourned at the request of the department to

23  September 16, but I think, as I recall, that objection to

24  claim has some of these issues, not necessarily the same

25  ones, but --

1         MR. SIMON:  I think it differs in some material

2  respects as to when the statute passed, but --

3         THE COURT:  In his case, there was an ADR.  There

4  was a notice -- ADR notice filed.

5         MR. SIMON:  There was a notice before the effective

6  date.

7         THE COURT:  Right.

8         MR. SIMON:  Well before.

9         THE COURT:  Yeah.

10        MR. SIMON:  I think it was a different --

11        THE COURT:  Yeah, yeah.

12        MR. SIMON:  -- situation.

13        THE COURT:  Yeah.

14        MR. SIMON:  But there might be other claimants out

15  there, and now we'd be opening the door to that.

16        THE COURT:  Are there?

17        MR. SIMON:  I have no idea.  I don't know, and I

18  don't think that's fair to put on the city.

19        THE COURT:  Are there any other claims that you --

20  other than Kim Spicer that you object to to date on statute

21  of limitations grounds?

22        MR. SIMON:  No.

23        MS. DOLCOURT:  Your Honor, there are approximately

24  1,200 litigation claims in the case, and the city is in the

25  process of investigating all of them, so it is very possible

1  that this issue will arise.  We don't know that it's arisen

2  yet other than with respect to Mr. Hall's claims and

3  potentially with Mr. Spicer's claims, but they're still

4  reviewing, like I said, the 1,200 claims, so it's very

5  possible that that may arise again.

6       THE COURT:  Okay.  So, Mr. Simon, you don't want me

7  to open a can of worms here.

8       MR. SIMON:  I think given -- given the circumstances

9  and given -- you know, given the case law that exists, you

10  know, and given how the Code works and given how plans work,

11  I really don't see an alternative that is just or practical

12  in terms of opening the can of worms.  I just -- but if you

13  had to, if the can has to be opened, then it's a short period

14  to file some action.  I mean that's about it.  But I think

15  it's clear what the Code says, and the plan never says that

16  that doesn't apply.  And no one was misled by that, and we

17  haven't heard of anything like that.  And I don't see a

18  reason to not follow the case law that's been established and

19  just follow the Code for what it says and that people have to

20  file motions for relief if there's a discharge injunction,

21  but they need to file by the 30-day tail of 108(c) that they

22  have to do so.

23       THE COURT:  All right.  Anything else you'd like to

24  say before we give Mr. Hall an opportunity to speak?

25       MR. SIMON:  No, not at this time, your Honor.

1          THE COURT:  Mr. Hall, what would you like to say
2    about these -- further about these objections to your --
3    objection to your claims if you want to say anything?  Get to
4    the microphone, though, if you want to say anything so it'll
5    be on the record.  Go ahead.
6          MR. HALL:  Not at this time.  I think you already
7    stated things that the process should take as far as moving
8    on.  I'm just waiting on your --
9          THE COURT:  You have not filed --
10         MR. HALL:  -- decision because you stated both
11   sides.
12         THE COURT:  Excuse me.  You have not filed a lawsuit
13   in any court against the city on either of these claims,
14   right, so far?
15         MR. HALL:  No.  Like you said, I didn't have a
16   chance.  I wasn't -- in my past, my statutes of limitations
17   had expired.
18         THE COURT:  I'm not saying why didn't you.  I'm just
19   saying you haven't.
20         MR. HALL:  No, I have not, sir.
21         THE COURT:  As we stand here today, you've never --
22   you haven't done it yet.
23         MR. HALL:  No, I have not, sir.
24         THE COURT:  Okay.
25         MR. HALL:  I mean your Honor.

1      THE COURT:  All right.  Well, did you want to say
2  anything else about this?
3      MR. HALL:  Yes, I would.  I feel that I have the
4  option to or the right to file suit as an adversary hearing,
5  but I mean I couldn't file a suit because I didn't have any
6  evidence.  I need evidence to file a lawsuit, and when I was
7  in the process, I was not given any information because of
8  the emergency manager.  They was not responding to anything
9  so stated that I need to file a proof of claim, which I did,
10 to secure any complaints or whatever that I wanted to in the
11 future have a conference on, so that's it.  Oh, excuse me.
12 The tolling.  The tolling was -- should be from the time of
13 the bankruptcy was confirmed, so, like he said, like 30 to 60
14 days.  I still have time to file.  And the relief I couldn't
15 do -- ask for relief because I didn't ever have a lawsuit, so
16 I couldn't ask for it.  I was told that relief would have
17 gave me back until where I already started a lawsuit, which I
18 didn't, which I couldn't, which was not correct, so I think
19 you said it.  Both sides have arguments, but I'm just waiting
20 on a decision.  That's all I have to say.
21     THE COURT:  All right.  Thank you.  Anything further
22 in reply, Mr. Simon?
23     MR. SIMON:  No, your Honor.  Actually, your Honor,
24 if I could just say one thing further --
25     THE COURT:  Yeah.  All right.

1      MR. SIMON:  -- briefly.  Just to get back to the

2  point I was making about the time for objections to the plan,

3  the time, there was a time for objecting to the fact that the

4  plan had a discharge injunction and that it did or did not

5  make confusing the situation for a creditor that held a claim

6  that may have been barred by a statute of limitations that

7  passed during the case.  That's a plan objection.  Okay.

8  It's something that would have, should have happened back at

9  that time, not now to revisit history and change how the plan

10  works.  That's it.  Thanks, your Honor.

11      THE COURT:  All right.  Thank you.  Thank you both.

12  I'm going to rule on some of the issues that have been raised

13  in the two hearings and in the papers filed by the parties

14  concerning the city's objection to the two claims filed by

15  Richard Hall in the bankruptcy case -- in this bankruptcy

16  case, Claim Number 474 and Claim Number 1097, and these are

17  the -- city's objections, just for the record, again, are

18  part of the city's 13th omnibus objection to claims.

19      It's undisputed -- and I do agree with the city that

20  with respect to Claim Number 97, which is a claim that

21  asserts the claim of false arrest and various other related-

22  type claims that are Section 1983 claims, that the -- under

23  applicable case law, the Michigan three-year statute of

24  limitations is borrowed and applied to such an action here

25  and to such claims by Mr. Hall such that since the alleged

1   incident occurred on October 29, 2011, the three-year period

2   would have run on October 28, 2014, but for the filing of the

3   city's bankruptcy case and Section 108(c)(2) of the

4   Bankruptcy Code, which we'll talk about a little bit more in

5   a minute.

6           With respect to Claim Number 474, a claim of injury

7   asserted by Mr. Hall, Mr. Hall's claim there is -- as can be

8   gleaned from his proof of claim, is that he on June 28, 2012,

9   was walking over a steam grate on a city in Detroit and was

10  injured, burned and suffered injuries, and it's a claim in

11  the nature of a highway defect type claim which -- for which,

12  under Michigan law, Michigan Compiled Laws, Section 691.1411,

13  there is a two-year limitations period, which means that

14  normally the statute of limitations for such a claim by

15  Mr. Hall against the city would have expired at the latest on

16  June 28, 2014, which, again, was a date after -- well after

17  the city had filed its Chapter 9 bankruptcy case and the

18  automatic stay had applied and Section 108(c)(2) applied.

19          When the city filed its bankruptcy case, of course,

20  the automatic stay under Section 362(a) and Section 922 of

21  the Bankruptcy Code arose, and those -- the automatic stay

22  under each of those sections precluded Mr. Hall from filing a

23  complaint in any court on either of his claims against the

24  city.  At the same time and because of the automatic stay and

25  related to the automatic stay, under Section 108(c)(2) of the

1   Bankruptcy Code, the statute of limitations for each of these
2   claims by Mr. Hall, which had not yet run as of the
3   bankruptcy filing petition date by the city in either
4   event -- in the event of either claim was such that under
5   108(c)(2) Mr. Hall was given until 30 days after notice of
6   the termination or expiration of the automatic stay under
7   Section 362 and 922, so the statute of limitations was
8   extended from the dates that I mentioned in each -- with
9   respect to each of these claims to the date that is 30 days
10  after notice of termination of the automatic stay in the
11  bankruptcy case.  Section 108(c)(2) extended that -- had the
12  effect of extending or tolling that limitations period for
13  each of these claims to the date that I've described and no
14  further, and I agree with the city that 108(c)(2) is limited
15  in that way.  It only tolls and extends the statute of
16  limitations period to the time that that section states and
17  no further.

18          I also agree with the city that based upon the
19  provisions in the city's confirmed plan of adjustment, which
20  became effective and had an effective date of December 10,
21  2014, that the automatic stay under Section 362(a) and the
22  stay under Section 922(a) did terminate with respect to,
23  among other things, Mr. Hall's right and ability to file a
24  complaint on his claims.  This is true not only under the
25  terms of the plan, which the city has cited, specifically on

1  page 72 of the confirmed plan, Article 7, subparagraph (k),

2  but also under Section 362(c)(2)(C), which says that the

3  automatic stay under Section 362(a) and also under Section

4  922 expires at the time a discharge is granted. A discharge

5  was granted under the city's confirmed plan on the effective

6  date of the plan, December 10, 2014, and so under all of

7  these provisions, the automatic stay terminated both under

8  Section 362(a) and the stay under Section 922(a) terminated

9  with respect to Mr. Hall's claims and his right to file and

10 ability to file a complaint on December 10, 2014.

11         I also agree with the city in their arguments in

12 their supplemental brief primarily that was filed after the

13 May 27 hearing that Mr. Hall was given sufficient and

14 adequate notice of the termination of the stay and that that

15 notice was served on Mr. Hall by mail on December 16, 2014,

16 which means the 30 days under Section 108(c)(2) after notice

17 of the termination of the stay within the meaning of Section

18 108(c)(2) as to Mr. Hall did run through and expire on

19 Thursday, January 15, 2015, as the city has argued in their

20 supplemental brief.

21         And so as to both of Mr. Hall's claims that are the

22 subject of the city's objection to claim, Mr. Hall had

23 until -- under Section 108(c)(2) had until January 15, 2015,

24 and through that date to file a complaint commencing a

25 lawsuit on each of his claims in an appropriate nonbankruptcy

1   court through no later than January 15, 2015.  However, as
2   discussed at some length in today's hearing and also was
3   discussed some in the May 27 hearing and as addressed in the
4   city's supplemental brief filed after the May 27 hearing, the
5   Court has raised a concern and an issue about the fact that
6   at the time the automatic stay terminated such that Mr. Hall
7   for the first time was not prohibited by the automatic stay
8   from filing a complaint to commence the lawsuit on his claims
9   on December 10, 2014, the effective date of the confirmed
10  plan in this case, from that moment forward at all times Mr.
11  Hall was enjoined and prohibited by the discharge injunction
12  provisions in the confirmed plan from filing such a
13  complaint, the discharge injunction being -- in the plan
14  being in page 50, Article 3, subpart (d)(5), so that while
15  the confirmed plan had the effect of terminating -- both by
16  its terms and under Section 362(c)(2) terminated the
17  automatic stay and then ended the tolling period of Section
18  108(c)(2) as to Mr. Hall's claims, at the very same time the
19  plan imposed an injunction prohibiting Mr. Hall from filing a
20  complaint on his claims, and that is the plan enjoined and
21  prohibited Mr. Hall from taking the very action that the city
22  now says Mr. Hall was obligated to take no later than January
23  15, 2015; that is, to file a complaint initiating a lawsuit
24  or lawsuits on his claims against the city.
25          The issue that I want to think a bit more about

1  before I make a ruling on it is whether, given that

2  circumstance, the city is correct that Mr. Hall's claims

3  should -- despite the discharge injunction in the plan

4  should, nonetheless, be disallowed because they are barred by

5  the statute of limitations due to Mr. Hall's failure to file

6  a complaint on his claims on or before January 15, 2015, or

7  whether there is a basis based on the doctrines of estoppel

8  or estoppel like doctrines or equitable tolling or some other

9  equitable basis, common law basis rather than the Bankruptcy

10  Code statutory basis, of which none is apparent to the Court,

11  for the Court to rule that the city may not prevail on its --

12  and does not prevail on its statute of limitations argument,

13  but, rather, Mr. Hall must be given the opportunity and at

14  least a short period of time now to file a complaint or

15  complaints initiating lawsuits on his claims against the city

16  in an appropriate nonbankruptcy court for the purpose of

17  liquidating Mr. Hall's claims.  I want to think about those

18  issues a bit more and review the arguments a bit more, think

19  a bit more of the arguments made by the parties, especially

20  by city's counsel in their supplemental brief and in the

21  hearing today, before I make a ruling on that aspect of the

22  objections -- the objection to claim as to Mr. Hall's claims,

23  and so with respect to those issues, I'm reserving ruling at

24  this time, and what I'd like to do is schedule a time for the

25  Court to give a bench opinion -- further bench opinion

1  regarding the objection of the city to the claims of Mr. Hall

2  at which time I'll announce and explain my ruling on the

3  unresolved issues that I've described.  I would like to do

4  this -- schedule this for Wednesday, August 5, at 1:30 p.m.

5  Is that a date and time, Mr. Simon, that you can make on your

6  calendar?

7         MR. SIMON:  Yes, it is, your Honor.

8         THE COURT:  Mr. Hall, any reason that you could not

9  be here at that time to hear me give the rest of my ruling?

10 Mr. Hall?

11        MR. HALL:  Yes, sir.

12        THE COURT:  If you want to speak, you got to come up

13 and get on the microphone so it's on the record.  We need to

14 have you on the record, please.

15        MR. HALL:  I have an appointment that day, some type

16 of appointment that day.  I think I have an appointment that

17 day.  You said August 5th at one o'clock?

18        THE COURT:  I said August 5 at 1:30.  Is that a --

19 are you saying you can't be here then?

20        MR. HALL:  Yeah.  I wanted to reschedule.  Can

21 you --

22        THE COURT:  I'm sorry.  What?

23        MR. HALL:  No.  Can you give me another date or I'm

24 just asking can I --

25        THE COURT:  Can you make it later in the afternoon

1  that day, August 5?

2       MR. HALL:  How late?

3       THE COURT:  Well, two o'clock, 2:30.  I'd like to do

4  it that day if possible.  That's what I'm saying.  I mean you

5  tell me if you can or not.

6       MR. HALL:  None sooner, none later?  If you can, can

7  you do anything later in the month or something like that or

8  what?

9       THE COURT:  No.  We're talking about August 5.

10      MR. HALL:  That's it?

11      THE COURT:  Is there a time on the afternoon of

12 August 5 that you can make it, be here?

13      MR. HALL:  Okay.  You said 1:30?  You said two or

14 three at the latest, you said?

15      THE COURT:  Well, I've already got something

16 scheduled for 1:30 that day, August 5, in the City of Detroit

17 case, a bench opinion that I'm --

18      MR. HALL:  And I have to be --

19      THE COURT:  -- scheduled to give on a different

20 matter, so I could do this after that, two o'clock, 2:30.

21 Can you make -- can you make those times?

22      MR. HALL:  You said three?  Did I hear you say three

23 before?

24      THE COURT:  Just answer my question.

25      MR. HALL:  2:30, three, yeah, later.

1          THE COURT:  Pardon me?

2          MR. HALL:  Yes, yes.  I could make it then.

3          THE COURT:  Yes, what?

4          MR. HALL:  I'll make it then after your 1:30

5     appointment.

6          THE COURT:  Can you make two o'clock, 2:30, what?

7          MR. HALL:  2:30.

8          THE COURT:  2:30?  All right.  Can we make it 2:30

9     on your schedule, Mr. Simon?

10          MR. SIMON:  Yes.

11          THE COURT:  All right.  Then we'll do it August 5 at

12     2:30 p.m. here, and --

13          MR. HALL:  Your Honor --

14          THE COURT:  -- we'll see you all at that time.

15          MR. HALL:  Your Honor --

16          THE COURT:  Yeah.

17          MR. HALL:  -- you said you're making a ruling.  Am I

18     mandatory to be here?  Do I have to --

19          THE COURT:  You don't have to be here.

20          MR. HALL:  Is it a -- is he asking for --

21          THE COURT:  Mr. Hall, you don't have to be here to

22     hear the rest of my ruling.  You certainly have a right to be

23     here if you want to be.  The ruling -- I anticipate after I

24     make my bench opinion and my ruling, I'll enter an order that

25     reflects that ruling, which will be filed on the docket --

1  the Court's docket, and a copy of that order will be mailed

2  to you probably that day or the day it's entered, and you

3  should be able to know from that order what the outcome is on

4  the city's objection to claim.  The order will not have in it

5  a statement of all the reasons behind -- or why the Court

6  ruled the way it did, but it'll say what the ruling is, and,

7  of course, you can always listen to an audio of the hearing.

8  If you have access to PACER and the Court's docket, you can

9  listen to the audio recording of that hearing after it's --

10  after that day because we always post the audio of our

11  hearings on our docket.

12         MR. HALL:  I'll just ask can we participate or bring

13  up any other objections or things that might help the ruling

14  or change the ruling or we have no say when we come in or

15  what?

16         THE COURT:  I don't know what you're asking me.

17         MR. HALL:  I was just asking a ruling came -- are

18  we -- did he ask for any more discovery before that?

19         THE COURT:  There's no more rulings, no more

20  briefing --

21         MR. HALL:  No discovery?

22         THE COURT:  -- no discovery, nothing.

23         MR. HALL:  Okay.

24         THE COURT:  The only thing we're going to do is I'm

25  going to consider further for a bit the parties' arguments on

1  the issues that are unresolved, and then --

2          MR. HALL:  Okay.

3          THE COURT:  -- I'm going to come here on August 5 at

4  2:30 in open court and announce my ruling on the remaining

5  issues and explain my reasons for that.

6          MR. HALL:  Okay.  I'm fine with it.

7          THE COURT:  Okay.  August 5 at 2:30.

8          MR. HALL:  All right.

9          THE COURT:  That's it for the objections on the

10  claim of Mr. Hall.  Before counsel for the city leave, let me

11  ask you a question -- a housekeeping type question I wanted

12  to ask today, and that is whether I should set aside a date

13  in September and a date in October for claim objection

14  hearings.

15          MS. DOLCOURT:  Yes, your Honor.  We were going to

16  talk to you at the August hearing about that, but we would

17  like to do that, so, yeah, if we can do it now --

18          THE COURT:  Well, I already have one thing at least

19  scheduled in September on September 16 at 1:30.

20          MS. DOLCOURT:  So we could do --

21          THE COURT:  Is that a date in September that works

22  for you?

23          MS. DOLCOURT:  Yes, I believe so.

24          THE COURT:  Okay.  So we'll make the September

25  objection to claim hearing date September 16 at 1:30, and

1    then what date would you like in October?

2          MS. DOLCOURT:  Your Honor, I'd suggest something

3    like October 28th, which is the last Wednesday of the month.

4          THE COURT:  One second.  I can do that.

5          MS. DOLCOURT:  Okay.  At 1:30 as well?

6          THE COURT:  All right.  Okay.  So we'll set --

7    you'll see those added to the list of available claim

8    objection hearing dates on the Court's website.  All right.

9    So thank you for that, and --

10         MS. DOLCOURT:  Thank you.

11         THE COURT:  -- we'll see you all next time.  Thank

12   you.

13         MS. DOLCOURT:  Thank you, your Honor.

14         MR. SIMON:  Thank you, your Honor.

15         THE CLERK:  All rise.  Court is adjourned.

16       (Proceedings concluded at 2:53 p.m.)

INDEX

<u>WITNESSES:</u>

    None

<u>EXHIBITS:</u>

    None


       I certify that the foregoing is a correct transcript
from the sound recording of the proceedings in the above-
entitled matter.


/s/ Lois Garrett           July 29, 2015
_____      _____
Lois Garrett