**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

# HAAS & GOLDSTEIN, P.C.'S RESPONSE TO THE CITY OF DETROIT'S BRIEF SUBMITTED PURSUANT TO COURT ORDER [D.E. 9969]

| | |
|---|---|
| HAAS & GOLDSTEIN, P.C. | HS&A, P.C. |
| Justin Haas (P53153) | Marguerite Hammerschmidt P53908 |
| Matthew S. Payne (P73982) | Attorney for Respondent |
| 31275 Northwestern Hwy, Ste 225 | 123 South Main Street, Suite 110 |
| Farmington Hills, MI 48334 | Royal Oak, MI 48067 |
| (248) 702-6550 | (248) 988-8335 |
| | admin@hammer-stick.com |
| Dated: August 3, 2015 | |

# INTRODUCTION

Pursuant to this Court's June 15, 2015 Order, the issue at bar is whether the Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) (Doc. No. 8045) ("POA") precludes a claimant from recovering penalty interest and attorney fees as prescribed by the Michigan No-Fault Act, MCL 500.3101, *et seq*. ("NFA") arising out of a claim for personal protection insurance ("PIP") benefits incurred post-petition, but which relate to injuries sustained in a pre-petition motor vehicle accident ("MVA").

# RELEVANT FACTS AND PROCEEDINGS

## I. Michigan No-Fault Act, Generally

"The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system. **The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses**. The Legislature believed this goal could be most effectively achieved through a system of *compulsory* insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state. Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort." *Shavers v. Kelley,* 402 Mich. 554, 578-579; 267 N.W.2d 72 (1978) (emphasis added).

"**The avowed overall goals and purpose of the no-fault act are defeated if no-fault insurers are allowed to unreasonably deny benefits, thereby requiring their insureds to seek recourse in the legal system**." *Proudfoot v. State Farm Mut. Ins. Co.*, 254 Mich.App. 702, 707; 658 N.W.2d 838 (2003), citing *Lakeland Neurocare Ctrs. v. State Farm Mut. Automobile Ins. Co.,* 250 Mich.App. 35, 42-43, 645 N.W.2d 59 (2002) (emphasis added).

Generally, a person injured in a motor vehicle accident looks first to his own insurer for benefits. MCL 500.3114; *Farmers Ins. Exch. v. AAA of Michigan,* 256 Mich.App. 691, 695; 671

2

N.W.2d 89 (2003). However, an exception to the general rule exists for persons injured while a passenger of a motor vehicle operated in the business of transporting passengers. MCL 500.3114(2). It is this exception that often leads to the City of Detroit's (the "City") liability for PIP benefits of passengers on its self-insured vehicles.

Both injured persons and their providers constitute "claimants" under the no-fault act, possessing the right to sue a no-fault insurer directly for payment of outstanding PIP benefits. Regardless of whether the plaintiff is an injured person or provider in such an action, there is a threshold inquiry as to benefit entitlement from a particular insurer ("Coverage"). MCL 500.3114. If Coverage exists, no-fault insurers are responsible to pay all "benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" ("Causation"). MCL 500.3105(1). Once Coverage and Causation are established, no-fault insurers are liable to pay all PIP benefits for which reasonable proof is submitted, including allowable expenses ("Allowable Expense"). MCL 500.3107(1)(a). Other sub-categories of PIP benefits include Work Loss and Replacement Services, which also require proof of Coverage and Causation, but which are not usually at issue for provider claims. For an expense to be deemed allowable, three elements must be satisfied:

> "Three factors must be met for an item to be considered an 'allowable expense:' (1) the charge must be reasonable; (2) the expense must be reasonably necessary; and (3) the expense must be incurred." *Davis v. Citizens Ins. Co. of America*, 195 Mich.App. 323, 326; 489 N.W.2d 214 (1992), citing *Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 50; 457 N.W.2d 637 (1990).
>
> "[I]t is each particular expense that must be both reasonable and necessary." *Id*.

Benefits are overdue if not paid within 30 days of receipt of reasonable proof of the fact and amount of loss sustained, automatically implicating 12% *per annum* penalty interest. MCL

500.3142.  The reasonableness of the insurer's actions or the insurer's good faith in not timely paying benefits is irrelevant. The trial court must assess penalty interest against a no-fault insurer if the insurer refuses to pay benefits after receiving reasonable proof of loss and it is later determined to be liable, notwithstanding the insurer's good faith in not promptly paying the benefits.  See *Williams v. AAA Michigan*, 250 Mich.App. 249, 265, 646 N.W.2d 476 (2002) and *Davis v. Citizens Ins. Co. of America,* 195 Mich.App. 323, 328; 489 N.W.2d 214 (1992).

Additionally, a defendant insurer is liable for the plaintiff's attorney fees incurred in recouping unpaid benefits where the delay or denial is deemed unreasonable.  MCL 500.3148(1).  "When an insurer refuses to make or delays in making a no-fault payment, a rebuttable presumption arises that this refusal to pay or delay in paying is unreasonable."  *Attard v. Citizens Ins. Co. of America*, 237 Mich. App. 311, 317; 602 N.W.2d 633 (1999).

This general framework controls all no-fault litigation in Michigan.

**II.    Response to the City's Discussion**

H&G includes this section in its Brief merely for the sake of consistency.  The City spends a significant time with topics such as solicitation, attorney driven treatment, and the cost of no-fault insurance premiums.  These issues are presumably only placed in its brief in an attempt to sway this Court with issues other than those relevant to this motion.  The only issue set forth in this motion is whether a no-fault benefit incurred post-petition is in fact a pre-petition claim.  H&G will not legitimize the City's arguments by addressing their substance.  Suffice it to say that the present status of PIP litigation is not the fault of claimants or their attorneys; rather, it is the insurers who possess the exclusive ability to significantly reduce or eliminate lawsuits by actually paying valid claims and timely issuing written denial of claims that lack merit.  Obviously, if insurers did not incessantly deny legitimate claims, attorneys would quickly learn

4

that filing PIP actions was a losing proposition. H&G could go on for pages providing documentary evidence of insurers shirking their legal responsibilities in an effort to boost their bottom line. H&G will not belabor the point, however, as it is not even a persuasive inquiry to the issue this Court must decide.

## LAW AND ARGUMENT

H&G concedes that the POA precludes recovery of interest and attorney fees on pre-petition Claims. The dispute centers around whether post-petition services constitute pre-petition Claims where those services are related to injuries sustained in a pre-petition MVA. As set forth in the various sections below, according to the POA, federal bankruptcy law, no-fault statute and interpreting case law, this Court must find that a claim for payment for treatment rendered post-petition *does not* constitute a "pre-petition claim," even if the motor vehicle collision occurred pre-petition.

### I. Plan of Adjustment

Each of the City's arguments set forth in its brief constitutes nothing more than a straw man (i.e. refuting a premise that was never actually advanced by the opposition). The real/only issue for this Court to determine is what constitutes a "pre-petition claim".

The applicable portion of the POA reads:

> "the City will not be liable for or pay interest or attorneys' fees under MCL § 500.3142 or MCL § 500.3148 on prepetition Claims for personal protection benefits."

The POA defines "Claim" as:

> "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
5

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

Put simply, the plain and unambiguous language of the POA (which is identical to the Bankruptcy Code definition) dictates that a claim arises concurrently with a right to payment or equitable remedy. Even with a strictly logical analysis without reference to applicable law, there is no coherent argument that a provider possesses any right to payment or equitable remedy prior to rendering services.

Consistent with the POA, the City's own authority decisively resolves in H&G's favor. In each of the cited cases, the creditor had a pre-petition contract or agreement with the debtor that defined the applicable rights and obligations pre-petition. In the no-fault context, on the other hand, there is no contingent obligation to pay merely because an MVA occurred. Indeed, it is entirely possible for a claimant to be injured in an MVA but decide not to seek treatment. In such a case, no provider would have any right to payment despite there having been an MVA. To reiterate, a provider's claim is not contingent once the MVA occurs; rather, it is non-existent until it actually provides services. Tying this concept back into the City's authority, it is easy to identify the faulty premise: it is not the occurrence of the MVA that is analogous to a contractual obligation; it is the rendering of services. As such, services provided post-petition cannot be deemed pre-petition Claims.

It is also worth noting that presumed the intent of the safe harbor afforded to the City for the NFA penalty provisions was premised on problems that were sure to arise in paying pre-petition claims within the timeframes required by the NFA, such as administrative stays and limited access to bankruptcy funds. Those considerations are moot for post-petition claims as those stays are no longer in effect. The City cannot point to any intent to provide the City with a

6

13-53846-tjt    Doc 10116    Filed 08/03/15    Entered 08/03/15 16:44:01    Page 6 of 12

shield insulating it from NFA penalties for benefits incurred into perpetuity related to every MVA that occurred prior to July 18, 2013.

## II. Bankruptcy Law

H&G takes issue with the City's claim that bankruptcy law controls the issue at bar. The U.S. Supreme Court has instructed:

> "What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law." *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 161; 67 S.Ct. 237, 91 L.Ed. 162 (1946).

> "The 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'" *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 20; 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000).

Clearly, Michigan law controls when a PIP claim arises for the purposes of bankruptcy. Notwithstanding, the City's cited bankruptcy authority actually bolsters H&G's position.

In its Brief the City argues the "debtor's conduct" is the MVA, in an effort to support its position that all liability arising out of an MVA would constitute a pre-petition claim. The City proffers no authority or logical argument in this regard. To the contrary, that approach cannot be literally applied to no-fault claims, as the City (i.e. debtor) need not act to incur liability for PIP benefits. This test turns on the conduct which gives rise to the debt, which is the rendering of services, not the occurrence of an MVA.

The City admits that the "fair contemplation" approach requires a pre-petition relationship between the debtor and the creditor. This alone is dispositive for the purposes of this test. There is no question that the treatment providers have no relationship with the City until that treatment is rendered. The City has not cited any authority that indicates otherwise.

### III. Michigan No-Fault Law

This section alone is all that is necessary to decide the issue at bar. It also happens to be the strongest support for H&G's position. One element of any provider's claim for no-fault benefits is that the expense be "incurred." *Davis v. Citizens Ins. Co. of America*, 195 Mich.App. 323, 326; 489 N.W.2d 214 (1992), citing *Nasser v. Auto Club Ins. Ass'n,* 435 Mich. 33, 50; 457 N.W.2d 637 (1990). A provider cannot recoup payment from a no-fault insurer unless the claimant is personally liable for the provider's charges. *Williams v. AAA Michigan*, 250 Mich.App. 249, 258; 646 N.W.2d 476 (2002) ("Because plaintiff bears no liability for the full medical service amounts initially charged by his health care providers, he has not *incurred* these full charges.").

"The word 'incurred' is not defined in the no-fault act, so we accord the word its plain and ordinary meaning within the context of the statute." *Shanafelt v. Allstate Ins. Co.*, 217 Mich.App. 625, 638; 552 N.W.2d 671 (1996), citing *In re PSC's Determination Regarding Coin-Operated Telephones,* 204 Mich.App. 350, 353; 514 N.W.2d 775 (1994). "The primary definition of the word 'incur' is 'to become liable for.'" *Id.*, quoting Random House Webster's College Dictionary (1995). **Charges for medical services are "incurred" when the claimant accepts medical treatment**. *Bombalski v. Auto Club Ins. Ass'n*, 247 Mich.App. 536, 542; 637 N.W.2d 251 (2001) ("Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment.").

This Brief is probably reminiscent of a broken record at this point, but one more time for effect: <u>a provider has no right to payment or equitable remedy until it provides services, meaning it has no pre-petition Claim when those services were rendered post-petition</u>. The occurrence of the MVA cannot possibly be considered to create the right to payment for numerous reasons, not

the least of which is that it is entirely possible that the claimant will not seek treatment at all. Instead, it is the claimant having incurred the costs of the provider's services which gives rise to the provider's right to payment. According to binding precedent, the claimant incurs those expenses at the time the services are provided.

Equity also supports H&G's position. "The no-fault act was designed to afford prompt and adequate reparation for economic losses, such as medical expenses, incurred by individuals injured in motor vehicle accidents." *Johnson v. Michigan Mut. Ins. Co.*, 180 Mich.App. 314, 322; 446 N.W.2d 899 (1989), citing *Shavers v. Attorney General,* 402 Mich. 554, 578-579, 267 N.W.2d 72 (1978), aff'd 412 Mich. 1105, 315 N.W.2d 130 (1982). "The avowed overall goals and purpose of the no-fault act are defeated if no-fault insurers are allowed to unreasonably deny benefits, thereby requiring their insureds to seek recourse in the legal system." *Proudfoot v. State Farm Mut. Ins. Co.*, 254 Mich.App. 702, 707; 658 N.W.2d 838 (2003), citing *Lakeland Neurocare Ctrs. v. State Farm Mut. Automobile Ins. Co.,* 250 Mich.App. 35, 42-43, 645 N.W.2d 59 (2002).

As cited by the City, it is still handling and liable to process bills for ongoing medical treatment for hundreds of claims for motor vehicle collisions that occurred pre-bankruptcy/petition. Presumably, some of these claims are catastrophic claims where the claimants will be in need of treatment for the rest of their lives. The purpose of having NFA Penalties is to foster the above-cited goals and as a deterrent to ignoring the duty to pay timely. If the City successfully evades liability for these penalties for its ongoing obligations to timely pay these claims, it has no incentive whatsoever to issue payment for valid ongoing claims. The City could force all claimants and providers to engage in years of time consuming and costly litigation and even once it is found liable by a jury, it would still only have to pay the amounts

the NFA required that it paid within 30 days of submission of the claim. As a matter of public policy, this result must be avoided.

## CONCLUSION

The sole issue at bar is whether a provider's right to payment arises out of the MVA that caused the injuries for which it provided treatment or at the time treatment was rendered. Every single legal definition, statutory provision, and interpreting case supports the latter. There is no right to payment until services are rendered. The "conduct" activating the right to payment is the acceptance of treatment. Under "fair contemplation," only debts between parties with relationships pre-petition are implicated, which is not the case for a provider rendering post-petition treatment. Most importantly, a provider's right to payment according to Michigan law as promulgated by the NFA does not arise until the claimant has incurred the expenses.

WHEREFORE, H&G respectfully requests that this Court enforce the POA *as written and as it must be interpreted under applicable law*, and confirm that the City remains liable for interest and attorney fees for all post-petition Claims regardless of whether the applicable MVA occurred pre-petition.

Respectfully Submitted,
/s/Marguerite Hammerschmidt
Marguerite Hammerschmidt P53908
HS&A, P.C.
Attorney for Respondent
123 South Main Street, Suite 110
Royal Oak, MI 48067
(248) 988-8335
admin@hammer-stick.com

/s/ Justin Haas
HAAS & GOLDSTEIN, P.C.
Justin Haas (P53153)
Matthew S. Payne (P73982)
31275 Northwestern Hwy, Ste. 225
Farmington Hills, MI 48334
(248) 702-6550

Dated: August 3, 2015

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**PROOF OF SERVICE**

On the 3rd of August, 2015 a copy of **HAAS & GOLDSTEIN, P.C.'S RESPONSE TO THE CITY OF DETROIT'S BRIEF SUBMITTED PURSUANT TO COURT ORDER [D.E. 9969]** and this Proof of Service was served electronically or by regular first class mail to the following:

Miller, Canfield, Paddock and Stone, P.L.C., Attn: Marc N. Swanson, 150 West Jefferson, Suite 2500, Detroit, MI 48226

City of Detroit Law Department, Attn: Charles N. Raimi, Deputy Corporation Counsel, 2 Woodward Avenue, Suite 500, Coleman A. Young Municipal Center, Detroit, MI 48226

Goodman Acker, P.C., Attn: Gerald Acker, 17000 West Ten Mile Road, 2nd Floor, Southfield, MI 48075

                                                                **/s/Karen Nowicki**
                                                                Karen Nowicki
                                                                Employee of HS&A, P.C.