# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S REPLY BRIEF SUBMITTED PURSUANT TO COURT ORDER [D.E. 9969], AND IN SUPPORT OF MOTION SEEKING DETERMINATION THAT CLAIMANTS BRINGING PRE-PETITION NO-FAULT LAWSUITS CANNOT SEEK TO RECOVER INTEREST OR ATTORNEY FEES REGARDLESS OF WHETHER THE SERVICES IN QUESTION WERE RENDERED PRE-PETITION OR POST-PETITION**

Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 963-6420
green@millercanfield.com
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

August 17, 2015

# INTRODUCTION

This Court entered a stipulated Order [DE 9969] governing these proceedings. The Order identified the unresolved issue as follows: Where a plaintiff was involved in a pre-petition motor vehicle accident, and then claimed no-fault benefits from the City for post-petition medical services in connection with that accident, is plaintiff barred from seeking recovery of interest and attorney fees by Art. IV (S) of the Plan of Adjustment?

The signatories to the stipulation were the City, Haas & Goldstein (H & G), and Goodman Acker. The Order requires those firms to file briefs and also allows Michigan Association for Justice to file an amicus brief.

Only H & G filed a brief. That brief addresses only whether a **provider plaintiff** can recover interest and attorney fees. No brief has been filed addressing whether a pre-petition **accident victim** can recover interest and attorney fees. Presumably that issue is conceded.

H & G argues that a provider has a stronger claim than does the actual accident victim to recover interest and attorney fees because "a provider has no right to payment or equitable remedy until it provides services, meaning it has no pre-petition Claim when those services were rendered post-petition." Brief, p. 8. Likewise, H & G argues that the "fair contemplation" test is not met because it allegedly requires "a pre-petition relationship between the debtor and the creditor. * * * There is no question that the treatment providers have no relationship with the City until that treatment is rendered." Brief, p. 7.

H & G's position ignores the fundamental, common sense fact, confirmed in several recent published Michigan decisions, that a provider's claim for no-fault benefits is simply derivative of the injured party's claim. Because the underlying claim is a pre-petition claim, the provider likewise is barred from seeking to recover interest and attorney fees.

1

# ARGUMENT

## I. Bankruptcy law, not state law, controls whether a claim is pre- or post-petition.

H & G argues that "Michigan law controls when a PIP claim arises for the purposes of bankruptcy." Brief, p. 7. H & G cites no law supporting that proposition and it is not correct.

H & G cites *Vanston v. Green*, 329 U.S. 833 (1946), and *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000). Brief, p. 7. *Vanston* involved the validity of a bond covenant. *Raleigh* involved a state claim against a corporate officer, as a "responsible party," for a corporation's failure to pay state use tax. The Court held that the state's burden of proof was not altered simply because the officer had filed for bankruptcy. Neither case addresses whether bankruptcy or state law controls whether a claim is pre- or post-petition, and neither case supports H & G's position.

H & G fails to respond to the many cases cited in the City's brief which address this precise point and hold, *inter alia*, that it is "well settled that federal law governs when a claim arises [in bankruptcy]." *In re Parks*, 281 B.R.899, 902 (Bankr. E.D. Mich. 2002), and see the City's discussion at pages 9 – 14 of its initial brief.

## II. Under federal law, all no-fault claims arising from a pre-petition automobile accident are pre-petition claims, regardless of whether the medical service is after the petition date.

The City's initial brief explains in detail why all no-fault claims emanating from a pre-petition auto accident are pre-petition claims – even if the medical service is rendered after the petition date. H & G does not respond to that discussion - other than to argue that H & G's **provider** clients' claims (as opposed to claims brought by the **injured party**) should be treated as post-petition claims.

H & G's argument is fundamentally unsound because the claims of its provider clients are entirely derivative of the claims of the injured party.  In *TBCI, P.C. v. State Farm,* 289 Mich. App. 39 (2010), exhibit 1, the injured party (Afful) filed suit in Wayne County Circuit Court to recover no-fault benefits for attendant care services.  TBCI (which provides medical services for traumatic brain injuries) sued in Oakland County Circuit Court for therapeutic and rehabilitative services provided to Afful.

In the Wayne County Circuit Court case, the jury determined that Afful's claim for attendant care services was fraudulent.  The insurance policy provided that such fraud negated all coverage.  A judgment of no cause of action was entered.

Thereafter, the Oakland County Circuit Court granted State Farm's motion to dismiss TBCI's lawsuit on grounds of res judicata.  The Court of Appeals affirmed, holding:

> "* * * Plaintiff, by seeking coverage under the policy, is now essentially standing in the shoes of Afful. Being in such a position, there is also no question that plaintiff, although not a party to the first case, was a "privy" of Afful. "A privy of a party includes a person so identified in interest with another that he represents the same legal right...." *Begin,* 284 Mich.App. at 599, 773 N.W.2d 271. As noted, the jury determined that Afful submitted a fraudulent claim. The result under the plain language of the exclusion provision interpreted in the first action is that Afful and his privies were not entitled to coverage under the policy."

*Id*., 289 Mich. App. 39, 44.   In *Moody v. Home Owners Insurance Company,* 304 Mich. App. 415 (2014), *appeal dismissed* 858 N.W.2d 463 (2015), exhibit 2, the injured party (Moody) filed suit for no-fault benefits in state district court (36th district court in Detroit). Three medical providers also filed suit in 36th district court seeking recovery, in total, of $21,982.14 in no-fault benefits for their provision of services to Moody.  All cases were consolidated.

Although Moody's complaint represented that he sought less than $25,000, the jurisdictional limit of the district court, at trial Moody requested far more than $25,000. The jury ultimately awarded Moody more than $32,000 and also awarded the providers the amounts they

requested. The circuit court reversed the judgment on multiple grounds and the Court of Appeals affirmed the reversal.

The providers argued that they have the right to bring a direct action for no-fault benefits. They further argued that because their combined claims were less than $25,000, their portion of the judgment should be severed and saved. The Court of Appeals rejected that argument:

> "We also reject the providers' argument that their claims may be saved by severing them after the fact of trial and judgment from the extra-jurisdictional claims of Moody. While the providers may bring an independent cause of action against a no-fault insurer, **the providers' claims against Home Owners are completely derivative of and dependent on Moody's having a valid claim of no-fault benefits against Home Owners. * * *.**"

*Id.*, 304 Mich. App. 415, 440 (emphasis added).

The Court further observed:

> Here, there is virtual identity between the providers' and Moody's claims, and Moody could have brought all the claims in a single case in which a single judgment was entered. **Indeed, it is Moody's claim against Home Owners that the providers are allowed to assert because the no-fault act states that "benefits are payable to or for the benefit of an injured person," MCL 500.3112. See** *Lakeland Neurocare Ctrs.,* **250 Mich.App. at 38–40, 645 N.W.2d 59. But the providers' claims actually belong to Moody because "the right to bring an action for personal protection insurance [PIP] benefits, including claims for attendant care services, belongs to the injured party."** *Hatcher v. State Farm Mut. Auto. Ins. Co.,* **269 Mich.App. 596, 600, 712 N.W.2d 744 (2006).** Thus, the injured party may waive by agreement his or her claim against an insurer for no-fault benefits, and a service provider is bound by the waiver. See *Mich. Head & Spine Institute, PC v. State Farm Mut. Auto. Ins. Co.,* 299 Mich.App. 442, 447–449, 830 N.W.2d 781 (2013). If an injured party waives a PIP claim, a service provider's remedy is to seek payment from the injured person. *Id.* at 449–450, 830 N.W.2d 781.

> We conclude on the basis of the foregoing analysis that there is such an identity between the providers' and Moody's claims that consolidation for trial resulted in merging the claims for purpose of determining the amount in controversy under MCL 600.8301(1). Because the providers' claims are derivative of Moody's claims, the consolidated claims are the equivalent of a single plaintiff asserting multiple claims against a single defendant. See *Boyd,* 132 Mich.App. at 781, 348 N.W.2d 25.

4

*Id.*, 304 Mich. App. 415, 442, 443 (emphasis added).

Accordingly, to determine whether a no-fault claim arising from a pre-petition auto accident is a pre- or post-petition claim, one must look to the holder of the claim on the day before the petition was filed – the injured party. Likewise, to apply the "fair contemplation" test, one must determine whether the possibility of post-petition medical treatment is in the "fair contemplation" of the holder of the claim – the injured party – on the day prior to the filing of the petition. The answer is, of course, yes. Indeed, absent the objection of the State of Michigan based on public policy (and not bankruptcy law), no-fault claims would have been treated as all other contingent, unsecured claims. An appropriate amount would have been determined for all post-petition benefits and the injured party would have received that amount as a class 14 claim. The injured party could then use those limited proceeds to assist in paying for the services of any medical provider the injured party chose. All of this has nothing to do with the derivative claims of the medical providers – and it would be absurd to allow medical providers to collect interest and attorney fees when the holder of the claim, the injured party, has no right to do so.

<u>**CONCLUSION AND RELIEF**</u>

The City respectfully asks that the Court enforce the Plan of Adjustment, and confirm that interest and attorney fees are not recoverable on post-petition services which arise from pre-petition motor vehicle accidents.

Respectfully Submitted,
By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
Miller, Canfield, Paddock and Stone, PLC
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Phone (313) 496-759; Fax (313) 496-8451
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Phone (313) 237-5037
raimic@detroitmi.gov

Dated:    August 17, 2015

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 17, 2015, he served a copy of the foregoing *CITY OF DETROIT'S REPLY BRIEF SUBMITTED PURSUANT TO COURT ORDER [D.E. 9969], AND IN SUPPORT OF MOTION SEEKING DETERMINATION THAT CLAIMANTS BRINGING PRE-PETITION NO-FAULT LAWSUITS CANNOT SEEK TO RECOVER INTEREST OR ATTORNEY FEES REGARDLESS OF WHETHER THE SERVICES IN QUESTION WERE RENDERED PRE-PETITION OR POST-PETITION,* upon the persons listed below, via electronic mail and first class mail.

Gerald Acker
Goodman Acker, P.C.
17000 West Ten Mile Road, 2nd Floor
Southfield, MI 48075
gacker@goodmanacker.com

Laurie Goldstein
Haas & Goldstein, PC
31275 Northwestern Hwy.
Farmington Hills, MI 48334
lauriejgoldstein@yahoo.com

Justin Haas
Haas & Goldstein, PC
31275 Northwestern Hwy.
Farmington Hills, MI 48334
jhaas@haasgoldstein.com

Dated: August 17, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

# EXHIBIT 1

289 Mich.App. 39

Court of Appeals of Michigan.

TBCI, P.C.

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

Docket No. 288853. | Submitted April 6,
2010, at Detroit. | Decided April 27, 2010. |
Approved for Publication June 22, 2010, at 9:10 a.m.

**Synopsis**

**Background:** Medical provider filed claim against automobile insurer, seeking payment under the no-fault motor vehicle insurance act for health-care services allegedly provided to insured as result of automobile accident. The Circuit Court, Oakland County, Daniel P. O'Brien, J., granted insurer summary disposition based on res judicata. Provider appealed.

**[Holding:]** The Court of Appeals held that provider's claim was barred by doctrine of res judicata based on judgment against insured in prior action.

Affirmed.

West Headnotes (6)

**[1]** **Appeal and Error**
 🔑 Cases Triable in Appellate Court

Questions concerning the correct interpretation and application of an insurance contract are reviewed de novo.

Cases that cite this headnote

**[2]** **Appeal and Error**
 🔑 Cases Triable in Appellate Court

Questions concerning a trial court's decision on the applicability of res judicata are reviewed de novo.

2 Cases that cite this headnote

**[3]** **Judgment**
 🔑 Nature and requisites of former recovery as bar in general

**Judgment**
 🔑 Nature and elements of bar or estoppel by former adjudication

The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation; accordingly, "res judicata" bars a subsequent action between the same parties when the evidence or essential facts are identical.

8 Cases that cite this headnote

**[4]** **Judgment**
 🔑 Nature and requisites of former recovery as bar in general

**Judgment**
 🔑 Finality of Determination

The doctrine of res judicata is applicable when the first action was decided on its merits, the second action was or could have been resolved in the first action, and both actions involve the same parties or their privies; for the doctrine to apply, the judgment in the first case must have been final.

9 Cases that cite this headnote

**[5]** **Insurance**
 🔑 Particular matters concluded

Insured's claim against automobile insurer for medical benefits under the no-fault motor vehicle insurance act was res judicata with respect to second action brought under act against insurer by insured's medical provider for payment for health-care services allegedly provided to insured, even though provider was not a party in first action, where jury determined in first action that insured's claim was fraudulent, such that coverage for insured and his privies, which would have included the medical provider, was

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

barred under exclusionary clause of the policy.
M.C.L.A. § 500.3101 et seq.

2 Cases that cite this headnote

[6] **Judgment**
👉 **What constitutes privity in general**

For purposes of res judicata, a "privy" of a party includes a person so identified in interest with another that he represents the same legal right.

2 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*229** Ihrie O'Brien (by Harold A. Perakis) for plaintiff.

Hewson & Van Hellemont, P.C. (by James F. Hewson, Oak Park, and **\*\*230** Mark R. Richard) (Steven G. Silverman, Oak Park, of counsel), for defendant.

Before: JANSEN, P.J., and CAVANAGH and K.F. KELLY, JJ.

**Opinion**

PER CURIAM.

**\*40** In this case brought under the no-fault motor vehicle insurance act, MCL 500.3101 et seq., plaintiff, TBCI, P.C., a health-care provider, appeals as of right the trial court's order dismissing its complaint that sought to recover first-party benefits. We affirm.

**I. BASIC FACTS**

On February 6, 2006, Eric Afful was allegedly injured in an automobile accident. As a result, Afful claimed to have received attendant-care services as well as other medical treatment. However, Afful's no-fault insurer, defendant, State Farm Mutual Automobile Insurance Company, refused to pay Afful's claims for the services, contending the claims he submitted were fraudulent. Thus, Afful sued defendant in a separate litigation in the Wayne Circuit Court. [1] The case went to trial and, on May 15, 2008, the jury found that Afful's claim for attendant-care benefits was fraudulent. This barred

coverage for Afful's claim under the exclusionary clause of the policy. The relevant provision stated:

> There is no coverage under this policy if you or any other person insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

**\*41** Accordingly, a judgment of no cause of action was entered against Afful on June 3, 2008.

Plaintiff also allegedly provided Afful with therapeutic and rehabilitative services for his injuries from the accident. Defendant also refused to pay for these services, and plaintiff brought the present suit against defendant for payment. Specifically, plaintiff alleged that defendant owed it approximately $35,000 for the services plaintiff had provided Afful. Plaintiff's complaint, filed in February 2007, alleged that defendant had breached the insurance policy and that its failure to pay the claim had violated the no-fault act. At the time of the trial in the Wayne Circuit Court, the present matter was pending in the Oakland Circuit Court.

After the judgment was entered in the Wayne Circuit Court case, defendant in the present matter moved for summary disposition. It argued that the Wayne Circuit Court's judgment barred plaintiff's claim under the doctrine of res judicata. Defendant contended that once the jury found that Afful had committed fraud, there was no longer any coverage under the policy and, consequently, plaintiff's claim failed. Plaintiff responded, in part, that the present claim was "an independent cause of action" involving a claim of services that "was not adjudicated in the Wayne County action." The trial court agreed with defendant, finding that the core issue—whether there was coverage for Afful's claims—was common between the two suits and that the decision of the jury in the Wayne Circuit Court action, combined with the clear language of the policy, decided the issue in defendant's favor. The court reasoned:

> [T]here is one issue that is identical between this and the Wayne County case, to-wit whether there is valid coverage **\*\*231** by the defendant for the alleged insured.

**\*42** Looking at the—looking at the language, not having to go to contract construction or anything else, but just using the English language there is no coverage under this policy if you have made false statements in connection with any claim under this policy.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

\* \* \*

If an insured's conduct is thus or so, or specifically fraudulent, the whole coverage is spoiled....

\* \* \*

I find that there is no question whatsoever but that the jury declaration or adjudication in Wayne County navigates the course of this proceedings [sic]; any fraud spoils the coverage....

Thus, the trial court granted summary disposition for defendant and dismissed the action. This appeal followed.

## II. STANDARDS OF REVIEW

**[1]** **[2]** This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v. Dep't of Transp.,* 456 Mich. 331, 337, 572 N.W.2d 201 (1998). Further, questions concerning the correct interpretation and application of an insurance contract are reviewed de novo, *Cohen v. Auto Club Ins. Ass'n,* 463 Mich. 525, 528, 620 N.W.2d 840 (2001), as are questions concerning a trial court's decision on the applicability of res judicata, *Begin v. Mich. Bell Tel. Co.,* 284 Mich.App. 581, 598, 773 N.W.2d 271 (2009).

## III. ANALYSIS

Plaintiff argues that the trial court erred by interpreting the policy's exclusionary language in such a way **\*43** that it voided all coverage under the policy, including mandatory coverage for personal protection insurance benefits. In plaintiff's view, this interpretation of the policy conflicted with the no-fault act's mandatory-coverage requirement, and it should have been declared void as against public policy. Plaintiff also contends that the language of the provision is ambiguous. We disagree. In our opinion, it is unnecessary for us to reach the substance of plaintiff's arguments because its claim was barred by res judicata.

**[3]** **[4]** "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication,

that is, to foster the finality of litigation." *Id.* at 599, 773 N.W.2d 271. Accordingly, "[r]es judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz,* 205 Mich.App. 371, 375, 521 N.W.2d 847 (1994). It is applicable when "the first action was decided on its merits, the second action was or could have been resolved in the first action, and both actions involve the same parties or their privies." *Solution Source, Inc. v. LPR Assoc. Ltd. Partnership,* 252 Mich.App. 368, 376, 652 N.W.2d 474 (2002) (citation omitted). For the doctrine to apply, the judgment in the first case must have been final. *Richards v. Tibaldi,* 272 Mich.App. 522, 531, 726 N.W.2d 770 (2006).

**[5]** **[6]** Here, there is no serious dispute whether the judgment in the first case was a final judgment on the merits. The jury determined that Afful had submitted a fraudulent claim for benefits, and a judgment pursuant to the verdict was entered on June 3, 2008. Further, there is no question whether plaintiff's claims were, or could have been, resolved in the first lawsuit. This is because the essential evidence presented in the first **\*44** case sustained dismissal of both actions. See **\*\*232** *Eaton Co. Rd. Comm'rs,* 205 Mich.App. at 375, 521 N.W.2d 847. Plaintiff, by seeking coverage under the policy, is now essentially standing in the shoes of Afful. Being in such a position, there is also no question that plaintiff, although not a party to the first case, was a "privy" of Afful. "A privy of a party includes a person so identified in interest with another that he represents the same legal right...." *Begin,* 284 Mich.App. at 599, 773 N.W.2d 271. As noted, the jury determined that Afful submitted a fraudulent claim. The result under the plain language of the exclusion provision interpreted in the first action is that Afful and his privies were not entitled to coverage under the policy. Plaintiff is simply attempting to relitigate precisely the same issue in order to obtain coverage under the policy. The trial court properly dismissed plaintiff's suit to the extent that it found its claim was barred by res judicata. For this reason, plaintiff's claim of appeal fails.

Affirmed.

## All Citations

289 Mich.App. 39, 795 N.W.2d 229

Footnotes

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

1   *Afful v. State Farm Mut. Auto. Ins. Co.,* unpublished judgment of the Wayne Circuit Court, entered June 3, 2008 (Docket No. 06–630073–NF), 2008 WL 4520675.

---

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                    4

**EXHIBIT 2**

304 Mich.App. 415

Court of Appeals of Michigan.

MOODY

v.

HOME OWNERS INSURANCE COMPANY.

Hodge

v.

State Farm Mutual Automobile Insurance Company.

Docket Nos. 301783, 301784, 308723.
|   Submitted Sept. 10, 2013, at Detroit.
|   Decided Feb. 25, 2014, at 9:10 a.m.

**Synopsis**

**Background:** Insureds brought separate actions against automobile insurers to recover no-fault benefits and claimed damages in excess of $25,000 jurisdictional limit. One insured's health-care providers brought separate action against insurer to recover benefits. The 36th District Court consolidated providers' and insured's actions and entered judgments following jury verdicts, but limited insureds to recovery of $25,000. Insurers appealed. The Circuit Court, Wayne County, Robert Colombo and Brian R. Sullivan, JJ., reversed. Insureds and providers appealed, and appeals were consolidated.

**Holdings:** The Court of Appeals, Markey, P.J., held that:

[1] district courts lacked subject matter jurisdiction;

[2] consolidated claims of insured and providers were single claim for jurisdictional purposes; and

[3] opening argument by insured's attorney that automobile insurer could obtain reimbursement from assigned claims facility required reversal.

Affirmed.

West Headnotes (39)

**[1]    Courts**

🔑  Determination of questions of jurisdiction in general

Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding. M.C.L.A. § 600.8301(1); MCR 2.116(C)(4), 2.227(A)(1).

Cases that cite this headnote

**[2]    Courts**

🔑  Acts and proceedings without jurisdiction

When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void.

Cases that cite this headnote

**[3]    Judgment**

🔑  Jurisdiction of the person and subject-matter

A proven lack of subject matter jurisdiction renders a judgment void.

Cases that cite this headnote

**[4]    Courts**

🔑  Acts and proceedings without jurisdiction

When there is a want of jurisdiction over the parties, or the subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction and, consequently, its proceedings may be questioned collaterally as well as directly.

Cases that cite this headnote

**[5]    Statutes**

🔑  Language and intent, will, purpose, or policy

The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent as expressed by the language of the statute.

Cases that cite this headnote

**[6]** **Courts**
⚷ Construction and application of rules in general

The language used in a court rule and its place within the organization of the Michigan Court Rules is important in construing the rule.

Cases that cite this headnote

**[7]** **Courts**
⚷ Construction and application of rules in general

**Statutes**
⚷ Plain Language; Plain, Ordinary, or Common Meaning

When addressing how to construe a statute or a court rule, one must first look to the language used and give the words their plain and ordinary meaning unless defined otherwise.

Cases that cite this headnote

**[8]** **Courts**
⚷ Construction and application of rules in general

**Statutes**
⚷ Dictionaries

When words in a statute or court rule are undefined, one may properly consult a dictionary concerning their plain and ordinary meaning.

Cases that cite this headnote

**[9]** **Courts**
⚷ Construction and application of rules in general

**Statutes**
⚷ Absence of Ambiguity; Application of Clear or Unambiguous Statute or Language

When the language used in a court rule or statute is clear and unambiguous, no further interpretation is either necessary or permitted.

Cases that cite this headnote

**[10]** **Statutes**
⚷ Giving effect to statute or language; construction as written

The overarching rule of statutory construction is that a court must enforce clear and unambiguous statutory provisions as written.

Cases that cite this headnote

**[11]** **Constitutional Law**
⚷ Judicial "reading into" or "out of" statutory language

When a court interprets a statute, it may not read anything into an unambiguous statute that is not within the legislature's manifest intent as derived from the words used in the statute itself.

Cases that cite this headnote

**[12]** **Courts**
⚷ Amount claimed or sum recoverable or in dispute

"Amount in controversy" within meaning of statute permitting district court to exercise subject-matter jurisdiction when the amount in controversy does not exceed $25,000 is the amount the parties to a lawsuit dispute, argue about, or debate during the litigation. M.C.L.A. § 600.8301(1).

5 Cases that cite this headnote

**[13]** **Courts**
⚷ Allegations and prayers in pleadings

District courts in their jurisdictional query were not limited to the pleadings which requested relief up to $25,000 jurisdictional limit in suits claiming and presenting evidence of damages far in excess of $25,000, but were required to either dismiss each case or transfer it to the circuit court, and, thus, district court judgments were void for want of subject-matter jurisdiction; the

amount in controversy for determining subject-matter jurisdiction was determined by what plaintiffs alleged they would be able to prove at trial, not the amount entered in judgment, and subject-matter jurisdiction could not be conferred by artful pleading or by limiting a judgment to the district court's jurisdictional limit after the facts were determined. M.C.L.A. § 600.8301(1); MCR 2.116(C)(4), (D)(3), (G)(5), 2.227(A)(1).

5 Cases that cite this headnote

**[14]** **Courts**
👉 Allegations, pleadings, and affidavits

A plaintiff may not merely say some magic words and confer subject-matter jurisdiction where it otherwise would not exist.

Cases that cite this headnote

**[15]** **Courts**
👉 Determination of questions of jurisdiction in general

A court must make its own determination regarding the existence of a statutory basis for jurisdiction and must make this jurisdictional determination before the fact-finding of the trial has concluded.

Cases that cite this headnote

**[16]** **Courts**
👉 Determination of questions of jurisdiction in general

A court is continually obliged to question sua sponte its own jurisdiction over a person, the subject matter of an action, or the limits of the relief it may afford.

Cases that cite this headnote

**[17]** **Appeal and Error**
👉 Error Committed or Invited by Party Complaining

Under the invited-error doctrine, appellate relief is generally not available because, when a party

invites the error, he waives his right to seek appellate review, and any error is extinguished.

1 Cases that cite this headnote

**[18]** **Estoppel**
👉 Nature and elements of waiver

"Waiver" is the intentional relinquishment or abandonment of a known right.

Cases that cite this headnote

**[19]** **Courts**
👉 Allegations and prayers in pleadings

Automobile insurer did not waive its objection to the district court's subject-matter jurisdiction by initially moving to consolidate claims of insured and health-care providers, where insurer moved to consolidate the providers' case with insured's case before discovery disclosed that insured's claims for damages were far in excess of the district court's jurisdictional limit. M.C.L.A. § 600.8301(1).

Cases that cite this headnote

**[20]** **Courts**
👉 Waiver of Objections
**Courts**
👉 Time of making objection

Defects in subject-matter jurisdiction cannot be waived and may be raised at any time.

Cases that cite this headnote

**[21]** **Courts**
👉 Waiver of Objections

Because subject-matter jurisdiction concerns the court's power to hear a case, it is not subject to waiver.

2 Cases that cite this headnote

**[22]** **Courts**
👉 Determination of questions of jurisdiction in general

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works. 3

A court must at all times be cognizant of its own jurisdiction and sua sponte question whether it has jurisdiction over a person or the subject matter of an action.

Cases that cite this headnote

[23] **Courts**
👉 Uniting separate demands or causes of action, and aggregate of claims by or against two or more parties

Consolidated claims by insured and health-care providers to recover no-fault automobile insurance benefits merged and were equivalent of single claim for purposes of determining amount in controversy and district court's subject-matter jurisdiction, and, thus, fact that the providers' combined claims were within the district court's $25,000 jurisdictional limit did not cure the jurisdictional defect; providers' claims were completely derivative of and dependent on insured having a valid claim for no-fault benefits. M.C.L.A. §§ 500.3105(1), 500.3107(1)(a), 500.3114(1), 600.8301(1).

1 Cases that cite this headnote

[24] **Insurance**
👉 Construction and Effect of Settlement or Release

The injured party may waive by agreement his or her claim against an automobile insurer for no-fault benefits, and a service provider is bound by the waiver.

Cases that cite this headnote

[25] **Health**
👉 Compensation

**Insurance**
👉 Construction and Effect of Settlement or Release

If an injured party waives a claim for no-fault personal protection insurance (PPI) benefits, a service provider's remedy is to seek payment from the injured person.

Cases that cite this headnote

[26] **Appeal and Error**
👉 Arguments and conduct of counsel

Automobile insurer preserved for appeal issue of insured's attorney's improper remarks to the jury when insurer objected and obtained a ruling on the issue from the trial court, even though insurer did not move for new trial, raise new trial issue on appeal, or request new trial in appellate brief.

Cases that cite this headnote

[27] **Administrative Law and Procedure**
👉 Preservation of Questions Before Administrative Agency

**Appeal and Error**
👉 Necessity of presentation in general

Generally, an issue is properly preserved if it is raised before, addressed by, or decided by the lower court or administrative tribunal.

Cases that cite this headnote

[28] **Appeal and Error**
👉 Cases Triable in Appellate Court

Appellate review of claims of misconduct by counsel is de novo to determine whether a party was denied a fair trial.

2 Cases that cite this headnote

[29] **Appeal and Error**
👉 Arguments and Conduct of Counsel

**Trial**
👉 Control by court in general

Analysis of claims of misconduct by counsel requires two steps: (1) whether error occurred and (2) whether it requires reversal.

Cases that cite this headnote

[30] **Appeal and Error**
👉 Arguments and Conduct of Counsel

A lawyer's comments will usually not be cause for reversal unless they indicate a deliberate

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

course of conduct aimed at preventing a fair and impartial trial or where counsel's remarks were such as to deflect the jury's attention from the issues involved and had a controlling influence on the verdict.

2 Cases that cite this headnote

**[31]** **Appeal and Error**
    Arguments and Conduct of Counsel

Prejudicial statements of an attorney require reversal only where they reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved.

Cases that cite this headnote

**[32]** **Appeal and Error**
    Arguments and Conduct of Counsel

Proper instructions to the jury will cure most, but not all, misconduct by counsel, thereby avoiding need for reversal.

3 Cases that cite this headnote

**[33]** **Action**
    Moot, hypothetical or abstract questions

An issue is moot when a judicial determination cannot have any practical legal effect on the existing controversy.

1 Cases that cite this headnote

**[34]** **Appeal and Error**
    Matters Not Necessary to Decision on Review

Court of Appeals may review a moot issue if it is publicly significant and likely to recur, yet may evade judicial review.

Cases that cite this headnote

**[35]** **Appeal and Error**
    Review of specific questions in general

Potentially moot issue of automobile insurer's right to new trial as result of opening argument by insured's attorney that insurer could obtain

reimbursement from assigned claims facility was reviewable as publicly significant and likely to recur, yet evading judicial review, on appeal from decision that district court lacked subject matter jurisdiction.

Cases that cite this headnote

**[36]** **Appeal and Error**
    Reference to insurance or other indemnity

**Appeal and Error**
    Ordering New Trial, and Directing Further Proceedings in Lower Court

**Trial**
    Reference to protection of party by insurance or other indemnity

Opening argument by insured's attorney that automobile insurer could obtain reimbursement from assigned claims facility was both wrong and irrelevant and denied insurer a fair trial, thus warranting reversal and remand for a new trial in suit for no-fault benefits. M.C.L.A. §§ 500.3114(1), 500.3172(1).

Cases that cite this headnote

**[37]** **Appeal and Error**
    Arguments and conduct of counsel

Automobile insurer could not waive circuit court's authority to grant appropriate relief on appeal from district court challenging improper remarks of insured's counsel that insurer could obtain reimbursement from assigned claims facility.

Cases that cite this headnote

**[38]** **Appeal and Error**
    Arguments and conduct of counsel

**Constitutional Law**
    Appeal or other proceedings for review

Insured and health-care providers received ample notice and opportunity to be heard and thus due process on issue raised by automobile insurer's appeal to circuit court to challenge remarks of insured's counsel that insurer could obtain reimbursement from assigned claims

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works. 5

facility; nothing suggested that the circuit court was not fair and impartial. U.S.C.A. Const.Amend. 14.

Cases that cite this headnote

[39]  **New Trial**

👉  Conduct of counsel

Misconduct by a party's attorney that denies another party a fair trial is a basis for granting a new trial. MCR 2.611(A)(1)(a, b).

Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*35**  Richard E. Shaw, Detroit, for Charles Moody.

Law Offices of Nicholas A. Cirino, PLLC (by Nicholas A. Cirino), and Law Offices of Michael S. Cafferty & Associates (by Michael S. Cafferty, Detroit) for Get Well Medical Transport, Progressive Rehab Center, and Carol Reints, Inc.

Anselmi & Mierzejewki, PC, Bloomfield Hills (by Kurt A. Anselmi), for Home Owners Insurance Company.

Michael H. Former and Sheldon L. Miller, Farmington Hills, for Linda Hodge.

Hewson & Van Hellemont, PC, Oak Park (by James F. Hewson and Stacey L. Heinonen), for State Farm Mutual Automobile Insurance Company.

Gross & Nemeth, PLC, Detroit (by James G. Gross), for Auto Club Insurance Association.

Before: MARKEY, P.J., and FITZGERALD and OWENS, JJ.

**Opinion**

MARKEY, P.J.

**\*419**  These consolidated appeals are before this Court for consideration as on leave granted.[1] Each case concerns the jurisdiction of the district court under MCL 600.8301(1) when a plaintiff presents evidence and argument of damages far in excess of the district court's $25,000 amount-in-controversy jurisdictional limit. In Docket No. 301783,

plaintiffs Get Well Medical Transport, Progressive Rehab Center and Carol Reints, Inc., appeal the order of Wayne Circuit Judge Robert Colombo, Jr., reversing a district court judgment in their favor following a jury trial and remanding for a new trial. In Docket No. 301784, plaintiff Charles Moody appeals the same order of Judge Colombo vacating the judgment in Moody's favor because the district court lacked subject-matter jurisdiction and remanding to the district court to either dismiss the case or transfer it to the circuit court. Similarly, in Docket No. 308723, plaintiff Linda C. Hodge appeals the order of Wayne Circuit **\*\*36** Judge Brian R. Sullivan vacating a **\*420** district court judgment in her favor in the amount of $25,000 plus interest following a jury verdict of $85,957 against defendant State Farm Mutual Automobile Insurance Company. We affirm.

**I. FACTS AND PROCEEDINGS**

Moody filed his complaint for no-fault benefits in 36th District Court on September 15, 2008. Paragraph 3 of his complaint alleges that he "claims damages do not exceed $25,000.00." The complaint's prayer for relief sought "damages in whatever amount Plaintiff is found to be entitled not in excess of [$]25,000.00, plus interest, costs, and no-fault attorney fees."

The providers filed their complaint in 36th District Court on June 11, 2009, seeking payment for "reasonably necessary products, services and accommodations" that they provided Moody as a result of the motor vehicle accident. Get Well Medical Transport, Progressive Rehab Center and Carol Reints, Inc., sought no-fault benefits in the amounts, respectively, of $5,604; $14,845; and $2,533.14, for a combined total claim for damages of $21,982.14.

While still awaiting discovery regarding the extent of Moody's claims, Home Owners moved on July 29, 2009, to consolidate Moody's case with that of the providers. An order doing so was entered without objection. Meanwhile, Home Owners filed several motions to compel discovery. The district court finally entered an order compelling signed answers to Homeowners' interrogatories on October 6, 2009, to which Moody responded on October 12, 2009. In his answers to the interrogatories, Moody indicated that, in addition to a $32,447.23 bill from Henry Ford Hospital, he also intended to present to the jury damage claims for over $110,000 in lost wages and over $262,800 in attendant-care benefits.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**\*421** In light of Moody's answers to the interrogatories and subsequent depositions taken just before trial, Home Owners, on the day trial was scheduled to commence, raised the issue of the trial court's subject-matter jurisdiction because it appeared certain Moody intended to claim damages far exceeding the $25,000 jurisdictional limit of the district court under MCL 600.8301(1). Home Owners asserted several arguments, including (1) when Moody's counsel presented argument and evidence of damages in excess of $25,000, the district court would lose jurisdiction, and defendant would move for summary disposition under MCR 2.116(C)(4) (the court lacks jurisdiction of the subject matter); (2) Moody's action could be transferred to circuit court under MCR 2.227(A)(1); and (3) if Moody's counsel were permitted to present argument and evidence of damages in excess of $25,000, Home Owners should be allowed to impeach Moody's claims through evidence or by judicial notice of the fact that the district court's jurisdiction is limited to claims not exceeding $25,000.

The district court ruled that it would not restrict Moody's counsel in the evidence or argument he could present, and that if the jury returned a verdict for Moody in excess of $25,000, it would cure the jurisdictional problem by limiting the judgment to $25,000, exclusive of attorney fees, interest, and costs. Furthermore, the district court ruled that it would not take judicial notice of the district court's jurisdictional limit and that defense counsel could not advise the jury of it. Finally, the district court ruled it would not transfer Moody's action to the circuit court. The district court entered a hand written order that provided: "This action will not be transferred to circuit court. Each plaintiff's complaint is limited to the jurisdictional dollar amount of $25,000 exclusive of attorney **\*\*37** fees, **\*422** interest and costs. Defendant will be precluded from advising [the] jury of [the] court's jurisdictional limits."

During his opening statement, Moody's counsel repeatedly told the jury that if Home Owners were required to pay no-fault benefits, it could obtain reimbursement from the assigned claims facility. After defense counsel's third objection to the comments, the district court ruled it would not preclude the argument but that it would permit defense counsel to argue in its opening statement that Home Owners would not be entitled to reimbursement from the assigned claims facility. And that is what defense counsel did. The providers' counsel supported Moody's counsel on this point in his opening statement, indicating that he understood that

an insurance company could obtain reimbursement from the assigned claims facility if it were determined within one or two years that the company should not have been paying the claim in the first place.

The main issue at trial was whether at the time of the accident Moody was "domiciled in the same household" as his father and stepmother, whom Home Owners insured, or whether Moody lived with his mother in Detroit. The trial extended over three weeks, and Moody's counsel presented evidence of no-fault claims far in excess of $25,000. In addition to the proofs of the $32,447.23 hospital bill from Henry Ford, Moody presented evidence of lost wages of $28,288 to $29,298.28, replacement services of $14,600, and claims of attendant care for $192,720. After presentation of this evidence, Home Owners twice renewed its motion for summary disposition under MCR 2.116(C)(4) because Moody's claims for damages far exceeded the district court's $25,000 jurisdictional limit; the district again denied Home Owners' motions.

**\*423** The jury found against Home Owners on its coverage defense, deciding that Moody lived with his father and stepmother at the time of the accident; that issue has not been appealed. The jury awarded Moody $32,447.23 for the hospital expense. But the jury found that Moody did not sustain any lost wages nor did he incur any attendant-care expenses. The jury further found that Moody's allowable expenses were not overdue. When entering its judgment, the district court reduced the award to $25,000, the court's jurisdictional limit. The jury awarded the providers the amounts that they sought: $5,604 to Get Well, $13,845 to Progressive Rehab, and $2,533.14 to Carol Reints, Inc. Home Owners appealed in the circuit court.

Judge Colombo heard oral argument on Home Owners' appeal on October 19, 2010, and issued a lengthy opinion from the bench. Judge Colombo considered that MCL 600.605 provides that circuit courts have original jurisdiction over "all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court," and that MCL 600.8301(1) provides that the "district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." The circuit court concluded that it was inappropriate for the district court to allow a plaintiff to present evidence of damages greater than the district court's jurisdictional limit, noting that although district courts formerly were permitted to award damages in excess of the limit when a case was remanded from the circuit

court, the statute authorizing that practice, former MCL 600.641, had been repealed. Judge Colombo also noted that Moody was bound by his pleadings, which alleged damages of not more than $25,000. Accordingly, "Moody could not present damage proofs that exceeded $25,000."

 **38  *424 Judge Colombo also rejected Moody's reliance on the principle that a court's subject-matter jurisdiction is determined only by the allegations in the plaintiff's complaint. Instead, Judge Colombo reasoned that a court must at all times question its own jurisdiction over parties, the subject matter of the action, and the limits of the relief that it may grant. Further, when a court determines that it lacks jurisdiction, it should not pursue the matter further except to dismiss the action or transfer it to the proper court. The circuit court opined:

> Once [Home Owners] raised the issue of the district court's jurisdiction, the district court was obliged to determine whether it had subject matter jurisdiction. The district court concluded that it had jurisdiction because it could reduce any verdict to $25,000. This was clearly error on the part of the district court. It had no jurisdiction to try Moody's case when the damage proofs exceeded its jurisdiction.

Judge Colombo also stated he believed that Moody's counsel engaged in forum shopping as a matter of strategy in hopes of having a better opportunity to win on the issue of residence. Judge Colombo summarized his reasons for reversing the judgment for Moody:

> The facts in this case are too compelling to do anything but to set aside the jury verdict and the judgment in this case. Counsel for Moody presented damage proofs of hundreds of thousand dollars [sic] in excess of the district court's jurisdictional amount. His proofs did not comply with his pleadings. He attempted to proceed in district court, even though the district court was without jurisdiction and [he] improperly engaged in forum shopping.... The only appropriate remedy is reversal

of the jury verdict and the judgment under all the circumstances in this case. The case is remanded to the district court to either dismiss the Moody case for lack of jurisdiction or transfer it to [the circuit court] pursuant to MCR 2.227.

 *425 The circuit court also ruled that the judgment for the providers must be reversed and the case remanded for a new trial because the providers' claims were so intertwined with Moody's case for which the district court lacked jurisdiction. The circuit court reasoned that because the providers' case was consolidated with Moody's case, "significant evidence was admitted in the case that normally would not have been admitted in the medical providers' case." The court believed that the presentation of the extra evidence "may have affected the outcome on both the issues of residence and damages."

With respect to Home Owners' claims regarding improper comments by Moody's counsel at trial, Judge Colombo opined that error warranting reversal occurred when Moody's counsel purposefully interjected the irrelevant issue of the assigned claims facility. The court concluded that the cumulative effect of counsel's comments, particularly regarding the assigned claims facility and subrogation, deprived Home Owners of a fair trial. Accordingly, in addition to finding that the district court lacked subject-matter jurisdiction, the circuit court ordered a new trial on the basis that counsel's improper comments deprived Home Owners of a fair trial. Also, for this additional reason, Judge Colombo reversed as to all plaintiffs and ordered a new trial.

The appeal in Docket No. 308723 presents the same central legal issue as in Docket Nos. 301783 and 301784 regarding the district court's jurisdiction under MCL 600.8301(1). Plaintiff Linda C. Hodge brought an action in 36th District Court asserting a first-party no-fault claim and **39 presented proof of damages far in excess of the district court's $25,000 jurisdictional limit. The jury returned a verdict of $85,957 against defendant State *426 Farm Mutual Automobile Insurance Company, and on October 1, 2010, the district court entered a judgment of $25,000 plus interest against State Farm. State Farm appealed in the circuit court, which held a hearing on December 16, 2011. Judge Brian R. Sullivan reversed and issued an order on February 1, 2012, providing in pertinent part that "[t]he amount in controversy in this case was in excess of the $25,000.00" jurisdictional limit of MCL 600.8301. The circuit court ordered that "the

8

jury verdict and subsequent judgment ... is reversed and vacated for the reason that the court lacked jurisdiction over the subject matter because the amount in controversy exceeded the district court's jurisdictional limits contained in MCL 600.8301[.]"

## II. THE DISTRICT COURT'S JURISDICTION

The central issue in all three appeals pertains to the application of MCL 600.8301(1), which provides: "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." Whether the district court has subject-matter jurisdiction on the facts presented is a question of law reviewed de novo. *Hillsdale Co. Senior Servs., Inc. v. Hillsdale Co.,* 494 Mich. 46, 51, 832 N.W.2d 728 (2013). Likewise, the interpretation and application of both statutes and court rules are questions of law that are reviewed de novo. *Id.; Chen v. Wayne State Univ.,* 284 Mich.App. 172, 191, 771 N.W.2d 820 (2009).

[1] [2] [3] [4] We conclude that nothing in MCL 600.8301(1), MCR 2.227(A)(1), or MCR 2.116(C)(4) requires that a court limit its jurisdictional query to the amount in controversy alleged in the pleadings. Here, plaintiffs Moody and Hodge patently claimed damages far in excess of the $25,000 amount-in-controversy limit of the district court's jurisdiction throughout litigation. The district **\*427** court judges presiding over these actions were duty-bound to recognize the limits of their subject-matter jurisdiction, *In re Fraser Estate,* 288 Mich. 392, 394, 285 N.W. 1 (1939),[2] and either dismiss the cases brought by Moody and Hodge or transfer them to the circuit court, *Fox v. Univ. of Michigan Bd. of Regents,* 375 Mich. 238, 242, 134 N.W.2d 146 (1965),[3] and MCR 2.227(A)(1). Because the district court judges failed to either dismiss these cases that were patently outside their subject-matter jurisdiction or transfer them to the circuit court, the subsequent judgments—and on the facts presented here, also the judgment on the providers' claims—are void. *In re Hatcher,* 443 Mich. 426, 438, 505 N.W.2d 834 (1993),[4] *Jackson City Bank & Trust Co. v. Fredrick,* 271 Mich. 538, 544, 260 N.W. 908 (1935),[5] and **\*\*40** *Altman v. Nelson,* 197 Mich.App. 467, 472–473, 495 N.W.2d 826 (1992).[6]

[5] [6] [7] [8] [9] [10] [11] These cases are governed by principles of statutory construction, which apply to both statutes and court **\*428** rules. *Henry v. Dow Chem. Co.,* 484 Mich. 483, 495, 772 N.W.2d 301 (2009); *Brausch*

*v. Brausch,* 283 Mich.App. 339, 352, 770 N.W.2d 77 (2009). "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute." *Ferguson v. Pioneer State Mut. Ins. Co.,* 273 Mich.App. 47, 51, 731 N.W.2d 94 (2006). Similarly, the language used in a court rule and its place within the organization of the Michigan Court Rules is important. *Henry,* 484 Mich. at 495, 772 N.W.2d 301. Thus, when addressing how to construe a statute or a court rule, one must first look to the language used and give the words their plain and ordinary meaning unless defined otherwise. *Lafarge Midwest, Inc. v. Detroit,* 290 Mich.App. 240, 246, 801 N.W.2d 629 (2010); *Ferguson,* 273 Mich.App. at 51–52, 731 N.W.2d 94. In this regard, when words are undefined, one may properly consult a dictionary concerning their plain and ordinary meaning. *Cairns v. East Lansing,* 275 Mich.App. 102, 107, 738 N.W.2d 246 (2007). When the language used in a court rule or statute is clear and unambiguous, no further interpretation is either necessary or permitted. *People v. Lown,* 488 Mich. 242, 254–255, 794 N.W.2d 9 (2011); *Ferguson,* 273 Mich.App. at 52, 731 N.W.2d 94.

The overarching rule of statutory construction is that a court must enforce clear and unambiguous statutory provisions as written. *Johnson v. Recca,* 492 Mich. 169, 175, 821 N.W.2d 520 (2012). Furthermore, when a court interprets a statute, it may not read anything into an unambiguous statute that is not within the Legislature's manifest intent as derived from the words used in the statute itself. *People v. Breidenbach,* 489 Mich. 1, 10, 798 N.W.2d 738 (2011); *Mich. Ed. Ass'n v. Secretary of State* (*on reHeaRing* ), 489 mich. 194, 218, 801 N.W.2D 35 (2011).

The circuit court is the primary court in Michigan having jurisdiction over civil cases. MCL 600.605 provides, **\*429** "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.8301(1) provides for an exception for bringing civil actions in district court "when the amount in controversy does not exceed $25,000.00." The critical phrase "amount in controversy" and the critical word "controversy" are not defined by statute or Michigan caselaw. See *Szyszlo v. Akowitz,* 296 Mich.App. 40, 51, 818 N.W.2d 424 (2012). But this Court has suggested that "amount in controversy" is "based on the damages claimed." *Id.* See also *Etefia v. Credit Technologies, Inc.,* 245 Mich.App. 466, 475, 628 N.W.2d 577 (2001).

The word "amount" clearly refers to a dollar value because the district court's jurisdictional limit is stated in the dollar value of $25,000. The plain and ordinary meaning of "controversy" is confirmed by consulting a dictionary which defines it as "a [usually] prolonged public dispute concerning **41 a matter of opinion," *Random House Webster's College Dictionary* (1996). Also, "controversy" is defined in *The American Heritage Dictionary of the English Language* (new college ed., 1981), as "[a] dispute, especially a lengthy and public one, between sides holding opposing views." Both dictionaries list "argument" as the synonym of "controversy." These dictionaries also define, respectively, "controvert"— the verb version of "controversy"—as "to argue against; dispute; deny; oppose....; debate; [and] discuss," and "[t]o raise arguments against; voice opposition to; deny [and][t]o argue or dispute about; to debate." Also, because the phrase "amount in controversy" concerns a court's jurisdiction, it may have acquired a "peculiar and appropriate meaning in the **430 law," MCL 8.3a, so it is also appropriate consult a legal dictionary. *People v. Steele,* 283 Mich.App. 472, 488 n. 2, 769 N.W.2d 256 (2009). *Black's Law Dictionary* (9th ed), defines "amount in controversy" as "[t]he damages claimed or relief demanded by the injured party in a lawsuit." But *Black's* also defines the word "controversy" to mean "[a] disagreement or a dispute, [especially] in public [or][a] justiciable dispute." *Id.* Likewise, *Black's Law Dictionary* defines "controvert" as "[t]o dispute or contest[.]" *Id.*

**[12]** **[13]** On the basis of these definitions, we conclude that the plain, ordinary, and legal meaning of "amount in controversy" under MCL 600.8301(1) is the amount the parties to a lawsuit dispute, argue about, or debate during the litigation. While the amount in controversy in a lawsuit will most often be determined by reviewing the amount of damages or injuries a party claims in his or her pleadings, the statute does not explicitly state this. Indeed, the statute does not provide any method for determining the amount in controversy. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Breidenbach,* 489 Mich. at 10, 798 N.W.2d 738 (quotation marks and citation omitted). If the Legislature had intended to establish that the limits of the district court's jurisdiction were to be determined solely on the basis of the amount demanded in the complaint, it could easily have done so, but it did not. Rather, the Legislature used the phrase "amount in controversy," which is the dollar value of the damages that are disputed in the lawsuit. Stated otherwise, it is the amount

the parties argue about, debate, or controvert. Here, Moody's pretrial discovery answers, the arguments of Moody's counsel before trial, and the presentation of evidence at trial, all showed that the amount in controversy in that case far exceeded **431 the $25,000 subject-matter jurisdiction of the district court. MCL 600.8301(1). Hodge similarly presented evidence of damages far exceeding the $25,000 subject-matter jurisdiction of the district court. Without subject-matter jurisdiction over Moody's and Hodge's complaints, the only actions the district court judges could have properly taken would have been to dismiss the cases, MCR 2.116(C)(4), or transfer them to the circuit court, MCR 2.227(A)(1). See *Fox,* 375 Mich. at 242, 134 N.W.2d 146; *Yee v. Shiawassee Co. Bd. of Comm'rs,* 251 Mich.App. 379, 399, 651 N.W.2d 756 (2002).

We find appellants' arguments to the contrary unpersuasive. First, appellants cite several cases for the proposition that subject-matter jurisdiction is determined only by the allegations in the plaintiff's complaint and prayer for relief. See *Fox v. Martin,* 287 Mich. 147, 151, 283 N.W. 9 (1938) ("Jurisdiction does not depend upon the facts, but upon the allegations."); *Zimmerman v. Miller,* 206 Mich. 599, 604–605, 173 N.W. 364 (1919); *Trost v. Buckstop* **42 *Lure Co., Inc.,* 249 Mich.App. 580, 586, 644 N.W.2d 54 (2002) (" 'A court's subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint.' "), quoting *Grubb Creek Action Comm. v. Shiawassee Co. Drain Comm'r,* 218 Mich.App. 665, 668, 554 N.W.2d 612 (1996); and *Altman,* 197 Mich.App. at 472, 495 N.W.2d 826 ("Jurisdiction always depends on the allegations and never upon the facts."). None of these cases is factually similar to the ones at hand—in which a plaintiff has set forth in the complaint a request for relief up to the $25,000 jurisdictional limit of the district court, knowing that the true amount sought exceeded $25,000, and then presented to the jury evidence of and argument for damages far exceeding the jurisdictional limit of the court. Rather, the cited cases address the point in time when a court's jurisdiction is initially determined and also whether the **432 subject matter of the suit other than the amount in controversy is cognizable in the circuit court. See *Fox,* 287 Mich. at 153, 283 N.W. 9 (effort to foreclose on an expired lien); *Trost,* 249 Mich.App. at 587, 644 N.W.2d 54 (libel action); *Grubb Creek Action Comm.,* 218 Mich.App. at 666, 554 N.W.2d 612 (review of drain board's determination of necessity); and *Altman,* 197 Mich.App at 473–474, 495 N.W.2d 826 (a paternity and custody action). In *Zimmerman,* for instance, the issue was whether the circuit court lost jurisdiction because the plaintiff

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

10

alleging breach of contract failed to establish damages more than the court's jurisdictional minimum. The Court held on the basis of longstanding caselaw that the "jurisdiction of the court is determined by the amount demanded in the plaintiff's pleadings, not by the sum actually recoverable or that found by the judge or jury on the trial...." *Zimmerman,* 206 Mich. at 604–605, 173 N.W. 364. Properly understood, these cases stand for the proposition that what the plaintiff alleges he or she will be able to prove at trial, not what the fact-finder later determines (or the amount entered in a judgment), establishes the amount in controversy for the purpose of determining the court's subject-matter jurisdiction.

This principle has ancient roots in Michigan, sprouting from *Strong v. Daniels,* 3 Mich. 466, 471 (1855), which held "upon general principles ... that jurisdiction must be determined from the record, and, where it depends on amount, by the sum claimed in the declaration or writ." The Court in a later case stated the rule that "the damages claimed in the declaration or process, and not the amount found by the court or jury upon trial, must be the test of jurisdiction...." *Inkster v. Carver,* 16 Mich. 484, 487–488 (1868). So, according to these early cases, determining a court's jurisdiction at the outset on the basis of what the plaintiff believed he or she could prove was "the only practical rule...." *Id.* at 488.

**[14] [15] *433** The rule requiring the determination of the jurisdictional amount on the basis of the plaintiff's allegations does not support, as here, a plaintiff's artfully pleading a claim for relief ostensibly within the limits of the district court's subject-matter jurisdiction but then placing in dispute through evidence and argument at trial an amount of damages much greater than the court's jurisdictional limit. Furthermore, appellants' contention that the subject-matter jurisdiction of the court may be determined by the amount ultimately awarded by the court, i.e., by limiting judgment to the jurisdictional amount, is contrary to the longstanding rule adopted in *Strong* of determining the subject-matter jurisdiction of the court by the amount in controversy before trial and the determination of the facts by a judge or jury. We recognize dicta in *Strong* about a jury's ability to award more than the ***43** jurisdictional limit of the court, [7] but the *Strong* Court's holding was that jurisdiction is determined using the amount claimed *before* the facts are determined. Moreover, the implication of appellants' argument—that subject-matter jurisdiction may be conferred by artful pleading and by limiting a judgment to the district court's jurisdictional limit after the facts are determined—violates the principle that the parties to a lawsuit cannot confer

jurisdiction on a court that does not have it. *In re Hatcher,* 443 Mich. at 433, 505 N.W.2d 834. A plaintiff may not merely say some magic words and confer jurisdiction where it otherwise would not exist. In fact, a "court must make its own determination regarding the ***434** existence of a statutory basis for jurisdiction." *Id.* And the court must make this jurisdictional determination *before* the fact-finding of the trial has concluded. See *Fox,* 287 Mich. at 151–152, 283 N.W. 9; *Zimmerman,* 206 Mich. at 604–605, 173 N.W. 364.

Appellants cite other cases regarding federal district court jurisdictional limits, the removal of state court actions to the federal district court, and cases involving entry of default judgments that are simply not relevant to interpreting MCL 600.8301(1) or the Michigan Court Rules. Furthermore, the case of *Brooks v. Mammo,* 254 Mich.App. 486, 489–492, 494 n. 3, 657 N.W.2d 793 (2002), had such a unique procedural history—including the repeal and amendment of pertinent statutes and a trial court that declined to exercise jurisdiction that it actually possessed—that the Court itself referred to *Brooks* as presenting a "factual oddity." Therefore, *Brooks* has virtually no value in deciding the issues presented in these appeals, which involve a very different scenario. The case of *Krawczyk v. Detroit Auto Inter–Ins. Exch.,* 117 Mich.App. 155, 323 N.W.2d 633 (1982), rev'd in part on other grounds 418 Mich. 231, 341 N.W.2d 110 (1983), also does not assist appellants' argument. The defendant in *Krawczyk* did not initially contend that the district court lacked subject-matter jurisdiction, only that judgment could not be entered for more than the district court's jurisdictional limits. *Krawczyk,* 117 Mich.App. at 162, 323 N.W.2d 633. The Court held that certain benefits were not recoverable, thus reducing the judgment amount, exclusive of interest, costs, and attorney fees, to within the district court's jurisdictional limits. *Id.* at 163, 323 N.W.2d 633. Our Supreme Court affirmed in part and reversed in part this Court's decision regarding recoverable no-fault benefits, but it did not address the issue of the district court's jurisdictional limits. *Krawczyk,* 418 Mich. at 236, 341 N.W.2d 110.

***435** We also find that *Clohset v. No Name Corp. (On Remand),* 302 Mich.App. 550, 840 N.W.2d 375 (2013), does not alter our analysis of the issues presented in these cases because it is factually unique and addresses the district court's "more specific" equitable jurisdiction regarding "claims arising under chapter 57 of the Revised Judicature Act (RJA), MCL 600.5701 *et seq.,* which concerns proceedings to recover possession of premises." *Clohset,* 302 Mich.App. at 560, 840 N.W.2d 375. The Court held that because the

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.    11

district court's equitable jurisdiction under MCL 600.8302(1) and (3) was invoked, that specific jurisdictional grant took precedence over the more general jurisdictional grant **44 provided in MCL 600.8301(1). *Clohset,* 302 Mich.App. at 561–562, 840 N.W.2d 375. Therefore, the Court held the district court had jurisdiction to enter the parties' stipulated consent judgment even though it would have otherwise exceeded the jurisdictional limit of MCL 600.8301(1). *Id.* at 562–563, 840 N.W.2d 375. The court reasoned that if the district court erred entering the stipulated judgment, the defendant could not collaterally attack the error "in the 'exercise of jurisdiction.' " *Clohset,* 302 Mich.App. at 564, 840 N.W.2d 375, citing *Bowie v. Arder,* 441 Mich. 23, 49, 490 N.W.2d 568 (1992), quoting *Jackson City Bank,* 271 Mich. at 545, 260 N.W. 908. The *Clohset* court further noted that a consent judgment is different from a judgment after trial because it represents the agreement of the parties, and, absent fraud, mistake, or unconscionable advantage, it cannot be appealed or set aside without the consent of the parties. *Id.* at 565–566, 572–573, 840 N.W.2d 375. Finally, the Court found applicable the principle that a party may not participate in and harbor error. *Id.* at 566–567, 840 N.W.2d 375. In sum, because the present cases do not involve summary proceedings, the equitable jurisdiction of the district court under MCL 600.8302, or the entry of a stipulated consent judgment, *Clohset* has no application to the circumstances presented in the instant cases.

 [16]  **436 Appellants' arguments also fail when considered in light of pertinent court rules. Before the trial of these cases, it was patent to the parties and the district court judges that Moody and Hodge were asserting claims for damages far in excess of the district court's jurisdictional limit of $25,000. Given that "a court is continually obliged to question sua sponte its own jurisdiction over a person, the subject matter of an action, or the limits of the relief it may afford," *Yee,* 251 Mich.App. at 399, 651 N.W.2d 756, the district court judges should have either dismissed these cases or transferred them to circuit court pursuant to MCR 2.227(A)(1), which provides:

> When the court in which a civil action is pending *determines* that it lacks jurisdiction of the subject matter of the action, but that some other Michigan court would have jurisdiction of the action, the court may order the action transferred to the other court in a place where venue would be proper. If the question of jurisdiction is raised by the

court on its own initiative, the action may not be transferred until the parties are given notice and an opportunity to be heard on the jurisdictional issue. [Emphasis added.]

The court rule provides no particular manner in which a court "determines that it lacks jurisdiction of the subject matter of the action...." Rather, it only provides that if the court acts sua sponte regarding its determination, the parties must be "given notice and an opportunity to be heard on the jurisdictional issue." MCR 2.227(A)(1). Further, the court rule plainly requires that the court may consider matters other than the pleadings when considering whether it has subject-matter jurisdiction and whether it must either dismiss or transfer a case to court having jurisdiction. MCR 2.227(A)(1) does not restrict a court in its jurisdictional determination to a review of the pleadings, and such a requirement may not be read into the rule when not derived from its manifest intent as evidenced by the  *437 words of the rule itself. See *Breidenbach,* 489 Mich. at 10, 798 N.W.2d 738; *Mich. Ed. Ass'n,* 489 Mich. at 218, 801 N.W.2d 35; *Henry,* 484 Mich. at 495, 772 N.W.2d 301.

Also pertinent is MCR 2.116(C)(4), which provides that summary disposition may be entered when "[t]he court lacks jurisdiction of the subject matter." Home **45 Owners moved for summary disposition under this rule in Moody's case after he presented evidence of damages far in excess of the district court's subject-matter jurisdictional limit of $25,000. A motion brought on the grounds of lack of subject-matter jurisdiction may be brought at any time. MCR 2.116(D)(3); *Hillsdale Co. Senior Servs.,* 494 Mich. at 51 n. 3, 832 N.W.2d 728. The determination whether the court has jurisdiction when a motion under MCR 2.116(C)(4) is brought is explicitly not restricted to the pleadings alone. MCR 2.116(G)(5) provides (with emphasis added): "The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, *must be considered by the court* when the motion is based on subrule (C)(1)-(7) or (10)." See also *Toaz v. Dep't of Treasury,* 280 Mich.App. 457, 459, 760 N.W.2d 325 (2008); *L & L Wine & Liquor Corp. v. Liquor Control Comm.,* 274 Mich.App. 354, 356, 733 N.W.2d 107 (2007). Because Moody and Hodge claimed and presented evidence of damages far in excess of $25,000, "it was the [district] court's duty to take notice of its lack of subject-matter jurisdiction and dismiss [the cases] pursuant to MCR 2.116(C)(4)." *Yee,* 251 Mich.App. at 399, 651 N.W.2d 756.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

To summarize, there is nothing in MCL 600.8301(1), MCR 2.227(A)(1), or MCR 2.116(C)(4) that limits the district court's duty-bound jurisdictional query to the pleadings. Plaintiffs Moody and Hodge plainly claimed damages far in excess of the $25,000 "amount in controversy" **438 limit of the district court's subject-matter jurisdiction. The district court judges were required to either dismiss each plaintiff's case or transfer it to the circuit court. See *Fox,* 375 Mich. at 242, 134 N.W.2d 146; MCR 2.227(A)(1); MCR 2.116(C)(4). Because the district court judges failed to do either, the subsequent district court judgments—including that with respect to the providers' claims that were consolidated with those of Moody—are void for want of subject-matter jurisdiction. *Fox,* 375 Mich. at 242, 134 N.W.2d 146; *Jackson City Bank & Trust Co.,* 271 Mich. at 544, 260 N.W. 908.

### III. DOCKET NO. 301783

The providers argue that they may bring a direct claim against Home Owners for no-fault benefits. See *Lakeland Neurocare Ctrs. v. State Farm Mut. Auto. Ins. Co.,* 250 Mich.App. 35, 645 N.W.2d 59 (2002). Furthermore, the providers note that even their combined claims did not exceed the court's $25,000 jurisdictional limit and that it was Home Owners that moved to consolidate the providers' claims with those of Moody. Therefore, the providers argue, under the "invited error" doctrine, see *People v. Jones,* 468 Mich. 345, 352 n. 6, 662 N.W.2d 376 (2003), Home Owners cannot complain of any taint from consolidation of the providers' case with Moody's case as the circuit court held.

 **[17]**  We find that the providers* invited-error argument is without merit. In *Jones,* 468 Mich. at 352 n. 6, 662 N.W.2d 376, the Court noted that " '[i]nvited error' is typically said to occur when a party's own affirmative conduct directly causes the error." Under the invited-error doctrine, appellate relief is generally not available because "when a party invites the error, he waives his right to seek appellate review, and any error is extinguished." *Id.* A related rule is that "error requiring reversal may only be **439 predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v. LeGrow,* 258 Mich.App. 175, 210, 670 N.W.2d 675 (2003). See also **46 *Smith v. Musgrove,* 372 Mich. 329, 337, 125 N.W.2d 869 (1964) ("Error to be reversible must be error of the trial judge; not error to which the aggrieved appellant has contributed by planned or neglectful omission of action on his part.").

 **[18]**   **[19]**   Waiver is the intentional relinquishment or abandonment of a known right. *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.,* 469 Mich. 362, 374, 666 N.W.2d 251 (2003). Here, Home Owners moved to consolidate the providers' case with Moody's case before discovery disclosed that Moody's claims for damages were far in excess of the district court's jurisdictional limit. After discovery disclosed that the amount in controversy with respect to Moody's claims exceeded the district court's jurisdictional limit, Home Owners brought the issue to the attention of the court and requested that Moody's claims be transferred to circuit court. Further, when Moody's counsel presented evidence of claims exceeding the court's jurisdictional limit, Home Owners moved for summary disposition under MCR 2.116(C)(4) because Moody claimed damages far in excess of the district court's $25,0000 jurisdictional limit. Thus, as a factual matter, Home Owners did not waive its jurisdictional arguments and preserved its claim that the district court erred by denying severance of Moody's claims or by not dismissing them.

 **[20]**   **[21]**   **[22]**   Moreover, defects in subject-matter jurisdiction cannot be waived and may be raised at any time. *Hillsdale Co. Senior Servs.,* 494 Mich. at 51 n. 3, 832 N.W.2d 728. Because subject-matter jurisdiction "concerns the court's power to hear a case, it is not subject to waiver." **440 *Lown,* 488 Mich. at 268, 794 N.W.2d 9. In addition, a court must at all times be cognizant of its own jurisdiction and sua sponte question whether it has jurisdiction over a person or the subject matter of an action. *Straus v. Governor,* 459 Mich. 526, 532, 592 N.W.2d 53 (1999); *Yee,* 251 Mich.App. at 399, 651 N.W.2d 756. "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox,* 375 Mich. at 242, 134 N.W.2d 146.

In the providers' case, based on pretrial evidence, it was patently obvious before the trial began, to the district court and to the parties, that Moody's claims for damages far exceeded the $25,000 amount-in-controversy jurisdictional limit of MCL 600.8301(1). Given the clear evidence supporting the determination that Moody's claims for damages exceeded the district court's subject-matter jurisdiction, the district court should have dismissed Moody's claims. *Fox,* 375 Mich. at 242, 134 N.W.2d 146. Alternatively, under the Michigan Court Rules, the district court could have transferred Moody's case to the circuit

court. MCR 2.227(A)(1). Because the district court failed to either dismiss Moody's claims or transfer them to circuit court, the subsequent proceedings, including the consolidated providers' claims, were void. *Fox,* 375 Mich. at 242, 134 N.W.2d 146.

[23] We also reject the providers' argument that their claims may be saved by severing them after the fact of trial and judgment from the extra-jurisdictional claims of Moody. While the providers may bring an independent cause of action against a no-fault insurer, the providers' claims against Home Owners are completely derivative of and dependent on Moody's having a valid claim of no-fault benefits against Home Owners. Specifically, the providers' claims are dependent on establishing Moody's claim that he suffered "accidental bodily injury arising out of the ... use of a motor **\*441** vehicle," MCL 500. 3105(1), that they provided "reasonably necessary products, services and accommodations for [Moody's] care, recovery, or rehabilitation," MCL 500.3107 (1)(a), **\*\*47** and that at the time of the accident, Moody was "domiciled in the same household" as his father who was insured by Home Owners, MCL 500.3114 (1). The providers' and Moody's claims with respect to the requisites of Home Owners' liability are therefore identical. Because there is an identity between Moody's claims and those of the providers and because the claims were consolidated for trial, we consider them merged for the purpose of determining the amount in controversy under MCL 600.8301(1). The providers cite *Boyd v. Nelson Credit Ctrs., Inc.,* 132 Mich.App. 774, 780–781, 348 N.W.2d 25 (1984), for the proposition that the claims of individual plaintiffs may not be aggregated to satisfy the circuit court's jurisdictional minimum amount in controversy. We note that *Boyd* has precedential effect under the rule of stare decisis, MCR 7.215(C)(2), but because it was decided before November 1990, *Boyd* is not binding precedent, MCR 7.215(J)(1). Further, because the providers' claims are derivative of Moody's claims, we find applicable the exception noted in *Boyd* that permits aggregating the claims of a single plaintiff for the purpose of determining whether a court has subject-matter jurisdiction because the amount-in-controversy limitation is satisfied or, as here, exceeded. *Boyd,* 132 Mich.App. at 781, 348 N.W.2d 25.

This analysis is also consistent with the general rule that when the claims of multiple parties are consolidated to facilitate the presentation of proofs, the cases are not merged into one cause. They retain their own separate identities. See *Armstrong v. Commercial Carriers, Inc.,* 341 Mich. 45, 52, 67 N.W.2d 194 (1954). But this Court has observed that when cases are consolidated **\*442** under MCR 2.505(A) because of "a substantial and controlling common question of law or fact," the "court rule is silent with regard to whether the consolidated cases are effectively merged into a single case." *Chen,* 284 Mich.App. at 195, 771 N.W.2d 820. The Court in *Chen,* citing 3 Longhofer, Michigan Court Rules Practice (5th ed.), § 2505.3, p. 79, discussed two situations. In one, the consolidated cases are ordered tried together " 'but each retains its separate character and requires the entry of a separate judgment.' " *Chen,* 284 Mich.App. at 195, 771 N.W.2d 820, quoting Longhofer, § 2505.3, p. 79. But in the other situation, when actions that are " '*normally* between the same parties' " are consolidated, the " 'actions are joined together to form a single action in which a single judgment is entered.' " *Chen,* 284 Mich.App. at 195, 771 N.W.2d 820, quoting Longhofer, § 2505.3, p. 79 (emphasis added). This latter situation exists "where several actions are pending between the same parties stating claims which could have been brought in separate counts of a single claim." *People ex rel. Conservation Director v. Babcock,* 38 Mich.App. 336, 342, 196 N.W.2d 489 (1972).

[24] [25] Here, there is virtual identity between the providers' and Moody's claims, and Moody could have brought all the claims in a single case in which a single judgment was entered. Indeed, it is Moody's claim against Home Owners that the providers are allowed to assert because the no-fault act states that "benefits are payable to or for the benefit of an injured person," MCL 500.3112. See *Lakeland Neurocare Ctrs.,* 250 Mich.App. at 38–40, 645 N.W.2d 59. But the providers' claims actually belong to Moody because "the right to bring an action for personal protection insurance [PIP] benefits, including claims for attendant care services, belongs to the injured party." *Hatcher v. State Farm Mut. Auto. Ins. Co.,* 269 Mich.App. 596, 600, 712 N.W.2d 744 (2006). Thus, the injured party may waive by agreement his or her claim against **\*443** an insurer for no-fault benefits, **\*\*48** and a service provider is bound by the waiver. See *Mich. Head & Spine Institute, PC v. State Farm Mut. Auto. Ins. Co.,* 299 Mich.App. 442, 447–449, 830 N.W.2d 781 (2013). If an injured party waives a PIP claim, a service provider's remedy is to seek payment from the injured person. *Id.* at 449–450, 830 N.W.2d 781.

We conclude on the basis of the foregoing analysis that there is such an identity between the providers' and Moody's claims that consolidation for trial resulted in merging the claims for purpose of determining the amount in controversy

under MCL 600.8301(1). Because the providers' claims are derivative of Moody's claims, the consolidated claims are the equivalent of a single plaintiff asserting multiple claims against a single defendant. See *Boyd,* 132 Mich.App. at 781, 348 N.W.2d 25.

In sum, Home Owners did not waive its objection to the district court's jurisdiction by initially moving to consolidate the claims of Moody and the providers. The fact that the providers' combined claims were within the district court's $25,000 jurisdictional limit does not cure the jurisdictional defect arising from consolidating the providers' claims with those of Moody given that the amount in controversy with regard to the consolidated claims clearly exceeded the district court's $25,000 subject-matter jurisdiction. See MCL 600.8301(1). The entire judgment that included both the providers' and Moody's claims was void. See *Fox,* 375 Mich. at 242, 134 N.W.2d 146; *Jackson City Bank & Trust Co.,* 271 Mich. at 544, 260 N.W. 908. Also, as discussed next, the circuit court did not err by finding that Home Owners was denied a fair trial by counsel's improper remarks, which independently warranted reversal and remand for a new trial concerning the providers' claims. See *Reetz v. Kinsman Marine Transit Co.,* 416 Mich. 97, 100–103, 330 N.W.2d 638 (1982).

### *444 IV. DOCKET NOS. 301783 AND 301784: COUNSEL MISCONDUCT

#### A. PRESERVATION

[26]   Moody and the providers argue that Home Owners failed to preserve this issue for appeal and, in fact, waived the issue. Appellants contend that while Home Owners asserted in the trial court and on appeal in the circuit court that alleged attorney misconduct entitled it to a directed verdict, Home Owners did not request a new trial in either court. We disagree.

[27]   Contrary to appellants' argument, Home Owners preserved for appeal the issue of Moody's counsel's improper remarks to the jury when Home Owners objected and obtained a ruling on the issue from the trial court. Generally, an issue is properly preserved if it is raised before, addressed by, or decided by the lower court or administrative tribunal. *Gen. Motors Corp. v. Dep't of Treasury,* 290 Mich.App. 355, 386, 803 N.W.2d 698 (2010). And, in *Reetz,* 416 Mich. at 101–102, 330 N.W.2d 638, the Court referred to the appellate

preservation requirement as the "no objection—no ruling—no error presented" rule. *Reetz* could be read as generally requiring a request for a curative instruction or a motion for a mistrial to preserve appellate review of remarks by counsel. But appellate review without such actions may be granted when counsel's remarks are so improper that they might have denied a party a fair trial. *Id.* at 100, 330 N.W.2d 638. Thus, "incurable errors are not shielded from appellate review because an attorney fails to request what in that case would be a futile instruction." *Id.* at 101, 330 N.W.2d 638.

**\*\*49   In these cases, the district court judge abdicated both her responsibility to control the trial proceedings, MCR 2.513(B), and to instruct the jury regarding the law, MCR 2.512(B). See *Reetz,* 416 Mich. at 103 n. 9, 330 N.W.2d 638 ("[T]he **\*445** trial court has a duty to assure that all parties who come before it receive a fair trial. Consequently, if counsel exceeds the proper bounds of argument, a judge should interrupt to correct counsel and take any curative measures which are necessary."); *Badalamenti v. William Beaumont Hosp–Troy,* 237 Mich.App. 278, 293, 602 N.W.2d 854 (1999) ("The trial court has a duty to assure that the parties before it receive a fair trial."). It is apparent from the record that the district court judge presiding over Moody's case simply allowed Moody's counsel to present conflicting views on an irrelevant issue and that a defense request for a curative instruction would have been futile. Although a motion for a mistrial would have been appropriate, it was not mandatory. *Reetz,* 416 Mich. at 102, 330 N.W.2d 638. As a result, this record demonstrates that Home Owners' counsel sufficiently preserved for appellate review the issue of improper remarks of counsel.

#### B. STANDARD OF REVIEW

[28]   [29]   [30]   [31]   [32]   Appellate review of claims of misconduct by counsel is de novo to determine whether a party was denied a fair trial. See *Reetz,* 416 Mich. at 100, 330 N.W.2d 638. Analysis of such claims requires two steps: (1) did error occur and (2) does it require reversal. *Id.* at 102–103, 330 N.W.2d 638; *Hunt v. Freeman,* 217 Mich.App. 92, 95, 550 N.W.2d 817 (1996). "A lawyer's comments will usually not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial or where counsel's remarks were such as to deflect the jury's attention from the issues involved and had a controlling influence on the verdict." *Ellsworth v. Hotel Corp. of America,* 236 Mich.App. 185, 191, 600

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                    15

N.W.2d 129 (1999). Stated otherwise, "[r]eversal is required only where the prejudicial statements of an attorney reflect a studied **\*446** purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved." *Hunt,* 217 Mich.App. at 95, 550 N.W.2d 817. Proper instructions to the jury will cure most, but not all, misconduct by counsel. See *Reetz,* 416 Mich. at 106, 330 N.W.2d 638.

On this issue, the circuit court sitting in its appellate capacity also made a pertinent finding of fact: "Counsel for Moody purposely injected an irrelevant issue to prejudice [Home Owners] and to erroneously suggest to the jury that [Home Owners] may not be liable for any of the claims and can recover from a third-party source." A lower court's finding of fact is reviewed on appeal for clear error. MCR 2.613(C). "A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *Hughes v. Almena Twp.,* 284 Mich.App. 50, 60, 771 N.W.2d 453 (2009).

### C. DISCUSSION

 **[33]** **[34]** **[35]** **[36]** Based on our determination that the judgment entered in these cases is void, this issue may be moot. An issue is moot when a judicial determination cannot have any practical legal effect on the existing controversy. *People v. Richmond,* 486 Mich. 29, 34–35, 782 N.W.2d 187 (2010). But this Court "may review a moot issue if it is publicly significant and likely to recur, yet may evade judicial review." *Gen. Motors Corp.,* 290 Mich.App. at 386, 803 N.W.2d 698. That is the case here. We conclude that the circuit court did not clearly err regarding the facts and did not commit legal error by concluding that the improper remarks of Moody's counsel, in **\*\*50** which the providers' counsel joined, denied Home Owners a fair trial, thus warranting reversal and remand for a new trial.

 **\*447** Moody's appellate counsel concedes for the purposes of this appeal that his trial counsel's comments regarding the assigned claims facility were " either wrong or irrelevant." We agree that counsel's arguments were both wrong and irrelevant. Home Owners' policy insuring Moody's father requires it to pay Moody PIP benefits if Moody were determined to be "domiciled in the same household" as his father. MCL 500.3114(1). The assigned claims facility is not liable for no-fault benefits unless

no personal protection insurance is applicable to the injury, no personal protection insurance applicable to the injury can be identified, the personal protection insurance applicable to the injury cannot be ascertained because of a dispute between 2 or more automobile insurers concerning their obligation to provide coverage or the equitable distribution of the loss, or the only identifiable personal protection insurance applicable to the injury is, because of financial inability of 1 or more insurers to fulfill their obligations, inadequate to provide benefits up to the maximum prescribed. [MCL 500.3172(1).]

Furthermore, the insurer to which a claim is assigned, if it pays benefits, "is entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility." *Id.*

This record supports that the circuit court did not clearly err by holding that Moody's counsel "purposely injected an irrelevant issue to prejudice [Home Owners] and to erroneously suggest to the jury that [Home Owners] may not be liable for any of the claims and can recover from a third-party source." This finding warrants granting a new trial. See *Ellsworth,* 236 Mich.App. at 191, 600 N.W.2d 129; *Hunt,* 217 Mich.App. at 95, 550 N.W.2d 817. The district court judge "failed to instruct the jury to ignore these references **\*448** and the references were so numerous that it is doubtful any instruction would have been effective." *Reetz,* 416 Mich. at 106, 330 N.W.2d 638.

 **[37]** **[38]** As noted already, appellants' arguments regarding preservation fail. Appellants' arguments regarding waiver and due process must also fail. Home Owners did not and could not waive the circuit court's authority to grant appropriate relief on appeal of improper remarks of counsel that deny a fair trial. Although Home Owners requested in the district court and on appeal to the circuit court that a verdict be directed in its favor, rather than requesting a new trial, the underlying issue of counsel misconduct was nonetheless preserved and presented on appeal. Appellants' contention that they were denied due process regarding this issue is without merit. The essential requisites of procedural due process are adequate notice, an opportunity to be heard,

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

and a fair and impartial tribunal. *Hughes,* 284 Mich.App. at 69, 771 N.W.2d 453. Appellants received ample notice and opportunity to be heard on this issue, and nothing suggests that the circuit court was not fair and impartial. Thus, appellants were not denied due process of law.

**[39]** Moreover, the circuit court possessed the authority to grant a new trial. MCR 7.112 provides that in its appellate capacity "the circuit court may grant relief as provided in MCR 7.216," which in turn provides in pertinent part that the Court of Appeals may, "in its discretion, and on the terms it deems just" enter "any judgment or order or grant further or different relief as the case may require[.]" MCR 7.216(A) (7). Misconduct by a party's attorney that denies another party a fair **\*\*51** trial is a basis for granting a new trial. See MCR 2.611(A)(1)(a) and (b); *Reetz,* 416 Mich. at 100, 330 N.W.2d 638; *Badalamenti,* 237 Mich.App. at 289–290, 602 N.W.2d 854. Consequently, we **\*449** affirm the circuit court's alternative basis for granting Home Owners relief in these cases.

## V. CONCLUSION

In all three cases, we affirm the circuit court's ruling that the district court lacked subject-matter jurisdiction under MCL 600.8301(1). Consequently, the district court judgments are void, and we affirm the circuit court orders vacating those judgments.

We also hold that all no-fault claims for benefits due a single injured party based on the same accidental injuries must be aggregated for the purpose of determining compliance with the district court's subject-matter jurisdiction under MCL 600.8301(1). Consequently, we affirm the circuit court's order vacating the judgment for the providers in Docket No. 301783.

Finally, we affirm the circuit court's determination in Docket Nos. 301783 and 301784 that counsel misconduct denied Home Owners a fair trial and independently warranted reversal and remand for new trial.

We remand to the circuit court for further proceedings consistent with this opinion. As the prevailing parties, appellees may tax costs under MCR 7.219. We do not retain jurisdiction.

FITZGERALD and OWENS, JJ., concurred with MARKEY, P.J.

**All Citations**

304 Mich.App. 415, 849 N.W.2d 31

Footnotes

1    See *Hodge v. State Farm Mut. Auto. Ins. Co.,* 493 Mich. 937, 826 N.W.2d 730 (2013); *Moody, Getwell Med. Transp. v. Home Owners Insurance Company,* 491 Mich. 923, 812 N.W.2d 770 (2012). This Court entered an order on April 3, 2013, consolidating the appeal in Docket No. 308723 with those in Docket Nos. 301783 and 301784.

2    "Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding." *Fraser,* 288 Mich. at 394, 285 N.W. 1.

3    "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox,* 375 Mich. at 242, 134 N.W.2d 146.

4    "[A] proven lack of subject matter jurisdiction renders a judgment void." *Hatcher,* 443 Mich. at 438, 505 N.W.2d 834.

5    "When there is a want of jurisdiction over the parties, or the subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction, and consequently its proceedings may be questioned collaterally as well as directly." *Jackson City Bank,* 271 Mich. at 544, 260 N.W. 908.

6    "When there is a want of jurisdiction over the parties or the subject matter, no matter what formalities may have been taken by the trial court, the action is void because of its want of jurisdiction." *Altman,* 197 Mich.App. at 472–473, 495 N.W.2d 826.

7    The Court opined: "It is well settled in actions commenced before a justice of the peace, that the test of jurisdiction is the sum demanded in the writ or declaration, and the justice will not be ousted of his jurisdiction by the jury returning a verdict, or by proof of damages beyond his jurisdiction. In such case the excess may be remitted, and judgment rendered for the balance." *Strong,* 3 Mich. at 473.

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                    18