# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT AND (II) REQUIRING THE WITHDRAWAL WITH PREJUDICE OF THE AUGUST 2, 2013, GRIEVANCE FILED BY THE SENIOR ACCOUNTANTS, ANALYSTS, AND APPRAISERS ASSOCIATION ON BEHALF OF CEDRIC COOK

The City of Detroit, Michigan ("City"), by its undersigned counsel, files its Motion for Entry of an Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of the August 2, 2013, Grievance Filed by the Senior Accountants, Analysts, and Appraisers Association on Behalf of Cedric Cook ("Motion"). In support of this Motion, the City respectfully states as follows:

## I.  Introduction

1.      Cedric Cook ("Cook") submitted a ballot voting to accept the City's bankruptcy plan. As a result, pursuant to the plan's release provision, Cook released, waived and discharged all claims in any way relating to the City that arose on or before the Effective Date, including the grievance that his union filed on his behalf in August 2013. Consequently, the grievance must be dismissed with prejudice because filing and continuing to prosecute the grievance violates the injunction and release set forth in the City's confirmed bankruptcy plan. The grievance should be dismissed for the additional reason that it was discharged under the plan. Because Cook will not withdraw the grievance, the City has no choice but to seek an order barring and permanently enjoining Cook and his union from asserting and prosecuting the claims described in the grievance.

## II.   Background

### A.   Cook's Repeated Violations of the City's Information Technology Services Department's Rules of Conduct

2.     Cook was an employee of the City's Information Technology Services Department ("ITSD"). Cook worked at the ITSD's help desk where his job responsibilities included answering phone calls. Ex. 6A, Humphries Pearson Dec. ¶ 3. Since May 2011, Cook was repeatedly advised both verbally and in writing that his work performance was substandard and that it was being monitored. *Id.* ¶ 3. On several occasions, Cook was provided copies of work performance reports which showed that he was not accepting help desk calls even though he was logged into the City's system. *Id.* ¶ 4. In late 2011 or early 2012, the ITSD provided Cook with a written summary of his unsatisfactory work performance. *Id.* This summary shows that during 2011, Cook failed to accept help desk calls approximately 80% of the time he was logged into the City's system. *Id.*

3.     Cook's work performance did not improve in 2012. On August 13, 2012, Mr. Charles Dodd, the director of the ITSD, wrote to Cook stating "Cedric, please make sure that you are present and working the help desk during work hours. I know you have pension on Weds, so we will cover the help desk that day, all other days, you are expected to be logged into the helpdesk." Ex. 6B.

4.     That same day, Cook was provided with a copy of the ITSD Rules of Conduct ("Rules of Conduct") because Cook was away from his work area for an extended period of time despite having logged in at 7:48 a.m. Ex. 6A, Humphries Pearson Dec. ¶ 5.

5.     The Rules of Conduct identify five groups of prohibited conduct and a suggested disciplinary action each time an employee engages in prohibited conduct. For example, Group II identifies the following as prohibited conduct: "Leaving the Work Area: Failure to obtain the

permission of the supervisor prior to leaving the designated work area."  The following is the suggested disciplinary action for Group II offenses:

>**First Offense – Written Reprimand**.
>
>**Second Offense – Substantial Suspension**
>
>**Third Offense – Discharge**

*Id.*

6.      Group IV identifies the following as prohibited conduct: "<u>Neglect of Duty</u>: Wanton or willful neglect in the performance of assigned duties or in the care, use or custody of any City property.  Abuse, or deliberate destruction in any manner of City property, tools, equipment or the property of employees."  *Id.*  The suggested disciplinary action for Group IV is: "**First Offense – Discharge.**" *Id.*

7.      On September 14, 2012, Cook committed a Group II offense because he did not show up for work and then several hours after his shift had started, he called in to request a vacation day.  Ex 6C, September 2012 Disciplinary Action Fact Sheet.  As a result, the City issued Cook a written reprimand ("<u>September 2012 Written Reprimand</u>").  Ex. 6D.  The September 2012 Written Reprimand stated:

>This document is to inform you that <u>your failure to report an absence according to ITSD procedures</u> is unacceptable and warrants a written reprimand.  Unless you improve your behavior, this Department **will take action to suspend you from your duties**.
>
>We expect you to correct this behavior immediately.  This is a serious matter affecting your employment with the City of Detroit.

September 2012 Written Reprimand.

8.      On November 1, 2012, Cook's immediate supervisor, Ms. Cynthia Humphries Pearson, explained to Cook:

>I have spoken with you previously regarding your work performance issues; I have presented my opinion that help desk is not for everyone; and I have

expressed that I would support your decision to request another type of assignment that would be a better fit for both you and the department. You, however, expressed your desire to be a part of the help desk team but continue to show by your actions that you are not willing to do your part.

If you continue to be away from your workstation and continue to neglect your work assignment as a result of being away from your workstation, I must follow procedures regarding disciplinary actions. Please accept this e-mail as a courtesy communication of the actions to follow if you do not correct your behavior and meet work expectations.

Please see a copy of the ITS Rules of Conduct and suggested disciplinary actions regarding 'Work Performance' in the attachment and on the ITS intranet site…

Ex. 6A, Humphries Pearson Dec. ¶ 6.

9.       Cook replied stating in part that "I also don't appreciate you talking to me about work performance. I also don't appreciate anyone telling me about not doing my part, 1st since I was doing help desk before anyone on the current team and also because I have been working for the City for 32 years." Ex. 6A, Humphries Pearson Dec. ¶ 7.

10.       On November 16, 2012, Cook committed his second Group II offense. Ex. 6E, November 2012 Disciplinary Action Fact Sheet. Cook failed to report to his regularly scheduled shift or report his absence in accordance with department rules and guidelines. *Id.* Pursuant to the ITSD Rules of Conduct, this offense resulted in a five day suspension because it was Cook's second Group II offense. As such, on November 30, 2012, the City issued a Notice of Suspension to Cook. Ex. 6F, Notice of Suspension. Under the Work Rules, the recommended penalty for a third Group II offense is the termination of the employee.

11.       On July 18, 2013 and prior to the time the City filed its bankruptcy petition, Cook committed his third Group II offense, a Group I offense and a Group IV offense. Ex. 6I, July 2013 Disciplinary Action Fact Sheet. Cook was not at his desk again. Ex. 6A, Humphries Pearson Dec. ¶¶ 8-10. Mr. Dodd emailed Mr. Cook at 1:14pm stating:

Cedric, I came to your desk twice today (11:10 am and 1 pm) and could not find you. In workbrain it shows that you logged in at 7:30 am but no one can seem to find you. Where are you, you are scheduled to cover the application helpdesk.

I need an explanation of your where abouts.

Ex. 6G.

12.    Approximately an hour later, Mr. Dodd emailed Cook again stating, "It is now 2:20 pm and we still have not heard from you or seen. Please provide an explanation of your whereabouts." Ex. 6G. Cook did not reply to either of these emails until the following day. Ex. 6G; Ex. 6H.

13.    As set forth in the July 2013 Disciplinary Action Fact Sheet, Cook violated three ITS work rules on July 18, 2013: (a) Work Performance (Group I offense) – Failed to answer incoming help desk calls; (b) Leaving the Work Area (Group II offense) – Failed to obtain permission to leave work area for extended period; (c) Neglect of duty (Group IV offense) – Neglected to perform his assigned duty of answering incoming help desk calls.  Ex. 6I, July 2013 Disciplinary Action Fact Sheet. Cook was thus suspended for 30 days pending discharge. *Id.*; *see also* Ex. 6J, July 2013 Notice of Suspension.

14.    A few weeks later, on August 2, 2013, the Senior Accountants, Analysts and Appraisers Association ("SAAA"), on Cook's behalf, filed a grievance ("Grievance"). The Grievance is attached as Exhibit 6K. The Grievance identifies July 18, 2013, as the date of the underlying incident which led to the Grievance. The Grievance requests that the City restore Cook to work immediately, remove certain offenses from Cook's record and restore Cook's pay and make Cook whole.  *Id.*

15.    On August 21, 2013, the City provided Cook a Notice of Discharge. Ex. 6L. The Notice of Discharge states that Cook is discharged from the City effective August 24, 2013, because

Group IV Offense – Neglect of Duty; Wanton & willful neglect in the performance of assigned duties or in the care, use or custody of any City property. Abuse, or deliberate destruction in any manner of City property, tools, equipment or the property of employees.

16. On August 22, 2013, a hearing was held on the Grievance. After the hearing, on August 28, 2013, Mr. Dodd wrote to the SAAA denying the Grievance. Ex. 6M. The SAAA, on behalf of Cook, then appealed the denial of the Grievance to arbitration. The arbitration is currently pending.

**B.     The City's Bankruptcy Case**

17. On July 18, 2013 at 4:06 p.m., the City filed its bankruptcy petition ("Petition Date"). [Doc. No. 1].

18. On October 10, 2013, the City filed its Motion Pursuant to Section 105, 501 and 503 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3003(c), for Entry of an Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof ("Bar Date Motion"). [Doc. No. 1146].

19. On November 21, 2013, this Court entered an order approving the Bar Date Motion ("Bar Date Order"). [Doc. No. 1782]. The Bar Date Order established February 21, 2014 ("General Bar Date") as the deadline for filing claims against the City. Paragraph 6 of the Bar Date Order states that the

> following entities must file a proof of claim on or before the Bar Date…any entity: (i) whose prepetition claim against the City is not listed in the List of Claims or is listed as disputed, contingent or unliquidated; and (ii) that desires to share in any distribution in this bankruptcy case and/or otherwise participate in the proceedings in this bankruptcy case associated with the confirmation of any chapter 9 plan of adjustment proposed by the City . . . .

Bar Date Order ¶ 6.

20. Paragraph 22 of the Bar Date Order also provided that:

Pursuant to sections 105(a) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(2), **any entity that is required to file a proof of claim in this case pursuant to the Bankruptcy Code, the Bankruptcy Rules or this Order with respect to a particular claim against the City, but that fails properly to do so by the applicable Bar Date, shall be forever barred, estopped and enjoined from: (a) asserting any claim against the City or property of the City** that (i) is in an amount that exceeds the amount, if any, that is identified in the List of Claims on behalf of such entity as undisputed, noncontingent and liquidated or (ii) is of a different nature or a different classification or priority than any Scheduled Claim identified in the List of Claims on behalf of such entity (any such claim under subparagraph (a) of this paragraph being referred to herein as an "Unscheduled Claim"); (b) voting upon, or receiving distributions under any Chapter 9 Plan in this case in respect of an Unscheduled Claim; or (c) with respect to any 503(b)(9) Claim or administrative priority claim component of any Rejection Damages Claim, asserting any such priority claim against the City or property of the City.

Bar Date Order ¶ 22 (emphasis added).

21.    On July 8, 2014, the City's claims agent received Cook's ballot.[1]  Cook voted to accept the plan. Ex. 6N.

22.    On October 22, 2014, the City filed its Eighth Amended Plan of the Adjustment of Debts of the City of Detroit (October 22, 2014) ("Plan").  [Doc. No. 8045].

23.    On November 12, 2014, this Court entered an order confirming the Plan ("Confirmation Order").  [Doc. No. 8272].

24.    The release provision in the Plan provides in pertinent part

Without limiting any other applicable provisions of, or releases contained in, the Plan or any contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, as of the Effective Date, in consideration for the obligations of the City under the Plan and the consideration and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan (including the State Contribution Agreement):

---

[1] The ballot form was approved by this Court pursuant to its Order Establishing Supplemental Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment with Respect to Pension and OPEB Claims ¶ 6. [Doc. No. 4400]. The Court also approved the form of a replacement ballot pursuant to its Order Approving Stipulation Regarding Certain Class 11 and Class 10 Ballots. [Doc. No. 5209].

a. **each holder of a Claim that votes in favor of the Plan, to the fullest extent permissible under law, will be deemed to forever release, waive and discharge** (which release will be in addition to the release and discharge of Claims otherwise provided herein and under the Confirmation Order and the Bankruptcy Code):

i. **all Liabilities in any way relating to the City**, the Chapter 9 Case (including the authorization given to file the Chapter 9 Case), the Plan, the Exhibits or the Disclosure Statement, in each case that such holder has, had or may have against the City or its current and former officials, officers, directors, employees, managers, attorneys, advisors and professionals, each acting in such capacity (and, in addition to and without limiting the foregoing, in the case of any Emergency Manager, in such Emergency Manager's capacity as an appointee under PA 436);

Plan, Art. III.D.7.

25. The Plan defines "Liabilities" to mean

any and all claims, obligations, suits, judgments, damages, demands, debts, rights, derivative claims, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising in law, equity or otherwise, that are based in whole or in part on any act, event, injury, omission, transaction, agreement, employment, exposure or other occurrence **taking place on or prior to the Effective Date**.

Plan, Art. I.A.227.

26. Further, the discharge provision in the Plan provides

Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the City from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) proof of Claim based on such debt is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code or (ii) the Holder of a Claim based on such debt has accepted the Plan.

Plan, Art. III.D.4.

27.     With certain exceptions not applicable here, the Plan does not afford any right to distributions or payments to claimants that did not timely file proofs of claim.  Plan Art. I.A.19; Art. I.A.134; Art. VI.A.1.  Such claims are not Allowed Claims under the Plan and thus are not entitled to distributions under the Plan.  *Id.*  ("Notwithstanding any other provision of the Plan, no payments or Distributions shall be made on account of a Disputed Claim until such Claim becomes an Allowed Claim.").

28.     The Plan injunction set forth in Article III.D.5 provides in pertinent part:

**Injunction**

> **On the Effective Date, except as otherwise provided herein or in the Confirmation Order,**
>
> **a.  all Entities that have been, are or may be holders of Claims against the City . . . shall be permanently enjoined from taking any of the following actions against or affecting the City or its property. . . .**
>
> **1.  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affect the City of its property . . . .**
>
> **5.  proceeding in any manner in any place whatsoever that does not conform or comply with the provisions of the Plan or the settlements set forth herein to the extent such settlements have been approved by the Bankruptcy Court in connection with Confirmation of the Plan; and**
>
> **6.  taking any actions to interfere with the implementation or consummation of the Plan.**

Plan, Article III.D.5 (emphasis supplied).

29.     The Court retained jurisdiction to enforce the Plan injunction and to resolve any suits that may arise in connection with the consummation, interpretation or enforcement of the Plan.  Plan, Art. VII. F, G, I.

30.     The Plan went effective on December 10, 2014 ("Effective Date"). [Doc. No. 8649].

### III.  Argument

31.     The Grievance should be dismissed because Cook released the City from the claim asserted in the Grievance when he voted to accept the Plan. The Grievance should also be dismissed for the additional reason that the claim asserted in the Grievance was discharged pursuant to the Plan because it arose on or before the Effective Date.

### A.     Cook Released the City from the Claim Asserted in the Grievance By Voting to Accept the Plan

32.     Cook released the City from the claim asserted in the Grievance when he voted in favor of the Plan. The Plan's release provision provides in pertinent part that "…each holder of a Claim that votes in favor of the Plan, to the fullest extent permissible under law, will be deemed to forever release, waive and discharge…all Liabilities in any way relating to the City." Plan, Art. III.D.7.  The claim asserted in the Grievance falls within the definition of "Liabilities" under the Plan because it is a claim relating to the City that took place on or prior to the Effective Date. Thus, Cook released the claim asserted in the Grievance and is violating the Plan's Injunction by continuing to pursue it in any forum other than this bankruptcy court.

### B.     Cook's Grievance Claim was Discharged

33.     The claim asserted in the Grievance is a claim that was discharged under the Plan on the Effective Date of the Plan.  This is so, whether the claim asserted in the Grievance arose before or after the commencement of the City's bankruptcy case.  Even if the Court were to find that claim was not a pre-petition claim it still arose on or before the Effective Date and was thus discharged by the Plan.  Consequently, Cook violated the Plan injunction and discharge provisions, and continues to violate them, by continuing to prosecute the Grievance and seek relief against the City.  Plan, Art. III.D.4; Plan, Art. III.D.5.

34.     Under the Bankruptcy Code, "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). The term "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured [.]" 11 U.S.C. § 105(5)(A). "Congress gave these terms the broadest possible definitions so as to enable a debtor to deal with all legal obligations in a bankruptcy case." *In re Lipa*, 433 B.R. 668, 669-70 (Bankr. E.D. Mich. 2010) (*citing Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990)). The Supreme Court has repeatedly reiterated that Congress intended to adopt the broadest available definition of "claim" and has declined all invitations to exclude rights to payment from the definition of claim.  2 COLLIER ON BANKRUPTCY ¶ 101.05[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (*citing FCC v. NextWave Personal Communications, Inc. (In re NextWave Personal Communications, Inc.*), 537 U.S. 293 (2003); *Johnson v. Home State Bank*, 501 U.S. 78 (1991)).

35.     "Courts have been careful to distinguish between when a right to payment arises for bankruptcy purposes, and when the cause of action accrues."  *In re Dixon*, 295 B.R. 226, 229-30 (Bankr. E.D. Mich. 2003) (*citing Kilbarr Corp. v. G.S.A. (In re Remington Rand Corp.)*, 836 F.2d 825, 830–31 (3d Cir. 1988) ("recogniz[ing] that a party may have a bankruptcy claim and not possess a cause of action on that claim" and noting, for example, that "an indemnity or surety agreement creates a right to payment, albeit contingent, between the contracting parties immediately upon the signing of the agreement")).  As such, it is "well settled that federal law governs *when* a claim arises." *In re Parks*, 281 B.R. 899, 902 (Bankr. E.D. Mich. 2002) (emphasis supplied).

36.     Although the Court of Appeals for the Sixth Circuit has yet to address the various tests for determining when a claim arises in bankruptcy, the emerging consensus appears to adopt some version of the "fair contemplation" approach.  *In re Spencer*, 457 B.R. 601, 606 (E.D. Mich. 2011) (*citing In re Huffy Corp.,* 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010)).  *In re Senczyszyn*, the Court explained that the "fair contemplation" test "looks at whether there was a pre-petition relationship between the debtor and the creditor, such as contract, exposure, impact or privity, such that a possible claim is within the fair contemplation of the creditor at the time the petition is filed."   426 B.R. 250, 257 (Bankr. E.D. Mich. 2010) *aff'd on other grounds*, 444 B.R. 750 (E.D. Mich. 2011) (internal citations and quotations omitted).

37.     The fair contemplation test is easily satisfied here.  Cook and the City had a prepetition relationship such that Cook's claim was within his fair contemplation.  The Rules of Conduct provided to Cook state that the recommended penalty for a third Group II offense or a single Group IV offense is discharge.  Cook received written notice of his first Group II offense. He also received written notice of his second Group II offense.  For a third Group II offense, the Rules of Conduct state in bold letters "**Third Offense – Discharge."**  Cook also knew that if he committed a Group IV Offense, the Rules of Conduct provide a recommendation of "**First Offense – Discharge."** It was thus within Cook's fair contemplation that he would be discharged if he committed a Group IV offense or another Group II offense by being away from his desk for extended periods of time when he was supposed to be answering phone calls.  Cook's claim thus arose prior to the City's bankruptcy filing and was discharged pursuant to the Plan.

38.     However, even if the Court were to find that Cook's claim was not a pre-petition claim, it still arose on or before the Effective Date and was thus discharged by the Plan.  ("…the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for

and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date."). Plan, Art. II.D.4. There can be no question that Cook's claim arose before the Effective Date because he was discharged from the City without pay in August 2013. Under the Plan, all claims arising on or before the Effective Date that were not otherwise classified under the Plan are by default Other Unsecured Claims. Plan, Art. I.A.262 (defining "Other Unsecured Claim" as "any Claim that is not" one of a list of claims"); Art. II.B.3.u (classifying Other Unsecured Claims in class 14). Thus, if Cook had filed a proof of claim (which he did not), his claim would have been treated as an Other Unsecured Claim (to the extent it was allowed) because it was not otherwise classified under the Plan. The injunction in the Plan and confirmation order applies to all discharged debt, including post-petition claims, consistent with paragraph 30 of the Confirmation Order. That paragraph does not except post-petition claims from the discharge except as specifically exempted by the Plan or paragraph 32 of the Confirmation Order, neither of which applies here. Consequently, Cook is violating the Plan injunction by continuing to prosecute this claim.

39. Furthermore, Cook did not file a proof of claim by the General Bar Date and has at no time after the General Bar Date filed an untimely proof of claim or a motion for permission to file an untimely proof of claim on the basis of "excusable neglect" under *Pioneer Inv. Services Co v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) ("*Pioneer* Motion") and its progeny (although the City believes there is no case to be made for "excusable neglect" here).

Thus, Cook is also barred, estopped and enjoined from asserting any claim against the City or property of the City under the Bar Date Order. Bar Date Order ¶ 22.[2]

40.     However, even if Cook were now to file and have granted a *Pioneer* Motion (which he has not filed or sought), the relief to be afforded Cook would not include permitting Cook to proceed with his Grievance against the City or property of the City.  At most, Cook would be permitted to file a proof of claim, which, if Cook were to succeed on its merits, would afford Cook an "Other Unsecured Claim" under Class 14 of the Plan, and the right to a Pro Rata share of New B Notes and certain other distributions to the holders of Class 14 Claims described in the Plan.  Under no scenario would Cook be permitted to commence or continue to prosecute the Grievance.

## IV.     Conclusion

41.     The City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1, (a) granting the Motion; (b) requiring the SAAA and Cook to withdraw, or cause to be withdrawn, with prejudice, the Grievance to the extent it seeks relief against the City or property of the City; (c) permanently barring, estopping and enjoining Cook and the SAAA from asserting any claims described in the Grievance; and (d) prohibiting Cook and the SAAA from sharing in any distribution in this bankruptcy case with respect to the Grievance.  The City sought, but did not obtain, concurrence to the relief sought in the Motion.

---

[2] Cook's failure to timely file a proof of claim by the General Bar Date is an additional reason why Cook should be enjoined from continuing, and be required to withdraw with prejudice, his claims against the City and its property.  However, it is not necessary for the Court to decide any bar date issues or address the Motion on that basis.  It is maintained as an alternative basis for granting the relief in the Motion.  As described in paragraph 40, even if Cook had timely filed a proof of claim and that proof of claim were Allowed under the Plan, Cook's sole right in connection with that claim would have been the right to receive distributions under the Plan on account of his Allowed Class 14 Claim (Other Unsecured Claim).  There is no set of circumstances under which Cook or the SAAA is or would have been permitted to commence and prosecute the Grievance against the City or its property in any forum other than this bankruptcy court.

September 15, 2015

Respectfully submitted,

By: /s/ Marc N. Swanson
     Jonathan S. Green (P33140)
     Marc N. Swanson (P71149)
     MILLER, CANFIELD, PADDOCK AND
     STONE, P.L.C.
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     green@millercanfield.com
     swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

## EXHIBIT LIST

Exhibit 1        Proposed Order

Exhibit 2        Notice

Exhibit 3        None

Exhibit 4        Certificate of Service

Exhibit 5        None

Exhibit 6A       Declaration of Cynthia Humphries Pearson

Exhibit 6B       August 13 email from Dodd to Cook

Exhibit 6C       September 2012 Disciplinary Action Fact Sheet

Exhibit 6D       September 2012 Written Reprimand

Exhibit 6E       November 2012 Disciplinary Action Fact Sheet

Exhibit 6F       November 2012 Notice of Suspension

Exhibit 6G       July 18, 2013 Emails

Exhibit 6H       Memos

Exhibit 6I       July 2013 Disciplinary Action Fact Sheet

Exhibit 6J       July 2013 Notice of Suspension

Exhibit 6K       Grievance

Exhibit 6L       Notice of Discharge

Exhibit 6M       Dodd Letter to SAAA Denying Grievance

Exhibit 6N       Cook's Ballot

<u>**EXHIBIT 1 – PROPOSED ORDER**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**[PROPOSED] ORDER GRANTING CITY OF DETROIT'S MOTION FOR ENTRY OF
AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT AND (II) REQUIRING
THE WITHDRAWAL WITH PREJUDICE OF THE AUGUST 2, 2013, GRIEVANCE
FILED BY THE SENIOR ACCOUNTANTS, ANALYSTS, AND APPRAISERS
ASSOCIATION ON BEHALF OF CEDRIC COOK**

This matter, having come before the court on the City of Detroit's Motion for Entry of an

Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of

the August 2, 2013, Grievance Filed by the Senior Accountants, Analysts, and Appraisers

Association on Behalf of Cedric Cook ("<u>Motion</u>")[1] upon proper notice and a hearing, the Court

being fully advised in the premises, and there being good cause to grant the relief requested,

**THE COURT ORDERS THAT:**

1. The Motion is granted.

2. Within five days of the entry of this Order, the Senior Accountants, Analysts, and

Appraisers Association and Cedric Cook shall withdraw, or cause to be withdrawn, with

prejudice, Grievance 07-2013-ITS-08-02 filed on August 2, 2013 (the "<u>Grievance</u>").

3. The Senior Accountants, Analysts, and Appraisers Association and Cedric Cook

are permanently barred, estopped and enjoined from asserting any claims described in the

---

[1] Capitalized terms not defined in this Order have the meaning given to them in the Motion.

Grievance or arising from the Grievance against the City of Detroit or property of the City of Detroit in another grievance or in any other action or proceeding.

4.      The Senior Accountants, Analysts, and Appraisers Association and Cedric Cook are prohibited from sharing in any distribution in this bankruptcy case in any way related to the Grievance.

5.      The Grievance was prosecuted in violation of the Plan injunction as it pertains to the City of Detroit and its property.

6.      The Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

## EXHIBIT 2 – NOTICE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**NOTICE OF OPPORTUNITY TO RESPOND TO CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT AND (II) REQUIRING THE WITHDRAWAL WITH PREJUDICE OF THE AUGUST 2, 2013, GRIEVANCE FILED BY THE SENIOR ACCOUNTANTS, ANALYSTS, AND APPRAISERS ASSOCIATION ON BEHALF OF CEDRIC COOK**

The City of Detroit has filed its Motion for Entry of an Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of the August 2, 2013, Grievance Filed by the Senior Accountants, Analysts, and Appraisers Association on Behalf of Cedric Cook.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.**

If you do not want the Court to enter an Order granting the City of Detroit's Motion for Entry of an Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of the August 2, 2013, Grievance Filed by the Senior Accountants, Analysts, and Appraisers Association on Behalf of Cedric Cook within 14 days, you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court
211 W. Fort St., Suite 1900
Detroit, Michigan 48226

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

If you mail your response to the court for filing, you must mail it early enough so that the court will **receive** it on or before the date stated above.  You must also mail a copy to:

Miller, Canfield, Paddock & Stone, PLC
Attn: Marc N. Swanson
150 West Jefferson, Suite 2500
Detroit, Michigan 48226

2.   If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time, and location of that hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Marc N. Swanson
        Marc N. Swanson (P71149)
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        swansonm@millercanfield.com

Dated:  September 15, 2015

**EXHIBIT 3 - NONE**

<u>**EXHIBIT 4 – CERTIFICATE OF SERVICE**</u>

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on September 15, 2015, the foregoing Motion for Entry of an Order (I) Enforcing the Plan of Adjustment and (II) Requiring the Withdrawal with Prejudice of the August 2, 2013, Grievance Filed by the Senior Accountants, Analysts, and Appraisers Association on Behalf of Cedric Cook to the Extent It Seeks Relief Against the City of Detroit or Property of the City of Detroit was filed and served via the Court's electronic case filing and notice system and served the parties listed below, via first class mail:

Senior Accountants, Analysts, and Appraisers Association
65 Cadillac Square
2905 Cadillac Tower Building
Detroit, Michigan 48226

Cedric Cook
18500 Pinehurst St
Detroit, MI 48221-1990

Scheff & Washington PC
Attn: George B. Washington
615 Griswold St Ste 910
Detroit, MI 48226-3984

DATED: September 15, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

**EXHIBIT 5 - NONE**

**EXHIBIT 6A**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## DECLARATION OF CYNTHIA HUMPHRIES PEARSON IN SUPPORT OF CITY OF DETROIT'S MOTION FOR ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT AND (II) REQUIRING THE WITHDRAWAL WITH PREJUDICE OF THE AUGUST 2, 2013, GRIEVANCE FILED BY THE SENIOR ACCOUNTANTS, ANALYSTS, AND APPRAISERS ASSOCIATION ON BEHALF OF CEDRIC COOK

1.        My name is Cynthia Humphries Pearson. I am an employee at the City of Detroit's Information Technology Services Department ("ITSD"). I hold the position of Principal D.P. Programmer/Analyst for ITSD.

2.        Cedric Cook ("Cook") was an employee of the ITSD. I supervised Cedric Cook in his role as Senior D.P. Programmer Analyst when he worked for ITSD from May, 2011, until he was terminated in 2013. I have personal knowledge of Cook's performance during the time that I supervised him.

3.        Cook worked at the ITSD's help desk where his job responsibilities included answering phone calls. Since May 2011, Cook was repeatedly advised both verbally and in writing that his work performance was substandard and that it was being monitored. I prepared the chart attached as Exhibit 1 to this Declaration. The chart summarizes the verbal and written communications between the ITSD and Cook regarding his substandard work performance.

4.        On several occasions, Cook was provided copies of work performance reports which showed that he was not accepting help desk calls even though he was logged into the City's system. In late 2011 or early 2012, Cook was provided a written summary of his unsatisfactory

work performance. Ex. 2. This summary shows that during 2011, Cook failed to accept help desk calls approximately 80% of the time he was logged into the City's system.

5.      On August 13, 2012, Cook was provided with a copy of the ITSD Rules of Conduct ("Rules of Conduct") because Cook was away from his work area for an extended period of time despite having logged in at 7:48 a.m. Ex. 3, Rules of Conduct.

6.      On November 1, 2012, I wrote to Cook stating:

> I have spoken with you previously regarding your work performance issues; I have presented my opinion that help desk is not for everyone; and I have expressed that I would support your decision to request another type of assignment that would be a better fit for both you and the department. You, however, expressed your desire to be a part of the help desk team but continue to show by your actions that you are not willing to do your part.
>
> If you continue to be away from your workstation and continue to neglect your work assignment as a result of being away from your workstation, I must follow procedures regarding disciplinary actions. Please accept this e-mail as a courtesy communication of the actions to follow if you do not correct your behavior and meet work expectations.
>
> Please see a copy of the ITS Rules of Conduct and suggested disciplinary actions regarding 'Work Performance' in the attachment and on the ITS intranet site...

Ex. 4.

7.      Cook replied stating in part that "I also don't appreciate you talking to me about work performance. I also don't appreciate anyone telling me about not doing my part, 1st since I was doing help desk before anyone on the current team and also because I have been working for the City for 32 years." Ex. 5.

8.      On July 18, 2013, I checked Cook's desk approximately at 11:00 a.m., 1:20 p.m., 3:15 p.m., and 3:35 p.m. I only observed him there at 3:15 p.m.; the remaining times, he was not at his desk.

2

9.    I called another manager, Christina Sneed, at approximately 2:30 p.m. on that date and asked her to see if Cook was at his desk. She called me back and told me that she did not see him at his desk.

10.    Charles Dodd informed me that he had checked Cook's desk twice on that date and that Cook had not been present either time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____

Cynthia Humphries Pearson
City of Detroit
Information Technology Services Department

Dated: September 10, 2015

3

| Date | Event | Communication Type/Support Documentation | Communication/Documentation Provided by |
|---|---|---|---|
| 5/4/2011 | Reminded employee that work performance is being monitored | Written (e-mail) | Team Leader/Supervisor |
| 5/5/2011 | Reminded employee that work performance is being monitored | Written (hand delivered copy of 5/4/11 e-mail) | Team Leader/Supervisor |
| | | | Team Leader/Supervisor |
| 5/19/2011 | Provided work performance reports for Feb., Mar., Apr. 2011 and informed employee that ITSD management received information: Suggested that employee use reports to monitor work performance and correct any work performance issues. | Written (e-mail w/ attachments) | Team Leader/Supervisor |
| 6/23/2011 | Provided work performance reports for May 2011 and informed employee that ITSD management received information: Suggested that employee use reports to monitor work performance and correct any work performance issues. | Written (e-mail w/ attachments) | Team Leader/Supervisor |
| 8/5/2011 | Provided work performance reports for July 2011 and informed employee that ITSD management received information: Suggested that employee use reports to monitor work performance and correct any work performance issues. | Written (e-mail w/ attachments) | Team Leader/Supervisor |
| 10/21/2011 | Notified employee of supervisory chain of command | Written (e-mail) | Deputy Director, ITSD |
| Sometime between Oct. 2011 and Jan 2012 | Presented written summary of unsatisfactory work performance for 2011, explained the summary report to employee and employee expressed that he understood the issue with the work performance as explained.<br><br>(See copy of summary reports with percentages of work...) | Verbal and Written: | Immediate Supervisor |
| 4/26/2012 | Issued reminder to check and address voice mail messages for help desk | Written (e-mail) | Immediate Supervisor |
| 4/26/2012 | Provided messages from help desk to be addressed on 4/26/12 | Written (e-mail) | Immediate Supervisor |
| 4/27/2012 | Requested employee address voice mail messages | Written (e-mail) | Immediate Supervisor |
| 6/1/2012 | Requested employee address voice mail messages | Written (e-mail) | Immediate Supervisor |
| 8/13/2012 | Reiterated that employee is to be logged in and working on help desk during work hours except for designated times for pension business. | Written (e-mail) | Deputy Director, ITSD |
| 8/13/2012 | Presented copy of ITSD Rules of Conduct to employee because of concern that he was away from work area for extended period of time in morning, but clocked in at 7:48 am per WB timesheet | Verbal and Written: Presented copy of Rules of Conduct and informed employee that the information is also available on department's intranet site | Immediate Supervisor |
| 11/12012 | Request made to document messages retrieved from help desk voice mailbox in response to negative feedback regarding customer service | Written (e-mail) | Supervisor |

| | | | |
|---|---|---|---|
| 11/1/2012 | Asked employee to review copy of ITS Rules of Conduct and the suggested disciplinary actions regarding 'Work Performance' :Informed employee that procedures regarding those disciplinary actions must be followed, if work performance continues at below expectations. | Written (e-mail) | Immediate Supervisor |
| 11/1/2012 | ....I don't have to be at my desk to do help desk,...' reply to (11/1/2012 e-mail from immediate supervisor) | Written( e-mail - reply from employee to supervisor) | Employee |
| 12/13/2012 | Employee's immediate supervisor received information regarding help desk calls and/or voice mail messages not addressed 9:56a - 11:23a: (Note: Employee time sheet 7:40a -11:43a) | Written (e-mail w/ attachments) | Supervisor |
| 1/10/2013 | Coordinated coverage of help desk | Written (e-mail) | Supervisor |
| 2/21/2013 | Coordinated coverage of help desk | Written (e-mail) | Supervisor |
| 4/25/2013 | Received 10:56a e-mail from supervisor reporting voice mail messages not addressed 8:10a - 10:35a , 4/25/2013;    Note WB time sheet - 7:50a -4:10p | Written (e-mail) | Supervisor |
| 4/30/2013 | Received 10:55a e-mail from supervisor reporting voice mailbox messages not addressed from Monday 4/29/13 4:24p - Tue 4/30/13 10:19a : Note: 4/29/13WB time sheet 7:42a - 4:20p;                                4/3013: WB time sheet 7:42a - 12:13p | Written (e-mail) | Supervisor |
| 6/4//2013 | Requested employee address voice mail messages | Written (e-mail) | Immediate Supervisor |

**Agent Performance Summary for February - September 2011**
## Agent: Cedric Cook

| Month | Logged In Time | Not Ready Time | Time in Ready Mode to receive incoming Calls to Help Desk | Percentage of logged in time in not ready mode | Percentage of logged in time in ready mode |
|-------|---------------|----------------|-----------------------------------------------------------|------------------------------------------------|--------------------------------------------|
| Feb-11 | 57 | 46 | 11 | 81% | 19% |
| Mar-11 | 61 | 50 | 11 | 82% | 18% |
| Apr-11 | 89 | 78 | 11 | 88% | 12% |
| May-11 | 67 | 50 | 17 | 75% | 25% |
| Jun-11 | 83 | 76 | 7 | 92% | 8% |
| Jul-11 | 84 | 67 | 17 | 80% | 20% |
| Aug-11 | 67 | 49 | 18 | 73% | 27% |
| Sep-11 | 38 | 31 | 7 | 82% | 18% |

Note: Times are rounded to nearest hour

 
City of Detroit

**ADMINISTRATIVE POLICIES
AND PROCEDURES**

| Issued: | 10/7/09 | Document: | A | Date: | 10/07/09 | Page 1 of 2 |
| Subject: | **Absence/Call-In Policy** | | | | | |

In an effort to continue to control and meet production schedules as well as ensure employee coverage, the Absence/Call-in Policy is effective immediately and will fall under the following guidelines:

1. An employee unable to report for work or tardy on any day due to illness, or for personal reasons, must notify ITS Administration at (313) 224-2900, and their immediate supervisor, within two (2) hours of your scheduled start time. This time is in accordance with the ITS Standard Work Hours which is from 8:30 a.m. to 4:30 p.m., with one hour flex time.

2. Unless the department head decides that no earlier notice was possible, failure to give proper notice may be used as a reason for the refusal of sick leave with pay.

3. Employees who are absent or tardy without notice or call-in and do not provide a satisfactory explanation, will be subject to discipline in accordance with the ITS Rules of Conduct.

In order for any procedure to work properly, your cooperation is essential and necessary. The above is intended merely as guidelines and may be waived dependent upon the individual circumstances. If you have any questions regarding any of the above absence/call-in procedure guidelines, please refer them to your immediate supervisor.

# Offenses

## Group I

### (Suggested disciplinary actions)

**First Offense - Oral Reprimand**

**Second Offense - Written Reprimand**

**Third Offense – Brief Suspension**

**Fourth Offense - Substantial Suspension**

**Fifth Offense – Discharged**

Tardiness: Frequent tardiness at the start of the shift or returning from lunch or coffee break.

Absenteeism: Excessive or habitual absence.

Sign-In Sheets: Falsification or other tampering with employee time sheets. This would include signing in out of order or reporting a false time of arrival.

Leaving Work Early: Failure to commence work at the beginning of the duty period or leaving work prior to the end of the duty period.

Garnishments: Violation of the general City Policy regarding garnishments, i.e. excess of three (3) renders the employee subject to discipline.

Safety: Disregard of common safety practices.

Undesirable Conduct: Malicious mischief, horseplay, wrestling, reading for pleasure or either undesirable conduct.

Unsanitary Conditions: Creating or contributing to unsanitary or unsafe conditions or poor housekeeping.

Working Equipment: Use or possession of another employee's working equipment without his/her consent.

Distracting Others: Distracting the attention of others from their jobs or causing confusion by unnecessary shouting or demonstration on the job.

Shift Operations: Leaving of post without being relieved by an employee of the incoming shift or without consent of supervisor.

Smoking: Failure to observe posted rules relative to smoking in a given area.

Parking: Use of parking facilities, which are not designated for the particular employee's use.

Work Performance: Unsatisfactory work and/or failure to maintain required standards of performance.

Eating: Eating food in areas not designated for that purpose.

Restricted Areas: Entering restricted area without proper authorization.


## Group II

(suggested disciplinary action)

**First Offense - Written Reprimand**

**Second Offense - Substantial Suspension**

**Third Offense - Discharge**

Reporting Absence: Failure to report any absence by telephone (or if necessary, by telegram) to their supervisor before the start of their scheduled shift but in no instance later than two (2) hours after the start of the shift. Afternoon and night shift employees are expected to call during the day shift. Failure to report on each day (unless a longer interval between calls has been established by the supervisor) is considered Absent Without Leave and will be dealt with severely.

Leaving the Work Area: Failure to obtain the permission of the supervisor prior to leaving the designated work area.

Private Work: Unauthorized use of City property for private work or performing private work on City time.

Change of Address, Name or Family Status: Failure to immediately report to their personnel office any change in their address, phone number, name or family status (i.e. marriage, birth, divorce, etc.) so that personnel, tax, social security, Blue Cross and other records may be adjusted.

Bulletin Boards and Literature: Posting and/or removing notices or signs without specific authorization from the proper department officials or distributing any written or printed literature on City property without specific authorization.

Falsifying Time Records: Falsifying of time records or making any entries for other employees.

## Group III

(suggested disciplinary action)

**First Offense - Substantial Suspension**

**Second Offense - Discharge**

Accepting Gifts: Taking a gift from someone whom in return for it expects or receives more favorable treatment.

Insubordination: Failure to obey a lawful and reasonable order. If you believe the order is unfair, you can later file a protest, but do not refuse to carry out the order (unless detrimental to employee's health or safety).

Gambling: Gambling on City time or property.

Violation of Regulations: Violation of a lawful and reasonable order or regulation or inducement or attempt to induce an employee to commit an unlawful act or to act in violation of any lawful and reasonable departmental or official order or regulation.

Unfit for Duty: Reporting for work while unfit for duty, being intoxicated while on duty or guilty of scandalous or disgraceful conduct while off duty if such conduct tends to bring the City service into public disrepute.

Dishonesty and Indecency: Being guilty of dishonest acts or being careless, negligent or wasteful of City property. Conduct violating morality or decency.

Injury on Duty: Failure to report immediately to their supervisor any accident or injury incurred while on duty. This is required not only to protect the City but also to protect the health of our employees.

Sleeping on Duty: No sleeping on duty.

Outside Jobs: Holding jobs outside of the City service unless the following criteria are met: 1) the employee notified his department head of his/her second job; 2) there is no conflict of interest between the two jobs; 3) outside work is not performed during the employee's regularly scheduled work day or week and 4) outside work is not so burdensome as to impair the efficiency of the employee in the City position or cause him/her to be tardy or absent.

Gift to Public Officer: Aid or assistance in any form in soliciting or collecting money from an employee for the purpose of making a gift to any public officer.

Use of Political Influence: Use of threat or attempted use of political influence in securing promotion, leave of absence, change of grade, pay or character of work.

**False Statements**: Making vicious, false or malicious statements about employees of the City of Detroit or the Data Processing Department. Also, using abusive language toward or attempting to threaten, intimidate, coerce, or interfere with fellow employees or supervisors.

**Overtime**: Failure to comply with reasonable requests to work overtime.

**Solicitations**: Solicitation within the City employment without permission or during working hours.

**Testimony**: Refusing to give testimony when accidents are being investigated.

**Guards**: Interfering with or refusing to cooperate with guards in the performance of their duties. Guards have the right to inspect parcels, packages, handbags, etc., when you are entering or leaving the premises.

## Group IV

(suggested disciplinary action)

### First Offense - Discharge

**Possession**: Carrying, possessing or consuming any type of alcoholic beverage or narcotics on City property or time except in the direct performance of their jobs.

**Fighting**: Fighting of any kind.

**Stealing**: Stealing or similar conduct, including destroying, damaging or concealing any property of the City, or of other employees.

**False Claims**: Making any false claims or misrepresentations in an attempt to obtain sick leave or Workmen's Compensation.

**Illegal Weapons**: Possession of illegal weapons (i.e. firearms, knives, explosives) on City property or time.

**Neglect of Duty**: Wanton or willful neglect in the performance of assigned duties or in the care, use or custody of any City property. Abuse, or deliberate destruction in any manner of City property, tools, equipment or the property of employees.

**Conflict of Interest**: Passing of internal information to someone other than those officially entitled to such information.

**Municipal Contracts**: Having any interest in any contract for the performance of public work connected with his/her department. This applies even if only his vote, recommendation or approval are required.

**Criminal Offense:** Conviction of a criminal offense or of a misdemeanor Involving moral turpitude or guilt of an Immoral or criminal act, if said offense Is related to the performance of one's job.

**Strikes:** The Public Employment Relations Act of the State of Michigan defines a strike as "The concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment, for the purpose of inducing, influencing, or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment." The act further states that "no public employee" shall strike. Because of the type of services provided by the Data Processing Department, any employee instigating, leading or participating in this type of activity will be subject to immediate disciplinary action.

## Group V

(suggested disciplinary action)

**Multiple Offenses**

Penalties for multiple minor offenses in a fourteen-month period (see Note 1)

**Third Minor Offense - Brief Suspension**

**Fourth Minor Offense - Substantial Suspension**

**Fifth Minor Offense - Subject to Discharge**

Penalties for multiple major offenses in a fourteen-month period (see Note 2):

**Third Major Offense - Discharge**

Note 1: A minor offense is defined as one for which the penalty is a reprimand.

Note 2: A major offense is defined as one for which the penalty is a suspension.

(Revision Jan. 22, 2004)

| From: | Cynthia Humphries-Pearson |
|---|---|
| To: | Cook, Cedric |
| Date: | 11/1/2012 3:23 PM |
| Subject: | Re: Oracle password reset requests in Unicenter |
| CC: | Cetlinski, Lori;  Cynthia Humphries Pearson;  Dodd, Charles |
| Attachments: | Offenses.pdf |

Cedric,

I explained during the training session that there would be an additional link for password reset responsibility in production when you completed training and practice exercises. You were sent an e-mail notification 10/31/12 of your additional access in production for Oracle; I did not receive questions from you regarding that e-mail notification. I have been very busy this morning but I came to your desk to see if you needed assistance with your Oracle password reset responsibility in production this morning at 10:20 am and 11:10 am and you were not at your desk.

Re: '... I have to do all resets, Oracle and WorkBrain, right?' Right..everyone else on our help desk team has been responsible for Oracle and Workbrain password resets; you were not assigned Oracle password reset responsibility previously because you did not receive that training. You are only expected to perform the same duties as everyone else on the help desk for option #1.
On Monday, Tuesday (1/2 day), Thursday, and Friday or when not on pension duty, your assignment includes, answering calls for option #1, checking voice mailbox and addressing any messages; creating tickets for requests and handling requests you receive for Oracle and Workbrain password resets. To perform these duties, however, you must be at your desk...right?

I have spoken with you previously regarding your work performance issues; I have presented my opinion that the help desk is not for everyone; and I have expressed that I would support your decision to request another type of assignment that would be a better fit for both you and the department. You, however, expressed your desire to be a part of the help desk team but continue to show by your actions that you are not willing to do your part.

If you continue to be away from your workstation and continue to neglect your work assignment as a result of being away from your workstation, I must follow procedures regarding disciplinary actions. Please accept this e-mail as a courtesy communication of the actions to follow if you do not correct your behavior and meet work expectations.

Please see a copy of the ITS Rules of Conduct and suggested disciplinary actions regarding 'Work Performance' in the attachment and on the ITS intranet site (http://cityweb/Default.aspx?tabid=281) (http://cityweb/Default.aspx?tabid=161).


Best regards,

Cynthia Humphries Pearson
City of Detroit
Information Technology Services Department


>>> Cedric Cook 11/1/2012 11:29 AM >>>
Cynthia,

No one showed me how to access this from production. My only training was for practice. My other question is and I guess I should be asking Mr. Dodd is if now I am working the help desk by myself? At one time there were at least 6 people, now according to what you're saying I have to do all resets, Oracle and WorkBrain, right?

>>> Cynthia Humphries-Pearson 11/1/2012 9:48 AM >>>

file://C:\Documents and Settings\cynthiah\Local Settings\Temp\XPgrpwise\509293E8MailDom2P...   9/11/2013

Good morning Cedric;

You have access to reset Oracle passwords in production, per e-mail sent to you.

Resetting Oracle passwords is now one of your responsibilities so please take care of the requests currently assigned to you in Unicenter. (You should assign those requests to yourself instead of to me or Christina starting today)

Thanks and let me know if you have questions.

| From: | Cedric Cook |
|---|---|
| To: | Humphries-Pearson, Cynthia |
| Date: | 11/1/2012 4:07 PM |
| Subject: | Re: Oracle password reset requests in Unicenter |
| CC: | Cetlinski, Lori;  Dodd, Charles |

Cynthia,

As I stated the last email I received talked about continue to practice.  The next email was telling me of my new responsibilities.  Also I continue to say I appreciate any help but I have been doing help desk tasks for sometime.  The issue is the new responsibilities I've been given.  I think it still was a valid question based on my understanding which is I am suppose to have some help. I'm already doing what you say my responsibilities are.  The only think you and Christine had to do was Oracle resets.  I answer the majority of the requests even though I have other duties.  I also think it is unfair for you to say why you think I was assigned to the help desk and why I wasn't given certain responsibilities because you were not here.  And as a matter of fact the previous Director assigned me to the help desk because he realized that I had other City of Detroit responsibilities namely Pension.

I also don't appreciate you talking to me about work performance.  The first thing I think you should do is ask where I was.  I'm telling you the same thing I told Christine which is at the time in question I was in the Director's office attempting to ask him the same question, am I the only one working the help desk?  This can be verified.  I also explained to the Director that I would not be sitting at my desk 24 hours.  And no I don't have to be at my desk to do help desk, I can do it from home.  What matters is the service being given.  I also don't appreciate the email Christine sent me (forwarding to the Director) because all I did was assign her a ticket.  Additionally, these are not the type of emails in my humble opinion that either you or Christine need to be sending me.  I also don't appreciate anyone telling me about not doing my part, 1st since I was doing help desk before anyone on the current team and also because I have been working for the City for 32 years.

Bottom line, I just asked a question.  Once I am able to master the new tasks asked of me I don't expect to continue to be dumped on, in fact hopefully I will only be contacted when necessary.

Thanks again for everyone's assistance.

Cedric,

I explained during the training session that there would be an additional link for password reset responsibility in production when you completed training and practice exercises.  You were sent an e-mail notification 10/31/12 of your additional access in production for Oracle; I did not receive questions from you regarding that e-mail notification.  I have been very busy this morning but I came to your desk to see if you needed assistance with your Oracle password reset responsibility in production this morning at 10:20 am and 11:10 am and you were not at your desk.

Re: '...  I have to do all resets, Oracle and WorkBrain, right?'  Right..everyone else on our help desk team has been responsible for Oracle and Workbrain password resets; you were not assigned Oracle password reset responsibility previously because you did not receive that training.  You are only expected to perform the same duties as everyone else on the help desk for option #1.
On Monday, Tuesday (1/2 day), Thursday, and Friday or when not on pension duty, your assignment includes, answering calls for option #1, checking voice mailbox and addressing any messages; creating tickets for requests and handling requests you receive for Oracle and Workbrain password resets.  To perform these duties, however, you must be at your desk...right?

I have spoken with you previously regarding your work performance issues; I have presented my opinion that the help desk is not for everyone; and I have expressed that I would support your decision to request another type of assignment that would be a better fit for both you and the department.  You, however, expressed your desire to be a part of the help desk team but continue to show by your actions that you are not willing to do your part.

If you continue to be away from your workstation and continue to neglect your work assignment as a result of being

file://C:\Documents and Settings\cynthiab\Local Settings\Temp\XPgrpwise\50929E54MailDom2P    9/11/2013

away from your workstation, I must follow procedures regarding disciplinary actions. Please accept this e-mail as a courtesy communication of the actions to follow if you do not correct your behavior and meet work expectations.

Please see a copy of the ITS Rules of Conduct and suggested disciplinary actions regarding 'Work Performance' in the attachment and on the ITS intranet site (http://cityweb/Default.aspx?tabid=281) (http://cityweb/Default.aspx?tabid=161).

Best regards,

Cynthia Humphries Pearson
City of Detroit
Information Technology Services Department

>>> Cedric Cook 11/1/2012 11:29 AM >>>
Cynthia,

No one showed me how to access this from production. My only training was for practice. My other question is and I guess I should be asking Mr. Dodd is if now I am working the help desk by myself? At one time there were at least 6 people, now according to what you're saying I have to do all resets, Oracle and WorkBrain, right?

>>> Cynthia Humphries-Pearson 11/1/2012 9:48 AM >>>
Good morning Cedric;

You have access to reset Oracle passwords in production, per e-mail sent to you.

Resetting Oracle passwords is now one of your responsibilities so please take care of the requests currently assigned to you in Unicenter. (You should assign those requests to yourself instead of to me or Christina starting today)

Thanks and let me know if you have questions.

**EXHIBIT 6B**

## Cynthia Humphries-Pearson - Application Helpdesk

| | |
|---|---|
| **From:** | Charles Dodd |
| **To:** | Cook, Cedric; Humphries-Pearson, Cynthia |
| **Date:** | 8/13/2012 11:13 AM |
| **Subject:** | Application Helpdesk |
| **CC:** | Calhoun, Gerrie |

Due to the absence of Roberta Jones, it is critical that we cover the application help desk. Cedric, please make sure that you are present and working the help desk during work hours. I know you have pension on Weds, so we will cover the help desk on that day, all other days, you are expected to be logged into the helpdesk.

Let me know if you have any questions.

Thank you,

Chuck Dodd, Deputy Director
City of Detroit - I.T.S Department
526 Coleman A. Young Municipal Ctr.
Two Woodward Avenue
Detroit, Michigan 48226
313-224-1774 office
313-224-2158 fax
Email - cdodd@detroitmi.gov

Dave Bing, Mayor

**EXHIBIT 6C**

**City of Detroit**
**Disciplinary Action Fact Sheet**

| Date:9/18/2012 | |
|---|---|

| | |
|---|---|
| Employee's Name **Cedric Cook** | Department/Division **ITS/Applications** |
| Social Security No. **XXXXX4865** | City Seniority Date _____ 9/17/1980 |
| Title: **Sr. D.P. Programmer/Analyst** | Labor Association **SAAA** |
| Supervisor's Name **Cynthia Humphries** | Supervisor's Title **Pr. D.P. Programmer/Analyst** |

**Disciplinary Action**

**Prior Discipline (refer to appropriate contract for review period)**

| Date | Type | Reason | Work Days | Calendar Days |
|---|---|---|---|---|
| ____ | | | | |
| ____ | | | | |
| ____ | | | | |
| ____ | | | | |

**Absenteeism Record (To be completed only if relevant to this disciplinary action)**

| Sick Days Taken | # of sick days paid | Occurrences | # of days AWOL |
|---|---|---|---|
| | # of sick days not paid | Occurrences | # Times Tardy |

**Current Incident – Statement of Facts**

I received e-mail from Mary King (ITS Administration) Friday 9/14/2012 at 2:39 pm stating that Cedric Cook called to report an absence. Ms. King says she sent the e-mail approximately five minutes after receiving the call.

Requesting a vacation day by telephone more than two (2) hours after the start of the employee's shift is a violation of ITSD's rules of conduct regarding reporting absences and warrants a written reprimand for the first offense.

(See attachments for Absence/Call-In Policy and Group II Offenses).

**Names of Witnesses:**

**(attach witnesses' statements)**

| | |
|---|---|
| Date of meeting **9/18/2012** | Names and position of people at meeting: **Cedric Cook, Sr. D.P. Prog. Analyst; Cynthia Humphries Pr. D.P. Prog. Analyst; Lori Cetlinski, Manager I; Audrey Bellamy, SAAA Union Representative** |
| Results: **Written Reprimand** | Comments: _____ |
| Supervisor's Name: **Cynthia Humphries** | Copy Labor Association, Employee Services Specialist (at Employee Services) and Supervisor |

City of Detroit, copyright. All rights reserved.

**EXHIBIT 6D**

## City of Detroit
## Written Reprimand Form

Date: 09/18/2012

Employee Name: Cedric Cook          Department/Division: ITS/Applications

Title and Social Security Number: XXXXX4866          Labor Association/Bargaining Unit: SAAA/7100

---

### First disciplinary action issued for this type of infraction – Top Box

This document is to inform you that your <u>failure to report an absence according to ITSD procedures</u> is unacceptable and warrants a written reprimand. Unless you improve your behavior, this Department **will take action to suspend you from your duties.**

We expect you to correct this behavior immediately. This is a serious matter affecting your employment with the City of Detroit.

---

### Second disciplinary action issued for this type of infraction – Bottom Box – Progressive

On ▓▓▓▓ there was a meeting and discussion about ▓▓▓▓. During that meeting it was brought to your attention that your ▓▓▓▓ was unacceptable.

At that meeting it was also explained that if you did not correct your behavior, further discipline would follow. You were directed to ▓▓▓▓.

This document is to inform you that your ▓▓▓▓ continues to be unacceptable and warrants a written reprimand. Unless you improve your ▓▓▓▓, this Department **will take action to suspend you from your duties.**

We expect to correct ▓▓▓▓. This is a serious matter affecting your employment with the City of Detroit.

---

Supervisor's Name Cynthia Humphries          Title: Principal DP Programmer/Analyst          Date 9/18/2012

Reviewer: Tom Cetlinski          Title: Manager          Labor Representative: Audrey Bellamy

Cc:     Labor Association (if applicable)
        Supervisor's file
        Employee Services Specialist (at Employee Services)

City of Detroit, copyright. All rights reserved.

Written Reprimand
Effective 12/02/02                                    pg. 1                    FORM9036
                                                                              Rev 10

**EXHIBIT 6E**

## City of Detroit
## Disciplinary Action Fact Sheet

Date: 11/30/2012

| | |
|---|---|
| Employee's Name **Cedric Cook** | Department/Division **ITS/Applications** |
| Social Security No. **XXXXX4865** | City Seniority Date **9/17/1980** |
| Title: **Sr. D.P. Programmer/Analyst** | Labor Association **SAAA** |
| Supervisor's Name **Cynthia Humphries** | Supervisor's Title **Pr. D.P. Programmer/Analyst** |

### Disciplinary Action

Prior Discipline (refer to appropriate contract for review period)

| Date | Type | Reason | Work Days | Calendar Days |
|---|---|---|---|---|
| 09/18/2012 | Written Reprimand | AWOL | | |
| ___ | | | | |
| ___ | | | | |

Absenteeism Record (To be completed only if relevant to this disciplinary action)

| Sick Days Taken | # of sick days paid | Occurrences | # of days AWOL: one (1) |
|---|---|---|---|
| | # of sick days not paid | Occurrences | # Times Tardy |

### Current Incident – Statement of Facts

On November 16, 2012 Cedric Cook failed to:

1. Report to his regular scheduled shift

or

2. Report his absence in accordance with department rules and guidelines.

Because Mr. Cook received a written reprimand on September 18, 2012 for violation of ITSD's rules of conduct, regarding reporting absences, this violation is a second occurrence and warrants suspension.

Names of Witnesses:

(attach witnesses' statements)

| | |
|---|---|
| Date of meeting **11/30/2012** | Names and position of people at meeting: **Cedric Cook, Sr. D.P. Prog. Analyst; Cynthia Humphries Pr. D.P. Prog. Analyst; Lori Cetlinski, Manager I; Lenetta Walker/Audrey Bellamy, SAAA Union Representative** |
| Results: **Suspension** | Comments: ____ |
| Supervisor's Name: **Cynthia Humphries** | Copy Labor Association, Employee Services Specialist (at Employee Services) and Supervisor |

City of Detroit, copyright. All rights reserved.

13-53846-tjt   Doc 10183   Filed 09/15/15   Entered 09/15/15 13:12:31   Page 49 of 70

**EXHIBIT 6F**

## City of Detroit
## Notice of Suspension

Date Issued: 11/30/2012                    Seniority Date: 09/17/1980

Department: Information Technology Services    Division: Applications

Employee Name: Cedric Cook                 SSN: XXX-XX-4865

Classified Title: Sr. D.P. Programmer/Analyst

You are hereby notified that you have been suspended from City of Detroit employment for a period of SEVEN (7) CALENDAR DAYS/ FIVE (5) WORK DAYS for the
(Words and figures)                                    (Words and figures)

following reason(s): AWOL (Absent Without Official Leave)

_____

The first day of your suspension period is effective on 12/03/2012 You are to report back to work on your regular shift on 12/10/2012 unless otherwise notified to report on any other date.

Check One    ☑ Your suspension is with a recommendation for DISCHARGE/PROBATIONARY
             SEPARATION

             ☒ Your suspension is not with a recommendation for DISCHARGE

Date Notice Served on Employee: 11/30/2012 By:

☒ Personal Service ☒ Certified Mail ☒ Other _____
  Specify one

SUSPENSION ISSUED BY: Cynthia Plumphries       TITLE: Sr. D.P. Programmer/Analyst
REVIEWED BY: Lori Cdlinski                      TITLE: Manager I
HR Representative: Tamara Tarrance              TITLE: HR A1 Date Reviewed: _____

Human Resources must be notified the next business day when a suspension is issued.

CC:    Supervisor
       Employee Services Specialist (at Employee Services)
       Records Specialist (at HR Records)
       Labor Association Representative (if applicable)

Notice of Suspension          City of Detroit copyright. All rights reserved          FORM 9031
Effective 12/02/02                                                                     Rev 7

**EXHIBIT 6G**

## Lori Cetlinski - Fwd: Re: Helpdesk Responsibilities

| | |
|---|---|
| **From:** | Charles Dodd |
| **To:** | Cetlinski, Lori; Sneed, Christina |
| **Date:** | 7/19/2013 9:56 AM |
| **Subject:** | Fwd: Re: Helpdesk Responsibilities |

*Attachment A*

FYI

Chuck Dodd, Director
City of Detroit - I.T.S Department
1212 Coleman A. Young Municipal Ctr.
Two Woodward Avenue
Detroit, Michigan 48226
313-224-1774 office
313-224-2158 fax
Email - cdodd@detroitmi.gov

Dave Bing, Mayor

>>> Cedric Cook 07/19/2013 9:29 AM >>>
Chuck,

You must come at times when I'm either at lunch or break but I'm always around. I take calls all day including at 7:30 am when I first arrive. You can check the tickets and calls. Additionally, if I'm away from my desk the first thing I do when I return is check voicemail. Has someone stated that they haven't received prompt help desk service?

>>> Charles Dodd 7/18/2013 2:22 PM >>>
Cedric,

It is now 2:20 pm and we still have not heard from you or seen. Please provide an explanation of your where abouts..

Chuck Dodd, Director
City of Detroit - I.T.S Department
1212 Coleman A. Young Municipal Ctr.
Two Woodward Avenue
Detroit, Michigan 48226
313-224-1774 office
313-224-2158 fax
Email - cdodd@detroitmi.gov

Dave Bing, Mayor

>>> Charles Dodd 7/18/2013 1:14 PM >>>
Cedric, I came to your desk twice today (11:10 am and 1 pm) and could not find you. In workbrain it shows that you logged in at 7:30 am but no one can seem to find you. Where are you, you are scheduled to cover the application helpdesk.

I need an explanation on your where abouts.

Chuck Dodd, Director
City of Detroit - I.T.S Department
1212 Coleman A. Young Municipal Ctr.
Two Woodward Avenue
Detroit, Michigan 48226
313-224-1774 office
313-224-2158 fax
Email - cdodd@detroitmi.gov

Dave Bing, Mayor

**EXHIBIT 6H**

# *Memo*



Date:       July 25, 2013

To:         Lori Cetlinski, General Manager
            City of Detroit – ITS Department

From:       Christina Sneed, Manager
            City of Detroit – I.T.S Department

Subject:    **Events concerning Cedric Cook on Thursday July 18th**

On Thursday July 18th, 2013 Cynthia-Humphries Pearson asked me if I had seen Cedric Cook at about 1:15PM. I responded that I had not. She called me at my desk phone about 2:30 PM and asked me if I had seen Cedric Cook. I reported that I had not but I would check his work area and return her call.

I checked Cedric's desk and general work area and he was not there. I returned the call to Cynthia Humphries-Pearson letting her know I did not see Cedric Cook. I checked again at 3:11 PM and Cedric was at his desk.

Christina Sneed                 7/25/2013
_____       _____
Christina Sneed                 Date



**INTEROFFICE MEMORANDUM**

Date:       July 25, 2013

To:         Lori Cetlinski
            General Manager

From:       Cynthia Humphries Pearson
            Principal D.P. Programmer/Analyst

Subject:    Information concerning Cedric Cook for July 18, 2013

On July 18, 2013 Director Charles Dodd expressed concern that Cedric Cook was not at his workstation to address incoming calls to the help desk: Mr. Dodd spoke with me regarding this matter and he sent two e-mail messages.

In response to Mr. Dodd's concern, I went to the help desk area where Mr. Cook is assigned; he was not in his work area at approximately 11:00 am and at approximately 1:20 pm. I, also, called Christina Sneed's office around 2:30 pm and inquired about Cedric Cook; she checked Cedric Cook's work area and reported that he was not there at that time.

At approximately 3:00 pm, Monique Ellis asked if I received any information from Cedric Cook; I told her I had not heard from Mr. Cook. Because there was no response from Cedric Cook I went to his workstation, again. Mr. Cook was at his workstation at approximately 3:15 pm, but was missing again from that location at approximately 3:35 pm.

**EXHIBIT 6I**

**City of Detroit**
**Disciplinary Action Fact Sheet**

| Date: 7/25/13 | |
|---|---|
| Employee's Name **Cedric Cook** | Department/Division **ITS/Applications** |
| Social Security No. **xxx-xx-4865** | City Seniority Date **9/17/1980** |
| Title: **Sr. D.P. Programmer/Analyst** | Labor Association **SAAA** |
| Supervisor's Name **Cynthia Humphries** | Supervisor's Title **Pr. D.P. Programmer/Analyst** |

**Disciplinary Action**

**Prior Discipline (refer to appropriate contract for review period)**

| Date | Type | Reason | Work Days | Calendar Days |
|---|---|---|---|---|
| 9/18/12 | Written Reprimand | AWOL (Group II) | | |
| 11/30/12 | Suspension | AWOL (Group II) | 5 | 7 |
| | | | | |
| | | | | |

**Absenteeism Record (To be completed only if relevant to this disciplinary action)**

| Sick Days Taken | # of sick days paid | Occurrences | # of days AWOL |
|---|---|---|---|
| | # of sick days not paid | Occurrences | # Times Tardy |

**Current Incident – Statement of Facts**

On July 18, 2013 Cedric Cook violated the following ITS work rules:

1) Work Performance (Group I offense) – Failed to answer in-coming help desk calls.

2) Leaving the Work Area (Group II offense) – Failed to obtain permission to leave work area for extended period.

3) Neglect of Duty (Group IV offense) – Neglected to perform his assigned duty of answering incoming help desk calls.


As Mr. Cook received a written reprimand on September 18, 2012 and a suspension on November 30, 2012 for violation of ITSD's rules of conduct this violation is a third occurrence and warrants a 30 day suspension pending discharge.

| Names of Witnesses: Charles Dodd, Christina Sneed, Cynthia Humphries | |
|---|---|
| (attach witnesses' statements) | |
| Date of meeting _____ | Names and position of people at meeting: |
| Results: _____ | Comments: _____ |

City of Detroit, copyright. All rights reserved.

**EXHIBIT 6J**

## City of Detroit
## Notice of Suspension

Date Issued: <u>07/26/2013</u>          Seniority Date: <u>9/17/1980</u>

Department: <u>ITS</u>                Division: <u>Applications</u>

Employee Name: <u>Cedric Cook</u>          SSN: xxx-xx-4865

Classified Title: <u>Sr. D.P. Programmer/Analyst</u>

You are hereby notified that you have been suspended from City of Detroit employment for a period of <u>twenty-nine(29)</u> CALENDAR DAYS/ ▨▨▨ (▨▨▨) WORK DAYS for the
<span style="font-size:smaller">(Words and figures)</span>  <span style="font-size:smaller">(Words and figures)</span>
following reason(s): Group IV Offense – Neglect of Duty. Wanton & willful neglect in the performance of assigned duties or in the care, use or custody of any City property. Abuse or deliberate destruction in any manner of City property, tools, equipment or the property of employees.

The first day of your suspension period is effective on 07/26/2013. You are to report back to work on your regular shift on ▨▨▨ unless otherwise notified to report on any other date.

**Check One**    ☒ Your suspension is with a recommendation for DISCHARGE/PROBATIONARY SEPARATION

☒ Your suspension is not with a recommendation for DISCHARGE

Date Notice Served on Employee: ▨▨▨ By:

☒ Personal Service  ☒ Certified Mail  ☒ Other ▨▨▨
<span style="font-size:smaller">Specify one</span>

SUSPENSION ISSUED BY: <u>Cynthia Humphries</u>          TITLE: <u>Pr. D.P. Programmer/Analyst</u>

REVIEWED BY: <u>Lori Cetlinski</u>                TITLE: <u>General Manager</u>

HR Representative: <u>Tamara Tarrance</u>          TITLE: HR Analyst II

Date Reviewed: <u>07/26/2013</u>

**Human Resources must be notified the next business day when a suspension is issued.**

CC:    Supervisor
       Employee Services Specialist (at Employee Services)
       Records Specialist (at HR Records)
       Labor Association Representative (if applicable)

**EXHIBIT 6K**

# Senior Accountants, Analysts, and Appraisers Association

65 Cadillac Square
2905 Cadillac Tower Building
Detroit, Michigan 48226
Telephone: (313) 961-3701     Facsimile: (313) 961-7908

| Susan R. Glaser President | Audrey Bellamy Vice President I | Sharon Jordan Vice President II | Lenetta Walker Secretary | Audrey Bellamy Treasurer | Lenetta Walker Administrative Representative |
| --- | --- | --- | --- | --- | --- |

DATE:     August 2, 2013

Association Grievance Number:     07-2013-ITS-08-02

Step Level of Grievance:
1:
2:  X
3:
4:
5:

Employee's Name:            Cedric Cook
Classification:             Senior D.P Programmer/Analyst
Department:                 Information Technology System
Division:                   Application
Location:                   801 CAYMC

Date Incident Occurred Causing Grievance:  July 18, 2013

**Description of Grievance:**
There are unfounded violations based on the CET and Departmental Policy and Procedures', and undocumented support provided for accusation related to the Group I, II, and, VI, offenses citing the ITS work rules.  The first offense showed total calls with no support that the calls were unanswered. The second offense provided statements which are based on the facts presented.  The last offense Group IV failed to utilize the ITS work rules.  Under the working conditions provided the process for mandating the HELP DESK without any additional support of resources restricts the optimal performance demonstrated in the claims substantiated by the reprimanding parties listed Cynthia Humphries, Lori Cetlinski, and Human Resources Representative Tamara Tarrance.  Also, overlooking the Grievant processes utilized for work completed throughout the day.

**Violations:**
Under Protest CET 1- Purpose and Intent A, B & C; 3-Management and Responsibilities- C-1,3,4,5,10,12,14,15,16; 4-Union Rights and Obligations B,D, and F; 10.Disciplinary Procedure-A,B,D,G and H.  Guidelines for Administration of a Corrective Discipline Program-1 and 2; and E 25. Equal Employment Opportunity and Affirmative Action Statement.

**Remedies:**
Restore Grievant to work immediately based on the actual facts presented and delineated with factual support of the HELP DESK by the immediate Supervisor.   Remove the Offenses I and IV that were contributory to the actual processes of the HELP DESK.  Remove Offense II based on facts presented and supported in the meeting on July 26, 2013.  Restore Grievant pay and make whole.

Employee Signature: *Cedric Cook*

Filed By: Lenetta Walker, Administrative Representative

cc: Ex. Bd., G. Washington, Robert Anderson, Valeria Miller, Files/LSW

APPROVED
INFO. TECH. SRVCS.
CONTRACTS & ADMIN.
2013 AUG -5 P 1: 25

**EXHIBIT 6L**

# City of Detroit
## Notice of Discharge Form

DATE: 08/21/2013

| | |
|---|---|
| Department: Information Technology Services | Division: Applications |
| Employee Full Name: Cedric Cook | Job Title: Sr. Data Processing Programmer Analyst |

Social Security No.:XXX-XX-4865  Oracle: 4259

You are hereby notified that you have been discharged from City of Detroit employment effective August 24, 2013 (date),

For the following reason(s):  Group IV Offense – Neglect of Duty: Wanton & willful neglect in the performance of assigned duties or in the care, use or custody of any City property.  Abuse, or deliberate destruction in any manner of City property, tools, equipment or the property of employees.

Discharge Issued by: _____ (Department Head)     Title: Director _____

| | |
|---|---|
| Notice Served on Employee     08/22/2013 | By (check one)<br>☐ Personal Service  ☒ Certified Mail |

**RIGHT TO PROTEST** If you are in a union or association, you may consult with your appropriate representation. If you are a non-union represented employee, you may submit a written appeal within 10 days of the effective date of discharge in accordance with the Human Resources Department Grievance Procedure.

**EXHIBIT 6M**



COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 526
DETROIT, MICHIGAN 48226
PHONE 313•224•2900
FAX 313•224•2021
WWW.DETROITMI.GOV

CITY OF DETROIT
INFORMATION TECHNOLOGY SERVICES

August 28, 2013

Audrey Bellamy
Senior Accountants, Analysts, and Appraiser Association (SAAA)
65 Cadillac Square
2905 Cadillac Tower Building
Detroit, MI 48226

| | |
|---|---|
| Grievance: | 07-2013-ITS-08-02 |
| Issue: | Violated ITS work rules |
| Grievant: | COOK, Cedric |

Dear Ms. Bellamy, et al:

On Thursday, August 22, 2013 there was a hearing for Mr. Cedric Cook regarding the above captioned issue. During this hearing the following were in attendance: Cedric Cook (SAAA), Lenetta Walker (SAAA), Lori Cetlinski (ITS), Cynthia Humphries-Pearson (ITS).

The Union alleges violations under Protest CET1 – Purpose and Intent A,B & C; 3 – Management and Responsibilities C- 1,3,4,5,10,12,14,15,16; 4- Union Rights and obligation B,D, and F; 10. Disciplinary Procedure – A,B,D,G and H. Guidelines for Administration of a Corrective Discipline Program -1, and 2; and E 25. Equal Employment Opportunity and Affirmation Action Statement. The union asks for the remedy of restoring Mr. Cook to work immediately based on the actual facts presented and delineated with factual support of the Help Desk by the immediate Supervisor. Removal of Offense I, II, IV, and restore Mr. Cook pay and make whole.

Based on the City of Detroit's Disciplinary Action Fact Sheet, the current incidents have occurred with Mr. Cedric Cook:

1).     Work performance (Group I offense) – Failed to answer in-coming helpdesk calls

2).     Leaving the Work Area( Group II offense) – Failed to obtain permission to leave work area for extended period.

3).     Neglect of Duty (Group IV offense) – Neglect of Duty; Wanton and willful neglect in the performance of assigned duties or in the care, use or custody of any City property. Abuse, or deliberate destruction in any manner of City property, tools, equipment or the property of employees.

Please also note that Mr. Cook has received written reprimands and suspension in the past based on ITS rules of conducts which has also warrant suspensions and discharge. Based on the facts presented by SAAA this grievance is denied.

Respectfully,

Charles Dodd, Director – Information Technology Services

Cc:     Lori Cetlinski
        Cynthia Humphries-Pearson
        Tamara Tarrance
        SAAA

**EXHIBIT 6N**

**PLEASE READ THE VOTING INFORMATION AND
INSTRUCTIONS ATTACHED BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEMS 1 AND 2 BELOW.  IF NEITHER THE "ACCEPT" NOR "REJECT" BOX IS
CHECKED IN ITEM 1, OR IF BOTH BOXES ARE CHECKED IN ITEM 1, THIS BALLOT WILL NOT BE
COUNTED AS CAST.

IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES BELOW, THIS BALLOT WILL NOT BE
VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, a retired GRS Pension Claim Holder in Class 11 as of March 1, 2014 against
the City of Detroit, Michigan, votes to (check <u>one</u> box):

        ☒  **ACCEPT** the Plan.                  ☐  **REJECT** the Plan.

**If you accept the Plan, you are voting to approve a release of any claims that you may have against the
State, the City, and other entities in connection with the loss of part of your pension.**

**If you vote to accept the Plan, you are also voting to approve certain other cancellation, discharge,
exculpation, expungement, injunction and release provisions contained in the Plan.  Such provisions
include, but are not limited to, the provisions contained in Article III.D, Article IV.J, Article IV.K and
Article V.C of the Plan.  These provisions include the release of claims against the State of Michigan and
may affect your rights and interests regarding certain other nondebtor parties, but only if the Initial
Funding Conditions are met or waived by the Confirmation Hearing.  By accepting the Plan AND if the
Initial Funding Conditions are satisfied or waived, you will be forever releasing any rights you may have
against the State and other nondebtor parties for matters described in the Plan and you will be forever
barred from suing the State or other nondebtor parties for matters described in the Plan.  Specifically, this
release would release all claims and liabilities arising from or related to the City, the chapter 9 case
(including the authorization given to file the chapter 9 case), the Plan and exhibits thereto, the Disclosure
Statement, PA 436 and its predecessor or replacement statutes, and Article IX, § 24 of the Michigan
Constitution.**

**If the Plan is confirmed, you will not be able to challenge the Annuity Savings Fund Recoupment that will
be deducted from your monthly pension check.**

**If you vote to accept the Plan and the Initial Funding Conditions are NOT satisfied or waived before the
Confirmation Hearing, your vote will be deemed to be a vote to reject the Plan.**

Creditor **[Name/Identifier]**: COOK, CEDRIC / 4865

Amount of Pension Claim: $369,119.00

**PLEASE COMPLETE ITEM 2 ON THE NEXT PAGE**

RECEIVED

'JUL 0 8 2014

KURTZMAN CARSON CONSULTANTS

07-08-14 P03:35  RCVD

**Item 2. Certifications.** By signing this Ballot, the undersigned certifies that he, she or it:

i.      was retired as of March 1, 2014;

ii.     is the Holder of a GRS Pension Claim in Class 11 to which this Ballot pertains, or is an authorized signatory, and has full power and authority to vote to accept or reject the Plan with respect to such Claim;

iii.    received a copy of the solicitation package consisting of: (a) a notice regarding the time and place of a hearing to consider confirmation of the Plan, (b) a CD-ROM including the Plan, Disclosure Statement and the exhibits to each filed to date, (c) a Ballot and a ballot return envelope, (d) a copy of certain rules governing the tabulation of ballots, (e) a plain language description of the Plan, (f) a cover letter and (g) a letter from the GRS and possibly from other parties;

iv.    has not submitted any other Ballots for Class 11 that are inconsistent with the vote to accept or reject the Plan set forth in this Ballot, or if such other ballots were previously submitted, they have been revoked or changed to reflect the vote of this Ballot; and

v.     understands that a vote to accept the Plan is a vote to accept certain cancellation, discharge, exculpation, expungement, injunction and release provisions contained in the Plan.

COOK, CEDRIC
_____
**Name**

4865
_____
**Fed. Tax I.D. No. or Last 4 Digits of Social Sec. No. (optional)**

_Cedric Cook_
_____
**Signature**

_____
**If by Authorized Agent, Name and Title**

_____
**Name of Institution**

18500 PINEHURST ST
DETROIT, MI 48221-1990
_____
**Address**

(313) 377-5673
_____
**Telephone Number**

7/5/2014
_____
**Date Completed**

cookc2001@yahoo.com
_____
**Email Address**