# Reinstated to Holders: UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

Bond Series Subject to Mandatory Redemption

## Issuance: 2004-B(2)

CUSIP: 25093VZX1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | - | $485,875.00 | 5.240% | $13,729.93 |
| 4/1/15 | Ambac | 6/30/15 | $130,975.00 | $354,900.00 | 5.240% | $12,729.93 |
| 10/1/15 | Ambac | 6/30/16 | - | $354,900.00 | 5.240% | $9,298.38 |
| 4/1/16 | Ambac | 6/30/16 | $139,425.00 | $215,475.00 | 5.240% | $9,298.38 |
| 10/1/16 | Ambac | 6/30/17 | - | $215,475.00 | 5.240% | $5,645.45 |
| 4/1/17 | Ambac | 6/30/17 | $143,650.00 | $71,825.00 | 5.240% | $5,645.45 |
| 10/1/17 | Ambac | 6/30/18 | - | $71,825.00 | 5.240% | $1,881.82 |
| 4/1/18 | Ambac | 6/30/18 | $71,825.00 | - | 5.240% | $1,881.82 |
| Total | | | $485,875.00 | | | $59,111.13 |

## Issuance: 2008-A

CUSIP: 25093N55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/15 | Assured | 6/30/15 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/15 | Assured | 6/30/16 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/16 | Assured | 6/30/16 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/16 | Assured | 6/30/17 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/17 | Assured | 6/30/17 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/17 | Assured | 6/30/18 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/18 | Assured | 6/30/18 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/18 | Assured | 6/30/19 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/19 | Assured | 6/30/19 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/19 | Assured | 6/30/20 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/20 | Assured | 6/30/20 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/20 | Assured | 6/30/21 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/21 | Assured | 6/30/21 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/21 | Assured | 6/30/22 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/22 | Assured | 6/30/22 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 10/1/2022 | Assured | 6/30/23 | - | $7,283,900.00 | 5.000% | $182,097.50 |
| 4/1/2023 | Assured | 6/30/23 | $3,553,225.00 | $3,730,675.00 | 5.000% | $182,097.50 |
| 10/1/2023 | Assured | 6/30/24 | - | $3,730,675.00 | 5.000% | $93,266.88 |
| 4/1/2024 | Assured | 6/30/24 | $3,730,675.00 | - | 5.000% | $93,266.88 |
| Total | | | $7,283,900.00 | | | $3,464,288.75 |

## Issuance 2008-A

CUSIP: 25093NG3

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/14 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/15 | Assured | 6/30/15 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/15 | Assured | 6/30/15 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/16 | Assured | 6/30/16 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/16 | Assured | 6/30/16 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/17 | Assured | 6/30/17 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/17 | Assured | 6/30/17 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/18 | Assured | 6/30/18 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/19 | Assured | 6/30/19 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/19 | Assured | 6/30/19 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/20 | Assured | 6/30/20 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/20 | Assured | 6/30/20 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/21 | Assured | 6/30/21 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/21 | Assured | 6/30/21 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/2022 | Assured | 6/30/22 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/2023 | Assured | 6/30/22 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/2023 | Assured | 6/30/23 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/2024 | Assured | 6/30/23 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 4/1/2025 | Assured | 6/30/24 | - | $16,883,100.00 | 5.000% | $422,077.50 |
| 10/1/2025 | Assured | 6/30/25 | $3,916,375.00 | $12,966,535.00 | 5.000% | $422,077.50 |
| 10/1/2026 | Assured | 6/30/26 | $4,115,150.00 | $8,851,375.00 | 5.000% | $334,163.13 |
| 10/1/2027 | Assured | 6/30/27 | $4,317,950.00 | $4,533,425.00 | 5.000% | $221,284.38 |
| 4/1/2028 | Assured | 6/30/28 | $4,533,425.00 | $4,533,425.00 | 5.000% | $113,335.63 |
| | Assured | 6/30/28 | $4,533,425.00 | | 5.000% | $113,335.63 |
| Total | | | $16,883,100.00 | | | $10,603,271.25 |

13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 15:48:52   Page 5 of 17
173
1136

Interest

| CUSIP | Maturity Date | Rate | Principal | Insurer | Beneficial Holder | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

# Reinstated to Insurers: UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

This page contains a very large, dense financial debt-service schedule with the following column structure:

| CUSIP | Maturity Date | Rate | Principal | Insurer | Beneficial Holder | Interest (10/1/14 through 4/1/21) | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |

The table lists multiple series sections (e.g., UTGO 2004-A(I), UTGO 2004-B(2), UTGO 2006-B, UTGO 2006-C, UTGO 2006-A, UTGO 2008-B(I)) with per-CUSIP rows showing rates ranging from 4.250% to 5.750%, insurers "Ambac" and "Assured," beneficial holder values, principal amounts, and semiannual interest payments. Section subtotals and a grand total ("Total") appear at the bottom.

# Reinstated to Insurers: UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | Beneficial Holder | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | Interest | | | | | | | | | |

*Subject to Mandatory Redemption

# Reinstated to Insurers: UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | Beneficial Holder | Interest 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UT (2004-A(1))** | | | | | | | | | | | | | | | | | | | | | |
| …YX2 | 4/1/19 | 5.250% | $108,000.00 | Ambac | Ambac | | | | | | | | | | | | | | | $28,350.00 | $136,350.00 |
| …YY0 | 4/1/19 | 4.250% | $4,440.00 | Ambac | Ambac | | | | | | | | | | | | | | | $1,132.20 | $5,572.20 |
| …YZ7 | 4/1/20 | 5.250% | $146,040.00 | Ambac | Ambac | | | | | | | | | | | | | | | $46,031.50 | $192,071.50 |
| …ZA1 | 4/1/21 | 5.000% | $158,400.00 | Ambac | Ambac | | | | | | | | | | | | | | | $55,440.00 | $213,840.00 |
| …ZB9 | 4/1/22 | 4.500% | $3,000.00 | Ambac | Ambac | | $4,365.90 | $202.50 | | | | | | | | | | | | $69,854.40 | $236,174.40 |
| …ZC7 | 4/1/23 | 4.500% | $3,000.00 | Ambac | Ambac | | $202.50 | $202.50 | $202.50 | | | | | | | | | | | $3,645.00 | $6,645.00 |
| …ZD5 | 4/1/23 | 5.250% | $166,080.00 | Ambac | Ambac | | $4,359.60 | $4,359.60 | $4,359.60 | | | | | | | | | | | $76,472.80 | $384,552.80 |
| …ZE3 | 4/1/23 | 5.250% | $18,680.00 | Ambac | Ambac | | $433.32 | $433.32 | $433.32 | $433.32 | | | | | | | | | | $8,666.40 | $27,346.40 |
| …ZF0 | 4/1/24 | 4.600% | $18,680.00 | Ambac | Ambac | | $4,340.70 | $4,340.70 | $4,340.70 | $4,340.70 | | | | | | | | | | $86,814.60 | $252,574.60 |
| …ZG8 | 4/1/24 | 5.250% | $165,360.00 | Ambac | Ambac | | | | | | | | | | | | | | | | |
| **UT (2004-A(1))** | | | $942,480.00 | | | | $13,702.02 | $9,336.12 | $9,769.44 | $4,774.02 | | | | | | | | | | $378,377.40 | $1,320,857.40 |
| **UT (2004-B(1))** | | | | | | | | | | | | | | | | | | | | | |
| …2YP8 | 4/1/15 | 5.000% | $206,200.00 | Ambac | Ambac | | | | | | | | | | | | | | | $19,410.00 | $278,610.00 |
| …2YQ6 | 4/1/16 | 5.250% | $218,520.00 | Ambac | Ambac | | | | | | | | | | | | | | | $22,344.40 | $241,644.60 |
| …2YR4 | 4/1/17 | 4.000% | $7,320.00 | Ambac | Ambac | | | | | | | | | | | | | | | $878.40 | $8,198.40 |
| …2YS2 | 4/1/18 | 5.250% | $222,220.00 | Ambac | Ambac | | | | | | | | | | | | | | | $35,078.40 | $257,798.40 |
| …2YT0 | 4/1/19 | 5.250% | $48,000.00 | Ambac | Ambac | | | | | | | | | | | | | | | $10,080.00 | $58,080.00 |
| **UT (2004-B(1))** | | | $704,760.00 | | | | | | | | | | | | | | | | | $79,791.40 | $794,551.40 |
| **UT (2004-C(1))** | | | | | | | | | | | | | | | | | | | | | |
| …ZX1 | 4/1/19 | 5.240% | $13,800.00 | Ambac | Ambac | | | | | | | | | | | | | | | $1,678.90 | $15,478.90 |
| **UT (2005-B)** | | | | | | | | | | | | | | | | | | | | | |
| …635 | 4/1/15 | 5.000% | $54,560.00 | Assured | Assured | | | | | | | | | | | | | | | $2,748.60 | $57,708.60 |
| …564 | 4/1/16 | 5.000% | $57,720.00 | Assured | Assured | | | | | | | | | | | | | | | $5,772.00 | $63,492.00 |
| …579 | 4/1/17 | 4.300% | $60,480.00 | Assured | Assured | | | | | | | | | | | | | | | $7,801.92 | $68,281.92 |
| …587 | 4/1/18 | 5.000% | $63,240.00 | Assured | Assured | | | | | | | | | | | | | | | $12,648.00 | $75,888.00 |
| …595 | 4/1/19 | 5.000% | $66,360.00 | Assured | Assured | | | | | | | | | | | | | | | $16,590.00 | $82,950.00 |
| …6Q9 | 4/1/20 | 5.000% | $120,000.00 | Assured | Assured | | | | | | | | | | | | | | | $36,000.00 | $156,000.00 |
| …6Q9 | 4/1/21 | 5.000% | $120,000.00 | Assured | Assured | | | | | | | | | | | | | | | $42,000.00 | $162,000.00 |
| …6S7 | 4/1/22 | 5.000% | $120,000.00 | Assured | Assured | | $3,000.00 | $3,000.00 | | | | | | | | | | | | $48,000.00 | $168,000.00 |
| …6S7 | 4/1/23 | 5.000% | $120,000.00 | Assured | Assured | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | | | | | | | | | | $54,000.00 | $174,000.00 |
| …152 | 4/1/24 | 5.000% | $120,000.00 | Assured | Assured | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | | | | | | | | $60,000.00 | $180,000.00 |
| …178 | 4/1/25 | 5.000% | $120,000.00 | Assured | Assured | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | | | | | | $66,000.00 | $186,000.00 |
| **UT (2005-B)** | | | $1,022,760.00 | | | | $12,000.00 | $12,000.00 | $9,000.00 | $6,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | | | | | | $351,859.92 | $1,374,319.92 |
| **UT (2006-C)** | | | | | | | | | | | | | | | | | | | | | |
| …DS3 | 4/1/15 | 5.000% | $55,320.00 | Assured | Assured | | | | | | | | | | | | | | | $2,766.00 | $58,086.00 |
| …DT1 | 4/1/16 | 5.000% | $58,200.00 | Assured | Assured | | | | | | | | | | | | | | | $5,820.00 | $64,020.00 |
| …DU8 | 4/1/17 | 4.300% | $61,080.00 | Assured | Assured | | | | | | | | | | | | | | | $7,879.32 | $68,959.32 |
| …DV6 | 4/1/18 | 5.000% | $63,120.00 | Assured | Assured | | | | | | | | | | | | | | | $12,624.00 | $75,744.00 |
| …DW4 | 4/1/19 | 5.000% | $65,240.00 | Assured | Assured | | | | | | | | | | | | | | | $17,230.50 | $82,870.50 |
| …DX2 | 4/1/20 | 5.250% | | Assured | Assured | | | | | | | | | | | | | | | $22,010.60 | $91,050.60 |
| **UT (2006-C)** | | | $372,600.00 | | | | | | | | | | | | | | | | | $68,330.42 | $440,730.42 |
| **UT (2006-A)** | | | | | | | | | | | | | | | | | | | | | |
| …56 | 4/1/15 | 5.000% | $69,000.00 | Assured | Assured | | | | | | | | | | | | | | | $3,450.00 | $72,450.00 |
| …64 | 4/1/16 | 5.000% | $72,360.00 | Assured | Assured | | | | | | | | | | | | | | | $7,236.00 | $79,596.00 |
| …72 | 4/1/17 | 4.300% | $76,080.00 | Assured | Assured | | | | | | | | | | | | | | | $11,412.00 | $87,492.00 |
| …98 | 4/1/18 | 5.000% | $79,800.00 | Assured | Assured | | | | | | | | | | | | | | | $12,768.00 | $92,568.00 |
| …98 | 4/1/19 | 5.000% | $83,040.00 | Assured | Assured | | | | | | | | | | | | | | | $20,760.00 | $103,800.00 |
| …N2 | 4/1/20 | 5.000% | $87,120.00 | Assured | Assured | | $2,403.00 | $2,403.00 | | | | | | | | | | | | $26,136.00 | $113,256.00 |
| …N5 | 4/1/21 | 5.000% | $91,560.00 | Assured | Assured | | $5,172.00 | $5,172.00 | $5,172.00 | $2,649.00 | $2,649.00 | | | | | | | | | $32,046.00 | $123,606.00 |
| …N5 | 4/1/22 | 5.000% | $96,120.00 | Assured | Assured | | $11,988.00 | $11,988.00 | $11,988.00 | $11,988.00 | $11,988.00 | $11,988.00 | | | | | | | | $38,448.00 | $134,568.00 |
| …63 | 4/1/28 | 5.000% | $206,880.00 | Assured | Assured | | $5,172.00 | $5,172.00 | $5,172.00 | $11,988.00 | $11,988.00 | $9,207.00 | $9,207.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $3,239.00 | | $301,158.00 | $760,678.00 |
| …63 | 4/1/28 | 5.000% | $475,920.00 | Assured | Assured | | $11,988.00 | $11,988.00 | $11,988.00 | $14,988.00 | $14,988.00 | $11,988.00 | $11,988.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $3,239.00 | | $1,093,288.00 | $1,893,288.00 |
| **UT (2006-A)** | | | $1,341,480.00 | | | | $75,565.00 | $75,565.00 | $37,560.00 | $16,637.00 | $16,637.00 | $14,677.00 | $14,677.00 | $11,988.00 | $9,207.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $551,808.00 | |
| **UT (2008-B(1))** | | | | | | | | | | | | | | | | | | | | | |
| …9P3 | 4/1/15 | 5.000% | $191,280.00 | Insured | Insured | | | | | | | | | | | | | | | $9,564.00 | $200,844.00 |
| …9Q1 | 4/1/16 | 5.000% | $82,560.00 | Insured | Insured | | | | | | | | | | | | | | | $8,256.00 | $90,816.00 |
| …9R9 | 4/1/17 | 5.000% | $85,920.00 | Insured | Insured | | $318.81 | $161.19 | | | | | | | | | | | | $17,888.00 | $98,888.00 |
| …9S7 | 4/1/18 | 5.000% | $50,560.00 | Insured | Insured | | | | | | | | | | | | | | | $10,112.00 | $60,672.00 |
| **UT (2008-B(1))** | | | $450,720.00 | | | | | | | | | | | | | | | | | $49,920.00 | $499,620.00 |
| **Net** | | | $7,941,340.00 | | | | $52,463.30 | $52,463.30 | $38,076.87 | $25,411.02 | $25,411.02 | $14,988.00 | $14,988.00 | $9,207.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $3,239.00 | $2,233,794.94 | $10,175,634.94 |
| Ambac | | | $2,032,469.00 | | | | $14,659.94 | $14,659.94 | $9,673.03 | $4,774.02 | $4,774.02 | | | | | | | | | $554,422.82 | $2,586,891.82 |
| AGIC/MBIA | | | $5,861,893.00 | | | | $37,484.55 | $37,484.55 | $28,242.66 | $20,637.00 | $20,637.00 | $14,988.00 | $14,988.00 | $9,207.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $3,239.00 | $1,666,270.80 | $7,528,162.80 |
| FGIC | | | $47,470.00 | | | | $318.81 | $318.81 | $161.19 | | | | | | | | | | | $13,101.32 | $60,580.32 |
| **Total** | | | $7,941,340.00 | | | | $52,463.30 | $52,463.30 | $38,076.87 | $25,411.02 | $25,411.02 | $14,988.00 | $14,988.00 | $9,207.00 | $9,207.00 | $6,285.00 | $6,285.00 | $3,239.00 | $3,239.00 | $2,233,794.94 | $10,175,634.94 |

* Subject to Mandatory Redemption

Bond Series Subject to Mandatory Redemption

**Issuance: 2004-B(2)**

CUSIP: 25093ZX1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | | | $13,800.00 | 5.240% | $361.56 |
| 4/1/15 | Ambac | 6/30/15 | $3,720.00 | $10,080.00 | 5.240% | $361.56 |
| 10/1/15 | Ambac | | | $10,080.00 | 5.240% | $264.10 |
| 4/1/16 | Ambac | 6/30/16 | $3,960.00 | $6,120.00 | 5.240% | $264.10 |
| 10/1/16 | Ambac | | | $6,120.00 | 5.240% | $160.34 |
| 4/1/17 | Ambac | 6/30/17 | $4,080.00 | $2,040.00 | 5.240% | $160.34 |
| 10/1/17 | Ambac | | | $2,040.00 | 5.240% | $53.45 |
| 4/1/18 | Ambac | 6/30/18 | $2,040.00 | - | 5.240% | $53.45 |
| Total | | | $13,800.00 | | | $1,678.90 |

**Issuance: 2008-A**

CUSIP: 25093N55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/15 | Assured | 6/30/15 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/15 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/16 | Assured | 6/30/16 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/16 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/17 | Assured | 6/30/17 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/17 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/18 | Assured | 6/30/18 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/18 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/19 | Assured | 6/30/19 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/19 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/20 | Assured | 6/30/20 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/20 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/21 | Assured | 6/30/21 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/21 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/22 | Assured | 6/30/22 | | $206,880.00 | 5.000% | $5,172.00 |
| 10/1/2022 | Assured | | | $206,880.00 | 5.000% | $5,172.00 |
| 4/1/2023 | Assured | 6/30/23 | $100,920.00 | $105,960.00 | 5.000% | $5,172.00 |
| 10/1/2023 | Assured | | | $105,960.00 | 5.000% | $2,649.00 |
| 4/1/2024 | Assured | 6/30/24 | $105,960.00 | - | 5.000% | $2,649.00 |
| Total | | | $206,880.00 | | | $98,394.00 |

**Issuance: 2008-A**

CUSIP: 25093N63

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/15 | Assured | 6/30/15 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/15 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/16 | Assured | 6/30/16 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/16 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/17 | Assured | 6/30/17 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/17 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/18 | Assured | 6/30/18 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/18 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/19 | Assured | 6/30/19 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/19 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/20 | Assured | 6/30/20 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/20 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/21 | Assured | 6/30/21 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/21 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/22 | Assured | 6/30/22 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/2022 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/2023 | Assured | 6/30/23 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/2023 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/2024 | Assured | 6/30/24 | | $479,520.00 | 5.000% | $11,988.00 |
| 10/1/2024 | Assured | | | $479,520.00 | 5.000% | $11,988.00 |
| 4/1/2025 | Assured | 6/30/25 | $111,240.00 | $368,280.00 | 5.000% | $11,988.00 |
| 10/1/2025 | Assured | | | $368,280.00 | 5.000% | $9,207.00 |
| 4/1/2026 | Assured | 6/30/26 | $116,880.00 | $251,400.00 | 5.000% | $9,207.00 |
| 10/1/2026 | Assured | | | $251,400.00 | 5.000% | $6,285.00 |
| 4/1/2027 | Assured | 6/30/27 | $122,640.00 | $128,760.00 | 5.000% | $6,285.00 |
| 10/1/2027 | Assured | | | $128,760.00 | 5.000% | $3,219.90 |
| 4/1/2028 | Assured | 6/30/28 | $128,760.00 | - | 5.000% | $3,219.90 |
| Total | | | $479,520.00 | | | $301,158.00 |

**EXHIBIT C**

**STUB UTGO BONDS**

C-1

13-53846-tjt Doc 10185-5 Filed 09/10/15 Entered 09/10/15 11:00:52 Page 7 of 173
13-53846-tjt Doc 8045-8 Filed 10/22/14 Entered 10/22/14 03:48:20 Page 12 of 17 1142

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Issuer | Principal | Rate | 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Interest | | | | | | | | |
| **UTGO 1999-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | Assured | $373,350.00 | 5.250% | $9,800.44 | $9,800.44 | | | | | | | | | | | | |
| | 4/1/16 | Assured | $392,345.00 | 5.000% | $9,808.63 | $9,808.63 | $9,808.63 | $9,808.63 | | | | | | | | | | |
| | 4/1/16 | Assured | $411,995.00 | 5.000% | $10,299.88 | $10,299.88 | $10,299.88 | $10,299.88 | | | | | | | | | | |
| | 4/1/17 | Assured | $432,955.00 | 5.000% | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | $10,823.88 | | | | | | | | |
| | 4/1/19 | Assured | $454,570.00 | 5.000% | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | | | | |
| | | | **$2,065,215.00** | | $52,097.06 | $42,296.63 | $32,488.00 | $32,488.00 | $22,188.13 | $22,188.13 | $11,364.25 | $11,364.25 | $11,364.25 | $11,364.25 | | | | |
| **UTGO 2001-A(I)** | | | | | | | | | | | | | | | | | | |
| | 4/1/16 | NPFG | $778,140.00 | 5.375% | $20,912.51 | $22,039.11 | $22,039.11 | $22,039.11 | | | | | | | | | | |
| | 4/1/16 | NPFG | $820,060.00 | 5.375% | $23,236.13 | $23,236.13 | $23,236.13 | $23,236.13 | $23,236.13 | | | | | | | | | |
| | 4/1/17 | NPFG | $864,600.00 | 5.375% | $49,288.75 | $49,288.75 | $49,288.75 | $40,288.75 | $40,288.75 | $23,236.13 | | | | | | | | |
| | 4/1/18 | NPFG | $1,834,000.00 | 5.375% | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $90,288.75 | | | | | | |
| | 4/1/18 | NPFG | $1,834,000.00 | 5.000% | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 |
| | 4/1/21 | NPFG | $1,834,000.00 | 5.000% | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 |
| | 4/1/21 | NPFG | $1,834,000.00 | 5.000% | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 | $45,850.00 |
| | | | **$9,798,800.00** | | $253,026.50 | $232,113.99 | $232,113.99 | $210,074.88 | $210,074.88 | $186,838.75 | $137,550.00 | $137,550.00 | $91,700.00 | $91,700.00 | | | | |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| | 4/1/21 | NPFG | $424,440.00 | 5.125% | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 | $10,876.28 |
| | 4/1/21 | NPFG | $446,055.00 | 5.125% | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 | $11,430.16 |
| | | | **$870,495.00** | | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 | $22,306.43 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | Syncora | $39,300.00 | 4.000% | $786.00 | $786.00 | | | | | | | | | | | | |
| | 4/1/15 | Syncora | $334,000.00 | 5.250% | $8,768.81 | $8,768.81 | | | | | | | | | | | | |
| | 4/1/16 | Syncora | $392,345.00 | 5.250% | $10,299.88 | $10,299.88 | $10,299.88 | $10,299.88 | | | | | | | | | | |
| | 4/1/17 | Syncora | $412,650.00 | 5.250% | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | $10,832.06 | | | | | | | | |
| | 4/1/18 | Syncora | $434,265.00 | 5.250% | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | $11,399.46 | | | | | | |
| | 4/1/19 | Syncora | $457,190.00 | 5.250% | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | $12,001.24 | | | | |
| | 4/1/20 | Syncora | $65,500.00 | 4.500% | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | $1,473.75 | | |
| | 4/1/20 | Syncora | $445,975.00 | 5.350% | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | $10,018.03 | | |
| | 4/1/21 | Syncora | $505,660.00 | 5.250% | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 | $13,273.58 |
| | 4/1/22 | Syncora | $65,500.00 | 4.625% | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 | $1,514.69 |
| | 4/1/22 | Syncora | $467,015.00 | 5.250% | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 | $12,259.14 |
| | 4/1/23 | Syncora | $106,500.00 | 4.625% | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 |
| | 4/1/23 | Syncora | $365,525.00 | 5.250% | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 |
| | | | **$4,149,425.00** | | $107,612.41 | $107,612.41 | $98,057.59 | $98,057.59 | $87,758.54 | $87,758.54 | $76,926.48 | $76,926.48 | $65,527.02 | $65,527.02 | $53,525.78 | $53,525.78 | $41,134.00 | $41,134.00 |
| **UTGO 2006-A(II)** | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | Ambac | $589,500.00 | 5.250% | $15,474.38 | $15,474.38 | | | | | | | | | | | | |
| | 4/1/16 | Ambac | $24,235.00 | 4.250% | $514.99 | $514.99 | $514.99 | $514.99 | | | | | | | | | | |
| | 4/1/16 | Ambac | $797,135.00 | 5.250% | $20,934.79 | $20,934.79 | $20,934.79 | $20,934.79 | $20,934.79 | | | | | | | | | |
| | 4/1/17 | Ambac | $864,600.00 | 5.000% | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | $21,615.00 | | | | | | | | |
| | 4/1/21 | Ambac | $907,830.00 | 5.250% | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 | $23,830.54 |
| | 4/1/22 | Ambac | $49,125.00 | 4.500% | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 |
| | 4/1/22 | Ambac | $906,520.00 | 5.250% | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 |
| | 4/1/23 | Ambac | $102,835.00 | 4.600% | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 |
| | 4/1/24 | Ambac | $903,390.00 | 5.250% | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 |
| | | | **$5,344,370.00** | | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $133,319.36 | $117,844.98 | $117,844.98 | $96,465.19 | $96,465.19 | |

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(1)** | | | | | | | | | | | | | | | | | | |
|  | 4/1/15 | 5.000% | $1,136,425.00 | Ambac | $28,410.63 | $28,410.63 | | | | | | | | | | | | |
|  | 4/1/16 | 5.250% | $1,192,755.00 | Ambac | $31,309.82 | $31,309.82 | $31,309.82 | $31,309.82 | | | | | | | | | | |
|  | 4/1/17 | 4.000% | $39,055.00 | Ambac | $799.10 | $799.10 | $799.10 | $799.10 | $799.10 | $799.10 | | | | | | | | |
|  | 4/1/17 | 5.250% | $1,215,680.00 | Ambac | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | $31,911.60 | | | | | | | | |
|  | 4/1/18 | 5.250% | $262,900.00 | Ambac | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | $6,877.50 | | | | | | |
|  | | | $3,846,815.00 | | $99,308.64 | $99,308.64 | $70,898.02 | $70,898.02 | $39,588.20 | $39,588.20 | $6,877.50 | $6,877.50 | | | | | | |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | |
|  | 4/1/19 * | 5.240% | $75,325.00 | Ambac | $1,973.52 | $1,973.52 | $1,441.52 | $1,441.52 | $875.21 | $875.21 | $291.74 | $291.74 | | | | | | |
|  | | | $75,325.00 | | $1,973.52 | $1,973.52 | $1,441.52 | $1,441.52 | $875.21 | $875.21 | $291.74 | $291.74 | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
|  | 4/1/15 | 5.000% | $299,990.00 | Assured | $7,499.75 | $7,499.75 | | | | | | | | | | | | |
|  | 4/1/16 | 5.000% | $315,055.00 | Assured | $7,876.38 | $7,876.38 | $7,876.38 | $7,876.38 | | | | | | | | | | |
|  | 4/1/17 | 4.300% | $330,100.00 | Assured | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | $7,097.58 | | | | | | | | |
|  | 4/1/18 | 5.000% | $345,185.00 | Assured | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | $8,629.63 | | | | | | |
|  | 4/1/19 | 5.000% | $362,215.00 | Assured | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | $9,055.38 | | | | |
|  | 4/1/20 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | |
|  | 4/1/21 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
|  | 4/1/22 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
|  | 4/1/23 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
|  | 4/1/24 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
|  | 4/1/25 | 5.000% | $655,000.00 | Assured | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 |
|  | | | $5,582,565.00 | | $138,408.71 | $138,408.71 | $130,908.96 | $130,908.96 | $123,032.58 | $123,032.58 | $115,935.00 | $115,935.00 | $107,305.38 | $107,305.38 | $98,250.00 | $98,250.00 | $81,875.00 | $81,875.00 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
|  | 4/1/15 | 5.000% | $301,955.00 | Assured | $7,548.88 | $7,548.88 | | | | | | | | | | | | |
|  | 4/1/16 | 5.000% | $317,675.00 | Assured | $7,941.88 | $7,941.88 | $7,941.88 | $7,941.88 | | | | | | | | | | |
|  | 4/1/17 | 4.300% | $333,395.00 | Assured | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | $7,167.99 | | | | | | | | |
|  | 4/1/18 | 5.000% | $344,530.00 | Assured | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | $8,613.25 | | | | | | |
|  | 4/1/19 | 5.250% | $358,285.00 | Assured | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | $9,404.98 | | | | |
|  | 4/1/20 | 5.250% | $377,155.00 | Assured | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | $9,920.79 | | |
|  | | | $2,033,775.00 | | $50,597.77 | $50,597.77 | $43,048.89 | $43,048.89 | $35,107.02 | $35,107.02 | $27,939.03 | $27,939.03 | $19,325.78 | $19,325.78 | $9,920.79 | $9,920.79 | | |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | |
|  | 4/1/15 | 5.000% | $376,635.00 | Assured | $9,415.63 | $9,415.63 | | | | | | | | | | | | |
|  | 4/1/16 | 5.000% | $394,565.00 | Assured | $9,864.13 | $9,864.13 | $9,874.13 | $9,874.13 | | | | | | | | | | |
|  | 4/1/17 | 5.000% | $415,270.00 | Assured | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | $10,381.75 | | | | | | | | |
|  | 4/1/18 | 4.000% | $435,575.00 | Assured | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | $8,711.50 | | | | | | |
|  | 4/1/19 | 5.000% | $453,260.00 | Assured | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | $11,331.50 | | | | |
|  | 4/1/20 | 5.000% | $475,530.00 | Assured | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | $11,888.25 | | |
|  | 4/1/21 | 5.000% | $499,765.00 | Assured | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 | $12,494.13 |
|  | 4/1/22 | 5.000% | $524,655.00 | Assured | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 | $13,116.38 |
|  | 4/1/24 | 5.000% | $1,129,230.00 | Assured | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 | $28,230.50 |
|  | 4/1/28 | 5.000% | $2,617,380.00 | Assured | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 |
|  | | | $7,322,245.00 | | $186,878.25 | $186,878.25 | $171,462.63 | $171,462.63 | $161,588.80 | $161,588.80 | $151,206.75 | $151,206.75 | $142,495.25 | $142,495.25 | $131,163.75 | $131,163.75 | $119,275.50 | $119,275.50 |
| **UTGO 2008-B(1)** | | | | | | | | | | | | | | | | | | |
|  | 4/1/15 | 5.000% | $1,044,070.00 | Assured | $26,101.75 | $26,101.75 | | | | | | | | | | | | |
|  | 4/1/16 | 5.000% | $450,640.00 | Assured | $11,266.00 | $11,266.00 | $11,266.00 | $11,266.00 | | | | | | | | | | |
|  | 4/1/17 | 5.000% | $468,980.00 | Assured | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | $11,724.50 | | | | | | | | |
|  | 4/1/18 | 5.000% | $496,490.00 | Assured | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | $12,412.25 | | | | | | |
|  | | | $2,460,180.00 | | $61,504.50 | $61,504.50 | $35,402.75 | $35,402.75 | $24,136.75 | $24,136.75 | $12,412.25 | $12,412.25 | | | | | | |
| **Total** | | | $41,349,210.00 | | $1,101,033.14 | $1,101,033.14 | $981,256.76 | $981,256.76 | $870,275.46 | $870,275.46 | $756,241.40 | $756,241.40 | $639,935.46 | $639,935.46 | $524,711.74 | $524,711.74 | $406,846.13 | $406,846.13 |

\* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Issuer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Interest | | | | | | | | | | | |
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.250% | $373,150.00 | Assured | | | | | | | | | | | | | | | $19,600.88 | $392,950.88 |
| | 4/1/16 | 5.000% | $392,345.00 | Assured | | | | | | | | | | | | | | | $39,234.50 | $431,579.50 |
| | 4/1/17 | 5.000% | $411,995.00 | Assured | | | | | | | | | | | | | | | $61,799.25 | $473,794.25 |
| | 4/1/18 | 5.000% | $432,955.00 | Assured | | | | | | | | | | | | | | | $86,591.00 | $519,546.00 |
| | 4/1/19 | 5.000% | $454,570.00 | Assured | | | | | | | | | | | | | | | $113,642.50 | $568,212.50 |
| | | | $2,065,215.00 | | | | | | | | | | | | | | | | $320,868.13 | $2,386,083.13 |
| **UTGO 2001-A(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.375% | $778,140.00 | NPFG | | | | | | | | | | | | | | | $41,825.03 | $819,965.03 |
| | 4/1/16 | 5.375% | $820,060.00 | NPFG | | | | | | | | | | | | | | | $88,156.45 | $908,216.45 |
| | 4/1/17 | 5.375% | $864,600.00 | NPFG | | | | | | | | | | | | | | | $139,416.75 | $1,004,016.75 |
| | 4/1/18 | 5.375% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $394,310.00 | $2,228,310.00 |
| | 4/1/19 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $458,500.00 | $2,292,500.00 |
| | 4/1/20 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $550,200.00 | $2,384,200.00 |
| | 4/1/21 | 5.000% | $1,834,000.00 | NPFG | | | | | | | | | | | | | | | $641,900.00 | $2,475,900.00 |
| | | | $9,798,800.00 | | | | | | | | | | | | | | | | $2,314,308.23 | $12,113,108.23 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/21 | 5.125% | $424,440.00 | NPFG | $11,430.16 | | | | | | | | | | | | | | $152,267.85 | $576,707.85 |
| | 4/1/21 | 5.125% | $446,055.00 | NPFG | | $11,430.16 | | | | | | | | | | | | | $182,982.55 | $629,037.55 |
| | | | $870,495.00 | | $11,430.16 | $11,430.16 | | | | | | | | | | | | | $335,150.40 | $1,205,645.40 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 4.000% | $39,300.00 | Syncora | | | | | | | | | | | | | | | $1,572.00 | $40,872.00 |
| | 4/1/15 | 5.250% | $334,050.00 | Syncora | | | | | | | | | | | | | | | $17,537.63 | $351,587.63 |
| | 4/1/16 | 5.250% | $392,345.00 | Syncora | | | | | | | | | | | | | | | $41,196.23 | $433,541.23 |
| | 4/1/17 | 5.250% | $412,650.00 | Syncora | | | | | | | | | | | | | | | $64,992.38 | $477,642.38 |
| | 4/1/18 | 5.250% | $434,265.00 | Syncora | | | | | | | | | | | | | | | $91,195.65 | $525,460.65 |
| | 4/1/19 | 5.250% | $457,190.00 | Syncora | | | | | | | | | | | | | | | $120,012.38 | $577,202.38 |
| | 4/1/20 | 4.500% | $65,500.00 | Syncora | | | | | | | | | | | | | | | $17,685.00 | $83,185.00 |
| | 4/1/20 | 5.250% | $415,925.00 | Syncora | | | | | | | | | | | | | | | $131,016.38 | $546,941.38 |
| | 4/1/21 | 5.250% | $505,660.00 | Syncora | | | | | | | | | | | | | | | $185,830.05 | $691,490.05 |
| | 4/1/22 | 4.625% | $65,500.00 | Syncora | $1,514.69 | $1,514.69 | | | | | | | | | | | | | $24,235.00 | $89,735.00 |
| | 4/1/22 | 5.250% | $467,015.00 | Syncora | $12,259.14 | $12,259.14 | | | | | | | | | | | | | $196,146.30 | $663,161.30 |
| | 4/1/23 | 4.625% | $196,500.00 | Syncora | $4,544.06 | $4,544.06 | $4,544.06 | $4,544.06 | | | | | | | | | | | $81,791.13 | $278,291.13 |
| | 4/1/23 | 5.250% | $363,925.00 | Syncora | $9,542.53 | $9,542.53 | $9,542.53 | $9,542.53 | | | | | | | | | | | $171,765.56 | $535,200.56 |
| | | | $4,149,425.00 | | $27,860.43 | $27,860.43 | $14,086.59 | $14,086.59 | | | | | | | | | | | $1,144,977.66 | $5,294,402.66 |
| **UTGO 2004-A(1)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 | 5.250% | $389,500.00 | Ambac | | | | | | | | | | | | | | | $154,743.75 | $744,243.75 |
| | 4/1/20 | 4.250% | $24,235.00 | Ambac | | | | | | | | | | | | | | | $6,179.93 | $30,414.93 |
| | 4/1/20 | 5.250% | $797,135.00 | Ambac | | | | | | | | | | | | | | | $251,077.53 | $1,048,212.53 |
| | 4/1/21 | 5.000% | $864,600.00 | Ambac | | | | | | | | | | | | | | | $302,610.00 | $1,167,210.00 |
| | 4/1/22 | 5.250% | $907,300.00 | Ambac | $23,830.54 | $23,830.54 | | | | | | | | | | | | | $381,288.60 | $1,289,118.60 |
| | 4/1/23 | 4.500% | $49,125.00 | Ambac | $1,105.31 | $1,105.31 | $1,105.31 | $1,105.31 | | | | | | | | | | | $19,895.63 | $69,020.63 |
| | 4/1/23 | 5.250% | $906,520.00 | Ambac | $23,796.15 | $23,796.15 | $23,796.15 | $23,796.15 | | | | | | | | | | | $428,330.70 | $1,334,850.70 |
| | 4/1/24 | 4.500% | $102,835.00 | Ambac | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | $2,365.21 | | | | | | | | | $47,304.10 | $150,139.10 |
| | 4/1/24 | 4.000% | $902,590.00 | Ambac | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | $23,692.99 | | | | | | | | | $473,859.75 | $1,376,449.75 |
| | | | $5,144,370.00 | | $74,790.19 | $74,790.19 | $50,959.66 | $50,959.66 | $26,058.19 | $26,058.19 | | | | | | | | | $2,065,309.98 | $7,209,679.98 |

*Subject to Mandatory Redemption

18-53846-tjt    Doc 2052-5    Filed 02/22/15    Entered 02/22/15 14:02:52    Page 10 of 173

173

1145

# UTGO Series STUB Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Insurer | Principal | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(I)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Ambac | $1,136,625.00 | | | | | | | | | | | | | | | $56,621.25 | $1,193,246.25 |
| | 4/1/16 | 5.250% | Ambac | $1,192,755.00 | | | | | | | | | | | | | | | $125,239.28 | $1,317,994.28 |
| | 4/1/17 | 4.000% | Ambac | $39,955.00 | | | | | | | | | | | | | | | $4,794.60 | $44,749.60 |
| | 4/1/17 | 5.250% | Ambac | $1,215,680.00 | | | | | | | | | | | | | | | $191,469.60 | $1,407,149.60 |
| | 4/1/18 | 5.250% | Ambac | $352,000.00 | | | | | | | | | | | | | | | $55,020.00 | $117,020.00 |
| | | | | **$3,846,815.00** | | | | | | | | | | | | | | | **$433,344.73** | **$4,280,159.73** |
| **UTGO 2004-B(2)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/19 * | 5.340% | Ambac | $75,325.00 | | | | | | | | | | | | | | | $9,163.97 | $84,488.97 |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $299,990.00 | | | | | | | | | | | | | | | $14,999.50 | $314,989.50 |
| | 4/1/16 | 5.000% | Assured | $315,005.00 | | | | | | | | | | | | | | | $31,505.50 | $346,560.50 |
| | 4/1/17 | 4.300% | Assured | $330,120.00 | | | | | | | | | | | | | | | $42,585.48 | $372,705.48 |
| | 4/1/17 | 5.000% | Assured | $345,185.00 | | | | | | | | | | | | | | | $69,037.00 | $414,222.00 |
| | 4/1/18 | 5.000% | Assured | $362,215.00 | | | | | | | | | | | | | | | $90,553.75 | $452,768.75 |
| | 4/1/19 | 5.000% | Assured | $655,000.00 | | | | | | | | | | | | | | | $196,500.00 | $851,500.00 |
| | 4/1/20 | 5.000% | Assured | $655,000.00 | | | | | | | | | | | | | | | $229,250.00 | $884,250.00 |
| | 4/1/21 | 5.000% | Assured | $655,000.00 | | | | | | | | | | | | | | | $262,000.00 | $917,000.00 |
| | 4/1/22 | 5.000% | Assured | $655,000.00 | $16,375.00 | $16,375.00 | | | | | | | | | | | | | $294,750.00 | $949,750.00 |
| | 4/1/23 | 5.000% | Assured | $655,000.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | | | | | $327,500.00 | $982,500.00 |
| | 4/1/24 | 5.000% | Assured | $655,000.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | | | $360,250.00 | $1,015,250.00 |
| | 4/1/25 | 5.000% | Assured | $655,000.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | $16,375.00 | | | | | | | | |
| | | | | **$5,582,565.00** | $65,500.00 | $65,500.00 | $49,125.00 | $49,125.00 | $32,750.00 | $32,750.00 | $16,375.00 | $16,375.00 | | | | | | | **$1,918,931.23** | **$7,501,496.23** |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $301,955.00 | | | | | | | | | | | | | | | $15,097.75 | $317,053.75 |
| | 4/1/16 | 5.000% | Assured | $317,675.00 | | | | | | | | | | | | | | | $31,767.50 | $349,442.50 |
| | 4/1/17 | 4.300% | Assured | $333,395.00 | | | | | | | | | | | | | | | $43,007.06 | $376,402.06 |
| | 4/1/18 | 5.000% | Assured | $344,530.00 | | | | | | | | | | | | | | | $68,806.00 | $413,336.00 |
| | 4/1/19 | 5.250% | Assured | $358,285.00 | | | | | | | | | | | | | | | $94,049.81 | $452,334.81 |
| | 4/1/20 | 5.250% | Assured | $377,935.00 | | | | | | | | | | | | | | | $119,049.53 | $496,984.53 |
| | | | | **$2,033,775.00** | | | | | | | | | | | | | | | **$371,878.54** | **$2,405,653.54** |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $376,625.00 | | | | | | | | | | | | | | | $18,831.25 | $395,456.25 |
| | 4/1/16 | 5.000% | Assured | $394,965.00 | | | | | | | | | | | | | | | $39,496.50 | $434,461.50 |
| | 4/1/17 | 5.000% | Assured | $415,270.00 | | | | | | | | | | | | | | | $62,290.50 | $477,560.50 |
| | 4/1/17 | 4.000% | Assured | $435,575.00 | | | | | | | | | | | | | | | $69,692.00 | $505,267.00 |
| | 4/1/18 | 4.000% | Assured | $453,360.00 | | | | | | | | | | | | | | | $113,315.00 | $566,675.00 |
| | 4/1/19 | 5.000% | Assured | $475,530.00 | | | | | | | | | | | | | | | $142,659.00 | $618,189.00 |
| | 4/1/20 | 5.000% | Assured | $499,765.00 | | | | | | | | | | | | | | | $174,917.75 | $674,682.75 |
| | 4/1/21 | 5.000% | Assured | $524,655.00 | $13,116.38 | | | | | | | | | | | | | | $209,862.60 | $734,517.60 |
| | 4/1/22 | 5.000% | Assured | $1,129,220.00 | $28,230.50 | $28,230.50 | | | | | | | | | | | | | $537,067.25 | $1,666,287.25 |
| | 4/1/28 | 5.000% | Assured | $2,617,380.00 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $65,434.50 | $50,254.88 | $50,254.88 | $34,305.63 | $34,305.63 | $17,570.38 | $17,570.38 | $1,643,820.75 | $4,261,200.75 |
| | | | | **$7,322,245.00** | $106,781.38 | $93,665.38 | $93,665.38 | $93,665.38 | $79,893.63 | $79,893.63 | $65,434.50 | $65,434.50 | $50,254.88 | $50,254.88 | $34,305.63 | $34,305.63 | $17,570.38 | $17,570.38 | **$3,011,952.00** | **$10,334,197.00** |
| **UTGO 2008-B(I)** | | | | | | | | | | | | | | | | | | | | |
| | 4/1/15 | 5.000% | Assured | $1,044,070.00 | | | | | | | | | | | | | | | $52,203.50 | $1,096,273.50 |
| | 4/1/16 | 5.000% | Assured | $450,640.00 | | | | | | | | | | | | | | | $45,064.00 | $495,704.00 |
| | 4/1/17 | 5.000% | Assured | $468,980.00 | | | | | | | | | | | | | | | $70,347.00 | $539,327.00 |
| | 4/1/18 | 5.000% | Assured | $496,490.00 | | | | | | | | | | | | | | | $99,298.00 | $595,788.00 |
| | | | | **$2,460,180.00** | | | | | | | | | | | | | | | **$266,912.50** | **$2,727,092.50** |
| **Total** | | | | **$43,349,210.00** | $286,362.15 | $286,362.15 | $207,836.25 | $207,836.25 | $138,701.82 | $138,701.82 | $81,809.50 | $81,809.50 | $50,254.88 | $50,254.88 | $34,305.63 | $34,305.63 | $17,570.38 | $17,570.38 | **$12,192,797.36** | **$55,542,007.36** |

\* Subject to Mandatory Redemption

# UTGO Series STUB Bonds - Debt Service

## Bond Series Subject to Mandatory Redemption

### Issuance: 2004-B(2)

CUSIP 25109J2X1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | - | $75,325.00 | 5.240% | $1,973.52 |
| 4/1/15 | Ambac | 6/30/15 | - | | 5.240% | $1,973.52 |
| 10/1/15 | Ambac | 6/30/16 | $20,305.00 | $55,020.00 | 5.240% | $1,441.52 |
| 4/1/16 | Ambac | 6/30/16 | | $55,020.00 | 5.240% | $1,441.52 |
| 10/1/16 | Ambac | 6/30/17 | $21,615.00 | $33,405.00 | 5.240% | $875.21 |
| 4/1/17 | Ambac | 6/30/17 | | $33,405.00 | 5.240% | $875.21 |
| 10/1/17 | Ambac | 6/30/18 | $22,270.00 | $11,135.00 | 5.240% | $291.74 |
| 4/1/18 | Ambac | 6/30/18 | $11,135.00 | - | 5.240% | $291.74 |
| Total | | | $75,325.00 | | | $9,163.97 |

### Issuance: 2008-A

CUSIP 25109J3N63

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/15 | Assured | 6/30/15 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/15 | Assured | 6/30/16 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/16 | Assured | 6/30/16 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/16 | Assured | 6/30/17 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/17 | Assured | 6/30/17 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/17 | Assured | 6/30/18 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/18 | Assured | 6/30/18 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/18 | Assured | 6/30/19 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/19 | Assured | 6/30/19 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/20 | Assured | 6/30/20 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/20 | Assured | 6/30/20 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/20 | Assured | 6/30/21 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/21 | Assured | 6/30/21 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/21 | Assured | 6/30/22 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/22 | Assured | 6/30/22 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/2023 | Assured | 6/30/2023 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2023 | Assured | 6/30/2024 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 4/1/2024 | Assured | 6/30/2024 | - | $2,617,380.00 | 5.000% | $65,434.50 |
| 10/1/2025 | Assured | 6/30/2025 | $607,185.00 | $2,010,195.00 | 5.000% | $65,434.50 |
| 4/1/2025 | Assured | 6/30/2025 | - | $2,010,195.00 | 5.000% | $50,254.88 |
| 10/1/2026 | Assured | 6/30/2026 | $637,970.00 | $1,372,225.00 | 5.000% | $50,254.88 |
| 4/1/2026 | Assured | 6/30/2026 | - | $1,372,225.00 | 5.000% | $34,305.63 |
| 10/1/2027 | Assured | 6/30/2027 | $669,410.00 | $702,815.00 | 5.000% | $34,305.63 |
| 4/1/2027 | Assured | 6/30/2027 | - | $702,815.00 | 5.000% | $17,570.38 |
| 10/1/2028 | Assured | 6/30/2028 | $702,815.00 | - | 5.000% | $17,570.38 |
| 4/1/2028 | Assured | 6/30/2028 | | | | |
| Total | | | $2,617,380.00 | | | $1,643,820.75 |

### Issuance: 2008-A

CUSIP 25109J3N55

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/15 | Assured | 6/30/15 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/15 | Assured | 6/30/16 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/16 | Assured | 6/30/16 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/16 | Assured | 6/30/17 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/17 | Assured | 6/30/17 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/17 | Assured | 6/30/18 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/18 | Assured | 6/30/18 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/18 | Assured | 6/30/19 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/19 | Assured | 6/30/19 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/19 | Assured | 6/30/20 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/20 | Assured | 6/30/20 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/20 | Assured | 6/30/21 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/21 | Assured | 6/30/21 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/21 | Assured | 6/30/22 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/22 | Assured | 6/30/22 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 10/1/2022 | Assured | 6/30/2023 | | $1,129,230.00 | 5.000% | $28,230.50 |
| 4/1/2023 | Assured | 6/30/2023 | $550,855.00 | $578,365.00 | 5.000% | $28,230.50 |
| 10/1/2023 | Assured | 6/30/2024 | | $578,365.00 | 5.000% | $14,459.13 |
| 4/1/2024 | Assured | 6/30/2024 | $578,365.00 | - | 5.000% | $14,459.13 |
| 10/1/2024 | Assured | 6/30/2025 | | | | |
| Total | | | $1,129,220.00 | | | $537,067.25 |

## EXHIBIT D

## FORM OF CONTINUING DISCLOSURE UNDERTAKING

This Continuing Disclosure Undertaking (the "Undertaking") is executed and delivered by the City of Detroit, County of Wayne, State of Michigan (the "City") in connection with bonds issued by the City, purchased or to be purchased with funds from the Michigan Finance Authority Local Government Loan Program Revenue Bonds, Series [2014], of the Type designated City of Detroit Unlimited Tax General Obligation Local Project Bonds (the "Local Project Municipal Obligations") by the Michigan Finance Authority (the "MFA"). The City covenants and agrees for the benefit of the Bondholders, as hereinafter defined, as follows:

(a)     *Definitions.*  The following terms used herein shall have the following meanings:

"Audited Financial Statements" means the annual audited financial statement pertaining to the City prepared by an individual or firm of independent certified public accountants as required by Act 2, Public Acts of Michigan, 1968, as amended, which presently requires preparation in accordance with generally accepted accounting principles.

"Bondholders" shall mean the MFA and the registered owner of any MFA Bond or any person which (a) has the power, directly or indirectly, to vote or consent with respect to, or to dispose of ownership of, any MFA Bond (including any person holding an MFA Bond through a nominee, depository or other intermediary), or (b) is treated as the owner of any MFA Bond for federal income tax purposes.

"EMMA" shall mean the MSRB's Electronic Municipal Market Access System or such other system, Internet Web Site, or repository hereafter prescribed by the MSRB for the submission of electronic filings pursuant to the Rule.

"MFA Bond" means any bond issued by the MFA which is secured in whole or in part by payments to be received on the Local Project Municipal Obligations.

"MSRB" means the Municipal Securities Rulemaking Board.

"Rule" means Rule 15c2-12 promulgated by the SEC pursuant to the Securities Exchange Act of 1934, as amended.

"SEC" means the United States Securities and Exchange Commission.

(b)     *Continuing Disclosure.*  The City hereby agrees, in accordance with the provisions of the Rule, to provide or cause to be provided to the MSRB through EMMA no later than 270 days after the end of its fiscal year the following annual financial information and operating data, commencing with the fiscal year ended June 30, 20__ in an electronic format as prescribed by the MSRB, the Audited Financial Statements and updates of certain financial and operating data of the City appearing under the headings and tables in the Official Statement of

the MFA dated _____, 2014 relating to the MFA Bonds as follows: [Tables 1 through 32, inclusive, and 42 in Appendix II to the Official Statement ("Annual Financial Information").]

If the fiscal year of the City is changed, the City shall send notice of such change to the MSRB through EMMA prior to the earlier of the ending date of the fiscal year prior to such change or the ending date of the fiscal year as changed.

In the event that the Audited Financial Statements are not available by the date specified above, they will be provided when available and Unaudited Financial Statements will be filed by such date and the Audited Financial Statements will be filed as soon as available.

Such annual financial information and operating data described above are expected to be provided directly by the City by specific reference to documents available to the public through EMMA or filed with the SEC.

(c)     *Notice of Failure to Disclose.* The City agrees to provide or cause to be provided, in a timely manner, to the MSRB through EMMA, in an electronic format as prescribed by the MSRB, notice of a failure by the City to provide the annual financial information with respect to the City described in subsection (b) above on or prior to the dates set forth in subsection (b) above.

(d)     *Occurrence of Events.* The City agrees to provide or cause to be provided to the MSRB through EMMA, in an electronic format as prescribed by the MSRB, in a timely manner not in excess of ten business days after the occurrence of the event, notice of the occurrence of any of the following events listed in (b)(5)(i)(C) of the Rule with respect to the Local Project Municipal Obligations:

    (1)     principal and interest payment delinquencies;

    (2)     non-payment related defaults, if material;

    (3)     unscheduled draws on debt service reserves reflecting financial difficulties;

    (4)     unscheduled draws on credit enhancements reflecting financial difficulties;

    (5)     substitution of credit or liquidity providers, or their failure to perform;

    (6)     adverse tax opinions, the issuance by the Internal Revenue Service of proposed or final determinations of taxability, Notices of Proposed Issue (IRS Form 5701-TEB) or other material notices or determinations with respect to the tax status of the Local Project Municipal Obligations, or other material events affecting the tax status of the Local Project Municipal Obligations;

    (7)     modifications to rights of Bondholders, if material;

    (8)     bond calls, if material, and tender offers;

    (9)     defeasances;

    (10)    release, substitution, or sale of property securing repayment of the Local Project Municipal Obligations, if material;

    (11)    rating changes;

(12)   bankruptcy, insolvency, receivership or similar event of the City, which is considered to occur when any of the following occur: the appointment of a receiver, fiscal agent or similar officer for the City in a proceeding under the U.S. Bankruptcy Code or in any other proceeding under state or federal law in which a court or governmental authority has assumed jurisdiction over substantially all of the assets or business of the City, or if such jurisdiction has been assumed by leaving the existing governing body and officials or officers in possession but subject to the supervision and orders of a court or governmental authority, or the entry of an order confirming a plan of reorganization, arrangement or liquidation by a court or governmental authority having supervision or jurisdiction over substantially all of the assets or business of the City;

(13)   the consummation of a merger, consolidation, or acquisition involving the City or the sale of all or substantially all of the assets of the City, other than in the ordinary course of business, the entry into a definitive agreement to undertake such an action or the termination of a definitive agreement relating to any such actions, other than pursuant to its terms, if material; or

(14)   appointment of a successor or additional trustee or the change of name of a trustee, if material.

(e)   *Materiality Determined Under Federal Securities Laws.* The City agrees that its determination of whether any event listed in subsection (d) is material shall be made in accordance with federal securities laws.

(f)   *Termination of Reporting Obligation.* The City reserves the right to terminate their obligation to provide annual financial information and notices of material events, as set forth above, if and when the City is no longer an "obligated person" with respect to the MFA Bonds within the meaning of the Rule, including upon legal defeasance of all MFA Bonds.

(g)   *Identifying Information.* All documents provided to the MSRB through EMMA shall be accompanied by the identifying information prescribed by the MSRB.

(h)   *Benefit of Bondholders.* The City agrees that its undertaking pursuant to the Rule set forth in this Section is intended to be for the benefit of the Bondholders and shall be enforceable by any Bondholder; provided that, the right to enforce the provisions of this undertaking shall be limited to a right to obtain specific enforcement of the City's obligations hereunder and any failure by the City to comply with the provisions of this undertaking shall not constitute a default or an event of default with respect to the Bonds.

(i)   *Amendments to the Undertaking.* Amendments may be made in the specific types of information provided or the format of the presentation of such information to the extent deemed necessary or appropriate in the judgment of the City, provided that the City agrees that any such amendment will be adopted procedurally and substantively in a manner consistent with the Rule, including any interpretations thereof by the SEC, which, to the extent applicable, are incorporated herein by reference. Such interpretations currently include the requirements that (a)

the amendment may only be made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the City or the type of activities conducted thereby, (b) the undertaking, as amended, would have complied with the requirements of the Rule at the time of the primary offering of the MFA Bonds, after taking into account any amendments or interpretations of the Rule, as well as any change in circumstances, and (c) the amendment does not materially impair the interests of Bondholders, as determined by parties unaffiliated with the City (such as independent legal counsel), but such interpretations may be changed in the future. If the accounting principles to be followed by the City in the preparing of the Audited Financial Statements are modified, the annual financial information for the year in which the change is made shall present a comparison between the financial statements as prepared on the prior basis and the statements as prepared on the new basis, and otherwise shall comply with the requirements of the Rule, in order to provide information to investors to enable them to evaluate the ability of the City to meet its obligations. A notice of the change in accounting principles shall be sent to the MSRB through EMMA.

(j)     *Municipal Advisory Council of the State of Michigan.* The City shall also file by electronic or other means any information or notice required to be filed with the MSRB through EMMA pursuant to this Undertaking in a timely manner with the Municipal Advisory Council of the State of Michigan.

<div style="margin-left:30%">

CITY OF DETROIT
County of Wayne
State of Michigan


By_____
    Its: Finance Director

</div>

Dated: _____, 2014

22059790.15\022765-00202
7/23/14 7:57 AM

**Exhibit C**

**ANNUAL CERTIFICATION OF IMPOSITION OF DEBT MILLAGE LEVY**

C-1

173

Exhibit C
ANNUAL CERTIFICATION OF IMPOSITION OF DEBT MILLAGE LEVY

# Millage Calculation

| Numerator | | |
|---|---|---|
| Fiscal Year 2015 Interest | $ | 24,753,181 |
| Fiscal Year 2015 Principal | $ | 37,795,000 |
| Projected Bond Sales - Current Year (Interest) | $ | - |
| Projected Bond Sales - Current Year (Principal) | $ | - |
| Projected Bond Sales - Next Year (Interest) | $ | - |
| Projected Bond Sales - Next Year (Principal) | $ | - |
| **Fiscal Year 2015 Debt Service** | **$** | **62,548,181** |
| | | |
| Prior Year 2010E BAB Federal Tax Rebates | $ | 3,351,142 |
| Prior Year Real Property Tax Overcollection / (Undercollection) | $ | - |
| Prior Year Personal Property Tax Overcollection / (Undercollection) | $ | - |
| Earnings in Escrow Account | $ | - |
| Change in Escrow Account Funding Balance | $ | - |
| **Total Adjustments** | **$** | **3,351,142** |
| | | |
| **Tax Levy Requirement** | **$** | **59,197,039** |

| Denominator | | |
|---|---|---|
| **Total Net Tax Base** | $ | 6,025,940,795 |

| Millage | | |
|---|---|---|
| **Tax Rate** | | 0.0098237 |
| **Tax Rate (per $1000 valuation)** | | 9.8237 |

**Chief Financial Officer**
**City of Detroit**

**Date**

13-53846-tjt   Doc 10485-5   Filed 09/16/15   Entered 09/16/15 11:00:52   Page 18 of
13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 03:48:25   Page 6 of 32   1153
173

**Exhibit D**

**FORM OF SETTLEMENT ESCROW AGREEMENT**

AFDOCS/10855025.6
CLI-2220387v14

# SETTLEMENT ESCROW AGREEMENT

THIS SETTLEMENT ESCROW AGREEMENT (the "**Agreement**" or "**Settlement Escrow Agreement**"), is dated as of the ___ day of _____, 2014, made by and among the City of Detroit, County of Wayne, State of Michigan (the "**City**"), Ambac Assurance Corporation ("**Ambac**"), Assured Guaranty Municipal Corp. and Assured Guaranty Corp. (together, "**Assured**"), and National Public Finance Guarantee Corporation ("**NPFG**"), and U. S. Bank National Association, Detroit, Michigan (in such capacity, the "**Settlement Escrow Trustee**"). In this Agreement, each of the City, Ambac, Assured, NPFG and the Settlement Escrow Trustee is referred to individually as a "**Party**"; Ambac, Assured, and NPFG (including their successors and assigns) are referred to collectively as the "**Bond Insurers**"; and the City, the Settlement Escrow Trustee and the Bond Insurers are referred to collectively as the "**Parties**."

Capitalized terms not otherwise defined herein shall have the meaning set forth in the UTGO Settlement Agreement (defined herein).

## W I T N E S S E T H :

WHEREAS, the City and the Bond Insurers have heretofore entered into a Settlement Agreement, dated XX (the "**UTGO Settlement Agreement**") to consensually resolve their dispute under or in respect of the Prior UTGO Bonds, the Assured/NPFG Action, the AMBAC Action as it relates to the Prior UTGO Bonds, and the UTGO Claims, all arising out of a petition for relief filed by the City pursuant to Chapter 9 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Michigan;

WHEREAS, if the Effective Date of the Plan does not occur on or prior to September 30, 2014, for any reason other than proximately by reason of the actions or positions taken by any of the Bond Insurers, or their failure to support the Plan as described in Section 3.1 of the UTGO Settlement Agreement, solely in their capacity as the insurers of the Prior UTGO Bonds and not in any other capacity (including, for the avoidance of doubt in their capacity as insurers of any other obligations of the City), the City will be obligated to pay into an escrow to be established with the Settlement Escrow Trustee under this Agreement the October 2014 scheduled interest debt service payment that would otherwise be made on the Restructured UTGO Bonds as if the transaction contemplated by the UTGO Settlement Agreement (other than the MFA Bond issuance) had closed (the "**Pro Forma Restructured UTGO Bonds**"), and any pro rata payments of principal and interest due thereafter, as further described in Section 2.8 of the UTGO Settlement Agreement and herein;

WHEREAS, the City has executed the Debt Millage Escrow Agreement pursuant to which the City will be required, as of the Effective Date, to segregate and deposit the UTGO Tax Levy with the Debt Millage Escrow Trustee;

NOW, THEREFORE, in consideration of the mutual undertakings, provisions and agreements herein contained, the sufficiency of which are hereby acknowledged, and in order to provide for the payment of the Pro Forma Restructured UTGO Bonds should the Effective Date

not occur on or prior to September 30, 2014, and to secure the performance and observance of the conditions and covenants herein set forth and for other valuable consideration, the receipt of which is hereby acknowledged, the City covenants and agrees with the Settlement Escrow Trustee and the Bond Insurers as follows:

## ARTICLE I.
## ESTABLISHMENT OF FUNDS AND ACCOUNTS

Section 101    Establishment of Settlement Escrow Fund.  There is hereby created and established with the Settlement Escrow Trustee, pursuant to Order No. ___ and this Agreement, a single and common trust fund designated the "Settlement Escrow Fund" (the "**Settlement Escrow Fund**").

Section 102    Deposits to the Settlement Escrow Fund.

(a)    If the Effective Date of the Plan does not occur on or prior to September 30, 2014 for any reason other than proximately by reason of the actions or positions taken by any of the Bond Insurers, or their failure to support the Plan as described in Section 3.1 of the UTGO Settlement Agreement, solely in their capacity as the insurers of the Prior UTGO Bonds and not in any other capacity (including, for the avoidance of doubt in their capacity as insurers of any other obligations of the City), the City shall pay the Settlement Escrow Trustee, from  Debt Millage Revenues,  for deposit into the Settlement Escrow Fund the October 2014 scheduled interest debt service payment with respect to  the Pro Forma Restructured UTGO Bonds, as shown on Exhibit A, and any pro rata payments of principal and interest due thereafter, as shown on Exhibit A, as if the transaction contemplated by the UTGO Settlement Agreement (other than the MFA Bond issuance) had closed.  Any such monies in the Settlement Escrow Fund which would have been payable on October 1, 2014 shall be released to the Bond Insurers on the Effective Date of the Plan.  Any other monies then on deposit in the Settlement Escrow Fund shall be transferred on the Effective Date  to the Debt Millage Escrow Trustee for deposit in the 2014 UTGO Municipal Obligation Subaccount in the 2014 UTGO Bonds Account established pursuant to the Debt Millage Escrow Agreement.

(b)    If the Plan is not effective by March 31, 2015, and the Bankruptcy Court has issued an Approval Order (that is not stayed pending appeal) approving the settlement embodied in the UTGO Settlement Agreement, the monies in the Settlement Escrow Fund  will be released and paid to the Bond Insurers in the amounts shown in Exhibit A for each prior interest payment date and the City shall make, or shall cause the Debt Millage Escrow Trustee to make, all subsequent debt service payments on each interest date payment (as shown on Exhibit A) directly to the paying agent for the Prior UTGO Bonds.  If an Approval Order is entered but is subject to a stay pending appeal, the City shall continue to pay into the Settlement Escrow Fund the scheduled debt service on the Pro Forma Restructured UTGO Bonds as shown on Exhibit A for so long as such stay remains in effect, and, as soon as such order is no longer subject to stay, shall thereafter apply all monies in the Settlement Escrow Fund first, to immediately reimburse the Bond Insurers for payments of principal and interest made on and after October 1, 2014 with respect to the Prior UTGO Bonds, and thereafter to make payments directly to the Paying Agent for the UTGO Bonds.

2
13-53846-tjt   Doc 10485-5   Filed 09/16/15   Entered 09/16/15 11:00:52   Page 21 of 32
13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 03:48:25   Page 21 of 32
173
1156

(c)     Notwithstanding the foregoing, if any Bond Insurer shall have defaulted in its obligation to make payments under its respective Bond Insurance Policy or Policies, any payment required to be made to such Bond Insurer shall be made to the holders of the Prior UTGOs at the direction of the City but only to the extent of any uncured failure or shortfall in the Bond Insurer's payment.

Section 103     Partial Payments; Accounting.

(a)     If on any interest payment date amounts held in the Settlement Escrow Fund are less than the amounts due with respect to all Pro Forma Restructured UTGO Bonds (as shown on Exhibit A), such payments shall distributed pro rata based upon the aggregate amount payable to each Bond Insurer.  If the City fails to deposit into the Settlement Escrow Fund, or to otherwise pay to the Bond Insurers or holders of the Prior UTGO the amounts required by this Agreement, any deficiencies shall be paid into the Settlement Escrow Fund from the first available amounts of the Aggregate UTGO Tax Levy as provided for in Section 2.4(b)(i) of the UTGO Settlement Agreement, and shall be distributed to, or at the direction of the Bond Insurers, pro rata, as soon as practicable (subject to Section 102(b)) hereof.

(b)     The Settlement Escrow Trustee shall keep and maintain a record showing each deposit into the Settlement Escrow Fund, and all transfers of funds made therefrom, which shall be provided to any Bond Insurer upon request.

(c)     Any payment to a Bond Insurer shall be paid by wire transfer in immediately available funds into the accounts as shown in Section 501.

## ARTICLE II.
## INVESTMENT OF FUNDS

Section 201     Permitted Investments.  All money held by the Settlement Escrow Fund, without the need for further direction by the City,  shall be invested by the Settlement Escrow Trustee in accordance with written instructions from the City in mutual funds registered under the investment company act of 1940, title I of chapter 686, 54 Stat. 789, 15 USC 80a-1 to 80a-3 and 80a-4 to 80a-64, that are at the time of purchase within the highest classification established by not less than two standard rating services and so long as the portfolio of such mutual funds is limited to bonds, and other obligations on which the full and timely payment of principal and interest is unconditionally guaranteed by the full faith and credit of the United States.  All investments shall mature or be redeemable at the option of the holder no later than the next interest payment date on the Pro Forma Restructured UTGO Bonds.  In the absence of any written direction delivered to the Settlement Escrow Trustee by the City, the Settlement Escrow Trustee shall hold funds uninvested.  The Settlement Escrow Trustee shall be entitled to rely on any written direction from the City as to the suitability and legality of the directed investment.

# ARTICLE III.
## THE SETTLEMENT ESCROW TRUSTEE

Section 301    Powers and Duties of Settlement Escrow Trustee.  (a)  The Settlement Escrow Trustee may execute any of the trusts or powers hereof and perform any of its duties by or through attorneys, agents, receivers or employees, and shall be entitled to act upon the opinion or advice of its counsel concerning all matters hereof, and may in all cases be reimbursed hereunder for reasonable compensation paid to all such attorneys, agents, receivers and employees as may reasonably be employed in connection with the trust hereof.  The Settlement Escrow Trustee may act upon an opinion of counsel and shall not be responsible for any loss or damage resulting from any action or nonaction by it taken or omitted to be taken in good faith in reliance upon such opinion of counsel.

(b)    The Settlement Escrow Trustee shall not be responsible for any recital herein, or for the validity of the execution by the City of this Settlement Escrow Agreement, or of any supplements thereto or instruments of further assurance, or for the validity or sufficiency of, or filing of documents related to the security for the Prior UTGO Bonds intended to be secured hereby.

(c)    The Settlement Escrow Trustee shall not be responsible or liable for any loss suffered in connection with any investment of funds made by it in accordance with this Settlement Escrow Agreement.

(d)    The Settlement Escrow Trustee shall be protected in acting upon any notice, request, consent, certificate, order, affidavit, letter, telegram or other paper or document reasonably believed by it to be genuine and correct and to have been signed or sent by the proper person or persons.

(e)    As to the existence or non-existence of any fact or as to the sufficiency or validity of any instrument, paper or proceeding, the Settlement Escrow Trustee shall be entitled to rely upon a certificate believed in good faith to be genuine and correct, signed on behalf of the City or a Bond Insurer by an authorized officer of the City or Bond Insurer, as the case may be, as sufficient evidence of the facts therein contained.  The Settlement Escrow Trustee may also accept a similar certificate to the effect that any particular dealing, transaction or action is necessary or expedient, but may at its discretion secure such further evidence deemed necessary or advisable, but shall in no case be bound to secure the same.

(f)    The permissive right of the Settlement Escrow Trustee to do things enumerated in this Settlement Escrow Agreement, as amended, shall not be construed as a duty, and the Settlement Escrow Trustee shall not be answerable for other than its gross negligence or willful misconduct.  The immunities and exceptions from liability of the Settlement Escrow Trustee shall extend to its officers, directors, employees and agents.

(g)    The Settlement Escrow Trustee shall not be required to give any note or surety in respect to the execution of its rights and obligations hereunder.

(h)    All moneys received by the Settlement Escrow Trustee shall, until used or applied or invested as herein provided, be held in trust in the manner and for the purpose for which they

were received, but need not be segregated from other funds except to the extent required by this Settlement Escrow Agreement, as amended, or by law. The Settlement Escrow Trustee shall not be under any liability for interest on any moneys received hereunder except such as may be agreed upon.

(i)     The Settlement Escrow Trustee shall not be under any obligation to initiate any suit or to take any remedial proceeding under this Settlement Escrow Agreement or to take any steps in the execution of the trusts created by this Settlement Escrow Agreement or in the enforcement of any rights and powers under this Settlement Escrow Agreement until it has been indemnified to its satisfaction against any and all fees, costs and expenses and other reasonable disbursements and against all liability.

(j)     The Settlement Escrow Trustee shall have no responsibility or liability with respect to any information, statement or recital in any official statement, offering memorandum or other disclosure material prepared or distributed with respect to the issuance of the Prior UTGO Bonds, except for liability for its own gross negligence or willful misconduct.

(k)     The Settlement Escrow Trustee may become the holder of any of the Prior UTGO Bonds with the same rights it would have if it were not Settlement Escrow Trustee, and, to the extent permitted by law, may act as depositary for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of holders, whether or not such committee shall represent the holders of a majority in principal amount of any of the Prior UTGO Bonds of such series then outstanding.

(l)     The Settlement Escrow Trustee shall not be liable for any error of judgment made in good faith by any of its officers, employees, agents or representatives, unless it shall be proved that the Settlement Escrow Trustee was negligent in ascertaining the pertinent facts.

(m)     The Settlement Escrow Trustee has no obligation or liability to the holders for the payment of interest on, principal of or redemption premium, if any, with respect to the Prior UTGO Bonds from its own funds; but rather the Settlement Escrow Trustee's obligations shall be limited to the performance of its duties hereunder.

(n)     Whether or not therein expressly so provided, every provision of this Agreement or related documents, relating to the conduct or affecting the liability of or affording protection to the Settlement Escrow Trustee shall be subject to the provisions of this Article.

Section 302    Fees and Expenses of Settlement Escrow Trustee.  (a)  The Settlement Escrow Trustee shall be entitled to reasonable and customary fees for services rendered under this Agreement, as amended, and shall be reimbursed for all expenses reasonably incurred in connection with such services.  Such fees and expenses shall be payable by the City and shall be determined in accordance with the Fee Schedule attached as Exhibit E of this Agreement or as otherwise may be agreed to by the City and the Settlement Escrow Trustee.  The Settlement Escrow Trustee shall not have a lien for the payment of its fees and expenses upon any of the money deposited with it in accordance with this Agreement.

(b)     The City shall be liable for all fees, expenses, charges, losses, costs, liabilities and damages (including reasonable attorneys' or other professional fees) incurred by the Settlement

Escrow Trustee pursuant to this Agreement except for those which are adjudicated to have resulted from the gross negligence or willful misconduct of the Settlement Escrow Trustee, and shall pay such amounts to or at the direction of the Settlement Escrow Trustee.

Section 303    Resignation; Appointment of Successor Settlement Escrow Trustee; Successor Settlement Escrow Trustee Upon Merger, Consolidation or Sale.  (a)  The Settlement Escrow Trustee and any successor Settlement Escrow Trustee may resign only upon giving 60 days' prior written notice to the City and the Bond Insurers.  Such resignation shall take effect only upon the appointment of a successor Settlement Escrow Trustee and the acceptance of such appointment by the successor Settlement Escrow Trustee.  Upon appointment of a successor Settlement Escrow Trustee, the resigning Settlement Escrow Trustee shall, after payment of its fees, costs and expenses, assign all of its right, title and interest in the Settlement Escrow Fund, and transfer and assign its right, title and interest in the Settlement Escrow Agreement to the successor Settlement Escrow Trustee.  The successor Settlement Escrow Trustee shall meet the requirements of Section 303(b) below and shall accept in writing its duties and responsibilities hereunder and file such acceptance with the City.

(b)    In case the Settlement Escrow Trustee shall give notice of resignation or be removed, or be dissolved, or shall be in the course of dissolution or liquidation, or otherwise become incapable of acting hereunder, or in case it shall be taken under the control of any public office or offices, or of a receiver appointed by a court, a successor may be appointed by the Bond Insurers, with the prior written consent of the City (to the extent that no breach by the City of any material agreement or covenant, i.e. an "Event of Default," shall have occurred and be continuing under this Settlement Escrow Agreement, written notice of which has been provided by the Bond Insurers to the City and the Settlement Escrow Trustee), which consent shall not be unreasonably be withheld.  Every such Settlement Escrow Trustee appointed pursuant to the provisions of this Section 303(b) (i) shall at all times be a bank having trust powers or a trust company, (ii) shall at all times be organized and doing business under the laws of the United States of America or of any state, (iii) shall have, or be wholly owned by an entity having, a combined capital and surplus of at least $75,000,000, (iv) shall be authorized under such laws to exercise corporate trust powers, and (v) shall be subject to supervision or examination by federal or state authority.

(c)    Any corporation or association into which the Settlement Escrow Trustee may be merged or converted or with or into which it may be consolidated, or to which it may sell or transfer its corporate trust business and assets as a whole or substantially as a whole, or any corporation or association resulting from any merger, conversion, sale, consolidation or transfer to which it is a party, provided such company shall be eligible under Section 303(b) hereof, shall be and become successor Settlement Escrow Trustee hereunder and shall be vested with all the trusts, powers, rights, obligations, duties, remedies, immunities and privileges hereunder as was its predecessor, without the execution or filing of any instrument or any further act on the part of any of the parties hereto.

Section 304    Removal of Settlement Escrow Trustee.  The Settlement Escrow Trustee may be removed at any time by an instrument or concurrent instruments in writing delivered to the Settlement Escrow Trustee signed by the City and by all of the Bond Insurers.  No removal of the Settlement Escrow Trustee and no appointment of a successor Settlement Escrow Trustee

shall become effective until the successor Settlement Escrow Trustee has accepted its appointment. Upon such removal and the payment of its fees, costs and expenses, the Settlement Escrow Trustee shall assign to the successor Settlement Escrow Trustee all of its right, title and interest in the Trust Estate.

## ARTICLE IV.
## MISCELLANEOUS

Section 401    Notices; Payment Accounts.  Except as other provided, all notices, certificates, requests, complaints, demands or other communications under this Agreement shall be deemed sufficiently given when sent by first class mail or overnight mail postage prepaid, addressed as follows:

| | |
|---|---|
| If to the City, to: | City of Detroit<br>Coleman A. Young Municipal Center<br>2 Woodward Avenue, Suite 1126<br>Detroit MI 48226<br>Attention:  Chief Financial Officer |
| If to the Settlement Escrow Trustee, to: | [U.S. Bank National Association<br>535 Griswold, Suite 550<br>Detroit, Michigan 48226<br>Attention:  Corporate Trust Services] |
| If to the Bond Insurers, to: | Ambac Assurance Corporation<br>One State Street Plaza<br>New York, New York 10004<br>Attention:  Surveillance Department and<br>General Counsel's Office |
| | Assured Guaranty Municipal Corp and<br>Assured Guaranty Corp.<br>31 West 52nd Street<br>New York, NY 10019<br>Attention:  Kevin J. Lyons<br>Attention:  Terence Workman |
| | National Public Finance Guarantee Corporation<br>113 King Street<br>Armonk, NY 10504<br>Attention:  Kenneth Epstein and William J. Rizzo |

The City and the Settlement Escrow Trustee may, by giving notice hereunder, in writing, designate any further or different addresses to which subsequent notices, certificates, requests, complaints, demands or other communications hereunder shall be sent.

All payments to the Bond Insurers shall be made by wire transfer to the following accounts, unless otherwise changed by any Bond Insurer by written notice to the Escrow Agent:

[TO COME]

Section 402    Termination.  This Agreement shall terminate following delivery of written direction from the City and the Bond Insurers to the Settlement Escrow Trustee to so terminate, together with written notice that all fees owed to the Settlement Escrow Trustee have been paid in full.  Upon termination of this Agreement, any money remaining on deposit in the funds and accounts created and established hereunder shall be paid to the City.

Section 403    Amendments.  This Agreement shall only be amended by the written agreement of all Parties.

Section 404    Severability.  If any one or more sections, clauses or provisions of this Settlement Escrow Agreement shall be determined by a court of competent jurisdiction to be invalid or ineffective for any reason, such determination shall in no way affect the validity and effectiveness of the remaining sections, clauses and provisions of the Agreement.

Section 405    Headings.  Any headings shall be solely for convenience of reference and shall not constitute a part of the Agreement, nor shall they affect its meaning, construction or effect.

Section 406    Settlement Escrow Agreement Executed in Counterparts.  This Settlement Escrow Agreement may be executed simultaneously in several counterparts, each of which shall be deemed an original, and such counterparts together shall and will constitute one and the same instrument.

Section 407    Parties Interested Herein.  Nothing in this Settlement Escrow Agreement expressed or implied is intended or shall be construed to confer upon, or to give to, any person or entity, other than the Settlement Escrow Trustee, the City and the Bond Insurers any right, remedy or claim under or by reason of this Settlement Escrow Agreement or any covenant, condition or stipulation hereof, and all covenants, stipulations, promises and agreements in this Agreement on behalf of the City shall be for the sole and exclusive benefit of the Settlement Escrow Trustee, the City, and the Bond Insurers.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date set forth above.

CITY OF DETROIT

By _____
    Kevyn D. Orr
    Its: Emergency Manager


AMBAC ASSURANCE CORPORATION


By: _____
    Name:
    Title:


ASSURED GUARANTY CORP.


By: _____
    Name:
    Title:


ASSURED GUARANTY MUNICIPAL CORP.
By: _____
    Name:
    Title:


NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION


By: _____
    Name:
    Title:

U. S. BANK NATIONAL ASSOCIATION,
as Escrow Trustee

By _____

    Its: _____

# EXHIBIT A

## RESTRUCTURED UTGO BONDS DEBT SERVICE REQUIREMENTS
## AND APPLICABLE BOND INSURER

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Insurer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | | | | | | | |
| ...M3 | 4/1/15 | 5.250% | $2,476,650.00 | Assured | $65,012.06 | $65,012.06 | | | | | | | | | | | | |
| ...N1 | 4/1/16 | 5.000% | $2,602,625.05 | Assured | $65,066.38 | $65,066.38 | $65,066.38 | $65,066.38 | | | | | | | | | | |
| ...P6 | 4/1/17 | 5.000% | $2,733,005.00 | Assured | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | $68,325.13 | | | | | | | | |
| ...V0 | 4/1/18 | 5.000% | $2,872,045.00 | Assured | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | $71,801.13 | | | | | | |
| ...R2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | $75,385.75 | | | | |
| | | | **$13,699,785.00** | | $345,590.44 | $345,590.44 | $280,578.38 | $280,578.38 | $215,512.00 | $215,512.00 | $147,186.88 | $147,186.88 | $75,385.75 | $75,385.75 | | | | |
| **UTGO 2001-A(J)** | | | | | | | | | | | | | | | | | | |
| ...32 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | $138,724.99 | $138,724.99 | | | | | | | | | | | | |
| ...V43 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | $146,198.39 | $146,198.39 | $146,198.39 | $146,198.39 | | | | | | | | | | |
| ...V1 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | $154,138.88 | | | | | | | | |
| ...W9 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | $326,961.25 | | | | | | |
| ...N7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | | | | |
| ...P2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | | |
| ...Q0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 | $304,150.00 |
| | | | **$65,001,200.00** | | $1,678,473.50 | $1,678,473.50 | $1,539,748.51 | $1,539,748.51 | $1,393,550.13 | $1,393,550.13 | $1,239,411.25 | $1,239,411.25 | $912,450.00 | $912,450.00 | $608,300.00 | $608,300.00 | $304,150.00 | $304,150.00 |
| **UTGO 2002** | | | | | | | | | | | | | | | | | | |
| ...W6 | 4/1/21 | 5.125% | $2,815,560.00 | NPFG | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 | $72,148.73 |
| ...W6 | 4/1/23 | 5.125% | $2,958,945.00 | NPFG | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 | $75,822.97 |
| | | | **$5,774,505.00** | | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 | $147,971.69 |
| **UTGO 2003-A** | | | | | | | | | | | | | | | | | | |
| ...XX0 | 4/1/15 | 4.000% | $260,700.00 | Syncora | $5,214.00 | $5,214.00 | | | | | | | | | | | | |
| ...X28 | 4/1/16 | 5.250% | $2,215,950.00 | Syncora | $58,168.69 | $58,168.69 | $58,168.69 | $58,168.69 | | | | | | | | | | |
| ...X36 | 4/1/17 | 5.250% | $2,602,655.00 | Syncora | $68,319.69 | $68,319.69 | $68,319.69 | $68,319.69 | $68,319.69 | $68,319.69 | | | | | | | | |
| ...XT2 | 4/1/18 | 5.250% | $2,737,350.00 | Syncora | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | $71,855.44 | | | | | | |
| ...X44 | 4/1/18 | 5.250% | $2,880,735.00 | Syncora | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | $75,619.29 | | | | | | |
| ...XV7 | 4/1/19 | 5.250% | $3,032,810.00 | Syncora | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | $79,611.26 | | | | |
| ...XX9 | 4/1/20 | 5.250% | $372,430.00 | Syncora | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | $9,776.25 | | |
| ...XY7 | 4/1/20 | 5.250% | $2,759,075.00 | Syncora | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | $72,425.72 | | |
| ...XW5 | 4/1/21 | 5.250% | $3,354,340.00 | Syncora | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 | $88,051.43 |
| ...XY3 | 4/1/21 | 5.250% | $382,773.00 | Syncora | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 | $10,047.81 |
| ...XV1 | 4/1/22 | 5.250% | $3,097,985.00 | Syncora | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 | $81,322.11 |
| ...XZ8 | 4/1/22 | 5.250% | $1,148,360.00 | Syncora | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 |
| ...Y80 | 4/1/23 | 5.250% | $2,411,475.00 | Syncora | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 |
| | | | **$27,525,575.00** | | $713,886.34 | $713,886.34 | $650,473.66 | $650,473.66 | $582,153.96 | $582,153.96 | $510,298.53 | $510,298.53 | $434,679.23 | $434,679.23 | $355,067.97 | $355,067.97 | $272,866.00 | $272,866.00 |
| **UTGO 2004-A(J)** | | | | | | | | | | | | | | | | | | |
| ...YQ2 | 4/1/20 | 5.250% | $3,910,500.00 | Ambac | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 | $102,650.63 |
| ...YR0 | 4/1/20 | 4.250% | $160,765.00 | Ambac | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 | $3,416.26 |
| ...YS8 | 4/1/21 | 5.250% | $5,287,865.00 | Ambac | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 | $138,806.46 |
| ...YT6 | 4/1/21 | 5.000% | $5,735,400.00 | Ambac | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 | $143,385.00 |
| ...YU3 | 4/1/22 | 5.250% | $6,022,170.00 | Ambac | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 | $158,081.96 |
| ...YV1 | 4/1/22 | 5.250% | $279,360.00 | Ambac | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 | $7,332.19 |
| ...YW9 | 4/1/23 | 5.250% | $6,013,480.00 | Ambac | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 |
| ...YX7 | 4/1/23 | 4.600% | $597,410.00 | Ambac | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 |
| ...ZP | 4/1/24 | 5.250% | $5,987,410.00 | Ambac | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 |
| | | | **$34,125,630.00** | | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $884,385.65 | $639,512.31 |

Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

| CUSIP | Maturity Date | Rate | Principal | Issuer | Interest 10/1/14 | 4/1/15 | 10/1/15 | 4/1/16 | 10/1/16 | 4/1/17 | 10/1/17 | 4/1/18 | 10/1/18 | 4/1/19 | 10/1/19 | 4/1/20 | 10/1/20 | 4/1/21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 2004-B(I)** | | | | | | | | | | | | | | | | | | |
| 93729R28 | 4/1/15 | 5.000% | $7,538,375.00 | Ambac | $188,464.38 | $188,464.38 | | | | | | | | | | | | |
| 93729Q26 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | $207,696.43 | $207,696.43 | $207,696.43 | $207,696.43 | | | | | | | | | | |
| 93729S24 | 4/1/17 | 4.000% | $3,263,045.00 | Ambac | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | $5,300.90 | | | | | | | | |
| 93729T32 | 4/1/18 | 5.250% | $3,064,320.00 | Ambac | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $211,688.40 | $45,622.50 | | | | | | | |
| 93729T40 | 4/1/18 | 5.250% | $1,738,000.00 | Ambac | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | $45,622.50 | | | | | | |
| | | | **$23,516,185.00** | | $658,772.61 | $658,772.61 | $470,308.23 | $470,308.23 | $262,611.80 | $262,611.80 | $45,622.50 | $45,622.50 | | | | | | |
| **UTGO 2005-B** | | | | | | | | | | | | | | | | | | |
| 93732X1 / 93732X2 | 4/1/19 | 5.240% | $499,675.00 | Ambac | $13,091.49 | $13,091.49 | $9,562.48 | $9,562.48 | $5,805.79 | $5,805.79 | $1,935.26 | $1,935.26 | | | | | | |
| 93732G53 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | $49,750.25 | $49,750.25 | | | | | | | | | | | | |
| 93732G61 | 4/1/16 | 5.000% | $2,089,295.00 | Assured | $52,248.63 | $52,248.63 | $52,248.63 | $52,248.63 | | | | | | | | | | |
| 93732G79 | 4/1/17 | 4.300% | $2,189,880.00 | Assured | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | $47,082.42 | | | | | | | | |
| 93732G87 | 4/1/18 | 5.000% | $2,289,815.00 | Assured | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | $57,245.38 | | | | | | |
| 93732G95 | 4/1/19 | 5.000% | $2,402,785.00 | Assured | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | $60,069.63 | | | | |
| 93732H29 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | | |
| 93732H37 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 93732H45 | 4/1/22 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 93732H52 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 93732H60 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 |
| 93732H78 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $108,625.00 | $543,125.00 |
| | | | **$37,032,435.00** | | $938,346.30 | $938,346.30 | $868,396.05 | $868,396.05 | $816,147.42 | $816,147.42 | $769,065.00 | $769,065.00 | $711,819.63 | $711,819.63 | $651,750.00 | $651,750.00 | $543,125.00 | $543,125.00 |
| **UTGO 2005-C** | | | | | | | | | | | | | | | | | | |
| 93732J92 | 4/1/15 | 5.000% | $2,003,045.00 | Assured | $50,076.13 | $50,076.13 | | | | | | | | | | | | |
| 93732J84 | 4/1/16 | 5.000% | $2,107,325.00 | Assured | $52,683.13 | $52,683.13 | $52,683.13 | $52,683.13 | | | | | | | | | | |
| 93732K33 | 4/1/17 | 4.500% | $2,211,935.00 | Assured | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | $47,549.51 | | | | | | | | |
| 93732K41 | 4/1/18 | 5.000% | $2,285,470.00 | Assured | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | $57,136.75 | | | | | | |
| 93732K58 | 4/1/19 | 5.250% | $2,376,710.00 | Assured | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | $62,388.77 | | | | |
| 93732K66 | 4/1/20 | 5.250% | $2,507,065.00 | Assured | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | $65,810.46 | | |
| | | | **$13,491,225.00** | | $335,644.73 | $335,644.73 | $285,568.61 | $285,568.61 | $232,885.48 | $232,885.48 | $185,335.98 | $185,335.98 | $128,199.23 | $128,199.23 | $65,810.46 | $65,810.46 | | |
| **UTGO 2006-A** | | | | | | | | | | | | | | | | | | |
| 93732M56 | 4/1/15 | 5.000% | $2,494,375.00 | Assured | $62,459.38 | $62,459.38 | | | | | | | | | | | | |
| 93732M64 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | $65,500.88 | $65,500.88 | $65,500.88 | $65,500.88 | | | | | | | | | | |
| 93732M72 | 4/1/17 | 5.000% | $2,154,290.00 | Assured | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | $68,868.25 | | | | | | | | |
| 93732M98 | 4/1/18 | 4.000% | $3,006,740.00 | Assured | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | $75,168.50 | | | | |
| 93732N30 | 4/1/19 | 5.000% | $3,154,970.00 | Assured | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | $78,861.75 | | |
| 93732N30 | 4/1/20 | 5.000% | $3,315,535.00 | Assured | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 | $82,880.88 |
| 93732N48 | 4/1/22 | 5.000% | $3,490,345.00 | Assured | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 | $87,008.63 |
| 93732N55 | 4/1/28 | 5.000% | $3,490,780.00 | Assured | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 | $187,269.50 |
| | | | $17,362,620.00 | | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $434,065.50 | $791,224.50 |
| | | | **$13,491,225.00** | | $1,199,871.75 | $1,199,871.75 | $1,137,412.38 | $1,137,412.38 | $1,071,911.50 | $1,071,911.50 | $1,003,043.25 | $1,003,043.25 | $945,234.75 | $945,234.75 | $870,086.25 | $870,086.25 | $791,224.50 | $791,224.50 |
| **UTGO 2008-B(I)** | | | | | | | | | | | | | | | | | | |
| 93793S3 | 4/1/15 | 5.000% | $6,925,930.00 | Assured | $173,148.25 | $173,148.25 | $74,734.00 | $74,734.00 | | | | | | | | | | |
| 93793M1 | 4/1/16 | 5.000% | $2,989,360.00 | Assured | $74,734.00 | $74,734.00 | $77,775.50 | $77,775.50 | $77,775.50 | $77,775.50 | | | | | | | | |
| 93793N9 | 4/1/17 | 5.000% | $3,111,020.00 | Assured | $77,775.50 | $77,775.50 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | $82,337.75 | | | | | | |
| 93793T7 | 4/1/18 | 5.000% | $3,291,510.00 | Assured | $82,337.75 | $82,337.75 | | | | | | | | | | | | |
| | | | **$16,330,820.00** | | $407,995.50 | $407,995.50 | $234,847.25 | $234,847.25 | $160,113.25 | $160,113.25 | $82,337.75 | $82,337.75 | | | | | | |
| **Total** | | | **$237,560,790.00** | | $7,303,799.99 | $7,303,799.99 | $6,509,252.86 | $6,509,252.86 | $5,773,048.66 | $5,773,048.66 | $5,016,593.72 | $5,016,593.72 | $4,240,145.92 | $4,240,145.92 | $3,480,721.39 | $3,480,721.39 | $2,698,849.50 | $2,698,849.50 |

13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 14:31:52   Page 32 of 173   1167

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

Columns 10/1/21 through 4/1/28 fall under the heading **Interest**. Columns 10/1/24, 4/1/25, 10/1/25, 4/1/26, 10/1/26, 4/1/27, 10/1/27 and 4/1/28 contain no values (shown as dots).

| CUSIP | Maturity Date | Rate | Principal | Insurer | 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **UTGO 1999-A** | | | | | | | | | | | | |
| …SM3 | 4/1/15 | 5.250% | $2,476,650.00 | Assured | | | | | | | $130,024.13 | $2,606,674.13 |
| …SN1 | 4/1/16 | 5.000% | $2,602,655.00 | Assured | | | | | | | $260,265.50 | $2,862,920.50 |
| …SP6 | 4/1/17 | 5.000% | $2,733,005.00 | Assured | | | | | | | $409,950.75 | $3,142,955.75 |
| …SQ4 | 4/1/18 | 5.250% | $2,873,045.00 | Assured | | | | | | | $574,409.00 | $3,446,454.00 |
| …SR2 | 4/1/19 | 5.000% | $3,015,430.00 | Assured | | | | | | | $753,857.50 | $3,769,287.50 |
| | | | **$13,699,785.00** | | | | | | | | **$2,128,506.88** | **$15,828,291.88** |
| **UTGO 2001-A(I)** | | | | | | | | | | | | |
| …36 | 4/1/15 | 5.375% | $5,161,860.00 | NPFG | | | | | | | $277,449.98 | $5,439,309.98 |
| …N1 | 4/1/16 | 5.375% | $5,439,940.00 | NPFG | | | | | | | $584,793.55 | $6,024,733.55 |
| …63 | 4/1/17 | 5.375% | $5,735,400.00 | NPFG | | | | | | | $924,833.25 | $6,660,333.25 |
| …L1 | 4/1/18 | 5.375% | $12,166,000.00 | NPFG | | | | | | | $2,115,690.00 | $14,281,690.00 |
| …N7 | 4/1/19 | 5.000% | $12,166,000.00 | NPFG | | | | | | | $3,041,500.00 | $15,207,500.00 |
| …VP2 | 4/1/20 | 5.000% | $12,166,000.00 | NPFG | | | | | | | $3,649,800.00 | $15,815,800.00 |
| …VQ0 | 4/1/21 | 5.000% | $12,166,000.00 | NPFG | | | | | | | $4,258,100.00 | $16,424,100.00 |
| | | | **$65,001,200.00** | | | | | | | | **$15,352,166.78** | **$80,353,366.78** |
| **UTGO 2002** | | | | | | | | | | | | |
| …WV8 | 4/1/21 | 5.125% | $2,415,560.00 | NPFG | $75,822.97 | $75,822.97 | | | | | $1,010,082.15 | $3,825,642.15 |
| …WW6 | 4/1/23 | 5.125% | $3,358,945.00 | NPFG | | | | | | | $1,213,167.45 | $4,572,112.45 |
| | | | **$5,774,505.00** | | **$75,822.97** | **$75,822.97** | | | | | **$2,223,249.60** | **$7,997,754.60** |
| **UTGO 2003-A** | | | | | | | | | | | | |
| …XP0 | 4/1/15 | 4.000% | $260,700.00 | Syncora | | | | | | | $10,428.00 | $271,128.00 |
| …XQ8 | 4/1/16 | 5.250% | $2,215,940.00 | Syncora | | | | | | | $116,337.38 | $2,332,287.38 |
| …XR6 | 4/1/17 | 5.250% | $2,602,655.00 | Syncora | | | | | | | $273,278.78 | $2,875,933.78 |
| …XS4 | 4/1/18 | 5.250% | $2,880,735.00 | Syncora | | | | | | | $411,132.63 | $3,106,482.63 |
| …XT2 | 4/1/19 | 5.250% | $3,032,810.00 | Syncora | | | | | | | $604,354.35 | $3,485,689.35 |
| …XU9 | 4/1/20 | 5.250% | $434,500.00 | Syncora | | | | | | | $796,112.63 | $3,828,922.63 |
| …XV7 | 4/1/21 | 5.250% | $2,750,075.00 | Syncora | | | | | | | $117,315.00 | $551,815.00 |
| …XW5 | 4/1/22 | 5.250% | $3,354,340.00 | Syncora | | | | | | | $869,108.63 | $4,628,183.63 |
| …XX3 | 4/1/23 | 5.250% | $434,500.00 | Syncora | $10,047.81 | $10,047.81 | | | | | $1,232,719.95 | $4,587,059.95 |
| …XY1 | 4/1/24 | 4.625% | $434,500.00 | Syncora | $81,372.11 | $81,372.11 | | | | | $515,265.00 | $950,265.00 |
| …XZ8 | 4/1/25 | 5.250% | $1,907,595.00 | Syncora | | | | | | | $1,301,153.70 | $4,399,138.70 |
| …YA2 | 4/1/26 | 4.625% | $1,303,500.00 | Syncora | $30,143.44 | $30,143.44 | $30,143.44 | $30,143.44 | | | $542,581.88 | $1,846,081.88 |
| …YB0 | 4/1/30 | 5.250% | $2,411,475.00 | Syncora | $63,301.22 | $63,301.22 | $63,301.22 | $63,301.22 | | | $1,139,421.94 | $3,550,896.94 |
| | | | **$27,525,575.00** | | **$184,814.58** | **$184,814.58** | **$93,444.66** | **$93,444.66** | | | **$7,595,309.84** | **$33,120,884.84** |
| **UTGO 2004-A(I)** | | | | | | | | | | | | |
| …YU0 | 4/1/19 | 5.250% | $3,910,500.00 | Ambac | | | | | | | $1,026,506.25 | $4,937,006.25 |
| …YV0 | 4/1/20 | 4.250% | $160,765.00 | Ambac | | | | | | | $40,995.08 | $201,760.08 |
| …YW2 | 4/1/21 | 5.250% | $5,287,865.00 | Ambac | | | | | | | $1,665,677.48 | $6,953,542.48 |
| …YZ7 | 4/1/21 | 5.000% | $5,735,400.00 | Ambac | | | | | | | $2,007,390.00 | $7,742,790.00 |
| …ZA1 | 4/1/22 | 5.250% | $6,022,170.00 | Ambac | $158,081.96 | $158,081.96 | | | | | $2,529,311.40 | $8,551,481.40 |
| …ZB9 | 4/1/23 | 5.250% | $326,875.00 | Ambac | $7,332.19 | $7,332.19 | $7,332.19 | | | | $131,979.38 | $457,854.38 |
| …ZC5 | 4/1/24 | 5.250% | $6,013,480.00 | Ambac | $157,853.85 | $157,853.85 | $157,853.85 | $157,853.85 | | | $2,841,369.30 | $8,854,849.30 |
| …ZE1 | 4/1/23 | 4.600% | $682,165.00 | Ambac | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $15,689.80 | $313,795.90 | $995,960.90 |
| …ZF0 | 4/1/24 | 5.250% | $5,987,410.00 | Ambac | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $157,169.51 | $3,143,390.25 | $9,130,800.25 |
| | | | **$34,125,630.00** | | **$496,127.21** | **$496,127.21** | **$338,045.35** | **$338,045.35** | **$172,859.31** | **$172,859.31** | **$13,700,415.63** | **$47,826,045.63** |

* Subject to Mandatory Redemption

| CUSIP | Maturity Date | Rate | Principal | Insurer | Total Interest | Total Principal & Interest |
|---|---|---|---|---|---|---|
| **2004-B(1)** | | | | | | |
| ...5278 | 4/1/15 | 5.000% | $7,538,575.00 | Ambac | $376,928.75 | $7,915,503.75 |
| ...3228 | 4/1/16 | 5.250% | $7,912,245.00 | Ambac | $830,785.73 | $8,743,030.73 |
| ...3241 | 4/1/17 | 4.000% | $265,045.00 | Ambac | $31,805.40 | $296,850.40 |
| ...3284 | 4/1/17 | 5.250% | $8,044,300.00 | Ambac | $1,270,130.40 | $9,314,430.40 |
| ...3252 | 4/1/18 | 5.250% | | Ambac | | |
| ...3270 | 4/1/18 | 5.250% | $1,738,000.00 | Ambac | $364,980.00 | $3,102,980.00 |
| | | | **$25,538,180.00** | | **$2,874,630.28** | **$28,392,851.28** |
| **2004-B(2)** | | | | | | |
| ...3ZX1 | 4/1/19 | 5.240% | $499,675.00 * | Ambac | $60,790.03 | $560,465.03 |
| **2005-B** | | | | | | |
| ...3G53 | 4/1/15 | 5.000% | $1,990,010.00 | Assured | $99,500.50 | $2,089,510.50 |
| ...3G25 | 4/1/16 | 5.000% | $2,080,945.00 | Assured | $208,994.50 | $2,289,939.50 |
| ...3641 | 4/1/17 | 4.300% | $2,181,880.00 | Assured | $282,494.52 | $2,472,374.52 |
| ...3G79 | 4/1/17 | 5.000% | $2,289,815.00 | Assured | $457,563.00 | $2,747,378.00 |
| ...3G87 | 4/1/18 | 5.000% | $2,402,785.00 | Assured | $600,696.25 | $3,003,481.25 |
| ...3G95 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | $1,303,500.00 | $5,648,500.00 |
| ...3H29 | 4/1/20 | 5.000% | $4,345,000.00 | Assured | $1,520,750.00 | $5,865,750.00 |
| ...3H31 | 4/1/21 | 5.000% | $4,345,000.00 | Assured | $1,738,000.00 | $6,083,000.00 |
| ...3H45 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $1,955,250.00 | $6,300,250.00 |
| ...3H52 | 4/1/23 | 5.000% | $4,345,000.00 | Assured | $2,172,500.00 | $6,517,500.00 |
| ...3H60 | 4/1/24 | 5.000% | $4,345,000.00 | Assured | $2,389,750.00 | $6,734,750.00 |
| ...3H78 | 4/1/25 | 5.000% | $4,345,000.00 | Assured | | |
| | | | **$37,032,435.00** | | **$12,729,398.77** | **$49,761,833.77** |
| **2005-C** | | | | | | |
| ...93J92 | 4/1/15 | 5.000% | $2,003,045.00 | Assured | $100,152.25 | $2,103,197.25 |
| ...93J25 | 4/1/16 | 5.000% | $2,107,325.00 | Assured | $210,732.50 | $2,318,057.50 |
| ...93K79 | 4/1/17 | 4.300% | $2,211,605.00 | Assured | $285,297.05 | $2,496,902.05 |
| ...93K41 | 4/1/17 | 5.000% | $2,285,470.00 | Assured | $457,094.00 | $2,742,564.00 |
| ...93K58 | 4/1/19 | 5.250% | $2,374,715.00 | Assured | $623,887.69 | $3,000,602.69 |
| ...93K66 | 4/1/20 | 5.250% | $2,507,065.00 | Assured | $789,725.48 | $3,296,790.48 |
| | | | **$13,491,235.00** | | **$2,466,888.96** | **$15,958,113.96** |
| **2008-A** | | | | | | |
| ...93J56 | 4/1/15 | 5.000% | $2,498,375.00 | Assured | $124,698.75 | $2,623,293.75 |
| ...93J64 | 4/1/16 | 5.000% | $2,620,035.00 | Assured | $262,035.50 | $2,882,038.50 |
| ...93J72 | 4/1/17 | 4.000% | $2,754,730.00 | Assured | $413,209.50 | $3,167,959.50 |
| ...93J98 | 4/1/17 | 5.000% | $3,096,740.00 | Assured | $462,308.00 | $3,351,733.00 |
| ...93K32 | 4/1/19 | 5.000% | $3,154,970.00 | Assured | $751,685.00 | $3,758,425.00 |
| ...93N30 | 4/1/20 | 5.000% | $3,315,235.00 | Assured | $946,341.00 | $4,100,811.00 |
| ...93N48 | 4/1/21 | 5.000% | $3,480,345.00 | Assured | $1,146,333.25 | $4,475,567.25 |
| ...93N55 | 4/1/22 | 5.000% | $3,491,760.00 | Assured | $1,392,138.00 | $4,872,483.00 |
| ...93N63 | 4/1/24 | 5.000% | $17,362,620.00 * | Assured | $3,562,662.75 | $11,053,462.75 |
| | | | | | $10,904,429.25 | $28,267,049.25 |
| | | | **$48,572,755.00** | | **$19,980,048.00** | **$79,980,803.00** |
| **2008-B(1)** | | | | | | |
| ...93J53 | 4/1/15 | 5.000% | $6,935,590.00 | Assured | $346,296.50 | $7,272,226.50 |
| ...93J61 | 4/1/16 | 5.000% | $2,980,360.00 | Assured | $298,936.00 | $3,288,296.00 |
| ...93J79 | 4/1/17 | 4.000% | $3,111,020.00 | Assured | $466,635.00 | $3,577,673.00 |
| ...93J87 | 4/1/18 | 5.000% | $3,293,510.00 | Assured | $658,702.00 | $3,952,212.00 |
| | | | **$16,320,620.00** | | **$1,770,587.50** | **$18,099,407.50** |

**Interest payment dates (semi-annual):** 10/1/21, 4/1/22, 10/1/22, 4/1/23, 10/1/23, 4/1/24, 10/1/24, 4/1/25, 10/1/25, 4/1/26, 10/1/26, 4/1/27, 10/1/27, 4/1/28

**Totals:** Principal $227,560,790.00

| 10/1/21 | 4/1/22 | 10/1/22 | 4/1/23 | 10/1/23 | 4/1/24 | 10/1/24 | 4/1/25 | 10/1/25 | 4/1/26 | 10/1/26 | 4/1/27 | 10/1/27 | 4/1/28 | Total Interest | Total P&I |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $1,899,698.47 | $1,899,698.47 | $1,378,700.00 | $1,378,700.00 | $920,090.68 | $920,090.68 | $542,690.50 | $542,690.50 | $333,370.13 | $333,370.13 | $227,569.38 | $227,569.38 | $116,554.63 | $116,554.63 | $30,881,991.64 | $369,442,781.64 |

* Subject to Mandatory Redemption

# UTGO Series 2014 DSA Fourth Lien Restructured Bonds - Debt Service

## Bond Series Subject to Mandatory Redemption

### Issuance: 2004-B(2)

CUSIP 21909X2X1

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Ambac | 6/30/15 | | $499,675.00 | 5.240% | $13,091.49 |
| 4/1/15 | Ambac | 6/30/15 | $134,695.00 | $364,980.00 | 5.240% | $13,091.49 |
| 10/1/15 | Ambac | 6/30/16 | | $364,980.00 | 5.240% | $9,562.50 |
| 4/1/16 | Ambac | 6/30/16 | $143,385.00 | $221,595.00 | 5.240% | $9,562.48 |
| 10/1/16 | Ambac | 6/30/17 | | $221,595.00 | 5.240% | $5,805.79 |
| 4/1/17 | Ambac | 6/30/17 | $147,730.00 | $73,865.00 | 5.240% | $5,805.79 |
| 10/1/17 | Ambac | 6/30/18 | | $73,865.00 | 5.240% | $1,935.26 |
| 4/1/18 | Ambac | 6/30/18 | $73,865.00 | - | 5.240% | $1,935.26 |
| Total | | | $499,675.00 | | | $60,790.03 |

### Issuance: 2008-A

CUSIP 21909XNS5

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/15 | Assured | 6/30/15 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/15 | Assured | 6/30/16 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/16 | Assured | 6/30/16 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/16 | Assured | 6/30/17 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/17 | Assured | 6/30/17 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/17 | Assured | 6/30/18 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/18 | Assured | 6/30/18 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/18 | Assured | 6/30/19 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/19 | Assured | 6/30/19 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/19 | Assured | 6/30/20 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/20 | Assured | 6/30/20 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/20 | Assured | 6/30/21 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/21 | Assured | 6/30/21 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/21 | Assured | 6/30/22 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/22 | Assured | 6/30/22 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 10/1/2022 | Assured | 6/30/23 | | $7,490,780.00 | 5.000% | $187,269.50 |
| 4/1/2023 | Assured | 6/30/23 | $3,654,145 | $3,836,635.00 | 5.000% | $187,269.50 |
| 10/1/2023 | Assured | 6/30/24 | | $3,836,635.00 | 5.000% | $95,915.88 |
| 4/1/2024 | Assured | 6/30/24 | $3,836,635 | - | 5.000% | $95,915.88 |
| Total | | | $7,490,780.00 | | | $3,562,682.75 |

### Issuance: 2008-A

CUSIP 21909XNG3

| Date | Insurer | Fiscal Year | Mandatory Redemption Amounts | Outstanding | Rate | Interest |
|---|---|---|---|---|---|---|
| 10/1/14 | Assured | 6/30/15 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/15 | Assured | 6/30/15 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/15 | Assured | 6/30/16 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/16 | Assured | 6/30/16 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/16 | Assured | 6/30/17 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/17 | Assured | 6/30/17 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/17 | Assured | 6/30/18 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/18 | Assured | 6/30/18 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/18 | Assured | 6/30/19 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/19 | Assured | 6/30/19 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/19 | Assured | 6/30/20 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/20 | Assured | 6/30/20 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/20 | Assured | 6/30/21 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/21 | Assured | 6/30/21 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/21 | Assured | 6/30/22 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/22 | Assured | 6/30/22 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2022 | Assured | 6/30/23 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2023 | Assured | 6/30/23 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2023 | Assured | 6/30/24 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2024 | Assured | 6/30/24 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 10/1/2024 | Assured | 6/30/25 | | $17,362,620.00 | 5.000% | $434,065.50 |
| 4/1/2025 | Assured | 6/30/25 | $4,027,815.00 | $13,334,805.00 | 5.000% | $434,065.50 |
| 10/1/2025 | Assured | 6/30/26 | | $13,334,805.00 | 5.000% | $333,370.13 |
| 4/1/2026 | Assured | 6/30/26 | $4,232,030.00 | $9,102,775.00 | 5.000% | $333,370.13 |
| 10/1/2026 | Assured | 6/30/27 | | $9,102,775.00 | 5.000% | $227,569.38 |
| 4/1/2027 | Assured | 6/30/27 | $4,440,590.00 | $4,662,185.00 | 5.000% | $227,569.38 |
| 10/1/2027 | Assured | 6/30/28 | | $4,662,185.00 | 5.000% | $116,554.63 |
| 4/1/2028 | Assured | 6/30/28 | $4,662,185.00 | - | 5.000% | $116,554.63 |
| Total | | | $17,362,620.00 | | | $10,904,429.25 |

# EXHIBIT B

# FEE SCHEDULE

ACTIVE 202233018v.4



**U.S. Bank Customer Confidential**

## Schedule of Fees for Services as
## ESCROW AGENT
## For
## Settlement Escrow Agreement

| | | |
|---|---|---|
| CTS01010A | **Acceptance Fee** The acceptance fee includes the administrative review of documents, initial set-up of the account, and other reasonably required services up to and including the closing. This is a one-time, non-refundable fee, payable at closing. | $1,000.00 |
| CTS04460 | **Escrow Agent** Annual fee for the standard escrow agent services associated with the administration of the account. Administration fees are payable in advance. | $5,000.00 |
| | **Direct Out of Pocket Expenses** Reimbursement of expenses associated with the performance of our duties, including but not limited to publications, legal counsel after the initial close, travel expenses and filing fees. | At Cost |
| | **Extraordinary Services** Extraordinary Services are duties or responsibilities of an unusual nature, including termination, but not provided for in the governing documents or otherwise set forth in this schedule. A reasonable charge will be assessed based on the nature of the services and the responsibility involved. At our option, these charges will be billed at a flat fee or at our hourly rate then in effect. | |

Account approval is subject to review and qualification. Fees are subject to change at our discretion and upon written notice. Fees paid in advance will not be prorated. The fees set forth above and any subsequent modifications thereof are part of your agreement. Finalization of the transaction constitutes agreement to the above fee schedule, including agreement to any subsequent changes upon proper written notice. In the event your transaction is not finalized, any related out-of-pocket expenses will be billed to you directly. Absent your written instructions to sweep or otherwise invest, all sums in your account will remain uninvested and no accrued interest or other compensation will be credited to the account. Payment of fees constitutes acceptance of the terms and conditions set forth.

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
For a non-individual person such as a business entity, a charity, a Trust or other legal entity we will ask for documentation to verify its formation and existence as a legal entity. We may also ask to see financial statements, licenses, identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

**Dated: July 21, 2014**

**Exhibit E**

**CONFIRMATION ORDER INSERT**

**UTGO Settlement Agreement – Insert for Confirmation Order**

**Findings of Fact and Conclusions of Law**

A.      After sufficient notice and opportunity for all parties to be heard, and after due deliberation, based on the Court's thorough review and full consideration of the UTGO Settlement Agreement and good and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law.  Any finding of fact constitutes a finding of fact even if it is stated as a conclusion of law, and any conclusion of law constitutes a conclusion of law even if it is stated as a finding of fact.  All findings of fact and conclusions of law announced by the Court on the record in connection with confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.[1]  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.

B.      The UTGO Settlement described in the Plan and the UTGO Settlement Agreement are fair, equitable, reasonable, and in the best interests of the City and its creditors and residents.[2]  The UTGO Settlement Agreement is the result of extensive arms' length negotiations among the City and the UTGO Bond Insurers – all of whom were represented by

---

[1]    The findings of fact and conclusions of law set forth herein and announced on the record during the Confirmation Hearing shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any direct conflict that cannot be reconciled, then, solely to the extent of such conflict, the provisions of this Confirmation Order shall govern and shall control and take precedence over any findings of fact or conclusions of law announced on the record at the Confirmation Hearing.

[2]    Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Plan or the UTGO Settlement Agreement, a copy of which is attached to the Plan as Exhibit ___.

sophisticated counsel. The compromises and settlements embodied in the UTGO Settlement (a) resolve all disputes with respect to claims classified in Class 8 under the Plan and the issues raised by the UTGO Bond Insurers in the UTGO Litigation and (b) are, collectively, a key compromise upon which several provisions of the Plan rest. In the absence of such compromises and settlements, the City's emergence from chapter 9 would likely have been delayed by litigation and burdened with additional expenses. The UTGO Settlement and the UTGO Settlement Agreement: (a) were negotiated and entered into in good faith, (b) comport with policies and purposes of chapter 9, (c) are fair, equitable and reasonable; (d) are in the best interests of the City and its creditors and residents as they not only fully resolve the UTGO Litigation but also permit the City's assignees to receive value from the Assigned UTGO Bond Tax Proceeds as set forth in the Plan; (e) are within the range of reasonable results if the disputes resolved by the UTGO Settlement, including the Assured/NPFG Action and the Ambac Action as they relate to the UTGO Bonds, were instead litigated to a conclusion; (f) fall above the lowest point in the range of reasonableness; and (g) meet the standards for approval under sections 105(a) and 1123(b) of the Bankruptcy Code, Bankruptcy Rule 9019(a) and other applicable law.

      C.     Without limiting any of the foregoing, the Court hereby finds that:

           a.     The Plan incorporates the UTGO Settlement Agreement, and the effectiveness of the Plan is expressly conditioned upon: (a) the Michigan Finance Authority board having approved the issuance of the MFA Bonds and such bonds having been issued; and (b) the City having obtained all governmental and Emergency Manager consents and approvals required to carry out the terms of the UTGO Settlement Agreement.

b.     As of the Effective Date, the Plan represents a full, final and complete compromise, settlement, release and resolution of, among other matters, all disputes and pending or potential litigation (including any appeals), including, without limitation, the UTGO Litigation, regarding the allowability, amount, priority and treatment of the Unlimited Tax General Obligation Bond Claims. The treatment of Class 8 UTGO Claims under the Plan is a component of a settlement and compromise of the UTGO Litigation.

c.     Good and valuable consideration has been provided for all releases and exculpations granted pursuant to the UTGO Settlement Agreement, including, without limitation, the releases and exculpations granted pursuant to sections 6.1 and 6.2 of the UTGO Settlement Agreement. Such provisions are fair, equitable, reasonable and integral elements of the UTGO Settlement Agreement.

d.     The Court confirms that as of the Effective Date and pursuant to Emergency Manager Order No. __, the Municipal Obligation shall be secured, to the extent permitted by law, including without limitation section 12(1)(x) of Act 436, by a lien granted by the City on the UTGO Bond Tax Levy for so long as either the Municipal Obligation or the Stub UTGO Bonds are outstanding.

e.     As of the Effective Date, the UTGO Bond Tax Levy shall constitute "special revenues," as defined in section 902 of the Bankruptcy Code, and

"pledged special revenues," as that term is used in section 922(d) of the Bankruptcy Code.

f.      As of the Effective Date, the MFA shall possess a valid and enforceable statutory fourth lien and trust on Distributable State Aid, as provided in section 15(2) of the Shared Credit Rating Act or as otherwise provided under applicable law.

g.      As of the Effective Date, Holders of the MFA Bonds shall possess all of the MFA's rights and interest in the Municipal Obligation including all the rights and interest provided herein and under the UTGO Settlement Agreement, subject to the reservation by the MFA of rights to indemnification and to make all determinations and approvals and receive all notices accorded to it under the Municipal Obligation and related documents. Accordingly, the MFA Bonds will be payable from and secured by (i) payments made by the City on the Municipal Obligation and to the extent permitted by law, including without limitation section 12(1)(x) of Act 436, a lien on the portion of the UTGO Bond Tax Levy allocable to the Municipal Obligation, pledged by the City to secure the Municipal Obligation and (ii) a lien, made a statutory lien as provided by the Shared Credit Rating Act, on moneys in the funds and accounts established for the MFA Bonds under the authorizing resolution for such bonds, including payments pledged by the City and received and held by the MFA or its trustee for the MFA Bonds, which include, without

limitation, all payments of (x) the proceeds of the UTGO Bond Tax Levy and (y) Distributable State Aid.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The UTGO Settlement.    Consistent with the findings herein, the UTGO Settlement and the UTGO Settlement Agreement, including without limitation all of the transactions contemplated, the liens granted, and the protections created therein, are APPROVED in their entirety as a good faith, fair, reasonable, and equitable compromise and settlement of all disputes with respect to claims classified in Class 8 under the Plan that is in the best interests of the City and its creditors and residents.  The entry of this Confirmation Order constitutes approval of the UTGO Settlement Agreement pursuant to the Bankruptcy Rules, including Bankruptcy Rule 9019, the Bankruptcy Code, including section 1123, and Act 279, Public Acts of Michigan, 1909, as amended; Act 436, Public Acts of Michigan, 2012; Act 34, Public Acts of Michigan, 2001, as amended; and Act 80, Public Acts of Michigan, 1981, as amended.  As provided in the Plan, on the Effective Date, the UTGO Settlement Agreement shall be binding on the City, Ambac, Assured and NPFG.

2.     Approval of Exculpations and Releases.  All exculpations and releases granted pursuant to the UTGO Settlement, including, without limitation, the releases and exculpations granted pursuant to sections 6.1 and 6.2 of the UTGO Settlement Agreement, are hereby approved in their entirety.  The Court approves such settlements and releases on the grounds that good and valuable consideration has been provided therefor, and that such provisions are fair, equitable, reasonable, and integral elements of the UTGO Settlement Agreement.

CLI-2233353v5                          5

13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 15:48:29   Page 43 of
173
13-53846-tjt   Doc 8045   Filed 09/16/14   Entered 09/16/14 13:48:52   Page 143 of 1178

3.     Segregation of UTGO Bond Tax Levy.  The proceeds of the UTGO Bond Tax Levy collected by the City shall be segregated and transmitted to the Debt Millage Escrow Trustee under the Debt Millage Deposit Escrow Agreement, and the Debt Millage Escrow Trustee shall segregate and transmit the proceeds allocable to the Municipal Obligation to the Master Trustee in accordance with section 2.4(a) of the UTGO Settlement Agreement.

4.     Annual Certification of Debt Millage Levy.  Pursuant to the Section 2.7(b) of the UTGO Settlement Agreement, the City shall certify annually, not later than June 30 of each year, that it has imposed the debt millage levy as required by and in accordance with the terms of the UTGO Settlement Agreement.

5.     Retention of Jurisdiction.  Pursuant to section 945(a) of the Bankruptcy Code, the Court shall retain jurisdiction over the UTGO Settlement and the UTGO Settlement Agreement and any dispute arising from or related to the UTGO Settlement Agreement.  For the avoidance of doubt and as the City has consented, the Court shall retain exclusive post-confirmation authority and power, to implement, interpret and enforce the UTGO Settlement Agreement and all Settlement-Related Documents, including, without limitation, all exhibits to the UTGO Settlement Agreement, the Restructured UTGO Bonds, the Municipal Obligation and the MFA Bonds.  As the City has consented, the Court reserves all powers as are necessary or appropriate to enforce or to give effect to the Court's retained jurisdiction under the Plan and this Confirmation Order, including by way of injunction, as long as any of the Municipal Obligation, Stub UTGO Bonds or MFA Bonds are outstanding.

EXHIBIT II.B.3.q.ii.A

SCHEDULE OF PAYMENTS AND SOURCES OF
PAYMENTS FOR MODIFIED PFRS PENSION BENEFITS

# City of Detroit
## PFRS Pension contributions (FY14 - FY23)
$ in millions

| PFRS | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 10-Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Source: | | | | | | | | | | | |
| State | $ - | $ 96.0 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 96.0 |
| Foundations | - | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 164.7 |
| Total | - | 114.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 18.3 | 260.7 |

1181

**EXHIBIT II.B.3.q.ii.C**

TERMS OF PFRS PENSION RESTORATION

13-53846-tjt   Doc 8045-5   Filed 10/22/14   Entered 10/22/14 03:40:29   Page 3 of 9
13-53846-swr   Doc 10185-5   Filed 09/26/15   Entered 09/26/15 13:00:52   Page 47 of
173                                                                            1182

# TERMS OF PFRS PENSION RESTORATION

## *Pension Restoration Process*

The following rules shall govern how accrued pensions, including COLA benefits, that are reduced as part of the Plan of Adjustment, shall be restored during the thirty year period following the Confirmation Order. The pension restoration process shall be supervised, and restoration decisions undertaken by the Investment Committee of PFRS and in accordance with the pension governance provisions set forth in the State Contribution Agreement and exhibits thereto. This pension restoration program shall be deemed a part of Component II of the Combined Plan for the Police and Fire Retirement System, but in the event of any conflict between the language set forth herein and the Combined Plan the terms of this Pension Restoration Agreement will govern.

## GENERAL RESTORATION RULES

### I.    PFRS RESTORATION

1.    Waterfall Categories

There will be three Waterfall Classes:

   a. PFRS Waterfall Class 1 – Retirees in retirement benefit pay status as of June 30, 2014, and their surviving spouses and beneficiaries
   b. PFRS Waterfall Class 2 – Retirees, who entered into retirement benefit pay status after June 30, 2014, and their surviving spouses and beneficiaries, and who are in pay status as of the end of the PFRS Fiscal Year prior to the year in which the restoration decision is made
   c. PFRS Waterfall Class 3 – All retirees, surviving spouses, and beneficiaries in pay status and all other PFRS participants who as of June 30, 2014 are not in retirement benefit pay status

2.    General PFRS Pension Restoration Through June 30, 2023

Each year in conjunction with the annual actuarial valuation report, the PFRS actuary will project the PFRS funded ratio as of 2023 based upon the market value of plan assets relative to the actuarial accrued liabilities (the "Funded Level"). This projection will be further based upon a 6.75% assumed rate of investment return which is net of expenses (administrative and investment), future employer contributions as set forth in the Plan of Adjustment (subject to conditions in the Plan of Adjustment), and such other actuarial

assumptions as utilized by the PFRS actuary. For purposes of PFRS Restoration through June 30, 2023, the Funding Target will be a 75% funded ratio, and the Restoration Target will be a 78% funded ratio, both projected to June 30, 2023. For purposes of calculating the funded ratio, the assets in the Restoration Reserve Account will be excluded. Each year, if the actuary projects that the Funded Level as of 2023 (excluding Restoration Account assets to avoid double counting) exceeds the Restoration Target (i.e., exceeds 78%), a credit of assets for bookkeeping purposes will be made into a new notional Restoration Reserve Account. The notional credit will be an amount equal to the excess of assets above the amount projected to be needed to satisfy the Restoration Target. Once the Restoration Reserve Account is established, each year thereafter, Restoration Account assets will be credited with interest in an amount equal to the net return on plan investments but capped at the actuarially assumed rate of investment return (i.e., 6.75% for the period through June 30, 2023). In the event of net losses, the credited asset value of the Restoration Reserve Account will be diminished to reflect such losses and any required transfer to the PFRS Pension Reserve Account as provided herein.

Actual restoration payments and restoration credits will work as follows: each year, in conjunction with the preparation of the annual actuarial valuation report and following establishment of the Restoration Reserve Account, the PFRS actuary will determine whether there are sufficient funds in such account to restore COLA benefits in a minimum incremental amount of 10% or more. For example: If a retiree's then current COLA benefit is a 1.0% annual compounded COLA, the minimum incremental restoration would increase the COLA benefit to 1.225%. COLA restoration only will occur if the funding level in the Restoration Reserve Account can fund 100% of the COLA increase over the actuarially-projected lives of the eligible recipient PFRS Waterfall Class. If the actuary certifies that the Restoration Reserve Account as of the end of the prior PFRS fiscal year satisfies the required funding level for one or more increments of restoration, then in the next immediate PFRS fiscal year actual COLA restoration payments will be made to PFRS Waterfall Class 1 members in such increments until an amount sufficient to fund 66% of the value of their future COLA payments (e.g., a 1.5% compound COLA, or as otherwise applicable) has been funded. At that juncture, and to the extent that additional assets in the Restoration Reserve Account would fully fund COLA restoration in at least one minimum 10% increment (i.e., amounts equal to 10% of the value of future COLA payments), PFRS Waterfall Class 2 members will receive COLA restoration, until an amount sufficient to fund 66% of the value of their future COLA payments has been funded. At that juncture, and to the extent that additional assets in the Restoration Reserve Account would fully fund COLA restoration in at least one minimum 10% increment (i.e., amounts equal to 10% of the value of future COLA payments), PFRS Waterfall Class 3 members will receive COLA restoration on a pro-rata basis. For PFRS Waterfall Class 3 members who are in pay status at that time of restoration, they will receive COLA payments; for active employees at the time of restoration, they will receive credits granting them a right upon retirement to receive COLA restoration equal to the 10% increments that are fully funded to PFRS Waterfall Class 3 members. For Example: Assume there are sufficient assets credited to the Restoration Reserve Account as of the

end of a fiscal year to fully fund 66% of the value of the COLA for all PFRS Waterfall Class 1 and Class 2 members for their actuarially projected lives. To the extent additional assets remain in the Restoration Reserve Account to fully fund at least a 10% COLA increment for PFRS Waterfall Class 3 members for their actuarially projected lives, then (i) all retirees would receive a restoration payment of 76% of the value of their COLAs (their having already received by virtue of their membership in PFRS Waterfall Classes 1 and 2 an increase to 66% of the value of their COLAs) and also a 10% COLA increment would be credited to eligible active employees which would be included in their benefit payments upon retirement (thus causing their COLAs to increase in value from 45% to 55%). Restoration amounts actually paid from the Restoration Reserve Account will be debited from such account. Restoration payments will be calculated and paid on a prospective basis only.

Once restoration payments and credits begin, as long as the Restoration Reserve Account continues to have assets to fund 100% of an incremental COLA restoration amount for such Waterfall Class for their actuarially projected lives, the restoration payments and credits will continue; provided, however, that in the event the Restoration Reserve Account, after having sufficient assets to fund 100% of two or more increments, falls below 100% for the second or greater increment, the annual amounts to pay such second or greater increment can continue until the Restoration Reserve Account lacks any assets to fund such additional increment. For Example, assume a 10% increment in PFRS Waterfall Class 1 requires $10 million in assets to be fully funded for the PFRS Waterfall Class' actuarially projected lives, and that based on FY 2018 results the Restoration Reserve Account has assets of $22 million so as to fund two increments of restoration in FY 2019. Assume further that in the following year the Restoration Reserve Account drops in value to $17 million; in such event two increments could still be paid, and the second increment would cease being paid only if the value of assets in the Restoration Reserve Account dropped to or below $10 million (in the event they dropped below $10 million, the first increment also would cease being paid). For purposes of restoration reduction, restoration increments will be taken away in reverse order in which they were granted (i.e. last in, first out).

If the PFRS Funded Level (excluding Restoration Reserve Assets) projected to 2023 falls below 76% (hereinafter, "Restoration Reserve Suspension Trigger"), then, until such time as the projected PFRS Funded Level in 2023 is 76% or above, further interest credits to the notional Restoration Reserve Account will cease notwithstanding the actual net PFRS investment returns for the fiscal year in question. Furthermore, if the PFRS Funded Level projected to 2023 falls below the Funding Target (i.e., 75%) then restoration payments to retirees and credits to active employees in the following year will be modified in the following manner: (1) funds previously credited to the Restoration Reserve Account will be notionally transferred and credited to the PFRS Pension Reserve Account in sufficient amounts to restore the projected PFRS Funded Level in 2023 to 75%; (2) following such transfer, the remaining assets in the Restoration Reserve Account shall be applied to

make restoration payments in accordance with and pursuant to the same mechanism described in the previous paragraph.

In connection with preparation of the actuarial report for FY 2023, the PFRS actuary will determine whether PFRS has satisfied the Permanent Restoration Target, which shall be 78%. Transfers from the Restoration Reserve Account for credit to the PFRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers, the PFRS Funded Level as of June 30, 2023 has satisfied the Permanent Restoration Target (*i.e.,* 78%), then the residual amounts, if any, in the Restoration Reserve Account (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of COLA restoration payments for one or more PFRS Waterfall Classes for their actuarially projected lives, shall be transferred from the Restoration Reserve Account and credited to the PFRS Pension Reserve Account and the applicable incremental COLA payments shall be permanently restored for the applicable PFRS Waterfall Class and shall no longer be variable from year to year.

Following receipt of the actuarial reports for 2019, and in the event that the projected Funded Level of PFRS as of 2023 is less than 76%, the PFRS actuary shall revisit the restoration calculations that it made during each of the prior 4 years. It shall recalculate each such prior year's Funded Level projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2023, or (ii) an amount of annual administrative expenses until 2023 equal to the average annual normal course administrative expenses in the prior 4 years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the PFRS Restoration Reserve Account than actually were transferred during such look back period, then the PFRS Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period or (ii) the dollars that were actually paid out in restoration payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period); or (iii) the amount required to increase the projected 2023 PFRS Funded Level to 76%.

3. <u>General PFRS Pension Restoration from July 1, 2023 to June 30, 2033</u>.

If and to the extent that all COLA payments have not been restored pursuant to the permanent restoration feature as of June 30, 2023 described in the immediately preceding paragraph, then during this period and for purposes of variable restoration, the Funding Target, the Restoration Target, the Permanent Restoration Target and the Restoration Reserve Suspension Trigger shall be as set forth on Exhibit A hereto, all projected as of June 30, 2033. The same rules for restoration payments that applied during the period ending June 30, 2023 shall apply (including ceasing interest credits in

the event of a Restoration Reserve Suspension Trigger, and making Restoration Account asset transfers in the event the 2033 PFRS Funded Level falls below the 2033 Funding Target), except as follows. For purposes of determining whether the 2033 Restoration Target has been satisfied, the Plan actuary shall project investment returns through June 30, 2033 at the then current investment return assumption which is assumed to be net of expenses (administrative and investment), and the then applicable actuarial assumptions as utilized in the annual actuarial valuation. Further, the Plan actuary shall assume, merely for purposes of determining whether the Restoration Target is satisfied, that the annual City contribution amount shall be the annual amount necessary to fund the PFRS based upon an amortization of the actual 2023 UAAL (using the market value of assets) over 30 years (hereinafter, the "2023 UAAL Amortization") and in such manner that the resulting annual contribution stream would achieve the applicable PFRS' Funding Target (on Exhibit A) as of 2033. (Such projected, hypothetical contributions shall be for purposes only of making restoration determinations, and shall not necessarily be the actual contributions made or required to be made by the City or recommended during such period; all of which shall be determined independent of the restoration calculation process). For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded

To the extent that the City's actual contributions to the PFRS in any of the FYs 2024 (i.e., the year ending June 30, 2024) through 2033 are greater than the projected annual contribution under the 2023 UAAL Amortization, such amounts, and any investment earnings thereon, shall be notionally credited to a new bookkeeping account in PFRS called the Extra Contribution Account. In determining pension restoration during the period from FY 2024 through 2033, none of the amounts in the Extra Contribution Account shall be considered for purposes of determining the projected funded level for the Restoration Target or Permanent Restoration Target. To the extent that the City's actual contributions to the PFRS in any of the FYs 2024 through 2033 are less than the projected annual contribution under the 2023 UAAL Amortization, such difference and any investment earnings thereon shall be notionally allocated to the Restoration Reserve Account.

Each year, in addition to the crediting of assets that exceed the amount necessary to satisfy the Restoration Target, existing Restoration Account assets will be credited with interest equal to the net return on plan investments, but capped at the then actuarial investment return assumption. In the event of net losses, the credited asset value of the Restoration Reserve Account will be diminished to reflect such losses.

In connection with preparation of the annual actuarial valuation report for FY 2033, the PFRS actuary will determine whether PFRS has satisfied the applicable Permanent Restoration Target, as set forth on Exhibit A. Transfers from the Restoration Reserve Account for credit to the PFRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers the funding level as of June 30, 2033 has satisfied the applicable Permanent Restoration

Target , then the residual amounts in the Restoration Reserve Account, if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of COLA restoration payments for one or more PFRS Waterfall Classes, shall be transferred from the Restoration Reserve Account and credited to the PFRS Pension Reserve Account and the applicable incremental COLA payments shall be permanently restored for the applicable PFRS Waterfall Class and shall no longer be variable from year to year.

Following receipt of the actuarial reports for 2028, and in the event that the projected Funded Level of PFRS as of 2033 is less than 79%, the PFRS actuary shall revisit the restoration calculations that it made during each of the prior 4 years. It shall recalculate each such prior year's Funded Level projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2033, or (ii) an amount of annual administrative expenses until 2033 equal to the average annual normal course administrative expenses in the prior 4 years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the PFRS Restoration Reserve Account than actually were transferred during such look back period, then the PFRS Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the applicable look-back period or (ii) the dollars that were actually paid out in restoration payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the applicable look-back period); or (iii) the amount required to increase the projected 2033 PFRS Funded Level to 79%.

4.   General PFRS Pension Restoration from July 1, 2033 to June 30, 2043.

If and to the extent that all COLA payments have not been restored pursuant to the permanent restoration feature as of June 30, 2033 described in the immediately preceding paragraph, then during the period ending June 30, 2044 and for purposes of variable restoration, the Funding Target , the Restoration Target, the Permanent Restoration Target and the Restoration Reserve Suspension Trigger shall be as set forth on Exhibit A hereto. The same rules for restoration that applied during the period ending June 30, 2033 shall otherwise apply (including ceasing interest credits in the event of a Restoration Reserve Suspension Trigger, and making Restoration Account asset transfers in the event the 2043 PFRS Funded Level falls below the 2043 Funding Target), and shall be rolled forward. For example, for purposes of determining whether the 2043 Restoration Target has been satisfied, the Plan actuary shall project annual contributions using the same 2023 UAAL Amortization. For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded, and no Extra Contribution Account assets shall be included for purposes of determining whether the Funded Level meets the Restoration Target or Permanent Restoration Target, including any additions to such account after 2033.

In connection with preparation of the annual actuarial valuation report for FY 2043, the PFRS actuary will determine whether PFRS has satisfied the applicable Permanent Restoration Target, as set forth on Exhibit A.   Transfers from the Restoration Reserve Account for credit to the PFRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target.  If following such transfers the PFRS Funded Level as of June 30, 2043 is equal to or greater than the applicable Permanent Restoration Target,   then the residual amounts in the Restoration Reserve Account, if any  (which will necessarily represent excess not  necessary to satisfy the Permanent Restoration Target),  shall be transferred from the Restoration Reserve Account and credited to the PFRS Pension Reserve Account and the applicable incremental COLA payments shall be permanently restored for the applicable PFRS Waterfall Class and shall no longer be variable from year to year.


5.    Modification of the Pension Restoration Program

If any time after July 1, 2026, the PFRS Investment Committee (by vote of 5 of its 7 members), or the PFRS Board of Trustees (by a greater than 66% vote) determines  that a change in relevant circumstances has occurred, or there was a mutual mistake of fact in developing this Pension Restoration Agreement, such that the continued operation of this Agreement without amendment will: (a) materially harm the long-term economic interests of the City, or Retirement System;(b) materially impair the City's ability to fully fund over a reasonable period the then existing frozen benefit liabilities; or (c) materially hinder the Restoration program, if as of that juncture (and for purposes of applying this subsection 5(c)) annual funding levels (excluding the Extra Contribution Account) had materially exceeded the applicable PFRS Restoration Targets for a substantial period  yet without any material actual restoration of benefits as contemplated herein having been made, the Investment Committee or the Board, as the case may be, shall provide written notice to the other entity of such a determination and of the need to amend this Restoration Agreement (it being understood that the post-Chapter 9, 40-year amortization period (to 2053) to fully fund PFRS frozen liabilities is, unless the relevant facts  demonstrate otherwise, presumptively reasonable).  The Investment Committee and the Board shall then meet to negotiate amendments to this Agreement that address the identified risk of harm or impairment, but which also considers this Agreement's objective of providing pension restoration.  Such negotiations shall take into account reasonable actions the City has pursued or could pursue to mitigate such harm or impairment.  Any such amendments shall require the approval of a majority vote of the combined members of the Committee and Board (persons who sit on both the Board and Committee shall have one vote).  Such parties shall consult with the Mayor, City Council and the Governor in connection with such negotiation.  If the Board, acting through a majority, and the Investment Committee, acting through a majority, cannot agree to such amendments with the 90-day period following the provision of such notice by the determining party, then the Board and Investment Committee shall proceed to mediation upon demand from either the Board or the Investment Committee.  In this regard, within 30-days following expiration of the 90-day period the Board and the Investment Committee shall each select a mediator from the list of approved mediators for the United States District Court for the Eastern District of Michigan.  The two selected mediators shall

appoint a third neutral mediator from the approved list.  Each party shall furnish a written statement to the mediators within 30 days of selection of the neutral mediator. Representatives of the Mayor and the Governor shall be consulted in connection with such mediations. If following a 90-day mediation period following submission of the written statements the matter is not settled, then either the Investment Committee or the Board can file an action in the United Stated District Court for the Eastern District of Michigan asking it to declare, inter alia, whether or in what manner to amend this Agreement.

# EXHIBIT A

**PFRS -** The 2033 and 2043 Funding Targets shall be 3.0% and 6% higher than the actual 2023 Funded Level rounded to the nearest 10th decimal. The Restoration Target shall be 3.0% higher than the Funding Target but not less than 81% and 84% in 2033 and 2043, respectively.  The Permanent Restoration Targets shall be shall be equal to the Restoration Targets for all time periods. The Restoration Reserve Suspension Trigger will be set 1% higher than the projected Funding Target for all time periods.

| 2023 Funded Level | 2033 Projected Funding Target /Restoration Target | 2043 Projected Funding Target /Restoration Target |
|---|---|---|
| 78% | 81%/84% | 84%/87% |
| 77% | 80%/83% | 83%/86% |
| 76% | 79%/82% | 82%/85% |
| 75% | 78%/81% | 81%/84% |
| 74% or lower | 3% > than 2023 Funded Level %/81% | 3% > than 2023 Funded Level %/84% |

| 2033 Permanent Restoration Target | 2043 Permanent Restoration Target |
|---|---|
| Same as 2033 Restoration Target | Same as 2043 Restoration Target |

CHI-181943105v1

**EXHIBIT II.B.3.r.ii.A**

SCHEDULE OF PAYMENTS AND SOURCES OF
PAYMENTS FOR MODIFIED GRS PENSION BENEFITS

# City of Detroit
## GRS Pension contributions (FY14 - FY23)
$ in millions

| GRS | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 10-Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Source: | | | | | | | | | | | |
| DWSD | $ - | $ 65.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 45.4 | $ 428.5 |
| UTGO | - | 4.4 | 4.0 | 4.0 | 3.9 | 3.7 | 3.7 | 3.6 | 2.3 | 2.0 | 31.7 |
| State | - | 98.8 | - | - | - | - | - | - | - | - | 98.8 |
| DIA | - | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 5.0 | 45.0 |
| Other | - | 14.6 | 22.5 | 22.5 | 22.5 | 22.5 | 2.5 | 2.5 | 2.5 | 2.5 | 114.6 |
| Total | - | 188.2 | 76.9 | 76.9 | 76.8 | 76.6 | 56.5 | 56.5 | 55.2 | 54.9 | 718.6 |

<u>**EXHIBIT II.B.3.r.ii.C**</u>

TERMS OF GRS PENSION RESTORATION

# TERMS OF GRS PENSION RESTORATION

## *Pension Restoration Process*

The following rules shall govern how accrued pensions, including COLA benefits, that are reduced as part of the Plan of Adjustment, shall be restored during the thirty year period following the Confirmation Order.  The pension restoration process shall be supervised, and restoration decisions undertaken by the Investment Committee of GRS and in accordance with the pension governance provisions set forth in the State Contribution Agreement and exhibits thereto.  This pension restoration program shall be deemed a part of Component II of the Combined Plan for the General Retirement System of the City of Detroit, but in the event of any conflict between the language set forth herein and the Combined Plan the terms of this Pension Restoration Agreement will govern.

**GENERAL RESTORATION RULES**

**I.**     **GRS RESTORATION**

1.      Waterfall Categories

There will be three Waterfall Classes:

   a.  GRS Waterfall Class 1 – Retirees, in retirement benefit pay status as of June 30, 2014, and their surviving spouses and beneficiaries
   b.  GRS Waterfall Class 2 – Retirees, who entered into retirement benefit pay status after June 30, 2014, and their  surviving spouses and beneficiaries, and who are in pay status as of the end of the GRS Fiscal Year prior to the year in which the restoration decision is made
   c.  GRS Waterfall Class 3 – All other GRS participants who as of June 30, 2014 are  not in retirement benefit pay status

2.      General GRS Pension Restoration Through June 30, 2023

Each year in conjunction with the annual actuarial valuation report, the GRS actuary will project the GRS funded ratio as of 2023 based upon the market value of plan assets relative to  the actuarial accrued liabilities (the "Funded Level"). This projection will be further based upon a 6.75% assumed rate of investment return which is net of expenses (investment and administrative), future employer contributions as set forth in the Plan of Adjustment (subject to the conditions in the Plan of Adjustment) and such other actuarial assumptions as utilized by the GRS actuary. For purposes of GRS Restoration through June 30, 2023, the Funding Target  will be a 70% funded ratio, the Restoration Target will be a 75% funded ratio, and the Restoration Reserve Suspension Trigger will be a

71% funded ratio, all projected to June 30, 2023. For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded. Each year, if the actuary projects that the projected Funded Level as of June 30, 2023 (excluding Restoration Account assets to avoid double counting) exceeds the Restoration Target (i.e., exceeds 75%), a credit of assets for bookkeeping purposes will be made into a new notional Restoration Reserve Account. The notional credit will be in an amount equal to the excess of assets above the amount projected to be needed to satisfy the Restoration Target. Once the Restoration Reserve Account is established, each year thereafter, Restoration Account assets will be credited with interest in an amount equal to the net return on plan investments, but capped at the actuarially assumed rate of investment return (i.e., 6.75% for the period through June 30, 2023). In the event of net losses, the credited asset value of the Restoration Reserve Account will be diminished to reflect such losses and any required transfer to the GRS Pension Reserve Account.

To the extent that the City's (including DWSD or a successor authority) actual contributions in any of the FYs 2015 through 2023 are less than the contributions provided for in the Plan of Adjustment, such difference and any investment earnings thereon shall be notionally allocated to the Pension Fund Reserve Account.

Actual restoration payments and credits will work as follows: Each year in conjunction with preparation of the annual actuarial valuation report and following establishment of the Restoration Reserve Account, the GRS actuary will determine whether there are sufficient funds in such account to restore a portion of the 4.5% across the board pension cuts in one or more minimum incremental amounts equal to ½% of the monthly benefit for each member of GRS Waterfall Class 1 (i.e. reducing the initial across the board cut to 4.0%). This restoration only occurs if the funding level in the Restoration Reserve Account can fund 100% of each incremental increase over the remaining actuarially projected lives of the eligible recipients in GRS Waterfall Class 1. If the Restoration Reserve Account satisfies the required funding level, then in the next GRS fiscal year, actual restoration payments will be made to GRS Waterfall Class 1 members in amounts equal to the benefit associated with each increment that have been fully funded in the Restoration Reserve Account. Once Waterfall Class 1 has sufficient assets in the GRS Restoration Reserve Account to fully fund and restore the 4.5% cut in their monthly benefits, and to the extent that additional assets in the Restoration Reserve Account remain and will fully fund at least ½% of the monthly benefit for each member of GRS Waterfall Class 2 over their remaining actuarially projected lives, then GRS Waterfall Class 2 members will receive pension restoration in minimum ½% benefit increments until an amount equal to the 4.5% cuts in their monthly benefits has been fully funded. At that juncture, and to the extent that additional assets in the Restoration Reserve Account remain and will fund at least a minimum ½% of the monthly benefit of each member in GRS Waterfall Class 3 over their remaining actuarially projected

lives, then each such member of the class shall receive a credit granting them a right upon retirement to receive pension restoration equal to the benefit increments that are fully funded. Restoration payments will be calculated and paid on a prospective basis only.

After the full 4.5% across the board pension cuts are restored for all three GRS Waterfall Classes, and to the extent there are additional assets in the Restoration Reserve Account to fully fund COLA benefits over the actuarially-projected lives of the eligible recipient GRS Waterfall Class, such assets will be used to fully fund and restore a portion of the COLA values that were eliminated as part of the Plan of Adjustment. COLA will be restored in minimum 10% COLA value increments up to 50% of the future COLA values for each member of GRS Waterfall Class 1 (i.e., a 50% future COLA value will constitute a 1.25% simple COLA) , then up to 50% of the future COLA values for each member of Waterfall Class 2, and then up to 50% of the future COLA values for each member of Waterfall Class 3 until all members of the three GRS Waterfall Classes have had 50% of the value of their COLAs fully funded and restored. After 50% of the future values of COLA have been fully funded and restored, and to the extent there are additional assets in the Restoration Reserve Account for each of the three GRS Waterfall Classes, then a second 50% COLA restoration will be made, first to members of GRS Waterfall Class 1, then Waterfall Class 2, and then Waterfall Class 3. Classes will be restored in minimum 10% COLA value increments. Restoration payments will be calculated and paid on a prospective basis only.

If the amounts in the Restoration Reserve Account are sufficient to fully-fund the 4.5% across the board pension cuts for all three GRS Waterfall Classes and 100% COLA restoration for all three GRS Waterfall Classes, then any additional assets in the Restoration Reserve Account shall be used to increase the frozen accrued benefits of active and other GRS participants whose ASF accounts were diminished as part of the ASF Recoupment, such that they receive treatment equal to the 20%/20% ceiling applied to retirees in pay status under the Plan of Adjustment. If after such pension restoration there are additional assets in the Restoration Reserve Account to fully fund benefit increments over their remaining actuarially projected lives, GRS Waterfall Class 1 members will receive pension restoration in ½% benefit increments of the reductions to their monthly pension due to ASF Recoupment, and once such pension benefits are restored, Waterfall Class 2 members will receive pension restoration in ½% benefit increments in connection with the reductions to their monthly pensions due to ASF Recoupment. Restoration payments will be calculated and paid on a prospective basis only.

Once restoration payments to applicable retirees and restoration credits to active employees begin, as long as the Restoration Reserve Account continues to have assets sufficient to fund 100% of an incremental pension restoration amount for such GRS Waterfall Class members for their actuarially projected lives, such restoration payments and credits will continue; provided, however,

that in the event the Restoration Reserve Account , after having sufficient assets to fund 100% of two or more increments (over their actuarially projected lives), falls below 100% for the second or greater increment, the annual amounts to pay such second or other additional increment can continue until the Restoration Reserve Account lacks any assets to fund it.  For example, assume a ½%  increment in GRS Waterfall Class 1 requires $10 million in assets to be fully funded for the GRS Waterfall Class' actuarially projected lives, and that based on FY 2018 results the Restoration Reserve Account has assets of $22 million so as to fund two increments of restoration in FY 2019, *i.e.,* a 1% pension increase. Assume further that in the following year the Restoration Reserve Account drops in value to $17 million; in such event two increments could still be paid, and the second increment of ½% would cease being paid only if the value of assets in the Restoration Reserve Account dropped to or below $10 million (in the event they dropped below $10 million, the first increment also would cease being paid). For purposes of restoration reduction, restoration increments will be taken away in reverse order in which they were granted (i.e. last in, first out).

In the event the GRS Funded Level (not including Restoration Reserve Assets) falls below 71% (hereinafter, "Restoration Reserve Suspension Trigger"),, then, until such time as the projected GRS Funded Level in 2023 is 71% or above, further interest credits to the notional Restoration Reserve Account will cease notwithstanding the actual net GRS investment returns for the fiscal year in question.  Furthermore, if the GRS Funded Level  projected to 2023 falls below the Funding Target  (i.e., 70%) then restoration payments and credits in the following year will be modified in the following manner:  (1) funds previously credited  to the Restoration Reserve Account will be notionally transferred and credited to the GRS Pension  Reserve Account in sufficient amounts to restore the projected GRS Funded Level  in 2023 to 70%;  (2) following such transfer, the remaining assets in the Restoration Reserve Account   shall be applied to make restoration payments  in accordance with and pursuant to the same mechanism described in the previous paragraph.

Following receipt of the actuarial reports for 2019,  and in the event that the projected Funded Level of GRS as of 2023 is less than 71%, the GRS actuary shall revisit the restoration calculations that it made during each of the prior 4 years. It shall recalculate each such prior year's Funded Level  projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2023, or (ii) an amount of annual administrative expenses until 2023 equal to the average annual normal course administrative expenses in the prior 4 years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the GRS Restoration Reserve Account than actually were transferred during such look back period, then the GRS Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period or (ii) the dollars that were actually paid out in restoration

payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period); or (iii) the amount required to increase the projected 2023 GRS Funded Level to 71%.

3.    <u>General GRS Pension Restoration from July 1, 2023 to June 30, 2033</u>.

During this period, the Funding Target, the Restoration Target, the Permanent Restoration Targets and the Restoration Reserve Suspension Trigger shall be as set forth on Exhibit A hereto.  The same rules for variable restoration payments and credits that applied during the period ending June 30, 2023 shall apply during the period ending June 30, 2033 (including ceasing interest credits in the event of a Restoration Reserve Suspension Trigger,  and making Restoration Account asset transfers in the event the 2033 GRS Funded Level falls below the 2033 Funding Target), except as follows.  For purposes of determining whether the 2033 Restoration Target has been satisfied, the Plan actuary shall project investment returns through June 30, 2033 at the then current investment return assumption which is assumed to be net of expenses (administrative and investment) and the applicable actuarial assumptions as utilized in the annual actuarial valuation.  Further, the GRS Plan actuary shall assume, merely for purposes of determining whether the Restoration Target is satisfied, that the annual City contribution amount shall be the annual amount necessary to fund the GRS based upon an amortization of the actual 2023 UAAL at market value over 30 years (hereinafter, the "2023 UAAL Amortization") and in such manner that the resulting annual contribution stream would achieve the GRS  Funding Target  (on Exhibit A) as of 2033. (Such projected, hypothetical contributions shall be for purposes only of making restoration determinations, and shall not necessarily be the actual contributions made or required to be made by the City or recommended during such period; all of which shall be determined independent of the restoration calculation process.). For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded.

To the extent that the City's actual contributions to the GRS in any of the FYs 2024 (the year ending June 30, 2024) through 2033 are greater than the projected annual contribution under the 2023 UAAL Amortization, such amounts, and any investment earnings thereon, shall be notionally credited  to a new bookkeeping account in GRS called the Extra Contribution Account.  In determining pension restoration during the period from FY 2024 through 2033, none of the amounts in the Extra Contribution Account shall be considered for purposes of determining the projected funded level for the Restoration Target or Permanent Restoration Targets.   To the extent that the City's (including for this purpose DWSD or a successor authority) actual contributions in any of the FYs 2024 through 2033 are less than the projected annual contribution under the 2023 UAAL Amortization, such difference and any investment earnings thereon shall be notionally allocated to the Pension Fund Reserve Account.

Each year, in addition to the credit of assets that exceed the amount necessary to satisfy the Restoration Target, existing Restoration Account assets will be credited with interest equal to the net return on plan investments, but capped at the then investment return assumption. In the event of net losses, the credited asset value of the Restoration Reserve Account will be diminished to reflect such losses.

In connection with preparation of the actuarial report for FY 2028, the GRS actuary will determine whether GRS has satisfied the applicable Permanent Restoration Target, which shall be 75%. Transfers from the Restoration Reserve Account for credit to the GRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers the GRS Funded Level as of June 30, 2028 has satisfied the Permanent Restoration Target(75%), then the amounts in the Restoration Reserve Account , if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of restoration payments for one or more GRS Waterfall Classes over such GRS Waterfall Class members' actuarially projected lives, shall be transferred from the Restoration Reserve Account and credited to the GRS Pension Reserve Account and the applicable incremental payments shall be permanently restored for the applicable GRS Waterfall Class and shall no longer be variable from year to year. Variable restoration payments will continue to be paid or credited during the period from July 1, 2028 through June 30, 2033 based on the applicable Restoration Target set forth in Exhibit A and otherwise in accordance with this restoration memorandum, notwithstanding whether the Restoration Target during this period is less than the Permanent Restoration Target as of June 30, 2028 of 75%.

In connection with preparation of the annual actuarial valuation report for FY 2033, the GRS actuary will determine whether GRS has satisfied the Permanent Restoration Target for 2033, as set forth on Exhibit A. Transfers from the Restoration Reserve Account for credit to the GRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target . If following such transfers the GRS Funded Level as of June 30, 2033 has satisfied the applicable Permanent Restoration Target, then the amounts in the Restoration Reserve Account if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target), and which fully fund one or more increments of restoration payments for one or more GRS Waterfall Classes over such GRS Waterfall Class members' actuarially projected lives, shall be transferred from the Restoration Reserve Account and credited to the GRS Pension Reserve Account and the applicable incremental payments shall be permanently restored for the applicable GRS Waterfall Class and shall no longer be variable from year to year.

Following receipt of the actuarial reports for 2028, and in the event that the projected Funded Level of GRS as of 2033 is less than 71%, the GRS actuary shall revisit the restoration calculations that it made during each of the prior 4 years. It shall recalculate each such prior year's Funded Level projection, this time by assuming the lesser of (i) $4.5 million in annual administrative expenses until 2033, or (ii) an amount of annual normal course administrative expenses until 2033 equal to the average annual administrative expenses in the prior 4 years applicable to Component II, in addition to a net 6.75% annual investment return. If such retrospective recalculation indicates that fewer amounts would have transferred to the GRS Restoration Reserve Account than actually were transferred during such look back period, then the GRS Restoration Reserve Account shall be debited by the lesser of (i) this difference (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period or (ii) the dollars that were actually paid out in restoration payments during such look-back period (plus interest at a rate equal to the rate that was credited to the Restoration Reserve Account during the look-back period); or (iii) the amount required to increase the projected 2033 GRS Funded Level to 71%.

4. <u>General GRS Pension Restoration from July 1, 2033 to June 30, 2043</u>.

During this period, the Funding Target, the Restoration Target , the Permanent Restoration Target and the Restoration Reserve Suspension Trigger shall be as set forth on Exhibit A hereto. The same rules for restoration that applied during the period ending June 30, 2033 shall otherwise apply (including ceasing interest credits in the event of a Restoration Reserve Suspension Trigger, and making Restoration Account asset transfers in the event the 2043 GRS Funded Level falls below the 2043 Funding Target). For example, for purposes of determining whether the 2043 Restoration Target has been satisfied, the Plan actuary shall project annual contributions using the same 2023 UAAL Amortization. For purposes of calculating the funded ratio, the assets in the Restoration Reserve account will be excluded, and no Extra Contribution Account assets shall be included for purposes of determining whether the Funded Level meets the Restoration Target or Permanent Restoration Target, including any additions to such account after 2033.

In connection with preparation of the annual actuarial valuation report for FY 2043, the GRS actuary will determine whether GRS has satisfied the applicable Permanent Restoration Target, as set forth on Exhibit A. Transfers from the Restoration Reserve Account for credit to the GRS Pension Reserve Account may be made in such amounts as are necessary to satisfy the Permanent Restoration Target. If following such transfers the GRS Funded Level as of June 30, 2043 is s equal to or greater than the applicable Permanent Restoration Target , then the amounts in the Restoration Reserve Account if any (which will necessarily represent excess not necessary to satisfy the Permanent Restoration Target),

shall be transferred from the Restoration Reserve Account and credited to the GRS Pension Reserve Account and the applicable payments for the applicable GRS Waterfall Class shall be permanently restored and shall no longer be variable.

5. Modification of the Pension Restoration Program

If any time after July 1, 2026, the GRS Investment Committee (by vote of 5 of its 7 members), or the GRS Board of Trustees (by a greater than 66% vote) determines that a change in relevant circumstances has occurred, or there was a mutual mistake of fact in developing this Pension Restoration Agreement, such that the continued operation of this Agreement without amendment will: (a) materially harm the long-term economic interests of the City, or Retirement System; (b) materially impair the City's ability to fully fund over a reasonable period the then existing frozen benefit liabilities; or (c) materially hinder the Restoration program, if as of that juncture (and for purposes of applying this subsection 5(c)) annual funding levels (excluding the Extra Contribution Account) had materially exceeded the applicable PFRS Restoration Targets for a substantial period yet without any material actual restoration of benefits as contemplated herein having been made, the Investment Committee or the Board, as the case may be, shall provide written notice to the other entity of such a determination and of the need to amend this Restoration Agreement (it being understood that the post-Chapter 9, 40-year amortization period (to 2053) to fully fund GRS frozen liabilities is, unless the relevant facts demonstrate otherwise, presumptively reasonable). The Investment Committee and the Board shall then meet to negotiate amendments to this Agreement that address the identified risk of harm or impairment, but which also considers this Agreement's objective of providing pension restoration. Such negotiations shall take into account reasonable actions the City has pursued or could pursue to mitigate such harm or impairment. Any such amendments shall require the approval of a majority vote of the combined members of the Committee and Board (persons who sit on both the Board and Committee shall have one vote). Such parties shall consult with the Mayor, City Council and the Governor in connection with such negotiation. If the Board, acting through a majority, and the Investment Committee, acting through a majority, cannot agree to such amendments with the 90-day period following the provision of such notice by the determining party, then the Board and Investment Committee shall proceed to mediation upon demand from either the Board or the Investment Committee. In this regard, within 30-days following expiration of the 90-day period the Board and the Investment Committee shall each select a mediator from the list of approved mediators for the United States District Court for the Eastern District of Michigan. The two selected mediators shall appoint a third neutral mediator from the approved list. Each party shall furnish a written statement to the mediators within 30 days of selection of the neutral mediator. Representatives of the Mayor and the Governor shall be consulted in connection with such

mediations. If following a 90-day mediation period following submission of the written statements the matter is not settled, then either the Investment Committee or the Board can file an action in the United Stated District Court for the Eastern District of Michigan asking it to declare, *inter alia*, whether or in what manner to amend this Agreement.

# EXHIBIT A TO  THE GRS PENSION RESTORATION PROGRAM

**GRS -** The 2033 and 2043 Funding Targets shall be equal to the actual 2023 Funded Level rounded to the nearest 10th decimal . The Restoration Target shall be 3.0% higher than the Funding Target but not less than 73%.  The Permanent Restoration Targets shall be 75% in 2028,  and 1% higher than the Restoration Targets in 2033 and 2024, but not less than 75%.. The Restoration Reserve Suspension Trigger will be set 1% higher than the projected Funding Target for all time periods.

| 2023 Funded Level | 2033 Funding Target/Restoration Target | 2043 Funding Target/Restoration Target |
|---|---|---|
| 75% | 75%/78% | 75%/78% |
| 74% | 74%/77% | 74%/77% |
| 73% | 73%/76% | 73%/76% |
| 72% | 72%/75% | 72%/75% |
| 71% | 71%/74% | 71%/74% |
| 70% | 70%/73% | 70%/73% |
| 69% or lower | the % = to 2023 Funded Level %/73% | the % = to 2023 Funded Level %/73% |

| 2033 Permanent Restoration Target | 2043 Permanent Restoration Target |
|---|---|
| 75% ,or if greater, 1% more  than 2033 Restoration Target | 75%, or if greater, 1% more than 2043 Restoration Target |

____

**EXHIBIT II.D.5**

SCHEDULE OF POSTPETITION COLLECTIVE BARGAINING AGREEMENTS

**EXHIBIT II.D.5**

**SCHEDULE OF POSTPETITION COLLECTIVE BARGAINING AGREEMENTS**

## I.  FULLY APPROVED AGREEMENTS[1]

**A.  City of Detroit Collective Bargaining Agreements**

1)      Master Agreement Between the City of Detroit and the Police Officers Association of Michigan (POAM), 2013-2018, dated November 12, 2013.

2)      Master Agreement Between the City of Detroit and the International Brotherhood of Teamsters Local 214 2013-2018, dated December 18, 2013.

       a.      Supplemental Agreement Between the City of Detroit Police Department and Teamsters State, County and Municipal Workers, Local 214 2013-2018, dated December 18, 2013.

       b.      Supplemental Agreement Between the Department of Public Works and Teamsters Local 214 2013-2018, dated December 18, 2013.

       c.      Supplemental Agreement Between the General Services Department and Teamsters Local 214 2013-2018, dated December 18, 2013.

       d.      Supplemental Agreement between the City of Detroit Municipal Parking Department and Local #214 Teamsters State, County and Municipal Workers, 2013-2018, dated December 18,  2013.

3)      Master Agreement Between the City of Detroit and the International Union of Operating Engineers (IUOE) Local 324 2013-2018, dated December 18, 2013.

4)      Master Agreement Between the City of Detroit and the International Union of Operating Engineers (IUOE) Local 324 (Park Management) 2013-2018, dated December 18, 2013.

5)      Master Agreement Between the City of Detroit and the International Union of Operating Engineers (IUOE) Local 324 (Principal Clerks) 2013-2018, dated December 18, 2013.

6)      Master Agreement Between the Assistant Supervisors of Street Maintenance and Construction and the City of Detroit 2014-2018, dated February 26, 2014.

7)      Master Agreement Between the City of Detroit and the Michigan Building and Construction Trades Council 2014-2018, dated May 1, 2014.

8)      Master Agreement Between the City of Detroit and the Emergency Medical Service Officers Association (EMSOA) 2014-2019, dated June 11, 2014.

9)      Master Agreement Between the City of Detroit and Local 1863 of the American Federation of State County and Municipal Employees, AFL-CIO (Detroit Civilian Crossing Guards) 2014-2018, dated June 27, 2014.

10)     Master Agreement Between the City of Detroit and Local 542 of the American Federation of State County and Municipal Employees, AFL-CIO (Motor City Seasonals) 2014-2018, dated June 27, 2014.

---

[1]      "Fully Approved Agreements" means those collective bargaining agreements that have been (i) ratified by the applicable bargaining unit or units, as necessary (ii) approved by the applicable City or Detroit Water and Sewerage Department bargaining representatives, (iii) approved by the Emergency Manager and (iv) approved by the Office of the Treasurer of the State of Michigan.

11) Master Agreement Between the City of Detroit and Local 1206 of the American Federation of State County and Municipal Employees, AFL-CIO (Detroit Forestry and Landscape Foreman's Union) 2014-2018, dated June 27, 2014.

12) Master Agreement Between the City of Detroit and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

    a. Supplemental Agreement Between the City of Detroit Elections Department and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

    b. Supplemental Agreement Between the City of Detroit Municipal Parking Department and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

    c. Supplemental Agreement Between the City of Detroit Planning and Development Department and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

    d. Supplemental Agreement Between the City of Detroit Police Department and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

    e. Supplemental Agreement Between the City of Detroit Recreation Department and Local 2394 of the American Federation of State County and Municipal Employees, AFL-CIO (Supervisory Unit) 2014-2018, dated June 27, 2014.

13) Master Agreement Between the City of Detroit and Local 6087 of the American Federation of State County and Municipal Employees, AFL-CIO (Paving Forepersons) 2014-2018, dated June 27, 2014.

14) Master Agreement Between the City of Detroit and the Detroit Police Command Officers Association 2014-2019, dated June 18, 2014.

15) Master Agreement Between the City of Detroit and the Detroit Income Tax Investigators Association 2014-2018, dated August 11, 2014.

16) Master Agreement Between the City of Detroit and the Association of Municipal Inspectors 2014-2018, dated June 27, 2014.

17) Master Agreement Between the City of Detroit and the Service Employees International Union (SEIU) Local 517-M (Supervisory Unit) 2014-2018, dated June 25, 2014.

18) Master Agreement Between the City of Detroit and the Service Employees International Union (SEIU) Local 517-M (Non-Supervisory Unit) 2014-2018, dated June 25, 2014.

19) Master Agreement Between the City of Detroit and the Service Employees International Union (SEIU) Local 517-M (Professional and Technical Unit) 2014-2018, dated June 25, 2014.

20) Master Agreement Between the City of Detroit and the Association of City of Detroit Supervisors 2014-2018, dated June 27, 2014.

21) Master Agreement Between the City of Detroit and the Association of Professional and Technical Employees 2014-2018, dated July 22, 2014.

22) Master Agreement Between the City of Detroit and the Senior Accountants, Analysts and Appraisers Association 2014-2018, dated May 27, 2014.

2

23)     Master Agreement Between the City of Detroit and Michigan Council 25 of the American Federation of State, County and Municipal Employees, AFL-CIO (Non-Supervisory Bargaining Unit) 2014-2018, dated June 27, 2014.

24)     Master Agreement Between the City of Detroit and the Detroit Police Officers Association (DPOA) 2014-2019, dated October 1, 2014.

25)     Master Agreement Between the City of Detroit and the Association of Professional Construction Inspectors 2014-2018, dated September 30, 2014.

26)     Master Agreement Between the City of Detroit and the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) Local 212 – Police Commission Investigators 2014-2018, dated October 20, 2014.

27)     Master Agreement Between the City of Detroit and the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) Local 412 – Legal Assistants 2014-2018, dated October 20, 2014.

**B. Detroit Water and Sewerage Department Collective Bargaining Agreements**

1)     2012-2018 Master Agreement Between the Detroit Water & Sewerage Department and AFSCME, Michigan Council 25 Local 2920.

2)     Master Agreement Between the City of Detroit and the Michigan Building and Construction Trades Council 2013-2016, dated June 26, 2013.

    a.     Memorandum of Agreement between the Detroit Water and Sewerage Department and the Michigan Building & Construction Trades Council to amend their June 26, 2013 - June 30, 2016 collective bargaining agreement.

3)     2013-2016 Master Agreement Between the Detroit Water & Sewerage Department and the Building Trades Foremen, dated June 26, 2013.

4)     2014-2016 Master Agreement Between the Detroit Water & Sewerage Department and the Detroit Senior Water Systems Chemists Association.

5)     2014-2019 Master Agreement Between the DWSD and Teamsters State, County and Municipal Workers, Local 214.

6)     Memorandum of Agreement between the Detroit Water and Sewerage Department and the International Union of Operating Engineers, Local 324 to amend their March 25, 2013 - June 30, 2022 collective bargaining agreement.

7)     Memorandum of Agreement between the Detroit Water and Sewerage Department and the Association of Professional Construction Inspectors to amend their March 26, 2013 - June 30, 2020 collective bargaining agreement.

3

## II. RATIFIED AGREEMENTS PENDING FINAL APPROVALS[2]

### A. Ratified City of Detroit Collective Bargaining Agreements Pending Final Approvals

1)  Master Agreement Between the City of Detroit and the Detroit Police Lieutenants and Sergeants Association 2014-2019.

    a.  Tentative Agreement Between the City of Detroit and the Detroit Police Lieutenants and Sergeants Association, dated June 19, 2014.

2)  Master Agreement Between the City of Detroit and the Association of Detroit Engineers 2014-2018.

3)  Master Agreement Between the City of Detroit and Michigan Building and Construction Trades Council – Tripartite 2014-2018.

---

[2]      "Ratified Agreements Pending Final Approvals" means those collective bargaining agreements approved by the City bargaining representatives, and  ratified by the applicable bargaining unit or units, as necessary, that remain subject to approval by either, or both, the Emergency Manager and the Office of the Treasurer of the State of Michigan.  The inclusion of such collective bargaining agreements in this Exhibit does not, and shall not be deemed to, modify or waive the requirement for such approvals in any way.

4

**EXHIBIT II.D.6**

EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE REJECTED

# Exhibit II.D.6

Executory Contracts and Unexpired Leases to be Rejected

In re City of Detroit, Michigan, Case No. 13-53846 (Bankr. E.D. Mich)

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| 151 W FORT ST ASSOCIATES LLC | 1075036 | 2635434 | | INFORMATION TECHNOLOGY SERVICES |
| 1600 ASSOCIATES LLC | 20396 | 2501191 | | MUNICIPAL PARKING DEPARTMENT |
| 3M CONTRACTING INC | 1107578 | 2809948 | | HUMAN SERVICES DEPARTMENT |
| 455 ASSOCIATES LLC | 19602 | 2600416 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| 455 ASSOCIATES LLC | 19602 | 2722656 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| 660 WOODWARD ASSOCIATES LLC | 1117401 | 2604895 | | INFORMATION TECHNOLOGY SERVICES |
| 660 WOODWARD ASSOCIATES LLC | 1117401 | 2809305 | | LAW DEPARTMENT |
| 660 WOODWARD ASSOCIATES LLC | 1117401 | 2866561 | | LAW DEPARTMENT |
| A & H CONTRACTORS | 1090249 | 2797590 | ICE RINK IMPROVEMENTS | RECREATION DEPARTMENT |
| A NEW BEGINNING II INC | 1010270 | 2626822 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| AARON L FORD | 1101801 | 2759870 | | HEALTH DEPARTMENT |
| ABAYOMI CDC | 1055088 | 2597193 | | FINANCE DEPARTMENT |
| ABBOT NICHOLSON | 1064317 | 2605132 | LEGAL SERVICES | LAW DEPARTMENT |
| ACCENTURE LLP | 19843 | 2582670 | | HUMAN SERVICES DEPARTMENT |
| ACHIEVEMENT RESOURCES LLC | 1075198 | 2640120 | | DEPARTMENT OF PUBLIC WORKS |
| ADAMS HOME REPAIR SERVICE INC | 1031652 | 2532093 | HOME REPAIR FOR LOW INCOME CITIZENS. | HUMAN SERVICES DEPARTMENT |
| ADULT WELL BEING SERVICES | 17259 | 2507595 | ADULT WELL BEING SERVICES | HEALTH DEPARTMENT |
| ADULT WELL BEING SERVICES | 17259 | 2501821 | EZ-PUBLIC SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| ADVANCED ENGINEERING SOLUTION INC | 1043861 | 2613331 | | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| AFFILIATED INTERNISTS CORPORATION | 1007088 | 2541129 | PROVIDE MEDICAL STAFF | HEALTH DEPARTMENT |
| AFL CIO COUNCIL | 9713 | 2505335 | | FINANCE DEPARTMENT |
| AFL CIO COUNCIL | 9713 | 2504234 | AFL/CIO COUNCIL-METRO COUNCIL | FINANCE DEPARTMENT |
| AGAR LAWN SPRINKLER SYSTEMS INC | 1019225 | 2871984 | FURNISH UNDERGROUND SPRINKLER MAINT. | GENERAL SERVICES DEPARTMENT |
| AIRGAS GREAT LAKES | - | 2754331 | PURCHASE ORDER FOR COMMERCIAL GASES | GENERAL SERVICES DEPARTMENT |
| AKT PEERLESS ENVIRONMENTAL SERVICES LLC | 1025663 | 2845810 | DEMOLITION OF PROPERTIES | BUILDINGS AND SAFETY DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2554416 | CONTRACTUAL RESOURCES | INFORMATION TECHNOLOGY SERVICES |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2572989 | | HEALTH DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2511247 | AUDITING SERVICES FY 98/99 FICS 78653 | HUMAN SERVICES DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2501399 | PROFESSIONAL SERVICES | FINANCE DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2507833 | AUDITING - ALAN C YOUNG | HEALTH DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2515896 | AUDIT DRUG TREATMENT/AIDS PROGRAMS | HUMAN SERVICES DEPARTMENT |
| ALAN C YOUNG ASSOCIATES PC | 20513 | 2780084 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| ALKEBU LAN VILLAGE | 1043877 | 2588741 | | HUMAN SERVICES DEPARTMENT |
| ALKEBU LAN VILLAGE | 1043877 | 2533139 | YOUTH PROGRAM | HUMAN SERVICES DEPARTMENT |
| ALKEBU LAN VILLAGE | 1043877 | 2619692 | | HUMAN SERVICES DEPARTMENT |
| ALKEBU LAN VILLAGE | 1043877 | 2804801 | | HUMAN SERVICES DEPARTMENT |
| ALKEBU LAN VILLAGE | 1043877 | 2775178 | | HUMAN SERVICES DEPARTMENT |
| ALKEBU LAN VILLAGE | 1043877 | 2772580 | PROFESSIONAL SERVICES CONTRACT | RECREATION DEPARTMENT |
| ALLEN & ASSOCIATES APPRAISAL GROUP INC | 20517 | 2502141 | PROFESSIONAL SERVICES:  CASINO APPRAISAL | LAW DEPARTMENT |
| ALLIANCE FOR A SAFER GREATER DETROIT | 1102712 | 2767089 | | POLICE DEPARTMENT |
| ALPHA ELECTRIC INC | 1026028 | 2625782 | | PUBLIC LIGHTING DEPARTMENT |
| ALPHA ELECTRIC INC | 1026028 | 2625784 | | PUBLIC LIGHTING DEPARTMENT |
| ALPHA ELECTRIC INC | 1026028 | 2625780 | | PUBLIC LIGHTING DEPARTMENT |
| ALPHA KAPPA ALPHA FOUNDATION OF DETROIT | 19649 | 2592410 | | FINANCE DEPARTMENT |
| ALTERNATIVE FOR GIRLS | 16279 | 2503526 | TRANSITIONAL HOUSING | FINANCE DEPARTMENT |
| AMERICAN INDIAN HEALTH & FAMILY | 18997 | 2500866 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| AMERITECH | 20497 | 2506112 | | PUBLIC LIGHTING DEPARTMENT |
| AMPCO SYSTEM PARKING | 18489 | 2501028 | PARKING SERVICES | MUNICIPAL PARKING DEPARTMENT |
| AMPCO SYSTEM PARKING | 18489 | 2501362 | KENNEDY SQUARE PARKING SERVICES | MUNICIPAL PARKING DEPARTMENT |
| AMPCO SYSTEM PARKING | 18489 | 2501356 | PARKING SERVICE FOR KENNEDY SQUARE | MUNICIPAL PARKING DEPARTMENT |
| AMPCO SYSTEM PARKING | 18489 | 2501789 | PARKING LOT MANAGEMENT | FINANCE DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2524825 | WEATHERIZATION PROGRAM | HUMAN SERVICES DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2525177 | LIHEAP | HUMAN SERVICES DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2544432 | HOME WEATHERIZATION | HUMAN SERVICES DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2607320 | | HUMAN SERVICES DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2789077 | | HUMAN SERVICES DEPARTMENT |
| AMPRO CONSTRUCTION LLC | 1026137 | 2761179 | | HUMAN SERVICES DEPARTMENT |
| ANACAPA SCIENCE INC | 1012433 | 2507585 | | POLICE DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2530372 | LEGAL SERVICES:  DAVIS/WILLIAMS V CITY | FINANCE DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2634325 | | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2538079 | LEGAL SERVICES:  TOMMIE THOMAS V CITY | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2561944 | LEGAL SERVICES:  MICHELLE HARPER, ET AL | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2561936 | LEGAL SERVICES | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2501547 | LEGAL SERVICES:  RYAN MULLINS V CITY | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2545467 | LEGAL SERVICES:  BOSWELL V JORDAN/CITY | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2505202 | LEGAL SERVICES | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2512646 | LEGAL SERVICES | FINANCE DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2505710 | LEGAL SERVICES:  KEITH THORNTON V CITY | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| ANDREW J BEAN | 1003634 | 2576673 | | LAW DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2505715 | LEGAL SERVICES | FINANCE DEPARTMENT |
| ANDREW J BEAN | 1003634 | 2574494 | | LAW DEPARTMENT |
| AON RISK SERVICES INC OF MICHIGAN | 17959 | 2506866 | AUDIT | AUDITOR GENERAL |
| APCOA INC | 18982 | 2504151 | COBO COMPLEX PARKINGMANAGEMENT SERVICES | MUNICIPAL PARKING DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2546963 | PARTNERSHIP FOR ADULT LEARNING | EMPLOYMENT AND TRAINING DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2563067 | WORK FIRST & WELFARE TO WORK | EMPLOYMENT AND TRAINING DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2778448 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2797753 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2806229 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2775339 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2714444 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB AMERICAN & CHALDEAN COUNCIL | 19955 | 2717186 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB COMMUNITY CENTER | 20424 | 2549478 | ENGLISH AS A SECOND LANGUAGE | EMPLOYMENT AND TRAINING DEPARTMENT |
| ARAB COMMUNITY CENTER | 20424 | 2519169 | JOB SEARCH AND TRAINING (WORK FIRST) | EMPLOYMENT AND TRAINING DEPARTMENT |
| ARAB COMMUNITY CENTER | 20424 | 2740257 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB COMMUNITY CENTER FOR ECONOMIC SOCIAL SERVICES (ACCESS) | 1070466 | 2778446 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB COMMUNITY CENTER FOR ECONOMIC SOCIAL SERVICES (ACCESS) | 1070466 | 2797751 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB COMMUNITY CENTER FOR ECONOMIC SOCIAL SERVICES (ACCESS) | 1070466 | 2800934 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARAB COMMUNITY CENTER FOR ECONOMIC SOCIAL SERVICES (ACCESS) | 1070466 | 2778768 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ARTHUR F SMITH ARCHITECTS | 19092 | 2500783 | CAMP MASTERPLAN | NO DEPARTMENT INDICATED |
| ASHPAUGH & SCULCO CPA PLC | 1026075 | 2506711 | RATE CONSULTANT | NON-DEPARTMENTAL |
| AVANCE COMMUNICATIONS INC | 1017277 | 2589125 | | DEPARTMENT OF TRANSPORTATION |
| AVANCE COMMUNICATIONS INC | 1017277 | 2544753 | COMMUNICATIONS | HUMAN SERVICES DEPARTMENT |
| B & B POOLS AND SPAS | 8897 | 2680662 | | RECREATION DEPARTMENT |
| B E I ASSOCIATES INC | 1002153 | 2500794 | PROFESSIONAL ENGINEERING SERVICES | DEPARTMENT OF PUBLIC WORKS |
| BABBIE DEVELOPERS | 1100891 | 2753822 | ROOF REPLACEMENT FORT WAYNE-QUARTERMASTER WAREHOUSE | RECREATION DEPARTMENT |
| BAPCO-SUBSTANCE ABUSE | 15997 | 2501510 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| BARNEY MCCOSKY BASEBALL LEAGUE | 17329 | 2540757 | 36-NTV-NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| BARTECH GROUP | 19194 | 2578539 | | FINANCE DEPARTMENT |
| BARTHEL CONTRACTING | 6174 | 2506716 | PAVEMENT RESURFACING, GROUP 95-3 | DEPARTMENT OF PUBLIC WORKS |
| BARTHEL CONTRACTING | 6174 | 2508554 | WIDENING & RESURFACING | DEPARTMENT OF PUBLIC WORKS |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| BARTHEL CONTRACTING | 6174 | 2508474 | PAVEMENT RESURFACING, GROUP 96-5 | DEPARTMENT OF PUBLIC WORKS |
| BARTHEL CONTRACTING | 6174 | 2630995 | | DEPARTMENT OF PUBLIC WORKS |
| BARTHEL CONTRACTING | 6174 | 2658806 | | DEPARTMENT OF PUBLIC WORKS |
| BDN INDUSTRIAL HYGIENE CONSULTANT | 19807 | 2502471 | ABATEMENT OF ASBESTOS | DEPARTMENT OF PUBLIC WORKS |
| BDO SEIDMAN LLP | 1073285 | 2659484 | | LAW DEPARTMENT |
| BEACON ENERGY LLC | 1088904 | 2699766 | | SEWERAGE DEPARTMENT |
| BEACON ENERGY LLC | 1088904 | 2763942 | PROVIDE CONSULTING SERVICES | PUBLIC LIGHTING DEPARTMENT |
| BEAL INC | 1104822 | 2786319 | | RECREATION DEPARTMENT |
| BEI ASSOCIATES INC | 19420 | 2586915 | | DEPARTMENT OF PUBLIC WORKS |
| BEI ASSOCIATES INC | 19420 | 2576869 | | PUBLIC LIGHTING DEPARTMENT |
| BELLANCA BEATTIE & DELISLE PC | 1002283 | 2515001 | LEGAL SERVICES | FINANCE DEPARTMENT |
| BELLANCA BEATTIE & DELISLE PC | 1002283 | 2502106 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| BELLANCA BEATTIE & DELISLE PC | 1002283 | 2618387 | LEGAL SERVICES | LAW DEPARTMENT |
| BELMARC INC | 1012648 | 2505560 | PROFESSIONAL SERVICES | LAW DEPARTMENT |
| BERG MUIRHEAD AND ASSOCIATES | 1051572 | 2758875 | | MAYOR'S OFFICE |
| BEST AMERICAN INDUSTRIAL | 17038 | 2501442 | SKILLED TRADES | NO DEPARTMENT INDICATED |
| BETTS MEDICAL GROUP LLC | 1030943 | 2531569 | PHYSICIAN SERVICES | HEALTH DEPARTMENT |
| BLACK & VEATCH | 20115 | 2501009 | PROFESSIONAL SERVICES | NO DEPARTMENT INDICATED |
| BLACK CAUCUS FOUNDATION OF MICHIGAN | 18481 | 2501792 | | HEALTH DEPARTMENT |
| BLACK FAMILY DEVELOPMENT INC | 1012009 | 2508726 | PROGRAM COORDINATION OF COOPER | FINANCE DEPARTMENT |
| BLACK FAMILY DEVELOPMENT INC | 1012009 | 2506003 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| BLACK FAMILY DEVELOPMENT INC | 1012009 | 2784374 | | HUMAN SERVICES DEPARTMENT |
| BLACK FAMILY DEVELOPMENT INC | 1012009 | 2761029 | | HUMAN SERVICES DEPARTMENT |
| BLOUNT ENGINEERS INC. | 13566 | 2500972 | PROFESSIONAL SERVICES | PUBLIC LIGHTING DEPARTMENT |
| BODMAN LONGLEY DAHLING LLP | 1000341 | 2507188 | LEGAL SERVICES | LAW DEPARTMENT |
| BODMAN LONGLEY DAHLING LLP | 1000341 | 2501800 | LEGAL SERVICES | PUBLIC LIGHTING DEPARTMENT |
| BODMAN LONGLEY DAHLING LLP | 1000341 | 2505006 | LEGAL SERVICES | LAW DEPARTMENT |
| BODMAN LONGLEY DAHLING LLP | 1000341 | 2501852 | LEGAL SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| BONIFACE HUMAN SRVS | 19449 | 2501513 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| BOOKER T WASHINGTON | 17389 | 2517857 | PUBLIC FACILITY REHABILITATION | FINANCE DEPARTMENT |
| BOOMER CO | 19949 | 2784930 | CITY OF DETROIT CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| BOOTH RESEARCH GROUP INC | 1058277 | 2585080 | | POLICE DEPARTMENT |
| BOOTH RESEARCH GROUP INC | 1058277 | 2759498 | DPD PROMOTIONAL EXAMINATION | POLICE DEPARTMENT |
| BRACEFUL & ASSOCIATES PC | 1002357 | 2508823 | LEGAL SERVICES | FINANCE DEPARTMENT |
| BRACEFUL & ASOCIATES PC | 1002357 | 2507332 | LEGAL SERVICES: TROMEUR V CITY | LAW DEPARTMENT |
| BRADY HATHAWAY PC | 20356 | 2505092 | LEGAL SERVICES: VINES/CHILDS V CITY | LAW DEPARTMENT |
| BRIGHTMOOR COMMUNITY CENTER | 18407 | 2501479 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| C & H BUILDERS | 1025257 | 2544437 | HOME WEATHERIZATION | FINANCE DEPARTMENT |
| C & H BUILDERS | 1025257 | 2524574 | WEATHERIZATION PROGRAM | HUMAN SERVICES DEPARTMENT |
| C & H BUILDERS | 1025257 | 2543531 | LIHEAP-HOME WEATHERIZATION PROGRAM | HUMAN SERVICES DEPARTMENT |
| C & H BUILDERS | 1025257 | 2793400 | | HUMAN SERVICES DEPARTMENT |
| CAASTI CONTRACTING SERVICES INC | 1066086 | 2799257 | CPATTON PARK IMPROVEMENT | RECREATION DEPARTMENT |
| CAASTI CONTRACTING SERVICES INC | 1066086 | 2799260 | BELLE ISLE - TENNIS COURT RENOVATIONS | RECREATION DEPARTMENT |
| CAASTI CONTRACTING SERVICES INC | 1066086 | 2789963 | LITTLEFIELD PLAYFIELD RENOVATIONS | RECREATION DEPARTMENT |
| CAASTI CONTRACTING SERVICES INC | 1066086 | 2798602 | WINGLE PLAYLOT IMPROVEMENTS | RECREATION DEPARTMENT |
| CADILLAC TOWER MI LLC | 1117104 | 2810553 | | BUDGET DEPARTMENT |
| CAPITAL ACCESS INC | 1033428 | 2536054 | CONSULTING AGREEMENT | PLANNING AND DEVELOPMENT DEPARTMENT |
| CAPITAL COMPUTER SOLUTIONS | 16316 | 2507466 | IMAGING SYSTEM  (FICS #76497) | HEALTH DEPARTMENT |
| CAPITAL COMPUTER SOLUTIONS | 16316 | 2760099 | | HEALTH DEPARTMENT |
| CARE GIVERS | 19339 | 2510116 | HOMELESSNESS PREVENTION | FINANCE DEPARTMENT |
| CAREERWORKS INC | 10310 | 2501469 | SUMMER PROGRAM | NO DEPARTMENT INDICATED |
| CAREERWORKS INC | 10310 | 2518192 | WORK FIRST JOB PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2526127 | YOUTH SERVICES PROGRAM PY2000 | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2539830 | FOOD STAMP - 10/01/00 - 9/30/01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2560643 | FOOD STAMP 2001-2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2553148 | WIA SUMMER COORDINATION | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2530117 | WIA SUMMER - MICROSOFT PROGRAM | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2536669 | WIA-ELECTRONICS & TELECOMMUNICATIONS | EMPLOYMENT AND TRAINING DEPARTMENT |
| CAREERWORKS INC | 10310 | 2740262 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CARNEGIE MORGAN PARTNERS | 18655 | 2600434 | | FINANCE DEPARTMENT |
| CASS COMMUNITY SOCIAL SERVICES INC | 1057639 | 2539246 | PUBLIC SERVICE FOR THE HOMELESS | HUMAN SERVICES DEPARTMENT |
| CASS COMMUNITY SOCIAL SERVICES INC | 1057639 | 2521565 | FOOD PROGRAM, EASTSIDE AND WESTSIDE | HUMAN SERVICES DEPARTMENT |
| CASS COMMUNITY SOCIAL SERVICES INC | 1057639 | 2570923 | | HUMAN SERVICES DEPARTMENT |
| CASS COMMUNITY SOCIAL SERVICES INC | 1057639 | 2775168 | | HUMAN SERVICES DEPARTMENT |
| CASS COMMUNITY UNITED | 18514 | 2559508 | CASE MANAGEMENT AND COUNSELING | DEPARTMENT OF PUBLIC WORKS |
| CASS COMMUNITY UNITED | 18514 | 2515503 | WARMING CENTER FOR HOMELESS | HUMAN SERVICES DEPARTMENT |
| CASS COMMUNITY UNITED METHODIST | 7182 | 2588909 | | HUMAN SERVICES DEPARTMENT |
| CASS CORRIDOR NEIGHBORHOOD DEVELOPMENT CORP | 20452 | 2506844 | PRE-DEVELOPMENT ACTIVITIES | FINANCE DEPARTMENT |
| CATHOLIC SOCIAL SERVICES | 3536 | 2501515 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| CATHOLIC YOUTH ORGANIZATION | 1961 | 2501808 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| CDL TRAINING SCHOOL LLC | 1064701 | 2804809 | | HUMAN SERVICES DEPARTMENT |
| CDL TRAINING SCHOOL LLC | 1064701 | 2775174 | | HUMAN SERVICES DEPARTMENT |
| CEI MICHIGAN LLC | 1104760 | 2785400 | EASTERN MARKET SHED NO. 3 RENOVATIONS | RECREATION DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| CEI MICHIGAN LLC | 1104760 | 2785393 | CONSTRUCTION CONTRACT FOR EASTERN MARKET SHED NO. 3 | RECREATION DEPARTMENT |
| CENTRAL MAINTENANCE SERVICE | 9209 | 2501782 | 36/LS - MANAGEMENT SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| CENTRAL UNITY METHODIST CHURCH | 5570 | 2503083 | PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| CENTURY CEMENT CO INC | 1393 | 2520066 | REPAIR OF DAMAGED SIDEWALKS | DEPARTMENT OF PUBLIC WORKS |
| CENTURY CEMENT CO INC | 1393 | 2541213 | REPAIR OF DAMAGED SIDEWALKS | DEPARTMENT OF PUBLIC WORKS |
| CHARFOOS & CHRISTENSEN | 19681 | 2599095 | LEGAL SERVICES | LAW DEPARTMENT |
| CHARLES MERZ | 19485 | 2501931 | BELLE ISLE PICNIC SHELTER | NO DEPARTMENT INDICATED |
| CHECKER CAB | 1002656 | 2533466 | | HUMAN SERVICES DEPARTMENT |
| CHECKER CAB | 1002656 | 2620877 | | HUMAN SERVICES DEPARTMENT |
| CHECKER CAB | 1002656 | 2775459 | | HUMAN SERVICES DEPARTMENT |
| CHECKER CAB | 1002656 | 2803649 | | HUMAN SERVICES DEPARTMENT |
| CHECKER CAB | 6574 | 2743785 | | HUMAN SERVICES DEPARTMENT |
| CHILD CARE COORDINATING COUNCIL OF DETROIT | 18279 | 2751505 | | HUMAN SERVICES DEPARTMENT |
| CHILD CARE COORDINATING COUNCIL OF DETROIT | 18279 | 2774001 | | HUMAN SERVICES DEPARTMENT |
| CHILDREN & YOUTH INITIATIVE OF DETROIT | 18304 | 2516007 | EMPOWERMENT ZONE- PUBLIC SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| CHILDREN & YOUTH INITIATIVE OF DETROIT | 18304 | 2500872 | | NO DEPARTMENT INDICATED |
| CHILDREN & YOUTH INITIATIVE OF DETROIT | 18304 | 2554216 | EMPOWERMENT ZONE - PUBLIC SERVICES | FINANCE DEPARTMENT |
| CHILDREN & YOUTH INITIATIVE OF DETROIT | 18304 | 2532118 | EMPOWERMENT ZONE - PUBLIC SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| CHILDRENS AID SOCIETY | 1002607 | 2618760 | | POLICE DEPARTMENT |
| CHILDRENS AID SOCIETY | 1002607 | 2620357 | | HUMAN SERVICES DEPARTMENT |
| CHILDRENS AID SOCIETY | 1002607 | 2563913 | | FINANCE DEPARTMENT |
| CHILDRENS AID SOCIETY | 1002607 | 2740222 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CHILDRENS AID SOCIETY | 1002607 | 2775157 | | HUMAN SERVICES DEPARTMENT |
| CHILDRENS AID SOCIETY | 1049240 | 2614565 | | HUMAN SERVICES DEPARTMENT |
| CHILDRENS AID SOCIETY | 1049240 | 2778775 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CHILDRENS AID SOCIETY | 1049240 | 2778778 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CHILDRENS AID SOCIETY | 1049240 | 2800817 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CHILDRENS CENTER OF WAYNE COUNTY | 12390 | 2501646 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| CHILDRENS CENTER OF WAYNE COUNTY | 12390 | 2535133 | HEAD START MENTAL CONSULTANT SERVICES | HUMAN SERVICES DEPARTMENT |
| CHILDRENS CENTER OF WAYNE COUNTY | 12390 | 2516136 | MENTAL HEALTH CONSULTANT SERVICES | HUMAN SERVICES DEPARTMENT |
| CHILDRENS CENTER OF WAYNE COUNTY | 12390 | 2569653 | | HUMAN SERVICES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| CHILDRENS CENTER OF WAYNE COUNTY | 12390 | 2501812 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| CHRISTIAN GUIDANCE CENTER | 18739 | 2501814 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| CITY CONNECT DETROIT | 1082718 | 2796700 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| CLARK & ASSOCIATES  PC | 1008458 | 2543328 | ADDICTION TREATMENT | HEALTH DEPARTMENT |
| CLARK & ASSOCIATES  PC | 1008458 | 2539765 | TRAINING WORK FIRST PROGRAM | HEALTH DEPARTMENT |
| CLARK & ASSOCIATES  PC | 1008458 | 2539650 | YOUTH DEPARTMENT SAFETY PROGRAM | HEALTH DEPARTMENT |
| CLARK & ASSOCIATES  PC | 1008458 | 2675311 | | HUMAN SERVICES DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2625022 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2504251 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2518285 | CLARK MASTER - SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2588764 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2536507 | CLARK - MEDICAID | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2670290 | | HUMAN SERVICES DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2689636 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2534097 | SUBSTANCE ABUSE MASTER AGREEMENT | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2559955 | CLARK- MEDICAID | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2518292 | CLARK MEDICAID-MASTER | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2518483 | CLARK - DRUG EDUCATION | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2506642 | EDUCATE FYE 6/30/99 CLARK/POLICE | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2501252 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2557597 | CLARK MASTER - SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2625016 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2527241 | YOUTH DEPT. SAFETY ASSESSMENT PROG. | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2618554 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2502443 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2618552 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2700218 | | RECREATION DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2515854 | CLARK - CCA- FYE 6/30/00  SPO2515857 | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2779347 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2797389 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2750134 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2747666 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2779369 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2756507 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2805210 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2875766 | S.A.F.E.T.Y. PROGRAM | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2776664 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2779355 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| CLARK ASSOCIATES INC | 15176 | 2755767 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2801963 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2803778 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2786574 | | HEALTH DEPARTMENT |
| CLARK ASSOCIATES INC | 15176 | 2759243 | | HEALTH DEPARTMENT |
| CLARK HILL | 7778 | 2501937 | LEGAL SERVICES | LAW DEPARTMENT |
| CLARK HILL | 7778 | 2543385 | LEGAL SERVICES | LAW DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2679759 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2636522 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2713626 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2714063 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2715398 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2731184 | PARK & PLAYGROUND IMPROVEMENTS | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2709777 | | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2756725 | PARK & PLAYGROUND IMPROVEMENTS | RECREATION DEPARTMENT |
| CLARKS CONSTRUCTION | 1016952 | 2789767 | LAKER PLAYGROUND IMPROVEMENTS | RECREATION DEPARTMENT |
| CLAYTON ENVIRONMENTAL | 1002564 | 2519814 | EPA PERMITS & DEREGULATIONS | PUBLIC LIGHTING DEPARTMENT |
| CMTS INC | 18181 | 2501924 | FICS 074776 INSPECTION SERVICES | DEPARTMENT OF PUBLIC WORKS |
| COHL STOKER TOSKEY & MCCLINCHEY PC | 1081162 | 2661933 | | CITY COUNCIL |
| COMMUNITY & EDUCATIONAL SERVICES INC | 1059876 | 2777992 | EMERGENCY SHELTER SERVICES | HUMAN SERVICES DEPARTMENT |
| COMMUNITY DEVELOPMENT SOLUTIONS LLC | 1057282 | 2695015 | | RECREATION DEPARTMENT |
| COMMUNITY DEVELOPMENT SOLUTIONS LLC | 1057282 | 2675021 | | RECREATION DEPARTMENT |
| COMMUNITY HEALTH AWARENESS GROUP INC | 1051231 | 2571474 | | HEALTH DEPARTMENT |
| COMMUTER TRANSPORTATION | 15328 | 2510505 | SHUTTLE SERVICE | CIVIC CENTER DEPARTMENT |
| COMPREHENSIVE DATA PROCESSING | 11248 | 2502241 | PROGRAMMING CODING | INFORMATION TECHNOLOGY SERVICES |
| COMPUTECH CORPORATION | 1054040 | 2574424 | | NON-DEPARTMENTAL |
| COMPUTECH CORPORATION | 1054040 | 2620775 | | NON-DEPARTMENTAL |
| COMPUWARE CORPORATION | 1003122 | 2595111 | | NON-DEPARTMENTAL |
| CONNOLLY RODGERS & SCHARMAN PLLC | 1089154 | 2703083 | | LAW DEPARTMENT |
| CONSULTING ENGINEERING ASSOCIATES INC | 1806 | 2514647 | ELECTRICAL DESIGN-HIGHWAYS PROJECTS | DEPARTMENT OF PUBLIC WORKS |
| CONSULTING ENGINEERING ASSOCIATES INC | 1806 | 2508478 | ENGINEERING | WATER DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| CONSULTING ENGINEERING ASSOCIATES INC | 1806 | 2544911 | FICS CONTRACT # 064150, ELECTRICAL DESIGN | DEPARTMENT OF PUBLIC WORKS |
| CONSULTING ENGINEERING ASSOCIATES INC | 1806 | 2544914 | FICS CONTRACT 065783, ELECTRICAL DESIGN | DEPARTMENT OF PUBLIC WORKS |
| CORPORATE ASSET MANAGEMENT INC | 1022860 | 2607935 | | DEPARTMENT OF TRANSPORTATION |
| COUNCIL OF ACTION UNITED FOR SERVICE EFFORTS | 14189 | 2608202 | | FINANCE DEPARTMENT |
| COUNCIL OF ISLAMIC ORGANIZATIONS | 20305 | 2501825 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| COURRIER & I | - | 2506952 | | LAW DEPARTMENT |
| COUZENS LANSKY FEALK ELLIS ROEDER & LAZAR | 19705 | 2534094 | LEGAL SERVICES | LAW DEPARTMENT |
| COVENANT HOUSE OF MICHIGAN | 1049191 | 2614501 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| COVENANT HOUSE OF MICHIGAN | 1049191 | 2622827 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| COVENANT HOUSE OF MICHIGAN | 1049191 | 2563788 | SUPPORTIVE HOUSING | HUMAN SERVICES DEPARTMENT |
| CREEKSIDE COMMUNITY DEVELOPMENT CORPORATION | 1024525 | 2752940 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| CSFB 1998 P1 WOODWARD OFFICE LLC | 1074168 | 2652205 | | FINANCE DEPARTMENT |
| CUMMINGS MCCLOREY DAVIS | 19999 | 2502111 | LEGAL SERVICES: JANE DOE V P.O. JOURNEY | LAW DEPARTMENT |
| CUMMINGS MCCLOREY DAVIS | 19999 | 2502154 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| CURTIS & ASSOCIATES | 18886 | 2563163 | JOB SEARCH WORK FIRST/WTW 2001 | EMPLOYMENT AND TRAINING DEPARTMENT |
| CVS | 1026222 | 2782910 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| D A CENTRAL INC | 1020403 | 2860051 | SECURITY SURVEILLANCE SYSTEM | NO DEPARTMENT INDICATED |
| D C BYERS COMPANY DETROIT | 15847 | 2502244 | FORD RD RESERVOIR REHAB | WATER DEPARTMENT |
| D P VANBLARICOM INC | 1011787 | 2517238 | ESTATE OF LARRY BELL V CITY | LAW DEPARTMENT |
| DATA COMPRESSION TECHNOLOGY INC. | 1057080 | 2584759 | | FINANCE DEPARTMENT |
| DATA CONSULTING GROUP INC | 18268 | 2507857 | PARKING TICKETS | MUNICIPAL PARKING DEPARTMENT |
| DAVID ANDERSON & CATHY STULL | 16925 | 2500749 | | LAW DEPARTMENT |
| DBAKER SOLUTIONS | 1027729 | 2526961 | CONCESSIONS CONTRACT CONSULTANT | ZOO |
| DECISION CONSULTANTS INC | 14788 | 2502051 | PROGRAMMING CODING | INFORMATION TECHNOLOGY SERVICES |
| DELOITTE & TOUCHE LLP | 17837 | 2592267 | | CITY COUNCIL |
| DEMARIA BUILDING COMPANY | 19428 | 2819183 | SKILLED TRADES REPAIR AND MAINTENANCE | GENERAL SERVICES DEPARTMENT |
| DEMARIA BUILDING COMPANY | 19428 | 2706154 | BELLE ISLE CONSERVATORY RENOVATIONS | RECREATION DEPARTMENT |
| DEMARIA BUILDING COMPANY | 19428 | 2832912 | EQUIPMENT PURCHASE AND INSTALLATION | WATER DEPARTMENT |
| DETROIT AREA AGENCY ON AGING | 10643 | 2803629 | | HUMAN SERVICES DEPARTMENT |
| DETROIT AREA AGENCY ON AGING | 10643 | 2743788 | | HUMAN SERVICES DEPARTMENT |
| DETROIT AREA AGENCY ON AGING | 10643 | 2775457 | | HUMAN SERVICES DEPARTMENT |
| DETROIT AREA HEALTH COUNCIL INC | 1069815 | 2619988 | | RECREATION DEPARTMENT |
| DETROIT ASSOC OF WOMENS CLUBS | 14566 | 2514218 | PUBLIC FACILITY REHAB-FICS #74834 | FINANCE DEPARTMENT |

Page 9

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT ASSOCIATION OF BLACK ORGANIZATIONS | 16148 | 2501915 | PUBLIC SERVICE | NO DEPARTMENT INDICATED |
| DETROIT ASSOCIATION OF BLACK ORGANIZATIONS | 16148 | 2502124 | | NO DEPARTMENT INDICATED |
| DETROIT ASSOCIATION OF BLACK ORGANIZATIONS | 16148 | 2807055 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT ASSOCIATION OF BLACK ORGANIZATIONS | 16148 | 2761547 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT ASSOCIATION OF BLACK ORGANIZATIONS | 16148 | 2740241 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT BOARD OF EDUCATION | 1569 | 2503530 | JOB SEARCH & PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT BOARD OF EDUCATION | 1569 | 2508003 | EZ-PUBLIC SERVICE | FINANCE DEPARTMENT |
| DETROIT BOARD OF EDUCATION | 1569 | 2516130 | DISABILITY SUPPORT TEAM | HUMAN SERVICES DEPARTMENT |
| DETROIT BOARD OF EDUCATION | 1569 | 2501369 | CAREER PREP PLANNING | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2500796 | WINTER HOLDING & LIGHTING | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2510115 | DPD SECURITY SYSTEM UPGRADE | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2500859 | HUBER BUILDING RESTORE | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2513351 | | INFORMATION TECHNOLOGY SERVICES |
| DETROIT BUILDING AUTHORITY | 9266 | 2593193 | | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2530203 | CENTER & SITE IMPROVE | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2526905 | FIRE DETECTION, ALARM & SUPRESSION | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2501859 | EASTERN MARKET RENOVATIONS | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2545275 | SECURITY SYSTEM UPGRADE | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2503827 | CUSTOMER SERVICE CENTER | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2501051 | FIRESTATION RENOVATION PROGRAM | FIRE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2636298 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2508408 | BUILDING RENOVATIONS | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2500748 | PARKING IMPROVEMENTS | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2540535 | | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2502360 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2630384 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2514346 | INFRASTRUCTURE IMPROVEMENTS | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2516282 | FIRE SUPPRESSION AND DETECTION SYSTEM | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2501977 | ADAMS BUTZEL CENTER | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2506561 | COLEMAN A. YOUNG & ROBERTO CLEMENTE CENTERS IMPROVEMENTS | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2560470 | 2001-02 CAPITAL IMPROVEMENT PROGRAM | CIVIC CENTER DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT BUILDING AUTHORITY | 9266 | 2500743 | BIRD & TIGER RENOVATION | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2691117 | | FIRE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2506912 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2501579 | MCCABE FIELD HOUSE SITE IMPROVEMENTS | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2501961 | MADISON CTR IMPROVEMENTS | NO DEPARTMENT INDICATED |
| DETROIT BUILDING AUTHORITY | 9266 | 2653472 | | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2505570 | B.I. CANAL FICS CONTRACT # 073005 | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2594879 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2517916 | | HUMAN SERVICES DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2600472 | | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2544837 | PUBLIC IMPROVEMENTS AT WOODWARD | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2654364 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2532375 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2505579 | | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2536241 | COBO CENTERS CAPITAL PROGRAM | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2619410 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2688656 | | FIRE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2505726 | MINATURE RAILROAD RENOVATION | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2531292 | ARCHITECTURAL PROGRAMMING | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2561933 | CAPITAL IMPROVEMENTS | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2517985 | | HISTORICAL |
| DETROIT BUILDING AUTHORITY | 9266 | 2638245 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2500762 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2545352 | | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2706199 | | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2767791 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2630436 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2739330 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2726923 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2719133 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2630388 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2501957 | CAPITAL PROJECTS | HEALTH DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2697790 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2630408 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2626704 | | HISTORICAL |
| DETROIT BUILDING AUTHORITY | 9266 | 2675809 | | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2550346 | GROUND CARE PROJECT | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2675818 | | ZOO |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
| --- | --- | --- | --- | --- |
| DETROIT BUILDING AUTHORITY | 9266 | 2583964 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2627766 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2653471 | | ZOO |
| DETROIT BUILDING AUTHORITY | 9266 | 2710513 | | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2651003 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2697809 | | CIVIC CENTER DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2560660 | DETENTION CENTERS/POLICE HEADQUARTERS | FINANCE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2796726 | | AIRPORT DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2865303 | | DETROIT OFFICE OF HOMELAND SECURITY |
| DETROIT BUILDING AUTHORITY | 9266 | 2749361 | | PUBLIC LIGHTING DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2568320 | | RECREATION DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2510335 | RENOVATION AT PRECINCTS 2, 5, 7, & 11 | POLICE DEPARTMENT |
| DETROIT BUILDING AUTHORITY | 9266 | 2510162 | | POLICE DEPARTMENT |
| DETROIT CATHOLIC PASTORAL | 18185 | 2855625 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT CATHOLIC PASTORAL | 18185 | 2778107 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT CATHOLIC PASTORAL | 18185 | 2554997 | NEW CONTRACT SET-UP | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT CENTRAL CITY COMMUNITY | 17253 | 2501790 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |
| DETROIT DISCOUNT DISTRIBUTORS INC | 1027457 | 2526361 | EMERGENCY FOOD | HUMAN SERVICES DEPARTMENT |
| DETROIT EAST COMMUNITY MENTAL | 1005394 | 2663209 | | DEPARTMENT OF TRANSPORTATION |
| DETROIT EAST COMMUNITY MENTAL | 1005394 | 2719895 | | DEPARTMENT OF TRANSPORTATION |
| DETROIT EAST INC | 13771 | 2520517 | TRANSITIONAL HOUSING | HUMAN SERVICES DEPARTMENT |
| DETROIT ECONOMIC GROWTH CORPORATION | 7662 | 2515604 | PROFESSIONAL ECONOMIC DEVELOPMENT | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT ECONOMIC GROWTH CORPORATION | 7662 | 2784670 | ECONOMIC DEVELOPMENT SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT ECONOMIC GROWTH CORPORATION | 7662 | 2753574 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT ECONOMIC GROWTH CORPORATION | 7662 | 2809284 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT ECONOMIC GROWTH CORPORATION | 7662 | 2725283 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT EDISON COMPANY | 5636 | 2501179 | | NO DEPARTMENT INDICATED |
| DETROIT ELECTRICAL SERVICES LLC | 1059639 | 2676228 | | WATER DEPARTMENT |
| DETROIT ENTREPRENEURSHIP INST | 1036516 | 2562737 | SELF EMPLOYMENT INITIATIVE | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT ENTREPRENEURSHIP INST | 1036516 | 2507446 | P&dD/PS FICS CONTRACT #75285 | FINANCE DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | - | - | GRS SERVICE CONTRACT 2005, DATED MAY 25, 2005, BY AND BETWEEN THE CITY AND THE DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | NO DEPARTMENT INDICATED |
| DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION | - | - | GRS SERVICE CONTRACT 2006, DATED JUNE 7, 2006, BY AND BETWEEN THE CITY AND THE DETROIT GENERAL RETIREMENT SYSTEM SERVICE CORPORATION, AS THEREAFTER AMENDED | NO DEPARTMENT INDICATED |
| DETROIT HISPANIC | 20401 | 2564466 | JOB SEARCH AND PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT HOUSING COMMISSION | 1033965 | 2801908 | FUNDING AGREEMENT | DEPARTMENT OF PUBLIC WORKS |
| DETROIT HOUSING COMMISSION | 1033965 | 2833063 | FUNDING AGREEMENT | DEPARTMENT OF PUBLIC WORKS |
| DETROIT HOUSING COMMISSION | 1033965 | 2669571 | | HOUSING DEPARTMENT |
| DETROIT LIGHT HOUSE PROGRAM | 1001492 | 2501736 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| DETROIT LIGHT HOUSE PROGRAM | 1001492 | 2515558 | SUBSTANCE ABUSE FYE 9/99 | HEALTH DEPARTMENT |
| DETROIT MEDICAL CENTER | 20097 | 2501916 | MEDICAL SERVICES | NO DEPARTMENT INDICATED |
| DETROIT METRO CONVENTION | 1027508 | 2615728 | | CIVIC CENTER DEPARTMENT |
| DETROIT NEIGHBORHOOD & FAMILY INITIATIVE | 1018914 | 2520602 | EMPOWERMENT ZONE - PUBLIC SERVICE | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT NEIGHBORHOOD DEVELOPMENT CORP | 1035571 | 2539512 | NEIGHBORHOOD REVITALIZATION | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT NONPROFIT HOUSING CORPORATION | 10641 | 2514457 | NOP PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | - | - | PFRS SERVICE CONTRACT 2005, DATED MAY 25, 2005, BY AND BETWEEN THE CITY AND THE DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | NO DEPARTMENT INDICATED |
| DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION | - | - | PFRS SERVICE CONTRACT 2006, DATED JUNE 7, 2006, BY AND BETWEEN THE CITY AND THE DETROIT POLICE AND FIRE RETIREMENT SYSTEM SERVICE CORPORATION, AS THEREAFTER AMENDED | NO DEPARTMENT INDICATED |
| DETROIT PUBLIC SCHOOLS | 1835 | 2587295 | | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2557062 | 2001-2002 HEAD START CONTRACT | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2532505 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2617076 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2657665 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2663934 | | WORKFORCE DEVELOPMENT DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT PUBLIC SCHOOLS | 1835 | 2571396 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2512549 | HEAD START SERVICES | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2771471 | | HUMAN SERVICES DEPARTMENT |
| DETROIT PUBLIC SCHOOLS | 1835 | 2767770 | | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2502297 | PERMANENT SHELTER & SUPPORT | HEALTH DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2560689 | SUPPORTIVE SERVICES | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2619840 | | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2548291 | TRANSITIONAL HOUSING (FICS #076950) | FINANCE DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2501406 | SHELTER FOR THE HOMELESS (FICS #079045) | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2559511 | CASE MANAGEMENT AND COUNSELING | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2588816 | | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2751508 | | HUMAN SERVICES DEPARTMENT |
| DETROIT RESCUE MISSION MINISTRIES | 14618 | 2774007 | | HUMAN SERVICES DEPARTMENT |
| DETROIT SNAP INC | 19532 | 2501606 | PUBLIC SERVICE | NO DEPARTMENT INDICATED |
| DETROIT SPECTRUM PAINTERS INC | 11290 | 2785384 | EASTERN MARKET RENOVATIONS | RECREATION DEPARTMENT |
| DETROIT TIGERS BASEBALL CLUB | 1036628 | 2575026 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DETROIT TRANSPORTATION CORP DN2 | 14896 | 2624573 | | DEPARTMENT OF TRANSPORTATION |
| DETROIT URBAN LEAGUE | 1587 | 2518492 | DHS EMERGENCY NEED SERVICES PROGRAM | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2504264 | CAREER DEVELOPMENT TRAINING | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2620591 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2575580 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2563476 | WAGES AND MILEAGE WEATHERIZATION WORKERS | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2515009 | WEATHERIZATION SPECIALIST | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2512778 | WEATHERIZAITON INSPECTORS | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2672024 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2608694 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2557533 | JOB READINESS TRAINING | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2557619 | EMERGENCY NEEDS PROGRAM | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2533037 | CAREER DEVELOPMENT PROGRAM | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2620874 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2535487 | EMERGENCY NEEDS PROGRAM. | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2518497 | PROVIDE COMPUTER SKILS TRAINING | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2588385 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2804820 | | HUMAN SERVICES DEPARTMENT |
| DETROIT URBAN LEAGUE | 1587 | 2775162 | | HUMAN SERVICES DEPARTMENT |
| DETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2693328 | | BUDGET DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2825805 | | BUDGET DEPARTMENT |
| DETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2738647 | | BUDGET DEPARTMENT |
| DETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2770051 | | BUDGET DEPARTMENT |
| DETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2714701 | | BUDGET DEPARTMENT |
| DDETROIT WAYNE JOINT BUILDING AUTHORITY | 19336 | 2800319 | | BUDGET DEPARTMENT |
| DETROIT WAYNE PORT AUTHORITY | 10780 | 2501783 | | NON-DEPARTMENTAL |
| DETROIT WORKFORCE NETWORK INC | 1071709 | 2623415 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2563727 | JOB SEARCH AND PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2597991 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2627616 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2658738 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2778452 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2725743 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DEVELOPMENT CENTER INC | 16686 | 2806231 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DFT SECURITY TEAM JV | 1081574 | 2658119 | | WATER DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2504635 | NEAL/WHITFIELD V ARCHER/JAMES | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2501914 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2502116 | LEGAL SERVICES: JOAN GHOGIAN V CITY | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2500792 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2501982 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2502108 | NORDE JAMES V CHIEF ISIAH MCKINNON | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2504874 | LEGAL SERVICES: CHILDS V CITY | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2502115 | LEGAL SERVICES: TAMARA HARMON V CITY | LAW DEPARTMENT |
| DICKINSON WRIGHT MOON VANDUSEN PLLC | 7769 | 2502105 | NAOMI CONAWAY V CITY OF DETROIT | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| DICKINSON WRIGHT PLLC | 1023465 | 2522227 | ANALYSIS OF PA 374; ARCHER V STATE | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2553236 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2534973 | TIGER STADIUM MGMT AGREEMENT | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2546606 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2543718 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2803153 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2765485 | LEGAL SERVICES | LAW DEPARTMENT |
| DICKINSON WRIGHT PLLC | 1023465 | 2781254 | LEGAL SERVICES | LAW DEPARTMENT |
| DIVERSIFIED EDUCATIONAL SERVICE INC | 18910 | 2561519 | WORK FIRST/WELFARE TO WORK | EMPLOYMENT AND TRAINING DEPARTMENT |
| DIVERSIFIED EDUCATIONAL SERVICE INC | 18910 | 2734876 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DOGWOOD BROOKSIDE NEIGHBORHOODS | 1103646 | 2781555 | SIDEWALKS, CURBS, AND APPROACHES | PLANNING AND DEVELOPMENT DEPARTMENT |
| DOMBROWSKI, ROBERT | 20565 | 2501542 | UNIFORM RELOCATION ASSTISTANCE | LAW DEPARTMENT |
| DON BOSCO HALL | 20026 | 2501185 | | NO DEPARTMENT INDICATED |
| DON BOSCO HALL | 20026 | 2595057 | | RECREATION DEPARTMENT |
| DON BOSCO HALL | 20026 | 2622063 | | RECREATION DEPARTMENT |
| DON BOSCO HALL | 20026 | 2778547 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DON BOSCO HALL | 20026 | 2801085 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DOPAR SUPPORT SYSTEMS INC | 21284 | 2713282 | | INFORMATION TECHNOLOGY SERVICES |
| DOWNTOWN DEVELOPMENT AUTHORITY | 17716 | 2770230 | LOWER WOODWARD IMPROVEMENT | DEPARTMENT OF PUBLIC WORKS |
| DOWNTOWN DEVELOPMENT AUTHORITY | 17716 | 2563708 | EQUIPMENT INSTALLLATION | PUBLIC LIGHTING DEPARTMENT |
| DTWR LLC C/O FARBMAN GROUP | 1066425 | 2604131 | | FINANCE DEPARTMENT |
| DTWR LLC C/O FARBMAN GROUP | 1066425 | 2770218 | | BUDGET DEPARTMENT |
| DTWR LLC C/O FARBMAN GROUP | 1066425 | 2738724 | | BUDGET DEPARTMENT |
| DUREN & ASSOCIATES | 20479 | 2658590 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2517349 | WASHINGTON, D.C. LEGISLATIVE SERVICES | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2518125 | U.S. DEPT OF JUSTICE DOT INVESTIGATION | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2537039 | ANDRE YOUNG A/K/A DR. DRE V CITY | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2537005 | WASHINGTON D.C. LIAISON | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2501222 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2561984 | LEGAL SERVICES | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2501872 | LEGAL SERVICES | LAW DEPARTMENT |
| DYKEMA GOSSETT PLLC | 22091 | 2550459 | EUGENE BROWN V CITY | LAW DEPARTMENT |
| DYNALECTRIC | 1103998 | 2765307 | CLOSED CIRCUIT TELEVISION FOR DOT | DEPARTMENT OF TRANSPORTATION |
| E L S CONSTRUCTION | 1098327 | 2785558 | EASTERN MARKET SHED NO. 3 RENOVATIONS | RECREATION DEPARTMENT |
| EARTH TECH INC | 20544 | 2500983 | BELT FILTER PRESSES | SEWERAGE DEPARTMENT |
| EARTH TECH INC | 20544 | 2502192 | CASINO SITE APPRAISALS | LAW DEPARTMENT |
| EARTH TECH INC | 20544 | 2510034 | ENVIRONMENTAL REAL ESTATE-FICS #71021 | FINANCE DEPARTMENT |
| EASTERN OIL CO. | - | 2809177 | LUBRICANT OIL | GENERAL SERVICES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| EASTSIDE COMMUNITY RESOURCE | 1018050 | 2538974 | JOB ACCESS REVERSE COMMUTE | EMPLOYMENT AND TRAINING DEPARTMENT |
| EASTSIDE EMERGENCY CTR | 16519 | 2502205 | TRANSITIONAL HOUSING | HUMAN SERVICES DEPARTMENT |
| EASTSIDE EMERGENCY CTR | 16519 | 2532107 | TRANSITIONAL HOUSING | HUMAN SERVICES DEPARTMENT |
| EASTSIDE EMERGENCY CTR | 16519 | 2543569 | EMERGENCY SHELTER | HUMAN SERVICES DEPARTMENT |
| EASTWOOD CLINICS CORP OFFICE | 1000451 | 2501528 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| EASTWOOD CLINICS CORP OFFICE | 1000451 | 2501826 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| EBI DETROIT | 1000452 | 2517413 | WW-529 SCREEN HOUSE REHABILITATION | WATER DEPARTMENT |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2515748 | PROFESSIONAL ECONOMIC DEVELOPMENT | PLANNING AND DEVELOPMENT DEPARTMENT |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2764614 | FOX CREEK INFRASTRUCTURE PROJECT | DEPARTMENT OF PUBLIC WORKS |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2818723 | EAST RIVERFRONT IMPROVEMENT PROJECT | DEPARTMENT OF PUBLIC WORKS |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2641018 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2784665 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2753580 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| ECONOMIC DEVELOPMENT CORPORATION | 1000454 | 2809038 | ECONOMIC DEVELOPMENT SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| EDUCATIONAL DATA SYSTEMS INC | 20423 | 2724428 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| EDUCATIONAL DATA SYSTEMS INC | 1055746 | 2806233 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| EDUCATIONAL DATA SYSTEMS INC | 1055746 | 2778455 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| EDWARD C GEORGE | 9826 | 2502379 | | HUMAN SERVICES DEPARTMENT |
| EDWARD C LEVY CO DBA PLANT MAINTENANCE | 1020737 | 2502151 | BITUMINOUS SURFACE REMOVAL | DEPARTMENT OF PUBLIC WORKS |
| EJH CONSTRUCTION | 1020562 | 2808924 | | HUMAN SERVICES DEPARTMENT |
| ELEVATOR TECHNOLOGY | 1000471 | 2500082 | ELEVATOR MAINTENANCE SERVICE | GENERAL SERVICES DEPARTMENT |
| ELMHURST HOME INC | 10998 | 2501829 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| ELMHURST HOME INC | 10998 | 2501729 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| EMERSON PROCESS MANAGEMENT POWER | 1016248 | 2847526 | GAS TURBINE UPGRADE AND REPAIR | PUBLIC LIGHTING DEPARTMENT |
| EMPCO INC | 1118906 | 2878252 | | MAYOR'S OFFICE |
| EMPOWERMENT ZONE DEVELOPMENT CORP | 19637 | 2513278 | ADMINISTRATIVE ACTIVITY | PLANNING AND DEVELOPMENT DEPARTMENT |
| EMPOWERMENT ZONE DEVELOPMENT CORP | 19637 | 2529275 | EMPOWERMENT ZONE - PUBLIC SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| EMPRESA | 1099489 | 2776404 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| ENERGY GROUP INC | 1017472 | 2509158 | FICS CONTRACT 076115 - TREE TRIMMING | PUBLIC LIGHTING DEPARTMENT |
| ENGINE SUPPLY OF NOVI | 1994 | 2505264 | PARTS COMPLETE ENGINES (M80372) | FINANCE DEPARTMENT |
| ENOTA INC | 1092130 | 2717072 | | POLICE DEPARTMENT |
| ENTECH PERSONNEL SERVICES INC | 1000768 | 2544596 | CLERICAL ASSISTANCE | CITY CLERK |
| ENVIRONMENTAL CONSULTING & TECHNOLOGY | 1106148 | 2551431 | ENVIRONMENTAL SVCS/GREATER RIVERFRONT | PLANNING AND DEVELOPMENT DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| ENVIRONMENTAL TESTING & CONSULTING INC | 1003675 | 2502196 | ABATEMENT OF ASBESTOS | DEPARTMENT OF PUBLIC WORKS |
| EPITEC GROUP INC | 1045979 | 2556386 | PROFESSIONAL SERVICES CONTRACT | INFORMATION TECHNOLOGY SERVICES |
| EPITEC GROUP INC | 1045979 | 2573836 | | NON-DEPARTMENTAL |
| EPITEC GROUP INC | 1045979 | 2620773 | | NON-DEPARTMENTAL |
| ESTHER LYNISE BRYANT | 1019604 | 2508103 | IUOE/GIBSON V CITY | LAW DEPARTMENT |
| EVANS GROUP | 1019232 | 2515534 | JOSEPHINE MILLS V CITY | LAW DEPARTMENT |
| EVEREST SOLUTIONS LLC | 1000830 | 2503912 | CONVERSION OF YEAR 2000 | FINANCE DEPARTMENT |
| EVO ACCOUNTING & FINANCIAL SERVICES | 1070752 | 2761823 | | FINANCE DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2541124 | CASE MANAGMENT/COUNSELING SERVICES | HUMAN SERVICES DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2508864 | P&DD PUBLIC SERVICE | FINANCE DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2559513 | ASE MANAGEMENT AND COUNSELING | HUMAN SERVICES DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2597464 | | FINANCE DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2620491 | | HUMAN SERVICES DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2588790 | | HUMAN SERVICES DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2773997 | | HUMAN SERVICES DEPARTMENT |
| FAMILY SERVICE INC | 4010 | 2751502 | | HUMAN SERVICES DEPARTMENT |
| FARBMAN DEVELOPMENT GROUP INC | 1052543 | 2574590 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| FELIX J LIDDELL MD | 9742 | 2619048 | | HUMAN SERVICES DEPARTMENT |
| FELIX J LIDDELL MD | 9742 | 2771950 | | HUMAN SERVICES DEPARTMENT |
| FEMI TALABI & ASSOCIATES IINC | 1025786 | 2693989 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| FERGUSON ENTERPRISES INC | 1002829 | 2762820 | WATER SYSTEM IMPROVEMENTS | WATER DEPARTMENT |
| FERGUSON ENTERPRISES INC | 1002829 | 2708886 | | RECREATION DEPARTMENT |
| FIRST AMERICAN EQUITY LOAN SERVICES INC | 1053418 | 2572513 | | LAW DEPARTMENT |
| FIRST TEE OF DETROIT | 1106838 | 2509532 | JUNIOR GOLF PROGRAM | RECREATION DEPARTMENT |
| FLORISE E NEVILLE EWELL | 18953 | 2511634 | LAW DEPARTMENT CONTRACTS SECTION | FINANCE DEPARTMENT |
| FOCUS HOPE | 20156 | 2595470 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| FOCUS HOPE | 20156 | 2517834 | MACHINIST TRAINING | EMPLOYMENT AND TRAINING DEPARTMENT |
| FOCUS HOPE | 20156 | 2782889 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| FOLIA INDUSTRIES INC | 1078969 | 2647895 | | RECREATION DEPARTMENT |
| FORBES MANAGEMENT INC | 13713 | 2500738 | 8TH FL 2111 WOODWARD | NO DEPARTMENT INDICATED |
| FORBES MANAGEMENT INC | 13713 | 2500736 | | NO DEPARTMENT INDICATED |
| FORENSIC EXAMINATION SERVICE | 19765 | 2511601 | ESTATE OF CARA BELL JONES | LAW DEPARTMENT |
| FORT WAYNE CONSTRUCTION INC | 1002341 | 2508445 | EMER. REPAIR OF STORM DAMAGED SIDEWALKS | DEPARTMENT OF PUBLIC WORKS |
| FOUNDATION FOR BEHAVIORAL RESOURCES | 1001251 | 2562165 | WORK FIRST & WTW | EMPLOYMENT AND TRAINING DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| FOUNDATION FOR BEHAVIORAL RESOURCES | 1001251 | 2629097 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| FOUNDATION FOR BEHAVIORAL RESOURCES | 1001251 | 2778457 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| FRANCES GREENEBAUM | 15339 | 2500958 | | HUMAN SERVICES DEPARTMENT |
| FRANCES GREENEBAUM | 15339 | 2500968 | | HUMAN SERVICES DEPARTMENT |
| FRANCES S GREENEBAUM | 1001353 | 2663660 | | HUMAN SERVICES DEPARTMENT |
| FRANKLIN WRIGHT SETTLEMENTS INC | 1001261 | 2557088 | 2001-2002 EARLY HEAD START CONTRACT | HUMAN SERVICES DEPARTMENT |
| FRANKLIN WRIGHT SETTLEMENTS INC | 1001261 | 2532391 | EARLY HEAD START 2000-2001 | FINANCE DEPARTMENT |
| FRANKLIN WRIGHT SETTLEMENTS INC | 1001261 | 2512564 | HEAD START SERVICES | HUMAN SERVICES DEPARTMENT |
| FRANKLIN WRIGHT SETTLEMENTS INC | 1001261 | 2501500 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |
| FREEDOM HOUSE | 19860 | 2551708 | EMERGENCY SHELTER | HUMAN SERVICES DEPARTMENT |
| G4S SECURE SOLUTIONS USA, INC. | 1116038 | 2741015 | SECURITY SERVICES | GENERAL SERVICES DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2525486 | ELIZABETH HURD, ET AL V CITY OF DETROIT | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2540460 | LEGAL SERVICES | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2505197 | JOHNSON V JECZEN, ET AL | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2502158 | LEGAL SERVICES:  TROMEUR V ADKINS | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2505077 | LEGAL SERVICES | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2574321 | | LAW DEPARTMENT |
| GARAN LUCOW MILLER PC | 1007550 | 2505187 | LEGAL SERVICES:  BERNICE MARTIN V CITY | FINANCE DEPARTMENT |
| GENESIS ENERGY SOLUTIONS LLC | 1059170 | 2623273 | | PUBLIC LIGHTING DEPARTMENT |
| GENESIS ENERGY SOLUTIONS LLC | 1059170 | 2630629 | | PUBLIC LIGHTING DEPARTMENT |
| GENESIS ENERGY SOLUTIONS LLC | 1059170 | 2623274 | | PUBLIC LIGHTING DEPARTMENT |
| GENESIS ENERGY SOLUTIONS LLC | 1059170 | 2625340 | | PUBLIC LIGHTING DEPARTMENT |
| GEORGE E SANSOUCY P E LLC | 1034071 | 2537262 | PROFESSIONAL SERVICES:  APPRAISALS | LAW DEPARTMENT |
| GEORGE JOHNSON & COMPANY | 1826 | 2754359 | | HUMAN SERVICES DEPARTMENT |
| GERALD K EVELYN | 1102554 | 2765473 | LEGAL SERVICES | LAW DEPARTMENT |
| GERALD K EVELYN | 1102554 | 2765475 | LEGAL SERVICES | LAW DEPARTMENT |
| GHAFARI ASSOCIATES LLC | 16840 | 2500978 | ADAMS ROAD IMPROVEMENTS | NO DEPARTMENT INDICATED |
| GHAFARI ASSOCIATES LLC | 16840 | 2520892 | ELECTRICAL SERVICES AT 2633 MICHIGAN AVE. | DEPARTMENT OF PUBLIC WORKS |
| GIORGI CONCRETE LLC | 1010405 | 2764704 | REPAIR OF WATER SYSTEM | WATER DEPARTMENT |
| GIRL SCOUTS OF METRO DETROIT | 7539 | 2588820 | | HUMAN SERVICES DEPARTMENT |
| GIRL SCOUTS OF METRO DETROIT | 7539 | 2775160 | | HUMAN SERVICES DEPARTMENT |
| GIS DATA RESOURCES INC | 1087473 | 2696020 | | POLICE DEPARTMENT |
| GLEANERS COMMUNITY FOOD BANK 1 | 16611 | 2775453 | | HUMAN SERVICES DEPARTMENT |
| GLEANERS COMMUNITY FOOD BANK 1 | 16611 | 2803612 | | HUMAN SERVICES DEPARTMENT |
| GLEANERS COMMUNITY FOOD BANK 1 | 16611 | 2778130 | | HUMAN SERVICES DEPARTMENT |

Page 19

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| GLEANERS COMMUNITY FOOD BANK 1 | 16611 | 2746566 | | HUMAN SERVICES DEPARTMENT |
| GLEN OLIVACHE CPA PC | 1001562 | 2507371 | | FINANCE DEPARTMENT |
| GLOBEWIDE FAVOR CONSTRUCTION CO LLC | 1085092 | 2808926 | | HUMAN SERVICES DEPARTMENT |
| GLOBEWIDE FAVOR CONSTRUCTION CO LLC | 1085092 | 2793406 | | HUMAN SERVICES DEPARTMENT |
| GODFREY J DILLARD ESQ | 1103303 | 2779417 | SPECIAL COUNSEL | LAW DEPARTMENT |
| GOODMAN & HURWITZ PC | 1101745 | 2760433 | | CITY COUNCIL |
| GOODMAN MUSCAT INC | 1015305 | 2509737 | ORGANIZATIONAL ASSESSMENT | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2563438 | WORKFIRST/WTW JS/JR | EMPLOYMENT AND TRAINING DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2559919 | FOOD STAMPS | EMPLOYMENT AND TRAINING DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2539285 | WORKFIRST JS/JP 10/01/00-9/30/01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2628317 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2797757 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2736042 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2782892 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2761556 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2740308 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2770617 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GOODWILL INDUSTRIES OF GREATER DETROIT | 14999 | 2770613 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| GRAY & GRAY PRODUCTIONS | 18090 | 2594537 | | RECREATION DEPARTMENT |
| GREAT LAKES CENTER FOR INDEPENDENT LIVING | 19673 | 2501926 | PUBLIC SERVICE | PLANNING AND DEVELOPMENT DEPARTMENT |
| GREATER DETROIT COMMUNITY OUTREACH CENTER INC | 19466 | 2501509 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |
| GREEN GREEN ADAMS PALMER & CRAIG PC | 1014038 | 2508762 | LEGAL SERVICES | CITY COUNCIL |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| GREGORY TERRELL & COMPANY | 14501 | 2506562 | AUDIT | HUMAN SERVICES DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2527604 | LEGAL SERVICES | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2546243 | SANDRA MILLER V EUGENE BROWN, ET AL | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2502429 | CHISHOLM, ET AL V CITY | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2550395 | LEGAL SERVICES | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2548219 | LEGAL SERVICES | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2632136 | | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2545753 | BRANDON BRYANT V EUGENE BROWN/CITY | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2502093 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| GRIER & COPELAND PC | 11779 | 2502430 | LEGAL SERVICES: MCHUGH, ET AL V CITY | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2505089 | LEGAL SERVICES | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2597158 | | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2576025 | | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2708898 | | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2634211 | | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2649862 | CONTRACT FOR LEGAL SERVICES | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2688106 | DAREL DEON CHANCELLOR V CITY | LAW DEPARTMENT |
| GRIER & COPELAND PC | 11779 | 2551543 | WILLIE BRYANT V EUGENE BROWN | LAW DEPARTMENT |
| GS EQUITIES LLC | 1088912 | 2700328 | | LAW DEPARTMENT |
| HALCROW INC | 1102933 | 2769474 | | MAYOR'S OFFICE |
| HALE CONTRACTING INC | 1025577 | 2757453 | VENTILATION SYSTEM | RECREATION DEPARTMENT |
| HALEY & ALDRICH INC | 1098676 | 2740779 | | WATER DEPARTMENT |
| HAMILTON ANDERSON ASSOCIATES | 18698 | 2507157 | BELLE ISLE MASTER PLAN | RECREATION DEPARTMENT |
| HAMILTON ANDERSON ASSOCIATES | 18698 | 2530873 | FARWELL FIELD ARCHITECTURAL SERVICES | RECREATION DEPARTMENT |
| HAMILTON ANDERSON ASSOCIATES | 18698 | 2508644 | BELLE ISLE'S LOITER WAY REFECTORY | RECREATION DEPARTMENT |
| HAMILTON ANDERSON ASSOCIATES | 18698 | 2563405 | BELLE ISLE'S MASTER PLAN | RECREATION DEPARTMENT |
| HAMPTON RIDGE PROPERTIES LLC | 1019230 | 2515341 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| HARBIN GROUP INC | 16607 | 2507665 | CASINO SITE APPRAISAL | FINANCE DEPARTMENT |
| HARPER HOUSE | 1003691 | 2501737 | | HEALTH DEPARTMENT |
| HARTFORD MEMORIAL BAPTIST CHURCH | 14442 | 2502480 | SENIOR CITIZENS MEALS | HEALTH DEPARTMENT |
| HAYES LAND DEVELOPMENT CORPORATION | 1106003 | 2613519 | | WATER DEPARTMENT |
| HEALTH MANAGEMENT SYSTEMS | 5654 | 2542966 | EMPLOYEE ASSISTANCE PROGRAM | HUMAN RESOURCES DEPARTMENT |
| HEALTH MANAGEMENT SYSTEMS | 1043088 | 2613135 | | HUMAN RESOURCES DEPARTMENT |
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2504678 | TARGET CITIES FYE 9/30/99 | FINANCE DEPARTMENT |
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2501833 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2568871 | | HEALTH DEPARTMENT |
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2570277 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2504742 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| HEALTH SERVICES TECHNICAL ASSISTANCE | 9042 | 2512068 | SUBSTANCE ABUSE ASSESSMENT | HEALTH DEPARTMENT |
| HEAT & WARMTH FUND | 18570 | 2717114 | | WATER DEPARTMENT |
| HEIGHTS HEATING & COOLING INC | 1032472 | 2741890 | AIR CONDITIONING INSTALLATION | RECREATION DEPARTMENT |
| HENRY FORD HEALTH SYSTEM | 1012926 | 2505277 | MEDICAL SERVICES | HEALTH DEPARTMENT |
| HENRY FORD HEALTH SYSTEM | 1012926 | 2605168 | | HEALTH DEPARTMENT |
| HENRY FORD HEALTH SYSTEM | 1012926 | 2574218 | | HEALTH DEPARTMENT |
| HENRY FORD HEALTH SYSTEM | 1012926 | 2621296 | | HEALTH DEPARTMENT |
| HENRY FORD HEALTH SYSTEM | 1012926 | 2752105 | | HEALTH DEPARTMENT |
| HERBERT REALTY & MANAGEMENT | 1018769 | 2559115 | | FINANCE DEPARTMENT |
| HERITAGE OPTICAL CENTER INC | 16451 | 2515148 | OPTOMETRIC SERVICES | HEALTH DEPARTMENT |
| HERITAGE OPTICAL CENTER INC | 16451 | 2530208 | | HEALTH DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2604598 | | FINANCE DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2761160 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2775593 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2757513 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2783105 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2761157 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2706006 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2804847 | | HUMAN SERVICES DEPARTMENT |
| HINES FINANCIAL SERVICES | 1059682 | 2744129 | | HUMAN SERVICES DEPARTMENT |
| HNTB MICHIGAN INC | 1025696 | 2589459 | | DEPARTMENT OF PUBLIC WORKS |
| HNTB MICHIGAN INC | 1025696 | 2800235 | PROFESSIONAL SERVICES | AIRPORT DEPARTMENT |
| HOUSING & COMMUNITY DEVELOPMENT CORP OF WAYNE COUNTY | 1021017 | 2518243 | HOUSING REHABILITATION SERVICES | FINANCE DEPARTMENT |
| HOWARD & HOWARD ATTORNEYS PC | 1013410 | 2773508 | LEGAL SERVICES | LAW DEPARTMENT |
| HTC GLOBAL SERVICES INC | 1003630 | 2501175 | | INFORMATION TECHNOLOGY SERVICES |
| HUBBARD RICHARD COMMON COUNCIL | 9225 | 2501533 | | NO DEPARTMENT INDICATED |
| HUFFMASTER ASSOCIATES LLC | 1010540 | 2506275 | INVESTIGATIVE SERVICES | FINANCE DEPARTMENT |
| HUNGER ACTION COALITION OF MICHIGAN | 16897 | 2510332 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| HUNT ASSOCIATES 1 INC | 19746 | 2537045 | WIA OUT OF SCHOOL YOUTH | EMPLOYMENT AND TRAINING DEPARTMENT |
| HUNT ASSOCIATES 1 INC | 19746 | 2628062 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| HUTZEL HOSPITAL | 15175 | 2501837 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| HUTZEL HOSPITAL | 15175 | 2508866 | | HEALTH DEPARTMENT |
| IBM CORPORATION | 2865 | 2505095 | | INFORMATION TECHNOLOGY SERVICES |
| ICDS | 1003163 | 2501182 | | PUBLIC LIGHTING DEPARTMENT |
| IMAGE SCAN INC | 18157 | 2512900 | DATA ENTRY SOFTWARE | INFORMATION TECHNOLOGY SERVICES |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| IMPERIAL CONSTRUCTION CO | 12464 | 2746886 | | WATER DEPARTMENT |
| IMPERIAL CONSTRUCTION CO | 12464 | 2685161 | | WATER DEPARTMENT |
| IMPERIAL CONSTRUCTION CO | 12464 | 2679721 | | WATER DEPARTMENT |
| IN LAND WATERS POLLUTION | 14434 | 2502291 | REMOVAL OF STORAGE TANKS | DEPARTMENT OF PUBLIC WORKS |
| IN LAND WATERS POLLUTION | 14434 | 2502290 | UST UPGRADES | DEPARTMENT OF PUBLIC WORKS |
| INDUSTRIAL RELATIONS INC | 1027976 | 2527324 | PERFORMANCE MANAGEMENT SYSTEM | FINANCE DEPARTMENT |
| INDUSTRIAL RELATIONS INC | 1027976 | 2513432 | EMPLOYEE DEVELOPMENT PROGRAM | HUMAN RESOURCES DEPARTMENT |
| INFRASTRUCTURE MANAGEMENT GROUP INC | 1061121 | 2634315 | | PUBLIC LIGHTING DEPARTMENT |
| INLAND WATERS POLLUTION CONTROL INC | 1055642 | 2556880 | UNDERGROUND STORAGE TANKS | DEPARTMENT OF PUBLIC WORKS |
| INTERCLEAN EQUIPMENT INC | 1011180 | 2504773 | INSTALLATION OF TRUCK WASH SYSTEMS | DEPARTMENT OF PUBLIC WORKS |
| INTERGRAPH CORPORATION | 6153 | 2516412 | 953625- COMPUTER RELATED PRODUCTS | INFORMATION TECHNOLOGY SERVICES |
| INTERNATIONAL INSTITUTE OF METROPOLITAN DETROIT INC | 9144 | 2521334 | | FINANCE DEPARTMENT |
| ISLANDVIEW VILLAGE DEVELOPMENT CORP | 20425 | 2509212 | SITE PREP/STREET IMPROVEMENT | FINANCE DEPARTMENT |
| ITW MORTAGE INVESTMENTS III INC | 1561 | 2501775 | | FINANCE DEPARTMENT |
| J & J YOUTH SERVICES | 1012849 | 2506553 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| J J ASSOCIATES | 17711 | 2589033 | | INFORMATION TECHNOLOGY SERVICES |
| J J ASSOCIATES | 17711 | 2502052 | PROGRAMMING CODING | INFORMATION TECHNOLOGY SERVICES |
| J J ASSOCIATES | 17711 | 2560948 | 2002 PROFESSIONAL SERVICES CONTRACT | INFORMATION TECHNOLOGY SERVICES |
| J O A CONSTRUCTION CO INC | 1001666 | 2642903 | | RECREATION DEPARTMENT |
| JACKETS FOR JOBS INC | 1064297 | 2778459 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| JACKETS FOR JOBS INC | 1064297 | 2754535 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| JACKSON & KELLY PLLC | 1016929 | 2511861 | LEGAL SERVICES | LAW DEPARTMENT |
| JAMES C COBB JR PC | 10571 | 2504319 | LEGAL SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| JAMES C COBB JR PC | 10571 | 2501780 | LEGAL SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2544158 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2513136 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2559396 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2508122 | DRUG TREATMENT PROGRAM PHYSICIAN | FINANCE DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2591486 | | HUMAN SERVICES DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2746434 | | HUMAN SERVICES DEPARTMENT |
| JAMES HANEY MD | 1012073 | 2771944 | | HUMAN SERVICES DEPARTMENT |
| JAMES W BURDICK PC | 1101618 | 2760028 | | LAW DEPARTMENT |
| JEFFERSON WELLS INTERNATIONAL INC | 1032623 | 2546414 | PROFESSIONAL SERVICES | AUDITOR GENERAL |
| JEFFERSON WELLS INTERNATIONAL INC | 1032623 | 2534548 | INTERNAL AUDIT PARTNER | AUDITOR GENERAL |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| JENKINS CONSTRUCTION INC | 17037 | 2541121 | WS-621 WATER MAIN REPAIRS | WATER DEPARTMENT |
| JENKINS CONSTRUCTION INC | 17037 | 2501854 | CONSTRUCTION | DEPARTMENT OF PUBLIC WORKS |
| JENKINS CONSTRUCTION INC | 17037 | 2691365 |  | WATER DEPARTMENT |
| JESSE TOLBERT MD | 1012082 | 2559428 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JESSE TOLBERT MD | 1012082 | 2544148 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JESSE TOLBERT MD | 1012082 | 2508116 | DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| JESSE TOLBERT MD | 1012082 | 2513142 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JESSE TOLBERT MD | 1012082 | 2591460 |  | HUMAN SERVICES DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 1015533 | 2797759 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 1015533 | 2726449 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 1015533 | 2777965 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 1015533 | 2778659 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 11835 | 2552853 | CASE MANAGEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 11835 | 2513901 | NO WRONG DOOR | EMPLOYMENT AND TRAINING DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 11835 | 2550062 | PAL BASIC LITERACY | EMPLOYMENT AND TRAINING DEPARTMENT |
| JEWISH VOCATIONAL SERVICE | 11835 | 2538061 | WORK FIRST JOB SEARCH & PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| JOHN KING | 1070289 | 2799418 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JOHN KING | 1070289 | 2781812 |  |  |
| JOHN PETER QUINN | 1088277 | 2751148 |  | LAW DEPARTMENT |
| JOHN W HEAD JR DR | 1016367 | 2544130 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| JOHN W HEAD JR DR | 1016367 | 2559403 | MEDICAL DIRECTOR | HUMAN SERVICES DEPARTMENT |
| JOHN W HEAD JR DR | 1016367 | 2771947 |  | HUMAN SERVICES DEPARTMENT |
| JOHNSON ROSATI LABARGE | 1012630 | 2577160 |  | LAW DEPARTMENT |
| JOHNSON ROSATI LABARGE | 1012630 | 2600509 |  | LAW DEPARTMENT |
| JOHNSON ROSATI LABARGE | 1012630 | 2508107 | LEGAL SERVICES | FINANCE DEPARTMENT |
| JORDAN CLINICS LIMITED PARTNERSHIP | 1098511 | 2770685 |  | HEALTH DEPARTMENT |
| JOWA ASSOCIATES | 7422 | 2501000 | UNIFORMED GUARD SERVICE | AIRPORT DEPARTMENT |
| JOWA ASSOCIATES | 7422 | 2513434 | GUARD SERVICE FOR DEPARTMENT CLINICS | HUMAN SERVICES DEPARTMENT |
| JOYFIELD CAREGIVERS | 1048950 | 2597503 |  | FINANCE DEPARTMENT |
| JOYFIELD CAREGIVERS | 1048950 | 2563712 | 36-NTV-NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| JVS DETROITS WORKPLACE | 1034682 | 2575844 |  | EMPLOYMENT AND TRAINING DEPARTMENT |
| JVS DETROITS WORKPLACE | 1034682 | 2592232 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| JVS DETROITS WORKPLACE | 1034682 | 2597745 |  | EMPLOYMENT AND TRAINING DEPARTMENT |
| JVS DETROITS WORKPLACE | 1034682 | 2566265 | WORK FIRST JOB SEARCH & PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| KASIBORSKI RONANYRI FLASKA PC | 19685 | 2503637 | LEGAL SERVICES | FINANCE DEPARTMENT |
| KASIBORSKI RONANYRI FLASKA PC | 19685 | 2531995 | WAYNE COUNTY V CITY OF DETROIT | LAW DEPARTMENT |
| KASIBORSKI RONANYRI FLASKA PC | 19685 | 2502453 | LEGAL SERVICES | FINANCE DEPARTMENT |
| KELLER THOMA SCHWARTZ | 1020326 | 2517263 | EMPLOYMENT-RELATED INVESTIGATIONS | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| KELLY SERVICES INC | 1000576 | 2583741 | | FINANCE DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2760784 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2664187 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2706955 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2755384 | ROOF PLACEMENT | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2798610 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2733881 | BUTZEL PLAYFIELD RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2734358 | ACTIVITIES CENTER RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2760999 | WISH-EGAN PLAYFIELD RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2761019 | MILAN PLAYFIELD RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2761662 | KRAINZ PARK RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2789769 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2734388 | DRAINAGE/SEWER | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2731179 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2712232 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2760990 | OPTOMIST-STOUT RENOVATIONS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2762087 | 2008 PARK IMPROVEMENTS | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2711290 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2712252 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2714050 | | RECREATION DEPARTMENT |
| KEO AND ASSOCIATES INC | 1040014 | 2807770 | REPAIRS AT HENDERSON MARINA | RECREATION DEPARTMENT |
| KIDSMART SOFTWARE COMPANY | 1072607 | 2781805 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| KIMLEY-HORN OF MICHIGAN INC | 1003415 | 2502474 | CASINO SITE APPRAISER | LAW DEPARTMENT |
| KOHN FINANCIAL CONSULTING | 1014434 | 2511508 | PASSALAQUA CHOP HOUSE V DETROIT | FINANCE DEPARTMENT |
| KOHN FINANCIAL CONSULTING | 1014434 | 2537217 | PROFESSIONAL SERVICES:  STILLMON V CITY | LAW DEPARTMENT |
| KOHN FINANCIAL CONSULTING | 1014434 | 2794993 | PROVIDE ADVICE ON SOLID WASTE FUND | BUDGET DEPARTMENT |
| KPMG CONSULTING, INC | 1028311 | 2529517 | AUDITING SERVICES | AUDITOR GENERAL |
| KPMG CONSULTING, INC | 1028311 | 2552186 | AUDITING SERVICES | AUDITOR GENERAL |
| KPMG LLP | 1440 | 2510105 | IMPLEMENT TIDEMARK COMPUTER SYSTEM | BUILDINGS AND SAFETY DEPARTMENT |
| KPMG LLP | 1440 | 2513477 | AUDITING SERVICES | AUDITOR GENERAL |
| KPMG LLP | 1440 | 2504566 | CONSULTING SERVICES | BUDGET DEPARTMENT |
| KVM DOOR SYSTEMS INC | 1099793 | 2785386 | EASTERN MARKET SHED NO. 3 RESERVATIONS | RECREATION DEPARTMENT |
| L D' AGOSTINI  & SONS INC | 1000677 | 2500927 | LATERAL SEWER REPLACEMENT | NO DEPARTMENT INDICATED |
| LACEY & ASSOCIATES | 1010869 | 2590826 | | FINANCE DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2562865 | DPOA ACT 312 2001-2004 PROCEEDINGS | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2502300 | BLUE CROSS/BLUE SHIELD RESERVE FUND | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2518960 | LEGAL SERVICES | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2534969 | KELLY FOREMAN V CITY | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| LACEY & JONES LLP | 1013697 | 2518952 | LEGAL SERVICES | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2518964 | EDWARD LEWIS V P.O. STEVEN PEIL/CITY | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2539980 | LEGAL SERVICES | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2520968 | LEGAL SERVICES: KEMP V NOETZEL & KEMP | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2539975 | LEGAL SERVICES: MAURICE BROWN V CITY | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2518969 | MICHAEL MCHUGH V CITY OF DETROIT | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2518967 | JESSE WILLIAMS V CITY OF DETROIT | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2501959 | LEGAL SERVICES | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2518973 | BEAUCHAMP V OWENS/CITY | LAW DEPARTMENT |
| LACEY & JONES LLP | 1013697 | 2562836 | MAXIMILIAN ENGRAM, ET AL V CITY | LAW DEPARTMENT |
| LAKESHORE ENGINEERING SERVICE INC | 19808 | 2502201 | ABATEMENT ASBESTOS | DEPARTMENT OF PUBLIC WORKS |
| LAMONT TITLE CORPORATION | 1070200 | 2501595 | 36/LS - TITLE COMMITMENTS | PLANNING AND DEVELOPMENT DEPARTMENT |
| LAMONT TITLE CORPORATION | 1070200 | 2603572 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| LANIER | 1012355 | 2533656 | EMERGENCY USE FOR POLICE PAYROLL | FINANCE DEPARTMENT |
| LANZO CONSTRUCTION CO | 13425 | 2613521 | | WATER DEPARTMENT |
| LARDNER ELEVATOR COMPANY | 24166 | 2507678 | ELEVATOR LOAD & NO-LOAD TEST | WATER DEPARTMENT |
| LASED | 11513 | 2560786 | WIA IN SCHOOL YOUTH PROGRAM | EMPLOYMENT AND TRAINING DEPARTMENT |
| LASED | 11513 | 2501749 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |
| LASED | 11513 | 2740243 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| LASED | 11513 | 2719927 | | DEPARTMENT OF TRANSPORTATION |
| LASED | 11513 | 2801087 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| LASED | 11513 | 2778540 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| LATINO FAMILY SERVICES INC | 16339 | 2504667 | MEDICAID FYE 9/30/99 | HEALTH DEPARTMENT |
| LATINO FAMILY SERVICES INC | 16339 | 2501843 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| LAW OFFICES COLLINS EINHORN | 1049868 | 2765611 | | LAW DEPARTMENT |
| LAWTON SCHOOL | 1100766 | 2806424 | | HUMAN SERVICES DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2502307 | LEGAL SERVICES: CRUMBIE V GUYTON, ET AL | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2502427 | GAINES/HARRIS/HINES/HUGHES V CITY | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2539985 | SANDRA/DARREN MILLER  V EUGENE BROWN | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2539983 | LEGAL SERVICES | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2536840 | LEGAL SERVICES | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2553151 | BERRY/CHENAULT/CROCKETT ET AL V CITY | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2553122 | KUE/WALKER/SMITH/WIGGINS V CITY | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2634333 | | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2655854 | | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2529631 | BRAZIL/PENA V CITY/HOOD | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2561951 | ALLEN/BATTLE/COOPER/GRIFFIN V CITY | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2600494 | | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| LEWIS & MUNDAY PC | 12439 | 2774620 | LEGAL SERVICES | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2502303 | LEGAL SERVICES | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2641462 | | LAW DEPARTMENT |
| LEWIS & MUNDAY PC | 12439 | 2649874 | | LAW DEPARTMENT |
| LIEDEL GRINNAN & LIEDEL PC | 1007353 | 2500765 | LEGAL SERVICES: VELA V PRICE/CITY | LAW DEPARTMENT |
| LIEDEL GRINNAN & LIEDEL PC | 1007353 | 2539960 | LEGAL SERVICES | LAW DEPARTMENT |
| LIEDEL GRINNAN & LIEDEL PC | 1007353 | 2517379 | LEGAL SERVICES | LAW DEPARTMENT |
| LIEDEL GRINNAN & LIEDEL PC | 1007353 | 2548909 | LEGAL SERVICES | LAW DEPARTMENT |
| LIFE FITNESS INC | 1085199 | 2704235 | | RECREATION DEPARTMENT |
| LIONEL SAWYER COLLINS | 19940 | 2502230 | PROFESSIONAL SERVICES | CITY COUNCIL |
| LOCAL INITIATIVES SUPPORT CORPORATION | 1014122 | 2562574 | PROFESSIONAL SERVICES | CITY COUNCIL |
| LOCAL INITIATIVES SUPPORT CORPORATION | 18595 | 2502034 | EMPOWERED ZONE | NO DEPARTMENT INDICATED |
| LOCAL INITIATIVES SUPPORT CORPORATION | 1014122 | 2592262 | | FINANCE DEPARTMENT |
| LOCAL INITIATIVES SUPPORT CORPORATION | 1014122 | 2567588 | | FINANCE DEPARTMENT |
| LOOKING FOR MY SISTER | 1104410 | 2784890 | BLOCK GRANT PROGRAM | POLICE DEPARTMENT |
| LOUIS G REDSTONE ASSCS INC | 16448 | 2502006 | DESIGN FOR ROGELL GLF CRS | NO DEPARTMENT INDICATED |
| LUXURY SEDAN VAN SERVICE | 1015148 | 2570671 | | MUNICIPAL PARKING DEPARTMENT |
| MACDERMOTT ROOFING & SHEET METAL | 16537 | 2732369 | BELLE ISLE GARAGE - ROOF REPLACEMENT | RECREATION DEPARTMENT |
| MACDERMOTT ROOFING & SHEET METAL | 16537 | 2796454 | ROOF REPAIRS | RECREATION DEPARTMENT |
| MACK ALIVE INC | 19676 | 2801089 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MACK ALIVE INC | 19676 | 2778765 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MAJOR CEMENT CO | 22141 | 2502189 | PW 7561 REPAIR DEMAGED | NO DEPARTMENT INDICATED |
| MAJOR CEMENT CO | 22141 | 2634038 | | DEPARTMENT OF PUBLIC WORKS |
| MARINERS INN | 5159 | 2509995 | WTW SUBSTANCE ABUSE COUNSELING | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARINERS INN | 5159 | 2549595 | CAREER INITIATIVES CENTER PROJECT | HUMAN SERVICES DEPARTMENT |
| MARJORIE R MALARNEY & ASSOCIATES | 12830 | 2500751 | LANSING LOBBYIST | LAW DEPARTMENT |
| MARYGROVE COLLEGE | 6279 | 2589338 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE COLLEGE | 6279 | 2629691 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE COLLEGE | 6279 | 2595777 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE COLLEGE | 6279 | 2627961 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2507022 | FIC #76292 WORK FIRST | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2512792 | ASSESSMENT CTR TITLES IIA/IIC & III | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2555328 | WIA ADULT & OUT-OF-SCHOOL YOUTH | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2529603 | ASSESS CTR MOD#1 | FINANCE DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2563669 | LEARNING RESOURCE CTR WORK FIRST | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2571652 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2777810 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2771650 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2740292 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2725976 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2740278 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MARYGROVE NONPROFIT CORPORATION | 1014543 | 2754537 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2512563 | HEAD START SERVICES | HUMAN SERVICES DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2528270 | ENPOWERMENT ZONE- PUBLIC SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2541817 | PAROLEE EMPLOYMENT TRAINING PROGRAM | EMPLOYMENT AND TRAINING DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2557083 | 2001-2002 HEAD START CONTRACT | HEALTH DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2502075 | HEAD START SERVICES | HUMAN SERVICES DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2532520 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2501666 | JOB SEARCH AND PLACEMENT | NO DEPARTMENT INDICATED |
| MATRIX HUMAN SERVICES | 1584 | 2512181 | SHELTER FOR HOMELESS YOUTH | HUMAN SERVICES DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2561392 | WORK FIRST & WTW. 2001-2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2606499 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2847169 | | HUMAN SERVICES DEPARTMENT |
| MATRIX HUMAN SERVICES | 1584 | 2767093 | | HUMAN SERVICES DEPARTMENT |
| MAYOR'S TIME | 1070618 | 2780286 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| METCO SERVICES INC | 13250 | 2502148 | | DEPARTMENT OF PUBLIC WORKS |
| METROPOLITAN BAPTIST CHURCH HEAD START | 9004 | 2557075 | 2001-2002 HEAD START CONTRACT | HUMAN SERVICES DEPARTMENT |
| METROPOLITAN BAPTIST CHURCH HEAD START | 9004 | 2532514 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| METROPOLITAN BAPTIST CHURCH HEAD START | 9004 | 2505351 | | HUMAN SERVICES DEPARTMENT |
| METROPOLITAN BAPTIST CHURCH HEAD START | 9004 | 2512558 | HEAD START SERVICES | HUMAN SERVICES DEPARTMENT |
| METROPOLITAN BAPTIST CHURCH HEAD START | 9004 | 2768826 | | HUMAN SERVICES DEPARTMENT |
| METRO EAST DRUG TREATMENT | 10996 | 2501534 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| METRO EMPLOYMENT SOLUTIONS | 1007722 | 2564007 | WORK FIRST & WELFARE TO WORK | EMPLOYMENT AND TRAINING DEPARTMENT |
| METRO EMPLOYMENT SOLUTIONS | 1007722 | 2626981 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| METROPOLITAN ARTS COMPLEX INC | 1001141 | 2501630 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| METROPOLITAN ARTS COMPLEX INC | 1001141 | 2501857 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| METROPOLITAN CHILDREN & YOUTH INC | 1082096 | 2847163 | | HUMAN SERVICES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| METROPOLITAN DETROIT AFL-CIO | 1001142 | 2502169 | JOB SEARCH | NO DEPARTMENT INDICATED |
| METROPOLITAN DETROIT AFL-CIO | 1001142 | 2603384 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| METROPOLITAN DETROIT VISITORS | 21182 | 2530321 | ADVERTISING AND PROMTIONAL EXPERTISE | CIVIC CENTER DEPARTMENT |
| METROPOLITAN DETROIT VISITORS | 21182 | 2550871 | PROMOTION FOR COBO CENTER | CIVIC CENTER DEPARTMENT |
| METROPOLITAN DETROIT VISITORS | 21182 | 2767846 | PROFESSIONAL SERVICES CONTRACT | CIVIC CENTER DEPARTMENT |
| MGM LEGAL MGMT SOLUTIONS | 20133 | 2502235 | | NO DEPARTMENT INDICATED |
| MICHIGAN CONFERENCE SDA DETROIT/METRO | 1012847 | 2506682 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| MICHIGAN DEPARTMENT OF CAREER | 1016600 | 2511440 | EMPLOYMENT SERVICES | EMPLOYMENT AND TRAINING DEPARTMENT |
| MICHIGAN DEPARTMENT OF CAREER | 1016600 | 2620233 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2510495 | ADVANCE-TRAFFIC SIGNAL MODERNIZATION | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2517085 | BITUMINIOUS COLDMILLING WORK ALONG HWY M102 FROM HWY M53TO KELLY ROAD | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2500761 | DECK REPLACEMENT | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2518505 | COLDMILLING ALONG HWY. US-24 FROM HWY. M-5(GRAND RIVER) TO M-102 | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2501400 | RESURFACING | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2501407 | RESCONSTRUCTION OF DECK | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2511603 | TRAFFIC SIGNALS AND PAVEMENT MARKINGS | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2501807 | DECK REPLACEMENT | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2500758 | SCREENING | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2518522 | DECK REPLACEMENT | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2500787 | REPLACE BRIDGES | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2512565 | CONCRETRE OVERLAY FOR STRUCTURE WHICH CARRIES PORTER ST. OVER I-75 | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2501877 | BRIDGE | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2521604 | DECK REPLACEMENT | DEPARTMENT OF PUBLIC WORKS |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2524693 | PEDESTRAIN SCREENING FOR VARIOUS STRUCTURES | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2502178 | RECONSTRUCT HWY - I 75 SPRINGWELL | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2501411 | BRIDGE AND DECK REPLACEMENT | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2567088 | | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2502469 | RESURFACE DECK | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2538766 | TRAFFIC SIGNALWORK AT DICKERSON ROAD | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2520074 | RECONSTRUCTION OF STRUCTURE WHICH CARRIES GREENFIELD ROAD OVER HWY. M-10 | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2500781 | DECK REPLACEMENT | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2500779 | RESURFACING | NO DEPARTMENT INDICATED |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2622755 | | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2740688 | | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2517764 | DECK REPLACEMENT WORK ON BRIDGE | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN DEPARTMENT OF STATE HIGHWAYS & TRANSPORTATION | 2100 | 2511049 | BITUMINOUS RESURFACING AND CURB WORK ALONG LIVERNOIS | DEPARTMENT OF PUBLIC WORKS |
| MICHIGAN FOOD AND BEVERAGE ASSOCIATION | 1101727 | 2759218 | PERIOD SERVICES FOR METRO YOUTH DAY | RECREATION DEPARTMENT |
| MICHIGAN FOOD AND BEVERAGE ASSOCIATION | 1101727 | 2786573 | METRO YOUTH DAY | RECREATION DEPARTMENT |
| MICHIGAN HVAC VOCATIONAL | 17478 | 2512764 | RETRAINING SERVICES | EMPLOYMENT AND TRAINING DEPARTMENT |
| MICHIGAN STATE AFL-CIO HRDI | 1027005 | 2769866 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MICHIGAN STATE UNIVERSITY | 8167 | 2795800 | ACCIDENT INVESTIGATION COURSES | POLICE DEPARTMENT |
| MIDNIGHT GOLF PROGRAM | 1055952 | 2778544 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MIDWEST CAREERS INSTITUTE | 1062863 | 2540054 | JOB SEARCH & PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| MIDWEST CAREERS INSTITUTE | 1062863 | 2562793 | WORK FIRST PROGRAM | EMPLOYMENT AND TRAINING DEPARTMENT |
| MIDWEST CAREERS INSTITUTE | 1062863 | 2778461 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MIDWEST CAREERS INSTITUTE | 1062863 | 2806239 | | WORKFORCE DEVELOPMENT DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| MILWAUKEE INVESTMENT CO | 17041 | 2501818 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| MILWAUKEE INVESTMENT CO | 17041 | 2524249 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| MIRO WEINER & KRAMER PC | 1039572 | 2665562 | | LAW DEPARTMENT |
| MISDEMEANOR DEFENDERS LAW CLINIC PC | 1009823 | 2534641 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| MITCHCO | 1022053 | 2553859 | GAS, COMPRESSED NATURAL | DEPARTMENT OF TRANSPORTATION |
| MOLLY LEVITT | 1951 | 2500956 | | HUMAN SERVICES DEPARTMENT |
| MOLLY LEVITT | 1951 | 2500955 | | HUMAN SERVICES DEPARTMENT |
| MOMS & BABES TOO MSSP/ISSP INC | 1013849 | 2508892 | 25-WIC 9/99 CERTIFICATION | HEALTH DEPARTMENT |
| MONTEZ GROUP | 1100889 | 2769654 | | MAYOR'S OFFICE |
| MOORE & ASSOCIATES INC | 1001299 | 2501402 | EMPOWERMENT ZONE PROJECT | RECREATION DEPARTMENT |
| MOORISH SCIENCE TEMPLE OF AMERICA | 1003703 | 2506282 | NOF PUBLIC SERVICE | FINANCE DEPARTMENT |
| MORGAN FRAZIER SPECIALIZED SERVICES | 1001308 | 2502273 | CONSULTANT NUISANCE ABATEMENT | BUILDINGS AND SAFETY DEPARTMENT |
| MOSAIC YOUTH THEATRE OF DETROIT | 1001332 | 2543835 | THEATRICAL TRAINING | RECREATION DEPARTMENT |
| MOTOR CITY ELECTRIC CO | 13102 | 2581185 | | PUBLIC LIGHTING DEPARTMENT |
| MOTOR CITY ELECTRIC CO | 13102 | 2501432 | ELECTRICAL CONSTRUCTION PL 130 | NO DEPARTMENT INDICATED |
| MOTOR CITY ELECTRIC CO | 13102 | 2611714 | | PUBLIC LIGHTING DEPARTMENT |
| MOTOR CITY ELECTRIC CO | 13102 | 2611719 | | PUBLIC LIGHTING DEPARTMENT |
| MOTOR CITY ELECTRIC/METCO SERVICES AJV | 1033698 | 2537241 | FREQUENCY DRIVES AT WWTP'S INTERMEDIATE LIFT PUMP STATION #2 | SEWERAGE DEPARTMENT |
| MOTOR CITY PIPE | 1001344 | 2753399 | WING SEALS STAINLESS STEEL STRAPPING | GENERAL SERVICES DEPARTMENT |
| MOTOR CITY PIPE | 1001344 | 2763247 | PLUMBING & STEAM FITTING SUPPLIES | GENERAL SERVICES DEPARTMENT |
| NARDIN PARK DRUG ABUSE CENTER | 1706 | 2501540 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| NARDIN PARK DRUG ABUSE CENTER | 1706 | 2506559 | SUBSTANCE ABUSE FYE99/98 NARDIN PARK | HEALTH DEPARTMENT |
| NATIONAL COUNCIL ON ALCOHOLISM | 16455 | 2501541 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| NEIGHBORHOOD DEVELOPMENT CORPORATION | 20509 | 2501589 | LAND ACQUISITION SITE PREPARATION | PLANNING AND DEVELOPMENT DEPARTMENT |
| NEIGHBORHOOD RECONCILIATION CENTER INC | 1000268 | 2533307 | | HUMAN RIGHTS DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2547780 | WALK IN CENTER FOR THE HOMELESS | HUMAN SERVICES DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2532814 | 24 HOUR WALK IN CENTER | HUMAN SERVICES DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2527949 | 963-STAY (HOMELESS HOTLINE) | HUMAN SERVICES DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2501594 | SERVICES FOR THE HOMELESS | HUMAN SERVICES DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2557085 | 2001-2002 HEAD START (HIPPY) CONTRACT | HUMAN SERVICES DEPARTMENT |
| NEIGHBORHOOD SERVICE ORGANIZATION | 8118 | 2849011 | | HEALTH DEPARTMENT |
| NESS BORIS CORPORATION | 1087558 | 2693925 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| NETCOL ASSOCIATES INC | 1101173 | 2782059 | | HEALTH DEPARTMENT |
| NETCOL ASSOCIATES INC | 1101173 | 2756230 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| NETIMATION INC | 20384 | 2502117 | PROFESSIONAL SERVICES | NO DEPARTMENT INDICATED |
| NEW CENTER COMMUNITY | 19199 | 2502090 | | NO DEPARTMENT INDICATED |
| NEW DAY MULTI-PURPOSE COMMUNITY | 14872 | 2510758 | NUTRITIONAL MEALS, TRANSPORTATION | HUMAN SERVICES DEPARTMENT |
| NEW DAY MULTI-PURPOSE COMMUNITY | 14872 | 2533571 | SHELTER AND SUPPORTIVE SERVICES | HUMAN SERVICES DEPARTMENT |
| NEW DETROIT INC | 10869 | 2529859 | WIA CLASSROOM INSTRUCTION | EMPLOYMENT AND TRAINING DEPARTMENT |
| NEW DETROIT INC | 10869 | 2502172 | EZ-PUBLIC SERVICE | PLANNING AND DEVELOPMENT DEPARTMENT |
| NEW LIFE HOME FOR RECOVERING | 18726 | 2501457 | SUBSTANCE ABUSE COOR AGENCY 9-99 | HEALTH DEPARTMENT |
| NEW LIFE HOME FOR RECOVERING | 18726 | 2501621 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| NEW LIGHT RECOVERY CENTER INC | 1003695 | 2501638 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| NEW ST PAUL HEAD START AGENCY | 1048766 | 2620502 | | HUMAN SERVICES DEPARTMENT |
| NEW ST PAUL HEAD START AGENCY | 1048766 | 2587304 | | HUMAN SERVICES DEPARTMENT |
| NEW TECHNOLOGY LTD | 16280 | 2500969 | | SEWERAGE DEPARTMENT |
| NITRO TELECOM COMMUNICATIONS SPECIALIST | 1012632 | 2582916 | | FINANCE DEPARTMENT |
| NOETIX CORPORATION | 1067921 | 2649928 | | NON-DEPARTMENTAL |
| NORTH CENTRAL COMMUNITY MENTAL HEALTH | 1003696 | 2501657 | | NO DEPARTMENT INDICATED |
| NORTHEAST HEALTH SERVICES INC | 1003700 | 2507303 | MEDICAID SERVICES | HEALTH DEPARTMENT |
| NORTHERN AREA ASSOCIATION | 19677 | 2509233 | HOME REPAIR TECHNICAL ASSISTANCE | FINANCE DEPARTMENT |
| NORTHSTAR COMMUNITY DEVELOPMENT CORP | 1018049 | 2565847 | PREDEVELOPMENT ACTIVITIES | FINANCE DEPARTMENT |
| NORTHSTAR COMMUNITY DEVELOPMENT CORP | 1018049 | 2536554 | 36/LS-CHDO OPERATING SUPPORT | FINANCE DEPARTMENT |
| NORTHSTAR COMMUNITY DEVELOPMENT CORP | 1018049 | 2517450 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| NORTHWEST COMMUNITY PROGRAMS INC | 1062722 | 2676860 | | HUMAN SERVICES DEPARTMENT |
| NORTHWEST COMMUNITY PROGRAMS INC | 1062722 | 2765500 | PROFESSIONAL SERVICES CONTRACT | RECREATION DEPARTMENT |
| NORTHWEST DETROIT NON-PROFIT | 12557 | 2510026 | PUBLIC FACILITY REHAB.-FICS #74895 | FINANCE DEPARTMENT |
| NOVA CONTRACTING CORPORATION | 14983 | 2504312 | ENLOADER / W OPERATOR (M-80754) | SEWERAGE DEPARTMENT |
| NOVA DEVELOPMENT GROUP DETROIT LLC | 1107544 | 2809435 | | HUMAN SERVICES DEPARTMENT |
| NTH CONSULTANTS LTD | 16602 | 2504056 | CONSULTING UGS TANKS | DEPARTMENT OF PUBLIC WORKS |
| NTH CONSULTANTS LTD | 16602 | 2501727 | ENVIRONMENTAL SERVICES-FICS #73837 | PLANNING AND DEVELOPMENT DEPARTMENT |
| NTH CONSULTANTS LTD | 16602 | 2627188 | | RECREATION DEPARTMENT |
| OFFICE EXPRESS | 1105974 | 2731413 | | MAYOR'S OFFICE |
| O'LAUGHLIN CONSTRUCTION | 12053 | 2507308 | RENOVATION OF HYDRAULIC STRUCTURES | WATER DEPARTMENT |
| O'LAUGHLIN CONSTRUCTION | 12053 | 2574640 | PC-695 IN SYSTEM STORAGE | SEWERAGE DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| OLYMPIA ENTERTAINMENT | 1007150 | 2507725 | PARKING FACILITY MANAGEMENT SERVICES | MUNICIPAL PARKING DEPARTMENT |
| OMNICARE HEALTH PLAN | 1005707 | 2546137 | WIC CERTIFICATION | HEALTH DEPARTMENT |
| OMNICARE HEALTH PLAN | 1005707 | 2507763 | 25 WIC 1999 CERTIFICATION | HEALTH DEPARTMENT |
| OMNILEARN LLC | 1066579 | 2633220 |  | NON-DEPARTMENTAL |
| OPERATION ABLE OF MICHIGAN | 17427 | 2519090 | BASIC SKILLS AND OCCUPATIONAL SKILLS | EMPLOYMENT AND TRAINING DEPARTMENT |
| OPERATION ABLE OF MICHIGAN | 17427 | 2519079 | BASIC SKILLS AND OCCUPATIONAL SKILLS. | EMPLOYMENT AND TRAINING DEPARTMENT |
| OPERATION ABLE OF MICHIGAN | 17427 | 2501939 | PUBLIC SERVICE EZ | NO DEPARTMENT INDICATED |
| OPERATION ABLE OF MICHIGAN | 17427 | 2797761 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| OPERATION ABLE OF MICHIGAN | 17427 | 2771757 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| OPERATION ABLE OF MICHIGAN | 17427 | 2740218 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2550216 | TRANSITIONAL HOUSING | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2533044 | EMERGENCY NEED RESOURCES | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2518996 | EMERGENCY NEED RESOURCES | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2588310 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2557544 | FAMILY AND COMMODITY SERVICES | FINANCE DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2776867 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2746767 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2810794 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2775349 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION GET DOWN | 3347 | 2803609 |  | HUMAN SERVICES DEPARTMENT |
| OPERATION HELP INC | 1442 | 2501652 | WF EMP SKILLS & JOB PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| OPERATION HELP INC | 1442 | 2721152 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| OPERATION HELPING HAND INC | 19338 | 2511433 | EMERGENCY SHELTER | FINANCE DEPARTMENT |
| ORCHARDS CHILDRENS SERVICE | 1015406 | 2778756 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2557060 | 2001-2002 HEAD START CONTRACT | HUMAN SERVICES DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2532503 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2512545 | HEAD START SERVICES | RECREATION DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2620494 |  | HUMAN SERVICES DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2502084 |  | HUMAN SERVICES DEPARTMENT |
| ORDER OF THE FISHERMEN MINISTRY | 1057660 | 2797263 |  | HUMAN SERVICES DEPARTMENT |
| ORGANIZATION & SYSTEMS CHANGE CONSULTANTS | 1101841 | 2779409 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| PARK RITE | 18490 | 2504157 | PROFESSIONAL PARKING MANAGEMENT | MUNICIPAL PARKING DEPARTMENT |
| PARK RITE | 18490 | 2570673 |  | MUNICIPAL PARKING DEPARTMENT |
| PARK RITE | 18490 | 2504154 | PROFESSIONAL PARKING MANAGEMENT | MUNICIPAL PARKING DEPARTMENT |
| PARK RITE | 18490 | 2504153 | PROFESSIONAL PARKING MANAGEMENT | MUNICIPAL PARKING DEPARTMENT |
| PARK RITE | 18490 | 2501379 | EASTERN MARKET GARAGE | MUNICIPAL PARKING DEPARTMENT |
| PARKVIEW COUNSELING CENTER | 1003697 | 2501728 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| PARSONS BRINCKERHOFF MICHIGAN INC | 1025586 | 2531875 | DEVELOP TRAFFIC MASTER PLAN | DEPARTMENT OF PUBLIC WORKS |
| PARSONS BRINCKERHOFF MICHIGAN INC | 1025586 | 2666820 | | RECREATION DEPARTMENT |
| PARTRIDGE ENTERPRISES INC | 19090 | 2515024 | REMOVAL OF DEAD ANIMALS | HEALTH DEPARTMENT |
| PARTRIDGE ENTERPRISES INC | 19090 | 2773727 | | HEALTH DEPARTMENT |
| PATTERSON PHIFER | 1007814 | 2508834 | KUE /SWANGER/ WALKER/BOONE V CITY | LAW DEPARTMENT |
| PATTERSON PHIFER | 1007814 | 2509732 | LEGAL SERVICES | LAW DEPARTMENT |
| PATTERSON PHIFER | 1007814 | 2521163 | LEGAL SERVICES | LAW DEPARTMENT |
| PATTERSON PHIFER | 1007814 | 2521178 | LEGAL SERVICES | LAW DEPARTMENT |
| PATTERSON PHIFER | 1007814 | 2513517 | MAURICE BROWN V CITY OF DETROIT, ET AL | LAW DEPARTMENT |
| PATTERSON PHIFER & PHILLIPS | 17376 | 2505725 | LEGAL SERVICES | FINANCE DEPARTMENT |
| PATTERSON PHIFER & PHILLIPS | 17376 | 2505728 | LEGAL SERVICES | LAW DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE | 7737 | 2564267 | WORKFIRST/WTW, 10/1/01 – 9/30/02, JS/JR | EMPLOYMENT AND TRAINING DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE | 7737 | 2528278 | WIA BASIC EDUCATION AGES 14–18 | EMPLOYMENT AND TRAINING DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE | 7737 | 2740260 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE AND COMMERCE | 1030662 | 2778463 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE AND COMMERCE | 1030662 | 2801097 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PAYNE-PULLIAM SCHOOL OF TRADE AND COMMERCE | 1030662 | 2778760 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PCT SECURITY LLC | 1107205 | 2812357 | SURVEILLANCE EQUIPMENT INSTALLATION | WORKFORCE DEVELOPMENT DEPARTMENT |
| PEGGY YOUNG & ASSOCIATES INC | 7333 | 2502363 | APPRAISAL SERVICES | PLANNING AND DEVELOPMENT DEPARTMENT |
| PEGGY YOUNG & ASSOCIATES INC | 7333 | 2763958 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| PEOPLE'S COMMUNITY SERVICES OF METROPOLITAN DETROIT | 10686 | 2501460 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| PEOPLE'S CREATIVE ENSEMBLE | 14786 | 2501435 | PUBLIC SERVICE | NO DEPARTMENT INDICATED |
| PEPPER HAMILTON LLP | 1009412 | 2635807 | | LAW DEPARTMENT |
| PEPPER HAMILTON LLP | 1009412 | 2719996 | | LAW DEPARTMENT |
| PERRY MATHIS MD | 1012076 | 2559401 | DRUG TREATMENT PROGRAM PHYSICIAN | FINANCE DEPARTMENT |
| PERRY MATHIS MD | 1012076 | 2544150 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| PERRY MATHIS MD | 1012076 | 2508114 | DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| PERRY MATHIS MD | 1012076 | 2513140 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| PHARMACY EMPLOYMENT SERVICE | 1053611 | 2572655 | | HEALTH DEPARTMENT |
| PHIFER & WHITE PC | 1027627 | 2537538 | LEGAL SERVICES: SMITH/WIGGINS V CITY | LAW DEPARTMENT |
| PHIFER & WHITE PC | 1027627 | 2537563 | LEGAL SERVICES: WOODWARD/JEAN V CITY | LAW DEPARTMENT |
| PHIFER & WHITE PC | 1027627 | 2623900 | | LAW DEPARTMENT |
| PHILLIP G CRAMER MD | 1019205 | 2527982 | TB MEDICAL SERVICES | HEALTH DEPARTMENT |
| PHILLIP G CRAMER MD | 1019205 | 2579701 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| PHOENIX SERVICES UNLIMITED INC | 19496 | 2501351 | BATTERER'S SCHOOL | NO DEPARTMENT INDICATED |
| PHOENIX SERVICES UNLIMITED INC | 19496 | 2548814 | DOMESTIC VIOLENCE COUNSELING | POLICE DEPARTMENT |
| PIERCE MONROE & ASSOCIATES INC | 18223 | 2501044 | | FINANCE DEPARTMENT |
| PIERCE MONROE & ASSOCIATES INC | 18223 | 2502104 | | FINANCE DEPARTMENT |
| PIQUETTE MARKET INC | 1072282 | 2803604 | | HUMAN SERVICES DEPARTMENT |
| PIQUETTE MARKET INC | 1072282 | 2775345 | | HUMAN SERVICES DEPARTMENT |
| PIQUETTE MARKET INC | 1072282 | 2743795 | | HUMAN SERVICES DEPARTMENT |
| PLANNED PARENTHOOD | 1012848 | 2603682 | | FINANCE DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2527611 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2536997 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2590835 | | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2540467 | LEGAL SERVICES: ADAMS, ET AL V CITY, ET AL | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2508813 | IRA LEE TODD V CITY OF DETROIT, ET AL | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2508816 | GRAZES/IVERZAI/SMITH, ET AL V CITY | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2527406 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2538058 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2501702 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2538244 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2652076 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2502112 | LEGAL SERVICES | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2537223 | LORETTA BOOTH V CITY OF DETROIT | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2569755 | | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2570503 | | LAW DEPARTMENT |
| PLUNKETT & COONEY PC | 10371 | 2774678 | | LAW DEPARTMENT |
| POLICE ATHLETIC LEAGUE INC | 3703 | 2535838 | TENNIS PROGRAM | RECREATION DEPARTMENT |
| POPKIN SOFTWARE SYSTEMS | 20304 | 2518460 | SYSTEMS ARCHITECT AND OPTIONS | INFORMATION TECHNOLOGY SERVICES |
| POSEN CONSTRUCTION CO | 20208 | 2748229 | BELLE ISLE SCOTT FOUNTAIN LAGOON PIPELINE SYSTEM CLEAN-OUT | RECREATION DEPARTMENT |
| POSEN CONSTRUCTION CO | 20208 | 2584529 | | WATER DEPARTMENT |
| POSITIVE IMAGES | 19950 | 2501495 | | HEALTH DEPARTMENT |
| POSITIVE IMAGES | 19950 | 2501653 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| PREMIER STAFFING SOURCE INC | 1118976 | 2877577 | TEMPORARY STAFFING SERVICES | HUMAN RESOURCES DEPARTMENT |
| PRISM SOLUTIONS LLC | 1051836 | 2610132 | | RECREATION DEPARTMENT |
| PROBE ENVIRONMENTAL INC | 19803 | 2502194 | ABATEMENT OF ASBESTOS | DEPARTMENT OF PUBLIC WORKS |
| PROJECT GET | 20363 | 2540814 | JOB SEARCH & PLACEMENT-WORK FIRST | EMPLOYMENT AND TRAINING DEPARTMENT |
| PROJECT GET | 20363 | 2563946 | JOB SEARCH & PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| PROJECT GET | 20363 | 2501733 | JOB SEARCH | NO DEPARTMENT INDICATED |
| PROJECT GET | 20363 | 2778465 | | WORKFORCE DEVELOPMENT DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| PROJECT GET | 20363 | 2806247 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778467 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778477 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2761554 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PROVIDENCE COMMUNITY SERVICES/ROSS IES | 1095234 | 2778661 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| PVS TECHNOLOGIES INC | 24231 | 2501270 | | SEWERAGE DEPARTMENT |
| R L WINIGER & COMPANY | 1033182 | 2506508 | INVESTIGATIVE SERVICES | FINANCE DEPARTMENT |
| RALPH CALDER & ASSOC | 20041 | 2502210 | PATTON PARK POOL/RECREATION FACILITY | RECREATION DEPARTMENT |
| RAM CONSTRUCTION SERVICES OF MICHIGAN | 1104845 | 2786314 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| RAMA RAO & ALFRED INC | 15030 | 2502274 | A/E SERVICES WATER WORKS | NO DEPARTMENT INDICATED |
| RAMA RAO & ALFRED INC | 15030 | 2500977 | BLUEHILL STATION ADDITIONS | NO DEPARTMENT INDICATED |
| RAMA RAO & ALFRED INC | 15030 | 2767688 | CONTRACT FOR PROFESSIONAL SERVICES | INFORMATION TECHNOLOGY SERVICES |
| RANDALL S LEVINE PC DBA LEVINE & LEVINE PC | 1017685 | 2513748 | LEGAL SERVICES | OMBUDSPERSON |
| RANDY LANE PC | 1070228 | 2879763 | CONTRACT FOR ACCOUNTING SERVICES | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2513137 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2544138 | DRUG TREATMENT PROGRAM PHYSICIAN | HUMAN SERVICES DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2508115 | SERVICES FOR DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2559423 | PHISICIAN FOR DRUG TREATMENT PROGRAM | FINANCE DEPARTMENT |
| RAYMOND JONES MD | 10770 | 2591480 | | HUMAN SERVICES DEPARTMENT |
| REACH INC | 17260 | 2504789 | NOF-PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |
| REACH PROJECT INC | 1048827 | 2599632 | | HEALTH DEPARTMENT |
| REDSTONE ARCHITECTS | 1001648 | 2506677 | CAMPUS MARTIUS PARK DEVELOPMENT | RECREATION DEPARTMENT |
| REID & REID PC | 1012544 | 2633008 | | LAW DEPARTMENT |
| RENAISSANCE PROPERTIES INC | 1032580 | 2562053 | | FINANCE DEPARTMENT |
| RENAISSANCE PROPERTIES INC | 1032580 | 2534576 | | HUMAN SERVICES DEPARTMENT |
| RESOURCE DATA SYSTEMS CORP | 10349 | 2500772 | LAW DEPARTMENT COMPUTER SYSTEMS | LAW DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2560345 | JOB SEARCH AND PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2726455 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| RESOURCE NETWORK | 1007604 | 2778663 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| RESPONSE NETWORK | 1103012 | 2771949 | CUSTOM SOFTWARE DEVELOPMENT | POLICE DEPARTMENT |
| RIGHT ASSOCIATES /JANNOTTA BRAY & ASSOCIATES | 20383 | 2511677 | EXECUTIVE COACHING SERVICES | HUMAN RESOURCES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623897 | | LAW DEPARTMENT |
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623906 | | LAW DEPARTMENT |
| RILEY ROUMELL & CONNOLLY PC | 1060612 | 2623942 | | LAW DEPARTMENT |
| RLI INSURANCE COMPANY | 1099957 | 2765028 | | WATER DEPARTMENT |
| ROBERT C BIRKS MD PC | 7251 | 2578999 | | HUMAN SERVICES DEPARTMENT |
| ROBERT C BIRKS MD PC | 7251 | 2592085 | | HUMAN SERVICES DEPARTMENT |
| ROBERT MATHEWS & ASSOCIATES INC | 1059586 | 2620918 | | HUMAN SERVICES DEPARTMENT |
| ROBERT SEDLER | 9851 | 2769756 | CONSULTANT SERVICES | LAW DEPARTMENT |
| ROSE & ROSE | 15597 | 2500750 | LEGAL SERVICES | NO DEPARTMENT INDICATED |
| ROSS LEARNING INC | 10675 | 2562588 | WF WTW TIREMAN/GREYDALE PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2562593 | WF & WTW FORT WAYNE PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2554055 | BASIC LITERACY & COORDINATION | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2562407 | WF & WTW LTC PY 2002 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2549631 | WTW COMPETITIVE COORDINATION | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2537106 | WIA ITA IMPLEMENTATION PY 01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2540277 | WF & FOOD STAMP ITA PY 01 | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2572344 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2624160 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROSS LEARNING INC | 10675 | 2599059 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| ROY F WESTON INC | 16868 | 2512933 | ENVIRONMENTAL SERVICES - FICS #74431 | FINANCE DEPARTMENT |
| ROY F WESTON INC | 16868 | 2501574 | WATERFRONT RECLAMATION PROJECT | LAW DEPARTMENT |
| ROYAL ROOFING CO INC | 13119 | 2730710 | ROOF REPLACEMENT | RECREATION DEPARTMENT |
| S D HAMILTON GROUP | 1019484 | 2603327 | | FINANCE DEPARTMENT |
| SABRE CONTRACTING LLC | 1106108 | 2797979 | RENOVATIONS | RECREATION DEPARTMENT |
| SACRED HEART MAJOR SEMINARY | 1576 | 2501491 | FICS CONTRACT 078684 SPO 2510159 | HEALTH DEPARTMENT |
| SACRED HEART REHABILITATION CENTER, INC | 1013401 | 2507443 | MEDICAID S.A. FYE 9/99 SACRED HEART | HEALTH DEPARTMENT |
| SAFE CENTER INC | 19547 | 2501207 | | NO DEPARTMENT INDICATED |
| SAFE CENTER INC | 19547 | 2557542 | FAMILY SERVICES AND COUNSELING | FINANCE DEPARTMENT |
| SAFE CENTER INC | 19547 | 2533141 | EMERGENCY SERVICES | HUMAN SERVICES DEPARTMENT |
| SALVATION ARMY BOOTH SERVICES | 15401 | 2510155 | TRANSITIONAL HOUSING | FINANCE DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538824 | LEGAL SERVICES | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538789 | LEGAL SERVICES | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538820 | LEGAL SERVICES: CLAUDE NELSON V CITY | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2505098 | LEGAL SERVICES | FINANCE DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538816 | BRADFORD ERVING V CITY/HAYWARD | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2538794 | EST. OF TOMMIE THOMAS V CITY | LAW DEPARTMENT |
| SANDERS & JOHNSON PLLC | 1003611 | 2534988 | PATRICK HATFIELD V CITY | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| SCHINDLER ELEVATOR CORPORATION | 6926 | 2558355 | MADISON CENTER ELEVATOR MAINTENANCE | NO DEPARTMENT INDICATED |
| SCHUMAKER & COMPANY INC | 1064547 | 2689171 | | BUDGET DEPARTMENT |
| SER CASA ACADEMY | 1025139 | 2589594 | EMPOWERMENT ZONE- PUBLIC SERVICE | PLANNING AND DEVELOPMENT DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2528378 | YOUTH OPPORTUNITY GRANT # 2 | EMPLOYMENT AND TRAINING DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2519316 | YOUTH OPPORTUNITIES | EMPLOYMENT AND TRAINING DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2622682 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2536987 | INDIVIDUAL TRAINING ACCOUNTS | EMPLOYMENT AND TRAINING DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2594584 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2501434 | PUBLIC FACILITY REHAB | NO DEPARTMENT INDICATED |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2778762 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2775948 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SER METRO DETROIT - JOB FOR PROGRESS | 3369 | 2761551 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SERCO INC | 16569 | 2568070 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| SERCO INC | 16569 | 2623557 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| SERCO INC | 16569 | 2548196 | PARTNERSHIP FOR ADULT LEARNING | EMPLOYMENT AND TRAINING DEPARTMENT |
| SERCO INC | 16569 | 2561194 | JOB SEARCH AND JOB PLACEMENT (JSP) | EMPLOYMENT AND TRAINING DEPARTMENT |
| SERCO INC | 16569 | 2561177 | JOB SEARCH AND PLACEMENT(DEC-2K) | EMPLOYMENT AND TRAINING DEPARTMENT |
| SERCO INC | 16569 | 2778471 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SERCO INC | 16569 | 2806253 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SFT INCORPORATED | 1033579 | 2536333 | FOR MISTERSKI POWER PLANT PROJECT | CITY COUNCIL |
| SHAR HOUSE | 11024 | 2501503 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| SHAR HOUSE | 11024 | 2501501 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| SHAR HOUSE | 11024 | 2564200 | WOMEN AND CHILDREN EXPANSION GRANT | HEALTH DEPARTMENT |
| SHAR HOUSE | 11024 | 2501642 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| SHARON RODDY MD | 1016242 | 2544065 | | HUMAN SERVICES DEPARTMENT |
| SHEVRIN CONSULTING SERVICES | 1081120 | 2658592 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| SIEMENS BUILDING TECHNOLOGIES INC | 1080147 | 2799544 | CONTROL SYSTEM IMPROVEMENTS | RECREATION DEPARTMENT |
| SIEMENS HEALTHCARE DIAGONSTICS | 1101501 | 2849348 | ON-SITE DRUG TESTING | HEALTH DEPARTMENT |
| SILVERI ARCHITECTS | 1031901 | 2549574 | EMPOWERMENT ZONE IMPROVEMENT | RECREATION DEPARTMENT |
| SIMON HOUSE | 18009 | 2541640 | PERMANENT HOUSING (FICS#074931) | FINANCE DEPARTMENT |
| SIMON HOUSE | 18009 | 2510640 | EMERGENCY SHELTER | FINANCE DEPARTMENT |
| SIMONE CONTRACTING CORPORATION | 1000476 | 2786501 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| SMITH BROS ELECTRIC INC | 1018473 | 2582919 | | FINANCE DEPARTMENT |
| SMITH BROS ELECTRIC INC | 1018473 | 2505208 | INSTALL VOICE AND DATA WIRING SERVICES | INFORMATION TECHNOLOGY SERVICES |
| SMITH GROUP JJR LLC | 1003317 | 2504102 | LONG TERM MANAGEMENT | FINANCE DEPARTMENT |
| SNELL ENVIRONMENTAL GROUP INC | 1000483 | 2502200 | ABATEMENT ASBESTOS | DEPARTMENT OF PUBLIC WORKS |
| SNELL ENVIRONMENTAL GROUP INC | 1000483 | 2500795 | ENGINEERING SERVICES FOR NEW BRIDGES | DEPARTMENT OF PUBLIC WORKS |
| SOBH PROPERTY MANAGEMENT LLC | 1018847 | 2515472 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| SOBRIETY HOUSE INC | 1797 | 2501505 | SUBSTANCE ABUSE COORDINATION AGENCY | HEALTH DEPARTMENT |
| SOBRIETY HOUSE INC | 1797 | 2501734 | MEDICAID SUBSTANCE ABUSE | HEALTH DEPARTMENT |
| SOCIETY OF ST VINCENT DE PAUL | 10460 | 2587915 | | FINANCE DEPARTMENT |
| SONDRA E JENKINS | 1013274 | 2507145 | JOINT L-M/QI PROJECT CONSULTANT | HUMAN RESOURCES DEPARTMENT |
| SOUTHEAST CHILDREN AND FAMILY DEVELOPMENT HEAD START | 10372 | 2587309 | | HUMAN SERVICES DEPARTMENT |
| SOUTHEAST CHILDREN AND FAMILY DEVELOPMENT HEAD START | 10372 | 2532516 | HEAD START PROGRAM | HUMAN SERVICES DEPARTMENT |
| SOUTHEAST CHILDREN AND FAMILY DEVELOPMENT HEAD START | 10372 | 2504138 | HEAD START PROGRAM 1998-99 | HUMAN SERVICES DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2593437 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2501895 | HEALTHY START INIT 8/98 | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2560866 | CPBC MASTER AGREEMENT | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2516778 | FIDUCIARY SERVICES | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2538658 | HEALTHY START INITIATIVE PROGRAM | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2556341 | FIDUCIARY SERVICES FOR LEAD FREE DETROIT | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2537516 | CPBC MASTER CONTRACT | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2501527 | EPSDT (HEALTHY KIDS) | NO DEPARTMENT INDICATED |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2625403 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2522514 | HEALTHY START INITIATIVE | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2507951 | HIV EMERGENCY RELIEF 2/00 | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2501918 | 25 STD CONTROL 9-98 AND 9-99 | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2501498 | HOPWA-PERSONS W/AIDS HSG | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2505868 | 25 STD & TB PHYSICIAN SERVICES | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2502007 | STD & TB PYHSICIAN | NO DEPARTMENT INDICATED |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2536778 | FETAL INFANT MORTALITY REVIEW GRANT | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2516123 | EPSDT ( HEALTHY KIDS) | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2528888 | SEMHA - CCA ADMINISTRATION | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2538739 | HIV/AIDS PROJECT CPO | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2665698 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2587750 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2506174 | 25 TB/HIV CONTROL PROGRAM - 12/99 | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2510504 | LEAD FREE DETROIT PROJECT | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2581401 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2504657 | FISCAL MANAGEMENT SERVICES | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2614575 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2612915 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2619300 | | HEALTH DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2538646 | REFUGEE HEALTH SCREENING PROGRAM | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2613498 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2571721 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2766781 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2766314 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2793186 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2770373 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2753985 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2761660 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2788671 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2755765 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2784430 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2799776 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2796870 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2797934 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2797936 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2624694 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2799792 | | HEALTH DEPARTMENT |
| SOUTHEASTERN MICHIGAN HEALTH | 8092 | 2776660 | | HEALTH DEPARTMENT |
| SOUTHWEST COUNSELING | 1000589 | 2549618 | CAREER INITIATIVES CENTER PROJECT | HUMAN SERVICES DEPARTMENT |
| SOUTHWEST COUNSELING | 1000589 | 2593318 | | FINANCE DEPARTMENT |
| SOUTHWEST DETROIT BUSINESS ASSOCIATION | 19640 | 2548414 | | FINANCE DEPARTMENT |
| SOUTHWEST DETROIT COMMUNITY | 1067854 | 2606819 | | FINANCE DEPARTMENT |
| SPALDING DEDECKER ASSOCIATES INC | 1427 | 2632652 | | RECREATION DEPARTMENT |
| SPEC ASSOCIATES | 19262 | 2765376 | | HUMAN SERVICES DEPARTMENT |
| SPECTRUM HUMAN SERVICES | 20301 | 2501508 | SUBSTANCE ABUSE COORDINATION AGENCY | NO DEPARTMENT INDICATED |
| SPIEGEL & MCDIARMID | 19669 | 2501813 | LEGAL SERVICES | PUBLIC LIGHTING DEPARTMENT |
| ST GREGORY COMMUNITY CENTER | 16937 | 2511397 | P&DD PUBLIC SERVICE | FINANCE DEPARTMENT |
| ST PATRICKS SENIOR CENTER INC | 12493 | 2502481 | SENIOR CITIZENS MEAL | HEALTH DEPARTMENT |
| ST REGIS DETROIT PARTNERS LLC | 1102961 | 2770016 | | POLICE DEPARTMENT |
| STAR CENTERS INC | 1003699 | 2501619 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| STELLA B SEIDEN | 2398 | 2502097 | | NO DEPARTMENT INDICATED |
| STONE & WEBSTER MICHIGAN INC | 8561 | 2500914 | MISTERSKY PWR PLANT CONSULTING | PUBLIC LIGHTING DEPARTMENT |
| STRATEGIC STAFFING SOLUTIONS | 17268 | 2620837 | | NON-DEPARTMENTAL |
| STRATEGIC STAFFING SOLUTIONS | 17268 | 2767687 | CONTRACT FOR PROFESSIONAL SERVICES | INFORMATION TECHNOLOGY SERVICES |
| STRATEGIC STAFFING SOLUTIONS | 17268 | 2681666 | | INFORMATION TECHNOLOGY SERVICES |
| STRATEGIC STAFFING SOLUTIONS | 17268 | 2554729 | 2001/2002 CONTRACTUAL RESOURCES | INFORMATION TECHNOLOGY SERVICES |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| STRATEGIC STAFFING SOLUTIONS | 17268 | 2643900 | | INFORMATION TECHNOLOGY SERVICES |
| STROHL SYSTEMS GROUP INC | 19599 | 2514946 | 970259-COMPUTER - SOFTWARE LICENSE | INFORMATION TECHNOLOGY SERVICES |
| STS CONSULTANTS LTD | 1027626 | 2619993 | | RECREATION DEPARTMENT |
| SWORD SOLUTIONS INC | 1075932 | 2634531 | | HEALTH DEPARTMENT |
| SYNC TECHNOLOGIES INC | 1025602 | 2643904 | | INFORMATION TECHNOLOGY SERVICES |
| SYNC TECHNOLOGIES INC | 1025602 | 2681667 | | INFORMATION TECHNOLOGY SERVICES |
| SYNC TECHNOLOGIES INC | 1025602 | 2804856 | | HUMAN SERVICES DEPARTMENT |
| SYNCH SOLUTIONS | 1102866 | 2768084 | CONTRACT FOR TECHNOLOGY RESOURCES | INFORMATION TECHNOLOGY SERVICES |
| SYSTEMS CONSULTING GROUP LLC | 1021802 | 2537205 | CONSULTANT SERVICES | DEPARTMENT OF TRANSPORTATION |
| T & T BUILDERS | 1025258 | 2544439 | HOME WEATHERIZATION | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2524579 | WEATHERIZATION PROGRAM | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2525183 | | FINANCE DEPARTMENT |
| T & T BUILDERS | 1025258 | 2672030 | | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2607322 | | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2789080 | | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2732569 | | HUMAN SERVICES DEPARTMENT |
| T & T BUILDERS | 1025258 | 2761175 | | HUMAN SERVICES DEPARTMENT |
| TARA TUOMAALA | 1047262 | 2569166 | | CULTURAL AFFAIRS DEPARTMENT |
| TC SIMMONS VISITING MINISTRY | 18571 | 2510152 | SHELTER AND SERVICE | FINANCE DEPARTMENT |
| TECH TOWN | 1107416 | 2807786 | | HUMAN SERVICES DEPARTMENT |
| TEI ENVIRONMENTAL SOLUTIONS LLC | 1109309 | 2548181 | (UNIROYAL) INTERIM RESPONSE ACTIVITIES FOR EAST JEFFERSON AT BELLE ISLE | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| TEI ENVIRONMENTAL SOLUTIONS LLC | 1109309 | 2563252 | BROWNFIELD SAP PHASE I AND PHASE II | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| TETRA TECH MPS | 1030048 | 2633203 | | DEPARTMENT OF PUBLIC WORKS |
| THE ARTS PLACE | 20040 | 2643815 | | RECREATION DEPARTMENT |
| THE BARTECH GROUP | 1036576 | 2681675 | | INFORMATION TECHNOLOGY SERVICES |
| THE BARTECH GROUP | 1036576 | 2643893 | | INFORMATION TECHNOLOGY SERVICES |
| THERMO JARRELL ASH CORP | 23280 | 2502432 | MAINTENANCE | FINANCE DEPARTMENT |
| THOMAS E MARSHALL PC | 17881 | 2511456 | SHAUN NEAL, ET AL V CITY OF DETROIT, ET AL | LAW DEPARTMENT |
| THOMAS E MARSHALL PC | 17881 | 2513521 | LIGENS D. MOORE V CITY OF DETROIT | LAW DEPARTMENT |
| THOMAS J WALSH APPRAISAL CO | 20198 | 2502095 | CASINO SITE APPRAISER | LAW DEPARTMENT |
| TIBURON INC | 1072420 | 2614989 | | POLICE DEPARTMENT |
| TIBURON INC | 1072420 | 2637943 | | POLICE DEPARTMENT |
| TILLMAN & TILLMAN PC | 1018624 | 2515016 | WILLIAM GRAHAM V CITY/MANSON | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2562545 | LEGAL SERVICES: LYNN/BEAUCHAMP V CITY | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2544381 | RYAN LACKIE V CITY OF DETROIT/FULKS | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2632190 | | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2534965 | ANDREOS COOPER  V CITY | LAW DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| TIMMIS & INMAN LLP | 19998 | 2562570 | LEGAL SERVICES | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2508654 | SHANNON L. TROMEUR V JULIUS LIGE | HEALTH DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2502450 | LEGAL SERVICES: WILLIAM BURKES V CITY | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2544404 | TITO BURLEIGH V CITY/WILLIAMS | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2508661 | LEGAL SERVICES: TUCKER V CITY OF DETROIT | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2562575 | HENRY BROWN V CITY/JULIUS TATE | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2562563 | LEGAL SERVICES | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2544430 | TOMMIE THOMAS V CITY, ET AL | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2562559 | TORI CARTER, ET AL V CITY | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2502452 | LEGAL SERVICES | LAW DEPARTMENT |
| TIMMIS & INMAN LLP | 19998 | 2544420 | RUPERT/HAYES/BOWERS V BROWN | LAW DEPARTMENT |
| TISEO BROTHERS INC | 18296 | 2501389 | VIRGINIA PARK PAVING | NO DEPARTMENT INDICATED |
| TODD PHILLIPS CHILDRENS HOME | 16998 | 2501778 |  | NO DEPARTMENT INDICATED |
| TRAVELLERS AID SOCIETY OF DET | 15890 | 2501964 | EMERGENCY SHELTER | HUMAN SERVICES DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2563101 | WORKFIRST/WELFARE TO WORK | EMPLOYMENT AND TRAINING DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2550329 | OPERATION FAST BREAK/ PAL | EMPLOYMENT AND TRAINING DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2696181 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2803891 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2778474 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| TWW & ASSOCIATES INC | 15821 | 2806255 |  | WORKFORCE DEVELOPMENT DEPARTMENT |
| TXU ENERGY SERVICE | 1021990 | 2525960 | CITY WIDE NATURAL GAS PURCHASE | PUBLIC LIGHTING DEPARTMENT |
| UNIGLOBE CONSTRUCTION CO | 19275 | 2793402 |  | HUMAN SERVICES DEPARTMENT |
| UNITED COMMUNITY HOUSING COALITION | 9812 | 2510128 | HOMELESS ASSISTANCE PROGRAM | FINANCE DEPARTMENT |
| UNIVERSAL SYSTEM TECHNOLOGIES INC | 20223 | 2589037 |  | INFORMATION TECHNOLOGY SERVICES |
| UNIVERSAL SYSTEM TECHNOLOGIES INC | 20223 | 2768088 | PROFESSIONAL SERVICES CONTRACT | INFORMATION TECHNOLOGY SERVICES |
| UNIVERSITY FAMILY PHYSICIANS | 1045603 | 2541597 | ENV: MEDICAL MONITORING SERVICES | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| UNIVERSITY OF DETROIT MERCY | 1051358 | 2722921 |  | RECREATION DEPARTMENT |
| UNIVERSITY OF MICHIGAN | 8466 | 2500990 | EMERGENCY RESPONSE PLANNING | WATER DEPARTMENT |
| UNIVERSITY PHYSICIAN GROUP | 1093137 | 2799075 |  | HEALTH DEPARTMENT |
| UNIVERSITY WOMEN'S CARE | 1030044 | 2530120 |  | HEALTH DEPARTMENT |
| UNIVERSITY WOMEN'S CARE | 1030044 | 2595456 |  | HEALTH DEPARTMENT |
| UNIVERSITY WOMEN'S CARE | 1030044 | 2567920 |  | HEALTH DEPARTMENT |
| UNIVERSITY WOMEN'S CARE | 1030044 | 2614558 |  | HEALTH DEPARTMENT |
| UNLIMITED SOLUTIONS INC | 17906 | 2502050 | PROGRAMMING CODING | INFORMATION TECHNOLOGY SERVICES |
| UNLIMITED SOLUTIONS INC | 17906 | 2554534 | 2001/2001 CONTRACTUAL RESOURCES | INFORMATION TECHNOLOGY SERVICES |
| UPTOWN LAND DEVELOPMENT CORP | 18833 | 2501758 |  | EMPLOYMENT AND TRAINING DEPARTMENT |
| URBAN MANAGEMENT CORP | 20310 | 2502173 | FLEET MAINTENANCE SERVICES | DEPARTMENT OF PUBLIC WORKS |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| URBANWERKS LLC | 1083053 | 2664787 | | RECREATION DEPARTMENT |
| URS CORPORATION | 1052537 | 2607949 | | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| URSO PALMER & ROSS PC | 1048532 | 2574335 | | CITY COUNCIL |
| U-SNAP BAC NON-PROFIT CORP | 20364 | 2506589 | PUBLIC SERVICE AND REHAB | FINANCE DEPARTMENT |
| U-SNAP BAC NON-PROFIT CORP | 20364 | 2584237 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| U-SNAP BAC NON-PROFIT CORP | 20364 | 2501597 | SITE IMPROVEMENTS HOUSING | NO DEPARTMENT INDICATED |
| V W PROPERTIES | 1084250 | 2531882 | | POLICE DEPARTMENT |
| V W PROPERTIES | 1084250 | 2509482 | | POLICE DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2505192 | LEGAL SERVICES: DEWOLF, ET AL V CITY | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2521182 | LYNN/BEAUCHAMP V CITY/RADFORD | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2505073 | LEGAL SERVICES | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2539172 | LEGAL SERVICES | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2515553 | LEGAL SERVICES: KIMBER V CITY/ADUROJA | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2521167 | LEGAL SERVICES: LONGSTREET V JORDAN | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2536310 | LEGAL SERVICES | LAW DEPARTMENT |
| VAN OVERBEKE & ASSOCIATES | 20121 | 2511869 | LEGAL SERVICES | LAW DEPARTMENT |
| VAN SCOYOC ASSOCIATES INC | 1070940 | 2617193 | | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2594482 | | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2563075 | BLUE CROSS/BLUE SHIELD RESERVE FUND | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2544823 | LEGAL SERVICES | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2546318 | LEGAL SERVICES | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2591271 | | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2563068 | TOYIA MOODY/STEPHANIE BENNETT V CITY | LAW DEPARTMENT |
| VANOVERBEKE MICHAUD & TIMMONY P C | 1026688 | 2632746 | | LAW DEPARTMENT |
| VARNUM RIDDERING SCHMIDT | 17517 | 2502367 | TELECOMMUNICATIONS/FIBER OPTICS | LAW DEPARTMENT |
| VARNUM RIDDERING SCHMIDT | 17517 | 2514143 | LEGAL SERVICES | LAW DEPARTMENT |
| VENABLE BAETJER HOWARD LLP | 20054 | 2503723 | PROFESSIONAL SERVICES | CITY COUNCIL |
| VIRCHOW KRAUSE & CO LLP | 1099691 | 2746850 | | FINANCE DEPARTMENT |
| VIRGINIA PARK CITIZENS SERVICE | 16867 | 2719711 | | DEPARTMENT OF TRANSPORTATION |
| VISION INFORMATION TECHNOLOGIES | 1011855 | 2542788 | WEB DEVELOPMENT | INFORMATION TECHNOLOGY SERVICES |
| VOICE PRINT INTERNATIONAL INC | 1045791 | 2816063 | MAINTENANCE FOR VOICE SERVICES | POLICE DEPARTMENT |
| VORHIES ESTATE INC | 1005399 | 2517975 | | HUMAN SERVICES DEPARTMENT |
| VS VISUAL STATEMENT INC | 1076618 | 2796124 | | POLICE DEPARTMENT |
| W D LEE CENTER FOR LIFE MANAGEMENT | 1003687 | 2502211 | MEDICAID SUBSTANCE ABUSE | NO DEPARTMENT INDICATED |
| W-3 CONSTRUCTION COMPANY | 1022302 | 2796096 | LIGHTING IMPROVEMENTS | RECREATION DEPARTMENT |
| WALBRIDGE-ALDINGER CO | 2782 | 2588907 | | WATER DEPARTMENT |
| WALBRIDGE-ALDINGER CO | 2782 | 2529880 | PRIMARY CLARIFIER NUMBERS 17 AND 18 | SEWERAGE DEPARTMENT |
| WALBRIDGE-ALDINGER CO | 2782 | 2517999 | SECONDARY CLARIFIER IMPROVEMENTS | SEWERAGE DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| WALSH CONSTRUCTION | 1003706 | 2540999 | CONNER CREEK PILOT CSO CONTROL FACILITY | SEWERAGE DEPARTMENT |
| WARM TRAINING CENTER | 1099138 | 2798140 | | HUMAN SERVICES DEPARTMENT |
| WARM TRAINING CENTER | 1099138 | 2761360 | | HUMAN SERVICES DEPARTMENT |
| WARM TRAINING PROGRAM INC | 1001814 | 2637413 | | HUMAN SERVICES DEPARTMENT |
| WARM TRAINING PROGRAM INC | 1001814 | 2592885 | | FINANCE DEPARTMENT |
| WARM TRAINING PROGRAM INC | 1001814 | 2746897 | | HUMAN SERVICES DEPARTMENT |
| WARM TRAINING PROGRAM INC | 1001814 | 2808870 | | HUMAN SERVICES DEPARTMENT |
| WARM TRAINING PROGRAM INC | 1001814 | 2706004 | | HUMAN SERVICES DEPARTMENT |
| WARREN CONNER DEVELOPMENT | 1015379 | 2515838 | WARREN CONNER SA FYE 9/99 | HEALTH DEPARTMENT |
| WARREN CONNER DEVELOPMENT COALITIONS | 1015379 | 2736044 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| WAYNE COUNTY | 18789 | 2560623 | WF/WTW JOB SEARCH AND JOB PLACEMENT | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE COUNTY | 18789 | 2574696 | | POLICE DEPARTMENT |
| WAYNE COUNTY | 18789 | 2772891 | | POLICE DEPARTMENT |
| WAYNE COUNTY | - | | PURCHASE AGREEMENT, DATED JULY 28, 1976 BETWEEN THE CITY AND COUNTY OF WAYNE | NO DEPARTMENT INDICATED |
| WAYNE COUNTY COMMUNITY COLLEGE | 1008933 | 2782908 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| WAYNE COUNTY COMMUNITY COLLEGE | 1008933 | 2782906 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2539793 | | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2539816 | PREVENTATIVE SERVICES | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2539788 | TARGET CITIES | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2539821 | PREVENTATIVE SERVICES | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2516330 | WSU - UNIVERSITY CONSORTIUM | HUMAN RESOURCES DEPARTMENT |
| WAYNE STATE UNIVERSITY | 1015979 | 2539807 | PREVENTATIVE SERVICES | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2560543 | CITY/UNIVERSITY CONSORTIUM | HUMAN RESOURCES DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2532723 | WIA TITLE I OFFICE AUTOMATION TRAINING | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2501980 | TITLE III OFFICE AUTOMATION TRAINING | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2571280 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2552859 | OFFICE AUTOMATION & WORD PROCESSING | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2519218 | WORD PROCESS TRAINING | EMPLOYMENT AND TRAINING DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2611249 | | POLICE DEPARTMENT |
| WAYNE STATE UNIVERSITY | 3116 | 2501174 | | NO DEPARTMENT INDICATED |
| WAYNE STATE UNIVERSITY | 3116 | 2765357 | | CITY COUNCIL |
| WAYNE STATE UNIVERSITY | 3116 | 2797492 | | HEALTH DEPARTMENT |
| WAYNE STATE UNIVERSITY COLLEGE | 19759 | 2502190 | | PLANNING AND DEVELOPMENT DEPARTMENT |
| WAYNE STATE UNIVERSITY COLLEGE | 19759 | 2500873 | EZ PROGRAM OPERATIONS | NO DEPARTMENT INDICATED |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| WCI CONTRACTORS | 17607 | 2681202 | | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2733883 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2762089 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2708713 | | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2731182 | | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2762091 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2729538 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2785381 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WCI CONTRACTORS | 17607 | 2799443 | CONSTRUCTION CONTRACT | RECREATION DEPARTMENT |
| WE CARE DEVELOPMENT CORP | 20361 | 2627183 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| WEISS CONSTRUCTION CO | 16586 | 2500908 | DWS-805 SUBURBAN METER AUTOMATION | WATER DEPARTMENT |
| WEISS CONSTRUCTION CO | 16586 | 2501482 | DWS-800 SUBURBAN WATER METERS | WATER DEPARTMENT |
| WELLSPRING | 18110 | 2597175 | | FINANCE DEPARTMENT |
| WEST DETROIT INTERFAITH | 1044949 | 2554192 | | FINANCE DEPARTMENT |
| WESTFIELD DETROIT LLC | 1021039 | 2517679 | | HUMAN SERVICES DEPARTMENT |
| WESTIN ENGINEERING INC | 14468 | 2767695 | PROFESSIONAL SERVICES CONTRACT | INFORMATION TECHNOLOGY SERVICES |
| WILDWOOD RANCH | 1012803 | 2547128 | DETROIT RESCUE MISSION | HUMAN SERVICES DEPARTMENT |
| WILDWOOD RANCH | 1012803 | 2516691 | SUMMER CAMPERSHIPS TO URBAN YOUTHS | HUMAN SERVICES DEPARTMENT |
| WILLA R WALKER LLC | 1071151 | 2618732 | | CULTURAL AFFAIRS DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2501454 | GRAIMARK REHAB PROJ - FICS #79019 | PLANNING AND DEVELOPMENT DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2501725 | ENVIRONMENTAL STATUTES & REGULATIONS | LAW DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2505940 | LEGAL SERVICES-ENVIRONMENTAL | PLANNING AND DEVELOPMENT DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2500981 | FICS #68652-MID-CITY REVITALIZATION | PLANNING AND DEVELOPMENT DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2559971 | ERNEST MONROE V CITY OF DETROIT | WATER DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2623874 | | LAW DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2501539 | CASINO DEVELOPMENT PROJECT | LAW DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2553947 | BRUSH PARK PROJECT | PLANNING AND DEVELOPMENT DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2641654 | LEGAL SERVICES | LAW DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2593326 | LEGAL SERVICES | ENVIRONMENTAL AFFAIRS DEPARTMENT |
| WILLIAMS ACOSTA PLLC | 1049952 | 2512512 | LEGAL SERVICES | LAW DEPARTMENT |
| WILLIE L MAYO CPA | 1021915 | 2518939 | AUDIT TRAINING | HUMAN SERVICES DEPARTMENT |
| WILLIE MCCORMICK ASSOCIATES INC | 1001824 | 2618093 | | WATER DEPARTMENT |
| WILLIE MCCORMICK ASSOCIATES INC | 1001824 | 2679478 | | WATER DEPARTMENT |
| WILLIE MCCORMICK ASSOCIATES INC | 1001824 | 2566621 | | WATER DEPARTMENT |
| WILLIE MCCORMICK ASSOCIATES INC | 1001824 | 2673433 | | WATER DEPARTMENT |
| WINDHAM REALTY GROUP INC | 17474 | 2500986 | VIC PARK MANAGER | PLANNING AND DEVELOPMENT DEPARTMENT |
| WOMENS JUSTICE CENTER | 14689 | 2508100 | | HUMAN SERVICES DEPARTMENT |

| Name of Counterparty | Vendor # | Contract # | Description | City Department |
|---|---|---|---|---|
| WOMENS JUSTICE CENTER/MY SISTER PLACE | 1031434 | 2535491 | DOMESTIC VIOLENCE SERVICES | POLICE DEPARTMENT |
| WORKBRAIN INC | 1087022 | 268977 | | NON-DEPARTMENTAL |
| WTF COMPANY LLC | 1009825 | 2509611 | | POLICE DEPARTMENT |
| XEROX CORPORATION | 20143 | 2527583 | PHOTOCOPIER MAINTENANCE | COMMUNICATIONS AND CREATIVE SERVICES DEPARTMENT |
| YMCA OF METRO DETROIT | 17203 | 2502285 | PUBLIC FACILITY REHABILITATION | NO DEPARTMENT INDICATED |
| YMCA OF METROPOLITAN DETROIT | 1071155 | 2801079 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| YOUNG DETROIT BUILDERS | 1008086 | 2516595 | | EMPLOYMENT AND TRAINING DEPARTMENT |
| YOUNG DETROIT BUILDERS | 1008086 | 2797765 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| YOUNG DETROIT BUILDERS | 1008086 | 2775343 | | HUMAN SERVICES DEPARTMENT |
| YOUNG DETROIT BUILDERS | 1008086 | 2743797 | | HUMAN SERVICES DEPARTMENT |
| YOUNG DETROIT BUILDERS | 1008086 | 2803602 | | HUMAN SERVICES DEPARTMENT |
| YOUTH CONNECTION | 1054883 | 2801091 | | WORKFORCE DEVELOPMENT DEPARTMENT |
| YOUTH LINKS USA | 1044013 | 2552463 | OPERATION FAST BREAK | EMPLOYMENT AND TRAINING DEPARTMENT |
| YWCA INTERIM HOUSE | 2143 | 2535474 | SERVICES WITH DOMESTIC VIOLENCE UNIT | POLICE DEPARTMENT |
| YWCA INTERIM HOUSE | 2143 | 2508609 | ESG CONTRACT FICS # 078503 | FINANCE DEPARTMENT |
| ZETA STORK'S NEST FOUNDATION | 13210 | 2508767 | NOF PUBLIC SERVICE CONTRACT | FINANCE DEPARTMENT |

All collective bargaining agreements that had expired prior to confirmation to the extent that they purported to, or would be determined by applicable law to, provide continuing contractual benefits to employees or former employees of the City

**EXHIBIT III.D.2**

RETAINED CAUSES OF ACTION

-3-
13-53846-tjt    Doc 9048-5    Filed 09/16/15    Entered 09/16/15 13:00:52    Page 122 of
173
13-53846-tjt    Doc 8045-10    Filed 10/22/14    Entered 10/22/14 03:48:19    Page 123 of
1257

# EXHIBIT III.D.2

Reference is made to Section III.D.2 of the Plan. Capitalized terms used but not defined herein shall have the meanings given to them in Section I.A of the Plan.

Without limiting any relevant provision of the Plan (including Section III.D.2 thereof), the City expressly reserves and retains, and may enforce, any and all of its rights with respect to: (i) Causes of Action related to the City's Municipal Parking Department, (ii) Causes of Action related to the City's Finance Department, (iii) Causes of Action related to the City's Airport Department, (iv) Causes of Action related to the City's Public Lighting Department, (v) Causes of Action related to the City's Planning and Development Department, (vi) Causes of Action related to the City's Building Safety, Engineering and Environmental Department, (vii) Causes of Action related to the City's Water and Sewerage Department, (viii) Causes of Action related to the City's Department of Public Works, (ix) Causes of Action related to the City's Police Department, (x) Causes of Action related to the City's Fire Department, (xi) Causes of Action related to the City's Assessment Division, (xii) Causes of Action related to the City's Law Department, (xiii) Causes of Action related to any other City department, (xiv) Causes of Action against all litigation parties listed on Schedule H of the Second Amended List of Creditors and Claims [Docket No. 1059] and (xv) the Causes of Action in the following proceedings:

1. City of Detroit v. MTZ Incorporated, No. 05-121906, Mich. 36th Dist. Ct.;

2. City of Detroit v. Big Daddy's Soul Food, No. 04-109681, Mich. 36th Dist. Ct.;

3. City of Detroit v. Louie's Foods, Inc., No. 05-115153, Mich. 36th Dist. Ct.;

4. City of Detroit v. Robinson Group Home and Rodney Robinson, No. 07-125747, Mich. 36th Dist. Ct.;

5. City of Detroit v. Arthur R. Jett and Mildred S. Jett, No. 97-713173, Mich. 36th Dist. Ct.;

6. City of Detroit v. Celia Y. Collins, No. 02-107182, Mich. 36th Dist. Ct.;

7. City of Detroit v. Anthony Gillam & Kimberly Gillam, No. 01-113119, Mich. 36th Dist. Ct.;

8. City of Detroit v. Caesar Austin and Evelyn Austin, No. 02-119500, Mich. 36th Dist. Ct.;

9. City of Detroit v. Means Construction, Inc., Eric J. Means and Ted Smith, No. 03-105353, Mich. 36th Dist. Ct.;

10. City of Detroit v. Eick B. Jeter and Crystal B. Jeter, No. 03-146312, Mich. 36th Dist. Ct.;

11. City of Detroit v. Albert Green and Loretta Green, No. 06-102852, Mich. 36th Dist. Ct.;

12. City of Detroit v. Marlon Currie, No. 04-110183-GC, Mich. 36th Dist. Ct.;

13. City of Detroit v. Tamara Smith and James Smith, No. 04-114151, Mich. 36th Dist. Ct.;

14. City of Detroit v. Juan Rosado and Lori Rosado, No. 04-420691, Mich. 36th Dist. Ct.;

15. City of Detroit v. Victor Barnes and Gwendolyn Barnes, No. 04-130939, Mich. 36th Dist. Ct.;

16. City of Detroit v. Charles Selmon, No.04-132032-GC, Mich. 36th Dist. Ct.;

17. City of Detroit v. Gregory Webb, No. 04-139195, Mich. 36th Dist. Ct.;

18. City of Detroit v. Alden M. Jarvis and Veronica V. Jarvis, No. 04-136449, Mich. 36th Dist. Ct.;

19. City of Detroit v. Lisa D. Bradley, No. 04-136448, Mich. 36th Dist. Ct.;

20. City of Detroit v. Jarrick F. Goldsby, No. 04-145046, Mich. 36th Dist. Ct.;

21. City of Detroit v. Edgar Butler & Quensetta Butler, No. 04-145049-GC, Mich. 36th Dist. Ct.;

22. City of Detroit v. Michael Marshall and Sheila Marshall, No. 04-415055, Mich. 36th Dist. Ct.;

23. City of Detroit v. Dwight Riddell, Mich. 36th Dist. Ct.;

24. City of Detroit v. Frank Wilson and Edwina J. Wilson, No. 04-142987-GC, Mich. 36th Dist. Ct.;

25. City of Detroit v. Sharon F. Sexton, No. 05-103709, Mich. 36th Dist. Ct.;

26. City of Detroit v. John W. & Winnie M. Plummer, No. 05-108201-GC, Mich. 36th Dist. Ct.;

27. City of Detroit v. Leon Jackson and Harvard Square Center, Mich. 36th Dist. Ct.;

28. City of Detroit v. Michael Franke, No. 05-110302-GC, Mich. 36th Dist. Ct.;

29. City of Detroit v. Caesar Austin and Evelyn Austin, No. 05-116751, Mich. 36th Dist. Ct.;

30. City of Detroit v. Steven P. Morrow and Sophia Morrow, No. 05-121904, Mich. 36th Dist. Ct.;

31. City of Detroit v. Brian L. Reese and Deborah H. Reese, No. 07-121144, Mich. 36th Dist. Ct.;

32. City of Detroit v. Lori Rosado, No. 06-105264, Mich. 36th Dist. Ct.;

33. City of Detroit v. James M. Woodget, No. 08-124280, Mich. 36th Dist. Ct.;

34. City of Detroit v. Calvin L. Hall and Juanda W. Hall, No. 06-111621, Mich. 36th Dist. Ct.;

35. City of Detroit v. Stanley T. and Linda A. Bridges, Mich. 36th Dist. Ct.;

36. City of Detroit v. Nardin Park Recovery Center, No. 07-714583, Mich. 36th Dist. Ct.;

37. City of Detroit v. Jimmie Maddix and Carolyn Maddix, No. 08-137874, Mich. 36th Dist. Ct.;

38. City of Detroit v. Adrian Austin, No. 09-123096, Mich. 36th Dist. Ct.;

39. City of Detroit v. Betty Warmack, No. 09-123865, Mich. 36th Dist. Ct.;

40. City of Detroit v. Caeser Austin and Evelyn Austin, No. 10-106506, Mich. 36th Dist. Ct.;

41. City of Detroit v. Charles & Cheryl Lasley (Moss), No. 09-130913, Mich. 36th Dist. Ct.;

42. City of Detroit v. Sterling J. Brown and Mary Lisa Brown, No. 09-131658, Mich. 36th Dist. Ct.;

43. City of Detroit v. Carter Stevenson and Barbara Stevenson, No. 10-106505, Mich. 36th Dist. Ct.;

44. City of Detroit v. Jacqueline Murry, Mich. 36th Dist. Ct.;

45. City of Detroit v. James Gulley and Phyllis Gulley, Mich. 36th Dist. Ct.;

46. City of Detroit v. John Reed, No.10-124047, Mich. 36th Dist. Ct.;

47. City of Detroit v. Coleman Reed and Laurine Reed, No. 11-118847-GC, Mich. 36th Dist. Ct.;

48. City of Detroit v. Ernest Gardner, No. 11-117750, Mich. 36th Dist. Ct.;

49. City of Detroit v. Ronald Carrington and Delores Carrington, No. 12-109805, Mich. 36th Dist. Ct.;

50. City of Detroit v. Lawrence Harris, Mich. 36th Dist. Ct.;

51. City of Detroit v. Raymond McMurrian, No. 12-117043, Mich. 36th Dist. Ct.;

52. City of Detroit v. Luis Arroyo and Braka Higgins a.k.a. Arroyo, Mich. 36th Dist. Ct.;

53. City of Detroit v. Adrian Austin, Mich. 36th Dist. Ct.;

54. City of Detroit v. Joel Ruffin and Willma Orange-Ruffin, Mich. 36th Dist. Ct.;

55. City of Detroit v. Paulette Cochran, Mich. 36th Dist. Ct.;

56. City of Detroit v. April Kincaid, No. 12-113636, Mich. 36th Dist. Ct.;

57. City of Detroit v. James & Adino, No. 14-10436, Mich. 36th Dist. Ct.;

58. City of Detroit v. Dennis Denmark & Elana Denmark, No. 13-102803, Mich. 36th Dist. Ct.;

59. City of Detroit v. Clarinda Barnett-Harrison, Mich. 36th Dist. Ct.;

60. City of Detroit v. Jason Jordan, Mich. 36th Dist. Ct.;

61. City of Detroit v. Mondry Hardware & Mondrey, Louis, Mich. 36th Dist. Ct.;

62. City of Detroit v. Roland, Lisa, Mich. 36th Dist. Ct.;

63. City of Detroit v. Lazana, Deandre & Natalie, No. 12-123542-GC, Mich. 36th Dist. Ct.;

64. City of Detroit v. William Landrum and Caroline Landrum, No. 13-119468, Mich. 36th Dist. Ct.;

65. City of Detroit v. James Bates and Pricilla Bates, No. 13-102805, Mich. 36th Dist. Ct.;

66. City of Detroit v. Coutia Ramsey, No. 13-102804, Mich. 36th Dist. Ct.;

67. City of Detroit v. Ann Fletcher, No. 13-108163, Mich. 36th Dist. Ct.;

68. City of Detroit v. Jackie Hunter and Mary Hunter, Mich. 36th Dist. Ct.;

69. City of Detroit v. Monica Gordon, Mich. 36th Dist. Ct.;

70. City of Detroit v. Patricia Brown, No. 13-119470, Mich. 36th Dist. Ct.;

CHI-1928932v1
-3-
13-53846-tjt   Doc 10485-5   Filed 09/12/15   Entered 09/12/15 13:00:52   Page 125 of 1260
13-53846-tjt   Doc 10485-5   Filed 10/22/15   Entered 09/12/15 03:48:29   Page 125 of 173

71. City of Detroit v. Ronald Coleman & Alice Coleman, No. 13-117682 GC, Mich. 36th Dist. Ct.;

72. City of Detroit v. Rennilda Graham, No. 13-119472, Mich. 36th Dist. Ct.;

73. City of Detroit v. Kamin Davis & Tana Davis, Mich. 36th Dist. Ct.;

74. City of Detroit v. Elaine Ivery, Mich. 36th Dist. Ct.;

75. City of Detroit v. Eric Smith, No. 13-122869, Mich. 36th Dist. Ct.;

76. City of Detroit v. Mary Waters, Mich. 36th Dist. Ct.;

77. City of Detroit v. Todd Philson, Mich. 36th Dist. Ct.;

78. City of Detroit v. Kenneth Holms, Sr., Mich. 36th Dist. Ct.;

79. City of Detroit v. Jack Kene Obi, No. 05-104554-GC, Mich. 36th Dist. Ct.;

80. City of Detroit v. Brandy Marie Duke aka Brandy Niang, No. 08-124279, Mich. 36th Dist. Ct.;

81. City of Detroit v. Cevonia Cherise McClure, No. 07-110343, Mich. 36th Dist. Ct.;

82. City of Detroit v. Henry Ricardo Smith, No. 07-2093, Mich. 36th Dist. Ct.;

83. City of Detroit v. Abdul Raheem Rashed, No. 07-1556323, Mich. 36th Dist. Ct.;

84. City of Detroit v. Milton Lee Newman, No. 07-121142, Mich. 36th Dist. Ct.;

85. City of Detroit v. Andre Williams, Mich. 36th Dist. Ct.;

86. City of Detroit v. Helen Roberts, Mich. 36th Dist. Ct.;

87. City of Detroit v. Terry Darnell Jackson , No. 06-119826-GC, Mich. 36th Dist. Ct.;

88. City of Detroit v. Bushierra McDonald, No. 07-132889, Mich. 36th Dist. Ct.;

89. City of Detroit v. Denna Belton, No. 06-160876, Mich. 36th Dist. Ct.;

90. City of Detroit v. Georgianna Colston , No. 07-132886, Mich. 36th Dist. Ct.;

91. City of Detroit v. Terrance Omar Ford, No. 07-144864, Mich. 36th Dist. Ct.;

92. City of Detroit v. Jessie Al McQuarter, No. 07-127234, Mich. 36th Dist. Ct.;

93. City of Detroit v. Kevin Labrell Howell, No. 07-127238, Mich. 36th Dist. Ct.;

94. City of Detroit v. Deconte Jerdo, Mich. 36th Dist. Ct.;

95. City of Detroit v. Sheila Marie-Maxwell Coleman, Mich. 36th Dist. Ct.;

96. City of Detroit v. Jessie Crutcher and Adrienne Smith, No. 08-133795, Mich. 36th Dist. Ct.;

97. City of Detroit v. Joachba D. Hammound-Grace, Mich. 36th Dist. Ct.;

98. City of Detroit v. Lamont Street, Mich. 36th Dist. Ct.;

99. City of Detroit v. William F. & Constance Harris, No. 08-124278, Mich. 36th Dist. Ct.;

100. City of Detroit v. Shealtiel N. Moore, Mich. 36th Dist. Ct.;

101. City of Detroit v. Mary Rogers, Mich. 36th Dist. Ct.;

102. City of Detroit v. Daniel R. Tapert, Mich. 36th Dist. Ct.;

103. City of Detroit v. Dukes, Emanuel C., Mich. 36th Dist. Ct.;

104. City of Detroit v. Yolanda F. Brady, Mich. 36th Dist. Ct.;

105. City of Detroit v. Erskine Wright II, Mich. 36th Dist. Ct.;

106. City of Detroit v. Lonnie E. Coleman, Mich. 36th Dist. Ct.;

107. City of Detroit v. Calvin Meeks, III, Mich. 36th Dist. Ct.;

108. City of Detroit v. Neandue O. Nance, No. 09-11643, Mich. 36th Dist. Ct.;

109. City of Detroit v. Lula M. Smith, No. 09-119723, Mich. 36th Dist. Ct.;

110. City of Detroit v. Latasha Merriweather, No. 09-119723, Mich. 36th Dist. Ct.;

111. City of Detroit v. Tamieka L. Norris, No. 10-125151, Mich. 36th Dist. Ct.;

112. City of Detroit v. Franceksa Rodriquez, No. 10-124044, Mich. 36th Dist. Ct.;

113. City of Detroit v. Laquanya Candice, No. 08-120177-GC, Mich. 36th Dist. Ct.;

114. City of Detroit v. Latonya Katina-Foxey, No. 08-120173, Mich. 36th Dist. Ct.;

115. City of Detroit v. Raegan Carmell Sweet, No. 08-120172, Mich. 36th Dist. Ct.;

116. City of Detroit v. Oscar Cameron & Oscar G. Cameron II, Mich. 36th Dist. Ct.;

117. City of Detroit v. Macia Sherrie Stokes, No. 08-120171, Mich. 36th Dist. Ct.;

118. City of Detroit v. Angela Conley, No. 08-120174, Mich. 36th Dist. Ct.;

119. City of Detroit v. Eugene Cole & Victory Outreach Detroit, No. 07-120608-GC, Mich. 36th Dist. Ct.;

120. City of Detroit v. Kevin Dittich, No. 14-101640, Mich. 36th Dist. Ct.;

121. City of Detroit v. Morgan McCrary, Mich. 36th Dist. Ct.;

122. City of Detroit v. Twayla Lynette Larry, No. 07-120610, Mich. 36th Dist. Ct.;

123. City of Detroit v. Deandre Lamarr Falls, Mich. 36th Dist. Ct.;

124. City of Detroit v. Latonya Katina-Foxey, No. 08-120173, Mich. 36th Dist. Ct.;

125. City of Detroit v. Raegan Carmell Sweet, No. 08-120172, Mich. 36th Dist. Ct.;

126. City of Detroit v. Milton L. Newman, Mich. 36th Dist. Ct.;

127. City of Detroit v. 3843 Biddle & Scroggins, Daisy, No. 05-122123-GC, Mich. 36th Dist. Ct.;

128. City of Detroit v. Alexander Spencer, Jr., Mich. 36th Dist. Ct.;

129. City of Detroit v. Tonia Williams, Mich. 36th Dist. Ct.;

130. City of Detroit v. Mayor Rissell & Karen Russell, No. 04-113310, Mich. 36th Dist. Ct.;

131. City of Detroit v. Minnie Lee Martin, No. 99-925205, Mich. Third Judicial Cir.;

132.  City of Detroit v. Ambassador Nursing Home, Inc. aka Pembrook Nursing Center, No. 02-238630, Mich. Third Judicial Cir.;

133.  City of Detroit v. Tyrone and Janice Winfrey, Mich. 36th Dist. Ct.;

134.  City of Detroit v. Mark Kulbaba, Inc. dba Servicemaster & Mark Kulbaba, No. 03-302931, Mich. Third Judicial Cir.;

135.  City of Detroit v. Nardin Park Recovery Center, Mich. Third Judicial Cir.;

136.  City of Detroit v. Page Litho, Inc., No. 11-006743-CZ, Mich. Third Judicial Cir.;

137.  City of Detroit v. The Printing Professionals, No. 11-006745-CZ, Mich. Third Judicial Cir.;

138.  City of Detroit v. Waterman & Sons Printing Company, Inc., No. 11-007078-CZ, Mich. Third Judicial Cir.;

139.  City of Detroit v. Opus One, Mich. Third Judicial Cir.;

140.  City of Detroit v. Kyler Reamules, Mich. Third Judicial Cir.;

141.  City of Detroit v. B & J Enameling Inc. & Holtshouser, Erin & Kownacki, Sandra, Mich. Third Judicial Cir.;

142.  City of Detroit v. Jacquettier Coleman, No. 13-116327, Mich. 36th Dist. Ct.;

143.  City of Detroit v. Nardin Park Drug Abuse Center et al., No. 13-011688-CZ, Mich. Third Judicial Cir.;

144.  City of Detroit v. Sheila A. Kimbrough, No. 07-155641, Mich. 36th Dist. Ct.;

145.  City of Detroit v. Counselo Maurico, No. 07-155674, Mich. 36th Dist. Ct.;

146.  City of Detroit v. Christina Morris, No. 07-155726, Mich. 36th Dist. Ct.;

147.  DuJon Johnson v. City of Detroit; No. 12-202678, Mich. 36th Dist. Ct.;

148.  Bella Marshall, aka Bella Marshall Barden, No. 2012-777-270-DE (Probate);

149.  William S. Jordan, No. 03-41137, Bankr. E.D. Mich.;

150.  Catherine Gaskin, No. 03-67569, Bankr. E.D. Mich.;

151.  Catherine Gaskin, No. 03-41232, Bankr. E.D. Mich.;

152.  Dwayne Akra, No. 03-69349, Bankr. E.D. Mich.;

153.  Dwayne Akra, No. 00-47216, Bankr. E.D. Mich.;

154.  Diana Daniel, No. 05-56536, Bankr. E.D. Mich.;

155.  Jerry Lee Miller, No. 09-62314, Bankr. E.D. Mich.;

156.  Lyall T Hoggatt and Gwendolyn Hoggatt, No. 09-76296, Bankr. E.D. Mich.;

157.  Terri L. Sykes, No. 11-72188, Bankr. E.D. Mich.;

158.  Shanta Corporation, No. 12-43956, Bankr. E.D. Mich.;

159.  Sareta Jean Cheathem, No. 12-59435, Bankr. E.D. Mich.;

160. Belinda Rochelle Sanders, No. 12-57603, Bankr. E.D. Mich.;

161. Denise Evans Whitley, No. 14-40849, Bankr. E.D. Mich.;

162. Whitley v. City of Detroit Treasurer et al, No. 14-04131 Bankr. E.D. Mich.;

163. Kimberli Powell, No. 13-40036 (Adversary Case No. 13-04134), Bankr. E.D. Mich.;

164. Ruthea Taylor:, No. 13-41265-PJS (Adversary Case No(s) 13-04235, 13-04237 and 13-04239), Bankr. E.D. Mich.;

165. Louise Williams, No. 13-40374-MBM (Adversary Case No. 13-04215), Bankr. E.D. Mich.;

166. Dorothy Wilson, No. 13-43731-WSD (Adversary Case No. 13-04296); Bankr. E.D. Mich.;

167. Carol Lowe-Redding, No. 12-60626, Bankr. E.D. Mich.;

168. Rodney A. Bowie, No. 04-40019, Bankr. E.D. Mich.;

169. Christopher D. Baty, No. 04-54408, Bankr. E.D. Mich.;

170. Tonia Howard, No. 07-58025, Bankr. E.D. Mich.;

171. Carl Barner and Yolanda Barner, No. 07-58840, Bankr. E.D. Mich.;

172. Jerome Jenkins, No. 09-67014, Bankr. E.D. Mich.;

173. Romana Bullock v. Wayne County Treasurer, et al. Mich. 36th Dist. Ct.;

174. General Shale Brick v. City of Detroit, No. 06-44397, Mich. 36th Dist. Ct.;

175. Gloria Jean McLaurin v. Detroit Parking Violations Bureau, No. 293700, Mich. Ct. App.;

176. Dennis Lynval v. City of Detroit, No. 12-012164, Mich. 36th Dist. Ct.;

177. City of Detroit v. Mdrahi, Mohamed, No. 3-005784-CC (Condemnation);

178. City of Detroit v. True Missionary Baptist Church, No. 13-005785-CC (Condemnation);

179. City of Detroit v. True Missionary Baptist Church, No. 13-005787-CC (Condemnation);

180. City of Detroit v. True Missionary Baptist Church, No. 13-005795-CC (Condemnation);

181. City of Detroit v. True Missionary Baptist Church, No. 13-005814-CC (Condemnation);

182. City of Detroit v. Khami, Issam, et al., No. 13-005816-CC (Condemnation);

183. City of Detroit v. CE Detroit, No. 13-005820-CC (Condemnation);

184. City of Detroit v. State of Michigan, No. 12-014797-CC (Condemnation);

185. City of Detroit v. Wilcox aka Albert, Martha, No. 12-014799-CC (Condemnation);

186. City of Detroit v. Wilson, Kenneth L., No. 13-005825-CC (Condemnation);

187. City of Detroit v. True Missionary Baptist Church, No. 13-05826-CC (Condemnation);

188. City of Detroit v. True Missionary Baptist Church, No. 13-005827-CC (Condemnation);

189. City of Detroit v. Wilson, Gail, et al., No. 12-015039-CC (Condemnation);

190. City of Detroit v. Wilcox, Martha, No. 12-014867-CC (Condemnation);

191. City of Detroit v. CE Detroit, LLC, No. 12-014803-CC (Condemnation);

192. City of Detroit v. Lucido, Steven J., et al., No. 13-05828-CC (Condemnation);

193. City of Detroit v. Detroit Leasing, Inc., No. 13-005829-CC (Condemnation);

194. City of Detroit v. Newell, Nema N., No. 13-005830-CC (Condemnation);

195. City of Detroit v. Jones, James N., No. 13-005831-CC (Condemnation);

196. City of Detroit v. Jones, James N., No. 13-005832-CC (Condemnation);

197. Manos, Dino v. City of Detroit and Abram, Frank H. , No. 12-011400, Mich. 36th Dist. Ct.;

198. City of Detroit v. Priscilla White, No. 06-120153-GC, Mich. 36th Dist. Ct.;

199. City of Detroit v. Tommie L. Douglas, Jr., No. 13-116328, Mich. 36th Dist. Ct.;

200. City of Detroit v. Natoshia Lane Lucas, No. GC-08H559, Mich. 36th Dist. Ct.;

201. City of Detroit v. James Strickland, No. 12-103387-GC, Mich. 36th Dist. Ct.;

202. City of Detroit v. Giant Janitorial Services Inc & Peter J. Huthwaite, No. 02-147508, Mich. 36th Dist. Ct.;

203. City of Detroit v. Deborah Davenport Bankruptcy, No. 03-65075, Bankr. E.D. Mich.;

204. City of Detroit v. Renaissance West Comental Helath Services et al., No. 04-405900-CZ, Mich. Third Judicial Cir.;

205. City of Detroit v. Ernest Karr, No. 13-009376, Mich. 36th Dist. Ct.;

206. City of Detroit v. Clarence & Marilyn Bell, Mich. 36th Dist. Ct.;

207. City of Detroit v. John W. & Martha Higgins, Mich. 36th Dist. Ct.;

208. City of Detroit v. Beverly Jeanette, Mich. 36th Dist. Ct.;

209. City of Detroit v. Gwendolyn Broadnax, Mich. 36th Dist. Ct.;

210. City of Detroit v. Emily Talbert-Holt, No. 09-003020-CZ, Mich. Third Judicial Cir.;

211. City of Detroit v. Linda Terry, No. 09-17213-GC, Mich. 36th Dist. Ct.;

212. City of Detroit v. Dwayne B. Toles, No. 07-157206-GC, Mich. 36th Dist. Ct.;

213. City of Detroit v. Victor C. Travier, No. 08-126677-GC, Mich. 36th Dist. Ct.;

214. City of Detroit v. Victoria L. Cliett, No. 13-118142, Mich. 36th Dist. Ct.;

215. City of Detroit v. Bessie Harris, No. 08-126678-GC, Mich. 36th Dist. Ct.;

216. City of Detroit v. Donald R. & Latania C. McClendon, No. 08-145303-GC, Mich. 36th Dist. Ct.;

217. City of Detroit v. Jeanette Beverly, No. 09-108564-GC, Mich. 36th Dist. Ct.;

218. City of Detroit v. Linda Terry, No. 09-17213-GC, Mich. 36th Dist. Ct.;

219. City of Detroit v. Sharon Brown, No. 09-114024-GC, Mich. 36th Dist. Ct.;

220. City of Detroit v. Emily Talbert-Holt, No. 09-003020-CZ, Mich. 36th Dist. Ct.;

221. City of Detroit v. Deborah Hicks, No. 13-012387, Mich. 36th Dist. Ct.;

222. City of Detroit v. Flozelle Crosby, No. 09-112041-GC, Mich. 36th Dist. Ct.;

223. City of Detroit v. Vanessa A. Hall, No. 09-112039-GC, Mich. 36th Dist. Ct.;

224. City of Detroit v. Milton s. & Brenda K. Campbell, No. 09-114017-GC, Mich. 36th Dist. Ct.;

225. City of Detroit v. Jerel Johnson & Deshawn L. Morrison, No. 09-131660-GC, Mich. 36th Dist. Ct.;

226. City of Detroit v. Will Ivey, No. 13-118143, Mich. 36th Dist. Ct.;

227. City of Detroit v. Melvin Eades and Rachel Eades, No. 09-135760, Mich. 36th Dist. Ct.;

228. City of Detroit v. James Woodget, No. 10-104902-GC, Mich. 36th Dist. Ct.;

229. City of Detroit v. Pamela Franklin and Marvin Franklin, No. 10B2476, Mich. 36th Dist. Ct.;

230. City of Detroit v. Yvette Pugh, No. 11-107209-GC, Mich. 36th Dist. Ct.;

231. City of Detroit v. Everette Driver & Sheila Driver, No. 11-107031-GC, Mich. 36th Dist. Ct.;

232. City of Detroit v. Paul Swanson, No. 1102022H-GC, Mich. 41B Dist. Ct.;

233. City of Detroit v. Gillian John, No. 13-118144, Mich. 36th Dist. Ct.;

234. City of Detroit v. Luther Gray III, No. 07-122557-GC, Mich. 36th Dist. Ct.;

235. City of Detroit v. Tony Davis Garnishment, No. 08-114619-CD, Mich. 36th Dist. Ct.;

236. City of Detroit v. Bennie Hayden, No. 13-C3512-GC, Mich. 36th Dist. Ct.;

237. City of Detroit v. Raymond McMurrian, No. 12-117043-GC, Mich. 36th Dist. Ct.;

238. City of Detroit v. Timothy Ebendick and Colleen Ebendick, No. 13-117680-gc, Mich. 36th Dist. Ct.;

239. City of Detroit v. Sea-Breeze Traing Corp dba City Laundry Pers Prop, Mich. Third Judicial Cir.;

240. City of Detroit v. Jean James, No. 13-117268-GC, Mich. 36th Dist. Ct.;

241. City of Detroit v. Chezcore Inc. & Cieskowksi, David, Mich. Third Judicial Cir.;

242. City of Detroit v. Monica Chavers, No. 13-118145, Mich. 36th Dist. Ct.;

243. City of Detroit v. Slack, Jonathon, No. 13-117270-GC, Mich. 36th Dist. Ct.;

244. City of Detroit v. Kevin Doss, No. 13-117269-GC, Mich. 36th Dist. Ct.;

245. City of Detroit v. Mack Orangelo, No. 13-39949-GC, Mich. 36th Dist. Ct.;

246. Markos Patty Store v. City of Detroit, No. 13-000003-CZ, Mich. Third Judicial Cir.;

247. City of Detroit v. Gloria Ballard, Mich. 36th Dist. Ct.;

248. City of Detroit v. Daryl Johnson & Nadeine Johnson, Mich. 36th Dist. Ct.;

249. City of Detroit v. Rebecca Shelton, Mich. 36th Dist. Ct.;

250. City of Detroit v. Cynthia Snith & Kwame Smith, No. 13-117678-GC, Mich. 36th Dist. Ct.;

251. City of Detroit v. Zeola Carey, No. 09-107281，Mich. 36th Dist. Ct.;

252. City of Detroit v. Kenneth Tinsley & Cheryl Tinsley, Mich. 36th Dist. Ct.;

253. City of Detroit v. Louis Parker, Mich. 36th Dist. Ct.;

254. City of Detroit v. Matthew Underwood & Vantress Underwood, No. 13-117679-GC, Mich. 36th Dist. Ct.;

255. City of Detroit v. James D. & Marva E. Washington, No. 03-145330-GC, Mich. 36th Dist. Ct.;

256. City of Detroit v. Belda P. Garza, No. 07-122553-GC, Mich. 36th Dist. Ct.;

257. City of Detroit v. Fred Hill, No. 14-101263-GC, Mich. 36th Dist. Ct.;

258. City of Detroit v. Kathrine Luckett, No. 13-122872-GC, Mich. 36th Dist. Ct.;

259. City of Detroit v. Mary Majek, No. 14-101262-GC, Mich. 36th Dist. Ct.;

260. City of Detroit v. Kyler Reamuless, No. 13-122874-GC, Mich. 36th Dist. Ct.;

261. City of Detroit v. Mary Waters, No. 13-121800，Mich. 36th Dist. Ct.;

262. City of Detroit v. Meal Tech Products, Inc. & Letitia Gordon, No. 14--000586-CZ, Mich. Third Judicial Cir.;

263. City of Detroit v. Davis McGill & Juwanna D. McGill, No. 13-20224-GC, Mich. 36th Dist. Ct.;

264. City of Detroit v. Majestic Theater center Inc., No. 11-007260-CZ, Mich. Third Judicial Cir.;

265. City of Detroit v. Shelbourne Group In. Y Leipsitz-Makino, Kathy, No. 14-102379-GC, Mich. 36th Dist. Ct.;

266. City of Detroit v. Ali Beidoun, No. 13-121801，Mich. 36th Dist. Ct.;

267. City of Detroit v. Marcel Maurice Moore, No. 07-04395T-GC, Mich. 41B Dist. Ct.;

268. City of Detroit v. Shashu Makeda Harris, No. 06-101803-GC, Mich. 36th Dist. Ct.;

269. City of Detroit v. Lesley Girard Gates, No. 06-120154-GC, Mich. 36th Dist. Ct.;

270. City of Detroit v. Shawn Myatt, Mich. 36th Dist. Ct.;

271. City of Detroit v. Angela Nicole Shelly, No. 07-122578-GC, Mich. 36th Dist. Ct.;

272. City of Detroit v. Ann Francine Smith, No. 07-117414-GC, Mich. 36th Dist. Ct.;

273. City of Detroit v. Saun Roland Scott, No. 07-122576-GC, Mich. 36th Dist. Ct.;

274. City of Detroit v. Faynese deeneil Robinson-Law, No. 06-101802-GC, Mich. 36th Dist. Ct.;

CHI-1928932v1

-10-

13-53846-tjt    Doc 10485-10    Filed 09/22/15    Entered 09/22/15 13:08:52    Page 132 of
173
13-53846-tjt    Doc 10045-10    Filed 10/22/15    Entered 09/12/15 13:08:29    Page 182 of
1267

275.  City of Detroit v. Celia Harris, No. 13-121803，Mich. 36th Dist. Ct.;

276.  City of Detroit v. Delois Kirkman, No. 07-134556-GC, Mich. 36th Dist. Ct.;

277.  City of Detroit v. Michael Amthony Hines, No. 06-120152-GC, Mich. 36th Dist. Ct.;

278.  City of Detroit v. Derrick James McDowell, No. 07-58101-GC, Mich. 36th Dist. Ct.;

279.  City of Detroit v. Tamaara Morris, No. 06-101804-GC, Mich. 36th Dist. Ct.;

280.  City of Detroit v. Rhonda Joann White, No. 07-134557-GC, Mich. 36th Dist. Ct.;

281.  City of Detroit v. Danetta L. Simpson, No. 12-121739-GC, Mich. 36th Dist. Ct.;

282.  City of Detroit v. Kildare Clarke, No. 08-00468-GC, Mich. 36th Dist. Ct.;

283.  City of Detroit v. Aretha Lula Crawford, No. 07-145090-GC, Mich. 36th Dist. Ct.;

284.  City of Detroit v. Euel Kinsey, No. 14-304163，Mich. 36th Dist. Ct.;

285.  City of Detroit v. Natasha Nakie-Nacole Coats, No. 08-C0945-GC, Mich. 36th Dist. Ct.;

286.  City of Detroit v. Rebecca Marie Dunn, No. 07155738-GC, Mich. 36th Dist. Ct.;

287.  City of Detroit v. Eve Reedy Doster, No. 08-106725-GC, Mich. 36th Dist. Ct.;

288.  City of Detroit v. Barnstormer Pilot Club, LLC, No. 14-002984，Mich. 36th Dist. Ct.;

289.  City of Detroit v. Virginia Francnessa Flamer, No. 07-145091-GC, Mich. 36th Dist. Ct.;

290.  City of Detroit v. Gregory Lynn Delaney, No. 07-145091-GC, Mich. 36th Dist. Ct.;

291.  City of Detroit v. Tyrone Jemall Peals, No. 07-117411-GC, Mich. 36th Dist. Ct.;

292.  City of Detroit v. Paul Douglas Bosman, No. 07-1805-GC, Mich. 22nd Dist. Ct.;

293.  City of Detroit v. Ann Francien Smith, Mich. 36th Dist. Ct.;

294.  City of Detroit v. Khatoon Dawood, No. 08-C01778-GC-01, 52nd Dist. Ct.;

295.  City of Detroit v. Jaroslaw Sziejter, No. 09-114019, Mich. 36th Dist. Ct.;

296.  City of Detroit v. Kimberly James, Mich. 36th Dist. Ct.;

297.  City of Detroit v. Rachel Erika Thomas-Sharpe, Mich. 36th Dist. Ct.;

298.  City of Detroit v. Tawanda Latreese Wilder, No. 09-114021-GC, Mich. 36th Dist. Ct.;

299.  City of Detroit v. Elgin R. Taylor, No. 09-114022-GC, Mich. 36th Dist. Ct.;

300.  City of Detroit v. Lasonia Smith, Mich. 36th Dist. Ct.;

301.  City of Detroit v. Lamont Street, Mich. 36th Dist. Ct.;

302.  City of Detroit v. Shealtiel N. Moore, Mich. 36th Dist. Ct.;

303.  City of Detroit v. Jaroslaw Sziejter, No. 09-114019, Mich. 36th Dist. Ct.;

304.  City of Detroit v. Christine Myers, Gavin Harrison, Karen Kialka, No. 09-114016-GC, Mich. 36th Dist. Ct.;

305.  City of Detroit v. Verizon, Mich. 36th Dist. Ct.;

306.  City of Detroit v. Marcus Ricardo Gary, No. 09-114018-GC, Mich. 36th Dist. Ct.;

307. City of Detroit v. Christine Myers, Gavin Harrison, Karen Kialka, No. 09-114016-GC, Mich. 36th Dist. Ct.;

308. City of Detroit v. Derek Culver, No. 13-121802, Mich. 36th Dist. Ct.;

309. City of Detroit v. Rita Lynette Powell-Pyles, No. 09-131657-GC, Mich. 36th Dist. Ct.;

310. City of Detroit v. Kari Burge, No. 10-106504-GC, Mich. 36th Dist. Ct.;

311. City of Detroit v. Jerea Deana Jackson, No. 08-106730-GC, Mich. 36th Dist. Ct.;

312. City of Detroit v. Angelo Iafrate, Mich. 36th Dist. Ct.;

313. City of Detroit v. Jamal Anthony Gaddie, No. 07-141061-GC, Mich. 36th Dist. Ct.;

314. City of Detroit v. Sophia Hawkins, No. 07-141894-GC, Mich. 36th Dist. Ct.;

315. City of Detroit v. Terrance Thomas, No. 10-108337-GC, Mich. 36th Dist. Ct.;

316. City of Detroit v. Terrance Thomas, No. 10-108337-GC, Mich. 36th Dist. Ct.;

317. City of Detroit v. Maia Williams, Mich. 36th Dist. Ct.;

318. City of Detroit v. Frances Blue, No. 10-118297-GC, Mich. 36th Dist. Ct.;

319. City of Detroit v. Jerel D. Matthaw, No. 10-122303, Mich. 36th Dist. Ct.;

320. City of Detroit v. Ashli R. Thomas, No. 10-122302-GC, Mich. 36th Dist. Ct.;

321. City of Detroit v. George Webb, No. 10-121743-GC, Mich. 36th Dist. Ct.;

322. City of Detroit v. Elsie L. Green & Sadie Reynolds, No. 10-124040-GC, Mich. 36th Dist. Ct.;

323. City of Detroit v. Wayne County 7 Raymond J. Wojtowitcz, No. 13-000036-MZ-C30, Mich. 36th Dist. Ct.;

324. City of Detroit v. Kenneth L. Hurt, No. 11-105194-GC, Mich. 36th Dist. Ct.;

325. City of Detroit v. Tiyunna George, Mich. 36th Dist. Ct.;

326. City of Detroit v. Dejuan L. Washington, No. 11-105192-GC, Mich. 36th Dist. Ct.;

327. City of Detroit v. Marc Williams, No. 12-103384-GC, Mich. 36th Dist. Ct.;

328. City of Detroit v. Charles Williams, Mich. 36th Dist. Ct.;

329. City of Detroit v. Jennifer Bramer, No. 12-103386-GC, Mich. 36th Dist. Ct.;

330. City of Detroit v. Ronald Taylor, No. 04-117439-GC, Mich. 36th Dist. Ct.;

331. City of Detroit v. Empire Leasing, No. 14-15917-GC, Mich. 36th Dist. Ct.;

332. City of Detroit v. Wise Finley, No. 14-105916-GC, Mich. 36th Dist. Ct.;

333. City of Detroit v. John Louis Herring, Mich. 36th Dist. Ct.;

334. City of Detroit v. Damon Key, No. 14-15921-GC, Mich. 36th Dist. Ct.;

335. City of Detroit v. Claudio Lopez, Mich. 36th Dist. Ct.;

336. City of Detroit v. Michael Mingo, No. 14-105920-GC, Mich. 36th Dist. Ct.;

-12-
CHI-1928932v1
13-53846-tjt   Doc 10485-5   Filed 09/22/15   Entered 09/22/15 13:08:52   Page 134 of 173
13-53846-tjt   Doc 10145-10   Filed 10/22/15   Entered 09/12/15 03:48:29   Page 134 of 1269

337. City of Detroit v. Myrtle Pasha, Mich. 36th Dist. Ct.;

338. City of Detroit v. Larry Callahan, No. 08-105046-GC, Mich. 36th Dist. Ct.;

339. City of Detroit v. Anthony Caslio, No. 07-154008-GC, Mich. 36th Dist. Ct.;

340. City of Detroit v. Antonio L. Johnson, No. 08-122838-GC, Mich. 36th Dist. Ct.;

341. City of Detroit v. Markeeda Morgan, No. 07-124692-GC, Mich. 36th Dist. Ct.;

342. City of Detroit v. 19696 Omira, No. 09-110228-GC, Mich. 36th Dist. Ct.;

343. City of Detroit v. Cadolba Management and Associates, No. 09-120755-GC, Mich. 36th Dist. Ct.;

344. City of Detroit v. Clarence Edward Key, No. 09-114023-GC, Mich. 36th Dist. Ct.;

345. Motor City Bending Inc vs City of Detroit, No. 07-729179, Mich. 36th Dist. Ct.;

346. City of Detroit v. 19696 Omira, No. 09-110228, Mich. 36th Dist. Ct.;

347. City of Detroit v. Cadpba Management and Associates, No. 09-120755, Mich. 36th Dist. Ct.;

348. City of Detroit v. Clarence Edward Key, No. 09-114023, Mich. 36th Dist. Ct.;

CHI-1928932v1
-13-
13-53846-tjt    Doc 9045-5    Filed 09/22/15    Entered 09/22/15 10:00:52    Page 135 of
173
13-53846-swr    Doc 10485-10    Filed 10/22/15    Entered 10/22/15 03:48:29    Page 135 of
1270

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

-------------------------------------------------------x
:
In re                                          :          Chapter 9
:
CITY OF DETROIT, MICHIGAN,                      :          Case No. 13-53846
:
                              Debtor.           :          Hon. Steven W. Rhodes
:
:
-------------------------------------------------------x

# ORDER CONFIRMING EIGHTH AMENDED PLAN FOR
# THE ADJUSTMENT OF DEBTS OF THE CITY OF DETROIT

13-53846-tjt   Doc 10285-5   Filed 09/16/15   Entered 09/16/15 15:00:52   Page 136 of
13-53846-tjt   Doc 9275   Filed 11/12/14   Entered 11/12/14 16:25:07   Page 9 of 329   1271
173

# TABLE OF CONTENTS

FINDINGS OF FACT AND CONCLUSIONS OF LAW ........................................4

   Jurisdiction and Venue ..................................................................4

   Modifications of the Plan ..............................................................5

   Standards for Confirmation Under Section 943 of the
   Bankruptcy Code ..........................................................................6

      Section 943(b)(1) ....................................................................6

         Section 1122..............................................................7

         Section 1123(a)(1)....................................................7

         Section 1123(a)(2)....................................................8

         Section 1123(a)(3)....................................................8

         Section 1123(a)(4)....................................................8

         Section 1123(a)(5)..................................................10

         Section 1123(b)(1) .................................................10

         Section 1123(b)(2) .................................................10

         Section 1123(b)(3) .................................................11

         Section 1123(b)(5) .................................................11

         Section 1123(b)(6) .................................................11

         Section 1123(d) .....................................................12

         Section 1127(d) .....................................................12

         Section 1129(a)(2)..................................................12

         Section 1129(a)(3)..................................................19

         Section 1129(a)(6)..................................................20

         Section 1129(a)(8)..................................................21

         Section 1129(a)(10) ...............................................21

         Section 1129(b)(1) – Unfair Discrimination...........................21

         Sections 1129(b)(1), (b)(2) – Fair and Equitable.....................25

      Section 943(b)(2)..................................................................26

      Section 943(b)(3)..................................................................27

-i-

13-53846-tjt   Doc 10185-5  Filed 09/16/15  Entered 09/16/15 21:00:52  Page 2 of 29
13-53846-swr  Doc 8272  Filed 11/12/14  Entered 11/12/14 16:25:07  Page 137 of 1272
173

Section 943(b)(4)................................................................29

Section 943(b)(5)................................................................30

Section 943(b)(6)................................................................30

Section 943(b)(7)................................................................31

    Best Interests of Creditors................................................31

    Feasibility................................................................36

Executory Contracts........................................................................42

Settlements and Releases..............................................................43

    The DIA Settlement........................................................44

    The UTGO Settlement ....................................................48

    The LTGO Settlement ....................................................52

    The OPEB Settlement ....................................................53

    The 36th District Court Settlement ..............................54

    The Syncora Settlement ................................................55

    The FGIC/COP Settlement............................................58

ASF Recoupment..............................................................................60

Plan Releases ....................................................................................63

Miscellaneous ..................................................................................66

    Exit Facility................................................................66

    Waiver of Stay of Confirmation Order ............................68

ORDER ....................................................................................................68

  A.    Confirmation of Plan........................................................68

  B.    Findings of Fact and Conclusions of Law............................69

  C.    Approval of Settlements....................................................70

  D.    Approval of Releases and Exculpation ..............................78

  E.    Order Binding on All Parties..............................................86

  F.    Discharge of Claims ........................................................87

  G.    Release of Liens ..............................................................88

  H.    Injunction........................................................................89

-ii-

13-53846-tjt   Doc 10485-5  Filed 09/16/15   Entered 09/16/15 15:00:52   Page 9 of 329
13-53846-swr   Doc 8272   Filed 11/12/14   Entered 11/12/14 16:25:07   Page 138 of 1273
173

I.         State Contribution Agreement ............................................................ 93

J.         DWSD Authority Transaction ............................................................ 94

K.       ASF Recoupment ................................................................................ 95

L.        Survival of Indemnities ...................................................................... 98

M.     Issuance of New Securities and Exemption From Securities Laws ..................................................................................... 99

N.      Executory Contracts and Unexpired Leases .................................... 100

O.      Plan Distributions ............................................................................ 103

P.       Retained Causes of Action ............................................................... 103

Q.      Claims Bar Dates and Other Claims Matters .................................. 104

R.       Plan Implementation......................................................................... 109

S.        Cancellation of Existing Bonds, Bond Documents, COPs and COP Documents ............................................................. 110

T.        Binding Effect of Prior Orders ........................................................ 114

U.       Final Order; Waiver of Stay ............................................................. 115

V.        Reversal ............................................................................................ 115

W.    Notice of Confirmation of Plan ....................................................... 115

X.       Miscellaneous Provisions ................................................................ 116

Y.        No Diminution of State Power ......................................................... 124

Z.        Post-Effective Date Governance ..................................................... 125

AA.    Retention of Jurisdiction ................................................................. 125

Appendix I        Plan of Adjustment

Appendix II      Confirmation Notice

13-53846-tjt   Doc 10285-5  Filed 09/16/15  Entered 09/16/15 15:00:52  Page 9 of 129
13-53846-tjt   Doc 9275  Filed 11/12/14  Entered 11/12/14 16:25:07  Page 4 of 1274
173

The City of Detroit (the "City" or the "Debtor") having proposed its

Eighth Amended Plan for the Adjustment of Debts of the City of Detroit

(October 22, 2014) (the "Plan" or the "Eighth Amended Plan"),[1] a true and correct

copy of which (without exhibits) is attached hereto as Appendix I; the Court

having conducted a 24-day evidentiary hearing to consider confirmation of the

Plan on August 18, September 2-5, September 8-9, September 15-18,

September 29 to October 3, October 6, October 14-16, October 20-22 and

October 27, 2014 (the "Confirmation Hearing"); the Court having conducted a

hearing on July 15, 2014, at which 46 individuals who (i) filed objections to

Confirmation of the Plan with the Court and (ii) appeared in the Chapter 9 Case

*pro se* made presentations with respect to such objections to the Court (the "*Pro Se*

Hearing") and the Court having considered the arguments of such parties at the

*Pro Se* Hearing;[2] the Court having conducted hearings on certain legal issues

related to confirmation of the Plan on July 16, 2014 and August 19, 2014; the

Court having considered:  (i) the testimony of the 41 witnesses called at the

---

[1]     On May 5, 2014, the City filed its Fourth Amended Plan for the Adjustment
        of Debts of the City of Detroit (May 5, 2014) (the "Fourth Amended Plan"),
        which version of the Plan was included in the contents of the solicitation
        packages distributed to creditors entitled to vote thereon.

        All capitalized terms used but not defined herein have the meanings given to
        them in the Plan.

[2]     *See* Notice of Hearing to Individuals Who Filed Plan Objections (Docket
        No. 5264) (June 10, 2014).

13-53846-tjt   Doc 10285-5   Filed 09/16/15   Entered 09/16/15 15:00:52   Page 9 of 42
13-53846-tjt   Doc 8272   Filed 11/12/14   Entered 11/12/14 16:25:07   Page 140 of 1275
173

Confirmation Hearing, as well as the affidavits and declarations included among

the approximately 2,300 exhibits admitted into evidence at the Confirmation

Hearing; (ii) the arguments of counsel presented at the Confirmation Hearing;

(iii) the pleadings filed by the City in support of the Plan, including the following:

- Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 5034) (the "Consolidated Reply"), filed by the City on May 26, 2014;

- Debtor's Supplemental Brief on Legal Issues Relating to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 5707), filed by the City on June 30, 2014;

- City's Supplemental Brief Regarding Standing of Syncora to Raise Certain Objections to Confirmation (Docket No. 6010), filed by the City on July 14, 2014;

- The City of Detroit's Brief Regarding the Court's Authority to Determine the Reasonableness of Fees Under 11 U.S.C. § 943(b)(3) (Docket No. 6842), filed by the City on August 18, 2014;

- Consolidated (A) Pretrial Brief in Support of Confirmation of Sixth Amended Plan for the Adjustment of Debts of the City of Detroit and (B) Response to (I) Certain Objections Filed by Individual Bondholders and Individual Retirees and (II) Supplemental Objections (Docket No. 7143), filed by the City on August 27, 2014 (the "Pretrial Brief"), including the summary of the City's compliance with the standards of section 943 of the Bankruptcy Code (inclusive of the standards of sections 1122, 1123(a)(1)-(a)(5), 1123(b), 1123(d), 1124, 1125, 1126(a)-1126(c), 1126(e)-1126(g), 1127(d), 1128, 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b)(2)(A) and 1129(b)(2)(B) of the Bankruptcy

-2-

13-53846-tjt    Doc 10185-5    Filed 09/16/15    Entered 09/16/15 25:00:52    Page 9 of 42
13-53846-tjt    Doc 9275    Filed 11/12/14    Entered 11/12/14 16:25:07    Page 142 of 1276
173

Code) attached as Exhibit A thereto (the "Confirmation Standards Exhibit");

- Consolidated Response to Certain *Pro Se* Objections to Confirmation of the Sixth Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 7303) (the "Response to *Pro Se* Objections"), filed by the City on September 5, 2014;

- Consolidated Reply to Supplemental Objections to Confirmation of the Seventh Amended Plan for the Adjustment of Debts of the City of Detroit (Docket No. 7707), filed by the City on September 26, 2014, as well as all other pleadings filed in support of the Plan by parties in interest; and

- Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014) (Docket No. 8045), including all Exhibits thereto.

(iv) all other papers filed in support of, and in opposition to, Confirmation of the Plan, including the objections filed with respect to Confirmation of the Plan;[3]

(v) the resolution, settlement or withdrawal of timely objections to Confirmation of the Plan filed by, among others, FGIC, Syncora, the FGIC COP Holders, the DWSD Settlement Parties, the LTGO Insurer, certain insurers of Unlimited Tax General Obligation Bonds, Michigan Council 25 of the American Federation of

---

[3] *See* Summary of the City's Responses to Initial Plan Objections, attached as Exhibit A to the Consolidated Reply; Summary of the City's Responses to (I) Supplemental Objections and (II) Objections filed by (A) the UAW and (B) AFSCME, attached as Exhibit B to the Pretrial Brief; Summary of the City's Responses to (I) *Pro Se* Objections Specified in the Order Requiring City to Respond to Certain *Pro Se* Objections to Confirmation [Docket No. 6640] and (II) *Pro Se* Objections Not Addressed in the Consolidated Reply to Certain Objections to Confirmation of Fourth Amended Plan for the Adjustment of Debts of the City of Detroit [Docket No. 5034], attached as Exhibit A to the Response to *Pro Se* Objections.

State, County and Municipal Employees, AFL-CIO ("AFSCME"), the

International Union, UAW, each of the Counties and the Macomb Interceptor

Drain Drainage District; and the Court being familiar with the Plan and other

relevant factors affecting this Chapter 9 Case; the Court having taken judicial

notice of the entire docket of the City's Chapter 9 Case maintained by the Clerk of

the Court and/or its duly appointed agent, pursuant to Federal Rule of Evidence

201(c) (made applicable to this case by Bankruptcy Rule 9017), including, but not

limited to, those orders, pleadings and other documents set forth in the

Confirmation Standards Exhibit; the Court having found that due and proper notice

has been given with respect to the Confirmation Hearing and the deadlines and

procedures for filing objections to the Plan; the appearance of all interested parties

having been duly noted in the record of the Confirmation Hearing; and upon the

record of the Confirmation Hearing, and after due deliberation thereon, and

sufficient cause appearing therefor;

IT IS HEREBY FOUND AND CONCLUDED, that:

## JURISDICTION AND VENUE

A. The Court has jurisdiction over this matter and this Chapter 9

Case pursuant to 28 U.S.C. § 1334 and Rule 83.50(a) of the Local Rules of the

United States District Court for the Eastern District of Michigan.

B.     Confirmation of the Plan is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to enter a final order with

respect thereto.

C.     The City is a proper debtor under section 109 of the Bankruptcy

Code[4] and the proper proponent of the Plan under section 941 of the Bankruptcy

Code.

D.     On the Effective Date of the Plan, or as soon thereafter as is

practicable, all appeals of the Opinion Regarding Eligibility and the Order for

Relief, in accordance with settlements by and among the appellants and the City,

shall be withdrawn.

## MODIFICATIONS OF THE PLAN

E.     The Plan does not materially and adversely affect or change the

treatment of any Claim against the City under the Fourth Amended Plan.  Pursuant

to sections 942 and 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019,

the Plan does not require additional disclosure under section 1125 of the

Bankruptcy Code or the resolicitation of acceptances or rejections of the Fourth

Amended Plan under section 1126 of the Bankruptcy Code, nor does it require that

---

[4]     *See* Opinion Regarding Eligibility (Docket No. 1945), entered on
December 5, 2013 (the "Opinion Regarding Eligibility"); Order for Relief
Under Chapter 9 of the Bankruptcy Code (Docket No. 1946), entered on
December 5, 2013 (the "Order for Relief").

holders of Claims against the City be afforded an opportunity to change previously cast acceptances or rejections of the Fourth Amended Plan as filed with the Court. The filing of the Plan, and the disclosure of certain modifications and amendments to the Fourth Amended Plan contained therein on the record at the Confirmation Hearing, constitute due and sufficient notice thereof under the circumstances of the Chapter 9 Case. Accordingly, the Plan is properly before the Court, and, except as set forth in the Plan or later orders of the Court, all votes cast with respect to the Fourth Amended Plan prior to the filing of the Plan shall be binding and shall apply with respect to the Plan.

## STANDARDS FOR CONFIRMATION
## UNDER SECTION 943 OF THE BANKRUPTCY CODE

F.    The evidentiary record of the Confirmation Hearing and the Confirmation Standards Exhibit support the findings of fact and conclusions of law set forth in the following paragraphs.

G.    The Court's supplemental opinion regarding confirmation of the Plan (the "Confirmation Opinion"), to be issued, is incorporated fully herein.

H.    Section 943(b)(1).  The Plan complies with the provisions of the Bankruptcy Code made applicable to this Chapter 9 Case by sections 103(e) and 901 of the Bankruptcy Code.[5]  In particular:

1.    *Section 1122*.  In accordance with section 1122(a) of the Bankruptcy Code, Section II.B of the Plan classifies each Claim against the City into a Class containing only substantially similar Claims.  The legal rights under applicable law of each holder of Claims within each Class under the Plan are substantially similar in nature and character to the legal rights of all other holders of Claims within such Class.  No Claims were separately classified under the Plan to gerrymander favorable votes with respect to the Plan.  In accordance with section 1122(b) of the Bankruptcy Code, Convenience Claims are separately classified in Class 15 under the Plan solely for the purpose of administrative convenience.

2.    *Section 1123(a)(1)*.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Section II.B of the Plan properly classifies all Claims that require classification.  Valid factual and legal reasons

---

[5]    Section 901 of the Bankruptcy Code incorporates into chapter 9 the following chapter 11 provisions relevant to plan confirmation: sections 1122, 1123(a)(1)-(5), 1123(b), 1123(d), 1125, 1126(a)-(c) and (e)-(g), 1127(d), 1128, 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1) and 1129(b)(2)(A)-(B) of the Bankruptcy Code. *See* 11 U.S.C. § 901(a).

-7-

13-53846-tjt    Doc 8025-5    Filed 09/16/15    Entered 09/16/15 14:00:52    Page 146 of
13-53846-tjt    Doc 8272    Filed 11/09/14    Entered 11/09/14 23:25:00    Page 91 of 225    1281
173

exist for the separate classification of (a) certain secured Claims from Other Secured Claims and (b) certain unsecured Claims from Other Unsecured Claims.

        3.     *Section 1123(a)(2).*  In accordance with section 1123(a)(2) of the Bankruptcy Code, Section II.B of the Plan properly identifies and describes each Class of Claims that is not impaired under the Plan.[6]

        4.     *Section 1123(a)(3).*  In accordance with section 1123(a)(3) of the Bankruptcy Code, Section II.B of the Plan properly identifies and describes the treatment of each Class of Claims that is impaired under the Plan.

        5.     *Section 1123(a)(4).*  In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim of a particular Class unless the holder of such a Claim has agreed to less favorable treatment.  Because ASF Recoupment is a settlement mechanism designed to (a) implement a critical component of the City's comprehensive settlement of pension-related issues and (b) enable the trustees of the GRS

---

[6]     *See* Order Pursuant to (I) 11 U.S.C. §§ 105, 364(c), 364(d)(1), 364(e), 902, 904, 921, 922 and 928 (A) Approving Postpetition Financing and (B) Granting Liens and (II) Bankruptcy Rule 9019 Approving Settlement of Confirmation Objections (Docket No. 7028), entered on August 25, 2014 (the "<u>DWSD Tender Order</u>"); Notice of Occurrence of Settlement Date and Unimpairment of Class 1A Claims and (B) Withdrawal of DWSD Plan Objections by Financial Creditors (Docket No. 7268), filed on September 4, 2014 (the "<u>DWSD Settlement Notice</u>").

-8-

13-53846-tjt   Doc 8272-5   Filed 09/16/15   Entered 09/16/15 14:00:52   Page 92 of 228
13-53846-tjt   Doc 8045   Filed 06/30/14   Entered 06/30/14 15:25:02   Page 147 of 1282
173

(collectively, the "GRS Trustees") to recover a portion of excess interest allocated to members' Annuity Savings Fund accounts from the GRS's traditional defined benefit pension plan (the "GRS Traditional Pension Plan"), ASF Recoupment may be deemed (x) separate and distinct from the calculation of recoveries provided to holders of GRS Pension Claims and, thus, (y) disregarded for purposes of determining whether the Plan complies with section 1123(a)(4) of the Bankruptcy Code.

6. The consideration provided to Syncora in connection with the Syncora Settlement that is not provided on account of the Plan COP Settlement (a) is separate and distinct from the treatment of Class 9 COP Claims held or insured by Syncora under the Plan, (b) is provided on account of (i) Syncora's agreement to invest new funds (subject to the terms and conditions of the applicable agreements) pursuant to commercial relationships with the City that are distinct from COP Claims held or insured by Syncora and (ii) Syncora's agreement to resolve all of its pending litigation against the City and, thus, (c) has been disregarded for purposes of determining whether the Plan complies with section 1123(a)(4) of the Bankruptcy Code. The consideration provided to FGIC in connection with the FGIC/COP Settlement that is not provided on account of the Plan COP Settlement (a) is separate and distinct from the treatment of Class 9 COP Claims held or insured by FGIC under the Plan and reflects an agreement to invest

-9-

13-53846-tjt    Doc 9325-5    Filed 11/09/15    Entered 11/09/15 14:00:52    Page 148 of 225
13-53846-tjt    Doc 8272-5    Filed 09/16/15    Entered 09/16/15 23:00:52    Page 10 of 1283
173

new funds in a commercial relationship with the City, (b) is provided on account of FGIC's agreement to resolve all of its pending litigation against the City and, thus, (c) has been disregarded for purposes of determining whether the Plan complies with section 1123(a)(4) of the Bankruptcy Code.

7.    *Section 1123(a)(5).*  In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, (a) the issuance of the New Securities pursuant to the Plan, (b) the consummation of the Settlements (as such term is defined below) described in the Plan, (c) the consummation of the State Contribution Agreement, (d) the assumption or rejection of Executory Contracts and Unexpired Leases, (e) the establishment and funding of the Professional Fee Reserve, (f) the City's assumption of certain indemnification obligations, (g) the City's entry into the Exit Facility and any agreements and ancillary notes related thereto and (h) the provisions regarding Effective Date transactions and transfers in Article IV of the Plan.

8.    *Section 1123(b)(1).*  In accordance with section 1123(b)(1) of the Bankruptcy Code, Section II.B of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims.

9.    *Section 1123(b)(2).*  In accordance with section 1123(b)(2) of the Bankruptcy Code, Section II.D and other provisions of

the Plan provide for the assumption, assumption and assignment, or rejection of the Executory Contracts or Unexpired Leases of the City that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court.

10. *Section 1123(b)(3).* In accordance with section 1123(b)(3) of the Bankruptcy Code, Section III.D.2 of the Plan provides that, except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the City will retain and may enforce any claims, demands, rights, defenses and Causes of Action that it may hold against any Entity (including but not limited to (a) any and all Causes of Action against any party relating to the past practices of the Retirement Systems, (b) the currently pending actions and claims brought by the City identified on Schedule A to Exhibit III.D.2 to the Plan and (c) potential recovery actions that may be brought by the City under the Bankruptcy Code (or similar federal or state law) against, among other parties, the Entities identified on Schedule B to Exhibit III.D.2 to the Plan), to the extent not expressly released under the Plan or by any Final Order of the Court.

11. *Section 1123(b)(5).* In accordance with section 1123(b)(5) of the Bankruptcy Code, Section II.B of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class.

-11-

13-53846-tjt   Doc 8272-5   Filed 11/09/15   Entered 11/09/15 14:00:52   Page 150 of 1285
13-53846-tjt   Doc 8045-5   Filed 09/16/15   Entered 09/16/15 23:00:52   Page 96 of 223
173

12. *Section 1123(b)(6)*.  In accordance with

section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional

appropriate provisions that are not inconsistent with applicable provisions of the

Bankruptcy Code, including, without limitation, the provisions of Article III,

Article IV, Article V, Article VI, Article VII and Article VIII of the Plan.

13. *Section 1123(d)*.  In accordance with section 1123(d) of

the Bankruptcy Code, Section II.D.4 of the Plan provides for the satisfaction of

Cure Amount Claims associated with each Executory Contract or Unexpired Lease

to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the

Bankruptcy Code.  All Cure Amount Claims will be determined in accordance with

the underlying agreements and applicable law.

14. *Section 1127(d)*.  All creditors entitled to vote on the Plan

received proper notice of the Confirmation Hearing, and were provided an

adequate opportunity to object to any amendments and modifications to the Fourth

Amended Plan.[7]

15. *Section 1129(a)(2)*.  The City has complied with all

applicable provisions of the Bankruptcy Code with respect to the Plan and the

solicitation of acceptances or rejections thereof.  In particular, the Plan complies

---

[7]     *See* Certificate of Service (Docket No. 6177).

-12-

13-53846-tjt    Doc 8025-5    Filed 09/16/15    Entered 09/16/15 16:00:52    Page 96 of 228
173

with the requirements of sections 1125 and 1126 of the Bankruptcy Code as

follows:

a)    In compliance with the (i) Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment (Docket No. 2984) (the "Solicitation Procedures Order"), entered on March 11, 2014, and (ii) Order Establishing Supplemental Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment with Respect to Pension and OPEB Claims (Docket No. 4400) (together with the Solicitation Procedures Order, the "Solicitation Orders"), entered on May 5, 2014, on or before May 12, 2014, the City, through its claims, noticing, balloting and solicitation agent, Kurtzman Carson Consultants LLC ("KCC"), caused copies of the following materials to be transmitted to all holders of Claims in Classes that were entitled to vote to accept or reject the Fourth Amended Plan (*i.e.*, Allowed Claims in impaired Classes within Class 1A[8] and Classes 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15):

- the Disclosure Statement (together with the exhibits thereto, including the Fourth Amended Plan);

- a notice of the Confirmation Hearing and other matters (the "Confirmation Hearing Notice");

- an appropriate form of Ballot;

---

[8]    Subsequent to the City's solicitation of acceptances of the Fourth Amended Plan, the Plan was amended to unimpair all Classes in Class 1A, and such Classes are therefore deemed to have accepted the Plan. *See* DWSD Tender Order; DWSD Settlement Notice. As a result, all votes and elections previously delivered with respect to Class 1A Claims shall not be counted and shall be of no force and effect.

-13-

13-53846-tjt    Doc 10145-5    Filed 09/16/15    Entered 09/16/15 14:00:52    Page 152 of
173

- a notice summarizing certain dispute resolution procedures to be employed with respect to voting;

- for holders of Claims in Classes 10, 11 and 12, a "Plain Language Supplement," drafted in collaboration with, among others, the Retiree Committee and the Retirement Systems, describing the treatment of such Claims in non-technical terms;

- the procedures for the solicitation and tabulation of votes to accept or reject the Plan, including approval of (i) the deadline for creditors' submission of Ballots, (ii) the rules for tabulating votes to accept or reject the Plan and (iii) the proposed record date for Plan voting (collectively with the materials described in the preceding bullets, the "Solicitation Package"); and

- cover letters from the City, the DRCEA, the RDPFFA, the Detroit Police Lieutenants and Sergeants Association (the "DPLSA") and the Detroit Police Command Officers Association (the "DPCOA") recommending acceptance of the Plan.[9]

b) In compliance with the Solicitation Procedures Order, on or before May 12, 2014, the City, through KCC, caused copies of the Solicitation Package (not including Ballots) to be transmitted to parties entitled to receive notice pursuant to Bankruptcy Rule 2002.[10]

---

[9] *See* Certificate of Service (Docket No. 6177), at ¶¶ 1-41. A separate communication recommending acceptance of the Plan was mailed to holders of Class 10, Class 11 and Class 12 Claims by the Retiree Committee contemporaneously with the solicitation of votes undertaken by the City. In addition, the GRS and the PFRS sent letters recommending acceptance of the Plan to holders of Class 10 and Class 11 Claims.

[10] *See* Certificate of Service (Docket No. 6177), at ¶ 21.

-14-

c) In compliance with the Solicitation Procedures Order, on or before May 12, 2014, the City, through KCC, transmitted (i) the Confirmation Hearing Notice and (ii) a "Notice of Non-Voting Status" to all holders of Claims in the Classes not entitled to vote on the Plan (*i.e.*, holders of Claims in unimpaired Classes within Class 1A and in Classes 1B, 1C, 2A, 2B, 2C, 2D, 2E, 2F, 3, 4, 6 and 16) that were not entitled to vote on the Plan.[11]

d) In compliance with the Solicitation Procedures Order, on or before May 12, 2014, the City, through KCC, transmitted the Confirmation Hearing Notice to: (i) all other creditors of the City; and (ii) all parties in interest that had filed requests for notice in accordance with Bankruptcy Rule 2002 in the Chapter 9 Case.[12]

e) In compliance with the Solicitation Procedures Order, on May 9, 2014, the City caused a copy of the Confirmation Hearing Notice to be published in the national editions of the *Wall Street Journal* and *USA Today* and the daily editions of the *Detroit Free Press* and the *Detroit News*.[13]

f) Pursuant to the Order Approving the Stipulation Regarding Certain Class 11 and Class 10 Ballots (Docket No. 5209), entered on June 4, 2014, the City mailed replacement ballots to certain members of Classes 10 and 11.[14]

---

[11] *See id.* at ¶ 20.

[12] *See id.* at ¶ 19.

[13] *See* Affidavit of Publication of Confirmation Hearing Notice in the *Detroit Free Press* and the *Detroit News*, dated July 22, 2014 (Docket No. 6209), at page 2; Affidavit of Publication of Confirmation Hearing Notice in *USA Today*, dated July 22, 2014 (Docket No. 6211), at page 2; Affidavit of Publication of Confirmation Hearing Notice in the *Wall Street Journal*, dated July 24, 2014 (Docket No. 6253), at page 2.

[14] *See* Certificate of Service (Docket No. 6177), at ¶¶ 11, 27, Exhibit P.

g)      On July 3, 2014, the City filed (and made available on the Document Website) the following Exhibits: (i) Exhibit I.A.189.a (Form of New GRS Active Pension Plan) (renumbered as Exhibit I.A.250.a to the Eighth Amended Plan); (ii) Exhibit I.A.191.a (Form of New PFRS Active Pension Plan) (renumbered as Exhibit I.A.254.a to the Eighth Amended Plan); (iii) Exhibit I.A.220 (Form of Prior GRS Pension Plan) (renumbered as Exhibit I.A.280 to the Eighth Amended Plan); and (iv) Exhibit I.A.221 (Form of Prior PFRS Pension Plan) (renumbered as Exhibit I.A.281 to the Eighth Amended Plan).[15]

h)      On July 3, 2014, the City filed (and made available on the Document Website) Exhibit II.D.6 (Executory Contracts and Unexpired Leases to be Rejected).[16]

i)      On August 7, 2014, the City filed (and made available on the Document Website) Exhibit I.A.103 (Form of DIA Settlement Documents) (renumbered as Exhibit I.A.127 to the Eighth Amended Plan).[17]

j)      On August 11, 2014, the City filed (and made available on the Document Website) the following Exhibits: (i) Exhibit I.A.146 (Principal Terms of Exit Facility) (renumbered as Exhibit I.A.183 to the Eighth Amended Plan); (ii) Exhibit I.A.255 (Form of Restoration Trust Agreement) (renumbered as Exhibit I.A.292 to the Eighth Amended Plan); (iii) Exhibit II.D.5 (Schedule of Postpetition Collective Bargaining Agreements); and (iv) Exhibit III.D.2 (Retained Causes of Action).[18]

k)      The Confirmation Hearing Notice and the subsequent scheduling orders entered by the Court provided due and

---

[15]      *See* Notice of Filing of Plan Supplement (Docket No. 5755).

[16]      *See* Notice of Filing of Plan Supplement (Docket No. 5756).

[17]      *See* Notice of Filing of Plan Supplement (Docket No. 6576).

[18]      *See* Notice of Filing of Plan Supplement (Docket No. 6647).

13-53846-tjt    Doc 10125-5    Filed 09/16/15    Entered 09/16/15 14:00:52    Page 20 of 25
13-53846-tjt    Doc 8272-5    Filed 11/09/14    Entered 11/09/14 23:25:00    Page 155 of 1290
173

proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline, the Objection Deadline (as such term was defined in the Confirmation Hearing Notice), the time, date and place of the Confirmation Hearing and the release provisions in the Plan.[19]

l)      All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing received proper, timely and adequate notice in accordance with the Solicitation Orders, applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.[20]

m)      The City solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Orders, including, without limitation, the inclusion of letters from the City, the DRCEA, the RDPFFA, the DPLSA and the DPCOA recommending acceptance of the Plan in the solicitation materials and the separate mailing of solicitation letters from the Retiree Committee, the GRS and the PFRS.  Accordingly, the City, the Retiree Committee, the GRS, the PFRS, the DRCEA and the RDPFFA are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section III.D.6 of the Plan.

---

[19]      *See* Solicitation Procedures Order at ¶ 17; Motion of the City of Detroit for Entry of an Order (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan of Adjustment and (II) Approving Notice Procedures Related to Confirmation of the Plan of Adjustment (Docket No. 2789), at Exhibit 6A.

[20]      *See* Certificates of Service (Docket Nos. 6174, 6177).

-17-

n)  Claims in Classes 1A, 1B, 1C, 2A, 2B, 2C, 2D, 2E, 2F, 3 and 4 under the Plan are unimpaired, and such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.[21]

o)  KCC has made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 5, 7, 8, 9, 10, 11, 12, 13, 14 and 15 under the Plan.[22]

p)  Holders of Claims in Class 17 (Indirect 36th District Court Claims) were previously classified in Class 14 under the Fourth Amended Plan.  The City solicited acceptances or rejections of the Plan from the holders of Indirect 36th District Court Claims in their previous capacity as holders of Class 14 Claims.  Pursuant to the Order Authorizing Certain Holders of Indirect 36th District Court Claims to Change Their Votes on the City's Plan of Adjustment (Docket No. 6288), entered on July 28, 2014, by agreement of the parties, the votes of all known holders of Indirect 36th District Court Claims rejecting the Plan under Class 14 were deemed to be votes accepting the Plan under Class 17.

q)  Under the Plan, Class 16 (Subordinated Claims) is Impaired and holders of Claims in such Class will receive

---

[21]  *See* DWSD Settlement Notice.  Subsequent to the filing of the Fourth Amended Plan, the Parking Bonds giving rise to Parking Bond Claims in Class 6 of the Plan were paid in full by the City, mooting the proposed treatment of such Parking Bond Claims in the Fourth Amended Plan (as reflected in the Plan).

[22]  *See* Second Supplemental Declaration of Michael J. Paque Regarding the Solicitation and Tabulation of Votes On, and the Results of Voting with Respect to, Plan for the Adjustment of Debts of the City of Detroit (Docket No. 8072), filed on October 23, 2014 (the "Second Supplemental Voting Declaration"), at ¶¶ 8-9.

no distributions under the Plan.[23]  Therefore, Class 16 is conclusively presumed to reject the Plan in accordance with section 1126(g) of the Bankruptcy Code, and no votes were solicited from holders of Class 16 Claims.[24]

r)      The Plan was voted on by each Class of impaired Claims that was entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Orders.

s)      Each of Classes 5, 7, 8, 9, 10, 11, 12, 13 and 17 have accepted the Plan by at least two-thirds in amount and a majority in number of the Claims in such Classes actually voting.[25]

t)      The voting declarations admitted into evidence as City Exhibits 764 and 765, and the Second Supplemental Voting Declaration, set forth the tabulation of votes, as required by the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.[26]

16.     *Section 1129(a)(3).*  The Plan has been proposed (a) in good faith; (b) with honesty, sincerity and good intentions; (c) with a basis for expecting that an adjustment of the City's debts and an operational restructuring of the City can be effected in accordance with the purpose of chapter 9, and that the Plan is feasible; and (d) not by any means forbidden by law.  The Plan and the treatment of Claims thereunder are, and the process pursuant to which the City has sought Confirmation thereof has been, fundamentally fair to the City's creditors.

---

[23]      *See* Plan, at § II.B.3.w.i.

[24]      *See id.*.

[25]      *See* Second Supplemental Voting Declaration, at ¶¶ 8-9.

[26]      *See id.* at Exhibits A-C.

-19-

13-53846-tjt   Doc 8272-5   Filed 11/09/15   Entered 09/16/15 14:00:52   Page 28 of 225
13-53846-tjt   Doc 8045   Filed 06/18/14   Entered 06/18/14 16:25:52   Page 158 of 1293
173

The purpose of the Plan is to adjust the City's debts to enable the City to reverse its decades-long financial decline, eliminate its service delivery insolvency, restore adequate municipal services to its residents and meet its future financial obligations, consistent with the overarching remedial purpose of chapter 9 and the objectives and purposes of the Bankruptcy Code.  The City's good faith in proposing the Plan and its prior versions, and fundamental fairness in dealing with its creditors, is further evidenced by the fact that the Plan (a) incorporates multiple key settlements that are the result of extensive arm's length negotiations (often conducted within the context of Court-ordered mediation) between the City and representatives of a large proportion of its creditors, (b) has been proposed with the support of the City's largest creditor constituencies and (c) is feasible (*see* ¶¶ N.10-18 below).  In so finding, the Court has considered the totality of the circumstances in this Chapter 9 Case.

17.    *Section 1129(a)(6).*  Section III.A.7 of the Plan provides that the obtaining of any authorizations, consents and regulatory approvals necessary under applicable nonbankruptcy law is a specific condition to the effectiveness of the Plan, consistent with the language of section 1129(a)(6) of the Bankruptcy Code.[27]  The Board of Water Commissioners will continue to have all authority to set and approve the water and sewerage rates charged by the DWSD,

---

[27]    *See* Plan, at § III.A.7.

-20-

13-53846-tjt   Doc 8075-5   Filed 09/16/15   Entered 09/16/15 14:00:52   Page 24 of 25
13-53846-tjt   Doc 10185-5   Filed 09/16/15   Entered 09/16/15 14:00:52   Page 159 of 1294
173

provided that, if a DWSD Authority is approved and formed, such rates would be determined by the board of such DWSD Authority.[28]

18. *Section 1129(a)(8).* The Plan has not been accepted by all impaired Classes of Claims because (a) Classes 14 and 15 (collectively, the "<u>Impaired Rejecting Classes</u>") have voted to reject the Plan[29] and (b) consistent with section 1126(g) of the Bankruptcy Code, the holders of Claims in Class 16 (Subordinated Claims) (who receive no Distributions pursuant to Section II.B.3.w.i of the Plan) are deemed to have rejected the Plan.[30] Nevertheless, as more fully explained below, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code with respect to such Impaired Rejecting Classes.

19. *Section 1129(a)(10).* The Plan has been accepted by the following impaired Classes of Claims that are entitled to vote on the Plan, determined without including any acceptance of the Plan by any insider: Classes 5, 7, 8, 9, 10, 11, 12, 13 and 17.[31]

20. *Section 1129(b)(1): Unfair Discrimination.* For the reasons set forth in the Confirmation Opinion, the Plan does not discriminate unfairly against the Impaired Rejecting Classes. The Plan provides greater

---

[28]   *See* Plan, at § IV.A.1.

[29]   S*ee* Second Supplemental Voting Declaration, at ¶¶ 8-9.

[30]   *See* Solicitation Procedures Order, at ¶ 10.

[31]   *See* Second Supplemental Voting Declaration, at ¶¶ 8-9.

-21-

percentage recoveries to holders of (a) Pension Claims in Classes 10 and 11 (as high as approximately 59% and 60%, respectively, although the Court does not make any specific finding with respect to such percentage recoveries), (b) Class 8 Unlimited Tax General Obligation Bond Claims (approximately 74%), (c) Limited Tax General Obligation Bond Claims (approximately 44%) and (d) Indirect 36th District Court Claims (approximately 33%) than to holders of (x) Other Unsecured Claims (approximately 13%) and (y) Convenience Claims (25% recovery).

21.     Despite the differences in the Classes' respective recoveries, the Court finds that such discrimination is fair in light of, among other things, (a) the circumstances of the City's Chapter 9 Case, (b) the purpose of chapter 9, which is to adjust an insolvent municipality's debt so that it can provide adequate municipal services and (c) the Court's conscience, as informed by the Court's experience, education and sense of morality.

22.     Substantial mission-based considerations justify the differential treatment of Pension Claims.  The City is a municipal service enterprise whose mission is to provide municipal services to its residents and visitors to promote their health, welfare and safety.  The City, therefore, has a strong interest in preserving its relationships with its employees and in enhancing their motivation, consistent with the City's financial resources.  In contrast, the City

has no similar mission-related investment in its relationships with holders of Claims in Classes 14 and 15.

23. The Plan's differential treatment of Pension Claims is further justified because the fulfillment of the City municipal service mission is informed by, and subject to, the provisions of the constitution and laws of the State of Michigan and the City's status as an agency of the State. Article IX, Section 24 of the Michigan Constitution (the "Pensions Clause") (a) singles out municipal pension claims for special protection and (b) in so doing, specifically expresses the considered judgment of the people of the State of Michigan, which is entitled to substantial deference in connection with determining the fairness of the Plan's discrimination against the Impaired Rejecting Classes.

24. The reasonable expectations of creditors further demonstrate that the Plan's treatment of Pension Claims is fair, because the Pensions Clause gives notice to all of the City's unsecured creditors that, outside of bankruptcy, the rights of pension creditors are distinct and entitled to special State-law protections that are unavailable to other unsecured creditors of the City. Such constitutional notice (a) reasonably justifies the enhanced expectations of Holders of Pension Claims in this Chapter 9 Case and (b) should lower the reasonable expectations of all other unsecured creditors.

-23-

13-53846-tjt    Doc 8075-5    Filed 09/16/15    Entered 09/16/15 16:00:52    Page 162 of 225
13-53846-tjt    Doc 8025    Filed 10/09/14    Entered 10/09/14 23:29:07    Page 97 of 223    1297
173

25.     Moreover, the Plan's treatment of Pension Claims is the result of a collection of interconnected settlements.  The factors that inform the reasonableness of each individual settlement are the same factors that inform the Court's judgment regarding the fairness of discrimination under the Plan.  Because each such settlement is fair and reasonable, the discrimination in claim treatment resulting from such settlements also is fair.

26.     The treatment of Limited Tax General Obligation Bond Claims, Unlimited Tax General Obligation Bond Claims and Indirect 36th District Court Claims also is fair because, in each instance, such treatment is the result of arm's-length, intensely negotiated and reasonable settlements between the City and the respective creditors and their representatives and is based on the asserted differing legal rights of, and litigation brought by, such parties.  Specifically, a reasonable basis exists for the differential treatment of Limited Tax General Obligation Bond Claims and Unlimited Tax General Obligation Bond Claims, because the treatment of such Claims reflects (a) the results of protracted and comprehensively negotiated settlements between the City and the holders of such Claims and (b) the claimants' arguments to relative priority and security under State law.  In addition, the Plan's treatment of Indirect 36th District Court Claims is related to the City's mission, and therefore is fair, because of the City's continuing legal and funding relationship with the 36th District Court.

-24-

13-53846-tjt   Doc 8272-5  Filed 11/09/15  Entered 11/09/15 14:00:52   Page 26 of 225
13-53846-tjt   Doc 8045-5  Filed 09/16/15  Entered 09/16/15 23:00:52   Page 163 of 1298
173

27.     The plan would not be feasible without discriminating among unsecured creditors because, with respect to Pension Claims in particular, the City's recovery will turn in large part on its ability to marshal the support of its residents in general and its retirees, employees and their labor unions in particular. With respect to Pension Claims, Limited Tax General Obligation Bond Claims, Unlimited Tax General Obligation Bond Claims and Indirect 36th District Court Claims, the settlements achieved by the City removed the risk of ongoing litigation over their respective asserted priorities, which litigation posed a significant obstacle to the City's ability to confirm a workable plan. The City's proposal of the differential treatment between Classes of unsecured Claims under the Plan was made in good faith and was not motivated by personal animosity or antipathy. The Plan treats holders of Claims in the Impaired Rejecting Classes as well as possible under the circumstances.

28.     The Plan does not discriminate unfairly against Class 16 (Subordinated Claims) because the Claims within such Class are subordinated to all other Claims classified under the Plan in accordance with section 510(b) of the Bankruptcy Code and are entitled to Distributions under the Plan only to the extent that Classes that are senior in priority are paid in full.

*Section 1129(b)(1), (b)(2): Fair and Equitable.* For the reasons to be set forth in the Confirmation Opinion, the Plan is "fair and equitable"

-25-

13-53846-tjt    Doc 8045-5  Filed 09/16/15  Entered 09/16/15 14:00:52   Page 164 of
173
13-53846-tjt    Doc 8272-5  Filed 11/09/15  Entered 11/09/15 14:25:00   Page 29 of 223   1299

with respect to the Impaired Rejecting Classes. No evidence suggests that the City or any Class or group of creditors has committed any overreaching or misconduct that would require the Court to impose a remedy as a condition to Confirmation. Moreover, the circumstances of the City's Chapter 9 Case suggest to the Court's conscience that it is fair and equitable to impose the Plan upon the dissenting creditors against their stated will. A large number of Detroit residents are suffering hardship due to the City's service delivery insolvency. This condition is inhumane and intolerable, and can only be successfully addressed if the Plan is confirmed. No viable alternatives to the Plan exist that would resolve the City's service delivery insolvency and provide a greater recovery to Classes 14 and 15. Requiring creditors in the Impaired Rejecting Classes to share in the sacrifice that other creditors of the City have agreed to endure, and confirming the Plan, thus is fair and equitable under the circumstances.

I.     Section 943(b)(2). The Plan complies with the provisions of chapter 9 of the Bankruptcy Code. The Plan complies with section 941 of the Bankruptcy Code because the City filed the Plan for the Adjustment of Debts of the City of Detroit (Docket No. 2708) on February 21, 2014, consistent with the First Order Establishing Dates and Deadlines (Docket No. 280), entered on August 2, 2013, which order established March 1, 2014 as the deadline for the City to file its plan of adjustment. The Plan complies with section 942 of the

-26-

13-53846-tjt    Doc 8025-5    Filed 09/16/15    Entered 09/16/15 14:00:52    Page 165 of
13-53846-tjt    Doc 10175-5    Filed 11/09/15    Entered 11/09/15 23:09:53    Page 90 of 228    1300
173

Bankruptcy Code because the amendments and modifications made to the Fourth Amended Plan are either immaterial to, or do not adversely affect the treatment of, any Claim under the Plan.

        J.     <u>Section 943(b)(3)</u>. The Court, with the assistance of counsel, will establish an expeditious mediation and Court-review process to determine the reasonableness and disclosure of all fees and expenses, paid and unpaid, for which the City is obligated in connection with this case through the Effective Date, as required by section 943(b)(3) of the Bankruptcy Code, including (1) the professional fees and expenses of the GRS and the PFRS, to the extent that the City reimburses them, (2) the fees and expenses of the Fee Examiner and his professionals, (3) the Court-appointed feasibility expert and her counsel and (4) the other Fee Review Professionals. The preceding sentence does not apply with respect to fees and expenses explicitly dealt with in settlements previously approved by orders of the Court. The review pursuant to such process will satisfy the requirements of section 943(b)(3) of the Bankruptcy Code.

        1.     In addition, pursuant to the Fee Review Order and the Fee Examiner Order, and with the City's consent, the Fee Examiner was appointed in the Chapter 9 Case as an officer of the Court and has reviewed, or will review, the fees and expenses of all Fee Review Professionals submitted to the Fee Examiner for review in accordance with the Fee Review Order for the period

beginning on the Petition Date. Unless the Court subsequently orders otherwise, the fee review process established by the Fee Review Order will continue for fees and expenses incurred through the Effective Date pursuant to Section IV.N.2 of the Plan. In accordance with the Fee Review Order, each quarterly report and supplemental quarterly report filed by the Fee Examiner to date has determined that all Fee Review Professional Fees incurred during the relevant reporting periods have been fully disclosed and are reasonable or otherwise are commensurate with the complexity and speed of the Chapter 9 Case and the quality of services provided.[32] Further, the fees and expenses of the Fee Examiner Parties are subject to Court review and approval under the terms of the Fee Review Order and the Plan.

---

[32] *See* Fee Examiner's Quarterly Report for Months of July, August and September 2013 (Docket No. 2642), at ¶ 15; Fee Examiner's First Supplemental Quarterly Report for Months of July, August and September 2013 (Docket No. 3457), at ¶ 14; Fee Examiner's Second Supplemental Quarterly Report for Months of July, August and September 2013 (Docket No. 7574), at ¶ 14; Fee Examiner's Second Quarterly Report for Months of October, November and December 2013 (Docket No. 4498), at ¶ 16; Fee Examiner's First Supplemental Quarterly Report for Months of October, November and December 2013 (Docket No. 7575), at ¶ 17; Fee Examiner's Third Quarterly Report for Months of January, February and March 2014 (Docket No. 6528), at ¶ 18; Fee Examiner's First Supplemental Quarterly Report for Months of January, February and March 2014 (Docket No. 7332), at ¶ 19; Fee Examiner's Fourth Quarterly Report for Months of April, May and June 2014 (Docket No. 8186), at ¶ 18.

-28-

13-53846-tjt   Doc 8272-5   Filed 11/09/15   Entered 11/09/15 14:00:52   Page 92 of 225
13-53846-tjt   Doc 10125-5   Filed 09/16/15   Entered 09/16/15 16:00:52   Page 167 of 1302
173

K.   Section 943(b)(4).

　　　　1.　　All actions to be taken by the City to carry out the Plan

are consistent with, do not violate and are not prohibited by applicable law,

including, but not limited to, the following actions:

- the creation of the Detroit General VEBA and the Detroit Police and Fire VEBA;

- payments to be made by the DWSD during the period from the Effective Date through June 30, 2023 on account of (a) the DWSD's $428.5 million currently-calculated allocable share of the unfunded actuarially accrued liabilities of the GRS (as modified by the Plan), (b) related administrative costs and (c) restructuring costs incurred by the City in connection with the Chapter 9 Case allocable to the DWSD (the "DWSD Pension Funding"), consistent with paragraph 24 of the DWSD Tender Order;

- all actions taken in connection with the UTGO Settlement Agreement and all provisions of the Plan addressing recoveries upon Unlimited Tax General Obligation Bond Claims, including Sections II.B.3.n, II.B.3.o, II.B.3.p and IV.C of the Plan (such provisions of the Plan as they relate to such recoveries, and, collectively with the UTGO Settlement Agreement, the "UTGO Settlement"), including, but not limited to, the City's designation of an entity or entities to receive the Assigned UTGO Bond Tax Proceeds;

- the transfer of the DIA Assets to DIA Corp. pursuant to the DIA Settlement;[33] and

---

[33]   *See* Attorney General's Approval of DIA Settlement (Docket No. 5338), filed on June 17, 2014.

- all actions taken in connection with the Syncora Development Agreement (including the garage option), the Tunnel Lease and the FGIC Development Agreement.

L.    <u>Section 943(b)(5)</u>.  The Plan satisfies the requirements of section 943(b)(5) of the Bankruptcy Code.  The Plan expressly provides for the cash payment, in full, of Allowed Administrative Claims, including administrative expenses allowed under section 503(b) of the Bankruptcy Code either (1) on the Effective Date or as soon as reasonably practicable thereafter or (2) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which such Administrative Claim becomes an Allowed Claim.[34]

M.    <u>Section 943(b)(6)</u>.  The Plan satisfies the requirements of section 943(b)(6) of the Bankruptcy Code.  The effectiveness of the Plan is expressly conditioned upon the obtaining of any authorizations, consents and regulatory approvals necessary under applicable nonbankruptcy law.[35]  Neither the DWSD Pension Funding nor the provisions of the Plan relating to the DWSD CVR constitute a tax upon any DWSD ratepayer subject to electoral approval. The restructuring of the City's obligations pursuant to the Plan, and the consequent restructuring (and lowering) of DWSD's costs, will not necessitate an increase in the rates charged by DWSD in excess of normally scheduled rate increases.

---

[34]    *See* Plan, at § II.A.1.a.

[35]    *See* Plan, at § III.A.7.

N.    Section 943(b)(7).

1.    *Best Interests of Creditors*.  The Plan is in the best interests of creditors.  The Plan provides the City's creditor body, as a whole, with a better alternative than dismissal of the Chapter 9 Case and all that creditors can reasonably expect under the circumstances.  Outside of bankruptcy, the City would face several billion dollars in cumulative deficits over the next ten years, even if it attempted only to maintain the current level of inadequate public services.  Although the automatic stay has allowed the City to enhance its cash position during the bankruptcy, the fundamentals of the City's financial forecasts have not changed materially since the City first created the baseline financial forecasts in June 2013.  Moreover, if the City's Chapter 9 Case were dismissed, the City would lose the benefit of many of the settlements it has reached with its creditors. The City does not have sufficient excess revenues to continue paying its creditors outside of bankruptcy.

2.    The legal limitations on the collection of judgments that apply outside of bankruptcy also constrain the best interests of creditors test in bankruptcy.  Because Michigan Public Act 236 of 1961, the Revised Judicature Act, M.C.L. §§ 600.101, *et seq.* (the "Revised Judicature Act"), provides the sole remedy under State law for the City's creditors to recover on their claims, the City cannot be compelled under State law to liquidate City-owned assets to satisfy

-31-

13-53846-tjt   Doc 8025-5   Filed 09/16/15   Entered 09/16/15 14:00:52   Page 170 of 173
13-53846-tjt   Doc 8272-5   Filed 11/09/15   Entered 11/09/15 15:29:52   Page 98 of 228   1305
173

creditors' claims.[36]  The City also cannot be compelled to sell any City-owned

assets under the Bankruptcy Code because, in chapter 9 cases, section 904 of the

Bankruptcy Code prohibits the Court from interfering with "(1) any of the political

or governmental powers of the debtor; (2) any of the property or revenues of the

debtor; or (3) the debtor's use or enjoyment of any income-producing property."[37]

3.      Maintaining the art collection housed at the DIA

(the "<u>DIA Collection</u>") is critical to the feasibility of the Plan and to the City's

future because the DIA Collection is an invaluable and irreplaceable resource, and

because the DIA stands at the center of the City's cultural life.  Selling the DIA

Collection would impede the City's efforts to attract new residents, visitors and

businesses and would only deepen the City's fiscal, economic and social problems.

In addition, using the DIA Collection or some portion thereof as collateral for a

loan to pay creditors would be imprudent because doing so would (a) merely

substitute debt for debt and thus not benefit the City and (b) create a risk that the

City would lose any art used as collateral in the event of a default.

4.      Moreover, it would be impracticable for the City to

liquidate the DIA Collection in an attempt to maximize creditor recoveries.

Because (a) many works within the DIA Collection are subject to donor

---

[36]     *See* M.C.L. § 600.6093.

[37]     11 U.S.C. § 904.

-32-

-32-



restrictions and (b) the Michigan Attorney General and DIA Corp. contend that the entire DIA Collection is held in trust, any attempt to liquidate the DIA Collection or any material portion thereof to satisfy the claims of creditors most likely would result in costly, complex and time-consuming litigation regarding the City's precise ownership interests in the approximately 60,000 works of art that comprise the DIA Collection.  A forced liquidation of the DIA Collection would generate only a fraction of its true economic value.

        5.      Nevertheless, the Plan provides for multiple new sources of revenue, cost saving initiatives and settlements that improve recoveries for creditors.  The City has made reasonable efforts to monetize assets other than the DIA Collection, including the Detroit Windsor Tunnel, certain real estate properties, certain parking properties and the Joe Louis Arena property.  The City also has entered into the Great Lakes Water Authority memorandum of understanding, which benefits all of the City's creditors.[38]

        6.      The transactions and settlements associated with the "Grand Bargain" – including the State Contribution Agreement, the DIA Settlement and the City's comprehensive settlement of pension-related and labor-related issues negotiated with the Retiree Committee, the Retirement

---

[38]     *See* Memorandum of Understanding Regarding the Formation of the Great Lakes Water Authority, filed as Exhibit A to the Notice of Execution of Framework for Creating a Water and Sewer Authority (Docket No. 7357).

-33-

Systems and certain unions and retiree associations – will generate at least an additional $816 million in nominal revenue for the benefit of the holders of Pension Claims. In addition, the City has entered into favorable settlements with representatives of the holders of Pension Claims, OPEB Claims, COP Claims, Unlimited Tax General Obligation Bond Claims, Limited Tax General Obligation Bond Claims and Indirect 36th District Court Claims. The difference between the amounts asserted by such claimants and the amounts accepted in settlement of such Claims redounds to the benefit of all the City's stakeholders. The successful implementation of the reinvestment initiatives incorporated into the Plan (the "Reinvestment Initiatives") is indispensable to the City's efforts to provide its creditors with as significant a recovery as could be expected under the circumstances, and the maximization of such creditor recoveries influenced the design of the Reinvestment Initiatives. In addition, absent confirmation of the Plan, the City would not have the ability to access the capital markets on reasonable terms, meaning that the issuance of numerous and large judgments against the City would quickly deplete the City's limited resources and its tax base.

7.     Raising taxes also is not a viable option for the City. The City is legally prohibited from raising property tax rates above their current levels, which rates are higher than those in neighboring communities and among the highest in Michigan. The likelihood of the people of Detroit or the State