EXHIBIT A
LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

# Seller's Settlement Statement

eTitle Agency, Inc.
1650 W. Big Beaver
Troy, MI 48084
Phone: (248)502-3100   Fax: (248)502-3101

**Date:** 07/17/15   **Time:** 1:35:46PM     **Escrow no.:** 1530716
**Close of escrow:**                          **Escrow officer:** Tamara Sadler
**Borrower:** Waterfront Terminal Holdings II, LLC, a Michigan limited liability company
**Seller:** City of Detroit, a Michigan public body corporate
**Property location:** 5701 W. Jefferson
Detroit, MI 48209

| | Seller | |
| --- | --- | --- |
| | Debit | Credit |
| **Financial Consideration** | | |
| Contract sales price | | 735,000.00 |
| **Prorations/Adjustments** | | |
| Summer tax 350 days @ 30.108 | | 10,537.90 |
| **Recording Charges** | | |
| Record discharge of Lis Pendens to Wayne County Register of Deeds | 50.00 | |
| **Subtotals** | 50.00 | 745,537.90 |
| **Balance Due TO Seller** | 745,487.90 | |
| **TOTALS** | 745,537.90 | 745,537.90 |

Seller

City of Detroit, a Michigan public body corporate

BY: _____

_____

eTitle Agency, Inc.
Settlement Agent

## EXHIBIT 6H – TRUE COPY CERTIFICATE OF RESOLUTION APPROVING REVERE DOCK OFFER TO PURCHASE

24838841.2\022765-00202

13-53846-tjt   Doc 10085-7   Filed 09/16/15   Entered 09/16/15 13:00:52   Page 3 of
13-53846-tjt   Doc 10087-1   Filed 07/27/15   Entered 07/27/15 13:14:13   Page 3 of
136
1625

# TRUE COPY CERTIFICATE

STATE OF MICHIGAN } SS
City of Detroit

## CITY CLERK'S OFFICE, DETROIT

I, __Janice M. Winfrey__ , City Clerk of the City of Detroit, in said State, do hereby certify

that the annexed paper is a TRUE COPY OF ___RESOLUTION___

adopted (passed) by the City Council at session of ___June 30,___ 20 __15__

and approved by Mayor ___July 7,___ 20 __15__

as appears from the Journal of said City Council in the office of the City Clerk of Detroit, aforesaid; that I have compared the same with the

original, and the same is a correct transcript therefrom, and of the whole of such original.

**In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of said City, at**

Detroit, this __10th__ day of __July__ A.D. 20 __15__

CITY CLERK





CITY OF DETROIT
PLANNING AND DEVELOPMENT DEPARTMENT

COLEMAN A. YOUNG MUNICIPAL CENTER
2 WOODWARD AVE., SUITE 808
DETROIT, MICHIGAN 48226
PHONE 313•224•1339
WWW.DETROITMI.GOV

May 29, 2015

Detroit City Council
1340 Coleman A. Young Municipal Center
Detroit, MI 48226

Re:     Sale by Development Agreement - 5851 W. Jefferson Avenue, Detroit, MI 48209

Honorable City Council:

The City of Detroit Planning and Development Department has received an offer from Revere Dock, LLC, a Michigan limited liability company ("**Revere Dock**") to purchase from the City of Detroit (the "**City**") the approximately 17.1009 acres of vacant real property described on the attached Exhibit A, being part of what is commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**").

The terms of the offer are set forth in a Purchase Agreement dated February 17, 2015 (the "**Offer to Purchase**"). Under the terms of the Offer to Purchase, the Property would be conveyed to Revere Dock under a development agreement by quit claim deed (the "**Deed**"), for two million two hundred and eighty thousand and 00/100 Dollars (**$2,280,000.00**) (the "**Purchase Price**"). The Purchase Price is equal to the Property's current fair market value as determined by an independent appraisal obtained by the City. Under the terms of the development agreement, Revere Dock's construction contracts will provide that at least 51% of the workforce must be Detroit residents, Detroit residents will perform 51% of the hours worked on the project, and Revere Dock will establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses, and/or Detroit Emerging Businesses.

Revere Dock, LLC is an affiliate of Erickson's Incorporated, a highly engineered marine and specialty services company with current contracts in Detroit and throughout the Great Lakes. Revere Dock's development of the property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment. The proposed use is permitted as a matter of right in an M-4 (Intensive Industrial) zone.

We request that your Honorable Body adopt the attached resolution approving the sale of the Property by development agreement, and authorizing the Planning and Development Department Director to execute the Deed and such other documents as may be necessary or convenient in connection with the City's sale of the Property.

Respectfully submitted,

Maurice Cox, Director

MC:RC:kc

cc:    Aliyah Bastce, Mayor's Office
       Val Upshaw, H&RD Liaison

ENTERED JUN 2 5 2015

ENTERED JUN 1 8 2015

2015 JUN 15 A 11: 0
DETROIT
CITY CLERK

Move to formal — CWD (21) Errand

1627



By Council Member _____ LELAND _____

     **WHEREAS**, the City of Detroit Planning and Development Department has received an offer from Revere Dock, LLC, a Michigan limited liability company, to purchase approximately 17.1009 acres of the vacant real property, commonly known as 5851 W. Jefferson Avenue, Detroit, MI 48209, (the "**Property**") described in Exhibit A; and

     **WHEREAS**, in accordance with Section 14-8-10 of the Detroit City Code, it is deemed in the best interests of the City that the Property be sold without public advertisement or the taking of bids.

     **NOW, THEREFORE, BE IT RESOLVED,** that the sale of Property by development agreement to **Revere Dock, LLC, a Michigan limited liability company,** for the Purchase Price of **two million two hundred eighty thousand dollars ($2,280,000.00),** and otherwise in accordance with the terms of the Offer to Purchase, is hereby approved; and be it further

     **RESOLVED,** that customary closing costs up to two hundred dollars ($200.00), and real estate brokerage commissions not to exceed five percent (5%) of the Purchase Price may be deducted from the Purchase Price and paid from the sale proceeds as "Property Transaction Costs" in accordance with the terms of the Property Management Agreement dated October 31, 2014, by and between the City and the City of Detroit Building Authority (the "Property Management Agreement"); and be it further

     **RESOLVED,** that a "Transaction Fee" may be deducted from the Purchase Price and be paid from the proceeds to the City of Detroit Building Authority in accordance with the terms of the Property Management Agreement; and be it further

     **RESOLVED,** that the sale of Property to Revere Dock, LLC, a Michigan limited liability company, without public advertisement or the taking of bids is hereby approved in accordance with Sec. 14-8-10 of the Detroit City Code; and be it further

     **RESOLVED,** that the Director of the Planning and Development Department, or his or her designee, is authorized to execute the Deed and such other documents as may be necessary or convenient for the consummation of the transaction pursuant to and in accordance with the Offer to Purchase; and be it further

     **RESOLVED,** that the Director of the Planning and Development Department, or his or her designee is authorized to execute any required instruments to make and incorporate technical amendments or changes to the Quit Claim Deed (including but not limited to corrections to or confirmations of legal descriptions, or timing of tender of possession of particular parcels) in the event that changes are required to correct minor inaccuracies or are required due to unforeseen circumstances or technical matters that may arise prior to the conveyance of the Property, provided that the changes do not materially alter the substance or terms of the transfer and sale; and be it finally

     **RESOLVED,** that the Deed will be considered confirmed when executed by the Director of the Planning and Development Department, or his or her designee and approved by the Corporation Counsel as to form.

1628

EXHIBIT A
LEGAL DESCRIPTION


A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY,
MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH
INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC
ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL
AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART
OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED
IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO
PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF
LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE
WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN
LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING
NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE,
EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH
338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE
WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID
PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH
PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF
PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF
PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET
ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO
A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH
PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF
PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF
PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET
ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE
CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE
S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR
LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST
LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET
ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF
BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS
AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _Basil Sarim_ DATE: _4/28/2015_

Street Address[es]:

Property Tax Ward & Item numbers:



# ADOPTED AS FOLLOWS
# COUNCIL MEMBERS

| | YEAS | NAYS |
|---|---|---|
| Janee **AYERS** | ✓ | |
| Scott **BENSON** | ✓ | |
| Raquel **CASTANEDA-LOPEZ** | ✓ | |
| *George **CUSHINGBERRY, JR.** | ✓ | |
| Gabe **LELAND** | | ✓ |
| Mary **SHEFFIELD** | ✓ | |
| Andre **SPIVEY** | ✓ | |
| James **TATE** | ✓ | |
| Brenda **PRESIDENT JONES** | ✓ | |
| *PRESIDENT PRO TEM | | |
| | 8 | 1 |

**EXHIBIT 6I – REVERE DOCK OFFER TO PURCHASE**

# PURCHASE AGREEMENT

## BY AND BETWEEN

## CITY OF DETROIT

### and

## STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED

### (Erickson/Revere Copper Project)

Date: _2/17_ , 2015

# TABLE OF CONTENTS

RECITALS .................................................................................................. 1
ARTICLE 1. DEFINITIONS ...................................................................... 1
   1.01 - "Agreement" ............................................................................... 1
   1.02 - "Associate" ................................................................................ 2
   1.03 - "Closing" ................................................................................... 2
   1.04 - "Deed" ...................................................................................... 2
   1.05 - "Effective Date" ......................................................................... 2
   1.06 - "Encumbrance" .......................................................................... 2
   1.07 - "Event of Default" and "Default" ............................................... 2
   1.08 - "Property" ................................................................................. 2
ARTICLE 2. SALE / COMPENSATION ...................................................... 2
   2.01 - Purchase Price .......................................................................... 2
ARTICLE 3. TITLE INSURANCE/DEED ..................................................... 2
   3.01 - Title Insurance/Survey ................................................................ 2
   3.02 - Title/Deed ................................................................................. 3
ARTICLE 4. TAXES AND ASSESSMENTS ................................................. 3
   4.01 - Property on Tax Rolls at Closing ................................................ 3
   4.02 - Property Not on Tax Rolls at Closing .......................................... 3
ARTICLE 5. REPRESENTATION AND WARRANTIES ................................ 4
   5.01 - Inducement ............................................................................... 4
   5.02 - Survival .................................................................................... 5
ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY ....... 5
   6.01 - Surveying and Testing ................................................................ 5
   6.02 - Condition of Property; Inspection Period ..................................... 6
   6.03 - Release of City from Liability ...................................................... 6
   6.04 - Section 16 of NREPA ................................................................. 6
ARTICLE 7. CLOSING ............................................................................. 7
   7.01 - Time and Place of Closing ........................................................... 7
   7.02 - Conditions to Closing ................................................................. 7
   7.03 - Delivery of Deed and Possession ................................................. 8
   7.04 - Payment of Expenses ................................................................. 8
   7.05 - City's Failure to Convey ............................................................ 8
ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT ................................ 8
   8.01 - Default by Purchaser ................................................................. 8
   8.02 - Failure to Cure Default .............................................................. 9
   8.03 - Default by the City .................................................................... 9
ARTICLE 9. REMEDIES ........................................................................... 9
   9.01 - Remedies Cumulative ................................................................. 9
   9.02 - Reimbursement of Costs ............................................................. 9
ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT ... 10
   10.01 - No Speculation ....................................................................... 10
   10.02 - Prior Approval of Assignment .................................................. 10
   10.03 - Consideration for Assignment .................................................. 10
ARTICLE 11. INDEMNITY ...................................................................... 10
   11.01 - Purchaser Indemnification ....................................................... 10
   11.02 - Defense of Claims ................................................................... 10

i

11.03 - Non-Liability of the City ................................................................. 10
11.04 - Hazardous Materials ...................................................................... 11
**ARTICLE 12. AMENDMENTS** ................................................................. 12
12.01 - Form ............................................................................................... 12
12.02 - Binding Effect ................................................................................. 13
**ARTICLE 13. NOTICES** .......................................................................... 13
13.01 - Addresses ...................................................................................... 13
13.02 - Date of Notice ............................................................................... 13
**ARTICLE 14. SALE / COMPENSATION** .................................................. 14
14.01 - Severability .................................................................................... 14
14.02 - Entire Agreement .......................................................................... 14
14.03 - Terminology ................................................................................... 14
14.04 - Covenants and Conditions ............................................................ 14
14.05 - Captions ........................................................................................ 14
14.06 - Cumulative Remedies; Jurisdiction; Venue ................................... 14
14.07 - Force Majeure ............................................................................... 14
14.08 - Provisions Not Merged With Deed ................................................. 15
14.09 - Counterparts ................................................................................. 15
14.10 - Singular and Plural, etc. ................................................................ 15
14.11 - Time of the Essence ...................................................................... 15
14.12 - Authority of City ............................................................................ 15
**EXHIBIT A** ............................................................................................. 17
**EXHIBIT B** ............................................................................................. 19
**EXHIBIT C** ............................................................................................. 20
**EXHIBIT D** ............................................................................................. 22
**Schedule I** ............................................................................................. 26

ii

## PURCHASE AGREEMENT

**THIS PURCHASE AGREEMENT** ("Agreement") is entered into as of _2/17_, 2015, by and between the **CITY OF DETROIT**, a Michigan public body corporate, acting by and through its Planning and Development Department, whose address is 2300 Cadillac Tower, Detroit, Michigan 48226, referred to herein as the **"City"**, and **STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED**, whose address is 2217 Lake Avenue, North Muskegon, Michigan 49445, referred to herein as **"Purchaser."**

### RECITALS:

A. Purchaser has offered to purchase land located in the City of Detroit, the legal description of which is set forth on **Exhibit A** attached hereto and incorporated by reference, in accordance with the terms, covenants, and conditions of this Agreement.

B. Purchaser's planned project for the Property includes the goals set forth on **Exhibit B** attached to this Agreement.

C. The City believes that the sale of the Property pursuant to this Agreement and the fulfillment generally of this Agreement are in the best interests of the City and the health, safety and welfare of its residents.

In consideration of the foregoing recitals and the mutual obligations of the parties hereto, each of them does hereby covenant and agree with the other as follows:

## ARTICLE 1. DEFINITIONS

The following words and expressions shall, wherever they appear in this Agreement, be construed as follows:

1.01 **"Agreement"** shall mean this Agreement and the following Exhibits and Schedules attached hereto and expressly made a part hereof:

| | |
|---|---|
| Exhibit A | Description of Property |
| Exhibit B | Project Goals |
| Exhibit C | Quit Claim Deed |
| Exhibit D | Right of Entry Letter |
| Schedule I | Certificate of Authority for Purchaser |

1.02 **"Associate"** shall mean any consultant, contractor, subcontractor, or any other party engaged by Purchaser and the agents and employees of said parties engaged by Purchaser to undertake any of the activities associated with this Agreement.

1.03 **"Closing"** shall mean a date agreed upon by the parties hereto for the transfer of title to the Property, but in no event shall said date be more than ninety (90) days from the Effective Date of this Agreement.

1.04 **"Deed"** shall mean the Quit Claim Deed conveying the Property to Purchaser by the City in substantially the form as attached hereto as **Exhibit C**.

1.05 **"Effective Date"** shall have the meaning set forth in Section 14.12 of this Agreement.

1.06 **"Encumbrance"** shall mean any covenant, license, right of way, easement, limitation, condition, reservation, restriction, right or option, mortgage, pledge, lien, construction lien, mechanic's lien, charge, conditional sale or other title retention agreement or arrangement, encumbrance, lease, sublease, security interest, or trust interest.

1.07 **"Event of Default"** and **"Default"** shall have the meanings as set forth in Article 8 of this Agreement.

1.08 **"Property"** shall mean that parcel of land identified by as a part of the Revere Copper and Brass Site and located in the City of Detroit, as more particularly described in **Exhibit A** attached hereto and made a part hereof.

## ARTICLE 2. SALE / COMPENSATION

2.01 Purchase Price. Subject to the terms, covenants, and conditions of this Agreement, Purchaser agrees to purchase, and the City agrees to convey, the Property for Two Million Two Hundred Eighty Thousand Dollars ($2,280,000.00) ("Purchase Price"), to be paid in immediately available funds by wire transfer, or certified or cashier's check simultaneously with the delivery of the Deed.

## ARTICLE 3. TITLE INSURANCE/DEED

3.01 Title Insurance/Survey.

a. Commitment. Within five (5) business days following the Effective Date, Purchaser shall order a commitment for an owner's title insurance policy for the Property showing all matters affecting record title to the Property, subject to the terms, covenants, and conditions of this Agreement and standard exceptions, together with copies of all instruments described in Schedule B thereof (the "Title Commitment"). The Title Commitment will be in the amount of the Purchase Price and will be issued by eTitle Agency, with offices at 1650 West Big Beaver Road, Troy, Michigan 48084. A copy of the Title Commitment will be provided to the City promptly upon Purchaser's receipt.

b. Survey. Within thirty (30) days following the Effective Date, Purchaser shall obtain a current survey of the Property (the "Survey") from a registered land surveyor. The legal description of the Property set forth in the Title Commitment shall conform exactly to the legal descriptions in the Survey and the Survey shall contain such detail from the ALTA/ASCM Schedule A Table as Purchaser deems required. The Survey will be certified to the City, Purchaser, and others designated by Purchaser, and a copy will be provided to the City immediately upon Purchaser's receipt.

c. Title Objections. Purchaser shall have the right, until ten (10) days following receipt of the Title Commitment and the Survey (the "Review Period"), to identify in writing those matters and/or title encumbrances identified in the Title Commitment or Survey that are unacceptable to it, in which event the City shall have reasonable opportunity (but not the obligation) to cure or remove such matters (if any) and to satisfy any other requirements set forth therein. The items contained in the Commitment or the Survey to which Purchaser does not object during the Review Period shall be deemed permitted exceptions (the "Permitted Exceptions"). The City's failure or inability to, within twenty (20) days after receipt of notification of such objections (the "Cure Period"), cure such objections, or conscious decision not to do so, communicated in writing to Purchaser within the Cure Period, shall give Purchaser the right to terminate this Agreement and be relieved of all further obligation to perform hereunder upon notice to the City .

d. Policy. The City **WILL NOT** order or pay the premium for an owner's policy of title insurance, nor will the City provide any estoppel or seller's certificate to the Purchaser or the title insurance company. Any title insurance policy insuring Purchaser's title to the Property, whether an owner's or mortgage policy, with or without standard exceptions, will be at Purchaser's expense.

3.02    Title/Deed.

a. Conveyance. At the Closing, if Purchaser has materially complied with all of those terms and conditions precedent to Closing as specified hereunder, the City will deliver the Deed to the Property to Purchaser.

b. Title conveyed. Such conveyance and title shall fee simple, and shall, in addition to the conditions and covenants hereinafter provided for, be subject to existing easements and restrictions of record, all applicable zoning and building laws, and other encumbrances (if any) specifically referred to in Exhibit A. Purchaser acknowledges that the City has not made, and by execution of this Agreement or any Deed does not make, any representations or warranties whatsoever with respect to title to the Property.

## ARTICLE 4. TAXES AND ASSESSMENTS

4.01    Property on Tax Rolls at Closing. In the event that the Property is on the tax rolls at the date of Closing, all taxes and assessments which have become a lien upon the Property at the date of Closing shall be paid by the City provided that current City and County taxes shall be prorated and adjusted to the date of Closing on a due date basis.

4.02    Property Not on Tax Rolls at Closing. In the event that the Property is not on the tax rolls at the date of Closing, Purchaser agrees to pay to the City at Closing an amount equal to the City of

Detroit ad valorem taxes (including debt service but not including any ad valorem taxes which would have been collected by the City on behalf of another governmental body, whether the State, County or any other body or for any other millage) which would have been levied had the Property been on the tax rolls, prorated from the date of Closing to the dates when the next tax bills are issued after the date the Property is placed back on the tax rolls, and the Property will be placed back on the tax rolls as of December 31 of the year in which the Closing takes place. For example, if the date of Closing is on or before December 31, 2015, the Property would be placed back on the tax rolls effective December 31, 2015, the next tax bills issued would be July 1, 2016 for the summer taxes and December 1, 2016 for the winter taxes and the payment for taxes would be pro-rated to June 30, 2016 and November 30, 2016, respectively. If the date of Closing takes place on or after January 1, 2016, the Property will not be placed on the tax rolls until December 31, 2016, and tax bills will not be issued until July 1 and December 1, 2017 and, in that case, the payment for taxes would be prorated to June 30 and November 30, 2017.

## ARTICLE 5. REPRESENTATION AND WARRANTIES

5.01 Inducement. In order to induce the City to enter into this Agreement, Purchaser represents and warrants to the City that:

a. Organization and Qualification. Any permitted assignee of Purchaser shall be an entity validly existing and in good standing under the laws of the State of Michigan and with full power and authority to carry on its business as it is conducted at the time of the assignment of this Purchase Agreement.

b. Power to Make Agreement. It has the power to make, deliver and perform this Agreement and finance the Improvements in accordance with the terms and conditions of this Agreement and has taken all necessary action to authorize the foregoing and to authorize the execution, delivery and performance of this Agreement.

c. Lack of Legal Impediments. To the best of its knowledge, the execution, delivery and performance of this Agreement will not violate any provision of any existing law, regulation, order or decree of any court or governmental entity, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement, and will not violate any provision of, or constitute a default under, any agreement or contract to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement. Purchaser has paid all income, personal and property taxes, and inspection or license fees heretofore due, payable, and owing to the City. Purchaser is not in default to the City.

d. Legal Operation. It is, to the best of its knowledge, in compliance with all existing laws and regulations applicable to it, the violation of which would or could materially adversely affect its ability to fulfill its obligations under this Agreement.

e. Litigation. As of the date of this Agreement, no litigation or administrative proceeding of or before any court or administrative body is presently pending, nor, to its knowledge, is any such litigation or proceeding presently threatened, against it or any of its property, that, if adversely determined, would or could materially affect its ability to fulfill its obligations under this Agreement.

f. Other Information. To the best of its knowledge, all other written information, reports, papers, and data given to the City by Purchaser with respect to Purchaser are accurate and correct in all material respects and substantially complete insofar as completeness may be necessary to give the City a true and accurate knowledge of the subject matter and all projections of future results are, in its opinion, reasonable.

g. Other Agreements. To the best of its knowledge, it is not a party to any agreement or instrument materially and adversely affecting its present or proposed business, properties or assets, operation or condition, financial or otherwise, not disclosed to the City in writing, the existence of which would or could materially affect its ability to fulfill its obligations under this Agreement; and it is not in default in the performance, observance, or fulfillment of any of the material obligations, covenants, or conditions set forth in any agreement or instrument to which it is a party, the violation of which would or could materially affect its ability to fulfill its obligations under this Agreement.

h. Brokerage and Finder's Fees and Commissions. Purchaser has not engaged any broker, finder or agent with respect to the transactions contemplated by this Agreement. Purchaser shall indemnify and hold the City harmless from and against claims for brokerage in connection with this transaction by any person or party claiming by, through or under Purchaser.

5.02  Survival. All of the representations and warranties contained in this Article 5 or pursuant hereto shall survive the delivery of the Deed and shall remain in full force and effect for a period of six (6) months following the date of Closing. Purchaser shall indemnify and hold the City harmless from and against, and shall be obligated to pay and reimburse the City for, any and all out-of-pocket expenses (including reasonable attorneys' fees, whether inside or outside counsel) which the City may sustain or incur as a result of any misrepresentation or breach of warranty on the part of Purchaser due to the City's reliance thereon. The "best of Purchaser's knowledge" is based on Purchaser's actual knowledge and is without any duty to investigate. Purchaser shall have no liability for a breach of any representation or warranty in the event that Purchaser gives written notice to the City prior to Closing that such representation or warranty was inaccurate or any document or report furnished to or obtained by the City, its agents, employees or contractors in connection with this Agreement shall have disclosed that such representation or warranty was inaccurate prior to Closing.

## ARTICLE 6. TESTS AND SURVEYANCE; CONDITION OF PROPERTY

6.01  Surveying and Testing. The City will, prior to the transfer of title, authorize Purchaser through and in accordance with a fully executed Right-of-Entry, to make soil boring and bearing tests and undertake such surveying and environmental and other due diligence activities as Purchaser deems appropriate, provided such does not interfere with the City's use, if any, and subject to the Purchaser's compliance with the requirements of this Article 6 and elsewhere in this Agreement. All such testing shall be done at Purchaser's risk and expense. Subject to the terms of the aforementioned Right of Entry, Purchaser shall give prior notice to the City to inspect and investigate the condition of the Property, including its environmental condition and shall conduct such inspection and investigation as Purchaser desires during normal business hours. Prior to entering onto the Property for such purposes, Purchaser shall (i) request authorization from the Building, Safety, Engineering and Environmental Department and provide details of the intended activities and other documentation deemed necessary by

the City, (ii) obtain a Right-of-Entry letter from City, (iii) execute said letter, and (iv) comply with all conditions and requirements stated therein. Purchaser shall use all reasonable efforts to minimize damage to the Property in connection with such entry and shall fully restore the Property to the condition existing prior to such entry. Purchaser shall indemnify, defend and hold the City harmless from and against, any and all loss, cost, liability and expense, including reasonable attorneys' fees and litigation costs, suffered or incurred by the City as a result of the Purchaser's activities in accordance with the Right-of-Entry. Purchaser shall submit to the City a copy of each survey or report generated as a result of such activities.

    6.02   Condition of Property; Inspection Period.

        a.  Purchaser takes the Property as it finds it, **"AS IS"**, and the City makes no implied or express representations or warranties as to its fitness for absolutely any purpose whatsoever. By executing this Agreement, Purchaser acknowledges that it is satisfied with the condition of the Property, subject only to inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above. If, within ninety (90) days of the Effective Date, Purchaser fails to undertake such investigations and/or obtain such test results and surveys, or fails to object to the condition of the Property based upon the results of such tests, investigations or surveys, or fails to deliver copies of any and all reports of such tests, investigations and/or surveys to the City, Purchaser shall be deemed to have waived any right to object to the condition of the Property and shall be deemed to have declared its full satisfaction therewith.

        b.  In order to facilitate Purchaser's investigation of the Property, within ten (10) business days of the Effective Date hereof, the City shall deliver copies of any existing (i) environmental site assessments, reports, notices or correspondence from environmental regulatory authorities or citations, (ii) lease agreements, lease modifications, or third-party property/occupancy rights, if any (iii) notices or other correspondence that has been received from any governmental agency regarding the condition of the Property or pending government actions, (iv) land surveys, and (v) soil reports (collectively, the "Due Diligence Materials"), provided the same are in the City's possession or control.

        c.  In the event Purchaser determines, based on its inspection of the Property, review of title, and the results of the tests, investigations, and surveys permitted under Section 6.01, above that it does not wish to proceed with the purchase of the Property, Purchaser shall have the right for any reason whatsoever in its sole discretion, prior to the ninety-first (91st) day following the Effective Date, to terminate this Agreement by delivery of a written notice to the City (the "Notice of Termination"). Upon timely delivery by Purchaser of the Notice of Termination, this Agreement shall terminate without liability of Purchaser.

    6.03   Release of City from Liability. Purchaser hereby releases the City and its officials, employees, and agents (but not any third party) from any and all liability for any defects in or conditions of the Property, including but not limited to any surface, subsurface, latent or patent conditions whether naturally occurring or by action of any party, or conditions currently existing thereon, including but not limited to conditions described in Section 11.04, but subject to Section 11.04.

    6.04   Section 16 of NREPA. Pursuant to the requirements of Section 16 of Part 201 of NREPA, MCL 324.20116, Purchaser agrees that the City has notified Purchaser that the Property is a

"facility" as that term is defined in Part 201 of NREPA. The general nature and extent of any land or resource restrictions or any release at or from the facility that is known to the City is more fully described in certain reports, copies of which have been provided to Purchaser. By its execution of this Agreement, Purchaser acknowledges receipt of the following reports:

Insert list of documents, if any, identified by DEA: None

## ARTICLE 7. CLOSING

7.01   Time and Place of Closing.  The City will notify Purchaser of the prospective closing date not less than ten (10) calendar days prior to the Closing, unless otherwise agreed between the parties. The Closing shall occur within thirty (30) days after satisfaction of the conditions to closing as specified in Section 7.02 of this Agreement.  The Closing shall take place at the office of the City's Planning & Development Department, or such other location in downtown Detroit designated by the City.  If the conditions to closing specified in Section 7.02 of this Agreement have not been satisfied or waived by June 1, 2015, either party may, thereafter, terminate this Agreement without further liability.

7.02   Conditions to Closing.

a.   City's Obligations to Close.  The obligation of the City to effect a Closing hereunder shall be subject to receipt of a resolution(s) by the Detroit City Council authorizing the transaction and fulfillment of all conditions contained therein, and fulfillment by Purchaser of each of the following conditions precedent:

(i)  Accuracy of Representations and Warranties.  All representations and warranties of Purchaser set forth in Section 5.01 of this Agreement shall be true and correct as of the date of Closing as if made on that date.

(ii)  Resolution of Purchaser's Authority.  Upon Purchaser's assignment of this Agreement in accordance with Section 10.02 of this Agreement, such assignee shall furnish to the City a certified copy of a resolution satisfactory to the City in form and substance, duly adopted by the Board of Directors or Members of Purchaser's assignee, or an authorized vote of the partners or joint venturers, authorizing the execution, delivery and performance of this Agreement and all other documents and actions contemplated hereunder. Purchaser's assignee shall also furnish to the City an incumbency certificate, executed by the corporate secretary, general partner, or proper manager of Purchaser's assignee, identifying the officers, general partners, or managers of Purchaser's assignee.

(iii)  Payment of Purchase Price and Closing Costs.  Purchaser shall have tendered payment of the Purchase Price and the closing costs payable by Purchaser.

(iv)  No Default.   There shall be no existing Default by Purchaser under this Agreement.

(v)  Development Agreement. Purchaser shall have executed and delivered to the City a development agreement for the Property in a form approved by the City.

b. **Purchaser's Obligations to Close.** The obligation of Purchaser to effect a Closing hereunder shall be subject to the fulfillment by the City of each of the following conditions precedent:

(i) **Title.** Title to the Property shall be in the form required by this Agreement.

(ii) **City Council and Other Approval.** The City shall furnish to Purchaser a resolution(s) by the Detroit City Council authorizing the transaction and all conditions contained therein shall be fulfilled.

(iii) **Acceptable Condition of Property.** The physical and environmental condition of the Property and the results of Purchaser's other investigations shall be acceptable to Purchaser, pursuant to Article 6.

7.03    **Delivery of Deed and Possession.** The City will deliver the Deed to the Property and the possession thereof to Purchaser at the Closing provided that Purchaser has complied with all conditions precedent as specified herein. Purchaser shall be responsible for recording the Deed and paying all recording costs (including the cost of the documentary stamp tax on the Deed, if any).

7.04    **Payment of Expenses.** Purchaser shall pay all costs, fees, and out of pocket expenses of whatsoever kind or nature related to the procurement of services of Associates and contractors, etc. which have been incurred pursuant to the making of this Agreement and shall hold the City harmless with respect to the payment of same notwithstanding anything contained herein or elsewhere to the contrary.

7.05    **City's Failure to Convey.** In the event the City does not tender the conveyance of the Property in the manner provided in this Agreement, and any such failure shall not be cured within thirty (30) days after written demand by Purchaser, then, provided Purchaser is not in material Default under this Agreement, at the option of Purchaser, this Agreement shall be terminated, or, if all of the conditions set forth in Section 7.02a above have been satisfied, Purchaser shall be entitled to seek specific performance of this Agreement. In no event shall Purchaser seek or be entitled to money damages.

## ARTICLE 8. DEFAULTS AND EVENTS OF DEFAULT

8.01    **Default by Purchaser.** The occurrence of any one or more of the following events prior to Closing shall constitute a Default of this Agreement by Purchaser:

a.    Purchaser admits in writing its inability to pay its debts generally as they become due, or Purchaser ceases to conduct business in the normal course by reason of any of the following: (i) The making by Purchaser of any general arrangement or general assignment for the benefit of creditors; (ii) Purchaser becoming a "debtor" as defined in 11 USC § 101 or any successor statute thereto (unless, in the case of a petition filed against Purchaser, the same is dismissed within sixty (60) days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where possession is not restored to Purchaser within sixty (60) days; (iv) the attachment, execution or other judicial seizure of substantially all of Purchaser's assets located at the Property or of Purchaser's interest in this Agreement, where such

seizure is not discharged within sixty (60) days; or (v) its voluntary or involuntary dissolution. In the event that any provision of this subsection is contrary to any applicable law, such provision shall be of no force or effect.

      b.  Purchaser violates any of the terms and conditions of this Agreement, except as otherwise provided in this Section 8.01, and Purchaser fails to cure same within thirty (30) days after receipt of written notice by the City to cure said Default.

      c.  Purchaser, not due to any breach of the City, does not acquire the Property pursuant to a Closing in accordance with this Agreement, unless such failure is due to the failure of a condition precedent to Purchaser's obligation to close as set forth in this Agreement.

    8.02   Failure to Cure Default. Any such Default on the part of Purchaser as set forth in Section 8.01 and the failure of Purchaser to cure such Default or within thirty (30) days after written demand by the City to cure said Default for Subsection 8.01b shall be deemed to constitute an **Event of Default,** provided, however, that if the nature of Purchaser's Default is such that more than the cure period provided is reasonably required for its cure, then Purchaser shall not be deemed to be in default if Purchaser commences such cure within said period and thereafter diligently pursues such cure to completion. Defaults pursuant to Subsections 8.01a are hereby deemed to be material, non-curable Events of Default without the necessity of any notice by the City to Purchaser thereof. The City may, in its sole discretion, waive in writing any Default or Event of Default by Purchaser.

    8.03   Default by the City. The City shall not be in default unless the City fails to perform obligations required of the City within a reasonable time, but in no event later than ninety (90) days, after written notice by Purchaser to the City, specifying wherein the City has failed to perform such obligation, provided, however, that if the nature of the City's obligation is such that more than ninety (90) days are reasonably required for performance then the City shall not be in default if the City commences performance within such ninety (90) day period and thereafter diligently pursues such performance to completion.

## ARTICLE 9. REMEDIES

    9.01   Remedies Cumulative. The rights and remedies of the City, whether provided by law or by this Agreement, shall be cumulative, and the exercise by the City of any one or more of such remedies shall not preclude the exercise by it, at the same or different times, of any other such remedies for the same default or breach. No waiver made by the City shall apply to obligations beyond those expressly waived in writing.

    9.02   Reimbursement of Costs. Purchaser shall reimburse the City for its expenses, including reasonable attorney fees (whether inside or outside counsel), reasonably incurred by the City after an Event of Default in connection with the enforcement of or the preservation of any rights under this Agreement.

## ARTICLE 10. RESTRICTION UPON SPECULATION AND ASSIGNMENT

10.01 <u>No Speculation.</u> Purchaser represents that its purchase of the Property and its other undertakings pursuant to this Agreement are for the purpose of development of the Property for use in conjunction with Purchaser's transportation business and not for speculation.

10.02 <u>Prior Approval of Assignment.</u> Purchaser will not assign this Agreement, without the prior written approval of the City, except for an assignment to an entity controlled by Purchaser. Any proposed transferee shall, by instrument in writing, for itself and its successors and assigns, and expressly for the benefit of the City, assume all of the obligations of Purchaser under this Agreement and agree to be subject to all the conditions and restrictions to which Purchaser is subject. The consent of the City to an assignment or transfer in any one case shall not relieve Purchaser or the transferee of the obligation to obtain the consent of the City for any additional assignments or transfers.

10.03 <u>Consideration for Assignment.</u> Prior to the City's approval of any assignment pursuant to Section 10.02, Purchaser shall certify to the City that the consideration paid for the transfer of any of Purchaser's interest in this Agreement does not exceed an amount representing the actual cost (including carrying charges) incurred by Purchaser in connection with this Agreement; it being the intent of this Section to preclude assignment of this Agreement for profit. In the event Purchaser transfers any such interest at a profit, said profit shall belong to and forthwith be paid to the City.

## ARTICLE 11. INDEMNITY

11.01 <u>Purchaser Indemnification.</u> Purchaser agrees to and shall indemnify and save harmless the City, its agents and employees against and from any and all liabilities, obligations, damages, penalties, claims, costs, charges, losses and expenses (including without limitation, reasonable fees and expenses of attorneys, whether inside or outside counsel, expert witnesses and other consultants) (collectively, "Damages") that may be imposed upon, incurred by or asserted against the City related to this purchase by reason of any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom, except to the extent such Damages are caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct. Purchaser also agrees to hold the City harmless from any and all injury to the person or damage to the property of an employee of the City which arises out of or pursuant to any negligent or tortious act or omission of Purchaser or its Associates resulting in personal injury, bodily injury, sickness, disease or death, or injury to or destruction of tangible property including the loss of use therefrom except to the extent such loss or injury is caused by the City's or its, employees', contractors' or agents' gross negligence or willful misconduct.

11.02 <u>Defense of Claims.</u> In the event any action or proceeding shall be brought against the City by reason of any claim covered hereunder, Purchaser, upon notice from the City, will at its sole cost and expense, resist and defend the same, using legal counsel reasonably acceptable to the City.

11.03 <u>Non-Liability of the City.</u> From and after the date of Closing, the City shall not be responsible or liable to Purchaser, and Purchaser hereby releases the City from liability, for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying any part of the

Property. From or after the date of Closing, Purchaser shall be solely responsible for all injuries to persons and property resulting from any accident, explosion, leak or other cause arising in or about the use of the Property and its appurtenances, as hereinbefore stated. The City shall not be responsible for any loss or damage resulting to Purchaser or its property or to any other person or persons on their property which may be caused by the bursting, stopping, or leaking of water, gas, sewer or steam pipes or from overflow or backing up of any sewer or water main, unless caused by the City's gross negligence or willful misconduct.

11.04    Hazardous Materials.

    a.    Definitions.

        (i)    **"Relevant Environmental Laws,"** as referred to herein, shall mean all applicable federal, state, and local laws, rules, regulations, orders, judicial determinations, and decisions or determinations by any judicial, legislative or executive body of any governmental or quasi-governmental entity, whether in the past, the present or the future, with respect to:

           (a)    the installation, existence, or removal of, or exposure to, Asbestos on the Property.

           (b)    the existence on, discharge from, or removal from the Property of Hazardous Materials.

           (c)    the effects on the environment of the Property or of any activity conducted on the Property.

Relevant Environmental Laws shall include, but are not limited to, the following: (i) the Comprehensive Environmental Response, Compensation, and Liability Act, 42 USC Sections 9601, *et seq.*; the Superfund Amendments and Reauthorization Act, Public Law 99-499, 100 Stat. 1613; the Resource Conservation and Recovery Act, 42 USC Sections 6901, *et seq.*; the National Environmental Policy Act, 42 USC Section 4321; the Safe Drinking Water Act, 42 USC Sections 300F, *et seq.*; the Toxic Substances Control Act, 15 USC Section 2601; the Hazardous Materials Transportation Act, 49 USC Section 1801; the Federal Water Pollution Control Act, 33 USC Sections 1251, *et seq.*; the Clean Air Act, 42 USC Sections 7401, *et seq.*; and the regulations promulgated in connection therewith; (ii) Environmental Protection Agency regulations pertaining to Asbestos (including 40 CFR Part 61, Subpart M); Occupational Safety and Health Administration Regulations pertaining to Asbestos (including 29 CFR Sections 1910.1001 and 1926.58) as each may now or hereafter be amended; and (iii) any state and local laws and regulations pertaining to Hazardous Materials and/or Asbestos.

        (ii)    **"Asbestos,"** as referred to herein, shall have the meanings provided under the Relevant Environmental Laws and shall include, but not be limited to, asbestos

fibers and friable asbestos as such terms are defined under the Relevant Environmental Laws.

    (iii) **"Hazardous Materials,"** as referred to herein, shall mean any of the following as defined by the Relevant Environmental Laws: Asbestos; hazardous wastes; solid wastes; toxic or hazardous substances, wastes, or contaminants (including, but not limited to, polychlorinated biphenyls (PCB's), paint containing lead, and urea formaldehyde foam insulation).

    b. Release and Indemnity. The City shall give Purchaser the opportunity to inspect the Property and conduct such environmental assessments and testing as Purchaser has deemed appropriate. The City shall not be liable to Purchaser for, and Purchaser, for itself and its successors and assigns, hereby releases the City from, any and all liability for any violation or alleged violation of the Relevant Environmental Laws by Purchaser respecting the Property, whether such alleged violation occurred before or after Closing and the transfer of possession to Purchaser. The City shall not be liable for, and Purchaser shall immediately pay to the City when incurred and shall indemnify, defend and hold the City harmless from and against, all loss, cost, liability, damage and expense (including, but not limited to, attorneys' fees and costs incurred in the investigation, defense and settlement of claims) that the City may suffer or incur as a result of or in connection in any way with any violation of the Relevant Environmental Laws occurring after the Closing, any environmental assessment or study from time to time undertaken or requested by Purchaser, or breach of any covenant or undertaking by Purchaser in this Section; provided, however, Purchaser shall have no obligation to the City with respect to: (i) indemnified liabilities arising solely from the gross negligence or willful misconduct of the City; or (ii) conditions or Hazardous Materials existing at the time of Closing.

    c. Survival. The provisions of this Section shall survive the termination of this Agreement.

    d. Breach. Breach of any of the representations, warranties and/or covenants contained in this Article shall be a default under this Agreement; provided, however, that no breach shall be deemed to have occurred so long as, upon becoming aware of a possible breach, Purchaser proceeds to reasonably investigate and remedy in compliance with the Relevant Environmental Laws the matter giving rise to the possible breach.

    e. Assignment of Cause of Action. The City shall, upon request of Purchaser, convey, assign and transfer to Purchaser any claim or cause of action the City may have against others in connection with any liability against which Purchaser has fully indemnified the City (including payment) under this Agreement.

## ARTICLE 12. AMENDMENTS

    12.01 Form. Any change, addition, deletion, extension or modification of this Agreement (including assignments) that is mutually agreed upon by and between the City and Purchaser shall be incorporated in a written amendment (herein called **"Amendment"**) to this Agreement. Such Amendment shall not invalidate this Agreement nor relieve or release Purchaser of any of its obligations under this Agreement unless stated therein.

12.02  Binding Effect.  No Amendment to this Agreement shall be effective and binding upon the parties unless it expressly makes reference to this Agreement, is in writing, is signed and acknowledged by duly authorized representatives of both parties.  To be effective against the City, the Amendment must be authorized as set forth in Section 14.12 of this Agreement.

## ARTICLE 13. NOTICES

13.01  Addresses.  Except as otherwise specified herein, all notices, consents, approvals, requests and other communications (herein collectively called "Notices") required or permitted under this Agreement shall be given in writing and personally delivered with receipt obtained, or mailed by registered or certified first-class mail, return receipt requested, addressed as follows:

If to the City:

Director
City of Detroit
Planning & Development Department
2000 Cadillac Square
Detroit, Michigan 48226

with a copy to:

Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Detroit, Michigan 48226

If to Purchaser:

Steven W. Erickson, on behalf of an entity to be formed
2217 Lake Avenue
North Muskegon, Michigan 49445

with a copy to:

Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

13.02  Date of Notice.  All notices shall be deemed given when hand-delivered or, if mailed, three (3) days after the day of mailing.  Either party to this Agreement may change its address for the receipt of Notices at any time by giving notice thereof to the other as provided in Section 13.01.  Any Notice given by a party hereunder must be signed by an authorized representative of such party.

## ARTICLE 14. MISCELLANEOUS

14.01  Severability.  If any one or more provisions of this Agreement or in any instrument or other document delivered pursuant to this Agreement or the application thereof to any person or circumstance shall to any extent be declared or determined to be invalid or unenforceable, the validity, legality and enforceability of the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected or impaired thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

14.02  Entire Agreement.  This instrument, including the exhibits listed in Section 1.01 which are attached hereto and which are made a part of this Agreement, contains the entire agreement between the parties and all prior negotiations and agreements are merged herein.  Purchaser acknowledges that neither the City nor the City's agents have made any representations except those expressly set forth herein, and no rights or remedies are or shall be acquired by Purchaser by implication or otherwise unless expressly set forth herein.

14.03  Terminology.  Unless the context otherwise expressly requires, the words "herein", "hereof", and "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section, or other subdivision.

14.04  Covenants and Conditions.  All the terms and provisions of this Agreement shall be deemed and construed to be "covenants" and "conditions" as though the words specifically expressing or imparting covenants and conditions were used in each separate term and provision.

14.05  Captions.   The headings of the Articles, Sections and other subdivisions in this Agreement are for convenience only and shall not be used to construe or interpret the scope or intent of this Agreement or in any way affect the same.

14.06  Cumulative Remedies; Jurisdiction; Venue. The rights and remedies set forth herein are not exclusive and are in addition to any of the rights and remedies provided by law or equity; provided, however, that if the City breaches any of its obligations under this Agreement, then, after reasonable notice and opportunity to cure, Purchaser shall have the right solely to seek injunctive relief, specific performance or other equitable remedies for the City's breach of this Agreement, and in no event shall Purchaser be entitled to monetary damages as a result of the City's breach of this Agreement.  All actions arising under this Agreement shall be governed by, subject to, and construed according to the laws of the State of Michigan.  Purchaser agrees, consents and submits to the personal jurisdiction of any competent court in Wayne County, Michigan for any action brought against it arising out of this Agreement.  Purchaser agrees that service of process at the address and in the manner specified in Article 13 will be sufficient to put Purchaser on notice.  Purchaser also agrees that it will not commence any action against the City because of any matter whatsoever arising out of or relating to the validity, construction interpretation and enforcement of this Agreement, in any courts other than those in the County of Wayne, State of Michigan.

14.07  Force Majeure.  In the event of enforced delay in the performance by either party of obligations under this Agreement due to unforeseeable causes beyond its control and without its fault or

negligence, including, but not restricted to, acts of God or of the public enemy, acts of the government, acts of the other party, fires, floods, epidemics, or severe weather, the time for performance of such obligations shall be extended for the period of the enforced delays; provided that the party seeking the benefit of the provisions of this Section shall within thirty (30) days after the beginning of such enforced delay, have first notified the other party in writing of the causes thereof and requested an extension for the period of the enforced delay.

14.08 Provisions Not Merged With Deed. No provision of this Agreement is intended to or shall be merged by reason of any Deed transferring title to the Property from the City to Purchaser or any successor in interest, and any such Deed shall not be deemed to affect or impair the provisions and covenants of this Agreement.

14.09 Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed to be an original document but together shall constitute one instrument.

14.10 Singular and Plural, etc. As used herein, the singular include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

14.11 Time of the Essence. Time is of the essence of this Agreement.

14.12 Authority of City. Notwithstanding anything in this Agreement or otherwise to the contrary, the City shall not be authorized or obligated to sell the Property to Purchaser until the date that this Agreement has been fully executed by the duly authorized representative of the City pursuant to the resolution of the Detroit City Council or other governmental official or agent with jurisdiction over the matter and approved by the City of Detroit Law Department (the "Effective Date"). Any amendments or modifications must likewise be duly authorized by resolution and approval of all of the same parties.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

_Brooke Erickson_
BROOKE ERICKSON
Print:

_Nancy Tychma_
Print: Nancy Tychma

STATE OF MICHIGAN )
                  )ss.
COUNTY OF Muskegon )

**PURCHASER**

STEVEN W. ERICKSON, ON BEHALF OF AN ENTITY TO BE FORMED

By: _____
Print:         Steven W. Erickson

The foregoing instrument was acknowledged before me on _February 17_, 2015, by Steven W. Erickson.

Kimberly Lynn Olsen
Notary Public, Muskegon County, MI
My commission expires June 30, 2018

_Kimberly Lynn Olsen_
Print:
Notary Public, Muskegon County, Michigan
My commission expires: 6/30/2018
Acting in the County of Muskegon

WITNESSES:

_____
Print:

_____
Print:

STATE OF MICHIGAN )
                  )ss.
COUNTY OF WAYNE )

**CITY OF DETROIT**,
a Michigan public body corporate

By: _____
Arthur Jemison, Mayor's Designee
Pursuant to EM Order No. 38, ¶13

The foregoing instrument was acknowledged before me on _____, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

_____
Print:
Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of Wayne

BH 165144

16

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first set forth above.

WITNESSES:

**PURCHASER**

_____
Print:

STEVEN W. ERICKSON, ON BEHALF
OF AN ENTITY TO BE FORMED

_____
Print:

By:_____
Print:      Steven W. Erickson

STATE OF MICHIGAN   )
                )ss.
COUNTY OF _____  )

The foregoing instrument was acknowledged before me on _____, 2015, by Steven W. Erickson.

_____
Print:
Notary Public, _____ County, Michigan
My commission expires: _____
Acting in the County of _____

WITNESSES:

**CITY OF DETROIT,**
a Michigan public body corporate

_____
Print:

By:_____
Arthur Jemison, Mayor's Designee
Pursuant to EM Order No. 38, ¶13

_____
Print:

STATE OF MICHIGAN   )
                )ss.
COUNTY OF WAYNE   )

The foregoing instrument was acknowledged before me on _March 30_, 2015 by Arthur Jemison, Mayor's Designee Pursuant to EM Order No. 38, ¶13.

KAREN M. BEAVER
NOTARY PUBLIC, STATE OF MI
COUNTY OF WAYNE
MY COMMISSION EXPIRES Jun 21 2018
ACTING IN COUNTY OF _Wayne_

Print: _Karen M. Beaver_
Notary Public, Wayne County, Michigan
My commission expires: _6/21/2018_
Acting in the County of Wayne

BH 165144

16

## EXHIBIT A
### LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: _____ DATE: _____

Street Address[es]:

Property Tax Ward & Item numbers:

1) Construction contracts shall provide that at least fifty-one percent (51%) of the workforce must be Detroit residents, and Detroit residents shall perform fifty-one percent (51%) of the hours worked on the project.

2) Purchaser shall establish a goal of contracting with at least thirty percent (30%) of Detroit-based Businesses, Detroit-headquartered Businesses, and/or Detroit Emerging Businesses (gross receipts of $1 million or less) retained to provide services on the project. Of these categories, the City will give greater weight to Detroit-headquartered Businesses.

EXHIBIT C

## QUIT CLAIM DEED

Subject to the following paragraph, the City of Detroit, a Michigan public body corporate whose address is 2 Woodward Avenue, Detroit, MI 48226 ("**Grantor**"), quit claims to quit claims to _____, whose address is 2217 Lake Avenue, North Muskegon, Michigan 49445 ("**Grantee**"), the premises located in the City of Detroit, Wayne County, Michigan, described as:

(See attached Exhibit A)

A/K/A _____     Ward: _____Item(s):

(the "**Property**"), for the sum of _____($ _____ ), subject to and reserving to the City of Detroit its rights under public easements and rights of way, easements of record, applicable zoning ordinances and restrictions of record.

This deed is dated as of _____.

WITNESSES:                          CITY OF DETROIT, a Michigan public body
                                    corporate

_____             By: _____
Print:                              Print: _____
                                    Its: _____
_____
Print:

WITNESSES:                          CITY OF DETROIT, a Michigan public body
                                    corporate

_____             By: _____
Print:                              Print: _____
                                    Its: _____
_____
Print:

STATE OF MICHIGAN )
)ss.
COUNTY OF WAYNE )

The foregoing instrument was acknowledged before me on _____, 20___, by _____, the _____ of the City of Detroit, a Michigan public body corporate, on behalf of the City

_____
Print:

Notary Public, Wayne County, Michigan
My commission expires: _____
Acting in the County of _____

Pursuant to § 18-5-4 of the Detroit City Code, I hereby certify that proper and fair consideration has been received by the City pursuant to this instrument.

_____
Finance Director

Approved by Law Department pursuant to Sec. 7.5-206 of the Charter of the City of Detroit:

_____
Corporation Counsel

Approved by City Council on _____
JCC pp _____ or Detroit Legal News, _____, on file in my office.

Approved by Mayor on _____

_____
City Clerk

This Instrument Drafted by:
Bruce N. Goldman
Property Section
City of Detroit Law Department
2 Woodward Avenue, Suite 550
Detroit, Michigan 48226

When recorded, return to:
Beth S. Gotthelf, Attorney at Law
Butzel Long
Stoneridge West, 41000 Woodward Avenue
Bloomfield Hills, Michigan 48304

Exempt from transfer taxes pursuant to MCL § 207.505(h)(i) and MCL § 207.526(h)(i).

EXHIBIT D

Right of Entry Letter

**[DATE]**

_____, Project Manager
[Name of Environmental Consultant]
[Address]

**RE: Request for Right-of-Entry:**
**[Address/Location] (Ward #/Item #)**
**Detroit, Michigan**

Dear _____:

You have requested a right-of-entry to conduct [general description of requested activities] at the above-referenced address (hereinafter, the "Site").

Please be advised that the City of Detroit grants permission to **[Environmental Consultant]**, including its contractors, subcontractors, representatives, agents, and employees (collectively, "User") to enter the above-referenced Site for the sole purpose of conducting certain environmental activities, within the confines of the Scope of Work contained in **Exhibit A**.

This Right-of-Entry is subject in all respects to the following conditions:

1. Subject to satisfaction of the terms and conditions contained herein, this Right-of- Entry shall commence on **[start date]**, and shall automatically terminate upon the completion of the work described herein, or on **[end date]**, whichever occurs first.

2. User shall hold the City of Detroit harmless and shall defend and indemnify the City of Detroit from and against any and all damages, claims, obligations, penalties, costs, charges, losses, demands, liabilities, and expenses (including, without limitation, fees and expenses for attorneys, expert witnesses and other consultants) that may be imposed upon, incurred by, or asserted against the City of Detroit or its departments, officers, employees, or agents arising from and related to User and its contractors', subcontractors', representatives', agents', and employees' use of the Site and this Right-of-Entry (including but not limited to, any release or threatened release of hazardous and non-hazardous substances, contaminants, exacerbation, evacuation, on-site and/or off-site property damage, or bodily injury).

3. **[Environmental Consultant]** shall continue to maintain, and shall cause its contractors, subcontractors, representatives, and agents to continue to maintain, at their sole expense, during the time this Right-of-Entry is in effect, the following separate insurance policies:

   • Commercial General Liability Insurance (Broad Form Comprehensive) written on an occurrence-based coverage, with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage, and $2,000,000.00 in the aggregate, with the general aggregate limit applying per location.

• Automobile Liability Insurance covering all owned, hired, and non-owned vehicles with Michigan No-Fault Coverage plus residual liability coverage with a minimum combined single limit of $1,000,000.00 for each occurrence of bodily injury and property damage.

• Worker's Compensation Insurance for employees which meets Michigan's Statutory minimum requirements and Employer's Liability Insurance with the minimum limits of $500,000.00 for each disease, person, and accident.

• Contractor Pollution Liability Insurance with minimum limits of $1,000,000.00 per occurrence, and $2,000,000.00 in the aggregate.

Said insurance policies shall name the User as the insured. The City of Detroit shall be named as an additional insured on the certificates of insurance, without limitation, for all preceding coverage, excluding workers' compensation and employers' liability insurance. Each policy shall be accompanied by a commitment from the insurer that such policies shall not be canceled, modified, or coverage reduced without at least thirty (30) days prior notice to the City of Detroit. Certificates of Insurance evidencing such coverage and endorsements shall be submitted to the City of Detroit prior to the commencement of performance under this Right-of-Entry, and at least fifteen (15) days prior to the expiration dates of expiring policies.

4. User shall not impair any part of the Site, except as customarily incident to the activities described in Exhibit A and in accordance with all applicable laws. User shall repair any damage caused to the Site and/or properties affected by the activities at the Site, and restore the Site and/or properties affected by the activities at the Site to its/their original condition. Initial access to the Site shall be coordinated through the Planning and Development Department, Property Management Section at (313) 224-1187.

5. User shall contact the Department of Public Works, City Engineering Division at (313) 224-3935 upon the discovery of any damage caused by User's activities to the curb, sidewalk, street, or any portion of the right of way and/or infrastructure in order to provide notice and obtain the proper City of Detroit permits for repair.

6. User will not bring any soils or other materials onto the Site, except in strict accordance with the Department of Public Works, City Engineering Division Standard Specifications for the above-referenced Site and only with prior written verification for compliance by the City of Detroit's Buildings, Safety Engineering, and Environmental Department—Environmental Affairs of the User's fill material analytical data. User shall be responsible for the removal of any and all materials, tools and equipment brought onto the Site required for the authorized activities, and User shall assume the risk of loss or damage to any materials, tools and equipment.

7. User is entering upon and using the Site at its own risk, and accepts the Site "As Is". The City of Detroit makes no representation or warranty as to the status of title or the physical or environmental condition of the Site, or its fitness for any particular use.

8. User shall take all reasonable measures and precautions to mitigate any noise, vibrations, dust, and odors emanating from the activities on the Site.

9. User shall immediately notify the City's Buildings, Safety Engineering, and Environmental Department – Environmental Affairs at (313) 471-5108 upon the discovery of a suspected release of hazardous substances, hazardous materials, contaminants, or property damage as a result of User's activity at the Site.

10. User shall provide to the City of Detroit, without charge, copies of any and all draft and final work plans, reports, health and safety plans, and other environmental, analytical, or engineering documents relating in any way or arising out of its activities at the Site.

Upon the preparation of the documents, three copies of each document shall be provided to:

Raymond A. Scott, General Manager
City of Detroit
Buildings, Safety Engineering, and Environmental Department
2 Woodward Avenue, Suite 401
Detroit, Michigan 48226

11. This instrument and the rights granted hereunder may not be assigned by User.

12. User shall take all precautions necessary to make the Site safe for the authorized activities, including, where appropriate, preparation and adherence to a site-specific health and safety plan.

13. User shall be responsible for ensuring compliance with all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders. Any violation of the applicable laws, rules, regulations, standards, plans, and orders; or breach of the terms contained within this document may be considered grounds for termination of the Right-of-Entry.

14. This instrument constitutes the entire Right-of-Entry agreement between the City of Detroit and the User with respect to its subject matter. This agreement may not be modified, amended, changed, or altered in any respect unless done so in a writing acknowledged by both the City of Detroit and User.

15. No activities other than the activities authorized in Exhibit A may be performed on the Site.

This Right-of-Entry will be effective only upon execution of the acknowledgment and agreement noted herein by an authorized representative of User and upon delivery of same to Mr. Raymond Scott, Buildings, Safety Engineering, and Environmental Department, at the address listed above.

Sincerely,

_____
*** [Authorized City of Detroit Department Signature]

[Environmental Consultant], by its duly authorized representative, hereby acknowledges receipt of the original copy of this letter, and agrees to be bound by the terms and conditions stated therein.

[ENVIRONMENTAL CONSULTANT]
BY: _____
(Signature)

PRINT NAME: _____
ITS: _____
(Duly Authorized Representative)

DATE _____
TELEPHONE NUMBER: _____

EXHIBIT A TO SAMPLE ENVIRONMENTAL RIGHT-OF-ENTRY DOCUMENT

SCOPE OF WORK

The following is the Scope of Work that [Environmental Consultant], its contractors, subcontractors, representatives, agents and employees (collectively, "User"), is authorized to perform at the Site. User shall be responsible for ensuring compliance in all respects with the Scope of Work, and all applicable federal, state, and local laws, rules, regulations, standards, plans, and orders. User is only authorized to undertake the following activities at the Site:

[LIST OF AUTHORIZED ACTIVITIES]

Schedule I

## CERTIFICATE OF AUTHORITY

I, _____, _____ of _____, a _____, a Michigan _____ (the "Company")

DO HEREBY CERTIFY that the following is a true and correct excerpt from *[check appropriate box]*

☐ the minutes of a meeting of the _____ of the Company duly called and held on _____

☐ a consent in lieu of a meeting, with signed consents received from the requisite number of _____ of the Company on or before the date hereof.

and that the same is now in full force and effect:

"RESOLVED, that any _____ of the Company, is hereby authorized to execute and deliver, in the name and on behalf of the Company, any agreement or other instrument or document in connection with any matter or transaction with the City of Detroit that shall have been duly approved; the execution and delivery of any agreement, document, or other instrument by any of such _____ [Managers/Officers] to be conclusive evidence of such approval."

I FURTHER CERTIFY that the following persons are Officers:

I FURTHER CERTIFY that any of the aforementioned _____ [Managers/Officers] of the Company are authorized to execute or guarantee and commit the Company to the conditions, obligations, stipulations and undertakings contained in the attached Agreement, and that all necessary approvals have been obtained in relationship thereto.

IN WITNESS THEREOF, I have set my hand this _____ day of _____, 20___.

_____
Print: _____

| In re: | Bankruptcy Case No. 13-53846 |
|---|---|
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CITY OF DETROIT'S *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

The City of Detroit ("City") moves for the entry of an *ex parte* order pursuant to Rules 9006(c)(1) and 9007 of the Federal Rules of Bankruptcy Procedures and Rule 9006-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Michigan (a) shortening the notice period with respect to the City's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Doc. No. 10087) ("Motion") and (b) scheduling a hearing on the Motion during the week of August 3, 2015.  In support of this *Ex Parte* Motion, the City respectfully states as follows:

1.      Cause exists to schedule an expedited hearing on the Motion.  In violation of the injunction set forth in the City's confirmed plan, B&C Land Development Corporation ("B&C") filed a state court lawsuit against the City seeking monetary damages, specific performance and injunctive relief on account of an alleged real estate purchase agreement from 2006. The filing of the lawsuit has delayed and possibly endangered the City's sale of the properties subject to the state court complaint to separate purchasers.  One day prior to the filing of the lawsuit, the

Detroit City Council approved both sales, which have an aggregate purchase price of $3,000,000. The City and the purchasers desire to complete the sale of these properties as soon as possible. The purchasers have informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the state court lawsuit. One of the purchasers also informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations. The City thus requests that the Court schedule an expedited hearing on the Motion.

2.     Bankruptcy Rule 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1). Local Rule 9006-1(b) further provides that "a party may file a motion for an *ex parte* order reducing or enlarging the time for a party to take any action or file any paper." E.D. Mich. LBR 9006-1(b).

3.     In addition, pursuant to Bankruptcy Rule 9007, "[w]hen notice is to be given under the [Bankruptcy Rules], the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given." Fed. R. Bankr. P. 9007.

4.     Together, these rules provide the Court with the authority to enter an *ex parte* order scheduling a hearing on shortened notice and approve the manner of notice of such hearing.

5.     On July 1, 2015, B&C filed a complaint ("Complaint") against the City in Wayne County Circuit Court, Michigan, case number 15-008602 ("State Court Lawsuit"). The

Complaint is attached as Exhibit 6A to the Motion. A notice of lis pendens ("Lis Pendens") was attached to the complaint.

6.     In the Complaint, B&C alleges that on April 14, 2006, its President, Mr. Robert Carmack, signed an offer to purchase approximately 29 acres of land from the City located at 5601, 5815 and 5861 W. Jefferson Ave., commonly known as Revere Copper & Brass ("Property"). Complaint ¶ 12.

7.     In February, 2015, the City received two purchase offers for different portions of the Property. Waterfront Terminal Holdings II, LLC ("Waterfront") offered to purchase approximately 6 acres of the Property ("Waterfront Property") for $735,000. *See* Motion, Ex. 6-E, True Copy Certificate of Resolution Approving Waterfront Offer to Purchase at 2. The terms of the Waterfront offer are set forth in a Purchase Agreement dated February 17, 2015 ("Waterfront Offer to Purchase"). *See* Motion, Ex. 6F. Waterfront wishes to acquire the Waterfront Property to expand its vital marine liquid and bulk distribution operations. Motion, Ex. 6E at 2. Upon acquisition, Waterfront will remediate the Waterfront Property, dredge the riverfront, and improve the seawall and dock in order to grow its large vessel refueling operations. *Id.*

8.     On June 30, 2015, the Detroit City Council passed a resolution approving the Waterfront Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution. Motion, Ex. 6E. Due to the filing of the State Court Lawsuit, on July 17, 2015, the sale closed in escrow. *See* Motion, Ex. 6G, Escrow Agreement.

9.     A separate purchaser, Revere Dock, LLC ("Revere Dock"), offered to purchase approximately 17 acres of the Property ("Revere Dock Property") for $2,280,000.00. *See* Motion, Ex. 6H, True Copy Certificate of Resolution Approving Revere Dock Offer to Purchase

at 2. The terms of the Revere Dock offer are set forth in a Purchase Agreement dated February 17, 2015 ("Revere Dock Offer to Purchase").  *See* Motion, Ex. 6I.   Under the terms of the Revere Dock Offer to Purchase, the Revere Dock Property would be conveyed to Revere Dock under a development agreement by quit claim deed.   *See* Motion, Ex. 6H at 2.  Pursuant to the development agreement, Revere Dock's construction contracts will provide that Detroit residents must constitute at least 51% of the workforce and perform 51% of the hours worked on the project. *Id.*   Revere Dock will also establish the goal of contracting with at least 30% of Detroit-based Businesses, Detroit-headquartered Businesses or Detroit Emerging Businesses.   *Id.* Revere Dock's development of the Revere Dock Property will bring new heavy lift marine and transport capacity to Detroit, supporting manufacturing and fabricating companies with project equipment of oversize dimension and weight, while providing on-site staging and storage of critical equipment. *Id.*

10.    On June 30, 2015, the Detroit City Council passed a resolution approving the Revere Dock Offer to Purchase and on July 7, 2015, Mayor Michael Duggan approved the resolution.  Motion, Ex. 6H.

11.    The City and the purchasers desire to complete the sale of these properties as soon as possible.  Consummating these transactions will immediately remove the properties from the City's maintenance responsibilities, relieving the City of the commensurate costs.  Because these properties are owned by the City, the properties are currently tax-exempt but will be returned to the tax rolls after the sales.  The improvements to be made by the purchasers will create construction jobs, and the business operations will create permanent jobs.  The purchasers have also informed the City that they have forgone several contracts that they otherwise could have secured due to the closing delays caused by the filing of the State Court Lawsuit.  Further, one of

the purchasers informed the City that it needs to have closing occur immediately in order to perform on certain of its existing contractual obligations.

12.     For these reasons, the City submits that cause exists to schedule the hearing on the Motion during the week of August 3, 2015.

WHEREFORE, the City respectfully requests that the Court enter an order, substantially in the form attached as Exhibit 1, granting the relief requested in this *Ex Parte* Motion and granting such further relief as the Court deems appropriate.

Dated: July 27, 2015

<div style="margin-left:40%;">

By: /s/ Marc N. Swanson
Jonathan S. Green (P33140)
Marc N. Swanson (P71149)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
Telephone: (313) 496-7591
Facsimile: (313) 496-8451
laplante@millercanfield.com
swansonm@millercanfield.com

Charles N. Raimi (P29746)
Deputy Corporation Counsel
City of Detroit Law Department
2 Woodward Avenue, Suite 500
Coleman A. Young Municipal Center
Detroit, Michigan 48226
Telephone: (313) 237-5037
Facsimile: (313) 224-5505
raimic@detroitmi.gov

ATTORNEYS FOR THE CITY OF DETROIT

</div>

## SUMMARY OF ATTACHMENTS

The following documents are attached to this Motion, labeled in accordance with Local Rule 9014-1(b).


| | |
|---|---|
| Exhibit 1 | Proposed Form of Order |
| Exhibit 2 | None [Motion Seeks Ex Parte Relief] |
| Exhibit 3 | None [Brief Not Required] |
| Exhibit 4 | Certificate of Service |
| Exhibit 5 | None [No Affidavits Filed Specific to This Motion] |
| Exhibit 6 | None [No Documentary Exhibits Filed Specific to This Motion] |

13-53846-tjt   Doc 10085-7   Filed 07/27/15   Entered 07/27/15 13:30:15   Page 46 of 14
13-53846-tjt   Doc 10085   Filed 07/27/15   Entered 07/27/15 13:30:52   Page 46 of 1
136
1668

**EXHIBIT 1**

Proposed Order

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S *EX PARTE* MOTION FOR AN**
**ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON**
**THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF**
**ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT**
**CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT**
**AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This matter coming before the Court on City of Detroit's *Ex Parte* City's Motion for the

Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land

Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B)

Withdraw its Notice of Lis Pendens (Doc. No. 10087).  The Court having reviewed the *Ex Parte*

Motion and having found that notice of the *Ex Parte* Motion was sufficient under the

circumstances; having determined after due deliberation that the relief requested in the *Ex Parte*

Motion is in the best interests of the Debtor and its creditors; and good and sufficient cause

having been shown;

IT IS HEREBY ORDERED THAT:

1.      The *Ex Parte* Motion is GRANTED.

2.      A hearing with respect to the Motion for the Entry of an Order (I) Enforcing the

Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A)

Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens

(Doc. No. 10087) ("Motion") shall be held on August _____, 2015, at ___ :___ ___.m.

24919580.1\022765-00202

13-53846-tjt   Doc 10085-7 Filed 07/27/15 Entered 07/27/15 13:30:15 Page 48 of 14
136
13-53846-tjt   Doc 10085-7 Filed 07/27/15 Entered 07/27/15 13:30:15 Page 48 of 14       1670

3.      B&C Land Development Corporation must file a response to the Motion on or before July _____, 2015.

4.      The City of Detroit may file a reply to any response filed by B&C Land Development Corporation on or before August _____, 2015.

5.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

2

13-53846-tjt    Doc 10085-7  Filed 07/27/15  Entered 07/27/15 13:30:15   Page 49 of 14
13-53846-tjt    Doc 10085   Filed 07/27/15  Entered 07/27/15 11:00:52   Page 49 of 14
136                                                                  1671

**EXHIBIT 2**

Not Applicable

# **EXHIBIT 3**

Not Applicable

**EXHIBIT 4 – CERTIFICATE OF SERVICE**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 27, 2015, he served a copy of the foregoing City of Detroit's *Ex Parte* Motion for an Order Shortening Notice and Scheduling an Expedited Hearing on the Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens, upon the persons listed below, via electronic mail and first class mail.

Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

Dated: July 27, 2015

By: /s/ Marc N. Swanson
     Marc N. Swanson
     150 West Jefferson, Suite 2500
     Detroit, Michigan 48226
     Telephone: (313) 496-7591
     Facsimile: (313) 496-8451
     swansonm@millercanfield.com

# **EXHIBIT 5**

Not Applicable

# **EXHIBIT 6**

Not Applicable

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S *EX PARTE* MOTION FOR AN ORDER SHORTENING NOTICE AND SCHEDULING AN EXPEDITED HEARING ON THE MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This case is before the Court on the City of Detroit's *Ex Parte* motion for expedited hearing (Docket # 10088, the "Expedited Hearing Motion"), seeking an expedited hearing on the City's motion filed July 27, 2015, entitled "City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens" (Docket # 10087, the "Underlying Motion"). The Court having reviewed the Expedited Hearing Motion; and good and sufficient cause having been shown;

IT IS ORDERED THAT:

1.      The Expedited Hearing Motion (Docket # 10088) is GRANTED.

2.      A hearing on the Underlying Motion (Docket # 10087) will be held on **August 5, 2015, at 1:30 p.m.**

3.      B&C Land Development Corporation must file a response to the Underlying Motion no later than July 30, 2015. *If no timely response is filed, the City may file a certificate of no response and submit a proposed order, and the Underlying Motion may be granted without a hearing.*

13-53846-tjt   Doc 10085-7   Filed 09/16/15   Entered 09/16/15 14:59:52   Page 55 of 136
13-53846-tjt   Doc 10091   Filed 07/27/15   Entered 07/27/15 14:59:23   Page 1 of 2
1677

4.      The City of Detroit may file a reply to any response filed by B&C Land Development Corporation no later than August 3, 2015.

5.      ***No later than today, July 27, 2015 at 6:00 p.m. EDT, the City must serve a copy of this Order on B&C Land Development Corporation, by first class mail, and on its attorney (Horace D. Cotton), by first class mail and also by e-mail or fax, and file proof of such service.***

.

**Signed on July 27, 2015**

                                        /s/ **Thomas J. Tucker**
                                        **Thomas J. Tucker**
                                        **United States Bankruptcy Judge**

13-53846-tjt   Doc 10085   Filed 07/27/15   Entered 07/27/15 14:50:23   Page 2 of 2
13-53846-swr   Doc 10095-17   Filed 09/16/15   Entered 09/16/15 11:50:52   Page 56 of 136

1678

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 13-53846
                                                Honorable Thomas J. Tucker
City of Detroit, Michigan,                      Chapter 9

       Debtor,
_____

**B&C Land Development Corporation's Response to City of Detroit's Motion for Entry of an Order (I) Enforcing The Plan of Adjustment Injunction and (II) Requiring B&C Land Development to (A) Dismiss with Prejudice Its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens**

B&C Land Development Corporation by its undersigned counsel responds to the motion as follows:

1. B&C Land Development Corporation ("B&C") admits that it filed a state court lawsuit against the City on July 1, 2015 seeking monetary damages, specific performance and injunctive relief.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

1

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. B&C neither admits nor denies the allegations contained in paragraph 28 of the motion.

29. B&C neither admits nor denies the allegations contained in paragraph 29 of the motion.

30. B&C denies violating the Plan injunction and discharge provisions when it filed the State Court Lawsuit against the City of Detroit. The Offer to Purchase

2

13-53846-tjt   Doc 10105   Filed 08/06/15   Entered 08/06/15 21:00:52   Page 58 of 136
13-53846-tjt   Doc 10105-7   Filed 07/30/15   Entered 07/30/15 22:09:32   Page 25 of 4   1680

between B&C and the City for the Revere Copper & Brass property is an executory contract that was not rejected by the City in The Plan. An unrejected executory contract survives confirmation of the Plan of Reorganization and becomes binding on the reorganized corporation. *Federal's Inc. v. Edmonton Investment Co.,* 404 F.Supp. 68, 71 (E.D.S.D.Mich., 1975), aff'd 555 F.2d 577 (CA 6, 1977)   In his concurring and dissenting opinion in Bildisco, Justice Brennan wrote: "in the unlikely event that the contract is neither assumed nor rejected, it will 'ride through' the bankruptcy proceeding and be binding on the debtor even after a discharge is granted. The non-debtor party's claim will therefore survive the bankruptcy proceeding." *National Labor Relations Board v. Bildisco and Bildisco,* 465 U.S. 513, 546 n. 12, 104 S.Ct. 1188 [1206 n. 12], 1198 n. 12, 79 L.Ed. [2d] 482 (1984); see also *In re Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991); *International Union v. Miles Machinery,* 34 B.R. 683, 687 (E.D.Mich.1982).

31. B&C was not required to file a proof of claim because the contract was executory, was neither rejected nor assumed by the City. Under the ride through case law, the consequences of a debtor's failure to assume or reject were (1) the non-debtor had no claim in the case because there was no breach and (2) discharge did not affect the enforceability of the contract against the debtor. See, e.g., *Federal's Inc. v. Edmonton Investment Company,* 555 F.2d 577 (6th Cir.1977); In re Alfar Dairy, Inc.,

32. B&C was not required to file a *Pioneer* Motion just as it was not required to file a proof of claim.

3

13-53846-tjt   Doc 10105   Filed 07/30/15   Entered 07/30/15 22:09:52   Page 59 of 136
13-53846-tjt   Doc 10157   Filed 08/06/15   Entered 08/06/15 21:00:52   Page 3 of 4   1681

33. B&C respectfully requests that this Court deny this Motion.

Respectfully submitted,

/s/Horace D. Cotton
Horace D. Cotton (P33268)
Horace D. Cotton, PLLC
Attorney for B&C Land
Development Corporation
P. O. Box 19520
Detroit, MI 48226
(313) 595-1517
hdcotton@yahoo.com

Dated: July 30, 2015

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## REPLY OF THE CITY OF DETROIT IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

The City of Detroit, Michigan ("City"), by its undersigned counsel, submits this reply in support of its Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens ("Motion").[1]

## I.      Introduction

For its response, B&C Land Development Corporation ("B&C") alleges that its offer to purchase in 2006 (1) created a binding contract that survived for nine or more years, (2) was an executory contract as of the City's bankruptcy filing, and (3) was unknowingly assumed by the City because it was not specifically identified as rejected under the City's confirmed *Eighth Amended Plan for the Adjustment of Debts of the City of Detroit (October 22, 2014)* (the "Plan," Doc. No. 8045).[2]  Simply put, this argument fails because (1) no contract was ever formed and (2) even if a contract had been formed, the applicable statute of limitations expired prior to the commencement of the improperly filed State Court Lawsuit to enforce it.  Thus, this Court

---

[1] Capitalized terms used but not otherwise defined herein will have the meanings ascribed to those terms in the Motion.

[2] Interestingly, even under B&C's own theory of "executory contract" the State Court Lawsuit violates the Plan injunction because this Court retained exclusive jurisdiction of the interpretation and enforcement of executory contracts pursuant to Article VII.C. of the Plan.

should enter an order requiring B&C to dismiss the State Court Lawsuit with prejudice and withdraw its Lis Pendens.

## II.    Argument

### A.    No contract was ever formed; therefore, there is nothing to assume or reject.

"It is elementary to observe that, before the Debtor can assume or reject a contract, or, for that matter, before [a purported counterparty] can seek to enforce a contract, there must be a contract to assume, reject, or enforce." *In re III Enters., Inc. V*, 163 B.R. 453, 459 (Bankr. E.D. Pa. 1994); *Nemko Inc. v. Motorola, Inc. (In re Nemko, Inc.)*, 163 B.R. 927, 935 (Bankr. E.D.N.Y. 1994) ("Generally, in order for section 365 to be applicable, the Code mandates the existence of an executory contract on the day the debtor files its petition for relief.").   Obviously, the existence of a valid and binding contract is a necessary prerequisite to a contract that can be assumed, a prerequisite that is not satisfied here.

In Michigan, a municipal corporation cannot be bound to a contract by an officer of the corporation unless the officer is expressly authorized by law to do so.   *Johnson v. City of Menominee*, 173 Mich. App. 690, 693-94 (1988); *see also Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539-40 (6th Cir. 2002).   Here, the City's Charter provides in section 4-112, styled Control of Property, that "Except as otherwise provided by this Charter, the City may not sell or in any way dispose of any property without the approval by resolution of the City Council."   And, section 4-122 states that City contracts need to be approved by the City Council except as provided by ordinance.[3]   B&C does not allege that its purported contract was approved by the City Council.   In fact, B&C alleges the opposite.   Complaint, ¶ 26.   It alleges that the City breached a contract with B&C by "failing and refusing to present the development proposal to

---

[3] There is no applicable ordinance constituting an exception to section 4-122, s*ee* Exhibit 1, Declaration of James Noseda, nor has one been alleged by B&C.

City Council for final approval," admitting that final approval of its alleged contract never occurred. *Id.*; *see also* Exhibit 1, Declaration of James Noseda.

The "contract" attached to the complaint is simply titled "Offer to Purchase," not "Contract for Sale" or anything else that might suggest it purports to be a binding contract. *See* Motion, Ex. 6A, First exhibit. It appears that a City official may have signed the offer to acknowledge its receipt, but B&C does not explain (nor could it explain) how the signature of an official unable to bind the City to a contract as a matter of law somehow transformed its offer into a binding contract. *Johnson*, 173 Mich. App. at 693-94.

In fact, B&C knows that it has no contract. Attached to its Complaint is a letter from the City that explains that, on receipt of the Offer to Purchase, the City will review the proposed development package. *Id.* "If acceptable, we shall follow our Standard Procedure for Sale of Surplus Property to obtain City Council authorization to execute an Agreement to purchase and develop the property." *Id.* B&C does not allege that any of this occurred because, in fact, it did not. B&C's attachment of the letter to its Complaint shows that it <u>knows</u> that there can be no binding contract without City Council authorization and an executed Agreement to purchase. Consequently, its State Court Lawsuit is baseless in addition to being in violation of the Plan injunction.

**B. Even if a contract had been formed, the statute of limitations for enforcing it would have expired.**

Assuming *arguendo* that the City entered into a contract to sell property to B&C when it received B&C's offer to purchase, the time to bring an action on that contract has passed. In Michigan, actions for breach of contract are subject to a six-year statute of limitations. MCL § 600.5807(8). Actions seeking specific performance are subject to the same six-year limitation. *Steward v. Panek*, 251 Mich. App. 546, 551 (2002).

24984810.4\022765-00202
3
13-53846-tjt   Doc 10185-7   Filed 09/16/15   Entered 09/16/15 12:00:52   Page 63 of
13-53846-tjt   Doc 10185   Filed 09/03/15   Entered 09/03/15 16:20:57   Page 64 of
136
1685

"In Michigan, 'a cause of action for breach of contract accrues when a contracting party fails to do what he is obligated to do under the contract.' Accordingly, 'a breach of contract claim accrues on the date of the breach, not on the date the breach is discovered.'" *Sunseri v. Proctor*, 487 F. Supp. 2d 905, 909 (E.D. Mich. 2007) (citing *Jacobs v. Detroit Auto. Inter-Insurance Exch.*, 107 Mich. App. 424, 431 (1981) and *Isely v. Capuchin Province*, 880 F. Supp. 1138, 1145 (E.D. Mich. 1995)). Here, the "breach" would have accrued no later than the date on which it became apparent that the City was not going to perform.

Paragraphs 13 and 14 of the Complaint allege that Mr. Carmack's[4] development proposal was "killed" sometime between April 14, 2005, and May 21, 2008. Paragraph 15 of the Complaint alleges that on May 21, 2008, "City Council, without benefit of the history of this property and pending sale to B&C approved the sale for $5,000,000.00 to DWSD with no appraisal or due diligence." Thus, "breach" of the purported contract could not have occurred any later than May 21, 2008 (and likely occurred much earlier by B&C's own admission). Assuming the breach occurred on the last day of that period, the statute of limitations would have expired May 21, 2014. However, the City's bankruptcy filing would have extended that date to January 9, 2015 as a result of Bankruptcy Code § 108(c)(2).[5] MCL § 600.5807(8) (providing for six year statute of limitations); 11 U.S.C. § 108(c)(2) (extending statute of limitations to a period 30 days after the stay in the City's bankruptcy case expired); Plan, Art. VIII-K (providing that all stays in the City's bankruptcy case terminate on the Effective Date, Dec. 10, 2014); Doc. No. 8649 (noting occurrence of effective date). Thus, the last possible date for B&C to file an action to enforce its purported contract was January 9, 2015.

---

[4] Mr. Carmack is B&C's president. Complaint, ¶ 6.

[5] Note, the cause of action, if it existed, likely arose much earlier. If it arose before July 18, 2007, then the statute of limitations would have expired prepetition, and 11 U.S.C. § 108 would not be implicated.

24984810.4\022765-00202
13-53846-tjt   Doc 10185   Filed 09/03/15   Entered 09/03/15 16:20:52   Page 64 of
136
4
13-53846-tjt   Doc 10185-7   Filed 09/16/15   Entered 09/16/15 11:20:57   Page 64 of
1686

B&C did not file an action by that date. The Complaint was not filed until July 1, 2015. Thus, even had a contract been formed between the City and B&C by B&C's offer to purchase, that contract would no longer be enforceable. *III Enters., Inc. V*, 163 B.R. at 459; *Nemko*, 163 B.R. at 935.[6]

## III.    Conclusion

For these reasons, the City respectfully requests that this Court enter an order in substantially the same form as the one attached as Exhibit 1 to its Motion.

August 3, 2015                         Respectfully submitted,

By: /s/ Marc N. Swanson
        Jonathan S. Green (P33140)
        Marc N. Swanson (P71149)
        MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226
        Telephone: (313) 496-7591
        Facsimile: (313) 496-8451
        green@millercanfield.com
        swansonm@millercanfield.com

ATTORNEYS FOR THE CITY OF DETROIT

---

[6] Further, even if there had been a contract between the City and B&C and even if the enforcement of that contract was not barred by the applicable statute of limitations (and, of course, assuming that contract is an executory contract), the failure to designate the contract for rejection was an omission under the Plan which, to the extent necessary, this Court has exclusive jurisdiction to remedy. *See* Plan, Art. VII, Section H (This Court retained exclusive jurisdiction to "remedy any defect or omission [in] the Plan."). If this Court were to deny the Motion, the City will ask this Court to permit it to amend Exhibit II.D.6 to include the contract in the list of rejected contracts in order to remedy this omission to the extent this Court believes that the City does not already have the authority to do so under its Plan or otherwise.

24984810.4\022765-00202
5
13-53846-tjt   Doc 10185   Filed 09/16/15   Entered 09/16/15 11:00:52   Page 65 of
136
13-53846-tjt   Doc 10185   Filed 09/03/15   Entered 09/03/15 16:20:37   Page 65 of   1687

EXHIBIT 1

13-53846-tjt   Doc 10185-7   Filed 09/16/15   Entered 09/16/15 11:00:52   Page 66 of
136
18-53846-tjt   Doc 10185   Filed 09/03/15   Entered 09/03/15 16:20:37   Page 66 of
1688

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

### DECLARATION OF JAMES NOSEDA IN SUPPORT OF THE CITY OF DETROIT'S REPLY OF THE CITY OF DETROIT IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

1.      My name is James D. Noseda.  I am a Supervising Assistant Corporation Counsel in the City of Detroit Law Department.  I have worked in the City of Detroit Law Department since May 1, 1995.

2.      For many decades, the Detroit City Charter has: (a) required the City Council to keep a journal of its proceedings ("Official Journal"), which shall be a public record, and (b) required the City Clerk to keep a record of all City Council ordinances, proceedings and resolutions. Those provisions are found in the 2012 Charter at sections 4-105 and 3.5-102, respectively. The Official Journal has indices for resolutions, including contract approvals.

3.      I have searched the Official Journal going back to the year 2004 and have found no resolution approving a contract to sell any part of the subject real property to B&C Land Development Corporation or its president, Mr. Robert Carmack.

4.      As the Detroit City Council must pass a resolution to approve a contract for the sale of real property, it is not possible for B&C Land Development Corporation or its president, Mr. Robert Carmack to have a contract with the City of Detroit to purchase the subject real property.

5.   Furthermore, there is no City ordinance constituting an exception to section 4-122 of the City Charter that would make the passing of a resolution to approve a contract for the sale of real property unnecessary as a matter of law.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

By: _____

James Noseda
Supervising Assistant Corporation Counsel
City of Detroit Law Department

Dated: August 3, 2015

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Bankruptcy Case No. 13-53846 |
| City of Detroit, Michigan, | Honorable Thomas J. Tucker |
| Debtor. | Chapter 9 |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2015, he served a copy of the

*Reply Of The City Of Detroit In Support Of Its Motion For The Entry Of An Order (I) Enforcing The Plan Of Adjustment Injunction And (II) Requiring B&C Land Development Corporation To (A) Dismiss With Prejudice Its State Court Lawsuit And (B) Withdraw Its Notice Of Lis Pendens*,

upon the persons listed below, as follows:

Via first class mail:

B&C Land Development Corporation
c/o Robert Lee Carmack
8711 Michigan Ave.
Detroit, MI 48210

Via electronic mail and first class mail:

Horace D. Cotton
P.O. Box 19520
Detroit, MI 48219
hdcotton@yahoo.com

Dated: August 3, 2015

By: /s/ Marc N. Swanson
    Marc N. Swanson
    150 West Jefferson, Suite 2500
    Detroit, Michigan 48226
    Telephone: (313) 496-7591
    Facsimile: (313) 496-8451
    swansonm@millercanfield.com

13-53846-tjt   Doc 10185   Filed 08/16/15   Entered 08/16/15 11:20:52   Page 69 of
13-53846-tjt   Doc 10185   Filed 08/03/15   Entered 08/03/15 16:20:37   Page 9 of   1691
136

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

### ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS

This case is before the Court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Docket # 10087, the "Motion"). The Court held an expedited hearing on the Motion on August 5, 2015. For the reasons stated by the Court on the record during the hearing,

**IT IS ORDERED THAT:**

1.      The Motion is granted.

2.      No later than August 10, 2015, B&C Land Development Corporation must dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* (the "State Court Lawsuit").

3.      No later than August 10, 2015, B&C Land Development Corporation must withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4.      If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the

Wayne County Register of Deeds which will operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5.       B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6.       The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

13-53846-tjt    Doc 10185    Filed 09/16/15    Entered 09/16/15 11:00:52    Page 71 of
136
13-53846-tjt    Doc 10119    Filed 09/03/15    Entered 09/03/15 16:54:45    Page 2 of 9    1693

7.

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

13-53846-tjt   Doc 10197   Filed 09/16/15   Entered 09/16/15 15:50:52   Page 72 of
13-53846-tjt   Doc 10197   Filed 09/16/15   Entered 09/16/15 16:54:46   Page 74 of   1694
136

Description CORRECT

ENGINEER OF SURVEYS

BY: _Basil Sari_ DATE: _4/28/2015_

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

**Signed on August 5, 2015**　　　　　　　　　/s/ Thomas J. Tucker
　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                    Case No. 13-53846
                                          Honorable Thomas J. Tucker
City of Detroit, Michigan,                Chapter 9

     Debtor,
_____

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s): B & C LAND DEVELOPMENT CORPORATION
   _____

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   ☐ Debtor
   ☑ Creditor
   ☐ Trustee
   ☑ Other (describe)     Respondent_____

### Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: <u>Order Granting City of Detroit's Motion for Entry of an Order Enforcing the Plan of Adjustment Injunction</u>

2. State the date on which the judgment, order, or decree was entered:  <u>8/5/2015</u>

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: <u>B&C Land Development Corporation</u>

   Attorney: <u>Horace D. Cotton (P33268)</u>
   <u>P.O. Box 19520</u>
   <u>Detroit, MI 48219</u>
   <u>(313) 595-1517</u>

2. Party: <u>City of Detroit</u>

   Attorney: <u>Mark N. Swanson</u>
   <u>350 W. Jefferson, Suite 2500</u>
   <u>Detroit, MI 48226</u>
   <u>(313)496-7591</u>

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

**/s/ Horace D. Cotton**

Date: 08/19/2015

Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

Horace D. Cotton (P33268)
P. O. Box 19520
Detroit, MI 48219

(313 595-1517

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

13-53846-tjt   Doc 10189   Filed 09/06/15   Entered 09/06/15 11:00:52   Page 76 of
136
18-53846-tjt   Doc 10189   Filed 09/19/15   Entered 09/19/15 16:06:05   Page 2 of 2      1698

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This case is before the Court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Docket # 10087, the "Motion"). The Court held an expedited hearing on the Motion on August 5, 2015. For the reasons stated by the Court on the record during the hearing,

**IT IS ORDERED THAT:**

1.      The Motion is granted.

2.      No later than August 10, 2015, B&C Land Development Corporation must dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* (the "State Court Lawsuit").

3.      No later than August 10, 2015, B&C Land Development Corporation must withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4.      If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the

Wayne County Register of Deeds which will operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5.     B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6.     The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

7.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.6°'37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

18-53846-tjt   Doc 10185-7   Filed 09/16/15   Entered 09/16/15 14:50:57   Page 79 of 95
18-53846-tjt   Doc 10185-7   Filed 09/16/15   Entered 09/16/15 14:50:57   Page 79 of 95   1701
136

Description CORRECT

ENGINEER OF SURVEYS

BY: _Basil Sari_ DATE: _4/28/2015_

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE EASTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

**Signed on August 5, 2015**          **/s/ Thomas J. Tucker**

**Thomas J. Tucker**
**United States Bankruptcy Judge**

211 West Fort Street
Detroit, MI 48226

# UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.: 13−53846−tjt
Chapter: 9

In Re: (NAME OF DEBTOR(S))
    City of Detroit, Michigan
    2 Woodward Avenue
    Suite 1126
    Detroit, MI 48226
Social Security No.:

Employer's Tax I.D. No.:
    38−6004606

## NOTICE OF DEFICIENT FILING

It has been determined that the following document(s) are Missing and/or Non−Compliant:

Notice of Appeal

is defective as indicated:

- ☐ Acceptable List of Creditors
- ☐ Acceptable List of Creditors Not Uploaded
- ☐ Cover Sheet for Amendments (To be filed with corrected document in its entirety as one PDF)
- ☐ Amended Document (To be filed with Cover Sheet for Amendments in its entirety as one PDF)
- ☐ Application for Waiver of Filing Fee
- ☐ Attorney Disclosure of Compensation Statement 2016(b) (LBR 9010−1(c))
- ☐ Bankruptcy Petition Cover Sheet
- ☑ Bankruptcy Matter Civil Case Cover Sheet Missing
- ☐ Brief
- ☐ Certificate of Exigent Circumstances – Credit Counseling Waiver
- ☐ Debtors Statement of Corporate Ownership
- ☐ Electronic Signature does not match login
- ☐ Electronic Signature Missing or Incorrect Format ECF Procedure 11(d)(1)
- ☐ List of 20 Largest Unsecured Creditors
- ☐ Motion for Approval of Certificate of Exigent Circumstances 109(h)(3)(A) Missing
- ☐ Motion to Convert under 11 U.S.C. § 706(a)  (Rule 9013)
- ☐ Motion to Excuse Credit Counseling 109(h)(4) Missing
- ☐ Notice of Objection to Claim
- ☐ Notice of Special Appearance Missing or Non−Compliant (LBR 9010−1(c))
- ☐ Notice to Respondent
- ☐ Original Signature
- ☐ Proof of Service Missing or Non−Compliant
- ☐ Proposed Order

☐ Reaffirmation Agreement Cover Sheet

☐ Statement of Corporate Ownership LBR 9013–5

A corrected/missing document must be filed with the court within seven (7) days of this notice. If not corrected, the case may be dismissed or an order striking the document from the record may be entered by the Court. The new document filed should be identified as **"CORRECTED"**.

Dated: 8/20/15

BY THE COURT

Katherine B. Gullo , Clerk of Court
U.S. Bankruptcy Court

Form designat

211 West Fort Street
Detroit, MI 48226

# UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.:  **13–53846–tjt**

In Re: (NAME OF DEBTOR(S))

City of Detroit, Michigan

_____/

## NOTICE OF REQUIREMENT TO FILE DESIGNATION

**NOTICE IS HEREBY GIVEN** that an appeal was filed on **08/19/2015** from an order entered by Judge **Thomas J. Tucker** on **08/05/2015** .

Pursuant to Bankruptcy Rule 8006, within 14 days after the filing of the notice of appeal, entry of an order granting leave to appeal, or entry of an order disposing of the last timely motion outstanding of a type specified in Rule 8002(b), whichever is later, the appellant shall file **with the Clerk of the Bankruptcy Court** and serve on the appellee a designation of the items to be included in the record on appeal and a statement of issues to be presented.

Within 14 days after the service of the appellant's statement, the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal.

If the record designated by any party includes a transcript of any proceeding or a part thereof, the party shall immediately file with the Clerk of the Bankruptcy Court a transcript request on the order form available on the Clerk's Office web site.

Any party filing a designation of the items to be included in the record shall provide to the clerk a copy of the items designated. If the party fails to provide the copies, the Clerk of the Bankruptcy Court shall prepare copies of the designated items at the party's expense pursuant to Bankruptcy Rule 8009.

Failure to comply with the filing of the designation of record and the statement of issues in the time prescribed by the rules and failure to comply with the transcript requirements may result in the dismissal of this appeal by the District Court pursuant to Bankruptcy Rule 8001(a).

Dated: 8/20/15

BY THE COURT

Katherine B. Gullo , Clerk of Court
UNITED STATES BANKRUPTCY COURT

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN

IN RE:   City of Detroit, Michigan                         Case No. 13-53846

                                                           Chapter   9
                              Debtor(s).                   Hon. Thomas J. Tucker
_____/
B &C Land Development Corporation

                              Appellant,                   Adv. No. Click here to enter text.

       v.

City of Detroit, Michigan

                              Appellee.
_____/

### NOTICE OF TRANSMITTAL OF NOTICE OF APPEAL

       I hereby certify that the attached documents are transmitted to the United States District Court for the Eastern District of Michigan, which constitutes the Notice of Appeal/Motion to Withdraw the Reference.

☒       Notice of Appeal

☐       Bankruptcy Matter Civil Cover Sheet

☒       Order on Appeal

☒       Notice of Deficiency

☐       Motion for Leave to Appeal

☐       Motion to Withdraw the Reference

☐       Other: Click here to enter text.

**NOTE:**

☒ There is a previous civil matter in this bankruptcy.  That matter was given civil case number 13-cv-13781 and assigned to District Judge Bernard A. Friedman.

☐ This is a new matter and not previously assigned to a District Court Judge.

☐ The Appellant has not paid the filing fee.
.

Dated:  08/19/2015                         Clerk, United States Bankruptcy Court


                                           By:  /s/  LaShonda Moss
                                                  Deputy Clerk

13-53846-tjt   Doc 10185   Filed 09/06/15   Entered 09/06/15 11:20:52   Page 85 of
136
13-53846-tjt   Doc 10148   Filed 09/20/15   Entered 09/20/15 11:24:23   Page 85 of 1707

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

City of Detroit, Michigan,

      Debtor,

Case No. 13-53846
Honorable Thomas J. Tucker
Chapter 9

_____

## NOTICE OF APPEAL AND STATEMENT OF ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s): B & C LAND DEVELOPMENT CORPORATION
   _____

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

   For appeals in an adversary proceeding.
   - ☐ Plaintiff
   - ☐ Defendant
   - ☐ Other (describe) _____

   For appeals in a bankruptcy case and not in an adversary proceeding.
   - ☐ Debtor
   - ☑ Creditor
   - ☐ Trustee
   - ☑ Other (describe)   Respondent

### Part 2: Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from: Order Granting City of Detroit's Motion for Entry of an Order Enforcing the Plan of Adjustment Injunction

2. State the date on which the judgment, order, or decree was entered: 8/5/2015

### Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: B&C Land Development Corporation

   Attorney: Horace D. Cotton (P33268)
   P.O. Box 19520
   Detroit, MI 48219
   (313) 595-1517

2. Party: City of Detroit

   Attorney: Mark N. Swanson
   350 W. Jefferson, Suite 2500
   Detroit, MI 48226
   (313)496-7591

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

**/s/ Horace D. Cotton**
Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Date:  08/19/2015

Name, address, and telephone number of attorney
(or appellant(s) if not represented by an attorney):

Horace D. Cotton (P33268)
P. O. Box 19520
Detroit, MI 48219

(313 595-1517

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Case No. 13-53846 |
| City of Detroit, Michigan, | Judge Thomas J. Tucker |
| Debtor. | Chapter 9 |

**ORDER GRANTING CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II) REQUIRING B&C LAND DEVELOPMENT CORPORATION TO (A) DISMISS WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS NOTICE OF LIS PENDENS**

This case is before the Court on the City of Detroit's Motion for the Entry of an Order (I) Enforcing the Plan of Adjustment Injunction and (II) Requiring B&C Land Development Corporation to (A) Dismiss with Prejudice its State Court Lawsuit and (B) Withdraw its Notice of Lis Pendens (Docket # 10087, the "Motion"). The Court held an expedited hearing on the Motion on August 5, 2015. For the reasons stated by the Court on the record during the hearing,

**IT IS ORDERED THAT:**

1.      The Motion is granted.

2.      No later than August 10, 2015, B&C Land Development Corporation must dismiss, or cause to be dismissed, with prejudice, Case No 15-008602 filed with Wayne County Circuit Court, Michigan and captioned *B&C Land Development Corporation vs. The City of Detroit, A Municipal Corporation* (the "State Court Lawsuit").

3.      No later than August 10, 2015, B&C Land Development Corporation must withdraw from the Wayne County Register of Deeds the Notice of Lis Pendens filed by it with respect to the property described in paragraphs 7 and 8 of this Order.

4.      If B&C Land Development Corporation fails to timely withdraw the Notice of Lis Pendens as required by paragraph 3 of this Order, the City may file a copy of this Order with the

Wayne County Register of Deeds which will operate as a withdrawal of the Lis Pendens with respect to the property described in paragraphs 7 and 8 of this Order.

5.      B&C Land Development Corporation is permanently barred, estopped and enjoined from asserting any claims described in the State Court Lawsuit, or the alleged conduct forming the basis of the State Court Lawsuit, against the City of Detroit or property of the City of Detroit, in the State Court Lawsuit or in any other action or proceeding.

6.      The Court will retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

[continued on following page]

13-53846-tjt   Doc 10125-7   Filed 09/16/15   Entered 09/16/15 14:00:52   Page 89 of
136
13-53846-swr   Doc 10139   Filed 08/10/15   Entered 08/10/15 14:39:07   Page 20 of 1711

7.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1187 THROUGH 1206 BOTH INCLUSIVE, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) AND THE ADJACENT VACATED CAMPBELL AVENUE (66 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO PRIVATE CLAIM NO. 39 EXCEPT THE EASTERLY 574.00 FEET THEREOF LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE, EXCEPT A TRIANGULAR PORTION THEREOF DEFINED AS THE SOUTH 338.25 FEET ON THE WEST LINE OF PRIVATE CLAIM NO. 39 AND THE WEST 157.00 FEET ON THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1187 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 578.36 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 494.78 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.55°47'32"W. 299.32 FEET TO A POINT ON THE WEST LINE OF PRIVATE CLAIM NO. 39; THENCE N.28°08'13"W. 1143.03 FEET ALONG SAID WEST LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 17.1009 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

13-53846-tjt Doc 10186-7 Filed 09/16/15 Entered 09/16/15 14:59:52 Page 90 of 1712
13-53846-tjt Doc 10186-7 Filed 09/16/15 Entered 09/16/15 14:59:52 Page 90 of 136
136

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarim DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

[continued on following page]

8.

## LEGAL DESCRIPTION

A PARCEL OF LAND IN THE CITY OF DETROIT, WAYNE COUNTY, MICHIGAN BEING DESCRIBED AS LOTS 1207 THROUGH 1214 BOTH INCLUSIVE, LOT 1215 EXCEPT THE EASTERLY 6.36 FEET THEREOF, ALL BEING TOGETHER WITH THE ADJACENT VACATED PUBLIC ALLEY (20 FEET WIDE) OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; ALSO THE WESTERLY 213.64 FEET OF THE WESTERLY 574.00 FEET OF PRIVATE CLAIM NO. 39 LYING SOUTH OF THE "SIXTH PLAT SUBDIVISION OF THE PARTS OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS AND LYING NORTH OF AND ADJACENT TO THE DETROIT RIVER U.S. HARBOR LINE; SAID PARCEL BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHWEST CORNER OF LOT 1207 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE N.61°37'43"E. 213.64 FEET ALONG THE SOUTHERLY LINE OF JEFFERSON AVENUE (80 FEET WIDE) TO A POINT BEING 6.36 FEET WESTERLY FROM THE NORTHEAST CORNER OF LOT 1215 OF THE "SIXTH PLAT SUBDIVISION OF THE PART OF THE WALTER CRANE FARM OF PRIVATE CLAIM NO. 39" AS RECORDED IN LIBER 20, PAGE 55 OF PLATS, WAYNE COUNTY RECORDS; THENCE S.28°03'35"E. 1068.40 FEET ALONG A LINE 360.36 FEET WEST OF THE EASTERLY LINE OF SAID PRIVATE CLAIM NO. 39 TO THE DETROIT RIVER U.S. HARBOR LINE; THENCE S.34°06'08"W. 241.60 FEET ALONG SAID DETROIT RIVER U.S. HARBOR LINE; THENCE N.28°03'35"W. 1180.06 FEET ALONG A LINE 574.00 FEET WEST OF THE EASTERLY LINE OF PRIVATE CLAIM NO. 39 TO THE POINT OF BEGINNING; SAID PARCEL CONTAINING 5.5137 ACRES, MORE OR LESS AND BEING SUBJECT TO ANY EASEMENTS OF RECORD.

Description CORRECT

ENGINEER OF SURVEYS

BY: Basil Sarin DATE: 4/28/2015

Street Address[es]:

Property Tax Ward & Item numbers:

**Signed on August 5, 2015**                    **/s/ Thomas J. Tucker**

                                        **Thomas J. Tucker**
                                        **United States Bankruptcy Judge**

211 West Fort Street
Detroit, MI 48226

## UNITED STATES BANKRUPTCY COURT
Eastern District of Michigan

Case No.:  13−53846−tjt
Chapter:  9

In Re: (NAME OF DEBTOR(S))
   City of Detroit, Michigan
   2 Woodward Avenue
   Suite 1126
   Detroit, MI 48226
Social Security No.:

Employer's Tax I.D. No.:
   38−6004606

NOTICE OF DEFICIENT FILING

It has been determined that the following document(s) are Missing and/or Non−Compliant:

Notice of Appeal

is defective as indicated:

- ☐ Acceptable List of Creditors
- ☐ Acceptable List of Creditors Not Uploaded
- ☐ Cover Sheet for Amendments (To be filed with corrected document in its entirety as one PDF)
- ☐ Amended Document (To be filed with Cover Sheet for Amendments in its entirety as one PDF)
- ☐ Application for Waiver of Filing Fee
- ☐ Attorney Disclosure of Compensation Statement 2016(b) (LBR 9010−1(c))
- ☐ Bankruptcy Petition Cover Sheet
- ☑ Bankruptcy Matter Civil Case Cover Sheet Missing
- ☐ Brief
- ☐ Certificate of Exigent Circumstances − Credit Counseling Waiver
- ☐ Debtors Statement of Corporate Ownership
- ☐ Electronic Signature does not match login
- ☐ Electronic Signature Missing or Incorrect Format ECF Procedure 11(d)(1)
- ☐ List of 20 Largest Unsecured Creditors
- ☐ Motion for Approval of Certificate of Exigent Circumstances 109(h)(3)(A) Missing
- ☐ Motion to Convert under 11 U.S.C. § 706(a)  (Rule 9013)
- ☐ Motion to Excuse Credit Counseling 109(h)(4) Missing
- ☐ Notice of Objection to Claim
- ☐ Notice of Special Appearance Missing or Non−Compliant (LBR 9010−1(c))
- ☐ Notice to Respondent
- ☐ Original Signature
- ☐ Proof of Service Missing or Non−Compliant
- ☐ Proposed Order

- ☐ Reaffirmation Agreement Cover Sheet
- ☐ Statement of Corporate Ownership LBR 9013–5

A corrected/missing document must be filed with the court within seven (7) days of this notice. If not corrected, the case may be dismissed or an order striking the document from the record may be entered by the Court. The new document filed should be identified as **"CORRECTED"**.

Dated: 8/20/15

BY THE COURT

Katherine B. Gullo , Clerk of Court
U.S. Bankruptcy Court

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

County in which action arose  WAYNE

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
B & C LAND DEVELOPMENT CORPORATION

**DEFENDANTS**
City of Detroit, Debtor in Possession

**(b)** County of Residence of First Listed Plaintiff   WAYNE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wayne
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Horace D. Cotton, PLLC
P.O. Box 19520
Detroit, MI 48219 (313) 595-1517

Attorneys *(If Known)*

Miller, Canfield, Paddock and Stone
350 W. Jefferson, Suite 2500
Detroit, MI 48226 (313) 496-7561

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        *(U.S. Government Not a Party)*

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
        Proceeding

☐ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        Another District
        *(specify)*

☐ 6  Multidistrict
        Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 158 (a)
Brief description of cause:
Appeal of Bankruptcy Court Order Granting City of Detroit's Motion to Enforce Plan of Adjustment Injunction

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE

DOCKET NUMBER

DATE
August 20, 2015

SIGNATURE OF ATTORNEY OF RECORD
*Horace D. Cotton*

FOR OFFICE USE ONLY

RECEIPT #

# PURSUANT TO LOCAL RULE 83.11

1.         Is this a case that has been previously dismissed?                    ☐ Yes
                                                                                 ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.         Other than stated above, are there any pending or previously
           discontinued or dismissed companion cases in this or any other       ☒ Yes
           court, including state court? (Companion cases are matters in which   ☐ No
           it appears substantially similar evidence will be offered or the same
           or related parties are present and the cases arise out of the same
           transaction or occurrence.)

   If yes, give the following information:

   Court:    US Bankruptcy Court Eastern District of Michigan

   Case No.:    13-53846

   Judge:    Thomas J. Tucker


Notes :

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

In Re                                       Case No. 2:15–cv–12976–BAF–RSW

Detroit, City of,                           Hon. Bernard A. Friedman

                                            Magistrate Judge  R. Steven Whalen

_____

### NOTICE OF RECEIPT OF BANKRUPTCY APPEAL

Pursuant to the Bankruptcy Rules, notice is hereby given that a Bankruptcy Appeal was received on 8/20/2015 and assigned the case number and judicial officers as noted above.

The bankruptcy court case number is 13–53846.

Dated:  August 21, 2015

### Certificate of Service

I hereby certify that on this date a copy of the foregoing notice was served upon the parties and/or counsel of record by electronic means or first class U.S. mail.

DAVID J. WEAVER, CLERK OF COURT

By: s/V. Lung_____
    Deputy Clerk

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3  IN THE MATTER OF,                  Case No. 13-53846
                                      Detroit, Michigan
4  CITY OF DETROIT, MI               August 5, 2015
   _____/   2:13 p.m.
5
    IN RE: BENCH OPINION RE: (#9970) CITY OF DETROIT'S MOTION FOR
6    THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN OF ADJUSTMENT
   INJUNCTION AND (II) REQUIRING THE DISMISSAL OF THE STATE COURT
7     ACTION FILED BY TANYA HUGHES, AND EXPEDITED HEARING RE:
     (#10087) CITY OF DETROIT'S MOTION FOR THE ENTRY OF AN ORDER
8     (I) ENFORCING THE PLAN OF ADJUSTMENT INJUNCTION AND (II)
     REQUIRING B & C LAND DEVELOPMENT CORPORATION TO (A) DISMISS
9    WITH PREJUDICE ITS STATE COURT LAWSUIT AND (B) WITHDRAW ITS
                    NOTICE OF LIS PENDENS.
10           BEFORE THE HONORABLE THOMAS J. TUCKER
              TRANSCRIPT ORDERED BY: <u>ROBIN WYSOCKI</u>
11
   APPEARANCES:
12
   For the City of Detroit, MI:   MARC SWANSON, ESQ. (P71149)
13                                 JONATHAN GREEN, ESQ. (P33140)
                                   Miller, Canfield, Paddock &
14                                 Stone
                                   150 West Jefferson
15                                 Suite 2500
                                   Detroit, MI 48226
16                                 313-496-7591

17 For Tanya Hughes:             JEFFREY ELLISON, ESQ. (P35735)
                                 214 S. Main Street
18                               Suite 210
                                 Ann Arbor, MI 48104
19                               734-761-4300
                                 734-528-4159
20
   For B & C Land Development    HORACE COTTON, ESQ. (P33268)
21 Corporation:                  P.O. Box 19520
                                 Detroit, MI 48226
22                               313-595-1517

23 Court Recorder:              Jamie Laskaska
   Transcriber:                 Deborah L. Kremlick
24
   Proceedings recorded by electronic sound recording, transcript
25 produced by transcription service.

1      (Court in Session)

2           THE COURT:  All right.  We'll we're ready to call

3    the City of Detroit case and the matters we have scheduled for

4    -- in that case today.

5           THE CLERK:  The Court calls the City of Detroit,

6    Michigan.  Case number 13-53846.

7           THE COURT:  All right.  Good afternoon.  Let's have

8    appearances, please.

9           MR. SWANSON:  Your Honor, it's Marc Swanson and

10   Jonathan Green on behalf of the debtor the City of Detroit.

11          MR. ELLISON:  Afternoon, Your Honor.  Jeffrey

12   Ellison for Tanya Hughes.

13          THE COURT:  All right.  We have two matters

14   scheduled for hearing today, one of which is the Tanya Hughes

15   matter.  So we will go ahead with that first.  And it's listed

16   as the first matter anyway on the Court's calendar.

17       So this is a -- originally after the July 15th hearing the

18   Court held in which the Court heard oral argument from counsel

19   for these parties regarding the City of Detroit's motion for

20   entry of an order enforcing the plan of adjustment and

21   injunction, et cetera concerning the State Court action filed

22   by Tanya Hughes.

23       The Court originally took the matter under advisement and

24   said the Court would issue a bench opinion -- actually it came

25   under advisement when the supplement filings that the Court

1  ordered on July 15 were -- were filed.  But the Court

2  scheduled today for a bench opinion hearing to rule on the

3  motion.

4       Since that time as the parties know, the parties filed a

5  stipulation asking the Court to enter an order permitting the

6  debtor and Ms. Hughes through counsel to present as they put

7  it, limited oral argument on the supplemental filings as

8  defined in the stipulation today and I -- I granted that and

9  entered the order granting that.

10      So we start at least with the -- some further oral

11 argument regarding the city's motion which the parties wish to

12 make in light of the supplemental filings that have been filed

13 since the July 15ᵗʰ hearing and that's fine, we'll hear that.

14 I'm not guaranteeing at this moment that I'm going to actually

15 issue a bench ruling when you get done with that argument

16 rather than doing it on another day, but we'll -- we'll see.

17 So go ahead.  We'll hear from the parties.  I guess unless the

18 parties have a different order in mind, we'll hear first from

19 the debtor, the moving party.

20      MR. SWANSON:  Thank you, Your Honor.  And at least

21 the city included the limited portion because it -- it -- it

22 intends to be brief.

23      The -- the supplemental filings were attached to the

24 city's supplement filed at docket number 10099 included the

25 police trial board decision which the Court requested, the

1 arbitration ruling, and then the relevant provisions of the

2 CBA.

3     Additionally attached as Exhibit A to the stipulation

4 filed at docket number 10109 was a proof of claim that was

5 filed by the DPLSA on behalf of certain individual members

6 including Ms. Hughes.

7     The city believes that these documents reinforce and

8 support the city's position that the claim arose pre-petition,

9 either under the debtor's conduct or the fair contemplation

10 approach.

11     First, this claim is consistent with and supports the

12 city's view that -- that this is a pre-petition claim. The

13 claim shows that the claims arising from her termination were

14 within the fair contemplation of her union and should also

15 have been in the -- within her fair contemplation. Filing of

16 the claim is exactly what should have happened and what in

17 fact did happen.

18     And that -- in this regard the claim states on Exhibit

19 1B, that it was her termination for -- that the grievant was

20 terminated for a refusal to submit to a drug screen. And on

21 Exhibit 1 to the claim the -- it acknowledges that the claim

22 is filed as a protective measure, in event that any of the

23 claimants on the list attached hereto have monetary claims

24 against the city arising from the resolution of the

25 disciplinary action.

1    Footnote 1 to Exhibit 1 also states that resolution of a

2    disciplinary action may result in the DPLSA member having a

3    claim against the city.  That's exactly what is alleged here.

4    And -- and second, the city wanted to make clear that in light

5    of this claim it's not asking for Paragraphs 3 and 4 of the

6    relief requested in its original motion and has stipulated to

7    that fact.

8         THE COURT:  So basically what you're seeking now is

9    only the --

10        MR. SWANSON:  The --

11        THE COURT:  The order that -- the injunctive

12   provision regarding the State Court lawsuit.

13        MR. SWANSON:  Yes.  The only thing that we're

14   seeking here today, Your Honor -- I guess two things.  One,

15   we're seeking a determination that the claim as alleged in the

16   State Court lawsuit arose pre-petition.  And that claim is

17   enjoined or -- or Ms. Hughes to be exact, is enjoined from

18   pursuing that claim under the plan injunctive provisions.

19    And we would seek an order which requires Ms. Hughes to

20   dismiss her lawsuit against the city with prejudice and -- and

21   she has whatever rights she and the DPLSA have under this

22   proof of claim and -- and the city is not asking the Court to

23   obviously make any sort of determination, or ruling, or -- or

24   anything like that on -- on the claim.  And that's all the

25   city has, Your Honor.  Thank you.

1           THE COURT:  All right.  Mr. Ellison.

2           MR. ELLISON:  Yes.  Thanks very much, Your Honor.

3   Your Honor posed a question during oral argument when we were

4   last here as to whether this was a termination of Sergeant

5   Hughes that occurred in October or thereabouts of 2012, but a

6   termination that could not be fully implemented until the

7   arbitrator ruled, or was it instead an initiation of an effort

8   to remove Sergeant Hughes from the work force that did not

9   actually turn into a termination until the arbitrator ruled.

10          The distinction being that what -- what type of claim was

11  -- or what type of action against Sergeant Hughes was

12  initiated.  And I think the documents that have been presented

13  to Your Honor by stipulation bear on that question and

14  demonstrate the she was not fired by the Chief of Police

15  pre-petition.  She was not fired until December 16 of 2014

16  which was after the eighth amended adjustment plan was

17  approved by the Bankruptcy Court.

18          The -- the documents that bear this out, Your Honor, the

19  trial board decision which is in transcript form, and this is

20  docket number 10099 and it's Page 5 of the transcript.  It

21  says, quote -- it's a cover letter actually to the transcript.

22          It says, "attached hereto is the recommendation of the

23  police trial board in the matter of Tanya Hughes.  And the

24  recommendation is that she be -- be dismissed from the Detroit

25  Police Department".

1    Then the transcript itself says on Page 8 of the filing

2    beginning on Line 11, "as it relates to the decision of the

3    trial board, I, commander James White as chairperson,

4    recommend a penalty of dismissal from the Detroit Police

5    Department".

6    So the -- the trial board itself is making a

7    recommendation, they're not making a decision.  The

8    arbitrator's decision on Page 55 of the filing, Your Honor,

9    again this is docket 10099, Page 55, the arbitrator's decision

10   issued December 15, 2014, so nearly two years later following

11   the trial board decision says, "in recommending the penalty of

12   dismissal, the trial board considered the nature of the

13   misconduct along with Sergeant Hughes' spotless disciplinary

14   history".

15   And then the arbitrator went on to say, "considering the

16   gravity of the charges, this arbitrator cannot find that the

17   department violated concepts of just cause and reasonableness

18   in reaching this determination".

19   Again, the -- the recommendation.  So when did the

20   recommendation turn into an actual decision.  And I would

21   submit to Your Honor that that happened when the arbitrator

22   said that the recommendation was consistent with just cause.

23   If you take a look at the collective bargaining agreement

24   provisions, Page 59 of the filing says that Article 5, Section

25   D, "the department reserves the right to discipline and

1  discharge for just cause". That is the contractual language

2  that gives the department the right to fire.

3      Article 10, Section A --

4          THE COURT: Wait a minute. I'm looking at Page 59.

5          MR. ELLISON: Yeah.

6          THE COURT: Where is that?

7          MR. ELLISON: I -- I believe I have it right.

8          THE COURT: I'm sure it's there, but I just --

9          MR. ELLISON: It's Section D, Your Honor.

10         THE COURT: Oh, I see. The first sentence in D.

11         MR. ELLISON: The first sentence, yes. And then on

12  Page 59, Your Honor, in Article 10, Section A(3), it lays out

13  what the trial board's responsibility is.

14     It states, "the trial board shall serve an investigatory

15  role. It will not issue a penalty but will make a penalty

16  recommendation to the Chief of Police; and the discipline

17  decision rendered in the chief's hearing shall be the final

18  ruling by senior management of the department". That's on

19  Page 64 of the filing.

20     Now, there's nothing that's been submitted to Your Honor

21  that the chief actually made a decision. And I --

22         THE COURT: I was going to ask about that. I

23  noticed the provision in the collective bargaining agreement

24  on Page 65, talks about Section 4, a chief's hearing and ends

25  up by saying the decision of the Chief of Police should be the

1  final department administrative remedy.  The Chief of Police

2  shall notify the employee in writing forthwith.  There's no

3  such writing presented.

4          MR. ELLISON:  Correct.

5          THE COURT:  The parties don't have one?  There isn't

6  one?

7          MR. ELLISON:  I believe there is not one, Your

8  Honor.  I believe that the chief did not issue anything in

9  writing.  And I think that is consistent with the appeal to

10  arbitration which is at Article 9, Section A(1) which is on

11  Page 61 of the filing.

12      And that says, "such written notice of intent to

13  arbitrate must be made within 20 calendar days after receipt

14  of the fourth step answer or trial board finding".

15      So the time for proceeding to arbitration runs from when

16  the trial board makes its finding, not any appeal from a trial

17  board to a chief's hearing.  You note the language that you

18  found on Page 65 of the filing that gives the chief the right

19  to consider what the trial board has found, accept it in toto,

20  modify it, reject it, conduct a new de novo proceeding himself

21  if that's what the Chief of Police decides to do, yet the

22  appeal to arbitration language doesn't run from what the chief

23  does, it runs from what the trial board has done.

24      And so what we have in front of the Court is the trial

25  board recommendation and the arbitrator acknowledges that it's

1  a recommendation of the trial board and the arbitrator

2  determines based on that recommendation that the

3  recommendation is consistent with just cause.

4      And the timing here, Your Honor, is the most important

5  issue.  The timing coming when the arbitrator rules and the --

6  the following day, December 16 of 2014 is the day that

7  Sergeant Hughes for the first time suffers adverse employment

8  action.

9      And I would submit, Your Honor, that based on this

10 additional information that's been provided to the Court that

11 the underlying act then converts to the determination of the

12 arbitrator which is December 15 of 2014.

13          THE COURT:  Is there actually a termination at all

14 under the collective bargaining agreement terms before the

15 Chief of Police has issued a written decision?

16          MR. ELLISON:  I'm sorry, Your Honor.

17          THE COURT:  The Chief of Police makes the decision

18 whether or not to terminate subject to whatever appeal rights

19 there are.  Without such a decision is there actually even a

20 termination yet?

21          MR. ELLISON:  As -- as of today --

22          THE COURT:  Yeah.

23          MR. ELLISON:  -- Your Honor?  Yes, there is, Your

24 Honor.  When -- when the arbitrator issues the decision saying

25 that the recommendation of the trial board for dismissal is

1  consistent with just cause, the arbitrator says termination is

2  what happens.

3          THE COURT:  Is that what this arbitrator said?

4          MR. ELLISON:  Yeah.

5          THE COURT:  Where did the arbitrator say the

6  employee is terminated?

7          MR. ELLISON:  The arbitrator says --

8          THE COURT:  It says a dismissal of Sergeant Hughes,

9  et cetera, is hereby affirmed.

10          MR. ELLISON:  Correct.

11          THE COURT:  If you think that's the -- that award

12  language, Page 44 of the arbitrator's decision when that was

13  issued on December 15, 2014 that constitutes the moment in the

14  event of termination?

15          MR. ELLISON:  That's correct, Your Honor.  And prior

16  to that what we have under the language of the collective

17  bargaining agreement, again Article 10, Section A(3) on Page

18  64 is a referral to a trial board.

19      It indicates -- and I'll read the language rather than

20  attempt to recall it.  "When serious charges are made against

21  an employee, and again this is the second sentence of that

22  section, "when serious charges are made against an employee,

23  the matter may be referred to a trial board".

24      So that's without a determination being made.  It's just

25  a serious charge.  Disciplinary administration section,

1  perhaps the Chief of Police, whoever it is that determines

2  whether charges are serious within the meaning of that

3  language, it's clearly a department function.

4      But once it's referred to the trial board, then the trial

5  board language takes over and that gives the trial board the

6  right to investigate, but not issue a penalty.  They can make

7  a recommendation, but -- but can't issue the penalty.

8      So the determination of dismissal happens December 15 of

9  2014 when the arbitrator rules and the -- the decision that

10  the arbitrator issues on that date is implemented the next

11  day, December 16.  And that's the day that Sergeant Hughes is

12  removed from the payroll.

13      Now with respect to the claim that's filed by the DPLSA,

14  Your Honor may be aware of some of the background information

15  that gave rise to that claim.  There was a stipulation entered

16  into between the city and various public safety unions which

17  is docket number 2667 filed February 7 of 2014 concerning --

18  the principal concern there related to defense and

19  indemnification claims.

20      When an officer is accused of conduct giving rise to an

21  injury to a citizen known in common parlance as police

22  brutality for instance, the -- the citizen will sue the

23  officer and will also sue the city.  The officer of course is

24  not in bankruptcy.  The officer has a claim against the city

25  for defense and indemnification under the charter of the City

1  of Detroit.

2      And the public safety unions were concerned that the

3  officers who face potential claims would be left high and dry

4  without defense and indemnification.  And so this stipulation

5  was reached through mediation and resulted in an order which

6  is docket number 2678 which gave the public safety unions the

7  right to file omnibus claims on behalf of any member of their

8  associations that they could identify for a potential defense

9  and indemnification.  And again --

10      THE COURT:  But that's not what the claim is that

11  was filed by --

12      MR. ELLISON:  I understand, Your Honor.

13      THE COURT:  Excuse me, by the association on behalf

14  of Tanya Hughes.

15      MR. ELLISON:  Right.  But --

16      THE COURT:  It says nothing about indemnification.

17      MR. ELLISON:  There -- there -- there is a -- there

18  is a paragraph within the stipulation.  Sub paragraph H on

19  Page 4 of the stipulation.  It's -- and again the stipulation

20  is docket 2667.

21      That states, "there also are potential claims of public

22  safety union members as a result of disciplinary action

23  instituted against such member by the city".  And the

24  paragraph goes on, and the -- the stipulation thus gave --

25  gave the public safety unions the right to file claims on

1  behalf of any person within their individual associations that

2  was facing potential disciplinary action.

3      And the claim that was filed by the DPLSA related to

4  disciplinary action.  I believe Your Honor has as part of this

5  record, listing three individuals, Victor Jones, Tanya Hughes,

6  and Donald Johnson.  Victor Jones, a discipline filed that

7  commenced in calendar 2010.  Tanya Hughes, a discipline filed

8  that commenced in calendar 2012.  And Donald Johnson, a

9  demotion filed.

10     Donald Johnson had been an inspector represented by the

11 Command Officer's Association.  He had been demoted into the

12 DPLSA and there was a proceeding pending seeking to get him

13 re-promoted and get him the difference in the compensation

14 between the two ranks.

15     As far as I can tell, the -- what -- what the DPLSA put

16 in the claim with respect to Tanya Hughes, they asked for

17 reinstatement and back pay.  She -- she didn't need

18 reinstatement at the time the claim was filed because she

19 hadn't been dismissed.  And she had no back pay due and owing

20 to her because she was receiving full compensation in a

21 suspended with pay status.

22     So I -- I think that the claim that was filed by the

23 DPLSA does not go to the issue that's before Your Honor and

24 that is whether it was within the fair contemplation of

25 Sergeant Hughes that she had a claim under the Elliott-Larsen

1  Civil Rights Act for pregnancy discrimination or disability

2  discrimination arising from the order in October 2012 that she

3  completely disrobe before delivering a urine specimen at a

4  drug testing event.

5       Under the Signature Combs case as I've argued previously,

6  Your Honor, a claim for bankruptcy purposes arises if the

7  potential claimant knows that they have a claim and knowledge

8  of that is acknowledged to a certainty.  And here Sergeant

9  Hughes didn't know even if she was going to be fired as a

10 result of this let alone whether she would have a claim under

11 the Elliott-Larsen Civil Rights Act arising from such

12 dismissal.

13          THE COURT:  Well, Tanya Hughes did not sign this

14 proof of claim or file it?

15          MR. ELLISON:  Correct.  And in fact we did not know

16 about it.

17          THE COURT:  Is that correct?

18          MR. ELLISON:  That is correct, Your Honor.

19          THE COURT:  She didn't do it.

20          MR. ELLISON:  Sergeant Hughes didn't know about it.

21          THE COURT:  It was -- it was filed by the Detroit

22 Police Lieutenants and Sergeants Association.

23          MR. ELLISON:  Correct.

24          THE COURT:  Right?  Under -- under an order of this

25 Court that authorized that association to file claims like

1   this.

2           MR. ELLISON:  Correct.

3           THE COURT:  And the proof of claim says in Exhibit 1

4   it's without prejudice to claimant's ability -- I'm sorry,

5   there's something in the order or in the -- yeah, it says it's

6   -- it's without prejudice to the individual member to assert

7   claims on their own behalf.

8           MR. ELLISON:  Correct.

9           THE COURT:  All right.  Well, what else did you want

10  to say, anything?

11          MR. ELLISON:  That's all I have, Your Honor.  Thank

12  you.

13          THE COURT:  All right.  Thank you.  Mr. Swanson, as

14  usual as counsel for the moving party, I'll let you briefly

15  reply if you want to.  Anything further you'd like to say?

16          MR. SWANSON:  Thank you, Your Honor.  I think we

17  need to -- to go back to the definition of -- of claim under

18  the Bankruptcy Code.  And -- and realize that Congress broadly

19  defined claim and gave it the broadest possible definition.

20      When the termination was filed and when it occurred is --

21  is not all together relevant here.  We know that the conduct

22  occurred pre-petition, there were numerous proceedings

23  initiated pre-petition, and this claim was within Ms. Hughes'

24  fair contemplation before the filing of the case.  Thank you.

25          THE COURT:  All right.  Thank you both.

1    I'm -- I'm not going to issue a bench opinion at this

2  moment ruling on this motion or the -- the motion as it has

3  now been modified in terms of the relief the city is -- is

4  seeking.  Instead I'm going to schedule this for a bench

5  opinion to be given on the next day when I have City of

6  Detroit hearings which is August 26 at 1:30 p.m.

7    I've got a couple of matters in this case already

8  scheduled for that day.  I'm out of town much of the next two

9  weeks anyway.  So I couldn't really do it before then.

10    I do want to take a bit more time to think about the

11  arguments of the parties and the authorities the parties cite

12  and the issues here before ruling.  But I'll -- I'll do it on

13  August 26 at 1:30.  Now, does that date and time work on

14  counsels' calendars.  Mr. Swanson, Mr. Ellison.

15    MR. ELLISON:  Yes, Your Honor.  For Tanya Hughes it

16  does.

17    MR. SWANSON:  Your Honor, I -- I cannot make it here

18  that day but -- but Mr. Green will be here.

19    THE COURT:  Oh, okay.  So the city has no problem

20  with me doing it then as opposed to --

21    MR. SWANSON:  No problem.

22    THE COURT:  All right.  Okay, very good.  So that's

23  -- that's it for today on that matter.  The -- let's hear the

24  next matter which is the expedited hearing on the City of

25  Detroit's motion concerning B & C Land Development and its

1  lawsuit in State Court.

2      `All right.  This hearing on the city's motion is docket

3  number 10087.  The motion for entry of an order enforcing the

4  plan of adjustment injunction and requiring B & C Land

5  Development Corporation to dismiss with prejudice its State

6  Court lawsuit and withdraw its notice of lis pendens.

7      I -- I did review the papers filed by the parties

8  concerning this motion and their exhibits.  We'll start with

9  counsel for the moving party.  Mr. Swanson, you're going to

10  argue it?

11          MR. SWANSON:  Yes, Your Honor.

12          THE COURT:  All right.  Well, let's have

13  appearances.  You've already entered an appearance.  Counsel

14  for B & C.

15          MR. COTTON:  May it please the Court, Horace Cotton

16  appearing on behalf of B & C.

17          THE COURT:  All right.  Thank you.  Good afternoon

18  to everyone.  Go ahead then, Mr. Swanson.

19          MR. SWANSON:  Thank you, Your Honor.  The matters in

20  dispute here are one, does B & C Land have a contract with the

21  city.  Did it ever have a contract with the city.

22      And two, if this Court were to find that there was a

23  contract which the city does not believe is the case, is B & C

24  Land prohibited from suing on that contract because it's

25  barred by the Michigan statute of limitations.

1    If this Court were to answer either of these questions in

2  the city's favor, the Court should enter the order requiring

3  the dismissal of the State Court lawsuit and the withdrawal of

4  the lis pendens.

5         THE COURT:  Was the lis pendens notice filed only in

6  the Circuit Court in the lawsuit, or was it filed separately

7  in the Register of Deeds office?  Do you know?

8         MR. SWANSON:  I don't know, Your Honor.  I would --

9         THE COURT:  Okay.  Well, go ahead.

10         MR. SWANSON:  Your Honor, I wanted to provide a

11  little background on -- on this piece of property and -- and

12  the facts at least as B & C has -- has alleged them to be.

13    First though, B & C alleges that there was a contract in

14  -- in 2006 between the city and B & C to sell real property.

15  B & C alleges that on May 21, 2008, the contract was breached

16  because that property which was subject to the alleged

17  contract was instead transferred to the Detroit Waterage or --

18  Detroit Water Sewerage Department, the DWSD.

19    Now in February of 2015, the city received two purchase

20  offers for this property and on June 30th, 2015, the Detroit

21  city council passed resolutions approving both of these

22  purchase offers -- offers.  And the Mayor has subsequently

23  approved them as well.

24    The city and the purchasers desired to complete the sale

25  of these properties as soon as possible and the day after the

1 city council approved these resolutions B & C filed a

2 complaint in Wayne County Circuit Court alleging that it had a

3 contract to purchase the same property that was approved by

4 city council and -- and sued for breach of contract.

5      Now, Your Honor, B & C does not have a contract and it

6 has never had a contract with the City of Detroit.  To support

7 its argument that there is a contract, B & C attached a cover

8 letter and a document entitled offer to purchase.  These

9 documents appear at docket number 10087 from Pages 35 to 43.

10      The cover letter to the offer to purchase is instructive

11 and -- and important.  Because it provides on Page 3, upon

12 receipt of the above, referring to the offer to purchase, we

13 shall review your proposed development package.  If

14 acceptable, we shall follow our standard procedure for sale of

15 surplus property by development agreement to obtain city

16 council authorization to execute an agreement to purchase and

17 develop the property.

18      Now this language was included on the cover letter, Your

19 Honor, because the city's charter provides in Section 4-112

20 that "except as otherwise provided by this charter, the city

21 may not sell or in any way dispose of any property without the

22 approval by resolution of city council".

23      And, Your Honor, city council never approved this offer

24 to purchase.  And B & C does not allege otherwise.  In fact,

25 Your Honor, what may be most telling is that in Paragraph 26

1   of B & C's own complaint, it says that the city breached the

2   purported contract by "failing and refusing to present the

3   development agreement to city council for final approval".

4       This -- this conclusion is also supported by the

5   declaration of Mr. James Noseda who filed a declaration in

6   support of the city's reply where he certified that he has

7   searched the city council records for resolutions on -- on

8   this piece of property and there has never been a resolution

9   approving any sale of property -- any sale of this property to

10  B & C or its President Mr. Carmack.

11      Your Honor, this is not the first time that B & C has --

12  has -- has alleged that they're -- alleged that they're a

13  party to a contract with the city.  And as we attached as an

14  Exhibit 6D to our original motion, the city has consistently

15  maintained over the years that there is not a contract and

16  that there has never been a contract.

17      In fact in May 2012, Robert A. Anderson, the director of

18  the city's planning and development department issued a public

19  statement to the Detroit city council.  Because Mr. Carmack

20  has repeatedly been in front of the city council alleging that

21  he had a contract.

22      When he explained that P & DD never took a deposit, the

23  planning and development department never took a deposit from

24  Mr. Carmack for the site, never entered into a purchase

25  agreement with Mr. Carmack for the site, and never entered

1  into a development agreement with Mr. Carmack for the site.

2      Planning and development department never requested that

3  this honorable body approve any sale of the site to Mr.

4  Carmack and your honorable body never passed a land sale

5  resolution or authorized the sale of the property to Mr.

6  Carmack.

7      Thus, Your Honor, the law provides that for the offer to

8  purchase to be a valid contract the city council had to

9  approve it.  The facts here are undisputed that the city

10  council never approved the contract thus the only conclusion

11  that this Court could reach is that there is no contract.

12          THE COURT:  And therefore you're saying there was no

13  executory contract to be assumed or rejected or otherwise

14  treated under the plan or otherwise.

15          MR. SWANSON:  Yes, Your Honor.

16          THE COURT:  I -- I gather from that also that you're

17  arguing that to the extent there is -- there are any claims

18  based on these pre-petition events other than a breach of

19  contract claim and that's -- I don't -- I'm not sure that's --

20  any such other claims are asserted in the complaint in State

21  Court, that those are clearly pre-petition claims that are

22  covered by the plan's discharge and injunction relief.

23          MR. SWANSON:  That's correct, Your Honor.

24          THE COURT:  Okay, go on.

25          MR. SWANSON:  And Your Honor, although the city

1  believes there's overwhelming evidence here that there is no

2  contract if -- if the Court were to find a contract again by

3  B & C's own admissions, the statute of limitations period to

4  enforce that contract has run.

5      As I stated in -- in -- in my introduction, B & C alleges

6  that on May 21, 2008, the city breached this alleged contract

7  by transferring the subject property to the DWSD.  And -- and

8  there are certainly allegations in the complaint which would

9  support a conclusion that -- that B & C is alleging that the

10  breach occurred at -- at an earlier date.

11      But even if we take the farthest possible date May 21,

12  2008 as alleged by B & C, if you apply a six year statute of

13  limitations which applies to contracts and contracts to

14  purchase real property, the statute would have run during the

15  city's bankruptcy case under 108(c) would have been extended

16  for a period of 30 days after the effective date.  Which means

17  the statute ran on January 9th, 2015.  Thus B & C is barred

18  from suing on this contract under the statute of limitations.

19      The city asks that the Court grant its motion and order

20  that B & C dismiss the State Court lawsuit and withdraw the

21  lis pendens.  Thank you, Your Honor.

22          THE COURT:  All right.  Thank you, Mr. Cotton.

23          MR. COTTON:  Your Honor, B & C maintains that the

24  offer to purchase which was accompanied by a $50,000 good

25  faith deposit, as well as full blown development plans

1  including feasibility studies, market studies, environmental

2  studies, architectural drawings, et cetera which were prepared

3  by B & C at great expense as required by the City of Detroit

4  that was and is a binding contract with the City of Detroit

5  even though it had been -- and we agree that it was never

6  presented to council by -- to -- to -- to obtain a resolution

7  for entry into a development agreement.

8     And it is also true that Mr. Carmack has tried repeatedly

9  over the years to convince council that he had a -- an offer

10 to purchase which should be considered by that body to pass a

11 resolution to enter into a development agreement.

12    The city argues that Mr. Anderson, I believe, appeared

13 before council and -- and made certain representations that

14 planning and development never took a deposit from Mr.

15 Carmack.  Well, that was false.  They had never entered into a

16 purchase agreement.  That was false.

17    Part of the problem is that over the last few years given

18 Detroit's former Mayor and his administration being of course

19 embroiled in controversy and eventually convicted, over the

20 years there were a series of Mayors and -- and directors of

21 planning and development.

22    And under each administration they each told council

23 something different and contradictory.  And the crux of the

24 matter is that Mr. Carmack who was accompanying me at the

25 counsel's table who is the President of B & C Land

1 Development, was solicited for a bribe and refused to

2 cooperate.  And it was then that his proposal was killed, or I

3 don't want to say killed, it was buried and was never

4 presented to council.  In the meantime he spent thousands of

5 dollars in preparation for the offer.

6     Now the city wants to argue that if there was a contract

7 that it was breached when the property was originally

8 transferred to the control or the authority of water and

9 sewerage.  Well, we disagree.  We disagree.  Because water and

10 sewerage never paid for the property and the property was

11 transferred back under the jurisdiction of planning and

12 development by resolution.

13     It is our position that this contract was not breached

14 until May 31st of 2015 when the city agreed to sell portions of

15 the property to water -- excuse me, Waterfront Terminal

16 Holdings and Revere Dock, two separate purchasers.

17     And mind you of course that they're only selling a

18 portion of the -- the total property.  The Court also asked a

19 question as to whether or not the lis pendens was filed with

20 the treasurer -- excuse me, Register of Deeds and it has been.

21        THE COURT:  Was that done at the same time you filed

22 the lawsuit?

23        MR. COTTON:  Yes.

24        THE COURT:  All right.  Thank you.

25        MR. COTTON:  So it's our position that this contract

1  was in fact executory.  It is not rejected by the city in the

2  plan of adjustment.  And we cited cases which indicates that

3  it -- because it is not rejected it continues in existence.

4  It was not breached until recently -- recently here

5  post-petition and therefore it does not violate the

6  injunction.  We therefore ask this Court to deny the city's

7  motion.

8           THE COURT:  You contend this contract that you say

9  existed was breached by the city post-petition only recently.

10  By that are you referring to the city's actions in moving

11  forward with sale of the property to the two other purchasers

12  recently?

13          MR. COTTON:  Yes.

14          THE COURT:  All right.  So Mr. Cotton, what --

15  what's your response to the city's argument that there is no

16  contract under applicable Michigan law because the city

17  charter required a resolution by the city council approving

18  the sale in order for there to be a valid contract.

19          MR. COTTON:  There is no -- there is no development

20  agreement.  There is not a -- a separate purchase agreement

21  which is a separate document.  But the offer to purchase

22  accepted by the city is a valid contract under common law.

23          THE COURT:  A contract to sell the property.

24          MR. COTTON:  Yes.

25          THE COURT:  So how is it a valid contract to sell

1  the property, this city owned property when there was no --

2  never a city council resolution approving that sale.

3      I'm looking at Section 4-112 of the city charter.  It

4  says except as otherwise provided by this charter, the city

5  may not sell or in any way dispose of any property without the

6  approval by resolution of the city council.

7      Now under that charter provision under the case law cited

8  by the city, doesn't that mean that the fact there was no city

9  council approval by resolution, doesn't that mean there was

10  never a -- a valid contract between the city and B & C for the

11  sale of this property?

12          MR. COTTON:  I am -- I am aware of the charter

13  provision as well as the case law.  As a matter of fact I'm a

14  former city employee.  However, the offer to purchase we

15  maintain is still a binding contract between B & C and the

16  City of Detroit that's separate and distinct from the -- if I

17  might take a second.  One second, please.

18      Attached to the city's motion itself is a copy of the

19  purchase agreement between Waterfront Terminal and the City of

20  Detroit.  Now that is an example of the formal purchase

21  agreement typically used by the City of Detroit to sell

22  surplus land.

23      It's the same type of agreement that was used for the

24  other purchaser, Revere.  The -- so that -- that's the formal

25  purchase agreement.  The process of selling surplus property

1  is that the -- the city first enters into a binding agreement

2  with the developer.

3      And that agreement is binding.  Were it for the

4  bankruptcy and had this just arisen, it would go into State

5  Court if the city breached the offer to purchase and turned

6  around and sold it to another person.  And the city at that

7  time would attempt to argue that it's not binding because it's

8  -- it hasn't gone before council.  But the offer to purchase

9  is a binding legal document that gives B & C enforceable

10 rights separate from and before the issuance of a formal

11 purchase agreement authorized by the -- by council.  Those are

12 two separate and distinct matters.

13          THE COURT:  Well, but your theory is that the offer

14 to purchase when accepted you said that was accepted by city

15 personnel.

16          MR. COTTON:  Yes.

17          THE COURT:  Your theory is that is a binding

18 contract for the sale by the city to B & C of the real estate

19 which is the subject of the agreement.

20          MR. COTTON:  Yes.

21          THE COURT:  What I'm trying to understand is why you

22 -- why you are -- why you say that is so under Michigan law

23 given the city charter provisions and the case law to -- that

24 the city has cited here.  And given the fact that is

25 undisputed that the city council --

 1          MR. COTTON:  Excuse me.

 2          THE COURT:  Detroit city council has never approved

 3   the sale of any of this property to your client by a

 4   resolution as required by the city charter.  Why doesn't that

 5   mean that there -- there never was a valid or a binding

 6   contract for the sale of any of this property between the city

 7   and your client.

 8          MR. COTTON:  I would -- I would pose the question

 9   back to the city then what -- what is the purpose and effect

10   of -- of -- of executing an offer to purchase.  What it does

11   is it supposedly it ties up the land so that the -- the -- the

12   city will not negotiate with or -- or sell the property to any

13   other entity.  So it -- it -- it has legal effect as a

14   contract.  And the city is bound by it.  I think if -- that's

15   about all I have to say on that issue, Your Honor.

16          THE COURT:  All right.  Did you want to say anything

17   else then?

18          MR. COTTON:  No.  I think that's sufficient.

19          THE COURT:  All right.  Thank you.

20          MR. COTTON:  Thank you.

21          THE COURT:  Mr. Swanson, you may briefly reply as

22   counsel for the moving party if you want to.

23          MR. SWANSON:  Your Honor, what -- what we haven't

24   heard from B & C Land is that the contract was ever approved

25   by the city council or that it didn't need to be approved by

1  city council under the law.  That's because it -- it never was

2  approved by city council.  And -- and it had to be approved by

3  city council under the charter.

4       Second, Your Honor, B & C stated it -- it hasn't alleged

5  a -- a breach of contract on May 21, 2008.  If you look at

6  Paragraph 26 of the complaint it says, Detroit breached its

7  obligations under the purchase agreement by failing and

8  refusing to cooperate and negotiate in good faith.

9  Specifically Detroit has violated the purchase agreement by

10  number three, conveying the property to the Detroit Water and

11  Sewerage Department after the property was under contract to

12  B & C.  Paragraph 15 of the complaint states that that

13  conveyance occurred on May 21, 2008.  Thank you, Your Honor.

14       THE COURT:  All right.  Thank you all.  I'm going to

15  rule on this motion now.

16       The city's motion before me today seeks in the form of

17  the proposed order that's attached to the motion, an order of

18  this Court requiring B & C Land Development Corporation to

19  dismiss, or cause to be dismissed with prejudice, the specific

20  lawsuit that it recently filed in the Wayne County Circuit

21  Court against the city that's referred to in the motion.

22       And also to withdraw from the Wayne County Register of

23  Deeds the notice of lis pendens that the B & C Land

24  Development Corporation filed.  The city also seeks in its

25  order, an order from the Court barring and enjoining B & C

1  Land Development Corporation from asserting any claims

2  described in the State Court lawsuit, a copy of the complaint

3  in the State Court lawsuit filed in the Wayne County Circuit

4  Court is attached as an exhibit to the city's motion, or the

5  alleged conduct forming the basis of the State Court lawsuit

6  against the City of Detroit or its property in the State Court

7  lawsuit or in any other action or proceeding.

8      The city's proposed order also has the Court -- asks the

9  Court to order that if B & C Land Development Corporation

10  fails to timely withdraw the notice of lis pendens that I

11  referred to earlier, the city may file a copy of the Court's

12  order with the Register of Deeds which will operate as a

13  withdrawal of the lis pendens on the property.

14      I -- I have reviewed and considered carefully the

15  arguments of the parties with -- regarding this motion, both

16  the written papers and exhibits filed by the parties, and the

17  arguments made in today's expedited hearing on the motion.

18  And -- and my conclusion is that the motion must be granted in

19  its entirety and I will do so.

20      The -- the B & C Land Development Corporation's argument

21  in defense against the city's motion that it had as of the

22  filing of the City of Detroit's bankruptcy petition in this

23  Chapter 9 bankruptcy case, that is as of July 18, 2013, the

24  petition date in this case.  That -- that as of that time the

25  B & C Land Development had a valid and enforceable contract

1  with the City of Detroit for the purchase by B & C Land

2  Development from the city of the real estate which is the

3  subject of the city's motion and of the State Court lawsuit

4  filed by B & C.

5      That that contract was an executory contract within the

6  meaning of Section 365 of the Bankruptcy Code, 11 USC Section

7  365 which executory contract was never assumed or rejected by

8  the city during its bankruptcy case and therefore survives the

9  bankruptcy, the bankruptcy discharge, the bankruptcy plans,

10  and the order confirming plan's injunctive provisions.  And

11  therefore B & C is entitled and -- and permitted to pursue

12  their State Court lawsuit despite the city's confirmed Chapter

13  9 plan in this bankruptcy case.

14      The B & C's argument however is without merit based on

15  undisputed facts.  The undisputed facts include the fact that

16  the B & C -- while B & C alleges that it -- that the offer to

17  purchase document and perhaps other documents between itself

18  and the city regarding this property at issue were valid and

19  enforceable and binding contracts between B & C and the city,

20  that is simply not the case under Michigan law.

21      It's not the case because as the case law cited by the

22  city demonstrates, and the city charter provision cited by the

23  city demonstrates, there can be under Michigan law no valid

24  contract for the sale by the City of Detroit of any real

25  estate or any other property without the approval by

1  resolution of the city council of Detroit.

2      Section 4-112 of the city charter says, "that except as

3  otherwise provided by this charter, the city may not sell or

4  in any way dispose of any property without the approval by

5  resolution of the city council".

6      That B & C has not argued that there are any exceptions

7  in the city charter to this requirement that the city council

8  approve any sale of its property by resolution that would

9  apply to the property here.  B & C has not argued otherwise

10 and that argument by the city is supported by the affidavit

11 that the city filed -- a declaration rather under penalty of

12 perjury of the city's James Noseda, a member of this Detroit

13 law department.  That was attached as -- to the city's reply

14 brief, docket 10115.

15     And so it is undisputed that under the City of Detroit

16 charter a resolution by the Detroit city council approving the

17 sale of the property was necessary in order for there to be

18 the possibility of any existence of any valid binding,

19 enforceable contract of any kind regarding the sale of this

20 property at issue between the city and B & C Land Development.

21     It's also undisputed that there never was any such

22 approval by city council by resolution as required by the city

23 charter.  Under the cases cited by the city the result of this

24 is that there was -- there was and is -- there was never and

25 now is no contract, binding and enforceable contract between

1  the city and B & C Land Development.

2      The cases that support that proposition under Michigan

3  law include the case of <u>Johnson v City of Menominee</u>, 173 Mich

4  App 690, 434 NW 2d 211 and in particular at Pages 213 and 214,

5  a decision of the Michigan Court of Appeals from 1989.  And

6  also the decision of the United States Court of Appeals for

7  the 6th Circuit in applying Michigan law.

8      In the case of <u>Michigan Paytel Joint Venture v City of</u>

9  <u>Detroit</u>, 287 F 3d 527, particularly at Page -- Pages 539 to

10  540, a decision of the 6th Circuit from 2002.

11      So there is no valid and never was a valid contract or

12  any contract between -- enforceable contract between the city

13  and B & C Land Development Corporation therefore -- therefore

14  there could be no executory contract at any point and in

15  particular as of the petition date in the Chapter 9 bankruptcy

16  case within the meaning of Section 365 of the Bankruptcy Code.

17      So this -- so that B & C's argument that it has a -- an

18  executory contract that -- that was never rejected in the

19  bankruptcy and therefore survives the bankruptcy and the

20  bankruptcy discharge and injunction in the confirmed plan is

21  without merit.  And the Court must reject that argument.

22      If and to the extent B & C Land Development can be

23  construed as alleging in their State Court complaint that --

24  or in their argument in responding to the city's motion here,

25  that certain acts or omissions by the city give B & C a claim

1 under some legal theory with respect -- relating to this

2 property under some legal theory other than breach of

3 contract, a contract based theory such as a tort theory or

4 some other type of theory other than contract or a theory that

5 -- other than the theory that depends upon the existence of an

6 enforceable and valid contract between the parties.

7      Those claims clearly are claims that arose before and --

8 and well before the city filed its bankruptcy petition in this

9 Chapter 9 case on July 18, 2013.  And such claims therefore

10 are discharged by the city's confirmed plan of adjustment and

11 the discharge injunction provisions of the confirmed plan and

12 of the Court's order confirming the plan bar B & C Land

13 Development from pursuing those claims, either in State Court,

14 or in the bankruptcy case, or anywhere else against the city

15 or the city's property.

16      Those provisions -- and such -- any such claims were

17 discharged under the confirmed plan.  The provisions in the

18 plan and the order confirming plan which the city has relied

19 on and which support these conclusions are the discharge

20 provision on Page 50 of the eighth amended plan which is on

21 file and is part of docket 8272.

22      The injunction provisions in that confirmed plan which

23 are on Pages 50 to 51 of the -- that same plan, docket 8272.

24 And the injunction provisions in the order confirming plan

25 that was filed in this case on November 12, 2014, docket

1  number 8272 beginning at Page -- Page 89 of the order

2  confirming plan.

3      For all these reasons then, B & C Land Development does

4  not have any claim against the City of Detroit arising from or

5  relating to any alleged agreement with the city regarding the

6  property at issue and does not have any claims under any legal

7  theory any that survive the bankruptcy case and the

8  confirmation of the plan of adjustment in this case against

9  the city and is subject to the injunction provisions enjoining

10  them from pursuing any such claims by litigation or otherwise

11  under the confirmed plan of adjustment.

12      Based on that the Court will grant the motion and will

13  order the relief that the city has requested in the motion.

14  Mr. Swanson, do you have the proposed order in front of you?

15          MR. SWANSON:  I do, Your Honor.

16          THE COURT:  That's attached to your motion?  I want

17  to -- I want to talk to you about it.  I want to talk about

18  some changes, minor changes in the order.

19      The order says in Paragraphs 2 and 3 it sets a deadline

20  for B & C to take certain action.  It says within five days of

21  the entry of this order.  I'm not concerned about that -- that

22  time frame, but instead of saying it that way in orders, I

23  like to whenever possible to set a specific calendar date as a

24  deadline.

25          So if you tell me that you're going to get this order --

1 | proposed order submitted to me yet today so that I can get it

2 | filed yet today, we'll make it five days -- no later than five

3 | days after today's date, so that would be five days -- that

4 | would be no later than next Monday, August 10th.  I assume you

5 | can get me this order --

6 |       MR. SWANSON:  Absolutely.

7 |       THE COURT:  Submit this order today.  I'm going to

8 | waive presentment of the revised order.

9 |       MR. SWANSON:  Yes, Your Honor.

10 |       THE COURT:  All right.  So make the date August 10,

11 | no later than August 10, 2015, B & C Land Development

12 | Corporation must dismiss, et cetera in Paragraph 2.  Paragraph

13 | 3, they must withdraw the notice of lis pendens.  Paragraph 4,

14 | 5, and 6 are fine as is.

15 |     I'll ask you to submit that order as soon as possible.

16 | I'll waive presentment as I said.  And I will make every

17 | effort to review the order and get it docketed as quickly as I

18 | can after you submit it.

19 |     The -- I may make some minor non-substantive changes to

20 | the order, but don't worry about those, I'll take care of

21 | that.  And -- and as I said, they're -- they're entirely

22 | non-substantive type things.

23 |     So, submit the order and the motion will be granted on

24 | that basis.  That concludes today's matters on the City of

25 | Detroit case.  Thank you all.

1          THE CLERK:  All rise.

2          MR. SWANSON:  Thank you, Your Honor.

3          MR. ELLISON:  Thank you.

4      (Court Adjourned at 3:14 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7  We certify that the foregoing is a correct transcript from the

8  electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11  /s/Deborah L. Kremlick, CER-4872          Dated: 8-9-15
    Jamie Laskaska

12

13

14

15

16

17

18

19

20

21

22

23

24

25